1  REBECCA J. WINTHROP (SBN 116386)   BRIAN J. LOHAN (*Pro Hac Vice* application
   ROBIN D. BALL (SBN 159698)          forthcoming)
2  NORTON ROSE FULBRIGHT US LLP        BENJAMIN MINTZ (*Pro Hac Vice* admitted)
   555 South Flower Street, Forty-First Floor   ARNOLD & PORTER KAYE SCHOLER LLP
3  Los Angeles, California  90071       250 West 55th Street
   Telephone:  213.892.9200            New York, NY 10019-9710
4  Facsimile:  213.892.9494            Telephone:  212.836.8000
   rebecca.winthrop@nortonrosefulbright.com   Facsimile:  212.836.8689
5  robin.ball@nortonrosefulbright.com   brian.lohan@arnoldporter.com
                                       benjamin.mintz@arnoldporter.com
6  *Attorneys for ADVENTIST HEALTH*
                                       *Attorneys for AT&T*
7  DAVID E. WEISS (SBN 148147)
   PETER MUNOZ (SBN 66942)             Craig Goldblatt (*Pro Hac Vice* admitted*)*
8  REED SMITH LLP                      WILMER CUTLER PICKERING HALE AND DORR LLP
   101 Second Street Suite 1800        1875 Pennsylvania Ave., NW
9  San Francisco, CA 94105-3659        Washington DC 20036
   Telephone:  415.543.8700            Telephone:  202.663.6000
10 Facsimile:  415.391.8269            Facsimile:  202.663.6363
   dweiss@reedsmith.com                craig.goldblatt@wilmerhale.com
11 pmunoz@reedsmith.com
                                       Lauren Lifland (*Pro Hac Vice* application forthcoming)
12 *Attorneys for PARADISE ENTITIES*    Allyson Pierce (SBN 325060)
                                       WILMER CUTLER PICKERING HALE AND DORR LLP
13                                     250 Greenwich Street
                                       New York, NY 10007
14                                     Telephone:  202.230.8800
                                       Facsimile:  202.230.8888
15                                     lauren.lifland@wilmerhale.com
                                       allyson.pierce@wilmerhale.com
16
                                       *Attorneys for COMCAST*
17
                    UNITED STATES BANKRUPTCY COURT
18                  NORTHERN DISTRICT OF CALIFORNIA
                         SAN FRANCISCO DIVISION
19

| | |
|---|---|
| **In re:** | Case No.  19-30088 (DM) |
| | Chapter 11 |
| **PG&E CORPORATION,** | (Lead Case) |
| | (Jointly Administered) |
| - and - | |
| | **OBJECTION OF ADVENTIST HEALTH,** |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | **AT&T, PARADISE ENTITIES AND** |
| | **COMCAST TO TRUST DOCUMENTS** |
| **Debtors.** | |
| | Date:     May 15, 2020 |
| ☐ Affects PG&E Corporation | Time:     11:00 a.m. (PT) |
| ☐ Affects Pacific Gas and Electric Company | Place:     United States Bankruptcy Court |
| ☒ Affects both Debtors | Courtroom 17, 16th Floor |
| | San Francisco, CA 94102 |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Judge:     The Hon. Dennis Montali |

# TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................................ 1

OBJECTION .................................................................................................................... 3

I.  THE PLAN AND TRUST DOCUMENTS IMPERMISSIBLY DEPRIVE FIRE
    VICTIM CLAIMANTS OF THEIR STATUTORY RIGHT TO
    ADJUDICATION OF THEIR CLAIMS BY THIS COURT ............................................. 4

    A.  The Bankruptcy Code Entitles Fire Victim Claimants To The Adjudication Of
        Their Claims Consistent With The Statutory Claims Allowance Process ............. 5

    B.  The Acceptance Of A Plan By A Class of Claimants Cannot Deprive Non-
        Consenting Claimants Of Access To The Claims Allowance Process .................. 8

II. THE TREATMENT AFFORDED INSURANCE IN THE TRUST
    DOCUMENTS IS UNJUST, UNREASONABLE AND VIOLATES LAW .................. 10

    A.  The Treatment Of Insurance Violates Federal Bankruptcy Law ......................... 12

    B.  The Treatment Of Insurance Violates The Collateral Source Rule ..................... 15

    C.  The Insurance Provisions Violate Section 1123(a)(4) As They Provide For
        Disparate Treatment Among Fire Victim Claimants ............................................ 18

III. MATERIAL CHANGES TO THE TRUST DOCUMENTS MUST BE
     APPROVED BY THE COURT ........................................................................................ 20

IV. THE TRUST DOCUMENTS IMPROPERLY ALLOW THE TRUSTEE TO
    HOLD FINANCIAL INTERESTS AND ACT AS ATTORNEY, AGENT OR
    PROFESSIONAL, FOR FIRE VICTIM CLAIMANTS ...................................................... 21

V.  THE SETOFF AND RECOUPMENT RIGHTS OF THE DEBTORS,
    REORGANIZED DEBTORS, AND THE TRUSTEE SHOULD BE CLARIFIED ....... 23

VI. THE CLAIMANT RELEASE MUST BE TEMPORALLY LIMITED ......................... 24

VII. FIRE VICTIM CLAIMANTS ARE ENTITLED TO REIMBURSEMENT OF
     ATTORNEYS' FEES .................................................................................................... 24

VIII. THE TRUST DOCUMENTS FAIL TO ESTABLISH ADEQUATE
      STANDARDS FOR THE ADJUDICATION OF CLAIMS ............................................ 25

CONCLUSION ................................................................................................................. 25

US 167782311v7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acequia, Inc. v. Clinton*,
  787 F.2d 1352 (9th Cir. 1986) ........................................................................18

*Aetna Life & Casualty Co. v. City of Los Angeles*
  170 Cal. App. 3d 865 (1985) ..........................................................................24

*Berg v. First State Ins. Co.*,
  915 F.2d 460 (9th Cir. 1990) ..........................................................................16

*Dewsnup v. Timm*,
  502 U.S. 410 (1992) ........................................................................................12

*Elder v. Uecker (In re Elder)*,
  325 B.R. 292 (N.D. Cal. 2005) ..........................................................................8

*Fitness Holdings Int'l, Inc. v. Hancock Park, et al.*,
  714 F.3d 1141 (9th Cir. 2013) ........................................................................16

*Helfend v. Southern Cal. Rapid Transit Dist.*,
  2 Cal. 3d 1 (1970) ....................................................................................15, 16

*In re Ahrens*,
  Nos. 16-1065 and 1117 – Ju, Ku, Ma, 2016 WL 6427279 (B.A.P. 9th Cir. Oct. 27,
  2016) ........................................................................................................14, 15

*In re Am. Capital Equip., Inc.*, 405 B.R. 415, 426 (Bankr. W.D. Pa. 2009), *aff'd sub
  nom. Skinner Engine Co. v. Allianz Glob. Risk U.S. Ins. Co.*, No. BKY 01-23987,
  2010 WL 1337222 (W.D. Pa. Mar. 29, 2010), *aff'd sub nom. In re Am. Capital
  Equip., LLC*, 688 F.3d 145 (3d Cir. 2012) .......................................................7

*In re Beyond.com Corp.*,
  289 B.R. 138 (Bankr. N.D. Cal. 2003) ...............................................................9

*In re Biovance Techs., Inc.*,
  No. BK10-82441, 2014 WL 2861003 (Bankr. D. Neb. June 23, 2014) ...........13

*In re Borsos*,
  544 B.R. 201 (E.D. Cal. 2016) ........................................................................16

*In re Brown*,
  570 B.R. 98 (W.D. Okla. 2017) .......................................................................16

*In re Butcher*,
  459 B.R. 115 (Bankr. D. Colo. 2011) ................................................................7

Case: 19-30088    Doc# 7072    Filed: 05/05/20    Entered: 05/05/20 16:54:32    Page 3 of
31
US 167782311v7

*In re Del Biaggio*,
  496 B.R. 600 (Bankr. N.D. Cal. 2012) ...........................................................12, 13, 14

*In re Duro Dyne National Corp.*,
  Case No. 18-27963 (MBK) (Bankr. D.N.J. 2018) ...........................................................8

*In re Filex, Inc.*,
  116 B.R. 37 (Bankr. S.D.N.Y. 1990) ...........................................................7, 9

*In re G-I Holdings, Inc.*,
  323 B.R. 583 (Bankr. D. N.J. 2005) ...........................................................8

*In re General Coffee Corp.*,
  85 B.R. 905 (S.D. Fla. 1988)...........................................................16

*In re Joint E. & S. Dist. Asbestos Litig.*,
  982 F.2d 721 (2nd Cir. 1992) ...........................................................19

*In re Journal Register Co.*,
  407 B.R. 520 (Bankr. S.D.N.Y. 2009) ...........................................................14

*In re Kensington Apartment Properties, LLC*,
  No. 10-73976 CN, 2019 WL 3933713 (Bankr. N.D. Cal. Aug. 19, 2019)...........................................................14

*In re Maremont Corporation*,
  601 B.R. 1 (Bankr. D. Del. 2019)...........................................................8

*In re Nat'l Energy & Gas Transmission, Inc.*,
  492 F.3d 297 (4th Cir. 2007) ...........................................................13

*In re PRS Ins. Grp., Inc.*,
  335 B.R. 77 (Bankr. D. Del. 2005)...........................................................6

*In re Quigley Company, Inc.*,
  Case No. 04-15739 (Bankr. S.D.N.Y. 2006) ...........................................................8

*In re Southeast Co.*,
  868 F.2d 335 (9th Cir. 1989) ...........................................................6

*In re Thorpe Insulation Co.*,
  Case No. 2:07-bk-19271 (BB) (Bankr. C.D. Cal. 2007) ...........................................................7

*In re W.R. Grace & Co.*,
  729 F.3d 311 (3rd Cir. 2013)...........................................................19

*In re Yelverton*,
  No. 09-00414, 2015 WL 3637440 (Bankr. D. D.C. June 10, 2015), *aff'd sub nom.*
  2016 WL 7438656 (D.C. Cir. Dec. 21, 2016) ...........................................................13

*Ivanhoe Bldg. & Loan Ass'n of Newark, N.J. v. Orr*,
  295 U.S. 243 (1935) ...........................................................11, 12, 13, 14, 15, 18

-iii-

*Krusi v. Bear, Stearns & Co.*,
    144 Cal. App. 3d 664 (1983) ................................................................................................16

*Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*,
    692 F.3d 283 (3d Cir. 2012) ...............................................................................................13

*RFC v. Denver & R.G.W.R. Co.*,
    328 U.S. 495 (1946) .............................................................................................................12

*Sec. Investor Prot. Corp. v. Waddell Jenmar Sec., Inc. (In re Waddell Jenmar Sec., Inc.*, 126 B.R. 935, 947 n.12 (Bankr. E.D.N.C. 1991), *aff'd sub nom., Sec. Investor Prot. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. (In re Waddell Jenmar Sec., Inc.)*, 991 F.2d 792 (4th Cir. 1993) ..................................................13

*Solow v. PPI Enters.(U.S.) (In re PPI Enters. (U.S.))*,
    324 F.3d 197 (3d Cir. 2003) .................................................................................................9

*The FINOVA Group, Inc. v. BNP Paribas*,
    304 B.R. 630 (D. Del. 2004) ...............................................................................................18

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*,
    549 U.S. 443 (2007) .................................................................................................6, 16, 25

**Statutes**

11 U.S.C.
    § 501 ...............................................................................................................................4, 5, 6
    § 501(a) .................................................................................................................................4
    § 502 .............................................................................................................4, 6, 7, 10, 11, 12
    § 502(a) .............................................................................................................................4, 6
    § 502(b) ........................................................................................................................4, 6, 18
    § 502(d)(6) ............................................................................................................................9
    §§ 503-511 ............................................................................................................................6
    § 1123(a)(4) ....................................................................................3, 11, 18, 19, 20, 21
    § 1129(a)(1) ...................................................................................................................5, 8, 9
    § 1129(b) ...............................................................................................................................2

Fed. R. Bankr. P.
    Rule 3007 ..............................................................................................................................7
    Rule 3008 ..............................................................................................................................7

Cal. Code Civ. Proc. § 1036 ...................................................................................................24

**Other Authorities**

Restatement (Second) of Torts § 920A (1979) ......................................................................15

-iv-

US 167782311v7

Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River (together, "**Adventist Health**"); Paradise Unified School District, Northern Recycling and Waste Services, LLC/Northern Holdings, LLC, Napa County Recycling & Waste Services, LLC/Napa Recycling & Waste Services, LLC, and Christian & Missionary Alliance Church of Paradise, dba Paradise Alliance Church (together, the "**Paradise Entities**"); AT&T Corp. and all affiliates ("**AT&T**"); and Comcast Cable Communications, LLC and all affiliates (together, "**Comcast**," and collectively with Adventist Health, the Paradise Entities, and AT&T, the "**Objectants**"), by and through their respective undersigned counsel, hereby submit this objection (the "**Objection**") to the Trust Documents (as defined below), and respectfully represent as follows:

**BACKGROUND**

1. On March 16, 2020, the Plan Proponents filed the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization, Dated March 16, 2020* [Dkt. 6320] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented, the "**Plan**").[1] On March 17, 2020, the Court entered the *Order (I) Approving Proposed Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization; (II) Approving Form and Manner of Notice of Hearing on Proposed Disclosure Statement; (III) Establishing and Approving Plan Solicitation and Voting Procedures; (IV) Approving Forms of Ballots, Solicitation Packages, and Related Notices; and (V) Granting Related Relief* [Dkt. 6340] (the "**Disclosure Statement Order**"). On March 17, 2020, the Plan Proponents filed the solicitation version of the *Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* [Dkt. 6353], as supplemented by the *Supplement to Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization*, approved by Court Order on March 25, 2020 [Dkt. 6483].

2. Under the Plan, all Fire Victim Claims, including the Fire Victim Claims asserted by each of the Objectants, shall be compensated from the Fire Victim Trust, which will be governed by, among other things, various trust documents, including the Fire Victim Trust Agreement (the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

-1-

US 167782311v7

"**Trust Agreement**") and the proposed Fire Victim Claims Resolution Procedures (the "**CRP**", and together with the Trust Agreement, the "**Trust Documents**").

3. In accordance with the Plan and Disclosure Statement, on May 1, 2020, the Plan Proponents filed the *Notice of Filing of Plan Supplement in Connection with Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020* [Dkt. No. 7037] (the "**Plan Supplement**"). The Plan Supplement included as Exhibit D thereto the Trust Agreement together with all exhibits including the CRP.

4. In prior pleadings, certain Objectants raised concerns about the initial draft Trust Documents, which were filed on March 3, 2020 [Dkt No. 6049] (the "**Initial Draft Trust Documents**"). At an April 14, 2020, hearing before the Court, certain Objectants explained their concerns, following which the Court suggested that the Debtors consider having these matters addressed in a separate hearing prior to the scheduled Confirmation Hearing. Accordingly, on May 1, 2020, the Plan Proponents, the TCC and the Objectants entered into and filed the *Stipulation by and Among the Plan Proponents, the Official Committee of Tort Claimants, the Adventist Health Claimants, the Paradise Related Entities, AT&T and Comcast Regarding Fire Victim Trust Document Issues* [Dkt. No. 7050] (the "**Briefing Stipulation**"). By Order dated May 4, 2020 [Dkt. No. 7060] (the "**Briefing Order**"), the Court approved the Briefing Stipulation.

5. The Briefing Order and the Briefing Stipulation provide for an expedited briefing schedule for the filing of this Objection to the Trust Documents and responses thereto, and schedule a hearing date of May 15, 2020, to adjudicate such objections. Under the Briefing Stipulation, this Objection is limited to the Trust Documents (excluding any objections pursuant to section 1129(b) of the Bankruptcy Code), with all other objections to the Plan to be reserved for the Confirmation Hearing and filed in accordance with the deadlines established in the Disclosure Statement Order.

6. Pursuant to the Briefing Stipulation, the Objectants, the TCC and the Plan Proponents engaged in confidential settlement discussions in an effort to resolve the Objectants' concerns with the Trust Documents. As a result of those efforts—and the Objectants appreciate the focused attention dedicated by the TCC and the Plan Proponents—the parties were able to resolve certain but not all of the Objectants' issues. For example, the Objectants were concerned

Case: 19-30088    Doc# 7072    Filed: 05/05/20    Entered: 05/05/20 16:54:32    Page 7 of
31
US 167782311v7

that the Initial Draft Trust Documents appeared to disadvantage Fire Victim Claims with larger claims (such as those held by the Objectants). This concern was based on the fact that (a) the Initial Draft Trust Documents did not specify that Fire Victim Claims would be paid on a pro rata basis and (b) the Disclosure Statement included a vague statement that "special consideration may be given to the treatment" of large Fire Victim Claims. Disclosure Statement [Dkt. No. 6322] at pg. 25. If the Trust Documents were indeed intended to treat large Fire Victim Claims differently from other Fire Victim Claims, that disparate treatment would violate section 1123(a)(4), which requires that a plan provide the same treatment for each claim of a particular class, unless the affected holder agrees otherwise. To address these concerns, the Trust Documents were revised to provide that: (i) Fire Victim Claims shall be paid on a pro rata basis; (ii) the Fire Victim Trustee shall prepare analyses and budgets of all Fire Victim Claims in order to determine the amount of interim distributions to be made to Approved Fire Victim Claims (as defined in the Trust Agreement), taking into account the existence of unpaid Approved Fire Victim Claims and Fire Victim Claims that have not yet become Approved Fire Victim Claims, and shall maintain sufficient Trust Assets (as defined in the Trust Agreement) on hand to try to ensure that all Approved Fire Victim Claims receive a pro rata distribution; and (iii) Fire Victim Claims would be treated fairly, consistently and equitably without regard to the size of such claim. Thus, the Trust Documents now reflect a construct whereby all Fire Victim Claimants, regardless of size, will be eligible to receive distributions on a pro rata basis in respect of their Approved Fire Victim Claims.

7.     Although the parties successfully resolved some key issues, several issues with the Trust Documents remain unresolved and accordingly the Objectants have filed this Objection.[2]

## **OBJECTION**

8.     By this Objection, the Objectants object to the Trust Documents as follows: (a) the Trust Documents impermissibly deprive Fire Victim Claimants of their statutory right to the adjudication of their claims by this Court in violation of the Bankruptcy Code, a result that cannot

---

[2]     In accordance with the Briefing Stipulation, the Objectants have limited their Objection to issues concerning the Trust Documents and will separately file their objections (if any) to the Plan in accordance with the deadline established in the Disclosure Statement Order.

Case: 19-30088    Doc# 7072    Filed: 05/05/20    Entered: 05/05/20 16:54:32    Page 8 of 31
US 167782311v7

be imposed on objecting creditors on the ground that it is a form of "impairment" approved by an accepting class of claimants; (b) the Trust Documents' treatment of insurance is discriminatory and improper as a matter of federal bankruptcy law and state law governing the allowance of claims; (c) the Trust Documents may be amended in virtually any manner without further Court approval; (d) the Trust Documents improperly allow the Trustee, without Court approval or oversight, to hold a nonpassive financial interest in, and act as an attorney, agent or professional for, a Fire Victim Claimant; (e) the Trust Documents preserve setoff and recoupment rights in favor of the Fire Victim Trust and the Fire Victim Trustee in a manner contradictory to the terms of the Plan; (f) the Claimant Release should be clarified to exclude claims arising after the date that the Claimant Release is executed; (g) the Trust Documents improperly preclude Fire Victim Claimants with property damage claims from recovering their reasonable attorneys' fees recoverable under applicable state law; and (h) the Trust Documents fail to contain adequate standards of review for the adjudication of claims.

## I. THE PLAN AND TRUST DOCUMENTS IMPERMISSIBLY DEPRIVE FIRE VICTIM CLAIMANTS OF THEIR STATUTORY RIGHT TO ADJUDICATION OF THEIR CLAIMS BY THIS COURT

9. Sections 501 and 502 of the Bankruptcy Code set out mechanisms for determining the validity of claims filed against a bankruptcy estate. A creditor may file a proof of claim. 11 U.S.C. § 501(a). Once filed, the claim is "deemed allowed" unless a party in interest files an objection. *Id.* at § 502(a). If such an objection is filed, "the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition." *Id.* at § 502(b).

10. The Plan replaces the claims allowance process as set out in the Bankruptcy Code with an altogether different process, one in which a trustee ultimately makes a final, binding, non-appealable determination that is not subject to any form of judicial review. Specifically, under the Plan, "[a]ll Fire Victim Claims shall be channeled to the Fire Victim Trust" and the Fire Victim Trust will then, in accordance with the Trust Agreement, "administer, process, settle, resolve, liquidate, satisfy, and pay all Fire Victim Claims . . . " *See* Plan § 6.7(a). The Plan further provides that, with few exceptions, Fire Victim Claims are "treated as unliquidated Disputed Claims . . . and . . . subject to resolution by the Fire Victim Trust in accordance with the Fire Victim Claims

Case: 19-30088    Doc# 7072    Filed: 05/05/20    Entered: 05/05/20 16:54:32    Page 9 of
31
US 167782311v7

Resolution Procedures." *See id.* at § 7.1.

11.     The Trust Documents empower the Fire Victim Trust to determine whether Fire Victim Claims are eligible for payment, and if so, in what amount (each determination on a Fire Victim Claim, a "**Claims Determination**").  The CRP provides for a three-tiered appellate process pursuant to which Fire Victim Claimants may contest Claim Determinations.  CRP § VIII.  Once a Fire Victim Claimant exhausts its appellate rights under that process, however, that claimant has no recourse to this Court or any other court.  Specifically, Section VIII.3 of the CRP provides that the Trustee "may accept, reject, or revise the Appeals Determination and then will issue a Trustee Determination to the Claimant … ***The Trustee Determination will be final, binding, and non-appealable and is not subject to review by any Court, including right to trial by jury*****."** CRP § VIII.3. (emphasis added).

12.     That is flatly unlawful.  The Debtors contend that depriving a creditor of access to the claims allowance process contemplated by the Bankruptcy Code is just a form of "plan impairment" that can be imposed on objecting creditors so long as the class of Fire Victim Claimants votes to accept such treatment under the Plan.  But that has it backwards—impairment refers to the *treatment* of an allowed claim.  The process of determining that allowed claim is logically antecedent to the question of the claim's "treatment."  Accordingly, the right of access to the courts given by the Bankruptcy Code to every creditor to determine the allowed amount of that creditor's claim cannot be forfeited by the acceptance, by a majority of the creditors in a class, of a plan that would do so.  The Trust Documents are thus violative of the Bankruptcy Code and preclude the Plan from being confirmed pursuant to section 1129(a)(1).

**A.      The Bankruptcy Code Entitles Fire Victim Claimants To The Adjudication Of Their Claims Consistent With The Statutory Claims Allowance Process**

13.     But for the Debtors' bankruptcy, Fire Victim Claimants would assert claims against the Debtors in courts of competent jurisdiction where such claims would either be settled consensually or, if that were not possible, litigated to judgment.  The Bankruptcy Code effectively replaces the type of litigation that would otherwise proceed outside of bankruptcy with a more streamlined claims allowance process.  Section 501 of the Bankruptcy Code authorizes creditors to

Case: 19-30088    Doc# 7072    Filed: 05/05/20    Entered: 05/05/20 16:54:32    Page 10
US 167782311v7                                        of 31

publicly file proofs of claim (*see id.* at § 502(a) ("[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, . . . objects."); and after a party in interest objects to a claim, only the court is authorized to determine whether it should be allowed and in what amount. *See id.* at § 502(b) ("if such objection to a claim is made, ***the court***, after notice and a hearing, ***shall determine the amount of such claim*** . . . as of the date of the filing of the petition, and shall allow such claim in such amount") (emphasis added)).

14.     The Bankruptcy Code and case law make clear that the bankruptcy court is the ultimate arbiter of the claims allowance process. As the Supreme Court explained in a case arising out of the earlier PG&E bankruptcy, "[o]nce a proof of claim has been filed, ***the court must determine*** whether the claim is 'allowed' under § 502(a) of the Bankruptcy Code." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co*., 549 U.S. 443, 449 (2007) (emphasis added). *See also In re PRS Ins. Grp., Inc.*, 335 B.R. 77, 81 (Bankr. D. Del. 2005) ("Regardless of what court determines the underlying merits or amount of a claim, the allowance of that claim and the amount to be distributed from the estate on that claim is the ***exclusive province of the bankruptcy court*** if a proof of claim has been filed in the bankruptcy court.") (emphasis added). As *Collier*'s explains it, "[r]egardless of the method chosen for liquidation of a claim, ***the bankruptcy court always retains the jurisdiction and sole right*** to determine the 'allowability' of the claim under the applicable standards set forth in section 502." 4 *Collier on Bankruptcy* ¶ 502.030[1][a] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2005) (emphasis added) (citations omitted). *See also In re Southeast Co.*, 868 F.2d 335, 339 (9th Cir. 1989) ("Section 502(b) is a means by which courts determine whether and to what extent claims are allowed once objections are made.").

15.     Every step in the claims allowance process contemplates judicial oversight of the contested matter and adjudication of parties' rights against the estates. The Bankruptcy Code and Bankruptcy Rules include an array of other rules and requirements governing the nature, extent, and determination of creditor claims, all of which either contemplate or expressly require an in-court process. *See, e.g.,* 11 U.S.C. §§ 503-511 (governing, among other things, the classification, allowance, and determination of various creditor claims); *id.* at § 524 (governing the establishment, oversight, and other aspects of a plan and channeling injunction in asbestos bankruptcies); Fed. R.

Bankr. P. 3007 (setting forth certain rules concerning, among other things, the timing and service of claims objections and the inclusion of claim objections in an adversary proceeding); Fed. R. Bankr. P. 3008 (providing for a court's reconsideration of an order allowing or disallowing a claim and that "[t]he court after a hearing on notice shall enter an appropriate order."). *See also In re Am. Capital Equip., Inc.,* 405 B.R. 415, 426 (Bankr. W.D. Pa. 2009), *aff'd sub nom. Skinner Engine Co. v. Allianz Glob. Risk U.S. Ins. Co.,* No. BKY 01-23987, 2010 WL 1337222 (W.D. Pa. Mar. 29, 2010), *aff'd sub nom. In re Am. Capital Equip., LLC,* 688 F.3d 145 (3d Cir. 2012) (refusing to approve disclosure statement for plan that improperly altered the statutory claims allowance process, thus rendering the plan "patently unconfirmable").

16. These provisions of the Bankruptcy Code and Bankruptcy Rules are designed to promote the efficient administration of the bankruptcy estate while protecting the legitimate interests of debtors, creditors, and other stakeholders. Nothing in the Bankruptcy Code or the Bankruptcy Rules allows a plan to strip nonconsenting creditors and other parties in interest of those protections and administer estate claims and assets in private. *See, e.g., In re Filex, Inc.*, 116 B.R. 37, 40 (Bankr. S.D.N.Y. 1990) (noting a plan was "patently unconfirmable under Chapter 11 of the Bankruptcy Code because it provide[d] that all objections or disputes as to claims w[ould] be resolved by an arbitrator in accordance with the rules of the American Arbitration Association rather than by th[e] court in accordance with 11 U.S.C. § 502."); *see also In re Butcher*, 459 B.R. 115, 130 (Bankr. D. Colo. 2011) (finding chapter 13 plan unconfirmable where it sought to "cut off" the Bankruptcy Code's claims allowance process and noting that the court was "unaware of arguments in the chapter 11 context that plan confirmation should cut off the orderly claim allowance process set out in the Bankruptcy Code and the Rules").

17. To be sure, in the mass tort context, the administrative difficulty of adjudicating tens of thousands of claims has led trusts to contain mechanisms for resolving claims that have included (with the consent of the affected claimants) settlement mechanisms under which the trust would make a settlement offer to a claimant to resolve the claim (often in accordance with matrices designed to ensure that similar claims would receive similar treatment). *See, e.g., In re Thorpe Insulation Co.*, Case No. 2:07-bk-19271 (BB) (Bankr. C.D. Cal. 2007) [Dkt. 3418] (trust

US 167782311v7

distribution procedures allowed for nonbinding arbitration and, absent a consensual resolution, an opportunity to litigate claims in the tort system); *In re Maremont Corporation*, 601 B.R. 1, 193 (Bankr. D. Del. 2019) (same); *In re Duro Dyne National Corp.*, Case No. 18-27963 (MBK) (Bankr. D.N.J. 2018) [Dkt. 729] (same); *In re Quigley Company, Inc.*, Case No. 04-15739 (Bankr. S.D.N.Y. 2006) [Dkt. 2662] (same). But the law is clear that a claimant that does not accept such a settlement is entitled by law to access the courts to adjudicate the allowance or disallowance of a proof of claim. *In re G-I Holdings, Inc.*, 323 B.R. 583, 616-17 (Bankr. D. N.J. 2005) (noting estimation/liquidation procedures conducted by a nonjudicial entity are subject to judicial review).

18.     Any Fire Victim Claimant who wishes to dispute a final Claim Determination is thus entitled, by statute, to a hearing with the rights and protections afforded by the Bankruptcy Code and the Bankruptcy Rules governing claims allowance. The Debtors may not pick and choose which provisions of the Bankruptcy Code to observe and which to ignore. Accordingly, the CRP must be revised to restore Fire Victim Claimants' recourse to this Court and any appellate court of competent jurisdiction with respect to the adjudication of their claims. Absent this modification, the Trust Documents run afoul of the Bankruptcy Code, and the Plan is unconfirmable under section 1129(a)(1). *See, e.g., Elder v. Uecker (In re Elder)*, 325 B.R. 292, 300 (N.D. Cal. 2005) (authorizing plan administrator to "compromise and settle claims objections, provided that those who are unhappy with the results are still entitled to a hearing in the bankruptcy court"); 10 COLLIER ON BANKRUPTCY ¶ 9014.06 (16th ed. 2020) ("due process must still be afforded to all parties in a dispute whether that dispute is classified as an adversary proceeding or a contested matter").

### B.     The Acceptance Of A Plan By A Class of Claimants Cannot Deprive Non-Consenting Claimants Of Access To The Claims Allowance Process

19.     The Plan Proponents contend that depriving creditors of the right to get into court to resolve claims allowance issues is simply a way in which the plan "impairs" their claims, and that the acceptance by a requisite majority of a form of impairment may lawfully bind the entire class to that treatment—even those members of the class who object to it.

20.     That analysis is wrong. The claims allowance process is logically antecedent to the way in which a plan may impair an allowed claim. Otherwise put, while a class may bind a minority

to the *treatment* of the claim; the *determination* of that claim comes before anything that may happen under a plan of reorganization.

21. The Third Circuit described this analysis in *Solow v. PPI Enters.(U.S.) (In re PPI Enters. (U.S.))*, 324 F.3d 197, 203 (3d Cir. 2003), where it explained that a plan that paid allowed claims in full left those claims "unimpaired," even if the claim was reduced—by operation of the Bankruptcy Code—from what non-bankruptcy *law* would otherwise provide (in that case, because of the application of the section 502(d)(6) cap on a landlord's rejection damages claim). The operation of section 502(d)(6) was a form of "statutory impairment," which is analytically separate from being impaired under a plan. As the Third Circuit explained it, "impairment" can refer to one of "two distinct concepts: (i) plan impairment, under which the debtor alters the 'legal, equitable, and contractual rights to which [the] claim entitles the holder of such claim,' and (ii) statutory impairment, under which the operation of a provision of the Code alters the amount that the creditor is entitled to under nonbankruptcy law." *In re PPI Enters.,* 324 F.3d at 203.

22. The question of determining a creditor's allowed claim is thus *analytically distinct from*—and *antecedent to*—issues of plan impairment. Claim allowance is an individual statutory determination on each creditor's claim, ***not*** a *pro rata* class treatment that can be accepted or rejected by a class under a plan. The Plan Proponents improperly conflate these two concepts by proposing that Fire Victim Claimants vote to accept or reject alleged "plan impairment" that eliminates their statutory right to the claim allowance process carried out under the auspices of this Court. The Bankruptcy Code does not countenance, and this Court cannot confirm, a plan that proposes to "impair" the statutorily mandated process by which Fire Victim Claimants' claims are allowed. For this reason, unless the Trust Documents are revised to preserve Fire Victim Claimants' rights to adjudication of their claims by this Court, the Plan cannot be confirmed. *Filex,* 116 B.R. at 40; *see In re Beyond.com Corp.*, 289 B.R. 138, 143 (Bankr. N.D. Cal. 2003) ("Of greatest concern to the court are those provisions that dramatically reduce notice to creditors of matters that the drafters of the Bankruptcy Code and Rules considered fundamental to bankruptcy due process."); 7 *Collier on Bankruptcy* P 1129.02 (16th 2020) ("Section 1129(a)(1) can also be used as the grounds for denial of confirmation when the plan is contrary to provisions of title 11

Case: 19-30088   Doc# 7072   Filed: 05/05/20   Entered: 05/05/20 16:54:32   Page 14
of 31
US 167782311v7

not found in chapter 11, such as impermissible releases of third parties, or if the plan selectively rides roughshod over and attempts to nullify important provisions of the Bankruptcy Code.").

23. Depriving creditors of access to the courts for a determination of their claim is contrary to the Bankruptcy Code. The Trust Documents must be revised to restore Fire Victim Claimants' fundamental rights to adjudicate the merits of their claims and pursue any appeals provided for by statute. Unless the Plan is amended to so provide, it cannot be confirmed.

## II. THE TREATMENT AFFORDED INSURANCE IN THE TRUST DOCUMENTS IS UNJUST, UNREASONABLE AND VIOLATES LAW

24. As described in Paragraph 10 above, the Plan channels all Fire Victim Claims to the Trust, and replaces the statutory claims allowance process with a forced alternative dispute resolution. The rules for the treatment afforded insurance in Section 6.7(a) of the Plan and the proposed Trust Documents violate federal bankruptcy law, including section 502 of the Bankruptcy Code, regarding claims allowance.

25. Specifically, Section 2.6 of the Trust Agreement entitles the Trustee to reduce any "Covered Fire Victim Claim" on a "on a dollar-for-dollar basis" by the Fire Victim Claimant's "Available Insurance Recoveries," which include both amounts "actually paid" or "to be paid" to the Fire Victim by its insurer, and those amounts deemed by the Trustee to be "payable or otherwise owed to the Fire Victim" under an insurance policy. Trust Agreement § 2.6. In other words, Fire Victim Claims will be reduced even if the Fire Victim recovers little or nothing from its insurer, so long as the Trustee in his sole discretion determines that insurance is "available." *Id.*

26. Section 2.6 of the Trust Agreement also entitles the Trustee to reduce any Fire Victim Claim for *unpaid insurance*, if he determines in his sole discretion that the Fire Victim did not use "reasonable efforts" to obtain "available" insurance. "Reasonable efforts" is not defined,[3] and the Trustee apparently may even require a Fire Victim to sue its insurers if the Trustee deems that "reasonable." There is no time limit for a Fire Victim to take "reasonable efforts." A Fire

---

[3] Only one circumstance is recognized as constituting "reasonable efforts": if the insurer pays the victim amounts "equivalent to or greater than (i) the **full amount** of the [covered damages or loss] or (ii) the available **policy limits** for claims made for such damages or losses." Trust Agreement § 2.6(c) (emphasis added).

Victim settling with its insurer does so at its peril if the Trustee determines that the settlement was unreasonable and reduces a Fire Victim Claimant's claim by more than the Fire Victim actually received.

27.     While Available Insurance Recoveries do not include recoveries under an insurance policy that "cannot reasonably be construed to provide coverage," the Trustee alone makes that determination.  Nothing in Section 2.6 prevents him from disregarding even a denial of coverage from an insurance company, much less respecting a Fire Victim Claimant's conclusion that no additional insurance recoveries are likely, even when that conclusion is reached with the assistance of experienced insurance counsel.  Nor is the Trustee even required to conclude that the most reasonable interpretation of the policy is that it affords coverage; any arguably "reasonable" interpretation in favor of coverage, even if incorrect, will suffice.  The Fire Victim Claimant's only recourse is to hope that the Trustee will accept an assignment of its insurance rights, but the Trust Agreement is quick to point out that even that is not "require[d]." [4]  Trust Agreement § 2.6(c).

28.     These insurance provisions violate bankruptcy law for at least three reasons: (1) they ignore the long-standing principle set forth by the Supreme Court in *Ivanhoe Bldg. & Loan Ass'n of Newark, N.J. v. Orr*, 295 U.S. 243, 245–46 (1935), that the allowed amount of a claim is not reduced by actual or potential recoveries from other sources or third parties; (2) they violate the collateral source rule, which is a controlling state law doctrine that applies to bankruptcy claims and prevents a tort victim's recovery from being reduced by the amount of any insurance recoveries for the same losses; and (3) they violate section 1123(a)(4) of the Bankruptcy Code because they provide for unequal treatment among the class of Fire Victim Claimants.

29.     Along with the denial of the statutorily required claim allowance process (described in Part I.A), these attempts to deprive a creditor of the right to an appropriate allowed claim as provided under section 502 and governing state law cannot be "plan impairment" that can be imposed on objecting creditors (as described in Part I.B).  Claims are *allowed* under section 502

---

[4]     The Objectants also do not object to some requirement for Fire Victim Claimants to use commercially reasonable efforts to pursue insurance, so long as there are objective criteria, including a time limit (e.g., 6 months from the confirmation date), and no requirement obligating the Fire Victim Claimant to file a lawsuit against its insurer.

Case: 19-30088    Doc# 7072    Filed: 05/05/20    Entered: 05/05/20 16:54:32    Page 16 of 31
US 167782311v7

and underlying state law. There is no Bankruptcy Code provision (section 502 or otherwise) that requires a creditor's *allowed* claim to be offset or reduced by its own insurance recoveries, and certainly no provision that allows a Trustee to deduct what he thinks is a "reasonable" insurance recovery. As set forth in Part I.B above, impairment refers to the *treatment* of an *allowed* claim (not the allowance of the claim). The determination of that allowed claim under section 502 and state law is antecedent to the question of the claim's "treatment."[5]

### A. The Treatment Of Insurance Violates Federal Bankruptcy Law

30. As a matter of long-standing federal bankruptcy law, the allowed amount of a creditor's claim may not be reduced due to actual or potential recoveries from other sources or third parties. Rather, the claim is allowed in the full amount without any deduction, although recoveries from all sources cannot exceed 100% of the claim in order to avoid double recovery. This rule emanates from a 1935 Supreme Court decision holding that creditors are entitled to prove the full amount of their claim notwithstanding their recoveries from other sources. *Ivanhoe Bldg. & Loan Ass'n of Newark, N.J. v. Orr*, 295 U.S. 243, 245–46 (1935) ("Sections 1(23) and 57e do not, therefore, forbid the proof of a claim for the principal of the bond with interest, though the petitioner may not collect and retain dividends which with the sum realized from the foreclosure will more than make up that amount."); *see also RFC v. Denver & R.G.W.R. Co.*, 328 U.S. 495, 529 (1946) ("The rule is settled in bankruptcy proceedings that a creditor secured by the property of others need not deduct the value of that collateral or its proceeds in proving his debt").

31. Although decided under the Bankruptcy Act, *Ivanhoe* remains binding precedent under the Bankruptcy Code. The Supreme Court has stated that "[w]hen Congress amends the bankruptcy laws, it does not write 'on a clean slate.'" *Dewsnup v. Timm,* 502 U.S. 410, 419 (1992). As held by Judge Carlson in this District:

> Congress is presumed to have enacted the Bankruptcy Code with an understanding of the holding of Ivanhoe, and to have intended to

---

[5] Surely, the Debtors and the TCC cannot contend that a majority of the Fire Victim Class may vote to disallow certain creditors' claims altogether, or allow some creditors' claims in low fixed amounts. Yet, that is, in essence, what is being proposed through the Trust Documents' mechanics.

Case: 19-30088   Doc# 7072   Filed: 05/05/20   Entered: 05/05/20 16:54:32   Page 17 of 31
US 167782311v7

incorporate that holding into the Code, unless the language of the Code or its legislative history clearly provides otherwise. The Committee points to no provision in the Code that adopts a mechanism for accounting for payment by third parties different from that specified in Ivanhoe, nor to any statement in the legislative history indicating that Congress intended to overrule Ivanhoe.

*In re Del Biaggio*, 496 B.R. 600, 602-03 (Bankr. N.D. Cal. 2012).

32.     *Ivanhoe* has been followed time and again as a matter of federal bankruptcy law (not state law) under the current Bankruptcy Code, including in this District. *See In re Del Biaggio*, 496 B.R. at 605 (Bankr. N.D. Cal. 2012) ("In light of the four factors described above, I determine that the California Reduction–of–Claim Approach is not intended to apply to claims asserted in a federal bankruptcy case, and that *Ivanhoe* states a rule of federal bankruptcy law that must prevail over any contrary state law"). Other courts also routinely apply this basic principle. *See, e.g., Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 295 (3d Cir. 2012) ("Ivanhoe thus provides that a creditor may file a proof of claim for the total amount it is owed by a debtor even if it has recovered or may recover all or a portion of that amount from a non-debtor."); *In re Yelverton*, No. 09-00414, 2015 WL 3637440, at *6 (Bankr. D. D.C. June 10, 2015), *aff'd sub nom.* 2016 WL 7438656 (D.C. Cir. Dec. 21, 2016) ("only full satisfaction of [the creditor's] allowed claims would eliminate her claims as claims against the estate entitled to a pro rata distribution, because until she has fully collected her claims (from the estate and from any non-estate sources), her pro rata distribution from the estate would be based on the allowed amount of her claims without regard to the amounts collected from non-estate sources"); *In re Biovance Techs., Inc.,* No. BK10-82441, 2014 WL 2861003, at *4 (Bankr. D. Neb. June 23, 2014) (overruling debtor's objection that the amount of a lender's allowed claim should be reduced by payments received from third parties): *In re Nat'l Energy & Gas Transmission, Inc.*, 492 F. 3d 297, 301 (4th Cir. 2007) ("The debtors' argument is foreclosed by the combination of [*Ivanhoe*], and New York law, which governs pursuant to the Agreement. In *Ivanhoe*, the Supreme Court held that a creditor need not deduct from his claim in bankruptcy an amount received from a non-debtor third party in partial satisfaction of an obligation. Thus, as a matter of bankruptcy law, ET Power's debt to

Case: 19-30088    Doc# 7072    Filed: 05/05/20    Entered: 05/05/20 16:54:32    Page 18 of 31
US 167782311v7

Liberty is not reduced by the amount which Liberty received from GTN."); *In re Journal Register Co.*, 407 B.R. 520, 533 (Bankr. S.D.N.Y. 2009) ("We start with the proposition that members of an unsecured creditors class may have rights to payment from third parties, such as joint obligors, sureties and guarantors, and these rights may entitle them to a disproportionate recovery compared to other creditors of the same class (up to a full recovery)."); *Sec. Investor Prot. Corp. v. Waddell Jenmar Sec., Inc. (In re Waddell Jenmar Sec., Inc.*, 126 B.R. 935, 947 n.12 (Bankr. E.D.N.C. 1991), *aff'd sub nom., Sec. Investor Prot. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. (In re Waddell Jenmar Sec., Inc.)*, 991 F.2d 792 (4th Cir. 1993) (no reduction of claim in bankruptcy for recovery from third party where no double recovery).

33. Judge Carlson's decision in *Del Baggio* is instructive. The *Del Baggio* court found that, as a matter of federal bankruptcy law, the amount of a proof of claim need not be reduced by amounts recovered from a third party co-obligor (and even when California law would have required such a deduction). *Del Baggio*, *supra*, 496 B.R. at 603-04 (Bankr. N.D. Cal. 2012). Rather, Judge Carlson held that only the creditor's aggregate dividend from the estate is limited so that the creditor does not recover more than 100% of the claim from all sources, *i.e.*, a double recovery. *Id.* This recognizes the bankruptcy policy underlying *Ivanhoe* that some creditors may have a greater overall recovery due to separate rights they have against third parties, and having their own insurance policy (as is the case here), is but one example. *Id.* at 603 ("*Ivanhoe* decides that the amount the creditor's claim in the bankruptcy case is not affected by third-party payments, except to the extent payment from the debtor would produce a double recovery. Ivanhoe thus chooses to value equality of treatment by the debtor's estate above equality of overall outcomes among creditors having different rights against third parties."); *see also In re Journal Register Co.*, 407 B.R. at 533 (Bankr. S.D.N.Y. 2009) ("members of an unsecured creditors class may have rights to payment from third parties, such as joint obligors, sureties and guarantors, and these rights may entitle them to a disproportionate recovery compared to other creditors of the same class (up to a full recovery))."[6]

---

[6] The decisions in *In re Ahrens*, Nos. 16-1065 and 1117 – Ju, Ku, Ma, 2016 WL 6427279 (B.A.P. 9th Cir. Oct. 27, 2016), and *In re Kensington Apartment Properties, LLC,* No. 10-73976 CN,

34.    *Ivanhoe* is even more compelling in the instant case because there is no conflict between California state law and federal law.  Rather, California's state law collateral source rule operates in a manner similar to *Ivanhoe*.

### B.    The Treatment Of Insurance Violates The Collateral Source Rule

35.    The insurance provisions also violate the collateral source rule, which prohibits a tortfeasor from getting a benefit from a victim's insurance.  *Helfend v. Southern Cal. Rapid Transit Dist.*, 2 Cal. 3d 1, 10 (1970).  The collateral source rule does not go away in a bankruptcy case.  That being said, even though the Objectants are willing, notwithstanding the collateral source rule, to allow a credit for amounts *actually recovered* by a victim from his or her insurance in order to avoid a double recovery consistent with the *Ivanhoe* rule, there is no basis to give the Trust—standing in the shoes of the tortfeasor—any credit for amounts that have not been paid by insurance, simply because the Trustee, in his sole and unfettered judgment, determines that such amounts are "available," or because the Trustee determines they should be paid by the insurer, even if they are never paid.  Not only would the tortfeasor be getting a windfall from unrealized insurance, the claimant would be penalized for having bought insurance from an insurance company that decided for whatever reason not to honor its contract.

36.    Under the collateral source rule, a tort victim's claims against a tortfeasor (here the Trust standing in the shoes of the Debtors) **cannot** be reduced based on recoveries from the victim's own insurance—**and certainly not from a "available insurance" that has not been paid and may never be paid**.  *See, e.g.,* Restatement (Second) of Torts § 920A (1979) ("[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is

2019 WL 3933713 (Bankr. N.D. Cal. Aug. 19, 2019), are not to the contrary.  In *In re Ahrens*, the Bankruptcy Appellate Panel recognized the *Ivanhoe* rule and held that payments received by a creditor *from the debtor itself* must be taken into account to reduce the amount of the claim asserted against the debtor.  In *In re Kensington Apartment Properties, LLC,* Judge Novack addressed a dispute several years after plan confirmation and allowance of a secured creditor's claims by two co-obligor debtors and held that the lender in connection with post-confirmation refinancings and payoffs years later is entitled only to a single satisfaction of the total secured debt under California law.  This case had nothing to do with the allowance or amount of the claims in the chapter 11 cases or the *Ivanhoe* rule.

Case: 19-30088    Doc# 7072    Filed: 05/05/20    Entered: 05/05/20 16:54:32    Page 20 of 31
US 167782311v7

liable?"); *see also Krusi v. Bear, Stearns & Co.*, 144 Cal. App. 3d 664, 674 (1983) ("where the plaintiff obtains compensation from his *own* insurer or a source independent of ('collateral' to) the tortfeasor, plaintiff's tort recovery is *not* reduced") (emphasis in original).

37.    The fact that this issue arises in bankruptcy does not impact application of the collateral source rule.  "The Supreme Court has 'long recognized that the basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law.'" *Fitness Holdings Int'l, Inc. v. Hancock Park, et al.*, 714 F. 3d 1141, 1146 (9th Cir. 2013), citing *Travelers PG&E*, 549 U.S. at 450.  In *Travelers*, the Supreme Court made clear that a creditor's entitlement in the bankruptcy case arises from the underlying substantive law which "requires bankruptcy courts to consult state law in determining the validity of most claims."  549 U.S. at 450.  Thus, when the Bankruptcy Code uses the word "claim," meaning a right to payment, "it is usually referring to a right to payment recognized under state law."  *Id*.  The Supreme Court held that a bankruptcy court does not have the power to disallow claims cognizable under state law, unless there is some Bankruptcy Code provision allowing for such claims to be disallowed.  *Id*.

38.    The collateral source rule and its application clearly is an issue of state law.  *Berg v. First State Ins. Co.*, 915 F. 2d 460, 467 (9th Cir. 1990) ("[a] federal court applies state law when it deals with the collateral source rule").  In *Berg*, the court cited to *Helfend*, *supra*, where the California Supreme Court expressed that the collateral source rule "expresses a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities. . . . If we were to permit a tortfeasor to mitigate damages with payments from plaintiff's insurance, plaintiff would be in a position inferior to that of having bought no insurance, because his payment of premiums would have earned no benefit."  *Id*.  In keeping with these principles, bankruptcy courts have applied the collateral source rule where it has been raised as an issue.  *See, e.g., In re Brown*, 570 B.R. 98, 111 (W.D. Okla. 2017) (collateral source rule barred debtor's attempt to avoid obligation to creditor based on payment by title insurer); *In re Borsos*, 544 B.R. 201, 211-12 (E.D. Cal. 2016) (applying collateral source rule in context of violation of section 524(a) discharge injunction); *In re General Coffee Corp.*, 85 B.R. 905, 908 (S.D. Fla. 1988)

-16-

(under collateral source rule, creditor claims against bankruptcy estate could not be reduced by recoveries from collateral sources).

39.     Since under the collateral source rule a tortfeasor should not benefit from a claimant's *actual insurance recoveries*, it is axiomatic that unpaid insurance amounts, whether characterized as "available" or otherwise, cannot be deducted from a claimant's recovery.   This is true whether the case is in a state court or in a bankruptcy court, where state law applies to evaluate claims.

40.     Yet, this is what is proposed in the Trust Documents.  Not only are amounts actually received by a claimant from its insurance to be deducted from every claim, the Trustee "shall" also deduct amounts characterized as "available insurance" which are "to be paid, payable, or otherwise owed" by an insurer.  Trust Agreement § 2.6.  Whether amounts are "payable" or "otherwise owed" by an insurers is to be decided by the Trustee in his sole discretion.  The Trustee can disregard the plain meaning of the policies, and can disregard the fact that an insurer has denied or otherwise disputed coverage.  The Trustee also can decide in his sole discretion whether the claimant took "reasonable efforts to obtain insurance" and if "reasonable efforts" were not undertaken, then the Trustee can deduct from a claim "the amounts that could or should have been paid under a policy of insurance to the Fire Victim."  Thus, if the Trustee determines that "reasonable efforts" means that a given Fire Victim, in the face of a coverage denial, should have hired lawyers to file suit against its own insurer, then the Trustee can deduct from the Fire Victim Claimant's claim any amounts it believes the insurer "should have" or "could have" paid had the Fire Victim sued the insurance company.  And, if the Fire Victim sues and then settles, the Trustee could even second guess the amount of that settlement.

41.     Under the Trust Documents, the Trustee is given unfettered authority and discretion (without even the specter of court review) to reduce claims by amounts he deems should or could have been paid by an insurer, *but which were never paid* and will never be paid.[7]   This is

---

[7]     The only arguable guardrail placed on the Trustee is the statement that, "Available Insurance Recoveries shall not include any policy of insurance that cannot be reasonably construed to provide coverage for damages or losses arising from or attributable to a Wildfire."   A construction of the policy need not even be the most reasonable (much less correct)

US 167782311v7

inappropriate, unfair and clearly violates all notions of the collateral source rule and applicable state law which, along with section 502(b), determines the allowed amount of the claim. In no universe is a tortfeasor (or a Trustee standing in the shoes of a tortfeasor) entitled to benefit from a victim's unrecovered insurance. In no universe is the tortfeasor (or a Trustee standing in the shoes of tortfeasor) the arbiter of what constitutes "reasonable efforts" that a victim must take to pursue its own insurance monies. And in no universe is the tortfeasor (or a Trustee standing in the shoes of the tortfeasor), the decider of whether and how much a victim's claim should be reduced by insurance monies *never received* by the victim.[8]

## C. The Insurance Provisions Violate Section 1123(a)(4) As They Provide For Disparate Treatment Among Fire Victim Claimants

42.     Finally, Section 2.6 of the Trust Agreement violates section 1123(a)(4) of the Bankruptcy Code because it provides for disparate treatment among the single class of Fire Victim Claimants. Section 1123(a)(4) provides that "[n]otwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." This provision requires "equality of treatment of 'claims' or 'interests' placed in the same class." *Acequia, Inc. v. Clinton*, 787 F. 2d 1352, 1363 (9th Cir. 1986); *see also The FINOVA Group, Inc. v. BNP Paribas*, 304 B.R. 630, 637 (D. Del. 2004) (to treat some

---

interpretation to make this exception inapplicable. Moreover, since the Trustee is the one who decides this issue and the Fire Victim Claimant has no ability to seek review of the Trustee's determination, the Trustee has the unfettered ability to decide what is covered and what is not covered by whatever standard he decides. This hardly places any restriction on the Trustee's decision-making powers.

[8] While the Objectants submit that under *Ivanhoe* and the collateral source rule claims should be allowed in full without reduction for any insurance, they do not seek double recovery and are willing to agree to a process whereby insurance amounts *actually paid* by their insurers can be taken into account. A more equitable solution would be to treat insurance payments as Section 2.8 of the Trust Agreement treats payments from FEMA, and simply allow credits for amounts actually received from an insurer after a finite period of time has elapsed, which would be used to ensure that a claimant does not recover more than 100% of its allowed claim. While this approach still violates the collateral source rule, the Objectants would consent to such treatment of insurance payments, provided there is an ability to seek judicial review of any claim determinations. However, under no circumstance is it ever proper to reduce claims or recoveries by insurance monies that have not been paid and may never be paid, just because the Trustee determines in his sole discretion that there is uncollected "available insurance."

Case: 19-30088    Doc# 7072    Filed: 05/05/20    Entered: 05/05/20 16:54:32    Page 23
US 167782311v7                                    of 31

creditors differently than others in the same class would "violate the equal treatment mandate of Section 1123(a)(4)"). All claimants in a class must have the same opportunity for recovery, meaning that all members of a class are subject to the same process for claim payment. *In re W.R. Grace & Co..*, 729 F. 3d 311, 327 (3rd Cir. 2013). For example, claimants "would receive the 'same treatment' if they all were permitted to present their claims to a jury and were all paid whatever amounts the jury awarded, until funds were no longer available." *In re Joint E. & S. Dist. Asbestos Litig.*, 982 F. 2d 721, 749 (2d Cir. 1992).

43. In the present case, the insurance provisions lead to impermissible disparate treatment between claimants within the Fire Victim class.

44. First, claimants with insurance are treated <u>worse</u> than claimants without insurance. A claimant that received some insurance money and went to trial in state court and recovered $100,000 from the jury would be entitled to the same amount ($100,000) from the tortfeasor as a claimant without insurance that also recovered $100,000 from a state court jury. This is because the collateral source rule does not permit the tortfeasor to get a windfall if a claimant paid premiums to obtain insurance. But under the insurance provisions in the Trust Documents, the claimant without insurance would get $100,000, and the claimant with an insurance payment would get less. That violates 1123(a)(4). While the Objectants are willing to live with taking insurance payments into account to avoid double recovery if a claimant *actually recovered* insurance funds, the Trust Documents allow the Trustee to reduce claims by amounts *never paid* by an insurance company, if the Trustee decides such amounts are "available." Thus, a claimant with a $100,000 claim which was unpaid but deemed "available" insurance will get less than a claimant with the same $100,000 claim who did not purchase insurance for the same exact claim. This result eviscerates all notions of equal treatment guaranteed by the Bankruptcy Code, and penalizes Fire Victim Claimants who purchased insurance in favor of those who decided to all go uninsured.

45. Second, the insurance provisions explicitly provide for unequal treatment among Fire Victim Claimants with unpaid insurance. Specifically, Section 2.6(c) of the Trust Agreement provides:

US 167782311v7

> If a Fire Victim is unsuccessful in obtaining payment of the available policy limits from an insurer after exercising reasonable efforts in making claims for damages or losses arising from or attributable to a Wildfire, the Trustee may, in his or her sole and absolute discretion, accept an assignment of his or her rights against the insurance company (the "Claimant Insurance Rights") to the Trustee, in which event the Fire Victim shall be deemed to have exercised reasonable efforts with respect to the recoveries available from such insurer for such damages or losses. For the avoidance of doubt, nothing in this Section shall require the Trustee to accept an assignment of a Fire Victim's insurance rights.

46.     Under this provision, the Trustee is granted the explicit power to favor some Fire Victim Claimants over others in its "sole and absolute discretion." In other words, for any reason (or no reason) whatsoever, the Trustee is empowered to accept an assignment of an insurance claim from one claimant and thereby pay that claimant more money than another claimant with an insurance claim that is not assigned to the Trustee. The Trustee also will be able to apply a harsher "reasonable efforts" standard to some claimants and not others solely by interpreting their insurance coverage in a more expansive manner. Either way, the disparate treatment of Fire Victim Claimants within the same class violates section 1123(a)(4), and renders the Plan non-confirmable.

## III.     MATERIAL CHANGES TO THE TRUST DOCUMENTS MUST BE APPROVED BY THE COURT

47.     The Trust Agreement permits the Trustee[9] to materially modify the terms of the Trust Agreement without the approval of the Bankruptcy Court. Section 8.3 of the Trust Agreement simply provides that, "Any modification or amendment made pursuant to this Section 8.3 must be done in writing."[10]

48.     This construct is extraordinarily problematic and violates the Bankruptcy Code insofar as there is no limitation on the type of amendments that could be implemented, including, for example, amendments that would result in disparate treatment among Fire Victim Claims in

---

[9]     It is unclear under the Trust Documents whether the amendment of the Trust Agreement can be unilaterally done by the Trustee or if it requires the consent of the other parties, such as the seven members of the Trust Oversight Committee, who are signatories to the agreement.

[10]    Section 8.3 limits amendments to the Trust Agreement in certain very limited respects (e.g., the effect of the Channeling Injunction, the Trust's qualified settlement fun status), but does not limit any other type of amendments beyond the listed exceptions including those that implicate the allowance and treatment of Fire Victim Claims.

Case: 19-30088     Doc# 7072     Filed: 05/05/20     Entered: 05/05/20 16:54:32     Page 25 of 31

violation of section 1123(a)(4) of the Bankruptcy Code. If Section 8.3 of the Trust Agreement were to remain in its current form the Trustee would have the unfettered ability to modify the Trust Documents in ways that would violate the Bankruptcy Code and would never have been approved by the Bankruptcy Court if presented now. For example, the Trustee could amend the Trust Agreement to exclude Claimants over a certain age or based on their political affiliation. More realistically, the Trustee could modify the Trust Documents with the goal of disadvantaging large Fire Victim Claims. Such changes would result in unequal and disparate treatment among Fire Victim Claims in violation of section 1123(a)(4) of the Bankruptcy Code and would certainly not be approved by the Bankruptcy Court. But, as currently constructed, the Trustee can unilaterally make those changes and the Fire Victim Claimants have no ability to object. Allowing the Trustee such absolute power and discretion, without the judicial oversight of this Bankruptcy Court, is neither fair nor appropriate as it leaves the Fire Victim Claimants vulnerable to potential mischief and, as noted, it runs afoul of the Bankruptcy Code because it risks violation of, among other things, section 1123(a)(4).

49.    The solution is simple:  The first sentence of Section 8.3 of the Trust Agreement should be modified as follows (with modifications reflected in bold and underline):  "Any modification or amendment made pursuant to this Section 8.3 must be done in writing **and, in the case of material modifications or amendments, shall be subject to the approval of the Bankruptcy Court after notice and hearing**."  Absent that revision, the Fire Victim Claimants will have no assurance that the Trust Documents will do what they purport to do, and they will have no assurance that they will receive the equal, fair and pro rata treatment that is required by the Bankruptcy Code and by the current forms of the Trust Documents.

**IV.    THE TRUST DOCUMENTS IMPROPERLY ALLOW THE TRUSTEE TO HOLD FINANCIAL INTERESTS AND ACT AS ATTORNEY, AGENT OR PROFESSIONAL, FOR FIRE VICTIM CLAIMANTS**

50.    Section 5.9 of the Trust Agreement states that:

Except as otherwise contemplated and disclosed in the Trust Documents or to the TOC after Effective Date of this Trust, the Trustee shall not, during the term of his or her service, hold a financial interest in, act as attorney or agent for, or serve as any other professional for any entity with a financial

Case: 19-30088    Doc# 7072    Filed: 05/05/20    Entered: 05/05/20 16:54:32    Page 26
of 31
US 167782311v7

interest in the Trust, provided that any passive investment held by the Trustee shall not constitute a conflict of interest under this Section 5.9. Any violation of this Section 5.9 shall be cause for removal of the Trustee.

Under that provision, the Trustee is allowed to hold a substantial, nonpassive financial interest in, or act as attorney, agent or professional for, one or more of the Fire Victim Claimants. No explanation has been offered for why it would ever be appropriate for the Trustee to do these things. The Trustee is being generously compensated for his work in connection with the Trust, as detailed in Section 5.6 of the Trust Agreement, and under the circumstances he should not be taking on any nonpassive financial interest in the Fire Victim Claimants, nor should he be taking on any role as attorney, agent or professional for any of the Fire Victim Claimants. Any such interest or role undoubtedly has an appearance of impropriety and it jeopardizes the Trustee's ability to act impartially, which is especially critical since the Trustee has the last word on the allowance and treatment of Fire Victim Claims. Disclosure to the TOC is not a sufficient way to police these matters. The Trustee should be disinterested and independent to ensure fairness in the process. Therefore, all nonpassive financial investments in the Fire Victim Claimants by the Trustee should be prohibited, as should attorney, agent and professional roles.[11]

51. Section 5.9 should be revised as follows (with modifications reflected in bold/strikethrough/underline):

> **Except as otherwise contemplated and disclosed in the Trust Documents or to the TOC after Effective Date of this Trust, the** Trustee shall not, during the term of his or her service, hold a financial interest in, act as attorney or agent for, or serve as any other professional for any entity with a financial interest in the Trust, provided that any passive investment held by the Trustee shall not constitute a conflict of interest under this Section 5.9. Any violation of this Section 5.9 shall be cause for removal of the Trustee.

---

[11] An alternative solution would be to require Bankruptcy Court approval for any instance in which the Trustee is going to take a financial investment in, or serve as attorney, agent, or other professional for, one of the Fire Victim Claims. That would allow the Bankruptcy Court to evaluate the facts and circumstances of the proposed investment or agent-role and determine at that time whether it is appropriate and warranted.

-22-

US 167782311v7

## V. THE SETOFF AND RECOUPMENT RIGHTS OF THE DEBTORS, REORGANIZED DEBTORS, AND THE TRUSTEE SHOULD BE CLARIFIED

52. There is a fundamental inconsistency between the Plan and the Trust Documents as to who between the Debtors and Reorganized Debtors (collectively, the "**Debtor Entities**"), on the one hand, and the Trustee, on the other hand, may claim a right to set off and recoup against Allowed Fire Victim Claims. Specifically, Section 5.13 of the Plan provides that the Debtor Entities may "offset or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim . . . ." Plan § 5.13. The Plan does not purport to transfer these setoff rights to the Trust—not could it absent a transfer of the Debtors' underlying claims against a Fire Victim. But contradicting that reality, the Trust Agreement states that the Trust shall have all "offsets" and "recoupments" regarding the Fire Victim Claims that the Debtors or Reorganized Debtors have or would have had under applicable law. Trust Agreement § 1.4(b). The Trust Agreement also provides that the "Trustee is entitled to setoff and recoupment to the extent permissible under the Plan." Trust Agreement § 4.4. These provisions create ambiguity and significant uncertainty with respect to which entities may be able to assert setoff and recoupment rights against Fire Victim Claims. The Plan and Trust Documents must be clear and consistent as to which entity may assert these rights and why. Under any circumstance, it cannot be both entities and it cannot be left ambiguous. The Fire Victim Claimants should not be compelled to defend setoff claims from both the Debtor Entities and the Trustee, in different forums, with each entity asserting the same rights as against a Fire Victim. This is no theoretical issues. Several of the Objectants in the ordinary course commercially transact with the Debtors in sums upwards to several tens of millions of dollars. They should not be exposed to duplicative or competing setoff and recoupment claims.[12]

---

[12] Section 10.7 of the Plan suggests that, through the Channeling Injunction, Objectants would be prohibited from "asserting or accomplishing any setoff . . . or recoupment of any kind" against the Reorganized Debtor. This provision would clearly violate section 553 of the Bankruptcy Code, which preserves Objectants' right of setoff against any claims held by the Debtors. This separate issue, which does not implicate the Trust Documents, is beyond the scope of this Objection and would be raised at the Confirmation Hearing.

Case: 19-30088   Doc# 7072   Filed: 05/05/20   Entered: 05/05/20 16:54:32   Page 28
of 31
US 167782311v7

## VI. THE CLAIMANT RELEASE MUST BE TEMPORALLY LIMITED

53. The Claimant Release (as defined in the Trust Agreement and attached thereto as Exhibit 4), as currently constructed is too broad, as it releases the Released Parties (as defined therein), from any and all claims and causes of action arising both prior to and *after* execution of the Claimant Release. *See* Ex. 4, Trust Agreement. Because of the contemplated staggered, interim distribution of Plan consideration to Fire Victim Claimants, there will exist a period of time following execution of a Claimant Release where the Released Parties could potentially take fundamentally improper actions that adversely affect the Fire Victim Trust and the consideration held for the benefit of the Fire Victim Claimants prior to the full and final satisfaction of a Fire Victim Claim. For example, the Claimant Release as currently drafted would release a Released Party from liability even where that Released Party absconded with Trust Assets. The Claimant Release should be modified to make clear that the release is limited to any and all claims and causes of action the Fire Victim may have had *on or prior to* the execution thereof.

54. The operative release provision of the Claimant Release should be modified so that it is limited to claims "**from the beginning of time through the execution date of this release.**"

## VII. FIRE VICTIM CLAIMANTS ARE ENTITLED TO REIMBURSEMENT OF ATTORNEYS' FEES

55. The CRP impermissibly deny Fire Victim Claimants with property damage losses the right to seek reimbursement of their attorneys' fees. Article IX, entitled "Hold-Back for Attorney Liens," provides as follows: "[t]he payment of attorney's fees incurred by Claimant . . . is the sole obligation of Claimant. Neither the Trustee nor the Trust is responsible for the payment of any attorney's fees . . . incurred in connection with a Claim." In any inverse condemnation proceeding resolved in favor of the plaintiff (as was the case here),[13] however, Cal. Civ. Proc. Code § 1036 entitles claimants, as part of any judgment or settlement, to "a sum that will . . . reimburse the plaintiff's reasonable costs, disbursements, and expenses, including reasonable attorney . . . fees, actually incurred because of that proceeding." *See also Aetna Life & Casualty Co. v. City of*

---

[13] *See Memorandum Decision on Inverse Condemnation*, dated November 27, 2019 [Dkt. # 4895].

-24-

*Los Angeles* (1985) 170 Cal. App. 3d 865, 880 (appellate court remanded case to trial court to award reasonable attorney's fees based on calculation of attorney's services based on time expended on case). While the Objectants appreciate the complexity of addressing attorney liens on personal injury claims, the CRP cannot solve that problem by denying Fire Victim Claimants with property damage claims the right to recover their reasonable attorneys' fees afforded under applicable state law. *See also Travelers v. PG&E*, 549 U.S. 443 (claims allowance determined under state law).

## VIII. THE TRUST DOCUMENTS FAIL TO ESTABLISH ADEQUATE STANDARDS FOR THE ADJUDICATION OF CLAIMS

56. While the CRP goes to great length to explain the types of damages Claimants may attempt to assert (assuming adequate proof), no standards are provided as to how Fire Victim Claims will actually be adjudicated. Article I of the CRP merely obligates the Trust to "consider" all damages and costs recoverable under California law or, if applicable, other non-bankruptcy law. CRP, Article I (Claimant Eligibility). Nothing obligates the Trust or the Neutrals (as defined in the Trust Agreement), to actually follow the law, so long as they "consider" it. Moreover, even if a Neutral determines that an award should be increased or reconsidered because of a mistake by the Claims Administrator, Article VIII(3) of the CRP empowers the Trustee to "accept, reject, revise the Appeals Determination," without regard to applicable law and for any reason or no reason at all. The "Trustee Determination" then becomes the "final Claims Determination regarding both eligibility and payment amount, if any" unfettered by review "by any Court." CRP, Article VIII(3). These are not the hallmarks of a fair and equitable process. This is not even due process, and should not be allowed by this Court.

## CONCLUSION

57. WHEREFORE, the Objectants respectfully request that the Court direct the Plan Proponents and TCC to modify the Trust Documents to address the concerns set forth in this Objection.

[*Signatures on Following Page*]

Case: 19-30088   Doc# 7072   Filed: 05/05/20   Entered: 05/05/20 16:54:32   Page 30
US 167782311v7                                    of 31

| | |
|---|---|
| 1 | Dated: May 5, 2020 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | Dated: May 5, 2020 |
| 7 | |
| 8 | |
| 9 | |
| 10 | Dated: May 5, 2020 |
| 11 | |
| 12 | |
| 13 | |
| 14 | Dated: May 5, 2020 |

Dated: May 5, 2020

RESPECTFULLY SUBMITTED:

NORTON ROSE FULBRIGHT US LLP

By: */s/ Rebecca J. Winthrop*
    Rebecca J. Winthrop
    David A. Rosenzweig
    Attorney for ADVENTIST HEALTH

Dated: May 5, 2020

REED SMITH LLP

By: */s/ David E. Weiss*
    David E. Weiss
    Attorneys for PARADISE ENTITIES

Dated: May 5, 2020

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Benjamin Mintz*
    Benjamin Mintz
    Attorneys for AT&T

Dated: May 5, 2020

WILMER CUTLER PICKERING HALE & DORR LLP

By: */s/ Craig Goldblatt*
    Craig Goldblatt
    Attorneys for COMCAST

-26-