Steven S. Kane, Esq., SBN: 061670
Bonnie E. Kane, Esq., SBN: 167700
**THE KANE LAW FIRM**
402 W. Broadway, Suite 2500
San Diego, CA 92101
Telephone: (619) 236-8700
Facsimile:  (619) 236-1370
E-mail: skane@thekanelawfirm.com
E-mail: bonnie@thekanelawfirm.com

Attorneys for KAREN GOWINS Creditor

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re:*<br><br>PG&E CORPORATION<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas & Electric<br>■ Affects Both Debtors<br><br>*All papers shall be filed in the Lead Case, No.19-30088 (DM)* | **Case No. 19-30088 (DM)**<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**SUPPLEMENT TO JOINDER ON BEHALF OF KAREN GOWINS IN WILLIAM B. ABRAMS' MOTION TO DESIGNATE IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §§ 1125(b) AND 1126 (e) AND BANKRUPTCY RULE 2019**<br><br>Date:   May 12, 2020<br>Time:  10:00 A.M.<br>Place:  United States Bankruptcy Court<br>         Courtroom 17, 16th Floor<br>         San Francisco, CA 94102 |

## I. INTRODUCTION

The relevant issue in this Motion is whether or not Watts Guerra LLP, Mikal Watts and their affiliated counsel have failed to perform their obligations under California Rules of Professional Conduct Rule 1.7 to disclose an obvious conflict which they have in representing 16,000 tort claimants in this case and obtained written waivers of the conflict from each client

---

SUPPLEMENT TO JOINDER ON BEHALF OF KAREN GOWINS IN WILLIAM B. ABRAMS' MOTION TO DESIGNATE IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §§ 1125(b) AND 11226 (e) AND BANKRUPTCY RULE 2019

Since Mr. Watts and his affiliates have not made compliant disclosures and obtained written waivers from each client prior to soliciting "yes" votes for the proposed Plan from their clients, any "yes" voters obtained without compliance should be designated as procured in bad faith and should be excluded from the vote count.

## II. ARGUMENT

**A. The Undisclosed and Unwaived Conflict Presents a Significant Risk Regarding The Attorneys' Continued Uncompromised Representation of Their Clients.**

Citing Rule 1.7(c) dealing with conflict situations in which a "significant risk" arising from the conflict does not exist (as it clearly does in this case), Mr. Watts contends that the only requirement to cure the conflict is to make disclosure to his 16,000 clients. (Reply to Abrams' Motion to Designate Improperly Solicited Votes; Docket No. 6973 p. 3, lns. 19-28, Pg. 4, lns. 1-8). However, it is obvious from all of his statements and declarations both in the pleading for this Motion, and, made outside the litigation, that *Mr. Watts and his associates have failed to make full disclosure of the conflict to more than a small percentage of their clients.* In her expert opinion, qualified ethics expert Heather Rosing considers the significance of the failure to disclose and obtain waivers of the conflict and states:

> "Here, Watts Guerra has an outstanding debt of up to $100 million. Significant portions of that debt are held by Apollo and Centerbridge. Regardless of their legal ability to direct Watts to act in any particular way regarding the settlement of this litigation, Watts has admitted that they "tried to play him," that they introduced him to principles involved in negotiations , and that they have requested that he recommend a particular resolution. Accordingly, this relationship *represents a significant risk* that Watts' loyalty to his clients could be limited.
>
> (Declaration of Heather L. Rosing; P. 7, lns. 8-13.)
>
> (Emphasis added.)

2

**B. Mr. Watts, Watts Guerra and their Affiliates Were Required to Make a Compliant Disclosure of the Conflict As Soon as they Learned of It in November, 2019 at the Latest.**

On the subject of the Respondents' duty to disclose the known conflict, Ms. Rosen states:

"Watts was on notice of this risk at least as early as November 2019 when Apollo introduced him to Lahoud so that Lahoud could attempt to influence Watts. By that time, Watts knew of Apollo's and Centerbridge's financing of both his firm and PG&E since the latter reported this action. At that time, he should have obtained informed written consent from his clients to continue as their counsel. There is no dispute that he failed to do so.

(Declaration of Heather L. Rosing; P. 7, lns. 14-18.)

Watts' November, 2019 conversation with Lahoud, in which Lahoud attempted to influence Mr. Watts' actions and advice to his clients created an unavoidable duty to disclose the conflict to his clients and seek waivers from each of his 16,000 clients of that conflict. Absent the waiver, Watts and his affiliate lawyers should have withdrawn from representation.

Importantly, Ms. Rosen describes what a compliant conflict disclosure must contain:

"Although Watts claims he has made disclosures to comply with his ethical obligations, Watts states that he did so at a town hall meeting and by sending a link of that town hall meeting to his clients not in attendance. I also find it highly unusual that a lawyer would make 'disclosures' in an instance where the lawyer has no conflict. That is, the conclusion that there is no conflict and the act of making disclosures are inconsistent with one-another.

As a preliminary matter, such 'disclosures' are insufficient to comply with the mandates of Rule 1.7. The rule expressly provides that disclosures must be made in writing. A writing requirement exists to ensure that lawyers fulfill their obligation to explain matters to the extent reasonably necessary to permit their clients to make informed decisions regarding the representation. *See* Rule Prof. Conduct, rule 1.4(b). For example, in a case like this where a lawyer has more than 16,000 clients, it is a virtual certainty that they have varying levels of sophistication and will need different levels of detail and explanation for the disclosure to be effective. Moreover, it is not clear whether all 16,000 of Watts' clients speak English as their primary language. To the extent that they do not, there is no indication that they were provided this information in their primary language.

(Declaration of Heather L. Rosing; P. 8, lns. 2-16.)

3

SUPPLEMENT TO JOINDER ON BEHALF OF KAREN GOWINS IN WILLIAM B. ABRAMS' MOTION TO DESIGNATE IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §§ 1125(b) AND 11226 (e) AND BANKRUPTCY RULE 7023 USBE/NDCA No. 19-30088 (DM)

Not only did Mr. Watts and his affiliates fail to make a full, compliant disclosure in November, 2020 as required by Rule 1.7, there is no evidence that they have *ever made such a complete disclosure as required by Rule 1.7.*

The Court should correct this failure by granting the Motion.

**C. Since Nearly All of Mr. Watts' Clients Have Already Voted For the Plan, It Is Too Late to Remedy the Conflict Simply By Providing Compliant Disclosure. A Written Waiver of the Conflict From Each Client is Required.**

The great majority of Watts Guerra's clients have already voted, so, the vote result would be unaffected by disclosure now of the conflict addressed by this Motion without requiring a waiver in order for a particular "yes" vote to be counted. *See* Joint Report Regarding the Status of the Vote filed by Mr. Watts before Judge Donato, Case No. 19-cv-05257, Docket No. 345, p 3, stating that as of April 30, 2020, 98.9% of Mr. Watts' clients had voted. Since Mr. Watts failed to disclose the conflict to his clients nearly six months ago immediately after November 5, 2019 when, as he admitted, he first became aware of that conflict, (See Exhibit D, p. 1, to William B. Abrams Motion to Designate Improperly Solicited Vote, Docket 6799) the only remaining effective remedy without a complete re-vote is designation and disqualification of "yes" votes of clients affected by the acknowledged and unremedied conflict of interest.

> "Moreover, it is axiomatic that a lawyer who violates obligations to a client, such as Watts Guerra did here by failing to provide a written disclosure or obtaining informed written consent when aware of a conflict must then obtain informed written consent to proceed in the matter. Otherwise, there is the peril that the lawyer may conduct the representation in a manner that is beneficial to the lawyer's interests, but antagonistic to the client's interests. *See, e.g* San Diego County Bar Assoc. 2017-1 (addressing conflicts when lawyers defend their own work). As Watts Guerra has claimed that it has met its obligations, it seems apparent that it has failed to meet this obligation as well."

(Declaration of Heather L. Rosing; P.9, lns. 16-23.)

4

SUPPLEMENT TO JOINDER ON BEHALF OF KAREN GOWINS IN WILLIAM B. ABRAMS' MOTION TO DESIGNATE IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §§ 1125(b) AND 11226 (e) AND BANKRUPTCY RULE 7072

Case: 19-30088    Doc# 7073    Filed: 05/06/20    Entered: 05/06/20 00:08:19    Page 4 of 8

USBE/NDCA No. 19-30088 (DM)

Respondent makes a series of conclusory statements, not supported by any citation, authority or other evidence that the situation created by his litigation financing is harmless and should be of no concern to the Court, including:

1. The Credit facility is not contingent on this litigation:

2. Lenders have been given no right of control concerning the litigation; and

3. Watts Guerra has disclosed its communications regarding the credit facility to its clients.

(Reply to Abrams' Motion to Designate Improperly Solicited Votes; p. 10, lns. 3 – 20.)

In fact, Respondents' pleadings reveal almost nothing concerning the terms and conditions of the litigation financing agreement, including what influence those terms might give the Assignees, Centerbridge and Apollo, over Watts Guerra's advice to its clients and its actions on their behalf in the case. Watts Guerra's fails to support its claims that the litigation funding assignment creates no conflict although the evidence which might prove its point certainly is in their possession. Respondent's decision to withhold this information gives the Court very little opportunity to assess the conflict issue.

In her expert opinion, Ms. Rosing refers to this deficiency of information stating:

"Neither Watts nor anybody else from Watts Guerra has produced any documentation pertaining to the loan by Stifel. As a result, the terms cannot be confirmed. Watts Guerra has not produced a lending agreement, the covenants imposed by the lender, a note, security agreements, or documents reflecting the terms under which it can reassign the payment of the obligations, and the consideration for the same. Because the repayment terms and security terms have not been disclosed, it is not possible to determine whether the loan is truly nonrecourse, as described by Watts Guerra."

(Declaration of Heather L. Rosing; P. 5, lns. 22-25.)

Mr. Watts repeatedly claims that he has disclosed the conflict created by assignment of his

Case: 19-30088    Doc# 7073    Filed: 05/06/20    Entered: 05/06/20 00:08:19    Page 5 of 8
USBE/NDCA No. 19-30088 (DM)

credit facility obligation to Centerbridge and Apollo, (Reply to Abrams' Motion to Designate Improperly Solicited Votes; p. 11, lns. 25-27.) Pg. 4, lns. 3-9), but that contention is directly contradicted by the declarations *of his own former clients*, Declaration of Geoffrey B. Reed, p. 3, lns. 4-10. Although Mr. Reed terminated Watts Guerra LLC and associated counsel only on April 22, 2020, he states:

> "None of my prior lawyers or their affiliates in this case, including Watts Guerra and Mikal Watts, have ever disclosed to me orally or in writing their existing or potential obligation to Apollo and Centerbridge which are major financing participants in the proposed plan." (Declaration of Geoffrey B. Reed, p. 3, lns 4-7)

He also points out he would have liked to have known how Mr. Watts' litigation was financed, because of the barrage of media and direct mail solicitation he was subjected to by Watts and associates. (Declaration of Geoffrey B. Reed, p. 2, lns 25-26, p. 3, lns. 1-3)

Mr. Reed further states he had never received a ballot or plan disclosure materials from his former Attorneys, even though he received weekly emails (Declaration of Geoffrey B. Reed, p. 2, lns. 12-17.)

The contention of Mr. Watts that the use of credit by Mr. Watts has not impacted the fair result achieved by the plan is flatly wrong. It is absurd to contend that acquisition of litigation debt of plaintiffs' lawyers by major Plan financial participants (here, Centerbridge and Apollo.) does not put those participants in a position to unduly influence the advice given by the lawyers to their clients regarding the Plan vote. Indeed, the integrity of the Plan vote, particularly by thousands of fire victims, many still suffering from the impact of terrible wildfires, is at the heart of confirming a "fair and just" plan. Indeed, Mr. Watts admits that at least one representative of the Plan financing entities, Mr. Lahoud, approached him to suggest positions that he should take in the case on behalf of his clients. It is certainly not required that Moving party prove actual

6

SUPPLEMENT TO JOINDER ON BEHALF OF KAREN GOWINS IN WILLIAM B. ABRAMS' MOTION TO DESIGNATE IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §§ 1125(b) AND 11226 (e) AND BANKRUPTCY RULE 2078

Case: 19-30088 Doc# 7073 Filed: 05/06/20 Entered: 05/06/20 00:08:19 Page 6 of 8

USBE/NDCA No. 19-30088 (DM)

misconduct in order to invoke the provisions of Rule 1.7 requiring both disclosure to all of the clients, and, written waiver of the conflict.

### D. The Evidence Shows That The Conflict Has Prevailed During the Voting Period

There is massive evidence that Mr. Watt's clients were constantly contacted to obtain a "yes" vote, and, further, *that all claimants* were solicited to vote yes by public newspaper ads, direct mail, radio, social media ads and open town hall meetings before they received their ballots. This is simply impermissible solicitation. See Exhibits "A", "B" and "C" to Willaim B. Abrams Motion to Designate Improperly Solicited Votes Pursuant to 11 U.S.C. §§ 1125(b) and 1126(e) and Bankruptcy Rule 2019, Docket No. 6799. See also Notice of Plan Procedure Irregularities, Docket No. 7069, Exhibits 1-5, and Exhibit 6, KQED "As PG&E Fire Survivors Near Deadline to Vote on Settlement, Some Still Don't Have Ballots" dated May 4, 2020; Affidavit of Joseph R. Lucia Evidencing Service of Solicitation Packages and Ballots to Fire Victims, Docket No. 7014 (showing that counsel did not receive ballots and disclosure material until April 24, 2020)

## III. CONCLUSION

This case presents many unusual challenges not confronted in most Chapter 11 proceedings, not the least of which is the June 30, 2020 deadline for Plan confirmation imposed by the California Legislature in enacting AB 1054. When proceedings must be accelerated due to outside conditions such as the deadline for plan confirmation imposed by AB 1054, it becomes even more important that the integrity of the process be protected and preserved by requiring full and effective compliance with ethical rules. Here, the case includes a class of tens of thousands of mass tort victims who have suffered tremendous, lasting damages. Freedom of the fire victims' lawyers to exercise full and unfettered judgment on behalf of their clients by strict

7

SUPPLEMENT TO JOINDER ON BEHALF OF KAREN GOWINS IN WILLIAM B. ABRAMS' MOTION TO DESIGNATE IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §§ 1125(b) AND 11226 (e) AND BANKRUPTCY RULE 2019

USBE/NDCA No. 19-30088 (DM)

Case: 19-30088   Doc# 7073   Filed: 05/06/20   Entered: 05/06/20 00:08:19   Page 7 of 8

application of the Rules of Professional Conduct is one way to guard that integrity. Without enforcement of compliance with ethical rules, that integrity is subject to doubt.

## ORDER REQUESTED

Moving party, Karen Gowins, requests that the Court issue the following order with respect to the established conflict of interest with regard to Mr. Watts, the Watts Guerra law firm, his affiliates and their 16,000 clients who are tort claimants in this case:

1. Within five days of the date of the order, Respondents shall present a factual and concise but complete disclosure of any and all conflicts of interest or potential conflict regarding litigation financing which Respondents have obtained with regard to representing clients in this case for approval by the Court;

2. After approval, Respondents shall mail, send by U.S. mail or deliver each of their clients in this case by some other reliable method the approved disclosure along with a form by which clients may, at their discretion, waive the conflict in writing.

3. Votes of Watts' and affiliated counsel's clients in favor of the proposed plan who have not executed the written waiver required by the Order shall be designated as not being in good faith and shall not be counted in the Plan vote tally.

Respectfully submitted.

Dated: May 5, 2020.     **THE KANE LAW FIRM**

By: /s/ *Steven S. Kane*
STEVEN S. KANE
Attorneys for Creditor KAREN GOWINS

8

SUPPLEMENT TO JOINDER ON BEHALF OF KAREN GOWINS IN WILLIAM B. ABRAMS' MOTION TO DESIGNATE IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §§ 1125(b) AND 11226 (e) AND BANKRUPTCY RULE 2073

Case: 19-30088   Doc# 7073   Filed: 05/06/20   Entered: 05/06/20 00:08:19   Page 8 of 8
USBE/NDCA No. 19-30088 (DM)