WATTS GUERRA LLP
Mikal C. Watts
Paige Boldt, SBN 308772
70 Stony Point Road, Suite A
Santa Rosa, California 95401
Phone: (707) 241-4567
2561 California Park Drive, Suite 100
Chico, California 95928
Phone: (530) 240-6116
Email: mcwatts@wattsguerra.com

*Attorney for Numerous Wild Fire Claimants*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br><br>Debtors. | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**OPPOSITION TO WILLIAM B. ABRAMS MOTION TO DESIGNATE IMPROPERLY SOLICITED VOTES PURSUANT TO 11 U.S.C. §1125(B) AND 1126(E) AND BANKRUPTCY RULE 2019 & JOINDERS THERETO** |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Date: May 12, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Re: Docket No. 6799, 6939, 6964, 6963, 6944, 6946, 6983, 7004, 7069, 7073 |

TO THE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD

On April 20, 2020, William Abrams ("ABRAMS") filed his Motion to Designate Improperly Solicited Votes Pursuant to 11 U.S.C. §1125(B) and 1126(E) and Bankruptcy Rule 2019 ("Motion") (Doc. #6799, filed April 20, 2020), and WATTS GUERRA filed its Preliminary

Opposition to said Motion (Doc. #6801, filed April 20, 2020) and the SINGLETON LAW FIRM filed its Opposition thereto as well (Doc. #6891, filed April 22, 2020). Thereafter, CERTAIN FIRE VICTIMS represented by SCARPULLA & HASLLISEY (Doc. #6939, filed April 24, 2020), and KAREN GOWINS (Doc. #6944, filed April 25, 2020) joined, then ABRAMS filed his Response to WATTS GUERRA's [Preliminary] Opposition (Doc. #6946, filed April 27, 2020). On April 28, 2020, WATTS GUERRA filed its response to KAREN GOWINS (Doc. #6973, filed April 28, 2020), to which the SINGLETON LAW FIRM filed its Joinder to a Reply (Doc. # 6983, filed April 29, 2020), and on the same date, CHERYL MAYNARD sent her email (Doc. #7004, filed April 29, 2020). Most lately, TOSDAL filed his Notice (Doc. #7069, filed May 5, 2020), and finally, KAREN GOWINS filed a supplement to her joinder (Doc. #7073, filed May 6, 2020).

## I.    SUMMARY OF OPPOSITION

In summary, WATTS GUERRA (1) timely solicited votes beginning on March 31, 2020, only after the disclosure statement had been transmitted, in compliance with 11 U.S.C. §1125(b); (2) did so in good faith, as demonstrated by the television, newspaper, social media, internet and telephonic town hall information, all recorded and provided herewith for this Court's review in making its consideration under 11 U.S.C. §1126(e); and (3) did so with no conflict under Rule 1.7 of the California Bar Rules, nor in violation of Bankruptcy Rule 9019.

## II.    INCORPORATION BY REFERENCE OF WATTS GUERRA'S PRIOR FILINGS

WATTS GUERRA incorporates by reference into this filing its Preliminary Opposition to said Motion (Doc. #6801, filed April 20, 2020), and its response to GOWINS (Doc. #6973, filed April 28, 2020).

In addition, and pursuant to this Court's "Order Shorting Time for Hearing on Motion to Designate," (Doc. # 7049, entered May 1, 2020) stating that "[a]ny opposition by… Watts Guerra

LLP or Mr. Watts… must be filed no later than 4 p.m. (PT) on May 8, 2020, with a copy emailed to Mr. Abrams," WATTS GUERRA files herein its Opposition to the Motion ("Opposition") on or before 4 p.m. PDT on May 8, 2020.

## III.      EVIDENCE IN SUPPORT OF WATTS GUERRA'S OPPOSITION

In support of its Opposition, WATTS GUERRA supplies the Court with the following evidence:

A.      Declaration of Matt Archer, attached hereto as Exhibit "1";

B.      Declaration of Deborah Dixon, attached hereto as Exhibit "2";

C.      Ex. C to Doc. #345, Case 3:19-cv-05257-JD, Declaration of Richard Bridgford, attached hereto as Exhibit "3";

D.      Declaration of Joseph Earley, attached hereto as Exhibit "4";

E.      Declaration of Noreen Evans, attached hereto as Exhibit "5";

F.      Ex. E to Doc. #345, Case 3:19-cv-05257-JD, Declaration of James P. Frantz, attached hereto as Exhibit "6";

G.      Declaration of Martin Hamburger, attached hereto as Exhibit "7";

H.      Declaration of Tom Kelly, attached hereto as Exhibit "8";

I.      Declaration of Carol Langford, attached hereto as Exhibit "9";

J.      Declaration of Roy Miller attached hereto as Exhibit "10";

K.      Declaration of Alicia O'Neill, attached hereto as Exhibit "11";

L.      Ex. D to Doc. #345, Case 3:19-cv-05257-JD, Declaration of Bill Robins, attached hereto as Exhibit "12";

M.      Declaration of Sam Roecker, attached hereto as Exhibit "13"

N.      Ex. B to Doc. #345, Case 3:19-cv-05257-JD, Declaration of Gerald Singleton, attached hereto as Exhibit "14";

O.      Ex. A to Doc. #345, Case 3:19-cv-05257-JD, Declaration of Mikal Watts, attached hereto as Exhibit "15";

P.      Declaration of Mikal Watts, attached hereto as Exhibit "16";

Case: 19-30088    Doc# 7129    Filed: 05/08/20    Entered: 05/08/20 15:06:44    Page 3 of 21

Q.      Declaration of Cindy Wilson attached hereto as Exhibit "17";

R.      Declaration of Spencer Zack, attached hereto as Exhibit "18";

## IV.   **ARGUMENTS AND AUTHORITIES**

In support of its Opposition, WATTS GUERRA provides the Court with the following arguments and authorities:

### A.    **RESPONSE TO ABRAMS** (Doc. #6799, filed April 20, 2020)

WATTS GUERRA did not solicit votes prior to March 31, 2020 when the court-ordered disclosure statement and other documents required by this Court were transmitted to fire survivors. *See* Declaration of Mikal Watts, Exhibit 16 hereto, ¶¶ 8-9; Declaration of Matt Archer, Exhibit 1 hereto, ¶11; Declaration of Martin Hamburger, Ex. 7 hereto, ¶2; Declaration of Sam Roecker, Ex. 13 hereto, ¶3.

1.      WATTS GUERRA's communications during the voting period were made in good faith. Weekly written updates were sent to its clients, as well as transcripts of telephonic town hall meetings held each Saturday at 12 p.m. Declaration of Joe Earley, Ex. 4 hereto, ¶¶5, 9, 11 ("At no time did I tell any client of mine how they must vote. As their lawyer and a fellow claimant I have recommended they accept the settlement because that is my professional judgment, but the decision on how to vote has always been the clients to make. I have always explained the reasons why I recommend that my clients vote to accept…. These telephone town halls became open to the general interested public and featured questions asked by anyone attending the town hall call. The questions were answered by either a member of our group or from one of the other legal groups whose clients were also attending the town hall… The audio and transcripts of each town hall were provided to my clients via a link in my weekly client updates."); Declaration of Roy Miller, Ex. 10 hereto, ¶¶8, 10 ("I invited every client of ours to attend telephone town halls our group held weekly through the month of April plus three additional town halls in May prior to

the close of the vote…. The telephone townhalls provided settlement information, disclosures and references to www.firesettlementfacts.com where all of the settlement information plus Q&A was situated."); Declaration of Cindy Wilson, Ex. 17 hereto, ¶2 ("After each occasion when Mikal Watts communicates with our clients, either through in-person client town hall meetings, either in Santa Rosa, California, or in Chico, California, or through telephonic town hall meetings made necessary by the COVID-19 pandemic and consequent sheltering-in-place orders, those meetings are videotaped at my direction, and those videos are provided to me, and I have them transcribed by court reporters at the firm's chosen court reporters at WORLDWIDE COURT REPORTERS, who then send those transcripts back to me, which I then cause to be delivered to WATTS GUERRA's clients."); Declaration of Sam Rocker, Ex. 13 hereto, ¶3 ("I have distributed all of WATTS GUERRA's social media and website content involving the present vote on PG&E's Amended Plan of Reorganization since the voting period began on March 31, 2020" and attaching in Paragraph 11 thereto Exhibits "A" through "OOO" social media posts delivered during the voting period, and in Paragraph 12(a-m) the digital advertisements placed during the voting period as well); Declaration of Spencer Zack, Ex. 18 hereto, ¶¶3-8 (attaching as Exhibits AAB-AAF newspaper advertisements placed in the *Santa Rosa Press Democrat* and the *Chico Enterprise Record*). ¶2 & and Ex. 18 hereto, attaching as Exhibits "A" through "AAA" the video excerpts of questions being answered by Mikal Watts, as posted on www.firesettlementfacts.com, to wit:

| Exhibit A | - | What has the CPUC Said About this Plan Being AB 1054 Compliant? |
| Exhibit B | - | Who Is Centerbridge? |
| Exhibit C | - | Can You Address the Resignation of PG&E's CEO? |
| Exhibit D | - | How Will The Claims Process Work? |
| Exhibit E | - | Can You Address the Date of Funding? |
| Exhibit F | - | How Do I Vote Before the Negotiations Are Finished? |
| Exhibit G | - | Does Erin Brockovich Still Support the Deal? |
| Exhibit H | - | Can You Comment on the April 22nd Facebook Live Meeting? |
| Exhibit I | - | Can You Address the Homelessness in Chico? |
| Exhibit J | - | What Happens If PG&E Doesn't Make the Initial Cash Payment? |
| Exhibit K | - | Is Mediation Still Going On? |

| | | |
|---|---|---|
| Exhibit L | - | How Do I Get a Ballot? |
| Exhibit M | - | What's The Risk That Fire Survivors Will Have to Pay the CPUC's Fine? |
| Exhibit N | - | Are PG&E's Payments Guaranteed? |
| Exhibit O | - | Can You Address The Timing of Sale of Stock? |
| Exhibit P | - | Will Financial Specialists Determine the Best Time to Sell the Stock? |
| Exhibit Q | - | What Have You Been Doing to Improve the Settlement Since it was Signed? |
| Exhibit R | - | Can You Address the Status of the Vote? |
| Exhibit S | - | When Will the Stock Be Liquidated by the Trust? |
| Exhibit T | - | What Will The Stock Be Worth? |
| Exhibit U | - | What Work is Being Done to Prepare Third-Party Lawsuits? |
| Exhibit V | - | Can I Sue PG&E If The Trust Doesn't Pay Me All of my Damages? |
| Exhibit W | - | Why Are Trotter and Yanni Getting Paid So Much to Administer the Trust? |
| Exhibit X | - | What Happens if Fire Victims Vote This Plan Down? |
| Exhibit Y | - | Why Not Wait to Vote? |
| Exhibit Z | - | What Happened With Will Abrams' Motion? |
| Exhibit AA | - | Will Everyone Receive the Same Amount of Money? |
| Exhibit BB | - | How Are Attorneys' Fees Calculated? |
| Exhibit CC | - | Who Pays Attorneys' Fees and Expenses? |
| Exhibit DD | - | How Will the Bad Economy Affect the Deal? |
| Exhibit EE | - | What Did the Camp Fire Lawyers Do to Earn Their Fee? |
| Exhibit FF | - | Why Are There 80,000 Claims When Only 30,000 Structures Burned? |
| Exhibit GG | - | Why Isn't There Just One Claim Per Structure Lost? |
| Exhibit HH | - | What Are the Mechanics of the Claims Process and Payments? |
| Exhibit II | - | Why Have There Been Resignations from the Tort Claims Committee? |
| Exhibit JJ | - | Is a One-Third Contingency Fee Reasonable and Customary? |
| Exhibit KK | - | Will the CPUC Fine Come Out of the $13.5 Billion Meant for Fire Victims? |
| Exhibit LL | - | How Will Emotional Distress Claims Be Paid? |
| Exhibit MM | - | What Are the Expected Expenses Individual Clients Will Have to Repay? |
| Exhibit NN | - | How Will The Trust Weed Out False Claims? |
| Exhibit OO | - | Will Financial Information About the Trust Be Transparent? |
| Exhibit PP | - | What Are the Financial Risks of Fighting for More? |
| Exhibit QQ | - | Will Any of PG&E's Fines Be Paid by the Wildfire Victims' Fund? |
| Exhibit RR | - | 4/18/20 Fire Settlement Facts Telephone Town Hall |
| Exhibit SS | - | Paradise Strong - Vote on PG&E's Wildfire Settlement |
| Exhibit UU | - | What Will Happen to the Value of PGE Stock? |
| Exhibit VV | - | Are There Secret Risks? |
| Exhibit WW | - | Could There Be a Better Settlement Option? |
| Exhibit XX | - | Do Fire Victims' Lawyers Support This Settlement? |
| Exhibit YY | - | Fire Settlement Facts - Shelter in Place |
| Exhibit ZZ | - | Do I Have to Take Stock in PG&E? |
| Exhibit AAA | - | What Did the Tubbs Fire Lawyers Do to Earn Their Fee? |

- 6 -

2.      With respect to ABRAMS' third argument regarding WATTS GUERRA's credit facility, WATTS GUERRA incorporates by reference into this filing its Preliminary Opposition to said Motion (Doc. #6801, filed April 20, 2020).  Moreover, WATTS GUERRA offers as Exhibit 9 hereto the Declaration of Carol Langford, an ethics expert who worked on the California Commission for the Revision of the Rules of Professional Conduct from 2015 to 2017 when the very Rule 1.7 at issue was being redrafted, who has concluded that there was no violation of Rule 1.7 of the California Rules of Professional Conduct or any other Rule of Professional Conduct. Ex. 9, ¶21.  *See also* Declaration of Cindy Wilson, Ex. 17 hereto, ¶¶2-8 & Exhibits A-F thereto.  (detailing oral and written disclosures of WATTS GUERRA's credit facility and issues related thereto by Mikal Watts on December 8, 2019, April 18, 2020, April 25, 2020, May 1, 2020 and May 2, 2020.); Declaration of Spencer Zack, Ex. 18 hereto, ¶2 & Exhibit B thereto (attaching screenshot of Mikal Watts video posted on www.firesettlementfacts.com answering the question "Who is Centerbridge?").

Because Rule 9019 does not appear to apply to law firms representing individual clients, and because substantial disclosures both to its clients and to the public have already been made, ABRAMS' motion under Rule 9019 should respectfully be denied.

B.      **RESPONSE TO GOWINS** (Doc. #6973, filed April 28, 2020)

WATTS GUERRA previously responded (Doc. #6973, filed April 28, 2020), and incorporates that by reference.  Again, *see also* Declaration of Carol Langford, Ex. 9 hereto (no material limitation under Rule 1.7); and Declaration of Cindy Wilson, Ex. 17 hereto, ¶¶3-8 & Exhibits "A" – "F" thereto (written disclosures made).

C.      **RESPONSE TO CHERYL MAYNARD** (Doc. #7004, filed April 29, 2020).

CHERYL MAYNARD sent her email, making three allegations.

1. Her first concern regarding funding has already been addressed previously, WATTS GUERRA incorporates by reference Doc. #6801, filed April 20, 2020. *See also* Declaration of Carol Langford, Ex. 9 hereto (no material limitation under Rule 1.7); and Declaration of Cindy Wilson, Ex. 17 hereto, ¶¶3-8 & Exhibits "A" – "F" thereto (written disclosures made).

2. Her second concern that "there is no way to trace" votes delivered by text is simply is not true. *See* Exhibit 1 hereto - Declaration of Matt Archer, ¶4 ("Thus, WATTS GUERRA has a record of each vote received from its clients. I pledge to maintain the records of each vote received by WATTS GUERRA – regardless of mode – so that the Court or any third-party it assigns may review our records to audit the vote totals submitted by WATTS GUERRA to Prime Clerk on May 15, 2020.").

3. Her third concern is that "some clients never knowing that they cast a ballot with the possibility of attorneys just voting for a huge amount of claimants. As well as, are all the claimants real?" There are ten (10) main responses:

(A) There is a list of the individuals filing Notices of Claim by the Amended Bar Date, and the attorneys those persons listed as their law firm, are a matter of record available to all in this case. Accordingly, Maynard's concern "are all the claimants real?" is a question already answered by the Notices of Claims filed by December 31, 2019. Declaration of Matt Archer, Ex. 1 hereto, ¶3 ("Importantly, only WATTS GUERRA clients who timely filed Notices of Claims prior to the Court's Amended Bar Date of December 31, 2019, received ballots from WATTS GUERRA during the March 31, 2020 to May 15, 2020 voting period with respect to the Amended Plan.").

(B)     WATTS GUERRA's text ballot technology comes with a digital record of how each individual client voted.  *See* Exhibit 1 hereto - Declaration of Matt Archer, ¶4 ("There is a digital record of each "text" vote received, and whether the vote cast was to "ACCEPT" or to "REJECT" the Amended Plan.").

(C)     Those receiving ballots from WATTS GUERRA via email, and cast a vote via that method produced a digital record of their vote as well.  *See* Exhibit 1 hereto - Declaration of Matt Archer, ¶4 ("Likewise, I have a digital record of each "email" vote received, and whether the vote cast was to "ACCEPT" or to "REJECT" the Amended Plan.").

(D)     Finally, regarding paper ballots received by mail, WATTS GUERRA maintains a PDF copy of each paper ballot received from its clients voting that way.  *See* Exhibit 1 hereto - Declaration of Matt Archer, ¶4 ("Finally, as to paper ballots cast, I maintain a PDF record of each paper ballot mailed back or otherwise received by WATTS GUERRA.")

(E)     In sum, WATTS GUERRA has a documentary record of each vote cast by its client, and pledges to maintain such records for inspection by others.  *See* Exhibit 1 hereto - Declaration of Matt Archer, ¶4 ("Thus, WATTS GUERRA has a record of each vote received from its clients.  I pledge to maintain the records of each vote received by WATTS GUERRA – regardless of mode – so that the Court or any third-party it assigns, may review our records to audit the vote totals submitted by WATTS GUERRA to Prime Clerk on May 15, 2020.").

(F)     Moreover, WATTS GUERRA has notified each of its clients who it shows as having voted to "ACCEPT" an additional text informing them that the firm shows them as having voted to "ACCEPT" and informing each client how to change their respective vote if they choose to do so before the ballots are turned in to Prime Clerk by this Court's May 15, 2020 voting deadline. Exhibit 1 hereto - Declaration of Matt Archer, ¶8 ("If between now and the voting deadline, a WATTS GUERRA client indicates in writing a desire to change their vote from

Case: 19-30088    Doc# 7129    Filed: 05/08/20    Entered: 05/08/20 15:06:44    Page 9 of 21

"ACCEPT" to "REJECT," their revised ballot will be provided to Prime Clerk as a vote cast to "REJECT" the Amended Plan").

(G) WATTS GUERRA has notified each of its clients who it shows as having voted to "REJECT" an additional text informing them that the firm shows them as having voted to "REJECT." Exhibit 1 hereto - Declaration of Matt Archer, ¶9 ("WATTS GUERRA did not ask any of our 108 clients voting to "REJECT" the plan if they wanted to change their vote. Rather, WATTS GUERRA has notified each of its clients who it shows as having voted to "REJECT" an additional text informing them merely that the firm shows them as having voted to "REJECT.").

(H) Some clients mistakenly have voted twice. The limited number of duplicate "ACCEPT" votes are not counted twice; and the limited number of duplicate "REJECT" votes are not counted twice either. Exhibit 1 hereto - Declaration of Matt Archer, ¶5 ("I have carefully eliminated any duplicate votes cast by a limited number of WATTS GUERRA to ensure that only one vote for each client is submitted to Prime Clerk.").

(I) Some clients mistakenly voted twice, voting to "ACCEPT" on one occasion, and voting to "REJECT" on another. In such limited instances, WATTS GUERRA sent a text informing such clients and instructed such person how to cast their final, dispositive vote. Exhibit 1 hereto - Declaration of Matt Archer, ¶7 ("As to these clients, WATTS GUERRA will not cast their vote with Prime Clerk unless we receive a final vote for the particular client.").

(J) WATTS GUERRA has a list of the identity and the corresponding Notice of Claim number at Prime Clerk for each of its clients. The vote tallies to be sent to Prime Clerk will specifically list each individual, their corresponding Notice of Claim number, and the vote to either "ACCEPT" or "REJECT" sent to WATTS GUERRA. WATTS GUERRA will

maintain the digital record of every vote collected, and will provide the same to this Court, or any auditing agent selected by it to verify the vote. Exhibit 1 hereto - Declaration of Matt Archer, ¶10.

        D.     **RESPONSE TO TOSDAL** (Doc. #7069, filed May 5, 2020)

Tosdal's *Notice of Plan Voting Procedure Irregularities*, filed in this Court on May 5, 2020 (Doc. # 7069) is very similar to the document he previously filed in Judge Donato's court entitled *Status Conference Statement of Many Fire Victims re: Voting Procedure Irregularities* (Doc. #342, Case 3:19-cv-05257-JD, filed April 27, 2020). In Judge Donato's Court, six firms – (1) MARSHAK HAYES LLP, (2) SINGLETON LAW FIRM, APC, (3) FRANTZ LAW GROUP, APLC, (4) BRIDGFORD, GLEASON & ARTINIAN (5) ROBINS CLOUD LLP; AND (6) WATTS GUERRA LLP, collectively representing at least 31,388 unique claimants who timely filed Notices of Claim by the Bankruptcy Court's Bar Date, filed their *Joint Status Regarding the Status of the Vote,* where they provided a *Summary of Status of the Vote* demonstrating that 20,229 clients had voted to "ACCEPT" and 272 had voted to "REJECT" for an acceptance rate of 98.67%. Doc. #345, Case 3:19-cv-05257-JD, filed April 28, 2020), p. 2, lines 7-17. Moreover, they provided the following Declarations as evidence of the method in which votes were being collected:

| Ex. # | Document Title | Document # |
|---|---|---|
| A. | Ex. A to Doc. #345, Case 3:19-cv-05257-JD, Declaration of Mikal Watts, attached hereto as Exhibit "15"; | |
| B. | Ex. B to Doc. #345, Case 3:19-cv-05257-JD, Declaration of Gerald Singleton, attached hereto as Exhibit "14"; | |
| C. | Ex. C to Doc. #345, Case 3:19-cv-05257-JD, Declaration of Richard Bridgford, attached hereto as Exhibit "3"; | |
| D. | Ex. D to Doc. #345, Case 3:19-cv-05257-JD, Declaration of Bill Robins, attached hereto as Exhibit "11"; | |
| E. | Ex. E Doc. #345, Case 3:19-cv-05257-JD, Declaration of James Frantz, attached hereto as Exhibit "6." | |

Case: 19-30088    Doc# 7129    Filed: 05/08/20    Entered: 05/08/20 15:06:44    Page 11 of 21

After this *Summary of the Status of the Vote* was filed, Judge Donato pulled down his status conference scheduled for April 30, 2020. In his Notice before this Court, Tosdal acknowledges as much:

> These irregularities were brought to the attention of the District Court by a filing on April 27, 2020, in anticipation of a status conference to be held on April 30. With two weeks left until voting terminates on May 15, 2020, the District Court was requested to intervene to instruct all counsel to put voting for or against the plan on equal procedural footing and not encumber in any way a fire victim's right to vote to reject the plan. But the District Court declined to take up the request and instead cancelled the status conference.

Doc. #7069, p. 3, line 26 – p. 4, line 3. Not deterred, Tosdal recycles his Notice for Judge Donato for this Court to consider instead, and provided nine (9) exhibits as professed "voting procedure irregularities." WATTS GUERRA responds to each of these exhibits herein.

> 1. *A law firm telling its clients it will vote "yes" for them but to call the firm if any client disagrees with a "yes" vote (Doc. #7069-1);*

RESPONSE: *See* Exhibit 2 hereto - Declaration of Wildfire Recovery Attorneys, executed by Deborah S. Dixon on May 6, 2020. ("regarding 7069-1 – "This excerpt does not provide the full content of the letter and is not reflective of the multitude of more recent communications directing our clients to affirmatively respond with a vote or their vote would not be recorded. We have never recorded a client vote without receiving an actual communication from our client."). Moreover, the five attorneys filing their combined *Summary of the Status of the Vote* each declared that this unattributed alleged practice was not their practice, and this example was specifically refuted by the following declarations: Declaration of Mikal Watts re: Status of the Vote, Ex 15, ¶10 ("Regarding Exhibit 1 of ECF 342 filed by Tosdal on April 27, 2020, my law firm has not told its clients that "it will vote 'yes' for them but to call the firm if any client disagrees with a 'yes' vote."); Declaration of Gerald Singleton re: Status of the Vote, Ex 15, ¶10 (same); Declaration of Richard Bridgford re: Status of the Vote, Ex 3, ¶10 (same); Declaration of Bill Robins re: Status of the Vote, Ex 12, ¶10 (same); & Declaration of James Frantz re: Status of the Vote, Ex 6, ¶10 (same).

2. *A law firm soliciting a "yes" vote by text but requiring a different method to register a "no" vote (Doc. # 7069-2);*

<u>RESPONSE</u>: This text is unattributed hearsay, fails to identify a particular lawyer being complained of by the writer, and is admittedly indeterminable: "not sure if this is what people represented by various firms are being told…" There is no court in the United States that would accept this anonymous, and redacted, text as evidence of voting procedure irregularities. Moreover, the five attorneys filing their combined *Summary of the Status of the Vote* each declared that this unattributed alleged practice was not their practice, and this example was specifically refuted by the following declarations: Declaration of Mikal Watts re: Status of the Vote, Ex 15, ¶11 ("Regarding Exhibit 2 of ECF 342 filed by Tosdal on April 27, 2020, my law firm has not "solicit[ed] a 'yes' vote by text but require[ed] a different method to register a 'no' vote."); Declaration of Gerald Singleton re: Status of the Vote, Ex 15, ¶11 (same); Declaration of Richard Bridgford re: Status of the Vote, Ex 3, ¶11 (same); Declaration of Bill Robins re: Status of the Vote, Ex 12, ¶11 (same); & Declaration of James Frantz re: Status of the Vote, Ex 6, ¶11 (same).

3. *A Facebook Post from the "Wildfire Victims Settlement Discussion Group," stating I just noticed that on the email from our attorneys, there is a 'yes' option but no 'no' option, you have to type that one in!! They think of everything. (Doc. #7069-3);*

<u>RESPONSE</u>: This text is unattributed hearsay, fails to identify a particular lawyer being complained of by the writer, and this example was specifically refuted by the following declarations: Declaration of Mikal Watts re: Status of the Vote, Ex 14, ¶12 ("Regarding Exhibit 3 of ECF 342 filed by Tosdal on April 27, 2020, my law firm has not "provid[ed] a client with an easy click to vote 'yes' but requiring a client type in 'no.'"); Declaration of Gerald Singleton re: Status of the Vote, Ex 15, ¶12 (same); Declaration of Richard Bridgford re: Status of the Vote, Ex 3, ¶12 (same); Declaration of Bill Robins re: Status of the Vote, Ex 12, ¶12 (same); & Declaration of James Frantz re: Status of the Vote, Ex 6, ¶12 ("Regarding Exhibit 3 of ECF 342 filed by Attorney Thomas

Tosdal's on April 27, 2020, our law firms have not "provid[ed] a client with an easy click to vote 'yes' but responded to a "no" vote by sending the client a message that we do not understand their intended vote. Exhibit 3 reflects a client who failed to follow the instructions that were set forth in the outbound text. If the client had followed the provided instructions, their intended vote would have been confirmed. The client attempted to vote by responding to the inbound text via a responsive text and not by utilizing the provided "yes" or "no" responsive options. As a result of the client failing to follow the provided instructions, their vote was not properly received and documented.").

> *4.* *A law firm requesting a client's agreement for the firm to vote for the client but not recognizing a "no" answer to the request. (Doc. #7069-4);*

RESPONSE: This text is unattributed hearsay, purports to reference only one particular lawyer being complained of by the writer, and this example was specifically refuted by the following declarations: Declaration of Mikal Watts re: Status of the Vote, Ex 14, ¶13 ("Regarding Exhibit 4 of ECF 342 filed by Tosdal on April 27, 2020, my law firm has not "request[ed] a client's agreement for the firm to vote for the client but not recognizing a 'no' answer to the request." We have not and will not cast a ballot for a client who has failed to vote either "ACCEPT" or "REJECT.""); Declaration of Gerald Singleton re: Status of the Vote, Ex 15, ¶13 (same); Declaration of Richard Bridgford re: Status of the Vote, Ex 3, ¶13 (same); Declaration of Bill Robins re: Status of the Vote, Ex 12, ¶13 (same). Finally, the alleged subject of 7069-4 specifically refuted the allegation itself. *See* Declaration of James Frantz re: Status of the Vote, Ex 6, ¶13 (same).

> *5.* *A law firm requesting a client vote by e mail with the word "accept" (Doc. #7069-5);*

RESPONSE: This text is unattributed hearsay, fails to identify a particular lawyer being complained of by the writer, and this example was specifically refuted by the following declarations: Declaration of Mikal Watts re: Status of the Vote, Ex 14, ¶14 ("Regarding Exhibit 5 of ECF 342

filed by Tosdal on April 27, 2020, my law firm has not sought to have its clients vote by email without giving a client the ability to cast either an "ACCEPT" or a "REJECT" vote."); Declaration of Gerald Singleton re: Status of the Vote, Ex 15, ¶14 (same); Declaration of Richard Bridgford re: Status of the Vote, Ex 3, ¶14 (same); Declaration of Bill Robins re: Status of the Vote, Ex 12, ¶14 (same); & Declaration of James Frantz re: Status of the Vote, Ex 6, ¶14 (same).

> 6. *A law firm telling a client the firm will assume a "yes" vote unless the client lets the firm know the client wants to vote "no." (Doc. #7069-9);*

<u>RESPONSE</u>: *See* Exhibit 2 hereto - Declaration of Wildfire Recovery Attorneys, executed by Deborah S. Dixon on May 6, 2020. ("regarding 7069-1 – "This excerpt does not provide the full content of the letter and is not reflective of the multitude of more recent communications directing our clients to affirmatively respond with a vote or their vote would not be recorded. We have never recorded a client vote without receiving an actual communication from our client."). Moreover, the five attorneys filing their combined *Summary of the Status of the Vote* each declared that this unattributed alleged practice was not their practice, and this example was specifically refuted by the following declarations: Declaration of Mikal Watts re: Status of the Vote, Ex 15, ¶10 ("Regarding Exhibit 1 of ECF 342 filed by Tosdal on April 27, 2020, my law firm has not told its clients that "it will vote 'yes' for them but to call the firm if any client disagrees with a 'yes' vote."); Declaration of Gerald Singleton re: Status of the Vote, Ex 15, ¶10 (same); Declaration of Richard Bridgford re: Status of the Vote, Ex 3, ¶10 (same); Declaration of Bill Robins re: Status of the Vote, Ex 12, ¶10 (same); & Declaration of James Frantz re: Status of the Vote, Ex 6, ¶10 (same).

> 7. *Miscellaneous references to persons not receiving their ballots or Claim Number from Prime Clerk*
>
> (A) *A press report by KQED on May 4, 2020, is entitled "As PG&E Fire Survivors Near Deadline to Vote on Settlement, Some Still Don't Have Ballots." (Doc. #7069-6)*

RESPONSE: The KQED story references only two individuals – Vada Bouffard and Carolyn Acosta – and hearsay from a lawyer opposing the Amended Plan, Helen Sedwick, that she has received 50 emails or messages from others. Presumably, as a lawyer, Mrs. Sedwick informed those individuals as to how to secure a ballot from Prime Clerk. Likewise, the questions of how to get a ballot have been answered during the telephonic town halls held weekly on Saturdays, and the answer to that question is on www.firesettlementfacts.com. *See* Exhibit 18 hereto – Declaration of Spencer Zack, referencing Exhibit L thereto, which is a screenshot of a video excerpt of attorney Mikal Watts informing individuals how to get a ballot from Prime Clerk.

> *(B) A social media post by a fire victim on May 4, 2020, reports she received from Prime Clerk two solicitation packages with a total of eight ballots with unique voter identification numbers. She had amended her claim, but Prime Clerk sent her ballots for the both the original and amended claim. (Doc. #7069-7). If duplicate ballots were sent for all amended claims, the amount of ballot duplication could be significant.*

RESPONSE: Since the December 31, 2019 Amended Bar Date, Prime Clerk and Brown Greer have worked to eliminate duplicate claims. Likewise, because each claim has its own unique identifying numbers, duplicate ballots can and will be eliminated after the close of the vote.

> *(C) In another social media post on May 4, 2020, a fire victim complained she and her attorney had been unable to get her voting identification number and "many people are saying they don't have one either."*

RESPONSE: Each claim on Prime Clerk is publicly-available on the website. Any attorney can access each claim for their individual clients. Likewise, any unrepresented fire survivor who timely-filed a Proof of Claim will find their claim with a unique identifying claim number on the same Prime Clerk site.

E. **RESPONSE TO GOWIN SUPPLEMENT** (Doc. #7073, filed May 6, 2020)

1.     This Supplement should be stricken as this Court's Order Shortening Time for Hearing on Motion to Designate did not permit additional filings by Abrams or by those joining in his motion. Rather, the Court ordered that "[a]ny opposition by Debtors, the TCC, Watts Guerra

LLP or Mr. Watts, or by any of the parties that have already appeared in opposition to the Motion [Certain Fire Victim Creditors (dkt. #6801); SLF Fire Victim Claimants (dkt. #6891] must be field no later than 4 p.m. (PT) on May 8, 2020, with a copy emailed to Mr. Abrams." Doc. #7049, p. 2, lines 6-9, and ordered that "[n]o replies are to be filed." Doc. #7049, p. 2, line 10. Mr. Kane's Supplement should therefore be stricken.

2. In the alternative, WATTS GUERRA responds herein to the four arguments made in the Supplement, as well as to the erroneous information provided in the Declarations thereto (Doc. #7073-1 & 7073-2).

### *(A)*      *There is no Violation of Rule 1.7.*

1. No significant risk of its representation of its clients being materially limited arose from WATTS GUERRA's credit facility. Declaration of Mikal Watts, Exhibit 16 hereto, ¶10. Almost every law firm in America has a credit line, and as a matter of course do not disclose all of their lenders to their clients. Declaration of Mikal Watts, Exhibit 16 hereto, ¶4. WATTS GUERRA's credit facility is not a litigation finance device, wherein funds are invested in exchange for a percentage of the fees in a particular case. Declaration of Mikal Watts, Exhibit 16 hereto, ¶4. Rather, like a normal bank note, the WATTS GUERRA credit facility is secured by all the firm's receivables. It is a loan with a four-year term, not due until 2023. Declaration of Mikal Watts, Exhibit 16 hereto, ¶4.

2. Neither the Supplement, nor the Declaration of Heather L. Rosing in support thereof, demonstrates a violation of Rule 1.7(b). First, the Supplement does not allege a violation of Rule 1.7(b), as the phrase "Rule 1.7(b)" does not appear anywhere in Doc. #7073. Second, while Heather Rosing's declaration (Doc. #7073-1) references subparagraph (b) of Rule 1.7, Rosing says only "this relationship represents a significant risk that Watts' loyalty to his clients *could be limited*." Doc. #7073-1, p. 7, lines 14-15 (emphasis added). But this is not the

standard requiring that informed written consent be obtained. The phrase "*could be limited*" as stated by Heather Rosing is not the same as "*will be materially limited*," the language contained within Rule 1.7(b). Third, the only evidence before the Court on the issue of whether WATTS GUERRA's representation "*will be materially limited*" is the Declaration of Mikal Watts, Exhibit 16 hereto, ¶5. Moreover, with due respect shown to Heather Rosing, she lacks the depth of curriculum vitae necessary to do conclusory battle with Professor Carol Langford, who sat on the Commission for the Revision of the Rules of Professional Conduct, and has politely pointed out that perhaps Rosing mistakenly relies on a prior version of the rule that has since been superseded by present Rule 1.7. *See* Declaration of Carol Langford, Exhibit 9 hereto, ¶16 fn 1 ("In addition, I believe that the Kane firm is really looking at the old Rule 3-310 and its language that discussed disclosure to entities that would reasonably be affected substantially by resolution of the matter. But, and this is important, when the Rules were revised in 2018, we on the Commission voted to take that language out. In fact, in comment 4, the very paragraph they cite to, we specifically pointed out that the mere possibility of harm does not itself require informed written consent or even disclosure.").

        3.     Rule 1.7(c) has not been violated either, for five reasons. First, Mikal Watts has provided a sworn declaration that he "reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client," as required by Rule 1.7(d)(1). Second, WATTS GUERRA has repeatedly provided written disclosure of the credit facility. (Declaration of Cindy Wilson, ¶¶3-8 (attaching as Exhibits A-F the written disclosures given). Thus, WATTS GUERRA complied with Rule 1.7(c)(1). Third, the Declaration of Geoffrey B. Reed (Doc. #7073-2, p. 2, ¶)3, line 13) acknowledges that he "received weekly reports and updates via email from my former attorneys…," but incorrectly states that he "never received any information from them regarding the financing of Watts Guerra by Centerbridge,

Apollo or Stifel." (Doc. #7073-2, p. 2, ¶3, lines 15-16). In truth – whether Mr. Reed chose not to attend the December 8, 2019 Town Hall meeting where this disclosure was made in detail – he did receive an email on December 13 emailing in writing the same information, Declaration of Cindy Wilson (Exhibit 17 hereto ¶4 & Exhibit B thereto), and WATTS GUERRA's email system documents that he in fact opened that email on that date. Declaration of Cindy Wilson (Exhibit 17 hereto ¶9 & Exhibit "G" thereto). Fourth, Mr. Reed says he couldn't hear the disclosure made at a town hall "due to the poor quality of that video," however, multiple published articles quote from that very video. Fifth, WATTS GUERRA has repeatedly disclosed this issue during telephonic town hall meetings, transcripts thereof sent to each of its clients, and through update emails and letters. Declaration of Cindy Wilson (Exhibit 17 hereto, ¶¶ 3-8 & Exhibits A-F thereto).

### (B) WATTS GUERRA has Already Made Disclosures that Comply with Rule 1.7(c), were it to Apply

WATTS GUERRA complied with Rule 1.7, and Heather Rosing fails to demonstrate that the Rule has been violated. First, Rosing finds "it highly unusual that a lawyer would make 'disclosures' in an instance where the lawyer has no conflict" and states "the conclusion that there is no conflict and the act of making disclosures are inconsistent with one-another." (Doc. #7073-1, p. 8, ¶28, 5-7). This tautology suggests that any information provided to a client means a Rule 1.7 violation has occurred, but lawyers inform their clients on settlement discussions all of the time. Second, Rosing hypothetically suggests that "it is not clear whether all of Watts' 16,000 clients speak English as their primary language" and "[t]o the extent that they do not, there is no indication that they were provided this information in their primary language." (Doc. #7073-1, p. 8, ¶29, lines 15-17). Karen Gowins and Geoffrey Reed both speak English. Moreover, WATTS GUERRA has provided the required court-ordered materials (Declaration of Tom Kelly, Exhibit 8 hereto, ¶5), as well as a written disclosure of this credit facility issue, in writing in Spanish, to WATTS

- 19 -

GUERRA's 169 clients who have asked to communicate in Spanish. *See* Declaration of Alicia O'Neill, Exhibit 11 hereto, ¶5.

### (C) No Written Waiver From Each Client is Required Before Their Votes Can Be Counted

GOWINS' SUPPLEMENT next suggests that the only "effective remedy without a complete re-vote is a designation and disqualification of "yes" votes of clients affected by the acknowledged and unremedied conflict of interest." (Doc. #7073, p. 4, lines 18-20). But neither GOWINS nor Heather Rosing provides support for this request to disenfranchise more than 13,000 individuals.

What is really happening here is the lawyer for GOWINS, and now REED, wishes to flip an imminent "ACCEPT" vote that will likely lead to plan confirmation into a "REJECT" vote designed to prevent confirmation.

### (D) No Impermissible Solicitation During the Voting Period Occurred

GOWINS' SUPPLEMENT finally suggests that "all claimants were solicited to vote yes by public newspaper ads, direct mail, radio, social media ads and open town hall meetings before they received their ballots. This is simply impermissible solicitation." (Doc. #7073, p. 7, lines 5-7). This is untrue.

Prior to initiating WATTS GUERRA's communications and ballot solicitation plan for the voting period, Mikal Watts conferred with other plaintiffs' counsel, counsel for the Debtor and counsel for the equity holders, and confirmed that the plan summary, the written disclosure statement was to be transmitted to the fire survivors by March 31, 2020. Declaration of Mikal Watts, Exhibit 16 hereto, ¶8. No solicitation of such votes to fire survivors represented by WATTS GUERRA occurred until such materials were provided to its clients. Declaration of Mikal Watts, Exhibit 16 hereto, ¶9.

## IV. CONCLUSION

1  ABRAMS' Motion, and the Joinders to it, appear to be tactical in nature.  Those bringing

2  this effort encourage fire survivors to vote to "REJECT" the Amended Plan, while preaching a

3  Plan B in the form of either a state takeover of PG&E or a Customer-Owned Utility that has

4  neither the $50 billion nor the state-funded backstop needed for it to be financed.  Declaration of

5  Noreen Evans, Exhibit 5 hereto, ¶7.  With the California legislature now in session while facing

6  the worst budget shortfall in state history, no bill to convert this COU idea into a Plan has even

7  been advanced, Declaration of Noreen Evans, Exhibit 5 hereto, ¶8, and the author of the state

8  takeover idea has admitted his bill will not move this year. Declaration of Noreen Evans, Exhibit

9  5 hereto, ¶10.  New suggestions that a vote to "REJECT" the Amended Plan will result in an

10  extension of A.B. 1054's June 30, 2020 deadline ignore the fact that there is no bill filed to do

11  so, and it is long past the deadline to do so.  Declaration of Noreen Evans, Exhibit 5 hereto, ¶¶12-

12  14.

13

14  WATTS GUERRA timely solicited votes in compliance with 11 U.S.C. §1125(b), and did

15  so in good faith, suggesting that this Court should reject ABRAMS' request that it disenfranchise

16  more than 13,000 votes.  Both the text of Rule 1.7 and the conclusions of Carol Langford, the ethics

17  professor who helped revise it, each demonstrate that no violation has occurred here, and WATTS

18  GUERRA's prolific oral and written disclosures have vitiated any value of a Rule 9019 disclosure

19  ordered three days before the end of the voting period on the Amended Plan.  Consequently,

20  ABRAMS' Motion should be DENIED.

21                                            Respectfully submitted,

22

23  Dated:  May 8, 2020                       WATTS GUERRA LLP

24

25                                            By:     /s/ Mikal  C. Watts
                                                      Mikal C. Watts
26

27

28

- 21 -