# EXHIBIT B

> West's Annotated California Codes
>> Rules of the State Bar of California (Refs & Annos)
>>> California Rules of Professional Conduct (Refs & Annos)
>>>> Chapter 1. Lawyer-Client Relationship

Prof.Conduct, Rule 1.7

Formerly cited as CA ST RPC Rule 3-310; CA ST RPC Rule 3-320

Rule 1.7. Conflict of Interest: Current Clients

Currentness

**(a)** A lawyer shall not, without informed written consent[*] from each client and compliance with paragraph (d), represent a client if the representation is directly adverse to another client in the same or a separate matter.

**(b)** A lawyer shall not, without informed written consent* from each affected client and compliance with paragraph (d), represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person,* or by the lawyer's own interests.

**(c)** Even when a significant risk requiring a lawyer to comply with paragraph (b) is not present, a lawyer shall not represent a client without written* disclosure of the relationship to the client and compliance with paragraph (d) where:

(1) the lawyer has, or knows* that another lawyer in the lawyer's firm* has, a legal, business, financial, professional, or personal relationship with or responsibility to a party or witness in the same matter; or

(2) the lawyer knows* or reasonably should know* that another party's lawyer is a spouse, parent, child, or sibling of the lawyer, lives with the lawyer, is a client of the lawyer or another lawyer in the lawyer's firm,* or has an intimate personal relationship with the lawyer.

**(d)** Representation is permitted under this rule only if the lawyer complies with paragraphs (a), (b), and (c), and:

(1) the lawyer reasonably believes* that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law; and

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works.   1

**(e)** For purposes of this rule, "matter" includes any judicial or other proceeding, application, request for a ruling or other determination, contract, transaction, claim, controversy, investigation, charge, accusation, arrest, or other deliberation, decision, or action that is focused on the interests of specific persons,* or a discrete and identifiable class of persons.*

**Credits**
(Adopted, eff. Nov. 1, 2018.)

**Editors' Notes**

### COMMENT

[1] Loyalty and independent judgment are essential elements in the lawyer's relationship to a client. The duty of undivided loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed written consent.* Thus, absent consent, a lawyer may not act as an advocate in one matter against a person* the lawyer represents in some other matter, even when the matters are wholly unrelated. (See *Flatt v. Superior Court* (1994) 9 Cal.4th 275 [36 Cal.Rptr.2d 537].) A directly adverse conflict under paragraph (a) can arise in a number of ways, for example, when: (i) a lawyer accepts representation of more than one client in a matter in which the interests of the clients actually conflict; (ii) a lawyer, while representing a client, accepts in another matter the representation of a person* who, in the first matter, is directly adverse to the lawyer's client; or (iii) a lawyer accepts representation of a person* in a matter in which an opposing party is a client of the lawyer or the lawyer's law firm.* Similarly, direct adversity can arise when a lawyer cross-examines a non-party witness who is the lawyer's client in another matter, if the examination is likely to harm or embarrass the witness. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only economically adverse, such as representation of competing economic enterprises in unrelated litigation, does not ordinarily constitute a conflict of interest and thus may not require informed written consent* of the respective clients.

[2] Paragraphs (a) and (b) apply to all types of legal representations, including the concurrent representation of multiple parties in litigation or in a single transaction or in some other common enterprise or legal relationship. Examples of the latter include the formation of a partnership for several partners* or a corporation for several shareholders, the preparation of a pre-nuptial agreement, or joint or reciprocal wills for a husband and wife, or the resolution of an "uncontested" marital dissolution. If a lawyer initially represents multiple clients with the informed written consent* as required under paragraph (b), and circumstances later develop indicating that direct adversity exists between the clients, the lawyer must obtain further informed written consent* of the clients under paragraph (a).

[3] In *State Farm Mutual Automobile Insurance Company v. Federal Insurance Company* (1999) 72 Cal.App.4th 1422 [86 Cal.Rptr.2d 20], the court held that paragraph (C)(3) of predecessor rule 3-310 was violated when a lawyer, retained by an insurer to defend one suit, and while that suit was still pending, filed a direct action against the same insurer in an unrelated action without securing the insurer's consent. Notwithstanding *State Farm*, paragraph (a) does not apply with respect to the relationship between an insurer and a lawyer when, in each matter, the insurer's interest is only as an indemnity provider and not as a direct party to the action.

[4] Even where there is no direct adversity, a conflict of interest requiring informed written consent* under paragraph (b) exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities, interests, or relationships, whether legal, business, financial, professional, or personal. For example, a lawyer's obligations to two or more clients in the same matter, such as several individuals seeking to form a joint venture, may materially limit the lawyer's ability to recommend or advocate all possible positions that each might take because of the lawyer's duty of loyalty to the other clients. The risk is that the lawyer may not be able to offer alternatives that would otherwise

be available to each of the clients. The mere possibility of subsequent harm does not itself require disclosure and informed written consent.* The critical questions are the likelihood that a difference in interests exists or will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably* should be pursued on behalf of each client. The risk that the lawyer's representation may be materially limited may also arise from present or past relationships between the lawyer, or another member of the lawyer's firm*, with a party, a witness, or another person* who may be affected substantially by the resolution of the matter.

[5] Paragraph (c) requires written* disclosure of any of the specified relationships even if there is not a significant risk the relationship will materially limit the lawyer's representation of the client. However, if the particular circumstances present a significant risk the relationship will materially limit the lawyer's representation of the client, informed written consent* is required under paragraph (b).

[6] Ordinarily paragraphs (a) and (b) will not require informed written consent* simply because a lawyer takes inconsistent legal positions in different tribunals* at different times on behalf of different clients. Advocating a legal position on behalf of a client that might create precedent adverse to the interests of another client represented by a lawyer in an unrelated matter is not sufficient, standing alone, to create a conflict of interest requiring informed written consent.* Informed written consent* may be required, however, if there is a significant risk that: (i) the lawyer may temper the lawyer's advocacy on behalf of one client out of concern about creating precedent adverse to the interest of another client; or (ii) the lawyer's action on behalf of one client will materially limit the lawyer's effectiveness in representing another client in a different case, for example, when a decision favoring one client will create a precedent likely to seriously weaken the position taken on behalf of the other client. Factors relevant in determining whether the clients' informed written consent* is required include: the courts and jurisdictions where the different cases are pending, whether a ruling in one case would have a precedential effect on the other case, whether the legal question is substantive or procedural, the temporal relationship between the matters, the significance of the legal question to the immediate and long-term interests of the clients involved, and the clients' reasonable* expectations in retaining the lawyer.

[7] Other rules and laws may preclude the disclosures necessary to obtain the informed written consent* or provide the information required to permit representation under this rule. (See, e.g., Bus. & Prof. Code, § 6068, subd. (e) (1) and rule 1.6.) If such disclosure is precluded, representation subject to paragraph (a), (b), or (c) of this rule is likewise precluded.

[8] Paragraph (d) imposes conditions that must be satisfied even if informed written consent* is obtained as required by paragraphs (a) or (b) or the lawyer has informed the client in writing* as required by paragraph (c). There are some matters in which the conflicts are such that even informed written consent* may not suffice to permit representation. (See *Woods v. Superior Court* (1983) 149 Cal.App.3d 931 [197 Cal.Rptr. 185]; *Klemm v. Superior Court* (1977) 75 Cal.App.3d 893 [142 Cal.Rptr. 509]; *Ishmael v. Millington* (1966) 241 Cal.App.2d 520 [50 Cal.Rptr. 592].)

[9] This rule does not preclude an informed written consent* to a future conflict in compliance with applicable case law. The effectiveness of an advance consent is generally determined by the extent to which the client reasonably* understands the material risks that the consent entails. The more comprehensive the explanation of the types of future representations that might arise and the actual and reasonably* foreseeable adverse consequences to the client of those representations, the greater the likelihood that the client will have the requisite understanding. The experience and sophistication of the client giving consent, as well as whether the client is independently represented in connection with giving consent, are also relevant in determining whether the client reasonably* understands the risks involved in giving consent. An advance consent cannot be effective if the circumstances that materialize in the future make the conflict nonconsentable under paragraph (d). A lawyer who obtains from a client an advance consent that complies

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works. 3

with this rule will have all the duties of a lawyer to that client except as expressly limited by the consent. A lawyer cannot obtain an advance consent to incompetent representation. (See rule 1.8.8.)

[10] A material change in circumstances relevant to application of this rule may trigger a requirement to make new disclosures and, where applicable, obtain new informed written consents.* In the absence of such consents, depending on the circumstances, the lawyer may have the option to withdraw from one or more of the representations in order to avoid the conflict. The lawyer must seek court approval where necessary and take steps to minimize harm to the clients. See rule 1.16. The lawyer must continue to protect the confidences of the clients from whose representation the lawyer has withdrawn. (See rule 1.9(c).)

[11] For special rules governing membership in a legal service organization, see rule 6.3; and for work in conjunction with certain limited legal services programs, see rule 6.5.

Notes of Decisions (933)

Footnotes

\*      An asterisk (\*) identifies a word or phrase defined in the terminology rule, rule 1.0.1.

Prof. Conduct, Rule 1.7, CA ST RPC Rule 1.7

California Rules of Court, California Rules of Professional Conduct, and California Code of Judicial Ethics are current with amendments received through March 1, 2020. California Supreme Court, California Courts of Appeal, Guidelines for the Commission of Judicial Appointments, Commission on Judicial Performance, and all other Rules of the State Bar of California are current with amendments received through March 1, 2020.

**End of Document**                                   © 2020 Thomson Reuters. No claim to original U.S. Government Works.