# EXHIBIT E

On May 1, 2020, at 8:32 PM, Mikal Watts, PG&E Lawsuit Team <contact@pgelawsuit.com> wrote:

# Watts Guerra LLP

May 1, 2020

Dear PG&E Fire Client:

I write to briefly update you on (1) the status of the vote underway with respect to the proposed $13.5 billion settlement, (2) April filings and orders in Bankruptcy Court since my last update letter to you on April 7; and (3) the upcoming settlement claims process, (4) a repeat disclosure; and (5) scheduling your appointment to meet with us to complete your settlement claim form and supply the documentation necessary to complete your damages claim.

**I. STATUS OF THE VOTE UNDERWAY**

On April 16, United States District Judge James Donato conducted a status conference and inquired as to how the vote was going. As a result, several attorneys filed status reports in Case 3:19-cv-05257-JD, including Doc. #342 and Doc. #345. In one of those status reports, six law firms collectively representing 31,388 unique claimants, who timely-filed Notices of Claim by the Bankruptcy Court's Bar Date, announced the status of their vote counts as follows:

**SUMMARY OF STATUS OF THE VOTE**

| Individual Law Firm | # of Clients w/ Timely Filed Notice of Claim | How Votes Collected | # of "ACCEPT" Votes Received Thus Far | # of "REJECT" Votes Received Thus Far | % of Total |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| WATTS GUERRA[2] | 16,095 | Electronic & Mail | 13,329 | 148 | 98.90% |
| SINGLETON[3] | 7,000 | Electronic & Mail | 3,232 | 39 | 98.81% |
| FRANTZ/ BRIDGFORD[4] | 4,300 | Electronic & Mail | 2,083 | 26 | 98.77% |
| ROBINS[5] | 2,088 | Electronic & Mail | 1,017 | 22 | 97.88% |
| OTHER[6] | 2,000 | Electronic & Mail | 568 | 37 | 93.88% |
| TOTAL | 31,388 | Electronic & Mail | 20,229 | 272 | 98.67% |

As you can see, across six law firm, the vote overwhelmingly (98.67%) supports the Plan.

II. **APRIL FILINGS AND ORDERS IN BANKRUPTCY COURT**

There have been a flurry of filings in Bankruptcy Court concerning the Amended Plan of Reorganization, as well as disclosures concerning the same, during the voting process. While the filings in Bankruptcy Court are too numerous to describe, they are available to the public by accessing the Court's website at http://www.canb.uscourts.gov/case-info/pge-corporation-and-pacific-gas-and-electric-company. You can also access all the relevant Plan documents and disclosure at https://restructuring.primeclerk.com/pge/.

In the meantime, I would like to specifically disclose the following filings for your review:

```
▼ Bankruptcy Filings-3 (20200407-20200501)
    20200407 Order Denying Motion for Entry of an Order Directing Supplemental Disclosure in the Form of a Letter from the TCC.pdf
    20200407 Watts Filing - Response to Joinders.pdf
    20200407 WATTSGUERRA Filing re TCC Letter.doc
    20200408 Doc 6697 Brief/Memorandum in Opposition to / Oppositi...rities Plaintiffs Administrative Motion for Leave to File Sur-Reply.pdf
    20200410 - Debtors Stmnt Re TCC Mtn.pdf
    20200410 Doc 6730 Abrams Joinder.pdf
    20200411 - Jndr to Dbtrs Sttmnt re 4-16-20 Status Conf.pdf
    ▼ 20200411 - Statement Concerning Status Conference
        20200410 - 0311 REPLY (re [286] Debtors Motion Pursuant to 11 U.S.C. 105(a) and 502(c) to Establish Estimated Am.pdf
        20200410 - 0311-001 - Exhibit A - Debtors#039 Letter Response.pdf
        20200410 - 0311-002 - Exhibit B - Transcript of April 7 2020 Hearing.pdf
        20200411 - Joinder to PG&E Statement re Status Conference.docx
    20200413 Doc 6742 41420 Hearing Issues.pdf
    20200413 Doc 6745 Revised Agenda 4142020.pdf
    20200414 - Montali Agenda.pdf
    ▼ 20200414 - Stuff for 4-14-20 Hearing
        20200211 Doc 5723 App to Employee Yanni as ClaimsAdm.pdf
        20200211 Doc 5726 App to Employee Trotter as Trustee.pdf
        20200323 Doc 6418 Mtn of Debtors re Entry of Order Approving Agrmnt Settlmnt w People of CA.pdf
        20200323 Doc 6419 Declaration if BBrian In Support of Doc6418.pdf
        PGE0414.pdf
    20200415 - Notice of Appearance - Trotter-Yanni
    ▼ 20200420 - Abrams Motion
        04-21-20 - Singleton PG&E - Opposition to William Abrams Motio...o Designate Improperly Solicited Votes 4823-4605-3050 v.2.docx
        20200420 Doc 6798 ExParte Mot of Abrams re Improperly Solicitated Votes.pdf
        20200420 Doc 6799 Brams Mtn to Des Improperly Solicited Votes.pdf
        20200420 Doc 6800 Order Denying.pdf
        20200420 Doc 6801 PreOpp to Abrams.pdf
        20200422 Brief Memo Opp to Abrams Mtn by SLF Fire Victims (Doc 6891).pdf
        20200424 Doc 6939 Scarpulla-Hallisey to Abrams Mtn to Designate.pdf
        20200425 Doc 6944 Kane Gowins in William Abrams' Motion to Designate Improperly Solicited Votes.pdf
        20200427 Doc 6946 Abrams Resp to Opp re Mtn to Desgnte Improperly Solicited Votes.pdf
        20200428 Doc 6963 ExParte Motion of William B. Abrams Pursua...B.L.R. 9006-1 Requesting Order Shortening Time for Hearing.pdf
        20200428 Doc 6964 Decl of WBAbrams in Support.pdf
    ▼ 20200425 - Settlements with State Agencies
        20200425 Doc 6940 Debtors' Motion Pursuant to 11 U.S.C. §§ 3...rder (I) Approving Settlements with Federal and State Agencies.pdf
        20200425 Doc 6941 Decl S. Karotkin.pdf
        20200425 Doc 6942 Ex Parte Motion to Shorten Time Motion of ... L.R. 9006-1 Requesting Order Shortening Time for Hearing.pdf
```

Since my last update letter to you on April 7, 2020, Bankruptcy Judge Montali has made important decisions regarding this case and has entered the following orders of relevance to your claims against PG&E:

20200407 – Doc. #6692 – Order Denying Motion for Entry of an Order Directing Supplemental Disclosure in the Form of a Letter from the TCC;

20200414 – Doc. #6759 – Order Granting Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C.§§ 1103 and 363 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Cathy Yanni as Claims Administrator *Nunc Pro Tunc* to January 13, 2020;

20200414 – Doc. #6760 – Order Granting Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C.§§ 1103 and 363 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Hon. John K. Trotter (Ret.) as Trustee *Nunc Pro Tunc* to January 13, 2020;

20200415 – Doc. #6773 – Order Denying Motion for Standing to Prosecute Claims of the Debtors' Estates;

20200420 – Doc.#6800 – Order Denying Motion to Shorten Time;

20200421– Doc.#6866 – Order Regarding Rule 2004 Applications Filed by the Official Committee of Tort Claimants; and

20200429 – Doc. #6976 – Order Denying Second Motion to Shorten Time.

A link that you may click on to review these orders, that I believe are particularly relevant for you to review, is provided here:

A file has been made available for you to download.

Filename: Orders-from-Montali-(4-7-to-5-1).zip
Size: 1.02 MB
Availability: 3 Weeks
Description:
Download Code: a92ea9b1

Click here to download the file
If the download link above doesn't work for you, use the download code above on the Event Horizon download page.
Bottom line: Just as the vote appears to be going well, so do the orders from Bankruptcy Judge Montali concerning the various filings made by the litigants since I last updated you on April 7th, which means we are still on track to have the reorganization plan approved by the Bankruptcy Court and have PG&E exit bankruptcy by June 30, 2020.

III. **A REPEAT DISCLOSURE**
A. **A DISCLOSURE CONCERNING WATTS GUERRA'S CREDIT FACILITY & THE NEGOTIATIONS LEADING TO THE PROPOSED SETTLEMENT**

**NEGOTIATIONS LEADING TO THE PROPOSED SETTLEMENT**

My firm, WATTS GUERRA LLP, is a large Plaintiffs' firm with twenty-five (25) lawyers, a staff of one-hundred and eleven (111) workers, and eight offices across two states. The firm, and its predecessor entities involving me as an owner, has been operating for twenty-three years since April of 1997. During its entire existence – like most other businesses in this country – my firm has maintained a line of credit through a credit facility.

We refinanced our general credit facility with a bank called Stifel, which just like with your home mortgages, has a right to sell off portions of its portfolio to others through assignments. Under the terms of our credit agreement, we did not have the right to know about any assignments or the amounts of those assignments made by Stifel to other parties. As it is allowed to do, Stifel assigned a portion of my firm's credit facility to two of its assignees: Centerbridge Partners L.P. and Apollo Global Management LLC.

I would now like to explain the history of the negotiations last fall with both the EQUITY and the DEBT, that led to the signing of a Restructuring Support Agreement between the EQUITY and the eleven members of the Tort Claimants Committee ("TCC") and the Consenting Fire Claimant Professionals like myself, lawyers who represent large numbers of fire survivors.

1. <u>Negotiations with the Equity (Shareholders)</u>

Gavin Baiera of Centerbridge first called me on October 4, 2019, while I was in a hearing in South Carolina on an unrelated case; we never negotiated, rather he merely introduced me to the principal of the Equity side, Tom Wagner of Knighthead Capital Management. All of my negotiations with the Equity side have been with Tom Wagner of Knighthead Capital Management, David Abrams of Abrams Capital Management, John Motulski and Michael Stern of Stonehill Capital, Edward Mule of Silverpoint Capital and Steve Zelin at PJST Partners, and the lawyer for the Equity, Bruce Bennett of Jones Day in Los Angeles, California. None of these people, with whom I did negotiate, have anything to do with my firm's loan:

- all of those listed above also negotiated with the 11 members of the TCC and all 13 of the Consenting Fire Claimant Professionals; and

- every person that signed the December 6, 2019 Restructure Support Agreement (RSA) with the Equity met, and negotiated with the same individuals from the Equity during Court-order mediations occurring in November and December in San Francisco at either the offices of Jones Day or the offices of JAMS, Judicial Arbitration & Mediation Services.

I have continued to work diligently, negotiating to improve this deal through frequent discussions with Tom Wagner of Knighthead Capital Management, and infrequent discussions with David Abrams at Abrams Capital Management.

2. <u>Negotiations with the Debt (Bondholders)</u>

William Jones from Apollo introduced me to Chris Lahoud of that firm, there again Lahoud simply introduced me to one of the principals of the Debt Side, Jeff Rosenbaum of the Elliot Management Company. All of my negotiations with the Debt were with their lawyer Michael Stamer of Akin Gump, with Jeff Rosenbaum of Elliot Management Company, and Scott Striegel and Adam Gubner of PIMCO;

3. <u>The Settlement Between the Bondholders and the Shareholders</u>

Eventually, the Debt and the Equity settled their differences on January 22, 2020, and since then, the Debt has announced it publicly supports the Equity deal. It has filed court papers saying this, and it has so said in open court hearings.

4. <u>Communications with Members of the Debt and the Equity Who Are Assignees of My Firm's Credit Facility</u>

Stifel syndicated, or sold pieces of my firm's credit facility to many financial entities. I had no negotiations with Centerbridge, and have confirmed that no other member of the EQUITY involved in the negotiations has any role in my firm's credit facility.

I have had no negotiations with Apollo, and have confirmed that no other member of the DEBT involved in the negotiations has any role in my firm's credit facility. On March 25, 2020, Chris Lahoud called me again, this time offering for the Debt to provide assistance with the backstops if there were any problems with the $12 billion in current financial backstops in light of the COVID-19 economy. I passed his offer along to Tom Wagner of the Equity, who then assured me that there was no problem with the $12 billion in financial backstops, and that the deal is a "Go" once the fire survivors complete their vote.

5. <u>My Prior Disclosures of this Issue</u>

On December 12, 2019 in Chico at 2 p.m., and again in Santa Rosa at 6:30 p.m., I disclosed all of this. I explained my credit facility, the assignments thereof, the introductions made by those assignees to the principals of both the Equity and Debt side of the deal. I then explained in detail how those negotiations occurred, specific dates and locations of negotiations - during mediations, over cocktail meetings, dinner meetings, breakfast meetings, a meeting at a football game, email correspondence, and a specific description of why I concluded the Equity deal was superior. I recorded those December 12 meetings, and thereafter, sent links of the videos and the transcript of those meetings to all my clients

During our last telephonic town hall on April 18, I went through this all again in detail. I

recorded the April 18 telephonic town hall meeting, and thereafter sent links of the videos and the transcript of that meeting to all my clients.  I have since also posted the transcript of that call on our website for all to see.   On April 20, 2020, at 12:10:34 p.m., I filed with the bankruptcy court Document #6801 that set forth all these disclosures, and links to the Power Points presentations, the videos and the written documents evidencing these disclosures.

   On April 25, 2020, I made this disclosure again, recorded and transcribed it, and am providing a link to you for your review. All of these disclosures have been uploaded to our publicly-available website, www.firesettlementfacts.com.

B. **FURTHER SPECIFIC DISCLOSURES**

1. It has been alleged by one fire victim and her attorneys in Doc. No. 6944  that Watts Guerra's line of credit/lending facility financed in part by PG&E bond-holder Apollo and PG&E claim holder and stock holder Centerbridge is an alleged conflict of interest because it allegedly influenced the terms of the settlement. Watts Guerra strongly disagrees, but nonetheless in an abundance of caution makes this repeat disclosure.
2. As has been previously disclosed to you, Watts Guerra has borrowed millions of dollars to finance all of its litigation, including against PG&E.
3. Watts Guerra's credit facility is a normal business loan, like one that it and its predecessor entities have enjoyed for twenty-three years. It has a typical four-year term. It has flat, non-usurious interest. The interest is paid by Watts Guerra and not its clients. It is not a "litigation financing" vehicle, whereby an investor funds a project, and thereby earns a percentage of the fees earned from that project. Rather, it is a facility from which Watts Guerra runs eight offices in multiple states, and makes investments in many mass torts at once across the United States.  We will have to repay this line of credit regardless of the outcome of the PG&E cases.
4. Two of the assignees of our firm's loan are Apollo and Centerbridge. I did not negotiate the approximate $13.5 billion settlement with either of these assignees, and we didn't take out the loan from either Apollo or Centerbridge.
5. I negotiated with other members of both the bond-holders and the equity holders, as discussed above. The following other law firms were also involved in the negotiation of the approximate $13.5 billion settlement:

Abbey, Weitzenberg, Warren & Emery; Dreyer, Babich, Buccola, Wood, Campora LLP; Tosdal Law Firm; Elliot Adler; Frantz Law Group APLC; Bridgford Gleason & Artinian; McNicholas & McNicholas; Corey, Luzaich, De Ghetaldi & Riddle; Danko Meredith; Gibbs Law Group LLP; Cotchett, Pitre & McCarthy; Singleton Law Firm APC; Skikos, Crawford, Skikos & Joseph LLP; and Walkup, Melodia, Kelly & Schoenenberger.
The Tort Claimants Committee or TCC (consisting of fire survivors and their lawyers) also negotiated the agreement. The final settlement agreement was signed on December 6, 2019 by the members of the TCC and law firms above.

6. The settlement agreement signed December 6, 2019 specifically required the plan to be

supported by Watts Guerra and the following law firms: Abbey, Weitzenberg, Warren & Emery; Dreyer, Babich, Buccola, Wood, Campora LLP; Tosdal Law Firm; Elliot Adler; Frantz Law Group APLC; Bridgford Gleason & Artinian; McNicholas & McNicholas; Corey, Luzaich, De Ghetaldi & Riddle; Danko Meredith; Gibbs Law Group LLP; Cotchett, Pitre & McCarthy; Singleton Law Firm APC; Skikos, Crawford, Skikos & Joseph LLP; and Walkup, Melodia, Kelly & Schoenenberger. Watts Guerra supports the plan because we negotiated it, we believe it is in the best interests of our clients, and we agreed in writing to support the plan.

**IV. SETTLEMENT CLAIMS PROCESS, AND SCHEDULING YOUR APPOINTMENT TO MEET WITH US TO COMPLETE YOUR CLAIM FORM AND SUPPLY THE DOCUMENTATION NECESSARY TO SUPPORT YOUR DAMAGES CLAIM**

As we believe the Plan will pass and be approved by the Court, we are currently preparing to move into the upcoming settlement claims process and schedule your appointments to meet with us. Together, we will complete your claim form and supply the documentation necessary to support your damages claim.

**A. THE SETTLEMENT CLAIMS PROCESS**

The Court has already appointed Hon. John Trotter (a former California Appeals Court Judge) as the Trustee, and Cathy Yanni, who administered the $105 million Wildfire Assistance Program, as the Claims Administrator. The mechanics and process for the claims payouts is as follows:

1. The Trustee will finalize the claims rules, the claims forms and set a specific period of time for individual claimants to put in their specific claims ("the claims period").
2. During this claims period, individual claimants make their individual claims to the Trust by submitting them to the third-party administrator (TPA) – in this case, that TPA is Brown Greer LLP.
3. When the claims period closes, Brown Greer LLP will apply the Trust rules to the claims timely made to the Trust, and preliminarily recommend a suggested claims payout. Each individual fire victim can then accept the suggested claims payout, and receive that amount immediately, or seek to have the number adjusted upward.
4. This request for adjustment first is done through Brown Greer, if it can be shown that Brown Greer somehow misapplied the claims rules, or just did not properly assess the claims data provided. Following this request for adjustment to Brown Greer, a final suggested claims payout will be issued by Brown Greer.
5. The Final Suggested Claims Payout number from Brown Greer can either then be accepted and paid, or appealed to a neutral third-party selected by the Trustee. This third-party neutral will hear the objection to the Final Suggested Claims Payout number from Brown Greer, and will adjudicate (or decide upon) the appropriate number. Should a claimant agree with the appropriate number decided by the Third-Party Neutral, the claimant can then get paid.
6. If, however, the claimant wants to appeal the Payout number decided by the Third-Party Neutral, a final appeal can be taken, and the Trustee will appoint a panel of three new neutrals, who will hear the appeal and render a final decision.

7. Once the final decision is made by the three-neutrals panel, payment will be made.

8. This process will occur for each of the 70,000 claimants (excluding any duplicate claims). Eventually, all the money will be distributed, and the Trust will close.

**B. SCHEDULING AN APPOINTMENT WITH US TO COMPLETE YOUR SETTLEMENT CLAIM FORM AND TO SUPPLY THE DOCUMENTS NECESSARY FOR YOUR DAMAGES CLAIM WITH THE TRUST IN ORDER TO GET YOU PAID.**

Judge Montali ordered the voting period to occur between March 31, 2020 and May 15, 2020. Under section 1126(c) of the Bankruptcy Code, an entire class of claims is deemed to accept a plan if the plan is accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims in the class. If the fire survivors vote for the Plan, there will be an estimation hearing before Judge James Donato on May 21, 2020, and a confirmation hearing before Bankruptcy Judge Dennis Montali on May 27, 2020. It is my belief that if the fire survivors support the plan that Judge Montali is likely to confirm it.

If Judge Montali confirms the plan, the Trust will be funded with approximately $13.5 billion, ½ in stock on the effective date and about half in cash in three tranches: (1) $5.4 billion on the effective date; (2) $650 million on January 15, 2021; and (3) $700 million on January 15, 2022. The Trust has hired an investment banking firm, Houlihan Lokey, and the TCC has hired Mark Cohen at the Royal Bank of Canada, to advise as to the optimal time to liquidate the stock in order to optimally pay victims' claims.

The Trustee, Hon. John Trotter, and the Claims Administrator, Kathy Yanni, have begun issuing preliminary claims rules and claims forms. Therefore, ***it is time for you to schedule an appointment with our law firm to complete your settlement claim form and to supply the documents necessary for your claim with the Trust, so we can prepare to get you paid.***

Soon, we will text you if you gave us a phone number, email you if you gave us an email, and/or mail you with a phone number for you to call if you gave us neither, a form which selects a date and time for your appointment to meet with us concerning your damages claims form.

Because of the COVID-19 "shelter in place" orders, we are not yet able to tell you whether these appointments will be conducted remotely via phone or "ZOOM," or later will be conducted in person. In either event, please schedule your time to meet with us immediately.

Thank you for entrusting your case against PG&E with our firm. Let's go to work.

With highest regards,

*/s/Mikal Watts*
Mikal Watts

update your preferences or unsubscribe from this list.