1               UNITED STATES BANKRUPTCY COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                      -oOo-

| | | |
|---|---|---|
| 4 | In Re: | ) Case No. 19-30088 |
| | | ) Chapter 11 |
| 5 | PG&E CORPORATION AND PACIFIC | ) |
| | GAS AND ELECTRIC COMPANY, | ) San Francisco, California |
| 6 | | ) Tuesday, May 12, 2020 |
| | Debtors. | ) 10:00 AM |
| 7 | _____ | ) |
| 8 | | WILLIAM B. ABRAMS' MOTION TO |
| | | DESIGNATE IMPROPERLY |
| | | SOLICITED VOTES PURSUANT TO |
| 9 | | 11 U.S.C. SECTIONS 1125(B) |
| | | AND BANKRUPTCY RULE 2019 |
| 10 | | [6799] |

11

12               TRANSCRIPT OF PROCEEDINGS

            BEFORE THE HONORABLE DENNIS MONTALI

13           UNITED STATES BANKRUPTCY JUDGE

14  APPEARANCES:

     For the Debtor:        STEPHEN KAROTKIN, ESQ.

15                     THEODORE TSEKERIDES, ESQ.

                     Weil, Gotshal & Manges LLP

16                     767 Fifth Avenue

                     New York, NY 10153

17                     (212)310-8000

18  For Individual and Tubbs   WILLIAM B. ABRAMS, PRO SE

     Fire Claimant:        (Telephonically)

19                     1519 Branch Owl Pl.

                     Santa Rosa, CA 95409

20                     (707)397-5727

21  For Karen Gowins,       STEVEN S. KANE, ESQ.

     Creditor:            (Telephonically)

22                     The Kane Law Firm

                     402 W. Broadway

23                     Suite 2500

                     San Diego, CA 92101

24                     (619)236-8700

25

(973)406-2250 | operations@escribers.net | www.escribers.net

```
 1
    For Numerous Wildfire        MIKAL C. WATTS, ESQ.
 2  Claimants:                   (Telephonically)
                                 Watts Guerra LLP
 3                               70 Stony Point Road
                                 Suite A
 4                               Santa Rosa, CA 95401
                                 (707)241-4567
 5

 6  For Official Committee       ROBERT A. JULIAN, ESQ.
    Of Tort Claimants:           (Telephonically)
 7                               600 Montgomery St., #3100
                                 San Francisco, CA 94111
 8                               (415) 659-2600

 9  For Fire Victims:            THOMAS TOSDAL, ESQ.
                                 (Telephonically)
10                               Tosdal Law Firm
                                 777 S. Highway 101, Suite 215
11                               Solana Beach, CA 92075
                                 (858) 704-4710
12
    For PERA OF New Mexico:      MICHAEL S. ETKIN, ESQ.
13                               (Telephonically)
                                 Lowenstein Sandler LLP One
14                               Lowenstein Drive Roseland, New
                                 Jersey 07068 (973) 597-2500
15
    For Official Committee of
16  Unsecured Creditors:         GREGORY A. BRAY, ESQ.
                                 (Telephonically)
17                               Milbank, LLP
                                 2029 Century Park East, 33rd Fl.
18                               Los Angeles, CA 90067

19  For Ad Hoc Committee of      ABID QURESHI, ESQ.
    Senior Unsecured             (Telephonically)
20  Noteholders:                 Akin Gump Strauss Hauer
                                 & Feld, LLP
21                               One Bryant Park
                                 New York, NY 10036
22                               (212) 872-8027

23

24

25
```

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For SLF Fire Victim          GERALD SINGLETON, ESQ.
     Claimants:                   (Telephonically)
 2                                Singleton Law Firm, APC
                                  450 A Street
 3                                5th Floor
                                  San Diego, CA 92101
 4                                (619)771-3473

 5                                RICHARD A. MARSHACK, ESQ.
                                  (Telephonically)
 6                                Marshack Hays LLP
                                  870 Roosevelt
 7                                Irvine, CA 92620
                                  (949)333-7777

 8

 9

10

11

12

13

14

15

16

17
     Court Recorder:             LORENA PARADA/ANKEY THOMAS
18                               United States Bankruptcy
                                 Court
19                               450 Golden Gate Ave.
                                 San Francisco, CA 94102
20

21   Transcriber:               LINDA FERRARA
                                 eScribers, LLC
22                               7227 N. 16th Street
                                 Suite #207
23                               Phoenix, AZ 85020
                                 (973)406-2250

24
     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    SAN FRANCISCO, CALIFORNIA, TUESDAY, MAY 12, 2020, 10:45 AM

2                                -oOo-

3        (Call to order of the Court.)

4            THE COURT:  Welcome everyone, to the court, and I wish

5    you all well, and hope things are under control for all of you,

6    a little bit more than the rest of us.

7            We have one matter on the calendar today, and this is

8    our first time using CourtCall with the video appearance.  So

9    the operator helping me knows who has volunteered or signed up

10   rather, for video appearances.

11           We have two matters on the calendar, the one that

12   we'll begin with is Mr. Abrams' motion regarding designation of

13   ballots and related matters, and I've issued an order setting

14   forth time allocations on that, and at the conclusion of that

15   motion, we will then take up the request by the debtors'

16   counsel to discuss confirmation scheduling, or I'll wait until

17   the operator tells me we've got the participants on the screen,

18   and then I will wait for Mr. Abrams particularly.  He is the

19   moving party, and I will start with him when he --

20       (Break in audio)

21           THE CLERK:  Recalling the matter of PG&E Corporation.

22           THE COURT:  All right.  Good morning, everyone again.

23   Judge Montali second time around.  I apologize on behalf of the

24   court for the inconvenience to everyone.  We thought we had the

25   problem solved, I guess we didn't.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1        Let me just verify, Mr. Abrams are you on the call

2   now?

3        MR. ABRAMS:  Yes, I am, Your Honor.

4        THE COURT:  Mr. Kane, are you on the call?

5        MR. KANE:  Yes, Your Honor.  Stephen Kane.  I'm here.

6        THE COURT:  Mr. Watts?

7        MR. WATTS:  Yes, sir, I'm here.

8        THE COURT:  And Mr. Singleton?  Is Mr. Singleton on

9   the phone?

10        THE CLERK:  Your Honor, let me check that for you.

11        THE COURT:  All right.  That's okay, if he's not

12   there.  I'm getting some feedback now, Operator.  Do you know

13   anything about that?

14        THE CLERK:  Let me check that for Your Honor, I

15   apologize.

16        Your Honor, I believe it is coming from someone else's

17   line.  I will monitor that line for you.

18        THE COURT:  All right.  Well, let's -- we want --

19   let's go ahead and begin.

20        Mr. Abrams, I gave you a total of forty minutes, and I

21   also asked you to discuss with your colleagues how to divide

22   the time.  Were you able to resolve that?

23        MR. ABRAMS:  Your Honor, yes, we were, Your Honor.

24   Myself and Mr. Kane will be splitting the time.  I'll be

25   speaking first and then followed by Mr. Kane, and we're both

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1 | reserving five minutes for rebuttal time.

2 | THE COURT:  Five total or five each?

3 | MR. ABRAMS:  Five each for rebuttal, with the

4 | remainder fifteen-fifteen for the -- with regard to the

5 | arguments.

6 | THE COURT:  All right.  And is Ms. Maynard on the

7 | call?  Ms. Maynard, are you here today?  All right.

8 | MR. ABRAMS:  Ms. Maynard did let me know before the

9 | call that she was going to be on a listen-only line, but I'm

10 | not sure if that changed.

11 | THE COURT:  No, she was on a live participate by

12 | video, but there was -- she had some connections problem, too.

13 | Okay.

14 | Let's get going.  Mr. Abrams, I've read the -- all the

15 | papers, there are many, including filed as late as last

16 | evening.  So you don't have to refresh my memory about the

17 | background.  Go ahead, and take the time, and you'll take your

18 | share of your thirty minutes you're dividing up with Mr. Kane,

19 | to make your best arguments.

20 | Go ahead, please.

21 | MR. KAROTKIN:  Your Honor?  Your Honor, can I just

22 | interrupt for a minute?  It's Mr. Karotkin.

23 | THE COURT:  Yes, sir.

24 | MR. KAROTKIN:  I would just like one minute at some

25 | point, that's all.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    THE COURT:  Okay.  Yeah, we'll get you a minute to

2  share when Mr. Watts is up.

3    MR. KAROTKIN:  Okay, thank you, kindly.

4    MR. MARSHACK:  And Your Honor --

5    THE COURT:  I assume -- Mr. Karotkin, I assume you're

6  opposing the motion, that's why I'll match you up with Mr.

7  Watts.

8    Go ahead, Mr. Abrams.

9    MR. KAROTKIN:  Well, we filed a brief response, Your

10  Honor.

11    THE COURT:  Yes, I saw it.

12    MR. MARSHACK:  Your Honor, this is Mr. Marshack.  If

13  Mr. Singleton doesn't join the line, I'll take his time if

14  necessary.

15    THE COURT:  Okay.  Thank you, Mr. Marshack.

16    MR. KANE:  Your Honor, this is Mr. Kane.

17    THE COURT:  All right, Mr. Abrams?

18    MR. KANE:  We have not received Mr. Karotkin's filing

19  at this time.

20    THE COURT:  They filed it two or three days ago.  It's

21  on the docket and --

22    MR. KANE:  Well, I will look at docket.

23    THE COURT:  -- you can look at the docket.  It's

24  there.  I'll give you the number later.

25    MR. KANE:  Well (indiscernible)

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1          THE COURT:  Let's get on with the argument.

2          Mr. Abrams, at long last, you're up.

3          MR. ABRAMS:  All right.  Thank you, Your Honor.  I

4   appreciate the Court's time.  I appreciate these are difficult

5   times for us all, given the COVID environment and trying to

6   deal with those issues, so I appreciate the time, and the time

7   of all parties on the phone.

8          I am happy to -- as you stated, there are lots of

9   papers, and I will try not to repeat the information that's

10  provided in those papers but I would like to frame this up, and

11  really explain to the Court that I have felt compelled to file

12  this motion.  The purpose of my engagement in this proceeding

13  has been, and will remain for the safety and security of

14  wildfire survivors, and for the public, and I am concerned, as

15  are many of the parties on this call, regarding where this

16  proceeding, and this bankruptcy process leaves us regarding

17  safety and security.

18         That said, I have brought this motion forward, not

19  because of Mr. Watts, not because of me, or any particular

20  party.  The only reason that I brought these matters forward

21  was because like many parties, I am looking for a just process.

22  I'm looking for just outcomes, and it is only for the service

23  of those outcomes that I have put this motion forward.

24         There are clear violations of Bankruptcy Rule 2019,

25  Section 1125(b), and Section 1126(c).  They are far reaching.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1   There is documented evidence, both in video and in written form

2   provided by many parties, but particularly by Mr. Watts, and I

3   do not look at that as a bad thing.  I think that is a good

4   thing for the Court, and for the process, that it provides

5   information regarding the conflicts, and regarding the matters

6   associated with these sections.

7           I hope that this does not devolve into a battle

8   amongst attorneys and myself as a pro se participating in this

9   proceeding.  I think I would like to focus on the facts that

10  are before the Court, and I certainly can, and happy to discuss

11  remedies associated with this, but in the end, part of what is

12  very clear, at least upon my read of Bankruptcy Rule 2019, that

13  the Court and Your Honor has broad powers associated with that

14  enforcement, and can choose to take actions that are very

15  clearly spelled out in that rule.

16          So Your Honor, I'll proceed to outline a few points,

17  and if Your Honor feels like you would like me to focus on

18  anything in particular, feel free to redirect me.  I am

19  certainly open to that as a nonattorney trying to make sense of

20  this all.

21          THE COURT:  Okay.

22          MR. ABRAMS:  It is crucial --

23          THE COURT:  If I have questions, of course, I'm not

24  bashful, I'll interrupt you if I have questions but I don't

25  now.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1      MR. ABRAMS:  Okay.  Thank you, Your Honor.

2          So in relation to Bankruptcy Rule 2019, it is not a

3  question, I am thankful that Mr. Watts, as now it seems from

4  his papers, agreed that there was a conflict, and has agreed

5  now to meet with his clients to get sign-off on those

6  conflicts, and to provide that disclosure.  It seems that that

7  is what has been provided.

8          Unfortunately --

9          THE COURT:  Mr. Abrams, I am going to interrupt you.

10  I want you to distinguish between violation of Rule 2019, if

11  you believe there is one, and a violation of California law

12  that regulates attorneys, if there is one, and there are

13  positions taken on those, then I believe they are discrete

14  rules of conduct, and discrete consequences.  So you started by

15  focusing on 2019, and your terminology now makes me think

16  you're moving into the California law.  So let's focus on 2019

17  first, and then go where else you want to go.

18          MR. ABRAMS:  Thank you, Your Honor, and I would have

19  to say that I appreciate that, you know, as a nonattorney,

20  where Bankruptcy Rule 2019 violations overlap with violations

21  of 1.7(b).  You know, Mr. Kane will speak to some of those

22  after me, but you know, I am not going to weigh in on, you

23  know, the legalese associated with how those -- I'm going to

24  lay out the conflicts, and then, you know, attorneys -- then,

25  Your Honor, you know, I don't feel like I'm in the best

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    position to be, you know, arguing --

2         THE COURT:  All right.

3         MR. ABRAMS:  -- on those legal matters.

4         I would say that it's very clear when Mr. Watts stands

5    under a large slide saying litigation funding, conflicts of

6    interest, that what he is speaking about are conflicts of

7    interest, and he proceeds in that meeting on December 8th to

8    describe information that clearly points to lots of conflicts

9    in this case.

10        He talks about Centerbridge.  He talks about people.

11   He talks about how he understood that there was a 100-million-

12   dollar line of credits, to whatever degree that is a line of

13   credit versus some other structure, we don't know, because that

14   agreement hasn't been provided, and he describes how he

15   understood that Centerbridge was also equity, and negotiating

16   on the part of equity.

17        He in fact states that he met at the Ritz Carlton with

18   Gavin Viara (phonetic) and said he's a real good guy -- and I

19   quote, "a real good guy, just trying to press the flesh on

20   behalf of equity."  He understood the conflicts.

21        He went in the direction that I imagine he felt was

22   appropriate, was to get into a room with, I don't know, 300,

23   500 people, and provide disclosure that that was a conflict.

24   Good for him.  I appreciate that.  It doesn't go far enough

25   from my read, as a nonattorney, of Bankruptcy Rule 2019, but I

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    appreciate it and I think it's a service to the Court.

2    Unfortunately, in addition to that, he had exposed

3    that conflict far and wide, in terms of how this proceeding has

4    touched parties.  He put a slide up on that screen of an email,

5    the subject line of that email was Pitre and Dumas, in which he

6    connects Centerbridge with those parties.  He lists many other

7    parties that are very close to the workings of this deal.  I

8    won't describe all of those interactions but it's troubling.

9    It should be troubling to everyone in this case, and it was

10   certainly troubling enough for Mr. Watts for this -- for him to

11   bring that to the attention of those 300 or 500 people in that

12   room.  It is not enough from my read of Bankruptcy Rule 2019,

13   to state that in a room of 3- to 500 people.

14   What is also clear is that Mr. Watts wasn't in those

15   negotiations on behalf of just his clients.  He was the point

16   person for the negotiations on behalf of all victims.  I did

17   not him -- assign him that position.  Other victims didn't

18   understand that he had that position.  I believe that the TCC

19   understood he had that role, but that is how he is absolutely

20   key to understanding the breadth and depth of these conflicts

21   and their effects.

22   I would ask the Court, and I would think parties would

23   welcome making sure that there was full transparency, that

24   there was full disclosure, so that victims could trust in a

25   just process.  That is what we are working towards.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    I'll move on, Your Honor.  All right.  I can go into

2  other conflicts associated but they're all outlined in the

3  papers.  They're all outlined in the many videos that Mr. Watts

4  provided.  There has been written recent press reports

5  including The Wall Street Journal article that came out

6  yesterday indicating that Mr. Watts made decisions and moves

7  associated with who he is going to talk to, and who is he not

8  going to talk to based on those conflicts and how those

9  conflicts have been revealed.

10    They have impacted this case profoundly.  Mr. -- in --

11  as part of the --

12    THE COURT:  How they have impact -- Mr. Abrams, how

13  have they impacted the case profoundly or even at all?  How

14  have they impacted the case?

15    MR. ABRAMS:  Sure, let me describe that, and let me

16  also say, Your Honor, of course I am not privy to the

17  negotiation.  The TCC has appointed --

18    THE COURT:  You made a statement -- Mr. Abrams, you

19  made a statement that Mr. Watts' --

20    MR. ABRAMS:  Yes.

21    THE COURT:  -- conduct has impacted the proceeding.

22  Tell me what facts you rely on to make that statement.

23    MR. ABRAMS:  Sure.  So Your Honor, in The Wall Street

24  Journal article --

25    THE COURT:  Well, there's no Wall Street Journal

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    article in our record, so I'm going to give you some liberty

2    there --

3            MR. ABRAMS:  So I am going to read it to you, Your

4    Honor.

5            THE COURT:  I'll give you some liberty there.  What

6    facts did Mr. Watts engage in, or conduct did he engage in in

7    the meetings in last fall or since then that have impacted this

8    proceeding adversely or materially?

9            MR. ABRAMS:  Sure.  I will describe them, Your Honor,

10   and again, I am not an attorney.  I am not --

11           THE COURT:  You've said that about a hundred times.  I

12   know that.  But you are making the accusations, so if you make

13   the --

14           MR. ABRAMS:  Yeah.

15           THE COURT:  -- accusations, you need to back them up,

16   not with legal theories, but with facts.  So what facts would

17   you have me --

18           MR. ABRAMS:  Sure.

19           THE COURT:  -- consider?

20           MR. ABRAMS:  Sure.  I will have you consider the

21   following facts, Your Honor.  It is stated in that article that

22   Michael Watts stated, Apollo and Centerbridge, and he

23   understood that it's having a moving -- that moved away from

24   Apollo and Centerbridge, when he understood the conflicts, and

25   instead dealt with other large investors once he learned of the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1   two firms' participation in his financing.

2          So now we have the point person, who is supposed to be

3   negotiating on behalf of victims, who is now instead of dealing

4   with the parties he felt were the primary principals, and again

5   by his own words, he is now trying to deal with other people

6   because he has a conflict, number one.

7          Number two, it was voiced, and there was a proposal

8   put forward by the TCC indicating that the registration rights

9   agreement, and when stock would be sold, as well as the trust

10  agreement rules that would dictate when the funding was to be

11  provided, had not been worked out, and there was concern.  TCC

12  indicated they wanted to send a letter.

13         THE COURT:  Yeah, I know that, but what did Mr. Watts

14  do?

15         MR. ABRAMS:  All victims --

16         THE COURT:  What did Mr. Watts do?  The TCC wanted to

17  send a letter, and I declined to do it with the Court's

18  approval, but said they can send whatever letter they want.

19         MR. ABRAMS:  Okay.

20         THE COURT:  What did Mr. Watts do?

21         MR. ABRAMS:  Okay.  Your Honor, I'll stop there.  I'm

22  not going to -- I don't need to continue any further.

23         THE COURT:  Okay.

24         MR. ABRAMS:  I think that there is enough information.

25  You can call it not evidence, but there's enough information

PG&E Corp. and Pacific Gas And Electric Co

1   where those disclosures need to come forward.

2           THE COURT:  Okay, fine.

3           MR. ABRAMS:  The breadth and depth of --

4           THE COURT:  Well, Mr. --

5           MR. ABRAMS:  -- how this affected the case is not my

6   job to investigate.  I am bringing this to the Court's

7   attention.

8           THE COURT:  Okay.  Stop there.  Stop there.  You are

9   sharing your time with Mr. Kane, and you've -- you will

10  reserve, and you have the right to reserve ten minutes at the

11  end.

12          And Mr. Kane, why don't you take over then please, and

13  you'll have fifteen minutes.

14          MR. KANE:  Thank you, Your Honor.

15          MR. ABRAMS:  Your Honor, do you want me to

16  (indiscernible) 26(c) --

17          MR. SINGLETON:  Your Honor, I'm sorry, this is -- I

18  apologize, Your Honor.

19          THE COURT:  Yes.

20          MR. SINGLETON:  This is Gerald Singleton.  I was shut

21  out initially on CourtCall.

22          THE COURT:  Yeah, we'll get back to you.  Mr.

23  Singleton, we'll get to you when Mr. Watts is up.

24          MR. SINGLETON:  Oh, understood, Your Honor.  I just

25  wanted to apologize because I received --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1        THE COURT:  You don't have to.

2        MR. SINGLETON:  -- notice that you'd call.

3        THE COURT:  Okay.  You don't have to apologize.

4        MR. SINGLETON:  Thank you.

5        THE COURT:  Let Mr. Kane make his argument please.

6        MR. SINGLETON:  Understood.  Thank you.

7        THE COURT:  I've apologized for everybody today, for

8   this complete mix-up here.

9        Go ahead, Mr. Kane.  Good morning.

10        MR. SINGLETON:  Understood.

11        MR. KANE:  Your Honor, this is Stephen Kane.  If

12   nobody apologizes, that will be the end of the hearing.  So

13   anyway --

14        THE COURT:  That's right.

15        MR. KANE:  -- this is Stephen Kane for Karen Gowins,

16   Your Honor.

17        And I'd like to very specifically answer the question

18   that Your Honor asked -- that the Court asked about what it is

19   that Mr. Watts did that was an effect of his conflict, and I

20   can answer that by referring to the Wall Street Journal that

21   was published yesterday, unfortunately not in time to be filed

22   in this Court regarding this motion.

23        Mr. Watts says in the middle of the article, or Ms.

24   Blunt who wrote the article states, "In an interview, Mr. Watts

25   said he took out the line of credit with Steeple (phonetic) to

PG&E Corp. and Pacific Gas And Electric Co

1  fund all of his firm's litigation, not just the PG&E case."

2  And this is the important part.  He said, "He took care not to

3  negotiate the PG&E victims' settlement directly with the Apollo

4  and Centerbridge, and instead dealt with other large investors

5  once he learned of the two firms' participation in his

6  financing."

7       Well, that proves several things, Your Honor.  First

8  of all, it proves that he knew at that time, which was the fall

9  of last year, that he had a conflict which he did not disclose

10  to his clients, nor did he obtain waivers.  He did nothing

11  under 1.7 to deal with his conflict that he knew about.  He

12  claims to be representing 16,000 clients in this case, but in

13  these negotiations where he is -- he's characterized in the

14  article as being the key man for the victims, the fire victims

15  in this negotiation.  He has this conflict which he does not

16  disclose, and he indicates in the article, in the interview

17  from -- with Ms. Blunt, that he was affected in the way he

18  handled the case and the negotiations on behalf of all of these

19  people, not just his clients, but every fire victim out there

20  based on his reaction to this conflict.

21       And Your Honor, that's exactly what 1.7 is designed to

22  avoid.  The attorney must exercise independent judgment, not

23  affected by the -- by a conflict that an attorney has.  There's

24  a process to deal with a conflict.  Mr. Watts didn't do it.

25       And the other problem is that we don't know whether

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    his decisions regarding avoiding his conflict in the

2    negotiations were good for all of his clients, or bad for all

3    of his clients.  I believe under 1.7, I think we can show that

4    that's not the point.  It's not the point whether he was

5    affected, whether he did anything wrong -- and this keeps

6    coming up in his pleadings over and over again, he says I

7    didn't do anything wrong, that's not the point of 1.7.  1.7 is

8    designed to have the attorney use the prescribed methods to

9    avoid the effect of conflicts before that effect occurs.

10        So the answer to your question, Your Honor, is it

11   absolutely did affect him in this critical position that he was

12   in dealing with the financing entities of this plan.  So the

13   whole plan sort of hinges on Mr. Watts, as least as far as the

14   fire victims are concerned, and that hinge is rusty because

15   he's got this conflict with the other side, but he doesn't

16   follow the rules.  He doesn't do what the rules prescribe for

17   him to do.

18        And we could see this from the remainder of the

19   article.  In fact, Mr. Singleton apparently made a statement

20   that was reported in this article where he said basically that

21   Mr. Watts was indispensable to this process.  So he was the --

22   I'm looking for the actual quote now, "Mikal was the one who

23   got it across the finish line."  This quote is attributed to

24   Mr. Singleton.

25        So Mr. Watts is a key guy.  He's representing all the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    fire victims in there, that he has an undisclosed conflict and

2    he allows that conflict to affect the way that he is handling

3    the negotiation.

4              I don't think you could get a more clear example of a

5    place where a conflict has not been correctly handled by an

6    attorney in this enormous case involving the well-being of tens

7    of thousands of people, and so that's my answer to the

8    question.  I'll be glad to go on but I think it's pretty clear.

9              THE COURT:  So Mr. Kane, what's my remedy here?  What

10   would you have me do?

11             MR. KANE:  Well, that's the biggest question because

12   here we are --

13             THE COURT:  Right.

14             MR. KANE:  -- in a -- with a terrible deadline hanging

15   over us.  The vote is going to be concluded on Friday, and our

16   motion focuses on the vote, although The Wall Street Journal

17   article opened up a whole new vista regarding this conflict.  I

18   suspect --

19             THE COURT:  You know, this case has moved at lightning

20   speed but this is the first time I've ever had an issue turn on

21   something that was published the night before the hearing.  So

22   I've been busy doing other things like reading last minute

23   filings, and I managed not to read The Wall Street Journal this

24   morning, so we're back to the question of what shall I do about

25   it?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    MR. KANE:  Well, I think I have an answer to that,

2 Your Honor.

3    THE COURT:  Okay.

4    MR. KANE:  I've given it a lot of thought and there

5 was something that I found just the other day, in fact a day

6 ago, we were going through the eighty-eight exhibits that Mr.

7 Watts filed in this case in opposition to our motion.  That was

8 a long job, but that's the life of an attorney.  You know, you

9 have to go through a lot of papers, that's fine.

10    What I came across was a statement that Mr. Watts made

11 to his clients in a meeting on May 2nd, ten days ago, where he

12 mentions his handling of the conflict issue and he states that

13 he is going to make a full disclosure of the conflict to all of

14 his clients, and he's going to elicit waivers from him -- from

15 all of his clients.

16    Well, that's exactly what we're asking for in this

17 motion.  So the answer to the question of what the Court should

18 do, is to go ahead and grant our motion, which I specified

19 pretty -- quite carefully in our pleadings, exactly what we

20 were asking the Court to do.  There's no room for any doubt

21 about that.

22    Just what -- this occurred, for the Court's reference,

23 on an exhibit, I believe it's Exhibit 15 -- let me get the

24 reference because it's important.  I've got too many papers

25 here -- here we go -- this is Exhibit 17, and it is docket

PG&E Corp. and Pacific Gas And Electric Co

1   number 7129-22.  This was filed by Mr. Watts on 5/8/20, so any

2   questions of attorney-client confidentiality I think are kind

3   of wiped out by that fact.

4           He's having a town hall meeting with his clients, and

5   he says on page 78, he actually has a court reporter's

6   transcript, a transcription report of this meeting, which is a

7   very good thing because it gives us a source of the facts

8   that's reliable.  He says on page 78, at line 14, "And just so

9   that everybody knows, over the course of the next several

10  weeks, we're going to be sending you a text designed to get you

11  lined up with a schedule of appointment -- of an appointment to

12  allow you to get your claim done.  We're going" -- this is the

13  important part, "We're going to make you a full disclosure

14  about all the stuff, or all this stuff, you've been reading in

15  the New York Times, The Wall Street Journal, and the San

16  Francisco Chronicle tomorrow, and get you to waive any conflict

17  that you see."

18          Now he goes on to say, "I don't see it, but the bottom

19  line is our main goal is we want you to sign up and schedule

20  yourself."

21          So at least by May 2nd, Mr. Watts had decided that he

22  was going to do finally, and too late unfortunately, what he

23  should've done months ago, when he learned of the conflict, and

24  it basically follows what we are asking the Court to order in

25  this motion, which is to have a court-approved disclosure go

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1  out to all of the -- all of his clients, and along with a

2  waiver giving them an option to waive the conflict, and then

3  return -- Mr. Watts can return the results of that, and that

4  will validate the votes of those -- of his clients who waive

5  the conflict.  That's almost precisely what we were asking for

6  in this motion, Your Honor.

7       THE COURT:  And what will it do for the votes of

8  people who don't respond?

9       MR. KANE:  Well, the votes will be -- those votes will

10  be disregarded because there's no waiver.

11       THE COURT:  So the voter is disenfranchised because of

12  the, what you believe is the conduct of the lawyer.

13       MR. KANE:  I think that's true, Your Honor.

14       THE COURT:  That's not very helpful, is it?  That

15  doesn't help the people that are writing the letters about they

16  want to vote, does it?

17       MR. KANE:  Well, for one thing, anybody can change

18  their vote, but only up to Friday.  As I said, the biggest

19  problem we have in this case is lack of time.

20       THE COURT:  Well, that's right --

21       MR. KANE:  And --

22       THE COURT:  -- that's the problem, and I understand

23  and among the other things that were filed in the last twenty-

24  four hours is a petition to the Governor to change the rules.

25  Well, if the Governor would like to change the rules, that's

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    fine.  I can't, and you can't.  Okay.

2            So your point then, just so I'm clear on the record,

3    you're referring to Mr. Watts' 7129-22 and Exhibit 17.

4            MR. KANE:  No, this is 7129-28.

5            THE COURT:  Oh, 28, I'm sorry.  Okay.

6            MR. KANE:  And it is a --

7            THE COURT:  Got it.

8            MR. KANE:  It is a reporter's transcript of a meeting,

9    a town hall meeting --

10           THE COURT:  No, I --

11           MR. KANE:  -- that Mr. Watts held on May 2nd, 2020.

12           THE COURT:  No, I got it, Mr. Kane.

13           MR. KANE:  Basically, a week ago -- yes.

14           THE COURT:  I got it.

15           MR. KANE:  And so my feeling is, if Mr. Watts

16   acknowledges that there was a conflict, he acknowledges -- and

17   I'm not sure he does, but he acknowledges he needs to do

18   something about it, I'm thinking about the least time-consuming

19   and effective way possible to solve the problem, and I think we

20   have proposed it in this motion.

21           If Mr. Watts had called me, and asked me if we could

22   talk about a resolution of this matter, I certainly would've

23   discussed it with him.

24           THE COURT:  Okay.

25           MR. KANE:  And but there is a --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    THE COURT:  Well, that's between you and him.

2    MR. KANE:  -- there is a problem with this, and I

3 guess it's -- I'm in a bad position asking for more, and I

4 really don't have anything to ask for at this point, but in his

5 negotiations that we've now learned about, as the kingpin, the

6 hinge pin of the negotiation on behalf of the fire victims, Mr.

7 Watts did not make a disclosure in that negotiation.

8    So what about all the people who are not represented

9 by counsel, who were represented by him in that negotiation de

10 facto, because he was the top guy, and all of the other people,

11 other attorney's clients who are not represented by him who

12 likewise did not have any say in determining whether he was

13 conflicted.  I don't have a good answer to how to resolve that,

14 but I think in these cases -- and here's the biggest concern to

15 me.  You have these giant financial entities, which are always

16 present in cases of this kind, they're the main financiers, you

17 can call them hedge funds or whatever you want, they have

18 tremendous financial power.  They are permitted to buy up

19 claims in bankruptcy cases.  They can go through, as they have

20 in this case, and buy up the subro claims, and the secured

21 debt, and anything and everything they want to buy up, they can

22 buy the whole case.

23    THE COURT:  Yeah, that's -- therefore what?

24    MR. KANE:  In this case (indiscernible) with a

25 problem, and the problem is what about the fire victim?  Well,

PG&E Corp. and Pacific Gas And Electric Co

1  if the -- if these financial entities can come in to a case,

2  and use some kind of influence that they have obtained over the

3  plaintiff's lawyers to affect the vote on a plan, that

4  undermines the basic integrity of the process.  It's not a

5  small question, it's a huge question, and it's a practice that

6  should not be tolerated by the Court.

7         And I have to say, if you look at what happened here,

8  is it just by coincidence that Centerbridge and Apollo acquired

9  Mr. Watts' litigation financing?  I don't have any facts on

10  that directly, one way or the other, but it seems --

11         THE COURT:  Well, I don't either, so there's no point

12  in --

13         MR. KANE:  -- (indiscernible).

14         THE COURT:  -- dwelling on that.  There's nothing in

15  the record.  There's been a lot of argument about what Mr.

16  Watts didn't disclose but the record is what it is.  I'm going

17  to -- Mr. Kane, I'm going to ask you now to reserve whatever

18  time you want.  I'm going to let Mr. Watts, Mr. Singleton have

19  equal time to respond here.

20         So and -- we'll come back to you and Mr. Abrams.

21         MR. KANE:  The one thing, Your Honor, that I didn't

22  mention that I really hate to have to mention it, I've been

23  looking for the place where Mr. Watts was -- a pro hac vice

24  application was granted for Mr. Watts.  I haven't seen it.

25         THE COURT:  Okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1          MR. KANE:  It did make --

2          THE COURT:  Well, that was one of my questions for

3     him.  I have a preliminary question for Mr. Watts, but he

4     probably would like to be heard.

5          MR. KANE:  Okay.

6          THE COURT:  So --

7          MR. KANE:  I'm going to stop.

8          THE COURT:  -- Mr. Watts, I'm going to call on you

9     next, but I do have one question --

10          MR. WATTS:  Yes, sir, go ahead.

11          THE COURT:  -- two questions, and I'm correct, you are

12     not a member of the California Bar; is that true?

13          MR. WATTS:  I am not.  I have lawyers in my firm that

14     are.

15          THE COURT:  Yes, but you are not, and --

16          MR. WATTS:  That's true.

17          THE COURT:  -- Mr. Kane had asked rhetorically, the

18     very question that I ask because so many lawyers have properly

19     obtained pro hac vice admissions.  Have you done so in this

20     case?

21          MR. WATTS:  Not in this court, Your Honor.  I did so

22     in Judge Donato's court before he canceled the -- or I notified

23     him of that issue, of making --

24          THE COURT:  Not notify, did you submit an order for

25     pro hac vice?

PG&E Corp. and Pacific Gas And Electric Co

1      MR. WATTS:  No, sir.

2      THE COURT:  It only would -- why not?  That's standard

3  procedure for every out-of-town lawyer.  Why wouldn't you have

4  done that?  Don't you do that when you appear in other states

5  around the country?

6      MR. WATTS:  I do in state court.  I was under the

7  assumption I did not need to do so here because I haven't

8  appeared in front of Your Honor, wasn't planning on it until

9  this --

10     THE COURT:  It has nothing to do with me.  There's no

11 separate --

12     MR. WATTS:  Yes.

13     THE COURT:  -- admission -- Mr. Watts, listen

14 carefully.

15     MR. WATTS:  I will do so.

16     THE COURT:  There's no separate admission to the

17 bankruptcy court versus the district court.

18     MR. WATTS:  Right.

19     THE COURT:  If you appeared in Judge Donato's court

20 and didn't -- hadn't gone through the formalities of pro hac

21 vice, and that -- I don't know whether there are consequences

22 or not, but you've answered the question.

23     Let's turn to the argument.  You've been challenged by

24 counsel --

25     MR. WATTS:  Yes, sir.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    THE COURT:  -- and by Mr. Abrams, so you have the

2    floor for your share of the time with Mr. -- you're sharing

3    with Mr. Singleton.  So you're up.

4    MR. WATTS:  Thank you, Your Honor.  Just to be clear,

5    in Judge Donato's court, Mr. Marshack filed the pleading that

6    referenced me but I understand the Court's issue, and I will

7    remedy that.

8    With respect to the three arguments, 1125(b), I think

9    that we tried to give you a very fulsome evidentiary record to

10   demonstrate that there was no solicitation of votes before the

11   transmission of this Court's disclosure statement on March the

12   31st of 2020.  I specifically checked that out with the debtor,

13   with the equity, with other plaintiffs' lawyers, to make sure

14   that was the date that was going out, and I don't think there's

15   any evidence in this record that we solicited votes before the

16   time that we were allowed to under 11 U.S.C. 1125(b).

17   With respect to the second argument under 11 U.S.C.

18   1126, I hope I didn't weight you down too much, but we provided

19   416 pages of exhibits for a reason, and that is is that I think

20   that we need fair reading of the information that we have put

21   out, would lead to the conclusion that it was thorough, it

22   answered all the questions that we were asked, the good, and

23   the bad, of the plan.  It talked about uncertainties, and I

24   don't believe there's any record of bad faith that would give

25   rise to a remedy under 1126.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    Now with respect to (indiscernible) -- pardon?

2    THE COURT:  Right.  I don't know what that noise was.

3    MR. WATTS:  Okay.  Then I'm sorry.

4    THE COURT:  You're second -- your third point, Mr.

5 Watts.

6    MR. WATTS:  Yes, sir.  Let me just respond directly to

7 Mr. Abrams.  He said that I've agreed that there's a conflict.

8 I do not agree that there is a conflict.  He references slides

9 that I showed my client.  What I would do, is I would go to

10 Chico, and then I would go to Santa Rosa, once a quarter during

11 the entirety of this litigation, and do update town hall

12 meetings.

13    It is true that on December the 8th, 2019, I both in

14 Chico and in Santa Rosa, I had about twenty-five slides that

15 talked about things that they should consider.  With respect to

16 litigation funding, I made a full and complete disclosure with

17 respect to what had happened, who I had talked to, how, and why

18 we believed that the equity was the superior plan.  That was a

19 disclosure I'd made after appearing in about eight or nine

20 different mediations that were ordered by your court-appointed

21 mediator, Judge Randall Newsome, and so I told my clients all

22 about that, as I would do.

23    In addition, I warned them about litigation funds

24 which offered them loans, and contractors that they should

25 watch out, with all parties, there had been an incident in

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    Santa Rosa that I wanted them to know about.

2           With respect to third-party verification of

3    rebuilding, I mean elderly people, and trusts, and minor

4    plaintiffs watching out for that kind of stuff, so there was a

5    broad panoply of information that was provided.

6           With respect to Mr. Abrams' comment about one of the

7    emails references Frank Pitre and Cecily Dumas, all that was

8    was an email that said, hey, can you get things or set up a

9    meeting, and everybody in that meeting under the mediation

10   auspices of Judge Newsome.

11          To the extent that somebody takes the view after a

12   hearsay Wall Street Journal article that I was the kingpin,

13   number one, I think there are some very fine lawyers that have

14   worked diligently on this negotiation that would not agree with

15   that.  Our leader has been Bob Julian, I followed the lead of

16   Frank Pitre and Mike Kelly.  I worked diligently with Steve

17   Skikos.  I think this was very much of a team effort.

18          Mr. Abrams paints a picture that Centerbridge and

19   Apollo are people that I chose not to negotiate with because of

20   a conflict.  The truth of the matter is that they were bit

21   players in the negotiation, and the reason is Centerbridge --

22          THE COURT:  Say again, at this point you call them bit

23   players?

24          MR. WATTS:  Yes, sir.

25          THE COURT:  Okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1       MR. WATTS:  Centerbridge is the seventeenth largest

2  shareholder on the equity side.  I think they control about

3  1.46 percent of the stock, and Apollo, I think there're six or

4  seven bondholders with much larger positions than Apollo.

5       Now all that happened was one person from

6  Centerbridge, one person from Apollo introduced me to the

7  principals, to the largest shareholders.  And on the equity

8  side, that was largely two folks or two groups, one was Tom

9  Wagner with Knighthead Capital Management, the other was David

10  Abrams with Abrams Capital Management.

11       I also met with Bruce Bennett, the lawyer for the

12  equity, and a gentleman named John Motulsky at Stonehill,

13  Edward Mule at Silver Point and then their financial analyst,

14  Steve Zelin with PJT Partners.

15       This was not Mikal Watts meeting with these people in

16  some secret room.  It was in a very large conference room at

17  Jones Day, in another very large conference at JAMS inside the

18  mediation privilege where Judge Newsome had fifty-seven people

19  in there negotiating this.

20       And with respect to that issue, it's just misleading

21  to assume that the reason I ended up negotiating with

22  Knighthead and Apollo was anything other than they were the

23  leaders of the deal on the equity side in the same way that we

24  met with, and negotiated with Elliot Management Company and

25  PIMCO on the bondholder's side, together with their attorney

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    Michael Stamer.  All this was done pursuant to a mediation

2    process, and they are right from one aspect.  At one point in

3    time, Judge Montali (sic) appointed me as one of four folks to

4    in effect -- I don't know whether lead these negotiations would

5    be right, but he certainly told us that we had the right under

6    your order to order us there, and he expected me there, so I

7    went.

8          THE COURT:  Hold on, Mr. Watts.  You misspoke.  I

9    didn't appoint you to anything.  You're referring to perhaps I

10   think Judge Newsome might've said.

11         MR. WATTS:  I'm sorry, Judge.  You are correct, and I

12   apologize.

13         THE COURT:  Okay.  All right.

14         MR. WATTS:  Yes, Judge Newsome --

15         THE COURT:  You don't have to apologize.

16         MR. WATTS:  -- yeah, after his initial meeting he

17   said, hey I want you at all these meetings, and I said I'd be

18   happy to.  So I did that.

19         With respect to having a motion --

20         THE COURT:  The question of all of this is -- but Mr.

21   Watts, let's assume that you had a role that you've described,

22   did your clients know about it?  One of the criticisms here --

23         MR. WATTS:  Yes.

24         THE COURT:  -- by Mr. Kane is you didn't inform your

25   clients, whether you needed to get a written consent or just

escribers
(973)-406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    inform them, did you -- did they know that --

2         MR. WATTS:  Yes.

3         THE COURT:  -- and what did follow, what consequence

4    should follow?

5         MR. WATTS:  Yes.  The very next town hall meeting we

6    had scheduled was December the 8th.  It was disclosed to them

7    in a very extensive PowerPoint over the course of twenty --

8    twenty-five slides to give them the entire history of the

9    negotiation, and the reasoning that I, along with all thirteen

10   contending fire claimant professionals, and all eleven members

11   of the TCC at the time, signed off on the equity deal.

12        That disclosure, the link to it, and the transcript of

13   it, was sent on December 13th to every one of my clients.

14   Those disclosures had been subsequently made in the month of

15   April on the 2nd, the 15th, the 22nd, extensive letter on May

16   the 1st, another letter on May the 2nd.  We put all of this up

17   on a public website, and I do appreciate Mr. Kane and Mr.

18   Abrams' comments from the stand point of they liked the fact

19   that I'm putting it all out there because there's nothing to

20   hide.

21        Just to briefly address this Wall Street Journal

22   article.  The only quote in that article that is attributable

23   to me is a quote, "I think I did it right.  The people with

24   whom I was negotiating did not have a role in my credit

25   facility."  That's it.  The rest of it is a reporter talking

PG&E Corp. and Pacific Gas And Electric Co

1  about people getting hurt and questions.

2     With respect to one other issue, Judge, and that is is

3  that it wasn't really brought up in this oral argument but

4  there's been a lot of overtones with respect to how we're

5  collecting votes, and the bottom line is is I would call the

6  Court's attention to both the restructure support agreement at

7  page 4, paragraph 2(a) that's dated on December the 6th of

8  2019, where this was specifically negotiated to allow the

9  distribution and solicitation of materials, and the casting of

10  ballots for older fire victims, by digital means.  And so they

11  had to ask for that, and then in your court, in your order on

12  March the 17th, I think it's docket number 6340, it shows up

13  several times on the page 12 and paragraph 13(a), page 17,

14  paragraph 30, page 3 of 6340-1.

15     THE COURT:  I'm sorry, what is there?  What do you say

16  is within that document?

17     MR. WATTS:  It's with respect to the rights of the

18  parties and the expectation that we would provide the

19  disclosure statement and ballots either in hard copy or

20  electronic email, i.e., digital means like what was negotiated

21  for in the RSA.

22     So you know this is a process where the technology is

23  such that banks like Wells Fargo, and Chase, and SunTrust, all

24  use texting technology to perform secured banking transactions.

25  This technology is available, it's secure, it's leaves a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    digital record of who wrote it and how, and that's why we chose

2    it, especially in the middle of the COVID-19 sheltering in

3    place restrictions.

4            So in sum, and I'm glad you brought up the petition, I

5    filed something this morning, I don't know whether the Court

6    had time to look at it, but I woke up this morning and --

7            THE COURT:  You must be kidding if you think I had

8    time to look at anything this morning.

9            MR. WATTS:  Okay.  Well, I will -- tried to get it

10   this morning after, you know -- after I went to bed, but I

11   filed a response, and it is what it is, and I agree with the

12   Court, that that's something for the Governor, and if they're

13   pressed from, you know, petition being signed by people all

14   over the world, then he'll change the date and --

15           THE COURT:  Oh, no, I did -- I'm sorry, Mr. Watts.  I

16   have to interrupt you.  I did see that, and in particular, the

17   filing by the other side on the petition to the Governor, and

18   there's nothing -- that's fine, they're free to petition the

19   Governor.  I can't do anything about that.  And I understand

20   you take some issue with bona fides of names attached to that.

21           MR. WATTS:  Sure, yes.

22           THE COURT:  I don't think that's the point that we're

23   focusing on.

24           MR. WATTS:  Yeah.

25           THE COURT:  Mr. Kane and Mr. Abrams have focused in on

PG&E Corp. and Pacific Gas And Electric Co

1    what's of principal concern to them --

2         MR. WATTS:  Yeah.

3         THE COURT:  -- and you responded, so --

4         MR. WATTS:  And just one last thing, you know, to make

5    certain that I did it right when I made the disclosure back in

6    December, continued to make the disclosure, putting it on the

7    website, there's nothing to hide here, you can disclose

8    negotiations without a conflict existing.  We provided you with

9    the expert report, when the people who was on the very

10   committee that did Rule 1.7 because I want to make sure that my

11   read of it was in fact consistent with the way an expert with

12   respect to 1.7 read that rule.

13        And so what we tried to do is I read all of the pages

14   with respect to Bankruptcy Rule 2019.  I said well, you know,

15   originally there was going to be a hearing and then it got

16   delayed, and so I just kept making disclosures until the Court

17   says hey, under 2019 -- you know, if I read the rule, I'm not

18   sure it applies to me, but I agree with Mr. Abrams completely,

19   that you have the discretion to order a Rule 2019 disclosure,

20   and before I could get in front of you, I tried to make that

21   disclosure over, and over, and over again, although I don't

22   believe there's a conflict under Rule 1.7 and I think Carol

23   Langford's  declaration, and she appears to me to be the expert

24   in the field of California Rule 1.7, makes that pretty clear.

25   But when I said in the town hall meeting ten days ago, that I'm

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1   willing to make the disclosure, I have made the disclosure ten

2   times.  We continue to make it, not because I believe there's a

3   conflict, I think it's very clear that Rule 1.7 is not

4   implicated, but my position is what's the harm?  Tell your

5   clients everything you know, and I've always done that, and I

6   always will, which is why you've had (indiscernible) update

7   meetings, quarterly update letters, emails, links.  We

8   communicate with our clients so prolifically, they're probably

9   sick of us but I believe give them everything, and we have a

10  weekly telephonic town hall.  We talk to 3- or 4,000 people.

11  We share that texting technologies and those town halls with

12  other lawyers with thousands of cases.  I've done them

13  together.  Talked about this issue, talked about other issues,

14  talked about the pros and cons of the plan, and I believe

15  that's one of the reasons why so many of our clients -- so many

16  of Mr. Sanders (phonetic) clients have (indiscernible), so many

17  of Mr. Bridgewood's (phonetic), Mr. Audler's (phonetic), Mr.

18  Roberts (phonetic), and they're all getting consistent results,

19  well above ninety-five percent of the fire survivors want the

20  plan.

21          Now last issue and then I'll give it up to Mr.

22  Singleton, the idea that something happened in The Wall Street

23  Journal yesterday is just nonsensical.  Number one, the article

24  doesn't suggest any sort of conflict.  It's just trying to give

25  a history of the negotiations.  But it is clear to me that this

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    issue had been shopped by the movants and the joiners to the

2    Bloomberg News, the San Francisco Chronicle, the New York

3    Times, The Wall Street Journal, KGEB (phonetic), to try and get

4    the media to slow down the vote, and so we're trying to in

5    effect, mute that issue by disclosing it to everybody that

6    wants to listen, and I don't think there's a conflict under

7    Rule 1.7, and I think Carol Langford, the expert in this area

8    demonstrates there's not.  With all due respect to Mr. Kane,

9    who I have a very nice relationship when we've met in person, I

10   think he's reading a prior version of the rule, but it is what

11   it is.

12            THE COURT:  Okay.

13            MR. WATTS:  So I'd be happy to answer any questions

14   that you have, sir.

15            THE COURT:  No, I have no questions.  I'm going to let

16   Mr. Singleton take over.  Thank you, Mr. Watts.  I appreciate

17   your comments.

18            MR. WATTS:  Thank you, Your Honor.

19            THE COURT:  Mr. Singleton?

20            MR. SINGLETON:  Thank you, Your Honor.  I just want to

21   make sure that the Court can hear me.

22            THE COURT:  Yes, I can.

23            MR. SINGLETON:  Okay.  Thank you, Your Honor.  Your

24   Honor, I'll be brief.  I wanted to address some of the specific

25   points that were raised by Mr. Abrams and Mr. Kane.  First of

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    all, I think it's clear that there is no conflict here.  We are

2    not talking about a loan that gives the lender the right to

3    make any decisions or to influence the litigation in any way.

4    We're talking about a fixed bank loan that is typical, and is

5    very consistent with what firms in this area do in terms of

6    practice.

7         Most large law firms have lines of credit, and they're

8    typically handled in exactly this way where you have a fixed

9    term and a flat rate of interest.

10        THE COURT:  But (indiscernible) on that.

11        MR. SINGLETON:  And I don't think there's anything

12   about that -- I'm sorry?

13        THE COURT:  But Mr. Singleton, even if we just had a

14   traditional financing of (break in audio) the question is

15   should he disclose it to the clients or not?  That's the issue.

16   The issue isn't the nature of how he borrowed money.  The fact

17   that he was a debtor of a lender and that lender is a lender

18   and a creditor of a common debtor called PG&E that the fire

19   victims are (break in audio).

20        So you got Watts as a debtor to a lender to a

21   creditor.  The victims are victims to a debtor.  They have a

22   common debtor.  And the question is, does Mr. Watts put himself

23   in a position where he at least needs to tell his clients that

24   there is this relationship.  He didn't have to tell them the

25   fine points of the financing.  It's the alignment of who is his

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    adversary.  How do you answer that?

2        MR. SINGLETON:  Well, the way that I would answer

3    that, Your Honor, is to say that it really depends upon what

4    the terms of the loan are because, again, if they have any

5    power over his decision making, then I think absolutely.

6        But here, when you have -- I'm sorry I apologize, Your

7    Honor.

8        THE COURT:  (Break in audio) apologize for?  There was

9    no problem.

10       MR. SINGLETON:  Oh, I'm sorry.  I thought you

11   wanted --

12       THE COURT:  But there's a lot of background noise.

13       MR. SINGLETON:  I thought you wanted -- I'm sorry, I

14   thought you wanted to say something.

15       THE COURT:  No, you're fine.

16       MR. SINGLETON:  I didn't mean to cut you off.

17       No, what I would say there, Your Honor, is that again,

18   it really would come down to what the terms of the loan are,

19   because that is what determines whether or not there is a

20   conflict.  If they have the ability to influence it, then I

21   think there is a clear conflict.

22       But here, where there is a fixed rate and they come in

23   after the fact and purchase something but have no power to

24   influence the terms of the loan or to influence Mr. Watts'

25   decision-making, I simply don't think there is.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1     For example, my firm has a line of credit with a

2 subsidiary of the Royal Bank of Canada.  I don't necessarily

3 know that I need to disclose that to my clients.  It might be a

4 good idea to do so.  But certainly under the rules, I think

5 there's no responsibility.

6     I think what happened here, as I would read it, is

7 that there is no conflict.  But Mr. Watts went above and beyond

8 and said to his clients, here's what happened; I want to make

9 sure that you all have this information.  I don't think he was

10 under any legal obligation to do that.  But I think doing that

11 is certainly good practice.  And I commend him for doing so.

12     So that's the only issue I would say about that.  But

13 I think one thing that is very critical here -- and I

14 understand that Mr. Abrams  and Mr. Kane were not involved in

15 the negotiations.  And because of that, they don't understand

16 some of the finer points.  But their insinuation that somehow

17 or for some reason Mr. Watts refused to negotiate with Apollo

18 or Centerbridge is simply not correct.

19     It's also not correct to say that Mr. Watts was

20 somehow negotiating on behalf of all of the plaintiffs.  There

21 were a number of very experienced, very high-quality attorneys

22 who were involved.  And I think that is critical.

23     First of all, the negotiations were led by Mr. Julian

24 and his team.  Then, when you got to the individuals, you had

25 Mr. Pitre, Mr. Kelly, Ms. Riddle, Mr. de Ghetaldi, Mr.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1  Baghdadi, Mr. Skikos, Mr. Watts, and several other very, very

2  good attorneys.  It was a group.

3          THE COURT:  Mr. Singleton, how about --

4          MR. SINGLETON:  When we made --

5          THE COURT:  Mr. Singleton, you got to -- you account

6  for yourself on that list, too?

7          MR. SINGLETON:  Well, I was there, Your Honor, but I

8  certainly think that when you're talking about the group of

9  attorneys involved, I was certainly not the most august of the

10  people there.

11          But I think it's important to remember that you had

12  very fine attorneys who were very high quality.  And that is

13  recognized by everyone who were there and who were jointly

14  participating.

15          Then you had Judge Newsome, who sat us all down and

16  really ran us through our paces.  I mean, Judge Newsome, to say

17  that he was aggressive in this is a bit of an understatement.

18  And the way Mr. Watts described it is exactly what happened.

19  There were a large number of us who were sitting in rooms, and

20  we would go back and forward -- or back and forth.  And our

21  opponents on the other side were Knighthead and Abrams when it

22  came to equity, and then Elliott Management and PIMCO when it

23  came to bonds.

24          That had nothing to do with the fact that Apollo and

25  Centerbridge may have had some interest in Mr. Watts' credit

PG&E Corp. and Pacific Gas And Electric Co

1   line.  It had to do with the fact that the major players for

2   equity were Knighthead an Abrams; the major players for bonds

3   were Elliott and PIMCO.

4          So that's who the negotiations went through.  And

5   again, while Mikal did a -- or Mr. Watts did a fantastic job

6   here and he was very involved, he certainly wasn't more

7   involved than someone like Mr. Pitre, Mr. Kelly, Mr. de

8   Ghetaldi, Ms. Riddle, all of those very fine attorneys who

9   played a major role in this.

10         I think it's fair to say that while he was very

11  important, he was one of a number of people that were very

12  important.  And what happened during this negotiation, while we

13  certainly can't get into the specifics of the approximately

14  fifteen mediations we went to, it was like any other mediation.

15  We would go back and forth and offers would be conveyed.  We'd

16  discuss different issues.  And when we got to the end,

17  everybody in that room, every single attorney, with the very

18  strong recommendation of Judge Newsome, all agreed that the

19  best deal for our clients and for the fire victims in general

20  was the equity deal.  And that's why we signed it.

21         There was absolutely no indication of any kind that

22  Mr. Watts or anybody else were influenced by any other

23  considerations.  And that was what I really --

24         THE COURT:  Okay, I'd like to leave it at that.  I

25  don't --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1        MR. SINGLETON:  -- wanted to convey today.

2        THE COURT:  Yeah, I appreciate that.  But I don't want

3   you to try to (break in audio) about the negotiation.  I know

4   some of these --

5        MR. MARSHACK:  Your Honor, I'm going to add --

6        THE COURT:  -- players that you've adequately

7   identified them.  I'm sorry, who wants to be heard?  Is that

8   Mr. Watts again?

9        MR. MARSHACK:  I'm sorry.  Your Honor, can I add one

10  sentence?

11       THE COURT:  But who was saying it; who's speaking?

12       MR. MARSHACK:  I'm sorry.  This is Richard Marshack

13  with the Singleton Group.  I just would ask the Court to read

14  paragraph 20 of Carol Langford's declaration.  And the first

15  two sentences state, "As noted, I do not believe that

16  disclosure of Apollo and Centerbridge's role was required."

17       THE COURT:  Yes.

18       MR. MARSHACK:  "But even if disclosure was

19  required" --

20       THE COURT:  Mr. Marshack, I've read all the -- I've

21  read all of these things.  I don't need to repeat them.  I've

22  read them.  I know of them.  I got them.

23       MR. SINGLETON:  Understood.

24       THE COURT:  I've read your opinion and I've read the

25  other opinion.  I want to move this phase of the argument, Mr.

PG&E Corp. and Pacific Gas And Electric Co

1  Singleton.

2         MR. SINGLETON:  Certainly.

3         THE COURT:  I think you've used your time adequately.

4  Mr. Karotkin, you asked for a brief time.  And I'm going to

5  give it to you.  And I'll conclude with the five minutes each

6  for Mr. Abrams and Mr. Kane.

7         Mr. Karotkin?  And I --

8         MR. KAROTKIN:  Yes, I'll be very brief, Your Honor.

9         THE COURT:  I am familiar with the statement that you

10 filed.

11        MR. KAROTKIN:  Okay.  I just want to reiterate as we

12 said in our response that the solicitation materials as

13 evidenced by Prime Clerk's certificate of service were served

14 in compliance with the order.  That dissemination commenced on

15 March 30th.  It was finished on April 8th, a little delayed in

16 part because of the concerns with COVID and attorneys changing

17 their address.

18        As noted in that affidavit, email packages of the

19 disclosure statement and materials were also sent between April

20 1 and April 3 to both law firms representing 4,900 fire

21 claimants and in excess of 40,000 other claimants represented

22 by counsel, as well, and to approximately 18,000 victims not

23 represented by the attorneys.  And that was followed up by

24 email solicitation materials, as well.

25        And I would point out that, I think as, either Mr.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    Watts or Singleton noted, the solicitation procedures, with

2    respect to the plan, with respect to the fire victims, were

3    formulated in conjunction with the tort claimants' committee

4    and presented to the Court.

5          There were no objections to those procedures, and no

6    one raised any issues with those procedures and how the voting

7    would take place.  Thank you, sir.

8          THE COURT:  Okay, thank you, Mr. Karotkin.

9          All right, Mr. Abrams and Mr. Kane, you have a total

10   of ten minutes left.  Who wants to go first?

11         UNIDENTIFIED SPEAKER:  Why didn't Mr. Skikos say

12   anything here?  He's such a --

13         THE COURT:  Go ahead.

14         UNIDENTIFIED SPEAKER:  -- (indiscernible).

15         THE COURT:  I'm sorry, I didn't hear your name.

16         UNIDENTIFIED SPEAKER:  Yeah, this is --

17         MR. SKIKOS:  I think I was called out, Judge.  It's

18   Steve Skikos.

19         THE COURT:  Wait.

20         MR. SKIKOS:  I think somebody said my name.

21         UNIDENTIFIED SPEAKER:  (Indiscernible) say something.

22         MR. SKIKOS:  So I'll talk.

23         THE COURT:  Okay, folks.

24         MR. SKIKOS:  I --

25         THE COURT:  There are too many people talking.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1          MR. SKIKOS:  I wrote the solicitation agreement.

2          THE COURT:  I called on Mr. -- I'm calling on Mr.

3  Abrams and Mr. Kane.  I thought I heard someone else speak and

4  wanted to be hard.  Who was that?  Was there a woman who spoke

5  up?

6          Okay.  Mr. Skikos, I heard you say who you were and I

7  recognize your name.  But I didn't understand you wanted to be

8  heard and (break in audio).  Is that correct?

9          MR. SKIKOS:  Yeah, I might as well.  I wrote the

10 solicitation materials with the debtor and I put the agreement,

11 I put the (indiscernible) agreement on the record on February

12 11.

13         THE COURT:  I don't think that's relevant.  So look, I

14 want to conclude this hearing.  It's been enough of a problem

15 because of the delays.

16         Mr. Abrams, do you wish to conclude your remarks?

17         MR. ABRAMS:  Yes, Your Honor.  I will do that; thank

18 you.  And so I appreciate the attention on these issues.  I

19 would say that part of the issue here is that this is not just

20 Mr. Watts' clients.

21         And because these issues have gone and affected all

22 clients, I don't understand -- and maybe there's a legal

23 explanation for it -- but why a disclosure, even a written

24 disclosure, just to his clients is sufficient to remedy when

25 this conflict has affected the negotiations as a whole.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1          I would say that what I am mostly concerned about, as
2   I had said at the start of these arguments, is that the short-
3   term interest of investors have clearly taken precedence over
4   the safety and security interest of victims and the public.  I
5   do not want to lose sight of that.

6          It has been stated by one of the attorneys in this
7   case that hedge funds and Wall Street have hijacked this
8   bankruptcy process.  I am not an attorney.  But when I hear
9   about these apt disclosures in statements like that, I think
10  there needs to be broader remedies to ensure a just process and
11  just outcomes.

12         And to those ends, as a wildfire survivor, I will put
13  forward a couple thoughts.  One, to whatever extent it is
14  possible, to request an extension of AB 1054 so that we can
15  actually take the time, remedy these issues, make sure that we
16  understand the breadth and depth of the issues, that they're
17  disclosed, and that these issues are resolved, that public
18  safety and victim justice can be pursued, I think would be one
19  remedy that the Court could seek.

20         Secondly, I would say that another potential way to
21  resolve this is to make sure that the registration rights
22  agreement and the victim trusts are negotiated, completed, and
23  communicated to victims so they know what they are voting upon
24  just like every other class of claimants in this proceeding.

25         Those two things alone will provide information to

PG&E Corp. and Pacific Gas And Electric Co

1    victims.  They'll be able to take a deep breath and say, all

2    right, we got our information, we understand how this has been

3    put together, and we can make a vote based on facts.  And those

4    are my two recommendations.

5           I just ask the Court to please consider that these are

6    not just legalese back and forth between attorneys, that in the

7    midst of all of this, there are victims.  There are future

8    victims who will be left with potentially an insolvent PG&E, if

9    the investors get their way and are able to position themselves

10   for the exit door and cash out and leave the rest of us holding

11   the risks.  This is what this is about, and I do not want that

12   to be lost on the Court or the other parties.

13          THE COURT:  Okay.

14          MR. ABRAMS:  And with that, Your Honor, I'll stop

15   there.

16          THE COURT:  Thank you, Mr. Abrams.

17          Mr. Kane, do you --

18          MR. KANE:  Yes, Your Honor.

19          THE COURT:  -- want to add any further.

20          MR. KANE:  Steven Kane for Karen Gowins.  I have some

21   factual statements by Mr. Singleton that I want to try to

22   correct.

23          First of all, he said that, well, the deal did not

24   create a conflict, the deal with Centerbridge and Apollo or the

25   deal that they originally made (break in audio) financing.  And

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    that is very hard to show because Mr. Watts and his affiliated

2    lawyers have never produced the terms and conditions, the

3    actual loan documents for those loans.  And I'm puzzled as to

4    why they haven't done that.  That would have told the Court

5    exactly what kinds of obligations the borrowers had under those

6    credit instruments.  Yet, we've never seen those.  So it's hard

7    to credit what Mr. Singleton says about how they are presumably

8    perfectly harmless.

9         The next thing is that as far as disclosure is

10   concerned, it's interesting to note that Mr. Watts and his

11   affiliated lawyers send a weekly newsletter reporting on the

12   case to all of their clients.  And they have been doing that

13   for I don't know how long.  I haven't researched that.  But

14   they've certainly been doing it since the fall of last year,

15   when (indiscernible) learned (indiscernible).

16        And finally -- finally, on the (indiscernible), they

17   have finally included a section in their weekly newsletter to

18   all clients --

19        UNIDENTIFIED SPEAKER:  This is a court case

20   (indiscernible).

21        MR. KANE:  -- a very easy way --

22        THE COURT:  Wait, someone else is talking.  I can't

23   hear while someone else is talking over Mr. Kane.

24        Go ahead.  You mentioned the weekly newsletter and

25   then you said something else that Mr. Watts has done?

PG&E Corp. and Pacific Gas And Electric Co

1    MR. KANE:  Yeah.  So that newsletter gave them an

2    opportunity from the first time that Mr. Watts believed that he

3    might have some kind of a problem with his financing with

4    Apollo and Centerbridge.  Nothing in there until finally, in

5    their newsletter dated May 1, twelve days ago, which is

6    document number 7129-27, on page -- this document system is

7    difficult.  I'm sorry; these don't have page numbers.  But

8    approximately in the middle of the newsletter, they give a

9    disclosure, and I have problems with that disclosure, but I'm

10   not going to take the Court's time with that now.

11   Finally, they make the disclosure, a few days ago,

12   basically.  Why couldn't that newsletter have been used to make

13   a proper disclosure at the very beginning?  Why were they so

14   reluctant to use the communication method that they had set up

15   to send this information to their clients rather than giving it

16   out in little bits in town meetings with 200 or 300 clients

17   attending?  I don't understand that.  That makes no sense to

18   me.  I really can't even characterize it.

19   The other thing I want to mention, Mr. Singleton was

20   quoted in The Wall Street Journal article yesterday himself.

21   He was in there; both Mr. Watts and Mr. Singleton were in

22   there.  And Mr. Singleton apparently said, Mikal was the one

23   who got it across the finish line.  Now, I don't know, I guess

24   Mr. Singleton could deny he said that.  But it appears that

25   Mikal, at least according to Mr. Singleton, was the key guy in

PG&E Corp. and Pacific Gas And Electric Co

1    this whole deal.  And so to try to minimize his participation

2    at this stage, I think it's a little too late.

3           But the biggest problem -- the huge problem that's

4    been created is that in that same newsletter that I mentioned

5    and gave the reference to, there is a chart which shows that

6    according to Mr. Watts and his affiliated lawyers, by the time

7    of that newsletter, ninety-eight percent of their clients had

8    voted.

9           So how is this disclosure going to affect the vote or

10   inform the vote of those 16,000 clients when ninety-eight

11   percent of them have already voted?

12          I think it's too little, too late.  And it never was

13   enough to satisfy the rules.  And it's a serious problem.  And

14   what I want to do, I want to ask the Court to help us to do

15   something about this problem in order to protect the integrity

16   of the system and the Court because that's what we're really

17   dealing with here.

18          And I am willing to meet and confer with Mr. Watts,

19   Mr. Singleton, anybody else they choose, to try to do that.  I

20   think we can work out a method that will satisfy Rule 1.7.  But

21   I do want to ask that the Court have the opportunity to approve

22   what is sent out to be sure that it is a correct and proper

23   disclosure without self-laudatory comments, diversions,

24   argumentation:  a factual disclosure about what this conflict

25   means.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1       And at the same time, send out the waivers.  I think

2  we can do that quickly.  I don't intend to be unduly difficult

3  in resolving the problem.  But I believe it needs to be done.

4  And we will see how many of Mr. Watts' clients and the clients

5  of the affiliated lawyers sign the waiver.

6       And at that point, I would urge the Court to designate

7  the votes of clients that do not sign.  But I think that's an

8  issue that could reasonably be left until the Court sees the

9  results of the complete and Court-supervised disclosure of this

10  conflict to all of these clients.

11       It doesn't do anything about the nonclients out there

12  who got Mr. Watts' blizzard of advertising, nor does it help

13  with all of the clients who were represented by him in this

14  vital negotiation in this case.  It's the heart of the plan.

15  But at least, it's a step toward doing those things, towards

16  satisfying the very important rules concerning conflicts.

17       So that's what we would ask the Court to do.  And I'm

18  willing to do whatever is necessary --

19       THE COURT:  Okay.  Thank you, Mr. Kane.  Mr. Kane, I'm

20  going to thank you for your suggestion.  I'm going to take this

21  matter under advisement.  I'm not going to issue a ruling in

22  the course of this hearing.  I will deal with it as quickly as

23  I can.  And meanwhile, the clock is ticking, and unless I

24  change the outcome, the deadline will still stand for the votes

25  to come in by the 15th, this Friday at 4 p.m.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    I want to thank you all for your time.  I apologize

2  again for the delays.  And the motion to designate what we'll

3  call the Abrams' motion and all the joinders is stamped

4  submitted.

5    We'll now conclude by calling on Mr. Karotkin to

6  discuss the schedule.  Mr. Karotkin, what's the schedule?  Can

7  you solve my problem and schedule something for me?

8    MR. KAROTKIN:  If Your Honor please, can I ask Mr.

9  Tsekerides from my office to address that?

10    THE COURT:  Sure.

11    MR. TSEKERIDES:  Good morning, Your Honor.

12    THE COURT:  Go ahead, Mr. Tsekerides.

13    MR. TSEKERIDES:  This is Ted Tsekerides for the

14  debtors from Weil, Gotshal.

15    We submitted yesterday, Your Honor, a proposed hearing

16  protocol.

17    THE COURT:  Yes.

18    MR. TSEKERIDES:  The dates are fairly tight, as

19  everyone knows, so we only have about twelve days to work with

20  stemming off of the 15th.  And the dates are already set with

21  the 15th and the 22nd, obviously, for the debtors' and party

22  proponents' reply.

23    What we tried to do, sort of recognizing what we have

24  ahead of us, is to put down on paper that the declarations that

25  come in on Friday from whoever is going to object, those would

PG&E Corp. and Pacific Gas And Electric Co

1   serve as the direct testimony at the hearing with the witness

2   being subject to cross.

3         And we would do the same with whatever we put in on

4   the 22nd along with whoever else is a proponent.

5         With respect to --

6         THE COURT:  Could you remind me -- Mr. Tsekerides,

7   just remind me of something.  Again, I've had so many things to

8   read.  And I have your proposed schedule.  But I didn't go back

9   and double check the details of the original order that set the

10   deadline.

11         Am I correct that the deadline for the objections did

12   say that an objection needed to be supported by evidence, or

13   not.  Just clarify what the prior order said, if you remember.

14         MR. TSEKERIDES:  I don't have that in front of me,

15   Your Honor, but I would imagine that whether it said it or not,

16   I mean, if somebody is going to file an objection, they do need

17   to put in supporting evidence to support the objection.  And in

18   my experience, that's usually with a declaration from either an

19   expert or some fact witness making out their case.  But I

20   couldn't tell you off the top of my head --

21         THE COURT:  Well, the only thing I don't -- what I

22   don't want to do is issue an order now, today, tomorrow, that

23   can't possibly be complied with because I can't change the

24   rules.  So if there's a legal objection, that's easy.  It's

25   factual objection that I'm concerned about.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    My point is that I don't have any quarrel with your

2 proposal.  I don't know that it could fairly apply if somebody

3 is -- taking advantage of it didn't know that that was the

4 rule.

5    MR. TSEKERIDES:  No, that's a fair point, Your Honor.

6 And look, I mean, part of the reason why we put the date of the

7 18th for the exhibits is precisely for that reason where, look,

8 we never talked about that specifically before, the idea being

9 anybody who is interested in the confirmation hearing, we

10 expected will be on this call.

11    There are ways we can try to deal with that between

12 now -- I mean you did have, and it is on the schedule here, the

13 May 19th there's another pre-trial conference.  But the idea of

14 being we publish this on the docket; they'll look.

15    If anybody's going to really participate, they need to

16 be involved.  And if they're going to be involved, even though

17 we have tight timing, we have to treat this like any

18 evidentiary hearing where we do need to know what the exhibits

19 are, try to put in some time in here.

20    I mean, it's tight for objections.  But at some

21 point -- and I think this schedule lays it out; if you want to

22 modify the dates on the front end of the 15th and 18th, we can

23 discuss that -- but at some point, we do need to know, okay,

24 who are the witnesses.  And they should, I think for

25 efficiency's sake, submit that by declaration.

PG&E Corp. and Pacific Gas And Electric Co

1    And if you're going to rely on exhibits and you're the

2  objector, you should know what those are.  You should identify

3  them, and we'll have an opportunity to review and object.  And

4  we'll produce ours on the 22nd.  And folks will have an

5  opportunity to review and object.

6    And look, the fact that it's a bench trial, we don't

7  expect you to address every objection on the fly.  But at least

8  we'll have some sense going into the confirmation hearing on

9  the 27th what those objections might be.

10    So respectfully, I mean, I think you could issue an

11  order, even today or tomorrow.  And if someone has an exception

12  that they -- if they didn't know that they had to put in a

13  declaration, which would, frankly, shock me -- but then we

14  could put a date for them where they would at least have to

15  identify that and produce it in fairly short order.

16    THE COURT:  Looking at the order that I signed on

17  February 11th, and that February 11th was, I'll call the

18  amended scheduling order, and that simply does flag the 15th as

19  deadline for ballots and filing and observing objections.  And

20  so I -- that's obviously the standard (break in audio).

21    I'm almost reluctant to do anything now until we see

22  what happens on the 15th.  I presume there will be objections.

23  But my guess is that a lot of them might be legal in nature.

24    Well, let's put it this way, Mr. Tsekerides.  I guess

25  I'm not opposed to issuing an order today or tomorrow that says

PG&E Corp. and Pacific Gas And Electric Co

1    if you're filing objections, you must at least designate any

2    supporting declarations.  But I don't know that I can impose on

3    somebody on two days' notice that you got to have a declaration

4    of your witness.

5            But the point is, four days after that, we're going to

6    have a conference, hopefully, where we won't get bogged down in

7    logistics and technical things and figure out who's going what.

8            I do share with you the view that anything by a

9    declarant should be by written direct so that we can limit it

10   to cross-examination as necessary and redirect at some point in

11   the future.

12           So let's do this.  Let me ask if there's any of the

13   counsel on the phone who's still with us after all this time

14   who want to be heard on this today because I'm inclined just to

15   go with this --

16           UNIDENTIFIED SPEAKER:  (Indiscernible) --

17           THE COURT:  -- until we have to make a change.  Does

18   anybody want to be heard?

19           MR. TSEKERIDES:  Your Honor, you got cut off there, I

20   didn't hear what you said.

21           THE COURT:  I'm just inviting who -- anybody want to

22   be heard.

23           UNIDENTIFIED SPEAKER:  I can tell you it looks like

24   (indiscernible) --

25           THE COURT:  Well, let's go through the major committee

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    (indiscernible).  Who is speaking, please?

2           All right.  Mr. Julian or anyone from the TCC want to

3    be heard on what Mr. Tsekerides is describing?

4           MR. JULIAN:  Yes, Your Honor, it's Robert Julian of

5    Baker Hostetler appearing on behalf of the TCC.

6           UNIDENTIFIED SPEAKER:  (Indiscernible) suggest --

7           MR. JULIAN:  We agree with the debtors' position about

8    when testimony is presented, it should be by declaration.  How

9    cross-examination is handled is something I would like to talk

10   to the debtors' counsel, given the problems we've had with

11   video and teleconference.

12          But I think we'll be able to work out that with them.

13   Our only point is, substantively, on the May 15 date is, if

14   someone else in the case files an objection or a brief that

15   raises an issue on which the TCC would like to respond, we

16   would like to respond to that on the May 22 date, also.

17          We would not use that briefing on May 22, however, to

18   raise any objections that should have been raised on May 15th.

19          THE COURT:  Okay.  But the point is there's going to

20   be a discussion.  And Mr. Julian, I completely share with you

21   the frustration you must undoubtedly have about the technical

22   things.  And I'm feeling terrible about that.

23          And I'm determined to figure out a way to solve it.

24   And I may call upon help from you or others.  But I think --

25   don't you agree that if somebody files an objection by Friday

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    and supports it with declarations, that's fine.  But if they

2    don't support it with declarations, I can't punish them unless

3    there's a good reason do; do you agree?

4         MR. JULIAN:  We haven't considered that, Your Honor.

5    We intend to submit declarations unless, for good cause,

6    there's a reason not to do so on Friday.  But I understand Your

7    Honor's point.

8         THE COURT:  Does that mean you're going to object?

9         MR. JULIAN:  We're going to file an appropriate brief,

10   Your Honor.  We're still in negotiations with the debtor on the

11   reg rights agreement, though.  There are issues that have to be

12   addressed, Your Honor.

13        THE COURT:  Okay.  I know.

14        MR. JULIAN:  But we're looking forward to moving this

15   case forward.

16        THE COURT:  Mr. Bray or someone for the official

17   creditors' committee, you want to be heard?

18        MR. BRAY:  Just briefly, Your Honor.  Gregory Bray,

19   Milbank, LLP, counsel for the official committee.  We will be

20   filing an objection to confirmation, Your Honor.  It's the

21   issues we've raised with you before.  It's been a long call;

22   I'm not going to go through them again.  I believe it's either

23   principally legal in nature.

24        I think I share -- what I think the Court is saying,

25   that as a preliminary matter, it seems that the schedule --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1  where laying out a schedule makes sense.  If it needs some

2  refinement for something that comes in on or after the 15th,

3  perhaps the schedule could be refined at the status conference

4  on the 19th.

5  THE COURT:  (Break in audio) the subrogation

6  committee.  And I don't have -- I've set aside my call list, so

7  I don't know who's on the call from subrogation committee.

8  Anybody want to be heard today?

9  Okay.  Let's (break in audio) from the senior bond

10 holders; anyone want to be heard from the senior bond holders?

11 MR. QURESHI:  Your Honor, it's Abid Qureshi, Akin

12 Gump, on behalf of the bond holders.  Nothing from us.

13 THE COURT:  Okay.  Anyone else wish to be heard on the

14 scheduling that Mr. Tsekerides was describing.

15 MR. TOSDAL:  Yes, Your Honor.  My name is Tom -- can

16 you hear me?  Tom Tosdal --

17 THE COURT:  Yes, sir.

18 MR. TOSDAL:  -- for -- yeah, for camp fire claimants,

19 I just got a question.  Our objection will be primarily legal.

20 But given where we are with the virus, will your hearing on the

21 19th be telephonic?

22 THE COURT:  Well, Mr. Tosdal, I thought we were going

23 to be video today, and I failed at that.  I'd try again to say

24 the conference on the 19th will be video.  But if not, it'll be

25 telephonic.  It certainly won't be live.  Our court is not open

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1   and will not likely be open the calendar month of May.  And I

2   can't promise you it's going to be open after that.  We're

3   still on a pretty serious lockdown as a number of states are

4   and some -- well, we're not likely to be open.

5           So the answer is, telephonic at least, and hopefully

6   video.

7           MR. TOSDAL:  All right.  Well, the reason I ask is

8   that your February orders said live, and I'm assuming that that

9   would not be the case unless you had some special social

10  distancing rules in place.  Same for the --

11          THE COURT:  Well, but that schedule was issued at a

12  time before we were dealing with any of this.

13          MR. TOSDAL:  Well, I understand.  And same for the

14  confirmation hearing?

15          THE COURT:  Well, again, the same thing.  When we were

16  talking about this going back to last fall and then finally

17  when I issued this order that I issued, we all were probably

18  believing the President, that this was a thing going to be

19  solved by Easter with only a half a dozen people being sick.

20  And I, for one, assumed that we were going to have several days

21  of a real confirmation trial.  So much for my order on February

22  11th.

23          MR. TOSDAL:  Um-hum.

24          THE COURT:  There we are.  So I am as uncertain with

25  the future as everyone else.  But I will do my best to take it

PG&E Corp. and Pacific Gas And Electric Co

1  up with all the principal counsel --

2        MR. TOSDAL:  Sure.

3        THE COURT:  -- at the next hearing.  But you're --

4        MR. TOSDAL:  The reason I'm asking is I'm a long way

5  from the State of California.  So I'm trying to figure out what

6  the lay of the land is, here.

7        THE COURT:  Well, there are a lot of other lawyers who

8  are a long way from the State of California.  And whether they

9  will be prosecuting this case from New York or Los Angeles is,

10 for the moment, probably the case.  But I have no answers to

11 your question.

12       MR. TOSDAL:  All right.  Thank you.

13       THE COURT:  All right.  Anybody else want to be heard

14 on the scheduling?

15       MR. ETKIN:  Yes, Your Honor.  Michael Etkin on behalf

16 of the Public Employees Retirement Association.

17       Pretty much consistent with what you've heard already,

18 Your Honor.  The objection we're planning on filing will be

19 legal in nature.  We don't see any declarations necessary for

20 us.

21       I am a little concerned about the timing laid out for

22 exhibits because some of that might be a result of what the

23 debtors may be filing on May 22nd and other information we

24 receive between now and then.  So again, like others, I think

25 perhaps things will be a bit clearer on the 19th.  And that

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1    might be the appropriate time to maybe nail some of this down a

2    little bit more.

3         MR. TSEKERIDES:  And Your Honor, it's Ted Tsekerides.

4    we can discuss either on the 19th or even beforehand, but

5    probably then, if there are one-offs or circumstances where a

6    party needs to submit something, they can reach out to us.  The

7    idea here is to have at least the framework.  And the Court's

8    always at its discretion to allow, waive or different things,

9    but at least have a framework that we're all working toward.

10        THE COURT:  Yeah, well, Mr. Tsekerides, what occurs to

11   me again, because we were -- back in February, we didn't know

12   about COVID.  But come this Friday at 4 p.m., there'll be a

13   deadline.  And if somebody files an objection at 4:01, I don't

14   imagine it's going to be disregarded.

15        MR. TSEKERIDES:  Agreed.

16        THE COURT:  But it seems to me that you need to take

17   on the role of being the coordinator, whether you do it on the

18   next day or promptly after that.  You line up the objectors.

19   You probably know who some of them are going to be.  You

20   probably won't know until the filing who others are.  And

21   you've got to divide them into legal and nonlegal.  And to the

22   extent that they are making arguments about putting on evidence

23   that would support a factual inquiry, I'm going to ask you to

24   do your best to meet and confer, certainly with any counsel

25   that have surfaced at that point.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1          You know who the major players are.  And obviously,

2     there's some out there that are going to do it.  Let's -- to

3     the extent that you, as the lawyer in charge of this phase,

4     have a counterpart who's your opponent, do your best to discuss

5     what's going to be necessary, if witnesses, when, how they're

6     going to be dealt with, et cetera.

7          And let's discuss that on the hearing -- at the

8     hearing on the 19th.

9          MR. ETKIN:  I couldn't agree more, Your Honor.

10         THE COURT:  At the same time, I'll --

11         MR. ETKIN:  I'm sorry, go ahead.

12         THE COURT:  I'll take your suggestion, though, of

13    trying to do an order -- probably not today, but tomorrow if I

14    could get you to prepare it -- to flesh this out a bit and

15    draft an order that says the Court is approving this

16    tentative -- and underscore tentative -- confirmation schedule.

17         And for the May 15th item, make the notation that --

18         UNIDENTIFIED SPEAKER:  (Indiscernible) --

19         THE COURT:  Somebody -- again --

20         MR. TSEKERIDES:  Your Honor, I can't hear you.

21    Someone's talking on their phone.

22         THE COURT:  Yeah, I know.  What I'd like the order to

23    do is to follow the outline or the schedule that you put in

24    your protocol but it had to May 15th that parties should make

25    every effort to provide declarations and identification of

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas And Electric Co

1  supporting witnesses and that we'll take that up on the hearing

2  on the 19th.

3       In other words, I don't want to be presented as an

4  absolute.  We're expecting people to use their best effort.

5       MR. TSEKERIDES:  Understood.

6       THE COURT:  I'm not going to punish anybody that

7  can't.  Okay?

8       MR. TSEKERIDES:  Understood.

9       THE COURT:  Okay.  Well, I want to thank you all for

10  you time and effort for the arguments, for the preparation.

11  Again, I will apologize after one more apology for the

12  technical problems that we bogged down on today.  And I will do

13  my best to get a decision out on the motion to designate.  And

14  I'll look forward to getting something for Mr. Tsekerides that

15  memorializes the schedule.

16       So unless there's anything else we need to take up, I

17  will conclude the hearing.

18       UNIDENTIFIED SPEAKER:  Your Honor, before you hang up,

19  just one last housekeeping thing?

20       THE COURT:  Yes, sir.

21       UNIDENTIFIED SPEAKER:  I know you took off the

22  calendar the approval of the state agency and FEMA agreements

23  because there was no objection.  We have one minor change to

24  the state agency agreement just to conform a definition to the

25  fire victim trust agreement.  It's nonsubstantive.  But we

PG&E Corp. and Pacific Gas And Electric Co

1    wanted to alert you to the fact that we would be submitting

2    that with the order that we will upload.  But it is a

3    nonsubstantive change.

4          THE COURT:  Okay.  Let me make one other comment.  I

5    will try my best.  Things have been tight.  And I've got some

6    other things -- matters that have come up in another matter.

7    (Break in audio) to get something out tomorrow or time

8    allocations for the arguments on Friday.

9          I will be taking up with our clerk and others to see

10   if we have an alternative solution to try video.  But if not,

11   it'll be audio.  But just we'll try to post that on the docket,

12   certainly by Thursday.

13         So for those of you who are just tracking the case,

14   just make sure you watch the docket every day.  Watch the

15   docket to see if there's a change in procedures for those of

16   you that are going to be involved in the hearing that's on

17   calendar for this coming Friday on the trust agreement.

18         All right.  With that, I'll conclude.  Thank you

19   everyone for you time and patience.

20         UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

21        (Whereupon these proceedings were concluded)

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

C E R T I F I C A T I O N

I, Linda Ferrara, certify that the foregoing transcript is a true and accurate record of the proceedings.



_____

/s/ LINDA FERRARA, CET-656


eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020


Date:  May 13, 2020

(973) 406-2250 | operations@escribers.net | www.escribers.net

**A**

**AB (1)**
49:14
**Abid (1)**
62:11
**ability (1)**
41:20
**able (4)**
5:22;50:1,9;60:12
**above (2)**
38:19;42:7
**Abrams (53)**
4:18;5:1,3,20,23;6:3,
8,14;7:8,17;8:2,3;9:22;
10:1,9,18;11:3;13:12,
15,18,20,23;14:3,9,14,
18,20;15:15,19,21,24;
16:3,5,15;26:20;29:1;
30:7;31:18;32:10,10;
36:25;37:18;39:25;
42:14;43:21;44:2;46:6;
47:9;48:3,16,17;50:14,
16
**Abrams' (4)**
4:12;31:6;34:18;
55:3
**absolute (1)**
67:4
**absolutely (4)**
12:19;19:11;41:5;
44:21
**according (2)**
52:25;53:6
**account (1)**
43:5
**accusations (2)**
14:12,15
**acknowledges (3)**
24:16,16,17
**acquired (1)**
26:8
**across (1)**
19:23;21:10;52:23
**actions (1)**
9:14
**actual (2)**
19:22;51:3
**actually (2)**
22:5;49:15
**add (3)**
45:5,9;50:19
**addition (2)**
12:2;30:23
**address (5)**
34:21;39:24;46:17;
55:9;58:7
**addressed (1)**
61:12
**adequately (2)**
45:6;46:3
**admission (2)**
28:13,16
**admissions (1)**
27:19
**advantage (1)**
57:3
**adversary (1)**
41:1
**adversely (1)**
14:8
**advertising (1)**
54:12
**advisement (1)**
54:21
**affect (4)**
19:11;20:2;26:3;
53:9
**affected (6)**
16:5;18:17,23;19:5;
48:21,25
**affidavit (1)**
46:18
**affiliated (4)**
51:1,11;53:6;54:5
**again (19)**
4:22;14:10;15:4;
19:6;31:22;37:21;41:4,
17;44:5;45:8;55:2;
56:7;61:22;62:23;
63:15;64:24;65:11;
66:19;67:11
**agency (2)**
67:22,24
**aggressive (1)**
43:17
**ago (8)**
7:20;21:6,11;22:23;
24:13;37:25;52:5,11
**agree (8)**
30:8;31:14;36:11;
37:18;60:7,25;61:3;
66:9
**agreed (5)**
10:4,4;30:7;44:18;
65:15
**agreement (12)**
11:14;15:9,10;35:6;
48:1,10,11;49:22;
61:11;67:24,25;68:17
**agreements (1)**
67:22
**ahead (12)**
5:19;6:17,20;7:8;
17:9;21:18;27:10;
47:13;51:24;55:12,24;
66:11
**Akin (1)**
62:11
**alert (1)**
68:1
**alignment (1)**
40:25
**allocations (2)**
4:14;68:8

**allow (3)**
22:12;35:8;65:8
**allowed (1)**
29:16
**allows (1)**
20:2
**almost (2)**
23:5;58:21
**alone (1)**
49:25
**along (3)**
23:1;34:9;56:4
**alternative (1)**
68:10
**although (2)**
20:16;37:21
**always (4)**
25:15;38:5,6;65:8
**amended (1)**
58:18
**among (1)**
23:23
**amongst (1)**
9:8
**analyst (1)**
32:13
**Angeles (1)**
64:9
**answered (2)**
28:22;29:22
**Apollo (14)**
14:22,24;18:3;26:8;
31:19;32:3,4,6,22;
42:17;43:24;45:16;
50:24;52:4
**apologize (11)**
4:23;5:15;16:18,25;
17:3;33:12,15;41:6,8;
55:1;67:11
**apologized (1)**
17:7
**apologizes (1)**
17:12
**apology (1)**
67:11
**apparently (1)**
19:19;52:22
**appear (1)**
28:4
**appearance (1)**
4:8
**appearances (1)**
4:10
**appeared (2)**
28:8,19
**appearing (2)**
30:19;60:5
**appears (2)**
37:23;52:24
**application (1)**
26:24
**applies (1)**
37:18

**apply (1)**
57:2
**appoint (1)**
33:9
**appointed (2)**
13:17;33:3
**appointment (2)**
22:11,11
**appreciate (10)**
8:4,4,6;10:19;11:24;
12:1;34:17;39:16;45:2;
48:18
**appropriate (3)**
11:22;61:9;65:1
**approval (2)**
15:18;67:22
**approve (1)**
53:21
**approving (1)**
66:15
**approximately (3)**
44:13;46:22;52:8
**April (4)**
34:15;46:15,19,20
**apt (1)**
49:9
**area (2)**
39:7;40:5
**arguing (1)**
11:1
**argument (7)**
8:1;17:5;26:15;
28:23;29:17;35:3;
45:25
**argumentation (1)**
53:24
**arguments (7)**
6:5,19;29:8;49:2;
65:22;67:10;68:8
**around (4)**
4:23;28:5
**article (16)**
13:5,24;14:1,21;
17:23,24;18:14,16;
19:19,20;20:17;31:12;
34:22,22;38:23;52:20
**aside (1)**
62:6
**aspect (1)**
33:2
**assign (1)**
12:17
**associated (6)**
9:6,11,13;10:23;
13:2,7
**Association (1)**
64:16
**assume (4)**
7:5,5;32:21;33:21
**assumed (1)**
63:20
**assuming (1)**
63:8

**assumption (1)**
28:7
**attached (1)**
36:20
**attending (1)**
52:17
**attention (4)**
12:11;16:7;35:6;
48:18
**attorney (9)**
14:10;18:22,23;19:8;
20:6;21:8;32:25;44:17;
49:8
**attorney-client (1)**
22:2
**attorneys (12)**
9:8;10:12,24;42:21;
43:2,9,12;44:8;46:16,
23;49:6;50:6
**attorney's (1)**
25:11
**attributable (1)**
34:22
**attributed (1)**
19:23
**audio (12)**
4:20;40:14,19;41:8;
45:3;43:8;48:5;50:25;58:20;
62:5,9;68:7,11
**Audler's (1)**
38:17
**august (1)**
43:9
**auspices (1)**
31:10
**available (1)**
35:25
**avoid (2)**
18:22;19:9
**avoiding (1)**
19:1
**away (1)**
14:23

**B**

**back (12)**
14:15;16:22;20:24;
26:20;37:5;43:20,20;
44:15;50:6;56:8;63:16;
65:11
**background (2)**
6:17;41:12
**bad (5)**
9:3;19:2;25:3;29:23,
24
**Baghdadi (1)**
43:1
**Baker (1)**
60:5
**ballots (4)**
4:13;35:10,19;58:19
**bank (2)**

Case: 19-30088    Doc# 7177    Filed: 05/13/20    Entered: 05/13/20 15:28:37    Page 70
of 82

40:4;42:2
**banking (1)**
  35:24
**bankruptcy (11)**
  8:16,24;9:12;10:2,
  20;11:25;12:12;25:19;
  28:17;37:14;49:8
**banks (1)**
  35:23
**Bar (1)**
  27:12
**based (3)**
  13:8;18:20;50:3
**bashful (1)**
  9:24
**basic (1)**
  26:4
**basically (4)**
  19:20;22:24;24:13;
  52:12
**battle (1)**
  9:7
**bed (1)**
  36:10
**beforehand (1)**
  65:4
**begin (2)**
  4:12;5:19
**beginning (1)**
  52:13
**behalf (11)**
  4:23;11:20;12:15,16;
  15:3;18:18;25:6;42:20;
  60:5;62:12;64:15
**believing (1)**
  63:18
**bench (1)**
  58:6
**Bennett (1)**
  32:11
**best (9)**
  6:19;10:25;44:19;
  63:25;65:24;66:4;67:4,
  13;68:5
**beyond (1)**
  42:7
**biggest (4)**
  20:11;23:18;25:14;
  53:3
**bit (7)**
  4:6;31:20,22;43:17;
  64:25;65:2;66:14
**bits (1)**
  52:16
**blizzard (1)**
  54:12
**Bloomberg (1)**
  39:2
**Blunt (2)**
  17:24;18:17
**Bob (1)**
  31:15
**bogged (2)**

59:6;67:12
**bona (1)**
  36:20
**bond (3)**
  62:9,10,12
**bondholders (1)**
  32:4
**bondholder's (1)**
  32:25
**bonds (2)**
  43:23;44:2
**borrowed (1)**
  40:16
**borrowers (1)**
  51:5
**both (6)**
  5:25;9:1;30:13;35:6;
  46:20;52:21
**bottom (2)**
  22:18;35:5
**Bray (3)**
  61:16,18,18
**breadth (3)**
  12:20;16:3;49:16
**Break (11)**
  4:20;40:14,19;41:8;
  45:3;48:8;50:25;58:20;
  62:5,9;68:7
**breath (1)**
  50:1
**Bridgewood's (1)**
  38:17
**brief (6)**
  7:9;39:24;46:4,8;
  60:14;61:9
**briefing (1)**
  60:17
**briefly (2)**
  34:21;61:18
**bring (1)**
  12:11
**bringing (1)**
  16:6
**broad (2)**
  9:13;31:5
**broader (1)**
  49:10
**brought (4)**
  8:18,20;35:3;36:4
**Bruce (1)**
  32:11
**busy (1)**
  20:22
**buy (4)**
  25:18,20,21,22

**C**

**calendar (5)**
  4:7,11;63:1;67:22;
  68:17
**CALIFORNIA (7)**
  4:1;10:11,16;27:12;

37:24;64:5,8
**Call (19)**
  4:3;5:1,4;6:7,9;8:15;
  15:25;17:2;25:17;27:8;
  31:22;35:5;55:3;57:10;
  58:17;60:24;61:21;
  62:6,7
**called (4)**
  24:21;40:18;47:17;
  48:2
**calling (2)**
  48:2;55:5
**came (4)**
  13:5;21:10;43:22,23
**camp (1)**
  62:18
**can (36)**
  6:21;7:23;9:10,14;
  13:1;15:18,25;17:20;
  19:3;23:3,17;25:17,19,
  21;26:1;31:8;37:7;
  39:21,22;45:9;49:14,
  18;50:3;53:20;54:2,23,
  55:6,8;57:11,22;59:2,9,
  23;62:15;65:4,6
**Canada (1)**
  42:2
**canceled (1)**
  27:22
**Capital (2)**
  32:9,10
**care (1)**
  18:2
**carefully (2)**
  21:19;28:14
**Carlton (1)**
  11:17
**Carol (3)**
  37:22;39:7;45:14
**case (29)**
  11:9;12:9;13:10,13,
  14;16:5;18:1,12,18;
  20:6,19;21:7;23:19;
  25:20,22,24;26:1;
  27:20;49:7;51:12,19;
  54:14;56:19;60:14;
  61:15;63:9;64:9,10;
  68:13
**cases (4)**
  25:14,16,19;38:12
**cash (1)**
  50:10
**casting (1)**
  35:9
**cause (1)**
  61:5
**Cecily (1)**
  31:7
**Centerbridge (15)**
  11:10,15;12:6;14:22,
  24;18:4;26:8;31:18,21;
  32:1,6;42:18;43:25;
  50:24;52:4

**Centerbridge's (1)**
  45:16
**certain (1)**
  37:5
**certainly (16)**
  9:10,19;12:10;24:22;
  33:5;42:4,11;43:8,9;
  44:6,13;46:2;51:14;
  62:25;65:24;68:12
**certificate (1)**
  46:13
**cetera (1)**
  66:6
**challenged (1)**
  28:23
**change (10)**
  23:17,24,25;36:14;
  54:24;56:23;59:17;
  67:23;68:3,15
**changed (1)**
  6:10
**changing (1)**
  46:16
**characterize (1)**
  52:18
**characterized (1)**
  18:13
**charge (1)**
  66:3
**chart (1)**
  53:5
**Chase (1)**
  35:23
**check (3)**
  5:10,14;56:9
**checked (1)**
  29:12
**Chico (2)**
  30:10,14
**choose (2)**
  9:14;53:19
**chose (2)**
  31:19;36:1
**Chronicle (2)**
  22:16;39:2
**circumstances (1)**
  65:5
**claim (1)**
  22:12
**claimant (1)**
  34:10
**claimants (4)**
  46:21,21;49:24;
  62:18
**claimants' (1)**
  47:3
**claims (3)**
  18:12;25:19,20
**clarify (1)**
  56:13
**class (1)**
  49:24
**clear (13)**

8:24;9:12;11:4;
  12:14;20:4,8;24:2;
  29:4;37:24;38:3,25;
  40:1;41:21
**clearer (1)**
  64:25
**clearly (3)**
  9:15;11:8;49:3
**CLERK (4)**
  4:21;5:10,14;68:9
**Clerk's (1)**
  46:13
**client (1)**
  30:9
**clients (41)**
  10:5;12:15;18:10,12,
  19;19:2,3;21:11,14,15;
  22:4;23:1,4;25:11;
  30:21;33:22,25;34:13;
  38:5,8,15,16;40:15,23;
  42:3,8;44:19;48:20,22,
  24;51:12,18;52:15,16;
  53:7,10;54:4,4,7,10,13
**clock (1)**
  54:23
**close (1)**
  12:7
**coincidence (1)**
  26:8
**colleagues (1)**
  5:21
**collecting (1)**
  35:5
**coming (3)**
  5:16;19:6;68:17
**commenced (1)**
  46:14
**commend (1)**
  42:11
**comment (2)**
  31:6;68:4
**comments (3)**
  34:18;39:17;53:23
**committee (7)**
  37:10;47:3;59:25;
  61:17,19;62:6,7
**common (2)**
  40:18,22
**communicate (1)**
  38:8
**communicated (1)**
  49:23
**communication (1)**
  52:14
**Company (1)**
  32:24
**compelled (1)**
  8:11
**complete (3)**
  17:8;30:16;54:9
**completed (1)**
  49:22
**completely (2)**

Case: 19-30088   Doc# 7177   Filed 05/13/20   Entered 05/13/20 15:28:37   Page 71
of 82

37:18;60:20
**compliance (1)**
    46:14
**complied (1)**
    56:23
**concern (3)**
    15:11;25:14;37:1
**concerned (6)**
    8:14;19:14;49:1;
    51:10;56:25;64:21
**concerning (1)**
    54:16
**concerns (1)**
    46:16
**conclude (6)**
    46:5;48:14,16;55:5;
    67:17;68:18
**concluded (2)**
    20:15;68:21
**conclusion (2)**
    4:14;29:21
**conditions (1)**
    51:2
**conduct (4)**
    10:14;13:21;14:6;
    23:12
**confer (2)**
    53:18;65:24
**conference (6)**
    32:16,17;57:13;59:6;
    62:3,24
**confidentiality (1)**
    22:2
**confirmation (7)**
    4:16;57:9;58:8;
    61:20;63:14,21;66:16
**conflict (40)**
    10:4;11:23;12:3;
    15:6;17:19;18:9,11,15,
    20,23,24;19:1,15;20:1,
    2,5,17;21:12,13;22:16,
    23;23:2,5;24:16;30:7,
    8;31:20;37:8,22;38:3,
    24;39:6;40:1;41:20,21;
    42:7;48:25;50:24;
    53:24;54:10
**conflicted (1)**
    25:13
**conflicts (14)**
    9:5;10:6,24;11:5,6,8,
    20;12:20;13:2,8,9;
    14:24;19:9;54:16
**conform (1)**
    67:24
**conjunction (1)**
    47:3
**connections (1)**
    6:12
**connects (1)**
    12:6
**cons (1)**
    38:14
**consent (1)**

33:25
**consequence (1)**
    34:3
**consequences (2)**
    10:14;28:21
**consider (2)**
    14:19,20;30:15;50:5
**considerations (1)**
    44:23
**considered (1)**
    61:4
**consistent (4)**
    37:11;38:18;40:5;
    64:17
**contending (1)**
    34:10
**continue (2)**
    15:22;38:2
**continued (1)**
    37:6
**contractors (1)**
    30:24
**control (2)**
    4:5;32:2
**convey (1)**
    45:1
**conveyed (1)**
    44:15
**coordinator (1)**
    65:17
**copy (1)**
    35:19
**Corporation (1)**
    4:21
**correctly (1)**
    20:5
**counsel (9)**
    4:16;25:9;28:24;
    46:22;59:13;60:10;
    61:19;64:1;65:24
**counterpart (1)**
    66:4
**country (1)**
    28:5
**couple (1)**
    49:13
**course (5)**
    9:23;13:16;22:9;
    34:7;54:22
**Court (204)**
    4:3,4,4,22,24;5:4,6,8,
    11,18;6:2,6,11,23;7:1,
    5,11,15,17,20,23;8:1,
    11;9:4,10,13,21,23;
    10:9;11:2;12:1,22;
    13:12,18,21,25;14:5,
    11,15,19;15:13,16,20,
    23;16:2,4,8,19,22;17:1,
    3,5,7,14,18,22;20:9,13,
    19;21:3,17,20;22:5,24;
    23:7,11,14,20,22;24:5,
    7,10,12,14,24;25:1,23;
    26:6,11,14,25;27:2,6,8,

11,15,17,21,22,24;
28:2,6,10,13,16,17,17,
19,19;29:1,5;30:2,4;
31:22,25;33:8,13,15,
20,24;34:3;35:11,15;
36:5,7,12,15,22,25;
37:3,16;39:12,15,19,
21,22;40:10,13;41:8,
12,15;43:3,5;44:24;
45:2,6,11,13,17,20,24;
46:3,9;47:4,8,13,15,19,
23,25;48:2,13;49:19;
50:5,12,13,16,19;51:4,
19,22;53:14,16,21;
54:6,8,17,19;55:10,12,
17;56:6,21;58:16;
59:17,21,25;60:19;
61:8,13,16,24;62:5,13,
17,22,25;63:11,15,24;
64:3,7,13;65:10,16;
66:10,12,15,19,22;
67:6,9,20;68:4
**court-appointed (1)**
    30:20
**court-approved (1)**
    22:25
**CourtCall (2)**
    4:8;16:21
**Court's (9)**
    8:4;15:17;16:6;
    21:22;29:6,11;35:6;
    52:10;65:7
**Court-supervised (1)**
    54:9
**COVID (3)**
    8:5;46:16;65:12
**COVID-19 (1)**
    36:2
**create (1)**
    50:24
**created (1)**
    53:4
**credit (8)**
    11:13;17:25;34:24;
    40:7;42:1;43:25;51:6,7
**creditor (2)**
    40:18,21
**creditors' (1)**
    61:17
**credits (1)**
    11:12
**critical (3)**
    19:11;42:13,22
**criticisms (1)**
    33:22
**cross (1)**
    56:2
**cross-examination (2)**
    59:10;60:9
**crucial (1)**
    9:22
**cut (2)**
    41:16;59:19

64:19;66:25
**declined (1)**
    15:17
**deep (1)**
    50:1
**definition (1)**
    67:24
**degree (1)**
    11:12
**delayed (2)**
    37:16;46:15
**delays (2)**
    48:15;55:2
**demonstrate (1)**
    29:10
**demonstrates (1)**
    39:8
**deny (1)**
    52:24
**depends (1)**
    41:3
**depth (3)**
    12:20;16:3;49:16
**describe (1)**
    11:8;12:8;13:15;
    14:9
**described (2)**
    33:21;43:18
**describes (1)**
    11:14
**describing (2)**
    60:3;62:14
**designate (4)**
    54:6;55:2;59:1;
    67:13
**designation (1)**
    4:12
**designed (3)**
    18:21;19:8;22:10
**details (1)**
    56:9
**determined (1)**
    60:23
**determines (1)**
    41:19
**determining (1)**
    25:12
**devolve (1)**
    9:7
**dictate (1)**
    15:10
**different (3)**
    30:20;44:16;65:8
**difficult (3)**
    8:4;52:7;54:2
**digital (3)**
    35:10,20;36:1
**diligently (2)**
    31:14,16
**direct (2)**
    56:1;59:9
**direction (1)**
    11:21

**D**

**date (6)**
    29:14;36:14;57:6;
    58:14;60:13,16
**dated (2)**
    35:7;52:5
**dates (3)**
    55:18,20;57:22
**David (1)**
    32:9
**day (5)**
    21:5,5;32:17;65:18;
    68:14
**days (8)**
    7:20;21:11;37:25;
    52:5,11;55:19;59:5;
    63:20
**days' (1)**
    59:3
**de (3)**
    25:9;42:25;44:7
**deadline (6)**
    20:14;54:24;56:10,
    11;58:19;65:13
**deal (15)**
    8:6;12:7;15:5;18:11,
    24;32:23;34:11;44:19,
    20;50:23,24,25;53:1;
    54:22;57:11
**dealing (4)**
    15:3;19:12;53:17;
    63:12
**dealt (3)**
    14:25;18:4;66:6
**debt (1)**
    25:21
**debtor (8)**
    29:12;40:17,18,20,
    21,22;48:10;61:10
**debtors (2)**
    55:14;64:23
**debtors' (4)**
    4:15;55:21;60:7,10
**December (6)**
    11:7;30:13;34:6,13;
    35:7;37:6
**decided (1)**
    22:21
**decision (2)**
    41:5;67:13
**decision-making (1)**
    41:25
**decisions (3)**
    13:6;19:1;40:3
**declarant (1)**
    59:9
**declaration (7)**
    37:23;45:14;56:18;
    57:25;58:13;59:3;60:8
**declarations (7)**
    55:24;59:2;61:1,2,5;

Case: 19-30088    Doc# 7177    Filed 05/13/20    Entered 05/13/20 15:28:37    Page 72
of 82

**directly (1)**
18:3;26:10;30:6
**disclose (6)**
18:9,16;26:16;37:7;
40:15;42:3
**disclosed (2)**
34:6;49:17
**disclosing (1)**
39:5
**disclosure (32)**
10:6;11:23;12:24;
21:13;22:13,25;25:7;
29:11;30:16,19;34:12;
35:19;37:5,6,19,21;
38:1,1;45:16,18;46:19;
48:23,24;51:9;52:9,9,
11,13;53:9,23,24;54:9
**disclosures (4)**
16:1;34:14;37:16;
49:9
**discrete (2)**
10:13,14
**discretion (2)**
37:19;65:8
**discuss (9)**
4:16;5:21;9:10;
44:16;55:6;57:23;65:4;
66:4,7
**discussed (1)**
24:23
**discussion (1)**
60:20
**disenfranchised (1)**
23:11
**disregarded (2)**
23:10;65:14
**dissemination (1)**
46:14
**distancing (1)**
63:10
**distinguish (1)**
10:10
**distribution (1)**
35:9
**district (1)**
28:17
**diversions (1)**
53:23
**divide (2)**
5:21;65:21
**dividing (1)**
6:18
**docket (9)**
7:21,22,23;21:25;
35:12;57:14;68:11,14,
15
**document (3)**
35:16;52:6,6
**documented (1)**
9:1
**documents (1)**
51:3
**dollar (1)**

11:12
**Donato's (3)**
27:22;28:19;29:5
**done (10)**
22:12,23;27:19;28:4;
33:1;38:5,12;51:4,25;
54:3
**door (1)**
50:10
**double (1)**
56:9
**doubt (1)**
21:20
**down (8)**
29:18;39:4;41:18;
43:15;55:24;59:6;65:1;
67:12
**dozen (1)**
63:19
**draft (1)**
66:15
**due (1)**
39:8
**Dumas (2)**
12:5;31:7
**during (2)**
30:10;44:12
**dwelling (1)**
26:14

**E**

**Easter (1)**
63:19
**easy (2)**
51:21;56:24
**Edward (1)**
32:13
**effect (5)**
17:19;19:9,9;33:4;
39:5
**effective (1)**
24:19
**effects (1)**
12:21
**efficiency's (1)**
57:25
**effort (4)**
31:17;66:25;67:4,10
**eight (1)**
30:19
**eighty-eight (1)**
21:6
**either (6)**
26:11;35:19;46:25;
56:18;61:22;65:4
**elderly (1)**
31:3
**electronic (1)**
35:20
**eleven (1)**
34:10
**elicit (1)**

21:14
**Elliot (1)**
32:24
**Elliott (2)**
43:22;44:3
**else (13)**
10:17;44:22;48:3;
51:22,23,25;53:19;
56:4;60:14;62:13;
63:25;64:13;67:16
**else's (1)**
5:16
**email (6)**
12:4,5;31:8;35:20;
46:18,24
**emails (2)**
31:7;38:7
**Employees (1)**
64:16
**end (5)**
9:11;16:11;17:12;
44:16;57:22
**ended (1)**
32:21
**ends (1)**
49:12
**enforcement (1)**
9:14
**engage (2)**
14:6,6
**engagement (1)**
8:12
**enormous (1)**
20:6
**enough (7)**
11:24;12:10,12;
15:24,25;48:14;53:13
**ensure (1)**
49:10
**entire (1)**
34:8
**entirety (1)**
30:11
**entities (3)**
19:12;25:15;26:1
**environment (1)**
8:5
**equal (1)**
26:19
**equity (13)**
11:15,16,20;29:13;
30:18;32:2,7,12,23;
34:11;43:22;44:2,20
**especially (1)**
36:2
**et (1)**
66:6
**ETKIN (4)**
64:15,15;66:9,11
**even (8)**
13:13;40:13;45:18;
48:23;52:18;57:16;
58:11;65:4

**evening (1)**
6:16
**everybody (5)**
17:7;22:9;31:9;39:5;
44:17
**everyone (8)**
4:4,22,24;12:9;
43:13;55:19;63:25;
68:19
**evidence (6)**
9:1;15:25;29:15;
56:12,17;65:22
**evidenced (1)**
46:13
**evidentiary (2)**
29:9;57:18
**exactly (6)**
18:21;21:16,19;40:8;
43:18;51:5
**example (2)**
20:4;42:1
**exception (1)**
58:11
**excess (1)**
46:21
**exercise (1)**
18:22
**Exhibit (4)**
21:23,23,25;24:3
**exhibits (6)**
21:6;29:19;57:7,18;
58:1;64:22
**existing (1)**
37:8
**exit (1)**
50:10
**expect (1)**
58:7
**expectation (1)**
35:18
**expected (2)**
33:6;57:10
**expecting (1)**
67:4
**experience (1)**
56:18
**experienced (1)**
42:21
**expert (5)**
37:9,11,23;39:7;
56:19
**explain (1)**
8:11
**explanation (1)**
48:23
**exposed (1)**
12:2
**extension (1)**
49:14
**extensive (2)**
34:7,15
**extent (4)**
31:11;49:13;65:22;

66:3

**F**

**facility (1)**
34:25
**fact (13)**
11:17;19:19;21:5;
22:3;34:18;37:11;
40:16;41:23;43:24;
44:1;56:19;58:6;68:1
**facto (1)**
25:10
**facts (7)**
9:9;13:22;14:6,16,
16,21;22:7;26:9;50:3
**factual (4)**
50:21;53:24;56:25;
65:23
**failed (1)**
62:23
**fair (3)**
29:20;44:10;57:5
**fairly (3)**
55:18;57:2;58:15
**faith (1)**
29:24
**fall (4)**
14:7;18:8;51:14;
63:16
**familiar (1)**
46:9
**fantastic (1)**
44:5
**far (5)**
8:25;11:24;12:3;
19:13;51:9
**Fargo (1)**
35:23
**February (6)**
48:11;58:17,17;63:8,
21;65:11
**feedback (1)**
5:12
**feel (2)**
9:18;10:25
**feeling (2)**
24:15;60:22
**feels (1)**
9:17
**felt (3)**
8:11;11:21;15:4
**FEMA (1)**
67:22
**few (2)**
9:16;52:11
**fides (1)**
36:20
**field (1)**
37:24
**fifteen (2)**
16:13;44:14
**fifteen-fifteen (1)**

Case: 19-30088    Doc# 7177    Filed: 05/13/20    Entered: 05/13/20 15:28:37    Page 73
of 82

6:4

**fifty-seven (1)**
32:18

**figure (3)**
59:7;60:23;64:5

**file (3)**
8:11;56:16;61:9

**filed (11)**
6:15;7:9,20;17:21;
21:7;22:1;23:23;29:5;
36:5,11;46:10

**files (3)**
60:14,25;65:13

**filing (8)**
7:18;36:17;58:19;
59:1;61:20;64:18,23;
65:20

**filings (1)**
20:23

**finally (7)**
22:22;51:16,16,17;
52:4,11;63:16

**financial (4)**
25:15,18;26:1;32:13

**financiers (1)**
25:16

**financing (8)**
15:1;18:6;19:12;
26:9;40:14,25;50:25;
52:3

**fine (10)**
16:2;21:9;24:1;
31:13;36:18;40:25;
41:15;43:12;44:8;61:1

**finer (1)**
42:16

**finish (2)**
19:23;52:23

**finished (1)**
46:15

**fire (15)**
18:14,19;19:14;20:1;
25:6,25;34:10;35:10;
38:19;40:18;44:19;
46:20;47:2;62:18;
67:25

**firm (2)**
27:13;42:1

**firms (3)**
40:5,7;46:20

**firms' (2)**
15:1;18:5

**firm's (1)**
18:1

**first (11)**
4:8;5:25;10:17;18:7;
20:20;39:25;42:23;
45:14;47:10;50:23;
52:2

**five (5)**
6:1,2,2,3;46:5

**fixed (3)**
40:4,8;41:22

**flag (1)**
58:18

**flat (1)**
40:9

**flesh (2)**
11:19;66:14

**floor (1)**
29:2

**fly (1)**
58:7

**focus (3)**
9:9,17;10:16

**focused (1)**
36:25

**focuses (1)**
20:16

**focusing (2)**
10:15;36:23

**folks (4)**
32:8;33:3;47:23;
58:4

**follow (4)**
19:16;34:3,4;66:23

**followed (3)**
5:25;31:15;46:23

**following (1)**
14:21

**follows (1)**
22:24

**form (1)**
9:1

**formalities (1)**
28:20

**formulated (1)**
47:3

**forth (4)**
4:14;43:20;44:15;
50:6

**forty (1)**
5:20

**forward (10)**
8:18,20,23;15:8;
16:1;43:20;49:13;
61:14,15;67:14

**found (1)**
21:5

**four (3)**
23:24;33:3;59:5

**frame (1)**
8:10

**framework (2)**
65:7,9

**FRANCISCO (3)**
4:1;22:16;39:2

**Frank (2)**
31:7,16

**frankly (1)**
58:13

**free (2)**
9:18;36:18

**Friday (9)**
20:15;23:18;54:25;
55:25;60:25;61:6;

65:12;68:8,17

**front (4)**
28:8;37:20;56:14;
57:22

**frustration (1)**
60:21

**full (5)**
12:23,24;21:13;
22:13;30:16

**fulsome (1)**
29:9

**fund (1)**
18:1

**funding (3)**
11:5;15:10;30:16

**funds (3)**
25:17;30:23;49:7

**further (2)**
15:22;50:19

**future (3)**
50:7;59:11;63:25

**G**

**gave (3)**
5:20;52:1;53:5

**Gavin (1)**
11:18

**general (1)**
44:19

**gentleman (1)**
32:12

**Gerald (1)**
16:20

**Ghetaldi (2)**
42:25;44:8

**giant (1)**
25:15

**given (4)**
8:5;21:4;60:10;
62:20

**gives (2)**
22:7;40:2

**giving (2)**
23:2;52:15

**glad (2)**
20:8;36:4

**goal (1)**
22:19

**goes (1)**
22:18

**Good (16)**
4:22;9:3;11:18,19,
24;17:9;19:2;22:7;
25:13;29:22;42:4,11;
43:2;55:11;61:3,5

**Gotshal (1)**
55:14

**Governor (5)**
23:24,25;36:12,17,
19

**Gowins (2)**
17:15;50:20

**grant (1)**
21:18

**granted (1)**
26:24

**Gregory (1)**
61:18

**group (3)**
43:2,8;45:13

**groups (1)**
32:8

**guess (5)**
4:25;25:3;52:23;
58:23,24

**Gump (1)**
62:12

**guy (5)**
11:18,19;19:25;
25:10;52:25

**H**

**hac (4)**
26:23;27:19,25;
28:20

**half (1)**
63:19

**hall (6)**
22:4;24:9;30:11;
34:5;37:25;38:10

**halls (1)**
38:11

**handled (4)**
18:18;20:5;40:8;
60:9

**handling (2)**
20:2;21:12

**hang (1)**
67:18

**hanging (1)**
20:14

**happened (8)**
26:7;30:17;32:5;
38:22;42:6,8;43:18;
44:12

**happens (1)**
58:22

**happy (4)**
8:8;9:10;33:18;
39:13

**hard (4)**
35:19;48:4;51:1,6

**harm (1)**
38:4

**harmless (1)**
51:8

**hate (1)**
26:22

**head (1)**
56:20

**hear (7)**
39:21;47:15;49:8;
51:23;59:20;62:16;
66:20

**heard (15)**
27:4;45:7;48:3,6,8;
59:14,18,22;60:3;
61:17;62:8,10,13;
64:13,17

**hearing (18)**
17:12;20:21;37:15;
48:14;54:22;55:15;
56:1;57:9,18;58:8;
62:20;63:14;64:3;66:7,
8;67:1,17;68:16

**hearsay (1)**
31:12

**heart (1)**
54:14

**hedge (2)**
25:17;49:7

**held (1)**
24:11

**help (4)**
23:15;53:14;54:12;
60:24

**helpful (1)**
23:14

**helping (1)**
4:9

**here's (2)**
25:14;42:8

**hey (3)**
31:8;33:17;37:17

**hide (2)**
34:20;37:7

**high (1)**
43:12

**high-quality (1)**
42:21

**hijacked (1)**
49:7

**himself (2)**
40:22;52:20

**hinge (2)**
19:14;25:6

**hinges (1)**
19:13

**history (2)**
34:8;38:25

**Hold (1)**
33:8

**holders (3)**
62:10,10,12

**holding (1)**
50:10

**Honor (80)**
5:3,5,10,14,16,23,23;
6:21,21;7:4,10,12,16;
8:3;9:13,16,17;10:1,18,
25;13:1,16,23;14:4,9,
21;15:21;16:14,15,17,
18,24;17:11,16,18;
18:7,21;19:10;21:2;
23:6,13;26:21;27:21;
28:8;29:4;39:18,20,23,
24;41:3,7,17;43:7;

Case: 19-30088    Doc# 7177    Filed: 05/13/20    Entered: 05/13/20 15:28:37    Page 74
of 82

45:5;9;46:8;48:17;
50:14,18;55:8,11,15;
56:15;57:5;59:19;60:4;
61:4,10,12,18,20;
62:11,15;64:15,18;
65:3;66:9,20;67:18;
68:20
**Honor's (1)**
61:7
**hope (3)**
4:5;9:7;29:18
**hopefully (2)**
59:6;63:5
**Hostetler (1)**
60:5
**hours (1)**
23:24
**housekeeping (1)**
67:19
**huge (2)**
26:5;53:3
**hundred (1)**
14:11
**hurt (1)**
35:1

**I**

**idea (5)**
38:22;42:4;57:8,13;
65:7
**identification (1)**
66:25
**identified (1)**
45:7
**identify (2)**
58:2,15
**ie (1)**
35:20
**imagine (3)**
11:21;56:15;65:14
**impact (1)**
13:12
**impacted (5)**
13:10,13,14,21;14:7
**implicated (1)**
38:4
**important (7)**
18:2;21:24;22:13;
43:11;44:11,12;54:16
**impose (1)**
59:2
**incident (1)**
30:25
**inclined (1)**
59:14
**included (1)**
51:17
**including (2)**
6:15;13:5
**inconvenience (1)**
4:24
**independent (1)**

18:22
**indicated (1)**
15:12
**indicates (1)**
18:16
**indicating (2)**
13:6;15:8
**indication (1)**
44:21
**indiscernible (20)**
7:25;16:16;25:24;
26:13;30:1;38:6,16;
40:10;47:14,21;48:11;
51:15,15,16,20;59:16,
24;60:1,6;66:18
**indispensable (1)**
19:21
**individuals (1)**
42:24
**influence (5)**
26:2;40:3;41:20,24,
24
**influenced (1)**
44:22
**inform (3)**
33:24;34:1;53:10
**information (12)**
8:9;9:5;11:8;15:24,
25;29:20;31:5;42:9;
49:25;50:2;52:15;
64:23
**initial (1)**
33:16
**initially (1)**
16:21
**inquiry (1)**
65:23
**inside (1)**
32:17
**insinuation (1)**
42:16
**insolvent (1)**
50:8
**instead (3)**
14:25;15:3;18:4
**instruments (1)**
51:6
**integrity (2)**
26:4;53:15
**intend (2)**
54:2;61:5
**interactions (1)**
12:8
**interest (6)**
11:6,7;40:9;43:25;
49:3,4
**interested (1)**
57:9
**interesting (1)**
51:10
**interrupt (4)**
6:22;9:24;10:9;
36:16

**interview (2)**
17:24;18:16
**into (7)**
9:7;10:16;11:22;
13:1;44:13;58:8;65:21
**introduced (1)**
32:6
**investigate (1)**
16:6
**investors (4)**
14:25;18:4;49:3;
50:9
**inviting (1)**
59:21
**involved (8)**
42:14,22;43:9;44:6,
7;57:16,16;68:16
**involving (1)**
20:6
**issue (20)**
20:20;21:12;27:23;
29:6;32:20;35:2;36:20;
38:13,21;39:1,5;40:15,
16;42:12;48:19;54:8,
21;56:22;58:10;60:15
**issued (4)**
4:13;63:11,17,17
**issues (11)**
8:6;38:13;44:16;
47:6;48:18,21;49:15,
16,17;61:11,21
**issuing (1)**
58:25
**item (1)**
66:17

**J**

**JAMS (1)**
32:17
**job (3)**
16:6;21:8;44:5
**John (1)**
32:12
**join (1)**
7:13
**joinders (1)**
55:3
**joiners (1)**
39:1
**jointly (1)**
43:13
**Jones (1)**
32:17
**Journal (12)**
13:5,24,25;17:20;
20:16,23;22:15;31:12;
34:21;38:23;39:3;
52:20
**Judge (16)**
4:23;27:22;28:19;
29:5;30:21;31:10;
32:18;33:3,10,11,14;

35:2;43:15,16;44:18;
47:17
**judgment (1)**
18:22
**Julian (10)**
31:15;42:23;60:2,4,
4,7,20;61:4,9,14
**justice (1)**
49:18

**K**

**Kane (65)**
5:4,5,5,24,25;6:18;
7:16,16,18,22,25;
10:21;16:9,12,14;17:5,
9,11,11,15,15;20:9,11,
14;21:1,4;23:9,13,17,
21;24:4,6,8,11,12,13,
15,25;25:2,24;26:13,
17,21;27:1,5,7,17;
33:24;34:17;36:25;
39:8,25;42:14;46:6;
47:9;48:3;50:17,18,20,
20;51:21,23;52:1;
54:19,19
**Karen (2)**
17:15;50:20
**KAROTKIN (14)**
6:21,22,24;7:3,5,9;
46:4,7,8,11;47:8;55:5,
6,8
**Karotkin's (1)**
7:18
**keeps (1)**
19:5
**Kelly (3)**
31:16;42:25;44:7
**kept (1)**
37:16
**key (4)**
12:20;18:14;19:25;
52:25
**KGEB (1)**
39:3
**kidding (1)**
36:7
**kind (6)**
22:2;25:16;26:2;
31:4;44:21;52:3
**kindly (1)**
7:3
**kinds (1)**
51:5
**kingpin (2)**
25:5;31:12
**knew (2)**
18:8,11
**Knighthead (4)**
32:9,22;43:21;44:2
**knows (3)**
4:9;22:9;55:19

**L**

**lack (1)**
23:19
**laid (1)**
64:21
**land (1)**
64:6
**Langford (1)**
39:7
**Langford's (2)**
37:23;45:14
**large (7)**
11:5;14:25;18:4;
32:16,17;40:7;43:19
**largely (1)**
32:8
**larger (1)**
32:4
**largest (2)**
32:1,7
**last (11)**
6:15;8:2;14:7;18:9;
20:22;23:23;37:4;
38:21;51:14;63:16;
67:19
**late (4)**
6:15;22:22;53:2,12
**later (1)**
7:24
**law (4)**
10:11,16;40:7;46:20
**lawyer (4)**
23:12;28:3;32:11;
66:3
**lawyers (11)**
26:3;27:13,18;29:13;
31:13;38:12;51:2,11;
53:6;54:5;64:7
**lay (2)**
10:24;64:6
**laying (1)**
62:1
**lays (1)**
57:21
**lead (3)**
29:21;31:15;33:4
**leader (1)**
31:15
**leaders (1)**
32:23
**learned (5)**
14:25;18:5;22:23;
25:5;51:15
**least (13)**
9:12;19:13;22:21;
24:18;40:23;52:25;
54:15;58:7,14;59:1;
63:5;65:7,9
**leave (2)**
44:24;50:10
**leaves (2)**

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(6) Honor's - leaves

Case: 19-30088    Doc# 7177    Filed: 05/13/20    Entered: 05/13/20 15:28:37    Page 75
of 82

8:16;35:25
**led (1)**
    42:23
**left (3)**
    47:10;50:8;54:8
**legal (10)**
    11:3;14:16;42:10;
    48:22;56:24;58:23;
    61:23;62:19;64:19;
    65:21
**legalese (2)**
    10:23;50:6
**lender (5)**
    40:2,17,17,17,20
**letter (5)**
    15:12,17,18;34:15,
    16
**letters (2)**
    23:15;38:7
**liberty (2)**
    14:1,5
**life (1)**
    21:8
**lightning (1)**
    20:19
**liked (1)**
    34:18
**likely (2)**
    63:1,4
**likewise (1)**
    25:12
**limit (1)**
    59:9
**line (16)**
    5:17,17;6:9;7:13;
    11:12,12;12:5;17:25;
    19:23;22:8,19;35:5;
    42:1;44:1;52:23;65:18
**lined (1)**
    22:11
**lines (1)**
    40:7
**link (1)**
    34:12
**links (1)**
    38:7
**list (2)**
    43:6;62:6
**listen (2)**
    28:13;39:6
**listen-only (1)**
    6:9
**lists (1)**
    12:6
**litigation (7)**
    11:5;18:1;26:9;
    30:11,16,23;40:3
**little (7)**
    4:6;46:15;52:16;
    53:2,12;64:21;65:2
**live (3)**
    6:11;62:25;63:8
**LLP (1)**

61:19
**loan (6)**
    40:2,4;41:4,18,24;
    51:3
**loans (2)**
    30:24;51:3
**lockdown (1)**
    63:3
**logistics (1)**
    59:7
**long (6)**
    8:2;21:8;51:13;
    61:21;64:4,8
**look (12)**
    7:22,23;9:3;26:7;
    36:6,8;48:13;57:6,7,
    14;58:6;67:14
**looking (6)**
    8:21,22;19:22;26:23;
    58:16;61:14
**looks (1)**
    59:23
**Los (1)**
    64:9
**lose (1)**
    49:5
**lost (1)**
    50:12
**lot (7)**
    21:4,9;26:15;35:4;
    41:12;58:23;64:7
**lots (2)**
    8:8;11:8

## M

**main (2)**
    22:19;25:16
**major (5)**
    44:1,2,9;59:25;66:1
**makes (4)**
    10:15;37:24;52:17;
    62:1
**making (7)**
    12:23;14:12;27:23;
    37:16;41:5;56:19;
    65:22
**man (1)**
    18:14
**managed (1)**
    20:23
**Management (4)**
    32:9,10,24;43:22
**many (14)**
    6:15;8:15,21;9:2;
    12:6;13:3;21:24;27:18;
    38:15,15,16;47:25;
    54:4;56:7
**March (3)**
    29:11;35:12;46:15
**MARSHACK (11)**
    7:4,12,12,15;29:5;
    45:5,9,12,12,18,20

match (1)
    7:6
**materially (1)**
    14:8
**materials (5)**
    35:9;46:12,19,24;
    48:10
**matter (7)**
    4:7,21;24:22;31:20;
    54:21;61:25;68:6
**matters (6)**
    4:11,13;8:20;9:5;
    11:3;68:6
**MAY (19)**
    4:1;21:11;22:21;
    24:11;34:15,16;43:25;
    52:5;57:13;60:13,16,
    17,18,24;63:1;64:23,
    23;66:17,24
**maybe (2)**
    48:22;65:1
**Maynard (3)**
    6:6,7,8
**mean (9)**
    31:3;41:16;43:16;
    56:16;57:6,12,20;
    58:10;61:8
**means (3)**
    35:10,20;53:25
**meanwhile (1)**
    54:23
**media (1)**
    39:4
**mediation (4)**
    31:9;32:18;33:1;
    44:14
**mediations (2)**
    30:20;44:14
**mediator (1)**
    30:21
**meet (3)**
    10:5;53:18;65:24
**meeting (12)**
    11:7;21:11;22:4,6;
    24:8,9;31:9,9;32:15;
    33:16;34:5;37:25
**meetings (5)**
    14:7;30:12;33:17;
    38:7;52:16
**member (1)**
    27:12
**members (1)**
    34:10
**memorializes (1)**
    67:15
**memory (1)**
    6:16
**mention (3)**
    26:22,22;52:19
**mentioned (2)**
    51:24;53:4
**mentions (1)**
    21:12

met (4)
    11:17;32:11,24;39:9
**method (2)**
    52:14;53:20
**methods (1)**
    19:8
**Michael (3)**
    14:22;33:1;64:15
**middle (3)**
    17:23;36:2;52:8
**midst (1)**
    50:7
**might (3)**
    42:3;48:9;52:3;58:9,
    23;64:22;65:1
**might've (1)**
    33:10
**Mikal (5)**
    19:22;32:15;44:5;
    52:22,25
**Mike (1)**
    31:16
**Milbank (1)**
    61:19
**minimize (1)**
    53:1
**minor (2)**
    31:3;67:23
**minute (4)**
    6:22,24;7:1;20:22
**minutes (7)**
    5:20;6:1,18;16:10,
    13;46:5;47:10
**misleading (1)**
    32:20
**misspoke (1)**
    33:8
**mix-up (1)**
    17:8
**modify (1)**
    57:22
**moment (1)**
    64:10
**money (1)**
    40:16
**monitor (1)**
    5:17
**Montali (2)**
    4:23;33:3
**month (2)**
    34:14;63:1
**months (1)**
    22:23
**more (7)**
    4:6;20:4;25:3;44:6;
    65:2;66:9;67:11
**morning (8)**
    4:22;17:9;20:24;
    36:5,6,8,10;55:11
**Most (2)**
    40:7;43:9
**mostly (1)**
    49:1

motion (18)
    4:12,15;7:6;8:12,18,
    23;17:22;20:16;21:7,
    17,18;22:25;23:6;
    24:20;33:19;55:2,3;
    67:13
**Motulsky (1)**
    32:12
**movants (1)**
    39:1
**move (2)**
    13:1;45:25
**moved (2)**
    14:23;20:19
**moves (1)**
    13:6
**moving (4)**
    4:19;10:16;14:23;
    61:14
**much (5)**
    29:18;31:17;32:4;
    63:21;64:17
**Mule (1)**
    32:13
**must (4)**
    18:22;36:7;59:1;
    60:21
**mute (1)**
    39:5
**Myself (2)**
    5:24;9:8

## N

**nail (1)**
    65:1
**name (4)**
    47:15,20;48:7;62:15
**named (1)**
    32:12
**names (1)**
    36:20
**nature (4)**
    40:16;58:23;61:23;
    64:19
**necessarily (1)**
    42:2
**necessary (5)**
    7:14;54:18;59:10;
    64:19;66:5
**need (15)**
    14:15;15:22;16:1;
    28:7;29:20;42:3;45:21;
    56:16;57:15,18,23;
    65:16;67:16
**needed (2)**
    33:25;56:12
**needs (6)**
    24:17;40:23;49:10;
    54:3;62:1;65:6
**negotiate (2)**
    18:3;31:19;42:17
**negotiated (4)**

Case: 19-30088    Doc# 7177    Filed 05/13/20    Entered 05/13/20 15:28:37    Page 76
of 82

32:24;35:8,20;49:22
**negotiating (6)**
11:15;15:3;32:19,21;
34:24;42:20
**negotiation (12)**
13:17;18:15;20:3;
25:6,7,9;31:14,21;
34:9;44:12;45:3;54:14
**negotiations (14)**
12:15,16;18:13,18;
19:2;25:5;33:4;37:8;
38:25;42:15,23;44:4;
48:25;61:10
**new (4)**
20:17;22:15;39:2;
64:9
**News (1)**
39:2
**newsletter (9)**
51:11,17,24;52:1,5,8,
12;53:4,7
**Newsome (8)**
30:21;31:10;32:18;
33:10,14;43:15,16;
44:18
**next (9)**
22:9;27:9;34:5;51:9;
64:3;65:18
**nice (1)**
39:9
**night (1)**
20:21
**nine (1)**
30:19
**ninety-eight (2)**
53:7,10
**ninety-five (1)**
38:19
**nobody (1)**
17:12
**noise (2)**
30:2;41:12
**nonattorney (3)**
9:19;10:19;11:25
**nonclients (1)**
54:11
**nonlegal (1)**
65:21
**nonsensical (1)**
38:23
**nonsubstantive (2)**
67:25;68:3
**nor (2)**
18:10;54:12
**notation (1)**
66:17
**note (1)**
51:10
**noted (3)**
45:15;46:18;47:1
**notice (1)**
17:2;59:3
**notified (1)**

27:22
**notify (1)**
27:24
**number (12)**
7:24;15:6;7:22:1;
31:13;35:12;38:23;
42:21;43:19;44:11;
52:6;63:3
**numbers (1)**
52:7

---

## O

**object (4)**
55:25;58:3,5;61:8
**objection (13)**
56:12,16,17,24,25;
58:7;60:14,25;61:20;
62:19;64:18;65:13;
67:23
**objections (8)**
47:5;56:11;57:20;
58:9,19,22;59:1;60:18
**objector (1)**
58:2
**objectors (1)**
65:18
**obligation (1)**
42:10
**obligations (1)**
51:5
**observing (1)**
58:19
**obtain (1)**
18:10
**obtained (2)**
26:2;27:19
**obviously (3)**
55:21;58:20;66:1
**occurred (1)**
21:22
**occurs (2)**
19:9;65:10
**off (6)**
34:11;41:16;55:20;
56:20;59:19;67:21
**offered (1)**
30:24
**offers (1)**
44:15
**office (1)**
55:9
**official (2)**
61:16,19
**older (1)**
35:10
**once (3)**
14:25;18:5;30:10
**one (39)**
4:7,11;6:24;10:11,
12;15:6;19:22;23:17;
26:10,21;27:2,9;31:6,
13;32:5,6,8;33:2,2,3,

22;34:13;35:2;37:4;
38:15,23;42:13;44:11;
45:9;47:6;49:6,13,18;
52:22;63:20;67:11,19,
23;68:4
**one-offs (1)**
65:5
**only (10)**
8:20,22;23:18;28:2;
34:22;42:12;55:19;
56:21;60:13;63:19
**oOo- (1)**
4:2
**open (5)**
9:19;62:25;63:1,2,4
**opened (1)**
20:17
**operator (2)**
4:9,17;5:12
**opinion (2)**
45:24,25
**opponent (1)**
66:4
**opponents (1)**
43:21
**opportunity (4)**
52:2;53:21;58:3,5
**opposed (1)**
58:25
**opposing (1)**
7:6
**opposition (1)**
21:7
**option (1)**
23:2
**oral (1)**
35:3
**order (24)**
4:3,13;22:24;27:24;
33:6,6;35:11;37:19;
46:14;53:15;56:9,13,
22;58:11,15,16,18,25;
63:17,21;66:13,15,22;
68:2
**ordered (1)**
30:20
**orders (1)**
63:8
**original (1)**
56:9
**originally (2)**
37:15;50:25
**others (4)**
60:24;64:24;65:20;
68:9
**ours (1)**
58:4
**out (36)**
9:15;10:24;13:5;
15:11;16:21;17:25;
18:19;22:3;23:1;29:12,
14,21;30:25;31:4;
34:19;46:25;47:17;

50:10;52:16;53:20,22;
54:1,11;56:19;57:21;
59:7;60:12,23;62:1;
64:5,21;65:6;66:2,14;
67:13;68:7
**outcome (1)**
54:24
**outcomes (3)**
8:22,23;49:11
**outline (2)**
9:16;66:23
**outlined (2)**
13:2,3
**out-of-town (1)**
28:3
**over (15)**
16:12;19:6,6;20:15;
22:9;26:2;34:7;36:14;
37:21,21,21;39:16;
41:5;49:3;51:23
**overlap (1)**
10:20
**overtones (1)**
35:4
**own (1)**
15:5

---

## P

**paces (1)**
43:16
**packages (1)**
46:18
**page (8)**
22:5,8;35:7,13,13,
14;52:6,7
**pages (2)**
29:19;37:13
**paints (1)**
31:18
**panoply (1)**
31:5
**paper (1)**
55:24
**papers (7)**
6:15;8:9,10;10:4;
13:3;21:9,24
**paragraph (4)**
35:7,13,14;45:14
**pardon (1)**
30:1
**part (8)**
9:11;11:16;13:11;
18:2;22:13;46:16;
48:19;57:6
**participants (1)**
4:17
**participate (2)**
6:11;57:15
**participating (2)**
9:8;43:14
**participation (3)**
15:1;18:5;53:1

50:10;52:16;53:20,22;
**particular (3)**
8:19;9:18;36:16
**particularly (2)**
4:18;9:2
**parties (13)**
8:7,15,21;9:2;12:4,6,
7,22;15:4;30:25;35:18;
50:12;66:24
**Partners (1)**
32:14
**party (4)**
4:19;8:20;55:21;
65:6
**patience (1)**
68:19
**people (25)**
11:10,23;12:11,13;
15:5;18:19;20:7;23:8,
15;25:8,10;31:3,19;
32:15,18;34:23;35:1;
36:13;37:9;38:10;
43:10;44:11;47:25;
63:19;67:4
**percent (4)**
32:3;38:19;53:7,11
**perfectly (1)**
51:8
**perform (1)**
35:24
**perhaps (3)**
33:9;62:3;64:25
**permitted (1)**
25:18
**person (5)**
12:16;15:2;32:5,6;
39:9
**petition (5)**
23:24;36:4,13,17,18
**PG&E (5)**
4:21;18:1,3;40:18;
50:8
**phase (2)**
45:25;66:3
**phone (2)**
5:9;8:7;59:13;66:21
**phonetic (7)**
11:18;17:25;38:16,
17,17,18;39:3
**picture (1)**
31:18
**PIMCO (3)**
32:25;43:22;44:3
**pin (1)**
25:6
**Pitre (5)**
12:5;31:7,16;42:25;
44:7
**PJT (1)**
32:14
**place (5)**
20:5;26:23;36:3;
47:7;63:10
**plaintiffs (2)**

Case: 19-30088    Doc# 7177    Filed: 05/13/20    Entered: 05/13/20 15:28:37    Page 77
of 82
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

31:4;42:20
**plaintiffs' (1)**
29:13
**plaintiff's (1)**
26:3
**plan (7)**
19:12,13;26:3;29:23;
30:18;38:14,20;47:2;
54:14
**planning (2)**
28:8;64:18
**played (1)**
44:9
**players (6)**
31:21,23;44:1,2;
45:6;66:1
**pleading (1)**
29:5
**pleadings (2)**
19:6;21:19
**please (6)**
6:20;16:12;17:5;
50:5;55:8;60:1
**pm (2)**
54:25;65:12
**point (27)**
6:25;12:15;15:2;
19:4,4,7;24:2;25:4;
26:11;30:4;31:22;
32:13;33:2;34:18;
36:22;46:25;54:6;57:1,
5,21,23;59:5,10;60:13,
19;61:7;65:25
**points (5)**
9:16;11:8;39:25;
40:25;42:16
**position (9)**
11:1;12:17,18;19:11;
25:3;38:4;40:23;50:9;
60:7
**positions (2)**
10:13;32:4
**possible (2)**
24:19;49:14
**possibly (1)**
56:23
**post (1)**
68:11
**potential (1)**
49:20
**potentially (1)**
50:8
**power (3)**
25:18;41:5,23
**PowerPoint (1)**
34:7
**powers (1)**
9:13
**practice (3)**
26:5;40:6;42:11
**precedence (1)**
49:3
**precisely (2)**

23:5;57:7
**preliminary (2)**
27:3;61:25
**preparation (1)**
67:10
**prepare (1)**
66:14
**prescribe (1)**
19:16
**prescribed (1)**
19:8
**present (1)**
25:16
**presented (3)**
47:4;60:8;67:3
**President (1)**
63:18
**press (2)**
11:19;13:4
**pressed (1)**
36:13
**presumably (1)**
51:7
**presume (1)**
58:22
**pre-trial (1)**
57:13
**pretty (5)**
20:8;21:19;37:24;
63:3;64:17
**primarily (1)**
62:19
**primary (1)**
15:4
**Prime (1)**
46:13
**principal (2)**
37:1;64:1
**principally (1)**
61:23
**principals (2)**
15:4;32:7
**prior (2)**
39:10;56:13
**privilege (1)**
32:18
**privy (1)**
13:16
**pro (5)**
9:8;26:23;27:19,25;
28:20
**probably (8)**
27:4;38:8;63:17;
64:10;65:5,19,20;
66:13
**problem (18)**
4:25;6:12;18:25;
23:19,22;24:19;25:2,
25,25;41:9;48:14;52:3;
53:3,3,13,15;54:3;55:7
**problems (3)**
52:9;60:10;67:12
**procedure (1)**

28:3
**procedures (4)**
47:1,5,6;68:15
**proceed (1)**
9:16
**proceeding (7)**
8:12,16;9:9;12:3;
13:21;14:8;49:24
**proceedings (1)**
68:21
**proceeds (1)**
11:7
**process (11)**
8:16,21;9:4;12:25;
18:24;19:21;26:4;33:2;
35:22;49:8,10
**produce (2)**
58:4,15
**produced (1)**
51:2
**professionals (1)**
34:10
**profoundly (2)**
13:10,13
**prolifically (1)**
38:8
**promise (1)**
63:2
**promptly (1)**
65:18
**proper (2)**
52:13;53:22
**properly (1)**
27:18
**proponent (1)**
56:4
**proponents' (1)**
55:22
**proposal (2)**
15:7;57:2
**proposed (3)**
24:20;55:15;56:8
**pros (1)**
38:14
**prosecuting (1)**
64:9
**protect (1)**
53:15
**protocol (2)**
55:16;66:24
**proves (2)**
18:7,8
**provide (5)**
10:6;11:23;35:18;
49:25;66:25
**provided (9)**
8:10;9:2;10:7;11:14;
13:4;15:11;29:18;31:5;
37:8
**provides (1)**
9:4
**public (5)**
8:14;34:17;49:4,17;

64:16
**publish (1)**
57:14
**published (2)**
17:21;20:21
**punish (2)**
61:2;67:6
**purchase (1)**
41:23
**purpose (1)**
8:12
**pursuant (1)**
33:1
**pursued (1)**
49:18
**put (19)**
8:23;12:4;15:8;
29:20;34:16;40:22;
48:10,11;49:12;50:3;
55:24;56:3,17;57:6,19;
58:12,14,24;66:23
**putting (3)**
34:19;37:6;65:22
**puzzled (1)**
51:3

**Q**

**quality (1)**
43:12
**quarrel (1)**
57:1
**quarter (1)**
30:10
**quarterly (1)**
38:7
**quickly (2)**
54:2,22
**quite (1)**
21:19
**quote (5)**
11:19;19:22,23;
34:22,23
**quoted (1)**
52:20
**Qureshi (2)**
62:11,11

**R**

**raise (1)**
60:18
**raised (4)**
39:25;47:6;60:18;
61:21
**raises (1)**
60:15
**ran (1)**
43:16
**Randall (1)**
30:21
**rate (2)**
40:9;41:22

**rather (2)**
4:10;52:15
**reach (1)**
65:6
**reaching (1)**
8:25
**reaction (1)**
18:20
**read (18)**
6:14;9:12;11:25;
12:12;14:3;20:23;
37:11,12,13,17;42:6;
45:13,20,21,22,24,24;
56:8
**reading (4)**
20:22;22:14;29:20;
39:10
**real (3)**
11:18,19;63:21
**really (11)**
8:11;25:4;26:22;
35:3;41:3,18;43:16;
44:23;52:18;53:16;
57:15
**reason (11)**
8:20;29:19;31:21;
32:21;42:17;57:6,7;
61:3,6;63:7;64:4
**reasonably (1)**
54:8
**reasoning (1)**
34:9
**reasons (1)**
38:15
**rebuilding (1)**
31:3
**rebuttal (2)**
6:1,3
**Recalling (1)**
4:21
**receive (1)**
64:24
**received (2)**
7:18;16:25
**recent (1)**
13:4
**recognize (1)**
48:7
**recognized (1)**
43:13
**recognizing (1)**
55:23
**recommendation (1)**
44:18
**recommendations (1)**
50:4
**record (9)**
14:1;24:2;26:15,16;
29:9,15,24;36:1;48:11
**redirect (2)**
9:18;59:10
**reference (3)**
21:22,24;53:5

Case: 19-30088    Doc# 7177    Filed: 05/13/20    Entered: 05/13/20 15:28:37    Page 78
of 82

**referenced (1)**
29:6
**references (2)**
30:8;31:7
**referring (3)**
17:20;24:3;33:9
**refined (1)**
62:3
**refinement (1)**
62:2
**refresh (1)**
6:16
**refused (1)**
42:17
**reg (1)**
61:11
**regard (1)**
6:4
**regarding (8)**
4:12;8:15,16;9:5,5;
17:22;19:1;20:17
**registration (2)**
15:8;49:21
**regulates (1)**
10:12
**reiterate (1)**
46:11
**related (1)**
4:13
**relation (1)**
10:2
**relationship (2)**
39:9;40:24
**relevant (1)**
48:13
**reliable (1)**
22:8
**reluctant (2)**
52:14;58:21
**rely (2)**
13:22;58:1
**remain (1)**
8:13
**remainder (2)**
6:4;19:18
**remarks (1)**
48:16
**remedies (2)**
9:11;49:10
**remedy (6)**
20:9;29:7,25;48:24;
49:15,19
**remember (2)**
43:11;56:13
**remind (2)**
56:6,7
**repeat (2)**
8:9;45:21
**reply (1)**
55:22
**report (2)**
22:6;37:9
**reported (1)**

**19:20**
**reporter (1)**
34:25
**reporter's (2)**
22:5;24:8
**reporting (1)**
51:11
**reports (1)**
13:4
**represented (6)**
25:8,9,11;46:21,23;
54:13
**representing (3)**
18:12;19:25;46:20
**request (2)**
4:15;49:14
**required (2)**
45:16,19
**researched (1)**
51:13
**reserve (3)**
16:10,10;26:17
**reserving (1)**
6:1
**resolution (1)**
24:22
**resolve (3)**
5:22;25:13;49:21
**resolved (1)**
49:17
**resolving (1)**
54:3
**respect (18)**
29:8,17;30:1,15,17;
31:2,6;32:20;33:19;
35:2,4,17;37:12,14;
39:8;47:2,2;56:5
**respectfully (1)**
58:10
**respond (5)**
23:8;26:19;30:6;
60:15,16
**responded (1)**
37:3
**response (3)**
7:9;36:11;46:12
**responsibility (1)**
42:5
**rest (3)**
4:6;34:25;50:10
**restrictions (1)**
36:3
**restructure (1)**
35:6
**result (1)**
64:22
**results (3)**
23:3;38:18;54:9
**Retirement (1)**
64:16
**return (2)**
23:3,3
**revealed (1)**

**13:9**
**review (2)**
58:3,5
**rhetorically (1)**
27:17
**Richard (1)**
45:12
**Riddle (2)**
42:25;44:8
**right (29)**
4:22;5:11,18;6:6,7;
7:17;8:3;11:2;13:1;
16:10;17:14;20:13;
23:20;28:18;30:2;33:2,
5,5,13;34:23;37:5;
40:2;47:9;50:2;60:2;
63:7;64:12,13;68:18
**rights (4)**
15:8;35:17;49:21;
61:11
**rise (1)**
29:25
**risks (1)**
50:11
**Ritz (1)**
11:17
**Robert (1)**
60:4
**Roberts (1)**
38:18
**role (6)**
12:19;33:21;34:24;
44:9;45:16;65:17
**room (7)**
11:22;12:12,13;
21:20;32:16,16;44:17
**rooms (1)**
43:19
**Rosa (3)**
30:10,14;31:1
**Royal (1)**
42:2
**RSA (1)**
35:21
**Rule (20)**
8:24;9:12,15;10:2,
10,20;11:25;12:12;
37:10,12,14,17,19,22,
24;38:3;39:7,10;53:20;
57:4
**rules (11)**
10:14;15:10;19:16,
16;23:24,25;42:4;
53:13;54:16;56:24;
63:10
**ruling (1)**
54:21
**rusty (1)**
19:14

**S**

**safety (4)**

**8:13,17;49:4,18**
**sake (1)**
57:25
**same (8)**
32:23;53:4;54:1;
56:3;63:10,13,15;
66:10
**SAN (3)**
4:1;22:15;39:2
**Sanders (1)**
38:16
**Santa (3)**
30:10,14;31:1
**sat (1)**
43:15
**satisfy (2)**
53:13,20
**satisfying (1)**
54:16
**saw (1)**
7:11
**saying (3)**
11:5;45:11;61:24
**schedule (15)**
22:11,19;55:6,6,7;
56:8;57:12,21;61:25;
62:1,3;63:11;66:16,23;
67:15
**scheduled (1)**
34:6
**scheduling (4)**
4:16;58:18;62:14;
64:14
**screen (2)**
4:17;12:4
**se (1)**
9:8
**second (3)**
4:23;29:17;30:4
**Secondly (1)**
49:20
**secret (1)**
32:16
**Section (3)**
8:25,25;51:17
**sections (1)**
9:6
**secure (1)**
35:25
**secured (2)**
25:20;35:24
**security (3)**
8:13,17;49:4
**seek (1)**
49:19
**seems (3)**
10:3,6;26:10;61:25;
65:16
**sees (1)**
54:8
**self-laudatory (1)**
53:23
**send (6)**

**15:12,17,18;51:11;**
52:15;54:1
**sending (1)**
22:10
**senior (2)**
62:9,10
**sense (4)**
9:19;52:17;58:8;
62:1
**sent (3)**
34:13;46:19;53:22
**sentence (1)**
45:10
**sentences (1)**
45:15
**separate (2)**
28:11,16
**serious (2)**
53:13;63:3
**serve (1)**
56:1
**served (1)**
46:13
**service (3)**
8:22;12:1;46:13
**set (5)**
31:8;52:14;55:20;
56:9;62:6
**setting (1)**
4:13
**settlement (1)**
18:3
**seven (1)**
32:4
**seventeenth (1)**
32:1
**several (5)**
18:7;22:9;35:13;
43:1;63:20
**shall (1)**
20:24
**share (7)**
6:18;7:2;29:2;38:11;
59:8;60:20;61:24
**shareholder (1)**
32:2
**shareholders (1)**
32:7
**sharing (2)**
16:9;29:2
**sheltering (1)**
36:2
**shock (1)**
58:13
**shopped (1)**
39:1
**short (1)**
58:15
**short- (1)**
49:2
**show (2)**
19:3;51:1
**showed (1)**

30:9
**shows (2)**
35:12;53:5
**shut (1)**
16:20
**sic (1)**
33:3
**sick (2)**
38:9;63:19
**side (7)**
19:15;32:2,8,23,25;
36:17;43:21
**sight (1)**
49:5
**sign (3)**
22:19;54:5,7
**signed (5)**
4:9;34:11;36:13;
44:20;58:16
**sign-off (1)**
10:5
**Silver (1)**
32:13
**simply (3)**
41:25;42:18;58:18
**single (1)**
44:17
**Singleton (45)**
5:8,8;7:13;16:17,20,
20,23,24;17:2,4,6,10;
19:19,24;26:18;29:3;
38:22;39:16,19,20,23;
40:11,13;41:2,10,13,
16;43:3,4,5,7;45:1,13,
23;46:1,2;47:1;50:21;
51:7;52:19,21,22,24,
25;53:19
**sitting (1)**
43:19
**six (1)**
32:3
**Skikos (11)**
31:17;43:1;47:11,17,
18,20,22,24;48:1,6,9
**slide (2)**
11:5;12:4
**slides (3)**
30:8,14;34:8
**slow (1)**
39:4
**small (1)**
26:5
**social (1)**
63:9
**sold (1)**
15:9
**solicitation (7)**
29:10;35:9;46:12,24;
47:1;48:1,10
**solicited (1)**
29:15
**solution (1)**
68:10

**solve (3)**
24:19;55:7;60:23
**solved (2)**
4:25;63:19
**somebody (8)**
31:11;47:20;56:16;
57:2;59:3;60:25;65:13;
66:19
**somehow (2)**
42:16,20
**someone (8)**
5:16;44:7;48:3;
51:22,23;58:11;60:14;
61:16
**Someone's (1)**
66:21
**sorry (16)**
16:17;24:5;30:3;
33:11;35:15;36:15;
40:12;41:6,10,13;45:7,
9,12;47:15;52:7;66:11
**sort (3)**
19:13;38:24;55:23
**source (1)**
22:7
**speak (2)**
10:21;48:3
**SPEAKER (12)**
47:11,14,16,21;
51:19;59:16,23;60:6;
66:18;67:18,21;68:20
**speaking (4)**
5:25;11:6;45:11;
60:1
**special (1)**
63:9
**specific (1)**
39:24
**specifically (4)**
17:17;29:12;35:8;
57:8
**specifics (1)**
44:13
**specified (1)**
21:18
**speed (1)**
20:20
**spelled (1)**
9:15
**splitting (1)**
5:24
**spoke (1)**
48:4
**stage (1)**
53:2
**Stamer (1)**
33:1
**stamped (1)**
55:3
**stand (2)**
34:18;54:24
**standard (2)**
28:2;58:20

**stands (1)**
11:4
**start (2)**
4:19;49:2
**started (1)**
10:14
**state (7)**
12:13;28:6;45:15;
64:5,8;67:22,24
**stated (4)**
8:8;14:21,22;49:6
**statement (9)**
13:18,19,22;19:19;
21:10;29:11;35:19;
46:9,19
**statements (2)**
49:9;50:21
**states (5)**
11:17;17:24;21:12;
28:4;63:3
**status (1)**
62:3
**Steeple (1)**
17:25
**stemming (1)**
55:20
**step (1)**
54:15
**Stephen (3)**
5:5;17:11,15
**Steve (3)**
31:16;32:14;47:18
**Steven (1)**
50:20
**still (4)**
54:24;59:13;61:10;
63:3
**stock (2)**
15:9;32:3
**Stonehill (1)**
32:12
**stop (5)**
15:21;16:8,8;27:7;
50:14
**Street (13)**
13:5,23,25;17:20;
20:16,23;22:15;31:12;
34:21;38:22;39:3;49:7;
52:20
**strong (1)**
44:18
**structure (1)**
11:13
**stuff (3)**
22:14,14;31:4
**subject (1)**
12:5;56:2
**submit (4)**
27:24;57:25;61:5;
65:6
**submitted (2)**
55:4,15
**submitting (1)**

68:1
**subro (1)**
25:20
**subrogation (2)**
62:5,7
**subsequently (1)**
34:14
**subsidiary (1)**
42:2
**substantively (1)**
60:13
**sufficient (1)**
48:24
**suggest (2)**
38:24;60:6
**suggestion (2)**
54:20;66:12
**sum (1)**
36:4
**SunTrust (1)**
35:23
**superior (1)**
30:18
**support (4)**
35:6;56:17;61:2;
65:23
**supported (1)**
56:12
**supporting (3)**
56:17;59:2;67:1
**supports (1)**
61:1
**supposed (1)**
15:2
**sure (20)**
6:10;12:23;13:15,23;
14:9,18,20;24:17;
29:13;36:21;37:10,18;
39:21;42:9;49:15,21;
53:22;55:10;64:2;
68:14
**surfaced (1)**
65:25
**survivor (1)**
49:12
**survivors (2)**
8:14;38:19
**suspect (1)**
20:18
**system (2)**
52:6;53:16

**T**

**talk (6)**
13:7,8;24:22;38:10;
47:22;60:9
**talked (7)**
29:23;30:15,17;
38:13,13,14;57:8
**talking (9)**
34:25;40:2,4;43:8;
47:25;51:22,23;63:16;

66:21
**talks (3)**
11:10,10,11
**TCC (9)**
12:18;13:17;15:8,11,
16;34:11;60:2,5,15
**team (2)**
31:17;42:24
**technical (1)**
59:7;60:21;67:12
**technologies (1)**
38:11
**technology (3)**
35:22,24,25
**Ted (2)**
55:13;65:3
**teleconference (1)**
60:11
**telephonic (4)**
38:10;62:21,25;63:5
**tells (1)**
4:17
**ten (5)**
16:10;21:11;37:25;
38:1;47:10
**tens (1)**
20:6
**tentative (2)**
66:16,16
**term (2)**
40:9;49:3
**terminology (1)**
10:15
**terms (6)**
12:3;40:5;41:4,18,
24;51:2
**terrible (2)**
20:14;60:22
**testimony (2)**
56:1;60:8
**texting (2)**
35:24;38:11
**thankful (1)**
10:3
**theories (1)**
14:16
**therefore (1)**
25:23
**there'll (1)**
65:12
**there're (1)**
32:3
**thinking (1)**
24:18
**third (1)**
30:4
**third-party (1)**
31:2
**thirteen (1)**
34:9
**thirty (1)**
6:18
**thorough (1)**

Case: 19-30088    Doc# 7177    Filed: 05/13/20    Entered: 05/13/20 15:28:37    Page 80
of 82

29:21
**though (3)**
57:16;61:11;66:12
**thought (7)**
4:24;21:4;41:10,13,
14;48:3;62:22
**thoughts (1)**
49:13
**thousands (2)**
20:7;38:12
**three (2)**
7:20;29:8
**Thursday (1)**
68:12
**ticking (1)**
54:23
**tight (4)**
55:18;57:17,20;68:5
**time-consuming (1)**
24:18
**times (4)**
8:5;14:11;22:15;
35:13;38:2;39:3
**timing (2)**
57:17;64:21
**today (12)**
4:7;6:7;17:7;45:1;
56:22;58:11,25;59:14;
62:8,23;66:13;67:12
**together (3)**
32:25;38:13;50:3
**told (3)**
30:21;33:5;51:4
**tolerated (1)**
26:6
**Tom (3)**
32:8;62:15,16
**tomorrow (6)**
22:16;56:22;58:11,
25;66:13;68:7
**took (3)**
17:25;18:2;67:21
**top (2)**
25:10;56:20
**tort (1)**
47:3
**TOSDAL (10)**
62:15,16,18,22;63:7,
13,23;64:2,4,12
**total (3)**
5:20;6:2;47:9
**touched (1)**
12:4
**toward (2)**
54:15;65:9
**towards (2)**
12:25;54:15
**town (8)**
22:4;24:9;30:11;
34:5;37:25;38:10,11;
52:16
**tracking (1)**
68:13

**traditional (1)**
40:14
**transactions (1)**
35:24
**transcript (3)**
22:6;24:8;34:12
**transcription (1)**
22:6
**transmission (1)**
29:11
**transparency (1)**
12:23
**treat (1)**
57:17
**tremendous (1)**
25:18
**trial (2)**
58:6;63:21
**tried (5)**
29:9;36:9;37:13,20;
55:23
**troubling (3)**
12:8,9,10
**true (4)**
23:13;27:12,16;
30:13
**trust (4)**
12:24;15:9;67:25;
68:17
**trusts (2)**
31:3;49:22
**truth (1)**
31:20
**try (12)**
8:9;39:3;45:3;50:21;
53:1,19;57:11,19;
62:23;68:5,10,11
**trying (8)**
8:5;9:19;11:19;15:5;
38:24;39:4;64:5;66:13
**Tsekerides (21)**
55:9,11,12,13,13,18;
56:6,14;57:5;58:24;
59:19;60:3;62:14;65:3,
3,10,15;66:20;67:5,8,
14
**TUESDAY (1)**
4:1
**turn (2)**
20:20;28:23
**twelve (2)**
52:5;55:19
**twenty (1)**
34:7
**twenty- (1)**
23:23
**twenty-five (1)**
30:14;34:8
**two (12)**
4:11;7:20;15:1,7;
18:5;27:11;32:8,8;
45:15;49:25;50:4;59:3
**typical (1)**

40:4
**typically (1)**
40:8

**U**

**Um-hum (1)**
63:23
**uncertain (1)**
63:24
**uncertainties (1)**
29:23
**under (17)**
4:5;11:5;18:11;19:3;
28:6;29:16,17,25;31:9;
33:5;37:17,22;39:6;
42:4,10;51:5;54:21
**undermines (1)**
26:4
**underscore (1)**
66:16
**understatement (1)**
43:17
**understood (12)**
11:11,15,20;12:19;
14:23,24;16:24;17:6,
10;45:23;67:5,8
**undisclosed (1)**
20:1
**undoubtedly (1)**
60:21
**unduly (1)**
54:2
**Unfortunately (4)**
10:8;12:2;17:21;
22:22
**UNIDENTIFIED (12)**
47:11,14,16,21;
51:19;59:16,23;60:6;
66:18;67:18,21;68:20
**unless (5)**
54:23;61:2,5;63:9;
67:16
**up (37)**
4:9,15;6:18;7:2,6;
8:2,10;12:4;14:15;
16:23;19:6;20:17;
22:11,19;23:18;25:18,
20,21;29:3;31:8;32:21;
34:16;35:3,12;36:4,6;
38:21;46:23;48:5;
52:14;64:1;65:18;67:1,
16,18;68:6,9
**update (3)**
30:11;38:6,7
**upload (1)**
68:2
**upon (4)**
9:12;41:3;49:23;
60:24
**urge (1)**
54:6
**USC (2)**

29:16,17
**use (6)**
19:8;26:2;35:24;
52:14;60:17;67:4
**used (2)**
46:3;52:12
**using (1)**
4:8
**usually (1)**
56:18

**V**

**validate (1)**
23:4
**verification (1)**
31:2
**verify (1)**
5:1
**version (1)**
39:10
**versus (2)**
11:13;28:17
**Viara (1)**
11:18
**vice (4)**
26:23;27:19,25;
28:21
**victim (5)**
18:19;25:25;49:18,
22;67:25
**victims (22)**
12:16,17,24;15:3,15;
18:14,14;19:14;20:1;
25:6;35:10;40:19,21,
21;44:19;46:22;47:2;
49:4,23;50:1,7,8
**victims' (1)**
18:3
**video (9)**
4:8,10;6:12;9:1;
60:11;62:23,24;63:6;
68:10
**videos (1)**
13:3
**view (2)**
31:11;59:8
**violation (2)**
10:10,11
**violations (3)**
8:24;10:20,20
**virus (1)**
62:20
**vista (1)**
20:17
**vital (1)**
54:14
**voiced (1)**
15:7
**volunteered (1)**
4:9
**vote (9)**
20:15,16;23:16,18;

26:3;39:4;50:3;53:9,10
**voted (2)**
53:8,11
**voter (1)**
23:11
**votes (9)**
23:4,7,9,9;29:10,15;
35:5;54:7,24
**voting (2)**
47:6;49:23

**W**

**Wagner (1)**
32:9
**wait (4)**
4:16,18;47:19;51:22
**waive (4)**
22:16;23:2,4;65:8
**waiver (3)**
23:2,10;54:5
**waivers (3)**
18:10;21:14;54:1
**Wall (3)**
13:5,23,25;17:20;
20:16,23;22:15;31:12;
34:21;38:22;39:3;49:7;
52:20
**wants (3)**
39:6;45:7;47:10
**warned (1)**
30:23
**watch (3)**
30:25;68:14,14
**watching (1)**
31:4
**Watts (94)**
5:6,7;7:2,7;8:19;9:2;
10:3;11:4;12:10,14;
13:3,6;14:6,22;15:13,
16,20;16:23;17:19,23,
24;18:24;19:13,21,25;
21:7,10;22:1,21;23:3;
24:11,15,21;25:7;
26:16,18,23,24;27:3,8,
10,13,16,21;28:1,6,12,
13,15,18,25;29:4;30:3,
5,6;31:24;32:1,15;
33:8,11,14,16,21,23;
34:2,5;35:17;36:9,15,
21,24;37:2,4;39:6,16,
18;40:20,22;42:7,17,
19;43:1,18;44:5,22;
45:8;47:1;51:1,10,25;
52:2,21;53:6,18
**Watts' (8)**
13:19;24:3;26:9;
41:24;43:25;48:20;
54:4,12
**way (17)**
18:17;20:2;24:19;
26:10;32:23;37:11;
40:3,8;41:2;43:18;

Case: 19-30088    Doc# 7177    Filed: 05/13/20    Entered: 05/13/20 15:28:37    Page 81
of 82

49:20;50:9;51:21;
58:24;60:23;64:4,8
**ways (1)**
57:11
**website (2)**
34:17;37:7
**week (1)**
24:13
**weekly (4)**
38:10;51:11,17,24
**weeks (1)**
22:10
**weigh (1)**
10:22
**weight (1)**
29:18
**Weil (1)**
55:14
**Welcome (2)**
4:4;12:23
**well-being (1)**
20:6
**Wells (1)**
35:23
**what's (5)**
20:9;37:1;38:4;55:6;
66:5
**Whereupon (1)**
68:21
**whole (5)**
19:13;20:17;25:22;
48:25;53:1
**who's (5)**
45:11;59:7,13;62:7;
66:4
**wide (1)**
12:3
**wildfire (2)**
8:14;49:12
**willing (3)**
38:1;53:18;54:18
**wiped (1)**
22:3
**wish (3)**
4:4;48:16;62:13
**within (1)**
35:16
**without (2)**
37:8;53:23
**witness (3)**
56:1,19;59:4
**witnesses (3)**
57:24;66:5;67:1
**woke (1)**
36:6
**woman (1)**
48:4
**words (2)**
15:5;67:3
**work (3)**
53:20;55:19;60:12
**worked (3)**
15:11;31:14,16

**working (2)**
12:25;65:9
**workings (1)**
12:7
**world (1)**
36:14
**writing (1)**
23:15
**written (5)**
9:1;13:4;33:25;
48:23;59:9
**wrong (2)**
19:5,7
**wrote (4)**
17:24;36:1;48:1,9

**Y**

**year (2)**
18:9;51:14
**yesterday (5)**
13:6;17:21;38:23;
52:20;55:15
**York (3)**
22:15;39:2;64:9

**Z**

**Zelin (1)**
32:14

**1**

**1 (2)**
46:20;52:5
**1.46 (1)**
32:3
**1.7 (12)**
18:11,21;19:3,7,7;
37:10,12,22,24;38:3;
39:7;53:20
**1.7b (1)**
10:21
**100-million- (1)**
11:11
**1054 (1)**
49:14
**11 (3)**
29:16,17;48:12
**1125b (3)**
8:25;29:8,16
**1126 (2)**
29:18,25
**1126c (1)**
8:25
**11th (3)**
58:17,17;63:22
**12 (2)**
4:1;35:13
**13a (1)**
35:13
**13th (1)**
34:13

**14 (1)**
22:8
**15 (2)**
21:23;60:13
**15th (11)**
34:15;54:25;55:20,
21;57:22;58:18,22;
60:18;62:2;66:17,24
**16,000 (2)**
18:12;53:10
**17 (3)**
21:25;24:3;35:13
**17th (1)**
35:12
**18,000 (1)**
46:22
**18th (2)**
57:7,22
**19th (8)**
57:13;62:4,21,24;
64:25;65:4;66:8;67:2
**1st (1)**
34:16

**2**

**20 (1)**
45:14
**200 (1)**
52:16
**2019 (14)**
8:24;9:12;10:2,10,
15,16,20;11:25;12:12;
30:13;35:8;37:14,17,
19
**2020 (3)**
4:1;24:11;29:12
**22 (2)**
60:16,17
**22nd (5)**
34:15;55:21;56:4;
58:4;64:23
**26c (1)**
16:16
**27th (1)**
58:9
**28 (1)**
24:5
**2a (1)**
35:7
**2nd (5)**
21:11;22:21;24:11;
34:15,16

**3**

**3 (2)**
35:14;46:20
**3- (2)**
12:13;38:10
**30 (1)**
35:14
**300 (3)**

11:22;12:11;52:16
**30th (1)**
46:15
**31st (1)**
29:12

**4**

**4 (3)**
35:7;54:25;65:12
**4,000 (1)**
38:10
**4,900 (1)**
46:20
**4:01 (1)**
65:13
**40,000 (1)**
46:21
**416 (1)**
29:19

**5**

**5/8/20 (1)**
22:1
**500 (1)**
11:23;12:11,13

**6**

**6340 (1)**
35:12
**6340-1 (1)**
35:14
**6th (1)**
35:7

**7**

**7129-22 (2)**
22:1;24:3
**7129-27 (1)**
52:6
**7129-28 (1)**
24:4
**78 (2)**
22:5,8

**8**

**8th (4)**
11:7;30:13;34:6;
46:15

Case: 19-30088   Doc# 7177   Filed: 05/13/20   Entered: 05/13/20 15:28:37   Page 82
of 82