Jennifer Machlin Cecil (SBN#294806)
Jcecil@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

David Neier (*admitted pro hac vice*)
dneier@winston.com
WINSTON & STRAWN LLP
200 Park Avenue, 40th Floor
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Attorneys for Global Ampersand LLC*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| In re: | Bankruptcy Case No. 19 - 30088 (DM) |
|---|---|
| **PG&E CORPORATION**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors. | Chapter 11<br>(Lead Case) *(Jointly Administered)*<br><br>**OBJECTION OF CLAIMANT GLOBAL AMPERSAND LLC TO DEBTORS' PROPOSED CURE AMOUNTS** |
| ☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | **Hearing Date:** May 27, 2020<br>**Time:** 10:00 a.m. (P.T.)<br><br>Courtroom: Hon. Dennis Montali<br>450 Golden Gate Avenue<br>16th Floor, Courtroom 17<br>San Francisco, CA 94102<br><br>**Objections Due:** May 15, 2020, 4:00 (P.T.) |

Global Ampersand LLC ("Global") hereby submits this objection (the "Objection") to the Debtors' proposed cure amounts regarding their two agreements with Global as listed in the Debtors' *Notice of Filing of Plan Supplement in Connection with the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* (the "Plan Supplement") [Docket No. 7037], and respectfully states as follows:[1]

I. **BACKGROUND**

Global Ampersand is a small power producer that supplies renewable power pursuant to power purchase agreements (the "PPAs") to the Utility from two biomass facilities located in Chowchilla and El Nido, California. Pursuant to the PPAs, Global is restricted from selling power from these facilities to anyone other than the Utility.

On January 25, 2019, Global received a single prepayment from the Utility of $1,572,460.33 (the "Prepayment") for power that has already been supplied, but prior to the date when payment for that power would be due under the PPAs, and for power to be supplied during the remaining days of January 2019. At the end of January, based on the power actually supplied, the amount that should have been paid to Global was $1,587,658.08. In other words, the Debtors underpaid Global by $15,197.75.[2]

Subsequent to the Petition Date, the Debtors decided to "allocate" the prepetition January Prepayment between: (i) the El Nido and Chowchilla facilities; and (ii) prepetition and postpetition

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan Supplement. On July 31, 2019, Global filed, and the Court granted, a motion seeking authorization to file under seal exhibits to be submitted with Global's response to the Debtors' objection to Global's claim under 11 U.S.C. § 503(b)(9) (the "Exhibits"). Docket Nos. 3283, 3287. Global submits those same Exhibits in support of the Objection. All citations and references to any exhibits in this Objection refer to the Exhibits that are already filed under seal with this Court. *See* Docket No. 3287. Global refers the Court to those sealed Exhibits for a full and complete statement of their terms. *See* Docket No. 3287.

[2] *See* Exhibit 2 – PG&E Email dated February 26, 2019 in which Debtors calculate the January 2019 net position of $125,460.82 (due to Global) for El Nido and ($110,263.07) for Chowchilla. According to the Debtors, Global was due $15,197.75, but instead the Debtors stated that they would reduce Global's postpetition February payment by applying the Prepayment amounts of $110,263.07 and $67,011.78.

power supplied to the Utility. As a result of the Debtors' allocation method, the Debtors determined that they should deduct $177,274.85 from amounts paid to be paid postpetition to Global for February electricity. In other words, subsequent to the Petition Date, the Utility determined to use the prepetition Prepayment to cover postpetition deliveries, and to "allocate" the prepetition Prepayment between the Chowchilla and El Nido facilities. This increased Global's prepetition claim from $15,197.75 to $192,472.60. Below is a chart that was prepared by the Debtors illustrating the results of Debtors' "allocation" method:

| El Nido | Total Amount | 1/1/19 - 1/28/19 | 1/29/19 - 1/31/19 |
|---|---|---|---|
| 2019 January Actuals | $817,915.84 | $817,915.84 | $0.00 |
| January 2019 Pre-payment | $692,455.02 | $625,443.24 | $67,011.78 |
| January 2019 Net Position | $125,460.82 | $192,472.60 | ($67,011.78) |

| Chowchilla | Total Amount | 1/1/19 - 1/28/19 | 1/29/19 - 1/31/19 |
|---|---|---|---|
| 2019 January Actuals | $769,742.24 | $679,567.69 | $90,174.54 |
| January 2019 Pre-payment | $880,005.31 | $794,843.51 | $85,161.80 |
| January 2019 Net Position | ($110,263.07) | ($115,275.82) | $5,012.74 |

*See* Exhibit 2.

Although nothing in the PPAs allows the Utility to allocate payments among the facilities with different PPAs in this manner, as a result of the "allocation" the Utility made "adjustments" to its postpetition February payments to Global; $110,263.07[3] was attributed to the Chowchilla January prepetition Prepayment and $67,011.78[4] was attributed to the El Nido prepetition Prepayment. As a result, even though Global had received the Prepayment, Global's net position was transformed into a

---

[3] *See* Exhibit 3 – Chowchilla February 2019 CP invoice reconciliation of the Chowchilla facility prepared by Debtors. The reconciliation shows that Debtors deducted $110,263.07 from the February postpetition payment as an adjustment for the prepetition January 2019 period. See Summary Tab, row 26, column E.

[4] *See* Exhibit 4 El Nido February 2019 CP invoice reconciliation of the El Nido facility prepared by Debtors. The reconciliation shows that Debtors deducted $67,011.78 from the February postpetition payment as an adjustment for prepetition January 2019 period. See Summary Tab, row 26, column E.

prepetition amount owed to it of $192,472.60 for electricity delivered prepetition to Debtors from the El Nido facility.[5]

According to Debtors' own calculations, Global delivered $817,915.84 worth of electricity during the period from January 1, 2019 to January 28, 2019, but the Debtors only paid Global $625,443.24 for that same electricity, leaving a net balance of $192,472.60.[6] As a result Global filed a timely 503(b)(9) claim in order to recover full payment for electricity delivered twenty days prior to Petition Date. *See* Claim No. 1842.

On May 1, 2020, the Debtors filed the Plan Supplement indicating that they intend to assume the PPAs with Global. Docket No. 7037 at 722. The Debtors propose the following cure amounts under the PPAs: (1) $162,987.75 for Contract ID "EPPEMCL_33R016"; and (2) $0 for Contract ID "EPPEMCL_33R017." *Id.*

## II. OBJECTION

Sections 365(b)(1)(A) and (B) of the Bankruptcy Code require a debtor to "cure" defaults and "compensate" the non-debtor party to an executory contract as a condition to the debtor-in-possession's assumption of that executory contract. *See* 11 U.S.C. § 365(b)(1)(A)-(B); *see also Arriva Pharm. Inc. v. Lezdey (In re Arriva Pharm., Inc.)*, 456 B.R. 419, 423 (Bankr. N.D. Cal. 2011) ("Bankruptcy Code § 365(b) provides that a debtor in possession may not assume an executory contract if there has been a default, unless such default is cured at the time of assumption.") (internal citations omitted).

---

[5] *See* Exhibit 2 email dated February 26, 2019 from PG&E employee Jarreau Tuiasosopo showing the net amount due for electricity delivered pre-petition by El Nido of $192,472.60.

[6] *See* Exhibit 1 – El Nido January 2019 CP invoice reconciliation of the El Nido facility prepared by Debtors. The reconciliation shows that the Monthly TOD Payment for electricity delivered from 1/1/19 to 1/28/19 should have been $817,915.84 (See Summary Tab, line 21, column F). The Debtors actually paid only $625,443.24 for this electricity (*See* Summary Tab, line 27, column F).

4

In the first PG&E bankruptcy, the District Court for the Northern District of California affirmed the decision of this Court that electricity is a "good". *See Puget Sound Energy, Inc. v. Pacific Gas and Electric Company (In re Pacific Gas and Electric Company)*, 271 B.R. 626, 640 (N.D. Cal. 2002) (citing numerous cases in support of conclusion that electricity is a good). The conclusion of the District Court that electricity is a good was reached at the request of PG&E. PG&E is therefore estopped by both *res judicata* and judicial estoppel from arguing otherwise. Because electricity is a good, Global has an administrative expense claim for all unpaid power delivered to the Utility during the § 503(b)(9) period, from January 9 to the Petition Date, January 29, 2019.

The PPAs between Global and the Utility provide that a delivery constitutes all electricity produced from the El Nido facility as measured in megawatt hours at the revenue meter. El Nido's revenue meter is located at the El Nido facility. Pursuant to the PPAs, immediately after the electricity passes through the meter, the electricity is delivered to the Utility. That is consistent with the affirmance by the District Court of this Court's ruling in the first PG&E bankruptcy regarding when delivery occurs. According to the District Court:

> In most cases this will mean the electricity must be delivered to the customer's premises, to the point where it is metered, although the many variations in electrical systems prevent our drawing a 'bright line' at a particular point." *Pierce v. Pacific Gas & Electric*, 166 Cal.App.3d 68, 84, 212 Cal.Rptr. 283 (Cal. Ct. App.1 985); *see also Fong v. Pacific Gas & Electric*, 199 Cal.App.3d 30, 38, 245 Cal.Rptr. 436 (Cal. Ct. App. 1988) ("[E]lectricity does not become a product once it is delivered to plaintiffs' premises, i.e., the moment the wires cross plaintiffs' property line. Instead, the test is whether the electricity has been metered.") (citation omitted). The electricity at issue here clearly meets that standard. It passed from PG&E's lines to Puget's, was metered, was available to Puget in a voltage marketable from one power company to another and was immediately usable by Puget. It would be a product for strict liability purposes. It is by extension a good.

*In re Pacific Gas and Electric Company,* 271 B.R. at 639.

Thus, pursuant to the PPAs and the District Court's affirmance of this Court's ruling, Global delivered $817,915.84 worth of electricity to Debtors in January during the prepetition period. In addition, under U.S. GAAP, payments for goods are generally applied in the order that the goods are

delivered and the time of delivery can be readily ascertained by viewing the meter data.[7] Any payment from PG&E for January electricity should have been allocated in the order that the electricity was delivered. *See In re Plastech Engineered Products, Inc.*, 397 B.R. 828 (Bankr. E.D. Mich. 2008) (granting administrative priority status for the readily-ascertainable value of goods received). Therefore, any payment shortfall for electricity delivered from January 1 to January 28, 2019 should have been allocated to electricity delivered at the end of the prepetition period, not over the entire period.

The Utility paid $625,962 for January electricity deliveries for January 1 to January 28, 2019. During that time period, Global actually delivered $817,915.84 worth of electricity to Debtors. The Debtors' payment covered approximately the first twenty-one days of electricity production for the month of January.[8] Therefore, the shortage of $192,472.60 is properly allocated to the period from January 9 to January 28, 2019. In an email dated February 26, 2019, the Utility confirmed the shortage in the §503(b)(9) period prior to the Petition Date of $192,472.60. *See* Ex. 2.

Accordingly, based on the PPAs, applicable precedent, and GAAP, the amount properly allocated to the twenty days prior to the Petition Date and should be paid under § 503(b)(9) is $192,472.60. The Debtors confirmed as such via email.[9] As the Debtors' email makes clear, had Debtors properly allocated the Prepayment, Global's net prepetition amount due would have been only $15,197.75. Instead, subsequent to the Petition Date, the Debtors deducted $110,263.07 and $67,011.78 from Global's postpetition February payment, thereby increasing the amount due to Global

---

[7] *See* Exhibit 1, Imbalance Energy tab, Column I. Column I shows the amount of "delivered" electricity as measured by the "Revenue Meter" for each hour from January 1 to January 31, 2019.

[8] Monthly TOD Payment as calculated for the period of 1/1/19 to 1/28/19 was $817,915.84 or $29,211.28 per day. Payment of $625,443.24 divided by $29,211.28 represents 21.4 days.

[9] *See* Exhibit 2.

Case: 19-30088    Doc# 7191    Filed: 05/14/20    Entered: 05/14/20 12:31:18    Page 6 of 8

to $192,472.60. Therefore, the amount the Debtors must pay to cure the defaults under the PPAs equals $192,472.60, not $162,987.75 as the Debtors indicate in the Plan Supplement.

In sum, the Debtors cannot assume the PPAs until they pay Global the full $192,472.60 that is required to cure the defaults under the PPAs and the Court should find that their proposed cure amount of $162,987.75 is insufficient.

## III. CONCLUSION

For the foregoing reasons, the Court should: (i) sustain the Objection; (ii) find that the Debtors' proposed cure amount of $162,987.75 is inadequate; (iii) require a cure payment of $192,472.60 as a condition to the Debtors assuming the PPAs; and (iv) grant such other and further relief as the Court may deem just and appropriate.

Dated: May 14, 2020　　　　　　　　　　　　WINSTON & STRAWN LLP

　　　　　　　　　　　　　　　　　　　　　　By:　/s/ Jennifer Machlin Cecil
　　　　　　　　　　　　　　　　　　　　　　　　Jennifer Machlin Cecil (SBN#294806)
　　　　　　　　　　　　　　　　　　　　　　　　David Neier (*admitted pro hac vice*)

　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Global Ampersand LLC*

**Exhibit Nos. 1-4**
(Filed Under Seal. *See* Docket No. 3287)