Thomas Tosdal SBN 67834
Tosdal Law Firm APC
777 S. Highway 101, Ste. 215
Solana Beach, CA 92075
Tel.: (858) 704-4709
Email: tom@tosdallaw.com
Fax: (888) 740-3859

Michael S. Feinberg SBN 81867
41911 Fifth Street, Ste. 300
Temecula, CA 92590
Tel.: (951) 698-9900
Email: feinberg@feinbergfitchlaw.com
Fax: (951) 698-9909

Angela Jae Chun SBN 248571
Law Office of Angela Jae Chun
777 S. Highway 101, Ste. 215
Solana Beach, CA 92075
Tel.: (619) 719-5757
Email: ajc@chun.law

David S. Casey, Jr. SBN 60768
James Davis SBN 301636
Casey Gerry Schenk Francavilla
Blatt & Penfield, LLP
110 Laurel St.
San Diego, CA 92101
Tel: (619) 238-1811
Fax: (619) 544-9232
Email: dcasey@cglaw.com
Email: jdavis@cglaw.com

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In Re: | Bankr. Case No. 19-30088-DM |
| PG&E CORPORATION | **GARRISON OBJECTION TO PROPOSED REORGANIZATION PLAN** |
| and | Date: May 27, 2020 |
| PACIFIC GAS & ELECTRIC COMPANY, | Time: 10:00 a.m. |
| Debtors. | Place: U.S. Bankruptcy Court Courtroom 17, 16th Floor San Francisco, CA 94102 |
| ☐ Affects PG&E Corporation ☐ Affects Pacific Gas and Electric Company ☒ Affects both Debtors | |
| *All papers shall be filed in the Lead Case No. 19-30088 (DM)* | |

## 1. Objection to the Proposed Plan

Patricia Garrison, a Fire Victim claimant, objects to the Debtor's and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization (the "Proposed Plan") under 11 U.S.C. sections 1122(a), 1123(a)(4), 1129(a)(1) and 1129(a)(3) on the grounds the Proposed Plan puts substantially similar claims in separate classes without justification and has not been proposed in good faith. In particular, no legitimate reason exists for the substantially similar claims of Fire Victims, Subrogation claimants, and Public Entities to be placed in separate classes, as all claims are disputed, contingent, and unliquidated claims for monetary damages arising from the same PG&E fires. The Proposed Plan does not deal with creditors such as Ms. Garrison in a "fundamentally fair manner," as courts have construed the "good faith" requirement in 11 U.S.C. section 1129(a)(3). As such, each of these three sets of claims should be classified in the same class, and all claimants in the class must be provided "the same treatment" in terms of proportion of cash and stock relative to the various funds allocated to them as required by 11 U.S.C. section 1123(a)(4). This objection does not challenge the total amounts allowed to the Public Entities, Subrogation claimants, and Fire Victims. Rather, this objection challenges the separate classifications resulting in less favorable treatment to Fire Victim claimants because they are forced to take stock and are therefore exposed to risk not shared by similar classes.

## 2. Name and Address of Objector

**Patricia Garrison**
545 Wirths Way
Paradise, California 95969

**3. Nature of Claim of Patricia Garrison and Right to Object to the Proposed Plan**

Patricia Garrison is a long-time resident of Paradise, California. Now retired, Ms. Garrison spent her professional life as an educator, most recently serving as principal of an elementary school in Oroville, California. On November 8, 2018, the Camp Fire destroyed her home and possessions as well as the entire Town of Paradise. Twenty-five members of her extended family lost their homes and possessions in the fire. Ms. Garrison and her husband were away from Paradise when the fire occurred. During the fire, their daughter called them to say "good-bye," as she was trapped in the flames and believed she was going to die. Fortunately, their daughter made it out of the flames alive. Presently, Ms. Garrison and her husband live in a 400 sq. ft. apartment in a barn in Paradise, far smaller than the 2,100 sq. ft. house they formerly lived in.

Ms. Garrison timely filed a proof of claim, numbered ARM#!27397. Ms. Garrison, as a party in interest, has standing to object to the Proposed Plan. (11 U.S.C. section 1324(a).)

**4. The Claims are Substantially Similar**

The Proposed Plan itself establishes the substantial similarity of the claims. "Fires" is defined as "the fires that occurred in Northern California, listed on Exhibit A annexed hereto." (Proposed Plan 1.86.) A "Fire Claim means any Claim against the Debtors in any way arising out of the Fires…" (Proposed Plan 1.78.)

A "Public Entities Wildfire Claim" is any Fire Claim against the Debtors made in complaints by certain public entities. (Proposed Plan 1.167; 1.174.) A "Subrogation Wildfire Claim" is any Fire Claim (except 2015 Butte Fire claim) that arises from subrogation, assignment, or otherwise in connection with payments made or to be made by an insurer to insured tort victims. (Proposed Plan 1.201.) And a "Fire Victim Claim" is any

Fire Claim that is not a Public Entities Wildfire Claim, Subrogation Wildfire Claim, or Subrogation Butte Fire Claim. (Proposed Plan 1.79.)

All of these claims are disputed, contingent, and unliquidated, and arise from damages arising from the same PG&E fires. The Public Utilities claims are based in statutory and common law tort, as are the Fire Victim claims. The Subrogation claims are derivative of the Public Utilities and Fire Victim claims in the sense that insurers are subrogated to their insureds' claims to the extent the insurers make payments to their insureds for fire losses. The claims are substantially similar in legal nature, character and effect. In Re Dow Corning Corporation, 244 B.R. 634, 644, 658 (Bk E.D. Mich. 1999), affirmed 255 B.R. 445 (E.D. Mich. 2000), affirmed in relevant part 280 F. 3d 648 (2002).

The claims are substantially similar to each other.

**5. The Proposed Plan Separately Classifies the Claims Into Six Classes**

A reorganization plan must place substantially similar claims in the same class absent "a legitimate business or economic reason." In re Barakat, 99 F.3d 1520, 1523, 1528-9 (9th Cir. 1996). Yet the Proposed Plan creates six separate classes for these claims, with three claims – the Public Entities Wildfire Claims, the Subrogation Wildfire Claims, and Fire Victims Claims – that are substantially similar:

    Class 5A-I    HoldCo Public Entities Wildfire Claims

    Class 5A-II    HoldCo Subrogation Wildfire Claims

    Class 5A-III    HoldCo Fire Victim Claims

    Class 5B-I    Utility Public Entities Wildfire Claims

    Class 5B-II    Utility Subrogation Wildfire Claims

    Class 5B-III    Utility Fire Victim Claims

(Proposed Plan 3.2.)

The Public Entities classes consist of 19 public entity claimants. (Disclosure Statement p. 9 n. 1, Doc. 6353.) But not all public entities claiming against PG&E are included; some public entities are in the Fire Victims classes. The Subrogation classes include all entities claiming insurance subrogation rights, either as insurers making payments to fire victims or purchasers of subrogation claims on the secondary market. The exact number of Subrogation claimants is not known to the undersigned, but The Ad Hoc Group of Subrogation Claim Holders consists of 120 entities which hold about 85% of all subrogation claims. (Sixth Amended Verified Statement of the Ad Hoc Group of Subrogation Claim Holders, Doc. 5907.) By definition, the Fire Victims classes include all other claimants of every description for fire damages – public entities, individuals, businesses, farmers, and non-profits. There are over 70,000 Fire Victim claims on file.

**6. The Classes Are Not Treated the Same in Terms of Proportion of Cash and Stock**

The Proposed Plan treats the HoldCo and Utility claims the same for each set of proposed classes. The Public Entities claims are allowed one billion dollars cash and no stock, payable on the effective date of the Proposed Plan. (Proposed Plan 4.5(a), 4.24.) The Subrogation Wildfire Claims are allowed $11 billion dollars cash and no stock, payable on the effective date of the Proposed Plan. (Proposed Plan 4.6(a), 4.25.)

The Fire Victims get far less favorable treatment both in terms of proportion of cash and times of payment. The Fire Victims are allowed: (a) $5.4 billion cash payable on the effective date; (b) a cash payment of $650 million on January 15, 2021, payable under a Tax Benefits Payment Agreement; (c) a cash payment of $700 million on January 15, 2022, payable under a Tax Benefits Payment Agreement; and (d) $6.75 billion in new HoldCo

stock, valued by a formula rather than market value at the time of transfer. (Proposed Plan 1.6, 4.7, 4.26.) The stock is problematical, because after transfer to the Fire Victims Trust it will be subject to devaluation by market conditions, early sale of stock by existing investors, and the prospect of another catastrophic PG&E fire in the coming fire season.

If all claims were in the same class, the less favorable treatment of Fire Victims claims compared to Public Entities and Subrogation claims would not pass muster under 11 U.S.C. section 1123(a)(4). In order to comply with section 1123(a)(4), all claimants would need to receive the same proportion of cash and stock relative to the total amounts allowed them, to be paid at the same time.

7. **No Legitimate Reason Exists For Separately Classifying The Claims**

As noted, a reorganization plan cannot separately classify substantially similar claims absent "a legitimate business or economic reason." In re Barakat, 99 F.3d at 1528-9; accord In re Rexford Properties LLC, 558 B.R. 352, 363 (Bkrtcy. C.D. Cal. 2016) ("Ninth Circuit law requires a 'legitimate business or economic justification" for separate classification of substantially similar claims); see also In re Chateaugay, 89 F.3d 942, 949 (2d Cir. 1996) ("similar claims may be classified separately only for a legitimate reason.") To warrant having separate classification of similar claims, "the debtor must advance a legitimate reason supported by credible proof." Id.

The separate classification of Subrogation and Fire Victims makes no sense given that subrogation claims are derivative of and subordinate to the claims of their insureds as a matter of law. See In re Hamada, 291 F.3d 645, 649 (9th Cir. 2002); Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal.App.4th 296, 303 (1998) ("The right of subrogation is purely derivative.") And the separate treatment of Subrogation Claims with all cash as opposed

to cash and stock for Fire Victims lacks legitimacy because the apparent reason Subrogation is getting all cash is that the separate classification of Subrogation is a device for profit making by existing investors in PG&E. PG&E institutional investors stand to make billions of dollars in profit on the effective date of the Proposed Plan when the Fire Victims will be saddled with cash payments over two years and the risk of devalued stock. This chart reveals publicly available information about the holdings of members of the Subrogation AD Hoc Group who are also PG&E investors.

| Investor | PG&E holdings (largest) | Subrogation claim holdings |
|---|---|---|
| The Baupost Group LLC | 16,062,643 shares common stock | $6,779,029,346 |
| Sixth Street Partners LLC | 1,000,000 shares common stock $152,124,000 senior notes | $851,789,253 |
| Attestor Capital LLP | 7,488,514 shares common stock | $834,743,084 |
| Centerbridge Partners LP | $281,979,000 utility bonds 1,450,000 shares common stock | $208,703,491 |
| Strategic Value Partners LLC | $118,250,000 senior notes | $132,030,617 |
| Deutsche Bank Securities Inc. | 717,000 shares stock | $130,041,997 |
| Appollo Global Management LLC | $505,996,000 senior notes | $98,000,000 |
| Silver Point Capital LP | 24,937 common shares $287,937,630 utility bonds | $76,200,175 |
| Abrams Capital Management LP | 25,000,000 common shares | $72,302,208 |
| Owl Creek Asset Management L.P. | 7,282,840 common shares | $24,008,927 |
| Redwood Capital Management LLC | 12,333,752 common shares | $9,869,354 |
|  |  | **$9,216,718,452** |

Sources: Sixth Amended Verified Statement of Subrogation Claim Holders Pursuant to Bankruptcy Rule 2019 (Doc. 5907); Fifth Amended Verified Statement of Jones Day Pursuant to Rule of Bankruptcy Procedure 2019 (Doc. 5142); First Amended Verified Statement of Ad Hoc Committee of Holders of Trade Claims Pursuant to Bankruptcy Rule 2019 (Doc. 5060).

The purchase price of subrogation claims on the secondary market is not public information. However, a Wall Street Journal article published on September 13, 2019,

reported Baupost, a substantial investor in PG&E and the largest holder of subrogation claims, purchased subrogation claims at 30 to 35 cents on the dollar. (www.wsj.com/articles/klarmans-baupost-poised-to-cash-in-on-pg-e-insurance-bet-11568387840.) With purchase prices in this range, institutional investors stand to make billions of dollars in profits off this bankruptcy on the backs of fire victims, who are forced to take risky stock instead of cash.

No legitimate business reason exists for separately classifying the claims.

8. **The Classes Should Be Treated Fairly and Equally In Terms Of Proportion of Cash And Stock Allocations**

Courts have construed the "good faith" requirement in 11 U.S.C. section 1129(a)(3) to require reorganizations plans treat creditors "in a fundamentally fair manner." See In re Marshall, 298 B.R. 670, 675-76 (Bkrtcy. C.D. Cal. 2003) ("Part of the good faith analysis is that the plan must deal with the creditors in a fundamentally fair manner.") Ms. Garrison respectfully proposes that the reorganization plan comply with the "good faith" requirement by allocating cash and stock equally in proportion relative to the total amounts allowed the Public Entities, Subrogation Wildfire, and Fire Victims respectively, so the benefits of receiving cash and the risks in receiving proceeds from the sale of stock are shared mutually.

Rather than allocating $6.75 billion in stock for the Fire Victims – equaling 50% of the funds available to these claimants – fair treatment requires an equal allocation of stock and cash among the claims by the Public Entities, Subrogation Wildfire, and Fire Victims, with the percentage of stock arriving at approximately 26% to 27% for each of the three funds.

9. **Conclusion**

For the foregoing reasons, Ms. Garrison respectfully requests the Court make and enter an order denying confirmation of the Proposed Plan.

Dated: May 14, 2020                                             TOSDAL LAW FIRM APC

                                                                By: /s/ Tom Tosdal
                                                                THOMAS TOSDAL

Dated: May 14, 2020                                             CASEY GERRY SCHENK
                                                                FRANCAVILLA BLATT &
                                                                PENFIELD, LLP


                                                                By: /s/ James M. Davis
                                                                JAMES M. DAVIS


                                                                *Attorneys for Patricia Garrison*