1

1  MARK GORTON (SBN 99312)
   **BOUTIN JONES INC.**
2  555 Capitol Mall, Fifteenth Floor
   Sacramento, CA 95814
3  Telephone: (916) 321-4444
   Email: mgorton@boutinjones.com
4

5  LISA S. GAST *(pro hac vice)*
   **DUNCAN, WEINBERG, GENZER & PEMBROKE, P.C.**
6  1667 K Street NW, Suite 700
   Washington, DC 20006
7  Telephone: (202) 791-3601
   Email: lsg@dwgp.com
8

9  BRIAN DOYLE (SBN 112923)
   City Attorney
10 **CITY OF SANTA CLARA**
   1500 Warburton Avenue
11 Santa Clara, CA 95050
   (508) 615-2234
12 BDoyle@SantaClaraCA.gov

13
   *Attorney for Creditor and Party-in-Interest*
14 *CITY OF SANTA CLARA dba SILICON VALLEY POWER*

15              UNITED STATES BANKRUPTCY COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17              SAN FRANCISCO DIVISION

18 In re                                 ) Case Nos. 19-30088 DM (Lead Case)
                                          )           19-30089 DM
19 PG&E CORPORATION                       ) Chapter 11
   -and-                                  ) Jointly Administered
20 PACIFIC GAS AND ELECTRIC               )
   COMPANY,                               ) **DECLARATION OF STEVE HANCE IN**
21              Debtors.                  ) **SUPPORT OF OBJECTION TO CURE**
                                          ) **AMOUNT AND REQUEST FOR**
22 ☐ Affects PG&E Corporation             ) **ADEQUATE ASSURANCE OF FUTURE**
                                          ) **PERFORMANCE BY COUNTERPARTY**
23 ☐ Affects Pacific Gas and Electric Company ) **CITY OF SANTA CLARA DBA SILICON**
                                          ) **VALLEY POWER**
24 ☑ Affects both Debtors.                )
                                          ) Date:      May 27, 2020
25 * All papers shall be filed in the Lead Case ) Time:    10:00 a.m.
26 No. 19-30088 DM                        ) Courtroom:  17
                                          ) Place:      450 Golden Gate Ave., 16th Floor
27                                        )             San Francisco, CA 94102
28                                        ) Judge:      Hon. Dennis Montali

Case: 19-30088   Doc# 7208-1   Filed: 05/15/20   Entered: 05/15/20 08:11:26   Page 1 of 13

I, Steve Hance, declare as follows:

1.     My name is Steve Hance, and I am the Senior Electric Division Manager, Resources and Strategic Planning for the municipal electric utility, Silicon Valley Power ("SVP"), operated as a department of the City of Santa Clara, California ("Santa Clara").

2.     From 1984 to 1990, I was in the United States Navy Nuclear Power program and attended the Navy's Nuclear Power School in Orlando Florida, and prototype training in Balston Spa, New York.

3.     After leaving the US Navy, I earned a Bachelor of Science degree in Mechanical Engineering from California State University, Sacramento in 1994.

4.     Since joining Santa Clara in 1994, I have held a number of positions other than my current position. The prior positions I have held include Operations Planning Technician I, and II, Prescheduler, Senior Prescheduler, Power Trader, and Acting Electric Division Manager of Generation. Typical duties in these classifications revolve around optimally scheduling and bidding Santa Clara's portfolio of resources in California's competitive wholesale market. In addition to these duties, I commonly review California Independent System Operator ("CAISO") stakeholder initiatives to analyze the impact they may have on Santa Clara's fleet of resources, or Santa Clara's customers. Additional responsibilities over the years have included Resource Planning, long and short-term contract negotiation analysis including power purchase agreements for wind, solar, geothermal and hydroelectric resources, natural gas prepay agreements, electric transmission issues, renewable energy credits, energy storage, carbon allowances, resource adequacy capacity, and congestion revenue rights.

5.     With respect to the contract at issue, the Grizzly Development and Mokelumne Settlement Agreement between Pacific Gas and Electric Company ("PG&E") and Santa Clara, PG&E Rate Schedule FERC No. 248 ("GDMSA"), I am the person at Santa Clara responsible for administering this contract. The GDMSA is unique in the aspect that it existed prior to the creation of the CAISO in 1998, and as a result the contract was amended to conform to a number of modifications to the market structure in California. I have been directly involved in the contractual amendments to the GDMSA that have been made since 1998 allowing Santa Clara to continue to

1  receive the value associated with its rights under the GDMSA. In my role at Santa Clara, I have also

2  had overall direct responsibility to maximize Santa Clara's supply portfolio value, and in that role

3  have had significant experience in the various market dynamics within and outside the CAISO, and

4  energy related commodity markets in general.

5       6.      The statements in this declaration are based on my knowledge, information, or belief,

6  and I am authorized to make this declaration on behalf of Santa Clara.

7       7.      I have reviewed, or caused to be reviewed, Santa Clara's records and other relevant

8  information related to the GDMSA and Santa Clara's ownership of the Grizzly Hydroelectric Project

9  ("Grizzly"), including Santa Clara's records related to procurement, billing, revenues, budget and

10  other similar matters as well as documents and information related to PG&E I found to be relevant to

11  my statements in this declaration.

12       8.      I submit this declaration in support of Santa Clara's Objection to Cure Amount.

13                                    **Background**

14       9.      The GDMSA is a contract between PG&E and the City of Santa Clara, entered into

15  on March 8, 1990, and most recently filed by PG&E at the Federal Energy Regulatory Commission

16  ("FERC") as a stand-alone agreement in FERC Docket No. ER17-1752-000, effective

17  August 1, 2017. The Debtors' *Schedule of Executory Contracts etc. and Proposed Cure Amounts*

18  (the "Cure Notice", Dkt. No. 7037), filed on May 1, 2020, identified the GDMSA as an executory

19  contract that the Debtors are assuming, but identified no cure amount due to Santa Clara. (*See* Cure

20  Notice, Dkt. 7037 at page 335.) A true and correct copy of the GDMSA can be found at

21  http://elibrary.ferc.gov:0/idmws/File_List.asp?document_id=14598242 and is attached as **Exhibit 1**

22  to the Request of Judicial Notice ("RJN").

23       10.     The GDMSA was entered into by PG&E and Santa Clara as a settlement of certain

24  issues between the two entities, pursuant to which Santa Clara would become a joint licensee in an

25  existing hydroelectric license (the "Bucks Creek Project," FERC Project No. 619), which had been

26  amended by FERC to give PG&E permission to construct and operate a hydroelectric facility in

27  Plumas County, California, to be known as Grizzly. Under the GDMSA, Santa Clara would finance

28  and own Grizzly in conjunction with the Bucks Creek Project. (*See* GDMSA Recitals C-E.)

11.     Santa Clara owns 100% of Grizzly during the "Ownership Period" provided in the GDMSA.  (*See* GDMSA Section 2.1) The Ownership Period is defined as ending upon the first of (1) the occurrence of the Reverter Date; (2) development of Grizzly is terminated; or (3) abandonment of the project by Santa Clara or condemnation.  (*See* GDMSA at 1.1.47)  Grizzly has been developed, and the project has not been abandoned by Santa Clara or condemned, so the Ownership Period will end upon the "Reverter Date." The "Reverter Date" is the date on which Santa Clara's interest in Grizzly terminates and reverts to PG&E. (*See* GDMSA at Section 1.1.59.)

12.     The Reverter Dates set forth in the GDMSA are very complicated and convoluted, but Santa Clara and PG&E have agreed in filings before FERC that the first possible Reverter Date is in November 2027.  (*See* GDMSA at 12.3 and *Public Utilities With Existing Contracts in the California Independent System Operator Corporation Region*, 112 FERC ¶61,007 at PP 52-53 (2005), RJN **Exhibit 3**.) This means that the Ownership Period, where Santa Clara is the owner of Grizzly, extends until at least 2027 under the GDMSA.

13.     Grizzly includes, but is not limited to, the Grizzly (hydroelectric) powerhouse and a short 115 kV generation tie-line ("Grizzly Transmission Line"). (*See* GDMSA Sections 1.1.33(d) and (f)).

14.     Santa Clara owns and is to receive all energy generated by Grizzly, less transmission losses, during the Ownership Period, (*See* GDMSA Section 2.4.2.) which energy plus Operating Reserves may not exceed 17.66 MW (*See* GDMSA Appendix F, Section 2.3.2.)  Operating Reserves are defined as "the combination of Spinning and Non-Spinning Reserve required to meet Applicable Reliability Criteria for reliable operation of the CAISO Balancing Authority Area." (*See* GDMSA Appendix F, Section 1.19.)

15.     The GDMSA provides that Santa Clara is to deliver (using the Grizzly Transmission Line) "all electric power generated at Grizzly, net of station use and losses," to PG&E at the "interconnection of the PG&E-owned span of the Grizzly Transmission Line at the disconnect switch located on the Grizzly transmission line end structure near PG&E's Caribou-Sycamore Creek transmission line." (*See* GDMSA Section 9.1.2) It is not clear to Santa Clara at what point the name change occurred, but the Grizzly Transmission Line now interconnects to what is known as PG&E's

Caribou-Palermo Line. ("Caribou-Palermo Line") (*See* PG&E/Santa Clara Final License Application for Bucks Creek Hydroelectric Project, FERC Project No. 619, at Volume I, Exhibit A, Pages A-19, A-20 (filed Dec. 12, 2016) (http://www.bucksrelicensing.com/Public/default.aspx., RJN **Exhibit 2**.) The Caribou-Palermo Line is the sole interconnection of the Grizzly Transmission Line to PG&E's transmission system, and without it, energy produced by Grizzly cannot be scheduled and delivered to Santa Clara, and renders Grizzly inoperable by Santa Clara. Once Santa Clara delivers the power generated by Grizzly (net of station use and losses) using the Grizzly Transmission Line to PG&E's Caribou-Palermo Line, PG&E is contractually obligated to deliver that amount of energy and capacity to Santa Clara at certain Santa Clara Receiving Stations or other Points of Delivery specified by Santa Clara. (*See* GDMSA Section 9.1.1.) The Receiving Stations and Points of Delivery include the points of interconnection between PG&E and Santa Clara, where Santa Clara receives power for itself and its customers. (*See* GDMSA Sections 1.1.58 and 1.1.51.)

16.    The GDMSA also obligates PG&E to "endeavor to maintain continuity of service to Santa Clara and to take all reasonable steps to schedule and deliver [Grizzly energy] to Santa Clara under this Agreement." (GDMSA Section 9.3.1.)

**Because of the Camp Fire, Grizzly Is No Longer Connected to the Electric Transmission Grid and PG&E Is Unable to Deliver Energy to Santa Clara from Grizzly**

17.    The Camp Fire destroyed, among many other things, PG&E's Caribou-Palermo Line, so since November 8, 2018, the Caribou-Palermo Line has not been in service.

18.    I am informed and believe that PG&E has publicly announced that the Caribou-Palermo Line has been permanently de-energized.

19.    I am informed and believe that PG&E has announced its intent to plead guilty to, among other things, one count of "Unlawfully Causing a Fire" which I understand entails admitting that its actions were reckless with regard to its having caused the Camp Fire and the damage caused by the Camp Fire.

20.    With the permanent de-energization of the Caribou-Palermo Line, Grizzly is "cut off" from the rest of the electric transmission grid and PG&E has no way of scheduling and delivering energy and capacity capable of being generated from Grizzly to Santa Clara. This means that while

Grizzly remains in an operable condition and is capable of generating power, this power is essentially useless without a transmission path to the broader electric transmission grid. The situation is akin to owning a car that can run, but is sitting on a short driveway surrounded by water with no bridge to allow it to be driven anywhere.

21.   Due to the de-energization of the Caribou-Palermo Line resulting from the Camp Fire, which was Grizzly's only interconnection to the electric transmission grid, PG&E has not been able to meet its obligation (pursuant to Section 9 of the GDMSA) to deliver the energy and capacity capable of being generated by Grizzly to Santa Clara since the November 18, 2018 date of the Camp Fire.

22.   PG&E's inability to schedule and deliver the energy and capacity capable of being generated from Grizzly to Santa Clara will continue until a new interconnection is planned, constructed and energized. Grizzly was designed and constructed to deliver power to PG&E's transmission system (using the Grizzly Transmission Line) at 115 kV. While there are PG&E 230 kV transmission lines in the immediate geographic vicinity of Grizzly, an interconnection to any of these lines would require planning, engineering, permitting, construction and, at a minimum, a 115 kV to 230 kV step-up transformer and associated facilities to be installed by PG&E.

23.   Santa Clara has diligently pursued a solution to interconnect Grizzly to one of these existing PG&E 230 kV transmission lines so that PG&E can resume delivery of energy and capacity from Grizzly to Santa Clara, but has only recently received, on May 11, 2020, a formal plan from PG&E for this new interconnection. Moreover, although there have been discussions, PG&E has not formally committed to pay for whatever solution is ultimately developed.

24.   Without the Caribou-Palermo Line energized and in-service, only PG&E is able to get any benefit from Grizzly. In that regard, PG&E has the right, under GDMSA section 8.2.1, to use Grizzly for reactive power, which allows Grizzly to serve as a synchronous condenser *for PG&E's use*. Specifically, by using Grizzly for reactive power, Grizzly is capable of supporting voltage in Grizzly's immediate geographic vicinity through a low voltage station service connection, lowering transmission and distribution system losses and providing reliability to PG&E's customers. Such use of Grizzly by PG&E does not in any way serve to reduce Santa Clara's monetary damages, and this

low-voltage station service connection is not a means by which PG&E can deliver energy produced by Grizzly to Santa Clara.

**PG&E's Breach of Contract, GDMSA Default, and Santa Clara's Monetary Damages Associated With PG&E's Breach of Contract and Default**

25.     I have reviewed the Cure Notice, which identified no cure amount due to Santa Clara related to the GDMSA or any other executory contract with which Santa Clara is a counterparty, except the $5,984.42 cure amount for the Electronic Commerce System User Agreement, dated November 28, 2005 at p.335 of the Cure Notice (Dkt. 7037).

26.     Santa Clara objects and disputes that no cure amount is required by Debtors to assume the GDMSA.

27.     By recklessly causing the Camp Fire that destroyed the Caribou-Palermo Line, PG&E itself caused its inability to deliver the energy and capacity Grizzly is capable of producing to Santa Clara, in breach of its obligations under the GDMSA (*See* GDMSA Section 9) and which breach renders PG&E in default of the GDMSA (*See* GDMSA Section 17).  For this reason, Santa Clara has monetary damages related to PG&E's Default of the GDMSA which must be cured in order for PG&E to assume the GDMSA.

28.     There are three parts to Santa Clara's claim for monetary damages associated with PG&E's breach and default of the GDMSA.

   a. *First*, Santa Clara's claim for monetary damages associated with PG&E's breach of the GDMSA includes the loss of value from November 8, 2018 through April 28, 2020 associated with Santa Clara's inability to utilize Grizzly for the commodities a hydroelectric facility produces: energy, ancillary services (spinning reserves), renewable energy credits, and capacity. Additionally, Santa Clara has lost the value of the avoided transmission costs provided by the delivery component (transmission) provided in the GDMSA for that period, so that is also included in Santa Clara's claim. This monetary loss is calculated to be $9,817,169.77.

   b. *Second*, Santa Clara's claim for monetary damages associated with PG&E's

breach of the GDMSA includes the projected loss of value for those same commodities—energy, ancillary services (spinning reserves), renewable energy credits, capacity, and avoided transmission costs—from April 28, 2020 until a new interconnection is energized and PG&E can resume delivery of energy from Grizzly to Santa Clara pursuant to GDMSA Section 9. This financial loss is projected to be $10,232,162.88 based on current estimates for the new interconnection to be in-service of end-of-year 2021, but will need to be updated as better information becomes available.

    c. *Third*, as noted above in paragraph 23, PG&E has not yet committed to pay for the new interconnection needed for PG&E to resume delivery of energy from Grizzly to Santa Clara pursuant to GDMSA Section 9. Therefore, Santa Clara's claim for monetary damages associated with PG&E's breach of the GDMSA includes the estimated cost for such interconnection, $5,000,000.00, as a placeholder in the event that PG&E does not commit to pay for the new interconnection. The estimate is based on proposals from two established electrical facility contractors, MTH Engineer, Inc. and ECI.

29. With regard to the first and second parts of Santa Clara's claim associated with PG&E's breach of the GDMSA, Santa Clara's loss of the value associated with Grizzly energy, ancillary services (spinning reserves), renewable energy credits and capacity from November 8, 2018 until a new interconnection is energized such that PG&E can resume delivering energy from Grizzly to Santa Clara, Santa Clara's claim estimates the loss of the value associated with these various commodities using the following methodology I developed, explain below and set forth in the attached spreadsheet:

30. *Energy* – The amount of *energy* able to be produced by a hydroelectric generation project ultimately depends on the amount of precipitation as rain or snowfall during a particular year that can be captured, stored, and run through the powerhouse. I first approximated the generation that would take place in an average year by producing a simple average based on the average production stated for Grizzly in the Bucks Creek Hydroelectric Project Final License Application,

which is 43,908.52 MWh/year. (*See* PG&E/Santa Clara Final License Application for Bucks Creek Hydroelectric Project, FERC Project No. 619, at Volume I, Exhibit A, Page A-15 (filed Dec. 12, 2016), which can be found at http://www.bucksrelicensing.com/Public/default.aspx.) For the first part of Santa Clara's claim for monetary damages associated with PG&E's breach of the GDMSA, from November 2018 through April 28, 2020, the precipitation and water year type was known, and Grizzly's estimated energy production would have been slightly more than 139% of an average year, or 61,113.65 MWh. For the second part of Santa Clara's claim for monetary damages associated PG&E's breach of the GDMSA, I used the simple average based on the last 30 years of production, 43,908.52 MWh/year, since there is no way of knowing or estimating what type of precipitation the remainder of 2020 and 2021 will produce.

31.     Since energy values fluctuate on an hourly basis throughout the year, and can significantly deviate by season, I apportioned the annual energy quantities determined above to monthly quantities based on historical observation of how Grizzly has operated in the past.

32.     I then used the actual CAISO Locational Marginal Price (LMP) for the Santa Clara Custom Load Aggregation Point (CLAP) for the lost value of Grizzly energy from November 8, 2018 through April 28, 2020, and produced a forecast of future hourly market energy values using historical CAISO published LMP for the Santa Clara CLAP as a proxy for Santa Clara's future lost value of Grizzly energy for the calculation from April 28, 2020 through the end of 2021.

33.     I assumed GDMSA energy would be delivered by PG&E to Santa Clara, as it has in the past, during the highest value hours in any month, limited by the contractual 17.66 MW of delivered hourly capacity (*See* GDMSA Appendix F, Section 2.3.2.), until the monthly quantity of energy was reached.

34.     I then determined Santa Clara's lost value of Grizzly energy by multiplying the forecasted hourly quantity of energy by the forecasted hourly $/MWh price and summing the results during the claim period—first for the period November 8, 2018 through April 28, 2020, and then from the April 28, 2020 through the end of 2021.

35.     *Spinning Reserves* – When Grizzly is not producing energy, it is capable of producing

*spinning reserves,* which is another commodity that has a market value. To determine the market value associated with the loss of spinning reserves, I used historical CAISO published prices over the last 3 years to produce a forecast of future hourly Spinning Reserve values. (*See* http://oasis.caiso.com/mrioasis/logon.do, then "Prices"/ "A/S Clearing Prices".)

36.    For every hour of both claim periods (November 8, 2018 through April 28, 2020, and April 28 through December 31, 2021), I assumed Grizzly would be available to either produce energy or spinning reserves (it cannot produce both simultaneously). Since the hourly delivery of energy was determined with respect to the lost value of Grizzly energy (see above at paragraphs 29-33), I subtracted any forecasted hourly energy from 17.66 MWs of available capacity (*See* GDMSA Appendix F, Section 2.3.2) to determine the hourly quantity of spinning reserves that would have been produced.

37.    I then multiplied this hourly quantity of spinning reserves to the forecasted hourly value of CAISO spinning reserve market values to determine the market value of the lost spinning reserves.

38.    *Renewable Energy Credits ("RECs")* – Since Grizzly's nameplate capacity (ability to generate energy) is less than 30 MW, it counts as an eligible renewable energy facility under California's Renewable Portfolio Standard ("RPS"). As such, when it is capable of producing power, the electricity output would be tracked and used to meet compliance obligations of California's RPS program. There is a market value associated with those RECs, so Santa Clara's claim for the loss of value associated with PG&E's breach includes their market value. When Santa Clara filed its Proof of Claim, Portfolio Content Category 1 ("PCC1") RECs were valued at $19 per REC (Grizzly is a PCC1 unit, using the California Energy Commission's RPS Eligibility Guidebook, see https://www.energy.ca.gov/programs-and-topics/programs/renewables-portfolio-standard/renewables-portfolio-standard-0), and one MWh of generation equates to one REC eligible to be used towards RPS compliance.

39.    *Resource Adequacy Capacity* – The GDMSA provides that not only must PG&E deliver the energy generated by Grizzly, but PG&E must also deliver Grizzly capacity. (*See* GDMSA at 9.1.1.) This capacity also has an associated monetary value. As a result of the California

Public Utility Commission's Decision in D.04-01-050 on January 22, 2004 (*See* http://docs.cpuc.ca.gov/Published/REPORT/65960.htm), all Load Serving Entities ("LSEs") within the CAISO balancing authority area must make an annual and monthly showing of the generation resources with which they intend to serve their customers, to demonstrate that they have sufficient capacity reserves (as of the 2004 Decision, called a "Resource Adequacy" determination). The quantity that must be demonstrated in this showing is determined by an LSE's contribution to the entire CAISO's monthly coincident peak demand times 115%, and is called "Resource Adequacy Capacity" or "RA Capacity". When a generation project is on a forced outage, as Grizzly is because the energy it is capable of producing has nowhere to go, it is not capable of being submitted as a source of RA capacity in a supply plan.

40.     I determined the lost monetary value of the RA Capacity associated with Grizzly by multiplying the contractually available quantity (*See* GDMSA Appendix F, Section 2.3.2.) of 17.66 MW x $5.00/MW month for the period of November 2018-December 2019, and 17.66 MW x $212/MW day x days/month for the period of January 2020-December 2021. $5.00/MW month during the early period represents the approximate market value observed during that period, and the $212/MW day represents the alternative contractual price for capacity provided for in GDMSA Section 8.6, "Maintenance Power". I used this alternative price since the market price for RA Capacity in 2020 has exceeded the contractual price associated with Maintenance Power capacity set forth in GDMSA Section 8.6.

41.     *Avoided Transmission Service Cost* – In addition to the four commodities set forth above, the GDMSA provides at Section 9 that the energy produced by Grizzly is delivered to Santa Clara by PG&E. Therefore, there is value associated with the fact that Santa Clara does not need to separately pay the CAISO for use of the CAISO transmission grid to deliver the energy produced by Grizzly to Santa Clara. I estimated the value of this *avoided transmission service cost* from the date of the Camp Fire to April 28, 2020 using the actual CAISO High Voltage ("HV") and Low Voltage ("LV") Transmission Access Charge ("TAC") rates applicable to the PG&E region during the applicable time period from the date of the Camp Fire to April 28, 2020 (see http://www.caiso.com/participate/Pages/Transmission/Default.aspx), multiplied by the forecasted

amount of generation Grizzly would have produced during that period. I then estimated the value of the avoided transmission service cost from April 28, 2020 through December 31, 2020 by assuming the TAC rates would remain at their currently-effective rate, and for the period January 1, 2021 through the end of 2021 by assuming a 5% escalation in the CAISO HV and LV TAC rates, multiplied by the forecasted amount of generation Grizzly would have produced during the applicable periods.

42.     In addition to the loss of the value of Grizzly energy, ancillary services (spinning reserves), RECs, capacity and avoided transmission costs, Santa Clara includes in its claim for monetary damages associated with PG&E's breach of the GDMSA the estimate for reconnecting Grizzly from the existing 115 kV Grizzly Transmission Line to a nearby PG&E 230 kV transmission line. The estimates we have received indicate that this re-connection will cost approximately **$5,000,000**. While Santa Clara expects that the costs of re-establishing an interconnection such that PG&E can resume delivering energy from Grizzly to Santa Clara will be borne by PG&E, we have not received any notification, formal or otherwise, that PG&E accepts this obligation of cost responsibility. Based on many past negotiations with PG&E on interconnection matters, and cost responsibility, I can only assume PG&E will attempt to charge Santa Clara for these expenses.

43.     Therefore, Santa Clara's Cure Amount at this time is **$25,049,332.65**, summarized as follows:

Lost Value (Revenue) from Grizzly Hydroelectric Project:

| | |
|---|---|
| Actual - November 2018 through April 2020: | $  9,817,169.77 |
| Forecast - May 2020 through December 2021: | $ 10,232,162.88 |
| Lost Revenue Total: | $ 20,049,332.65 |
| Estimated Construction Costs to Reconnect: | $  5,000,000.00 |
| TOTAL: | **$ 25,049,332.65** |

44.     I have personal knowledge of the facts set forth in this declaration and, if called as a witness could and would competently so testify, except for statements included herein made upon information or belief, for which I have specified the basis therefor.

/ / /

1       I declare under penalty of perjury that the foregoing is true and correct under the laws of the

2   United States of America.

3       Executed on May 14, 2020.

4

5                          Steve Hance

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28