MARK GORTON (SBN 099312)
THOMAS G. MOUZES (SBN 099446)
**BOUTIN JONES INC.**
555 Capitol Mall, Suite 1500
Sacramento, CA 95814
Phone: 916.321.4444
Fax: 916.441.7597
Email: mgorton@boutinjones.com

*Attorneys for Creditors and Parties-in-Interest NORTHERN CALIFORNIA POWER AGENCY, TRANSMISSION AGENCY OF NORTHERN CALIFORNIA, SONOMA CLEAN POWER AUTHORITY, VALLEY CLEAN ENERGY ALLIANCE, REDWOOD COAST ENERGY AUTHORITY and CITY OF SANTA CLARA dba SILICON VALLEY POWER (collectively, the "MUNICIPAL OBJECTORS")*

JANE LUCKHARDT (SBN 141919)
General Counsel
**NORTHERN CALIFORNIA POWER AGENCY**
651 Commerce Drive
Roseville, CA 95678-6411
Phone: 916.781.3636
Email: Jane.Luckhardt@ncpa.com

*Attorneys for Creditors and Parties-in-Interest NORTHERN CALIFORNIA POWER AGENCY*

*Additional counsel for the Municipal Objectors are identified on the following pages.*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E CORPORATION<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☑ Affects both Debtors.<br><br>* All papers shall be filed in the Lead Case No. 19-30088 DM | Case Nos. 19-30088 DM (Lead Case)<br>19-30089 DM<br><br>Chapter 11<br>Jointly Administered<br><br>**THE MUNICIPAL OBJECTORS' (1) OBJECTION TO CONFIRMATION OF PLAN OF REORGANIZATION** (Dkt.6320) **AND (2) OBJECTION TO CURE NOTICE AND OTHER MATTERS PERTAINING TO ASSUMPTION PURSUANT TO SECTION 365(B)(1) OF THE BANKRUPTCY CODE** (Dkt. 7037)<br><br>Date: May 27, 2020<br>Time: 10:00 a.m.<br>Courtroom: 17<br>Place: 450 Golden Gate Ave., 16th Floor, San Francisco, CA 94102<br>Judge: Hon. Dennis Montali |

STEVEN C. GROSS (SBN 138525)
**PORTER SIMON / Professional Corporation**
40200 Truckee Airport Road, Suite One
Truckee, CA 96161
(530) 587-2002 ext. 4485
gross@portersimon.com

*Attorney for Creditor and Party-in-Interest*
*TRANSMISSION AGENCY OF NORTHERN CALIFORNIA*

HARRIET A. STEINER (SBN 109436)
**BEST BEST & KRIEGER LLP**
500 Capitol Mall, Suite 1700
Sacramento, CA 95814
Telephone: 916.325.4000
Email: harriet.steiner@bbklaw.com

*Attorney for Creditors and Parties-in-Interest*
*SONOMA CLEAN POWER AUTHORITY and*
*VALLEY CLEAN ENERGY ALLIANCE*

PHIL POGLEDICH (SBN 197110)
County Counsel
ERIC MAY (SBN 245770)
Senior Deputy County Counsel
**COUNTY OF YOLO**
625 Court Street, Room 201
Woodland, CA 95695
(530) 666-8172
Email: eric.may@yolocounty.org

*Attorney for Creditor and Party-in-Interest*
*VALLEY CLEAN ENERGY ALLIANCE*

NANCY DIAMOND (SBN 130963)
**LAW OFFICES OF NANCY DIAMOND**
822 G Street, Suite 3
Arcata, CA 95521
(707) 826-8540
ndiamond@ndiamondlaw.com

*Attorney for Creditor and Party-in-Interest*
*REDWOOD COAST ENERGY AUTHORITY*

LISA S. GAST *(pro hac vice)*
**DUNCAN, WEINBERG, GENZER & PEMBROKE, P.C.**
1667 K Street NW, Suite 700
Washington, DC 20006
Telephone: (202) 791-3601
Email: lsg@dwgp.com

BRIAN DOYLE (SBN 112923)
City Attorney
**CITY OF SANTA CLARA**
1500 Warburton Avenue
Santa Clara, CA 95050
(508) 615-2234
BDoyle@SantaClaraCA.gov

*Attorneys for Creditor and Party-in-Interest*
*CITY OF SANTA CLARA dba SILICON VALLEY POWER*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. STATUS OF OBJECTORS: THE MUNICIPAL OBJECTORS ARE EXECUTORY CONTRACT COUNTERPARTIES AND MOST ARE CREDITORS ..... 2

III. OBJECTION: WHILE THEIR CLAIMS ARE OSTENSIBLY UNIMPAIRED AND THEIR EXECUTORY CONTRACTS ASSUMED, THE PLAN STILL ADVERSELY AND IMPROPERLY IMPACTS THE MUNICIPAL OBJECTORS AND OTHER SIMILARLY SITUATED PARTIES ..... 7

1. The Plan Extends the Discharge Beyond the Confirmation Date to the Effective Date in Violation of 1141(d)(1) ..... 7

2. The Plan Expands the Discharge in Violation of Applicable Law ..... 8

3. The Plan and the Cure Notice Unilaterally Modify Assumed Executory Contracts In Violation of Section 365 ..... 13

IV. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221 (6th Cir. 1995) .......... 13

*County of San Mateo, et al. v. Peabody Energy Corporation (In re Peabody Energy Corporation)*, --- F.3d ----, 2020 WL 2176028 (8th Cir. May 6, 2020) .......... 12

*In re Airlift Int'l*, 761 F.2d 1503 (11th Cir. 1985) .......... 13

*In re Amos*, 452 B.R. 886 (Bankr.D.N.J. 2011) .......... 12

*In re Castellino Villas, A. K. F. LLC*, 836 F.3d 1028 (9th Cir. 2016) .......... 11

*In re Conseco, Inc.*, 301 B.R. 525 (Bankr. N.D. Ill. 2003) .......... 11

*In re David Orgell, Inc.*, 117 B.R. 574 (Bankr. C.D. Cal. 1990) .......... 13

*In re De Laurentiis Ent. Group, Inc.*, 963 F.2d 1269 (9th Cir. 1992) .......... 11

*In re Frontier Properties*, 979 F.2d 1358 (9th Cir. 1992) .......... 13

*In re Gould*, 401 B.R. 415 (B.A.P. 9th Cir. 2009), aff'd, 603 F.3d 1100 (9th Cir. 2010) .......... 11

*In re Jensen*, 995 F.2d 925 (9th Cir. 1993) .......... 11

*In re Luongo*, 259 F.3d 323 (5th Cir. 2001) .......... 11

*In re Nat'l Gypsum Co.*, 208 F.3d 498 (5th Cir. 2000) .......... 13

*In re Pardee*, 193 F.3d 1083 (9th Cir.1999) .......... 2

*In re Plitt Amusement Co. of Washington, Inc.*, 233 B.R. 837 (Bankr. C.D. Cal. 1999) .......... 13

*In re SCCC Assocs. II Ltd. Partnership*,
158 B.R. 1004 (Bankr. N.D. Cal. 1993) ..... 14

*In re Trigg*,
630 F.2d 1370 (10th Cir. 1980) ..... 13

*Matter of Steelship Corp.*,
576 F.2d 128 (8th Cir. 1978) ..... 13

*N.L.R.B. v. Bildisco & Bildisco*,
465 U.S. 513 (1984) ..... 13

*Travelers Indemnity Co. v. Bailey*,
129 S.Ct. 2195, 174 L.Ed. 2d 99 (2009) ..... 1

*United Student Aid Funds, Inc. v. Espinosa*,
559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) ..... 2

**Statutes**

11 U.S.C.
Section 365 ..... 14, 15
Section 365(b)(1) ..... 13
Section 524(a)(2) ..... 11
Section 524(a)(3) ..... 11
Section 1123 ..... 15
Section 1123(a) ..... 11
Section 1123(b) ..... 11
Section 1129(a)(1) ..... 7, 12, 15
Section 1129(a)(3) ..... 12, 15
Section 1141 ..... 15
Section 1141(a) ..... 1
Section 1141(d) ..... 11
Section 1141(d)(1) ..... 7
Section 1141(d)(1)(A) ..... 11

California Civil Code
Section 1542 ..... 10

Northern California Power Agency, Transmission Agency of Northern California, Sonoma Clean Power Authority, Valley Clean Energy Alliance, Redwood Coast Energy Authority, and the City of Santa Clara dba Silicon Valley Power (collectively, the "Municipal Objectors") submit these objections (1) to confirmation of the Debtors' and Shareholder Proponents' Plan of Reorganization Dated March 16, 2020 [Dkt. 6320] (together with all schedules and exhibits thereto, and as may be modified, amended or supplemented, the "Plan")[1] and (2) to the Cure Notice [Dkt. 7037] and other matters pertaining to assumption pursuant to Section 365(b)(1) of the Bankruptcy Code (the "Objection").

## I. INTRODUCTION

From the First-Day proceedings, the Debtors' theme has been that the primary purpose of these bankruptcy cases is the fair and efficient treatment of the wildfire victims—the *involuntary* tort creditors of the Debtors whose claims arise from the 2017 and 2018 wildfires.[2] This theme is generally reinforced by the Plan's "unimpaired" classification of general unsecured creditors, who are predominantly *voluntary* commercial creditors. These voluntary commercial creditors assume that the plan will have minimal impact on them and it will be business as usual with PG&E.

The array of provisions under the Plan regarding discharges, releases, settlements and injunctions, however, reveals that these voluntary commercial creditors who have been lulled into inattentive inaction will be substantially impacted by the Plan. Objecting to the inappropriate, unfair and even illegal provisions is necessary because Bankruptcy Code section 1141 (a) provides that a confirmed plan binds the debtor, creditors, shareholders and other parties in interest and a confirmation order has the full force of a final judgment and preclusive effect. Therefore, overbroad and even illegal provisions included in a plan that is confirmed are binding on all parties and immune from collateral attack. *See Travelers Indemnity Co. v. Bailey*, 129 S.Ct. 2195, 174 L.Ed. 2d 99 (2009); *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S.Ct. 1367, 176

---

[1] Unless otherwise defined, capitalized terms have the definitions ascribed to them in the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020 (Dkt. 6320).

[2] *See* Am. Decl. of Jason P. Wells in Support of First Day Motions [Dkt. 263], p. 4, cited most recently in Debtors' Response to the Objection of Adventist Health, AT&T, Paradise Entities and Comcast Trust Documents [Dkt. 7161], p. 3:13-18.

L.Ed.2d 158 (2010); *In re Pardee*, 193 F.3d 1083, 1086 (9th Cir.1999) ("This court has recognized the finality of confirmation orders even if the confirmed bankruptcy plan contains illegal provisions.") This is particularly important for governmental units who have long-standing and ongoing relationships with the Debtors that are not merely debtor-creditor in nature but involve complex, regulated interaction, management and operation of sophisticated infrastructure and services critical to modern economic life.

The Municipal Objectors have identified provisions related to the scope of the discharge, release, settlement and injunction in the proposed Plan that are objectionable and prejudicial; these provisions are detailed below. The Municipal Objectors and all unimpaired non-tort claimants deserve to have the Plan disarmed of its landmines so the ongoing important and carefully balanced business relationships can continue without the Plan acting as a thumb on the scale in the Debtors' favor.

The Municipal Objectors join in the objections to the Plan of South San Joaquin Irrigation District and the City and County of San Francisco, which objections are incorporated herein by this reference, and reserve the right to join objections of others.

The Municipal Objectors submit these objections to confirmation of the Plan and respectfully request the court deny confirmation unless these objections are resolved.

## II. STATUS OF OBJECTORS: THE MUNICIPAL OBJECTORS ARE EXECUTORY CONTRACT COUNTERPARTIES AND MOST ARE CREDITORS

*NCPA*: Northern California Power Agency ("NCPA") is a nonprofit California joint powers agency established in 1968 to construct and operate renewable and low-emitting generating facilities and assist in meeting the wholesale energy needs of its 16 members – the Cities of Alameda, Biggs, Gridley, Healdsburg, Lodi, Lompoc, Palo Alto, Redding, Roseville, Santa Clara, Shasta Lake, and Ukiah, Plumas-Sierra Rural Electric Cooperative, Port of Oakland, San Francisco Bay Area Rapid Transit (BART), and Truckee Donner Public Utility District. Collectively these members serve nearly 700,000 electric consumers in Central and Northern California. These members represent the geographic breadth and diversity of the state of California – from the Silicon, Sonoma and Central Valleys to the Sierras, some are urban and some are rural, and the size of utilities represented by

NCPA varies greatly as well. (*See* Declaration of Anthony Zimmer ISO NCPA's Statement of Support for TURN's Motion for Committee of Ratepayer Claimants, para. 5, Dkt. 1660-1.)

NCPA has filed six proofs of claim in the Debtors' chapter 11 cases:

1. Claim No. 64414, a general unsecured claim against the Utility for $6,000,000 in transmission rate refunds under TO 18;[3]
2. Claim No. 64639, a general unsecured claim against the Utility for $7,3000,000 in transmission rate refunds under TO 19;
3. Claim No. 65374, a general unsecured claim against the Utility for transmission rate refunds in an unliquidated amount under TO 20;
4. Claim No. 64397, a general unsecured claim against the Utility for $100,000 for the Poe Project Settlement;[4]
5. Claim No. 65221, a general unsecured claim against the Utility in an unliquidated amount reserving rights, including under executory contracts.;[5] and
6. Claim No. 64392, a general unsecured claim against the Parent in an unliquidated amount reserving rights.

*TANC*: Transmission Agency of Northern California ("TANC") is a California joint powers agency founded in 1984 whose current membership includes 15 publicly-owned utilities in the cities of Alameda, Biggs, Gridley, Healdsburg, Lodi, Lompoc, Palo Alto, Redding, Roseville, Santa Clara, and Ukiah, as well as the Sacramento Municipal Utility District, the Modesto Irrigation District and the Turlock Irrigation District. The Plumas-Sierra Rural Electric Cooperative is an Associate Member. TANC's initial purpose was to plan, design and construct the California-Oregon Transmission Project ("COTP"), a 340-mile long, 500-kV AC transmission line between the

[3] PG&E's transmission rates – like the transmission rates of other public utilities – are FERC jurisdictional, meaning they must be filed with FERC and the Commission must find that they are just, reasonable, and not unduly discriminatory. Over the last two decades, PG&E has filed a transmission rate case at FERC almost every year. These rate cases are referred to as chronologically numbered "TO" cases—i.e., beginning with TO 1 and continuing, most recently, with TO 20.

[4] A settlement concerning the Poe Hydroelectric Project reached after litigation before FERC and the U.S. Court of Appeals for the Ninth Circuit.

[5] No fewer than 26 executory contracts are specifically identified in NCPA's proof of claim attachment.

California-Oregon border and Central California. The COTP was completed and energized in 1993. Today, TANC's primary purpose is to provide electric transmission to its member utilities through transmission line ownership or contract arrangements. As the project manager for the COTP, TANC is responsible for its day-to-day operations, repair, maintenance and upgrades.

TANC has filed one proof of claim in the Pacific Gas and Electric Company chapter 11 case, Claim No. 64196, reserving its rights regarding seven specific executory contracts, any other executory contracts and any claims it may discover.

*SCP*: Sonoma Clean Power Authority ("SCP") is a California joint powers authority whose member agencies are the Cities of Cloverdale, Cotati, Fort Bragg, Petaluma, Point Arena, Rohnert Park, Santa Rosa, Sebastopol, Sonoma, Willits and the Town of Windsor and the Counties of Sonoma and Mendocino. SCP is a "community choice aggregator" ("CCA") that provides electricity to customers in Sonoma and Mendocino Counties. Pursuant to California law, SCP sources the electricity supplied to approximately 87% of all commercial and residential consumers within Sonoma and Mendocino Counties, a population of approximately 500,000 people. Also pursuant to California law, PG&E is responsible for metering, billing and delivering that electricity. PG&E then remits its daily revenues to SCP. Without these revenues, SCP would be unable to meet its obligations. In accordance with California law, SCP and PG&E entered into multiple agreements and arrangements and understandings, including, without limitation, pursuant to regulatory authority whereby PG&E agreed to, among other things, meter, bill and deliver electricity that SCP sources to consumers. (*See* Declaration of Geoffrey G. Syphers ISO SCP's Statement of Support for Debtors' Postpetition Financing and Public Programs Motions, paras. 6-28, Dkt. 55.)

SCP has filed two proofs of claim in the Debtors' chapter 11 cases: Claim No. 64224, a general unsecured claim reserving rights against PG&E Corporation and Claim No. 65456, a general unsecured claim against Pacific Gas and Electric Company, reserving its rights regarding eight specific executory contracts, the executory contracts identified in the schedules, any other executory contracts and any claims it may discover.

*Valley Clean Energy*: Valley Clean Energy is a California joint powers agency whose member agencies are Yolo County and the Cities of Woodland and Davis. The City of Winters also

recently joined Valley Clean Energy. Valley Clean Energy is a CCA that launched services on June 1, 2018 and provides electricity to customers located within the Cities of Woodland and Davis and the unincorporated areas of Yolo County. Residents of Winters will begin receiving electricity from Valley Clean Energy in 2021. The mission of Valley Clean Energy is to deliver cost-competitive clean electricity, product choice, price stability, energy efficiency and greenhouse gas emission reductions to its customers. Also pursuant to California law, PG&E is responsible for metering, billing and delivering that electricity. PG&E then remits its daily revenues to Valley Clean Energy. Without these revenues, Valley Clean Energy would be unable to meet its obligations. In accordance with California law, Valley Clean Energy and PG&E entered into multiple agreements and arrangements and understandings, including, without limitation, pursuant to regulatory authority whereby PG&E agreed to, among other things, meter, bill and deliver electricity that Valley Clean Energy sources to consumers.

Valley Clean Energy has filed two proofs of claim in the Debtors' chapter 11 cases: Claim No. 64677, a general unsecured claim reserving rights against PG&E Corporation and Claim No. 65788, a general unsecured claim against Pacific Gas and Electric Company, reserving its rights regarding seven specific executory contracts, the executory contracts identified in the schedules, any other executory contracts and any claims it may discover.

*RCEA*: Redwood Coast Energy Authority ("RCEA") is a California joint powers agency founded in 2003 whose members are the County of Humboldt, the Cities of Arcata, Blue Lake, Eureka, Ferndale, Fortuna, Rio Dell and Trinidad, and the Humboldt Bay Municipal Water District. RCEA is a CCA that provides electricity to customers in Humboldt County. RCEA maximizes the use of local renewable resources, provides competitive rates, and supports local economic development. Pursuant to California law, RCEA sources the electricity supplied to approximately 90% of all commercial and residential consumers within Humboldt County. Also pursuant to California law, PG&E is responsible for metering, billing and delivering that electricity. PG&E then remits its daily revenues to RCEA. Without these revenues, RCEA would be unable to meet its obligations. In accordance with California law, RCEA and PG&E entered into multiple agreements and arrangements and understandings, including, without limitation, pursuant to regulatory authority

(as amended or otherwise modified from time to time, collectively, the "Agreements") whereby PG&E agreed to, among other things, meter, bill and deliver electricity that RCEA sources to consumers.

RCEA has filed two proofs of claim in the Debtors' chapter 11 cases: Claim No. 65982, a general unsecured claim reserving rights against PG&E Corporation and Claim No. 57968, a general unsecured claim against Pacific Gas and Electric Company, reserving its rights regarding eight specific executory contracts, the executory contracts identified in the schedules, any other executory contracts and any claims it may discover.

*Santa Clara*: The City of Santa Clara dba Silicon Valley Power is an incorporated California city that, in addition to providing general city services, operates its own municipal utility ("Silicon Valley Power") as a department of the city (collectively, "Santa Clara"). Santa Clara is engaged in the generation, transmission, distribution, purchase, and sale of electric power and energy at wholesale and retail. In addition to its own generation, Santa Clara purchases power and energy from various third-party utilities and uses transmission services to effect those transactions. Santa Clara is surrounded by the service territory of Pacific Gas and Electric Company, and depends upon PG&E's transmission facilities, which have been turned over to the operational control of the California Independent System Operator Corporation ("CAISO"), to access power and energy to serve its customers.

Santa Clara has filed three proofs of claim in the Debtors' chapter 11 cases on behalf or itself and its municipal utility, Silicon Valley Power: Claim No. 64140, a general unsecured claim reserving rights against PG&E Corporation; Claim No. 64691, a general unsecured claim against Pacific Gas and Electric Company, reserving its rights regarding the executory contracts identified in the schedules, any executory contracts not identified in the schedules, the claims identified in the schedules, a $25,049,332.65 cure amount concerning the Grizzly Development and Mokelumne Settlement Agreement ("GDMSA") and any other claims it may discover; and Claim No. 60676, a Fire Claim, as amended, in the amount of $25,049,332.65, which claim will be withdrawn if the GDMSA is assumed and the cure amount paid. In addition, Santa Clara in its capacity other than as a municipal utility has filed additional proofs of claim for taxes and other obligations owed by the

Debtors to Santa Clara.

## III. OBJECTION: WHILE THEIR CLAIMS ARE OSTENSIBLY UNIMPAIRED AND THEIR EXECUTORY CONTRACTS ASSUMED, THE PLAN STILL ADVERSELY AND IMPROPERLY IMPACTS THE MUNICIPAL OBJECTORS AND OTHER SIMILARLY SITUATED PARTIES

The Municipal Objectors object to the Plan for the reasons stated below. Recognizing the importance of achieving confirmation by the AB 1054 June 30, 2020 deadline, the Municipal Objectors follow each objection with its proposal for resolution, which may be adopted by inclusion in the Confirmation Order[6] (or the as-confirmed version of the Plan).

### 1. The Plan Extends the Discharge Beyond the Confirmation Date to the Effective Date in Violation of 1141(d)(1)

Section 10.3 of the Plan provides, in part that "Upon the Effective Date and in consideration of the distributions to be made hereunder, . . . each holder . . . of a Claim . . . shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date." Section 1141(d)(1) provides for discharge of debt arising prior to confirmation. Under section 9.5 of the Plan, the effective date of the plan could be as late as December 31, 2020. For that reason, the Plan does not comply with the Code and violates Section 1129(a)(1).

***Proposed Resolution***: To resolve this objection, the Confirmation Order should provide that the discharge applies through the confirmation date only, not the effective date, by revision of Section 10.3 as follows:

> Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims~~,~~ and Interests~~, rights, and liabilities~~ that arose prior to the ~~Effective Date~~ Confirmation Date.

[6] The Plan provides: "[F]or the avoidance of doubt, to the extent the Confirmation Order conflicts with the Plan, the Confirmation Order shall control for all purposes[.]" *See* Plan, Article I, "*Interpretation; Application of Definitions and Rules of Construction*," p. 36:11-12 (Dkt. 6353).

Case: 19-30088 Doc# 7231 Filed: 05/15/20 Entered: 05/15/20 12:09:39 Page 13 of 25

**2. <u>The Plan Expands the Discharge in Violation of Applicable Law</u>**

Utilizing various definitional machinations, the Plan expands the discharge by having the claim treatment deemed a bankruptcy "settlement," for receipt of distribution to be deemed affirmative consent to the plan and final settlement, and for the settlement to apply to "Causes of Action." *See* Sections 6.1 (settlement), 10.6(b) (affirmative consent) 5.9 (final settlement) and 1.21 (definition of "Cause of Action"). Section 6.1 of the Plan provides:

> The Plan shall be deemed a motion to approve a good-faith compromise and settlement pursuant to which the Debtors and the holders of Claims against and/or Interests in the Debtors settle all Claims, Interests, <u>and Causes of Action</u> pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The Confirmation Order shall constitute the Court's approval of the compromise, settlement, and release of all such Claims, Interests, <u>and Causes of Action</u>, as well as a finding by the Bankruptcy Court that all such compromises, settlements, and releases are mutual and bi-directional and are in the best interests of the Debtors, their estates, and the holders of Claims, Interests, <u>and Causes of Action</u>, and is fair, equitable, and reasonable. Except as otherwise provided in the Wildfire Trust Agreements and the Claims Resolution Procedures, in accordance with the provisions of the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors, may compromise and settle all Claims and Causes of Action against, and Interests in, the Debtors and their estates. The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan.

(Emphasis added.) Section 1.21 defines Cause of Action as follows:

> *Cause of Action* means, without limitation, any and all actions, class actions, proceedings, causes of action, controversies, liabilities, obligations, rights, <u>rights of setoff</u>, <u>recoupment rights</u>, suits, damages, judgments, accounts, <u>defenses</u>, <u>offsets</u>, <u>powers, privileges, licenses, franchises</u>, Claims, Avoidance Actions, counterclaims, cross-claims, <u>affirmative defenses</u>, third-party claims, Liens, indemnity, contribution, guaranty, and demands of any kind or character whatsoever, whether known or <u>unknown</u>, asserted or unasserted, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, suspected or <u>unsuspected</u>, foreseen or <u>unforeseen</u>, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in contract or in tort, in law, in equity, or otherwise, whether arising under the Bankruptcy Code or any applicable nonbankruptcy law, based in whole or in part upon any act or omission or other event occurring on or prior to the Petition Date or during the course of the Chapter 11 Cases, <u>including through the Effective Date</u>. . . .

(Emphasis added.) Receipt of payment under the plan would be deemed a final settlement of the claim:

> Unless otherwise provided herein, any distributions and deliveries to be made on account of Allowed Claims under this Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

*See* Plan Section 5.9. Furthermore, "By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section." Plan Section 10.6(b).

The Plan injunction in Section 10.6(a) provides in part:

> all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined . . . from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons . . . (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan . . . .

There is an additional injunction in Section 10.9(f) barring action against anyone concerning any release provided in the Plan. Since receipt of all distributions under the plan are deemed settlements that include releases, this injunction can be construed to be even broader that the Section 10.6 injunction.

Furthermore, Section 10.9(b), entitled "Releases by Holders of Claims and Interests," greatly expands the discharge to every possible "action" that a party could take and liabilities of every Released Party[7] (including the Debtors) as follows:

> *Releases by Holders of Claims and Interests* . . . . [T]he Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties [including the Municipal Objectors] from any and all claims . . ., <u>rights</u>, <u>Causes of Action</u>, <u>losses</u>, <u>remedies</u>, and <u>liabilities</u> whatsoever . . . . based on or <u>relating to . . . the Debtors</u>, . . . the subject matter of, or

[7] The Municipal Objectors, other creditors, and every party in interest are the "Releasing Parties," *see* Section 1.180; the "Released Parties" include the Debtors, the Reorganized Debtors, and practically every person or entity involved in developing or implementing the Plan. *See* Section 1.179. Section 10.9(c) indicates only consensual non-debtor releases are enforceable. To the extent Sections 10.8 (exculpation) and 10.9(b) attempt to release or exculpate parties other than the Debtors as set forth in the Plan provisions on discharge, release, settlement, waiver, or similar improper matters identified in this Objection, Sections 10.8 and 10.9(b) are objectionable for the reasons set forth herein.

> the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party . . . or any other act or omission, transaction, agreement, event, or other occurrence . . . ."

Section 10.9(b) (emphasis added).[8] Because all of these matters merely have to "relate to" the Debtors or any occurrence, it is difficult to imagine anything that is not supposedly discharged by Section 10.9(b).

Finally, Section 10.3 provides in part:

> *Release and Discharge of Debtors.* Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, <u>rights</u>, <u>and</u> <u>liabilities</u> that arose prior to the Effective Date; . . . .

(Emphasis added.) The language of Section 10.3 expands the discharge beyond Claims and Interests to "rights" and "liabilities," terms undefined in the Plan, but used in the definition of "Cause of Action."

On top of all this, when it comes to interpreting this "word salad," the Plan appears to give unilateral interpretive powers to the Debtors that bind even the court—what the Debtors say a term means controls. (*See* Plan, Article I, "*Interpretation; Application of Definitions and Rules of Construction*," subpart (j) [any "effectuating provisions"—a term undefined in the plan—are to be interpreted "<u>by the Reorganized Debtors</u> in a manner consistent with the overall purpose and intent of the Plan . . . <u>and such interpretation shall control in all respects</u>."] (emphasis added).)

In combination, the wording of the scope of the settlement of Causes of Action wrongfully provides the Debtors with the benefit of a release as broad and encompassing as if the creditor had voluntarily entered into a general release of all known and unknown claims with a waiver of California Civil Code section 1542. Moreover, the release can be used by PG&E offensively to assert that any defense to an affirmative claim brought against the creditor is released. These

---

[8] Another problem and source of confusion is that the Plan in a number of provisions outside of the definition of "Cause of Action" uses words, such as rights, liabilities, and controversies, which are also in the definition of Cause of Action.

released defenses include rights of setoff and recoupment.

These settlement provisions are not authorized by either the mandatory or permissive provisions of a plan in Section 1123(a) and (b). The permissive authority to "provide for the settlement or adjustment of any claim or interest" is qualified by "belonging to the debtor or to the estate." The Debtors may settle their own claims but they may not unilaterally settle claims against them on terms greater than what is provided by the scope of discharge.

The injunctions in Section 10.6(a) and 10.9(f) are overbroad and go well beyond the discharge of Section 1141(d) and the scope of the discharge injunction in Section 524(a)(2) and (3) and appear to prohibit actions against third parties who are not entitled to discharge and even impair the ability of parties to petition for relief before regulators, such as the CPUC and FERC. Even the parties' right to defend based on pre-effective date conduct is waived.

These provisions are inconsistent with current law:

a. An unknown claim – one that is not in "fair contemplation" – is not subject to discharge, *See In re Jensen*, 995 F.2d 925 (9th Cir. 1993); *In re Castellino Villas, A. K. F. LLC*, 836 F.3d 1028, 1034 (9th Cir. 2016).

b. Setoff and recoupment rights are not subject to discharge, *See In re De Laurentiis Ent. Group, Inc.*, 963 F.2d 1269, 1277 (9th Cir. 1992); *In re Gould*, 401 B.R. 415, 431 (B.A.P. 9th Cir. 2009), aff'd, 603 F.3d 1100 (9th Cir. 2010) (allowing IRS setoff after confirmation); *see also In re Luongo*, 259 F.3d 323, 333 (5th Cir. 2001) (collecting cases) ("We agree with the vast majority of courts considering the relationship between § 524(a) and § 553 that a debtor's discharge in bankruptcy does not bar a creditor from asserting its right to setoff.").

c. The discharge does not extend beyond confirmation to the effective date, 11 U.S.C. section 1141(d)(1)(A).

d. Accepting distribution is not consent. *See In re Conseco, Inc.*, 301 B.R. 525, 528 (Bankr. N.D. Ill. 2003).

Public agencies, like the Municipal Objectors, may seek shelter in section 10.13 that provides

special provisions for Governmental Units. But that provision does not adequately reserve rights of public agencies, including powers of eminent domain. *See, e.g., County of San Mateo, et al. v. Peabody Energy Corporation (In re Peabody Energy Corporation)*, --- F.3d ----, 2020 WL 2176028 (8th Cir. May 6, 2020) (affirming discharge of nuisance claims asserted by California counties and city against reorganized debtor despite chapter 11 plan's carve-out for government claims brought under (a) "Environmental Law," (b) "applicable police or regulatory law," or (c) public nuisance law.)

The Plan should not be "some sort of byzantine sport in which debtors can reap benefit at the expense of creditors, by successfully navigating a maze of technicalities." *In re Amos*, 452 B.R. 886, 895 (Bankr.D.N.J. 2011). The combination of these objectionable and indeed unnecessary provisions with regard to the "unimpaired" commercial creditors, including the Municipal Objectors, demonstrates that the Debtors' theme and priority for the bankruptcy case are quite inconsistent with their actions. These Plan terms reveal that the Debtors seek to materially alter their relationship with these "unimpaired" creditors and parties in interest far beyond what is provided in the Bankruptcy Code. For these reasons, the Plan does not comply with the Code and violates Section 1129(a)(1) and puts into question the Debtors' good faith under Section 1129(a)(3).

***Proposed Resolution***: To resolve this objection, the Confirmation Order should provide as follows:

> Sections 5.9 (final settlement), 6.1 (settlement), 10.6 (injunction and affirmative consent), 10.9(f) (injunction related to releases) and 1.21 (definition of "Cause of Action") are *deleted* from the Plan. All references to "Cause of Action" as a defined term are excised from the Plan. All provisions related to discharge, waiver, release, settlement and injunction are limited and applicable to Claims and Interests only.
>
> Subpart (j) of Article I, "*Interpretation; Application of Definitions and Rules of Construction*" of Plan is revised as follows:
>
>> (j) ~~any effectuating provisions~~ ~~may~~ the Plan will be interpreted ~~by the Reorganized Debtors~~ in a manner consistent with the overall purpose and intent of the Plan ~~, all without further notice to or action, order, or approval of the court or any other entity, and such interpretation shall control in all respects~~;

/ / /

/ / /

**3. The Plan and the Cure Notice Unilaterally Modify Assumed Executory Contracts In Violation of Section 365**

The Plan proposes to assume all the power purchase agreements, renewable energy power purchase agreements and CCA servicing agreements, subject to the occurrence of the Plan Effective Date and payment of any Cure Amount. *See* Plan 8.1(b). Each assumed contract will be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, *except as modified by the Plan*, the order approving assumption or applicable law. *See* Plan 8.1(c).

"Except as modified by the Plan" is the qualification that again exceeds what is permissible under the Bankruptcy Code. Under applicable bankruptcy law, when a contract is assumed, the debtor must perform in full, just as if the bankruptcy had not intervened. *See In re Frontier Properties*, 979 F.2d 1358, 1367 (9th Cir. 1992); *In re Airlift Int'l*, 761 F.2d 1503, 1508 (11th Cir. 1985); *In re Trigg*, 630 F.2d 1370, 1375 (10th Cir. 1980); *Matter of Steelship Corp*., 576 F.2d 128, 132 (8th Cir. 1978). An executory contract or unexpired lease must be assumed or rejected as a whole. The debtor cannot retain (assume) beneficial provisions of an agreement while rejecting its burdens. *See N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 531–32 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract cum onere. . . .); *In re Nat'l Gypsum Co*., 208 F.3d 498, 506 (5th Cir. 2000) ("Where the debtor assumes an executory contract, it must assume the entire contract, cum onere—the debtor accepts both the obligations and the benefits of the executory contract."); *In re Plitt Amusement Co. of Washington, Inc*., 233 B.R. 837, 840 (Bankr. C.D. Cal. 1999); *In re David Orgell, Inc*., 117 B.R. 574, 576 (Bankr. C.D. Cal. 1990).

Section 365(b)(1) is a shield for non-debtors and not a sword for debtors. *In re Nat'l Gypsum Co*., 208 F.3d 498, 509 (5th Cir. 2000). It "provides a guarantee to the non-debtor party, who may be forced to continue a relationship it would rather terminate, that as condition to the forced continuation of the contractual relationship, any losses or defaults existing at the time will be satisfied either through a timely cure or through reasonable assurances of future payment." *Id.*

A debtor does not get to modify the contract unilaterally and assume it. *City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1227 (6th Cir. 1995) (allowing assumption of contract

as modified by the parties); *see also In re SCCC Assocs. II Ltd. Partnership*, 158 B.R. 1004, 1015 (Bankr. N.D. Cal. 1993) (debtor-tenant may not seek court's aid to rewrite terms of unexpired lease to allow assumption). To allow a debtor to unilaterally modify the terms of a contract assumed in a plan would be inconsistent with section 365. But PG&E is seeking to have its Plan do just that.

The proposed Plan provides for the release of all pre-assumption claims concerning the assumed contract. In that regard, PG&E's proposed plan at section 8.2(e) states in part the "assumption . . . of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims *and Causes of Action* against any Debtor or defaults by any Debtor arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease, whether monetary or nonmonetary . . . ." (Emphasis added.)

PG&E also attempts to use the Cure Notice to unilaterally modify the contractual rights of the counterparties. The Cure Notice at para. 8 states in relevant part:

> **Any counterparty to an Agreement that fails to timely file and serve an Objection as proscribed herein will be deemed to have assented to such assumption, assumption and assignment, and Cure Amount. Except as otherwise set forth in the Plan or the Confirmation Order, the assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims and Causes of Action against any Debtor or defaults by any Debtor arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease, whether monetary or nonmonetary . . . . On the Effective Date of the Plan, any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed, or assumed and assigned, under the Plan shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court**.

(bold in original.) The Cure Notice at para. 13 states:

> Except as set forth in Section 8.4 of the Plan with respect to the D&O Indemnity Obligations, the assumption by the Debtors or Reorganized Debtors, as applicable, of all other executory contracts or unexpired leases pursuant to the Plan shall result in the full release and satisfaction of any and all contingent pre-petition indemnification obligations arising under the terms of any such agreements and any proof of Claim premised on a pre-petition contractual indemnification obligation alleged to be owed by the Debtors or Reorganized Debtors shall be deemed disallowed and discharged on the Effective Date, without further notice to or action, order, or approval of the Bankruptcy Court.

Provisions of the Cure Notice, like the Plan, seek to "deem" the failure to object to be consent, including to the full release and satisfaction of any Claims *and Causes of Action* against the Debtor *or defaults* by any Debtor arising under any assumed executory contract at any time *before the date of assumption* (including pre-petition contingent contractual indemnity obligations owed by the Debtors and nonmonetary defaults) and disallowance and expungement of proofs of claim.

The overbroad definition of "Cause of Action" in Section 1.21 of the Plan is again the culprit. The scope of the release for assumed executory contracts would be a defense for PG&E against any claim arising out of an executory contract, even those that were unknown, unforeseen or unsuspected at the time of assumption and through the Effective Date. PG&E could also use the release offensively by contending that any defense to any affirmative claim it brought against the counterparty under the contract is released. These released defenses include rights of setoff and recoupment. These provisions that effectively change the contract without the counterparty's express consent are contrary to what a plan and executory contract assumption are authorized to do under applicable bankruptcy law. *See* Objection 2, above

These unilateral modifications of the assumed executory contracts pursuant to the Cure Notice and the Plan are not authorized by Sections 365, 1123, 1141 or any other provision of the Bankruptcy Code and violate Section 1129(a)(1) and again call into question the Debtors' good faith under Section 1129(a)(3). There is also an unfair and improper asymmetry in deeming the counterparties to have released *unknown* contingent indemnity rights against the Debtors (who are most likely to know whether such a claim even exists) while the Debtors reserve those very rights against the counterparties and all others. *See* Plan, section 10.11.

***Proposed Resolution***: To resolve this objection, the Confirmation Order should provide as follows:

Section 8.1(b) of the Plan is revised as follows:

> (b) Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in this Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed pursuant to this Plan shall vest in, and be fully enforceable by, the applicable Reorganized Debtor in accordance with its terms, except as effected by payment that

> remedies any default cured by the payment of the Cure Amount or as modified by ~~the provisions of this Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment, or~~ applicable nonbankruptcy law.

Section 8.2(e) of the Plan is revised as follows:

> (e) Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any ~~Claims and Causes of Action against any Debtor or~~ defaults by any Debtor arising under any assumed executory contract or unexpired lease that (x) may be remedied by payment of the Cure Amount ~~at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease, whether monetary or nonmonetary, including all~~ (y) are Claims arising under sections 503(b)(9) or 546(c) of the Bankruptcy Code, or (z) are ~~any~~ defaults of provisions restricting the change in control or ownership interest composition, or any other bankruptcy-related defaults. Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned shall be deemed disallowed ~~and expunged~~ to the extent such proofs of Claim are effected by payment of the Cure Amount, without further notice to or action, order, or approval of the Bankruptcy Court

## IV. CONCLUSION

***Proposed Resolution***: For Governmental Units, like the Municipal Objectors, all of the foregoing objections may also be resolved by providing in the Confirmation Order that Section 10.13 of the Plan is revised as follows:

> **10.13 Special Provisions for Governmental Units.** Solely with respect to Governmental Units, nothing ~~herein shall limit or~~in the Plan, the Confirmation Order, or the Cure Notice including, without limitation, Sections 1.21 (Causes of Action), 5.9 (Satisfaction of Claims), 6.1 (General Settlement of Claims and Interests), 8.1(c) (Executory Contract General Treatment), 8.2(e) (Executory Contracts Determination of Cure and Deemed Consent), 10.3 (Release and Discharge of Debtors), 10.6 (Injunction), 10.8 (Exculpation) and 10.9 (Releases) of the Plan and Paragraphs 8 and 13 of the Cure Notice (collectively, the "Settlement Provisions"), shall expand the scope of any discharge, cure, waiver, release, ~~or~~exculpation, injunction, or other bar expressly provided to ~~which~~ the Debtors ~~or~~, the Reorganized Debtors ~~are entitled under the Bankruptcy Code. Further, nothing herein~~, or any other party by Bankruptcy Code Sections 524 and 1141, without their references to possible exceptions in the Plan, the Confirmation Order, or the Cure Notice. Further, nothing in the Plan, the Confirmation Order, or the Cure Notice, including ~~Section 10.8 and 10.9 hereof~~the Settlement Provisions, shall discharge, cure, waive, release, enjoin~~,~~ or an act as injunction of, settle, compromise, satisfy, otherwise bar or affect (a) any liability of the Debtors or the Reorganized Debtors to a Governmental Unit, including indemnification and contribution obligations, (1) arising on or after the ~~Confirmation~~

> ~~Date~~confirmation date with respect to events occurring on or after the ~~Confirmation Date, (b) any liability to~~confirmation date, (2) arising at any time under or related to any executory contract or unexpired lease that was assumed, or assumed and assigned, pursuant to the Plan, the Confirmation Order or otherwise, or (3) arising at any time if the liability of a Debtor to the Governmental Unit (i) was unknown, unsuspected, or otherwise unforeseen prior to the confirmation date or (ii) is an indemnification or contribution obligation; (b) any liability to or power, authority, or right of a Governmental Unit that (1) is not a Claim~~,~~ or (2) allows the Governmental Unit to seek an equitable remedy, even if the equitable remedy would give rise to a right to payment; (c) any valid right of setoff or recoupment of a Governmental Unit~~,~~; (d) any police or regulatory action by a Governmental Unit, ~~(e) any environmental liability~~including nuisance abatement; (e) any action to exercise any power of a Governmental Unit, including the power of eminent domain and any related or ancillary power or authority of a Governmental Unit that is necessary or desirable in order for it to exercise its power of eminent domain to acquire any assets or property of the Debtors, their estates, or the Reorganized Debtors and the power to provide electric service to the Governmental Unit's area; (f) any environmental liability, including any liability on an Environmental Claim, to a Governmental Unit that the Debtors, the Reorganized Debtors, any successors thereto, or any other Person or Entity may have as an owner or operator of real property ~~after the Effective Date,~~at any time; or (~~f~~g) any liability to a Governmental Unit on the part of any Persons or Entities other than the Debtors or the Reorganized Debtors, provided, that nothing in this Section 10.13 shall affect the Debtors' releases of any party in Section 10.9 hereof, nor shall anything ~~herein enjoin~~in the Plan ~~or~~, the Confirmation Order, or the Cure Notice, including the Settlement Provisions, discharge, cure, waive, release, enjoin or act as an injunction of, settle, compromise, satisfy, or otherwise bar or limit any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any of the matters described in clauses (a) through (~~f) above~~g) of this Section 10.13. Even if any matters described in clauses (a) through (g) of this Section 10.13 allow a Governmental Unit to obtain, directly or indirectly, any right of payment, such matters will not be treated as a Claim, which is subject to discharge or otherwise impacted by the Plan or the Confirmation Order.

Without these protections, the Municipal Objectors must object to confirmation of the Plan. The Debtors, to comply with applicable law and to be in good faith, should be required to be true to their theme. The voluntary commercial creditors—who the case is not supposed to be about—should be left *truly* unimpaired so they can function on a business-as-usual basis with the Reorganized Debtors and not be disadvantaged by Plan "gotchas."

DATED: May 15, 2020.

RESPECTFULLY SUBMITTED,

BOUTIN JONES INC.

By: *_/s/ Mark Gorton_*
Mark Gorton

*Attorneys for Creditor and Party-in-Interest, NORTHERN CALIFORNIA POWER AGENCY, TRANSMISSION AGENCY OF NORTHERN CALIFORNIA, SONOMA CLEAN POWER AUTHORITY, VALLEY CLEAN ENERGY ALLIANCE, REDWOOD COAST ENERGY AUTHORITY and CITY OF SANTA CLARA dba SILICON VALLEY POWER*

-and-

Jane Luckhardt, General Counsel
NORTHERN CALIFORNIA POWER AGENCY

*Attorney for Creditor and Party-in-Interest, NORTHERN CALIFORNIA POWER AGENCY*

-and-

Steven G. Gross, General Counsel
PORTER SIMON / Professional Corporation

*Attorney for Creditor and Party-in-Interest TRANSMISSION AGENCY OF NORTHERN CALIFORNIA*

-and-

Harriet A. Steiner
BEST BEST & KRIEGER LLP

*Attorneys for Creditors and Parties-in-Interest SONOMA CLEAN POWER AUTHORITY and*

*VALLEY CLEAN ENERGY ALLIANCE*

Phil Pogledich, County Counsel
Eric May, Senior Deputy County Counsel
COUNTY OF YOLO

*Attorneys for Creditor and Party-in-Interest VALLEY CLEAN ENERGY ALLIANCE*

-and-

Nancy Diamond
LAW OFFICES OF NANCY DIAMOND

*Attorneys for Creditor and Party-in-Interest REDWOOD COAST ENERGY AUTHORITY*

-and-

Lisa S. Gast
DUNCAN, WEINBERG, GENZER & PEMBROKE, P.C.

Brian Doyle, City Attorney
CITY OF SANTA CLARA

*Attorneys for Creditor and Party-in-Interest CITY OF SANTA CLARA dba SILICON VALLEY POWER*