EDWARD J. TREDINNICK (#84033)
GREENE RADOVSKY MALONEY
   SHARE & HENNIGH LLP
One Front Street, Suite 3200
San Francisco, California 94111-5357
Telephone: (415) 981-1400
Facsimile: (415) 777-4961
E-mail: etredinnick@greeneradovsky.com

Attorneys for Creditor,
City and County of San Francisco

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    -and-<br><br>PACIFIC GAS & ELECTRIC COMPANY,<br><br>    Debtors,<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No.: 19-30088-DM<br><br>Chapter 11<br><br>**OBJECTIONS OF THE CITY AND COUNTY OF SAN FRANCISCO TO CONFIRMATION OF JOINT PLAN OF REORGANIZATION**<br><br>DATE: May 27, 2020<br>TIME: 10:00 am<br>PLACE: Courtroom 17<br>         450 Golden Gate Avenue, 16th Fl.<br>         San Francisco, California<br>JUDGE: Hon. Dennis Montali<br><br>RELATED DOCKET NOS: 6320 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................1

BACKGROUND .........................................................................................................................2

PROVISIONS OF THE PLAN ...................................................................................................3

OBJECTIONS..............................................................................................................................4

    1.    The Plan provisions for a Discharge under Section 10.3 attempts to expand the provisions of Section 1141(d) of the Bankruptcy Code. .........................................................4

    2.    Section 10.3 of the Plan also provides for a complete release of the Debtors which is contrary to the unimpaired status of General Unsecured Creditors under Bankruptcy Code §1124 ..............................................................................................................................5

    3.    The provisions for the assumption of executory contracts and unexpired leases are contrary to the requirements of assumption of such contracts under Bankruptcy Code §365. ...................................................................................................................................7

    4.    The provisions of the Plan that are objectionable to San Francisco can be remedied by the amendment of Section 10.13 of the Plan ........................................................................8

CONCLUSION AND RESERVATION OF RIGHTS ................................................................9

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
ONE FRONT STREET,
SUITE 3200
SAN FRANCISCO, CA
94111

967860.2

i

Case: 19-30088    Doc# 7232    Filed: 05/15/20    Entered: 05/15/20 12:14:47    Page 2 of 15

# TABLE OF AUTHORITIES

Page

**Cases**

*In re Chassix Holdings, Inc.*,
  533 B.R. 64 (Bankr. S.D.N.Y. 2015) ................................................................... 5

*In re Conseco, Inc.*,
  301 B.R. 525 (Bankr. N.D. Ill. 2003) .................................................................. 6

*In re De Laurentiis Entertainment Group, Inc.*,
  963 F. 2d 1269, *cert. denied* 506 U.S. 918,
  1113 S. Ct.330, 121 L.Ed.2d 249 (9th Cir. 1992) ............................................... 7

*In re Jensen,*
  995 F.2d 925 (9th Cir. 1993) .............................................................................. 7

*NLRB v. Bildisco & Bildisco,*
  456 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) ....................................... 8

*Stewart Title Co. v. Old Republic National Title Insurance Co.,*
  83 F. 3d 735 (5th Cir. 1996) ............................................................................... 8

*Travelers Indemnity Co. v. Bailey,*
  129 S.Ct. 2195, 174 L.Ed. 2d 99 (2009) ............................................................. 1

*United Student Aid Funds, Inc. v. Espinosa*
  559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) .................................... 1

**Statutes**

11 United States Code
  Section 1124 ................................................................................................. 3, 5
  Section 1124(a) ................................................................................................. 1
  Section 1129(a)(1) ............................................................................................. 4
  Section 1141(a) ................................................................................................. 1
  Section 1141(d) ................................................................................................. 4

California Civil Code
  Section 1542 ...................................................................................................... 6

**Other Authorities**

3 Collier on Bankruptcy
  ¶ 365.03[3] (16th ed. rev. 2020) ........................................................................ 8

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
ONE FRONT STREET,
SUITE 3200
SAN FRANCISCO, CA
94111

967860.2

The City and County of San Francisco (**"San Francisco"**) in the above-captioned chapter 11 cases of Pacific Gas and Electric Company (the **"Utility"**) and PG&E Corporation (**"PG&E"** and, together with the Utility, the **"Debtors"**), hereby objects to the confirmation of the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* [Docket #6320] (the **"Plan"**), as described herein

## INTRODUCTION

From the outset of these chapter 11 cases, the Debtors have continuously stated that the primary purpose of these bankruptcy cases is the fair and efficient treatment of all tort victims arising from the 2017 and 2018 wildfires.

As a corollary to that primary purpose, the Debtors have also continually stated that general unsecured creditors, who were <u>not</u> fire victims, will not be impacted by these chapter 11 cases and it will be "business as usual" with PG&E and its general unsecured creditors. This notion was supposedly reinforced under the Plan wherein general unsecured creditors are treated as "unimpaired" as that term is defined under Bankruptcy Code section 1124(a) leaving unaltered the legal, equitable and contractual rights of the general unsecured creditors. As an unimpaired creditor, San Francisco and all other general unsecured creditors were unable to vote for or against the Plan.

However, the array of provisions under the Plan regarding discharges, releases, exonerations and injunctions paint a very different picture than "business as usual". This is extremely important to all creditors since Bankruptcy Code section 1141(a) provides that a confirmed plan binds the debtor, creditors, shareholders and other parties in interest. A confirmation order has the full force of a final judgment and preclusive effect. Therefore, overbroad and even illegal provisions included in a plan that is confirmed are binding on all parties and immune from collateral attack. *See, Travelers Indemnity Co. v. Bailey,* 129 S.Ct. 2195, 174 L.Ed. 2d 99 (2009); *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010).

This is particularly important for governmental units such as San Francisco which has long-standing and ongoing relationships with the Debtors within its geographical boundaries. These relationships go beyond those of merely debtor-creditor. They include rights to operate as a public utility in the City and County of San Francisco along with the responsibilities and obligations

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
ONE FRONT STREET,
SUITE 3200
SAN FRANCISCO, CA
94111

attendant thereto and in many instances the Debtors and San Francisco work side by side in delivering electrical service to the residents and businesses of San Francisco.

### BACKGROUND

San Francisco, through its numerous departments and agencies, is a creditor of PG&E and originally filed eight (8) separate proofs of claim in the bankruptcy case for its various departments and agencies[1]. These claims are as follows:

| Claim Nos. | Dept. or Claim Description | Amount |
|---|---|---|
| 62382 | SF Tax Collector | $5,092.50 |
| 64102 | SF Municipal Transportation Authority | $8,427.00 |
| 64105 | Dept. of Real Estate & OEWD | $1,911 plus contingent and unliquidated amounts. |
| 64110 | Port of San Francisco | Contingent and unliquidated amounts |
| 64163 | Litigation and Settlements Claim (various departments and agencies) | $16,000,000 plus various contingent and unliquidated amounts. |
| 64146 | SF Public Utilities Commission | $8,571,630.00 |
| 65036 | Franchise and SWAP Agreements | Contingent and unliquidated amounts |
| 65730[2] | SF Dept. of Public Works | $89,564.00 |

Several of these claims are for specific amounts for fees and services rendered by departments or agencies of San Francisco. Most of the claims asserted in Proofs of Claim 62382, 64102 and 65730 fall in this category.

---

[1] The San Francisco City and County Employees' Retirement System a related agency of San Francisco subsequently filed two claims on April 16, 2020 for potential damages arising from both debt and equity security purchases which are not general unsecured claims.

[2] Claim #65730 was subsequently withdrawn on January 14, 2020, as having been paid in full pursuant to PG&E's critical vendor authorization.

However, the majority of the claims asserted are contingent and unliquidated claims, including, but not limited to, environmental clean-up claims to both the City and the Port of San Francisco (Claim #64110), numerous claims arising from the Franchise Ordinances that the Utility operates under and which authorize it to provide gas and electric service within the City and County of San Francisco as well as certain related agreements that address complex issues concerning the treatment of Debtors' facilities located within the City and County of San Francisco (Claim #65036), disputes with the SFPUC and other departments regarding the denial of service claims under PG&E's Wholesale Distribution Tariff filed with the Federal Energy Regulatory Commission ("FERC") which were detailed in San Francisco's Relief from Stay Motion [Docket #1535] earlier in this case (Claim #64146), as well as various pieces of ongoing litigation in which San Francisco have direct claims against PG&E for damages and/or cross-claims for indemnity for damages to third-parties that are also asserted against San Francisco, multiple pending litigation cases before FERC and other regulatory agencies and multiple settlement claims that were pending approvals and/or were under negotiation at the time of the filing of these bankruptcy cases and will continue after confirmation of the Plan (Claim #64163).

All of the claims listed above, (except for certain environmental claims that are separately classified), are classified as General Unsecured Claims of the Utility (Class 4B) under the Plan. Class 4B, General Unsecured Claims are designated by the Debtors as "unimpaired" under Bankruptcy Code Section 1124 and creditors holding these Claims are not entitled to vote on the Plan.

In addition, PG&E in its recent Plan Supplement in Exhibit B has identified more than 400 executory contracts or unexpired leases to which San Francisco, or a San Francisco department or agency is a counter party and that the Debtors want to assume.

## PROVISIONS OF THE PLAN

The applicable provisions of the Plan that relate to discharge, releases and injunctions and which San Francisco bases its Objection include but are not limited to the following:

Section 1.21 defining "Cause of Action"

Section 5.9 entitled "Satisfaction of Claims"

Section 6.1 entitled "General Settlement of Claims and Interests"

GREENE RADOVSKY MALONEY SHARE & HENNIGH LLP
ONE FRONT STREET, SUITE 3200
SAN FRANCISCO, CA 94111

967860.3

Section 8.2(e), which is in Section 8.2 entitled "Determination of Cure Disputes and Deemed Consent"

Section 10.3 entitled "Release and Discharge of Debtors"

Section 10.6 entitled "Injunction"

Section 10.8 entitled "Exculpation"

Section 10.9(b) entitled "Releases by Holders of Claims and Interests"

Section 10.9(e) entitled "Waiver of Statutory Limitations on Releases"

Section 10.9(f) entitled "Injunction Related to Releases and Exculpation"

Section 10.13 entitled "Special Provisions for Governmental Units"

## OBJECTIONS

**1.     The Plan provisions for a Discharge under Section 10.3 attempts to expand the provisions of Section 1141(d) of the Bankruptcy Code.**

The proposed discharge in the Plan is not compliant with Bankruptcy Code § 1141(d). The language of the discharge section in at section 10.3 of the Plan provides as follows:

> Upon the Effective Date and in consideration of the distributions to be made hereunder, each holder of a Claim shall be deemed to have forever waived, released, and discharged the Debtors, to the full extent permitted in section 1141 of the Bankruptcy Code, of and from any and all Claims, Interest, rights, and liabilities that arose prior to ***the Effective Date***. [Emphasis added]

This is contrary to section 1141(d) which provides that the discharge is effective as to all Claims or Interests that arose prior to the **confirmation date**. For this reason alone, the Plan cannot be confirmed. Bankruptcy Code section 1129(a)(1) provides that the plan may be confirmed only if the plan complies with the applicable provisions of Title 11. The discharge provision under Plan section 10.3 clearly exceeds what is provided in Bankruptcy Code section 1141(d).

This is particularly problematic since the timing of the Effective Date is not scheduled to occur until several months after the confirmation date.[3] It is unclear under the Plan how claims arising after the confirmation date but before the Effective Date will be treated, particularly if those claims are

---

[3] Under the Case Resolution Contingency Process, entered into between the Debtors and the Governor Newsom's Office it is contemplated that the Effective Date could be as late as December 31, 2020.

disputed. It should be clarified that these claims should be treated as administrative claims for <u>all purposes</u>, without the necessity of filing of administrative claims with the court and that they will not be discharged whether or not they are determined prior to the Effective Date. In other words, "business as usual".

### 2. **Section 10.3 of the Plan also provides for a complete release of the Debtors which is contrary to the unimpaired status of General Unsecured Creditors under Bankruptcy Code §1124**

Section 10.3 of the Plan not only grants a discharge, but also provides for a complete release of the Debtors. In essence this is giving a general release to the Debtors for all claims. It is unclear why this is necessary where all general unsecured creditors are treated as unimpaired under Bankruptcy Code section 1124. These provisions are of concern to San Francisco, as well as vendors and other counter parties to prepetition contracts with the Debtors who may have contractual and/or common law rights of indemnification, contribution and similar rights against the Debtors. Depriving parties of their rights through general releases, while at the same time declaring their claims to be unimpaired and denying them the right to vote on the Plan, is both inequitable and at odds with Bankruptcy Code section 1124. *See, e.g., In re Chassix Holdings, Inc.*, 533 B.R. 64, 81 (Bankr. S.D.N.Y. 2015) ("If a creditor must release a claim . . . (as a condition to whatever payment or other treatment the plan provides for the creditor's claim against the debtor), it is difficult to understand how such a creditor could properly be considered 'unimpaired' by the Plan in the first place.").

The scope of the discharge and release is further expanded by the combination of the definition of "Cause of Action" in section 1.21 of the Plan in conjunction with Section 6.1 of the Plan which provides in part:

> The Plan shall be deemed a motion to approve a good-faith compromise and settlement pursuant to which the Debtors and the holders of Claims against and/or Interests in the Debtors settle all Claims, Interests, ***and Causes of Action*** pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The Confirmation Order shall constitute the Court's approval of the compromise, settlement, and release of all such Claims, Interests, ***and Causes of Action***, as well as a finding by the Bankruptcy Court that all such compromises, settlements, and releases are mutual and bi-directional and are in the best interests of the Debtors, their estates, and the holders of Claims, Interests, ***and Causes of Action***, and is fair, equitable, and reasonable…. {Emphasis added]

GREENE RADOVSKY MALONEY SHARE & HENNIGH LLP
ONE FRONT STREET, SUITE 3200
SAN FRANCISCO, CA 94111

5

967860.3

The broad scope of the discharge and release in Section 6.1 can be found in the definition of Cause of Action in section 1.21 of the Plan which reads:

> Cause of Action means, without limitation, any and all actions, class actions, proceedings, causes of action, controversies, liabilities, obligations, rights, **rights of setoff and**, **recoupment rights**, suits, damages, judgments, accounts, **defenses**, offsets, powers, privileges, licenses, franchises, Claims, Avoidance Actions, counterclaims, cross-claims, **affirmative defenses**, third-party claims, Liens, **indemnity**, contribution, guarantee, and demands of any kind or character whatsoever, whether known or **unknown**, asserted or **unasserted**, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, suspected or , foreseen or **unforeseen,** direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in contract or in tort, in law, in equity, or otherwise, whether arising under the Bankruptcy Code or any applicable non-bankruptcy law, based in whole or in part upon any act or omission or other event occurring on or prior to the Petition Date or during the course of the Chapter 11 Cases, **including through the Effective Date**.[Emphasis added]

In combination, the scope of the settlement provisions of Section 6.1 with the definition of Causes of Action in Section 1.21, coupled with the release provisions in Plan section 10.9 (e) (which provide a waiver of all statutory limitations on releases) results in the Debtors receiving the same benefit as if San Francisco (or any general unsecured creditor) had voluntarily entered into a general release with the Debtors of all known and unknown claims with a waiver of California Civil Code section 1542. Moreover, the release can be used by the Debtors offensively to assert that any defense to an affirmative claim brought against the creditor has been released. These released defenses include rights of setoff and recoupment. All of this without any additional consideration for the release and without San Francisco's affirmative consent.

A plan cannot construct "consent" to a release by merely saying that a party that accepts a justified distribution on its claims under a plan; consents to the plan release provision. This is because a party would receive its distribution on its claim under a plan whether or not the plan said the party also gave a release, so the party does not receive any additional consideration in exchange for the release. *See, In re Conseco, Inc.*, 301 B.R. 525, 527–28 (Bankr. N.D. Ill. 2003) (Provisions in a plan providing for a release "violated the best interests of creditors test because they forced creditors to accept the release or to give up the distribution to which they were entitled" and "a creditor's mere acceptance of a distribution under the plan cannot be construed as a voluntary consent to the release.").

6

The breadth of the scope of the discharge that the Debtors attempt to obtain through the broad definition of "Cause of Action" and related Plan provisions which incorporate this definition, is contrary to Ninth Circuit law which provides that an unknown claim, one that is not in "fair contemplation" is not subject to discharge. *See, In re Jensen,* 995 F.2d 925 (9th Cir. 1993) (only claims under fair contemplation are subject to discharge).

Further, setoff and recoupment rights are not subject to discharge as defenses to claims; *In re De Laurentiis Entertainment Group, Inc.*, 963 F. 2d 1269 *cert. denied* 506 U.S.918,1113 S. Ct.330, 121 L.Ed.2d 249 (9th Cir. 1992) ("the primacy of setoffs is essential to the equitable treatment of creditors").

At a minimum (in addition to the suggested language set out below for Section 10.13), Section 10.3 should include a statement that: "… nothing in the Plan or the Confirmation Order shall impair or otherwise alter any indemnification obligations, defenses, counterclaims, cross-claims, or third-party claims, including any rights to equitable comparative contribution, partial or comparative indemnity, set off, or recoupment, that the holder of any General Unsecured Claim may have against any Debtor or Reorganized Debtor." Further the definition of "Cause of Action "in Section 1.21 of the Plan should be modified to delete the expansive provisions highlighted above.

3. **<u>The provisions for the assumption of executory contracts and unexpired leases are contrary to the requirements of assumption of such contracts under Bankruptcy Code §365.</u>**

The provisions for the assumption of executory contracts and unexpired leases under Section VIII of the Plan should be clarified to provide for the curing of any defaults that arise under any assumed executory contract or unexpired lease during the period from the <u>confirmation date</u> to the <u>Effective Date</u>. Under the provisions of the Plan, on May 1, 2020, the Debtor filed a list of "cure amounts" that the Debtor believes are necessary to be paid to a counterparty upon the assumption of the contract and payable at the Effective Date.[4] Counterparties have fourteen days to respond to the accuracy of the "cure amounts".

However, during the period from May 1, 2020 until the confirmation date and thereafter to the

---

[4] San Francisco will file a separate Objection to the Assumption of Executory Contracts along with this Objection.

Effective Date, further defaults could arise and additional "cure amounts" may become due. However, under the provisions of the Plan, all "cure amounts" are determined as of the confirmation date. This leaves a potential gap in the proper cure amount of an assumed executory contract or unexpired lease.

This can be rectified by allowing the additional "cure amounts" that arise after May 1, 2020 be treated as administrative expense claims, that are not subject to the discharge and will pass through and be payable by the Reorganized Debtor in the ordinary course of business after the Effective Date without the necessity of the counter-party filing an administrative expense claim with the bankruptcy court. This will allow the Reorganized Debtor and the counterparty to resolve any disputes with respect to the <u>additional</u> "cure amounts" either in the ordinary course of business or through a claims resolution process either within the bankruptcy court or in the appropriate non-bankruptcy forum.

Finally, any discharge of claims arising subsequent to the confirmation date, <u>including</u> any contingent claims for contractual indemnity must not be subject to discharge as they are part of the assumed contract. Any such severance of claims violates the basic premise that executory contracts must be assumed with all attendant benefits and burdens, the trustee or debtor-in-possession must either assume the entire contract, *cum onere,* or reject the entire contract, shedding obligations as well as benefits. *NLRB v. Bildisco & Bildisco,* 456 U.S. 513, 531, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482,499 (1984); *Stewart Title Co. v. Old Republic National Title Insurance Co.,* 83 F. 3d 735 (5th Cir. 1996); *See also*, 3 *Collier on Bankruptcy ¶* 365.03[3] (16th ed. rev. 2020).

4. **The provisions of the Plan that are objectionable to San Francisco can be remedied by the amendment of Section 10.13 of the Plan**

San Francisco has worked with several other Governmental Units (as that term is defined under the Plan (Section 1.94 which adopts Bankruptcy Code section 101(27)), to revise Section 10.13 of the Plan in a manner that will rectify the offending parts of the Plan as it relates to all Governmental Units. The revised Section 10.13 is as follows:[5]

> **10.13 Special Provisions for Governmental Units.** Solely with respect to Governmental Units, nothing in the Plan, the Confirmation Order, or the Cure Notice including, without limitation, Sections 1.21 (Causes of Action), 5.9 (Satisfaction of Claims), 6.1 (General Settlement of Claims and Interests), 8.1(c) (Executory Contract General Treatment), 8.2(e)

---

[5] A redline version of this amended Section 10.13 is attached as Exhibit "A".

(Executory Contracts Determination of Cure and Deemed Consent), 10.3 (Release and Discharge of Debtors), 10.6 (Injunction), 10.8 (Exculpation) and 10.9 (Releases) of the Plan and Paragraphs 8 and 13 of the Cure Notice (collectively, the "Settlement Provisions"), shall expand the scope of any discharge, cure, waiver, release, exculpation, injunction, or other bar expressly provided to the Debtors, the Reorganized Debtors, or any other party by Bankruptcy Code Sections 524 and 1141, without their references to possible exceptions in the Plan, the Confirmation Order, or the Cure Notice. Further, nothing in the Plan, the Confirmation Order, or the Cure Notice, including the Settlement Provisions, shall discharge, cure, waive, release, enjoin or act as an injunction of, settle, compromise, satisfy, otherwise bar or affect (a) any liability of the Debtors or the Reorganized Debtors to a Governmental Unit, including indemnification and contribution obligations, (1) arising on or after the confirmation date with respect to events occurring on or after the confirmation date, (2) arising at any time under or related to any executory contract or unexpired lease that was assumed, or assumed and assigned, pursuant to the Plan, the Confirmation Order or otherwise, or (3) arising at any time if the liability of a Debtor to the Governmental Unit (i) was unknown, unsuspected, or otherwise unforeseen prior to the confirmation date or (ii) is an indemnification or contribution obligation; (b) any liability to or power, authority, or right of a Governmental Unit that (1) is not a Claim or (2) allows the Governmental Unit to seek an equitable remedy, even if the equitable remedy would give rise to a right to payment; (c) any valid right of setoff or recoupment of a Governmental Unit; (d) any police or regulatory action by a Governmental Unit, including nuisance abatement; (e) any action to exercise any power of a Governmental Unit, including the power of eminent domain and any related or ancillary power or authority of a Governmental Unit that is necessary or desirable in order for it to exercise its power of eminent domain to acquire any assets or property of the Debtors, their estates, or the Reorganized Debtors and the power to provide electric service to the Governmental Unit's area; (f) any environmental liability, including any liability on an Environmental Claim, to a Governmental Unit that the Debtors, the Reorganized Debtors, any successors thereto, or any other Person or Entity may have as an owner or operator of real property at any time; or (g) any liability to a Governmental Unit on the part of any Persons or Entities other than the Debtors or the Reorganized Debtors, provided, that nothing in this Section 10.13 shall affect the Debtors' releases of any party in Section 10.9 hereof, nor shall anything in the Plan, the Confirmation Order or the Cure Notice, including the Settlement Provisions, discharge, cure, waive, release, enjoin or act as an injunction of, settle, compromise, satisfy, or otherwise bar or limit any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any of the matters described in clauses (a) through (g) of this Section 10.13. Even if any matters described in clauses (a) through (g) of this Section 10.13 allow a Governmental Unit to obtain, directly or indirectly, any right of payment, such matters will not be treated as a Claim, which is subject to discharge or otherwise impacted by the Plan or the Confirmation Order.

## CONCLUSION AND RESERVATION OF RIGHTS

For the reasons stated herein, San Francisco requests that the Court deny confirmation of the Plan until the Plan provisions regarding the discharge and releases are modified to comply with the Bankruptcy Code and applicable law and/or that the provisions of Section 10.13 Special Provisions for Governmental Units is modified as proposed in this Objection.

San Francisco reserves all rights to be heard by the Court in connection with the Plan Confirmation and also reserves its right to amend, supplement or otherwise modify this Objection prior to or at the confirmation hearing. San Francisco also joins the objections of similarly situated

governmental units, including Valley Clean Energy Alliance and the South San Joaquin Irrigation District, and/or general unsecured creditors submitted to the Court.

Respectfully submitted,

Dated: May 15, 2020

GREENE RADOVSKY MALONEY
SHARE & HENNIGH LLP

By: _____/s/ Edward Tredinnick_____
       Edward J. Tredinnick
Attorneys for Creditor,
City and County of San Francisco

# EXHIBIT "A"

## Redline Version of Amended Section 10.13

**10.13 Special Provisions for Governmental Units.** Solely with respect to Governmental Units, nothing ~~herein shall limit or~~in the Plan, the Confirmation Order, or the Cure Notice including, without limitation, Sections 1.21 (Causes of Action), 5.9 (Satisfaction of Claims), 6.1 (General Settlement of Claims and Interests), 8.1(c) (Executory Contract General Treatment), 8.2(e) (Executory Contracts Determination of Cure and Deemed Consent), 10.3 (Release and Discharge of Debtors), 10.6 (Injunction), 10.8 (Exculpation) and 10.9 (Releases) of the Plan and Paragraphs 8 and 13 of the Cure Notice (collectively, the "Settlement Provisions"), shall expand the scope of any discharge, cure, waiver, release, ~~or~~exculpation, injunction, or other bar expressly provided to ~~which~~ the Debtors ~~or~~, the Reorganized Debtors ~~are entitled under the Bankruptcy Code. Further, nothing herein~~, or any other party by Bankruptcy Code Sections 524 and 1141, without their references to possible exceptions in the Plan, the Confirmation Order, or the Cure Notice. Further, nothing in the Plan, the Confirmation Order, or the Cure Notice, including ~~Section 10.8 and 10.9 hereof~~the Settlement Provisions, shall discharge, cure, waive, release, enjoin~~,~~ or act as an injunction of, settle, compromise, satisfy, otherwise bar or affect (a) any liability of the Debtors or the Reorganized Debtors to a Governmental Unit, including indemnification and contribution obligations, (1) arising on or after the ~~Confirmation Date~~confirmation date with respect to events occurring on or after the ~~Confirmation Date, (b) any liability to~~confirmation date, (2) arising at any time under or related to any executory contract or unexpired lease that was assumed, or assumed and assigned, pursuant to the Plan, the Confirmation Order or otherwise, or (3) arising at any time if the liability of a Debtor to the Governmental Unit (i) was unknown, unsuspected, or otherwise unforeseen prior to the confirmation date or (ii) is an indemnification or contribution obligation; (b) any liability to or power, authority, or right of a Governmental Unit that (1) is not a Claim~~,~~ or (2) allows the Governmental Unit to seek an equitable remedy, even if the equitable remedy would give rise to a right to payment; (c) any valid right of setoff or recoupment of a Governmental Unit~~,~~; (d) any police or regulatory action by a Governmental Unit, ~~(e) any environmental liability~~including nuisance abatement; (e) any action to exercise any power of a Governmental Unit, including the power of eminent domain and any related or ancillary power or authority of a Governmental Unit that is necessary or desirable in order for it to exercise its power of eminent domain to acquire any assets or property of the Debtors, their estates, or the Reorganized Debtors and the power to provide electric service to the Governmental Unit's area; (f) any environmental liability, including any liability on an Environmental Claim, to a Governmental Unit that the Debtors, the Reorganized Debtors, any successors thereto, or any other Person or Entity may have as an owner or operator of real property ~~after the Effective Date,~~at any time; or (~~f~~g) any liability to a Governmental Unit on the part of any Persons or Entities other than the Debtors or the Reorganized Debtors, provided, that nothing in this Section 10.13 shall affect the Debtors' releases of any party in Section 10.9 hereof, nor shall anything ~~herein enjoin~~in the Plan, the Confirmation Order, or the Cure Notice, including the Settlement Provisions, discharge, cure, waive, release, enjoin or act as an injunction of, settle, compromise, satisfy, or otherwise bar or limit any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any of the matters described in clauses (a) through (~~f) above~~g) of this Section 10.13. Even if any matters described in clauses (a) through (g) of this Section 10.13 allow a Governmental Unit to obtain, directly or indirectly, any right of payment, such matters will not be treated as a Claim, which is subject to discharge or otherwise impacted by the Plan or the Confirmation Order.