EDWARD J. TREDINNICK (#84033)
GREENE RADOVSKY MALONEY
 SHARE & HENNIGH LLP
One Front Street, Suite 3200
San Francisco, California 94111-5357
Telephone: (415) 981-1400
Facsimile: (415) 777-4961
E-mail: etredinnick@greeneradovsky.com

Attorneys for Creditor,
City and County of San Francisco

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    -and-<br><br>PACIFIC GAS & ELECTRIC COMPANY,<br><br>Debtors,<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No.: 19-30088-DM<br><br>Chapter 11<br><br>**OBJECTIONS OF THE CITY AND COUNTY OF SAN FRANCISCO TO SCHEDULE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED PURSUANT TO THE PLAN AND PROPOSED CURE AMOUNTS**<br><br>DATE:    May 27, 2020<br>TIME:    10:00 am<br>PLACE:   Courtroom 17<br>         450 Golden Gate Avenue, 16th Fl.<br>         San Francisco, California<br>JUDGE:   Hon. Dennis Montali<br><br>RELATED DOCKET NOS: 6320, 7037 |

The City and County of San Francisco (**"San Francisco"**) in the above-captioned chapter 11 cases of Pacific Gas and Electric Company (the **"Utility"**) and PG&E Corporation (**"PG&E"** and, together with the Utility, the **"Debtors"**), hereby submits these objections to the *Schedule of Executory Contracts and Unexpired Leases To Be Assumed Pursuant To The Plan And Proposed Cure Amounts* [Docket #7037] (the **"Schedule of Assumed Contracts"**), as described herein

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
ONE FRONT STREET,
SUITE 3200
SAN FRANCISCO, CA
94111

568209.3

Case: 19-30088    Doc# 7252    Filed: 05/15/20    Entered: 05/15/20 13:40:00    Page 1 of 7

1

# INTRODUCTION

1. On May 1, 2020, the Debtors filed their Schedule of Assumed Contracts as part of the Plan Supplement [Docket #7037]. The schedule consists of 1,778 pages listing each executory contract or unexpired lease ("**Agreements**") that the Debtors wish to assume. Also listed were the Debtor's proposed cure amounts (the "**Cure Amount**") for each Agreement.

2. Amongst this listing, are four hundred nineteen (419) Agreements that San Francisco has identified as an Agreement in which San Francisco, or one of its departments or agencies is a counter-party (hereinafter collectively referred to as the **"San Francisco Agreements"**). Attached hereto as Exhibit "A" is a spreadsheet showing the San Francisco Agreements that were listed in the Schedule of Assumed Contracts.[1]

## Agreements that San Francisco Agrees with the Cure Amount.

3. Amongst the San Francisco Agreements there are thirty-three (33) which San Francisco has been able to identify from the Debtor's description as an existing San Francisco Agreement with a specific agency and can determine the nature of the Agreement. Of these there are twenty-seven (27) Agreements where San Francisco concurs that there are no monetary defaults which require a Cure Amount, San Francisco has indicated that it agrees with PG&E and will agree to the assumption of the specific Agreement, subject to resolution of the general objections set forth in Section D, below. These Agreements are found on Exhibit A as line items 1-4, 6-13, 16, 20, 23-34 and 38.

## Agreements that San Francisco Disputes the Cure Amount.

4. There are six (6) San Francisco Agreements that have been identified from the Debtors description that San Francisco disputes the Debtors designation that there are no Cure Amounts necessary to assume these contracts. These Agreements are:

a) Electric Franchise Ordinance No. 414 (line 14),

b) Gas Franchise Agreement No. 413 (line 15),

---

[1] Exhibit A shows the contracts as described by the Debtors in their Schedule of Assumed Contracts and has referenced the page number in the 1,778-page list of contracts that is attached to Exhibit B of the Plan Supplement. However, the line items referred to in this Objection are those in Exhibit A to the Objection. The entries for the 382 "Permits" are combined in two separate line items as will be described herein.

c) Memorandum of Understanding for Hunters Point and Agreement to Close Hunter's Point Power Plant (lines 16 and 17),

d) Cost Sharing Agreement Gas House Cove and CSA Amendment 1 (Gas House Cove) (lines 20 and 21).

The disputes on these Agreements regarding the Cure Amounts will be discussed below in Sections B and C.

**Agreements that San Francisco is unable to identify by the description provided by Debtors**.

5. San Francisco has been unable to identify three hundred eighty-six (386) of the listed San Francisco Agreements based on the descriptions provided by the Debtor. Of these remaining Agreements, three hundred eighty-three (382) Agreements, have been designated in the Schedule of Assumed Contracts as a "Permit" with a corresponding number that is unknown to any of the agencies or departments of San Francisco. Each of the "Permits" is listed with no cure amount. These Agreements are listed as groups on line 35 and line 37 of Exhibit A. Without further information San Francisco cannot identify the 382 Permits that have been listed nor determine whether there are any defaults that require cure, or if these Permits are the entire number of such Agreements that it has with the Debtors

6. As of the deadline for filing this Objection, San Francisco also has been unable to fully identify the Agreements set forth in Exhibit A in line 5 (Annual Fees), no cure; line 19 (Interconnection Agreement), no cure amount, line 36 (Sewer Streets Improvements Agreement), no Cure Amount and line 39 (Water Agreement) which has been listed with a proposed Cure Amount of $44,778.74.

7. For the reasons set out below in Section A, San Francisco objects to the assumption of the Agreements that cannot be identified.

## OBJECTIONS

### A. Lack of Notice in Description of Agreements

8. San Francisco objects to the vague designation of the 382 Permits with a $0 Cure Amount on the grounds that the Debtors have not properly identified these San Francisco Agreements

with sufficient specificity to put San Francisco on notice of 1) the proper identity of the specific San Francisco Agreement and 2) any Cure Amount attendant to the specific San Francisco Agreement. The assumption of these San Francisco Agreements without the necessary identification as to the nature and identity of the Agreement and/or any cure obligations on such truncated notice violates San Francisco's due process rights with respect to this matter.

9. Likewise, San Francisco objects to the assumption of the Agreements in line items 5, 19 and 36 all of which have been listed with no Cure Amount without additional information that would allow San Francisco to determine both the exact identity of the Agreement and whether any Cure Amount is due. Similarly, the Agreement on line 39 that is identified as a "Water Agreement" with the SFPUC and the Cure Amount of $44,778.74, cannot be identified by San Francisco without additional information. As such, San Francisco objects to the Cure Amount for that Agreement.

10. These objections may be able to be remedied by providing San Francisco copies of the Agreements listed above which will allow the appropriate department or agency of San Francisco to make a prompt determination as to the exact identity of the Agreement and the proper cure amount, if any. San Francisco reserves all rights to object the assumption of the San Francisco Agreements and any Cure Amounts until proper identification of the San Francisco Agreements described in this section is obtained.

### B. Objection to Cure Amounts for Franchise Ordinances.

11. San Francisco specifically objects to the assumption of the Franchise Ordinances that are identified in the Schedule of Assumed Contracts as Gas Franchise Ordinance No. 413 (line 15) and Electric Franchise Ordinance No. 414 (line 14) (the **"Franchise Ordinances"**) with no Cure Amounts. The Franchise Ordinances are the basic agreements that the Utility operates under and which authorize it to provide gas and electric service within the City and County of San Francisco as well as the related supplemental agreements implementing the requirements of the Franchise Ordinances.

12. San Francisco previously filed and specifically refers by reference to Claim # 65036 wherein it set forth its claims under the Franchise Ordinances and related agreements at the time of the filing of its Proof of Claim. Since the filing of this bankruptcy case and continuing up to the date of

this Objection San Francisco continues to have claims against the Utility under the Franchise Ordinances and related agreements. As set forth in Claim #65306, the Cure Amount under these agreements is not $0. Portions of the claims asserted in Claim #65306 remain outstanding and unresolved and in some cases are contingent claims for indemnity against the Utility, since San Francisco's contractors allege that San Francisco is responsible for amounts that go unpaid by the Utility, for which San Francisco is required to pay and seek reimbursement from the Utility. San Francisco estimates that the total cure amount of <u>pre-petition</u> claims is well in excess of $1 million. Furthermore, San Francisco has identified additional <u>post-petition</u> claims under the Franchise Agreements, including but not limited to, claims arising out of the 1995 Evans Street project.

### C. Objections to Cure Amounts for Gas House Cove Cost Sharing Agreements and Memorandum of Understanding for Hunters Point and Agreement to Close the Hunters Point Power Plant.

13. The Agreements listed in lines 16 and 17 are related to the close of the Hunters Point Plant. Each of these Agreements are listed by the Debtors as having no Cure Amount. San Francisco filed a claim on behalf of the Office of Economic and Workplace Development in the sum of $1,911.00 (Claim # 64015). It has determined that the amount now needed to cure any defaults is $10,709. Invoices for these amounts are attached hereto as Exhibit B.

14. The Agreements listed in lines 20 and 21 are related to Cost Sharing Agreements with the San Francisco Recreation and Parks Department for the Gas House Cove Cleanup. Each of these Agreements are listed by the Debtors as having no Cure Amount. San Francisco estimates that there are current liabilities under these Agreements that are in excess of $65,000.00.

### D. Assumption Of San Francisco Agreements Must Include Cure Of All Post Petition Amounts and all Contingent Liabilities provided under the Agreements.

15. As a final overall objection to the Debtors' Schedule of Assumed Contracts and the Plan provisions regarding the Assumption of Executory Contracts and Unexpired Leases, San Francisco objects to the discharge of any claims that it may have under <u>any</u> San Francisco Agreement for defaults or claims arising prior to the effective date, <u>including any contractual claims for indemnity</u>.

16. It is axiomatic that a debtor-in-possession must assume, with limited exceptions, any

executory contract <u>as is</u> under applicable non-bankruptcy law. Executory contracts cannot be assumed in part and rejected in part. Upon assumption the Debtor accepts the contract <u>cum onere</u>, with all its benefits and burdens. Extinguishing valid contingent indemnity claims under a San Francisco Agreement is an inappropriate escape from a valid cure obligation.

17. Notwithstanding the Debtor's language in the Schedule of Assumed Contracts and the Plan, San Francisco reserves all rights to assert any claim that arises from the date of the filing of this document through the Effective Date of the Plan under any of the San Francisco Agreements, including the Franchise Ordinances and related supplemental agreements. Any monetary default arising in the interim period from the confirmation to the Effective Date must be satisfied for the Debtors to comply with cure requirements of Bankruptcy Code §365(b)(1). There can be no discharge of Claims arising within this interim period prior to the Effective Date of the Plan as is contemplated in Section 8.2(e) of the Plan nor of the contingent indemnity obligations in any of the Agreements that have not ripened prior to the assumption as proposed under ¶13 of the Schedule of Assumed Contracts.

18. The Debtors' attempt to dissect certain liabilities from the San Francisco Agreements is entirely inconsistent with the requirements for and results of assumption of an executory contract under the Bankruptcy Code Section 365 which provides that a debtor may assume an executory contract if the debtor cures any defaults and provides adequate assurance of future performance. 11 U.S.C. § 365.

19. Assumption of an executory contract allows the contract to continue "as is" and does not change the obligations of the debtor or the counterparty to the contract, as long as the debtor complies with the requirements for assumption in the Bankruptcy Code. *See Mission Prod. Holdings v. Tempnology, LLC*, 587 U.S. __, 139 S. Ct. 1652, 1658, 203 L. Ed. 2d 876, 883 (2019) ("Section 365(a) enables the debtor . . ., upon entering bankruptcy, to decide whether the contract is a good deal for the estate going forward. If so, the debtor will want to assume the contract, fulfilling its obligations while benefiting from the counterparty's performance."). Thus, after assumption of a contract, the debtor must perform "in full, just as if the bankruptcy had not intervened." *In re Frontier Properties*, 979 F.2d 1358, 1367 (9th Cir. 1992); *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531–

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
ONE FRONT STREET,
SUITE 3200
SAN FRANCISCO, CA
94111

568209.3

Case: 19-30088   Doc# 7252   Filed: 05/15/20   Entered: 05/15/20 13:40:00   Page 6 of 7

32 (1984) (If a debtor assumes "the executory contract, however, it assumes the contract cum onere . . .."). *See also*, 3 *Collier on Bankruptcy* ¶ 365.03[3] (16th ed. 2020)

20. Further, assumption of an executory contract results in all obligations of the debtor under the contract being treated as administrative expenses, regardless of whether the expenses arose prepetition or postpetition. *In re U.S. Metalsource Corp.*, 163 B.R. 260, 269 (Bankr. W.D. Pa. 1993). Thus, an assumed contract essentially "rides through" the bankruptcy, and the debtor and counterparty go forward with all of their rights and obligations. The Debtor's attempt to avoid the results of assumption under §365 must be rejected by the Court both in the approval of the Plan and the assumption of the San Francisco Agreements

## **CONCLUSION**

WHEREFORE, San Francisco objects to the assumption of the San Francisco Agreements listed in the Debtors Schedule of Assumed Contracts without the satisfaction of the objections set forth herein. San Francisco reserves all rights to be heard by the Court in connection with the Assumption of the San Francisco Agreements and also reserves its right to amend, supplement or otherwise modify this Objection prior to or at the confirmation Hearing or any subsequent hearing in relation to the assumption of the San Francisco Agreements by the Debtors

Respectfully submitted,

Dated: May 15, 2020

GREENE RADOVSKY MALONEY
SHARE & HENNIGH LLP

By: \_\_\_\_\_/s/ Edward Tredinnick\_\_\_\_\_
Edward J. Tredinnick
Attorneys for Creditor,
City and County of San Francisco