Nicholas A. Carlin, CSB No. 112532
Brian S. Conlon, CSB No. 303456
PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 - The Presidio
San Francisco, CA 94129
Telephone: 415-398-0900
Fax:       415-398-0911
Email:     nac@phillaw.com
           bsc@phillaw.com

Michael Malter, CSB No. 87908)
Robert G. Harris, CSB No. 124678)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
Tel: (408) 295-1700
Fax: (408) 295-1531
Email: Michael@bindermalter.com
Email: Rob@bindermalter.com

Attorneys for Plaintiff Anthony Gantner,
Individually and on behalf of all those
similarly situated

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered) |
| ANTHONY GANTNER, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PG&E CORPORATION, a California Corporation, and PACIFIC GAS & ELECTRIC COMPANY, a California Corporation,<br><br>Defendants. | Adv. Pro. No. 19-03061 (DM)<br><br>**ANTHONY GANTNER'S OBJECTION TO PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 16, 2020 (ECF. NO. 6320)** |

## I. INTRODUCTION

Plaintiff Anthony Gantner, the named plaintiff in the putative class action adversary proceeding filed in this Court concerning PG&E's Public Safety Power Shutoffs (PSPSs) (*Gantner v. PG&E Corp.*, Adv. Proc. No. 19-3061DM), hereby submits this objection to the Debtors' Joint Chapter 11 Plan for Reorganization Dated March 16, 2020 (ECF No. 6320) on the grounds that the Plan fails to explicitly track the language of the Disclosure Statement dated March 17, 2020 (ECF No. 6353) in two particulars: (1) despite the Disclosure Statement explicitly listing PSPS claims as "Administrative Expense Claims," the Plan fails to do so; and (2) despite the Disclosure Statement explicitly stating that unpaid Administrative Expense Claims will not be discharged, the Plan fails to explicitly include the PSPS liabilities as exceptions from discharge and the discharge injunction as it does other unpaid administrative claims such as the Kincaid Fire claims.

For avoidance of any future uncertainty, the Plan should be revised to be consistent with the Disclosure Statement and unambiguously state that the PSPS claims are Administrative Expense Claims that will not be discharged upon Plan confirmation, and that to the extent such claims are allowed to proceed by the District Court, they will be the responsibility of the successor PG&E entity.

## II. STATUS OF THE PSPS ADVERSARY PROCEEDING

On December 19, 2019, Plaintiff Anthony Gantner ("Gantner") filed a class action adversary proceeding on behalf of a putative class of individuals impacted by PG&E's post-petition PSPSs, seeking at least $2.5 billion in damages (the "PSPS Adversary Proceeding").

On March 30, 2020, the Court issued its Memorandum Decision on Debtors' Motion to Dismiss and Strike, granting Debtors' motion and dismissing the PSPS Adversary Proceeding without leave to amend. (AP ECF No. 34.) The Court confirmed this decision with an Order on April 3. (AP ECF No. 36.) Gantner has appealed that order to the United States District Court for the Northern District of California. (AP ECF No. 37.) That appeal is pending in that court as *Gantner v. PG&E Corp.*, N.D. Cal. Case No. 20-cv-02584-HSG.

Phillips, Erlewine, Given & Carlin, LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
(415) 398-0900

## III. THE DISCLOSURE STATEMENT AND PLAN

On February 7, 2020, Debtors submitted their Proposed Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization. (EFC No. 5700). The only mention of the PSPS Adversary Proceeding in that version of the Disclosure Statement was as follows:

> On December 19, 2019, certain class action plaintiffs commenced Adversary Proceeding No. 19-03061 (the **"PSPS Adversary Proceeding"**) against the Debtors in the Bankruptcy Court seeking damages and injunctive relief related to certain planned power outages instituted by the Debtors in October and November 2019. The Debtors do not believe there is any merit to the claims asserted in the PSPS Adversary Proceeding on January 21, 2020. The motion is currently pending before the Bankruptcy Court and is scheduled to be heard on March 10, 2020.

(ECF No. 5700 at p. 21.)

On March 6, Gantner objected to the Disclosure Statement, for among other reasons, failing to specifically address how the PSPS Adversary Proceeding liability will be paid (ECF No. 6149 at p.3 [Objection 3]) and the risks underlying PG&E's successor's financing post-approval should the PSPS Adversary Proceeding be successful (Id. at pp. 3-4 [Objection 4]).

In response to these objections (and perhaps others), Debtors added the following text to the March 17, 2020 Disclosure Statement which the Court approved (ECF No. 6353).

First, language confirming that the PSPS claims are "Administrative Expense Claims," and recognizing that they will be assumed by, and could therefore affect the value of, the Reorganized PG&E entity:

> ***Administrative Expense Claims and Non-Fire Claims.*** It is not possible to fully quantify the aggregate amount of Administrative Expenses payable by the Debtors, such as any claims arising from the Kincade Fire, <u>Public Safety Power Shutoffs</u>, as well as certain General Unsecured Claims and subordinated claims either related to securities fraud claims or otherwise. <u>To the extent these claims are not paid or reserved for on the Effective Date, they could negatively affect the value of the Reorganized PG&E Corp. common stock</u> held by the Fire Victim Trust, which could reduce the amount of Cash ultimately available to distribute to the holders of Fire Victim Claims.

(Id. at p. 31:11-15, emphasis added.)

And second, confirming that such claims are not discharged pursuant to the Plan:

> (b) Treatment: Each holder of an Allowed Administrative Expense Claim will be paid in full on the Effective Date; *provided that* any Allowed Administrative Expense Claim that is not due and payable prior to the Effective Date, shall be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities. <u>For the avoidance of doubt, no Administrative Expense Claims shall be discharged pursuant to the Plan, other than Allowed Administrative Expense Claims that have been paid in Cash or otherwise satisfied in the ordinary course in an amount equal to the Allowed amount of such Claim on or prior to the Effective Date.</u>

(ECF No. 6353 at p. 24:19-23, emphasis added). On March 16, 2020, the Plan Proponents filed the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization, Dated March 16, 2020 (ECF No. 6320) (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented, the "Plan"). That Plan contained the "For the avoidance of doubt language" emphasized above (ECF No. 6320 at p. 43:6-14) but did not contain language specifically including the PSPS liabilities like the Debtors had added to the Disclosure Statement in response to Gantner's objection.[1]

## IV. OBJECTION

Gantner objects to the Plan on two grounds.

First, the Plan fails to include the clarifying language contained in the court-approved Disclosure Statement concerning the status of the PSPS claims. As shown above, in the Disclosure Statement, Debtors explicitly categorized the PSPS claims, like the Kincade Fire claims and all other unpaid Administrative Claims, as Administrative Expense Claims (ECF No. 6353 at p. 31:11-15) and, in no uncertain terms, states that "no Administrative Expense Claims shall be discharged pursuant to the Plan, other than Allowed Administrative Expense Claims that have been paid in Cash or otherwise satisfied in the ordinary course in an amount equal to the Allowed amount of such Claim on or prior to the Effective Date" (Id. at p. 24:19-23).

---

[1] This morning, the parties met and conferred telephonically concerning the foregoing objections. Debtors' counsel indicated that they did not intend to amend the Plan to satisfy any of Gantner's objections.

(Gantner's PSPS claims have not been paid at all, so they would not qualify for the exception). While the Plan does track the language quoted directly above in Section 2.1 (ECF No. 6320 at p. 43:6-14), the Plan does not, but should contain the same type of concrete language specifically for the PSPS claims as the Disclosure Statement does. To avoid any doubt, the explicit designation of PSPS claims as Administrative Expense Claims should be included in Section 1.4 as part of the definition of "Administrative Expense Claim" after "including" (ECF No. 6320 at p.7:20-8:4) as follows (new text in bold):

> **Administrative Expense Claim** means any cost or expense of administration of any of the Chapter 11 Cases arising on or before the Effective Date that is allowable under section 503(b) of the Bankruptcy Code and entitled to priority under sections 364(c)(1), 503(b) (including 503(b)(9) Claims), 503(c), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code that has not already been paid, including, (a) any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by one or more of the Debtors, as a debtor in possession, during the Chapter 11 Cases, including, for the acquisition or lease of property or an interest in property or the performance of services, or any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code, (b) any DIP Facility Claim, (c) any Professional Fee Claim, **(d) any claim arising from a post-petition Public Safety Power Shutoff, including those alleged in the Gantner v. PG&E Adversary Proceeding**, and (e) any Intercompany Claim authorized pursuant to the Cash Management Order.

Second, Section 10.3 of the Plan should be amended to be consistent with the Disclosure Statement as follows (new text in bold):

> Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date; *provided*, *however*, that any liability of the Debtors arising from any fire occurring after the Petition Date, including the Kincade fire, **or any Public Safety Power Shutoff occurring after the Petition Date**, **including those alleged in the *Gantner v. PG&E* Adversary Proceeding,** that **have** not been satisfied in full as of the Effective Date shall not be discharged, waived, or released. In addition, (a) from and after the Effective Date neither the automatic stay nor any other injunction entered by the Bankruptcy Court shall restrain the enforcement or defense of any claims for **(a)**

> fires occurring after the Petition Date, including the Kincade fire or the Lafayette fire, **or (b) any Public Safety Power Shutoffs occurring after the Petition Date**, in any court that would otherwise have jurisdiction if the Chapter 11 Cases had not been filed and (b) no claims for fires **or Public Safety Power Shutoffs** or motions for allowance of claims for fires **or Public Safety Power Shutoffs** occurring after the Petition Date need to be filed in the Chapter 11 Cases. Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or Interest in the Debtors.

(ECF No. 6320 at pp. 80:25-81:8.)

To be clear, Gantner's PSPS claims are post-petition administrative claims which cannot be discharged by the Plan confirmation even if the Court does not order the Debtors to amend the Plan.

First, a negligence claim accrues when plaintiff sustains an injury. *Dougherty v. Bank of Am., N.A.*, 177 F. Supp. 3d 1230, 1244 (E.D. Cal. 2016). Gantner alleges that the Debtors were negligent and the PSPS events all occurred post-petition.

Second, in determining whether a claim is pre-petition or post-petition, courts apply the "fair contemplation test" which dictates that "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence if a cause of action has not yet accrued under nonbankruptcy law." *In re SNTL Corp.* (9th Cir. 2009) 571 F.3d 826, 839. Gantner could not have known prior to January 2019 that he was going to be injured by PSPSs later that year.

Third, even if he could have contemplated such future injury, if part of the claim arises from post-petition tortious conduct, it is not dischargeable in bankruptcy. *Krein v. Szewc (In re Szewc)*, 568 B.R. 348, 355-356 (Bankr. D. Oregon 2017). Here, Gantner's claim arises at least in part from such tortious post-petition conduct – i.e, nine additional months of negligent maintenance. *See, e.g., United States v. Pacific Gas and Electric Co.*, Case No. 3:14-cr-00175-WHA (N.D. Cal. Apr. 29, 2020) (Order Modifying Conditions of Probation) (setting forth in detail PG&E's post-petition negligence necessitating PSPSs).

And in any event, PG&E has waived any argument that the PSPS claims are not non-dischargeable Administrative Expense Claims by including such language in the Disclosure Statement.

6

Nevertheless, the two proposed minor adjustments set out above would significantly clarify the Plan and bring it in line with the Disclosure Statement the Court already approved. Indeed, fundamental fairness demands that the Plan recognize that, in the event the District Court revives the PSPS claims, and Plaintiffs ultimately prevail, there must be a responsible party to pay such claims. The Plan does not provide a reserve of $2.5 billion, or any amount, for these claims, so unless PG&E wishes to do that now, the only solution is for such claims not to be discharged, and to be assumed by the Reorganized PG&E entities.

## V. CONCLUSION

For the foregoing reasons, the Court should sustain Gantner's objections and order the Debtors to amend its Plan as described above.

Dated: May 15, 2020               PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP


By: /s/ Nicholas A. Carlin
    Nicholas A. Carlin
    Brian S. Conlon
    Attorneys for Plaintiff
PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
(415) 398-0900