XAVIER BECERRA
Attorney General of California
KAREN W. YIU
Supervising Deputy Attorney General
CARA M. PORTER
Deputy Attorney General
State Bar No. 266045
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 510-3508
  Fax: (415) 703-5480
  E-mail: Cara.Porter@doj.ca.gov
*Attorneys for Creditor
California Franchise Tax Board*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION**<br>   **and**<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                        Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>\* All papers shall be filed in the Lead Case No. 19-30088 DM | Case No. 19-30088 DM<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**CALIFORNIA FRANCHISE TAX BOARD'S OBJECTION TO CONFIRMATION OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 16, 2020 [DOCKET NO. 6320]**<br><br>Hearing:    May 27, 2020<br>Time:      10:00 a.m.<br>Courtroom: 17<br>Judge     The Honorable Dennis J. Montali |

California Franchise Tax Board ("FTB") submits the following objections to confirmation of the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020 (the "Plan") [Docket No. 6320].[1]

---

[1] Capitalized terms not otherwise defined herein shall have the meaning attributed in Debtors' Plan.

1

# INTRODUCTION

Debtors propose a Plan that includes overreaching releases of liabilities, improperly impairs FTB, and enables Debtors to discharge their state tax obligations in violation of the Bankruptcy Code. Accordingly, Debtors' Plan cannot be confirmed without modifications to conform to the Bankruptcy Code.

FTB has a claim as to PG&E Corporation in the total amount of $588,964,178.32, consisting of a priority claim of $502,117,359.11 and a general unsecured claim of $86,846,819.21, and a claim as to Pacific Gas and Electric Company in the total amount of $588,376,321.97, consisting of a priority claim of $501,616,189.60 and a general unsecured claim of $86,760,132.37. Both claims arise from Debtors' potential California state tax obligations for tax years from 2001 through 2018. FTB is currently conducting an audit that includes all tax years listed in the claims. Upon conclusion of the audit, the amounts of FTB's claims are subject to change significantly. Until the audit concludes and the liability goes final, the amounts of Debtors' tax obligations to FTB for these tax years are not yet due and payable. The audit will not conclude before June 30, 2020.

Despite FTB's efforts to resolve these issues with Debtors, several issues remain unresolved. Thus, FTB objects to the Plan as follows. FTB reserves the right to join in objections filed by other entities.

# ARGUMENT

**I. THE PLAN FAILS TO SATISFY THE CONFIRMATION REQUIREMENTS OF BANKRUPTCY CODE SECTION 1129(A)**

Bankruptcy Code section 1129(a) mandates that "[t]he court shall confirm a plan only if all the . . . requirements [in section 1129(a)] are met." 11 U.S.C. § 1129(a). Bankruptcy Code section 1129(a)(1) requires that the Plan comply with the applicable provisions of Title 11. At the confirmation hearing, the Plan Proponents bear the burden of proof to demonstrate that the Plan complies with sections 1129(a) and (b) by a preponderance of the evidence. *In re Sagewood Manor Associates LP*, 223 B.R. 756, 761 (Bankr. D. Nev. 1998). "Proof by the preponderance of the evidence means that it is sufficient to persuade the finder of fact that the proposition is more

2

FTB's Objection to Confirmation of Plan of Reorganization Dated March 16, 2020 (Case No. 19-30088 DM)

Case: 19-30088    Doc# 7280    Filed: 05/15/20    Entered: 05/15/20 15:05:01    Page 2 of 9

likely true than not." *Sagewood*, 223 B.R. at 761 (*quoting In re Arnold and Baker Farms*, 177 B.R. 648, 654 (B.A.P. 9th Cir. 1994).) The Plan fails to meet this standard and fails to comply with the following applicable provisions of Title 11.

**A.  The Plan Fails to Meet the Requirements Under Bankruptcy Code Section 1129(a)(9)(C)**

**1.  Without Any Authority Under the Bankruptcy Code, the Plan Allows Debtors To Elect to Pay Debts that Are Not Yet Due and Payable "In the Ordinary Course of Business"**

Plan section 2.4 addresses Priority Tax Claims. Because FTB's claims include an "Allowed Priority Tax Claim that is not due and payable on or before the Effective Date," the Plan proposes to pay those portions of the claims "in the ordinary course of business as such obligation becomes due." Plan, § 2.4.

However, without agreement of the priority tax creditor, this provision to pay debts "in the ordinary course of business" is contrary to Bankruptcy Code section 1129(a)(9)(C)(ii), and finds no support elsewhere in the Bankruptcy Code. Bankruptcy Code section 1129(a)(9)(C)(ii) requires priority tax claims to be paid "in regular installment payments in cash . . . over a period ending not later than 5 years after the date of the order for relief . . . ." Here, the Plan proposes to pay such claims in the ordinary course of business, which may be greater than five years from the petition date.[2] While FTB may agree to be paid outside of the requirements of Bankruptcy Code section 1129(a)(9)(C), it will only do so if such Claim is unimpaired. As further explained below, this treatment does not leave FTB's claims unimpaired as defined under Bankruptcy Code section 1124. FTB does not consent to treatment of its Allowed Priority Tax Claims as proposed throughout the Plan. Unless the issues below are resolved, FTB objects to the Plan on the

---

[2] Additionally, the Plan fails to provide the same treatment for each claim or interest of a particular class, in violation of Bankruptcy Code section 1123(a)(4), which provides that "a plan shall . . . provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." *See also In re Combustion Engineering, Inc.*, 391 F.3d 190, 239 (3d Cir. 2004) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code.") (*quoting Begier v. IRS*, 496 U.S. 53, 58 (1990)). Instead, "at the option of the Debtors or Reorganized Debtors," Allowed Priority Tax Claims will be paid in Cash either on (or as reasonably practicable thereafter) the Effective Date, or in semi-annual installments for up to five years with interest accruing thereon at the applicable nonbankruptcy rate. Plan, § 2.4. FTB is willing to accept this plurality of treatment, in the event its other objections are resolved.

grounds that the Plan fails to comply with Bankruptcy Code section 1129(a)(1), and cannot meet the requirements of Bankruptcy Code section 1129(b).

### 2. The Plan Provides Less Favorable Treatment for Allowed Priority Tax Claims than Non-Priority Unsecured Claims in Violation of Bankruptcy Code Section 1129(a)(9)(iii)

Bankruptcy Code section 1129(a)(9)(C)(iii) requires that Allowed Priority Tax Claims must be paid "in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan." The Plan provides for payment of interest to general unsecured creditors at the Federal Judgment Rate from the Petition Date to the Effective Date (see Plan at §§ 4.4 and 4.23). Thus, Allowed Priority Tax Claims must also be paid such interest. Under the Plan, they are not.

Plan section 2.4 is silent regarding interest on these claims that are paid "in the ordinary course." Such silence precludes the payment of interest under Plan section 5.3, which provides that, except as specifically provided in the Plan, postpetition interest shall not accrue on claims such as FTB's.[3] By failing to pay interest on Allowed Priority Claims while paying interest on general unsecured claims, is a violation of Bankruptcy Code section 1129(a)(9)(C)(iii).

Accordingly, Plan section 2.4 must be amended to provide for payment of interest to Allowed Priority Tax Claims from the Petition Date to the Effective Date (if paid on the Effective Date), or, alternatively, from the Petition Date until the date the Claims are paid in full in the ordinary course of business. Otherwise, the Plan violates Bankruptcy Code section 1129(a)(9)(C)(iii) and cannot be confirmed.

### 3. The Plan Fails to Pay the Total Value of FTB's Priority Tax Claims in Violation of Bankruptcy Code Section 1129(a)(9)(C)(i)

Bankruptcy Code section 1129(a)(9)(C)(i) requires that the Plan provide for payment of Allowed Priority Tax Claims in their "total value, as of the effective date of the plan, equal to the allowed amount of such claim." Where the Plan does not provide for payment in full on the Effective Date, the "total value" includes interest accruing after the Effective Date. Because

---

[3] Plan section 7.4, which addresses payment of Disputed Claims after such claims become Allowed Claims—even if amended to provide for interest once the Claims are deemed allowed—does not resolve this issue. As of the date of this filing, Debtors have not disputed FTB's claims, either as listed on Debtors' schedules, through an objection to claim, or by any other indication.

4

FTB's claims are tax claims, the applicable rate of interest is the rate determined under nonbankruptcy law, which in this instance means California law. Bankruptcy Code, § 511.

As explained above, Plan section 2.4 fails to provide for the accrual of postpetition interest on FTB's Priority Tax Claims, which the Plan proposes to pay in the ordinary course of business, thereby impairing FTB's claims. Bankruptcy Code, § 1124(1).

Accordingly, Plan section 2.4 must be amended to provide for payment of interest on FTB's Priority Tax Claims at the rate prescribed under California law. Otherwise, the Plan violates Bankruptcy Code section 1129(a)(9)(C)(i) and cannot be confirmed.

### 4. Proposed Language to Meet the Requirements of Bankruptcy Code Section 1129(a)(9)(C)

FTB will consent to payment of its Allowed Priority Tax Claims in the ordinary course of business as long as Plan section 2.4 includes the following <u>underlined</u> language at the end of the paragraph:

> **2.4: Priority Tax Claims.** . . . Any Allowed Priority Tax Claim that is not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligation becomes due<u>, together with any applicable interest accruing thereon at the applicable nonbankruptcy rate</u>.

## B. The Plan Fails to Comply with Other Applicable Provisions of Title 11

### 1. The Plan Discharges Allowed Priority Tax Claims Even If Debtors Willfully Attempt to Evade or Defeat Payment of Such Taxes, in Violation of Bankruptcy Code Section 1141(d)(6)

Under Bankruptcy Code section 1141(d)(6), "confirmation of a plan does not discharge a debtor that is a corporation from any debt . . . for a tax . . . with respect to which the debtor . . . made a fraudulent return; or . . . willfully attempted in any manner to evade or to defeat such tax . . . ." The language in Plan section 2.4 stating that payment of Allowed Priority Tax Claims shall be "[i]n full and final satisfaction, settlement, release and discharge of any Allowed Priority Tax Claim against a Debtor . . ." is contrary to this provision. Should Debtors willfully attempt in any manner to evade payment of the Allowed Priority Tax Claims that are not yet due and payable—which should be paid in the ordinary course of business under the Plan—such claims will have nonetheless been discharged through the Plan. Thus, Debtors could improperly

5

FTB's Objection to Confirmation of Plan of Reorganization Dated March 16, 2020 (Case No. 19-30088 DM)

Case: 19-30088   Doc# 7280   Filed: 05/15/20   Entered: 05/15/20 15:05:01   Page 5 of 9

discharge unpaid tax claims without paying them in full, or without paying them at all. FTB strenuously objects to such treatment.

### 2. The Discharge, Release and Injunction Provisions in the Plan are Overbroad and Exceed the Parameters of Bankruptcy Code Section 1141(d)

Bankruptcy Code section 1141(d) allows for the discharge of debts "that arose *before the date of confirmation*." Bankruptcy Code § 1141(d)(1), emphasis added. The Plan exceeds the scope of Bankruptcy Code section 1141(d)(1) in two ways.

First, Plan section 10.3, entitled "Release and Discharge of Debtors," goes beyond Bankruptcy Code section 1141(d)(1) by purporting to discharge "all Claims, Interests, rights and liabilities that arose *prior to the Effective Date.*" Plan, § 10.3, emphasis added. By definition, the Effective Date is a date *on or after* the Confirmation Date. Plan, § 1.59.[4] Thus, the Plan purports to discharge debts beyond the debts described under the Bankruptcy Code. To be confirmable, the Plan must use the Confirmation Date, not the Effective Date, for purpose of the scope of the discharge.

Second, multiple sections of the Plan exceed the scope of a discharge under Bankruptcy Code section 1141(d)(1) by forcing a waiver and release of any and all Claims, rights and liabilities in exchange for distributions under the Plan on all creditors, regardless of whether they are entitled to vote on the Plan. To begin, Plan section 5.9 provides that *any* distributions under the Plan "shall be in complete and final satisfaction, settlement, and discharge of and exchange for Allowed Claims." Next, Plan section 6.1 provides that the Plan shall be deemed both a "motion to approve a good-faith compromise and settlement" of all Claims, Interests and Causes of Action under Bankruptcy Code section 1123 and Federal Rule of Bankruptcy Procedure 9019, and " a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan." Plan section 6.1 further provides that the Confirmation Order shall constitute a finding by the Court that all "such compromises, settlements and releases are

---

[4] Plan section 1.59 provides: "**Effective Date** means a Business Day on or after the Confirmation Date selected by the Debtors, on which the conditions to the effectiveness of the Plan specified in Section 9.2 hereof have been satisfied or effectively waived in accordance with the terms hereof."

6

mutual and bi-directional . . . ."[5]  Finally, Plan section 10.3 provides that in consideration of distributions under the Plan a claim or interest holder "shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 . . . ."

While Bankruptcy Code section 1141(d)(1) affords a debtor a *discharge*, that statute does not provide the "mutual and bi-directional releases" that these three Plan sections, together or separately, impose.  Further, the "mutual and bi-directional" release of "Claims, Interests and Causes of Action" includes a release of rights of setoff, recoupment, and affirmative defenses to claims the Debtors may bring against creditors, including those otherwise preserved under Bankruptcy Code section 553.  *See* Plan, § 1.21 (Causes of Action includes affirmative defenses, rights of setoff, recoupment rights, and third-party claims, whether known or unknown, foreseen or unforeseen, and all through the Effective Date of the Plan).  Thus, the Plan purports to confer broad, sweeping releases that the Bankruptcy Code does not provide.

Moreover, the Plan includes an overreaching Interpretation section that gives Debtors the sole authority to interpret the provisions of the Plan, "without further notice to or action, order, or approval of the court or any other entity."  Plan, section entitled, "Interpretation; Application of Definitions and Rules of Construction," 36:1-20.  This Plan provision only vaguely states that Debtors *may* interpret any effectuating provisions "in a manner consistent with the overall purpose and intent of the Plan," and does not *require* Debtors to do so.  *Id*. at subsection (j), 36:13-16.  Nor does this provision allow any other party to offer an alternative interpretation of the terms "effectuating provisions" or "the overall purpose and intent of the Plan."  Perhaps most importantly, Debtors' assertion of interpretive rights violates due process and supplants Debtors' judgment and authority for that of this and other Courts, or taxing authorities.

Unless these improper provisions are addressed and corrected, the Plan violates Bankruptcy Code section 1129(a)(1), (3) and (8), and cannot be confirmed.

---

[5] The term "mutual and bi-directional" is neither clear on its face or defined in the Plan.

### 3. Proposed Language To Cure the Overbroad Release and Discharge Provisions

To resolve these issues, FTB requests that Plan section 10.13 be amended to state the following:

> **10.13 Special Provisions for Governmental Units.** Solely with respect to Governmental Units, nothing in the Plan of Confirmation Order (including, but not limited to, any release, compromise, settlement or waiver provisions) shall operate as a release, compromise, settlement or waiver or in any way expand the scope of the discharge or discharge injunction to which the Debtors or the Reorganized Debtors are entitled under section 1141(d)(1) of the Bankruptcy Code. Further, nothing in the Plan or Confirmation Order, including Sections 10.8 and 10.9 of the Plan, shall discharge, release, enjoin, or otherwise bar (a) any liability of the Debtors or the Reorganized Debtors to a Governmental Unit arising on or after the Confirmation Date with respect to events occurring on or after the Confirmation Date, (b) any liability to a Governmental Unit that is not a Claim, (c) any affirmative defense, valid right of setoff or recoupment of a Governmental Unit, (d) any police or regulatory action by a Governmental Unit, (e) any exercise of the power of eminent domain by a Governmental Unit, (f) environmental liability to a Governmental Unit that the Debtors, the Reorganized Debtors, any successors thereto, or any other Person or Entity may have as an owner or operator of real property after the Confirmation Date, or (g) any liability to a Governmental Unit on the part of any Persons or Entities other than the Debtors or the Reorganized Debtors.[6]

## II. ANY USE OF THE TERM "RESTITUTION" IN THE PLAN IS NOT BINDING FOR TAX PURPOSES

The federal tax code specifically addresses the deductibility of fines, penalties, attorneys' fees and costs, restitution and the costs of coming into compliance with a violation of law. 26 U.S.C. § 162(f). With regard to any law which was violated or potentially violated, an amount that either (1) constitutes "restitution" (including remediation of property), or (2) is paid to come into compliance with such law, is deductible. 26 U.S.C. § 162(f)(2). Among other things, to qualify for deductibility, the settlement agreement or court order resolving the violation or potential violation must expressly identify the matters that constitute restitution or costs of compliance with the law. *Id*. However, the law does not define "restitution." In FTB's

---

[6] This language is identical to the language proposed by various California State Agencies as Exhibit 1, attached to California State Agencies' objection to confirmation, filed under separate cover.

Case: 19-30088    Doc# 7280    Filed: 05/15/20    Entered: 05/15/20 15:05:01    Page 8 of 9

determination of taxable income for any person or entity against which such penalties are assessed, it considers applicable federal statutes and regulations, among other authorities.

Debtors have written into the Plan terms which characterize the payment of billions of dollars to the Fire Victim Trust as "restitution." Plan, §§ 4.25(d), 4.26(b), 6.7. However, funding the Fire Victim Trust is not a resolution of individual Fire Victim Claims, nor is the issue of what constitutes "restitution"—for tax purposes and/or beyond—presently before this Court. Additionally, the Plan provides, "coverage provisions of any insurance policy for losses resulting from a Fire and any funds received by any holder of a Fire Victim Claim . . . shall satisfy . . . any amounts of restitution the Debtors or Reorganized Debtors might be subject to under Cal. Penal Code § 1202.4," which is another issue that is not presently before the Court. Plan, § 6.7(a). Accordingly, any order confirming this Plan should include a provision that any characterization of payments made through the Plan as "restitution' shall not be binding for California state tax purposes.

## CONCLUSION

For the foregoing reasons, FTB respectfully requests that this Court enter an order denying confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020, and grant such other further relief as the Court deems proper.

Dated: May 15, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
KAREN W. YIU
Supervising Deputy Attorney General


/s/ Cara M. Porter
CARA M. PORTER
Deputy Attorney General
*Attorneys for Creditor*
*California Franchise Tax Board*

SF2019200277
42195779.docx