XAVIER BECERRA, SBN 118517
Attorney General of California
MARGARITA PADILLA, SBN 99966
Supervising Deputy Attorney General
JAMES POTTER, SBN 166992
Deputy Attorney General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 879-0815
Fax: (510) 622-2270
Margarita.Padilla@doj.ca.gov
James.Potter@doj.ca.gov

XAVIER BECERRA, SBN 118517
Attorney General of California
DANETTE VALDEZ, SBN 141780
ANNADEL ALMENDRAS, SBN
192064
Supervising Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3367
Fax: (415) 703-5480
Danette.Valdez@doj.ca.gov
Annadel.Almendras@doj.ca.gov

STEVEN H. FELDERSTEIN, SBN 059678
PAUL J. PASCUZZI, SBN 148810
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Fax: (916) 329-7435
sfelderstein@ffwplaw.com
ppascuzzi@ffwplaw.com

Attorneys for California Department of Forestry
and Fire Protection, et al.

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>   - and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>               Debtors.<br><br>☐    Affects PG&E Corporation<br>☐    Affects Pacific Gas and Electric Company<br>☑    Affects both Debtors | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>Date:    May 19, 2020<br>Time:   10:00 a.m.<br>Ctrm:   17<br>Judge:  Dennis Montali |

**CALIFORNIA STATE AGENCIES' OBJECTION TO CONFIRMATION OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 16, 2020 [DOCKET NO. 6320]**

# TABLE OF CONTENTS

**SUMMARY OF OBJECTIONS AND PROPOSED RESOLUTIONS**.....................................1

**ARGUMENT** ...........................................................................................................6

    **A.**    **The Discharge, Release and Injunction Provisions in the Plan Are Overbroad**......................................................................................6

    **B.**    **The Treatment of Environmental Obligations is Insufficient**..........10

    **C.**    **The Plan Attempts to Discharge Unfulfilled Obligations under the 2003 Chapter 11 Plan**...............................................................12

    **D.**    **Department of Water Resources/CERS and State Water Project Issues Must be Properly Addressed in the Plan**........................................13

    **E.**    **The Plan Provisions Governing Executory Contracts and Unexpired Leases Violate Section 365**......................................................14

    **F.**    **The Plan is Not Clear as to the Treatment of Disputed Administrative Claims**..................................................................................15

    **G.**    **Other Improper Plan Provisions** .........................................16

    **H.**    **Objections to Fire Victim Trust Agreement ("FVTA") and Claims Resolution Procedures ("CRP")** ............................................17

**RESERVATION OF RIGHTS** ...........................................................................19

## CASES

*In re Chassix Holdings, Inc.*, 533 B.R. 64 (Bankr. S.D.N.Y. 2015) ................................................8

*In re Southern California Gas Co.*, CPUC Decision 94-05-020, 54 Cal. P.U.C. 2d
  391 (1994) ..........................................................................................................................11

*Miller v. United States*, 363 F.3d 999 (9th Cir. 2004) ................................................17

*NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984) ..........................................................9

*Wilshire Courtyard v. California Franchise Tax Board (In re Wilshire Courtyard)*,
  729 F.3d 1279 (9th Cir. 2013) ........................................................................................16

## STATUTES

11 U.S.C. § 101(5) ........................................................................................................8

11 U.S.C. § 1113 ...........................................................................................................9

11 U.S.C. § 1124 .......................................................................................................7, 8

11 U.S.C. § 1124(1) ......................................................................................................7

11 U.S.C. § 1129(a)(1) ...........................................................................................10, 16

11 U.S.C. § 1129(a)(3) ...........................................................................................10, 16

11 U.S.C. § 1129(a)(8) ................................................................................................10

11 U.S.C. § 1141(d)(1) ......................................................................................2, 6, 7, 8

11 U.S.C. § 1141(d)(1)(A) .............................................................................................6

11 U.S.C. § 365 .............................................................................................................14

11 U.S.C. § 365(a) .........................................................................................................14

11 U.S.C. § 365(b)(1) .................................................................................................9, 15

11 U.S.C. § 553 ...............................................................................................................8

28 U.S.C. § 1334(b) .......................................................................................................16

28 U.S.C. § 157(b)(1) .....................................................................................................16

28 U.S.C. § 959(b) ..........................................................................................................13

Cal. Civ. Code § 1542 .....................................................................................................2

Cal. Water Code § 6428(b) ...........................................................................................10

Cal. Water Code § 80106 ...............................................................................................13

The California Department of Forestry and Fire Protection, California Department of Toxic Substances Control, California Governor's Office of Emergency Services, California Department of Veterans Affairs, California State University, California Coastal Commission, California Department of Parks and Recreation, California Department of Fish and Wildlife, California Department of Transportation, California Department of Developmental Services, California Department of Conservation, California Geologic Energy Management Division (formerly Division of Oil, Gas and Geothermal Resources), California Regional Water Quality Control Boards, California State Water Resources Control Board, California Air Resources Board, San Francisco Bay Conservation and Development Commission, California Department of Housing and Community Development, California State Lands Commission, and California Department of Water Resources, by and through its California Energy Resources Scheduling Division and on behalf of the State Water Project (collectively, the "California State Agencies") hereby file this objection to confirmation of the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* ("Plan") [Docket No. 6320] as follows.[1]

## SUMMARY OF OBJECTIONS AND PROPOSED RESOLUTIONS

Despite many efforts by the California State Agencies to resolve Plan issues with the Debtors, several significant issues remain unresolved. The Plan does not adequately address numerous important matters involving the California State Agencies' respective regulatory authority over the Debtors' operations and their rights as creditors. The Debtors should not be allowed to shirk their regulatory obligations or obtain improper advantages over unimpaired creditors by improper Plan provisions. Thus, the California State Agencies assert the following objections to confirmation of the Plan and proposed solutions to resolve those objections.[2]

1. The discharge and release provisions throughout the Plan are overbroad and

---

[1] Capitalized terms not otherwise defined herein shall have the meaning attributed in the Debtors' Plan.

[2] The California State Agencies continue to work with the Plan Proponents to resolve all objections and reserve all rights to supplement this objection with additional argument and evidence as necessary to the extent all objections are not resolved.

-1-

inconsistent with the Bankruptcy Code. The breadth of the discharge and release provisions is a particular problem for government agencies, which have continuing authority to regulate the Debtors and Reorganized Debtors. As written, the Plan would prohibit an unimpaired creditor (including a state agency) from asserting defenses to an affirmative claim brought by the Debtors (including rights of setoff and recoupment). Further, the Plan improperly attempts to compel unimpaired creditors to provide the Debtors with a broad release in exchange for distributions under the Plan, including a release of unknown claims prohibited by California Civil Code section 1542. The release and injunctive provisions could be interpreted to provide inappropriate and unacceptable immunity from regulations that apply to all persons and entities. The Plan also attempts to provide the Debtors with a discharge of all Claims that arose prior to the Effective Date, rather than as of the Confirmation Date as provided in section 1141(d)(1).[3] Such overly broad discharge and release provisions must be corrected or stricken from the Plan. While the Debtors attempted to provide certain special provisions for governmental units in Plan section 10.13, the California State Agencies request that Plan section 10.13 be revised as indicated on Exhibit 1 with such language added to the Confirmation Order.

2.     Extraordinarily, the Plan assigns the Reorganized Debtors unilateral authority to interpret Plan provisions as they see fit. "[A]ny effectuating provisions may be interpreted by the Reorganized Debtors in a manner consistent with the overall purpose and intent of the Plan, all without further notice to or action, order, or approval of the court or any other entity, and such interpretation shall control in all respects." Plan Section entitled "Interpretation; Application of Definitions and Rules of Construction" at subsection (j) [Dkt. No. 6320 at pg. 42 of 107]. This Plan provision would improperly grant the Reorganized Debtors the exclusive right to interpret Plan provisions, cutting off creditors' due process rights and usurping court authority, including this Court, as well as regulators' authority.[4] The California State Agencies request that subsections (j) and (k) be revised as set forth on Exhibit 2 to resolve these issues.

3.     The Plan does not adequately define Environmental Claims and Environmental

---

[3]  All statutory references are to the Bankruptcy Code unless otherwise noted.
[4]  A similar objectionable provision at subsection (k) grants the same broad authority to the Fire Victim Trustee and Subrogation Wildfire Trustee.

-2-

Performance Obligations to provide true "pass-through" treatment the Plan purports, nor does the Plan adequately ensure the Reorganized Debtors' compliance with their ongoing regulatory obligations. Although the Debtors have added a class for Environmental Claims evidently, in part, at the request of the California State Agencies,[5] the Debtors' proposed definition of Environmental Claims is overly complex to the point of being incomprehensible. Yet, at the same time the definition appears to be limited to pollution claims and excludes other types of environmental obligations and orders under California and federal law that should pass-through the Debtors' bankruptcy cases unaffected, such as laws addressing habitat protection and global warming. The California State Agencies, along with certain United States agencies, have negotiated language for the Plan and Confirmation Order to address these issues. The proposed language attached as Exhibit 3 would satisfactorily address the Debtors' regulatory obligations that are not covered by their narrow definition of Environmental Claims in the Plan and resolve this objection.

4. Under the terms of the confirmed plan of reorganization in the Utility's first bankruptcy, the Utility is obligated to transfer certain watershed lands for conservation purposes. This obligation should be binding on the Reorganized Debtors unaffected by the Plan, but as drafted the Plan does not address it. The California State Agencies believe the Plan Proponents have agreed to insert the language attached as Exhibit 4 in the Confirmation Order, which would resolve this objection.

5. The Department of Water Resources ("DWR") is entitled to refunds in the Utility's transmission rate cases pending before Federal Energy Regulatory Commission ("FERC") for 2018 and 2019. The Plan does not address these FERC transmission refund claims. Given the broad and inappropriate releases in the Plan (discussed herein), the Plan must specifically address these issues and preserve these rights and obligations to DWR. The California State Agencies believe the Plan Proponents have agreed to insert the language attached

---

[5] *See also* Letter dated December 13, 2019, from Governor Newsom to Debtors CEO at Docket No. 5138-1, pg. 5 ("The Amended Plan should also provide that all environmental obligations and related agreements, all obligations and agreements related to the Diablo Canyon project, and all state tax obligations be assumed by the reorganized entity and be unimpaired.").

as Exhibit 5 in the Confirmation Order, which would resolve this objection.

6.     DWR, by and through its California Energy Resources Scheduling Division ("CERS"), filed a protective claim regarding the Utility's obligation pursuant to section 80106 of the California Water Code and applicable orders of the California Public Utilities Commission ("CPUC") to bill and collect charges from customers in the Utility's service area that pay for the $11.2 billion in bonds that CERS issued to purchase power on behalf of the investor-owned utilities, including the Utility, during the California energy crisis. The funds that the Utility collects for the bonds are held in trust for the benefit of CERS and are not property of either bankruptcy estate. The Plan must clearly provide that these funds are not property of either bankruptcy estate and that the Utility's obligations under the bonds are not waived, released or discharged. The California State Agencies believe the Plan Proponents have agreed to insert the language attached as Exhibit 6 in the Confirmation Order, which would resolve this objection.

7.     The Plan provides for the assumption of most executory contracts and unexpired leases. Most items in the Debtors' schedules and the Plan Supplement relating to the California State Agencies or other state agencies are not executory contracts or unexpired leases. This is not an idle disagreement. Court approval of the alleged "assumption" of regulatory permits, obligations, agreements, orders and the like could be interpreted incorrectly as a finding by this Court that such regulatory documents are executory contracts or unexpired leases, which debtors in bankruptcy cases can reject. Further, the Debtors filed and served the Schedule of Executory Contracts and Unexpired Leases to be Assumed a mere 14 days prior to the objection due date. This is not sufficient time for state agencies to both examine the 1778 page list (if obtained from the docket or Prime Clerk) with cryptic descriptions of contracts and leases and then either file an objection or negotiate a correction, especially when most state agencies and businesses are subject to a stay-at-home order due to the COVID-19 pandemic. The California State Agencies are working proposed language to address these issues, which attached as Exhibit 7.

8.     The Plan is not clear how Administrative Claims become Allowed Claims to be paid under Plan section 2.1. The Debtors have been delinquent in paying significant post-petition obligations to certain California State Agencies. The Plan should clearly state how disputes over

-4-

Administrative Claims will be resolved and how such claims will be paid by providing that such disputes will be resolved in the otherwise applicable non-bankruptcy forum. Further, Plan sections 2.1 and 10.3 conflict, as section 2.1 says Administrative Claims are not discharged, but section 10.3 says all Claims that arose prior to the Effective Date are discharged (except as provided in that section regarding post-petition fire claims). The proposed language attached as Exhibit 8 would satisfactorily address this issue.

9. There are several other Plan provisions that should be clarified or modified, including the purported reservation of "exclusive" jurisdiction over post-confirmation matters arising out of or relating to the Chapter 11 Cases and, as noted above, overbroad grants of exclusive and binding authority to the Reorganized Debtors to interpret the Plan.

10. Plan section 10.13 entitled, "Special Provisions for Governmental Units" should be clarified to include that nothing in the Plan or Confirmation Order shall discharge, release, enjoin, or otherwise bar the exercise of the power of eminent domain and ancillary related authority by a Governmental Unit. The proposed language in Exhibit 1 would satisfactorily address this issue.

11. While certain California State Agencies who hold Fire Claims have entered into a settlement agreement regarding payment of such claims by the Fire Victim Trust, that agreement contained a reservation of rights as to the final versions of the Fire Victim Trust Agreement ("FVTA") and Claims Resolution Procedures ("CRP"). The FVTA and CRP should be amended to ensure a fair and transparent process, including (a) requiring that the Trustee and Claims Administrator pay settled Fire Claims in accordance with Court approved settlement agreements, (b) eliminating the requirement that creditors who already entered into settlement agreements (with negotiated releases) execute additional releases to obtain payment of their settled claims, and (c) preventing the Trust Agreement and CRP from being materially amended without notice and Court approval. The California State Agencies have proposed the amendments attached as Exhibit 9 to the TCC and are attempting to negotiate a resolution of this issue.

//

//

-5-

**ARGUMENT**

**A.**     **The Discharge, Release and Injunction Provisions in the Plan Are Overbroad.**

The Debtors' Plan contains overbroad discharge and release provisions that should not be approved by the Court.  These broad provisions are particularly problematic for many of the California State Agencies that have ongoing regulatory authority over the Debtors.  While the Plan purports to treat General Unsecured Claims as unimpaired, a careful reading of several sections of the Plan reveals that is not the case.  These overbroad provisions are found in several Plan sections.

Plan section 10.3 is entitled, "Release and Discharge of Debtors."  That section goes beyond the Bankruptcy Code by purporting to provide the Debtors a discharge of "all Claims, Interests, rights and liabilities that arose *prior to the Effective Date*."  (Emphasis added).  Bankruptcy Code section 1141(d)(1), however, provides that a discharge extends only to debts that arose *before the date of confirmation* of a chapter 11 plan.  The Plan must use the Confirmation Date, not the Effective Date, for purpose of the scope of the discharge.  11 U.S.C. § 1141(d)(1)(A) (referring to the confirmation of a plan discharging debts that arose before the date of confirmation).

Plan sections 5.9, 6.1 and 10.3 also purport to force a waiver and release of any and all Claims, rights and liabilities in exchange for the distributions under the Plan.  Plan section 5.9 provides that any distributions under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for Allowed Claims.  Plan section 6.1 provides that the Plan shall be deemed both a "motion to approve a good-faith compromise and settlement" of all Claims, Interests and Causes of Action under section 1123 and Bankruptcy Rule 9019 and also deemed a "compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan."  Plan section 6.1 further provides that Confirmation of the Plan shall constitute a finding by the Court that all "such compromises, settlements and releases are mutual and bi-directional . . .."  And, Plan section 10.3 provides that in consideration of distributions under the Plan a claim or interest holder "shall be deemed to have forever waived, released and discharged the Debtors . . .."

Reading these sections together, it appears nominally "unimpaired creditors" (including those who did *not* opt into the specific Plan releases on a ballot), who have no right to vote for or against the Plan, are nonetheless deemed to have provided a "mutual and bi-directional" release to the Debtors and waived all claims and causes of action against the Debtors.[6] Under the Bankruptcy Code, a debtor is provided a discharge under section 1141(d)(1), not the broad "releases" the Debtors attempt to confer upon themselves. Further, these provisions also appear to provide that an unimpaired creditor is deemed to have "agreed" that its claim is fully satisfied and all causes of action are released, which will impact a creditor's ability to assert defenses and recover from non-debtor parties. That is not what unimpaired treatment means under Bankruptcy Code section 1124. 11 U.S.C. § 1124(1) (describing a class of claims as impaired unless the plan leaves unaltered the legal, equitable, and contractual rights of the creditor).

Then Plan section 10.9(e) provides that each "releasing party" in any general release contained in the Plan essentially waives the operation of California Civil Code section 1542, which prohibits the release of unknown or unforeseen claims. This term is particularly problematic for many of the California State Agencies that have ongoing regulatory authority over the Debtors, including but not limited to environmental claims and obligations that are to pass-through the bankruptcy and are not supposed to be released under the Plan through a "mutual and bi-directional" release or otherwise. Further the term "releasing party" in Plan section 10.9(e) is uncapitalized and therefore undefined. Thus, under Plan sections 5.9, 6.1, and 10.3, any creditor who receives a distribution under the Plan would be a "releasing party" and, under Plan section 10.9(e), would therefore waive California Civil Code section 1542, including the California State Agencies with the statutory right and obligation to regulate the Reorganized Debtors. The Debtors' Plan appears to provide the Debtors and non-Debtors the very release that is improper in this Circuit and the Debtors, in Plan section 10.9(c), claim the Plan does not contain. These provisions also undercut the "pass-through" provisions for Environmental Claims as well as regulatory agencies' ongoing authority over the Reorganized Debtors.

Further, by forcing a settlement and "mutual and bi-directional" release of "Claims,"

---

[6] The phrase "mutual and bidirectional" is neither clear on its face or defined.

"Interests" and "Causes of Action," the Plan also releases rights of setoff, recoupment, and affirmative defenses to claims the Debtors may bring against creditors. *See* Plan § 1.21 (Causes of Action includes affirmative defenses, rights of setoff, recoupment rights, and third-party claims, whether known or unknown, foreseen or unforeseen, and all through the Effective Date of the Plan). This result is far from unimpaired treatment permitted under Bankruptcy Code section 1124 and should not be allowed by this Court. *See e.g., In re Chassix Holdings, Inc.*, 533 B.R. 64, 81 (Bankr. S.D.N.Y. 2015) ("If a creditor must release a claim against a third party under a plan (as a condition to whatever payment or other treatment the plan provides for the creditor's claim against the debtor), it is difficult to understand how such a creditor could properly be considered 'unimpaired' by the Plan in the first place."); *see also* 11 U.S.C. § 553 (preserving a creditor's setoff rights).

As noted above, the improper breadth of the release is a particular problem for government agencies, which have continuing authority to regulate the Debtors. Under Plan section 10.9(f), all entities will be enjoined from pursuing "Causes of Action," which again is broadly defined to include "any and all actions, class actions, proceedings, causes of action, controversies … based in whole or in part upon any act or omission or other event occurring on or prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date." Plan § 1.21. This is broader than the Bankruptcy Code's (and the Plan's) concept of a "claim," which only includes rights to payment and rights to equitable remedies if the remedy gives rise to a right to payment. 11 U.S.C. § 101(5). For example, government agencies may wish to exercise eminent domain over property of the Debtors. It is unclear whether the definition of "Causes of Action" in the Plan is broad enough to enjoin those agencies from exercising eminent domain over the Debtors' land. Bankruptcy is intended to give debtors a "fresh start." However, by drastically expanding the discharge to, *inter alia*, enjoin any "Causes of Action," the Debtors may be attempting to give themselves an inappropriate and unacceptable immunity from statutes and regulations that apply to all persons and entities, including the Reorganized Debtors. As to Government Units, the discharge provided in Bankruptcy Code section 1141(d)(1) is all the post-confirmation protection that the Debtors are entitled to receive.

Consistent with the other overbroad releases in the Plan, Plan section 8.2(e) imposes a release on counterparties to assumed executory contracts. That section purports to morph the assumption of an executory contract or unexpired lease into a "full release and settlement of any Claims and Causes of Action" against a Debtor arising under any assumed executory contract or unexpired lease at any time before the Debtors assume the executory contract or unexpired lease. Plan § 8.2(e) at 76:3-8. Bankruptcy Code section 365(b)(1) only requires that the Debtors cure any defaults or provide adequate assurance of prompt cure as a condition to assumption. 11 U.S.C. § 365(b)(1). Once that occurs, a debtor assumes the contract with all the benefits and burdens. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984), *superseded in part on other grounds by* 11 U.S.C. § 1113 (should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere*). Again, Plan section 8.2(e) goes well beyond the relief provided in Bankruptcy Code section 365 and is essentially another involuntary release that the Debtors attempt to foist on creditors through the Plan. This is inconsistent with the Bankruptcy Code and due process and cannot be approved by this Court.

Evidently to bolster their attempts to obtain terms that are contrary to the Bankruptcy Code, the Debtors have inserted in the Interpretation section of the Plan a provision that, in effect, gives the Debtors sole authority to interpret the provisions of the Plan. The "Interpretation" section of the Plan, immediately following the definitions, privileges the Reorganized Debtors' interpretations of any Plan provision, while crippling any other party's ability to offer alternative provision. The Plan provides that "any effectuating provisions may be interpreted by the Reorganized Debtors in a manner consistent with the overall purpose and intent of the Plan, all without further notice to or action, order, or approval of the court or any other entity, and such interpretation shall control in all respects." Plan Section entitled "Interpretation; Application of Definitions and Rules of Construction" at 42:14-15. This vague, preemptive assertion of interpretive rights violates due process and usurps the Court's authority, as well as that of other courts and regulatory bodies.[7]

---

[7] A similar objectionable provision at subsection (k) grants the same broad authority to the Fire Victim Trustee and Subrogation Wildfire Trustee.

These improper provisions must be addressed and corrected as provided in Exhibits 1 and 2 hereto. Otherwise, the Plan violates Bankruptcy Code sections 1129(a)(1), (3) and (8) and cannot be confirmed.

**B.**     **The Treatment of Environmental Obligations is Insufficient.**

The Utility has significant environmental obligations and liabilities to multiple state and federal agencies under various state and federal environmental laws. These include pre- and post-petition "Claims," as well as statutory, regulatory and injunctive obligations, including obligations under permits, orders and agreements. The Utility has environmental obligations and liabilities throughout its service territory and at many sites, including its fossil fuel-fired and nuclear power-plants, its compressor stations (Hinkley and Topock), scores of old manufactured gas plants (also known as town gas sites), miscellaneous service locations and six large closed commercial hazardous waste landfills.[8] The Utility reported in its 2018 Annual Hazardous Substance Mechanism ("HSM") Report to the CPUC that the Utility had recorded over $105 million in total HSM costs in connection with environmental remediation at numerous sites for 2018 alone.

In prior pleadings filed with the Court and in discussions with the Debtors, the California State Agencies requested that the Plan specify that Environmental Claims pass-through unimpaired as if no bankruptcy had been filed, and that the determination, adjudication, payment, compliance and resolution of any disputes regarding these matters shall occur in the appropriate

//

---

[8] The Utility also has various regulatory obligations to DWR that relate to the delivery of water and other services that are critical to management of the state of California's water supply for the benefit of the public and protection of fish and wildlife habitat. These obligations arise out of agreements for the restoration of the Thermalito power plant, the operation and management of transmission lines, the release of water from the Utility's upstream storage reservoirs, and real estate agreements for the common and joint use of property, facilities, pole lines and easements to and from the Utility. Some of these agreements are pursuant to a license or regulatory authority, such as a coordination agreement between the Utility and DWR to share the costs of implementing the Habitat Expansion Agreement for Central Valley Spring Run Chinook Salmon and California Central Valley Steelhead ("HEA"). The HEA creates certain obligations of DWR and the Utility arising out of FERC relicensing proceedings to offset the effects of DWR's Oroville facilities and two of the Utility's hydroelectric projects. The Utility also is responsible for paying dam safety fees to DWR pursuant to California Water Code section 6428(b) for the 80 dams the Utility owns.

Case: 19-30088    Doc# 7281    Filed: 05/15/20    Entered: 05/15/20 15:05:08    Page 13 of 44

non-bankruptcy forum as if no bankruptcy had been filed.[9] In this way, Environmental Claims would be treated like environmental injunctive permit order and agreement obligations that are not Claims, are not discharged and are binding on the Reorganized Debtors as they were on the Debtors. Allowing Environmental Claims to pass-through the bankruptcy would not be a significant financial burden for the Reorganized Utility, which can recover many of the costs associated with its environmental liabilities and obligations from the ratepayers. *See e.g., In re Southern California Gas Co.*, CPUC Decision 94-05-020, 54 Cal. P.U.C. 2d 391 (1994). However, if there is not an adequate pass-through provision in the Plan, the Utility's bankruptcy estate will incur substantial expenses resolving (through settlement or litigation) and then paying its environmental Claims on the Effective Date of the Plan, raising a potential feasibility issue.

Although the Debtors amended the Plan to include some pass-through treatment for "Environmental Claims" and "Environmental Orders," the amended provisions are inadequate for several reasons including being based on flawed definitions of Environmental Claims and Environmental Order. The Debtors' definition of Environmental Claims is needlessly complex, almost to the point of incomprehensibility, and when coupled with the Debtors' conclusive Plan language interpretation authority, would give the Debtors carte blanche to decide what is and what is not encompassed in the pass-through provisions and leave no recourse to those disputing the Debtors' interpretation.

Further, the Debtors' definitions in the Plan are too limited with respect to the Debtors' environmental liabilities and obligations. The Debtors' definitions are organized around Claims related to hazardous substances and do not include the other environment-related Claims filed by state and federal agencies. The definition of Environmental Order omits a wide range of environmental obligations. For example, the definition of Environmental Order includes judicial and administrative orders, but does not include other regulatory and statutory compliance obligations, voluntary cleanup orders negotiated by the Debtors and certain state agencies, or

---

[9] *See also* Letter dated December 13, 2019, from Governor Newsom to Debtors' CEO at Docket No. 5138-1, pg. 5 ("The Amended Plan should also provide that all environmental obligations and related agreements, all obligations and agreements related to the Diablo Canyon project, and all state tax obligations be assumed by the reorganized entity and be unimpaired.").

permit requirements, including streambed alteration permits, permits requiring mitigation measures, or regulatory obligations related to the State Water Project. *See e.g.*, the DWR items described in fn. 8.

Certain of the California State Agencies and certain federal agencies proposed to the Debtors a revised definition for Environmental Claim as well as new definitions for Environmental Law and Environmental Performance Obligations that, along with additional proposed provisions for the Confirmation Order, would remedy the problems described above. The proposed definitions and Confirmation Order provisions are attached hereto as Exhibit 3 and remain under discussion with the Plan Proponents.

**C.**      **The Plan Attempts to Discharge Unfulfilled Obligations under the 2003 Chapter 11 Plan.**

As noted above, the confirmed chapter 11 plan in the Utility's first bankruptcy case obligated the Utility to transfer certain watershed lands for conservation purposes. *See Order Confirming Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Pacific Gas and Electric Company Proposed by Pacific Gas and Electric Company, PG&E Corporation and the Official Committee of Unsecured Creditors Dated July 31, 2003, as Modified* [Docket No. 14272], entered on December 22, 2003, at 12:21-13:3, in *In re Pacific Gas and Electric Company*, Case No. 01-30923 DM (Bankr. N.D. Cal.) (referring to Land Conservation Commitment in the Commission Settlement Agreement). These transactions were still in process at the time these bankruptcy cases were filed, and the watershed lands were carved out from the collateral for the DIP Facilities. The Plan does not address these transfers at all, which presumably means the Debtors are attempting to discharge these obligations. Or, under the self-serving interpretation rules discussed in section A above, the Reorganized Debtors could interpret the Plan to discharge these obligations. The California State Agencies believe the Plan Proponents have agreed to add language to the Confirmation Order on Exhibit 4 hereto, which would resolve this objection.

//

//

**D.** **Department of Water Resources/CERS and State Water Project Issues Must be Properly Addressed in the Plan.**

DWR operates the State Water Project ("SWP"). The SWP captures and stores surface water in northern California and delivers water to other portions of the State. Delivering this water requires significant electric energy resources and the use of the California Independent System Operator transmission grid. DWR incurs costs for transmission service provided by the Utility to the SWP under a tariff approved by FERC, the agency which approves rates by which the Utility recovers its costs. DWR is entitled to refunds in the Utility's transmission rate cases pending before the FERC for 2018 and 2019. The Plan does not address these FERC transmission refund claims for 2018 and 2019. Such obligations should not be discharged by the Plan. The California State Agencies believe the Plan Proponents have agreed to add language to the Confirmation Order on Exhibit 5 hereto, which would resolve this objection.

In addition, DWR, by and through CERS, filed a protective claim regarding the Utility's obligation pursuant to section 80106 of the California Water Code and applicable orders of the CPUC to bill and collect charges from customers in its service area that pay for the $11.2 billion in bonds that CERS issued to purchase power on behalf of the investor-owned utilities, including the Utility, during the California energy crisis.[10] The funds that the Utility collects are held in trust for the benefit of CERS and are not property of the Debtors. The Plan should contain language making it clear that these funds are not property of the estate and that the Utility will

---

[10] The Utility's duties as a billing agent to hold in trust and timely remit such collections to CERS continue notwithstanding the filing of the bankruptcy cases. Under Title 28, U.S.C. § 959(b), "a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." 28 U.S.C. § 959(b). Over the years, including during the pendency of these bankruptcy cases pursuant to a final order entered by this Court on March 12, 2019, authorizing the Utility's continued maintenance and administration of customer programs (including public purpose programs), CERS and the Utility have engaged in an internal true-up process that compares the bond remittances that were made based on forecasted energy needs of the Utility's customers and the actual power used. Although the Utility is current on payment of any additional amounts it owes to CERS as a result of this true-up process, the Utility could be determined to owe additional funds in any subsequent true-up process or as a result of an audit. Therefore, in an abundance of caution, CERS submitted a protective claim for any additional funds the Utility may be obligated to remit to CERS for bond charges. *See* Amended Claim No. 66196 filed on October 19, 2019.

continue to fulfill its obligations with respect to the bonds issued by CERS. The California State Agencies believe the Plan Proponents have agreed to add language to the Confirmation Order on Exhibit 6 hereto, which would resolve this objection.

**E.     The Plan Provisions Governing Executory Contracts and Unexpired Leases Violate Section 365.**

The Plan provides for the assumption of most executory contracts and unexpired leases. Plan § 8.1(a). Many items in the Debtors' schedules and the Plan Supplement relating to the California State Agencies and other state agencies are not executory contracts or unexpired leases. For example, there are several entries under DTSC-State of California that are recorded permanent deed restrictions. *See* Plan Supplement Exhibit B at docket pg. 447. Virtually all of the entries under the California Department of Fish and Game are permits, licenses and orders. Plan and Confirmation Order provisions indicating that the Debtors are assuming any regulatory permits, obligations, agreements, orders and the like could be interpreted incorrectly as a finding by this Court that those regulatory instruments are in fact executory contracts or unexpired leases. Section 365(a) authorizes a debtor to assume or reject only executory contracts and leases, and the Debtors have offered no evidence that any particular item involving a state agency is in fact an executory contract. Although the Debtors reserve their rights as to whether an item listed in the schedule to be assumed under the Plan is an executory contract or unexpired lease, this is a unilateral provision as there is no such protection for any other party. Plan § 8.8(b). Thus, the Confirmation Order should be clear that confirmation of the Plan is not a finding that any particular item on the schedule of assumed contracts and leases is an executory contract or unexpired lease.

Moreover, as noted above, Plan section 8.2(e) imposes a release on parties to assumed executory contracts. That section purports to morph the assumption of an executory contract or unexpired lease into a "full release and settlement of any Claims and Causes of Action" against a Debtor arising under any assumed executory contract or unexpired lease at any time before the Debtors assume the executory contract or unexpired lease. Plan § 8.2(e) at 76:3. This provision goes well beyond the concept of curing a default under section 365 and is essentially another

-14-

involuntary release that should not be approved by this Court. 11 U.S.C. § 365(b)(1) (requiring a trustee to cure a default or provide adequate assurance of prompt cure as condition to assumption).

Further, the Debtors filed and served the Schedule of Executory Contracts and Unexpired Leases to be Assumed a mere 14 days prior to the objection due date. Plan § 8.2(b). This is not sufficient time for parties to examine a 1778-page list (if obtained from the docket or Prime Clerk) with cryptic descriptions of contracts and leases and then either negotiate revisions or file an objection, especially when most state agencies and businesses are subject to a stay-at-home order due to the COVID-19 pandemic.[11] The California State Agencies reserve all rights to challenge any Cure Amount even after the short deadline contained in the Plan and whether an item is an "executory contract" or regulatory obligation.

The California State Agencies have included language for the Confirmation Order in Exhibit 7, to address these issues by reserving all rights regarding whether a document listed in the Plan Supplement Exhibit B is an assumable executory contract or unexpired lease, whether the purported Cure Amount applies or is disputed, and pares back the overbroad release contained in Plan section 8.2(e). The California State Agencies will work with the Debtors and other interested parties on this language and reserve all rights.

## F. **The Plan is Not Clear as to the Treatment of Disputed Administrative Claims.**

Certain of the California State Agencies have been in communication with the Debtors for months about reconciling the non-payment of post-petition obligations that are Administrative Claims under the Plan. While Plan section 10.3 contains a "provided however" provision allowing post-petition fire claims to be addressed as if no bankruptcy had been filed, the Plan does not address how disputed non-fire Administrative Claims will be resolved. As one example of a post-petition obligation owed by the Debtors, the California Underground Facilities Safe Excavation Board (aka Dig Safe Board) is owed over $1.3 million in unpaid post-petition

---

[11] *See e.g.*, Plan Supplement Exhibit B at docket pgs. 450-451 where there are numerous listed "contracts" with an erroneous effective date in 1905. Apparently, others are having the same difficulties with the Debtors' descriptions. *See* SMUD Objection and Reservation of Rights at Dkt. No. 7187.

obligations which the Debtors have not paid. Further, Plan section 2.1 providing that Administrative Claims shall not be discharged is inconsistent with Plan section 10.3 providing a discharge, waiver and release of any claims that arose prior to the Effective Date.

Given the possibility of a dispute and the inconsistent Plan sections, the Plan should be clarified to provide that any Administrative Claim held by a Governmental Unit is not discharged and will be resolved and enforced in the ordinary course of business in the otherwise applicable non-bankruptcy forum as provided on Exhibit 8 hereto.

**G.** **Other Improper Plan Provisions.**

There are two other Plan provisions that the Court should require the Debtors to fix prior to confirmation of the Plan. First, the "Retention of Jurisdiction" provisions of the Plan at section 11.1 provides that the Court "shall retain exclusive jurisdiction" of all matters arising under, arising out of, or related to the Chapter 11 Case and Plan, including a long list of specific matters. Plan § 11.1 at 89:11. It is elementary bankruptcy law that a bankruptcy court does not have exclusive jurisdiction, and certainly not exclusive post-confirmation jurisdiction, over matters arising out of or related to a bankruptcy case. *See* 28 U.S.C. §§ 157(b)(1) and 1334(b). With respect to post-confirmation jurisdiction, the Ninth Circuit applies the "close nexus test" to determine jurisdiction in the bankruptcy court is proper. *See e.g*, *Wilshire Courtyard v. California Franchise Tax Board (In re Wilshire Courtyard)*, 729 F.3d 1279, 1287 (9th Cir. 2013). Under the "close nexus" test, post-confirmation jurisdiction is limited to matters affecting the interpretation, implementation, consummation, execution, or administration of the confirmed plan. *Id.* Exclusive post-confirmation bankruptcy court jurisdiction cannot be created by the Debtors by writing it into Plan provisions. Further, the Plan then contains a provision that is completely inconsistent with the purported "exclusive" jurisdiction provision that says Article 11 of the Plan shall not expand the exclusive jurisdiction of the Bankruptcy Court beyond that provided by applicable law. Plan § 11.1 at 91:12. The Debtors' retention of jurisdiction provision is confusing, misleading, and wrong as a matter of law and must be fixed by deleting "exclusive" for the Plan to satisfy Bankruptcy Code sections 1129(a)(1) and (3).

Second, as noted above, the Plan's "Interpretation" section at Plan page 42 contains

overreaching provisions that violate due process, impede the jurisdiction of this Court and other courts and regulators, and are likely to cause confusion and unnecessary disputes. Subsection (j) grants the Reorganized Debtors the right to interpret provisions of the Plan "without further notice to or action, order, or approval of the court or any other entity, and such interpretation shall control in all respects[.]" Plan Section entitled "Interpretation; Application of Definitions and Rules of Construction" at subsection (j), 42:14-15. A similar provision at (k) grants overly broad authority to the Fire Victim Trustee and Subrogation Wildfire Trustee. Plan Section entitled "Interpretation; Application of Definitions and Rules of Construction" at subsection (k), 42:15-17. While it is typical to include interpretation clauses in contracts, it is not acceptable nor typical for a Court to defer complete and unfettered authority to interpret a chapter 11 plan to the Reorganized Debtors or any one party. *See, e.g., Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004) ("Although confirmation of a plan generally acts as a final order which binds all parties, regardless of whether they assented to the plan, a plan which is ambiguous as to a material term is subject to interpretation by a reviewing court."). As noted above, the improper and overreaching interpretation provisions should be stricken from the Plan, as provided in Exhibit 2 hereto.

**H.**     <u>Objections to Fire Victim Trust Agreement ("FVTA") and Claims Resolution Procedures ("CRP").</u>

On May 1, 2020, the Debtors filed the Plan Supplement containing the latest version of the FVTA and the CRP. *See* Docket No. 7037. Those documents should but do not require the Trustee and the Claims Administrator to pay settled Fire Victim Claims in accordance with Court approved settlement agreements. As the Court is aware, the Court recently granted the Governmental Fire Claims Settlement Motion, which allows for all purposes (and without reduction, dispute, contest, credit, setoff or other deduction) the certain state and federal agency Fire Claims. *See* Docket No. 6940 and Dkt. Text Order May 10, 2020. The FVTA and CRP must provide that settled Fire Claims are not subject to any further review or adjustment regarding the allowed amount of the claims and instead are paid in accordance with the State

Agency Settlement and Federal Agency Settlement.[12]  Both the state and federal agency settlement agreements clearly provide that they are binding on the Trustee and Claims Administrator.  *See* State Agency Settlement at § 3.11 at Dkt. No. 6940-1; Federal Agency Settlement at § 3.11 at Dkt. No. 6940-1.[13]

Further, the state and federal agency settling parties should not be required to execute a release (defined in the FVTA as a Claimant Release and Made Whole Release), as the state and federal agency Court approved settlement agreements already contain the bargained-for limited release.  *See* State Agency Settlement at § 2.2(h); Federal Agency Settlement at § 2.2(i).  Under the State Agency Settlement, payments on the settled Fire Claims are made annually from specified sources.  The Claimant Release is too broad because the Claimant Release releases the Released Parties (as defined therein) from any and all claims and causes of action arising both prior to and after execution of the Claimant Release.  *See* Ex. 4 to the FVTA.  Executing a release that would essentially excuse the Trustee and Claims Administrator (and their professionals) from performing the State Agency Settlement after one payment makes no sense and is inconsistent with the State Agency Settlement Agreement.  The California State Agencies submit that this is a material term that is grounds for termination of the State Agency Settlement Agreement if not corrected.

Additionally, it is not proper for the FVTA and CRP to provide that either document can be amended without notice to the Beneficial Owners (as defined therein) or Court approval, subject to only very limited restrictions.  *See* FVTA § 8.3.  These documents should not be able to be amended to nullify or affect in any way the State Agency Settlement as such would be grounds for termination of the State Agency Settlement Agreement.

_____

[12]  The State Agency Settlement and Federal Agency Settlement are defined in the Government Fire Claims Settlement Motion.
[13]  The only mention of pre-Effective Date settlement agreements in either document is in the FVTA at section 1.3 discussing the transfer of assets to the Fire Victim Trust to resolve all Fire Victim Claims, satisfy the terms of court-approved settlement agreements entered into pursuant to the Plan and pay all Trust Expenses.  Section 2.4 of the CPR states, "The CRP shall govern the process by which, each Fire Victim Claim shall be evaluated, administered, processed, settled, expunged, determined and resolved on a final basis."  Thus, without a provision in the CRP regarding previously settled Fire Claims, it appears that such claims would still suffer the review, determination and discretion of the Trustee and Claims Administrator for ultimate allowance and payment, contrary to the material terms of the state and federal agency settlement agreements.

-18-

Finally, it is not proper for everyone involved in the FVTA or CRP should be absolved of any liability whatsoever and indemnified by the Fire Victim Trust for everything other than willful misconduct, bad faith or fraud.

The FVTA and CRP should be amended as provided in Exhibit 9 hereto.  The California State Agencies reserve all rights if there are further amendments to the FVTA and CRP.

## RESERVATION OF RIGHTS

The California State Agencies reserve the right to join in other objections to the Plan filed by other parties in interest, including other Governmental Units.

Neither this objection nor any subsequent appearance, pleading, proof of claim, claim or suit is intended or shall be deemed or construed as:

a.      a consent by the California State Agencies to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving the California State Agencies;

b.      a waiver of any right of the California State Agencies to (i) have an Article III judge adjudicate in the first instance any case, proceeding, matter or controversy as to which a Bankruptcy Judge may not enter a final order or judgment consistent with Article III of the United States Constitution, (ii) have final orders in non-core matters entered only after de novo review by a District Court Judge, (iii) trial by jury in any proceeding so triable in the Chapter 11 Cases or in any case, controversy, or proceeding related to the Chapter 11 Cases, (iv) have the United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, or (v) any and all rights, claims, actions, defenses, setoffs, recoupments or remedies to which the California State Agencies are or may be entitled under agreements, in law or in equity, all of which rights, claims, actions, defenses, setoffs and recoupments are expressly reserved hereby; or

c.      a waiver of any objections or defenses that the State of California, the California State Agencies or any other agency, unit or entity of the State of California may have to this Court's jurisdiction over the State of California, the California State Agencies or such other agency, unit or entity based upon the Eleventh Amendment to the United States

-19-

1    Constitution or related principles of sovereign immunity or otherwise, all of which objections and

2    defenses are hereby reserved.

3    Dated: May 15, 2020                    Respectfully submitted,

4                                           XAVIER BECERRA
                                            Attorney General of California
5                                           MARGARITA PADILLA
                                            Supervising Deputy Attorney General
6
                                    By:  /s/  Paul J. Pascuzzi
7                                           STEVEN H. FELDERSTEIN
                                            PAUL J. PASCUZZI
8                                           FELDERSTEIN FITZGERALD
                                            WILLOUGHBY PASCUZZI & RIOS LLP
9                                           Attorneys for California Department of Forestry and
                                            Fire Protection, California Department of Toxic
10                                          Substances Control, California Governor's Office of
                                            Emergency Services, California Department of Veterans
11                                          Affairs, California State University, California Coastal
                                            Commission, California Department of Parks and
12                                          Recreation, California Department of Fish and Wildlife,
                                            California Department of Transportation, California
13                                          Department of Developmental Services, California
                                            Department of Conservation, California Geologic
14                                          Energy Management Division (formerly Division of Oil,
                                            Gas and Geothermal Resources), California Regional
15                                          Water Quality Control Boards, California State Water
                                            Resources Control Board, California Air Resources
16                                          Board,  San Francisco Bay Conservation and
                                            Development Commission, California Department of
17                                          Housing and Community Development, California State
                                            Lands Commission and California Department of Water
18                                          Resources

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

**California State Agencies Plan Objection Exhibit 1—Confirmation Order Language Regarding Applicability of Releases and Discharge**

**10.13 Special Provisions for Governmental Units.** Solely with respect to Governmental Units, nothing in the Plan of Confirmation Order~~herein~~ (including, but not limited to, any release, compromise, settlement or waiver provisions) shall ~~limit or~~ operate as a release, compromise, settlement or waiver or in any way expand the scope of the discharge~~, release,~~ or discharge injunction to which the Debtors or the Reorganized Debtors are entitled under section 1141(d)(1) of the Bankruptcy Code. Further, nothing in the Plan or Confirmation Order~~herein~~, including Sections 10.8 and 10.9 of the Plan~~hereof~~, shall discharge, release, enjoin, or otherwise bar (a) any liability of the Debtors or the Reorganized Debtors to a Governmental Unit arising on or after the Confirmation Date with respect to events occurring on or after the Confirmation Date, (b) any liability to a Governmental Unit that is not a Claim, (c) any affirmative defense, valid right of setoff or recoupment of a Governmental Unit, (d) any police or regulatory action by a Governmental Unit, (e) any exercise of the power of eminent domain by a Governmental Unit, (f) environmental liability to a Governmental Unit that the Debtors, the Reorganized Debtors, any successors thereto, or any other Person or Entity may have as an owner or operator of real property after the Confirmation~~Effective~~ Date, or (g~~f~~) any liability to a Governmental Unit on the part of any Persons or Entities other than the Debtors or the Reorganized Debtors~~, *provided,* that nothing in this Section 10.13 shall affect the Debtors' releases in Section 10.9 hereof, nor shall anything herein enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any of the matters described in clauses (a) through (f) above~~.

# EXHIBIT 2

**California State Agencies Plan Objection Exhibit 2—Revisions to Interpretation Provision in Plan**

(j) any effectuating provisions may be interpreted by the Reorganized Debtors in a manner consistent with the overall purpose and intent of the Plan~~, all without further notice to or action, order, or approval of the court or any other entity, and such interpretation shall control in all respects~~;

(k) any effectuating provisions relating to the Fire Victim Claims, Fire Victim Trust, Subrogation Wildfire Claims, or Subrogation Wildfire Trust may be interpreted by the Fire Victim Trustee or the Subrogation Wildfire Trustee, as applicable, in a manner consistent with the overall purpose and intent of the Plan~~, all without further notice to or action, order, or approval of the court or any other entity, and such interpretation shall control in all respects~~;

# EXHIBIT 3

**California State Agencies Plan Objection Exhibit 3—Proposed Environmental Provisions for PG&E Plan and Confirmation Order**

## I. Definitions

*Add the following definitions to the Plan and Confirmation Order:*

"Environmental Law" means all federal, state and local statutes, regulations, ordinances and similar provisions having the force or effect of law, all judicial and administrative judgments, orders, agreements, permits, licenses, tariffs, determinations, and all common law, in each case concerning, in whole or in part, pollution, hazardous substances or waste, water quality, conservation or other protection of the environment, human health, safety, and welfare.

"Environmental Claims" means any Claim under any Environmental Law; provided, however, that Environmental Claims shall not include (x) any Claim for personal injury (including, but not limited to, sickness, disease or death) or (y) any Fire Claim.

"Environmental Performance Obligation" means an obligation or requirement arising from any consent decree, permit, license, tariff, Cause of Action, agreement, injunction, cleanup and abatement order, cease and desist order, or any other administrative or judicial judgment, order or decree under any Environmental Law that is not a Claim and does not arise from any Fire.

## II. Order Provisions

1.      Nothing in this Order, the Plan or the Plan Documents discharges, exculpates, absolves or releases the Debtors, the Reorganized Debtors, any "Released Party" (as defined by the Plan), any non-debtor, or any other Person from any Environmental Claims held by any Governmental Unit or Environmental Performance Obligations to any Governmental Unit or impairs the ability of any Governmental Unit to pursue any Environmental Claims or Environmental Performance Obligations, or any claim, liability, right, defense, or Cause of Action under any Environmental Law against any Debtor, Reorganized Debtor, any "Released Party" (as defined in the Plan), or any other Person.

2.      All Environmental Claims held by any Governmental Unit or Environmental Performance Obligations to any Governmental Unit shall survive the Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such Environmental Claims or Environmental Performance Obligations would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced; *provided*, that nothing in this Order, the Plan, or the Plan Documents shall alter any legal or equitable rights or defenses of the Debtors or the Reorganized Debtors under non-bankruptcy law with respect to any such Environmental Claims or Environmental Performance Obligations. For the avoidance of doubt, the Debtors and the

1

Reorganized Debtors shall not raise the discharge injunction as a defense to the Environmental Claims or Environmental Performance Obligations.

3.     Nothing in this Order, the Plan, or the Plan Documents authorizes the transfer or sale of any governmental licenses, permits, registrations, authorizations or approvals, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under the law governing such transfers.

4.     Notwithstanding anything in this Order, the Plan, or the Plan Documents, the listing of a matter as an "executory contract" or an "unexpired lease" in Debtors' schedules or Plan Documents is without prejudice to any contention by any Governmental Unit that the matter is not in fact an executory contract or unexpired lease as set forth in 11 U.S.C. § 365.

5.     Nothing in this Order, the Plan, or the Plan Documents shall affect or impair the United States' or any department, agency, or instrumentality of the State of California's rights and defenses of setoff and recoupment, or their ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved, all subject to the limitations in the Bankruptcy Code, if any.

6. Nothing in this Order, the Plan, or the Plan Documents impairs, precludes, resolves, exculpates, enjoins or releases any obligation or liability to a Governmental Unit on the part of any non-Debtor.

7.     Nothing in this Order, the Plan, or Plan Documents shall discharge, release, enjoin, or otherwise bar (i) any obligation or liability to a Governmental Unit that is not a Claim, or (ii) any liability of the Debtors or the Reorganized Debtors to a Governmental Unit arising on or after the Confirmation Date.  Notwithstanding any other provision in this Order, the Plan, or the Plan Documents: (1) nothing relieves the Debtors or the Reorganized Debtors from their obligations to comply with the Communications Act of 1934, as amended, and the rules, regulations and orders promulgated thereunder by the Federal Communications Commission ("FCC").  No transfer of any FCC license or authorization held by the Debtors or transfer of control of the Debtors or transfer of control of an FCC licensee controlled by the Debtors shall take place prior to the issuance of FCC regulatory approval for such transfer pursuant to applicable FCC regulations.  The FCC's rights and powers to take any action pursuant to its regulatory authority including, but not limited to, imposing any regulatory conditions on any of the above described transfers, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority.

8     Nothing in this Order, the Plan or the Plan Documents relieves the Debtors or the Reorganized Debtors from their obligations to comply with the Atomic Energy Act of 1954, as amended, and the rules, regulations and orders promulgated thereunder by the United States Nuclear Regulatory Commission ("NRC").

# EXHIBIT 4

**California State Agencies Plan Objection Exhibit 4—Proposed Confirmation Order Language re Unfulfilled Obligations from First PG&E Chapter 11 Plan**

1.      Additional Definitions:

   **2003 Confirmation Order** means the *Order Confirming Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Pacific Gas and Electric Company Proposed by Pacific Gas and Electric Company, PG&E Corporation and the Official Committee of Unsecured Creditors Dated July 31, 2003, as Modified* [Docket No. 14272], entered on December 22, 2003, in *In re Pacific Gas and Electric Company*, Case No. 01-30923 DM (Bankr. N.D. Cal.).

   **2003 Watershed Lands Obligations** means the outstanding obligations of the Utility pursuant to the 2003 Confirmation Order to permanently protect the beneficial public values associated with certain land identified in that certain Settlement Agreement, dated December 19, 2003 and approved in CPUC Decision 03-12-035, among the Debtors and CPUC, and the related Stipulation Resolving Issues Regarding the Land Conservation Commitment that has not been made subject to a conservation easement or donated in accordance with the obligations set forth therein, which includes, for the avoidance of doubt, the Watershed Lands (as defined in and identified by the Settlement Agreement).

2.      Operative Provision:

   The rights, duties and obligations of the Debtors under the 2003 Watershed Lands Obligations shall be preserved and are unaffected by the Plan or this Order, notwithstanding anything to the contrary contained therein.

# EXHIBIT 5

**California State Agencies Plan Objection Exhibit 5—Proposed Language for Confirmation Order – Provisions regarding refunds in FERC TO Proceedings**

      1.      Additional Definition

**FERC Tariff Rate Proceedings** means the pending TO Rate Revision Cases filed by PG&E at FERC seeking increases to its proposed electricity transmission rates in 2016, 2017, and 2018 and bearing FERC Docket Nos. ER16-2320-000, ER17-2154-000, and ER19-13-000, respectively, in which certain non-Debtor parties may receive refunds in amounts to be later determined by FERC.

      2.      Operative Provision:

**FERC Tariff Rate Proceedings.** To the extent that any non-Debtor party to the FERC Tariff Rate Proceedings is entitled to a refund from the Debtors or Reorganized Debtors pursuant to such proceedings, such refund obligation shall be an ongoing regulatory obligation of the Reorganized Debtors not subject to discharge or release by the Plan or this Order, notwithstanding anything to the contrary contained therein. All rights of such non-Debtor parties, the Debtors and/or the Reorganized Debtors to prosecute, defend, or appeal a finding of the FERC Tariff Rate Proceedings are preserved and may be exercised as if the Chapter 11 Cases had not been commenced.

# EXHIBIT 6

**California State Agencies Plan Objection Exhibit 6—Proposed Language for Confirmation Order—Provisions regarding CERS Bond Funds**

    1.      Additional Definitions

        **DWR Bond Charge** means the charge imposed by the CPUC upon customers in the service areas of California's investor-owned utilities, as more fully defined in CPUC-DWR Rate Agreement, which is based on an estimate of the revenue needed to pay for DWR Bond Related Costs and the aggregate amount of electric power used by customers. The DWR Bond Charge is the property of DWR for all purposes under California law, and any funds the Utility received from customers as the billing and collection agent for the DWR Bond Charge are held in trust for the benefit of DWR, pursuant to Section 5.1(b) of the CPUC-DWR Rate Agreement, and California Water Code section 80112.

        **DWR Bond Related Costs** means the Bond Related Costs described in the CPUC-DWR Rate Agreement.

        **CPUC-DWR Rate Agreement** means the agreement dated March 8, 2002 between the CPUC and DWR relating to the establishment of DWR's revenue requirements and charges in connection with power sold by DWR under Division 27, commencing with section 80000, of the California Water Code.

        **DWR** means the California Department of Water Resources.

    2.      Operative Provision:

        **DWR Bond Charge.**  The proceeds of the DWR Bond Charge do not constitute property of the Debtors' estates.  Notwithstanding anything in the Plan or this Order to the contrary, DWR shall be entitled to pursue any Claim against or otherwise exercise any rights against the Debtors and Reorganized Debtors in respect of the proceeds of the DWR Bond Charge as if the Chapter 11 Cases had not been commenced; *provided that* any such action shall be subject to the terms of the CPUC-DWR Rate Agreement, applicable CPUC decisions and orders, the California Water Code, and any other applicable law.

# EXHIBIT 7

**California State Agencies Plan Objection Exhibit 7—Confirmation Order Language Regarding Executory Contracts**

Notwithstanding anything in this Order, the Plan, or the Plan Documents, the listing of a matter as an "executory contract" or an "unexpired lease" in Debtors' schedules or Plan Documents ("Potentially Assumed Contract/Lease") is without prejudice to any contention by any Governmental Unit that the Potentially Assumed Contract/Lease is not in fact an executory contract or unexpired lease as set forth in 11 U.S.C. § 365. With respect to any Cure Amount for a Potentially Assumed Contract/Lease for which the United States or any department, agency, or instrumentality of the State of California is listed as the Non-Debtor Counterparty, all parties reserve all rights to dispute such Cure Amount. In the event there is finding that any Potentially Assumed Contract/Lease is an executory contract or unexpired lease and there is a dispute over the Cure Amount, the United States and applicable state agency shall have no less than 30 days' to object to the Cure Amount, and any Cure Amount dispute shall be resolved by the Bankruptcy Court or other court of appropriate jurisdiction; provided however, in the event a Potentially Assumed Contract/Lease is determined to be an assumed executory contract or unexpired lease, the satisfaction of the Cure Amount shall only satisfy any default and shall not be considered a release and satisfaction of any Claims and Causes of Action notwithstanding anything to the contrary in Plan section 8.2(e).

# EXHIBIT 8

**California State Agencies Plan Objection Exhibit 8—Confirmation Order Language Regarding Administrative Claims**


Notwithstanding anything to the contrary in the Plan, Plan Supplement or this Order, any Administrative Claim held by a Governmental Unit is not discharged and shall be resolved and enforced in the ordinary course of business in the otherwise applicable non-bankruptcy forum.

# EXHIBIT 9

**California State Agencies Plan Objection Exhibit 9—Revisions to Fire Victim Trust Agreement and Claims Resolution Procedures**

Claims Resolution Procedures (Preamble):

The goal of the Fire Victim Trust is to provide an efficient process to fairly compensate the holders of timely filed Fire Victim Claims (respectively, "Claimants" and "Claims") in an equitable manner and on a *pro rata* basis consistent with the terms of the Trust Agreement, Plan, and California and federal law. These Fire Victim Claims Resolution Procedures ("CRP") apply to all Claims; provided that these Claims Resolution Procedures will not apply to the Allowed Fire Victim Claims of the Federal Agencies and State Agencies under their respective Bankruptcy Court-approved settlement agreements.

Claims Resolution Procedures Section VI Release:

Before receiving payment from the Trust, Claimants must submit signed releases in substantially the same form and content as the Claimant Release and Mutual Made Whole Release, attached to the Trust Agreement as Exhibits 4 and 5, respectively; provided however, no additional release will be required with respect to payment of any Fire Victim Claim that is the subject of a Bankruptcy Court approved settlement agreement.

Trust Agreement Recital E:

E. The Plan provides, among other things, for the creation of the PG&E Fire Victim Trust (the "Fire Victim Trust" or the "Trust") to evaluate, administer, process, settle, expunge, and resolve all claims of Fire Victims against the Debtors that have not already been Allowed pursuant to a Bankruptcy Court-approved settlement agreement ("Fire Victim Claims"), and, to the extent approved and liquidated pursuant to the Fire Victim Claims Resolution Procedures (the "CRP" attached hereto as Exhibit 2 ("Approved"), satisfy and pay all Approved Fire Victim Claims in accordance with the Plan, the Confirmation Order, the Trust Agreement, the CRP and the Registration Rights Agreement, including all related exhibits (collectively, the "Trust Documents"), and to prosecute or settle the Assigned Rights and Causes of Action.

Trust Agreement, Section 2.1(e)(vi):

(vi) determine and pay liabilities and expenses created, incurred, or assumed by the Trust (including, without limitation, the obligations under the Bankruptcy Court-approved settlement agreements), except that the Claims Administrator (as defined in Section 2.3, below) shall have all rights, responsibilities, and powers related to the resolution of any Fire Victim Claims in accordance with the Trust Documents;

1

Trust Agreement Section 2.1(e)(vii):

(vii) prepare analyses and budget(s), both of which may be updated from time to time, of all Fire Victim Claims ("Claims Budget") in order to determine the fair and appropriate amount to be distributed on Approved Fire Victim Claims as such claims become Approved, which takes into account the existence of the Approved Fire Victim Claims that have not yet been paid and Fire Victim Claims that have not yet become Approved Fire Victim Claims, including by maintaining sufficient Trust Assets on hand as deemed by the Trustee, in his or her sole discretion (based on, among other things, the Claims Budget), to be necessary and prudent in carrying out the purposes of the Trust, including, but not limited to, to ensure that all Approved Fire Victim Claims receive a pro rata distribution or as close thereto as possible, regardless of when such claim is fully administered under the terms of the Trust and CRP such that it becomes an Approved Fire Victim Claim; provided, however, that the Trustee shall pay in full, when due, all obligations under the Bankruptcy Court-approved settlement agreements;


Trust Agreement Section 2.4(a):

The CRP shall govern the process by which, each Fire Victim Claim shall be evaluated, administered, processed, settled, expunged, determined and resolved on a final basis; provided however, that notwithstanding anything to the contrary in the CRP, any Fire Victim Claim that is the subject of a Bankruptcy Court approved settlement agreement shall be treated and paid in accordance with the terms of the settlement agreement and shall not be subject to further evaluation, allowance, settlement or determination under the CRP.


Trust Agreement Section 8.3:

Any modification or amendment made pursuant to this Section 8.3 must be done in writing and, in the case of material modifications or amendments, shall be subject to the approval of the Bankruptcy Court after notice and hearing.

Case: 19-30088   Doc# 7281   Filed: 05/15/20   Entered: 05/15/20 15:05:08   Page 43 of 44

1
## PROOF OF SERVICE

2      I, Susan R. Darms, declare:

3      I am a resident of the State of California and over the age of eighteen years, and not a

4 party to the within action; my business address is 500 Capitol Mall, Suite 2250, Sacramento, CA

5 95814. On May 15, 2020, I served the within document(s):

6 **CALIFORNIA STATE AGENCIES' OBJECTION TO CONFIRMATION OF DEBTORS'**
**AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF**
7 **REORGANIZATION DATED MARCH 16, 2020 [DOCKET NO. 6320]**

8 By Electronic Service via CM/ECF to all registered participants in this case as of May 15, 2020.

9

10                   */s/   Susan R. Darms*

11                  SUSAN R. DARMS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28