TIMOTHY S. LAFFREDI (WI SBN 1055133)
Assistant United States Trustee
United States Department of Justice
Office of the U.S. Trustee
450 Golden Gate Avenue, Suite 05-0153
San Francisco, CA 94102
Telephone: (415) 705-3333
Facsimile: (415) 705-3379
Email: timothy.s.laffredi@usdoj.gov

Attorneys for Andrew R. Vara,
United States Trustee for Regions 3 and 9[1]

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**,<br><br>      - and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                       **Debtors**.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>Date: May 27, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>         Courtroom 17, 16th Floor<br>         San Francisco, CA 94102 |

## UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN

Andrew R. Vara, United States Trustee for Regions 3 and 9 (the "United States Trustee"), by and through his undersigned counsel, hereby files this objection (the "Objection") to

---

[1] Andrew R. Vara, United States Trustee for Regions 3 and 9, is acting in this appointment for Tracy Hope Davis, United States Trustee for Region 17, who has recused herself.

1

confirmation of the Debtors' and the Shareholder Proponents' Joint Chapter 11 Plan (the "Plan") (ECF No. 6320).[2]

**PRELIMINARY STATEMENT**

The Plan's exculpation and release provisions violate established Ninth Circuit law. The U.S. Trustee has three objections to the Plan. First, contrary to lower court decisions in the Ninth Circuit, the Plan's exculpation provisions include non-estate fiduciaries and attempt to provide prospective exculpation for certain post-petition conduct. Second, the Plan's non-debtor releases may bind unimpaired creditors who did not affirmatively vote to "opt-in" to the releases. Nonconsensual releases of non-debtors are not permitted in the Ninth Circuit. *See In re Lowenschuss*, 67 F.3d 1394, 1401-02 (9th Cir. 1995); *In American Hardwoods, Inc.*, 885 F.2d 621, 626 (9th Cir. 1989). Third, the Plan attempts to impose the settlement standards of Fed. R. Bankr. P. 9019 upon claimants who have not expressly agreed to a settlement, also in violation of prevailing case law.

**JURISDICTION**

1. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the Northern District of California issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this Objection.

2. Under 28 U.S.C. § 586(a)(3), the United States Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the United States Trustee's overarching responsibility to enforce the laws as written by Congress and

---

[2] The United States Trustee requests that the Court take judicial notice of the pleadings and documents filed in these cases pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201.

2

interpreted by the courts. *See Curry v. Castillo (In re Castillo)*, 297 F.3d 940, 950 (9th Cir. 2002) ("The United States Trustee is the 'watchdog' of the bankruptcy system …."); *United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3. Under 28 U.S.C. § 586(a)(3)(B), the United States Trustee has the duty to monitor plans and disclosure statements filed in Chapter 11 cases and to comment on such plans and disclosure statements.

4. Under 11 U.S.C. § 307, the United States Trustee has standing to be heard on the Plan and the issues raised in this Objection.

## STATEMENT OF FACTS

5. On January 29, 2019, the Debtors commenced the above-captioned cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (ECF No. 1). No trustee has been appointed in the Debtors' cases. On February 12, 2019, the United States Trustee appointed an Official Committee of Unsecured Creditors. *See* ECF No. 409. On February 15, 2019, the United States Trustee appointed an Official Committee of Tort Claimants. *See* ECF No. 453.

6. On January 31, 2020, the Debtors and the Shareholder Proponents filed the Plan. *See* ECF Nos. 5590, 5591. The related disclosure statement was filed on February 7, 2020, *see* ECF No. 5700, and was approved on March 17, 2020, along with the plan solicitation and voting procedures. *See* ECF No. 6340.

3

7. An unnumbered Plan section entitled "Interpretation; Application of Definitions and Rules of Construction" reads in pertinent part as follows: "in the event that a particular term of the Plan (including any exhibits or schedules hereto) conflicts with a particular term of the definitive documentation required to be implemented pursuant to the terms of the Plan or any settlement or other agreement contemplated hereunder, the Plan shall control; *provided*, for the avoidance of doubt, to the extent the Confirmation Order conflicts with the Plan, the Confirmation Order shall control for all purposes …." *See* ECF No. 6320, at p. 36 ¶(h) (emphasis in original).

8. The definition of Exculpated Parties (Plan Section 1.65) includes non-estate fiduciaries, including but not limited to:

> (b) the DIP Facility Agents; (c) the DIP Facility Lenders; (d) the Exit Financing Agents; (e) the Exit Financing Lenders; (f) the Funded Debt Trustees; (g) the HoldCo Revolver Lenders; (h) the HoldCo Term Loan Lenders; (i) the Utility Revolver Lenders; (j) the Utility Term Loan Lenders; (k) the Public Entities Releasing Parties . . . (m) the Backstop Parties; (n) the Consenting Creditors; (o) the Shareholder Proponents; (p) the Consenting Noteholders; and (q) with respect to each of the foregoing entities (a) through (p), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such.

*Id.* at 9-10.

9. The definition of Released Parties (Plan Section 1.179) includes a similar long list of non-estate fiduciaries, including but not limited to:

> (c) the DIP Facility Agents; (d) the DIP Facility Lenders; (e) the Exit Financing Agents; (f) the Exit Financing Lenders; (g) the Backstop Parties; (h) the Public Entities Releasing Parties; (i) the Consenting Creditors (solely in their capacity as holders of Subrogation Wildfire Claims); (j) the Shareholder Proponents; (k) the Consenting Noteholders; (l) the Funded Debt Trustees; and (m) with respect to

4

each of the foregoing entities (a) through (l), such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such.

*Id.* at 23-24.

10. The definition of Releasing Parties (Plan Section 1.180) includes:

(c) any holder of a Claim or Interest that is solicited and voluntarily indicates on a duly completed Ballot submitted on or before the Voting Deadline that such holder opts into granting the releases set forth in Section 10.9(b) of the Plan to the extent permitted by applicable law, *provided that* for the avoidance of doubt any such a holder who does not indicate on their Ballot that they opt into granting such releases shall not be a Releasing Party, *provided further* that such holder's decision to opt-in or not to the releases shall not in any way affect the classification or treatment of such Claim or Interest ….

*Id.* at 24 (emphasis in original).

11. Section 6.1 of the Plan reads in pertinent part as follows:

The Plan shall be deemed a motion to approve a good-faith compromise and settlement pursuant to which the Debtors and the holders of Claims against and/or Interests in the Debtors settle all Claims, Interests, and Causes of Action pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.

12. The Debtors sent a six-page summary of the Plan's Injunction, Exculpation, and Release Provisions as part of the solicitation package to those entitled to vote (the "Summary"). The Summary provided as follows:

If the Plan is confirmed by the Bankruptcy Court, the Plan, including the injunctions, exculpations, and releases contained in, among others, Sections 4.6(a), 4.7(a), 4.25(e), 4.26(b), 6.4(a), 6.7(a), 10.3, 10.4, 10.5, 10.6, 10.7, 10.8, and 10.9 thereof, will be binding on you, *regardless of whether you are Impaired or not under the Plan*. If the Plan is confirmed by the Bankruptcy Court, the following key injunction, exculpation, and release provisions will apply, subject

5

to such definitions, other provisions, and exceptions contained in the Plan that may be applicable.

ECF No. 6340-4, at pp. 12-17 (emphasis added). A copy of the Summary is attached hereto as Exhibit A.

13. As described in the Summary, Exculpated Parties shall not be liable for, and shall be released and exculpated from:

> any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of *... the administration of this Plan … the issuance of Securities under or in connection with this Plan: or the transactions in furtherance of any of the foregoing …* except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct ….

*See* ECF No. 6340-4, at p.14 of 17 (emphasis added); *see also* Plan, at § 10.8 (pp. 77-78).

14. As described in the Summary, Released Parties shall be:

> deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the *Releasing Parties* from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever … whether known or unknown, foreseen or unforeseen, *existing or hereinafter arising, in law, equity, or otherwise*, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases … *or any other act or omission, transaction, agreement, event, or other occurrence* …."

*See* ECF No. 6340-4, at p.15-16 of 17 (emphasis added); *see also* Plan, at § 10.9(b) (pp. 85-86).

15. Consistent with the Court's February 6, 2020 Order, *see* ECF No. 5673, the United States Trustee provided written comments to the Debtors on February 28, 2020 (the "February Email"). The February Email provided disclosure statement comments, but also previewed confirmation objections, particularly in the areas of releases and exculpations. While the comments regarding the disclosure statement had been resolved, the United States Trustee's

issues with the Plan remained unaddressed by the Debtors.  On May 11, 2020, the United States Trustee requested a draft confirmation order to review. The United States Trustee also requested a teleconference at the Debtors' convenience in light of the upcoming Plan confirmation deadline.

16. Counsel for the Debtors did not directly respond to the United States Trustee's request for a meeting to discuss the outstanding issues as set forth in the February Email. They did, however, emphatically reject the United States Trustee's request to review a proposed confirmation order, stating that they would not have a draft confirmation order prepared until after the Plan objection deadline has passed.

## OBJECTION

**I. The Exculpation and Release Provisions Are Overly Broad**

**A. Exculpation**

17. Plans should generally only exculpate those actions taken in connection with a bankruptcy case between the petition date and the effective date of the plan. *See, e.g., In re Fraser's Boiler Serv., Inc.*, 593 B.R. 636, 639-40 (Bankr. W.D. Wash. 2018); *In re Yellowstone Mountain Club, LLC*, 460 B.R. 254, 271 (Bankr. D. Mont. 2011) (the court read the exculpation clause to only protect those acts that occurred between the petition date and effective date.).

18. Further, any exculpations should carve out gross negligence, willful misconduct and breaches of professional duties. *See*, *e.g.*, *In re S. Edge LLC*, 478 B.R. 403, 414 (D. Nev. 2012) (affirming bankruptcy court's approval of exculpation that had carve-out for willful misconduct and gross negligence); *In re W. Asbestos Co.*, 313 B.R. 832, 846-47 (Bankr. N.D. Cal. 2003) (approving exculpation with carve-out for willful misconduct); *In re WCI Cable, Inc.*,

7

282 B.R. 457, 477-80 (Bankr. D. Or. 2002) (conditioning approval on the addition of exculpation exceptions for negligence and breaches of fiduciary duty).

19. Exculpation clauses approved at confirmation are "limited to the fiduciaries who have served during the chapter 11 proceeding," including the estate professionals, the committee and its members, and the debtor's directors and officers. *Fraser's,* 593 B.R. at 642 (citing *In re Washington Mutual, Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011)).

20. The Debtors' list of acts covered under the exculpation provisions appear to exceed the temporal limits of the bankruptcy case, because they include: the administration of this Plan or the property to be distributed under this Plan," "the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing." *See* Summary, p. 3. The Debtors also request exculpation for documents that have not yet been finalized, for example, the confirmation order itself. Absent clarification, the exculpation provisions appear overly broad, unlike in *Yellowstone*, where the exculpation provision was limited in time to acts between the petition date and the effective date of the plan. The confirmation order should therefore clarify that any exculpations apply to the time period between the commencement of the cases and effective date of the Plan. Further, breaches of professional obligations are not subject to the exculpation provisions and should be included in the carve-out.

21. Finally, the definition of Exculpated Parties includes numerous non-estate fiduciaries. The definitions should be revised to remove listed entities that are not estate fiduciaries, including the lengthy list of predecessors, successors, equity security holders and so

8

forth.³ The list of parties receiving exculpation should be limited to those parties who served in the capacity of estate fiduciaries, i.e., the creditors' committee, its members, estate professionals and the Debtors' directors and officers.

### B. The Releases

22. As long held by the Ninth Circuit, Bankruptcy Code Section 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors, at least on a nonconsensual basis. *See In re Lowenschuss*, 67 F.3d 1394, 1401-02 (9th Cir. 1995) (holding that global release provision in plan was "contrary to § 524(e)"); *In American Hardwoods, Inc.*, 885 F.2d 621, 626 (9th Cir. 1989) (permanent injunction that protected a non-debtor violated § 524(e)).

23. Here, the Debtors purport to bind only those creditors who "opt-in" to the releases. However, in the Summary, the Debtors also state that the "releases contained in, among others, Sections 4.6(a), 4.7(a), 4.25(e), 4.26(b), 6.4(a), 6.7(a), 10.3, 10.4, 10.5, 10.6, 10.7, 10.8, and 10.9 [of the Plan], will be binding on you, *regardless of whether you are Impaired or not under the Plan.*" *See* Summary at p.1 (emphasis added).

24. It is unclear why the Debtors included "unimpaired" creditors in their definition of those who are subject to the releases. But only those who affirmatively vote to "opt-in" to the releases should be subject to the broad releases of non-debtors. *See In re Washington Mutual, Inc.*, 442 B.R. at 355 ("[T]he Court concludes that the opt out mechanism is not sufficient to support the third party releases anyway, particularly with respect to parties who do not return a ballot (*or are not entitled to vote in the first place*). Failing to return a ballot is not a sufficient manifestation of consent to a third party release.") (emphasis added).

---

³ The definition is broad enough to encompass the "servants" of various parties, whomever these may be.

## II. The Proposed Settlement Language is Overbroad

25. Plan Section 6.1, entitled General Settlement of Claims and Interests Controversies, reads in full as follows:

> The Plan shall be deemed a motion to approve a good-faith compromise and settlement pursuant to which the Debtors and the holders of Claims against and/or Interests in the Debtors settle all Claims, Interests, and Causes of Action pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The Confirmation Order shall constitute the Court's approval of the compromise, settlement, and release of all such Claims, Interests, and Causes of Action, as well as a finding by the Bankruptcy Court that all such compromises, settlements, and releases are mutual and bi-directional and are in the best interests of the Debtors, their estates, and the holders of Claims, Interests, and Causes of Action, and is fair, equitable, and reasonable. Except as otherwise provided in the Wildfire Trust Agreements and the Claims Resolution Procedures, in accordance with the provisions of the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors, may compromise and settle all Claims and Causes of Action against, and Interests in, the Debtors and their estates. The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan.

26. Section 6.1 of the Plan is an attempt to rewrite the Bankruptcy Code. A plan may not rewrite the Bankruptcy Code. *See In re Beyond.com*, 289 Bankr. 138 (Bankr. N.D. CA. 2003). The terms satisfaction and release, or the phrase "complete settlement" are synonyms of the term discharge. The Ballentine's Law Dictionary definition of satisfaction is: "The discharge of an obligation; the payment of a debt. A fulfillment of needs. A performance of the terms of an accord." (Ballantine's Law Dictionary 2010). Section 6.1 acts as a discharge and is not appropriate except as to any creditor who has expressly agreed to a settlement. The settlement of claims against a debtor subject to Fed. R. Bankr. P. 9019 should be limited solely to those parties

10

who have expressly entered into a settlement agreement. See *In re Washington Mutual Inc.*, 442 B.R. at 350-51. *Cf. In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004). Absent an express settlement agreement between parties, the standards of Bankruptcy Code Section 1129 prevail over the standards of Fed. R. Bankr. P. 9019. *Deocampo v. Potts*, 836 F.3d 1134, 1143 (9th Cir. 2016).

27. Section 1123(b)(3)(A) of the Bankruptcy Code permits a plan proponent to propose: "…the settlement or adjustment of any claim or interest **belonging to the debtor or to the estate** (emphasis added)." This provision does not authorize a plan proponent to settle claims against the debtor or estate. That is called a discharge.

28. A Debtor may not do by indirection what it cannot do directly. This principle was most recently restated by the Supreme Court in the case of *Law v. Siegel*, 571 U.S. 514 (2014). In discussing the principle that Section 105(a) of the Bankruptcy Code may not be used to override explicit mandates of the Bankruptcy Code, the court noted:

> It is hornbook law that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." 2 Collier on Bankruptcy ¶ 105.01[2], p. 105–6 (16th ed. 2013). Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere. 571 U.S. 415 at 421.

Thus here, the attempt to invoke Sections 363 and 1123 to otherwise circumvent the provisions of Chapter 11 and Section 1141(d)(3) is inappropriate.

29. Sections 1129 (a) (1) and (7) of the Bankruptcy Code require a debtor to make distributions pursuant to the priorities of the Bankruptcy Code. The distributions under the Plan are pursuant to the priorities set forth in Chapter 11 and in Section 726 of the Bankruptcy Code and not on any other basis.

11

## CONCLUSION

The Court should not confirm the Debtors' Plan unless the Plan is amended to conform the exculpation and release provisions to prevailing law and to strike language imposing settlement standards on claimants who have not expressly agreed to a settlement.

Dated: May 15, 2020

Andrew R. Vara
United States Trustee, Regions 3 and 9

By: /s/ Timothy S. Laffredi
TIMOTHY S. LAFFREDI
Attorney for the United States Trustee

# EXHIBIT A

# SCHEDULE A

## Summary of Key Injunction, Exculpation, and Release Provisions of the Plan

If the Plan is confirmed by the Bankruptcy Court, the Plan, including the injunctions, exculpations, and releases contained in, among others, Sections 4.6(a), 4.7(a), 4.25(e), 4.26(b), 6.4(a), 6.7(a), 10.3, 10.4, 10.5, 10.6, 10.7, 10.8, and 10.9 thereof, will be binding on you, regardless of whether you are Impaired or not under the Plan. If the Plan is confirmed by the Bankruptcy Court, the following key injunction, exculpation, and release provisions will apply, subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER:

*Section 10.6 – Injunction*

**(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan;** *provided*, **that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against a Debtor or an estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan, the Confirmation**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

(b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, the injunctions set forth in this Section.

*Section 10.7 – Channeling Injunction.*

(a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

   (i) commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Reorganized Debtor, or any property or interests in property of any Reorganized Debtor with respect to any such Fire Claim;

   (ii) enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim;

   (iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Reorganized Debtor or the property of any Reorganized Debtor with respect to any such Fire Claims;

   (iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Reorganized Debtor or against the property of any Reorganized Debtor with respect to any such Fire Claim; and

   (v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

(b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this Channeling Injunction shall not enjoin:

   (i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and

2

Case: 19-30088    Doc# 7283    Filed: 05/15/20    Entered: 05/15/20 15:05:52    Page 15 of 19
Case: 19-30088    Doc# 6340-2    Filed: 03/17/20    Entered: 03/17/20 15:44:14    Page 10

(ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.

(c) **Modifications.** There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

(d) **No Limitation on Channeling Injunction.** Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.

(e) **Bankruptcy Rule 3016 Compliance.** The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

*Section 10.8 - Exculpation.* Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

*Section 10.9 – Releases.*

(a) *Releases by the Debtors*. As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the

**Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.**

**(b)** ***Releases by Holders of Claims and Interests.*** **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether**

known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.25(f)(ii) hereof.

(c) *Only Consensual Non-Debtor Releases.*  Except as set forth under Section 4.25(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.  The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.

(d) *Release of Liens.*  Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of

such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

(e) *Waiver of Statutory Limitations on Releases*. Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

(f) **Injunction Related to Releases and Exculpation.** The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.

(g) **No Release or Exculpation of Assigned Rights and Causes of Action.** Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.