DAVID M. FELDMAN (*pro hac vice*)
 dfeldman@gibsondunn.com
MATTHEW K. KELSEY (*pro hac vice*)
 mkelsey@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

MATTHEW D. McGILL (*pro hac vice*)
 mmcgill@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

MICHAEL S. NEUMEISTER, SBN 274220
 mneumeister@gibsondunn.com
MICHELLE CHOI, SBN 313557
 mchoi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for the Ad Hoc Committee of Holders of Trade Claims*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| -and- | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | |
| ☐  Affects PG&E Corporation | **OBJECTION OF THE AD HOC COMMITTEE OF HOLDERS OF TRADE CLAIMS TO CONFIRMATION OF THE DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 16, 2020** |
| ☐  Affects Pacific Gas and Electric Company | |
| ☑  Affects both Debtors | |
| * *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

The Ad Hoc Committee of Holders of Trade Claims (the "Trade Committee"),[1] by and through its undersigned counsel, submits this objection (the "Objection") to confirmation of the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* [D.I. 6320] (the "Plan")[2] filed by PG&E Corporation ("PG&E Corp."), Pacific Gas and Electric Company (the "Utility" and together with PG&E Corp., "PG&E" or the "Debtors"), and certain funds and accounts managed or advised by Abrams Capital Management, LP and certain funds and accounts managed or advised by Knighthead Capital Management, LLP (the "Shareholder Proponents" and, together with the Debtors, the "Plan Proponents") in these chapter 11 cases (the "Chapter 11 Cases"). In addition, the Trade Committee hereby joins in the objection to the Plan filed by the Official Committee of Unsecured Creditors (the "Creditors' Committee"). In support of this Objection, the Trade Committee respectfully represents:

**PRELIMINARY STATEMENT**

The Plan disregards trade creditors' and other general unsecured creditors' rights under the Bankruptcy Code and applicable nonbankruptcy law for no legitimate purpose. The Plan Proponents bear the burden of proving that the Plan complies with all applicable provisions of the Bankruptcy Code and each of the statutory requirements for confirmation. *See Liberty National Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*, 115 F.3d 650, 653 (9th Cir. 1997). The Plan Proponents cannot satisfy their burden with the Plan and, absent modifications thereto, the Court must deny confirmation of the Plan for the following reasons:

- *First*, the Plan violates Bankruptcy Code section 1124 by failing to pay holders of General Unsecured Claims interest that accrues thereon after the Effective Date to the extent distributions in respect of those claims are made after the Effective Date;

- *Second*, to the extent the Debtors intend to limit postpetition interest on Cure Amounts to the Federal Judgment Rate, the Plan violates Bankruptcy Code sections 365(b) and 1123(d);[3]

---

[1] The Trade Committee consists of creditors holding more than $308 million in trade claims against the Debtors. *See First Amended Verified Statement of Ad Hoc Committee of Holders of Trade Claims Pursuant to Bankruptcy Rule 2019* [D.I. 5060] (the "First Amended 2019 Statement"). The name and address of each Trade Committee member are listed on the First Amended 2019 Statement.

[2] Capitalized terms not otherwise defined herein shall have the meanings afforded to them in the Plan.

[3] The PPI Decision (as defined herein) does not address the amount necessary to cure defaults under executory contracts, and therefore does not impact this separate confirmation issue.

- *Third*, the Plan, with no legal basis, attempts to grant the Debtors the ability to pay Cure Amounts in respect of certain Allowed Claims to the contract counterparties for assumed executory contracts, rather than to the actual holders of those Allowed Claims that have been validly assigned pursuant to Bankruptcy Rule 3001(e); and

- *Fourth*, the Plan improperly pays postpetition interest on General Unsecured Claims at the Federal Judgment Rate, as opposed to in accordance with California law at the contract rate or 10% per annum. *See* Cal. Civ. Code § 3289. The Trade Committee acknowledges that the Court has already ruled on the postpetition interest issue in its *Interlocutory Order Regarding Postpetition Interest* [D.I. 5669] (the "PPI Order") and related *Memorandum Decision Regarding Postpetition Interest* [D.I. 5226] (the "PPI Memorandum" and together with the PPI Order, the "PPI Decision"), and does not intend to re-litigate this issue at the Confirmation Hearing. Rather, the Trade Committee renews this objection for procedural purposes only to ensure completeness of the record before the Court relating to confirmation issues, and that any order confirming the Plan constitutes a final order on the appropriate rate of postpetition interest payable to holders of Unimpaired General Unsecured Claims for appellate purposes.

For the reasons set forth herein and in the Creditors Committee's objection, which the Trade Committee hereby joins, the Plan cannot be confirmed in its present form.

**OBJECTION**

**I.  The Plan Must Pay Interest on General Unsecured Claims Through the Date of Distribution**

No one disputes that, in these solvent Chapter 11 Cases, holders of General Unsecured Claims are entitled to postpetition interest and, indeed, the PPI Decision requires as much. Nevertheless, the Plan improperly limits creditors' right to payment of postpetition interest on General Unsecured Claims by terminating the accrual of postpetition interest on the Effective Date of the Plan, rather than on the date of distribution, even though the Plan allows the Debtors to delay payments in respect of General Unsecured Claims for at least six months after the Effective Date (and potentially much longer). The obvious result of this failure is that holders of General Unsecured Claims—which the Plan purports to unimpair—will be denied postpetition interest for the period between the Effective Date and the actual distribution date.

Specifically, the Plan currently provides that "[t]he Allowed amount of any [HoldCo/Utility] General Unsecured Claim shall [include/reflect] all interest accrued from the Petition Date ***through the Effective Date*** at the Federal Judgment Rate." Plan §§ 4.4(a), 4.23(a) (emphasis added). The Plan defines "Allowed" to include "any Claim or Interest arising on or before the Effective Date as to which no objection to allowance has been interposed within the

time period set forth in the Plan." *Id.* § 1.7. The Plan further provides that "any objections to Claims shall be served and filed on or before the later of (i) one-hundred and eighty (180) days after the Effective Date and (ii) such later date as may be fixed by the Bankruptcy Court (as the same may be extended by the Bankruptcy Court for cause shown)." *Id.* § 7.1. A holder of a Claim is only entitled to distributions under the Plan after the Claim has become Allowed (*id.* § 7.4), and "if any portion of a Claim is a Disputed Claim," no payment or distribution shall be made on the entire Claim (even any undisputed portion) until the Disputed Claim becomes Allowed (*id.* § 7.3). Accordingly, while the Plan contemplates payment to holders of Allowed General Unsecured Claims "on the Effective Date or as soon as reasonably practicable thereafter," the mechanics for Claims allowance under the Plan provide the Debtors significant flexibility to delay paying holders of General Unsecured Claims for months (and potentially years) after the Effective Date but does not provide for the payment of interest to compensate such holders for the delay in distribution. This structure renders the Plan unconfirmable and, indeed, violates the Court's PPI Decision, inasmuch as any delay in distribution after the Effective Date reduces the rate of interest from the Federal Judgment Rate, to which holders of General Unsecured Claims are entitled to receive in these Chapter 11 Cases pursuant thereto, to a lower rate of interest (and, if distribution delays are significant, radically lower).

Under Bankruptcy Code section 1124, "any alteration of [a creditor's] rights constitutes impairment even if the value of the rights is enhanced." *L & J Anaheim Assocs. v. Kawasaki Leasing Int'l, Inc. (In re L & J Anaheim Assocs.)*, 995 F.2d 940, 942 (9th Cir. 1993) (internal quotation marks and citation omitted). In the PPI Memorandum, this Court found that "[t]he Ninth Circuit [in *Cardelucci*] held that in chapter 11 cases involving solvent debtors, unsecured creditors are entitled to postpetition interest at the federal judgment rate." PPI Memorandum at 6. However, Bankruptcy Code section 726(a)(5), which both this Court in the PPI Memorandum and *Cardelucci* identified as the basis for setting the rate of postpetition interest on general unsecured claims at the Federal Judgment Rate, does not cut off accrual of postpetition interest on a plan's effective date; rather section 726(a)(5) contemplates payment of interest through distribution. Accordingly, the Plan, to the extent it continues to unimpair General Unsecured Claims, cannot

cut off the right to payment of interest accruing after the Petition Date, either at the Federal Judgment Rate or otherwise, on the Effective Date and must pay postpetition interest until the date of distribution.

The Ninth Circuit has recognized that in order to pay creditors who are not paid in full on a plan's effective date the present value of their claims, a plan must pay post-effective date interest until such claims are paid in full. *See Ambanc La Mesa Ltd. P'ship*, 115 F.3d at 654 ("[I]n order for Liberty to be paid the full value of its claim, the Plan must provide for payment of interest for the post-confirmation time-value of the amount of Liberty's unsecured claim."); *Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1214–15 (9th Cir. 1994) ("Everett and those in his class were entitled to one hundred cents on the dollar. But what does this mean when a class is paid off over time? Is it enough for the class to receive the nominal value of what is owed to it, even though the present value of the payment stream is less than the full amount of the debt? Clearly not. . . . In other words, such creditors must be paid interest for the post-confirmation time value of their money."). Although these cases apply Bankruptcy Code section 1129(b), it would be inconsistent with the Ninth Circuit's holding in *L & J Anaheim* (and the PPI Memorandum) to require post-effective date interest for impaired creditors under section 1129(b), but not require the same result under Bankruptcy Code section 1124.

Indeed, debtors *routinely* propose plans that ensure that creditors are compensated for any delay in distributions on their claims by way of post-effective date interest. *See*, *e.g.*, *In re Calpine Corp.*, Ch. 11 Case No. 05-60200 (BRL) (Bankr. S.D.N.Y.), Docket No. 7237 ¶¶ I.A.155; III.B.1– 7, 9, 11–13, 16–17 (paying interest on allowed claims through the "Interest Accrual Limitation Date," defined as "[t]he date on which the applicable Claim is satisfied in full"); *In re Dow Silicones Corp.*, Ch. 11 Case No. 95-20512 (DPH) (Bankr. E.D. Mich.), Docket No. 30115 (approving settlement agreement pursuant to which the parties agreed that "interest on any unsatisfied portion of an Allowed Class 4 Claim . . . that was due and owing on the Plan Effective Date accrues from the Plan Effective Date until the date distribution is actually made").

In the event holders of General Unsecured Claims are not paid the full amount of their Allowed Claims, plus appropriate postpetition interest, on the Effective Date, then any such

Case: 19-30088    Doc# 7288    Filed: 05/15/20    Entered: 05/15/20 15:22:03    Page 5 of 11

amount not paid must accrue post-Effective Date interest. By proposing a plan that allows the Debtors to delay payments on allowed claims plus appropriate postpetition interest, without compensating the claimant for the delay with post-Effective Date interest, the Plan Proponents are effectively seeking a forced interest-free loan from trade creditors for the Debtors to fulfill their obligations under the Plan. Indeed, the Trade Committee already raised this issue at the hearing for approval of the Disclosure Statement, prompting the Court to comment that "I don't know how I would not grant them at least the post-effective date interest as a matter of the right result." Mar. 10, 2020 Hr'g Tr. at 31:2–6. Notwithstanding the Court's guidance, binding case law (in the form of Ninth Circuit opinions and the PPI Memorandum), and numerous precedent plans in solvent debtor cases that provide for interest accrual until distributions are made, the Plan Proponents have inexplicably failed to modify the Plan to address this issue. To the extent the Plan does not provide for continued accrual of interest on any amount required to be paid to holders of General Unsecured Claims that is not paid on the Effective Date, the Plan cannot be confirmed.

**II.     The Plan Must Pay Postpetition Interest on Any Cure Amounts Consistent with State Law**

The Plan provides that "[a]ny monetary defaults under an assumed or assumed and assigned executory contract or unexpired lease, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount, as reflected in the applicable cure notice, in Cash on the Effective Date." Plan § 8.2(a). Although the Plan defines "Cure Amount" as "the payment of Cash or the distribution of other property . . . as necessary to (a) cure a monetary default, as required by section 365(a) of the Bankruptcy Code by the Debtors in accordance with the terms of an executory contract or unexpired lease of the Debtors," (*id.* § 1.40),[4] neither the Plan, the applicable cure notice, nor the *Schedule of Executory Contracts and Unexpired Leases to be Assumed Pursuant to the Plan and Proposed Cure Amounts*, attached as <u>Exhibit B</u> to the Plan Supplement filed on May 1, 2020 [D.I. 7037] (the "<u>Assumed Contracts Schedule</u>"), discloses how the Plan Proponents arrived at the proposed Cure Amounts. In fact, the Assumed Contracts

---

[4]     The Plan's reference to section 365(a), rather than section 365(b), appears to be in error. Section 365(b), not section 365(a), addresses the requirements for curing a monetary default.

Schedule provides that the Cure Amounts listed therein "are exclusive of any post-petition interest to be paid on account of such amounts pursuant to the Plan." Assumed Contracts Schedule at 1 n.1. Furthermore, the Plan is silent as to the rate of postpetition interest that is to be paid with respect to any Cure Amounts. To the extent postpetition interest on account of Cure Amounts is paid at the Federal Judgment Rate, rather than the rates prescribed by applicable nonbankruptcy law, the Plan violates Bankruptcy Code sections 1123(d) and 365(b)(1), and should not be confirmed.

Bankruptcy Code section 1123(d) provides that "[n]otwithstanding subsection (a) of this section and sections 506(b), 1129(a)(7), and 1129(b) of this title, ***if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law***." (Emphasis added). The Ninth Circuit has expressly held that, for purposes of determining the appropriate interest rate to cure a default under section 1123(d), courts look to the contract and state law. *Pacifica L 51 LLC v. New Invs. Inc. (In re New Invs., Inc.)*, 840 F.3d 1137, 1141 (9th Cir. 2016) ("By its terms, [section] 1123(d) tells us to look to the promissory note and Washington law to determine what amount New Investments must pay to cure its default."). Multiple courts, in turn, have recognized in confirmation orders that section 1123(d) applies to any cure of a default in connection with assumption of an executory contract under a chapter 11 plan. *See*, *e.g.*, *In re Cano Petroleum, Inc.*, 2012 WL 2931107, *7 (Bankr. N.D. Tex. July 18, 2012) (confirming plan and finding that the satisfaction of cure costs associated with contracts to be assumed was "in accordance with Bankruptcy Code § 1123(d)"); *In re Dallas Stars, L.P.*, 2011 WL 5829885, *8 (Bankr. D. Del. Nov. 18, 2011) (confirming plan and finding that cure of defaults with respect to each executory contract to be assumed "complies with section 1123(d) of the Bankruptcy Code"); *In re Texas Rangers Baseball Partners*, 2010 WL 4106713, *7 (Bankr. N.D. Tex. Oct. 12, 2010) (same).

Application of section 1123(d) and state law to the amount necessary to cure a default under an executory contract is consistent with Ninth Circuit precedent as it relates to section 365(b) outside of a chapter 11 plan. In determining the proper amount to cure a default under Bankruptcy Code section 365(b)(1), the Ninth Circuit Bankruptcy Appellate Panel has held that "[a]pplicable

7

state law governs the determination of how much is necessary under a lease to cure the default." *Lacey v. Westside Print Works, Inc. (In re Westside Print Works, Inc.)*, 180 B.R. 557, 560 (B.A.P. 9th Cir. 1995) (citing *255 Turnpike Assocs. v. J.W. Mays, Inc. (In re J.W. Mays, Inc.)*, 30 B.R. 769, 772 (Bankr. S.D.N.Y. 1983); *In re Eagle Bus Mfg., Inc.*, 148 B.R. 481, 483 (Bankr. S.D. Tex. 1992)).

Guided both by clear and binding Ninth Circuit case law and the unambiguous language of Bankruptcy Code section 1123(d), the amount necessary to cure defaults under an executory contract, including payment of interest on any unpaid amounts, is governed by the applicable contract or state law. Under California law, contract-based claims such as trade claims must be paid interest at the contract rate, or in the absence of a contract rate, at the statutory rate of 10%. *See* Cal. Civ. Code § 3289; *In re McKean*, 2012 WL 3074801, at *2 (Bankr. N.D. Cal. July 30, 2012) ("In the absence of a rate set forth in an agreement of the parties, the Court will apply the California state statutory rate of ten percent (10%) per annum to the unpaid debts, as set forth in Cal. Civ. Code § 3289, to the entire debt . . . ."). Accordingly, if the Plan contemplates payment of postpetition interest on account of Cure Amounts at the Federal Judgment Rate, the Plan is unconfirmable and must be modified to provide for payment of postpetition interest at the contract rate or in accordance with state law.[5] *See* 11 U.S.C. §§ 1129(a)(1)–(3), 1123(d).

### III. The Plan Improperly Provides for Payment of Cure Amounts to the Non-Debtor Counterparties of Assumed Executory Contracts Rather than the Assignee of the Applicable Cure Claim

A chapter 11 debtor may assume an executory contract subject to court approval only if, at the time of assumption, the debtor "cures, or provides adequate assurance that [it] will promptly cure," any default under the contract. 11 U.S.C. § 365(b)(1)(A). While the Plan contemplates the

---

[5] To the extent the Plan Proponents assert that the Ninth Circuit's decision in *Cardelucci* impacts this conclusion, this argument is refuted by the plain language of Bankruptcy Code section 1123(d) itself. The Ninth Circuit's decision in *Cardelucci* is focused on the application of the "legal rate" under Bankruptcy Code section 726(a)(5). *See Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1233 (9th Cir. 2002). Bankruptcy Code section 726(a)(5) only applies in a chapter 11 case as a result of the "best interests of creditors" test under section 1129(a)(7). *See In re Dow Corning Corp.*, 244 B.R. 678, 686 (Bankr. E.D. Mich. 1999) ("[Section] 726(a)(5) . . . applies exclusively to chapter 7 proceedings"); *see also* 11 U.S.C. § 103(b) ("Subsection I and II of chapter 7 of this title apply only in a case under such chapter."). Bankruptcy Code section 1123(d) expressly carves out section 1129(a)(7) from its application. As a result, the Ninth Circuit's decision in *Cardelucci* is inapposite in applying Bankruptcy Code section 1123(d).

payment of Cure Amounts, the Plan provides that "none of the Debtors, the Reorganized Debtors, or the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease, ***even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount***." Plan § 5.5 (emphasis added). This failure to "recognize or deal with" any party other than the non-Debtor contract counterparty notwithstanding a valid assignment of the claims arising from the contract directly conflicts with Bankruptcy Rule 3001(e) and case law recognizing an assignee's right to file and collect on a proof of claim that relates to a cure amount.

Under Bankruptcy Rule 3001(e), which governs transfers of claims, "the transferee is substituted for the transferor in the absence of a timely objection by the alleged transferor." Fed. R. Bankr. P. 3001(e) advisory committee's notes; *see also id.* (acknowledging that Bankruptcy Rule 3001(e) is intended "to limit the court's role [in claims transfers] to the adjudication of disputes regarding transfers of claims" between transferor and transferee); *In re UAL Corp.*, 635 F.3d 312, 317 n.2 (7th Cir. 2011) (same). The ability to assign a claim under Bankruptcy Rule 3001(e) includes the right to collect on any cure amount related to such assigned claim. *UAL Corp.*, 635 F.3d at 317-318 ("We hold that the [assignment] agreement's definition of 'claim' is broad enough to include the right to collect a cure amount arising from [the assignor's] original contracts. . . . we find no ambiguity in the terms of the . . . assignment agreement and conclude that the agreement enabled [the assignee], by way of its purchase of [the assignor's] claim in the United bankruptcy proceedings, to file for cure just as [the assignor] could have in the absence of the assignment."); *cf. In re Wireless Data, Inc.*, 547 F.3d 484, 495 (2d Cir. 2008) (holding that assignee's filing of "general unsecured claim" based on cure amount was untimely and finding that the claim "is a general unsecured claim in the literal sense, [but] plainly falls into the narrower, more specific category of a cure claim because it is a claim 'against the Debtor under [an] executory contract that arose prior to the commencement of the Chapter 11 case,' . . . and that the Debtor had in fact assumed").

Through the Plan, the Plan Proponents seek to undermine Bankruptcy Rule 3001(e) by avoiding their obligation to make distributions to actual holders of Allowed Claims that the

Debtors seek to satisfy as cure payments. In doing so, the Plan Proponents deprive assignees of the right to collect a Cure Amount on account of a purchased claim, as required under the Bankruptcy Rules. As drafted, the Plan's treatment of Cure Amounts with respect to claims that have been assigned by the contract counterparty renders the Plan unconfirmable. *See* 11 U.S.C. §§ 1129(a)(1)–(3). In order to be confirmable, the Plan must be modified to make clear that if any contract giving rise to General Unsecured Claims, including unsecured trade claims, is assumed, the applicable Cure Amounts will be made to the assignee of such claims.

### IV. The Plan Impermissibly Unimpairs Holders of General Unsecured Claims Without Paying Postpetition Interest Consistent with State Law

The Plan treats General Unsecured Claims as unimpaired and provides for payment of postpetition interest on such claims "at the Federal Judgment Rate"—here, 2.59%. Plan §§ 1.76, 4.4, 4.23. However, in order for General Unsecured Claims to be unimpaired under section 1124 of the Bankruptcy Code, postpetition interest must be paid either at the contract rate or, in the absence of a contract, at the statutory rate of 10%.[6] The same result is required under the "fair and equitable" test under Bankruptcy Code section 1129(b). The Plan limits postpetition interest to 2.59% for the sole purpose of providing a windfall to the Shareholder Proponents at the expense of trade creditors. This treatment renders the Plan unconfirmable.

In support of this objection, the Trade Committee incorporates the arguments set forth in the *Consolidated Opening Brief of the Official Committee of Unsecured Creditors and Other Creditor Groups and Representatives Regarding the Appropriate Postpetition Interest Rate Payable on Unsecured Claims in a Solvent Debtor Case* [D.I. 4634] and the related reply brief [D.I. 4855] and during oral argument on December 11, 2019, with respect to the appropriate rate of postpetition interest under the Plan. The Trade Committee does not intend to re-litigate this issue in light of the Court's PPI Decision. The Trade Committee raises this argument for procedural purposes solely to preserve the Trade Committee's right to appeal any order confirming the Plan as a final order on the postpetition interest issue.

---

[6] See 11 U.S.C. § 1124(1); *L & J Anaheim Assocs.*, 995 F.2d at 942; Cal. Civ. Code § 3289; *McKean*, 2012 WL 3074801, at *2.

## JOINDER AND RESERVATION OF RIGHTS

The Trade Committee reserves the right to amend or supplement this Objection, seek discovery with respect to this Objection, introduce evidence supporting this Objection at any hearing to consider same, and seek any alternative or incremental relief. The Trade Committee respectfully incorporates the arguments set forth in the Creditors Committee's objection to the Plan. The Trade Committee fully reserves all of its rights to make any objections to confirmation of the Plan at the hearing with respect thereto, whether or not referred to herein, and to join in any objection filed by any other party in interest.

## CONCLUSION

For the foregoing reasons and based on the authorities presented above, the Trade Committee requests that the Court deny entry of an order confirming the Plan, unless the Plan is modified to cure the deficiencies set forth above, and grant such other and further relief as the Court deems just and proper.

Dated: May 15, 2020          **GIBSON, DUNN & CRUTCHER LLP**

By: /s/ *Michael S. Neumeister*
David M. Feldman (*pro hac vice*)
Matthew K. Kelsey (*pro hac vice*)
Matthew D. McGill (*pro hac vice*)
Michael S. Neumeister
Michelle Choi

*Attorneys for the Ad Hoc Committee of Holders of Trade Claims*