Andrew I. Silfen (*pro hac vice*)
Beth M. Brownstein (*pro hac vice*)
**ARENT FOX LLP**
1301 Avenue of the Americas, 42nd Floor
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Email: andrew.silfen@arentfox.com
beth.brownstein@arentfox.com

Aram Ordubegian (SBN 185142)
**ARENT FOX LLP**
55 Second Street, 21st Floor
San Francisco, CA 94105
Telephone: (415) 757-5500
Facsimile: (415) 757-5501
Email: aram.ordubegian@arentfox.com

*Counsel for BOKF, NA, solely in its capacity as Indenture Trustee*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and –<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**LIMITED OBJECTION OF BOKF, NA AS INDENTURE TRUSTEE TO CONFIRMATION OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 16, 2020**<br><br>**Hearing**<br>Date: May 27, 2020<br>Time: 10:00 a.m. (PT)<br>Place: Courtroom 17<br>450 Golden Gate Ave, 16th Floor<br>San Francisco, CA 94102<br><br>**Objection Deadline**: May 15, 2020, at 4 p.m. (PT) |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................... 5

BACKGROUND ............................................................................................................ 8

    A.    Senior Notes Indentures ............................................................................ 8

    B.    Proposed Plan Treatment of Senior Notes ................................................ 9

    C.    Proposed Plan Treatment of Trustee Fees ............................................... 10

OBJECTION ................................................................................................................ 11

    I.    The Trustee Fees Are Administrative Expenses and Must Be Paid in Full to Satisfy the Requirements of Confirmation ............................................. 11

    II.    The Trustee Fees Are Direct Liabilities of the Utility that Must Be Satisfied in Full ...................................................................................... 13

        A.    The Senior Notes Trustee has Valid Claims for Trustee Fees Under Each Indenture ....................................................................................... 13

        B.    The Senior Notes Trustee's Direct Claim Should be Unimpaired and Satisfied in Full Under the Plan ....................................................... 15

    III.    The Trustee Fees Incurred Under the 2005 Indenture Must Be Paid in Full as a Condition of Reinstatement of Senior Notes Issued Under that Indenture ............................................................................................... 16

CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

In re 21st Century Oncology Holdings, Inc.,
    No. 17-22770 (Bankr. S.D.N.Y.) (Doc. 915, Exh. 1) ...............................................................13

In re Adams,
    No. 18-60051, 2020 WL 1873365 (9th Cir. Apr. 15, 2020) .....................................................13

In re Cenveo, Inc.,
    No. 18-22179 (Bankr. S.D.N.Y) (Doc. 685, Exh. A) ...............................................................13

In re Claire's Stores, Inc.,
    18-10584 (Bankr. D. Del) (Doc. 1040, Exh. A) ........................................................................13

Dell'Oca v. Bank of New York Tr. Co.,
    159 Cal. App. 4th 531 (2008) ...................................................................................................18

Finisar Corp. v. U.S. Bank Tr. Nat. Ass'n,
    391 F. App'x 657 (9th Cir. 2010) .............................................................................................15

In re Flight Transp. Corp. Securities Litigation,
    874 F.2d 576 (8th Cir. 1989) ....................................................................................................14

In re Monarch Capital Corp.,
    163 B.R. 899 (Bankr. D. Mass. 1994) ......................................................................................12

In re New Investments, Inc.,
    840 F.3d 1137 (9th Cir. 2016) ..................................................................................................17

In re Payless Cashways, Inc.,
    305 B.R. 303 (Bankr. W.D. Mo. 2004) ....................................................................................12

In re RB Furniture, Inc.,
    92 F.3d 1193 (9th Cir. 1996) (unpublished) ............................................................................12

In re Sierra Pacific Broadcasters,
    185 B.R. 575 (B.A.P. 9th Cir. 1995) ........................................................................................12

In re SNTL Corp.,
    380 B.R. 204 (9th Cir. BAP 2007) ...........................................................................................14

In re SNTL Corp.,
    571 F.3d 826 (9th Cir. 2009) ..............................................................................................13, 14

**Statutes**

11 U.S.C. § 502 .................................................................................................................................13

11 U.S.C. § 502(b) .............................................................................................................................14

11 U.S.C. § 503(b) ..........................................................................................................................5, 12

11 U.S.C. § 503(b)(1)(A) ...................................................................................................................12

11 U.S.C. § 507(a)(2) .........................................................................................................................12

11 U.S.C. § 1123(a)(5)(F) ....................................................................................................6, 8, 12, 16

11 U.S.C. § 1123(d) .......................................................................................................................7, 17

11 U.S.C. § 1124 ..................................................................................................................................9

11 U.S.C. § 1124(2) ................................................................................................................7, 17, 18

11 U.S.C. § 1124(2)(A) ......................................................................................................................17

11 U.S.C. § 1129(a)(7) .......................................................................................................................16

15 U.S.C. § 77bbb ..............................................................................................................................13

Cal Civ. Code § 1717 .........................................................................................................................14

Trust Indenture Act of 1939 ...............................................................................................................12

**Other Authorities**

5 Collier on Bankruptcy § 553.03[1][i] (15th ed.) .............................................................................13

BOKF, NA, in its capacity as successor indenture trustee (the "Senior Notes Trustee") under the Indentures dated as of (i) April 22, 2005 Supplementing, Amending and Restating the Indenture of Mortgage Dated March 11, 2004 (the "2005 Indenture"); (ii) November 29, 2017 (the "2017 Indenture"); and (iii) August 6, 2018, each as supplemented or amended (the "2018 Indenture" and collectively, the "Senior Notes Indentures"), pursuant to which Pacific Gas and Electric Company (the "Utility" or, together PG&E Corporation, the "Debtors") issued the senior notes (the "Senior Notes"), by and through its counsel, Arent Fox LLP, hereby objects on a limited basis to confirmation of the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* [Docket No. 6320] (the "Plan").[1] In support of its limited objection, the Senior Notes Trustee states as follows:

## PRELIMINARY STATEMENT

The Senior Notes Trustee generally supports confirmation of the Plan and applauds the Debtors' and key stakeholders' efforts in building consensus and enabling the Debtors to emerge from bankruptcy. The Plan represents a significant achievement in extraordinarily complex cases that affect parties well beyond typical stakeholders in chapter 11 proceedings. It has taken good faith negotiations among the Debtors and their stakeholders to reach this point. The Senior Notes Trustee has worked with the Debtors to resolve its issues with the Plan and has done so with the one exception raised in this Limited Objection in connection with the Senior Notes Trustee's direct claim for fees, expenses, costs, and other disbursements and indemnities incurred in performing its duties and obligations (the "Trustee Fees"). So long as the Plan is modified to comply with the Debtors' obligations under the Senior Notes Indentures to satisfy the Trustee Fees, the Senior Notes Trustee is prepared to fully support the Plan.

The Trustee Fees are a direct contractual claim of the Senior Notes Trustee against the Utility, separate from the Utility's obligation to noteholders, and an ongoing and administrative obligation of the Utility under each of the Senior Notes Indentures and section 503(b) of the Bankruptcy Code. And yet despite the Debtors' solvency and agreement to pay certain of the six

---

[1] Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Disclosure Statement or in the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated January 31, 2020* [Docket No. 5590] (the "Plan"), as applicable.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Funded Debt Trustees' fee claims, their Plan fails to satisfy the full extent of the Debtors' obligations to the Senior Notes Trustee. In fact, the Senior Notes Trustee is not receiving any payment under the Plan on account of certain Trustee Fees comprising its claim.

Several independent bases require the Debtors to satisfy in full the Trustee Fees in order to confirm the Plan. Each independent basis individually requires payment by the Debtors. On the other hand, there is no basis for failing to make payment on account of these claims.

*First*, the Trustee Fees constitute administrative expense claims that must be paid in full. The Senior Notes Indentures expressly provide that such Trustee Fees incurred postpetition are administrative expenses. This makes sense and, indeed, such fees are regularly paid separately from holders' funded debt claims in chapter 11 cases. The Senior Notes Indentures remain in full force and effect postpetition and can only be cancelled or modified pursuant to a plan under § 1123(a)(5)(F) of the Bankruptcy Code. There is essentially no other provision in the Code that enables a debtor to modify or terminate an indenture. As a result, the Debtors have a continuing obligation to pay the Senior Notes Trustee for the Trustee Fees incurred in furtherance of, and in accordance with, its obligations, duties and responsibilities under the Senior Notes Indentures and applicable law.

*Second*, even if the Trustee Fees are unsecured claims under the Senior Notes Indentures, applicable Ninth Circuit law requires they be satisfied. Without satisfaction in full, the Senior Notes Trustee will be impaired under the Plan. Because the Trustee Fees are direct claims of the Senior Notes Trustee against the Utility, the Debtors cannot shift liability to the noteholders without the Senior Notes Trustee's consent. The Debtors' Plan, however, improperly does just that – it attempts to shift liability to certain noteholders by forcing the Senior Notes Trustee to assert its charging lien against distributions to holders. The charging lien though, is a backstop for the Trustee's benefit, not a tool for the Debtors to avoid contractual obligations. It appears the Debtors intend to rely on the Noteholder RSA's silence about the payment of Trustee Fees as justification for abdicating their direct contractual responsibilities to the Senior Notes Trustee. But the Senior Notes Trustee is not a signatory or party to the Noteholder RSA.[2] In any event,

---

[2] The Senior Notes Indentures only permit holders to issue two types of directives to the Senior Notes Trustee. See

the Debtors and the subset of noteholders who executed the Noteholder RSA cannot waive the Senior Notes Trustee's rights against the Debtors, nor can they modify, amend, or waive the payment provisions of the Senior Notes Indentures. In fact, the Noteholder RSA does not purport to do any of these things. It is simply silent, which cannot form a basis for the Debtors' failure to pay the Trustee Fees.[3]

*Third*, the Debtors must satisfy the Trustee Fees before they can reinstate the Senior Notes. The Plan reinstates all Senior Notes under the 2017 and 2018 Indenture and reinstates 15 of the 25 series of Senior Notes issued under the 2005 Indenture. Sections 1123(d) and 1124(2) of Bankruptcy Code, as well as binding Ninth Circuit precedent, require the Debtors to cure all defaults under the Senior Notes Indentures as a condition to reinstatement. The Debtors do not dispute they must satisfy all Trustee Fees incurred pursuant to the 2017 and 2018 Indentures in order to accomplish "reinstatement" within that term's meaning under the Plan, the Bankruptcy Code, and binding Ninth Circuit law. The dispute arises from the Debtors' contention that they are not required to satisfy a portion of the Trustee Fees incurred under the 2005 Indenture because they are only reinstating 15 of the 25 series of Senior Notes issued thereunder.

The Debtors' contention is incorrect and appears to be based on a misunderstanding of how the 2005 Indenture works. The 2005 Indenture provides that the Trustee Fees are incurred pursuant to the Indenture itself and are not broken down by individual series of Senior Notes. The Utility's obligations under the 2005 Indenture are incorporated into each Senior Note issued thereunder. As such, no Senior Note issued under the 2005 Indenture may be reinstated without curing the outstanding Trustee Fees incurred in connection with the 2005 Indenture. Regardless of whether the Trustee Fees are administrative expenses or unsecured claims, the Utility must pay them in full under the Plan in order to reinstate the Senior Notes under the 2005 Indenture.

---

2005 Indenture, § 9.12. Neither encompasses or authorizes holders to direct the Senior Notes Trustee to waive its direct contractual claim against the Utility for Trustee Fees.

[3] To the extent the Court determines the Senior Notes Indentures have been modified under the Plan such that the Debtors are relieved from direct payment of the Trustee Fees, the Senior Notes Trustee will seek to satisfy its claim for Trustee Fees by asserting its charging lien against distributions to holders.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

For each of these reasons, and although the Senior Notes Trustee otherwise supports confirmation, the Debtors cannot confirm the proposed Plan without fully satisfying the Senior Notes Trustee's claims. Accordingly, the Senior Notes Trustee objects to confirmation of the Plan to the extent it fails to provide for satisfaction in full of the Trustee Fees.

## BACKGROUND

### A. Senior Notes Indentures

The Utility issued 29 series of Senior Notes representing an aggregate principal amount as of the Petition Date of more than $17.5 billion, excluding interest, fees, and other charges (such as the Trustee Fees). The Senior Notes were issued pursuant to three Senior Notes Indentures. Each of the Senior Notes Indentures remains in full force and effect and can only be canceled or modified pursuant to the terms of the Senior Notes Indentures or under a plan pursuant to section 1123(a)(5)(F) of the Bankruptcy Code. The Senior Notes Trustee is obligated to perform its statutory and contractual responsibilities under each of the Senior Notes Indentures. In such capacity, the Senior Notes Trustee incurred and continues to incur Trustee Fees in furtherance of and in accordance with, its obligations, duties and responsibilities under the Senior Notes Indentures, California law, and New York law, as applicable.

Section 10.07 of each of the Senior Notes Indentures requires the Utility to reimburse the Senior Notes Trustee for the Trustee Fees, which consist of reasonable fees, costs, expenses, and other disbursements, including those incurred to its counsel, financial advisors and other agents and professionals, and to indemnify the Senior Notes Trustee against any loss, liability or expense. The Trustee Fees are the Utility's direct obligations to the Senior Notes Trustee, separate and distinct from the Utility's obligations to holders of the Senior Notes and survive termination of the Senior Notes Indentures. The Senior Notes Indentures also provide that Trustee Fees incurred following the Utility's bankruptcy filing are intended to constitute administrative expenses under the Bankruptcy Code. A true and correct copy of the 2005 Indenture is attached hereto as **Exhibit A.** True and correct copies of the 29 Supplemental Indentures issued under the 2005 Indenture are attached as **Exhibits A-1** through **A-29**.[4]

---

[4] The 2017 and 2018 Indentures have substantially the same language.

Arent Fox LLP
Attorneys At Law
San Francisco

In addition, each of the Senior Notes Indentures provides for (i) contractual priority of payment of the Trustee Fees on all distributions made on account of the Senior Notes, also known as a "charging lien," and (ii) procedures and mechanics for all distributions, which require that all distributions on account of the Senior Notes be made directly through the Senior Notes Trustee unless it consents otherwise in writing. See 2005 Indenture, §§ 9.03, 9.04, 9.05, 10.07. Put simply, the Senior Notes Indentures permit but do not require the Senior Notes Trustee to assert its charging lien against distributions to satisfy the Trustee Fees to the extent not paid directly by the Utility. That choice belongs to the Senior Notes Trustee—not the Debtors or noteholders.

### B. Proposed Plan Treatment of Senior Notes

The Plan classifies the Senior Note claims in three separate classes each receiving different treatment:

- Class 3B-I – "Utility Impaired Senior Note Claims" will receive payment of accrued pre- and post-petition interest plus New Utility Long-Term Notes in the amount of such holder's principal amount as of the Petition Date. Holders of Utility Impaired Senior Note Claims are **Impaired** and thus entitled to vote.[5]

- Class 3B-II – "Utility Reinstated Senior Note Claims" will be Reinstated in accordance with section 1124 of the Bankruptcy Code. Holders of Utility Reinstated Senior Note Claims are **Unimpaired** and thus are deemed to accept the Plan and are not entitled to vote.[6]

---

[5] Class 3B-I includes all Claims under the following Senior Notes and corresponding Senior Notes Indentures: (a) 3.50% Senior Notes due October 1, 2020, issued under the 2005 Indenture; (b) 4.25% Senior Notes due May 15, 2021, issued under the 2005 Indenture; (c) 3.25% Senior Notes due September 15, 2021, issued under the 2005 Indenture; (d) 2.45% Senior Notes due August 15, 2022, issued under the 2005 Indenture. Plan, §§ 1.246, 1.254.

[6] Class 3B-II includes all Claims under the following Senior Notes and corresponding Senior Notes Indentures: (e) 3.25% Senior Notes due June 15, 2023, issued under the 2005 Indenture; (f) 4.25% Senior Notes due August 1, 2023, issued under the 2018 Indenture; (g) 3.85% Senior Notes due November 15, 2023, issued under the 2005 Indenture; (h) 3.75% Senior Notes due February 15, 2024, issued under the 2005 Indenture; (i) 3.40% Senior Notes due August 15, 2024, issued under the 2005 Indenture; (j) 3.50% Senior Notes due June 15, 2025, issued under the 2005 Indenture; (k) 2.95% Senior Notes due March 1, 2026, issued under the 2005 Indenture; (l) 3.30% Senior Notes due March 15, 2027, issued under the 2005 Indenture; (m) 3.30% Senior Notes due December 1, 2027, issued under the 2017 Indenture; (n) 4.65% Senior Notes due August 1, 2028, issued under the 2018 Indenture; (t) 4.50% Senior Notes due December 15, 2041, issued under the 2005 Indenture; (u) 4.45% Senior Notes due April 15, 2042, issued under the 2005 Indenture; (v) 3.75% Senior Notes due August 15, 2042, issued under the 2005 Indenture; (w) 4.60% Senior Notes due June 15, 2043, issued under the 2005 Indenture; (y) 4.75% Senior Notes due February 15, 2044, issued under the 2005 Indenture; (z) 4.30% Senior Notes due March 15, 2045, issued under the 2005 Indenture; (aa) 4.25% Senior Notes due March 15, 2046, issued under the 2005 Indenture; (bb) 4.00% Senior Notes due December 1, 2046, issued under the 2005 Indenture; (cc) 3.95% Senior Notes due December 1, 2047, issued under the 2017

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 9 -

- Class 3B-III – "Utility Short-Term Senior Note Claims" will receive payment of accrued pre- and post-petition interest plus New Utility Short-Term Notes in the amount of such holder's principal amount as of the Petition Date. Holders of Utility Short-Term Senior Note Claims are **Impaired** and thus entitled to vote.[7]

Plan, §§ 4.18-4.20.

The Plan's classification and treatment of Senior Note claims is the result of the Restructuring Support Agreement between the Plan Proponents and certain holders of Senior Notes (the "Noteholder RSA"),[8] whereby certain Consenting Noteholders (as defined in the Noteholder RSA) agreed to such treatment. The Senior Notes Trustee did not participate in the Noteholder RSA negotiations nor is the Senior Notes Trustee a signatory or a party to the Noteholder RSA. The Noteholder RSA does not address the payment or non-payment of the Trustee Fees; nor does it contain any provision modifying, amending, or waiving the payment provisions of the Senior Notes Indentures (nor could it).

C. **Proposed Plan Treatment of Trustee Fees**

The Senior Notes Trustee requested that the Plan expressly provide for full payment of all Trustee Fees separate and apart from the underlying Senior Notes claims (whether as an administrative expense claim or otherwise), which is customary in chapter 11 plans restructuring significant funded debt. The Plan Proponents have declined to do so, instead taking the view that treatment of the Trustee Fees should vary depending on the treatment of the various Senior Notes claims. The Plan appears to accomplish this by spreading the treatment of the Trustee Fees (though not expressly) among three classes of Claims: Class 3B-1 (Utility Impaired Senior Note

---

Indenture. Plan, §§ 1.240, 1.246.

[7] Class 3B-III includes all Claims under the following Senior Notes and corresponding Senior Notes Indentures: (o) 6.05% Senior Notes due 2034, issued under the 2005 Indenture; (p) 5.80% Senior Notes due March 1, 2037, issued under the 2005 Indenture; (q) 6.35% Senior Notes due February 15, 2038, issued under the 2005 Indenture; (r) 6.25% Senior Notes due March 1, 2039, issued under the 2005 Indenture; (s) 5.40% Senior Notes due January 15, 2040, issued under the 2005 Indenture; (x) 5.125% Senior Notes due November 15, 2043, issued under the 2005 Indenture. Plan, §§ 1.229, 1.246.

[8] See *Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bank. P. 6004 and 9019 for Entry of an Order (I) Approving and Authorizing the Debtors to Enter Into Restructuring Support Agreement with Consenting Noteholders and Shareholder Proponents, and (II) Granting Related Relief* [Docket No. 5519]; *Order Pursuant to 11 U.S.C. Sections 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 (I) Approving and Authorizing the Debtors to Enter Into Restructuring Support Agreement With Consenting Noteholders and Shareholder Proponents, and (II) Granting Related Relief* [Docket No. 5637].

Claims), Class 3B-II (Utility Reinstated Senior Note Claims), and Class 3B-III (Utility Short-Term Senior Note Claims). Because Class 3B-II Claims are Reinstated, the Plan requires full satisfaction of Trustee Fees that are (in the Plan Proponents' view) associated with such claims, which includes all Trustee Fees arising under the 2017 and 2018 Indentures, as well as 15 of the 25 series of Senior Notes issued under the 2005 Indenture. The Plan Proponents do not dispute this requirement. In contrast, the Plan Proponents would not provide for any payment of Trustee Fees that the Plan purports to designate as Class 3B-I or 3B-III Claims, which consist of the remaining 10 series of Senior Notes issued under the 2005 Indenture. The Plan also states that the Senior Notes Trustee shall not be released from any duty or responsibility under or arising from the Utility Reinstated Senior Notes Documents. Plan § 6.13.

**OBJECTION**

**I.    The Trustee Fees Are Administrative Expenses and Must Be Paid in Full to Satisfy the Requirements of Confirmation.**

The Trustee Fees constitute administrative expenses of these estates. The Senior Notes Trustee is required to fulfill its statutory and contractual duties and obligations during these cases while the Senior Notes Indentures remain in full force and effect. The Senior Notes Trustee's performance of these necessary duties on behalf of the Debtors' largest creditor was entirely consistent with the purpose of administrative expense priority and the well-settled public policies underlying indentures, which are designed to equip trustees with the ability to protect public investors by assigning the expenses of compliance to the issuer and to have a single voice acting on behalf of all holders. This is not just a benefit to holders but to debtor-issuers as well. Thus, the Senior Notes Indentures expressly provide that fees incurred in connection with such services during a chapter 11 case of the Utility are administrative expenses.[9]

---

[9] Specifically, the Senior Notes Indentures provide that when the Senior Notes Trustee "incurs expenses or renders services in connection with an Event of Default specified in . . . Section 9.01(e), the expenses (including the reasonable charges and expenses of its counsel) and the compensation for the services are intended to constitute <u>expenses of administration</u> under any applicable federal or state bankruptcy, insolvency or other similar law." 2005 Indenture, § 10.07 (emphasis supplied). Section 9.01(e), in turn, refers to the filing of a voluntary bankruptcy case.

Section 503(b)(1)(A) of the Bankruptcy Code permits payment of administrative expenses for "the actual, necessary costs and expenses of preserving the estate." This includes payment for postpetition services, particularly where the debtor has agreed to treat such services as administrative expenses. See In re RB Furniture, Inc., 92 F.3d 1193 (9th Cir. 1996) (unpublished); In re Monarch Capital Corp., 163 B.R. 899, 907 (Bankr. D. Mass. 1994) ("all that [claimant] need establish to recover the value of its services is that it rendered postpetition services pursuant to its prepetition contract, without objection by the Trustee, and that the services had value to the estate"); In re Payless Cashways, Inc., 305 B.R. 303, 308 (Bankr. W.D. Mo. 2004) (service provider entitled to reasonable value of services rendered postpetition prior to contract rejection). The burden on the claimant is to show that the conduct involved a postpetition attempt to preserve the estate for the "benefit of its creditors." In re Sierra Pacific Broadcasters, 185 B.R. 575, 579 (B.A.P. 9th Cir. 1995). That standard is easily met here.

Throughout these cases, the Senior Notes Trustee has represented the interests of the holders of more than $17 billion of Senior Notes—*i.e.*, the largest creditor of the estate. But the Senior Notes Trustee has provided those services and taken such actions not only for the benefit of holders, but also for the purposes underlying the requirements of an indenture trustee. The Senior Notes Trustee incurred fees and expenses in performing these postpetition services pursuant to the Senior Notes Indentures, which remain operative unless and until the Debtors confirm a plan modifying the Senior Notes Indenture under section 1123(a)(5)(F) of the Bankruptcy Code. The Utility bears the cost of such services as postpetition administrative expenses pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code.

Notably, the Senior Notes Indentures' expense reimbursement provisions comport with the policy underpinnings of trust indenture law. Indenture trustees are charged with enforcing their constituent holders' rights and remedies under applicable law and the indenture. An indenture trustee is the collective voice of the holders. The Trust Indenture Act of 1939 (the "TIA") recognized "the national public interest and the interest of investors in notes, bonds, debentures, evidences of indebtedness and certificates of interest or participation therein which are offered to the public, are adversely affected . . . when the trustee does not have adequate right

Arent Fox LLP
Attorneys At Law
San Francisco

- 12 -

Case: 19-30088   Doc# 7290   Filed: 05/15/20   Entered: 05/15/20 15:25:08   Page 12 of 19

and power, or adequate duties and responsibilities, in connection with matters relating to the protection and enforcement of the rights of such investors . . . [and] when the trustee does not have resources commensurate with its responsibilities . . . ." 15 U.S.C. § 77bbb. The TIA therefore established certain duties and responsibilities for trustees, who may, in turn, hold the issuer responsible for fees and expenses incurred in discharging those duties and responsibilities.

The Senior Notes Indentures incorporate the TIA's duties and responsibilities. The Senior Notes Trustee performed these duties and responsibilities on behalf of holders of all Senior Notes throughout these chapter 11 cases and will continue to do so unless and until the Senior Notes Indentures are terminated and the Trustee is discharged. The Senior Notes Trustee was charged with exercising the holders' rights and remedies and served as the collective voice for all holders. Absent the Senior Notes Trustee, the Debtors would have had to deal with hundreds if not thousands of holders appearing or exercising remedies individually. It is common for chapter 11 plans restructuring significant funded debt to satisfy the fees and expenses of indenture trustees separate and apart from the underlying bond debt, whether by classifying and treating such claim as an administrative expense claim or simply as a payment under a confirmed plan. See, e.g., In re Claire's Stores, Inc., 18-10584 (Bankr. D. Del) (Doc. 1040, Exh. A, p. 44); In re Cenveo, Inc., No. 18-22179 (Bankr. S.D.N.Y) (Doc. 685, Exh. A, pp. 38-39); In re 21st Century Oncology Holdings, Inc., No. 17-22770 (Bankr. S.D.N.Y.) (Doc. 915, Exh. 1, p. 47). The same should be done here.

## II. The Trustee Fees Are Direct Liabilities of the Utility that Must Be Satisfied in Full.

### A. The Senior Notes Trustee has Valid Claims for Trustee Fees Under Each Indenture.

Even if the Trustee Fees are not treated as administrative expenses, it is settled law in the Ninth Circuit that a claim for postpetition attorneys' fees and other expenses, incurred pursuant to a prepetition contract, is allowable under § 502 of the Bankruptcy Code so long as it satisfied the underlying contractual requirements and applicable state law. See In re SNTL Corp., 571 F.3d 826 (9th Cir. 2009) ("SNTL II"). Accord In re Adams, No. 18-60051, 2020 WL 1873365 (9th Cir. Apr. 15, 2020). See generally 5 Collier on Bankruptcy § 553.03[1][i] (15th ed.) ("if the

creditor incurs the attorneys' fees postpetition in connection with exercising or protecting a prepetition claim that included a right to recover attorneys' fees, the fees will be prepetition in nature, constituting a contingent prepetition obligation that became fixed postpetition when the fees were incurred").

In SNTL II, the Ninth Circuit affirmed and adopted in its entirety the opinion of the Bankruptcy Appellate Panel ("the "BAP") in In re SNTL Corp., 380 B.R. 204 (9th Cir. BAP 2007) ("SNTL I"). In SNTL I, the estate representative objected to an unsecured creditor's claim for postpetition attorneys' fees and other expenses on various grounds, all of which amounted to a position that unsecured claims may not include a claim for postpetition expenses. The Bankruptcy Court agreed and sustained the objection. The BAP reversed, holding that "attorneys' fees arising out of a prepetition contract but incurred postpetition fall within the Bankruptcy Code's broad definition of claim." Id. at 221. In so holding, the BAP relied on caselaw standing for the proposition that an "indenture trustee had a 'right of payment' for attorneys' fees under prepetition contract, and thus had an allowable unsecured claim under section 502(b) even though such fees were unknown as of the petition date." Id. (In re Flight Transp. Corp. Securities Litigation, 874 F.2d 576 (8th Cir. 1989)).

Here, the Senior Notes Trustee's claim for Trustee Fees satisfies the prevailing Ninth Circuit standard for payment of postpetition fees and other expenses under a prepetition contract. The Senior Notes Indentures expressly authorize and require the Senior Notes Trustee to continue to undertake its obligations after and in connection with the Debtors' chapter 11 filings. The Senior Notes Indentures also require the Utility to reimburse the Senior Notes Trustee for its reasonable expenses, including attorneys' fees, incurred in connection with that undertaking.

Further, the Senior Notes Trustee's claims for such expenses is consistent with the underlying state law governing the Senior Notes Indentures. The 2005 Indenture, with which the Debtors are refusing to comply, is governed by California law. As recognized in SNTL I, "'applicable' California law permits recovery of contractual attorneys' fees only if they are reasonable. See CAL. CIV. CODE § 1717." SNTL I, 380 B.R. at 219 n. 17. The 2005 Indenture likewise limits the Utility's exposure to "reasonable" attorneys' fees and therefore complies with

California law. Moreover, the Ninth Circuit has upheld fee shifting provisions under trust indentures in particular as consistent with California law. See Finisar Corp. v. U.S. Bank Tr. Nat. Ass'n, 391 F. App'x 657, 658 (9th Cir. 2010). Accordingly, the Senior Notes Trustee has a valid claim for Trustee Fees under the Senior Notes Indentures.

### B. The Senior Notes Trustee's Direct Claim Should be Unimpaired and Satisfied in Full Under the Plan.

The Plan requires the payment of Trustee Fees in connection with its treatment of Class 3B-II (the "Utility Reinstated Notes Claims") but omits such payment in its treatment of Classes 3B-I and 3B-III (respectively, the "Utility Impaired Senior Notes Claims" and the "Utility Short-Term Senior Notes Claims"). Plan, §§ 4.18-4.20. Instead, the Plan proposes to satisfy Class 3B-I Claims with "Cash equal to their Utility Impaired Senior Note Claim Interest Amount and equal amounts of each issue of the New Utility Long-Term Notes in an aggregate amount equal to such holder's Utility Impaired Senior Note Claim Principal Amount"; and Class 3B-III Claims with "Cash equal to their Utility Short-Term Senior Note Claim Interest Amount and equal amounts of each issue of New Utility Short-Term Notes in an aggregate amount equal to such holder's Utility Short-Term Senior Note Claim Principal Amount." These amounts exclude the Trustee Fees, which means the Debtors are providing $0.00 on account of the Senior Notes Trustee's direct claims and requiring the Trustee to assert the alternative charging lien against distributions to noteholders, thereby diluting recoveries and creating a more cumbersome process. The charging lien, however, is between the Senior Notes Trustee and the noteholders for the benefit of the Trustee. It serves as a backstop in the event the Utility does not pay the Trustee—and the Utility has no basis for withholding such payment.

The Plan Proponents assert in the Disclosure Statement that they "disagree" with the Senior Notes Trustee's contention that it is entitled to direct payment of its Trustee Fees as part of its Class 3B-I and Class 3B-III claims.[10] This "disagreement" lacks justification. The Debtors cannot contend that they are somehow insulated from a direct obligation to satisfy the Trustee

---

[10] See Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization [Docket No. 6322], p. 23 n. 5.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Fees in full, including indemnity claims that may continue to accrue post-distribution, by virtue of the Noteholder RSA or the votes of Classes 3B-I and 3B-III. Fundamentally, other parties have no ability or right to waive or modify the Senior Notes Trustee's direct claim for Trustee Fees. The Senior Notes Trustee was neither involved in nor a signatory to the Noteholder RSA. As such, the Noteholder RSA could not and did not modify the Utility's contractual obligation to pay the Senior Notes Trustee's claim for postpetition Trustee Fees. Nor can the Senior Notes Indentures be altered postpetition except under a confirmed plan pursuant to section 1123(a)(5)(F) of the Bankruptcy Code. The Debtors' Plan must provide for the treatment of the direct claim for Trustee Fees and, in view of their purported solvency, that treatment must be *satisfaction in full*.

The Plan does not provide for payment of the Senior Notes Trustee's valid claims for Trustee Fees to the extent such claims appear to be classified as Class 3B-I or Class 3B-III Claims. Yet, the Plan does provide for payment in full of: (a) the Trustee Fees apparently placed in Class 3B-II; (b) the claims of certain other Funded Debt Trustees; and (c) all "General Unsecured Claims" (defined to exclude the Trustee Fees). There is no basis for treating Trustee Fees positioned in Class 3B-I and Class 3B-III any differently than these other classes of claims of a similar nature—particularly those in Class 3B-II that arise under the same contract (the 2005 Indenture) and are being paid in full.[11]

### III. The Trustee Fees Incurred Under the 2005 Indenture Must Be Paid in Full as a Condition of Reinstatement of Senior Notes Issued Under that Indenture.

The Debtors are not only obligated to satisfy the Senior Notes Trustee its Trustee Fees as a direct claim, the Debtors are also required pay all Trustee Fees incurred pursuant to the Senior

---

[11] If the Court finds that the Senior Notes Trustee's direct claims are properly classified in Class 3B-I and Class 3-B-III, then the Debtors are providing the Senior Notes Trustee **$0.00** on account of its direct claims for Trustee Fees. The Senior Notes Trustee has neither voted nor accepted the Plan, and the Debtors would be required to satisfy the "best interests" test under §1129(a)(7) of the Bankruptcy Code. The Debtors have not provided a liquidation analysis demonstrating compliance with the "best interests" test as to the Senior Notes Trustee and, moreover, the Debtors have repeatedly stated throughout these proceedings that they are capable of paying creditors in full. As such, the Senior Notes Trustee is confident that a chapter 7 liquidation would result in the payment of Trustee Fees significantly greater than **zero**, which is the treatment now proposed for Classes 3B-I and 3B-III.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Notes Indentures as a condition to reinstating the Senior Notes. The Plan proposes to reinstate all Senior Notes issued under 2017 and 2018 Indentures, as well as 15 of the 25 series of Senior Notes issued under the 2005 Indenture, rendering the holders of such Senior Notes unimpaired pursuant to section 1124(2) of the Bankruptcy Code. By extension, the Plan provides that the Senior Notes Trustee shall not be released from any duty or responsibility under or arising from the Utility Reinstated Senior Note Documents Plan § 6.13. In order to satisfy the requirements of section 1124(2), the Plan must, among other things, "**cure all defaults** that occurred both before and **after** the commencement of the case." *See* 11 U.S.C. § 1124(2)(A) (emphasis supplied).

The concept of "cure" is of primary importance here and its meaning is firmly established by the Bankruptcy Code and Ninth Circuit precedent. Simply put: "the amount necessary to [a] default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1123(d). In In re New Investments, Inc., 840 F.3d 1137, 1139 (9th Cir. 2016), the Ninth Circuit held definitively that the requirements of section 1123(d) are incorporated into section 1124(2) and, as such, a debtor may not reinstate a loan to its pre-default status without curing all late charges, attorneys' fees, and other pre- and post-default obligations arising under terms of the loan agreement, so long as those terms are consistent with state law.

Here, the Debtors do not dispute that they must pay all Trustee Fees arising under the 2017 and 2018 Indentures as a condition to reinstating the Senior Notes. Nor do the Debtors dispute they are liable for at least a portion of the Trustee Fees arising under the 2005 Indenture as a condition to reinstating 15 of the 25 series of Senior Notes issued thereunder. Rather, the Debtors seem to dispute some unknown and unquantified portion of the Trustee Fees they believe are attributable to the 10 series of Senior Notes that are not being reinstated. The Debtors misconceive the relationship between the Senior Notes Indentures and the Senior Notes they seek to reinstate.

Each of the Utility Reinstated Senior Notes issued pursuant to the 2005 Indenture provides that such Senior Notes are "Bonds within the meaning of the Indenture" and that such Indenture describes the "respective rights, limitations of rights, duties and immunities of the Company, the

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Trustee and the Holders of Bonds thereunder and . . . the terms and conditions upon Bonds are, and are to be, authenticated and delivered." See, e.g., Exhibit A-16, pp. A-2, A-6 (Form of 4.50% Senior Note Due December 15, 2041). Further, each of such Senior Notes provides that "acceptance of this Senior Note shall be deemed to constitute the consent and agreement by the Holder hereof to <u>all of the terms and provisions of the Indenture</u>." Id. The 2005 Indenture provides, in turn, that it shall govern the Bonds issued thereunder.

Pursuant to the express terms of the 2005 Indenture and the Senior Notes issued thereunder, these covenants of the Utility to pay Trustee Fees and indemnify the Senior Notes Trustee are incorporated into each of the Senior Notes. In other words, <u>each</u> Senior Note includes a covenant of the Utility to pay <u>all</u> Trustee Fees incurred by the Trustee in administering the Senior Notes Indenture.

There is no basis in the Senior Notes, Senior Notes Indentures, or otherwise, for the Debtors to divide Trustee Fees by Senior Note. Indeed, such a division is incompatible with the administration of the Senior Notes and Senior Notes Indentures and, moreover, makes little sense because expenses are in the first instance a unitary liability of the Utility under each Senior Notes Indenture. Indenture trustees have a duty to protect the rights of noteholders evenhandedly, including the right to be paid in accordance with the terms of the indenture. As a result, administration and enforcement occur on an indenture-by-indenture basis rather than a note-by-note basis. See Dell'Oca v. Bank of New York Tr. Co., 159 Cal. App. 4th 531, 537 (2008) ("indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement"). This benefits all parties to an indenture not only by ensuring egalitarian treatment but also by reducing expenses through administrative efficiency.

The upshot is that in theory, practice, fact, and as a matter of law, the Utility is responsible for the Trustee Fees and may not reap the benefits of section 1124(2) of the Bankruptcy Code without paying the Trustee Fees in full.

## CONCLUSION

For the reasons stated above, the Senior Notes Trustee is entitled to full satisfaction of the Trustee Fees whether as (i) administrative expense claims; (ii) a direct unsecured claim against the estates of the solvent Debtors; or (iii) a predicate to reinstatement. To the extent the Plan fails to provide for such payment, it may not be confirmed in its present form. Accordingly, the Senior Notes Trustee objects to the confirmation of the Debtors' Plan and requests that such confirmation be denied *without prejudice* unless and until the Debtors revise the Plan to provide for satisfaction in full of the Trustee Fees. Once the Plan is modified as provided herein, the Senior Notes Trustee will fully support confirmation.

Dated: May 15, 2020            **ARENT FOX LLP**

By: */s/ Aram Ordubegian*
Aram Ordubegian (SBN 185142)
Andrew I. Silfen (*pro hac vice*)
Beth M. Brownstein (*pro hac vice*)

*Counsel for BOKF, NA, solely in its capacity as Indenture Trustee*