**EXHIBIT 2 – Chart of TCC's Objections to Confirmation**

**Summary Chart of *TCC's Objection to Confirmation of Debtors' and Shareholder Proponents Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* (the "Objection")**

|   | Objection[1] | Proposed Resolution |
|---|---|---|
| 1 | Both the Settlement and the Plan contain an identical definition describing the claims the Debtors will assign the Trust. The Debtors' recently filed Schedule of Assigned Claims is inaccurate and does not comply with the Plan's own definition. | This Court should confirm that the RSA and Plan's definition of Assigned Rights and Causes of Action is controlling, and that the TCC's Schedule of Assigned Claims (Exhibit 1 to the Objection) provides proper notice to potential defendants of the scope of such Assigned Claims. |
| 2 | The Debtors recently filed a Schedule of Retained Claims and Causes of Action that appears to retain claims that fall within the definition of Assigned Claims under the Settlement and Plan. | This Court should confirm that the RSA and Plan's definition of Assigned Rights and Causes of Action is controlling, and that any claims that fall within this definition but are also listed in the Debtors' Schedule of Retained Claims and Causes of Action are Assigned Claims assigned to the Fire Victim Trust. |
| 3 | The Debtors are negotiating registration rights agreements with both the Fire Victims and the Equity Backstop Parties. A commercially reasonable agreement would apply equal registration rights and lock-up terms to both Fire Victims and the Equity Backstop Parties. | The Fire Victims should be entitled to a registration rights agreement on terms no less favorable than those given to the Equity Backstop Parties. Alternatively, this Court should retain jurisdiction to resolve this issue prior to the Effective Date. |
| 4 | The amount of the Reorganized Debtors' common stock to be transferred to the Fire Victim Trust is determined by a calculation involving the Debtors' "Normalized Estimated Net Income" ("**NNI**") for 2021. But because of various changes since the Settlement, the parties have not determined NNI for 2021, and therefore have not determined the amount of stock to be transferred to the Fire Victim Trust. | Confirmation of the Plan or passage of the Effective Date should be conditioned on the Debtors and the TCC agreeing on NNI for 2021, and the resulting amount of common stock for the Fire Victim Trust. Alternatively, if this issue cannot be resolved, the Court should send it to arbitration before Mr. Robert Meyer, and should reserve the jurisdiction to order a future true-up proceeding, by this Court or by arbitration, to ensure that there is a resolution of this issue. |
| 5 | The Debtors have amended the Plan's definition of "Subrogation Wildfire Claim" in a manner that could improperly shift billions of dollars of insured claims to the Fire Victim Trust. | This Court should approve the insurance setoff language in the Fire Victim Trust Agreement as filed or restore the definition of "Subrogation Wildfire Claim" that existed when the RSA was approved in order to prevent a shift of billions of dollars of subrogation claims into the Fire Victim Trust. Further, the Court should confirm that nothing in the Plan or RSA releases any insurer from any contractual or equitable obligations to its Fire Victim insureds. |

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Objection.