GREGORY M. SALVATO (SBN 126285)
  Gsalvato@salvatolawoffices.com
JOSEPH BOUFADEL (SBN 267312)
  Jboufadel@salvatolawoffices.com
SALVATO LAW OFFICES
777 South Figueroa Street, Suite 2800
Los Angeles, California 90017-5826
Telephone:    (213) 484-8400
Facsimile:    (213) 401-2411

THE LAW OFFICE OF JOSEPH WEST
Joseph A. West, State Bar No. 218847
  westjoseph@earthlink.net
575 E. Locust Ave., Suite 120
Fresno, CA 93720
Tel.: (310) 478-0890
Fax: (310) 478-5010

Attorneys for certain wildfire victims from Camp Fire

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>And<br><br>PACIFIC GAS & ELECTRIC COMPANY,<br><br>Debtors.<br><br>___ Affects PG&E Corporation<br><br>___ Affects Pacific Gas and Electric Company<br><br> X  Affects both Debtors<br><br><br><br>*All papers shall be filed in the Lead Case No. 19-30088-DM* | Case No. 19-30088-DM<br><br>Chapter 11 (Jointly Administered)<br><br>**Objection to Plan of Reorganization dated March 16, 2020 on behalf of certain victims of the Camp Fire; Declaration of Joseph A. West, Esq.**<br><br>Hearing Scheduled:<br>Date:     May 27, 2020<br>Time:    10:00 a.m.<br>Place:    U.S. Bankruptcy Court<br>          Courtroom 17, 16th Floor<br><br>          San Francisco, CA 94102 |

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE, TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Certain fire victim claimants of the Camp Fire ("Camp Fire Claimants") hereby file this Objection to the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020* [Dkt. No. 7037] (the "Plan") and respectfully state as follows:

## I.
## SUMMARY OF OBJECTION

The Camp Fire Claimants represented herein object to the provision of the Plan requiring the waiver of the "made whole" doctrine in favor of insurance carriers, as a condition to the Claimants' receipt of compensation. No option – other than to forego a distribution – is available to those claimants and no additional compensation is paid for the required release. The Plan provision thus constitutes a mandatory release of third parties that is expressly prohibited by the Bankruptcy Code Section 524(e) and by well-established case law in the Ninth Circuit. *See, for example In re Lowenschuss*, 67 F.3d 1394 (9th Cir. 1995).

The Plan requires all fire victims to enter into a third party "mutual made whole" release in order to receive any compensation from the Plan or the Trust established under the Plan. The made whole provision reflects the subrogation rights of the insurer, which are secondary to and subordinate to the rights of the fire victims. The required waiver in the Plan, however, enhances the rights of the more powerful insurers to the great detriment of the fire victims, their insureds. It is unfair to those most impacted by the fire disaster and would result in further harm to the hardest hit wildfire victims.

For the reasons below, the Court should deny confirmation of the Plan so long as it contains the mandatory release of the made whole doctrine as a condition of recovery for the Camp Fire Claimants' losses.

## II.

## BACKGROUND

The Camp Fire Claimants represented here are approximately 70 individuals and businesses who are victims of the Camp Fire of November 8, 2018 and who are claimants and creditors in this present action. Each has filed a Proof of Claim and has standing to object to the Plan through this joint filing.

Some of these wildfire victims are elderly individuals nearly 90 years old at the time of the fire, who have suffered loss of their homes, fled for their lives on foot or car for hours in panic. They had to choose between death or soiling themselves and remain in that condition to stay alive for hours or days. They lost their homes, possessions, way of life and community -- all of which will never be fully restored. Many of these victims had property insurance. PG&E has accepted liability for causing the Camp Fire. The Plan, as presently constituted, because of the waiver provisions, is a further victimization of these hardest hit wildfire victims.

The Plan does not treat all parties fairly. In particular and of the most concern to these wildfire victims is the manner in which the interests of the victims are given less weight than the interests of their more powerful insurers. The insurers' rights are in subrogation to the rights of the insureds. Yet this Plan reverses those rights.

The Plan's requirement that all victims enter into a third party mutual "made whole" release in order to receive any compensation is wonderful for the insurer. But it is terrible for the insured. The victims should not be required to sign the release in order to obtain a recovery from the Trust. Furthermore, it is unlawful and it amounts to further victimization of the insureds who now live in fear that they will be dropped by their carriers, will be unable to get insurance, will be unable to afford the higher premiums in the future or will be forced to accept inadequate insurance.

If ever there was a situation where a third-party release should not be enforceable by a Bankruptcy Court, this is it.

# III.
# LEGAL ARGUMENTS

**1. The Unfair Forced Release of Victims' Rights.**

The Plan conditions any distribution to the fire victim claimants on their execution of the "Mutual Made Whole Release," which contains the following provision:

> *By accepting the Total Allocation Award, the Claimant hereby waives and releases their rights, known or unknown, to assert the Made Whole Doctrine against the Insurer. Claimant is not waiving or releasing any other claim, cause of action, defense, or remedy against Insurer. Also, by signing this agreement, the Claimant is not agreeing as a factual matter that the Claimant has been fully compensated for each and every category of their damages under California law.*

*See* Plan Supplement Documents, Exhibit 5 to *PG&E Fire Victim Trust Agreement* [ECF Dkt. No. 7037, at p. 1928].

First, requiring the claimants to waive their rights or forego any recovery is no choice at all. There is nothing voluntary or consensual about it. The Claimants have filed their proofs of claim and cannot pursue any recovery against PG&E outside of the bankruptcy proceeding. By participating in the claim adjudication process, the fire victim claimants have no other recourse for recovery.

Second, the release essentially changes the priority of distribution and elevates the insurer's *derivative, subrogation claim* above the primary Claimant's rights to recovery. In fact, the insurers are likely to recover a higher percentage of their claims than the fire victims' claims will recover. The elevation of subrogation rights modifies the subrogation provisions (and protections) of Bankruptcy Code Section 509(c).

The Mutual Made Whole Release anticipates that the Trustee will advise the claimant of the "Total Allocation Award" available to the claimant. Upon the determination of this amount and review by the claimant, the claimant MUST execute a mutual release between them and their insurer releasing their insured from any claims to subrogation amounts received by the insurers under the plan even if the insurer and insured have any ongoing disputes, or, in other

words, even if the insureds have not yet been made whole.  This is manifestly unjust. Furthermore, the release is illusory in that the insurers, who by the way are getting higher compensation for their claims than the insureds, are giving absolutely nothing in exchange for the release, while the insureds are forced to give up much to the insurers.

The insurer agrees in paragraph 3 page three of the Mutual Made Whole Release that it will "release and waive any right to make a claim for any amount paid to claimant pursuant to the Fire Victim Trust or assert as a defense, offset or reduction the money paid to the Claimant from the Fire Victim Trust, which belongs solely to the Claimant." This is giving absolutely nothing to the Claimant.

The insurers have already given up any right to any claim it may have to money recovered by the Claimants under the Plan by entering into a settlement agreement with PG&E for its subrogation claims.  Therefore, the insurers are giving absolutely NOTHING to the insureds in exchange for the release.

Furthermore, to add insult to injury the insurer is expressly NOT releasing the insureds for any other claims the insurer may have against their insureds under the insurance contract. This is the best of all worlds for the insurer.  Incidentally, the insurer is not a victim here.  The insurer calculated the risk of fire before offering a contract to the insured. It reduced that risk into a quantifiable premium.  It gladly took the premium and entered into a contractual obligation to pay upon loss.  Under California law the insurer can only recover from the third party if it first makes the insured whole under its contractual obligation.  Its rights are subrogated to its insureds.  Furthermore, it is well settled that an insurer has a duty to treat its own interests at least equal to its insureds under the contract. *See, for example, Egan v. Mutual of Omaha*, 24 Cal.3rd 809, 819 (1989)

So, under this Plan, while the insured are forced and MUST release the insurer guaranteeing and protecting the plan payment of $11,000,000,000 to the insurers in order to get any payment at all, the insurer, need not first make their insureds whole and then submit their claims as subrogated to the insureds.  This mutual made whole release is a huge benefit to the insurers, written by them to protect their interests and overturn the rights of the insured

claimants. It is forced upon the claimants. It gives nothing in exchange to the claimants. It is manifestly unfair, overbroad harmful to insureds, outside of the bankruptcy and it is not necessary for the fair administration of the Plan.

**2. The Prohibition Against Third Party Releases**

A bankruptcy court lacks the power to confirm plans of reorganization which do not comply with applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). Pursuant to 11 U.S.C. § 524(a), a discharge under Chapter 11 releases the debtor from personal liability for any debts. Section 524 does not, however, provide for the release of *third parties* from liability; to the contrary, § 524(e) specifically states that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

The Ninth Circuit has held in *In re Lowenschuss*, 67 F.3d 1394 (9th Cir. 1995), that Section 524(e) of the Bankruptcy Code precludes bankruptcy courts from discharging the liabilities of non-debtors.[1] *See also American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.),* 885 F.2d 621, 626 (9th Cir.1989); *Underhill v. Royal,* 769 F.2d 1426, 1432 (9th Cir.1985); *Commercial Wholesalers, Inc. v. Investors Commercial Corp.,* 172 F.2d 800, 801 (9th Cir.1949); *see also Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.),* 171 B.R. 71, 77 (9th Cir. BAP 1994) (holding reorganization plans which proposed to release non-debtor guarantors violated § 524(e) and were therefore unconfirmable); *Seaport Automotive Warehouse, Inc. v. Rohnert Park Auto Parts, Inc. (In re Rohnert Park Auto Parts, Inc.),* 113 B.R. 610, 614–17 (9th Cir. BAP 1990) (finding that a reorganization plan provision which enjoined creditors from proceeding against co-debtors

---

[1] Indeed, this Court has stated that it "is bound by, and does not question, the legal principle set forth in *Lowenschuss,* in *American Hardwoods, Inc.,* 885 F.2d 621, 626 (9th Cir. 1989), and in *Underhill v. Royal,* 769 F.2d 1426, 1432 (9th Cir. 1985)," but has distinguished it where the plan under consideration does not discharge or release nondebtors from claims that belong to others, as opposed to claims held by the estate. *See, In re Pacific Gas and Electric Co.,* 304 B.R. 395 (N.D. Cal. 2004).

- 6 -

violated § 524(e)); *In re Keller,* 157 B.R. 680, 686–87 (Bankr.E.D.Wash.1993) (refusing to confirm a reorganization plan that compelled a creditor to release liens against a non-debtor's property).

The Ninth Circuit has specifically rejected the contention that the general equitable powers bestowed upon the Bankruptcy Court by virtue of Bankruptcy Code Section 105(a) would permit a court to deviate from the rule. As in *American Hardwoods,* the Court noted that "section 105 does not authorize relief inconsistent with more specific law," we concluded "the specific provisions of section 524 displace the court's equitable powers under section 105 to order the permanent relief [against a non-debtor] sought by [the debtor]." *Id.* at 625–26.

The Claimants are entitled to a recovery from the Debtors' estate to the maximum amount of available funds under the best interests of creditors' test. The Plan here, however, provides no additional compensation will be paid to the Claimants as a result of the Claimants' opting to release their rights under the made whole doctrine; no additional benefits are provided by the insurers. *See, In re Conseco, Inc.*, 301 B.R. 525, 527–28 (Bankr. N.D. Ill. 2003) (Approving third party release where voluntarily given for additional consideration, but holding that provisions in a plan providing for a release "violated the best interests of creditors test because they forced creditors to accept the release or to give up the distribution to which they were entitled" and "a creditor's mere acceptance of a distribution under the plan cannot be construed as a voluntary consent to the release.").

Accordingly, because the Plan's mandatory requirement for a waiver of the made whole doctrine is contrary to Section 524(e) of the Bankruptcy Code, and because it is not voluntary and consensual, it cannot be approved.

### IV.
### CONCLUSION

The Camp Fire Claimants thus object to the Plan's required "made whole" release provisions, as presently constituted and requests that confirmation be denied, or that these mandatory provisions be stricken.

- 7 -
Case: 19-30088    Doc# 7308    Filed: 05/15/20    Entered: 05/15/20 15:40:02    Page 7 of 9

Respectfully Submitted,

Dated: May 15, 2020

SALVATO LAW OFFICES

By: ___*/s/ Gregory M. Salvato*___
    Gregory M. Salvato

and

LAW OFFICE OF JOSEPH A. WEST

By: ___*Joseph A. West*___
    Joseph A. West,

Attorney for certain Wildfire Victims from the Camp Fire (Camp Fire Claimants)

# DECLARATION OF JOSEPH A. WEST, ESQ.

I, Joseph A. West, declare:

1. I am an attorney at law duly admitted to practice before this Court and the courts of the State of California. The following facts are known to me of my own personal knowledge and if called as a witness I could and would competently testify thereto.

## Representation of Camp Fire Victim Claimants

1. The undersigned represents approximately 70 individuals and businesses who are victims of the Camp Fire of November 8, 2018 and who are claimants and creditors in this proceeding (the "Camp Fire Claimants").

2. On September 17, 2019, I filed a Notice of Appearance on behalf of the International Church of the Foursquare Gospel [Dkt. No. 3915], which is one of the 70 persons or entities I represent.

3. Each of the Camp Fire Claimants has filed a Proof of Claim and has standing to object to the Plan through this joint filing.

## Delay in Receipt of Voting Materials and Plan

4. I have become aware that a number of my clients only recently received their copy of the Plan and voting material, some as late as today, May 15, 2020, and some have not received their packets.

5. On behalf of these Camp Fire Claimants, the undersigned respectfully objects to confirmation of the Plan as stated herein and reserves the right to join in or raise any further objection as allowed by law.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at Fresno, California on May 15, 2020.

*Joseph A. West*
_____
Joseph A. West, Esq.