Francis O. Scarpulla (SBN 41059)
Patrick B. Clayton (SBN 240191)
LAW OFFICES OF FRANCIS O. SCARPULLA
456 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 788-7210
Email: fos@scarpullalaw.com
       pbc@scarpullalaw.com

Attorneys for Creditor
GER HOSPITALITY, LLC

Jeremiah F. Hallisey (SBN 40001)
Karen J. Chedister (SBN 99743)
HALLISEY & JOHNSON, PC
465 California Street, Suite 405
San Francisco, CA 94104
Telephone: (415) 433-5300
Email: jfhallisey@gmail.com

Attorneys for William, Ming, and Fuguan
O'Brien, Kye Heinstein Michael Heinstein,
Karen Roberd, Anita Freeman, William N. Steel

[Additional Counsel appear on signature page]

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                    Debtors. | Bankruptcy Case<br><br>No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**CERTAIN FIRE VICTIMS' OBJECTION TO DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION**<br><br>Date: May 27, 2020<br>Time: 10:00 a.m. (PDT)<br>Place: United States Bankruptcy Court<br>        Courtroom 17, 16th Floor<br>        450 Golden Gate Avenue<br>        San Francisco, CA 94102<br>Judge: The Hon. Dennis Montali |

# I

# INTRODUCTION

Creditors GER Hospitality, LLC, Adolfo Veronese Family, Romano Bracco, Richard Carpeneti, Mark Baker, June Stewart, Joseph P. Russoniello, William O'Brien, Ming O'Brien, Fuguan O'Brien, Kye Heinstein Michael Heinstein, Karen Roberd, Anita Freeman, William N. Steel, Ken Born, Christine Born, Cathy Ference, William Ference, Allen Goldberg, Robert Johnson, Patricia Goodberg, Paul Goodberg, Terence Redmond, Melissa Redmond, Rita Godward, and Sonoma Court Shops, Inc. respectfully submit their objections to confirmation of the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020 (Dkt. No. 6320).

# II

# RELEVANT FACTUAL BACKGROUND

A. **Events Leading to Current Plan**

In October 2017, wildfires raged through the Northern California wine country. Eventually, all of the various separately-started fires, except the so-called Tubbs Fire, were found by Cal-Fire to be caused by PG&E. Many state-court lawsuits followed; they were eventually transferred by the JCCP to the Superior Court for the City and County of San Francisco and consolidated in that Court's complex litigation department.

In October, 2018, PG&E equipment caused another fire in Butte County – the so-called Camp Fire – which destroyed the town of Paradise and killed 86 individuals. Lawsuits by fire victims followed and became part of the proceedings in the California Judicial Council ("JCCP") cases.

On January 29, 2019, PG&E filed a Chapter 11 petition in this Bankruptcy Court.

Subsequent to the filing of that Petition, on February 5, 2019, the United States Trustee appointed an Official Committee of Tort Claimants ("TCC"), charged with the fiduciary responsibility of "maximizing recovery" for all tort claimants injured by the PG&E-caused wildfires. GER Hospitality, LLC, which had filed a class action complaint in state court, was appointed as a TCC Member.

Prior to filing the Chapter 11 proceedings, PG&E and a group of lawyers representing numerous individual plaintiffs (mainly Tubbs Fire victims) engaged in a mediation session with representatives of PG&E. After PG&E filed its Chapter 11 bankruptcy, those negotiations apparently continued with those same Tubbs-Fire victims' lawyers – now on the TCC – attempting to negotiate a resolution of the bankruptcy on behalf of all fire victims.

In or about April 2019, a group of PG&E's Bondholders, lead by Elliott Management Corporation ("Elliott") contacted certain TCC members and discussed a competing settlement proposal, which turned out to be significantly better for all fire victims than the PG&E proposal. The original Elliott proposal severely discounted the amount of money to be paid Tubbs Fire claimants as that fire was not determined by Cal Fire to have been caused by PG&E.

The Elliott settlement proposal was considered by the TCC, and caused PG&E to join with the large hedge-fund equity holders and attempt to meet the Elliott offer. Eventually, PG&E/Equity increased their offer to $13.5 billion – half in cash and half in stock – at mediations conducted in or about November 2019 to meet the offer by the Elliott Group.

Before the TCC and PG&E entered into a Restructuring Support Agreement ("RSA") which prevented the TCC from any further negotiations with Elliott – or any other group – Elliott offered $13.5 billion, all cash, to Fire Victims, including the Tubbs claims, plus an additional $150 million for the Ghost Ship fire victims. That offer was never adopted by the TCC, who signed with PG&E for less consideration, but to avoid a Tubbs preference trial[1] and an estimation trial.

Part of the agreement with PG&E was that the Tubbs preference cases would be settled for an undisclosed amount – that is still secret – which would become liquidated claims and paid in cash from the Fire Victims' Trust Fund and which locked in all Tubbs claims to be paid even though PG&E was never found to have caused that fire.

The TCC then signed the RSA with PG&E on or about December 6, 2019.

---

[1] The TCC requested that there be limited Tubbs preference plaintiffs who would leave the bankruptcy proceedings and try their cases in the San Francisco Superior Court.

Fire Victims are the only creditor group to be treated differently than all other unsecured creditors in this bankruptcy proceeding because they are required to take part of their consideration in stock while the others are receiving all cash.

When Governor Newsom rejected the PG&E proposal in mid-December – which was an automatic-out for the TCC (that could then take the Bondholders' all-cash offer) – instead of choosing that option and obtaining the maximum recovery for all fire victims (which would have vacated the Tubbs settlements), the TCC chose to eliminate that automatic-out and proceed with the lower PG&E settlement offer. Four TCC members refused to sign that RSA; three eventually resigned from the TCC.

When this happened, the Bondholders joined with PG&E/Equity and all competition for the fire victims' settlement amount ended.

**B.      The Plan**

On March 16, 2020, the Debtors and Shareholder Proponents (collectively, the "Plan Proponents") filed the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020 (Dkt. No. 6320) (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented, the "Plan").

On March 17, 2020, the Court entered the Order (1) Approving Proponents' Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization; (2) Approving Form and Manner of Notice of Hearing Proposed Disclosure Statement; (3) Establishing and Approving Plan Solicitation and Voting Procedures; (4) Approving Forms of Ballots, Solicitation Packages, and Related Notices; and (5) Granting Related Relief (Dkt. No. 6340) (the "Disclosure Statement Order").

On March 17, 2020, the Plan Proponents filed the solicitation version of the Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization (Dkt. No. 6353), as supplemented by the Supplement to Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization, approved on March 25, 2020 (Dkt. No. 6483).

In accordance with the Plan and Disclosure Statement, on May 1, 2020, the Plan Proponents filed the Notice of Filing of Plan Supplement in Connection with Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020 (Dkt. No. 7037) (the "Plan Supplement").

## III

## OBJECTIONS TO PLAN

**A.    The Nominal $13.5 Billion is Not Enough to Fully Compensate Fire Victims Because Damages Exceed $20 Billion.**

The Plan should not be confirmed because the total wildfire damages exceed at least $20 billion and the amount currently offered to the fire victims by PG&E is substantially less than the nominal $13.5 billion promised to the fire victims. Moreover, PG&E is now a convicted felon for causing the Camp Fire by acting with wanton disregard for the safety of others, thereby killing 86 individuals, destroying about 18,700 structures, upending and changing lives forever, and causing severe emotional distress in that wildfire. As a result of those convictions, those victims are entitled to punitive damages, which a jury is highly likely to award.

**1.    Real Property Damages Exceed $13.5 Billion**

The PG&E-caused Camp Fire burned approximately 18,700 residential structures with an average of 1,750 square feet each and for a total of about 32.725 million square feet, along with commercial buildings totaling about 15 million square feet. At today's average cost of $350/square foot to replace those destroyed residential structures, the total losses for residential real property alone are $11.455 billion. Add another $7.5 billion for commercial buildings (at a replacement cost of $500/square foot) and the total real property damages for the Camp Fire is about $18.95 billion. The Sonoma and Napa fires destroyed at least 26.4 million square feet of residential, as well as about 400,000 square feet of commercial buildings, which would cost about $18.5 billion to replace at today's building costs.

Thus, for just these fires alone, and for destruction of real property only, the total losses are about $37.45 billion, of which insurance payments according to the California Insurance Commissioner were about $13 billion, leaving $24.45 billion for PG&E to pay to the fire victims.

- 4 -

Additional amounts need to be added to this figure for business losses suffered by commercial entities, (estimated at about $6 billion), personal injury claims, wrongful death claims, and emotion distress damages, with punitive damages for the Camp Fire Victims. Additional damages were incurred for losses of timberland, injuries to vineyards, and damages to public structures. And there are other fires caused by PG&E in several other communities – *e.g.*, Butte (2015) and Mendocino (2017) – which add to the total damages. It is obvious that the total damages for which PG&E is liable to the fire victims greatly exceeds $13.5 billion. That is why a plan that pays fire victims what could turn out to be less than $13.5 billion should not be approved.

**B.     The Nominal $13.5 Billion is Not $13.5 Billion in Real Dollars**

The Plan should not be confirmed because the "nominal" $13.5 billion offered all fire victims, which is comprised of cash and equity in the reorganized PG&E, does not really provide for $13.5 billion of consideration.

The cash portion of the consideration is to be paid into a Fire Victims' Trust (the "Trust") in three installments – $5.4 billion on August 29, 2020; $650 million by January 15, 2021 and $700 million by January 15, 2022 – and, as a result, would have a present value less than $6.75 billion as the latter two payments bear no interest and have questionable security.[2] Meanwhile, the stock portion, which would be transferred on August 29, 2020 to the Trust, is unlikely to be worth the stated amount of $6.75 billion, if it ever was. In fact, recent estimates put the value of the equity for victims at less than $5 billion. See, Declaration of Eric Lowrey, CIRA, in Support of Objection By Certain Fire Victims to Debtors' Motion Pursuant to 11 U.S.C. Sections 105(A) and 502(C) to Establish Amount of Fire Victim Claims for All Purposes of the Chapter 11 Cases. (USDC/NDCA No. 19-05257 (JD), Dkt. No. 307, 4/3/2020.) Additionally, since the RSA was entered into, PG&E has unilaterally and materially amended its Plan of Reorganization capital structure by substantially increasing the amount of debt the company is to take on from $34.4

---

[2] The security hinges on a successful IRS ruling that net operating losses ("NOLs") will not be lost if the amount of stock transferred upon exit from bankruptcy creates a change in ownership, which usually places the NOL in jeopardy. If the IRS tax ruling is unfavorable, the tort victims will receive an unsecured promissory note.

billion around the time the RSA was entered into to $39.4 billion according to recent bankruptcy court filings at the beginning of May. This is significant because equity is what is left after debt is subtracted from total assets. Thus, as debt has risen, the value of residual equity, by definition, becomes riskier and problematic.

All of this will substantially lower the value of the common stock which fire victims are to receive. In addition, restrictions on payments of dividends for a period of three years will also substantially affect the value. To put these actions in context, PG&E (as of April 27, 2020) had an equity value of approximately $5.4 billion. Moreover, because of the recent dramatic downturn in the economy due to coronavirus, the value of any post-bankruptcy PG&E stock will be greatly reduced – again lowering the $13.5 billion which PG&E agreed to pay the fire victims. Recently, the California Public Utilities Commission granted a moratorium on payments by consumers due to the coronavirus economic problems, thereby reducing the stock value. Moreover, as most economists agree, U.S. G.D.P. is expected to decline by between 5% to 7% over the next two or three years. Because electric usage is almost 100% correlated to G.D.P., that would mean a decline in PG&E's electric revenue by the same 5% to 7%, which would impact the stock price.

Obviously, the stock in the reorganized PG&E currently is worth substantially less than the touted $6.75 billion. This stock will be liquidated in order to provide much-needed cash for the fire victims. However, the sale of this stock will be subject to restrictions on timing of the liquidation by PG&E alone, which restrictions have not been disclosed as yet. In fact, PG&E has failed to deliver the stock Registration Rights Agreement, that is an important part of the deal, and which will also impact the value of the equity to be transferred to the Trust. Moreover, because PG&E is not going to be able to pay dividends for 3 years, the market price of this common stock will be negatively affected because most institutional investors manage funds that are prohibited from acquiring a stock that pays no dividends. And because PG&E's current equity holders would immediately sell their stock before the fire victims could sell theirs, the share value will decline materially.

The now-worldwide onset of the Coronavirus has caused a massive economic crash, causing the U.S. economy to slide into what appears to be a deep recession, with all closely-watched averages down to bear-market levels. Additionally, there is an historic number of Americans filing for unemployment benefits – over 6 million during the last week of March 2020. In short, most economic experts assert that the U.S. in this deep economic recession for a long period of time. None of these factors existed when the Debtors proposed their half-cash/half-stock $13.5 billion settlement with the fire victims.

C.  **All Similarly-Situated Creditors Must be Treated Equally**

Under the provisions of 11 U.S.C. Sections 1129(a)(1), (a)(7), 1123(a)(4), and 1122, all similar claims of creditors must be treated equally or the plan cannot be confirmed. Here, the fire victims (both those individuals and entities that suffered damages from the 2015, 2017, and 2018 wildfires, as well as the public entities and subrogation insurance entities) are all similarly situated in that their losses were caused by fires attributable to the Debtors' equipment or operations. However, only the individual fire victims, who lost loved-ones, homes, personal property, businesses, and other damages, are at risk of receiving less than they were guaranteed under the proposed settlement agreement with the Debtors. Thee fire victims are required to accept half of the $135 billion in cash and half in stock in the new company exiting bankruptcy On the other hand the subrogation insurance companies are receiving an all-cash payment amounting to $11 billion. The current public entity settlements likewise are all cash. Only the individual fire victims are treated differently and unfairly. Thus, this Plan to finally fix the amount of the fire victims' claim should not be confirmed unless and until this gross disparity is remedied and the fire victims are guaranteed that they will actually receive the full value of the proposed estimated $13.5 billion as the Debtors promised.

Only the individual fire victims are treated differently and unfairly. Thus, the Plan that fixes the amount of the fire victims' claims unequally with the other unsecured creditors should not be granted unless and until this gross disparity is remedied and the fire victims are guaranteed that they will actually receive the full value of the proposed estimated $13.5 billion the Debtors promised.

**1. Refusal to permit class claims meant no one was speaking for all of the unrepresented fire victims who did not agree to this disposition.**

The refusal by the Bankruptcy Court to permit class claims resulted in thousands of fire victims being unrepresented in these proceedings and having them voices heard. They have been forced to accept this extremely flawed settlement with PG&E in violation of their constitutional due process rights, as is demonstrated by a letter recently to Judge Montali on April 29, 2020. (Dkt. No.7004, 4/29/2020.)

**2. TCC breached its fiduciary duty to all fire victims by agreeing to this deal.**

The Bylaws of the TCC required it to maximize recovery for all fire victims. When the TCC failed to accept the significantly better settlement offer from the Bondholders ($13.5 billion in cash for all victims) and, more recently from the Customer-Owned Utility Group ($13.5 billion in cash for the victims0, in favor of the PG&E/Equity/Noteholder half-cash, half-stock settlement, it breached its fiduciary duty to all fire victims in favor of only a few.

**D. Changes in the Plan Published to the Fire Victims were Not Fully Disclosed and Therefore was Invalid**

The agreed-upon value of $6.75 billion in PG&E stock does not have that value, so the fire victims are not getting a total of $13.5 billion as promised. Even the TCC admits that now. (Dkt. Nos. 6636, 6692.)

**E. Ballots Not Sent Out in Time**

There is no doubt that votes are being solicited in direct violation of 11 U.S.C. Sections 1125(B) and 1126(E) and Bankruptcy Rule 2019 for the purpose of driving an early vote prior to disclosures and revelations coming out regarding the ongoing negotiations surrounding the trust agreement, registration rights agreement, and other material matters for victim claimants. These problems are being compounded by the undisclosed litigation financing and other conflicts of interest that exist. Indeed, gerrymandering, numerosity issues, bad-faith solicitation, and many other issues are   Because of these problems, there is now a tainted and unjust vote, which the Court should not rely upon to confirm the Plan.

### F.  Plan Does Not Conform to AB 1054

On December 13, 2019, Governor Newsom informed the Debtors that the Amended Plan and related restructuring transactions provided therein do not, in his judgment, comply with AB 1054 because the Amended Plan does not result in a reorganized entity in a position to meet the requirement of providing safe, reliable, and affordable service to its customers.

### G.  Too Much Debt to Save Investment-Grade Securities and Comply with Infrastructure Repair

PG&E has unilaterally and materially amended its Plan of Reorganization capital structure by substantially increasing the amount of debt the company is to take on from $34.4 billion around the time the RSA was entered into to $39.4 billion according to recent bankruptcy court filings at the beginning of May.  This is significant because such a heavy debt load will severely hinder PG&E from performing the necessary infrastructure repairs needed to prevent future wildfires, a point PG&E recently stated to Judge William Alsop.

Obviously, the stock in the reorganized PG&E currently is worth substantially less than the touted $6.75 billion.  This stock will be liquidated in order to provide much-needed cash for the fire victims.  However, the sale of this stock will be subject to restrictions on timing of the liquidation by PG&E alone, which restrictions have not been disclosed as yet.  In fact, PG&E has failed to deliver the stock Registration Rights Agreement, that is an important part of the deal, and which will also impact the value of the equity to be transferred to the Trust.  Moreover, because PG&E is not going to be able to pay dividends for 3 years, the market price of this common stock will be negatively affected because most institutional investors manage funds that are prohibited from acquiring a stock that pays no dividends.  And because PG&E's current equity holders would immediately sell their stock before the fire victims could sell theirs, the share value will decline materially.

## IV

## CONCLUSION

The Plan is terrible for the fire victims who are the real injured parties in the catastrophic wildfires and who are the only unsecured creditors who are not receiving an all-cash payment for

their losses. In order for the Plan to be confirmed it needs to be amended so that the fire victims are treated the same as all other unsecured creditors. That means the subrogation group and Equity need to give up some cash and take some stock so that all are treated equally.

Dated: May 15, 2020
By: /s/ Francis O. Scarpulla
Francis O. Scarpulla

Francis O. Scarpulla (SBN 41059)
Patrick B. Clayton (SBN 240191)
LAW OFFICES OF FRANCIS O. SCARPULLA
456 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 788-7210
Email: fos@scarpullalaw.com
pbc@scarpullalaw.com

Attorneys for Creditor
GER HOSPITALITY, LLC

Jeremiah F. Hallisey (SBN 40001)
Karen J. Chedister (SBN 99743)
HALLISEY & JOHNSON, PC
465 California Street, Suite 405
San Francisco, CA 94104
Telephone: (415) 433-5300
Email: jfhallisey@gmail.com

Attorneys for William, Ming, and Fuguan O'Brien, Kye Heinstein Michael Heinstein, Karen Roberd, Anita Freeman, William N. Steel

QUENTIN L. KOPP (SBN 25070)
DANIEL S. MASON (SBN 54065)
THOMAS W. JACKSON (SBN 107608)
Furth Salem Mason & Li LLP
640 Third Street, 2nd Floor
Santa Rosa, CA 95404-4445
Telephone: (707) 244-9422
Email: quentinlkopp@gmail.com
dmason@fsmllaw.com
tjackson@fsmllaw.com

Attorneys for Ken Born, Christine Born, Cathy Ference, William Ference, Allen Goldberg, Robert Johnson, Patricia Goodberg, Paul Goodberg, Terence Redmond, Melissa Redmond, Rita Godward, and Sonoma Court Shops, Inc.

- 10 -
CERTAIN FIRE VICTIMS' OBJECTION TO DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN AND SUBSTANDARD 9.30088 (DM)

Case: 19-30088    Doc# 7316    Filed: 05/15/20    Entered: 05/15/20 15:49:38    Page 11 of 12

# CERTIFICATE OF SERVICE

I, Karen J. Chedister, declare as follows:

I am a citizen of the United States and over the age of eighteen (18) years and not a party to the within action. My business address is 456 Montgomery Street, 17th Floor, San Francisco, CA 94014.

On May 15, 2020, I served document(s) described as:

**CERTAIN FIRE VICTIMS' OBJECTION TO DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION**

on the interested parties in this action as follows:

[ ] BY MAIL: Service was accomplished by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, addressed as set forth above.

[X] BY E-MAIL/NEF: Service was accomplished through the Notice of Electronic Filing ("NEF") for all parties and counsel who are registered ECF Users and those identified below:

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. This declaration was executed on May 15, 2020 at San Francisco, California.

                                    /s/ Karen J. Chedister
                                    Karen J. Chedister