TROUTMAN SANDERS LLP
Jared D. Bissell (SBN 272687)
222 Central Park Ave
Suite 2000
Virginia Beach, VA 23462
Telephone:     757.687.7713
Facsimile:     757.687.7510

-and-

TROUTMAN SANDERS LLP
Harris B. Winsberg (admitted *pro hac vice*)
Matthew G. Roberts (admitted *pro hac vice*)
Bank of America Plaza
600 Peachtree Street NE
Suite 3000
Atlanta, GA  30308-2216
Telephone:     404.885.3000
Facsimile:     404.885.3900

*Attorneys for Osmose Utilities Services, Inc.*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:<br><br>PG&E Corporation<br><br>-and-<br><br>Pacific Gas and Electric Company,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 | Case No.  19-30088<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**OSMOSE UTILITIES SERVICES, INC.'S LIMITED OBJECTION TO (I) SCHEDULE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED PURSUANT TO THE PLAN AND PROPOSED CURE AMOUNTS; AND (II) DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 16, 2020**<br><br>Date:     May 27, 2020<br>Time:    10:00 a.m. (Pacific)<br>Place:    United States Bankruptcy Court<br>             Courtroom 17, 16th Floor<br>             San Francisco, CA 94102<br><br>[Ref. Docket Nos. 7037 & 6032] |

42285336

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1
BACKGROUND ................................................................................................................... 1
OBJECTION ......................................................................................................................... 4
I. THE CURE NOTICE AND PROCESS FAIL TO COMPLY WITH 11 U.S.C. § 365. ................................................................................................................ 4
    A. The Cure Notice Omits Certain Osmose Contracts and Erroneously Schedules the Cure Amount as $0.00. ................................................. 4
    B. The Debtors' General Cure Process Is Noncompliant with the Bankruptcy Code. ................................................................................................................ 5
II. THE PLAN VIOLATES 11 U.S.C. § 1129(A)(1). ................................................ 6
    A. The Plan Purports to Eliminate Setoff and Recoupment Rights. ................ 7
    B. Stripping Setoff and Recoupment Rights Impairs Osmose. ...................... 7
    C. The Discharge and Release Provisions Are Overbroad. ........................... 8
RESERVATION OF RIGHTS AND LIMITED JOINDER ........................................................... 9
CONCLUSION ..................................................................................................................... 9

TROUTMAN SANDERS LLP
BANK OF AMERICA PLAZA
600 PEACHTREE STREET NE
SUITE 3000
ATLANTA, GA 30308-2216

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan)*,
   270 B.R. 749 (B.A.P. 9th Cir. 2001)...................................................................................7

*Arriva Pharm., Inc. v. Lezdey (In re Arriva Pharm., Inc.)*,
   456 B.R. 419 (Bankr. N.D. Cal. 2011)..................................................................................4

*In re Club Assocs.*,
   107 B.R. 385 (Bankr. N.D. Ga. 1989)...................................................................................8

*In re De Laurentiis Entm't Grp., Inc.*,
   963 F.2d 1269 (9th Cir. 1992)...............................................................................................7

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*,
   209 F.3d 252 (3d Cir. 2000)..................................................................................................8

*Kvassay v. Kvassay (In re Kvassay)*,
   Nos. CC-18-1148-TaFKu, CC-18-1149-TaFKu, 2019 Bankr. LEXIS 373
   (B.A.P. 9th Cir. Feb. 11, 2019)........................................................................................7, 8

*In re L & J Anaheim Assocs.*,
   995 F.2d 940 (9th Cir. 1993).................................................................................................8

*In re Marlow Manor Downtown, LLC*,
   2014 Bankr. LEXIS 1202 (Bankr. D. Alaska March 24, 2014)............................................8

*In re Nw. Terr. Mint LLC*,
   No. 16-11767-CMA, 2017 Bankr. LEXIS 2491 (Bankr. W.D. Wash. Sep. 1,
   2017) .....................................................................................................................................5

*Resorts Int'l v. Lowenschuss (in Re Lowenschuss)*,
   67 F.3d 1394 (9th Cir. 1995).................................................................................................7

*In re Rexford Props. LLC*,
   558 B.R. 352 (Bankr. N.D. Cal. 2016)..................................................................................8

**Statutes**

11 U.S.C. § 365...................................................................................................................1, 4, 5

11 U.S.C. § 365(b)(1)(A) .......................................................................................................5, 6

11 U.S.C. § 553......................................................................................................................7, 8

11 U.S.C. § 1124........................................................................................................................1

11 U.S.C. § 1124(1) ......................................................................................................................8

11 U.S.C. § 1129(a)(1) ..................................................................................................................6

11 U.S.C. § 1141 ...........................................................................................................................7

Cal. Civ. Proc. Code § 431.70........................................................................................................8

**Other Authorities**

Fed. R. Bankr. P. 3001 ..................................................................................................................4

Osmose Utilities Service, Inc. ("Osmose"), by and through undersigned counsel, hereby submits this *Limited Objection* (the "Objection") to (I) the *Schedule of Executory Contracts and Unexpired Leases to Be Assumed Pursuant to the Plan and Proposed Cure Amounts* [Dkt. No. 7037; Exhibit B] (the "Cure Notice"), filed by the above-captioned debtors and debtors-in-possession (the "Debtors") on May 1, 2020, and (II) the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* [Dkt. No. 6320] (the "Plan").[1] In support of this Objection, Osmose relies on the *Declaration of Jose Villalba* (the "Villalba Declaration"), filed contemporaneously herewith, all other documents and matters reflected on the docket, and respectfully represents the following:

## PRELIMINARY STATEMENT

Osmose, as a counterparty to a number of contracts with the Debtors (as defined below, the Osmose Contracts), recognizes and applauds the Debtors' efforts to bring these Chapter 11 Cases to a conclusion. The Plan and Cure Notice, however, each suffer from deficiencies that must be remedied before the Osmose Contracts are assumed and/or the Plan is confirmed. Neither the Plan nor the Cure Notice (as applicable) complies with the preconditions to assumption in Section 365; and both the Plan and the Cure Notice, as they stand currently, impair Osmose within the meaning of Section 1124. For these reasons, and as set forth in greater detail below, the Plan and Cure Notice should be modified to the extent provided herein.

## BACKGROUND

**Osmose**

1. Osmose is a utilities services provider that, among other things, develops and sells a variety of products designed to protect, preserve, repair, and restore a customer's transmission and distribution infrastructure. Villalba Declaration at ¶ 6. Osmose also licenses "O-Calc Pro," a unique structural analysis software for utility poles that permits the user to perform comprehensive pole loading analyses for joint use, equipment or line upgrades, system hardening, and pole replacement. *Id.* at ¶ 7.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan or Cure Notice, as applicable.

2. Osmose performs certain utilities services for the Debtors under the following contracts (as follows, collectively, the "Osmose Contracts"):[2]

    (a)    Software and Maintenance Agreement (No. C310);

    (b)    Pole Test & Treat (No. C6201);

    (c)    Utility Pole Visual Assessment (No. C9112); and

    (d)    Pole Loading Assessment (No. C12683).

*Id.* at ¶ 8.

3. The terms of the Osmose Contracts are all unexpired, and Osmose currently provides services to the Debtors under the Osmose Contracts. *Id.* at ¶¶ 9, 10.

4. Prior to the Petition Date, the Debtors accrued an unpaid balance of $866,506.97 under the Osmose Contracts. *Id.* at ¶ 11. Thereafter, Osmose timely filed a proof of claim against the Debtors for the unpaid balance and later traded the claim. *See id.* at ¶ 12. *See also* [Dkt. No. 4647] (transfer of claim).

**The Debtors**

5. The Debtors provide natural gas and utility services to millions of customers in the State of California. *See* Declaration of Jason P. Wells in Support of First Day Motions and Related Relief [Dkt. No. 28] at 7.

6. On January 29, 2019, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors initiated these Chapter 11 Cases to address and resolve the Debtors' liabilities arising from the Fires in Northern California. *See id.* at 3.

**The Plan & Cure Notice**

7. On March 16, 2020, the Debtors filed the Plan, followed by the Plan Supplement (containing the Cure Notice) on May 1, 2020. *See* [Dkt. Nos. 6032, 7037].

8. The Plan and Plan Supplement together provide for, among other things, the assumption of substantially all of the Debtors' executory contracts and unexpired leases and the

---

[2] Due to confidentiality provisions, the Osmose Contracts are not attached to the Villalba Declaration.

assignment of certain Assigned Rights and Causes of Action to the Fire Victim Trust. *See generally* Plan; Plan Supplement.

9. The Plan explicitly preserves the Fire Victim Trust's litigation rights. *See* Plan at § 6.8(b) ("[T]he Fire Victim Trustee will succeed to all of the rights and powers of the Debtors and their estates with respect to all Assigned Rights and Causes of Action.") *See also id.* at § 10(f). But the Plan is silent with respect to the preservation of a potential defendant's rights, counterclaims, and defenses to any of the Assigned Rights and Causes of Action that the Fire Victim Trust may bring post-confirmation. *See generally id*.

10. With respect to the Debtors' executory contracts, the Plan and Cure Notice (as applicable) contain the following provisions:

(a) The Debtors will assume all executory contracts not otherwise scheduled for rejection, with certain exceptions not relevant here. *See* Plan at § 8.1(a); Cure Notice at ¶ 3.

(b) The listed "Cure Amounts" constitute the Debtors' "determination of the amounts required to cure any prepetition defaults" under the applicable executory contracts. Cure Notice at ¶ 6.

(c) The deadline to object to the Debtors' proposed Cure Amounts and/or the Cure Notice is May 15, 2020; however, the Debtors will not assume any contracts until the Effective Date, which could be any date on and after May 27, 2020. *See* Cure Notice at ¶ 7; Plan at § 8.1(a).

(d) The Debtors' assumption of the executory contracts "shall result in the full release and satisfaction of any Claims and Causes of Action against any Debtor or defaults by any Debtor arising under any assumed executory contract . . . at any time before the [Effective Date]." Plan at § 8.2(e); Cure Notice at ¶ 8. "Cause of Action" is defined to include, among other things, "the rights of setoff, counterclaim, and recoupment." Plan at § 1.21

11. As relevant here, the Debtors propose to assume two (2) of the Osmose Contracts, with $0.00 Cure Amounts for each: Nos. C310 and C6201. *See* Cure Notice at 1179.

TROUTMAN SANDERS LLP
BANK OF AMERICA PLAZA
600 PEACHTREE STREET NE
SUITE 3000
ATLANTA, GA 30308-2216

42285336
- 3 -

Case: 19-30088    Doc# 7320    Filed: 05/15/20    Entered: 05/15/20 15:55:36    Page 7 of 14

12. The Plan Supplement does not mention the remaining Osmose Contracts (Nos. C9112 and C12683) either on the Cure Notice or the Schedule of Executory Contracts and Unexpired Leases to be Rejected Pursuant to the Plan. *See generally* Plan Supplement.

# OBJECTION

**I. THE CURE NOTICE AND PROCESS FAIL TO COMPLY WITH 11 U.S.C. § 365.**

    **A. The Cure Notice Omits Certain Osmose Contracts and Erroneously Schedules the Cure Amount as $0.00.**

13. Osmose objects to the substance of the Cure Notice for at least two reasons. *First*, the Cure Notice schedules only two (2) of the four (4) Osmose Contracts: Nos. C310 and C6201. *See* Cure Notice at 1179. The remaining two Osmose Contracts, Nos. C9112 and C12683, are not scheduled on the Cure Notice – or anywhere else in the Plan Supplement. Although the Plan and Cure Notice provide for the assumption of all executory contracts not otherwise scheduled for rejection, Osmose respectfully submits that the Debtors must clarify (i) whether the two unscheduled Osmose Contracts are to be assumed and (ii) if so, the proposed Cure Amounts for each.

14. *Second*, the scheduled Cure Amount (of $0.00) is incorrect. The Debtors accrued a pre-petition balance of at least $866,506.97 (the "Defaulted Amount") under the Osmose Contracts, for which Osmose timely filed a proof of claim (the "GUC"). *See* Villalba Declaration at ¶ 12. Importantly, however, Osmose thereafter transferred and assigned the GUC. *See id.* at ¶ 13. Because of the trade, the Defaulted Amount (represented by the GUC) admittedly is not payable to **Osmose**. But the Defaulted Amount *is* a valid, existing, pre-petition debt arising under the Osmose Contracts. *See* FED. R. BANKR. P. 3001. Accordingly, Osmose objects to the Cure Amount solely to the extent the Debtors seek to expunge the GUC by setting the Cure Amount as $0.00. *Cf. Arriva Pharm., Inc. v. Lezdey (In re Arriva Pharm., Inc.)*, 456 B.R. 419, 424 (Bankr. N.D. Cal. 2011) ("[A] bankruptcy court order approving the assumption of an executory contract . . . is necessarily a finding that no uncured defaults exist."). The Cure Amount must be revised to account for the Defaulted Amount or otherwise preserve the GUC.

**B.     The Debtors' General Cure Process Is Noncompliant with the Bankruptcy Code.**

15.     Osmose further objects to the Cure Notice on procedural grounds. The Debtors' proposed cure process under the Plan and Cure Notice violates the express terms of Section 365. Section 365 prohibits a debtor's assumption of an executory contract under the terms of which the debtor has defaulted unless the debtor, among other things, cures (or provides adequate assurance that it will promptly cure) the default at the time of assumption. *See* 11 U.S.C. § 365(b)(1)(A). By its plain language, Section 365 thus requires the cure of any monetary default that has occurred prior to assumption of the executory contract – that is, both pre- and post-petition defaults. *See In re Nw. Terr. Mint LLC*, No. 16-11767-CMA, 2017 Bankr. LEXIS 2491, at *37 (Bankr. W.D. Wash. Sep. 1, 2017) (noting the necessity of asserting "any defaults prior to assumption").

16.     Here, the process set forth in the Cure Notice flouts Section 365's command to cure all pre-*assumption* monetary defaults, instead permitting the Debtors to assume executory contracts by curing only pre-*petition* defaults. The Cure Notice defines Cure Amounts as "the amounts required to cure any prepetition defaults under the Agreements" and establishes May 15, 2020 as the deadline by which counterparties must file and serve any objections to the scheduled Cure Amount. Cure Notice at ¶¶ 6, 7. But the Cure Notice goes on to state that the Debtors' assumption of any scheduled Agreement "shall result in the full release and satisfaction of any . . . defaults by any Debtor arising under any assumed executory contract . . . at any time **before the date** that the Debtors assume . . . such executory contract." *Id.* at ¶ 8 (emphasis added). *See also* Plan at § 8.2(e) (containing identical language). "The date that the Debtors [will] assume [the Osmose Agreements]," *id.*, is the Effective Date – which, definitionally, cannot occur prior to May 27, 2020 (the Confirmation Hearing). *See* Plan at §§ 1.59 (defining the "Effective Date" as "a Business Day on or after the Confirmation Date"; 8.1(a) ("As of, and subject to, the occurrence of the Effective Date . . . all executory contracts . . . shall be deemed assumed."). As a result, there is a concerning gap between the objection deadline and the date of assumption.

TROUTMAN SANDERS LLP
BANK OF AMERICA PLAZA
600 PEACHTREE STREET NE
SUITE 3000
ATLANTA, GA  30308-2216

17. The prejudicial effect of this post-objection/pre-assumption [3] limbo period is readily apparent. Osmose transacts with the Debtors currently – such that certain Osmose invoices are (or will be) payable after May 15, 2020. *See* Villalba Declaration at ¶ 10. Osmose cannot, on May 15, 2020, object to the scheduled Cure Amount on account of the Debtors' failure to pay a contractual liability that has not matured by that date or is not due within the course of dealings between the parties. By the same token, however, the May 15, 2020 deadline – coupled with the Debtors' assumption of the Osmose Contracts on the Effective Date and the resulting retroactive release – would leave Osmose without recourse if the Debtors failed to pay a contractual liability that matured on the next day (or anytime thereafter, up through the Effective Date). *Compare* Cure Notice at ¶ 7 *with* Plan at §§ 8.1(a); 8.2(e). This mismatch between the objection deadline and the date of assumption creates a host of perverse incentives, all of which harm Osmose. The Cure Notice is objectionable on that basis alone.

18. More to the point, however, the Bankruptcy Code neither envisions nor permits this result. Instead, assumption of the Osmose Contracts must be conditioned on the Debtors' cure of any defaults thereunder arising prior to the Effective Date. *See* 11 U.S.C. § 365(b)(1)(A). To that end, Osmose respectfully submits that the Court should either: (i) extend, through and including 45 days after the Effective Date, Osmose's deadline to object to the Debtors' proposed Cure Amount; or (ii) condition the Debtors' assumption of the Osmose Contracts on the parties' contractual obligations riding-through the Plan's discharge and release provisions.

## II. THE PLAN VIOLATES 11 U.S.C. § 1129(a)(1).

19. In addition to Osmose's objections to the Cure Notice, Osmose objects to confirmation of the Plan for failure to satisfy Section 1129(a)(1). Pursuant to Section 1129(a)(1), confirmation of a plan is prohibited unless "[t]he plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). The Court, in other words, "lacks the power to confirm plans of reorganization which do not comply with applicable provisions of the Bankruptcy Code."

---

[3] Read literally, the Plan and Cure Notice create a gap period between the Petition Date and Effective Date.

42285336

- 6 -

*Resorts Int'l v. Lowenschuss (in Re Lowenschuss)*, 67 F.3d 1394, 1401 (9th Cir. 1995). The Plan fails to comply with the Bankruptcy Code for at least the following three reasons.

### A. The Plan Purports to Eliminate Setoff and Recoupment Rights.

20. *First*, the Plan impermissibly seeks to eliminate Osmose's setoff and recoupment rights with respect to the Osmose Contracts. The Ninth Circuit has explicitly held that a creditor's right to setoff, as recognized by Section 553, "must prevail over [S]ection 1141." *In re De Laurentiis Entm't Grp., Inc.*, 963 F.2d 1269, 1278 (9th Cir. 1992). Put differently, setoff rights survive a debtor's discharge under Section 1141. *See id.* The same is true with respect to recoupment, albeit for different reasons. "[S]ince 'recoupment is neither a claim nor a debt, it is unaffected by either the automatic stay or the debtor's discharge.'" *Kvassay v. Kvassay (In re Kvassay)*, Nos. CC-18-1148-TaFKu, CC-18-1149-TaFKu, 2019 Bankr. LEXIS 373, at *20 (B.A.P. 9th Cir. Feb. 11, 2019) (quoting *Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan)*, 270 B.R. 749, 754 (B.A.P. 9th Cir. 2001)). Thus, a plan that purports to nullify setoff and/or recoupment rights violates the Bankruptcy Code by expanding the Section 1141 discharge beyond its settled boundaries. *Cf., e.g.*, *Lowenschuss*, 67 F.3d at 1402 (noting that "section 105 does not authorize relief inconsistent with more specific law") (internal citations and quotations omitted).

21. An improper expansion of the Debtors' discharge is precisely what the Plan seeks. The Plan provides that the Debtors' assumption of an executory contract releases, among other things, all "Causes of Action against any Debtor" with respect to the assumed contract. Plan at § 8.2(e). "Cause of Action" expressly includes "all rights of setoff, counterclaim or recoupment." Plan at § 1.21. Put together, it is evident that the Plan functionally expands the Debtors' discharge to cut off Osmose's setoff and recoupment rights under the Osmose Contracts. This is well beyond the permissible scope of the discharge under Section 1141. Accordingly, these provisions must be modified so that Osmose's setoff and recoupment rights are preserved.

### B. Stripping Setoff and Recoupment Rights Impairs Osmose.

22. *Second*, even if the Plan could eliminate Osmose's setoff and recoupment rights – which it cannot – then Osmose would be impaired under the Plan. A creditor is "impaired" for plan purposes unless the plan leaves intact the creditor's "legal, equitable, and contractual rights."

11 U.S.C. § 1124(1). "[U]nder this broad definition . . . '[a]ny alteration in a creditor's legal rights or privileges constitutes impairment.'" *In re L & J Anaheim Assocs.*, 995 F.2d 940, 942 (9th Cir. 1993) (quoting *In re Club Assocs.*, 107 B.R. 385, 401 (Bankr. N.D. Ga. 1989)).

23. Here, there is no question that the Plan (as written) alters Osmose's "legal rights [and] privileges." *Id.* (internal citations and quotations omitted). Indeed, the Plan purports to *eliminate* setoff and recoupment, which are legal and equitable rights to which Osmose is entitled under applicable law. *See, e.g.*, Cal. Civ. Proc. Code § 431.70 (recognizing the doctrine of offset); 11 U.S.C. § 553 (setoff under the Bankruptcy Code); *Kvassay*, 2019 Bankr. LEXIS 373, at *20 (recognizing recoupment). The Plan likewise would eliminate Osmose's rights to contribution or indemnity from the Debtors. This non-consensual alteration (elimination) of rights is the paradigm of impairment under a plan. *See In re Rexford Props. LLC*, 558 B.R. 352, 369 (Bankr. N.D. Cal. 2016) (holding that the plan's imposition of an extra-contractual condition impaired the contract counterparties because the "condition [wa]s an alteration of the[ir] rights"). *See also In re Marlow Manor Downtown, LLC*, 2014 Bankr. LEXIS 1202, *2 (Bankr. D. Alaska March 24, 2014) ("[T]he [plan] does make changes in [the creditor's] contract rights which *ipso facto* are an impairment."). Consequently, and to the extent the Plan somehow strips Osmose of its setoff and recoupment rights, Osmose is impaired under the Plan. The Plan, therefore, is unconfirmable for the additional reason that it misclassifies Osmose as unimpaired and must be modified to preserve Osmose's rights, including setoff, recoupment, contribution, and indemnity.

### C. The Discharge and Release Provisions Are Overbroad.

24. *Third*, and finally, the release and discharge provisions of the Plan are impermissibly overbroad to the extent they impair potential defendants' rights, counterclaims (including, without limitation, contribution and indemnity) and defenses to the Assigned Rights and Causes of Action that may be brought by the Fire Victim Trust. For the reasons set forth in § II.A, *supra*, a plan cannot release and discharge an opposing litigant's present or future defenses. *Accord, e.g.*, *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252, 261 (3d Cir. 2000) (holding that a defense is not a "claim" that can be extinguished).

25. Here, the Plan fails to address the preservation of a defendant's right to assert defenses and counterclaims to any post-confirmation litigation arising out of the Assigned Rights and Causes of Action. *See generally* Plan. But the Plan unequivocally preserves the Fire Victim Trust's ability to wield the full panoply of rights ordinarily afforded to litigants. *See, e.g.*, Plan at §§ 6.8(b) (providing that "the Fire Victim Trustee will succeed to all of the rights and powers of the Debtors and their estates with respect to all Assigned Rights and Causes of Action . . ."); 10.9(f) (carving out from the injunction the Fire Victim Trust's rights to "prosecute and settle any Assigned Rights and Causes of Action . . ."). This disparate treatment injects needless ambiguity into the scope of the Plan's discharge and releases with respect to the Assigned Rights and Causes of Action. Accordingly, the Plan cannot be confirmed until and unless potential defendants' rights, counterclaims, and defenses are expressly preserved.[4]

## RESERVATION OF RIGHTS AND LIMITED JOINDER

26. Osmose reserves the right to modify, supplement, and/or amend this Objection as further information becomes available, including with respect to any additional amounts that may become due and owing under the Osmose Contracts prior to the assumption thereof. Osmose further reserves all rights to assert any and all other claims that may be identified and asserted under the Osmose Contracts.

27. In addition, Osmose hereby reserves the right to adopt any other objections and/or responses filed in these Chapter 11 Cases. Without limiting the generality of the foregoing, Osmose specifically joins and adopts the arguments set forth in the *Limited Cure Objection of Calpine and Its Subsidiaries to the Debtors' Proposed Assumption of Executory Contracts and Unexpired Leases under the Debtors' and Shareholders' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* [Dkt. No. 7214].

## CONCLUSION

WHEREFORE, Osmose respectfully requests entry of an order: (i) modifying (A) the Cure Notice and process and (B) the Plan, each to the extent set forth herein; or (ii) in the

---

[4] In further support hereof, Osmose incorporates by reference the *Limited Objection of the Official Committee of Unsecured Creditors* [Dkt. No. 7300]. *See id.* at § I.

alternative, sustaining this Objection; and (iii) granting such other and further relief as is just and proper.

Dated: May 15, 2020

**TROUTMAN SANDERS LLP**

By: /s/ *Harris B. Winsberg*
Harris B. Winsberg (admitted *pro hac vice*)
Matthew G. Roberts (admitted *pro hac vice*)
TROUTMAN SANDERS LLP
600 Peachtree St. NE
Suite 3000
Atlanta, GA 30308
Telephone: 404.885.3000
Facsimile: 404.885.3900
harris.winsberg@troutman.com
matthew.roberts2@troutman.com

Jared D. Bissell (SBN 272687)
222 Central Park Ave
Suite 2000
Virginia Beach, VA 23462
Telephone: 757.687.7713
Facsimile: 757.687.7510
jared.bissell@troutman.com

*Attorneys for Osmose Utilities Services, Inc.*