1
2
3
4

**EXHIBIT A**

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

CRAVATH, SWAINE & MOORE LLP
Paul H. Zumbro (*pro hac vice*)
(pzumbro@cravath.com)
Kevin J. Orsini (*pro hac vice*)
(korsini@cravath.com)
Omid H. Nasab (*pro hac vice*)
(onasab@cravath.com)
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Ch. 11 Lead Case No. 19-30088 (DM) (Jointly Admin.)<br><br>**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 6004 AND 9019 FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS AND TCC TO ENTER INTO RESTRUCTURING SUPPORT AGREEMENT WITH THE TCC, CONSENTING FIRE CLAIMANT PROFESSIONALS, AND SHAREHOLDER PROPONENTS, AND (II) GRANTING RELATED RELIEF**<br><br>**(THE "TORT CLAIMANTS RSA MOTION")**<br><br>Date: December 17, 2019<br>Time: 10:00 a.m. (Pacific Time)<br>Place: U.S. Bankruptcy Court, Courtroom 17, 16th Fl.<br>San Francisco, CA 94102<br>**Objection Deadline: December 13, 2019, 4:00 p.m. (PT)** |

PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to sections 363(b) and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order (i) authorizing the Debtors and the Official Committee of Tort Claimants (the "**TCC**") to enter into and perform under that certain Restructuring Support Agreement, dated as of December 6, 2019 (the "**Tort Claimants RSA**"), among the Debtors, the TCC, the Consenting Fire Claimant Professionals (as defined below), and the Shareholder Proponents (as defined below) parties thereto, a copy of which is annexed hereto as **Exhibit A**, and (ii) granting related relief.

In support of the Motion, the Debtors submit the Declaration of Jason Wells (the "**Wells Declaration**"), filed contemporaneously herewith. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit B** (the "**Proposed Order**").

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

# TABLE OF CONTENTS

Page

I. Preliminary Statement ........................................................................................................8

II. Jurisdiction .......................................................................................................................10

III. Background .......................................................................................................................10

IV. Material Terms of the Tort Claimants RSA and Term Sheet ......................................11

V. Basis for Relief Requested ...............................................................................................16

    1. The Tort Claimants RSA and Term Sheet Represent a Substantial Achievement and Milestone in the Chapter 11 Cases, Are a Sound Exercise of the Debtors' Business Judgment, and Should be Approved Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code. ..........................................................................................16

    2. Entry into the Tort Claimants RSA is in the Best Interests of the Debtors' Estates and Should be Approved Pursuant to Bankruptcy Rule 9019. ...............................................20

    3. The Plan Support Terms of the Tort Claimants RSA are Reasonable and Customary ...23

    4. Conclusion ..............................................................................................................24

VI. Notice ...............................................................................................................................24

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*,
    156 B.R. 414 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1993) .............................. 21-22

*In re ASARCO, L.L.C.*,
    650 F.3d 593 (5th Cir. 2011) ..................................................................................17

*In re AWTR Liquidation Inc.*,
    548 B.R. 300 (Bankr. C.D. Cal. 2016)...................................................................17

*In re CHC Grp. Ltd.*,
    Case No. 16-31854 (BJH) (Bankr. N.D. Tex. Dec. 20, 2016)................................22

*City Sanitation v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*,
    656 F.3d 82 (1st Cir. 2011)....................................................................................21

*Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
    60 B.R. 612 (Bankr. S.D.N.Y. 1986) .....................................................................17

*In re Drexel Burnham Lambert Group*, *Inc.*,
    134 B.R. 499 (Bankr. S.D.N.Y. 1991) .............................................................20, 21

*Energy Future Holdings Corp. v. Del. Trust Co.*,
    648 F. App'x 277 (3d Cir. 2016) ...........................................................................21

*In re Exide Techs*,
    Case No. 13-11482 (KJC) (Bankr. D. Del. Feb. 4, 2015)................................18, 24

*In re Federal-Mogul Global Inc., T&N Limited*,
    Case No. 01-10578 (JFK) (Bankr. D. Del. Feb. 7, 2007) ......................................22

*In re Fiddler's Creek, LLC*,
    Case No. 10-3846 (CPM) (Bankr. M.D. Fla. Feb. 25, 2011) ................................22

*In re Indianapolis Downs, LLC.*,
    486 B.R. 286 (Bankr. D. Del. 2013) ......................................................................23

*In re Integrated Resources, Inc.*,
    147 B.R. 650 (Bankr. S.D.N.Y. 1992).....................................................................17

*In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*,
    2009 Bankr. LEXIS 2846 (Bankr. D.P.R. Mar. 31, 2009).....................................22

*In re Lionel Corp.*,
    722 F.2d 1063 (2d Cir. 1983) .................................................................................17

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*In re Manuel Mediavilla, Inc.*,
568 B.R. 551 (B.A.P. 1st Cir. 2017) ................................................23

*Martin v. Kane (In re A&C Properties)*,
784 F.2d 1377 (9th Cir. 1986) ..............................................20, 21

*In re Montgomery Ward Holding Corp.*,
242 B.R. 147 (D. Del. 1999) ..................................................17

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
478 F.3d 452 (2d Cir. 2007) ..................................................22

*Myers v. Martin (In re Martin)*,
91 F.3d 389 (3d Cir. 1996) ...................................................20

*In re Nautilus Holdings Ltd.*,
Case No. 14-22885 (RDD) (Bankr. S.D.N.Y. Oct. 3, 2014) ....................22

*Nellis v. Shugrue*,
165 B.R. 115 (S.D.N.Y. 1994) ...........................................20, 21

*In re Pacific Gas and Elec. Co.*,
304 B.R. 395 (Bankr. N. D. Cal. 2004) ...................................21

*In re Pacific Gas and Electric Company*,
Case No. 01-30923 (DM) (Bankr. N.D. Cal. Mar. 27, 2002) ........... 17-18, 21

*In re Planned Protective Servs., Inc.*,
130 B.R. 94 (Bankr. C.D. Cal. 1991) ...................................21

*Port O'Call Invest. Co. v. Blair (In re Blair)*,
538 F.2d 849 (9th Cir. 1976) ...........................................21

*Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414 (1968) ...................................................20, 21

*In re Residential Capital, LLC*,
2013 Bankr. LEXIS 2601 (Bankr. S.D.N.Y. Jun. 27, 2013)..................22

*In re SeraCare Life Sciences*,
Case No. 06-00510 LA11 (Bankr. S.D. Cal. Dec. 21, 2006).................24

*Smith v. Van Gorkom*,
488 A.2d 858 (Del. 1985) .............................................17

*In re Thompson*,
965 F.2d 1136 (1st Cir. 1992) .........................................21

*In re TK Holdings Inc.*,
Case No. 17-11375 (BLS) (Bankr. D. Del. Dec. 13, 2017) ................18

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Trans World Airlines, Inc. v. Texaco Inc. (In re Texaco Inc.)*,
    81 B.R. 813 (Bankr. S.D.N.Y. 1988) ........................................................................ 23

*In re Tronox Inc.*,
    Case No. 09-10156 (ALG) (Bankr. S.D.N.Y. Dec. 23, 2009) .................................. 18

*In re Walter*,
    83 B.R. 14 (B.A.P. 9th Cir. 1988) .......................................................................... 17

*In re WCI Cable, Inc.*,
    282 B.R. 457 (Bankr. D. Or. 2002) ......................................................................... 21

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*,
    839 F. 2d 610 (9th Cir. 1988) ........................................................................... 20, 21

**Statutes**

11 U.S.C. § 105(a) ...................................................................................... 2, 16, 17, 18, 25

11 U.S.C. § 363 ............................................................................... 2, 16, 17, 18, 22, 25

11 U.S.C. § 1107(a) ................................................................................................... 10

11 U.S.C. § 1108 ....................................................................................................... 10

28 U.S.C. §§ 157 ....................................................................................................... 10

28 U.S.C. § 1334 ....................................................................................................... 10

28 U.S.C. § 1408 ....................................................................................................... 10

28 U.S.C. § 1409 ....................................................................................................... 10

AB 1054 ........................................................................... 8, 9, 10, 11, 14, 15, 16

California Code of Civil Procedure § 36.5(f) ............................................................ 14

Internal Revenue Code Section 382 ......................................................................... 13

**Other Authorities**

B.L.R. 5011-1(a) ....................................................................................................... 10

Cal. Prac. Guide: Corps. (The Rutter Group 2015) Ch. 6–C ................................... 17

Fed. R. Bankr. P. 1015(b) ......................................................................................... 10

Fed. R. Bankr. P. 2002 .............................................................................................. 24

Fed. R. Bankr. P. 9019 ......................................................................... 2, 19, 20, 21, 22, 25

Fed. R. Bankr. P. 6004 ............................................................................................... 2

Case: 19-30088   Doc# 5038   Filed: 12/09/19   Entered: 12/09/19 16:54:03   Page 6 of
25
Case: 19-30088   Doc# 7322-1   Filed: 05/15/20   Entered: 05/15/20 15:58:31   Page 7
of 78

*Memorandum of Points and Authorities in Support of the Motion of the TCC for Relief from Automatic Stay to Permit State Court Jury Trial of 2017 Tubbs Wildfire Claims* ........................................................................................................................................8

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 ........................................................................................................................................10

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT[1]

The Debtors filed these Chapter 11 Cases with the goal of achieving a fair, equitable, and expeditious resolution of billions of dollars in liabilities arising from the 2017 and 2018 Northern California fires (including Tubbs) and the 2015 Butte Fire. Today, the Debtors are significantly closer to realizing this goal, having reached, with the assistance of the Court-appointed mediator, a third, fundamentally important settlement to compromise previously unresolved claims of the last key constituency in these Chapter 11 Cases—the individual fire claimants.

Pursuant to the Tort Claimants RSA among the Debtors, the TCC, the law firms representing individuals holding approximately 70% in number of prepetition fire claims filed against the Debtors (the "**Consenting Fire Claimant Professionals**," as defined in the Tort Claimants RSA), and certain funds and accounts managed by Abrams Capital Management, LP and Knighthead Capital Management, LLP (the "**Shareholder Proponents**"), the parties have resolved, among other things, the treatment and discharge of individual fire claims under the Debtors' chapter 11 plan in compliance with AB 1054. Pursuant to the Tort Claimants RSA, under the Debtors' chapter 11 plan, over $36 billion[2] in asserted prepetition fire liabilities will be resolved through the contribution of cash and stock with an aggregate value of $13.5 billion and assignment of certain rights and causes of action to a trust established for the benefit of the fire claimants. The settlement is embodied in the Tort Claimants RSA and term sheet annexed thereto as **Exhibit A** (the "**Term Sheet**"), and will be implemented pursuant to, and incorporated in, an amendment to the *Debtors' Joint Chapter 11 Plan of Reorganization*, dated November 4, 2019 [Docket No. 4564] (as further amended, modified, or supplemented in accordance with the terms of the Tort Claimants RSA and Term Sheet, the "**Amended Plan**"). The Debtors intend to file the Amended Plan on or prior to December 12, 2019. The Term Sheet summarizes the treatment

---

[1] Capitalized terms used but not herein defined in the preliminary statement shall have the meanings ascribed to them in the Tort Claimants RSA, the Term Sheet, or the Plan, as applicable.

[2] *See Memorandum of Points and Authorities in Support of the Motion of the TCC for Relief from Automatic Stay to Permit State Court Jury Trial of 2017 Tubbs Wildfire Claims*, at 4 [Docket No. 2843] (TCC alleges total insured and uninsured wildfire losses in excess $54 billion, of which $36 billion are alleged to be underinsured and uninsured claims).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

of prepetition fire claims that will be set forth in the Amended Plan. The Debtors and the Shareholder Proponents will be co-proponents of the Amended Plan.

The Tort Claimants RSA and Term Sheet are the product of extensive, good faith, arm's-length negotiations and mediation involving multiple parties spanning multiple weeks. Both the Tort Claimants RSA and Term Sheet reflect the heavily negotiated resolution of a number of critical, substantive issues among the Debtors, the TCC, the Consenting Fire Claimant Professionals, and the Shareholder Proponents. These include the following:

- The Tort Claimants RSA and Term Sheet fully resolve the chapter 11 plan's treatment of all prepetition fire claims[3] for consideration having a value of approximately $13.5 billion. This represents a settlement and resolution of the over $36 billion in such claims previously asserted by the TCC and its constituency.

- The Tort Claimants RSA eliminates any reason or basis to continue the protracted competing chapter 11 plan process. Under the Tort Claimants RSA, the TCC and the Consenting Fire Claimant Professionals will support the Amended Plan. The TCC will recommend holders of Fire Victim Claims vote to accept the Amended Plan, and the Consenting Fire Claimant Professionals will use all reasonable efforts to encourage their clients (holding approximately 70% of the prepetition fire claims) to support and vote in favor of the Amended Plan, thereby greatly facilitating the Debtors' ability to successfully and timely emerge from chapter 11 by the June 30, 2020 confirmation deadline established in AB 1054. Further, upon approval of the Tort Claimants RSA, the TCC will withdraw its support and cease to be a co-proponent of the *Joint Chapter 11 Plan of Reorganization of Official Committee of Tort Claimants and Ad Hoc Committee of Senior Unsecured Noteholders* (including any amended or modified version thereof, the "**Alternative Plan**"). As a result, four major constituencies (the TCC and individual fire claimants, the Subrogation Claimants, the Public Entities, and the Shareholder Proponents), which represent all the impaired classes in these cases, will be fully supportive of one plan—the Debtors' Amended Plan.

- The Tort Claimants RSA eliminates the substantial costs, risks, and uncertainties attendant to the estimation of the Fire Victim Claims and the Tubbs Cases.

- With all other classes of claims under the Debtors' Amended Plan being unimpaired, approval of the Tort Claimants RSA will expedite the

---

[3] This excludes the previously settled Subrogation Wildfire Claims and Public Entities Wildfire Claims, but includes federal and state claims asserted by the DOJ, FEMA, and certain California State agencies (including Cal OES and CAL FIRE).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

successful conclusion of the Chapter 11 Cases and distributions to holders of Fire Claims.

The importance of what has been achieved in the Tort Claimants RSA cannot be overstated. Having reached a settlement with the TCC and law firms representing an overwhelming number of the individual fire claimants, no real obstacles remain to a swift confirmation of the Amended Plan and a successful exit from these chapter 11 cases well within the June 30, 2020 deadline established under AB 1054. With this third and last critical milestone, and the Debtors' previously negotiated settlements with the holders of Public Entities Wildfire Claims and the Subrogation Wildfire Claims, the Debtors' Amended Plan has the full support and consensus of every necessary constituency to ensure the success of these cases, the benefits of the go-forward wildfire fund under AB 1054, and expeditious distributions to holders of Fire Claims.

For all these reasons and as demonstrated below, entry into the Tort Claimants RSA represents a sound exercise of the Debtors' business judgment and easily satisfies all the standards and requirements for approval under the Bankruptcy Code. Accordingly, the Tort Claimants RSA should be approved.

## II.    JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.    BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief* [Docket No. 263] (the "**Wells First Day Declaration**").

## IV. MATERIAL TERMS OF THE TORT CLAIMANTS RSA AND TERM SHEET

The treatment and satisfaction of the Fire Victim Claims provided in the Term Sheet will be effectuated pursuant to the Amended Plan and, of course, the Amended Plan is subject to confirmation and consummation in accordance with the provisions of the Bankruptcy Code. The settlement contemplated in the Tort Claimants RSA of the individual Tubbs preference plaintiffs' claims will be effected through negotiated settlement agreements, subject to separate approval by the Bankruptcy Court, with any payments with respect to such settled claims to be made after the Amended Plan Effective Date by the Fire Victim Trust to be established under the Amended Plan. Likewise, the settlement of the estimation proceedings contemplated by the Tort Claimants RSA will be subject to approval through a separate motion. The following is a summary of the salient terms of the Tort Claimants RSA and Term Sheet:[4]

| | |
|---|---|
| **Parties to the Tort Claimants RSA** | (i) the Debtors; (ii) the TCC; (iii) the Consenting Fire Claimant Professionals representing holders of approximately 70% in number of Fire Victim Claims; and (iv) the Shareholder Proponents. |
| **Treatment of Fire Victim Claims under the Amended Plan (Term Sheet)** | **Fire Victim Claims Channeled to a Fire Victim Trust** In accordance with the requirements of section 3292 of AB 1054, on the Effective Date or as soon as reasonably practicable thereafter the Reorganized Debtors shall establish and fund a Fire Victim Trust with the Aggregate Fire Victim Consideration described below. All claims (other than the Subrogation Wildfire Claims and Public Entities Wildfire Claims) arising from the 2017 and 2018 Northern California wildfires, the 2015 Butte Fire, and the Ghost Ship Fire will be permanently channeled to the Fire Victim Trust, to be satisfied solely from the Fire Victim Trust's assets, without further recourse to the Debtors and Reorganized Debtors (except as discussed below with respect to the obligations under the Tax Benefits Payment Agreement). Each holder of a |

---

[4] This summary is qualified in its entirety by reference to the provisions of the Tort Claimants RSA and the Term Sheet. To the extent that any discrepancies exist between the summary described in this Motion and the terms of the Tort Claimants RSA or the Term Sheet, the Tort Claimants RSA and the Term Sheet shall govern.

Case: 19-30088   Doc# 5038   Filed: 12/09/19   Entered: 12/09/19 16:54:03   Page 11
of 25
Case: 19-30088   Doc# 7322-1   Filed: 05/15/20   Entered: 05/15/20 15:58:31   Page 12
of 78

Fire Victim Claim shall receive payment as determined in accordance with the Fire Victim Claims Resolution Procedures.

The administration of the Fire Victim Trust and settlement and payment of the Fire Victim Claims will be determined by the holders of such Claims, without any involvement of the Debtors.

The Class of Fire Victim Claims is impaired and entitled to vote on the Amended Plan.

**Fire Victim Trust Funding**

The Fire Victim Trust shall be funded with an aggregate of $13.5 billion in value of cash and stock of reorganized PG&E Corp., and will be assigned certain rights and causes of action (described below).

- **Cash**: $5.4 billion in cash on the Amended Plan Effective Date, plus another $1.35 billion in cash payable pursuant to a Tax Benefits Payment Agreement (described below).

- **Stock**: $6.75 billion in Common Stock of reorganized PG&E Corp. (valued at 14.9x Normalized Estimated Net Income), which shall represent not less than 20.9% share ownership of the reorganized PG&E Corp., assuming the Utility's current allowed return on equity.

- **Assigned Rights and Causes of Action**: (i) the Debtors' rights, claims, causes of action, and defenses related to the Fires that they may have against vendors, suppliers, third party contractors and consultants (including those who provided services regarding the Debtors' electrical system, system equipment, inspection and maintenance of the system, and vegetation management), former directors and officers of the Debtors (solely to the extent of any directors and officers Side B insurance coverage), and others as mutually agreed upon by the Debtors and the Shareholder Proponents; and (ii) the Debtors' rights under its 2015 and 2016 insurance policies to resolve any claims related to the Fires in those policy years.

**Summary of Tax Benefits Payment Agreement and $1.35 billion Cash Payment to be Made Post-Effective Date**

The post-Effective Date cash consideration payable reflects the tax savings of the Reorganized Utility as a result of net operating losses and any deductions arising from the payment of Fire Victim Claims and Subrogation Wildfire Claims. This cash consideration is payable as follows:

- $1.35 billion in cash payable in two installments: (i) $650 million paid on January 15, 2021 (for 2020 fiscal year Tax Benefits) and (ii) $700 million paid on or before January 15, 2022 (for 2021 fiscal year Tax Benefits).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| | | |
|---|---|---|
| | | • In the event the Tax Benefits for 2020 exceed $650 million, the excess shall be used as a prepayment of a portion of the $700 million due January 15, 2022. |
| | | • In the event the Tax Benefits for 2020 are less than $650 million, or for 2021 less than $700 million, (i) the shortfall shall be payable on January 15, 2022, and (ii) the Debtors shall deliver to the Fire Victim Trust an unconditional, standby letter of credit covering the shortfall for the 2020 Tax Benefits, payable at sight, naming the Fire Victim Trust as the beneficiary, within 15 days after January 15, 2021 (the "**LOC Issuance Date**"), which may be presented to the issuing bank for payment on February 9, 2022 to the extent any amounts remain owing on that date. If the Reorganized Utility fails to deliver the letter of credit within 10 days after the LOC Issuance Date, the Fire Victim Trust shall have the right to file a stipulated judgment against the Reorganized Utility for the amount of the shortfall. |
| | | • In the event that payments received on or before January 15, 2022 are less than $1.35 billion for any reason, then on February 9, 2022 the Fire Victim Trust shall have the right to file a stipulated judgment against the Reorganized Utility in the amount of the shortfall. |
| | | • In the event of a post-emergence change in control (within the meaning of Section 382 of the Internal Revenue Code), all payments shall become automatically due and payable within 15 days thereof (and the letter of credit, if issued, may be drawn). |
| | | • In the event any post-emergence financing uses or is otherwise secured by the Tax Benefits, the Reorganized Utility shall use the first $1.35 billion in proceeds from the financing to pay the full amount due under the Tax Benefits Payment Agreement to the Fire Victim Trust on January 15, 2021. |
| | **Agreement to Support the Amended Plan (RSA Provisions)** | Each party to the Tort Claimants RSA (a "**Party**") shall use commercially reasonable efforts to support and cooperate with the Debtors to obtain confirmation of the Amended Plan and any regulatory or other approvals necessary for confirmation or effectiveness of the Amended Plan, and each Party shall not support, propose, file, or vote for any plan other than the Amended Plan nor otherwise take any action that would interfere with, delay, impede, or postpone the solicitation of acceptances, consummation, or implementation of the Amended Plan. |
| | | **Debtors** |
| | | Upon execution of the Tort Claimants RSA, the Debtors shall: (i) deliver a draft of the Amended Plan to the Governor of the State of California (the "**Governor**") on or prior to December 6, 2019 at 7 p.m. (PT);[5] (ii) provide |

---

[5] The Debtors delivered the draft Amended Plan on December 6 prior to the 7 p.m. (PT) deadline.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

the Governor and his counsel and advisors on a timely basis with all information necessary to evaluate whether in his judgment the Amended Plan and the restructuring transactions provided therein comply with AB 1054; (iii) file the Amended Plan with the Bankruptcy Court by December 12, 2019; and (iv) use commercially reasonable efforts to obtain confirmation of the Amended Plan as soon as reasonably practicable in accordance with the Bankruptcy Code and the Bankruptcy Rules and on terms consistent with the Tort Claimants RSA.

**TCC**

Upon entry of an order approving the Tort Claimants RSA, the TCC shall file a notice of withdrawal as a proponent of the Alternative Plan and the Parties shall immediately suspend all pending discovery regarding the Subrogation Claimants RSA Motion [Docket No. 3992] and the Financing Motion [Docket No. 4446].

**Consenting Fire Claimant Professionals**

Each Consenting Fire Claimant Professional shall use all reasonable efforts to advise and recommend to its existing and future clients' (who hold Fire Victim Claims) to (i) support and vote to accept the Amended Plan, and (ii) to opt-in to consensual releases under Section 10.9(b) of the Amended Plan. As provided in Section 3(b)(iv) of the Tort Claimants RSA, if on or before the hearing on this Motion, Section 4.19(f)(ii) of the Amended Plan (and any related provisions) has not been modified to the satisfaction of the TCC and the Requisite Consenting Fire Claimant Professionals, the TCC or the Requisite Consenting Fire Claimant Professionals may terminate the Tort Claimants RSA as provided therein.

The Requisite Consenting Fire Claimant Professionals shall provide to counsel, who are not Consenting Fire Claimant Professionals, written information to facilitate the holders of Fire Victim Claims not represented by a Consenting Fire Claimant Professional and their counsel making a meaningful and informed participation and voting decision on the Amended Plan, and each holder of a Fire Victim Claim shall have the right to make his or her own decision regarding voting on the Amended Plan after receiving the advice of his or her individual counsel.

**Shareholder Proponents**

Each Shareholder Proponent shall, subject to the receipt of the Disclosure Statement and other solicitation materials in respect of the Amended Plan, vote or cause to be voted all of its Interests to accept the Amended Plan.

| | |
|---|---|
| **Stay and Resolution of Tubbs Trials** | The Debtors shall promptly enter into discussions (which the Debtors have done) for the settlement of all the preference cases arising out of the Tubbs fire pending in the Superior Court for the State of California (the "**Tubbs Cases**"), and upon the filing of this Motion, the Parties agree to seek a 15 day continuance of the Tubbs Cases pursuant to California Code of Civil Procedure § 36.5(f), which shall be made no later than December 10, 2019. |
| | Upon approval of the Tort Claimants RSA, the Debtors are required to have entered into one or more settlement agreements settling all of the Tubbs |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| | |
|---|---|
| | Cases, which shall (i) allow such claims subject to payment solely from the Fire Victims Trust (as defined in the Term Sheet and provided in the Amended Plan), (ii) be in form and substance satisfactory to the parties thereto, (iii) be confidential and sealed, (iv) not be admissible or introduced into evidence for any purpose in any proceeding, and (v) have filed a motion seeking approval of such settlements on shortened notice. |
| **Stay and Resolution of Estimation Proceedings** | Upon filing this Motion, the Parties agree to seek a stay of the estimation proceedings until an order has been entered resolving the estimation proceedings or the Tort Claimants RSA is terminated pursuant to Section 3 of the Tort Claimants RSA.<br><br>The Debtors shall file a motion seeking entry of an order resolving the estimation proceedings within three (3) days of the entry of an order by the Bankruptcy Court approving the Disclosure Statement with respect to the Amended Plan, to be heard at or before the beginning of the Confirmation Hearing. The order approving such motion shall also provide for the aggregate estimation and aggregate allocation of the Fire Victim Claims in the amount of the Aggregate Fire Victims Consideration for all purposes in the Chapter 11 Cases. |
| **Key Termination Rights** | **Automatic Termination Events**<br><br>The Tort Claimants RSA will terminate automatically upon the occurrence of certain events, including:<br><br>• The failure to satisfy certain milestones, requiring that:<br><br>  • An order granting this Motion is entered by December 20, 2019.<br><br>  • The Disclosure Statement for the Amended Plan is approved by March 30, 2020.<br><br>  • The motion to approve the settlement of the estimation proceedings is filed by March 30, 2020.<br><br>  • The Amended Plan is confirmed by June 30, 2020.<br><br>  • The Amended Plan's Effective Date occurs prior to August 29, 2020.<br><br>• The requisite number of votes of individual fire claimants to accept the Amended Plan is not obtained by the later of (i) the voting deadline for the Amended Plan and (ii) June 30, 2020.<br><br>• The Governor advises the Debtors on or before December 13, 2019 that the Amended Plan and the restructuring transactions provided therein do not in his sole judgment comply with AB 1054 and the Debtors have not modified the Amended Plan in a manner acceptable to the Governor by the earlier of a hearing of this Motion and December 17, 2019. The Parties have agreed not to challenge in the Bankruptcy Court the Governor's exercise of his judgment as to these matters. |

<table>
<tr><td></td><td><strong>TCC / Requisite Consenting Fire Claimant Professionals Termination Events</strong><br><br>The Tort Claimants RSA may be terminated if on or before the hearing on this Motion Section 4.19(f)(ii) of the Amended Plan (and any related provisions) has not been modified to the satisfaction of the TCC and Requisite Consenting Fire Claimant Professionals.<br><br>If the TCC exercises its termination right pursuant to its fiduciary duty (as described below), such termination shall only terminate the TCC as a party to the Tort Claimants RSA and shall not terminate the Tort Claimants RSA for any other Party.<br><br><strong>Debtor / Shareholder Proponent Termination Event</strong><br><br>The Debtors or either Shareholder Proponent may terminate the Tort Claimants RSA upon breach by the TCC or Consenting Fire Claimant Professionals that represent, in aggregate, more than 8,000 holders of Fire Victim Claims.<br><br><strong>Other Termination Events</strong><br><br>In addition to the preceding termination rights, the parties have customary termination rights they can exercise in the event of a breach of the Tort Claimants RSA by another party.</td></tr>
</table>

| | |
|---|---|
| **Effect of Termination** | Upon termination of the Tort Claimants RSA:<br><br>• The Parties are released from their prospective obligations, and all prior agreements between the Parties are null and void.<br><br>• Estimation proceedings shall recommence in District Court.<br><br>• Obligations relating to settlement of the Tubbs Cases remain enforceable, to the extent that the Tort Claimants RSA is approved.<br><br>• Tubbs fire liability and damages will be resolved through estimation in District Court instead of state court. |
| **Fiduciary Duty** | Solely as to the TCC, nothing in the Tort Claimants RSA or Amended Plan shall require the TCC to take any action that it determines in good faith to be inconsistent with its fiduciary duties, but the TCC acknowledges that its entry into the Tort Claimants RSA is consistent with its fiduciary duties. |

## V.   BASIS FOR RELIEF REQUESTED

**1.   The Tort Claimants RSA and Term Sheet Represent a Substantial Achievement and Milestone in the Chapter 11 Cases, Are a Sound Exercise of the Debtors' Business Judgment, and Should be Approved Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code.**

The Tort Claimants RSA and Term Sheet encompass a comprehensive settlement resulting from extensive, good faith negotiations and mediation among the Debtors and the other Parties. The Tort Claimants RSA not only reflects a substantial compromise of the asserted Fire Victim Claims, but also expedites the successful resolution of these Chapter 11 Cases by dispensing with the pending

Case: 19-30088   Doc# 5038   Filed: 12/09/19   Entered: 12/09/19 16:54:03   Page 16
of 25
Case: 19-30088   Doc# 7322-1   Filed: 05/15/20   Entered: 05/15/20 15:58:31   Page 17
of 78

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

estimation proceedings and the costs, expenses, and uncertainty associated therewith, and paving the way toward confirmation of the Amended Plan well in keeping with the June 30, 2020 deadline established under AB 1054. The importance of this achievement cannot be overstated. Indeed, as stated above, the Amended Plan has the support of all impaired classes and plainly represents the best path for the Debtors' successful emergence from chapter 11 and the expeditious payment of Fire Victim Claims.

The Court may authorize the Debtors to enter into, and perform under, the Tort Claimants RSA pursuant to sections 363(b) and 105(a) of the Bankruptcy Code. Section 363(b) provides, in pertinent part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) further provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Together, these sections of the Bankruptcy Code provide the Court with ample authority and discretion to grant the requested relief herein. *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Walter*, 83 B.R. 14, 17 (B.A.P. 9th Cir. 1988) ("The bankruptcy court has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor in possession, in the light of sound business justification."); *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) ("The business judgment standard in section 363 is flexible and encourages discretion."); *In re Montgomery Ward Holding Corp*., 242 B.R. 147, 153 (D. Del. 1999) (use of assets outside the ordinary course of business permitted if "sound business purpose justifies such actions"); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

Once a debtor articulates a valid business justification under section 363 of the Bankruptcy Code, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief, the action was in the best interest of the company. *In re Integrated Resources, Inc*., 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). *See also, In re AWTR Liquidation Inc.,* 548 B.R. 300, 314 (Bankr. C.D. Cal. 2016) (referencing the Cal. Prac. Guide: Corps. (The Rutter Group 2015) Ch. 6–C); *In re Johns-Manville*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Corp.*, 60 B.R. at 615–16 ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions"). Thus, if, as they clearly do here, a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

Courts have relied on both sections 363(b) and 105(a) when approving plan support agreements such as the Tort Claimants RSA, routinely finding that such relief is entirely consistent with the applicable provisions of the Bankruptcy Code. *See, e.g., In re Pacific Gas and Electric Company*, Case No. 01-30923 (DM) (Bankr. N.D. Cal. Mar. 27, 2002) [Docket No. 5558] (order approving proposed settlement of approximately $2 billion in asserted unsecured claims against the debtor as part of plan support agreement under sections 363(b) and 105(a) of the Bankruptcy Code); *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Dec. 13, 2017) [Docket No. 1359] (order approving postpetition plan support agreement pursuant to sections 363(b) and 105(a) of the Bankruptcy Code); *see also In re Exide Techs*, Case No. 13-11482 (KJC) (Bankr. D. Del. Feb. 4, 2015) [Docket No. 3087] (order authorizing debtor to enter into plan support agreement pursuant to sections 363(b) and 105(a) of the Bankruptcy Code); *In re Tronox Inc.*, Case No. 09-10156 (ALG) (Bankr. S.D.N.Y. Dec. 23, 2009) [Docket No. 1030] (same).

The Tort Claimants RSA and Term Sheet are the product of substantial arm's-length, good faith negotiations and formal mediation under the auspices of former Bankruptcy Judge Randall Newsome, that were successful in building a consensus with the Debtors' largest creditor constituency and resolving unliquidated and contested liabilities that are critical to the chapter 11 plan process and the successful administration of these cases. Pursuant to the Tort Claimants RSA, the TCC and Consenting Fire Claimant Professionals who represent approximately 70% in number of holders of Fire Victim Claims have agreed to support the Amended Plan and to recommend that their respective constituencies vote to accept the Amended Plan. This represents an overwhelming amount of consensus and support in favor of the Amended Plan, with now all three wildfire claim constituencies (the Public Entities, the Subrogation Claimants, and the TCC) committing to support the Amended Plan.

As this Court is well aware, the TCC and its constituency have asserted that they have claims against the Debtors well in excess of $36 billion. Pursuant to the Tort Claimants RSA, those

claims will be fully resolved and discharged under the Amended Plan for consideration having a value of approximately $13.5 billion. This represents a significant resolution given the magnitude of the asserted claims, the pending estimation proceedings, and the substantial costs, risks, and uncertainties attendant thereto.

After assessing the asserted Fire Victim Claims, the Debtors concluded that entry into the Tort Claimants RSA is in the best interests of the Debtors and their estates. The Debtors, with the assistance and advice of their retained professionals, have fully evaluated the Fire Victim Claims and the assertions of the TCC and of the firms representing the individual claimants regarding the value of such claims, as well as the risks of ongoing litigation. As stated, the Fire Victim Claims represent an uncertain but potentially large exposure that the TCC has alleged could exceed $36 billion. The Debtors have weighed this potential exposure against the costs, burdens, and uncertainties of further litigation and determined that resolving the Fire Victim Claims as provided in the Tort Claimants RSA is a prudent exercise of business judgment on behalf of the Debtors.

The negotiations culminating in the Tort Claimants RSA and Term Sheet were discussed with management and the Debtors' Board of Directors (the "**Board**") during the negotiation process. The Board and management have been presented with data, information, and analysis pertaining to the Debtors' estimation of the Debtors' potential liability with respect to the Fire Victim Claims on multiple occasions and thoroughly evaluated, with the assistance of outside counsel and advisors, all aspects of the Tort Claimants RSA and Term Sheet. The result of those deliberations was the decision to enter into the Tort Claimants RSA.

If the Tort Claimants RSA is not approved, the Fire Victim Claims would be subject to the pending estimation proceedings before the District Court and this Court, and a jury trial in the California State Superior Court. As the Court is aware, estimation of the Fire Victim Claims will be a time consuming, expensive, and highly uncertain process involving complicated issues of state and federal law and fact-specific issues relating to causation, liability, and damages involving not less than twenty-two separate wildfires and literally thousands of individual loss claims. The Tort Claimants RSA avoids the risks and uncertainties of the estimation proceedings to the Debtors and their other economic stakeholders with respect to a major claims constituency, providing greater certainty to the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

plan process and the Debtors' ability to timely emerge from chapter 11. Moreover, as stated, approval of the Tort Claimants RSA will result in the support of the Amended Plan by all impaired classes, paving the way to the successful conclusion of these Chapter 11 Cases.

In view of the magnitude of the asserted Fire Victim Claims, the risks, uncertainties and expense attendant to litigation of such claims and other factors noted above, the Debtors believe entry into the Tort Claimants RSA is fair and reasonable and represents a sound exercise of the Debtors' business judgment.

### 2. Entry into the Tort Claimants RSA is in the Best Interests of the Debtors' Estates and Should be Approved Pursuant to Bankruptcy Rule 9019.

The Debtors further submit that entry into the Tort Claimants RSA is in the best interests of the Debtors' estates and all stakeholders and should be approved under Bankruptcy Rule 9019, in the event such rule is applicable. Notably, as indicated, distributions will be made to the Fire Victim Trust only upon confirmation and consummation of the Amended Plan.

Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. R. 9019(a). This rule empowers Bankruptcy Courts to approve settlements "if they are in the best interests of the estate." *In re Drexel Burnham Lambert Group*, *Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996). Compromises and settlements are normal and welcomed occurrences in chapter 11 because they allow a debtor and its creditors to avoid the financial and other burdens associated with litigation over contentious issues and expedite the administration of the bankruptcy estate. *See Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986). The decision to approve a particular compromise lies within the sound discretion of the Court. *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); *Woodson v. Fireman's Fund Ins. Co. (In re Woodson),* 839 F. 2d 610, 620 (9th Cir. 1988). A proposed compromise and settlement should be approved when it is "fair and equitable" and "in the best interest of the [debtor's] estate." *In re A&C Properties*, 784 F.2d at 1381. The court must apprise itself "of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Courts in this jurisdiction typically consider the following factors in determining whether a settlement should be approved: (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (ii) the difficulties, if any, to be encountered in the matter of collecting any litigated judgment; (iii) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (iv) the paramount interest of the creditors and the proper deference to their reasonable views in the premises. *See In re Woodson,* 839 F. 2d at 620 (quoting *A&C Props*., 784 F.2d at 1380). It is not necessary that the conclusions reached in the consideration of each of the above factors support the settlement, but taken as a whole, the conclusions must favor the approval of the settlement. *See In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N. D. Cal. 2004) (citing *In re WCI Cable, Inc*., 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)).

The standard Courts apply for approval of settlements under Bankruptcy Rule 9019 is deferential to the debtor's judgment and merely requires the Court to ensure that the settlement does not fall below the lowest point in the range of reasonableness in terms of benefits to the estate. *See City Sanitation v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 91-92 (1st Cir. 2011) ("The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness . . . If a trustee chooses to accept a less munificent sum for a good reason (say, to avoid potentially costly litigation), his judgment is entitled to some deference.") (*citing In re Thompson*, 965 F.2d 1136, 1145 (1st Cir. 1992)); *Shugrue*, 165 B.R. at 123 (a court need not be aware of or decide the particulars of each individual claim resolved by the settlement or "assess the minutia of each and every claim"; rather, a court "need only canvass the issues and see whether the settlement falls 'below the lowest point in the range of reasonableness.'"); *see also, In re Pacific Gas and Elec. Co.*, 304 B.R. at 417; *In re Planned Protective Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991) (same).

While a court must "evaluate . . . all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *Port O'Call Invest. Co. v. Blair (In re Blair),* 538 F.2d 849, 851-52 (9th Cir. 1976), or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134 B.R. at 505. As one court explained in assessing a global settlement of claims, "[t]he

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

appropriate inquiry is whether the Settlement Agreement *in its entirety* is appropriate for the . . . estate." *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 430 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1993) (emphasis added).

Many courts have approved support agreements similar to the Tort Claimants RSA under Bankruptcy Rule 9019. *See, e.g., In re Pacific Gas and Electric Company*, Case No. 01-30923 (DM) (Bankr. N.D. Cal. Mar. 27, 2002) [Docket No. 5558] (approving a settlement, as part of plan support agreement with senior debtholders, pursuant to Bankruptcy Rule 9019); *Energy Future Holdings Corp. v. Del. Trust Co.*, 648 F. App'x 277, 285 (3d Cir. 2016) (affirming approval under Bankruptcy Rule 9019 of holistic settlement of secured creditors' claims); *In re Residential Capital, LLC*, 2013 Bankr. LEXIS 2601 (Bankr. S.D.N.Y. Jun. 27, 2013) (order approving plan support agreement under section 363 of the Bankruptcy Code and Bankruptcy Rule 9019); *In re CHC Grp. Ltd.*, Case No. 16-31854 (BJH) (Bankr. N.D. Tex. Dec. 20, 2016) [Docket No. 1381] (order approving plan support agreement under Bankruptcy Rule 9019); *In re Federal-Mogul Global Inc., T&N Limited*, Case No. 01-10578 (JFK) (Bankr. D. Del. Feb. 7, 2007) [Docket No. 11508] (same); *In re Fiddler's Creek, LLC*, Case No. 10-3846 (CPM) (Bankr. M.D. Fla. Feb. 25, 2011) [Docket No. 702] (order approving plan support agreement and related settlement under Bankruptcy Rule 9019); *In re Nautilus Holdings Ltd.*, Case No. 14-22885 (RDD) (Bankr. S.D.N.Y. Oct. 3, 2014) [Docket No. 165] (approving a restructuring support agreement pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019); *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 467 (2d Cir. 2007) (approving settlement of lien challenge and claims of secured creditors pursuant to Bankruptcy Rule 9019 as it "cleared the way for implementation of a reorganization plan.").

As demonstrated above, the terms of the Tort Claimants RSA and Term Sheet are fair and reasonable and in the best interest of the Debtors, their estates, creditors and other stakeholders, and should be approved. The Tort Claimants RSA and Term Sheet are the result of protracted, good faith, arms' length negotiations among sophisticated principals and competent and experienced retained professionals who effectively and efficiently represented the interests of their respective clients.

Further, as stated, the Tort Claimants RSA eliminates the costs, litigation, and risks associated with the estimation of the Fire Victim Claims currently pending before three separate Courts.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

These proceedings involve complex and uncertain areas of state and federal law as well as highly fact specific issues involving twenty-two separate fires and thousands of underlying individual claims. Indeed, with respect to the Tubbs fire, the most severe 2017 fire, although the Debtors believe, as confirmed by Cal FIRE, that their equipment was not involved, there can be no certainty that a jury in California Superior Court would not reach a different conclusion. As to the Fire Victim Claims, the Tort Claimants RSA and Term Sheet completely mitigate this risk. Courts have routinely acknowledged that uncertainty of litigation and federal policy weigh in favor of approval of settlements. *See In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*, 2009 Bankr. LEXIS 2846, at *9-10 (Bankr. D.P.R. Mar. 31, 2009) ("The Court concludes that the uncertainty of the litigation between the debtors and Citibank weighs heavily in favor of the approval of the Settlement Agreement."); *In re Manuel Mediavilla, Inc.*, 568 B.R. 551, 567 (B.A.P. 1st Cir. 2017) (recognizing "federal policy encouraging settlement of bankruptcy litigation.").

Additionally, the settlement, as embodied in the Tort Claimants RSA, under any scenario clearly does not fall below the lowest point in the range of reasonableness. The TCC has asserted that the prepetition fire liabilities associated with the Fire Victim Claims exceed $36 billion. The Aggregate Fire Victim Consideration having a value of $13.5 billion is a reasonable compromise between the Debtors' current estimate of accrued liabilities on account of uninsured and underinsured fire claims of $8.4 billion and the TCC's asserted $36 billion of such claims. Entry into the Tort Claimants RSA avoids the risks of an adverse litigated outcome that could be severely detrimental to the recoveries of the other creditor constituencies, and it serves to expedite the administration of these cases and distributions to holders of allowed claims.

**3.    The Plan Support Terms of the Tort Claimants RSA are Reasonable and Customary.**

The provisions in the Tort Claimants RSA that require the Parties to support the Amended Plan are standard and routine and are not inconsistent with this Court's decision to terminate exclusivity. They are consistent with this Court's order instituting mediation and largely achieve a global consensus that will be reflected in the Amended Plan. Absent these routine and customary plan support provisions, the Debtors', the TCC's, and the other Parties' substantial efforts and hard-fought negotiations would be meaningless. Courts have stated as much when presented with challenges to approval of plan support

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

agreements and voting lock-up provisions. *See*, *e.g.*, *In re Indianapolis Downs, LLC.*, 486 B.R. 286, 296 (Bankr. D. Del. 2013) (refusing to designate votes over an RSA provision that "predictably" contained a commitment to vote for the plan embodied in the deal, when "the record clearly reflects that the Restructuring Support Parties were acting at all times to maximize their own recoveries and to advance the Debtors' reorganization process to facilitate a prompt and substantial return on their respective claims"); *see also Trans World Airlines, Inc. v. Texaco Inc. (In re Texaco Inc.)*, 81 B.R. 813, 815 (Bankr. S.D.N.Y. 1988) ("If Pennzoil were free to support another plan while Texaco's plan was still capable of being approved, the negotiation between Texaco and Pennzoil would be meaningless."). Restructuring support agreements have been utilized and found to be entirely appropriate in similar circumstances where other Courts have made the decision to terminate a debtor's exclusive periods. *See*, *e.g.*, *In re Exide Technologies*, Case No. 13-11482 (KJC) (Bankr. D. Del. Feb. 2, 2015) [Docket Nos. 2893, 3087] (approving, after exclusivity had been terminated, a plan support agreement where certain supporting creditors agreed not to support or vote for any other plan); *In re SeraCare Life Sciences*, Case No. 06-00510 LA11 (Bankr. S.D. Cal. Dec. 21, 2006) [Docket Nos. 837, 961] (approving, after exclusivity had been terminated, a plan support agreement pursuant to which the signing parties agreed not to support any other plan).

### 4. Conclusion

The Tort Claimants RSA represents a major milestone and achievement in these Chapter 11 Cases. It is supported by the TCC and law firms representing approximately 70% in number of the in excess of 70,000 Fire Victim Claims that have been filed to date in these cases. Approval of the Tort Claimants RSA, which is fully warranted by the applicable undisputed facts and applicable law, will expedite the successful conclusion of these cases and, just as importantly, distributions to the victims of the prepetition wildfires.

## VI. NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Andrew Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the TCC; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; (xii) the Consenting Fire Claimant Professionals; (xiii) counsel for the Shareholder Proponents; and (xiiv) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Debtors' business judgment, appropriate under section 363(b) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, and in the best interests of their estates, creditors, shareholders, and all other parties in interest, and (ii) the Debtors such other and further relief as the Court may deem just and appropriate.

Dated: December 9, 2019

WEIL, GOTSHAL & MANGES LLP
CRAVATH, SWAINE & MOORE LLP
KELLER & BENVENUTTI LLP

By: __/s/ Jessica Liou_____
Jessica Liou

*Attorneys for Debtors and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**EXHIBIT A**

**Tort Claimants RSA**

Case: 19-30088   Doc# 5038-1   Filed: 12/09/19   Entered: 12/09/19 16:54:03   Page 1
of 52

Case: 19-30088   Doc# 7322-1   Filed: 05/15/20   Entered: 05/15/20 15:58:31   Page 27
of 78

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## RESTRUCTURING SUPPORT AGREEMENT

This RESTRUCTURING SUPPORT AGREEMENT (as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof, together with all exhibits and schedules attached hereto or incorporated herein, this "**Agreement**") dated December 6, 2019 is made among:

    (a)    PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors in possession (collectively, the "**Debtors**");

    (b)    the Official Committee of Tort Claimants (the "**TCC**") appointed in the Debtors' Chapter 11 Cases (as defined herein);

    (c)    the attorneys and other advisors and agents for holders of Fire Victim Claims (as defined in the Term Sheet) that are signatories to this Agreement (each a "**Consenting Fire Claimant Professional**"); and

    (d)    certain funds and accounts managed or advised by Abrams Capital Management, LP and certain funds and accounts managed or advised by Knighthead Capital Management, LLC (each a "**Shareholder Proponent**").

Each of the Debtors, the TCC, the Consenting Fire Claimant Professionals, the Shareholder Proponents, and any subsequent person or entity that becomes a party hereto in accordance with the terms hereof are referred to herein collectively as the "**Parties**" and each individually as a "**Party**." Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan (as defined below) or on the plan modifications term sheet attached hereto as **Exhibit A** (the "**Term Sheet**").

## <u>RECITALS</u>

**WHEREAS**, on January 29, 2019, the Debtors commenced voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**");

**WHEREAS**, on September 9, 2019, the Debtors filed the *Debtors' Joint Chapter 11 Plan of Reorganization*;

**WHEREAS**, on October 17, 2019, the TCC and the Ad Hoc Committee of Senior Unsecured Noteholders of Pacific Gas and Electric Company (the "**Ad Hoc Committee**") filed and proposed the *Joint Chapter 11 Plan of Reorganization of Official Committee of Tort Claimants and Ad Hoc Committee of Senior Unsecured Noteholders* (including any amended or modified version thereof, the "**Alternative Plan**");

**WHEREAS**, on November 4, 2019, the Debtors filed the *Debtors' Joint Chapter 11 Plan of Reorganization dated November 4, 2019* (the "**Plan**");

**WHEREAS**, the Parties have engaged in good faith, arm's length negotiations on the material terms of certain restructuring transactions with respect to the Debtors' Chapter 11 Cases

and the Debtors have agreed to amend the Plan as provided for in the Term Sheet (the "**Amended Plan**") to include the terms and conditions set forth in this Agreement and with the modifications set forth in the Term Sheet, and a related disclosure statement (the **"Disclosure Statement"**);

WHEREAS, in light of the aforementioned agreement, the TCC will agree to (i) withdraw its participation and support of the Alternative Plan, and (ii) support the Amended Plan as it would be revised not inconsistent with the Term Sheet; and

WHEREAS, the Parties desire to express to each other their mutual support and commitment in respect of this Agreement and the Amended Plan as it would be revised not inconsistent with the Term Sheet.

## AGREEMENT

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.    **Certain Definitions.**  As used in this Agreement, the following terms have the following meanings:

(a)    "**Agreement Effective Date**" means the date on which counterpart signature pages to this Agreement shall have been executed and delivered by (i) the TCC and at least a majority of its members through their counsel, (ii) the Debtors, (iii) the Shareholder Proponents, (iv) Cotchett, Pitre & McCarthy, LLP, (v) Corey, Luzaich, de Ghetaldi & Riddle LLP, (vi) Frantz Law Group, Bridgford, Gleason & Artinian, and McNicholas & McNicholas LLP (vii) Singleton Law Firm, APC, (viii) Skikos, Crawford, Skikos & Joseph LLP, (ix) Walkup, Melodia, Kelly & Schoenberger, and (x) Watts Guerra LLP.

(b)    "**Approval Orders**" means, collectively, the RSA Approval Order and the Estimation Approval Order.

(c)    "**Claim**" has the meaning set forth in section 101(5) of the Bankruptcy Code.

(d)    "**Consenting Fire Claimants Threshold**" means the date on which a sufficient number of Fire Victim Claims vote to accept the Amended Plan such that the class of Fire Victim Claims in the Amended Plan votes to accept the Amended Plan under 11 U.S.C. § 1126(c) as determined by the Bankruptcy Court.

(e)    "**Consenting Fire Claimant Professional Group**" means the group of thirteen (13) law firms, the membership of which shall be subject to addition upon the vote of a simple majority of the members of such group at the time.  The initial members of the Consenting Fire Claimant Professional Group, to the extent that they become Consenting Fire Claimant Professionals, are:  (i) The Brandi Law Firm; (ii) Corey, Luzaich, de Ghetaldi & Riddle LLP; (iii) Cotchett, Pitre & McCarthy, LLP (iv) Dreyer Babich Buccola Wood Campora, LLP; (v) Frantz Law Group, Bridgford, Gleason & Artinian, McNicholas & McNicholas, LLP (who for

2

the avoidance of doubt collectively shall have one vote); (vi) Jackson & Parkinson; (vii) Robinson Calcagnie, Inc.; (viii) Singleton Law Firm; (ix) Skikos, Crawford, Skikos & Joseph LLP; (x) Robins Cloud LLP; (xi) Walkup Melodia Kelly & Schoenberger; (xii) the Wildfire Legal Group (consisting of Adler Law Group, APLC, Fox Law APC, and Sieglock Law, A.P.C., who for the avoidance of doubt collectively shall have one vote); and (xiii) Watts Guerra LLP.

(f)      "**Definitive Documents**" means the documents (including any related agreements, instruments, schedules, or exhibits) that are necessary or desirable to implement, or otherwise relate to this Agreement, the Amended Plan (including any plan supplements), the Disclosure Statement, any order approving the Disclosure Statement, and any order confirming the Amended Plan, in each case on terms and conditions consistent with the Amended Plan.

(g)      "**Effective Date**" has the meaning set forth in the Amended Plan.

(h)      "**Estimation Approval Motion**" means the motion seeking entry of the Estimation Approval Order.

(i)      "**Estimation Approval Order**" means the order, in form and substance reasonably acceptable to the Parties and subject to and conditioned upon the satisfaction of the Consenting Fire Claimant Threshold, approving settlement of the Estimation Matters, pursuant to Federal Rule of Bankruptcy Procedure 9019 and Section 502(c) of the Bankruptcy Code, which shall provide for the aggregate estimation and aggregate allocation of the Fire Victims Claims in the amount of the Aggregate Fire Victims Consideration for all purposes in these Chapter 11 Cases (including, without limitation, for distribution to the Fire Victims Trust under the Amended Plan).

(j)      "**Estimation Matters**" means the (i) Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 502(c) for the Establishment of Wildfire Claims Estimation Procedures (ECF No. 3091), and (ii) Case No. 19-cv-05257-JD pending in the United States District Court for the Northern District of California.

(k)      "**Financing Motion**" means the Motion of Debtors for Entry of Orders (I) Approving Terms of, and Debtors' Entry into and Performance under, Exit Financing Commitment Letters and (II) Authorizing Incurrence, Payment, and Allowance of Fee and/or Premiums, Indemnities, Costs and Expenses as Administrative Expense Claims (ECF No. 4446) as amended or modified.

(l)      "**Interests**" has the meaning set forth in the Amended Plan.

(m)      "**Requisite Consenting Fire Claimant Professionals**" (i) the TCC, acting by vote of simple majority of its members; and (ii) the Consenting Fire Claimant Professional Group, acting by vote of a simple majority of its members.

(n)      "**RSA Approval Motion**" means a motion seeking approval of this Agreement in form and substance reasonably satisfactory to the Debtors, the Requisite Consenting Fire Claimant Professionals, and the Shareholder Proponents.

(o)     "**RSA Approval Order**" means an order, in form and substance reasonably acceptable to the Debtors, the Requisite Consenting Fire Claimant Professionals, and the Shareholder Proponents, approving this Agreement.

(p)     "**SEC**" means the United States Securities and Exchange Commission.

(q)     "**Securities Act**" means the Securities Act of 1933, as amended.

(r)     "**Subro RSA Motion**" means the Debtors' Motion Pursuant to 11 U.S.C. sections 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Authorizing the Debtors to Enter into Restructuring Support Agreement with the Consenting Subrogation Claimholders, (II) Approving the Terms of Settlement with Such Consenting Subrogation Claimholders, Including the Allowed Subrogation Amount, and (III) Granting Related Relief (ECF No. 3992), as amended or modified.

(s)     "**Support Period**" means the period commencing on the Agreement Effective Date and ending on the earlier of the (i) date on which this Agreement is terminated in accordance with <u>Section 3</u> hereof and (ii) the Effective Date of the Amended Plan.

2.     <u>**Agreement Among the Parties to Implement the Term Sheet.**</u>  Subject to the terms and conditions hereof, for the duration of the Support Period, the Parties, as applicable, and each of their respective attorneys, advisors and agents, agree that:

(a)     the Debtors shall (i) file the Amended Plan with the Bankruptcy Court by December 12, 2019, (ii) seek approval by the Bankruptcy Court of procedures to allow distribution of solicitation materials and casting of ballots for holders of Fire Victim Claims by digital means, (iii) on or prior to 7:00 p.m. Pacific time on December 6, 2019, deliver their Amended Plan to the Governor of the State of California (the "**Governor**"), (iv) provide the Governor and his counsel and advisors on a timely basis with all information necessary to evaluate whether in his judgment the Amended Plan and the restructuring transactions provided therein comply with AB 1054, (v) use commercially reasonable efforts to obtain confirmation of the Amended Plan as soon as reasonably practicable in accordance with the Bankruptcy Code and the Bankruptcy Rules and on terms consistent with this Agreement, and (vi) promptly enter into discussions for the settlement of all the preference cases arising out of the Tubbs fire pending in the Superior Court for the State of California (the "**Tubbs Cases**");

(b)     upon entry of the RSA Approval Order, the TCC shall file a notice of withdrawal as a proponent of the Alternative Plan, in form and substance reasonably satisfactory to the Debtors and the Shareholder Proponents, with the Bankruptcy Court, and the Parties shall immediately suspend all pending discovery regarding the Subro RSA Motion and the Financing Motion;

(c)     the Debtors shall file the RSA Approval Motion within three (3) days of Agreement Effective Date and seek entry of the RSA Approval Order;

(d)     upon the filing of the RSA Approval Motion, the Parties agree to (i) seek a 15 day continuance of the Tubbs Cases pursuant to California Code of Civil Procedure § 36.5(f), which shall be made no later than December 10, 2019; and (ii) a stay of the Estimation Matters

4

until such time as the Bankruptcy Court has entered the Estimation Approval Order, or a termination under Section 3 hereof;

(e)     the Debtors shall file the Estimation Approval Motion within three (3) days of the entry of an order by the Bankruptcy Court approving the Disclosure Statement and the Estimation Approval Motion shall be heard at or before the beginning of the Confirmation Hearing;

(f)     each Party shall support entry of the Approval Orders by the Bankruptcy Court and the United States District Court for the Northern District of California (Case No. 19-cv-05257-JD), as applicable;

(g)     each Consenting Fire Claimant Professional shall use all reasonable efforts to advise and recommend to its existing and future clients' (who hold Fire Victim Claims) to (i) support and vote to accept the Amended Plan, and (ii) to opt-in to consensual releases under Section 10.9(b) of the Amended Plan;

(h)     upon entry of the RSA Approval Order, the Debtors shall (i) have entered into one or more settlement agreements settling all of the Tubbs Cases (the "**Tubbs Settlements**"), which shall (A) allow such claims subject to payment solely from the Fire Victims Trust (as defined in the Term Sheet and provided in the Amended Plan), (B) be in form and substance satisfactory to the parties thereto, (C) be confidential and sealed, and (D) not be admissible or introduced into evidence for any purpose in any proceeding, including without limitation the Estimation Matters or in any other case or proceeding in or related to the Chapter 11 Cases; and (ii) have filed a motion with the Bankruptcy Court seeking approval of the Tubbs Settlements on shortened notice;

(i)     the Requisite Consenting Fire Claimant Professionals shall provide the Debtors and the Shareholder Proponents with all terms for the Fire Victim Trust not specified in the Term Sheet no later than January 20, 2020;

(j)     each Party shall use commercially reasonable efforts to support and cooperate with the Debtors to obtain confirmation of the Amended Plan and any regulatory or other approvals necessary for confirmation or effectiveness of the Amended Plan;

(k)     the TCC shall provide the Debtors a letter, in form and substance agreed to by the Debtors, the Requisite Consenting Fire Claimant Professionals and the Shareholder Proponents, from the TCC that the Debtors may distribute to holders of Fire Victim Claims along with the solicitation materials in respect of the Amended Plan in which the TCC advises and recommends holders of Fire Victim Claims to vote to accept the Amended Plan;

(l)     the Requisite Consenting Fire Claimant Professionals shall provide to counsel, who are not Consenting Fire Claimant Professionals, written information to facilitate the holders of Fire Victim Claims not represented by a Consenting Fire Claimant Professional and their counsel making a meaningful and informed participation and voting decision on the Amended Plan, and each holder of a Fire Victim Claim shall have the right to make his or her own decision regarding voting on the Amended Plan after receiving the advice of his or her individual counsel;

Case: 19-30088   Doc# 5038-1   Filed: 12/09/19   Entered: 12/09/19 16:54:03   Page 6 of 52
Case: 19-30088   Doc# 7322-1   Filed: 05/15/20   Entered: 05/15/20 15:58:31   Page 32 of 78

(m)     each Shareholder Proponent (i) shall, subject to the receipt of the Disclosure Statement and other solicitation materials in respect of the Amended Plan, vote or cause to be voted all of its Interests to accept the Amended Plan; and (ii) shall not change or withdraw (or cause to be changed or withdrawn) any vote cast to accept the Amended Plan;

(n)     each Party shall oppose efforts and procedures to (i) solicit acceptances by any creditors of, and (ii) seek confirmation, consummation or implementation of the Alternative Plan;

(o)     each Party shall not:

i.     object to, delay, impede, or take any other action to interfere with acceptance, confirmation, or implementation of the Amended Plan, including, without limitation, support any request to terminate the Debtors' exclusive periods to file or solicit a plan of reorganization;

ii.     directly or indirectly solicit approval or acceptance of, encourage, propose, file, support, participate in the formulation of or vote for, any restructuring, sale of assets, merger, workout, or plan of reorganization for the Debtors other than the Amended Plan, including, without limitation, the Alternative Plan or any other plan of reorganization proposed by the Ad Hoc Committee;

iii.     otherwise take any action that would interfere with, delay, impede, or postpone (i) the solicitation of acceptances, consummation, or implementation of the Amended Plan, or (ii) the entry or effectiveness of the Approval Orders (other than as a result of the failure of the Consenting Fire Claimant Threshold to occur); or

iv.     challenge the Governor's exercise of his judgment of whether the Amended Plan and the restructuring transactions provided therein comply with AB1054 in any pleading or hearing on the RSA Approval Motion with the Bankruptcy Court.

**3.     Termination.**

(a)     <u>Automatic Termination.</u>  This Agreement will terminate automatically if:

i.     the Consenting Fire Claimants Threshold is not satisfied by the later to occur of (A) the voting deadline for the Amended Plan and (B) June 30, 2020;

ii.     any of the following occur: (A) the RSA Approval Motion is not filed in the Bankruptcy Court within three (3) days of the Agreement Effective Date, (B) the RSA Approval Order is not entered by December 20, 2019; (C) the Disclosure Statement is not approved by March 30, 2020 and the Estimation Approval Motion is not filed by March 30, 2020, (D) the Amended Plan is not confirmed by June 30, 2020, or (E) the Effective Date of the Amended Plan does not occur prior to August 29, 2020; <u>provided</u>, the deadlines set forth in items (A) through (E) of the foregoing may be extended by mutual written consent of the Debtors, the Shareholder Proponents, Requisite Consenting Fire Claimant Professionals, and the TCC;

iii.     the Governor advises the Debtors, on or before December 13, 2019, in writing that (A) the Amended Plan and the restructuring transactions provided therein do not in his sole judgment comply with AB1054 and (B) describes with particularity how the Amended Plan and the restructuring transactions provided therein do not comply with AB1054; provided, that such termination shall not occur if the Debtors have modified the Amended Plan in a manner acceptable to the Governor in his sole discretion by a date that is the earlier of (Y) the commencement of the hearing on the RSA Approval Motion or (Z) December 17, 2019;

iv.     the issuance, promulgation, or enactment by any governmental entity, including any regulatory or licensing authority or court of competent jurisdiction (including, without limitation, an order of the Bankruptcy Court or the California Public Utilities Commission, which has not been stayed), of any statute, regulation, ruling or order declaring the Amended Plan or any material portion thereof (in each case, to the extent it relates to the terms hereof) to be unenforceable or enjoining or otherwise restricting the consummation of any material portion of the Amended Plan, and such ruling, judgment, or order has not been stayed, reversed, or vacated, within fourteen (14) calendar days after issuance;

v.     a trustee under section 1104 of the Bankruptcy Code or an examiner with expanded powers shall have been appointed in the Chapter 11 Cases; or

vi.     an order for relief under chapter 7 of the Bankruptcy Code shall have been entered in the Chapter 11 Cases, or the Chapter 11 Cases shall have been dismissed, in each case by order of the Bankruptcy Court.

(b)     TCC/Requisite Consenting Fire Claimant Professional Termination Events. The TCC or the Requisite Consenting Fire Claimant Professionals may terminate this Agreement, in each case, upon delivery of written notice to the Debtors and the Shareholder Proponents at any time after the occurrence of or during the continuation of any of the following events (each, a "**Creditor Termination Event**"):

i.     the breach by the Debtors or the Shareholder Proponents of any of their obligations, representations, warranties, or covenants set forth in this Agreement;

ii.     the Debtors and the Shareholder Proponents at any time either (A) fail to prosecute the Amended Plan and seek entry of the Confirmation Order that contain the terms set forth in the Term Sheet, and are otherwise consistent with the terms hereof, or (B) propose, pursue or support a Plan or Confirmation Order inconsistent with the terms set forth in the Term Sheet or the Amended Plan;

iii.     the Amended Plan is, or is modified to be, inconsistent with the Term Sheet or this Agreement; or

iv.     on or before the hearing on the RSA Approval Motion, if Section 4.19(f)(ii) of the Amended Plan (and any related provisions) has not been modified to the satisfaction of the TCC and the Requisite Consenting Fire Claimant Professionals.

Case: 19-30088    Doc# 5038-1    Filed: 12/09/19    Entered: 12/09/19 16:54:03    Page 8
of 52
Case: 19-30088    Doc# 7322-1    Filed: 05/15/20    Entered: 05/15/20 15:58:31    Page 34
of 78

Notwithstanding the foregoing, the Debtors and the Shareholder Proponents shall have ten (10) days from the receipt of any such written notice of termination from the TCC or the Requisite Consenting Fire Claimant Professionals specifying the purported default or Creditor Termination Event to cure any purported default or Creditor Termination Event under this section and no termination of this Agreement shall be effective unless and until the expiration of such ten (10) day period without such purported default or Creditor Termination Event being waived or cured.

(c)     Debtors/Shareholder Proponent Termination. The Debtors or either Shareholder Proponent may terminate this Agreement upon delivery of written notice to the TCC at any time after the occurrence of or during the continuation of any of the following events (each, a "**Proponent Termination Event**"):

i.     the breach by either the TCC or Consenting Fire Claimant Professionals that represent, in the aggregate, more than 8,000 holders of Fire Victim Claims of any of their obligations, representations, warranties, or covenants set forth in this Agreement; or

ii.     the TCC takes any action inconsistent with its obligations under this Agreement or fails to take any action required under this Agreement, in either case in reliance on the provisions of Section 19 of this Agreement.

Notwithstanding the foregoing, the TCC and the Consenting Fire Claimant Professionals shall have ten (10) days from the receipt of any such written notice of termination from the Debtors or the Shareholder Proponents specifying the purported default or Proponent Termination Event to cure any purported default or Proponent Termination Event under this section and no termination of this Agreement shall be effective unless and until the expiration of such ten (10) day period without such purported default or Proponent Termination Event being waived or cured.

(d)     Termination Generally.

i.     No Party may terminate this Agreement based on an event caused by such Party's own failure to perform or comply in all material respects with the terms and conditions of this Agreement (unless such failure to perform or comply arises as a result of another Party's actions or inactions).

ii.     Upon termination of this Agreement in accordance with this Section 3, (A) all Parties shall be released from any prospective commitments, undertakings, and agreements under or related to this Agreement other than obligations under this Agreement that by their terms expressly survive termination; (B) the Estimation Matters shall immediately recommence; and (C) all litigation regarding the Tubbs fire, including a determination of whether or not the Utility caused the Tubbs fire, shall be determined by the United States District Court for the Northern District of California without any reference to any state court proceeding.

iii.     Upon termination of this Agreement pursuant to Sections 3, all prior agreements among the Parties shall become null and void, the Parties will be excused from any future performance, and the Approval Orders shall be immediately and automatically vacated and be of no further force and effect, other than to the extent that the RSA

Approval Order approves this Agreement, and shall not be admissible as evidence in any case or proceeding for any purpose.

iv.     Notwithstanding anything to the contrary herein, if the TCC terminates this Agreement in reliance of the provisions of <u>Section 19</u> herein, such termination shall only terminate the TCC as a party to this Agreement and shall not terminate this Agreement for any other Party.

## 4.     **Definitive Documents; Good Faith Cooperation; Further Assurances.**

Each Party hereby covenants and agrees to cooperate with each other in good faith in connection with, and shall exercise commercially reasonable efforts with respect to, the pursuit, approval, implementation, and consummation of the transactions contemplated by this Agreement and the Amended Plan as well as the negotiation, drafting, execution, and delivery of the Definitive Documents. Furthermore, subject to the terms hereof, each of the Parties shall take such action as may be reasonably necessary or reasonably requested by the other Parties to carry out the purposes and intent of this Agreement, and shall refrain from taking any action that would frustrate the purposes and intent of this Agreement.

## 5.     **Mutual Representations and Warranties.**

Each of the Parties, severally and not jointly, represents and warrants to each other Party that the following statements are true, correct, and complete as of the date hereof (or, if later, the date that such Party first became or becomes a Party) but, solely with respect to the Debtors and the TCC, subject to any limitations or approvals arising from, or required by, the commencement of the Chapter 11 Cases:

(a)     it is validly existing and in good standing under the laws of the state of its organization, and this Agreement is a legal, valid, and binding obligation of such Party, enforceable against it in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium, or other similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability;

(b)     except as expressly provided in this Agreement or as may be required for disclosure by the SEC, no material consent or approval of, or any registration or filing with, any governmental authority or regulatory body is required for it to carry out and perform its obligations under this Agreement and the Amended Plan;

(c)     except as expressly provided in this Agreement, it has all requisite organizational power and authority to enter into this Agreement and to carry out the transactions contemplated by, and perform its obligations under, this Agreement and the Amended Plan;

(d)     the execution and delivery by it of this Agreement, and the performance of its obligations hereunder, have been duly authorized by all necessary organizational action on its part;

(e)     it has been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement; and

Case: 19-30088    Doc# 5038-1    Filed: 12/09/19    Entered: 12/09/19 16:54:03    Page 10 of 52
Case: 19-30088    Doc# 7322-1    Filed: 05/15/20    Entered: 05/15/20 15:58:31    Page 36 of 78

(f)     the execution, delivery, and performance by such Party of this Agreement does not and will not (i) violate any provision of law, rule, or regulation applicable to it or any of its subsidiaries or its charter or bylaws (or other similar governing documents) or those of any of its subsidiaries, (ii) conflict with, result in a breach of, or constitute (with or without notice or lapse of time or both) a default under any material debt for borrowed money to which it or any of its subsidiaries is a party, or (iii) violate any order, writ, injunction, decree, statute, rule, or regulation.

**6.     Cooperation.**  Each Party hereby covenants and agrees to cooperate with each other in good faith in connection with, and shall exercise commercially reasonable efforts with respect to the pursuit, approval, negotiation, execution, delivery, and implementation of the Amended Plan.  The Debtors shall use commercially reasonable efforts to provide counsel for the TCC, the Consenting Fire Claimant Professionals, and the Shareholder Proponents drafts of all motions, applications, and other substantive pleadings (including the Amended Plan and/or Disclosure Statement, and any amendments thereto) the Debtors intend to file with the Bankruptcy Court to implement the Amended Plan (or that could reasonably be expected to affect implementation of the modifications in the Term Sheet) at least three (3) calendar days before the date when the Debtors intend to file such pleading, unless such advance notice is impossible or impracticable under the circumstances, in which case the Debtors shall use commercially reasonable efforts to notify telephonically or by electronic mail counsel to the TCC, the Consenting Fire Claimant Professionals, and the Shareholder Proponents to advise them as such and, in any event, shall provide such drafts as soon as reasonably practicable.

**7.     Amendments.**     Except as otherwise expressly set forth herein, this Agreement (including any exhibits or schedules hereto and thereto) may not be waived, modified, amended, or supplemented except in a writing signed by the Debtors, the Shareholder Proponents, and the Requisite Consenting Fire Claimant Professionals, <u>provided</u>, that any waiver, change, modification, or amendment to this Agreement or the Amended Plan that adversely affects the economic recoveries or treatment of the holders of Fire Victim Claims compared to the economic recoveries or treatment set forth in the Term Sheet attached hereto may not be made without the written consent of the Consenting Fire Claimant Professional representing such holder.  In the event that a waiver, change, modification, or amendment to this Agreement materially adversely affects a client of a Consenting Fire Claimant Professional and that Consenting Fire Claimant Professional does not consent ("**Non-Consenting Claimant Professional**"), and such waiver, change, modification, or amendment receives the consent of the Requisite Consenting Fire Claimant Professionals, this Agreement shall be deemed to have been terminated only as to such Non-Consenting Claimant Professional, and this Agreement shall continue in full force and effect in respect to the TCC and all other Consenting Fire Claimant Professionals.  Notwithstanding the foregoing, the Debtors may amend, modify, or supplement the Amended Plan from time to time without the consent of the TCC or any Consenting Fire Claimant Professional to cure any ambiguity, defect (including any technical defect), or inconsistency, <u>provided</u>, that any such amendments, modifications, or supplements do not materially adversely affect the rights, interests, or treatment of the TCC or Consenting Fire Claimant Professional under the Amended Plan.

**8.     Governing Law; Jurisdiction; Waiver of Jury Trial.**

(a)     This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the law of the State of California and applicable

federal law, without regard to any conflict of law provisions that would require the application of the law of any other jurisdiction.

(b)     Each Party irrevocably agrees that any legal action, suit or proceeding arising out of or relating to this Agreement brought by any party or its successors or assigns shall be brought and determined in the Bankruptcy Court and each Party hereby irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court and, if the Bankruptcy Court does not have (or abstains from) jurisdiction, Courts of the State of California and of the United States District Court for the Northern District of California, and any appellate court from any thereof, for itself and with respect to its property, generally and unconditionally.  Each Party further agrees that notice as provided herein shall constitute sufficient service of process and the Parties further waive any argument that such service is insufficient.  Each Party hereby irrevocably and unconditionally waives, and agrees not to assert, by way of motion or as a defense, counterclaim or otherwise, in any proceeding arising out of or relating to this Agreement, (i) any claim that it is not personally subject to the jurisdiction of the Bankruptcy Court as described herein for any reason, (ii) that it or its property is exempt or immune from jurisdiction of such court or from any legal process commenced in such court (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise) and (iii) that (A) the proceeding in such court is brought in an inconvenient forum, (B) the venue of such proceeding is improper or (C) this Agreement, or the subject matter hereof, may not be enforced in or by such court.

(c)     EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).  EACH PARTY (I) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.  **NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, NOTHING IN THIS AGREEMENT, INCLUDING THIS SECTION 8(c), SHALL AFFECT ANY CONSENTING FIRE CLAIMANT'S RIGHT TO A JURY TRIAL WITH RESPECT TO ITS APPLICABLE FIRE VICTIM CLAIM.**

9.     **Specific Performance/Remedies.**  The Parties understand and agree that money damages would be an insufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (including attorneys' fees and costs) as a remedy of any such breach, without the necessity of proving the inadequacy of money damages as a remedy.  Each Party hereby waives any requirement for the security or posting of any bond in connection with such remedies.

10.     **Survival.**  Notwithstanding the termination of this Agreement pursuant to Section 3, Sections 2(h) and 3(d)(ii) and (iv) shall survive such termination and shall continue in

11

full force and effect in accordance with the terms hereof; provided, that any liability of a Party for failure to comply with the terms of this Agreement shall survive such termination.

11.    **Headings.**  The headings of the sections, paragraphs, and subsections of this Agreement are inserted for convenience only and shall not affect the interpretation hereof or, for any purpose, be deemed a part of this Agreement.

12.    **Successors and Assigns.**  This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors, permitted assigns, heirs, executors, administrators, and representatives, provided that nothing contained in this Section 12 shall be deemed to permit sales, assignments, or transfers of Claims subject to transfer restrictions under this Agreement.

13.    **Several, Not Joint, Obligations.**  The agreements, representations, warranties, and obligations of the Parties under this Agreement are, in all respects, several and not joint.

14.    **Relationship Among Parties.**  Unless expressly stated herein, this Agreement shall be solely for the benefit of the Parties and no other person or entity shall be a third-party beneficiary hereof.  No Party shall have any responsibility for any trading by any other entity by virtue of this Agreement.  No prior history, pattern, or practice of sharing confidences among or between the Parties shall in any way affect or negate this understanding and agreement.  The Parties, other than the Shareholder Proponents, have no agreement, arrangement, or understanding with respect to acting together for the purpose of acquiring, holding, voting, or disposing of any equity securities of the Debtors and do not constitute a "group" within the meaning of Rule 13d-5 under the Securities Act, as amended.

15.    **Prior Negotiations; Entire Agreement.**  This Agreement, including the exhibits and schedules hereto, constitutes the entire agreement of the Parties, and supersedes all other prior negotiations, with respect to the subject matter hereof and thereof.

16.    **Counterparts.**  This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement.  Execution copies of this Agreement delivered by facsimile or PDF shall be deemed to be an original for the purposes of this paragraph.

17.    **Notices.**  All notices hereunder shall be deemed given if in writing and delivered, if contemporaneously sent by electronic mail, facsimile, courier or by registered or certified mail (return receipt requested) to the following addresses and facsimile numbers:

(a)    If to the Debtors, to:

PG&E Corporation
77 Beale Street
San Francisco, CA 94105
Attention: Janet Loduca (janet.loduca@pge.com)

With a copy to:

Case: 19-30088   Doc# 5038-1   Filed: 12/09/19   Entered: 12/09/19 16:54:03   Page 13
of 52
Case: 19-30088   Doc# 7322-1   Filed: 05/15/20   Entered: 05/15/20 15:58:31   Page 39
of 78

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attention: Stephen Karotkin, Jessica Liou, and Matthew Goren
(stephen.karotkin@weil.com, jessica.liou@weil.com, matthew.goren@weil.com)

- and -

Cravath, Swaine & Moore LLP
825 8th Avenue
New York, NY 10019
Attention: Kevin Orsini and Paul Zumbro
(korsini@cravath.com, pzumbro@cravath.com)

(b)      If to the Shareholder Proponents, to:


Jones Day
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Attention:  Bruce Bennett and Joshua Mester
(bbennett@jonesday.com, jmester@jonesday.com)


(c)      If to the TCC, to:

Attention:     Karen Lockhart
c/o Steve Campora, Esq.
Dreyer Babich Buccola Wood Campora LLP
E-mail:        scampora@dbbwc.com


with a copy (which shall not constitute notice) to:

Baker & Hostetler LLP
160 Battery Street, Suite 100
San Francisco, CA 94111
Attention:     Robert Julian and Cecily A. Dumas,
(rjulian@bakerlaw.com; cdumas@bakerlaw.com)

Case: 19-30088     Doc# 5038-1     Filed: 12/09/19     Entered: 12/09/19 16:54:03     Page 14
of 52
Case: 19-30088     Doc# 7322-1     Filed: 05/15/20     Entered: 05/15/20 15:58:31     Page 40
of 78

- and -

(d)     If to a Consenting Fire Claimant, to the address listed on the signature page for the applicable Consenting Fire Claimant Professional.

Any notice given by delivery, mail, or courier shall be effective when received. Any notice given by facsimile or electronic mail shall be effective upon oral, machine, or electronic mail (as applicable) confirmation of transmission.

**18.    Settlement and Mediation Discussions.** This Agreement and all statements and information contained herein (a) are settlement communications made in a court ordered mediation, (b) are made without prejudice to any party's legal position, (c) are subject to Federal Rule of Evidence 408, the mediation privileges, and any applicable bankruptcy or state law covering the same subject matter, (d) shall not constitute an admission of liability by any person or entity, and (e) are not discoverable or admissible for any purpose in any legal or administrative proceeding whatsoever.

**19.    Fiduciary Duty.** Notwithstanding anything in this Agreement to the contrary, and solely with respect to the TCC, nothing in this Agreement, the Term Sheet or the Amended Plan shall require the TCC to take or refrain from taking any action that it determines in good faith would be inconsistent with its fiduciary duties under applicable law. Notwithstanding the foregoing, the TCC acknowledges that its entry into this Agreement is consistent with its fiduciary duties.

**20.    Good-Faith Cooperation; Further Assurances.** Subject to the terms and conditions hereof, the Parties shall take such action as may be reasonably necessary or reasonably requested by the other Party to carry out the purposes and intent of this Agreement.

**21.    No Solicitation; Adequate Information.** This Agreement is not and shall not be deemed to be a solicitation for consents to the Amended Plan. The votes of the holders of Claims against the Debtors will not be solicited until such holders who are entitled to vote on the Amended Plan have received the Amended Plan, the Disclosure Statement and related ballots, and other required solicitation materials. In addition, this Agreement does not constitute an offer to issue or sell securities to any person or entity, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful.

**22.    Publicity.** The Debtors shall use commercially reasonable efforts to submit drafts to Baker & Hostetler LLP, counsel to the TCC, the Consenting Fire Claimant Professionals, and to Jones Day, counsel to the Shareholder Proponents, any press releases and public documents that constitute disclosure of the existence or terms of this Agreement or any amendment to the terms of this Agreement before making any such disclosure, and shall afford them a reasonable opportunity under the circumstances to comment on such documents and disclosures and shall incorporate any such reasonable comments in good faith.

**23.    Severability.** If any provision of this Agreement, or the application of any such provision to any person or entity or circumstance, shall be held invalid or unenforceable in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part of such provision hereof and this Agreement shall continue in full

14

force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party. Further, it is the intention of the parties that nothing in this Agreement shall obligate any party to make a filing with the Securities and Exchange Commission pursuant to Section 13 or Section 16 of the Securities Exchange Act of 1934, as amended. Upon any such determination of invalidity or a requirement to file, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

24. **Additional Consenting Fire Claimants Professionals.** Counsel for holders of a Fire Victim Claim may at any time become a party to this Agreement as a Consenting Fire Claimant Professional by executing a Joinder Agreement in the form attached hereto as Exhibit B, pursuant to which such Joining Party represents and warrants to the Debtors, the TCC, and the Shareholder Proponents that it agrees to be bound by the terms of this Agreement as a Consenting Fire Claimant Professional hereunder.

25. **Interpretation; Rules of Construction; Representation by Counsel.** When a reference is made in this Agreement to a Section, Exhibit, or Schedule, such reference shall be to a Section, Exhibit, or Schedule, respectively, of or attached to this Agreement unless otherwise indicated. Unless the context of this Agreement otherwise requires, (a) words using the singular or plural number also include the plural or singular number, respectively, (b) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement, (c) the words "include," "includes" and "including" when used herein shall be deemed in each case to be followed by the words "without limitation," and (d) the word "or" shall not be exclusive and shall be read to mean "and/or." The Parties agree that they have been represented by legal counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, regulation, holding, or rule of construction providing that ambiguities in an agreement or other document shall be construed against the party drafting such agreement or document.

26. **Effectiveness.** Except as set forth in the immediately succeeding sentence, this Agreement shall be effective and binding on all Parties upon the Agreement Effective Date. Upon the Agreement Effective Date and until the earlier of entry of the Approval Orders, the Debtors, the Shareholder Proponents, Consenting Fire Claimant Professionals, and the TCC shall proceed in good faith during the Support Period to seek Bankruptcy Court approval of this Agreement and the Parties shall not, directly or indirectly, propose, file, support, solicit, encourage or participate in any chapter 11 plan or settlement of Fire Victim Claims other than as set forth herein.

*[Signature pages follow.]*

Case: 19-30088   Doc# 5038-1   Filed: 12/09/19   Entered: 12/09/19 16:54:03   Page 16
of 52
Case: 19-30088   Doc# 7322-1   Filed: 05/15/20   Entered: 05/15/20 15:58:31   Page 42
of 78

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacities as officers of the undersigned and not in any other capacity, as of the date first set forth above.

**DEBTORS**

**PG&E CORPORATION**

By: _____
Name: Janet C. Loduca
Title: Senior Vice President, General Counsel

**PACIFIC GAS AND ELECTRIC COMPANY**

By: _____
Name: Janet C. Loduca
Title: Senior Vice President, General Counsel

**TCC**

By: _Cecil A. Dumas_

Name: _Cecil A. Dumas_

Firm: Baker & Hostetler LLP
Attorneys for the TCC

**TCC Member**

Michael Carlson

By: _[signature]_____

Name:     Brendan M. Kunkle_____

Firm:      Abbey, Weitzenberg, Warren & Emery_____
          Attorneys for TCC Member

**TCC Member**

Karen Lockhart

By: _____

Name:  Steven M. Campora

Firm:  Dreyer, Babich, Buccola, Wood, Campora LLP
       Attorneys for TCC Member

**TCC Member**

Samuel Maxwell

By: _____

Name:   W. Gordon Kaupp

Firm:   Kaupp & Feinberg, LLP
        Attorneys for TCC Member

**TCC Member**

Susan Slocum

By: _Mary E Alexander_

Name: Mary E. Alexander

Firm: Mary Alexander & Associates, P.C.
Attorneys for TCC Member

**TCC Member**

Kirk Trostle

By: _____ /for

Name: Tom Tosdal
        _____

Firm: Tosdal Law Firm
        _____
        Attorneys for TCC Member

Case: 19-30088    Doc# 5038-1    Filed: 12/09/19    Entered: 12/09/19 16:54:03    Page 23
of 52
Case: 19-30088    Doc# 7322-1    Filed: 05/15/20    Entered: 05/15/20 15:58:31    Page 49
of 78

**TCC Member**

Tommy Wehe

By: _____

Name:  Steven. J. Skikos

Firm:  Skikos, Crawford, Skikos & Joseph, LLP
       Attorneys for TCC Member

**TCC Member**

Gregory Wilson

By: _____

Name:     <u>Frank M. Pitre</u>

Firm:     <u>Cotchett, Pitre & McCarthy, LLP</u>
            Attorneys for TCC Member

**CONSENTING FIRE CLAIMANT PROFESSIONAL**

By: _____

Name:    Brendan M. Kunkle_____

Firm:     Abbey, Weitzenberg, Warren & Emery_____
           Attorneys for Holders of Fire Victim Claims

**CONSENTING FIRE CLAIMANT PROFESSIONAL**

**ADLER LAW GROUP, APLC**

By: _____

Elliot Adler

Attorney for Holders of Fire Victim Claims

**CONSENTING FIRE CLAIMANT PROFESSIONAL**

**FRANTZ LAW GROUP, APLC**

By: _____
    James P. Frantz
    Attorneys for Holders of Fire Victim Claims

**BRIDGFORD GLEASON & ARTINIAN**

By: _____
    Richard Bridgford
    Attorneys for Holders of Fire Victim Claims

**MCNICHOLAS & MCNICHOLAS**

By: _____
    Patrick McNicholas
    Attorneys for Holders of Fire Victim Claims

**CONSENTING FIRE CLAIMANT PROFESSIONAL**

**FRANTZ LAW GROUP, APLC**

By: _____
     James P. Frantz
     Attorneys for Holders of Fire Victim Claims

**BRIDGFORD GLEASON & ARTINIAN**

By: _____
     Richard Bridgford
     Attorneys for Holders of Fire Victim Claims

**MCNICHOLAS & MCNICHOLAS**

By: _____
     Patrick McNicholas
     Attorneys for Holders of Fire Victim Claims

**CONSENTING FIRE CLAIMANT PROFESSIONAL**

By: _____

Name:   Steven M. Campora

Firm:   Dreyer, Babich, Buccola, Wood, Campora LLP
        Attorneys for Holders of Fire Victim Claims

**CONSENTING FIRE CLAIMANT PROFESSIONAL**

**COREY, LUZAICH, DE GHETALDI & RIDDLE LLP**

By: _Dario De Ghetaldi_

Dario de Ghetaldi
Amanda L. Riddle
Attorneys for Holders of
Fire Victim Claims

**DANKO MEREDITH, TRIAL LAWYERS**

By: _Michael S. Danko_

Michael S. Danko
Kristine K. Meredith
Attorneys for Holders of Fire
Victim Claims

**GIBBS LAW GROUP LLP**

By: _Eric Gibbs_

Eric Gibbs
Dylan Hughes
Attorneys for Holders of Fire
Victim Claims

**CONSENTING FIRE CLAIMANT PROFESSIONAL**

**COTCHETT, PITRE & MCCARTHY, LLP**

By: _____

Frank M. Pitre

Attorney for Holders of Fire Victim Claims

**CONSENTING FIRE CLAIMANT PROFESSIONAL**

_____

Gerald Singleton
Singleton Law Firm, APC
Attorneys for Fire Victim Claimants

**CONSENTING FIRE CLAIMANT PROFESSIONAL**

By: _____

Name: Steven J. Skikos

Firm: Skikos, Crawford, Skikos & Joseph, LLP
Attorneys for Holders of Fire Victim Claims

**CONSENTING FIRE CLAIMANT PROFESSIONAL**

By:

Name:    Tom Tosdal

Firm:    Tosdal Law Firm
         Attorneys for Holders of Fire Victim Claims

**CONSENTING FIRE CLAIMANT PROFESSIONAL**

**WALKUP, MELODIA, KELLY & SCHOENBERGER**

By: _____
   Khaldoun A. Baghdadi
   Michael A. Kelly
   Attorneys for Holders of Fire Victim Claims

**CONSENTING FIRE CLAIMANT PROFESSIONAL**

By: _____

Name: _____Mikal Watts_____

Firm: _____Watts Guerra LLP_____

**SHAREHOLDER PROPONENT**

By:       Abrams Capital Management, L.P. on
behalf of certain funds and accounts it
manages or advises

By: Abrams Capital Management,
LLC, its General Partner

Signature:    _____

David Abrams
Managing Member

Case: 19-30088   Doc# 5038-1   Filed: 12/09/19   Entered: 12/09/19 16:54:03   Page 38
of 52
Case: 19-30088   Doc# 7322-1   Filed: 05/15/20   Entered: 05/15/20 15:58:31   Page 64
of 78

**SHAREHOLDER PROPONENT**

By:      Knighthead Capital Management, LLC
on behalf of certain funds and accounts
it manages or advises

Signature:  _____
Thomas A. Wagner

Case: 19-30088    Doc# 5038-1    Filed: 12/09/19    Entered: 12/09/19 16:54:03    Page 39
of 52
Case: 19-30088    Doc# 7322-1    Filed: 05/15/20    Entered: 05/15/20 15:58:31    Page 65
of 78

**<u>EXHIBIT A</u>**

**TERM SHEET**

**PG&E Corporation and Pacific Gas and Electric Company**

**Summary of Terms Relevant to Treatment of Non-Subrogation Wildfire Claims**
**December 6, 2019**

The following are the terms regarding the treatment of pre-petition non-subrogation wildfire claims asserted against PG&E Corporation ("*HoldCo*") and Pacific Gas and Electric Company (the "*Utility*" and collectively with HoldCo, the "*Debtors*"), to be incorporated into the joint plan of reorganization filed by the Debtors on November 4, 2019 in the Debtors' reorganization cases (the "*Chapter 11 Cases*") under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Northern District of California (the "*Bankruptcy Court*") pursuant to the Restructuring Support Agreement among the Debtors, the TCC, the Consenting Fire Claimant Professionals, and the Shareholder Proponents dated as of December 6, 2019 (the "*RSA*").

This term sheet does not constitute (nor shall it be construed as) an offer with respect to any securities or a solicitation of acceptances or rejections for any plan of reorganization, it being understood that any such offer or solicitation shall be made only in compliance with section 1145 of the bankruptcy code and other applicable rules and laws.

\* \* \*

1

4818-1830-4684.3

| Article I - Definitions | **Aggregate Fire Victim Consideration** means the aggregate consideration used to fund the Fire Victim Trust of (a) $5.4[1] billion in cash contributed on the Effective Date, (b) $1.35 billion in cash payable through (i) $650 million paid in cash on January 15, 2021 pursuant to a Tax Benefit Payment Agreement, and (ii) $700 million paid in cash on January 15, 2022 pursuant to a Tax Benefits Payment Agreement; (c) $6.75 billion in New HoldCo Common Stock (at Fire Victim Equity Value), which shall not be less than 20.9% of the New HoldCo Common Stock assuming the Utility's allowed return on equity as of the date of this Term Sheet; (d) the assignment by the Debtors and Reorganized Debtors to the Fire Victim Trust of the Assigned Rights and Causes of Action; and (e) assignment of rights under the 2015 and 2016 insurance policies to resolve any claims related to Fires in those policy years.  The Aggregate Fire Victim Consideration shall not include any amounts for the Public Entity Settlement which shall be satisfied from other plan financing sources but not the Aggregate Fire Victim Consideration.<br><br>**Assigned Rights and Causes of Action** means any and all rights, claims, causes of action, and defenses related thereto relating directly or indirectly to any of the Fires that the Debtors may have against vendors, suppliers, third party contractors and consultants (including those who provided services regarding the Debtors' electrical system, system equipment, inspection and maintenance of the system, and vegetation management), former directors and officers of the Debtors solely to the extent of any directors and officers Side B insurance coverage, and others as mutually agreed upon by the Plan Proponents and identified in the Schedule of Assigned Rights and Causes of Action.<br><br>**Fires** means the fires that occurred in Northern California, listed on Exhibit A annexed hereto.<br><br>**Fire Claim** means any Claim against the Debtors in any way arising out of the Fires, including, but not limited to, any Claim resulting from the Fires for (a) general and/or specific damages, including any Claim for personal injury, wrongful death, emotional distress and similar claims, pavement fatigue, damage to culverts, ecosystem service losses, municipal budget adjustments/reallocation, lost revenue and tax impacts, local share of reimbursed fire clean-up costs, future estimated infrastructure costs, water service losses, lost landfill capacity, costs related to |

---

[1] The term sheet assumes that the $1.01 billion Public Entity Settlement is paid for separately.

unmet housing (e.g., housing market impact due to the Fires and adjustments for increased homeless population), and/or hazard mitigation costs (including, watershed restoration and hazardous tree removal expenses); (b) damages for repair, depreciation and/or replacement of damaged, destroyed, and/or lost personal and/or real property; (c) damages for loss of the use, benefit, goodwill, and enjoyment of real and/or personal property; (d) damages for loss of wages, earning capacity and/or business profits and/or any related displacement expenses; (e) economic losses; (f) damages for wrongful injuries to timber, trees, or underwood under California Civil Code § 3346; (g) damages for injuries to trees under California Code of Civil Procedure § 733; (h) punitive and exemplary damages under California Civil Code §§ 733 and 3294, California Public Utilities Code § 2106, or otherwise, (i) restitution; (j) fines or penalties; (k) any and all costs of suit, including all attorneys' fees and expenses, expert fees, and related costs, including all attorneys and other fees under any theory of inverse condemnation; (l) for prejudgment and/or postpetition interest; (m) other litigation costs stemming from the Fires; and (n) declaratory and/or injunctive relief. For avoidance of doubt and without prejudice to the Debtors' right to object to any such Claim, "Fire Claim" shall not include any (y) Claim for substantial contribution under section 503(b) of the Bankruptcy Code, or (z) any Subordinated Debt Claim and HoldCo Common Interest. The Fire Claims shall not include claims arising from the Kincade Fire or any fire other than the fires included on Exhibit A (including, without limitation, any postpetition fire).

**Fire Victim Claim** means any Fire Claim that is not a Public Entities Wildfire Claim or a Subrogation Wildfire Claim.

**Fire Victim Equity Value** means 14.9 multiplied by the Normalized Estimated Net Income as of the date to be agreed upon.

**Fire Victim Trust** means one or more trusts established on the Effective Date to administer, process, settle, resolve, satisfy, and pay Fire Victim Claims.

**HoldCo Fire Victim Claim** means any Fire Victim Claim against HoldCo.

**Normalized Estimated Net Income** shall mean, in each case with respect to the estimated year 2021, (a) on a component by-component basis (e.g., distribution, generation, gas transmission and storage, and electrical transmission), the sum of (i) the

4818-1830-4684.3
Case: 19-30088    Doc# 5038-1    Filed: 12/09/19    Entered: 12/09/19 16:54:03    Page 43
of 52
Case: 19-30088    Doc# 7322-1    Filed: 05/15/20    Entered: 05/15/20 15:58:31    Page 69
of 78

Utility's estimated earning rate base for such component, *times* (ii) the equity percentage of the Utility's authorized capital structure, times (iii) the Utility's authorized rate of return on equity for such component, *less* (b) the projected post-tax difference in interest expense or preferred dividends for the entire company and the authorized interest expense or preferred dividends expected to be collected in rates based on the capital structure in the approved Plan, if any, *less* (c) the amount of the Utility's post-tax annual contribution to the Go-Forward Wildfire Fund.

**Plan Proponents** means the Debtors, certain funds and accounts managed or advised by Abrams Capital Management, LP, and certain funds and accounts managed or advised by Knighthead Capital Management, LLC.

**Requisite Consenting Fire Claimant Professionals** has the meaning set forth in the RSA.

**Tax Benefits** mean the difference between the income taxes actually paid by the Reorganized Utility and the income taxes that the Reorganized Utility would have paid to the taxing authorities for such taxable year absent the net operating losses of the Utility and any deductions arising from the payment of Fire Victim Claims and Subrogation Claims.

**Tax Benefits Payment Agreement** means an agreement between the Reorganized Utility and the Fire Victim Trust pursuant to which the Reorganized Utility agrees (a) to pay to the Fire Victim Trust an amount of cash equal to (i) up to $650 million of Tax Benefits for fiscal year 2020 to be paid on January 15, 2021 (the "***First Payment Date***"); and (ii) up to $700 million of Tax Benefits for fiscal year 2021 to be paid on or before January 15, 2022 (the "***Final Payment Date***") plus the amount of any shortfall of the payments owed on the First Payment Date and the Final Payment Date so that on the Final Payment Date, the Fire Victim Trust shall have received payments under the Tax Benefits Payment Agreement in an aggregate cash amount of $1.350 billion from Tax Benefits or draws upon letters of credit under the terms of this definition or otherwise; (b) in the event that Tax Benefits in fiscal year 2020 exceed $650 million, the Reorganized Utility shall use such excess Tax Benefits to prepay, on or before the First Payment Date the amount of Tax Benefits to be paid for fiscal year 2021; (c) in the event that payments from the Tax Benefits Payment Agreement received on or before the First Payment Date are less than $650 million for any reason (a "***First Payment Shortfall***"), the Reorganized Utility shall deliver to the Fire Victim Trust an unconditional, standby letter of credit, payable at

4

4818-1830-4684.3

Case: 19-30088    Doc# 5038-1    Filed: 12/09/19    Entered: 12/09/19 16:54:03    Page 44
of 52
Case: 19-30088    Doc# 7322-1    Filed: 05/15/20    Entered: 05/15/20 15:58:31    Page 70
of 78

| | |
|---|---|
| | sight (with no approval or confirmation from the Reorganized Utility or other drawing conditions) and otherwise in form and substance satisfactory to the Fire Victim Trustee, naming the Fire Victim Trust as beneficiary the ("***LOC***"), from an institution acceptable to the Fire Victim Trust within fifteen (15) business days of the First Payment Date (the "***LOC Issuance Date***") in an amount to cover such First Payment Shortfall, which may be presented to the issuing bank for payment to the Fire Victim Trust on February 9, 2022 to the extent that any amounts remain owing to the Fire Victim Trust under the Tax Benefits Payment Agreement on that date; (d) if the Reorganized Utility has not delivered such letter of credit within ten (10) days of the LOC Issuance Date, then the Fire Victim Trust shall have the right to file a stipulated judgment against the Reorganized Utility in the amount of the First Payment Shortfall based on a declaration by the Fire Victim Trustee of the Reorganized Utility's failure to comply with this requirement of the Tax Benefits Payment Agreement; (e) in the event that payments from the Tax Benefit Payment Agreement and LOC received on or before the Final Payment Date are less than $1.350 billion for any reason (a "***Final Payment Shortfall***") then on February 9, 2022, the Fire Victim Trust shall have the right to file a stipulated judgment against the Reorganized Utility in the amount of the Final Payment Shortfall based on a declaration by the Fire Victim Trustee of the Reorganized Utility's failure to comply with this requirement of the Tax Benefits Payment Agreement; (f) in the event there is a change of control as defined within the meaning of Section of 382 of the Internal Revenue Code after and other than as a result of the occurrence of the Effective Date, if any, all such payments provided for in (a)(i) and (ii) shall become automatically due and payable within fifteen days of such change in control (and the letter of credit, if issued, may be drawn); and (g) in the event that the Reorganized Utility obtains financing that monetizes or is otherwise secured by the Tax Benefits, the Reorganized Utility shall use the first $1.350 billion in proceeds of such financing to make all payments in (a)(i) and (ii) above to the Fire Victim Trust on January 15, 2021.<br><br>**Utility Fire Victim Claim** means any Fire Victim Claim against the Utility. |
| Article III – Classification of Claims and Interests | **Class 8A – HoldCo Fire Victim Claims**<br><br>(a)    Treatment:  On the Effective Date, all HoldCo Fire Victim Claims shall be deemed satisfied, settled, released and discharged through the treatment provided to Utility Fire Victim Claims. |

4818-1830-4684.3

| | |
|---|---|
| | Pursuant to the Channeling Injunction, each holder of a HoldCo Fire Victim Claim shall have its Claim permanently channeled to the Fire Victim Trust, and such Claim shall be asserted exclusively against the Fire Victim Trust in accordance with its terms, with no recourse to the Debtors, the Reorganized Debtors, or their respective assets and properties.<br><br>(b)    <u>Impairment and Voting</u>:  The HoldCo Fire Victim Claims are Impaired, and holders of HoldCo Fire Victim Claims are entitled to vote to accept or reject the Plan.<br><br>**<u>Class 11B – Utility Fire Victim Claims</u>**<br><br>(a)    <u>Treatment</u>:  In accordance with the requirements of section 3292 of the Wildfire Legislation (A.B. 1054), on the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors shall establish and fund the Fire Victim Trust with the Aggregate Fire Victim Consideration.  Utility Fire Victim Claims shall be satisfied solely from the Fire Victim Trust.<br><br>(b)    Funding of the Fire Victim Trust as provided above shall be in full and final satisfaction, release, and discharge of all Utility Fire Victim Claims.  Each holder of a Utility Fire Victim Claim shall receive payment as determined in accordance with the Fire Victim Claims Resolution Procedures.<br><br>(c)    On the Effective Date, the Debtors' liability for all Utility Fire Victim Claims shall be fully assumed by, and be the sole responsibility of the Fire Victim Trust, and all such Claims shall be satisfied solely from the assets of the Fire Victim Trust. Pursuant to the Channeling Injunction, each holder of a Utility Fire Victim Claim shall have its Claim permanently channeled to the Fire Victim Trust, and such Claim shall be asserted exclusively against the Fire Victim Trust in accordance with its terms, with no recourse to the Debtors, the Reorganized Debtors, or their respective assets and properties.<br><br>(d)    <u>Impairment and Voting</u>:  The Utility Fire Victim Claims are Impaired, and holders of Utility Fire Victim Claims are entitled to vote to accept or reject the Plan. |
| Execution of the Plan | 6.6    **<u>The Fire Victim Trust</u>**<br><br>(a)    On or before the Effective Date, the Fire Victim Trust shall be established.  In accordance with the Plan, the Confirmation Order, the Fire Victim Trust Agreement and the Fire Victim |

6

Case: 19-30088   Doc# 5038-1   Filed: 12/09/19   Entered: 12/09/19 16:54:03   Page 46 of 52
Case: 19-30088   Doc# 7322-1   Filed: 05/15/20   Entered: 05/15/20 15:58:31   Page 72 of 78

Claims Resolution Procedures, the Fire Victim Trust shall administer, process, settle, resolve, liquidate, satisfy, and pay all Fire Victim Claims. All Fire Victim Claims shall be channeled to the Fire Victim Trust and shall be subject to the Channeling Injunction. The Fire Victim Trust shall be funded with the Aggregate Fire Victim Consideration. The Fire Victim Trust Agreement shall provide that the Fire Victim Trust shall receive a credit against any Fire Victim Claim for the amount that any holder of such Fire Victim Claim, its predecessor, successor, or assignee received or shall receive from any insurance company under and pursuant to the terms and coverage provisions of any insurance policy for losses resulting from a Fire and that any funds received by any holder of Fire Victim Claim, net of attorney's fees, shall satisfy, to the extent applicable, any amounts of restitution the Debtors or Reorganized Debtors might be subject to under Cal. Penal Code § 1202.4.

(b)       Each trust comprising the Fire Victim Trust is intended to be treated, and shall be reported, as a "qualified settlement fund" for U.S. federal income tax purposes and shall be treated consistently for state and local tax purposes, to the extent applicable; provided, however, that the Reorganized Debtors may elect to treat any trust comprising the Fire Victim Trust as a "grantor trust" for U.S. federal income tax purposes, in which case each such trust shall be treated consistently for state and local tax purposes, to the extent applicable. The Fire Victim Trustee and all holders of Fire Victim Claims shall report consistently with the foregoing. The Fire Victim Trustee shall be the "administrator," within the meaning of Treasury Regulations Section 1.468B-2(k)(3), of the Fire Victim Trust and, in such capacity, the Fire Victim Trustee shall be responsible for filing all tax returns of the Fire Victim Trust and, out of the assets of the Fire Victim Trust, the payment of any taxes due with respect to trust assets or otherwise imposed on the Fire Victim Trust (including any tax liability arising in connection with the distribution of trust assets), shall be permitted to sell any assets of the Fire Victim Trust to the extent necessary to satisfy such tax liability (including any tax liability arising in connection with such sale).

### Fire Victim Trustee

(a)       Powers and Duties of Trustee. The powers and duties of the Fire Victim Trustee shall include, but shall not be limited to, those responsibilities vested in the Fire Victim Trustee pursuant to the terms of the Fire Victim Trust Agreement, or as may be otherwise necessary and proper to (i) make distributions to holders

| | |
|---|---|
| | of Fire Victim Claims in accordance with the terms of the Plan and the Fire Victim Trust Agreement and (ii) carry out the provisions of the Plan relating to the Fire Victim Trust and the Fire Victim Claims. The Fire Victim Trustee shall maintain good and sufficient books and records relating to each Fire Victim Claim, including the identity of the owner of each Fire Victim Claim and the amount and date of all Distributions made on account of each such Fire Victim Claim. <br><br> (b) The Fire Victim Trustee shall cooperate fully with the Reorganized Debtors in connection with the preparation and filing by the Reorganized Debtors of any tax returns, claims for refunds, or other tax filings, and any tax proceedings, to the extent relating to any transfers to, distributions by, or the operations of the Fire Victim Trust. <br><br> (c) The Fire Victim Trustee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Fire Victim Trust through the termination of the Fire Victim Trust. |
| Release Amendments: | None of the releases or exculpation provisions in the Amended Plan shall release any party for which a claim or cause of action is assigned to the Fire Victims Trust. |
| Conditions to Effectiveness: | The Confirmation Order, in form and substance reasonably acceptable to the Plan Proponents and the Requisite Consenting Fire Claimant Professionals, shall have been entered by the Bankruptcy Court no later than the June 30, 2020 date set forth in section 3292(b) of the Wildfire Legislation (A.B. 1054) or any extension of such date; <br><br> All definitive documents relating to the Plan, capitalization, equity and debt financing shall be in form and substance reasonably acceptable to the Plan Proponents and the Requisite Consenting Fire Claimant Professionals; <br><br> No parties other than holders of Fire Victim Claims shall have a right, or involvement in, the Fire Victim Claim Resolution Procedures, the Fire Victim Trust Agreement, the administration of the Fire Victims Trust, the selection of a trustee, settlement fund administrator, claims administrator, or a trust oversight committee. The Fire Victim Claims shall be administered by a Fire Victim Trust and a settlement oversight committee independent of the Debtors. The Fire Victim Claims shall be |

4818-1830-4684.3

|  | administered, allocated and distributed in accordance with applicable ethical rules and subject to adequate informed consent procedures. The Fire Victim Trustee shall receive settlement allocations consistent with model rule 1.8 g. The rules and procedures governing the administration and allocation of the funds from the Fire Victim Trust shall be objectively applied and transparent. The Debtors, creditors (other than holders of Fire Victim Claims), or any other party (other than holders of Fire Victim Claims), shall have no rights to any of the proceeds in the trust, nor any clawback or reversion interest of any of the monies allocated to any of the holders of Fire Victim Claims generally or in the total amount funded to the trust. |
|---|---|

4818-1830-4684.3

**<u>EXHIBIT A</u>**

**Fires**

1.  Butte Fire (2015)
2.  North Bay Wildfires (2017)
    a.   LaPorte
    b.   McCourtney
    c.   Lobo
    d.   Honey
    e.   Redwood / Potter Valley
    f.   Sulphur
    g.   Cherokee
    h.   37
    i.   Blue
    j.   Pocket
    k.   Atlas
    l.   Cascade
    m.  Nuns
    n.   Adobe
    o.   Norrbom
    p.   Pressley
    q.   Patrick
    r.   Pythian / Oakmont
    s.   Maacama
    t.   Tubbs
    u.   Point
    v.   Sullivan
3.  Camp Fire (2018)
4.  Ghost Ship Fire (2016)

4818-1830-4684.3

**EXHIBIT B**

**FORM OF JOINDER AGREEMENT**

This Joinder Agreement to the Agreement, dated as of [_____], (as amended, supplemented or otherwise modified from time to time, the "**Agreement**"), between PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Company**" or the "**Debtors**"), the TCC and the Consenting Fire Claimant Professionals is executed and delivered by _____ (the "**Joining Party**") as of _____, 2019. Each capitalized term used herein but not otherwise defined shall have the meaning set forth in the Agreement.

1.      **Agreement to Be Bound.**  The Joining Party hereby agrees to be bound by all of the terms of the Agreement, a copy of which is attached to this Joinder Agreement as **Annex I** (as the same has been or may be hereafter amended, restated, or otherwise modified from time to time in accordance with the provisions hereof).  The Joining Party shall hereafter be deemed to be a "Consenting Fire Claimant Professional," and "Party" for all purposes under the Agreement.

2.      **Representations and Warranties.**  With respect to the aggregate principal amount of the Claims set forth below his, her or its name on the signature page hereto, the Joining Party hereby makes the representations and warranties of a Consenting Fire Claimant Professional, as applicable, and Joining Party has the power and authority to execute this Joinder Agreement.

3.      **Governing Law.**  This Joinder Agreement shall be governed by and construed in accordance with the internal laws of the State of California, without regard to any conflict of law provisions that would require the application of the law of any other jurisdiction.

*[Signature page follows.]*

IN WITNESS WHEREOF, the Joining Party has caused this Joinder to be executed as of the date first written above.

[_____]

By:_____
Name:
Title:

Notice Address:

_____
_____
_____
Fax:_____
Attention:        _____
Email:            _____

Acknowledged:

**COMPANY**

By:_____
Name:
Title:

Case: 19-30088    Doc# 5038-1    Filed: 12/09/19    Entered: 12/09/19 16:54:03    Page 52 of 52
Case: 19-30088    Doc# 7322-1    Filed: 05/15/20    Entered: 05/15/20 15:58:31    Page 78 of 78