Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone:   415.659.2600
Facsimile:   310.820.8859
Email:  rjulian@bakerlaw.com
Email:  cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:   310.820.8800
Facsimile:   310.820.8859
Email: esagerman@bakerlaw.com
Email: drichardson@bakerlaw.com
Email: lattard@bakerlaw.com

Elizabeth A. Green (*pro hac vice*)
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Orlando, FL 32801
Telephone:   407.649.4036
Facsimile:   407.841.0168
Email: egreen@bakerlaw.com

*Counsel for Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| -and- | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors** | **DECLARATION OF BRENT C. WILLIAMS IN SUPPORT OF OBJECTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO CONFIRMATION OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 16, 2020** |
| ☐ Affects PG&E Corporation | |
| ☐ Affects Pacific Gas and Electric Company | |
| ■ Affects both Debtors | |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM) | Date:  May 27, 2020<br>Time:  10:00 a.m. (Pacific Time)<br>Place:  **Telephonic Appearances Only**<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

I, Brent C. Williams, hereby declare:

1. I am a Managing Director and Co-Head of Lincoln's Special Situations Group at Lincoln Partners Advisors LLC ("**Lincoln**"). My office is located at 444 Madison Avenue Suite 300 New York, New York 10022. I am authorized to execute this declaration on behalf of Lincoln. Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.

2. At Lincoln, I provide advisory services in financial restructurings, mergers and acquisitions, and capital raising services to stakeholders in stressed and distressed situations. My expertise is in sourcing, structuring and executing debt and equity restructurings, recapitalizations, distressed capital raises and distressed sell-side and buy-side merger and acquisition mandates. I have over 25 years of experience in the restructuring field. I am a member of FINRA Series 7, 24, 63. I am also a certified public accountant.

3. I submit this Declaration in support of the Objection of the Official Committee of Tort Claimants to Confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020 (the "**Confirmation Brief**"). Capitalized terms used but not defined in this Declaration shall have the meanings ascribed to them in the Confirmation Brief.

4. Lincoln is the financial advisor to the Official Committee of Tort Claimants (the "**TCC**") of PG&E Corporation and Pacific Gas and Electric Company (the "**Debtors**") in these chapter 11 cases.

5. Lincoln provides the TCC advice with respect to a variety of matters, including, without limitation: analysis of the financial condition of the Debtors, evaluation of the Debtors' plan of reorganization, evaluation of the RSAs entered into by the Debtors, including the TCC RSA, and assessment of the Debtors financing options. Through diligence efforts to date, Lincoln has familiarity with and knowledge of the Debtors' business, operations, and financial issues that affect fire victims.

6. The TCC has also retained Royal Bank of Canada to provide certain investment banking services and the Fire Victim Trust engaged Houlihan Lokey as financial advisor. Lincoln has worked with these two firms on issues that affect the Fire Victim Trust.

**Calculation of Normalized Estimated Net Income**

7. The RSA, as amended, provides that, as part of its "Aggregate Fire Victim Consideration", the Fire Victim Trust will receive:

> $6.75 billion in New HoldCo Common Stock (issued at Fire Victim Equity Value), which shall not be less than 20.9% of the New HoldCo Common Stock based on the number of fully diluted shares of Reorganized HoldCo (calculated using the treasury stock method (using an Effective Date equity value equal to the Fire Victim Equity Value)) that will be outstanding as of the Effective Date (assuming all equity offerings and all other equity transactions specified by the Plan, including without limitation, equity issuable upon the exercise of any rights or the conversion or exchange of or for any other securities, are consummated and settled on the Effective Date, but excluding any future equity issuance not specified by the Plan) assuming the Utility's allowed return on equity as of the date of the Tort Claimants RSA …

8. The term "Fire Victim Equity Value" is, in turn, defined by the Settlement as "14.9 multiplied by the Normalized Estimated Net Income as of the date to be agreed upon." Thus, the amount of New HoldCo Common Stock that is to be transferred to the Fire Victim Trust will hinge upon a calculation of "Fire Victim Equity Value," which itself is a product of "Normalized Estimated Net Income."

9. The term "Normalized Estimated Net Income" is defined in the parties' Settlement, which provides that Normalized Estimated Net Income:

> shall mean, in each case with respect to the estimated year 2021, (a) on a component by component basis (e.g., distribution, generation, gas transmission and storage, and electrical transmission), the sum of (i) the Utility's estimated earning rate base for such component, *times* (ii) the equity percentage of the Utility's authorized capital structure, times (iii) the Utility's authorized rate of return on equity for such component, *less*

Case: 19-30088    Doc# 7326    Filed: 05/15/20    Entered: 05/15/20 16:04:06    Page 3 of 5

(b) the projected post-tax difference in interest expense or preferred dividends for the entire company and the authorized interest expense or preferred dividends expected to be collected in rates based on the capital structure in the approved Plan, if any, *less* (c) the amount of the Utility's post-tax annual contribution to the Go-Forward Wildfire Fund.

10. The Normalized Estimated Net Income for 2021 (the "NNI"), a key determinant in calculating the Fire Victim Trust's equity ownership in the reorganized Debtor at emergence, is derived from the Debtors' 2021 financial projections.

11. At the time of the filing of this Declaration, the Debtors had not provided the TCC with updated and finalized 2021 financial projections. The Debtors advise that they will be providing the updated projections to the TCC at some point during the week of May 18th, 2020. The most recent public guidance from the Debtors related to 2021 NNI was provided in the Debtors' "Chapter 11 Plan Overview, Financing, & Arrangements" presentation posted to their website on May 1st, 2020. A range of $1.9 billion to $2.1 billion was provided for 2021 NNI.

12. There are key issues and assumptions that will be addressed in the updated and finalized 2021 financial projections that could impact the 2021 NNI, which include but are not limited to:

   a. Updates to future financial performance and borrowing needs based on current economic conditions
   b. Updated 2021 projected financing costs
   c. The impact, if any, of outstanding fines and penalties on 2021 NNI
   d. The treatment of claims recently filed by securities holders

13. Further, if the planned securitization does not close by March 31, 2021, the Debtors 2021 interest expense will increase, impacting 2021 NNI.

14. Given these outstanding issues relating to 2021 NNI, the TCC respectfully reserves its rights on this matter.

**Additional Confirmation Issues:**

15. In connection with the TCC's negotiations concerning the RSA's requirement for a

reasonable registration rights agreement, TCC advisors compiled and evaluated registration rights agreements between debtors and other parties in comparable chapter 11 cases to determine the reasonable market practice for registration rights and corresponding lock-up provisions. The TCC advisors located registration rights agreements for public companies that had emerged from chapter 11 within the last seven (7) years whose market capitalization exceeded $1 billion at the time trading had begun following the effective date. From that population, the TCC advisors selected cases for which registration rights agreements were publicly filed as part of the company's exit from chapter 11, either as a plan supplement in the bankruptcy case or in an 8-K with the Securities and Exchange Commission, and which included lock-up provisions. There are six cases in which there are registration rights agreements that meet these criteria, and they were filed in the following cases: *In re Weatherford International plc*, (Bankr. S.D. Tex. 2019) [Dkt. 315]; *In re Avaya, Inc.*, (Bankr. S.D.N.Y. 2017) [Dkt. 1490]; *In re Caesars Entertainment Operating Company, Inc.*, (Bankr. N.D. Ill. 2015) [Dkt. 7467-10]; *In re Arch Coal, Inc.*, (Bankr. E.D. Mo. 2016) [8-K filing]; *In re Energy Future Holdings Corp.*, (Bankr. D. Del. 2014) [Dkt. 9741]; and *In re Cengage Learning, Inc.*, (Bankr. E.D.N.Y. 2013) [Dkt. No. 1258] (collectively, the "**Comparable Agreements**").

16. The Comparable Agreements demonstrate by their terms that, when a company requires a lock-up provision, they have applied the terms equally across all investors receiving stock in the offering. None of the Comparable Agreements included individualized registration rights agreements. None of the Comparable Agreements required a lock-up for certain investors while exempting others, or established a different lock-up duration across differently situated investors.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on the 15th day of May, 2020, in New York, New York.

Dated: New York, New York
May 15, 2020

_____
Brent C. Williams