# EXHIBIT B


| | |
|---|---|
| Order Instituting Investigation on the Commission's Own Motion to Consider the Ratemaking and Other Implications of a Proposed Plan for Resolution of Voluntary Case filed by Pacific Gas and Electric Company, pursuant to Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court, Northern District of California, San Francisco Division, In re Pacific Gas and Electric Corporation and Pacific Gas and Electric Company, Case No.19 30088. | I.19-09-016 (Filed September 26, 2019) |

# CITY OF SAN JOSÉ
## OPENING COMMENTS ON PROPOSED DECISION

RICHARD DOYLE
City Attorney

ED MORAN
Assistant City Attorney

YUE-HAN CHOW
Sr. Deputy City Attorney

LUISA F. ELKINS
Sr. Deputy City Attorney
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San José, CA 95113-1905
Phone: (408) 535-1900
Email: cao.main@sanjoseca.gov

*Attorneys for the City of San José*

# TABLE OF AUTHORITIES

**Commission Rules of Practice and Procedure**

Rule 14.3 ................................................................................................................. 1

**Statutes**

Cal. Pub. Util. Code § 3291 ..................................................................................... 5

Cal. Pub. Util. Code § 3292(b) ................................................................................ 1

Cal. Pub. Util. Code § 854(c)(1) .............................................................................. 2

**Legislation**

Assembly Bill 1054 (Holden, 2019) ........................................................................ 1

# SUBJECT MATTER INDEX

The Proposed Decision should be revised to include the following Commission determinations:

- Reject Pacific Gas and Electric's ("PG&E") proposed plan and require the company to demonstrate that it can emerge as a fully investment-grade entity and that its corporate structure has evolved away from one based on the primacy of shareholder interest.

- Order PG&E to make, at a minimum, the following showings for the Commission to properly assess a plan of reorganization:

    - (1) provide credit-rating analysis validated by a third-party analyst with no interest in the proposed plan and/or a credit rating agency.
    - (2) provide a comprehensive analysis of the utility's long-term financial viability and access to debt and equity markets that includes investment grade ratings for both secured and unsecured debt.
    - (3) provide results of a stress test and sensitivity analysis that evaluates the long-term viability of the company and sustained access to financial markets.
    - (4) provide comprehensive analysis of expected Net Operating Losses ("NOL"), including, but not limited to, the utility's ability to realize the full amount of estimated NOL benefits; timing of the realization of cash from the NOLs; and the risk of nonrealization due to unexpected major losses, a future bankruptcy filing, or a determination that its refinancing under its plan constitutes a change of control.
    - (5) provide commitments and detailed plans for the prompt repayment of temporary debt without transferring wildfire claim liabilities to ratepayers.
    - (6) provide calculation of capital structure consistent with the Commission-approved structure for the utility and that properly considers both shareholder's debt and equity contributions related to settlement of wildfire claims.
    - (7) provide assurances that the rate-based capital collected from ratepayers to finance investments will not be diverted for other uses under the plan.
    - (8) provide commitments that PG&E will not recover bankruptcy related costs from ratepayers.
    - (9) provide comprehensive details regarding any regional restructuring proposal.

In the alternative, the Commission should require PG&E to provide for more equity and less debt in its financing plan. San José supports TURN's proposal to require PG&E to issue $12 billion of equity rather than the $9 billion estimated in the PG&E's proposed plan, thereby replacing $3 billion of the proposed holding company's new debt issuance.

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE
STATE OF CALIFORNIA**

| | |
|---|---|
| Order Instituting Investigation on the Commission's Own Motion to Consider the Ratemaking and Other Implications of a Proposed Plan for Resolution of Voluntary Case filed by Pacific Gas and Electric Company, pursuant to Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court, Northern District of California, San Francisco Division, In re Pacific Gas and Electric Corporation and Pacific Gas and Electric Company, Case No.19 30088. | I.19-09-016<br>(Filed September 26, 2019) |

**CITY OF SAN JOSÉ
OPENING COMMENTS ON PROPOSED DECISION**

Pursuant to Rule 14.3 of the California Public Utilities Commission's ("Commission") Rules of Practice and Procedure ("Rules"),[1] the City of San José ("San José") timely submits these opening comments on the (Proposed) *Decision Approving Reorganization Plan* issued on April 20, 2020 ("Proposed Decision"). San José appreciates the Commission and Administrative Law Judge ("ALJ") Allen's enormous efforts to issue the Proposed Decision within the June 30, 2020 timeline established in Assembly Bill ("AB") 1054.[2] While the Proposed Decision focuses heavily on efforts to increase accountability from, and Commission oversight over, the utility that Pacific Gas and Electric Company ("PG&E") will become upon exiting bankruptcy, it falls short in addressing key legal, factual, and technical issues regarding the long-term financial outlook of the emerging company.

---

[1] *Administrative Law Judge's Ruling Modifying Schedule* (I.19-09-016), issued Feb. 11, 2020.
[2] Cal. Pub. Util. Code § 3292(b).

## I. Discussion of "Financial Condition and Capital Structure" Section of Proposed Decision.

### A. The Proposed Decision's Conclusions Regarding PG&E's Financial Health Are Not Supported by the Evidence in the Record and Are Inconsistent with Public Utilities Code Sections 854(c) and 3291(b)(1)(D)(ii).

Pursuant to the *Administrative Law Judge's Ruling on Public Utilities Code Section 854,* the Commission is to consider criteria from Section 854 of the Public Utilities Code ("Code")[3] in the evaluation of PG&E's Plan of Reorganization ("POR"),[4] including the requirement that the plan would "maintain or improve the financial condition of the resulting public utility doing business in the state."[5] In its opening brief, San José expressed serious concerns regarding PG&E's ability to maintain or improve the financial condition of the resulting public utility due to the POR's heavy reliance on debt at both the utility and holding company level.[6] The POR contemplates $4.75 billion of new debt for the holding company.[7] In turn, the utility would add a staggering $23.775 billion of new debt in addition to $9.575 billion of reinstated/refinanced debt.[8] Other parties in this proceeding also raised multiple issues regarding the long-term financial viability of the company under the POR.[9]

While the Proposed Decision recognized that the "concerns regarding PG&E's future financial health are not baseless,"[10] there are several instances in which the Proposed Decision simply skips to a conclusion without conducting a thorough analysis of the evidence or ordering adjustments to the POR based on that record.

---

[3] All references to the Code in this proceeding are to the Public Utilities Code, unless otherwise stated.

[4] *Administrative Law Judge's Ruling on Public Utilities Code Section 854* (I.19-09-016), issued Nov. 27, 2019, pp. 11-12 [hereinafter "*Ruling on Section 854*"].

[5] Cal. Pub. Util. Code § 854(c)(1).

[6] *Opening Brief of the City of San José* (I.19-09-016), filed March 13, 2020, p. 6 [hereinafter "Opening Brief"].

[7] Ex. PGE-01, PG&E Testimony (Wells) at p. 2-16, Table 2.1.

[8] *Id*.

[9] *See, e.g., City and County of San Francisco Opening Brief on Previously Scoped Issues and Opening Comments on Assigned Commissioner's Ruling and Proposals* (I.19-09-016), filed March 13, 2020; *Post-Hearing Brief and Comments on Assigned Commissioner Ruling of East Bay Community Energy, Monterey Bay Community Power, Peninsula Clean Energy Authority, and Silicon Valley Clean Energy Authority* (I.19-09-016), filed March 13, 2020; *Opening Brief and Comments of Marin Clean Energy* (I.19-09-016), filed March 13, 2020; *The Utility Reform Network's Opening Brief and Comments on the February 18, 2020 Assigned Commissioner's Ruling* (I.19-09-016), filed March 13, 2020.

[10] Proposed Decision, p. 82.

For example, the Proposed Decision indicates that it is impossible to know "with certainty" that PG&E's assumptions and rosy financial projections for the future will match reality.[11] Rather than conducting an analysis of those assumptions to determine their validity based on the evidence presented by the parties, the Proposed Decision sets a (yet-unknown) process to merely monitor PG&E's financial metrics in the future. While it is impossible for the Commission to predict "with certainty" whether PG&E's assumptions are accurate, the evidence submitted into the record supports reasonable conclusions that they may not be. It is uncontested that PG&E will have vast amounts of debt, and only a subset of its debt may become investment grade.[12] This is not a recipe for a successful utility whose focus should be on investment in safety.

At the most fundamental level, the Commission cannot ignore this fact: PG&E declared bankruptcy because it was facing $22 billion in debt; it proposes to emerge from bankruptcy carrying almost $40 billion in debt. The Commission requires no special divination powers to conclude *in this proceeding* (and not at a later date) that the company emerging from bankruptcy will be financially weak and unstable, posing an immense risk for ratepayers and California's electric infrastructure.

Similarly, the Proposed Decision summarily granted PG&E's request to issue $23.775 billion in long-term debt (and, presumably, additional short-term utility debt) with no discussion or analysis of the impact of this debt load on the utility's future financial strength, or the implications for its ability to fund system upgrades or reduced Public Safety Power Shutoffs ("PSPS") events.[13] Further, the Proposed Decision rejected calls for firm financial metrics governing the company's deleverage from historic debt levels and, instead, provided for an unrestricted five-year waiver of standard capital requirements, which may contemplate even more debt than presently planned.[14] Again, the Proposed Decision simply approves PG&E's requests for debt issuance and capital structure waiver without meaningful examination of the

---

[11] *Id.*

[12] *See, e.g.,* Ex. PGE-01, PG&E Testimony (Wells) at p. 2-2, Table 2.1; Ex. CCSF-01, CCSF Testimony (Meal) at p. 6, Table 1 and p. 8, line 23 to p. 9, line 5; February 26, 2020 Transcript (Plaster) at p. 279, lines 15-25, p. 289, line 26 to p. 290, lines 5-10, and p. 292, lines 13-27.

[13] Proposed Decision, pp. 64-65.

[14] *Id.*, pp. 38-42, 82-83.

evidence and a proper assessment of whether debt can be issued, or whether the likely bond ratings, associated security interests, and capital structure waiver are in the interest of ratepayers.

The Proposed Decision also lacks analysis regarding whether PG&E's POR, which is financed with excessive debt, would allow the company to meet its capital obligations post-emergence. The Proposed Decision appears to simply rely on PG&E's assurances that it is "confident" that "as it emerges from bankruptcy it will be able to attract capital and maintain access to capital markets to meet its ongoing operational needs."[15] The factual and evidentiary support for those representations is not discussed in the Proposed Decision. This analytical gap is particularly concerning since, as PG&E recognized, PG&E will need to spend $40 billion in just the next five years for system hardening.[16] The Commission's assessment of the company's ability to attract capacity must rely on more than PG&E's assurances that it would be able to raise the necessary capital to improve its infrastructure and its safety record.

As with many other issues regarding PG&E POR's financial proposal, the Proposed Decision is silent regarding the holding company's debt rating. As PG&E's witness acknowledged, the holding company debt will likely have non-investment grade level.[17] However, the Proposed Decision's discussion is limited to a single statement that "[t]he plan of reorganization does incorporate significant use of holding company debt," while acknowledging that "the operational value of a holding company structure for PG&E at this time is at best questionable."[18] The Proposed Decision also fails to consider whether such types of debt can be raised in the current market environment, which has dramatically changed since PG&E introduced its POR due to the recent health and economic crises. This is not a sufficient analysis of the record to approve the holding company's speculative grade—more commonly known as "junk"—debt issuance.

Pursuant to Section 3291 of Code, the POR approved by the Commission must also be neutral, on average, to PG&E's ratepayers. The Proposed Decision states that "[s]ome parties raise arguments that PG&E's underlying assumptions about its future financial outlook are too

---

[15] *Id.*, pp. 79-82.

[16] February 25, 2020 Transcript (Johnson) at p. 118, lines 10-19; *see also*, Ex. CCSF-01, CCSF Testimony (Meal) at p. 11, lines 1-6 & n. 14 (citing to PG&E 8-k).

[17] February 26, 2020 Transcript (Plaster) at p. 289, line 26 to p. 290, line 10.

[18] Proposed Decision, p. 37.

optimistic and that its debt load is too high," but that those arguments "overlap with the issue of PG&E's post-bankruptcy financial condition, as the basic idea is that if PG&E's financial condition in the future is worse than PG&E projects, then PG&E's cost of debt will be higher than it otherwise would have been."[19] The Proposed Decision goes on to reason that the high cost of debt "is an *indirect effect* stemming from PG&E's future financial condition, including its credit ratings and capital structure."[20] This characterization is incorrect. PG&E has deliberately structured its financing of the POR to limit the amount of equity issued, resulting in higher debt levels that will ultimately be detrimental to customers. In other words, the high burden of debt is a direct effect of the POR, and one that is not neutral, on average, to PG&E's ratepayers.

In sum, the Proposed Decision suggests the Commission ignore relevant evidence and hope for the best. This is inconsistent with the Commission's duty to ensure that PG&E's POR would "maintain or improve the financial condition of the resulting public utility doing business in the state" and is "neutral, on average" to PG&E's customers, despite record evidence to the contrary

### B. The Commission Should Adopt San José's Recommendations Described in Its Opening Brief or, in the Alternative, The Utility Reform Network's ("TURN") Proposal to Include Issuing $12 Billion of Equity as a Condition of Plan Approval

In its Opening Brief, San José made a series of recommendations, some of which were adopted in the Proposed Decision. To address the POR's deficiencies, San José reiterates the recommendations below for the Commission to:

- Reject PG&E's proposed POR and require the company to demonstrate that it can emerge as a fully investment-grade entity and that its corporate structure has evolved away from one based on the primacy of shareholder interest.
- Order PG&E to make, at a minimum, the following showings for the Commission to properly assess a POR:
   - (1) provide credit-rating analysis validated by a third-party analyst with no interest in the POR and/or a credit rating agency.

---

[19]  *Id.*, p. 67.
[20]  *Id*. (emphasis added).

- (2) provide a comprehensive analysis of the utility's long-term financial viability and access to debt and equity markets that includes investment grade ratings for both secured and unsecured debt.
- (3) provide results of a stress test and sensitivity analysis that evaluates the long-term viability of the company and sustained access to financial markets.  (4) provide comprehensive analysis of expected Net Operating Losses ("NOL"), including, but not limited to, the utility's ability to realize the full amount of estimated NOL benefits; timing of the realization of cash from the NOLs; and the risk of nonrealization due to unexpected major losses, a future bankruptcy filing, or a determination that its refinancing under its POR constitutes a change of control.
- (5) provide commitments and detailed plans for the prompt repayment of temporary debt without transferring wildfire claim liabilities to ratepayers.
- (6) provide calculation of capital structure consistent with the Commission-approved structure for the utility and that properly considers both shareholder's debt and equity contributions related to settlement of wildfire claims.
- (7) provide assurances that the rate-based capital collected from ratepayers to finance investments will not be diverted for other uses under the POR.
- (8) provide commitments that PG&E will not recover bankruptcy related costs from ratepayers.
- (9) provide comprehensive details regarding any regional restructuring proposal.

In the alternative, the Commission should require PG&E to provide for more equity and less debt in its financing proposal under the POR. San José supports TURN's proposal to include an additional condition to approval of the financial elements of the POR. Under TURN's proposal, the Proposed Decision would be modified to require PG&E to issue $12 billion of equity rather than the $9 billion estimated in the PG&E's POR ($3 billion more in equity, which would replace $3 billion of the holding company's debt). According to PG&E's testimony, the

equity backstop agreements are structured to provide the amount of equity proposed by TURN.[21] Absent more assertive action from the Commission to address the grave deficiencies in PG&E's financial plan, TURN's proposal would mitigate some of the concerns regarding the amount of speculative grade debt that the holding company will issue and may put PG&E on a path to reduce its debt burden and balance its capital structure.

Dated: May 11, 2020

Respectfully submitted,

RICHARD DOYLE
City Attorney

*/s/ Luisa F. Elkins*
Luisa F. Elkins
Senior Deputy City Attorney
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San José, CA 95113-1905
Phone: (408) 535-1900
Email: luisa.elkins@sanjoseca.gov

*Attorneys for City of San José*

---

[21] Ex. PGE-01, PG&E Testimony (Wells) at p. 2-24, lines 11-23; February 28, 2020 Transcript at p. 575, line 18 to p. 576, line 17.

# APPENDIX

**Revised Findings of Fact**

(New language in *italics and underline*. Deleted language in ~~strikethough~~)

1. PG&E's reorganization plan and other documents resolving the insolvency proceeding, including PG&E's resulting governance structure, are <u>*not*</u> acceptable in light of PG&E's safety history.

2. PG&E's reorganization plan and other documents resolving the insolvency proceeding, including PG&E's resulting governance structure, are <u>*not*</u> acceptable in light of PG&E's criminal probation.

3. PG&E's reorganization plan and other documents resolving the insolvency proceeding, including PG&E's resulting governance structure, are <u>*not*</u> acceptable in light of PG&E's recent financial condition.

4. PG&E's reorganization plan and other documents resolving the insolvency proceeding, including PG&E's resulting governance structure, are <u>*not*</u> acceptable in light of other factors deemed relevant by the Commission.

5. The Commission <u>*will determine whether*</u> ~~has determined that~~ the reorganization plan and other documents resolving the insolvency proceeding are consistent with the state's climate goals as required pursuant to the California Renewables Portfolio Standard Program and related procurement requirements of the state <u>*when the reorganization plan is reviewed pursuant to this decision*</u>.

6. The Commission has determined that the reorganization plan and other documents resolving the insolvency proceeding are <u>*not*</u> neutral, on average, to the ratepayers of PG&E.

7. The Commission has determined that the reorganization plan and other documents resolving the insolvency proceeding <u>*do not*</u> recognize the contributions of ratepayers, if any.

8. PG&E has established an executive compensation structure for any new or amended contracts for executive officers, with additional requirements imposed by ACR Proposal 9.

9. Some issues raised in this proceeding are more appropriately addressed in I.15-08-019 or other proceedings.

10. Some of the proposals made in this proceeding will require additional analysis, development and refinement prior to implementation.

11. The Commission may have pending or may institute other investigations and proceedings against the Debtors arising from Debtors' conduct prior to the effective date of the plan, including but not limited to those involving the Kincade Fire.

12. Regional restructuring of PG&E has the potential to improve safety and responsiveness to local communities.

13. An Enhanced Oversight and Enforcement process for PG&E will add clarity and certainty to the Commission's processes for monitoring and enforcing PG&E's safety performance.

14. ~~PG&E's reorganization plan calls for PG&E to issue long-term and short-term debt.~~

15. The Commission incurred fees and expenses for its outside counsel and financial advisor for services rendered relating to the chapter 11 cases, related proceedings and associated financings.


**Revised Conclusions of Law**
(New language in *italics and underline*. Deleted language in ~~strikethough~~)

1. PG&E's reorganization plan and other documents resolving the insolvency proceeding, including PG&E's resulting governance structure, *do not* comply with the requirements of Public Utilities Code Section 3292(b)(1).

2. PG&E's executive compensation plan, as modified by ACR Proposal 9, conditionally satisfies the requirements of Public Utilities Code Section 8389(e)(6)(C).

3. Investigation 15-08-019 should remain open.

4. As to other Commission investigations and proceedings, including but not limited to potential investigations involving the Kincade Fire, the plan should make clear that "neither

confirmation nor consummation of the plan shall affect any pending or future Commission proceeding or investigation, including any adjudication or disposition thereof, and any liability of the Debtors or Reorganized Debtors, as applicable, arising therefrom shall not be discharged, waived, or released."

    5. Regional restructuring of PG&E should be initiated.

    6. An Enhanced Oversight and Enforcement process for PG&E should be adopted.

    7. ~~PG&E should be granted authorization to issue long-term and short-term debt consistent with its plan of reorganization.~~

    8. PG&E should reimburse the Commission for the fees and expenses incurred by the Commission for its outside counsel and financial advisor for services rendered relating to the Chapter 11 cases, related proceedings and associated financings, and PG&E should not seek cost recovery of the Commission's costs for such fees and expenses.

    9. Neither this decision nor PG&E's reorganization plan and other documents resolving the insolvency proceeding limit or otherwise modify the Commission's authority or jurisdiction.

**Revised Ordering Paragraphs**
(New language in *italics and underline*. Deleted language in ~~strikethough~~)

    1. Pacific Gas and Electric Company's ~~(PG&E's)~~ reorganization plan and other documents resolving the insolvency proceeding~~, including PG&E's resulting governance structure~~, are *rejected*

    *2. Pacific Gas and Electric Company is directed to demonstrate that it can emerge as a fully investment-grade entity and that its corporate structure has evolved away from one based on the primacy of shareholder interest.*

    *3. PG&E is directed to to make, at a minimum, the following showings:*

        *(1) provide credit-rating analysis validated by a third-party analyst with no interest in the proposed plan and/or a credit rating agency.*

*(2) provide a comprehensive analysis of the utility's long-term financial viability and access to debt and equity markets that includes investment grade ratings for both secured and unsecured debt.*

*(3) provide results of a stress test and sensitivity analysis that evaluates the long-term viability of the company and sustained access to financial markets.*

*(4) provide comprehensive analysis of expected Net Operating Losses ("NOL"), including, but not limited to, the utility's ability to realize the full amount of estimated NOL benefits; timing of the realization of cash from the NOLs; and the risk of nonrealization due to unexpected major losses, a future bankruptcy filing, or a determination that its refinancing under its plan constitutes a change of control.*

*(5) provide commitments and detailed plans for the prompt repayment of temporary debt without transferring wildfire claim liabilities to ratepayers.*

*(6) provide calculation of capital structure consistent with the Commission-approved structure for the utility and that properly considers both shareholder's debt and equity contributions related to settlement of wildfire claims.*

*(7) provide assurances that the rate-based capital collected from ratepayers to finance investments will not be diverted for other uses under the plan.*

*(8) provide commitments that PG&E will not recover bankruptcy related costs from ratepayers.*

*(9) provide comprehensive details regarding any regional restructuring proposal.*

2. 4. Pacific Gas and Electric Company ensure that its plan makes clear that "neither confirmation nor consummation of the plan shall affect any pending or future Commission proceeding or investigation, including any adjudication or disposition thereof, and any liability of the Debtors or Reorganized Debtors, as applicable, arising therefrom shall not be discharged, waived, or released."

~~3.~~ _5_. Pacific Gas and Electric Company is ordered to implement regional restructuring consistent with this decision.

~~4.~~ _6_. An Enhanced Oversight and Enforcement process for Pacific Gas and Electric Company is adopted consistent with this decision.

~~5. Pacific Gas and Electric Company is authorized to issue long-term and short-term debt consistent with its plan of reorganization.~~

~~6. Pacific Gas and Electric Company shall submit a Tier 2 Advice Letter to the Commission's Energy Division within 30 days of the effective date of this decision to implement the debt cost savings associated with the $11.85 billion Noteholder Restructuring Support Agreement debt.~~

7. Pacific Gas and Electric Company (PG&E) shall reimburse the Commission for payment of the fees and expenses incurred by the Commission for its outside counsel and financial advisor for services rendered relating to the Chapter 11 cases, related proceedings and associated financings. PG&E may not seek cost recovery of the Commission's costs for such fees and expenses.

8. Pacific Gas and Electric Company shall submit a Tier 3 Advice Letter to the Commission's Energy Division no later than one year before the expiration of the term of the federal court monitor, with a proposed scope of work, budget, solicitation process for an Independent Safety Monitor, and a process for selection/approval by the Commission. Energy Division will process the Tier 3 Advice Letter in consultation with the Commission's Safety Enforcement Division and Safety Policy Division, as appropriate.

~~9. Pacific Gas and Electric Company shall annually submit to the Commission's Energy Division a Tier 1 Advice Letter, until further direction, informing the Commission of its current capital structure and deviation from its authorized capital structure, an updated annual forecast for de-leveraging, and its current credit ratings for secured and unsecured debt.~~