# **EXHIBIT D**



Jason P. Wells  
Executive Vice President  
and Chief Financial Officer

77 Beale Street  
32nd Floor  
San Francisco, CA 94105

May 14, 2020                                BY ELECTRONIC MAIL

**President Marybel Batjer**  
**Commissioner Martha Guzman Aceves**  
**Commissioner Liane Randolph**  
**Commissioner Clifford Rechtschaffen**  
**Commissioner Genevieve Shiroma**

California Public Utilities Commission  
505 Van Ness Avenue  
San Francisco, CA 94102

Re:      I.19-09-016, PG&E Bankruptcy OII

Dear President Batjer, Commissioners Guzman Aceves, Randolph, Rechtschaffen, and Shiroma:

I write in response to the May 11, 2020 letter from 11 Mayors and Supervisors regarding the proposed decision in the Commission's proceeding to review PG&E's Plan of Reorganization.[1] Initially, I would like to express our appreciation for the Commission's diligence in bringing this proceeding to a timely conclusion, which will enable PG&E over the coming months to compensate the victims of the 2015, 2017 and 2018 wildfires fairly and quickly and emerge from Chapter 11 in a timely manner. PG&E supports the proposed decision, with some clarifications as set forth in our comments.

I would like to like to address some of the inaccuracies and correct the record on a few key points about PG&E's financial condition as it emerges from Chapter 11. The May 11 letter states that PG&E would pay "excessive interest rates due to holders of 'junk bond' debt." This statement is wrong. In fact, PG&E will be issuing secured debt which, as both company and outside financial experts testified, will be rated investment grade. Indeed, that is a condition of our public agreement with the Governor's Office. Hence, while PG&E does not expect to be rated an investment-grade *issuer*, its bonds will be investment grade, not "junk bond" status.

Additionally, the statement that PG&E will pay "excessive" interest rates is wrong and also not supported by the record. On the contrary, through the bankruptcy process, PG&E was able to refinance pre-petition debt at substantially lower interest rates than it was paying in the past, resulting in a savings to customers of over $1 billion (in nominal terms).

---

[1] In accordance with Rule 8.2(c)(3), I am simultaneously serving a copy of this communication on all parties in I.I.19-09-016 (the PG&E Bankruptcy OII).

Case: 19-30088    Doc# 7331-4    Filed: 05/15/20    Entered: 05/15/20 16:15:55    Page 2 of 3

PG&E's Plan positions the Utility and PG&E Corporation to be financially healthy upon emergence, with improving credit ratings and access to equity and debt markets. We remain confident in our ability to raise the capital needed to continue to deliver safe, reliable, clean and affordable energy to our customers and to implement needed changes across our business to improve our operations and governance for the long term.

The May 11 letter urges the Commission to "condition any PG&E plan on an increased commitment of equity." This statement shows a misunderstanding about the equity backstop commitment letters that are public and have been negotiated as part of the bankruptcy process. Section 1(b) of the letters state that, as long as PG&E emerges with a capital structure as described in its January 31, 2020 testimony in this proceeding, the backstop parties are committed to investing $9 billion in equity. There are no commitments to invest any additional equity. Based on the legal structure of the backstop commitment letters, if the Commission were to require PG&E to change the Plan to increase the amount of equity, this would have the unintended consequence of *decreasing* the amount of equity the backstop parties would be committed to investing. And without the backstop commitments for $9 billion, PG&E would lose its clear path to emerging from Chapter 11.

While the May 11 letter closes with a suggestion that the Commission "pursue another path," we remain firmly of the view that confirmation of PG&E's Plan remains the best way to compensate the victims of the 2015, 2017 and 2018 wildfires and to continue providing Northern and Central Californians with the energy service they expect and deserve.

We look forward to continuing to work with local and state leaders to support our customers as we emerge from our Chapter 11 proceedings.

Sincerely,

Jason P. Wells

cc: Shannon O'Rourke, Chief of Staff to President Batjer
Jonathan Koltz, Chief of Staff to Commissioner Guzman Aceves
Christine Powell, Chief of Staff to Commissioner Randolph
Sean Simon, Chief of Staff to Commissioner Rechtschaffen
Leuwam Tesfai, Chief of Staff to Commissioner Shiroma
All Parties on Service List I.19-09-016