| | |
|---|---|
| REBECCA J. WINTHROP (SBN 116386)<br>ROBIN D. BALL (SBN 159698)<br>NORTON ROSE FULBRIGHT US LLP<br>555 South Flower Street, Forty-First Floor<br>Los Angeles, California 90071<br>Telephone: (213) 892-9200<br>Facsimile: (213) 892-9494<br>rebecca.winthrop@nortonrosefulbright.com<br>robin.ball@nortonrosefulbright.com<br><br>Attorneys for ADVENTIST HEALTH<br><br>-and-<br><br>DAVID E. WEISS (SBN 148147)<br>PETER MUNOZ (SBN 66942)<br>REED SMITH LLP<br>101 Second Street Suite 1800<br>San Francisco, CA 94105-3659<br>Telephone: (415) 543-8700<br>Facsimile: (415) 391-8269<br>dweiss@reedsmith.com<br>pmunoz@reedsmith.com<br><br>Attorneys for PARADISE ENTITIES | BRIAN J. LOHAN (*Pro Hac Vice* application forthcoming)<br>BENJAMIN MINTZ (*Pro Hac Vice* admitted)<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>250 West 55th Street<br>New York, NY 10019-9710<br>Telephone: 212.836.8000<br>Facsimile: 212.836.8689<br>brian.lohan@arnoldporter.com<br>benjamin.mintz@arnoldporter.com<br><br>Attorneys for AT&T<br><br>-and-<br><br>Craig Goldblatt (*Pro Hac Vice* admitted*)*<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>1875 Pennsylvania Ave., NW<br>Washington DC 20036<br>Telephone: 202.663.6000<br>Facsimile: 202.663.6363<br>craig.goldblatt@wilmerhale.com<br><br>Lauren Lifland (*Pro Hac Vice* application forthcoming)<br>Allyson Pierce (SBN 325060)<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>250 Greenwich Street<br>New York, NY 10007<br>Telephone: 202.230.8800<br>Facsimile: 202.230.8888<br>lauren.lifland@wilmerhale.com<br>allyson.pierce@wilmerhale.com<br><br>Attorneys for COMCAST |

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>    **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>    **Debtors.** | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**OBJECTION TO CONFIRMATION AND RESERVATION OF RIGHTS OF ADVENTIST HEALTH, AT&T, PARADISE ENTITIES AND COMCAST TO DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11** |

| | |
|---|---|
| ☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☒ Affects both Debtors<br><br>*  *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | **PLAN OF REORGANIZATION DATED MARCH 16, 2020**<br><br>Date: May 27, 2020<br>Time: 10:00 a.m. (PT)<br>Place: United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102<br>Judge: The Hon. Dennis Montali |

Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River, each a California religious non-profit corporation (together, "**Adventist Health**"); Paradise Irrigation District, Paradise Unified School District, Northern Recycling and Waste Services, LLC/Northern Holdings, LLC, Napa County Recycling & Waste Services, LLC/Napa Recycling & Waste Services, LLC, and Christian & Missionary Alliance Church of Paradise, dba Paradise Alliance Church (together, the "**Paradise Entities**"); AT&T Corp. and all affiliates ("**AT&T**"); and Comcast Cable Communications, LLC and all affiliates (together, "**Comcast**," and collectively with Adventist Health, the Paradise Entities, and AT&T, the "**Objectants**"), by and through their respective undersigned counsel, hereby submit this Objection to Confirmation and Reservation of Rights (together, the "**Objection**") regarding the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* [Dkt. No. 6320] (the "**Plan**")[1], and respectfully represent as follows:

## BACKGROUND

1. On March 16, 2020, the Plan Proponents filed the Plan. Under the Plan, all Fire Victim Claims, including the Fire Victim Claims asserted by each of the Objectants, shall be compensated from the Fire Victim Trust, which will be governed by, among other things, various trust documents, including the proposed Fire Victim Trust Agreement (the "**Trust Agreement**") and the Fire Victim Claims Resolution Procedures (the "**CRP**" and together with the Trust Agreement the "**Trust Documents**"), proposed final versions of which were filed with this Court on May 1, 2020 [Dkt. No. 7037].

2. In accordance with the Disclosure Statement Order [Dkt. No. 6340], the deadline for submitting ballots to vote to accept or reject the Plan, as well as filing and serving objections to the Plan, is May 15, 2020 at 4:00 p.m. (Prevailing Pacific Time) (the "**Confirmation Objection Deadline**").

3. Pursuant to the *Stipulation by and Among the Plan Proponents, the Official Committee of Tort Claimants, the Adventist Health Claimants, the Paradise Related Entities, AT&T*

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

1

*and Comcast Regarding Fire Victim Trust Document Issues* [Dkt. No. 7050] (the "**Briefing Stipulation**"), the Plan Proponents, the TCC and the Objectants agreed to an expedited briefing and hearing schedule with respect to the Objectants' concerns regarding the Trust Documents. Under the Briefing Stipulation, the Objectants' objection to the Trust Documents [Dkt. No. 7072] (the "**Trust Documents Objection**") was limited in scope to the Trust Documents (excluding any objections pursuant to section 1129(b) of the Bankruptcy Code), with all other objections to the Plan to be reserved for the Confirmation Hearing and filed in accordance with the deadlines established in the Disclosure Statement Order.

4. By Order dated May 4, 2020 [Dkt. No. 7060] (the "**Briefing Order**"), the Court approved the Briefing Stipulation. Pursuant to the Briefing Order, the Objectants filed the Trust Documents Objection on May 5, 2020, and a hearing with respect to the Trust Documents Objection took place on May 15, 2020 (the "**Trust Documents Hearing**").

5. Pursuant to the deadlines established under the Disclosure Statement Order and the Briefing Stipulation, the Plan voting results will not be known until after the Confirmation Objection Deadline has passed. Similarly, because of the timing of the Trust Documents Hearing, the Court's ruling with respect to the Trust Documents Objection also may not be known until after the Confirmation Objection Deadline has passed. For this reason, the Objectants file this Objection in the event that either: (a) the Court does not rule on the Trust Documents Objection; or (b) the Plan is rejected by Class 5A-III (Holdco Fire Victim Claims) and Class 5B-III (Utility Fire Victim Claims) (collectively, the "**Fire Victim Classes**"), in which case the Plan must satisfy section 1129(b)(1) of the Bankruptcy Code.

**OBJECTION TO CONFIRMATION AND RESERVATION OF RIGHTS**

A. <u>The Trust Documents Violate Both Federal Bankruptcy Law and State Law.</u>

6. As set forth in the Trust Documents Objection, the contents of which are incorporated herein by this reference, the Trust Documents' denial of access to this Court for the adjudication of the Objectants' claims, improper treatment of insurance claims, and the other issues raised in the Trust Documents Objection, violate both federal bankruptcy law and state law for all the reasons set forth in the Trust Documents Objection. Accordingly, and to the extent that the

Court has not issued its ruling with respect to such Objection, or the Trust Documents have not been amended to address the Objectants' concerns described therein as of the date of this filing, the Objectants hereby incorporate those objections herein by this reference and request this Court to adjudicate those issues in connection with confirmation.

B. <u>The Plan Violates The Absolute Priority Rule and Unfairly Discriminates Against Fire Victims.</u>

7. If the treatment being afforded Fire Victim Claims in the Plan is rejected by the Fire Victim Classes, then the Plan violates section 1129(b), which provides that if a plan meets all of the requirements for confirmation other than having an impaired, accepting class of creditors, the court may confirm the plan only "if the plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). For the reasons set forth below, the Objectants reserve all rights to argue at the Confirmation Hearing that the Plan cannot be confirmed despite the Fire Victim Classes' rejection of the Plan because such plan does not provide "fair and equitable" treatment with respect to, and unfairly discriminates against, Fire Victim Claimants. *Id.*

8. ***First***, the Plan is not "fair and equitable" with respect to Fire Victim Claimants because the Plan's distribution scheme violates the absolute priority rule contemplated by section 1129(b)(2)(B)(ii) of the Bankruptcy Code. 11 U.S.C. § 1129(b)(2)(B)(ii) ("the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property"). This rule provides that equity interest holders retain nothing if unsecured creditors have not been paid in full; otherwise, a plan may not be confirmed under section 1129(b). *In re RAMZ Real Estate Co., LLC*, 510 B.R. 712, 718 (Bankr. S.D.N.Y. 2014) (denying confirmation of plan pursuant to 11 U.S.C. § 1129(b)(2)(B)(ii) where plan provided for equity to retain interest in debtor while unsecured claims were not paid in full); *In re Woodbridge North Apts., Ltd.*, 71 B.R. 189, 190-91 (Bankr. N.D. Cal. 1987) (stating that proposed plan in which equity holders would receive stock and holders of unsecured deficiency claims would be paid nothing would not be fair and equitable with respect to holders of unsecured deficiency claims). Here, the Plan provides that holders of Holdco Common Interests, Holdco

-3-

Other Interests, Utility Preferred Interests and Utility Common Interests will either retain their interests subject to dilution or be reinstated, while Fire Victim Claims will not receive payment in full. Plan §§ 4.13(a), 4.15(a), 4.33(a), 4.34(a). This is a clear violation of the absolute priority rule. Accordingly, the Plan does not provide "fair and equitable" treatment for Fire Victim Claims.

9. ***Second***, the Plan cannot be confirmed because it unfairly discriminates against Fire Victim Claimants as compared to the similarly situated classes of General Unsecured Claims, Subrogation Wildfire Claims and Public Entities Wildfire Claims, who like the Objectants and other creditors in the Fire Victim Classes, also hold general unsecured claims against the Debtors. *Aetna Realty Inv'rs, Inc. v. Monarch Beach Venture, Ltd. (In re Monarch Beach Venture, Ltd.)* 166 B.R. 428, 437 (C.D. Cal. 1993) ("Reducing 'discrimination' to its bare essentials, a dissident class must ... receive treatment which allocates value to the class in a manner consistent with the treatment afforded to other classes with similar legal claims against the debtor.") *Corestates Bank, N.A. v. United Chem. Techs., Inc.,* 202 B.R. 33, 47 (E.D. Pa. 1996) (citations omitted) (same).

10. Under the Plan, Fire Victim Claims will be channeled to the Fire Victim Trust and paid exclusively from the Trust Assets, which assets are comprised of $6.75 billion in cash and $6.75 billion in stock. Plan §§ 1.6, 4.7(a), 4.26(c). It is unlikely, however, that Fire Victim Claims will receive payment in full on account of their asserted claims for at least two reasons: (1) despite initial optimism that the Trust Assets will be sufficient to pay all Fire Victim Claims in full, the more likely outcome is that Fire Victim Claims will be paid only a <u>portion</u> of their asserted claims from the Trust Assets, hopefully on a *pro rata* basis;[2] and (2) the Trust Agreement provides that Fire Victim Claims may be reduced by the Trustee, in his sole discretion, by insurance proceeds received or to be received by Fire Victim Claimants. Trust Agreement § 2.6.

11. Indeed, from all of the information provided to the Objectants so far, the settled amount (stock and cash) is <u>not</u> sufficient to pay all Fire Victim Claimants in full. As recently as the March 10, 2020 hearing on the adequacy of the Disclosure Statement, this Court asked the

---

[2] As discussed in the Trust Documents Objection, the Trust Documents were revised to provide that "Approved Fire Victim Claims [will] receive a *pro rata* distribution or as close thereto as possible, regardless of when such claim is fully administered…". Trust Agreement § 2.1 (e) (vii).

1  Debtors whether they could include in the proposed Disclosure Statement a most common and customary provision – namely a range of recoveries that the Fire Victim Claimants could expect to receive under the Plan. [Transcript of Mar. 10, 2020 Hearing (the "**3/10 Transcript**"), 40:23; 41:4.] At first, the Debtors' counsel advised the Court that the Debtors believed, "based on [their] internal analysis, that the trust is sufficient to satisfy the claims." [3/10 Transcript, 42:2-4.]

12. When asked by the Court to give further information, however, the Debtors demurred, stating that they were "not guaranteeing anything." [3/10 Transcript, 42:16.] Instead, the Debtors later commented that "[t]he tort claimants' committee has prepared the claims-resolution procedures and the trust documents. That has been within their purview since we commenced the negotiations. They have the best information on this. We have asked them to give us a range--". [3/10 Transcript, 44:20-24.]

13. When pressed at the continued hearing on March 11, 2020, however, the TCC was unable to provide a range of recoveries for tort claimants. [Transcript of Mar. 11, 2020 Hearing (the "**3/11 Transcript**"), 36:2; 37:20.] It admitted that they "don't know what those [total] damages even are. And so, it's impossible to figure that out." [3/11 Transcript, 37:15-20.] Indeed, in discovery propounded by Cal OES to the TCC, the TCC admitted outright that **"$13.5 billion is not enough to fully compensate the fire victims**," even without the claims of FEMA and Cal OES. *See TCC's Reply in Support of Omnibus Objection to Claims Filed by California Governor's Office of Emergency Services* [Dkt. No. 5836] at 2:10-11 (emphasis added).

14. Instead, all the TCC was able to offer was that the Plan will provide a "process" by which the Fire Victim Claims will be adjudicated. "[W]hat these people are voting for is a process for how they're going to get their money." [3/11 Transcript, 37:5-6.] As the Objectants have demonstrated already in the Trust Documents Objection, that "process" is fundamentally flawed and itself violates the Bankruptcy Code. Accordingly, the Plan's distribution scheme violates the absolute priority rule contemplated by section 1129(b)(2)(B)(ii) and would not be allowed.

15. The Plan's treatment of Fire Victim Claims stands in marked contrast to the Plan's treatment of General Unsecured Claims. While Fire Victim Claims will only be paid a portion of their claims (and their payment is dependent on the value of the volatile PG&E stock), holders of

-5-

General Unsecured Claims are to receive payments in cash in the full amount of their claims on the Effective Date. Plan §§ 4.4(a), 4.23(a). The Plan's treatment of Fire Victim Claims also starkly contrasts with the treatment afforded Public Entities Wildfire Claims and Subrogation Wildfire Claims. While Fire Victim Claimants will see their claims reduced by the amount of insurance proceeds they received or will receive, the Plan will pay Public Entities Wildfire Claims in cash regardless of the amount of insurance proceeds such claimants receive. Plan §§ 4.5(a), 4.24(a). In addition, Public Entities Wildfire Claims and Subrogation Wildfire Claims will be paid in cash under the Plan, while Fire Victim Claimants will be paid from assets in the Fire Victim Trust, the value of which is subject to market volatility due to its stock component. *Id.* at §§ 4.5, 4.6(a), 4.24(a), 4.25(b).

16. The Plan's inferior treatment of Fire Victim Claims, as compared to General Unsecured Claims, Public Entities Wildfire Claims and Subrogation Wildfire Claims, all of which are unsecured claims of equal priority, constitutes unfair discrimination in violation of section 1129(b)(1) of the Bankruptcy Code.

C. <u>Ambiguities Exist in the Plan That Should Be Addressed.</u>

17. Certain provisions of the Plan are either potentially inconsistent with other provisions of the Plan, or are drafted expansively so as to create issues where none may exist. Given that these issues may be inadvertent drafting errors, the Objectants reached out to the Debtors to see if these issues could be addressed, and suggested language to address their concerns. As of the date hereof, the Objectants had not yet received a response, thereby making it necessary for the Objectants to raise these matters in this Objection.

18. *Treatment of Administrative Expense Claims*: Section 2.1 of the Plan states that "no Administrative Expense Claims shall be discharged pursuant to the Plan." Yet, the discharge provision in Section 10.3 of the Plan creates a potential ambiguity. While Section 10.3 is prefaced by the phrase: "except as otherwise provided herein" (and that presumably is intended to provide a complete override to the discharge provision in respect of all administrative claims), Section 10.3 also includes a carve-out proviso which, by its terms, is expressly limited to postpetition fire claims

-6-

notwithstanding the general override provision.[3] Attached hereto as Exhibit "A" is a proposed revision to Section 10.3 to address the Objectants' concerns..

19. *Scope of Relief Afforded By The Plan.* The language of several sections in the Plan appears particularly broad-based in terms of scope of relief being provided, most likely to take into account that certain ballots afford non-Fire Victim Claimants the option to provide voluntary releases. *See* Plan, §§ 1.21, 5.9, 6.1, 10.9 (for example, Section 6.1 provides that "[t]he Plan shall be deemed a motion to approve a good faith compromise and settlement pursuant to which the Debtors and holders of Claims against . . . the Debtors settle *all Claims, . . . and Causes of Action*," when Claimants may also hold claims against third parties such as insurers for reimbursement of their damages) (emphasis added). The Objectants acknowledge and appreciate that the Debtors have removed the option to provide a voluntary release from Fire Victim Claimants' ballots as well as added Section 10.9(c) to address the inability to release third parties non-consensually in the Ninth Circuit. However, the language of Section 10.9(c) does not expressly address the broad language of the other Plan sections. The Objectants request that Section 10.9(c) be further clarified as set forth in Exhibit "A".

20. *Inconsistent Rules of Construction and Interpretation.* Subsections (j) and (k) on Page 36 of the Plan have rules of interpretation or construction which could be seen as inconsistent with other provisions of the Plan or Trust Documents governing amendments, and may permit modifications of the Plan in violation of section 1127(b) of the Bankruptcy Code. Accordingly, the Objectants request that Page 36 of the Plan be revised as set forth in Exhibit "A."

## CONCLUSION

21. WHEREFORE, for the reasons set forth above, the Objectants respectfully request that the Court (a) address the Trust Documents Objection to the extent not earlier addressed or otherwise resolved, (b) if the Plan is rejected by the Fire Victim Classes, deny confirmation of the Plan on the basis that it fails to satisfy section 1129(b) of the Bankruptcy Code, and (c) address the

---

[3] Section 10.3 improperly broadens the scope of discharge beyond that permitted by section 1141(d)(1)(A) of the Bankruptcy Code. The reference to "Effective Date" set forth in Section 10.3 of the Plan should be changed to "Confirmation Date," so as to be compliant with section 1141(d)(1)(A) of the Bankruptcy Code.

Case: 19-30088    Doc# 7339    Filed: 05/15/20    Entered: 05/15/20 16:58:40    Page 9 of 13

ambiguities in the Plan as proposed above and as set forth in Exhibit "A" attached hereto.

Dated:  May 15, 2020                    RESPECTFULLY SUBMITTED:

                                        NORTON ROSE FULBRIGHT US LLP


                                        By: */s/ Rebecca J. Winthrop*
                                            Rebecca J. Winthrop
                                            David A. Rosenzweig
                                            Attorneys for ADVENTIST HEALTH

Dated:  May 15, 2020                    REED SMITH LLP


                                        By: */s/ David E. Weiss*
                                            David E. Weiss
                                            Attorneys for PARADISE ENTITIES

Dated:  May 15, 2020                    ARNOLD & PORTER KAYE SCHOLER LLP


                                        By: */s/ Benjamin Mintz*
                                            Benjamin Mintz
                                            Attorneys for AT&T

Dated:  May 15, 2020                    WILMER CUTLER PICKERING HALE & DORR LLP


                                        By: */s/ Craig Goldblatt*
                                            Craig Goldblatt
                                            Attorneys for COMCAST

**EXHIBIT "A"**

1. Requested revisions to Section 10.3 (suggested revisions are bolded and underlined for clarity)::

> Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein **or in Section 2.1 of this Plan**, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the **Confirmation** Date; *provided, however*, that any liability of the Debtors arising from any fire **or any other act or omission** occurring after the Petition Date, including the Kincade fire, that has not been satisfied in full as of the Confirmation Date shall not be discharged, waived, or released. In addition, (a) from and after the Effective Date neither the automatic stay nor any other injunction entered by the Bankruptcy Court shall restrain the enforcement or defense of any claims for fires or other act or omission occurring after the Petition Date, including the Kincade fire or the Lafayette fire in any court that would otherwise have jurisdiction if the Chapter 11 Cases had not been filed and (b) no claims for fires **or any other act or omission** or motions for allowance of claims for fires o**r any act or omission** occurring after the Petition Date need to be filed in the Chapter 11 Cases. Upon the **occurrence of** the Effective Date **and except as provided in Section 2.1 of this Plan**, all such Persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or Interest in the Debtors.

2. Requested revisions to Section 10.9(c) (suggested revisions are bolded and underlined):

> Except as set forth under Section 4.25(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release**, satisfaction, compromise, settlement or discharge of,** a holder of a Claim **or Cause of Action**, in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to **have released, or to effectuate a satisfaction, compromise, settlement or discharge of,** a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.

3. Requested revisions to subsections (j) and (k) of the Interpretation; Application of Definitions and Rules of Construction (suggested revisions are bolded and underlined):

1

(j) any effectuating provisions may be interpreted by the Reorganized Debtors in a manner consistent with the overall purpose and intent of the Plan, all without further notice to or action, order, or approval of the court or any other entity, and such interpretation shall control in all respects **to the extent permitted by Section 12.6 of the Plan**; (k) any effectuating provisions relating to the Fire Victim Claims, Fire Victim Trust, Subrogation Wildfire Claims, or Subrogation Wildfire Trust may be interpreted by the Fire Victim Trustee or the Subrogation Wildfire Trustee, as applicable, in a manner consistent with the overall purpose and intent of the Plan, all without further notice to or action, order, or approval of the court or any other entity, and such interpretation shall control in all respects **to the extent permitted by the Trust Documents**;

Case: 19-30088    Doc# 7339    Filed: 05/15/20    Entered: 05/15/20 16:58:40    Page 12 of 13

# CERTIFICATE OF SERVICE

I, Rebecca J. Winthrop, declare:

I am a resident of the state of California and over the age of eighteen years, and not a party to the within action; my business address is 555 South Flower Street, Forty-First Floor, Los Angeles, California, 90071. On May 15, 2020, I served the within document:

**OBJECTION TO CONFIRMATION AND RESERVATION OF RIGHTS OF ADVENTIST HEALTH, AT&T, PARADISE ENTITIES AND COMCAST TO DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 16, 2020**

By Electronic Service via CM/ECF to all registered participants in this case as of May 15, 2020.

*/s/ Rebecca J. Winthrop*
Rebecca J. Winthrop