1               UNITED STATES BANKRUPTCY COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                         -oOo-

4    In Re:                      ) Case No. 19-30088
                                 ) Chapter 11
5    PG&E CORPORATION AND PACIFIC )
     GAS AND ELECTRIC COMPANY,    ) San Francisco, California
6                                 ) Friday, May 15, 2020
                        Debtors.  ) 11:00 AM
7    _____ )
                                   HEARING ON STIPULATION BY AND
8                                  AMONG THE PLAN PROPONENTS,
                                   THE OFFICIAL COMMITTEE OF
9                                  TORT CLAIMANTS, THE ADVENTIST
                                   HEALTH CLAIMANTS, THE
10                                 PARADISE RELATED ENTITIES,
                                   AT&T, AND COMCAST REGARDING
11                                 FIRE VICTIM TRUST DOCUMENTS
                                   ISSUES FILED BY ADVENTIST
12                                 HEALTH SYSTEM/WEST AND
                                   FEATHER RIVER HOSPITAL [7050]

13
                        TRANSCRIPT OF PROCEEDINGS
14               BEFORE THE HONORABLE DENNIS MONTALI
                    UNITED STATES BANKRUPTCY JUDGE

15

16   APPEARANCES:

17   For Adventist Health        REBECCA J. WINTHROP, ESQ.
     System/West and Feather     (Telephonically)
18   River Hospital:             Norton Rose Fulbright US LLP
                                 555 South Flower Street
19                               Forty-First Floor
                                 Los Angeles, CA 90071
20                               (213)892-9200

21   For Comcast:                CRAIG GOLDBLATT, ESQ.
                                 (Telephonically)
22                               Wilmer Cutler Pickering Hale and
                                 Dorr LLP
23                               1875 Pennsylvania Avenue, NW
                                 Washington, DC 20006
24                               (202)663-6000

25

(973)406-2250 | operations@escribers.net | www.escribers.net

| | | |
|---|---|---|
| 1 | For Paradise Entities: | DAVID E. WEISS, ESQ. |
| | | (Telephonically) |
| 2 | | Reed Smith LLP |
| | | 101 Second Street |
| 3 | | Suite 1800 |
| | | San Francisco, CA 94105 |
| 4 | | (415)543-8700 |
| 5 | For AT&T Corp.: | BENJAMIN MINTZ, ESQ. |
| | | (Telephonically) |
| 6 | | Arnold & Porter Kaye Scholer LLP |
| | | 250 West 55th Street |
| 7 | | New York, NY 10019 |
| | | (212)836-8000 |
| 8 | | |
| | For Official Committee of | JOHN H. MACCONAGHY, ESQ. |
| 9 | Tort Claimants (Proposed | (Telephonically) |
| | Special Counsel): | MacConaghy & Barnier, PLC |
| 10 | | 645 First Street West |
| | | Suite D |
| 11 | | Sonoma, CA 95476 |
| | | (707)935-3205 |
| 12 | | |
| | For SLF Fire Victim | GERALD SINGLETON, ESQ. |
| 13 | Claimants: | (Telephonically) |
| | | Singleton Law Firm, APC |
| 14 | | 450 A Street |
| | | Fifth Floor |
| 15 | | San Diego, CA 92101 |
| | | (619)771-3473 |
| 16 | | |
| | For SLF Fire Victim | RICHARD A. MARSHACK, ESQ. |
| 17 | Claimants: | (Telephonically) |
| | | Marshack Hays LLP |
| 18 | | 870 Roosevelt |
| | | Irvine, CA 92620 |
| 19 | | (949)333-7777 |
| 20 | For North Bay Fire | STEVEN SKIKOS, ESQ. |
| | Victims: | (Telephonically) |
| 21 | | Skikos, Crawford, Skikos & Joseph, LLP |
| 22 | | One Sansome Street |
| | | Suite 2830 |
| 23 | | San Francisco, CA 94104 |
| | | (415)546-7300 |
| 24 | | |
| 25 | | |

(973)406-2250 | operations@escribers.net | www.escribers.net

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17    Court Recorder:                LORENA PARADA/ANKEY THOMAS

                                  United States Bankruptcy

18                                     Court

                                    450 Golden Gate Ave.

19                                     San Francisco, CA 94102

20

    Transcriber:                    COLIN RICHILANO

21                                     eScribers, LLC

                                    7227 N. 16th Street

22                                     Suite #207

                                    Phoenix, AZ 85020

23                                     (973)406-2250

24    Proceedings recorded by electronic sound recording;

    transcript provided by transcription service.

25

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    SAN FRANCISCO, CALIFORNIA, FRIDAY, MAY 15, 2020, 11:00 AM

2                                -oOo-

3        (Call to order of the Court.)

4            THE COURT REPORTER:  -- (Audio begins midsentence)

5    matter of PG&E Corporation.  One moment, Your Honor, while I

6    bring in the parties.

7            THE COURT:  All right.  Do you have any further

8    announcements, Ms. Parada?

9            THE CLERK:  No, Your Honor.  We are recording.

10           THE COURT:  All right.

11           Well, good morning to everyone on the call.  And this

12   is our third try, and hopefully third time is the charm.  As

13   you all know, we're on a new platform using the Zoom and I want

14   to make a couple of comments about the way we're doing it from

15   the Court's point of view.  From our point of view, obviously,

16   it's really different from the CourtCall experience and I'm

17   sure many of you have lots of Zoom experience, but perhaps not

18   in this format.  And it's not even the same as the procedures

19   that, I understand, that Judge Donato has followed, at least on

20   one prior PG&E hearing and perhaps next week.

21           So let me just give you some background.  We have this

22   program or the court system, but it's really a Zoom product.

23   And so the Zoom terminology uses the words panelists and

24   attendees.  So you who are on the screen, and I see seven or

25   six people, seven, plus me, you are, for Zoom purposes,

PG&E Corp. And Pacific Gas And Electric Co

1    described as panelists.  Funny thing to call you as a lawyer

2    appearing in court for your client, it's more like being on

3    Jeopardy, but that's the Zoom terminology.  And everyone else

4    who is listening or watching, or at least watching for sure,

5    the term is attendees.  And I want to make sure you're clear.

6    We found, from experience and testing, including Judge Hammond,

7    who's done this two or three times in another matter, that

8    there's more confusion if we have too many people in the

9    virtual courtroom, or just turn that into Zoom language, too

10   many panelists.

11        So I know we have dozens and dozens, if -- well,

12   according to my count on my screen, over 200 people observing

13   as attendees, or some number, and at least at the moment, just

14   a small number of you are on the screen for me and I see you as

15   panelists, but obviously I see you as lawyers preparing to

16   present your case.

17        When you present your case, you will be featured on

18   the screen for my purposes, but when you're finished, perhaps

19   in this case it won't be the same, but we will move you out of

20   the virtual courtroom, back to the attendee category.  It

21   doesn't change anything; you'll see the same thing and hear the

22   same thing -- and then someone else who is scheduled to be

23   heard will be moved up by the courtroom deputy, Ms. Parada, to

24   panelist status.  And if, at the end of the hearing, there's a

25   need for me to consider calling on or letting someone else

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1   speak, we'll deal with that as we come to that.  For now,

2   because we have a particular agenda and I have given you a

3   particular assignment for speaking, I'm going to stick with

4   that until we have to make a change.

5        I'm going to make an announcement -- that's the end of

6   the Zoom announcement -- an announcement that is substantive.

7   On Tuesday, I heard the arguments on the motion to designate

8   the ballots.  I am going to just tell you now, I've made up my

9   mind, I'm going to deny that motion.  I've concluded that there

10  was no violation of Rule 2019 and there was no violation of

11  Bankruptcy Code Section 1126.

12       We've been very busy the last few days, as I'm sure

13  you have, and I intend to issue a written decision explaining,

14  in more detail than one sentence, my reasoning, but for those

15  of you that have been following this case and obviously feel

16  strongly about this, that is the ruling.  It's not an

17  appealable order at this point.  It's not an order at this

18  point.  It's just an announcement.  And I am not inviting any

19  discussion on the subject; I'm just giving you the news, and

20  but for a few problems that we were dealing with, not the least

21  of which is an awful lot of reading that Ms. Winthrop and Mr.

22  MacConaghy and others gave me in the last two or three days, I

23  just haven't been able to turn things around as quickly.

24       And I'm going to make a couple of other general

25  announcements about today's motion.  The briefs are extensive

PG&E Corp. And Pacific Gas And Electric Co

1    and I compliment the writers, but I want to make sure that we

2    focus today on a couple of things that, in my mind, this is not

3    about today and I urge counsel not to focus on these issues.

4    The first was that this is not about the integrity or the

5    qualification of Justice Trotter or Misiani (phonetic).

6    There's a lot of inks basted on that subject.  Their

7    reputations are not in doubt, and to the extent that there's at

8    least a question of the rules under which they will be

9    operating, I certainly don't discourage any discussion about

10   that.

11          This is also not about the history of the negotiations

12   that led to the restructuring agreements and, particularly, the

13   agreement between the TCC and the fire victims and the debtors.

14   And again, the briefing is adequate and it goes into great

15   detail, but I want to focus not on the history, but rather on

16   what I'm supposed to do about it given the challenges that have

17   been made by a small group of objectors; small in number, but

18   large in dollars.

19          This is also not about revisiting the tragedies of the

20   fires:  2015, 2017, 2018.  I am painfully aware, as all of you

21   are and all of your clients are, of the tens of thousands of

22   humans and families and people, and where lives were

23   devastated.  And to the extent that those questions have been

24   addressed in the briefs, they're fine.  It's there and it's

25   history and we can't change it, but I don't want to waste time

PG&E Corp. And Pacific Gas And Electric Co

1  focusing in on it today.  Like it or not, the principle

2  corporate parties that are represented by their counsel today

3  are also victims of the fires.  And to the extent that some

4  might say, well, a corporation like Comcast or a big hospital

5  like Adventist is not the same.  Well, it is the same for

6  purposes of our analysis here today.  Again, like it or not,

7  the fire victims who lost their lives or their families or

8  their homes, or the corporate entities that lost substantial

9  dollars, they are in the same class for this bankruptcy and

10  under the plan, the issues are the same.  So I urge you not to

11  focus on those issues.

12          I am not going to try to interfere with the arguments

13  that counsel presented, but I would like to at least ask the

14  principle speakers to focus on a couple of the following

15  issues, and I've kind of identified what looked like the

16  big-ticket items, from my point of view.  They're all big-

17  ticket, but the major ones appear to be, is it proper or fair

18  for a procedure that will lack any judicial oversight.  It's

19  not personal to me.  It's not Article III versus Bankruptcy

20  Court versus State Court.  It is no judicial oversight, and

21  certainly Mr. MacConaghy, representing the TCC, has focused on

22  the difference, well, his difference between the treatment of a

23  claim and the impairment of a claim.  And so I -- again, I'll

24  invite Ms. Winthrop and the others to tell me why a procedure

25  that has been, we assume, tentatively accepted -- I don't know

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1  what the votes are, but accepted by the class fire victims, why

2  the will of those majority, if they are the majorities,

3  shouldn't be honored, and therefore, that means that the so-

4  called judicial oversight gives way to what is a consensual

5  process, nonjudicial, where the impaired claims are what they

6  are, but the treatment will be in accordance with the trust.

7      Second issue that seems to me to be heavily dealt with

8  in the briefs is the collateral source doctrine or, reduced to

9  its simple terms, the question of whether there's double

10  payment or whether there's proper credits to avoid the issue.

11  We're here to focus on the legal authorities that have been

12  cited: does the Ivanhoe case control, or does the California

13  cases that Mr. MacConaghy has cited?  I'm not going to name

14  them all; you know what they are.

15      And I guess I would also ask Mr. MacConaghy, when you

16  make your argument, to focus on the refinement of what happens

17  when an insurer is obligated to pay but hasn't paid or can't

18  pay?  I hate to be Mr. Cynic, but what if an insurer, an

19  insurance company, goes under, goes out of business, goes

20  insolvent and is unable to pay its insured?  What does that do

21  to the formulate and the analysis in the trust that says that

22  there must be a credit for payments that have been made or

23  expected to be made?

24      And then turning back, at least, to a slight

25  refinement of the question of oversight, I would ask if Mr.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    MacConaghy, again, you've painted a gloomy picture that this

2    poor judge, or some other poor judge might, under the

3    objectors' scheme, have to deal with 75,000 claims.  I don't

4    really think that is likely to happen, and so I need to hear

5    from both sides as to what would realistically happen if the

6    process that is contemplated by the trust runs its same course.

7    It would seem to me that hundreds, if not thousands, of people

8    or claims will be resolved without ever triggering any need to

9    have judicial oversight.

10            The final question, then, is just -- or not a

11   question.  It's what influences me, and I'm trying to keep in

12   mind here, is this notion that same treatment is not the same

13   as same outcome.  And I would ask the objectors to focus on why

14   they believe that the structure that has been put together by

15   the proponents of today's procedure shouldn't be permitted to

16   go forward, notwithstanding the fact that there may be

17   different outcomes.

18            So that's the end of the point I'm going to make by

19   way of opening comments.  Ms.  Winthrop, I've asked you to --

20   or identified you as the lead arguer.  Have you and your

21   colleagues divided up your time and figured out how to reserve

22   it and share it?

23            MS. WINTHROP:  Good morning, Your Honor.  Rebecca

24   Winthrop on behalf of the Adventist Health claimants.  We have,

25   and I will first turn it over to Mr. Goldblatt, who promised to

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1   lead the charge, and he will explain how we're going to divvy

2   up the time.

3           THE COURT:   Thank you.

4           Good morning, Mr. Goldblatt -- or good afternoon,

5   perhaps for you.

6           MR. GOLDBLATT:   Thank you, Your Honor.   Craig

7   Goldblatt representing Comcast.

8           On behalf of the ad hoc group of business claimants,

9   we very much appreciate the opportunity to be heard on these

10  issues and the direction that the Court just provided with

11  respect to the matters before you today.

12          With the Court's permission, I will spend fifteen

13  minutes addressing the question whether the plan may lawfully

14  deprive creditors of the right to have this Court resolve

15  disputes related to claims allowance.   Then Mr. Weiss, on

16  behalf of the Paradise Entities and Ms. Winthrop on behalf of

17  Adventist, will address for a total of fifteen minutes the

18  deductions for potentially available insurance.   Next, Mr.

19  Mintz, on behalf of AT&T, will address for ten minutes the

20  remaining issues in our objection.   And if my math is right,

21  that should leave five minutes for rebuttal, which Mr. Mintz

22  will handle, with respect to all of the issues in our group's

23  objection.   And I believe along the way we will address the

24  points that Your Honor raised at the outset.   So with the

25  Court's permission, I'd be happy to begin.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    THE COURT:  I'm going to let you begin, but I'm very

2   skeptical that good lawyers would reserve all of five whole

3   minutes for rebuttal, but go for it.  We'll see what happens.

4    MR. GOLDBLATT:  Okay.  Well, thank you, Your Honor.

5    So turning to the merits of the first issue.  As we

6   set out in our objection, the language of Sections 501 and 502

7   of the Bankruptcy Code is clear.  Section 501 provides for the

8   filing of proofs of claim.  Section 502(a) says that a proof of

9   claim is deemed allowed unless it is objected to, and Section

10  502(b) says that when such an objection is filed, the Court

11  shall determine the amount of such claim as of the date of the

12  filing of the petition.

13    The trust procedures that have been filed would do

14  precisely the opposite.  They leave the determination of

15  whether a claim that was validly filed with this Court is

16  entitled to payment, to the discretion of the Fire Victim

17  Trust.  And as Your Honor said, our point in this regard does

18  not at all relate to the integrity or good faith of the

19  Trustee.  This is a structural question, not about the

20  individuals who are administering the trust, in the least bit.

21    The trust procedures state that the Trustee

22  determination will be final, binding, and nonappealable, and

23  his --

24    THE COURT:  Sort of like an arbitrator, what an

25  arbitrator would do, right, in an arbitration?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    MR. GOLDBLATT:  Correct, although the Federal

2  Arbitration Act is quite clear that such an arbitration

3  requires the consent of the parties to the arbitration and here

4  the Trustee's determination is not subject to review by any

5  court.

6    THE COURT:  Is it the consent of the majority if the

7  plan is voted up?

8    MR. GOLDBLATT:  Our view is that the answer to that is

9  no.  And if I may -- if I may explain why?

10    First of all, we have cited to several cases that have

11  found plans to be unconfirmable, as a matter of law, when they

12  operate to bar a creditor's ability to bring a dispute

13  regarding claims allowance to the Bankruptcy Court.  And those

14  include the Filex (phonetic) decision by the Bankruptcy Court

15  of the Southern District of New York, and the Butcher case in

16  the District of Colorado.

17    Now, we recognize that this case, as Your Honor

18  suggested, involved an exceptionally large number of claims,

19  but this is by no means the first mass tort bankruptcy case

20  that has been filed.  I have spent, myself, a large portion of

21  the past twenty years involved in mass tort bankruptcy cases,

22  beginning with the Western Asbestos case I filed in this

23  district in 2002, and there is a tried-and-true path that

24  emerges from those cases; one that traces its roots back to the

25  Johns-Manville bankruptcy in the 1980s.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    In every mass tort bankruptcy case of which I am

2  aware, with one exception that I will address in a moment, the

3  plans of reorganization have established procedures much like

4  those set out here, with the exception that they have permitted

5  a claimant that is dissatisfied with the result of the process

6  to access a judicial determination with respect to the

7  allowance of their claim.  And what that experience shows, in

8  response to one of the questions Your Honor's raised at the

9  outset, is that virtually every claim gets resolved in that

10  process.  Perhaps a handful trickle through to the courts, but

11  history shows that it is no more than that.

12    Now, the TCC claims that the process that we seek

13  would result in this Court being forced to review 80,000 fire

14  victims claims and delayed payments to victims by years.  The

15  actual experience of mass tort bankruptcy cases that now traces

16  back more than thirty years is emphatically to the contrary.

17    THE COURT:  This is the first one like this, right?

18  The mass torts that we've had, that you've identified, are --

19  well, you go ahead.

20    MR. GOLDBLATT:  So, Your Honor, this is the first case

21  of, to my knowledge, certainly of this magnitude, that involves

22  wildfire claims.  The kinds of claims that have been addressed

23  successfully, however, range from asbestos claims to the breast

24  implant claims to silica claims to a whole array of mass torts,

25  each of which involve individual determinations of each

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    claimants' damages.

2           I should say also, Your Honor, that on behalf of

3    Comcast, at least, we would certainly hope and expect that our

4    claim would be resolved through the mediation process

5    established through the trust procedures.  But in the unlikely

6    event that those efforts were unsuccessful, we believe that we

7    are entitled by law to come to this Court for an adjudication

8    for our proof of claim.

9           Such a process is consistent with legal requirements.

10   After all, any court could decide to exercise its discretion in

11   favor of directing the parties to engage in mediation.  But if

12   those efforts do not succeed, a court cannot deprive a litigant

13   that has validly invoked the Court's jurisdiction, whether by

14   filing a complaint in a district court or by filing a proof of

15   claim in a bankruptcy court, of a judicial adjudication of that

16   claim.

17          Now, I'd like to turn to the question that Your Honor

18   posed a moment ago and that the TCC makes in response to that

19   argument, which is, in substance, depriving us of our right to

20   a judicial adjudication of our claim is just another form of

21   impairment, the kind of impairment that a class of creditors

22   can impose on others in that class as long as the class votes

23   to accept the plan by the requisite majority.  And, Your Honor,

24   that argument is simply wrong as a matter of law, and let me

25   explain why.

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1        Under the Bankruptcy Code, impairment is a planned

2   treatment of an allowed claim that is anything other than

3   payment in full on the effective date or permitting the claim

4   to ride through the bankruptcy so that it can be asserted

5   against the reorganized debtor afterwards.  Sections 1123(3)

6   and (4) of the Bankruptcy Code make this point clear.  What the

7   Code means by impairment is how the plan treats allowed claims.

8        THE COURT:  I assume you've read my decision in this

9   case in the post-petition interests docket, right?

10        MR. GOLDBLATT:  Yes, Your Honor.

11        THE COURT:  So there's a distinction between what the

12   plan does and what the Code does.

13        MR. GOLDBLATT:  Correct.  That distinction, of course,

14   draws on the Third Circuit decision in PPI and the Fifth

15   Circuit decision in Ultra, and those decisions are fully

16   consistent with the position that we're describing now, which

17   is you start with a question of what is your allowed claim.  To

18   be sure, there are ways in which the Code might take the

19   nonbankruptcy allowed claim and reduce it.  In PPIE, it had to

20   do with the 502(b)(6) cap.  In your decision, it was by the

21   disallowance of unmatured interest.

22        In any event, once the claim is allowed, by starting

23   with nonbankruptcy law then addressing what the plan does, what

24   the Code -- what a plan does by impairment is limited to the

25   treatment of allowed claims.  And the process of determining

PG&E Corp. And Pacific Gas And Electric Co

1    the amount of the allowed claim is logically antecedent to the

2    question of impairment.

3             THE COURT:  I understand.  And you made that point in

4    the brief that as though -- it's not a temporal difference, but

5    it's a logical difference.  But why is that -- isn't that

6    circular in its reasoning?  Why can't we say, or I say, that

7    your clients claim will be impaired for various reasons,

8    including the fact that it will be adjudicated through a

9    nonjudicial process?  That is an impairment.  What if there was

10   only one member of the class and the plan said that's the

11   treatment, even if you vote against it?

12            MR. GOLDBLATT:  So, Your Honor, that argument simply

13   proves too much.  The logic of the TCC's position, and with

14   respect of the suggestion Your Honor just made, would be that

15   if a majority of the creditors of a class voted in favor of a

16   plan that said claims allowance shall be determined by a random

17   number generator, that would comport with the Bankruptcy Code.

18   That is simply incorrect.

19            There are things that a majority may bind a minority

20   to, and other rights of individual claimants that are not

21   subject to majority control.  And certain statutory protections

22   that the Code provides are outside the scope of majority

23   control.  The rights given under Section 501 and 502 to a

24   claims allowance process that comports with the law is not a

25   kind of right that a majority can vote away over a dissenting

PG&E Corp. And Pacific Gas And Electric Co

1    minority creditor.

2         Every creditor is entitled to a claims allowance

3    process that proceeds in accordance with the terms of the

4    Bankruptcy Code.

5         THE COURT:  So let's assume that you're correct and

6    I'm correct that it's not going to be 75,000 claims in the

7    Bankruptcy Court; it might be 7,500, it might only be 75, but

8    how do we fix it going forward?  In other words, if I adopt

9    your rule, your theory here, isn't that the end of the game and

10   doesn't that just throw the entire process into a tizzy?

11   Because there is no predicting how it will come out.

12        MR. GOLDBLATT:  So no, Your Honor.  We think it's as

13   simple as adding a sentence to the trust procedures that

14   provide that the determination is subject to review in this

15   Court.  And as I understand the TCC's position they argue --

16   and I believe Ms. Winthrop will address this point, they argue

17   that changes with respect, certain changes with respect to

18   insurance would be a material change in the plan that would

19   require starting over.  But I don't think even the TCC contends

20   that subjecting the trust's determination to this Court's

21   review is the kind of material change that would require

22   resolicitation.

23        THE COURT:  Well, that's the --

24        MR. GOLDBLATT:  So I don't think it requires starting

25   from scratch.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1       THE COURT:  It would be interesting if they argue

2  that.  I'll invite any speaker to address that issue.  Okay.

3       Sorry.  You were going to -- you said that there's one

4  case that's different, and I presume you mean the Takata case?

5       MR. GOLDBLATT:  That's correct, Your Honor.  The only

6  case, to my knowledge, having done mass tort cases now for more

7  than twenty years, the only case that I know of.  And so none

8  of the cases cited in the briefs, including Quigley and G-1

9  Holdings, Dow, et cetera, those cases all provided, as we would

10  suggest appropriate here, outlet for the option of review of

11  the Trustee's determination to the Court.  Takata did that

12  mostly, but there was a narrow class of claims in which, in

13  Takata, the claims were not subject to judicial review.

14       The most important thing, Your Honor, to know about

15  Takata is, in that case, no claimant objected to the

16  confirmation of the plan on the ground that it improperly cut

17  off their right of access to the bankruptcy court for a claims

18  allowance determination.

19       And it is undoubtedly true, Your Honor, as Your Honor

20  doesn't need me to tell you, that if one party files a paper in

21  a bankruptcy court, that will effect another party's rights and

22  the effected party does not object to the treatment that is

23  proposed, a court's order can do just about anything, but when

24  such an order is entered without objection and without the

25  issue even being brought to the attention of the bankruptcy

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    court, it surely does not stand for the proposition that the

2    law permits that outcome to be imposed in some other case, on

3    some other party that does raise a timely objection to what is

4    proposed.

5         THE COURT:  So you're saying that, if somebody shows

6    up in the Takata case now and says, hey, I want a jury right --

7    well, I thought there was -- I thought there was a narrow

8    opportunity to get there in Takata?

9         MR. GOLDBLATT:  There was for certain classes of

10   claims and not for others, but let me be really clear, Your

11   Honor, and this is the issue in the In re Twins case that was

12   cited by the TCC.  I am not saying that once your confirmation

13   order becomes final and unappealable that someone who doesn't

14   show up today or at confirmation to object to it can bring a

15   collateral challenge down the road.  That's the issue at In re

16   Twins.

17        And look, if we had slept on our rights and this plan

18   was confirmed unnoticed to us and we hadn't raised the issue

19   and we showed up later and said, gee, this is wrong.  We'd

20   really like to have the right to go to the Court.  The

21   confirmed plan that has become final an nonappealable is a

22   binding and enforceable judgement.  That much is clear, and

23   it's from a series of cases.  So we're not saying that anyone

24   can show up at any time and complain about a plan.  It's

25   incumbent on a party who has an issue with what a plan will do

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1   to their rights to raise a timely objection.

2          THE COURT:  But does that --

3          MR. GOLDBLATT:  Well, does that deflate --

4          THE COURT:  -- does that mean that if I'm persuaded by

5   your argument that Comcast and AT&T and Adventist and the other

6   number, a small number of people, who objected on this motion,

7   they're the only ones that are in and have an opportunity?

8          MR. GOLDBLATT:  So, Your Honor, our suggestion, simply

9   as a matter of fairness, is that the plan be amended to give

10  this right to everyone.  That said, if the plan were amended to

11  give that right only to us, I don't think that we would have

12  standing beyond that to complain that the plan treats other

13  people unfairly.  So that wouldn't be an unheard of form of

14  relief.

15          We're not ask -- we don't want to be treated better

16  than other people.  We're not asking for special treatment.  We

17  agree with the proposition that, as a general matter, a plan

18  should provide equal treatment to the creditors within a class.

19  So we aren't asking for something better and different from

20  what others provide, and we don't think it would cause great

21  upset or delay to provide this right to all creditors who are,

22  as Your Honor said at the outset, regardless of the nature of

23  the wildfire injury, all fundamentally creditors who have

24  suffered damages of the same character and hold claims of the

25  same character against the debtor's estate (sic).

PG&E Corp. And Pacific Gas And Electric Co

1          THE COURT:  Okay.  Mr. Goldblatt, by my count, it's

2    time to pass the baton over to Mr. Weis.

3          MR. GOLDBLATT:  Terrific.

4          THE COURT:  (Indiscernible).

5          MR. GOLDBLATT:  Thank you, Your Honor.  I appreciate

6    that.

7          THE COURT:  Thank you for your time.

8          And let me ask you, Mr. Goldblatt, I'll just use you

9    as the test, are you hearing -- do you hear me all right?  Are

10   you getting loud and clear?

11         MR. GOLDBLATT:  Yes, I can.

12         THE COURT:  Okay.  All right.

13         Mr. Weiss or Ms. Winthrop, which one?

14         MR. WEISS:  Good morning, Your Honor.  David Weiss

15   from Reed Smith, on behalf of the Paradise Entities, and I also

16   hear you just fine, too.

17         I'm going to address some of the insurance issues that

18   have been raised in the briefing and then I will turn it over

19   to Ms. Winthrop.  I will be addressing the collateral estoppel

20   issues and then Ms. Winthrop will be addressing the other

21   issues.  But before I get into that, I think some level-setting

22   is in order, with respect to what it is we're asking for and

23   what we think the current trust documents, as written, provide

24   for.

25         First of all, what we want is for the trust to

PG&E Corp. And Pacific Gas And Electric Co

1    properly apply nonbankruptcy state law and bankruptcy law to

2    the treatment of insurance that are maintained by all fire

3    victims.  And we think that the proper treatment of insurance

4    benefits all fire victims, whether they're small or large

5    businesses, public entities, nonprofits that provide essential

6    services, like some of our clients, and even individual

7    homeowners.  And so the fundamental principle that we espouse

8    is that claims can be reduced by actual payments that are

9    actually received from an insurance company, but there's no

10   basis to reduce claims by some amount attributed to insurance

11   that has not been paid and may never be paid to a claimant by

12   an insurer.  One example that Your Honor gave earlier was an

13   insolvent insurer that can't pay a claim, but there are a lot

14   of -- there are other reasons why insurers will not pay claims

15   or don't pay claims, and we shouldn't have our claims reduced

16   when we're not getting paid by the insurer.

17            Now, what the TCC --

18            THE COURT:  Well, what is the -- what if the insurance

19   company's just playing hardball because the accrual of federal

20   interest is lower than state law, or whatever, some not very

21   substantive reason, but they just take too much time, then the

22   Trustee shouldn't lose the benefit of the offset on that

23   setting, should he?

24            MR. WEISS:  If the insurer is playing hardball, Your

25   Honor, and is denying a claim or refusing to pay all or part of

PG&E Corp. And Pacific Gas And Electric Co

1    a claim for good faith reasons, bad faith reasons, the fire

2    victims should not be penalized by that.  Insurance companies

3    deny claims all the time and there is disputes about claim

4    denials and we believe that there should be a commercially

5    reasonable process by which the fire victims pursue insurance

6    and try to recover as much as possible, and we all have an

7    incentive to do so.  But at the end of the day, and there

8    should be an end of the day, if we haven't been successful in

9    recovering insurance, then we shouldn't have our claims reduced

10   by unpaid insurance amounts, and that's the fundamental

11   principle.

12        So what the TCC says in their brief regarding the

13   trust documents and insurance we believe does not match what

14   the trust documents actually say.  So what they say at page 17

15   is that, quote, all fire victim claims must be reduced by

16   amounts that have been paid, or will be paid, under insurance

17   policies that cover those damages.

18        They also said, Your Honor, to get to your point, in

19   their brief that the Trustee cannot disregard an insurance

20   company's coverage denial.  And we agree that there should be a

21   credit for amounts that are actually paid, and that's what

22   their case law supports, and I'll get into their cases in a

23   bit, but that isn't what the trust documents provide.

24        So what the trust documents actually say, Your Honor,

25   is that the Trustee can actually reduce claims by the amount of

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1  insurance limits, whether the insurance is paid or not.  They

2  can second-guess the insurance company's coverage positions, so

3  if the insurance company denies coverage and the Trustee wants

4  to say that that's wrong, they can disregard that.  If the fire

5  victim assesses coverage and determines, after a good faith,

6  reasonable effort that they don't think they're going to

7  recover anymore, that can be disregarded.  Or if the Trustee

8  believes that the victim didn't try hard enough to go after

9  insurance, they can use that to reduce the claim, or they can

10  do any combination of those things.

11        So what the trust documents allow is for the Trustee

12  to deduct from a fire victim's claim not just amounts that are

13  actually paid, which we agree is acceptable, but the trust

14  documents also allow the Trustee to deduct amounts the Trustee

15  deems should be, quote, payable or otherwise owed to the fire

16  victim under a policy, and the Trustee can reduce the claim for

17  any unpaid insurance if he determines in his, quote, sole and

18  absolute discretion that the fire victim did not use reasonable

19  efforts to obtain available insurance.  And the only

20  circumstance that the trust documents say is, quote, reasonable

21  efforts is if the insurer pays the victim the full amount of

22  the covered loses or the available policy limits.  And that's

23  it, period.  So anything short of getting full recovery from

24  your insurer, the Trustee can say is not reasonable efforts.

25        The trust agreement also says that the Trustee --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    THE COURT:  Well, excuse me.  Mr. Weiss?

2    MR. WEISS:  Yes.

3    THE COURT:  Again, give me the practical fix.  What's

4  the practical fix?

5    MR. WEISS:  So the practical fix, Your Honor --

6    THE COURT:  You made it clear you're not after double

7  recovery, so we're clear on that.

8    MR. WEISS:  Right.  We're not after double recovery.

9  The practical fix, which is one that we had proposed, is number

10  one, we agree that if we recover amounts from insurer, our

11  claims can be reduced.

12    THE COURT:  Right.  That's easy.

13    MR. WEISS:  Number two, we agreed that there can be a

14  requirement that we take commercially reasonable efforts to go

15  after insurance, and there should be some objective guidelines

16  or guardrails around what that means.  And after a period of

17  time, after taking commercially reasonable efforts, if we can't

18  recover anymore, then that should be the end of it and no more

19  should be reduced from our claim.  If we do recover more, then

20  that credit goes against our claim.

21    THE COURT:  Well, all right.  So let's take an

22  extreme.  Again, I'll stick with a hypothetical.

23    MR. WEISS:  Um-hum.

24    THE COURT:  Let's say your client is owed -- has

25  damage for 50,000 dollars and the insurer commits to pay you

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    40,000 dollars, when, presumably, you have a claim against the

2    trust for ten.

3         MR. WEISS:  Um-hum.

4         THE COURT:  But then the insurance company only pays

5    half of that forty and then it goes into insolvency.  Do you

6    really think the Trustee would have any basis to deny you at

7    least the additional entitlement to the 20,000 that you are

8    legally no longer able to get?  You following?  I hope I

9    haven't lost you on my hypothetical, have I?

10        MR. WEISS:  I don't think that the trustee should have

11   a basis to deny that.

12        THE COURT:  But is there any reason to believe the

13   Trustee -- I mean, look.  What if a judge says I don't like the

14   color of your tie; I'm not going to allow you your 20,000?

15   That's not what judges do, but what I'm saying is, why don't I

16   assume that the Trustee will do the right thing, also?  Why

17   shouldn't we assume that?

18        MR. WEISS:  Because that's not what the trust

19   documents say, Your Honor.  I don't have any -- as you

20   indicated at the beginning of the hearing, we're not impugning

21   the Trustee or the good faith of the Trustee.  But what the

22   trust documents say is that -- the trust documents actually

23   require the Trustee to consider, among other things, the

24   amounts that could or should have been paid under a policy of

25   insurance.  So it doesn't say that they can consider that or

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    ought to take into account insolvency.  It actually says shall

2    consider amounts that should have been paid.  So should have

3    been paid, if you take that to extremes, could mean an amount

4    that, but for the insolvency, they should have paid, and that's

5    what the documents say.

6         So what the documents allow the Trustee to do, and it

7    wouldn't be impugning the Trustee if they did this because

8    that's what it says they shall do, the Trustee can ignore

9    amounts that haven't been paid at all for whatever reason, like

10   you said, the insolvency, and they don't have to take into

11   account just the amounts that are actually paid.

12        THE COURT:  I need to -- I need to interrupt you only

13   to tell you --

14        MR. WEISS:  Sure.

15        THE COURT:  -- that it's time to share your time with

16   Ms. Winthrop.

17        MR. WEISS:  Okay.  I wanted to go quickly into the

18   Garbel (phonetic) and Ferraro (phonetic) cases --

19        THE COURT:  Okay.

20        MR. WEISS:  -- that are cited in the TCC's brief

21   because the only thing that those cases stand for is that

22   amounts actually paid are no longer part of the collateral

23   source rule, but they don't say anything about unpaid amounts,

24   and unpaid amounts are not subject to subrogation by the

25   insurance company.  So those unpaid amounts, under Garbel and

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    Ferraro, cannot be deducted from a claim or from a victim's

2    recovery against a tortfeasor, and those cases make that very

3    clear.  So those cases, we believe, actually support our

4    position and don't support the TCC's position, Your Honor.

5              THE COURT:  Okay.

6              MR. WEISS:  So I'll turn it over to Ms. Winthrop and

7    if --

8              THE COURT:  Okay.  Thank you.

9              MR. WEISS:  -- and if there's any rebuttal, Mr. Mintz

10   will cover it later.

11             THE COURT:  Okay.  Ms. Winthrop?

12             Thank you.

13             MS. WINTHROP:  Good morning, Your Honor, Rebecca

14   Winthrop on behalf of the Adventist claimants, and I appreciate

15   you acting as our stopwatch for the --

16             THE COURT:  But I'm not very accurate.  The Chief

17   Justice is much more accurate than I am when he does it.

18             MS. WINTHROP:  We need the one that hit the button and

19   let it launch.

20             My part, Your Honor, is to address the issue of

21   Ivanhoe and how the -- frankly, the lack of treatment of

22   Ivanhoe in the TCC's brief.  Because on the one hand they

23   assert that Ivanhoe doesn't apply because it's all about state

24   law and the collateral source rule and then on the other hand

25   it says, oh, by the way, we ignored two Ninth Circuit cases.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    So first of all, we do believe that the collateral

2    source rule does address what can and cannot be applied against

3    the allowed amount of our claim; that's fully briefed.  But we

4    also have further support for our position in the Ivanhoe case,

5    which we believe is binding precedent on the treatment of

6    payments of third-party nondebtors.  And basically, the amount

7    of our claim is allowed in the full amount, without any

8    deduction, but recoveries from all sources cannot exceed one

9    hundred percent of our claim to avoid double recovery.  And we

10   aren't trying to get double recovery.

11   And I know in a minute you're going to ask me is, so

12   what's my solution?  This is an accounting issue, Your Honor.

13   We agree that actual payments should be deducted from our

14   claim.  A lot of this information is already available through

15   information they're getting form the subrogation claimants.  So

16   it's an accounting function that, by the time they finish doing

17   each level of distributions on a pro rata basis, that they can

18   reach out to the claimant and determine, along with other

19   important information they need for distributions, how much has

20   been paid.  So we believe that this is an accounting function,

21   not a substantive rights function.

22   THE COURT:  I wish it were that simple.  I don't

23   think -- just tell me again, why is it that easy?  I'm not

24   following you.

25   MS. WINTHROP:  I'm sorry, I couldn't hear you.  I'm

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1  sorry.

2          THE COURT:  I'm just not following how I can treat

3  this as an accounting function, which sounds like an easy fix.

4          MS. WINTHROP:  Your Honor, because there are going to

5  be a number of distributions.  At each point they can determine

6  what is the amount that has been paid.  Information is going to

7  be obtained from, I think, something like ninety-four percent

8  of all insurers who are contributing to the -- or are part of

9  the subrogation settlement.  They will be able to provide

10  information and, I believe, have already been providing

11  information as to the amounts already paid, and that we have

12  come up with several different mechanisms to suggest to them as

13  a reasonable time for us to pursue our insurance carrier.

14          THE COURT:  Okay.

15          MS. WINTHROP:  So just to continue as to -- Your Honor

16  asked for a question as to why Ivanhoe -- what you should do

17  with Ivanhoe.  We believe that Ivanhoe is binding precedent on

18  this issue because in bankruptcy the policies are different.

19  And I think Judge Carlson said it best in Del Biaggio when he

20  says, "Ivanhoe values the quality of treatment by debtor's

21  estate above the quality of overall outcomes among creditors

22  having different rights against third parties.  This choice is,

23  at heart, a question of federal bankruptcy law."

24          So we believe that Ivanhoe's principles govern.  It's

25  been applied in multiple situations as part of the -- as part

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1  of the bankruptcy process, and the only response to this from

2  the TCC is to point to two Ninth Circuit cases that are not

3  even in the bankruptcy context.  They are in a nonbankruptcy

4  receivership case, which involves different principles as

5  explained by Judge Carlson in Del Biaggio.

6       More importantly, neither SEC re: Capital or equity

7  funding actually support the TCC's position because they

8  contemplated that only amounts actually received get applied

9  against the claimant seeking recovery in both cases.  And in

10  fact, in Capital, they actual applied far less than the amounts

11  actually received.  And certainly, neither case stands for the

12  proposition -- and no case has been cited in all of those

13  thirty pages that stands for the proposition that the Court can

14  deduct from the allowed amount of the claim more amounts than

15  those actually received.

16       And then, finally, with respect with the final area of

17  importance to understand is the big point in the TCC's response

18  is that this is all to avoid double payment by the estate.

19  We've got one pot for the subros, we've got one pot for the

20  victims, and if we allow anything different to occur, then it

21  would allow for double payment.

22       Well, in the case of Adventist Health and any other

23  one that is insured by an insurer who is not part of the TCC's

24  settlement, there can be no double recovery because we aren't

25  getting -- our insurer is not getting any distributions.  They

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1   didn't file a proof of claim at all.  Therefore, there is no

2   problem and no issue with double payment in the case of

3   Adventist Health and anyone else who is insured by insurers

4   that are not part of that pot.

5            And then finally, I'll just address briefly the issue

6   of your concern about the trust documents permitting disparate

7   treatment among claimants.  I believe that the TCC is -- they

8   again argue that the trust can impair the amount of an allowed

9   claim by deducting any potential insurance recoveries.  That is

10  not correct.  It's not permitted by Ivanhoe.

11           And I think what they're doing is conflating the

12  allowance of a claim with the distribution on account of that

13  claim.  And a majority cannot artificially reduce an allowed

14  amount of claimant's claims.  The Bankruptcy Code and Ivanhoe

15  do not permit that.

16           THE COURT:  Okay.  I think now your time is up, and

17  Mr. Mintz has the last ten minutes, okay?

18           MS. WINTHROP:  Thanks, Your Honor.

19           MR. MINTZ:  Thank you, Your Honor.

20           MS. WINTHROP:  I appreciate your time.

21           THE COURT:  Ms. Winthrop, if you have one more thought

22  or so, go ahead and make it if you'd like.

23           MS. WINTHROP:  Your Honor, if you're concerned about

24  the revoting issue, I can certainly address that.  If you're

25  not concerned about the revoting issue, I won't.

PG&E Corp. And Pacific Gas And Electric Co

1          THE COURT:  Okay.  Let's not worry about it now.

2          MS. WINTHROP:  Okay.

3          THE COURT:  Mr. Mintz, I believe you have about ten

4     minutes, right?

5          MR. MINTZ:  Yes.  That's correct, Your Honor.  Thank

6     you.  Thank you for affording us the time today, and I'm going

7     to address the remaining what I'll call miscellaneous issues

8     that we raised in our objection.

9          First, I want to emphasize that our goal here is not,

10    as the TCC has contended in its papers, to obtain special

11    treatment for our claims.  Our goal is exactly the opposite.

12    We want to make sure that our claims are afforded the same

13    equal and fair treatment as other fire victims and that we are

14    not singled out for special treatment by virtue of the relative

15    size of our claims or for other reasons.

16          It was the TCC who initiated our concern in this

17    regard.  The disclosure statement included a very cryptic

18    statement that said special consideration may be given to the

19    treatment of large fire victim claims to ensure that large

20    claims didn't impact the recoveries of other claimants.  If you

21    look at the prior page of the disclosure statement where that

22    statement was -- which was on page 25 -- if you go to the prior

23    page, it says that statement about special consideration was

24    provided by the tort claimants' committee.  So it came from

25    them, and that concerned us.  And we were also concerned that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    the original filed version of the trust documents didn't

2    include language providing for pro rata treatment.

3            With respect to those issues, we worked with the TCC,

4    and with their cooperation, we've addressed those matters.  The

5    trust documents now make clear that payments to fire victims

6    are to be on a pro rata basis and that claims will be treated

7    the same regardless of their magnitude.

8            THE COURT:  Well, doesn't that, therefore, moot the

9    concern about what was in the disclosure statement?  Which is

10   only a disclosure statement.  It's not the charter.  It's not

11   the operative document, so --

12           MR. MINTZ:  Yes, Your Honor.  And I provide this just

13   by way of background to lead into the first want point I want

14   to touch upon, which is we need to make sure that those

15   essential core protections -- the pro rata treatment and

16   equality of treatment regardless of size -- are built into the

17   trust on a permanent basis and can't be vitiated by subsequent

18   actions.

19           And particularly, the trust documents and the trust

20   agreement allows the trustee, with the consent of the trust

21   oversight committee, to make virtually any amendment that they

22   want to the trust agreement.  That means that the day after the

23   effective date, in theory, they could choose to strip the very

24   protections I just referred to you.  So they could take away

25   the pro rata treatment.  They could take away the protection

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1   that large claims aren't going to receive special treatment of

2   some sort.  We could be back to where we were before.

3          Their answer -- the TCC's answer here is only, well,

4   the trustee can't do it himself.  He needs the approval of the

5   trust oversight committee, so that's a protection.  But that's

6   cold comfort for us.  If they collectively decide to make these

7   changes, they shouldn't be able to do that.  According to --

8          THE COURT:  You don't think that would be -- that

9   would be contrary to the finality of the confirmation order?

10         MR. MINTZ:  Well, Your Honor --

11         THE COURT:  I mean, when you said --

12         MR. MINTZ:  -- the --

13         THE COURT:  Well, wait a minute.  When you take --

14  let's say that the trustee and the oversight committee can do a

15  lot of mechanical or administrative changes on their own, which

16  I think would be a good thing.  But they couldn't go back and

17  do something that was inconsistent with the confirmation order,

18  could they?

19         MR. MINTZ:  They could, Your Honor, and that's our

20  point.

21         THE COURT:  But how could they?  I mean, how --

22         MR. MINTZ:  The trust agreement can be amended in any

23  way.

24         THE COURT:  Well, I understand about amending.

25         MR. MINTZ:  -- (break in audio) approving the trust

PG&E Corp. And Pacific Gas And Electric Co

1  agreement.

2  THE COURT:  I mean, could they amend it to say that

3  your client won't get paid at all?

4  MR. MINTZ:  I think in theory, yes, Your Honor.  I

5  don't think there's any constraint in the document that would

6  permit that.  And really, that's the risk we want to protect.

7  I mean, you gave an example that -- I don't think we're

8  particularly concerned that they're going to do something like

9  that, Your Honor, but they did have something in mind with

10  respect to large claims that they were focused on in the

11  disclosure statement and we're --

12  THE COURT:  I know, but you've told me that they --

13  MR. MINTZ:  -- it concerns us.

14  THE COURT:  You told me they fixed that.

15  MR. MINTZ:  Your Honor, if the order -- if the

16  confirmation order's going to provide that the trust agreement

17  can't be amended in the kinds of ways you're talking about,

18  that would address our concern, Your Honor.  We just want to

19  make sure that there aren't amendments -- I mean, what we

20  proposed, our solution was to say any material amendments

21  couldn't be done without Court approval.

22  I would accept Your Honor's suggestion that they can't

23  make changes that fundamentally alter the rights that are being

24  granted to creditors under the plan like the ones I'm talking

25  about.  Some constraint like that would address the concern,

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1  but in the absence of anything, they theoretically can do

2  whatever they want.  And that's consistent with the

3  confirmation order, because the confirmation order is approving

4  the trust agreement as it stands, which has that built-in

5  mechanism.

6       THE COURT:  Okay.  But I mean, we -- and as I'm sure

7  you know from your own experience, confirmation orders often

8  solve a lot -- fix a lot of things that weren't necessarily in

9  place under a plan.  And obviously, when you start to mess with

10 a plan and a confirmation order, it's an invitation to

11 confusion and ambiguity but not on big-ticket items, perhaps.

12 Anyway, go ahead and --

13      MR. MINTZ:  Yeah.  I mean, the simplest fix that we

14 suggested, Your Honor, was that to the extent that there are

15 material amendments, substantial, substantive amendments that

16 are being made that affect our treatment and the kinds of

17 things that we're talking about here, those should be subject

18 to Court approval.  I think that's a very easy kind of fix that

19 you see in documents of this type all the time.

20      The next issue, Your Honor, is Section 5.9, which

21 addresses potential conflict positions of the trustee.  Based

22 on the TCC's response, it's not clear to me if we have a

23 fundamental dispute or just a drafting issue.  As we read the

24 provision, Section 5.9 allows the trustee to hold nonpassive

25 financial interest in one or more --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1  THE COURT:  And it certainly looked to me like a

2  drafting issue, but Mr. MacConaghy can tell us that.  I just

3  didn't -- I didn't think that Justice Trotter was going to go

4  out and buy up shares of claims or trade or do anything else

5  that you're worried about, but.

6  MR. MINTZ:  Agreed, Your Honor.  And we're happy to

7  work on the drafting.  The way we read it, though, suggested

8  that as long as a disclosure was made, he could hold those

9  interests, which was a concern for us.  We can fix that

10  drafting, assuming that's how the TCC intends it.

11  THE COURT:  Well, Mr. MacConaghy will put that on his

12  respond list here --

13  MR. MINTZ:  Okay.

14  THE COURT:  -- as soon as he's -- he's itching to

15  speak in a minute here.

16  MR. MINTZ:  Well, I'm getting to the end, and I know

17  my time is limited as well.  The next issue, Your Honor, is an

18  ambiguity between the plan and the trust documents over setoff

19  and recoupment.  The plan is quite clear in regard to the fact

20  that it does not assign the estate's offset or recoupment

21  rights to the trust.  They're retained by the debtors, and

22  that's very clear in 5.13 of the plan.

23  Yet certain provisions of the trust agreement purport

24  otherwise, and those provisions, Section 1.4 and 4.4, refer to

25  rights of offset or recoupment that the debtors have or would

PG&E Corp. And Pacific Gas And Electric Co

1    have.  And the problem for us is that creates an ambiguity

2    because it leaves the victims vulnerable to facing the same

3    claims from the debtors and the trust.

4          And the TCC's answer is, well, there's no real

5    ambiguity because the trust agreement has qualification

6    language that says "except as otherwise provided in the plan."

7    But that's not a sufficient answer, Your Honor.  They haven't

8    told us whether they agree that no such rights are assigned.

9    And if they think otherwise, we need to understand that.

10         We think the plan is clear, and if the plan is clear,

11   it's a nullity to say "except as otherwise provided in the

12   plan, the trust can assert offset rights".  We can't be left

13   guessing about this, and this isn't a hypothetical issue.

14         My client, AT&T, has a substantial ongoing business

15   relationship with the debtors, and the debtors assert tens of

16   millions of dollars owed by AT&T, and we're going to deal with

17   that over the course of our relationship.  And our expectation

18   is we deal with the debtors.

19         But I can't be in a position where both the debtors

20   are claiming those amounts and then the trust is trying to

21   claim and offset against my fire victim claim.  I can't be put

22   in a position --

23         THE COURT:  No.  I understand.

24         MR. MINTZ:  -- where I don't know.

25         THE COURT:  I mean, I think the issue is easily

PG&E Corp. And Pacific Gas And Electric Co

1  identified, and maybe there's a solution from Mr. MacConaghy's

2  side, and maybe I'll have to think about a solution.  But

3  anyway, one more question, and then I --

4       MR. MINTZ:  Agreed, Your Honor.  I think it's a

5  drafting issue.  My problem is we've been raising this issue.

6  It hasn't been addressed, but I do think it's solvable.

7       THE COURT:  Okay.  Mr. Mintz, I don't know if it's

8  your responsibility or this is something that I should have

9  asked Ms. Winthrop to clarify, so whichever of you can answer.

10  There seems to be confusion in the briefing about the

11  attorneys' fees issue because the brief refers to it as

12  attorneys' lien, and yet the issue really has to do with

13  attorneys' fees under the inverse condemnation doctrine.

14  I'm --

15       MR. MINTZ:  I was going to get to that issue, Your

16  Honor.

17       THE COURT:  Oh, okay.  Yeah.

18       MR. MINTZ:  I'm almost there.

19       THE COURT:  Okay.

20       MR. MINTZ:  Hopefully, I have enough time remaining.

21       THE COURT:  Well, take the time for it.

22       MR. MINTZ:  Okay.  I don't have too much left.  Before

23  that, I was going to talk about the claimant release.  Our

24  concern there was a temporal one.  We didn't like the notion

25  that when you get your first distribution, you're releasing

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1   everybody through the end of time for -- on a future basis with

2   respect to things that may happen after you get your

3   distribution even if there's some kind of misconduct or

4   malfeasance after you sign that release.

5        The TCC says, well, it would be impractical to have to

6   get a new release every time we made a distribution.  We agree

7   with that.  I certainly agree, and I don't think the suggestion

8   is that they should have to get a new release every time.  But

9   I think there's a solution that would work, which is the

10   release should cover claims through the execution date of the

11   release with that date being extended to each subsequent

12   distribution date every time a claimant accepts a further

13   distribution.

14        So in other words, the release would roll and extend

15   as further distributions are made over the course of time.  But

16   it shouldn't be the case that when you get your first

17   distribution on day one, you're releasing them from conduct

18   that happens a year later.  That's just not appropriate.

19        With respect to the issue of attorneys' fees, Your

20   Honor, just to focus in on what we're talking about, we are

21   talking about attorneys' fees that a claimant may be entitled

22   to under applicable law.  The TCC's position on this is they

23   haven't decided yet how to deal with it, and the trust will

24   figure out at some point how it wants to deal with that issue.

25        Respectfully, Your Honor, I don't think the Court can

PG&E Corp. And Pacific Gas And Electric Co

1    approve the trust with that uncertainty.  We need clarity to

2    the fact that claims are going to be allowed in accordance with

3    applicable law, and if there is an applicable legal basis to

4    support an entitlement to a claim, including attorneys' fees,

5    that should be part of the allowed claim.

6          And this relates to the same issue that Mr. Goldblatt

7    was speaking to.  Allowance is different from treatment, and

8    how our claim is determined and the elements of our claim, our

9    entitlement to get reimbursement for property damage as opposed

10   to personal injury, those are things that are required by

11   applicable law, and the trust needs to follow that.

12         Saying they're going to figure out later with

13   attorneys' fees what they're going to do -- and what they could

14   do is say we're not going to include it -- is no different from

15   them saying, look, we're only going to pay personal injury

16   claims, and we're not going to pay property damage claims.

17         THE COURT:  Well, that seems like an overstatement

18   because the state of the law at the moment, unless the Ninth

19   Circuit or the Supreme Court changes it or the legislature

20   changes it, is that the inverse condemnation doctrine applies

21   and personal -- I mean, damage to personal property gives you a

22   right to attorneys' fees as under the law, right?

23         So that would be the substantive law that would say

24   that is an entitlement.  And I would assume that clients like

25   AT&T and Comcast and the hospital are all major victims of

PG&E Corp. And Pacific Gas And Electric Co

1   property damage that comes under the adverse condemnation --

2   inverse, excuse me, inverse condemnation principle, right?

3           MR. MINTZ:  And that's right, Your Honor.  If

4   applicable law -- if our claim under applicable governing law

5   entitles us to a certain recovery of certain type of damages,

6   that should be eligible within the trust, and the trust --

7           THE COURT:  But I'm saying don't you think it's a

8   mechanical issue of how to go about ascertaining it?  In other

9   words, if -- someone, for example, who has suffered personal

10  injury and property damage, you have to allocate, figure out

11  what is the amount of attorneys' fees that that party is

12  entitled to.

13          Now again, your corporate clients maybe didn't have

14  personal injury.  But at some point, the trustee has to figure

15  out who gets attorneys' fees for what portion of a particular

16  claim it seems to me.

17          MR. MINTZ:  Your Honor, as currently drafted, the

18  trust documents do not contemplate any treatment for those

19  attorneys' fees.  It just says that they'll think about it.  So

20  if the solution is that they're going to be included to the

21  extent required by applicable law and recognizing that there

22  may be distinctions between those portions that relate to

23  personal injury claims and those which relate to property

24  damage claims, that would solve our concern.  We're not trying

25  to rewrite the law, but we want the trust documents to reflect

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1  applicable law.

2          THE COURT:  We're going to add this to Mr.

3  MacConaghy's homework assignment.  And with that, I'd like to

4  conclude your opening argument on the objector's side.  And

5  I'll stick with the reservation of five minutes even if we're

6  over five -- even if it's in the negative balance, that the

7  objectors have five minutes for rebuttal.

8          Mr. MacConaghy, you're up.

9          MR. MINTZ:  Thank you, Your Honor.

10          MR. MACCONAGHY:  Good morning, Your Honor, John

11  MacConaghy, special counsel for the official tort claimants

12  committee.  Can you hear me okay?

13          THE COURT:  Yes.  I can.  And I want to know how

14  you're allowing or sharing the time.

15          MR. MACCONAGHY:  I have thirty-five minutes, and the

16  remaining ten minutes is going to be split among Mr. Skikos,

17  Mr. Singleton, and Mr. Marshack if he's still on the line.

18          THE COURT:  Okay.  We got Singleton and Marshack

19  together; they double up?  All right.

20          MR. MACCONAGHY:  I'm not sure I'm going to take all my

21  time.

22          Your Honor, the specific, unprecedented combination of

23  problems we've asked Justice Trotter to resolve is, number one,

24  paying all 80,000 fire claims expeditiously, consistently, and

25  fairly; two, minimizing how much of the fund will go to pay

PG&E Corp. And Pacific Gas And Electric Co

1    costs of administration; and three, minimizing how much of the

2    fund must be held in reserve for disputed claims.  We think we

3    have done that, and we have done that in accordance with the

4    Code and nonbankruptcy law.

5           Now I'm going to turn to the specific objections

6    raised by the business claimants, and hopefully, in that

7    process, answer any questions that the Court raised at the

8    outset of the hearing.  The first objection of the five

9    business claimants is this:  they purport to have a right to a

10    final, de novo bankruptcy court adjudication of their

11    individual proofs of claim.

12           THE COURT:  By the way, I have to interrupt you.  I

13    don't know so that it has to be a bankruptcy court.  I think

14    they're saying a judicial determination.

15           MR. MACCONAGHY:  I --

16           THE COURT:  It could be somebody else.

17           MR. MACCONAGHY:  Correct.  There could be a

18    abstention, which in our view is even bigger problem, but --

19           THE COURT:  No.  No.  And let me -- I think you're not

20    following my question.  It could be a withdrawal to the

21    district court.  It could be relief from stay to the superior

22    court.  It means they want -- as I heard their argument, they

23    want a judge at the end of the day, if they're not satisfied

24    with the outcome through the nonjudge process, what we'll call

25    the equivalent of the arbitration-type procedure that the trust

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    contemplates.

2         MR. MACCONAGHY:  Correct.  But whether it be in this

3    court or another court, you have to give that right to 80,000

4    people which, in my view, is just jaw-dropping in practicality.

5    Likewise -- and we all know that 80,000 people are not going to

6    seek de novo review.  But let's say two percent of that number

7    does.  That's still thousands of cases.  This court can't

8    handle it, and I don't think the Butte County Superior Court

9    can handle it.  Your Honor, I know the last trial I had in

10   front of you took nine days, and it was much simpler than

11   AT&T's --

12        THE COURT:  Come on, Mr. MacConaghy.  I could blame --

13   I could blame anyone I want on that one.

14        MR. MACCONAGHY:  Yeah.

15        THE COURT:  And you can blame me.

16        MR. MACCONAGHY:  I'm sorry I brought that one up, Your

17   Honor.  But in any event, let's move on.

18        THE COURT:  No.  But seriously, I want -- do you

19   realistically, in your experience, believe that if we suddenly

20   open the door to any courtroom, that 80,000 claimants are going

21   to line up to try to get in court?  I can't imagine that.  I

22   would think that it would be more like the two percent or three

23   percent.

24        MR. MACCONAGHY:  But --

25        THE COURT:  And that's not insignificant, but it's not

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1   this deluge that you warn about in your papers like the sky is

2   falling.

3           MR. MACCONAGHY:  Correct.  But even 2,000 seven-,

4   eight-, or nine-figure claims, or 250 nine-figure claims I

5   think would --

6           THE COURT:  Well, Mr. MacConaghy, let's just take the

7   four people who are carrying the ball here, or the three of

8   them:  Comcast, AT&T, and Adventist.  If they all want to go to

9   trial, those would be some significant pieces of litigation, I

10  suspect.  But that's the point.  They want that option, and the

11  question is whether the law gives it to them.

12          MR. MACCONAGHY:  And I will answer that.

13          THE COURT:  If I made the rule that said the only

14  people that have the right to a court are the ones who objected

15  and showed up on my Zoom hearing today, you've got four people.

16          MR. MACCONAGHY:  So --

17          THE COURT:  You know?

18          MR. MACCONAGHY:  We've talked about what we consider

19  to be the impracticalities of this, the burden on this Court's

20  docket, and certainly, I don't know, there's probably just

21  three or four judges in Butte County Superior Court.

22          Let's talk about the alleged statutory entitlement to

23  this right in 502(b).  Section 502(b) says that if there is an

24  objection to a claim, "The court shall determine the amount of

25  such claim in lawful currency of the United States."  So why

PG&E Corp. And Pacific Gas And Electric Co

1  doesn't the word "shall" box us into this cumbersome process in

2  the context of mass tort cases?  Three reasons.

3          First, it is well-settled that Section 502(b) does not

4  preclude the Court from ordering a disputed claim to binding

5  ADR.  That relief is authorized by the extension provisions in

6  28 USC Section 1334(c).  It is also --

7          THE COURT:  To binding ADR?  What binding ADR are you

8  referring to?  I'm not aware of that.

9          MR. MACCONAGHY:  So --

10         THE COURT:  We send people to mediation all the time,

11  but --

12         MR. MACCONAGHY:  You send people to mediation.

13         THE COURT:  But where are they bound under 1334?

14         MR. MACCONAGHY:  1334 alone does not say that the

15  court can order binding ADR.  The point of bringing up 1334(c)

16  and Bankruptcy Rule 9019(c) is to say that the Court does not

17  have to adjudicate the claim.

18         But second -- and the mandate of Section 502(b) does

19  not necessarily survive the confirmation of a plan.  Section

20  1123(a)(3) and 1124 of the Code say that a Chapter 11 plan can

21  impair legal and equitable rights.  I just looked at the text

22  during counsel's argument of the statutes.  They don't say

23  allowed claim; they just say a claim.

24         The right of a claimant to an individual adjudication

25  of its claim is a legal right.  That legal right can be

PG&E Corp. And Pacific Gas And Electric Co

1    compromised or impaired through a Chapter 11 plan, provided

2    that the other requirements of confirmation are met.

3            THE COURT:  So go back to -- I know you weren't active

4    in the case, perhaps, because of your role as special counsel,

5    but is it clear from the disclosure documents and the plan

6    that -- and today is the last day to vote -- that everybody who

7    has the right to vote could have understood from the disclosure

8    statement that this is the end of the -- there's no right to a

9    jury and that by voting for the plan, you do not -- and strike

10   jury; I want to correct that -- right to a day in court on an

11   adjudication of your claim?

12           MR. MACCONAGHY:  Your Honor, I'm very sorry, but I

13   cannot honestly answer that question due to my very recent

14   involvement in this matter.  And I'm going to have to defer

15   that one of my co-counsel.

16           THE COURT:  Well, I can recall a hearing -- I've

17   forgotten which; there have been so many.  But a number of you

18   on the phone or on the call will remember this, that Mr. Julian

19   and I, I believe, were in -- had a discussion about the whole

20   question of reservation of rights of people, if they aren't

21   satisfied with the process, to ultimately go to a jury.  And

22   then that -- I recall again, later, Mr. Julian speaking to the

23   subject that the negotiated result under the current

24   arrangement did away with that option.

25           What I'm just asking you -- and that's okay.  I

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    understand.  You can't have memorized these long documents, but

2    I don't know whether it was that clear to the voters that

3    they're giving up that right.  Let's move forward.  You've got

4    a number of issues, and particularly, these practical questions

5    that I need you to tell me whether they're --

6            MR. MACCONAGHY:  And I would say to that, Your Honor,

7    if that's a problem with the plan and the disclosure statement,

8    that is a confirmation issue.

9            THE COURT:  Well, yeah.  Right.  But it's still an

10   issue.  And this is a form of a confirmation issue that we're

11   dealing with today.

12           MR. MACCONAGHY:  Right.

13           THE COURT:  Go ahead.

14           MR. MACCONAGHY:  Anyway.  So we think of the pre-

15   petition rights and liabilities of the debtor and its creditors

16   as being one bundle.  This becomes a different bundle of rights

17   and liabilities on the petition date when an estate is created,

18   and yet a third bundle of rights and liabilities on

19   confirmation of a plan.

20           Under Chapter 11, that third bundle of rights, in this

21   case, those established by the trust documents, is fixed by a

22   majority vote of creditors in a similarly situated class, not

23   unanimous consent.  If restructuring could only be done by

24   consensus, there would be no need for Chapter 11.

25           This case illustrates perfectly why that is fair.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    Five large institutional creditors should not be able to

2    dictate what happens to 79,995 other people, and they should

3    not be able to carve out unique, special treatment for

4    themselves, which is what we think they are trying to do.

5    Unless the rights, procedures, and restrictions imposed on the

6    pre-confirmation estate by Chapters 3 and 5 of the Code are

7    specifically reserved in a plan, they fall away on

8    confirmation.

9           It is often said that a Chapter 11 plan is a new

10   contract between the debtor and its creditors.  The Ninth

11   Circuit said that in Miller v. United States, 363 F.3d 999,

12   1004.  This is our fundamental point.  Like any contract, that

13   Chapter 11 plan contract can include a binding ADR provision if

14   the votes are there.

15          Third, the absence of final judicial review over any

16   particular fire victim's claim against PG&E is not a denial of

17   due process.  In this particular case, the business claimants

18   have had and will have multiple opportunities to appear and

19   protect their rights before this Court, including objecting to

20   the TCC's restructuring support agreement, objecting --

21          THE COURT:  That's already behind it.  That's all

22   done.

23          MR. MACCONAGHY:  Yes.  But they had it -- objecting to

24   the appointments of Justice Trotter and Ms. Yanni, and the

25   upcoming objection to the confirmation of the plan.  In our

PG&E Corp. And Pacific Gas And Electric Co

1  case -- in our brief, we have cited a number of cases in and

2  out of Chapter 11 where similarly situated claimants are

3  required to resolve their individual claims by binding ADR

4  without backend judicial review.  Now, Mr. Goldblatt focused on

5  some of the mass tort cases, which do indeed in some of those

6  instances have a provision for a backend bankruptcy court

7  oversight of the individual claims resolution, but that is not

8  constitutionally or statutorily required.

9       We've made reference in our brief to so-called nonopt-

10  out class actions under Federal Rule 23(b)(1) and (b)(2), where

11  you can have a situation where once a class of claimants is

12  identified and before the court, the court can approve a gross

13  resolution of the matter.  And then those individual claimants

14  don't have a right to some further court review for a bigger

15  share of the pie, which is what the business claimants are

16  seeking here.

17       We think there is ample precedent for the process we

18  have constructed, and that should be allowed in this particular

19  case.  Now, why is this ADR --

20       THE COURT:  Does this case resemble Takata at all?

21       MR. MACCONAGHY:  I think it's -- well --

22       THE COURT:  It's one thing to lose your airbag.  Of

23  course, there may be some small number of people who suffered

24  injury or death from that, but most of the claims in Takata

25  were just somebody that had to get their airbag replaced.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    That's not quite the same as this case.

2         MR. MACCONAGHY:  Well, it isn't quite the same as this

3    case.

4         THE COURT:  Nothing's the same as this case.

5         MR. MACCONAGHY:  Nothing is the same as this case.

6    Right, Your Honor.  And the --

7         THE COURT:  All I'm saying -- what I was trying to get

8    at is I can't lose a whole lot of sleep about denying someone a

9    day in court if he wants to get his airbag replaced.  And I

10   don't know whether the small number of victims who suffered

11   personal injury or wrongful death -- where they are in the

12   Takata case.  I don't know, but.

13        MR. MACCONAGHY:  Your Honor, my understanding is on

14   the Takata case, there were several victims who were very

15   seriously injured by these airbags.  And in that regard, the

16   Takata case is similar to this case in that unlike many other

17   mass tort cases, here there was a hybrid of -- here and there,

18   there's a hybrid of property damage and personal injury.

19        And the similarities of the two cases are the numbers

20   of claimants and the impracticalities of giving even a

21   significant percentage of those claimants final judicial review

22   of the ADR process.

23        Let me go on and explain why this ADR process as

24   written is so important in this particular case.

25        THE COURT:  I understand it's important.  The question

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    is whether it's legally sustainable.

2            MR. MACCONAGHY:  Yes.

3            THE COURT:  It's important.  There's no question.

4            MR. MACCONAGHY:  Okay.

5            THE COURT:  And I am personally of the view that if I

6    authorize some access to court, I still believe that a vast

7    number of them will take advantage of this procedure.  But some

8    will not, perhaps.

9            MR. MACCONAGHY:  Yes.  So let me talk about one of the

10   cases that was relied on by the business claimants and we

11   probably should have discussed in greater detail in our brief,

12   and that is Judge Patel's ruling in In re Elder.  Elder is

13   heavily relied upon by the business claimants in support of

14   their argument that there must be some backend bankruptcy court

15   review of post-confirmation ADR.  There are three reasons why

16   this is not the case.

17           First, Elder (phonetic) was not a mass tort case and

18   did not involve any of the logistical challenge presented by

19   the instant matter.  Elder involved two small art galleries.

20   The bankruptcy record for Elder can still be viewed on this

21   court's PACER system.  There were only 103 proofs of claim

22   filed in that case.  This is a number which could have been

23   easily resolved by the bankruptcy court without any ADR.  The

24   80,000 claims here is not.

25           Second, Elder did not consider Bankruptcy Rule 9019(b),

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    which is tailor-made for mass tort cases.  Rule 9019(b)

2    unequivocally dispenses with the need for individual claims

3    adjudications in a mass tort case.  Rule 9019(b) states, "After

4    a hearing on such notice as the court may direct, the court may

5    fix a class or classes of controversies and authorize the

6    trustee to compromise or settle controversies within such class

7    or classes without further hearing or notice."

8         THE COURT:  I don't understand why you're relying on

9    that rule.  That doesn't do -- that's not relevant to here

10   because the trustee, under any 9019 settlement, can only settle

11   with people who want to settle.  It doesn't -- 9019 doesn't say

12   to the trustee -- and you represent a lot of trustees -- that

13   while the trustee says, Mr. Defendant, I'm going to settle by

14   offering you 200 dollars, and you're it.  That's all you get.

15   Period.

16        MR. MACCONAGHY:  Well --

17        THE COURT:  And that --

18        MR. MACCONAGHY:  Your Honor, that's -- excuse me.

19   That's what 9019(a) says.  The way I read 9019(b), which is

20   rarely used, is that the trustee can come into court and say,

21   there's this class of people who's going to be compensated by

22   this 13.5 billion dollars I'm getting from PG&E.  Here is the

23   way I'm going to divide that up, quote, within a -- within the

24   class of victims.

25        And then the Rule says if that settlement is approved,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1  the bankruptcy court need not further involve itself in parsing

2  out how much individual creditors get from that fund.

3  THE COURT:  Is there any authority -- I don't --

4  because I don't think the Elder case goes there -- that says

5  that the trustee or, here, the representative of the estate can

6  impose upon an unwilling opponent a 9019 outcome -- 9019(b)

7  outcome?

8  MR. MACCONAGHY:  No.

9  THE COURT:  Well, then why are we talking about it

10  unless there's --

11  MR. MACCONAGHY:  Well, there's no authority -- based

12  on my research, it's such an obscure rule that there's no

13  authority on it one way or the other.

14  THE COURT:  Okay.

15  MR. MACCONAGHY:  But reading the text of it, it seems

16  to justify the process that, if we consider the plan

17  confirmation process as this class hearing and notice

18  referenced in 9019(b), there is a -- statutorily, doesn't have

19  to be a further hearing on an individual claim.

20  THE COURT:  Is there anything in the plan or the

21  disclosure statement that tells the thousands and thousands of

22  people that were solicited, by the way, it doesn't matter what

23  you do, we're going to stick this down your throat under

24  9019(b)?

25  MR. MACCONAGHY:  Well, 9019(b) isn't referenced, but

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    it is my understanding that the trust documents and the claims

2    resolution procedures have been circulated to all parties-in-

3    interest in the case.

4         THE COURT:  That's right.  And four of the major

5    players -- or five have objected to it.

6         Anyway, let's go ahead.  You need to come back to the

7    practical problems that you need to tell me, and let's -- so

8    let's take that, briefly.  What about -- you've heard the

9    opposing counsel suggest practical solutions.  Can -- did you

10   make a list?

11        MR. MACCONAGHY:  I -- what do you want to talk about

12   first, the trust documents or insurance?

13        THE COURT:  No, let's take it in reverse order.  I

14   have -- as the -- what about the notion of having the trustee

15   cannot do things that are contrary to the letter of the plan?

16   The trustee can't propose changes to the trust that conflict

17   with the charter of the plan?

18        MR. MACCONAGHY:  Well, Your Honor, we think that's a

19   red herring because this is going to be a Delaware trust, and

20   each of these five claimants and thousands of other people are

21   beneficiaries of that trust.  And if, in the very unlikely

22   event that there was to be some material change in the trust

23   document that resulted in one beneficiary being newly and

24   substantially impaired, those trusts beneficiaries would have

25   redress under nonbankruptcy law.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1           THE COURT:  To the Delaware's Chancery Court, huh?

2           MR. MACCONAGHY:  Delaware Chancery Court and --

3           THE COURT:  I thought the bankruptcy court was where

4    this plan got born and would be enforced, but --

5           MR. MACCONAGHY:  You mean --

6           THE COURT:  -- it sounds like you're not consenting to

7    that alternative, here.

8           MR. MACCONAGHY:  And I don't know that -- my

9    understanding is that when the plan is confirmed, PG&E is going

10   to want to get a final decree as quickly as possible, so I

11   don't know that the -- it's in the best interest of anybody for

12   this court to maintain lingering jurisdiction over something

13   that is really a very remote hypothetical.

14          THE COURT:  You might be interested to know that in

15   the 2001 PG&E case that I am still the presiding judge, they

16   still haven't gotten final decree, so they're up to the

17   nineteen-year mark.

18          MR. MACCONAGHY:  It really is a Chapter 22, then, I

19   guess.

20          THE COURT:  What about the attorneys' fees issue?  And

21   isn't this a drafting error that the right for the personal

22   injury -- I mean, excuse me, the personal property damage

23   claimants to get attorneys' fees is a matter of California law?

24          MR. MACCONAGHY:  Yes, Your Honor, that's a good point,

25   and our brief was mushy on that subject.  And let me explain

PG&E Corp. And Pacific Gas And Electric Co

1    where we come out.  It was our intention, in the claims review

2    procedures, to simply adopt the American rule and provide that

3    attorneys' fees would be a matter between the client and the

4    attorney.  Now, when we're dealing with claims sounding in

5    inverse condemnation, as Mr. Mintz and the Court noted, those

6    attorneys' fees are part of the underlying claim itself.

7           The first sentence of the claims resolution procedures

8    requires the trustee to fairly compensate claimants "in an

9    equitable matter consistent with California law".  So I think

10   that resolves the issue.  And if there is a lingering concern

11   about that after the conclusion of this hearing, my suggestion

12   is that counsel perhaps talk to the trustee's proposed counsel

13   about doing the wordsmithing necessary to fix that.  But it

14   seems to me that that language in the claims resolution

15   procedure covers it.

16          THE COURT:  Okay.

17          MR. MACCONAGHY:  The claim has got to be treated in

18   accordance with California law.

19          THE COURT:  Okay, I'm -- Mr. MacConaghy, I want you to

20   use your remaining time for what's left on your list and your

21   cocounsel.

22          But Mr. Mintz, you've got a homework assignment.  Your

23   homework assignment is to deal with the trustee's prospective

24   counsel and see if you can come up with some language that

25   solves the attorneys' fee problem.  You don't even have to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    respond to me.  I see you're on mute.  That's your assignment.

2         Go ahead, Mr. MacConaghy.

3         MR. MACCONAGHY:  Your Honor, I think I've said

4    everything we have to say on the question of de novo bankruptcy

5    court review of the ADR, and I want to turn now to the

6    insurance question.  The business claimants have clarified a

7    very important concern that we had in that it seems to be -- it

8    seems that everybody is now in agreement that there can be no

9    double recovery, unlike one gets in a common-law application of

10   the collateral source rule.

11        THE COURT:  Yeah, let -- we shouldn't even waste time

12   even using the phrase double recovery.  Every lawyer in this

13   argument has conceded the point.  Nobody's after double

14   recovery.

15        MR. MACCONAGHY:  Okay.

16        THE COURT:  And add that -- the judge to the list.  No

17   double recovery.  But what do we do --

18        MR. MACCONAGHY:  So --

19        THE COURT:  -- about the other issue?

20        MR. MACCONAGHY:  So what we're talking about is to

21   what extent the trustee can incentivize claimants to diligently

22   pursue their carriers.  The trustee, as I understand it, is not

23   going to demand an A-plus effort in bad-faith litigation to get

24   recovery from carriers, but it's very important that reasonable

25   efforts be taken and there's a grave concern on our part -- and

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1   I'll bring up the issue of Adventist.  I can be corrected by

2   counsel for Adventist if I'm wrong.  And it's our understanding

3   that Adventist has a very odd policy that requires it to first

4   pursue the -- a tortfeasor in a situation like this.  And only

5   after it exhausts its avenues of recovery against the

6   tortfeasor can it go back and get money from its carrier.

7        Now, we're very concerned about that with an entity

8   like Adventist because, of course, somebody that runs hospitals

9   has huge underwriting issues every time they want to get

10  covered, and there can be an incentive on somebody like

11  Adventist to say, we're just going to see what we can get out

12  of the claims -- out of the fire victims trust claim and then

13  let our carrier off the hook because we don't want to worry

14  about getting our premiums increased in succeeding years.

15  That's the reason why the trustee wanted this language in there

16  requiring the insured claimants to take reasonable steps to

17  maximize the recovery out of their insurance policies.

18       The other reason why we don't think the language

19  regarding the insurance offset should be limited to monies

20  actually paid is that it's my understanding that, in connection

21  with the negotiations of establishing the subrogation wildfire

22  trust and then the amount of the fire victim's trust, that it

23  was brought -- the notion of unexpended reserves and the

24  billions of dollars booked by the carriers was factored into

25  that.  So we don't want to agree to a insurance offset

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    provision that doesn't take the advantage of these unfunded

2    insurance reserves.  So that's why the trustee wants a

3    provision in there that any insured claimant will take

4    reasonable steps to recover whatever policy proceeds they have.

5         THE COURT:  But if the hospital has a policy that

6    doesn't even allow them to recover until they've exhausted

7    their claim against the tortfeasor, then they've made the case.

8    They've taken all the reasonable steps because there aren't any

9    that they can take, as a matter of contract, so the trustee has

10   to honor every dollar they claim.  So that seems to be circular

11   to me.

12        MR. MACCONAGHY:  Well, there's a difference between

13   recover and collect.

14        THE COURT:  Well, I know.

15        MR. MACCONAGHY:  I think that, in a situation where

16   there's the magnitude of the Adventist claim, which I

17   understand is a billion dollars, you can get an award from the

18   fire victims trust, a likely estimate of distribution, and then

19   go to the carrier before you get any money.

20        THE COURT:  I don't know, I -- we can't turn this into

21   a one-on-one for Ms. Winthrop's client --

22        MR. MACCONAGHY:  Yes, yes.

23        THE COURT:  -- and DCC.  But the question is whether

24   we need -- it can be dealt with in the trust.  Go ahead and

25   make the rest of your arguments because you've only got a

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1   couple more minutes, and you've got some other folks waiting

2   patiently.

3           MR. MACCONAGHY:  Your Honor --

4           MR. SINGLETON:  Your Honor, before Mr. MacConaghy

5   continues, he's welcome to take my time.  He's addressed the

6   issue that I was going to raise.

7           THE COURT:  Okay, Mr. Singleton.  Thank you.

8           MR. MACCONAGHY:  Thank you, Mr. Singleton, but I'm

9   about done.

10          And I just want to conclude with a vignette.  The

11  Patrick (phonetic) and the Norrbom fires stopped within a half

12  a mile of my house.  As soon as my neighbors and my family

13  returned to our homes, hundreds of handwritten signs

14  spontaneously popped up all over the North Bay, many with

15  American flags.  Thank you, CAL FIRE.  Thank you, first

16  responders.  You saved our town.

17          The people at this hearing are the final responders

18  for the victims of this nightmare.  Are we going to be thanked

19  by these 80,000 victims for getting them prompt and fair

20  compensation for their burnt bodies and lost homes or are we

21  going to be scorned for designing a system -- we think the one

22  urged by the business claimants in its objection, that puts

23  ordinary people to the back of a long line, takes years to get

24  a payout, and costs a fortune to administer?  The business

25  claimant objection should be overruled.  Thank you, Your Honor.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1          THE COURT:  Okay.  Thank you, Mr. MacConaghy.

2          Mr. Skikos and -- well, Mr. Singleton, you wanted to

3     be heard, and I believe Mr. Marshack.

4          But why don't we start with you, Mr. Skikos?

5          MR. SKIKOS:  Good morning.  Can you hear me?

6          THE COURT:  Yes, I can.

7          MR. SKIKOS:  Your Honor, I think a lot of this is a

8     result of us being under a tight deadline under a 1054, which

9     has created some uncertainty.  The issues that are being raised

10    are not issues that should be the subject of a one-week brief.

11    And let me start with the insurance issue.

12         So you asked about insolvency.  Insolvency is covered

13    under 2.6 under good cause.  You're at -- and if you go through

14    2.6, 2.6 with respect to the insurance issues is consistent

15    with what Mr. Weiss said.  Under 2.6(c) it's you're required to

16    exercise reasonable effort or -- efforts to determine the

17    amounts could or should have been paid had you exercised your

18    reasonable efforts.  And you go through the language of 2.6,

19    and the legitimate concerns that are raised by the business

20    entities are actually addressed in it.

21         But the problem with this case is that we're

22    continually in a state of rush.  And so the issues with respect

23    to 2.6 and dealing with the insurance companies came up for a

24    very specific reason, that with the policy of this case and the

25    agreements that we reached is that the insurance companies

PG&E Corp. And Pacific Gas And Electric Co

1    should be able to pass their coverage obligations into the

2    trust.  That's why 2.6 was drafted, that's why the made-whole

3    release was drafted.

4         Judge Trotter and the trustee has many options for

5    people who are suffering with their coverage, unjustly or

6    otherwise, and it's all in here.  You can take an assignment.

7    You can -- the good cause exception could say, you know what?

8    For this particular insurance carrier and this particular fire

9    victim, you're not going to end up with amount of total

10   coverage, you'll end up with total damage minus amount paid.

11        All of this has been in consideration to be consistent

12   with the integrated plan that we reached with the insurance

13   companies, with the debtor, with the shareholders, with the

14   government entities.  It's all an integrated system.  And the

15   concern that Mr. Weiss raised about commercially reasonable

16   efforts is actually in the document.  So --

17        THE COURT:  I don't mean to interrupt you, Mr. Skikos.

18   I need to interrupt you.  I've gotten a little prompt from my

19   Zoom conscience here to have you state your name for the

20   record, but it's also for the benefit of people who are

21   listening but can't even see you on the screen.  I know your

22   name, but just go ahead and restate it, please.

23        MR. SKIKOS:  Yes, Steven Skikos.

24        THE COURT:  Okay, and that's the -- and we don't -- I

25   mean, we don't have many more speakers left, but we need to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    remember to do that.

2         Go ahead and finish up.

3         MR. SKIKOS:  Right.  So that's -- with respect to the

4    insurance issue, if -- this is a plan confirmation issue.  It

5    is not an issue that should be adjudicated right here because

6    there's -- it's -- the fundamental problem with this issue is a

7    misunderstanding of how this actually works.  If they --

8         THE COURT:  Well, can I --

9         MR. SKIKOS:  -- actually go through two --

10        THE COURT:  But I have to interrupt you.  This case,

11   of course, is -- we keep saying how this -- we're moving

12   quickly.  We have been breaking out legal issues for months.

13   We did it with inverse condemnation, we did it with

14   post-petition attorneys' fees, we did it with the make-whole.

15   This was another one.  So and because we've got the clock

16   ticking.  And so you said, well, this shouldn't be dealt with

17   in a week, it's a confirmation issue.  Well, guess what?  The

18   confirmation trial starts in what?  Fourteen days?  So it's an

19   issue, it -- it's an issue.  So the question is do you --

20   you're saying, I take it, that you believe that 2.6 solves the

21   problem that these objectors have complained about.  Persuade

22   me.

23        MR. SKIKOS:  Yeah.

24        THE COURT:  Show that that's the case.  Show me how I

25   know that.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    MR. SKIKOS:  Okay, so if you go through 2.6, the

2    2.6(c) has the exercise of reasonable efforts.  It has the

3    amounts that'll be deducted could or should have been paid had

4    the fire victim taken reasonable efforts.  It has an exception

5    in 2.6(e) for good cause.  It has procedures in 2.6(d) to

6    assist claimants to recover the full amount due to the claimant

7    under the applicable insurance policy where the claimant

8    requests the assistance.

9        And the goal here to -- is to ensure that what is

10   settled in subrogation is settled in subrogation and what is

11   settled in the fire victim trust is settled in the fire victim

12   trust.  Because there is a tremendous risk that the billions of

13   dollars of reserves could be transferred over to the fire

14   victim trust, and that is unacceptable risk in a limited fund

15   context.

16       Second, this is a limited fund.  It's somewhere around

17   13.5, depending on what the value of the stock is.  It's a

18   limited fund within the bankruptcy.  And what we -- the design

19   of the trust was consistent with MDL and JCCP mass tort

20   practices.  The goal was to avoid Dow Corning and other mass

21   tort bankruptcies.  Dow Corning -- our clients entered into the

22   Dow Corning bankruptcy in 1995.  Fifteen years later, they

23   hadn't been paid.  The Metabolife ephedra bankruptcies, which

24   Justice Trotter ran, Twinlabs, et cetera, were in-and-out in

25   terms of allocation with a year-and-a-half.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1     THE COURT:  Again, we're not here to test the good

2  judgment of Judge Trotter.  The question is what to do about it

3  here.  So --

4     MR. SKIKOS:  Right.

5     THE COURT:  -- your point --

6     MR. SKIKOS:  So here --

7     THE COURT:  Your point is --

8     MR. SKIKOS:  -- where there are --

9     THE COURT:  Okay, your point is that the insurance

10  issues are dealt with in 2.6, and --

11     MR. SKIKOS:  Correct.

12     THE COURT:  -- and that's what I, like -- I don't

13  know --

14     MR. SKIKOS:  Okay.

15     THE COURT:  -- that's what I gleaned from this

16  discussion.

17     MR. SKIKOS:  And with respect to the systems that

18  exist in the trust relating to the claims allocation process

19  and the Court's raising of issues relating to that, the systems

20  are designed consistent with mass tort practices created by MDL

21  judges who are appointed by the MDL panel, and created by JCCP

22  judges who are -- deal with the judicial counsel.

23     1.6, which is the jurisdiction section, is consistent

24  with the very procedures that federal judges who run mass tort

25  MDLs set up to ensure that the people who run the allocation

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    process are experts in running allocation process, that they

2    bring to them claims administrators who are experts in running

3    claims administration.  So in dozens, if not -- well, at least

4    dozens of mass tort cases run in the federal practice or in the

5    California JCCP practice, this system that exists in this plan

6    is consistent with that.  And --

7               THE COURT:  The --

8               MR. SKIKOS:  And there is a --

9               THE COURT:  The point --

10              MR. SKIKOS:  Go ahead.

11              THE COURT:  The point is I have to make sure it's

12   consistent with the bankruptcy law.  And of course, the

13   professionals, the lawyers, and the judges that have dealt with

14   all those cases are all entitled to the praise that they're

15   entitled to, but we're operating under a different set of rules

16   called the Bankruptcy Code, that's all.  And I understand your

17   point.  You needn't defend the outcomes in all those places,

18   and I -- because I respect them and look to them for guidance.

19   The question is whether I can look to them for certainty in --

20   legal certainty for purposes of the plan.  But I don't want to

21   turn this into a tutorial.  I got your point.  I

22   (indiscernible) --

23              MR. SKIKOS:  Well, the two points -- you raised a

24   practical issue.

25              THE COURT:  -- we need to wrap up.  We're getting over

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1   to the (indiscernible) --

2           MR. SKIKOS:  I know.

3           THE COURT:  -- deadline.

4           MR. SKIKOS:  We have to -- I would appreciate the

5   opportunity to hit the practical issue you raised.

6           THE COURT:  Quickly.

7           MR. SKIKOS:  Very quickly.  I could outline for Your

8   Honor in an hour the complicated process that goes about

9   setting an allocation process and involves the evaluation,

10  valuation --

11          THE COURT:  Now, why don't you --

12          MR. SKIKOS:  -- budgeting, which I won't do.  But if

13  you allow folks, anybody, to go -- to say, I'm unsatisfied with

14  this process and I'm going to take this process in to court,

15  then the budgeting unravels.  Every -- there's 13,000 business

16  claims in this case.  There's 80,000 claims in this case.

17  Every single category of case, twenty-five different

18  categories, has to be evaluated, run under applicable law, and

19  then has to be reevaluated if there's an appellate decision and

20  a de novo review.  There is -- we have done this process

21  successfully dozens of times.  There is very little, if any,

22  appellate review on this because it's been successful.  And the

23  systems that are in place in here are consistent with the exact

24  same systems that have been successful over and over and over

25  again.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    And unlike Dow Corning, in which, as of two years ago,

2 our clients were still getting paid, we want to avoid that.

3 And so there's other bankruptcy precedent that exist, there's

4 other fire precedent that exist, there's other PG&E cases that

5 exist that say look, there -- this is a good group of people to

6 run this process and this is how it should be run.  Because

7 it --

8    THE COURT:  Okay.  I think I share -- you're repeating

9 yourself.  I'm going to cut you off and wrap this up.

10    Mr. Singleton wants to be heard, and I'm going to

11 let -- again, I can only do this so long.  I can -- I can't

12 keep this hearing going.  I got the point, I've read your

13 briefs.  And again, this is not about questioning or

14 criticizing what are good procedures in the state system.

15    Mr. Singleton, you offered up some time to Mr.

16 MacConaghy.  Do you want some time of your own?

17    MR. SINGLETON:  Your Honor, just very briefly.  Mr.

18 MacConaghy addressed the initial issue that I was going to

19 raise.  But I did just want to -- oh, wait.  I'm sorry.  For

20 the record, Gerald Singleton.

21    I did just want to direct the Court's attention to

22 section 2.6, subsection 3 and subsection 4.  And this is in

23 response to the Court's question earlier when the Court was

24 asking the specific portions of section 2.6 that addressed the

25 concerns raised by the parties making the objections.

PG&E Corp. And Pacific Gas And Electric Co

1      Subsection 3 reads as follows.  "Whether the fire victim has

2      exercised reasonable efforts to obtain all recoveries available

3      under policies of insurance for damages or losses arising from

4      or attributable to the wildfire".

5           And subsection 4 reads as follows.  "The amounts that

6      could or should have been paid under a policy of insurance to

7      the fire victim for damages or losses arising from or

8      attributable to a wildfire had the fire victim taken reasonable

9      efforts to obtain an insurance recovery for such damages or

10     losses".

11          So Your Honor, we would simply respectfully submit

12     that that portion which addresses specifically what the trustee

13     shall consider in determining the amount of available insurance

14     recoveries adequately addresses the concerns that the objectors

15     have raised.

16          THE COURT:  Thank you very much.

17          I'm going to turn to the objectors for five minutes

18     for rebuttal, and then I'm going to conclude the hearing.

19     We've gone way over and I'm not going to go beyond that

20     argument.  So let's see.  I forgot who's going to do that.

21          MR. MINTZ:  Your Honor, it's Benjamin Mintz, counsel

22     for AT&T.

23          I'm going to --

24          THE COURT:  All right, Mr. Mintz, okay, that's right.

25     (Indiscernible).

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    MR. MINTZ:  I'm going to take the rebuttal.  Ms.

2  Winthrop asked for a minute of my time, so I'm going to run

3  through the issues that I wanted to hit quickly.

4    I wanted to start with Rule 9019(c).  Mr. MacConaghy

5  talked about binding ADR and the ability of the court to send

6  claimants against their will to binding ADR?  9019(c) says

7  otherwise.  It says --

8    THE COURT:  I think he cited B, as in baby.  9019(b).

9    MR. MINTZ:  9019(c), as in cat.

10    THE COURT:  Right, I understand, but I thought Mr.

11  MacConaghy was citing B, as in baby.  But go ahead.

12    MR. MINTZ:  He was citing B, as in baby --

13    THE COURT:  Okay.

14    MR. MINTZ:  -- which caused me to look at C, which was

15  right below B --

16    THE COURT:  Okay.

17    MR. MINTZ:  -- and he was also talking about ADR.  And

18  if you read C, it says, on stipulation of the parties, by

19  agreement, the court may authorize the matter to be submitted

20  to final and binding arbitration.

21    That means that the court can't submit a matter to

22  binding arbitration if the parties don't agree.  That's the

23  negative inference of 9019(c), and I think it undercuts

24  everything that's been argued today and the notion that the

25  plan can do something that the Rule doesn't permit.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1      With respect to the expectation here, Mr. Goldblatt

2   referred to the mass tort cases in bankruptcy.  We have decades

3   of experience there.  It's typically a small handful of cases

4   that ultimately resort to the judicial system.

5      The reason is the claimants want to get paid quickly,

6   and having the process play out through mediation with the

7   neutrals and the trustee, it's -- there's -- the experience is

8   that virtually everyone avails themselves of that because it

9   takes a lot longer time and it's a lot more expensive to have

10  to litigate.  So everyone plays out through that process and

11  there's usually only a very small handful that slips through

12  that.  And to talk about two percent or three percent, that's

13  not at all consistent with what's happened with (indiscernible)

14  at this point.

15      An observation was made about budgeting and that if

16  you have this judicial safety valve, that that's going to throw

17  off the budgeting process.  That exists in all of the

18  bankruptcy mass tort cases.  People deal with it.  There's --

19  the analyses that are done with these large number of claims

20  can be accounted for just as effectively with the judicial

21  overlay or not.  It doesn't change that analysis in any

22  meaningful way, and they do it all the time.

23      With respect to the insurance issues, the provisions

24  do not clearly provide objective criteria with respect to what

25  is reasonable and what are the consequences of taking those

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    actions.  And that's the fundamental of our objection.  I think

2    Ms. Winthrop may address this more, but we need more clarity.

3    We've just heard that there was a rush to get these documents

4    done.  These documents should be done right.  And if there's a

5    lack of clarity in these documents as to what happens and how

6    much needs to be done, the work should be done to make it clear

7    so that everyone understands what their rights are going

8    forward and there's certainty to the process.

9         A suggestion was made that with respect to the

10   amendments, if they were done wrong, we would have redress

11   under Delaware law.  I haven't gone back to the plan, but I can

12   say with a high degree of confidence that the plan would

13   preclude those kinds of claims.  Our protection here -- and the

14   notion that we're getting resistance to it is very

15   concerning -- is that the plan shouldn't be amended in a way

16   that does an injustice to the plan.  That should be easy, and

17   I, frankly, don't understand why we're getting resistance on

18   that.  We shouldn't have to litigate over that issue after the

19   fact.  That should be a built-in protection into the plan.

20        With respect to your suggestion that we work on

21   drafting issues, I'm certainly happy to do that.  You had

22   mentioned the attorneys' fee issue.  I think related to that,

23   we had the set-off and recoupment, the 509(b) -- 5.9 drafting

24   issue, and just generally the treatment of applicable law in

25   the context of these claims.  I'm happy to undertake that

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1    effort in that regard.

2         THE COURT:  Okay.

3         Ms. Winthrop, you -- I presume you want to have your

4    moment on the subject of your client's unique insurance

5    coverage if, indeed, that's legally relevant.  Go ahead.

6         MS. WINTHROP:  Your Honor, I'll probably reduce this

7    down to thirty seconds because, for some reason, Adventist

8    Health always seems to be the target of all of these efforts.

9         First of all, we're hearing for the first time a new

10   allegation on whether insurance is or is not existing.  This is

11   just one of many coverage problems that we are facing.  I can't

12   comment on the latest one raised by the TCC except that this is

13   brand-new and not included in an objection to claim that

14   already raised and already withdrew.  So this points out the

15   issue and the problem with the language in section 2.6, which

16   is whether we get an allowed claim is all dependent on whether

17   the trustee determines that we have exercised reasonable

18   efforts to obtain all recoveries and the amounts that could or

19   should have been paid under a policy of insurance.  So that is

20   an example of the problems that are going to be faced if this

21   language is allowed to stand.

22         Secondly, there was an argument that this whole

23   structure was based upon reserves that are apparently sitting

24   in the subro pot.  Well, Adventist Health, one of the biggest

25   claimants in the case, has no reserves sitting in it, was never

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1   part of that deal, and it was known at the time of the TCC --

2   pardon me, at the time of the subro RSA that we had a separate

3   instance.  So this is not a new issue, it couldn't have

4   factored into it.

5          And then, finally, we have raised the problems and the

6   lack of information about the TCC procedures since the 9019

7   motion on the TCC settlement.  We filed an objection and we

8   were politely told this is not before the Court at this time

9   and would be addressed at a later time.  This is the time.

10          THE COURT:  This is the time.  Okay.

11          I'm going to conclude the hearing.  I am not going to

12   take the time to have other comments.  I'll make a couple of

13   closing comments myself.  I'm not going to make a ruling now,

14   obviously.

15          I want to thank the presenters for the arguments.  I

16   want to thank my court staff and our staff for running what I

17   hope has been a successful Zoom experience.

18          And we have a hearing on Tuesday for parties who are

19   objecting to confirmation.  I may have some observations or

20   questions or reflections on Tuesday that are based upon matters

21   that were argued today.  I am not going to rush a ruling, and I

22   may break it into parts.  I'm not -- all I'm trying to say is

23   when we meet on Tuesday to discuss the confirmation schedule, I

24   hope to at least have something to say about this.

25          But with that, I am -- excuse me, I'm going to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Co

1   conclude the hearing and wish you all well and I'll see you on

2   Tuesday.  Thank you for your time, everyone.

3          IN UNISON:  Thank you, Your Honor.

4      (Whereupon these proceedings were concluded)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    I N D E X

2  RULINGS:                                    PAGE LINE

3  Motion to designate the ballots              6     9

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3    I, Colin Richilano, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ COLIN RICHILANO

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  May 19, 2020

16

17

18

19

20

21

22

23

24

25


(973)406-2250 | operations@escribers.net | www.escribers.net

## A

**ability (2)**
13:12;74:5
**able (7)**
6:23;27:8;31:9;36:7;
52:1,3;66:1
**above (1)**
31:21
**absence (2)**
38:1;52:15
**absolute (1)**
25:18
**abstention (1)**
46:18
**accept (2)**
15:23;37:22
**acceptable (1)**
25:13
**accepted (2)**
8:25;9:1
**accepts (1)**
42:12
**access (3)**
14:6;19:17;55:6
**accordance (5)**
9:6;18:3;43:2;46:3;
60:18
**according (2)**
5:12;36:7
**account (3)**
28:1,11;33:12
**accounted (1)**
75:20
**accounting (4)**
30:12,16,20;31:3
**accrual (1)**
23:19
**accurate (2)**
29:16,17
**Act (1)**
13:2
**acting (1)**
29:15
**actions (3)**
35:18;53:10;76:1
**active (1)**
50:3
**actual (4)**
14:15;23:8;30:13;
32:10
**actually (20)**
23:9;24:14,21,24,25;
25:13;27:22;28:1,11,
22;29:3;32:7,8,11,15;
62:20;65:20;66:16;
67:7,9
**ad (1)**
11:8
**add (2)**
45:2;61:16
**adding (1)**

18:13
**additional (1)**
27:7
**address (15)**
11:17,19,23;14:2;
18:16;19:2;22:17;
29:20;30:2;33:5,24;
34:7;37:18,25;76:2
**addressed (9)**
7:24;14:22;35:4;
41:6;64:5;65:20;72:18,
24;78:9
**addresses (2)**
38:21;73:12,14
**addressing (4)**
11:13;16:23;22:19,
20
**adequate (1)**
7:14
**adequately (1)**
73:14
**adjudicate (1)**
49:17
**adjudicated (2)**
17:8;67:5
**adjudication (6)**
15:7,15,20;46:10;
49:24;50:11
**adjudications (1)**
56:3
**administer (1)**
64:24
**administering (1)**
12:20
**administration (2)**
46:1;70:3
**administrative (1)**
36:15
**administrators (1)**
70:2
**adopt (2)**
18:8;60:2
**ADR (15)**
49:5,7,7,15;52:13;
53:3,19;54:22,23;
55:15,23;61:5;74:5,6,
17
**advantage (2)**
55:7;63:1
**Adventist (16)**
8:5;10:24;11:17;
21:5;29:14;32:22;33:3;
48:8;62:1,2,3,8,11;
63:16;77:7,24
**adverse (1)**
44:1
**affect (1)**
38:16
**afforded (1)**
34:12
**affording (1)**
34:6
**afternoon (1)**

11:4
**afterwards (1)**
16:5
**again (14)**
7:14;8:6,23;10:1;
26:3,22;30:23;33:8;
44:13;50:22;69:1;
71:25;72:11,13
**against (14)**
16:5;17:11;21:25;
26:20;27:1;29:2;30:2;
31:22;32:9;40:21;
52:16;62:5;63:7;74:6
**agenda (1)**
6:2
**ago (2)**
15:18;72:1
**agree (10)**
21:17;24:20;25:13;
26:10;30:13;40:8;42:6,
7;62:25;74:22
**agreed (3)**
26:13;39:6;41:4
**agreement (3)**
7:13;25:25;35:20,22;
36:22;37:1,16;38:4;
39:23;40:5;52:20;61:8;
74:19
**agreements (2)**
7:12;65:25
**ahead (12)**
14:19;33:22;38:12;
51:13;58:6;61:2;63:24;
66:22;67:2;70:10;
74:11;77:5
**airbag (1)**
53:22,25;54:9
**airbags (1)**
54:15
**allegation (1)**
77:10
**alleged (1)**
48:22
**allocate (1)**
44:10
**allocation (5)**
68:25;69:18,25;70:1;
71:9
**allow (8)**
25:11,14;27:14;28:6;
32:20,21;63:6;71:13
**allowance (9)**
11:15;13:13;14:7;
17:16,24;18:2;19:18;
33:12;43:7
**allowed (19)**
12:9;16:2,7,17,19,22,
25;17:1;30:3,7;32:14;
33:8,13;43:2,5;49:23;
53:18;77:16,21
**allowing (1)**
45:14
**allows (2)**

35:20;38:24
**almost (1)**
41:18
**alone (1)**
49:14
**along (2)**
11:23;30:18
**alter (1)**
37:23
**alternative (1)**
59:7
**although (1)**
13:1
**always (1)**
77:8
**ambiguity (4)**
38:11;39:18;40:1,5
**amend (1)**
37:2
**amended (5)**
21:9,10;36:22;37:17;
76:15
**amending (1)**
36:24
**amendment (1)**
35:21
**amendments (5)**
37:19,20;38:15,15;
76:10
**American (2)**
60:2;64:15
**among (4)**
27:23;31:21;33:7;
45:16
**amount (20)**
12:11;17:1;23:10;
24:25;25:21;28:3;30:3,
6,7;31:6;32:14;33:8,
14;44:11;48:24;62:22;
66:9,10;68:6;73:13
**amounts (23)**
24:10,16,21;25:12,
14;26:10;27:24;28:2,9,
11,22,23,24,25;31:11;
32:8,10,14;40:20;
65:17;68:3;73:5;77:18
**ample (1)**
53:17
**analyses (1)**
75:19
**analysis (3)**
8:6;9:21;75:21
**announcement (4)**
6:5,6,6,18
**announcements (2)**
4:8;6:25
**antecedent (1)**
17:1
**anymore (2)**
25:7;26:18
**A-plus (1)**
61:23
**apparently (1)**

77:23
**appealable (1)**
6:17
**appear (2)**
8:17;52:18
**appearing (1)**
5:2
**appellate (2)**
71:19,22
**applicable (11)**
42:22;43:3,3,11;
44:4,4,21;45:1;68:7;
71:18;76:24
**application (1)**
61:9
**applied (4)**
30:2;31:25;32:8,10
**applies (1)**
43:20
**apply (2)**
23:1;29:23
**appointed (1)**
69:21
**appointments (1)**
52:24
**appreciate (5)**
11:9;22:5;29:14;
33:20;71:4
**appropriate (2)**
19:10;42:18
**approval (3)**
36:4;37:21;38:18
**approve (2)**
43:1;53:12
**approved (1)**
56:25
**approving (2)**
36:25;38:3
**arbitration (6)**
12:25;13:2,2,3;
74:20,22
**arbitration-type (1)**
46:25
**arbitrator (2)**
12:24,25
**area (1)**
32:16
**argue (4)**
18:15,16;19:1;33:8
**argued (2)**
74:24;78:21
**arguer (1)**
10:20
**argument (12)**
9:16;15:19,24;17:12;
21:5;45:4;46:22;49:22;
55:14;61:13;73:20;
77:22
**arguments (4)**
6:7;8:12;63:25;
78:15
**arising (2)**
73:3,7

Case: 19-30088    Doc# 7416    Filed: 05/19/20    Entered: 05/19/20 10:25:19    Page 82
of 97

**around (3)**
6:23;26:16;68:16
**arrangement (1)**
50:24
**array (1)**
14:24
**art (1)**
55:19
**Article (1)**
8:19
**artificially (1)**
33:13
**Asbestos (2)**
13:22;14:23
**ascertaining (1)**
44:8
**assert (3)**
29:23;40:12,15
**asserted (1)**
16:4
**assesses (1)**
25:5
**assign (1)**
39:20
**assigned (1)**
40:8
**assignment (6)**
6:3;45:3;60:22,23;
61:1;66:6
**assist (1)**
68:6
**assistance (1)**
68:8
**assume (6)**
8:25;16:8;18:5;
27:16,17;43:24
**assuming (1)**
39:10
**AT&T (7)**
11:19;21:5;40:14,16;
43:25;48:8;73:22
**AT&T's (1)**
47:11
**attendee (1)**
5:20
**attendees (3)**
4:24;5:5,13
**attention (2)**
19:25;72:21
**attorney (1)**
60:4
**attorneys' (18)**
41:11,12,13;42:19,
21;43:4,13,22;44:11,
15,19;59:20,23;60:3,6,
25;67:14;76:22
**attributable (2)**
73:4,8
**attributed (1)**
23:10
**Audio (2)**
4:4;36:25
**authorities (1)**

9:11
**authority (3)**
57:3,11,13
**authorize (1)**
55:6;56:5;74:19
**authorized (1)**
49:5
**available (5)**
11:18;25:19,22;
30:14;73:2,13
**avails (1)**
75:8
**avenues (1)**
62:5
**avoid (5)**
9:10;30:9;32:18;
68:20;72:2
**award (1)**
63:17
**aware (3)**
7:20;14:2;49:8
**away (5)**
17:25;35:24,25;
50:24;52:7
**awful (1)**
6:21

**B**

**b2 (1)**
53:10
**baby (3)**
74:8,11,12
**back (11)**
5:20;9:24;13:24;
14:16;36:2,16;50:3;
58:6;62:6;64:23;76:11
**backend (3)**
53:4,6;55:14
**background (2)**
4:21;35:13
**bad (1)**
24:1
**bad-faith (1)**
61:23
**balance (1)**
45:6
**ball (1)**
48:7
**ballots (1)**
6:8
**bankruptcies (2)**
68:21,23
**Bankruptcy (45)**
6:11;8:9,19;12:7;
13:13,14,19,21,25;
14:1,15;15:15;16:1,4,
6;17:17;18:4,7;19:17,
21,25;23:1;31:18,23;
32:1,3;33:14;46:10,13;
49:16;53:6;55:14,20,
23,25;57:1;59:3;61:4;
68:18,22;70:12,16;

72:3;75:2,18
**bar (1)**
13:12
**Based (4)**
38:21;57:11;77:23;
78:20
**basically (1)**
30:6
**basis (8)**
23:10;27:6,11;30:17;
35:6,17;42:1;43:3
**basted (1)**
7:6
**baton (1)**
22:2
**Bay (1)**
64:14
**become (1)**
20:21
**becomes (2)**
20:13;51:16
**begin (2)**
11:25;12:1
**beginning (2)**
13:22;27:20
**begins (1)**
4:4
**behalf (8)**
10:24;11:8,16,16,19;
15:2;22:15;29:14
**behind (1)**
52:21
**believes (1)**
25:8
**below (1)**
74:15
**beneficiaries (2)**
58:21,24
**beneficiary (1)**
58:23
**benefit (2)**
23:22;66:20
**benefits (1)**
23:4
**Benjamin (1)**
73:21
**best (2)**
31:19;59:11
**better (2)**
21:15,19
**beyond (2)**
21:12;73:19
**Biaggio (2)**
31:19;32:5
**big (2)**
8:4;32:17
**big- (1)**
8:16
**bigger (2)**
46:18;53:14
**biggest (1)**
77:24
**big-ticket (2)**

8:16;38:11
**billion (2)**
56:22;63:17
**billions (2)**
62:24;68:12
**bind (1)**
17:19
**binding (14)**
12:22;20:22;30:5;
31:17;49:4,7,7,15;
52:13;53:3;74:5,6,20,
22
**bit (2)**
12:20;24:23
**blame (3)**
47:12,13,15
**bodies (1)**
64:20
**booked (1)**
62:24
**born (1)**
59:4
**both (3)**
10:5;32:9;40:19
**bound (1)**
49:13
**box (1)**
49:1
**brand-new (1)**
77:13
**break (2)**
36:25;78:22
**breaking (1)**
67:12
**breast (1)**
14:23
**brief (11)**
17:4;24:12,19;28:20;
29:22;41:11;53:1,9;
55:11;59:25;65:10
**briefed (1)**
30:3
**briefing (3)**
7:14;22:18;41:10
**briefly (3)**
33:5;58:8;72:17
**briefs (5)**
6:25;7:24;9:8;19:8;
72:13
**bring (5)**
4:6;13:12;20:14;
62:1;70:2
**bringing (1)**
49:15
**brought (3)**
19:25;47:16;62:23
**budgeting (4)**
71:12,15;75:15,17
**built (1)**
35:16
**built-in (2)**
38:4;76:19
**bundle (4)**

51:16,16,18,20
**burden (1)**
48:19
**burnt (1)**
64:20
**business (14)**
9:19;11:8;40:14;
46:6,9;52:17;53:15;
55:10,13;61:6;64:22,
24;65:19;71:15
**businesses (1)**
23:5
**busy (1)**
6:12
**Butcher (1)**
13:15
**Butte (2)**
47:8;48:21
**button (1)**
29:18
**buy (1)**
39:4

**C**

**CAL (1)**
64:15
**CALIFORNIA (6)**
4:1;9:12;59:23;60:9,
18;70:5
**Call (6)**
4:3,11;5:1;34:7;
46:24;50:18
**called (2)**
9:4;70:16
**calling (1)**
5:25
**came (2)**
34:24;65:23
**can (73)**
15:22;16:4;17:25;
19:23;20:14,24;22:11;
23:8;24:25;25:2,4,7,9,
9,16,24;26:11,13;
27:25;28:8;30:2,17;
31:2,5;32:13,24;33:8,
24;36:14,22;38:1;39:2,
9;40:12;41:9;42:25;
45:12,13;47:9,15;
49:15,20,25;50:16;
52:13;53:11,12;55:20;
56:10,20;57:5;58:9;
60:24;61:8,21;62:1,6,
10,11;63:9,17,24;65:5,
6;66:6,7;67:8;70:19;
72:11,11;74:25;75:20;
76:11
**cap (1)**
16:20
**Capital (2)**
32:6,10
**Carlson (2)**
31:19;32:5

Case: 19-30088    Doc# 7416    Filed: 05/19/20    Entered: 05/19/20 10:25:19    Page 83
of 97

**carrier (5)**
31:13;62:6,13;63:19;
66:8
**carriers (3)**
61:22,24;62:24
**carrying (1)**
48:7
**carve (1)**
52:3
**case (60)**
5:16,17,19;6:15;
9:12;13:15,17,19,22;
14:1,20;16:9;19:4,4,6,
7,15;20:2,6,11;24:22;
30:4;32:4,11,12,22;
33:2;42:16;50:4;51:21,
25;52:17;53:1,19,20;
54:1,3,4,5,12,14,16,16,
24;55:16,17,22;56:3;
57:4;58:3;59:15;63:7;
65:21,24;67:10,24;
71:16,16,17;77:25
**cases (31)**
9:13;13:10,21,24;
14:15;19:6,8,9;20:23;
24:22;28:18,21;29:2,3,
25;32:2,9;47:7;49:2;
53:1,5;54:17,19;55:10;
56:1;70:4,14;72:4;
75:2,3,18
**cat (1)**
74:9
**categories (1)**
71:18
**category (2)**
5:20;71:17
**cause (4)**
21:20;65:13;66:7;
68:5
**caused (1)**
74:14
**certain (6)**
17:21;18:17;20:9;
39:23;44:5,5
**certainly (10)**
7:9;8:21;14:21;15:3;
32:11;33:24;39:1;42:7;
48:20;76:21
**certainty (3)**
70:19,20;76:8
**cetera (2)**
19:9;68:24
**challenge (2)**
20:15;55:18
**challenges (1)**
7:16
**Chancery (2)**
59:1,2
**change (7)**
5:21;6:4;7:25;18:18,
21;58:22;75:21
**changes (8)**
18:17,17;36:7,15;

37:23;43:19,20;58:16
**Chapter (8)**
49:20;50:1;51:20,24;
52:9,13;53:2;59:18
**Chapters (1)**
52:6
**character (2)**
21:24,25
**charge (1)**
11:1
**charm (1)**
4:12
**charter (2)**
35:10;58:17
**Chief (1)**
29:16
**choice (1)**
31:22
**choose (1)**
35:23
**Circuit (6)**
16:14,15;29:25;32:2;
43:19;52:11
**circular (2)**
17:6;63:10
**circulated (1)**
58:2
**circumstance (1)**
25:20
**cited (9)**
9:12,13;13:10;19:8;
20:12;28:20;32:12;
53:1;74:8
**citing (2)**
74:11,12
**claim (68)**
8:23,23;12:8,9,11,
15;14:7,9;15:4,8,15,16,
20;16:2,3,17,19,22;
17:1,7;23:13,25;24:1,
3;25:9,12,16;26:19,20;
27:1;29:1;30:3,7,9,14;
32:14;33:1,9,12,13;
40:21,21;43:4,5,8,8;
44:4,16;46:11;48:24,
25;49:4,17,23,23,25;
50:11;52:16;55:21;
57:19;60:6,17;62:12;
63:7,10,16;77:13,16
**claimant (13)**
14:5;19:15;23:11;
30:18;32:9;41:23;
42:12,21;49:24;63:3;
64:25;68:6,7
**claimants (31)**
10:24;11:8;17:20;
29:14;30:15;33:7;
34:20;45:11;46:6,9;
47:20;52:17;53:2,11,
13,15;54:20,21;55:10,
13;58:20;59:23;60:8;
61:6,21;62:16;64:22;
68:6;74:6;75:5;77:25

**claimants' (2)**
15:1;34:24
**claimant's (1)**
33:14
**claiming (1)**
40:20
**claims (74)**
9:5;10:3,8;11:15;
13:13,18;14:12,14,22,
22,23,24,24;16:7,25;
17:16,24;18:2,6;19:12,
13,17;20:10;21:24;
23:8,10,14,15,15;24:3,
9,15,25;26:11;33:14;
34:11,12,15,19,20;
35:6;36:1;37:10;39:4;
40:3;42:10;43:2,16,16;
44:23,24;45:24;46:2;
48:4,4;53:3,7,24;
55:24;56:2;58:1;60:1,
4,7,14;62:12;69:18;
70:2,3;71:16,16;75:19;
76:13,25
**clarified (1)**
61:6
**clarify (1)**
41:9
**clarity (3)**
43:1;76:2,5
**class (17)**
8:9;9:1;15:21,22,22;
17:10,15;19:12;21:18;
51:22;53:10,11;56:5,6,
21,24;57:17
**classes (3)**
20:9;56:5,7
**clear (19)**
5:5;12:7;13:2;16:6;
20:10,22;22:10;26:6,7;
29:3;35:5;38:22;39:19,
22;40:10,10;50:5;51:2;
76:6
**clearly (1)**
75:24
**CLERK (1)**
4:9
**client (6)**
5:2;26:24;37:3;
40:14;60:3;63:21
**clients (7)**
7:21;17:7;23:6;
43:24;44:13;68:21;
72:2
**client's (1)**
77:4
**clock (1)**
67:15
**closing (1)**
78:13
**cocounsel (1)**
60:21
**co-counsel (1)**
50:15

**Code (16)**
6:11;12:7;16:1,6,7,
12,18,24;17:17,22;
18:4;33:14;46:4;49:20;
52:6;70:16
**cold (1)**
36:6
**collateral (7)**
9:8;20:15;22:19;
28:22;29:24;30:1;
61:10
**colleagues (1)**
10:21
**collect (1)**
63:13
**collectively (1)**
36:6
**color (1)**
27:14
**Colorado (1)**
13:16
**combination (2)**
25:10;45:22
**Comcast (6)**
8:4;11:7;15:3;21:5;
43:25;48:8
**comfort (1)**
36:6
**comment (1)**
77:12
**comments (4)**
4:14;10:19;78:12,13
**commercially (4)**
24:4;26:14,17;66:15
**commits (1)**
26:25
**committee (5)**
34:24;35:21;36:5,14;
45:12
**common-law (1)**
61:9
**companies (1)**
24:2;65:23,25;66:13
**company (5)**
9:19;23:9;25:3;27:4;
28:25
**company's (3)**
23:19;24:20;25:2
**compensate (1)**
60:8
**compensated (1)**
56:21
**compensation (1)**
64:20
**complain (2)**
20:24;21:12
**complained (1)**
67:21
**complaint (1)**
15:14
**complicated (1)**
71:8
**compliment (1)**

7:1
**comport (1)**
17:17
**comports (1)**
17:24
**compromise (1)**
56:6
**compromised (1)**
50:1
**conceded (1)**
61:13
**concern (12)**
33:6;34:16;35:9;
37:18,25;39:9;41:24;
44:24;60:10;61:7,25;
66:15
**concerned (6)**
33:23,25;34:25,25;
37:8;62:7
**concerning (1)**
76:15
**concerns (4)**
37:13;65:19;72:25;
73:14
**conclude (5)**
45:4;64:10;73:18;
78:11;79:1
**concluded (2)**
6:9;79:4
**conclusion (1)**
60:11
**condemnation (6)**
41:13;43:20;44:1,2;
60:5;67:13
**conduct (1)**
42:17
**confidence (1)**
76:12
**confirmation (23)**
19:16;20:12,14;36:9,
17;37:16;38:3,3,7,10;
49:19;50:2;51:8,10,19;
52:8,25;57:17;67:4,17,
18;78:19,23
**confirmed (2)**
20:18,21;59:9
**conflating (1)**
33:11
**conflict (2)**
38:21;58:16
**confusion (3)**
5:8;38:11;41:10
**connection (1)**
62:20
**conscience (1)**
66:19
**consensual (1)**
9:4
**consensus (1)**
51:24
**consent (4)**
13:3,6;35:20;51:23
**consenting (1)**

Case: 19-30088    Doc# 7416    Filed: 05/19/20    Entered: 05/19/20 10:25:19    Page 84
of 97

59:6
**consequences (1)**
75:25
**consider (8)**
5:25;27:23,25;28:2;
48:18;55:25;57:16;
73:13
**consideration (3)**
34:18,23;66:11
**consistent (13)**
15:9;16:16;38:2;
60:9;65:14;66:11;
68:19;69:20,23;70:6,
12;71:23;75:13
**consistently (1)**
45:24
**constitutionally (1)**
53:8
**constraint (2)**
37:5,25
**constructed (1)**
53:18
**contemplate (1)**
44:18
**contemplated (2)**
10:6;32:8
**contemplates (1)**
47:1
**contended (1)**
34:10
**contends (1)**
18:19
**context (4)**
32:3;49:2;68:15;
76:25
**continually (1)**
65:22
**continue (1)**
31:15
**continues (1)**
64:5
**contract (4)**
52:10,12,13;63:9
**contrary (3)**
14:16;36:9;58:15
**contributing (1)**
31:8
**control (3)**
9:12;17:21,23
**controversies (2)**
56:5,6
**cooperation (1)**
35:4
**core (1)**
35:15
**Corning (4)**
68:20,21,22;72:1
**corporate (3)**
8:2;8:44:13
**Corporation (2)**
4:5;8:4
**corrected (1)**
62:1

**costs (2)**
46:1;64:24
**counsel (12)**
7:3;8:2,13;45:11;
50:4;58:9;60:12,12,24;
62:2;69:22;73:21
**counsel's (1)**
49:22
**count (2)**
5:12;22:1
**County (2)**
47:8;48:21
**couple (6)**
4:14;6:24;7:2;8:14;
64:1;78:12
**course (8)**
10:6;16:13;40:17;
42:15;53:23;62:8;
67:11;70:12
**Court (218)**
4:3,4,7,10,22;5:2;
8:20,20;11:3,10,14;
12:1,10,15,24;13:5,6,
13,14;14:13,17;15:7,
10,12,14,15;16:8,11;
17:3;18:5,7,15,23;19:1,
11,17,21;20:1,5,20;
21:2,4;22:1,4,7,12;
23:18;26:1,3,6,12,21,
24;27:4,12;28:12,15,
19;29:5,8,11,16;30:22;
31:2,14;32:13;33:16,
21;34:1,3;35:8;36:8,
11,13,21,24;37:2,12,
14,21;38:6,18;39:1,11,
14;40:23,25;41:7,17,
19,21;42:25;43:17,19;
44:7;45:2,13,18;46:7,
10,12,13,16,19,21,22;
47:3,3,7,8,12,15,18,21,
25;48:6,13,14,17,21,
24;49:4,7,10,13,15,16;
50:3,10,16;51:9,13;
52:19,21;53:6,12,12,
14,20,22;54:4,7,9,25;
55:3,5,6,14,23;56:4,4,
8,17,20;57:1,3,9,14,20;
58:4,13;59:1,1,2,3,3,6,
12,14,20;60:5,16,19;
61:5,11,16,19;63:5,14,
20,23;64:7;65:1,6;
66:17,24;67:8,10,24;
69:1,5,7,9,12,15;70:7,
9,11,25;71:3,6,11,14;
72:8,23;73:16,24;74:5,
8,10,13,16,19,21;77:2;
78:8,10,16
**CourtCall (1)**
4:16
**courtroom (4)**
5:9,20,23;47:20
**courts (1)**
14:10

**Court's (11)**
4:15;11:12,25;15:13;
18:20;19:23;48:19;
55:21;69:19;72:21,23
**cover (3)**
24:17;29:10;42:10
**coverage (9)**
24:20;25:2,3,5;66:1,
5,10;77:5,11
**covered (3)**
25:22;62:10;65:12
**covers (1)**
60:15
**Craig (1)**
11:6
**created (4)**
51:17;65:9;69:20,21
**creates (1)**
40:1
**credit (3)**
9:22;24:21;26:20
**creditor (2)**
18:1,2
**creditors (13)**
11:14;15:21;17:15;
21:18,21,23;31:21;
37:24;51:15,22;52:1,
10;57:2
**creditor's (1)**
13:12
**credits (1)**
9:10
**criteria (1)**
75:24
**criticizing (1)**
72:14
**cryptic (1)**
34:17
**cumbersome (1)**
49:1
**currency (1)**
48:25
**current (2)**
22:23;50:23
**currently (1)**
44:17
**cut (2)**
19:16;72:9
**Cynic (1)**
9:18

**D**

**damage (10)**
26:25;43:9,16,21;
44:1,10,24;54:18;
59:22;66:10
**damages (7)**
15:1;21:24;24:17;
44:5;73:3,7,9
**date (7)**
12:11;16:3;35:23;
42:10,11,12;51:17

**David (1)**
22:14
**day (8)**
24:7,8;35:22;42:17;
46:23;50:6,10;54:9
**days (4)**
6:12,22;47:10;67:18
**DCC (1)**
63:23
**de (4)**
46:10;47:6;61:4;
71:20
**deadline (2)**
65:8;71:3
**deal (10)**
6:1;10:3;40:16,18;
42:23,24;60:23;69:22;
75:18;78:1
**dealing (4)**
6:20;51:11;60:4;
65:23
**dealt (5)**
9:7;63:24;67:16;
69:10;70:13
**death (2)**
53:24;54:11
**debtor (4)**
16:5;51:15;52:10;
66:13
**debtors (8)**
7:13;39:21,25;40:3,
15,15,18,19
**debtor's (2)**
21:25;31:20
**decades (1)**
75:2
**decide (2)**
15:10;36:6
**decided (1)**
42:23
**decision (7)**
6:13;13:14;16:8,14,
15,20;71:19
**decisions (1)**
16:15
**decree (2)**
59:10,16
**deduct (3)**
25:12,14;32:14
**deducted (3)**
29:1;30:13;68:3
**deducting (1)**
33:9
**deduction (1)**
30:8
**deductions (1)**
11:18
**deemed (1)**
12:9
**deems (1)**
25:15
**defend (1)**
70:17

**Defendant (1)**
56:13
**defer (1)**
50:14
**deflate (1)**
21:3
**degree (1)**
76:12
**Del (2)**
31:19;32:5
**Delaware (3)**
58:19;59:2;76:11
**Delaware's (1)**
59:1
**delay (1)**
21:21
**delayed (1)**
14:14
**deluge (1)**
48:1
**demand (1)**
61:23
**denial (1)**
24:20;52:16
**denials (1)**
24:4
**denies (1)**
25:3
**deny (4)**
6:9;24:3;27:6,11
**denying (1)**
23:25;54:8
**dependent (1)**
77:16
**depending (1)**
68:17
**deprive (2)**
11:14;15:12
**depriving (1)**
15:19
**deputy (1)**
5:23
**described (1)**
5:1
**describing (1)**
16:16
**design (1)**
68:18
**designate (1)**
6:7
**designed (1)**
69:20
**designing (1)**
64:21
**detail (3)**
6:14;7:15;55:11
**determination (9)**
12:14,22;13:4;14:6;
18:14,20;19:11,18;
46:14
**determinations (1)**
14:25
**determine (5)**

Case: 19-30088    Doc# 7416    Filed: 05/19/20    Entered: 05/19/20 10:25:19    Page 85
of 97

12:11;30:18;31:5;
48:24;65:16
**determined (2)**
17:16;43:8
**determines (3)**
25:5;17;77:17
**determining (2)**
16:25;73:13
**devastated (1)**
7:23
**dictate (1)**
52:2
**difference (5)**
8:22,22;17:4,5;63:12
**different (14)**
4:16;10:17;19:4;
21:19;31:12,18,22;
32:4,20;43:7,14;51:16;
70:15;71:17
**diligently (1)**
61:21
**direct (2)**
56:4;72:21
**directing (1)**
15:11
**direction (1)**
11:10
**disallowance (1)**
16:21
**disclosure (10)**
34:17,21;35:9,10;
37:11;39:8;50:5,7;
51:7;57:21
**discourage (1)**
7:9
**discretion (3)**
12:16;15:10;25:18
**discuss (1)**
78:23
**discussed (1)**
55:11
**discussion (4)**
6:19;7:9;50:19;
69:16
**disparate (1)**
33:6
**dispenses (1)**
56:2
**dispute (2)**
13:12;38:23
**disputed (2)**
46:2;49:4
**disputes (2)**
11:15;24:3
**disregard (2)**
24:19;25:4
**disregarded (1)**
25:7
**dissatisfied (1)**
14:5
**dissenting (1)**
17:25
**distinction (2)**

**distinctions (1)**
44:22
**distribution (8)**
33:12;41:25;42:3,6,
12,13,17;63:18
**distributions (5)**
30:17,19;31:5;32:25;
42:15
**District (5)**
13:15,16,23;15:14;
46:21
**divide (1)**
56:23
**divided (1)**
10:21
**divvy (1)**
11:1
**docket (2)**
16:9;48:20
**doctrine (3)**
9:8;41:13;43:20
**document (4)**
35:11;37:5;58:23;
66:16
**documents (29)**
22:23;24:13,14,23,
24;25:11,14,20;27:19,
22,22;28:5,6;33:6;
35:1,5,19;38:19;39:18;
44:18,25;50:5;51:1,21;
58:1,12;76:3,4,5
**dollar (1)**
63:10
**dollars (10)**
7:18;8:9;26:25;27:1;
40:16;56:14,22;62:24;
63:17;68:13
**Donato (1)**
4:19
**done (15)**
5:7;19:6;37:21;46:3,
3;51:23;52:22;64:9;
71:20;75:19;76:4,4,6,6,
10
**door (1)**
47:20
**double (14)**
9:9;26:6,8;30:9,10;
32:18,21,24;33:2;
45:19;61:9,12,13,17
**doubt (1)**
7:7
**Dow (5)**
19:9;68:20,21,22;
72:1
**down (3)**
20:15;57:23;77:7
**dozens (5)**
5:11,11;70:3,4;71:21
**drafted (3)**
44:17;66:2,3
**drafting (8)**

38:23;39:2,7,10;
41:5;59:21;76:21,23
**draws (1)**
16:14
**due (3)**
50:13;52:17;68:6
**during (1)**
49:22

## E

**earlier (2)**
23:12;72:23
**easily (1)**
40:25;55:23
**easy (3)**
26:12;30:23;31:3;
38:18;76:16
**effect (1)**
19:21
**effected (1)**
19:22
**effective (2)**
16:3;35:23
**effectively (1)**
75:20
**effort (4)**
5:6;61:23;65:16;
77:1
**efforts (17)**
15:6,12;25:19,21,24;
26:14,17;61:25;65:16,
18;66:16;68:2,4;73:2,
9;77:8,18
**eight- (1)**
48:4
**Elder (7)**
55:12,12,17,19,20,
25;57:4
**elements (1)**
43:8
**eligible (1)**
44:6
**else (6)**
5:3,22,25;33:3;39:4;
46:16
**emerges (1)**
13:24
**emphasize (1)**
34:9
**emphatically (1)**
14:16
**end (13)**
5:24;6:5;10:18;18:9;
24:7,8;26:18;39:16;
42:1;46:23;50:8;66:9,
10
**enforceable (1)**
20:22
**enforced (1)**
59:4
**engage (1)**
15:11

**enough (2)**
25:8;41:20
**ensure (3)**
34:19;68:9;69:25
**entered (2)**
19:24;68:21
**entire (1)**
18:10
**entities (6)**
8:8;11:16;22:15;
23:5;65:20;66:14
**entitled (7)**
12:16;15:7;18:2;
42:21;44:12;70:14,15
**entitlement (5)**
27:7;43:4,9,24;48:22
**entitles (1)**
44:5
**entity (1)**
62:7
**ephedra (1)**
68:23
**equal (2)**
21:18;34:13
**equality (1)**
35:16
**equitable (2)**
49:21;60:9
**equity (1)**
32:6
**equivalent (1)**
46:25
**error (1)**
59:21
**espouse (1)**
23:7
**essential (2)**
23:5;35:15
**established (3)**
14:3;15:5;51:21
**establishing (1)**
62:21
**estate (6)**
21:25;31:21;32:18;
51:17;52:6;57:5
**estate's (1)**
39:20
**estimate (1)**
63:18
**estoppel (1)**
22:19
**et (2)**
19:9;68:24
**evaluated (1)**
71:18
**evaluation (1)**
71:9
**even (17)**
4:18;17:11;18:19;
19:25;23:6;32:3;42:3;
45:5,6;46:18;48:3;
54:20;60:25;61:11,12;
63:6;66:21

**event (4)**
15:6;16:22;47:17;
58:22
**everybody (3)**
42:1;50:6;61:8
**everyone (7)**
4:11;5:3;21:10;75:8,
10;76:7;79:2
**exact (1)**
71:23
**exactly (1)**
34:11
**example (5)**
23:12;37:7;44:9;
77:20
**exceed (1)**
30:8
**except (5)**
40:6,11;77:12
**exception (4)**
14:2,4;66:7;68:4
**exceptionally (1)**
13:18
**excuse (5)**
26:1;44:2;56:18;
59:22;78:25
**execution (1)**
42:10
**exercise (3)**
15:10;65:16;68:2
**exercised (3)**
65:17;73:2;77:17
**exhausted (1)**
63:6
**exhausts (1)**
62:5
**exist (4)**
69:18;72:3,4,5
**existing (1)**
77:10
**exists (2)**
70:5;75:17
**expect (1)**
15:3
**expectation (2)**
40:17;75:1
**expected (1)**
9:23
**expeditiously (1)**
45:24
**expensive (1)**
75:9
**experience (10)**
4:16,17;5:6;14:7,15;
38:7;47:19;75:3,7;
78:17
**experts (2)**
70:1,2
**explain (5)**
11:1;13:9;15:25;
54:23;59:25
**explained (1)**
32:5

Case: 19-30088    Doc# 7416    Filed: 05/19/20    Entered: 05/19/20 10:25:19    Page 86
of 97

**explaining (1)**
    6:13
**extend (1)**
    42:14
**extended (1)**
    42:11
**extension (1)**
    49:5
**extensive (1)**
    6:25
**extent (6)**
    7:7,23;8:3;38:14;
    44:21;61:21
**extreme (1)**
    26:22
**extremes (1)**
    28:3

## F

**F3d (1)**
    52:11
**faced (1)**
    77:20
**facing (2)**
    40:2;77:11
**fact (6)**
    10:16;17:8;32:10;
    39:19;43:2;76:19
**factored (2)**
    62:24;78:4
**fair (4)**
    8:17;34:13;51:25;
    64:19
**fairly (2)**
    45:25;60:8
**fairness (1)**
    21:9
**faith (5)**
    12:18;24:1,1;25:5;
    27:21
**fall (1)**
    52:7
**falling (1)**
    48:2
**families (2)**
    7:22;8:7
**family (1)**
    64:12
**far (1)**
    32:10
**favor (2)**
    15:11;17:15
**featured (1)**
    5:17
**Federal (6)**
    13:1;23:19;31:23;
    53:10;69:24;70:4
**fee (2)**
    60:25;76:22
**feel (1)**
    6:15
**fees (15)**

41:11,13;42:19,21;
    43:4,13,22;44:11,15,
    19;59:20,23;60:3,6;
    67:14
**Ferraro (2)**
    28:18;29:1
**few (2)**
    6:12,20
**fifteen (3)**
    11:12,17;68:22
**Fifth (1)**
    16:14
**figure (4)**
    42:24;43:12;44:10,
    14
**figured (1)**
    10:21
**file (1)**
    33:1
**filed (8)**
    12:10,13,15;13:20,
    22;35:1;55:22;78:7
**files (1)**
    19:20
**Filex (1)**
    13:14
**filing (4)**
    12:8,12;15:14,14
**final (12)**
    10:10;12:22;20:13,
    21;32:16;46:10;52:15;
    54:21;59:10,16;64:17;
    74:20
**finality (1)**
    36:9
**finally (3)**
    32:16;33:5;78:5
**financial (1)**
    38:25
**fine (2)**
    7:24;22:16
**finish (2)**
    30:16;67:2
**finished (1)**
    5:18
**fire (33)**
    7:13;8:7;9:1;12:16;
    14:13;23:2,4;24:1,5,
    15;25:4,12,15,18;
    34:13,19;35:5;40:21;
    45:24;52:16;62:12,22;
    63:18;64:15;66:8;68:4,
    11,11,13;72:4;73:1,7,8
**fires (3)**
    7:20;8:3;64:11
**first (22)**
    7:4;10:25;12:5;
    13:10,19;14:17,20;
    22:25;30:1;34:9;35:13;
    41:25;42:16;46:8;49:3;
    55:17;58:12;60:7;62:3;
    64:15;77:9,9
**five (10)**

11:21;12:2;45:5,6,7;
    46:8;52:1;58:5,20;
    73:17
**fix (12)**
    18:8;26:3,4,5,9;31:3;
    38:8,13,18;39:9;56:5;
    60:13
**fixed (2)**
    37:14;51:21
**flags (1)**
    64:15
**focus (9)**
    7:2,3,15;8:11,14;
    9:11,16;10:13;42:20
**focused (3)**
    8:21;37:10;53:4
**focusing (1)**
    8:1
**folks (2)**
    64:1;71:13
**follow (1)**
    43:11
**followed (1)**
    4:19
**following (6)**
    6:15;8:14;27:8;
    30:24;31:2;46:20
**follows (2)**
    73:1,5
**forced (1)**
    14:13
**forgot (1)**
    73:20
**forgotten (1)**
    50:17
**form (4)**
    15:20;21:13;30:15;
    51:10
**format (1)**
    4:18
**formulate (1)**
    9:21
**fortune (1)**
    64:24
**forty (1)**
    27:5
**forward (4)**
    10:16;18:8;51:3;
    76:8
**found (2)**
    5:6;13:11
**four (4)**
    48:7,15,21;58:4
**Fourteen (1)**
    67:18
**FRANCISCO (1)**
    4:1
**frankly (2)**
    29:21;76:17
**FRIDAY (1)**
    4:1
**front (1)**
    47:10

**full (5)**
    16:3;25:21,23;30:7;
    68:6
**fully (2)**
    16:15;30:3
**function (1)**
    30:16,20,21;31:3
**fund (6)**
    45:25;46:2;57:2;
    68:14,16,18
**fundamental (6)**
    23:7;24:10;38:23;
    52:12;67:6;76:1
**fundamentally (2)**
    21:23;37:23
**funding (1)**
    32:7
**Funny (1)**
    5:1
**further (8)**
    4:7;30:4;42:12,15;
    53:14;56:7;57:1,19
**future (1)**
    42:1

## G

**G-1 (1)**
    19:8
**galleries (1)**
    55:19
**game (1)**
    18:9
**Garbel (2)**
    28:18,25
**gave (4)**
    6:22;23:12;37:7
**gee (1)**
    20:19
**general (2)**
    6:24;21:17
**generally (1)**
    76:24
**generator (1)**
    17:17
**Gerald (1)**
    72:20
**gets (3)**
    14:9;44:15;61:9
**given (4)**
    6:2;7:16;17:23;
    34:18
**gives (3)**
    9:4;43:21;48:11
**giving (3)**
    6:19;51:3;54:20
**gleaned (1)**
    69:15
**gloomy (1)**
    10:1
**goal (4)**
    34:9,11;68:9,20
**goes (8)**

7:14;9:19,19,19;
    26:20;27:5;57:4;71:8
**Goldblatt (25)**
    10:25;11:4,6,7;12:4;
    13:1,8;14:20;16:10,13;
    17:12;18:12,24;19:5;
    20:9;21:3,8;22:1,3,5,8,
    11;43:6;53:4;75:1
**good (21)**
    4:11;10:23;11:4,4;
    12:2,18;22:14;24:1;
    25:5;27:21;29:13;
    36:16;45:10;59:24;
    65:5,13;66:7;68:5;
    69:1;72:5,14
**govern (1)**
    31:24
**governing (1)**
    44:4
**government (1)**
    66:14
**granted (1)**
    37:24
**grave (1)**
    61:25
**great (2)**
    7:14;21:20
**greater (1)**
    55:11
**gross (1)**
    53:12
**ground (1)**
    19:16
**group (3)**
    7:17;11:8;72:5
**group's (1)**
    11:22
**guardrails (1)**
    26:16
**guess (3)**
    9:15;59:19;67:17
**guessing (1)**
    40:13
**guidance (1)**
    70:18
**guidelines (1)**
    26:15

## H

**half (2)**
    27:5;64:11
**Hammond (1)**
    5:6
**hand (2)**
    29:22,24
**handful (3)**
    14:10;75:3,11
**handle (2)**
    11:22;47:8,9
**handwritten (1)**
    64:13
**happen (3)**

Case: 19-30088    Doc# 7416    Filed: 05/19/20    Entered: 05/19/20 10:25:19    Page 87
of 97

10:4,5;42:2
**happened (1)**
    75:13
**happens (5)**
    9:16;12:3;42:18;
    52:2;76:5
**happy (4)**
    11:25;39:6;76:21,25
**hard (1)**
    25:8
**hardball (2)**
    23:19,24
**hate (1)**
    9:18
**Health (5)**
    10:24;32:22;33:3;
    77:8,24
**hear (7)**
    5:21;10:4;22:9,16;
    30:25;45:12;65:5
**heard (8)**
    5:23;6:7;11:9;46:22;
    58:8;65:3;72:10;76:3
**hearing (19)**
    4:20;5:24;22:9;
    27:20;46:8;48:15;
    50:16;56:4,7;57:17,19;
    60:11;64:17;72:12;
    73:18;77:9;78:11,18;
    79:1
**heart (1)**
    31:23
**heavily (2)**
    9:7;55:13
**held (1)**
    46:2
**herring (1)**
    58:19
**hey (1)**
    20:6
**high (1)**
    76:12
**himself (1)**
    36:4
**history (4)**
    7:11,15,25;14:11
**hit (3)**
    29:18;71:5;74:3
**hoc (1)**
    11:8
**hold (3)**
    21:24;38:24;39:8
**Holdings (1)**
    19:9
**homeowners (1)**
    23:7
**homes (3)**
    8:8;64:13,20
**homework (1)**
    45:3;60:22,23
**honestly (1)**
    50:13
**Honor (83)**

4:5,9;10:23;11:6,24;
    12:4,17;13:17;14:20;
    15:2,17,23;16:10;
    17:12,14;18:12;19:5,
    14,19,19;20:11;21:8,
    22;22:5,14;23:12,25;
    24:18,24;26:5;27:19;
    29:4,13,20;30:12;31:4,
    15;33:18,19,23;34:5;
    35:12;36:10,19;37:4,9,
    15,18;38:14,20;39:6,
    17;40:7;41:4,16;42:20,
    25;44:3,17;45:9,10,22;
    47:9,17;50:12;51:6;
    54:6,13;56:18;58:18;
    59:24;61:3;63:10;64:3,
    4,25;65:7;71:8;72:17;
    73:11,21;77:6;79:3
**honored (1)**
    9:3
**Honor's (2)**
    14:8;37:22
**hook (1)**
    62:13
**hope (4)**
    15:3;27:8;78:17,24
**hopefully (3)**
    4:12;41:20;46:6
**hospital (3)**
    8:4;43:25;63:5
**hospitals (1)**
    62:8
**hour (1)**
    71:8
**house (1)**
    64:12
**huge (1)**
    62:9
**huh (1)**
    59:1
**humans (1)**
    7:22
**hundred (1)**
    30:9
**hundreds (2)**
    10:7;64:13
**hybrid (2)**
    54:17,18
**hypothetical (4)**
    26:22;27:9;40:13;
    59:13

**I**

**identified (5)**
    8:15;10:20;14:18;
    41:1;53:12
**ignore (1)**
    28:8
**ignored (1)**
    29:25
**III (1)**
    8:19

**illustrates (1)**
    51:25
**imagine (1)**
    47:21
**impact (1)**
    34:20
**impair (2)**
    33:8;49:21
**impaired (4)**
    9:5;17:7;50:1;58:24
**impairment (8)**
    8:23;15:21,21;16:1,
    7,24;17:2,9
**implant (1)**
    14:24
**importance (1)**
    32:17
**important (7)**
    19:14;30:19;54:24,
    25;55:3;61:7,24
**importantly (1)**
    32:6
**impose (2)**
    15:22;57:6
**imposed (2)**
    20:2;52:5
**impractical (1)**
    42:5
**impracticalities (2)**
    48:19;54:20
**improperly (1)**
    19:16
**impugning (2)**
    27:20;28:7
**in-and-out (1)**
    68:24
**incentive (2)**
    24:7;62:10
**incentivize (1)**
    61:21
**include (4)**
    13:14;35:2;43:14;
    52:13
**included (3)**
    34:17;44:20;77:13
**including (5)**
    5:6;17:8;19:8;43:4;
    52:19
**inconsistent (1)**
    36:17
**incorrect (1)**
    17:18
**increased (1)**
    62:14
**incumbent (1)**
    20:25
**indeed (2)**
    53:5;77:5
**indicated (1)**
    27:20
**Indiscernible (5)**
    22:4;70:22;71:1;
    73:25;75:13

**individual (11)**
    14:25;17:20;23:6;
    46:11;49:24;53:3,7,13;
    56:2;57:2,19
**individuals (1)**
    12:20
**inference (1)**
    74:23
**influences (1)**
    10:11
**information (7)**
    30:14,15,19;31:6,10,
    11;78:6
**initial (1)**
    72:18
**initiated (1)**
    34:16
**injured (1)**
    54:15
**injury (10)**
    21:23;43:10,15;
    44:10,14,23;53:24;
    54:11,18;59:22
**injustice (1)**
    76:16
**inks (1)**
    7:6
**insignificant (1)**
    47:25
**insolvency (6)**
    27:5;28:1,4,10;
    65:12,12
**insolvent (2)**
    9:20;23:13
**instance (1)**
    78:3
**instances (1)**
    53:6
**instant (1)**
    55:19
**institutional (1)**
    52:1
**insurance (52)**
    9:19;11:18;18:18;
    22:17;23:2,3,9,10,18;
    24:2,5,9,10,13,16,19;
    25:1,1,2,3,9,17,19;
    26:15;27:4,25;28:25;
    31:13;33:9;58:12;61:6;
    62:17,19,25;63:2;
    65:11,14,23,25;66:8,
    12;67:4;68:7;69:9;
    73:3,6,9,13;75:23;77:4,
    10,19
**insured (5)**
    9:20;32:23;33:3;
    62:16;63:3
**insurer (12)**
    9:17,18;23:12,13,16,
    24;25:21,24;26:10,25;
    32:23,25
**insurers (3)**
    23:14;31:8;33:3

**integrated (2)**
    66:12,14
**integrity (2)**
    7:4;12:18
**intend (1)**
    6:13
**intends (1)**
    39:10
**intention (1)**
    60:1
**interest (5)**
    16:21;23:20;38:25;
    58:3;59:11
**interested (1)**
    59:14
**interesting (1)**
    19:1
**interests (2)**
    16:9;39:9
**interfere (1)**
    8:12
**interrupt (5)**
    28:12;46:12;66:17,
    18;67:10
**into (21)**
    5:9;7:14;18:10;
    22:21;24:22;27:5;28:1,
    10,17;35:13,16;49:1;
    56:20;62:24;63:20;
    66:1;68:21;70:21;
    76:19;78:4,22
**inverse (6)**
    41:13;43:20;44:2,2;
    60:5;67:13
**invitation (1)**
    38:10
**invite (2)**
    8:24;19:2
**inviting (1)**
    6:18
**invoked (1)**
    15:13
**involve (3)**
    14:25;55:18;57:1
**involved (3)**
    13:18,21;55:19
**involvement (1)**
    50:14
**involves (3)**
    14:21;32:4;71:9
**issue (56)**
    6:13;9:7,10;12:5;
    19:2,25;20:11,15,18,
    25;29:20;30:12;31:18;
    33:2,5,24,25;38:20,23;
    39:2,17;40:13,25;41:5,
    5,11,12,15;42:19,24;
    43:6;44:8;51:8,10,10;
    59:20;60:10;61:19;
    62:1;64:6;65:11;67:4,
    4,5,6,17,19,19;70:24;
    71:5;72:18;76:18,22,
    24;77:15;78:3

Case: 19-30088    Doc# 7416    Filed: 05/19/20    Entered: 05/19/20 10:25:19    Page 88
of 97

**issues (24)**
7:3;8:10,11,15;
11:10,20,22;22:17,20,
21;34:7;35:3;51:4;
62:9;65:9,10,14,22;
67:12;69:10,19;74:3;
75:23;76:21
**itching (1)**
39:14
**items (2)**
8:16;38:11
**Ivanhoe (11)**
9:12;29:21,22,23;
30:4;31:16,17,17,20;
33:10,14
**Ivanhoe's (1)**
31:24

**J**

**jaw-dropping (1)**
47:4
**JCCP (3)**
68:19;69:21;70:5
**Jeopardy (1)**
5:3
**John (1)**
45:10
**Johns-Manville (1)**
13:25
**Judge (13)**
4:19;5:6;10:2,2;
27:13;31:19;32:5;
46:23;55:12;59:15;
61:16;66:4;69:2
**judgement (1)**
20:22
**judges (6)**
27:15;48:21;69:21,
22,24;70:13
**judgment (1)**
69:2
**judicial (16)**
8:18,20;9:4;10:9;
14:6;15:15,20;19:13;
46:14;52:15;53:4;
54:21;69:22;75:4,16,
20
**Julian (1)**
50:18,22
**jurisdiction (3)**
15:13;59:12;69:23
**jury (4)**
20:6;50:9,10,21
**Justice (6)**
7:5;29:17;39:3;
45:23;52:24;68:24
**justify (1)**
57:16

**K**

**keep (3)**
10:11;67:11;72:12
**kind (6)**
8:15;15:21;17:25;
18:21;38:18;42:3
**kinds (4)**
14:22;37:17;38:16;
76:13
**knowledge (2)**
14:21;19:6
**known (1)**
78:1

**L**

**lack (4)**
8:18;29:21;76:5;
78:6
**language (11)**
5:9;12:6;35:2;40:6;
60:14,24;62:15,18;
65:18;77:15,21
**large (10)**
7:18;13:18,20;23:4;
34:19,19;36:1;37:10;
52:1;75:19
**last (5)**
6:12,22;33:17;47:9;
50:6
**later (7)**
20:19;29:10;42:18;
43:12;50:22;68:22;
78:9
**latest (1)**
77:12
**launch (1)**
29:19
**law (33)**
13:11;15:7,24;16:23;
17:24;20:2;23:1,1,20;
24:22;29:24;31:23;
42:22;43:3,11,18,22,
23;44:4,4,21,25;45:1;
46:4;48:11;58:25;
59:23;60:9,18;70:12;
71:18;76:11,24
**lawful (1)**
48:25
**lawfully (1)**
11:13
**lawyer (2)**
5:1;61:12
**lawyers (3)**
5:15;12:2;70:13
**lead (3)**
10:20;11:1;35:13
**least (12)**
4:19;5:4,13;6:20;
7:8;8:13;9:24;12:20;
15:3;27:7;70:3;78:24
**leave (2)**
11:21;12:14
**leaves (1)**
40:2

**led (1)**
7:12
**left (4)**
40:12;41:22;60:20;
66:25
**legal (8)**
9:11;15:9;43:3;
49:21,25,25;67:12;
70:20
**legally (3)**
27:8;55:1;77:5
**legislature (1)**
43:19
**legitimate (1)**
65:19
**less (1)**
32:10
**letter (1)**
58:15
**letting (1)**
5:25
**level (1)**
30:17
**level-setting (1)**
22:21
**liabilities (3)**
51:15,17,18
**lien (1)**
41:12
**likely (2)**
10:4;63:18
**Likewise (1)**
47:5
**limited (6)**
16:24;39:17;62:19;
68:14,16,18
**limits (2)**
25:1,22
**line (3)**
45:17;47:21;64:23
**lingering (2)**
59:12;60:10
**list (4)**
39:12;58:10;60:20;
61:16
**listening (2)**
5:4;66:21
**litigant (1)**
15:12
**litigate (2)**
75:10;76:18
**litigation (2)**
48:9;61:23
**little (2)**
66:18;71:21
**lives (2)**
7:22;8:7
**logic (1)**
17:13
**logical (1)**
17:5
**logically (1)**
17:1

**logistical (1)**
55:18
**long (5)**
15:22;39:8;51:1;
64:23;72:11
**longer (3)**
27:8;28:22;75:9
**look (8)**
20:17;27:13;34:21;
43:15;70:18,19;72:5;
74:14
**looked (3)**
8:15;39:1;49:21
**lose (3)**
23:22;53:22;54:8
**loses (1)**
25:22
**losses (3)**
73:3,7,10
**lost (4)**
8:7,8;27:9;64:20
**lot (12)**
6:21;7:6;23:13;
30:14;36:15;38:8,8;
54:8;56:12;65:7;75:9,9
**lots (1)**
4:17
**loud (1)**
22:10
**lower (1)**
23:20

**M**

**MacConaghy (70)**
6:22;8:21;9:13,15;
10:1;39:2,11;45:8,10,
11,15,20;46:15,17;
47:2,12,14,16,24;48:3,
6,12,16,18;49:9,12,14;
50:12;51:6,12,14;
52:23;53:21;54:2,5,13;
55:2,4,9;56:16,18;57:8,
11,15,25;58:11,18;
59:2,5,8,18,24;60:17,
19;61:2,3,15,18,20;
63:12,15,22;64:3,4,8;
65:1;72:16,18;74:4,11
**MacConaghy's (2)**
41:1;45:3
**made-whole (1)**
66:2
**magnitude (3)**
14:21;35:7;63:16
**maintain (1)**
59:12
**maintained (1)**
23:2
**major (3)**
8:17;43:25;58:4
**majorities (1)**
9:2
**majority (10)**

**9:2;13:6;15:23;
17:15,19,21,22,25;
33:13;51:22**
**makes (1)**
15:18
**make-whole (1)**
67:14
**making (1)**
72:25
**malfeasance (1)**
42:4
**mandate (1)**
49:18
**many (9)**
4:17;5:8,10;50:17;
54:16;64:14;66:4,25;
77:11
**mark (1)**
59:17
**Marshack (3)**
45:17,18;65:3
**mass (20)**
13:19,21;14:1,15,18,
24;19:6;49:2;53:5;
54:17;55:17;56:1,3;
68:19,20;69:20,24;
70:4;75:2,18
**match (1)**
24:13
**material (5)**
18:18,21;37:20;
38:15;58:22
**math (1)**
11:20
**matter (16)**
4:5;5:7;13:11;15:24;
21:9,17;50:14;53:13;
55:19;57:22;59:23;
60:3,9;63:9;74:19,21
**matters (3)**
11:11;35:4;78:20
**maximize (1)**
62:17
**MAY (18)**
4:1;10:16;11:13;
13:9,9;17:19;23:11;
34:18;42:2,21;44:22;
53:23;56:4,4;74:19;
76:2;78:19,22
**maybe (2)**
41:1,2;44:13
**MDL (3)**
68:19;69:20,21
**MDLs (1)**
69:25
**mean (17)**
19:4;21:4;27:13;
28:3;36:11,21;37:2,7,
19;38:6,13;40:25;
43:21;59:5,22;66:17,
25
**meaningful (1)**
75:22

Case: 19-30088    Doc# 7416    Filed: 05/19/20    Entered: 05/19/20 10:25:19    Page 89
of 97

**means (7)**
9:3;13:19;16:7;
26:16;35:22;46:22;
74:21
**mechanical (2)**
36:15;44:8
**mechanism (1)**
38:5
**mechanisms (1)**
31:12
**mediation (5)**
15:4,11;49:10,12;
75:6
**meet (1)**
78:23
**member (1)**
17:10
**memorized (1)**
51:1
**mentioned (1)**
76:22
**merits (1)**
12:5
**mess (1)**
38:9
**met (1)**
50:2
**Metabolife (1)**
68:23
**midsentence (1)**
4:4
**might (6)**
8:4;10:2;16:18;18:7,
7;59:14
**mile (1)**
64:12
**Miller (1)**
52:11
**millions (1)**
40:16
**mind (4)**
6:9;7:2;10:12;37:9
**minimizing (2)**
45:25;46:1
**minority (2)**
17:19;18:1
**Mintz (40)**
11:19,21;29:9;33:17,
19;34:3,5;35:12;36:10,
12,19,22,25;37:4,13,
15;38:13;39:6,13,16;
40:24;41:4,7,15,18,20,
22;44:3,17;45:9;60:5,
22;73:21,21,24;74:1,9,
12,14,17
**minus (1)**
66:10
**minute (4)**
30:11;36:13;39:15;
74:2
**minutes (13)**
11:13,17,19,21;12:3;
33:17;34:4;45:5,7,15,

16;64:1;73:17
**miscellaneous (1)**
34:7
**misconduct (1)**
42:3
**Misiani (1)**
7:5
**misunderstanding (1)**
67:7
**moment (6)**
4:5;5:13;14:2;15:18;
43:18;77:4
**money (2)**
62:6;63:19
**monies (1)**
62:19
**months (1)**
67:12
**moot (1)**
35:8
**more (20)**
5:2,8;6:14;14:11,16;
19:6;26:18,19;29:17;
32:6,14;33:21;38:25;
41:3;47:22;64:1;66:25;
75:9;76:2,2
**morning (7)**
4:11;10:23;11:4;
22:14;29:13;45:10;
65:5
**most (2)**
19:14;53:24
**mostly (1)**
19:12
**motion (5)**
6:7,9,25;21:6;78:7
**move (3)**
5:19;47:17;51:3
**moved (1)**
5:23
**moving (1)**
67:11
**much (15)**
11:9;14:3;17:13;
20:22;23:21;24:6;
29:17;30:19;41:22;
45:25;46:1;47:10;57:2;
73:16;76:6
**multiple (2)**
31:25;52:18
**mushy (1)**
59:25
**must (4)**
9:22;24:15;46:2;
55:14
**mute (1)**
61:1
**myself (2)**
13:20;78:13

**N**

**name (3)**

9:13;66:19,22
**narrow (2)**
19:12;20:7
**nature (1)**
21:22
**necessarily (2)**
38:8;49:19
**necessary (1)**
60:13
**need (22)**
5:25;10:4,8;19:20;
28:12,12;29:18;30:19;
35:14;40:9;43:1;51:5,
24;56:2;57:1;58:6,7;
63:24;66:18,25;70:25;
76:2
**needn't (1)**
70:17
**needs (3)**
36:4;43:11;76:6
**negative (2)**
45:6;74:23
**negotiated (1)**
50:23
**negotiations (2)**
7:11;62:21
**neighbors (1)**
64:12
**neither (2)**
32:6,11
**neutrals (1)**
75:7
**new (7)**
4:13;13:15;42:6,8;
52:9;77:9;78:3
**newly (1)**
58:23
**news (1)**
6:19
**next (4)**
4:20;11:18;38:20;
39:17
**nightmare (1)**
64:18
**nine (1)**
47:10
**nine-figure (2)**
48:4,4
**nineteen-year (1)**
59:17
**ninety-four (1)**
31:7
**Ninth (4)**
29:25;32:2;43:18;
52:10
**Nobody's (1)**
61:13
**nonappealable (2)**
12:22;20:21
**nonbankruptcy (6)**
16:19,23;23:1;32:3;
46:4;58:25
**nondebtors (1)**

30:6
**none (1)**
19:7
**nonjudge (1)**
46:24
**nonjudicial (2)**
9:5;17:9
**nonopt- (1)**
53:9
**nonpassive (1)**
38:24
**nonprofits (1)**
23:5
**Norrbom (1)**
64:11
**North (1)**
64:14
**noted (1)**
60:5
**Nothing's (1)**
54:4
**notice (3)**
56:4,7;57:17
**notion (5)**
10:12;41:24;58:14;
62:23;74:24;76:14
**notwithstanding (1)**
10:16
**novo (4)**
46:10;47:6;61:4;
71:20
**nullity (1)**
40:11
**number (20)**
5:13,14;7:17;13:18;
17:17;21:6,6;26:9,13;
31:5;45:23;47:6;50:17;
51:4;53:1,23;54:10;
55:7,22;75:19
**numbers (1)**
54:19

**O**

**object (2)**
19:22;20:14
**objected (5)**
12:9;19:15;21:6;
48:14;58:5
**objecting (4)**
52:19,20,23;78:19
**objection (16)**
11:20,23;12:6,10;
19:24;20:3;21:1;34:8;
46:8;48:24;52:25;
64:22,25;76:1;77:13;
78:7
**objections (2)**
46:5;72:25
**objective (2)**
26:15;75:24
**objectors (6)**
7:17;10:13;45:7;

67:21;73:14,17
**objectors' (1)**
10:3
**objector's (1)**
45:4
**obligated (1)**
9:17
**obligations (1)**
66:1
**obscure (1)**
57:12
**observation (1)**
75:15
**observations (1)**
78:19
**observing (1)**
5:12
**obtain (5)**
25:19;34:10;73:2,9;
77:18
**obtained (1)**
31:7
**obviously (5)**
4:15;5:15;6:15;38:9;
78:14
**occur (1)**
32:20
**odd (1)**
62:3
**off (4)**
19:17;62:13;72:9;
75:17
**offered (1)**
72:15
**offering (1)**
56:14
**official (1)**
45:11
**offset (7)**
23:22;39:20,25;
40:12,21;62:19,25
**often (2)**
38:7;52:9
**once (3)**
16:22;20:12;53:11
**One (40)**
4:5,20;6:14;13:24;
14:2,8,17;17:10;19:3,
20;22:13,23;12:26:9,
10;29:18,22;30:8;
32:19,19,23;33:21;
38:25;41:3,24;42:17;
45:23;47:13,16;50:15;
51:16;53:22;55:9;
57:13;58:23;61:9;
64:21;67:15;77:11,12,
24
**one-on-one (1)**
63:21
**ones (4)**
8:17;21:7;37:24;
48:14
**one-week (1)**

Case: 19-30088    Doc# 7416    Filed: 05/19/20    Entered: 05/19/20 10:25:19    Page 90
of 97

65:10
**ongoing (1)**
40:14
**only (23)**
17:10;18:7;19:5,7;
21:7,11;25:19;27:4;
28:12,21;32:1,8;35:10;
36:3;43:15;48:13;
51:23;55:21;56:10;
62:4;63:25;72:11;
75:11
**oOo- (1)**
4:2
**open (1)**
47:20
**opening (2)**
10:19;45:4
**operate (1)**
13:12
**operating (2)**
7:9;70:15
**operative (1)**
35:11
**opponent (1)**
57:6
**opportunities (1)**
52:18
**opportunity (5)**
11:9;20:8;21:7;71:5
**opposed (1)**
43:9
**opposing (1)**
58:9
**opposite (2)**
12:14;34:11
**option (3)**
19:10;48:10;50:24
**options (1)**
66:4
**order (15)**
4:3;6:17,17;19:23,
24;20:13;22:22;36:9,
17;37:15;38:3,3,10;
49:15;58:13
**ordering (1)**
49:4
**orders (1)**
38:7
**order's (1)**
37:16
**ordinary (1)**
64:23
**original (1)**
35:1
**others (5)**
6:22;8:24;15:22;
20:10;21:20
**otherwise (7)**
25:15;39:24;40:6,9,
11;66:6;74:7
**ought (1)**
28:1
**out (25)**

5:19;9:19;10:21;
12:6;14:4;18:11;30:18;
34:14;39:4;42:24;
43:12;44:10,15;52:3;
53:2,10;57:2;60:1;
62:11,12,17;67:12;
75:6,10;77:14
**outcome (5)**
10:13;20:2;46:24;
57:6,7
**outcomes (3)**
10:17;31:21;70:17
**outlet (1)**
19:10
**outline (1)**
71:7
**outset (4)**
11:24;14:9;21:22;
46:8
**outside (1)**
17:22
**over (21)**
5:12;10:25;17:25;
18:19;22:2,18;29:6;
39:18;40:17;42:15;
45:6;52:15;59:12;
64:14;68:13;70:25;
71:24,24,24;73:19;
76:18
**overall (1)**
31:21
**overlay (1)**
75:21
**overruled (1)**
64:25
**oversight (9)**
8:18,20;9:4,25;10:9;
35:21;36:5,14;53:7
**overstatement (1)**
43:17
**owed (3)**
25:15;26:24;40:16
**own (3)**
36:15;38:7;72:16

**P**

**PACER (1)**
55:21
**page (4)**
24:14;34:21,22,23
**pages (1)**
32:13
**paid (29)**
9:17;23:11,11,16;
24:16,16,21;25:1,13;
27:24;28:2,3,4,9,11,22;
30:20;31:6,11;37:3;
62:20;65:17;66:10;
68:3,23;72:2;73:6;
75:5;77:19
**painfully (1)**
7:20

**painted (1)**
10:1
**panel (1)**
69:21
**panelist (1)**
5:24
**panelists (4)**
4:23;5:1,10,15
**paper (1)**
19:20
**papers (2)**
34:10;48:1
**Parada (2)**
4:8;5:23
**Paradise (2)**
11:16;22:15
**pardon (1)**
78:2
**parsing (1)**
57:1
**part (12)**
23:25;28:22;29:20;
31:8,25,25;32:23;33:4;
43:5;60:6;61:25;78:1
**particular (9)**
6:2,3;44:15;52:16,
17;53:18;54:24;66:8,8
**particularly (4)**
7:12;35:19;37:8;
51:4
**parties (9)**
4:6;8:2;13:3;15:11;
31:22;72:25;74:18,22;
78:18
**parties-in- (1)**
58:2
**parts (1)**
78:22
**party (5)**
19:20,22;20:3,25;
44:11
**party's (1)**
19:21
**pass (2)**
22:2;66:1
**past (1)**
13:21
**Patel's (1)**
55:12
**path (1)**
13:23
**patiently (1)**
64:2
**Patrick (1)**
64:11
**pay (11)**
9:17,18,20;23:13,14,
15,25;26:25;43:15,16;
45:25
**payable (1)**
25:15
**paying (1)**
45:24

**payment (6)**
9:10;12:16;16:3;
32:18,21;33:2
**payments (6)**
9:22;14:14;23:8;
30:6,13;35:5
**payout (1)**
64:24
**pays (2)**
25:21;27:4
**penalized (1)**
24:2
**people (29)**
4:25;5:8,12;7:22;
10:7;21:6,13,16;47:4,
5;48:7,14,15;49:10,12;
50:20;52:2;53:23;
56:11,21;57:22;58:20;
64:17,23;66:5,20;
69:25;72:5;75:18
**percent (7)**
30:9;31:7;47:6,22,
23;75:12,12
**percentage (1)**
54:21
**perfectly (1)**
51:25
**perhaps (9)**
4:17,20;5:18;11:5;
14:10;38:11;50:4;55:8;
60:12
**period (3)**
25:23;26:16;56:15
**permanent (1)**
35:17
**permission (2)**
11:12,25
**permit (3)**
33:15;37:6;74:25
**permits (1)**
20:2
**permitted (3)**
10:15;14:4;33:10
**permitting (2)**
16:3;33:6
**personal (12)**
8:19;43:10,15,21,21;
44:9,14,23;54:11,18;
59:21,22
**personally (1)**
55:5
**Persuade (1)**
67:21
**persuaded (1)**
21:4
**petition (3)**
12:12;51:15,17
**PG&E (7)**
4:5,20;52:16;56:22;
59:9,15;72:4
**phone (1)**
50:18
**phonetic (6)**

7:5;13:14;28:18,18;
55:17;64:11
**phrase (1)**
61:12
**picture (1)**
10:1
**pie (1)**
53:15
**pieces (1)**
48:9
**place (2)**
38:9;71:23
**places (1)**
70:17
**plan (57)**
8:10;11:13;13:7;
15:23;16:7,12,23,24;
17:10,16;18:18;19:16;
20:17,21,24,25;21:9,
10,12,17;37:24;38:9,
10;39:18,19,22;40:6,
10,10,12;49:19,20;
50:1,5,9;51:7,19;52:7,
9,13,25;57:16,20;
58:15,17;59:4,9;66:12;
67:4;70:5,20;74:25;
76:11,12,15,16,19
**planned (1)**
16:1
**plans (2)**
13:11;14:3
**platform (1)**
4:13
**play (1)**
75:6
**players (1)**
58:5
**playing (2)**
23:19,24
**plays (1)**
75:10
**please (1)**
66:22
**plus (1)**
4:25
**point (32)**
4:15,15;6:17,18;
8:16;10:18;12:17;16:6;
17:3;18:16;24:18;31:5;
32:2,17;35:13;36:20;
42:24;44:14;48:10;
49:15;52:12;59:24;
61:13;69:5,7,9;70:9,11,
17,21;72:12;75:14
**points (3)**
11:24;70:23;77:14
**policies (4)**
24:17;31:18;62:17;
73:3
**policy (10)**
25:16,22;27:24;62:3;
63:4,5;65:24;68:7;
73:6;77:19

Case: 19-30088    Doc# 7416    Filed: 05/19/20    Entered: 05/19/20 10:25:19    Page 91
of 97

**politely (1)**
78:8
**poor (1)**
10:2,2
**popped (1)**
64:14
**portion (3)**
13:20;44:15;73:12
**portions (2)**
44:22;72:24
**posed (1)**
15:18
**position (10)**
16:16;17:13;18:15;
29:4,4;30:4;32:7;
40:19,22;42:22
**positions (2)**
25:2;38:21
**possible (2)**
24:6;59:10
**post-confirmation (1)**
55:15
**post-petition (2)**
16:9;67:14
**pot (4)**
32:19,19;33:4;77:24
**potential (2)**
33:9;38:21
**potentially (1)**
11:18
**PPI (1)**
16:14
**PPIE (1)**
16:19
**practical (9)**
26:3,4,5,9;51:4;58:7,
9;70:24;71:5
**practicality (1)**
47:4
**practice (2)**
70:4,5
**practices (2)**
68:20;69:20
**praise (1)**
70:14
**pre- (1)**
51:14
**precedent (5)**
30:5;31:17;53:17;
72:3,4
**precisely (1)**
12:14
**preclude (2)**
49:4;76:13
**pre-confirmation (1)**
52:6
**predicting (1)**
18:11
**premiums (1)**
62:14
**preparing (1)**
5:15
**present (2)**

5:16,17
**presented (2)**
8:13;55:18
**presenters (1)**
78:15
**presiding (1)**
59:15
**presumably (1)**
27:1
**presume (2)**
19:4;77:3
**principle (5)**
8:1,14;23:7;24:11;
44:2
**principles (2)**
31:24;32:4
**prior (3)**
4:20;34:21,22
**pro (5)**
30:17;35:2,6,15,25
**probably (1)**
48:20;55:11;77:6
**problem (10)**
33:2;40:1;41:5;
46:18;51:7;60:25;
65:21;67:6,21;77:15
**problems (6)**
6:20;45:23;58:7;
77:11,20;78:5
**procedure (6)**
8:18,24;10:15;46:25;
55:7;60:15
**procedures (14)**
4:18;12:13,21;14:3;
15:5;18:13;52:5;58:2;
60:2,7;68:5;69:24;
72:14;78:6
**proceedings (1)**
79:4
**proceeds (2)**
18:3;63:4
**process (37)**
9:5;10:6;14:5,10,12;
15:4,9;16:25;17:9,24;
18:3,10;24:5;32:1;
46:7,24;49:1;50:21;
52:17;53:17;54:22,23;
57:16,17;69:18;70:1,1;
71:8,9,14,14,20;72:6;
75:6,10,17;76:8
**product (1)**
4:22
**professionals (1)**
70:13
**program (1)**
4:22
**promised (1)**
10:25
**prompt (2)**
64:19;66:18
**proof (4)**
12:8;15:8,14;33:1
**proofs (3)**

12:8;46:11;55:21
**proper (3)**
8:17;9:10;23:3
**properly (1)**
23:1
**property (8)**
43:9,16,21;44:1,10,
23;54:18;59:22
**proponents (1)**
10:15
**propose (1)**
58:16
**proposed (5)**
19:23;20:4;26:9;
37:20;60:12
**proposition (4)**
20:1;21:17;32:12,13
**prospective (1)**
60:23
**protect (2)**
37:6;52:19
**protection (4)**
35:25;36:5;76:13,19
**protections (3)**
17:21;35:15,24
**proves (1)**
17:13
**provide (12)**
18:14;21:18,20,21;
22:23;23:5;24:23;31:9;
35:12;37:16;60:2;
75:24
**provided (6)**
11:10;19:9;34:24;
40:6,11;50:1
**provides (2)**
12:7;17:22
**providing (2)**
31:10;35:2
**provision (5)**
38:24;52:13;53:6;
63:1,3
**provisions (4)**
39:23,24;49:5;75:23
**public (1)**
23:5
**purport (2)**
39:23;46:9
**purposes (4)**
4:25;5:18;8:6;70:20
**pursue (4)**
24:5;31:13;61:22;
62:4
**put (3)**
10:14;39:11;40:21
**puts (1)**
64:22

**Q**

**qualification (2)**
7:5;40:5
**quality (2)**

31:20,21
**quickly (8)**
6:23;28:17;59:10;
67:12;71:6,7;74:3;75:5
**Quigley (1)**
19:8
**quite (4)**
13:2;39:19;54:1,2
**quote (5)**
24:15;25:15,17,20;
56:23

**R**

**raise (4)**
20:3;21:1;64:6;
72:19
**raised (17)**
11:24;14:8;20:18;
22:18;34:8;46:6,7;
65:9,19;66:15;70:23;
71:5;72:25;73:15;
77:12,14;78:5
**raising (2)**
41:5;69:19
**ran (1)**
68:24
**random (1)**
17:16
**range (1)**
14:23
**rarely (1)**
56:20
**rata (5)**
30:17;35:2,6,15,25
**rather (1)**
7:15
**re (4)**
20:11,15;32:6;55:12
**reach (1)**
30:18
**reached (2)**
65:25;66:12
**read (6)**
16:8;38:23;39:7;
56:19;72:12;74:18
**reading (2)**
6:21;57:15
**reads (2)**
73:1,5
**real (1)**
40:4
**realistically (2)**
10:5;47:19
**really (10)**
4:16,22;10:4;20:10,
20;27:6;37:6;41:12;
59:13,18
**reason (8)**
23:21;27:12;28:9;
62:15,18;65:24;75:5;
77:7
**reasonable (21)**

24:5;25:6,18,20,24;
26:14,17;31:13;61:24;
62:16;63:4,8;65:16,18;
66:15;68:2,4;73:2,8;
75:25;77:17
**reasoning (2)**
6:14;17:6
**reasons (7)**
17:7;23:14;24:1,1;
34:15;49:2;55:15
**Rebecca (2)**
10:23;29:13
**rebuttal (6)**
11:21;12:3;29:9;
45:7;73:18;74:1
**recall (2)**
50:16,22
**receive (1)**
36:1
**received (4)**
23:9;32:8,11,15
**receivership (1)**
32:4
**recent (1)**
50:13
**recognize (1)**
13:17
**recognizing (1)**
44:21
**record (3)**
55:20;66:20;72:20
**recording (1)**
4:9
**recoupment (4)**
39:19,20,25;76:23
**recover (9)**
24:6;25:7;26:10,18,
19;63:4,6,13;68:6
**recoveries (6)**
30:8;33:9;34:20;
73:2,14;77:18
**recovering (1)**
24:9
**recovery (17)**
25:23;26:7,8;29:2;
30:9,10;32:9,24;44:5;
61:9,12,14,17,24;62:5,
17;73:9
**red (1)**
58:19
**redress (2)**
58:25;76:10
**reduce (7)**
16:19;23:10;24:25;
25:9,16;33:13;77:6
**reduced (5)**
9:8;23:8,15;24:9,15;
26:11,19
**Reed (1)**
22:15
**reevaluated (1)**
71:19
**refer (1)**

Case: 19-30088    Doc# 7416    Filed: 05/19/20    Entered: 05/19/20 10:25:19    Page 92
of 97

39:24
**reference (1)**
53:9
**referenced (2)**
57:18,25
**referred (2)**
35:24;75:2
**referring (1)**
49:8
**refers (1)**
41:11
**refinement (2)**
9:16,25
**reflect (1)**
44:25
**reflections (1)**
78:20
**refusing (1)**
23:25
**regard (5)**
12:17;34:17;39:19;
54:15;77:1
**regarding (5)**
13:13;24:12;62:19
**regardless (3)**
21:22;35:7,16
**reimbursement (1)**
43:9
**relate (3)**
12:18;44:22,23
**related (2)**
11:15;76:22
**relates (1)**
43:6
**relating (2)**
69:18,19
**relationship (2)**
40:15,17
**relative (1)**
34:14
**release (8)**
41:23;42:4,6,8,10,11,
14;66:3
**releasing (2)**
41:25;42:17
**relevant (2)**
56:9;77:5
**relied (2)**
55:10,13
**relief (3)**
21:14;46:21;49:5
**relying (1)**
56:8
**remaining (5)**
11:20;34:7;41:20;
45:16;60:20
**remember (2)**
50:18;67:1
**remote (1)**
59:13
**reorganization (1)**
14:3
**reorganized (1)**

16:5
**repeating (1)**
72:8
**replaced (2)**
53:25;54:9
**REPORTER (1)**
4:4
**represent (1)**
56:12
**representative (1)**
57:5
**represented (1)**
8:2
**representing (2)**
8:21;11:7
**reputations (1)**
7:7
**requests (1)**
68:8
**require (3)**
18:19;21;27:23
**required (5)**
43:10;44:21;53:3,8;
65:15
**requirement (1)**
26:14
**requirements (2)**
15:9;50:2
**requires (4)**
13:3;18:24;60:8;
62:3
**requiring (1)**
62:16
**requisite (1)**
15:23
**research (1)**
57:12
**resemble (1)**
53:20
**reservation (2)**
45:5;50:20
**reserve (3)**
10:21;12:2;46:2
**reserved (1)**
52:7
**reserves (5)**
62:23;63:2;68:13;
77:23,25
**resistance (2)**
76:14,17
**resolicitation (1)**
18:22
**resolution (5)**
53:7,13;58:2;60:7,14
**resolve (3)**
11:14;45:23;53:3
**resolved (4)**
10:8;14:9;15:4;
55:23
**resolves (1)**
60:10
**resort (1)**
75:4

**respect (22)**
11:11,22;14:6;17:14;
18:17,17;22:22;32:16;
35:3;37:10;42:2,19;
65:14,22;67:3;69:17;
70:18;75:1,23,24;76:9,
20
**Respectfully (2)**
42:25;73:11
**respond (2)**
39:12;61:1
**responders (2)**
64:16,17
**response (6)**
14:8;15:18;32:1,17;
38:22;72:23
**responsibility (1)**
41:8
**rest (1)**
63:25
**restate (1)**
66:22
**restrictions (1)**
52:5
**restructuring (3)**
7:12;51:23;52:20
**result (4)**
14:5,13;50:23;65:8
**resulted (1)**
58:23
**retained (1)**
39:21
**returned (1)**
64:13
**reverse (1)**
58:13
**review (16)**
13:4;14:13;18:14,21;
19:10,13;47:6;52:15;
53:4,14;54:21;55:15;
60:1;61:5;71:20,22
**revisiting (1)**
7:19
**revoting (2)**
33:24,25
**rewrite (1)**
44:25
**ride (1)**
16:4
**right (52)**
4:7,10;11:14,20;
12:25;14:17;15:19;
16:9;17:25;19:17;20:6,
20;21:10,11,21;22:9,
12;26:8,12,21;27:16;
34:4;43:22,22;44:2,3;
45:19;46:9;47:3;48:14,
23;49:24,25,25;50:7,8,
10;51:3,9,12;53:14;
54:6;58:4;59:21;67:3,
5;69:4;73:24,24;74:10,
15;76:4
**rights (21)**

17:20,23;19:21;
20:17;21:1;30:21;
31:22;37:23;39:21,25;
40:8,12;49:21;50:20;
51:15,16,18,20;52:5,
19;76:7
**risk (3)**
37:6;68:12,14
**road (1)**
20:15
**role (1)**
50:4
**roll (1)**
42:14
**roots (1)**
13:24
**RSA (1)**
78:2
**Rule (18)**
6:10;18:9;28:23;
29:24;30:2;48:13;
49:16;53:10;55:25;
56:1,3,9,25;57:12;
60:2;61:10;74:4,25
**rules (2)**
7:8;70:15
**ruling (4)**
6:16;55:12;78:13,21
**run (7)**
69:24,25;70:4;71:18;
72:6,6;74:2
**running (3)**
70:1,2;78:16
**runs (2)**
10:6;62:8
**rush (1)**
65:22;76:3;78:21

**S**

**safety (1)**
75:16
**same (23)**
4:18;5:19,21,22;8:5,
5,9,10;10:6,12,12,13;
21:24,25;34:12;35:7;
40:2;43:6;54:1,2,4,5;
71:24
**SAN (1)**
4:1
**satisfied (2)**
46:23;50:21
**saved (1)**
64:16
**saying (11)**
20:5,12,23;27:15;
43:12,15;44:7;46:14;
54:7;67:11,20
**schedule (1)**
78:23
**scheduled (1)**
5:22
**scheme (1)**

10:3
**scope (1)**
17:22
**scorned (1)**
64:21
**scratch (1)**
18:25
**screen (5)**
4:24;5:12,14,18;
66:21
**SEC (1)**
32:6
**Second (4)**
9:7;49:18;55:25;
68:16
**second-guess (1)**
25:2
**Secondly (1)**
77:22
**seconds (1)**
77:7
**Section (17)**
6:11;12:7,8,9;17:23;
38:20,24;39:24;48:23;
49:3,6,18,19;69:23;
72:22,24;77:15
**Sections (2)**
12:6;16:5
**seek (2)**
14:12;47:6
**seeking (2)**
32:9;53:16
**seem (1)**
10:7
**seems (10)**
9:7;41:10;43:17;
44:16;57:15;60:14;
61:7,8;63:10;77:8
**send (3)**
49:10,12;74:5
**sentence (3)**
6:14;18:13;60:7
**separate (1)**
78:2
**series (1)**
20:23
**seriously (2)**
47:18;54:15
**services (1)**
23:6
**set (4)**
12:6;14:4;69:25;
70:15
**setoff (1)**
39:18
**set-off (1)**
76:23
**setting (2)**
23:23;71:9
**settle (4)**
56:6,10,11,13
**settled (4)**
68:10,10,11,11

settlement (5)
31:9;32:24;56:10,25;
78:7
seven (2)
4:24,25
seven- (1)
48:3
several (3)
13:10;31:12;54:14
shall (7)
12:11;17:16;28:1,8;
48:24;49:1;73:13
share (4)
10:22;28:15;53:15;
72:8
shareholders (1)
66:13
shares (1)
39:4
sharing (1)
45:14
short (1)
25:23
show (4)
20:14,24;67:24,24
showed (2)
20:19;48:15
shows (3)
14:7,11;20:5
sic (1)
21:25
side (2)
41:2;45:4
sides (1)
10:5
sign (1)
42:4
significant (2)
48:9;54:21
signs (1)
64:13
silica (1)
14:24
similar (1)
54:16
similarities (1)
54:19
similarly (1)
51:22;53:2
simple (3)
9:9;18:13;30:22
simpler (1)
47:10
simplest (1)
38:13
simply (6)
15:24;17:12,18;21:8;
60:2;73:11
single (1)
71:17
singled (1)
34:14
Singleton (10)

45:17,18;64:4,7,8;
65:2;72:10,15,17,20
sitting (2)
77:23,25
situated (2)
51:22;53:2
situation (3)
53:11;62:4;63:15
situations (1)
31:25
six (1)
4:25
size (2)
34:15;35:16
skeptical (1)
12:2
Skikos (25)
45:16;65:2,4,5,7;
66:17,23,23;67:3,9,23;
68:1;69:4,6,8,11,14,17;
70:8,10,23;71:2,4,7,12
sky (1)
48:1
sleep (1)
54:8
slept (1)
20:17
slight (1)
9:24
slips (1)
75:11
small (10)
5:14;7:17,17;21:6;
23:4;53:23;54:10;
55:19;75:3,11
Smith (1)
22:15
so- (1)
9:3
so-called (1)
53:9
sole (1)
25:17
solicited (1)
57:22
solution (6)
30:12;37:20;41:1,2;
42:9;44:20
solutions (1)
58:9
solvable (1)
41:6
solve (2)
38:8;44:24
solves (2)
60:25;67:20
somebody (5)
20:5;46:16;53:25;
62:8,10
someone (5)
5:22,25;20:13;44:9;
54:8
somewhere (1)

68:16
soon (2)
39:14;64:12
Sorry (6)
19:3;30:25;31:1;
47:16;50:12;72:19
Sort (2)
12:24;36:2
sounding (1)
60:4
sounds (2)
31:3;59:6
source (5)
9:8;28:23;29:24;
30:2;61:10
sources (1)
30:8
Southern (1)
13:15
speak (2)
6:1;39:15
speaker (1)
19:2
speakers (2)
8:14;66:25
speaking (3)
6:3;43:7;50:22
special (9)
21:16;34:10,14,18,
23;36:1;45:11;50:4;
52:3
specific (4)
45:22;46:5;65:24;
72:24
specifically (2)
52:7;73:12
spend (1)
11:12
spent (1)
13:20
split (1)
45:16
spontaneously (1)
64:14
staff (2)
78:16,16
stand (3)
20:1;28:21;77:21
standing (1)
21:12
stands (3)
32:11,13;38:4
start (5)
16:17;38:9;65:4,11;
74:4
starting (2)
16:22;18:19,24
starts (1)
67:18
State (9)
8:20;12:21;23:1,20;
29:23;43:18;65:22;
66:19;72:14

statement (11)
34:17,18,21,22,23;
35:9,10;37:11;50:8;
51:7;57:21
States (3)
48:25;52:11;56:3
status (1)
5:24
statutes (1)
49:22
statutorily (2)
53:8;57:18
statutory (2)
17:21;48:22
stay (1)
46:21
steps (3)
62:16;63:4,8
Steven (1)
66:23
stick (4)
6:3;26:22;45:5;
57:23
still (8)
45:17;47:7;51:9;
55:6,20;59:15,16;72:2
stipulation (1)
74:18
stock (1)
68:17
stopped (1)
64:11
stopwatch (1)
29:15
strike (1)
50:9
strip (1)
35:23
strongly (1)
6:16
structural (1)
12:19
structure (2)
10:14;77:23
subject (12)
6:19;7:6;13:4;17:21;
18:14;19:13;28:24;
38:17;50:23;59:25;
65:10;77:4
subjecting (1)
18:20
submit (2)
73:11;74:21
submitted (1)
74:19
subro (2)
77:24;78:2
subrogation (6)
28:24;30:15;31:9;
62:21;68:10,10
subros (1)
32:19
subsection (4)

72:22,22;73:1,5
subsequent (2)
35:17;42:11
substance (1)
15:19
substantial (3)
8:8;38:15;40:14
substantially (1)
58:24
substantive (5)
6:6;23:21;30:21;
38:15;43:23
succeed (1)
15:12
succeeding (1)
62:14
successful (4)
24:8;71:22,24;78:17
successfully (2)
14:23;71:21
suddenly (1)
47:19
suffered (4)
21:24;44:9;53:23;
54:10
suffering (1)
66:5
sufficient (1)
40:7
suggest (3)
19:10;31:12;58:9
suggested (3)
13:18;38:14;39:7
suggestion (7)
17:14;21:8;37:22;
42:7;60:11;76:9,20
superior (3)
46:21;47:8;48:21
support (7)
29:3,4;30:4;32:7;
43:4;52:20;55:13
supports (1)
24:22
supposed (1)
7:16
Supreme (1)
43:19
sure (13)
4:17;5:4,5;6:12;7:1;
16:18;28:14;34:12;
35:14;37:19;38:6;
45:20;70:11
surely (1)
20:1
survive (1)
49:19
suspect (1)
48:10
sustainable (1)
55:1
system (7)
4:22;55:21;64:21;
66:14;70:5;72:14;75:4

Case: 19-30088    Doc# 7416    Filed: 05/19/20    Entered: 05/19/20 10:25:19    Page 94
of 97

**systems (4)**
69:17,19;71:23,24

**T**

**tailor-made (1)**
56:1
**Takata (11)**
19:4,11,13,15;20:6,
8;53:20,24;54:12,14,16
**talk (11)**
41:23;48:22;55:9;
58:11;60:12;75:12
**talked (2)**
48:18;74:5
**talking (8)**
37:17,24;38:17;
42:20,21;57:9;61:20;
74:17
**target (1)**
77:8
**TCC (19)**
7:13;8:21;14:12;
15:18;18:19;20:12;
23:17;24:12;32:2;33:7;
34:10,16;35:3;39:10;
42:5;77:12;78:1,6,7
**TCC's (13)**
17:13;18:15;28:20;
29:4,22;32:7,17,23;
36:3;38:22;40:4;42:22;
52:20
**tells (1)**
57:21
**temporal (2)**
17:4;41:24
**ten (5)**
11:19;27:2;33:17;
34:3;45:16
**tens (2)**
7:21;40:15
**tentatively (1)**
8:25
**term (1)**
5:5
**terminology (2)**
4:23;5:3
**terms (3)**
9:9;18:3;68:25
**Terrific (1)**
22:3
**test (2)**
22:9;69:1
**testing (1)**
5:6
**thanked (1)**
64:18
**Thanks (1)**
33:18
**that'll (1)**
68:3
**theoretically (1)**
38:1

**theory (3)**
18:9;35:23;37:4
**therefore (3)**
9:3;33:1;35:8
**third (7)**
4:12,12;16:14;31:22;
51:18,20;52:15
**third-party (1)**
30:6
**thirty (3)**
14:16;32:13;77:7
**thirty-five (1)**
45:15
**though (2)**
17:4;39:7
**thought (5)**
20:7,7;33:21;59:3;
74:10
**thousands (6)**
7:21;10:7;47:7;
57:21,21;58:20
**three (9)**
5:7;6:22;46:1;47:22;
48:7,21;49:2;55:15;
75:12
**throat (1)**
57:23
**throw (2)**
18:10;75:16
**ticket (1)**
8:17
**ticking (1)**
67:16
**tie (1)**
27:14
**tight (1)**
65:8
**timely (2)**
20:3;21:1
**times (2)**
5:7;71:21
**tizzy (1)**
18:10
**today (13)**
7:2,3;8:1,2,6;11:11;
20:14;34:6;48:15;50:6;
51:11;74:24;78:21
**today's (1)**
6:25;10:15
**together (2)**
10:14;45:19
**told (4)**
37:12,14;40:8;78:8
**took (1)**
47:10
**tort (20)**
13:19,21;14:1,15;
19:6;34:24;45:11;49:2;
53:5;54:17;55:17;56:1,
3;68:19,21;69:20,24;
70:4;75:2,18
**tortfeasor (4)**
29:2;62:4,6;63:7

**torts (2)**
14:18,24
**total (3)**
11:17;66:9,10
**touch (1)**
35:14
**town (1)**
64:16
**traces (2)**
13:24;14:15
**trade (1)**
39:4
**tragedies (1)**
7:19
**transferred (1)**
68:13
**treat (1)**
31:2
**treated (3)**
21:15;35:6;60:17
**treatment (29)**
8:22;9:6;10:12;16:2,
25;17:11;19:22;21:16,
18;23:2,3;29:21;30:5;
31:20;33:7;34:11,13,
14,19;35:2,15,16,25;
36:1;38:16;43:7;44:18;
52:3;76:24
**treats (2)**
16:7;21:12
**tremendous (1)**
68:12
**trial (3)**
47:9;48:9;67:18
**trickle (1)**
14:10
**tried-and-true (1)**
13:23
**triggering (1)**
10:8
**Trotter (7)**
7:5;39:3;45:23;
52:24;66:4;68:24;69:2
**true (1)**
19:19
**trust (70)**
9:6,21;10:6;12:13,
17,20,21;15:5;18:13;
22:23,25;24:13,14,23,
24;25:11,13,20,25;
27:2,18,22,22;33:6,8;
35:1,5,17,19,19,20,22;
36:5,22,25;37:16;38:4;
39:18,21,23;40:3,5,12,
20;42:23;43:1,11;44:6,
6,18,25;46:25;51:21;
58:1,12,16,19,21,22;
62:12,22,22;63:18,24;
66:2;68:11,12,14,19;
69:18
**Trustee (47)**
12:19,21;23:22;
24:19,25;25:3,7,11,14,

14,16,24,25;27:6,10,
13,16,21,21,23;28:6,7,
8;35:20;36:4,14;38:21,
24;44:14;56:6,10,12,
13,20;57:5;58:14,16;
60:8;61:21,22;62:15;
63:2,9;66:4;73:12;
75:7;77:17
**trustees (1)**
56:12
**Trustee's (4)**
13:4;19:11;60:12,23
**trusts (1)**
58:24
**trust's (1)**
18:20
**try (5)**
4:12;8:12;24:6;25:8;
47:21
**trying (7)**
10:11;30:10;40:20;
44:24;52:4;54:7;78:22
**Tuesday (5)**
6:7;78:18,20,23;79:2
**turn (11)**
5:9;6:23;10:25;
15:17;22:18;29:6;46:5;
61:5;63:20;70:21;
73:17
**turning (2)**
9:24;12:5
**tutorial (1)**
70:21
**twenty (2)**
13:21;19:7
**twenty-five (1)**
71:17
**Twinlabs (1)**
68:24
**Twins (2)**
20:11,16
**two (14)**
5:7;6:22;26:13;
29:25;32:2;45:25;47:6,
22;54:19;55:19;67:9;
70:23;72:1;75:12
**type (2)**
38:19;44:5
**typically (1)**
75:3

**U**

**ultimately (2)**
50:21;75:4
**Ultra (1)**
16:15
**Um-hum (2)**
26:23;27:3
**unable (1)**
9:20
**unacceptable (1)**
68:14

**unanimous (1)**
51:23
**unappealable (1)**
20:13
**uncertainty (2)**
43:1;65:9
**unconfirmable (1)**
13:11
**under (36)**
7:8;8:10;9:19;10:2;
16:1;17:23;24:16;
25:16;27:24;28:25;
37:24;38:9;41:13;
42:22;43:22;44:1,4;
49:13;50:23;51:20;
53:10;56:10;57:23;
58:25;65:8,8,13,13,15;
68:7;70:15;71:18;73:3,
6;76:11;77:19
**undercuts (1)**
74:23
**underlying (1)**
60:6
**understands (1)**
76:7
**understood (1)**
50:7
**undertake (1)**
76:25
**underwriting (1)**
62:9
**undoubtedly (1)**
19:19
**unequivocally (1)**
56:2
**unexpended (1)**
62:23
**unfairly (1)**
21:13
**unfunded (1)**
63:1
**unheard (1)**
21:13
**unique (2)**
52:3;77:4
**UNISON (1)**
79:3
**United (2)**
48:25;52:11
**unjustly (1)**
66:5
**unless (4)**
12:9;43:18;52:5;
57:10
**unlike (1)**
54:16;61:9;72:1
**unlikely (2)**
15:5;58:21
**unmatured (1)**
16:21
**unnoticed (1)**
20:18
**unpaid (5)**

Case: 19-30088    Doc# 7416    Filed: 05/19/20    Entered: 05/19/20 10:25:19    Page 95
of 97

24:10;25:17;28:23,
24,25
**unprecedented (1)**
45:22
**unravels (1)**
71:15
**unsatisfied (1)**
71:13
**unsuccessful (1)**
15:6
**unwilling (1)**
57:6
**up (32)**
5:23;6:8;10:21;11:2;
13:7;20:6,14,19,24;
31:12;33:16;39:4;45:8,
19;47:16,21;48:15;
49:15;51:3;56:23;
59:16;60:24;62:1;
64:14;65:23;66:9,10;
67:2;69:25;70:25;72:9,
15
**upcoming (1)**
52:25
**upon (5)**
35:14;55:13;57:6;
77:23;78:20
**upset (1)**
21:21
**urge (2)**
7:3;8:10
**urged (1)**
64:22
**USC (1)**
49:6
**use (4)**
22:8;25:9,18;60:20
**used (1)**
56:20
**uses (1)**
4:23
**using (2)**
4:13;61:12
**usually (1)**
75:11

---

**V**

**validly (2)**
12:15;15:13
**valuation (1)**
71:10
**value (1)**
68:17
**values (1)**
31:20
**valve (1)**
75:16
**various (1)**
17:7
**vast (1)**
55:6
**version (1)**

35:1
**versus (2)**
8:19,20
**Victim (17)**
12:16;24:15;25:5,8,
16,18,21;34:19;40:21;
66:9;68:4,11,11,14;
73:1,7,8
**victims (22)**
7:13;8:3,7,9:1;14:14,
14;23:3,4;24:2,5;
32:20;34:13;35:5;40:2;
43:25;54:10,14;56:24;
62:12;63:18;64:18,19
**victim's (4)**
25:12;29:1;52:16;
62:22
**view (7)**
4:15,15;8:16;13:8;
46:18;47:4;55:5
**viewed (1)**
55:20
**vignette (1)**
64:10
**violation (2)**
6:10,10
**virtual (2)**
5:9,20
**virtually (3)**
14:9;35:21;75:8
**virtue (1)**
34:14
**vitiated (1)**
35:17
**vote (5)**
17:11,25;50:6,7;
51:22
**voted (2)**
13:7;17:15
**voters (1)**
51:2
**votes (3)**
9:1;15:22;52:14
**voting (1)**
50:9
**vulnerable (1)**
40:2

---

**W**

**wait (2)**
36:13;72:19
**waiting (1)**
64:1
**wants (5)**
25:3;42:24;54:9;
63:2;72:10
**warn (1)**
48:1
**waste (2)**
7:25;61:11
**watching (1)**
5:4,4

**way (16)**
4:14;9:4;10:19;
11:23;29:25;35:13;
36:23;39:7;46:12;
56:19,23;57:13,22;
73:19;75:22;76:15
**ways (2)**
16:18;37:17
**week (2)**
4:20;67:17
**Weis (1)**
22:2
**Weiss (21)**
11:15;22:13,14,14;
23:24;26:1,2,5,8,13,23;
27:3,10,18;28:14,17,
20;29:6,9;65:15;66:15
**welcome (1)**
64:5
**well-settled (1)**
49:3
**weren't (2)**
38:8;50:3
**Western (1)**
13:22
**What's (4)**
26:3;30:12;60:20;
75:13
**Whereupon (1)**
79:4
**whichever (1)**
41:9
**whole (5)**
12:2;14:24;50:19;
54:8;77:22
**who's (3)**
5:7;56:21;73:20
**wildfire (5)**
14:22;21:23;62:21;
73:4,8
**Winthrop (29)**
6:21;8:24;10:19,23,
24;11:16;18:16;22:13,
19,20;28:16;29:6,11,
13,14,18;30:25;31:4,
15;33:18,20,21,23;
34:2;41:9;74:2;76:2;
77:3,6
**Winthrop's (1)**
63:21
**wish (2)**
30:22;79:1
**withdrawal (1)**
46:20
**withdrew (1)**
77:14
**within (7)**
21:18;44:6;56:6,23,
23;64:11;68:18
**without (8)**
10:8;19:24,24;30:7;
37:21;53:4;55:23;56:7
**word (1)**

49:1
**words (4)**
4:23;18:8;42:14;
44:9
**wordsmithing (1)**
60:13
**work (4)**
39:7;42:9;76:6,20
**worked (1)**
35:3
**works (1)**
67:7
**worried (1)**
39:5
**worry (2)**
34:1;62:13
**wrap (2)**
70:25;72:9
**writers (1)**
7:1
**written (3)**
6:13;22:23;54:24
**wrong (5)**
15:24;20:19;25:4;
62:2;76:10
**wrongful (1)**
54:11

---

**Y**

**Yanni (1)**
52:24
**year (1)**
42:18
**year-and-a-half (1)**
68:25
**years (8)**
13:21;14:14,16;19:7;
62:14;64:23;68:22;
72:1
**York (1)**
13:15

---

**Z**

**Zoom (11)**
4:13,17,22,23,25;5:3,
9;6:6;48:15;66:19;
78:17

---

**1**

**1.4 (1)**
39:24
**1.6 (1)**
69:23
**1004 (1)**
52:12
**103 (1)**
55:21
**1054 (1)**
65:8
**11 (7)**

49:20;50:1;51:20,24;
52:9,13;53:2
**11233 (1)**
16:5
**1123a3 (1)**
49:20
**1124 (1)**
49:20
**1126 (1)**
6:11
**13,000 (1)**
71:15
**13.5 (2)**
56:22;68:17
**1334 (2)**
49:13,14
**1334c (1)**
49:6,15
**15 (1)**
4:1
**17 (1)**
24:14
**1980s (1)**
13:25
**1995 (1)**
68:22

---

**2**

**2,000 (1)**
48:3
**2.6 (12)**
65:13,14,14,18,23;
66:2;67:20;68:1;69:10;
72:22,24;77:15
**2.6c (2)**
65:15;68:2
**2.6d (1)**
68:5
**2.6e (1)**
68:5
**20,000 (2)**
27:7,14
**200 (2)**
5:12;56:14
**2001 (1)**
59:15
**2002 (1)**
13:23
**2015 (1)**
7:20
**2017 (1)**
7:20
**2018 (1)**
7:20
**2019 (1)**
6:10
**2020 (1)**
4:1
**22 (1)**
59:18
**23b1 (1)**
53:10

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

Case: 19-30088    Doc# 7416    Filed: 05/19/20    Entered: 05/19/20 10:25:19    Page 96
of 97

**25 (1)**
34:22
**250 (1)**
48:4
**28 (1)**
49:6

---

**3**

**3 (3)**
52:6;72:22;73:1
**363 (1)**
52:11

---

**4**

**4 (3)**
16:6;72:22;73:5
**4.4 (1)**
39:24
**40,000 (1)**
27:1

---

**5**

**5 (1)**
52:6
**5.13 (1)**
39:22
**5.9 (3)**
38:20,24;76:23
**50,000 (1)**
26:25
**501 (3)**
12:6,7;17:23
**502 (2)**
12:6;17:23
**502a (1)**
12:8
**502b (5)**
12:10;48:23,23;49:3,
18
**502b6 (1)**
16:20
**509b (1)**
76:23

---

**7**

**7,500 (1)**
18:7
**75 (1)**
18:7
**75,000 (2)**
10:3;18:6
**79,995 (1)**
52:2

---

**8**

**80,000 (8)**
14:13;45:24;47:3,5,
20;55:24;64:19;71:16

---

**9**

**9019 (4)**
56:10,11;57:6;78:6
**9019a (1)**
56:19
**9019b (9)**
55:25;56:1,3,19;
57:6,18,24,25;74:8
**9019c (5)**
49:16;74:4,6,9,23
**999 (1)**
52:11

Case: 19-30088    Doc# 7416    Filed: 05/19/20    Entered: 05/19/20 10:25:19    Page 97
of 97