WATTS GUERRA LLP
Mikal C. Watts *pro hac vice*
Paige Boldt, SBN 308772
70 Stony Point Road, Suite A
Santa Rosa, California 95401
Phone: (707) 241-4567
2561 California Park Drive, Suite 100
Chico, California 95928
Phone: (530) 240-6116
Email: mcwatts@wattsguerra.com

*Attorney for Numerous Wild Fire Claimants*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM). | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**OPPOSITION TO MOTION FOR THE APPOINTMENT OF AN EXAMINER OF VOTING IRREGULARITIES PURSUANT TO SECTION 1104(c) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2007.1**<br><br>Date: TBD<br>Time: TBD<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Re: Docket No. 7427-2 |

TO THE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD

WATTS GUERRA LLP and its many wildfire clients, by and through their undersigned counsel appearing *pro hac vice* in accordance with Doc. #7179, hereby respectfully file their *Opposition to Motion for the Appointment of an Examiner of Voting Irregularities Pursuant to Section 1104(c) of the Bankruptcy Code and Bankruptcy Rule 2007.1*.

- 1 -

**SUMMARY OF OPPOSITION**

The *Motion for the Appointment of an Examiner of Voting Irregularities Pursuant to Section 1104(c) of the Bankruptcy Code and Bankruptcy Rule 2007.1* ("the Motion) should be denied for three reasons:

***First***, the Motion is based almost entirely upon unauthenticated, and impermissibly redacted, social media hearsay, that is inadmissible in this Court, and the meager admissible evidence remaining is insufficient to meet Movants' burden of proof.

***Second***, Section 1104(c) does not call for the appointment of an examiner under these facts. Votes not cast after ballots were delivered during the voting period should not be counted. If votes were not cast due to late notice that was provided during the voting period, those individuals should instead file a motion under Bankruptcy Rule 9006(b)(1) to have their late votes counted. However, if no request to count late votes is made first, a request for an examiner here can never be appropriate under Section 1104(c). By counting up the number of requests to count late votes, this Court can thereby ascertain the prevalence of the issue complained of by the four declarants in this Motion. However, the "overwhelming acceptance" of the Plan by those already voting means this Court can count those ballots cast late between now and confirmation.

***Third,*** appointment of an examiner under Section 1104(c) is not appropriate when all late votes cast by the time of confirmation could be counted under Rule 9006(b)(1), and would still not affect the overall result.

**ARGUMENTS AND AUTHORITIES**

**I.     THERE IS NO ADMISSIBLE EVIDENCE IN SUPPORT OF THE MOTION THAT MEETS THE BURDEN OF PROOF WHICH MOVANTS BEAR**

Initially, the Motion should be denied because it is based almost entirely upon inadmissible social media posts, which do not, in any way, constitute evidence needed to meet the Movants' burden of proof to demonstrate why an examiner should be appointed. Objection to this

inadmissible hearsay is hereby made. Worse, the attorneys seeking to undermine the plan and the fire survivors vote have redacted most of the social media double hearsay, and thereby rendered others from being able to identify who posted the hearsay and the accuracy of these isolated alleged complaints. It also begs the question, because the attorneys who redacted the social media presumably contacted these handful of unknown individuals to determine the accuracy of their complaint cure them. Notably, the attorneys who redacted the emails could have sought declarations from any aggrieved voters and failed to do so.

### A. OBJECTION TO INADMISSIBLE SOCIAL MEDIA POSTS

WATTS GUERRA hereby objects to the following redacted, unauthenticated social media posts attached as exhibits to the Motion:

| Ex. # | Description | Objection Lodged |
|---|---|---|
| Ex. A | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. B | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. C | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. D | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. I(1) | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. I(2) | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. I(3) | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. I(4) | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. I(5) | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. I(6) | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. I(7) | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. I(8) | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. I(9) | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. J(1) | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. J(2) | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. J(3) | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. J(4) | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. J(5) | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. J(6) | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. J(7) | Redacted Social Media | Hearsay, Lack of Authentication; |
| Ex. J(8) | Redacted Social Media | Hearsay, Lack of Authentication; |

*First*, each of these exhibits are social media posts where the author's name has been redacted. Because "[t]he requirement authentication is ... a condition precedent to admitting

evidence," a court abuses its discretion in admitting such social media pages without proper authentication under Rule 901." *United States v. Vayner*, 769 F.3d 125, 129, 131 (2d Cir. 2014). Because these social media posts have "not been authenticated," they are "plainly inadmissible for any purpose." *Fischer v. Forrest*, 286 F.Supp.3d 590, 603 (S.D. N.Y. 2018).

***Second***, even were these exhibits properly authenticated – and they are not – such exhibits would still be inadmissible as hearsay. *United States v. Torres*, 2020 WL 373981, at *10 (S.D. N.Y., Jan. 23, 2020) (social media statements "would be inadmissible hearsay under Rule 801."); *Fischer v. Forrest*, 286 F.Supp.3d at 603 ("the statements in it are inadmissible hearsay."); *Zafer Taahhut Insaat ve Ticaret A.S. v. United States*, 833 F.3d 1356, 1361 (Fed. Cir. 2016) (affirming denial of "motion to supplement the record because the proffered newspaper articles and social media sources constituted inadmissible hearsay."); *Tripkovich v. Ramirez*, 2015 WL 13544196, at *3 (E.D. La., June 30, 2015) (granting motion in limine "insofar as any comments or captions that accompany the Facebook or Instagram postings constitute inadmissible hearsay."); *Linscheid v. Natus Medical Inc.*, 2015 WL 1470122, at *6 (N.D. Ga., Mar. 30, 2015) ("social media and similar online postings… are inadmissible" because "[t]he exhibits also constitute inadmissible hearsay.").

***Third***, no exception to the hearsay rule applies that would make these unattributed statements on social media posts admissible. *United States v. Krug*, 2019 WL 416946, at *4 (W.D. N.Y., Feb. 2, 2019) ("the November 27, 2014 social media post is not admissible evidence. The post is inadmissible hearsay under Federal Rule of Evidence 803. It is an out-of-court statement offered for the truth of the matter asserted. Further, the post does not qualify for any of the exceptions to the hearsay rule under the Federal Rules of Evidence proposed by the defendant."). As the United States Court of Appeals for the Third Circuit recognized, "considered in their entirety, the Facebook records are not business records under Rule 803(6)...." *United States v. Browne*, 834 F.3d 403, 411 (3rd Cir. 2016).

## B. THE REMAINING EVIDENCE OFFERED IN SUPPORT OF THE MOTION IS WOEFULLY INSUFFICIENT TO MEET THE BURDEN OF PROOF

"The moving party has the burden to prove that an examiner should be appointed." *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 636 (Bankr. S.D. N.Y. 2012). "Mere allegations of fraud, dishonesty, incompetence, misconduct, mismanagement or irregularity… are insufficient to justify the appointment of an examiner under section 1104(c). Such allegations of misconduct must be supported by facts." *Id*., 478 B.R. at 640, citing 7 COLLIER ON BANKRUPTCY ¶ 1104.03[3].

Yet, only four admissible declarations remain – two lawyers who attest that they were mailed their clients' ballots late,[1] despite having access to e-ballots on Prime Clerk's website since April 1, 2020[2] - and two individual fire survivors who say they received their ballots late.[3] Significantly, none of these four individuals demonstrated that they were unable to timely cast a ballot by this Court's May 15, 2020 deadline. Consequently, on this record, there is no admissible evidence before this Court of even a single fire survivor being deprived of their right to vote timely.

The Motion seeks the appointment of an examiner by baldly and incorrectly proclaiming that "Section 1104(c) of the Bankruptcy Code mandates the appointment of an examiner under circumstances such as those present here." Motion, p. 3. This statement, made without citation to even a single case where a bankruptcy court has appointed an examiner to conduct an examination of late ballots being sent during a vote on a plan, is legally incorrect.

---

[1] Ex. H to Motion, Declaration of Joseph R. Lucia; Ex. G to Motion, Declaration of Dustin Cooper.

[2] https://restructuring.primeclerk.com/pge/EBallot-Home.

[3] Ex. E-1 to Motion, Declaration of Karen Lynn Ingalls; Ex. F, Declaration of Mary Kay Wallace.

## II. SECTION 1104(c) DOES NOT CALL FOR THE APPOINTMENT OF AN EXAMINER UNDER THESE FACTS

"The appointment of an examiner would be inappropriate if the motion was filed for an improper purpose such as a litigation tactic to delay a case," *In re Residential Capital, LLC*, 474 B.R. 112, 121 (Bankr. S.D. N.Y. 2012), and this Court retains the "discretion to deny a motion for appointment of an examiner," especially when such a motion is "filed for an improper purpose as a litigation tactic to try to derail approval" of Debtor's plan. *In re Dewey & LeBoeuf LLP*, 478 B.R. at 639. That is what is happening here with the Motion now before this Court.

With the declarations of only four individuals complaining of the late delivery of ballots – out of more than 70,000 delivered in this case[4] – Movant "has not identified anything to be investigated" and therefore "has utterly failed to show that it would be appropriate to appoint an examiner in this case." *In re Gliatech, Inc.*, 305 B.R. 832, 836 (Bankr. N.D. Ohio 2004). This is because Section 1104(c) calls for an examiner only "***as is appropriate***." 11 U.S.C. §1104(c) (emphasis added). *See In re Loral Space & Communications Ltd*, 313 B.R. 577, 586 (Bankr. S.D. N.Y. 2004) ("In addition, the statute makes it clear that Congress intended the bankruptcy court to control the nature and extent of examiners' investigations. *See* 11 U.S.C. §1104(c), which states that "the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate."). *See also In re Visteon Corp.*, No. 09–11786(CSS) (Bankr. D. Del., May 12, 2010), Hr'g Tr. at 170:16–20 (ECF Doc. # 3145) (denying appointment of examiner and finding "it would be an absurd result to find that in every case where the financial criteria is met and a party-in-interest asks, the Court must appoint an examiner. There has to be an appropriate

---

[4] *See In re Dow Corning Corp.*, 244 B.R. 721, 734 (Bankr. E.D. Mich. 1999) ("What minimal evidence there is supports this Court's finding that the notice, solicitation procedures and balloting were beyond reproach.").

Case: 19-30088    Doc# 7436    Filed: 05/20/20    Entered: 05/20/20 14:41:03    Page 6 of 13

investigation that needs to be done."); *In re Am. Home Mortg. Holdings, Inc.*, No. 07–11047(CSS) (Bankr. D. Del., Oct. 31, 2007), Hr'g Tr. at 76:09–12 (ECF Doc. # 1997) (rejecting mandatory interpretation of section 1104(c)(2) because financial threshold was only one part of inquiry and "the other piece of the puzzle is that there has to be an investigation to perform that's appropriate," and denying a motion to appoint an examiner).

In this case where the Confirmation Hearing is scheduled for May 27, and Movants seek the appointment of an examiner via a motion filed after hours on May 19, this Court may – and should – determine if there are other remedies available to ensure that these four complaining declarants can have their votes counted.

### A. VOTES NOT CAST AFTER BALLOTS WERE DELIVERED DURING THE VOTING PERIOD SHOULD NOT BE COUNTED

Attorney Joseph Lucia received all solicitation packages by April 28, 2020 – seventeen days prior to the voting deadline - and attorney Dustin Cooper received ballots for all clients by May 7, 2020 – eight days prior to the voting deadline. No showing has been made by these two lawyers that their respective clients were unable to timely vote. As to these ballots, they should have been timely filed, or not counted. *See In re Bourbon Saloon, Inc.*, 2012 WL 899282, at *2 (Bankr. D. La., Mar. 14, 2012) ("Perhaps there might be some special circumstances where the court might allow the late filing of a ballot, but here, where no one is claiming that the parties did not receive proper notice, and their only excuse is ignorance of their right to vote, the court will not allow the late filed ballots."); *In re Maluhia Eight, LLC*, 2010 WL 4259832 (Bankr. N.D. Tex., Oct. 22, 2010) (no cause shown "to extend the voting deadline after it had expired."); *In re Hills Stores Corp.*, 167 B.R. 348, 352-53 (Bankr. S.D. N.Y. 1984) (ballot which was not received until five days after deadline for voting on debtor's proposed plan could not be deemed timely filed based on creditor's alleged "excusable neglect.").

Case: 19-30088    Doc# 7436    Filed: 05/20/20    Entered: 05/20/20 14:41:03    Page 7 of 13

Likewise, the declarations of two individual fire survivors who also say they received their ballots late must first demonstrate that they had no opportunity to vote between the dates of their declarations on May 7 and May 9 respectively and this Court's voting deadline of May 15.[5]

### B. IF VOTES WERE NOT CAST DUE TO LATE NOTICE PROVIDED, THOSE INDIVIDUALS SHOULD FILE A MOTION UNDER BANKRUPTCY RULE 9006(b)(1) TO HAVE THEIR LATE VOTES COUNTED

In any large bankruptcy with 70,000 notices of claims, it is of course possible that a small number of individuals will miss the court-imposed voting deadline because of a delay in delivery of the solicitation materials and ballots. However, Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure provides the solution to that instance. Fed. R. Bankr. P. 9006(b)(1) ("when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."). Without such a motion, disallowing late ballots is within the bankruptcy court's discretion. *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1314 (8th Cir. 1987) (affirming disallowance of late ballot when "[n]o motion for enlargement of time under Rule 9006(b)(1) is apparent from the record."). To date, no such Rule 9006(b)(1) motion has been filed in this Court.

---

[5] Ex. E-1 to Motion, Declaration of Karen Lynn Ingalls, dated May 7, 2020 – eight days prior to the voting deadline, and filed with the Court by her attorney Jeremiah Hallisey on May 10, 2020, with five days remaining until the voting deadline); Ex. F, Declaration of Mary Kay Wallace, p. 2, dated May 9, 2020 (six days prior to the voting deadline, and filed by her May 11, 2020 – four days prior to the voting deadline).

If such a Rule 9006(b)(1) is filed before confirmation, this Court has the discretion to allow the late votes upon a showing of "excusable neglect." *See In re Sabbun*, 556 B.R. 383, 390 (Bankr. C.D. Ill. 2016) ("Bankruptcy courts that have allowed late-filed ballots to be counted have generally done so only after finding that the failure to timely ballot was the result of excusable neglect."); *In re Ellipso, Inc.*, 2010 WL 1418346, at *4 (Bankr. D.D.C., April 5, 2010) ("Although inadvertence usually does not constitute 'excusable' neglect, the relevant circumstances here convince me that, as an equitable matter, Zaid's failure to submit a ballot to Mann in a timely fashion was excusable neglect."). For example, if the mail was slow due to the COVID-19 pandemic, this Court has precedent before it to find "excusable neglect." *See In re Rhead*, 179 B.R. 169, 177 (Bankr. D. Ariz. 1995) ("Given the existence of the July 4, 1994 holiday, it is not difficult to find "excusable neglect" justifying the extension of the voting deadline for the few days required here."). Likewise, if it is shown here that Prime Clerk mailed ballots to the wrong address, a request to accept late filings could be allowed under Rule 9006(b)(1). *See In re Paul*, 101 B.R. 228, 231 (Bankr. S.D. Cal. 1989) (mailing ballots to wrong address was excusable neglect). But – at present – this Court has no such showing to justify relief as to this Motion before it.

C. **IF NO REQUEST TO COUNT LATE VOTES IS MADE, A REQUEST FOR AN EXAMINER CAN NEVER BE APPROPRIATE UNDER SECTION 1104(c)**

Rather than risk delay by appointing an examiner to conduct an unnecessary investigation during the seven days between now and the confirmation hearing, this Court should instead see how many fire survivors file motions during that time period to have their late ballots counted. By doing so, the Court can learn how prevalent the late notice issue was, and can then fashion a remedy – one that would not likely materially affect the vote tally anyway.

1. **By Counting Up the Number of Requests to Count Late Votes, this Court Can Ascertain the Prevalence of the Issue Complained of by Four Declarants in this Motion**

Rule 9006(b)(1) requires a showing of "excusable neglect." A decision not to vote, or to not move to have a late vote counted is not "excusable neglect"; rather it is tactical, deliberate conduct which would weigh heavily against the relief requested in this Motion. *See In re Enron*, 326 B.R. 46, 50-51 (Bankr. S.D. N.Y. 2005). Here, it is apparent that allowing late-filed ballots by the four declarants – or even hundreds more if that many motions to count late votes are filed - is simply not going to change the "overwhelming acceptance of the Plan by the wildfire victims entitled to vote." *See* Debtors' Statement Concerning Plan Voting Results, Doc. #361 in Case 3:19-CV-05257-JD (filed May 18, 2020); *see also* Joint Report Regarding The Status of the Vote, Doc. #345 in Case 3:19-CV-05257-JD (filed April 28, 2020) (showing 98.67% of 20,501 votes cast by April 28 were to accept the Plan). In deciding whether to accept late votes, this Court can consider the implications of the same. *See In re RTJJ*, 2013 WL 462003, at *7 (Bankr. W.D. N.C., Feb. 6, 2013) ("Disallowing this ballot would end the confirmation inquiry and end in a foreclosure.… Given the stakes and the circumstances, this Court's equitable discretion will be exercised in favor of allowing the Simonds claim for balloting."). *See also In re CHC Group Ltd.*, 2017 WL 11093971, at *7 (Bankr. N.D. Tex., Mar. 3, 2017) (noting Plan acceptance by 99.93% in amount and 72.73% in number after "late-filed Ballots were deemed timely filed by the Bankruptcy Court").

Thus, this Court can deny this motion to appoint an examiner for which the record in support is sparse if not non-existent, and then merely wait to see if the issue identified here becomes widespread or not. This Court has the discretion to follow ample precedent to then count ballots returned between now and confirmation. *See In re Sunplay Pools and Spas Superstore, Inc.*, 2019 WL 4127149, at *2 (Bankr. D. Utah, Aug. 29, 2019), citing *In Ruti-Sweetwayer, Inc.*, 836 F.2d 1263, 1267-68 (10th Cir. 1988) ("Classes 1 and 5 are deemed to accept the Plan, notwithstanding

their late cast ballots."); *In re River-Bluff Enterprises, Inc.*, 2015 WL 1843035, at *2 (Bankr. E.D. Wash., April 10, 2015) (referencing Order Allowing Late Filed Ballots For Purposes of Voting in Favor Or Against the Debtor's Second Amended Chapter 11 Plan of Reorganization); *In re Berry & Berry Wings, LLC*, 2014 WL 6705779, at *5 (Bankr. M.D. Fla., Nov. 26, 2014) (At the confirmation hearing, the Court granted Debtor's Motion to Allow the SBA's late filed ballot.); *In re J.C. Householder Land Trust #1*, 502 B.R. 602, 604, n. 7 (Bankr. M.D. Fla. 2013) ("The Debtor moved to allow Tampa Electric's late-filed ballot. That motion was granted at the confirmation hearing."); *In re Ekstrom*, 2010 WL 1254893, at *15 (Bankr. D. Ariz., Mar. 23, 2010) ("The Court concludes, based upon the facts of this case, that the IRS never provided a ballot to accept or reject the Debtor's Plan and may not be counted as an impaired consenting class to the Debtor's Plan. The FL Receivables' Objection on this point is sustained."); *In re Celebrity Resorts*, LLC, 2010 WL 5392657, at *3 (Bankr. M.D. Fla., Dec. 28, 2010) ("…the Late Ballot Motion is due to be granted. All such late and amended ballots will be counted."); *In re CGE Shattuck, LLC*, 2000 WL 33679409, at **2-3 (Bankr. D. N.H., Dec. 1, 2000) ("Upon realizing that the voting deadline was October 16, 2000, Barthelmess states that she immediately executed the ballot and had the legal department send the ballot by overnight mail…. Callaway is entitled to a vote on the Plan."); *In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 40 (Bankr. D. Dela. 2000) ("Since Credit Lyonnais was not afforded an opportunity to vote on the original Plan, if the Modified Plan does impair its claim, an extension of time to permit it to vote on the Modified Plan is warranted."); *In re Glinz*, 1987 WL 857901, at **1-2 (Bankr. D. N.D., Dec. 4, 1987) ("IT IS ORDERED that the ballot of rejection filed by the FmHA on November 24, 1987 shall be included and counted in the ballot tabulation."); *In re TransAmerican Natural Gas Corp.*, 79 B.R. 663, 668 (Bankr. S.D. Tex. 1987) (noting that "[d]eadlines have been extended in separate orders allowing LP & L to file a late ballot and objection to the plan if it so desires."); *In re Trail's End Lodge, Inc.*, 54 B.R. 898, 902 (Bankr. D.

Case: 19-30088    Doc# 7436    Filed: 05/20/20    Entered: 05/20/20 14:41:03    Page 11 of 13

Va. 1985) ("The failure to receive one-day mail delivery within the State of Vermont is, however, excusable neglect within Bankruptcy Rule 9006(b)(1)(2). Pursuant to Bankruptcy Rule 9005, SVI'S late filed objection and ballot rejection is again allowed and the ballot is again accepted.").

        2.    <u>The "Overwhelming Acceptance" of the Plan By Those Already Voting Means This Court Can Count Ballots Cast Late Between Now and Confirmation</u>

As this Court indicated during its questioning of Debtor's counsel Stephen Karotkin during its May 19 scheduling conference, if the vote is significantly above the level required under 11 U.S.C. §1126(c), this exercise will largely be mooted. For example, if over ninety percent (90%) of all those voting have already voted to accept the Plan, it will take literally thousands upon thousands of motions to count late-cast ballots for the issue raised by this motion to affect plan confirmation.

**III.    APPOINTMENT OF AN EXAMINER UNDER SECTION 1104(c) IS NOT APPROPRIATE WHEN ALL LATE VOTES CAST BY THE TIME OF CONFIRMATION CAN BE COUNTED UNDER RULE 9006(b)(1), AND STILL NOT AFFECT THE OVERALL RESULT**

Perhaps this mathematical certainty of the overwhelming majority of votes already cast in favor of the Plan is the very reason those providing declarations for the Motion did not simply move this Court to have their late-cast votes counted. While the granting of such motions under Rule 9006(b)(1) would cause their votes to be counted, it still would not change the overall likely result – plan confirmation. So instead, having filed their joinder in the previous motion to discard the votes of over 13,000 fire survivors already overruled by this Court (Doc. #7401), the same counsel for movants now seeks to delay confirmation of the Plan via an appointment of an examiner, and attempts to do so on the strength of unauthenticated, hearsay on social media and the declarations of four individuals who by all accounts already had the time to get their votes in timely.

Accordingly, the Motion should be denied.

| | |
|---|---|
| | Respectfully submitted, |
| Dated: May 20, 2020 | WATTS GUERRA LLP |
| | By: /s/ Mikal C. Watts |
| | Mikal C. Watts (*pro hac vice*) |
| | *Attorney for Numerous Wild Fire Claimants* |