1      UNITED STATES BANKRUPTCY COURT

2      NORTHERN DISTRICT OF CALIFORNIA

3                      -oOo-

4  In Re:                        ) Case No. 19-30088
                                 ) Chapter 11
5  PG&E CORPORATION AND PACIFIC  )
   GAS AND ELECTRIC COMPANY,     ) San Francisco, California
6                                ) Tuesday, May 19, 2020
                       Debtor.   )10:00 AM
7  _____ )
                                    PRE-CONFIRMATION SCHEDULING
8                                   CONFERENCE

9              TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE DENNIS MONTALI
10             UNITED STATES BANKRUPTCY JUDGE

11 APPEARANCES:
   For the Debtor:            STEPHEN KAROTKIN, ESQ.
12                            (Telephonically)
                              THEODORE E. TSEKERIDES, ESQ.
13                            (Telephonically)
                              Weil, Gotshal & Manges LLP
14                            767 Fifth Avenue
                              New York, NY 10153
15                            (212)310-8000

16 For the Official Committee  ROBERT A. JULIAN, ESQ.
   of Tort Claimants:          (Telephonically)
17                             Baker & Hostetler LLP
                               600 Montgomery Street
18                             Suite 3100
                               San Francisco, CA 94111
19                             (415)659-2600

20 For the Official Committee  ELIZABETH A. GREEN, ESQ.
   of Tort Claimants:          (Telephonically)
21                             Baker & Hostetler LLP
                               200 South Orange Avenue
22                             Suite 2300
                               Orlando, FL 32801
23                             (407)649-4000

24

25

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 1 of 63

| | | |
|---|---|---|
| 1 | For Andrew R. Vara, United States Trustee: | GREG M. ZIPES, ESQ. (Telephonically) |
| 2 | | United States Department of Justice |
| 3 | | 450 Golden Gate Avenue Suite 05-0153 |
| 4 | | San Francisco, CA 94102 (415)705-3333 |
| 5 | | |
| 6 | For the Official Committee of Unsecured Creditors: | GREGORY A. BRAY, ESQ. (Telephonically) Milbank, LLP |
| 7 | | 2029 Century Park East 33rd Floor |
| 8 | | Los Angeles, CA 90067 (424)386-4000 |
| 9 | | |
| 10 | For BOKF, NA, solely in its capacity as Indenture Trustee: | ANDREW I. SILFEN, ESQ. (Telephonically) Arent Fox LLP |
| 11 | | 1301 Avenue of the Americas 42nd Floor |
| 12 | | New York, NY 10019 (212)484-3900 |
| 13 | | |
| 14 | For Fire Victims: | THOMAS TOSDAL, ESQ. (Telephonically) Tosdal Law Firm |
| 15 | | 777 South Highway 101 Suite 215 |
| 16 | | Solano Beach, CA 92075 (858)704-4710 |
| 17 | | |
| 18 | For Public Employees Retirement Association of New Mexico: | MICHAEL S. ETKIN, ESQ. (Telephonically) Lowenstein Sandler LLP |
| 19 | | One Lowenstein Drive Roseland, NJ 07068 |
| 20 | | (973)597-2500 |
| 21 | For the Ad Hoc Committee of Holders of Trade Claims: | MICHAEL S. NEUMEISTER, ESQ. (Telephonically) |
| 22 | | Gibson, Dunn & Crutcher LLP 333 South Grand Avenue |
| 23 | | Los Angeles, CA 90071 (213)229-7000 |
| 24 | | |
| 25 | | |

```
 1   For Adventist Health          REBECCA J. WINTHROP, ESQ.
     System/West and Feather       (Telephonically)
 2   River Hospital:               Norton Rose Fulbright US LLP
                                   555 South Flower Street
 3                                 Forty-First Floor
                                   Los Angeles, CA 90071
 4                                 (213)892-9200

 5   For GER Hospitality, LLC:     FRANCIS O. SCARPULLA, ESQ.
                                   (Telephonically)
 6                                 Law Offices of Francis O.
                                   Scarpulla
 7                                 456 Montgomery Street
                                   17th Floor
 8                                 San Francisco, CA 94104
                                   (415)788-7210

 9

10

11

12

13

14

15

16

17
     Court Recorder:               LORENA PARADA/ANKEY THOMAS
18                                 United States Bankruptcy
                                   Court
19                                 450 Golden Gate Ave.
                                   San Francisco, CA 94102
20

21   Transcriber:                  COLIN RICHILANO
                                   eScribers, LLC
22                                 7227 N. 16th Street
                                   Suite #207
23                                 Phoenix, AZ 85020
                                   (973)406-2250
24
     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

 1    SAN FRANCISCO, CALIFORNIA, TUESDAY, MAY 19, 2020, 10:00 AM

 2                              -oOo-

 3      (Call to order of the Court.)

 4            THE COURT REPORTER:  This is the Bankruptcy Court for

 5    the Northern District of California.  Court is now in session.

 6    The Honorable Dennis Montali presiding.

 7            THE COURT:  Good morning.  Can you hear me?

 8            THE COURT REPORTER:  Yes, Your Honor.  In the matter

 9    of PG&E Corporation.  One moment while I move the attorneys

10    into the courtroom.

11      (Pause.)

12            THE COURT REPORTER:  Your Honor, I believe all the

13    parties have joined.

14            THE COURT:  All right.  Good afternoon and good

15    morning, everyone.  Can you all hear me?

16            MR. JULIAN:  We can.

17            MR. KAROTKIN:  Yes, Your Honor.

18            MR. ZIPES:  Yes, Your Honor.

19            THE COURT:  Okay.  Well, Ms. Tracy Green, I see you on

20    the screen.  I think there might have been a mix-up.  I think

21    Elizabeth Green was supposed to be invited in.  You're welcome

22    to be here.

23            But, Mr. Julian, you were expecting Elizabeth Green,

24    weren't you?

25            MR. JULIAN:  Yes, Your Honor.

1 THE COURT: All right. Well, Tracy Green's welcome in
2 the court. But, Ms. Parada is Elizabeth Green on the call
3 list?

4 THE COURT REPORTER: I will look on the list. One
5 moment, Your Honor.

6 THE COURT: And, Ms. Green, if -- Ms. Elizabeth Green,
7 if you're on the court, please raise your hand so we can --
8 that facilitates our ability to get people up to the screen.
9 There you go.

10 And meanwhile, Ms. Tracy Green, you're welcome to
11 stay, but you might not want to sit and face the camera for the
12 next forty-five minutes, if you'd like to go back into the
13 attendees section, we can move you there. Again, I don't mean
14 to deny you the right to be here, to be heard, but you're not
15 on the agenda for the moment.

16 Okay. Let's ask all counsel to unmute yourself and
17 I'll ask for appearances for the record, starting with the
18 debtors' counsel, Mr. Karotkin and Mr. Tsekerides.

19 THE COURT REPORTER: Excuse, me, Your Honor. I do not
20 have Ms. Elizabeth Green as an attendee at the moment.

21 THE COURT: No, she's on. I can see her now, Ms.
22 Parada. She's appearing on the -- she's in the -- as a
23 panelist.

24 THE COURT REPORTER: Oh, thank you.

25 THE COURT: Okay. But, Ms. Green, you need to unmute

Case: 19-30088    Doc# 7445    Filed: 05/21/20    Entered: 05/21/20 07:19:13    Page 5 of
63

1  your microphone, also.

2        Okay.  Mr. Karotkin.

3        MR. KAROTKIN:  Yes, sir.  Thank you, sir.  Stephen

4  Karotkin, Weil, Gotshal & Manges, for the debtors.

5        THE COURT:  Mr. Tesekerides?

6        MR. TSEKERIDES:  Ted Tsekerides from Weil, Gotshal,

7  for the debtors.

8        THE COURT:  You're sporting your shelter-in-place --

9        MR. TSEKERIDES:  Yes.

10        THE COURT:  -- goatee, I see.

11        MR. TSEKERIDES:  It's a full beard, yeah.

12        THE COURT:  Mr. Bray?

13        MR. BRAY:  Good morning, Your Honor.  Gregory Bray,

14  Milbank LLP, counsel for the official committee of creditors.

15        THE COURT:  Mr. Julian?

16        MR. JULIAN:  Good morning, Your Honor.  Robert Julian

17  of BakerHostetler for the TCC.

18        THE COURT:  Ms. Green?  Ms. Green, are you there?

19        MS. GREEN:  Yes.  Good morning, Your Honor.  Elizabeth

20  Green of BakerHostetler, on behalf of the TCC.

21        THE COURT:  And, Mr. Zipes, we understood you were

22  substituting in, in place of Mr. Laffredi for the U.S. Trustee?

23        MR. ZIPES:  That's correct, Your Honor.  Good morning.

24        THE COURT:  Okay.  For everyone's benefit, let me make

25  a number of preliminary comments and then I'll turn it over to

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 6 of
63

1   the principle counsel.  Again, invite you -- thank you all for

2   participating in our Zoom webinar for the second time, and

3   please understand we're as new at this as you are, and my

4   staff, and they've been working very hard to make it work, but

5   it is not easy because of the timing for moving people in and

6   out and keeping the appearances straight, but here we are.

7              So I will repeat something that I mentioned -- well,

8   it's in the instructions.  If you're in the courtroom, that is

9   to say if you are a panelist, I can see you and you can see me,

10  and we can have a colloquy back and forth.  If you are in

11  the -- what we'll call in the gallery or in the court, but if

12  you are an attendee, there will be an opportunity for some, but

13  not all, of you to be heard, and then you use the function of

14  raising your hand on the screen, and my courtroom deputy and

15  staff will facilitate getting you in.  And again, what we've

16  learned from other cases is that it's not particularly fun for

17  panelists to sit there and be stuck on-screen for thirty or

18  forty minutes with nothing to do, and that's why, from a

19  technical point of view, we've found here at the court, it's

20  better to take people out of the panelist box if they're not

21  going to be involved readily and promptly.  So don't take it as

22  a personal offense.  It's to make the technology work.

23             I want to repeat again substantively what was in the

24  docket and make sure that those of you who are attending today

25  and want to argue for or against the plan, that is not on the

1   agenda. This is purely a scheduling process to anticipate and

2   figure out, for my benefit and the principle lawyers' benefits,

3   who is going to be doing what as we go into the confirmation

4   trial in the coming days; what witnesses, what sequence, who's

5   going to be cross-examining, what additional papers are going

6   to be filed. This is not the time or the place for proponents

7   or opponents of the plan to make their speech. So don't take

8   it personally. I mean no offense, but you won't even be

9   invited in today if you're not participating for purposes of

10   scheduling these matters. There will be a time and a place for

11   that, so please understand that.

12        Secondly, the docket was smoking with activity in the

13   last few days with lots of objections to confirmation, but

14   there were also lots of objections to the very specific issues

15   of the debtors' requirement to cure defaults under executory

16   contracts. The debtors are aware, obviously, and I'm aware of

17   many, many, many objections that are simply, although styled as

18   objection to confirmation, are nothing other than challenges to

19   the debtors' position as to what is cure. So I don't intend to

20   spend any time on that subject today; although, in a few

21   moments I'll give, particularly for Mr. Tsekerides and other

22   counsel for the debtors, some assignments and hear their views

23   on what I think should be done. But for today's purposes, if

24   you are participating because you have filed an objection based

25   upon cure and not including or not separately setting forth an

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 8 of
63

1   objection to confirmation, there's nothing that's going to take
2   place today that's going to affect you or your clients' rights.
3           Now, I know from public reports and also something
4   that counsel for the debtor, I believe it was Mr. Orsini, filed
5   with the district court, the debtors will shortly have a report
6   on the votes of the impaired classes.  So in a few minutes,
7   I'll ask Mr. Karotkin or Mr. Tsekerides to just give us a
8   status report, not on the merits of the report, unless it can
9   be summarized briefly, but rather on the timing of when that
10  will make it to the docket and when I and the participants and
11  their counsel and fire victims and the public can be advised of
12  what the outcome was there.
13          One thing that the scheduling order or the scheduling
14  protocol that was presented left out, I presume inadvertently,
15  but what I need to hear from debtors' counsel this morning is
16  when they intend to file declarations in support of
17  confirmation.  The protocol talks about filing oppositions to
18  the specific objections and I -- part of the same thing.  But
19  if there were no objections, wouldn't that be great, I would
20  still expect, Mr. Karotkin, you or Mr. Tsekerides would be
21  filing declarations to support your case in chief, and I don't
22  think I have on my list when you intend to do that.  So I'd
23  like you, in a few minutes, to give me a response to that, and
24  I have some logistical matters to raise, but I'll wait until I
25  hear from you.

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 9 of
63

1        Now, in thinking about the schedule today and thinking

2   back to earlier in the year when we scheduled this conference

3   and the confirmation hearing, we weren't dealing with the COVID

4   crisis and we thought we'd all be warm and cozy in the San

5   Francisco Bankruptcy Court, but obviously, now things have

6   gotten much more complicated, and it isn't easy for any of you

7   or me or my staff or any of us to make this move as smoothly as

8   we would do in the normal pre-COVID era.  But my sense is,

9   based upon what we're covering today, is we should -- and I'm

10  going to schedule this coming Friday, at 11:30, another status

11  conference such as this as a follow-up.  If during this

12  morning's hearing someone finds that date and time absolutely

13  impossible, principle counsel, anyway, speak up, but I think

14  it's very important for me to have a better sense of the timing

15  of when things are going to have to happen.  And it may well be

16  that the trial won't actually start on May 27th.  It really is

17  a function of what is going to happen.  Will there be -- how

18  many declarations filed in support of confirmation, who are the

19  witnesses, when are they going to file their declarations, and

20  so on.

21        Going back to the executory contracts issue, what I'd

22  like to ask the debtors' counsel to do in the coming days, and

23  I don't think it has to be done quickly, but I'll let you tell

24  me otherwise, but I would like for you all to -- and I'm sure

25  you're probably already tracking this, but my staff and I are

1   tracking it, too, so I have about three pages of objections

2   based upon the executory contracts, and many of them include

3   plan objections as part of the objection, but many of them do

4   not.  And looking at the list and looking briefly, I simply was

5   not able to absorb all of them.  There's a lot of reading in

6   the last few days.

7           But I'd like debtors' counsel, in the coming days, to

8   put together a table that could be filed, and thus available to

9   everyone, that at least shows, in a table or on a spreadsheet

10  or something, the name of the objecting party, the docket

11  number of the objection, the amount in dispute.  Because if the

12  debtor says, I only owe you 10,000 dollars and the creditor

13  says it's twenty, I don't need to know anything more than the

14  delta is the ten in dispute, and perhaps an item on the

15  spreadsheet that just gives the status, if it's negotiations or

16  off-calendar or resolved, whatever.  It's a way of letting me

17  keep a tally on what's going on on that list.  So unless I'm

18  overlooking something, I see no urgency to getting the cure

19  amounts resolved and I would invite debtors' counsel to do

20  that, put that on the second level of burners, not the front

21  burner, unless it needs to be attended to quickly.

22          Now, I will add, of course, as I said, that some of

23  the counsel have included in one document an objection to

24  confirmation and an objection based upon the cure.  Just break

25  those into two parts and put the cure issue on a tally sheet or

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 11
of 63

1    a table that is readily available to everybody.

2            MR. TSEKERIDES:  Your Honor, it's Ted Tsekerides.  I

3    can address some of that, if you'd like, now.

4            THE COURT:  Yeah.  I've got about two more points to

5    go --

6            MR. TSEKERIDES:  Sure.

7            THE COURT:  -- and then I'll let you take over.

8            MR. TSEKERIDES:  Sure.

9            THE COURT:  It would also be helpful for me, Mr.

10   Tsekerides, if you -- and quickly, and this -- to me, this is a

11   front-burner issue.  Excuse me, I'm pausing.  You've probably

12   already done this, in part, that you collect and organize the

13   plan objections, some of them are broad, obviously, some of

14   them are more specific -- and organize them when you prepare

15   your filings and response, our scheduling anticipates that

16   debtors will be filing responses to those objections, that you

17   organize them by subject matter so that, for example, and this

18   is a nonexclusive list, some of the objections say the

19   discharge is too broad.  Some of them say the plan

20   discriminates.  Some say the classification is wrong.  Some say

21   the plan's not feasible.  You know better than I what they say.

22   Some of them say that the post-petition interest rate is wrong.

23   Obviously I know who said that.  I don't need a further

24   discussion and you don't need to brief something that's already

25   been resolved.  I'm sure you understand and I understand that

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 12
of 63

1  lawyers who have made an argument and not prevailed on that
2  argument need to protect their position on appeal, and I
3  respect that.  But I don't want to waste time on briefs,
4  reinventing the wheel.

5          So if, for example, Mr. Tsekerides, you are putting
6  together what we'll call an omnibus response, legal response,
7  and you say one of the topics is post-petition interest, that's
8  exactly one sentence that -- all that's necessary.  It's
9  resolved.  Resolved by a court decision.  Same with inverse
10 condemnation.  To the extent that I am able to issue any
11 rulings following the hearing from last Friday, that were the
12 TCC And the commercial creditor objections, if I'm able to give
13 you any decisions on those in the coming days quickly, and I'm
14 working on it, there's no need to have further discussion.  And
15 I certainly read the objections filed by those parties to
16 really reserve their position, so let's just be efficient about
17 that.

18         And then, finally, what I'm going to ask you to do,
19 might be difficult, but do your best, and maybe as early as
20 tomorrow or Thursday, perhaps by your own Zoom or your own
21 telephone conference, to invite a participation with you, a
22 meet and confer conference with the lawyers who have filed
23 objections, and any pro se parties, I know Mr. Abrams, for
24 example, has filed an objection, and have a discussion to
25 coordinate the need to schedule adverse witnesses.

1      So if Mr. So-and-so is going to be the debtors'

2  witness on its case-in-chief, then it seems to me that there

3  needs to be some attempt to make sure that parties who want to

4  examine that witness on cross have an opportunity to do so.

5  But at the same time, I don't want two or four or eight or ten

6  people examining the same witness on the same subject.  So I'm

7  asking you to try to do an informal meet and confer with the

8  objectors in the next couple of days so that we can discuss it

9  in the following hearing on Friday.  And it would be my

10  expectation that on Friday, after I hear from you and after --

11  well, after all these things are sort of pulled together, that

12  I'm able to make a decision on what would be an appropriate

13  sequence.

14      It seems to me we're all horribly inconvenienced by

15  the world situation, but in many respects, it's convenient in

16  the sense that we can schedule more carefully when would a

17  witness testify.  Nobody is going to get an excuse to say Mr.

18  So-and-so can't testify because he's on a two-week cruise, and

19  I believe that we ought to be able to have a tentative schedule

20  that is consistent with the need to move quickly, but not

21  something that's going to be impossible because of the number

22  of people involved.

23      The last comment, and my only comment, is a personal

24  one, but I suspect that many of you feel the same thing.  This

25  is work, just the way it is in court and I, for one, do not

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 14
of 63

1 relish the thought of doing six or seven hours a day of trial

2 in my breakfast room, or wherever you are doing it, and I'm

3 going to try to break this video trial up into pieces, little

4 segments, that will work for everyone's convenience.

5 I will tell you, the last thing is later today the

6 judges of our court are going to have a Zoom conference,

7 wouldn't you know it, to discuss what might happen in the

8 coming weeks with our court. But realistically, based upon the

9 situation locally in Northern California, and perhaps same in

10 all of your areas of the country, nothing is going to happen

11 soon. So I don't have any reasonable expectation that we will

12 be back to a more traditional court format in the coming weeks

13 and I, for one, am pretty much resigned to the fact that the

14 PG&E confirmation trial is going to be done exactly the way

15 we're having this hearing today.

16 So those are lots of comments. I will ask you, Mr.

17 Tsekerides and Mr. Karotkin to respond as you see fit, and then

18 I will ask the other counsel their views on what I've tried to

19 cover, and then leave it at that and see who we should hear

20 from otherwise.

21 So with that, I'll have a drink of water and listen to

22 you, Mr. Tsekerides.

23 MR. TSEKERIDES: Okay. First, let me see if Mr. --

24 this is Ted Tsekerides for the debtors, if Mr. Karotkin wants

25 to give any kind of overview before I address some of the

 1    specific items that Your Honor raised.

 2            MR. KAROTKIN:  Yes, Your Honor.  Stephen Karotkin,

 3    Weil, Gotshal & Manges for the debtors, just a quick overview.

 4    And I was glad to see in your opening remarks that you gave

 5    assignments to Mr. Tsekerides and not to me.  That's greatly

 6    appreciated.

 7            As we announced yesterday, and as you indicated,

 8    preliminary voting results indicate overwhelming acceptance by

 9    the plan by the wildfire victims.  The preliminary results also

10    indicate all but one of the impaired classes voted to accept

11    the plan, the only rejecting class being the subordinated class

12    of rescission and damage claims relating to PG&E Corporation

13    common stock.

14            As we pointed out in our press release, the voting

15    rights are still -- I'm sorry, the voting results are still

16    being reviewed by Prime Clerk and remain subject to change.

17    I'm advised that their formal certification of the votes is not

18    likely to be filed prior to May 22nd, I believe, as we had

19    indicated previously in some of the scheduling conferences.

20            THE COURT:  But your indication, your expectation is

21    that except for the one class, you said, that the requisite

22    majorities have been met, would you say, significantly above

23    the minimums?

24            MR. KAROTKIN:  Yes.

25            THE COURT:  Well, the reason I ask the question is, as

1  you know and I know --

2        MR. KAROTKIN:  The preliminary results indicate

3  significantly.

4        THE COURT:  Well, yeah, you and I both know, but

5  others may not know that a close call is still a close call,

6  but with some of the objections and the problems that have been

7  identified by people complaining about Prime or complaining

8  about the timing, I just need to know if it's going to be

9  necessary to schedule sort of a minitrial on the question of

10  the adequacy of the count, and I assume what you're telling me

11  is you do not believe that's going to be necessary?

12        MR. KAROTKIN:  I do not believe it will be necessary,

13  yes, sir.

14        In addition, as you indicated, there were a number of

15  objections to confirmation filed by the objection deadline and

16  a number -- an even greater number, of objections with respect

17  to, as you indicated, cure disputes.  As Mr. Tsekerides will

18  indicate later, we already have been engaged with numerous

19  parties with respect to the cure disputes.  And we agree with

20  you that those are a backburner item and I believe we will be

21  in a position to provide you with the chart that you are

22  looking for, but we don't view the pure cure disputes as being

23  an impediment to moving forward with confirmation at all, and

24  those can be, as we understand it, put on at a later date.  We

25  believe most of them will be consensually resolved, in any

1  event.

2          In addition, both prior, Your Honor, to the objection

3  deadline as well as after the objection deadline, we already

4  have been working with various parties to attempt to address

5  some of the objections that had been raised.  We expect that,

6  over the course of the next several days, some of them will be

7  resolved.  That's including discussions, Your Honor, with the

8  state agencies, as well as FEMA, with respect to the objection

9  they raised.

10          And I would also like to point out, Your Honor, that

11  there is ongoing mediation with retired bankruptcy judge

12  Newsome with respect to the matters raised in the TCC

13  objection, and that is ongoing, and of course I will not get

14  into the details of that mediation.

15          THE COURT:  Well, I'm happy to hear that it's a fact.

16  I mean, again, it's something that I am totally in the dark

17  about and when I read the TCC's lengthy and fully thought out

18  objection I thought, well, I don't know where that's going, but

19  thank you for that report.

20          MR. KAROTKIN:  Okay.  Now, with respect to our

21  response of pleadings and to address the question you raised,

22  we will be filing our responsive pleadings on May 22nd, in

23  accordance with the scheduling order.  That will include not

24  only and omnibus response the objections, but also a brief and

25  declarations in support of our affirmative case under Section

1   1129 of the Bankruptcy Code.  And that will be supported, and

2   Mr. Tsekerides will get into that, by at least two or three

3   declarations to address the factual requirements in 1129(a), as

4   well as certain of the objections.  And I think we'll --

5           THE COURT:  So excuse me.   That' will be on Friday,

6   also?

7           MR. KAROTKIN:  Yes.  Yes, sir.  That would be an

8   omnibus memorandum in support of confirmation in response to

9   objections, as well as supporting declarations.

10          THE COURT:  Okay.  But I'll take up with you or Mr.

11  Tsekerides the physical, how am I going to get those

12  declarations.  And we'll deal with that later, I just want to

13  know what we should anticipate.

14          MR. KAROTKIN:  Now, I would like to address one more

15  thing because you did indicate how you would like us to address

16  the objections.  And the way we are currently contemplating it,

17  and that, of course, was before the remarks you made earlier,

18  is that with respect to the objections, we thought it would be

19  appropriate to individually address the objection raised by the

20  TCC, the objection raised by the UCC, and perhaps the objection

21  raised by the para claimants.  I think that with respect to the

22  other objections we would, as you indicated, address those

23  objections in terms of topics because a lot of those raise

24  similar topics.  But that is currently -- we are contemplating

25  organizing our response.

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 19
of 63

 1          THE COURT:  Well, you have lots of lawyers and there
 2   are lots of objectors, there's only one judge, and there's only
 3   twenty-four hours in a day, and I can only read so much, and so
 4   I want to avoid reading the same thing twice.  And I love you
 5   all as lawyers, but lawyers have a habit of saying a lot of
 6   things over and over again, and introductions and definitions
 7   and all those things.  I simply can't process it.  I'm under
 8   the same kinds of time pressures that you're under.  So I don't
 9   mind, and I certainly acknowledge, that TCC And perhaps the UCC
10   objections are different, and I'm not going to make a fuss
11   about whether the brief is twenty pages or thirty pages, but
12   what I'm saying is I can't have thirty pages and then thirty
13   more pages that say the same thing, so --
14          MR. KAROTKIN:  We will not -- I assure you, Your
15   Honor, we will not do that.  And actually, we think this is the
16   best, streamlined way to do this, keeping in mind trying to
17   make your life easy.
18          THE COURT:  Well, you told me that the disclosure
19   statement would be streamlined and my recollection is you got
20   all the way down to sixty pages, so.
21          MR. KAROTKIN:  But remember I told you that wasn't my
22   fault.
23          THE COURT:  That's right.  Okay.  I'll take your
24   judgment on it and your commitment to me is don't reinvent the
25   wheel three times.

1          MR. KAROTKIN:  Yes, sir.

2          THE COURT:  And then, at some point, you need to give

3    me a clue as to how voluminous the declarations will be because

4    I may require or request that some overnight shipment of hard

5    copies and exhibits and reports be submitted, but I don't worry

6    about that for briefs.

7          MR. KAROTKIN:  No, we're happy to do that.

8          And I would also point out that we are also

9    contemplating attaching to our response a chart, similar to the

10   chart we used with the disclosure statement, which would list

11   each of the objections and the quick response.  So something

12   easy for you to put your fingers on and look at that, which we

13   think will be very helpful.

14         THE COURT:  Let me respond to one thing, and again

15   this may be Mr. Tsekerides' domain.  Some of the lawyers who

16   have filed objections or, rather, have filed designation of

17   exhibits are referring to things that are already in the

18   record, or somewhere like, for example, the protocol, or the

19   RSAs, and I need to have some efficiency to avoid doing those

20   things all over again.

21         So, Mr. Tsekerides, if perhaps I could put the burden

22   on you to be the traffic cop, again, to put in one list where

23   there are exhibits that more than one person or a party is

24   sponsoring, but our poor electronic docket is getting loaded

25   up, but I can't get loaded up by multiple copies of the same

1  exhibit.

2          So for the record, every lawyer or every party that

3  says I'm relying on this document, they can rely on it; they

4  just don't need to reproduce it over and over again.  So maybe

5  you can bring some efficiency to that process as well for me.

6          MR. TSEKERIDES:  Certainly.

7          THE COURT:  Okay.  I think your partner has passed the

8  ball to you.

9          MR. TSEKERIDES:  Okay.  So Ted Tsekerides for the

10  debtors.

11          I did want to go back and put a little bit more meat

12  on the bone in the executory contract issue, so we have had

13  discussions with folks where we're working right now to either

14  reconcile claims or cure amounts, but more importantly, I think

15  we're going to put something in the confirmation order that's

16  going to either address a process, or at least at a minimum,

17  make it clear that their rights are preserved.  We're not

18  getting into cure amounts or issues related to the amounts or,

19  even, I think there was one objection to rejection, at the

20  confirmation hearing.

21          The only caveat to that, I think you touched on this,

22  some of those touch on points related to can you even do this

23  to me in terms of, I think, the indemnity and contributions

24  issues.  We're going to brief those.  Those will be argued as

25  necessary at the confirmation hearing.  It will be in our reply

1   brief.  But with the exception of that, and there was one

2   entity that filed a list of witnesses and some documents that

3   are really only going to the cure amount issue, we don't

4   anticipate those people being witnesses at the confirmation

5   hearing.  Anything related to what they think they're entitled

6   to from a factual perspective is not for the confirmation

7   hearing.  I did want to put that out there.

8               THE COURT:  No, but I will agree with you, but I will

9   say this for the benefit of some of those parties who I can't

10  see on the screen but are participating in the hearing.  Their

11  positions are preserved and I have no objection to their

12  wanting to designate a witness for purposes of making their

13  case, but as you say, that witness, and that argument is for

14  another day.  And so I don't anticipate -- and those counsels

15  should understand, I don't anticipate hearing from those

16  declarants in connection with the primary issue of getting the

17  plan confirmed or not confirmed.

18              MR. TSEKERIDES:  Very good.  And then in terms of, I

19  think I mentioned at the last call, that we would go through

20  and see if people identified declarants or there were any

21  objections that seemed like they lent themselves to fact

22  issues.  I mean, other than that one I just mentioned about

23  executory contracts, I think the only two that I would consider

24  substantive, and the lawyers can speak for themselves, were two

25  that were filed by the TCC, but even there, only one from a Mr.

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 23
of 63

1 Williams may have lent itself to potential testimony.

2 So to the extent he's expected to offer factual

3 information, he would need to be available at the confirmation

4 hearing for cross, but with the exception of that, and then of

5 course, the debtors' witnesses in our affirmative case, which

6 Mr. Karotkin spoke about, there will be two or three, maybe

7 four, they'll be identified by Friday. We'll get the

8 declarations to you, and they'll be available for cross.

9 With the exception of the debtors, I'll put them to

10 one side, the TCC was the only other party that I saw that came

11 close to having a witness for the confirmation hearing. So I

12 mean, we can talk to Mr. Julian about that.

13 And also, I'll just put out there, I did raise it on

14 the last call, we did modify the language, as you recall, for

15 the 15th to say every effort should be made, but really at this

16 point, if they haven't filed the declaration, there really

17 shouldn't be any other witnesses, other than the debtors and

18 potentially Mr. Williams.

19 THE COURT: Well, I know that for at least one or two

20 objections, the debtors stipulated to a deferred deadline, even

21 for objections. So I can't keep track of it, but I remember a

22 couple of them came by. So there could be some more evidence

23 that's proffered by those objectors.

24 But let me go back and make again, a statement that

25 you just have to appreciate. If we were to start -- if you're

1   going to file declarations of witnesses on Friday, and you

2   think I can start a trial on the following Tuesday with cross-

3   examination beginning of that, it just can't happen which gets

4   back -- I mean, I can't even absorb the declarations, and if we

5   were having a traditional trial and you had your witness come

6   to court and testify on direct, that'd be one thing, but I

7   don't know how I could possibly be prepared on Tuesday after

8   Memorial Day to start with Mr. So-and-So on cross-examination

9   by an objector.

10        So we have to figure out a way to make this work more

11  feasibly, which gets back to my point of, if you meet and

12  confer and there is an attempt, or a request rather that

13  Attorneys A, B, and C wish to cross-examine witness Smith, then

14  we can schedule when will Mr. Smith be available for a video

15  examination by those lawyers, and then be subject to redirect,

16  but I don't know how that could be scheduled in this time.

17        My sense is that we should go back to, if we're going

18  to start the trial on Tuesday morning at 10 o'clock on the

19  27th, maybe opening statements, maybe some preliminary

20  arguments, but I don't know what else we could do.  I'll leave

21  it for today to let you reflect on, and maybe we take it up on

22  Friday.

23        MR. TSEKERIDES:  Yeah, I think I would like to reflect

24  on that, Your Honor, and it is a Wednesday, but I mean, this

25  was with respect --

1          THE COURT:  You're right.

2          MR. TSEKERIDES:  -- the schedule that we had and

3    typically we'd put the declarations in, I don't think the 22nd

4    was really any different from before, but look --

5          THE COURT:  When did you --

6          MR. TSEKERIDES:  -- I appreciate we're in a different

7    world.

8          THE COURT:  -- when did you expect to read those

9    declarations?

10         MR. TSEKERIDES:  Oh, they're not going to be very

11   long, Your Honor.

12         THE COURT:  Yeah, right.

13         MR. TSEKERIDES:  No, I'm working on them.  They're not

14   going to be that long.  But I hear you, and I guess, you know,

15   we can think about it some more and then we do have the call on

16   Friday at 11:30 your time, where we can talk about it some

17   more.

18         I did want to touch base a little bit on this Zoom

19   invite that I'm supposed to schedule because I'm not you, I

20   don't have the power to do anything to any of these folks, and

21   clearly it's going to be we could say, okay, Mr. So-and-So is

22   going to be one of the declarants, who wants to cross-examine

23   him, and then everyone on the phone says I want a half-an-hour

24   with him.  I have zero power to tell that person, no, hey, why

25   don't you talk to the other objectors, and you guys work it out

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 26
of 63

1    like we've done in these other hearings where you said, okay,

2    debtor you're going to get -- and proponents, you'll get two

3    hours, whack it up.  Objectors, you'll get two hours.  Maybe

4    put the UCC and TCC in charge, and they whack it up.

5        I'm happy to invite people over, but I can see how

6    this is going to go.  Everyone is going to say they want time,

7    and I have zero ability to say otherwise to them.

8        THE COURT:  We've had a couple of hearings where I've

9    asked counsel to divide up time for arguments and they've done

10   it on their own, they're adults, and responsible, and --

11       MR. TSEKERIDES:  By side, Your Honor.  I mean, I don't

12   think we've ever told somebody objecting to one of our motions

13   tell me how much time you want.

14       THE COURT:  No, no, but I -- well, I will leave it at

15   this, Mr. Tsekerides.  Of course, I'm expecting people to be

16   cooperative, but I'm also expecting lawyers who wish to examine

17   witnesses to figure out who is the best of their colleagues to

18   do it, and do it once.  I'm not going to have a witness or the

19   judge subjected to the same examination by multiple lawyers.

20       So it doesn't matter whether there's one lawyer who

21   wants to take the witness for six hours or six lawyers who want

22   to take the witness for one hour each.  I'd like people to make

23   a good faith effort to be efficient and come up with something.

24   And if -- I understand, you're not -- you don't have the

25   authority but you have my direction to make an attempt, and if

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 27
of 63

1  necessary, at the next hearing, if six lawyers say I want to

2  examine this guy for four hours each, I will probably say

3  that's too much, you'll have to -- and make some assignments,

4  which --

5          MR. TSEKERIDES:  And Your Honor --

6          THE COURT:  -- gets back to my point.  It would be my

7  expectation after Friday, after I hear what's been discussed

8  and at least I get a clue as to what is going to be presented,

9  Mr. Karotkin or you were nice to say the declarations are

10 brief, but maybe they aren't, and I'm not going to deprive the

11 adversaries of their day to cross-examine, but even the

12 adversaries aren't going to be getting the direct testimony

13 until Friday.

14         So people have to be prepared to think about, well,

15 how much time do I need to cross-examine this witness.  And if

16 they may --

17         MR. TSEKERIDES:  Your Honor, I -- I'm sorry, go ahead.

18         THE COURT:  -- I will just say, if they make a good

19 faith effort to do it, and they are unsuccessful, I will make a

20 decision, better or worse, but I -- and that's why I don't want

21 these witnesses lined up to testify at 10 o'clock on the first

22 day.

23         MR. TSEKERIDES:  And, look, for the debtors, we agree

24 completely.  We don't want 20 lawyers cross-examining our

25 witnesses, and I will do what I can, and you know that I will

```
 1    do what I can on Thursday.  We'll set something up, and people
 2    have heard you give the admonition, but I think I want to keep
 3    expectations in line and then ultimately on Friday, when we're
 4    back on with you -- and even then, you make the point, Your
 5    Honor, you're not going to know, we're not going to be done by
 6    11:30 your time with our filings.  You're not going to have all
 7    of the information, but at least maybe by then we can identify
 8    some lead objector, cross-examining attorneys or something
 9    along those lines.
10              THE COURT:  All right.  All right.
11              MR. TSEKERIDES:  So we'll undertake it.  We'll do what
12    we can.
13              THE COURT:  If necessary, I'll use my random generator
14    and select one, but I'd rather that the parties do it
15    consensually.
16              All right, let's move on.
17              MR. TSEKERIDES:  Okay.  So let's see, I just spoke
18    about the TCC, the objectors on the executory contracts.  Well,
19    actually on the hearing, this sort of touches on what you were
20    just talking about, we thought the way it would go with your
21    permission, we would put on our case, and maybe on the 27th,
22    we'll have to talk amongst ourselves internally, but on the
23    27th, maybe that's the presentation of openings but my vision
24    of this was we would put on our case.
25              THE COURT:  And what is your case?  Your case is
```

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 29
of 63

1   written -- in written direct testimony by the witnesses.

2       MR. TSEKERIDES:  Well, but Mr. Karotkin, I am sure, is

3   going to -- well, I shouldn't speak for him.  I'm sure he's

4   going to want to say a few words to --

5       THE COURT:  But let's get real.  Let's pretend for the

6   moment there's no objection to confirmation, none, and this

7   judge says you've got to make your case-in-chief.  Now, in a

8   simple case, I usually take an offer of proof in five minutes

9   from the lawyer, but I would assume in the case of this

10  complexity, you would have one or more witnesses who would take

11  the stand and explain to me why the plan's feasible, why --

12  let's go to the statute --

13      MR. TSEKERIDES:  Right, the 1129 factors, yeah.

14      THE COURT:  -- why it's not likely to result in

15  further relief.  And let's get real, how does the -- I mean,

16  excuse me, how does the plan comply with AB 1054.  I need,

17  whether it's a senior executive, or a third-party financial

18  advisor, I need somebody to -- not my friends the lawyers, who

19  aren't the witnesses.  And so that witness would take the stand

20  and explain, in however he or she chooses, how to make the

21  case.  Well, we have to do it -- we're doing it by direct

22  examination -- I mean, excuse me, direct testimony by

23  declaration.  So I get those declarations on Friday, assuming I

24  read them, and I will read them, but the trial begins

25  essentially with the cross-examination of your witnesses.

1          MR. TSEKERIDES:  That's true.

2          THE COURT:  Which is why I am saying, I don't think

3    realistically it's going to work to tell the adversaries, you

4    start by examining Mr. So-and-So at the opening bell on the

5    first day of trial.

6          MR. TSEKERIDES:  Well --

7          THE COURT:  So let's defer it to how we're going to

8    make it work.  You have to appreciate, I'm sitting here telling

9    you that by 11 o'clock, 11:30 on Friday, I'll be able to figure

10   out what to do the following day, trial day, and I don't even

11   know who your witnesses are.

12         MR. TSEKERIDES:  Well, can I make a suggestion?  I

13   mean, we'll talk more, and I'm not saying we shouldn't have

14   the -- we should still have a conference on Friday, but it may

15   be at the risk of Mr. Karotkin angry at me, it may be that we

16   have a follow-up on the 26th, which would be the Tuesday, when

17   by then, all of the filings would be had, we'd have the

18   exhibits submitted, objections by then.  I mean, under the

19   circumstances and given your guidance, that may make sense to

20   add something on that date too, Your Honor.

21         THE COURT:  Well, another thought is to cancel the

22   hearing this Friday and have that hearing on the following

23   Tuesday or Wednesday.  Again, there's nothing magic about

24   starting the trial on the day we expected to because of the

25   circumstances we're all dealing with.  I'm open to it, and if

1    it would be easier to move this next scheduling from this

2    Friday to the following Tuesday, I'm okay.  I'm willing to put

3    it on a holiday, if we have to also, because we're not going to

4    any Memorial Day Indianapolis 500, but let's keep open -- let's

5    decide that later in the hearing today.

6         MR. TSEKERIDES:  Okay.  I mean, those were the issues

7    that I had wanted to address with you, I think, was the

8    declarations that we didn't see, other than the debtors and the

9    possibility of a TCC witness, any other declarant testimony

10   witnesses.  I wanted to talk about the executory contracts, and

11   we did, and I wanted to talk about whether we needed to have

12   another hearing date, and some process around that.  I think

13   we'll still have the Zoom, your invitation for me to set

14   something up, if for no other reason than just to get a sense

15   of what people are thinking.  I don't think anything real

16   concrete is going to come out of that, but I think it would be

17   helpful to hear what these folks are thinking about.

18        THE COURT:  Be positive.  Be half-full, maybe some

19   concrete results will come out and we'll be more efficient on

20   this.

21        MR. TSEKERIDES:  I'll keep an open mind.

22        THE COURT:  Let me go to the other parties who have

23   been waiting.

24        Mr. Zipes, I'm going to call on you first because I

25   don't really know what the U.S. Trustee wanted to do, other

 1    than -- I mean, I know what you've -- you made your argument in

 2    the opposition and I will reflect on that and you'll have an

 3    opportunity to argue it in appropriate time, but you may not

 4    want to add anything more today, but tell me if there's

 5    anything you want to raise.

 6              MR. ZIPES:  Your Honor, good morning.  Greg Zipes with

 7    the U.S. Trustee's Office.

 8              And you're correct that our issues are legal in

 9    nature.  And as to today's hearing, you wanted a discussion

10    about whether the parties need witnesses or further briefing.

11    I think from the U.S. Trustee's point of view, we don't need

12    any direct witnesses, and we wouldn't be calling witnesses, but

13    we would just want to reserve our right to cross any witnesses,

14    addressing our specific issues, which are releases, and

15    exculpations, and I actually can't think of -- as I sit here, I

16    can't think of a reason why we would need to cross-examine --

17              THE COURT:  Yeah, I mean, those sound like legal

18    arguments.

19              MR. ZIPES:  Yes.

20              THE COURT:  And again, this is like a real trial, if

21    you haven't raised the issue, you don't get to cross-examine

22    just for the fun of it.  If there's something --

23              MR. ZIPES:  Right.

24              THE COURT:  -- you wish to contest that is part of the

25    witness' testimony, that's what you'll do.  Okay, let's leave

1 | it at that.

2 | MR. ZIPES: And --

3 | THE COURT: Mr. Julian and Ms. Green, up to you.

4 | You're next. We got to unmute you. There you go.

5 | MR. JULIAN: Good morning, Your Honor. Robert Julian

6 | of Baker Hostettler for the TCC.

7 | We strongly encourage the Court and the parties to

8 | have a status conference either on next Monday or Tuesday and

9 | not Friday. That will give us a chance to look at the debtors'

10 | declarations filed on Friday.

11 | I also think it's very important that the parties take

12 | up your idea of the meet and confer, so that the debtors'

13 | counsel and we can listen to the folks who want to cross-

14 | examine the debtors' witnesses, so that we could streamline the

15 | hearing more. That will be very important.

16 | On our objection itself, Your Honor, we are in

17 | mediation. I am hopeful of either resolving all those issues,

18 | or eliminating them down to the most narrow possible, and we

19 | will discuss with the debtors' counsel, Mr. Tsekerides, a good

20 | way to conduct cross-examination if it comes to that.

21 | THE COURT: Okay. Thank you.

22 | Ms. Green, do you want to add anything to that?

23 | You're muted.

24 | MS. GREEN: No, Your Honor.

25 | THE COURT: Okay.

 1          MS. GREEN:  Sorry.

 2          THE COURT:  It's all right.  Mr. Bray?

 3          MR. BRAY:  Good morning, Your Honor.  Gregory Bray,

 4   Milbank, LLP, counsel for the committee.

 5          Our issues are legal as well.  I don't expect we will

 6   have any cross-examination of a witness unless somehow they

 7   weighed into issues that we cover in our pleading, but that

 8   would surprise me.  And we're also happy to try and have a

 9   conference with the debtors prior to confirmation and iron out

10   as many of the issues as we can.  Several of them may already

11   be ironed out.  We just haven't seen a revised plan and we'll

12   ask the debtors about that and try and be as efficient in our

13   presentation as we can.

14          THE COURT:  Okay.  Well, again, I hope I didn't

15   overstate what I had in mind when I asked Mr. Tsekerides to

16   host a meet and confer.  It was really for the narrow issue of

17   being efficient in terms of how cross-examination is going to

18   go as to witnesses.  So if your committee or anybody else isn't

19   interested in cross-examining any particular witness, end of

20   subject.  You don't even have to meet and confer about it.

21          And the way the briefing was teed up, the objectors

22   have briefed it, you did, the TCC did, many, many players did,

23   and that's fine, and I appreciate that.  And my instructions

24   onto Mr. Tsekerides and Mr. Karotkin was just to make sure

25   their responses don't repeat themselves but be more efficient.

1          So let's do this, I'm --

2          MR. BRAY:  Your Honor, I'm sorry, I should probably

3    caveat my response with this.  We haven't seen the declarations

4    yet or the affirmative case the debtor is putting on.  I don't

5    envision us trying to impede that case at all, but as we're all

6    fond of doing in this case, I do need to hedge or reserve a

7    little bit to the extent that something comes up in the case

8    that we didn't foresee.  I think that's unlikely, but I do have

9    to put that asterisk out there.

10          THE COURT:  You'll recall earlier in this case I

11   complimented a number of you for being the masters of reserve

12   positions and I, in my next life, I'm going to remember to do

13   that whenever I make -- take any position on any subject, I

14   will make sure that I reserve my position --

15          MR. KAROTKIN:  Your Honor?

16          THE COURT:  Yes, sir.

17          MR. KAROTKIN:  Could I just make one quick remark?

18          THE COURT:  Yes, sir, Mr. Karotkin.  Just state -- you

19   can state your name for the audio.

20          MR. KAROTKIN:  Stephen Karotkin, Weil, Gotshal &

21   Manges for the debtors.

22          I would -- I think it makes sense to keep the 11:30

23   hearing for Friday.  I don't think we should cancel it today.

24   It can always be cancelled later in the week, but I think

25   you're already seeing from the presentations and the remarks

1  made today that the extent of cross-examination, and the extent
2  of actually presenting witnesses is going to be rather limited.
3  And maybe I'm overly optimistic, but I think that by the time
4  we get to the end of the week, or early next week, a lot of the
5  objections will be very limited.  Many will be resolved, I
6  believe, and most of them will be related to legal issues, and
7  I think you've already seen this.
8          So I would ask that you keep the 11:30 hearing on
9  Friday.  We can always cancel it on Thursday or Friday morning,
10 if need be, but let's see where we are.  There's no harm in
11 keeping the hearing.
12         THE COURT:  Well, okay.  Then let me respond by saying
13 this.  Is there any way that the witness' declarations can be
14 filed before that hearing?
15         MR. KAROTKIN:  I can't commit to that now.  As you
16 know, Your Honor, there is a mountain of paper that we received
17 on Friday, and we need to respond to that.
18         THE COURT:  I know about it.
19         MR. KAROTKIN:  Yeah.
20         THE COURT:  And I -- no, you misunderstand.  I
21 didn't -- I'm almost willing to let you respond to the legal
22 arguments on a more lenient schedule if you can tell me -- when
23 can you tell me who your witnesses are going to be?
24         So let's go back to the pre-COVID days.  If we were
25 having the trial, who would be coming to court with you on the

1 | morning of the trial?

2 | MR. KAROTKIN: But sitting here to --

3 | THE COURT: So what I'm going to say is can you, at
4 | least, identify the witnesses who make your case-in-chief, and
5 | if you can't have their declarations on file, I -- before the
6 | hearing on Friday, can you file a brief statement of who they
7 | are and what they will testify about?

8 | MR. KAROTKIN: I'm sure -- I'll let Mr. Tsekerides
9 | overrule me. I'm sure we could file a short statement as to
10 | who they are and the subject matter of their declaration.

11 | THE COURT: Mr. Tsekerides, your partner just said you
12 | could do that.

13 | MR. TSEKERIDES: Yes, we can provide an identity and a
14 | very brief summary of the subject matter --

15 | THE COURT: Yes. I --

16 | MR. TSEKERIDES: -- for that -- before that
17 | conference.

18 | THE COURT: My standard trial scheduling order says
19 | that when you identify your witnesses, you identify them by
20 | name, and you give a brief summary or statement of what they're
21 | going to talk about. So if you say Mr. So-and-so is going to
22 | talk about the feasibility of the public -- whatever, the
23 | rights offering or the whatchamacallit, then that's what you
24 | do.

25 | Let's do this thing, Ms. Parada, let's let Ms. Greene,

1    and Mr. Zipes and Mr. Bray exit the courtroom -- the panel and
2    then that will give us an opportunity to find out who wishes to
3    come in and be heard on these narrow subjects.

4         So those three of you, and nothing personal, I'm going
5    to move you to the back room.  So Mr. Tsekerides and Mr.
6    Karotkin, I will look forward to something filed before Friday
7    morning, 11:30, that is a summary of your anticipated
8    witnesses, and I agree with you if it makes sense to reschedule
9    or defer the scheduling, that's fine.

10        I also invite you, if you want, a little more time to
11   file your legal arguments in response.  There's no need to rush
12   to do it.  I'll be honest with you; those are not my first
13   order of business on the weekend to read if I should be looking
14   at declarations of experts.  And it may well be that we will
15   move the status conference away from Friday out to Monday or
16   Tuesday, and just for now, I'm still of the mind that I don't
17   know for sure that the trial's going to start on schedule,
18   because not for any other reason that I don't quite know what
19   the trial's going to be.

20        Okay, one second.  Let me just look at a note that's
21   coming in to me.  Oh, okay.  All right.

22        So I'm going to ask for participants -- I'm sorry,
23   attendees to raise your hand on the screen if you wish to be
24   heard on the scheduling matters we've talked about.  I do not
25   want, and I will not take time, and I will remove you from the

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 39
of 63

 1   courtroom if we end up with people making arguments about why

 2   the plan shouldn't be approved or why the voting wasn't to your

 3   satisfaction.

 4          So the only invitation for people in the room is to

 5   comment on the scheduling that I've just discussed with these

 6   principal counsel.

 7          Ms. Parada by my reading, I don't see any hands going

 8   up.  Do you see any going up?

 9          THE COURT REPORTER:  Yes, Your Honor.  Mr. Andrew

10   Silfen would like to be heard, and Tom Tosdal, and Mr. Michael

11   Etkin.

12          THE COURT:  Okay.

13          THE COURT REPORTER:  Michael Neumeister.

14          THE COURT:  I didn't -- for some reason, I thought I

15   was going to get a hand up on the screen also.  One second.

16          Okay, yes, I see now.  All right.

17          Mr. Silwho (ph.), would you bring Mr. Silfen and Mr.

18   Tosdal into the room first, please.

19          THE COURT REPORTER:  Yes, Your Honor.  One moment.

20          THE COURT:  And after that, then bring Mr. Etkin and

21   Mr. Neumeister.

22          THE COURT REPORTER:  Mr. Silfen is on; his video is

23   not.

24          THE COURT:  All right.

25          THE COURT REPORTER:  Oh, there he is.

1           THE COURT:  Now, his video's on.

2           THE COURT REPORTER:  Mr. Tosdal is on.  His -- there

3   he is.

4           THE COURT:  All right.  I'm going to bring the other

5   two in.  Did you get the other names, Ms. Parada?

6           THE COURT REPORTER:  I will do so right now.

7           THE COURT:  Thank you.

8      (Pause.)

9           THE COURT:  Mr. Silfen, can you hear me?

10          MR. SILFEN:  Yes, Your Honor.

11          THE COURT:  Mr. Tosdal, can you hear me?

12          MR. TOSDAL:  Yes, sir.

13          THE COURT:  Okay.  Let's get the other two.

14          THE COURT REPORTER:  Mr. Etkin's on mute.

15          THE COURT:  Okay.  Mr. Etkin, unmute yourself if you

16  want to be heard.

17          THE COURT REPORTER:  And Mr. Neumeister's audio is on

18  mute.

19          THE COURT:  Okay.  Mr. Etkin, unmute yourself please.

20  Let's go with you, Mr. Silfen, first.

21          MR. SILFEN:  Good morning, Your Honor.  Andrew Silfen

22  with Arent Fox.  We represent BOKF as indentured trustee for

23  the 17.5 billion dollars of obligations under twenty-nine

24  notes, and three indentures.

25          Our objection is specific and legal in nature, and

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 41
of 63

 1   we're hopeful that the debtors will reach out to us and resolve
 2   it.  In the event that we don't resolve it, I don't know what
 3   the response of the debtors are going to be, so I just need to
 4   reserve our rights.  I think it's just going to be legal
 5   arguments if we cannot resolve it but depending on what they
 6   advance and their reply may dictate that I may need to cross-
 7   examine, although it's highly unlikely.

 8           Our client, BOKF is working with the company, as we
 9   are, as well, on documents necessary for emergence and the
10   effectiveness of the plan.  So everything is very cooperative,
11   and it's unfortunate that we had to lodge an objection, but
12   hopefully, we can resolve it.

13           THE COURT:  Okay.  Mr. Silfen, I don't mind your
14   response, but I don't want to -- I don't want to invite other
15   lawyers to make the same response.  It was unnecessary.  It's
16   not a scheduling issue, though, your -- everybody's position is
17   reserved and waived, but --

18           MR. SILFEN:  Right.  The other issues was just
19   reserving our rights --

20           THE COURT:  What I'm trying to say is everyone's
21   rights are preserved.  You don't need to come into the video
22   and say you want to reserve your rights.

23           I don't mind that you want to reserve them, I just
24   can't take the time to have dozens of other attorneys do it.
25   So --

1          MR. SILFEN:  Thank you, Your Honor, and I apologize.

2          THE COURT:  Mr. Tosdal?

3          MR. TOSDAL:  Yes, Your Honor.  Good morning

4     Tom Tosdal for Patricia Garrison.

5          At what point in this process will you be discussing a

6     protocol for a witness examination by video in terms of

7     communication with the witnesses, moving of exhibits, and so

8     forth?

9          THE COURT:  Isn't that what I just -- isn't that I

10    just spent the last hour discussing with these counsel?

11         MR. TOSDAL:  No, sir.  In terms of you want exhibits

12    in hard copy, or do you want them filed electronically?  Those

13    kinds of nuts and bolts that'll make things go easier.

14         THE COURT:  You were supposed to have filed your

15    exhibits by now.

16         MR. TOSDAL:  I did.

17         THE COURT:  Well, then that's all you have to do.

18         MR. TOSDAL:  All right.  And then will there be an

19    order from the Court --

20         THE COURT:  Yeah, wait, wait, wait, Mr. Tosdal, that's

21    all you have to do about exhibits.  If you haven't identified a

22    witness, so you're going to meet and confer with Mr. Tsekerides

23    in the next couple of days if you wish to examine his

24    witnesses.

25         Now, I understand you don't know who his witnesses are

1  yet, and that's why I just had this conversation with Mr.
2  Karotkin.
3        When the debtors tell us who their witnesses are, you
4  should express your view if you want to examine by cross their
5  witnesses, and that's what we're trying to do.  That's what I
6  hope to do at the conference on Friday or, if necessary, next
7  Tuesday.
8        MR. TOSDAL:  Yes, Your Honor.  I listened very
9  carefully and understood everything that was said.  My question
10  is different.
11        THE COURT:  Okay.
12        MR. TOSDAL:  That is, in terms of protocol for a video
13  examination of a witness, will there be an order from the Court
14  that during the examination of a witness there be no
15  communication between the witness and that witness' attorney or
16  any other representative?  Meaning are we going to have the
17  testimony of the witness or somebody else?
18        THE COURT:  Well, Mr. Tosdal, I understand you
19  probably have more experience with video testimony of witnesses
20  than I do, but as far as I know, none of these lawyers are
21  going to be in the same room with their witnesses, and if you
22  need a formal protocol, I guess that should be discussed with
23  Mr. Tsekerides.  I, for one, would not have -- would not
24  suggest, for example, that you would be taking coaching for a
25  witness who was in the next -- off the camera with you, and I'm

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 44
of 63

1    presuming the same is true with them.

2            So we don't have a formal protocol because we're so

3    new at doing this.  And so to the extent that you believe a

4    protocol would be appropriate, please raise it with Mr.

5    Tsekerides in the next day or two when he invites you to

6    participate in a meeting.  That's the best I can do for you at

7    this point.

8            So --

9            MR. TOSDAL:  That was all I wanted to know, Your

10   Honor.  Thank you, very much.

11           THE COURT:  Okay.  But I'll add one more thought to

12   it.  If Mr. Tsekerides or Mr. Karotkin say we're going to call

13   Mr. X and you want to cross-examine Mr. X, then you discuss it

14   with them, and if you're the only one that wants to cross-

15   examine X that might be all you need to do.  If five other

16   lawyers want to cross-examine Mr. X I might ask you six lawyers

17   to figure out a way to be more efficient, and we'll figure out

18   a way to accommodate you; that's all.  Okay?

19           MR. TOSDAL:  Understood.

20           THE COURT:  Okay.  Thank you, Mr. Tosdal.

21           And Ms. Parada, we're going to call on the other two

22   lawyers, but you can let Mr. Silfen and Mr. Tosdal go back to

23   the attendance category.

24           Mr. Etkin, you're next.

25           MR. ETKIN:  Thank you, Your Honor.

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 45
of 63

1      Very briefly, I just wanted to drill down on a couple

2  of matters that were mentioned from a timing perspective and

3  scheduling perspective.

4      There was discussion of a revised plan, and there was

5  mention of a proposed confirmation order.  I just wanted to

6  inquire as to when they will be filed so we have an idea as to

7  how much time we'll have to take a look at those documents

8  before the confirmation hearing begins.

9      THE COURT:  Well, I'll answer -- I'll let them answer

10  that, but let me assure you that there's going to be plenty of

11  time for proposed orders to be reviewed, and this gets back to

12  my point that there has to be an opportunity for you, and

13  everyone else, to look at what the debtors' presenting, for me

14  to look at what the debtors' presenting, and then to schedule a

15  time for people to be heard on what they think is the right --

16  whatever is the outcome.

17      Now, Mr. Karotkin, can you -- or Mr. Tsekerides, one

18  of you answer Mr. Etkin's specific question about revised plan

19  and proposed confirmation order?

20      MR. KAROTKIN:  Yes, we expect that -- our current

21  expectation is a revised plan that will address certain of the

22  objections and to clarify things, will be filed, hopefully, on

23  Friday, along with the proposed confirmation.

24      THE COURT:  Okay.  Mr. Etkin, that's your answer.

25      MR. ETKIN:  Thank you.  Thank you, Mr. Karotkin.

1  Appreciate it.

2          THE COURT:  Okay.  Thank you.

3          MR. ETKIN:  Thank you.

4          MR. KAROTKIN:  My pleasure.

5          THE COURT:  Okay.  Mr. Neumeister?

6          MR. NEUMEISTER:  Your Honor, and I apologize, I'm was

7  having some technical issues before.  But Mike Neumeister,

8  Gibson, Dunn & Crutcher on behalf of the ad hoc committee of

9  trade creditors.

10          And I simply wanted to raise the issue that we did

11  file an objection.  It is legal issues.  I don't -- we don't

12  intend to cross-examine any witnesses.  During the presentation

13  before this, I didn't hear any discussion of kind of when and

14  how we wanted to address those pure legal issues.  Did they --

15          THE COURT:  Because you've already raised them, but

16  your principal issue is the post-petition interest issue, isn't

17  it?

18          MR. NEUMEISTER:  That's one of our issues.  We made

19  clear in our objection we don't intend to relitigate your

20  ruling from December.  That is not what we intend to raise for

21  confirmation.  We did raise a handful of other issues.  We're

22  happy to discuss those issues with the debtors prior to

23  confirmation, but we just wanted to raise the -- raise our

24  right and reserve our rights to be able to address those pure

25  legal issues at confirmation.

1          THE COURT:  Okay.  And as I said to the other counsel,
2    nobody has to preserve rights today.  Your rights are
3    preserved.  No rights are being forfeited.  So please don't
4    feel the need to do that.
5          MR. NEUMEISTER:  Thank you, Your Honor.
6          THE COURT:  You'll have an opportunity to argue when
7    the briefs -- when the confirmation evidence is in, the matter
8    will be submitted -- excuse me.  There'll be an invitation for
9    an argument.
10          All right, Ms. Parada, I don't know if we have any
11    more hands up.
12          MR. NEUMEISTER:  Thank you.
13          THE COURT:  Anyone else should be heard?  Have any
14    other hands gone up?
15          THE COURT REPORTER:  Ms. Winthrop wanted to be heard,
16    Your Honor.
17          THE COURT:  Okay.  And I see Mr. Scarpulla has a hand
18    up also.  Did you -- so let's -- let's ask -- let's take Mr.
19    Etkin and Mr. Neumeister out of the room, and Ms. Winthrop in.
20          Mr. Julian, if you -- would you like to leave the
21    room?  Well, you're muted now.  Put up your hand if -- your
22    real hand if you want to leave the room.  Okay.
23          Ms. Winthrop, good morning.
24          MS. WINTHROP:  Good morning, Your Honor.  Rebecca
25    Winthrop on behalf of Norton Rose Fulbright.

 1              I actually withdrew my hand, so you do not, in light
 2      of the comments of the Court, we do not need to speak at this
 3      time.
 4              THE COURT:  Okay.  Thank you, Ms. Winthrop.
 5              Mr. Scarpulla, are you -- do you desire to be heard?
 6      Mr. Scarpulla, are you on the call?
 7              THE COURT REPORTER:  Yes, Your Honor.  One moment.
 8      I'll bring him into the courtroom.
 9              THE COURT:  Okay.
10              THE COURT REPORTER:  Mr. Scarpulla is joining.
11              THE COURT:  Mr. Scarpulla, you need to unmute yourself
12      so we can hear you.  Do you know how to do that?  Okay.  There
13      you are.
14              MR. SCARPULLA:  I did, Your Honor.  Thank you very
15      much.
16              THE COURT:  Mr. Scarpulla, please state --
17              MR. SCARPULLA:  I just had a very quick question about
18      scheduling.
19              THE COURT:  State your name for the record, please.
20              MR. SCARPULLA:  I'm sorry.  Francis Scarpulla on
21      behalf of GER and a number of other fire victims.  I just have
22      a quick question.
23              Your Honor's order that was filed on the 13th of May
24      has dates for everything except dates that everybody has to
25      identify witnesses.  So when is that date?

1        THE COURT:  I thought that was already done.  Isn't

2    that something we've already done, Mr. Tsekerides?

3        MR. TSEKERIDES:  That's on May 22nd.

4        THE COURT:  Yeah, May 22nd.  It's in the order.

5        MR. SCARPULLA:  I'm sorry.  I didn't see that.  I

6    thought it was --

7        THE COURT:  Well, it says --

8        MR. SCARPULLA:  The 18th file the -- I think that's

9    for the debtors -- I believe that's for the debtors.

10       MR. TSEKERIDES:  It says, "All parties that intend to

11   participate" -- this is Ted Tsekerides for the debtors -- May

12   22nd.  "All parties that intend to participate at the

13   confirmation hearing must provide the court with the names and

14   email addresses of all speaking attorneys and witnesses."

15       MR. SCARPULLA:  Okay.  Fine.

16       THE COURT:  Well, but Mr. Scarpulla, what --

17       MR. SCARPULLA:  Thank you.

18       THE COURT:  -- who do you -- what kind of witness and

19   who are -- let me rephrase that -- who do you intend to call as

20   a witness and for what purpose?

21       MR. SCARPULLA:  Oh, no, we've already -- we've already

22   put in the declarations and didn't intend to call anybody other

23   than -- that were in the declarations, and we will so state.

24   But I was just curious about other counsel who may identify

25   witnesses that did not submit declarations.

Case: 19-30088   Doc# 7445   Filed: 05/21/20   Entered: 05/21/20 07:19:13   Page 50
of 63

1          THE COURT:  Okay.  Mr. Scarpulla, almost without

2    exception, this is going to be an argument about legal issues.

3    The debtors will be filing their witnesses to carry their case-

4    in-chief.

5          To the extent that there is a belief that I -- you

6    have a witness that makes the case, you can do it.  I don't,

7    frankly, don't know, in my experience, why you would have an

8    affirmative witness.  You have a right to cross-examine their

9    witness.

10          But the point is you said what you said and --

11          MR. SCARPULLA:  Right.

12          THE COURT:  -- we know what's been said from the

13    debtors.  So there's nothing more to worry about.

14          MR. SCARPULLA:  Nothing.

15          THE COURT:  Okay.

16          MR. SCARPULLA:  Thank you.

17          THE COURT:  All right.  With that, I'm going to

18    conclude the hearing.  Thank you all for your time.  I will

19    stick with the 11:30 Friday deadline.  If it becomes necessary

20    to move it, I may move it to Tuesday.

21          Again, if this were a real trial in the traditional

22    way, I'd say I'll see you all in court next Wednesday morning,

23    but I'll repeat something I said at the start, I don't know

24    that the trial will start on schedule because I don't know what

25    the schedule involves, and that's why I'm encouraging Mr.

1    Tsekerides to try to get everyone to the discussion in the next

2    day or two.

3              For those of you counsel who are taking a position

4    adverse to the debtors, I urge you to participate in a

5    conference with Mr. Tsekerides whether he does it by telephone

6    conference or video, it's his business.  I won't be there.  And

7    make a good-faith effort to try to facilitate what we're all

8    struggling with.

9              With that, I wish you good health, and thank you for

10   your time.

11             MR. KAROTKIN:  Thank you, Your Honor.

12             THE COURT:  I thank my court staff, Ms. Parada, Ms.

13   Torada Sanda (ph.), Ms. Thomas, for all of your help today.

14             THE COURT REPORTER:  Thank you, Your Honor.

15        (Whereupon these proceedings were concluded)

16

17

18

19

20

21

22

23

24

25

1                     C E R T I F I C A T I O N

2

3    I, Colin Richilano, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ COLIN RICHILANO

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  May 20, 2020

16

17

18

19

20

21

22

23

24

25

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

**A**

**AB (1)**
30:16
**ability (2)**
5:8;27:7
**able (7)**
11:5;13:10,12;
14:12,19;31:9;47:24
**above (1)**
16:22
**Abrams (1)**
13:23
**absolutely (1)**
10:12
**absorb (2)**
11:5;25:4
**accept (1)**
16:10
**acceptance (1)**
16:8
**accommodate (1)**
45:18
**accordance (1)**
18:23
**acknowledge (1)**
20:9
**activity (1)**
8:12
**actually (6)**
10:16;20:15;
29:19;33:15;37:2;
49:1
**ad (1)**
47:8
**add (5)**
11:22;31:20;33:4;
34:22;45:11
**addition (2)**
17:14;18:2
**additional (1)**
8:5
**address (14)**
12:3;15:25;18:4,
21;19:3,14,15,19,22;
22:16;32:7;46:21;
47:14,24
**addresses (1)**
50:14
**addressing (1)**
33:14
**adequacy (1)**
17:10
**admonition (1)**
29:2
**adults (1)**
27:10
**advance (1)**
42:6
**adversaries (3)**
28:11,12;31:3
**adverse (2)**

**13:25;52:4**
**advised (2)**
9:11;16:17
**advisor (1)**
30:18
**affect (1)**
9:2
**affirmative (4)**
18:25;24:5;36:4;
51:8
**afternoon (1)**
4:14
**Again (15)**
5:13;7:1,15,23;
18:16;20:6;21:14,20,
22;22:4;24:24;
31:23;33:20;35:14;
51:21
**against (1)**
7:25
**agencies (1)**
18:8
**agenda (2)**
5:15;8:1
**agree (4)**
17:19;23:8;28:23;
39:8
**ahead (1)**
28:17
**almost (2)**
37:21;51:1
**along (2)**
29:9;46:23
**although (3)**
8:17,20;42:7
**always (2)**
36:24;37:9
**amongst (1)**
29:22
**amount (2)**
11:11;23:3
**amounts (4)**
11:19;22:14,18,18
**Andrew (2)**
40:9;41:21
**angry (1)**
31:15
**announced (1)**
16:7
**anticipate (5)**
8:1;19:13;23:4,14,
15
**anticipated (1)**
39:7
**anticipates (1)**
12:15
**apologize (2)**
43:1;47:6
**appeal (1)**
13:2
**appearances (2)**
5:17;7:6
**appearing (1)**

**5:22**
**appreciate (5)**
24:25;26:6;31:8;
35:23;47:1
**appreciated (1)**
16:6
**appropriate (4)**
14:12;19:19;33:3;
45:4
**approved (1)**
40:2
**areas (1)**
15:10
**Arent (1)**
41:22
**argue (3)**
7:25;33:3;48:6
**argued (1)**
22:24
**argument (6)**
13:1,2;23:13;33:1;
48:9;51:2
**arguments (7)**
25:20;27:9;33:18;
37:22;39:11;40:1;
42:5
**around (1)**
32:12
**assignments (3)**
8:22;16:5;28:3
**assume (2)**
17:10;30:9
**assuming (1)**
30:23
**assure (2)**
20:14;46:10
**asterisk (1)**
36:9
**attaching (1)**
21:9
**attempt (4)**
14:3;18:4;25:12;
27:25
**attendance (1)**
45:23
**attended (1)**
11:21
**attendee (2)**
5:20;7:12
**attendees (2)**
5:13;39:23
**attending (1)**
7:24
**attorney (1)**
44:15
**attorneys (5)**
4:9;25:13;29:8;
42:24;50:14
**audio (2)**
36:19;41:17
**authority (1)**
27:25
**available (5)**

**11:8;12:1;24:3,8;**
**25:14**
**avoid (2)**
20:4;21:19
**aware (2)**
8:16,16
**away (1)**
39:15

**B**

**back (16)**
5:12;7:10;10:2,21;
15:12;22:11;24:24;
25:4,11,17;28:6;
29:4;37:24;39:5;
45:22;46:11
**backburner (1)**
17:20
**Baker (1)**
34:6
**BakerHostetler (2)**
6:17,20
**ball (1)**
22:8
**Bankruptcy (4)**
4:4;10:5;18:11;
19:1
**base (1)**
26:18
**based (5)**
8:24;10:9;11:2,24;
15:8
**beard (1)**
6:11
**becomes (1)**
51:19
**beginning (1)**
25:3
**begins (2)**
30:24;46:8
**behalf (4)**
6:20;47:8;48:25;
49:21
**belief (1)**
51:5
**bell (1)**
31:4
**benefit (3)**
6:24;8:2;23:9
**benefits (1)**
8:2
**best (4)**
13:19;20:16;
27:17;45:6
**better (4)**
7:20;10:14;12:21;
28:20
**billion (1)**
41:23
**bit (3)**
22:11;26:18;36:7
**BOKF (2)**

**41:22;42:8**
**bolts (1)**
43:13
**bone (1)**
22:12
**both (2)**
17:4;18:2
**box (1)**
7:20
**Bray (8)**
6:12,13,13;35:2,3,
3;36:2;39:1
**break (2)**
11:24;15:3
**breakfast (1)**
15:2
**brief (9)**
12:24;18:24;
20:11;22:24;23:1;
28:10;38:6,14,20
**briefed (1)**
35:22
**briefing (2)**
33:10;35:21
**briefly (3)**
9:9;11:4;46:1
**briefs (3)**
13:3;21:6;48:7
**bring (3)**
22:5;40:17,20;
41:4;49:8
**broad (2)**
12:13,19
**burden (1)**
21:21
**burner (1)**
11:21
**burners (1)**
11:20
**business (2)**
39:13;52:6

**C**

**CALIFORNIA (3)**
4:1,5;15:9
**Call (15)**
4:3;5:2;7:11;13:6;
17:5,5;23:19;24:14;
26:15;32:24;45:12,
21;49:6;50:19,22
**calling (1)**
33:12
**came (1)**
24:10,22
**camera (2)**
5:11;44:25
**Can (51)**
4:7,15,16;5:7,13,
21;7:9,9,10;9:8,11;
12:3;14:8,16;17:24;
20:3;22:3,5,22;
23:24;24:12;25:2,

Case: 19-30088    Doc# 7445    Filed: 05/21/20    Entered: 05/21/20 07:19:13    Page 54
of 63

14;26:15,16;27:5;
28:25;29:1,7,12;
31:12;34:13;35:10,
13;36:19,24;37:9,13,
22,23;38:3,6,13;
41:9,11;42:12;45:6,
22;46:17;49:12;51:6
**cancel (3)**
31:21;36:23;37:9
**cancelled (1)**
36:24
**carefully (2)**
14:16;44:9
**carry (1)**
51:3
**case (17)**
9:21;18:25;23:13;
24:5;29:1,21,24,25,25;
30:8,9,21;36:4,5,6,7,
10;51:6
**case- (1)**
51:3
**case-in-chief (3)**
14:2;30:7;38:4
**cases (1)**
7:16
**category (1)**
45:23
**caveat (2)**
22:21;36:3
**certain (2)**
19:4;46:21
**certainly (2)**
13:15;20:9;22:6
**certification (1)**
16:17
**challenges (1)**
8:18
**chance (1)**
34:9
**change (1)**
16:16
**charge (1)**
27:4
**chart (3)**
17:21;21:9,10
**chief (1)**
9:21
**chooses (1)**
30:20
**circumstances (2)**
31:19,25
**claimants (1)**
19:21
**claims (2)**
16:12;22:14
**clarify (1)**
46:22
**class (3)**
16:11,11,21
**classes (2)**
9:6;16:10
**classification (1)**

12:20
**clear (2)**
22:17;47:19
**clearly (1)**
26:21
**Clerk (1)**
16:16
**client (1)**
42:8
**clients' (1)**
9:2
**close (3)**
17:5,5;24:11
**clue (2)**
21:3;28:8
**coaching (1)**
44:24
**Code (1)**
19:1
**colleagues (1)**
27:17
**collect (1)**
12:12
**colloquy (1)**
7:10
**coming (9)**
8:4;10:10,22;11:7;
13:13;15:8,12;
37:25;39:21
**comment (3)**
14:23,23;40:5
**comments (3)**
6:25;15:16;49:2
**commercial (1)**
13:12
**commit (1)**
37:15
**commitment (1)**
20:24
**committee (4)**
6:14;35:4,18;47:8
**common (1)**
16:13
**communication (2)**
43:7;44:15
**company (1)**
42:8
**complaining (2)**
17:7,7
**completely (1)**
28:24
**complexity (1)**
30:10
**complicated (1)**
10:6
**complimented (1)**
36:11
**comply (1)**
30:16
**conclude (1)**
51:18
**concluded (1)**
52:15

concrete (2)
32:16,19
**condemnation (1)**
13:10
**conduct (1)**
34:20
**confer (7)**
13:22;14:7;25:12;
34:12;35:16,20;
43:22
**conference (13)**
10:2,11;13:21,22;
15:6;31:14;34:8;
35:9;38:17;39:15;
44:6;52:5,6
**conferences (1)**
16:19
**confirmation (30)**
8:3,13,18;9:1,17;
10:3,18;11:24;
15:14;17:15,23;
19:8;22:15,20,25;
23:4,6;24:3,11;30:6;
35:9;46:5,8,19,23;
47:21,23,25;48:7;
50:13
**confirmed (2)**
23:17,17
**connection (1)**
23:16
**consensually (2)**
17:25;29:15
**consider (1)**
23:23
**consistent (1)**
14:20
**contemplating (3)**
19:16,24;21:9
**contest (1)**
33:24
**contract (1)**
22:12
**contracts (6)**
8:16;10:21;11:2;
23:23;29:18;32:10
**contributions (1)**
22:23
**convenience (1)**
15:4
**convenient (1)**
14:15
**conversation (1)**
44:1
**cooperative (2)**
27:16;42:10
**coordinate (1)**
13:25
**cop (1)**
21:22
**copies (2)**
21:5,25
**copy (1)**
43:12

Corporation (2)
4:9;16:12
**counsel (23)**
5:16,18;6:14;7:1;
8:22;9:4,11,15;
10:13,22;11:7,19,23;
15:18;27:9;34:13,
19;35:4;40:6;43:10;
48:1;50:24;52:3
**counsels (1)**
23:14
**count (1)**
17:10
**country (1)**
15:10
**couple (5)**
14:8;24:22;27:8;
43:23;46:1
**course (6)**
11:22;18:6,13;
19:17;24:5;27:15
**Court (157)**
4:3,4,4,5,7,8,12,14,
19;5:1,2,4,6,7,9,14,21,
24,25;6:5,8,10,12,15,
18,21,24;7:11,19;
9:5;10:5;12:4,7,9;
13:9;14:25;15:6,8,
12;16:20,25;17:4;
18:15;19:5,10;20:1,
18,23;21:2,14;22:7;
23:8;24:19;25:6;
26:1,5,8,12;27:8,14;
28:6,18;29:10,13,25;
30:5,14;31:2,7,21;
32:18,22;33:17,20,
24;34:3,7,21,25;
35:2,14;36:10,16,18;
37:12,18,20,25;38:3,
11,15,18;40:9,12,13,
14,19,20,22,24,25;
41:1,2,4,6,7,9,11,13,
14,15,17,19;42:13,
20;43:2,9,14,17,19,
20;44:11,13,18;
45:11,20;46:9,24;
47:2,5,15;48:1,6,13,
15,17;49:2,4,7,9,10,
11,16,19;50:1,4,7,13,
16,18;51:1,12,15,17,
22;52:12,12,14
**courtroom (6)**
4:10;7:8,14;39:1;
40:1;49:8
**cover (2)**
15:19;35:7
**covering (1)**
10:9
**COVID (1)**
10:3
**cozy (1)**
10:4
**creditor (2)**

11:12;13:12
**creditors (2)**
6:14;47:9
**crisis (1)**
10:4
**cross (5)**
14:4;24:4,8;33:13;
45:14
**cross- (4)**
25:2;34:13;42:6;
45:14
**cross-examination (6)**
25:8;30:25;34:20;
35:6,17;37:1
**cross-examine (10)**
25:13;26:22;
28:11,15;33:16,21;
45:13,16;47:12;51:8
**cross-examining (4)**
8:5;28:24;29:8;
35:19
**cruise (1)**
14:18
**Crutcher (1)**
47:8
**cure (12)**
8:15,19,25;11:18,
24,25;17:17,19,22;
22:14,18;23:3
**curious (1)**
50:24
**current (1)**
46:20
**currently (2)**
19:16,24

### D

**damage (1)**
16:12
**dark (1)**
18:16
**date (5)**
10:12;17:24;
31:20;32:12;49:25
**dates (2)**
49:24,24
**day (13)**
15:1;20:3;23:14;
25:8;28:11,22;31:5,
10,10,24;32:4;45:5;
52:2
**days (10)**
8:4,13;10:22;11:6,
7;13:13;14:8;18:6;
37:24;43:23
**deadline (5)**
17:15;18:3,3;
24:20;51:19
**deal (1)**
19:12
**dealing (2)**
10:3;31:25

Case: 19-30088    Doc# 7445    Filed: 05/21/20    Entered: 05/21/20 07:19:13    Page 55
of 63

**debtor (4)**
9:4;11:12;27:2;
36:4
**debtors (27)**
6:4;7:8:16,22;9:5;
12:16;15:24;16:3;
22:10;24:9,17,20;
28:23;32:8;35:9,12;
36:21;42:1,3;44:3;
47:22;50:9,9,11;
51:3,13;52:4
**debtors' (15)**
5:18;8:15,19;9:15;
10:22;11:7,19;14:1;
24:5;34:9,12,14,19;
46:13,14
**December (1)**
47:20
**decide (1)**
32:5
**decision (3)**
13:9;14:12;28:20
**decisions (1)**
13:13
**declarant (1)**
32:9
**declarants (3)**
23:16,20;26:22
**declaration (3)**
24:16;30:23;38:10
**declarations (25)**
9:16,21;10:18,19;
18:25;19:3,9,12;
21:3;24:8;25:1,4;
26:3;9:28:9;30:23;
32:8;34:10;36:3;
37:13;38:5;39:14;
50:22,23,25
**defaults (1)**
8:15
**defer (2)**
31:7;39:9
**deferred (1)**
24:20
**definitions (1)**
20:6
**delta (1)**
11:14
**Dennis (1)**
4:6
**deny (1)**
5:14
**depending (1)**
42:5
**deprive (1)**
28:10
**deputy (1)**
7:14
**designate (1)**
23:12
**designation (1)**
21:16
**desire (1)**

49:5
**details (1)**
18:14
**dictate (1)**
42:6
**different (4)**
20:10;26:4,6;
44:10
**difficult (1)**
13:19
**direct (6)**
25:6;28:12;30:1,
21,22;33:12
**direction (1)**
27:25
**discharge (1)**
12:19
**disclosure (2)**
20:18;21:10
**discriminates (1)**
12:20
**discuss (5)**
14:8;15:7;34:19;
45:13;47:22
**discussed (3)**
28:7;40:5;44:22
**discussing (2)**
43:5,10
**discussion (7)**
12:24;13:14,24;
33:9;46:4;47:13;
52:1
**discussions (2)**
18:7;22:13
**dispute (2)**
11:11,14
**disputes (3)**
17:17,19,22
**District (2)**
4:5;9:5
**divide (1)**
27:9
**docket (5)**
7:24;8:12;9:10;
11:10;21:24
**document (2)**
11:23;22:3
**documents (3)**
23:2;42:9;46:7
**dollars (2)**
11:12;41:23
**domain (1)**
21:15
**done (9)**
8:23;10:23;12:12;
15:14;27:1,9;29:5;
50:1,2
**down (3)**
20:20;34:18;46:1
**dozens (1)**
42:24
**drill (1)**
46:1

**drink (1)**
15:21
**Dunn (1)**
47:8
**during (3)**
10:11;44:14;47:12

**E**

**earlier (3)**
10:2;19:17;36:10
**early (2)**
13:19;37:4
**easier (2)**
32:1;43:13
**easy (4)**
7:5;10:6;20:17;
21:12
**effectiveness (1)**
42:10
**efficiency (2)**
21:19;22:5
**efficient (7)**
13:16;27:23;
32:19;35:12,17,25;
45:17
**effort (4)**
24:15;27:23;
28:19;52:7
**eight (1)**
14:5
**either (4)**
22:13,16;34:8,17
**electronic (1)**
21:24
**electronically (1)**
43:12
**eliminating (1)**
34:18
**Elizabeth (6)**
4:21,23;5:2,6,20;
6:19
**else (5)**
25:20;35:18;
44:17;46:13;48:13
**email (1)**
50:14
**emergence (1)**
42:9
**encourage (1)**
34:7
**encouraging (1)**
51:25
**end (3)**
35:19;37:4;40:1
**engaged (1)**
17:18
**entitled (1)**
23:5
**entity (1)**
23:2
**envision (1)**
36:5

**era (1)**
10:8
**essentially (1)**
30:25
**Etkin (10)**
40:11,20;41:15,
19;45:24,25;46:24,
25;47:3;48:19
**Etkin's (2)**
41:14;46:18
**even (11)**
8:8;17:16;22:19,
22;23:25;24:20;
25:4;28:11;29:4;
31:10;35:20
**event (2)**
18:1;42:2
**everybody (2)**
12:1;49:24
**everybody's (1)**
42:16
**everyone (6)**
4:15;11:9;26:23;
27:6;46:13;52:1
**everyone's (3)**
6:24;15:4;42:20
**evidence (2)**
24:22;48:7
**exactly (2)**
13:8;15:14
**examination (7)**
25:3,15;27:19;
30:22;43:6;44:13,14
**examine (8)**
14:4;27:16;28:2;
34:14;42:7;43:23;
44:4;45:15
**examining (2)**
14:6;31:4
**example (5)**
12:17;13:5,24;
21:18;44:24
**except (2)**
16:21;49:24
**exception (4)**
23:1;24:4,9;51:2
**exculpations (1)**
33:15
**Excuse (7)**
5:19;12:11;14:17;
19:5;30:16,22;48:8
**executive (1)**
30:17
**executory (7)**
8:15;10:21;11:2;
22:12;23:23;29:18;
32:10
**exhibit (1)**
22:1
**exhibits (8)**
21:5,17,23;31:18;
43:7,11,15,21
**exit (1)**

39:1
**expect (5)**
9:20;18:5;26:8;
35:5;46:20
**expectation (5)**
14:10;15:11;
16:20;28:7;46:21
**expectations (1)**
29:3
**expected (2)**
24:2;31:24
**expecting (3)**
4:23;27:15,16
**experience (2)**
44:19;51:7
**experts (1)**
39:14
**explain (2)**
30:11,20
**express (1)**
44:4
**extent (7)**
13:10;24:2;36:7;
37:1,1;45:3;51:5

**F**

**face (1)**
5:11
**facilitate (2)**
7:15;52:7
**facilitates (1)**
5:8
**fact (3)**
15:13;18:15;23:21
**factors (1)**
30:13
**factual (3)**
19:3;23:6;24:2
**faith (1)**
27:23;28:19
**far (1)**
44:20
**fault (1)**
20:22
**feasibility (1)**
38:22
**feasible (2)**
12:21;30:11
**feasibly (1)**
25:11
**feel (1)**
14:24;48:4
**FEMA (1)**
18:8
**few (6)**
8:13,20;9:6,23;
11:6;30:4
**figure (6)**
8:2;25:10;27:17;
31:9;45:17,17
**file (9)**
9:16;10:19;25:1;

Case: 19-30088    Doc# 7445    Filed: 05/21/20    Entered: 05/21/20 07:19:13    Page 56
of 63

38:5,6,9;39:11;
47:11;50:8
**filed (23)**
8:6,24;9:4;10:18;
11:8;13:15,22,24;
16:18;17:15;21:16,
16;23:2,25;24:16;
34:10;37:14;39:6;
43:12,14;46:6,22;
49:23
**filing (5)**
9:17,21;12:16;
18:22;51:3
**filings (3)**
12:15;29:6;31:17
**finally (1)**
13:18
**financial (1)**
30:17
**find (1)**
39:2
**finds (1)**
10:12
**fine (3)**
35:23;39:9;50:15
**fingers (1)**
21:12
**fire (2)**
9:11;49:21
**First (7)**
15:23;28:21;31:5;
32:24;39:12;40:18;
41:20
**fit (1)**
15:17
**five (2)**
30:8;45:15
**folks (4)**
22:13;26:20;
32:17;34:13
**following (6)**
13:11;14:9;25:2;
31:10,22;32:2
**follow-up (2)**
10:11;31:16
**fond (1)**
36:6
**foresee (1)**
36:8
**forfeited (1)**
48:3
**formal (3)**
16:17;44:22;45:2
**format (1)**
15:12
**forth (3)**
7:10;8:25;43:8
**forty (1)**
7:18
**forty-five (1)**
5:12
**forward (2)**
17:23;39:6

**found (1)**
7:19
**four (3)**
14:5;24:7;28:2
**Fox (1)**
41:22
**Francis (1)**
49:20
**FRANCISCO (2)**
4:1;10:5
**frankly (1)**
51:7
**Friday (29)**
10:10;13:11;14:9,
10;19:5;24:7;25:1,
22;26:16;28:7,13;
29:3;30:23;31:9,14,
22;32:2;34:9,10;
36:23;37:9,9,17;
38:6;39:6,15;44:6;
46:23;51:19
**friends (1)**
30:18
**front (1)**
11:20
**front-burner (1)**
12:11
**Fulbright (1)**
48:25
**full (1)**
6:11
**fully (1)**
18:17
**fun (2)**
7:16;33:22
**function (2)**
7:13;10:17
**further (4)**
12:23;13:14;
30:15;33:10
**fuss (1)**
20:10

**G**

**gallery (1)**
7:11
**Garrison (1)**
43:4
**gave (1)**
16:4
**generator (1)**
29:13
**GER (1)**
49:21
**gets (4)**
25:3,11;28:6;
46:11
**Gibson (1)**
47:8
**given (1)**
31:19
**gives (1)**

**11:15**
**glad (1)**
16:4
**goatee (1)**
6:10
**Good (19)**
4:7,14,14;6:13,16,
19,23;23:18;27:23;
28:18;33:6;34:5,19;
35:3;41:21;43:3;
48:23,24;52:9
**good-faith (1)**
52:7
**Gotshal (4)**
6:4,6;16:3;36:20
**great (1)**
9:19
**greater (1)**
17:16
**greatly (1)**
16:5
**Green (17)**
4:19,21,23;5:2,6,6,
10,20,25;6:18,18,19,
20;34:3,22,24;35:1
**Greene (1)**
38:25
**Green's (1)**
5:1
**Greg (1)**
33:6
**Gregory (2)**
6:13;35:3
**guess (2)**
26:14;44:22
**guidance (1)**
31:19
**guy (1)**
28:2
**guys (1)**
26:25

**H**

**habit (1)**
20:5
**half-an-hour (1)**
26:23
**half-full (1)**
32:18
**hand (8)**
5:7;7:14;39:23;
40:15;48:17,21,22;
49:1
**handful (1)**
47:21
**hands (3)**
40:7;48:11,14
**happen (5)**
10:15,17;15:7,10;
25:3
**happy (5)**
18:15;21:7;27:5;

**35:8;47:22**
**hard (3)**
7:4;21:4;43:12
**harm (1)**
37:10
**health (1)**
52:9
**hear (5)**
4:7,15;8:22;9:15,
25;14:10;15:19;
18:15;26:14;28:7;
32:17;41:9,11;
47:13;49:12
**heard (11)**
5:14;7:13;29:2;
39:3,24;40:10;
41:16;46:15;48:13,
15;49:5
**hearing (29)**
10:3,12;13:11;
14:9;15:15;22:20,
25;23:5,7,10,15;
24:4,11;28:1;29:19;
31:22,22;32:5,12;
33:9;34:15;36:23;
37:8,11,14;38:6;
46:8;50:13;51:18
**hearings (2)**
27:1,8
**hedge (1)**
36:6
**help (1)**
52:13
**helpful (3)**
12:9;21:13;32:17
**hey (1)**
26:24
**highly (1)**
42:7
**hoc (1)**
47:8
**holiday (1)**
32:3
**honest (1)**
39:12
**Honor (50)**
4:8,12,17,18,25;
5:5,19;6:13,16,19,
23;12:2;16:1,2;18:2,
7,10;20:15;25:24;
26:11;27:11;28:5,
17;29:5;31:20;33:6;
34:5,16,24;35:3;
36:2,15;37:16;40:9,
19;41:10,21;43:1,3;
44:8;45:10,25;47:6;
48:5,16,24;49:7,14;
52:11,14
**Honorable (1)**
4:6
**Honor's (1)**
49:23
**hope (2)**

**35:14;44:6**
**hopeful (2)**
34:17;42:1
**hopefully (2)**
42:12;46:22
**horribly (1)**
14:14
**host (1)**
35:16
**Hostettler (1)**
34:6
**hour (2)**
27:22;43:10
**hours (6)**
15:1;20:3;27:3,3,
21;28:2

**I**

**idea (2)**
34:12;46:6
**identified (4)**
17:7;23:20;24:7;
43:21
**identify (6)**
29:7;38:4,19,19;
49:25;50:24
**identity (1)**
38:13
**impaired (2)**
9:6;16:10
**impede (1)**
36:5
**impediment (1)**
17:23
**important (3)**
10:14;34:11,15
**importantly (1)**
22:14
**impossible (2)**
10:13;14:21
**inadvertently (1)**
9:14
**in-chief (1)**
51:4
**include (2)**
11:2;18:23
**included (1)**
11:23
**including (2)**
8:25;18:7
**inconvenienced (1)**
14:14
**indemnity (1)**
22:23
**indentured (1)**
41:22
**indentures (1)**
41:24
**Indianapolis (1)**
32:4
**indicate (5)**
16:8,10;17:2,18;

Case: 19-30088    Doc# 7445    Filed: 05/21/20    Entered: 05/21/20 07:19:13    Page 57
of 63

19:15
**indicated (5)**
16:7,19;17:14,17;
19:22
**indication (1)**
16:20
**individually (1)**
19:19
**informal (1)**
14:7
**information (2)**
24:3;29:7
**inquire (1)**
46:6
**instructions (2)**
7:8;35:23
**intend (10)**
8:19;9:16,22;
47:12,19,20;50:10,
12,19,22
**interest (3)**
12:22;13:7;47:16
**interested (1)**
35:19
**internally (1)**
29:22
**into (12)**
4:10;5:12;8:3;
11:25;15:3;18:14;
19:2;22:18;35:7;
40:18;42:21;49:8
**introductions (1)**
20:6
**inverse (1)**
13:9
**invitation (3)**
32:13;40:4;48:8
**invite (7)**
7:1;11:19;13:21;
26:19;27:5;39:10;
42:14
**invited (2)**
4:21;8:9
**invites (1)**
45:5
**involved (2)**
7:21;14:22
**involves (1)**
51:25
**iron (1)**
35:9
**ironed (1)**
35:11
**issue (13)**
10:21;11:25;
12:11;13:10;22:12;
23:3,16;33:21;
35:16;42:16;47:10,
16,16
**issues (21)**
8:14;22:18,24;
23:22;32:6;33:8,14;
34:17;35:5,7,10;

37:6;42:18;47:7,11,
14,18,21,22,25;51:2
**item (2)**
11:14;17:20
**items (1)**
16:1

---

**J**

**joined (1)**
4:13
**joining (1)**
49:10
**judge (4)**
18:11;20:2;27:19;
30:7
**judges (1)**
15:6
**judgment (1)**
20:24
**JULIAN (11)**
4:16,23,25;6:15,
16,16;24:12;34:3,5,
5;48:20

---

**K**

**KAROTKIN (43)**
4:17;5:18;6:2,3,4;
9:7,20;15:17,24;
16:2,2,24;17:2,12;
18:20;19:7,14;20:14,
21;21:1,7;24:6;28:9;
30:2;31:15;35:24;
36:15,17,18,20,20;
37:15,19;38:2,8;
39:6;44:2;45:12;
46:17,20,25;47:4;
52:11
**keep (7)**
11:17;24:21;29:2;
32:4,21;36:22;37:8
**keeping (3)**
7:6;20:16;37:11
**kind (3)**
15:25;47:13;50:18
**kinds (2)**
20:8;43:13

---

**L**

**Laffredi (1)**
6:22
**language (1)**
24:14
**last (8)**
8:13;11:6;13:11;
14:23;15:5;23:19;
24:14;43:10
**later (6)**
15:5;17:18,24;
19:12;32:5;36:24
**lawyer (3)**

22:2;27:20;30:9
**lawyers (19)**
13:1,22;20:1,5,5;
21:15;23:24;25:15;
27:16,19,21;28:1,24;
30:18;42:15;44:20;
45:16,16,22
**lawyers' (1)**
8:2
**lead (1)**
29:8
**learned (1)**
7:16
**least (7)**
11:9;19:2;22:16;
24:19;28:8;29:7;
38:4
**leave (6)**
15:19;25:20;
27:14;33:25;48:20,
22
**left (1)**
9:14
**legal (13)**
13:6;33:8,17;35:5;
37:6,21;39:11;
41:25;42:4;47:11,14,
25;51:2
**lengthy (1)**
18:17
**lenient (1)**
37:22
**lent (2)**
23:21;24:1
**letting (1)**
11:16
**level (1)**
11:20
**life (2)**
20:17;36:12
**light (1)**
49:1
**likely (2)**
16:18;30:14
**limited (2)**
37:2,5
**line (1)**
29:3
**lined (1)**
28:21
**lines (1)**
29:9
**list (9)**
5:3,4;9:22;11:4,
17;12:18;21:10,22;
23:2
**listen (2)**
15:21;34:13
**listened (1)**
44:8
**little (5)**
15:3;22:11;26:18;
36:7;39:10

LLP (2)
6:14;35:4
**loaded (2)**
21:24,25
**locally (1)**
15:9
**lodge (1)**
42:11
**logistical (1)**
9:24
**long (2)**
26:11,14
**look (10)**
5:4;21:12;26:4;
28:23;34:9;39:6,20;
46:7,13,14
**looking (4)**
11:4,4;17:22;
39:13
**lot (4)**
11:5;19:23;20:5;
37:4
**lots (5)**
8:13,14;15:16;
20:1,2
**love (1)**
20:4

---

**M**

**magic (1)**
31:23
**majorities (1)**
16:22
**makes (3)**
36:22;39:8;51:6
**making (2)**
23:12;40:1
**Manges (3)**
6:4;16:3;36:21
**many (12)**
8:17,17,17;10:18;
11:2,3;14:15,24;
35:10,22,22;37:5
**masters (1)**
36:11
**matter (6)**
4:8;12:17;27:20;
38:10,14;48:7
**matters (5)**
8:10;9:24;18:12;
39:24;46:2
**MAY (24)**
4:1;10:15,16;
16:18;17:5;18:22;
21:4,15;24:1;28:16;
31:14,15,19;33:3;
35:10;39:14;42:6,6;
49:23;50:3,4,11,24;
51:20
**maybe (3)**
13:19;22:4;24:6;
25:19,19,21;27:3;

28:10;29:7,21,23;
32:18;37:3
**mean (15)**
5:13;8:8;18:16;
23:22;24:12;25:4,
24;27:11;30:15,22;
31:13,18;32:6;33:1,
17
**Meaning (1)**
44:16
**meanwhile (1)**
5:10
**meat (1)**
22:11
**mediation (3)**
18:11,14;34:17
**meet (7)**
13:22;14:7;25:11;
34:12;35:16,20;
43:22
**meeting (1)**
45:6
**memorandum (1)**
19:8
**Memorial (2)**
25:8;32:4
**mention (1)**
46:5
**mentioned (4)**
7:7;23:19,22;46:2
**merits (1)**
9:8
**met (1)**
16:22
**Michael (2)**
40:10,13
**microphone (1)**
6:1
**might (6)**
4:20;5:11;13:19;
15:7;45:15,16
**Mike (1)**
47:7
**Milbank (2)**
6:14;35:4
**mind (7)**
20:9,16;32:21;
35:15;39:16;42:13,
23
**minimum (1)**
22:16
**minimums (1)**
16:23
**minitrial (1)**
17:9
**minutes (5)**
5:12;7:18;9:6,23;
30:8
**misunderstand (1)**
37:20
**mix-up (1)**
4:20
**modify (1)**

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(5) indicated - modify

Case: 19-30088    Doc# 7445    Filed: 05/21/20    Entered: 05/21/20 07:19:13    Page 58
of 63

24:14

**moment (7)**
4:9;5:5,15,20;
30:6;40:19;49:7

**moments (1)**
8:21

**Monday (2)**
34:8;39:15

**Montali (1)**
4:6

**more (28)**
10:6;11:13;12:4,
14;14:16;15:12;
19:14;20:13;21:23;
22:11,14;24:22;
25:10;26:15,17;
30:10;31:13;32:19;
33:4;34:15;35:25;
37:22;39:10;44:19;
45:11,17;48:11;
51:13

**morning (19)**
4:7,15;6:13,16,19,
23;9:15;25:18;33:6;
34:5;35:3;37:9;38:1;
39:7;41:21;43:3;
48:23,24;51:22

**morning's (1)**
10:12

**most (3)**
17:25;34:18;37:6

**motions (1)**
27:12

**mountain (1)**
37:16

**move (10)**
4:9;5:13;10:7;
14:20;29:16;32:1;
39:5,15;51:20,20

**moving (3)**
7:5;17:23;43:7

**much (9)**
10:6;15:13;20:3;
27:13;28:3,15;
45:10;46:7;49:15

**multiple (2)**
21:25;27:19

**must (1)**
50:13

**mute (2)**
41:14,18

**muted (2)**
34:23;48:21

**N**

**name (4)**
11:10;36:19;
38:20;49:19

**names (2)**
41:5;50:13

**narrow (3)**
34:18;35:16;39:3

**nature (2)**
33:9;41:25

**necessary (10)**
13:8;17:9,11,12;
22:25;28:1;29:13;
42:9;44:6;51:19

**need (32)**
5:25;9:15;11:13;
12:23,24;13:2,14,25;
14:20;17:8;21:2,19;
22:4;24:3;28:15;
30:16,18;33:10,11,
16;36:6;37:10,17;
39:11;42:3,6,21;
44:22;45:15;48:4;
49:2,11

**needed (1)**
32:11

**needs (2)**
11:21;14:3

**negotiations (1)**
11:15

**Neumeister (9)**
40:13,21;47:5,6,7,
18;48:5,12,19

**Neumeister's (1)**
41:17

**new (2)**
7:3;45:3

**Newsome (1)**
18:12

**next (16)**
5:12;14:8;18:6;
28:1;32:1;34:4,8;
36:12;37:4;43:23;
44:6,25;45:5,24;
51:22;52:1

**nice (1)**
28:9

**Nobody (2)**
14:17;48:2

**none (2)**
30:6;44:20

**nonexclusive (1)**
12:18

**normal (1)**
10:8

**Northern (2)**
4:5;15:9

**Norton (1)**
48:25

**note (1)**
39:20

**notes (1)**
41:24

**number (8)**
6:25;11:11;14:21;
17:14,16,16;36:11;
49:21

**numerous (1)**
17:18

**nuts (1)**
43:13

**O**

**objecting (2)**
11:10;27:12

**objection (25)**
8:18,24;9:1;11:3,
11,23,24;13:24;
17:15;18:2,3,8,13,
18;19:19,20,20;
22:19;23:11;30:6;
34:16;41:25;42:11;
47:11,19

**objections (33)**
8:13,14,17;9:18,
19;11:1,3;12:13,16,
18;13:12,15,23;17:6,
15,16;18:5,24;19:4,
9,16,18,22,23;20:10;
21:11,16;23:21;
24:20,21;31:18;
37:5;46:22

**objector (2)**
25:9;29:8

**objectors (7)**
14:8;20:2;24:23;
26:25;27:3;29:18;
35:21

**obligations (1)**
41:23

**obviously (4)**
8:16;10:5;12:13,
23

**o'clock (3)**
25:18;28:21;31:9

**off (1)**
44:25

**off-calendar (1)**
11:16

**offense (2)**
7:22;8:8

**offer (2)**
24:2;30:8

**offering (1)**
38:23

**Office (1)**
33:7

**official (1)**
6:14

**omnibus (3)**
13:6;18:24;19:8

**once (1)**
27:18

**One (39)**
4:9;5:4;9:13;
11:23;13:7,8;14:24,
25;15:13;16:10,21;
19:14;20:2;21:14,22,
23;22:19;23:1,22,25;
24:10,19;25:6;
26:22;27:12,20,22;
29:14;30:10;36:17;
39:20;40:15,19;

44:23;45:11,14;
46:17;47:18;49:7

**ongoing (2)**
18:11,13

**only (14)**
11:12;14:23;
16:11;18:24;20:2,2,
3;22:21;23:3,23,25;
24:10;40:4;45:14

**on-screen (1)**
7:17

**onto (1)**
35:24

**oOo- (1)**
4:2

**open (3)**
31:25;32:4,21

**opening (3)**
16:4;25:19;31:4

**openings (1)**
29:23

**opponents (1)**
8:7

**opportunity (6)**
7:12;14:4;33:3;
39:2;46:12;48:6

**opposition (1)**
33:2

**oppositions (1)**
9:17

**optimistic (1)**
37:3

**order (12)**
4:3;9:13;18:23;
22:15;38:18;39:13;
43:19;44:13;46:5,
19;49:23;50:4

**orders (1)**
46:11

**organize (3)**
12:12,14,17

**organizing (1)**
19:25

**Orsini (1)**
9:4

**others (1)**
17:5

**otherwise (3)**
10:24;15:20;27:7

**ought (1)**
14:19

**ourselves (1)**
29:22

**out (25)**
7:6,20;8:2;9:14;
16:14;18:10,17;
21:8;23:7;24:13;
25:10;26:25;27:17;
31:10;32:16,19;35:9,
11;36:9;39:2,15;
42:1;45:17,17;48:19

**outcome (2)**
9:12;46:16

**over (9)**
6:25;12:7;18:6;
20:6,6;21:20;22:4,4;
27:5

**overlooking (1)**
11:18

**overly (1)**
37:3

**overnight (1)**
21:4

**overrule (1)**
38:9

**overstate (1)**
35:15

**overview (2)**
15:25;16:3

**overwhelming (1)**
16:8

**owe (1)**
11:12

**own (3)**
13:20,20;27:10

**P**

**pages (6)**
11:1;20:11,11,12,
13,20

**panel (1)**
39:1

**panelist (3)**
5:23;7:9,20

**panelists (1)**
39:1

**paper (1)**
37:16

**papers (1)**
8:5

**para (1)**
19:21

**Parada (8)**
5:2,22;38:25;40:7;
41:5;45:21;48:10;
52:12

**part (4)**
9:18;11:3;12:12;
33:24

**participants (2)**
9:10;39:22

**participate (4)**
45:6;50:11,12;
52:4

**participating (4)**
7:2;8:9,24;23:10

**participation (1)**
13:21

**particular (1)**
35:19

**particularly (2)**
7:16;8:21

**parties (14)**
4:13;13:15,23;
14:3;17:19;18:4;

Case: 19-30088    Doc# 7445    Filed: 05/21/20    Entered: 05/21/20 07:19:13    Page 59
of 63

23:9;29:14;32:22;
33:10;34:7,11;50:10,
12
**partner (2)**
22:7;38:11
**parts (1)**
11:25
**party (4)**
11:10;21:23;22:2;
24:10
**passed (1)**
22:7
**Patricia (1)**
43:4
**Pause (2)**
4:11;41:8
**pausing (1)**
12:11
**people (17)**
5:8;7:5,20;14:6,
22;17:7;23:4,20;
27:5,15,22;28:14;
29:1;32:15;40:1,4;
46:15
**perhaps (6)**
11:14;13:20;15:9;
19:20;20:9;21:21
**permission (1)**
29:21
**person (2)**
21:23;26:24
**personal (3)**
7:22;14:23;39:4
**personally (1)**
8:8
**perspective (3)**
23:6;46:2,3
**PG&E (3)**
4:9;15:14;16:12
**ph (2)**
40:17;52:13
**phone (1)**
26:23
**physical (1)**
19:11
**pieces (1)**
15:3
**place (4)**
6:22;8:6,10;9:2
**plan (15)**
7:25;8:7;11:3;
12:13,19;16:9,11;
23:17;30:16;35:11;
40:2;42:10;46:4,18,
21
**plan's (2)**
12:21;30:11
**players (1)**
35:22
**pleading (1)**
35:7
**pleadings (2)**
18:21,22

**please (9)**
5:7;7:3;8:11;
40:18;41:19;45:4;
48:3;49:16,19
**pleasure (1)**
47:4
**plenty (1)**
46:10
**point (13)**
7:19;18:10;21:2,8;
24:16;25:11;28:6;
29:4;33:11;43:5;
45:7;46:12;51:10
**pointed (1)**
16:14
**points (2)**
12:4;22:22
**poor (1)**
21:24
**position (8)**
8:19;13:2,16;
17:21;36:13,14;
42:16;52:3
**positions (2)**
23:11;36:12
**positive (1)**
32:18
**possibility (1)**
32:9
**possible (1)**
34:18
**possibly (1)**
25:7
**post-petition (3)**
12:22;13:7;47:16
**potential (1)**
24:1
**potentially (1)**
24:18
**power (2)**
26:20,24
**pre-COVID (2)**
10:8;37:24
**preliminary (5)**
6:25;16:8,9;17:2;
25:19
**prepare (1)**
12:14
**prepared (2)**
25:7;28:14
**presentation (3)**
29:23;35:13;47:12
**presentations (1)**
36:25
**presented (2)**
9:14;28:8
**presenting (3)**
37:2;46:13,14
**preserve (1)**
48:2
**preserved (4)**
22:17;23:11;
42:21;48:3

**presiding (1)**
4:6
**press (1)**
16:14
**pressures (1)**
20:8
**presume (1)**
9:14
**presuming (1)**
45:1
**pretend (1)**
30:5
**pretty (1)**
15:13
**prevailed (1)**
13:1
**previously (1)**
16:19
**primary (1)**
23:16
**Prime (2)**
16:16;17:7
**principal (2)**
40:6;47:16
**principle (3)**
7:1;8:2;10:13
**prior (4)**
16:18;18:2;35:9;
47:22
**pro (1)**
13:23
**probably (5)**
10:25;12:11;28:2;
36:2;44:19
**problems (1)**
17:6
**proceedings (1)**
52:15
**process (6)**
8:1;20:7;22:5,16;
32:12;43:5
**proffered (1)**
24:23
**promptly (1)**
7:21
**proof (1)**
30:8
**proponents (2)**
8:6;27:2
**proposed (4)**
46:5,11,19,23
**protect (1)**
13:2
**protocol (8)**
9:14,17;21:18;
43:6;44:12,22;45:2,4
**provide (3)**
17:21;38:13;50:13
**public (3)**
9:3,11;38:22
**pulled (1)**
14:11
**pure (3)**

17:22;47:14,24
**purely (1)**
8:1
**purpose (1)**
50:20
**purposes (3)**
8:9,23;23:12
**put (20)**
11:8,20,25;17:24;
21:12,21,22;22:11,
15;23:7;24:9,13;
26:3;27:4;29:21,24;
32:2;36:9;48:21;
50:22
**putting (2)**
13:5;36:4

## Q

**quick (5)**
16:3;21:11;36:17;
49:17,22
**quickly (5)**
10:23;11:21;
12:10;13:13;14:20
**quite (1)**
39:18

## R

**raise (12)**
5:7;9:24;19:23;
24:13;33:5;39:23;
45:4;47:10,20,21,23,
23
**raised (10)**
16:1;18:5,9,12,21;
19:19,20,21;33:21;
47:15
**raising (1)**
7:14
**random (1)**
29:13
**rate (1)**
12:22
**rather (5)**
9:9;21:16;25:12;
29:14;37:2
**reach (1)**
42:1
**read (20)**
13:15;18:17;20:3;
26:8;30:24,24;39:13
**readily (2)**
7:21;12:1
**reading (3)**
11:5;20:4;40:7
**real (6)**
30:5,15;32:15;
33:20;48:22;51:21
**realistically (2)**
15:8;31:3
**really (8)**

10:16;13:16;23:3;
24:15,16;26:4;
32:25;35:16
**reason (5)**
16:25;32:14;
33:16;39:18;40:14
**reasonable (1)**
15:11
**Rebecca (1)**
48:24
**recall (2)**
24:14;36:10
**received (1)**
37:16
**recollection (1)**
20:19
**reconcile (1)**
22:14
**record (4)**
5:17;21:18;22:2;
49:19
**redirect (1)**
25:15
**referring (1)**
21:17
**reflect (3)**
25:21,23;33:2
**reinvent (1)**
20:24
**reinventing (1)**
13:4
**rejecting (1)**
16:11
**rejection (1)**
22:19
**related (4)**
22:18,22;23:5;
37:6
**relating (1)**
16:12
**release (1)**
16:14
**releases (1)**
33:14
**relief (1)**
30:15
**relish (1)**
15:1
**relitigate (1)**
47:19
**rely (1)**
22:3
**relying (1)**
22:3
**remain (1)**
16:16
**remark (1)**
36:17
**remarks (3)**
16:4;19:17;36:25
**remember (3)**
20:21;24:21;36:12
**remove (1)**

Min-U-Script®

Case: 19-30088    Doc# 7445    Filed: 05/21/20    Entered: 05/21/20 07:19:13    Page 60
of 63

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(7) partner - remove

39:25
**repeat (4)**
7:7,23;35:25;
51:23
**rephrase (1)**
50:19
**reply (2)**
22:25;42:6
**report (4)**
9:5,8,8;18:19
**REPORTER (19)**
4:4,8,12;5:4,19,24;
40:9,13,19,22,25;
41:2,6,14,17;48:15;
49:7,10;52:14
**reports (2)**
9:3;21:5
**represent (1)**
41:22
**representative (1)**
44:16
**reproduce (1)**
22:4
**request (2)**
21:4;25:12
**require (1)**
21:4
**requirement (1)**
8:15
**requirements (1)**
19:3
**requisite (1)**
16:21
**reschedule (1)**
39:8
**rescission (1)**
16:12
**reserve (9)**
13:16;33:13;36:6,
11,14;42:4,22,23;
47:24
**reserved (1)**
42:17
**reserving (1)**
42:19
**resigned (1)**
15:13
**resolve (4)**
42:1,2,5,12
**resolved (8)**
11:16,19;12:25;
13:9,9;17:25;18:7;
37:5
**resolving (1)**
34:17
**respect (6)**
13:3;17:16,19;
18:8,12,20;19:18,21;
25:25
**respects (1)**
14:15
**respond (5)**
15:17;21:14;

37:12,17,21
**response (15)**
9:23;12:15;13:6,6;
18:21,24;19:8,25;
21:9,11;36:3;39:11;
42:3,14,15
**responses (2)**
12:16;35:25
**responsible (1)**
27:10
**responsive (1)**
18:22
**result (1)**
30:14
**results (5)**
16:8,9,15;17:2;
32:19
**retired (1)**
18:11
**reviewed (2)**
16:16;46:11
**revised (4)**
35:11;46:4,18,21
**right (27)**
4:14;5:1,14;20:23;
22:13;26:1,12;29:10,
10,16;30:13;33:13,
23;35:2;39:21;
40:16,24;41:4,6;
42:18;43:18;46:15;
47:24;48:10;51:8,11,
17
**rights (12)**
9:2;16:15;22:17;
38:23;42:4,19,21,22;
47:24;48:2,2,3
**risk (1)**
31:15
**Robert (2)**
6:16;34:5
**room (8)**
15:2;39:5;40:4,18;
44:21;48:19,21,22
**Rose (1)**
48:25
**RSAs (1)**
21:19
**ruling (1)**
47:20
**rulings (1)**
13:11
**rush (1)**
39:11

**S**

**same (15)**
9:18;13:9;14:5,6,
6,24;15:9;20:4,8,13;
21:25;27:19;42:15;
44:21;45:1
**SAN (2)**
4:1;10:4

**Sanda (1)**
52:13
**satisfaction (1)**
40:3
**saw (1)**
24:10
**saying (5)**
20:5,12;31:2,13;
37:12
**Scarpulla (20)**
48:17;49:5,6,10,
11,14,16,17,20,20;
50:5,8,15,16,17,21;
51:1,11,14,16
**schedule (14)**
10:1,10;13:25;
14:16,19;17:9;
25:14;26:2,19;
37:22;39:17;46:14;
51:24,25
**scheduled (2)**
10:2;25:16
**scheduling (15)**
8:1,10;9:13,13;
12:15;16:19;18:23;
32:1;38:18;39:9,24;
40:5;42:16;46:3;
49:18
**screen (6)**
4:20;5:8;7:14;
23:10;39:23;40:15
**se (1)**
13:23
**second (4)**
7:2;11:20;39:20;
40:15
**Secondly (1)**
8:12
**section (2)**
5:13;18:25
**seeing (1)**
36:25
**seemed (1)**
23:21
**seems (2)**
14:2,14
**segments (1)**
15:4
**select (1)**
29:14
**senior (1)**
30:17
**sense (8)**
10:8,14;14:16;
25:17;31:19;32:14;
36:22;39:8
**sentence (1)**
13:8
**separately (1)**
8:25
**sequence (2)**
8:4;14:13
**session (1)**

4:5
**set (2)**
29:1;32:13
**setting (1)**
8:25
**seven (1)**
15:1
**several (2)**
18:6;35:10
**sheet (1)**
11:25
**shelter-in-place (1)**
6:8
**shipment (1)**
21:4
**short (1)**
38:9
**shortly (1)**
9:5
**shows (1)**
11:9
**side (2)**
24:10;27:11
**significantly (2)**
16:22;17:3
**Silfen (12)**
40:10,17,22;41:9,
10,20,21,21;42:13,
18;43:1;45:22
**Silwho (1)**
40:17
**similar (2)**
19:24;21:9
**simple (1)**
30:8
**simply (4)**
8:17;11:4;20:7;
47:10
**sit (3)**
5:11;7:17;33:15
**sitting (2)**
31:8;38:2
**situation (2)**
14:15;15:9
**six (5)**
15:1;27:21,21;
28:1;45:16
**sixty (1)**
20:20
**Smith (2)**
25:13,14
**smoking (1)**
8:12
**smoothly (1)**
10:7
**So-and-so (6)**
14:1,18;25:8;
26:21;31:4;38:21
**somebody (3)**
27:12;30:18;44:17
**somehow (1)**
35:6
**someone (1)**

10:12
**somewhere (1)**
21:18
**soon (1)**
15:11
**sorry (7)**
16:15;28:17;35:1;
36:2;39:22;49:20;
50:5
**sort (3)**
14:11;17:9;29:19
**sound (1)**
33:17
**speak (4)**
10:13;23:24;30:3;
49:2
**speaking (1)**
50:14
**specific (7)**
8:14;9:18;12:14;
16:1;33:14;41:25;
46:18
**speech (1)**
8:7
**spend (1)**
8:20
**spent (1)**
43:10
**spoke (2)**
24:6;29:17
**sponsoring (1)**
21:24
**sporting (1)**
6:8
**spreadsheet (2)**
11:9,15
**staff (5)**
7:4,15;10:7,25;
52:12
**stand (2)**
30:11,19
**standard (1)**
38:18
**start (9)**
10:16;24:25;25:2,
8,18;31:4;39:17;
51:23,24
**starting (2)**
5:17;31:24
**state (6)**
18:8;36:18,19;
49:16,19;50:23
**statement (6)**
20:19;21:10;
24:24;38:6,9,20
**statements (1)**
25:19
**status (5)**
9:8;10:10;11:15;
34:8;39:15
**statute (1)**
30:12
**stay (1)**

Case: 19-30088    Doc# 7445    Filed: 05/21/20    Entered: 05/21/20 07:19:13    Page 61
of 63

5:11
**Stephen (3)**
6:3;16:2;36:20
**stick (1)**
51:19
**still (7)**
9:20;16:15,15;
17:5;31:14;32:13;
39:16
**stipulated (1)**
24:20
**stock (1)**
16:13
**straight (1)**
7:6
**streamline (1)**
34:14
**streamlined (2)**
20:16,19
**strongly (1)**
34:7
**struggling (1)**
52:8
**stuck (1)**
7:17
**styled (1)**
8:17
**subject (9)**
8:20;12:17;14:6;
16:16;25:15;35:20;
36:13;38:10,14
**subjected (1)**
27:19
**subjects (1)**
39:3
**submit (1)**
50:25
**submitted (3)**
21:5;31:18;48:8
**subordinated (1)**
16:11
**substantive (1)**
23:24
**substantively (1)**
7:23
**substituting (1)**
6:22
**suggest (1)**
44:24
**suggestion (1)**
31:12
**summarized (1)**
9:9
**summary (3)**
38:14,20;39:7
**support (5)**
9:16,21;10:18;
18:25;19:8
**supported (1)**
19:1
**supporting (1)**
19:9
**supposed (3)**

4:21;26:19;43:14
**sure (13)**
7:24;10:24;12:6,8,
25;14:3;30:2,3;
35:24;36:14;38:8,9;
39:17
**surprise (1)**
35:8
**suspect (1)**
14:24

**T**

**table (3)**
11:8,9;12:1
**talk (3)**
24:12;26:16,25;
29:22;31:13;32:10,
11;38:21,22
**talked (1)**
39:24
**talking (1)**
29:20
**talks (1)**
9:17
**tally (2)**
11:17,25
**TCC (13)**
6:17,20;13:12;
18:12;19:20;20:9;
23:25;24:10;27:4;
29:18;32:9;34:6;
35:22
**TCC's (1)**
18:17
**technical (2)**
7:19;47:1
**technology (1)**
7:22
**Ted (5)**
6:6;12:2;15:24;
22:9;50:11
**teed (1)**
35:21
**telephone (2)**
13:21;52:5
**telling (2)**
17:10;31:8
**ten (2)**
11:14;14:5
**tentative (1)**
14:19
**terms (7)**
19:23;22:23;
23:18;35:17;43:6,
11;44:12
**Tesekerides (1)**
6:5
**testify (5)**
14:17,18;25:6;
28:21;38:7
**testimony (8)**
24:1;28:12;30:1,

22;32:9;33:25;
44:17,19
**That' (1)**
19:5
**that'd (1)**
25:6
**that'll (1)**
43:13
**There'll (1)**
48:8
**thinking (4)**
10:1,1;32:15,17
**third-party (1)**
30:17
**thirty (4)**
7:17;20:11,12,12
**Thomas (1)**
52:13
**though (1)**
42:16
**thought (11)**
10:4;15:1;18:17,
18;19:18;29:20;
31:21;40:14;45:11;
50:1,6
**three (2)**
11:1;19:2;20:25;
24:6;39:4;41:24
**Thursday (3)**
13:20;29:1;37:9
**thus (1)**
11:8
**times (1)**
20:25
**timing (5)**
7:5;9:9;10:14;
17:8;46:2
**today (15)**
7:24;8:9,20;9:2;
10:1,9;15:5,15;
25:21;32:5;33:4;
36:23;37:1;48:2;
52:13
**today's (2)**
8:23;33:9
**together (3)**
11:8;13:6;14:11
**told (3)**
20:18,21;27:12
**Tom (2)**
40:10;43:4
**tomorrow (1)**
13:20
**topics (3)**
13:7;19:23,24
**Torada (1)**
52:13
**Tosdal (19)**
40:10,18;41:2,11,
12;43:2,3,4,11,16,18,
20;44:8,12,18;45:9,
19,20,22
**totally (1)**

18:16
**touch (2)**
22:22;26:18
**touched (1)**
22:21
**touches (1)**
29:19
**track (1)**
24:21
**tracking (2)**
10:25;11:1
**Tracy (3)**
4:19;5:1,10
**trade (1)**
47:9
**traditional (3)**
15:12;25:5;51:21
**traffic (1)**
21:22
**trial (18)**
8:4;10:16;15:1,3,
14;25:2,5,18;30:24;
31:5,10,24;33:20;
37:25;38:1,18;51:21,
24
**trial's (2)**
39:17,19
**tried (1)**
15:18
**true (2)**
31:1;45:1
**Trustee (3)**
6:22;32:25;41:22
**Trustee's (2)**
33:7,11
**try (6)**
14:7;15:3;35:8,12;
52:1,7
**trying (4)**
20:16;36:5;42:20;
44:5
**Tsekerides (65)**
5:18;6:6,6,9,11;
8:21;9:7,20;12:2,2,6,
8,10;13:5;15:17,22,
23,24;16:5;17:17;
19:2,11;21:21;22:6,
9,9;23:18;25:23;
26:2,6,10,13;27:11,
15;28:5,17,23;29:11,
17;30:2,13;31:1,6,
12;32:6,21;34:19;
35:15,24;38:8,11,13,
16;39:5;43:22;
44:23;45:5,12;
46:17;50:2,3,10,11;
52:1,5
**Tsekerides' (1)**
21:15
**TUESDAY (11)**
4:1;25:2,7,18;
31:16,23;32:2;34:8;
39:16;44:7;51:20

**turn (1)**
6:25
**twenty (2)**
11:13;20:11
**twenty-four (1)**
20:3
**twenty-nine (1)**
41:23
**twice (1)**
20:4
**two (15)**
11:25;12:4;14:5;
19:2;23:23,24;24:6,
19;27:2,3;41:5,13;
45:5,21;52:2
**two-week (1)**
14:18
**typically (1)**
26:3

**U**

**UCC (3)**
19:20;20:9;27:4
**ultimately (1)**
29:3
**under (6)**
8:15;18:25;20:7,8;
31:18;41:23
**understood (3)**
6:21;44:9;45:19
**undertake (1)**
29:11
**unfortunate (1)**
42:11
**unless (4)**
9:8;11:17,21;35:6
**unlikely (2)**
36:8;42:7
**unmute (6)**
5:16,25;34:4;
41:15,19;49:11
**unnecessary (1)**
42:15
**unsuccessful (1)**
28:19
**up (26)**
5:8;10:13;15:3;
19:10;21:25,25;
25:21;27:3,4,9,23;
28:21;29:1;32:14;
34:3,12;35:21;36:7;
40:1,8,8,15;48:11,
14,18,21
**upon (5)**
8:25;10:9;11:2,24;
15:8
**urge (1)**
52:4
**urgency (1)**
11:18
**use (2)**
7:13;29:13

Case: 19-30088    Doc# 7445    Filed: 05/21/20    Entered: 05/21/20 07:19:13    Page 62
of 63

**used (1)**
21:10
**usually (1)**
30:8

**V**

**various (1)**
18:4
**victims (3)**
9:11;16:9;49:21
**video (8)**
15:3;25:14;40:22;
42:21;43:6;44:12,
19;52:6
**video's (1)**
41:1
**view (4)**
7:19;17:22;33:11;
44:4
**views (2)**
8:22;15:18
**vision (1)**
29:23
**voluminous (1)**
21:3
**voted (1)**
16:10
**votes (2)**
9:6;16:17
**voting (4)**
16:8,14,15;40:2

**W**

**wait (4)**
9:24;43:20,20,20
**waiting (1)**
32:23
**waived (1)**
42:17
**wants (4)**
15:24;26:22;
27:21;45:14
**warm (1)**
10:4
**waste (1)**
13:3
**water (1)**
15:21
**way (14)**
11:16;14:25;
15:14;19:16;20:16,
20;25:10;29:20;
34:20;35:21;37:13;
45:17,18;51:22
**webinar (1)**
7:2
**Wednesday (3)**
25:24;31:23;51:22
**week (3)**
36:24;37:4,4
**weekend (1)**

39:13
**weeks (2)**
15:8,12
**weighed (1)**
35:7
**Weil (4)**
6:4,6;16:3;36:20
**welcome (3)**
4:21;5:1,10
**weren't (2)**
4:24;10:3
**whack (2)**
27:3,4
**whatchamacallit (1)**
38:23
**what's (3)**
11:17;28:7;51:12
**wheel (2)**
13:4;20:25
**whenever (1)**
36:13
**Whereupon (1)**
52:15
**wherever (1)**
15:2
**who's (1)**
8:4
**wildfire (1)**
16:9
**Williams (2)**
24:1,18
**willing (2)**
32:2;37:21
**Winthrop (6)**
48:15,19,23,24,25;
49:4
**wish (6)**
25:13;27:16;
33:24;39:23;43:23;
52:9
**wishes (1)**
39:2
**withdrew (1)**
49:1
**without (1)**
51:1
**witness (29)**
14:2,4,6,17;23:12,
13;24:11;25:5,13;
27:18,21,22;28:15;
30:19;32:9;35:6,19;
43:6,22;44:13,14,15,
17,25;50:18,20;51:6,
8,9
**witness' (3)**
33:25;37:13;44:15
**witnesses (40)**
8:4;10:19;13:25;
23:2,4;24:5,17;25:1;
27:17;28:21,25;30:1,
10,19,25;31:11;
32:10;33:10,12,12,
13;34:14;35:18;

37:2,23;38:4,19;
39:8;43:7,24,25;
44:3,5,19,21;47:12;
49:25;50:14,25;51:3
**words (1)**
30:4
**work (8)**
7:4,22;14:25;15:4;
25:10;26:25;31:3,8
**working (6)**
7:4;13:14;18:4;
22:13;26:13;42:8
**world (2)**
14:15;26:7
**worry (2)**
21:5;51:13
**worse (1)**
28:20
**written (2)**
30:1,1
**wrong (2)**
12:20,22

**Y**

**year (1)**
10:2
**yesterday (1)**
16:7

**Z**

**zero (2)**
26:24;27:7
**ZIPES (10)**
4:18;6:21,23;
32:24;33:6,6,19,23;
34:2;39:1
**Zoom (5)**
7:2;13:20;15:6;
26:18;32:13

**1**

**10 (2)**
25:18;28:21
**10,000 (1)**
11:12
**10:00 (1)**
4:1
**1054 (1)**
30:16
**11 (1)**
31:9
**11:30 (8)**
10:10;26:16;29:6;
31:9;36:22;37:8;
39:7;51:19
**1129 (2)**
19:1;30:13
**1129a (1)**
19:3
**13th (1)**

49:23
**15th (1)**
24:15
**17.5 (1)**
41:23
**18th (1)**
50:8
**19 (1)**
4:1

**2**

**20 (1)**
28:24
**2020 (1)**
4:1
**22nd (6)**
16:18;18:22;26:3;
50:3,4,12
**26th (1)**
31:16
**27th (4)**
10:16;25:19;
29:21,23

**5**

**500 (1)**
32:4

Case: 19-30088    Doc# 7445    Filed: 05/21/20    Entered: 05/21/20 07:19:13    Page 63
of 63