## Exhibit A

**JH Kelly Complaint for Foreclosure of Mechanics Lien**

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

1    MARIO R. NICHOLAS (SB #273122)
     STOEL RIVES LLP
2    760 SW Ninth Avenue, Suite 3000
     Portland, OR 97205
3    Telephone: 503.224.3380
     Facsimile: 503.220.2480
4
     Attorneys for Plaintiff
5    JH Kelly, LLC
6
7
8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                        COUNTY OF SHASTA

10   JH KELLY, LLC, a Washington limited          CASE NO.  **191759**
     liability company,
11                                                COMPLAINT FOR FORECLOSURE OF
                    Plaintiff,                    MECHANICS LIEN
12
          v.                                      Unlimited Jurisdiction
13
     PACIFIC GAS AND ELECTRIC COMPANY,
14   a California corporation; and
15   DOES 1 through 10, inclusive,
16                   Defendants.
17
18
19        For its Complaint, Plaintiff JH Kelly, LLC ("JH Kelly") alleges as follows:
20                              **THE PARTIES**
21        1.    Plaintiff JH Kelly is a Washington limited liability company. JH Kelly is duly
22   qualified to do business in the State of California as a contractor under Contractors State License
23   Board License No. 991732.
24        2.    On information and belief, defendant Pacific Gas and Electric Company
25   ("PG&E") is now, and all relevant times was, a California corporation.
26        3.    JH Kelly is ignorant of the true names and capacities of defendants sued herein as
27   Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. JH
28   Kelly will amend this Complaint to allege true names and capacities when ascertained. JH Kelly

FILED
JAN 2 5 2019
CLERK OF THE SUPERIOR COURT
BY: S. HATCH, DEPUTY CLERK

By Fax

1    is informed and believes and therefore alleges that each of the fictitiously named defendants are

2    responsible in some manner for the occurrences herein alleged and for JH Kelly's damages.

3        4.    At all times mentioned herein, defendants, and each of them, were the agents,

4    servants, and employees of each of the remaining defendants and were, in doing the things

5    complained of, acting within the scope of their agency and/or employment, and acting with the

6    full knowledge or subsequent ratification of their principals or employers.

7    **FIRST CAUSE OF ACTION**

8    **(Foreclosure of Mechanics Lien)**

9        5.    JH Kelly realleges and incorporates by this reference, as if set forth in full herein,

10    the allegations in paragraphs 1 through 4 above.

11        6.    At all relevant times, PG&E and Does 1-10 (the "PG&E Defendants") claimed

12    some right, title, or interest in the real property and improvements constituting the construction

13    project commonly known as the Burney K2 Replacement Project and generally located at 37667

14    Highway 299, Burney, CA 96013 (the "Project" and/or the "Property"), which is situated in the

15    County of Shasta, California.

16        7.    On or about October 21, 2016, AECOM Technical Services, Inc. ("AECOM"), as

17    prime contractor and design-builder, and JH Kelly, as subcontractor, entered into the Agreement

18    Between Design-Builder and Subcontractor (Where Subcontractor Does Not Provide Design

19    Services), Subcontract No. 60482831-SC-001 (the "Subcontract") to perform certain civil,

20    structural, mechanical, electrical, and related construction work on the Project for a lump-sum

21    price of $14,341,281. A copy of the Subcontract, excluding exhibits (which consist of

22    approximately 2,218 pages), is attached hereto as **Exhibit A** and incorporated herein.

23        8.    JH Kelly furnished labor and services to AECOM and the PG&E Defendants for a

24    work of improvement at the Property and on the Project, and supplied materials and equipment to

25    AECOM and the PG&E Defendants for installation at the Property and on the Project, whereby

26    said materials were then and there incorporated into the Property.

27        9.    JH Kelly has provided all notices required by the California Civil Code.

28

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

-2-

10.     After JH Kelly furnished labor, services, materials, and equipment to the work of improvement at the Property and on the Project, on or about November 1, 2018, JH Kelly duly filed and recorded in the official records of Shasta County, as document no. 2018-0030534, a Claim of Mechanics Lien, which was duly verified (the "Claim of Mechanics Lien"). A true and correct copy of JH Kelly's Claim of Mechanics Lien is attached hereto as **Exhibit B** and incorporated herein as if fully set forth. JH Kelly's Claim of Mechanics Lien was recorded within the time specified by the California Civil Code.

11.     In its Claim of Mechanics Lien, JH Kelly claimed a mechanics lien on the Property of \$15,881,776.21, plus interest at the legal rate or contractual rate from the time the sum was due, and recording fees, which amount represented the principal unpaid balance then owed to JH Kelly for the Project, excluding additional damages for schedule and productivity impacts. There is currently due and owing to JH Kelly the principal sum of \$15,881,776.21 (plus additional damages for schedule and productivity impacts), plus interest at the legal rate or contractual rate from the time the sum was due, which is the reasonable value of the labor, materials, and equipment JH Kelly furnished to AECOM and the PG&E Defendants for use in the Property, less all payments made to date.

12.     Each of the PG&E Defendants has, or claims to have, some estate, lien, right, title, or interest in or upon said Property premises or some part thereof, which claims are subject, subsequent, and subordinate to the lien of JH Kelly as described above.

Wherefore, JH Kelly seeks relief as set forth in the Prayer for Relief.

### PRAYER FOR DAMAGES

*Against all defendants on all causes of action*:

1.     For principal damages of not less than \$15,881,776.21, or an amount to be proven at the time of trial;

2.     For a judgment:

    a.     declaring that the rights, claims, ownership, liens, title, or demands of the PG&E Defendants, and each of them, in the above-described real property be subject to and subordinate to the lien of JH Kelly;

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

-3-

COMPLAINT

Case: 19-30088   Doc# 7447-1   Filed: 05/15/20   Entered: 05/21/20 08:15:22   Page 4
of 54

b. ordering that JH Kelly's Claim of Mechanics Lien be foreclosed and that the usual judgment be made for the sale of the Property according to law, by a commissioner to be appointed by the Court;

c. ordering that the proceeds of the sale be applied to the payment of the amounts due, including interest thereon, through the date of entry of judgment due to JH Kelly; and

d. declaring that the title of each of the PG&E Defendants, and all persons claiming under them, be adjusted subsequent to the Claim of Mechanics Lien of JH Kelly, whether the PG&E Defendants claim an interest as lien claimants, judgment creditors, purchasers, encumbrancers, or otherwise, and that they be barred and foreclosed from all rights, claims, interest, or equity in redemption in the Project or on any part thereof after the time for redemption has passed;

3. For interest at the prevailing legal rate on all damages from the time such payment became due through judgment;

4. For costs of the suit herein incurred; and

5. For such other relief as the Court may deem just and proper.

DATED: January 23, 2019                    STOEL RIVES LLP


By: _____
MARIO R. NICHOLAS
Attorneys for Plaintiff
JH Kelly, LLC

# AECOM Technical Services, Inc.

## SUBCONTRACT # 60482831-SC-001………..

| Client / Prime Contract / Task Order | AECOM Numbers: |
|---|---|
| Client: PG&E……………….. <br> Prime contract #:2501335149………………….. / Task Order #:n/a……. <br> Prime contract (task order) pricing structure: lump sum | Project #: 60482831………….. <br> Vendor #: .TBD…………………… |

| Subcontractor: | Issued By: |
|---|---|
| Sub Name:   JH Kelly,LLC <br> Address:       821 3rd Avenue <br> City, State, ZIP   Longview, WA 98632 <br> <br> Attn:  Steve Lennon <br> Phone: (360) 905-1372 <br> Fax:…n/a………………. | AECOM Technical Services, Inc. <br> 300 Lakeside Drive, Suite 400……………….. <br> Oakland, CA 94612……………….. <br> <br> Attn:  Ocie Williams…………………., Subcontract Administrator <br> Phone:…(510) 874-3169…………… <br> E-Mail:ocie.williams@aecom.com <br> Fax:……n/a……………. |

| Period of Performance: | Price  or  Not-To-Exceed  Ceiling Price: | Payment Terms |
|---|---|---|
| | $14,341,281 | NET 30 days |
| 07/01/2016 through 02/28/2018 | | |

This agreement ("Subcontract") between the parties, when referenced herein shall be deemed to include the documents referenced in the Table of Contents below:

## TABLE OF CONTENTS

Signature Form (this page)
Standard Terms and Conditions [Agreement Between Design-Builder And Subcontractor (Where Subcontractor Does Not Provide Design Services)]
EXH A Flow Down General Conditions [Attachment 2 GC AECOM 2501335149 01062016 Final fpd3]
EXH A1 Flow Down Specific Conditions [Attachment 3 SC AECOM 2501335149 01152016 Final fpd3]
EXH A2 Modified Flow Down Conditions_FINAL_2016-10-12
EXH B Scope of Work [Attachment 1 PSI AECOM 2501335149 01152016 Final fpd3]
EXH B1 15000.77.505 PGE Burney Station Proposal 10-7-2015
EXH B2 PG&E Burney pricing workbook JHK 10-7-2015 (POST CONFERENCE CALL) REV1Submission
EXH B2A Material Quantities
EXH B3 15000.77.505 PG&E Burney Alt Add for Comp Bldg - Slab Removal REV 1
EXH B4 Unit Pricing for Boulder Removal
EXH C1 CA Conditional Waiver And Release On Progress Payment
EXH C2 CA Unconditional Waiver And Release On Progress Payment
EXH D1 CA Conditional Waiver And Release On Final Payment
EXH D2 CA Unconditional Waiver And Release On Final Payment
EXH E Not Used
EXH F Performance & Payment Bonds (to be provided by JH Kelly)
EXH G Not Used
EXH H JH Kelly Construction Schedule
EXH I1 JHK Time and Material Rates – Labor
EXH I2 JHK Time and Material Rates – Equipment
EXH J JHK Proposed Invoicing Schedule

The effective date of this Subcontract is the date of the last signature below.

Exhibit A

The parties acknowledge that there has been an opportunity to negotiate the terms and conditions of this Subcontract and agree to be bound accordingly.

| SUBCONTRACTOR | AECOM Technical Services, INC. |
|---|---|
| Signature                    Date | Signature                    Date |
| Paul Furth | SHAWN KELLY |
| Printed Name | Printed Name |
| CFO VP | Vice President |
| Printed Title | Printed Title |

Page **2**

# AGREEMENT BETWEEN DESIGN-BUILDER AND SUBCONTRACTOR
# (WHERE SUBCONTRACTOR DOES NOT PROVIDE DESIGN SERVICES)

Exhibit A

# TABLE OF CONTENTS

| Article | Name | Page |
|---------|------|------|
| Article 1 | General | 2 |
| Article 2 | Subcontractor's Services and Responsibilities | 6 |
| Article 3 | Design-Builder's Services and Responsibilities | 11 |
| Article 4 | Ownership of Work Product | 13 |
| Article 5 | Time of Performance | 14 |
| Article 6 | Contract Price | 15 |
| Article 7 | Procedure for Payment | 16 |
| Article 8 | Stop Work and Termination | 20 |
| Article 9 | Representatives of the Parties | 22 |
| Article 10 | Insurance and Bonds | 24 |
| Article 11 | Indemnification | 25 |
| Article 12 | Changes to the Contract Price and Time | 26 |
| Article 13 | Contract Adjustments and Disputes | 29 |
| Article 14 | Miscellaneous | 31 |
| Article 15 | Electronic Data | 33 |
| Article 16 | Confidential Information | 34 |
| Article 17 | Other Provisions | 35 |

AECOM Technical Services, Inc.
300 Lakeside Drive, Suite 400
Oakland, CA 94612

# Agreement Between
# Design-Builder and Subcontractor
# (Where Subcontractor Does Not Provide Design Services)

This **AGREEMENT** is made as of the _____21st_____ day of _____October_____
in the year of <u>2016</u>, by and between the following parties, for services in connection with the Project
identified below:

**DESIGN-BUILDER:**
*(Name and address)*
*AECOM Technical Services, Inc.*
*300 Lakeside Drive, Suite 400*
*Oakland, CA 94612*

**SUBCONTRACTOR:**
*(Name and address)*
*JH Kelly, LLC*
*821 3rd Avenue*
*Longview, WA 98632*

**PROJECT:**
*(Include Project name and location as it will appear in the Contract Documents)*
*Burney K2 Replacement Project*
*37667 Highway 299*
*Burney, CA 96013*

**OWNER:**
*(Name and address)*
*Pacific Gas and Electric Company*
*77 Beale Street*
*San Francisco, California 94105*

In consideration of the mutual covenants and obligations contained herein, Design-Builder and
Subcontractor ( the "Parties") agree as set forth herein.

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

Exhibit A

# Article 1

## General

**1.1     Basic Purpose.**

**1.1.1**     Design-Builder has contracted with Owner to provide the services necessary for the design and construction of the Project as set forth in the Engineer, Procure, Construct Agreement ("EPC Agreement"). Subcontractor, through itself, and Sub-Subcontractors, agrees to provide all construction and other aspects of the Work consistent with the Contract Documents. Design-Builder and Subcontractor agree that to the extent applicable to the performance of the Work hereunder, Subcontractor shall have the same responsibilities and obligations as to Design-Builder as Design-Builder by the EPC Agreement has against and to Owner, except as may be modified herein. Subcontractor will include in each lower-tier subcontract the appropriate flow-down clauses as required by the EPC Agreement. Any inconsistency, conflict or ambiguity between terms and conditions of this Agreement and the terms and conditions of the EPC Agreement will be resolved by applying the more stringent of the conflicting provisions.

**1.2     Basic Definitions.**

**1.2.1**     Terms used in this Agreement shall have the meanings set forth in the EPC Agreement between Owner and Design-Builder unless otherwise provided herein, with the following specific terms defined as follows:

**1.2.1.1**     *Agreement* refers to this executed contract between Design-Builder and Subcontractor.

**1.2.1.2**     *Construction Documents* are the documents consisting of Drawings and Specifications, prepared or assembled by Design-Builder in accordance with the EPC Agreement.

**1.2.1.3**     *Day* or *Days* shall mean calendar days unless otherwise specifically noted in the Contract Documents.

**1.2.1.4**     *EPC Agreement* refers to the contract between Design-Builder and Owner for the design and construction of the Project and all exhibits, attachments, and other Contract Documents enumerated and incorporated therein.

**1.2.1.5**     *Design Consultant* is a qualified, licensed design professional who is not an employee of Design-Builder, but is retained by Design-Builder, or employed or retained by anyone under contract with Design-Builder, to furnish design services required under the EPC Agreement.

**1.2.1.6**     *Final Completion* is the date on which all Work is complete in accordance with the Contract Documents, including but not limited to any items identified in the punch list prepared under the EPC Agreement and the submission of all documents set forth in Section 7.5.2.

**1.2.1.7**     *Force Majeure Events* are those events that are beyond the control of Subcontractor, Design-Builder and Owner, including the events of war, floods, labor disputes, earthquakes, epidemics, adverse weather conditions not reasonably anticipated, and other acts of God.

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

**1.2.1.8** *Hazardous Conditions* are any materials, wastes, substances and chemicals deemed to be hazardous under applicable Legal Requirements, or the handling, storage, remediation, or disposal of which are regulated by applicable Legal Requirements.

**1.2.1.9** *Legal Requirements* are all applicable federal, state and local laws, codes, ordinances, rules, regulations, orders and decrees of any government or quasi-government entity having jurisdiction over the parties, the Project or Site, the practices involved in the Project or Site, or any Work.

**1.2.1.10** *Owner's Project Criteria* are developed by or for Owner to describe Owner's program requirements and objectives for the Project, including use, space, price, time, site and expandability requirements, as well as submittal requirements and other requirements governing Design-Builder's performance of the Work. Owner's Project Criteria may include conceptual documents, design criteria, design performance specifications, design specifications, and LEED® or other sustainable design criteria and other Project-specific technical materials and requirements.

**1.2.1.11** *Project Schedule* refers to the schedule setting forth the dates by which the various stages of both the design and construction, commissioning, substantial completion and completion of the Project that must be attained to satisfy Design-Builder's obligations to Owner.

**1.2.1.12** *Site* is the land or premises on which the Project is located. For purposes of the contract "Burney" shall mean the site.

**1.2.1.13** *Sub-Subcontractor* is any person or entity retained by Subcontractor as an independent contractor to perform a portion of the Subcontractor's Work and shall include materialmen, suppliers, and subcontractors of any tier which will accept certain flow down provisions from the EPC Agreement to the extent required in this Agreement.

**1.2.1.14** *Substantial Completion or Substantially Complete* is the date on which the Work, or an agreed upon portion of the Work, is sufficiently complete in accordance with the Contract Documents so that Owner can occupy and commercially use the Work for its intended purpose.

**1.2.1.15** *Work* is comprised of all Subcontractor's construction and other services required by the Contract Documents, including procuring and furnishing all supervision, labor, inspection, testing and start-up support labor, materials, tools, equipment, machinery, transportation, temporary utilities, temporary facilities, 12 X 60' Trailer connected to site facilities for Design Builder including Parking and porch/steps ready for use, including same items of furniture and appliances Subcontractor supplies for its own trailer(s), and all other items and services specified  in this Agreement and the other Contract Documents necessary to complete the portion of the Project described in **Exhibit B**.

## 1.3 Contract Documents.

**1.3.1** The Contract Documents are comprised of the following:

**1.3.1.1** All written modifications, amendments, minor changes and Change Orders to this Agreement;

**1.3.1.2** This Agreement, including the following exhibits: (*list for example, performance standard requirements, performance incentive arrangements, markup exhibits, allowances, unit prices, or exhibit detailing offsite reimbursable personnel*);

Exhibit A Flow Down General Conditions [Attachment 2 GC AECOM 2501335149 01062016 Final fpd3]
Exhibit A1 Flow Down Specific Conditions [Attachment 3 SC AECOM 2501335149 01152016 Final fpd3]
Exhibit A2 Modified Flow Down Conditions_FINAL_2016-10-12
Exhibit B: Scope of Work [Attachment 1 PSI AECOM 2501335149 01152016 Final fpd3]
Exhibit B1_15000.77.505 PGE Burney Station Proposal 10-7-2015
Exhibit B2 PG&E Burney pricing workbook JHK 10-7-2015 (POST CONFERENCE CALL) REV1Submission
EXH B2A Material Quantities
Exhibit B3 15000.77.505 PG&E Burney Alt Add for Comp Bldg - Slab Removal REV 1
Exhibit B4 Unit Pricing for Boulder Removal
Exhibit C1 CA Conditional Waiver And Release On Progress Payment
Exhibit C2 CA Unconditional Waiver And Release On Progress Payment
Exhibit D1 CA Conditional Waiver And Release On Final Payment
Exhibit D2 CA Unconditional Waiver And Release On Final Payment
Exhibit E: Not Used
Exhibit F: Performance & Payment Bonds (to be provided by JH Kelly)
Exhibit G: Not Used
Exhibit H: JH Kelly Construction Schedule
Exhibit I1: JHK Time and Material Rates – Labor
Exhibit I2: JHK Time and Material Rates – Equipment (to be provided by JH Kelly)
Exhibit J: JHK Proposed Invoicing Schedule

**1.3.1.3** The Construction Documents; and

**1.3.1.4** The EPC Agreement, but only to the extent the EPC Agreement relates to the Work and the terms and conditions under which the Work shall be performed, as mutually agreed and modified by the parties on the attached Exhibit A2.

## 1.4 Interpretation and Intent.

**1.4.1** Design-Builder and Subcontractor, prior to execution of the Agreement, shall carefully review all the Contract Documents for any conflicts or ambiguities. Design-Builder and Subcontractor will discuss and resolve any identified conflicts or ambiguities prior to execution of the Agreement.

**1.4.2** The Contract Documents are intended to be complementary and interpreted in harmony so as to avoid conflict, with words and phrases interpreted consistent with construction and design industry standards. In the event of any inconsistency, conflict, or ambiguity between or among the Contract Documents, the more stringent provision of this Agreement will apply as it relates to Subcontractor's scope of Work, determined by a standard of good faith and reasonableness.

## 1.5 Mutual Obligations and Acknowledgments.

**1.5.1** Design-Builder and Subcontractor commit at all times to cooperate fully with each other, and proceed on the basis of trust and good faith, to permit each party to realize the benefits afforded under the Contract Documents. Design-Builder and Subcontractor shall perform their respective responsibilities, obligations and services in a timely manner to facilitate the other's timely and efficient performance and so as not to unreasonably delay or interfere with the other's performance of its obligations under the Contract Documents.

**1.5.2** Subcontractor acknowledges that it has reviewed the EPC Agreement, and has met with Design-Builder to review, discuss, and familiarize itself with the EPC Agreement, as well as all

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

Exhibit A

documents incorporated therein and attached thereto. Subcontractor will include in each lower-tier subcontract (if any) the appropriate flow-down clauses as required by the EPC Agreement.

**1.6**　　**Entire Agreement.**

**1.6.1**　　The Contract Documents, as modified and mutually agreed to by the Design-Builder and Subcontractor, all of which are incorporated by reference into this Agreement, and any modifications thereto, are attached to this Agreement, form the entire agreement between Design-Builder and Subcontractor and are as fully binding on the parties as if repeated herein. No oral representations or other agreements have been made by the parties except as specifically stated in the Contract Documents.

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

## Article 2

### Subcontractor's Services and Responsibilities

**2.1**    **General.**

     **2.1.1**   Within seven (7) days after execution of this Agreement, Design-Builder and Subcontractor will meet to discuss issues affecting the administration and schedule of the Work, and implement the necessary procedures, including but not limited to those relating to schedule updates, submittals, and payment, to facilitate the ability of the parties to perform their obligations under this Agreement.

     **2.1.2**   Subcontractor's Representative shall be reasonably available to Design-Builder and shall have the necessary expertise and experience required to supervise the Work. Subcontractor's Representative shall communicate regularly with Design-Builder and shall be vested with the authority to act on behalf of Subcontractor. Subcontractor shall replace its Representative upon the reasonable request of Design-Builder.

     **2.1.3**   Subcontractor shall only communicate with Owner, Design-Builder's Design Consultant or separate contractors of Design-Builder or Owner through Design-Builder.

**2.2**    **Review of Site and Contract Documents.**

     **2.2.1**   Subcontractor represents that it has examined the Site and the Contract Documents prior to executing this Agreement so as to reasonably ascertain the nature of the Work and the various conditions affecting the Work.

     **2.2.2**   Subcontractor shall promptly report to Design-Builder any errors, inconsistencies, omissions, or violations of Legal Requirements that Subcontractor discovers. Subcontractor shall be liable to Design-Builder for any damages resulting from any such errors, inconsistencies, omissions, or violations of Legal Requirements which Subcontractor discovers and fails to report to Design-Builder. Nothing in this Agreement shall be deemed to transfer any design liability from Design-Builder to Subcontractor, unless Subcontractor's scope of Work includes design-assist services or Subcontractor must perform any incidental design in order to satisfy the requirements of this Agreement.

     2.2.3   Subcontractor disclaims any and all liability with respect to latent structural, soil and subsurface conditions and pre-existing contamination of the jobsite.

**2.3**    **Construction Services Generally.**

     **2.3.1**   Subcontractor shall perform all construction services efficiently and with the requisite expertise, skill and competence to satisfy the requirements of the Contract Documents and the Project Schedule.

     **2.3.2**   At the request of Design-Builder, Subcontractor shall attend meetings with Design-Builder, Owner, and/or separate design professionals or contractors of Design-Builder or Owner to discuss design and/or construction issues regarding the Subcontractor's Work as listed in Exhibit B which may arise during the Project.

**2.4**    **Submittals and Substitutions.**

     **2.4.1**   In accordance with the Contract Documents and the Project Schedule, Subcontractor shall submit for Design-Builder's review and approval submittals, including shop drawings,

Exhibit A

product data and samples. Design-Builder shall advise Subcontractor on or before the meeting required by Section 2.1.1 hereof of the submittal requirements for the Project. Any variances with the Construction Documents shall be specifically identified in Subcontractor's submittals or included in Exhibit B. Design-Builder's review and approval shall not relieve Subcontractor of its responsibilities to perform the Work in accordance with the Construction Documents unless Design-Builder expressly approves in writing any such variance in its response to Subcontractor's submittals. Subcontractor shall make any necessary revisions to the submittals requested by Design-Builder.

**2.4.2**   Subcontractor shall not make any substitutions in the Work or procedures or methods specified by Owner, Design-Builder or the Construction Documents for performing the Work unless it first receives written approval for such substitution from Design-Builder.

**2.5**   **Sub-Subcontractors.**

**2.5.1**   Subcontractor shall employ only Sub-Subcontractors who are duly licensed and qualified to perform the Work consistent with the Contract Documents. Subcontractor agrees that each Sub-Subcontractor shall be fully bound to Subcontractor in the same manner as Subcontractor is bound to Design-Builder for all the requirements of the Contract Documents to the extent applicable to the Sub-Subcontractor's scope of Work.

**2.5.2**   Subcontractor assumes responsibility to Design-Builder for the proper performance of the Work of Sub-Subcontractors and any acts and omissions in connection with such performance. Subcontractor shall coordinate the activities of all Sub-Subcontractors. Nothing in this Agreement is intended or deemed to relieve Subcontractor from responsibility for the work performed by its Sub-Subcontractors, or create any legal or contractual relationship between Owner or Design-Builder and any Sub-Subcontractor, including but not limited to any third-party beneficiary rights.

**2.6**   **Work of Others.**

**2.6.1**   Subcontractor agrees to reasonably cooperate with, and coordinate its activities so as not to interfere with, those parties performing work at the Site, including Owner's and Design-Builder's separate contractors, so that the Project can be completed in an orderly and coordinated manner without unreasonable disruption.

**2.6.2**   If any part of the Work depends upon other work performed by Design-Builder, or Design-Builder's or Owner's separate contractors, Subcontractor shall, prior to proceeding with that part of the Work, inspect such other work and promptly notify Design-Builder of any discovered discrepancies or defects that would render it unacceptable for the proper performance of the Work. Subcontractor shall not proceed with such part of the Work without further direction from Design-Builder. Design-Builder shall promptly correct or cause to be corrected any such discrepancy or defect in the other work. Any delay in the performance of the Work caused by the Owner, or for which the Owner is responsible, will be resolved by the application of Section 5.4.1. Except to the extent such discrepancies or defects in such other work are latent, Subcontractor shall be liable for appropriate losses or damages incurred due to any discrepancies or defects in such other work not reported to Design-Builder by Subcontractor.

**2.7**   **Site Cleanup.**

**2.7.1**   Subcontractor shall keep the Site reasonably free from debris, trash and construction wastes resulting from the performance of the Work. Upon Substantial Completion of the Work, or a portion of the Work, Subcontractor shall remove all debris, trash, construction wastes, materials, equipment, machinery and tools arising from the Work or applicable portions thereof to permit Owner to occupy the Project or a portion of the Project for its intended use.

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

**2.8　　　Inspection.**

**2.8.1**　At all reasonable times, Subcontractor shall provide sufficient facilities for inspection of the Work by Design-Builder at the Site and at all locations where portions of the Work are in progress or various stages of completion. When appropriate portions of the Work are ready for inspection, Subcontractor shall notify Design-Builder.

**2.8.2**　When Subcontractor considers that the Work, or a portion thereof that Owner or Design-Builder agrees to accept separately, is Substantially Complete, Subcontractor will notify Design-Builder in writing, and Subcontractor and Design-Builder will jointly inspect all of the Work or a portion thereof performed by Subcontractor. After the inspection, Subcontractor will prepare and submit to Design-Builder in writing a comprehensive punch list of items to be completed or corrected prior to Final Completion. Design-Builder will have ten (10) days from receipt of the punch list to accept, reject, or add items to such punch list. Failure to include an item on such punch list does not alter the responsibility of Subcontractor to complete all Work in accordance with the Contract Documents.

**2.9　　　Patents and Copyrights.**

**2.9.1**　Subcontractor shall pay all license fees and royalties due for items, materials, methods, systems or processes applicable to the Work which are subject to copyrights or patent rights and which are selected by Subcontractor.

**2.10　　Legal Requirements.**

**2.10.1**　Subcontractor shall perform the Work in accordance with all applicable Legal Requirements.

**2.10.2**　The Contract Price and/or the times for completion of the Work shall be adjusted to compensate Subcontractor for the effects, if any, of any changes in the Legal Requirements enacted after the date of the Agreement affecting the performance of the Work, but only to the extent Design-Builder receives a corresponding adjustment from Owner.

**2.11　　Government Approvals and Permits.**

**2.11.1**　Subcontractor shall obtain and pay for the permits, licenses, and government charges included in Exhibit B required for the prosecution of the Work.

**2.11.2**　Subcontractor shall provide reasonable assistance to Design-Builder in obtaining those permits, inspections, approvals and licenses, if any, that are the responsibility of Owner or Design-Builder and related to the Work.

**2.12　　Project Safety and Security.**

**2.12.1**　Subcontractor recognizes the importance of performing the Work in a safe manner so as to prevent damage, injury or loss to (i) all individuals at the Site, whether working or visiting, (ii) the Work, including materials and equipment incorporated into the Work or stored on-Site or off-Site, (iii) the work of others on the Project, and (iv) all other property at the Site or adjacent thereto. Subcontractor assumes responsibility for implementing and monitoring all safety precautions and programs related to the performance of the Work.

**2.12.2**　Subcontractor and Sub-Subcontractors shall comply with all Legal Requirements relating to safety, as well as any Owner-specific and/or Design-Builder-specific safety requirements set forth in the Contract Documents or established for the Project, provided that such Owner-specific and/or Design-Builder-specific requirements do not violate any applicable Legal Requirement.

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

Exhibit A

Subcontractor will immediately report in writing any safety-related injury, loss, damage or accident arising from the Work to Design-Builder's Representative and, to the extent mandated by Legal Requirements, to all government or quasi-government authorities having jurisdiction over safety-related matters involving the Project or the Work.

**2.12.3** Subcontractor shall cooperate with Design-Builder on all security matters and shall promptly comply with any Project security requirements established by Design-Builder. Subcontractor shall at all times conduct all operations under this Agreement in a manner to avoid the risk of loss, theft, or damage by vandalism, sabotage, or other means to any property.

**2.12.4** Subcontractor shall furnish its employees and its Sub-Subcontractors' employees identification badges, approved by Design-Builder, showing Subcontractor's name and employee number. Each employee shall be required to wear his badge in plain sight at all times whenever he is on the Site. Subcontractor, its Sub-Subcontractors, and their employees shall observe all procedures for admission to the Site required by Design-Builder.

**2.12.5** Prior to the start of the Work at the Site, Subcontractor and its Sub-Subcontractors shall submit to Design-Builder a list of all employees to be employed at the Site in connection with the Work under this Agreement. Such list shall include employee's name, and shall be kept current during the course of the Work.

## 2.13 Warranty.

**2.13.1** Subcontractor warrants to Design-Builder that the Work, including all materials and equipment furnished as part of the Work, shall be new unless otherwise specified in the Contract Documents, of good quality, in conformance with the Contract Documents and free of defects in materials and workmanship. Nothing in this warranty is intended to limit any manufacturer's warranty which provides Owner and/or Design-Builder with greater warranty rights than set forth in this Section 2.13 or the Contract Documents. Subcontractor will provide and, if requested, assign to Design-Builder all manufacturers' warranties upon Substantial Completion.

## 2.14 Correction of Defective Work.

**2.14.1** Subcontractor agrees to correct any of the Work that is found not to be in conformance with the Contract Documents, including that part of the Work subject to Section 2.13 hereof, within a period of one (1) year from the date of Substantial Completion of the Work or any portion of the Work, or within such longer period to the extent required by any specific warranty included in the Contract Documents. Where defective Work (and damage to other work resulting therefrom) has been corrected or removed and replaced under this Section 2.14.1, the correction period hereunder with respect to such Work will be extended for an additional period of one (1) year after such correction or removal and replacement has been satisfactorily completed.

**2.14.2** Subcontractor shall, within seven (7) days of receipt of written notice from Design-Builder that the Work is not in conformance with the Contract Documents, take meaningful steps to commence correction of such nonconforming Work, including the correction, removal or replacement of the nonconforming Work and any damage caused to other parts of the Work or the Project affected by the nonconforming Work. If Subcontractor fails to commence the necessary steps within such seven (7) day period, Design-Builder, in addition to any other remedies provided under the Contract Documents, may provide Subcontractor with written notice that Design-Builder will commence correction of such nonconforming Work with its own forces. If Design-Builder does perform such corrective Work, Subcontractor shall be responsible for all reasonable costs incurred by Design-Builder in performing such correction. If the nonconforming Work creates an emergency requiring an immediate response, the seven (7) day period identified herein shall be deemed inapplicable.

Exhibit A

**2.14.3** The one (1) year period referenced in Section 2.14.1 above applies only to Subcontractor's obligation to correct nonconforming Work and is not intended to constitute a period of limitations for any other rights or remedies Design-Builder may have regarding Subcontractor's obligations under the Contract Documents.

**2.15     Start-Up and Training.**

**2.15.1** If required as part of Subcontractor's Work, Subcontractor shall be responsible for the start-up, testing, and commissioning of the Work, and shall train Owner's personnel with respect to the operation and maintenance of the Work.

**2.16     Hazardous Conditions.**

**2.16.1** Subcontractor is responsible for Hazardous Conditions introduced to the Site by itself, Sub-Subcontractors or anyone for whose acts they may be liable. Subcontractor must notify Design-Builder immediately upon the discovery of the presence of any Hazardous Conditions on, or the release of Hazardous Conditions from, the Site. Subcontractor will be responsible for the handling, storage, remediation, or disposal of such Hazardous Conditions (including, but not limited to, any conditions resulting from the presence thereof) in compliance with all applicable Legal Requirements and as directed by Design-Builder.

**2.16.2** Subcontractor shall indemnify, defend and hold harmless Owner, Design-Builder, Design Consultants, and their officers, directors, employees and agents from and against all claims, losses, damages, liabilities, and expenses, including attorneys' fees and expenses, arising out of or resulting from those Hazardous Conditions for which Subcontractor, Sub-Subcontractors or anyone for whose acts they may be liable are responsible under this Agreement.

**2.16.3** Subcontractor and its Sub-Subcontractors will, at their expense, provide suitable facilities to prevent the introduction of any substances or materials into any stream, river, lake or other body of water which may pollute the water or constitute substances or materials deleterious to fish and wildlife.

**2.16.4** Subcontractor and its Sub-Subcontractors will so perform the Work as not to discharge into the atmosphere from any source whatsoever smoke, dust, or other air contaminants in violation of the laws, rules, and regulations of the governmental entities having jurisdiction.

**2.16.5** Nothing furnished by Subcontractor in the performance of the Work or for incorporation into the Work will contain asbestos (i.e. must be "asbestos-free"). Subcontractor must execute and submit a certificate of conformance with this Section in such form as may be required by Design-Builder.

**2.17     Omissions and Misdescriptions**

**2.17.1    In the event Subcontractor discovers** omissions from the drawings or specifications or the misdescription of details of Work which are manifestly necessary to carry out the intent of the Construction Documents, or which are customarily performed, Subcontractor shall immediately bring to the attention of Design-Builder the omission via a Request for Information (RFI) prior to commencement of any work, but shall not relieve the Subcontractor from performing such omitted or misdescribed details of the Work and the Work shall be performed as if fully and correctly set forth and described in the Construction Documents.  Variations in quantities from as-bid shall be brought to the attention of Design-Builder via a Request For Information (RFI) prior to any purchase of materials.

**2.18     Underground Installations**

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

Exhibit A

**2.18.1** Existing underground installations are indicated on the Construction Documents only to the extent such information was discovered by Owner or Design-Builder in preparing the Construction Documents. There is no guarantee as to the accuracy or completeness of such information, and all responsibility for the accuracy and completeness thereof is expressly disclaimed. Subcontractor shall be responsible for discovery of existing underground installations, in advance of excavating or trenching, by contacting all local utilities and by prospecting. Subcontractor's responsibility for locating underground installations is limited to one initial underground verification as noted in Exhibit B. Subcontractor disclaims any and all liability with respect to soil and subsurface conditions, including undocumented or inaccurate location services provided by others.

## 2.19 Publicity

**2.19.1** Subcontractor shall not engage in any advertising, publicity, or other promotional activities which in any way directly or indirectly mentions or refers to this Agreement, the relationship between the parties created thereby or the services and material furnished thereunder, without obtaining the prior written consent of Design-Builder. Subcontractor shall not display any signs, posters, or other advertising matter in or on any part of the Work or around the Site thereof without specific written approval of Design-Builder. The taking of photographs, videotapes, or other visual images of the Site will not be permitted without the prior written approval of Design-Builder.

## 2.20 Labor Requirements

**2.20.1** All employee taxes, wages, and employer contributions imposed by any Union Affiliations, Federal or State laws shall be paid by Subcontractor or its Sub-subcontractors, including all interest and penalties payable under said laws as a result of any noncompliance therewith. Subcontractor shall also indemnify, defend and hold harmless Design-Builder from and against any and all claims, liabilities, and expenses with respect to the foregoing.

# <u>Article 3</u>

## Design-Builder's Services and Responsibilities

### 3.1 Timely Reviews and Approvals.

**3.1.1** Design-Builder shall provide timely reviews and approvals of all submittals within ten (10) Working Days (consistent with the turnaround times set forth in the Project Schedule), or as agreed to by the parties at the meeting required under Section 2.1.1 hereof.

### 3.2 Design-Builder's Representative.

**3.2.1** Design-Builder's Representative shall be responsible for providing Design-Builder-supplied information and approvals in a timely manner to permit Subcontractor to fulfill its obligations under the Contract Documents.

### 3.3 Furnishing of Services and Information.

**3.3.1** Unless expressly stated to the contrary in the Contract Documents, and to the extent Design-Builder has received such items from Owner, Design-Builder shall provide for Subcontractor's information the items listed below. Design-Builder does not warrant the accuracy

or completeness of such items provided, however, that Subcontractor is entitled to rely on these items to the same extent Design-Builder is entitled to rely upon such items in the EPC Agreement:

>**3.3.1.1**  Surveys describing the property, boundaries, topography and reference points for use during construction, including existing service and utility lines (underground and above ground);

>**3.3.1.2**  Geotechnical studies describing subsurface conditions, and other surveys describing other latent or concealed physical conditions at the Site;

>**3.3.1.3**  Temporary and permanent easements, zoning and other requirements and encumbrances affecting land use, or necessary to permit the proper construction of the Project and enable Subcontractor to perform the Work;

>**3.3.1.4**  A legal description of the Site;

>**3.3.1.5**  Record drawings of any existing structures at the Site;

>**3.3.1.6**  Environmental studies, reports and impact statements describing the environmental conditions, including Hazardous Conditions, in existence at the Site;

>**3.3.1.7**  Owner's Project Criteria;

>**3.3.1.8**  All permits, approvals, and licenses, if any, set forth in the Owner's Permit List attached as an exhibit to the EPC Agreement; and

>**3.3.1.9**  Review and submittal of Test and inspection reports as required in Exhibit B.

**3.3.2**    Design-Builder shall provide Subcontractor with a copy of the EPC Agreement, including all exhibits, attachments, and other Contract Documents enumerated and incorporated therein. Such copy may be redacted to preserve business confidential information or any other information that Design-Builder deems proprietary.

**3.3.3**    Intentionally omitted.

**3.3.4**    Design-Builder shall provide Subcontractor with the Project Schedule and appropriate updates thereto.

### 3.4    Notification of Errors.

**3.4.1**    Design-Builder shall notify Subcontractor of any errors, inconsistencies, or omissions Design-Builder discovers in the Work. Notwithstanding anything to the contrary in this Agreement, nothing in this Agreement shall relieve Subcontractor of responsibility for errors, inconsistencies, or omissions in the Work.

### 3.5    Attendance at Design Meetings.

**3.5.1**    Design-Builder shall afford Subcontractor and its Sub-Subcontractors the opportunity to attend all necessary design meetings with Owner, Design-Builder's Design Consultant or others furnishing portions of the design for the Project.

### 3.6      Review and Approval of Submittals.

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

Exhibit A

**3.6.1** Design-Builder shall review and approve submittals, including shop drawings, product data and samples, within fourteen (14) Days after being submitted by Subcontractor. Design-Builder's review and approval of submittals shall be only for the purpose of confirming general conformance with the Construction Documents. Design-Builder's review and approval shall not relieve Subcontractor of its responsibilities to perform the Work in accordance with the Construction Documents unless Design-Builder expressly approves in writing any such variance in its response to Subcontractor's submittals. If revisions are necessary to a submittal prior to Design-Builder's approval, Design-Builder shall inform Subcontractor of any such necessary revisions.

**3.7    Design-Builder's Separate Contractors.**

**3.7.1** Design-Builder is responsible for all work performed on the Project or at the Site by its separate subcontractors under Design-Builder's control. Design-Builder shall contractually require its separate subcontractors to cooperate with, and coordinate their activities so as not to unreasonably interfere with, Subcontractor's ability to timely complete its Work consistent with the Contract Documents.

**3.7.2** Design-Builder, Owner, other contractors and other subcontractors may be working at the Site during the performance of this Agreement and Subcontractor Work or use of certain facilities may be interfered with as a result of such concurrent activities. Design-Builder reserves the right to require Subcontractor to schedule the order of performance of the Work in such a manner as will minimize interference with work of any of the parties involved.

**3.7.3** Subcontractor shall cooperate with Design-Builder and other consultants, contractors, and subcontractors working at the Site, and shall coordinate its Work with the others and shall not delay or hinder in any way the progress of the Work as a whole. Subcontractor shall not commit any act that will interfere with the performance of work by any other consultant, contractor, and subcontractor or by Design-Builder or Owner.

# Article 4

## Ownership of Work Product

**4.1    Work Product.**

**4.1.1** The Subcontractor shall have no ownership and property rights in any drawings, specifications, and other documents and electronic data ("Work Product") furnished by Design-Builder to Subcontractor under this Agreement. Design-Builder shall be granted ownership of all Work Product, if any, furnished by Subcontractor to Design- Builder under this Agreement.

**4.2    Indemnification for Use of Work Product.**

**4.2.1** If either Design-Builder or Subcontractor uses the Work Product furnished to them by the other on any other project, it agrees that it shall do so at its sole risk and without liability or legal exposure to the other party, Owner, or anyone working through them. Such party further agrees that it shall defend, indemnify and hold harmless the other party from and against any and all claims, damages, liabilities, losses and expenses, including attorneys' fees, arising out of or resulting from such use of the Work Product on another project.

# Article 5

## Time of Performance

**5.1** **Date of Commencement.**

    **5.1.1** The Work shall commence five (5) days after Subcontractor's receipt of Design-Builder's Notice to Proceed ("Date of Commencement") unless the parties mutually agree otherwise in writing.

**5.2** **Time of Completion.**

    **5.2.1** Subcontractor shall diligently and continuously prosecute and complete the Work in accordance with the Project Schedule as it may be revised and issued from time to time during the performance of the Work, and any other scheduling requirements listed in the Contract Documents.

    **5.2.2** Subcontractor shall participate and cooperate in the development of schedules and other efforts to achieve timely completion of the Work. Subcontractor shall provide Design-Builder information for the scheduling of the times and sequence of operations required for the Work to meet Design-Builder's overall schedule requirements, shall continuously monitor the Project Schedule, including any revisions thereto, so as to be fully familiar with the timing, phasing and sequence of operation of the Work and of other work on the Project, and shall execute the Work in accordance with the requirements of the Project Schedule including any revisions thereto. Any Owner or Design-Builder directed changes to the scheduling of times, compression, or sequence of operations required for the Work that impact the Subcontractor's cost of performing the Work, including extended general conditions, will be considered a change to the Work and subject to the provisions of Article 12.

    **5.2.3** Subcontractor shall timely perform the various stages of the Work so that Design-Builder can achieve the dates set forth in the Project Schedule, including any revisions thereto.

**5.3** **Time is of the Essence.**

    **5.3.1** Design-Builder and Subcontractor mutually agree that time is of the essence with respect to the dates and times set forth in the Contract Documents and the Project Schedule.

**5.4** **Delays to the Work.**

    **5.4.1** **Owner-Caused Delays**. If Subcontractor is delayed in the performance of the Work due to the acts or omissions of the Owner, or for which Owner is responsible, and Subcontractor demonstrates such delay through a critical path analysis or other such proof that Design-Builder and/or Owner may reasonably require, then Subcontractor's time for performance shall be reasonably extended by Change Order, provided that a corresponding adjustment to Design-Builder's time for performance is made by the Owner under the EPC Agreement. In addition, Subcontractor will also be entitled to an appropriate adjustment of the Contract Price under this Section 5.4.1, provided a corresponding adjustment to Design-Builder's compensation is made by the Owner under the EPC Agreement. Notwithstanding any other provision to the contrary, any disputes between Design-Builder and Subcontractor involving delay and resulting damages that arise out of, or relate to, the acts or omissions by Owner or for which Owner is responsible shall be resolved pursuant to Section 13.3 hereof. Subcontractor's recovery shall be limited to the amount, if any, which Design-Builder, on behalf of Subcontractor, actually receives from Owner on account of such claim. Payment by Owner shall be by an express condition precedent to Design-Builder's duty of payment to Subcontractor.

    **5.4.2** **Force Majeure Events, Hazardous Conditions, & Differing Site Conditions**. If Subcontractor is delayed in the performance of the Work due to Differing Site Conditions (as

Exhibit A

defined in FAR 52.236-2), Hazardous Conditions (other than those for which Subcontractor is responsible under Section 2.16 hereof), or Force Majeure Events, and due to no fault of its own or those for whom Subcontractor is responsible, and Subcontractor demonstrates such delay through a critical path analysis or other such proof that Design-Builder and/or Owner may reasonably require, then Subcontractor's time for performance will be reasonably extended by Change Order, provided that a corresponding adjustment to Design-Builder's time for performance is made by the Owner under the EPC Agreement. In addition, Subcontractor will also be entitled to an appropriate adjustment of the Contract Price under this Section 5.4.2, provided a corresponding adjustment to Design-Builder's compensation is made by the Owner under the Design-Build Agreement. Notwithstanding any other provision to the contrary, any disputes between Design-Builder and Subcontractor involving delay and resulting damages that arise out of, or relate to, Differing Site Conditions, Hazardous Conditions (other than those for which Subcontractor is responsible under Section 2.16 hereof), or Force Majeure Events shall be resolved pursuant to Section 13.3 hereof.

**5.4.3    Design-Builder-Caused Delays.** If Subcontractor's Work is delayed solely as a result of acts or omissions of Design-Builder, and Subcontractor demonstrates such delay through a critical path analysis or other such proof that Design-Builder may reasonably require, then Subcontractor's time for performance will be reasonably extended by Change Order and Design-Builder will be liable to Subcontractor for Subcontractor's actual direct damages caused by Design-Builder. Design-Builder's exercise of its rights to authorize acceleration of the Work shall not constitute a delay, disruption or interference with Subcontractor's Work.

**5.4.4    Subcontractor-Caused Delays**. If the Project is delayed due to the Subcontractor or anyone for whom Subcontractor is responsible, and not due to Design-Builder or Owner, Subcontractor shall compensate and indemnify Design-Builder for all costs and expenses arising from such delay, including any and all costs incurred by the Owner,and/or any liquidated damages or other damages that Owner may assess against Design-Builder which are attributable to Subcontractor or anyone for whom Subcontractor is responsible pursuant with Specific Conditions Section 5.7. In addition, Subcontractor shall, at the direction of Design-Builder and at Subcontractor's own cost and expense, work such overtime and take such other measures as may be necessary to make up for all time lost in the completion of the Work due to such delay.

**5.4.5**    In no event shall Subcontractor be entitled to any extension of time or any damages for any delays, disruptions or interferences caused by Subcontractor or its Sub-Subcontractors. In the event damages incurred by Design-Builder are caused both by Subcontractor and another entity for whose acts or omissions Subcontractor is not liable, Design-Builder will have the right to reasonably apportion said damages amongst the responsible parties.

# Article 6

## Contract Price

**6.1    Contract Price.**

**6.1.1**    Design-Builder shall pay Subcontractor in accordance with Article 6 hereof the sum of _____Fourteen Million Three Hundred Forty One Thousand Two Hundred Eighty One and 00/100_  Dollars (**$14,341,281.00**) ("Contract Price"), subject to adjustments made in accordance with the Contract Documents. Unless otherwise provided in the Contract Documents, the Contract Price is deemed to include all sales, use, consumer and other taxes mandated by applicable Legal Requirements. Design-Builder is not responsible for Subcontractor's bidding or estimating mistakes or miscalculation of market conditions.

**6.2    Markups for Changes.**

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

Exhibit A

**6.2.1** If the Contract Price requires an adjustment due to changes in the Work, and the cost of such changes is determined under Sections 12.6.1.3 or 12.6.1.4 hereof, the following markups shall be allowed on such changes:

**6.2.1.1** For additive Change Orders, including additive Change Orders arising from both additive and deductive items, it is agreed that Subcontractor shall receive a Fee of _____ _____ ten _____ percent (_____ 10 _____%) of the additional Costs of the Work incurred for that Change Order.

**6.2.1.2** For deductive Change Orders, including deductive Change Orders arising from both additive and deductive items, the deductive amounts shall include:

*[Check one box only]*

☐     No additional reduction to account for Subcontractor's Fee or any other markup.

**or**

☒     An amount equal to the sum of: (a) _____ ten _____percent (_____ 10 _____ %) applied to the direct costs of the net reduction (which amount will account for a reduction associated with Subcontractor's Fee).


# Article 7

## Procedure for Payment

**7.1**    **Schedule of Values.**

**7.1.1**    Unless required by Design-Builder upon execution of this Agreement, within ten (10) days of execution of the Agreement, Subcontractor shall submit for Design-Builder's review and approval a Schedule of Values for all of the Work. The Schedule of Values will (i) subdivide the Work into its respective parts; (ii) include values for all items comprising the Work; and (iii) serve as the basis for monthly progress payments made to Subcontractor throughout the Work.

**7.2**    **Progress Payments.**

**7.2.1**    Beginning with the first month after the Date of Commencement, Subcontractor shall submit on the twenty-eighth (28th) day of each month for Design-Builder's review and approval, Subcontractor's Application for Payment requesting payment for all Work performed as of the date of the Application for Payment. The Application for Payment shall be accompanied by all supporting documentation required by the Contract Documents and/or established at the meeting required by Section 2.1.1 hereof, including Subcontractor's Schedule of Values as approved by Design-Builder. As a prerequisite for any payment, Subcontractor must provide with each progress invoice a completed Conditional/Unconditional Waiver and Release on Progress Payment form, as appropriate (attached as **Exhibit C1 and C2**) from Subcontractor and its Sub-subcontractors and suppliers that have filed a Preliminary Notice.  Design-Builder will submit Subcontractor's proper Application for Payment to Owner with Design-Builder's Application. Each Application for Payment shall also show the amount of all previous payments to Subcontractor and the amount of current retainage, and shall include evidence satisfactory to Design-Builder demonstrating that Subcontractor has paid all persons supplying labor, materials or services in accordance with its contractual obligations to these persons in connection with the Work. "Current retainage" shall be calculated by multiplying the value of the Work completed and qualified for payment by the retainage percentage.

**7.2.2**   The Application for Payment may request payment for equipment and materials not yet incorporated into the Project, provided that (i) Design-Builder is satisfied that the equipment and materials are suitably stored at either the Site or another acceptable location, (ii) the equipment and materials are protected by suitable insurance, and (iii) upon payment, Design-Builder will receive the equipment and materials free and clear of all liens and encumbrances.

**7.2.3**   The Application for Payment shall constitute Subcontractor's representation that the Work has been performed consistent with the Contract Documents, has progressed to the point indicated in the Application for Payment, and that title to all Work will pass to Owner free and clear of all claims, liens, encumbrances, and security interests upon the incorporation of the Work into the Project, or upon Subcontractor's receipt of payment, whichever occurs earlier.

**7.2.4**   Design-Builder shall make payment on Subcontractor's properly submitted and accurate Application for Payment within seven (7) days after Design-Builder's receipt of payment from Owner on account of Subcontractor's monthly Application for Payment, but in each case less the total of payments previously made, and less amounts properly withheld under this Agreement. Payment terms not to exceed 30 days from approved invoice date.  Balances outstanding after 45 days shall accrue interest at a rate of 1.5% per month.

**7.3**   **Retainage on Progress Payments.**

**7.3.1**   Design-Builder will retain from each of Subcontractor's Application for Payment _____ _____five_____ percent (_____5_____%). Unless mutually agreed otherwise between the parties, retainage will be included in Design-Builder's final payment to Subcontractor, provided Design-Builder has received such retained amounts from Owner and the Design-Builder agrees that Subcontractor has met all of its obligations under the Agreement.

**7.4**   **Withholding of Payments.**

**7.4.1**   If Design-Builder determines that Subcontractor is not entitled to all or part of an Application for Payment, it will notify Subcontractor prior to the date payment is due. The notice shall indicate the specific amounts Design-Builder intends to withhold, the reasons for the withholding, and the specific measures Subcontractor must take to rectify Design-Builder's concerns. Design-Builder and Subcontractor will attempt to resolve Design-Builder's concerns prior to the date payment is due. If the parties cannot resolve such concerns, Design-Builder shall pay Subcontractor the undisputed amount of the Application for Payment, and Subcontractor may pursue its rights under the Contract Documents, including those under Article 13 hereof.

**7.4.2**   In addition, any amounts otherwise payable under the Agreement may be withheld, in whole or in part, if (i) any claims or backcharges against Subcontractor by Design-Builder or third parties remain unpaid; or (ii) Subcontractor or its insurance company refuse to promptly defend Design-Builder or Owner for any claim that Subcontractor is required to defend and indemnify Design-Builder and/or Owner under this Agreement.

**7.4.3**   Design-Builder will pay such withheld payments if Subcontractor (i) pays, satisfies, or discharges any claim of Design-Builder, or third party against Subcontractor, arising out of or in any way connected with this Agreement; or (ii) cures all defaults in the performance of the Agreement.

**7.5**   **Final Payment.**

**7.5.1**   Subcontractor shall submit its Final Application for Payment to Design-Builder in accordance with Section 7.5.2 below. Design-Builder shall make payment on Subcontractor's properly submitted and accurate Final Application for Payment within thirty (30) days after

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

Exhibit A

Design-Builder's receipt of final payment from Owner on account of Subcontractor's Final Application for Payment, but in no event later than thirty (30) days from the date of the Certification of Completion for Final Payment, provided also that Subcontractor has satisfied the requirements for final payment set forth in Section 7.5.2 below.

**7.5.2** At the time of submission of its Final Application for Payment, Subcontractor shall provide the following information:

**7.5.2.1** Subcontractor's Conditional Waiver Upon Final Payment, and Certification of Completion for Final Payment

**7.5.2.2** Any other data required by Design-Builder;

**7.5.2.3** Consent of Subcontractor's surety, if any, to final payment;

**7.5.2.4** All operating manuals, warranties and other deliverables required by the Contract Documents;

**7.5.2.5** Certificates of insurance confirming that required coverages will remain in effect consistent with the requirements of the Contract Documents.

**7.5.2.6** As-built drawings, if required by the Contract Documents; and

**7.5.2.7** Completion of Design-Builder's required closeout procedures including, but not limited to, completion of all punch list items developed as required by Section 2.8.2 of this Agreement.

**7.5.3** Subcontractor shall submit its Final Application for Payment promptly upon completion of the Work, but in no event later than sixty (60) days from Final Completion of the Work. Design-Builder will have no responsibility or liability for payment to Subcontractor if Subcontractor fails to submit its final invoice within the sixty (60) day period. The final payment, however, shall not relieve the Subcontractor from any responsibility or obligation under this Agreement (including, without limitation, the warranty and indemnification provisions thereof) or constitute a waiver of any claim by Design-Builder against Subcontractor.

**7.6     Pay When Paid.**

**7.6.1** Intentionally Omitted.

**7.7     Intentionally Omitted**.

**7.8     Advance Payments.**

**7.8.1** Design-Builder has the right, at its sole option, to advance any payment due Subcontractor under this Agreement.

**7.9     Payment Not Acceptance.**

**7.9.1** No payment to Subcontractor under this Agreement shall be evidence of, or construed to be, acceptance of defective, faulty, improper or non-conforming work.

**7.10     Subcontractor's Payment Obligations.**

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

Exhibit A

**7.10.1** Subcontractor will pay its Sub-Subcontractors, in accordance with its contractual obligations to such parties, all the amounts Subcontractor has received from Design-Builder on account of their work. Subcontractor will impose similar requirements on its Sub-Subcontractors to pay those parties with whom they have contracted. Subcontractor will indemnify and defend Owner and Design-Builder against any claims for payment and mechanic's liens as set forth in Section 11.3 hereof, providing Design-Builder is not in breach of its contractual obligations to make payment to Subcontractor for its Work.

**7.11      Record Keeping and Finance Controls.**

**7.11.1** With respect to changes in the Work performed on a cost basis by Subcontractor pursuant to the Contract Documents, Subcontractor shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management, using accounting and control systems in accordance with generally accepted accounting principles and as may be provided in the Contract Documents. During the performance of the Work and for a period of three (3) years after final payment of the Work, Design-Builder and Design-Builder's accountants shall be afforded access to and the right to audit from time-to-time, upon reasonable notice, Subcontractor's records, books, correspondence, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to the changes in the Work, all of which Subcontractor shall preserve for a period of three (3) years after final payment. Such inspection shall take place at Subcontractor's offices during normal business hours unless another location and time is agreed to by the parties. Any multipliers or markups agreed to by Subcontractor and Design-Builder as part of this Agreement are only subject to audit to confirm that such multiplier or markup has been charged in accordance with this Agreement, with the composition of such multiplier or markup not being subject to audit.

**7.12      Sub-subcontractors, Suppliers, and Vendors.**

**7.12.1** Subcontractor must (if requested by Design-Builder) furnish an affidavit showing the names and addresses of all persons or companies who have furnished labor, materials or services for the Work and the amount due or to become due to each such person. If Subcontractor fails to promptly pay its Sub-Subcontractors or vendors for all labor, services, and materials furnished in connection with the performance of the Work, in accordance with its contractual obligations to such parties, Design-Builder may, after five (5) days written notice to Subcontractor, pay the amount of such liabilities directly to such parties or in the form of checks payable jointly to Subcontractor and such person or company and recover the amount from Subcontractor directly, or by the application of any portion of the Contract Price due. Subcontractor will (if requested by Design-Builder), provide affidavits from all persons furnishing labor, materials or services to the effect that they have been paid in full.

**7.13      No Diversion of Funds or False Vouchers.**

**7.13.1** Subcontractor is directed to comply with all statutory provisions which prohibit the wrongful diversion of funds or the submission of false vouchers.  Further, if Subcontractor diverts any funds received in payment under this Agreement and does not apply them to their intended purpose or submits false vouchers for payment, in addition to all other remedies, this Agreement shall be subject to termination for cause without any opportunity to cure.

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

Exhibit A

**7.14**  **Invoicing**

  7.14.1  Invoices shall be submitted only electronically via email in Adobe PDF format to:

  - USAPImaging@aecom.com  (AECOM Accounts Payable)
  - steven.petto@aecom.com  (AECOM Project Manager)
  - ocie.williams@aecom.com  (AECOM Procurement Manager)

  Invoices shall include the following information:

  - Oracle Purchase Order Number:  *to be determined after award*
  - AECOM Project Number:  60482831
  - AECOM Task Number:  01.30.030
  - Documentation, e.g., an annotated, signed and scanned Schedule of Values, from the AECOM Site Manager (Pat Elliott) attesting that the scheduled work has been completed and that all work covered by the invoice has been satisfactorily completed.

# Article 8

## Stop Work and Termination

**8.1**  **Design-Builder's Right to Stop Work.**

  **8.1.1**  Design-Builder may, without cause and for its convenience, order Subcontractor in writing to stop and suspend the Work. Such suspension shall not exceed sixty (60) consecutive days or aggregate more than ninety (90) Days during the duration of the Project.

  **8.1.2**  Subcontractor is entitled to seek an adjustment of the Contract Price and/or times for completion of the Work if its cost or time to perform the Work has been adversely impacted by any suspension or stoppage of work by Design-Builder. However, under no circumstances will Subcontractor be entitled to any adjustment if such suspension or stoppage of work is caused by Subcontractor's breach of this Agreement, wrongful acts, or failure to act. Notwithstanding anything to the contrary herein, if Design-Builder's suspension of the Work is the result of Owner's suspension of Design-Builder's work under the EPC Agreement, then Design-Builder shall pay Subcontractor only those amounts Design-Builder actually receives from Owner on account of the Work.

**8.2**  **Design-Builder's Right to Terminate for Convenience.**

  **8.2.1**  Upon ten (10) days' written notice to Subcontractor, Design-Builder may, for its convenience and without cause, elect to terminate this Agreement. In such event, Design-Builder shall have the right to use the existing Work Product, including all materials onsite and offsite in Subcontractor's prefabrication facilities, if any, for purposes of completing the Project, and shall pay Subcontractor for the following:

  **8.2.1.1** All Work executed and all unpaid costs or expenses incurred by the Subcontractor in connection with the executed Work; and

  **8.2.1.2** The reasonable costs and expenses attributable to such termination, including amounts due in settlement of terminated contracts with Sub-Subcontractors or suppliers. In no event will Subcontractor be entitled to any compensation for loss of anticipated profits, opportunity costs, unallocated overhead on Work not performed, or other amounts with respect to Work that has not been performed prior to termination.

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

Exhibit A

**8.2.2**    If Design-Builder's termination of Subcontractor for convenience is the result of Owner's termination of Design-Builder for convenience under the Design-Build Agreement, then Design-Builder shall pay Subcontractor only those amounts Design-Builder actually receives from Owner on behalf of Subcontractor.

**8.3**        **Design-Builder's Right to Terminate for Cause.**

**8.3.1**    If Subcontractor persistently fails to (i) provide a sufficient number of skilled workers, (ii) supply the materials required by the Contract Documents, (iii) comply with applicable Legal Requirements, (iv) timely pay, without cause, its Sub-Subcontractors, (v) prosecute the Work with promptness and diligence to ensure that the Work is completed in accordance with the Project Schedule, as such schedule may be adjusted, or (vi) perform material obligations under the Contract Documents, then Design-Builder shall have the rights, in addition to any other rights and remedies provided in the Contract Documents or by law, set forth in Sections 8.3.2 and 8.3.3 below.

**8.3.2**    Upon the occurrence of an event set forth in Section 8.3.1 above, Design-Builder may provide written notice to Subcontractor that it intends to terminate the Agreement unless the problem cited is cured, or commenced to be cured, within five (5) days of Subcontractor's receipt of such notice. If Subcontractor fails to cure, or reasonably commence to cure, such problem, then Design-Builder may declare the Agreement terminated for default by providing written notice to Subcontractor of such declaration.

**8.3.3**    Upon declaring the Agreement terminated pursuant to Section 8.2.1 or 8.3.2 above, Design-Builder may enter upon the premises and take possession, for the purpose of completing the Work, of all materials thereon, which have been purchased or provided for the performance of the Work, all of which Subcontractor hereby transfers, assigns and sets over to Design-Builder for such purpose, and to employ any person or persons to complete the Work and provide all of the required labor, services, materials, equipment and other items. In the event of termination pursuant to Section 8.3.2, Subcontractor shall not be entitled to receive any further payments under the Contract Documents until the Work shall be finally completed in accordance with the Contract Documents. If the Design-Builder incurs any attorneys' fees and expenses in defense of claims arising from Subcontractor's default, subject to the waiver of consequential damages set forth in Section 13.7 hereof, these costs may be deducted from any amounts due to Subcontractor by the Design-Builder.

**8.3.4**    If Design-Builder improperly terminates the Agreement for cause, the termination for cause will be converted to a termination for convenience in accordance with the provisions of Section 8.2 of the Agreement.

**8.4**        **Subcontractor's Right to Stop Work.**

**8.4.1**    If Design-Builder fails to pay any undisputed amounts due Subcontractor under this Agreement, Subcontractor may, in addition to any other rights afforded under the Contract Documents or at law, stop work in accordance with Section 8.4.2. However, to the extent Design-Builder's failure to pay is related to a dispute between the Parties, the dispute will be resolved in accordance with Article 13 and the parties will continue performance in accordance with Section 13.6 during the pendency of such dispute.

**8.4.2**    Subcontractor shall provide Design-Builder with written notice that Subcontractor will stop work unless said failure to pay the undisputed amount is cured within seven (7) Days from Design-Builder's receipt of Subcontractor's notice. If Design-Builder does not cure the problem within such seven (7) day period, Subcontractor may stop work. In such case, Subcontractor shall be entitled to make a claim for adjustment to the Contract Price and the times for completion of the Work to the extent it has been adversely impacted by such stoppage.

Page **21**

**8.5　Subcontractor's Right to Terminate For Cause.**

**8.5.1**　Subcontractor, in addition to any other rights and remedies afforded under the Contract Documents or at law, may terminate the Agreement for cause in accordance with Section 8.5.2 below if Design-Builder fails to cure the problems set forth in Section 8.4.1 above within thirty (30) days after Subcontractor has stopped the work.

**8.5.2**　Upon the occurrence of the event set forth in Section 8.5.1 above, Subcontractor may provide written notice to Design-Builder that it intends to terminate the Agreement unless the problem cited is cured, or commenced to be cured, within seven (7) days of Design-Builder's receipt of such notice. If Design-Builder fails to cure, or reasonably commence to cure, such problem, then Subcontractor may give a second written notice to Design-Builder of its intent to terminate within an additional seven (7) day period. If Design-Builder, within such second seven (7) day period, fails to cure, or reasonably commence to cure, such problem, then Subcontractor may declare the Agreement terminated for default by providing written notice to Design-Builder of such declaration. In such case, Subcontractor shall be entitled to recover in the same manner as if Design-Builder had terminated this Agreement for its convenience under Section 8.2 of the Agreement, plus any attorney's fees or costs incurred in defense of claims.

**8.6　Bankruptcy of Design-Builder or Subcontractor.**

**8.6.1**　If either Design-Builder or Subcontractor institutes or has instituted against it a case under the United States Bankruptcy Code (such party being referred to as the "Bankrupt Party"), such event may impair or frustrate the Bankrupt Party's ability to perform its obligations under the Contract Documents. Accordingly, should such event occur:

**8.6.1.1**　The Bankrupt Party, its trustee or other successor, shall furnish, upon request of the non-Bankrupt Party, adequate assurance of the ability of the Bankrupt Party to perform all future material obligations under the Contract Documents, which assurances shall be provided within ten (10) days after receiving notice of the request; and

**8.6.1.2**　The Bankrupt Party shall file an appropriate action within the bankruptcy court to seek assumption or rejection of the Agreement within sixty (60) days of the institution of the bankruptcy filing and shall diligently prosecute such action.

**8.6.1.3**　If the Bankrupt Party fails to comply with its foregoing obligations, the non-Bankrupt Party shall be entitled to request the bankruptcy court to reject the Agreement, declare the Agreement terminated and pursue any other recourse available to the non-Bankrupt Party under this Article 8.

**8.6.2**　The rights and remedies under Section 8.6.1 above shall not be deemed to limit the ability of the non-Bankrupt Party to seek any other rights and remedies provided by the Contract Documents or by law, including its ability to seek relief from any automatic stays under the United States Bankruptcy Code.

# Article 9

## Representatives of the Parties

**9.1　Design-Builder's Representatives.**

**9.1.1**　Design-Builder designates the individual listed below as its Senior Representative ("Design-Builder's Senior Representative"), which individual has the authority and responsibility

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

for avoiding and resolving disputes under Section 13.4 of the Agreement: *(Identify individual's name, title, address and telephone numbers)*

Shawn Kelly
Vice President
300 Lakeside Drive, Suite 400
Oakland, CA 94612
(858) 775-6523

**9.1.2** Design-Builder designates the individual listed below as its Design-Builder's Representative, which individual has the authority and responsibility set forth in Section 3.2 of the Agreement: *(Identify individual's name, title, address and telephone numbers)*

Steve Petto
Associate Vice President
300 Lakeside Drive, Suite 400
Oakland, CA 94612
(510) 847-5008

**9.2** **Subcontractor's Representatives.**

**9.2.1** Subcontractor designates the individual listed below as its Senior Representative ("Subcontractor's Senior Representative"), which individual has the authority and responsibility for avoiding and resolving disputes under Section 13.4 of the Agreement: *(Identify individual's name, title, address and telephone numbers)*

Mason Evans
President
2311 E. 1st Street
Vancouver, WA 98661
360-905-1387

**9.2.2** Subcontractor designates the individual listed below as its Subcontractor's Representative, which individual has the authority and responsibility set forth in Section 2.1.2 of the Agreement: *(Identify individual's name, title, address and telephone numbers)*

Steve Lennon
Senior Project Manager
2311 E. 1st Street
Vancouver, WA 98661
360-905-1372

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

Exhibit A

# Article 10

## Insurance and Bonds

**10.1      Subcontractor's Insurance Requirements.**

    **10.1.1**  Subcontractor is responsible for procuring and maintaining, from insurance companies authorized to do business in the state in which the Project is located, the insurance coverages set forth in the **Exhibits A, A1 and A2** to this Agreement, with the minimum ratings set forth in said Exhibits, for certain claims which may arise from or out of the performance of this Agreement and obligations under the Contract Documents.

    **10.1.2**  Subcontractor shall require its Sub-Subcontractors to procure and maintain, from insurance companies authorized to do business in the state in which the Project is located, the insurance coverages set forth in the Insurance Exhibit.

    **10.1.3**  Subcontractor's and its Sub-Subcontractors' insurance coverage set forth in the Insurance Exhibit shall specifically delete any design-build or similar exclusions that could compromise coverages because of the design-build delivery of the Project.

    **10.1.4**  Prior to commencing any services hereunder, Subcontractor shall provide Design-Builder with certificates evidencing that (i) all insurance obligations required by the Contract Documents are in full force and in effect and will remain in effect for the duration required by the Contract Documents and (ii) no insurance coverage will be canceled by the insurer unless at least thirty (30) days prior written notice is given to Design-Builder by the Subcontractor or its Sub-Subcontractor, except for cancellation due to non-payment of premium.

    **10.1.5**  Except for Workers' Compensation, Employer's Liability, and Professional Liability Insurance, the insurance policies required herein shall list Design-Builder, and any other entities required by the Contract Documents, if any, as an additional insured.

    **10.1.6**  If any of the foregoing coverages are required to remain in force after final payment, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment.

**10.2      Property Insurance.**

    **10.2.1**  In accordance with the Contract Documents, Owner or Design-Builder shall procure and maintain property insurance upon the entire Project.

**10.3      Waiver of Subrogation.**

    **10.3.1**  Design-Builder and Subcontractor waive against each other and Owner, Sub-Subcontractors, Design Consultants, Owner's or Design-Builder's separate contractors, agents and employees of each and all of them, all damages covered by property insurance provided herein, except such rights as they may have to the proceeds of such insurance. Design-Builder and Subcontractor shall, where appropriate, require similar waivers of subrogation from Design Consultant and Sub-Subcontractors and separate contractors of Design-Builder, and shall require each of them to include similar waivers in their contracts. These waivers of subrogation shall not contain any restriction or limitation that will impair the full and complete extent of its applicability to any person or entity unless agreed to in writing prior to the execution of this Agreement.

**10.4      Bonds and Other Performance Security.**

**10.4.1**  Subcontractor shall provide and Design-Builder shall reimburse Subcontractor for Performance and Payment Bonds each in the amount of one hundred percent (100%) of the Contract Price ("Bonds") in the form prescribed in **Exhibit F.** The Bonds shall be delivered to Design-Builder not later than ten (10) days after award of this Agreement. Subcontractor will not be issued the notice-to-proceed until after Design-Builder receives the Bonds. Such Bonds shall be executed as surety by an entity acceptable to Design-Builder and authorized to issue surety bonds in the state where the Work is to be performed. Subcontractor is solely liable for any delays caused by its failure to provide the Bonds.

# Article 11

## Indemnification

**11.1      Patent and Copyright Infringement.**

**11.1.1**  Subcontractor shall defend any action or proceeding brought against Owner or Design-Builder based on any claim that the Work, or any part thereof, or the operation or use of the Work or any part thereof, constitutes infringement of any United States patent or copyright, now or hereafter issued. Design-Builder shall give prompt written notice to Subcontractor of any such action or proceeding and will reasonably provide authority, information and assistance in the defense of same. Subcontractor shall indemnify and hold harmless Owner and Design-Builder from and against all damages and costs, including but not limited to attorneys' fees and expenses awarded against Owner or Design-Builder in any such action or proceeding. Subcontractor agrees to keep Design-Builder informed of all developments in the defense of such actions.

**11.1.2**  If Owner is enjoined from the operation or use of the Work, or any part thereof, as the result of any patent or copyright suit, claim, or proceeding, Subcontractor shall at its sole expense take reasonable steps to procure the right to operate or use the Work. If Subcontractor cannot so procure such right within a reasonable time, Subcontractor shall promptly, at Subcontractor's option and at Subcontractor's expense, (i) modify the Work so as to avoid infringement of any patents, or copyrights, or (ii) replace said Work with Work that does not infringe or violate any such patent or copyright.

**11.1.3**  Sections 11.1.1 and11.1.2 above shall not be applicable to any suit, claim or proceeding based on infringement or violation of a patent or copyright (i) relating to a particular process or product of a particular manufacturer specified by Owner or Design-Builder or (ii) arising from modifications to the Work by Owner or Design-Builder after acceptance of the Work.

**11.1.4**  The obligations set forth in this Section 11.1 shall constitute the sole agreement between the parties relating to liability for infringement or violation of any patent or copyright.

**11.2      Intentionally Omitted.**

**11.3      Payment Claim Indemnification.**

**11.3.1**  Providing that Design-Builder is not in breach of its contractual obligation to make payments to Subcontractor for the Work, Subcontractor shall indemnify, defend and hold harmless Owner and Design-Builder from any claims or mechanic's liens brought against Owner, Design-Builder, or against the Project as a result of the failure of Subcontractor, or those for whose acts it is responsible, to pay for any services, materials, labor, equipment, taxes or other items or obligations furnished or incurred for, or in connection with the Work. Within three (3)

days of receiving written notice from Design-Builder that such a claim or mechanic's lien has been filed, Subcontractor shall commence to take the steps necessary to discharge said claim or lien, including, if necessary, the furnishing of a mechanic's lien bond. If Subcontractor fails to do so, Design-Builder will have the right to discharge the claim or lien and hold Subcontractor liable for costs and expenses incurred, including attorneys' fees.

**11.4    Subcontractor's General Indemnification.**

**11.4.1**   Subcontractor, to the fullest extent permitted by law, shall indemnify, hold harmless and defend Owner, Design-Builder, their officers, directors, employees and agents from and against any and all causes of action, demands, claims, losses, damages, and liabilities whatsoever, including attorneys' fees and expenses, including, but not limited to, claims for bodily injury, sickness or death, and property damage or destruction resulting from the acts, errors or omissions of Subcontractor, Sub-Subcontractors, anyone employed directly or indirectly by any of them or anyone for whose acts any of them may be liable. Subcontractor's provision of indemnification shall be limited to damages to property and personal injury and shall be limited solely to the extent of the Subcontractor's negligence.

**11.4.2**   If an employee of Subcontractor, anyone employed directly or indirectly by Subcontractor or anyone for whose acts any of them may be liable has a claim against any party indemnified pursuant to Section 11.4.1 above, Subcontractor's indemnity obligation set forth in Section 11.4.1 above shall not be limited by any limitation on the amount of damages, compensation or benefits payable by or for Subcontractor, Sub-Subcontractors, or other entity under any employee benefit acts, including workers' compensation or disability acts.

**11.4.3**   Whenever any suit or other proceeding which involves any matter with respect to which the indemnification provisions of this Section 11.4 are applicable shall be brought against Owner, Design-Builder, or any of their officers, directors, employees, and agents, Subcontractor, to the extent of its negligence, shall upon receipt of timely notice of the institution of such suit or other proceedings assume the defense thereof and defend the same at Subcontractor's own expense and pay any and all costs, charges, attorneys' fees and other expenses and any and all judgments that may be incurred by or obtained against Owner, Design-Builder, or any of their officers, directors, employees, and agents, in such suits or other proceedings, and if any judgment or other lien shall be placed upon or obtained against the property of Owner, Design-Builder, or any of their officers, directors, employees, and agents in or as a result of such suits or other proceedings, Subcontractor shall at once cause the same to be released and discharged by giving bond or otherwise. Owner and Design-Builder shall have the right to approve counsel retained by Subcontractor and to participate in and be informed of the status of any suit or other proceeding.

**11.5    Intentionally Omitted.**


# <u>Article 12</u>

## Changes to the Contract Price and Time

**12.1    Owner-Generated Changes.**

**12.1.1**   If Owner issues changes affecting the Work, Subcontractor agrees, if directed by Design-Builder, to meet with Design-Builder and Owner to review and discuss the changes. Subcontractor shall only be entitled to adjustments in its Contract Price and the times for

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

Exhibit A

completion of the Work attributable to such Owner-generated changes to the extent Design-Builder actually receives such adjustments from Owner. If Subcontractor disputes the adjustment, such dispute shall be resolved pursuant to Section 13.3 of this Agreement. Notwithstanding anything to the contrary in this Article, in order to be entitled to a Change Order, Subcontractor must provide Design-Builder with sufficient details of its proposed Change Order cost breakdown allowing Design-Builder to evaluate the proposed Change Order, or as may otherwise be required or requested by Owner or as required by the EPC Agreement.

**12.2      Design-Builder Generated Changes.**

**12.2.1**   Changes to the Work issued by Design-Builder shall be governed by the provisions set forth in the following sections of this Article 12.

**12.3      Change Orders.**

**12.3.1** A Change Order is a written instrument issued after execution of the Agreement signed by Design-Builder and Subcontractor, stating their agreement upon all of the following:

**12.3.1.1**   The scope of the change in the Work;

**12.3.1.2**   The amount of the adjustment to the Contract Price;

**12.3.1.3**   The extent of the adjustment to the times for completion of the Work; and

**12.3.1.4**   Such other details, information, or items as may be required or requested by Design-Builder or Owner.

**12.3.2**   All changes in the Work authorized by applicable Change Order shall be performed under the applicable conditions of the Contract Documents. Subcontractor will comply with the change request procedures set forth in the EPC Agreement, including the provision of timely notice sufficient to allow Design-Builder to comply with the notice requirements of the EPC Agreement. Design-Builder and Subcontractor shall negotiate, in good faith and as expeditiously as possible, the appropriate adjustments for such changes.  The parties shall mutually agree upon any changes to scope of Work, schedule or price.  In the event that cumulative change orders equal or exceed ten percent (10%) of the Contract Price, Subcontractor reserves the right to recover additional general conditions and applicable overhead expense.  Subcontractor reserves all rights and remedies for damages and losses incurred by reason of delay by others.

**12.4      Work Change Directives.**

**12.4.1**   A Work Change Directive is a written order prepared and signed by Design-Builder directing a change in the Work prior to agreement on an adjustment in the Contract Price and/or the times for completion of the Work.

**12.4.2**   Design-Builder and Subcontractor shall negotiate, in good faith and as expeditiously as possible, the appropriate adjustments for the Work Change Directive. Upon reaching an agreement, the parties shall prepare and execute an appropriate Change Order reflecting the terms of the agreement.

**12.5      Minor Changes in the Work.**

**12.5.1**   Minor changes in the Work are changes that do not involve an adjustment in the Contract Price and/or times for completion of the Work and do not materially and adversely affect the

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

Work, including the design, quality, performance and workmanship required by the Contract Documents. Design-Builder may make minor changes in the Work consistent with the intent of the Contract Documents, provided, however, that Design-Builder shall promptly inform Subcontractor of any such changes.

### 12.6    Contract Price Adjustment.

**12.6.1**   The increase or decrease in Contract Price resulting from a change in the Work shall be determined by one or more of the following methods:

**12.6.1.1**   Unit prices set forth in the Agreement or as subsequently agreed between the parties;

**12.6.1.2**   A mutually accepted, lump sum, properly itemized and supported by sufficient substantiating data to permit evaluation by Design-Builder;

**12.6.1.3**   Costs, fees and any other markups set forth in the Agreement; and

**12.6.1.4**   If an increase or decrease cannot be agreed to as set forth in items 12.6.1.1 through 12.6.1.3 above and Design-Builder issues a Work Change Directive, the cost of the change of the Work shall be determined by the reasonable expense and savings in the performance of the Work resulting from the change, including a reasonable overhead and profit, as may be set forth in this Agreement. If the net result of both additions and deletions to the Work is an increase in the Contract Price, reasonable overhead and profit shall be calculated on the basis of the net increase to the Contract Price. Subcontractor shall maintain a documented, itemized accounting evidencing the expenses and savings associated with such changes.

**12.6.2**   If unit prices are set forth in the Contract Documents or are subsequently agreed to by the parties, but application of such unit prices will cause substantial inequity to Design-Builder or Subcontractor because of differences in the character or quantity of such unit items as originally contemplated, such unit prices shall be equitably adjusted solely in accordance with the EPC Agreement.

**12.6.3**   If Design-Builder and Subcontractor disagree upon whether Subcontractor is entitled to be paid for any services required by Design-Builder, or if there are any other disagreements over the scope of Work or proposed changes to the Work or the times for completion of the Work, Design-Builder and Subcontractor shall resolve the disagreement pursuant to Article 13 hereof. As part of the negotiation process, Subcontractor shall furnish Design-Builder with a good faith estimate of the costs to perform the disputed services and the increase or decrease in the time to complete the changes to the Work in accordance with Design-Builder's interpretations. If the parties are unable to agree and Design-Builder expects Subcontractor to perform the services in accordance with Design-Builder's interpretations, Subcontractor shall proceed to perform the disputed services, conditioned upon Design-Builder issuing a written order to Subcontractor (i) directing Subcontractor to proceed and (ii) specifying Design-Builder's interpretation of the services that are to be performed.

### 12.7    Emergencies.

**12.7.1**   In any emergency affecting the safety of persons and/or property, Subcontractor shall act, at its discretion, to prevent threatened damage, injury or loss. Any change in the Contract

Price and/or times for completion of the Work on account of emergency work shall be determined as provided in this Article 12.

# Article 13

## Contract Adjustments and Disputes

**13.1**      **Requests for Contract Adjustments and Relief.**

**13.1.1**  If either Subcontractor or Design-Builder believes that it is entitled to relief against the other for any event arising out of or related to the Work or the Project, such party shall provide written notice to the other party of the basis for its claim for relief. Such notice shall be in accordance with specific notice requirements contained in applicable sections of the Contract Documents and, if possible, be made prior to incurring any cost or expense. Subcontractor shall provide Design-Builder written notice of claims for which Owner or the Design-Builder may be responsible in sufficient time for Design-Builder to meet its notice requirements to Owner set forth in the Contract Documents. In the absence of any specific notice requirement, written notice shall be given within a reasonable time, not to exceed ten (10) days, after the occurrence giving rise to the claim for relief or after the claiming party reasonably should have recognized the event or condition giving rise to the request, whichever is later. Such notice shall be in accordance with the Contract Documents and shall include sufficient information to advise the other party of the circumstances giving rise to the claim for relief, the specific contractual adjustment or relief requested and the basis of such request. Subcontractor shall comply with all documentation requirements set forth in the EPC Agreement when submitting its claim to Design-Builder.

**13.2**      **Dispute Avoidance and Resolution.**

**13.2.1**  The parties are fully committed to working with each other throughout the Project and agree to communicate regularly with each other at all times so as to avoid or minimize disputes or disagreements. If disputes or disagreements do arise, Subcontractor and Design-Builder each commit to resolving such disputes or disagreements in an amicable, professional and expeditious manner so as to avoid unnecessary losses, delays and disruptions to the Work.

**13.3**      **Disputes Involving Owner.**

**13.3.1**  To the extent a claim, dispute or controversy arises out of, or relates to, problems caused by Owner or for which Owner is responsible ("Owner Disputes"), such Owner Disputes shall be resolved pursuant to the dispute resolution clause set forth in the EPC Agreement. Both Design-Builder and Subcontractor agree to cooperate in the presentation and prosecution or defense of Owner Disputes. If, after a request for an extension of time or additional compensation from Subcontractor, Design-Builder believes that the event causing the delay or additional compensation is the responsibility of Owner, then Design-Builder will cooperate with and assist Subcontractor in presenting a request for an extension of time or additional compensation to Owner. Notwithstanding the above, Design-Builder reserves the right not to submit a claim to Owner. In such cases, the claim shall be resolved pursuant to Section 13.4.

**13.3.2**  Notwithstanding any other provisions herein to the contrary, Design-Builder and Subcontractor each agree to accept the relief as to a time extension or additional compensation

Page 29

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

Exhibit A

Case: 19-30088   Doc# 7447-1   Filed: 05/15/20   Entered: 05/21/20 08:15:22   Page 39
of 54                                                                  of 41

obtained from Owner, if any, as well as all other aspects of the final decision following appeal or the expiration of the time for appeal, as full and final resolution of any Owner Dispute.

**13.3.3** If Design-Builder asserts a claim against Owner involving Subcontractor, each party shall bear its own costs for outside counsel and third-party consultants retained to prosecute claims against Owner and for any other litigation costs. Each party shall present its portion of the claim to Owner.

## 13.4 Disputes Not Involving Owner.

**13.4.1** For any claim, dispute or controversy not arising out of, or relating to, problems caused by Owner or for which Owner is responsible, Subcontractor and Design-Builder will first attempt to resolve such claim, dispute or controversy at the field level through discussions between Design-Builder's Representative and Subcontractor's Representative.

**13.4.2** If a claim, dispute or controversy cannot be resolved through Section 13.4.1, Design-Builder's Senior Representative and Subcontractor's Senior Representative, upon the request of either party, shall meet as soon as conveniently possible, but in no case later than thirty (30) days after such a request is made, to attempt to resolve such claim, dispute or controversy. Five (5) days prior to any meetings between the Senior Representatives, the parties will exchange relevant information that will assist the parties in resolving the claim, dispute or controversy.

**13.4.3** If after meeting the Senior Representatives determine that the claim, dispute or controversy cannot be resolved on terms satisfactory to both parties, the parties shall submit within thirty (30) days of the conclusion of the meeting by the Senior Representatives the claim, dispute or controversy to non-binding mediation. The mediation shall be conducted by a mutually agreeable impartial mediator, or if the parties cannot so agree, a mediator designated by the American Arbitration Association ("AAA") pursuant to its Construction Industry Mediation Rules. The mediation will be governed by and conducted pursuant to a mediation agreement negotiated by the parties or, if the parties cannot so agree, by procedures established by the mediator. Unless otherwise mutually agreed by Design-Builder and Subcontractor and consistent with the mediator's schedule, the mediation shall commence within ninety (90) days of the submission of the dispute for mediation. Persons with authority to resolve the dispute shall be present at the mediation.

## 13.6 Duty to Continue Performance.

**13.6.1** Unless provided to the contrary in the Contract Documents, Subcontractor shall continue to perform the Work and Design-Builder shall continue to satisfy its undisputed payment obligations to Subcontractor, pending the final resolution of any dispute or disagreement between Design-Builder and Subcontractor.

## 13.7 CONSEQUENTIAL DAMAGES.

**13.7.1** NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NEITHER DESIGN-BUILDER NOR SUBCONTRACTOR SHALL BE LIABLE TO THE OTHER FOR ANY CONSEQUENTIAL LOSSES OR DAMAGES, WHETHER ARISING IN CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY OR OTHERWISE, INCLUDING BUT NOT LIMITED TO LOSSES OF USE, PROFITS, BUSINESS, REPUTATION OR FINANCING.

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

Exhibit A

# Article 14

## Miscellaneous

**14.1    Assignment.**

    **14.1.1**  Neither Subcontractor nor Design-Builder shall, without the written consent of the other, assign, transfer or sublet any portion or part of the Work or the obligations required by the Contract Documents.

**14.2    Successorship.**

    **14.2.1**  Design-Builder and Subcontractor intend that the provisions of the Contract Documents are binding upon the parties, their employees, agents, heirs, successors and assigns.

**14.3    Governing Law.**

    **14.3.1**  The Agreement and all Contract Documents shall be governed by the laws of the place of the Project, without giving effect to its conflict of law principles.

**14.4    Severability.**

    **14.4.1**  If any provision or any part of a provision of the Contract Documents shall be finally determined to be superseded, invalid, illegal, or otherwise unenforceable pursuant to any applicable Legal Requirements or court order, such determination shall not impair or otherwise affect the validity, legality, or enforceability of the remaining provision or parts of the provision of the Contract Documents, which shall remain in full force and effect as if the unenforceable provision or part were deleted.

**14.5    No Waiver.**

    **14.5.1**  The failure of either Design-Builder or Subcontractor to insist, in any one or more instances, on the performance of any of the obligations required by the other under the Contract Documents shall not be construed as a waiver or relinquishment of such obligation or right with respect to future performance.

**14.6    Headings.**

    **14.6.1**  The headings used in this Agreement, or any other Contract Document, are for ease of reference only and shall not in any way be construed to limit or alter the meaning of any provision.

**14.7    Notice.**

    14.7.1  Whenever the Contract Documents require that notice be provided to the other party, notice will be deemed to have been validly given (i) if delivered in person to the individual intended to receive such notice, (ii) four (4) days after being sent by registered or certified mail, postage prepaid to the address indicated in the Agreement, or (iii) if transmitted by facsimile, by the time stated in a machine generated confirmation that notice was received at the number of the intended recipient.

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

Exhibit A

**14.8    Amendments.**

**14.8.1**  The Contract Documents may not be changed, altered, or amended in any way except in writing signed by a duly authorized representative of each party.

**14.9    Survival.**

**14.9.1**  Subcontractor's obligations under this Agreement shall not be released and shall specifically survive the completion of all services hereunder by Subcontractor, final payment to Subcontractor, and the termination of this Agreement for any reason.

**14.10    Anti-Bribery**

**14.10.1** Subcontractor agrees to strictly abide by Design-Builder's Anti-Bribery Policy and Procedure, a copy of which is available to Subcontractor upon request, and which is incorporated herein as if set forth in full. Specifically, Subcontractor shall at all times comply with the U.S. Foreign Corrupt Practices Act, the U.K. Bribery Act and any local anti-bribery (or anti-corruption) laws (collectively the "Anti-Bribery Laws").   In accordance with the Anti-Bribery Laws, Subcontractor will not, with the intent to obtain or retain business or any commercial advantage, offer, pay, promise to pay or authorize another to pay any money, make any gift or provide anything of value on behalf of Design-Builder to any foreign official; any foreign political party or official thereof or any candidate for foreign political office; or any person acting in a commercial capacity.

**14.11    Equal Opportunity and Affirmative Action**

**14.11.1** Subcontractor shall comply with all equal employment opportunity and affirmative action requirements promulgated by any governmental authority, including, without limitation, the requirements of the Civil Rights Act of 1964. The provisions of the Equal Opportunity Clauses of Executive Order 11246, (41 CFR 60-1.4), Section 503 of the Rehabilitation Act of 1973, (41 CFR 60-741.5(a)), Section 402 of the Vietnam Era Veterans Readjustment Act of 1974, (41 CFR 60-250.5(a)), and, the Jobs for Veterans Act of 2003, (41 CFR 60-300.5(a)), are hereby incorporated by reference and made a part of this Agreement.

**14.12    Export Regulations**

**14.12.1** The Parties are subject to the export regulations of the United States regarding export and re-export of controlled items, services or technical data from the United States. As part of the express consideration received under this Agreement for access to and/or delivery of any goods, knowledge, information, technical data and/or services from Design-Builder to Subcontractor, Subcontractor agrees that it will not in violation of, or so as to cause any penalty or other liability to Design-Builder under, any applicable U.S. law or regulation export, re-export or otherwise transfer, directly or indirectly, any of Design-Builder's knowledge, information, technical data or other property to which such Subcontractor gains access in connection with this Agreement to any country or person in contravention of the said export regulations, or make any other use of such information or data which, would violate the laws of the United States. Subcontractor shall notify Design-Builder in writing before disclosing to Design-Builder any technical information or data subject to laws restricting export outside the United States. Such notice shall provide a detailed description of the information and identify the applicable laws restricting export.

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

Exhibit A

**14.13    Financial Assurances**

**14.13.1** If requested by Design-Builder, Subcontractor shall within ten (10) calendar days provide Design-Builder with copies of its most recent annual and quarterly financial statements prepared in accordance with generally accepted accounting principles.  Subcontractor will notify Design-Builder immediately of any material adverse change in its financial condition.

**14.14    Independent Contractor**

**14.14.1** Subcontractor represents that it is fully experienced and properly qualified to perform the class of work provided for herein, and that it is properly licensed, equipped, organized, and financed to perform such work. Subcontractor shall act as an independent contractor and not as the agent of Design-Builder in performing the Work, maintaining complete control over and responsibility for its own employees and operations and those of its Sub-Subcontractors.

**14.14.2** No provisions of this Subcontract or any lower-tier subcontract awarded by Subcontractor shall be construed to create any contractual relationship between any such Sub-Subcontractor and Design-Builder, or obligate Design-Builder to pay or be responsible for the payment of any monies to any Sub-Subcontractor.

# Article 15

## Electronic Data

**15.1    Electronic Data.**

**15.1.1**   The parties recognize that Contract Documents, including drawings, specifications and three-dimensional modeling (such as Building Information Models) and other Work Product may be transmitted among Design-Builder, Subcontractor and others in electronic media as an alternative to paper hard copies (collectively "Electronic Data"). However, Design-Builder reserves the right to determine and direct the extent to which Electronic Data, if at all, may be used as an alternative to paper hard copies in connection with the Project.

**15.2    Transmission of Electronic Data.**

**15.2.1**   Design-Builder shall determine, after consultation with Subcontractor, the software and the format for the transmission of Electronic Data. Each party shall be responsible for securing the legal rights to access the agreed-upon format, including, if necessary, obtaining appropriately licensed copies of the applicable software or electronic program to display, interpret and/or generate the Electronic Data.

**15.2.2**   Neither party makes any representations or warranties to the other with respect to the functionality of the software or computer program associated with the electronic transmission of Work Product. Unless specifically set forth in the Agreement, ownership of the Electronic Data does not include ownership of the software or computer program with which it is associated, transmitted, generated or interpreted.

**15.2.3**   By transmitting Work Product in electronic form, the transmitting party does not transfer or assign its rights in the Work Product. The rights in the Electronic Data shall be as set forth in Article 4 of the Agreement. Under no circumstances shall the transfer of ownership of Electronic Data be deemed to be a sale by the transmitting party of tangible goods.

**15.3    Electronic Data Protocol.**

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

Exhibit A

**15.3.1**  The parties acknowledge that Electronic Data may be altered or corrupted, intentionally or otherwise, due to occurrences beyond their reasonable control or knowledge, including but not limited to compatibility issues with user software, manipulation by the recipient, errors in transcription or transmission, machine error, environmental factors, and operator error. Consequently, the parties understand that there is some level of increased risk in the use of Electronic Data for the communication of design and construction information and, in consideration of this, agree, and shall require their independent contractors, Subcontractors and Design Consultants to agree, to the following protocols, terms and conditions set forth in this Section 15.3.

**15.3.2**  Electronic Data will be transmitted in the format determined in Section 15.2.1 above, including file conventions and document properties, unless prior arrangements are made in advance in writing.

**15.3.3**  The Electronic Data represents the information at a particular point in time and is subject to change. Therefore, the parties shall agree upon protocols for notification by the author to the recipient of any changes which may thereafter be made to the Electronic Data, which protocol shall also address the duty, if any, to update such information if such information changes prior to Final Completion of the Project.

**15.3.4**  The transmitting party specifically disclaims all warranties, expressed or implied, including, but not limited to, implied warranties of merchantability and fitness for a particular purpose, with respect to the media transmitting the Electronic Data. However, transmission of the Electronic Data via electronic means shall not invalidate or negate any duties pursuant to the applicable standard of care with respect to the creation of the Electronic Data, unless such data is materially changed or altered after it is transmitted to the receiving party, and the transmitting party did not participate in such change or alteration.

**15.4**   In the event the EPC Agreement contains a provision governing Electronic Data, and there is a conflict between the provision in the Design-Build Agreement and this Article 15, the provision in the EPC Agreement takes precedence.

# <u>Article 16</u>

## Confidential Information

**16.1**   **Confidential and/or Proprietary Information.**

**16.1.1**  Confidential Information is defined as information which is determined by the transmitting party to be of a confidential or proprietary nature as: (i) the transmitting party identifies as either confidential or proprietary; (ii) the transmitting party takes steps to maintain the confidential or proprietary nature of the information; and (iii) the document is not otherwise available in or considered to be in the public domain. The receiving party agrees to maintain the confidentiality of the Confidential Information and agrees to use the Confidential Information solely in connection with the Project.

**16.1.2**  Subcontractor may receive information from Design-Builder that is either confidential or proprietary to either Design-Builder or to Owner. Such information shall be labeled as confidential and/or proprietary. Subcontractor agrees to maintain the confidential nature of such information and to execute any such additional agreements as may be required by Owner or Design-Builder with respect to such information.

**16.1.3**  In the event the EPC Agreement contains a provision governing Confidential Information, and there is a conflict between the provision in the Design-Build Agreement and this Article 16, the provision in the EPC Agreement takes precedence.

Page **34**

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

Exhibit A

# Article 17

## Other Provisions

**17.1     Other provisions, if any, are as follows:**
*(Insert any additional provisions, including those that relate to options that might have been selected by Design-Builder and Owner in the Design-Build Agreement related to Warranty Reserves, alternatives to Liquidated Damages, etc. as the parties may deem commercially appropriate.)*

☒       Any claims, disputes, or controversies between the parties arising out of or related to the Agreement, or the breach thereof which have not been resolved in accordance with the procedures set forth in Section 13.4 herein shall be resolved in a court of competent jurisdiction in the state in which the Project is located.

*[remainder of page intentionally left blank – signature page follows]*

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

Exhibit A

In executing this Agreement, Design-Builder and Subcontractor each individually represents that it has the necessary financial resources to fulfill its obligations under this Agreement, and each has the necessary corporate approvals to execute this Agreement, and perform the Work described herein.

**DESIGN-BUILDER:**

AECOM
_____
(Name of Design-Builder)

_____
(Signature)

Printed Name: SHAWN KELLY

Title: VICE PRESIDENT

Date: 10/21/16

**SUBCONTRACTOR:**

JH Kelly LLC
_____
(Name of Subcontractor)

_____
(Signature)

Printed Name: Paul Furth

Title: CFO, VP

Date: 10/21/16

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

Exhibit A

|||||||||||||||||||||||||||||

**2018-0030534**

| Recorded | REC FEE | 35.00 |
| Official Records | | |
| County of | HOUSING FEE | 75.00 |
| Shasta | | |
| Leslie Morgan | | |
| Assessor-Recorder | | |
| | AA | |
| 12:10PM 01-Nov-2018 | Page 1 of 8 | |

Recording Requested by

Eric A. Grasberger
Stoel Rives LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205

After Recording, Return To:

JH Kelly, LLC
PO Box 2038
Longview, WA 98632

_____

(SPACE ABOVE THIS LINE FOR RECORDER'S USE)

## CLAIM OF MECHANICS LIEN

SEPARATE PAGE, PURSUANT TO CA. GOV'T. CODE 27361.6

Recording Requested by

Eric A. Grasberger
Stoel Rives LLP
760 SW Ninth Ave., Suite 3000
Portland, OR 97205

After Recording Return to:

JH Kelly, LLC
PO Box 2038
Longview, WA 98632

(Space above this line for recorder's use)

## CLAIM OF MECHANICS LIEN

JH KELLY, LLC ("Claimant") hereby claims a mechanics lien for the labor, services, equipment and/or materials described below, furnished for the work of improvement situated upon a certain site located in the County of Shasta, State of California, at 37667 Highway 299, Burney, California, and more particularly described on Exhibit A, which is hereby incorporated by reference herein, as follows:

Beginning at a point in the north half of the northeast quarter of Section 16, Township 35 North, Range 3 East, M. D. B. & M., from which the 2 inch brass cap (marked 9, 10, 15, 16, T.35N.,R.3E., L.S. 2029) marking the northeast corner of said Section 16 bears north 26° 44' east 474.54 feet distant and running thence north 85° 35' west 1218.50 feet; thence westerly on a curve to the right, with a radius of 554.40 feet, through a central angle of 35° 28', an arc distance of 343.18 feet; thence north 50° 07' west 56.76 feet; thence south 14° 40½' east 1204.15 feet to a point in the southerly boundary line of the north half of the northeast quarter of said Section 16; thence south 89° 48' east, along the southerly boundary line of the north half of the northeast quarter of said Section 16, a distance of 831.89 feet to a 3/4 inch pipe; thence north 25° 30½' east 1008.52 feet, more or less, to the point of beginning; containing 26.69 acres, more or less, and being a portion of the north half of the northeast quarter of said Section 16.

After deducting all just credits and offsets, the sum of $15,881,776.21, plus interest at the legal or contractual rate from the time the sum was due, and recording fees, is due Claimant for the labor, services, equipment and materials furnished at the request of AECOM Technical Services, Inc. ("AECOM") and pursuant to the Subcontract Agreement #60482831-SC-001 dated on or about October 21, 2016, including but not limited to the installation of a new compressor and turbine, and supporting utilities, buildings, concrete, structural steel, electrical equipment and controls for the Burney K2 Replacement Project.

The name of the owner or reputed owner of the site is Pacific Gas and Electric Company. Claimant furnished the labor, services, equipment and/or materials at the request of AECOM. Claimant's address is 821 Third Ave., Longview, WA 98632.

98677907.3 0034592-00012

Date: October 25, 2018        JH KELLY, LLC

By: _____

Craig Yabui, Vice President & General
Counsel

**VERIFICATION**

I am the CLAIMANT and the foregoing Claim of Mechanics Lien is true of my own knowledge, except for matters stated in it on my information or belief, and as to those matters I believe it to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: October 25, 2018        JH KELLY, LLC

By: _____

Craig Yabui, Vice President & General Counsel

Subscribed and sworn to before me on this 25th day of October, 2018 by Craig Yabui, Vice President & General Counsel of JH Kelly, LLC, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature: _Jamie L Monispeare_        (seal)

> Notary Public
> State of Washington
> JAMIE MORRIS-PEASE
> MY COMMISSION EXPIRES
> AUGUST 16, 2021

98677907.3 0034592-00012        2

## NOTICE OF MECHANICS LIEN

### ATTENTION!

Upon the recording of the enclosed MECHANICS LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the mechanics' lien is recorded.

The party identified in the mechanics lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a mechanics lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the mechanics lien is released.

BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY, OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANICS' LIENS GO TO THE CONTRACTORS STATE LICENSE BOARD INTERNET WEBSITE AT www.cslb.ca.gov.

98677907.3 0034592-00012                    3

## PROOF OF SERVICE AFFIDAVIT

On October 25, 2018, at Vancouver, Washington, the undersigned declarant served or caused to be served copies of the above CLAIM OF MECHANICS LIEN and NOTICE OF MECHANICS LIEN on the owner or reputed owner, Pacific Gas and Electric Company, by certified mail, return receipt requested, at the addresses shown below:

> Pacific Gas and Electric Company
> Attn: Legal Department
> 77 Beale Street
> San Francisco, CA 94105

> Pacific Gas and Electric Company
> Attn: Legal Department
> 77 Beale Street, 24th Floor
> San Francisco, CA 94105

> Pacific Gas and Electric Company
> Attn: Legal Department
> 77 Beale Street, 32nd Floor
> San Francisco, CA 94105

The title or capacity of the person or entity served is owner or reputed owner.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: October 25, 2018

JH KELLY, LLC

By: _____

Craig Yabui, Vice President & General Counsel

98677907.3 0034592-00012                                        4

Exhibit B
Page 5 of 8

#4943
15.40

AFTER RECORDING, RETURN TO:

Pacific Gas and Electric Company
245 Market St.
San Francisco 6, California
RE: GM 145418-R (RW)                Rev. #15.40

FOR RECORDER'S USE ONLY

RECORDED AT REQUEST OF
NORTH VALLEY TITLE & ESCROW CO.
AT _____ MIN. PAST _____ M
OFFICIAL RECORDS SHASTA COUNTY, CALIF.

JUL 23 1962
Volume 712 Page 636
Medrid Montgomery
RECORDER FEE $ 4.80




FRUIT GROWERS SUPPLY COMPANY, a California corporation, hereinafter called

Fruit Growers, hereby grants to PACIFIC GAS AND ELECTRIC COMPANY, a California

corporation, hereinafter called Pacific, that certain real property, situate in

the County of Shasta, State of California, described as follows:

Beginning at a point in the north half of the northeast quarter
of Section 16, Township 35 North, Range 3 East, M. D. B. & M., from
which the 2 inch brass cap (marked 9, 10, 15, 16, T.35N.,R.3E., L.S.
2029) marking the northeast corner of said Section 16 bears north 26°
44' east 474.54 feet distant and running thence north 85° 35' west
1218.50 feet; thence westerly on a curve to the right, with a radius
of 554.40 feet, through a central angle of 35° 28', an arc distance
of 343.18 feet; thence north 50° 07' west 56.76 feet; thence south 14°
40½' east 1204.15 feet to a point in the southerly boundary line of
the north half of the northeast quarter of said Section 16; thence
south 89° 48' east, along the southerly boundary line of the north
half of the northeast quarter of said Section 16, a distance of 831.89
feet to a 3/4 inch pipe; thence north 25° 30½' east 1008.52 feet, more
or less, to the point of beginning; containing 26.69 acres, more or
less, and being a portion of the north half of the northeast quarter
of said Section 16.

Fruit Growers further grants to Pacific a right of way for ingress to and

egress from said 26.69 acre parcel of land and any other lands which Pacific

shall hereinafter acquire in the vicinity of said 26.69 acre parcel of land with-

in the strip of land described as follows:

Beginning at the most northerly corner of said 26.69 acre parcel
of land and running thence north 50° 07' west 109.5 feet; thence west-
erly on a curve to the left with a radius of 412.2 feet, through a
central angle of 39° 52½', an arc distance of 286.9 feet to a point
in the northerly boundary line of said Section 16; thence along the
northerly boundary line of said Section 16 the following three courses
and distances, namely:  north 89° 59½' west 485.8 feet to the 2 inch
brass cap on ⌐ pipe (marked 1/4S 9/16 T.35N.,R.3E., L.S. 2029) marking
the north quarter corner of said Section 16; thence north 89° 42' west

-1-

BOOK 712 PAGE 636              EXHIBIT A
                               Page 1 of 3

445.4 feet to a state highway monument; and thence north 89° 42' west 19.5 feet to a state highway monument in the southeasterly boundary line of the state highway traversing said Section 16; thence south 35° 19' west, along the southeasterly boundary line of said state highway, 44.5 feet; thence northeasterly on a curve to the right, with a radius of 160.0 feet, through a central angle of 16° 22', and tangent at the southwesterly terminus thereof to a line which has a bearing of north 73° 56' east, an arc distance of 45.7 feet to a point distant 30.0 feet southerly from (measured at a right angle to) the northerly boundary line of said Section 16; thence parallel with the northerly boundary line of said Section 16 the following two courses and distances, namely: south 89° 42' east 445.4 feet; and thence south 89° 59½' east 485.9 feet; thence easterly on a curve to the right, with a radius of 382.2 feet, through a central angle of 39° 52½', an arc distance of 266.0 feet; thence south 50° 07' east 151.7 feet to a point in the southwesterly boundary line of said 26.69 acre parcel of land; thence north 14° 40½' west, along the southwesterly boundary line of said 26.69 acre parcel of land, 51.7 feet, more or less, to the point of beginning.

IN WITNESS WHEREOF Fruit Growers has executed these presents this _2nd_

day of _July_ , 1962.

FRUIT GROWERS SUPPLY COMPANY

By _H. A. Lynn_
Its President

And By _L. A. Yoast_
Its Secretary

STATE OF CALIFORNIA, } ss.
County of Los Angeles

On _July 2_ , 19 62 , before me, the undersigned, a Notary Public in and for said County and State, personally appeared _H. A. Lynn_

known to me to be the _President_, and _L. A. Yoast_
known to me to be the _Secretary_ of _Fruit Growers Supply Company_

the Corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument, on behalf of the Corporation herein named, and acknowledged to me that such Corporation executed the within Instrument pursuant to its bylaws or a resolution of its board of directors.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal.

F. J. JOHNSON
My Commission Expires Jan. 6, 1966

_E. J. Johnson_
Notary Public in and for said County and State.

ACKNOWLEDGMENT — CORP. — PRES. & SEC.— WOLCOTTS FORM 226—REV. 12-51

Shasta
GM 145418-R
Dwg. 28295
Section 16,
T.35N.,R.3E.,
M.D.B.& M.

Prepared _Gum_
Checked _GHF_   APR 12 '62

EXHIBIT A
Page 2 of 3

-2-   BOOK 712 PAGE 637



EXHIBIT A
Page 3 of 3