**EXHIBIT A**

**REPLY**

| | |
|---|---|
| REBECCA J. WINTHROP (SBN 116386)<br>ROBIN D. BALL (BAR NO. 159698)<br>NORTON ROSE FULBRIGHT US LLP<br>555 South Flower Street, Forty-First Floor<br>Los Angeles, California 90071<br>Telephone: (213) 892-9200<br>Facsimile: (213) 892-9494<br>Rebecca.winthrop@nortonrosefulbright.com<br>robin.ball@nortonrosefulbright.com<br><br>Attorneys for ADVENTIST HEALTH<br><br>-and-<br><br>DAVID E. WEISS (SBN 148147)<br>PETER MUNOZ (SBN 66942)<br>REED SMITH LLP<br>101 Second Street, Suite 1800<br>San Francisco, California 94105-3659<br>Telephone: (415) 543-8700<br>Facsimile: (415) 391-8269<br>dweiss@reedsmith.com<br>pmunoz@reedsmith.com<br><br>Attorneys for PARADISE ENTITIES | Craig Goldblatt (*Pro Hac Vice* admitted*)*<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>1875 Pennsylvania Ave., NW<br>Washington DC 20036<br>Telephone: 202.663.6000<br>Facsimile: 202.663.6363<br>craig.goldblatt@wilmerhale.com<br><br>-and-<br><br>Lauren Lifland (*Pro Hac Vice* application forthcoming)<br>Allyson Pierce (SBN 325060)<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>250 Greenwich Street<br>New York, NY 10007<br>Telephone: 202.230.8800<br>Facsimile: 202.230.8888<br>lauren.lifland@wilmerhale.com<br>allyson.pierce@wilmerhale.com<br><br>Attorneys for COMCAST |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>   - and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered<br><br>**REPLY OF THE ADVENTIST CLAIMANTS, THE PARADISE ENTITIES AND COMCAST TO OBJECTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO CONFIRMATION OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 16, 2020**<br><br>Date: May 27, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: **Telephonic Appearances Only**<br>      United States Bankruptcy Court<br>      Courtroom 17, 16th Floor<br>      San Francisco, CA 94102<br>Judge: The Honorable Dennis Montali |

99984687.8

TO THE HONORABLE DENNIS MONTALI, OF THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:

Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River, each a California religious non-profit corporation; Paradise Irrigation District, Paradise Unified School District, Northern Recycling and Waste Services, LLC/Northern Holdings, LLC, Napa County Recycling & Waste Services, LLC/Napa Recycling & Waste Services, LLC, Christian & Missionary Alliance Church of Paradise, dba Paradise Alliance Church; and Comcast Cable Communications, LLC and all affiliates (collectively, the "Ad Hoc Claimants"), hereby submit the following Reply to the *Objection of the Official Committee of Tort Claimants to Confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* [Dkt No. 7306], filed on May 15, 2020 (the "TCC Confirmation Objection").

## THE TCC'S OBJECTION TO THE PLAN'S DEFINITION OF "SUBROGATION WILDFIRE CLAIM" SHOULD BE OVERRULED

The TCC's objection to the Plan's definition of "Subrogation Wildfire Claim," like the insurance-related provisions of the TCC's proposed Fire Victim Trust Documents to which the Ad Hoc Claimants have objected,[1] is an improper attempt to avoid Fire Victim Trust liability to fire victims with insurance. Indeed, the TCC seeks modification of the Plan definition of "Subrogation Wildfire Claim" only if the Court *rejects* the TCC's proposed Trust Agreement provisions regarding the set off of insurance amounts not actually paid by insurers (as requested in the Ad Hoc Claimants' objection to the Trust Documents). TCC Confirmation Objection at 25. The TCC thus seeks to obtain by hook (re-characterization of insured fire victim claims as subrogation claims), the same result they could not obtain by crook should the Court reject their position (offset from fire victim claims of amounts not actually paid by insurers).

The TCC Confirmation Objection at 25-28 argues that the Plan's definition of "Subrogation Wildfire Claim" will shift billions of dollars in claims which the TCC asserts should be paid by the Subrogation Trust to the Fire Victim Trust. Specifically, the definition now states that Subrogation Wildfire Claims do not include:

---

[1] *See Objection of Adventist Health, AT&T, Paradise Entities and Comcast to Trust Documents* [Dkt. No. 7072] (the "Trust Document Objection") at 10-20.

99984687.8

- 2 -

DOCUMENT PREPARED ON RECYCLED PAPER

(b) any Fire Claim asserting ***direct injury to a fire victim, regardless of whether the claimant is an insured*** and has received or will receive a recovery from their insurer, and any such claims are not the subject of, or compromised under, the Subrogation Claims RSA.

Plan § 1.201 (emphasis added). The TCC contends that claims by insured fire victims for their own direct injuries may be considered Subrogation Wildfire Claims, thereby making the definition of "Subrogation Wildfire Claims" inconsistent with prior versions of the Plan on this point. TCC Confirmation Objection at 25, 27.

This objection resurrects an argument the TCC previously asserted in an objection to Adventist's claim,[2] an objection that the TCC withdrew[3] after Adventist submitted briefing demonstrating that it was frivolous.[4] And it remains frivolous now: Wildfire victims such as the Ad Hoc Claimants are victims of the Debtors' wrongdoing who seek to recover for their own injuries, not insurers asserting subrogation claims for amounts paid to insureds.

A subrogation claim arises when an insurer or other party actually pays a victim for its losses; the payor, not the victim who has been paid, has a claim for subrogation. *See*, *e.g.*, *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 21 Cal. App. 4th 1586 1595-96 (1994) (subrogation permits a party who has been required to satisfy a loss created by a third party's wrongful act to 'step into the shoes' of the loser and pursue recovery from the responsible wrongdoer"); *see also Plut v. Fireman's Fund Ins. Co.,* 85 Cal. App. 4th 98, 102 Cal. Rptr. 2d 36 (2000); *In re Hamada,* 291 F.3d 645, 649 (2002).[5]

This is entirely consistent with the definition of "Wildfire Subrogation Claimant" in this Court's July 1, 2019 Bar Date Order, which defines such a Claimant as "any ***insurance carrier*** having made payments to their insureds for any damages arising out of or relating to a Fire Claim, or any other party who has acquired by assignment or otherwise obtained an interest in a claim arising out of or related to such payments." [Dkt. No. 2806 at 4, n.2 (emphasis added)]. The Ad

---

[2] *See Omnibus Objection of the Official Committee of Tort Claimants to Claims Filed by Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River (Claim Nos. 59459 & 59996)* [Dkt. No. 5760] at 6-8.

[3] *See Notice of Withdrawal Without Prejudice of the Omnibus Objection of the Official Committee of Tort Claimants (Substantive) to Claims Filed by Adventist Health System/West and Feather River Hospital D/B/A Adventist Health Feather River (Claim Nos. 59459 & 59996)* [Dkt. No. 6216].

[4] *See Motion of the Adventist Claimants for Estimation and Temporary Allowance of the Adventist Fire Damage Claims Solely for Voting Purposes Pursuant to Bankruptcy Rule 3018* [Dkt. No. 6174] at 9-11.

[5] Moreover, under the "made whole" doctrine, an insurer may not enforce a right to subrogation until the insured has been fully compensated for its injuries. *Barnes v. Indep. Auto Dealers of Cal.,* 64 F.3d 1389, 1394 (9th Cir. 1995). The Ad Hoc Claimants, of course, have not been fully compensated for their injuries.

DOCUMENT PREPARED ON RECYCLED PAPER

Hoc Claimants are not insurers, and do not seek to recover based on a loss that they have paid on someone else's behalf, nor one based on an interest in an insurer's subrogation claim, but instead seek to recover for their own losses as a fire victims. Consequently, as a matter of law, such fire victim claimants, while they may themselves have insurance coverage, have not asserted and ***cannot*** assert a subrogation claim. Further, as they have made abundantly clear,[6] the Ad Hoc Claimants do not seek to recover for any amounts that their insurers have paid. Their insurers may have subrogation claims for such amounts, but they are not being asserted (and could not be asserted) by the Ad Hoc Claimants here.[7]

The TCC Confirmation Objection now argues that the definition of "Subrogation Wild Fire Claim" in the Debtors' current proposed Plan must revert to the definition used in the version of the Plan in existence when the RSA was approved (the November 4, 2019 Plan [Dkt. No. 4563] and the Amended Plan [Dkt. No. 5590]), suggesting that the prior language supports their position. TCC Confirmation Objection at 25. But the TCC conspicuously fails to quote the prior definition, which in fact also precludes the TCC's effort to re-characterize fire victim claims as subrogation claims. The "Subrogation Wild Fire Claim" definition in the November 4 Plan expressly limits such claims to Fire Claims "that *arise[] from subrogation* (whether such subrogation is contractual, equitable, or statutory), *assignment* (whether such assignment is contractual, equitable, or statutory), or otherwise in connection with payments made or to be made by the applicable insurer to insured tort victims . . . ." (November 4, 2019 Plan at § 1.177; Amended Plan at § 1.195.) The Ad Hoc Claimants' claims do not "arise from" any subrogation claim, any assignment, or in connection with an insurer's payment, but from their own injuries as victims of the Camp Fire.

Further, the Ad Hoc Claimants are hardly the only fire victims who have insurance which has not paid in full for the injuries caused by the Debtors; there likely are thousands (more likely, tens of thousands) of fire victims with insurance coverage for some of the damage the Debtors

---

[6] *See* Trust Document Objection at ¶ 41 n. 8 ("While the [Ad Hoc Claimants] submit that under *Ivanhoe* and the collateral source rule claims should be allowed in full without reduction for any insurance, they do not seek double recovery and are willing to agree to a process whereby insurance amounts *actually paid* by their insurers can be taken into account.").

[7] Furthermore, to the best of the Adventist Claimants' knowledge, no subrogation claim has been asserted with respect to the Adventist Claimants' fire damage claims by *anyone*, not even Adventist's Health's insurer, FM Global. *See Declaration of Jeff Eller in Support of Adventist's Motion for Estimation and Temporary Allowance of the Adventist Fire Damage Claims Solely for Voting Purposes Pursuant to Bankruptcy Rule 3018* [Dkt. No. 6175] ("Eller Declaration") at ¶ 5, Ex. 5.

DOCUMENT PREPARED ON RECYCLED PAPER

inflicted.  Nothing in the current or prior versions of the Proposed Plan, or in the Disclosure Statements, would cause such victims to understand that some or all of their asserted Fire Claims are partly Wildfire Subrogation Claims and partly Fire Victim Claims.

It is not necessary to stand the definition of what constitutes a subrogation claim on its head, as the TCC proposes, to assure that fire victims will have an adequate incentive to pursue insurance recoveries instead of relying upon recovery from the Fire Victim Trust.  Insurance recoveries are 100% dollars for the fire victims, who will recover only an as-yet-unknown percentage (but less than 100%) of allowed claim amounts from the Fire Victim Trust, and will be fortunate if the combined recoveries come anywhere near their actual losses.  (And, of course, the Ad Hoc Claimants have agreed that insured parties should be required to use commercially reasonable efforts to recover from their carriers and should deduct any insurance payments actually received.)[8]  Nor will entitling insured fire victims to recover from the Fire Victim Trust somehow eliminate or alter insurers' obligations to pay claims.[9]  Nothing in the language the TCC objects to purports to do anything of the sort (nor could it do so).

Finally, as an alternative to changing the definition of Subrogation Wildfire Claim in the improper manner they suggest, the TCC raises an additional argument in support of the insurance provisions in the Trust Agreement.  The TCC, however, did not raise this argument in the separate proceeding set aside by the Court to address the Trust Agreement's provisions held on May 15, 2020 after extensive briefing, including a separate supplemental brief filed by the TCC's special counsel.  The TCC now argues, citing Section 2.6 of the Trust Agreement, that "the Fire Victim Trust has a form of protection, in that a term in the Trust Agreement and its attached Fire Victim Claims Resolution Procedures provides that the Trust will hold setoff rights against any Fire

---

[8] *See* Trust Document Objection at ¶ 27 n.4 ("The [Ad Hoc Claimants] also do not object to some requirement for Fire Victim Claimants to use commercially reasonable efforts to pursue insurance, so long as there are objective criteria, including a time limit (*e.g.*, 6 months from the confirmation date), and no requirement obligating the Fire Victim Claimant to file a lawsuit against its insurer.").

[9] The TCC Confirmation Objection at 26 falsely asserts, without citing a shred of evidence, that Adventist's claim (for $506 million in actual damages and an identical amount in punitives) is fully insured and has been "filed by the fire victim rather than the insurer to obtain a higher recovery from the Fire Victim Trust than the insurer would receive from the Subrogation Trust."  The evidence before the Court is directly to the contrary:  Adventist has recovered only $60 million from its insurer. Eller Decl. ¶ 3. Portions of Adventist's losses are not covered, *id.* ¶ 4, and while it continues to pursue insurance recoveries, it has no assurance whatsoever that it will recover all of its losses. Further, Adventist has not entered into any agreement with its insurer about the pursuit of Adventist's claims against the Debtors, *id.* ¶ 3; despite its conduct of formal discovery on the topic, the TCC's attempt to insinuate otherwise is entirely unsupported.  The TCC's suggestion that Adventist would somehow prefer to recover a percentage of its losses from the Fire Victim Trust rather than obtain payment at a 100% rate on an insured loss is entirely baseless.

DOCUMENT PREPARED ON RECYCLED PAPER

Victim's claim in the amount of insurance benefits that have not been paid." TCC Confirmation Objection at 27. This statement is contrary to the TCC argument at the hearing on May 15, 2020, where they stated that Section 2.6 was *not* a blanket provision for the Trustee to deduct all "insurance benefits that have not been paid" from a Fire Victim's claim. Rather, the TCC tried to convince the Court this was not the case and there was nothing to worry about, by suggesting that unpaid insurance amounts would not be deducted so long as reasonable efforts were made by the Fire Victim to collect on the insurance, and the Trustee would not penalize a Fire Victim for not being able to recover. *See* Transcript of Proceedings, May 15, 2020 at 61:22-24 ("The Trustee, as I understand it, is not going to demand an A-plus effort in bad-faith litigation to get recovery from carriers, but it's very important that reasonable efforts be taken. . . .") To the extent the Court is going to consider this new argument from the TCC, the Ad Hoc Claimants reiterate that Section 2.6 should be amended to require only that a Fire Victim use "commercially reasonable efforts" to pursue their insurers, and if those efforts are not successful after a finite period of time, only amounts ***actually received*** from an insurer should be deducted from a proposed distribution from the Trust, so that Fire Victims are not penalized for the vagaries of their insurers. This is consistent with controlling state and federal case law, including cases relied on by the TCC.

In sum, the TCC's argument that the Plan's definition of Subrogation Wildfire Claim must be revised to include the claims of insured fire victims for injuries caused by the Debtors is at odds with the law and this Court's prior Bar Date Order, is not mandated by the version of the Plan in existence when the RSA was approved, and is not necessary to assure proper allocation of claims between the Fire Victim Trust and the Subrogation Trust. The TCC's belated arguments in support of the Trust Agreement insurance provisions are at odds with its position in the May 15, 2020 hearing, and, as demonstrated in Ad Hoc Claimants' prior objection, are contrary to controlling law.

## **CONCLUSION**

For the foregoing reasons, the TCC's Objection to the Plan's definition of "Subrogation Wildfire Claim" should be overruled.

*[Signatures on following page]*

DOCUMENT PREPARED ON RECYCLED PAPER

Dated: May 22, 2020

RESPECTFULLY SUBMITTED:

NORTON ROSE FULBRIGHT US LLP

By: */s/ Rebecca J. Winthrop*
    Rebecca J. Winthrop
    Robin D. Ball
    Attorneys for ADVENTIST HEALTH

Dated: May 22, 2020

REED SMITH LLP

By: */s/ David E. Weiss*
    David E. Weiss
    Attorneys for PARADISE ENTITIES

Dated: May 22, 2020

WILMER CUTLER PICKERING HALE & DORR LLP

By: */s/ Craig Goldblatt*
    Craig Goldblatt
    Attorneys for COMCAST

DOCUMENT PREPARED ON RECYCLED PAPER

99984687.8