Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone:    415.659.2600
Facsimile:     415.659.2601
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.820.8800
Facsimile:     310.820.8859
Email: esagerman@bakerlaw.com
Email: drichardson@bakerlaw.com
Email: lattard@bakerlaw.com

Elizabeth A. Green (*pro hac vice*)
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Orlando, FL 32801
Telephone:    407.649.4036
Facsimile:     407.841.0168
Email: egreen@bakerlaw.com

*Counsel to the Official Committee of Tort Claimants*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION**<br>    -and-<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                            **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**REPLY BRIEF OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO CERTAIN OBJECTIONS TO CONFIRMATION OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 16, 2020**<br><br>Date:    May 27, 2020<br>Time:   10:00 a.m. (Pacific Time)<br>Place:  **Telephonic Appearances Only**<br>          United States Bankruptcy Court<br>          Courtroom 17, 16th Floor<br>          San Francisco, CA 94102 |

# TABLE OF CONTENTS

I. DISCUSSION ................................................................................................................ 1

    A. Objections Filed by Certain Contractors and Third Parties Pertaining to Defenses to Assigned Claims ........................................................................ 1

        1. Setoff and Recoupment Rights Are Paid In Full ........................................ 2

        2. Contribution and Indemnity Claims Are Properly Discharged in Chapter 11 Plans ...................................................................................... 3

        3. Any Release by Operation of Law Should be Preserved ........................... 4

    B. Objections to RSA/Settlement Terms Are Misplaced ........................................... 5

        1. The RSA and Settlement Are Binding Contracts that Cannot Be Modified ................................................................................................... 5

        2. Mr. Scarpulla's and GER's Objections Are Particularly Misplaced ........... 6

        3. Mr. Scarpulla's Back-of-the-Envelope Valuation Is Incorrect ................... 9

    C. The PERA Objection Cannot Dilute the Fire Victim Trust's Stock Interests ....... 10

    D. The Plan's Exculpation Provisions Properly Cover the TCC, its Counsel, Professionals, Representatives,s and Agents ...................................................... 12

II. CONCLUSION .......................................................................................................... 12

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re A&C Properties*,
  784 F.2d 1377 (9th Cir. 1985) .................................................................................................. 5

*In re Buckenmaier*,
  127 B.R. 233 (9th Cir. BAP 1991) ............................................................................................ 4

*Carolco Television Inc. v. Nat'l Broad. Co. (In re De Laurentiis Entertainment Group, Inc.)*,
  963 F.2d 1269 (9th Cir. 1992) .................................................................................................. 2

*Compania Internacional Financiera S.A. v. Calpine Corp. (In re Calpine Corp.)*,
  390 B.R. 508 (S.D.N.Y. 2008) ................................................................................................ 11

*Computer Task Group, Inc. v. Brotby (In re Brotby)*,
  303 B.R. 177 (9th Cir. BAP 2003) ........................................................................................... 6

*In re Congoleum Corp.*,
  362 B.R. 167 (Bankr. D. N.J. 2007) ....................................................................................... 12

*In re Glenn*,
  160 B.R. 837 (Bankr. S.D. Cal. 1993) ...................................................................................... 5

*Group of Institutional Investors v. Chicago, M., S. P. & P. R. Co.*,
  318 U.S. 523, 569-70; 63 S. Ct. 727; 87 L. Ed. 959 (1943) ................................................... 11

*In re Lenox*,
  902 F.2d 737 (9th Cir.1990) ...................................................................................................... 6

*Media Vision Tech. v. Ernst & Young, LLP (In re Media Vision Tech.)*,
  1997 U.S. Dist. LEXIS 2389, 1997 WL 102469 (N.D. Cal. 1997) ..................................... 3, 4

*Mt. View Hosp., L.L.C. v. Sahara, Inc.*,
  2011 U.S. Dist. LEXIS 120023, 2011 WL 4962183 (D. Idaho, October 17, 2011) .................................................................................................................................... 4

*In re PWS Holding Corp.*,
  228 F.3d 224 (3d Cir. 2000) .................................................................................................... 12

*Red River Res., Inc. v. Collazo*,
  2015 U.S. Dist. LEXIS 46117, 2015 WL 1846498 (N.D. Cal. Apr. 8, 2015) .......................... 5

*United States, IRS v. Offord Fin. (In re Medina)*,
  205 B.R. 216 (9th Cir. BAP 1996) ............................................................................................ 3

*United States v. Cont'l Airlines (In re Cont'l Airlines)*,
  134 F.3d 536 (3d Cir. 1998) ................................................................................................ 2

*United States v. Goff*,
  2005 U.S. Dist. LEXIS 49884 (D. Idaho January 7, 2005) ...................................................... 2

*Vasconi & Assocs. v. Credit Manager Ass'n. of Cal.*,
  1997 U.S. Dist. LEXIS 24177, 1997 WL 383170 (N.D. Cal. July 1, 1997) ........................... 12

*In re WCI Cable, Inc.*,
  282 B.R. 457 (Bankr. D. Or. 2002) ...................................................................................... 12

**Statutes**

11 U.S.C. § 1103(c) ................................................................................................................. 12

11 U.S.C. § 1129(a)(3) ............................................................................................................... 5

Cal. C. Civ. P. § 877.6 ............................................................................................................ 4, 5

**Rules**

Fed. R. Bankr. P. 9019 ............................................................................................................... 6

Fed. R. Civ. P. 60 ....................................................................................................................... 6

The Official Committee of Tort Claimants (the "**TCC**") hereby files this Reply to certain objections filed to confirmation of the Joint Chapter 11 Plan of Reorganization dated March 16, 2020, or any subsequently amended version thereof (the "**Plan**") proposed by PG&E Corp. and Pacific Gas and Electric Company (collectively, the "**Debtors**" or "**PG&E**") and the shareholders defined therein as the Shareholder Proponents (the "**Shareholder Proponents**"), to the extent that such objections have raised issues that pertain directly to the treatment of Fire Victim Claims under the Plan, as follows.

In December 2019, the TCC and Consenting Fire Claimant Professionals[1] who represent approximately 70% of the Fire Victim Claims by number, settled Plan treatment for all Fire Victim Claims in the RSA, for $13.5 billion in cash and stock, the Assigned Claims, and certain contract and insurance rights, which together offer significant value in excess of the $13.5 billion number. Fire Victims have overwhelmingly voted to approve that Settlement, which is the foundation for the Plan. Therefore, the TCC filed its May 15, 2020 objection in order to ensure that Fire Victims receive the full benefit of the Settlement terms that they voted to approve in the Plan, and that this Court approved in its 9019 Order. The TCC now supplements that brief with this reply brief.

**I.     DISCUSSION**

    **A.     Objections Filed by Certain Contractors and Third Parties Pertaining to Defenses to Assigned Claims**

The Official Committee of Unsecured Creditors (the "**UCC**"), and various individual entities have filed similar objections to Plan confirmation, objecting to the Plan's terms in Section 10.3, and elsewhere in the Plan, that purport to discharge or release certain defenses and claims associated with the Assigned Claims[2] being assigned to the Fire Victim Trust.

As a general matter, the TCC does not disagree with the simple concept that an assignee generally stands in the shoes of the assignor, and defenses in existence at the time of the assignment ordinarily follow the claims that are transferred to the assignee. But this general

---

[1]     These objections include Dkt. Nos. 7295, 7300, 7304, 7320, and 7336.
[2]     Capitalized terms not defined herein carry the meaning ascribed to them in the TCC's objection [Dkt. 7306].

concept does not always apply to every claim or defense in a chapter 11 case, where discharge of setoff, recoupment, indemnity, and contribution claims is permissible and routine—especially in a chapter 11 case where all claims are being paid in full.

For example, in a bankruptcy case where claims will not be paid in full, a creditor's unpaid claim may survive discharge and provide the creditor with setoff or recoupment rights in post-confirmation litigation. But if that claim has been paid in full in the chapter 11 case, there is no remaining debt to be asserted as a setoff against an assignee of a litigation claim. The outcome varies depending on the nature of the defense, counterclaim, or crossclaim. But in each instance, the discharge or survival of a particular claim or defense will be by operation of law.

### 1. Setoff and Recoupment Rights Are Paid In Full

As a general matter, Section 553 preserves the right to setoff prepetition claims against a debtor. The Ninth Circuit confirmed in *Carolco Television Inc. v. Nat'l Broad. Co. (In re De Laurentiis Entertainment Group, Inc.)*, 963 F.2d 1269, 1276-77 (9th Cir. 1992) that a chapter 11 discharge would not override Section 553's protection of prepetition setoff rights, though it noted that it reached this conclusion largely because of the "unfairness" that a different conclusion would bring since the creditor would otherwise receive a "tiny fraction" of its claim, and had "diligently pursued its claim before the bankruptcy court during the entire period the reorganization plan was being considered." *Id*. at 1277. This limitation on the holding of *De Laurentiis* to the specific facts of the case is one that other courts have shared. *See United States v. Cont'l Airlines (In re Cont'l Airlines)*, 134 F.3d 536, 540-41 (3d Cir. 1998) (interpreting *De Laurentiis* as limited to specific facts where creditor pursues setoff rights during chapter 11 case, and holding that the government's right of setoff must be exercised before confirmation of debtor's Chapter 11 plan, and that its failure to do so extinguished that right); *United States v. Goff*, 2005 U.S. Dist. LEXIS 49884 *44 (D. Idaho January 7, 2005) ("Because Plaintiff failed to diligently assert that it held a right of setoff and instead voted to accept the Plan, which fails to preserve any such rights, under these facts Plaintiff effectively waived any argument it may have that § 553(a) prevents the modification of its rights under Defendant's confirmed Plan."). Thus, affirmative preservation of setoff and recoupment rights may be necessary to their preservation.

- 2 -

In these Debtors' Cases, every creditor who has a claim against the Debtors on which any right of setoff could be based has either: (i) filed a proof of claim that will be paid in full; or (ii) failed to file a claim and thereby allowed any unscheduled rights against the Debtors to be discharged under the Plan. There are no surviving and unpaid prepetition rights that could create a claim for setoff in future litigation brought by the Trust, and therefore any arguments about Plan terms that fail to preserve such non-existent claims are red herrings.

Similarly, any claim against the Debtors that arose post-petition also cannot serve as a future setoff or recoupment claim against the Trust, as post-petition administrative claims are being paid in full under the Plan. *See* Plan at § 2.1.

For different reasons, it is the same result for any post-confirmation rights. To whatever extent a third party might attempt to bring a post-confirmation setoff or recoupment claim in defense of Trust litigation, such claim cannot serve as a defense to the Trust's litigation—even where such litigation may be based on a prepetition contract that has been assumed and remains in place post-confirmation—because a setoff or recoupment claim must mature pre-assignment in order to be asserted against the assignee of a claim. *See United States, IRS v. Offord Fin. (In re Medina)*, 205 B.R. 216, 221 (9th Cir. BAP 1996) (setoff rights must have matured prior to the date of assignment to be valid defenses). And any claim that will have matured before the Effective Date, and could have formed the basis of a valid setoff or recoupment defense, will have been paid or discharged under the Plan as either a general unsecured or administrative claim. The Plan does not need to bar future assertion of such defenses. They are simply not valid.

To whatever extent the Plan does discharge, release or waive such claims, it is a proper outcome in Cases that pay all such claims in full. Section 10.3 should not be amended to remove release language for claims that are paid in full.

**2.     Contribution and Indemnity Claims Are Properly Discharged in Chapter 11 Plans**

Claims for contribution and indemnity are also properly discharged by confirmation of the Plan to the extent such claims are related to the prepetition Fires, as such claims arose prepetition at the time of the conduct underlying such claim. *See Media Vision Tech. v. Ernst & Young, LLP*

- 3 -

*(In re Media Vision Tech.)*, 1997 U.S. Dist. LEXIS 2389, 1997 WL 102469 (N.D. Cal. 1997) (Under the debtor's conduct test, a claim for contribution or indemnity arises "at the 'time when the acts giving rise to the alleged liability were performed,' and not when the claims technically accrue under state law.") (*quoting In re Buckenmaier*, 127 B.R. 233, 238 (9th Cir. BAP 1991).). In *Media Vision*, Ernst & Young ("**E&Y**") sued Media Vision by third-party complaint for contribution and indemnity in litigation arising from E&Y's activities as Media Vision's accountant, both prepetition and during its chapter 11 case. The Court applied the debtor's conduct test and concluded "the conduct giving rise to E&Y's claims for contribution and setoff occurred well before the petition and that E&Y's claims were therefore discharged in bankruptcy." *Id*. at *11. The court went on to analyze the claims under the Ninth Circuit's "fair contemplation" test, in case it might apply, and reached the same conclusion, holding that "E&Y should have fairly contemplated that it had claims for contribution and indemnity against Media Vision. Accordingly, E&Y's claims were discharged in the bankruptcy." *Id*. at *18-19. *See also Mt. View Hosp., L.L.C. v. Sahara, Inc.*, 2011 U.S. Dist. LEXIS 120023 *34-37, 2011 WL 4962183 (D. Idaho, October 17, 2011) (dismissing creditor's post-discharge claims for "contract, tort and contribution / indemnification" as having been discharged in confirmed plan).

The arguments that have been made in objections that seek the removal of language discharging indemnity and contribution claims have been made without citation to legal authority. Case law confirms the propriety of such terms.

Any terms in the Plan that provide for the release, discharge or waiver of prepetition contribution or indemnity claims are terms that correctly follow Ninth Circuit law, and should remain in the Plan.

### 3. Any Release by Operation of Law Should be Preserved

The UCC seems to argue that this Court should interfere with the application of Cal. C. Civ. P. §877.6, on the grounds that it would somehow be unfair for California law to erase certain contribution and indemnity rights as a result of the TCC's Settlement with the Debtors. If California law erases such claims as a matter of law, the Plan cannot be amended to change that

- 4 -

1 result, as any effort to alter the application of Section 877.6 would, in turn, cause the Plan to be in
2 violation of state law, and unconfirmable under Section 1129(a)(3) of the Bankruptcy Code.

### B. Objections to RSA/Settlement Terms Are Misplaced

#### 1. The RSA and Settlement Are Binding Contracts that Cannot Be Modified

Various creditors, both individuals and entities, have filed objections to Plan confirmation that seek to revisit the terms of the RSA and Settlement that have been approved by this Court in its 9019 Order (collectively, the "*Reconsideration Objection*").[3]

For purposes of Plan confirmation, each of these Reconsideration Objections is an improper attempt to ask this Court to reconsider its 9019 Order approving the Settlement and its terms for treatment of Fire Victim Claims under the Plan, and open a new estimation trial. The 9019 Order is a final order that is binding on all parties in interest in these Cases. *In re A&C Properties*, 784 F.2d 1377, 1380 (9th Cir. 1985) (noting finality of 9019 order). A court-approved settlement "operates as res judicata" and cannot be challenged by any interested party who received notice of the proposed settlement. *In re Glenn*, 160 B.R. 837, 838 (Bankr. S.D. Cal. 1993) (applying res judicata because "[p]ursuant to Federal Rule of Bankruptcy Procedure 9019, the trustee gave notice of the proposed settlement to all interested parties . . . . Therefore, those who received notice were also parties to the settlement."). A party in interest in a bankruptcy case is bound by a 9019 ruling even if they opposed the settlement. In *Red River Res., Inc. v. Collazo*, 2015 U.S. Dist. LEXIS 46117, 2015 WL 1846498 (N.D. Cal. Apr. 8, 2015), the court explained that, "for res judicata purposes, the fact that [a creditor in the case] declined to be a settling party to the Global Settlement does not free him of all court-approved terms of the agreement, which bind him whether he was a party to the settlement or not, because he was a party in interest to the Bankruptcy Court's order." 2015 U.S. Dist. LEXIS 46117 at *20-21, 2015 WL 1846498, at *9.

Because the 9019 Order is a final, binding order, the Plan must provide Fire Victims with the consideration that was approved under the 9019 Order in order to be confirmable, as more

---

[3] These objections include Dkt. Nos. 7194, 7230, 7308, 7309, 7316, 7339, and various joinders filed in support thereof.

fully briefed in the TCC's Objection to Plan Confirmation. *See, e.g., In re Lenox,* 902 F.2d 737 (9th Cir.1990) (reversing confirmation of plan where plan did not incorporate payment schedule from stipulation that specifically provided for plan treatment); *Computer Task Group, Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 186 (9th Cir. BAP 2003) (reversing confirmation of plan where creditor's stipulated treatment was changed in the filed plan and given differing classification). But a challenge to the sufficiency of that consideration is not a proper issue for Plan confirmation.

None of the Reconsideration Objections serve as a motion to vacate the 9019 Order pursuant to F.R.C.P. 60, or otherwise follow any proper procedure that could permit this Court to erase or rewrite the Settlement. Even if such a motion were filed, it would be neither timely nor proper. The time for parties to dispute the terms of the RSA and Settlement with argument or testimony was last December, when the agreements were presented to this Court for approval, and when this Court found that the Settlement satisfied the standards of Fed. R. Bankr. P. 9019. *See* 9019 Order, Exhibit C to the Declaration of David J. Richardson, filed on May 15, 2020 as Dkt. No. 7322 (the "**Original Richardson Decl.**").

If this Court permits any party to open the door to evidence or testimony going to the sufficiency of the RSA and Settlement's Aggregate Fire Victim Consideration, then it is effectively commencing an estimation trial of a settled matter. The TCC has not put its expert reports (for the District Court trial) into evidence in this proceeding for the simple reason that the 9019 Order has resolved the sufficiency of the consideration provided by that Settlement. But should this Court find that sufficiency of the Settlement's consideration is a proper issue for this Plan confirmation trial, the TCC reserves all rights to request additional witnesses and exhibits in order to ensure that this Court can conduct such a hearing with proper evidence.

However, this Court should not reopen consideration of the Settlement as part of its Plan confirmation proceedings.

**2.    Mr. Scarpulla's and GER's Objections Are Particularly Misplaced**

One of the Reconsideration Objections requires additional comment: the objection filed on behalf of putative creditor GER Hospitality, LLC ("**GER**") and certain other fire victims by their

counsel Francis Scarpulla ("**Mr. Scarpulla**") and Jerry Hallisey ("**Mr. Hallisey**"), as Dkt. No. 7316 (the "**GER Objection**"), and its allegations of a breach of fiduciary duties by the TCC.

Until recently, GER was a member of the TCC, represented by both Mr. Scarpulla and Mr. Hallisey. GER and its counsel were, and remain, subject to confidentiality requirements. The TCC contends that the arguments and purported evidence raised in the GER Objection are not relevant to Plan confirmation, and are barred by this Court's final and binding 9019 Order. Further, the arguments in the GER Objection are based upon confidential TCC deliberations (including misleading descriptions thereof), reflect a violation of Mr. Scarpulla's fiduciary duties and duties of confidentiality to the TCC, and cannot constitute a waiver of any privilege by the TCC itself. The TCC moves to strike the GER Objection from the record, or the basis of its evidentiary objections that it will file. The TCC accordingly submits the following argument subject to such motion, in case the Court overrules the TCC's objections, and without waiver of the TCC's rights and privileges.

Mr. Scarpulla's allegations, as well as the purported "facts" on which he bases his allegations, are incorrect. As Mr. Scarpulla personally knows from his representation of GER on the TCC, the "offer" made by bondholders was not viable on its face, and was never converted into a proposed plan that would pay Fire Victims $13.5 billion in cash, or an additional $150 million to Ghostship claimants.

The actual plan that was filed by Bondholders was a plan that paid $11 billion in cash to the subrogation class, and $13.5 billion in half stock and half cash to the victims. *See* Chapter 11 Plan of Reorganization, dated Oct. 17, 2019 [Dkt. No. 4257]. The Bondholders later told the TCC that they could amend their plan to provide all cash to the victims and an undetermined form of payment to the subrogation class. But the Bondholders never filed such a plan that would pay $13.5 billion in cash to the Fire Victims, and never explained to the TCC how they could pay such cash to Fire Victims and still pay cash to the subrogation claimants, the public entities, and unsecured creditors. The proposal was illusory, and was never backed up with any firm terms. No responsible committee could abandon an actual signed and approved settlement in favor of a vague proposal offered solely to undermine the Debtors' plan.

- 7 -

Unlike the Bondholders' proposal, the Debtors' Plan offered greater certainty for June confirmation, avoided the need for an expensive estimation trial, provided greater certainty for AB 1054 compliance, provided a trust administration free of equity interference, and provided other such advantages that could not be matched by any potential Bondholder plan.

Similarly, the Customer-Owned Utility Group ("**COU**") never submitted to the TCC, or filed with this Court, any proposed plan. The COU "plan" is simply an outline of a possible plan that might be advanced if the Debtors' Plan is not approved by June 30, 2020. There is no evidence that a COU plan could be approved by the Public Utilities Commission by June 30, 2020, or at any time during the next year. There is no evidence that a COU plan has been vetted by the Debtors or either of the official committees. Mr. Scarpulla's representation that the COU outline of a possible plan was an offer that was so viable that it was a breach of fiduciary duty for the TCC to not terminate the RSA and pursue the alleged COU plan is misleading, and not appropriate.

Mr. Scarpulla's statements pertaining to the TCC's approval of the RSA and the RSA/Settlement Amendment are also mistaken. The TCC's unanimous approval of these agreements and their terms included the participation of both Mr. Scarpulla and Mr. Hallisey at all relevant meetings.[4]

Mr. Scarpulla's reference to the deleted requirement that Governor Newsom approve the plan is particularly out of place, as the requirement was deleted by the RSA/Settlement Amendment, which Mr. Scarpulla personally approved in writing on behalf of his and Mr. Hallisey's client, GER, and which would have been part of the public document if it had been completed correctly. *See* Exhibit 1 to the Declaration of Lauren Attard filed herewith. The issue of approval by the Governor was also mooted by the Governor's approval of the Debtors' amended plan.

---

[4] TCC deliberations are not relevant to Plan confirmation, and the TCC contends that its Minutes and internal communications, and all deliberations described therein, are privileged and confidential. Mr. Scarpulla's improper statements about TCC deliberations cannot be deemed a waiver of the TCC's privileges, as Mr. Scarpulla does not have the right to make such a waiver, nor can any statement of fact be deemed a waiver of privileged communications under federal common law relating to the attorney-client privilege.

- 8 -

There is no competing plan, and there never was a viable offer from Bondholders that could have provided all cash to Fire Victims. Mr. Scarpulla's breach of fiduciary duty allegations are baseless, and have no bearing on the outstanding issues for confirmation of the Plan.

### 3. Mr. Scarpulla's Back-of-the-Envelope Valuation Is Incorrect

The GER Objection contains a rough "valuation" of Fire Victim Claims that Mr. Scarpulla uses to argue that $13.5 billion in cash/stock will be insufficient to compensate Fire Victims. As a simple legal issue, and as argued above, the sufficiency of the Aggregate Fire Victim Consideration to compensate Fire Victims was addressed last December when this Court approved the RSA and Settlement, and this Court's 9019 Order is binding on all parties—including upon then-TCC members and their counsel who approved the RSA and Settlement.

But nor is Mr. Scarpulla's back-of-the-envelope valuation remotely correct.

First, Mr. Scarpulla's understanding of Aggregate Fire Victim Consideration is incorrect. It is not simply $13.5 billion. In addition to $13.5 billion in cash/stock, the Fire Victim Trust will receive Assigned Claims and certain insurance rights, described more fully in the RSA/Settlement Amendment and the Plan. The TCC contends that those Assigned Claims will add significant value to the Settlement.

Second, Mr. Scarpulla's "valuation" is simply attorney argument without a shred of evidentiary support. While the TCC has no reason to engage in a post-RSA valuation dispute, given the binding nature of the 9019 Order, Mr. Scarpulla's assumptions are entirely without support and are baseless on their face, but nevertheless should be addressed in a general manner to ensure that the GER Objection does not cause mischief in these confirmation proceedings.

For example, Mr. Scarpulla fails to account for the participation rate of fire victims in these Cases. Some fire victims chose not to participate in these Cases, perhaps because their damages were fully insured. Consequently, his numbers are inflated by several billion dollars that are irrelevant to an accurate valuation of the Fire Victim damages in these Cases.

Mr. Scarpulla also significantly overstates the square footage associated with destroyed and damaged properties. He applies the same square footage for all properties regardless of whether they were fully or partially destroyed, and regardless of whether a property is a single-

family residence, mobile home, multi-family residence, toolshed or other outbuilding. Less than half of the destroyed and damaged properties listed in the Cal Fire reports for the Camp and North Bay Fires[5] have been identified as single-family homes by the county assessor records.[6] Mr. Scarpulla's overestimated square footage, combined with his failure to account for thousands of properties that have been sold since the fires, results in damage numbers that are overstated by billions of dollars. Mr. Scarpulla also fails to account for billions of additional dollars in insurance offsets. The California Department of Insurance reported over $18 billion in paid and reserved claims from insurance carriers, not $13 billion as reported by Mr. Scarpulla.[7] Mr. Scarpulla's "valuation" also does not account for California's vast body of tort law governing the amounts allowable for certain types of damages described in his brief, and which would likely further reduce his back-of-the-envelope estimate by billions of additional dollars.

Mr. Scarpulla's "valuation" is nothing more than misleading attorney argument, that is both incorrect and irrelevant to a binding 9019 Order that has already decided the propriety of the Plan's Aggregate Fire Victim Consideration for the Fire Victim Trust.

### C. The PERA Objection Cannot Dilute the Fire Victim Trust's Stock Interests

The Public Employees Retirement Association of New Mexico ("**PERA**") has filed a plan objection, Dkt. No. 7296 (the "**PERA Objection**"), which among other terms, objects to the Plan's formula for calculating the number of shares that would be distributed to the holders of any allowed and subordinated Holdco Rescission of Damages Claims. The TCC addresses this issue solely to the extent that it could have any impact on the recoveries of Fire Victims.

---

[5] Cal Fire Reports can be obtained from the following website: https://www.fire.ca.gov/programs/fire-protection/reports/

[6] County Assessor reports containing square footage information can be downloaded for the following counties: (i) Butte: https://www.buttecounty.net/assessor; (ii) Amador: https://www.amadorgov.org/government/assessor; (iii) Calaveras: https://assessor.calaverasgov.us; (iv) Napa: https://www.countyofnapa.org/149/Assessor; (v) Sonoma: http://sonomacounty.ca.gov/CRA/Assessor/; (vi) Solano: https://www.solanocounty.com/depts/ar/home.asp (vii) Lake: http://www.tax.lakecountyil.gov/forms/htmlframe.aspx?mode=content/home.htm; (vii) Mendocino: https://www.mendocinocounty.org/government/assessor-county-clerk-recorder-elections; (ix) Nevada: https://www.mynevadacounty.com/163/Assessor; (x) Sutter: https://www.suttercounty.org/doc/government/depts/assessor/assessor; (xi) Yuba: https://www.yuba.org/Departments/Assessor/

[7] Department of Insurance Reports can be obtained from the following websites: (i) Camp Fire: http://www.insurance.ca.gov/0400-news/0100-press-releases/2019/upload/nr041-19InsuredLosses2018Wildfires050819.pdf; and (ii) North Bay Fires: http://www.insurance.ca.gov/0400-news/0100-press-releases/2018/upload/nr106Insuredlosses090618.pdf

- 10 -

This Court has stated on past occasions that the subordinated interests of securities plaintiffs cannot be permitted to dilute the stock interests of the Fire Victim Trust. These statements are consistent with federal bankruptcy law, and with the terms of the RSA/Settlement Amendment, which provides the Fire Victim Trust with anti-dilution protection by ensuring that the amount of Reorganized Holdco common stock to be granted to the Fire Victim Trust will be:

> based on the number of fully diluted shares of Reorganized HoldCo (calculated using the treasury stock method (using an Effective Date equity value equal to Fire Victim Equity Value)) that will be outstanding as of the Effective Date (assuming all equity offerings and all other equity transactions specified by the Plan, including without limitation, equity issuable upon the exercise of any rights or the conversion or exchange of or for any other securities, are consummated and settled on the Effective Date, but excluding any future equity issuance not specified by the Plan)

*See* Exhibit B to Original Richardson Decl., Dkt. No. 7322.

These anti-dilution protections are consistent with federal law. *See Compania Internacional Financiera S.A. v. Calpine Corp. (In re Calpine Corp.)*, 390 B.R. 508, 519 (S.D.N.Y. 2008) (dismissing equity appeal as moot, including on grounds that issuance of additional stock to former equityholders "would greatly dilute the share value of the stock already issued to creditors and traded"); *cf. Group of Institutional Investors v. Chicago, M., S. P. & P. R. Co.*, 318 U.S. 523, 569-70; 63 S. Ct. 727; 87 L. Ed. 959 (1943) (reaffirming the general rule that court "protect[] the rights of senior creditors against dilution either by junior creditors or by equity interests.").

Any equity distributed to securities plaintiffs will be an issuance that is "specified by the Plan," and therefore can only be issued in a manner that does not dilute the percentage of common stock that is properly granted to the Fire Victim Trust according to the Normalized Estimated Net Income calculation required under the Settlement. The TCC requests that this Court specifically preserve the jurisdiction to ensure that the stock position of the Fire Victim Trust is not diluted by any resolution of the securities plaintiffs' objection that may take place after the confirmation of the Plan, and to conduct any true-up proceeding that may be necessary to ensure that the interests of former securities holders are not permitted to dilute the interests of Fire Victims.

- 11 -

## D. The Plan's Exculpation Provisions Properly Cover the TCC, its Counsel, Professionals, Representatives and Agents

Several parties, including the U.S. Trustee's office, have filed Plan objections that express concerns about the scope of the Plan's exculpation language. Section 1103(c) sets out the duties of official committees, and includes within its terms an implicit grant of immunity to committees, and to their professionals, for all actions taken within the course of their official duties except for those constituting "willful misconduct or gross negligence." *See In re PWS Holding Corp.*, 228 F.3d 224, 246-47 (3d Cir. 2000) (explaining grant of immunity for committees implicit in section 1103(c) and approving exculpation clause for "the Committee or any of their respective members, officers, directors, employees, advisors, professionals or agents" that limited liability "to willful misconduct or gross negligence"); *Vasconi & Assocs. v. Credit Manager Ass'n. of Cal.*, 1997 U.S. Dist. LEXIS 24177 *9-10, 1997 WL 383170 (N.D. Cal. July 1, 1997) ("§ 1103(c) gives rise to an implicit grant of limited immunity. The qualified immunity corresponds to, and is intended to further, the Committee's statutory duties and powers. This immunity applies to conduct within the scope of the authority conferred to the committee either by statute or the court" limited only by "willful misconduct or 'ultra vires' activity.") (internal citations omitted); *In re WCI Cable, Inc.*, 282 B.R. 457, 476-77 (Bankr. D. Or. 2002) (clause that exculpated committee "members and their agents" for all acts "except for willful misconduct or ultra vires acts" was appropriate under section 1103(c)); *In re Congoleum Corp.*, 362 B.R. 167, 196 (Bankr. D. N.J. 2007) (limiting exculpation clause to "the official committees and their representatives in their capacity under § 1103").

Exculpation for "the Statutory Committees" such as the TCC, its members, its counsel, its professionals, its agents and representatives, and each member's counsel who represented their interests on the TCC or participated in negotiations of the settlements that led to this Plan are appropriate parties for exculpation under the Plan.

## II. CONCLUSION

For the reasons argued in the TCC's Plan objection and this Reply Brief, the TCC respectfully requests that this Court provide the TCC the relief requested to ensure that the TCC

- 12 -

obtains the full value of the Settlement approved by this Court, and address other matters argued herein pertaining to appropriate Plan terms.

Dated: May 22, 2020

BAKER & HOSTETLER LLP

By:   /s/Robert A. Julian
       Robert A. Julian

Authors:    Robert A. Julian
               Elizabeth A. Green
               Kimberly Morris
               David J. Richardson

*Counsel to the Official Committee of Tort Claimants*