# Exhibit A

# DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

**THIS IS A "CLAIMS-FIRST-MADE" INSURANCE POLICY, THAT MAY BE DIFFERENT FROM OTHER POLICIES INCLUDING OTHER CLAIMS-MADE POLICIES. PLEASE READ IT CAREFULLY.**

*Words and phrases which appear in all capital letters have the special meanings set forth in Section VI., Definitions*



## DECLARATIONS

**POLICY NO.** DP5008417P

**DECLARATIONS NO.** 1

**Item 1:** INSURED ORGANIZATION:

PG&E Corporation
77 Beale Street
PO Box 770000
San Francisco, CA 94177

**Item 2:** POLICY PERIOD: From: May 20, 2017 To: May 20, 2018
(12:01 A.M. Local Time at the address in Item 1.)

**Item 3:** Prior or Pending Litigation Date: October 1, 1905

**Item 4:** Rated Premium: ███████

Policy Premium: ███████

**Item 5:** Limits of Liability:

A. $35,000,000 aggregate Limit of Liability for the POLICY PERIOD and DISCOVERY PERIOD, if purchased

B. $350,000 for all INVESTIGATIVE EXPENSE for the POLICY PERIOD and DISCOVERY PERIOD, if purchased

**Item 6:** RETENTION:

A. Insuring Agreement I.(A). $0

B. Insuring Agreement I.(B) or I.(C). $5,000,000 each CLAIM

©1975-2015 ASSOCIATED ELECTRIC AND GAS INSURANCE SERVICES LIMITED
AEGIS and the AEGIS Logo are the Registered Service Marks of AEGIS in the U.S., U.K., E.U., Bermuda, Canada and New Zealand

Case: 19-30088 Doc# 7519 Filed: 05/22/20 Entered: 05/22/20 15:54:07 Page 2 of 51

Print Date: 05/31/2017 11:37:34



# DECLARATIONS
**continued**

**POLICY NO.** DP5008417P

**DECLARATIONS NO.** 1

**Item 7:** DISCOVERY PERIOD:

Premium: ████████████████████

Duration: commencing on the effective date of cancellation or non-renewal and ending 12 months after such date

**Item 8:** Any notice to be provided or any payment to be made hereunder to the INSURED ORGANIZATION shall be made to:

| | |
|---|---|
| ENTITY | PG&E Corporation |
| NAME | Ms. Janaize Markland |
| TITLE | Director, Enterprise and Operational Risk Management and Insurance |
| ADDRESS | 77 Beale Street |
| | PO Box 770000 |
| | San Francisco CA 94177 |

**Item 9:** Any notice to be provided or any payment to be made hereunder to the INSURER shall be made to:

| | |
|---|---|
| NAME | AEGIS Insurance Services, Inc. |
| ADDRESS | 1 Meadowlands Plaza |
| | East Rutherford, NJ 07073 |
| CLAIMS | Submit a claim through My AEGIS at www.aegislink.com |

**ENDORSEMENTS ATTACHED AT POLICY ISSUANCE: 1-30**

Countersigned at **East Rutherford, New Jersey**

On May 31, 2017

**AEGIS Insurance Services, Inc.**

By _Fred C. M J._

Authorized Representative

©1975-2015 ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED
AEGIS and the AEGIS Logo are the Registered Service Marks of AEGIS in the U.S., U.K., E.U., Bermuda, Canada and New Zealand

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 3 of 51

Print Date: 05/31/2017  11:37:34



# POLICY OF DIRECTORS AND OFFICERS LIABILITY INSURANCE EFFECTED WITH ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED HAMILTON, BERMUDA

THIS IS A "CLAIMS-FIRST-MADE" INSURANCE POLICY THAT MAY BE DIFFERENT FROM OTHER POLICIES INCLUDING OTHER CLAIMS-MADE POLICIES. PLEASE READ IT CAREFULLY.

*Words and phrases which appear in all capital letters have the special meanings set forth in Section VI., Definitions.*

In consideration of the payment of premium and in reliance upon all statements made and information furnished to the INSURER in the APPLICATION, which is hereby made a part hereof, and subject to the Declarations and all the terms hereinafter provided, the INSURER agrees as follows:

## I.   INSURING AGREEMENTS

(A) The INSURER shall pay on behalf of the DIRECTORS and OFFICERS all ULTIMATE NET LOSS for which the INSURED ORGANIZATION has not provided indemnification and which arises from a CLAIM first made against the DIRECTORS or OFFICERS during the POLICY PERIOD or during the DISCOVERY PERIOD, if purchased, for a WRONGFUL ACT which takes place before or during the POLICY PERIOD and is actually or allegedly caused, committed or attempted by the DIRECTORS or OFFICERS while acting in their respective capacities as DIRECTORS or OFFICERS.

(B) The INSURER shall pay on behalf of the INSURED ORGANIZATION all ULTIMATE NET LOSS for which the INSURED ORGANIZATION has, to the extent required or permitted by applicable law, granted indemnification to the DIRECTORS and OFFICERS and which arises from a CLAIM first made against the DIRECTORS or OFFICERS during the POLICY PERIOD or during the DISCOVERY PERIOD, if purchased, for a WRONGFUL ACT which takes place before or during the POLICY PERIOD and is actually or allegedly caused, committed or attempted by such DIRECTORS or OFFICERS while acting in their respective capacities as DIRECTORS or OFFICERS.

(C) The INSURER shall pay on behalf of the INSURED ORGANIZATION all ULTIMATE NET LOSS which arises from a SECURITIES CLAIM first made against the INSURED ORGANIZATION during the POLICY PERIOD or during the DISCOVERY PERIOD, if purchased, for a WRONGFUL ACT which takes place before or during the POLICY PERIOD.

## II.   DERIVATIVE INVESTIGATION COST COVERAGE

The INSURER shall pay all INVESTIGATIVE EXPENSE incurred by an independent committee of the board of directors or equivalent governing body of the INSURED ORGANIZATION in response to a SHAREHOLDER DERIVATIVE DEMAND, provided the SHAREHOLDER DERIVATIVE DEMAND is first made during the POLICY PERIOD or the DISCOVERY PERIOD, if purchased, and the alleged WRONGFUL ACT giving rise to the SHAREHOLDER DERIVATIVE DEMAND takes place before or during the POLICY PERIOD.

## III.   LIMITS OF LIABILITY

(A) The INSURER'S maximum liability under this POLICY for all ULTIMATE NET LOSS and INVESTIGATIVE EXPENSE, combined, shall be the aggregate Limit of Liability set forth in Item 5A of the Declarations. The aggregate Limit of Liability applies to all CLAIMS first made during the POLICY PERIOD and the DISCOVERY PERIOD, if purchased.

©1975-2014 ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED
AEGIS AND THE AEGIS LOGO ARE REGISTERED SERVICE MARKS OF ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Print Date:  05/31/2017  11:37:35



(B) The INSURER'S maximum liability under this POLICY for all INVESTIGATIVE EXPENSE shall not exceed the amount set forth in Item 5B of the Declarations. Any amount paid by the INSURER for INVESTIGATIVE EXPENSE shall be part of and not in addition to the aggregate Limit of Liability stated in Item 5A of the Declarations.

(C) The aggregate Limits of Liability stated in Items 5A and 5B of the Declarations shall apply only once regardless of the number of CLAIMS or WRONGFUL ACTS.

(D) The inclusion herein of more than one DIRECTOR or OFFICER, or the application of more than one Insuring Agreement or Coverage Extension, shall not operate to increase the INSURER'S aggregate Limits of Liability as stated in Items 5A and 5B of the Declarations.

(E) If any WRONGFUL ACT by a DIRECTOR or OFFICER while serving an OUTSIDE ORGANIZATION results in a payment of ULTIMATE NET LOSS or INVESTIGATIVE EXPENSE under this POLICY and a payment of loss under any other directors or officers or general partner liability insurance policy issued by the INSURER, then the maximum amount that the INSURER shall pay under this POLICY and all such other policies, combined, for the WRONGFUL ACT and all related actual or alleged breaches, neglect, errors and omissions shall be $35,000,000. The maximum amount that the INSURER shall pay under this POLICY shall be the amount of such ULTIMATE NET LOSS that is proportionate to the aggregate Limit of Liability stated in Item 5A of the Declarations of this POLICY in relation to the total limits of liability stated under this POLICY and such other policies, combined. This paragraph creates a sublimit which further limits and does not increase the INSURER'S maximum liability under this POLICY or such other policies.

## IV. RETENTION

(A) The INSURER shall be liable to the INSURED ORGANIZATION under this POLICY only for the amount of ULTIMATE NET LOSS which is in excess of the RETENTION set forth in Item 6B of the Declarations.

(B) The INSURED ORGANIZATION agrees to indemnify and advance on behalf of the DIRECTORS and OFFICERS all ULTIMATE NET LOSS otherwise covered under this POLICY to the fullest extent required or permitted by applicable law. If an INSURED ORGANIZATION fails or refuses within sixty (60) days after a DIRECTOR'S or OFFICER'S request to indemnify or advance ULTIMATE NET LOSS or if an INSURED ORGANIZATION is financially unable to indemnify or advance ULTIMATE NET LOSS, then the INSURER will be liable to the DIRECTORS and OFFICERS under this POLICY only for the amount of ULTIMATE NET LOSS which is in excess of the RETENTION set forth in Item 6A of the Declarations. If the INSURER pays under this POLICY any ULTIMATE NET LOSS that the INSURED ORGANIZATION is required or permitted by applicable law to advance or indemnify a DIRECTOR or OFFICER, then the INSURED ORGANIZATION shall reimburse the INSURER for such amounts up to the RETENTION set forth in Item 6B of the Declarations, and such amounts shall become immediately due and payable as a direct obligation of the INSURED ORGANIZATION to the INSURER.

(C) No RETENTION shall apply to Section II., Derivative Investigation Cost Coverage, and the INSURER will pay such amounts from the first dollar subject to the other terms and conditions of this POLICY.

(D) If more than one Insuring Agreement applies to any CLAIM, then the maximum RETENTION amount applicable to such CLAIM shall be the largest RETENTION applicable to such CLAIM.

(E) Only payment of INDEMNITY or DEFENSE COSTS which, except for the amount thereof, would have been payable under this POLICY may reduce or exhaust the RETENTION.

## V. PRIORITY OF PAYMENTS

If payment is due and owing under this POLICY for ULTIMATE NET LOSS or INVESTIGATIVE EXPENSE and such ULTIMATE NET LOSS or INVESTIGATIVE EXPENSE, together with any prior payments of ULTIMATE NET LOSS and INVESTIGATIVE EXPENSE, exceeds the applicable Limits of Liability, the



INSURER shall pay such ULTIMATE NET LOSS or INVESTIGATIVE EXPENSE, subject to the remaining applicable Limit of Liability, in the following order:

(A) First, the INSURER shall pay such ULTIMATE NET LOSS covered by Insuring Agreement I.(A);

(B) Second, only if and to the extent the payment under V.(A) above does not exhaust the applicable Limit of Liability, the INSURER shall pay any other ULTIMATE NET LOSS or INVESTIGATIVE EXPENSE covered by this POLICY.

If DIRECTORS or OFFICERS incur ULTIMATE NET LOSS covered under Insuring Agreement I.(A), the INSURED ORGANIZATION, including any bankruptcy trustee, debtor-in-possession or any other successor of the INSURED ORGANIZATION, shall have no interest in or claim for any payments under this POLICY until all such ULTIMATE NET LOSS is paid in full by the INSURER.

Subject to the foregoing paragraph, the INSURER shall, upon receipt of a written request from either the chairman of the board of directors or chief executive officer of the INSURED ORGANIZATION named in Item 1 of the Declarations, delay any payment of ULTIMATE NET LOSS due and owing to an INSURED ORGANIZATION under this POLICY until such time as said chairman or chief executive officer designates, provided the INSURER'S liability with respect to any such ULTIMATE NET LOSS payment shall not be increased, and shall not include any interest, on account of such delay.


## VI. **DEFINITIONS**

As used in this POLICY, the words and phrases, either in the singular or plural, which appear in all capital letters shall have the meanings set forth below:

(A) APPLICATION means, unless stated otherwise:

    (1) the Application submitted by the INSURED ORGANIZATION to the INSURER for this POLICY, including any materials submitted with, attached to or incorporated by reference into such Application and any other documentation, information, warranty or representation submitted to the INSURER in connection with underwriting this POLICY; and

    (2) all publicly available documents filed by the INSURED ORGANIZATION with the Securities and Exchange Commission during the twelve (12) months preceding the inception of this POLICY.

(B) CLAIM means:

    (1) any written demand against any INSURED for monetary, non-monetary, injunctive or other relief, including a written demand that the INSURED toll or waive a statute of limitation;

    (2) a civil or arbitration proceeding against any INSURED for monetary, non-monetary, injunctive or other relief commenced by service of a complaint or similar pleading;

    (3) a criminal proceeding against any INSURED commenced by the return of an indictment, information or similar document;

    (4) a formal administrative or regulatory proceeding against any DIRECTORS or OFFICERS commenced by the filing of a notice of charges, formal investigative order or similar document;

    (5) a civil, criminal, administrative or regulatory investigation of any DIRECTORS or OFFICERS commenced by the service upon or other receipt by the DIRECTOR or OFFICER of a subpoena, target letter, Wells Notice or other written notice from an ENFORCEMENT AUTHORITY identifying by name the DIRECTOR or OFFICER as an individual against whom a civil, criminal, administrative or regulatory proceeding may be commenced;

    (6) a written request or subpoena from an ENFORCEMENT AUTHORITY or an INSURED ORGANIZATION to interview or depose a DIRECTOR or OFFICER, or for the production of documents by a DIRECTOR or OFFICER, in connection with a proceeding against or

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 6 of 51

Print Date: 05/31/2017 11:37:35


investigation of any other DIRECTOR or OFFICER or the INSURED ORGANIZATION, whether or not such request or subpoena alleges a WRONGFUL ACT; provided such request or subpoena shall constitute a CLAIM under this POLICY only if (i) it is not part of a routine or regularly scheduled audit, inspection or general oversight or compliance activity, and (ii) the INSURED ORGANIZATION gives to the INSURER written notice thereof pursuant to Condition (E) below; or

(7)     for purposes of the coverage provided under Section II., Derivative Investigation Cost Coverage, a SHAREHOLDER DERIVATIVE DEMAND.

A NOTICE OF CIRCUMSTANCES is not a CLAIM, but a CLAIM shall be deemed to be first made at the earlier of: (a) the time at which any written demand described in (1) above is first made against the INSURED or any proceeding or investigation described in (2), (3), (4) or (5) above is commenced; (b) the time at which a SHAREHOLDER DERIVATIVE DEMAND related to the CLAIM is first made; (c) the time at which the written notice or subpoena described in (6) above is received by the DIRECTOR or OFFICER; or (d) the time at which a complete NOTICE OF CIRCUMSTANCES which describes the matters underlying the CLAIM has been given to the INSURER. The INSURER shall not be liable under this POLICY for any amount incurred in the defense, investigation or settlement of any potential CLAIM described in a NOTICE OF CIRCUMSTANCES prior to the date the CLAIM is actually made against INSUREDS. Except as provided in Section II., Derivative Investigation Cost Coverage, this POLICY does not cover any amount incurred by the INSUREDS in connection with any proceeding or investigation that is not then a CLAIM against the INSUREDS, even if such amount also benefits the defense of a covered CLAIM or if such proceeding or investigation subsequently gives rise to a covered CLAIM.

Multiple CLAIMS arising out of a single WRONGFUL ACT shall be deemed to be a single CLAIM, even if made against different INSUREDS, and shall be deemed to have been first made on the date the first of such multiple CLAIMS is first made against any of the INSUREDS, whether such date is before, during or after the POLICY PERIOD or the DISCOVERY PERIOD.

(C)   DEFENSE COSTS means all reasonable and necessary fees and expenses incurred by or on behalf of the INSUREDS in the investigation, negotiation, settlement and defense of any CLAIM, including such fees and expenses and the premium or origination fee for a loan or bond incurred by DIRECTORS and OFFICERS in connection with the actual or alleged obligation by the DIRECTOR or OFFICER to repay or forfeit amounts pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002, Section 954 of the Wall Street Reform and Consumer Protection Act of 2010, or any similar law, rule or regulation. DEFENSE COSTS do not include (i) INVESTIGATIVE EXPENSE resulting from a SHAREHOLDER DERIVATIVE DEMAND, or (ii) salaries, wages, benefits and overhead expenses of the DIRECTORS, OFFICERS or employees of the INSURED ORGANIZATION.

(D)   DIRECTOR and OFFICER means:

(1)     any natural person who was, is now, or shall be a director, officer or trustee of the INSURED ORGANIZATION;

(2)     any employee of the INSURED ORGANIZATION while acting in the capacity of a director, officer or trustee of the INSURED ORGANIZATION with the express prior authorization of a director, officer or trustee of the INSURED ORGANIZATION;

(3)     any natural person who was, is now, or shall be a manager, managing member, member of the board of managers or equivalent executive of an INSURED ORGANIZATION that is a limited liability company;

(4)     any employee of the INSURED ORGANIZATION while serving as the general counsel or risk manager of, or in a functionally equivalent position with, the INSURED ORGANIZATION;

(5)     any natural person who was, is now, or shall be a general partner of an INSURED ORGANIZATION that is a limited partnership;

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 7
of 51



(6) any natural person not described in paragraphs (1), (2), (3), (4) or (5) above who was, is now, or shall be an employee of the INSURED ORGANIZATION, but solely with respect to a SECURITIES CLAIM;

(7) any director, officer, trustee or employee of the INSURED ORGANIZATION who is serving or has served at the specific request of the INSURED ORGANIZATION as a director, officer, trustee or in an equivalent position of any OUTSIDE ORGANIZATION;

(8) the estates, heirs, legal representatives or assigns of any person identified in paragraphs (1), (2), (3), (4), (5), (6) or (7) above in the event of such person's death, incompetency, insolvency or bankruptcy, but only with respect to such person's WRONGFUL ACTS that occurred when such person was a DIRECTOR or OFFICER pursuant to paragraphs (1), (2), (3), (4), (5), (6) or (7), above;

(9) the lawful spouse or domestic partner of any DIRECTOR or OFFICER described in paragraphs (1), (2), (3), (4), (5), (6) or (7) above, but only if and to the extent the CLAIM is against both such DIRECTOR or OFFICER and the spouse or domestic partner and if the CLAIM against the lawful spouse or domestic partner is solely by reason of (a) such spousal or domestic partner status, or (b) such spouse's or domestic partner's ownership interest in property or assets which are sought as recovery for WRONGFUL ACTS of such DIRECTOR or OFFICER; or

(10) any employee of the INSURED ORGANIZATION who was, is now, or shall be serving at the specific written request of the INSURED ORGANIZATION in the position of a "designated representative," "alternate designated representative," "authorized account representative," "certifying official" or "responsible officer" of the INSURED ORGANIZATION as defined by and pursuant to the requirements of Titles I, II, IV and V of the Clean Air Act (42 U.S.C. Sections 7401-7431, 7521-7554, 7651-7651o, 7661-7661f) or the regulations promulgated thereunder, as amended from time to time, or in a comparable provision under any state law that is substantially the same as such federal law, with respect to WRONGFUL ACTS committed while such employee is acting in such capacity. This subsection 10 includes such employee as a DIRECTOR or OFFICER but does not otherwise expand the scope of coverage provided by this POLICY.

In no event, however, shall the estates, heirs, legal representatives, assigns, spouse or domestic partner identified in paragraphs (8) or (9) above be deemed to be a DIRECTOR or OFFICER in respect of a breach of duty, neglect, error, misstatement, misleading statement or omission actually or allegedly caused, committed or attempted by such estates, heirs, legal representatives, assigns, spouse or domestic partner.

DIRECTOR and OFFICER shall be deemed to include a natural person serving in a position with a non-U.S. entity that is functionally the equivalent, with substantially similar duties, of the director, officer or trustee position of the INSURED ORGANIZATION.

(E) DISCOVERY PERIOD means the period of time specified in Item 7 of the Declarations, if purchased as provided in Condition (L).

(F) ENFORCEMENT AUTHORITY means any federal, state, local or foreign law enforcement or governmental authority (including the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any federal or state attorney general) or the enforcement unit of any securities exchange or similar self-regulatory body.

(G) FINANCIAL IMPAIRMENT means that an entity is subject to (i) a Federal bankruptcy proceeding, (ii) any comparable proceeding for the reorganization, rehabilitation, liquidation or conservatorship of the subject entity, (iii) any other proceeding for the protection of creditors or relief of debtors generally, or (iv) a court order or statutory provision that stays, freezes or enjoins the disposition or impairment of all assets of the entity.

(H) FOR-PROFIT OUTSIDE ORGANIZATION means any organization or JOINT VENTURE other than the INSURED ORGANIZATION or a NOT-FOR-PROFIT OUTSIDE ORGANIZATION if:

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 8 of 51



(1) the operations of such organization or JOINT VENTURE are related to, arise from or are associated with the production, transmission, delivery or furnishing of electricity, gas, water or sewer service to the public or the conveyance of telephone messages for the public and the total assets of such organization or JOINT VENTURE are not greater than 15% of the total consolidated assets of the INSURED ORGANIZATION first named in Item 1 of the Declarations as reported in such INSURED ORGANIZATION'S then most recent audited consolidated financial statement; or

(2) such organization or JOINT VENTURE and the DIRECTORS or OFFICERS serving in such organization or JOINT VENTURE are listed in a schedule of FOR-PROFIT OUTSIDE ORGANIZATIONS attached to this POLICY or to a prior Directors and Officers Liability Policy issued by the INSURER to the INSURED ORGANIZATION.

(I) INDEMNITY means all sums which the INSUREDS shall become legally obligated to pay as damages (including pre- and post-judgment interest), whether by adjudication, settlement or compromise, after making proper deductions for all recoveries, salvages and other valid and collectible insurance. Where permitted by law, INDEMNITY shall include exemplary, punitive and multiple damages awarded against the INSUREDS. For purposes of the foregoing sentence, the law that shall apply shall be the law of the jurisdiction that is most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the involved DIRECTORS or OFFICERS, the INSURED ORGANIZATION, or the CLAIM giving rise to such damages. INDEMNITY shall not include:

(1) fines or penalties, other than civil penalties assessed pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act of 1977, 15 U.S.C. § 78dd-2(g)(2)(B);

(2) taxes, other than (i) taxes imposed upon an INSURED ORGANIZATION for which the DIRECTORS and OFFICERS are legally liable solely by reason of the INSURED ORGANIZATION'S insolvency, or (ii) taxes imposed upon a DIRECTOR or OFFICER solely by reason of the INSURER'S payment of ULTIMATE NET LOSS incurred by such DIRECTOR or OFFICER;

(3) any amount that represents or is substantially equivalent to an increase in the consideration paid or proposed to be paid by an INSURED ORGANIZATION in connection with its purchase of any securities or assets;

(4) any amount that represents disgorgement or restitution;

(5) any other amount that represents the repayment or forfeiture of compensation pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002, Section 954 of the Wall Street Reform and Consumer Protection Act of 2010 or any similar law, rule or regulation; or

(6) any amount that is uninsurable under applicable law;

provided the INSURER shall not assert that any ULTIMATE NET LOSS is disgorgement, restitution or uninsurable due to any actual or alleged violation of Section 11, 12 or 15 of the Securities Act of 1933, as amended.

(J) INSURED ORGANIZATION means, subject to Condition (C), hereof: (a) the organization(s) named in Item 1 of the Declarations and any SUBSIDIARIES of such organization(s), and (b) any trustee or debtor-in-possession in a bankruptcy proceeding in which the debtor is an organization(s) named in Item 1 of the Declarations or any SUBSIDIARIES of such organization(s).

(K) INSUREDS means the DIRECTORS and OFFICERS and, solely with respect to Insuring Agreements I.(B) and I.(C) and Section II., Derivative Investigation Cost Coverage, the INSURED ORGANIZATION.

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 9 of 51



(L)  INSURER means Associated Electric & Gas Insurance Services Limited, Hamilton, Bermuda, a non-assessable mutual insurance company.

(M)  INVESTIGATIVE EXPENSE means the reasonable and necessary fees and expenses (except all salaries, wages, benefit and overhead expenses of the DIRECTORS, OFFICERS, employees or the INSURED ORGANIZATION) incurred in connection with the investigation and evaluation of an actual or alleged WRONGFUL ACT by a DIRECTOR or OFFICER related to a SHAREHOLDER DERIVATIVE DEMAND.

(N)  JOINT VENTURE means any joint venture, co-venture, joint lease, joint operating agreement or limited partnership (other than a limited liability partnership).

(O)  NOT-FOR-PROFIT OUTSIDE ORGANIZATION means any not-for-profit organization that is exempt from Federal taxation pursuant to Section 501(c)(3) of the Internal Revenue Code of 1986 (as amended), any civic league or social welfare organization that is exempt pursuant to Section 501(c)(4), any business league or chambers of commerce that is exempt pursuant to Section 501(c)(6) or any political action committee that is exempt pursuant to Section 527, but does not include any Independent System Operator (ISO) or Regional Transmission Operator (RTO).

(P)  NOTICE OF CIRCUMSTANCES means written notice by a DIRECTOR, OFFICER or the INSURED ORGANIZATION to the INSURER of any facts or circumstances involving an identified WRONGFUL ACT actually or allegedly caused, committed or attempted before or during the POLICY PERIOD by an INSURED, which facts or circumstances appear likely to give rise to a CLAIM, provided such notice includes full particulars regarding the actual or alleged WRONGFUL ACT, the nature of any alleged or potential injury, the names of potential claimants and the manner in which the DIRECTOR, OFFICER or the INSURED ORGANIZATION first became aware of such facts or circumstances.

(Q)  OUTSIDE ORGANIZATION means any NOT-FOR-PROFIT OUTSIDE ORGANIZATION or any FOR-PROFIT OUTSIDE ORGANIZATION.

(R)  POLICY means this insurance policy, including the APPLICATION, the Declarations and any endorsements issued by the INSURER to the organization first named in Item 1 of the Declarations for the POLICY PERIOD.

(S)  POLICY PERIOD means the period of time stated in Item 2 of the Declarations.  If the POLICY is cancelled prior to the expiration date of such period, the POLICY PERIOD shall end as of the effective date of cancellation.

(T)  RETENTION means the respective amounts stated in Item 6 of the Declarations.

(U)  SECURITIES CLAIM shall mean any CLAIM which alleges a violation of any law, regulation or rule regulating securities, whether statutory or common law, and which in whole or in part is:

(1)  brought by any person or entity arising out of, based upon or attributable to the purchase or sale of, or offer or solicitation of an offer to purchase or sell, whether actual or alleged, any securities of the INSURED ORGANIZATION; or

(2)  brought by a securities holder of the INSURED ORGANIZATION with respect to such securities holder's interest in the securities of the INSURED ORGANIZATION.

SECURITIES CLAIM shall include any criminal proceeding or any administrative or regulatory proceeding against the INSURED ORGANIZATION, but only if and only during the time that such proceeding is also commenced and continuously maintained against a DIRECTOR or OFFICER.

SECURITIES CLAIM for purposes of Insuring Agreement I.(C) shall not include any employment or compensation related CLAIM brought by a DIRECTOR or OFFICER or other employee of the INSURED ORGANIZATION.

(V)  SHAREHOLDER DERIVATIVE DEMAND means a written demand by a securities holder of the INSURED ORGANIZATION upon the board of directors, or an equivalent governing body, of such

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 10 of 51

Print Date:  05/31/2017  11:37:35



INSURED ORGANIZATION to bring a civil proceeding on behalf of an INSURED ORGANIZATION in a court of law against a DIRECTOR or OFFICER for a WRONGFUL ACT.

(W) SUBSIDIARY means any entity or JOINT VENTURE if the INSURED ORGANIZATION, directly or through one or more other SUBSIDIARIES has the right, pursuant to ownership of securities or financial interests or a written contract, by-laws, charter, operating agreement, joint venture or partnership agreement or similar document, to elect or appoint a majority of the directors or functionally equivalent or comparable executives of such entity or JOINT VENTURE.

(X) ULTIMATE NET LOSS means the total INDEMNITY and DEFENSE COSTS with respect to each CLAIM to which this POLICY applies. ULTIMATE NET LOSS does not include any amount allocated, pursuant to Condition (T), to claims against persons or entities not covered hereunder or to non-covered matters.

(Y) WRONGFUL ACT means any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission actually or allegedly caused, committed or attempted by:

(1) any DIRECTOR or OFFICER while acting individually or collectively in their capacity as such, or, with respect to any DIRECTORS or OFFICERS of an INSURED ORGANIZATION that is not a partnership, any other matter claimed against them solely by reason of their being DIRECTORS or OFFICERS; or

(2) solely with respect to Insuring Agreement I.(C), an INSURED ORGANIZATION.

All breaches of duty, neglect, errors, misstatements, misleading statements or omissions actually or allegedly caused, committed or attempted by or claimed against one or more of the INSUREDS having as a common nexus any single or series of related facts, circumstances, situations, events, transactions or causes shall be deemed to be a single WRONGFUL ACT.

## VII. EXCLUSIONS

The INSURER shall not be liable to make any payment for ULTIMATE NET LOSS or INVESTIGATIVE EXPENSE arising from any CLAIM made against any INSURED:

(A) where, at inception of the Policy Period for the first Directors and Officers Liability Insurance Policy issued by the INSURER to the INSURED ORGANIZATION (or any predecessor organization) and continuously renewed thereafter, such INSURED had knowledge of a fact or circumstance which was likely to give rise to such CLAIM and such fact or circumstance was not disclosed in the Application for such Policy or in the process of applying for such Policy; provided this exclusion shall not apply to any DIRECTOR or OFFICER who did not have such knowledge.

(B) based upon, arising out of or attributable to such INSURED:

(1) having gained in fact any personal profit, advantage or remuneration to which such INSURED was not legally entitled; or

(2) having committed in fact a deliberately fraudulent, dishonest, criminal or malicious act or omission or any knowing and intentional violation of any law, statute or regulation;

if established by a final, non-appealable adjudication in the underlying proceeding.

(C) for bodily injury, mental anguish, mental illness, emotional upset, sickness or disease sustained by any person, for death of any person or for physical injury to or destruction of tangible property or the loss of use thereof.

(D) for any injury arising out of:

(1) false arrest, wrongful detention or wrongful imprisonment or malicious prosecution;

(2) wrongful entry, wrongful eviction or other invasion of the right of private occupancy;

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 11 of 51



(3) any employment-related WRONGFUL ACT including but not limited to the actual or constructive termination of employment, demotion, failure to employ or promote, deprivation of a career opportunity, or employment discipline or evaluation in a manner which violates the laws or regulations of any jurisdiction, or which breaches any implied contract to continue employment; provided this exclusion (D)(3) shall not apply to any SECURITIES CLAIM arising out of such events;

(4) discrimination or sexual harassment;

(5) a publication or utterance:

    (a) of libelous, slanderous or other defamatory or disparaging material; or

    (b) in violation of an individual's right of privacy; or

(6) piracy, plagiarism, idea misappropriation under implied contract, or infringement of copyright, title or slogan, registered trade mark, service mark or trade name.

(E) for violation(s) of any responsibility, obligation or duty imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 or amendments thereto or by similar common or statutory law of the United States of America or any state or other jurisdiction.

(F) based upon, arising out of or attributable to the rendering of advice with respect to the interpreting of, or the handling of records in connection with the enrollment, termination or cancellation of employees under the INSURED ORGANIZATION'S group life insurance, group accident or health insurance, pension plans, employee stock subscription plans, workers' compensation, unemployment insurance, social security, disability benefits and any other employee benefit programs.

(G) based upon, arising out of or attributable to any circumstance, written notice of which was given prior to the inception of this POLICY under any Directors and Officers Liability Insurance Policy (whether issued by the INSURER or any other carrier) or any DISCOVERY PERIOD thereof; provided the insurer of such other policy does not reject such notice as invalid.

(H) based upon, arising out of or attributable to (1) any written demand, suit or other formal proceeding pending against, or any order, decree or judgment entered for or against, any INSURED in its capacity as such on or prior to the Prior or Pending Litigation Date specified in Item 3 of the Declarations, or (2) the same or essentially the same facts or circumstances underlying or alleged in such written demand, suit or other proceeding, order, decree or judgement.

(I) for any WRONGFUL ACT by any SUBSIDIARY or its DIRECTORS or OFFICERS that took place prior to the date on which the entity became a SUBSIDIARY.

(J) brought by or on behalf of the INSURED ORGANIZATION, unless such CLAIM is:

(1) brought derivatively by a security holder of the INSURED ORGANIZATION who, while such CLAIM is made and maintained, is acting independently of, and without the active and voluntary solicitation, assistance, participation or intervention of any DIRECTOR or OFFICER; provided that conduct by a DIRECTOR or OFFICER that is protected pursuant to Section 806 of the Sarbanes-Oxley Act of 2002, Section 922 of the Wall Street Reform and Consumer Protection Act of 2010 or any similar whistleblower law, statute, rule or regulation shall not constitute solicitation, assistance, participation or intervention by such DIRECTOR or OFFICER for purposes of this paragraph (1);

(2) brought and maintained solely and entirely in a jurisdiction other than the United States of America, its territories and possessions, and subject to the substantive and procedural laws of such foreign jurisdiction; or

(3) brought and maintained by or on behalf of a bankruptcy or insolvency trustee, receiver, liquidator, conservator, examiner or creditors' committee of an INSURED ORGANIZATION or any assignee of such trustee, receiver, liquidator, conservator, examiner or creditors' committee; provided this

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 12 of 51


exception (3) does not apply to CLAIMS brought or maintained by or on behalf of a debtor-in-possession;

provided this Exclusion (J) shall not apply to DEFENSE COSTS otherwise covered under Insuring Agreement I.(A).

(K) with respect to any CLAIM in connection with a DIRECTOR'S or OFFICER'S service for an OUTSIDE ORGANIZATION, bought or maintained by or on behalf of such OUTSIDE ORGANIZATION, unless such CLAIM is:

   (1) a derivative action brought or maintained on behalf of the OUTSIDE ORGANIZATION by one or more persons who are not directors, officers or trustees of such OUTSIDE ORGANIZATION and who bring and maintain the CLAIM totally independently of and without the solicitation, direction, assistance, participation or intervention of the OUTSIDE ORGANIZATION or any director, officer or trustee thereof; provided, however, that conduct by a director, officer or trustee of the OUTSIDE ORGANIZATION that is protected pursuant to Section 806 of the Sarbanes-Oxley Act of 2002, Section 922 of the Wall Street Reform and Consumer Protection Act of 2010 or any similar whistleblower statute, rule or regulation shall not constitute solicitation, assistance, participation or intervention by such person for purposes of this paragraph (1);

   (2) brought or maintained solely and entirely in a jurisdiction other than the United States of America, its territories and possessions, and subject to the substantive and procedural laws of such foreign jurisdiction; or

   (3) brought or maintained by or on behalf of  bankruptcy or insolvency trustee, receiver, liquidator or conservator, creditors' committee or similar official or body of an OUTSIDE ORGANIZATION or any assignee of such trustee, receiver, liquidator, conservator, creditors' committee, official or body; provided this exception (3) does not apply to CLAIMS brought or maintained by or on behalf of a debtor-in-possession.

(L) based upon, arising out of or attributable to such DIRECTOR'S or OFFICER'S activities as a director, officer or trustee of any entity other than:

   (1) the INSURED ORGANIZATION; or

   (2) any OUTSIDE ORGANIZATION, as provided in Definition (D)(7).

## VIII. REPRESENTATIONS

(A) In issuing this POLICY, the INSURER has relied upon the statements, representations and information in the APPLICATION. Each INSURED acknowledges and agrees that the statements, representations and information in the APPLICATION (1) are true and accurate to the best of such INSURED'S knowledge and belief, and (2) are material to the INSURER'S acceptance of the risk to which this POLICY applies.

(B) The APPLICATION shall be construed as a separate APPLICATION for coverage by each DIRECTOR and OFFICER and the INSURED ORGANIZATION. With respect to the statements, representations and information in such APPLICATION, no knowledge possessed by any one DIRECTOR or OFFICER or the INSURED ORGANIZATION shall be imputed to any other DIRECTOR or OFFICER for the purpose of determining coverage for such other DIRECTOR or OFFICER under this POLICY or the validity and enforceability of this POLICY by such other DIRECTOR or OFFICER.

(C) If the APPLICATION contains a statement, representation, omission or information that is materially false or inaccurate (a "misrepresentation"), then this POLICY shall be void from the beginning as to:

   (1) any INSURED ORGANIZATION under Insuring Agreement I.(B) to the extent such INSURED ORGANIZATION indemnifies a DIRECTOR or OFFICER who knew the misrepresentation that was in the APPLICATION; and

   (2) any INSURED ORGANIZATION and its SUBSIDIARIES under Insuring Agreement I.(B) or I.(C)

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 13
of 51



and Section II., Derivative Investigation Cost Coverage, if the signer of the APPLICATION knew the misrepresentation was in the APPLICATION;

whether or not the DIRECTOR or OFFICER referenced in (C)(1) above knew the APPLICATION contained such misrepresentation.

(D) Without limiting the effect of Exclusions VII.(A) and (B), the INSURER agrees it will not rescind or void coverage under Insuring Agreement I.(A) in whole or in part for any reason.

## IX. CONDITIONS

(A) *Advancement of DEFENSE COSTS and INVESTIGATIVE EXPENSE*

Advancement by the INSURER of DEFENSE COSTS and INVESTIGATIVE EXPENSE shall be conditioned upon the DIRECTORS, OFFICERS or INSURED ORGANIZATION, as applicable, providing a satisfactory written undertaking to repay the INSURER, severally according to their respective interests, any DEFENSE COSTS or INVESTIGATIVE EXPENSE if and to the extent such DEFENSE COSTS or INVESTIGATIVE EXPENSE are finally established not to be covered by this POLICY.

(B) *Severability*

Except as provided in Section VIII., Representations, the acts, omissions, knowledge or warranties of a DIRECTOR or OFFICER shall not be imputed to any other DIRECTOR or OFFICER with respect to applying any Exclusion or otherwise determining coverage under this POLICY, and, with respect to SECURITIES CLAIMS against the INSURED ORGANIZATION, only acts, omissions, knowledge or warranties of the signer of the APPLICATION shall be imputed to such INSURED ORGANIZATION and its SUBSIDIARIES.

(C) *Acquisition, Merger and Dissolution*

(1) If after the inception of the POLICY PERIOD the INSURED ORGANIZATION acquires or creates a new SUBSIDIARY or acquires an entity by merger or consolidation, coverage under this POLICY automatically shall apply to such entity and its INSUREDS, but only for WRONGFUL ACTS taking place after such acquisition or merger.

However, if the total of all cash, securities, assumed indebtedness and other consideration paid by the INSURED ORGANIZATION in such merger or acquisition exceeds fifteen percent (15%) of the total consolidated assets of the INSURED ORGANIZATION first named in Item 1 of the Declarations as reported in such INSURED ORGANIZATION'S then most recent audited consolidated financial statement, then coverage for such entity and its INSUREDS shall cease no later than ninety (90) days after the effective date of such merger or acquisition, unless the INSURED ORGANIZATION reports such merger or acquisition to the INSURER within such ninety (90) day period together with such information as the INSURER may require, and the INSURER agrees by endorsement to this POLICY to extend coverage to such entity and its INSUREDS. Any such coverage extension past such ninety (90) day period will become effective only upon the payment of any additional premiums and acceptance of any additional terms and conditions as may be required by the INSURER.

(2) If during the POLICY PERIOD, any of the following events occurs:

(a) the acquisition by another entity or affiliated group of all or substantially all of the assets of the INSURED ORGANIZATION first named in Item 1 of the Declarations, or the merger or consolidation of such INSURED ORGANIZATION into or with another entity such that such INSURED ORGANIZATION is not the surviving entity; or

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 14
of 51



(b) the acquisition by any person, entity or affiliated group of persons or entities of securities or voting rights which results in such person, entity or affiliated group having the right to elect, appoint or designate at least fifty percent (50%) of the directors, trustees or persons holding equivalent positions of the INSURED ORGANIZATION first named in Item 1 of the Declarations;

then coverage under this POLICY shall continue until termination of the POLICY PERIOD and shall not be cancelable by the INSURED ORGANIZATION or the INSURER, but this POLICY will provide coverage only with respect to WRONGFUL ACTS occurring prior to such merger, consolidation or acquisition. The INSURED ORGANIZATION shall give written notice of such merger, consolidation or acquisition to the INSURER as soon as practicable together with such information as the INSURER may require. However, coverage under this POLICY will cease as of the effective date of such event with respect to WRONGFUL ACTS occurring after such event. The appointment of any receiver, trustee, examiner, conservator, liquidator, rehabilitator or similar official to take control of, supervise, manage or liquidate the INSURED ORGANIZATION due to FINANCIAL IMPAIRMENT shall not be considered an acquisition within the meaning of this paragraph (2).

(3) If an organization ceases to be a SUBSIDIARY, prior to or during the POLICY PERIOD, coverage with respect to such SUBSIDIARY and its INSUREDS shall continue until termination of the POLICY PERIOD, but only with respect to WRONGFUL ACTS occurring prior to the date such organization ceased to be a SUBSIDIARY.

(D) *Non-Duplication of Limits*

The maximum liability of the INSURER under this POLICY and the "Other Policy" (as defined below), combined, for all loss otherwise covered under this POLICY or the "Other Policy" resulting from the same or related CLAIMS, WRONGFUL ACTS, occurrences, facts, circumstances or situations shall be the largest then available limit of liability applicable to such loss under this POLICY or the "Other Policy". This Condition (D) shall not operate to increase the INSURER'S aggregate Limits of Liability as stated in Items 5A and 5B of the Declarations or as stated under the "Other Policy". This provision is intended to avoid the duplication of the INSURER'S aggregate limits of liability under this POLICY and the "Other Policy" for any related loss, and further reduces and does not increase the INSURER'S liability under this POLICY and the "Other Policy".

As used herein, "Other Policy" means any other policy or policies issued by the INSURER or any of the INSURER'S affiliates covering the INSURED ORGANIZATION or any DIRECTOR or OFFICER, provided that the "Other Policy" shall not include any such policies which are written specifically as excess of this POLICY. "Other Policy" does not include any General Partners, Fiduciary and Employee Benefits policy, Excess Liability Insurance policy, Excess Worker's Compensation Insurance policy or property insurance policies.

(E) *Reporting of Claims and Shareholder Derivative Demands*

As a condition precedent to any rights under this POLICY, the DIRECTORS, OFFICERS, INSURED ORGANIZATION, or the INSURED ORGANIZATION'S authorized representative shall give the INSURER written notice of any:

(1) CLAIM; or

(2) SHAREHOLDER DERIVATIVE DEMAND;

as soon as practicable after the General Counsel or Risk Manager of the INSURED ORGANIZATION first named in Item 1 of the Declarations first becomes aware of such CLAIM or SHAREHOLDER DERIVATIVE DEMAND. Notice of a CLAIM or SHAREHOLDER DERIVATIVE DEMAND shall include the nature of the WRONGFUL ACT, the alleged injury, the names of the claimants and the manner in which the DIRECTOR, OFFICER or INSURED ORGANIZATION first became aware of the CLAIM or SHAREHOLDER DERIVATIVE DEMAND.



The DIRECTORS, OFFICERS and the INSURED ORGANIZATION shall give the INSURER such additional information as the INSURER may reasonably require. Neither (1) the APPLICATION for this POLICY or any endorsement hereto, nor (2) any information contained in any of the foregoing shall constitute a notice of CLAIM or SHAREHOLDER DERIVATIVE DEMAND.

(F)  *Defense, Cooperation and Settlement*

It shall be the duty of the INSUREDS and not the duty of the INSURER to investigate and defend CLAIMS made against the INSUREDS.

In the event of any CLAIM which may involve this POLICY, the INSUREDS may proceed immediately with settlement of such CLAIM where the aggregate ULTIMATE NET LOSS from such CLAIM does not exceed the applicable RETENTION. The INSURED ORGANIZATION shall notify the INSURER of any such settlement. If the aggregate ULTIMATE NET LOSS resulting from such settlement does exceed, or is expected to exceed, the RETENTION, the INSUREDS shall not cause the settlement to be made without the express prior written consent of the INSURER, provided that the INSURER'S consent shall not be unreasonably withheld.

The INSURER shall not be called upon to assume charge of the investigation, settlement or defense of any CLAIM, but the INSURER shall have the right and shall be given the opportunity to associate with the INSUREDS in the investigation, settlement, defense and control of any CLAIM that involves or may involve the INSURER. At all times, the INSUREDS and the INSURER shall cooperate in the investigation, settlement and defense of such CLAIM.

The INSUREDS shall, at all times, use diligence and prudence in the investigation, settlement and defense of CLAIMS.

(G)  *Appeals*

In the event that the INSUREDS elect not to appeal a judgement in excess of the RETENTION, the INSURER may elect to conduct such appeal at its own cost and expense and shall be liable for any taxable court costs and interest incidental thereto, but in no event shall the total liability of the INSURER, exclusive of the cost and expense of appeal, exceed its Limit of Liability stated in Item 5A of the Declarations.

(H)  *Subrogation*

In the event of any payment under this POLICY, the INSURER shall be subrogated to the extent of such payment to all rights of recovery therefor, including without limitation any right of recovery from the INSURED ORGANIZATION for indemnifiable ULTIMATE NET LOSS. The INSUREDS shall execute all papers required and shall do everything that may be necessary to enable the INSURER to bring suit in the name of the INSUREDS. The INSURER shall not exercise its rights of subrogation against a DIRECTOR or OFFICER under this POLICY unless Exclusion VII.(B) above applies to such DIRECTOR or OFFICER.

(I)  *Bankruptcy or Insolvency*

The INSURER shall not be relieved of any of its obligations due to the FINANCIAL IMPAIRMENT of the INSURED ORGANIZATION.

If the INSURED ORGANIZATION shall become subject to a FINANCIAL IMPAIRMENT:

(1)  the DIRECTORS, OFFICERS and the INSURED ORGANIZATION hereby (i) waive and release any automatic stay or injunction which may apply to this POLICY or its proceeds in such proceeding, and (ii) agree not to oppose or object to any efforts by the INSURER or any DIRECTOR or OFFICER or the INSURED ORGANIZATION to obtain relief from any such stay or injunction; and

(2)  subject to all the terms of this POLICY and any applicable stay or injunction, the INSURER shall pay on behalf of the DIRECTORS and OFFICERS, under Insuring Agreement I.(A), ULTIMATE NET LOSS which would have been indemnified by the INSURED ORGANIZATION but for such

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 16 of 51



FINANCIAL IMPAIRMENT. The INSURER shall be subrogated, to the extent of any payment, to the rights of the DIRECTORS and OFFICERS to receive indemnification from the INSURED ORGANIZATION for such ULTIMATE NET LOSS, but only up to the amount of the RETENTION applicable to Insuring Agreement I.(B).

(J) *Other Insurance*

This POLICY shall be in excess of and shall not contribute with any other valid and collectible insurance with any other Insurer that is available to the INSUREDS with respect to a CLAIM also covered by this POLICY, regardless of whether such insurance is issued before, concurrently with, or after inception of this POLICY, other than insurance that is issued specifically as insurance in excess of the insurance afforded by this POLICY. Nothing herein shall be construed to make this POLICY subject to the terms of other insurance.

The coverage provided by this POLICY for any DIRECTOR or OFFICER who serves as a director, officer or trustee of any OUTSIDE ORGANIZATION shall be specifically excess of any other indemnification and insurance available to such DIRECTOR or OFFICER from the OUTSIDE ORGANIZATION. Such coverage shall not be construed to extend to the OUTSIDE ORGANIZATION, nor to any other director, officer or trustee of the OUTSIDE ORGANIZATION.

(K) *Changes and Assignment*

The terms of this POLICY shall not be waived or changed, nor shall an assignment of interest be binding, except by an endorsement to this POLICY issued by the INSURER.

(L) *Discovery Period*

In the event of cancellation or nonrenewal of the POLICY by the INSURED ORGANIZATION first named in Item 1 of the Declarations or nonrenewal of this POLICY by the INSURER, the INSURED ORGANIZATION and the DIRECTORS and OFFICERS shall have the right, upon payment of an additional premium to be determined by the INSURER (which shall not exceed the amount stated in Item 7 of the Declarations and shall be fully earned by the INSURER at the time of purchase), to an extension of the coverage afforded by this POLICY with respect to any CLAIM first made against any INSUREDS, or any NOTICE OF CIRCUMSTANCES given to the INSURER, during the period stated in Item 7 of the Declarations, but only with respect to any WRONGFUL ACT committed prior to the end of the POLICY PERIOD. This right of extension shall terminate unless written notice of such election is received by the INSURER within thirty (30) days after the effective date of cancellation or nonrenewal. The Limits of Liability under this POLICY shall not be increased by any DISCOVERY PERIOD.

The offer by the INSURER of renewal on terms, conditions or premiums different from those in effect during the POLICY PERIOD shall not be considered to be a cancellation or refusal to renew this POLICY.

(M) *Cancellation*

This POLICY:

(1) may be cancelled at any time by the INSURED ORGANIZATION first named in Item 1 of the Declarations (except as provided in Condition (C)) by delivering written notice to the INSURER stating when thereafter cancellation shall be effective; in which case the INSURER shall retain a short rate portion of the Rated Premium amount stated in Item 4 of the Declarations of this POLICY and a short rate portion of the unearned Continuity Credit;

(2) may not be cancelled by the INSURER, except for nonpayment of premium, in which case (i) such cancellation shall be effective ten (10) days after the date notice thereof is given by the INSURER to the INSURED ORGANIZATION first named in Item 1 of the Declarations, and (ii) the INSURER shall retain a pro-rata proportion of the Rated Premium stated in Item 4 of the Declarations and the pro-rata unearned Continuity Credit.

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 17 of 51



Proof that notice has been provided in accordance with Condition (V) below shall be sufficient proof notice has been given, and the POLICY PERIOD shall end on the effective date and hour of cancellation, as stated above.

(N) *Currency*

All amounts stated herein are expressed in United States Dollars and all amounts payable hereunder are payable in United States Dollars.

(O) *Sole Agent*

The INSURED ORGANIZATION first named in Item 1 of the Declarations shall be deemed the authorized representative of each DIRECTOR and OFFICER and all INSURED ORGANIZATIONS for the purposes of requesting or agreeing to any endorsement to this POLICY, making premium payments and adjustments and receiving notifications, including notice of cancellation from the INSURER.

(P) *Dispute Resolution and Service of Suit*

Any controversy or dispute between the INSURER and the INSURED ORGANIZATION arising out of or relating to this POLICY, or the breach, termination, formation or validity thereof, shall be resolved in accordance with the procedures specified in this Condition (P), which shall be the sole and exclusive procedures for the resolution of any such controversy or dispute.

(1) Negotiation. The INSURED ORGANIZATION and the INSURER (each a "party") shall attempt in good faith to resolve any controversy or dispute arising out of or relating to this POLICY promptly by negotiations between executives who have authority to settle the controversy. Any party may give the other party written notice of any dispute not resolved in the normal course of business. Within fifteen (15) days the receiving party shall submit to the other a written response. The notice and the response shall include: (a) a statement of each party's position and a summary of arguments supporting that position; and (b) the name and title of the executive who will represent that party and of any other person who will accompany the executive. Within thirty (30) days after delivery of the disputing party's notice and thereafter, as often as they reasonably deem necessary, the executives of both parties shall meet at a mutually acceptable time and place, to attempt to resolve the dispute. All reasonable requests for information made by one party to the other will be honored. If the matter has not been resolved within sixty (60) days of the disputing party's notice, or if the parties fail to meet within thirty (30) days, either party may initiate mediation of the controversy or claim as provided hereinafter.

All negotiations pursuant to this clause will be kept confidential and shall be treated as compromise and settlement negotiations for purposes of the Federal Rules of Evidence and state rules of evidence.

(2) Mediation. If the dispute between the INSURER and the INSURED ORGANIZATION has not been resolved by negotiation as provided herein, the parties shall endeavor to settle the dispute by mediation under the last published Mediation Procedure of the International Institute for Conflict Prevention and Resolution or any successor ("CPR Institute"). Unless otherwise agreed, the parties will select a neutral third party from the CPR Institute Panels Distinguished of Neutrals, with the assistance of the CPR Institute.

(3) Arbitration. Any controversy or dispute between the INSURER and the INSURED ORGANIZATION arising out of or relating to this POLICY, or the breach, termination, formation or validity thereof, which has not been resolved by non-binding means as provided herein within ninety (90) days of the initiation of such procedure, shall be settled by binding arbitration in accordance with the CPR Institute Rules for Non-Administered Arbitration of Business Disputes (the "CPR Rules") by three (3) independent and impartial arbitrators. The INSURED ORGANIZATION and the INSURER each shall appoint one arbitrator; the third arbitrator, who shall serve as the chair of the arbitration panel, shall be appointed in accordance with the CPR Rules. If either the INSURED ORGANIZATION or the INSURER has requested the other to participate in a non-binding procedure and the other has failed to participate, the requesting party may initiate arbitration before expiration of the above period. The arbitration shall be



governed by the United States Arbitration Act, 9 U.S.C. §§ 1 et seq., and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof.

In the event of a judgment being entered against the INSURER on an arbitration award, the INSURER, at the request of the INSURED ORGANIZATION, shall submit to the jurisdiction of any court of competent jurisdiction within the United States of America, and shall comply with all requirements necessary to give such court jurisdiction, and all matters relating to such judgment and its enforcement shall be determined in accordance with the law and practice of such court.

(4) Service of Suit. Service of process in any suit or any other suit instituted against the INSURER under this POLICY may be made upon AEGIS Insurance Services, Inc., 1 Meadowlands Plaza, East Rutherford, NJ 07073. The INSURER will abide by the final decision of the court in such suit or of any appellate court in the event of any appeal. AEGIS Insurance Services, Inc. is authorized and directed to accept service of process on behalf of the INSURER in any such suit and, upon the INSURED ORGANIZATION'S or any DIRECTOR'S or OFFICER'S request, to give a written undertaking that they will enter a general appearance upon the INSURER'S behalf in the event such suit is instituted. Nothing in this clause constitutes or should be understood to constitute a waiver of the INSURER'S right to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek to transfer a case to another court as permitted by the laws of the United States or of any state in the United States. This paragraph (4) is subject to, and does not override, the requirement of binding arbitration set out in paragraph (3).

(Q) *Construction*

The terms of this POLICY are to be construed in an evenhanded fashion as between the INSURED ORGANIZATION, the DIRECTORS or OFFICERS and the INSURER in accordance with the laws of the State of New York, except that any CLAIM for coverage of punitive, exemplary or multiple damages shall be governed by the law of the jurisdiction that is most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the involved DIRECTORS or OFFICERS, the INSURED ORGANIZATION, or the CLAIM giving rise to such damages. Where the language of this POLICY is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in a manner most consistent with the relevant terms of this POLICY without regard to authorship of the language and without any presumption or arbitrary interpretation or construction in favor of either the INSURED ORGANIZATION, the DIRECTORS or OFFICERS or the INSURER. In deciding any controversy or dispute arising out of or relating to this POLICY, due consideration shall be given to the customs and usages of the insurance industry. No damages in excess of compensatory damages shall be awarded in any controversy or dispute between the INSURER, on the one hand, and the INSURED ORGANIZATION and/or the DIRECTORS and OFFICERS, on the other hand, and each party hereby irrevocably waives any such damages.

(R) *Invalidity or Unenforceability*

In the event that any provision of this POLICY shall be declared or deemed to be invalid or unenforceable under any applicable law, such invalidity or unenforceability shall not affect the validity or enforceability of the remaining portion of this POLICY.

(S) *Non-Assessability*

The INSURED ORGANIZATION shall be liable under this POLICY only for the POLICY Premium stated in Item 4 of the Declarations. Neither the INSURED ORGANIZATION nor any DIRECTOR or OFFICER shall be subject to any contingent liability or be required to pay any dues or assessments to the INSURER in addition to the premium described above.

(T) *Allocation*

If a CLAIM is made against both INSUREDS who are covered hereunder for such CLAIM and others, including INSUREDS who are not covered hereunder for such CLAIM, or if a CLAIM against the INSUREDS includes both covered and non-covered matters, the DIRECTORS and OFFICERS, the INSURED ORGANIZATION and the INSURER shall allocate any investigation expenses, defense costs, settlement, judgement or other loss on account of such CLAIM between covered INVESTIGATIVE EXPENSE or ULTIMATE NET LOSS attributable to the CLAIM against the

Print Date: 05/31/2017 11:37:35

DIRECTORS and OFFICERS and non-covered loss. Such allocation shall be based upon the relative legal and financial exposure of each party to such CLAIM for covered and non-covered matters.

If the DIRECTORS and OFFICERS, INSURED ORGANIZATION and the INSURER agree on an allocation of INVESTIGATIVE EXPENSE and DEFENSE COSTS, the INSURER shall advance INVESTIGATIVE EXPENSE and DEFENSE COSTS allocated to covered ULTIMATE NET LOSS. If the DIRECTORS and OFFICERS, INSURED ORGANIZATION and the INSURER cannot agree on an allocation:

(1)   no presumption as to allocation shall exist in any arbitration, suit or other proceeding;

(2)   the INSURER shall advance INVESTIGATIVE EXPENSE and DEFENSE COSTS which the INSURER believes to be covered under this POLICY until a different allocation is negotiated, mediated, arbitrated or ordered by a court of competent jurisdiction; and

(3)   any disagreement on the allocation of INVESTIGATIVE EXPENSE and DEFENSE COSTS shall be settled in accordance with Condition (P), if applicable.

Any advancement of INVESTIGATIVE EXPENSE and DEFENSE COSTS as described above shall be on a current basis but no later than ninety (90) days after the INSURER receives itemized invoices for such INVESTIGATIVE EXPENSE or DEFENSE COSTS.

Any negotiated, mediated, or arbitrated or court-ordered allocation of INVESTIGATIVE EXPENSE and DEFENSE COSTS on account of a CLAIM shall be applied retroactively to all INVESTIGATIVE EXPENSE and DEFENSE COSTS on account of such CLAIM, notwithstanding any prior advancement to the contrary.  Any allocation or advancement of INVESTIGATIVE EXPENSE and DEFENSE COSTS on account of a CLAIM shall not apply to or create any presumption with respect to the allocation of INDEMNITY on account of such CLAIM.

(U)   *Territory*

This POLICY extends to WRONGFUL ACTS taking place or CLAIMS made anywhere in the world.

(V)   *Notices*

Any notice, request, demand or other communication required or permitted under this POLICY shall be in writing and shall be delivered personally, by facsimile, electronic mail or other written form of electronic communication or by certified or express mail or overnight courier, postage prepaid, to the respective parties as follows:

(1)   if to the INSURED ORGANIZATION, to the name and address specified in Item 8 of the Declarations; and

(2)   if to the INSURER, to the address specified in Item 9 of the Declarations;

or to such other address or person as either party hereto may, from time to time, designate in a written notice given in like manner.

IN WITNESS WHEREOF, Associated Electric & Gas Insurance Services Limited has caused this POLICY to be signed by its President and Chief Executive Officer at Hamilton, Bermuda. However, this POLICY shall not be binding upon the INSURER unless countersigned on the Declaration Page by a duly authorized representative of the INSURER.

Owen Ryan, President
and Chief Executive Officer

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 20 of 51



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. 1             Effective date of Endorsement May 20, 2017

Attached to and forming part of POLICY No. DP5008417P

INSURED ORGANIZATION    PG&E Corporation

It is understood and agreed that this POLICY is hereby amended as indicated. All other terms and conditions of this POLICY remain unchanged.

## OFAC EXCLUSION

This POLICY shall not apply and the INSURER shall not be liable to make any payment for ULTIMATE NET LOSS or INVESTIGATIVE EXPENSE with respect to any CLAIM(S) made against any INSUREDS arising out of any:

     a)    conduct prohibited by any United States economic or trade sanctions, including, but not limited to sanctions, laws and regulations administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC") (collectively "Economic Sanctions"); or

     b)    coverage that violates any of these Economic Sanctions.

Further, in accordance with these Economic Sanctions, any such coverage in this POLICY that would violate these Economic Sanctions is void at POLICY inception. If this POLICY is determined by the INSURER to be a blocked or frozen contract under these Economic Sanctions, no payments, including, but not limited to, claims, premium refunds, member related credits, will be made without authorization from OFAC.

_Fred C. M G._
Signature of Authorized Representative

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 21 of 51



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. 2                                      Effective date of Endorsement May 20, 2017

Attached to and forming part of POLICY No.   DP5008417P

INSURED ORGANIZATION   PG&E Corporation

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

### MEMBER WITH VOTING RIGHTS ENDORSEMENT

This POLICY entitles the INSURED ORGANIZATION to be a member in the INSURER unless that membership is superseded, at any point in time, by a parent or affiliated company, which is also a member in the INSURER.

This POLICY also entitles the INSURED ORGANIZATION to a vote on any matter submitted to the members of the INSURER unless that voting right is superseded, at any point in time, by the voting right of a parent or affiliated company.

_____

Signature of Authorized Representative

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 22 of 51



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>3</u>        Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No. <u>DP5008417P</u>

INSURED ORGANIZATION    <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated. All other terms and conditions of this POLICY remain unchanged.

## TERRORISM EXCLUSION

In accordance with the Terrorism Risk Insurance Act of 2002 as amended (the "Federal Act"), the INSURER has offered the INSURED ORGANIZATION listed in Item 1 of the Declarations coverage for "insured loss" as defined in the Federal Act.

The INSURER has provided the INSURED ORGANIZATION with a notice stating the additional premium charged for the inclusion of terrorism coverage under this POLICY. The first INSURED ORGANIZATION has rejected such coverage, either by not paying the additional premium or by notifying the INSURER that it has declined to purchase such coverage. Consequently, the INSURER shall not be liable to make any payment for ULTIMATE NET LOSS or INVESTIGATIVE EXPENSE caused directly or indirectly by a Terrorism Event. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss caused by the Terrorism Event.

As used in this Endorsement:

"Terrorism Event" means the commission of a violent act, or an act dangerous to human life, tangible property, intangible property or infrastructure, or the threat of such act, that is reasonably believed to have been committed (a) for political, religious and/or ideological reasons; and (b) either (1) to intimidate, coerce or cause fear among the public or a section of the public, (2) to influence the policy of, or overthrow, a government by intimidation, fear or coercion, (3) to affect the conduct of a government or the public or a section of the public, (4) to disrupt any segment of a country's economy or (5) for any similar reason. A Terrorism Event shall include an "act of terrorism" as defined in the Federal Act. A Terrorism Event shall also include any actions by, or on behalf of, a government or branch thereof (including without limitation, the uniformed armed forces, militia, police, state security, national guard and anti-terrorism agencies) in deterring responding to, combating or retaliating against terrorism or removing debris from a terrorist attack.

_Fred C. M_ _____

Signature of Authorized Representative

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 23 of 51



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. 4             Effective date of Endorsement May 20, 2017

Attached to and forming part of POLICY No.  DP5008417P

INSURED ORGANIZATION    PG&E Corporation

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

## CRISIS FUND ENDORSEMENT

1.       Section I., Insuring Agreements, is amended by the addition of the following:

       The INSURER shall pay on behalf of the INSURED ORGANIZATION any CRISIS FUND LOSS first occurring during the POLICY PERIOD and reported to the INSURER during the POLICY PERIOD, provided such CRISIS FUND LOSS is solely as a result of a NEGATIVE EARNINGS OR SALES ANNOUNCEMENT which has a MATERIAL EFFECT ON THE INSURED ORGANIZATION'S STOCK PRICE.

2.       Section VII., Exclusions, shall not be applicable to a CRISIS FUND LOSS.

3.       The maximum amount payable by the INSURER under this Endorsement during the POLICY PERIOD shall be as stated below.

       Aggregate Limit of Liability for the POLICY PERIOD under this Endorsement: $50,000

4.       No RETENTION shall apply to CRISIS FUND LOSS and the INSURER will pay from the first dollar subject to Section V. (B), Priority of Payments.

5.       The maximum liability of the INSURER under this POLICY, including this Endorsement, shall not exceed the amount set forth in Item 5A of the Declarations of the POLICY.  Nothing contained in this Endorsement shall increase the limit of liability of the INSURER.

6.       Section VI., Definitions, is amended to include the following:

       CRISIS FUND LOSS means:

            (1)      amounts for which the INSURED ORGANIZATION is responsible for the reasonable and necessary fees and expenses charged by a qualified public relations firm, crisis management and/or law firm hired by the INSURED ORGANIZATION with the INSURER'S consent (which consent shall not be unreasonably withheld) to perform crisis management services, and

            (2)      amounts for which the INSURED ORGANIZATION is responsible for the reasonable and necessary expenses incurred in connection with the printing and/or mailing of materials, or travel by DIRECTORS, OFFICERS, employees or agents of the INSURED ORGANIZATION.

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 24 of 51



arising from or related to a NEGATIVE EARNINGS OR SALES ANNOUNCEMENT, regardless whether a CLAIM is ever made and, if a CLAIM is made, regardless whether the amount is incurred prior to or subsequent to the making of the CLAIM.

NEGATIVE EARNINGS OR SALES ANNOUNCEMENT means a public announcement by the INSURED ORGANIZATION of its past or future earnings or sales which is substantially below the INSURED ORGANIZATION'S last public statement or projection of earnings or sales for such period, or the INSURED ORGANIZATION'S prior year's earnings or sales for the same period, or any other similar measurement of indices.

MATERIAL EFFECT ON THE INSURED ORGANIZATION'S STOCK PRICE means that immediately following a NEGATIVE EARNINGS OR SALES ANNOUNCEMENT the price per share of the INSURED ORGANIZATION'S common stock shall experience a decrease net of the change in the Standard & Poor's Composite Stock index of the greater of: 10% or $5.00 per share.

_____

Signature of Authorized Representative

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 25 of 51



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>5</u>  Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No. <u>DP5008417P</u>

INSURED ORGANIZATION <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated. All other terms and conditions of this POLICY remain unchanged.

## INSURING AGREEMENTS (C) AMENDED
### (Defense Costs for Derivative Lawsuits)

Section I., Insuring Agreements, (C) is amended by the addition of the following:

    The INSURER shall pay on behalf of the INSURED ORGANIZATION all DEFENSE COSTS incurred by the INSURED ORGANIZATION (including through its board of directors or any committee of its board of directors) in seeking the dismissal of a shareholder derivative lawsuit on behalf of the INSURED ORGANIZATION.

_____
Signature of Authorized Representative

Case: 19-30088  Doc# 7510-1  Filed: 05/22/20  Entered: 05/22/20 15:54:07  Page 26 of 51

Print Date: 05/31/2017 11:37:37



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>6</u>                                          Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No. <u>DP5008417P</u>

INSURED ORGANIZATION   <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

## EXTRADITION ENDORSEMENT

It is agreed that, solely with respect to any criminal proceeding against a DIRECTOR or OFFICER covered under this POLICY as a CLAIM, the definition of DEFENSE COSTS in Definition (C) shall also include:

(1)   all reasonable and necessary fees and expenses incurred by or on behalf of such DIRECTOR or OFFICER to resist, or to obtain the discharge or revocation of, a judicial order or ruling to extradite such DIRECTOR or OFFICER to the jurisdiction in which such criminal proceeding is pending; and

(2)   the reasonable premium for any appeal, bail, attachment or similar bond or financial instrument incurred by or on behalf of such DIRECTOR or OFFICER by reason of such CLAIM; provided the INSURER shall have no obligation to apply for or provide any collateral for any such bond or financial instrument.

_____
Signature of Authorized Representative

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 27 of 51

Print Date: 05/31/2017  11:37:38



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. 7                                    Effective date of Endorsement May 20, 2017

Attached to and forming part of POLICY No.  DP5008417P

INSURED ORGANIZATION    PG&E Corporation

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

**RETENTION AMENDED**
**(Erosion by Any Other Source)**

Section IV., RETENTION, (E) is replaced by the following:

Payment of INDEMNITY or DEFENSE COSTS by the INSURED ORGANIZATION or any other source (including and any excess "difference in conditions" insurer) which, except for the amount thereof, would have been payable under this POLICY may reduce or exhaust the RETENTION.

_Fred C. M J._
Signature of Authorized Representative

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 28
of 51



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. 8                           Effective date of Endorsement May 20, 2017

Attached to and forming part of POLICY No. DP5008417P

INSURED ORGANIZATION    PG&E Corporation

It is understood and agreed that this POLICY is hereby amended as indicated. All other terms and conditions of this POLICY remain unchanged.

**RETENTION AMENDED**
**(Event Study Costs)**

I.    Section IV., RETENTION, is amended by the addition of the following provision:

No RETENTION shall apply to any EVENT STUDY COSTS.

II.    Section VI., Definitions, is amended to include the following:

EVENT STUDY COSTS means reasonable and necessary fees and expenses incurred by or on behalf of the INSUREDS for an actual or prospective expert witness in a SECURITIES CLAIM to conduct an event study for the purpose of evaluating the impact (if any) to the market price of the INSURED ORGANIZATION'S stock by alleged corrective disclosures identified in the SECURITIES CLAIM, provided such fees and expenses are otherwise included within this POLICY'S Definition of DEFENSE COSTS.

_Fred C. M J._
Signature of Authorized Representative



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. 9          Effective date of Endorsement May 20, 2017

Attached to and forming part of POLICY No.   DP5008417P

INSURED ORGANIZATION    PG&E Corporation

It is understood and agreed that this POLICY is hereby amended as indicated. All other terms and conditions of this POLICY remain unchanged.

## PRIORITY OF PAYMENTS AMENDED

Section V., Priority of Payments, is amended by the addition of the following:

In the event the INSURED ORGANIZATION becomes a debtor-in-possession or an equivalent status under the United States Bankruptcy Code or the law of any other country and the aggregate ULTIMATE NET LOSS due under this POLICY exceeds the remaining available Limit of Liability, the INSURER shall:

(A) First pay such ULTIMATE NET LOSS allocable to WRONGFUL ACTS that are actually or allegedly caused, committed, or attempted prior to the INSURED ORGANIZATION becoming a debtor-in-possession or such equivalent status; then

(B) Second, with respect to whatever remaining amount of the Limit of Liability is available after payment under (A) above, pay such ULTIMATE NET LOSS allocable to WRONGFUL ACTS that are actually or allegedly caused, committed, or attempted after the INSURED ORGANIZATION became a debtor in possession or such equivalent status.

_Fred C. M J._

Signature of Authorized Representative

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 30 of 51



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. 10                                    Effective date of Endorsement May 20, 2017

Attached to and forming part of POLICY No.  DP5008417P

INSURED ORGANIZATION   PG&E Corporation

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

### DEFINITION (B) CLAIM AMENDED
### (Mediation or ADR Proceeding)

Section VI., Definitions, (B) CLAIM is amended to also mean:

a written demand upon any INSURED to engage in a mediation or other accredited alternative dispute resolution proceeding.

Signature of Authorized Representative

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 31
of 51

Print Date: 05/31/2017  11:37:39



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>11</u>                                    Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No.  <u>DP5008417P</u>

INSURED ORGANIZATION   <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

**OUTSIDE ORGANIZATION COVERAGE AMENDED**
**(Blanket For-Profit and Not-For-Profit with Exceptions)**

I.    Section VI., Definitions, (D) DIRECTOR and OFFICER, subpart (7) is replaced with the following:

(7)    any natural person described in paragraphs (1), (2), (3) or (5) above who is serving or has served with the knowledge and consent of the INSURED ORGANIZATION in an equivalent position with, or as a member of the Management or Operating Committee of, any OUTSIDE ORGANIZATION;

II.   Section VI., Definitions, (H) FOR-PROFIT OUTSIDE ORGANIZATION and (O) NOT-FOR-PROFIT OUTSIDE ORGANIZATION are replaced as follows:

(H)    FOR-PROFIT OUTSIDE ORGANIZATION means any organization or JOINT VENTURE other than:

(1)    the INSURED ORGANIZATION; or
(2)    a NOT-FOR-PROFIT OUTSIDE ORGANIZATION; or
(3)    any Financial Institution, including without limitation any organization that is a bank, credit union, insurance company, mutual fund, investment company, broker/dealer or trust company; or
(4)    any organization the securities of which are publicly traded and/or listed on a securities exchange.

FOR-PROFIT OUTSIDE ORGANIZATION shall also include any for-profit organization specifically listed in a "Schedule of FOR-PROFIT OUTSIDE ORGANIZATIONS" attached to this POLICY or to a prior Directors and Officers Liability Policy issued by the INSURER to the INSURED ORGANIZATION.

(O)    NOT-FOR-PROFIT OUTSIDE ORGANIZATION means any not-for-profit organization that is exempt from Federal taxation, but does not include any Independent System Operator (ISO) or Regional Transmission Organization (RTO).

_____
Signature of Authorized Representative

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 32 of 51

Print Date: 05/31/2017  11:37:40



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>12</u>                                    Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No.  <u>DP5008417P</u>

INSURED ORGANIZATION   <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

## DEFINITION OF DIRECTOR AND OFFICER AMENDED
### (Listed Position or Title)

Section VI., Definitions, (D) DIRECTOR and OFFICER is amended to include any natural person who has served, is now serving, or shall serve the INSURED ORGANIZATION in any of the following positions or with the following titles:

<u>Position or Title</u>

Advisory Director or Director Emeritus; or

Contract Officer

_____
Signature of Authorized Representative

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 33 of 51

Print Date: 05/31/2017  11:37:40



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>13</u>                                    Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No. <u>DP5008417P</u>

INSURED ORGANIZATION   <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

### AMENDED DEFINITION (I) INDEMNITY ENDORSEMENT

Section VI., Definitions, (I) INDEMNITY is amended by the addition of the following:

The exclusion in such definition for fines and penalties shall not apply to any fines or penalties for an unintentional or nonwillful violation of law, and the insurability of any such fines or penalties shall be determined under the law of the jurisdiction that is most favorable to the insurability of such fines or penalties as provided in such definition.

_Fred C. M Jr._

Signature of Authorized Representative

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 34
of 51



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. 14                                          Effective date of Endorsement May 20, 2017

Attached to and forming part of POLICY No.  DP5008417P

INSURED ORGANIZATION   PG&E Corporation

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

### DEFINITION (I) INDEMNITY AMENDED
### (Plaintiffs' Fees Award)

Section VI., Definitions, (I) INDEMNITY is amended to also mean:

> Any plaintiffs' attorney fees and costs which the INSUREDS shall become legally obligated to pay as a result of a covered CLAIM, including without limitation any such plaintiffs' attorney fees and costs in a shareholder derivative lawsuit under Insuring Agreement I.(C); provided that any coverage under this POLICY for any such plaintiffs' attorney fees and costs shall be subject to all other terms, conditions and limitations in this POLICY.

_Signature of Authorized Representative_

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 35 of 51

Print Date: 05/31/2017  11:37:41



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>15</u>                                                  Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No.  <u>DP5008417P</u>

INSURED ORGANIZATION   <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

### DEFINITION (J) INSURED ORGANIZATION AMENDED
### (ClimateSmart)

I.    Section VI., Definitions, (J) INSURED ORGANIZATION is amended by the addition of the following:

INSURED ORGANIZATION shall also mean ClimateSmart.

II.   Solely with respect to ClimateSmart, the RETENTION in Item 6B of the Declarations is replaced by the following:

Insuring Agreement I.(B) or I.(C) $250,000 each CLAIM

III.  The RETENTION for Insuring Agreement I.(B) shall apply to all INDEMNITY and DEFENSE COSTS for which indemnification of the DIRECTORS or OFFICERS by the INSURED ORGANIZATION is legally permissible, whether or not such indemnification is granted by the INSURED ORGANIZATION. No RETENTION shall apply if indemnification or payment by the INSURED ORGANIZATION is not legally permissible or if the INSURED ORGANIZATION fails to provide indemnification to DIRECTORS and OFFICERS due to FINANCIAL IMPAIRMENT of the INSURED ORGANIZATION.

_Fred C. M J._
_____
Signature of Authorized Representative

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 36 of 51

Print Date: 05/31/2017  11:37:41



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>16</u>                                  Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No.  <u>DP5008417P</u>

INSURED ORGANIZATION   <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

### DEFINITION (U) SECURITIES CLAIM AMENDED

Section VI., Definitions, (U) SECURITIES CLAIM is replaced by the following:

    (U)  SECURITIES CLAIM shall mean any CLAIM which alleges a violation of any law, regulation or rule, whether statutory or common law, and which in whole or in part is:

        (1)  brought by any person or entity arising out of, based upon or attributable to the purchase or sale of, or offer or solicitation of an offer to purchase or sell, whether actual or alleged, any securities of the INSURED ORGANIZATION; or

        (2)  brought by a securities holder of the INSURED ORGANIZATION with respect to such securities holder's interest in the securities of the INSURED ORGANIZATION.

        SECURITIES CLAIM shall include any criminal proceeding or any administrative or regulatory proceeding against the INSURED ORGANIZATION, but only if and only during the time that such proceeding is also commenced and continuously maintained against a DIRECTOR or OFFICER.

        SECURITIES CLAIM for purposes of Insuring Agreement I.(C) shall not include any employment or compensation related CLAIM brought by a DIRECTOR or OFFICER or other employee of the INSURED ORGANIZATION.

_Fred C. M. J._

Signature of Authorized Representative

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 37 of 51



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>17</u>                                      Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No. <u>DP5008417P</u>

INSURED ORGANIZATION   <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

## AMENDED SEVERABILITY ENDORSEMENT
### (Full Severability for All Insureds)

Section VIII., Representations, is deleted in its entirety and replaced with the following:

(A) In issuing this POLICY, the INSURER has relied upon the statements, representations and information in the APPLICATION. Each INSURED acknowledges and agrees that the statements, representations and information in the APPLICATION are true and accurate to the best of such INSURED'S knowledge and belief.

(B) The APPLICATION shall be construed as a separate APPLICATION for coverage by each INSURED. With respect to the statements, representations and information in such APPLICATION, no knowledge possessed by any INSURED shall be imputed to any other INSURED for the purpose of determining coverage under this POLICY.

(C) If the APPLICATION contains a statement, representation or information that is materially false or inaccurate, then the POLICY will be void from the beginning under Insuring Agreement I.(B) to the extent an INSURED ORGANIZATION indemnifies a DIRECTOR or OFFICER who knew the facts that were not truthfully and accurately disclosed in the APPLICATION.  However, coverage under Insuring   Agreement I.(B) shall not be void to the extent an INSURED ORGANIZATION indemnifies a DIRECTOR or OFFICER who did not possess such knowledge.

(D) The INSURER agrees it will not rescind or void coverage under Insuring Agreement I.(A) in whole or in part for any reason.

Section IX., Conditions, (B) *Severability* is deleted in its entirety and replaced with the following:

(B) *Severability*

Except as provided in Section VIII., Representations, the acts, omissions, knowledge or warranties of an INSURED shall not be imputed to any other INSURED with respect to applying any Exclusion or  otherwise determining coverage under this POLICY.

<u>Signature of Authorized Representative</u>

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 38 of 51



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. 18                                    Effective date of Endorsement May 20, 2017

Attached to and forming part of POLICY No.  DP5008417P

INSURED ORGANIZATION   PG&E Corporation

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

## DELETION OF EXCLUSION (A) ENDORSEMENT

Section VII., Exclusions (A) is deleted in its entirety.

_Signature of Authorized Representative_

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 39 of 51



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>19</u>                                        Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No.  <u>DP5008417P</u>

INSURED ORGANIZATION    <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

## EXCLUSION (B) AMENDED

Section VII., Exclusion (B) is deleted in its entirety and replaced with the following:

   (B)   based upon, arising out of or attributable to such INSURED:

   (1)   having gained any personal profit, financial advantage or remuneration to which such INSURED was not legally entitled; or

   (2)   having committed a deliberately fraudulent or criminal act or omission or any intentional violation of any law, statute or regulation;

   if established by a final, non-appealable adjudication in the underlying proceeding.

_Signature of Authorized Representative_



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>20</u>                                          Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No.  <u>DP5008417P</u>

INSURED ORGANIZATION   <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

### EXCLUSION (D) AMENDED
### (Delete Subparts 1, 2, 5 and 6)

Section VII., Exclusions, (D) is deleted in its entirety and replaced with the following:

(D)   for any injury arising out of:

(1)   any employment-related WRONGFUL ACT including but not limited to the actual or constructive termination of employment, demotion, failure to employ or promote, deprivation of a career opportunity, or employment discipline or evaluation in a manner which violates the laws or regulations of any jurisdiction, or which breaches any implied contract to continue employment;

(2)   discrimination or sexual harassment;

provided this Exclusion (D) shall not apply to any SECURITIES CLAIM arising out of such events.

_____

Signature of Authorized Representative

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 41 of 51



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>21</u>                                      Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No.  <u>DP5008417P</u>

INSURED ORGANIZATION   <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

**EXCLUSION (E) AMENDED**
**(Insured Organization Plans Only)**

Section VII., Exclusions, (E) is amended by the addition of the following:

 Provided, this Exclusion shall only apply with respect to plans, programs and trusts established or maintained in whole or in part for the benefit of employees of the INSURED ORGANIZATION.

_Fred C. M g_

Signature of Authorized Representative

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 42 of 51



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>22</u>                                    Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No.  <u>DP5008417P</u>

INSURED ORGANIZATION   <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

## AMENDED EXCLUSION (F) EBL ENDORSEMENT

Section VII., Exclusions (F) is deleted in its entirety and replaced with the following:

(F)    for the rendering of advice with respect to, the interpreting of, or the handling of records in connection with the enrollment, termination or cancellation of employees under the INSURED ORGANIZATION'S group life insurance, group accident or health insurance, pension plans, employee stock subscription plans, workers' compensation, unemployment insurance, social security, disability benefits and any other employee benefit programs.

_Fred C. M J._
Signature of Authorized Representative

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 43
of 51

Print Date: 05/31/2017  11:37:44



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. 23                                     Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No.  <u>DP5008417P</u>

INSURED ORGANIZATION   <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated. All other terms and conditions of this POLICY remain unchanged.

**EXCLUSION (G) AMENDED**
**(Given and Accepted)**

Section VII., Exclusions, (G) is deleted in its entirely and replaced by the following:

(G)   based upon, arising out of or attributable to any circumstance of which, prior to the inception of this POLICY, written notice was given and accepted as valid under any Directors and Officers liability Insurance Policy (whether issued by the INSURER or any other Insurer) or any DISCOVERY PERIOD thereof.

_____
Signature of Authorized Representative

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 44 of 51



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>24</u>　　　　　　　　　　　　　　Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No.　<u>DP5008417P</u>

INSURED ORGANIZATION　　<u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.　All other terms and conditions of this POLICY remain unchanged.

**EXCLUSION (J) AMENDED**
**(Broad Exception for Derivative Actions)**

Section VII., Exclusions, (J) subpart (1) is replaced by the following:

　　　(1) brought derivatively by a security holder of the INSURED ORGANIZATION;

_____
Signature of Authorized Representative



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. 25                           Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No.  <u>DP5008417P</u>

INSURED ORGANIZATION   <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated. All other terms and conditions of this POLICY remain unchanged.

### ACQUISITION, MERGER AND DISSOLUTION AMENDED
### (Change Consideration Threshold)

Section IX., Conditions, (C) Acquisition, Merger and Dissolution, subpart (1) is amended by changing the reference therein from "fifteen percent (15%)" to "twenty-five (25%)".

_Signature of Authorized Representative_



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>26</u>                                    Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No.  <u>DP5008417P</u>

INSURED ORGANIZATION   <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

### CONDITION (D) NON-DUPLICATION OF LIMITS DELETED

Section IX., Conditions, (D) *Non-Duplication of Limits* is deleted in its entirety.

<br/>

_____

Signature of Authorized Representative

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 47
of 51

Print Date: 05/31/2017  11:37:46


# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>27</u>                                                          Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No.  <u>DP5008417P</u>

INSURED ORGANIZATION    <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

**NOTICE PROVISION AMENDED**
**(Late Notice)**

Section IX., Conditions, (E) *Reporting of Claims and Shareholder Derivative Demands* is amended by adding the following:

> If an INSURED fails to provide timely notice of a CLAIM or SHAREHOLDER DERIVATIVE DEMAND to the INSURER as specified in this Condition (E), the INSURER shall not be entitled to deny coverage for the CLAIM or SHAREHOLDER DERIVATIVE DEMAND based solely upon late notice unless the INSURER can demonstrate its interests were materially prejudiced by reason of such late notice.

_Signature of Authorized Representative_

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 48 of 51



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>28</u>                                    Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No.  <u>DP5008417P</u>

INSURED ORGANIZATION   <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

## CONDITION (F) DEFENSE, COOPERATION AND SETTLEMENT AMENDED
### (Severability of Cooperation)

Section IX., Conditions, (F) *Defense, Cooperation and Settlement* is amended by the addition of the following:

> The failure of any INSURED to comply with the provisions above shall not impair the rights of any other INSURED under this POLICY.

_____
Signature of Authorized Representative

Case: 19-30088   Doc# 7510-1   Filed: 05/22/20   Entered: 05/22/20 15:54:07   Page 49 of 51



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>29</u>                                                  Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No.  <u>DP5008417P</u>

INSURED ORGANIZATION   <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

### CONDITION (M) CANCELLATION AMENDED
### (Pro Rata Cancellation)

Section IX., Conditions, (M) *Cancellation* is replaced by the following:

(M)   *Cancellation*

This POLICY:

(1)   may be cancelled at any time by the INSURED ORGANIZATION (except as provided in Condition (C)) by delivering written notice to the INSURER stating when thereafter cancellation shall be effective;

(2)   may not be cancelled by the INSURER, except for nonpayment of premium, in which case such cancellation shall be effective ten (10) days after the date notice thereof is given by the INSURER to the INSURED ORGANIZATION.

Notice provided in accordance with Condition (V) below shall be sufficient proof that notice has been given, and the POLICY PERIOD shall end on the effective date and hour of cancellation, as stated above.

In the event of cancellation by the INSURED ORGANIZATION or the INSURER, the INSURER shall retain the pro-rata proportion of the Rated Premium stated in Item 4 of the Declarations and the pro-rata unearned Continuity Credit.

---

_Signature of Authorized Representative_



# ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

Endorsement No. <u>30</u>                                     Effective date of Endorsement <u>May 20, 2017</u>

Attached to and forming part of POLICY No.  <u>DP5008417P</u>

INSURED ORGANIZATION   <u>PG&E Corporation</u>

It is understood and agreed that this POLICY is hereby amended as indicated.  All other terms and conditions of this POLICY remain unchanged.

## CONDITION (Q) CONSTRUCTION AMENDED
### (Silent on Jurisdiction)

Section IX., Conditions, (Q) *Construction* is deleted in its entirety and replaced by the following:

(Q) *Construction*

The terms of this POLICY are to be construed in an evenhanded fashion as between the INSURED ORGANIZATION, the DIRECTORS or OFFICERS and the INSURER.  Any claim for coverage of punitive, exemplary or multiple damages shall be governed by the law of the jurisdiction that is most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the involved DIRECTORS or OFFICERS, the INSURED ORGANIZATION, or the CLAIM giving rise to such damages.  Where the language of this POLICY is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in a manner most consistent with the relevant terms of this POLICY without regard to authorship of the language and without any presumption or arbitrary interpretation or construction in favor of either the INSURED ORGANIZATION, the DIRECTORS or OFFICERS or the INSURER.  In deciding any controversy or dispute arising out of or relating to this POLICY, due consideration shall be given to the customs and usages of the insurance industry.  No damages in excess of compensatory damages shall be awarded in any controversy or dispute between the INSURER, on the one hand, and the INSURED ORGANIZATION and/or the DIRECTORS and OFFICERS, on the other hand, and each party hereby irrevocably waives any such damages.

_Signature of Authorized Representative_

Case: 19-30088    Doc# 7510-1    Filed: 05/22/20    Entered: 05/22/20 15:54:07    Page 51 of 51