WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

JONES DAY
Bruce S. Bennett (SBN 105430)
(bbennett@jonesday.com)
Joshua M. Mester (SBN 194783)
(jmester@jonesday.com)
James O. Johnston (SBN 167330)
(jjohnston@jonesday.com)
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071-2300
Tel: 213 489 3939
Fax: 213 243 2539

*Attorneys for Shareholder Proponents*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>   - and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                              **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DECLARATION OF KENNETH S. ZIMAN IN SUPPORT OF CONFIRMATION OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Pursuant to 28 U.S.C. § 1746, I, Kenneth S. Ziman, hereby declare as follows under penalty of perjury:

1.  I am a Managing Director in the Restructuring Group at Lazard Frères & Co. LLC ("**Lazard**"), an investment banking firm that has its principal office at 30 Rockefeller Plaza, New York, New York 10112. Lazard is the primary U.S. operating subsidiary of a preeminent international investment banking, financial advisory, and asset management firm. Together with its predecessors and affiliates, Lazard has been advising clients around the world for over 165 years. Lazard and its professionals have considerable expertise and experience in providing investment banking and financial advisory services to financially distressed companies and to creditors, equity holders and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court. In addition, Lazard's investment banking professionals have extensive experience in advising debtors in chapter 11 cases and have served as investment bankers to numerous debtors, chapter 11 trustees, creditors' committees and buyers in chapter 11 cases. Since 1990, Lazard professionals have been involved in over 250 restructurings, representing over $1 trillion in debtor assets.

2.  At Lazard, I specialize in advising public and private companies and creditor groups in complex financial restructurings and in raising capital for, selling, or acquiring financially distressed businesses. I have nearly 30 years of experience in corporate finance and restructuring. I joined Lazard in March 2016 after a more than 25-year career as a bankruptcy and restructuring lawyer, previously as a partner at Simpson Thacher & Bartlett LLP and most recently as the Deputy Practice Leader of Skadden, Arps, Slate, Meagher & Flom LLP's Corporate Restructuring department. Throughout my career I have represented debtors, individual creditors, official creditors' committees, unofficial bondholder committees, and other parties in interest in numerous in-court and out-of-court restructurings and recapitalizations involving companies in multiple industries, including those of Takata Corporation, Cobalt International Energy, Inc., ManorCare Inc., Gavilan Resources LLC, SunEdison, Inc., CGG Holdings (U.S.) Inc., Millennium Health, LLC, Dendreon Corporation, Exide Technologies, Savient Pharmaceuticals, Inc., Energy Future Holdings Corporation, Residential Capital, LLC, Select Staffing, iPayment, Inc. and MF Global Holdings Ltd. I have submitted declarations

1  and/or affidavits or have had testimony proffered in CGG, SunEdison and GCX Limited, among other
2  cases.

3     3.   I graduated from Colgate University with a B.A. and I have a law degree from the
4  University of Pennsylvania Law School.

5     4.   Lazard is a long-time advisor to PG&E Corporation ("**PG&E Corp**."), and its primary
6  operating subsidiary, Pacific Gas and Electric Company (the "**Utility**"; together with PG&E Corp.,
7  "**PG&E**", the "**Company**" or the "**Debtors**"), with the initial engagement for advisory services starting
8  in 2011.  Since that time, Lazard has provided financial advisory and investment banking services to
9  PG&E with respect to a variety of matters, including, without limitation: analysis of the financial
10 condition of the Company, evaluation of potential transactions that the Company may pursue,
11 assessment of financing options, and shareholder advisory services.  Given Lazard's long history with
12 PG&E, Lazard has significant familiarity with and knowledge of the Debtors' business, operations, and
13 financial challenges.

14    5.   Lazard currently serves as investment banker to the Debtors in their Chapter 11 Cases.
15 In such capacity, Lazard assists the Company in its assessment of its ability to raise capital and its
16 evaluation of the sources of financing required in order to successfully emerge from the Chapter 11
17 Cases.  During the course of these cases, Lazard has been directly and indirectly involved with various
18 stakeholders and other potential financing sources regarding, among other things, their willingness to
19 invest in the Company to finance its emergence from chapter 11.

20    6.   I submit this Declaration (the "**Declaration**") in support of confirmation of the *Debtors'*
21 *and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* [Docket
22 No. 6320] (as it may be amended, modified or supplemented, and together with any exhibits or
23 schedules thereto, the "**Plan**").[1]  Together with the Debtors' counsel and other advisors, I have
24 reviewed, and I am generally familiar with, the terms and provisions of the Plan, the documents
25 comprising the Plan Supplement, the Proposed Confirmation Order, the Memorandum, and the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or the *Plan Proponents' Joint Memorandum of Law and Omnibus Reply in Support of Confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* (the "**Memorandum**"), filed contemporaneously herewith, as applicable.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

requirements for confirmation of the Plan pursuant to section 1129 of title 11 of the United States Code (the "**Bankruptcy Code**").

7. Except as otherwise indicated, the facts set forth in this Declaration (or incorporated by reference herein) are based upon my personal knowledge, including my review of relevant documents and the Debtors' books and records, information provided to me by employees working under my supervision, my experience and knowledge related to the Debtors' operations, businesses, and financial condition, and information supplied to me by the Debtors and the Debtors' other professionals and advisors. If I am called upon to testify, I would testify competently to the facts set forth herein. I am authorized to submit this Declaration on behalf of the Debtors.

8. The Plan is predicated on total financing sources of approximately $59 billion, consisting of $38.1 billion of debt capital, $15.75 billion of equity capital, $2.2 billion of insurance proceeds and the remainder to come from anticipated cash on the Company's balance sheet at emergence.

9. As of the start of the Confirmation Hearing, the Debtors expect to have commitments for nearly all of the approximately $54 billion of debt and equity financing components of the emergence financing.[2] The approximate $38 billion in debt capital commitments are comprised of a variety of potential sources, including:

    a. approximately $21.4 billion of prepetition bank and bond debt that is either being reinstated ($9.6 billion) or refinanced ($11.9 billion) in accordance with the terms of the Noteholder RSA, which was approved by this Bankruptcy Court on February 4, 2020, and as provided in the Plan;

    b. $6 billion of bank financing per the terms of the bank commitments that the Company has received and expects to have fully executed prior to Confirmation;[3] and

---

[2] The Financial Projections assume total sources of funding of approximately $59 billion after including cash, insurance, and certain deferred cash payments.

[3] The Company has filed a securitization application, and, if approved, will repay this debt in March 2021 with proceeds of the securitization.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

      c.    $10.7 billion of bond financing proceeds ($5.9 billion of investment grade bonds at the Utility and $4.75 billion of high yield bonds at PG&E Corp.), which are to be raised in the public debt markets immediately following entry of the Proposed Confirmation Order. Based on feedback received to date from the Company's financing banks (which does not include Lazard), the Company has no reason to believe it will not be able to successfully raise this debt in the public debt markets as contemplated; nevertheless, the Company retains access to $10.8 billion of bridge financing commitments, which were approved by the Court on March 16, 2020, if necessary to address this financing need.

10.     Given the foregoing, Lazard expects that the Debtors will be able to raise the debt capital contemplated by the Plan necessary to fund their emergence from chapter 11.

11.     In terms of the $15.75 billion of nominal equity capital contemplated by the Plan, $6.75 billion of such nominal equity capital will be issued at Fire Victim Equity Value to the Fire Victim Trust pursuant to the Plan, and $9 billion of cash equity financing is to be raised from investors. As previously described in my prior declaration, dated March 2, 2020 [Docket No. 6014], regarding the Final Equity Backstop Commitment Letters, which were approved by the Court on March 16, 2020, the Debtors will raise the $9 billion of equity financing either by way of a public market offering, a Rights Offering, or by relying on the Backstop Commitments.

12.     The Rights Offering Procedures, a true and correct copy of which is attached hereto as **<u>Exhibit A</u>**, are customary and consistent with the terms and conditions outlined in the Equity Backstop Commitment Letters and their approval is necessary to effectuate the Rights Offering. If it is determined to pursue a Rights Offering, it will be made available to all stockholders of record and will be registered under the Securities Act of 1933, as amended.

13.     The Debtors are currently working with their financing banks and Lazard to evaluate strategies with respect to raising equity in the public markets and engaging with potential investors regarding the same. The Debtors intend to launch the equity offering shortly after entry of the Confirmation Order, and to also raise the public debt described above. The Debtors are focused on

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

raising the $9 billion of equity capital at the best possible price. If necessary, the cash to be raised by equity is available to the Debtors under the Backstop Commitments, which remain in full force and effect as of the date hereof.

14. Finally, to ensure adequate liquidity and flexibility upon emergence from chapter 11, the Debtors have also arranged multiple working capital facilities, including a $3.5 billion Utility revolving credit facility and a $500 million PG&E Corp. revolving credit facility. Furthermore, the Debtors are in the process of arranging a $1 billion accounts receivable facility at the Utility that I understand from the Company will be available around the time of emergence from chapter 11. Taken together, the Debtors anticipate having access to $4.5 billion of liquidity at the Utility and $500 million at PG&E Corp. to finance the Company upon emergence and on a go-forward basis. Based on the Financial Projections and other information provided by the Company, these working capital facilities should be sufficient to meet the Company's post-emergence needs.

15. As is customary, obtaining these sources of capital and the related commitments will require, among other things, (i) appropriate authorizations and approvals to enter into the relevant documents and agreements and making filings and recordings as contemplated by the Plan Funding and Exit Financing; and (ii) authorization to pay the fees and expenses associated therewith to ensure the availability of such capital and the Debtors' timely emergence from chapter 11.

16. In sum, based on the foregoing and information provided by the financing banks and the Company, I believe that the Debtors will have the necessary sources of financing in order to emerge from these Chapter 11 Cases in a timely manner, and to meet their obligations under the Plan.

17. In addition, the Debtors and their advisors have been engaged in negotiations with the Tort Claimants Committee and its advisors with respect to a Registration Rights Agreement relating to the shares to be transferred to the Fire Victim Trust pursuant to the Plan. The proposed agreement provided to the Tort Claimants Committee is consistent with the recommendations of the Debtors' equity underwriter.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: May 22, 2020
      Greenwich, CT

                                                               */s/ Kenneth S. Ziman*
                                                                 Kenneth S. Ziman

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119