RICHARD A. MARSHACK, #107291
rmarshack@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, California 92620
Tel: (949) 333-7777
Fax: (949) 333-7778

GERALD SINGLETON, SBN 208783
JOHN LEMON, SBN 175847
SINGLETON LAW FIRM, APC
450 A Street, 5th Floor
San Diego, CA 92101
Tel: (619) 771-3473
Fax: (619) 255-1515
gerald@slffirm.com

Attorneys for SLF Fire Victim Claimants

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>PG&E CORPORATION,<br><br>and<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br><br>Debtors<br><br>Affects:<br>☐ PG&E Corporation<br>☐ Pacific Gas & Electric Company<br>☒ Both Debtors<br><br>* All papers shall be filed in the Lead Case No. 19-30088 (DM). | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case – Jointly Administered)<br><br>**THE SINGLETON LAW FIRM FIRE VICTIM CLAIMANTS (1) REPLY IN SUPPORT OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 16, 2020; AND (2) LIMITED JOINDER IN THE OBJECTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO CONFIRMATION OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 16, 2020** |

|                                                    | ) (Docket No. 7306)                          |
|                                                    | )                                            |
|                                                    | ) **Hearing Date:**                          |
|                                                    | )                                            |
|                                                    | ) Date:    May 27, 2020                      |
|                                                    | ) Time:    10:00 a.m. (Pacific)              |
|                                                    | ) Place:   Telephonic Appearance Only        |
|                                                    | )          United States Bankruptcy          |
|                                                    | )          Courtroom 17, 16th Floor          |
|                                                    | )          San Francisco, CA 94102           |
|                                                    | )                                            |

TO THE COURT, ALL COUNSEL, AND ALL INTERESTED PARTIES

The Singleton Law Firm ("SLF"), who together with their co-counsel, represent roughly 7,000 individual fire victim claimants ("SLF Fire Victim Claimants"), hereby file this pleading to (1) support *Confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* and (2) join in certain arguments raised in the *Objection of the Official Committee of Tort Claimants to Confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* (Docket No. 7306) filed on May 15, 2020.

## I.  SUMMARY

The SLF Fire Victim Claimants support confirmation of the Plan.[1] We have raised the following limited objections because, as noted by the Official Committee of Tort Claimants ("TCC"), the current iteration of the Plan does not integrate <u>all</u> parts of the RSA. As it stands, there are Plan provisions that fall short of what was memorialized in the RSA. Specifically, the Plan's current language regarding claims assigned to the Fire Victim Trust ("Trust") is more restrictive than that of the RSA and

---

[1] Terms not defined herein are as defined in the *Objection of the Official Committee of Tort Claimants to Confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020 (Docket No. 7306) filed on May 15, 2020.*

may result in future disputes over whether certain third-party claims were assigned to the Trust. The Plan's current language also broadens the definition of a Subrogation Wildfire Claim, which may result in increased claims against the Trust.

Additionally, the SLF Fire Victim Claimants agree with the TCC that a "reasonable" registration rights agreement is needed that does not favor equity at the expense of Fire Victims.

Finally, Debtors should not have with the sole ability to bind others based on their interpretation of the Plan. To the extent that the parties cannot agree, disputes should be resolved by the Court.

## II. GENERAL SUPPORT OF PLAN SUBJECT TO CLARIFICATIONS

### A. Confirmation of Assigned Claims Versus Retained Claims

All rights and causes of action bargained for as part of the RSA should be assigned to the Fire Victim Trust, and any proposal that seeks to limit the Assigned Rights and Causes of Action beyond what is provided for in the RSA is impermissible.

Although the RSA and the Plan contain the same definition of Assigned Rights and Causes of Action [Compare, Plan § 1.189 and RSA/Settlement Amendment, Article I] the supplement filed by Debtors on May 1 seems to expand the scope of their retained rights. *See*, Dkt. No. 7037, pp. 1933-1937 ("Debtors' Schedule"). To the extent there is confusion about the scope of the Assigned Claims and Causes of Action, the RSA should be referred to as it is clear as to what "Assigned Rights and Causes of Action" encompasses:

> any and all rights, claims, causes of action, and defenses related thereto relating directly or indirectly to any of the Fires that the Debtors may have against vendors, suppliers, third party contractors and consultants (including those who provided services regarding the Debtors' electrical system, system equipment, inspection and maintenance of the system, and vegetation management), former directors and officers of the Debtors solely to the extent of any directors and officers Side B insurance coverage, and others as mutually agreed upon by the Plan Proponents and identified in the Schedule of Assigned Rights and Causes of Action.

*See* RSA/Settlement Amendment, Article I.

This language includes both claims (1) against third party contractors based on breach of contract, aiding and abetting the wrongful acts of Directors and Officers, property damage, professional negligence, and other claims sounding in tort; and (2) against insurance companies and other similar vendors, many of which arise from the Debtors' contracted right to be an "additional insured" in Third Parties' insurance policies.

Debtors' Schedule seems to infringe on these claims such that the Trust might be limited to insurance recovery only and thus lose all the claims noted by the TCC, including: (1) contractual indemnity claims not already asserted by the Debtors; (2) claims for property damage caused by Fires; (3) claims that pertain "indirectly" to the Fires; and (4) all claims that do not arise from "causation" of the Fires; and (5) claims for fraud, negligence or other common law counts that cannot be described as "a failure to provide contracted services in the manner required by the applicable contract" would be lost to the Trust.

Adopting Debtors' Schedule would significantly reduce the value of the previously bargained for Assigned Claims set forth in the RSA.

**Proposed Solution**: As noted by the TCC, the Court should: (1) confirm that the RSA's definition of Assigned Claims as incorporated into § 1.8 of the Plan is the controlling language; (2) strike the Debtors' Schedule from the Plan; and (3) find that the TCC Schedule is the operative Schedule of Assigned Rights and Causes of Action for purposes of providing notice by Plan confirmation of the nature and scope of Assigned Claims. Alternatively, the Court should require the Debtors to compensate the Fire Victim Trust for the value of all claims that would have been assigned to the Trust under the language of the RSA but which are not assigned due to the new language adopted by the Debtors.

//

//

### B. Per the RSA, a "Reasonable" Registration Rights Agreement that Does Not Favor Equity Over the Fire Victims is Required

All parties can agree that the stock Registration Rights Agreement is a crucial part of the RSA. The issue is that Debtors have failed to provide a required "reasonable" Registration Rights Agreement, which would provide the Fire Victim Trust with the same registration and lock-up terms as the insider Equity Backstop Parties. *See*, RSA/Settlement Amendment, at § 3. Under the Debtors' scenario, Fire Victim Trust will have to wait before the stock can be resold and lead to cash payments to Fire Victims, while Equity Backstop Parties would not have this impediment. Under the TCC's proposed scenario, the Fire Victim Trust would have rights no less favorable than the Equity Backstop Parties.

**<u>Proposed Solution</u>**: The Court should order the imposition of a "reasonable" Registration Rights Agreement that treats the Fire Victims Trust the same as the Equity Backstop Parties.

### C. Added Exception to The Subrogation Wildfire Claim Definition Should Not Be Permitted If It Inequitably Shifts More Claims to the Fire Victim Trust

As noted by the TCC, the definition of "Subrogation Wildfire Claim" has been amended to add a new exception/exclusion: "(b) any Fire Claim asserting direct injury to a fire victim, regardless of whether the claimant is an insured and has received or will receive a recovery from their insurer, and any such claims are not the subject of, or compromised under, the Subrogation Claims RSA." *See,* Plan, Dkt. No. 6320 at § 1.201.

The potential effect of the amendment is permit claims that otherwise would have to be satisfied from the Subrogation Trust to be satisfied from the Fire Victim Trust. Fortunately, such a result is insulated by language in the Fire Victim Trust providing the Fire Victim Trust will hold setoff rights against any Fire Victim's claim in the amount of insurance benefits that have not been paid. *See*, Dk. No. 7306, Exhibit

T to Richardson Decl., at p. 1874, Section 2.6; and p. 1911, Section X.A. The Fire Victim Trust was a tremendous undertaking by various professionals to ensure certainty and fairness for Fire Victims. If newly added exception/exclusion to the definition of Subrogation Wildfire Claim means the delicate balance struck by various parties will be disturbed such an amendment should not be permitted.

**Proposed Solution**: The Court should (1) approve the Fire Victim Trust Agreement as filed as it relates to the Fire Victim Trust's right to set off potential insurance recoveries, or (2) restore the definition of "Subrogation Wildfire Claim" that existed in the November Plan when the RSA was approved; and (3) confirm that nothing in the Plan or Subrogation RSA releases any insurer from its ongoing contractual or equitable obligations to any Fire Victim under their policy.

### D. The Reorganized Debtors Should Not Have the Exclusive Right to Unilaterally Interpret the Plan

Lastly, the current language of the Plan appears to assign to the Debtors the unilateral authority to interpret the Plan:

> "Interpretation; Application of Definitions and Rules of Construction," subpart (j) any "effectuating provisions[2]" *may* be interpreted "<u>by the Reorganized Debtors</u> in a manner consistent with the overall purpose and intent of the Plan, <u>all without further notice to or action, order, or approval of the court or any other entity, and such interpretation shall control in all respects</u>.

*See*, Plan, Dkt. No. 6320 at pg. 42 of 107 (emphasis added).

While this provision states that Debtors <u>may</u> interpret any effectuating provisions "in a manner consistent with the overall purpose and intent of the Plan," it does not <u>require</u> Debtors to do so. *Id.* Similarly, the current language of this provision does not allow any other party to offer an alternative interpretation. Carried to its logical conclusion, this provision would improperly grant the Debtors the exclusive

---

[2] "Effectuating provisions" is an undefined term and vague.

right to interpret Plan provisions, cutting off creditors' due process rights and usurping court authority. Since the SLF Fire Victim Claimants are confident this was not the Debtors' intent in drafting this language, this appears to be a drafting issue that can be readily resolved.

**Proposed Solution**: Subpart (j) of Article I, "*Interpretation; Application of Definitions and Rules of Construction*", of the Plan should be revised as follows:

> (j) ~~any effectuating provisions may~~ the Plan will be interpreted ~~by the Reorganized Debtors~~ in a manner consistent with the overall purpose and intent of the Plan ~~, all without further notice to or action, order, or approval of the court or any other entity, and such interpretation shall control in all respects~~.

### E. Reservation of Rights regarding Objections Raised by the United States Trustee

The SLF Fire Victim Claimants reserve their rights with respect to all objections raised by the Office of the United States Trustee. *See*, Dkt. No. 7283.

## III. CONCLUSION

While the SLF Fire Victim Claimants support the Plan, they respectfully request that the Court make modify and clarify the current language of the Plan as requested herein.

Respectfully submitted,

Dated: May 22, 2020     MARSHACK HAYS LLP

By: */s Richard A. Marshack*
RICHARD A. MARSHACK
LAILA MASUD

Dated: May 22, 2020     SINGLETON LAW FIRM, APC

By: */s Gerald Singleton*
Gerald Singleton
John C. Lemon

Attorneys for the SLF Fire Victim Claimants