1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                    -oOo-

4  In Re:                          ) Case No. 19-30088
                                   ) Chapter 11
5  PG&E CORPORATION AND PACIFIC    )
   GAS AND ELECTRIC COMPANY        ) San Francisco, California
6                                  ) Friday, May 22, 2020
                    Debtors.       ) 11:30 AM
7  _____   )
                                     PRE-CONFIRMATION SCHEDULING
8                                    CONFERENCE

9              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE DENNIS MONTALI
10            UNITED STATES BANKRUPTCY JUDGE

11  APPEARANCES (Via Zoom):
    For the Debtors:           STEPHEN KAROTKIN, ESQ.
12                             THEODORE E. TSEKERIDES, ESQ.
                               Weil, Gotshal & Manges LLP
13                             767 Fifth Avenue
                               New York, NY 10153
14                             (212)310-8000

15  For Official Committee of  ROBERT A. JULIAN, ESQ.
    Tort Claimants:            Baker and Hostetler LLP
16                             600 Montgomery Street
                               Suite 3100
17                             San Francisco, CA 94111
                               (415)659-2600
18
    For Official Committee of  JOHN H. MACCONAGHY, ESQ.
19  Tort Claimants:            MacConaghy & Barnier, PLC
                               645 First Street
20                             Suite D
                               Sonoma, CA 95476
21                             (707)935-3205

22  For GER Hospitality, LLC:  FRANCIS O. SCARPULLA, ESQ.
                               Law Offices of Francis O.
23                             Scarpulla
                               456 Montgomery Street
24                             17th Floor
                               San Francisco, CA 94104
25                             (415)788-7210

```
 1
     For William B. Abrams,      WILLIAM B. ABRAMS, PRO SE
 2   Individual and Tubbs Fire   1519 Branch Owl Place
     Claimant:                   Santa Rosa, CA 95409
 3                               (707)397-5727

 4
     For ARB, Inc.:              ROGER F. FRIEDMAN, ESQ.
 5                               Law Offices of Rutan & Tucker
                                 611 Anton Boulevard
 6                               14th Floor
                                 Costa Mesa, CA 92626-1988
 7                               (714)641-5100

 8   For SLF Fire Victim         RICHARD A. MARSHACK, ESQ.
     Claimants:                  Marshack Hays LLP
 9                               870 Roosevelt
                                 Irvine, CA 92620
10                               (949)333-7777

11   For Patricia Garrison:      THOMAS TOSDAL, ESQ.
                                 Tosdal Law Firm
12                               777 S. Highway 101
                                 Suite 215
13                               Solana Beach, CA 92075
                                 (858)704-4710
14

15

16

17
     Court Recorder:             LORENA PARADA/ANKEY THOMAS
18                               United States Bankruptcy
                                 Court
19                               450 Golden Gate Ave.
                                 San Francisco, CA 94102
20

21   Transcriber:                LINDA FERRARA
                                 eScribers, LLC
22                               7227 N. 16th Street
                                 Suite #207
23                               Phoenix, AZ 85020
                                 (973)406-2250
24
     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

PG&E Corporation and Pacific Gas and Electric Company

1    SAN FRANCISCO, CALIFORNIA, FRIDAY, MAY 22, 2020, 11:30 AM

2                              -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  This is the Bankruptcy Court for the

5    Northern District of California.  Court is now in session.  The

6    Honorable Dennis Montali presiding.

7        (Pause.)

8            THE CLERK:  Your Honor, can you hear me?

9            THE COURT:  I can hear you fine.

10           THE CLERK:  Okay.

11           THE COURT:  Can you hear me?

12           THE CLERK:  Yes, I can.  The matter of PG&E

13   Corporation.  One moment, Your Honor, while I bring in the

14   attendees.

15       (Pause.)

16           THE CLERK:  And we're waiting on Mr. MacConaghy, Your

17   Honor.

18           THE COURT:  All right.  I think you can unmute the

19   other panelists.  All right.  For those of you on the screen,

20   I'm not going to follow Judge Donato's procedure and ask you

21   all to make your appearances.  I will ask you to state your

22   name when you first speak so that anyone listening or the audio

23   transcript will get your appearance.

24           And Mr. MacConaghy, I see you're here, and Mr. Julian.

25   There was confusion in my mind last night, and that's why I

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    asked you both to be panelists, because I wasn't sure who was

2    going to make the argument, so you can clarify that.  And if

3    you one of -- Mr. MacConaghy, particularly, if you are not

4    going to do it, I probably will have Ms. Parada send you back

5    to the attendee panel, just so we won't have people on the

6    screen who aren't going to be active, but you and Mr. Julian

7    can clarify your position on that.

8        Mr. Karotkin, can you hear me all right?

9        MR. KAROTKIN:  Yes, sir.

10       THE COURT:  I got your statement of your witnesses,

11   but I don't know if you have filed the declarations yet.  I've

12   been away from my court access for the last little while.  Are

13   those filed yet?

14       MR. KAROTKIN:  No, sir.

15       THE COURT:  Okay.

16       MR. KAROTKIN:  That will be filed later this

17   afternoon --

18       THE COURT:  Okay.

19       MR. KAROTKIN:  -- your time.

20       THE COURT:  Okay.  All right.  Well, let me make a few

21   preliminary comments for you, but also the other attorneys, and

22   particularly attorneys who are going to be either making

23   presentations at the trial or cross-examining witnesses.  Let's

24   start with exhibits.  There have been questions.

25       And I know, Mr. Tsekerides, you asked some questions

PG&E Corporation and Pacific Gas and Electric Company

1    to my courtroom deputy about what I wanted to do as far as

2    exhibits.  Well, here's what I think will work, and again, if

3    you disagree, you can certainly tell me.

4          First of all, I can divide the exhibits into those

5    that are already on the docket, so that a number of counsel

6    have identified things like the RSA, or transcripts, or orders,

7    and I don't want to have reproducing exhibits that are already

8    on the docket.

9          What I'm going to ask each party to do is to use and

10    prepare a list of exhibits, so that an attorney who is

11    producing any list of exhibits and is offering a new exhibits

12    that's not on the docket, there's a procedure I'm going to

13    describe for how that exhibit is going to be made available to

14    the Court and to opposing counsel.  But to the extent that an

15    exhibit is in the docket already, I simply want it to be

16    identified by docket number.

17          So let me use you as my guinea pig, Mr. Tsekerides.

18          MR. TSEKERIDES:  Sure.

19          THE COURT:  If you were going to have two exhibits --

20    wouldn't that be some -- and if you only had two exhibits, your

21    exhibit list should say PG&E Exhibit -- PG&E 1, and that might

22    be at docket number such-and-such.

23    (Telephone ringing)

24          THE COURT:  Oh, hold on one second.  That's a personal

25    phone that's coming in, and that's just going to ring for a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    minute.  Let me mute this, so you don't hear it.  I'm just

2    going to take a break while this thing -- well, I don't know

3    what I am going to do.  It'll stop, eventually.

4        (Pause.)

5            THE COURT:  Okay.  So Mr. Tsekerides, your -- now

6    again, your list 1 would say RSA docket number such-and-such,

7    and internally, we will have -- we'll just use a link so that

8    when I want to look at the exhibit you're referring to, or

9    you're asking a witness about, I don't have to pull it up from

10   anywhere, I'll take it off the docket, and I'm assuming that

11   any other lawyer participating in the matter can do the same.

12           Suppose, for example, you have Exhibit 2, which is

13   something that isn't on the docket, like a statement, or a

14   summary, or a declaration of a witness or whatever, then you

15   designate it by, again, PG&E 2 or whatever the sequential

16   number is.

17           And then you're going to get -- we will provide

18   available to everyone later today, an email address where those

19   exhibits should be sent.  They should not be sent to my

20   courtroom deputy, or to me, or to anyone.  You will have

21   available a designated -- excuse me, dedicated email address to

22   send those exhibits.  And it'll be your responsibility, Mr.

23   Tsekerides, as my guinea pig here, to make sure that that

24   exhibit is emailed to counsel who are identified and will be

25   participating, not only as an attendee, but participating as

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    someone who may be examining or cross-examining a witness

2    relevant to that document.

3           And so this applies to anyone else who is listening.

4    I'll repeat it.  And as I say, a number of counsel have

5    identified on the docket exhibits that include the kinds of

6    things I'm talking about:  the RSAs, orders, transcripts,

7    anything on the docket.  I just don't want that reproduced, but

8    I want it identified as an exhibit that that counsel intends to

9    refer to.

10          Now, those of you that are new to Zoom, we're going to

11   use a Zoom feature called, "Share", not Sonny & Cher, but

12   Share, S-H-A-R-E, and again, I'll use you, Mr. Tsekerides, as

13   my example.  Suppose you have an exhibit that is not on the

14   docket, and it is something you want to present.  If it's on

15   your exhibit list, presumably it is stored somewhere in your

16   internal computer system, so you can pull it up out of the

17   directory where you are.  And if it's sent into the email

18   address that I've told you, we can pull it up, and so can other

19   counsel.  But when you want to refer to that document to

20   examine and question a witness, you will activate the Share

21   feature and the screen then allows that document to be

22   displayed on the screen.  I'm not going to go into all the

23   details of it because it's one of those things you probably

24   just need to practice if you're not familiar with it, but the

25   short answer is there on the screen will be the witness and the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    document, and it's that simple.  And so we don't have to -- we

2    don't have to have third-party vendors.  We don't have to do

3    anything.

4         So again, repeat, the document will be either on the

5    docket to begin with and have a link so anybody can get to

6    it -- obviously, you don't need it, it's on the docket -- and

7    if it's not on the docket, it'll be in -- have been exchanged

8    to, among all parties who need to have access to it.  I'm not

9    going to require, and I simply -- and I don't want to require

10   that exhibits be provided to other people.  You can do it as a

11   courtesy, but anyone who is not going to be examining a

12   witness, or discussing an exhibit, doesn't need to get it.

13   They'll see it on the screen if they want.

14        And if it's offered into evidence and kept as part of

15   the record, then that'll be dealt with in a different fashion.

16        The documents that are emailed in should be in PDF

17   form unless there's some other medium that is more typical.  If

18   it's a photograph -- I don't imagine we have photographs, but

19   if there is -- or if there's a spreadsheet perhaps that doesn't

20   lend itself to PDF, but I'll assume that most are PDF, and they

21   should be individual.

22        So if you had ten exhibits, you should have ten

23   different PDF files that have been sent to the Court, each of

24   them identified by the proponent.  So TCC, debtors, if it's one

25   of the other counsel objecting -- I mean representing a party.

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    It's just a descriptive term with a sequential number.  And so

2    every exhibit should have an identification that is the party

3    sponsoring it, an identification of what it is, or a docket

4    number, and as I say, if it's already on the docket, it isn't

5    created as a new exhibit.

6        All right.  And so the expectation will be that when a

7    witness is called, first, there should be declarations

8    presented, and the witness will be called and first examined by

9    cross-examination, and obviously, if the cross-examiner wishes

10   to refer to any exhibit, then that's the procedure we'll

11   follow.  So for those of you, the four of you here, any

12   questions about -- or five -- four -- questions?

13       Mr. Tsekerides?

14       MR. TSEKERIDES:  So on the -- I understand that if

15   it's not on the docket, and we want to include it, we're going

16   to send it to a dedicated email that the Court would provide,

17   but Your Honor said something about also emailing it to counsel

18   who identified themselves as participating.  Are you referring

19   to the deadline that we have today for people to let the Court

20   know who that is, and then should we just go through the

21   notices to see who put in some kind of notice that they're

22   participating?

23       THE COURT:  Well, all right, I don't -- did you have

24   any success in having a conversation with counsel in the last

25   couple of days?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. TSEKERIDES:  Yeah, we had a good call.  I think we

2  talked about some of the things, and I think Your Honor's

3  process, I think, covers the exhibit part, but we didn't get

4  into the specifics about who is going to participate.  It is in

5  the order that today, people are supposed to file a notice with

6  the Court identifying the email address, and that would be

7  fine, we'll know from that, but assuming those are the people

8  that you then want us to send these other exhibits to.

9    THE COURT:  Sure, let's just use -- let's just use the

10  two lawyers who we know well that are here on the screen.

11  Let's use Mr. Julian as the other guinea pig.  If you've got

12  something that isn't on the docket that you're going to rely on

13  to have one of your witnesses refer to, then certainly, you

14  should've sent it to Mr. Julian, just like in a pre-COVID, pre-

15  video world, you would've sent him, one way or the other, your

16  exhibits.

17    And Mr. Julian should know, and I'm sure does know, he

18  should store that locally in his drive for the same reason, so

19  that he call it up, and if he's examining a witness, and wants

20  to discuss that document with the witness, he activates the

21  share feature, and he pulls that document up out of his

22  directory, and you, and he, and I, are all looking at the same

23  document.

24    MR. TSEKERIDES:  I get that part, and I would've known

25  that by Mr. Julian -- the point that I'm making is he would've

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  filed a notice with the email address of the speaking attorney,

2  and then I would know to send it to him. Because if somebody

3  doesn't submit a notice to the Court, I won't know that they

4  plan on participating.

5          THE COURT: And --

6          MR. TSEKERIDES: That's the only point I'm making.

7          THE COURT: That's right, and I'll enforce the rules

8  that the -- that are what we're talking about. So if someone

9  hasn't identified him or herself as going to be participating

10 in that context, then you don't have to send it to him.

11         MR. TSEKERIDES: Okay.

12         THE COURT: Again, to the extent that you're dealing

13 with things already on the docket, obviously, you've already

14 sent it to them anyway. And what my expectation is after I

15 hear from you in more detail is once I know the witnesses you

16 intended to call -- well, you've already identified them,

17 excuse me -- and I get an identification of those who want to

18 examine any of those witnesses, I will first ask if you and all

19 of those participating counsel have agreed on some time

20 allocations. And if you have, that's fine, and if you haven't,

21 it's my expectation that I'll just make some time allocations

22 and use my judgment about it.

23         Because again, my expectation is that after I see the

24 list and get a sense from you particularly on how much time you

25 think -- or let me restate it differently. I can make a

of 72
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   judgement call on how much I think would be appropriate for

2   your witness A to be cross-examined by three different counsel,

3   five different counsel, but I'm not going to have five counsel

4   ask the same witness the same question five times.  I'm going

5   to expect that those counsel will meet and confer, and share

6   the burden, so we aren't burdening the witness, or the Court,

7   or the entire universe of people that are following this trial.

8   Just the same --

9          MR. TSEKERIDES:  But we did --

10         THE COURT:  Just the same as a real trial.  We

11  wouldn't have two lawyers ask the same witness the same

12  question.

13         MR. TSEKERIDES:  And those were -- we did have a

14  constructive call.  I mean, what we -- since, as you know, none

15  of us have authority to bind anybody, we did talk about all of

16  those issues, including some -- lead attorney, times

17  constraint.  We didn't agree on a time.  Frankly, we thought it

18  would be better for Your Honor to maybe see the declarations,

19  see how many people there are, and then use your discretion to

20  determine how much time you think.  There could be twenty

21  minutes for one person, but two hours for another.

22         So we agreed conceptually as a group that it made

23  sense to proceed that way.  One of the-- it wasn't really a

24  disagreement, it's just -- there's no particular leader, so we

25  tried to coax out of the group, well could there be one person

PG&E Corporation and Pacific Gas and Electric Company

1  who at least starts, and starts examining the witness, and then

2  if you have a particular question, nobody is suggesting that

3  you have to hand it to the other lawyer to ask for you but at

4  least let one person go, do sort of basics, and then please

5  don't come up and ask the same questions again, and I think

6  people agreed to that.

7        Where we're not going to have any agreement, but we'll

8  need guidance is well, who is going to start, how's that going

9  to go.

10        THE COURT:  Well, I am going to answer that in a

11  couple of ways.  First of all, I want to make sure that

12  everyone listening doesn't confuse participating and arguing

13  with examining witnesses.  I'm not closing the door today on

14  who gets to make arguments on the merits.  The focus today is

15  what to do with the witnesses, and so I am going to hold that

16  to a tight schedule.

17        So we've had a number of counsel kind of contact my

18  courtroom deputy, saying I want to participate, I want to

19  speak.  That's fine.  We can all deal with that but I'm not

20  going to deal with it in this conversation.

21        What I am going to do -- well, let me digress

22  slightly.  I know that today Mr. Abrams filed and designated

23  some witnesses that he wished to call, and I'll come to him in

24  a minute.  I'm not sure -- leaving Mr. Abrams aside, I'm not

25  sure there are any other parties who have designated witnesses

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    for the confirmation trial except there was a designation by

2    one party for two or three witnesses for a cure issue.

3            So I will ask you, Mr. Tsekerides, are you aware of

4    any witness who has been identified by any objecting party that

5    you understand might be called?

6            MR. TSEKERIDES:  There was -- so I saw the filing, and

7    we can address that later; obviously, we object to that.  But

8    there was, I think from Mr. Scarpulla, he had identified I

9    think an individual named Eric Lowrey, who they might want to

10   call.  We didn't have a deep discussion about that yesterday,

11   and knowing what Mr. Lowrey wrote in his declaration, frankly,

12   I don't think that's relevant to the proceeding, but that was a

13   person identified, and Mr. Scarpulla again, and I'll let him

14   speak for himself, identified that, or at least reserved rights

15   that they were thinking they might call their own adverse

16   witnesses for their case, and we tabled that, too, because we

17   don't agree with that.

18           THE COURT:  Okay.

19           MR. TSEKERIDES:  And other than that, that's all I

20   know.

21           THE COURT:  At the conclusion of the hearing -- before

22   we conclude today, I obviously will invite everybody on this

23   call who wishes to be heard to raise their hand, and then I

24   will deal with this question of whether we're going to have

25   witnesses, but I am going to focus on the question of

PG&E Corporation and Pacific Gas and Electric Company

1    witnesses. And so other than Mr. Scarpulla, I take it that you

2    agree with me, you're not aware of any witness other than

3    whatever mentioned Mr. Abrams mentioned today in his filing?

4             MR. TSEKERIDES: That's right.

5             THE COURT: So am I right, that the witness is on with

6    at least one other party? I'm forgetting the name, but that's

7    a cure issue.

8             MR. TSEKERIDES: Right, I think it was Black & Veatch.

9    Those were all cure related.

10            THE COURT: Yeah, that's it. One second. I have to

11   make a little adjustment of my screen here. It's been acting

12   weird. One second.

13            Okay. Well, Mr. Julian, am I correct on -- you are

14   not -- your side, the TCC, is not calling any witnesses, other

15   than perhaps cross-examining any of the debtors' witnesses?

16            MR. JULIAN: First, we have submitted testimony via

17   declaration, which we want admitted. And we agree with Mr.

18   Tsekerides that people should not be calling witnesses absent

19   unusual circumstances unless they put in the declarations. If

20   they put in the declaration, they should not be putting the

21   witness on live on direct.

22            It is possible that some witness will be let in the

23   door, for which we might have to designate someone as a

24   rebuttal witness. I say that because Mr. Scarpulla has

25   identified some witnesses and has identified some exhibits from

PG&E Corporation and Pacific Gas and Electric Company

1   TCC meetings that are privileged, of the like.  We will be

2   objecting to those.  Subject to our objections, we reserve all

3   rights in case you overrule our objections and let this stuff

4   in which we contend should not come in.  We might have a

5   witness that we designate at the last moment.  Don't want to

6   do --

7           THE COURT:  Well, you just mentioned the testimony by

8   declaration, but is that declaration on the docket yet?

9           MR. JULIAN:  Yes.  We submitted a declaration, two

10  declarations in support of our objection.  Mr. Brent Williams

11  was one of them.  And we had simply gave -- our lawyers prove

12  up some documents, which I know now are not necessary to prove

13  up.  But Mr. Tsekerides knows about Mr. Williams being a --

14          MR. TSEKERIDES:  I forgot about him, Your Honor.

15          MR. JULIAN:  -- a declarant.

16          THE COURT:  Well, and who is the other declarant?  You

17  said two?

18          MR. JULIAN:  We submitted a -- I think it's Mr.

19  Richardson's declaration authenticating certain documents --

20          THE COURT:  Oh, no, but --

21          MR. JULIAN:  -- that are at issue.

22          THE COURT:  -- Mr. Richardson isn't going to be a

23  witness, right?

24          MR. JULIAN:  Right, right.

25          THE COURT:  But Mr. Williams might be.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. JULIAN:  Might be.  We've talked to the debtor

2 about -- we think maybe that that will be avoided having him,

3 but right now, he's a declarant.

4    THE COURT:  Yeah, I'm just trying to make sure we're

5 on the same page as witnesses because here's what I intend --

6 my bigger question is, is by today, I intend to have a better

7 sense as to who are the witnesses, and I've gotten four from

8 the debtor, and I recognize the names, and I think I know who

9 they are, and now I'm seeing well, maybe Mr. Williams.  Now

10 again, leave aside the late events by Mr. Abrams, and also

11 whether Mr. Scarpulla will or won't be entitled to call a

12 witness.

13    My expectation is to look at the list, listen to all

14 of you, and then to designate when I want the witnesses.  I

15 mean, I am not going to -- my hope is to say okay, we're going

16 to take witness X, debtor 1, whoever, and a date and time, and

17 we're talking about the coming days, obviously, but I'm not

18 going to have it -- I want to have it organized in advance.

19 And if Mr. Scarpulla believes he has a right to put on a

20 witnesses, he can tell me, and if there's no objection, we'll

21 find a time to do it and see who is going to cross-examine his

22 witness.

23    But I don't want direct testimony by any witnesses.

24 So if Mr. Scarpulla wants to call a witness, he better have a

25 declaration from that witness on file by the close of business

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   today, just like everybody else is supposed to.  And if he

2   wants to call an adverse witness, obviously, that's something

3   else again, so we'll come back to that.

4           Mr. MacConaghy, are you going to be sharing the

5   examination?

6           MR. MACCONAGHY:  That's very, very unlikely, Your

7   Honor.

8           THE COURT:  (Indiscernible).

9           MR. MACCONAGHY:  We'll need to be in reserve, but I

10  think it's very unlikely unless some very odd conflict

11  situation arises.

12          THE COURT:  Okay.  I'll tell you what.  Again, to

13  simplify the presentation, I'm going to ask Ms. Parada to

14  exclude you from the participant panel here.  You'll go back

15  into the attendee, and you can raise your hand if you want to

16  come back in.  It's nothing personal.

17          MR. MACCONAGHY:  Thank you, Your Honor.  I waive my

18  Constitutional objection to this.

19          THE COURT:  Mr. Tsekerides, what would you like me to

20  do about Mr. Abrams' request?  He's named a number of

21  witnesses, and I will let him respond shortly, but I want to

22  just get for openers, because I didn't know that Mr. Abrams was

23  going to ask to present witnesses until he filed something.

24          MR. TSEKERIDES:  Yeah, we didn't know either.  In

25  looking at the list -- I mean, I only had a moment to look at

PG&E Corporation and Pacific Gas and Electric Company

1    it, but it seemed that there were Prime Clerk individuals, and

2    as Your Honor knows, we have a Prime Clerk witness on what

3    looked like the very topic that Mr. Abrams had identified.  So

4    we would object to him bringing in other Prime Clerk witnesses.

5    I think we should have Ms. Pullo; that's the Prime Clerk

6    witness.  She has a -- she'll have a declaration submitted, and

7    she'll be available for cross, and Mr. Abrams is free to cross-

8    examine her, and that should be it.

9            MR. KAROTKIN:  I don't --

10          THE COURT:  And what about his other witnesses?

11          MR. KAROTKIN:  I don't think Mr. Tsekerides has seen

12    the latest filing by Mr. --

13          MR. TSEKERIDES:  Oh, is there another filing while

14    we've been here?

15          THE COURT:  Oh, okay.  Well, I saw only something that

16    came in -- so you've seen it, Mr. Karotkin?

17          MR. KAROTKIN:  I just see -- I see it just now.

18    Someone sent it to me just now.

19          THE COURT:  Well, just so you know, and for everyone,

20    not just the four you that -- or three of you rather, that I

21    see on the screen, Mr. Abrams is not an attorney, and as a pro

22    se party, we -- because of the COVID situation, we've made open

23    an email address for people to submit documents that they want

24    to place on the docket, and that's just a workaround that we've

25    had to deal with in the situation that we're all struggling

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    with.

2           And so what Mr. Abrams sent to that email address

3    today is a list of witnesses and a list of documents, and he

4    has a right to submit his requests, and obviously, you all have

5    a right to take a contrary view.  And if you haven't even had a

6    chance to reflect on it, we can defer it until a little bit

7    later.

8           MR. TSEKERIDES:  Well, I'm looking right now.  I can

9    tell you, we would object to all of them.

10          THE COURT:  Okay.  Well, Mr. Abrams, if you can hear

11   me, I will bring you into the participant panel here in a short

12   moment, and we'll come back to those questions.

13          Mr. Karotkin, or Mr. Tsekerides again, whomever is the

14   better one to answer, my expectation then would be for sort of

15   an opening-type argument or opening summary statement, if

16   that's what you want, but to get the witnesses and objections

17   to exhibits out of the way early, and then to start, when

18   there's been little time to reflect on it, to parcel out time

19   for argument on the merits.

20          So the way I would envision this is that the debtor

21   makes a presentation.  I think Mr. Karotkin told me that you're

22   going to be filing a confirmation brief.  Our protocol has on

23   their dates for -- let's see if I can just refer to that,

24   the -- that's due on today, too, right, Mr. Karotkin?  The --

25          MR. KAROTKIN:  Yes, sir.  We will be filing a combined

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   confirmation brief and objection, and a response to the

2   objections, as well as the declarations later today.

3           THE COURT:  Okay.  So my personal thinking is this,

4   that a number of parties have filed objections.  The debtor

5   files its confirmation brief.  And if there were no witnesses,

6   we would then have an oral argument on a matter that is tried

7   without the need to have witnesses.

8           Obviously, the debtor has the burden to prove basic

9   matters, and that's what I'm expecting the debtors' four

10  witnesses are going to do.  I presume Ms. Pullo is largely for

11  the vote issue, but the other three witnesses are the

12  debtors' -- what I call the debtors' case-in-chief on why the

13  plan should be confirmed, even if there were no objections.

14          And so those will be filed and placed on the docket in

15  due course.  And when we start the trial, the declaration of

16  those witnesses will have also been on the docket.  And what

17  comes next is, all right, where do we start with cross-

18  examination of each of those witnesses, and that's what my

19  expectation would be to suggest a sequence and a timing.  I

20  can't suggest it today, because I don't know about it.  And to

21  the extent that you, Mr. Tsekerides, have been able to broker

22  some proposed time allocations, and proposed agreement among

23  the objectors as to who wants to examine, and who will examine,

24  I will do my best to accommodate, but I don't have an answer,

25  so for everyone that wants to know that today, I can't answer

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    it today.

2           MR. TSEKERIDES:  And we weren't able to -- we agreed

3    conceptually but not on any number.  I think everyone agrees

4    with the concept as you just laid out, Your Honor, but as far

5    as okay, two hours for this person, and a half-hour for that

6    person, we haven't.  And in fairness to the other side, they

7    haven't seen the declarations yet.

8           THE COURT:  So again, Mr. Karotkin, I tend to look to

9    you because I think some of the role that you're playing, and

10   those that your colleague does -- what are you going to be

11   filing just the more traditional declarations of the witnesses?

12   Are there going to be exhibits, or I mean charts or diagrams,

13   or is it just going to be narrative by the witnesses?

14          MR. KAROTKIN:  It's the declarations are pretty much

15   narratives.  We do have a chart that will be annexed to our

16   memorandum, summarizing each of the objections and our response

17   to each of the objections, also indicating whether they've been

18   resolved because a number will be resolved before the hearing,

19   and you will see that; that will be part of our pleading filed

20   today.

21          THE COURT:  So may I assume, therefore, that by today,

22   close of business, or some -- whatever the definition of close

23   of business is, there will be four declarations, a brief, and

24   if this matter were submitted on your record, you got your case

25   for confirmation?

of 72
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. KAROTKIN:  Yes.  We will also be filing an amended

2    plan which has been amended to address certain of the

3    objections.

4    THE COURT:  Okay.  Let me make a statement for the

5    benefit of all participating.  I have a bad reputation of

6    wanting chambers copies, and the COVID crisis has made me get

7    off of that habit, so don't send chambers copies of anything.

8    In your case, Mr. Karotkin, after I see what's filed

9    in the docket, I may ask for someone on your staff or local

10   counsel to send an overnight of something that doesn't lend

11   itself to a quick print.  I mean, if I get a thirty-page brief,

12   I can either read it online or print it, but if I get a 500-

13   page report, it's a burden on me personally, and I'd rather

14   impose on you and get it delivered by overnight, and I'm not

15   going to worry about it today.

16   And the same is true for all counsel; do not feel

17   obliged to send chambers copies of anything.  We won't deal

18   with it that way.

19   So let me -- well, first of all, to do any of

20   either -- any of the three of you want to raise anything from a

21   scheduling point of view that I haven't touched on?  And then

22   I'll call on others to come forward if they want to be heard.

23   Mr. Tsekerides?

24   MR. TSEKERIDES:  The only other suggestion, Your

25   Honor, given that there's still some flux and we haven't filed

PG&E Corporation and Pacific Gas and Electric Company

1    yet, is to see if you wanted to have another conference maybe

2    on Monday or Tuesday.

3              THE COURT:  Yes, I was thinking of that.  And your

4    colleague tried to talk me out of the conference today but he

5    lost, so that's why we're having it today, but I think that's

6    why we're having it today, but I think that it's not just for

7    me.  I think for the benefit of your opponents, when they see

8    what's being filed, even that puts on a fairly tight schedule.

9    But my sense is that we should do it on Tuesday.  We're all

10   dealing with this stay-at-home rules, but we will recognize

11   Memorial Day, and have a conference on Tuesday.

12             But that's another way of saying 100 percent sure that

13   the trial is going to start on Wednesday, because it may not

14   need to.  I mean, when I talk to you by Tuesday, I assume that

15   your witnesses are doing the same thing the rest of us are

16   doing, they're available on relatively short notice.  I'm not

17   going to impose on someone if they have to deal with family

18   matters or personal matters, but I'm expecting that you, Mr.

19   Tsekerides, will know generally the timing that works for the

20   convenience of your witnesses, and so if you said well, Mr. So-

21   and-So would like to testify on Thursday from 9 o'clock till 2

22   o'clock, whatever, I'll try to accommodate him.

23             Again, the testimony will be cross-examination,

24   followed by redirect.  Whether I go back to recross, I doubt,

25   but I'm playing that by ear.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1       I don't know about the rest of you, I find that

2  presiding over a trial on a laptop on my home is more

3  burdensome, or frankly demanding, than it might be having a

4  regular, traditional courtroom trial, because we're all sitting

5  here, staring at the screen, and we're all imposing upon

6  whomever we share our homes with.  And I'm not going to impose

7  on the witnesses either, and if I have to break this trial into

8  segments, I'm going to do it.

9       I'm still going to reserve ample time for any opponent

10  to address and to be heard on the argument.  And I intend to

11  make a judgment on that, too, but not until we're at the point

12  where we have a good fix on the witnesses.  I'm committed as

13  all of you are, to get my share of this job done on schedule,

14  and I'm going to do it.  So I'm not worried.  I think we can

15  live with that schedule.

16       So let me do it this way.  I'm going to ask now if any

17  party who is proposing a witness wants to be heard, and to

18  raise your hand in the Zoom format at this point.

19       Well, Mr. Julian, you raised your real hand.

20       MR. JULIAN:  Just to repeat, Your Honor, we have a

21  declaration in.  I don't expect any direct or cross-

22  examination, but we have that in.

23       THE COURT:  Well, then maybe I didn't understand

24  exactly.  Does anybody wish to cross-examination your direct

25  declarant?  I mean --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1            MR. JULIAN:  Either that or --

2            THE COURT:  -- does the debtor?

3            MR. JULIAN:  I think --

4            THE COURT:  Do you know?

5            MR. JULIAN:  -- see what Mr. Tsekerides --

6            THE COURT:  Mr. Tsekerides, are you going to be cross-

7    examining the TCC's witness?

8            MR. TSEKERIDES:  We might, depending on where -- I

9    mean, there are discussions afoot, and so it's possible.  I

10   don't know right now.

11           THE COURT:  Okay.  We'll --

12           MR. TSEKERIDES:  The issue could be gone by then.

13           THE COURT:  We'll put that on, and figure it out

14   later.  I see Mr. Scarpulla has raised his hand.  Mr.

15   Scarpulla -- Ms. Parada, would you bring Mr. Scarpulla and also

16   Mr. Abrams into the panel?

17           THE CLERK:  Yes, Your Honor.  They're joining now.

18           THE COURT:  Mr. Abrams, you've got a lot of bright

19   light behind you.  I can barely see you.  So if you are at all

20   able to move even slightly, it will make it a little easier to

21   see you.  Mr. Abrams, can you hear me?  Raise your hand if you

22   can hear me, your actual hand like this.  Okay, that's better.

23           All right.  We're waiting for Mr. Scarpulla now.

24           Mr. Abrams, can you hear me?

25           MR. ABRAMS:  Yes, I can, Your Honor.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Okay.  All right.  We're going to wait for

2   Mr. Scarpulla.

3          Mr. Scarpulla, can you hear me yet?

4          MR. SCARPULLA:  Yes, Your Honor, I can hear you.

5          THE COURT:  Okay.  Mr. Scarpulla, you need to adjust

6   the laptop screen.  There you go.

7          MR. SCARPULLA:  Okay.

8          THE COURT:  Okay.  Now, do you or do you not expect to

9   call a witness?

10          MR. SCARPULLA:  Yes, Your Honor, but we

11   (indiscernible) in our declarations in for the witnesses we

12   planned on calling.

13          THE COURT:  And who is your witness?

14          MR. SCARPULLA:  It's the expert that we have.

15          THE COURT:  How many of them are there?

16          MR. SCARPULLA:  One.  Mr. Lowrey.

17          THE COURT:  And that declaration will be filed today?

18          MR. SCARPULLA:  I believe it was already filed, but --

19          MR. TSEKERIDES:  That's the one that I mentioned

20   earlier, Your Honor.

21          THE COURT:  I'm sorry.  Okay.  And you wish to examine

22   Mr. Lowrey, Mr. Tsekerides?

23          MR. SCARPULLA:  No.

24          MR. TSEKERIDES:  No, I --

25          MR. SCARPULLA:  Oh, I'm sorry.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. TSEKERIDES:  -- first wish to -- I'm sorry.  I

2  first wish to say he should be excluded because what he is

3  talking about has nothing to do with the confirmation hearing.

4  He seems to be attacking whether 13.5 billion was the right

5  number, and so we'd say it's not relevant.  If the Court will

6  allow him, then we will cross-examine him.

7    THE COURT:  And Mr. Scarpulla, what is the offer of

8  proof that Mr. Lowrey would give us?

9    MR. SCARPULLA:  That's exactly right, what Ted just

10  said.  It's the --

11    THE COURT:  He's not -- first of all, he's not Ted,

12  he's Mr. Tsekerides.

13    MR. SCARPULLA:  I'm sorry.

14    THE COURT:  Okay, so some things --

15    MR. SCARPULLA:  I've known these people for fifty

16  years.

17    THE COURT:  Yeah, well, I've known a lot of people --

18  I've known a lot of people for --

19    MR. SCARPULLA:  Yeah, okay.

20    THE COURT:  -- you're about the only person on this

21  call that might be my age, and I would still use formal names.

22    MR. SCARPULLA:  I think I'm older --

23    MR. KAROTKIN:  Wait a minute.

24    MR. SCARPULLA:  -- than you, Your Honor.

25    MR. KAROTKIN:  Wait a minute.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      THE COURT:  Mr. Karotkin?

2      MR. KAROTKIN:  I might be able to weigh in on the age

3 thing.

4      THE COURT:  What?  Go ahead.

5      MR. SCARPULLA:  Well, the only unresolved issue that I

6 (indiscernible) was when a witness is called -- for example,

7 let's just take Prime Clerk -- and there's direct, either by

8 testimony or by a declaration, and you have the right to cross-

9 examination, my question yesterday to counsel was is the

10 witness being called for all purposes, or if the cross-

11 examination exceeds the scope of a direct, do we then have to

12 recall that witness, is my question.

13      THE COURT:  Mr. Scarpulla, this is a bankruptcy court

14 running on a laptop, and we are not going to have recalls back

15 and forth, and your witness will testify in writing by direct,

16 and therefore will begin on cross by whomever wants to cross.

17 And if no one wants to cross him, there will be no redirect.

18 If the witness is cross-examined, you can ask if you can do

19 redirect.  We're going to do one witness is in and out, all

20 together, so we're not going to worry about the scope of the

21 direct.  But again you have -- will have, by the end of the

22 day, the four declarations from the debtor.  So that's the

23 direct testimony, and if you believe --

24      MR. SCARPULLA:  Correct, Your Honor.

25      THE COURT:  -- if you choose to cross-examine one of

PG&E Corporation and Pacific Gas and Electric Company

1    those four, and Mr. Tsekerides believes that it's off base

2    because it exceeds the direct, you can argue it, and I'll make

3    a ruling on it.  And there's no jury, I'm it, and if it's

4    relevant, I probably won't be worried about whether it exceeds

5    the scope of direct, but if it's not relevant, doesn't matter,

6    I'll exclude it.

7             MR. SCARPULLA:  Of course, of course.

8             THE COURT:  Okay.

9             MR. SCARPULLA:  I just didn't --I just didn't know

10   whether Your Honor wanted us to call back witnesses --

11            THE COURT:  No, but again --

12            MR. SCARPULLA:  -- at trial.

13            THE COURT:  -- it doesn't work.  I tried to say before

14   that once I know who the witnesses are, I'm going to make a

15   judgment call and say Mr. Lowrey will be examined on such-and-

16   such a day at such-and-such a time period.

17            MR. SCARPULLA:  Okay, fine.

18            THE COURT:  Make him available.

19            MR. SCARPULLA:  That's perfect.

20            THE COURT:  If Mr. Lowrey has a medical appointment,

21   or a family matter, I'll accommodate him like we'd try and

22   accommodate anyone, okay.

23            MR. SCARPULLA:  Thank you, Your Honor.

24            THE COURT:  So Mr. Abrams, you've got a number of

25   witnesses on the list that you've put on the --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. TSEKERIDES:  Your Honor?  Your Honor?

2    THE COURT:  Oh, I'm sorry.  Go ahead.  I think I --

3    MR. TSEKERIDES:  I think you --

4    THE COURT:  Yes, go ahead.

5    MR. TSEKERIDES:  I think you asked Mr. Scarpulla a

6 question as to what his offer of proof would be with respect to

7 his witness, and I'm not sure he answered that question.

8    THE COURT:  Yeah, that's good.  Fair question.

9    Mr. Scarpulla, what's your witness going to talk

10 about?

11    MR. SCARPULLA:  Mr. Lowrey?

12    THE COURT:  Yes.

13    MR. SCARPULLA:  Exactly what's in his --

14    THE COURT:  Well, but --

15    MR. SCARPULLA:  It's --

16    THE COURT:  -- I haven't read it.

17    MR. SCARPULLA:  I mean his --

18    THE COURT:  I haven't read it.  Just give me a summary

19 of it.

20    MR. SCARPULLA:  Well, that the amount is not 13.5

21 billion, that it's much less.

22    THE COURT:  Well, I mean, that's just an

23 interpretation.  What will his testimony offer?

24    MR. SCARPULLA:  That's it.

25    THE COURT:  Well, then I don't need him --

PG&E Corporation and Pacific Gas and Electric Company

1      MR. SCARPULLA:  Okay.

2      THE COURT:  -- unless they want to cross-examine him.

3  I mean, look, we have on the list -- we have a -- just one

4  second, I'm just looking at our protocol.

5      Well, Mr. Karotkin, if you believe that I should not

6  consider Mr. Lowrey's testimony, then we'll take that up on --

7  I'm looking on the protocol to see where we put it.  You

8  identify issues that are related, right?  You're going to --

9  you tell me, don't you think you have to do something about it,

10  Mr. Karotkin?

11      MR. KAROTKIN:  I think my colleague is going to have

12  to answer that question.

13      MR. TSEKERIDES:  Well, I mean, we could make a motion

14  in limine, Your Honor, but I mean, we don't think that his

15  testimony is relevant, and under the timing, and you just heard

16  Mr. Scarpulla say what the subject matter is, that would be an

17  open issue that's still a dispute, so I will make an oral

18  motion in limine right now that I think Mr. Lowrey should be

19  excluded --

20      THE COURT:  Okay.

21      MR. TSEKERIDES:  -- because his testimony isn't

22  relevant to the confirmation hearing.

23      THE COURT:  Mr. Scarpulla, you don't need to respond

24  to that.  I'm not going to make a ruling on it.  As I told you,

25  and I told everybody, I'm going to look at the declarations

PG&E Corporation and Pacific Gas and Electric Company

1    after tonight.  I've got some time on my hands this weekend.

2    And I will do my best to put something out on the docket for

3    everyone to see on what my tentative thinking is, and I will be

4    open-minded if there's contrary view, but if Mr. -- is Mr.

5    Lowrey the person that you offered to Judge Donato on what he

6    believes the number is really the real number?

7              MR. SCARPULLA:  I believe that's correct, Your Honor.

8              THE COURT:  Okay.  Well, you don't need Lowrey to say

9    it.  You can make the argument.  I mean, if I thought that

10   someone was going to hand the trustee a check for 13.5 billion,

11   that would be easy.  I understand that the proposal under the

12   plan, there's 6.75 in money in two different increment or

13   three, and there's a chunk of stock that there may be a

14   difference of opinion of its value, but there's a formula that

15   I believe the proponents used to argue why that amounts to

16   13.5.

17             I will recognize that since it's not a cashier's check

18   for 6.75 billion, two of them, it's argument on why it really

19   isn't 13.5.  I don't need Lowrey to tell me that; it's an

20   argument.  So that's --

21             MR. SCARPULLA:  Yes, but Your Honor --

22             THE COURT:  -- that's my thinking about it.  I'm not

23   going to rule today.

24             MR. SCARPULLA:  Okay.

25             THE COURT:  I will read Mr. Lowrey's statement, and

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Mr. Tsekerides has made it clear that he believes that it's

2    irrelevant.  And I'm just telling you, it seems irrelevant to

3    me, but that doesn't mean you can't make the argument.

4            MR. SCARPULLA:  I understand that, Your Honor, but he

5    would be the evidentiary reason for making the argument.

6            THE COURT:  But if you can make the legal argument

7    that it really isn't what the amount it is, then they will fail

8    on their point.  I don't need somebody to tell me that 13.5

9    really is 10, when it isn't real money, real funds, real day.

10   It is a formula plus a deferral in timing of the cash.  So I

11   know that.  I know that, and the debtor has to prove that it's

12   reached the benchmark, or that the disclosure statement and the

13   RSA's second --

14           MR. SCARPULLA:  Okay.

15           THE COURT:  Let's not waste time.

16           Mr. Abrams --

17           MR. SCARPULLA:  Right.

18           THE COURT:  -- I want to go to you.  What is your

19   expectation with the --

20           MR. SCARPULLA:  I can leave the -- I can leave the --

21   because if you have no more questions, I --

22           THE COURT:  Yes, we'll ask Mr. Scarpulla to leave the

23   room.  Thank you for coming today.

24           MR. SCARPULLA:  Thank you very much, Your Honor.

25           THE COURT:  All right.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Mr. Abrams, what do you think you would accomplish

2 here by these witnesses that you wish to call?

3    MR. ABRAMS:  Your --

4    THE COURT:  And how are you going to present them?  In

5 other words, you understand that the debtor has to tell me

6 which witnesses it's going to call to prove its case, and if we

7 were in a courtroom, and they had their four witnesses, those

8 witnesses would come in one by one and testify and be cross-

9 examined, but we're doing it where instead of having them come

10 in, they're filing declarations.

11    Now, you're an adverse party.  Let's assume that you

12 have the right to cross-examine their witnesses.  How are you

13 going to present your witnesses?  Do you have declarations from

14 them?

15    MR. ABRAMS:  So Your Honor --

16    THE COURT:  Wait.  Do you have declarations from them?

17    MR. ABRAMS:  Sorry, can you hear me, Your Honor?

18    THE COURT:  Yes, but my question to you is do you have

19 declarations from those witnesses?

20    MR. ABRAMS:  So in the phone call that occurred

21 yesterday with Mr. Tsekerides, he indicated that they were only

22 going to be calling Mr. Wells, and so because of that, I was

23 concerned that we were not going to have a fulsome witness list

24 where we could dive into the issues of 1129, specifically

25 1129 --

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  No, I know the sections.

2          MR. ABRAMS:  -- (a) --

3          THE COURT:  You're not answering my questions.

4          MR. ABRAMS:  -- (11).

5          THE COURT:  No, you're not answering my question.  Mr.

6    Abrams?

7          MR. ABRAMS:  And because of that --

8          THE COURT:  Mr. Abrams, you're not answering my

9    question.

10         MR. ABRAMS:  Sure.  I apologize, Your Honor.

11         THE COURT:  How are you going to present the --

12         MR. ABRAMS:  I --

13         THE COURT:  How are you going to present these

14   witnesses?

15         MR. ABRAMS:  So I don't know the formal process in

16   bankruptcy, Your Honor.  I fully admit that.  But my witness

17   list is to have -- to be able to have the opportunity to cross-

18   examine those witnesses.  There are declarations that these

19   witnesses have already filed in the CPUC, and testimony that

20   they filed there, that are directly to the points that are

21   before this Court.

22         THE COURT:  Mr. Abrams, I don't think you're best

23   getting my message here.  How are you going to get them to the

24   courtroom to testify when you present your case?

25         MR. ABRAMS:  So I noticed all of those witnesses

PG&E Corporation and Pacific Gas and Electric Company

1   today, Your Honor.  So I sent a notice to PG&E counsel, and to

2   Prime Clerk to notice them for the hearing, and in my -- and

3   that is what I understood the process to be.  If there's a

4   process correction, by all means, Your Honor, I'll follow

5   whatever procedure is laid out.

6           THE COURT:  Mr. Tsekerides, respond.

7           MR. TSEKERIDES:  Well, we would move -- if this were a

8   real trial, and these are people from the company, and they

9   served trial subpoenas, we'd move to quash them.  Again, you

10  just heard Mr. Abrams say what the reasons are.  Mr. Wells is

11  going to talk about 1129.  The fact that Mr. Johnson or Ms. --

12  Cromwell (phonetic), or Mr. Vesey, or others gave testimony in

13  some other proceeding is not a reason to bring them all here to

14  testify in the confirmation proceeding on, presumably, his

15  objection.

16          We're going to have a witness who is going to touch

17  all 1129 items.  We would move to quash every single one of

18  those subpoenas, or notices, or whatever other procedural

19  mechanism might be used.  We just don't think having this turn

20  into a circus to address issues that are not germane to the

21  confirmation hearing is the way to go.

22          THE COURT:  Okay.  So Mr. Abrams --

23          MR. ABRAMS:  Your Honor, I --

24          THE COURT:  -- Mr. Abrams, listen --

25          MR. ABRAMS:  Okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  -- carefully.

2          MR. ABRAMS:  Yes.

3          THE COURT:  Let's just use Mr. Johnson.  You have

4    identified Mr. Johnson as a witness.  The debtors' lawyers are

5    not planning to have Mr. Johnson come as a witness.  So they

6    believe -- their lawyers believe that they can prove their

7    case, they can make the case for confirmation, without Mr.

8    Johnson testifying.

9          If they present their case with their four

10   witnesses -- and leave aside Ms. Pullo, because she's a vote-

11   count question, she's not a substantive reorganization

12   question.  If the debtors' counsel cannot persuade me that they

13   haven't made their case -- excuse me, cannot persuade me that

14   they've made their case, their plan won't be confirmed.  And if

15   they think they can persuade me, but they can't persuade you or

16   Mr. Scarpulla, or Mr. Julian, or anyone else who has filed an

17   objection persuades me that the debtors' plan should not be

18   confirmed, the plan won't be confirmed.

19         But if you believe Mr. Johnson is relevant to do what,

20   to prove that the plan shouldn't be confirmed, then you needed

21   to get a declaration ahead of time because it's been well-

22   established that in order for anyone opposing this --

23   supporting or opposing, make their case, they start with

24   written declarations.  And if there are no declarations

25   available, there's nothing to call the witness for.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    If Mr. Johnson testified before the CPUC, or -- just

2    stick with that because I don't know, I've never heard from Mr.

3    Johnson.  I know who he is, but that's all, if he filed a

4    declaration in front of the CPUC that you believe is relevant,

5    then you should identify and add that declaration to your

6    exhibit list.  And if the debtors don't object to the Johnson

7    declaration being in evidence, then it'll be in evidence, and

8    you can argue why whatever Mr. Johnson said supports your

9    position that the plan shouldn't be confirmed.

10    But if you don't have declarations now, by close of

11    business today, I'm not going to let you call any of these

12    witnesses; it's that simple.  It's that simple.  If you wish to

13    cross-examine the four witnesses that the debtors have

14    identified, you'll be entitled to do it, and I will give you an

15    allocation of time if you and Mr. Tsekerides haven't agreed.

16    And again, you've said to me many times that you're

17    not a lawyer, and I know that, but -- you still have a right to

18    participate, but you've got to stick with the rules, and so you

19    have to confer with other counsel who are going to be examining

20    witnesses so we don't burden the witness by asking the same

21    thing over and over again.

22    So unless you can tell me right now that you have

23    declarations from your witnesses, I will tell you right now

24    none of your witnesses are going to be allowed to testify, and

25    they won't be called.

PG&E Corporation and Pacific Gas and Electric Company

1          MR. ABRAMS:  May I use the declarations that they

2    provided at the CPUC?

3          THE COURT:  Isn't that what I just said?  I just said

4    if Mr. Johnson -- and again, I'm just using Johnson -- if any

5    of your witnesses have testified somewhere else before, then

6    subject to some other objections, you can offer that testimony

7    to prove your case, and if you -- so I'll stick with Johnson as

8    an example.

9          If Mr. Johnson made a statement, and it's in writing

10   somewhere in front of the CPUC or in front of the district

11   court or anywhere, that you think is relevant, that makes your

12   case, then you are entitled to add it to your list of exhibits.

13   And if Mr. Tsekerides -- and again, I focus on Mr. Tsekerides,

14   but it could be Mr. Julian, or anyone else -- if no one objects

15   to that written testimony being considered, I will consider it.

16         And when you have an opportunity to argue after the

17   exhibit -- excuse me, after the witnesses have testified, you

18   will have an opportunity to argue why the plan shouldn't be

19   confirmed.  And if it shouldn't be confirmed because something

20   Mr. Johnson said, then you need to make that point and persuade

21   me.

22         But we're not filing declarations just for fun, and if

23   you don't have a declaration that you are going to rely on,

24   then don't waste your time, or my time, or anyone else's by

25   even doing it.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    So unless you tell me now that you have a written

2    statement, admissible evidence from any of the live witnesses

3    you've identified, I'm telling you right now, they are not

4    going to be called, and I will -- to the extent that you

5    believe they have been subpoenaed, I will quash the subpoena.

6    So anything else?  Do you want to add anything?  I

7    mean, I want to let you talk again.  I'm not trying to cut you

8    off.

9    MR. ABRAMS:  Yeah.  And Your Honor, I am just trying

10   to follow your orders, trying to follow procedures the best I

11   can.  I believe I understand part or most of what you're

12   saying, but you know, sort of what I don't understand is if I

13   submit the declarations that these individuals have already

14   provided, and I put them on the record in this proceeding, and

15   they -- and I want to call them to substantiate my arguments,

16   may I call them as witnesses based on their declarations, and

17   I've already provided in my exhibit list, their testimony?

18   THE COURT:  You're confusing some concepts, okay?

19   I'll try it again.  You're confusing concepts.  I'll repeat

20   this, and we'll just stick with Mr. Johnson as a good example.

21   If Mr. Johnson has filed -- has testified before the

22   CPUC, and the transcript of his testimony is in existence -- in

23   existence, you may identify that transcript as an exhibit that

24   you wish to have me consider.  You don't put it on the Court's

25   docket -- our bankruptcy court docket.  You make sure it's in

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   PDF, and you email it to the address, that I will give everyone

2   later, to where you should email your exhibits.

3           Now, I know we've accommodated you because you are pro

4   se and can't come to court. You've been allowed to email

5   things, like pleadings, to the courtroom deputy or the

6   emergency box. But for this one, you will have to send -- if

7   that's what you want -- that transcript to the address that I'm

8   going to give everyone. And it will then be what -- in lawyer

9   terms, it's an identified exhibit. It's not an admitted

10  exhibit, but it's identified. Abrams-1.

11          Stick with my example. Abrams-1 is the Johnson

12  declaration, and you have produced it in PDF format, and you've

13  sent it to the box that I will tell you, and you've also

14  emailed it Mr. Tsekerides and Mr. Julian and other parties.

15  Then if there's no objection to the Johnson declaration, it

16  will be considered.

17          You won't add to it. Mr. Johnson won't be asked to

18  come and testify. His written testimony will be the testimony.

19  And if Mr. Tsekerides or anyone else believes that is -- it is

20  legally irrelevant, they will make the argument; I'll make the

21  ruling. And so on.

22          So you're -- so you have to keep separate what you're

23  doing. The way I am proceeding is not unique to me, and many,

24  many courts do this. They don't take time for direct

25  testimony. They take it in written form. And in Mr.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Tsekerides' case -- and you heard Mr. Karotkin say -- they are

2    filing declarations later today.  So the declaration -- four

3    declarations of four witnesses are the written speaking words,

4    are the words of those four people that they would have spoken

5    to me in the courtroom if they had been called as a witness.

6         And each of their four witnesses, instead of actually

7    testifying, will have sponsored or proffered a declaration.

8    And you and others can, live on the screen, question those four

9    witnesses.  That's the process.  But you don't -- but if you

10   submit a declaration and that's your witness, that's it.

11   That's the testimony.  And if no one -- so that's the way I'm

12   going to leave it.

13        So you have no -- really, I'm satisfied from this

14   discussion that you have no evidence to present that isn't --

15   let me rephrase that.  You have no evidence to present by the

16   deadline today except evidence that is already written

17   somewhere else, and therefore you don't have another witness

18   other than what I'm talking about.

19        So I'm -- that's what you should anticipate.  Get in

20   the format that I've said:  PDF, separate by declara -- so

21   Abrams-1, it would be the Johnson testimony, and so on.  Okay?

22        MR. ABRAMS:  Understood.  Thank you.

23        THE COURT:  Is there anyone else in the courtroom that

24   wants to raise a hand to be heard on the matters that I've been

25   discussing with everyone the last little while?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          I don't see any.

2          I think --

3          THE CLERK:  Yes, Your Honor.  Excuse me.  Mr. Tom

4    Tosdal, Mr. Marshack, and Mr. Friedman have -- would like to

5    join.

6          THE COURT:  Oh, I don't know why I didn't see their

7    hand.

8          Would you go ahead, and let's -- Mr. Abrams can be

9    excused from the participants panel and the panelists.  And

10   bring those other folks in, please.

11         THE CLERK:  Yes, Your Honor.

12      (Pause.)

13         THE COURT:  I see Mr. Friedman and Mr. Marshack.  Good

14   morning.

15         MR. MARSHACK:  Good morning -- or good afternoon.

16         MR. FRIEDMAN:  Good afternoon.

17         THE COURT:  Oh.  Okay.  And Mr. Tosdal.

18         All right.  Let's start with you, Mr. Friedman.

19   I'm -- what can I do for you today?  And just --

20         MR. FRIEDMAN:  Yes, Your Honor.

21         THE COURT:  -- state your name.

22         MR. FRIEDMAN:  Thank you very much.  And I don't want

23   to belabor anything.  I paid very close attention at the

24   initial plan confirmation status conference, and today as well.

25   And I just want to seek clarification.  I represent ARB, Inc.,

PG&E Corporation and Pacific Gas and Electric Company

1    and it was a party -- it is a party that objected to the

2    schedule of executory contracts and cure amounts.

3    And my understanding from your prior comments on

4    Tuesday is that the issues regarding assumption of executory

5    contracts and cure amounts are not going to be dealt with

6    during the plan confirmation hearing.  But I'm seeking

7    clarification, because I see that, already, one party -- I

8    might butcher the name; I apologize -- Osmose Utility Services,

9    filed a notice of speaking attorney with respect to their

10   objection to the scheduled executory contracts and cure

11   amounts.

12   So I was just seeking clarification --

13   THE COURT:  Okay.  The procedures -- I mean, in a

14   perfect world, we would have had a separate schedule for

15   executory contracts.  But parties can move to assume or reject

16   executory contracts at any time.  The debtors had the right to

17   put all their executory contracts that they're curing in as

18   part of the confirmation issue.  And people such as you and

19   your client have a right to object to the cure amount.  But

20   it's -- in a case like this, with a very solvent company,

21   there's no issue that needs to be tried right now.  It can be

22   reserved.

23   So if your client is -- claims to be owed 500 dollars,

24   and the debtors say they really owe me -- owe you 300 dollars,

25   there's a 300-dollar -- excuse me, a 200-dollar dispute that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    could be dealt with later.  I realize we're dealing with more

2    than 200 dollars.  It could be 200 million dollars, but it

3    doesn't have to be dealt with for confirmation purposes.

4         So what I made -- tried to make clear before was that

5    we're just not trying, as part of this compressed confirmation

6    schedule with these witnesses, anything relating to executory

7    contracts.  So your position's protected.

8         It is true that one or two parties did post and

9    identify exhibits or witnesses, but as long as they were

10   limited to that one category, they're not something we're

11   worrying about right now.

12        MR. FRIEDMAN:  One more point of clarification, Your

13   Honor.  With respect to the -- you said earlier today that,

14   even if parties are not submitting testimony -- witness

15   testimony, you're still willing to hear argument on certain

16   issues.  So if assumption of executory contracts or cure in

17   some way impacts the legal issues for confirmation, will you be

18   hearing oral argument on that?

19        THE COURT:  Well, to the extent that an objector has

20   said, I object to confirmation, they're eligible to argue.  If

21   somebody just decides they want to argue, I'm not going to hear

22   them.  If you have filed an objection to confirmation, and I

23   believe that you're raising something that goes beyond a cure

24   amount on an executory contract, I want to give you an

25   opportunity to argue.  But I'm not scheduling that argument

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    quite yet, because I want to sort of be efficient about it.

2           But at the end of the day, if you believe there's

3    something that you wish to be said that hasn't been said, I'm

4    going to try to accommodate everyone.  I don't know that I

5    could accommodate 200 lawyers arguing.  I probably could

6    accommodate two or three or four or five.  But just like we

7    would do on any other matter, I might -- and I do all the time

8    in this case.  I just give you some -- you can argue for X

9    minutes or whatever.  But I haven't got that straightened out

10   yet.

11          MR. KAROTKIN:  Your Honor --

12          MR. FRIEDMAN:  Thank you for those clar -- thank you

13   for those clarifications, Your Honor.

14          THE COURT:  Mr. Karotkin.

15          MR. KAROTKIN:  Your Honor, can I just say something?

16   Your Honor, there were a number of objections filed by

17   parties -- counterparties to executory contracts which go

18   beyond the cure amount and relate to issues such as how

19   indemnification in contributions claims would be treated and

20   whether that -- the manner in which we want to treat them in

21   connection with executory contract assumptions has been put in

22   issue, as I said, by several parties.  And I don't know if

23   Roger -- Mr. Friedman's client is one of those parties.

24          But it is our current expectation that those types of

25   issues would be addressed at the confirmation hearing, as

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  opposed to purely a dispute as to the cure amount, which most

2  of them are.

3          THE COURT:  Okay.  Well, I'd say, because we're --

4  it's so fluid, I can give Mr. Friedman assurance that I will do

5  my best to accommodate him for making an argument, and it won't

6  be long -- I can't say how long it is.  I don't -- this is all

7  a function of how long is it going to take for the witnesses.

8  And remember, folks, after we finish with all these briefs, I

9  have to pool them altogether and come up with some kind of a

10 division.  And I'm working on it.  And I'll leave it at that.

11         So Mr. Friedman, I'm going to excuse you from the

12 participants panel --

13         MR. FRIEDMAN:  Thank you so much.

14         THE COURT:  -- or the panel and go to Mr. Marshack.

15         MR. FRIEDMAN:  Thank you.

16         THE COURT:  Mr. Marshack.

17         MR. MARSHACK:  Good afternoon, Your Honor.

18 Preliminarily, I want to compliment the Court and all the

19 parties.  You guys are doing a terrific job with this whole

20 Zoom, and it's very efficient.  It's -- I hope it's fine on

21 your side, but it really is working out quite well.  I'm

22 impressed with how quickly everyone has pivoted, including the

23 Court.  And everything's going smoothly.

24         Last Friday, I believe there were 154 pleadings filed.

25 That was the deadline for objections, and I was going to talk

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  about cure for a second.  But you just addressed that.  The

2  pleadings break down, generally, into cure legal issues, pure

3  legal issues, and factual issues for confirmation.  I've heard

4  the Court just say -- and they said earlier this week -- that

5  cure issues will be handled, not at the main confirmation

6  hearing but on another date.

7       How is the Court going to handle the trial with regard

8  to legal issues -- pure legal issues?  For example, the TCC, in

9  their brief, has pointed out that the debtors say they get to

10  interpret the plan.  They point out in their brief that,

11  according to the debtors' plan, they will be the final arbiter

12  of what the plan says.  The TCC says, that's not appropriate.

13  That seems -- strikes me as a legal question.

14       So is the Court going to break down the hearing first

15  and handle those legal issues, and then we'll go to factual

16  issues, like was the plan proposed in good faith?  Was the --

17  is the plan in the best interest of creditors?  Or are we going

18  to start the factual issues first?  Or are we going to do it

19  altogether?

20       THE COURT:  Well, I don't have a simple answer for

21  that, but I'll give you my quick answer.  First of all, Mr.

22  Marshack, I'm sure you'll recall -- and you were probably on

23  the call last week -- when I listened to the arguments that

24  were raised by Ms. Winthrop and Comcast and AT&T and a number

25  of other entities.  And those are confirmation issues also.

PG&E Corporation and Pacific Gas and Electric Company

1   But by stipulation, they were singled out or carved out for

2   separate briefing.  It's my expectation and hope that I will

3   issue a written ruling on many of those issues fairly soon.

4           Secondly, after I have an opportunity to review the

5   debtors' briefs that come in -- briefs -- brief and testimony

6   today, and I do whatever scheduling I'm going to do for

7   purposes of the actual witnesses, I'm then going to figure out

8   a way to divide up the argument on the confirmation issues.

9           So I don't have an answer.  But sequentially, I'm

10  going to listen to the exhibit -- excuse me, listen to the

11  testimony and then turn to the question of oral argument.

12          So suppose we were to finish the testimony now, and I

13  said to you, all right, I'm ready to listen to your argument on

14  whether the plan should be confirmed.  Mr. Tsekerides, you've

15  got two hours; Mr. Marshack, you've got twenty minutes; Mr.

16  Julian, you've got twenty minutes, et cetera.  And we're going

17  to do it.  And I'm going to stick with my intention to have

18  experienced counsel meet and confer and be efficient so that

19  you, Mr. Marshack, aren't going to say -- argue the same thing

20  that Mr. Singleton might argue or somebody else might argue.

21          It's not a perfect world, and -- but it's the same

22  thing we would do in a real courtroom, right?  And I'd say the

23  facts are in; I've heard the facts; I'm ready to listen to oral

24  argument now and divide it up and take it under advisement.

25  And that's what I'm going to stick with.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. MARSHACK:  The only question is, when do you -- I

2    think this is fluid, but when would you handle new legal issues

3    that have come up that are -- that were, say, produced last

4    Friday in the TCC -- hypothetically, the TCC's brief?  The new

5    ones as opposed to the old ones, would they be -- I guess

6    you're going to figure that out as we go along?

7    THE COURT:  I can't answer your question.  I --

8    MR. MARSHACK:  That's fine.

9    THE COURT:  I made a commitment over a year ago to try

10   to help everybody get to the point.  Hey, listen, if there's

11   a -- if there's a silver bullet that kills the thing and I

12   believe the plan can't be confirmed, I'll say so.  But -- and

13   I'm -- to be honest with you, I might issue a ruling in

14   connection with the matters heard last week that affects how

15   the ultimate plan might have to be dealt with.  I just -- I've

16   got a full plate these days to read all these things, and I do

17   my best to answer your questions.  And I can't answer all of

18   them at this point.

19   I will schedule yet another session like this, perhaps

20   on Tuesday.  So -- but as I said, my first, most important

21   priority right now is to figure out when to accommodate those

22   witnesses.  And you heard my ruling from Mr. Abrams.  And so

23   I've got four witnesses and maybe a fifth one -- but probably

24   not -- and that's my first order of business, is to get those

25   witnesses on the stand, get their opponents cross-examined, and

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    then leave it at that.  And by then, I hope to have a better

2    sense as to how I can work efficiently on argument.

3            I probably will start by asking Mr. Karotkin how much

4    time is he going to need to make his argument on why the plan

5    should be confirmed after the evidence is in, and then go from

6    there, just like we do --

7            MR. MARSHACK:  Thank you --

8            THE COURT:  -- in a --

9            MR. MARSHACK:  Thank you, Your Honor.  You've answered

10   my question.

11           THE COURT:  Mr. Tosdal, will you unmute yourself?  And

12   then let me hear from you.  But you're still muted.

13           You've got to unmute.

14           MR. TOSDAL:  Sorry.

15           THE COURT:  There you go.  Okay, Mr. Tosdal.

16           MR. TOSDAL:  Thomas Tosdal for Patricia Garrison.

17           Just two questions, Your Honor.  What is Your Honor's

18   deadline for submission of exhibit lists and emailing the

19   nondocket exhibits into wherever they're supposed to be going?

20           THE COURT:  You've got eleven hours.  Eleven hours.

21   No, you don't have to send the exhibits in.  You have to

22   identify them.  The scheduling order, which is -- which was --

23   you should have -- it's called --

24           MR. TSEKERIDES:  Your Honor, the exhibits were due May

25   18th.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  No, it's identifying the exhibits.

2          MR. TSEKERIDES:  I'm just making sure that Mr. Tosdal

3   isn't planning on adding new things.

4          MR. TOSDAL:  Well, I --

5          THE COURT:  I don't think any -- I don't think

6   anybody's adding a new thing.

7          MR. TOSDAL:  No.

8          MR. TSEKERIDES:  Okay.

9          THE COURT:  So one second.  Let me make sure you're

10  not confused.

11         MR. TOSDAL:  Could well be.

12         THE COURT:  If you look at -- if you look at that

13  protocol, May 22nd -- there are a number of things -- May

14  22nd -- one of them is identify exhibits they intend to use.

15  And what I said earlier, if you're going to use an exhibit

16  that's already in the record, you don't do anything but

17  identify it.  My exhibit is docket number such and such.  But

18  if your exhibit is something else, then you have to send it to

19  the email address I'm going to give you.  But you don't have to

20  do that by the end of today, because I haven't given you the

21  address yet.  But you have to identify it.

22         MR. TOSDAL:  That's my question.

23         THE COURT:  Well, that's --

24         MR. TOSDAL:  So it's --

25         THE COURT:  -- my answer.  That's my answer.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. TOSDAL:  Okay.  But -- so what I want to know from

2    Your Honor, so I don't fall afoul of your scheduling order, is,

3    with regard to the exhibits not on the docket, by when do I --

4    THE COURT:  Mr. Tosdal, I just said it; I'll say it

5    again.  Let's use my discussion I had with Mr. Abrams as an

6    example.  Mr. Abrams wants to have me consider some testimony

7    that went before the CPUC.  So he needs to identify that

8    testimony by close of business today.  And so do you.  If you

9    have a document or a testimony or anything, you just identify

10   it by today.  So -- it's really for the benefit of your

11   opposing counsel.

12   Later, but not by the end of business today -- but

13   hopefully, by today -- I will, through my staff, post or

14   publish an email address that you have to send your exhibits

15   to.  But you have to identify them before you send them.

16   MR. TOSDAL:  Well, I did that already, Your Honor.

17   My -- we're not communicating.  My --

18   THE COURT:  Okay.

19   MR. TOSDAL:  By when do I need to resend that to the

20   email address?  Do you have a deadline for that?

21   THE COURT:  No, I don't.

22   MR. TOSDAL:  Oh.  That's that.

23   THE COURT:  But presume it's going to be -- it's going

24   to be quick.

25   MR. TOSDAL:  Okay.  All right.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  I mean, if --

2          MR. TOSDAL:  Fair enough.

3          THE COURT:  -- if you have -- if you have it, it

4     shouldn't take long to email it.

5          MR. TOSDAL:  No, I agree.  I just don't want to blow

6     the timeline.

7          THE COURT:  I don't want you --

8          MR. TOSDAL:  Second --

9          THE COURT:  -- to, either.  Okay.

10          MR. TOSDAL:  Second question is, I assume from your

11     discussion just previously, there will be no opening statements

12     as had been mentioned in the previous conference with Your

13     Honor?

14          THE COURT:  Well, I don't have a jury here. I know the

15     issues.  I don't need opening statements.  I've got --

16          MR. TOSDAL:  Okay.

17          THE COURT:  -- five pounds of briefs.

18          MR. TOSDAL:  I'm not asking to give one.  I just want

19     to be ready if you want them.  That's --

20          THE COURT:  Mr. Tosdal, let's make sure you're clear,

21     because you're probably not familiar with the bankruptcy

22     process.

23          MR. TOSDAL:  That's right.

24          THE COURT:  You have filed an objection.  That's your

25     opening brief.  That's your legal --

PG&E Corporation and Pacific Gas and Electric Company

1          MR. TOSDAL:  Okay.

2          THE COURT:  That's your legal argument why the plan

3     shouldn't be confirmed.  And today, Mr. Karotkin will file the

4     debtors' brief.  And so those briefs are what frame the issues.

5     And when I schedule the oral argument, I will invite you, if

6     you wish to make an argument, from the legal arguments -- well,

7     like any court.  You're experienced.  You know what the deal

8     is.  And if some testimony comes in during the testimonial

9     phase of this case, I expect you to argue why I should

10    disregard it, because it's their testimony, and I should have

11    supports not confirming the plan, if that's what you want.

12          I believe that's your goal.  I can't keep track of all

13    the -- we have people that support the plan and that oppose the

14    plan.  And I think you're in the opposed category.

15          MR. TOSDAL:  Well --

16          THE COURT:  If you're in the support category, I don't

17    need to hear from you.

18          MR. TOSDAL:  I'm fine with that procedure, Your Honor.

19    I just want to know what it is.

20          THE COURT:  Okay.  I hope I've answered the question.

21          MR. TOSDAL:  You have, sir.  Thank you.

22          THE COURT:  Is there anyone else who wishes to be

23    heard today?

24          All right.  What I'm going to do --

25          MR. KAROTKIN:  Do --

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  -- if --

2          MR. KAROTKIN:  Your Honor?

3          THE COURT:  Yes.

4          MR. KAROTKIN:  Just a --

5          THE COURT:  Mr. Karotkin, for the record.  Yeah.

6          MR. KAROTKIN:  Yes, sorry.  Thank you, sir.

7          I indicated -- I believe I had indicated at the prior

8    conference that we would be filing a proposed confirmation

9    order, as well, today.  We will not be doing that.  We have

10   circulated drafts of that to various parties and received a

11   number of comments.  We're trying to address those comments,

12   and I just don't think it would be productive to file that at

13   this time.  We will endeavor to get a proposed order on file as

14   quickly as we can.

15         THE COURT:  On that subject, Mr. Karotkin, I think

16   when I first met you, oh so long ago, in this case, I

17   complained about too much stuff be in orders and not so much

18   stuff being in motions.  And of course, there is a tendency to

19   put lots of things in orders.  But one of the things that I was

20   reflecting on here, and didn't mention until you reminded me

21   here, is whether I need proposed findings.

22         I'm not a great fan of proposed findings, because I

23   know that there are some courts that take -- don't take kindly

24   to lawyers preparing proposed findings for judges.  And I have,

25   in my career, have maybe no more than two or three times, asked

PG&E Corporation and Pacific Gas and Electric Company

1   for proposed findings.  But I -- may I assume that your

2   proposed order will suffice as proposed findings?

3          MR. KAROTKIN:  You may assume that the proposed order

4   has proposed findings as well.

5          THE COURT:  Well, as you know, there's a convention to

6   put in a -- something -- to the extent that this is a

7   conclusion, that -- a finding -- I'll call it a conclusion and

8   vice versa.  And I'm not going to say I want a two-line

9   proposed order.  I'm willing to accept a lengthy order that

10  you're negotiating.

11         But my point is that I want to -- particularly if --

12  since there are objections and assuming -- you're assuming I'm

13  going to confirm this plan.  I haven't made up my mind yet.

14  But if I do, I want to make sure that whatever I sign suffices

15  for the record and for any appellate review that I've made

16  findings.  And I don't have a problem with a recital that these

17  are my findings as included in a proposed order.  But I want

18  you to -- if I had said to you, I want you to do proposed

19  findings, I suspect it would be largely repetitive with the

20  proposed order.

21         So just keep that in mind.  And I don't -- don't hand

22  me an order that I signed that gets reversed on appeal because

23  the appellate court says that there's no findings.

24         MR. KAROTKIN:  I would never -- I would never do that

25  to you, sir.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  One other thing that I'm just going to

2    throw out there for the benefit of everyone.  I don't know

3    whether the total time we've spent on this trial is going to

4    be -- I can't quantify it, but you've all been very

5    professional in this.  But I think I'm going to invite all

6    counsel during the trial to enjoy shelter in place casual.  I'm

7    probably going to wear a robe because I'm going to have one,

8    but I'm not going to be offended if you all dressed a little

9    more casually.

10    And I realize many of you are in your homes.  You

11    might have just seen I had a spouse just walk right behind me.

12    So I want -- and also, I find this notion of sitting right in

13    front of a laptop, without even getting up to stretch my legs,

14    is a little bit of a burden.  That doesn't mean we can't have

15    personal convenience breaks.

16    But I want to just leave it out there, if you want to

17    dress down a bit, please feel free, for the trial.  Judge

18    Hammond -- my colleague Judge Hammond had a -- one recently,

19    and she made that announcement.  And some lawyer was in her

20    virtual courtroom in a T-shirt and jeans, and I think she took

21    a little offense at that.  But seriously, I'm not being flip

22    about this.  You are all working either in your homes or in

23    your offices under different circumstance -- difficult

24    circumstances, too.  There's no reason why you can't make it

25    little more easy, if you choose to.  I'm not going to have a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    quiz on -- and grade you on your dress code, but I want you to

2    feel welcome to dress more casually if you'd like.  I may do it

3    myself.

4            Mr. Tsekerides, early on, you suggested that maybe we

5    need a follow-up.  I think we probably do need a follow-up.

6    I'm going to defer, though, and do it over the weekend.  I know

7    it's a bit of burden, but I find communicating with all of you

8    on the docket text to be quite convenient.  So I just need to

9    have an opportunity to absorb all the stuff that's coming in

10   today.  And I might follow Mr. Karotkin's suggestion that we

11   can always cancel something.

12           So I might issue a docket text over the weekend that

13   says we need to have another Zoom pre-trial conference on

14   Tuesday.  And I might -- after I look at the witnesses and look

15   at the summaries, I'm not sure what I'm going to do about when

16   to actually start with the witnesses.  But it may not be as

17   early as Wednesday.  I just -- keep it open.

18           Okay?

19           MR. TSEKERIDES:  Okay.

20           THE COURT:  All right, everyone.  Have a nice weekend.

21   Thank you for your time.  I look forward to what's next for all

22   of us.

23           MR. KAROTKIN:  Thank you, sir.

24           MR. TSEKERIDES:  Thank you, Your Honor.

25           MR. TOSDAL:  Thank you, Your Honor.

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Thank you, Clerk.  Thank you to the staff

2    and everyone for participating.

3          Have a nice weekend.

4          MR. TSEKERIDES:  You, too.

5          MR. KAROTKIN:  Bye-bye.

6          MR. TOSDAL:  You, too.

7      (Whereupon these proceedings were concluded at 12:58 PM)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Linda Ferrara, certify that the foregoing transcript is a
true and accurate record of the proceedings.



_____

/s/ LINDA FERRARA, CET-656

eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020

Date:  May 26, 2020

(973) 406-2250 | operations@escribers.net | www.escribers.net

# A

**able (5)**
21:21;22:2;26:20;
29:2;36:17
**Abrams (45)**
13:22,24;15:3;17:10;
18:22;19:3,7,21;20:2,
10;26:16,18,21,24,25;
30:24;34:16;35:1,3,15,
17,20;36:2,4,6,7,8,10,
12,15,22,25;37:10,22,
23,24,25;38:2;40:1;
41:9;43:22;44:8;51:22;
54:5,6
**Abrams' (1)**
18:20
**Abrams-1 (3)**
42:10,11;43:21
**absent (1)**
15:18
**absorb (1)**
60:9
**accept (1)**
58:9
**access (2)**
4:12;8:8
**accommodate (9)**
21:24;24:22;30:21,
22;47:4,5,6;48:5;51:21
**accommodated (1)**
42:3
**accomplish (1)**
35:1
**according (1)**
49:11
**acting (1)**
15:11
**activate (1)**
7:20
**activates (1)**
10:20
**active (1)**
4:6
**actual (2)**
26:22;50:7
**actually (2)**
43:6;60:16
**add (4)**
39:5;40:12;41:6;
42:17
**adding (2)**
53:3,6
**address (18)**
6:18,21;7:18;10:6;
11:1;14:7;19:23;20:2;
23:2;25:10;37:20;42:1,
7;53:19,21;54:14,20;
57:11
**addressed (2)**
47:25;49:1
**adjust (1)**
27:5
**adjustment (1)**
15:11
**admissible (1)**
41:2
**admit (1)**
36:16
**admitted (2)**
15:17;42:9
**advance (1)**
17:18
**adverse (3)**
14:15;18:2;35:11
**advisement (1)**
50:24
**affects (1)**
51:14
**afoot (1)**
26:9
**afoul (1)**
54:2
**afternoon (4)**
4:17;44:15,16;48:17
**again (25)**
5:2;6:6,15;7:12;8:4;
11:12,23;13:5;14:13;
17:10;18:3,12;20:13;
22:8;24:23;29:21;
30:11;37:9;39:16,21;
40:4,13;41:7,19;54:5
**age (2)**
28:21;29:2
**ago (2)**
51:9;57:16
**agree (5)**
12:17;14:17;15:2,17;
55:5
**agreed (5)**
11:19;12:22;13:6;
22:2;39:15
**agreement (2)**
13:7;21:22
**agrees (1)**
22:3
**ahead (5)**
29:4;31:2,4;38:21;
44:8
**allocation (1)**
39:15
**allocations (3)**
11:20,21;21:22
**allow (1)**
28:6
**allowed (2)**
39:24;42:4
**allows (1)**
7:21
**along (1)**
51:6
**altogether (2)**
48:9;49:19
**always (1)**
60:11

**amended (2)**
23:1,2
**among (2)**
8:8;21:22
**amount (6)**
31:20;34:7;45:19;
46:24;47:18;48:1
**amounts (4)**
33:15;45:2,5,11
**ample (1)**
25:9
**and-So (1)**
24:21
**annexed (1)**
22:15
**announcement (1)**
59:19
**answered (3)**
31:7;52:9;56:20
**anticipate (1)**
43:19
**apologize (2)**
36:10;45:8
**appeal (1)**
58:22
**appearance (1)**
3:23
**appearances (1)**
3:21
**appellate (2)**
58:15,23
**applies (1)**
7:3
**appointment (1)**
30:20
**appropriate (2)**
12:1;49:12
**ARB (1)**
44:25
**arbiter (1)**
49:11
**argue (13)**
30:2;33:15;39:8;
40:16,18;46:20,21,25;
47:8;50:19,20,20;56:9
**arguing (2)**
13:12;47:5
**argument (25)**
4:2;20:15,19;21:6;
25:10;33:9,18,20;34:3,
5,6;42:20;46:15,18,25;
48:5;50:8,11,13,24;
52:2,4;56:2,5,6
**arguments (4)**
13:14;41:15;49:23;
56:6
**arises (1)**
18:11
**aside (3)**
13:24;17:10;38:10
**assume (8)**
8:20;22:21;24:14;
35:11;45:15;55:10;

58:1,3
**assuming (4)**
6:10;10:7;58:12,12
**assumption (2)**
45:4;46:16
**assumptions (1)**
47:21
**assurance (1)**
48:4
**AT&T (1)**
49:24
**attacking (1)**
28:4
**attendee (3)**
4:5;6:25;18:15
**attendees (1)**
3:14
**attention (1)**
44:23
**attorney (5)**
5:10;11:1;12:16;
19:21;45:9
**attorneys (2)**
4:21,22
**audio (1)**
3:22
**authenticating (1)**
16:19
**authority (1)**
12:15
**available (7)**
5:13;6:18,21;19:7;
24:16;30:18;38:25
**avoided (1)**
17:2
**aware (2)**
14:3;15:2
**away (1)**
4:12

# B

**back (8)**
4:4;18:3,14,16;
20:12;24:24;29:14;
30:10
**bad (1)**
23:5
**Bankruptcy (5)**
3:4;29:13;36:16;
41:25;55:21
**barely (1)**
26:19
**base (1)**
30:1
**based (1)**
41:16
**basic (1)**
21:8
**basics (1)**
13:4
**begin (2)**
8:5;29:16

**behind (2)**
26:19;59:11
**belabor (1)**
44:23
**believes (5)**
17:19;30:1;33:6;
34:1;42:19
**benchmark (1)**
34:12
**benefit (4)**
23:5;24:7;54:10;
59:2
**best (7)**
21:24;33:2;36:22;
41:10;48:5;49:17;
51:17
**better (6)**
12:18;17:6,24;20:14;
26:22;52:1
**beyond (2)**
46:23;47:18
**bigger (1)**
17:6
**billion (4)**
28:4;31:21;33:10,18
**bind (1)**
12:15
**bit (4)**
20:6;59:14,17;60:7
**Black (1)**
15:8
**blow (1)**
55:5
**both (1)**
4:1
**box (2)**
42:6,13
**break (4)**
6:2;25:7;49:2,14
**breaks (1)**
59:15
**Brent (1)**
16:10
**brief (11)**
20:22;21:1,5;22:23;
23:11;49:9,10;50:5;
51:4;55:25;56:4
**briefing (1)**
50:2
**briefs (5)**
48:8;50:5,5;55:17;
56:4
**bright (1)**
26:18
**bring (5)**
3:13;20:11;26:15;
37:13;44:10
**bringing (1)**
19:4
**broker (1)**
21:21
**bullet (1)**
51:11

Case: 19-30088    Doc# 7576    Filed: 05/26/20    Entered: 05/26/20 08:31:41    Page 63
of 72

**burden (6)**
12:6;21:8;23:13;
39:20;59:14;60:7
**burdening (1)**
12:6
**burdensome (1)**
25:3
**business (7)**
17:25;22:22,23;
39:11;51:24;54:8,12
**butcher (1)**
45:8
**Bye-bye (1)**
61:5

**C**

**CALIFORNIA (2)**
3:1,5
**Call (28)**
3:3;10:1,19;11:16;
12:1,14;13:23;14:10,
15,23;17:11,24;18:2;
21:12;23:22;27:9;
28:21;30:10,15;35:2,6,
20;38:25;39:11;41:15,
16;49:23;58:7
**called (10)**
7:11;9:7,8;14:5;29:6,
10;39:25;41:4;43:5;
52:23
**calling (4)**
15:14,18;27:12;
35:22
**came (1)**
19:16
**can (60)**
3:8,9,11,12,18;4:2,7,
8;5:3,4;6:11;7:16,18,
18;8:5,10;11:25;13:19;
14:7;17:20;18:15;20:6,
8,10,23;23:12;25:14;
26:19,21,22,24,25;
27:3,4;29:18,18;30:2;
33:9;34:6,20,20;35:17;
38:6,7,15;39:8,22;
40:6;41:11;43:8;44:8,
19;45:15,21;47:8,15;
48:4;52:2;57:14;60:11
**cancel (1)**
60:11
**career (1)**
57:25
**carefully (1)**
38:1
**carved (1)**
50:1
**case (19)**
14:16;16:3;22:24;
23:8;35:6;36:24;38:7,
7,9,13,14,23;40:7,12;
43:1;45:20;47:8;56:9;
57:16

**case-in-chief (1)**
21:12
**cash (1)**
34:10
**cashier's (1)**
33:17
**casual (1)**
59:6
**casually (2)**
59:9;60:2
**category (1)**
46:10;56:14,16
**certain (3)**
16:19;23:2;46:15
**certainly (2)**
5:3;10:13
**cetera (1)**
50:16
**chambers (3)**
23:6,7,17
**chance (1)**
20:6
**chart (1)**
22:15
**charts (1)**
22:12
**check (2)**
33:10,17
**Cher (1)**
7:11
**choose (1)**
29:25;59:25
**chunk (1)**
33:13
**circulated (1)**
57:10
**circumstance (1)**
59:23
**circumstances (2)**
15:19;59:24
**circus (1)**
37:20
**claims (2)**
45:23;47:19
**clar (1)**
47:12
**clarification (4)**
44:25;45:7,12;46:12
**clarifications (1)**
47:13
**clarify (1)**
4:2,7
**clear (3)**
34:1;46:4;55:20
**CLERK (15)**
3:4,8,10,12,16;19:1,
2,4,5;26:17;29:7;37:2;
44:3,11;61:1
**client (3)**
45:19,23;47:23
**close (6)**
17:25;22:22,22;
39:10;44:23;54:8

**closing (1)**
13:13
**coax (1)**
12:25
**code (1)**
60:1
**colleague (4)**
22:10;24:4;32:11;
59:18
**combined (1)**
20:25
**Comcast (1)**
49:24
**coming (4)**
5:25;17:17;34:23;
60:9
**comments (4)**
4:21;45:3;57:11,11
**commitment (1)**
51:9
**committed (1)**
25:12
**communicating (2)**
54:17;60:7
**company (2)**
37:8;45:20
**complained (1)**
57:17
**compliment (1)**
48:18
**compressed (1)**
46:5
**computer (1)**
7:16
**concept (1)**
22:4
**concepts (2)**
41:18,19
**conceptually (2)**
12:22;22:3
**concerned (1)**
35:23
**conclude (1)**
14:22
**concluded (1)**
61:7
**conclusion (3)**
14:21;58:7,7
**confer (3)**
12:5;39:19;50:18
**conference (7)**
24:1,4,11;44:24;
55:12;57:8;60:13
**confirm (1)**
58:13
**confirmation (24)**
14:1;20:22;21:1,5;
22:25;28:3;32:22;
37:14,21;38:7;44:24;
45:6,18;46:3,5,17,20,
22;47:25;49:3,5,25;
50:8;57:8
**confirmed (12)**

**closing** → continuing columns:

21:13;38:14,18,18,
20;39:9;40:19,19;
50:14;51:12;52:5;56:3
**confirming (1)**
56:11
**conflict (1)**
18:10
**confuse (1)**
13:12
**confused (1)**
53:10
**confusing (2)**
41:18,19
**confusion (1)**
3:25
**connection (2)**
47:21;51:14
**consider (4)**
32:6;40:15;41:24;
54:6
**considered (2)**
40:15;42:16
**Constitutional (1)**
18:18
**constraint (1)**
12:17
**constructive (1)**
12:14
**contact (1)**
13:17
**contend (1)**
16:4
**context (1)**
11:10
**contract (2)**
46:24;47:21
**contracts (9)**
45:2,5,10,15,16,17;
46:7,16;47:17
**contrary (1)**
20:5;33:4
**contributions (1)**
47:19
**convenience (2)**
24:20;59:15
**convenient (1)**
60:8
**convention (1)**
58:5
**conversation (2)**
9:24;13:20
**copies (3)**
23:6,7,17
**Corporation (1)**
3:13
**correction (1)**
37:4
**counsel (24)**
5:5,14;6:24;7:4,8,19;
8:25;9:17,24;11:19;
12:2,3,3,5;13:17;23:10,
16;29:9;37:1;38:12;
39:19;50:18;54:11;

**59:6** column:
59:6
**count (1)**
38:11
**counterparties (1)**
47:17
**couple (2)**
9:25;13:11
**course (4)**
21:15;30:7,7;57:18
**Court (177)**
3:3,4,5,9,11,18;4:10,
12,15,18,20;5:14,19,
24;6:5;8:23;9:16,19,
23;10:6,9;11:3,5,7,12;
12:6,10;13:10;14:18,
21;15:5,10;16:7,16,20,
22,25;17:4;18:8,12,19;
19:10,15,19;20:10;
21:3;22:8,21;23:4;
24:3;25:23;26:2,4,6,11,
13,18;27:1,5,8,13,15,
17,21;28:5,7,11,14,17,
20;29:1,4,13,13,25;
30:8,11,13,18,20,24;
31:2,4,8,12,14,16,18,
22,25;32:2,20,23;33:8,
22,25;34:6,15,18,22,
25;35:4,16,18;36:1,3,5,
8,11,13,21,22;37:6,22,
24;38:1,3;40:3,11;
41:18,25;42:4;43:23;
44:6,13,17,21;45:13;
46:19;47:14;48:3,14,
16,18,23;49:4,7,14,20;
51:7,9;52:8,11,15,20;
53:1,5,9,12,23,25;54:4,
18,21,23;55:1,3,7,9,14,
17,20,24;56:2,7,16,20,
22;57:1,3,5,15;58:5,23;
59:1;60:20;61:1
**courtesy (1)**
8:11
**courtroom (11)**
5:1;6:20;13:18;25:4;
35:7;36:24;42:5;43:5,
23;50:22;59:20
**courts (1)**
42:24;57:23
**Court's (1)**
41:24
**covers (1)**
10:3
**COVID (2)**
19:22;23:6
**CPUC (7)**
36:19;39:1,4;40:2,
10;41:22;54:7
**created (1)**
9:5
**creditors (1)**
49:17
**crisis (1)**
23:6

Case: 19-30088    Doc# 7576    Filed 05/26/20    Entered: 05/26/20 08:31:41    Page 64
of 72

**Cromwell (1)**
37:12
**cross (4)**
19:7;29:16,16,17
**cross- (8)**
19:7;21:17;25:21;
26:6;29:8,10;35:8;
36:17
**cross-examination (3)**
9:9;24:23;25:24
**cross-examine (6)**
17:21;28:6;29:25;
32:2;35:12;39:13
**cross-examined (3)**
12:2;29:18;51:25
**cross-examiner (1)**
9:9
**cross-examining (3)**
4:23;7:1;15:15
**cure (14)**
14:2;15:7,9;45:2,5,
10,19;46:16,23;47:18;
48:1;49:1,2,5
**curing (1)**
45:17
**current (1)**
47:24
**cut (1)**
41:7

**D**

**date (2)**
17:16;49:6
**dates (1)**
20:23
**Day (5)**
24:11;29:22;30:16;
34:9;47:2
**days (3)**
9:25;17:17;51:16
**deadline (5)**
9:19;43:16;48:25;
52:18;54:20
**deal (7)**
13:19,20;14:24;
19:25;23:17;24:17;
56:7
**dealing (3)**
11:12;24:10;46:1
**dealt (5)**
8:15;45:5;46:1,3;
51:15
**debtor (10)**
17:1,8,16;20:20;
21:4,8;26:2;29:22;
34:11;35:5
**debtors (6)**
8:24;39:6,13;45:16,
24;49:9
**debtors' (10)**
15:15;21:9,12,12;
38:4,12,17;49:11;50:5;

56:4
**decides (1)**
46:21
**declara (1)**
43:20
**declarant (4)**
16:15,16;17:3;25:25
**declaration (24)**
6:14;14:11;15:17,20;
16:8,8,9,19;17:25;
19:6;21:15;25:21;
27:17;29:8;38:21;39:4,
5,7;40:23;42:12,15;
43:2,7,10
**declarations (28)**
4:11;9:7;12:18;
15:19;16:10;21:2;22:7,
11,14,23;27:11;29:22;
32:25;35:10,13,16,19;
36:18;38:24,24;39:10,
23;40:1,22;41:13,16;
43:2,3
**dedicated (2)**
6:21;9:16
**deep (1)**
14:10
**defer (2)**
20:6;60:6
**deferral (1)**
34:10
**definition (1)**
22:22
**delivered (1)**
23:14
**demanding (1)**
25:3
**Dennis (1)**
3:6
**depending (1)**
26:8
**deputy (4)**
5:1;6:20;13:18;42:5
**describe (1)**
5:13
**descriptive (1)**
9:1
**designate (4)**
6:15;15:23;16:5;
17:14
**designated (3)**
6:21;13:22,25
**designation (1)**
14:1
**detail (1)**
11:15
**details (1)**
7:23
**determine (1)**
12:20
**diagrams (1)**
22:12
**difference (1)**
33:14

**different (6)**
8:15,23;12:2,3;
33:12;59:23
**differently (1)**
11:25
**difficult (1)**
59:23
**digress (1)**
13:21
**direct (12)**
15:21;17:23;25:21,
24;29:7,11,15,21,23;
30:2,5;42:24
**directly (1)**
36:20
**directory (2)**
7:17;10:22
**disagree (1)**
5:3
**disagreement (1)**
12:24
**disclosure (1)**
34:12
**discretion (1)**
12:19
**discuss (1)**
10:20
**discussing (2)**
8:12;43:25
**discussion (4)**
14:10;43:14;54:5;
55:11
**discussions (1)**
26:9
**displayed (1)**
7:22
**dispute (3)**
32:17;45:25;48:1
**disregard (1)**
56:10
**District (2)**
3:5;40:10
**dive (1)**
35:24
**divide (3)**
5:4;50:8,24
**division (1)**
48:10
**docket (32)**
5:5,8,12,15,16,22;
6:6,10,13;7:5,7,14;8:5,
6,7;9:3,4,15;10:12;
11:13;16:8;19:24;
21:14,16;23:9;33:2;
41:25,25;53:17;54:3;
60:8,12
**document (9)**
7:2,19,21;8:1,4;
10:20,21,23;54:9
**documents (5)**
8:16;16:12,19;19:23;
20:3
**dollars (4)**

45:23,24;46:2,2
**Donato (1)**
33:5
**Donato's (1)**
3:20
**done (1)**
25:13
**door (2)**
13:13;15:23
**doubt (1)**
24:24
**down (3)**
49:2,14;59:17
**drafts (1)**
57:10
**dress (3)**
59:17;60:1,2
**dressed (1)**
59:8
**drive (1)**
10:18
**due (3)**
20:24;21:15;52:24
**during (3)**
45:6;56:8;59:6

**E**

**ear (1)**
24:25
**earlier (4)**
27:20;46:13;49:4;
53:15
**early (3)**
20:17;60:4,17
**easier (1)**
26:20
**easy (2)**
33:11;59:25
**efficient (3)**
47:1;48:20;50:18
**efficiently (1)**
52:2
**either (10)**
4:22;8:4;18:24;
23:12,20;25:7;26:1;
29:7;55:9;59:22
**eleven (2)**
52:20,20
**eligible (1)**
46:20
**else (13)**
7:3;18:1,3;38:16;
40:5,14;41:6;42:19;
43:17,23;50:20;53:18;
56:22
**else's (1)**
40:24
**email (15)**
6:18,21;7:17;9:16;
10:6;11:1;19:23;20:2;
42:1,2,4;53:19;54:14,
20;55:4

**emailed (1)**
6:24;8:16;42:14
**emailing (1)**
9:17;52:18
**emergency (1)**
42:6
**end (4)**
29:21;47:2;53:20;
54:12
**endeavor (1)**
57:13
**enforce (1)**
11:7
**enjoy (1)**
59:6
**enough (1)**
55:2
**entire (1)**
12:7
**entities (1)**
49:25
**entitled (3)**
17:11;39:14;40:12
**envision (1)**
20:20
**Eric (1)**
14:9
**established (1)**
38:22
**et (1)**
50:16
**even (7)**
20:5;21:13;24:8;
26:20;40:25;46:14;
59:13
**events (1)**
17:10
**eventually (1)**
6:3
**everybody (4)**
14:22;18:1;32:25;
51:10
**everyone (14)**
6:18;13:12;19:19;
21:25;22:3;33:3;42:1,
8;43:25;47:4;48:22;
59:2;60:20;61:2
**everything's (1)**
48:23
**evidence (8)**
8:14;39:7,7;41:2;
43:14,15,16;52:5
**evidentiary (1)**
34:5
**exactly (3)**
25:24;28:9;31:13
**examination (5)**
18:5;21:18;25:22;
29:9,11
**examine (7)**
7:20;11:18;19:8;
21:23,23;27:21;36:18
**examined (3)**

Case: 19-30088    Doc# 7576    Filed: 05/26/20    Entered: 05/26/20 08:31:41    Page 65
of 72

9:8;30:15;35:9
**examining (7)**
7:1;8:11;10:19;13:1,
13;26:7;39:19
**example (8)**
6:12;7:13;29:6;40:8;
41:20;42:11;49:8;54:6
**exceeds (3)**
29:11;30:2,4
**except (2)**
14:1;43:16
**exchanged (1)**
8:7
**exclude (2)**
18:14;30:6
**excluded (2)**
28:2;32:19
**excuse (8)**
6:21;11:17;38:13;
40:17;44:3;45:25;
48:11;50:10
**excused (1)**
44:9
**executory (11)**
45:2,4,10,15,16,17;
46:6,16,24;47:17,21
**exhibit (26)**
5:13,15,21,21;6:8,12,
24;7:8,13,15;8:12;9:2,
5,10;10:3;39:6;40:17;
41:17,23;42:9,10;
50:10;52:18;53:15,17,
18
**exhibits (29)**
4:24;5:2,4,7,10,11,
11,19,20;6:19,22;7:5;
8:10,22;10:8,16;15:25;
20:17;22:12;40:12;
42:2;46:9;52:19,21,24;
53:1,14;54:3,14
**existence (2)**
41:22,23
**expect (4)**
12:5;25:21;27:8;
56:9
**expectation (10)**
9:6;11:14,21,23;
17:13;20:14;21:19;
34:19;47:24;50:2
**expecting (2)**
21:9;24:18
**experienced (2)**
50:18;56:7
**expert (1)**
27:14
**extent (6)**
5:14;11:12;21:21;
41:4;46:19;58:6

**F**

**fact (1)**
37:11
**facts (2)**
50:23,23
**factual (1)**
49:3,15,18
**fail (1)**
34:7
**Fair (2)**
31:8;55:2
**fairly (1)**
24:8;50:3
**fairness (1)**
22:6
**faith (1)**
49:16
**fall (1)**
54:2
**familiar (2)**
7:24;55:21
**family (2)**
24:17;30:21
**fan (1)**
57:22
**far (1)**
5:1;22:4
**fashion (1)**
8:15
**feature (3)**
7:11,21;10:21
**feel (3)**
23:16;59:17;60:2
**few (1)**
4:20
**fifth (1)**
51:23
**fifty (1)**
28:15
**figure (4)**
26:13;50:7;51:6,21
**file (5)**
10:5;17:25;56:3;
57:12,13
**filed (24)**
4:11,13,16;11:1;
13:22;18:23;21:4,14;
22:19;23:8,25;24:8;
27:17,18;36:19,20;
38:16;39:3;41:21;45:9;
46:22;47:16;48:24;
55:24
**files (2)**
8:23;21:5
**filing (12)**
14:6;15:3;19:12,13;
20:22,25;22:11;23:1;
35:10;40:22;43:2;57:8
**final (1)**
49:11
**find (4)**
17:21;25:1;59:12;
60:7
**finding (1)**
58:7
**findings (10)**

57:21,22,24;58:1,2,4,
16,17,19,23
**fine (8)**
3:9;10:7;11:20;
13:19;30:17;48:20;
51:8;56:18
**finish (2)**
48:8;50:12
**first (17)**
3:22;5:4;9:7,8;
11:18;13:11;15:16;
23:19;28:1,2,11;49:14,
18,21;51:20,24;57:16
**five (6)**
9:12;12:3,3,4;47:6;
55:17
**fix (1)**
25:12
**flip (1)**
59:21
**fluid (2)**
48:4;51:2
**flux (1)**
23:25
**focus (3)**
13:14;14:25;40:13
**folks (2)**
44:10;48:8
**follow (6)**
3:20;9:11;37:4;
41:10,10;60:10
**followed (1)**
24:24
**following (1)**
12:7
**follow-up (2)**
60:5,5
**forgetting (1)**
15:6
**forgot (1)**
16:14
**form (2)**
8:17;42:25
**formal (2)**
28:21;36:15
**format (3)**
25:18;42:12;43:20
**formula (2)**
33:14;34:10
**forth (1)**
29:15
**forward (2)**
23:22;60:21
**four (18)**
9:11,12;17:7;19:20;
21:9;22:23;29:22;30:1;
35:7;38:9;39:13;43:2,
3,4,6,8;47:6;51:23
**frame (1)**
56:4
**FRANCISCO (1)**
3:1
**Frankly (3)**

12:17;14:11;25:3
**free (2)**
19:7;59:17
**FRIDAY (3)**
3:1;48:24;51:4
**Friedman (12)**
44:4,13,16,18,20,22;
46:12;47:12;48:4,11,
13,15
**Friedman's (1)**
47:23
**front (4)**
39:4;40:10,10;59:13
**full (1)**
51:16
**fully (1)**
36:16
**fulsome (1)**
35:23
**fun (1)**
40:22
**function (1)**
48:7
**funds (1)**
34:9

**G**

**Garrison (1)**
52:16
**gave (2)**
16:11;37:12
**generally (2)**
24:19;49:2
**germane (1)**
37:20
**gets (2)**
13:14;58:22
**given (2)**
23:25;53:20
**goal (1)**
56:12
**goes (1)**
46:23
**good (10)**
10:1;25:12;31:8;
41:20;44:13,15,15,16;
48:17;49:16
**grade (1)**
60:1
**great (1)**
57:22
**group (2)**
12:22,25
**guess (1)**
51:5
**guidance (1)**
13:8
**guinea (3)**
5:17;6:23;10:11
**guys (1)**
48:19

**H**

**habit (1)**
23:7
**half-hour (1)**
22:5
**Hammond (2)**
59:18,18
**hand (12)**
13:3;14:23;18:15;
25:18,19;26:14,21,22;
33:10;43:24;44:7;
58:21
**handle (3)**
49:7,15;51:2
**handled (1)**
49:5
**hands (1)**
33:1
**hear (17)**
3:8,9,11;4:8;6:1;
11:15;20:10;26:21,22,
24;27:3,4;35:17;46:15,
21;52:12;56:17
**heard (14)**
14:23;23:22;25:10,
17;32:15;37:10;39:2;
43:1,24;49:3;50:23;
51:14,22;56:23
**hearing (11)**
14:21;22:18;28:3;
32:22;37:2,21;45:6;
46:18;47:25;49:6,14
**help (1)**
51:10
**here's (2)**
5:2;17:5
**herself (1)**
11:9
**Hey (1)**
51:10
**himself (1)**
14:14
**hold (2)**
5:24;13:15
**home (1)**
25:2
**homes (3)**
25:6;59:10,22
**honest (1)**
51:13
**Honor (55)**
3:8,13,17;9:17;
12:18;16:14;18:7,17;
19:2;22:4;23:25;25:20;
26:17,25;27:4,10,20;
28:24;29:24;30:10,23;
31:1,1;32:14;33:7,21;
34:4,24;35:15,17;
36:10,16;37:1,4,23;
41:9;44:3,11,20;46:13;
47:11,13,15,16;48:17;

Case: 19-30088    Doc# 7576    Filed: 05/26/20    Entered: 05/26/20 08:31:41    Page 66
of 72

52:9,17,24;54:2,16;
55:13;56:18;57:2;
60:24,25
**Honorable (1)**
3:6
**Honor's (2)**
10:2;52:17
**hope (5)**
17:15;48:20;50:2;
52:1;56:20
**hopefully (1)**
54:13
**hours (5)**
12:21;22:5;50:15;
52:20,20
**how's (1)**
13:8
**hypothetically (1)**
51:4

**I**

**identification (3)**
9:2,3;11:17
**identified (21)**
5:6,16;6:24;7:5,8;
8:24;9:18;11:9,16;
14:4,8,13,14;15:25,25;
19:3;38:4;39:14;41:3;
42:9,10
**identify (11)**
32:8;39:5;41:23;
46:9;52:22;53:14,17,
21;54:7,9,15
**identifying (2)**
10:6;53:1
**imagine (1)**
8:18
**impacts (1)**
46:17
**important (1)**
51:20
**impose (3)**
23:14;24:17;25:6
**imposing (1)**
25:5
**impressed (1)**
48:22
**Inc (1)**
44:25
**include (2)**
7:5;9:15
**included (1)**
58:17
**including (2)**
12:16;48:22
**increment (1)**
33:12
**indemnification (1)**
47:19
**indicated (3)**
35:21;57:7,7
**indicating (1)**

22:17
**Indiscernible (3)**
18:8;27:11;29:6
**individual (2)**
8:21;14:9
**individuals (2)**
19:1;41:13
**initial (1)**
44:24
**instead (2)**
35:9;43:6
**intend (4)**
17:5,6;25:10;53:14
**intended (1)**
11:16
**intends (1)**
7:8
**intention (1)**
50:17
**interest (1)**
49:17
**internal (1)**
7:16
**internally (1)**
6:7
**interpret (1)**
49:10
**interpretation (1)**
31:23
**into (13)**
5:4;7:17,22;8:14;
10:4;18:15;20:11;25:7;
26:16;35:24;37:20;
42:5;52:19
**invite (3)**
14:22;56:5;59:5
**irrelevant (3)**
34:2,2;42:20
**issue (13)**
14:2;15:7;16:21;
21:11;26:12;29:5;
32:17;45:18,21;47:22;
50:3;51:13;60:12
**issues (24)**
12:16;32:8;35:24;
37:20;45:4;46:16,17;
47:18,25;49:2,3,3,5,8,
8,15,16,18,25;50:3,8;
51:2;55:15;56:4
**items (1)**
37:17

**J**

**jeans (1)**
59:20
**job (2)**
25:13;48:19
**Johnson (21)**
37:11;38:3,4,5,8,19;
39:1,3,6,8;40:4,4,7,9,
20;41:20,21;42:11,15,
17;43:21

**join (1)**
44:5
**joining (1)**
26:17
**Judge (4)**
3:20;33:5;59:17,18
**judgement (1)**
12:1
**judges (1)**
57:24
**judgment (3)**
11:22;25:11;30:15
**Julian (23)**
3:24;4:6;10:11,14,
17,25;15:13,16;16:9,
15,18,21,24;17:1;
25:19,20;26:1,3,5;
38:16;40:14;42:14;
50:16
**jury (2)**
30:3;55:14

**K**

**Karotkin (40)**
4:8,9,14,16,19;19:9,
11,16,17;20:13,21,24,
25;22:8,14;23:1,8;
28:23,25;29:1,2;32:5,
10,11;43:1;47:11,14,
15;52:3;56:3,25;57:2,
4,5,6,15;58:3,24;60:23;
61:5
**Karotkin's (1)**
60:10
**keep (4)**
42:22;56:12;58:21;
60:17
**kept (1)**
8:14
**kills (1)**
51:11
**kind (3)**
9:21;13:17;48:9
**kindly (1)**
57:23
**kinds (1)**
7:5
**knowing (1)**
14:11
**known (4)**
10:24;28:15,17,18
**knows (2)**
16:13;19:2

**L**

**laid (2)**
22:4;37:5
**laptop (4)**
25:2;27:6;29:14;
59:13
**largely (2)**

21:10;58:19
**last (9)**
3:25;4:12;9:24;16:5;
43:25;48:24;49:23;
51:3,14
**late (1)**
17:10
**later (10)**
4:16;6:18;14:7;20:7;
21:2;26:14;42:2;43:2;
46:1;54:12
**latest (1)**
19:12
**lawyer (5)**
6:11;13:3;39:17;
42:8;59:19
**lawyers (7)**
10:10;12:11;16:11;
38:4,6;47:5;57:24
**lead (1)**
12:16
**leader (1)**
12:24
**least (4)**
13:1,4;14:14;15:6
**leave (9)**
17:10;34:20,20,22;
38:10;43:12;48:10;
52:1;59:16
**leaving (1)**
13:24
**legal (12)**
34:6;46:17;49:2,3,8,
8,13,15;51:2;55:25;
56:2,6
**legally (1)**
42:20
**legs (1)**
59:13
**lend (2)**
8:20;23:10
**lengthy (1)**
58:9
**less (1)**
31:21
**light (1)**
26:19
**limine (2)**
32:14,18
**limited (1)**
46:10
**link (2)**
6:7;8:5
**list (17)**
5:10,11,21;6:6;7:15;
11:24;17:13;18:25;
20:3,3;30:25;32:3;
35:23;36:17;39:6;
40:12;41:17
**listen (7)**
17:13;37:24;50:10,
10,13,23;51:10
**listened (1)**

49:23
**listening (3)**
3:22;7:3;13:12
**lists (1)**
52:18
**little (10)**
4:12;15:11;20:6,18;
26:20;43:25;59:8,14,
21,25
**live (4)**
15:21;25:15;41:2;
43:8
**local (1)**
23:9
**locally (1)**
10:18
**long (6)**
46:9;48:6,6,7;55:4;
57:16
**look (11)**
6:8;17:13;18:25;
22:8;32:3,25;53:12,12;
60:14,14,21
**looked (1)**
19:3
**looking (5)**
10:22;18:25;20:8;
32:4,7
**lost (1)**
24:5
**lot (3)**
26:18;28:17,18
**lots (1)**
57:19
**Lowrey (12)**
14:9,11;27:16,22;
28:8;30:15,20;31:11;
32:18;33:5,8,19
**Lowrey's (2)**
32:6;33:25

**M**

**MacConaghy (7)**
3:16,24;4:3;18:4,6,9,
17
**main (1)**
49:5
**makes (2)**
20:21;40:11
**making (6)**
4:22;10:25;11:6;
34:5;48:5;53:2
**manner (1)**
47:20
**many (7)**
12:19;27:15;39:16;
42:23,24;50:3;59:10
**Marshack (13)**
44:4,13,15;48:14,16,
17;49:22;50:15,19;
51:1,8;52:7,9
**matter (8)**

Case: 19-30088    Doc# 7576    Filed: 05/26/20    Entered: 05/26/20 08:31:41    Page 67
of 72

3:12;6:11;21:6;
22:24;30:5,21;32:16;
47:7
**matters (5)**
21:9;24:18,18;43:24;
51:14
**MAY (16)**
3:1;7:1;22:21;23:9;
24:13;33:13;40:1;
41:16,23;52:24;53:13,
13;58:1,3;60:2,16
**maybe (8)**
12:18;17:2,9;24:1;
25:23;51:23;57:25;
60:4
**mean (20)**
8:25;12:14;17:15;
18:25;22:12;23:11;
24:14;25:25;26:9;
31:17,22;32:3,13,14;
33:9;34:3;41:7;45:13;
55:1;59:14
**means (1)**
37:4
**mechanism (1)**
37:19
**medical (1)**
30:20
**medium (1)**
8:17
**meet (2)**
12:5;50:18
**meetings (1)**
16:1
**memorandum (1)**
22:16
**Memorial (1)**
24:11
**mention (1)**
57:20
**mentioned (5)**
15:3,3;16:7;27:19;
55:12
**merits (2)**
13:14;20:19
**message (1)**
36:23
**met (1)**
57:16
**might (23)**
5:21;14:5,9,15;
15:23;16:4,25;17:1;
25:3;26:8;28:21;29:2;
37:19;45:8;47:7;50:20,
20;51:13,15;59:11;
60:10,12,14
**million (1)**
46:2
**mind (3)**
3:25;58:13,21
**minute (4)**
6:1;13:24;28:23,25
**minutes (4)**

12:21;47:9;50:15,16
**moment (4)**
3:13;16:5;18:25;
20:12
**Monday (1)**
24:2
**money (2)**
33:12;34:9
**Montali (1)**
3:6
**more (11)**
8:17;11:15;22:11;
25:2;34:21;46:1,12;
57:25;59:9,25;60:2
**morning (2)**
44:14,15
**most (4)**
8:20;41:11;48:1;
51:20
**motion (2)**
32:13,18
**motions (1)**
57:18
**move (5)**
26:20;37:7,9,17;
45:15
**much (11)**
11:24;12:1,20;22:14;
31:21;34:24;44:22;
48:13;52:3;57:17,17
**mute (1)**
6:1
**muted (1)**
52:12
**myself (1)**
60:3

**N**

**name (4)**
3:22;15:6;44:21;
45:8
**named (2)**
14:9;18:20
**names (2)**
17:8;28:21
**narrative (1)**
22:13
**narratives (1)**
22:15
**necessary (1)**
16:12
**need (24)**
7:24;8:6,8,12;13:8;
18:9;21:7;24:14;27:5;
31:25;32:23;33:8,19;
34:8;40:20;52:4;54:19;
55:15;56:17;57:21;
60:5,5,8,13
**needed (1)**
38:20
**needs (2)**
45:21;54:7

**negotiating (1)**
58:10
**new (7)**
5:11;7:10;9:5;51:2,
4;53:3,6
**next (2)**
21:17;60:21
**nice (2)**
60:20;61:3
**night (1)**
3:25
**nobody (1)**
13:2
**nondocket (1)**
52:19
**none (2)**
12:14;39:24
**Northern (1)**
3:5
**notice (8)**
9:21;10:5;11:1,3;
24:16;37:1,2;45:9
**noticed (1)**
36:25
**notices (2)**
9:21;37:18
**notion (1)**
59:12
**number (22)**
5:5,16,22;6:6,16;7:4;
9:1,4;13:17;18:20;
21:4;22:3,18;28:5;
30:24;33:6,6;47:16;
49:24;53:13,17;57:11

**O**

**object (6)**
14:7;19:4;20:9;39:6;
45:19;46:20
**objected (1)**
45:1
**objecting (3)**
8:25;14:4;16:2
**objection (10)**
16:10;17:20;18:18;
21:1;37:15;38:17;
42:15;45:10;46:22;
55:24
**objections (13)**
16:2,3;20:16;21:2,4,
13;22:16,17;23:3;40:6;
47:16;48:25;58:12
**objector (1)**
46:19
**objectors (1)**
21:23
**objects (1)**
40:14
**obliged (1)**
23:17
**obviously (9)**
8:6;9:9;11:13;14:7,

22;17:17;18:2;20:4;
21:8
**occurred (1)**
35:20
**o'clock (2)**
24:21,22
**odd (1)**
18:10
**off (4)**
6:10;23:7;30:1;41:8
**offended (1)**
59:8
**offense (1)**
59:21
**offer (4)**
28:7;31:6,23;40:6
**offered (2)**
8:14;33:5
**offering (1)**
5:11
**offices (1)**
59:23
**old (1)**
51:5
**older (1)**
28:22
**once (2)**
11:15;30:14
**One (42)**
3:13;4:3;5:24;7:23;
8:24;10:13,15;12:21,
23,25;13:4;14:2;15:6,
10,12;16:11;20:14;
27:16,19;29:17,19,25;
32:3;35:8,8;37:17;
40:14;42:6;43:11;45:7;
46:8,10,12;47:23;
51:23;53:9,14;55:18;
57:19;59:1,7,18
**ones (2)**
51:5,5
**online (1)**
23:12
**only (10)**
5:20;6:25;11:6;
18:25;19:15;23:24;
28:20;29:5;35:21;51:1
**oOo- (1)**
3:2
**open (3)**
19:22;32:17;60:17
**openers (1)**
18:22
**opening (4)**
20:15;55:11,15,25
**opening-type (1)**
20:15
**open-minded (1)**
33:4
**opinion (1)**
33:14
**opponent (1)**
25:9

**opponents (1)**
24:7;51:25
**opportunity (6)**
36:17;40:16,18;
46:25;50:4;60:9
**oppose (1)**
56:13
**opposed (3)**
48:1;51:5;56:14
**opposing (4)**
5:14;38:22,23;54:11
**oral (6)**
21:6;32:17;46:18;
50:11,23;56:5
**order (15)**
3:3;10:5;38:22;
51:24;52:22;54:2;57:9,
13;58:2,3,9,9,17,20,22
**orders (5)**
5:6;7:6;41:10;57:17,
19
**organized (1)**
17:18
**Osmose (1)**
45:8
**others (3)**
23:22;37:12;43:8
**out (22)**
7:16;10:21;12:25;
20:17,18;22:4;24:4;
26:13;29:19;33:2;37:5;
47:9;48:21;49:9,10;
50:1,1,7;51:6,21;59:2,
16
**over (6)**
25:2;39:21,21;51:9;
60:6,12
**overnight (2)**
23:10,14
**overrule (1)**
16:3
**owe (2)**
45:24,24
**owed (1)**
45:23
**own (1)**
14:15

**P**

**page (2)**
17:5;23:13
**paid (1)**
44:23
**panel (7)**
4:5;18:14;20:11;
26:16;44:9;48:12,14
**panelists (3)**
3:19;4:1;44:9
**Parada (3)**
4:4;18:13;26:15
**parcel (1)**
20:18

Case: 19-30088    Doc# 7576    Filed: 05/26/20    Entered: 05/26/20 08:31:41    Page 68
of 72

**part (7)**
8:14;10:3,24;22:19;
41:11;45:18;46:5
**participant (2)**
18:14;20:11
**participants (2)**
44:9;48:12
**participate (3)**
10:4;13:18;39:18
**participating (11)**
6:11,25,25;9:18,22;
11:4,9,19;13:12;23:5;
61:2
**particular (2)**
12:24;13:2
**particularly (4)**
4:3,22;11:24;58:11
**parties (12)**
8:8;13:25;21:4;
42:14;45:15;46:8,14;
47:17,22,23;48:19;
57:10
**party (12)**
5:9;8:25;9:2;14:2,4;
15:6;19:22;25:17;
35:11;45:1,1,7
**Patricia (1)**
52:16
**Pause (4)**
3:7,15;6:4;44:12
**PDF (7)**
8:16,20,20,23;42:1,
12;43:20
**people (17)**
4:5;8:10;9:19;10:5,
7;12:7,19;13:6;15:18;
19:23;28:15,17,18;
37:8;43:4;45:18;56:13
**percent (1)**
24:12
**perfect (3)**
30:19;45:14;50:21
**perhaps (3)**
8:19;15:15;51:19
**period (1)**
30:16
**person (8)**
12:21,25;13:4;14:13;
22:5,6;28:20;33:5
**personal (5)**
5:24;18:16;21:3;
24:18;59:15
**personally (1)**
23:13
**persuade (5)**
38:12,13,15,15;
40:20
**persuades (1)**
38:17
**PG&E (5)**
3:12;5:21,21;6:15;
37:1
**phase (1)**

**56:9**
**phone (2)**
5:25;35:20
**phonetic (1)**
37:12
**photograph (1)**
8:18
**photographs (1)**
8:18
**pig (3)**
5:17;6:23;10:11
**pivoted (1)**
48:22
**place (2)**
19:24;59:6
**placed (1)**
21:14
**plan (26)**
11:4;21:13;23:2;
33:12;38:14,17,18,20;
39:9;40:18;44:24;45:6;
49:10,11,12,16,17;
50:14;51:12,15;52:4;
56:2,11,13,14;58:13
**planned (1)**
27:12
**planning (2)**
38:5;53:3
**plate (1)**
51:16
**playing (2)**
22:9;24:25
**pleading (1)**
22:19
**pleadings (3)**
42:5;48:24;49:2
**please (3)**
13:4;44:10;59:17
**plus (1)**
34:10
**PM (1)**
61:7
**point (12)**
10:25;11:6;23:21;
25:11,18;34:8;40:20;
46:12;49:10;51:10,18;
58:11
**pointed (1)**
49:9
**points (1)**
36:20
**pool (1)**
48:9
**position (2)**
4:7;39:9
**position's (1)**
46:7
**possible (2)**
15:22;26:9
**post (2)**
46:8;54:13
**pounds (1)**
55:17

**practice (1)**
7:24
**pre- (1)**
10:14
**pre-COVID (1)**
10:14
**Preliminarily (1)**
48:18
**preliminary (1)**
4:21
**prepare (1)**
5:10
**preparing (1)**
57:24
**present (10)**
7:14;18:23;35:4,13;
36:11,13,24;38:9;
43:14,15
**presentation (2)**
18:13;20:21
**presentations (1)**
4:23
**presented (1)**
9:8
**presiding (2)**
3:6;25:2
**presumably (2)**
7:15;37:14
**presume (2)**
21:10;54:23
**pre-trial (1)**
60:13
**pretty (1)**
22:14
**previous (1)**
55:12
**previously (1)**
55:11
**Prime (6)**
19:1,2,4,5;29:7;37:2
**print (2)**
23:11,12
**prior (2)**
45:3;57:7
**priority (1)**
51:21
**privileged (1)**
16:1
**pro (2)**
19:21;42:3
**probably (10)**
4:4;7:23;30:4;47:5;
49:22;51:23;52:3;
55:21;59:7;60:5
**problem (1)**
58:16
**procedural (1)**
37:18
**procedure (5)**
3:20;5:12;9:10;37:5;
56:18
**procedures (2)**
41:10;45:13

**proceed (1)**
12:23
**proceeding (5)**
14:12;37:13,14;
41:14;42:23
**proceedings (1)**
61:7
**process (6)**
10:3;36:15;37:3,4;
43:9;55:22
**produced (2)**
42:12;51:3
**producing (1)**
5:11
**productive (1)**
57:12
**professional (1)**
59:5
**proffered (1)**
43:7
**proof (2)**
28:8;31:6
**proponent (1)**
8:24
**proponents (1)**
33:15
**proposal (1)**
33:11
**proposed (17)**
21:22,22;49:16;57:8,
13,21,22,24;58:1,2,2,3,
4,9,17,18,20
**proposing (1)**
25:17
**protected (1)**
46:7
**protocol (4)**
20:22;32:4,7;53:13
**prove (8)**
16:11,12;21:8;34:11;
35:6;38:6,20;40:7
**provide (2)**
6:17;9:16
**provided (4)**
8:10;40:2;41:14,17
**publish (1)**
54:14
**pull (5)**
6:9;7:16,18
**Pullo (3)**
19:5;21:10;38:10
**pulls (1)**
10:21
**pure (2)**
49:2,8
**purely (1)**
48:1
**purposes (3)**
29:10;46:3;50:7
**put (14)**
9:21;15:19,20;17:19;
26:13;30:25;32:7;33:2;
41:14,24;45:17;47:21;

**57:19;58:6**
**puts (1)**
24:8
**putting (1)**
15:20

**Q**

**quantify (1)**
59:4
**quash (3)**
37:9;17;41:5
**quick (3)**
23:11;49:21;54:24
**quickly (2)**
48:22;57:14
**quite (3)**
47:1;48:21;60:8
**quiz (1)**
60:1

**R**

**raise (6)**
14:23;18:15;23:20;
25:18;26:21;43:24
**raised (3)**
25:19;26:14;49:24
**raising (1)**
46:23
**rather (2)**
19:20;23:13
**reached (1)**
34:12
**read (5)**
23:12;31:16,18;
33:25;51:16
**ready (3)**
50:13,23;55:19
**real (8)**
12:10;25:19;33:6;
34:9,9,9;37:8;50:22
**realize (2)**
46:1;59:10
**really (9)**
12:23;33:6,18;34:7,
9;43:13;45:24;48:21;
54:10
**reason (4)**
10:18;34:5;37:13;
59:24
**reasons (1)**
37:10
**rebuttal (1)**
15:24
**recall (2)**
29:12;49:22
**recalls (1)**
29:14
**received (1)**
57:10
**recently (1)**
59:18

Case: 19-30088    Doc# 7576    Filed 05/26/20    Entered: 05/26/20 08:31:41    Page 69
of 72

**recital (1)**
58:16
**recognize (3)**
17:8;24:10;33:17
**record (6)**
8:15;22:24;41:14;
53:16;57:5;58:15
**recross (1)**
24:24
**redirect (3)**
24:24;29:17,19
**refer (5)**
7:9,19;9:10;10:13;
20:23
**referring (2)**
6:8;9:18
**reflect (2)**
20:6,18
**reflecting (1)**
57:20
**regard (2)**
49:7;54:3
**regarding (1)**
45:4
**regular (1)**
25:4
**reject (1)**
45:15
**relate (1)**
47:18
**related (2)**
15:9;32:8
**relating (1)**
46:6
**relatively (1)**
24:16
**relevant (10)**
7:2;14:12;28:5;30:4,
5;32:15,22;38:19;39:4;
40:11
**rely (2)**
10:12;40:23
**remember (1)**
48:8
**reminded (1)**
57:20
**reorganization (1)**
38:11
**repeat (4)**
7:4;8:4;25:20;41:19
**repetitive (1)**
58:19
**rephrase (1)**
43:15
**report (1)**
23:13
**represent (1)**
44:25
**representing (1)**
8:25
**reproduced (1)**
7:7
**reproducing (1)**

5:7
**reputation (1)**
23:5
**request (1)**
18:20
**requests (1)**
20:4
**require (2)**
8:9,9
**resend (1)**
54:19
**reserve (3)**
16:2;18:9;25:9
**reserved (2)**
14:14;45:22
**resolved (2)**
22:18,18
**respect (3)**
31:6;45:9;46:13
**respond (3)**
18:21;32:23;37:6
**response (2)**
21:1;22:16
**responsibility (1)**
6:22
**rest (2)**
24:15;25:1
**restate (1)**
11:25
**reversed (1)**
58:22
**review (2)**
50:4;58:15
**Richardson (1)**
16:22
**Richardson's (1)**
16:19
**right (49)**
3:18,19;4:8,20;9:6,
23;11:7;15:4,5,8;
16:23,24,24;17:3,19;
20:4,5,8,24;21:17;
26:10,23;27:1;28:4,9;
29:8;32:8,18;34:17,25;
35:12;39:17,22,23;
41:3;44:18;45:16,19,
21;46:11;50:13,22;
51:21;54:25;55:23;
56:24;59:11,12;60:20
**rights (2)**
14:14;16:3
**ring (1)**
5:25
**ringing (1)**
5:23
**robe (1)**
59:7
**Roger (1)**
47:23
**role (1)**
22:9
**room (1)**
34:23

**RSA (2)**
5:6;6:6
**RSAs (1)**
7:6
**RSA's (1)**
34:13
**rule (1)**
33:23
**rules (3)**
11:7;24:10;39:18
**ruling (6)**
30:3;32:24;42:21;
50:3;51:13,22
**running (1)**
29:14

# S

**same (16)**
6:11;10:18,22;12:4,
4,8,10,11,11;13:5;17:5;
23:16;24:15;39:20;
50:19,21
**SAN (1)**
3:1
**satisfied (1)**
43:13
**saw (2)**
14:6;19:15
**saying (3)**
13:18;24:12;41:12
**Scarpulla (59)**
14:8,13;15:1,24;
17:11,19,24;26:14,15,
15,23;27:2,3,4,5,7,10,
14,16,18,23,25;28:7,9,
13,15,19,22,24;29:5,
13,24;30:7,9,12,17,19,
23;31:5,9,11,13,15,17,
20,24;32:1,16,23;33:7,
21,24;34:4,14,17,20,
22,24;38:16
**schedule (9)**
13:16;24:8;25:13,15;
45:2,14;46:6;51:19;
56:5
**scheduled (1)**
45:10
**scheduling (5)**
23:21;46:25;50:6;
52:22;54:2
**scope (3)**
29:11,20;30:5
**screen (12)**
3:19;4:6;7:21,22,25;
8:13;10:10;15:11;
19:21;25:5;27:6;43:8
**se (2)**
19:22;42:4
**second (9)**
5:24;15:10,12;32:4;
34:13;49:1;53:9;55:8,
10

**Secondly (1)**
50:4
**sections (1)**
36:1
**seeing (1)**
17:9
**seek (1)**
44:25
**seeking (2)**
45:6,12
**seemed (1)**
19:1
**seems (3)**
28:4;34:2;49:13
**segments (1)**
25:8
**send (14)**
4:4;6:22;9:16;10:8;
11:2,10;23:7,10,17;
42:6;52:21;53:18;
54:14,15
**sense (5)**
11:24;12:23;17:7;
24:9;52:2
**sent (11)**
6:19,19;7:17;8:23;
10:14,15;11:14;19:18;
20:2;37:1;42:13
**separate (4)**
42:22;43:20;45:14;
50:2
**sequence (1)**
21:19
**sequential (2)**
6:15;9:1
**sequentially (1)**
50:9
**seriously (1)**
59:21
**served (1)**
37:9
**Services (1)**
45:8
**session (2)**
3:5;51:19
**several (1)**
47:22
**Share (7)**
7:11,12,20;10:21;
12:5;25:6,13
**S-H-A-R-E (1)**
7:12
**sharing (1)**
18:4
**shelter (1)**
59:6
**short (3)**
7:25;20:11;24:16
**shortly (1)**
18:21
**side (3)**
15:14;22:6;48:21
**sign (1)**

58:14
**signed (1)**
58:22
**silver (1)**
51:11
**simple (4)**
8:1;39:12,12;49:20
**simplify (1)**
18:13
**simply (3)**
5:15;8:9;16:11
**single (1)**
37:17
**singled (1)**
50:1
**Singleton (1)**
50:20
**sitting (2)**
25:4;59:12
**situation (3)**
18:11;19:22,25
**slightly (2)**
13:22;26:20
**smoothly (1)**
48:23
**So- (1)**
24:20
**solvent (1)**
45:20
**somebody (4)**
11:2;34:8;46:21;
50:20
**someone (7)**
7:1;11:8;15:23;
19:18;23:9;24:17;
33:10
**somewhere (4)**
7:15;40:5,10;43:17
**Sonny (1)**
7:11
**soon (1)**
50:3
**sorry (8)**
27:21,25;28:1,13;
31:2;35:17;52:14;57:6
**sort (4)**
13:4;20:14;41:12;
47:1
**speak (3)**
3:22;13:19;14:14
**speaking (3)**
11:1;43:3;45:9
**specifically (1)**
35:24
**specifics (1)**
10:4
**spent (1)**
59:3
**spoken (1)**
43:4
**sponsored (1)**
43:7
**sponsoring (1)**

Case: 19-30088    Doc# 7576    Filed: 05/26/20    Entered: 05/26/20 08:31:41    Page 70
of 72

9:3
**spouse (1)**
  59:11
**spreadsheet (1)**
  8:19
**staff (3)**
  23:9;54:13;61:1
**stand (1)**
  51:25
**staring (1)**
  25:5
**start (11)**
  4:24;13:8;20:17;
  21:15,17;24:13;38:23;
  44:18;49:18;52:3;
  60:16
**starts (2)**
  13:1,1
**state (2)**
  3:21;44:21
**statement (8)**
  4:10;6:13;20:15;
  23:4;33:25;34:12;40:9;
  41:2
**statements (2)**
  55:11,15
**status (1)**
  44:24
**stay-at-home (1)**
  24:10
**stick (7)**
  39:2,18;40:7;41:20;
  42:11;50:17,25
**still (7)**
  23:25;25:9;28:21;
  32:17;39:17;46:15;
  52:12
**stipulation (1)**
  50:1
**stock (1)**
  33:13
**stop (1)**
  6:3
**store (1)**
  10:18
**stored (1)**
  7:15
**straightened (1)**
  47:9
**stretch (1)**
  59:13
**strikes (1)**
  49:13
**struggling (1)**
  19:25
**stuff (4)**
  16:3;57:17,18;60:9
**Subject (4)**
  16:2;32:16;40:6;
  57:15
**submission (1)**
  52:18
**submit (5)**

11:3;19:23;20:4;
  41:13;43:10
**submitted (5)**
  15:16;16:9,18;19:6;
  22:24
**submitting (1)**
  46:14
**subpoena (1)**
  41:5
**subpoenaed (1)**
  41:5
**subpoenas (2)**
  37:9,18
**substantiate (1)**
  41:15
**substantive (1)**
  38:11
**success (1)**
  9:24
**such-and- (1)**
  30:15
**such-and-such (3)**
  5:22;6:6;30:16
**suffice (1)**
  58:2
**suffices (1)**
  58:14
**suggest (2)**
  21:19,20
**suggested (1)**
  60:4
**suggesting (1)**
  13:2
**suggestion (2)**
  23:24;60:10
**summaries (1)**
  60:15
**summarizing (1)**
  22:16
**summary (3)**
  6:14;20:15;31:18
**support (3)**
  16:10;56:13,16
**supporting (1)**
  38:23
**supports (2)**
  39:8;56:11
**Suppose (1)**
  6:12;7:13;50:12
**supposed (3)**
  10:5;18:1;52:19
**sure (19)**
  4:1;5:18;6:23;10:9,
  17;13:11,24,25;17:4;
  24:12;31:7;36:10;
  41:25;49:22;53:2,9;
  55:20;58:14;60:15
**suspect (1)**
  58:19
**system (1)**
  7:16

## T

**tabled (1)**
  14:16
**talk (7)**
  12:15;24:4,14;31:9;
  37:11;41:7;48:25
**talked (2)**
  10:2;17:1
**talking (5)**
  7:6;11:8;17:17;28:3;
  43:18
**TCC (6)**
  8:24;15:14;16:1;
  49:8,12;51:4
**TCC's (2)**
  26:7;51:4
**Ted (2)**
  28:9,11
**Telephone (1)**
  5:23
**telling (2)**
  34:2;41:3
**ten (2)**
  8:22,22
**tend (1)**
  22:8
**tendency (1)**
  57:18
**tentative (1)**
  33:3
**term (1)**
  9:1
**terms (1)**
  42:9
**terrific (1)**
  48:19
**testified (4)**
  39:1;40:5,17;41:21
**testify (7)**
  24:21;29:15;35:8;
  36:24;37:14;39:24;
  42:18
**testifying (2)**
  38:8;43:7
**testimonial (1)**
  56:8
**testimony (31)**
  15:16;16:7;17:23;
  24:23;29:8,23;31:23;
  32:6,15,21;36:19;
  37:12;40:6,15;41:17,
  22;42:18,18,25;43:11,
  21;46:14,15;50:5,11,
  12;54:6,8,9;56:8,10
**that'll (1)**
  8:15
**the- (1)**
  12:23
**therefore (3)**
  22:21;29:16;43:17
**thinking (5)**

14:15;21:3;24:3;
  33:3,22
**third-party (1)**
  8:2
**thirty-page (1)**
  23:11
**Thomas (1)**
  52:16
**though (1)**
  60:6
**thought (2)**
  12:17;33:9
**three (8)**
  12:2;14:2;19:20;
  21:11;23:20;33:13;
  47:6;57:25
**throw (1)**
  59:2
**Thursday (1)**
  24:21
**tight (2)**
  13:16;24:8
**till (1)**
  24:21
**timeline (1)**
  55:6
**times (4)**
  12:4,16;39:16;57:25
**timing (4)**
  21:19;24:19;32:15;
  34:10
**today (42)**
  6:18;9:19;10:5;
  13:13,14,22;14:22;
  15:3;17:6;18:1;20:3,
  24;21:2,20,25;22:1,20,
  21;23:15;24:4,5,6;
  27:17;33:23;34:23;
  37:1;39:11;43:2,16;
  44:19,24;46:13;50:6;
  53:20;54:8,10,12,13;
  56:3,23;57:9;60:10
**together (1)**
  29:20
**told (4)**
  7:18;20:21;32:24,25
**Tom (1)**
  44:3
**tonight (1)**
  33:1
**took (1)**
  59:20
**topic (1)**
  19:3
**Tosdal (33)**
  44:4,17;52:11,14,15,
  16,16;53:2,4,7,11,22,
  24;54:1,4,16,19,22,25;
  55:2,5,8,10,16,18,20,
  23;56:1,15,18,21;
  60:25;61:6
**total (1)**
  59:3

**touch (1)**
  37:16
**touched (1)**
  23:21
**track (1)**
  56:12
**traditional (2)**
  22:11;25:4
**transcript (4)**
  3:23;41:22,23;42:7
**transcripts (2)**
  5:6;7:6
**treat (1)**
  47:20
**treated (1)**
  47:19
**trial (16)**
  4:23;12:7,10;14:1;
  21:15;24:13;25:2,4,7;
  30:12;37:8,9;49:7;
  59:3,6,17
**tried (6)**
  12:25;21:6;24:4;
  30:13;45:21;46:4
**true (2)**
  23:16;46:8
**trustee (1)**
  33:10
**try (5)**
  24:22;30:21;41:19;
  47:4;51:9
**trying (6)**
  17:4;41:7,9,10;46:5;
  57:11
**Tsekerides (65)**
  4:25;5:17,18;6:5,23;
  7:12;9:13,14;10:1,24;
  11:6,11;12:9,13;14:3,6,
  19;15:4,8,18;16:13,14;
  18:19,24;19:11,13;
  20:8;13:21;21:22,2;
  23:23,24;24:19;26:5,6,
  8,12;27:19,22,24;28:1,
  12;30:1;31:1,3,5;
  32:13,21;34:1;35:21;
  37:6,7;39:15;40:13,13;
  42:14,19;50:14;52:24;
  53:2,8;60:4,19,24;61:4
**Tsekerides' (1)**
  43:1
**T-shirt (1)**
  59:20
**Tuesday (7)**
  24:2,9,11,14;45:4;
  51:20;60:14
**turn (2)**
  37:19;50:11
**twenty (3)**
  12:20;50:15,16
**two (16)**
  5:19,20;10:10;12:11,
  21;14:2;16:9,17;22:5;
  33:12,18;46:8;47:6;

Case: 19-30088    Doc# 7576    Filed: 05/26/20    Entered: 05/26/20 08:31:41    Page 71
of 72

50:15;52:17;57:25
**two-line (1)**
58:8
**types (1)**
47:24
**typical (1)**
8:17

## U

**ultimate (1)**
51:15
**under (4)**
32:15;33:11;50:24;
59:23
**understood (2)**
37:3;43:22
**unique (1)**
42:23
**universe (1)**
12:7
**unless (6)**
8:17;15:19;18:10;
32:2;39:22;41:1
**unlikely (2)**
18:6,10
**unmute (3)**
3:18;52:11,13
**unresolved (1)**
29:5
**unusual (1)**
15:19
**up (15)**
6:9;7:16,18;10:19,
21;13:5;16:12,13;32:6;
48:9;50:8,24;51:3;
58:13;59:13
**upon (1)**
25:5
**use (16)**
5:9,17;6:7;7:11,12;
10:9,9,11;11:22;12:19;
28:21;38:3;40:1;53:14,
15;54:5
**used (2)**
33:15;37:19
**using (1)**
40:4
**Utility (1)**
45:8

## V

**value (1)**
33:14
**various (1)**
57:10
**Veatch (1)**
15:8
**vendors (1)**
8:2
**versa (1)**
58:8

**Vesey (1)**
37:12
**via (1)**
15:16
**vice (1)**
58:8
**video (1)**
10:15
**view (3)**
20:5;23:21;33:4
**virtual (1)**
59:20
**vote (1)**
21:11
**vote- (1)**
38:10

## W

**wait (4)**
27:1;28:23,25;35:16
**waiting (2)**
3:16;26:23
**waive (1)**
18:17
**walk (1)**
59:11
**wants (10)**
10:19;17:24;18:2;
21:23,25;25:17;29:16,
17;43:24;54:6
**waste (2)**
34:15;40:24
**way (12)**
10:15;12:23;20:17,
20;23:18;24:12;25:16;
37:21;42:23;43:11;
46:17;50:8
**ways (1)**
13:11
**wear (1)**
59:7
**Wednesday (2)**
24:13;60:17
**week (3)**
49:4,23;51:14
**weekend (5)**
33:1;60:6,12,20;61:3
**weigh (1)**
29:2
**weird (1)**
15:12
**welcome (1)**
60:2
**well- (1)**
38:21
**Wells (2)**
35:22;37:10
**weren't (1)**
22:2
**what's (5)**
23:8;24:8;31:9,13;
60:21

**Whereupon (1)**
61:7
**wherever (1)**
52:19
**whole (1)**
48:19
**whomever (3)**
20:13;25:6;29:16
**Williams (4)**
16:10,13,25;17:9
**willing (2)**
46:15;58:9
**Winthrop (1)**
49:24
**wish (9)**
25:24;27:21;28:1,2;
35:2;39:12;41:24;47:3;
56:6
**wished (1)**
13:23
**wishes (3)**
9:9;14:23;56:22
**without (1)**
21:7;38:7;59:13
**witness (54)**
6:9,14;7:1,20,25;
8:12;9:7,8;10:19,20;
12:2,4,6,11;13:1;14:4;
15:2,5,21,22,24;16:5,
23;17:12,16,22,24,25;
18:2;19:2,6,25:17;
26:7;27:9,13;29:6,10,
12,15,18,19;31:7,9;
35:23;36:16;37:16;
38:4,5,25;39:20;43:5,
10,17;46:14
**witnesses (77)**
4:10,23;10:13;11:15,
18;13:13,15,23,25;
14:2,16,25;15:1,14,15,
18,25;17:5,7,14,20,23;
18:21,23;19:4,10;20:3,
16;21:5,7,10,11,16,18;
22:11,13;24:15,20;
25:7,12;27:11;30:10,
14,25;35:2,6,7,8,12,13,
19;36:14,18,19,25;
38:10;39:12,13,20,23,
24;40:5,17;41:2,16;
43:3,6,9;46:6,9;48:7;
50:7;51:22,23,25;
60:14,16
**words (3)**
35:5;43:3,4
**work (3)**
5:2;30:13;52:2
**workaround (1)**
19:24
**working (3)**
48:10,21;59:22
**works (1)**
24:19
**world (3)**

10:15;45:14;50:21
**worried (2)**
25:14;30:4
**worry (2)**
23:15;29:20
**worrying (1)**
46:11
**writing (2)**
29:15;40:9
**written (8)**
38:24;40:15;41:1;
42:18,25;43:3,16;50:3
**wrote (1)**
14:11

## Y

**year (1)**
51:9
**years (1)**
28:16
**yesterday (3)**
14:10;29:9;35:21

## Z

**Zoom (5)**
7:10,11;25:18;48:20;
60:13

## 1

**1 (3)**
5:21;6:6;17:16
**10 (1)**
34:9
**100 (1)**
24:12
**11 (1)**
36:4
**1129 (4)**
35:24,25;37:11,17
**12:58 (1)**
61:7
**13.5 (6)**
28:4;31:20;33:10,16,
19;34:8
**154 (1)**
48:24
**18th (1)**
52:25

## 2

**2 (3)**
6:12,15;24:21
**200 (3)**
46:2,2;47:5
**200-dollar (1)**
45:25
**2020 (1)**
3:1
**22 (1)**

3:1
**22nd (2)**
53:13,14

## 3

**300 (1)**
45:24
**300-dollar (1)**
45:25

## 5

**500 (1)**
45:23
**500- (1)**
23:12

## 6

**6.75 (2)**
33:12,18

## 9

**9 (1)**
24:21

Case: 19-30088    Doc# 7576    Filed: 05/26/20    Entered: 05/26/20 08:31:41    Page 72
of 72