Entered on Docket
May 26, 2020
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed and Filed: May 26, 2020

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and<br>    Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered |

**MEMORANDUM ON OBJECTION OF ADVENTIST HEALTH, AT&T, PARADISE ENTITIES AND COMCAST TO TRUST DOCUMENTS**

I.    INTRODUCTION

    On May 15, 2020, the court held a hearing on the objection of Adventist Health, AT&T, Paradise Entities (as defined in the objection) and Comcast (collectively, Objectors"), to various provisions in the Fire Victim Trust Agreement ("Trust

-1-

Agreement") and the proposed Fire Victim Claims Resolution Procedures ("CRP", and collectively, the "Trust Documents"). Objectors and the Official Committee of Tort Claimants ("TCC") entered into a briefing stipulation on May 4, 2020 (dkt. no. 7060). That stipulation limited the arguments of the parties to the content of the Trust Documents, with all other objections to the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020 (the "Plan") reserved.

Under normal circumstances the court would take the time to explain in detail its reasoning behind the decisions summarized below. The exigencies of the current situation, however, and the press of business to prepare for and conduct the forthcoming confirmation trial, make that nearly impossible. Further, the Debtors, the TCC and the Objectors need to know the court's decisions promptly. Thus, this abbreviated ruling will have to suffice. If time permits, the court may follow up with a reasoned memorandum explaining its determinations in detail.

For the reasons summarized below, the court will:

1) sustain the objection, in part, based on the lack of the possibility of any judicial review of a final decision of the Trustee regarding any claim of a party that objected to confirmation of the Plan;

(2) overrule the objections based upon the treatment under the CRP of amounts that have been or are likely to be recovered from insurers or other subrogation parties;

(3) deny the contention that the Plan and the Trust Documents violate Bankruptcy Code section 1123(a)(4)[1].

(4) sustain the objection, in part, based upon the need for court approval of any material change in the Trust Documents;

(5) defer ruling on the objection based upon alleged adverse interests that are or may be held by the Trustee or anyone else under his direction;

(6) defer ruling on the objection based upon the application of setoff or recoupment under the Trust Documents;

(7) sustain the objection based on the right of certain parties, including Objectors, to recover attorneys fees under the principle of inverse condemnation;

(8) sustain the objection regarding multiple releases; and

(9) overrule the objection that the CRP is lacking standards for adjudication of disputed claims.

II. DISCUSSION

    1. Judicial Review at Some Point in the Claims Determination Process

The TCC conflates the *treatment* of claims, or a class of claims, with the *determination* of the amount of any particular claim. Section 1122(a) deals with placement of claims in a particular class that are "substantially similar" to others of the same class. Here the similarity of the wildfire claims is obvious: the fires affected thousands of individuals, countless corporations, partnerships and other entities, large or small,

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-3-

public or private.  These similarities suggest a rational class of wildfire survivors consisting of those claimants regardless of whether their claims are presently liquidated or unliquidated.

Section 1124 defines impairment to encompass a "class of claims.  Here the wildfire claims are unquestionably impaired. Section 1123(a)(3) specifies the treatment of an impaired class. There is nothing in section 1124 about the determination of any particular claim.  The determination of any particular claim is governed by Section 502(b).

*Dow Corning*, relied on by the TCC, stands for the proposition that class members are subject to the same process for claim satisfaction.  It does not extend to determination of any particular claim.

The case most in TCC's favor is *Takata*, where certain claims against the Debtor are to be resolved in a similar multi-tier process as in the present case, and not subject to judicial review, even though the same procedure left open the right of certain claimants to proceed judicially against non-debtors after exhausting the claims review process.  In *Takata*, nobody objected to these procedures, and therefore they waived their rights.  The difference here is that Objectors have objected prior to confirmation. Moreover, the Takata procedures appear to be limited to claims of individuals for personal injury and wrongful death claims.  There are many such claims in this case, but none asserted by Objectors.  The claims of the Objectors would apparently not be governed by the Takata procedures, so that case is hardly precedent to take the leap the TCC urges.

-4-

Case: 19-30088    Doc# 7597    Filed: 05/26/20    Entered: 05/26/20 20:13:13    Page 4 of 12

The TCC has also cited mass tort cases that used streamlined claims resolution procedures. The court notes that none of the cases submitted appear to include language as strict or binding as the CRP. In addition, most of the cases cited do not restrict claimants' ability to file suit if their claims are rejected. For example, both *In re Plant Insulation Co.* and *In re G-I Holdings, Inc.* offer claimants a straightforward method of proceeding to arbitration and then to the tort litigation system if they are dissatisfied with the trust's decision. *See In re Plant Insulation Co.*, No. 09-31347 (Bankr. N.D. Cal. 2014); *In re G-I Holdings, Inc.*, No. 01-30135 (Bankr. D. N.J. 2009). These cases do not provide much support for the TCC's position and actually appear to counter it.

The Objectors did not waive their entitlement to a judicial claim determination under Section 502(b), no matter how far or long that might occur after completion of the CRP process. *In re Elder* is slightly on point. An out-of-court claims resolution procedure had been established whereby claimants could settle their claims with a plan administrator. If that did not work out, they could come to the court for a section 502 determination. 325 B.R. 292, 300 (N.D. Cal. 2005). The court stated:

> ". . . there is nothing inherently inappropriate about the Plan Administrator being given the ability to compromise and settle claims objections, provided that those who are unhappy with the results are still entitled to a hearing in the bankruptcy court. Adding the procedural step of possible settlement through the Plan Administrator does not violate an objecting party's right to a final determination on the correct

-5-

> amount of a claim by the bankruptcy court as provided by section 502(b) of the code."

The is nothing inherently inappropriate about the CRP. It simply ends the process without an option for dissatisfied Objectors.

Objectors are entitled to their guaranteed right to a judicial determination of their specific claims if they do not agree with the Trustee. Whether that should be the bankruptcy court or another court is for another day.

The court rejects the speculation that millions if not billions of dollars of trust assets will be depleted if Objectors are told they may return to court. The highly detailed and sophisticated CRP, coupled with the pressing need and desire for thousands upon thousands of wildfire survivors to be compensated at last, suggest that the recourse to judicial review will likely be the exception rather than the rule. It is easy to imagine the vigorous analysis any disputed claim will be given by the Claims Administrator, the Trustee, the Neutrals, and the multi-tiered process, would discourage all but the most determined and aggressive litigant who, years later, might resort to the judicial process.[2] And even after that, when and if the successful litigant's claim has been *determined*, the *treatment* would still be within capped trust administered by the Trustee and subject to all of the Trust Documents.

---

[2] While the dollar amounts sought by Objectors is large, the number of those Objectors is quite small.

Even if that were the case, that does not justify closing the doors to the court to parties who timely objected to confirmation of the Plan.

The order confirming the Plan should include specific language assuring this preserved right of Objectors to seek judicial de novo review after they have exhausted their remedies under the CRP. The court expects counsel for the Debtors, the TCC, the Trustee and the Objectors to make an effort to agree on appropriate language.

2. Principles of Subrogation vs. the Collateral Source Rule

*Ivanhoe Bldg. & Loan Assn. of Newark, N.J., v. Orr*, 295 US 243 (1935) and *In re Del Biaggio*, 496 B.R. 600 (Bankr. N.D. Cal 2012) both involved multiple parties who were liable to a common claimant. Both conclude that payment by one liable party (e.g., wrongdoer, guarantor) does not reduce the full liability of the other, at least until the claimant has been paid in full. In contrast, *Garbell* and other cases relied on by Objectors involve one wrongdoer and another party in contract with the claimant. The insurer or other party invoking a subrogation claim after paying is neither a wrongdoer nor a party liable for the conduct of the wrongdoer under any theory. Thus, the principle of subrogation is distinguishable, and controls the outcome here.

The collateral source rule does not address an insurer's right to recover from a tortfeasor in a subrogation action. It merely addresses the insured's rights to recover from the tortfeasor even though the insured has been paid in part by the insurer. See the quote from *Ferraro*: "When the "insurance carrier becomes subrogated to the claim of an insured against a

-7-

third party tortfeasor, the payment of insurance proceeds is no longer a 'collateral source.' -- because the insurer is independent of the tortfeasor, it is not a 'collateral source.'" The collateral source rule does not apply here. The Trustee can insist upon credits based upon recoveries by the wildfire survivors from their insurers.

Objectors complain about how the Trustee will insist on offsets to their claims based on subrogation entitlements not yet paid or realized. The court is satisfied that the process for assessing such future offsets is reasonable, proper and necessarily part of the role and responsibility of the Trustee under the Trust Documents. The application of setoff principles easily comes within the broad array of considerations that encompass *treatment* of the class, far more than would be included in the *determination* of a particular claim.

The Objectors are bound by the vote of the class that approves that treatment. This objection is overruled.

3. Section 1123(a)(4) Does Not Permit Disparate Treatment

The Objectors frame the issue discussed in section 2 (subrogation and collateral source) in bankruptcy terms, suggesting that the Plan and Trust Documents do not treat them the same as others in the class. The short answer here is exactly as the TCC argues: equality of treatment is not the same as equality of outcome. Their argument is rejected for that simple reason, as is their complaint that somehow parties with insurance do not do as well as those without insurance. The short answer, once again, is ask someone who lost a home but did not have an insurance!

-8-

As stated in section 1, all wildfire survivors must be treated alike. The bankruptcy code does not prohibit placing liquidated and unliquidated claims in the same class. Here the fire victims are in a class whether their claims were liquidated by prepetition judgements, presently calculated to the penny, completely unliquidated at present, or any other combination of these alternatives. The classification is rational and for the reasons stated above, Objectors will have an opportunity to have their claims *determined* either through the CRP or the judicial process. Part of the class treatment, however, comes from the estimation process that has or will conclude and the determination that $13.5 billion is the starting point for channeling the Trust that treats with all of the claimants as its beneficiaries. That analysis does not turn on whether a member of the class had insurance.

This objection is overruled.

4. Amendments to the Trust Documents

The Trust Agreement provides in paragraph 8.3 that it, the CRP, or any other annexed document shall not be modified or amended in any way that could jeopardize, impair, or modify "the applicability of section 105 of the bankruptcy code to the plan and the Confirmation Order." The court believes it is appropriate to include, specifically in the confirmation order, language to the effect that none of those documents may be modified in any material way that is inconsistent with the Plan or the bankruptcy code without approval of the bankruptcy court. The court will leave to counsel for the TCC, the Trustee, and

-9-

the Objectors to meet and confer to agree upon appropriate language.

### 5. The Trustee May Not Hold Any Adverse Interest

It should be obvious that the Trustee and all others working with him to implement the Trust Agreement, the CRP and all related documents, may not hold any financial interest or act as attorney, agent or professional for the fire victim claimants. The court does not believe that the TCC or the Trustee seriously contend to the contrary. This appears to be nothing more than a drafting anomaly. The court defers any discussion at this point until counsel for the TCC, the Trustee and the Objectors can meet and confer to arrive at mutually acceptable language to implement that notion.

### 6. Clarification re Setoff and Recoupment Rights

The Objectors argue that they should not be subject to any ambiguity regarding whether the Debtors or the Trustee may assert setoff and recoupment rights. The TCC responds by pointing out that the Trust Agreement is clear. *See* dkt. no. 7159 at 27:18-27.

After careful reading, the court agrees with the TCC. That said, this complex reorganization needs as little confusion as possible. Maybe this is just another drafting anomaly, but the court expects counsel for the TCC, the Trustee and the Objectors to meet and confer and attempt to agree upon appropriate clarifying language.

### 7. Reimbursement of Attorney's Fees

For reasons unknown, the TCC has mixed the question of attorneys' liens (not challenged by Objectors) with their

-10-

entitlement to recover attorney's fees as a matter of law under the California inverse condemnation doctrine. *See* dkt. no. 7169 at 28:19 – 29:4. The TCC's dismissal of this concern by pointing out that there has not been a final determination, while perhaps literally true, is not dispositive. This court has ruled on the question and the Plan and Trust Documents must be consistent with that result, not some wishful thinking that the law will be changed.

This objection is sustained. The order confirming the Plan should reflect that determination.

8. Multiple Releases

The court understands the practical concerns of the TCC and the Trustee about the administrative inconvenience of asking wildfire survivors to sign multiple releases. Still, the notion of a release operating to cover future events flies in the face of careful drafting and invites future confusion. This court, or some other court, does not need to be confronted years from now with a question about what was meant by a release of future conduct. The simple solution is to accept the Objectors' suggestion to add to the Claimant Release "from the beginning of time through the execution date of this release." *See* dkt. no. 7072 at 24:15.

This objection is sustained.

9. The Trust Documents Establish Adequate Standards for Adjudication of Claims

The Court is satisfied that the Trust Documents have been carefully conceived, drafted and prepared for implementation and that, consistent with due process, adequate and appropriate

-11-

Case: 19-30088    Doc# 7597    Filed: 05/26/20    Entered: 05/26/20 20:13:13    Page 11 of 12

safeguards exist for *determination* of claims. The TCC's response, and more importantly, the court's review of the CRP, is reassuring that a fair process is in place. There is no concern that the Trustee, the Claims Administrator and the Neutrals will not carry out their assigned roles, proving the confidence the voters who approved this process have in them. In the unlikely event that such confidence ultimately is misplaced, an aggrieved Objector has the remedies the court addressed in Section 1.

This objection is overruled.

**END OF MEMORANDUM**