1        UNITED STATES BANKRUPTCY COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3                    -oOo-

4    In Re:                    ) Case No. 19-30088
                               ) Chapter 11
5    PG&E CORPORATION AND PACIFIC   )
     GAS AND ELECTRIC COMPANY,      ) San Francisco, California
6                               ) Wednesday, May 27, 2020
                    Debtor.    ) 10:00 AM
7    _____ )
                                   CONFIRMATION HEARING
8
                                   APPLICATION OF THE OFFICIAL
9                                  COMMITTEE OF TORT CLAIMANTS
                                   PURSUANT TO 11 U.S.C. SECTION
10                                 1103 AND FED. R. BANKR. P.
                                   2014 AND 5002 TO RETAIN AND
11                                 EMPLOY MACCONAGHY & BARNIER,
                                   PLC AS SPECIAL COUNSEL
12                                 EFFECTIVE AS OF APRIL 23,
                                   2020 [6969]
13
                                   DEBTORS' FIRST OMNIBUS REPORT
14                                 AND OBJECTION TO CLAIMS
                                   ASSERTED PURSUANT TO 11
15                                 U.S.C. SECTION 503(B)(9)
                                   SOLELY WITH RESPECT TO
16                                 CERTAIN CONTINUED CLAIM
                                   [2896] (MARSH LANDING, LLC)
17
                        TRANSCRIPT OF PROCEEDINGS
18              BEFORE THE HONORABLE DENNIS MONTALI
                   UNITED STATES BANKRUPTCY JUDGE
19

20   APPEARANCES (Via Zoom):
     For the Debtor:          STEPHEN KAROTKIN, ESQ.
21                            RICHARD W. SLACK, ESQ.
                              THEODORE E. TSEKERIDES, ESQ.
22                            Weil, Gotshal & Manges LLP
                              767 Fifth Avenue
23                            New York, NY 10153
                              (212)310-8000
24

25

escribers

(973)406-2250 | operations@escribers.net | www.escribers.net

```
1   For Official Committee of    ROBERT A. JULIAN, ESQ.
    Tort Claimants:              Baker and Hostetler LLP
2                                600 Montgomery Street
                                 Suite 3100
3                                San Francisco, CA 94111
                                 (415)659-2600
4
    For  GER Hospitality, LLC:   FRANCIS O. SCARPULLA, ESQ.
5                                Law Offices of Francis O.
                                 Scarpulla
6                                456 Montgomery Street
                                 17th Floor
7                                San Francisco, CA 94104
                                 (415)788-7210
8
    For William B. Abrams,       WILLIAM B. ABRAMS
9   Individual and Tubbs Fire    1519 Branch Owl Place
    Claimant:                    Santa Rosa, CA 95409
10                               (707)397-5727

11  Also Present:                Mary Wallace
                                 Individual Fire Claimant
12

13

14

15

16

17
    Court Recorder:              LORENA PARADA/ANKEY THOMAS
18                               United States Bankruptcy
                                 Court
19                               450 Golden Gate Ave.
                                 San Francisco, CA 94102
20

21  Transcriber:                 COLIN RICHILANO
                                 eScribers, LLC
22                               7227 N. 16th Street
                                 Suite #207
23                               Phoenix, AZ 85020
                                 (973)406-2250
24
    Proceedings recorded by electronic sound recording;
25  transcript provided by transcription service.
```

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1

2                                    -oOo-

3          (Call to order of the Court.)

4          THE COURT REPORTER:  This is the Bankruptcy Court for

5    the Northern District of California.  Court is now in session,

6    the Hon. Dennis Montali presiding, matter of PG&E Corporation.

7              I will bring in counsel now, Your Honor.

8          THE COURT:  All right.  Good morning.  While counsel

9    are coming in to the panel, I want to welcome you all back to

10   our first day of trial.  I had departed from my casual wardrobe

11   to do like we're really in court.

12             So Mr. Tsekerides, if you can see me, I'm in my robe.

13             And I want to apologize to everyone for the confusion

14   yesterday.  We followed the old rule of if something is going

15   well, don't fix it.  Well, we fixed it and didn't do it well,

16   but I think we're back in business and I know someone will

17   speak up if the audio or the video doesn't do its thing.  But

18   I'm hoping it all will work correctly.  I won't tell you the

19   secret of our success.

20             MR. TSEKERIDES:  Well, I appreciate you wore the robe,

21   Your Honor.  I didn't put a tie on today, but Mr. Slack is

22   going to do the first witness for the redirect, but I'll have

23   one on tomorrow.

24             THE COURT:  Okay.  Maybe I won't have my robe on

25   tomorrow.  You don't know.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      Let me say something else again.  I presume everyone

2  who's waiting to be brought into the courtroom still knows --

3  or to the panel -- can hear the audio.

4      So in response, Mr. Tsekerides, to the questions

5  yesterday about how I want to conduct the argument phase of the

6  trial, I will -- I've prepared and will issue later this

7  afternoon my tentative thinking on that subject for how I'd

8  like to divide up.  Well, I'm actually going to ask for

9  responses from the debtors and the proponents and participants

10  who want to participate and be heard.  I don't want to take

11  time now to do that, but that's something that's on the front

12  burner, and you'll see something later today.

13      And Ms. Parada, we need to bring Ms. Pullo into the

14  courtroom, also.  I didn't put her on the list originally.

15      MR. TSEKERIDES:  And you may not have on the list,

16  Your Honor, Mr. Slack.  I think he should be brought in.

17      THE COURT:  Yes.  I guess didn't realize that he was

18  going to take that, so --

19      MR. TSEKERIDES:  We're splitting them, yeah.

20      THE COURT:  -- Ms. Parada, we need Mr. Slack and Ms.

21  Pullo and Ms. -- yeah, Ms. Wallace, also.

22      Now, for the three parties who are going to

23  cross-examine, Mr. Abrams, Mr. Scarpulla, and Ms. Wallace, I'm

24  leaving you in the panel here because at least two of you

25  indicated very brief times to argue or to present questions,

PG&E Corporation and Pacific Gas and Electric Company

1    and so I will have you stay on the panel, that is on the

2    screen, until you've finished your segment.

3          Ms. Parada, I see you have Ms. Wallace on the screen.

4    Do I understand she does not want to use the video?

5          THE COURT REPORTER:  I don't know, Your Honor.

6          Ms. Wallace, would you turn on your video if you're

7    able to?

8          THE COURT:  Ms. Wallace, can you unmute your

9    microphone so you can speak?  All right.

10          Are you --

11          MS. WALLACE:  I don't have video capability.

12          THE COURT:  Oh, okay.  Well, aren't you -- all right.

13    Well, that's fine.  You don't have to use video.

14          All right.  I see Ms. Pullo is in the courtroom.

15          Would you unmute your microphone, please?  And I'm not

16    going to ask you to stand.

17          But I will ask the courtroom deputy to administer the

18    oath, please.

19          So just raise your right hand, Ms. Pullo.

20       (Witness sworn.)

21          THE COURT REPORTER:  Thank you.  Just please state

22    your name for the record.

23          THE WITNESS:  Christina Pullo.

24          THE COURT:  All right.  Thank you, Ms. Pullo, and

25    welcome to the court.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Mr. Slack, we'll unmute you, or you should unmute

2    yourself, actually.  All right.  Do you want to make any

3    opening remarks?  Remember, Ms. Pullo's declaration is in lieu

4    of her live, direct testimony, but if you want to make any kind

5    of a brief introduction, you can do so.

6    MR. SLACK:  I would just say, as I think everyone

7    knows, that Ms. Pullo is our first witness.  She's the vice

8    president of global corporate actions at Prime Clerk.  And I'd

9    like permission for her to have her declaration in front of

10   her.

11   THE COURT:  Oh, sure.

12   You have it in front of you, don't you, Ms. Pullo?

13   THE WITNESS:  I will get it.

14   THE COURT:  Okay.  All right.  So that's all you need,

15   Mr. Slack?  Is that all you want to do?  I presume you don't

16   need any more than that for now.

17   MR. SLACK:  What I would like to do, Your Honor, is I

18   would like to move into the record her declaration and the

19   three exhibits that are attached to her declaration, which are

20   Exhibit A, Exhibit B-1, and Exhibit B-2.

21   THE COURT:  I haven't kept track of all the positions

22   that have been filed.  I don't remember if anyone filed any

23   objection to that.

24   Do any of the three of you who are on the panel here,

25   do you voice any objection to those exhibits?

PG&E Corporation and Pacific Gas and Electric Company

1          Mr. Scarpulla, you need to unmute your microphone.

2     Mr. Scarpulla, you need to unmute yourself.  There you go.

3          All right.  Raise your hand if you are --

4          MR. SCARPULLA:  I have no objection, Your Honor.

5          THE COURT:  Say it again, sir?

6          MR. SCARPULLA:  I have no objection.

7          THE COURT:  Okay.  And Mr. Abrams, you need to unmute.

8          MR. ABRAMS:  Yes, Your Honor?

9          THE COURT:  You did not object, did you?

10         MR. ABRAMS:  Object to?  I'm sorry, Your Honor.

11         THE COURT:  To the exhibits that support -- that

12    accompany Ms. Pullo's declaration.

13         MR. ABRAMS:  No, that's fine, Your Honor.  Thank you.

14         THE COURT:  And Ms. Wallace, I don't believe you did;

15    is that correct?

16         MS. WALLACE:  Not yet, but I have -- my questions will

17    be directed to that declaration.

18         THE COURT:  Okay.  That's fine.

19         MR. TSEKERIDES:  Your Honor, Ted Tsekerides for the

20    debtors.

21         Just so Your Honor knows, nobody objected to any of

22    the debtors' exhibits by the court deadline.

23         THE COURT:  Well, that's helpful.  The deluge of --

24         MS. WALLACE:  Well, maybe I --

25         THE COURT:  The deluge of papers coming in are such

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    that I can't keep up with them all, so --

2           MS. WALLACE:  I wanted to say something.  Maybe it's a

3    time for me to object now to it because I don't believe that

4    it's accurate.  So I --

5           MR. TSEKERIDES:  So we --

6           THE COURT:  Wait, Ms. Wallace, accuracy is not an

7    element of admissibility.  If you -- you will have an

8    opportunity to cross-examine.  I'm going to allow Ms. Pullo's

9    three attachments are admitted, supporting her declaration in

10   evidence.

11        (Attachments to Ms. Pullo's declaration were hereby

12   received into evidence as Debtor's Exhibit A, B1, and B2, as of

13   this date.)

14          Mr. Scarpulla, you are up to ask questions on

15   cross-examination.  You've asked for five to ten minutes, so

16   you've got them.

17          MR. SCARPULLA:  Thank you, Your Honor.

18          THE COURT:  Wait.  Ms. Pullo, did you have a question?

19          THE WITNESS:  Is it permissible for me to be looking

20   at an electronic version of my declaration or do I have to have

21   it printed?

22          THE COURT:  Well, what do you prefer?

23          THE WITNESS:  I have it electronically.

24          THE COURT:  Did you want a hardcopy?

25          THE WITNESS:  No, no, no; that is totally fine.  I

PG&E Corporation and Pacific Gas and Electric Company

1  just wanted to make sure that it was permissible for me view it

2  electronically.

3          THE COURT:  Of course.  Of course it is.

4          THE WITNESS:  Thank you.

5          THE COURT:  All right.

6          Mr. Scarpulla.

7          MR. SCARPULLA:  Are you ready for me, Your Honor?

8          THE COURT:  Yes.  Go ahead.

9  CROSS-EXAMINATION

10  BY MR. SCARPULLA:

11  Q.   Good day, Ms. Pullo.  My name is Francis Scarpulla and I

12  represent several of the fire victims.  I just have a couple of

13  questions for you, to start.  In your declaration, which you

14  have in front of you, is the information in paragraph 1 still

15  completely accurate?

16  A.   I'm reviewing it.

17          Yes, in paragraph 1.

18  Q.   Thank you.

19          And can you take a look, please, at page 5 of your

20  declaration, line 27, where you use the words "pre-populated

21  fire victim master ballots"; what did you mean when you wrote

22  "pre-populated"?

23          MS. WALLACE:  Oh, God.

24  A.   Certainly.  When we sent out the client list to the

25  applicable master ballot -- master ballot law firms, they -- we

1    included the client list that they provided as part of their

2    fire victim directives.  So we pre-populated the client list

3    that they were provided on their directives when handing --

4    when giving them their master ballots.

5    Q.   All right.  And those were the ones that were sent to the

6    law firms?

7    A.   Correct.

8    Q.   Thank you.  Now, do you know how many total claims were

9    filed with Prime Clerk?

10   A.   There were 87,000 fire victim claims filed with Prime

11   Clerk.

12   Q.   Thank you.

13        And of those 87,000, do you know how many were duplicates?

14   A.   I do not.

15   Q.   Do you know if that information is available at Prime

16   Clerk?

17   A.   I do not know.

18   Q.   Do you know who the person at Prime Clerk most

19   knowledgeable of that subject would be?

20        MS. WALLACE:  It says right in the declaration.

21   A.   You asked about duplicate claims, so my vote declaration

22   talks about duplicative votes.  So my declaration, because it's

23   on duplicative votes, I can -- I can speak to that.  I would

24   have to -- regarding the claims register, that's a different

25   subject matter, so I would have to discuss who would be the

1    most applicable for that.

2    Q.   Okay, thank you, but you'll find out for us, or ask your

3    lawyer to?

4            MR. SLACK:  Your Honor, objection to the form of that

5    question.

6            THE COURT:  Well, Mr. Scarpulla, let me --

7            MR. SCARPULLA:  Okay, I --

8            THE COURT:  -- Mr. Scarpulla, just clarify for my

9    sake, are you asking about duplicate claims, or duplicate

10   votes?

11           MR. SCARPULLA:  I'm asking how many of the 87,000

12   claims received were duplicates.

13           THE COURT:  Duplicate votes?

14           MR. SCARPULLA:  Yes.

15           THE COURT:  That's what you said, okay.

16           MR. SCARPULLA:  Yes, but --

17           THE COURT:  And Ms. Pullo said that she doesn't know.

18           MR. SCARPULLA:  And that's a -- correct.

19           THE COURT:  All right.

20           MR. SCARPULLA:  Okay.

21           THE COURT:  And Mr. Slack, what was the objection?

22           MR. SLACK:  Your Honor, he was asking the witness

23   whether the witness would undertake after her testimony to get

24   information, and I don't think that's appropriate.  I think he

25   can ask her questions as a witness today and get answers.

(973) 406-2250 | operations@escribers.net | www.escribers.net

1          THE COURT:  Okay.

2          MR. SCARPULLA:  All right.

3          THE COURT:  All right.

4          MR. SCARPULLA:  I'll withdraw the question, Your

5     Honor.

6          THE COURT:  Okay, thank you.

7          Go ahead.

8          MR. SCARPULLA:  Okay.

9     BY MR. SCARPULLA:

10    Q.   Of those 87,000 claims, you received -- Prime Clerk

11    received approximately 44,900 claims that were yes votes; is

12    that correct?

13    A.   We received approximately 44,000 votes that were yes

14    votes -- ballots that were yes votes.

15    Q.   Okay.  And you received approximately 6,100 --

16         MS. WALLACE:  I can't see anything, I'm

17    (indiscernible).

18         THE COURT:  All right.

19    Q.   -- rejecting votes.

20         THE COURT:  Hang on a minute please.

21         Ms. Wallace, I'm going to put your -- I'm going to

22    tell the clerk to mute your microphone because every time

23    you're making noise, your screen lights up, and it's not your

24    turn to talk.  So when I come back to you to let you

25    cross-examine, we'll take you off of mute.

(973) 406-2250 | operations@escribers.net | www.escribers.net

1          All right, Mr. Scarpulla, go ahead.

2          MR. SCARPULLA:  Yes, Your Honor, thank you.

3     BY MR. SCARPULLA:

4     Q.   Ms. Pullo, you also -- Prime Clerk also received

5     approximately 6,100 ballots rejecting the plan?

6     A.   Correct.

7     Q.   Okay.  Of the 44,900, how did you determine -- how did

8     Prime Clerk get rid of any duplicates?

9     A.   We performed an analysis of -- to make sure that any votes

10    that came in representing the exact same claim and voter ID

11    were excluded from the tabulation.  We also reviewed claims, to

12    the extent that it was clear from a claim that it was amending

13    a proof of claim.  So to the extent that we could clearly make

14    that determination, those were excluded.

15         And then we also did an analysis of duplicate -- potential

16    duplicates that were flagged, and to the extent that we were

17    able to make a clear determination without making any

18    subjective determinations regarding exclusion, we excluded it

19    from the final tabulation.  However, to the extent that any

20    subjectivity would have gone into the analysis, we err on the

21    side of not disenfranchising any voter, and those would not be

22    excluded from the tabulation.

23    Q.   Okay.  Thank you.  And I understand from your declaration

24    that you also excluded 8,100 ballots because there was neither

25    an accept or a reject checked; is that correct?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1    A.    The 8,100 excluded were those that were on the

2    pre-populated client lists, and those were simply returned to

3    us with no vote indicated.  So it was -- we don't know if it

4    was a no vote submitted, or just no instruction received from

5    those clients.  It's like a nonsubmission would be --

6    Q.    I see.

7    A.    -- handled generally.

8    Q.    I see.  So that was not -- those were not ballots that you

9    received directly from a fire victim, those were ballots you

10   received from the pre-populated group.

11   A.    That is correct.

12   Q.    Thank you.  And did you -- and I believe, were there also

13   some late claims that were not included?

14   A.    There were late ballots that were not included.

15   Q.    I'm sorry, late ballots.  I'm sorry, yes, late ballots.

16   And do you know how many of those that Prime Clerk received

17   late?

18   A.    We -- there were approximately 9 -- 1,978 ballots excluded

19   for various reasons, including late.  I don't know exactly how

20   many were excluded as late for that particular category.

21        Of those 1,978, approximately 1,100 of them were votes to

22   accept the plan, approximately 150 were to reject the plan, a

23   handful checked the box both to accept and reject the plan, and

24   730 of those had -- did not indicate a vote, and did not check

25   a box.

1 Q.   Okay.  But those late claims were not included in

2 anything?

3 A.   Late claims were not included in anything.

4        THE COURT:  Again, Mr. Scarpulla, let me -- you keep

5 jumping back between claims and ballots, you've got to keep

6 them straight.

7        MR. SCARPULLA:  I'm sorry.  It's my --

8        THE COURT:  Late --

9        MR. SCARPULLA:  I'm only talking about ballots.

10        THE COURT:  The late ballots, what she said was --

11        MR. SCARPULLA:  Yes, I'm sorry.

12        THE COURT:  -- whether they were accept, or reject, or

13 both, or neither, they were all excluded.

14        MR. SCARPULLA:  Right.

15        THE COURT:  Okay.

16 BY MR. SCARPULLA:

17 Q.   Of the 8,100 pre-populated claims which were not counted,

18 did you know whether Prime Clerk attempted to contact any of

19 those fire victims?

20 A.   That were included on the note that was --

21 Q.   On the 8,100, yes.

22 A.   I do not know if -- and we certainly received the master

23 ballot.  I believe the master ballots or those were received

24 very close to the vote deadline, if not on the vote deadline,

25 so there would've been no outreach, regardless.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1    Q.    Okay.  Do you know whether Prime Clerk has a calculation

2    of the total number -- the total dollars claimed in the 87,000

3    claims that were filed?

4    A.    I don't know claim amounts.

5    Q.    Who does it at Prime Clerk?

6    A.    There is a claim register with claim amounts ascribed

7    to -- to the population.  I just -- I'm dealing with the ballot

8    and voting amounts, which are different, so I don't know.

9    Q.    And who is the person at Prime Clerk that would be most

10   knowledgeable on the subject of the amounts?

11          MR. SLACK:  Your Honor, I would object on the basis of

12   relevancy.  Under the voting procedures, each fire victim

13   claim, as approved by the Court, was given a dollar vote per

14   claim, other than Adventist and AT&T.  So I don't see the

15   relevance of anything in this line of questioning that Mr.

16   Scarpulla is undertaking that has to do with the vote.

17          THE COURT:  Mr. Scarpulla --

18          MR. SCARPULLA:  I'm only asking --

19          THE COURT:  What's the relevance, Mr. Scarpulla?

20          MR. SCARPULLA:  I'm only asking the name of the

21   person.  I haven't asked --

22          THE COURT:  No, what's the relevance?  What difference

23   does it make?

24          MR. SCARPULLA:  Because let's assume that there's a

25   100 billion dollars in claims, if there's --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1            THE COURT:  Uh-hum.

2            MR. SCARPULLA:  -- only a billion, it doesn't matter,

3    but if there's 100 billion, doesn't that matter?

4            THE COURT:  Mr. Scarpulla --

5            MR. KAROTKIN:  Mr. Scarpulla --

6            THE COURT:  Wait, Mr. Karotkin.  Mr. Scarpulla, you've

7    got to have a basic Bankruptcy 101 lesson here.  I have

8    approved plans where one vote has been submitted out of a

9    hundred creditors.  Creditors who don't vote don't count.  It's

10   just like the national election.  If you don't vote for the

11   President, you can't complain about who got elected.  If you

12   don't vote for this plan, it doesn't matter.  So it doesn't

13   matter, and what matters is the 40-so-odd-thousand votes that

14   were submitted by -- as Ms. Pullo described.

15           So let's move on, your time is almost up.

16           MR. SCARPULLA:  I don't have any further questions.

17           THE COURT:  Okay.

18           MR. SCARPULLA:  That was my last question --

19           THE COURT:  Okay.

20           MR. SCARPULLA:  -- which I assume --

21           THE COURT:  Thank you.

22           MR. SCARPULLA:  -- has been -- the objection has been

23   sustained.

24           THE COURT:  Yes, it has.

25           MR. SCARPULLA:  Thank you.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1           THE COURT:  Okay.  Ms. Parada, I'm --

2           MR. SCARPULLA:  Then I don't have any questions of

3    this witness at this --

4           THE COURT:  Okay, thank you.  We're going to remove

5    you, not against your will, just politely, Mr. Scarpulla, from

6    the participant's room, and unmute Mr. Abrams.

7           Mr. Abrams, it's your turn to examine Ms. Pullo.

8           MR. SCARPULLA:  Thank you.

9           MR. ABRAMS:  Your Honor -- thank you, Your Honor.

10   CROSS-EXAMINATION

11   BY MR. ABRAMS:

12   Q.   Thank you, Ms. Pullo, for taking the time.  I am one of

13   the claimants, a victim from the PG&E fires, so my questions

14   will be, I guess less legal in nature.  Can you start out by

15   just giving me a little description about what is within your

16   purview and what are your responsibilities at Prime Clerk?

17   A.   Sure.  I am the head of the solicitation group, and public

18   securities group.  It's formerly known as the global

19   corporation actions group in Prime Clerk.  I oversee day-to-day

20   operations of the team.  I supervise all solicitation mailings,

21   as well as tabulations, generally.

22   Q.   Great.  Thank you.  And through this process, I have been,

23   as a claimant, dealing with emails back and forth with a Mr.

24   Chris Schepper and a Stanislav Kesler.  Are those folks that

25   reported to you?

Pullo - Cross

1  A.    Yes.

2  Q.    Thank you.  How familiar are you with what the vote is

3  about.  And what I mean that about, obviously you know it's

4  about PG&E but do you understand, you know, what victims are

5  voting for in this plan?

6       MR. SLACK:  Your Honor, objection to the form.

7       THE COURT:  Well, go ahead.  You can answer the

8  question, Ms. Pullo.

9  A.    Generally, I have an understanding.  However, we don't

10  comment or advise on what is in the plan.  We're just directed

11  to send out the solicitation version of the plans, as approved

12  by the Court.

13  Q.    Okay.  But you are aware that, you know, there are PG&E

14  wildfires, and what led PG&E into bankruptcy, you're generally

15  aware of those -- of that situation, yes?

16       THE COURT:  Mr. Abrams, don't waste your time on

17  questions like that.  Of course she's aware of, you're aware of

18  it, I'm aware of it, we're all aware of it.

19       MR. ABRAMS:  Okay.

20       THE COURT:  The issue about the votes, so --

21       MR. ABRAMS:  Okay.

22       THE COURT:  -- ask her about the votes.

23       MR. ABRAMS:  Thank you, Your Honor, I'll try to be

24  more specific.

25  BY MR. ABRAMS:

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Pullo - Cross

1  Q.   So Prime Clerk, if I could point you to page 1 of your

2  declaration, line 20.  You indicate that you're not a party to

3  the above-captioned action.  When you say "not a party", are

4  you talking about you specifically personally, or are you

5  talking about you, the organization, Prime Clerk is not a

6  party?

7  A.   I am talking -- saying "I" in that sentence.

8  Q.   Sorry?

9  A.   I -- let me just get -- line 20.  Which page are you

10 referring to?

11 Q.   Sorry.

12 A.   Not a party to --

13 Q.   Page 1, line 20.

14 A.   Yes.  It -- it says "I".  I'm referring to I, as a person.

15 Q.   Okay.  Are you aware if Prime Clerk, as a company or a

16 division, I'm a little unclear but, is a party or is not?

17         THE COURT:  Again, Mr. Abrams, you're just going

18 around in circles.  You know and I know and everybody knows,

19 that Prime Clerk is the designated agent for the debtors to do

20 various functions.  Let's get back to your focus on what you

21 want to question about Ms. Pullo and what the votes didn't tell

22 us, not this background.  It's not productive of all of our

23 time --

24         MR. ABRAMS:  It --

25         THE COURT:  -- or relevant.

(973) 406-2250 | operations@escribers.net | www.escribers.net

Pullo - Cross

1      MR. ABRAMS:  So I'll -- I'll -- I'm sorry, Your Honor,

2   I will get to the relevant question here.  I just wanted to ask

3   that as a background question, and the reason why I ask, which

4   gets to relevancy, Your Honor, is that my understanding --

5      And Ms. Pullo, if you can correct me if I'm wrong, is

6   that Prime Clerk is a Division of Duff & Phelps, and Duff &

7   Phelps has been a shareholder of substantial size of PG&E; is

8   that correct?

9      THE WITNESS:  I am not aware of that personally.

10  BY MR. ABRAMS:

11  Q.   Can you explain the relationship between Prime Clerk and

12  Duff & Phelps?  Is it a division, is it owned by?  What --

13  what's that relationship?

14  A.   We are a division of Duff & Phelps.

15  Q.   You are a division of Duff & Phelps.  Okay, thank you.  So

16  are you aware that Duff & Phelps held or is holding 1-point

17  million -- 1.8 million shares of PG&E, at least as of January

18  2018?  Are you aware of that?

19     MR. SLACK:  Your Honor, I would object to this line.

20  It goes far beyond Ms. Pullo's declaration and it doesn't go to

21  any of the voting issues that are in the case.

22     THE COURT:  Well, I'm going to overrule the objection.

23  You can answer the question, Ms. Pullo --

24     THE WITNESS:  I --

25     THE COURT:  -- if you know.

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Pullo - Cross

1      THE WITNESS:  -- I am not aware.

2      THE COURT:  All right.

3      THE WITNESS:  I am not.

4  BY MR. ABRAMS:

5  Q.   Who within your organization would be aware of that

6  relationship?  Would that be the CEO, Shai Waisman?  Who

7  would -- who would be aware of that?

8  A.   I can't speculate on knowledge of other people.  I

9  would --

10      THE COURT:  Okay, that's your answer.  You can't

11  speculate.  You don't know; is that your answer --

12      THE WITNESS:  Right.

13      THE COURT:  -- Ms. Pullo?

14      THE WITNESS:  That is my answer.

15      THE COURT:  All right.  That's the answer, Mr. Abrams.

16      MR. ABRAMS:  Okay.

17  BY MR. ABRAMS:

18  Q.   Ms. Pullo, when you think about the integrity of the

19  voting process, which I understand, I think, at least is part

20  of your purview, would you say that ensuring that you and your

21  organization is free of conflicts, is important to how you

22  conduct the voting process, and is important for the victims,

23  the claimants, to understand that who is managing the voting

24  process is free of conflicts?

25  A.   I was not aware of any conflicts, as I previously stated,

(973) 406-2250 | operations@escribers.net | www.escribers.net

Pullo - Cross

1    and I ran the solicitation process, so I have no issues, or any

2    understanding of any -- like, the lack of integrity that

3    you're -- you're describing.  I was not aware of any of the

4    conflicts.

5    Q.   I appreciate that, and I guess what I'm asking is, Judge

6    Montali is a fan of hypotheticals, so I'm going to ask two

7    myself --

8         THE COURT:  I'm not a --

9    Q.   -- if permitted.

10        THE COURT:  -- fan of hypotheticals when you ask a

11   witness.  She's here to testify of what she knows about not

12   what --

13        MR. ABRAMS:  Okay.

14        THE COURT:  -- she might speculate about, or you might

15   speculate.  So I am a fan of hypotheticals, but not when I'm a

16   witness.

17        MR. ABRAMS:  Okay.  Thank you, Your Honor.

18   BY MR. ABRAMS:

19   Q.   Okay.  Are you aware that in Mr. Waisman's declaration,

20   that he indicated that he has a relationship, very

21   specifically, with the debtors' counsel?

22        MR. SLACK:  Objection to the form.

23        THE COURT:  What is the form that you're concerned

24   about, Mr. Slack?

25        MR. SLACK:  Well, I mean, he says "relationship", I'm

Pullo - Cross

1   not sure what that means here.

2           THE COURT:  Okay.  Why don't you clarify what you

3   mean, Mr. Abrams?

4           MR. ABRAMS:  In Mr. Waisman's declaration that he

5   submitted to this Court, it indicates that he worked for a

6   while for, I believe, twenty-two years, or something around

7   that.  Are -- I'm asking if she's familiar with that

8   relationship.

9           THE COURT:  Well, let's start by asking if she's

10  familiar with Mr. Waisman's declaration, because if she's not,

11  that might be the end of it, so ask her that.  I'll ask it.

12          Ms. Pullo, are you familiar with Mr. Waisman's

13  declaration in this case?

14          THE WITNESS:  I have read one of his declarations.  I

15  don't know which one, specifically, we're talking about.

16          THE COURT:  Okay.  All right, Mr. Abrams, go ahead.

17  BY MR. ABRAMS:

18  Q.   Sorry, Ms. Pullo, I wasn't sure that my question was

19  answered.  I can reask it, but are you familiar with that

20  relationship between Prime Clerk and the debtors' counsel?

21  A.   I know that Shai worked at -- Mr. Waisman worked at Weil

22  Gotshal.

23  Q.   Okay.  Thank you.  On page 2 of your declaration, lines 15

24  and 16, you state that you "assisted the debtors with, among

25  other things, the services and distribution of solicitation

Pullo - Cross

1    materials".  Do you see that in your declaration?

2    A.    Yes.

3    Q.    Okay, thank you.  Is it part of Prime Clerk's

4    responsibility to assist the debtors and look into voting

5    irregularities if they come up?

6    A.    Yes.

7    Q.    Okay.  Given that, can you describe what voting

8    irregularities the debtor asked you to look into with this

9    case?

10   A.    If they received an inquiry that went to the debtors

11   directly regarding someone that had a question or needed a

12   replacement ballot, they would forward it to us, and we would

13   look into a situation like that.

14   Q.    I appreciate that.  Thank you.  What I'm asking is, the

15   debtors.  So this line talks to what the debtors, you assist

16   the debtors.  And have the debtors instructed you to look into

17   voting irregularities in this case?

18   A.    I have received an email from the debtors with a similar

19   question.

20   Q.    So what issue did the debtors ask you to look into, in

21   terms of voting irregularities?

22   A.    If an inquiry came directly into the debtors regarding a

23   person asking about either the voting process or that they

24   needed a replacement ballot, the company would ask us to look

25   into it and respond.

(973) 406-2250 | operations@escribers.net | www.escribers.net

Pullo - Cross

1    Q.    Thank you.  So these were one-off, single-claimant issues?

2    They weren't more general, where there's an issue with 10 or

3    100 or 1,000 different claims that they wanted you to look --

4    there was no irregularities that went broader, that the debtors

5    asked you to look into, other than a single claim?

6    A.    Not as a -- as a group, no.

7    Q.    Not as a group, okay.  Are you aware that there were a

8    number of motions that Prime Clerk posted to the docket that

9    involved voting irregularities?

10          MR. SLACK:  Objection to the form, Your Honor.

11          THE COURT:  Do you understand that question, Ms.

12   Pullo?

13          THE WITNESS:  It's the --

14          THE COURT:  If you don't, that's all right.  Just

15   say --

16          THE WITNESS:  No.

17          THE COURT:  -- you don't.

18          THE WITNESS:  If you could -- I don't.

19          THE COURT:  Okay, okay.  You need to rephrase, Mr.

20   Abrams.  If the witness doesn't understand the question, I

21   can't expect her to answer.

22          MR. ABRAMS:  Understood.  I'll rephrase.

23   BY MR. ABRAMS:

24   Q.    Are you aware that there are a number of different issues

25   around voting irregularities that Prime Clerk posted to the

1  docket.  Are you aware that there were issues, concerns,

2  regarding voting irregularities that were posted to the docket

3  by Prime Clerk?

4        MR. SLACK:  Your Honor, I still object to the question

5  because it assumes facts that haven't been established yet,

6  that there are, in fact, irregularities.  And calling them

7  irregularities before that fact's been established, I think, is

8  inappropriate.

9        THE COURT:  Yeah, I agree.  Yeah, Mr. Abrams, if you

10 have in mind something that's on the docket that was posted by

11 Prime Clerk that you characterize as an irregularity, you can

12 refer to it and ask Mr. Pullo if she -- whatever you want to

13 ask about the entry.  But to start with, does the word

14 "irregularity" even appear on anything that you've seen that

15 Prime Clerk put on the docket?

16       MR. ABRAMS:  I'm sorry, Your Honor.  I stand

17 corrected.  I will use better language.  I'm trying my best

18 here to describe it.  I will take that point.

19       THE COURT:  Just describe it literally, the way it is.

20       MR. ABRAMS:  Okay.

21       THE COURT:  So if the -- the entry says A, B, C, ask

22 her if she knows what A, B, C meant or conveyed.

23       MR. ABRAMS:  Okay, thank you.

24 BY MR. ABRAMS:

25 Q.  Ms. Pullo, are you aware that there was a motion put

Pullo - Cross

1  forward to designate improperly -- votes solicited in bad faith

2  and a number of joinders associated with those issues?

3          MR. SLACK:  Your Honor, again, I want to object here.

4  That motion has been decided by Your Honor and is really not

5  appropriate for Ms. Pullo to give testimony on.

6          THE COURT:  Well, I agree with Mr. Slack.

7          And Mr. Abrams, what is the relevance of the fact that

8  there was a question -- and the Court disposed of it, but what

9  is the relevance of it to today's testimony?

10          MR. ABRAMS:  So I'm not asking her to weigh in whether

11  she agrees or disagrees with the motion --

12          THE COURT:  I didn't ask you to.  I'm --

13          MR. ABRAMS:  I --

14          THE COURT:  -- asking you why you're even asking her

15  in the first place.

16          MR. ABRAMS:  Because I want to understand if she

17  understood that there were issues with the voting, that there

18  were allegations or -- or issues with the voting process that

19  were brought up to the Court and if she, as -- in the

20  organization of Prime Clerk, saw that and responded to it.

21          THE COURT:  Okay.  I'm going to -- I'm going to give

22  you one of my basic principles, and some of the experienced

23  lawyers might roll their eyes, but I'm going to tell you this

24  way, Mr. Abrams.  A lot of times lawyers or non-lawyers ask

25  questions and opponents may ask and question the relevance.

(973) 406-2250 | operations@escribers.net | www.escribers.net

Pullo - Cross

1         So you're going to hear the Montali relevance test.

2    The relevance test is what would the answer do to help the

3    Court make a decision?  So if Ms. Pullo can tell us something

4    that you could ask her about that would help me reach a

5    conclusion or a decision that I need to make, that probably

6    means it's relevant.  But if it has nothing to do with the

7    question presented to me, it probably means it's irrelevant.

8         So I will tell you now, you and I and everyone in this

9    case knows that there was a challenge and a request by some

10   that I designate certain votes.  I made the decision and I went

11   on with it.  But it's not legally relevant today because what

12   Ms. Pullo knows or knew or learned about has nothing to do with

13   the decision that I have to make ultimately on the basis of her

14   testimony concerning the vote count.  So that's the long way of

15   saying that your question calls for something that is

16   irrelevant and therefore, the objection is sustained.

17             MR. ABRAMS:  Thank you, Your Honor.

18             THE COURT:  Okay.

19   BY MR. ABRAMS:

20   Q.   Ms. Pullo, on page 5, line 7 of your declaration, it

21   indicates that Prime Clerk must insure that the ballot is

22   executed by the relevant holder entitled to vote on the plan.

23   Do you see that there, in your declaration?

24   A.   Yes.

25   Q.   Given that, we understand that through this voting

Pullo - Cross

1  process, that there are a number of victims who received

2  robocalls indicating that every member of their household

3  should vote, without an indication of claim or no claim.  As

4  Prime Clerk, when you have that -- if someone sends in every

5  member of their household and votes, say there's five members

6  of the household, and five members of the household vote

7  because they've been instructed to do so, how do you ensure

8  that there's actually five claims in that household, since the

9  rule is, I believe -- you can correct me if I'm wrong -- one

10  vote per claim?

11        MR. SLACK:  Your Honor, I apologize for objecting.

12  But I -- the whole idea of making a statement about robocalls,

13  which are not in evidence I think is objectionable.  I think if

14  he wants to ask a question about ensuring, that's a different

15  issue.

16        THE COURT:  Yeah --

17        MR. SLACK:  But there's no facts in evidence.

18        THE COURT:  Objection's sustained.  It's sustained.

19  Mr. Abrams, again, you can't ask these hypotheticals that

20  aren't based upon facts.  If you know of a specific thing, then

21  you can ask the witness if she knows about it and what she's

22  done about it.  And she's already told us what has been done to

23  deal with duplicate votes.  So you can ask her more about that,

24  if you wish.  But you can't just put to her what does she know

25  about something that is not in the record that maybe only you

Pullo - Cross

1    know about.  So go ahead with your next question.

2            MR. ABRAMS:  Your Honor, I'm sorry, I thought that

3    that was common knowledge.  Can I play the --

4            THE COURT:  Common knowledge -- common knowledge does

5    not mean, necessarily, what you might think it means for these

6    purposes.  Go ahead and ask her what she knows and if she knows

7    about something, then she can tell us what she knows.

8            MR. ABRAMS:  Can I play the robocall for her so that

9    she --

10           THE COURT:  No, no you cannot.

11           MR. ABRAMS:  Okay.  Okay.  So --

12           THE COURT:  You can ask her if she is aware of any

13   robocalls.  Go ahead.  Ask her if she's aware of any robocalls.

14           MR. ABRAMS:  Thank you.

15           THE COURT:  Heard or read -- heard or observed them of

16   her own eyes or ears.

17           MR. ABRAMS:  Okay.

18   BY MR. ABRAMS:

19   Q.   Ms. Pullo, are you aware that there were robocalls to

20   claimants asking them to vote?

21   A.   No, Prime Clerk was not aware of -- of that, because we

22   were not involved in any of that to the extent that it is

23   something that occurred.

24   Q.   Thank you.  If a family votes for five members of their

25   house, but there's only one claim in that household, how does

(973) 406-2250 | operations@escribers.net | www.escribers.net

Pullo - Cross

1  Prime Clerk treat those five votes?

2  A.    In accordance with the solicitation procedures, if a claim

3  was filed by a fire victim, they were instructed to list the

4  family members on their proof of claim.  In accordance with the

5  solicitation procedures, each such fire victim was accorded an

6  individual vote, a unique voter ID, and afforded a vote each.

7  Q.    So let me just ask a further question.  So if there were

8  five votes that came in, three said to reject the plan, two

9  said to accept the plan, but there's only one claim, how would

10  Prime Clerk treat that?

11  A.    As three votes to accept and two votes to reject, in

12  accordance with the soliciting procedures.

13  Q.    Even though there's only one claim?

14  A.    Yes --

15  Q.    So there's one claim, five people on -- sorry?

16  A.    That is correct, because the proof of claim form indicated

17  that they include the fire victim members -- household members,

18  on the proof of claim.  And in accordance with the solicitation

19  procedures, each one was afforded their own, individual vote.

20  Q.    Thank you.  So on page 10 of your declaration, about a

21  quarter-way down the page, you'll see my name, William Abrams,

22  about a quarter-way down and an indication that I did not vote

23  to accept or reject the plan.  Do you see that there?

24  A.    Yes, I'm familiar with that.

25  Q.    Thank you.  Would it surprise you to know that I got a

Pullo - Cross

1    receipt on May 14th indicating that I rejected the plan?

2    A.    No, because your valid ballot that was submitted that did

3    indicate a reject is included in the final tabulation.  You

4    have two ballot records in our system, one of which you did not

5    check to accept or reject.  But then -- which was excluded from

6    the tabulation, and that is why it is as it appears on Exhibit

7    B-1.  But you submitted another one properly, that did indicate

8    a vote to reject, which was included in the final tabulation.

9    Q.    Okay, so the -- okay, and so my ballot that did not -- so

10   that wouldn't have been counted?  So if I had voted no and then

11   I voted yes, it's whatever came last that is counted?

12   A.    It is whatever has come last that's properly completed.

13   Q.    Properly completed, thank you.

14          THE COURT:  Okay, Mr. Abrams.  I'm not going to hold

15   you to the exact minute, but you're getting close to your

16   estimate, so I need you to plan to wrap up here in the next

17   little bit, please.

18          MR. ABRAMS:  Okay.  Thank you.

19   BY MR. ABRAMS:

20   Q.    How are changes in address logged in the system to ensure

21   that victims receive their vote -- their ballot -- sorry, their

22   solicitation materials?

23   A.    When we receive an address update, that address update is

24   input into the database.  And when we send out the solicitation

25   materials, the most current address -- notice address that's

(973) 406-2250 | operations@escribers.net | www.escribers.net

Pullo - Cross

1    associated with that record at the time that we send out the

2    materials is what we mail to.

3    Q.   Okay.  And if I had an address change in February -- but

4    would that have been -- but I didn't get my vote solicitation

5    materials, is that -- why would that occur?

6              MR. SLACK:  Objection, Your Honor.

7    A.   I can't spec --

8              THE COURT:  Well, it is speculation.  But if you know,

9    if Mr. Abrams changes his address in February or -- if Mr. X

10   changes an address in February, but didn't get a ballot

11   package, is there any -- do you have any knowledge as to what

12   an explanation would be?

13   A.   I can't speculate as to why he wouldn't receive it.  I can

14   say that we mailed it out to the current address that was tied

15   to his record as of the time of the mailing.

16   BY MR. ABRAMS:

17   Q.   Okay, so you -- Prime Clerk posted to the docket my change

18   of address in February.  But then, when I -- when I responded

19   in May as to why I didn't get my ballot, the indication was in

20   May that the reason for that was they weren't aware of my new

21   address.  So that's, as an example -- again, this is not about

22   Will Abrams.  But as an example, I'm trying to understand how a

23   change of address can be logged in February, but then the

24   person doesn't receive their solicitation materials in May.

25             THE COURT:  Well, I'm going to interrupt, Mr. Abrams,

(973) 406-2250 | operations@escribers.net | www.escribers.net

Pullo - Cross

1    because it is about Will Abrams, because Will Abrams just said

2    that he got a ballot, submitted one, submitted another one, and

3    it was counted.

4          Ms. Pullo was describing the situation with your

5    ballot.  If you have facts of a particular claimant who made a

6    change of address in February and never got a ballot, you can

7    ask her about that, but not some hypothetical.  So go ahead and

8    ask, if you have the specifics of someone, if you knew a person

9    by name who changed address and didn't get a ballot, if she can

10   explain.  If she doesn't know, then she can't explain.

11         MR. ABRAMS:  Thank you, I'll be more specific, Your

12   Honor.

13   BY MR. ABRAMS:

14   Q.   In February, I -- Prime Clerk posted to the docket my

15   change of address --

16         THE COURT:  No, we already talked about that.  You

17   got --

18         MR. ABRAMS:  Oh.

19         THE COURT:  -- your ballot, so I don't want to waste

20   time --

21         MR. ABRAMS:  Okay.

22         THE COURT:  -- on what didn't cause you any problem.

23         MR. ABRAMS:  Okay.

24         THE COURT:  It might have been an interruption, but

25   it -- there was no harm, no foul.  So --

Pullo - Cross

1        MR. ABRAMS:  Okay, thank you.

2    Q.   Are you aware, Ms. Pullo --

3        MR. ABRAMS:  I'll move on, Your Honor.  I apologize.

4    Q.   Are you aware that I received an email from Stanislav

5    Kesler on March 3rd -- let's see, on May -- in May, indicating

6    that the solicitations commenced on March 30th and were

7    completed on April 8th?  Are you aware that the vote

8    solicitation materials commenced on March 30th and were

9    completed by April 8th, does that ring true with your timeline?

10   A.   Yes.

11   Q.   Okay.  So if I was solicited to vote on March -- on April

12   1st or April 2nd or April 3rd or April 4th, but I was amongst

13   those people who Prime Clerk sent the votes -- the disclosure

14   statement and other materials later, but I saw a print

15   advertisement or a TV advertisement or was -- had a call asking

16   me to vote before I got the disclosure statement later that

17   week -- I guess what I'm trying to understand, is there some

18   other vehicle --

19       THE COURT:  Mr. Abrams, ask a question.  Don't tell me

20   what you understand.  Ask her a question.

21       MR. ABRAMS:  I'm sorry --

22       THE COURT:  That's what you're supposed to do today.

23       MR. ABRAMS:  Okay, I'm sorry, Your Honor.  I'll be

24   more specific.

25       THE COURT:  But be -- but question, question.  Ms.

(973) 406-2250 | operations@escribers.net | www.escribers.net

Pullo - Cross

1    Pullo, did, Ms. Pullo, do, not I understand.  So ask her the

2    question.

3    BY MR. ABRAMS:

4    Q.   Ms. Pullo, were you aware that solicitations for votes

5    occurred at the beginning of April, when Prime Clerk did not

6    send disclosure statements until later in the week, per your

7    statement that they went out through April 8th?

8    A.   I am not aware of that.  I -- from Prime Clerk, we mailed

9    out the materials commencing on March 30th through April 8th.

10   And that was our mailing of the solicitation materials.  I can

11   only comment on what we did.

12   Q.   Okay.  Thank you very much.  I appreciate your time.

13            THE COURT:  Okay.  Thank you, Mr. Abrams.  We're going

14   to escort you out of the panel now.

15            And Ms. Parada, is Ms. Wallace available to come back

16   in?  Or to come in?  I don't see her name on the screen.

17            THE CLERK:  I'll bring her in now, Your Honor.  She

18   was having -- she was disconnecting a few times.

19            She's joining now, Your Honor.

20            THE COURT:  All right.  We should unmute her.

21            THE CLERK:  Ms. Wallace, please unmute your

22   microphone.

23            THE COURT:  Ms. Wallace, you need to unmute if you're

24   going to ask questions.

25            Ms. Wallace, if you can hear me, unmute your

Pullo - Cross

1   microphone, because if you don't, I'm going to conclude the

2   hearing.

3           Ms. Parada, do you know if she -- is Ms. Wallace

4   showing as a -- in the attendees?

5           THE CLERK:  Yes, Your Honor.  She's there.  One

6   moment, let me try and unmute her.

7           THE COURT:  I don't -- you know what, I don't see her

8   name.  This is supposed to be alphabetical by first name right?

9           THE CLERK:  No, she's -- she's in as a panelist, Your

10  Honor.

11          THE COURT:  Oh, you moved her into the panel.  I see.

12  Okay.

13          THE CLERK:  Yes.

14          THE COURT:  All right.  Well, okay.  This is the last

15  call.  Ms. Wallace, both I and my courtroom deputy have the

16  ability to unmute, unless -- but we can't unmute it if you have

17  it on muted.  So we're showing that you are in the panel, but

18  your icon for your name shows that your microphone is muted.

19  So I'm going to just wait another moment or so.  And if you

20  aren't able to do that or choose not to, whatever the choice

21  is -- if you're trying to and can't, I -- nothing I can do for

22  you.  I'll just give you another minute or so.

23          Okay, this is -- it wasn't a whole minute, but it just

24  is not working for -- Ms. Wallace hasn't -- either chose not to

25  or won't.  I won't -- I won't speculate.  Ms. Pullo --

(973) 406-2250 | operations@escribers.net | www.escribers.net

Pullo - Cross

1          THE CLERK:  Your Honor?

2          THE COURT:  Yes?

3          THE CLERK:  It appears she's lost her connection.

4    She's dropped out of the panelists.

5          THE COURT:  All right.  Ms. Pullo, I'm going to thank

6    you for testifying.

7          Well, I should ask Mr. Slack, Mr. Slack, I assume --

8    let's unmute you.  Unmute yourself, Mr. Slack.  Mr. Slack, do

9    you want to redirect Ms. Pullo at all -- Ms. Pullo at all?

10         MR. SLACK:  Your Honor, what I would ask is maybe a --

11   a very short recess, where I could consider and get back to

12   you.  But certainly if there is going to be any redirect, it's

13   going to be -- it's going to be very short.

14         THE COURT:  Okay.  Wait a minute, now.  I think -- it

15   looks like maybe Ms. Wallace is back.

16         Ms. Wallace, can you hear me?

17         MS. WALLACE:  137.  I'm unmuted, but --

18         THE COURT:  Do you want to --

19         MS. WALLACE:  -- there's no volume.

20         THE COURT:  Ms. Wallace, do you want to --

21         MS. WALLACE:  Hello?

22         THE COURT:  Ms. Wallace, do you want to question the

23   witness?

24         MS. WALLACE:  Can you hear me?

25         THE COURT:  Yeah, I can.  Ms. Wallace, I can hear you.

Pullo - Cross

1    Can you hear me?

2              Ms. Wallace, can you hear me?

3              Okay, Mr. Slack, I don't know why we've got you muted

4    again.  Well, what are you -- do we really need -- it's quite

5    awkward to take a break, a short break with 400 people on the

6    call.  What do you want me to do?

7              MR. SLACK:  So at this point, Your Honor, I don't

8    intend to redirect.  So --

9              THE COURT:  Well, I'm not -- listen, I'm not trying to

10   take advantage of anything.  I just -- I'll take a break if you

11   want to.  But it's just not that -- I mean, I can walk away.  I

12   can tell everybody to walk away from the camera for five

13   minutes, like a personal convenience break.  But I'm -- I'm

14   assuming -- well, is that what you want?

15             MR. SLACK:  No, I'm happy, Your Honor.  I don't think

16   we need to redirect Ms. Pullo.  I think we can excuse her.

17             THE COURT:  Okay.

18             Last call to Ms. Wallace, because I see Ms. Wallace's

19   name on the screen, but I don't hear her.

20             Do you hear me, Ms. Wallace?

21             All right.  I'm going to excuse Ms. Pullo.

22             Thank you for testifying.  Based upon our schedule

23   with all counsel in the prior hearing, which today's went a

24   little more smoothly, we're going to go and recess and

25   reconvene at 10 o'clock tomorrow.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Pullo - Cross

1          Mr. Karotkin or Mr. Julian, before we break, do either

2     of you want to raise anything?  We'll start with you, Mr.

3     Karotkin?

4          MR. KAROTKIN:  No, sir.

5          THE COURT:  Mr. Julian?

6          MR. JULIAN:  No, Your Honor.  Thank you.

7          THE COURT:  Okay.  Thank you all for your time and

8     attention.  I'll see you tomorrow morning.

9          MR. SLACK:  Thank you, sir.

10          MR. KAROTKIN:  Thank you, Your Honor.

11          THE COURT:  Thank you.

12          (Whereupon these proceedings were concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                        I N D E X

3    WITNESS                EXAMINATION BY        PAGE

4    Christina Pullo     Mr. Scarpulla        9

5    Christina Pullo     Mr. Abrams           18

6

7                     E X H I B I T S

8    DEBTOR'S         DESCRIPTION              MARKED   ADMITTED

9    A                Attachment to Ms.                   8

10                    Pullo's declaration

11   B1               Attachment to Ms.                   8

12                    Pullo's declaration

13   B2               Attachment to Ms.                   8

14                    Pullo's declaration

15

16

17

18

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1

2                    C E R T I F I C A T I O N

3

4    I, Colin Richilano, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9    _____

10   /s/ COLIN RICHILANO

11

12   eScribers

13   7227 N. 16th Street, Suite #207

14   Phoenix, AZ 85020

15

16   Date:  May 28, 2020

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**ability (1)**
38:16
**able (3)**
5:7;13:17;38:20
**above-captioned (1)**
20:3
**Abrams (73)**
4:23;7:7,8,10,13;
18:6,7,9,11;19:16,19,
21,23,25;20:17,24;
21:1,10;22:4,15,16,17;
23:13,17,18;24:3,4,16,
17;26:20,22,23;27:9,
16,20,23,24;28:7,10,
13,16,24;29:17,19;
30:19;31:2,8,11,14,17,
18;32:21;33:14,18,19;
34:9,16,22,25;35:1,1,
11,13,18,21,23;36:1,3,
19,21,23;37:3,13
**accept (8)**
13:25;14:22,23;
15:12;32:9,11,23;33:5
**accompany (1)**
7:12
**accordance (4)**
32:2,4,12,18
**accorded (1)**
32:5
**accuracy (1)**
8:6
**accurate (2)**
8:4;9:15
**action (1)**
20:3
**actions (2)**
6:8;18:19
**actually (3)**
4:8;6:2;30:8
**address (15)**
33:20,23,23,25,25;
34:3,9,10,14,18,21,23;
35:6,9,15
**administer (1)**
5:17
**admissibility (1)**
8:7
**admitted (1)**
8:9
**advantage (1)**
40:10
**Adventist (1)**
16:14
**advertisement (2)**
36:15,15
**advise (1)**
19:10
**afforded (2)**
32:6,19
**afternoon (1)**

4:7
**again (8)**
4:1;7:5;15:4;20:17;
28:3;30:19;34:21;40:4
**against (1)**
18:5
**agent (1)**
20:19
**agree (2)**
27:9;28:6
**agrees (1)**
28:11
**ahead (9)**
9:8;12:7;13:1;19:7;
24:16;31:1,6,13;35:7
**allegations (1)**
28:18
**allow (1)**
8:8
**almost (1)**
17:15
**alphabetical (1)**
38:8
**amending (1)**
13:12
**among (1)**
24:24
**amongst (1)**
36:12
**amounts (4)**
16:4,6,8,10
**analysis (3)**
13:9,15,20
**answered (1)**
24:19
**apologize (3)**
3:13;30:11;36:3
**appear (1)**
27:14
**appears (2)**
33:6;39:3
**applicable (2)**
9:25;11:1
**appreciate (4)**
3:20;23:5;25:14;
37:12
**appropriate (2)**
11:24;28:5
**approved (3)**
16:13;17:8;19:11
**approximately (7)**
12:11,13,15;13:5;
14:18,21,22
**April (9)**
36:7,9,11,12,12,12;
37:5,7,9
**argue (1)**
4:25
**argument (1)**
4:5
**around (3)**
20:18;24:6;26:25
**ascribed (1)**

16:6
**assist (2)**
25:4,15
**assisted (1)**
24:24
**associated (2)**
28:2;34:1
**assume (3)**
16:24;17:20;39:7
**assumes (1)**
27:5
**assuming (1)**
40:14
**AT&T (1)**
16:14
**attached (1)**
6:19
**attachments (2)**
8:9,11
**attempted (1)**
15:18
**attendees (1)**
38:4
**attention (1)**
41:8
**audio (2)**
3:17;4:3
**available (2)**
10:15;37:15
**aware (30)**
19:13,15,17,17,18,
18;20:15;21:9,16,18;
22:1,5,7,25;23:3,19;
26:7,24;27:1,25;31:12,
13,19,21;34:20;36:2,4,
7;37:4,8
**away (2)**
40:11,12
**awkward (1)**
40:5

## B

**B1 (1)**
8:12
**B-1 (2)**
6:20;33:7
**B2 (1)**
8:12
**B-2 (1)**
6:20
**back (9)**
3:9,16;12:24;15:5;
18:23;20:20;37:15;
39:11,15
**background (2)**
20:22;21:3
**bad (1)**
28:1
**ballot (18)**
9:25,25;15:23;16:7;
25:12,24;29:21;33:2,4,
9,21;34:10,19;35:2,5,6,

9,19
**ballots (15)**
9:21;10:4;12:14;
13:5,24;14:8,9,14,15,
15,18;15:5,9,10,23
**Bankruptcy (3)**
3:4;17:7;19:14
**based (2)**
30:20;40:22
**basic (2)**
17:7;28:22
**basis (2)**
16:11;29:13
**beginning (1)**
37:5
**best (1)**
27:17
**better (1)**
27:17
**beyond (1)**
21:20
**billion (3)**
16:25;17:2,3
**bit (1)**
33:17
**both (3)**
14:23;15:13;38:15
**box (2)**
14:23,25
**break (5)**
40:5,5,10,13;41:1
**brief (2)**
4:25;6:5
**bring (3)**
3:7;4:13;37:17
**broader (1)**
26:4
**brought (3)**
4:2,16;28:19
**burner (1)**
4:12
**business (1)**
3:16

## C

**calculation (1)**
16:1
**CALIFORNIA (2)**
3:1,5
**Call (5)**
3:3;36:15;38:15;
40:6,18
**calling (1)**
27:6
**calls (1)**
29:15
**came (4)**
13:10;25:22;32:8;
33:11
**camera (1)**
40:12
**can (41)**

9,19
**ballots (15)**
9:21;10:4;12:14;
13:5,24;14:8,9,14,15,
15,18;15:5,9,10,23
**Bankruptcy (3)**
3:4;17:7;19:14

3:12;4:3;5:8,9;6:5;
9:19;10:23,23;11:25;
18:14;19:7;21:5,11,23;
24:19;25:7;27:11;29:3;
30:9,21,23;31:3,7,8,12;
34:13,23;35:6,9;37:10,
25;38:21;39:16,24,25,
25;40:1,2,11,12,16
**capability (1)**
5:11
**case (5)**
21:21;24:13;25:9,17;
29:9
**casual (1)**
3:10
**category (1)**
14:20
**cause (1)**
35:22
**CEO (1)**
22:6
**certain (1)**
29:10
**Certainly (3)**
9:24;15:22;39:12
**challenge (1)**
29:9
**change (5)**
34:3,17,23;35:6,15
**changed (1)**
35:9
**changes (3)**
33:20;34:9,10
**characterize (1)**
27:11
**check (2)**
14:24;33:5
**checked (2)**
13:25;14:23
**choice (1)**
38:20
**choose (1)**
38:20
**chose (1)**
38:24
**Chris (1)**
18:24
**Christina (1)**
5:23
**circles (1)**
20:18
**claim (20)**
13:10,12,13;16:4,6,6,
13,14;26:5;30:3,3,10;
31:25;32:2,4,9,13,15,
16,18
**claimant (2)**
18:23;35:5
**claimants (3)**
18:13;22:23;31:20
**claimed (1)**
16:2
**claims (18)**

Case: 19-30088    Doc# 7637    Filed: 05/28/20    Entered: 05/28/20 16:36:57    Page 44
of 50

10:8,10,21,24;11:9,
12;12:10,11;13:11;
14:13;15:1,3,5,17;16:3,
25;26:3;30:8
**clarify (2)**
11:8;24:2
**clear (2)**
13:12,17
**clearly (1)**
13:13
**Clerk (46)**
6:8;10:9,11,16,18;
12:10,22;13:4,8;14:16;
15:18;16:1,5,9;18:16,
19;20:1,5,15,19;21:6,
11;24:20;26:8,25;27:3,
11,15;28:20;29:21;
30:4;31:21;32:1,10;
34:17;35:14;36:13;
37:5,8,17,21;38:5,9,13;
39:1,3
**Clerk's (1)**
25:3
**client (4)**
9:24;10:1,2;14:2
**clients (1)**
14:5
**close (2)**
15:24;33:15
**coming (2)**
3:9;7:25
**commenced (2)**
36:6,8
**commencing (1)**
37:9
**comment (2)**
19:10;37:11
**common (3)**
31:3,4,4
**company (2)**
20:15;25:24
**complain (1)**
17:11
**completed (4)**
33:12,13;36:7,9
**completely (1)**
9:15
**concerned (1)**
23:23
**concerning (1)**
29:14
**concerns (1)**
27:1
**conclude (1)**
38:1
**concluded (1)**
41:12
**conclusion (1)**
29:5
**conduct (2)**
4:5;22:22
**conflicts (4)**
22:21,24,25;23:4

**confusion (1)**
3:13
**connection (1)**
39:3
**consider (1)**
39:11
**contact (1)**
15:18
**convenience (1)**
40:13
**conveyed (1)**
27:22
**corporate (1)**
6:8
**Corporation (2)**
3:6;18:19
**corrected (1)**
27:17
**correctly (1)**
3:18
**counsel (5)**
3:7,8;23:21;24:20;
40:23
**count (2)**
17:9;29:14
**counted (4)**
15:17;33:10,11;35:3
**couple (1)**
9:12
**course (3)**
9:3,3;19:17
**Court (134)**
3:3,4,4,5,8,11,24;
4:17,20;5:5,8,12,21,24,
25;6:11,14,21;7:5,7,9,
11,14,18,22,23,25;8:6,
18,22,24;9:3,5,8;11:6,
8,13,15,17,19,21;12:1,
3,6,18,20;15:4,8,10,12,
15;16:13,17,19,22;
17:1,4,6,17,19,21,24;
18:1,4;19:7,12,16,20,
22;20:17,25;21:22,25;
22:2,10,13,15;23:8,10,
14,23;24:2,5,9,16;
26:11,14,17,19;27:9,
19,21;28:6,8,12,14,19,
21;29:3,18;30:16,18;
31:4,10,12,15;33:14;
34:8,25;35:16,19,22,
24;36:19,22,25;37:13,
20,23;38:7,11,14;39:2,
5,14,18,20,22,25;40:9,
17;41:5,7,11
**courtroom (5)**
4:2,14;5:14,17;38:15
**Creditors (2)**
17:9,9
**cross-examination (3)**
8:15;9:9;18:10
**cross-examine (3)**
4:23;8:8;12:25
**current (2)**

33:25;34:14

## D

**database (1)**
33:24
**date (1)**
8:13
**day (2)**
3:10;9:11
**day-to-day (1)**
18:19
**deadline (3)**
7:22;15:24,24
**deal (1)**
30:23
**dealing (2)**
16:7;18:23
**debtor (1)**
25:8
**debtors (14)**
4:9;7:20;20:19;
24:24;25:4,10,15,15,
16,16,18,20,22;26:4
**debtors' (3)**
7:22;23:21;24:20
**Debtor's (1)**
8:12
**decided (1)**
28:4
**decision (4)**
29:3,5,10,13
**declaration (26)**
6:3,9,18,19;7:12,17;
8:9,11,20;9:13,20;
10:20,21,22;13:23;
20:2;21:20;23:19;24:4,
10,13,23;25:1;29:20,
23;32:20
**declarations (1)**
24:14
**deluge (2)**
7:23,25
**Dennis (1)**
3:6
**departed (1)**
3:10
**deputy (2)**
5:17;38:15
**describe (3)**
25:7;27:18,19
**described (1)**
17:14
**describing (2)**
23:3;35:4
**description (1)**
18:15
**designate (2)**
28:1;29:10
**designated (1)**
20:19
**determination (2)**
13:14,17

**determinations (1)**
13:18
**determine (1)**
13:7
**difference (1)**
16:22
**different (5)**
10:24;16:8;26:3,24;
30:14
**direct (1)**
6:4
**directed (2)**
7:17;19:10
**directives (2)**
10:2,3
**directly (3)**
14:9;25:11,22
**disagrees (1)**
28:11
**disclosure (3)**
36:13,16;37:6
**disconnecting (1)**
37:18
**discuss (1)**
10:25
**disenfranchising (1)**
13:21
**disposed (1)**
28:8
**distribution (1)**
24:25
**District (1)**
3:5
**divide (1)**
4:8
**division (5)**
20:16;21:6,12,14,15
**docket (7)**
26:8;27:1,2,10,15;
34:17;35:14
**dollar (1)**
16:13
**dollars (2)**
16:2,25
**done (2)**
30:22,22
**down (2)**
32:21,22
**dropped (1)**
39:4
**Duff (6)**
21:6,6,12,14,15,16
**duplicate (6)**
10:21;11:9,9,13;
13:15;30:23
**duplicates (4)**
10:13;11:12;13:8,16
**duplicative (2)**
10:22,23

## E

**ears (1)**

31:16
**either (3)**
25:23;38:24;41:1
**elected (1)**
17:11
**election (1)**
17:10
**electronic (1)**
8:20
**electronically (2)**
8:23;9:2
**element (1)**
8:7
**else (1)**
4:1
**email (2)**
25:18;36:4
**emails (1)**
18:23
**end (1)**
24:11
**ensure (2)**
30:7;33:20
**ensuring (2)**
22:20;30:14
**entitled (1)**
29:22
**entry (2)**
27:13,21
**err (1)**
13:20
**escort (1)**
37:14
**established (2)**
27:5,7
**estimate (1)**
33:16
**even (5)**
27:14;28:14;32:13
**everybody (2)**
20:18;40:12
**everyone (4)**
3:13;4:1;6:6;29:8
**evidence (4)**
8:10,12;30:13,17
**exact (2)**
13:10;33:15
**exactly (1)**
14:19
**examine (1)**
18:7
**example (2)**
34:21,22
**excluded (10)**
13:11,14,18,22,24;
14:1,18,20;15:13;33:5
**exclusion (1)**
13:18
**excuse (2)**
40:16,21
**executed (1)**
29:22
**Exhibit (5)**

Case: 19-30088    Doc# 7637    Filed: 05/28/20    Entered: 05/28/20 16:36:57    Page 45
of 50

6:20,20,20;8:12;33:6
**exhibits (4)**
6:19,25;7:11,22
**expect (1)**
26:21
**experienced (1)**
28:22
**explain (3)**
21:11;35:10,10
**explanation (1)**
34:12
**extent (5)**
13:12,13,16,19;
31:22
**eyes (2)**
28:23;31:16

**F**

**fact (2)**
27:6;28:7
**facts (4)**
27:5;30:17,20;35:5
**fact's (1)**
27:7
**faith (1)**
28:1
**familiar (6)**
19:2;24:7,10,12,19;
32:24
**family (2)**
31:24;32:4
**fan (3)**
23:6,10,15
**far (1)**
21:20
**February (7)**
34:3,9,10,18,23;35:6,
14
**few (1)**
37:18
**filed (6)**
6:22,22;10:9,10;
16:3;32:3
**final (3)**
13:19;33:3,8
**find (1)**
11:2
**fine (4)**
5:13;7:13,18;8:25
**finished (1)**
5:2
**fire (10)**
9:12,21;10:2,10;
14:9;15:19;16:12;32:3,
5,17
**fires (1)**
18:13
**firms (2)**
9:25;10:6
**first (5)**
3:10,22;6:7;28:15;
38:8

**five (9)**
8:15;30:5,6,8;31:24;
32:1,8,15;40:12
**fix (1)**
3:15
**fixed (1)**
3:15
**flagged (1)**
13:16
**focus (1)**
20:20
**folks (1)**
18:24
**followed (1)**
3:14
**form (6)**
11:4;19:6;23:22,23;
26:10;32:16
**formerly (1)**
18:18
**forth (1)**
18:23
**forward (2)**
25:12;28:1
**foul (1)**
35:25
**Francis (1)**
9:11
**FRANCISCO (1)**
3:1
**free (2)**
22:21,24
**front (4)**
4:11;6:9,12;9:14
**functions (1)**
20:20
**further (2)**
17:16;32:7

**G**

**general (1)**
26:2
**generally (4)**
14:7;18:21;19:9,14
**gets (1)**
21:4
**given (3)**
16:13;25:7;29:25
**giving (2)**
10:4;18:15
**global (2)**
6:8;18:18
**God (1)**
9:23
**goes (1)**
21:20
**Good (2)**
3:8;9:11
**Gotshal (1)**
24:22
**Great (1)**
18:22

**group (6)**
14:10;18:17,18,19;
26:6,7
**guess (4)**
4:17;18:14;23:5;
36:17

**H**

**hand (2)**
5:19;7:3
**handful (1)**
14:23
**handing (1)**
10:3
**handled (1)**
14:7
**Hang (1)**
12:20
**happy (1)**
40:15
**hardcopy (1)**
8:24
**harm (1)**
35:25
**head (1)**
18:17
**hear (10)**
4:3;29:1;37:25;
39:16,24,25;40:1,2,19,
20
**heard (3)**
4:10;31:15,15
**hearing (2)**
38:2;40:23
**held (1)**
21:16
**Hello (1)**
39:21
**help (2)**
29:2,4
**helpful (1)**
7:23
**hereby (1)**
8:11
**hold (1)**
33:14
**holder (1)**
29:22
**holding (1)**
21:16
**Hon (1)**
3:6
**Honor (48)**
3:7,21;4:16;5:5;
6:17;7:4,8,10,13,19,21;
8:17;9:7;11:4,22;12:5;
13:2;16:11;18:9,9;
19:6,23;21:1,4,19;
23:17;26:10;27:4,16;
28:3,4;29:17;30:11;
31:2;34:6;35:12;36:3,
23;37:17,19;38:5,10;

**39:1,10;40:7,15;41:6,
10
**hoping (1)**
3:18
**house (1)**
31:25
**household (7)**
30:2,5,6,6,8;31:25;
32:17
**hundred (1)**
17:9
**hypothetical (1)**
35:7
**hypotheticals (4)**
23:6,10,15;30:19

**I**

**icon (1)**
38:18
**ID (2)**
13:10;32:6
**idea (1)**
30:12
**important (2)**
22:21,22
**improperly (1)**
28:1
**inappropriate (1)**
27:8
**include (1)**
32:17
**included (8)**
10:1;14:13,14;15:1,
3,20;33:3,8
**including (1)**
14:19
**indicate (4)**
14:24;20:2;33:3,7
**indicated (4)**
4:25;14:3;23:20;
32:16
**indicates (2)**
24:5;29:21
**indicating (3)**
30:2;33:1;36:5
**indication (3)**
30:3;32:22;34:19
**indiscernible (1)**
12:17
**individual (2)**
32:6,19
**information (3)**
9:14;10:15;11:24
**input (1)**
33:24
**inquiry (2)**
25:10,22
**instructed (3)**
25:16;30:7;32:3
**instruction (1)**
14:4
**insure (1)**

29:21
**integrity (2)**
22:18;23:2
**intend (1)**
40:8
**interrupt (1)**
34:25
**interruption (1)**
35:24
**into (16)**
4:2,13;6:18;8:12;
13:20;19:14;25:4,8,13,
16,20,22,25;26:5;
33:24;38:11
**introduction (1)**
6:5
**involved (2)**
26:9;31:22
**irregularities (10)**
25:5,8,17,21;26:4,9,
25;27:2,6,7
**irregularity (2)**
27:11,14
**irrelevant (2)**
29:7,16
**issue (5)**
4:6;19:20;25:20;
26:2;30:15
**issues (8)**
21:21;23:1;26:1,24;
27:1;28:2,17,18

**J**

**January (1)**
21:17
**joinders (1)**
28:2
**joining (1)**
37:19
**Judge (1)**
23:5
**Julian (3)**
41:1,5,6
**jumping (1)**
15:5

**K**

**KAROTKIN (6)**
17:5,6;41:1,3,4,10
**keep (3)**
8:1;15:4,5
**kept (1)**
6:21
**Kesler (2)**
18:24;36:5
**kind (1)**
6:4
**knew (2)**
29:12;35:8
**knowledge (5)**
22:8;31:3,4,4;34:11

Case: 19-30088   Doc# 7637   Filed: 05/28/20   Entered: 05/28/20 16:36:57   Page 46
of 50

**knowledgeable (2)**
10:19;16:10
**known (1)**
18:18
**knows (12)**
4:2;6;7;7:21;20:18;
23:11;27:22;29:9,12;
30:21;31:6,6,7

**L**

**lack (1)**
23:2
**language (1)**
27:17
**last (5)**
17:18;33:11,12;
38:14;40:18
**late (11)**
14:13,14,15,15,17,
19,20;15:1,3,8,10
**later (5)**
4:6,12;36:14,16;37:6
**law (2)**
9:25;10:6
**lawyer (1)**
11:3
**lawyers (2)**
28:23,24
**learned (1)**
29:12
**least (3)**
4:24;21:17;22:19
**leaving (1)**
4:24
**led (1)**
19:14
**legal (1)**
18:14
**legally (1)**
29:11
**less (1)**
18:14
**lesson (1)**
17:7
**lieu (1)**
6:3
**lights (1)**
12:23
**line (8)**
9:20;16:15;20:2,9,
13;21:19;25:15;29:20
**lines (1)**
24:23
**list (6)**
4:14,15;9:24;10:1,2;
32:3
**listen (1)**
40:9
**lists (1)**
14:2
**literally (1)**
27:19

**little (4)**
18:15;20:16;33:17;
40:24
**live (1)**
6:4
**logged (2)**
33:20;34:23
**long (1)**
29:14
**look (9)**
9:19;25:4,8,13,16,20,
24;26:3,5
**looking (1)**
8:19
**looks (1)**
39:15
**lost (1)**
39:3
**lot (1)**
28:24

**M**

**mail (1)**
34:2
**mailed (2)**
34:14;37:8
**mailing (2)**
34:15;37:10
**mailings (1)**
18:20
**making (3)**
12:23;13:17;30:12
**managing (1)**
22:23
**many (5)**
10:8,13;11:11;14:16,
20
**March (5)**
36:5,6,8,11;37:9
**master (6)**
9:21,25,25;10:4;
15:22,23
**materials (10)**
25:1;33:22,25;34:2,
5,24;36:8,14;37:9,10
**matter (6)**
3:6;10:25;17:2,3,12,
13
**matters (1)**
17:13
**MAY (9)**
3:1;4:15;28:25;33:1;
34:19,20,24;36:5,5
**Maybe (6)**
3:24;7:24;8:2;30:25;
39:10,15
**mean (6)**
9:21;19:3;23:25;
24:3;31:5;40:11
**means (4)**
24:1;29:6,7;31:5
**meant (1)**

27:22
**member (2)**
30:2,5
**members (6)**
30:5,6;31:24;32:4,
17,17
**microphone (7)**
5:9,15;7:1;12:22;
37:22;38:1,18
**might (6)**
23:14,14;24:11;
28:23;31:5;35:24
**million (2)**
21:17,17
**mind (1)**
27:10
**minute (5)**
12:20;33:15;38:22,
23;39:14
**minutes (2)**
8:15;40:13
**moment (2)**
38:6,19
**Montali (3)**
3:6;23:6;29:1
**more (7)**
6:16;19:24;26:2;
30:23;35:11;36:24;
40:24
**morning (2)**
3:8;41:8
**most (4)**
10:18;11:1;16:9;
33:25
**motion (3)**
27:25;28:4,11
**motions (1)**
26:8
**move (3)**
6:18;17:15;36:3
**moved (1)**
38:11
**much (1)**
37:12
**must (1)**
29:21
**mute (2)**
12:22,25
**muted (3)**
38:17,18;40:3
**myself (1)**
23:7

**N**

**name (10)**
5:22;9:11;16:20;
32:21;35:9;37:16;38:8,
8,18;40:19
**national (1)**
17:10
**nature (1)**
18:14

**necessarily (1)**
31:5
**need (13)**
4:13,20;6:14,16;7:1,
2,7;26:19;29:5;33:16;
37:23;40:4,16
**needed (2)**
25:11,24
**neither (2)**
13:24;15:13
**new (1)**
34:20
**next (2)**
31:1;33:16
**nobody (1)**
7:21
**noise (1)**
12:23
**non-lawyers (1)**
28:24
**nonsubmission (1)**
14:5
**Northern (1)**
3:5
**note (1)**
15:20
**notice (1)**
33:25
**number (5)**
16:2;26:8,24;28:2;
30:1

**O**

**oath (1)**
5:18
**object (7)**
7:9,10;8:3;16:11;
21:19;27:4;28:3
**objected (1)**
7:21
**objecting (1)**
30:11
**objection (13)**
6:23,25;7:4,6;11:4,
21;17:22;19:6;21:22;
23:22;26:10;29:16;
34:6
**objectionable (1)**
30:13
**Objection's (1)**
30:18
**observed (1)**
31:15
**obviously (1)**
19:3
**occur (1)**
34:5
**occurred (2)**
31:23;37:5
**o'clock (1)**
40:25
**off (1)**

12:25
**old (1)**
3:14
**one (17)**
3:23;17:8;18:12;
24:14,15;28:22;30:9;
31:25;32:9,13,15,19;
33:4,7;35:2,2;38:5
**one-off (1)**
26:1
**ones (1)**
10:5
**only (9)**
15:9;16:18,20;17:2;
30:25;31:25;32:9,13;
37:11
**oOo- (1)**
3:2
**opening (1)**
6:3
**operations (1)**
18:20
**opponents (1)**
28:25
**opportunity (1)**
8:8
**order (1)**
3:3
**organization (4)**
20:5;22:5,21;28:20
**originally (1)**
4:14
**out (12)**
9:24;11:2;17:8;
18:14;19:11;33:24;
34:1,14;37:7,9,14;39:4
**outreach (1)**
15:25
**overrule (1)**
21:22
**oversee (1)**
18:19
**own (2)**
31:16;32:19
**owned (1)**
21:12

**P**

**package (1)**
34:11
**page (8)**
9:19;20:1,9,13;
24:23;29:20;32:20,21
**panel (8)**
3:9;4:3,24;5:1;6:24;
37:14;38:11,17
**panelist (1)**
38:9
**panelists (1)**
39:4
**papers (1)**
7:25

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(4) knowledgeable - papers

Page 47
of 50

Case: 19-30088    Doc# 7637    Filed: 05/28/20    Entered: 05/28/20 16:36:57    Page 47

**Parada (6)**
4:13,20;5:3;18:1;
37:15;38:3
**paragraph (2)**
9:14,17
**part (3)**
10:1;22:19;25:3
**participants (1)**
4:9
**participant's (1)**
18:6
**participate (1)**
4:10
**particular (2)**
14:20;35:5
**parties (1)**
4:22
**party (5)**
20:2,3,6,12,16
**people (4)**
22:8;32:15;36:13;
40:5
**per (3)**
16:13;30:10;37:6
**performed (1)**
13:9
**permissible (2)**
8:19;9:1
**permission (1)**
6:9
**permitted (1)**
23:9
**person (7)**
10:18;16:9,21;20:14;
25:23;34:24;35:8
**personal (1)**
40:13
**personally (2)**
20:4;21:9
**PG&E (7)**
3:6;18:13;19:4,13,
14;21:7,17
**phase (1)**
4:5
**Phelps (6)**
21:6,7,12,14,15,16
**place (1)**
28:15
**plan (13)**
13:5;14:22,22,23;
17:12;19:5,10;29:22;
32:8,9,23;33:1,16
**plans (2)**
17:8;19:11
**play (2)**
31:3,8
**please (7)**
5:15,18,21;9:19;
12:20;33:17;37:21
**point (3)**
20:1;27:18;40:7
**politely (1)**
18:5

**population (1)**
16:7
**positions (1)**
6:21
**posted (6)**
26:8,25;27:2,10;
34:17;35:14
**potential (1)**
13:15
**prefer (1)**
8:22
**prepared (1)**
4:6
**pre-populated (6)**
9:20,22;10:2;14:2,
10;15:17
**present (1)**
4:25
**presented (1)**
29:7
**president (2)**
6:8;17:11
**presiding (1)**
3:6
**presume (2)**
4:1;6:15
**previously (1)**
22:25
**Prime (39)**
6:8;10:9,10,15,18;
12:10;13:4,8;14:16;
15:18;16:1,5,9;18:16,
19;20:1,5,15,19;21:6,
11;24:20;25:3;26:8,25;
27:3,11,15;28:20;
29:21;30:4;31:21;32:1,
10;34:17;35:14;36:13;
37:5,8
**principles (1)**
28:22
**print (1)**
36:14
**printed (1)**
8:21
**prior (1)**
40:23
**probably (2)**
29:5,7
**problem (1)**
35:22
**procedures (5)**
16:12;32:2,5,12,19
**proceedings (1)**
41:12
**process (8)**
18:22;22:19,22,24;
23:1;25:23;28:18;30:1
**productive (1)**
20:22
**proof (4)**
13:13;32:4,16,18
**properly (3)**
33:7,12,13

**proponents (1)**
4:9
**provided (2)**
10:1,3
**public (1)**
18:17
**Pullo (42)**
4:13,21;5:14,19,23,
24;6:7,12;8:18;9:11;
11:17;13:4;17:14;18:7,
12;19:8;20:21;21:5,23;
22:13,18;24:12,18;
26:12;27:12,25;28:5;
29:3,12,20;31:19;35:4;
36:2;37:1,1,4;38:25;
39:5,9,9;40:16,21
**Pullo's (5)**
6:3;7:12;8:8,11;
21:20
**purposes (1)**
31:6
**purview (2)**
18:16;22:20
**put (6)**
3:21;4:14;12:21;
27:15,25;30:24

### Q

**quarter-way (2)**
32:21,22
**quite (1)**
40:4

### R

**raise (3)**
5:19;7:3;41:2
**ran (1)**
23:1
**reach (1)**
29:4
**read (2)**
24:14;31:15
**ready (1)**
9:7
**realize (1)**
4:17
**really (3)**
3:11;28:4;40:4
**reask (1)**
24:19
**reason (2)**
21:3;34:20
**reasons (1)**
14:19
**receipt (1)**
33:1
**receive (4)**
33:21,23;34:13,24
**received (17)**
8:12;11:12;12:10,11,
13,15;13:4;14:4,9,10,

16;15:22,23;25:10,18;
30:1;36:4
**recess (2)**
39:11;40:24
**reconvene (1)**
40:25
**record (5)**
5:22;6:18;30:25;
34:1,15
**records (1)**
33:4
**redirect (5)**
3:22;39:9,12;40:8,16
**refer (1)**
27:12
**referring (2)**
20:10,14
**regarding (5)**
10:24;13:18;25:11,
22;27:2
**regardless (1)**
15:25
**register (2)**
10:24;16:6
**reject (10)**
13:25;14:22,23;
15:12;32:8,11,23;33:3,
5,8
**rejected (1)**
33:1
**rejecting (2)**
12:19;13:5
**relationship (7)**
21:11,13;22:6;23:20,
25;24:8,20
**relevance (8)**
16:15,19,22;28:7,9,
25;29:1,2
**relevancy (2)**
16:12;21:4
**relevant (5)**
20:25;21:2;29:6,11,
22
**remarks (1)**
6:3
**Remember (2)**
6:3,22
**remove (1)**
18:4
**rephrase (2)**
26:19,22
**replacement (2)**
25:12,24
**reported (1)**
18:25
**REPORTER (3)**
3:4;5:5,21
**represent (1)**
9:12
**representing (1)**
13:10
**request (1)**
29:9

**respond (1)**
25:25
**responded (2)**
28:20;34:18
**response (1)**
4:4
**responses (1)**
4:9
**responsibilities (1)**
18:16
**responsibility (1)**
25:4
**returned (1)**
14:2
**reviewed (1)**
13:11
**reviewing (1)**
9:16
**rid (1)**
13:8
**right (28)**
3:8;5:9,12,14,19,24;
6:2,14;7:3;9:5;10:5,20;
11:19;12:2,3,18;13:1;
15:14;22:2,12,15;
24:16;26:14;37:20;
38:8,14;39:5;40:21
**ring (1)**
36:9
**robe (3)**
3:12,20,24
**robocall (1)**
31:8
**robocalls (5)**
30:2,12;31:13,13,19
**roll (1)**
28:23
**room (1)**
18:6
**rule (2)**
3:14;30:9

### S

**sake (1)**
11:9
**same (1)**
13:10
**SAN (1)**
3:1
**saw (2)**
28:20;36:14
**saying (2)**
20:7;29:15
**Scarpulla (50)**
4:23;7:1,2,4,6;8:14,
17;9:6,7,10,11;11:6,7,
8,11,14,16,18,20;12:2,
4,8,9;13:1,2,3;15:4,7,9,
11,14,16;16:16,17,18,
19,20,24;17:2,4,5,6,16,
18,20,22,25;18:2,5,8
**schedule (1)**

Case: 19-30088    Doc# 7637    Filed: 05/28/20    Entered: 05/28/20 16:36:57    Page 48
of 50

40:22
**Schepper (1)**
18:24
**screen (5)**
5:2,3;12:23;37:16;
40:19
**secret (1)**
3:19
**securities (1)**
18:18
**segment (1)**
5:2
**send (4)**
19:11;33:24;34:1;
37:6
**sends (1)**
30:4
**sent (3)**
9:24;10:5;36:13
**sentence (1)**
20:7
**services (1)**
24:25
**session (1)**
3:5
**several (1)**
9:12
**Shai (2)**
22:6;24:21
**shareholder (1)**
21:7
**shares (1)**
21:17
**short (3)**
39:11,13;40:5
**showing (2)**
38:4,17
**shows (1)**
38:18
**side (1)**
13:21
**similar (1)**
25:18
**simply (1)**
14:2
**single (1)**
26:5
**single-claimant (1)**
26:1
**situation (3)**
19:15;25:13;35:4
**size (1)**
21:7
**Slack (32)**
3:21;4:16,20;6:1,6,
15,17;11:4,21,22;
16:11;19:6;21:19;
23:22,24,25;26:10;
27:4;28:3,6;30:11,17;
34:6;39:7,7,8,8,10;
40:3,7,15;41:9
**smoothly (1)**
40:24

**solicitation (14)**
18:17,20;19:11;23:1;
24:25;32:2,5,18;33:22,
24;34:4,24;36:8;37:10
**solicitations (2)**
36:6;37:4
**solicited (2)**
28:1;36:11
**soliciting (1)**
32:12
**someone (4)**
3:16;25:11;30:4;
35:8
**sorry (15)**
7:10;14:15,15;15:7,
11;20:8,11;21:1;24:18;
27:16;31:2;32:15;
33:21;36:21,23
**speak (3)**
3:17;5:9;10:23
**spec (1)**
34:7
**specific (3)**
19:24;30:20;35:11;
36:24
**specifically (3)**
20:4;23:21;24:15
**specifics (1)**
35:8
**speculate (6)**
22:8,11;23:14,15;
34:13;38:25
**speculation (1)**
34:8
**splitting (1)**
4:19
**stand (2)**
5:16;27:16
**Stanislav (2)**
18:24;36:4
**start (3)**
9:13;18:14;24:9;
27:13;41:2
**state (2)**
5:21;24:24
**stated (1)**
22:25
**statement (4)**
30:12;36:14,16;37:7
**statements (1)**
37:6
**stay (1)**
5:1
**still (3)**
4:2;9:14;27:4
**straight (1)**
15:6
**subject (4)**
4:7;10:19,25;16:10
**subjective (1)**
13:18
**subjectivity (1)**
13:20

**submitted (8)**
14:4;17:8,14;24:5;
33:2,7;35:2,2
**substantial (1)**
21:7
**success (1)**
3:19
**supervise (1)**
18:20
**support (1)**
7:11
**supporting (1)**
8:9
**supposed (2)**
36:22;38:8
**sure (6)**
6:11;9:1;13:9;18:17;
24:1,18
**surprise (1)**
32:25
**sustained (4)**
17:23;29:16;30:18,
18
**sworn (1)**
5:20
**system (2)**
33:4,20

**T**

**tabulation (6)**
13:11,19,22;33:3,6,8
**tabulations (1)**
18:21
**talk (1)**
12:24
**talked (1)**
35:16
**talking (5)**
15:9;20:4,5,7;24:15
**talks (2)**
10:22;25:15
**team (1)**
18:20
**Ted (1)**
7:19
**ten (1)**
8:15
**tentative (1)**
4:7
**terms (1)**
25:21
**test (2)**
29:1,2
**testify (1)**
23:11
**testifying (2)**
39:6;40:22
**testimony (5)**
6:4;11:23;28:5,9;
29:14
**therefore (1)**
29:16

**thinking (1)**
4:7
**though (1)**
32:13
**thought (1)**
31:2
**three (6)**
4:22;6:19,24;8:9;
32:8,11
**tie (1)**
3:21
**tied (1)**
34:14
**timeline (1)**
36:9
**times (3)**
4:25;28:24;37:18
**today (5)**
3:21;4:12;11:25;
29:11;36:22
**today's (2)**
28:9;40:23
**told (1)**
30:22
**tomorrow (4)**
3:23,25;40:25;41:8
**total (3)**
10:8;16:2,2
**totally (1)**
8:25
**track (1)**
6:21
**treat (2)**
32:1,10
**trial (2)**
3:10;4:6
**true (1)**
36:9
**try (2)**
19:23;38:6
**trying (5)**
27:17;34:22;36:17;
38:21;40:9
**Tsekerides (8)**
3:12,20;4:4,15,19;
7:19,19;8:5
**turn (3)**
5:6;12:24;18:7
**TV (1)**
36:15
**twenty-two (1)**
24:6
**two (5)**
4:24;23:6;32:8,11;
33:4

**U**

**Uh-hum (1)**
17:1
**ultimately (1)**
29:13
**unclear (1)**

20:16
**Under (1)**
16:12
**Understood (2)**
26:22;28:17
**undertake (1)**
11:23
**undertaking (1)**
16:16
**unique (1)**
32:6
**unless (1)**
38:16
**unmute (17)**
5:8,15;6:1,1;7:1,2,7;
18:6;37:20,21,23,25;
38:6,16,16;39:8,8
**unmuted (1)**
39:17
**up (9)**
3:17;4:8;8:1,14;
12:23;17:15;25:5;
28:19;33:16
**update (2)**
33:23,23
**upon (2)**
30:20;40:22
**use (4)**
5:4,13;9:20;27:17

**V**

**valid (1)**
33:2
**various (2)**
14:19;20:20
**vehicle (1)**
36:18
**version (2)**
8:20;19:11
**vice (1)**
6:7
**victim (9)**
9:21;10:2,10;14:9;
16:12;18:13;32:3,5,17
**victims (6)**
9:12;15:19;19:4;
22:22;30:1;33:21
**video (5)**
3:17;5:4,6,11,13
**view (1)**
9:1
**voice (1)**
6:25
**volume (1)**
39:19
**vote (29)**
10:21;14:3,4,24;
15:24,24;16:13,16;
17:8,9,10,12;19:2;
29:14,22;30:3,6,10;
31:20;32:6,6,19,22;
33:8,21;34:4;36:7,11,

Case: 19-30088    Doc# 7637    Filed: 05/28/20    Entered: 05/28/20 16:36:57    Page 49
of 50

16
**voted (2)**
33:10,11
**voter (3)**
13:10,21;32:6
**votes (26)**
10:22,23;11:10,13;
12:11,13,14,14,19;
13:9;14:21;17:13;
19:20,22;20:21;28:1;
29:10;30:5,23;31:24;
32:1,8,11,11;36:13;
37:4
**voting (18)**
16:8,12;19:5;21:21;
22:19,22,23;25:4,7,17,
21,23;26:9,25;27:2;
28:17,18;29:25

## W

**Waisman (2)**
22:6;24:21
**Waisman's (4)**
23:19;24:4,10,12
**Wait (5)**
8:6,18;17:6;38:19;
39:14
**waiting (1)**
4:2
**walk (2)**
40:11,12
**Wallace (34)**
4:21,23;5:3,6,8,11;
7:14,16,24;8:2,6;9:23;
10:20;12:16,21;37:15,
21,23,25;38:3,15,24;
39:15,16,17,19,20,21,
22,24,25;40:2,18,20
**Wallace's (1)**
40:18
**wants (1)**
30:14
**wardrobe (1)**
3:10
**waste (2)**
19:16;35:19
**way (3)**
27:19;28:24;29:14
**WEDNESDAY (1)**
3:1
**week (2)**
36:17;37:6
**weigh (1)**
28:10
**Weil (1)**
24:21
**welcome (2)**
3:9;5:25
**weren't (2)**
26:2;34:20
**What's (3)**
16:19,22;21:13

**Whereupon (1)**
41:12
**whole (2)**
30:12;38:23
**who's (1)**
4:2
**wildfires (1)**
19:14
**William (1)**
32:21
**wish (1)**
30:24
**withdraw (1)**
12:4
**within (2)**
18:15;22:5
**without (2)**
13:17;30:3
**witness (28)**
3:22;5:20,23;6:7,13;
8:19,23,25;9:4;11:22,
23,25;18:3;21:9,24;
22:1,3,12,14;23:11,16;
24:14;26:13,16,18,20;
30:21;39:23
**word (1)**
27:13
**words (1)**
9:20
**wore (1)**
3:20
**work (1)**
3:18
**worked (3)**
24:5,21,21
**working (1)**
38:24
**wrap (1)**
33:16
**wrong (2)**
21:5;30:9
**wrote (1)**
9:21

## Y

**years (1)**
24:6
**yesterday (2)**
3:14;4:5

## 1

**1 (4)**
9:14,17;20:1,13
**1,000 (1)**
26:3
**1,100 (1)**
14:21
**1,978 (2)**
14:18,21
**1.8 (1)**
21:17

**10 (3)**
26:2;32:20;40:25
**100 (3)**
16:25;17:3;26:3
**101 (1)**
17:7
**137 (1)**
39:17
**14th (1)**
33:1
**15 (1)**
24:23
**150 (1)**
14:22
**16 (1)**
24:24
**1-point (1)**
21:16
**1st (1)**
36:12

## 2

**2 (1)**
24:23
**20 (3)**
20:2,9,13
**2018 (1)**
21:18
**2020 (1)**
3:1
**27 (2)**
3:1;9:20
**2nd (1)**
36:12

## 3

**30th (3)**
36:6,8;37:9
**3rd (2)**
36:5,12

## 4

**400 (1)**
40:5
**40-so-odd-thousand (1)**
17:13
**44,000 (1)**
12:13
**44,900 (2)**
12:11;13:7
**4th (1)**
36:12

## 5

**5 (2)**
9:19;29:20

## 6

**6,100 (2)**
12:15;13:5

## 7

**7 (1)**
29:20
**730 (1)**
14:24

## 8

**8,100 (4)**
13:24;14:1;15:17,21
**87,000 (5)**
10:10,13;11:11;
12:10;16:2
**8th (4)**
36:7,9;37:7,9

## 9

**9 (1)**
14:18

Case: 19-30088    Doc# 7637    Filed: 05/28/20    Entered: 05/28/20 16:36:57    Page 50
of 50