**EXHIBIT A**

Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

and

Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION**<br>-and-<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS LIMITED OBJECTION TO PLAN CONFIRMATION**<br><br>**Date: June 3, 2020**<br>**Time: 10:00 a.m. (Pacific Time)**<br>**Place: Courtroom 17**<br>450 Golden Gate Ave., 16th Fl.<br>San Francisco, CA 94102<br><br>Related to: Dkt. Nos. 7300, 7528 |

The Official Committee of Unsecured Creditors appointed in the above-captioned cases (the "Creditors' Committee") hereby submits this supplemental brief in response to the *Plan Proponents' Joint Memorandum of Law and Omnibus Response in Support of Confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* [Docket No. 7528] (the "Debtors' Reply"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1. On reply, the Debtors advance an argument for the first time: that all contingent claims for indemnification and contribution—except those belonging to the Debtors' own directors, officers, and employees—are to be disallowed summarily, without further order from the Court, by operation of section 502(e)(1)(B) of the Bankruptcy Code. If this is indeed how the Plan[1] works, it is not presently confirmable under section 1129(a)(1) because it would strip ***purportedly unimpaired creditors*** of their legal rights while depriving them of the ability to vote on the Plan.

2. In this supplemental brief, the Creditors' Committee raises three points to assist the Court in evaluating the parties' positions on this issue.

3. *First*, the Debtors are attempting to exercise their assumption powers in an impermissible manner. Namely, the Debtors purport to use the act of ***assumption*** as a vehicle to automatically invalidate otherwise valid and enforceable provisions of an assumed contract regardless of whether the applicable claimant preserved its right to pursue claims thereunder. At the same time, the Debtors seek to vindicate (and even insulate from challenge) identical contractual provisions that inure to the benefit of the Debtors' own directors and officers.

4. *Second*, the concerns expressed by Congress when it enacted section 502(e)(1)(B) are not implicated here. Section 502(e)(1)(B) is designed to prevent duplicative claims against an insolvent estate. But the contingent claims for indemnification at issue here are not duplicative:

---

[1] *See Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated May 22, 2020* [Docket No. 7521] (as it may be amended, modified or supplemented from time to time, and together with any exhibits or schedules thereto, the "Plan"). Capitalized terms not defined herein have the meanings ascribed to them in the Plan.

the Debtors' liability to the Fire Victims, which is being settled under the Plan,[2] is distinct from liability a Vendor[3] might have to the Fire Victims. And these are solvent estates.

5. *Finally*, the Debtors ignore the operation of section 502(e)(2). That section provides that, while certain contingent claims may be subject to disallowance (through the claims reconciliation process), they "**shall be determined, and shall be allowed**" once they become fixed—*i.e.* once payments, for which the Debtors may be liable, are made to third parties. 11 U.S.C. § 502(e)(2) (emphasis added). The Debtors' attempt to permanently disallow and discharge such claims is therefore inappropriate.

## SUPPLEMENTAL BRIEF

**I.  The Debtors Seek To Use Assumption of Executory Contracts In An Unprecedented Manner.**

6. Within the Debtors' 2,000+ page Plan Supplement[4] is the following paragraph:

> **Other Indemnification Obligations**. Except as set forth in Section 8.4 of the Plan with respect to the D&O Indemnity Obligations, *the assumption* by the Debtors or Reorganized Debtors, as applicable, of all other executory contracts or unexpired leases pursuant to the Plan *shall result in the full release and satisfaction of any and all contingent pre-petition indemnification obligations arising under the terms of any such agreements* and any proof of Claim premised on a pre-petition contractual indemnification obligation alleged to be owed by the Debtors or Reorganized Debtors *shall be deemed disallowed and discharged* on the Effective Date, without further notice to or action, order, or approval of the Bankruptcy Court.

Plan Supplement, Exhibit B ¶ 13 (emphasis added).

7. To be clear about what this paragraph is intended to do: the Debtors attempt to have *assumption* of executory contracts operate to discharge otherwise valid and enforceable

---

[2] *See Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated May 22, 2020* [Docket No. 7521] (as it may be amended, modified or supplemented from time to time, and together with any exhibits or schedules thereto, the "Plan"). Capitalized terms not defined herein have the meanings ascribed to them in the Plan.

[3] The term "Vendors" refers to the "vendors, suppliers, third party contractors and consultants (including those who provided services regarding the Debtors' electrical system, system equipment, inspection and maintenance of the system, and vegetation management)" referred to in Section 1.8 of the Plan.

[4] *Notice of Filing of Plan Supplement in Connection with Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* [Docket No. 7037] (the "Plan Supplement").

2

prepetition claims. The Debtors' Reply confirms as much, claiming section 502(e) as its sole authority:

> . . . [I]n determining the cure that may be owed to a counterparty on assumption of their executory contract, the Debtors may rely on section 502(e) to assert that prepetition claims based on contingent indemnity or contribution rights **are not properly part of the assumed obligations** or cure requirement.

Debtors' Reply at 55 (emphasis added). This provision borders on an attempt to evade the Debtors' black-letter law obligation to assume contracts "*cum onere*."[5] The Debtors assert that these indemnification obligations—arising within an assumed executory contract—are "not properly part" of the assumed contract (*id.*) because those obligations are disallowed *ipso jure* under section 502(e)(1)(B) upon occurrence of the Effective Date, without appropriate notice or due process protection for the supposedly unimpaired creditor. *See id.* at 52-53 ("Even if a claimant has filed a proof of claim asserting a contingent claim for indemnification or contribution, Bankruptcy Code section 502(e)(1)(B) specifically disallows any such claim . . . ."). The Debtors cite no authority for the invalidation of claims under section 502(e)(1)(B) through assumption of contracts under section 365, because none exists.

8. Indeed, when Congress wanted section 365 of the Bankruptcy Code to automatically invalidate contract provisions, it expressly said so. *See, e.g.*, 11 U.S.C. § 365(e)(1) (rendering *ipso facto* clauses unenforceable); § 365(f) (making anti-assignment provisions unenforceable). There is no similar provision in section 365 with respect to contingent claims for indemnification; therefore, such claims are not automatically disallowed upon assumption.

---

[5] *See, e.g.*, *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984); *Elliott v. Four Seasons Props. (In re Frontier Props., Inc.),* 979 F.2d 1358, 1367 (9th Cir. 1992) ("[T]he cost of assumption is nothing short of complete mutuality and requires performance in full just as if bankruptcy had not intervened.") (internal quotation omitted).

Indeed, the principle of assumption *cum onere* is so fundamental that courts have found indemnification obligations in assumed executory contracts to survive **even where a creditor fails to file a proof of claim**. *See In re G-I Holdings, Inc.*, 580 B.R. 388, 397, 399 (Bankr. D.N.J. 2018) and *Ashland Inc. v. G-I Holdings Inc.*, No. L-2331-15 (N.J. Super. Ct. App. May 30, 2018). In this pair of related cases, a debtor had assumed an indemnity agreement, and the counterparty—who had failed to file a proof of claim—sought to enforce it years after the bankruptcy case was over. Despite the debtor's arguments that the indemnification claim had been discharged because the creditor failed to timely file a proof of claim, the New Jersey state court ultimately determined that, as the debtor had assumed the contract, the "debtor [was] subject to the benefits and burdens of the contract," and such "benefits and burdens" included those that are "based on post-assumption obligations." *Ashland Inc.*, No. L-2331-15, at *11-12, *15.

3

9. The Debtors' attempt to use assumption in this unprecedented fashion constitutes impairment under the Plan. In the absence of the above-quoted Plan Supplement provision, the Debtors' indemnification obligations under assumed executory contracts would survive and remain enforceable. Their disallowance and discharge is plainly not an automatic result of assumption nor a result required by the Bankruptcy Code (as the Debtors intimate)—for the Debtors elsewhere provide that identical claims in the hands of more favored parties are preserved.

10. Indeed, at the same time that the Debtors explain that it is not the Plan that impairs *Vendors'* contingent indemnification and contribution claims—because the Plan "merely acknowledges what has already been done by operation of the Bankruptcy Code" (Debtors' Reply at 53)—the Debtors expressly preserve those same obligations for their **own Directors, Officers, and employees**. *See* Plan § 8.4.

11. Section 8.4 of the Plan expressly provides for the assumption of the indemnification obligations owed to the Debtors' "current and former officers, directors, agents, or employees" under the executory contracts the Debtors are assuming, "with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, agents or employees . . . ." Plan § 8.4. The Debtors go even further, stating that "[a]ny Claim based on the Debtors' Obligations in this Section 8.4 herein shall not be a Disputed Claim or **subject to any objection, in either case, by reason of section 502(e)(1)(B) of the Bankruptcy Code** or otherwise." *Id.* (emphasis added). This selective preservation of one set of contingent claims for indemnification contradicts the Debtors' contention that all such claims are subject to disallowance and discharge **by operation of law**. *See, e.g.,* Debtors' Reply at 52 (noting, without exception, that "[e]ven if a claimant has filed a proof of claim asserting a contingent claim for indemnification or contribution, Bankruptcy Code section 502(e)(1)(B) specifically disallows **any such claim** for which the Debtors are conceivably co-liable with the claimant" (emphasis added)). If the Debtors were right, the indemnification obligations to the Debtors' directors, officers, and other agents would vanish as well. But the Debtors are **choosing through their Plan** not to make that so.

12. The most the Debtors could have done was to ask the Court to view the Plan as an objection to contingent indemnification claims under section 502(e) of the Bankruptcy Code,

4

providing the requisite evidentiary showing for such relief and allowing applicable claimants to interpose defenses.[6] But the Debtors have not done so. Contingent claims for indemnification may only be disallowed if the Court affirmatively disallows them upon an appropriate evidentiary record.[7] Until that time, the Debtors' attempt at summary, *per se* disallowance and discharge of such claims is impairment, effected by the Plan.

## II. To the Extent the Debtors Seek Disallowance Under § 502(e), It Should Be Denied.

13. If the Court is inclined to overlook the procedural infirmity of the Debtors' actions and to view the Plan as an objection to contingent indemnification claims against the Debtors under section 502(e)(1)(B) of the Bankruptcy Code, such objection should be denied. The concerns animating section 502(e)(1)(B)—the risk of duplicative claims being made on the limited resources of an insolvent estate—are not implicated here. For one, there is no risk of "double-dipping"; for another, the Debtors are solvent.

14. The legislative history of section 502(e)(1)(B) demonstrates that this section is intended to guard against duplicative claims being made against a debtor as it:

> requires disallowance of the claim for reimbursement or contribution of a codebtor, surety or guarantor of an obligation of the debtor, unless the claim of the creditor on such obligation has been paid in full. The provision prevents competition between a creditor and his guarantor for the limited proceeds in the estate.

H.R. Rep. No. 95–595, 95th Cong., at 354 (1977). *See also* S. Rep. No. 95-989, 95th Cong., at 65 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5851. Case law confirms this intent. *See In re Hexcel Corp.*, 174 B.R. at 811 (section 502(e)(1)(B) was intended to prevent "duplicative claims" against the bankrupt's estate, namely, "to prevent a guarantor from filing a contingent claim for indemnification (before honoring its guaranty) which would compete with the noncontingent claim of the party to whom the debtor was primarily liable") (internal citations

---

[6] The TCC's reply cites cases in which prepetition claims that were within the "fair contemplation" of the claimant but not timely filed in a proof of claim are subject to discharge under section 1142 of the Bankruptcy Code. *See Reply Brief of the Official Committee of Tort Claimants to Certain Objections to Confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* [Docket No. 7509] at 3-4. The Creditors' Committee agrees with this unremarkable proposition and does not understand its relevance here.

[7] Indeed, this applies in equal measure to all creditors who have filed proofs of claim reserving indemnification rights (in addition to Vendors whose contracts are being assumed).

omitted); *In re Eagle-Picher Indus.*, 131 F.3d 1185, 1187 (6th Cir. 1997) (section 502(e)(1)(B) "is not intended to immunize debtors from contingent liability, but instead protects debtors from multiple liability on contingent debts") (internal citations omitted).

15. Double recovery is not a legitimate concern here. The settlement with the TCC does not alter the indemnification rights that Vendors may have against the Debtors, and vice versa. Even though the Debtors reached a settlement with the Fire Victims regarding the Debtors' ***own*** share of liability to those victims, this settlement does not change the fact that the Debtors have obligations to indemnify some Vendors for portions of tort victims' damages ***attributable to those Vendors*** in connection with work performed for the Debtors. In other words, the settlement between the Debtors and the TCC should not operate to extinguish standalone indemnification rights of the Vendors. The share of liability owed directly by the Debtors to the Fire Victims does not constitute ***the same liability*** as the share of liability for which the Vendors may be found responsible, and for which the Debtors agreed to indemnify such Vendors. The Vendors' indemnification claims against the Debtors are therefore not "competing" with the Fire Victims' claims against the Debtors for estate assets.

16. In addition, section 502(e)(1)(B) was designed to protect ***insolvent*** estates. "The sole purpose served by section 502(e)(1)(B) is to preclude redundant recoveries on identical claims ***against insolvent estates*** in violation of the fundamental Code policy fostering equitable distribution among all creditors of the same class." *Juniper Dev. Grp. v. Kahn (In re Hemingway Transport, Inc.)*, 993 F.2d 915, 923 (1st Cir. 1993) (emphasis added), *cert. denied*, 510 U.S. 914 (1993); *see also Potter v. CNA Ins. Co. (In re MEI Diversified, Inc.)*, 106 F.3d 829, 831 (8th Cir. 1997) (quoting same).

17. Here, where the Debtors' estates are solvent, the concerns animating section 502(e)—to the extent present at all—are of significantly less relevance. The statutory goal of preventing competition over limited assets of an insolvent estate and ensuring equitable distribution among all creditors also is not served by disallowance of indemnification claims of the Vendors under section 502(e)(1)(B).

**III. While Relying on Section 502(e)(1)(B), the Debtors Ignore the Operation of Section 502(e)(2).**

18. Finally, while purporting to rely on section 502(e) to effectuate a blanket disallowance and discharge of contingent claims for indemnification, the Debtors ignore the operation of section 502(e)(2), which provides that such contingent claims may become fixed and allowable at a later date.

19. Section 502(e)(2) states:

> A claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section . . . the same as if such claim had become fixed before the date of the filing of the petition.

11 U.S.C. § 502(e)(2). Under this section, claims that may be disallowable under section 502(e)(1)(B) may become fixed at a later date and be allowed at such time. *See In re Pettibone Corp.*, 110 B.R. 837, 846-47 (Bankr. N.D. Ill. 1990) (stating sections 502(e)(1)(B) and 502(e)(2) "serve . . . to *defer* allowing claims for reimbursement *until they are no longer contingent*," and "[o]nce such a claim is no longer contingent, § 502(e)(2) permits it to be allowed as a pre-petition claim") (emphasis added); *see also* 4 Collier on Bankruptcy P. 502.06 (16th ed. 2020) ("[T]o the extent that the codebtor, surety or guarantor has made payment to the underlying creditor after the petition date, the codebtor's, surety's or guarantor's claim will be allowed or disallowed under section 502 as though it had become fixed before the filing of the petition for relief.").

20. Courts have permitted claims that were disallowable under section 502(e)(2) to become allowed once they are no longer contingent. For example, in *In re Archdiocese of Saint Paul and Minneapolis*, 579 B.R. 188, 197 (Bankr. D. Minn. 2017), the court noted that when creditors "eventually make payments" based on inevitable future tort lawsuits, the creditors' claims will mature and will at that time become allowed under section 502(e)(2). The court concluded that because the proposed plan "fail[ed] to provide for th[o]se claims," **the plan could not be confirmed**. *Id.* The court in *In re Pettibone Corp.* similarly observed that contingent claims were disallowed under section 502(e)(1)(B) only "until such time, *if ever*, that the co-defendants are all found liable and judgment is recovered from the non-debtor defendants. At that time, pursuant to

7

§ 502(e)(2), the reimbursement claim is deemed effective as of a pre-petition date." 110 B.R. at 846-47 (emphasis added).

21. Even in *In re Dant & Russell, Inc.*, 951 F.2d 246 (9th Cir. 1991), a case cited by the Debtors,[8] the Court left open the possibility that a reserve could be established to account for contingent claims that may become fixed post-confirmation:

> With regard to the cost of future cleanup, CERCLA authorizes award of these funds to BN after they are incurred. ***This holding does not interfere with the powers of the bankruptcy court as a court of equity to establish a trust fund if the estate has assets, or to make provision for other forms of relief*** 'necessary or appropriate to carry out the provisions of the bankruptcy code.'

*Id.* at 250 (quoting 11 U.S.C. § 105(a)) (emphasis added).

22. If the Court determines to temporarily disallow the Vendors' contingent claims for indemnification across-the-board, as the Debtors seem to request, the Creditors' Committee respectfully requests the Court to consider creating a reserve to account for such claims that may mature post-confirmation. *See id.* at 250; *In re Archdiocese of Saint Paul and Minneapolis*, 579 B.R. at 197.

DATED: June 1, 2020    MILBANK LLP

　　　　　　　　　　　　　　*/s/ Gregory A. Bray*
　　　　　　　　　　　　　　DENNIS F. DUNNE
　　　　　　　　　　　　　　SAMUEL A. KHALIL
　　　　　　　　　　　　　　GREGORY A. BRAY
　　　　　　　　　　　　　　THOMAS R. KRELLER

　　　　　　　　　　　　　　*Counsel for the Official Committee of Unsecured Creditors*

---

[8] *See* Debtors' Reply at 53.