1   WEIL, GOTSHAL & MANGES LLP
    Stephen Karotkin (*pro hac vice*)
2   (stephen.karotkin@weil.com)
    Theodore E. Tsekerides (*pro hac vice*)
3   (theodore.tsekerides@weil.com)
    Richard W. Slack (*pro hac vice*)
4   (richard.slack@weil.com)
    Jessica Liou (*pro hac vice*)
5   (jessica.liou@weil.com)
    Matthew Goren (*pro hac vice*)
6   (matthew.goren@weil.com)
    767 Fifth Avenue
7   New York, NY 10153-0119
    Tel: 212 310 8000
8   Fax: 212 310 8007

9   KELLER BENVENUTTI KIM LLP
    Tobias S. Keller (#151445)
10  (tkeller@kbkllp.com)
    Jane Kim (#298192)
11  (jkim@kbkllp.com)
    650 California Street, Suite 1900
12  San Francisco, CA 94108
    Tel: (415) 496-6723
13  Fax: (415) 636-9251

14  *Attorneys for Debtors and Debtors in Possession*

15                  **UNITED STATES BANKRUPTCY COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
16                     **SAN FRANCISCO DIVISION**

17
    **In re:**                              Chapter 11 Case No. 19-30088 (DM)
18                                          (Lead Case)
                                            (Jointly Administered)
19  **PG&E CORPORATION,**
                                            **DEBTORS' RESPONSE IN OPPOSITION TO**
20              - and -                     **MOTION FOR THE APPOINTMENT OF AN**
                                            **EXAMINER OF VOTING PROCEDURAL**
21  **PACIFIC GAS AND ELECTRIC**            **IRREGULARITIES PURSUANT TO**
    **COMPANY,**                            **SECTION 1104(C) OF THE BANKRUPTCY**
                                            **CODE AND BANKRUPTCY RULE 2007.1**
22                      **Debtors.**
                                            **Related Docket Nos.: 7427, 7439, 7477, 7532,**
23  ☐ Affects PG&E Corporation             **7568, 7644**
24  ☐ Affects Pacific Gas and Electric
    Company                                 Date:  June 4, 2020
25  ☒ Affects both Debtors                  Time:  10:00 a.m. (Pacific Time)
                                            Place:  Video Conference
26  *\* All papers shall be filed in the Lead*   Objection Deadline: June 2, 2020
    *Case, No. 19-30088 (DM).*
27

28

PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), respectfully submit this Response in opposition to the *Motion for the Appointment of an Examiner of Voting Procedural Irregularities Pursuant to Section 1104(c) of the Bankruptcy Code and Bankruptcy Rule 2007.1*, dated May 25, 2020 [Docket No. 7568] (the "**Motion**"), filed by creditor Karen Gowins ("**Gowins**"). In support, the Debtors submit the Declaration of Christina F. Pullo (the "**Pullo Declaration**"), filed contemporaneously herewith.

### Preliminary Statement

The Debtors, together with the TCC, the fiduciary for all Fire Victim Claimants in these Chapter 11 Cases, undertook an extensive effort to formulate and implement comprehensive and robust solicitation and voting procedures (the "**Solicitation Procedures**") that included specially tailored procedures designed to ensure that all Fire Victim Claimants were afforded a full and fair opportunity to vote to accept or reject the Plan. By Order dated March 17, 2020 [Docket No. 6340] (the "**Disclosure Statement and Solicitation Procedures Order**"), these Solicitation Procedures, which were modeled after, and based upon, solicitation and voting procedures utilized by courts in other mass tort chapter 11 cases, were approved by the Court, together with the Disclosure Statement for the Plan, following multiple hearings and extensive briefing.[1]

Prime Clerk LLC ("**Prime Clerk**"), the Court-appointed administrative advisor authorized to assist the Debtors with, among other things, the solicitation of votes on the Plan, strictly adhered to the procedures set forth in the Disclosure Statement and Solicitation Procedures Order. And, the Plan was overwhelmingly accepted by the Classes of Fire Victims.

---

[1] Capitalized terms used but not herein defined have the meanings ascribed to such terms in the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated May 22, 2020* [Docket No. 7521] (as it may be amended, modified or supplemented, and together with any exhibits or schedules thereto, the "**Plan**") and the Disclosure Statement and Solicitation Procedures Order, as applicable.

Nevertheless, Gowins, relying on hearsay and anecdotal information in an eleventh hour effort to derail confirmation, seeks the appointment of an examiner under section 1104(c) of the Bankruptcy Code to investigate the voting and solicitation process, which, if granted, would jeopardize the Debtors' ability to confirm their Plan in time to meet the June 30, 2020 deadline imposed under AB 1054, substantially delay payments to Fire Victim Claimants who, as stated, overwhelmingly support confirmation of the Plan, and undermine the Debtors' reorganization efforts to the extreme detriment and prejudice of all parties in interest. *See* June 1, 2020 Tr. 5:10–12 (The Court: "If I put this case on hold for fifteen days, it would probably be a guarantee that AB 1054 will not be complied with.").  Such a result is neither in the best interests of creditors nor required under section 1104(c) of the Bankruptcy Code, nor should such a blatant ploy be countenanced by the Court.

*First,* the Motion is largely a repackaging of arguments the Court has previously considered and overruled in connection with its prior decision denying the Motion to Designate.[2]  Certain of these matters also have been raised again in the context of the ongoing Confirmation Hearing, specifically, in connection with the recent testimony of Ms. Christina Pullo, a representative of Prime Clerk, who submitted sworn declaration testimony and was cross-examined on the voting process and compliance with the Court-approved Solicitation Procedures.[3]  Wasting additional time

[2] *See William B. Abrams' Motion to Designate Improperly Solicited Votes Pursuant to 11 U.S.C. §§ 1125(b) and 1126(e) and Bankruptcy Rule 2019* [Docket No. 6799] (together with Mr. Abrams's supplemental reply [Docket No. 6946], collectively, the "**Motion to Designate**"), which Motion to Designate was denied by Order of the Court dated May 18, 2020 [Docket No. 7401].

[3] In fact, this Motion is just the latest in the attempts by certain opponents of the Plan to raise unfounded assertions that provide no basis for the appointment of an examiner or any other relief. Similar to the assertions in the Motion, for example, Mr. Abrams asked questions during the Confirmation Hearing that implied, with no proof whatsoever, that the Duff & Phelps entity that owns Prime Clerk purportedly owned over a million shares of PG&E.  May 27, 2020 Tr. 21.  The indisputable fact is that the Duff & Phelps entity that owns Prime Clerk—Duff & Phelps LLC—is not related to the Duff & Phelps entity that *had* owned shares in PG&E—Duff & Phelps Investment Management.  See Virtus Investment Partners, Inc. Form 10-12B/A (Dec. 19, 2008), Exs. 2.1 & 21.1, available at https://www.sec.gov/Archives/edgar/data/883237/000119312508256017/d1012ba.htm (showing that Duff & Phelps Investment Management was separated and sold to Virtus Investment Partners, Inc. in December 2008).  More important, even that unaffiliated Duff & Phelps entity sold whatever shares it had in PG&E more than a year before PG&E commenced

and estate resources revisiting these very same matters for yet a third time is not in the best interests of any parties in interest.

Second, the appointment of an examiner is not, as Gowins asserts, mandatory or required under section 1104(c)(2) of the Bankruptcy Code. In fact, numerous Courts have denied similar requests to appoint examiners notwithstanding section 1104(c)(2), where the appointment of an examiner, as is the case here, was not in the best interests of creditors or where the Court determined that a party has waived its right to seek such relief. Accordingly, the Motion should be denied.

### Response

Section 1104(c) of the Bankruptcy Code governs appointment of an examiner. It provides that, if the Court does not appoint a trustee,

> on request of a party in interest . . . and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct,

---

these Chapter 11 Cases. *See* Duff & Phelps Investment Management Co Closes Position In PCG / PG&E Corp., Fintel (Jan. 24, 2018), https://fintel.io/so/us/pcg/duff-phelps-investment-management; Duff & Phelps Inv. Mgmt. Co. Form 13F Info. Table, January 24, 2018, available at https://www.sec.gov/Archives/edgar/data/765443/000114036118003053/xslForm13F_X01/form13fInfoTable.xml.

Ms. Wallace similarly insinuated that because the son of the lead Weil, Gotshal & Manges LLP ("**Weil**") lawyer on these Cases works for Prime Clerk, there must somehow be a conflict. This relationship was disclosed at the outset of these Chapter 11 Cases in the Declarations filed in connection with the retention application of Weil and the retention application of Prime Clerk. *See Declaration of Stephen Karotkin* 6 n.6 [Docket No. 865] (the "**Karotkin Decl.**"); *Declaration of Shai Y. Waisman* ¶ 18 [Docket No. 22] (the "**Waisman Decl.**"). As stated in Mr. Karotkin's Declaration, "My son, Joshua Karotkin, is an employee of Prime Clerk LLC, the Debtors' claims and noticing agent. Both Weil and Prime Clerk LLC are retained by the Debtors, accordingly such employment does not affect Weil's disinterestedness in these Chapter 11 Cases. Additionally, he does not work on matters related to these Chapter 11 Cases." *See* Karotkin Decl. 6 n.6. As stated in Mr. Waisman's Declaration, "Stephen Karotkin is a partner at Weil. Mr. Karotkin's son, Joshua Karotkin, a Director at Prime Clerk, has been an employee of Prime Clerk since April 2014. Joshua Karotkin holds no equity interest in Prime Clerk and receives no compensation based upon Prime Clerk's revenue. Furthermore, Joshua Karotkin has been screened from and will perform no work on this matter." Waisman Decl. ¶ 18. As noted in the Declarations, Mr. Karotkin's son has been screened from these Chapter 11 Cases.

mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if —

(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c).

The movant bears the burden of proving that an examiner should be appointed, *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 636 (Bankr. S.D.N.Y. 2012) ("The moving party has the burden to prove that an examiner should be appointed."), and an examiner must be "appropriate under the particular circumstances of the case" and "the protection must be needed." *In re Residential Capital, LLC*, 474 B.R. 112, 120–21 (Bankr. S.D.N.Y. 2012) (internal quotations omitted). As set forth below, the Motion fails to make this showing.

A.   **The Appointment of an Examiner at this Stage of these Chapter 11 Cases is Not in the Best Interests of Creditors or Interest Holders and, Therefore, Fails to Satisfy the Requirements of Section 1104(c)(1) of the Bankruptcy Code**

Gowins has made no showing that the appointment of an examiner would serve the interests of creditors, equity security holders, or the estates as required under section 1104(c)(1) of the Bankruptcy Code. In fact, precisely the opposite is the case. The Motion contends that the Docket of the Court "contains many examples" of purported violations of the Disclosure Statement and Solicitation Procedures Order and attaches a few redacted social media posts and other unverified or unconfirmed documents that Gowins asserts support the relief requested in the Motion. Mot. 4. Virtually all of these documents, however, are hearsay and provide no evidence to support the extraordinary relief requested in the Motion.[4] Moreover, as demonstrated by the various affidavits

---

[4] The Debtors note that Ms. Helen Sedwick filed a declaration in support of the Motion [Docket No. 7644] that purports to identify 115 Fire Victims who allegedly did not timely receive Ballots to vote on the Plan. Notwithstanding the fact that this declaration is clearly inadmissible hearsay, Prime Clerk has confirmed that each of the Fire Victim Claimants listed in the Sedwick Joinder with a valid Fire Victim proof of claim number was mailed a Solicitation Package in accordance with the approved Solicitation Procedures either (i) with respect to 103 of such Fire Victim Claimants,

sworn to and filed by Prime Clerk, the terms of the Disclosure Statement and Solicitation Procedures Order with respect to the transmission of Ballots and Solicitation Packages were strictly complied with. *See* [Docket Nos. 6893, 6935, 7059, 7082, 7084, and 7123] (the "**Solicitation Affidavits**"); May 12, 2020 Tr. 46:14–17. Prime Clerk has further certified that it tabulated all Ballots that were submitted on the Plan in strict compliance with the Solicitation Procedures. *See* Voting Cert. ¶¶ 7–8 [Docket No. 7507].

Moreover, most of the solicitation related matters raised in the Motion already have been considered and dismissed by the Court in connection with the Motion to Designate, which Ms. Gowins joined.[5] And, notwithstanding this fact, many of these same solicitation issues have been raised yet again in the context of the ongoing Confirmation Hearing and, as noted above, were the

directly to the claimant's applicable address or (ii) with respect to 10 of the Fire Victim Claimants, to the law firms representing those Fire Victim Claimants (one of the claims listed in the Sedwick Joinder that Ms. Sedwick incorrectly links to two Fire Victims is an employee benefit claim and not a Fire Victim Claim). Moreover, 75 of those individuals timely submitted Ballots that were included in the final tabulation of votes on the Plan. Pullo Decl. ¶ 8. Furthermore, with respect to any Ballots from Fire Victim Claimants that indicated a vote to accept or reject the Plan that were received after the Voting Deadline (the "**Untimely Fire Victim Ballots**"), as set forth in the Pullo Declaration, those Untimely Fire Victim Ballots overwhelmingly voted to accept the Plan and, accordingly, the results of the vote on the Plan would not have changed if the Untimely Fire Victim Ballots had been included in the final vote tabulation. Pullo Decl. ¶¶ 6–7.

And as the Court correctly noted at the Confirmation Hearing on May 29, 2020: "[W]e all know this from experience, when you mail something, you know when you mail it. You have no way of knowing when it was received unless you had some sort of return receipt indication." May 29, 2020 Tr. 13:3–6. As the Court is aware, the mailing of the solicitation packages establishes a presumption of receipt of actual notice and even a proper declaration asserting non-receipt (and certainly an unverified blog post) does not overcome that presumption. *See In re Hongisto*, 293 B.R. 45, 52 (N.D. Cal. 2003), *aff'd*, 86 F. App'x 331 (9th Cir. 2004) ("A party claiming nonreceipt must overcome the presumption that the letter was received in the usual time by the addressee" and "Federal courts in New York have held quite uniformly that an affidavit of non-receipt is insufficient to rebut the presumption of receipt created by proof of mailing") (internal citations and quotations omitted); *Chavis v. City of New York*, 2018 WL 6532865, at *5 (S.D.N.Y. Oct. 12, 2018), *report and recommendation adopted*, 2018 WL 6528238 (S.D.N.Y. Dec. 11, 2018) (holding that litigant did not receive actual notice only if "neither his mailing address nor his email address is current").

[5] *Joinder on Behalf of Karen Gowins in William B. Abrams' Motion to Designate Improperly Solicited Votes* [Docket No. 6944].

subject of the recent cross-examination of Ms. Pullo, who further testified as to the strict compliance with the Solicitation Procedures approved by the Court.  *See Objection, Reservation of Rights, Objection to the Plan, Fire Victims Trust and Irregularities of Voting Procedure* [Docket No. 7367]; *Certain Fire Victims' Objection to Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* 8 [Docket No. 7316]; *William B. Abrams Objection to Debtors Plan of Reorganization* ¶ 5 [Docket No. 7230].  *See also In re Spansion, Inc.*, 426 B.R. 114, 128 (Bankr. D. Del. 2010) (denying motion to appoint examiner where allegations of bad faith against debtors' management raised a "classic confirmation dispute, rather than grounds for an investigation by an examiner"); *In re Schepps Food Stores*, 148 B.R. 27, 31 (S.D. Tex. 1992) (denying request to appoint an examiner and finding that movant's allegations were "little more than the normal objections that it will make at the confirmation hearing").  There is simply no evidence of "irregularities" here.

Moreover, the appointment of an examiner now—in the middle of the Confirmation Hearing and with the June 30, 2020 AB 1054 deadline looming—would cause substantial delay and likely derail any opportunity for the Debtors to confirm their Plan in time to meet that deadline.  This would be disastrous to all creditors and interest holders, particularly Fire Victims who overwhelmingly support the Plan.  No party can reasonably contend that such a result is in the best interest of creditors, shareholders, or any other parties and, accordingly, the Motion should be denied.

### B.    The Appointment of an Examiner is Not Required Under Section 1104(c)(2)

Furthermore, even in circumstances where the liquidated, unsecured debt threshold under section 1104(c)(2) of the Bankruptcy Code has been met, courts have held that the appointment of an examiner is not mandatory.  *See, e.g.*, *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 639 (Bankr. S.D.N.Y. 2012) ("[T]he Court concludes that the Examiner Motion should be denied even if the debt threshold in section 1104(c)(2) is satisfied.").

Specifically, Courts have denied similar requests where an examiner's investigation would serve no purpose other than to delay resolution of the chapter 11 cases, or where there is no factual

basis from which to conclude that an investigation is needed. *See id*.; *see also Spansion,* 426 B.R. at 128 (denying request to appoint examiner under section 1104(c)(2) made on the eve of confirmation where the appointment was "neither warranted nor appropriate . . . and would delay the administration of this chapter 11 case"); *In re Rutenberg*, 158 B.R. 230, 233 (Bankr. M.D. Fla. 1993) (denying motion for examiner even where $5 million liquidated, unsecured debt threshold was met under section 1104(c)(2) because appointment of examiner would unnecessarily delay administration of the chapter 11 case); *In re Residential Capital, LLC*, 474 B.R. 112, 121 (Bankr. S.D.N.Y. 2012) ("[The legislative purpose of section 1104(c)] is met when an examiner motion is denied in cases with fixed debts in excess of $5 million where the evidence establishes that the protection of an examiner is not needed under the facts and circumstances of the case."); *In re Shelter Res. Corp.*, 35 B.R. 304, 305 (Bankr. N.D. Ohio 1983) (denying appointment of examiner where $5 million requirement was met because it would result in undue delay in the administration of the debtor's estate).

In addition, Courts have denied similar requests to appoint examiners under section 1104(c)(2) made on the eve of confirmation where the movants were determined to have waived their right to seek appointment of an examiner either as a result of delay or other reasons. *See In re Schepps Food Stores*, 148 B.R. at 30–31 (holding that creditor had waived its right to seek to have an examiner appointed under section 1104(c)(2) by failing to file its request until the eve of confirmation and, in reaching this holding, stating that "while the statute states that the court may appoint an examiner any time before the plan is confirmed, a creditor cannot use the provision to disrupt the proceedings" and that there was "ample support in the record to conclude that [claimant's] interest in the appointment of an examiner is a tactic to prevent confirmation, rather than to investigate bad faith allegations"); *In re Bradlees Stores*, 209 B.R. 36, 40 (Bankr. S.D.N.Y. 1997) (denying late filed request to appoint an examiner filed just prior to expiration of relevant statute of limitations and noting "the impracticality of the movants' request is obvious and suggests that the request is nothing more than a litigation/negotiation tactic").

As set forth above, Gowins has failed to demonstrate that the appointment of an examiner would serve the interests of creditors or interest holders. Indeed, rather than serve the interests of creditors or interest holders, it would result in severe prejudice and would be detrimental to all parties in interest. This last minute tactical ploy should be summarily rejected.

### Conclusion

For the reasons set forth herein, the Motion should be denied.

Dated: June 2, 2020

**WEIL, GOTSHAL & MANGES LLP**

**KELLER BENVENUTTI KIM LLP**

By: ___/s/ Stephen Karotkin___
       Stephen Karotkin

*Attorneys for Debtors and Debtors in Possession*