Theresa Ann McDonald
5044 Russell Drive
Paradise, CA 95969
Phone Number: 530-636-3148
Tmcdonald120@yahoo.com

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT
### (SAN FRANCISCO DIVISION)

I*n re:

PG&E CORPORATION

   -and-

PG&E GAS AND ELECTRIC COMPANY
   Debtors

   vs.

Theresa Ann McDonald
   Creditor

Bankruptcy Case
No. 19-30088-DM
Chapter 11
(Lead Case)
(Jointly Administered) Case
No. 19-30089-DM

Proof of Claim No. 54975
Filed October 21, 2019
Camp Fire

Judge: Honorable Dennis Montali

Emergency Pleading in Reply to the Debtors' response to the Motion for the Appointment of an Examiner of Voting Procedural Irregularities
And
Response to the objection by the Singleton Law Firm Fire Victim Claimants to the Motion for the Appointment of an Examiner

Relief Requested: Approve the Motion for the Appointment of an Examiner of Voting Irregularities

    I am a fire victim claimant and a creditor in the Chapter 11 case. I respectfully ask that you approve the Motion for the Appointment of an Examiner of Voting Procedural Irregularities.

    In their response filed on June 2, 2020, the Debtors refer to the testimony and

declaration of Ms. Christina Pullo, a representative of Prime Clerk. However, many of the questions about voting irregularities revolve around the distribution of the solicitation packets. In her appearance before the Court I believe Ms. Pullo testified that Prime Clerk did not actually mail the documents, but delegated that activity to a mailing vendor. Therefore, Ms. Pullo could not testify as to when the solicitation packets were actually distributed, or what documents went into the distributed packets.

I am not an attorney. I was an accountant. I am asking that you appoint an independent Examiner who can ask questions of the people with direct knowledge of the distribution, either mail or email, of the solicitation packets. I want to know how many were mailed to "Owner/Occupant", and why? How many were returned by the postal service, and what was done to try to resend them? How many were rejected by email servers, and what was done to try to resend them? How many were actually sent out, and on what dates? Did some packets go out with cover letters from the wrong legal firm, and if so how was that corrected? Only the mailing vendor can answer these questions, and they were never made available for questioning.

In their objection to the motion the Singleton Law Firm Fire Victim Claimants question the lack of evidence that the debtors' fixed, liquidated, unsecured debts exceed $5,000,000. I submit that the Adventist Health claim alone exceeds that amount, and you have their statements to that effect.

The Singleton Law Firm Fire Victim Claimants also attempt to argue that the appointment of an examiner is simply a delaying tactic being used to derail your schedule. Such an appointment does not have to alter your schedule for the confirmation hearing any more than the many other factors still being negotiated must delay it. And the need is not rendered moot if you do confirm the plan.

Writing the order and reading the resulting report will take a little of the Court's time, but don't those of us who have been so badly injured deserve to feel the Court has listened to our request for transparency and clarification of the extent of the mistakes that occurred in the voting process?

I think there are three questions you need to ask before making your decision:

1. Why are the debtors so opposed to the idea?
2. Would it change my decision to confirm or not confirm the plan if it were to turn out that there were significant problems with the distribution process?
3. Why does it matter to at least some of the fire victims so much?

I cannot answer the first two questions. I can answer the third. I **need** that information. It is a necessary piece of the puzzle I am trying to put together to understand the entire Camp Fire event. And make no mistake; these proceedings are part of the event.

The trauma caused by the Camp Fire did not end in November of 2018. It will not end until the last penny has been given to the victims, and I finally have a complete picture of what happened to us. Only then will I be able to say, "This happened. It is over. Now it is time to move on." Please do not cause it to remain an unhealed wound for the rest of my life by denying me access to necessary pieces of the puzzle.

I respectfully ask that you approve the Motion for the Appointment of an Examiner of Voting Irregularities.



Theresa Ann McDonald