DOWNEY BRAND LLP
JAMIE P. DREHER (Bar No. 209380)
Email: jdreher@downeybrand.com
621 Capitol Mall, 18th Floor
Sacramento, California 95814
Telephone:    916.444.1000
Facsimile:    916.444.2100

Attorneys for Dwyane Little

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 19-30088-DM |
| PG&E Corporation, | Chapter 11 |
| and | Lead Case, Jointly Administered |
| PACIFIC GAS AND ELECTRIC COMPANY, | **DECLARATION OF CHRISTOPHER WHELAN IN SUPPORT OF MOTION FOR RELIEF FROM STAY, OR ALTERNATIVELY, FOR ABSTENTION** |
| Debtors. | |
| [ ] Affects PG&E Corporation [ ] Affects Pacific Gas and Electric Company [x] Affects both Debtors | Date:      June 24, 2020 Time:      10:00 a.m. Crtrm.:    Courtroom 17              450 Golden Gate Avenue              San Francisco, CA 94102 Judge:    Hon. Dennis Montali |
| *All papers shall be filed in the Lead Case, No. 19-30088-DM, | Objection deadline:    June 19, 2020                                 4:00 p.m. (Pacific Time) |

I, Christopher Whelan, declare:

1.     I am over the age of eighteen (18), provide this declaration in support of Dwyane Little's MOTION FOR RELIEF FROM STAY, OR ALTERNATIVELY, FOR ABSTENTION ("Motion"), provide this testimony based on my personal knowledge, would testify consistently herewith if called to do so, and I am an attorney at law admitted to the state and federal courts of and in California.

2.     I am counsel of record for movant-plaintiff Dwyane Little, in Yolo County Superior Court Case No. CV18-2183 ("Complaint" in the "State Court Case"). A true and correct

1639783v1

copy of the Complaint is attached hereto as Exhibit A. The Complaint was served pre-petition, and discovery propounded.

3. Mr. Little's claims against PG&E (and other individual non-debtor defendants) arise out of a series of events during the 2016-2018 timeframe mostly in Yolo County, California, which gave rise to Mr. Little's claims for Age Discrimination, Age Harassment, Race Discrimination, Race Harassment, Disability Discrimination, Disability Harassment, Unlawful Retaliation, Wrongful Termination, and others.

4. I filed Proofs of Claim on Mr. Little's behalf, which have been denominated Claims No.'s 3297 (Case No. 19-30089) and 3359 (Case No. 19-30088).

5. Mr. Little has demanded and is entitled to the right to try his claims to a jury.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

June 1, 2020

By: _____
CHRISTOPHER WHELAN

1639783v1

# EXHIBIT A

1   CHRISTOPHER H. WHELAN, INC.
    Christopher H. Whelan, Esq. (SB 080823)
2   11246 Gold Express Drive, Suite 100
    Gold River, California 95670
3   Phone:   (916) 635-5577
    Fax:     (916) 635-9159
4
    Attorneys for Plaintiff, DWYANE LITTLE
5

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF YOLO

10  DWYANE LITTLE                    )  Case No. CV18-2183
                                     )
11          Plaintiff,               )  COMPLAINT FOR DAMAGES:
                                     )  (1)   Age Discrimination (Gov. Code
12  v.                               )        § 12940);
                                     )  (2)   Age Harassment (Gov. Code
13  PG&E CORPORATION, PACIFIC        )        § 12940);
    GAS AND ELECTRIC COMPANY,        )  (3)   Race Discrimination (Gov. Code
14  STEVE LAL, STEVE STROUP and      )        § 12940(a));
    DOES 1 through 50, inclusive,    )  (4)   Race Harassment (Gov. Code
15                                   )        §§ 12940(j) and (k));
            Defendants.              )  (5)   Disability Discrimination (Gov.
16                                   )        Code § 12940(a));
                                     )  (6)   Disability Harassment (Gov. Code
17  ──────────────────────────          §§ 12940(j) and (k));
                                        (3)   Unlawful Retaliation (Gov. Code
18                                            § 12940(h));
                                        (4)   Failure to Prevent, Investigate,
19                                            and/or Remedy Unlawful
                                              Harassment, Discrimination, and
20                                            Retaliation (Gov. Code §§ 12940(j)
                                              & (k));
21                                      (8)   Retaliation in Violation of the Fair
                                              Employment & Housing Act (Age
22                                            and Disability) (Gov. Code
                                              §§ 12940(h) & (i));
23                                      (9)   Wrongful Termination in Violation
                                              of Public Policy;
24                                      (10)  Defamation
25
                                        JURY TRIAL DEMANDED
26

27

28

Plaintiff, DWYANE LITTLE, hereby alleges against Defendants, PG&E CORPORATION, PACIFIC GAS AND ELECTRIC COMPANY, STEVE LAL, STEVE STROUP and DOES 1 through 50, inclusive, as follows:

## PARTIES

1.  Plaintiff, DWYANE LITTLE [hereinafter "LITTLE" or "PLAINTIFF"], was at all times relevant hereto, a resident of the State of California, County of Sacramento, and a 23 year employee of PG&E CORPORATION [hereinafter "PG&E" and/or "DEFENDANT EMPLOYER"], PACIFIC GAS AND ELECTRIC COMPANY, Inc. [hereinafter "PACIFIC" and/or "DEFENDANT EMPLOYER"] and its predecessors at their Davis, California location in Yolo County.

2.  PLAINTIFF is informed and believes PG&E and PACIFIC are a corporation of unknown origin, doing business in California, County of Yolo, and at all times relevant herein, were employers of PLAINTIFF as defined by Cal. Gov. Code §§ 12926(d), 12940(a) and 12940(j)(4)(A).

3.  At all times herein mentioned, Defendant, STEVE LAL [hereinafter "LAL"], was and is a resident of California, and a senior program manager for DEFENDANT EMPLOYERS working at the Davis, California location when these complained of acts occurred. LAL, PLAINTIFF's supervisor, defamed, discriminated against and harassed PLAINTIFF because of his age, race, disability, need for accommodations, and FMLA/CFRA leave. All the conduct complained of herein occurred in the County of Yolo.

4.  At all times herein mentioned, Defendant, STEVE STROUP [hereinafter "STROUP"] , was and is a resident of California, and a project manager supervisor for DEFENDANT EMPLOYERS working at the Davis, California location when these complained of acts occurred. STROUP PLAINTIFF's supervisor, defamed, discriminated against and harassed PLAINTIFF because of his race, age, disability, need for accommodations, and FMLA leave. All the conduct complained of herein occurred in the County of Yolo.

5.  PLAINTIFF is informed and believes that DOES 1 through 50, inclusive, are the parent, subsidiary, or related corporations to PG&E and/or PACIFIC, and at all relevant times

2

herein, were joint employers of PLAINTIFF, and/or alter egos to PG&E and/or PACIFIC. The true names and capacities of the Defendants named herein as DOES 1 through 50, inclusive, whether individual, corporate, associate, or otherwise, are unknown to PLAINTIFF, who therefore sues such Defendants by fictitious names pursuant to Code of Civil Procedure § 474. PLAINTIFF is informed and believes that DOE Defendants 1 through 50 are California residents and/or parents, subsidiaries, and/or sister corporations to DEFENDANT EMPLOYERS, and/or individuals responsible for the acts complained of herein. PLAINTIFF will amend this Complaint to show such true names and capacities when they have been determined. PLAINTIFF alleges all known and unknown Defendants, and all named Defendants, including corporate and individual Defendants and their parents, subsidiaries, their successors in interest, partners, and their employees and/or agents, acted on behalf of, and for the benefit of, at the direction of, and under the control of, and in conspiracy with each and every Defendant known or unknown, and their agents and/or employees, and each of them, to do the acts complained of herein.

6. The true names, identities, or capacities, whether individual, corporate, associate, or otherwise, of Defendants, DOES 1 through 50, inclusive, are unknown to PLAINTIFF, who therefore sues said Defendants by such fictitious names. When the true names, identities or capacities of such fictitiously designated Defendants are ascertained, PLAINTIFF will ask leave of this Court to amend this Complaint and to insert said true names, identities, and capacities, together with the proper charging allegations.

7. PLAINTIFF is informed and believes, and thereon alleges, that each of the Defendants sued herein as DOES 1 through 50 are responsible in some manner and liable herein for negligent, wanton, reckless, tortious conduct, and strict liability; and by such wrongful conduct, proximately caused the PLAINTIFF's injuries and damages.

8. Defendants DOES 1 through 50, inclusive, were corporations, partnerships, joint ventures, or other business entities, organized and existing under the laws of the State of California and at all times herein mentioned conducted business in the State of California, and throughout the County of Yolo, including its location at Davis, California, where PLAINTIFF was employed and the unlawful employment acts occurred.

3

**JURISDICTION AND VENUE**

9.     This Court has personal jurisdiction over the Defendants because they are

residents of, have contacts with, and are doing business in the State of California, and the County

of Yolo..

10.     Venue is proper in this County and Judicial District in accordance with Code of

Civil Procedure sections 394 and 395(a) because some or all of the Defendants, or some of them,

do business in this judicial district, and PLAINTIFF and others were employed by Defendants in

this County and Judicial District.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

11.     PLAINTIFF Dwyane Little is an African-American man born on September 27,

1959. He began his employment with Defendant Pacific Gas and Electric ("PG&E") on August

4, 1994 as a part time Customer Service Representative. As a result of his good performance and

diligence, he received six (6) promotions throughout his 23 year career. He obtained his final

position of Project Manager in 2000, operating out of the Davis, California "L" Street location.

12.     At the time of his wrongful termination on March 5, 2018 he was a PG&E Project

Manager. His immediate supervisor was Steve Stroup ("STROUP"), Project Management

Supervisor, and STROUP'S supervisor was Steve Lal ("LAL"), the Senior Program Manager.

Both are responsible for the acts complained of herein. Out of approximately sixty (60) Project

Managers at that time there were six (6) African-American Project Managers.

13.     As a Project Manager, LITTLE's basic duties included being responsible for

scope, schedule and budget of infrastructure projects throughout Northern California.

Throughout his career as a Project Manager he performed well and received significant praise

from his supervisors and internal PG&E clients. He was known for getting his projects done

within budget and on time.

14.     Some of the ways in which LITTLE was discriminated against, harassed and

retaliated against because of his age, race and disability, include:

15.     On or about March 9, 2016, LITTLE suffered a lower back strain and bulging

disk at work, he reported this issue to his supervisor, STROUP. These chronic injuries made it

4

1 more difficult for PLAINTIFF to perform his work duties, and required accommodations in the
2 form or leave and modifications to PLAINTIFF's work space. Immediately upon Plaintiff
3 reporting his injury STROUP and LAL started dumping additional projects and known problem
4 projects on PLAINTIFF, for instance project with extensive work to be done but little budget
5 remaining, in order to harass and negatively impact his performance and/or drive PLAINTIFF to
6 permanently leave PG&E, or retire early. Additionally, he was subjected to hyper-criticism by
7 these supervisors and publically chastised and criticized regarding his performance and
8 completion of projects that became very difficult because of his need for leave accommodations,
9 FMLA/CFRA leave to assist and care for his dying father and distressed mother, and because of
10 the difficult projects dumped on him that had very little budget remaining to complete the
11 projects. As a result of PLAINTIFF reporting a disability and seeking accommodations these
12 supervisors treated PLAINTIFF as an outsider and not a member of the team, and it became very
13 difficult to get them to assign the necessary resources for PLAINTIFF to complete his projects.
14      16.     A job function analysis was done on PLAINTIFF's position, and as a result, he
15 was provided with an adjustable sit/stand workstation with a mat to stand on. STROUP let
16 PLAINTIFF know he was upset with the cost of the job function analysis and the
17 accommodations, since they would be charged against the office budget and against the
18 department's safety record/stats which impacted the potential bonuses that were awarded
19 annually based on a formula. As a result of this impact on bonuses and budget, management
20 discouraged employees and PLAINTIFF from reporting injuries or accommodation needs.
21      17.     In April 2016, PLAINTIFF took two weeks of FMLA/CFRA qualifying time off
22 to care for and assist his father in his final illness just before he passed away, and to care for and
23 help his mother in this stressful and depressing time. PLAINTIFF took three days for his father's
24 funeral and the remaining days were FMLA/vacation. PLAINTIFF discussed this arrangement
25 with STROUP because he left with little notice during his father's final days. STROUP still
26 hounded PLAINTIFF and pressed him to complete project reporting while PLAINTIFF was on
27 FMLA leave for these very disturbing events.
28      18.     As a result of PLAINTIFF'S lower back strain and bulging disk PLAINTIFF had

5

Case: 19-30088    Doc# 7744-2    Filed: 06/03/20    Entered: 06/03/20 11:34:38    Page 8
of 31

1   to take intermittent leave to treat his injury and required restricted duty (half days) from August

2   2016 through October 2017. In many ways STROUP made PLAINTIFF aware that he was

3   annoyed and bothered by PLAINTIFF's need for this leave accommodation of this chronic

4   disability to either be examined by doctors, treated, or to rest to heal the injury. STROUP let

5   PLAINTIFF know that his frustration and annoyance with accommodating PLAINTIFF's injury

6   with leave since this was delaying the completion of various projects. STROUP and LAL were

7   upset and annoyed that the were forced to accommodate PLAINTIFF'S disability, and in an

8   obvious and retaliatory move to drive PLAINTIFF from his job, or force his quitting, or cause a

9   pretextual justification for his termination they assigned additional projects to LITTLE that were

10   very difficult for LITTLE to complete because of his restrictions and accommodations, and

11   because of the lack of budget remaining on these very difficult, problem projects. They would

12   unjustifiably and publically criticize PLAINTIFF'S performance on conference calls causing

13   PLAINTIFF unnecessary and unjustified humiliation and stress.

14        19.    PLAINTIFF went on light duty August 2016 as a result of a need to

15   accommodate his disability (back injury). STROUP made PLAINTIFF aware that he was upset

16   over Plaintiff's need for this accommodation (light duty) and the inconvenience to STROUP and

17   PG&E resulting from the accommodation. STROUP would speak in a very angry tone, and he

18   was dismissive of PLAINTIFF and pressured him to complete projects that had to be delayed as a

19   result of PLAINTIFF working light duty.

20        20.    In 2017, LAL and STROUP harassed PLAINTIFF for the completion of projects

21   that they knew were not possible due to PLAINTIFF's need to take leave to accommodate and

22   heal his lower back disability, and because they had assigned problem projects to him. They put

23   PLAINTIFF on a Performance Improvement Plan ("PIP") to punish him for his FMLA/CFRA-

24   qualifying and disability leave accommodation, and to build a pretextual record to justify

25   terminating PLAINTIFF. The PIP included false statement and accusations poor performance and

26   mismanagement; additionally, STROUP would not conduct the PIPs and meetings as required

27   per company policy and plan. He would just tell PLAINTIFF what he wanted and when he

28   wanted it, without any discussion, give and take, or agreement by PLAINTIFF. PLAINTIFF

Case: 19-30088   Doc# 7744-2   Filed: 06/03/20   Entered: 06/03/20 11:34:38   Page 9
of 31

1  called HR and reported how the PIPs were being conducted. HR said that was strange and in
2  violation of the policy. HR said there is supposed to be a discussion and agreement by the parties
3  as to what the issues were and how they would be addressed. As these improper PIPs continued
4  PLAINTIFF asked STROUP "where is this coming from?" STROUP stated "HR." PLAINTIFF
5  contacted HR and asked —HR said this was coming from STROUP not HR, and they would not
6  even know about PLAINTIFF if STROUP was not bringing the issues to them.

7      21.     In these bi-weekly performance meetings STROUP would get angry and with an
8  red face, and a raised voice, explode at PLAINTIFF. STROUP would stand up at a conference
9  room table directly across from PLAINTIFF and lean forward towards PLAINTIFF in a
10  threatening manner and in an angry and  aggressive fashion pound on the table. STROUP would
11  angrily challenge PLAINTIFF as to what PLAINTIFF had accomplished and what needed to be
12  done. STROUP repeatedly angrily yelled at and threatened PLAINTIFF in a loud and threatening
13  voice that he could be fired at any moment and PG&E did not need to wait for the completion of
14  the PIP. STROUP's bullying nature was par for the course for each of LAL's hires for area
15  supervisor. LAL hired those who would acted in the same manner he did, which was regarded by
16  PLAINTIFF and many as bullying behavior. On one occasion, HR was on the phone during one
17  of these outbursts by STROUP. As a result of STROUP's threatening actions, and for his
18  physical safety, to protect himself, and his piece of mind PLAINTIFF started attending these
19  meetings by phone, or if a third party present.

20      22.     LITTLE began experiencing anxiety before during and after STROUP's angry
21  yelling sessions, that even occurred when Regina McNeal, HR was present on the phone. On one
22  such occasion, LITTLE stopped STROUP in the middle of a typical raised voice and angry
23  argumentative tirade to identify/highlight the behavior for McNeal who was on the phone.
24  Unfortunately, when LITTLE later asked McNeal about such conduct she circled the wagons and
25  stated "that behavior was not out of line and okay for a supervisor to get a point across."

26      23.     In these threatening performance meetings STROUP angrily made age-based
27  critical comments and insults. This included angry comments to PLAINTIFF such as "How old
28  are you?" "When are you going to retire, maybe something to consider?" "Don't you have

7

enough time to retire?" "Don't you have enough time to get out now?" "Don't make any major purchases, you can be fired any day." PLAINTIFF would not respond to these threatening comments because he did not want to further anger STROUP. PLAINTIFF reported this to HR in January 2018, which LITTLE believes angered STROUP even more, since he continued to retaliate. Additionally, it appeared PG&E and PACIFIC had a policy of getting rid of long term employees since LITTLE saw other long term employees being forced out.

24.     During this period LAL and STROUP complained about PLAINTIFF's performance, but did everything they could to bring down PLAINTIFF's performance by loading additional difficult projects on him. However, when these projects were passed off to PLAINTIFF, STROUP and LAL failed to provide the standard documents necessary for a proper transition of the project. This intentional failure to properly transfer the projects caused delays, stress, and additional work for PLAINTIFF to get these projects up to speed. On a lot of these projects the budgets were already near depletion, making it impossible for PLAINTIFF to complete the significant remaining scope of the projects within budget. He was then strongly and unjustifiably and publically criticized and humiliated by LAL for these no-win projects. In 2017, STROUP told PLAINTIFF he could not take his vacation because he needed to finish his projects. STROUP continued with his angry attacks upon PLAINTIFF and became hypercritical of PLAINTIFF's performance. This was communicated to the PLAINTIFF by LAL, STROUP and a second supervisor, Ray Gish, who specifically indicated he would obtain a formal handoff from his Project Manager who was leaving at the end of his two year term as a contract agency hire. This hostile environment greatly increased the difficulties in completing the projects. STROUP would then yell and threaten PLAINTIFF regarding these no win projects, and wrongfully disciplined and threaten him with termination knowing that PLAINTIFF's accommodations made it impossible for him to keep up with his prior production pace, especially since these additional no-win projects dumped on him.

25.     In project status conference calls throughout the years both LAL and STROUP would repeatedly make derisive and disparaging comments about African-American Project Managers. They would make such racially stereotypical comments as "They [African-Americans]

8

don't make good Project Managers." If a "sensitive project" or a VP's special project was being discussed for assignment, they (LAL and STROUP) would justify not giving such a project to an African-American Project Manager by saying, "they [African-American project managers] don't communicate well upstream [upper management]"or "they are very confrontational." When PLAINTIFF stopped a project for safety reasons, a construction supervisor became very hostile to PLAINTIFF and then told others "that N-word can't stop my project."

26.    PLAINTIFF believed at one point all African-American Project Manager (LITTLE included ) were on PIPs. Double standards applied, African-American Project Managers were subjected to strict scrutiny and criticism of their performance and as a result they were all on PIPs. PLAINTIFF was on PIPs off and on January 2017 through his termination in March 2018, which adversely impacted his performance bonuses. While PLAINTIFF was on PIPs, STROUP would constantly and unnecessarily threaten PLAINTIFF by saying that he could be terminated at any time.

27.    In January 2018, STROUP's harassment of PLAINTIFF became so bad that PLAINTIFF made a complaint to PG&E's Ethics and Compliance Department, to report and complain about STROUP's age and race based discrimination and harassment. On February 9, 2018, PLAINTIFF filed a stress claim as a result of these attacks by STROUP.

28.    These reports were supposed to be confidential; however, STROUP somehow found out about PLAINTIFF's complaints and reports and retaliated even more against PLAINTIFF. As a result, STROUP became more angry and further retaliated against PLAINTIFF by becoming even more hypercritical of PLAINTIFF's performance, and assigned projects to PLAINTIFF with no budget. STROUP set up roadblock to make many of the projects even more difficult to complete, but with determination and resourcefulness, PLAINTIFF completed many of these projects despite intentional interference by STROUP and LAL.

29.    In December 2017 or January 2018, in an attempt to get away from this harassment, hostile environment, and discrimination, PLAINTIFF asked STROUP, "What are my options? It looks like you guys do not want me here. I'm going to look for another job in the company." STROUP said PLAINTIFF could not look for another position in company when he

9

was on a PIP. PLAINTIFF called and wrote to HR about this. HR said STROUP was wrong—

and he could not prevent LITTLE from seeking another job within the company—so PLAINTIFF

applied for and interviewed for other jobs at PG&E; however, he was terminated on March 5,

2018 because of his race, age and disability and in retaliation for his complaints before he was

able to transfer to another PG&E job to avoid this discriminatory and hostile environment.

30. On March 5, 2018 in retaliation for his complaints and because of his disability,

race, retaliation and age, PLAINTIFF was wrongfully terminated before he could transfer to

another job at PG&E to escape the hostile environment caused by STROUP and LAL.

31. Plaintiff has foreclosed any necessary administrative filing requirements,

filed the necessary charges with the Department of Fair Employment and Housing, and has

obtained the necessary right to sue authorizations.

**FIRST CAUSE OF ACTION**
**FOR AGE DISCRIMINATION**
**[Government Code § 12940(a)]**
**Against Defendant Employers and Does 1 Through 50**

32. As a FIRST, separate, and distinct cause of action, Plaintiff complains against

DEFENDANT EMPLOYERS and DOES 1 through 50, inclusive, and restates, incorporates by

reference and realleges all the allegations contained in paragraphs 1-31 of this complaint, and

incorporates them by reference into this cause of action as though fully set forth herein.

33. DEFENDANT EMPLOYERS and DOES 1 through 20, inclusive, are entities

and/or employers governed by Government Code § 12940, et seq.

34. At all relevant times, PLAINTIFF was over the age of 40 years old and in the

group protected against age discrimination under Government Code § 12900 et sec.

35. DEFENDANT EMPLOYERS and DOES 1 through 50, inclusive, and each of

them, knew PLAINTIFF was over 40 years old and that PLAINTIFF fell within the definition of

a protected age class under Government Code § 12900 et sec.

36. As described above PLAINTIFF, was subjected to adverse employment actions

including but not limited to unjustified discipline, suspension, the denial of transfer and

10

1   termination of his employment based upon his age (over 40 years old) and thereby discriminated
2   against because of his age prohibited by the laws of the State of California.

3         37.    In engaging in the foregoing conduct, DEFENDANT EMPLOYERS, and DOES 1
4   through 50 aided, abetted, incited, participated in, failed to prevent or investigate, and coerced
5   and/or compelled unlawful employment practices in violation of California's Fair Employment
6   and Housing Act.

7         38.    As a direct and proximate result of the aforementioned acts and omissions of
8   DEFENDANT EMPLOYERS, PLAINTIFF suffered general and compensatory damages,
9   including but not limited to severe emotional distress, fear, worry, humiliation and loss of
10  income (past and future), loss of employment benefits (past and future), and he will continue to
11  so suffer these damages and losses in the future, all in an amount to be proved at trial.

12        39.    The foregoing conduct of DEFENDANT EMPLOYERS and DOES 1 through 50,
13  was engaged in, authorized and ratified by each DEFENDANT and by their managing agents,
14  officers, and directors with a conscious and willful disregard of PLAINTIFF's rights and safety.
15  This complained of conduct was despicable and constituted malice, fraud, and oppression within
16  the meaning of Civil Code section 3294, so as to justify the imposition of punitive damages to
17  punish and set an example of said Defendants, and each of them.

18        40.    As a proximate result of the foregoing conduct, which violated the provisions of
19  Government Code section 12900, et seq., PLAINTIFF has been forced to and will incur
20  attorney's fees and costs in the prosecution of this claim, in an amount to be proved at trial.

21        41.    WHEREFORE, PLAINTIFF requests relief as hereinafter provided.

22
                        **SECOND CAUSE OF ACTION**
23                       **FOR AGE HARASSMENT**
                  **[Government Codes §§ 12940(j) & (k)]**
24                       **Against All Defendants**

25        42.    As a SECOND, separate, and distinct cause of action, PLAINTIFF complains
26  against DEFENDANT EMPLOYERS , DOES 1 through 50, and STROUP and LAL and each of
27  them, and  realleges and restates, all the allegations contained in paragraphs 1-31 of this
28  complaint, and incorporates them by reference into this cause of action as though fully set forth

11

herein.

43.     The above described actions by DEFENDANT EMPLOYERS, DOES 1 through 20, LAL and STROUP, and each of them and their agents/employees, constitute unlawful age harassment in violation of the California Fair Employment and Housing Act, codified in Government Code §§ 12940(j) & (k).

44.     This conduct was so severe and pervasive as to alter the conditions of the working environment and create a hostile and abusive environment based upon PLAINTIFF'S age (over 40 years of age). Furthermore, such conduct was unwanted, unwelcome, and offensive to PLAINTIFF, and would have been offensive to a reasonable person in PLAINTIFF's position.

45.     DEFENDANT EMPLOYERS, DOES 1 through 20, inclusive, LAL and STROUP, knew or should have known that their age harassment of PLAINTIFF, yet failed to take appropriate and timely corrective and preventative action in that regard.

46.     In engaging in the aforementioned conduct, Defendants, and each of them, aided, abetted, incited, compelled, and/or coerced unlawful employment practices in violation of the

47.     As a direct and proximate result of the aforementioned acts of age harassment and omissions of DEFENDANT EMPLOYERS, DOES 1 through 20, inclusive, LAL and STROUP, and each of them, PLAINTIFF suffered general and compensatory damages, including but not limited to severe emotional distress, fear, worry, humiliation, and loss of income (past and future), loss of employment benefits (past and future), and he will continue to so suffer these damages and losses in the future, all in an amount to be proved at trial.

48.     The foregoing conduct of LAL and STROUP, DEFENDANT EMPLOYERS and DOES 1 through 50, was engaged in, authorized and ratified by each DEFENDANT and by their managing agents, officers, and directors with a conscious and willful disregard of PLAINTIFF's rights and safety. This complained of conduct was despicable and constituted malice, fraud, and oppression within the meaning of Civil Code section 3294, so as to justify the imposition of punitive damages to punish and set an example of said Defendants, and each of them.

49.     As a direct and proximate result of the foregoing conduct, which violated the provisions of Government Code § 12940, et seq., PLAINTIFF has been forced to and will incur

12

attorney's fees and costs in the prosecution of this claim, in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**FOR RACE DISCRIMINATION**
**[Government Code § 12940(a)]**
**Against Defendant Employers and Does 1 Through 50**

50.     As a THIRD, separate, and distinct cause of action, PLAINTIFF complains against DEFENDANT EMPLOYERS and DOES 1 through 50, inclusive, and restates, incorporates by reference and realleges all the allegations contained in paragraphs 1-31 of this complaint, and incorporates them by reference into this cause of action as though fully set forth herein.

51.     DEFENDANT EMPLOYERS and DOES 1 through 20, inclusive, are entities and/or employers governed by Government Code § 12940, et seq.

52.     At all relevant times, PLAINTIFF was an African-American employee.

53.     DEFENDANT EMPLOYERS and DOES 1 through 50, inclusive, and each of them, knew PLAINTIFF was African-American, and that PLAINTIFF fell within the definition of a protected class under Government Code § 12900 et sec.

54.     As described above PLAINTIFF, was subjected to adverse employment actions including but not limited to unjustified discipline, suspension, the denial of transfer and termination of his employment based upon his race (African-American) and thereby discriminated against because of his race as prohibited by the laws of the State of California.

55.     In engaging in the foregoing conduct, DEFENDANT EMPLOYERS, and DOES 1 through 50 aided, abetted, incited, participated in, failed to prevent or investigate, and coerced and/or compelled unlawful employment practices in violation of California's Fair Employment and Housing Act.

56.     As a direct and proximate result of the aforementioned acts and omissions of DEFENDANT EMPLOYERS, PLAINTIFF suffered general and compensatory damages, including but not limited to severe emotional distress, fear, worry, humiliation and loss of income (past and future), loss of employment benefits (past and future), and he will continue to so suffer these damages and losses in the future, all in an amount to be proved at trial.

13

57. The foregoing conduct of DEFENDANT EMPLOYERS and DOES 1 through 50, was engaged in, authorized and ratified by each DEFENDANT and by their managing agents, officers, and directors with a conscious and willful disregard of PLAINTIFF's rights and safety. This complained of conduct was despicable and constituted malice, fraud, and oppression within the meaning of Civil Code section 3294, so as to justify the imposition of punitive damages to punish and set an example of said Defendants, and each of them.

58. As a proximate result of the foregoing conduct, which violated the provisions of Government Code section 12900, et seq., PLAINTIFF has been forced to and will incur attorney's fees and costs in the prosecution of this claim, in an amount to be proved at trial.

59. WHEREFORE, PLAINTIFF requests relief as hereinafter provided.

### FOURTH CAUSE OF ACTION
### FOR RACE HARASSMENT
### [Government Codes §§ 12940(j) & (k)]
### Against All Defendants

60. As a FORTH, separate, and distinct cause of action, PLAINTIFF complains against DEFENDANT EMPLOYERS , DOES 1 through 50, and STROUP and LAL, and each of them, and realleges and restates, all the allegations contained in paragraphs 1-31 of this complaint, and incorporates them by reference into this cause of action as though fully set forth herein.

61. The above described actions by DEFENDANT EMPLOYERS, DOES 1 through 20, LAL and STROUP, and each of them, and their agents/employees, constitute unlawful racial harassment in violation of the California Fair Employment and Housing Act, codified in Government Code §§ 12940(j) & (k).

62. This conduct was so severe and pervasive as to alter the conditions of the working environment and create a hostile and abusive environment based upon PLAINTIFF'S race, African-American. Furthermore, such conduct was unwanted, unwelcome, and offensive to PLAINTIFF, and would have been offensive to a reasonable person in PLAINTIFF's position.

63. DEFENDANT EMPLOYERS, DOES 1 through 20, inclusive, LAL and STROUP, and each of them, knew or should have known their race harassment of PLAINTIFF,

14

1  and yet failed to take appropriate and timely corrective and preventative action in that regard.

2       64.    In engaging in the aforementioned conduct, Defendants, and each of them, aided,

3  abetted, incited, compelled, and/or coerced unlawful employment practices in violation of the

4  announced policy of this State against such practices.

5       65.    As a direct and proximate result of the aforementioned acts of age harassment and

6  omissions of DEFENDANT EMPLOYERS, DOES 1 through 20, inclusive, LAL and STROUP,

7  and each of them,  PLAINTIFF suffered general and compensatory damages, including but not

8  limited to severe emotional distress, fear, worry, humiliation, and loss of income (past and

9  future), loss of employment benefits (past and future), and he will continue to so suffer these

10  damages and losses in the future, all in an amount to be proved at trial.

11       66.    The foregoing conduct of LAL and STROUP, DEFENDANT EMPLOYERS and

12  DOES 1 through 50, was engaged in, authorized and ratified by each DEFENDANT and by their

13  managing agents, officers, and directors with a conscious and willful disregard of PLAINTIFF's

14  rights and safety. This complained of conduct was despicable and constituted malice, fraud, and

15  oppression within the meaning of Civil Code section 3294, so as to justify the imposition of

16  punitive damages to punish and set an example of said Defendants, and each of them.

17       67.    As a direct and proximate result of the foregoing conduct, which violated the

18  provisions of Government Code § 12940, et seq., PLAINTIFF has been forced to and will incur

19  attorney's fees and costs in the prosecution of this claim, in an amount to be proven at trial.

20  

**FIFTH CAUSE OF ACTION**
**FOR DISABILITY DISCRIMINATION**
**[Government Code § 12940(a)]**
**Against Defendant Employers and Does 1 Through 50**

21

22

23       68.    As a FIFTH,  separate, and distinct cause of action, PLAINTIFF complains

24  against DEFENDANT EMPLOYERS and DOES 1 through 50, inclusive, and restates,

25  incorporates by reference and realleges all the allegations contained in paragraphs 1-31 of this

26  complaint, and incorporates them by reference into this cause of action as though fully set forth

27  herein.

28       69.    DEFENDANT EMPLOYERS and DOES 1 through 20, inclusive, are entities

15

and/or employers governed by Government Code § 12940, et seq.

70.     At all relevant times, PLAINTIFF was a disabled employee who suffered from a chronic low back strain and bulging disc, who needed accommodations, including leave and a modified work station.

71.     DEFENDANT EMPLOYERS and DOES 1 through 50, inclusive, and each of them, knew PLAINTIFF was disabled, and that PLAINTIFF fell within the definition of a protected class under Government Code § 12900 et sec.

72.     As described above PLAINTIFF, was subjected to adverse employment actions including but not limited to unjustified discipline, suspension, the denial of transfer and termination of his employment based upon his disability (back injury) and thereby was discriminated against because of his disability as prohibited by the laws of the State of California.

73.     In engaging in the foregoing conduct, DEFENDANT EMPLOYERS, and DOES 1 through 50 aided, abetted, incited, participated in, failed to prevent or investigate, and coerced and/or compelled unlawful employment practices in violation of California's Fair Employment and Housing Act.

74.     PLAINTIFF, as a direct and proximate result of the aforementioned acts and omissions of DEFENDANT EMPLOYERS, suffered general and compensatory damages, including but not limited to severe emotional distress, fear, worry, humiliation and loss of income (past and future), loss of employment benefits (past and future), and he will continue to so suffer these damages and losses in the future, all in an amount to be proved at trial.

75.     The foregoing conduct of DEFENDANT EMPLOYERS and DOES 1 through 50, was engaged in, authorized and ratified by each DEFENDANT and by their managing agents, officers, and directors with a conscious and willful disregard of PLAINTIFF's rights and safety. This complained of conduct was despicable and constituted malice, fraud, and oppression within the meaning of Civil Code section 3294, so as to justify the imposition of punitive damages to punish and set an example of said Defendants, and each of them.

76.     As a proximate result of the foregoing conduct, which violated the provisions of Government Code section 12900, et seq., PLAINTIFF has been forced to and will incur

16

attorney's fees and costs in the prosecution of this claim, in an amount to be proved at trial.

77. WHEREFORE, PLAINTIFF requests relief as hereinafter provided.

**SIXTH CAUSE OF ACTION**
**FOR DISABILITY HARASSMENT**
**[Government Codes §§ 12940(j) & (k)]**
**Against All Defendants**

78. As a SIXTH, separate, and distinct cause of action, PLAINTIFF complains against DEFENDANT EMPLOYERS , DOES 1 through 50, and STROUP and LAL, and each of them, and realleges and restates, all the allegations contained in paragraphs 1-31 of this complaint, and incorporates them by reference into this cause of action as though fully set forth herein.

79. At all relevant times, PLAINTIFF was a disabled employee who suffered from a chronic low back strain and bulging disc, who needed accommodations, including leave and a modified work station.

80. The above described actions by DEFENDANT EMPLOYERS, DOES 1 through 20, LAL and STROUP, and each of them, and their agents/employees, constitute unlawful disability harassment in violation of the California Fair Employment and Housing Act, codified in Government Code §§ 12940(j) & (k).

81. This conduct was so severe and pervasive as to alter the conditions of the working environment and create a hostile and abusive environment based upon PLAINTIFF'S disability. Furthermore, such conduct was unwanted, unwelcome, and offensive to PLAINTIFF, and would have been offensive to a reasonable person in PLAINTIFF's position.

82. DEFENDANT EMPLOYERS, DOES 1 through 20, inclusive, LAL and STROUP, and each of them, knew or should have known their disability harassment of PLAINTIFF, and yet failed to take appropriate and timely corrective and preventative action in that regard.

83. In engaging in the aforementioned conduct, Defendants, and each of them, aided, abetted, incited, compelled, and/or coerced unlawful employment practices in violation of the announced policy of this State against such practices.

84. As a direct and proximate result of the aforementioned acts of age harassment and

17

omissions of DEFENDANT EMPLOYERS, DOES 1 through 20, inclusive, LAL and STROUP, and each of them, PLAINTIFF suffered general and compensatory damages, including but not limited to severe emotional distress, fear, worry, humiliation, and loss of income (past and future), loss of employment benefits (past and future), and he will continue to so suffer these damages and losses in the future, all in an amount to be proved at trial.

85. The foregoing conduct of LAL and STROUP, DEFENDANT EMPLOYERS and DOES 1 through 50, was engaged in, authorized and ratified by each DEFENDANT and by their managing agents, officers, and directors with a conscious and willful disregard of PLAINTIFF's rights and safety. This complained of conduct was despicable and constituted malice, fraud, and oppression within the meaning of Civil Code section 3294, so as to justify the imposition of punitive damages to punish and set an example of said Defendants, and each of them.

86. As a direct and proximate result of the foregoing conduct, which violated the provisions of Government Code § 12940, et seq., PLAINTIFF has been forced to and will incur attorney's fees and costs in the prosecution of this claim, in an amount to be proven at trial.

87. WHEREFORE, PLAINTIFF requests relief as hereinafter provided.

**SEVENTH CAUSE OF ACTION
FOR UNLAWFUL RETALIATION
[Government Code § 12940(h)]
Against Defendant Employers and Does 1 Through 20**

88. As a SEVENTH, separate, and distinct cause of action, PLAINTIFF complains against DEFENDANT EMPLOYERS and DOES 1 through 50, inclusive, and restates, incorporates by reference and realleges all the allegations contained in paragraphs 1-87 of this complaint, and incorporates them by reference into this cause of action as though fully set forth herein.

89. DEFENDANT EMPLOYERS, and DOES 1 through 20 and/or their agents, are entities subject to suit for unlawful retaliation under the California Fair Employment and Housing Act, Government Code § 12940, et seq.

90. During his employment by said DEFENDANT EMPLOYERS, PLAINTIFF

18

opposed and objected to Defendants' unlawful employment practices, which included *inter alia*, age, race, disability harassment and discrimination, and DEFENDANT EMPLOYERS, and DOES 1 through 20 refusal to correct the age, race, disability harassment and discrimination.

91.     After PLAINTIFF voiced his complaints and objections and sought the protections of and/or to exercise his rights under the California Fair Employment and Housing Act, he was subjected to retaliatory adverse employment actions carried out in an unnecessary hostile manner including unjustified discipline, suspension, the denial of transfer and termination of his employment as described above, and a pattern of retaliation by racial and age based slurs, comments and insults, hyper-criticism, making his performance more difficult by setting up roadblocks and assigning projects with hardly any budget remaining, and threats of termination for reporting and complaining about age, race and disability harassment, and discrimination.

92.     The foregoing described retaliatory acts were taken because of PLAINTIFF's objections and opposition to Defendants' unlawful employment practices as described above.

93.     In engaging in the aforementioned conduct, DEFENDANT EMPLOYERS, and each of them, aided, abetted, incited, compelled, and/or coerced unlawful employment practices in violation of the announced policy of this State against such practices.

94.     PLAINTIFF, as a direct and proximate result of the aforementioned acts and omissions of DEFENDANT EMPLOYERS, suffered general and compensatory damages, including but not limited to severe emotional distress, fear, worry, humiliation and loss of income (past and future), loss of employment benefits (past and future), and he will continue to so suffer these damages and losses in the future, all in an amount to be proved at trial.

95.     The foregoing conduct of DEFENDANT EMPLOYERS and DOES 1 through 50, was engaged in, authorized and ratified by each DEFENDANT and by their managing agents, officers, and directors with a conscious and willful disregard of PLAINTIFF's rights and safety. This complained of conduct was despicable and constituted malice, fraud, and oppression within the meaning of Civil Code section 3294, so as to justify the imposition of punitive damages to punish and set an example of said Defendants, and each of them.

96.     As a proximate result of the foregoing conduct, which violated the provisions of

19

Case: 19-30088    Doc# 7744-2    Filed: 06/03/20    Entered: 06/03/20 11:34:38    Page 22 of 31

1   Government Code section 12900, et seq., PLAINTIFF has been forced to and will incur

2   attorney's fees and costs in the prosecution of this claim, in an amount to be proved at trial.

3       97.     WHEREFORE, PLAINTIFF requests relief as hereinafter provided.

4
5                           **EIGHTH CAUSE OF ACTION**
                            **FOR FAILURE TO PREVENT,**
           **INVESTIGATE, AND/OR REMEDY UNLAWFUL HARASSMENT,**
6                   **DISCRIMINATION, AND RETALIATION**
                       **[Government Codes §§ 12940(j) & (k)]**
7           **Against Defendant Employers and Does 1 Through 20**

8       98.     As an EIGHTH, separate, and distinct cause of action, PLAINTIFF complains

9   against DEFENDANT EMPLOYERS and DOES 1 through 50, inclusive, and restates,

10  incorporates by reference and realleges all the allegations contained in paragraphs 1-97 of this

11  complaint, and incorporates them by reference into this cause of action as though fully set forth

12  herein.

13      99.     DEFENDANT EMPLOYERS and DOES 1 through 20, and/or their

14  agents/employees, knew or should have known of the above-described unlawful age, race,

15  disability, discrimination, harassment and retaliation perpetrated against PLAINTIFF. Despite

16  said knowledge, DEFENDANT EMPLOYERS and DOES 1 through 20 failed to conduct an

17  adequate investigation into the nature and substance of PLAINTIFF's complaints, or the nature

18  and substance of the ongoing age, race, disability discrimination, harassment and retaliation to

19  which PLAINTIFF was subjected and failed to remedy or prevent it. Furthermore DEFENDANT

20  EMPLOYERS and DOES 1 through 20 failed to take immediate and appropriate corrective

21  action so as to discipline any of the offenders, and thereby remedy the harassment,

22  discrimination, and retaliation, and prevent further such acts. Said DEFENDANT EMPLOYERS

23  and DOES 1 through 20 also failed to take all reasonable steps to prevent such discrimination,

24  harassment and retaliation from occurring.

25      100.    The response of DEFENDANT EMPLOYERS, DOES 1 through 20, and/or their

26  agents/employees to the  knowledge these illegal events were occurring  was so inadequate as to

27  establish and demonstrate a deliberate indifference to, or tacit or actual authorization of the

28  complained of age, race, disability discrimination, harassment and retaliation.

20

1      101.   By failing to take all reasonable steps to prevent, investigate, and/or remedy the

2 unlawful discrimination, harassment, and/or retaliation directed at PLAINTIFF, DEFENDANT

3 EMPLOYERS and DOES 1 through 20 committed unlawful employment practices as described

4 and prohibited in California Government Code § 12940, et. seq.

5      102.   In engaging in the aforementioned conduct, DEFENDANT EMPLOYERS and

6 DOES 1 through 20, and each of them, aided, abetted, incited, compelled, and/or coerced

7 unlawful employment practices in violation of the announced policy of this State against such

8 practices.

9      103.   PLAINTIFF, as a direct and proximate result of the aforementioned acts and

10 omissions of DEFENDANT EMPLOYERS, suffered general and compensatory damages,

11 including but not limited to severe emotional distress, fear, worry, humiliation and loss of

12 income (past and future), loss of employment benefits (past and future), and he will continue to

13 so suffer these damages and losses in the future, all in an amount to be proved at trial.

14      104.   The foregoing conduct of DEFENDANT EMPLOYERS and DOES 1 through 50,

15 was engaged in, authorized and ratified by each DEFENDANT and by their managing agents,

16 officers, and directors with a conscious and willful disregard of PLAINTIFF's rights and safety.

17 This complained of conduct was despicable and constituted malice, fraud, and oppression within

18 the meaning of Civil Code section 3294, so as to justify the imposition of punitive damages to

19 punish and set an example of said Defendants, and each of them.

20      105.   As a proximate result of the foregoing conduct, which violated the provisions of

21 Government Code section 12900, et seq., PLAINTIFF has been forced to and will incur

22 attorney's fees and costs in the prosecution of this claim, in an amount to be proved at trial.

23      106.   WHEREFORE, PLAINTIFF requests relief as hereinafter provided.

24

**NINTH CAUSE OF ACTION**
**FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
25 **AGAINST DEFENDANT EMPLOYERS AND DOES 1 THROUGH 50**

26      107.   As an NINTH, separate, and distinct cause of action, PLAINTIFF complains

27 against DEFENDANT EMPLOYERS and DOES 1 through 50, inclusive, and restates,

28

21

COMPLAINT FOR DAMAGES

1 incorporates by reference and realleges all the allegations contained in paragraphs 1-106 of this
2 complaint, and incorporates them by reference into this cause of action as though fully set forth
3 herein.

4       108.    PLAINTIFF's employment was terminated in violation of fundamental public
5 policies of the State of California, including, without limitation, the right to protections against
6 discrimination, harassment, and retaliation because of age, race and disability, protesting and
7 reporting such discrimination and harassment and because he sought and obtained leave, justified
8 and allowed under CFRA and FMLA, and because he sought leave and worksite modification as
9 accommodations for his chronic physical disabilities (back strain and bulging disc) as described
10 herein. These fundamental public policies inure to the benefit of the public, and not just the
11 private interests of the employer and employee. As set forth above, said actions by
12 DEFENDANT EMPLOYERS, and Does 1-50, were wrongful and in violation of the
13 fundamental principles of the public policy of the State of California as reflected in its laws,
14 objectives and policies. Said laws, which establish these fundamental public policies include,
15 without limitation: Government Code section 12900, et seq., including but not limited to
16 Government Code sections 12940; 12945.2 and related sections, and they inure to the benefit of
17 the public, and not just the private interests of the employer and/or PLAINTIFF.

18       109.    PLAINTIFF, as a direct and proximate result of the aforementioned acts and
19 omissions of DEFENDANT EMPLOYERS, and DOES 1-50, suffered general and
20 compensatory damages, including but not limited to severe emotional distress, fear, worry,
21 humiliation and loss of income (past and future), loss of employment benefits (past and future),
22 damage to employability, and he will continue to so suffer these damages and losses in the future,
23 all in an amount to be proved at trial.

24       110.    The foregoing conduct of DEFENDANT EMPLOYERS and DOES 1 through 50,
25 was engaged in, authorized and ratified by each DEFENDANT and by their managing agents,
26 officers, and directors with a conscious and willful disregard of PLAINTIFF's rights and safety.
27 This complained of conduct was despicable and constituted malice, fraud, and oppression within
28 the meaning of Civil Code section 3294, so as to justify the imposition of punitive damages to

22

Case: 19-30088   Doc# 7744-2   Filed: 06/03/20   Entered: 06/03/20 11:34:38   Page 25 of 31

1    punish and set an example of said Defendants, and each of them.

2           111.    As a proximate result of the foregoing conduct, which violated the provisions of

3    Government Code section 12900, et seq., PLAINTIFF has been forced to and will incur

4    attorney's fees and costs in the prosecution of this claim, in an amount to be proved at trial.

5           112.    WHEREFORE, PLAINTIFF requests relief as hereinafter provided.

6

7                              **TENTH CAUSE OF ACTION**
                                      **DEFAMATION**
8                               **Against All Defendants**

9           113.    As an TENTH, separate, and distinct cause of action, PLAINTIFF complains

10   against LAL, STROUP, DEFENDANT EMPLOYERS and DOES 1 through 50, inclusive, and

11   restates, incorporates by reference and realleges all the allegations contained in paragraphs 1-112

12   of this complaint, and incorporates them by reference into this cause of action as though fully set

13   forth herein.

14          114.    PLAINTIFF is informed and believes LAL, STROUP, DEFENDANT

15   EMPLOYERS, and each of them, and DOES 1 through 50, by and through their agents and

16   employees, including but not limited to defendant LAL, STROUP and each of them, by the

17   herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally

18   cause excessive and unsolicited internal and external publications and republications of

19   defamation, of and concerning PLAINTIFF, to third persons, and to the community, including

20   but not limited to publications at DEFENDANT EMPLOYERS, PG&E, PACIFIC and, and each

21   of them.

22          115.    These false and defamatory oral and written statements were published by LAL

23   and STROUP, and by other unknown agents and employees of DEFENDANT EMPLOYERS.

24   These false and defamatory oral and written statements expressly and impliedly stated that

25   PLAINTIFF, was incompetent, failed to complete his work on time, failed to perform his duties,

26   was a poor performer, and took unjustified and unnecessary leave.

27          116.    While the precise dates of these oral defamatory publications are not known to

28   PLAINTIFF he believes the publications of this defamation has continued to this day and these

Case: 19-30088    Doc# 7744-2    Filed: 06/03/20    Entered: 06/03/20 11:34:38    Page 26
                                    of 31

1    punish and set an example of said Defendants, and each of them.

2           111.    As a proximate result of the foregoing conduct, which violated the provisions of

3    Government Code section 12900, et seq., PLAINTIFF has been forced to and will incur

4    attorney's fees and costs in the prosecution of this claim, in an amount to be proved at trial.

5           112.    WHEREFORE, PLAINTIFF requests relief as hereinafter provided.

6

7                              **TENTH CAUSE OF ACTION**
                                      **DEFAMATION**
8                               **Against All Defendants**

9           113.    As an TENTH, separate, and distinct cause of action, PLAINTIFF complains

10   against LAL, STROUP, DEFENDANT EMPLOYERS and DOES 1 through 50, inclusive, and

11   restates, incorporates by reference and realleges all the allegations contained in paragraphs 1-112

12   of this complaint, and incorporates them by reference into this cause of action as though fully set

13   forth herein.

14          114.    PLAINTIFF is informed and believes LAL, STROUP, DEFENDANT

15   EMPLOYERS, and each of them, and DOES 1 through 50, by and through their agents and

16   employees, including but not limited to defendant LAL, STROUP and each of them, by the

17   herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally

18   cause excessive and unsolicited internal and external publications and republications of

19   defamation, of and concerning PLAINTIFF, to third persons, and to the community, including

20   but not limited to publications at DEFENDANT EMPLOYERS, PG&E, PACIFIC and, and each

21   of them.

22          115.    These false and defamatory oral and written statements were published by LAL

23   and STROUP, and by other unknown agents and employees of DEFENDANT EMPLOYERS.

24   These false and defamatory oral and written statements expressly and impliedly stated that

25   PLAINTIFF, was incompetent, failed to complete his work on time, failed to perform his duties,

26   was a poor performer, and took unjustified and unnecessary leave.

27          116.    While the precise dates of these oral defamatory publications are not known to

28   PLAINTIFF he believes the publications of this defamation has continued to this day and these

Case: 19-30088    Doc# 7744-2    Filed: 06/03/20    Entered: 06/03/20 11:34:38    Page 26
of 31

false and defamatory accusations were used to cause and justify PLAINTIFF's termination and damage his employability.

117.    Defendants thereby published and republished orally and in writing false and defamatory statements which expressly and impliedly accused PLAINTIFF was incompetent, failed to complete his work on time, failed to perform his duties, was a poor performer, and took unjustified and unnecessary leave.

118.    These publications were outrageous, negligent, reckless, intentionally and maliciously published and foreseeably republished by Defendants, and each of them, by and through their agents and employees and recipients of the defamation. PLAINTIFF is informed and believes that the negligent, reckless, and intentionally false publications by Defendants, and each of them, were and continue to be, foreseeably published and republished by Defendants, their agents and employees, and recipients in the community. These foreseeable republications included those that PLAINTIFF was forced and compelled to republish after his termination, in an attempt to obtain an explanation of exactly what these allegations were based upon so that he could refute these allegations and reverse the decision to discipline and terminate PLAINTIFF. Additionally, PLAINTIFF has been forced and compelled, and will be forced and compelled to foreseeably republish these defamatory statements to find re-employment, and to members of the community who have known PLAINTIFF as an employee of DEFENDANT EMPLOYERS for years and have questioned him as to why he was no longer working there. PLAINTIFF hereby seeks damages for these publications and all publications and foreseeable republications discovered up to the time of trial.

119.    During the above-described time-frame, Defendants, their agents and employees, and each of them, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited publication of this defamation, of and concerning PLAINTIFF, to third persons, who had no need or desire to know. Those third person(s) to whom these Defendants published this defamation are believed to include, but are not limited to, other agents and employees of Defendants, and each of them, and to the community, all of whom are known to Defendants, and each of them, but unknown at this time to PLAINTIFF.

COMPLAINT FOR DAMAGES

120. PLAINTIFF is informed, believes, and fears that these false and defamatory per se statements will continue to be published by Defendants, their agents and employees, and each of them, and will be foreseeably republished by their recipients, all to the ongoing harm and injury to PLAINTIFF's business, professional, and personal reputations. PLAINTIFF also seeks redress in this action for all foreseeable republications, including his own compelled self-publication of these defamatory statements.

121. The defamatory meaning of all of the above-described false and defamatory statements and their reference to PLAINTIFF, were understood by these above-referenced third person recipients and other members of the community who are known to Defendants, and each of them, but unknown to PLAINTIFF at this time and were used to cause and justify PLAINTIFF's wrongful discipline and termination.

122. None of Defendants' defamatory publications or republications against PLAINTIFF referenced above are true.

123. The above defamatory statements were, and were understood to be, assertions of fact, and not opinion. PLAINTIFF is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants, and each of them, and foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and damages for which PLAINTIFF seeks redress by this action.

124. Each of these false defamatory per se publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which PLAINTIFF denies existed), since the publications, and each of them, were made with hatred, ill will, and an intent to vex, annoy, and injure PLAINTIFF, and for an improper purpose, that is, in order to cause and justify the illegal termination of PLAINTIFF because of his disabilities, age, race and his need for and use of FMLA/CFRA leave and accommodations.

125. The publications of the complained of defamation were malicious because any alleged investigation was intentionally reckless, did not seek the truth, and in fact avoided the truth. Each of these defamatory publications by Defendants, and each of them, were made with

25

1   knowledge that no investigation supported the unsubstantiated, and obviously false statements.

2      126.   The Defendants, their agents and employees published and republished these

3 statements knowing them to be false, unsubstantiated by any non-reckless investigation, and to

4 be the product of hostile witnesses. These acts of publication were known by Defendants, and

5 each of them, to be negligent to such a degree as to be reckless. In fact, not only did Defendants,

6 and each of them, have no reasonable basis to believe these statements, and no belief in the truth

7 of these statements, they, in fact, knew the statements to be false. Defendants, and each of them,

8 excessively, negligently, and recklessly published these statements to individuals with no need to

9 know, and who made no inquiry, and who had a mere general or idle curiosity regarding this

10 information.

11      127.   The above complained of publications by Defendants, and each of them, were

12 made with hatred and ill will towards PLAINTIFF and the design and intent to injure

13 PLAINTIFF, his good name, his reputation, employment and employability. Defendants, and

14 each of them, published these statements, with an illegal purpose of justifying his illegal and

15 discriminatory termination for the reasons described in this complaint, and not with an intent to

16 protect any interest intended to be protected by any privilege, but with negligence, recklessness

17 and/or an intent to injure PLAINTIFF, destroy his reputation and cause and justify his

18 termination. Furthermore, the above said defamatory publications were made as the result of

19 prior quarrels and disputes between PLAINTIFF and Defendants, and each of them, over his use

20 of, and requests for CFRA time off and disability leave, and for his reports and complaints of

21 mistreatment.

22      128.   Therefore, no privilege existed to protect any of the Defendants from liability for

23 any of these aforementioned publications or republications of defamation.

24      129.   As a proximate result of the publication and republication of these defamatory

25 statements by Defendants, their agents and employees, and each of them, PLAINTIFF has

26 suffered injury to his personal, business and professional reputation including suffering

27 embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of

28 employment, and employability, and significant economic loss in the form of lost wages and

1   future earnings caused by damage to employability, all to PLAINTIFF's economic, emotional,
2   and general damage in an amount according to proof.

3       130.    Defendants, and each of them, committed the acts alleged herein recklessly,
4   maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFF,
5   for an improper and evil motive amounting to malice (as described above), abused and/or
6   prevented the existence of any conditional privilege, which in fact did not exist, all with a
7   reckless and conscious disregard of PLAINTIFF's rights.

8       131.    The foregoing conduct of LAL, STROUP, DEFENDANT EMPLOYERS and
9   DOES 1 through 50, was engaged in, authorized and ratified by each DEFENDANT and by their
10  managing agents, officers, and directors with a conscious and willful disregard of PLAINTIFF's
11  rights and safety. This complained of conduct was despicable and constituted malice, fraud, and
12  oppression within the meaning of Civil Code section 3294, so as to justify the imposition of
13  punitive damages to punish and set an example of said Defendants, and each of them.

14      132.    As a proximate result of the foregoing conduct, which violated the provisions of
15  Government Code section 12900, et seq., PLAINTIFF has been forced to and will incur
16  attorney's fees and costs in the prosecution of this claim, in an amount to be proved at trial.

17      133.    WHEREFORE, PLAINTIFF requests relief as hereinafter provided.

18                              **PRAYER**

19      WHEREFORE, PLAINTIFF prays judgment against the Defendants, and each of them, as
20  follows:

21      1.      For general, emotional distress and special damages according to proof;

22      2.      For loss of earnings and earning capacity, according to proof;

23      3.      For pre-judgment interest to the extent allowed by law;

24      4.      For costs of suit incurred herein;

25      5.      For punitive and/or exemplary damages in an amount to punish Defendants;

26      6.      For attorney's fees in prosecuting this action; and,

27      7.      For such other and further relief as the Court deems just and proper.

28

Case: 19-30088    Doc# 7744-2    Filed: COMPLAINT FOR DAMAGES 06/03/20 11:34:38    Page 30
of 31

Dated: November 20, 2018    CHRISTOPHER H. WHELAN, INC

Christopher H. Whelan, Esq.
Attorney for PLAINTIFF, **DWYANE LITTLE**

## DEMAND FOR JURY TRIAL

PLAINTIFF hereby demands trial by jury on all issues so triable in the Complaint.

Dated: November 20, 2018    CHRISTOPHER H. WHELAN, INC.

Christopher H. Whelan, Esq.
Attorneys for PLAINTIFF, **DWYANE LITTLE**

28

COMPLAINT FOR DAMAGES