**<u>EXHIBIT B</u>**

**(Redline Comparison)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UPDATED SUMMARY CHART OF OBJECTIONS TO CONFIRMATION OF THE PLAN

The Plan Proponents ~~have~~ filed ~~contemporaneously herewith an amended Plan, and intend to file a proposed~~the *Debtors' and Shareholder Proponents' Draft Joint Chapter 11 Plan of Reorganization dated June 3,* 2020 [Docket No. 7736], filed a Proposed Confirmation Order on May 26, 2020 [Docket No. 7581], and will file a revised Plan and Confirmation Order (the "**Proposed Confirmation Order**"), that incorporates the additional ~~language~~changes referenced below, as applicable.[2]

I.      OBJECTIONS

| Objecting Party | Summary of Objection | Plan Proponents' Response |
|---|---|---|
| 1.  **Ad Hoc Committee of Holders of Trade Claims ("Trade** | 1.       The Plan violates section 1124 of the Bankruptcy Code by failing to pay holders of General Unsecured Claims interest accruing after the Effective Date to the extent distributions are made after the | 1.       Resolved.  ~~The Plan has been revised to pay holders of Allowed General Unsecured Claims any interest accrued in respect of such Allowed Claim from the Petition Date through the date of such distributions on account of such Allowed Claim, at the applicable rate provided for in such Claim's treatment pursuant to the Plan. *See* Plan at Article VII, Section 7.4.~~<br><br>2.       Resolved. ~~The Plan Proponents agree that postpetition interest on Cure Amounts should be paid in accordance with the terms of the assumed executory contract or unexpired lease (or in the absence of a contract rate, at the applicable state statutory rate).~~ |

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Memorandum, filed contemporaneously herewith, as applicable.

[2] As discussed with the Court at the pre-confirmation status conference on Mary 19, 2020, the Debtors do not intend to address at the Confirmation Hearing objections to proposed Cure Amounts filed by executory contract or lease counterparties and those Objections will be preserved for later hearing as necessary. As a result, Objections with respect to the proposed Cure Amounts are not set forth in this Objection Summary Chart; however, to the extent an executory contract or lease counterparty has raised an Objection to any other aspect of the Plan or confirmation, including without limitation, any Objection to the Plan's release or injunction provisions or the treatment of contingent and unliquidated indemnification Claims, those Objections are addressed below.

| | | |
|---|---|---|
| **Committee**") [Docket No. 7288] | Effective Date.<br><br>2.  Limiting postpetition interest on Cure Amounts to the Federal Judgment Rate violates Bankruptcy Code sections 365(b) and 1123(d).<br><br>3.  The Plan improperly grants the Debtors the ability to pay Cure Amounts for assumed executory contracts to contract counterparties rather than the actual and valid holders that have been assigned pursuant to Bankruptcy Rule 3001(e).<br><br>4.  The Plan improperly pays postpetition interest on General Unsecured Claims at the Federal Judgment Rate. | 3.  ~~The Debtors will pay Cure Amounts to the appropriate assignee of a Claim subject to proper documentation of any assignment.~~<br><br>3.  Resolved.<br><br><br><br>4.  ~~-~~Addressed, subject to appeal.  The Plan provides for the payment of postpetition interest in accordance with the Bankruptcy Code and this Court's *Interlocutory Order Regarding Postpetition Interest* [Docket No. 5669] and *related Memorandum Decision Regarding Postpetition Interest* [Docket No. 5226]. |
| **2.  Adventist Health, AT&T, Paradise Entities, and Comcast ("Ad Hoc Group of Business Claimants**") [Docket No. 7339]<br><br>Joinder by **Additional Objecting** Camp Fire Victims [Docket No. 7357]<br><br>Joinder by **Certain Fire Victims** [Docket No. 7440] | 1.  The Plan must satisfy the section 1129(b)(1) "cram-down" requirements if the Plan is rejected by Class 5A-III (Holdco Fire Victim Claims) and Class 5B-III (Utility Fire Victim Claims).<br><br>2.  Section 10.3 of the Plan should be revised to provide that Administrative Expense Claims shall not be discharged pursuant to the Plan.  Section 10.9 of the Plan should be revised to include broader language that nonconsensual releases of "Causes of Action" are not permitted.<br><br>3.  The "Interpretation: Application of Definitions and Rules of Contraction" section should be revised in accordance with the proposed language in the Objection. | 1.  Not applicable.  ~~As evidenced by the Voting Certification, the Plan has been overwhelmingly accepted by creditors holding Claims in Class 5A-III (Holdco Fire Victim Claims) and Class 5B-III (Utility Fire Victim Claims).~~<br><br>2.  ~~Further clarifications to Sections 10.3 and 10.9 of the Plan are unnecessary.  Section 10.3 ("Release and Discharge of Debtors") already provides that "except as otherwise provided by the Plan" the discharge applies.  Section 2.1 ("Administrative Expense Claims") is clear that the Plan does not discharge any Administrative Expense Claim unless the Administrative Expense Claim is Allowed and has been satisfied in full by the Effective Date.  Section 10.9 is clear that nonconsensual releases are not permitted.~~Resolved.<br><br>3.  Resolved.~~The Plan Proponents have revised the "Interpretation: Application of Definitions and Rules of Contraction" section to incorporate the Ad Hoc Group of Business Claimant's proposed language. *See* Plan at Article I.~~ |
| **3.  Anthony Gantner** [Docket No. 7263] | 1.  The Plan should specifically state that public safety power shutoff ("**PSPS**") claims are Administrative Expense Claims that are not subject to discharge. | 1.  PSPS claims will be treated in accordance with the Plan.  If they are sustained and determined to be Administrative Expense Claims they will be treated as such.  It is inappropriate and unnecessary to amend the Plan to specifically highlight how the Claim of a single claimant will be treated particularly when the Claim has not been proven, the lawsuit asserting the Claim has been dismissed and the nature of the Claim, if any, |

Case: 19-30088   Doc# 7793-2   Filed: 06/05/20   Entered: 06/05/20 09:19:53   Page 3 of 24

| | | has not been determined. |
|---|---|---|
| **4. ArborMetrics Solutions, LLC** [Docket No. 7233]<br><br>**Asplundh Construction, LLC** [Docket No. 7236]<br><br>**Trees LLC** [Docket No. 7239]<br><br>**Utility Tree Service, LLC** [Docket No. 7241]<br><br>**Western Environmental Consultants, LLC** [Docket No. 7242] | 1. To the extent the parties[3] are parties to an executory contract with the Debtors as of the Petition Date, the Plan and Cure Notice improperly modify the indemnity rights of assumed executory contracts. | 1. ~~The Plan Proponents agree that none of the agreements between the Debtors and each of the parties are executory and, therefore, any contracts have been or will be removed from the Schedule of Assumed Contracts. Nonetheless, as explained in Section IV(B) of the Memorandum, the Plan and Cure Notice do not unilaterally modify the terms of assumed executory contracts. Rather, the Debtors are assuming specific executory contracts in their entirety. However, in determining the Debtors' obligations in connection with assumption, the Debtors are entitled to enforce Bankruptcy Code section 502(e)'s disallowance of prepetition Claims based on contingent indemnity or contribution rights, which are not properly part of the assumed obligations~~<u>May be resolved by UCC settlement, subject to documentation</u>. |
| **5. BOKF, NA** ("**BOKF**") in its capacity as successor indenture trustee under the Utility Senior Notes Indentures [Docket No. 7290] | 1. The Plan should provide for full payment of BOKF's Trustee Fees, expenses, costs and other disbursements and indemnities incurred in connection with the impaired Utility Senior Note Claims compromised under the Noteholder RSA (the "**Trustee Fees**"). | 1. <u>Resolved. Objection withdrawn [Docket No. 7735].</u>~~1. This is not a confirmation issue. The relevant indentures are not being reinstated. All of BOKF's rights are reserved to be paid in full pursuant to its Charging Lien or to assert an Allowed Administrative Expense Claim against the Debtors' estates for its Trustee Fees, but the resolution of BOKF's claims for its Trustee Fees is not a requirement of confirmation.~~<br>~~a. The Plan provides for the payment of only certain agreed-upon Trustee Fees arising under the Utility Impaired Senior Note Documents and Utility Short-Term Senior Note Documents. This treatment is consistent with the Noteholder RSA previously approved by the Court, and the holders of both classes of Utility Impaired Senior Note Claims and Utility Short-Term Senior Note Claims have overwhelmingly voted to accept such treatment. BOKF is bound by such treatment with respect to its Claims~~ |

[3] The Plan Proponents have summarized the parties' Objections collectively because the Objections are identical with the exception of the Cure Amounts listed in each respective Objection.

Case: 19-30088   Doc# 7793-2   Filed: 06/05/20   Entered: 06/05/20 09:19:53   Page 4 of 24

| | | arising under these notes. |
|---|---|---|
| | | b. The Plan provides for a Charging Lien in favor of a Funded Debt Trustee (including BOKF) on any distribution made to holders of Allowed Utility Senior Notes Claims, including the Utility Impaired Senior Note Claims and the Utility Short-Term Senior Note Claims. |
| | | c. BOKF's claims arising under the Utility Reinstated Senior Notes will be paid in full in Cash on the Effective Date at the Allowed amount. |
| | | The Plan Proponents reserve any and all rights to object to BOKF's claims for Trustee Fees. |
| 6. **California Franchise Tax Board** (the "**CFTB**") [Docket No. 7280] | 1. Plan treatment to pay an Allowed Priority Tax Claim that is not yet due and payable on or before the Effective Date may result in repayment during a period of greater than five years, contrary to section 1129(a)(9)(C) of the Bankruptcy Code. | 1. The Plan provides that all Allowed Priority Tax Claims will be paid in accordance with the requirements of the Bankruptcy Code. *See* Section 2.4 of the Plan; *see also* 11 U.S.C. 1129(a)(9)(C) (specifically referencing treatment of "allowed" priority tax claims). Moreover, there is nothing controversial about paying Allowed Priority Tax Claims in the ordinary course of business when such claims become due and payable under applicable law (inclusive of any due and payable interest). CFTB admits in its Objection that it does not oppose payment of its Allowed Priority Tax Claims in the ordinary course of business so long as the Plan provides for payment of postpetition interest on such Allowed Claims at the applicable interest rate. Because the Plan provides for the payment of postpetition interest on Allowed Priority Tax Claims at the applicable interest rate, CFTB's Objection should be overruled. |
| | | 1. Resolved. See below for status of resolution on the payment of postpetition interest on Allowed Priority Tax Claims. |
| | 2. The Plan fails to provide for postpetition interest on Allowed Priority Tax Claims in violation of section 1129(a)(9)(iii) of the Bankruptcy Code, which requires such claims be treated no less favorably than the most favored nonpriority unsecured claim. | 2. Resolved. Section 2.4 of the Plan provides for the payment of postpetition interest on has been revised to further clarify that an Allowed Priority Tax Claims . Section 7.4 of the Plan also provides for the payment of postpetition interest that is not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligation becomes due, "together with any interest due at the applicable |
| | a. The applicable rate of interest is the rate determined under California law. | |
| | 3. The Plan discharges Allowed Priority Tax Claims even if the Debtors evade or defeat payment of such taxes, in violation of section 1141(d)(6) of the Bankruptcy Code. | interest rate from the Petition Date through the date of distribution in respect of Disputed Claims that subsequently become Allowed |

| | | Claims.nonbankruptcy rate." |
|---|---|---|
| | | a. Section 2.4 of the Plan and section 511 of the Bankruptcy Code provide that the interest rate payable on Allowed Priority Tax Claims is the rate under applicable nonbankruptcy law. |
| | 4.      The Plan discharge and release provisions are overbroad and exceed the scope of section 1141(d)(1) of the Bankruptcy Code by discharging all claims that arose prior to the Effective Date (as opposed to the Confirmation Date). | 3.      The Plan does not discharge the Debtors from taxes due with respect to the Debtors' submission of a fraudulent return or willful attempt to evade or to defeat such tax.  *See* Section 10.3 of the Plan (providing for a discharge "to the fullest extent permitted by section 1141 of the Bankruptcy Code"); *see also* 11 U.S.C. 1141(d)(6) (excepting from discharge tax claims for which a debtor made a fraudulent return or willfully attempted to evade or defeat such tax).  Moreover, there is no allegation that the Debtors have engaged in such conduct in respect of their tax liabilities, and in any case, even *if* the Plan purported to discharge such liabilities, such a discharge would be ineffective by the plain language of section 1141(d)(6) of the Bankruptcy Code. |
| | 5.      The Plan release provisions are overbroad by forcing on all creditors (voting or nonvoting) a waiver and release of any and all Claims, rights and liabilities in exchange for distributions under the Plan on all creditors. | |
| | 6.      The Plan release provisions improperly discharge rights of setoff, recoupment, and affirmative defenses to claims the Debtors may bring against creditors. | 4.  As explained in Section IV(B)(1) of the Memorandum, the Plan's discharge provision is customary and complies with the Bankruptcy CodeResolved. The Plan Proponents believe changes to Section 10.3 resolve the Objection. |
| | 7.      The "Interpretation" section of the Plan provides improper unfettered authority to the Debtors to interpret the meaning of the Plan. | 5.  Resolved. As explained in Section II(A)(3)(a) and Section IV(B)(1) of the Memorandum, the release provisions in the Plan are permissible under the Bankruptcy Code and applicable law, and the third-party releases are fully consensual.  The Plan Proponents have further revised the Plan to delete Section of 6.1 and revised Section 10.3 as reflected in the draft amended plan filed June 3, 2020 [Docket No. 7736]. |
| | 8.      Any characterization of payments made through the Plan as 'restitution' shall not be binding for California state tax purposes. | 6.  Resolved.  The Plan does not deprive any claimant of their defenses—including setoff or recoupment—to the extent they otherwise have those rights. This is standard discharge language commonly found in other chapter 11 plans and is expressly qualified by any limitations pursuant to section 1141 of the Bankruptcy Code. *See* Section IV(B)(1) of the Memorandum.  Furthermore, the Debtors have amended Section 10.13 of the Plan and will amend the Proposed Confirmation Order to provide that nothing in Sections 10.8 and 10.9 of the Plan "shall discharge, release, enjoin, or otherwise bar . . . (c) any *affirmative defense*, valid right of |

Case: 19-30088   Doc# 7793-2   Filed: 06/05/20   Entered: 06/05/20 09:19:53   Page 6
of 24

| | | |
|---|---|---|
| | | 7. Resolved. *See* response to Ad Hoc Group of Business Claimants' Objection above regarding the Plan Proponents' modification to this provision. |
| | | 7. Resolved. |
| | | 8. ResolvedAddressed. The deductibility of payments to governmental entities for federal (and therefore, in turn, California) income tax purposes must comply with 26 U.S.C. § 162(f). As the statute itself reflects, the identification of payments in the applicable Plan as "restitution" is a necessary prerequisite to deductibility but is not determinative of the deduction. Accordingly, the Plan Proponents do not assert that the Plan preempts the CFTB's rights of review and determination, with all rights reserved. |
| 7. **California State Agencies** [Docket No. 7281] Joinder by **United States of America** [Docket No. 7292] | 1. The Plan improperly provides the Debtors with a discharge of all Claims that arose prior to the Effective Date, rather than the Confirmation Date as provided for in section 1141(d)(1) of the Bankruptcy Code. | 1. As explained in Section IV(B)(1) of the Memorandum, the Plan's discharge provision is customary and complies with the Bankruptcy Code Resolved. The Plan Proponents believe changes to Section 10.3 resolve the Objection. |
| | 2. The Plan improperly attempts to compel unimpaired creditors to provide the Debtors with a broad release in exchange for distributions under the Plan, including a release of unknown claims prohibited by California Civil Code section 1542. | 2. As explained in Section II(A)(3)(a) and Section IV(B)(1) of the Memorandum, the release provisions in the Plan are permissible under the Bankruptcy Code and applicable law, and the third-party releases are fully consensual.Resolved. The Plan Proponents believe changes to Sections 10.3, 10.13, and the deletion of 6.1 resolve the Objection. |
| | 3. The Plan improperly prohibits Unimpaired creditors from asserting defenses to an affirmative claim brought by the Debtors (including rights to setoff and recoupment). | 3. Resolved. The Plan does not deprive any claimant of their defenses—including setoff or recoupment—to the extent they otherwise have those rights. This is standardThe Plan Proponents have revised section 10.3 of the Plan to clarify this treatment. Furthermore, the discharge language commonly found in other chapter 11 plans and is expressly qualified by any limitations pursuant to section 1141 of the Bankruptcy Code. *See* Section IV(B)(1) of the Memorandum. |
| | 4. Section 8.2(e) of the Plan imposes a release on counterparties to assumed executory contracts, which is inconsistent with section 365 of the Bankruptcy Code and due process. | |

| | | |
|---|---|---|
| | 5. The Plan section entitled "Interpretation" improperly grants the Reorganized Debtors the exclusive right to interpret the Plan, cutting off creditors' due process rights and usurping court and regulators' authority. | Furthermore, the Plan Proponents have amended Section 10.13 of the Plan and will amend the Proposed Confirmation Order to provide that nothing in Sections 10.8 and 10.9 of the Plan "shall discharge, release, enjoin, or otherwise bar . . . (c) any *affirmative defense*, valid right of setoff or recoupment of a Governmental Unit." |
| | 6. The Plan and Proposed Confirmation Order (as applicable) should be revised to address (i) the definition of Environmental Claims in the Plan; (ii) impermissible discharge of unfulfilled 2001 bankruptcy case obligation to transfer certain watershed lands; (iii) Department of Water Resources ("**DWR**") 2018 and 2019 Federal Energy Regulatory Commission transmission refund claims; (iv) funds the Utility collects for California Energy Resources Scheduling Division that are not property of the estate. | 4. As explained in Section IV(B) of the Memorandum, the Plan and Cure Notice do not impose any release on counterparties to assumed executory contracts. Rather, the Debtors are assuming specific executory contracts in their entirety. However, in determining the Debtors' obligations in connection with assumption, the Debtors are entitled to enforce Bankruptcy Code section 502(e)'s disallowance of prepetition Claims based on contingent indemnity or contribution rights, which are not properly part of the assumed obligations. |
| | 7. Regulatory permits, obligations, agreements, orders listed in the Plan Supplement are not executory contracts that can be assumed or rejected and parties have not had adequate time to respond on only 14 days' notice. | 54. Resolved. *See* response to Ad Hoc Group of Business Claimants' Objection above regarding the Plan Proponents' modification to this provision. The Plan Proponents believe changes to 8.2(e) of the Plan resolve the Objection. |
| | | 5. Resolved. |
| | 8. The Plan does not address how Administrative Expense Claims become Allowed Claims paid under Plan Section 2.1 | 6. Resolved. The Plan Proponents have revised the Plan and will revise the Proposed Confirmation Order to address these objections. *See* Plan at Article I, Sections 1.62, 1.63, and 1.64 and ¶ 66 of the proposed confirmation order filed May 26, 2020 [Docket No. 7581]. |
| | 9. The Plan should carve out the discharge of Administrative Expense Claims held by a Governmental Unit because Section 2.1 of the Plan, which provides that Administrative Expense Claims shall not be discharged is inconsistent with Section 10.3 of the Plan, which provides a discharge, waiver and release of any claims that arose prior to the Effective Date. | 7. Resolved. The Plan Proponents have agreed to amend the Addressed. The Proposed Confirmation Order to affirm states that the listing of a matter as an "executory contract" or an "unexpired lease" in the Debtors' schedules or Plan documents is without prejudice to any contention by any Governmental Unit that the matter is not in fact an executory contract or unexpired lease as set forth in section 365 of the Bankruptcy Code. The Plan Proponents are prepared to revise the Proposed Confirmation Order to clarify that the United States and any department, agency, or instrumentality of the State of California shall have all rights preserved to |
| | 10. The California State Agencies request clarification that the Court shall not retain exclusive jurisdiction of all matters arising under, arising out of, or related to the Chapter 11 Cases and Plan. | |
| | 11. Section 10.13 of the Plan should be clarified to include that | |

| | | |
|---|---|---|
| | nothing in the Plan or Confirmation Order shall discharge, release, enjoin, or otherwise bar the exercise of the power of eminent domain and ancillary related authority by a Governmental Unit. | object to the cure amount or executory contract status of any contracts or unexpired leases listed on the Schedule of Assumed Contracts for 90 days or such later date as may be mutually agreed upon. |
| | 11 12. Certain modifications are required to the Fire Victim Trust Agreement and Fire Victim Claims Resolution Procedures.<br><br>a. The Fire Victim Trust Agreement and Fire Victim Claims Resolution Procedures must provide that settled Fire Claims are not subject to any further review or adjustment.<br><br>b. State and federal agency settling parties should not be required to execute a release.<br><br>c. The Fire Victim Trust Agreement and Fire Victim Claims Resolution Procedures should not provide that they can be amended without notice to the Beneficial Owners. | 8. Pursuant to Section 2.1 of the Plan, the Allowed amount of Administrative Expense Claims will be determined and paid in the ordinary course of business.<br><br>9. Further clarifications to Sections 10.3 and 10.9 of the Plan are unnecessaryResolved.- Section 10.3 ("Release and Discharge of Debtors") already provides that "except as otherwise provided byof the Plan" the discharge applies has been further revised to address this issue. Section 2.1 ("Administrative Expense Claims") is clear that the Plan does not discharge any Administrative Expense Claim unless the Administrative Expense Claim is Allowed and has been satisfied in full by the Effective Date. Section 10.9 is clear that nonconsensual releases are not permitted.<br><br>10. Addressed. The Plan is clear that the Section 11.1 ("Jurisdiction of the Bankruptcy Court") is not intended to expand applicable law governing the scope of the Bankruptcy Court's jurisdiction. *See* Section 11.1 of the Plan ("[t]o the extent that the Bankruptcy Court is not permitted under applicable law to preside over any of the forgoing matters. . . [n]othing in this Article XI shall expand the exclusive jurisdiction of the Bankruptcy Court beyond that provided by applicable law" (internal quotations omitted)). Further, Section 10.13 of the Plan affirms "[n]othing herein shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, ***outside the Bankruptcy Court***, any of the matters set forth in clauses (a) through (g) above."<br><br>11. Resolved. The Plan Proponents have revised Section 10.13 of the Plan to include that nothing in the Plan or Confirmation Order shall discharge, release, enjoin, or otherwise bar the exercise of the power of eminent domain and ancillary related authority by a Governmental Unit.<br><br>11 12.The Plan Proponents do not object to the requested modifications to the Fire Victim Trust Agreement and Fire Victim Claims Resolution Procedures. |

Case: 19-30088   Doc# 7793-2   Filed: 06/05/20   Entered: 06/05/20 09:19:53   Page 9 of 24

| | | |
|---|---|---|
| 8. **Calpine** and its subsidiaries [Docket No. 7214]<br><br>Joinder by **AV Solar Ranch 1 LLC** [Docket No. 7293]<br><br>Joinder by **NextEra** [Docket No. 7303]<br><br>Joinder by **Southern Power Company** [Docket No. 7314]<br><br>Joinder by **Osmose** [Docket No. 7320] | 1. The Plan through the assumption of executory contracts, improperly discharges certain rights, including indemnification, in violation of the Bankruptcy Code.<br><br>2. The Plan improperly contemplates the disallowance or expungement of Calpine's proofs of Claim merely because they include unpaid amounts that may be subject to cure.<br><br>3. Absent identification of an Effective Date, counterparties cannot determine the applicable Cure Amount. | 1. ~~As explained in Section IV(B) of the Memorandum, the Plan and Cure Notice do not unilaterally modify the terms of assumed executory contracts. Rather, the Debtors are assuming specific executory contracts in their entirety. However, in determining the Debtors' obligations in connection with assumption, the Debtors are entitled to enforce Bankruptcy Code section 502(e)'s disallowance of prepetition Claims based on contingent indemnity or contribution rights, which are not properly part of the assumed obligations.~~ <u>May be resolved by UCC settlement, subject to documentation.</u><br><br>2. The Plan only provides for the expungement of proofs of claim for executory contracts and unexpired leases that have been assumed under the Plan and does not contemplate disallowing or expunging any proofs of claim where a timely Cure Dispute has been filed, as is the case with the Objector.<br><br>3. Any amounts that become due and owing or any defaults that arise between the Confirmation Date and the Effective Date under any executory contracts or unexpired leases that are to be assumed, or assumed and assigned, under the Plan will be treated as Administrative Expense Claims under the Plan that are not subject to discharge and will be paid in the ordinary course of business. |
| 9. **Certain Fire Victims** [Docket No. 7316] | 1. The Plan should not be approved because (i) the nominal $13.5 billion is substantially less than the total estimated wildfire damages; (ii) the stock component is unlikely to be worth the stated amount of $6.75 billion and is subject to liquidation restrictions and market fluctuations; and (iii) it discriminates unfairly because only the Tort Claimants RSA provides for a mix of cash and stock.<br><br>2. The solicitation of the Plan was improper based on the (i) gathering of early voting prior to certain disclosures surrounding the Fire Victim Trust Agreement, registration rights agreement, and other material matters for victim claimants and (ii) undisclosed litigation financing and other conflicts of interest. | This Objection raises several matters that were already considered and disposed of at the hearing to consider approval of the Disclosure Statement and, therefore, the Objection should be overruled.<br><br>1. The treatment proposed under the Plan for Fire Victim Claims is reflected in the settlements embodied in the Tort Claimants RSA, previously approved by the Bankruptcy Court. In addition, the Fire Victim Claimants have overwhelmingly voted to accept the treatment proposed in the Plan. *See* Preliminary Statement of the Memorandum.<br><br>2. The solicitation of the Plan was proper. By entry of the *Disclosure and Solicitation Procedures Order* on March 17, 2020 <u>[Docket No. 6340]</u>, the Court approved the Disclosure Statement pursuant to section 1125(b) of the Bankruptcy Code as containing "adequate information" of a kind and in sufficient detail to enable hypothetical, |

Case: 19-30088   Doc# 7793-2   Filed: 06/05/20   Entered: 06/05/20 09:19:53   Page 10 of 24

| | | reasonable investors typical of the Debtors' creditors to make an informed judgment regarding whether to accept or reject the Plan. Furthermore, pursuant to the *Order Denying Motion to Designate Votes* [Docket No. 7401] the Court has already heard and discounted assertions that votes on the Plan were improperly solicited because of an alleged failure to disclose certain litigation financing and potential conflicts of interest. Furthermore, the Court previously overruled this Objection pursuant to its *Order Denying Motion to Designate* [Docket No. 7401]. |
|---|---|---|
| | 3.       The Plan does not comply with AB 1054 and the capital structure is overburdened by debt to perform necessary infrastructure repairs. | 3.       As discussed in the Preliminary Statement and Section II(K) of the Memorandum, the Plan is feasible and is overwhelmingly supported by the Fire Victim Claimants. Furthermore, as discussed in Section III(B) of the Memorandum, the CPUC ~~has~~ issued a proposed decision ~~that would~~ find~~ing~~ the Plan, with the additional commitments and conditions imposed by the CPUC on May 28, 2020, complies with AB 1054. [4] ~~On May 28, 2020, the CPUC approved the proposed decision by a unanimous vote.~~ The Governor's Office has also indicated that the Plan is compliant with AB 1054. |
| 10. **City and County of San Francisco** [Docket No. 7232]<br><br>Joinder by the **Municipal Objectors** [Docket No. 7231]<br><br>Joinder by **Ravin Skondin** [Docket No. 7295] | 1.       Section 10.3 of the Plan expands section 1141(d) of the Bankruptcy Code because it provides for the discharge of all claims and interests that arose prior to the Effective Date (as opposed to the Confirmation Date).<br><br>2.       The scope of the releases in Section 10.3, including any rights to setoff and recoupment which are not subject to discharge as defenses of claims as provided in in Section 1.21 ("Causes of Action"), is overbroad and nonconsensual and  contrary to the unimpaired status of General Unsecured Creditors.<br><br>3.       The Plan does not provide for curing of defaults that arise under assumed executory contracts or unexpired leases from the Confirmation Date to the Effective Date, which could be rectified by allowing "cure amounts" from May 1, 2020 on to be treated as | 1.       ~~As explained in Section IV(B) of the Memorandum, the Plan's discharge provision is customary and complies with the Bankruptcy Code~~Resolved. The Plan Proponents believe changes to Section 10.3 resolve the Objection.<br><br>2. Resolved. The Plan ~~does not deprive any claimant of their defenses—including setoff or recoupment—to the extent they otherwise have those rights. This is standard discharge language commonly found in other chapter 11 plans and is expressly qualified by any limitations pursuant to section 1141 of the Bankruptcy Code. See Section IV(B) of the Memorandum.~~Proponents believe changes to Section 10.3 resolve the Objection.<br><br>3.       Any amounts that become due and owing or any defaults that arise based on events occurring between the Confirmation Date and the Effective Date under any executory contracts or unexpired leases that are to be |

---

[4] ~~The CPUC is scheduled to vote on the proposed decision on May 28, 2020.~~

10
-

| | | |
|---|---|---|
| | Administrative Expense Claims, that are not subject to discharge and should pass through in the ordinary course of business after the Effective Date without the filing of an Administrative Expense Claim. Furthermore, any Claims arising after the Confirmation Date, including any contingent claims for contractual indemnity, must not be subject to discharge as they are part of the assumed contract. | assumed, or assumed and assigned, under the Plan will be treated as Administrative Expense Claims under the Plan that are not subject to discharge and will be paid in the ordinary course of business. |
| 11. **CN Utility Consulting, Inc., Cupertino Electric, Inc., Wright Tree Service, Inc., Wright Tree Service of the West, Inc.** [Docket No. 7336] | 1.     The Plan impairs the rights of the Debtors' contractors and vendors by eliminating, through the assumption of executory contracts, certain rights to claims and defenses, setoff and recoupment, and indemnification, and the Plan fails to preserve contractors' rights and defenses in litigation commenced by the Fire Victim Trust. | 1.  ~~As explained in Section IV(B) of the Memorandum, the Plan does not deprive any claimant of their defenses—including setoff or recoupment—to the extent they otherwise have those rights. As explained in Section IV(B) of the Memorandum, the Plan and Cure Notice do not unilaterally modify the terms of assumed executory contracts. Rather, the Debtors are assuming specific executory contracts in their entirety. However, in determining the Debtors' obligations in connection with assumption, the Debtors are entitled to enforce Bankruptcy Code section 502(e)'s disallowance of prepetition Claims based on contingent indemnity or contribution rights, which are not properly part of the assumed obligations~~May be resolved by UCC settlement, subject to documentation. |
| 12. **Cupertino Electric, Inc.** [Docket No. 7330] | 1.     The Plan impairs the rights of the Debtors' contractors and vendors by eliminating, through the assumption of executory contracts, certain rights to claims and defenses, setoff and recoupment, and indemnification. | 1.  ~~As explained in Section IV(B) of the Memorandum, the Plan does not deprive any claimant of their defenses—including setoff or recoupment—to the extent they otherwise have those rights. As explained in Section IV(B) of the Memorandum, the Plan and Cure Notice do not unilaterally modify the terms of assumed executory contracts. Rather, the Debtors are assuming specific executory contracts in their entirety. However, in determining the Debtors' obligations in connection with assumption, the Debtors are entitled to enforce Bankruptcy Code section 502(e)'s disallowance of prepetition Claims based on contingent indemnity or contribution rights, which are not properly part of the assumed obligations~~May be resolved by UCC settlement, subject to documentation. |
| 13. **Davey Tree Expert Company, Davey Tree Surgery Company, Davey Resource Group, Inc**. ("**Davey**") [Docket No. 7304] | 1.     The Plan impairs the rights of the Debtors' contractors and vendors by eliminating, through the assumption of executory contracts, certain rights to claims and defenses, setoff and recoupment, and indemnification, and the Plan fails to preserve contractors' rights and defenses in litigation commenced by the Fire Victim Trust.

2.     The Plan Injunction provisions are improper to the extent | ~~1.     As explained in Section IV(B) of the Memorandum.~~, the Plan does ~~not deprive any claimant of their defenses—including setoff or recoupment—to the extent they otherwise have those rights. As explained in Section IV(B) of the Memorandum, the Plan and Cure Notice do not unilaterally modify the terms of assumed executory contracts. Rather, the Debtors are assuming specific executory contracts in their entirety. However, in determining the Debtors' obligations in connection with assumption, the Debtors are entitled to enforce Bankruptcy Code section 502(e)'s disallowance of prepetition Claims based on contingent indemnity or contribution rights, which are not properly part of the assumed~~ |

Case: 19-30088    Doc# 7793-2    Filed: 06/05/20    Entered: 06/05/20 09:19:53    Page 12 of 24

| | | |
|---|---|---|
| | they seek to affect Davey's rights against any third parties, including other contractors or insurers. | ~~obligations.~~<br>1. May be resolved by UCC settlement, subject to documentation.<br><br>2. The Plan Injunction provisions ~~are~~is customary and not an impermissible, nonconsensual third-party release~~s~~. |
| **14. Eric & Julie Carlson**<br><br>[Docket Nos. 7207, 7363] | 1. Material changes to the Fire Victim Trust Agreement and Fire Victim Claims Resolution Procedures after confirmation must be subject to the approval of the Bankruptcy Court after notice and hearing.<br><br>2. Either the Appeals Determination by a Neutral should be deemed final and binding, or any decision by the Trustee to reject or materially change any Appeals Determination should be subject to judicial review.<br><br>3. The Fire Victim Trust Oversight Committee members must disclose their identities and be vetted for conflicts, and Fire Victims must have an opportunity to object to their appointment. | ~~1.3. The Plan Proponents do not object to the requested modifications to the Fire Victim Trust Agreement and Fire Victim Claims Resolution Procedures.~~1. Addressed. Pursuant to *Memorandum on Objection of Adventist Health, AT&T, Paradise Entities and Comcast to Trust Documents* [Docket No. 7697], the Plan Proponents will update the Proposed Confirmation Order to include language to the effect that the Fire Victim Trust Agreement and Fire Victim Claims Resolution Procedures cannot be modified in any material way that is inconsistent with the Plan or the Bankruptcy Code without approval of the Court.<br><br>2. Addressed. Pursuant to *Memorandum on Objection of Adventist Health, AT&T, Paradise Entities and Comcast to Trust Documents* [Docket No. 7697], the Plan Proponents will update the Proposed Confirmation Order to provide that each party who timely submitted an objection to the Fire Victim Trust Documents shall have the right to seek, after exhaustion of the available remedies under the Fire Victim Claims Resolution Procedures, *de novo* court review in accordance with Section IX of the Clams Resolution Procedures.<br><br>3. Addressed. Pursuant to *Memorandum on Objection of Adventist Health, AT&T, Paradise Entities and Comcast to Trust Documents* [Docket No. 7697], "the Trustee and all others working with him to implement the Fire Victim Trust Agreement and Fire Victim Claims Resolution Procedures, may not hold any financial interest or act as attorney, agent or professional for the fire victim claimants." |
| **15. Helen Sedwick & James Finn**<br>[Docket No. 7377] | 1. The Fire Victim Trust Agreement and Fire Victim Claims Resolution Procedures should be modified to remove the hold-back for attorney liens. | 1. The Plan Proponents do not object to the requested modifications to the Fire Victim Trust Agreement and Fire Victim Claims Resolution Procedures. |
| **16. International Church of Foursquare Gospel ("Camp Fire ~~Victims~~Claimants")**<br>[Docket No. 7308] | 1. The Plan's requirement that the Camp Fire ~~Victims~~Claimants agree to a Mutual Made Whole Release with insurers as a condition of receiving insurance payments: (i) is a mandatory release of third parties in violation of Bankruptcy Code Section 524(e) and well-established case law in the Ninth Circuit and | 1. As described in Section II(A)(3)(a) of the Memorandum, the Mutual Made Whole Release does not compel any action. It is a purely voluntary release with insurers to facilitate Claimants' access to the Fire Victim Trust if they so desire. |

12
-

| | (ii) subrogates Camp Fire ~~Victims~~Claimants' rights to the rights of the insurer. | |
|---|---|---|
| **17. Kincade Firm Victims**.<br><br>[Docket No. 7382] | 1. The Court should confirm the Channeling Injunction does not apply to Kincade Fire loss claims. | 1. <u>Resolved</u>. The Plan Proponents agree. |
| **18. Mary Kim Wallace** [Docket No. 7367] | 1. Claimant objects to irregularities with the voting procedures and ongoing modifications to the Fire Victim Trust Agreement and Fire Victim Claims Resolution Procedures. | 1. The Claimant was sent Solicitation Materials from the Solicitation Agent to the address on file April 3, 2020 and April 8, 2020 via e-mail and first class service, respectively — in addition to the supplemental materials the Claimant disclosed in the Objection after contacting the Solicitation Agent for additional copies. *See* Certificate of Service dated April 22, 2020 [Docket No. 6893] |
| **19. McKinsey & Company** [Docket No. 7334] | 1. The Plan through the assumption of executory contracts, improperly discharges certain rights, including indemnification, in violation of the Bankruptcy Code. | 1. ~~As explained in Section IV(B) of the Memorandum, the Plan and Cure Notice do not unilaterally modify the terms of assumed executory contracts. Rather, the Debtors are assuming specific executory contracts in their entirety. However, in determining the Debtors' obligations in connection with assumption, the Debtors are entitled to enforce Bankruptcy Code section 502(e)'s disallowance of prepetition Claims based on contingent indemnity or contribution rights, which are not properly part of the assumed obligations~~<u>May be resolved by UCC settlement, subject to documentation</u>. |
| **20. Mizuho Bank, Ltd.** ("**Mizuho**"), in its capacity as HoldCo Term Loan Administrative Agent [Docket No. 7221] | 1. Mizuho renews its position that (i) the HoldCo Term Loan Claims are impaired unless paid in full, including postpetition interest. at the contract rate and objects to the Plan's treatment denying Class 3A – HoldCo Funded Debt Claims such interest rate. | 1. <u>Addressed</u>, subject to appeal. The Plan provides for the payment of postpetition interest in accordance with the Bankruptcy Code and this Court's *Interlocutory Order Regarding Postpetition Interest* [Docket No. 5669] and *related Memorandum Decision Regarding Postpetition Interest* [Docket No. 5226]. |
| **21. Northern California Power Agency,** *et. al* (the "**Municipal Objectors**") [Docket No. 7231]<br><br>Joinder by **City of American Canyon** [Docket Nos. 7275, | 1. The Plan's discharge extends to the Effective Date, rather than the Confirmation Date, in violation of section 1141 of the Bankruptcy Code.<br><br>2. The discharge is impermissibly broad, because it includes Causes of Action, (b) acceptance of distributions is deemed consent to the Plan, (c) it gives unilateral interpretive powers to the Debtors, (d) it includes setoff and recoupment and unknown claims, and (e) Section 10.13 of the Plan does not adequately reserve the rights and powers of governmental agencies. | 1. ~~As explained in Section IV(B) of the Memorandum, the Plan's discharge provision is customary and complies with the Bankruptcy Code~~<u>Resolved. The Plan Proponents believe changes to Section 10.3 resolve the Objection</u>.<br><br>2. As explained in Section II(A)(3)(a) and Section IV(B)(1) of the Memorandum, the Plan's release provisions are permissible and fully compliant with applicable law. ~~Furthermore, t~~The Plan does not deprive any claimant of their defenses—including setoff or recoupment—to the extent they otherwise have those rights. ~~This is standard discharge language commonly found in other chapter 11 plans and is expressly qualified by any~~ |

Case: 19-30088    Doc# 7793-2    Filed: 06/05/20    Entered: 06/05/20 09:19:53    Page 14 of 24

| | | |
|---|---|---|
| 7428]<br><br>Joinder by **South Feather Water & Power Agency** [Docket No. 7325]<br><br>Joinder by **Ravin Skondin** [Docket No. 7295] | 3. The Plan and Cure Notice unilaterally modify the terms of assumed executory contracts in violation of section 365. | ~~limitations pursuant to section 1141 of the Bankruptcy Code.~~ The Plan Proponents have revised sections 6.1, 10.3, 10.9, and 10.13 of the Plan to clarify this treatment.<br><br>3. ~~As explained in Section IV(B) of the Memorandum, the Plan and Cure Notice do not unilaterally modify the terms of assumed executory contracts. Rather, the Debtors are assuming specific executory contracts in their entirety. However, in determining the Debtors' obligations in connection with assumption, the Debtors are entitled to enforce Bankruptcy Code section 502(e)'s disallowance of prepetition Claims based on contingent indemnity or contribution rights, which are not properly part of the assumed obligations~~May be resolved by UCC settlement, subject to documentation. |
| 22. **Official Committee of Tort Claimants ("TCC")** [Docket No. 7306]<br><br>Joinder by **Karen Gowins** [Docket No. 7323]<br><br>Joinder by **Kevin Burnett** [Docket No. 7352]<br><br>Joinder by **William Abrams** [Docket No. 7414]<br><br>Joinder by **Camp Fire Claimants** [Docket No. 7424]<br><br>Joinder by **Certain Fire Claimants** [Docket No. | 1. The Schedule of Assigned Rights and Causes of Action (the "**Schedule of Assigned Claims**") that are to be assigned to the Fire Victim Trust pursuant to the Plan is inaccurate and does not conform to the Plan;<br><br>2. The Debtors' Schedule of Retained Rights and Causes of Action appears to retain claims that fall within the scope of claims that should be included in the Schedule of Assigned Claims;<br><br>3. The Registration Rights Agreement being negotiated should apply equal registration rights and lock-up terms to both the Fire Victim Trust and the Equity Backstop Parties;<br><br>4. The calculation of Normalized Estimated Net Income for 2021 under the Plan that is part of the determination of how much Reorganized PG&E stock is transferred to the Fire Victim Trust has not been agreed upon; and<br><br>5. The definition of "Subrogation Wildfire Claim" under the Plan must be changed if the Court does not approve the insurance set off language in the Fire Victim Trust Agreement. | 1. Resolved. *See* Stipulation Addressing Certain Plan Confirmation Objections of the Official Tort Claimants Committee [Docket No. 7711].<br><br>2. Resolved. *See* Stipulation Addressing Certain Plan Confirmation Objections of the Official Tort Claimants Committee [Docket No. 7711].<br><br>3. Subject to ongoing mediation. The Plan Proponents will update the Court on the status of the mediation.<br><br>4. Resolved. *See* Stipulation Addressing Certain Plan Confirmation Objections of the Official Tort Claimants Committee [Docket No. 7711].<br><br>~~1.~~5. Resolved. *See* Stipulation Addressing Certain Plan Confirmation ~~S~~Objections ~~IV(A)~~ of the ~~Memorandum~~Official Tort Claimants Committee [Docket No. 7711]. |

Case: 19-30088   Doc# 7793-2   Filed: 06/05/20   Entered: 06/05/20 09:19:53   Page 15 of 24

| | | |
|---|---|---|
| 7448] | | |
| 23. **Official Committee of Unsecured Creditors** ("**UCC**") [Docket No. 7300]<br><br>Joinder by **Daniel Franklin** [Docket No. 7335]<br><br>Joinder by **Ravin Skondin** [Docket No. 7337]<br><br>Joinder by **XL Specialty Insurance Company** [Docket No. 7388]<br><br>Joinder by **AECOM Technical Services, Inc.**<br><br>[Docket No. 7459] | 1. In order for the Debtors to treat General Unsecured Claims as unimpaired, "the Plan must explicitly state that *all* rights of the holders of these Claims survive confirmation and ride through unaffected."<br><br>2. The UCC also raises the following Plan objections:<br><br>a. Holders of General Unsecured Claims should be treated the same as other creditors regarding the timing of Plan distributions.<br><br>b. The UCC should have the right to review and respond to Plan modifications affecting general unsecured creditors.<br><br>c. The Plan must provide for the payment of Indenture Trustees' fees and expenses.<br><br>d. The Debtors must pay postpetition interest at the rate ultimately determined appropriate.<br><br>e. Cure Amounts must be paid interest at the contract rate or the applicable state statutory rate.<br><br>f. General Unsecured Claims should not be subject to estimation.<br><br>g. The Debtors must pay postpetition interest on Disputed Claims that become Allowed Claims. | 1. ~~As explained in Section IV(B) of the Memorandum, General Unsecured Claims are unimpaired.~~<br>Expect all Objections to be resolved, pending confirmation of mutually agreed upon documentation.<br>~~2. The UCC's remaining Plan objections are addressed as follows:~~<br><br>~~a. Resolved. The Plan has been amended to provide for payment of Allowed General Unsecured Claims as soon as practicable after the Effective Date, but in "no event later than thirty (30) days after the Effective Date." *See* Plan at Article IV, Sections 4.4 and 4.23.~~<br><br>~~b. This amendment is unnecessary for holders of General Unsecured Claims. Pursuant to Section 12.6 of the Plan, the Plan may only be amended, modified, or supplemented by the Plan Proponents (subject to certain consent rights), in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, only if doing so does not materially and adversely affect the treatment of holders of Claims or Interests, including holders of General Unsecured Claims.~~<br><br>~~c. This is not a confirmation issue. All of the Indenture Trustees' rights are reserved to be paid in full pursuant to any Charging Lien or to assert an Allowed Administrative Expense Claim against the Debtors' estates, but the resolution of the claims for Indenture Trustees' fees is not required to confirm the Plan. The Debtors reserve any and all rights to object to any Indenture Trustees' claims for fees. There is no obligation to pay Indenture Trustees' fees in an impaired class that has accepted the Plan.~~<br><br>~~d. Addressed, subject to appeal. The Plan provides for the payment of postpetition interest in accordance with the Bankruptcy Code and this Court's *Interlocutory Order Regarding Postpetition Interest* [Docket No. 5669] and *related Memorandum Decision Regarding Postpetition Interest* [Docket No. 5226].~~<br><br>~~e. Resolved. The Plan Proponents agree that postpetition interest on the Cure Amounts should be paid in accordance with the terms of~~ |

Case: 19-30088   Doc# 7793-2   Filed: 06/05/20   Entered: 06/05/20 09:19:53   Page 16 of 24

| | | |
|---|---|---|
| | h. The UCC cannot be compelled to grant a release. | ~~the assumed executory contract or unexpired lease (or in the absence of a contract, at the applicable state statutory rate).~~

~~f. This is a standard provision in chapter 11 plans and, as such, the Objection should be overruled.~~

g. ~~Resolved.~~ Section 7.4 of the Plan has been ~~amended to provide for the payment of postpetition interest on Disputed Claims that become Allowed after the Effective Date.~~

~~h. Resolved. The Plan has been amended to remove the UCC from the definition of "Releasing Parties."~~ |
| 24. **Oklahoma Firefighters Pension and Retirement System ("OFPRS")** [Docket No. 7224] | 1.     The Debtors' release of their claims and causes of action against their former directors and officers constitutes an impermissible discharge under section 524 of the Bankruptcy Code and Ninth Circuit law.  Accordingly, the Debtors should assign all their claims and causes of action against their former directors and officers to the Fire Victim Trust. | 1.     Section 524(e) of the Bankruptcy Code is inapplicable here.  It does not address let alone prohibit the Debtors' ability to release (or otherwise assign) *the Debtors'* claims, which are property of their estates, against their former directors and officers.  *See, e.g., In re At Home Corp.*, 154 Fed Appx. 666, 668 (9th Cir. 2005) ("[A] derivative claim brought by shareholders . . . is property of the bankruptcy estate."); *CAMOFI Master LDC v. Associated Third Party Adm'rs*, 2018 WL 839134, at *3 (N.D. Cal. Feb. 13, 2018) ("[D]erivative actions in bankruptcy . . . belong[] to the corporation."); *In re RNI Wind Down Corp.*, 348 B.R. 286, 293 (Bankr. D. Del. 2006) ("[A]ny claims for injury to the debtor from actionable wrongs committed by the debtor's officers and director [are] property of the estate under 11 U.S.C. § 541.").

Under applicable law, the Debtors are permitted to exercise their business judgment to release their own claims again their former directors and officers.

Moreover, the Debtors' proposed assignment to the Fire Victim Trust of their claims against their former directors and officers solely to the extent of the Side B Insurance Coverage, and the Debtors' release of their former directors and officers from any additional liability on those claims, is an integral part of the settlements embodied in the Tort Claimants RSA, and which proposed releases the overwhelming majority of Fire Victims have voted to accept.

In addition, OFPRS is a member of Class 10A-I (HoldCo Common Interests), which voted in favor of the Plan. The approval of the Plan (including the release provisions at issue here) is binding on each member |

16
-

| | | of the class and is particularly dispositive because any monetary recovery on any claim against the former directors and officers would be for the benefit of PG&E and the members of Class 10A-I who voted to accept the Plan. Moreover, despite OFPRS's request for this Court to order the Debtors to assign to the Fire Victim Trust their claims against former directors and officers in their entirety, Fire Victims who would be the beneficiaries of such assignment have overwhelmingly voted in favor of the Plan without such assignment. |
|---|---|---|
| 25. **Osmose Utilities Services, Inc. ("Osmose")** [Docket No. 7320] | 1.     The Plan purports to eliminate setoff and recoupment rights under the cure process by expanding the section 1141 discharge beyond its scope so as to eliminate all causes of action for setoff, counterclaim, or recoupment regarding assumed contracts. The Plan's stripping of setoff, recoupment, contribution, and indemnity rights impairs Osmose by altering legal rights and privileges through an extracontractual imposition. Furthermore, the discharge and release provisions are impermissibly overbroad and disparate in treatment by potentially impairing potential defendants' rights, counterclaims, and defenses to assigned rights and causes of action that may be brought by the Fire Victim Trust. | 1.     ~~As explained in Section IV(B) of the Memorandum, the Plan and Cure Notice do not unilaterally modify the terms of assumed executory contracts. Rather, the Debtors are assuming specific executory contracts in their entirety. However, in determining the Debtors' obligations in connection with assumption, the Debtors are entitled to enforce Bankruptcy Code section 502(e)'s disallowance of prepetition Claims based on contingent indemnity or contribution rights, which are not properly part of the assumed obligations~~ May be resolved by UCC settlement, subject to documentation. |
| 26. **Patricia Garrison** [Docket No. 7194]

Joinder by **Karen Gowins** [Docket No. 7309]

Joinder by **Certain Fire Victims** [Docket No. 7451] | 1.     The Plan impermissibly classifies substantially similar claims in separate classes without justification. No legitimate reason exists for the Fire Victim Claims, Subrogation Wildfire Claims, and Public Entities Wildfire Claims to be separately classified as all claims are disputed contingent, and unliquidated claims for monetary damages arising from the same fires.

2.     The Plan is not proposed in good faith because Fire Victims are not treated in a "fundamentally fair manner" as courts have construed the "good faith" requirement under section 1129(a)(3) of the Bankruptcy Code. | 1.     As discussed in Section II(A)(1) of the Memorandum, proper and valid justifications exist for the separate classification of the Fire Victim Claims, Subrogation Wildfire Claims, and Public Entities Wildfire Claims.

2.     As discussed in Section II(C) of the Memorandum, and as addressed by the Court on multiple occasions, the Plan has been proposed in good faith. Moreover, as indicated in the Voting Certification, the Plan has been overwhelmingly accepted by Fire Victims. |
| 27. **Ravin Skondin** [Docket No. 7295]

Joinder by **Daniel Franklin** [Docket No. 7312] | 1.     The Plan incorrectly treats prepetition, general unsecured tort claimants as Unimpaired. Such claimants are Impaired because the Plan does not permit prepetition, general unsecured tort claimants to pursue their Claims as if the Chapter 11 Cases had never commenced or provide a mechanism for such Claims to be liquidated. | 1-2.     Resolved.  The Plan Proponents have agreed to a consensual resolution to be documented by a stipulation filed with the Court.  ~~1.     Holders of prepetition tort non-Fire Claims, which are classified as General Unsecured Claims under the Plan, are Unimpaired because to the extent such claims are Allowed, they will be paid in full under the Plan with interest, as applicable.  See In re Art & Architecture Books of the 21st Century, No. 2:13-bk-14135-RK, 2016 WL 1118743, at *10 (Bankr. C.D.~~ |

| | | |
|---|---|---|
| Joinder by **John Lee Clark** [Docket No. 7318] | 2.        The releases in Section 10.3 of the Plan and the injunctions in Sections 10.4 and 10.6 of the Plan impermissibly preclude prepetition, general unsecured tort claimants from adjudicating their claims as of the Confirmation Date. | ~~Cal. March 18, 2016) (holding that payment of allowed claims in cash in full on or about the effective date, with interest to be included "to the extent permitted by applicable law" constitutes unimpairment under the Bankruptcy Code).~~<br><br>~~2.        The Plan provides for no such thing.  The release and injunction provisions in the Plan do not discharge filed Proofs of Claim.  In fact, Section 7 of the Plan explicitly includes multiple provisions addressing the resolution of filed Claims.~~ |
| 28.  **Roebbelen Contracting, Inc.** ("**Roebbelen**") [Docket No. 7282] | 1.        The Plan does not  treat holders of Utility Other Secured Claims as Unimpaired because the Plan fails to specify:<br><br>   a.   whether if a creditor retains its Utility Other Secured Claims and collateral, it can continue to exercise its state law remedies after the Effective Date;<br><br>   b.   whether if the Utility Other Secured Claim is an Allowed Claim to be paid in Cash, the creditor would be entitled to attorneys' fees under section 506(b) and interest at the contract rate and the timing for payment on any such Allowed Claim; and<br><br>   c.   what "treatment necessary to satisfy section 1124 of the Bankruptcy Code" means. | 1.        <u>Resolved</u>.  The Plan Proponents address each of the objections as follows:<br><br>   a.   holders of Utility Other Secured Claims are entitled to exercise their state law remedies against their retained Collateral after the Effective Date under Section 4.16(a)(i) of the Plan;<br><br>   b.   holders of Utility Other Secured Claims are entitled to interest and any reasonable fees, costs or other charges as provided under section 506(b) of the Bankruptcy Code as provided in Section 4.16(a)(ii) of the Plan; and<br><br>   c.   Section 4.16(a)(iii)'s reference to section 1124 of the Bankruptcy Code is not vague, and in any event, assures a holders of an Utility Other Secured Claim that its Claims will not be Impaired. |
| 29.  **Securities Lead Plaintiffs** ("**PERA**") [Docket No. 7296]<br><br>Joinder by **Certain Fire Victims** [Docket No. 7450] | 1.        The Plan Injunction is an impermissible, nonconsensual third-party release.<br><br>2.        The distribution formula violates federal law because it: (i) uses an improper, "arbitrarily chosen" date—the stock price's zenith—to calculate market capitalization; (ii) improperly deducts insurance proceeds from D&O policies; (iii) fails to account the fact that claimants hold separate Equity Rescission or Damage Claims against each of the Debtors.<br><br>3.        The Plan does not meet the cram down requirements of section 1129.  Specifically, the Plan discriminates against HoldCo Rescission or Damage Claims (Class 10A-II) as compared to HoldCo Common Interests (Class 10A-I). | 1.        The Plan Injunction provision is customary and not an impermissible, nonconsensual third-party release.<br><br>2.        As described in Section IV(C)(1) of the Memorandum, the distribution formula fully complies with applicable law.<br><br>3.        As described in Section II(O) of the Memorandum, the Plan satisfies the cram down requirements of section 1129(b) of the Bankruptcy Code. |

Case: 19-30088   Doc# 7793-2   Filed: 06/05/20   Entered: 06/05/20 09:19:53   Page 19 of 24

| | | |
|---|---|---|
| 30. **Singleton Law Firm Fire Victim Claimants ("SLF Claimants")**<br><br>[Docket No. 7544][4] | 1. The Debtors' Schedule of Retained Rights and Causes of Action appears to retain claims that fall within the scope of claims that should be included in the Schedule of Assigned Claims.<br><br>2. The Registration Rights Agreement being negotiated should apply equal registration rights and lock-up terms to both the Fire Victim Trust and the Equity Backstop Parties.<br><br>3. The definition of "Subrogation Wildfire Claim" under the Plan must be changed if the Court does not approve the insurance set off language in the Fire Victim Trust Agreement. | 1. Resolved.<br><br>2. Subject to ongoing mediation. The Plan Proponents will update the Court on the status of the mediation.<br><br>3. Resolved. |
| 31. 30. **South San Joaquin Irrigation District**<br>[Docket No. 7265]<br><br>Joinder by the **Municipal Objectors**<br>[Docket No. 7231]<br><br>Joinder by **XL Specialty Insurance Company**<br>[Docket No. 7388] | 1. The Plan impermissibly expands the discharge provided by the Bankruptcy Code beyond liabilities on Claims and can be read to include the Eminent Domain Action and California Association of Local Agency Formation Commission ("**LAFCO**") action.<br><br>2. The Plan inappropriately discharges all claims that arose prior to the Effective Date (as opposed to the Confirmation Date).<br><br>3. The Plan improperly provides a full release and satisfaction of Claims and Causes of Action under assumed executory contracts.<br><br>4. The exceptions to the Plan discharge provisions in Section 10.13 ("Special Provisions for Governmental Units") do not adequately cover matters involving Governmental Units that cannot be affected by a plan, such as the Eminent Domain Action, the LAFCO Action, and the District's Contracts. | 1. Resolved. The Eminent Domain Action and LAFCo Action, as defined in the South San Juan Irrigation District Objection, are not Claims as defined in section 101(5) of the Bankruptcy Code and, therefore, are not subject to ~~the release and~~ discharge under Section 10.3 of the Plan. The Debtors have revised Section 10.13 of the Plan to include that nothing in the Plan or Confirmation Order shall discharge, release, enjoin, or otherwise bar the exercise of the power of eminent domain and ancillary related authority by a Governmental Unit.<br><br>2. ~~As explained in Section IV(B) of the Memorandum, the Plan's discharge provision is customary and complies with the Bankruptcy Code~~Resolved. The Plan Proponents believe changes to Section 10.3 resolve the Objection.<br><br>~~3. As explained in Section IV(B) of the Memorandum, the Plan does not improperly provide for a full release and satisfaction of claims under assumed executory contracts. As explained in Section IV(B) of the Memorandum, the Plan and Cure Notice do not unilaterally modify the terms of assumed executory contracts. Rather, the Debtors are assuming specific executory contracts in their entirety. However, in determining the Debtors' obligations in connection with assumption, the Debtors are entitled to enforce Bankruptcy Code section 502(e)'s disallowance of prepetition Claims based on contingent indemnity or contribution rights, which are not properly part of the assumed obligations.~~ |

[4] Filed on May 22, 2020 after the Memorandum was filed.

19
-

| | | |
|---|---|---|
| | | 3. May be resolved by UCC settlement, subject to documentation.<br><br>4. The Eminent Domain Action and the LAFCo action are not released or discharged, as explained in ¶1 above and the District's Contracts are being assumed. The release under Section 8.2(e) is standard language commonly found in other chapter 11 plans. Paragraph 13 of the Cure Notice only releases contingent indemnification claims that are already disallowed under the Bankruptcy Code. Resolved. The Plan Proponents believe the changes to Sections 10.13 and 8.2(e) of the Plan resolve the Objection. |
| 32. **U.S. TelePacific Corp.** [5]<br><br>[Docket No. 7681] | 1. ¶ 32 of the Confirmation Order filed on May 26, 2020 violates section 365 of the Bankruptcy Code by permitting the Debtors to assume executory contracts or unexpired leases without providing for the cure of default amounts.<br><br>2. ¶ 34 of the Confirmation Order filed on May 26, improperly provides for a full release and satisfaction of Claims and Causes of Action under assumed executory contracts at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease on contracts or leases later rejected under Section 8.2(d) of the Plan in the event that the Court determines a higher cure amount than listed on the applicable cure notice objected to by U.S. TelePacific.<br><br>3. ¶ 60 of the Confirmation Order filed on May 26, 2020 contains incomplete references. | 1-2. May be resolved by UCC settlement, subject to documentation.<br><br>3. Resolved. The Plan Proponents have resolved these issues in the Proposed Conformation Order to be filed. |
| 33. 31. **United States Trustee**<br>[Docket No. 7283]<br><br>Joinder by **Certain** | 1. The Plan's exculpation provisions are overly broad and violate Ninth Circuit law because they include non-estate fiduciaries, may extend to acts past the Effective Date, and should carve out gross negligence, willful misconduct and breaches of professional duties. | 1. As explained in Section II(A)(3)(a) of the Memorandum, the release and exculpation provisions in the Plan are permissible under the Bankruptcy Code and applicable law, and the third-party releases are fully consensual.<br><br>2. The releases are binding as the Plan provides. All third-party releases are fully consensual, but certain releases of the Debtors, for example the "Release and Discharge of the Debtors" under Section 10.3 of the Plan, do not require parties to opt-in to be binding. |

[5] Filed on June 1, 2020 after the Memorandum was filed.

Case: 19-30088   Doc# 7793-2   Filed: 06/05/20   Entered: 06/05/20 09:19:53   Page 21 of 24

| | | |
|---|---|---|
| **Fire Claimants** [Docket No. 7449] | 2. The summary of the Plan's Injunction, Exculpation, and Release provisions provide the injunctions, exculpations, and releases are binding on unimpaired creditors, which may include parties that do not opt-in to the releases.<br><br>3. Section 6.1 of the Plan is overly broad and attempts to effect a discharge under the standards of Bankruptcy Rule 9019 on claimants who have not expressly agreed to a settlement. | 3. ~~The Plan's settlement provisions do not conflict with, or attempt to evade, the release provisions and applicable law. Furthermore, the Plan, encompasses multiple settlements, each consensually negotiated with the relevant parties thereto, and has received the overwhelming support of Fire Victim Claimants and nearly every other Voting Class. *See* Voting Certification.~~ Section 6.1 of the Plan has been deleted. |
| ~~34.~~ ~~32.~~ **Vataj Plaintiffs** [Docket No. 7386] | 1. The exculpation provisions in the Plan, when read broadly, may release the Debtors' directors and officers from postpetition misconduct unrelated to the Chapter 11 Cases.<br><br>2. The release provisions in the Plan, when read broadly, may release the Debtors' directors and officers from the claims of third parties for all prepetition misconduct. | 1. As explained in Section II(A)(3)(a) of the Memorandum, the exculpation provisions in the Plan are permissible under the Bankruptcy Code and applicable law. Moreover, the plain language of the exculpation provisions in the Plan is limited to postpetition actions related to, among other things, the administration of these Chapter 11 Cases, the negotiation of postpetition settlement agreements, and the implementation of the Plan. *See* Plan at Article X, Section 10.8.<br><br>2. As explained in Section II(A)(3)(a) and Section IV(B)(1) of the Memorandum, the release provisions in the Plan are permissible under the Bankruptcy Code and applicable law. Moreover, the third-party releases are fully consensual. The Plan does not compel the Vataj plaintiffs to release any of their direct claims against the Debtors' directors and officers. *See* Plan at Article X, Section 10.9. |

21 -

y

| | | |
|---|---|---|
| 35. 33. **William B. Abrams** [Docket No. 7230] | 1. The Plan is not proposed in good faith because its primary purpose is short-term investor payouts and was solicited in bad faith.<br><br>2. The Plan is not feasible because the Reorganized Debtors will lack financial viability upon emergence. | 1. Mr. Abrams' good faith argument repeats objections that the Court has already addressed and rejected.<br><br>2. As discussed in Section II(K) of the Memorandum, the Plan is feasible. |
| 36. 34. **Wright Tree Service of the West, Inc.** [Docket No. 7333] | 1. The Plan impairs the rights of the Debtors' contractors and vendors by eliminating, through the assumption of executory contracts, certain rights to claims and defenses, setoff and recoupment, and indemnification. | 1. ~~As explained in Section IV(B) of the Memorandum, the Plan does not deprive any claimant of their defenses—including setoff or recoupment—to the extent they otherwise have those rights. As explained in Section IV(B) of the Memorandum, the Plan and Cure Notice do not unilaterally modify the terms of assumed executory contracts. Rather, the Debtors are assuming specific executory contracts in their entirety. However, in determining the Debtors' obligations in connection with assumption, the Debtors are entitled to enforce Bankruptcy Code section 502(e)'s disallowance of prepetition Claims based on contingent indemnity or contribution rights, which are not properly part of the assumed obligations~~ May be resolved by UCC settlement, subject to documentation. |
| 37. 35. **XL Specialty Insurance** [Docket No. 7193] | 1. The Plan impairs the rights of the Debtors' contractors and vendors by eliminating certain rights through the assumption of executory contracts. | 1. ~~As explained in Section IV(B) of the Memorandum, the Plan and Cure Notice do not unilaterally modify the terms of assumed executory contracts. Rather, the Debtors are assuming specific executory contracts in their entirety. However, in determining the Debtors' obligations in connection with assumption, the Debtors are entitled to enforce Bankruptcy Code section 502(e)'s disallowance of prepetition Claims based on contingent indemnity or contribution rights, which are not properly part of the assumed obligations~~ May be resolved by UCC settlement, subject to documentation. |

## II. Reservation of Rights

| | |
|---|---|
| 38. 36. **Ad Hoc Group of Subrogation Claimholders ("Ad Hoc Subrogation Group")** | 1. The Ad Hoc Subrogation Group reserves all rights to object to the validity of the assignment of an insured's rights to the Fire Victim Trustee, the Fire Victim Trust, or any other person or entity and to assert any and all defenses or objections in connection with any such assignment.<br><br>2. The Ad Hoc Subrogation Group would like to clarify that each insurer's claims, causes of action, defenses, or remedies as preserved in the Mutual Made Whole Release as to any insured are equally preserved as to the Trustee, the Fire Victim Trust, or to any other person or entity |

22
-

| | |
|---|---|
| [Docket No. 7258] | accepting assignment of any insured's rights against their insurers. |
| 39. 37. **California Self-Insurers' Security Fund** [Docket No. 7429] | Resolved. Reserving rights to the inclusion of certain language in the Proposed Confirmation Order permitting the Debtors to continue their participation in both the Self-Insurance Program as well as the Alternative Security Program administered under 3701.8 of the California Code. *See* ¶ 39 of the proposed confirmation order filed May 26, 2020 [Docket No. 7581]. |
| 40. 38. **Citibank N.A. ("Citibank")** as Administrative Agent for Utility Revolving Credit Facility [Docket No. 7235] | Reserving rights to seek equal treatment with respect to the payment or reimbursement of fees and expenses of other Funded Debt Trustees to the extent there are amendments or modifications to the Plan. |
| 41. 39. **Governor Gavin Newsom** [Docket No. 7317] | Governor Newsom expects the Debtors to fulfill their commitments under the Case Resolution Contingency Process and Plan OII commitments by the Effective Date, but reserves his rights as to review of Plan Documents and compliance. The Governor does not object to confirmation of the Plan, and provided the Debtors complete the implementation of their commitments, the Governor supports the confirmation of the Plan. |
| 42. **Karl Knight** [Docket No. 7366] | Resolved. Reserving rights to judicial review of allowance of any Claims. |
| 43. 40. **Wilmington Trust, National Association ("Wilmington Trust")** [Docket No. 7219] | Resolved. Limited oObjection reserving rights to the inclusion of revised language in the Plan language resolving the treatment of fees raised in the Motion for an Order Allowing Proofs of Claim Nos. 31005 and 55147 and Requiring Plan Treatment Consistent Therewith, and Memorandum of Points and Authorities in Supportwithdrawn [Docket. No. 65297647]. |

Case: 19-30088   Doc# 7793-2   Filed: 06/05/20   Entered: 06/05/20 09:19:53   Page 24 of 24