1                 UNITED STATES BANKRUPTCY COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                       -oOo-

4 In Re:                   ) Case No. 19-30088-DM
                             ) Chapter 11

5 PG&E CORPORATION AND PACIFIC   )
GAS AND ELECTRIC COMPANY      ) San Francisco, California

6                          ) Thursday, June 4, 2020
                  Debtors.  ) 10:00 AM

7 _____   )
                              MOTION FOR THE APPOINTMENT OF

8                               AN EXAMINER OF VOTING
                              PROCEDURAL IRREGULARITIES

9                               PURSUANT TO SECTION 1104(C)
                              OF THE BANKRUPTCY CODE AND

10                               BANKRTUPTCY RULE 2007.1 FILED
                              BY KAREN GOWINS [7568];

11

12                               ORAL ARGUMENTS RE
                              CONFIRMATION

13                  TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE DENNIS MONTALI

14               UNITED STATES BANKRUPTCY JUDGE

15 APPEARANCES:
For the Debtors:           STEPHEN KAROTKIN, ESQ.

16                           Weil, Gotshal & Manges LLP
                          767 Fifth Avenue

17                           New York, NY 10153
                          (212)310-8000

18

19 For Creditor Karen Gowins   BONNIE E. KANE, ESQ.
and Various Fire           The Kane Law Firm

20 Claimants:                 402 West Broadway
                          Suite 2500

21                           San Diego, CA 92101
                          (619)236-8700

22 For SLF Fire Victim       RICHARD A. MARSHACK, ESQ.
Claimants:                 Marshack Hays LLP

23                           870 Roosevelt
                          Irvine, CA 92620

24                           (949)333-7777

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

| | | |
|---|---|---|
| 1 | For Numerous Wildfire | MIKAL C. WATTS, ESQ. |
| | Claimants: | Watts Guerra LLP |
| 2 | | 70 Stony Point Road |
| | | Suite A |
| 3 | | Santa Rosa, CA 95401 |
| | | (707)241-4567 |
| 4 | | |
| | For Andy R. Vara, United | TIMOTHY S. LAFFREDI, AUST |
| 5 | States Trustee: | Office of the U.S. Trustee |
| | | 450 Golden Gate Avenue |
| 6 | | Fifth Floor |
| | | Suite 05-0153 |
| 7 | | San Francisco, CA 94102 |
| | | (415)705-3333 |
| 8 | | |
| | For Municipal Objectors: | MARK GORTON, ESQ. |
| 9 | | Boutin Jones Inc. |
| | | 555 Capitol Mall |
| 10 | | Suite 1500 |
| | | Sacramento, CA 95814 |
| 11 | | (916)321-4444 |
| 12 | For Roebbelen Contracting, | STEPHEN D. FINESTONE, ESQ. |
| | Inc.: | Finestone Hayes LLP |
| 13 | | 456 Montgomery Street |
| | | 20th Floor |
| 14 | | San Francisco, CA 94104 |
| | | (415)421-2624 |
| 15 | | |
| | For United States of | MATTHEW J. TROY, ESQ. |
| 16 | America: | U.S. Department of Justice, Civil |
| | | Division |
| 17 | | P.O. Box 875 Ben Franklin Station |
| | | Washington, DC 20044 |
| 18 | | (202)305-2419 |
| 19 | For Pension Benefit | ANDREA M. WONG, ESQ. |
| | Guaranty Corporation: | Pension Benefit Guaranty |
| 20 | | Corporation |
| | | 1200 K Street Northwest |
| 21 | | Washington, DC 20005 |
| | | (202)326-4020 |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For GER Hospitality, LLC:   FRANCIS O. SCARPULLA, ESQ.
                                 Law Offices of Francis O.
 2                               Scarpulla
                                 456 Montgomery Street
 3                               17th Floor
                                 San Francisco, CA 94104
 4                               (415) 788-7210

 5   For Various Fire           JEREMIAH F. HALLISEY, ESQ.
     Claimants:                 Hallisey & Johnson
 6                              465 California Street
                                Suite 405
 7                              San Francisco, CA 94104
                                (415) 433-5300
 8
     For Various Fire           FRANK M. PITRE, ESQ.
 9   Claimants:                 Cotchett, Pitre & McCarthy, LLP
                                840 Malcolm Road
10                              Suite 200
                                Burlingame, CA 94010
11                              (650) 697-6000

12   For North Bay Fire         STEVEN SKIKOS, ESQ.
     Victims:                   Skikos Crawford Skikos & Joseph
13                              One Sansome Street
                                Suite 2830
14                              San Francisco, CA 94104
                                (415) 546-7300
15
     For Daniel Franklin and    ESTELA O. PINO, ESQ.
16   Ravin Skondin:             Pino & Associates
                                1520 Eureka Road
17                              Suite 101
                                Roseville, CA 95661
18                              (916) 641-2288

19   For Ad Hoc Committee of    MICHAEL S. NEUMEISTER, ESQ.
     Holders of Trade Claims:   Gibson, Dunn & Crutcher LLP
20                              333 South Grand Avenue
                                Los Angeles, CA 90071
21                              (213) 229-7000

22   For City of American       DAVID M. REEDER, ESQ.
     Canyon:                    Reeder Law Corporation
23                              1801 Century Park East
                                16th Floor
24                              Los Angeles, CA 90067
                                (310) 774-4060

25
```

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
1   Also Present:              William B. Abrams
                               Individual Fire Claimant
2
                               Mary Wallace
3                              Individual Fire Claimant

4                              Helen Sedwick
                               Individual Fire Claimant
5
                               Theresa McDonald
6                              Individual Fire Claimant

7

8

9

10

11

12

13

14

15

16

17
    Court Recorder:            LORENA PARADA/ANKEY THOMAS
18                             United States Bankruptcy
                               Court
19                             450 Golden Gate Avenue
                               San Francisco, CA 94102
20

21  Transcriber:               COLIN RICHILANO
                               eScribers, LLC
22                             7227 North 16th Street
                               Suite #207
23                             Phoenix, AZ 85020
                               (973)406-2250
24
    Proceedings recorded by electronic sound recording;
25  transcript provided by transcription service.
```

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1

2                                    -oOo-

3        (Call to order of the Court.)

4            THE COURT:  Okay.  Before I hear from you all, let me

5    just make a couple of announcements.  Pursuant to what I asked

6    from debtors' counsel yesterday, I received this morning from

7    Mr. Karotkin and Ms. Liou, for whom I thank for their hard

8    work, a table for rearranging the timing for the events after

9    today's motion, and it is my intention to follow that revised

10   schedule unless some time before we start the arguments I get a

11   raised hand by anybody that wants to be heard on that subject.

12   But for now, I've set aside this -- roughly an hour, if

13   necessary, for today's motion, and that's really what I want to

14   talk about.  And then, unless there's some other problem, we're

15   going to go directly into the first phase of the argument and

16   then take a break later on.

17            So Ms. Kane and Ms. Sedwick, and Ms. McDonald, I

18   apologize for the last-minute notices to you.  Were you able to

19   confer, the three of you, on how you want to divide your time?

20            MS. KANE:  No, Your Honor; not entirely.  I have

21   spoken with Ms. Sedwick, but not with Ms. McDonald.  I would

22   like to have twenty-five minutes, with five minutes reserved

23   for a reply, and I think Ms. Sedwick would like to have --

24   well, I won't speak for you, Ms. Sedwick.  Go ahead.

25            THE COURT:  Well, before Ms. Sedwick speaks, there's a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    total of thirty minutes for all three of you, so that's --

2           MS. KANE:  Oh, okay.

3           THE COURT:  -- how it has to be allocated.  So Ms.

4    Kane, I'm going to suggest that you need less.

5           Ms. Sedwick, what do you need to do?  Ms. Sedwick, can

6    you hear me?

7           MS SEDWICK:  Oh, yes.  I need between five and ten

8    minutes.

9           THE COURT:  Okay.  Ms. McDonald?

10          MS. MCDONALD:  Your Honor, I don't really need any

11   time.  I just wanted to make sure that the hearing would

12   actually happen --

13          THE COURT:  All right.

14          MS. MCDONALD:  -- and you wouldn't decide it was

15   unnecessary.

16          THE COURT:  Well, if you don't want to be heard, I

17   don't need to leave you on the screen.  You don't -- some

18   people don't want to be on the screen because everybody can see

19   you.  I'll take you off the screen if you don't wish to make an

20   argument.

21          MS. MCDONALD:  Thank you.  I would appreciate that.

22          THE COURT:  Okay.  Ms. Parada, would you take Ms.

23   McDonald back to the attendance category?

24          All right, so listen.  Now, why don't we do this.  Ms.

25   Kane and Ms. Sedwick, I will suggest that -- if you can live

PG&E Corporation and Pacific Gas and Electric Company

1  with this -- you will reserve ten minutes between the two of

2  you for rebuttal, so you have twenty minutes for your opening

3  argument.  And why don't you just, Ms. Kane, why don't you do

4  ten to fifteen, and Ms. Sedwick can have the balance to the

5  total of twenty, and there will be ten minutes after to hear

6  from the other side.  And is that all right?  Do you have any

7  problem with that?

8        MS. KANE:  No.  That's fine, Your Honor.

9        THE COURT:  And let me do something else.  Again,

10 there's been a flurry of activity with requests for judicial

11 notice and from Mr. Watts' side a motion to get -- or just

12 disregard that.  I want to focus on the merits of today's

13 motion.  I don't want to worry about judicial notices or

14 hearsays.  I want to go to the merits, and I want to hear from

15 the two parties making the motion what they want me to do, when

16 they want me to do it, and what impact they believe it would

17 have on the confirmation process.

18        So with that, Ms. Kane, I'm going to give you your

19 time.

20        MS. KANE:  Thank you, Your Honor.

21        Well, the request for an appointment of an examiner is

22 based on the very large amount of voting procedure

23 irregularities that we've now seen.  Primarily, it appears,

24 from the problem of the fire victim creditors not receiving

25 ballots or receiving them after the time in which they could

PG&E Corporation and Pacific Gas and Electric Company

1  vote, the voting deadline.

2          THE COURT:  You say -- you say there's a large number

3  of irregularities.  There are 44 -- 50,000 people who voted,

4  and by my count less than a thousand who maybe, for whatever

5  reason, are in that category.  I don't consider that large, in

6  relation to the 50,000 who voted, so you need to tell me why

7  it's large relative to those who did vote.

8          MS. KANE:  Well --

9          THE COURT:  I mean, this isn't a city council --

10          MS. KANE:  -- we don't -- well, Your Honor -- oh, I'm

11  sorry.

12          THE COURT:  -- look.  This isn't a city council with

13  300 people running for councilwoman with fifteen votes.  I

14  mean, it's 80,000 people were asked to vote, and over 50,000

15  voted.

16          MS. KANE:  Yeah.  It leaves, by my -- well, to get

17  back to the point, I won't go over the voting numbers right

18  now, but to get back to the point, we have just seen a whole

19  lot of people who did not receive their ballots.  And I will

20  say, Your Honor, we have not gone out and done our own

21  investigation, but I can provide to the Court many more

22  declarations if the Court wants to see more declarations.

23  There is --

24          THE COURT:  This is your motion.  No, this is your

25  motion.  You are not providing more declarations.  You have a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  number of posts and very minimal, few, actual declarations, and

2  that's it.  We're -- today is the day.  And we're here -- you

3  wanted to be heard even earlier than this, and I gave -- the

4  others had more time, so here we are.

5          MS. KANE:  That is correct, Your Honor, and I'm not

6  urging the Court to consider further declarations, I'm just

7  suggesting that we do have the ability to obtain more

8  declarations.  We have not conducted our own investigation.  I

9  know KQED did and they found that 200 people that they had

10  interviewed had received their ballots in May, so there's

11  considerable concern out there.

12          THE COURT:  How many of those 200 people that KQED

13  interviewed, who received their ballots, either submitted them

14  or requested that their votes be considered after the deadline?

15  I don't recall if KQED mentioned that, did they?

16          MS. KANE:  Yes.  They mentioned one person who

17  received their ballot after the deadline and she called into

18  Prime Clerk and tried to give them a declaration, hey, I got my

19  ballot after the deadline, will you please consider my vote,

20  and she was denied.  That's in that story.  But they've

21  interviewed 200 fire survivors who didn't receive their packets

22  until May, and a substantial portion got their packets less

23  than a week before May 15th.

24          Now, our office, for example, we received ballots as

25  late as May 19th.  Now, those ballots were duplicate ballots

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    and so there wasn't any problem.  We've insured that our

2    clients have voted and that they all had a proper opportunity

3    to vote.  However, it does show that there was some problems

4    going on with the whole voting process.  And it seems to me

5    that, based on Ms. Pullo's recent testimony, that that was

6    probably because they contracted with a vendor who did not

7    follow through on insuring that the packets got out when they

8    were supposed to and they --

9            THE COURT:  Is there any -- is there any evidence that

10   the packets didn't go out on time?

11           MS. KANE:  Well, I think you have to say that there

12   is -- we don't know because we haven't conducted our

13   investigation, and that's the point of this motion today, is --

14           THE COURT:  But Ms. Kane?  Ms. Kane?

15           MS. KANE:  Yes.

16           THE COURT:  You are a lawyer.  And I don't know about

17   you, but when I was in first year of law school, I learned that

18   if you -- if you mail something, there's a presumption of

19   receipt.  There is virtually no evidence, none, from people who

20   complain about not getting their ballots that say that the

21   address was wrong or that change of addresses weren't honored.

22           My review of the papers last night, there were two --

23   two individuals -- and I'm not going to name them on the record

24   because there's no need to -- that identified their current

25   addresses and their prior addresses where they lost their

PG&E Corporation and Pacific Gas and Electric Company

1  property.  Two.  Everyone else that I looked at, I see nothing

2  that says:  My address was X and it didn't get there.  So

3  there's a gap here.

4      What I learned in law school, and I bet you did, if

5  there's a presumption of mailing, there has to be some effort

6  to rebut that the mailing didn't happen.  But all we got is, I

7  didn't get the ballot.  That's not the same as they didn't send

8  the ballot.  Now, what do I do about that very fundamental

9  legal principle?

10      MS. KANE:  Well, that is a fundamental legal principle

11  with regard to many legal issues, but I don't think -- I think

12  the overwhelming evidence here that has been demonstrated is

13  that they could not have mailed the ballots between March 31

14  and April 8th, as Ms. Pullo testified.  And when I say "they",

15  she indicated that they engaged a vendor --

16      THE COURT:  Ms. Pullo didn't --

17      MS. KANE:  -- but those --

18      THE COURT:  -- Ms. Pullo didn't testify when people

19  received ballots.

20      MS. KANE:  No.

21      THE COURT:  She testified --

22      MS. KANE:  No.

23      THE COURT:  -- and it's as -- she couldn't possibly

24  have known when they received them.  Only the recipients, or

25  the nonrecipients, could have said:  My address was

PG&E Corporation and Pacific Gas and Electric Company

1  such-and-such and I didn't receive it at my mail. What do I --

2  there's a gap here in your case. And I can tell you -- well,

3  I'll say it again. I found two people. Now, if you want me to

4  appoint an examiner because two people maybe had the wrong

5  address sent them, I'm sorry; that's -- that's really not

6  appropriate.

7         MS. KANE: Well, Your Honor, I don't think it was a

8  matter of the wrong address or the right address or they took

9  it down wrong. I don't think it was a matter of addresses. I

10 think it was a matter that the mail did not go out. And we

11 still have people receiving ballots even now, as early -- as

12 late as Monday of this week, but --

13        THE COURT: Is there any evidence to support -- any

14 evidence to support that statement?

15        MS. KANE: No. I didn't -- that was --

16        THE COURT: Well, then don't make it. Do not make

17 statements that aren't in, somewhere, in the record, please.

18 You know better.

19        MS. KANE: Okay.

20        THE COURT: You know better, Ms. Kane.

21        MS. KANE: Well, Your Honor --

22        THE COURT: That's not appropriate for an officer of

23 the court to bring in evidence that isn't evidence that she

24 just makes up out of her own mind.

25        MS. KANE: Your Honor, I would take issue with that.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

                PG&E Corporation and Pacific Gas and Electric Company

1    I'm not making anything up out of my own mind, but I will tell

2    you that we brought this motion very quickly.  We brought this

3    motion four days after the voting deadline.  And I did not ask

4    for time, because of the Court's time and because of the stance

5    that this case is in right now, I did not ask time to file a

6    reply.  We're trying to be careful of the Court's time and

7    everybody's time.  We --

8            THE COURT:  Nobody asked you to file a reply.  You

9    made a case.

10           MS. KANE:  Well --

11           THE COURT:  You made a motion.  Your motion should

12   stand on its own feet and should be grantable or else it's not

13   even considerable, shouldn't be considered.  So I'll accept

14   that maybe you made a prima facie case for a motion, but now

15   you're starting to talk about other evidence that you could

16   have produced or that you are aware of, and that's not

17   acceptable conduct, so.

18           But get to my question.

19           MS. KANE:  Yes.

20           THE COURT:  What do you want me to do?

21           MS. KANE:  Yes.

22           THE COURT:  What would happen if I granted your motion

23   and today or tomorrow ordered the U.S. Trustee to appoint an

24   examiner?  What is the timetable that would follow, in your

25   mind?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MS. KANE:  Your Honor, I would like to say two things.

2  First of all, I do want to tell you, this is not any kind of

3  motion to overturn the vote or change the vote, but it is a

4  motion to investigate what happened here, and I think that's

5  very important.  But what should happen as an alternate -- I

6  think that if an examiner were appointed, it would certainly be

7  in the best interest of the parties here, including the

8  creditors.  I think that it could be done very quickly.

9  Reviewing Ms. Pullo's testimony and her declarations, there are

10  materials ready at-hand to review.  She has stated --

11    THE COURT:  Well, wait here.  Slow down.  You're -- I

12  want to make sure I understand.  You just said something that

13  Ms. McDonald said in her papers, I don't know if Ms. Sedwick

14  said it or not, but you just said this is not an attempt to

15  overturn the vote.  Is that -- you affirm that so we can --

16    MS. KANE:  No.

17    THE COURT:  -- go ahead and maybe confirm this plan

18  and this could be examined later, right?

19    MS. KANE:  Well, I think it -- I think it should be

20  examined now, and here's the crux of it, Your Honor, if I may.

21    The crux of it is not if there's going to be a vote

22  change, but whether or not the fire victim creditors have an

23  opportunity to vote.  Now, under the law, they have a right to

24  vote.  And they, apparently, from what we have submitted, that

25  right has been overridden, so to speak, for a variety of

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  reasons.  And we don't know, although it appears the mailing is

2  a real problem, we don't know what all those reasons are, but

3  they have not been given the right to vote.  And I think it's

4  very important that the Court ensure that his right is

5  protected in this whole process and that the Court's integrity

6  is upheld, and that the process in this court goes forward.

7          THE COURT:  So walk -- walk me through -- again, walk

8  me through the timeline.

9          MS. KANE:  I'm sorry?

10         THE COURT:  Ms. Kane?

11         MS. KANE:  The timeline.

12         THE COURT:  Walk me through the timeline --

13         MS. KANE:  Sure.

14         THE COURT:  This plan, as you know, if I'm going to

15  confirm it, needs to become -- I need -- I need to finish my

16  job, certainly, before June 30th.  Do you have any reason to

17  believe that an examiner could even be identified, qualified,

18  and up and running to start an examination in time to do

19  something in time for me to change whatever decision I'm going

20  to make by June 30th?

21         MS. KANE:  Yes, I do.  I do.  Because as I was saying,

22  I think that the evidence is there for the examiner to review

23  and to make inquiry, further inquiry, on the mailing.  I think

24  it's absolutely very easy to do, very quick to do.  I would

25  offer another option to the Court, and that would be simply to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    reopen the voting for another seven to ten days and allow

2    people to call in to Prime Clerk.  They all have, as we know,

3    they have individual unique voting ballot numbers.  They can

4    call in to Prime Clerk.  If they still have their ballots, if

5    they haven't thrown them out, then they could mail them in, and

6    I think that could be done very quickly and efficiently, also.

7            But I think the most important thing here is that

8    this -- these fire victim creditors have the opportunity to

9    vote, and that's very clearly stated in many cases, and from

10   the statute as well, so I think it could be done quickly.  And

11   the Court has the option, in my opinion, to simply reopen the

12   vote or it has the option to appoint a trustee.

13           THE COURT:  Well, but if I -- no.  If I reopen the

14   vote, what's the purpose of having an examiner?

15           MS. KANE:  No.  It's an option.  It's an or.

16           THE COURT:  Okay.  So I -- let's suppose -- today is

17   June 4.  Let's suppose I open the revoting until -- you said

18   ten days.  That's what?  June -- let's say June 15th.  What

19   happens on June 15th?

20           MS. KANE:  Then the voting would close.

21           THE COURT:  Then what would happen?

22           MS. KANE:  Then the voting would be calculated, but at

23   least every --

24           THE COURT:  Then what would happen?  No, then what

25   would happen?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      MS. KANE:  I don't know.  I don't know what you're

2  getting --

3      THE COURT:  Well, but I have to know because --

4  because if 200 votes would be counted, the answer is nothing

5  would happen.  And it is important -- I don't disagree with

6  you.  If you think I'm arguing with you I am, but I'm not

7  questioning the importance of letting the fire survivors vote,

8  but I don't know that there's any way to change any outcome

9  other than to let them feel that they were part of the process.

10      As you know, there are, as I said, 50,000 votes

11  received and a huge percentage of them, enormous percentage,

12  voted to accept the plan.  So even if the 200 people that KQED

13  referred to, or the 900 people that you think maybe would vote,

14  if all 900 of them voted against the plan, it would still have

15  no impact on anything, except they would feel better and I'd

16  feel better and you'd feel better, but it would not do anything

17  else to any legal consequence.

18      MS. KANE:  Well, no.

19      THE COURT:  So what do I do about that?

20      MS. KANE:  I can't answer that question.

21      THE COURT:  Okay.  Then you can --

22      MS. KANE:  -- specifically, but I can say --

23      THE COURT:  I'm going to interrupt you again.

24      MS. KANE:  Oh, thank you.

25      THE COURT:  I'm going to interrupt you again and

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    answer that when you have your rebuttal time and when you hear

2    what the opposant said.  I want to let Ms. Sedwick have her

3    five or ten minutes, and we'll come back to you.  I promise to

4    let you talk again.  I won't interrupt you.

5              All right.

6              MS. SEDWICK:  Thank you, Your (break in audio).

7              THE COURT:  Ms. Sedwick.

8              MS. SEDWICK:  I am a fire victim, but I should also

9    disclose that I recently retired, from more than thirty years,

10   as a transactional attorney, so.

11             THE COURT:  Yes, I am aware -- I --

12             MS. SEDWICK:  (Break in audio) evidence for (break in

13   audio), so.

14             THE COURT:  I am aware that you are, or were, an

15   attorney.

16             MS. SEDWICK:  Yes.  I -- recovering.

17             I just want to call -- when you were asking --

18             THE COURT:  Me, too.

19             MS. SEDWICK:  -- (break in audio) evidence, I just

20   want to call your attention to five affidavits that were filed

21   by law firms saying that they had received, or not received

22   ballots, at quite a late date.  Docket number 7394, the Ames

23   firm said that they received ballots between May 4th and May

24   14th.

25             THE COURT:  But what did they do about it?  What

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   did -- what did that law firm do about?

2        MS. SEDWICK:  Well, okay.  So there are five of them.

3   These are -- Your Honor, all we have are bits and pieces of

4   evidence and hearsay that indicate there was a problem.  And I

5   understand that the solution is a challenge.  Our concern is

6   that, similar to the bar date, the people who are not getting

7   this information are the ones who don't have attorneys, who are

8   not on social media, that don't have social contacts, and they

9   are the ones who are not voting.

10       You mentioned that looking at the number 62,000,

11  approximately, people voted or tried to vote, but I've heard

12  numbers that the claims are 77,000 or 87,000.

13       THE COURT:  You've heard numbers.  Wait, you've heard

14  numbers.  What does that mean?

15       MS. SEDWICK:  Numbers of total claims.

16       THE COURT:  Huh?  What?

17       MS. SEDWICK:  I don't know -- if 50,000 people have

18  voted, I don't know what happened to the 25,000 that we --

19       THE COURT:  Maybe they (break in audio) vote.

20       MS. SEDWICK:  -- (break in audio) heard from.

21       THE COURT:  Maybe they didn't vote.  Every -- every

22  national election, local election, Bankruptcy Chapter 11 vote,

23  people don't vote.  I hope we all vote come November, but I bet

24  you there won't be the turn out in November that there was on

25  this fire, this vote.  Right?

PG&E Corporation and Pacific Gas and Electric Company

1        MS. KANE:  I don't know how -- there's not --

2        MS. SEDWICK:  Part of the problem, Your Honor, is we

3    are backed into a corner by the June 30 deadline, and that has

4    affected all of us.  And I guess I am speaking as a fire victim

5    to say that fire victims -- the receiving the late ballots kind

6    of validated a feeling that I hear among fire victims, as if

7    that -- this has never been -- the vote was never meaningful at

8    all, because we had not choice.  There was no other plan.  We

9    were told if we didn't vote for this plan, and we listened

10   to --

11       THE COURT:  But that's different.  But that's a

12   different situation.  You (break in audio) through.

13       MS. SEDWICK:  But well, so the (break in audio) --

14       THE COURT:  There was no other (break in audio) --

15   sorry.

16       MS. SEDWICK:  -- something went wrong.  There are

17   indications that something went wrong.  And I think, for the

18   credibility of the process, it would be helpful to at least

19   direct Prime Clerk to talk to its vendor and find out what went

20   wrong and the scale of it.  Something short of an examiner;

21   find out the scale of the problem.  And it may confirm that

22   even though something went wrong, it was not bad enough to

23   change the vote, and we move forward.

24       THE COURT:  When -- would you be satisfied if that

25   happens later rather than under this time pressure?

PG&E Corporation and Pacific Gas and Electric Company

1          MS. SEDWICK:  I'd be less satisfied, but I would

2    accept that.

3          THE COURT:  Okay.  All right.  Well, again, I don't

4    mean to put you or Ms. Kane on the defensive because it is

5    important, but it's not a perfect system, and I would have a

6    much different take on this if the vote was close.  And I -- it

7    wasn't close.

8          And so it's one thing to identify, whether it's on

9    social media or hearsay or not, 20 or 200 or even 900 people

10   who say where -- I didn't get my ballot, but I can't then make

11   that leap that 25,000 other people didn't get the ballot.  The

12   presumption is 25,000 other people did get the ballot and

13   didn't vote, for various reasons:  confusion, pro ses, whatever

14   reason.  I don't want to speculate that, but that's the

15   process, and I can't change that and nothing that Prime Clerk

16   or its vendor could do to change that for people who chose, for

17   whatever reason, not to vote.

18         Anyway, go ahead and -- if you want to make any

19   further argument and then I'm going to hear from the other

20   side, and then I'll come back to both you and Ms. Kane.

21         MS. SEDWICK:  My last statement is, is we don't know

22   how many of that 25,000 chose not to vote, didn't know whether

23   to vote, or didn't receive ballots.  We simply don't know.

24         THE COURT:  Right.  Okay.  Thank you.  We'll come back

25   to you in the rebuttal.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MS. SEDWICK:  Thank you.

2    THE COURT:  All right.  Ms. Parada, why don't -- Ms.

3  Kane and Ms. Sedwick, you -- I can leave you on the screen or

4  we can take you off and bring you back.  It's really up to you.

5  We don't mind looking at you, but some people like to get off

6  the camera for a while.

7    MS. SEDWICK:  I'll just mute, Your Honor.

8    THE COURT:  Okay.  Ms. Parada --

9    THE COURT REPORTER:  Your Honor, Ms. McDonald is

10  raising her hand.  May I bring her in?

11    THE COURT:  Oh, okay.  Yes, Ms. McDonald.  I thought

12  you didn't want to be heard.  So I'll hear from you, please.

13    THE COURT REPORTER:  Ms. McDonald is joining now.

14    MS. MCDONALD:  Thank you, Your Honor.  I don't know if

15  you can see me.

16    THE COURT:  Well --

17    MS. MCDONALD:  I can hear you.

18    THE COURT:  -- not yet.  I can hear you.

19    MS. MCDONALD:  I simply wanted to say, you asked

20  repeatedly what is the importance of this examiner if it

21  doesn't change the outcome of the vote, and that's what I want

22  to say.  It is important to me.  I am an accountant by trade.

23  It's important to me to have what is essentially an independent

24  audit of the process and procedures that were in place, to

25  determine if they were followed, and if not, why not.  Just

PG&E Corporation and Pacific Gas and Electric Company

1    like it was important to me for someone to determine what

2    caused the Camp Fire.  There's no way determining that could

3    undo the damage, but it's an important piece of the puzzle, for

4    me, to reconcile what happened.  I need to be able to feel that

5    this was an honest process.  And I don't think there was any

6    deliberate dishonesty, but I need to know if there were serious

7    mistakes that impacted it.

8         The bottom line is the vote was always cosmetic

9    because you have always had the ability to confirm the plan no

10   matter what the vote outcome was, but it's important for me, as

11   a piece of the puzzle, to say there was a fire; it was caused

12   by PG&E.  There was a vote; it was or was not properly held.

13   Those are all pieces in putting the entire puzzle together, and

14   I think that's important for other fire victims, as well.  It

15   can be done after the confirmation, as far as I'm concerned, I

16   just would like to have it done.  Someone to go and talk to the

17   vendor, look at their mailing machine receipts to see, okay, we

18   mailed out 50,000 documents between March 30th and April the

19   8th.  Thank you.

20        THE COURT:  Thank you, Ms. McDonald.  I appreciate

21   your comments, and I also appreciated your expression and your

22   personal expressions in your filing, as well.  It's -- again,

23   I'm not unsympathetic, I'm just trying to look for a solution.

24        I'm going to, again, let Ms. Sedwick and Ms. Kane stay

25   on the screen or exit, if they wish, and I'm going to ask Ms.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  Parada to bring in the parties who are going to speak in

2  opposition to the motion.

3      THE COURT:  Mr. Karotkin, good morning.

4      MR. KAROTKIN:  Good morning, sir.  How are you?

5      THE COURT:  Okay.  Mr. Watts, can you hear me?

6      MR. WATTS:  Yes, sir.  Thank you.

7      THE COURT:  Good morning.

8      Going to wait for Mr. Marshack.

9      THE COURT:  Ms. Kane, if you -- if you want to go off

10  the screen that's okay.  We can -- we can move you off or you

11  can -- you can turn off your video or you can -- we can take

12  you out of the participants' panel and bring you back in;

13  whatever you prefer.  Do you want to -- okay.

14      All right.  Mr. Karotkin, have you discussed with Mr.

15  Watts and Mr. Marshack the dividing up the thirty minutes?

16      MR. KAROTKIN:  Yes, we have, sir.  I'm going to go

17  first for probably about ten minutes.  Then I believe (break in

18  audio) the other two gentleman will take about five minutes

19  each.

20      THE COURT:  Okay.  And Mr. Watts, you need to unmute

21  your microphone at some point.

22      Okay, Mr. Karotkin.  Thank you.

23      MR. KAROTKIN:  Good morning, Your Honor.  Stephen

24  Karotkin.  Weil, Gotshal & Manges for the debtors.

25      Your Honor, I think our reply pleadings are very self-

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    explanatory and demonstrate that the moving party has not

2    carried its burden for the extraordinary relief it's

3    requesting, particular, Your Honor, at this stage of these

4    Chapter 11 cases.

5         It's important to put this motion into proper

6    perspective.  This motion was filed two days prior to the start

7    of the confirmation hearing last week.  And the impact of this

8    motion, Your Honor, would completely thwart -- and I believe

9    it's designed to thwart -- the voice and the (break in

10   audio) --

11        THE COURT:  We're getting a lot of noise from

12   somebody.  I don't know.  Is that you, Mr. Marshack?  What are

13   you doing there?  Something is happening.

14        All right.  Go ahead, Mr. -- say that again.  You

15   believe it was thwarted?

16        MR. KAROTKIN:  If this motion is granted, would

17   completely thwart, and I think is, Your Honor, designed to

18   thwart -- and I think that the people who filed the motion made

19   that clear, despite what Ms. Kane said -- the voice and obvious

20   preference of literally tens of thousands of fire victims who

21   voted to support the plan.

22        So where have the moving parties been, Your Honor?

23   Where have they been?  The rank hearsay allegations on which

24   their motion is premised date back to early April, if you look

25   at the exhibits.  Early April.  Ms. Kane said she brought the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    motion quickly.  She didn't bring the motion quickly.  She, in

2    my opinion, tactically waited until the eve of confirmation to

3    bring the motion, raising, in fact, the same issues, Your

4    Honor -- again, not acting quickly -- the same issues that Mr.

5    Abrams raised on April 20th, five weeks before this motion was

6    filed.  Five weeks.

7           Your Honor, it's hard to conceive of anything in my

8    view more transparent than what's going on here in this

9    litigation ploy than what's before you today.  Putting aside,

10   Your Honor, the obvious detriment and prejudice to every part

11   and interest in this Chapter 11 case if this motion is granted,

12   whether you grant it to have an investigation now or Your

13   Honor, importantly -- and I'll address this -- whether you are

14   to appoint an examiner to conduct an investigation after

15   confirmation.

16          As we have demonstrated in our responsive pleadings,

17   the motion should be denied in view of the posture of this

18   case, the pending confirmation hearing, the looming AB 1054

19   deadline -- as I mentioned earlier -- the fire victim

20   overwhelming vote in favor of the plan.  Nothing, nothing, Your

21   Honor, could be more antithetical to the best interests of

22   creditors in this case as Section 1104 refers to.  And as I

23   indicated and as I think you indicated, it's premised entirely

24   on hearsay, and I think the words you said, Your Honor, Ms.

25   Kane has presented no evidence -- no evidence -- to support the

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    allegation that the mail did not go out.

2         Your Honor has raised -- has addressed these

3    arguments.  It's very similar, if not the same arguments, in

4    connection with Mr. Abrams' prior motion to designate, and

5    everything that's set forth in the motion before Your Honor

6    today was already presented to the Court at the confirmation

7    hearing last week, demonstrating full compliance with the

8    solicitation and balloting.

9         THE COURT:  Now, I think you're overstating the case a

10   bit.  Mr. Watts was very personally criticized for his conduct,

11   and that was the focus of the Abrams' motion.  Mr. Watts saw

12   fit to oppose this motion, and he had a right to, but he wasn't

13   identified as someone who did anything wrong.  The thrust of

14   what I heard today was something went wrong according to the

15   moving parties that at Prime Clerk or a Prime Clerk's

16   subcontractor.

17        So I mean, I grant you, it has the same impact as the

18   motion to designate, perhaps, but it isn't the same motion.  I

19   don't think it's the same motion.

20        MR. KAROTKIN:  Okay.  Well, I'll respect that, but if

21   you look at the exhibits that were filed with Mr. Abrams'

22   motion, I think some of them are almost identical.

23        But again, there is no evidence of the items you just

24   mentioned.  There is zero evidence in the record that anything

25   went wrong at Prime Clerk.  They have presented nothing other

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  than a newspaper article and other than Facebook posts, all

2  hearsay.

3        And then Ms. Sedwick -- I think it was Ms. Sedwick,

4  she said, well, there are examples of things that went wrong.

5  So let's look at what she presented, Your Honor.  What she

6  presented as things that she says allegedly went wrong.  And

7  those are the 115 fire victims that she attached to her

8  affidavit or her declaration who allegedly did not receive

9  timely ballots.

10       The fact is, as demonstrated in Ms. Pullo's

11 declaration, each of those fire victims with a valid proof of

12 claim number was mailed a solicitation package in accordance

13 with the solicitation procedures, either directly or

14 indirectly.  And 75 of them submitted ballots to vote, 75 of

15 those 115.

16       So not only is there proof that they were served, but

17 actually a very, very large portion of those voted, in fact, a

18 larger portion than the population at large.  So I think what

19 her declaration indicates is full compliance with the

20 solicitation procedures.

21       I've already noted the extreme harm and prejudice that

22 would be suffered for all parties-in-interest, Your Honor, and

23 we've also addressed in our pleadings 1104(c)(2) and based on

24 the applicable case law and especially under the circumstances

25 of this case, the appointment of an examiner is not warranted

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    under those circumstances, particularly, Your Honor, on the eve

2    of confirmation when it seems to me pretty clear, based on

3    argument and the motion, that this is an effort to disrupt

4    what's going on here.

5         Your Honor, we've come too far in this case.  We've

6    come too far where the moving parties have sat on their rights,

7    and what they are seeking to do at this stage of the case is

8    inappropriate.  And I'd like to address very briefly, Your

9    Honor, I think you indicated, well, what if an examiner was

10   appointed to do this investigation afterwards, after

11   confirmation.

12        And I think, Your Honor, that the consequences of that

13   would be equally devastating and prejudicial to everybody.  As

14   you know, once the confirmation order is entered -- and I hope

15   it is entered rather promptly -- the debtors will then be

16   engaged in their effort to raise the capital in order to

17   confirm the plan and for the plan to go effective.  They will

18   be out in the market, as you well know, securing this capital,

19   and the overhang -- the overhang of an investigation by an

20   examiner will be extremely deleterious to that effort.

21        THE COURT:  Well, how do we know that?  How do we know

22   that if I made it clear that if I were to authorize something

23   later, as you heard Ms. McDonald say, and I said, it is to have

24   no effect on the plan, nor the plan process.  Or it's not an

25   invitation to revisit the confirmation.  I mean, there'll be

PG&E Corporation and Pacific Gas and Electric Company

1  enough challenges if -- presumably by some -- if they're

2  confirming the plan, but that's for another day.

3      So why do I --

4      MR. KAROTKIN:  Your Honor, I --

5      THE COURT:  -- why do I assume there'll be some

6  horrible thing that happens if their examiner were appointed in

7  the future?

8      MR. KAROTKIN:  Well, Your Honor, I respectfully

9  disagree.

10      THE COURT:  Okay.

11      MR. KAROTKIN:  As you know, the debtors will be going

12  out to the market to raise equity capital of nine billion

13  dollars in the most efficient manner possible, and to have an

14  overhang of a potential examiner here will impact the ability

15  to effect that marketing effort on the best possible basis.  I

16  think that's absolutely clear from simply a matter of the

17  capital markets.

18      And to what end?  To what end would that examiner --

19  what would it accomplish?

20      THE COURT:  Well, I guess I would assume that examiner

21  would accomplish what Ms. McDonald would like:  just a story,

22  just an explanation.

23      MR. KAROTKIN:  Your Honor, if there was some evidence

24  in the record, maybe that might be warranted under these

25  circumstances.  There is not a shred of evidence in the record

PG&E Corporation and Pacific Gas and Electric Company

1    to undertake the appointment of an examiner.

2         THE COURT: What would happen if I directed an

3    examination to simply close the chapter on it -- using the word

4    "chapter" not in a bankruptcy sense -- and I delayed it even

5    until after the equity was raised? In other words, suppose the

6    nine billion is raised and the company does it securitization

7    and does all the things that you and I and your staff have been

8    working on for months and then I say, well, okay, fine. I just

9    want to get somebody to tell the story.

10         MR. KAROTKIN: And Your Honor knows -- Your Honor

11    knows that people will be worried about a collateral attack

12    after the fact. And you know how litigious this case has been.

13    And it's not -- based on this record, there is no reason for

14    the people who have overwhelmingly voted in favor of this plan

15    to suffer that type of risk.

16         THE COURT: Okay. I want to let the other two counsel

17    speak. Do you want to add anything further?

18         MR. KAROTKIN: No. I'm finished.

19         MR. MARSHACK: Thank you, Your Honor. I'm next.

20         I'm going to start with my conclusion. I'm going to

21    ask that this Court make a finding that they have -- that the

22    movants have failed to satisfy their evidentiary burden. I'm

23    also going to ask that this Court make a finding that they're

24    guilty of laches, that they have brought this too late.

25         I will be talking to you today about two very

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    important cases:  In re: Schlepp (sic) Food Stores, Inc. and

2    Dewey & LeBoeuf cases.  Those two cases are extremely

3    insightful in how this Court should view this motion.

4              THE COURT:  Are those both cited in your papers?

5              MR. MARSHACK:  They are, Your Honor.

6              THE COURT:  Okay.  Because I just want to get the

7    names right.  I've read your papers, but I didn't memorize the

8    cites.  Okay.  Go ahead.

9              MR. MARSHACK:  They are.  Thank you, Your Honor.

10             First and foremost, the bankruptcy court is a court

11   that decides factual issues on evidence.  1104 has a mixed bag

12   of law and evidence, but you cannot appoint an examiner until

13   certain factual requirements have been met.

14             For example, in 1104(c)(1), you must find that it's in

15   the best interest of creditors and equity and other interests

16   of the estate.  You have to make that factual finding.

17             What did the movants give you to help you with that?

18   They gave you nothing. They gave you nothing.

19             But let's go -- I really need the Court also to look

20   at their request because it's very interesting.  They want an

21   examiner to investigate the potential misconduct and

22   mismanagement on the part of the debtor and noticing agents.

23   Now, their pleadings and their attachments are full of

24   allegations that this lawyer did this, this creditor's

25   lawyer -- this fire victim lawyer did this, this fire victim

PG&E Corporation and Pacific Gas and Electric Company

1  lawyer did this.  You could vote by text.  If you hit 1, you're

2  voting.  If you hit 2, you get sent into a daisy chain that

3  will never end.

4         But the requirement for the examiner is to review the

5  debtors' conduct.  We've done that already.

6         THE COURT:  Well, but it isn't really the conduct of

7  the debtors' agent and subagent?

8         MR. MARSHACK:  I'm getting there.

9         THE COURT:  That's what the --

10        MR. MARSHACK:  I am there.

11        THE COURT:  -- the other --

12        MR. MARSHACK:  There is no evidence whatsoever that

13 Prime Clerk didn't mail; in fact, we have evidence that they

14 did.  We had Ms. Pullo on the stand.  She was composed.  She

15 was extremely credible and very persuasive.  And she said, I

16 followed this Court's order.  I mailed everything.  There is

17 nothing to the contrary.

18        So moving -- I only have seven minutes -- moving on to

19 (c)(2), which is really -- so again to regroup, on 1104(c)(1),

20 there has to be a finding by this Court that it's in the best

21 interest of creditors and equity and other interests of the

22 estate to appoint an examiner, and they have not met that

23 burden of proof.

24        (c)(2)'s an interesting statute.  It's created a lot

25 of interesting laws.  (c)(2) says that if the debtor's fixed,

PG&E Corporation and Pacific Gas and Electric Company

1  liquidated, unsecured debts other than for goods, services, or

2  taxes exceed five million dollars, you're to appoint an

3  examiner.

4       Now, a bunch of cases say "shall" does not mean

5  "shall".  It means it's discretionary.  And those are the case

6  cited by both myself and Mr. Karotkin.  And there are other

7  cases that say it is absolutely mandatory.  I am going to

8  assume for the rest of my conversation that you're going to

9  believe it's mandatory.  I'm not going to -- Mr. Karotkin

10  already argued it was discretionary.  I'm not going to cover

11  that ground.

12       I want to draw this Court's attention to Dewey &

13  LeBoeuf case.  In that case, with the highest-priced lawyers in

14  town in New York City, the ad hoc committee and another

15  creditor sought the appointment of an examiner to thwart a 9011

16  motion.  The court said the ad hoc committee and PFC have

17  failed to meet their burden to prove that the debtor had fixed,

18  liquidated, unsecured debt in excess of five million dollars

19  other than for debts for goods, services, or taxes.

20       Okay.  What am I saying?

21       THE COURT:  I don't know.

22       MR. MARSHACK:  We probably have -- we may have debt

23  that exceeds five million dollars in this case.

24       THE COURT:  We may have debt that is five billion

25  dollars.

PG&E Corporation and Pacific Gas and Electric Company

1    MR. MARSHACK:  Well, but we don't know if it's in

2    those categories set forth in 1104(c)(2).  It must be in those

3    categories, and it's the movants -- it's Ms. Kane's, Ms.

4    Sedwick's obligation to give that evidence to the Court, and

5    they didn't.  And I'm sure in the Dewey & LeBouef case, the

6    court could have reached into the files and could have looked

7    and could have dissected Schedule F and found debt, but the

8    court said no.  It is the burden of the movants to point that

9    out.

10    So I don't have a problem if this Court denies the

11    motion, and if they want to bring another motion and bring the

12    evidence, that's fine.  But this Court cannot grant this motion

13    based on the evidentiary record.

14    So I want to read to you -- now, I want to get to

15    laches.  This is really important.  In the Schlepp (sic) Food

16    Stores, Inc. case, a creditor who didn't really want the plan

17    confirmed fought and fought and fought.  Well, after the

18    approval of the disclosure statement, Mr. Smith waited twenty

19    days after approval of the disclosure statement and then

20    requested the appointment of an examiner.  The court said,

21    "there's ample support in the record to conclude that Smith's

22    interest in the appointment of an examiner is a tactic to

23    prevent confirmation rather than to investigate bad faith".

24    What the Schlepp (sic) Food Store case said was this:  the

25    court found that appointment of an examiner is mandatory under

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    (c)(2).  It found that if you had the five million dollars of

2    debt, it's mandatory.  But it said they do not have to appoint

3    an examiner if movant's conduct is too late.  If it's not in

4    good faith and it's too little, too late.  And the court said,

5    "while Smith's literal reading of the statute is the only

6    interpretation that" -- and this is a district court on appeal

7    from the bankruptcy court -- while the (sic) "Smith's literal

8    reading of the statute is the only interpretation that can be

9    supported by both the plain language and context of the Code,

10   Smith has waived its right to an examiner by its delay in

11   bringing a request."

12            Movants have waived their right to an examiner.  They

13   brought the motion too late.  We are on countdown for

14   confirmation.  We are at the doorstep of confirmation, and this

15   could and would derail it, and it's not fair to people like my

16   clients.  My clients went out.  They got their packets. They

17   voted.  My clients not only got their packets and voted, but

18   they hired counsel to work with Mr. Karotkin, to work with Mr.

19   Julian, and this is important to them.  Do not let a group

20   of -- a small group who did not bring evidence to this Court,

21   who did not bring cause to this Court, derail the wishes of

22   eighty-eight percent of those that voted.

23            Again Your Honor --

24            THE COURT:  Okay.

25            MR. MARSHACK:  -- I'm going to need findings.  We need

PG&E Corporation and Pacific Gas and Electric Company

1    findings that they failed to satisfy their evidentiary burden

2    and we need findings that this is too little, too late, and

3    according to the Schlepp (sic) case, even though (c)(2) is

4    mandatory, it is something that can be waived by the movants,

5    and they waived it.

6              THE COURT:  Okay.  Thank you, Mr. Marshack.

7              Mr. Watts, again -- Mr. Watts, you were not the target

8    of this motion, although you may feel you were.  You're

9    entitled to oppose it and I'm going to hear you, but I don't

10   want to go back into the whole revisiting of your attempts to

11   defeat the designation motion.

12             Okay?  So go ahead.  Are you there?

13             MR. WATTS:  I'd like to focus on two things.

14   Number --

15             THE COURT:  Can you hear me?

16             MR. WATTS:  (Break in audio).

17             THE COURT:  Mr. Watts, I'm -- can you hear me?

18             MR. WATTS:  Yes.  Can you hear me?

19             THE COURT:  Yeah.

20             MR. WATTS:  Okay.  Great.

21             I'd like to confine my remarks to two elements.

22   Number one is the elements of U.S.C. 1104(a)(1).  That requires

23   some showing of cause.  Now, there's four examples in the rule.

24   Number one is fraud.  I think Ms. Pullo's testimony just is the

25   only evidence that you had that all ballots went out.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        Number two is dishonesty. There were two attacks here.

2    One was a shot at Mr. Karotkin's son that he properly

3    disclosed.  The second was some theory that Prime Clerk's

4    parent, Duff & Phelps, had a conflict because they owned stock.

5    I think the only evidence you have is that they sold it before

6    this bankruptcy.

7        The third element of possible cause is incompetence.

8    I reiterate what you said.  There's a presumption of the

9    receipt of the mail.  If you have less than 1,000 people out of

10   50,000 people, that's a ninety-eight percent success rate, and

11   in talking about gross mismanagement, in somebody that's done

12   these kinds of mass torts, a ninety-eight percent success rate

13   is well above the percentages of class notices that are

14   presented to courts by the class administrator and the notice

15   administrator.  It's outstanding.  And I think the only

16   evidence you had is that Prime Clerk did an outstanding job.

17       I won't argue it because I know how to follow the

18   Court's instruction, but I would reiterate document 7436, 7706,

19   and 7777, the hearsay objections herein.

20       But the second argument is this.  Section 1104(c)

21   calls for a examiner only as is appropriate, and I think this

22   is what you're getting at.  I think there's four reasons why

23   this is inappropriate.

24       Number one, I'd like to reiterate what Mr. Karotkin

25   said.  I think this is tactical.  The In Re:  Residential

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Capital case in the Southern District of New York, it's clear

2    that they chose to file this as opposed to filing something

3    that would solve the problem.  When Ms. Sedwick says something

4    went wrong, I think that it doesn't take a great leap of logic

5    to figure out that what went wrong was the vote went to affirm

6    the plan when Ms. Sedwick, Ms. Kane, and Ms. McDonalds (sic)

7    wanted it voted down.  Why?

8         Well, second, there was other relief available to

9    them.  This motion was filed originally on May the 19th.  I got

10   it at about 2:30 in the morning, and I filed a response on May

11   the 20th.  Why did I do that?  Fifteen days ago.  And the

12   reason is this Court has the discretion to follow ample

13   precedent to allow the counting of ballots that are returned

14   between then and confirmation.  I said that fifteen days ago.

15   I pointed them to the rule that gives the Court the discretion

16   to count those votes, and now Ms. Kane, fifteen days later,

17   right before we're going to do the closing arguments in the

18   confirmation trial would like to reopen the voting for seven to

19   ten days.

20        THE COURT:  Well, in fairness to Ms. Kane, come on.

21   She asked to have this motion heard much earlier.  I'm the one

22   that chose to make it later so that people like the debtor and

23   others could respond.  So you can fault her however you want,

24   but not because the motion is on today rather than a week

25   earlier.

PG&E Corporation and Pacific Gas and Electric Company

1    MR. WATTS:  But I'm not faulting her at all for that.

2    What I'm saying is that as it happened, there have been fifteen

3    days for people to file motions before this Court to count any

4    late votes.  I was pleased (break in audio) Mr. Karotkin stated

5    that 75 of the 115 individuals identified, Ms. Sedwick said

6    they have in fact voted.  The fact is the forty that haven't

7    had the ability to late vote and to ask for it to be counted.

8    Secondly, I don't believe that getting the examiner up

9    and running gets us time before this things needs to go down on

10   June 30th for two reasons.  Number one, I cannot overstate the

11   importance of Mr. Karotkin's argument about the overhang such

12   that an examiner would have on the value of the stock.  I've

13   been in negotiations where we have (break in audio) up this

14   company and the equity, trying to get them to commit, to put

15   the equity raise out in the month of June.  I believe that's

16   about to happen.  If there's any overhang of an examiner

17   looking at the voting process, that's going to suppress the

18   market's desire to buy this stock at maximum value and it's

19   going to hurt all the fire victims.  I would reiterate the TCC

20   has reviewed this very issue today.  (Break in audio).

21   And then finally, it wouldn't matter anyway because

22   the vote was overwhelmingly positive, as you noted.  On

23   document number 7706, pages 3 and 4, I wrote that the

24   confirmation trial testimony of Ms. Pullo further demonstrates

25   that the vote to accept the plan was so overwhelming, 44,000,

PG&E Corporation and Pacific Gas and Electric Company

1    that even if one were to take the 6,100 casted reject votes,

2    count all of the returned mail -- 8,100 -- as a reject -- total

3    ballots excluded, 19,078 as a reject -- the mathematical

4    results are still well above the two-thirds required by the

5    threshold that's in 11 U.S.C. Section 1126(c).

6           In contrast, today, the movants say they'd like an

7    audit of the ballots.  Well, you brought up the fall elections.

8    Most states don't even do a recount unless the vote's within

9    one percent.  I just googled the California Elections Code.

10   The State won't even fund a recount unless the winning and the

11   losing candidates are fewer than a thousand votes apart.  This

12   wasn't anywhere close.  It was eighty-eight percent.  There's

13   nothing that 100I or 200 hundred people asking for an

14   estimation is going to do to this vote.  It's already in.  It's

15   eighty-eight percent, and all it's going to do is

16   disenfranchise (break in audio) of those people, to cause the

17   debtor to go out and issue stock, get them funded so they can

18   rebuild their homes and it has a material effect on the value

19   that they're going to get that the (break in audio) to get

20   (break in audio).

21          THE COURT:  Okay.  We're now having trouble hearing

22   you.

23          MR. WATTS:   -- this issue (break in audio) --

24          THE COURT:  Ms. Parada, can you --

25          MR. WATTS:  Judge, I'm done.  The bottom line --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Okay.  Wait a minute.  I just want to see

2     if other people are having trouble -- are you having trouble

3     hearing (break in audio) --

4          THE CLERK:  Yes, Your Honor.  There seems to be

5     some --

6          THE COURT:  (Break in audio) Parada?

7          THE CLERK:  -- yes, there seems to be some delay or --

8          THE COURT:  Okay.

9          Mr. Watts, I think it's on your end, but do you have

10    anything -- final comment?

11         MR. WATTS:  I think I made my point.

12         THE COURT:  Okay.

13         MR. WATTS:  The bottom line is that there is overhang

14    damage that is real to the Tubbs victims if this thing goes out

15    to the market while this issue is still there.  And frankly,

16    there's no evidence before this Court that would justify it.

17         THE COURT:  Okay.  Thank you.

18         Ms. Parada --

19         MR. KAROTKIN:  Your Honor --

20         THE COURT:  -- let's move -- wait just one second, Mr.

21    Karotkin.

22         Mr. Watts and Mr. Marshack, they can go out of the

23    panel.

24         Yeah, Mr. Karotkin?

25         MR. KAROTKIN:  Yeah, I'd just like to say one more

PG&E Corporation and Pacific Gas and Electric Company

1   thing.

2        THE COURT:  One thing because the other two are

3   waiting.

4        MR. KAROTKIN:  Yes.  No, no.  I'll be very brief.

5        Ms. Pullo was on Zoom last week available for cross-

6   examination.  Ms. Kane didn't show up.  Ms. Sedwick didn't show

7   up.  Ms. McDonald didn't show up.  If they had issues with what

8   Prime Clerk did, why didn't they appear and cross examine her

9   last week when they had an opportunity?

10       THE COURT:  Okay.  That's a fair rhetorical question.

11       Ms. Sedwick, your mic is live.

12       Ms. Kane, you need to unmute your mic.

13       I'm going to let -- well, you two haven't talked.  Ms.

14  Sedwick, why don't you make a comment or two and then I'm going

15  to let Ms. Kane close.

16       MS. SEDWICK:  I just want to correct a couple factual

17  statements.  The reason why seventy-five on my list voted is

18  because they got the help they needed from other fire victim,

19  which has been a consistent theme throughout this bankruptcy

20  process is people have had to look to each other to figure out

21  how to -- a workaround -- how to vote even though they hadn't

22  gotten their ballot.  What we're concerned about is the people

23  who are not on Facebook.

24       And in terms of laches, I had been reaching out to Kim

25  Morris at BakerHostetler before the voting deadline to say,

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    hey, there's -- a lot of people are reporting problems; they

2    haven't gotten their ballots.  What should we do?  What should

3    we do?  So I had been trying to bring this attention (sic) to

4    the people I thought -- through the appropriate channels and it

5    didn't -- so it didn't seem to -- nothing seemed to work.  And

6    when Ms. Pullo was speaking, I did raise my hand, but I wasn't

7    called on, so I would have loved to ask her a couple questions.

8           That's it, Your Honor.  Thank you.

9           THE COURT:  Okay.  Thank you, Ms. Sedwick.

10          Ah, yes, Ms. Parada, for -- let's take Mr. Watts and

11   Mr. Marshack and move them back to the attendants.

12          Ms. Kane, I promised you some time without

13   interrupting you.  So you got my word for it.  Your closing.

14          MS. KANE:  I appreciate that.  Thank you.  Thank you,

15   Your Honor.

16          Yes.  I want to address several issues.  First of all,

17   the vote itself was not overwhelming when you compare it to

18   other mass tort bankruptcy cases.  And we're still missing,

19   initially, the 36,000 votes, folks that didn't vote --

20          THE COURT:  You have some reference to some other mass

21   tort bankruptcies where the vote was different?

22          MS. KANE:  Yes.  Yes.

23          THE COURT:  I'm not aware of what you're referring to.

24          MS. KANE:  Yes.  I do.  I do.  And I refer you to --

25   this is Judicial Management of Mass Tort Bankruptcy Cases, the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Federal Judicial Center, and page 133, it references -- let me

2    see.  Right here, 94 percent in A.H. Robins, 96 percent in UNR

3    bankruptcy, 96 percent Eagle-Picher, and 95.5 percent in Dow

4    Corning breast implant cases.

5            Yeah, and I want to tell you there's a reason for

6    that.  There's a reason for this very high voting numbers in

7    other mass tort cases, and that is because tort claimants

8    listen to the TCC.  And I think the tort claimants here rely on

9    the TCC obviously.  But what happens is in those cases, the

10   debtor negotiates and settles with the tort claimants committee

11   and that committee will often jointly propose the plan with the

12   debtor and urge its approval.  And that's out of this -- oh,

13   let me see -- that's at page 133 of Judicial Management of Mass

14   Tort Bankruptcy Cases, Federal Judicial Center which I

15   referenced earlier.

16           That's pretty much a direct quote.  So what happens is

17   they come to an agreement, they work together.  They propose

18   the plan together, but that's not what's happened in this case,

19   and that's why I think you have a great difficulty with this

20   vote and the tort claimants have a great difficulty with the

21   vote because they did enter into an RSA with the tort claimants

22   committee, but there were so many things left out of that RSA

23   that on May 15th, I think it was, the TCC filed a thirty-five

24   page objection, and they still have not resolved all the issues

25   as per the state --

of 185
(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  What does this have to do with today's

2    motion please?

3          MS. KANE:  Oh, yes.  Okay.  Let me explain that

4    further.  I'm just stating first of all, this is not a high

5    vote.  There are 36,000 people missing in this vote out of the

6    87-, 86-, 87,000 claimants.

7          I'm just saying this also goes to the laches issue

8    that if there is any reason that this vote -- or this motion

9    was brought late, it's not so much because we have been

10   dilatory in bringing it.  It's more because the debtors and the

11   committee left to the last minute to resolve so many issues, so

12   there hasn't been that tight coming-together between the TCC

13   and the debtor.  There's been just the opposite.  And that has

14   made the fire victims very, very uneasy, and maybe that's why

15   they haven't voted.

16         I also want to point out that we were not dilatory.

17   We brought this motion four days after the voting deadline, and

18   it wasn't really until that time that we started realizing

19   there's a big problem here; this needs to be investigated.

20         I want to point out that we didn't really know of all

21   those voting problems.  There were other voting problems and

22   those were brought on by -- you might say -- plaintiff's

23   counsel and how they were treating their own clients.

24         THE COURT:  That's has not -- again, that's not a

25   today issue.

PG&E Corporation and Pacific Gas and Electric Company

1          MS. KANE:  That's my point.  That's a different issue.

2    But what we have here, the people simply not getting their

3    ballots.  But I want to tell you that nobody initially

4    questioned the ability of Prime Clerk.  They're well-known.

5    Mr. Waisman disclosed in two different declarations all of the

6    relationships.  That's not an issue here.  It wasn't an issue

7    then.  And nobody really thought wow, we got to keep an eye on

8    this.  We thought everything was going according to the Court's

9    order and according to plan.  And so it wasn't until the very

10   end of this voting period, we find out, no, it's not.

11          And there needs to be -- it needs to be addressed.  It

12   needs to be looked at.  But there's --

13          THE COURT:  Okay.  I need you to wrap up.  I said I

14   wouldn't interrupt, and I don't think I have, but I'll give you

15   three more minutes for finishing your argument.

16          MS. KANE:  Well, thank you.  Okay.  Thank you.

17          But in any event, I do want to point out that if the

18   negotiations had come earlier -- I remember the -- oh well, the

19   registration rights agreement, for example.  People had been

20   negotiating on that since March.  It's still not resolved, and

21   the TCC filed --

22          THE COURT:  That has nothing to do with today's

23   motion, Ms. Kane.  Nothing to do with today's motion.

24          MS. KANE:  Well --

25          THE COURT:  So focus on today's motion for your

PG&E Corporation and Pacific Gas and Electric Company

1    remaining two minutes.

2    MS. KANE:  I'm sorry.  I can't -- I can't seem to make

3    clear the connection.  But what I'm saying is this has to do

4    with laches.  First of all, we didn't foresee this.  We didn't

5    expect Prime Clerk to behave like this or -- I'm not saying

6    they did, but this is how they came out.  But the fire victims

7    have been precluded from voting, and it needs to be

8    investigated.  They have a right to vote.  They weren't given

9    that right.  And that needs to be looked at.

10    And I also want to take issue with the implication

11    that this is some sort of tactical ploy.  It is not a tactical

12    ploy.  I don't understand -- on the other side, if I want to

13    start looking at people's motives -- I do not understand why

14    the fire victim attorneys would want to prevent fire victims

15    from voting, why it's so important to them.  And there's -- I

16    know that the evidence has been disparaged a lot, but if you

17    look back through my exhibits, especially G and H that are

18    declarations from attorneys, something terrible happened in the

19    mailings, and that needs to be looked and the fire victims need

20    to be able to vote.  It's mandated.

21    I also (break in audio) --

22    THE COURT:  I --

23    MS. KANE:  One more thing?

24    THE COURT:  One more thing.

25    MS. KANE:  Thank you.

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    I think that the monthly operating report that was

2    filed on the 29th of May -- it's document 7654 -- I think that

3    will reveal that there's at least 500 million -- I just want to

4    respond to that argument, and as Your Honor knows that early in

5    the case, you granted the order for a debtor-in-possession

6    financing for 5.5 billion.  So I think there's plenty of debt

7    there.

8    But the point here -- the real point is that people

9    have not been given their right, under the Code, to vote.

10   And --

11          THE COURT:  Okay.

12          MS. KANE:  -- and to give them that right.

13          THE COURT:  Ms. Kane, I'm going to stop you at that.

14   I'm going to thank you and --

15          MR. KAROTKIN:  Your Honor (break in audio) --

16          THE COURT:  No, I don't want anymore, Mr. Karotkin.  I

17   got to move on.  I've got to move on.

18          MR. KAROTKIN:  Your Honor, I just think it's unfair.

19   The article she referred to -- first of all, she never gave us

20   a copy of it.  Secondly, she is totally --

21          THE COURT:  Mr. Karotkin --

22          MR. KAROTKIN:  -- misrepresented what it said.  Those

23   were plan voting rates that she was referring to, not total

24   people who voted.

25          THE COURT:  Okay.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. KAROTKIN:  And if you were to look at the article,

2    it's very clear.

3    THE COURT:  I'm going to conclude the matter.  I take

4    the matter under advisement.  I have hands are raised by Mr.

5    Abrams, Ms. Wallace, Mr. Julian.  I'm not going to call on any

6    of them.  By coincidence, all three of them are on the schedule

7    to argue on the merits today, and they can use a portion of

8    their time if they feel they want to waste time on today's

9    matter, because I've heard the arguments.  I'm going to take it

10   under advisement.

11   I thank Ms. Kane, Ms. Sedwick, and Ms. McDonald for

12   their arguments.  Mr. Watts and Mr. Marshack for joining Mr.

13   Karotkin.

14   The matter is submitted, and I'm going to move Ms.

15   Sedwick and Ms. Kane off the panel for now and appreciate your

16   time.

17   Thank you and have a good day.

18   MS. KANE:  Thank you, Your Honor.

19   THE COURT:  Mr. Karotkin, I'm prepared to go directly

20   to the argument and -- if that meets with your approval.

21   MR. KAROTKIN:  Actually, sir, there have been certain

22   things that have happened earlier today.

23   THE COURT:  Okay.

24   MR. KAROTKIN:  So if we could -- I think we would like

25   to change the schedule based on that, and let me bring you up-

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   to-date.

2           Earlier today, we've had some discussions with Mr.

3   Bray of the Milbank firm with respect to the remaining

4   objection filed by the creditors committee.  We think that we

5   may see a way to resolve those objections relating to the

6   issues of indemnification and contribution with respect to

7   executory contracts and otherwise, which I believe would also

8   address the matters that have been raised -- if you look at the

9   list we gave you --

10          THE COURT:  It'll raise a lot of them.  Of course.

11  Yes, I realize that.

12          MR. KAROTKIN:  Through CN Utility Consulting, I think

13  that if you look at the UCC, Mr. Winsberg, Mr. McKane, Mr.

14  McDonnell, Mr. Newman, Mr. Graulich, and Mr. Lubic, all are

15  addressing a similar issue.

16          Mr. Bray is trying to get his committee together by

17  noon -- I believe by noon your time -- to hopefully get us

18  their view and a response to what we've been talking about.  Of

19  course, there are no guarantees it will be resolved, but we're

20  hopeful.

21          And we would ask, if possible, if you could move --

22  start with Mr. Troy and move ahead in that order and then move

23  these other people to the back.

24          THE COURT:  So looking at your list, you haven't

25  included the municipal objectors in that further discussion

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  category.  So your suggestion is to take from Bray down to

2  Lubic --

3       MR. KAROTKIN:  Yes.

4       THE COURT:  -- that whole group of people and move

5  them to the back of the line?

6       MR. KAROTKIN:  Yes.  I don't -- I'm not sure I

7  understand -- well, that's -- yes, sir.  That for sure.  Mr.

8  Troy may have similar issues.  I don't know.  I don't believe

9  the municipal objectors have executory contracts, so I think

10 they're more concerned with Section 10.13 of the plan, but.

11      THE COURT:  Okay.  All right.  Let me do this.  What

12 I'm hearing from Mr. Karotkin is a suggestion that for those of

13 you saw the list that he circulated -- and I asked his

14 colleague Ms. Liou to circulate it to everyone who was on the

15 list so I'm assuming that's true -- the attorneys for their

16 various clients are Mr. Bray, Mr. Winsberg, Mr. McKane, Mr.

17 McDonnell, Mr. Newman, Mr. Graulich, Mr. Lubic.  And Mr.

18 Karotkin is suggesting that all of the counsel in that list be

19 deferred for now, and I'm prepared to go forward then with

20 argument in sequence starting with Mr. Troy.  Then I'll say Mr.

21 Gorton, but all the other attorneys that are matched up with

22 him:  Ms. Wong, Mr. Finestone, and so on.

23      So I'll take just a moment and ask any of the lawyers

24 who are on the list who want to be heard on the scheduling,

25 raise your hand.

PG&E Corporation and Pacific Gas and Electric Company

1     And Ms. McDonald and Mr. Abrams, your hands are still

2    up.  I'm not going to recognize them today, so I'll take them

3    down or you can take them down.  Thank you.

4     So if any of the parties who are on the list, starting

5    with Mr. Troy going down the list wish to be heard.  Okay.

6    Well, I see Ms. Wong.

7     All right.  Ms. Parada, bring Ms. Wong and Mr.

8    Finestone into the room please.

9     Now Ms. Wong raised her hand.

10     Okay, Mr. Finestone, I'm about to hear from you.

11    You're live.  Good morning.  Can you hear me all right?

12     MR. FINESTONE:  Good morning, Your Honor.  I can hear

13    you fine.  Thank you.

14     THE COURT:  What's your pleasure?

15     MR. FINESTONE:  Ready to go ahead.

16     THE COURT:  Oh, you didn't need to raise your hand if

17    you were okay with the sequence.

18     MR. FINESTONE:  Oh, sorry.  Yeah.  No.  I'm fine with

19    the sequence.

20     THE COURT:  Okay.  Wait one second.

21     And Mr. Neumeister, you've got your hand up.  Mr.

22    Gorton, what --  people are raising their hand and then taking

23    them down again.  You guys got to go back to school and

24    understand the hand rules.

25     Mr. Gorton -- bring Mr. Gorton please and I'll hear

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    from him and Mr. Neumeister and we'll find out what's on their

2    minds.

3            Okay.  Mr. Neumeister, good morning again.  What's

4    your pleasure?

5            MR. NEUMEISTER:  Good morning, Your Honor.  I did

6    speak briefly yesterday.  We reviewed the changes to the plan

7    that were filed yesterday by the debtors. We did have one or

8    two remaining issues, so I would just hope that we have five

9    minutes at some point in the queue today.

10           THE COURT:  Okay.  I'll put you on the list.  You did

11   reserve that.

12           And Mr. Gorton, did you wish to be heard or not?  Oh,

13   there you are.  Just unmute yourself.  Okay.  What's your

14   pleasure?

15           MR. GORTON:  Thank you, Your Honor.  We would like to

16   be heard after the UCC has an opportunity to present or we

17   understand what the resolution is because we do have some

18   executory contract issues.  My clients do have executory

19   contracts, and so it is an issue relevant to us.

20           THE COURT:  So you think if there's some resolution,

21   maybe that'll facilitate your involvement.  Okay, that's fair

22   enough.

23           MR. GORTON:  It'll certainly shorten it, Your Honor.

24           THE COURT:  All right.  I'm going to do the following

25   then.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          Okay, Mr. Neumeister, I'm going to take you off the

2    panel for the moment.

3          Mr. Gorton, I'll take you off -- or have Ms. Parada

4    take you off the panel.

5          Mr. Finestone, I'm going to let you have a little

6    squatter's rights here.  You're on the panel.  I should let you

7    argue.

8          So I'm going to hear from Mr. Finestone first for ten

9    minutes.  Then I will call on Mr. Troy.  Then I will call on

10   Ms. Wong.

11         And Ms. Wong, if you can hear me, you'll need to

12   explain why you're even arguing when you didn't file an

13   objection.

14         And I will -- after those three parties are heard, I

15   will hear from Mr. Abrams and Ms. Wallace, in that order.

16         Before I do that, I want to make a call to see if

17   anyone from the United States Trustee's Office interested in

18   appearing and explaining why they did not respond to my

19   direction on the examiner motion.  So if you are representing

20   the United States Trustee and you're prepared to put up with my

21   wrath, raise your hand.

22         And if you don't raise your hand, you might have to

23   put up with my wrath anyway.  I see Mr. Laffredi is a victim

24   of -- a volunteer here.

25         Ms. Parada, bring Mr. Laffredi in for a moment, and

PG&E Corporation and Pacific Gas and Electric Company

1    then I'll go to the argument with Mr. Finestone.

2          Mr. Laffredi, you have to unmute yourself, and I'm not

3    going to -- you're not going to get any of my wrath, but I

4    would like to know why I didn't get an attendance -- an

5    appearance from your office when I directed it.

6          MR. LAFFREDI:  Yes, and I want to sincerely apologize

7    on behalf of the United States Trustee for not filing that

8    response to -- at the Court's direction.  The United States

9    Trustee's not taking position on this.  We're standing ready

10   and able to follow the Court's directive in the event that an

11   order is entered directing the appointment of an examiner,

12   whether it's now, whether it's later.  And we will take out --

13   fulfill our fiduciary and our statutory obligations in doing

14   so.

15         THE COURT:  So why couldn't you take a position when I

16   asked you to take a position or at least file something that

17   says you're not taking a position.  You know, that's very

18   frustrating, when you don't -- you have such an important role

19   in the administration of a case.  I would have appreciated

20   something from you or from whoever's in charge.

21         MR. LAFFREDI:  No, I do apologize for that.  That was

22   an oversight, Your Honor.  We simply did not file that.

23         THE COURT:  Why can't I get a position or a

24   recommendation, not of who it would be, but whether there

25   should be one?  This is the most highly visible case I can

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    imagine and perhaps you have experienced and not even a peep.

2    I'm not focusing on the timing.  I'm focusing on the lack of a

3    substantive response.

4              MR. LAFFREDI:  Right, and Your Honor, I -- part of the

5    issues that the Court identified in that there's insufficient

6    evidence, we wouldn't even have that evidence -- that's part of

7    the reason why we were not getting involved in the merits of

8    whether an examiner should be appointed or whether it's

9    appropriate.  The parties who would have that evidence have

10   taken this matter up, and so would be in any other case -- not

11   just this case, but any case -- where we wouldn't necessarily

12   have the evidence or we wouldn't have a position to take.  If

13   the order is entered, we will fulfill the statutory obligations

14   to appoint, including reaching out to parties, getting

15   recommendations, and then proceeding.

16             THE COURT:  All right.  Thank you for your comments.

17   I'm going to take you off the panel now.

18             All right.  Let's review the bidding.  I'm going to

19   hear from Mr. Finestone and then Mr. Troy, then Ms. Wong, and

20   then I will take a midday break, so Mr. Abrams and others will

21   be up after the midday break, and I'll call -- you know, I'll

22   do like I did yesterday.  I'll tell you a time and a time

23   period.

24             Mr. Finestone, you're up for ten minutes.

25             MR. FINESTONE:  Thanks very much, Your Honor.  I am

PG&E Corporation and Pacific Gas and Electric Company

1    appearing on behalf of Roebbelen Contracting, a California

2    general contractor.  Roebbelen is actually one of the committee

3    members, but I'm appearing not with respect to its unsecured

4    claim.  Roebbelen has a mechanics lien claim in part, and so it

5    filed an objection with respect to the treatment under Section

6    4.16 of the plan.

7           I think the best place to start is the debtor has

8    filed a response to the objection.  I guess, let me start with

9    the treatment, Your Honor.  The treatment, there's sort of

10   three parts to it.  One is you keep your lien; two is the

11   debtor pays you, and three is some other unidentified treatment

12   that the debtor claims won't impair the creditors.

13          With respect to the keep your lien treatment, the only

14   objection we had is that it wasn't clear that the creditor

15   could exercise its state law remedies, meaning to foreclose on

16   the lien if it wasn't paid.  The debtor's response to that is

17   that the creditor would be entitled to exercise their state law

18   remedies, so I think the answer to that, Your Honor, is a

19   simple clarification in the plan to deal with that issue.

20          The second treatment, which is the debtor will pay,

21   there were a couple objections to that.  One had to do with the

22   wording of the plan which made it appear as only interest would

23   be allowed.  The debtor's response to that objection is that

24   reasonable fees and costs or other charges are also allowed

25   under 506.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    The other -- there's two other issues with respect to

2    that second treatment, Your Honor.  One has to do with the

3    payment date.  So the plan, under 4.16, was similar to the

4    treatment of the unsecured creditors, which is that the payment

5    would be whenever is reasonably practicable after the effective

6    date.  We've argued that it -- there ought to be a cap on that

7    of thirty days, Your Honor.  And that's -- that treatment was

8    actually modified with respect to the general unsecured

9    creditors and the treatment of the general unsecured creditors

10   under, I think it's 4.1- -- I forget the provision of the plan,

11   sorry, at the moment.

12   So that's -- excuse me.  That's the change that we

13   think also ought to be made here, that the -- whenever

14   reasonably practicable, ought to be capped at no later than

15   thirty days from the effective date.

16   And then the final issue under that second option,

17   Your Honor, is that it says that the secured claim is entitled

18   to interest.  We objected because it wasn't clear that that

19   interest ought to be contract rate interest.  The debtor hasn't

20   responded to that particular part of the objection, and so we

21   think the plan ought to be modified to make that clear.

22   It's not clear that it wasn't contract rate interest;

23   it just says is entitled to interest.  And so we think the plan

24   ought to be modified to include --

25   THE COURT:  Well, your client -- is your claim secured

PG&E Corporation and Pacific Gas and Electric Company

1    or unsecured?

2         MR. FINESTONE:  A portion of the claim is -- this is

3    all having to do with the mechanics lien claim, which is

4    secured.

5         THE COURT:  But I mean, if they're secured, wouldn't

6    they be entitled to contract interest?

7         MR. FINESTONE:  Yes, I believe so, Your Honor.

8         THE COURT:  All right.

9         MR. FINESTONE:  And the debtor hasn't said that

10   they're not entitled to contract rate interest; they haven't

11   responded to that part.  And so I think the plan -- unless the

12   debtor disputes that, the plan ought to be revised to clarify

13   that the interest referred to is a contract rate interest.

14        And then the one final part, Your Honor, is the third

15   option, which is the debtor will select some other option not

16   disclosed that won't impair the creditor.  We think that is too

17   vague and really unfair to the creditor to include that as an

18   option.  It makes no sense in the plan to have that as an

19   option, and the debtor thinks that it ought to keep that in.

20   So our request is that last option be stricken from the plan.

21        And those are my comments.  Thank you, Your Honor.

22        THE COURT:  Mr. Karotkin, I wasn't scheduled to have

23   this a reply session, but these seem like discrete issues.  Are

24   you in a position to say whether these are viable -- or live

25   issues that need to be resolved, or is it something that you

PG&E Corporation and Pacific Gas and Electric Company

1  and Mr. Finestone can agree on something offline and solve it?

2       MR. KAROTKIN:  Sorry.  I'm sure we can agree offline,

3  Your Honor.  I mean, basically, the treatment of his claim

4  under the plan is that it's unpaired and attracts the language

5  of the statute.  We think that's appropriate, but I'm sure I

6  can resolve his issues offline.

7       THE COURT:  Well, let's do this.  Again, sometime

8  today, Mr. Karotkin, I'm going to ask you, if you haven't

9  already, to update your live objection list.  But if you keep

10 getting them resolved, the list should be getting shorter,

11 which is good news.  But it's -- I've been thinking about what

12 I have to do next after these argument sessions are over.  And

13 the answer is I have to decide decision matters that are still

14 ripe to be decided.  And your job is to make that list shorter.

15      MR. KAROTKIN:  Right.

16      THE COURT:  So why don't you and Mr. Finestone or A&M

17 or someone else working with you -- I doubt -- Mr. Finestone

18 doesn't need you, I guess -- but someone see if there can be an

19 exchange of language clarifying, whatever solves the problem.

20 And if the answer is fine, then it comes off the list.  If it

21 stays on the list as matters I have to decide, I will go back

22 to study the arguments of both sides and leave it at that.

23      MR. KAROTKIN:  I think -- just one last thing.  I

24 mean, I think it's important to note that the treatment section

25 he's referring to is not unique to his claim.  It applies to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    all secured claims.

2             THE COURT:  So -- but --

3             MR. KAROTKIN:  The fact that he be entitled to

4    contract rate interest may not be true for all of the creditors

5    in that class.  So wholesale revisions to that section of the

6    plan to address his particular issues are not appropriate.

7             We may be able to stipulate with him as to his

8    particular claim.

9             THE COURT:  Well, I know Mr. Finestone well enough to

10   know that if you can do what his client wants, there ought to

11   be a way to make it happen.  There is a squeaky wheel

12   principle, and he squeaked, and he made his argument.  And I'll

13   look to see if you folks can work it out.

14            Thank you, Mr. Finestone.  Nice --

15            MR. FINESTONE:  Thank you very much, Your Honor.

16            THE COURT:  -- to see you.

17            MR. FINESTONE:  Same here.

18            THE COURT:  We're --

19            MR. FINESTONE:  Thank you.

20            THE COURT:  -- going to take you off the screen now.

21            All right, off the panel.

22            Ms. Parada, by my calculation, we should have Mr. Troy

23   now.

24            THE CLERK:  Mr. Troy is joining now, Your Honor.

25            THE COURT:  Thank you.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      THE CLERK:  Mr. Troy, please unmute your microphone

2  and state your appearance, please.

3      THE COURT:  Good morning, Mr. Troy.

4      MR. TROY:  Good morning, Your Honor.  Matthew Troy,

5  Department of Justice, appearing on behalf of various federal

6  agencies.

7      Your Honor, I think you know the United States joined

8  in the objection filed by Mr. Pascuzzi on behalf of the

9  California state agencies, and we continue to join in the

10 remaining objections that remain extent that you and he

11 discussed yesterday, but, at the same time, appreciate the

12 debtors' efforts to work through and resolve those objections

13 that have been resolved.

14      I have three issues today that I want to address with

15 Your Honor.  The first is to just let you know that we are

16 coordinating with the state and the other governmental units

17 with respect to looking at and resolving any remaining issues

18 that we have with paragraph 1013 of the plan, as revised in

19 yesterday's version of the plan.  If not resolved, obviously,

20 the United States will be part of the argument before Your

21 Honor, I think, tomorrow with those other governmental units.

22 And we will certainly coordinate with those other parties to

23 avoid duplication and inefficiency that you've asked the

24 parties to do in presenting at argument.

25      THE COURT:  Okay.  Thank you.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. TROY:  Second, Your Honor, I want to emphasize the

2    importance to the United States of the requested inserts to the

3    fire victim trust agreement and the claims resolution

4    procedures that you discussed yesterday with Mr. Pascuzzi.

5    Those inserts, Your Honor, when you look at them as a test to

6    the California state agencies' objections, are straightforward,

7    concise, and nonprejudicial to other parties' rights.

8          They simply reflect and incorporate the terms of

9    binding, final court approved settlements that were reached

10   after some lengthy sessions of out-of-court mediation and

11   subsequent lengthy negotiations over the terms of those

12   agreements.  If you recall, Your Honor, they resolved

13   significant government liabilities that, at the time, we were

14   being told that if they were asserted against the fire victim

15   trust, would potentially jeopardize a favorable vote of the

16   plan by that class of fire victims.

17         So I just wanted to emphasize the importance of those

18   inserts to the United States.

19         The third item, Your Honor, has to do with what you

20   discussed with Mr. Pascuzzi yesterday on Section 8.2(e) of the

21   plan.  And again, 8.2 is the provision of the plan that deals

22   with executory contracts.  But 8.2(e) is a provision that we

23   view goes beyond a simple cure amount dispute of whether or not

24   an item listed in the debtors' plan supplement is or is not an

25   executory contract that is assumable.  8.2(e) has to do with

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    the scope of the cure that the debtor receives from having

2    assumed this con -- the contracts and leases designated in this

3    plan supplement.

4         The paragraph uses the terms "claims" and "causes of

5    action" in addition to the term "default", so that it reads

6    that "Assumption shall result in the full release and

7    satisfaction of any claims and causes of action against any

8    debtor or defaults by any debtor arising under any assumed

9    contract or lease."  The issue we have is with the terms

10   "claims" and "causes of action".

11        The first term, "claims", the plan defines it as the

12   same -- in Section 1015, a specifically defined term by

13   Congress.  Congress, as I'm confident you know, has used that

14   terms hundreds of times in the Code.  Okay?  But in perhaps the

15   longest section of the Code, by word count, Section 365, it

16   uses the term "claim" two times:  in Subdivision (o) and

17   Subdivision (n).  Neither has any application to this case or

18   this dispute.

19        So when Congress wanted to use the word "claim", it

20   knew how to do it in 365, and it certainly knew how to do it in

21   hundreds of other instances throughout the Code.  But in the

22   subdivision of Section 365 addressing assumption and cure, it

23   didn't use "claim"; it used "default".  For that reason, Your

24   Honor, we don't think that Section 8.2(e) should include the

25   term "claim", because 365(b)(1) does not use it, and Congress

PG&E Corporation and Pacific Gas and Electric Company

1   knew how to use it when it wanted to.

2          Your Honor, "causes of action", that term is defined

3   by the plan.  And I urge you to take a look at it to understand

4   its breadth and its scope.  It's in Section 1.21 of the plan.

5   Your Honor, it's extraordinarily broad and, frankly, goes well

6   beyond what is authorized under 365(b)(1).  What 365(b)(1) does

7   is it provides a shield to the nondebtor party to the executory

8   contract or lease, but it also imposes some obligation on that

9   nondebtor party.

10         Under Ninth Circuit law, where the nonbankrupt has

11  knowledge of facts sufficient to place the party on notice that

12  a potential pre-confirmation default has occurred, the

13  nondebtor contract party has to waive it when faced with a

14  debtor's request to assume the contract.  Again, Your Honor,

15  knowledge of facts to -- sufficient to place the party on

16  notice that a potential pre-confirmation default has occurred.

17  Okay?

18         One of those cases, Your Honor, is Arriva

19  Pharmaceuticals, 456 B.R. 419, from your court.  Not Your

20  Honor, but the Bankruptcy Court of the Northern District of

21  California.

22         So Your Honor, let's go to "causes of action".  And

23  I'll just read you some of the terms that are used in that.  It

24  means, without limitation, any and all actions, suits, causes

25  of action, whether known or unknown, suspected or unsuspected,

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    foreseen or unforeseen.  Your Honor, that violates what

2    365(b)(1) and the Ninth Circuit's -- the Bankruptcy Court of

3    the Ninth Circuit's interpretation of that section authorized.

4           So for that reason, that's why we're objecting to

5    8.2(e) --

6           THE COURT:  So --

7           MR. TROY:  -- because --

8           THE COURT:  So let me turn this around, because I

9    just -- as I said yesterday -- and I'll repeat again -- I just

10   haven't kept -- I cannot absorb all the pending objections.

11   Your point is that the plan defines "causes of action" and

12   "claims" so broadly that it overwhelms a more narrow reading of

13   365.  And so your view is that the debtor can assume things,

14   but it doesn't relieve itself of exposure to the government or

15   other claims if they fall outside of the narrow definition of

16   365 -- narrow reach of 365.

17          Is that right?

18          MR. TROY:  That's correct.  And I guess it -- "narrow"

19   might be a fair reading.  I would say it is the plain reading

20   of 365(b)(1).

21          THE COURT:  But if I can be permitted a hypothetical

22   again -- I might have used this to Mr. Pascuzzi -- with him

23   yesterday.  If there were a lease where they default in rent,

24   one could say that the landlord has a cause of action for

25   unpaid rent.  But if the debtor assumes the lease and it cures

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    the default, by definition, there could be no cause of action.

2    If the debtor says the default is 10,000 dollars and, in fact,

3    it's 25,000, but the landlord doesn't do anything, then the

4    debtor would pay the 10-, but the other 15- would be released

5    under the -- as a cause of action release.

6            Would you concede that that would be the legal result?

7            MR. TROY:  Yes, because the -- I think you're saying

8    there is that the landlord there had knowledge of facts

9    sufficient to place it on notice of a pre-confirmation default.

10   And if it doesn't speak up at that point, then it's going to be

11   bound if the Court approves the assumption.

12           THE COURT:  Right, if the debtor says I -- my cure is

13   10,000, and the landlord could have come forth and said, no,

14   your cure is 25,000, the landlord is out of luck.  The 10,000

15   will be paid; the 15,000 will be a discharged cause of action

16   or potential cause of action.  I think you're --

17           MR. TROY:  That's correct.

18           THE COURT:  But in a non --

19           MR. TROY:  I would agree.

20           THE COURT:  But like Mr. Pascuzzi, you're going to

21   tell me that we're not dealing with executory -- I mean leases.

22   But something that could have been dealt with, when the debtor

23   says, this is what I'm going to do to assume this contract,

24   maybe that is the limit of what is -- the counterparty is bound

25   by if the assumption occurs, but not something that is not

PG&E Corporation and Pacific Gas and Electric Company

1   contemplated within the -- within that assumption process.

2           MR. TROY:  Right.  For example, Your Honor, a

3   construction contract cannot be determined until after

4   assumption and completion of the house.

5           THE COURT:  Okay.  So if the landlord -- if the --

6           MR. TROY:  So if the owner of the house later --

7   later -- if the owner of the house had no knowledge of facts

8   sufficient to put it on notice that there was a construction

9   defect in the house, that -- any liability or claim arising

10  from that default is -- has not been cured.

11          THE COURT:  So if the debtor is a contractor and he

12  files bankruptcy and assumes the construction contract with the

13  owner and says, I know I'm behind, I know I owe a half a

14  million dollars of performance, the owner won't have known

15  about it -- a defect.  The contractor completes the job,

16  finishes the house, and then the owner finds the defect, that's

17  not something that could have been cured or released, because

18  there might not have been a fair contemplate at the time of the

19  contract being assumed?

20          MR. TROY:  Correct.

21          THE COURT:  Okay.  All right.  Well, again, Mr.

22  Karotkin's going to put this on his response list later.  He's

23  not going to respond to this argument today, because that's not

24  what we planned.  But I -- I've taken you well over your time.

25  Do you want to add anything further for now?

PG&E Corporation and Pacific Gas and Electric Company

1    MR. TROY:  That's all I had, Your Honor.  I apologize

2  for going over time.

3    THE COURT:  But I'm the fault of it.  Thank you very

4  much.  Appreciate your time, Mr. Troy.

5    MR. TROY:  Thank you.

6    THE COURT:  Okay.  We're going to take you out of the

7  panel.

8    And Ms. Parada, is Ms. Wong in the panel today?

9    THE CLERK:  Yes, Your Honor.  Ms. Wong is joining now.

10    THE COURT:  Okay.

11    THE CLERK:  Ms. Wong, please state your appearance.

12    THE COURT:  Ms. Wong, can you hear me?

13    I don't -- well, she's -- Ms. Wong, can you hear me?

14  Well, she's muted herself now.

15    Now she's unmuted.

16    Ms. Wong, can you hear me?

17    Mr. Karotkin, I'll -- well, I -- or Ms. Parada, can

18  you hear Ms. Wong?

19    THE CLERK:  No, Your Honor.

20    THE COURT:  All right.  Ms. Wong, if you --

21    MS. WONG:  I'm sorry; can you hear me now?

22    THE COURT:  Well, sort of.

23    MS. WONG:  Can you hear me now, Your Honor?

24    THE COURT:  Well, there's a lot of feedback, Ms. Wong.

25    MS. WONG:  I'm sorry about that.  I'm not sure how to

PG&E Corporation and Pacific Gas and Electric Company

1    fix that.

2              THE COURT:  All right.

3              MS. WONG:  Can you hear me now?

4              THE COURT:  Yes.

5              MS. WONG:  Okay.  Thank you, Your Honor.  I'm -- I

6    represent the Pension Benefit Guaranty Corporation, which is a

7    federal government agency.

8              And we were concerned with Section 10.13, as Mr. Troy

9    mentioned.

10             THE COURT:  Ms. Wong, I have to interrupt you.  I'm

11   getting feedback.  Are you -- Ms. Wong, I think you're doing

12   something that's reflecting my voice.

13             MS. WONG:  I don't -- I'm not doing anything, Your

14   Honor.  I'm not sure --

15             THE COURT:  Okay.

16             MS. WONG:  -- why it's causing that.

17             THE COURT:  Let's try it again.  Can you hear me now?

18             MS. WONG:  I can hear you.  Can you hear me?

19             THE COURT:  Try muting your mic while I'm talking.

20             MS. WONG:  Okay.

21             THE COURT:  Okay.  Now, can you hear me?  And just put

22   your -- just show me a thumbs up if you can hear me now.

23             Okay.  See, what's happening is you can hear me, but

24   when you activate your microphone, it's getting feedback from

25   me.  Do you have me on a speaker?

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          Put your thumb up if you put -- have me on a speaker?

2          Okay.  Now, you can't hear me.  So Ms. Wong, here's --

3     we got to do this slowly.

4          You see the icon on your screen in the lower left that

5     has the microphone with the arrow through it.  When you click

6     on that, your mic will be live.  What you have to do while you

7     and I are having this discussion is you have to leave yourself

8     muted while I'm talking, and then I have to shut up while

9     you're talking.

10         So you have -- whatever the reason is, your end of the

11    discussion is creating the feedback.  So I'm going to ask

12    you -- the fundamental question is, why are you even here

13    arguing when you didn't file an objection to the plan?

14         So now unmute, and answer, and then tell me your

15    position.

16         MS. WONG:  Your Honor, I represent the Pension Benefit

17    Guaranty Corporation.  It's a federal government agency that

18    guarantees the pension plan sponsored by the debtors.

19         And we did not file an objection.  We were able to

20    resolve our concerns with the debtors.  But as Mr. Troy had

21    mentioned, the government agencies are working out language in

22    Section 10.13, which I believe I just heard him say is

23    scheduled for tomorrow.

24         We had reserved time today because we thought it was

25    scheduled for today.  Out of an abundance of caution, the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    case -- any edits to that section raised concerns for PBGC, for

2    my agency.  So really, I apologize, Your Honor.  It sounds like

3    Section 10.13 will be heard tomorrow.  If things are not

4    resolved, it's possible -- it sounds like that things may be

5    resolved.

6         THE COURT:  Okay.  Now, mute yourself.

7         Mr. Karotkin, can you unmute for a moment?

8         So Mr. Karotkin, there's a lot going on with 10.13, so

9    it seems whether -- if that's still in play, we ought to just

10   put it on the list to address tomorrow.  Do you agree with me?

11        MR. KAROTKIN:  Yes, sir.

12        THE COURT:  Yeah.  And so I'm not going to make a big

13   deal of Ms. Wong and her client not filing an objection.  It's

14   a major governmental agency, so let's -- we'll defer it.

15        Ms. Wong, so you don't have to unmute yourself.

16   Just -- in fact, don't unmute yourself.  I'll just make this

17   statement.  I will anticipate your participation tomorrow when

18   we figure out if there is a tomorrow to the extent that 10.13

19   gets resolved to the satisfaction of the state agencies, and,

20   Mr. Troy, hopefully, it'll be satisfactory to your agency as

21   well.  And we're very fluid in terms of how to move this

22   schedule.

23        I would request, between now and tomorrow, that you

24   find a tech savvy person in your home or office to see if you

25   can work on why we're having this feedback.  I do think it's

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    something at your end, and you can just do a practice Zoom.

2    Call up your best friend and test the thing.

3            I'll let you go now.  Thank you very much.  We're

4    going to take you out of the panel.

5            And it looks to me from our -- what I said, it's time

6    to take our mid-day break.  I'm going to -- by my clock, I've

7    got exactly a quarter to 12.  I'm going to stick with the

8    forty-five-minute we talked about yesterday.  I'll resume at

9    12:30 with Mr. Abrams, and then Ms. Wallace, then Mr. Scarpulla

10   and Mr. Hallisey, and others on the list.

11           Mr. Karotkin, if there are any developments as far as

12   the group that wanted to come up later, or Mr. Bray, we'll take

13   that up after I hear from those first speakers.

14           And again, for everyone's sake, I'll do the same thing

15   I did yesterday.  The Zoom session will stay pending.  I'm

16   going to turn off my video and audio and suggest that others do

17   the same.  If you want to close down, then you need to log back

18   in again before 12:30 California time.

19           All right.  See you then.

20       (Recess from 12:45 a.m., until 12:30 p.m.)

21           THE CLERK:  Hello, Your Honor, we're recording.  The

22   Court is back in session.

23           Would you like me to bring in Mr. Abrams?

24           THE COURT:  Yes, please.

25           THE CLERK:  Mr. Abrams is joining now.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  All right.  Good afternoon, Mr. Abrams.

2    Can you hear me?

3          MR. ABRAMS:  Yes.  Good afternoon, Your Honor.

4          THE COURT:  All right.

5          Mr. Karotkin, are you ready to go?

6          MR. KAROTKIN:  Yes, sir.

7          THE COURT:  Okay.

8          MR. KAROTKIN:  I'm --

9          THE COURT:  Mr. Abrams, you're up, and by our

10   schedule, you have thirty minutes.

11         MR. ABRAMS:  Thank you, Your Honor.  I would like to

12   start out by really thanking the Court and specifically Your

13   Honor and Ms. Parada and your staff.  I know it's not easy

14   sometimes to accommodate a nonattorney in these proceedings,

15   but I appreciate your efforts to do so.

16         THE COURT:  Thank you.  But we've got to accommodate

17   the attorneys, too.  They're as much a challenge as the rest of

18   them.

19         MR. ABRAMS:  Yes, thank you.

20         And that was going to be my second point, Your Honor.

21   Mr. Karotkin, in the last part of the hearing, misstated a

22   whole bunch of things about what I said and my motives and

23   motives of wildfire survivors.  And just like the lawyers, I

24   raised my hand, Your Honor, and have so in the past when my

25   name has been mentioned and my intent and my actions have been

           PG&E Corporation and Pacific Gas and Electric Company

1    mischaracterized.

2           And I don't want to take away from my time here, Your

3    Honor, but I would just like to point out that it's unfortunate

4    that those things are stated.  And just for the record, I

5    object to them.

6           THE COURT:  All right.  Noted.

7           MR. ABRAMS:  Thank you.

8           So I'm going to go through my closing remarks here and

9    divide it up into three parts.  I'm going to spend roughly

10   about five to ten minutes laying out a foundation for my

11   arguments.  I'm going to spend about ten minutes arguing that

12   this plan is not feasible based on 1129(a)(11), and then I'm

13   going to be spending the remainder of my time, the remaining

14   ten minutes, talking about how this plan is not feasible based

15   on 1129(a)(3).

16          THE COURT:  Just make sure you include in there what

17   you want me to do and what follows if I do what you ask me to

18   do.  Okay?

19          MR. ABRAMS:  Thank you.  I appreciate that.  I've

20   appreciated that you're pointing me in that direction in the

21   past, and I will endeavor to do so here.

22          My first point is this, is I've been engaging in this

23   proceeding and largely trying to talk to feasibility and how

24   this plan does not point in a feasible direction since the RSAs

25   were first put forward.  I've been corrected and pointed to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    that now is the time to talk about feasibility issues and that

2    the business judgment rule and things like manifestly unjust

3    and issues that face PG&E, like climate change or wildfire risk

4    mitigation, were all things for a later date.

5           So here we are, I would say, at the eleventh hour or

6    the eleventh-and-half hour before plan confirmation.  And these

7    very material things are now in front of the Court.  And I

8    think that it's unfortunate that we were not able to address

9    these in more breath earlier.

10          If you look at 1129, it asks us to consider if the

11   plan is likely to be followed by liquidation or further

12   reorganization.  It is important for the Court to keep in mind

13   that these eventualities described in the section would also

14   mean more death by way of PG&E ignited wildfires, loss of the

15   ability for homeowners to insure homes, and general

16   unaffordability for energy across California.

17          These things are important.  These things are very

18   much connected.  I would state that it would be unfortunate for

19   the Court and parties to this proceeding not to consider those

20   matters.

21          This plan of reorganization is not feasible because it

22   does not restructure anything that matters for the overall

23   health of Pacific Gas & Electric Corporation.  It changes who

24   sits in the executive and board seats, moves around dollars,

25   but, otherwise, this plan is providing much of the same but

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  expecting a different result.

2         I might not have known that if I had not participated

3  in Sacramento hearings in the legislature, participated in

4  hearings before the CPUC, where I heard Richard Kelly, the

5  former board chair, talking about how it wasn't PG&E's fault

6  that these things occurred; it was because -- it was the

7  customer's.  It was because of outside factors beyond their

8  control.

9         The reference in this hearing continue to avoid

10  accountability and responsibility.  This plan, put together, is

11  not in good faith.  Its primary goal is to ensure that

12  entrenched investors can cash out and exit the stock, to leave

13  victims and the public living among the PG&E lines exposed to

14  risks of fire and risks associated with the fires that they

15  cause.

16         Literally, the approval of this plan would require the

17  Court to take a position which no other party holds.  Surely,

18  the attorneys in this proceeding have put forward anemic and

19  inconsequential witness lists to convince how this plan is in

20  our best interest.  But look closely at what they put forward.

21  The shareholders are planning to exit the stock.  This has been

22  stated by Mr. Wells, by Mr. Johnson at the CPUC, on a number of

23  occasions, that their expectation and their hope is that after

24  these large investors exit the stock, that they will be able to

25  attract "traditional utility investors".

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          I don't know who they mean by "traditional" but given

2    that the stock will not have dividend payment for years, given

3    the inherent risks to PG&E, I don't see how that is possible.

4          The bondholders have securitized their investments and

5    hedged their risks.

6          The public leaders who have endorsed this plan have

7    done so reluctantly, tepidly, and I would say pessimistically,

8    given --

9          THE COURT:  You're hanging up there, and your screen

10   is freezing.

11         Mr. Karotkin, do you see the screen freezing also?

12         Yeah.

13         Mr. Abrams, it must be your connection, because -- Ms.

14   Parada, do you see --

15         MR. ABRAMS:  -- greatly appreciate those efforts.

16         THE COURT:  Okay.  Now, go ahead.

17         MR. ABRAMS:  Sorry.

18         I greatly appreciate those efforts, but it should give

19   the Court pause.  I appreciate Governor Newsom, Mayor Liccardo,

20   Senator Wiener, Senator Hill, for all of those out clauses that

21   they put forward.  Just a few days ago, Senator Hill put

22   forward legislative agenda that would turn this into Golden

23   State Energy.  Why are they all looking for these outs?

24         It's because they know that given the history of PG&E,

25   which has been largely avoided in this courtroom by the

PG&E Corporation and Pacific Gas and Electric Company

1    parties, that it has not changed.  I would ask the Court to

2    consider that it is simple greed and an unwillingness to deal

3    with the primary corporate risks that PG&E faces, which is why

4    we're here today and which is why this plan is infeasible.

5           Again, the shareholders made a bad bet on PG&E.  They

6    went into bankruptcy, but because of the size of these

7    shareholders and that they represent powerful interests across

8    California, they have been able to wield that power.  They have

9    been able to push to ensure that they are paid out, and they

10   have an exit strategy.  That's, first and foremost, what this

11   plan is about.

12          THE COURT:  Mr. Abrams, give me some basic concept

13   here.  If one of these hedge funds wants out, that means

14   someone's going to be coming in.  So if they can't --

15          MR. ABRAMS:  Absolutely.

16          THE COURT:  So what's wrong with that?  In other

17   words, if you don't like hedge funds, but a hedge fund chooses

18   to liquidate some of its stock, presumably, because someone is

19   willing to buy it, so therefore, there's a new shareholder.

20          MR. ABRAMS:  That --

21          THE COURT:  What does that tell you -- what does that

22   tell you if those other people are willing to come in, whether

23   they are typical or atypical, if they come in?

24          MR. ABRAMS:  What I'm contending, Your Honor, is that

25   this plan is specifically for that purpose.  It's so that

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    those --

2              THE COURT:  Okay.

3              MR. ABRAMS:  -- shareholders can position to the

4    buyers of that stock that PG&E is situated because they're

5    going to be able to -- because victims are going to be holding

6    this stock, they'll be more likely to favor power shutoffs.

7    And so their interests are protected.  Or this twenty-one-

8    billion-dollar wildfire fund that stretches across all of the

9    utilities across California somehow magically going to be

10   enough, except this bankruptcy is fifty-nine billion.  So they

11   are positioning this effort so that they can sell off.

12             I am -- would like to get to the primary risks

13   associated with this plan, Your Honor.  Arguably, the two

14   largest risks associated with this and make this plan

15   infeasible at -- for 1129(a)(11) purposes are PG&E's risk of

16   wildfires, which I will go into as to why they are ill prepared

17   to deal with that; and secondly -- which the debtors have tried

18   to avoid -- is the connections between their activities in

19   other courtrooms and illegal activity there, and somehow they

20   try not to make sure that that is injected into this proceeding

21   when it is very central to the issues at hand.

22             PG&E has continued down the same path, not measuring

23   the risks that they face.  There is a business adage that

24   states you cannot manage what you cannot measure.  I put

25   forward to the Court that in several times, through looking at

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   this and cross-examining the witnesses, I asked them to

2   quantify those risks.  I asked Mr. Wells; I asked Mr. Ziman;

3   they could not.  They debtors have a bag of rocks as mitigation

4   tactics, without knowing which tactic to throw at which risk

5   and what that risk reduction will be.

6          That is a major problem.  Dollars alone will not fix

7   that.  I asked the witnesses, were they aware and how did they

8   evaluate those risks.  I even gave them categories.  Do you

9   know those are high risks this summer, medium risks, or low

10  risks?  No, we didn't look at it that way.  Are they aware that

11  there's a six- -- it's been stated by many experts and

12  reiterated by the governor that there's a sixty-percent

13  increase in wildfire risk this summer.  Had they recalibrated

14  their risk assessment based on those numbers?

15         No.  I asked if they were aware that the CPUC had

16  indicated that PG&E was deemed the least prepared for wildfire

17  season.  They didn't speak to that.  This is unacceptable to

18  not put forward witnesses that know directly about the wildfire

19  mitigation plan given that it was the number one reason that

20  led them into this bankruptcy and will be the number one reason

21  that leads them into restructuring and liquidation as soon as

22  this summer.

23         Your Honor, you stated to me that it was not my

24  burden; it was the burden -- the burden of proof rests on the

25  debtor to ensure that their plan is feasible.  Just talking to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   the numbers alone, which I disagree with, still does not

2   address that.

3         Consider the fact that PG&E looks at, and has stated

4   many times, that 2019 was a success.  Their own statistics

5   point to they caused more wildfire ignitions in 2019 than in

6   the preceding years.  It was only because of the heroic efforts

7   of wildfire fighters and our fire departments that we were able

8   to save PG&E and save our communities from those risks.  Now

9   those same resources are stretched very thin.  How does that

10  lead us in a place where PG&E is able to forego further

11  restructuring?

12        Look, Your Honor and the Court -- and I know you try

13  to keep these personal things out of the courtroom, but I would

14  have to say that this past wildfire season was very difficult

15  for me.  I had to evacuate because of the Kincade fire, after

16  being burned out of my house in 2017, and running with my

17  family.  I drove past the Carquinez Bridge fire.

18        2019 was not a success.  They're relying upon that as

19  a basis for how they're moving forward.  They are unprepared.

20  Again, the witness list was insufficient.  Mr. Wells

21  specifically indicated that he did not have important

22  information regarding the Wildfire Safety Plan.  He said that

23  C-hooks and reclosers and the things that could speak to how

24  PG&E is being prepared is really not in his purview, was not

25  engaged in those discussions in a material way, and that Ms.

PG&E Corporation and Pacific Gas and Electric Company

1    Powell was the person.  Did the debtor call a witness like Ms.

2    Powell to testify?  No.

3         Now, what is their strategy?  Their strategy is,

4    instead of dealing with those systemic risks, is to throw some

5    money at it.  Look, this is urgent.  We've got to get that 21

6    billion dollar wildfire fund.  We've got five billion dollars

7    in working capital.  Your Honor, my math skills aren't great,

8    but I know that 59 billion is a lot more than 21 billion split

9    between three-plus utilities and five billion of working

10   capital.  It's ridiculous.

11        THE COURT:  But it's not split between three

12   utilities.  It's there for a fire or fires, and maybe no fires,

13   so it isn't a pie that's being divided up between SoCal and

14   PG&E and ComEd.  It's there as an insurance policy, right?

15        MR. ABRAMS:  Right, for all of those utilities.

16        THE COURT:  Well, I understand.  And --

17        MR. ABRAMS:  That's the point I'm making.  I don't

18   quibble with that.  You're right, Your Honor.  That is for all

19   of those utilities.

20        THE COURT:  Now, let me -- you've been around me long

21   enough to know I like hypotheticals.  So what if I take your

22   advice and don't confirm the plan?  Does that lessen the risk

23   of fires for this season?

24        MR. ABRAMS:  I believe it does, Your Honor.

25        THE COURT:  Well, but wait a minute.  Think about it

PG&E Corporation and Pacific Gas and Electric Company

1   right now.

2           MR. ABRAMS:  Yes.

3           THE COURT:  Right now, the company is in Chapter 11,

4   and therefore you're at a month and a -- a year and a half.

5           MR. ABRAMS:  Yep.

6           THE COURT:  It's got people like you and tens of

7   thousands of others who are waiting to get paid, but leave that

8   aside.

9           MR. ABRAMS:  Um-hum.

10          THE COURT:  To me, confirming the plan or not

11  confirming the plan doesn't mean it's going to start raining

12  next month.  It doesn't mean that Tubbs or Camp or -- what was

13  the fire?  We had a fire yesterday that killed -- I mean, not

14  killed, but destroyed a few homes up in Fairfield.  I don't

15  know what the cause was, but all those things are going to

16  happen whether this company confirms its plan or not.  So is

17  the plan and the funding more likely or less likely to change

18  the fire risk?

19          To me, it's almost -- I have no control over that.

20  The issue is, is the company able to solve its creditor

21  problems at the same time without exacerbating or making worse

22  its noncreditor problems?  So that's what I think you need to

23  help me understand, from your point of view.

24          MR. ABRAMS:  Absolutely, Your Honor, and I think these

25  are inextricably linked.  I believe that PG&E will be worse off

(972) escribers operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  with this plan confirmed.  Every stakeholder who is invested in

2  this company now needs to, and should have, rolled up their

3  sleeves and talked about how they can align investor interest

4  and investor money to mitigate wildfires.

5          THE COURT:  But that's a different question.  See,

6  that's where I'm having trouble with your argument.  I don't --

7          MR. ABRAMS:  Yep.

8          THE COURT:  -- I don't disagree with your concern

9  about the future.  I don't know that the bankruptcy law or the

10  bankruptcy court is a fix, so I'm going back to alternatives.

11  Is it better or worse to keep this company in bankruptcy

12  without any of its creditors being paid, the involuntary ones

13  particularly, like you, or out of bankruptcy where at least

14  opens the door to pay the creditors with the expectation that

15  whether they're in or out doesn't mean there isn't going to be

16  one of those horrible hot seasons in October and November that

17  you lived through?  And frankly, I lived through, not the way

18  you did, but I'm a Bay Area like I think you are, and I -- so

19  what does the bankruptcy bring to the risk or help to eliminate

20  the risk?

21          MR. ABRAMS:  So Your Honor, part of this is since

22  2017, I have been hearing from everybody, now is not the time.

23  Prior to bankruptcy, I was pointed to bankruptcy.  This is

24  about restructuring.  This is about putting the company in a

25  better position.  In Judge Alsup's court, his hands are very

PG&E Corporation and Pacific Gas and Electric Company

1    tied.  He cannot extend the probationary period for PG&E.

2              THE COURT:  Right.

3              MR. ABRAMS:  He can't do that.

4              THE COURT:  Nor can I.

5              MR. ABRAMS:  So unfortunately, part of this is it is

6    unfortunate that it lands on this Court, but it does.  It goes

7    to the art of feasibility.

8              THE COURT:  But I get (indiscernible).  What I'm

9    trying to get you to tell me is how does it land on this Court?

10   I can't -- Judge Alsup has his authority and I have mine.  I

11   don't know how the pie in the bankruptcy process can mitigate

12   the concerns that you are focusing on.

13             MR. ABRAMS:  Yes, so --

14             THE COURT:  And that's what -- I'll try it

15   differently.  We do debtor-creditors here in the bankruptcy

16   court.  We don't do climate control.  We don't do lots of

17   things that in a perfect world we'd love to do, but it's not

18   within the structure or the context of the bankruptcy laws.

19             MR. ABRAMS:  Yes, so Your Honor, I did do some

20   research on feasibility and what it means and what the

21   threshold questions are, and this just isn't feasible.  And so

22   getting around that, I think, again, kicks the can down the

23   road and we've got no more road left.

24             At some point we have to start saying that the

25   interests of short-term investors are not important, more

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    important, than the overall health of the company and not more

2    important than the people living around the wires.  At some

3    point we have to say that, and again, what the debtors have put

4    forward have pushed that out and it's not right.  What they've

5    done, again, Your Honor, is they've thrown money at a problem

6    which I believe is doomed to fail.

7         I would like to move to my second part of my argument,

8    which is the Plan does not comply with state law.  It does not

9    set PG&E on sound legal footing.  My earlier appearance before

10   Your Honor, you told me that it wasn't the U.S. Bankruptcy

11   Court to be -- that the U.S. Bankruptcy Court had to follow AB

12   1054 and was required to follow state law.  So why is it, Your

13   Honor, that laws that the debtor wants us to follow, which is

14   that June 30th date, bankruptcy court has got to follow?

15        However, the laws that they continue to break, the

16   state laws that they continue to break, we just don't pay

17   attention to.  I don't get that.  We have to connect those

18   dots.  The Court has to ensure that PG&E adheres to state law.

19   They can't pick and choose which laws they want the Court to

20   pay attention to.

21        Public Resource Code 4292 in Section 4293 requires

22   them to maintain ten feet of clearance around their lines.

23   Does this Plan of reorganization remedy that so that they're

24   abiding to state law?  No.  They continually say they are

25   incapable.  They don't have the resources.  They're not

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    reorganized sufficiently to do that.  We're just going to let

2    that pass but allow them to hold this 6-30 deadline over our

3    heads?

4            In 2019, they had the responsibility under that law to

5    ensure that clearance.  They did one percent.  Two thousand

6    four hundred circuit miles out of a targeted 25,200 circuit

7    miles, and they had the goal of calling that substantial

8    compliance.  It's not substantial compliance.  It's against the

9    law.  Again, Your Honor, we cannot pick and choose the things

10   that the debtor wants us to pay attention to.

11           PG&E has demonstrated, sorry, an overall propensity to

12   conduct themselves in an illegal way.  Judge Alsup has been

13   riled up by that.  Victims are riled up by that.  How dare

14   they, substantial compliance?  If I was pulled over for a

15   speeding ticket and I said well, I ran five stoplights, but I

16   was obeying the speed limit, so I was substantially complying,

17   that wouldn't pass there.  And it shouldn't pass for PG&E.

18           So Your Honor, based on the fact that they have not

19   demonstrated -- and the burden of proof is on them -- that they

20   are prepared to deal with the wildfire risks and that they are

21   legally incompliant with all state laws, this Plan should not

22   be approved.  I'm passionate about these issues.

23           Now I'll turn to the violations associated with

24   1129(a)(3); 1129(a)(3) states that the Plan means to have been

25   proposed in good faith and not by any means forbidden by law.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Your Honor, this is a very sticky subject for me to talk about

2    as an individual, but I feel forced to because other parties

3    have not brought these issues up.

4         I have tried, and will continue to try, to just stick

5    to the facts regarding who did what and who said what, and

6    largely to protect myself, Your Honor. I'm just going to state

7    the facts, and I'll leave it to Your Honor to decide if that's

8    good faith or if it's bad faith.

9         As I've stated, PG&E has thrown their weight around in

10   influence to infect at every turn this proceeding and its

11   outcomes. They are a big player in Northern California.

12   They're a big player, period. They understand that. They

13   understand that individuals like me are pawns on their

14   chessboard, as was stated earlier in this proceeding by another

15   attorney -- or a attorney. I'm not one.

16        Given this, I'm going to draw conclusions for the

17   Court. Again, I am going to state facts. The International

18   Brotherhood of Electrical Workers Local 1245 filed a complaint

19   with the Fair Political Practices Commission, outlining shadow

20   lobbying in violation of the lobby laws. This was an

21   organization hired by TCC. I'll leave it there. Your Honor,

22   you can decide whether that was good faith or bad faith, but I

23   would point you to the article in the Sacramento Bee, on May

24   3rd, entitled "Union Lawyers Spar Over Wildfire Shadow Lobbying

25   at California Capitol."

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      I was at the California Capitol engaged in trying to

2    reform AB 1054, so I have personal knowledge of this

3    information, but I am not going to speak to it because I have

4    been personally attacked by many attorneys when bringing these

5    issues to the Court.  It's unfortunate.

6      Your Honor, I pointed to, many times, and was told

7    that now is not the time to talk about how the TCC RSA leads to

8    an infeasible direction, undermines due process and keeps

9    lawyers from representing their views to clients and others.

10   However, for this hearing, Mr. Bloom, counsel for the TCC,

11   filed a declaration --

12             THE COURT:  I'm sorry, what person?

13             MR. ABRAMS:  Mr. Bloom, Your Honor.

14             THE COURT:  (Indiscernible)?

15             MR. ABRAMS:  Yes, Mr. Bloom.  He's an attorney for TCC

16   counsel at Baker, and stated in his declaration, "I intended to

17   cross-examine Mr. Wells on these subjects, but the debtors took

18   the position that the existence of the RSA precluded the TCC

19   for cross-examining debtors' witnesses before the CPUC."

20             Again, I was told over and over again "Will, you're

21   making things up.  Your read of the RSA is wrong."  But here in

22   the end, Mr. Bloom acknowledges that it prevented them, and the

23   debtors prevented them, through this RSA.  Was that RSA put

24   forward in good faith or bad faith?  Again, I will leave that

25   to Your Honor to decide.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    I stood there at those hearings cross-examining many

2    PG&E witnesses, trying to advance as best as I could as a

3    nonattorney the interests of victims, while the TCC sat there.

4    Again, fact.  It is also a fact that Skikos Law put out a

5    letter on April 23rd that was conveniently posted by Watts

6    Guerrera (sic), which stated "Unfortunately, the hedge funds

7    have hijacked these bankruptcy proceedings."

8    Does that raise flags?  Did we call for a disclosure

9    of conflicts in connection with all of the other matters, which

10   I have previously brought before this Court?  Is hijacking

11   generally a good faith thing or a bad faith activity?  Again, I

12   will leave it to the Court to decide.

13   There was a supplemental disclosure that was requested

14   by the TCC, urging victims to hold their vote because the

15   registration rights agreement and the trust agreement had not

16   been finished, and they knew that it would provide them with a

17   very difficult negotiating position.  The Court allowed them to

18   send that letter.  They argued that it was critically

19   important.  Did they send it?  No.  Are those good faith

20   actions or bad faith actions?  Again, I will leave it to the

21   Court to decide.  Those are the facts.

22   THE COURT:  Okay, we're almost near the end, so

23   just --

24   MR. ABRAMS:  And I'm almost near the end, too.  I've

25   got probably about five more minutes, Your Honor.

(972) 985-2252 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  That's fine.  You can take it.

2    MR. ABRAMS:  Thank you.  I won't go back to all the

3 voting irregularities that have been discussed before.

4    THE COURT:  No, do not do that.

5    MR. ABRAMS:  I will not, Your Honor, and I appreciate

6 that the Court has delved into those issues and it was raised

7 before, but I would raise this question, Your Honor, given all

8 of those conflicts, again, disclosed conflicts.  Fine,

9 disclosed conflicts.  But given all the irregularities -- and

10 there's been pointed to how this analogizes to other voting

11 processes -- if Mr. Barr, the Attorney General, resigned from

12 his post as Attorney General and decided to take on the

13 administration of the 2020 presidential elections, would people

14 feel that that was an impartial body ensuring the elections?

15    Again, without the other things, fine.  Without the

16 other things that have been brought to this Court, fine.  But

17 the conflicts were stated.  Would people feel comfortable with

18 that?  I would argue absolutely not, Your Honor.  I'm not

19 questioning motives.  I'm not questioning people's personal

20 issues.  I hope everyone makes a lot of money.  I hope everyone

21 does well.  I wish no ill will to anyone, but it has to raise

22 questions.

23    Here's what I expect to happen if this plan is

24 confirmed.  And this is my closing, Your Honor.  My

25 expectation, as it has been described to me, is that the hedge

PG&E Corporation and Pacific Gas and Electric Company

1    funds and large investors who have all this power, and have

2    been negotiating with everyone across this proceeding, will

3    exit the stock. They will count on the fact that victims have

4    to hold their 21 percent shares. They will sell, as this

5    proceeding has been designed, others to purchase so they can

6    move out.

7         The fantasy of attracting traditional utility

8    investors will not be realized. PG&E is not reorganized. We

9    will face more fires this summer. We will face power shut

10   offs. The debtors will go to the CPUC, saying we need to raise

11   rates because we haven't been able to raise the funds we need,

12   and oh, those poor victims who hold the stock. You've got to

13   raise rates for them.

14        California, that is already struggling under the

15   weight of COVID and under huge financial strains, will then be

16   forced to take action and restructure. Your Honor, I do not

17   agree that waiting to those eventualities this summer to have

18   real restructuring is a plan for a better, more pragmatic

19   solution when fires are raging.

20        When these things happen -- and again, Your Honor, you

21   can say well, fires happen, but we have to look, and investors

22   look, and measure risks. And I am looking at the measured

23   risks from experts and see that this wildfire season is going

24   to be hugely problematic, even under the best circumstances.

25        PG&E has been and will continue to operate in a way to

PG&E Corporation and Pacific Gas and Electric Company

1    avoid the law to ensure that their short-term investors get

2    paid out.  That's how they are positioned, and unless this

3    Court forces them to restructure differently, that's how they

4    will continue.  And it will be to everyone else's detriment,

5    other than those short-term investors.

6              THE COURT:  Okay.

7              MR. ABRAMS:  Thank you, Your Honor.  I'll stop.

8              THE COURT:  I appreciate your passion and your energy

9    and your expression of your views.  And I thank you for

10   taking -- for doing that again today, and for now I'm going to

11   excuse you from the room.  Not personal, but to keep the ball

12   moving.  Thank you.  Appreciate it and good day.

13             All right, Ms. Parada, let's bring in Ms. Wallace,

14   please.

15             Good afternoon, Ms. Wallace.  I can see you, but you

16   need to unmute your microphone and -- unmute.  There you go.

17   Can you hear me?

18             MS. MARY WALLACE:  I can hear you, Judge.  Thank you.

19             THE COURT:  Okay, good afternoon.  You have five

20   minutes.  I'd like to hear from you, please.

21             MS. WALLACE:  Okay, my name is Mary Wallace, and first

22   I'd -- let me state I want to reserve all my rights under the

23   law because that might be important.  I might forget.  Also,

24   I'd like to read my questions and ask that any objections be

25   saved to the last so I don't get confused, lose my place, and

PG&E Corporation and Pacific Gas and Electric Company

1      I'm afforded my full five minutes.  I'd also like to reserve

2      the right to respond to the testimony this morning about Ms.

3      Pullo and the voting process, and I'll reserve that for later.

4              THE COURT:  Well, wait.  I'm going to interrupt you,

5      not to cut into your time.  Under the procedures, you have five

6      minutes to make the argument.  You're not -- if you can -- what

7      you reserve won't be honored again.  This is your time to make

8      your argument for or against confirmation.  And if you want to

9      use some of that time to go back and revisit Ms. Pullo and the

10     votes, that's your choice, but it won't focus me on the issue

11     of confirmation.  So now I'm going to not interrupt you.  I'm

12     going to give you five minutes.

13             MS. WALLACE:  I appreciate what you just said, Judge,

14     but I've also documented every single person's time today, and

15     probably 90 percent of everybody went over, but that's okay.

16             THE COURT:  And yours probably will, too.

17             MS. WALLACE:  I'm a survivor of PG&E's wildfires, and

18     I have several objections to the plan that you're considering

19     today.  I also represent myself.

20             Number one, my first objection is that the fire

21     claimants have never had an opportunity to look at the final

22     version of the proposed plan.  I think that it is very

23     important point.  In fact, I don't even know what the current

24     plan version says, so I'll have to make my remarks based upon

25     outdated information.

PG&E Corporation and Pacific Gas and Electric Company

1    Yesterday I received at my post office location a box

2    containing eleven documents.  No date was on the box.  I will

3    supplement my statement today with a declaration, a list of the

4    documents and supporting postal information when I received

5    those documents.  I'm not sure if these documents are final or

6    are still being amended.

7    My second objection relates to the lack of information

8    regarding how much of a discount fire claimants are being asked

9    to accept.  Without a determination of Judge Donato's of an

10   estimated aggregate amount of the damages, there's no way for

11   me to guess if I will be fully compensated for my loss.  The

12   TCC attorneys and debtor attorneys have apparently not given

13   Judge Donato the written estimate he asked for.  Without his

14   estimate, it's impossible for you to determine if this is a

15   fair and equitable result for the fire victims.

16   You are dependent upon assurances offered by attorneys

17   of the debtors and the TCC.  They have not offered any evidence

18   of how they reached the settlement amount of the 13.5 billion.

19   You and I deserve to see those calculations.  I personally

20   checked Judge Donato's calendar this morning, and up until the

21   end of the month, there is nothing scheduled for PG&E.

22   My third point is in reference to Exhibit B, docket

23   number 7399, 45 pages filed of the settlement agreement.

24   THE COURT:  Sorry, Ms. Wallace, which settlement

25   agreement?  Seven-three-nine-nine, but what is it?

PG&E Corporation and Pacific Gas and Electric Company

1          MS. WALLACE:  It's the state and federal settlement

2     agreement.

3          THE COURT:  Okay.

4          MS. WALLACE:  And this is possibly the most important,

5     as there's not a single word in the Plan or the trust agreement

6     that indicates when any remaining fire claimants will receive

7     their settlement dollars.  The only indication in the state

8     settlement agreement, the state agency settlement agreement, is

9     that those dollars will not be paid out in the near future.

10    The Plan submitted to voters simply said the payments would be

11    made over a period of years, not over a period of many years.

12         This is in regards to 2.2 Exhibit B, page 26 of 45.

13    The state agency settlement agreement, document number 7399,

14    grants CAL FIRE an allowed fire victim claim, not subject to

15    reduction, in the amount of 115.3 million, which is to be paid

16    solely from the fire victim trust.  The first seventy million

17    is to be paid from the first dollars of earned interest, ten

18    million paid for the period beginning on the effective date

19    December 31, 2021, then twenty million annually through

20    December 31, 2024.

21         If there are not enough funds to complete those

22    payments as scheduled, the privilege of the first dollars of

23    earned interest will continue until December 31st, 2025, or

24    until the seventy million has been paid.

25         The next paragraph is in reference to page 27 of 45,

PG&E Corporation and Pacific Gas and Electric Company

1   or page 8 of 27 of Exhibit B.  The remaining 45.3 million is to

2   be paid to CAL FIRE in annual installments from available

3   interest until CAL FIRE is paid in full, or the fire victim

4   trust is terminated.

5         The next is in regarding pages 28 of 25 (sic), or page

6   10 of 27, Exhibit BCI.  The CAL agency fire claims, have been

7   granted an allowed claim amount of eighty-nine million to be

8   paid from the first dollars of excess monetization.  Much like

9   the CAL FIRE terms, the first sixty million of the CAL Agency

10  claims are to be made over a series of years, ending in 2023.

11        Any shortage is to be made up in the year 2024, and

12  the remaining twenty-nine million is to be paid in annual

13  installments going forward, but only after CAL FIRE has been

14  paid in full.  The payments contained -- until CAL agency fire

15  claims are paid in full, or until the fire victim trust is

16  terminated.

17        Your Honor, this settlement agreement makes it very

18  clear that neither the debtors' attorneys nor the TCC attorneys

19  expect the Fire Victims Trust will be issuing timely payments

20  to the individuals like myself, who lost so much in these

21  fires.  It makes it clear that the sale of the stock and

22  distribution of cash will be going on for many years.  That is

23  not the impression that was given when the plan was submitted

24  to voters.  Time and again, voters were told that this was the

25  road to quick resolution and payment of their claims.  That was

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   apparently a lie.

2           The federal and state agencies in CAL FIRE were

3   originally simply members of the fire victims' pool of

4   claimants.  I would like to know the justification for giving

5   them separate preferential treatment.  Their treatment is

6   preferential because they know the dollar amount of their

7   allowed claims and they have a schedule of when they will

8   receive payments.  The remaining fire victims do not have

9   either of those very valuable items.

10          I will conclude by asking some questions, which I

11  don't expect answers, and make a final statement.  Can you tell

12  me how much my claim is worth?  Can you tell me how much of a

13  discount I would be forced to accept?  Can you tell me when I

14  will receive my payment, and what future payment schedules will

15  be?

16          These questions have been answered for almost everyone

17  else.  The debtors' attorneys were very careful yesterday.

18  They promised prompt payment to the Fire Victims Trust, but

19  that doesn't absolute -- that does nothing for the victim who

20  is still living in a trailer because she can't afford to

21  rebuild without her settlement money.

22          The debtors' attorneys may say that answering those

23  questions is not up to them, but we do not know yet, know the

24  terms of the registration rights agreement.  So to some degree,

25  it is up to them.  More fires will come.  Rain and snow will

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  come.  PG&E will survive and pay dividends again.  And

2  somewhere out there there's a fire victim family will -- who

3  will still be waiting, crowded into a trailer, or fifth wheel,

4  trying to patch leaks and hoping the heater will last the

5  winter.  PG&E executives will sleep well and enjoy their

6  bonuses because, ultimately, it's not their decision, it's

7  yours.  Will you sleep well?

8       This plan is fatally flawed because it turns fire

9  survivors into fire victims again.  I respectfully ask that you

10  deny the plan confirmation and force PG&E to deal with us in a

11  fair and equitable manner.  And I say thank you for your time,

12  and if you have any suggestions, or any -- I do have some

13  suggestions that might help you to --

14       THE COURT:  No, I don't need any more suggestions.  I

15  appreciate your comments and your thoughts.  I'm going to make

16  a brief statement for you and ask you to pay attention later,

17  probably tomorrow when Mr. Julian for the TCC has his time to

18  argue.  He might very well be able to answer in more specific

19  way, some of these broader questions.  But I don't want to do

20  that now, and I just want to make this statement.

21       I think you have possibly misunderstood something, and

22  as you can tell, there are tens of thousands of documents in

23  this case, and I can't remember them all, and I don't expect

24  you to remember them all.  But I'm reasonably certain what I

25  recall is the settlement that was with the state agencies was a

(979) 703-3500 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    tremendous benefit for the victims because it took them out of

2    the so-called 13.5 billion dollar pot and it relegates them to

3    the formulas that you were reading, and are just simply

4    interest accruals as the interest comes off of that big fund.

5    And the trustee, under the trust agreement, has the

6    responsibility, he and the claims' administrator, of getting

7    individual claims resolved and getting the money coming out of

8    the thirteen-and-half billion.  Now, whether it's money or

9    stock, we put that aside.  That's a different question.

10        So I think you're misunderstanding the concept of

11    what's being paid to those agencies.  They are -- you sound

12    like they have -- in your mind, you think they have priority,

13    and I think they're at the back of the bus, frankly, because

14    they've agreed to a fixed amount and it's depend upon something

15    that's down the road.

16        Now, to go back to your own question, I don't know

17    what your personal claim is, and it's not my responsibility.

18    Not that I don't care about you, but if your claim is allowed

19    in a manner that Ms. Yanni and the claims' administrator agrees

20    there's a proper amount, then there's no further discussion

21    about how much you're owed.

22        The question is how much you're going to get paid, and

23    that's obviously a very critical question.  But the

24    expectation, the expectation of the plan and of AB 1054 and the

25    negotiated resolution of the fund, of the settlement that the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    TCC and the debtors made, is to attempt to get survivors, such

2    as you, the proper claims to be paid in full.  And if you

3    choose not to get stock, choose not to take stock, you may have

4    the option to leave the stock and not take it.  I'll leave it

5    at that.  I urge you to listen to what Mr. Julian has to say

6    later.  As I say, maybe tomorrow.  He may have further answers

7    to the more specific questions that I described.

8            So with that, I'm going to excuse you and ask that you

9    be placed back in the audience.

10           MS. WALLACE:  May I make one last statement?

11           THE COURT:  Only a statement.

12           MS. WALLACE:  Okay.  About what you just said, Judge.

13   It's not an issue of the agreement between the state and

14   federal agencies.  It's just that they have an agreement.

15           THE COURT:  Well, they have an agreement, but you

16   know, you are one of 80,000 people who are in a pool of

17   claimants for a very large sum of money, but maybe not enough,

18   as it should be, if at the end of the day you're not paid in

19   full.  But there's no way that any individual person can

20   suddenly today know exactly what he or she is going to get, but

21   that's what the trustee and the trustee's process, the whole

22   process is designed to work.

23           I'm going to leave it at that.  I don't want to take

24   up the time as the other parties who are still going to be

25   presenting.  Thank you for your time and I appreciate your

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  comments.

2          MS. WALLACE:  All right.  We'll reserve rights to talk

3  about the statement earlier today about --

4          THE COURT:  I'm not --

5          MS. WALLACE:  -- proof that --

6          THE COURT:  You can reserve everything you want; I'm

7  not allocating anymore time for this for the trial.  My job is

8  to get this argument and these proceedings over so I can make a

9  ruling, and if I make a ruling consistent with what you or Mr.

10  Abrams want, then I won't have much else to do because we'll

11  have the case back in who knows where.

12          If I make a ruling that says the plan should be

13  confirmed, then what happens, happens.  Thank you again for

14  your time.  It's time to ask you to go back into the audience

15  and can have my courtroom staff bring up Mr. Scarpulla and Mr.

16  Hallisey.  Thank you, Ms. Wallace.

17          Mr. Scarpulla, tilt your laptop.  I can only see the

18  top of your head.  There you go.

19          MR. SCARPULLA:  Okay.  Is that better, Your Honor?

20          THE COURT:  Yeah.  You know, you can go just casual

21  today if you want.

22          MR. SCARPULLA:  No, I'm fine, Your Honor.

23          THE COURT:  I got Mr. Karotkin to put a necktie on,

24  and Mr. Hallisey, but if you want to dress down, that's fine.

25          MR. SCARPULLA:  I'm okay.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Now, who's going to go first?  Mr. --

2    MR. SCARPULLA:  I am, Your Honor.

3    THE COURT:  All right.  And the two of you have twenty

4    minutes.

5    MR. SCARPULLA:  I hope I don't even take the first

6    ten, but I just wanted to say that --

7    THE CLERK:  Excuse me, Mr. Scarpulla, please state

8    your appearance for the record.

9    THE COURT:  And I've been busted by my courtroom

10   deputy.  I need to remind all of you to state your name when

11   you make your appearance.  So, Mr. Scarpulla, say it again.

12   MR. SCARPULLA:  Yes.  This is Francis Scarpulla,

13   appearing on behalf of certain fire victims.  Your Honor, I do

14   not intend to repeat anything that we already put in our

15   objections filed on May 15th, being document number 7316.

16   And I do have a quick question.  Last night at about

17   10 o'clock, I got a couple of hundred pages of a new amended

18   plan; said that that was something that we were going to take

19   up for discussion at the hearing to consider confirmation.  Is

20   that going to happen today?

21   THE COURT:  Well, our -- our --

22   MR. SCARPULLA:  You can look at this.

23   THE COURT:  In a document as complicated as a plan,

24   there are so many moving parts, and what -- or we decided, and

25   I discussed with Mr. Karotkin earlier today is that some of the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  players representing not fire victims, but other parties, are

2  reviewing some of those changes and possibly coming to a

3  resolution.  So we're going to take up, as necessary, things

4  that are still up for dispute.  But when the debtors and the

5  adversaries say they've got an agreement, we generally trust

6  them and leave it at that.  So I can't answer your question

7  exactly.

8  Your point, I think, has to be, and you and Mr.

9  Hallisey need to tell me why, since I assume you'll want me to

10 not to confirm the plan, you've got to tell me why I shouldn't

11 and --

12 MR. SCARPULLA:  Oh, I do not, not want you to confirm

13 it.

14 THE COURT:  Okay.  Sorry, then go ahead.

15 MR. SCARPULLA:  I would like you to consider some

16 minor tweaks to the plan --

17 THE COURT:  Okay.

18 MR. SCARPULLA:  -- which I think would be beneficial

19 for the fire victims.  Now, it has been stated to Your Honor

20 that we represent a handful of claimants, and we do, we have

21 formal retainer agreements with about twenty-five or thirty of

22 the individual fire victims.

23 But according to Ms. Pullo's declaration, which is

24 docket number 7507, there were approximately 6,109 fire victims

25 who voted no on the plan, and that is not an insignificant

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   number of people.  And so when -- my statements here are not

2   only on behalf of May 25, people with which we have formal --

3           THE COURT:  Excuse me, I have to interrupt you.

4   Somebody, maybe it's you, somebody is tapping or pounding on

5   something.  I'm getting an awful lot of -- I'm getting a lot of

6   noise like that, so --

7           MR. SCARPULLA:  I'm sorry, Your Honor, I --

8           THE COURT:  -- it's kind of --

9           MR. SCARPULLA:  -- I'm not tapping on anything.  I'm

10  sorry.

11          THE COURT:  Okay.  Go ahead.  I'm sorry.

12          MR. SCARPULLA:  In this case, Your Honor, the

13  shareholders are retaining ownership of the debtor, despite the

14  substantial likelihood that the fire victims will not get paid

15  in full.  And so the debtors have filed -- have failed to

16  establish that the plan is fair and equitable because the

17  shareholders are getting a hundred percent of their junior

18  interest, where the fire victims are getting paid less than one

19  hundred percent of their damages.

20          THE COURT:  Mr. Scarpulla, they voted it up.  They've

21  accepted the treatment.

22          MR. SCARPULLA:  I understand that, Your Honor.

23          THE COURT:  So I can't do anything about that.

24          MR. SCARPULLA:  I understand.  So I'm not talking --

25  I'm only talking about the people who didn't accept, and how do

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  we -- how is -- how do we accommodate them?  As I understand

2  it, 1129(a)(7) of the code requires that nonaccepting creditors

3  receive value as of the effective date that is not less than

4  the amount that he or she would receive if the debtor were

5  liquidated under a Chapter 7.

6          Now, we do not suggest that the debtor be liquidated,

7  but there must be some way that the Court can calculate how

8  much is the liquidation value.  And not selling piecemeal, but

9  this company would be sold as a going concern.  And it is that

10  amount that then you can calculate whether the people who are

11  opposed to it are getting their fair share.  That's all we

12  suggest, Your Honor.

13          And of course, as we pointed out to Judge Donato, and

14  unfortunately, we don't have Judge Donato's estimate yet, but

15  as we pointed out to Judge Donato, there is in excess of 13.5

16  billion in real damages to these fire victims.  It is to about

17  twenty to twenty-two billion, and we gave him that evidence.

18          There was no evidence contrary to what we gave him.

19  It was -- we gave him evidence as to the real property losses,

20  the cost of rebuilding, the geotechnical issues of damages,

21  personal property losses, relocation expenses, business losses,

22  agricultural losses, forest and timber losses, other vegetation

23  and tree losses, erosion related losses, infrastructure,

24  personal injury, wrongful death, emotional distress, wildfire

25  smoke inhalation, post-traumatic stress disorder, and the

operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corporation and Pacific Gas and Electric Company

1     availability of punitive damages now that PG&E has been charged

2     as a felon for the -- and pleaded guilty for the --

3              THE COURT:  I think you're pounding again.

4              MR. SCARPULLA:  I'm sorry?

5              THE COURT:  Somebody's pounding on the screen on

6     something.  Somebody's banging and making a noise.

7              MR. SCARPULLA:  I don't know.

8              THE COURT:  If you're not doing it --

9              MR. SCARPULLA:  I don't have anything in my hand, so

10    I'm not.

11             THE COURT:  Somebody is.  It's not the computer.

12             MR. SCARPULLA:  Okay.

13             THE COURT:  But go ahead.

14             MR. SCARPULLA:  So there is basically no evidence in

15    the record from the debtors to establish any of the estimate of

16    damages included in the fire victim loss.  So --

17             THE COURT:  Well, but it --

18             MR. SCARPULLA:  -- the fire victims --

19             THE COURT:  Mr. Scarpulla, but if Judge Donato accepts

20    that argument and can't make the finding, I don't know what

21    happens, but I don't -- that's not my job.

22             MR. SCARPULLA:  I --

23             THE COURT:  I have to take that as a given.  I

24    didn't -- I wasn't given the authority to do everything.

25    That's why --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. SCARPULLA:  No, I understand, Your Honor.

2    THE COURT:  He ruled.

3    MR. SCARPULLA:  I understand, Your Honor.

4    THE COURT:  Okay.

5    MR. SCARPULLA:  And so what we would respectfully

6  suggest is that Your Honor consider including any confirmation.

7  The three items that are listed on the TCC's objections, and

8  that is document 7306-2, filed on May 15th, for Your Honor, and

9  it is the proposed resolution number 3, the proposed resolution

10  number 5, and in part, the proposed resolution number 4, but

11  Your Honor has already signed a stipulation permitting Mr.

12  Meyer to arbitrate the normalized net income, but we

13  respectfully suggest that Your Honor should then reserve

14  jurisdiction, order a future true-up proceeding by Your Honor

15  on that -- on the resolution of that issue.

16    Additionally, Your Honor, we would also request that

17  as part of the confirmation order, Your Honor require that the

18  fire -- that if the fire victims' trust proves to be

19  underfunded, as a result of the inadequate value of the stock,

20  then the debtors would be required to contribute additional

21  funding of application of the victims' trust trustee.

22    And with that, Your Honor, I want to thank Your Honor.

23  I know it's been a horrible, horrible ordeal for all of us to

24  have to deal with a pandemic and the problems raised in this

25  bankruptcy proceeding, and I want --

(973)406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  I'm sorry, I just --

2    MR. SCARPULLA:  -- and Your Honor's staff.

3    THE COURT:  Thank you.  I appreciate it.  I appreciate

4    your comments.  Same to you.

5    Mr. Hallisey.

6    MR. HALLISEY:  Thank you, Your Honor. Can you hear me?

7    THE COURT:  Yes, sir.

8    MR. HALLISEY:  Here we are in June of 2020, and what

9    problems does a new CEO for PG&E face when he comes in here

10   sometime, I take it, during the summer?  You've had fires in

11   the last four years, including potential liability for the

12   Kincade fire.  You have the COVID-19 epidemic.  You've had

13   recession.  There were twenty-one million claims filed for

14   unemployment to announce this morning.  You have civil unrest.

15   The demand for electricity has declined precipitously, your

16   main product.

17   High rates for electricity prevents a lot of rate

18   increases in the future for need -- for necessary capital

19   expenditures.  The state is a difficult state in which to

20   operate.  It's very cumbersome.  The CPUC is very difficult to

21   negotiate.  So all of these problems he's facing.  The

22   insurance fund may solve some of those problems, but if they're

23   grossly negligent, they will not be -- the fund will not be

24   liable.

25   They're faced with the prospect of spending eight

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    billion a year over the next five years on capital

2    expenditures.  When the company started this process in late

3    2018, they had approximately twenty-two billion dollars in

4    unsecured debt.  Now, they are going to have close to forty

5    billion dollars in secured debt, including, I think, another

6    billion, 250 million that the holding company just took on in

7    the last couple, two or three weeks in the plan supplement

8    number 2 filed in late May for a total of -- in the holding

9    company, of approximately six billion; much of it will be,

10   quote, "high yield bonds."  In other words, junk bonds.

11        So the CEO has some extremely difficult challenges

12   ahead of him.  And all of this is to protect a group of hedge

13   funds that own the stock in the company.  And they're acting

14   completely in their own self-interest.  And I'm not here to

15   blame anyone in this bankruptcy proceeding.  The plaintiffs'

16   lawyers, Mr. Pitre, Mr. Kelly, Mr. Baghdadi, and others, have

17   worked dam hard on this, including Mr. Campora and Mr. Watts.

18        They have a tremendous amount of money on the table

19   that they have funded this litigation and the victims owe them

20   compensation and they owe them a debt of thanks for negotiating

21   this deal.

22        But let us remember, as Mr. Scarpulla pointed out,

23   30,000 people didn't vote, and 6,000 voted no.  And let's not

24   fall victim to a tier any of the majority.  And we've seen, for

25   example, in the south, ever since Ulysses Grant left office to

PG&E Corporation and Pacific Gas and Electric Company

1    the Civil Rights Act, there's been one law after another passed

2    by the majority that was manifestly unfair.

3          We're taking a discount, I think, by most measures.

4    SEC filings, PG&E said the liability could exceed thirty

5    billion dollars.  That's a couple of filings in the past year.

6    But let's -- I'm not trying -- I agree with Mr. Scarpulla.  At

7    this late date, we can't disturb the thirteen-and-a-half

8    billion, but I think we may be able to rearrange the boxes

9    slightly.

10         Now, it is a little bit deceiving by the subrogation

11   folks to say that they have sixteen of seventeen, eighteen

12   billion dollars in claims, but much of those, I think, are

13   reserves.  And more importantly, seven billion of those claims

14   by two particular funds that have been assigned claims, Baupost

15   and Attestor, which is a London based hedge fund, holds seven

16   billion.  They bought these at a substantial discount at

17   pennies on the dollar.  And that there should be some

18   adjustment in fairness with the insurance companies and the

19   subrogation holders.

20         I would suggest that their total claims, if they're

21   reduced by one-third, and they take stock instead, that would

22   provide more than three billion dollars more in value to their

23   shareholders -- pardon me, to the victims' trust.  So that

24   would leave them with three billion in stock and three billion

25   in cash.  There's also a possibility of giving them some

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   priority by way of a preferred stock, if that could be worked

2   out, what have you, in -- for tax reasons.

3           And what we're going to have here is these hedge

4   funds, you say, well, what's wrong with them all selling?  It's

5   going to put a lot of downward pressure on the price of the

6   stock, and the reason there's a fight about the registration

7   rights agreement, they want -- the victims would like to be

8   able to sell at the same time the shareholders will be able to

9   sell, but they want to restrict that and let them get out of

10  the stock.  While they putting down would pressure on the stock

11  with no dividends for the next two or three years.  And it's

12  not a very good situation for the shareholders.

13          So -- and other risk in this house of cards that

14  the -- that has been created to preserve the equity fellows is,

15  you know, you have the NOL; I might also add a -- Governor

16  Newsom today proposed that the loss carry forward, at least for

17  state tax purposes is going to be temporarily suspended, and

18  both houses of the legislature agreed on that.  So that's

19  another uncertainty that is facing us.

20          And I think Mr. Tosdel mentioned, and I took note of

21  it, too, at the very beginning of this case, you said your

22  first priority is the victims in this case.  And the way the

23  deal was structured at the present time, it's manifestly unfair

24  to this group, and I hope that you could find an adjustment

25  mechanism to convince the subrogation folks to take a third

(972) 406-5297 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    less in stock and give the victims three billion more.  I would

2    prefer all cash.  There should be more equity in this deal,

3    instead of less debt, but that, we'll reserve for another day.

4    And thank you, Your Honor.

5         THE COURT:  I muted myself because there was a dog

6    barking outside, so you didn't get to hear the dog, but you

7    almost didn't get to hear me.  Thank you.  Thank you, both, for

8    your comments, and I'm going to excuse you from the panel now

9    and take the next witnesses.  Have a good evening.  Bye.

10        All right.  Ms. Parada, by my list, we have Ms.

11   Cabraser, Mr. Pitre, Mr. Campora, Mr. Kelly, and Mr. Skikos;

12   all of them have ten minutes.  I don't know how they're going

13   to share, but presumably they're going to tell me how they're

14   sharing.

15        Ms. Parada, can you hear me?

16        MS. PARADA:  Yes, Your Honor.  I'm moving the parties

17   in now.  One moment.

18        THE COURT:  I was afraid you had muted me, or I had

19   muted you.  So do you have all of them coming in?

20        MS. PARADA:  Would you like me to join them all?

21        THE COURT:  Well, the ones who asked to come in.  I

22   mean, I have all five of them on the list and they can all come

23   in, but they're -- they've agreed to ten minutes, so they can

24   share it as they wish.

25        MS. PARADA:  I do not see Ms. Cabraser on the list.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      THE COURT:  Okay.  I see Mr. Pitre.

2      MR. PITRE:  Good afternoon, Your Honor.

3      THE COURT:  Good afternoon, Mr. Pitre.

4      MR. PITRE:  Good afternoon.

5      THE COURT:  Are you going to speak for everyone?  Or

6  are your colleagues going to join us?

7      MR. PITRE:  Your Honor, if you may, I was going to

8  split ten minutes, five minutes with Mr. Kelly and myself.  Mr.

9  Kelly got called away unexpectedly.  I would ask that his five

10  minutes be reserved for tomorrow.  So I apologize that

11  everybody wasn't here today, but I have five minutes to

12  address.

13      THE COURT:  Okay.  Mr. Skikos, you need to unmute

14  yourself.  Mr. Skikos, can you hear me?

15      MR. SKIKOS:  Your Honor, I'm tomorrow.  I'm scheduled

16  after Adventist.

17      THE COURT:  Now, we've been moving all these schedules

18  all around.  This is the list that Mr. Karotkin gave me today.

19      MR. SKIKOS:  No, I'm -- we have ten minutes today and

20  then ten minutes tomorrow.

21      THE COURT:  Well --

22      MR. SKIKOS:  Ten minutes on reserve for after

23  Adventist.

24      THE COURT:  You know, I can't promise either of you

25  what we're going to do.  It's a very fluid situation, so let me

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   just ask if Mr. Campora is in the panel, or in the audience

2   today and wants to be heard.

3           MR. PITRE:  Mr. Campora will not be speaking.

4           THE COURT:  Okay.  Mr. Pitre, I --

5           MR. PITRE:  Just me for five minutes.

6           THE COURT:  Go ahead, five minutes.

7           MR. PITRE:  Thank you, Your Honor.

8           THE COURT:  Mr. Pitre, but seriously, I do want to say

9   this, I know that you and your colleagues are all in favor of

10  the plan, and I detest the notion of telling any of you you

11  can't speak.  I am just overloaded with trying to accommodate

12  all of these issues.  I have a homework assignment when the

13  matter is submitted.  I have to make a ruling.  So I don't mean

14  to offend anyone, but I may not let anybody else argue on the

15  same point tomorrow.

16          And, Mr. Skikos, you can hear me, and if you want to

17  be heard today for sure, I'll let you in today.

18          But for now, Mr. Pitre, I'll be happy to hear from

19  you, please.

20          THE CLERK:  Mr. Pitre, please state your appearance.

21          MR. PITRE:  Thank you.  Good afternoon, Your Honor.

22  Frank Pitre appearing on behalf of fire victims.  Your Honor, I

23  want to join the course of appreciation for this court and its

24  staff.  How you are able, with a small staff, to get through

25  the mountains of pleadings and briefs that have been filed

PG&E Corporation and Pacific Gas and Electric Company

1    since this case was first initiated and issue decisions

2    efficiently to get us to this point is truly remarkable.  You

3    are to be commended.

4            THE COURT:  Thank you, sir.

5            MR. PITRE:  What I'd like to address today is the

6    issue of reservation rights.  I am disappointed that we are

7    here today and still no agreement on registration rights.  I

8    think I share the concern of Mr. Hallisey, as well as many

9    other fire victim lawyers, that an agreement that will have a

10   profound effect on how shares will be sold.  When they will be

11   sold has not yet been arrived at because it has a profound

12   effect on when these shares can be liquidated and how they'll

13   be liquidated so that we can ensure ourselves that the 6.75

14   billion in shares of stock will have the cash equivalent when

15   it comes to paying the claims.

16           So the first thing I'd like to point out is I don't

17   think you can jump to the conclusion that because eighty-eight

18   percent of people voted in favor of the plan, that therefore,

19   all the fire victims were willing to accept a risk that a

20   registration rights agreement would place them at a

21   disadvantage, that it would be one-sided in favor of the

22   backstop parties or others that would get registration rights.

23   You cannot make that conclusion.

24           I do believe that when I read the brief of the debtor,

25   and this is the docket 7528, page 59, lines 11 to 21, there's a

PG&E Corporation and Pacific Gas and Electric Company

1    suggestion that the cases that had been cited by the TCC

2    regarding parody in registration rights don't apply, and that

3    somehow or another there should be a difference in the

4    registration rights that are afforded to investors and

5    creditors versus, in this case, fire victims, and that somehow

6    justifies registration rights that are more favorable.

7              I think that any premium for the risks that are taken

8    by backstop parties, or the creditors, I should say, or the

9    investors who may be entitled to registration rights, those

10   premiums are already built in.  For the backstop parties,

11   they're built in by the fees that they will receive from taking

12   the risk of funding the plan, and some of those backstop

13   parties have profited from the fact that they've purchased

14   subrogation rights and are now going to make a profit once that

15   fund is liquidated.  So they've got their premium.  They've

16   been paid.

17             So at this point in time, everybody should be on par.

18   The backstop parties, or anybody else entitled to shareholder

19   rights, should be treated as if it was a level playing field,

20   and any restrictions on how much to sell and when to sell

21   should be the same.  There should be no difference.

22             THE COURT:  Mr. Pitre, aren't you making the pitch

23   that should -- that presumably is being made during the

24   mediation?  I mean, I don't know that I have any role to play.

25   I either will be presented an agreed rights agreement or the

PG&E Corporation and Pacific Gas and Electric Company

1    absence of a rights agreement, and if the former, I suspect my

2    job is easier.  If the latter, I think Mr. Karotkin, yesterday

3    argued that without a rights agreement, maybe I could confirm

4    the plan, but it wouldn't become effective, so if that's

5    effectively -- that's effectively meaning it wouldn't do any

6    good for anybody.  So I guess my point is I understand your

7    argument.  I don't know what I'm supposed to do about it.

8            MR. PITRE:  Well, the -- what I'd like to suggest is

9    what the Court can do about it is put a sentence in the order.

10   If we don't have an agreement by the close of business on

11   Friday, I would ask the Court to put in a sentence that if -- I

12   apologize, Your Honor.  To put in a sentence that says if

13   there's no agreement on registration rights by close of

14   business Friday, that the plan essentially be modified so that

15   any registration rights agreement --

16           THE COURT:  Fix whatever is causing the noise.  You're

17   the culprit, I guess.  What is that?

18           MR. PITRE:  Yeah, that's -- I wish I could yell, but I

19   can't.  That any registration rights agreement be the same for

20   any shareholder getting reservation rights.  I would put in

21   that sentence.  And I -- I -- and I say that the reason for

22   that is, as Mr. Karotkin pointed out yesterday, although the

23   plan is confirmable without a registration rights agreement,

24   it's not effective.

25           THE COURT:  Right.

PG&E Corporation and Pacific Gas and Electric Company

1      MR. PITRE:  An effective date delays payment to

2   victims.

3      THE COURT:  Well, it may, or it may not.  I mean, the

4   plan -- if I choose to confirm the plan, that will be

5   memorialized in an order and, you know, if I were to sign the

6   order tomorrow, that doesn't -- I don't think it would become

7   effective any earlier than June 30th, if not a later date.  I'm

8   not exactly sure.  And if I sign the order on June 10th, or

9   June 15th, or June 20th, I don't know if Mr. Karotkin addressed

10  that -- can address that later.

11      But my point is is that when I hear a bankruptcy

12  lawyer tell me that the plan won't become effective unless

13  something else happens, that means to me that for many

14  purposes, the confirmation order is kind of a dead issue.  I

15  mean, it's -- there may be some cases where you can have a

16  confirmed plan and no effective day, but I don't think it's of

17  any relevance here.

18      MR. PITRE:  Well, I think it does, Your Honor.

19  Funding the plan -- you can't put money into the victims' trust

20  until the plan has met all of the various requirements,

21  including it becoming effective.

22      THE COURT:  Correct.

23      MR. PITRE:  So every day that you delay the effective

24  date, is a delay for the victims to begin getting paid.  And I

25  want to say to the Court that one of the prime motivating

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    reasons that people voted, eighty-eight percent of them, in

2    support of this plan was the prospect of beginning to get paid

3    this year.  So if you delay the effective date and funding

4    because there's no registration rights agreement, you are

5    effectively delaying when it is that the trust fund from which

6    people are to be paid gets funded.

7            THE COURT:  Okay.  I understand that.  But again, I'll

8    put it back to you, what if I, tonight, signed an order

9    confirming the plan, but there's no rights agreement?  There

10   would be no effective date.  It's not something I can control.

11   And if I put in that order, this order doesn't mean anything

12   unless there's a rights agreement.  That still doesn't mean

13   there will be a rights agreement.

14           In other words, if the mediation will bring about an

15   effective -- an agreed rights agreement, then we've closed

16   the -- maybe the final link to having everything fall in place.

17   But I don't know what it means for you to ask me to say put it

18   in the order that there has to be one when I can't make two or

19   multiple parties come to an agreement.  The -- just to go

20   around in circles, but I'd love to fix this if I could, but I

21   don't know how I can do that.

22           MR. PITRE:  As a court of equity and one that is

23   looking at this plan and saying the only missing ingredient for

24   which there has been no discussion because, obviously, there's

25   a mediation privilege, I think that victims need to know.  I

PG&E Corporation and Pacific Gas and Electric Company

1    think we need to do everything we can to fund this plan as

2    quickly as possible, and if this Court has the power, which I

3    believe that it does, to insert one sentence to fix a hole that

4    so far people have not been able to do, I would encourage the

5    Court to do so.

6         THE COURT:  Okay.  Well, the other parties, without

7    revealing privileges or mediation matters, can -- will have an

8    opportunity to tell me whether that's something that they

9    endorse or oppose, and I'll leave that for another day.

10        Okay.

11        MR. PITRE:  Thank you, Your Honor.  I appreciate you

12   giving me the opportunity to make those comments.

13        THE COURT:  I've got to find out what that commotion

14   was, that strange noise you were making.

15        MR. KAROTKIN:  Your Honor?

16        THE COURT:  Yes, sir.  Mr. Karotkin.

17        MR. KAROTKIN:  Not to interrupt, but just to clarify

18   the record, I think Mr. -- I'm quite certain Mr. Pitre

19   misconstrued what I said about the registration rights

20   agreement, and I will be happy to clarify that all tomorrow,

21   and I'm sure that Mr. Julian will address it as well.  But for

22   the record, he did not accurately reflect what I said yesterday

23   with respect to the effective date or registration rights

24   agreement, and Your Honor has the authority under the plan to

25   determine what an appropriate registration rights agreements --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    there are actually words in the plan that address it.  There

2    are words in the RSA that address that, but we can get into

3    that tomorrow.  I think we have to continue to let the

4    mediation play out.

5            I also think it's important to clarify, Your Honor,

6    that you can enter a confirmation order, as I'm sure you know,

7    subject to the effective date taking place somewhat later on

8    the occurrence of the conditions to effectiveness.

9            THE COURT:  Sure.

10           MR. KAROTKIN:  And I think it's very important for you

11   to keep that in mind when you think about the registration

12   rights agreement, particularly because in order to comply with

13   AB 1054, the confirmation order must be entered before June

14   30th.

15           THE COURT:  No, I understand, and I had on my list of

16   things to talk to you about, the mechanics of that, because I

17   read 1054 in part a long time ago -- let's do this, you have

18   made a statement that I -- is consistent of my understanding.

19   The -- my belief is that I could sign an order confirming the

20   plan, but if the plan doesn't become effective, I don't know

21   what the consequence or the impact of that confirmation order

22   is under this circumstance.  I've been involved in thousands of

23   cases where, just as a boilerplate matter, the effective date

24   is ten days or two weeks, or something after that.  It's just a

25   running of time.  Those are easy ones.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1       Here, the rights agreement is obviously critical, and

2  Mr. Pitre's suggestion sounds good, but, A, it might throw a

3  wrench into the mediation, and secondly, it might be

4  unnecessary.  So let's just defer that for now and --

5       MR. KAROTKIN:  Can I make one other remark, Your

6  Honor --

7       THE COURT:  Sure.

8       MR. KAROTKIN:  -- about this?  But -- about the

9  scheduling that Mr. Skikos mentioned about him wanting to talk

10 tomorrow after -- I believe after Adventist.  And they did

11 raise that with us yesterday.  We didn't send a proposed

12 schedule for Friday, but Mr. Skikos did ask to have five

13 minutes tomorrow after Adventist in case there were still

14 issues open, not with respect to the matters that Mr. Pitre is

15 talking about, but with respect to the matters related to the

16 documentation of the fire victims' trust and the fire victims'

17 claim resolution procedures, and I had assured him that, to the

18 extent that we had control of that schedule, we would put him

19 on that schedule for five minutes tomorrow.

20      THE COURT:  Okay.  That's fine.  I appreciate you

21 clarifying that.  All I had was the printout from what Mr.

22 Lewis send us this morning consistent with my request, and so

23 I'm glad that you said that so Mr. Skikos won't feel unwanted.

24 He's wanted, but not today.

25      MR. KAROTKIN:  In fact --

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. SKIKOS:  I don't feel unwanted, Your Honor.  But I

2  want to say one quick thing.

3    THE COURT:  State your name for the record though, Mr.

4  Skikos.

5    MR. SKIKOS: Steve Skikos.  I will be very brief

6  tomorrow.  It is the scope of the discussion will be slightly

7  beyond Adventist.  Other than that, I'm only going to take

8  five.

9    THE COURT:  Okay.  All right.

10    Mr. Pitre, thank you.  We're going to excuse you from

11  the panel now.

12    And, Mr. Skikos, you, too.

13    We're going to bring in Mr. Singleton and Mr. Marshack

14  for five minutes.  And then after that, I intend to bring in

15  Ms. -- well, Ms. Pino -- I don't know -- is Ms. Pino alone, or

16  with her client?  I'm not sure of that, but that's who's next.

17    Mr. Marshack, you're back.

18    MR. MARSHACK:  I'm back, Your Honor.

19    THE COURT:  Is Mr. Singleton going to join you or not?

20    MR. MARSHACK:  No, I'm flying solo today.  He's stuck

21  in a state court proceeding right now.

22    THE COURT:  Okay.  Name for the record then.

23    MR. MARSHACK:  Thank you.  Thank you, Your Honor.

24  Richard Marshack, Marshack Hays on behalf of the Singleton Law

25  Firm, wildfire victims.  I will keep -- make this very short.

PG&E Corporation and Pacific Gas and Electric Company

1    We had five objections.  Four have been resolved.  One is

2    registration rights.  I think what's pretty clear is going to

3    happen with regard to registration rights is there's going to

4    be a process.  There's going to be a mediation.  There's going

5    to be a lot of give and take.

6         We have a terrific team, and Mr. Julian, we have

7    people like Mr. Pitre, Mr. Kelly, Mr. Baghdadi, Mr. Watts, Mr.

8    Singleton.  Everyone will get in a room; they'll do their best,

9    and this time next week, if there's not a resolution, I'm

10   pretty sure we're going to put it right squarely in front of

11   you.  So my guess is on registration rights, we ought to just

12   let you put that to the side for five or six days and then

13   we'll pick it up later if it's not resolved.

14        Now, the only thing I have is -- and I said I'd keep

15   it down to three minutes, you had asked yesterday whether we

16   really needed Judge Donato to rule in order to -- for you to

17   confirm the plan.  I made a suggestion a while back.  Once upon

18   a time, we really did need estimation proceedings because the

19   wildfire victims weren't getting along with the debtor, and the

20   debtor needed a means or a vehicle to get the plan

21   confirmation.

22        We no longer need an estimation proceeding.  I have

23   proposed, and the two committees have tentatively supported my

24   idea, that the Judge Donato proceedings, the estimation

25   proceedings, be dismissed once the plan is effective because we

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    no longer need it.  We needed it when the debtor had to figure

2    out how much to fund.  We resolved that issue.  They had to

3    fund 3.5 billion dollars.

4         So I am proposing to the debtor that they think and

5    develop a -- they support the idea, which both committees

6    tentatively have supported, that they simply seek -- they sign

7    a stipulation dismissing the estimation proceeding as being

8    unnecessary if we hit the effective date.

9         THE COURT:  Well, Mr. Marshack, I'm going to -- I

10   don't want you to start telling me what some mediation that

11   might some -- or some negotiations that might be going on

12   between you and others, or that I should even hear about.  If

13   I'm given a done deal and told that Judge Donato has just been

14   asked to dismiss, that's fine, but I -- I guess I am

15   uncomfortable with even hearing about what proposed --

16        MR. MARSHACK:  I understand.

17        THE COURT:  -- and maybe hasn't been agreed to.

18   Remember, the -- a couple of the experienced lawyers who were

19   on the panel here just a few minutes ago, presumably aren't in

20   that conversation and they may not --

21        MR. MARSHACK:  That's fine.

22        THE COURT:  -- take too kindly to such a proposal.

23        MR. MARSHACK:  I'm not a part of that conversation

24   either, Your Honor.  I'm not part of mediation.  I have just

25   been wondering -- I'm answering your question from yesterday,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   and I reached out to the creditor's committees and they kind of

2   like -- they like the idea -- I sent them an email, and they

3   sent an email back going they like the idea.

4           THE COURT:  Okay.

5           MR. MARSHACK:  We don't need to belabor this.  I just

6   wanted Mr. Karotkin to give that some thought.  I have reached

7   out to him.  I'm trying to get this matter to confirmation as

8   quickly as anybody else, and I think if Judge Donato ruling is

9   a stumbling block, I think we may have a solution.  But, thank

10  you, Your Honor, and the Singleton Law Firm Group supports

11  confirmation.

12          THE COURT:  Thank you, Mr. Marshack.

13          MR. MARSHACK:  Thank you.

14          THE COURT:  I'm going to remove you from the panel and

15  ask Ms. Parada to bring in Ms. Pino.

16          MS. PARADA:  Ms. Pino is joining.  Ms. Pino, please

17  unmute your microphone and state your appearance.

18          THE COURT:  Ms. Pino, can you hear me?  Ms. Pino, can

19  you hear me?

20          Ms. Parada, can you hear me?

21          MS. PARADA:  Yes, Your Honor, I can hear you.

22          THE COURT:  All right, well, I just wondered if I was

23  the fault here.

24          Ms. Pino, I'll try again, you -- your mic appears to

25  be unmuted, but we're not hearing you or seeing you.  So unmute

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    or unblock your screen.

2         Well, Ms. Parada, you've mastered the Zoom world, what

3    do you want me to do when we can't get somebody who's in there?

4    She's in the -- she's on the panel, but I'm not hearing her.

5         MR. KAROTKIN:  Your Honor, I -- I think you asked me

6    to speak with Ms. Pino between yesterday and today about her

7    objection, which I have done.

8         THE COURT:  Yes.

9         MR. KAROTKIN:  We spoke this morning, and I think that

10   I can address -- I can address it if we can't get her.

11        THE COURT:  Well, let's just wait a second or two.

12   And I need to talk to you about where -- what we do next.  We

13   have at least one other attorney, Mr. Neumeister, who wants to

14   be heard, and then we've got to figure out what to do with the

15   folks that we passed this morning.

16        So, Ms. Pino, if you can hear me, I need you to do

17   something, or I'm going to let Mr. Karotkin summarize what

18   maybe has been transpired.  You can send an email immediately

19   to my courtroom deputy.  You have her email address if you're

20   trying to get in and for some reason can't get in.  But if

21   there's no other way, even if you are hearing me, for us to

22   hear back from you unless there's something you can do at your

23   end.

24        MR. PINO:  Let me see --

25        THE COURT:  All right.  Guess what, it worked.  Well,

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   it almost worked.  Ms. Pino, can you hear me now?

2           MR. PINO:  I can hear you, Your Honor.  My apologies.

3   We were having problems with the camera and thus with the

4   microphone.

5           THE COURT:  Okay.

6           MR. PINO:  Good afternoon.

7           THE COURT:  That's okay.

8           MR. PINO:  Estela Pino.  I am appearing on behalf of

9   Ms. Skondin and Mr. Franklin in connection with the objection

10  to plan filed by my clients.

11          THE COURT:  Okay.  Go ahead.

12          MR. PINO:  And, Your Honor, I think that Mr. Karotkin

13  indicated to the Court while we were having our technical

14  difficulties that we were able to speak.  I want to thank the

15  Court for asking him to call me.  I want to thank him for

16  calling me.  I can attest that he was keeping very late hours

17  last night.

18          And we spoke this morning, and we have reached a -- I

19  believe a resolution of the issues raised by my clients.  And

20  based on our conversation, and Mr. Karotkin, you can correct me

21  if I am wrong, my clients' objections to claims will be

22  resolved by stipulations granting them relief from the

23  automatic stay to have the claims heard, determined, and

24  liquidated in the Superior Court actions pending before the

25  County of San Francisco, which were pending at the time that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    the two Chapter 11 cases were filed.

2         Once the claims are liquidated by settlement or

3    judgment, they will be paid in accordance with the general

4    unsecured creditor provisions of what we are assuming will be

5    the confirmed plans, and these stipulations will survive

6    confirmation of the plan and the effective date of the plan,

7    and upon entry of bankruptcy court order approving the

8    stipulation, our objections will be deemed withdrawn.  And one

9    of my clients did file a motion for relief from stays, that

10   will also be deemed resolved and the hearing vacated from the

11   Court's June 24th calendar.

12        THE COURT:  Okay.  Thank you very much for that

13   report.  I'm glad to hear that.  I was going to raise the

14   question.  We were aware that the motion was filed.  We'll just

15   mark it as coming off and thank you for getting everything

16   resolved.  I appreciate that you got --

17        MR. KAROTKIN:  Can I just make a --

18        THE COURT:  Yes.

19        MR. KAROTKIN:  -- one --

20        THE COURT:  (Indiscernible).

21        MR. KAROTKIN:  First, these claims are not fire victim

22   claims.

23        THE COURT:  Right.  I understand that.  They are fire,

24   but not the fire setter in the case.

25        MR. KAROTKIN:  I don't even know if they are fires.

operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corporation and Pacific Gas and Electric Company

1         THE COURT:  I believe at least one is a fire victim,

2 but not a capital F fire victim.

3         MS. PINO:  Yes.

4         MR. KAROTKIN:  Right.  And under the plan, Your Honor,

5 those two claims are in the general unsecured class --

6         THE COURT:  Correct.

7         MR. KAROTKIN:  -- which is unimpaired under the plan.

8 I think you asked the question yesterday whether that means

9 that they will closed rule, and the answer to that is no.

10 However, under the plan, as Ms. Pino said, once they are

11 determined and allowed, either by settlement or by a final

12 judgment in the State court action, they will then be treated

13 under the provisions of the plan.  And the provisions of the

14 plan say they will be paid in full as provided in the plan.  So

15 that's how they are treated, just like any other unsecured

16 claim, but liquidated --

17         THE COURT:  Okay.

18         UNKNOWN SPEAKER:  -- in the State Court.

19         THE COURT:  So that just means I didn't use the terms

20 precisely, and the pass through was the wrong way of saying,

21 when she gets her claim liquidated, it will get paid like the

22 way in the other unimpaired claims will be paid under the plan.

23 Right?

24         MR. KAROTKIN:  In that class, yes.

25         THE COURT:  Right.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        MR. KAROTKIN:  It was an allowed claim in that class.

2        THE COURT:  Allowed claim in -- but an unimpaired

3    class.

4        MR. KAROTKIN:  That class is unimpaired under the

5    plan, correct.

6        THE COURT:  Okay.  Ms. Pino, we don't need to do

7    anything more.  Thank you for your time.  I'm glad you got it

8    worked out for your clients.

9        MS. PINO:  Thank you, Your Honor.  And thank you for

10   all your attention in this case.

11       THE COURT:  Thank you.  And by the way, Ms. Pino,

12   we're moving these stipulations.  The debtor's been doing a

13   number of stips of this nature, and I urge you to move quickly

14   on it.  Not that we won't do it if it's later, but we're trying

15   to keep the docket clear, and we want to get things like relief

16   from State is off calendar.  So the sooner the better if you

17   get the stipulation over to whoever in the debtor side is

18   handling this.  It may not be Mr. Karotkin.  Then you'll take

19   care of it in the normal course.

20       All right.  Thank you.

21       MR. KAROTKIN:  We're already drafting them, Your

22   Honor.

23       MS. PINO:  We were also drafting one as well, so I --

24       THE COURT:  Okay.

25       MS. PINO:  We have it covered, Your Honor.  Thank you.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        MR. KAROTKIN:  Okay.  Thank you.

2        THE COURT:  Thank you, Ms. Pino.

3        We're going to have her removed.  Oh, we did.  Okay.

4        Mr. Karotkin, we've been going for about an hour and

5   forty minutes.  I normally would take a short convenience

6   break, but you tell me what we've got to do.  Are you getting

7   any word from the people you sent off to the negotiating room?

8        MR. KAROTKIN:  Yes, Your Honor.  I think we have some

9   favorable news, but I think it would be appropriate because Mr.

10  Bray called me, literally, I think four or five minutes before

11  we reconvened.  I think that if we can impose on you and the

12  other people to take a twenty-minute recess so we can have

13  conversations with them to make sure that there is a complete

14  understanding of where we are?

15       THE COURT:  Okay.  Now, Mr. Neumeister had asked to be

16  heard today.

17       MR. KAROTKIN:  Yeah, frankly, I don't understand his

18  request.  I think he said there's some proposed -- I thought we

19  had actually resolved his objection.  He sent us a proposed

20  language last night, and I believe you said yesterday that we

21  would, to the extent there were still any outstanding

22  objections with respect to his objection, they would be

23  addressed tomorrow.

24       So as I said, he sent us language last night.  We

25  haven't had a chance to look at it.  But I would suggest that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  that be put over until tomorrow.  It should be no more than a

2  couple of minutes, and I assume it will go away.

3          THE COURT:  Mr. Neumeister, if you're hearing -- if

4  you're listening, raise your hand if you oppose what you're

5  hearing.

6          Okay.  He is raising his hand.  All right.  Let's

7  bring Mr. Neumeister in here for a moment because I do want to

8  accommodate you, Mr. Karotkin, if there's a chance to take a

9  break and make some progress.

10          THE CLERK:  Your Honor, Mr. Neumeister lowered his

11  hand.  Would you like me to bring him in?

12          THE COURT:  Yes, please.  I'm sorry.  I thought I said

13  that.

14          THE CLERK:  Well, he lowered his hand.

15          THE COURT:  This is a new world we live in with people

16  raising their hands.  I'm going to tell you; you wouldn't

17  believe who raises his hand sometimes, and I can't reveal that.

18          THE CLERK:  Mr. Neumeister is joining now.  Please

19  state your appearance.

20          THE COURT:  Make your appearance, sir.

21          MR. NEUMEISTER:  Good afternoon, Your Honor.  Mike

22  Neumeister with Gibson, Dunn & Crutcher on behalf the

23  (indiscernible) Committee of Boards and Trade Claims.  I'm

24  sorry for the confusion with the raising of the hand and

25  lowering of the hand.

(972) 385-  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        No, I think if Mr. Karotkin and his team would like to

2   review the language we sent across, we did have one technical

3   fix to the plan based on some of the revisions they made.  Our

4   preference would be to resolve those issues offline.

5        THE COURT:  Okay.

6        MR. NEUMEISTER:  So if they're willing to look at the

7   language tonight and get back to us, I'm happy to push that

8   issue tomorrow.

9        While I do have you, I do just want to clarify the

10  record based on something I said yesterday.  I did want to

11  clarify, and I think this is self-evident from our objection

12  that the trade committee does continue to object to the

13  treatment of post-petition interest with respect to allow

14  general unsecured claims.  That issue, of course, was resolved

15  by your prior memorandum decision and order.  We don't intend

16  to relitigate that now.

17        THE COURT:  No.  No, of course not.

18        MR. NEUMEISTER:  Exactly.

19        THE COURT:  I mean, my intention when I figure out the

20  form of which way I'm going -- assuming, let's start with the

21  basic, if I decide to confirm with the plan, I'm not going to

22  reinvent the wheel.  I'm going to cite, perhaps in an order or

23  a footnote or a memorandum, the dispositions that are already

24  in the pipeline, including the one that you don't agree with,

25  but it's still one of the rulings, so we're not revisiting it.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    And I wouldn't take offense if you (break in audio) you

2    couldn't either if you argued it again and I ruled the same way

3    again.  So we're not going to do that.

4           MR. NEUMEISTER:  Exactly right, Your Honor, and --

5           THE COURT:  Right.  So we'll --

6           MR. NEUMEISTER:  Go ahead.

7           THE COURT:  We're going to move you off again and I'm

8    going to talk to Mr. Karotkin for one more minute before we

9    take a break.

10          Okay.  Thank you, Mr. Neumeister.

11          So Mr. Karotkin --

12          THE CLERK:  Excuse me, Your Honor.

13          THE COURT:  (Indiscernible).

14          THE CLERK:  I received an email from Mr. David Reeder,

15   he represents the City of American Canyon, and he asked for

16   four to five minutes today to argue.

17          THE COURT:  Hold one second.

18          Well, Mr. Karotkin, are you familiar with Mr. Reeder

19   and his client?

20          MR. KAROTKIN:  No.  I don't know.  I don't have all

21   the objections in.

22          THE COURT:  No.  I don't either.

23          MR. KAROTKIN:  I don't know whether he filed an

24   objection or not.

25          THE COURT:  Well, I'll tell you what.  I'll let him

PG&E Corporation and Pacific Gas and Electric Company

1    in for five minutes and then I'm going to talk to Mr. Karotkin

2    about the balance of today and what we're doing tomorrow

3    because we can't keep pushing things into tomorrow.

4           So Ms. Parada, please bring in -- it's Mr. Reeder, you

5    said?

6           THE CLERK:  Yes, Your Honor.  Mr. David Reeder is

7    joining now.

8           MR. KAROTKIN:  Actually, Your Honor, they did file an

9    objection.  It's under docket number 7275 American Canyon.

10          THE CLERK:  Mr. Reeder, please unmute your microphone

11   and state your appearance.

12          THE COURT:  Mr. Reeder, can you hear me?

13          MR. REEDER:  Yes, I can hear you, Your Honor.

14          Good afternoon, Your Honor.  David Reeder.

15          THE COURT:  You need to tell him you're

16   (indiscernible).

17          We didn't have you on for appearance because I don't

18   think you sent in a request to appear on the objections.  So

19   what is it you want to raise?

20          MR. REEDER:  Okay.  Very quickly.  We filed --

21   American Canyon filed substantive objection to the assumption

22   provisions.  In short, in the -- there have been others who

23   have stated this as well.  From the prevailing law is that a

24   extemporary contractor is to be assumed in full, one hundred

25   percent.  Their provisional plan including Section 8.2.E.,

PG&E Corporation and Pacific Gas and Electric Company

1    which provide for misshifts as in the straight, one hundred

2    percent assumption of the entire contract is not the case.  It

3    allows the contract to come through the assumption process with

4    inappropriate limitations.  Our particular contract, our proof

5    of claim, which is implicated in 8.2.E., involves two contracts

6    and one --

7            THE COURT:  All right.  Mr. Reeder, I'm going to

8    interrupt you just for a second.

9            MR. REEDER:  Yes.

10           THE COURT:  I believe this is the exact same issue

11   that a number of other counsel have been putting their heads

12   together and maybe --

13           MR. REEDER:  Mr. Gorton, Mr. Glassman, yes.

14           THE COURT:  So I'd rather not hear it about it

15   today -- from you now if they're going to have a resolution

16   that's acceptable to them.  It might be acceptable to you.  If

17   not, I'll fit the argument together.

18           MR. REEDER:  Okay, Your Honor.

19           THE COURT:  I just can't handle the breaking these

20   arguments into little segments.  So what I'm going to say to

21   you is that I got the heads-up of the subject matter.  If Mr.

22   Karotkin reports back that there's been a resolution with the

23   major players, you can either join them or rescind.  I'm not

24   trying to tell you you've got to agree, but I just don't want

25   to spend the time discussing it now.  I don't have the time to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    do that.

2              MR. REEDER:  Okay.

3              THE COURT:  Okay.

4              MR. REEDER:  We're in favor of resolution.  So thank

5    you, Your Honor.

6              THE COURT:  Sure.

7              MR. REEDER:  Appreciate it.

8              THE COURT:  Thank you.

9              Okay.  Mr. Karotkin, unmute.

10             I will take the break that you're asking.  Like I did

11   yesterday, I only have so much energy.  Maybe you're not tired

12   yet, and I'm not exhausted yet, but I'm not go past 4 or 4:30,

13   and so that means tomorrow we're going to have the securities

14   plaintiffs and Mr. Julian and I'm not sure who else, so you

15   tell me what you want to do.

16             And by the way, I'll make one other statement that --

17   I've been thinking about this during the breaks.  I set out in

18   my mind at least when we set the testimony schedule and the

19   argument schedule that I was hopeful to have this matter

20   submitted for decision by close of business tomorrow.  I'm not

21   wedded to that.  I'm not going to impose on my staff or me or

22   you or anyone's families and work on the weekend.  If we have

23   to have further argument early next week, we will do it.

24             And somewhere along the line, probably tomorrow, you

25   need to tell me the timetable that you think is mandatory if

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  you're going to get a favorable ruling out of me; how late can

2  I go before I sign it.

3  So for now, tell me about what we need to do this

4  afternoon.  Your preference.

5  MR. KAROTKIN:  Your Honor, if we could take, perhaps,

6  a twenty-minute recess and consult with -- the plaintiff

7  proponents consult with Mr. Bray about exactly where we are,

8  then we can come back and report to you.  Hopefully, if we have

9  it resolved, we can outline that resolution to the Court and

10  the other parties.  I know that it will be subject to

11  appropriate documentation that people would want to see, which

12  obviously would not be completed in the next twenty minutes.

13  And then I think if we have reached a resolution, I

14  think we would adjourn for the day and come back tomorrow when

15  we start and have that resolution fully documented for everyone

16  to take a look at.

17  THE COURT:  Well --

18  MR. KAROTKIN:  To the extent --

19  THE COURT:  You're fully documenting is an

20  aspirational wish that I have to trust that lawyers know what

21  kind of deal they want to make, but you believe that Mr. Bray

22  is --

23  MR. KAROTKIN:  Your Honor, I don't think it is going

24  to require the (break in audio) that much documentation.

25  THE COURT:  Okay.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      MR. KAROTKIN:  It's just making sure that it

2  accurately reflects --

3      THE COURT:  (Indiscernible).

4      MR. KAROTKIN:  -- our standing.

5      THE COURT:  Is it your understanding that Mr. Bray is

6  leading the pack that covers all these municipalities and

7  agencies and so on, like Mr. Gorton and the others?  Or are

8  they --

9      MR. KAROTKIN:  No.  I think they are separate.  They

10 have other issues on 10.13, but I think that this would address

11 their executory contract issues, which I think is --

12     THE COURT:  Okay.

13     MR. KAROTKIN:  -- a major thing outstanding.  And

14 certainly with respect to the other parties.

15     THE COURT:  I'm going to grant you your request with

16 about five extra minutes.  And say we'll resume at 2:45, San

17 Francisco time, which is about twenty-five minutes from now.

18 And we'll follow the same routine, I'll just put my video and

19 mic on mute and assume you'll do likewise, and I'll ask Ms.

20 Parada to reconvene us at 2:45.

21     MR. KAROTKIN:  Thank you, sir.

22     THE COURT:  Thank you.

23    (Whereupon a recess was taken)

24     THE COURT:  Any progress?

25     MR. KAROTKIN:  Yes.  We had a conversation with Mr.

operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corporation and Pacific Gas and Electric Company

1    Bray.  I think we have an agreement in principle, subject to

2    documentation, which would require us some provisions in the

3    proposed confirmation order.  So let me try to summarize where

4    we are and if Mr. Bray disagrees, he can correct me.  And as I

5    said, this is subject to documentation, so I think everybody

6    should keep that in mind.

7            THE COURT:  Want me to bring Mr. Bray in to join us?

8            MR. KAROTKIN:  Yes.  That probably would be a good

9    idea.

10           THE COURT:  Okay.  Ms. Parada?  I presume Mr. Bray is

11   (break in audio).

12           MR. KAROTKIN:  Now your voice is not good.

13           THE CLERK:  Mr. Bray is joining now, Your Honor.

14           THE COURT:  Okay.  We did so well all day today.

15           Okay.  Mr. Bray, can you hear me or see me?

16           MR. BRAY:  I can, Your Honor.  Good afternoon.

17           THE COURT:  Yeah, well we are having some audio

18   problems at my end, I guess.  Okay.

19           Let's see what you can do, Mr. Karotkin.  If it

20   doesn't work, we'll have to figure out a plan B.

21           MR. KAROTKIN:  Okay.  So the agreement, in principal,

22   relates to the contribution and indemnity claims that have been

23   the subject of objections with both with respect to executory

24   contracts that are being assumed, and then I would say with

25   respect to the extent there are any noncontractual claims for

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    contribution or indemnity with respect to unimpaired claims.

2          And with respect to assumed executory contracts

3    (indiscernible)--

4          THE COURT:  Hold on, Mr. Karotkin.  Hold on one

5    second.  (Break in audio) you've got a finger or hand in front

6    of part of the camera, so we keep seeing your hand like this.

7    Okay.  All right.

8          Go ahead, Mr. Karotkin.

9          MR. KAROTKIN:  Yes.  With respect to executory

10   contracts that are going to be assumed, contribution and

11   indemnity claims will be assumed in their entirety.

12         THE COURT:  Okay.

13         MR. KAROTKIN:  With respect to what I call any

14   noncontractual claims for contribution and indemnity, they

15   won't just be addressed in the ordinary course in the claims

16   reconciliation or resolution process.  To the extent anyone

17   asserts a claim, all rights of the parties are reserved to

18   address the validity or allowance of any claim, including all

19   rights under the plan under Section 1141, that those claims are

20   discharged under Section 502, that they're not allowable and

21   any (indiscernible) with respect to that would be -- if it ever

22   arises would be left for another day with all rights of parties

23   preserved.

24         THE COURT:  That's in the bankruptcy court or

25   elsewhere?

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        MR. KAROTKIN:  Well, they would be part of the

2   claims -- well, in the bankruptcy court, certainly as part of

3   the claims resolution process, though to the extent someone has

4   filed a claim based on a noncontractual contribution and

5   indemnity claim, or a contribution or indemnity claim with

6   respect to a contract that has not been assumed, that would be

7   in the bankruptcy court to the extent, for example, two years

8   from now, someone tried to chase the reorganized debtors for a

9   noncontractual contract or indemnity claim and the debtors were

10  asserting that that claim would be discharged, or was

11  discharged, or is not allowable, that could be brought in the

12  appropriate forum, just like any other situation.

13        THE COURT:  So to go back, you're saying if there's --

14  first of all, we're only dealing with assumed contracts to

15  begin with, so it's not some noncontractual relationship at the

16  outset, and if the debtor is moving to assume a contract, it is

17  assuming the contribution and indemnity aspects with it and if

18  there --

19        MR. KAROTKIN:  Yes.

20        THE COURT:  -- is some -- but when you say if there's

21  some noncontractual claim --

22        MR. KAROTKIN:  So assuming someone, Your Honor, said

23  they believe they had some sort of a common law right to -- or

24  a noncontractual right to assert a contribution or indemnity

25  claim against the debtors.

of 185
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Okay.

2          Mr. Bray, you think the concept is consistent with

3   what you have been discussing?

4          MR. BRAY:  So far so good, Your Honor, on the

5   noncontractual situation, yes.  Everyone's rights are reserved

6   to argue about the applicability, 502, what the status or

7   resolution of that issue would be.  We're on track so far.

8          MR. KAROTKIN:  A couple of other items.  We would

9   clarify in the plan that the rights of all parties, with

10  respect to set off and recoupment, are preserved.

11         THE COURT:  Okay.

12         MR. KAROTKIN:  I'm sorry.  In the confirmation order,

13  we would clarify that in the confirmation order.

14         And I think the last point is that all rights and

15  defenses of vendors are retained with respect to the vendors

16  that are pursued or may be pursued by the Fire Victim Trust.

17  So those vendors, to the extent they were pursued by the Fire

18  Victim Trust on claims that we assigned to the trust, would

19  have the right to assert all rights and defenses that they

20  would have the right to assert against us if we had pursued

21  them.  And I think that's consistent with everyone's

22  understanding.  We could not strip them of their rights and

23  defenses in any event.

24         THE COURT:  You can't strip them of their defenses and

25  then assign their obligations, huh?  How fair.

(973) operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. KAROTKIN:  There was no intention to do that, but

2    we would clarify that.  We didn't think we could do it.

3          THE COURT:  Mr. Bray, do you if this takes care of

4    some of the arguments and issues raised by the municipalities

5    and people like NCPA and others, or are they -- you think

6    they're on board with this as well or do you not know?

7          MR. BRAY:  I don't want to speak for them.  I don't

8    think they would object to this.  I think the first provision

9    about the assumption of executory contracts hopefully resolves

10   a number of concerns and the other provisions probably resolve

11   certain concerns, but not all of them.

12         THE COURT:  Yeah.  Well, obviously, their counsel can

13   explain to me whenever we get around to it.  That certainly

14   makes sense.

15         Well, that's good.  I'm glad to hear this resolution.

16   And there's still some other issues from the committee's point

17   of view, though, aren't there?  Or is this the major --

18         MR. BRAY:  Well, Your Honor, we -- Mr. Karotkin's

19   opening statements, ticked off the other issues and he -- I

20   believe, they're resolved.  That's the short answer.  We seen

21   the drafting for some of them.  We've got to see the drafting

22   on these.  But assuming we get the drafting right on these, I

23   believe that the combined statements at the beginning of the

24   hearing and this would effectively resolve our concerns.

25         THE COURT:  Okay.  Mr. Karotkin, assuming I can keep

(972) 305-8985   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    my internet connection, what do you suggest we do today and

2    tomorrow?  And congratulations to you and your clients for

3    making huge steps of progress here.

4            MR. KAROTKIN:  We're trying to -- you told me to try

5    to make your life easier.  I'm trying to do the best I can.

6            THE COURT:  Yeah, so my assistant gets her power cut

7    off and I lose my internet.  But you win some; you lose some.

8            MR. KAROTKIN:  I wish I had control over that.

9            So I think for tomorrow --

10           THE COURT:  Well, the vicarious (phonetic) folks want

11   to be heard, obviously.  That's still a major issue.

12           MR. KAROTKIN:  Yes.

13           THE COURT:  And to the extent that Mr. Julian wants to

14   make a statement or whatever, I certainly expect to hear from

15   him.  And Mr. Neumeister may or may not need to weigh in.  I'm

16   not trying to cut anybody out of the discussion.  I just --

17           MR. KAROTKIN:  And I think that --

18           THE COURT:  And even Mr. Skikos may want to have some

19   time, too.

20           MR. KAROTKIN:  And I think that Ms. Winthrop and Mintz

21   (sic) have reserved some time for tomorrow in the event that

22   the trust agreement and the claims resolution procedures had

23   not been resolved.

24           THE COURT:  Yeah.

25           MR. KAROTKIN:  And I think -- and I think that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   hopefully the parties that we deferred at the beginning of

2   today's hearing, hopefully many of the issues raised by those

3   parties will be resolved, assuming we reach agreement on

4   documentation with Mr. Bray.  And then I think we have -- I

5   believe that the municipal objectors may still have some items

6   outstanding.  I know they have some issues on Section 10.13.  I

7   don't know what else they have.

8          THE COURT:  Realistically, is it possible that

9   something would be on the docket this evening so all of those

10  folks can at least get tonight to look at so we address

11  tomorrow what's still live?

12         MR. KAROTKIN:  Well, we'll do our best to try to do

13  that.

14         THE COURT:  And what's your thinking about -- well,

15  it's probably the same question of the pending objections.  I

16  mean, in my mind, I know what some of them are.  I can do the

17  list myself.  But the point is, your list is so helpful because

18  it tracks it with real issues.

19         MR. KAROTKIN:  Um-hum.

20         THE COURT:  And again, I -- okay, let's defer that.  I

21  want to make sure you're clear on something that I might have

22  said before we broke, and I'll state it again so there's no

23  misunderstanding.

24         We know and we've known for over a year that AB 1054

25  says what it says.  So moving backwards, I recall reading some

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    provisions of it and thinking that California legislature left

2    it a little unclear what the bankruptcy court has to do by June

3    30th.

4              What do you think -- if I am persuaded by your

5    position that I should order the plan confirmed, what do you

6    think is the timetable that absolutely can't be extended?

7              MR. KAROTKIN:  I think that --

8              THE COURT:  And if you want to think about that -- if

9    you want to think about that and talk about it tomorrow, that's

10   fine, too.

11             MR. KAROTKIN:  Yeah, let me do that because I know

12   that some of the -- some of the kickoff to the financing --

13   some of the kickoff to the financing, that date may be

14   important.

15             THE COURT:  Well, look.  I'll ask you the easiest one:

16   an order by June 30th or a final order by June 30th?  I mean,

17   that's a fifteen-day question.  And if I have to get a decision

18   out by June 15th -- I know you would like me to conclude this

19   hearing by saying plan confirmed, but I'm not going to do that.

20   I've got to work my way through, still, enormous documents.  I

21   will not kid myself or you.  The issue raised by the securities

22   plaintiffs is a significant issue.  The question of what my

23   role is in the absence of a rights agreement is, perhaps, for

24   nothing more than argument.  There are a few others that a

25   number of the counsel have raised today and yesterday that I

PG&E Corporation and Pacific Gas and Electric Company

1    have an obligation to articulate a decision at some point.

2    Whether I do it orally or in a written decision or a markup of

3    your findings and conclusions, that's still up for grabs.

4            But I simply committed -- and I think I said something

5    to you over a year ago -- the bankruptcy court, meaning me and

6    our process, is not going to cause a delay past June 30th, and

7    I'm still committed to that.  But if I have to turn around a

8    thoughtful decision in forty-eight hours, I need to know it

9    ahead of time.

10           So just put that on your to-do list to give me a heads

11   up.  You know my style.  I tend to try to get things out, but

12   sometimes, I just have to reflect on it, and it's all the more

13   complicated when we're working remotely and losing connections

14   and have to do things the old-fashioned way.

15           So unless anybody wants to be heard, I'll conclude the

16   hearing, resume at 9:30 tomorrow, and with luck, there will be

17   on the docket at least something that will let all the

18   participants know what's been done, and particularly the

19   objectors who reserved their arguments can be prepared to argue

20   tomorrow, if they wish, or not.  Okay?

21           Does that work for you, Mr. Karotkin?

22           MR. KAROTKIN:  Yes, sir, it does.  Thank you.

23           THE COURT:  Okay.  Knock on wood, we've been doing

24   very well with the connection, but right when we resumed at the

25   break, I got the little heads up about internet unstable, which

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    is rarer now, but the heat here maybe sometimes does it.  So I

2    hope I won't have a problem tomorrow.

3            Let's see.  Let's take one break here to -- one pause

4    to see if anyone has raised a hand.  No, no hands are up.  I'm

5    in good shape.

6            Okay, good night, everyone.  Thank you for your long

7    day today, and congratulations on making progress.

8            I do see a -- I see one hand up.  Ms. Parada, Ms.

9    Wallace has put up her hand, so bring Ms. Wallace back, please.

10           Ms. Wallace, unmute yourself, please.  Unmute; I can't

11   hear you.

12           All right.

13           MS. WALLACE:  Can you hear me now?

14           THE COURT:  Yes.  Go ahead, Ms. Wallace.  Just state

15   your name again.

16           MS. WALLACE:  Okay.  Mary Wallace, pro per litigant

17   for wildfire claimants.

18           I just want to make sure that I have something

19   scheduled tomorrow at the end of this.  I know everyone

20   involved is making a rush to make a judgment about

21   confirmation, and I totally appreciate -- I would never want to

22   be in your shoes, Judge.  But I just -- you know, because I

23   lack information about how to do proper filings and proper

24   notices in proper time, and you know, I got denied a lot of

25   time today, and you didn't answer a lot of my questions, and

PG&E Corporation and Pacific Gas and Electric Company

1   you did a lot of other things for other people except me.

2          But you know, I just want to be included tomorrow.

3   And if you could tell me, Judge, how to do that, that would be

4   so appreciated and grateful.

5          THE COURT:  Ms. Wallace, you're a fire survivor;

6   you're a party-in-interest; you're a member of the public.  If

7   we didn't have COVID, you would be -- you would come to court.

8   We have the internet and COVID, and you are participating today

9   like everybody else.  You particularly asked to make argument,

10  and you were given that right.

11         By my count, there are 297 people who are following

12  this hearing.  We never would have had nearly that many in

13  court.  So you are -- it's the same procedure.  We'll be --

14  we'll have a posting for a link to come in at 9:30 tomorrow.

15         I'm not, however, expecting to call on you because,

16  again, as we've done this over these days, I have to maintain

17  some order and let the parties who wish to be heard be heard,

18  but I can't turn this into kind of like a town hall meeting.

19         So I understand and appreciate the complexity of this.

20  You've just heard from two really experienced lawyers

21  representing very significant players.  This is a very, very

22  dynamic and fluid situation.  And they reported significant

23  things that are important -- maybe not to you as a fire

24  survivor, but very important to the ability of the company to

25  do what it wants to do.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    So all I can do is say you just have to trust the

2   system a little bit.  I know your views about it.  You may be,

3   as Mr. Abrams and others have gotten, very skeptical and very

4   cynical, but if you trust my role, my role is to see if this

5   plan can get confirmed and to make the rulings that, from a

6   bankruptcy legal point of view, open the door a little wider

7   for that money finally to flow to you and your fellow survivors

8   and -- and I don't make light of it -- the tens of thousands of

9   creditors who also are entitled -- who aren't fire survivors

10   but creditors who are entitled to be paid and have been tied up

11   in this bankruptcy for a year and a half.

12    So I'm going to leave it at that, and to the extent

13   that you are confused --

14    MS. WALLACE:  And again, have any --

15    THE COURT:  -- and bewildered, and I -- I envy you.

16    MS. WALLACE:  Again, have any opportunity to say (sic)

17   to what you just said?

18    THE COURT:  What?

19    MS. WALLACE:  I am not allowed to speak to your order?

20    THE COURT:  Well, I mean, you're allowed -- I'm not

21   telling you you can't speak; I can't keep this hearing going on

22   and on and on.

23    MS. WALLACE:  I know, because --

24    THE COURT:  If you want to say something now --

25    MS. WALLACE:  I am.  I'm trying to say something.  You

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  told me -- and multiple times that I've been on this court

2  hearing, and God bless America and the COVID virus because the

3  only way I would ever get to see you and everybody else who's

4  on this call, is --

5          THE COURT:  Well, you're the first person to God bless

6  the COVID virus.

7          MS. WALLACE:  I couldn't even get there.

8          THE COURT:  What?

9          MS. WALLACE:  I couldn't get to the court, Judge.  I

10  couldn't get there.  I have no money to go to -- and then I was

11  restricted to even be in your court.  So I got involved when

12  the coronavirus hit, you know.  I was involved before, but --

13  and I'm just asking for an opportunity to be heard, to respond

14  to objections.  There are things going on tomorrow, you know,

15  and you gave me five minutes today.  And I didn't even get my

16  objections in to --

17          THE COURT:  Ms. Wallace, I am going to interrupt you.

18  I hate to --

19          MS. WALLACE:  Whatever.

20          THE COURT:  Ms. Wallace, I need to --

21          MS. WALLACE:  I want to ask --

22          THE COURT:  -- remove you or cut you off.

23          MS. WALLACE:  I want to ask the Court for --

24          THE COURT:  I'm going to conclude the hearing.

25          MS. WALLACE:  -- an hour.

of 185
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  No.  I'm sorry, Ms. Wallace.  That's not

2   feasible.  I'm going to conclude the hearing.  I hope you will

3   participate tomorrow and listen.

4          Thank you very much.  I'm going to conclude the

5   hearing now.

6          And Mr. Karotkin and Mr. Ray (sic), thank you for your

7   efforts; I look forward to seeing you tomorrow.

8          MR. KAROTKIN:  Thank you, sir.

9          MR. BRAY:  Thank you, Your Honor.

10      (Whereupon these proceedings were concluded)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

1                  C E R T I F I C A T I O N

2

3    I, Colin Richilano, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ COLIN RICHILANO

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  June 5, 2020

16

17

18

19

20

21

22

23

24

25

# A

**A&M (1)**
61:16
**AB (6)**
26:18;88:11;91:2;
102:24;124:13;150:24
**abiding (1)**
88:24
**ability (7)**
9:7;23:9;30:14;40:7;
47:4;77:15;154:24
**able (22)**
5:18;23:4;48:20;
56:10;62:7;72:19;77:8;
78:24;80:8,9;81:5;
83:7,10;85:20;94:11;
101:18;113:8;114:8,8;
117:24;123:4;131:14
**above (2)**
38:13;41:4
**Abrams (44)**
26:5;50:5;53:1;
55:15;57:20;74:9,23,
25;75:1,3,9,11,19;76:7,
19;79:13,15,17;80:12,
15,20,24;81:3;84:15,
17,24;85:2,5,9,24;86:7,
21;87:3,5,13,19;91:13,
15;92:24;93:2,5;95:7;
104:10;155:3
**Abrams' (3)**
27:4,11,21
**absence (2)**
120:1;151:23
**absolute (1)**
100:19
**absolutely (7)**
15:24;30:16;34:7;
80:15;85:24;93:18;
151:6
**absorb (1)**
67:10
**abundance (1)**
72:25
**accept (8)**
13:13;17:12;21:2;
40:25;97:9;100:13;
107:25;118:19
**acceptable (3)**
13:17;140:16,16
**accepted (1)**
107:21
**accepts (1)**
109:19
**accommodate (5)**
75:14,16;108:1;
117:11;136:8
**accomplish (2)**
30:19,21
**accordance (2)**
28:12;132:3

**according (5)**
27:14;37:3;47:8,9;
106:23
**accountability (1)**
78:10
**accountant (1)**
22:22
**accruals (1)**
102:4
**accurately (2)**
123:22;143:2
**acknowledges (1)**
91:22
**across (6)**
77:16;80:7;81:8,9;
94:2;137:2
**Act (1)**
113:1
**acting (2)**
26:4;112:13
**action (14)**
65:5,7,10;66:2,22,
25;67:11,24;68:1,5,15,
16;94:16;133:12
**actions (5)**
66:24;75:25;92:20,
20;131:24
**activate (1)**
71:24
**activities (1)**
81:18
**activity (3)**
7:10;81:19;92:11
**actual (1)**
9:1
**actually (8)**
6:12;28:17;50:21;
58:2;59:8;124:1;
135:19;139:8
**ad (2)**
34:14,16
**adage (1)**
81:23
**add (3)**
31:17;69:25;114:15
**addition (1)**
65:5
**additional (1)**
110:20
**Additionally (1)**
110:16
**address (27)**
10:21;11:2,25;12:5,
8,8;26:13;29:8;44:16;
51:8;62:6;63:14;73:10;
77:8;83:2;116:12;
118:5;121:10;123:21;
124:1,2;130:10,10,19;
143:10;145:18;150:10
**addressed (6)**
27:2;28:23;47:11;
121:9;135:23;145:15
**addresses (4)**

10:21,25,25;12:9
**addressing (2)**
51:15;65:22
**adheres (1)**
88:18
**adjourn (1)**
142:14
**adjustment (2)**
113:18;114:24
**administration (2)**
56:19;93:13
**administrator (4)**
38:14,15;102:6,19
**advance (1)**
92:2
**Adventist (5)**
116:16,23;125:10,
13;126:7
**adversaries (1)**
106:5
**advice (1)**
84:22
**advisement (2)**
50:4,10
**affected (1)**
20:4
**affidavit (1)**
28:8
**affidavits (1)**
18:20
**affirm (2)**
14:15;39:5
**afford (1)**
100:20
**afforded (2)**
96:1;119:4
**afraid (1)**
115:18
**afternoon (13)**
75:1,3;95:15,19;
116:2,3,4;117:21;
131:6;136:21;139:14;
142:4;144:16
**afterwards (1)**
29:10
**Again (62)**
7:9;12:3;15:7;17:23,
25;18:4;21:3;23:22,24;
25:14;26:4;27:23;
33:19;36:23;37:7;
46:24;53:23;54:3;61:7;
64:21;66:14;67:9,22;
69:21;71:17;74:14,18;
80:5;83:20;87:23;83:5,
5;89:9;90:17;91:20,20,
24;92:4,11,20;93:8,15;
94:20;95:10;96:7;
99:24;101:1,9;104:13;
105:11;109:3;122:7;
129:24;138:2,3,7;
150:20,22;153:15;
154:16;155:14,16
**against (7)**

17:14;64:14;65:7;
89:8;96:8;146:25;
147:20
**agencies (9)**
63:6,9;72:21;73:19;
100:2;101:25;102:11;
103:14;143:7
**agencies' (1)**
64:6
**agency (10)**
71:7;72:17;73:2,14,
20;98:8,13;99:6,9,14
**agenda (1)**
79:22
**agent (1)**
33:7
**agents (1)**
32:22
**aggregate (1)**
97:10
**ago (6)**
39:11,14;79:21;
124:17;128:19;152:5
**agree (8)**
61:1,2;68:19;73:10;
94:17;113:6;137:24;
140:24
**agreed (6)**
102:14;114:18;
115:23;119:25;122:15;
128:17
**agreement (46)**
45:17;47:19;64:3;
92:15,15;97:23,25;
98:2,5,8,8,13;99:17;
100:24;102:5;103:13,
14,15;106:5;114:7;
118:7,9,20;119:25;
120:1,3,10,13,15,19,
23;122:4,9,12,13,15,
19;123:20,24;124:12;
125:1;144:1,21;
149:22;150:3;151:23
**agreements (3)**
64:12;106:21;123:25
**agrees (1)**
102:19
**agricultural (1)**
108:22
**Ah (2)**
44:10;45:2
**ahead (19)**
5:24;14:17;21:18;
25:14;32:8;37:12;
51:22;53:15;79:16;
106:14;107:11;109:13;
112:12;117:6;131:11;
138:6;145:8;152:9;
153:14
**align (1)**
86:3
**allegation (1)**
27:1

**allegations (2)**
25:23;32:24
**allegedly (2)**
28:6,8
**allocated (1)**
6:3
**allocating (1)**
104:7
**allow (4)**
16:1;39:13;89:2;
137:13
**allowable (2)**
145:20;146:11
**allowance (1)**
145:18
**allowed (12)**
58:23,24;92:17;
98:14;99:7;100:7;
102:18;133:11;134:1,
2;155:19,20
**allows (1)**
140:3
**almost (7)**
27:22;85:19;92:22,
24;100:16;115:7;131:1
**alone (3)**
82:6;83:1;126:15
**along (2)**
127:19;141:24
**Alsup (2)**
87:10;89:12
**Alsup's (1)**
86:25
**alternate (1)**
14:5
**alternatives (1)**
86:10
**although (3)**
15:1;37:8;120:22
**always (2)**
23:8,9
**amended (2)**
97:6;105:17
**America (1)**
156:2
**American (3)**
138:15;139:9,21
**Ames (1)**
18:22
**among (2)**
20:6;78:13
**amount (12)**
7:22;64:23;97:10,18;
98:15;99:7;100:6;
102:14,20;108:4,10;
112:18
**ample (2)**
35:21;39:12
**analogizes (1)**
93:10
**anemic (1)**
78:18
**announce (1)**

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 159
of 185

111:14
**announcements (1)**
5:5
**annual (2)**
99:2,12
**annually (1)**
98:19
**answered (1)**
100:16
**anticipate (1)**
73:17
**antithetical (1)**
26:21
**anymore (2)**
49:16;104:7
**apart (1)**
41:11
**apologies (1)**
131:2
**apologize (7)**
5:18;56:6,21;70:1;
73:2;116:10;120:12
**apparently (3)**
14:24;97:12;100:1
**appeal (1)**
36:6
**appear (3)**
43:8;58:22;139:18
**appearance (12)**
56:5;63:2;70:11;
88:9;105:8,11;117:20;
129:17;136:19,20;
139:11,17
**appearing (7)**
55:18;58:1,3;63:5;
105:13;117:22;131:8
**appears (3)**
7:23;15:1;129:24
**applicability (1)**
147:6
**applicable (1)**
28:24
**application (2)**
65:17;110:21
**applies (1)**
61:25
**apply (1)**
119:2
**appoint (9)**
12:4;13:23;16:12;
26:14;32:12;33:22;
34:2;36:2;57:14
**appointed (4)**
14:6;29:10;30:6;
57:8
**appointment (8)**
7:21;28:25;31:1;
34:15;35:20,22,25;
56:11
**appreciate (25)**
6:21;23:20;44:14;
50:15;63:11;70:4;
75:15;76:19;79:15,18,

19;93:5;95:8,12;96:13;
101:15;103:25;111:3,
3;123:11;125:20;
132:16;141:7;153:21;
154:19
**appreciated (4)**
23:21;56:19;76:20;
154:4
**appreciation (1)**
117:23
**appropriate (11)**
12:6,22;38:21;44:4;
57:9;61:5;62:6;123:25;
135:9;142:11;146:12
**approval (5)**
35:18,19;45:12;
50:20;78:16
**approved (2)**
64:9;89:22
**approves (1)**
68:11
**approving (1)**
132:7
**approximately (4)**
19:11;106:24;112:3,
9
**April (6)**
11:14;23:18;25:24,
25;26:5;92:5
**arbitrate (1)**
110:12
**Area (1)**
86:18
**Arguably (1)**
81:13
**argue (9)**
38:17;50:7;55:7;
93:18;101:18;117:14;
138:16;147:6;152:19
**argued (5)**
34:10;59:6;92:18;
120:3;138:2
**arguing (4)**
17:6;55:12;72:13;
76:11
**argument (29)**
5:15;6:20;7:3;21:19;
29:3;38:20;40:11;
47:15;49:4;50:20;
52:20;56:1;61:12;
62:12;63:20,24;69:23;
86:6;88:7;96:6,8;
104:8;109:20;120:7;
140:17;141:19,23;
151:24;154:9
**arguments (11)**
5:10;27:3,3;39:17;
50:9,12;61:22;76:11;
140:20;148:4;152:19
**arises (1)**
145:22
**arising (2)**
65:8;69:9

**around (11)**
67:8;77:24;84:20;
87:22;88:2,22;90:9;
116:18;122:20;148:13;
152:7
**Arriva (1)**
66:18
**arrived (1)**
118:11
**arrow (1)**
72:5
**art (1)**
87:7
**article (4)**
28:1;49:19;50:1;
90:23
**articulate (1)**
152:1
**aside (4)**
5:12;26:9;85:8;
102:9
**aspects (1)**
146:17
**aspirational (1)**
142:20
**assert (3)**
146:24;147:19,20
**asserted (1)**
64:14
**asserting (1)**
146:10
**asserts (1)**
145:17
**assessment (1)**
82:14
**assign (1)**
147:25
**assigned (2)**
113:14;147:18
**assignment (1)**
117:12
**assistant (1)**
149:6
**associated (4)**
78:14;81:13,14;
89:23
**assumable (1)**
64:25
**assume (10)**
30:5,20;34:8;66:14;
67:13;68:23;106:9;
136:2;143:19;146:16
**assumed (10)**
65:2,8;69:19;139:24;
144:24;145:2,10,11;
146:6,14
**assumes (2)**
67:25;69:12
**assuming (8)**
52:15;132:4;137:20;
146:17,22;148:22,25;
150:3
**Assumption (10)**

65:6,22;68:11,25;
69:1,4;139:21;140:2,3;
148:9
**assurances (1)**
97:16
**assured (1)**
125:17
**at-hand (1)**
14:10
**attached (1)**
28:7
**attachments (1)**
32:23
**attack (1)**
31:11
**attacked (1)**
91:4
**attacks (1)**
38:1
**attempt (2)**
14:14;103:1
**attempts (1)**
37:10
**attendance (2)**
6:23;56:4
**attendants (1)**
44:11
**attention (8)**
18:20;34:12;44:3;
88:17,20;89:10;
101:16;134:10
**attest (1)**
131:16
**Attestor (1)**
113:15
**attorney (8)**
18:10,15;90:15,15;
91:15;93:11,12;130:13
**attorneys (15)**
19:7;48:14,18;52:15,
21;75:17;78:18;91:4;
97:12,12,16;99:18,18;
100:17,22
**attract (1)**
78:25
**attracting (1)**
94:7
**attracts (1)**
61:4
**atypical (1)**
80:23
**audience (3)**
103:9;104:14;117:1
**audio (29)**
18:6,12,13,19;19:19,
20;20:12,13,14;24:18;
25:10;37:16;40:4,13,
20;41:16,19,20,23;
42:3,6;48:21;49:15;
74:16;138:1;142:24;
144:11,17;145:5
**audit (2)**
22:24;41:7

**authority (3)**
87:10;109:24;123:24
**authorize (1)**
29:22
**authorized (2)**
66:6;67:3
**automatic (1)**
131:23
**availability (1)**
109:1
**available (3)**
39:8;43:5;99:2
**avoid (4)**
63:23;78:9;81:18;
95:1
**avoided (1)**
79:25
**aware (8)**
13:16;18:11,14;
44:23;82:7,10,15;
132:14
**away (3)**
76:2;116:9;136:2
**awful (1)**
107:5

**B**

**back (38)**
6:23;8:17,18;18:3;
21:20,24;22:4;24:12;
25:24;37:10;44:11;
48:17;51:23;52:5;
53:23;61:21;74:17,22;
86:10;93:2;96:9;
102:13,16;103:9;
104:11,14;122:8;
126:17,18;127:17;
129:3;130:22;137:7;
140:22;142:8,14;
146:13;153:9
**backed (1)**
20:3
**backstop (5)**
118:22;119:8,10,12,
18
**backwards (1)**
150:25
**bad (8)**
20:22;35:23;80:5;
90:8,22;91:24;92:11,
20
**bag (2)**
32:11;82:3
**Baghdadi (2)**
112:16;127:7
**Baker (1)**
91:16
**BakerHostetler (1)**
43:25
**balance (2)**
7:4;139:2
**ball (1)**

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 160
of 185

95:11
**ballot (9)**
9:17,19;11:7,8;16:3;
21:10,11,12;43:22
**balloting (1)**
27:8
**ballots (24)**
7:25;8:19;9:10,13,
24,25,25;10:20;11:13,
19;12:11;16:4;18:22,
23;20:5;21:23;28:9,14;
37:25;39:13;41:3,7;
44:2;47:3
**banging (1)**
109:6
**bankruptcies (1)**
44:21
**Bankruptcy (41)**
19:22;31:4;32:10;
36:7;38:6;43:19;44:18,
25;45:3,14;66:20;67:2;
69:12;80:6;81:10;
82:20;86:9,10,11,13,
19,23,23;87:11,15,18;
88:10,11,14;92:7;
110:25;112:15;121:11;
132:7;145:24;146:2,7;
151:2;152:5;155:6,11
**bar (1)**
19:6
**barking (1)**
115:6
**Barr (1)**
93:11
**based (17)**
7:22;10:5;28:23;
29:2;31:13;35:13;
50:25;76:12,14;82:14;
89:18;96:24;113:15;
131:20;137:3,10;146:4
**basic (2)**
80:12;137:21
**basically (2)**
61:3;109:14
**basis (2)**
30:15;83:19
**Baupost (1)**
113:14
**Bay (1)**
86:18
**BCI (1)**
99:6
**become (5)**
15:15;120:4;121:6,
12;124:20
**becoming (1)**
121:21
**Bee (1)**
90:23
**begin (2)**
121:24;146:15
**beginning (5)**
98:18;114:21;122:2;

148:23;150:1
**behalf (10)**
56:7;58:1;63:5,8;
105:13;107:2;117:22;
126:24;131:8;136:22
**behave (1)**
48:5
**behind (1)**
69:13
**belabor (1)**
129:5
**belief (1)**
124:19
**beneficial (1)**
106:18
**Benefit (3)**
71:6;72:16;102:1
**best (13)**
14:7;26:21;30:15;
32:15;33:20;58:7;74:2;
78:20;92:2;94:24;
127:8;149:5;150:12
**bet (3)**
11:4;19:23;80:5
**better (10)**
12:18,20;17:15,16,
16;86:11,25;94:18;
104:19;134:16
**bewildered (1)**
155:15
**beyond (4)**
64:23;66:6;78:7;
126:7
**bidding (1)**
57:18
**big (5)**
46:19;73:12;90:11,
12;102:4
**billion (31)**
30:12;31:6;34:24;
49:6;81:10;84:6,6,8,8,
9;97:18;102:2,8;
108:16,17;112:1,3,5,6,
9;113:5,8,12,13,16,22,
24,24;115:1;118:14;
128:3
**billion-dollar (1)**
81:8
**binding (1)**
64:9
**bit (3)**
27:10;113:10;155:2
**bits (1)**
19:3
**blame (1)**
112:15
**bless (2)**
156:2,5
**block (1)**
129:9
**Bloom (4)**
91:10,13,15,22
**board (3)**

77:24;78:5;148:6
**Boards (1)**
136:23
**body (1)**
93:14
**boilerplate (1)**
124:23
**bondholders (1)**
79:4
**bonds (2)**
112:10,10
**bonuses (1)**
101:6
**both (9)**
21:20;32:4;34:6;
36:9;61:22;114:18;
115:7;128:5;144:23
**bottom (3)**
23:8;41:25;42:13
**bought (1)**
113:16
**bound (2)**
68:11,24
**box (2)**
97:1,2
**boxes (1)**
113:8
**BR (1)**
66:19
**Bray (23)**
51:3,16;52:1,16;
74:12;135:10;142:7,
21;143:5;144:1,4,7,10,
13,15,16;147:2,4;
148:3,7,18;150:4;
157:9
**breadth (1)**
66:4
**break (39)**
5:16;18:6,12,12,19;
19:19,20;20:12,13,14;
24:17;25:9;37:16;40:4,
13,20;41:16,19,20,23;
42:3,6;48:21;49:15;
57:20,21;74:6;88:15,
16;135:6;136:9;138:1,
9;141:10;142:24;
144:11;145:5;152:25;
153:3
**breaking (1)**
140:19
**breaks (1)**
141:17
**breast (1)**
45:4
**breath (1)**
77:9
**Bridge (1)**
83:17
**brief (4)**
43:4;101:16;118:24;
126:5
**briefly (2)**

29:8;54:6
**briefs (1)**
117:25
**bring (29)**
12:23;22:4,10;24:1,
12;26:1,3;35:11,11;
36:20,21;44:3;50:25;
53:7,25;55:25;74:23;
86:19;95:13;104:15;
122:14;126:13,14;
129:15;136:7,11;
139:4;144:7;153:9
**bringing (3)**
36:11;46:10;91:4
**broad (1)**
66:5
**broader (1)**
101:19
**broadly (1)**
67:12
**broke (1)**
150:22
**Brotherhood (1)**
90:18
**brought (13)**
13:2,2;25:25;31:24;
36:13;41:7;46:9,17,22;
90:3;92:10;93:16;
146:11
**built (2)**
119:10,11
**bunch (2)**
34:4;75:22
**burden (10)**
25:2;31:22;33:23;
34:17;35:8;37:1;82:24,
24,24;89:19
**burned (1)**
83:16
**bus (1)**
102:13
**business (6)**
77:2;81:23;108:21;
120:10,14;141:20
**busted (1)**
105:9
**buy (2)**
40:18;80:19
**buyers (1)**
81:4
**Bye (1)**
115:9

**C**

**c2 (4)**
33:19,25;36:1;37:3
**c2's (1)**
33:24
**Cabraser (2)**
115:11,25
**CAL (9)**
98:14;99:2,3,6,9,9,

13,14;100:2
**calculate (2)**
108:7,10
**calculated (1)**
16:22
**calculation (1)**
62:22
**calculations (1)**
97:19
**calendar (3)**
97:20;132:11;134:16
**CALIFORNIA (15)**
5:1;41:9;58:1;63:9;
64:6;66:21;74:18;
77:16;80:8;81:9;90:11,
25;91:1;94:14;151:1
**Call (17)**
5:3;16:2,4;18:17,20;
50:5;55:9,9,16;57:21;
74:2;84:1;92:8;131:15;
145:13;154:15;156:4
**called (4)**
9:17;44:7;116:9;
135:10
**calling (2)**
89:7;131:16
**calls (1)**
38:21
**came (1)**
48:6
**camera (3)**
22:6;131:3;145:6
**Camp (2)**
23:2;85:12
**Campora (4)**
112:17;115:11;
117:1,3
**can (145)**
6:5,18,25;7:4;8:21;
12:2;14:15;16:3;17:21,
22;22:3,4,15,17,18;
23:15;24:5,10,10,11,
11,11,11;36:8;37:4,15,
17,18;39:23;41:17,24;
42:22;50:7;53:3,11,12;
55:11;56:25;61:1,2,6,
18;62:10,13;67:13,21;
70:12,13,16,17,21,23;
71:3,17,18,18,21,22,
23;73:7,25;74:1;75:2;
78:12;81:3,11;86:3;
87:4,11,22;90:22;93:1;
94:5,21;95:15,17,18;
96:6;100:11,12,13;
101:22;103:19;104:6,
8,15,17,20;105:22;
108:7,10;111:6;
115:15,22,23;116:14;
117:16;118:12,13,17;
120:9;121:10,15;
122:10,21;123:1,7;
124:2,6;125:5;129:18,
18,20,21;130:10,10,16,

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 161
of 185

18,22;131:1,2,16,20;
132:17;135:11,12;
139:12,13;140:23;
142:1,8,9;144:4,15,16,
19;148:12,25;149:5;
150:10,16;152:19;
153:13;155:1,5

**candidates (1)**
41:11

**Canyon (3)**
138:15;139:9,21

**cap (1)**
59:6

**capital (10)**
29:16,18;30:12,17;
39:1;84:7,10;111:18;
112:1;133:2

**Capitol (2)**
90:25;91:1

**capped (1)**
59:14

**cards (1)**
114:13

**care (3)**
102:18;134:19;148:3

**careful (1)**
13:6;100:17

**Carquinez (1)**
83:17

**carried (1)**
25:2

**carry (1)**
114:16

**case (42)**
12:2;13:5,9,14;
26:11,18,22;27:9;
28:24,25;29:5,7;31:12;
34:5,13,13,23;35:5,16,
24;37:3;39:1;45:18;
49:5;56:19,25;57:10,
11,11;65:17;73:1;
101:23;104:11;107:12;
114:21,22;118:1;
119:5;125:13;132:24;
134:10;140:2

**cases (18)**
16:9;25:4;32:1,2,2;
34:4,7;44:18,25;45:4,7,
9,14;66:18;119:1;
121:15;124:23;132:1

**cash (5)**
78:12;99:22;113:25;
115:2;118:14

**casted (1)**
41:1

**casual (1)**
104:20

**categories (3)**
35:2,3;82:8

**category (3)**
6:23;8:5;52:1

**cause (12)**
36:21;37:23;38:7;

41:16;67:24;68:1,5,15,
16;78:15;85:15;152:6

**caused (3)**
23:2,11;83:5

**causes (7)**
65:4,7,10;66:2,22,
24;67:11

**causing (2)**
71:16;120:16

**caution (1)**
72:25

**Center (2)**
45:1,14

**central (1)**
81:21

**CEO (2)**
111:9;112:11

**certain (4)**
32:13;50:21;101:24;
105:13;123:18;148:11

**certainly (9)**
14:6;15:16;54:23;
63:22;65:20;143:14;
146:2;148:13;149:14

**chain (1)**
33:2

**chair (1)**
78:5

**challenge (2)**
19:5;75:17

**challenges (2)**
30:1;112:11

**chance (2)**
135:25;136:8

**change (13)**
10:21;14:3,22;15:19;
17:8;20:23;21:15,16;
22:21;50:25;59:12;
77:3;85:17

**changed (1)**
80:1

**changes (3)**
54:6;77:23;106:2

**channels (1)**
44:4

**Chapter (8)**
19:22;25:4;26:11;
31:3,4;85:3;108:5;
132:1

**charge (1)**
56:20

**charged (1)**
109:1

**charges (1)**
58:24

**chase (1)**
146:8

**checked (1)**
97:20

**chessboard (1)**
90:14

**choice (2)**
20:8;96:10

**C-hooks (1)**
83:23

**choose (5)**
88:19;89:9;103:3,3;
121:4

**chooses (1)**
80:17

**chose (4)**
21:16,22;39:2,22

**circles (1)**
122:20

**Circuit (3)**
66:10;89:6,6

**Circuit's (2)**
67:2,3

**circulate (1)**
52:14

**circulated (1)**
52:13

**circumstance (1)**
124:22

**circumstances (4)**
28:24;29:1;30:25;
94:24

**cite (1)**
137:22

**cited (3)**
32:4;34:6;119:1

**cites (1)**
32:8

**city (4)**
8:9,12;34:14;138:15

**civil (2)**
111:14;113:1

**claim (35)**
28:12;58:4,4;59:17,
25;60:2,3;61:3,25;
62:8;65:16,19,23,25;
69:9;98:14;99:7;
100:12;102:17,18;
125:17;133:16,21;
134:1,2;140:5;145:17,
18;146:4,5,5,9,10,21,
25

**claimants (13)**
45:7,8,10,20,21;
46:6;96:21;97:8;98:6;
100:4;103:17;106:20;
131:1

**claims (44)**
19:12,15;58:12;62:1;
64:3;65:4,7,10,11;
67:12,15;99:6,10,15,
25;100:7;102:7;103:2;
111:13;113:12,13,14,
20;118:15;131:21,23;
132:2,21,22;133:5,22;
136:23;137:14;144:22,
25;145:1,11,14,15,19;
146:2,3;147:18;149:22

**claims' (2)**
102:6,19

**clarification (1)**

58:19

**clarify (9)**
60:12;123:17,20;
124:5;137:9,11;147:9,
13;148:2

**clarifying (2)**
61:19;125:21

**class (4)**
38:13,14;62:5;64:16;
133:5,24;134:1,3,4

**clauses (1)**
79:20

**clear (16)**
25:19;29:2,22;30:16;
39:1;48:3;50:2;58:14;
59:18,21,22;99:18,21;
127:2;134:15;150:21

**clearance (2)**
88:22;89:5

**clearly (1)**
16:9

**Clerk (31)**
9:18;16:2,4;20:19;
21:15;27:15,25;33:13;
38:16;42:4,7;43:8;
47:4;48:5;62:24;63:1;
70:9,11,19;74:21,25;
105:7;117:20;136:10,
14,18;138:12,14;139:6,
10;144:13

**Clerk's (2)**
27:15;38:3

**click (1)**
72:5

**client (5)**
59:25;62:10;73:13;
126:16;138:19

**clients (13)**
10:2;36:16,16,17;
46:23;52:16;54:18;
91:9;131:10,19;132:9;
134:8;149:2

**clients' (1)**
131:21

**climate (2)**
77:3;87:16

**clock (1)**
74:6

**close (11)**
16:20;21:6,7;31:3;
41:12;43:15;74:17;
112:4;120:10,13;
141:20

**closed (2)**
122:15;133:9

**closely (1)**
78:20

**closing (4)**
39:17;44:13;76:8;
93:24

**CN (1)**
51:12

**Code (8)**

36:9;41:9;49:9;
65:14,15,21;88:21;
108:2

**coincidence (1)**
50:6

**collateral (1)**
31:11

**colleague (1)**
52:14

**colleagues (2)**
116:6;117:9

**combined (1)**
148:23

**ComEd (1)**
84:14

**comfortable (1)**
93:17

**coming (5)**
80:14;102:7;106:2;
115:19;132:15

**coming-together (1)**
46:12

**commended (1)**
118:3

**comment (2)**
42:10;43:14

**comments (8)**
23:21;57:16;60:21;
101:15;104:1;111:4;
115:8;123:12

**Commission (1)**
90:19

**commit (1)**
40:14

**committed (2)**
152:4,7

**committee (11)**
34:14,16;45:10,11,
22;46:11;51:4,16;58:2;
136:23;137:12

**committees (3)**
127:23;128:5;129:1

**committee's (1)**
148:16

**common (1)**
146:23

**commotion (1)**
123:13

**communities (1)**
83:8

**companies (1)**
113:18

**company (15)**
31:6;40:14;85:3,16,
20;86:2,11,24;88:1;
108:9;112:2,6,9,13;
154:24

**compare (1)**
44:17

**compensated (1)**
97:11

**compensation (1)**
112:20

Min-U-Script®

Case: 19-30088    Doc# 7809    eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 162
of 185

**(4) candidates - compensation**

**complain (1)**
10:20
**complaint (1)**
90:18
**complete (2)**
98:21;135:13
**completed (1)**
142:12
**completely (3)**
25:8,17;112:14
**completes (1)**
69:15
**completion (1)**
69:4
**complexity (1)**
154:19
**compliance (5)**
27:7;28:19;89:8,8,14
**complicated (2)**
105:23;152:13
**comply (2)**
88:8;124:12
**complying (1)**
89:16
**composed (1)**
33:14
**computer (1)**
109:11
**con (1)**
65:2
**concede (1)**
68:6
**conceive (1)**
26:7
**concept (3)**
80:12;102:10;147:2
**concern (5)**
9:11;19:5;86:8;
108:9;118:8
**concerned (4)**
23:15;43:22;52:10;
71:8
**concerns (6)**
72:20;73:1;87:12;
148:10,11,24
**concise (1)**
64:7
**conclude (8)**
35:21;50:3;100:10;
151:18;152:15;156:24;
157:2,4
**concluded (1)**
157:10
**conclusion (3)**
31:20;118:17,23
**conclusions (2)**
90:16;152:3
**conditions (1)**
124:8
**conduct (7)**
13:17;26:14;27:10;
33:5,6;36:3;89:12
**conducted (2)**

9:8;10:12
**confer (1)**
5:19
**confident (1)**
65:13
**confine (1)**
37:21
**confirm (12)**
14:17;15:15;20:21;
23:9;29:17;84:22;
106:10,12;120:3;
121:4;127:17;137:21
**confirmable (1)**
120:23
**confirmation (36)**
7:17;23:15;25:7;
26:2,15,18;27:6;29:2,
11,14,25;35:23;36:14,
14;39:14,18;40:24;
77:6;96:8,11;101:10;
105:19;110:6,17;
121:14;124:6,13,21;
127:21;129:7,11;
132:6;144:3;147:12,
13;153:21
**confirmed (9)**
35:17;86:1;93:24;
104:13;121:16;132:5;
151:5,19;155:5
**confirming (5)**
30:2;85:10,11;122:9;
124:19
**confirms (1)**
85:16
**conflict (1)**
38:4
**conflicts (5)**
92:9;93:8,8,9,17
**confused (2)**
95:25;155:13
**confusion (2)**
21:13;136:24
**congratulations (2)**
149:2;153:7
**Congress (4)**
65:13,13,19,25
**connect (1)**
88:17
**connected (1)**
77:18
**connection (7)**
27:4;48:3;79:13;
92:9;131:9;149:1;
152:24
**connections (2)**
81:18;152:13
**consequence (2)**
17:17;124:21
**consequences (1)**
29:12
**consider (10)**
8:5;9:6,19;77:10,19;
80:2;83:3;105:19;

106:15;110:6
**considerable (2)**
9:11;13:13
**considered (2)**
9:14;13:13
**considering (1)**
96:18
**consistent (6)**
43:19;104:9;124:18;
125:22;147:2,21
**construction (3)**
69:3,8,12
**consult (2)**
142:6,7
**Consulting (1)**
51:12
**contacts (1)**
19:8
**contained (1)**
99:14
**containing (1)**
97:2
**contemplate (1)**
69:18
**contemplated (1)**
69:1
**contending (1)**
80:24
**context (2)**
36:9;87:18
**continually (1)**
88:24
**continue (10)**
63:9;78:9;88:15,16;
90:4;94:25;95:4;98:23;
124:3;137:12
**continued (1)**
81:22
**contract (23)**
54:18;59:19,22;60:6,
10,13;62:4;64:25;65:9;
66:8,13,14;68:23;69:3,
12,19;140:2,3,4;
143:11;146:6,9,16
**contracted (1)**
10:6
**Contracting (1)**
58:1
**contractor (4)**
58:2;69:11,15;
139:24
**contracts (11)**
51:7;52:9;54:19;
64:22;65:2;140:5;
144:24;145:2,10;
146:14;148:9
**contrary (2)**
33:17;108:18
**contrast (1)**
41:6
**contribute (1)**
110:20
**contribution (9)**

51:6;144:22;145:1,
10,14;146:4,5,17,24
**control (6)**
78:8;85:19;87:16;
122:10;125:18;149:8
**convenience (1)**
135:5
**conveniently (1)**
92:5
**conversation (5)**
34:8;128:20,23;
131:20;143:25
**conversations (1)**
135:13
**convince (2)**
78:19;114:25
**coordinate (1)**
63:22
**coordinating (1)**
63:16
**copy (1)**
49:20
**corner (1)**
20:3
**Corning (1)**
45:4
**coronavirus (1)**
156:12
**corporate (1)**
80:3
**Corporation (3)**
71:6;72:17;77:23
**corrected (1)**
76:25
**cosmetic (1)**
23:8
**cost (1)**
108:20
**costs (1)**
58:24
**council (2)**
8:9,12
**councilwoman (1)**
8:13
**counsel (10)**
5:6;31:16;36:18;
46:23;52:18;91:10,16;
140:11;148:12;151:25
**count (7)**
8:4;39:16;40:3;41:2;
65:15;94:3;154:11
**countdown (1)**
36:13
**counted (2)**
17:4;40:7
**counterparty (1)**
68:24
**counting (1)**
39:13
**County (1)**
131:25
**couple (10)**
5:5;43:16;44:7;

58:21;105:17;112:7;
113:5;128:18;136:2;
147:8
**course (8)**
51:10,19;108:13;
117:23;134:19;137:14,
17;145:15
**Court (468)**
5:3,4,25;6:3,9,13,16,
22;7:9;8:2,9,12,21,22,
24;9:6,12;10:9,14,16;
11:16,18,21,23;12:13,
16,20,22,23;13:8,11,
20,22;14:11,17;15:4,6,
7,10,12,14,25;16:11,
13,16,21,24;17:3,19,
21,23,25;18:7,11,14,
18,25;19:13,16,19,21;
20:11,14,24;21:3,24;
22:2,8,9,11,13,16,18;
23:20;24:3,5,7,9,20;
25:11;27:6,9;29:21;
30:5,10,20;31:2,16,21,
23;32:3,4,6,10,10,19;
33:6,9,11,20;34:16,21,
24;35:4,6,8,10,12,20,
25;36:4,6,7,20,21,24;
37:6,15,17,19;39:12,
15,20;40:3;41:21,24;
42:1,6,8,12,16,17,20;
43:2,10;44:9,20,23;
46:1,24;47:13,22,25;
48:22,24;49:11,13,16,
21,25;50:3,19,23;
51:10,24;52:4,11;
53:14,16,20;54:10,20,
24;56:15,23;57:5,16;
59:25;60:5,8,22;61:7,
16;62:2,9,16,18,20,25;
63:3,25;64:9;66:19,20;
67:2,6,8,21;68:11,12,
18,20;69:5,11,21;70:3,
6,10,12,20,22,24;71:2,
4,10,15,17,19,21;73:6,
12;74:22,24;75:1,4,7,9,
12,16;76:6,16;77:7,12,
19;78:17;79:9,16,19;
80:1,12,16,21;81:2,25;
83:12;84:11,16,20,25;
85:3,6,10;86:5,8,10,25;
87:2,4,6,8,9,14,16;
88:11,11,14,18,19;
90:17;91:5,12,14;
92:10,12,17,21,22;
93:1,4,6,16;95:3,6,8,
19;96:4,16;97:24;98:3;
101:14;103:11,15;
104:4,6,20,23;105:1,3,
9,21,23;106:14,17;
107:3,8,11,20,23;
108:7;109:3,5,8,11,13,
17,19,23;110:2,4;
111:1,3,7;115:5,18,21;

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 163
of 185

116:1,3,5,13,17,21,24;
117:4,6,8,23;118:4;
119:22;120:9,11,16,25;
121:3,22,25;122:7,22;
123:2,5,6,13,16;124:9,
15;125:7,20;126:3,9,
19,21,22;128:9,17,22;
129:4,12,14,18,22;
130:8,11,25;131:5,7,
11,13,15,24;132:7,12,
18,20,23;133:1,6,12,
17,18,19,25;134:2,6,
11,24;135:2,15;136:3,
12,15,20;137:5,17,19;
138:5,7,13,17,22,25;
139:12,15;140:7,10,14,
19;141:3,6,8;142:9,17,
19,25;143:3,5,12,15,
22,24;144:7,10,14,17;
145:4,12,24,24;146:2,
7,13,20;147:1,11,24;
148:3,12,25;149:6,10,
13,18,24;150:8,14,20;
151:2,8,15;152:5,23;
153:14;154:5,7,13;
155:15,18,20,24;156:1,
5,8,9,11,17,20,22,23,
24;157:1
**courtroom (5)**
79:25;83:13;104:15;
105:9;130:19
**courtrooms (1)**
81:19
**courts (1)**
38:14
**Court's (10)**
13:4,6;15:5;33:16;
34:12;38:18;47:8;56:8,
10;132:11
**cover (1)**
34:10
**covered (1)**
134:25
**covers (1)**
143:6
**COVID (5)**
94:15;154:7,8;156:2,
6
**COVID-19 (1)**
111:12
**CPUC (6)**
78:4,22;82:15;91:19;
94:10;111:20
**created (2)**
33:24;114:14
**creating (1)**
72:11
**credibility (1)**
20:18
**credible (1)**
33:15
**creditor (8)**
34:15;35:16;58:14,

17;60:16,17;85:20;
132:4
**creditors (20)**
7:24;14:8,22;16:8;
26:22;32:15;33:21;
51:4;58:12;59:4,9,9;
62:4;86:12,14;108:2;
119:5,8;155:9,10
**creditor's (2)**
32:24;129:1
**critical (2)**
102:23;125:1
**critically (1)**
92:18
**criticized (1)**
27:10
**cross (1)**
43:8
**cross- (1)**
43:5
**cross-examine (1)**
91:17
**cross-examining (3)**
82:1;91:19;92:1
**crowded (1)**
101:3
**Crutcher (1)**
136:22
**crux (2)**
14:20,21
**culprit (1)**
120:17
**cumbersome (1)**
111:20
**cure (5)**
64:23;65:1,22;68:12,
14
**cured (2)**
69:10,17
**cures (1)**
67:25
**current (2)**
10:24;96:23
**customer's (1)**
78:7
**cut (4)**
96:5;149:6,16;
156:22
**cynical (1)**
155:4

**D**

**daisy (1)**
33:2
**dam (1)**
112:17
**damage (2)**
23:3;42:14
**damages (6)**
97:10;107:19;
108:16,20;109:1,16
**dare (1)**

89:13
**date (23)**
18:22;19:6;25:24;
59:3,6,15;77:4;88:14;
97:2;98:18;108:3;
113:7;121:1,7,24;
122:3,10;123:23;
124:7,23;128:8;132:6;
151:13
**David (3)**
138:14;139:6,14
**day (13)**
9:2;30:2;50:17;
95:12;103:18;115:3;
121:16,23;123:9;
142:14;144:14;145:22;
153:7
**days (17)**
13:3;16:1,18;25:6;
35:19;39:11,14,16,19;
40:3;46:17;59:7,15;
79:21;124:24;127:12;
154:16
**dead (1)**
121:14
**deadline (10)**
8:1;9:14,17,19;13:3;
20:3;26:19;43:25;
46:17;89:2
**deal (12)**
58:19;73:13;80:2;
81:17;89:20;101:10;
110:24;112:21;114:23;
115:2;128:13;142:21
**dealing (3)**
68:21;84:4;146:14
**deals (1)**
64:21
**dealt (1)**
68:22
**death (2)**
77:14;108:24
**debt (10)**
34:18,22,24;35:7;
36:2;49:6;112:4,5,20;
115:3
**debtor (41)**
32:22;34:17;39:22;
41:17;45:10,12;46:13;
58:7,11,12,20;59:19;
60:9,12,15,19;65:1,8,8;
67:13,25;68:2,4,12,22;
69:11;82:25;84:1;
88:13;89:10;97:12;
107:13;108:4,6;
118:24;127:19,20;
128:1,4;134:17;146:16
**debtor-creditors (1)**
87:15
**debtor-in-possession (1)**
49:5
**debtors (22)**
24:24;29:15;30:11;

46:10;54:7;72:18,20;
81:17;82:3;88:3;91:17,
23;94:10;97:17;103:1;
106:4;107:15;109:15;
110:20;146:8,9,25
**debtors' (9)**
5:6;33:5,7;63:12;
64:24;91:19;99:18;
100:17,22
**debtor's (5)**
33:25;58:16,23;
66:14;134:12
**debts (2)**
34:1,19
**deceiving (1)**
113:10
**December (3)**
98:19,20,23
**decide (9)**
6:14;61:13,21;90:7,
22;91:25;92:12,21;
137:21
**decided (3)**
61:14;93:12;105:24
**decides (1)**
32:11
**decision (9)**
15:19;61:13;101:6;
137:15;141:20;151:17;
152:1,2,8
**decisions (1)**
118:1
**declaration (8)**
9:18;28:8,11,19;
91:11,16;97:3;106:23
**declarations (9)**
8:22,22,25;9:1,6,8;
14:9;47:5;48:18
**declined (1)**
111:15
**deemed (3)**
82:16;132:8,10
**default (9)**
65:5,23;66:12,16;
67:23;68:1,2,9;69:10
**defaults (1)**
65:8
**defeat (1)**
37:11
**defect (3)**
69:9,15,16
**defenses (4)**
147:15,19,23,24
**defensive (1)**
21:4
**defer (3)**
73:14;125:4;150:20
**deferred (2)**
52:19;150:1
**defined (2)**
65:12;66:2
**defines (1)**
65:11;67:11

**definition (2)**
67:15;68:1
**degree (1)**
100:24
**delay (6)**
36:10;42:7;121:23,
24;122:3;152:6
**delayed (1)**
31:4
**delaying (1)**
122:5
**delays (1)**
121:1
**deleterious (1)**
29:20
**deliberate (1)**
23:6
**delved (1)**
93:6
**demand (1)**
111:15
**demonstrate (1)**
25:1
**demonstrated (5)**
11:12;26:16;28:10;
89:11,19
**demonstrates (1)**
40:24
**demonstrating (1)**
27:7
**denied (2)**
9:20;26:17;153:24
**denies (1)**
35:10
**deny (1)**
101:10
**Department (1)**
63:5
**departments (1)**
83:7
**depend (1)**
102:14
**dependent (1)**
97:16
**deputy (2)**
105:10;130:19
**derail (2)**
36:15,21
**described (3)**
77:13;93:25;103:7
**deserve (1)**
97:19
**designate (2)**
27:4,18
**designated (1)**
65:2
**designation (1)**
37:11
**designed (4)**
25:9,17;94:5;103:22
**desire (1)**
40:18
**despite (2)**

Min-U-Script®

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 164
of 185

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(6) courtroom - despite

25:19;107:13
**destroyed (1)**
85:14
**determination (1)**
97:9
**determine (4)**
22:25;23:1;97:14;
123:25
**determined (3)**
69:3;131:23;133:11
**determining (1)**
23:2
**detest (1)**
117:10
**detriment (2)**
26:10;95:4
**devastating (1)**
29:13
**develop (1)**
128:5
**developments (1)**
74:11
**Dewey (3)**
32:2;34:12;35:5
**difference (2)**
119:3,21
**different (9)**
20:11,12;21:6;44:21;
47:1,5;78:1;86:5;102:9
**differently (2)**
87:15;95:3
**difficult (5)**
83:14;92:17;111:19,
20;112:11
**difficulties (1)**
131:14
**difficulty (2)**
45:19,20
**dilatory (2)**
46:10,16
**direct (2)**
20:19;45:16
**directed (2)**
31:2;56:5
**directing (1)**
56:11
**direction (5)**
55:19;56:8;76:20,24;
91:8
**directive (1)**
56:10
**directly (4)**
5:15;28:13;50:19;
82:18
**disadvantage (1)**
118:21
**disagree (4)**
17:5;30:9;83:1;86:8
**disagrees (1)**
144:4
**disappointed (1)**
118:6
**discharged (4)**

68:15;145:20;
146:10,11
**disclose (1)**
18:9
**disclosed (5)**
38:3;47:5;60:16;
93:8,9
**disclosure (1)**
35:18,19;92:8,13
**discount (4)**
97:8;100:13;113:3,
16
**discrete (1)**
60:23
**discretion (2)**
39:12,15
**discretionary (2)**
34:5,10
**discussed (6)**
24:14;63:11;64:4,20;
93:3;105:25
**discussing (2)**
140:25;147:3
**discussion (8)**
51:25;72:7,11;
102:20;105:19;122:24;
126:6;149:16
**discussions (2)**
51:2;83:25
**disenfranchise (1)**
41:16
**dishonesty (2)**
23:6;38:1
**dismiss (1)**
128:14
**dismissed (1)**
127:25
**dismissing (1)**
128:7
**disorder (1)**
108:25
**disparaged (1)**
48:16
**dispositions (1)**
137:23
**dispute (3)**
64:23;65:18;106:4
**disputes (1)**
60:12
**disregard (1)**
7:12
**disrupt (1)**
29:3
**dissected (1)**
35:7
**distress (1)**
108:24
**distribution (1)**
99:22
**district (3)**
36:6;39:1;66:20
**disturb (1)**
113:7

**divide (2)**
5:19;76:9
**divided (1)**
84:13
**dividend (1)**
79:2
**dividends (2)**
101:1;114:11
**dividing (1)**
24:15
**Docket (8)**
18:22;97:22;106:24;
118:25;134:15;139:9;
150:9;152:17
**document (7)**
38:18;40:23;49:2;
98:13;105:15,23;110:8
**documentation (6)**
125:16;142:11,24;
144:2,5;150:4
**documented (2)**
96:14;142:15
**documenting (1)**
142:19
**documents (7)**
23:18;97:2,4,5,5;
101:22;151:20
**dog (2)**
115:5,6
**dollar (4)**
84:6;100:6;102:2;
113:17
**dollars (22)**
30:13;34:2,18,23,25;
36:1;68:2;69:14;77:24;
82:6;84:6;98:7,9,17,
22;99:8;112:3,5;113:5,
12,22;128:3
**Donato (8)**
97:13;108:13,15;
109:19;127:16,24;
128:13;129:8
**Donato's (3)**
97:9,20;108:14
**done (15)**
8:20;14:8;16:6,10;
23:15,16;33:5;38:11;
41:25;79:7;88:5;
128:13;130:7;152:18;
154:16
**doomed (1)**
88:6
**door (2)**
86:14;155:6
**doorstep (1)**
36:14
**dots (1)**
88:18
**doubt (1)**
61:17
**Dow (1)**
45:3
**down (16)**

12:9;14:11;39:7;
40:9;52:1;53:3,3,5,23;
74:17;81:22;87:22;
102:15;104:24;114:10;
127:15
**downward (1)**
114:5
**drafting (5)**
134:21,23;148:21,
21,22
**draw (2)**
34:12;90:16
**dress (1)**
104:24
**drove (1)**
83:17
**due (1)**
91:8
**Duff (1)**
38:4
**Dunn (1)**
136:22
**duplicate (1)**
9:25
**duplication (1)**
63:23
**during (3)**
111:10;119:23;
141:17
**dynamic (1)**
154:22

**E**

**Eagle-Picher (1)**
45:3
**earlier (14)**
9:3;26:19;39:21,25;
45:15;47:18;50:22;
51:2;77:9;88:9;90:14;
104:3;105:25;121:7
**early (5)**
12:11;25:24,25;49:4;
141:23
**earned (2)**
98:17,23
**easier (1)**
120:2;149:5
**easiest (1)**
151:15
**easy (3)**
15:24;75:13;124:25
**edits (1)**
73:1
**effect (5)**
29:24;30:15;41:18;
118:10,12
**effective (23)**
29:17;59:5,15;98:18;
108:3;120:4,24;121:1,
7,12,16,21,23;122:3,
10,15;123:23;124:7,20,
23;127:25;128:8;132:6

**effectively (4)**
120:5,5;122:5;
148:24
**effectiveness (1)**
124:8
**efficient (1)**
30:13
**efficiently (2)**
16:6;118:2
**effort (6)**
11:5;29:3,16,20;
30:15;81:11
**efforts (6)**
63:12;75:15;79:15,
18;83:6;157:7
**eight (1)**
111:25
**eighteen (1)**
113:11
**eighty-eight (5)**
36:22;41:12,15;
118:17;122:1
**eighty-nine (1)**
99:7
**either (10)**
9:13;28:13;100:9;
116:24;119:25;128:24;
133:11;138:2,22;
140:23
**election (2)**
19:22,22
**elections (4)**
41:7,9;93:13,14
**Electric (1)**
77:23
**Electrical (1)**
90:18
**electricity (2)**
111:15,17
**element (1)**
38:7
**elements (2)**
37:21,22
**eleven (1)**
97:2
**eleventh (1)**
77:5
**eleventh-and-half (1)**
77:6
**eliminate (1)**
86:19
**else (15)**
7:9;11:1;13:12;
17:17;61:17;100:17;
104:10;117:14;119:18;
121:13;129:8;141:14;
150:7;154:9;156:3
**else's (1)**
95:4
**elsewhere (1)**
145:25
**email (5)**
129:2,3;130:18,19;

Min-U-Script®

Case: 19-30088   Doc# 7809   Filed: 06/05/20   Entered: 06/05/20 19:11:24   Page 165
of 185

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(7) destroyed - email

138:14

**emotional (1)**
108:24

**emphasize (2)**
64:1,17

**encourage (1)**
123:4

**end (15)**
30:18,18;33:3;42:9;
47:10;72:10;74:1;
91:22;92:22,24;97:21;
103:18;130:23;144:18;
153:19

**endeavor (1)**
76:21

**ending (1)**
99:10

**endorse (1)**
123:9

**endorsed (1)**
79:6

**energy (4)**
77:16;79:23;95:8;
141:11

**engaged (4)**
11:15;29:16;83:25;
91:1

**engaging (1)**
76:22

**enjoy (1)**
101:5

**enormous (2)**
17:11;151:20

**enough (8)**
20:22;30:1;54:22;
62:9;81:10;84:21;
98:21;103:17

**ensure (8)**
15:4;78:11;80:9;
82:25;88:18;89:5;95:1;
118:13

**ensuring (1)**
93:14

**enter (2)**
45:21;124:6

**entered (5)**
29:14,15;56:11;
57:13;124:13

**entire (2)**
23:13;140:2

**entirely (2)**
5:20;26:23

**entirety (1)**
145:11

**entitled (12)**
37:9;58:17;59:17,23;
60:6,10;62:3;90:24;
119:9,18;155:9,10

**entrenched (1)**
78:12

**entry (1)**
132:7

**envy (1)**

155:15

**epidemic (1)**
111:12

**equally (1)**
29:13

**equitable (3)**
97:15;101:11;107:16

**equity (9)**
30:12;31:5;32:15;
33:21;40:14,15;
114:14;115:2;122:22

**equivalent (1)**
118:14

**erosion (1)**
108:23

**especially (2)**
28:24;48:17

**essentially (2)**
22:23;120:14

**establish (2)**
107:16;109:15

**estate (2)**
32:16;33:22

**Estela (1)**
131:8

**estimate (4)**
97:13,14;108:14;
109:15

**estimated (1)**
97:10

**estimation (5)**
41:14;127:18,22,24;
128:7

**evacuate (1)**
83:15

**evaluate (1)**
82:8

**eve (2)**
26:2;29:1

**even (29)**
9:3;12:11;13:13;
15:17;17:12;20:22;
21:9;31:4;37:3;41:1,8,
10;43:21;55:12;57:1,6;
72:12;82:8;94:24;
96:23;105:5;128:12,
15;130:21;132:25;
149:18;156:7,11,15

**evening (2)**
115:9;150:9

**event (4)**
47:17;56:10;147:23;
149:21

**events (1)**
5:8

**eventualities (2)**
77:13;94:17

**everybody (9)**
6:18;29:13;86:22;
96:15;116:11;119:17;
144:5;154:9;156:3

**everybody's (1)**
13:7

**Everyone (12)**
11:1;52:14;93:20,20;
94:2;95:4;100:16;
116:5;127:8;142:15;
153:6,19

**everyone's (1)**
74:14;147:5,21

**evidence (39)**
10:9;19;11:12;12:13,
14,23,23;13:15;15:22;
18:12,19;19:4;26:25,
25;27:23,24;30:23,25;
32:11,12;33:12,13;
35:4,12;36:20;37:25;
38:5,16;42:16;48:16;
57:6,6,9,12;97:17;
108:17,18,19;109:14

**evidentiary (3)**
31:22;35:13;37:1

**exacerbating (1)**
85:21

**exact (1)**
140:10

**exactly (7)**
74:7;103:20;106:7;
121:8;137:18;138:4;
142:7

**examination (3)**
15:18;31:3;43:6

**examine (1)**
43:8

**examined (2)**
14:18,20

**examiner (37)**
7:21;12:4;13:24;
14:6;15:17,22;16:14;
20:20;22:20;26:14;
28:25;29:9,20;30:6,14,
18,20;31:1;32:12,21;
33:4,22;34:3,15;35:20,
22,25;36:3,10,12;
38:21;40:8,12,16;
55:19;56:11;57:8

**example (6)**
9:24;32:14;47:19;
69:2;112:25;146:7

**examples (2)**
28:4;37:23

**exceed (2)**
34:2;113:4

**exceeds (1)**
34:23

**except (3)**
17:15;81:10;154:1

**excess (3)**
34:18;99:8;108:15

**exchange (1)**
61:19

**excluded (1)**
41:3

**excuse (8)**
59:12;95:11;103:8;
105:7;107:3;115:8;

126:10;138:12

**executive (1)**
77:24

**executives (1)**
101:5

**executory (13)**
51:7;52:9;54:18,18;
64:22,25;66:7;68:21;
143:11;144:23;145:2,
9;148:9

**exercise (2)**
58:15,17

**exhausted (1)**
141:12

**Exhibit (4)**
97:22;98:12;99:1,6

**exhibits (3)**
25:25;27:21;48:17

**existence (1)**
91:18

**exit (6)**
23:25;78:12,21,24;
80:10;94:3

**expect (6)**
48:5;93:23;99:19;
100:11;101:23;149:14

**expectation (5)**
78:23;86:14;93:25;
102:24,24

**expecting (2)**
78:1;154:15

**expenditures (2)**
111:19;112:2

**expenses (1)**
108:21

**experienced (3)**
57:1;128:18;154:20

**experts (2)**
82:11;94:23

**explain (3)**
46:3;55:12;148:13

**explaining (1)**
55:18

**explanation (1)**
30:22

**explanatory (1)**
25:1

**exposed (1)**
78:13

**exposure (1)**
67:14

**expression (2)**
23:21;95:9

**expressions (1)**
23:22

**extemporary (1)**
139:24

**extend (1)**
87:1

**extended (1)**
151:6

**extent (12)**
63:10;73:18;125:18;

135:21;142:18;144:25;
145:16;146:3,7;
147:17;149:13;155:12

**extra (1)**
143:16

**extraordinarily (1)**
66:5

**extraordinary (1)**
25:2

**extreme (1)**
28:21

**extremely (4)**
29:20;32:2;33:15;
112:11

**eye (1)**
47:7

**F**

**face (5)**
77:3;81:23;94:9,9;
111:9

**Facebook (2)**
28:1;43:23

**faced (2)**
66:13;111:25

**faces (1)**
80:3

**facie (1)**
13:14

**facilitate (1)**
54:21

**facing (2)**
111:21;114:19

**fact (18)**
26:3;28:10,17;31:12;
33:13;40:6,6;62:3;
68:2;73:16;83:3;89:18;
92:4,4;94:3;96:23;
119:13;125:25

**factors (1)**
78:7

**facts (8)**
66:11,15;68:8;69:7;
90:5,7,17;92:21

**factual (4)**
32:11,13,16;43:16

**fail (1)**
88:6

**failed (4)**
31:22;34:17;37:1;
107:15

**fair (11)**
36:15;43:10;54:21;
67:19;69:18;90:19;
97:15;101:11;107:16;
108:11;147:25

**Fairfield (1)**
85:14

**fairness (2)**
39:20;113:18

**faith (14)**
35:23;36:4;78:11;

Min-U-Script®

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 166
of 185

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(8) emotional - faith

89:25;90:8,8,22,22;
91:24,24;92:11,11,19,
20
**fall (4)**
41:7;67:15;112:24;
122:16
**familiar (1)**
138:18
**families (1)**
141:22
**family (2)**
83:17;101:2
**fantasy (1)**
94:7
**far (7)**
23:15;29:5,6;74:11;
123:4;147:4,7
**fatally (1)**
101:8
**fault (4)**
39:23;70:3;78:5;
129:23
**faulting (1)**
40:1
**favor (7)**
26:20;31:14;81:6;
117:9;118:18,21;141:4
**favorable (4)**
64:15;119:6;135:9;
142:1
**feasibility (4)**
76:23;77:1;87:7,20
**feasible (7)**
76:12,14,24;77:21;
82:25;87:21;157:2
**Federal (8)**
45:1,14;63:5;71:7;
72:17;98:1;100:2;
103:14
**feedback (5)**
70:24;71:11,24;
72:11;73:25
**feel (12)**
17:9,15,16,16;23:4;
37:8;50:8;90:2;93:14,
17;125:23;126:1
**feeling (1)**
20:6
**fees (2)**
58:24;119:11
**feet (2)**
13:12;88:22
**fellow (1)**
155:7
**fellows (1)**
114:14
**felon (1)**
109:2
**few (5)**
9:1;79:21;85:14;
128:19;151:24
**fewer (1)**
41:11

**fiduciary (1)**
56:13
**field (1)**
119:19
**fifteen (6)**
7:4;8:13;39:11,14,
16;40:2
**fifteen-day (1)**
151:17
**fifth (1)**
101:3
**fifty-nine (1)**
81:10
**fight (1)**
114:6
**fighters (1)**
83:7
**figure (7)**
39:5;43:20;73:18;
128:1;130:14;137:19;
144:20
**file (11)**
13:5,8;39:2;40:3;
55:12;56:16,22;72:13,
19;132:9;139:8
**filed (31)**
18:20;25:6,18;26:6;
27:21;39:9,10;45:23;
47:21;49:2;51:4;54:7;
58:5,8;63:8;90:18;
91:11;97:23;105:15;
107:15;110:8;111:13;
112:8;117:25;131:10;
132:1,14;138:23;
139:20,21;146:4
**files (2)**
35:6;69:12
**filing (4)**
23:22;39:2;56:7;
73:13
**filings (3)**
113:4,5;153:23
**final (10)**
42:10;59:16;60:14;
64:9;96:21;97:5;
100:11;122:16;133:11;
151:16
**finally (2)**
40:21;155:7
**financial (1)**
94:15
**financing (3)**
49:6;151:12,13
**find (8)**
20:19,21;32:14;
47:10;54:1;73:24;
114:24;123:13
**finding (5)**
31:21,23;32:16;
33:20;109:20
**findings (4)**
36:25;37:1,2;152:3
**finds (1)**

69:16
**fine (16)**
7:8;31:8;35:12;
53:13,18;61:20;93:1,8,
15,16;104:22,24;
125:20;128:14,21;
151:10
**Finestone (23)**
52:22;53:8,10,12,15,
18;55:5,8;56:1;57:19,
24,25;60:2,7,9;61:1,16,
17;62:9,14,15,17,19
**finger (1)**
145:5
**finish (1)**
15:15
**finished (2)**
31:18;92:16
**finishes (1)**
69:16
**finishing (1)**
47:15
**fire (89)**
7:24;9:21;14:22;
16:8;17:7;18:8;19:25;
20:4,5,6;23:2,11,14;
25:20;26:19;28:7,11;
32:25,25;40:19;43:18;
46:14;48:6,14,14,19;
64:3,14,16;78:14;83:7,
15,17;84:12;85:13,13,
18;96:20;97:8,15;98:6,
14,14,16;99:2,3,3,6,9,
13,14,15,19;100:2,3,8,
18;101:2,8,9;105:13;
106:1,19,22,24;107:14,
18;108:16;109:16,18,
110:18,18;111:12;
117:22;118:9,19;
119:5;125:16,16;
132:21,23,24;133:1,2;
147:16,17;154:5,23;
155:9
**fires (11)**
78:14;84:12,12,23;
94:9,19,21;99:21;
100:25;111:10;132:25
**firm (5)**
18:23;19:1;51:3;
126:25;129:10
**firms (1)**
18:21
**first (32)**
5:15;10:17;14:2;
24:17;32:10;44:16;
46:4;48:4;49:19;55:8;
63:15;65:11;74:13;
76:22,25;80:10;95:21;
96:20;98:16,17,22;
99:8,9;105:1,5;114:22;
118:1,16;132:21;
146:14;148:8;156:5
**fit (2)**

27:12;140:17
**five (41)**
5:22;6:7;18:3,20;
19:2;24:18;26:5,6;
34:2;18,23,24;36:1;
54:8;76:10;84:6,9;
89:15;92:25;95:19;
96:1,5,12;112:1;
115:22;116:8,9,11;
117:5,6;125:12,19;
126:8,14;127:1,12;
135:10;138:16;139:1;
143:16;156:15
**fix (7)**
71:1;82:6;86:10;
120:16;122:20;123:3;
137:3
**fixed (3)**
33:25;34:17;102:14
**flags (1)**
92:8
**flawed (1)**
101:8
**flow (1)**
155:7
**fluid (3)**
73:21;116:25;154:22
**flurry (1)**
7:10
**flying (1)**
126:20
**focus (5)**
7:12;27:11;37:13;
47:25;96:10
**focusing (3)**
57:2,2;87:12
**folks (7)**
44:19;62:13;113:11;
114:25;130:15;149:10;
150:10
**follow (11)**
5:9;10:7;13:24;
38:17;39:12;56:10;
88:11,12,13,14;143:18
**followed (3)**
22:25;33:16;77:11
**following (2)**
54:24;154:11
**follows (1)**
76:17
**Food (3)**
32:1;35:15,24
**footing (1)**
88:9
**footnote (1)**
137:23
**forbidden (1)**
89:25
**force (1)**
101:10
**forced (3)**
90:2;94:16;100:13
**forces (1)**

95:3
**foreclose (1)**
58:15
**forego (1)**
83:10
**foremost (2)**
32:10;80:10
**foresee (1)**
48:4
**foreseen (1)**
67:1
**forest (1)**
108:22
**forget (2)**
59:10;95:23
**form (1)**
137:20
**formal (2)**
106:21;107:2
**former (2)**
78:5;120:1
**formulas (1)**
102:3
**forth (3)**
27:5;35:2;68:13
**forty (3)**
40:6;112:4;135:5
**forty-eight (1)**
152:8
**forty-five-minute (1)**
74:8
**forum (1)**
146:12
**forward (16)**
15:6;20:23;52:19;
76:25;78:18,20;79:21,
22;81:25;82:18;83:19;
88:4;91:24;99:13;
114:16;157:7
**fought (3)**
35:17,17,17
**found (5)**
9:9;12:3;35:7,25;
36:1
**foundation (1)**
76:10
**four (9)**
13:3;37:23;38:22;
46:17;89:6;111:11;
127:1;135:10;138:16
**Francis (1)**
105:12
**FRANCISCO (3)**
5:1;131:25;143:17
**Frank (1)**
117:22
**Franklin (1)**
131:9
**frankly (5)**
42:15;66:5;86:17;
102:13;135:17
**fraud (1)**
37:24

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 167
of 185

**freezing (2)**
79:10,11
**Friday (1)**
120:11,14;125:12
**friend (1)**
74:2
**front (3)**
77:7;127:10;145:5
**frustrating (1)**
56:18
**fulfill (2)**
56:13;57:13
**full (13)**
27:7;28:19;32:23;
65:6;96:1;99:3,14,15;
103:2,19;107:15;
133:14;139:24
**fully (3)**
97:11;142:15,19
**fund (14)**
41:10;80:17;81:8;
84:6;102:4,25;111:22,
23;113:15;119:15;
122:5;123:1;128:2,3
**fundamental (3)**
11:8;10;72:12
**funded (3)**
41:17;112:19;122:6
**funding (5)**
85:17;110:21;
119:12;121:19;122:3
**funds (9)**
80:13,17;92:6;94:1,
11;98:21;112:13;
113:14;114:4
**further (13)**
9:6;15:23;21:19;
31:17;40:24;46:4;
51:25;69:25;77:11;
83:10;102:20;103:6;
141:23
**future (6)**
30:7;86:9;98:9;
100:14;110:14;111:18

**G**

**gap (2)**
11:3;12:2
**Gas (1)**
77:23
**gave (11)**
9:3;32:18,18;49:19;
51:9;82:8;108:17,18,
19;116:18;156:15
**general (9)**
58:2;59:8,9;77:15;
93:11,12;132:3;133:5;
137:14
**generally (2)**
92:11;106:5
**gentleman (1)**
24:18

**geotechnical (1)**
108:20
**gets (5)**
40:9;73:19;122:6;
133:21;149:6
**Gibson (1)**
136:22
**given (17)**
15:3;48:8;49:9;79:1,
2,8,24;82:19;90:16;
93:7;9;97:12;99:23;
109:23,24;128:13;
154:10
**gives (1)**
39:15
**giving (3)**
100:4;113:25;123:12
**glad (4)**
125:23;132:13;
134:7;148:15
**Glassman (1)**
140:13
**goal (2)**
78:11;89:7
**God (2)**
156:2,5
**goes (6)**
15:6;42:14;46:7;
64:23;66:5;87:6
**Golden (1)**
79:22
**good (43)**
24:3,4,7,23;36:4;
50:17;53:11,12;54:3,5;
61:11;63:3,4;75:1,3;
78:11;89:25;90:8,22;
91:24;92:11,19;95:12,
15,19;114:12;115:9;
116:2,3,4;117:21;
120:6;125:2;131:6;
136:21;139:14;144:8,
12,16;147:4;148:15;
153:5,6
**goods (2)**
34:1,19
**googled (1)**
41:9
**Gorton (10)**
52:21;53:22,25,25;
54:12,15,23;55:3;
140:13;143:7
**Gotshal (1)**
24:24
**government (5)**
64:13;67:14;71:7;
72:17,21
**governmental (3)**
63:16,21;73:14
**Governor (3)**
79:19;82:12;114:15
**grabs (1)**
152:3
**grant (5)**

26:12;27:17;35:12;
112:25;143:15
**grantable (1)**
13:12
**granted (5)**
13:22;25:16;26:11;
49:5;99:7
**granting (1)**
131:22
**grants (1)**
98:14
**grateful (1)**
154:4
**Graulich (2)**
51:14;52:17
**Great (5)**
37:20;39:4;45:19,20;
84:7
**greatly (2)**
79:15,18
**greed (1)**
80:2
**gross (1)**
38:11
**grossly (1)**
111:23
**ground (1)**
34:11
**group (7)**
36:19,20;52:4;74:12;
112:12;114:24;129:10
**guarantees (2)**
51:19;72:18
**Guaranty (2)**
71:6;72:17
**Guerrera (1)**
92:6
**guess (12)**
20:4;30:20;58:8;
61:18;67:18;97:11;
120:6,17;127:11;
128:14;130:25;144:18
**guilty (2)**
31:24;109:2
**guys (1)**
53:23

**H**

**half (3)**
69:13;85:4;155:11
**hall (1)**
154:18
**Hallisey (8)**
74:10;104:16,24;
106:9;111:5,6,8;118:8
**hand (26)**
5:11;22:10;44:6;
52:25;53:9,16,21,22,
24;55:21,22;75:24;
81:21;109:9;136:4,6,
11,14,17,24,25;145:5,
6;153:4,8,9

**handful (1)**
106:20
**handle (1)**
140:19
**handling (1)**
134:18
**hands (5)**
50:4;53:1;86:25;
136:16;153:4
**hanging (1)**
79:9
**happen (17)**
6:12;11:6;13:22;
14:5;16:21,24,25;17:5;
31:2;40:16;62:11;
85:16;93:23;94:20,21;
105:20;127:3
**happened (7)**
14:4;19:18;23:4;
40:2;45:18;48:18;
50:22
**happening (2)**
25:13;71:23
**happens (9)**
16:19;20:25;30:6;
45:9,16;104:13,13;
109:21;121:13
**happy (3)**
117:18;123:20;137:7
**hard (3)**
5:7;26:7;112:17
**harm (1)**
28:21
**hate (1)**
156:18
**Hays (1)**
126:24
**head (1)**
104:18
**heads (4)**
89:3;140:11;152:10,
25
**heads-up (1)**
140:21
**health (1)**
77:23;88:1
**hear (68)**
5:4;6:6;7:5,14;18:1;
20:6;21:19;22:12,17,
18;24:5;37:9,15,17,18;
53:10,11,12,25;55:8,
11,15;57:19;70:12,13,
16,18,21,23;71:3,17,
18,18,21,22,23;72:2;
74:13;75:2;95:17,18,
20;111:6;115:6,7,15;
116:14;117:16,18;
121:11;128:12;129:18,
19,20,21;130:16,22;
131:1,2;132:13;
139:12,13;140:14;
144:15;148:15;149:14;
153:11,13

**heard (31)**
5:11;6:16;9:3;19:11,
13,13,20;22:12;27:14;
29:23;39:21;50:9;
52:24;53:5;54:12,16;
55:14;72:22;73:3;78:4;
117:2,17;130:14;
131:23;135:16;149:11;
152:15;154:17,17,20;
156:13
**hearing (2)**
6:11;25:7;26:18;
27:7;41:21;42:3;52:12;
75:21;78:9;86:22;
91:10;105:19;128:15;
129:25;130:4,21;
132:10;136:3,5;
148:24;150:2;151:19;
152:16;154:12;155:21;
156:2,24;157:2,5
**hearings (1)**
78:3;4;92:1
**hearsay (6)**
19:4;21:9;25:23;
26:24;28:2;38:19
**hearsays (1)**
7:14
**heat (1)**
153:1
**heater (1)**
101:4
**hedge (8)**
80:13,17,17;92:6;
93:25;112:12;113:15;
114:3
**hedged (1)**
79:5
**held (1)**
23:12
**Hello (1)**
74:21
**help (5)**
32:17;43:18;85:23;
86:19;101:13
**helpful (2)**
20:18;150:17
**herein (1)**
38:19
**here's (3)**
14:20;72:2;93:23
**heroic (1)**
83:6
**herself (1)**
70:14
**hey (2)**
9:18;44:1
**high (5)**
45:6;46:4;82:9;
111:17;112:10
**highest-priced (1)**
34:13
**highly (1)**
56:25

Min-U-Script®

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 168
of 185

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(10) freezing - highly

**hijacked (1)**
92:7
**hijacking (1)**
92:10
**Hill (2)**
79:20,21
**hired (2)**
36:18;90:21
**history (1)**
79:24
**hit (4)**
33:1,2;128:8;156:12
**hoc (2)**
34:14,16
**hold (7)**
89:2;92:14;94:4,12;
138:17;145:4,4
**holders (1)**
113:19
**holding (3)**
81:5;112:6,8
**holds (2)**
78:17;113:15
**hole (1)**
123:3
**home (1)**
73:24
**homeowners (1)**
77:15
**homes (3)**
41:18;77:15;85:14
**homework (1)**
117:12
**honest (1)**
23:5
**Honor (203)**
5:20;6:10;7:8,20;
8:10,20;9:5;12:7,21,
25;14:1,20;19:3;20:2;
22:7,9,14;24:23,25;
25:3,8,17,22;26:4,7,10,
13,21,24;27:2,5;28:5,
22;29:1,5,9,12;30:4,8,
23;31:10,10,19;32:5,9;
36:23;42:4,19;44:8,15;
49:4,15,18;50:18;
53:12;54:5,15,23;
56:22;57:4,25;58:9,18;
59:2,7,17;60:7,14,21;
61:3;62:15,24;63:4,7,
15,21;64:1,5,12,19;
65:24;66:2,5,14,18,20,
22;67:1;69:2;70:1,9,
19,23;71:5,14;72:16;
73:2;74:21;75:3,11,13,
20,24;76:3;80:24;
81:13;82:23;83:12;
84:7,18,24;85:24;
86:21;87:19;88:5,10,
13;89:9,18;90:1,6,7,21;
91:6,13,25;92:25;93:5,
7,18,24;94:16,20;95:7;
99:17;104:19,22;

105:2,13;106:19;
107:7,12,22;108:12;
110:1,3,6,8,11,13,14,
16,17,22,22;111:6;
115:4,16;116:2,7,15;
117:7,21,22;120:12;
121:18;123:11,15,24;
124:5;125:6;126:1,18,
23;128:24;129:10,21;
130:5;131:2,12;133:4;
134:9,22,25;135:8;
136:10,21;138:4,12;
139:6,8,13,14;140:18;
141:5;142:5,23;
144:13,16;146:22;
147:4;148:18;157:9
**honored (2)**
10:21;96:7
**Honor's (1)**
111:2
**hope (10)**
19:23;29:14;54:8;
78:23;93:20,20;105:5;
114:24;153:2;157:2
**hopeful (2)**
51:20;141:19
**hopefully (6)**
51:17;73:20;142:8;
148:9;150:1,2
**hoping (1)**
101:4
**horrible (4)**
30:6;86:16;110:23,
23
**hot (1)**
86:16
**hour (5)**
5:12;77:5,6;135:4;
156:25
**hours (2)**
131:16;152:8
**house (7)**
69:4,6,7,9,16;83:16;
114:13
**houses (1)**
114:18
**huge (3)**
17:11;94:15;149:3
**hugely (1)**
94:24
**Huh (2)**
19:16;147:25
**hundred (7)**
41:13;89:6;105:17;
107:17,19;139:24;
140:1
**hundreds (2)**
65:14,21
**hurt (1)**
40:19
**hypothetical (1)**
67:21
**hypotheticals (1)**

84:21

**I**

**icon (1)**
72:4
**idea (5)**
127:24;128:5;129:2,
3;144:9
**identical (1)**
27:22
**identified (5)**
10:24;15:17;27:13;
40:5;57:5
**identify (1)**
21:8
**ignited (1)**
77:14
**ignitions (1)**
83:5
**ill (2)**
81:16;93:21
**illegal (2)**
81:19;89:12
**imagine (1)**
57:1
**immediately (1)**
130:18
**impact (6)**
7:16;17:15;25:7;
27:17;30:14;124:21
**impacted (1)**
23:7
**impair (2)**
58:12;60:16
**impartial (1)**
93:14
**implant (1)**
45:4
**implicated (1)**
140:5
**implication (1)**
48:10
**importance (5)**
17:7;22:20;40:11;
64:2,17
**important (33)**
14:5;15:4;16:7;17:5;
21:5;22:22,23;23:1,3,
10,14;25:5;32:1;35:15;
36:19;48:15;56:18;
61:24;77:12,17;83:21;
87:25;88:1,2;92:19;
95:23;96:23;98:4;
124:5,10;151:14;
154:23,24
**importantly (2)**
26:13;113:13
**impose (2)**
135:11;141:21
**imposes (1)**
66:8
**impossible (1)**

97:14
**impression (1)**
99:23
**inadequate (1)**
110:19
**inappropriate (3)**
29:8;38:23;140:4
**Inc (2)**
32:1;35:16
**incapable (1)**
88:25
**include (4)**
59:24;60:17;65:24;
76:16
**included (3)**
51:25;109:16;154:2
**including (10)**
14:7;57:14;110:6;
111:11;112:5,17;
121:21;137:24;139:25;
145:18
**income (1)**
110:12
**incompetence (1)**
38:7
**incompliant (1)**
89:21
**inconsequential (1)**
78:19
**incorporate (1)**
64:8
**increase (1)**
82:13
**increases (1)**
111:18
**indemnification (1)**
51:6
**indemnity (9)**
144:22;145:1,11,14;
146:5,5,9,17,24
**independent (1)**
22:23
**indicate (1)**
19:4
**indicated (7)**
11:15;26:23,23;29:9;
82:16;83:21;131:13
**indicates (2)**
28:19;98:6
**indication (1)**
98:7
**indications (1)**
20:17
**indirectly (1)**
28:14
**indiscernible (8)**
87:8;91:14;132:20;
136:23;138:13;139:16;
143:3;145:21
**indiscernible- (1)**
145:3
**individual (5)**
16:3;90:2;102:7;

103:19;106:22
**individuals (4)**
10:23;40:5;90:13;
99:20
**inefficiency (1)**
63:23
**inextricably (1)**
85:25
**infeasible (3)**
80:4;81:15;91:8
**infect (1)**
90:10
**influence (1)**
90:10
**information (7)**
19:7;83:22;91:3;
96:25;97:4,7;153:23
**infrastructure (1)**
108:23
**ingredient (1)**
122:23
**inhalation (1)**
108:25
**inherent (1)**
79:3
**initially (2)**
44:19;47:3
**initiated (1)**
118:1
**injected (1)**
81:20
**injury (1)**
108:24
**inquiry (2)**
15:23,23
**insert (1)**
123:3
**inserts (3)**
64:2,5,18
**insightful (1)**
32:3
**insignificant (1)**
106:25
**installments (2)**
99:2,13
**instances (1)**
65:21
**instead (3)**
84:4;113:21;115:3
**instruction (1)**
38:18
**insufficient (1)**
57:5;83:20
**insurance (3)**
84:14;111:22;113:18
**insure (1)**
77:15
**insured (1)**
10:1
**insuring (1)**
10:7
**integrity (1)**
15:5

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 169
of 185

**intend (3)**
105:14;126:14;
137:15
**intended (1)**
91:16
**intent (1)**
75:25
**intention (3)**
5:9;137:19;148:1
**interest (25)**
14:7;26:11;32:15;
33:21;35:22;58:22;
59:18,19,19,22,23;
60:6,10,13,13;62:4;
78:20;86:3;98:17,23;
99:3;102:4,4;107:18;
137:13
**interested (1)**
55:17
**interesting (3)**
32:20;33:24,25
**interests (7)**
26:21;32:15;33:21;
80:7;81:7;87:25;92:3
**International (1)**
90:17
**internet (4)**
149:1,7;152:25;
154:8
**interpretation (3)**
36:6,8;67:3
**interrupt (11)**
17:23,25;18:4;47:14;
71:10;96:4,11;107:3;
123:17;140:8;156:17
**interrupting (1)**
44:13
**interviewed (3)**
9:10,13,21
**into (27)**
5:15;9:17;20:3;25:5;
33:2;35:6;37:10;45:21;
53:8;76:9;79:22;80:6;
81:16,20;82:20,21;
93:6;96:5;101:3,9;
104:14;121:19;124:2;
125:3;139:3;140:20;
154:18
**invested (1)**
86:1
**investigate (3)**
14:4;32:21;35:23
**investigated (2)**
46:19;48:8
**investigation (7)**
8:21;9:8;10:13;
26:12,14;29:10,19
**investments (1)**
79:4
**investor (2)**
86:3,4
**investors (11)**
78:12,24,25;87:25;

94:1,8,21;95:1,5;119:4,
9
**invitation (1)**
29:25
**involuntary (1)**
86:12
**involved (5)**
57:7;124:22;153:20;
156:11,12
**involvement (1)**
54:21
**involves (1)**
140:5
**irregularities (4)**
7:23;8:3;93:3,9
**issue (31)**
12:25;40:20;41:17,
23;42:15;46:7,25;47:1,
6,6;48:10;51:15;54:19;
58:19;59:16;65:9;
85:20;96:10;103:13;
110:15;118:1,6;
121:14;128:2;137:8,
14;140:10;147:7;
149:11;151:21,22
**issues (41)**
11:11;26:3,4;32:11;
43:7;44:16;45:24;
46:11;51:6;52:8;54:8,
18;57:5;59:1;60:23,25;
61:6;62:6;63:14,17;
77:1,3;81:21;89:22;
90:3;91:5;93:6,20;
108:20;117:12;125:14;
131:19;137:4;143:10,
11;148:4,16,19;150:2,
6,18
**issuing (1)**
99:19
**item (2)**
64:19,24
**items (5)**
27:23;100:9;110:7;
147:8;150:5

## J

**jeopardize (1)**
64:15
**job (7)**
15:16;38:16;61:14;
69:15;104:7;109:21;
120:2
**Johnson (1)**
78:22
**join (7)**
63:9;115:20;116:6;
117:23;126:19;140:23;
144:7
**joined (1)**
63:7
**joining (9)**
22:13;50:12;62:24;

70:9;74:25;129:16;
136:18;139:7;144:13
**jointly (1)**
45:11
**Judge (21)**
41:25;86:25;87:10;
89:12;95:18;96:13;
97:9,13,20;103:12;
108:13,14,15;109:19;
127:16,24;128:13;
129:8;153:22;154:3;
156:9
**judgment (4)**
77:2;132:3;133:12;
153:20
**judicial (6)**
7:10,13;44:25;45:1,
13,14
**Julian (8)**
36:19;50:5;101:17;
103:5;123:21;127:6;
141:14;149:13
**jump (1)**
118:17
**JUNE (23)**
5:1;15:16,20;16:17,
18,18,19;20:3;40:10,
15;88:14;111:8;121:7,
8,9,9;124:13;132:11;
151:2,16,16,18;152:6
**junior (1)**
107:17
**junk (1)**
112:10
**jurisdiction (1)**
110:14
**Justice (1)**
63:5
**justification (1)**
100:4
**justifies (1)**
119:6
**justify (1)**
42:16

## K

**Kane (79)**
5:17,20;6:2,4,25;7:3,
8,18,20;8:8,10,16;9:5,
16;10:11,14,14,15;
11:10,17,20,22;12:7,
15,19,20,21,25;13:10,
19,21;14:1,16,19;15:9,
10,11,13,21;16:15,20,
22;17:1,18,20,22,24;
20:1;21:4,20;22:3;
23:24;24:9;25:19,25;
26:25;39:6,16,20;43:6,
12,15;44:12,14,22,24;
46:3;47:1,16,23,24;
48:2,23,25;49:12,13;
50:11,15,18

**Kane's (1)**
35:3
**Karotkin (140)**
5:7;24:3,4,14,16,22,
23,24;25:16;27:20;
30:4,8,11,23;31:10,18;
34:6,9;36:18;38:24;
40:4;42:19,21,24,25;
43:4;49:15,16,18,21,
22;50:1,13,19,21,24;
51:12;52:3,6,12,18;
60:22;61:2,8,15,23;
62:3;70:17;73:7,8,11;
74:11;75:5,6,8,21;
79:11;104:23;105:25;
116:18;120:2,22;
121:9;123:15,16,17;
124:10;125:5,8,25;
129:6;130:5,9,17;
131:12,20;132:17,19,
21,25;133:4,7,24;
134:1,4,18,21;135:1,4,
8,17;136:8;137:1;
138:8,11,18,20,23;
139:1,8;140:22;141:9;
142:5,18,23;143:1,4,9,
13,21,25;144:8,12,19,
21;145:4,8,9,13;146:1,
19,22;147:8,12;148:1,
25;149:4,8,12,17,20,
25;150:12,19;151:7,
11;152:21,22;157:6,8
**Karotkin's (4)**
38:2;40:11;69:22;
148:18
**keep (18)**
47:7;58:10,13;60:19;
61:9;77:12;83:13;
86:11;95:11;124:11;
126:25;127:14;134:15;
139:3;144:6;145:6;
148:25;155:21
**keeping (1)**
131:16
**keeps (1)**
91:8
**Kelly (6)**
78:4;112:16;115:11;
116:8,9;127:7
**kept (1)**
67:10
**kickoff (2)**
151:12,13
**kicks (1)**
87:22
**kid (1)**
151:21
**killed (2)**
85:13,14
**Kim (1)**
43:24
**Kincade (2)**
83:15;111:12

**kind (7)**
14:2;20:5;107:8;
121:14;129:1;142:21;
154:18
**kindly (1)**
128:22
**kinds (1)**
38:12
**knew (2)**
65:20,20;66:1;92:16
**Knock (1)**
152:23
**knowing (1)**
82:4
**knowledge (5)**
66:11,15;68:8;69:7;
91:2
**known (5)**
11:24;66:25;69:14;
78:2;150:24
**knows (4)**
31:10,11;49:4;
104:11
**KQED (4)**
9:9,12,15;17:12

## L

**laches (5)**
31:24;35:15;43:24;
46:7;48:4
**lack (3)**
57:2;97:7;153:23
**Laffredi (6)**
55:23,25;56:2,6,21;
57:4
**land (1)**
87:9
**landlord (6)**
67:24;68:3,8,13,14;
69:5
**lands (1)**
87:6
**language (8)**
36:9;61:4,19;72:21;
135:20,24;137:2,7
**laptop (1)**
104:17
**large (9)**
7:22;8:2,5,7;28:17,
18;78:24;94:1;103:17
**largely (1)**
76:23;79:25;90:6
**larger (1)**
28:18
**largest (1)**
81:14
**last (20)**
10:22;21:21;25:7;
27:7;43:5,9;46:11;
60:20;61:23;75:21;
95:25;101:4;103:10;
105:16;111:11;112:7;

Min-U-Script®

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 170
of 185

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(12) intend - last

131:17;135:20,24;
147:14
**last-minute (1)**
5:18
**late (17)**
9:25;12:12;18:22;
20:5;31:24;36:3,4,13;
37:2;40:4,7;46:9;
112:2,8;113:7;131:16;
142:1
**later (21)**
5:16;14:18;20:25;
29:23;39:16,22;56:12;
59:14;69:6,7,22;74:12;
77:4;96:3;101:16;
103:6;121:7,10;124:7;
127:13;134:14
**latter (1)**
120:2
**law (26)**
10:17;11:4;14:23;
18:21;19:1;28:24;
32:12;58:15,17;66:10;
86:9;88:8,12,18,24;
89:4,9,25;92:4;95:1,
23;113:1;126:24;
129:10;139:23;146:23
**laws (8)**
33:25;87:18;88:13,
15,16,19;89:21;90:20
**lawyer (6)**
10:16;32:24,25,25;
33:1;121:12
**lawyers (10)**
34:13;52:23;75:23;
90:24;91:9;112:16;
118:9;128:18;142:20;
154:20
**laying (1)**
76:10
**lead (1)**
83:10
**leaders (1)**
79:6
**leading (1)**
143:6
**leads (2)**
82:21;91:7
**leaks (1)**
101:4
**leap (2)**
21:11;39:4
**learned (2)**
10:17;11:4
**lease (4)**
65:9;66:8;67:23,25
**leases (2)**
65:2;68:21
**least (12)**
16:23;20:18;49:3;
56:16;82:16;86:13;
114:16;130:13;133:1;
141:18;150:10;152:17

**leave (18)**
6:17;22:3;61:22;
72:7;78:12;85:7;90:7,
21;91:24;92:12,20;
103:4,4,23;106:6;
113:24;123:9;155:12
**leaves (1)**
8:16
**LeBoeuf (2)**
32:2;34:13
**LeBouef (1)**
35:5
**led (1)**
82:20
**left (7)**
45:22;46:11;72:4;
87:23;112:25;145:22;
151:1
**legal (7)**
11:9,10,11;17:17;
68:6;88:9;155:6
**legally (1)**
89:21
**legislative (1)**
79:22
**legislature (3)**
78:3;114:18;151:1
**lengthy (2)**
64:10,11
**less (10)**
6:4;8:4;9:22;21:1;
38:9;85:17;107:18;
108:3;115:1,3
**lessen (1)**
84:22
**letter (2)**
92:5,18
**letting (1)**
17:7
**level (1)**
119:19
**Lewis (1)**
125:22
**liabilities (1)**
64:13
**liability (3)**
69:9;111:11;113:4
**liable (1)**
111:24
**Liccardo (1)**
79:19
**lie (1)**
100:1
**lien (5)**
58:4,10,13,16;60:3
**life (1)**
149:5
**light (1)**
155:8
**likelihood (1)**
107:14
**likely (4)**
77:11;81:6;85:17,17

**likewise (1)**
143:19
**limit (2)**
68:24;89:16
**limitation (1)**
66:24
**limitations (1)**
140:4
**line (5)**
23:8;41:25;42:13;
52:5;141:24
**lines (3)**
78:13;88:22;118:25
**link (2)**
122:16;154:14
**linked (1)**
85:25
**Liou (2)**
5:7;52:14
**liquidate (1)**
80:18
**liquidated (11)**
34:1,18;108:5,6;
118:12,13;119:15;
131:24;132:2;133:16,
21
**liquidation (3)**
77:11;82:21;108:8
**list (28)**
43:17;51:9,24;52:13,
15,18,24;53:4,5;54:10;
61:9,10,14,20,21;
69:22;73:10;74:10;
83:20;97:3;115:10,22,
25;116:18;124:15;
150:17,17;152:10
**listed (2)**
64:24;110:7
**listen (1)**
6:24;45:8;103:5;
157:3
**listened (1)**
20:9
**listening (1)**
136:4
**lists (1)**
78:19
**literal (2)**
36:5,7
**literally (3)**
25:20;78:16;135:10
**litigant (1)**
153:16
**litigation (2)**
26:9;112:19
**litigious (1)**
31:12
**little (9)**
36:4;37:2;55:5;
113:10;140:20;151:2;
152:25;155:2,6
**live (8)**
6:25;43:11;53:11;

**lived (2)**
86:17,17
**living (3)**
78:13;88:2;100:20
**lobby (1)**
90:20
**lobbying (2)**
90:20,24
**local (2)**
19:22;90:18
**location (1)**
97:1
**log (1)**
74:17
**logic (1)**
39:4
**London (1)**
113:15
**long (3)**
84:20;124:17;153:6
**longer (2)**
127:22;128:1
**longest (1)**
65:15
**look (30)**
8:12;23:17,23;25:24;
27:21;28:5;32:19;
43:20;48:17;50:1;51:8,
13;62:13;64:5;66:3;
77:10;78:20;82:10;
83:12;84:5;94:21,22;
96:21;105:22;135:25;
137:6;142:16;150:10;
151:15;157:7
**looked (5)**
11:1;35:6;47:12;
48:9,19
**looking (10)**
19:10;22:5;40:17;
48:13;51:24;63:17;
79:23;81:25;94:22;
122:23
**looks (2)**
74:5;83:3
**looming (1)**
26:18
**lose (3)**
95:25;149:7,7
**losing (2)**
41:11;152:13
**loss (4)**
77:14;97:11;109:16;
114:16
**losses (7)**
108:19,21,21,22,22,
23,23
**lost (2)**
10:25;99:20
**lot (18)**
8:19;25:11;33:24;
44:1;48:16;51:10;

60:24;61:9;72:6;
136:15;150:11
**lived (2)**
86:17,17
**living (3)**
78:13;88:2;100:20
**lobby (1)**
90:20
**lobbying (2)**
90:20,24
**local (2)**
19:22;90:18
**location (1)**
97:1
**log (1)**
74:17
**logic (1)**
39:4
**London (1)**
113:15
**long (3)**
84:20;124:17;153:6
**longer (2)**
127:22;128:1
**longest (1)**
65:15
**look (30)**
8:12;23:17,23;25:24;
27:21;28:5;32:19;
43:20;48:17;50:1;51:8,
13;62:13;64:5;66:3;
77:10;78:20;82:10;
83:12;84:5;94:21,22;
96:21;105:22;135:25;
137:6;142:16;150:10;
151:15;157:7
**looked (5)**
11:1;35:6;47:12;
48:9,19
**looking (10)**
19:10;22:5;40:17;
48:13;51:24;63:17;
79:23;81:25;94:22;
122:23
**looks (2)**
74:5;83:3
**looming (1)**
26:18
**lose (3)**
95:25;149:7,7
**losing (2)**
41:11;152:13
**loss (4)**
77:14;97:11;109:16;
114:16
**losses (7)**
108:19,21,21,22,22,
23,23
**lost (2)**
10:25;99:20
**lot (18)**
8:19;25:11;33:24;
44:1;48:16;51:10;

70:24;73:8;84:8;93:20;
107:5,5;111:17;114:5;
127:5;153:24,25;154:1
**lots (1)**
87:16
**love (2)**
87:17;122:20
**loved (1)**
44:7
**low (1)**
82:9
**lower (1)**
72:4
**lowered (2)**
136:10,14
**lowering (1)**
136:25
**Lubic (3)**
51:14;52:2,17
**luck (2)**
68:14;152:16

**M**

**machine (1)**
23:17
**magically (1)**
81:9
**mail (8)**
10:18;12:1,10;16:5;
27:1;33:13;38:9;41:2
**mailed (4)**
11:13;23:18;28:12;
33:16
**mailing (5)**
11:5,6;15:1,23;23:17
**mailings (1)**
48:19
**main (1)**
111:16
**maintain (2)**
88:22;154:16
**major (6)**
73:14;82:6;140:23;
143:13;148:17;149:11
**majority (2)**
112:24;113:2
**makes (6)**
12:24;60:18;93:20;
99:17,21;148:14
**making (7)**
7:15;13:1;84:17;
85:21;91:21;109:6;
119:22;123:14;143:1;
149:3;153:7,20
**manage (1)**
81:24
**Management (2)**
44:25;45:13
**mandated (1)**
48:20
**mandatory (6)**
34:7,9;35:25;36:2;

Min-U-Script®

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 171
of 185

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(13) last-minute - mandatory

37:4;141:25

**Manges (1)**
24:24
**manifestly (3)**
77:2;113:2;114:23
**manner (3)**
30:13;101:11;102:19
**many (19)**
8:21;9:12;11:11;
16:9;21:22;45:22;
46:11;82:11;83:4;91:4,
6;92:1;98:11;99:22;
105:24;118:8;121:13;
150:2;154:12
**March (3)**
11:13;23:18;47:20
**mark (1)**
132:15
**market (3)**
29:18;30:12;42:15
**marketing (1)**
30:15
**markets (1)**
30:17
**market's (1)**
40:18
**markup (1)**
152:2
**Marshack (30)**
24:8,15;25:12;31:19;
32:5,9;33:8,10,12;
34:22;35:1;36:25;37:6;
42:22;44:11;50:12;
126:13,17,18,20,23,24,
24;128:9,16,21,23;
129:5,12,13
**MARY (3)**
95:18,21;153:16
**mass (6)**
38:12;44:18,20,25;
45:7,13
**mastered (1)**
130:2
**matched (1)**
52:21
**material (3)**
41:18;77:7;83:25
**materials (1)**
14:10
**math (1)**
84:7
**mathematical (1)**
41:3
**matter (16)**
12:8,9,10;23:10;
30:16;40:21;50:3,4,9,
14;57:10;117:13;
124:23;129:7;140:21;
141:19
**matters (9)**
51:8;61:13,21;77:20,
22;92:9;123:7;125:14,
15

**Matthew (1)**
63:4
**maximum (1)**
40:18
**May (48)**
9:10,22,23,25;14:20;
18:23,23;20:21;22:10;
34:22,24;37:8;39:9,10;
45:23;49:2;51:5;52:8;
62:4,7;73:4;90:23;
100:22;103:3,6,10;
105:15;107:2;110:8;
111:22;112:8;113:8;
116:7;117:14;119:9;
121:3,3,15;128:20;
129:9;134:18;147:16;
149:15,15,18;150:5;
151:13;155:2
**maybe (23)**
8:4;12:4;13:14;
14:17;17:13;19:19,21;
30:24;46:14;54:21;
68:24;84:12;103:6,17;
107:4;120:3;122:16;
128:17;130:18;140:12;
141:11;153:1;154:23
**Mayor (1)**
79:19
**McDonald (20)**
5:17,21;6:9,10,14,21,
23;14:13;22:9,11,13,
14,17,19;23:20;29:23;
30:21;43:7;50:11;53:1
**McDonalds (1)**
39:6
**McDonnell (2)**
51:14;52:17
**McKane (2)**
51:13;52:16
**mean (28)**
8:9,14;19:14;21:4;
27:17;29:25;34:4;60:5;
61:3,24;68:21;77:14;
79:1;85:11,12,13;
86:15;115:22;117:13;
119:24;121:3,15;
122:11,12;137:19;
150:16;151:16;155:20
**meaning (3)**
58:15;120:5;152:5
**meaningful (1)**
20:7
**means (12)**
34:5;66:24;80:13;
87:20;89:24,25;
121:13;122:17;127:20;
133:8,19;141:13
**measure (2)**
81:24;94:22
**measured (1)**
94:22
**measures (1)**
113:3

**measuring (1)**
81:22
**mechanics (3)**
58:4;60:3;124:16
**mechanism (1)**
114:25
**media (2)**
19:8;21:9
**mediation (10)**
64:10;119:24;
122:14,25;123:7;
124:4;125:3;127:4;
128:10,24
**medium (1)**
82:9
**meet (1)**
34:17
**meeting (1)**
154:18
**meets (1)**
50:20
**member (1)**
154:6
**members (2)**
58:3;100:3
**memorandum (2)**
137:15,23
**memorialized (1)**
121:5
**memorize (1)**
32:7
**mentioned (10)**
9:15,16;19:10;26:19;
27:24;71:9;72:21;
75:25;114:20;125:9
**merits (4)**
7:12,14;50:7;57:7
**met (3)**
32:13;33:22;121:20
**Meyer (1)**
110:12
**mic (6)**
43:11,12;71:19;72:6;
129:24;143:19
**microphone (8)**
24:21;63:1;71:24;
72:5;95:16;129:17;
131:4;139:10
**midday (2)**
57:20,21
**mid-day (1)**
74:6
**might (18)**
30:24;46:22;55:22;
67:19,22;69:18;78:2;
95:23,23;101:13,18;
114:15;125:2,3;
128:11,11;140:16;
150:21
**Mike (1)**
136:21
**Milbank (1)**
51:3

**miles (2)**
89:6,7
**million (17)**
34:2,18,23;36:1;
49:3;69:14;98:15,16,
18,19,24;99:1,7,9,12;
111:13;112:6
**mind (10)**
12:24;13:1,25;22:5;
77:12;102:12;124:11;
141:18;144:6;150:16
**minds (1)**
54:2
**mine (1)**
87:10
**minimal (1)**
9:1
**minor (1)**
106:16
**Mintz (1)**
149:20
**minute (4)**
42:1;46:11;84:25;
138:8
**minutes (52)**
5:22,22;6:1,8;7:1,2,
5;18:3;24:15,17,18;
33:18;47:15;48:1;54:9;
55:9;57:24;75:10;
76:10,11,14;92:25;
95:20;96:1,6,12;105:4;
115:12,23;116:8,8,10,
11,19,20,22;117:5,6;
125:13,19;126:14;
127:15;128:19;135:5,
10;136:2;138:16;
139:1;142:12;143:16,
17;156:15
**mischaracterized (1)**
76:1
**misconduct (1)**
32:21
**misconstrued (1)**
123:19
**mismanagement (2)**
32:22;38:11
**misrepresented (1)**
49:22
**misshifts (1)**
140:1
**missing (3)**
44:18;46:5;122:23
**misstated (1)**
75:21
**mistakes (1)**
23:7
**misunderstanding (2)**
102:10;150:23
**misunderstood (1)**
101:21
**mitigate (2)**
86:4;87:11
**mitigation (3)**

**miles (2)**
77:4;82:3,19
**mixed (1)**
32:11
**modified (4)**
59:8;21,24;120:14
**moment (7)**
52:23;55:2,25;59:11;
73:7;115:17;136:7
**Monday (1)**
12:12
**monetization (1)**
99:8
**money (12)**
84:5;86:4;88:5;
93:20;100:21;102:7,8;
103:17;112:18;121:19;
155:7;156:10
**month (4)**
40:15;85:4,12;97:21
**monthly (1)**
49:1
**months (1)**
31:8
**more (42)**
8:21,22,25;9:4,7;
18:9;26:8,21;42:25;
46:10;47:15;48:23,24;
52:10;67:12;77:9,14;
81:6;83:5;84:8;85:17;
87:23,25;88:1;92:25;
94:9,18;100:25;
101:14,18;103:7;
113:13,22,22;115:1,2;
119:6;134:7;136:1;
138:8;151:24;152:12
**morning (19)**
5:6;24:3,4,7,23;
39:10;53:11,12;54:3,5;
63:3,4;96:2;97:20;
111:14;125:22;130:9,
15;131:18
**Morris (1)**
43:25
**most (6)**
16:7;30:13;41:8;
56:25;98:4;113:3
**motion (58)**
5:9,13;7:11,13,15;
8:24,25;10:13;13:2,3,
11,11,14,22;14:3,4;
24:2;25:5,6,8,16,18,24;
26:1,1,3,5,11,17;27:4,
5,11,12,18,18,19,22;
29:3;32:3;34:16;35:11,
11,12;36:13;37:8,11;
39:9,21,24;46:2,8,17;
47:23,23,25;55:19;
132:9,14
**motions (1)**
40:3
**motivating (1)**
121:25
**motives (4)**

Min-U-Script®
Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 172
of 185

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(14) Manges - motives

48:13;75:22,23;
93:19
**mountains (1)**
117:25
**movants (7)**
31:22;32:17;35:3,8;
36:12;37:4;41:6
**movant's (1)**
36:3
**move (16)**
20:23;24:10;42:20;
44:11;49:17,17;50:14;
51:21,22,22;52:4;
73:21;88:7;94:6;
134:13;138:7
**moves (1)**
77:24
**moving (14)**
25:1,22;27:15;29:6;
33:18,18;83:19;95:12;
105:24;115:16;116:17;
134:12;146:16;150:25
**much (28)**
21:6;39:21;45:16;
46:9;57:25;62:15;70:4;
74:3;75:17;77:18,25;
97:8;99:8,20;100:12,
12;102:21,22;104:10;
108:8;112:9;113:12;
119:20;128:2;132:12;
141:11;142:24;157:4
**multiple (2)**
122:19;156:1
**municipal (3)**
51:25;52:9;150:5
**municipalities (2)**
143:6;148:4
**must (5)**
32:14;35:2;79:13;
108:7;124:13
**mute (3)**
22:7;73:6;143:19
**muted (5)**
70:14;72:8;115:5,18,
19
**muting (1)**
71:19
**myself (8)**
34:6;90:6;96:19;
99:20;115:5;116:8;
150:17;151:21

**N**

**name (7)**
10:23;75:25;95:21;
105:10;126:3,22;
153:15
**names (1)**
32:7
**narrow (4)**
67:12,15,16,18
**national (1)**

19:22
**nature (1)**
134:13
**NCPA (1)**
148:5
**near (3)**
92:22,24;98:9
**nearly (1)**
154:12
**necessarily (1)**
57:11
**necessary (3)**
5:13;106:3;111:18
**necktie (1)**
104:23
**need (48)**
6:4,5,7,10,17;8:6;
10:24;15:15,15;23:4,6;
24:20;32:19;36:25,25;
37:2;43:12;47:13;
48:19;53:16;55:11;
60:25;61:18;74:17;
85:22;94:10,11;95:16;
101:14;105:10;106:9;
111:18;116:13;122:25;
123:1;127:18,22;
128:1;129:5;130:12,
16;134:6;139:15;
141:25;142:3;149:15;
152:8;156:20
**needed (4)**
43:18;127:16,20;
128:1
**needs (10)**
15:15;40:9;46:19;
47:11,11,12;48:7,9,19;
86:2
**negligent (1)**
111:23
**negotiate (1)**
111:21
**negotiated (1)**
102:25
**negotiates (1)**
45:10
**negotiating (5)**
47:20;92:17;94:2;
112:20;135:7
**negotiations (4)**
40:13;47:18;64:11;
128:11
**Neither (2)**
65:17;99:18
**net (1)**
110:12
**Neumeister (19)**
53:21;54:1,3,5;55:1;
130:13;135:15;136:3,
7,10,18,21,22;137:6,
18;138:4,6,10;149:15
**New (6)**
34:14;39:1;80:19;
105:17;111:9;136:15

**Newman (2)**
51:14;52:17
**news (2)**
61:11;135:9
**Newsom (2)**
79:19;114:16
**newspaper (1)**
28:1
**next (13)**
31:19;61:12;85:12;
98:25;99:5;112:1;
114:11;115:9;126:16;
127:9;130:12;141:23;
142:12
**Nice (1)**
62:14
**night (6)**
10:22;105:16;
131:17;135:20,24;
153:6
**nine (2)**
30:12;31:6
**ninety-eight (2)**
38:10,12
**Ninth (3)**
66:10;67:2,3
**Nobody (3)**
13:8;47:3,7
**noise (5)**
25:11;107:6;109:6;
120:16;123:14
**NOL (1)**
114:15
**non (1)**
68:18
**nonaccepting (1)**
108:2
**nonattorney (2)**
75:14;92:3
**nonbankrupt (1)**
66:10
**noncontractual (8)**
144:25;145:14;
146:4,9,15,21,24;147:5
**noncreditor (1)**
85:22
**nondebtor (3)**
66:7,9,13
**none (1)**
10:19
**nonprejudicial (1)**
64:7
**nonrecipients (1)**
11:25
**noon (2)**
51:17,17
**nor (3)**
29:24;87:4;99:18
**normal (1)**
134:19
**normalized (1)**
110:12
**normally (1)**

135:5
**Northern (2)**
66:20;90:11
**note (2)**
61:24;114:20
**noted (5)**
28:21;40:22;76:6
**notice (6)**
7:11;38:14;66:11,16;
68:9;69:8
**notices (4)**
5:18;7:13;38:13;
153:24
**noticing (1)**
32:22
**notion (1)**
117:10
**November (3)**
19:23,24;86:16
**number (30)**
8:2;9:1;18:22;19:10;
28:12;37:14,22,24;
38:1,24;40:10,23;
78:22;82:19,20;96:20;
97:23;98:13;105:15;
106:24;107:1;110:9,
10,10;112:8;134:13;
139:9;140:11;148:10;
151:25
**numbers (9)**
8:17;16:3;19:12,13,
14,15;45:6;82:14;83:1

**O**

**obeying (1)**
89:16
**object (3)**
76:5;137:12;148:8
**objected (1)**
59:18
**objecting (1)**
67:4
**objection (23)**
45:24;51:4;55:13;
58:5,8,14,23;59:20;
61:9;63:8;72:13,19;
73:13;96:20;97:7;
130:7;131:9;135:19,
22;137:11;138:24;
139:9,21
**objections (21)**
38:19;51:5;58:21;
63:10,12;64:6;67:10;
95:24;96:18;105:15;
110:7;127:1;131:21;
132:8;135:22;138:21;
139:18;144:23;150:15;
156:14,16
**objectors (4)**
51:25;52:9;150:5;
152:19
**obligation (3)**

35:4;66:8;152:1
**obligations (3)**
56:13;57:13;147:25
**obtain (1)**
9:7
**obvious (1)**
25:19;26:10
**obviously (8)**
45:9;63:19;102:23;
122:24;125:1;142:12;
148:12;149:11
**occasions (1)**
78:23
**occurred (3)**
66:12,16;78:6
**occurrence (1)**
124:8
**occurs (1)**
68:25
**o'clock (1)**
105:17
**October (1)**
86:16
**off (26)**
6:19;22:4,5;24:9,10,
11;50:15;55:1,3,4;
57:17;61:20;62:20,21;
74:16;81:11;85:25;
102:4;132:15;134:16;
135:7;138:7;147:10;
148:19;149:7;156:22
**offend (1)**
117:14
**offense (1)**
138:1
**offer (1)**
15:25
**offered (2)**
97:16,17
**office (6)**
9:24;55:17;56:5;
73:24;97:1;112:25
**officer (1)**
12:22
**offline (4)**
61:1,2,6;137:4
**offs (1)**
94:10
**often (1)**
45:11
**old-fashioned (1)**
152:14
**once (6)**
29:14;119:14;
127:17,25;132:2;
133:10
**one (64)**
9:16;21:8;37:22,24;
38:2,24;39:21;40:10;
41:1,9;42:20,25;43:2;
48:23,24;53:20;54:7;
56:25;58:2,10,21;59:2;
60:14;61:23;66:18;

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 173
of 185

67:24;80:13;82:19,20;
86:16;89:5;90:15;
96:20;103:10,16;
107:18;113:1;115:17;
121:25;122:18,22;
123:3;125:5;126:2;
127:1;130:13;132:8,
19;133:1;134:23;
137:2,24,25;138:8,17;
139:24;140:1,6;
141:16;145:4;151:15;
153:3,3,8
**ones (5)**
19:7,9;86:12;115:21;
124:25
**one-sided (1)**
118:21
**one-third (1)**
113:21
**Only (25)**
11:24;28:16;33:18;
36:5,8,17;37:25;38:5,
15,21;58:13,22;83:6;
98:7;99:13;103:11;
104:17;107:2,25;
122:23;126:7;127:14;
141:11;146:14;156:3
**oOo- (1)**
5:2
**open (3)**
16:17;125:14;155:6
**opening (2)**
7:2;148:19
**opens (1)**
86:14
**operate (2)**
94:25;111:20
**operating (1)**
49:1
**opinion (2)**
16:11;26:2
**opportunity (10)**
10:2;14:23;16:8;
43:9;54:16;96:21;
123:8;12;155:16;
156:13
**opposant (1)**
18:2
**oppose (4)**
27:12;37:9;123:9;
136:4
**opposed (2)**
39:2;108:11
**opposite (1)**
46:13
**opposition (1)**
24:2
**option (11)**
15:25;16:11,12,15;
59:16;60:15,15,18,19,
20;103:4
**orally (1)**
152:2

**ordeal (1)**
110:23
**order (38)**
5:3;29:14,16;33:16;
47:9;49:5;51:22;55:15;
56:11;57:13;110:14,
17;120:9;121:5,6,8,14;
122:8,11,11,18;124:6,
12,13,19,21;127:16;
132:7;137:15,22;
144:3;147:12,13;
151:5,16,16;154:17;
155:19
**ordered (1)**
13:23
**ordinary (1)**
145:15
**organization (1)**
90:21
**originally (2)**
39:9;100:3
**others (16)**
9:4;39:23;57:20;
74:10,16;85:7;91:9;
94:5;112:16;118:22;
128:12;139:22;143:7;
148:5;151:24;155:3
**otherwise (2)**
51:7;77:25
**ought (11)**
59:6,13,14,19,21,24;
60:12,19;62:10;73:9;
127:11
**ourselves (1)**
118:13
**out (86)**
8:20;9:11;10:7,10;
12:10,24;13:1;16:5;
19:24;20:19,21;23:18;
24:12;27:1;29:18;
30:12;35:9;36:16;
37:25;38:9;39:5;40:15;
41:17;42:14,22;43:20,
24;45:12,22;46:5,16,
20;47:10,17;48:6;54:1;
56:12;57:14;62:13;
68:14;70:6;72:21,25;
73:18;74:4;75:12;76:3,
10;78:12;79:20;80:9,
13;83:13,16;86:13,15;
88:4;89:6;92:4;94:6;
95:2;98:9;101:2;102:1,
7;108:13,15;112:22;
114:2,9;118:16;
120:22;123:13;124:4;
128:2;129:1,7;130:14;
134:8;137:19;141:17;
142:1;144:20;149:16;
151:18;152:11
**outcome (3)**
17:8;22:21;23:10
**outcomes (1)**
90:11

**outdated (1)**
96:25
**outline (1)**
142:9
**outlining (1)**
90:19
**out-of-court (1)**
64:10
**outs (1)**
79:23
**outset (1)**
146:16
**outside (3)**
67:15;78:7;115:6
**outstanding (5)**
38:15,16;135:21;
143:13;150:6
**over (24)**
8:14,17;61:12;64:11;
69:24;70:2;85:19;89:2,
14;90:24;91:20,20;
96:15;98:11,11;99:10;
104:8;112:1;134:17;
136:1;149:8;150:24;
152:5;154:16
**overall (3)**
77:22;88:1;89:11
**overhang (6)**
29:19,19;30:14;
40:11,16;42:13
**overloaded (1)**
117:11
**overridden (1)**
14:25
**oversight (1)**
56:22
**overstate (1)**
40:10
**overstating (1)**
27:9
**overturn (2)**
14:3,15
**overwhelming (4)**
11:12;26:20;40:25;
44:17
**overwhelmingly (2)**
31:14;40:22
**overwhelms (1)**
67:12
**owe (3)**
69:13;112:19,20
**owed (1)**
102:21
**own (10)**
8:20;9:8;12:24;13:1,
12;46:23;83:4;102:16;
112:13,14
**owned (1)**
38:4
**owner (5)**
69:6,7,13,14,16
**ownership (1)**
107:13

**P**

**Pacific (1)**
77:23
**pack (1)**
143:6
**package (1)**
28:12
**packets (6)**
9:21,22;10:7,10;
36:16,17
**page (8)**
45:1,13,24;98:12,25;
99:1,5;118:25
**pages (4)**
40:23;97:23;99:5;
105:17
**paid (32)**
58:16;68:15;80:9;
85:7;86:12;95:2;98:9,
15,17,18,24;99:2,3,8,
12,14,15;102:11,22;
103:2,18;107:14,18;
119:16;121:24;122:2,
6;132:3;133:14,21,22;
155:10
**pandemic (1)**
110:24
**panel (17)**
24:12;42:23;50:15;
55:2,4,6;57:17;62:21;
70:7,8;74:4;115:8;
117:1;126:11;128:19;
129:14;130:4
**papers (4)**
10:22;14:13;32:4,7
**par (1)**
119:17
**Parada (31)**
6:22;22:2,8;24:1;
41:24;42:6,18;44:10;
53:7;55:3,25;62:22;
70:8,17;75:13;79:14;
95:13;115:10,15,16,20,
25;129:15,16,20,21;
130:2;139:4;143:20;
144:10;153:8
**paragraph (1)**
63:18;65:4;98:25
**pardon (1)**
113:23
**parent (1)**
38:4
**parody (1)**
119:2
**part (23)**
17:9;20:2;26:10;
32:22;57:4,6;58:4;
59:20;60:11,14;63:20;
75:21;86:21;87:5;88:7;
110:10,17;124:17;
128:23,24;145:6;

146:1,2
**participants (1)**
152:18
**participants' (1)**
24:12
**participate (1)**
157:3
**participated (2)**
78:2,3
**participating (1)**
154:8
**participation (1)**
73:17
**particular (6)**
25:3;59:20;62:6,8;
113:14;140:4
**particularly (5)**
29:1;86:13;124:12;
152:18;154:9
**parties (33)**
7:15;14:7;24:1;
25:22;27:15;29:6;53:4;
55:14;57:9,14;63:22,
24;77:19;80:1;90:2;
103:24;106:1;115:16;
118:22;119:8,10,13,18;
122:19;123:6;142:10;
143:14;145:17,22;
147:9;150:1,3;154:17
**parties' (1)**
64:7
**parties-in-interest (1)**
28:22
**parts (3)**
58:10;76:9;105:24
**party (7)**
25:1;66:7,9,11,13,
15;78:17
**party-in-interest (1)**
154:6
**Pascuzzi (5)**
63:8;64:4,20;67:22;
68:20
**pass (4)**
89:2,17,17;133:20
**passed (2)**
113:1;130:15
**passion (1)**
95:8
**passionate (1)**
89:22
**past (7)**
75:24;76:21;83:14,
17;113:5;141:12;152:6
**patch (1)**
101:4
**path (1)**
81:22
**pause (2)**
79:19;153:3
**pawns (1)**
90:13
**pay (8)**

58:20;68:4;86:14;
88:16,20;89:10;101:1,
16
**paying (1)**
118:15
**payment (8)**
59:3,4;79:2;99:25;
100:14,14,18;121:1
**payments (5)**
98:10,22;99:14,19;
100:8
**pays (1)**
58:11
**PBGC (1)**
73:1
**peep (1)**
57:1
**pending (6)**
26:18;67:10;74:15;
131:24,25;150:15
**pennies (1)**
113:17
**Pension (3)**
71:6;72:16,18
**people (70)**
6:18;8:3,13,14,19;
9:9,12;10:19;11:18;
12:3,4,11;16:2;17:12,
13;19:6,11,17,23;21:9,
11,12,16;22:5;25:18;
31:11,14;36:15;38:9,
10;39:22;40:3;41:13,
16;42:2;43:20,22;44:1,
4;46:5;47:2,19;49:8,
24;51:23;52:4;53:22;
80:22;85:6;88:2;93:13,
17;103:16;107:1,2,25;
108:10;112:23;118:18;
122:1,6;123:4;127:7;
135:7,12;136:15;
142:11;148:5;154:1,11
**people's (2)**
48:13;93:19
**per (2)**
45:25;153:16
**percent (19)**
36:22;38:10,12;41:9,
12,15;45:2,2,3,3;89:5;
94:4;96:15;107:17,19;
118:18;122:1;139:25;
140:2
**percentage (2)**
17:11,11
**percentages (1)**
38:13
**perfect (2)**
21:5;87:17
**performance (1)**
69:14
**perhaps (6)**
27:18;57:1;65:14;
137:22;142:5;151:23
**period (7)**

47:10;57:23;87:1;
90:12;98:11,11,18
**permitted (1)**
67:21
**permitting (1)**
110:11
**person (6)**
9:16;73:24;84:1;
91:12;103:19;156:5
**personal (8)**
23:22;83:13;91:2;
93:19;95:11;102:17;
108:21,24
**personally (3)**
27:10;91:4;97:19
**person's (1)**
96:14
**perspective (1)**
25:6
**persuaded (1)**
151:4
**persuasive (1)**
33:15
**pessimistically (1)**
79:7
**PFC (1)**
34:16
**PG&E (33)**
23:12;77:3,14;78:13;
79:3,24;80:3,5;81:4,
22;82:16;83:3,8,10,24;
84:14;85:25;87:1;88:9,
18;89:11,17;90:9;92:2;
94:8,25;97:21;101:1,5,
10;109:1;111:9;113:4
**PG&E's (5)**
78:5;81:15;96:17
**Pharmaceuticals (1)**
66:19
**phase (1)**
5:15
**Phelps (1)**
38:4
**phonetic (1)**
149:10
**pick (3)**
88:19;89:9;127:13
**pie (2)**
84:13;87:11
**piece (2)**
23:3,11
**piecemeal (1)**
108:8
**pieces (2)**
19:3;23:13
**Pino (25)**
126:15,15;129:15,
16,16,18,18,24;130:6,
16,24;131:1,2,6,8,8,12;
133:3,10;134:6,9,11,
23,25;135:2
**pipeline (1)**
137:24

**pitch (1)**
119:22
**Pitre (29)**
112:16;115:11;
116:1,2,3,4,7;117:3,4,
5,7,8,18,20,21,22;
118:5;119:22;120:8,
18;121:1,18,23;
122:22;123:11,18;
125:14;126:10;127:7
**Pitre's (1)**
125:2
**place (10)**
22:24;58:7;66:11,15;
68:9;83:10;95:25;
118:20;122:16;124:7
**placed (1)**
103:9
**plain (2)**
36:9;67:19
**plaintiff (1)**
142:6
**plaintiffs (2)**
141:14;151:22
**plaintiffs' (1)**
112:15
**plaintiff's (1)**
46:22
**plan (141)**
14:17;15:14;17:12,
14;20:8,9;23:9;25:21;
26:20;29:17,17,24,24;
30:2;31:14;35:16;39:6;
40:25;45:11,18;47:9;
49:23;52:10;54:6;58:6,
19,22;59:3,10,21,23;
60:11,12,18,20;61:4;
62:6;63:18,19;64:16,
21,21,24;65:3,11;66:3,
4;67:11;72:13,18;
76:12,14,24;77:6,11,
21,25;78:10,16,19;
79:6;80:4,11,25;81:13,
14;82:19,25;83:22;
84:22;85:10,11,16,17;
86:1;88:8,23;89:21,24;
93:23;94:18;96:18,22,
24;98:5,10;99:23;
101:8,10;102:24;
104:12;105:18,23;
106:10,16,25;107:16;
112:7;117:10;118:18;
119:12;120:4,14,23;
121:4,4,12,16,19,20;
122:2,9,23;123:1,24;
124:1,20,20;127:10,
25;131:10;132:6,6;
133:4,7,10,13,14,14,
22;134:5;137:3,21;
139:25;144:20;145:19;
147:9;151:5,19;155:5
**planned (1)**
69:24

**planning (1)**
78:21
**plans (1)**
132:5
**play (3)**
73:9;119:24;124:4
**player (2)**
90:11,12
**players (3)**
106:1;140:23;154:21
**playing (1)**
119:19
**pleaded (1)**
109:2
**pleadings (5)**
24:25;26:16;28:23;
32:23;117:25
**please (22)**
9:19;12:17;22:12;
46:2;53:8,25;63:1,2;
70:11;74:24;95:14,20;
105:7;117:19,20;
129:16;136:12,18;
139:4,10;153:9,10
**pleased (1)**
40:4
**pleasure (3)**
53:14;54:4,14
**plenty (1)**
49:6
**ploy (3)**
26:9;48:11,12
**pm (1)**
74:20
**point (39)**
8:17,18;10:13;24:21;
35:8;42:11;46:16,20;
47:1,17;49:8,8;54:9;
67:11;68:10;75:20;
76:3,22,24;83:5;84:17;
85:23;87:24;88:3;
90:23;96:23;97:22;
106:8;117:15;118:2,
16;119:17;120:6;
121:11;147:14;148:16;
150:17;152:1;155:6
**pointed (9)**
39:15;76:25;86:23;
91:6;93:10;108:13,15;
112:22;120:22
**pointing (1)**
76:20
**policy (1)**
84:14
**Political (1)**
90:19
**pool (2)**
100:3;103:16
**poor (1)**
94:12
**population (1)**
28:18
**portion (5)**

9:22;28:17,18;50:7;
60:2
**position (14)**
56:9,15,16,17,23;
57:12;60:24;72:15;
78:17;81:3;86:25;
91:18;92:17;151:5
**positioned (1)**
95:2
**positioning (1)**
81:11
**positive (1)**
40:22
**possibility (1)**
113:25
**possible (8)**
30:13,15;38:7;51:21;
73:4;79:3;123:2;150:8
**possibly (4)**
11:23;98:4;101:21;
106:2
**post (2)**
93:12;97:1
**postal (1)**
97:4
**posted (1)**
92:5
**posting (1)**
154:14
**post-petition (1)**
137:13
**posts (2)**
9:1;28:1
**post-traumatic (1)**
108:25
**posture (1)**
26:17
**pot (1)**
102:2
**potential (6)**
30:14;32:21;66:12,
16;68:16;111:11
**potentially (1)**
64:15
**pounding (3)**
107:4;109:3,5
**Powell (1)**
84:1,2
**power (6)**
80:8;81:6;94:1,9;
123:2;149:6
**powerful (1)**
80:7
**practicable (2)**
59:5,14
**practice (1)**
74:1
**Practices (1)**
90:19
**pragmatic (1)**
94:18
**precedent (1)**
39:13

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 175
of 185

**preceding (1)**
83:6
**precipitously (1)**
111:15
**precisely (1)**
133:20
**precluded (2)**
48:7;91:18
**pre-confirmation (3)**
66:12,16;68:9
**prefer (2)**
24:13;115:2
**preference (3)**
25:20;137:4;142:4
**preferential (2)**
100:5,6
**preferred (1)**
114:1
**prejudice (2)**
26:10;28:21
**prejudicial (1)**
29:13
**premised (2)**
25:24;26:23
**premium (2)**
119:7,15
**premiums (1)**
119:10
**prepared (8)**
50:19;52:19;55:20;
81:16;82:16;83:24;
89:20;152:19
**present (2)**
54:16;114:23
**presented (7)**
26:25;27:6,25;28:5,
6;38:14;119:25
**presenting (2)**
63:24;103:25
**preserve (1)**
114:14
**preserved (2)**
145:23;147:10
**presidential (1)**
93:13
**pressure (3)**
20:25;114:5,10
**presumably (5)**
30:1;80:18;115:13;
119:23;128:19
**presume (1)**
144:10
**presumption (4)**
10:18;11:5;21:12;
38:8
**pretty (4)**
29:2;45:16;127:2,10
**prevailing (1)**
139:23
**prevent (2)**
35:23;48:14
**prevented (2)**
91:22,23

**prevents (1)**
111:17
**previously (1)**
92:10
**price (1)**
114:5
**prima (1)**
13:14
**Primarily (1)**
7:23
**primary (3)**
78:11;80:3;81:12
**Prime (15)**
9:18;16:2,4;20:19;
21:15;27:15,15,25;
33:13;38:3,16;43:8;
47:4;48:5;121:25
**principal (1)**
144:21
**principle (4)**
11:9,10;62:12;144:1
**printout (1)**
125:21
**prior (5)**
10:25;25:6;27:4;
86:23;137:15
**priority (3)**
102:12;114:1,22
**privilege (2)**
98:22;122:25
**privileges (1)**
123:7
**pro (2)**
21:13;153:16
**probably (11)**
10:6;24:17;34:22;
92:25;96:15,16;
101:17;141:24;144:8;
148:10;150:15
**probationary (1)**
87:1
**problem (15)**
5:14;7:7,24;10:1;
15:2;19:4;20:2,21;
35:10;39:3;46:19;
61:19;82:6;88:5;153:2
**problematic (1)**
94:24
**problems (12)**
10:3;44:1;46:21,21;
85:21,22;110:24;
111:9,21,22;131:3;
144:18
**procedure (2)**
7:22;154:13
**procedures (7)**
22:24;28:13,20;64:4;
96:5;125:17;149:22
**proceeding (15)**
57:15;76:23;77:19;
78:18;81:20;90:10,14;
94:2,5;110:14,25;
112:15;126:21;127:22;

128:7
**proceedings (7)**
75:14;92:7;104:8;
127:18,24,25;157:10
**process (24)**
7:17;10:4;15:5,6;
17:9;20:18;21:15;
22:24;23:5;29:24;
40:17;43:20;69:1;
87:11;91:8;96:3;
103:21,22;112:2;
127:4;140:3;145:16;
146:3;152:6
**processes (1)**
93:11
**produced (1)**
13:16
**product (1)**
111:16
**profit (1)**
119:14
**profited (1)**
119:13
**profound (1)**
118:10,11
**progress (4)**
136:9;143:24;149:3;
153:7
**promise (2)**
18:3;116:24
**promised (2)**
44:12;100:18
**prompt (1)**
100:18
**promptly (1)**
29:15
**proof (7)**
28:11,16;33:23;
82:24;89:19;104:5;
140:4
**propensity (1)**
89:11
**proper (7)**
10:2;25:5;102:20;
103:2;153:23,23,24
**properly (2)**
23:12;38:2
**property (3)**
11:1;108:19,21
**proponents (1)**
142:7
**proposal (1)**
128:22
**propose (2)**
45:11,17
**proposed (12)**
89:25;96:22;110:9,9,
10;114:16;125:11;
127:23;128:15;135:18,
19;144:3
**proposing (1)**
128:4
**prospect (2)**

111:25;122:2
**protect (2)**
90:6;112:12
**protected (2)**
15:5;81:7
**prove (1)**
34:17
**proves (1)**
110:18
**provide (4)**
8:21;92:16;113:22;
140:1
**provided (1)**
133:14
**provides (1)**
66:7
**providing (2)**
8:25;77:25
**provision (4)**
59:10;64:21,22;
148:8
**provisional (1)**
139:25
**provisions (7)**
132:4;133:13,13;
139:22;144:2;148:10;
151:1
**public (4)**
78:13;79:6;88:21;
154:6
**pulled (1)**
89:14
**Pullo (9)**
11:14,16,18;33:14;
40:24;43:5;44:6;96:3,9
**Pullo's (5)**
10:5;14:9;28:10;
37:24;106:23
**punitive (1)**
109:1
**purchase (1)**
94:5
**purchased (1)**
119:13
**purpose (2)**
16:14;80:25
**purposes (3)**
81:15;114:17;121:14
**Pursuant (1)**
5:5
**pursued (4)**
147:16,16,17,20
**purview (1)**
83:24
**push (2)**
80:9;137:7
**pushed (1)**
88:4
**pushing (1)**
139:3
**put (42)**
21:4;25:5;40:14;
54:10;55:20,23;69:8,

22;71:21;72:1,1;73:10;
76:25;78:10,18,20;
79:21,21;81:24;82:18;
88:3;91:23;92:4;102:9;
104:23;105:14;114:5;
120:9,11,12,20;121:19;
122:8,11,17;125:18;
127:10,12;136:1;
143:18;152:10;153:9
**putting (5)**
23:13;26:9;86:24;
114:10;140:11
**puzzle (3)**
23:3,11,13

**Q**

**qualified (1)**
15:17
**quantify (1)**
82:2
**quarter (1)**
74:7
**queue (1)**
54:9
**quibble (1)**
84:18
**quick (4)**
15:24;99:25;105:16;
126:2
**quickly (11)**
13:2;14:8;16:6,10;
26:1,1,4;123:2;129:8;
134:13;139:20
**quite (2)**
18:22;123:18
**quote (2)**
45:16;112:10

**R**

**raging (1)**
94:19
**Rain (1)**
100:25
**raining (1)**
85:11
**raise (19)**
29:16;30:12;40:15;
44:6;51:10;52:25;
53:16;55:21,22;92:8;
93:7,21;94:10,11,13;
125:11;132:13;136:4;
139:19
**raised (18)**
5:11;26:5;27:2;31:5,
6;50:4;51:8;53:9;73:1;
75:24;93:6;110:24;
131:19;148:4;150:2;
151:21,25;153:4
**raises (1)**
136:17
**raising (6)**

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 176
of 185

22:10;26:3;53:22;
136:6,16,24
**ran (1)**
89:15
**rank (1)**
25:23
**rarer (1)**
153:1
**rate (8)**
38:10,12;59:19,22;
60:10,13;62:4;111:17
**rates (4)**
49:23;94:11,13;
111:17
**rather (5)**
20:25;29:15;35:23;
39:24;140:14
**Ray (1)**
157:6
**re (2)**
32:1;38:25
**reach (2)**
67:16;150:3
**reached (7)**
35:6;64:9;97:18;
129:1,6;131:18;142:13
**reaching (2)**
43:24;57:14
**read (7)**
32:7;35:14;66:23;
91:21;95:24;118:24;
124:17
**reading (7)**
36:5,8;67:12,19,19;
102:3;150:25
**reads (1)**
65:5
**ready (4)**
14:10;53:15;56:9;
75:5
**real (7)**
15:2;42:14;49:8;
94:18;108:16,19;
150:18
**Realistically (1)**
150:8
**realize (1)**
51:11
**realized (1)**
94:8
**realizing (1)**
46:18
**really (19)**
5:13;6:10;12:5;22:4;
32:19;33:6,19;35:15,
16;46:18,20;47:7;
60:17;73:2;75:12;
83:24;127:16,18;
154:20
**rearrange (1)**
113:8
**rearranging (1)**
5:8

**reason (19)**
8:5;15:16;21:14,17;
31:13;39:12;43:17;
45:5,6;46:8;57:7;
65:23;67:4;72:10;
82:19,20;114:6;
120:21;130:20
**reasonable (1)**
58:24
**reasonably (3)**
59:5,14;101:24
**reasons (7)**
15:1,2;21:13;38:22;
40:10;114:2;122:1
**rebuild (2)**
41:18;100:21
**rebuilding (1)**
108:20
**rebut (1)**
11:6
**rebuttal (3)**
7:2;18:1;21:25
**recalibrated (1)**
82:13
**recall (4)**
9:15;64:12;101:25;
150:25
**receipt (2)**
10:19;38:9
**receipts (1)**
23:17
**receive (11)**
8:19;9:21;12:1;
21:23;28:8;98:6;100:8,
14;108:3,4;119:11
**received (14)**
5:6;9:10,13,17,24;
11:19,24;17:11;18:21,
21,23;97:1,4;138:14
**receives (1)**
65:1
**receiving (4)**
7:24,25;12:11;20:5
**recent (1)**
10:5
**recently (1)**
18:9
**Recess (4)**
74:20;135:12;142:6;
143:23
**recession (1)**
111:13
**recipients (1)**
11:24
**reclosers (1)**
83:23
**recognize (1)**
53:2
**recommendation (1)**
56:24
**recommendations (1)**
57:15
**reconcile (1)**

23:4
**reconciliation (1)**
145:16
**reconvene (1)**
143:20
**reconvened (1)**
135:11
**record (16)**
10:23;12:17;27:24;
30:24,25;31:13;35:13,
21;76:4;105:8;109:15;
123:18,22;126:3,22;
137:10
**recording (1)**
74:21
**recount (2)**
41:8,10
**recoupment (1)**
147:10
**recovering (1)**
18:16
**reduced (1)**
113:21
**reduction (2)**
82:5;98:15
**Reeder (16)**
138:14,18;139:4,6,
10,12,13,14,20;140:7,
9,13,18;141:2,4,7
**refer (1)**
44:24
**reference (4)**
44:20;78:9;97:22;
98:25
**referenced (1)**
45:15
**references (1)**
45:1
**referred (3)**
17:13;49:19;60:13
**referring (3)**
44:23;49:23;61:25
**refers (1)**
26:22
**reflect (3)**
64:8;123:22;152:12
**reflecting (1)**
71:12
**reflects (1)**
143:2
**reform (1)**
91:2
**regard (2)**
11:11;127:3
**regarding (5)**
83:22;90:5;97:8;
99:5;119:2
**regards (1)**
98:12
**registration (23)**
47:19;92:15;100:24;
114:6;118:7,20,22;
119:2,4,6,9;120:13,15,

19,23;122:4;123:19,23,
25;124:11;127:2,3,11
**regroup (1)**
33:19
**reinvent (1)**
137:22
**reiterate (4)**
38:8,18,24;40:19
**reiterated (1)**
82:12
**reject (3)**
41:1,2,3
**related (2)**
108:23;125:15
**relates (2)**
97:7;144:22
**relating (1)**
51:5
**relation (1)**
8:6
**relationship (1)**
146:15
**relationships (1)**
47:6
**relative (1)**
8:7
**release (2)**
65:6;68:5
**released (2)**
68:4;69:17
**relegates (1)**
102:2
**relevance (1)**
121:17
**relevant (1)**
54:19
**relief (5)**
25:2;39:8;131:22;
132:9;134:15
**relieve (1)**
67:14
**relitigate (1)**
137:16
**relocation (1)**
108:21
**reluctantly (1)**
79:7
**rely (1)**
45:8
**relying (1)**
83:18
**remain (1)**
63:10
**remainder (1)**
76:13
**remaining (10)**
48:1;51:3;54:8;
63:10,17;76:13;98:6;
99:1,12;100:8
**remark (1)**
125:5
**remarkable (1)**
118:2

**remarks (2)**
37:21;76:8;96:24
**remedies (2)**
58:15,18
**remedy (1)**
88:23
**remember (5)**
47:18;101:23,24;
112:22;128:18
**remind (1)**
105:10
**remotely (1)**
152:13
**remove (2)**
129:14;156:22
**removed (1)**
135:3
**rent (2)**
67:23,25
**reopen (4)**
16:1,11,13;39:18
**reorganization (3)**
77:12,21;88:23
**reorganized (3)**
89:1;94:8;146:8
**repeat (2)**
67:9;105:14
**repeatedly (1)**
22:20
**reply (5)**
5:23;13:6,8;24:25;
60:23
**report (3)**
49:1;132:13;142:8
**reported (1)**
154:22
**REPORTER (2)**
22:9,13
**reporting (1)**
44:1
**reports (1)**
140:22
**represent (5)**
71:6;72:16;80:7;
96:19;106:20
**representing (4)**
55:19;91:9;106:1;
154:21
**represents (1)**
138:15
**request (11)**
7:21;32:20;36:11;
60:20;66:14;73:23;
110:16;125:22;135:18;
139:18;143:15
**requested (4)**
9:14;35:20;64:2;
92:13
**requesting (1)**
25:3
**requests (1)**
7:10
**require (4)**

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 177
of 185

78:16;110:17;
142:24;144:2
**required (3)**
41:4;88:12;110:20
**requirement (1)**
33:4
**requirements (2)**
32:13;121:20
**requires (3)**
37:22;88:21;108:2
**rescind (1)**
140:23
**research (1)**
87:20
**reservation (2)**
118:6;120:20
**reserve (11)**
7:1;54:11;95:22;
96:1,3,7;104:2,6;
110:13;115:3;116:22
**reserved (7)**
5:22;72:24;116:10;
145:17;147:5;149:21;
152:19
**reserves (1)**
113:13
**Residential (1)**
38:25
**resigned (1)**
93:11
**resolution (24)**
54:17,20;64:3;99:25;
102:25;106:3;110:9,9,
10,15;125:17;127:9;
131:19;140:15,22;
141:4;142:9,13,15;
145:16;146:3;147:7;
148:15;149:22
**resolve (8)**
46:11;51:5;61:6;
63:12;72:20;137:4;
148:10,24
**resolved (24)**
45:24;47:20;51:19;
60:25;61:10;63:13,19;
64:12;73:4,5,19;102:7;
127:1,13;128:2;
131:22;132:10,16;
135:19;137:14;142:9;
148:20;149:23;150:3
**resolves (1)**
148:9
**resolving (1)**
63:17
**Resource (1)**
88:21
**resources (2)**
83:9;88:25
**respect (25)**
27:20;51:3,6;58:3,5,
13;59:1,8;63:17;
123:23;125:14,15;
135:22;137:13;143:14;

144:23,25;145:1,2,9,
13,21;146:6;147:10,15
**respectfully (4)**
30:8;101:9;110:5,13
**respond (6)**
39:23;49:4;55:18;
69:23;96:2;156:13
**responded (2)**
59:20;60:11
**response (8)**
39:10;51:18;56:8;
57:3;58:8,16,23;69:22
**responsibility (4)**
78:10;89:4;102:6,17
**responsive (1)**
26:16
**rest (2)**
34:8;75:17
**restrict (1)**
114:9
**restricted (1)**
156:11
**restrictions (1)**
119:20
**restructure (3)**
77:22;94:16;95:3
**restructuring (4)**
82:21;83:11;86:24;
94:18
**rests (1)**
82:24
**result (5)**
65:6;68:6;78:1;
97:15;110:19
**results (1)**
41:4
**resume (3)**
74:8;143:16;152:16
**resumed (1)**
152:24
**retained (1)**
147:15
**retainer (1)**
106:21
**retaining (1)**
107:13
**retired (1)**
18:9
**returned (2)**
39:13;41:2
**reveal (2)**
49:3;136:17
**revealing (1)**
123:7
**review (6)**
10:22;14:10;15:22;
33:4;57:18;137:2
**reviewed (2)**
40:20;54:6
**Reviewing (1)**
14:9;106:2
**revised (3)**
5:9;60:12;63:18

**revisions (2)**
62:5;137:3
**revisit (2)**
29:25;96:9
**revisiting (2)**
37:10;137:25
**revoting (1)**
16:17
**rhetorical (1)**
43:10
**Richard (2)**
78:4;126:24
**ridiculous (1)**
84:10
**right (84)**
6:13,24;7:6;8:17;
12:8;13:5;14:18,23,25;
15:3,4;18:5;19:25;
21:3,24;22:2;24:14;
25:14;27:12;32:7;
36:10,12;39:17;45:2;
48:8,9;49:9,12;52:11;
53:7,11;54:24;57:4,16,
18;60:8;61:15;62:21;
67:17;68:12;69:2,21;
70:20;71:2;74:19;75:1,
4;76:6;84:14,15,18;
85:1,3;87:2;88:4;
95:13;96:2;104:2;
105:3;115:10;120:25;
126:9,21;127:10;
129:22;130:25;132:23;
133:4,23,25;134:20;
136:6;138:4,5;140:7;
145:7;146:23,24;
147:19,20;148:22;
152:24;153:12;154:10
**rights (50)**
29:6;47:19;55:6;
64:7;92:15;95:22;
100:24;104:2;113:1;
114:7;118:6,7,20,22;
119:2,4,6,9,14,19,25;
120:1,3,13,15,19,20,
23;122:4,9,12,13,15;
123:19,23,25;124:12;
125:1;127:2,3,11;
145:17,19,22;147:5,9,
14,19,22;151:23
**riled (2)**
89:13,13
**ripe (1)**
61:14
**risk (14)**
31:15;77:3;81:15;
82:4,5,13,14;84:22;
85:18;86:19,20;
114:13;118:19;119:12
**risks (19)**
78:14,14;79:3,5;
80:3;81:12,14,23;82:2,
8,9,9,10;83:8;84:4;
89:20;94:22,23;119:7

road (4)
87:23,23;99:25;
102:15
**Robins (1)**
45:2
**rocks (1)**
82:3
**Roebbelen (3)**
58:1,2,4
**role (5)**
56:18;119:24;
151:23;155:4,4
**rolled (1)**
86:2
**room (4)**
53:8;95:11;127:8;
135:7
**roughly (2)**
5:12;76:9
**routine (1)**
143:18
**RSA (8)**
45:21,22;91:7,18,21,
23,23;124:2
**RSAs (1)**
76:24
**rule (5)**
37:23;39:15;77:2;
127:16;133:9
**ruled (2)**
110:2;138:2
**rules (1)**
53:24
**ruling (6)**
104:9,9,12;117:13;
129:8;142:1
**rulings (2)**
137:25;155:5
**running (5)**
8:13;15:18;40:9;
83:16;124:25
**rush (1)**
153:20

**S**

**Sacramento (2)**
78:3;90:23
**Safety (1)**
83:22
**sake (1)**
74:14
**sale (1)**
99:21
**same (26)**
11:7;26:3,4;27:3,17,
18,19;62:17;63:11;
65:12;74:14,17;77:25;
81:22;83:9;85:21;
111:4;114:8;117:15;
119:21;120:19;138:2;
140:10;143:18;150:15;
154:13

road (4)
87:23,23;99:25;
102:15

**SAN (3)**
5:1;131:25;143:16
**sat (2)**
29:6;92:3
**satisfaction (2)**
65:7;73:19
**satisfactory (1)**
73:20
**satisfied (2)**
20:24;21:1
**satisfy (2)**
31:22;37:1
**save (2)**
83:8,8
**saved (1)**
95:25
**savvy (1)**
73:24
**saw (2)**
27:11;52:13
**saying (14)**
15:21;18:21;34:20;
40:2;46:7;48:3,5;68:7;
87:24;94:10;122:3;
133:20;146:13;151:19
**scale (2)**
20:20,21
**Scarpulla (36)**
74:9;104:15,17,19,
22,25;105:2,5,7,11,12,
12,22;106:12,15,18;
107:7,9,12,20,22,24;
109:4,7,9,12,14,18,19,
22;110:1,3,5;111:2;
112:22;113:6
**schedule (12)**
5:10;35:7;50:6,25;
73:22;75:10;100:7;
125:12,18,19;141:18,
19
**scheduled (7)**
60:22;72:23,25;
97:21;98:22;116:15;
153:19
**schedules (2)**
100:14;116:17
**scheduling (2)**
52:24;125:9
**Schlepp (4)**
32:1;35:15,24;37:3
**school (3)**
10:17;11:4;53:23
**scope (3)**
65:1;66:4;126:6
**screen (12)**
6:17,18,19;22:3;
23:25;24:10;62:20;
72:4;79:9,11;109:5;
130:1
**season (4)**
82:17;83:14;84:23;
94:23
**seasons (1)**

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 178
of 185

86:16
**seats (1)**
77:24
**SEC (1)**
113:4
**second (16)**
38:3,20;39:8;42:20;
53:20;58:20;59:2,16;
64:1;75:20;88:7;97:7;
130:11;138:17;140:8;
145:5
**Secondly (4)**
40:8;49:20;81:17;
125:3
**Section (25)**
26:22;38:20;41:5;
52:10;58:5;61:24;62:5;
64:20;65:12,15,15,22,
24;66:4;67:3;71:8;
72:22;73:1,3;77:13;
88:21;139:25;145:19,
20;150:6
**secured (4)**
59:17,25;60:4,5;
62:1;112:5
**securing (1)**
29:18
**securities (2)**
141:13;151:21
**securitization (1)**
31:6
**securitized (1)**
79:4
**Sedwick (43)**
5:17,21,23,24,25;6:5,
5,7,25;7:4;14:13;18:2,
6,7,8,12,16,19;19:2,15,
17,20;20:2,13,16;21:1,
21;22:1,3,7;23:24;
28:3,3;39:3,6;40:5;
43:6,11,14,16;44:9;
50:11,15
**Sedwick's (1)**
35:4
**seeing (3)**
129:25;145:6;157:7
**seek (1)**
128:6
**seeking (1)**
29:7
**seem (3)**
44:5;48:2;60:23
**seemed (1)**
44:5
**seems (5)**
10:4;29:2;42:4,7;
73:9
**segments (1)**
140:20
**select (1)**
60:15
**self- (1)**
24:25

**self-evident (1)**
137:11
**self-interest (1)**
112:14
**sell (6)**
81:11;94:4;114:8,9;
119:20,20
**selling (2)**
108:8;114:4
**Senator (3)**
79:20,20,21
**send (6)**
11:7;92:18,19;
125:11,22;130:18
**sense (3)**
31:4;60:18;148:14
**sent (9)**
12:5;33:2;129:2,3;
135:7,19,24;137:2;
139:18
**sentence (5)**
120:9,11,12,21;
123:3
**separate (2)**
100:5;143:9
**sequence (3)**
52:20;53:17,19
**series (1)**
99:10
**serious (1)**
23:6
**seriously (1)**
117:8
**served (1)**
28:16
**services (2)**
34:1,19
**ses (1)**
21:13
**session (3)**
60:23;74:15,22
**sessions (2)**
61:12;64:10
**set (7)**
5:12;27:5;35:2;88:9;
141:17,18;147:10
**setter (1)**
132:24
**settlement (14)**
97:18,23,24;98:1,7,8,
8,13;99:17;100:21;
101:25;102:25;132:2;
133:11
**settlements (1)**
64:9
**settles (1)**
45:10
**seven (5)**
16:1;33:18;39:18;
113:13,15
**seventeen (1)**
113:11
**Seven-three-nine-nine (1)**

97:25
**seventy (2)**
98:16,24
**seventy-five (1)**
43:17
**several (3)**
44:16;81:25;96:18
**shadow (2)**
90:19,24
**shall (3)**
34:4,5;65:6
**shape (1)**
153:5
**share (4)**
108:11;115:13,24;
118:8
**shareholder (3)**
80:19;119:18;120:20
**shareholders (9)**
78:21;80:5,7;81:3;
107:13,17;113:23;
114:8,12
**shares (4)**
94:4;118:10,12,14
**sharing (1)**
115:14
**shield (1)**
66:7
**shoes (1)**
153:22
**short (5)**
20:20;126:25;135:5;
139:22;148:20
**shortage (1)**
99:11
**shorten (1)**
54:23
**shorter (2)**
61:10,14
**short-term (3)**
87:25;95:1,5
**shot (1)**
38:2
**show (5)**
10:3;43:6,6,7;71:22
**showing (1)**
37:23
**shred (1)**
30:25
**shut (2)**
72:8;94:9
**shutoffs (1)**
81:6
**sic (12)**
32:1;35:15,24;36:7;
37:3;39:6;44:3;92:6;
99:5;149:21;155:16;
157:6
**side (6)**
7:6,11;21:20;48:12;
127:12;134:17
**sides (1)**
61:22

**sign (5)**
121:5,8;124:19;
128:6;142:2
**signed (2)**
110:11;122:8
**significant (4)**
64:13;151:22;
154:21,22
**similar (5)**
19:6;27:3;51:15;
52:8;59:3
**simple (3)**
58:19;64:23;80:2
**simply (14)**
15:25;16:11;21:23;
22:19;30:16;31:3;47:2;
56:22;64:8;98:10;
100:3;102:3;128:6;
152:4
**sincerely (1)**
56:6
**single (2)**
96:14;98:5
**Singleton (5)**
126:13,19,24;127:8;
129:10
**sits (1)**
77:24
**situated (1)**
81:4
**situation (6)**
20:12;114:12;
116:25;146:12;147:5;
154:22
**six (2)**
112:9;127:12
**six- (1)**
82:11
**sixteen (1)**
113:11
**sixty (1)**
99:9
**sixty-percent (1)**
82:12
**size (1)**
80:6
**skeptical (1)**
155:3
**Skikos (17)**
92:4;115:11;116:13,
14,15,19,22;117:16;
125:9,12,23;126:1,4,5,
5,12;149:18
**skills (1)**
84:7
**Skondin (1)**
131:9
**sleep (2)**
101:5,7
**sleeves (1)**
86:3
**slightly (2)**
113:9;126:6

**Slow (1)**
14:11
**slowly (1)**
72:3
**small (2)**
36:20;117:24
**Smith (2)**
35:18;36:10
**Smith's (3)**
35:21;36:5,7
**smoke (1)**
108:25
**snow (1)**
100:25
**SoCal (1)**
84:13
**so-called (1)**
102:2
**social (3)**
19:8,8;21:9
**sold (4)**
38:5;108:9;118:10,
11
**solely (1)**
98:16
**solicitation (4)**
27:8;28:12,13,20
**solo (1)**
126:20
**solution (4)**
19:5;23:23;94:19;
129:9
**solve (4)**
39:3;61:1;85:20;
111:22
**solves (1)**
61:19
**somebody (7)**
25:12;31:9;38:11;
107:4,4;109:11;130:3
**Somebody's (2)**
109:5,6
**somehow (4)**
81:9,19;119:3,5
**someone (9)**
23:1,16;27:13;61:17,
18;80:18;146:3,8,22
**someone's (1)**
80:14
**sometime (2)**
61:7;111:10
**sometimes (4)**
75:14;136:17;
152:12;153:1
**somewhat (1)**
124:7
**somewhere (3)**
12:17;101:2;141:24
**son (1)**
38:2
**soon (1)**
82:21
**sooner (1)**

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 179
of 185

134:16
**sorry (24)**
8:11;12:5;15:9;
20:15;48:2;53:18;
59:11;61:2;70:21,25;
79:17;89:11;91:12;
97:24;106:14;107:7,
10,11;109:4;111:1;
136:12,24;147:12;
157:1
**sort (4)**
48:11;58:9;70:22;
146:23
**sought (1)**
34:15
**sound (2)**
88:9;102:11
**sounds (3)**
73:2,4;125:2
**south (1)**
112:25
**Southern (1)**
39:1
**Spar (1)**
90:24
**speak (16)**
5:24;14:25;24:1;
31:17;54:6;68:10;
82:17;83:23;91:3;
116:5;117:11;130:6;
131:14;148:7;155:19,
21
**speaker (3)**
71:25;72:1;133:18
**speakers (1)**
74:13
**speaking (3)**
20:4;44:6;117:3
**speaks (1)**
5:25
**specific (2)**
101:18;103:7
**specifically (5)**
17:22;65:12;75:12;
80:25;83:21
**speculate (1)**
21:14
**speed (1)**
89:16
**speeding (1)**
89:15
**spend (3)**
76:9,11;140:25
**spending (2)**
76:13;111:25
**split (3)**
84:8,11;116:8
**spoke (2)**
130:9;131:18
**spoken (1)**
5:21
**sponsored (1)**
72:18

**squarely (1)**
127:10
**squatter's (1)**
55:6
**squeaked (1)**
62:12
**squeaky (1)**
62:11
**staff (7)**
31:7;75:13;104:15;
111:2;117:24,24;
141:21
**stage (2)**
25:3;29:7
**stakeholder (1)**
86:1
**stance (1)**
13:4
**stand (2)**
13:12;33:14
**standing (2)**
56:9;143:4
**start (14)**
5:10;15:18;25:6;
31:20;48:13;51:22;
58:7,8;75:12;85:11;
87:24;128:10;137:20;
142:15
**started (2)**
46:18;112:2
**starting (3)**
13:15;52:20;53:4
**State (44)**
41:10;45:25;58:15,
17;63:2,9,16;64:6;
70:11;73:19;77:18;
79:23;88:8,12,16,18,
24;89:21;90:6,17;
95:22;98:1,7,8,13;
100:2;101:25;103:13;
105:7,10;111:19,19;
114:17;117:20;126:3,
21;129:17;133:12,18;
134:16;136:19;139:11;
150:22;153:14
**stated (15)**
14:10;16:9;40:4;
76:4;78:22;82:11,23;
83:3;90:9,14;91:16;
92:6;93:17;106:19;
139:23
**statement (15)**
12:14;21:21;35:18,
19;73:17;97:3;100:11;
101:16,20;103:10,11;
104:3;124:18;141:16;
149:14
**statements (5)**
12:17;43:17;107:1;
148:19,23
**states (11)**
41:8;55:17,20;56:7,
8;63:7,20;64:2,18;

81:24;89:24
**stating (1)**
46:4
**statistics (1)**
83:4
**status (1)**
147:6
**statute (5)**
16:10;33:24;36:5,8;
61:5
**statutory (2)**
56:13;57:13
**stay (3)**
23:24;74:15;131:23
**stays (2)**
61:21;132:9
**Stephen (1)**
24:23
**steps (1)**
149:3
**Steve (1)**
126:5
**stick (2)**
74:7;90:4
**sticky (1)**
90:1
**still (29)**
12:11;16:4;17:14;
41:4;42:15;44:18;
45:24;47:20;53:1;
61:13;73:9;83:1;97:6;
100:20;101:3;103:24;
106:4;118:7;122:12;
125:13;135:21;137:25;
148:16;149:11;150:5,
11;151:20;152:3,7
**stips (1)**
134:13
**stipulate (1)**
62:7
**stipulation (4)**
110:11;128:7;132:8;
134:17
**stipulations (3)**
131:22;132:5;134:12
**stock (28)**
38:4;40:12,18;41:17;
78:12,21,24;79:2;
80:18;81:4,6;94:3,12;
99:21;102:9;103:3,3,4;
110:19;112:13;113:21,
24;114:1,6,10,10;
115:1;118:14
**stood (1)**
92:1
**stop (2)**
49:13;95:7
**stoplights (1)**
89:15
**Store (1)**
35:24
**Stores (2)**
32:1;35:16

**story (3)**
9:20;30:21;31:9
**straight (1)**
140:1
**straightforward (1)**
64:6
**strains (1)**
94:15
**strange (1)**
123:14
**strategy (3)**
80:10;84:3,3
**stress (1)**
108:25
**stretched (1)**
83:9
**stretches (1)**
81:8
**stricken (1)**
60:20
**strip (2)**
147:22,24
**structure (1)**
87:18
**structured (1)**
114:23
**struggling (1)**
94:14
**stuck (1)**
126:20
**study (1)**
61:22
**stumbling (1)**
129:9
**style (1)**
152:11
**subagent (1)**
33:7
**subcontractor (1)**
27:16
**Subdivision (3)**
65:16,17,22
**subject (9)**
5:11;90:1;98:14;
124:7;140:21;142:10;
144:1,5,23
**subjects (1)**
91:17
**submitted (8)**
9:13;14:24;28:14;
50:14;98:10;99:23;
117:13;141:20
**subrogation (4)**
113:10,19;114:25;
119:14
**subsequent (1)**
64:11
**substantial (6)**
9:22;89:7,8,14;
107:14;113:16
**substantially (1)**
89:16
**substantive (2)**

**success (4)**
38:10,12;83:4,18
**such-and-such (1)**
12:1
**suddenly (1)**
103:20
**suffer (1)**
31:15
**suffered (1)**
28:22
**sufficient (4)**
66:11,15;68:9;69:8
**sufficiently (1)**
89:1
**suggest (11)**
6:4,25;74:16;108:6,
12;110:6,13;113:20;
120:8;135:25;149:1
**suggesting (2)**
9:7;52:18
**suggestion (5)**
52:1,12;119:1;125:2;
127:17
**suggestions (3)**
101:12,13,14
**suits (1)**
66:24
**sum (1)**
103:17
**summarize (2)**
130:17;144:3
**summer (6)**
82:9,13,22;94:9,17;
111:10
**Superior (1)**
131:24
**supplement (4)**
64:24;65:3;97:3;
112:7
**supplemental (1)**
92:13
**support (7)**
12:13,14;25:21;
26:25;35:21;122:2;
128:5
**supported (3)**
36:9;127:23;128:6
**supporting (1)**
97:4
**supports (1)**
129:10
**suppose (3)**
16:16,17;31:5
**supposed (2)**
10:8;120:7
**suppress (1)**
40:17
**sure (27)**
6:11;14:12;15:13;
35:5;52:6,7;61:2,5;
70:25;71:14;76:16;
81:20;97:5;117:17;

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 180
of 185

121:8;123:21;124:6,9;
125:7;126:16;127:10;
135:13;141:6,14;
143:1;150:21;153:18
**Surely (1)**
78:17
**survive (2)**
101:1;132:5
**survivor (3)**
96:17;154:5,24
**survivors (7)**
9:21;17:7;75:23;
101:9;103:1;155:7,9
**suspect (1)**
120:1
**suspected (1)**
66:25
**suspended (1)**
114:17
**system (2)**
21:5;155:2
**systemic (1)**
84:4

**T**

**table (2)**
5:8;112:18
**tactic (2)**
35:22;82:4
**tactical (3)**
38:25;48:11,11
**tactically (1)**
26:2
**tactics (1)**
82:4
**talk (16)**
5:14;13:15;18:4;
20:19;23:16;76:23;
77:1;90:1;91:7;104:2;
124:16;125:9;130:12;
138:8;139:1;151:9
**talked (3)**
43:13;74:8;86:3
**talking (12)**
31:25;38:11;51:18;
71:19;72:8,9;76:14;
78:5;82:25;107:24,25;
125:15
**tapping (2)**
107:4,9
**target (1)**
37:7
**targeted (1)**
89:6
**tax (2)**
114:2,17
**taxes (2)**
34:2,19
**TCC (19)**
40:19;45:8,9,23;
46:12;47:21;90:21;
91:7,10,15,18;92:3,14;

97:12,17;99:18;
101:17;103:1;119:1
**TCC's (1)**
110:7
**team (2)**
127:6;137:1
**tech (1)**
73:24
**technical (2)**
131:13;137:2
**telling (3)**
117:10;128:10;
155:21
**temporarily (1)**
114:17
**ten (24)**
6:7;7:1,4,5;16:1,18;
18:3;24:17;39:19;55:8;
57:24;76:10,11,14;
88:22;98:17;105:6;
115:12,23;116:8,19,20,
22;124:24
**tend (1)**
152:11
**tens (4)**
25:20;85:6;101:22;
155:8
**tentatively (2)**
127:23;128:6
**tepidly (1)**
79:7
**term (6)**
65:5,11,12,16,25;
66:2
**terminated (2)**
99:4,16
**terms (11)**
43:24;64:8,11;65:4,
9,14;66:23;73:21;99:9;
100:24;133:19
**terrible (1)**
48:18
**terrific (1)**
127:6
**test (2)**
64:5;74:2
**testified (2)**
11:14,21
**testify (2)**
11:18;84:2
**testimony (6)**
10:5;14:9;37:24;
40:24;96:2;141:18
**thanking (1)**
75:12
**Thanks (2)**
57:25;112:20
**that'll (1)**
54:21
**theme (1)**
43:19
**theory (1)**
38:3

**therefore (3)**
80:19;85:4;118:18
**there'll (2)**
29:25;30:5
**thin (1)**
83:9
**thinking (4)**
61:11;141:17;
150:14;151:1
**third (5)**
38:7;60:14;64:19;
97:22;114:25
**thirteen-and-a-half (1)**
113:7
**thirteen-and-half (1)**
102:8
**thirty (8)**
6:1;18:9;24:15;59:7,
15;75:10;106:21;113:4
**thirty-five (1)**
45:23
**though (6)**
20:22;37:3;43:21;
126:3;146:3;148:17
**thought (8)**
22:11;44:4;47:7,8;
72:24;129:6;135:18;
136:12
**thoughtful (1)**
152:8
**thoughts (1)**
101:15
**thousand (3)**
8:4;41:11;89:5
**thousands (5)**
25:20;85:7;101:22;
124:22;155:8
**three (18)**
5:19;6:1;47:15;50:6;
55:14;58:10,11;63:14;
76:9;84:11;110:7;
112:7;113:22,24,24;
114:11;115:1;127:15
**three-plus (1)**
84:9
**threshold (2)**
41:5;87:21
**throughout (2)**
43:19;65:21
**throw (3)**
82:4;84:4;125:2
**thrown (3)**
16:5;88:5;90:9
**thrust (1)**
27:13
**thumb (1)**
72:1
**thumbs (1)**
71:22
**THURSDAY (1)**
5:1
**thus (1)**
131:3

**thwart (5)**
25:8,9,17,18;34:15
**thwarted (1)**
25:15
**ticked (1)**
148:19
**ticket (1)**
89:15
**tied (2)**
87:1;155:10
**tier (1)**
112:24
**tight (1)**
46:12
**tilt (1)**
104:17
**timber (1)**
108:22
**timeline (3)**
15:8,11,12
**timely (2)**
28:9;99:19
**times (6)**
65:14,16;81:25;83:4;
91:6;156:1
**timetable (3)**
13:24;141:25;151:6
**timing (2)**
5:8;57:2
**tired (1)**
141:11
**to-date (1)**
51:1
**today (56)**
9:2;10:13;13:23;
16:16;26:9;27:6,14;
31:25;39:24;40:20;
41:6;46:25;50:7,22;
51:2;53:2;54:9;61:8;
63:14;69:23;70:8;
72:24,25;80:4;95:10;
96:14,19;97:3;103:20;
104:3,21;105:20,25;
114:16;116:11,18,19;
117:2,17,17;118:5,7;
125:24;126:20;130:6;
135:16;138:16;139:2;
140:15;144:14;149:1;
151:25;153:7,25;
154:8;156:15
**today's (9)**
5:9,13;7:12;46:1;
47:22,23,25;50:8;
150:2
**to-do (1)**
152:10
**together (7)**
23:13;45:17,18;
51:16;78:10;140:12,17
**told (9)**
20:9;64:14;88:10;
91:6,20;99:24;128:13;
149:4;156:1

**tomorrow (44)**
13:23;63:21;72:23;
73:3,10,17,18,23;
101:17;103:6;116:10,
15,20;117:15;121:6;
123:20;124:3;125:10,
13,19;126:6;135:23;
136:1;137:8;139:2,3;
141:13,20,24;142:14;
149:2,9,21;150:11;
151:9;152:16,20;
153:2,19;154:2,14;
156:14;157:3,7
**tonight (3)**
122:8;137:7;150:10
**took (5)**
12:8;91:17;102:1;
112:6;114:20
**top (1)**
104:18
**tort (10)**
44:18,21,25;45:7,7,8,
10,14,20,21
**torts (1)**
38:12
**Tosdel (1)**
114:20
**total (7)**
6:1;7:5;19:15;41:2;
49:23;112:8;113:20
**totally (2)**
49:20;153:21
**town (2)**
34:14;154:18
**track (1)**
147:7
**tracks (1)**
150:18
**trade (3)**
22:22;136:23;137:12
**traditional (3)**
78:25;79:1;94:7
**trailer (2)**
100:20;101:3
**transactional (1)**
18:10
**transparent (1)**
26:8
**transpired (1)**
130:18
**treated (3)**
119:19;133:12,15
**treating (1)**
46:23
**treatment (16)**
58:5,9,9,11,13,20;
59:2,4,7,9;61:3,24;
100:5,5;107:21;137:13
**tree (1)**
108:23
**tremendous (2)**
102:1;112:18
**trial (3)**

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 181
of 185

39:18;40:24;104:7
**tried (5)**
  9:18;19:11;81:17;
  90:4;146:8
**trouble (4)**
  41:21;42:2,2;86:6
**Troy (27)**
  51:22;52:8,20;53:5;
  55:9;57:19;62:22,24;
  63:1,3,4,4;64:1;67:7,
  18;68:7,17,19;69:2,6,
  20;70:1,4,5;71:8;
  72:20;73:20
**true (2)**
  52:15;62:4
**true-up (1)**
  110:14
**truly (1)**
  118:2
**trust (24)**
  64:3,15;92:15;98:5,
  16;99:4,15,19;100:18;
  102:5;106:5;110:18,
  21;113:23;121:19;
  122:5;125:16;142:20;
  147:16,18,18;149:22;
  155:1,4
**Trustee (7)**
  13:23;16:12;55:20;
  56:7;102:5;103:21;
  110:21
**Trustee's (3)**
  55:17;56:9;103:21
**try (11)**
  71:17,19;81:20;
  83:12;87:14;90:4;
  129:24;144:3;149:4;
  150:12;152:11
**trying (20)**
  13:6;23:23;40:14;
  44:3;51:16;76:23;87:9;
  91:1;92:2;101:4;113:6;
  117:11;129:7;130:20;
  134:14;140:24;149:4,
  5,16;155:25
**Tubbs (2)**
  42:14;85:12
**turn (9)**
  19:24;24:11;67:8;
  74:16;79:22;89:23;
  90:10;152:7;154:18
**turns (1)**
  101:8
**tweaks (1)**
  106:16
**twenty (7)**
  7:2,5;35:18;98:19;
  105:3;108:17;142:12
**twenty-five (3)**
  5:22;106:21;143:17
**twenty-minute (2)**
  135:12;142:6
**twenty-nine (1)**

99:12
**twenty-one (1)**
  111:13
**twenty-one- (1)**
  81:7
**twenty-two (2)**
  108:17;112:3
**two (42)**
  7:1,15;10:22,23;
  11:1;12:3,4;14:1;
  24:18;25:6;31:16,25;
  32:2;37:13,21;38:1,1;
  40:10;43:2,13,14;47:5;
  48:1;54:8;58:10;59:1;
  65:16;81:13;89:5;
  105:3;112:7;113:14;
  114:11;122:18;124:24;
  127:23;130:11;132:1;
  133:5;140:5;146:7;
  154:20
**two-thirds (1)**
  41:4
**type (1)**
  31:15
**typical (1)**
  80:23

**U**

**UCC (2)**
  51:13;54:16
**ultimately (1)**
  101:6
**Ulysses (1)**
  112:25
**Um-hum (2)**
  85:9;150:19
**unacceptable (1)**
  82:17
**unaffordability (1)**
  77:16
**unblock (1)**
  130:1
**uncertainty (1)**
  114:19
**unclear (1)**
  151:2
**uncomfortable (1)**
  128:15
**under (39)**
  14:23;20:25;28:24;
  29:1;30:24;35:25;49:9;
  50:4,10;58:5,25;59:3,
  10,16;61:4;65:8;66:6,
  10;68:5;89:4;94:14,15,
  24;95:22;96:5;102:5;
  108:5;123:24;124:22;
  133:4,7,10,13,22;
  134:4;139:9;145:19,
  19,20
**underfunded (1)**
  110:19
**undermines (1)**

91:8
**undertake (1)**
  31:1
**undo (1)**
  23:3
**uneasy (1)**
  46:14
**unemployment (1)**
  111:14
**unexpectedly (1)**
  116:9
**unfair (4)**
  49:18;60:17;113:2;
  114:23
**unforeseen (1)**
  67:1
**unfortunate (5)**
  76:3;77:8,18;87:6;
  91:5
**unfortunately (3)**
  87:5;92:6;108:14
**unidentified (1)**
  58:11
**unimpaired (5)**
  133:7,22;134:2,4;
  145:1
**Union (1)**
  90:24
**unique (2)**
  16:3;61:25
**United (8)**
  55:17,20;56:7,8;
  63:7,20;64:2,18
**units (2)**
  63:16,21
**unjust (1)**
  77:2
**unknown (2)**
  66:25;133:18
**unless (10)**
  5:10,14;41:8,10;
  60:11;95:2;121:12;
  122:12;130:22;152:15
**unmute (18)**
  24:20;43:12;54:13;
  56:2;63:1;72:14;73:7,
  15,16;95:16,16;
  116:13;129:17,25;
  139:10;141:9;153:10,
  10
**unmuted (2)**
  70:15;129:25
**unnecessary (3)**
  6:15;125:4;128:8
**unpaid (1)**
  67:25
**unpaired (1)**
  61:4
**unprepared (1)**
  83:19
**UNR (1)**
  45:2
**unrest (1)**

111:14
**unsecured (12)**
  34:1;18;58:3;59:4,8,
  9;60:1;112:4;132:4;
  133:5,15;137:14
**unstable (1)**
  152:25
**unsuspected (1)**
  66:25
**unsympathetic (1)**
  23:23
**unwanted (2)**
  125:23;126:1
**unwillingness (1)**
  80:2
**up (55)**
  12:24;13:1;15:18;
  22:4;24:15;40:8,13;
  41:7;43:6,7,7;47:13;
  52:21;53:2,21;55:20,
  23;57:10,21,24;68:10;
  71:22;72:1,8;74:2,12,
  13;75:9;76:9;79:9;
  84:13;85:14;86:2;
  89:13,13;90:3;91:21;
  97:20;99:11;100:23,
  25;103:24;104:15;
  105:19;106:3,4;
  107:20;127:13;152:3,
  11,25;153:4,8,9;155:10
**up- (1)**
  50:25
**update (1)**
  61:9
**upheld (1)**
  15:6
**upon (6)**
  83:18;96:24;97:16;
  102:14;127:17;132:7
**urge (4)**
  45:12;66:3;103:5;
  134:13
**urgent (1)**
  84:5
**urging (2)**
  9:6;92:14
**USC (2)**
  37:22;41:5
**use (7)**
  50:7;65:19,23,25;
  66:1;96:9;133:19
**used (4)**
  65:13,23;66:23;
  67:22
**uses (2)**
  65:4,16
**using (1)**
  31:3
**utilities (5)**
  81:9;84:9,12,15,19
**Utility (3)**
  51:12;78:25;94:7

**V**

**vacated (1)**
  132:10
**vague (1)**
  60:17
**valid (1)**
  28:11
**validated (1)**
  20:6
**validity (1)**
  145:18
**valuable (1)**
  100:9
**value (7)**
  40:12,18;41:18;
  108:3,8;110:19;113:22
**variety (1)**
  14:25
**various (7)**
  21:13;52:16;63:5;
  121:20
**vegetation (1)**
  108:22
**vehicle (1)**
  127:20
**vendor (5)**
  10:6;11:15;20:19;
  21:16;23:17
**vendors (3)**
  147:15,15,17
**version (3)**
  63:19;96:22,24
**versus (1)**
  119:5
**viable (1)**
  60:24
**vicarious (1)**
  149:10
**victim (27)**
  7:24;14:22;16:8;
  18:8;20:4;26:19;32:25,
  25;43:18;48:14;55:23;
  64:3,14;98:14,16;99:3,
  15;100:19;101:2;
  109:16;112:24;118:9;
  132:21;133:1,2;
  147:16,18
**victims (47)**
  20:5,6;23:14;25:20;
  28:7,11;40:19;42:14;
  46:14;48:6,14,19;
  64:16;78:13;81:5;
  89:13;92:3,14;94:3,12;
  97:15;99:19;100:8,18;
  101:9;102:1;105:13;
  106:1,19,22,24;107:14,
  18;108:16;109:18;
  112:19;114:7,22;
  115:1;117:22;118:19;
  119:5;121:2,24;
  122:25;126:25;127:19

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 182
of 185

**victims' (1)**
100:3;110:18,21;
113:23;121:19;125:16,
16
**video (3)**
24:11;74:16;143:18
**view (9)**
26:8,17;32:3;51:18;
64:23;67:13;85:23;
148:17;155:6
**views (3)**
91:9;95:9;155:2
**violates (1)**
67:1
**violation (1)**
90:20
**violations (1)**
89:23
**virtually (1)**
10:19
**virus (2)**
156:2,6
**visible (1)**
56:25
**voice (4)**
25:9,19;71:12;
144:12
**volunteer (1)**
55:24
**vote (59)**
8:1,7,14;9:19;10:3;
14:3,3,15,21,23,24;
15:3;16:9,12,14;17:7,
13;19:11,19,21,22,23,
23,25;20:7,9,23;21:6,
13,17,22,23;22:21;
23:8,10,12;26:20;
28:14;33:1;39:5;40:7,
22,25;41:14;43:21;
44:17,19,21;45:20,21;
46:5,5,8;48:8,20;49:9;
64:15;92:14;112:23
**voted (24)**
8:3,6,15;10:2;17:12,
14;19:11,18;25:21;
28:17;31:14;36:17,17,
22;39:7;40:6;43:17;
46:15;49:24;106:25;
107:20;112:23;118:18;
122:1
**voters (3)**
98:10;99:24,24
**votes (10)**
8:13;9:14;17:4,10;
39:16;40:4;41:1,11;
44:19;96:10
**vote's (1)**
41:8
**voting (25)**
7:22;8:1,17;10:4;
13:3;16:1,3,20,22;
19:9;33:2;39:18;40:17;
43:25;45:6;46:17,21,

21;47:10;48:7,15;
49:23;93:3,10;96:3

**W**

**Waisman (1)**
47:5
**wait (9)**
14:11;19:13;24:8;
42:1,20;53:20;84:25;
96:4;130:11
**waited (2)**
26:2;35:18
**waiting (4)**
43:3;85:7;94:17;
101:3
**waive (1)**
66:13
**waived (4)**
36:10,12;37:4,5
**walk (4)**
15:7,7,7,12
**Wallace (40)**
50:5;55:15;74:9;
95:13,15,18,21,21;
96:13,17;97:24;98:1,4;
103:10,12;104:2,5,16;
153:9,9,10,13,14,16,
16;154:5;155:14,16,19,
23,25;156:7,9,17,19,
20,21,23,25;157:1
**wants (11)**
5:11;8:22;62:10;
80:13;88:13;89:10;
117:2;130:13;149:13;
152:15;154:25
**warranted (2)**
28:25;30:24
**waste (1)**
50:8
**Watts (25)**
24:5,6,15,20;27:10,
11;37:7,7,13,16,17,18,
20;40:1;41:23,25;42:9,
11,13,22;44:10;50:12;
92:5;112:17;127:7
**Watts' (1)**
7:11
**way (26)**
17:8;23:2;51:5;
62:11;77:14;82:10;
83:25;86:17;89:12;
94:25;97:10;101:19;
103:19;108:7;114:1,
22;130:21;133:20,22;
134:11;137:20;138:2;
141:16;151:20;152:14;
156:3
**wedded (1)**
141:21
**week (9)**
9:23;12:12;25:7;
27:7;39:24;43:5,9;

127:9;141:23
**weekend (1)**
141:22
**weeks (4)**
26:5,6;112:7;124:24
**weigh (1)**
149:15
**weight (2)**
90:9;94:15
**Weil (1)**
24:24
**well-known (1)**
47:4
**Wells (4)**
78:22;82:2;83:20;
91:17
**weren't (3)**
10:21;48:8;127:19
**what's (17)**
16:14;26:8,9;29:4;
45:18;53:14;54:1,3,13;
71:23;80:16;102:11;
114:4;127:2;150:11,
14;152:18
**whatsoever (1)**
33:12
**wheel (3)**
62:11;101:3;137:22
**whenever (3)**
59:5,13;148:13
**Whereupon (2)**
143:23;157:10
**whoever's (1)**
56:20
**whole (7)**
8:18;10:4;15:5;
37:10;52:4;75:22;
103:21
**wholesale (1)**
62:5
**who's (4)**
105:1;126:16;130:3;
156:3
**wider (1)**
155:6
**wield (1)**
80:8
**Wiener (1)**
79:20
**wildfire (18)**
75:23;77:3;81:8;
82:13,16,18;83:5,7,14,
22;84:6;89:20;90:24;
94:23;108:24;126:25;
127:19;153:17
**wildfires (4)**
77:14;81:16;86:4;
96:17
**willing (4)**
80:19,22;118:19;
137:6
**win (1)**
149:7

**winning (1)**
41:10
**Winsberg (2)**
51:13;52:16
**winter (1)**
101:5
**Winthrop (1)**
149:20
**wires (1)**
88:2
**wish (11)**
6:19;23:25;53:5;
54:12;93:21;115:24;
120:18;142:20;149:8;
152:20;154:17
**wishes (1)**
36:21
**withdrawn (1)**
132:8
**within (4)**
41:8;69:1,1;87:18
**without (13)**
44:12;66:24;82:4;
85:21;86:12;93:15,15;
97:9,13;100:21;120:3,
23;123:6
**witness (3)**
78:19;83:20;84:1
**witnesses (6)**
82:1,7,18;91:19;
92:2;115:9
**wondered (1)**
129:22
**wondering (1)**
128:25
**Wong (31)**
52:22;53:6,7,9;
55:10,11;57:19;70:8,9,
11,12,13,16,18,20,21,
23,24,25;71:3,5,10,11,
13,16,18,20;72:2,16;
73:13,15
**wood (1)**
152:23
**word (6)**
31:3;44:13;65:15,19;
98:5;135:7
**wording (1)**
58:22
**words (7)**
26:24;31:5;80:17;
112:10;122:14;124:1,2
**work (13)**
5:8;36:18,18;44:5;
45:17;62:13;63:12;
73:25;103:22;141:22;
144:20;151:20;152:21
**workaround (1)**
43:21
**worked (5)**
112:17;114:1;
130:25;131:1;134:8
**Workers (1)**

90:18
**working (6)**
31:8;61:17;72:21;
84:7,9;152:13
**world (3)**
87:17;130:2;136:15
**worried (1)**
31:11
**worry (1)**
7:13
**worse (3)**
85:21,25;86:11
**worth (1)**
100:12
**wow (1)**
47:7
**wrap (1)**
47:13
**wrath (3)**
55:21,23;56:3
**wrench (1)**
125:3
**written (2)**
97:13;152:2
**wrong (20)**
10:21;12:4,8,9;
20:16,17,20,22;27:13,
14,25;28:4,6;39:4,5;
80:16;91:21;114:4;
131:21;133:20
**wrongful (1)**
108:24
**wrote (1)**
40:23

**Y**

**Yanni (1)**
102:19
**year (9)**
10:17;85:4;99:11;
112:1;113:5;122:3;
150:24;152:5;155:11
**years (11)**
18:9;79:2;83:6;
98:11,11;99:10,22;
111:11;112:1;114:11;
146:7
**yell (1)**
120:18
**Yep (2)**
85:5;86:7
**yesterday (26)**
5:6;54:6,7;57:22;
63:11;64:4,20;67:9,23;
74:8,15;85:13;97:1;
100:17;120:2,22;
123:22;125:11;127:15;
128:25;130:6;133:8;
135:20;137:10;141:11;
151:25
**yesterday's (1)**
63:19

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 183
of 185

**yield (1)**
112:10
**York (2)**
34:14;39:1

## Z

**zero (1)**
27:24
**Ziman (1)**
82:2
**Zoom (4)**
43:5;74:1,15;130:2

## 1

**1 (1)**
33:1
**1,000 (1)**
38:9
**1.21 (1)**
66:4
**10 (2)**
99:6;105:17
**10- (1)**
68:4
**10,000 (3)**
68:2,13,14
**10.13 (8)**
52:10;71:8;72:22;
73:3,8,18;143:10;
150:6
**100I (1)**
41:13
**1013 (1)**
63:18
**1015 (1)**
65:12
**1054 (7)**
26:18;88:12;91:2;
102:24;124:13,17;
150:24
**10th (1)**
121:8
**11 (7)**
19:22;25:4;26:11;
41:5;85:3;118:25;
132:1
**1104 (2)**
26:22;32:11
**1104a1 (1)**
37:22
**1104c (1)**
38:20
**1104c1 (2)**
32:14;33:19
**1104c2 (2)**
28:23;35:2
**1126c (1)**
41:5
**1129 (1)**
77:10
**1129a11 (2)**

76:12;81:15
**1129a3 (3)**
76:15;89:24,24
**1129a7 (1)**
108:2
**1141 (1)**
145:19
**115 (3)**
28:7,15;40:5
**115.3 (1)**
98:15
**12 (1)**
74:7
**12:30 (3)**
74:9,18,20
**12:45 (1)**
74:20
**1245 (1)**
90:18
**13.5 (3)**
97:18;102:2;108:15
**133 (2)**
45:1,13
**14th (1)**
18:24
**15- (1)**
68:4
**15,000 (1)**
68:15
**15th (8)**
9:23;16:18,19;45:23;
105:15;110:8;121:9;
151:18
**19,078 (1)**
41:3
**19th (2)**
9:25;39:9

## 2

**2 (2)**
33:2;112:8
**2.2 (1)**
98:12
**2:30 (1)**
39:10
**2:45 (2)**
143:16,20
**20 (1)**
21:9
**200 (7)**
9:9,12,21;17:4,12;
21:9;41:13
**2017 (2)**
83:16;86:22
**2018 (1)**
112:3
**2019 (4)**
83:4,5,18;89:4
**2020 (3)**
5:1;93:13;111:8
**2021 (1)**
98:19

**2023 (1)**
99:10
**2024 (2)**
98:20;99:11
**2025 (1)**
98:23
**20th (3)**
26:5;39:11;121:9
**21 (4)**
84:5,8;94:4;118:25
**23rd (1)**
92:5
**24th (1)**
132:11
**25 (2)**
99:5;107:2
**25,000 (6)**
19:18;21:11,12,22;
68:3,14
**25,200 (1)**
89:6
**250 (1)**
112:6
**26 (1)**
98:12
**27 (3)**
98:25;99:1,6
**28 (1)**
99:5
**297 (1)**
154:11
**29th (1)**
49:2

## 3

**3 (2)**
40:23;110:9
**3.5 (1)**
128:3
**30 (1)**
20:3
**30,000 (1)**
112:23
**300 (1)**
8:13
**30th (11)**
15:16,20;23:18;
40:10;88:14;121:7;
124:14;151:3,16,16;
152:6
**31 (3)**
11:13;98:19,20
**31st (1)**
98:23
**36,000 (2)**
44:19;46:5
**365 (6)**
65:15,20,22;67:13,
16,16
**365b1 (5)**
65:25;66:6,6,6;67:2,20
**3rd (1)**

90:24

## 4

**4 (5)**
5:1;16:17;40:23;
110:10;141:12
**4.1- (1)**
59:10
**4.16 (2)**
58:6;59:3
**4:30 (1)**
141:12
**419 (1)**
66:19
**4292 (1)**
88:21
**4293 (1)**
88:21
**44 (1)**
8:3
**44,000 (1)**
40:25
**45 (3)**
97:23;98:12,25
**45.3 (1)**
99:1
**456 (1)**
66:19
**4th (1)**
18:23

## 5

**5 (1)**
110:10
**5.5 (1)**
49:6
**50,000 (7)**
8:3,6,14;17:10;
19:17;23:18;38:10
**500 (1)**
49:3
**502 (2)**
145:20;147:6
**506 (1)**
58:25
**59 (2)**
84:8;118:25

## 6

**6,000 (1)**
112:23
**6,100 (1)**
41:1
**6,109 (1)**
106:24
**6.75 (1)**
118:13
**62,000 (1)**
19:10
**6-30 (1)**

89:2

## 7

**7 (1)**
108:5
**7275 (1)**
139:9
**7306-2 (1)**
110:8
**7316 (1)**
105:15
**7394 (1)**
18:22
**7399 (2)**
97:23;98:13
**7436 (1)**
38:18
**75 (3)**
28:14,14;40:5
**7507 (1)**
106:24
**7528 (1)**
118:25
**7654 (1)**
49:2
**77,000 (1)**
19:12
**7706 (2)**
38:18;40:23
**7777 (1)**
38:19

## 8

**8 (1)**
99:1
**8,100 (1)**
41:2
**8.2 (1)**
64:21
**8.2e (7)**
64:20,22,25;65:24;
67:5;139:25;140:5
**80,000 (2)**
8:14;103:16
**86- (1)**
46:6
**87- (1)**
46:6
**87,000 (2)**
19:12;46:6
**8th (2)**
11:14;23:19

## 9

**9:30 (2)**
152:16;154:14
**90 (1)**
96:15
**900 (3)**
17:13,14;21:9

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 184
of 185

**9011 (1)**
   34:15
**94 (1)**
   45:2
**95.5 (1)**
   45:3
**96 (2)**
   45:2,3

Case: 19-30088    Doc# 7809    Filed: 06/05/20    Entered: 06/05/20 19:11:24    Page 185
of 185