Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone: 415.659.2600
Facsimile: 415.659.2601
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: esagerman@bakerlaw.com
Email: drichardson@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for Official Committee of Tort Claimants*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | |
| -and- | Chapter 11 (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** **Debtors.** | **NOTICE OF FILING OF PROPOSED FIRE VICTIM TRUST AGREEMENT AND PROPOSED FIRE VICTIM CLAIMS RESOLUTION PROCEDURES** |
| □ Affects PG&E Corporation | Relates to Dkt. Nos. 5700, 5732 |
| □ Affects Pacific Gas and Electric Company | |
| ■ Affects both Debtors | |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**PLEASE TAKE NOTICE** that on February 7, 2020, PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors in possession (collectively, the "**Debtors**") filed a proposed disclosure statement in the above-captioned chapter 11 cases [Dkt. No. 5700]; and

**PLEASE TAKE FURTHER NOTICE** that on February 11, 2020, this Court entered an order [Dkt. No. 5732] directing the filing of a proposed Fire Victim Trust Agreement and the proposed Fire Victim Claims Resolution Procedures; and

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is a proposed Fire Victim Trust Agreement, which has been approved by the proposed Trustee and proposed Claims Administrator of the Fire Victim Trust, the Official Committee of Tort Claimants, and the Consenting Fire Victim Attorneys, but not by the Debtors or the Shareholder Proponents (as defined in the Plan) (collectively, the "**Plan Proponents**"); and

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit B** are proposed Fire Victim Claims Resolution Procedures, which have been approved by the proposed Trustee and proposed Claims Administrator of the Fire Victim Trust, the Official Committee of Tort Claimants, and the Consenting Fire Victim Attorneys, but not by the Plan Proponents; and

**PLEASE TAKE FURTHER NOTICE** that Plan Proponents have informed the TCC that they reserve all rights with respect to the proposed Fire Victim Trust Agreement and proposed Fire Victim Claims Resolution Procedures, and nothing in the proposed Fire Victim Trust Agreement and proposed Fire Victim Claims Resolution Procedures shall constitute or be deemed to constitute an admission by or waiver of the rights of any Plan Proponent in any respect.

Dated: March 3, 2020

BAKER & HOSTETLER LLP

By:   */s/ Lauren T. Attard*
     Lauren T. Attard

*Counsel to the Official Committee of Tort Claimants*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**EXHIBIT A**

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**PG&E FIRE VICTIM TRUST AGREEMENT**

**Dated as of [●], 2020**

*Pursuant to the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated January 31, 2020*

# PG&E FIRE VICTIM TRUST AGREEMENT

## TABLE OF CONTENTS

RECITALS ...................................................................................................................... 1

SECTION I AGREEMENT OF TRUST ......................................................................... 2

    1.1    Creation and Name ............................................................................ 2
    1.2    Purpose ............................................................................................... 2
    1.3    Transfer of Assets ............................................................................. 3
    1.4    Acceptance of Assets and Assumption of Liabilities ..................... 4
    1.5    Beneficial Owners ............................................................................. 5
    1.6    Jurisdiction ........................................................................................ 5

SECTION II POWERS AND TRUST ADMINISTRATION ........................................ 6

    2.1    Powers ................................................................................................. 6
    2.2    General Administration ..................................................................... 9
    2.3    Claims Administration ...................................................................... 12
    2.4    Claim Approval, Acceptance, and Objections ................................ 13
    2.5    Confidentiality ................................................................................... 14
    2.6    Credits for Amounts Covered by Insurance ................................... 14

SECTION III ACCOUNTS, INVESTMENTS, AND PAYMENTS ............................. 15

    3.1    Accounts ............................................................................................. 15
    3.2    Investment Guidelines ...................................................................... 16
    3.3    Payments ............................................................................................ 17

SECTION IV DISTRIBUTIONS ................................................................................... 17

    4.1    Distributions ...................................................................................... 17
    4.2    Manner of Payment or Distribution ................................................ 17
    4.3    Delivery of distributions ................................................................... 18
    4.5    Cash distributions ............................................................................. 19

SECTION V TRUSTEE AND DELAWARE TRUSTEE ............................................. 19

    5.1    Number .............................................................................................. 19
    5.2    Term of Service and Successor Trustee ........................................... 19
    5.3    Reliance; No Personal Obligation .................................................... 20
    5.4    Standard of Care; Exculpation ......................................................... 20
    5.5    Protective Provisions ......................................................................... 21
    5.6    Compensation and Expenses of the Trustee ................................... 22
    5.7    Indemnification ................................................................................. 22
    5.8    Trustee's Employment of Professionals and Experts ..................... 23
    5.9    Trustee's Independence ..................................................................... 24
    5.10   Bond ................................................................................................... 24
    5.11   Delaware Trustee .............................................................................. 24

SECTION VI TRUST OVERSIGHT COMMITTEE .................................................... 25

    6.1    Members of the TOC ......................................................................... 25

Case: 19-30088   Doc# 7649-5   Filed: 06/09/20   Entered: 06/09/20 18:07:51   Page 5
of 59

|      | 6.2  | Duties of the Members of the TOC | 25 |
|      | 6.3  | Term of Office of the TOC Members | 26 |
|      | 6.4  | Appointment of Successor Members of the TOC | 26 |
|      | 6.5  | Compensation and Expenses of the TOC | 26 |
|      | 6.6  | Procedures for Consultation with and Obtaining the Consent of the TOC | 26 |

SECTION VII NEUTRALS ...................................................................................................28

|      | 7.1  | Panel of Neutrals | 28 |
|      | 7.2  | Duties of the Neutrals | 28 |
|      | 7.3  | Random Assignment of Neutrals | 28 |
|      | 7.4  | Meetings | 28 |

SECTION VIII GENERAL PROVISIONS ...........................................................................29

|      | 8.1  | Irrevocability | 29 |
|      | 8.2  | Term; Termination | 29 |
|      | 8.3  | Amendments | 30 |
|      | 8.4  | Meetings | 30 |
|      | 8.5  | Severability | 30 |
|      | 8.6  | Notices | 30 |
|      | 8.7  | Successors and Assigns | 31 |
|      | 8.8  | Limitation on Claim Interests for Securities Laws Purposes | 31 |
|      | 8.9  | Evidence of Beneficial Interests | 31 |
|      | 8.10 | Exemption from Registration | 31 |
|      | 8.11 | Transfer and Exchange | 32 |
|      | 8.12 | Change of Address | 32 |
|      | 8.13 | Entire Agreement; No Waiver | 32 |
|      | 8.14 | Headings | 32 |
|      | 8.15 | Compliance with Law | 32 |
|      | 8.16 | Governing Law | 32 |
|      | 8.17 | Settlors' Representative and Cooperation | 33 |
|      | 8.18 | Dispute Resolution | 33 |
|      | 8.19 | Enforcement and Administration | 33 |
|      | 8.20 | Joinder | 34 |
|      | 8.21 | Capitalized Terms | 34 |
|      | 8.22 | Effectiveness | 34 |
|      | 8.23 | Counterpart Signatures | 34 |

EXHIBIT 1

EXHIBIT 2

EXHIBIT 3

EXHIBIT 4

EXHIBIT 5

ii

# PG&E FIRE VICTIM TRUST AGREEMENT

This PG&E Fire Victim Trust Agreement (this "**Trust Agreement**"), dated as of [●], 2020 and effective as of the Effective Date, is in accordance with the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated January 31, 2020 (as it may be amended, modified, or supplemented, the "**Plan**") and effectuates certain agreements made by PG&E Corporation ("**PG&E Corp**") and Pacific Gas and Electric Company (the "**Utility**") (collectively, the "**Debtors,**" "**PG&E,**" or the "**Settlors**"), the debtors and debtors-in-possession whose Chapter 11 cases are jointly administered under Case No. 19-30088 in the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**"), with the approval of the Bankruptcy Court, the Trustee of the Fire Victim Trust (the "**Trustee**"), the Delaware Trustee pursuant to this Trust Agreement and any successor Delaware Trustee serving in such capacity (the "**Delaware Trustee**"), and the members of the Fire Victim Trust Oversight Committee (the "**TOC**") who are identified on the signature pages hereof.

## RECITALS

A.     The Debtors have reorganized under the provisions of Chapter 11 of the Bankruptcy Code in cases filed in the United States Bankruptcy Court for the Northern District of California known as *In re PG&E Corporation et al*, Debtors, Jointly Administered Case No. 19-30088 (collectively, the "**Bankruptcy Cases**").

B.     Requisite approval for the entry into this Trust Agreement in accordance with the Restructuring Support Agreement, dated December 6, 2019 (as amended on December 16, 2019), among the Debtors, the TCC, the Consenting Fire Claimants Professionals (as defined therein) has been sought and received.

C.     The Confirmation Order has been entered by the Bankruptcy Court and has become final and non-appealable, or such requirements have been waived in accordance with the Plan.

D.     As of the December 31, 2019 deadline for submission of claims against the Debtors relating to the wildfires in 2015, 2017, and 2018 listed on **Exhibit 1** attached hereto that were caused by Debtors' equipment and operations, tens of thousands of claims were filed by persons and entities damaged or who purport to have been damaged in various ways by those wildfires ("**Fire Victims**").

E.     The Plan provides, among other things, for the creation of the PG&E Fire Victim Trust (the "**Fire Victim Trust**" or the "**Trust**") to evaluate, administer, process, settle, expunge, and resolve all claims of Fire Victims against the Debtors ("**Fire Victim Claims**"), and, to the extent approved and liquidated pursuant to the Fire Victim Claims Resolution Procedures **(the "CRP") attached hereto as Exhibit 2** ("**Approved**"), satisfy and pay all Approved Fire Victim Claims in accordance with the Plan, the Confirmation Order, the Trust Agreement, the CRP[ and the Shareholder Agreement], including all related exhibits (collectively, the "**Trust Documents**"), and to prosecute or settle the Assigned Rights and Causes of Action.

Case: 19-30088   Doc# 7629-5   Filed: 06/09/20   Entered: 06/09/20 18:07:51   Page 7 of 59

F.    The Plan provides that, on the Effective Date and continuing thereafter until fully funded by Debtors, the Aggregate Fire Victim Consideration shall be transferred to, vested in, and assumed by the Trustee.

G.    Pursuant to the Trust Documents, the Trustee is to use the Trust Assets to satisfy and pay Approved Fire Victim Claims against the Debtors.

H.    It is the intent of the Debtors, the Trustee and the TOC that the Trust be administered, maintained, and operated at all times through mechanisms that provide reasonable assurance that the Trust will evaluate, administer, process, settle, expunge, resolve, and, to the extent Approved, compensate Fire Victim Claims pursuant to the CRP in a fair, consistent, and equitable manner, in compliance with the terms of this Trust Agreement and the CPR, and to the extent of available Trust Assets.

I.    Pursuant to the Plan, the Trust is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code of 1986, as amended (the "**QSF Regulations**"), subject to the Debtors' right to make an election to treat the Trust as a "grantor trust" for U.S. federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes.[1]

J.    The Bankruptcy Court has determined that the Trust and the Plan satisfy all the prerequisites for an injunction pursuant to section 105(a) of the Bankruptcy Code with respect to any and all Fire Victim Claims against the Debtors, with such claims being channeled to the Fire Victim Trust, and such Channeling Injunction has been entered in connection with the Confirmation Order.

**NOW, THEREFORE**, it is hereby agreed as follows:

## SECTION I
## AGREEMENT OF TRUST

**1.1    Creation and Name.**  The Debtors as Settlors hereby create a trust known as the "PG&E Fire Victim Trust," which is the Trust provided for and referred to in the Plan.  The Trustee may transact the business and affairs of the Trust in the name of the Trust, and references herein to the Trust shall include the Trustee acting on behalf of the Trust.  It is the intention of the parties hereto that the PG&E Fire Victim Trust created hereby constitutes a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. Section 3801 *et seq.* (the "**Act**") and that this document, along with the other Trust Documents, constitute the governing instruments of the PG&E Fire Victim Trust.  The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as **Exhibit 3**.

**1.2    Purpose.**  The purposes of the Trust are to (i) assume the liability for all Class 5A-III and Class 5B-III Claims against the Debtors, (ii) evaluate, administer, process, settle, defend, expunge, resolve, liquidate Fire Victim Claims, and satisfy and pay all Approved Fire

---

[1] Discuss future tax planning.

Victim Claims and all Trust Expenses (as defined in Section 1.4(b) below) of the Trust from the Trust Assets (as defined in Section 1.3(a), below) in a fair, consistent, and equitable manner, (iii) prosecute or settle all Assigned Rights and Causes of Action, (iv) preserve, hold, manage, and maximize the Trust Assets for use in paying and satisfying Approved Fire Victim Claims and for use in paying all Trust Expenses, all in accordance with the terms of the Trust Documents, and (iv) otherwise comply in all respects with the Trust Documents. In order to be able to effectuate these purposes, the Trustee, Delaware Trustee, Claims Administrator, Claims Processor, Neutrals, and their agents, shall have no interest in and at all times shall be independent of the Debtors, the Fire Victim Claimants, the TOC, and their agents.[2]

      **1.3    Transfer of Assets.**

      (a)    Pursuant to, and in accordance with Section 6.7 of the Plan, beginning upon the Effective Date and continuing thereafter until fully funded by Debtors, the Trustee will receive the Aggregate Fire Victim Consideration to fund the Trust and use the Aggregate Fire Victim Consideration, any other assets transferred to the Fire Victim Trust pursuant to the Plan, and any income earned from all such assets (collectively, the "**Trust Assets**") to resolve all Fire Victim Claims against the Debtors and pay all Trust Expenses. The Trust Assets will be transferred free and clear of any liens, encumbrances, charges, claims, interests or other liabilities of any kind by the Debtors, any creditor, or other entity except as provided in the Plan and this Trust Agreement. To the extent certain assets comprising the Trust Assets, because of their nature or because such assets will accrue or become transferable subsequent to the Effective Date, and cannot be transferred to, vested in, and assumed by the Trust on such date, such assets shall be automatically, and without further act or deed, transferred to, vested in, or assumed by the Trust as soon as reasonably practicable after such date. The Debtors shall execute and deliver such documents as the Trustee reasonably requests to transfer and assign any assets to fund the Trust and the Trustee on behalf of the Trust, is authorized, to the extent necessary, such documents. No monies, choses in action, and/or assets comprising the Trust Assets that have been transferred, granted, assigned, or otherwise delivered to the Trustee shall be used for any other purpose other than for the payment, defense, or administration of the Fire Victim Claims and the payment of Trust Expenses.

      (b)    [In furtherance of, and without limiting, the foregoing:

      (i)    On the Effective Date, the [Debtors] shall irrevocably, grant, and assign to the Trust, and the Trust shall receive and accept, any and all of the [Insurance Rights/Policies], including the right to enforce such [Insurance Company's] obligation to pay any Fire Victim Claims or to reimburse the Debtors for such Fire Victim Claims (the "Insurance Rights Transfer").

      (ii)    The Insurance Rights Transfer is made free and clear of all Claims, Liens, encumbrances, or Causes of Action of any nature whatsoever[ . . . .]

---

[2] Pre-Effective Date appointments, retentions and/or applications of the Trustee, Claims Administrator or any Professional in the Bankruptcy Cases shall not prevent the Trustee, Claims Administrator or any Professional from being deemed independent.

(iii)    The Trust shall become liable for and shall satisfy, to the extent required under applicable law, any premiums, deductibles, self-insured retentions, and any other amounts arising in any way out of the receipt of any payment from an Insurance Company.

(iv)    The Insurance Rights Transfer is made to the maximum extent possible under applicable law.

(v)    The Insurance Rights Transfer is absolute and does not require any further action by the Debtors, [the Reorganized Debtors,] the Trust, the Bankruptcy Court, or any other Entity.

(vi)    The Parties hereto intend that the Insurance Rights Transfer shall be governed by, and construed in accordance with, the Bankruptcy Code and other applicable laws governing the Insurance Policies.][3]

(c)    The income of the Trust (after payment of all taxes thereon) shall be added to the Trust Assets and used in accordance with the purposes of the Trust as set forth in Section 1.2 hereof.

### 1.4    Acceptance of Assets and Assumption of Liabilities.

(a)    In furtherance of the purposes of the Trust, the Trustee hereby expressly accepts the transfer to the Trust of the Trust Assets and any other transfers in the time and manner and subject to the terms contemplated in the Trust Documents.  For the avoidance of doubt, the Trust Assets shall include all claims and Causes of Action of the Debtors that were not waived, exculpated, or released in accordance with the provisions of the Plan, the Confirmation Order, or a Final Order of the Bankruptcy Court, and all of the Debtors' rights with respect to the Trust Assets, including attorney-client privilege and work product.  The Trustee shall succeed to all of the Debtors' respective right, title, and interest in the Trust Assets, including but not limited to standing to commence, pursue, abandon, or settle Causes of Action, and the Debtors will have no further equitable or legal interest in, or with respect to, the Trust Assets or the Trust.

(b)    In furtherance of the purposes of the Trust, and subject to the terms of the Trust Documents, the Trustee expressly assumes (i) all liabilities and responsibility for all Fire Victim Claims against the Debtors, and (ii) all reasonable fees and expenses incurred in pursuing the Trust Assets, administering the Trust, managing the Trust Assets, and making distributions in accordance with the Trust Documents, (the "**Trust Expenses**"), which shall be paid from the Trust Assets, such that the Reorganized Debtors shall not have any further financial or other responsibility or liability therefor, except as otherwise expressly set forth in the Trust Documents.  Except as otherwise provided in the Trust Documents, the Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of insurance, indemnification, contribution, subrogation, and similar rights, regarding such claims that the Debtors or Reorganized Debtors have or would have had under applicable law.

(c)    The parties hereto intend that the Trust be classified as a "qualified settlement fund" under the QSF Regulations (and corresponding or similar provisions of state,

---

[3] Subject to continued discussion and conformance with revised Plan and Disclosure Statement.

4

local, or foreign law, as applicable). No provision herein or in the CRP shall be construed or implemented in a manner that would cause the Trust to fail to qualify as a "qualified settlement fund" under the QSF Regulations, provided, however, that the Debtors may elect to treat the Trust as a "grantor trust" for U.S. federal income tax purposes, in which case the parties hereto shall be bound by such election, notwithstanding anything in this Trust Agreement to the contrary, and, to the extent permitted under applicable law, the Trust shall be treated consistently for state and local tax purposes.[4]

(d)　　　Nothing in this Trust Agreement shall be construed in any way to (i) limit the scope, enforceability, or effectiveness of the Channeling Injunction or any other injunction or release issued or granted in connection with the Plan or (ii) subject to the provisions of Section 1.4(b) above, limit the Trust's assumption of all liability for Fire Victim Claims against the Debtors.

(e)　　　**Claimant Release.** As further described in the CRP, the Trust shall require all holders of Approved Fire Victim Claims to execute a release in substantially the same form and content as the Settlement Agreement, General Release, and Assignment attached hereto as **Exhibit 4** (the "**Claimant Release**") as a precondition to receiving any payment on account of their Fire Victim Claims from the Trust.

(f)　　　**Made Whole Release**. Pursuant to Section 4.23(f)(ii) of the Plan and as further described in the CRP, the Trust shall require all holders of Approved Fire Victim Claims to execute a release in substantially the same form and content as and the Mutual Made Whole Release attached hereto as **Exhibit 5** (the "**Mutual Made Whole Release**") as a precondition to receiving a final payment on account of their Fire Victim Claims from the Trust.

### 1.5　Beneficial Owners.

(a)　　　To the extent required by the Act, the beneficial owners (within the meaning of the Act) of the PG&E Fire Victim Trust (the "**Beneficial Owners**") shall be the holders of the Class 5A-III and Class 5B-III Claims against the Debtors, provided that, (i) the holders of such Class 5A-III and Class 5B-III Claims, as Beneficial Owners, shall have only such rights with respect to the Fire Victim Trust and its assets as are set forth in the Trust Documents, and (ii) no greater or other rights, including upon dissolution, liquidation or winding up of the Fire Victim Trust, shall be deemed to apply to the holders of such Class 5A-III and Class 5B-III Claims in their capacity as Beneficial Owners.

(b)　　　No Beneficial Owner shall be entitled to (i) hold any title in or to the Trust Assets (which title shall be vested in the Trust) or (ii) any right to call for a partition or division of the Trust Assets or to require an accounting. For the avoidance of doubt, Beneficial Owners shall not have rights comparable to shareholders of a corporation (other than limited liability, as provided in Section 3803(a) of the Act).

---

[4] Discuss future tax planning.

5

(c)     Subject to giving reasonable notice, a Beneficial Owner may request information and documents relating to their claim from the Claims Administrator, but shall have no right to request information relating to claims of other Beneficial Owners.

**1.6     Jurisdiction.**  The Bankruptcy Court shall have exclusive jurisdiction with respect to any action relating to or arising out of the Trust. Only in the event that the Bankruptcy Court does not have subject matter jurisdiction, then the Superior Court of California for the County of San Francisco shall have exclusive jurisdiction of all matters relating to or arising out of the Trust.  The court having exclusive jurisdiction pursuant to this Section 1.6 shall be referred to hereinafter as the "**Court of Exclusive Jurisdiction**."  For the avoidance of doubt, nothing in this Section 1.6 shall affect, impair, alter, modify or supersede the procedures contained in the CRP or the authority granted to the Trustee under the Trust Documents to, *inter alia*, evaluate, administer, process, settle, expunge, and resolve all Fire Victim Claims under the CRP in the manner and to the effect set forth therein.


# SECTION II
# POWERS AND TRUST ADMINISTRATION

**2.1     Powers.**

(a)     The Trustee is and shall act as the fiduciary to the Trust in accordance with the provisions of this Trust Agreement.  The Trustee shall administer the Trust, the Trust Assets, and any other amounts to be received under the terms of the Trust Documents in accordance with the purposes set forth in Section 1.2 above and in the manner prescribed by the Trust Documents.  Subject to the limitations set forth in the Trust Documents, the Trustee shall have the power to take any and all actions that in the judgment of the Trustee are necessary or proper to fulfill the purposes of the Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and any trust power now or hereafter permitted under the laws of the State of Delaware.  Nothing in this Trust Agreement, the Plan, any Trust Document or any related document shall require the Trustee to take any action if the Trustee reasonably believes that such action is contrary to law.  In addition to all powers enumerated in the Trust Documents, from and after the Effective Date, the Trust shall succeed to all of the rights and standing of the Debtors with respect to the Assigned Rights and Causes of Action in its capacity as a trust administering assets for the benefit of the Fire Victims. In the event of any ambiguity or conflict between the terms of this Trust Agreement and the Plan, any other Trust Document, or any related document required or provided for under the Trust Documents, the Trustee shall be permitted to act in accordance with his reasonable belief, with or without advice of counsel, as he determines in his sole discretion, as to what action (or inaction) is required or permitted pursuant to this Trust Agreement, <u>provided</u> that, for the avoidance of doubt, the Trustee shall be required to consult on, or obtain consent with respect to, only those certain matters as expressly provided for in this Trust Agreement, the CRP and any other Trust Documents.

(b)     The Trustee will be appointed as the representative of each of the Debtors' estates pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and as such

Case: 19-30088   Doc# 7629-5   Filed: 06/08/20   Entered: 06/08/20 18:07:51   Page 12 of 59

will be vested with the authority and power (subject to this Trust Agreement) to, among other things, prosecute and settle all Assigned Rights and Causes of Action in his capacity as a trustee for the benefit of the Fire Victims. As the representative of the Debtors' estates, and in his or her capacity as a trustee for the benefit of the Fire Victims, the Trustee will succeed to the standing and all of the rights and powers of the Debtors and their estates with respect to all Assigned Rights and Causes of Action assigned and transferred to the Trust whether or not such claims are pending in filed litigation. The Trustee will be substituted for and will replace the Debtors, their estates, and/or any official committee appointed in any related action, and is authorized to appear before any court or tribunal in any proceeding that related to or affects to the Trust or Trust Assets.

(c)     Unless otherwise expressly provided for under the Plan or the Confirmation Order, on the Effective Date all Assigned Rights and Causes of Action will vest in the Trustee free and clear of all claims, liens, encumbrances, charges, and other interests, subject to the provisions of the Trust Documents. On and after the Effective Date, the transfer of the Assigned Rights and Causes of Action to the Trust will be deemed final and irrevocable and distributions may be made from the Trust.

(d)     Except as required by applicable law or the Trust Documents, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(e)     Without limiting the generality of Section 2.1(a) above, and except as limited in this Trust Agreement and by applicable law, the Trustee shall have the power to:

(i)     receive and hold the Trust Assets and exercise all rights with respect thereto, including the right to sell any securities that are included in the Trust Assets and purchase securities and other assets that are to be included in the Trust Assets, all of which shall be subject to the limitations set forth in Sections 3.2 and 3.3 below;

(ii)     exercise the right to vote given to owners of New HoldCo common stock that are included in the Trust Assets, except that in exercising the right to vote for the election of members of the Board of Directors of New HoldCo, the Trustee shall do so only after obtaining the consent of the TOC;

(iii)     invest the monies and other assets held from time to time by the Trust, subject to the limitations set forth in Sections 3.2 and 3.3 below;

(iv)     sell, transfer, or exchange any or all of the Trust Assets at such prices and upon such terms as the Trustee may determine proper in consultation with the Investment Advisor and consistent with the other terms of the Trust Documents;

(v)     enter into leasing and financing agreements with third parties to the extent such agreements are reasonably necessary to permit the Trust to operate;

(vi)     determine and pay liabilities and expenses created, incurred, or assumed by the Trust, except that the Claims Administrator (as defined in Section 2.3, below)

7

shall have all rights, responsibilities, and powers related to the resolution of any Fire Victim Claims in accordance with the Trust and the CRP;

(vii)    establish such funds, reserves, and accounts within the Trust estate, as deemed by the Trustee to be useful in carrying out the purposes of the Trust;

(viii)   sue, be sued, and participate as a party or otherwise in any judicial, administrative, arbitrative, or other proceeding;

(ix)     supervise and administer the Trust in accordance with this Trust Agreement and the CRP;

(x)      appoint such officers and retain such employees, consultants, advisors, independent contractors, experts, and agents and engage in such legal, financial, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the business of the Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement;

(xi)     subject to the Budget (as defined in Section 2.2(d)(i), below) and Sections 5.6(b) and 5.8 below, reimburse the Trustee and pay reasonable compensation to any employees, consultants, advisors, independent contractors, experts, and agents for legal, financial, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities;

(xii)    subject to the Budget and Sections 2.3(c), 5.6(b), 5.7, 5.8, and 6.6 below, reimburse the Trustee, Delaware Trustee, Claims Administrator, TOC and other employees, consultants, advisors, independent contractors, experts, and agents for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(xiii)   execute and deliver such instruments as the Trustee considers proper in administering the Trust;

(xiv)    enter into such other arrangements with third parties as are deemed by the Trustee to be useful in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement;

(xv)     in accordance with Section 5.7 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined below) to the fullest extent permitted by law, however, notwithstanding anything to the contrary herein, no party shall be indemnified or defended in any way for any liability, expense, claim, damage, or loss for which he or she is ultimately liable under Section 5.4 below;

(xvi)    delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Trust Assets to any one or more reputable institutional investment advisors or investment managers without liability for any action taken or omission made because of any such delegation, except as provided in Section 5.4 below;

8

(xvii)  consult with the TOC at such times and with respect to such issues relating to the conduct of the Trust as set forth herein;

(xviii)  make, pursue (by litigation or otherwise), abandon, collect, compromise, or settle for the benefit of the Trust any claim, right, action, or cause of action included in the Trust Assets, including, but not limited to, insurance recoveries and claims against third parties before any court of competent jurisdiction, which power shall, for the avoidance of doubt, be exercised in the Trustee's sole and absolute discretion;

(xix)  purchase such insurance and performance bonds as the Trustee deems appropriate or as required under the Trust Documents, including with respect to any indemnification obligations of the Trust;

(xx)  take any and all actions required by the Trust Documents;

(xxi)  require, in respect of any distribution of Trust Assets, the Trustee's timely receipt of properly executed documentation (including, without limitation, Form W-8BEN, Form W-8BEN-E, or Form W-9, as applicable) as the Trustee determines in his or her sole discretion is necessary or appropriate to comply with United States federal, state, local or foreign tax laws then in effect;

(xxii)  establish such reserves of Trust Assets as the Trustee, in his or her sole discretion, deems necessary and prudent to ensure that all Approved Fire Victim Claims are paid in an equitable manner;

(xxiii)  [petition the Superior Court of California for the County of San Francisco to appoint a special master (the "**Special Master**") to approve any and all minors' compromises in conjunction with the evaluation, disallowance, resolution, settlement, and approval of any and all Fire Victim Claims in accordance with the CRP;]

(xxiv)  establish a website (the "**Trust Website**") as soon as reasonably practicable after the Effective Date to aid in communicating information to Fire Victims and in making the activities of the Trust as transparent as possible; and

(xxv)  engage in any transactions necessary or appropriate to the foregoing or to facilitate implementation of the Plan, including but not limited to, entering into, performing, and exercising rights under contracts and leases on behalf of the Trust.

(f)  The Trustee shall not have the power to guarantee any debt of other persons

(g)  The Trustee agrees to take the actions of the Trust required hereunder.

(h)  The Trustee shall give the TOC prompt notice of any act proposed to be performed or that requires consultation with, or the consent of, the TOC, including but not limited to Sections 2.1(e)(ii), 2.2(a) 2.2(f), 2.3(d), 3.2(c), 6.5, and 6.6.

(i)     Except as otherwise set forth in the Trust Documents, and subject to any retention of jurisdiction by the Bankruptcy Court as provided in the Plan, but without prior or further authorization, the Trustee may control and exercise authority over the Trust Assets and over the protection, conservation, and disposition thereof.  No person dealing with the Trust shall be obligated to inquire into the authority of the Trustee in connection with the protection, conservation, or disposition of the Trust Assets.  It is intended that a signed copy of this Agreement shall serve as adequate proof of the Trustee's authority to act if such proof is required for any reason by any third party.

**2.2    General Administration.** The Trustee shall act in accordance with this Trust Agreement.

(a)     The timeframes and deadlines related to the administration of the Trust as set forth in this Trust Agreement and the CRP are subject to adjustment and extension by: (i) the Trustee, in his or her reasonable discretion; and (ii) upon request of the TOC, for good cause and in consultation with the Trustee. The Trustee, in consultation with the TOC, may promulgate and adopt trust bylaws that are consistent with the terms of the Trust Agreement ("**Trust Bylaws**"). In the event Trust Bylaws are adopted, then the Trust Bylaws, if any, shall govern the affairs of the Trust.  In the event of any inconsistency between the Trust Bylaws (if any) and this Trust Agreement, this Trust Agreement shall govern.

(b)     The Trustee shall be the "administrator" of the Trust within the meaning of Treasury Regulations section 1.468B-2(k)(3) and, in such capacity, shall (i) timely file such income tax and other returns and statements required to be filed and shall timely pay all taxes required to be paid by the Trust out of the Trust Assets, which assets may be sold by the Trustee to the extent necessary to satisfy tax liabilities of the Trust, (ii) comply with all applicable reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of the Trust as a qualified settlement fund within the meaning of the QSF Regulations, and (iv) take no action that could cause the Trust to fail to qualify as a qualified settlement fund within the meaning of the QSF Regulations.

(c)     The Trustee shall timely account to the Bankruptcy Court as follows:

(i)     The Trustee shall cause to be prepared and filed with the Bankruptcy Court within one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "**Annual Report**") containing special-purpose financial statements of the Trust (including, without limitation, the assets and liabilities of the Trust as of the end of such fiscal year and the additions, deductions and cash flows for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustee and accompanied by an opinion of such firm as to the fairness in all material respects of the special-purpose financial statements. The Trustee shall provide a copy of such Annual Report to the Claims Administrator and the TOC, and shall publish it on the Trust Website when such report is filed with the Bankruptcy Court.

(ii)     In connection with the filing of the Annual Report, the Trustee shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims disposed of during the period covered by the financial

Case: 19-30088    Doc# 7629-5    Filed: 06/09/20    Entered: 06/09/20 18:07:51    Page 16 of 59

statements (the "**Claims Report**"). The Trustee shall provide a copy of the Claims Report to the Claims Administrator and the TOC, and shall publish it on the Trust Website when such report is filed with the Bankruptcy Court.

(iii) All materials filed with the Bankruptcy Court by this Section 2.2(c) need not be served on any parties in the Bankruptcy Cases but shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court.

(d) The Budget

(i) The Trustee shall cause to be prepared, as soon as practicable prior to the commencement of each fiscal year, a budget (the "**Budget**") covering the administrative costs and expenses of the Trust (including: (a) compensation for the Trustee and the Trustee's consultants, professionals, advisors, independent contractors, experts, and agents; (b) compensation for the Claims Administrator and the Claims Administrator's professionals; and (c) compensation for the Delaware Trustee) for such fiscal year and the succeeding four fiscal years. Prior to the Trustee preparing the Budget for each year, the TOC shall provide the Trustee with its reasonable estimates of necessary expenses to be incorporated into the Budget. The Trustee shall provide a copy of each Budget to the TOC. The Trustee shall cause the initial Budget to be prepared promptly following the Effective Date.

(ii) The Trustee shall undertake to manage the expenses of the Trust in accordance with the Budget, with the goal of not exceeding the aggregate amount of 120% of the Budget for any fiscal year, absent reasonably unforeseen circumstances.

(e) The Trustee shall consult with the TOC (i) on matters not contemplated by this Trust Agreement regarding the general implementation and administration of the Trust, (ii) on matters not contemplated by this Trust Agreement regarding the general implementation and administration of the CRP, and (iii) on such other matters as may be required under this Trust Agreement and the CRP.

(f) The Trustee shall be required to obtain the consent by vote of a simple majority of the TOC pursuant to the notice and quorum requirements set forth in Section 6.6 herein to:

(i) amend, supplement, modify, terminate or extend the term of the Trust in any respect;

(ii) amend, supplement or modify the Trust Agreement in any respect;

(iii) amend, supplement or modify the CRP in a manner that the Trustee determines, in his or her reasonable discretion, materially affects: (x) the process or processes for submitting Fire Victims Claims for evaluation under the CRP; or (y) the process or processes for evaluating and administering Fire Victims Claims under the CRP. For the avoidance of doubt, and in no way expanding the limitations provided in the foregoing, the TOC shall have no consent right or rights over any amendment, supplement, or modification to the CRP in any other respect, including in respect of valuation, estimation, or budgeting under the CRP including any valuation, estimation, determination or budgeting of any Fire Victim Claim,

11

group of Fire Victim Claims or category of Fire Victim Claims, *provided that* the Trustee may determine, in his or her sole discretion to consult the TOC on such and all other matters related to the CRP.

(iv)    change the form of the releases to be provided pursuant to the CRP or this Trust Agreement;

(v)    exercise the right to vote for the election of members of the Board of Directors of New HoldCo;

(vi)    settle any litigation involving Trust Assets or rights relating to Trust Documents, except that the Trustee shall not be required to obtain the consent of the TOC to the extent that such settlements involve Trust Assets below a minimum threshold set by the Trustee in consultation with the TOC;

(vii)    make Trust expenditures in excess of 120% of the Budget;

(viii)    approve the Budget;

(ix)    sell, transfer, or exchange any or all of the Trust Assets at such prices and upon such terms as the Trustee may determine proper in consultation with the Investment Advisor and consistent with the other terms of this Trust Agreement, except that the Trustee shall not be required to obtain the consent of the TOC to the extent that such dispositions involve Trust Assets below a minimum threshold set by the Trustee in consultation with the TOC; or

(x)    institute a sell-down plan for New HoldCo stock held by the Trust as part of the Trust Assets.

(g)    **Trust Website.**  The Trustee shall publish information on the Trust Website as he deems prudent in his or her sole discretion.  The Trustee has no obligation to provide, and Beneficial Owners have no right to receive, information regarding the operation of the trust except as provided in Section 2.2(b) above.

**2.3    Claims Administration.**  Cathy Yanni shall serve as claims administrator whose role it is to assist the Trustee in the resolution of the Fire Victim Claims in accordance with the CRP and provide such information necessary for the Trustee to implement the CRP (the "**Claims Administrator**").  The Claims Administrator shall have reasonable discretion in the means and methods in carrying out the duty of resolving Fire Victim Claims consistently with the CRP.

(a)    The Claims Administrator shall serve from the date of retention until the termination of the Trust.  Prior to the termination of the Trust, the Claims Administrator shall be removable by agreement of the Trustee and the vote of at least two-thirds of the members (the "**Supermajority Vote**") of the TOC for cause, which shall be defined as the substantial, repeated, or prolonged failure to carry out the duties and obligations defined in Section 2.3(b) below. If a Claims Administrator is removed or if there is a vacancy for any other reason, the Trustee and a majority of members of the TOC shall appoint the successor Claims Administrator,

12

provided however, that if the Trustee and a majority of the members of the TOC cannot agree on the successor Claims Administrator, the Bankruptcy Court shall make the appointment.

(b)     Without limiting the generality of Section 2.3 above, and except as limited below, the Claims Administrator, in conjunction with the Trustee, shall have the power and obligation to:

(i)     Evaluate, disallow, resolve, settle, and approve any and all Fire Victim Claims in accordance with the CRP without the need to seek the approval of the Bankruptcy Court for any actions taken with respect to the determination of Fire Victim Claims;

(ii)     Authorize payment of any and all Approved Fire Victim Claims in accordance with the CRP;

(iii)     Assign, from the Panel of Neutrals (as defined in Section 7.1 of this Trust Agreement), one or more sub-panels of Neutrals to resolve specific claims or specific issues relating to specific claims and general issues relating to all claims or groups of claims, and conduct such dispute resolution processes as appropriate under this Trust Agreement and the CRP.

(iv)     Propose changes to the CRP;

(v)     Hire such professionals, including: (i) professionals retained by the Trustee; and (ii) entities affiliated with the Claims Administrator and employees, officers, and directors of such entities as necessary to perform its duties hereunder to resolve the Fire Victim Claims subject to approval by the Trustee;

(vi)     Act as liaison between the Trustee and the Neutrals; and

(vii)     Serve as chair of any joint meeting of the Neutrals.

(c)     The Claims Administrator shall be compensated and reimbursed for expenses in the same manner and under the same terms and conditions as the Trustee.[5]

(d)     The Claims Administrator shall retain BrownGreer PLC, which shall assist the Claims Administrator in the calculation and processing of claims (the "**Claims Processor**"). The Claims Administrator shall have the power to replace the Claims Processor if at any time the Claims Administrator and Trustee determine, in consultation with the TOC, that the replacement of the Claims Processor is prudent and necessary to continue the efficient processing of claims pursuant to the CRP.

**2.4     Claim Approval & Denial.**

(a)     The CRP shall govern the process by which, each Fire Victim Claim shall be evaluated, administered, processed, settled, expunged, determined and resolved on a final basis. At all times, the Trustee, the Claims Administrator, Claims Processor, and/or one or more

---

[5] To be discussed.

Case: 19-30088     Doc# 7629-5     Filed: 06/03/20     Entered: 06/03/20 18:07:51     Page 19 of 59

members of the Panel of Neutrals described herein shall act in accordance with and consistent with the CRP. Only Approved Claims, which are approved in accordance with the CRP, shall be entitled to payments from the Trust, and any Fire Victim Claim determined to be ineligible on a final basis under the CRP shall have no entitlement to payments from the Trust and shall forever be denied, disallowed and expunged. [Any objections to Fire Victim Claims with respect to their eligibility or valuation shall be resolved consistently with the CRP.]

(b)    In furtherance of, and consistent with, the purpose of the Trust Documents, the Claims Administrator, in conjunction with the Trustee, shall have the power and authority to determine the eligibility, amount, and allowance of Fire Victim Claims, at all times subject to the CRP (as may be amended, modified or supplemented), which was filed with the Plan Supplement and incorporated into the Confirmation Order. The Claims Administrator, in conjunction with the Trustee shall evaluate proofs of claim and other claims materials submitted by each holder of a Fire Victim Claim for determination of eligibility, amount, and allowance of such Claim in accordance with the procedures set forth in the CRP.

(c)    The Claims Administrator's determination, as confirmed by the Trustee, of eligibility, amount, and allowance of each Fire Victim Claim shall be final and binding, and shall not be subject to any challenge or review of any kind, by any court or other person or entity, except as set forth in the CRP.

**2.5    Confidentiality.** All facts and documents submitted in support of any Fire Victim Claim will be used and disclosed only for the following purposes: (a) processing the Claim, (b) legitimate business uses associated with administering the Trust, including the prevention of fraud and/or the resolution of liens, and (c) other necessary legal and judicial requirements or processes. Otherwise, the information submitted by Fire Victims shall be kept confidential and shall only be disclosed to the Trustee, the Claims Administrator, Claims Processor, the Neutrals, and in respect of the preceding entities, their employees, agents, professionals and advisors, the Fire Victim, the Fire Victim's authorized agent, or to any court of competent jurisdiction, and, in the latter case, only then in a document filed with the court under seal. To the extent possible, any reference to the identity of any Fire Victim in a publicly available document shall be made by the use of a unique numerical identifier, and any information contained in such a document that could lead to the discovery of the claimant's identity such as property address, APN, telephone number, email address, and the like shall be redacted before such a document is filed or circulated to persons or entities other than the claimant, counsel for the claimant, or other persons or entities who are authorized by the claimant in writing to receive an unredacted copy of the specific document. Similarly, the amount of any Fire Victim Claim that is approved, accepted, or disallowed in whole or in part shall kept confidential and shall only be disclosed to the Trustee, the Claims Administrator, Claims Processor, the Neutrals, and in respect of the preceding entities, their employees, agents, professionals and advisors, the Fire Victim, the Fire Victim's authorized agent, or to any court of competent jurisdiction, and, in the latter case, only then in a document filed with the court under seal.

Case: 19-30088    Doc# 7629-5    Filed: 06/08/20    Entered: 06/08/20 18:07:51    Page 20 of 59

**2.6    Credits for Amounts Covered by Insurance.**

(a)    When a Fire Victim files a claim with the Trust for damages caused by a wildfire ("Trust Claim") and is a beneficiary on a policy of insurance for the same damages ("Covered Claim"), the Trust shall receive a credit against any such Trust Claim as follows: (i) If the Covered Claim exceeds the limits of the policy of insurance, the Trust shall receive a credit for the full amount of the policy limits against the corresponding damage category, whether or not the Fire Victim actually made such Covered Claim against the policy of insurance; (ii) If the Covered Claim does not exceed the limits of the policy of insurance, the Trust shall receive a credit for the full amount of the Covered Claim, whether or not the Fire Victim actually made such Covered Claim against the policy of insurance.  In either case, any such credit to the Trust shall be reduced by any amount actually paid by the insurer on the Covered Claim; or (iii) For a Claimant claiming diminution of value of their real property only, the insurance offset shall be for amounts paid only.  Within the allocation process, the Trustee has discretion to grant exceptions to Section 2.6(a) for good cause consistent with the policy that insurance companies will not be passing their coverage obligations onto the Trust.

(b)    The Trustee shall establish procedures to assist Claimants to recover the full amount due to the Claimant under the applicable insurance policy, where the Claimant requests this assistance.

(c)    If a Claimant after reasonable efforts is unsuccessful in obtaining policy limits from the insurance company then the Trustee may accept an assignment of his or her right against the insurance company to the Trustee, in which event the offset shall be in the amounts paid by the insurer.

(d)    The purpose of this provision is to encourage all Fire Victims to fully pursue all rights and remedies available under their policies of insurance prior to asserting a claim against the Trust.

(e)    Any amount that any holder of a Fire Victim Claim, its predecessor, successor, or assignee received or shall receive from any insurance company under and pursuant to the terms and coverage provisions of any insurance policy for losses resulting from a Wildfire and any funds received by any holder of a Fire Victim Claim, net of attorney's fees, shall satisfy, to the extent applicable, any amounts of restitution the Debtors or Reorganized Debtors might be subject to under California Penal Code § 1202.4.

## SECTION III
## ACCOUNTS, INVESTMENTS, AND PAYMENTS

**3.1    Accounts.**

(a)    The Trustee may, from time to time, create such accounts and reserves within the Trust estate as authorized in this Section 3.1 and as he may deem necessary, prudent, or useful in order to provide for the payment of expenses and payment of Fire Victim Claims, and may, with respect to any such account or reserve, restrict the use of money therein (the

15

"**Trust Accounts**"). The Claims Administrator and TOC shall provide information as necessary for the Trustee to establish such accounts and reserves.

(b)     The Trustee shall include a reasonably detailed description of the creation of any account or reserve in accordance with this Section 3.1 and, with respect to any such Trust Account, the transfers made to such account, the proceeds of or earnings on the assets held in each such account and the payments from each such account in the accounts to be filed with the Bankruptcy Court and provided to the TOC pursuant to Section 2.2(c)(i) above.

(c)     The Trustee, on behalf of the Trust, may retain one or more depository institution(s) that, alone or with its affiliated depository institutions, have total capital and surplus of at least $50 billion or that, alone or with its affiliated institutions, have assets under management of at least $500 billion to serve as the Financial Institution of the Trust (the "**Financial Institution**"), provided, however, that the Trustee, in consultation with the TOC, may modify the foregoing requirements if he or she determines that it is in the best interest of the Trust to do so. Candidates for the position of Financial Institution shall fully disclose to the Trustee any interest in or relationship with the Debtors or the Reorganized Debtors. Any such interest or relationship shall not be an automatic disqualification for the position, but the Trustee shall take any such interest or relationship into account in selecting the Financial Institution.

(d)     The Trustee shall direct the disbursement of funds from Trust Accounts as set forth in this Trust Agreement and the CRP.

(e)     The Trustee may remove the Financial Institution at any time and may retain a successor Financial Institution.

(f)     The Trustee may retain additional financial services firms and/or banking or depository institution(s) as he or she reasonably determines appropriate or advisable in connection with the efficient operation and administration of the Trust. Such firms or institutions shall not be required to meet the standards of a Financial Institution under Section 3.1(c) of this Agreement.

**3.2     Investment Guidelines.**

(a)     The Trustee shall establish written Investment Guidelines (the "**Investment Guidelines**") for the Trust Assets and may modify such Investment Guidelines in his or her discretion, consistent with the requirements of this Section 3. The Trustee shall provide copies of the Investment Guidelines to the TOC, shall review the Investment Guidelines with the TOC at least bi-annually, and shall promptly advise the TOC of modifications made thereto.

(b)     Pursuant to the Debtors' Plan of Reorganization, the Trustee shall accept and hold $6.75 billion in New HoldCo Common stock in trust for the Fire Victims, and shall initially hold that stock in his or her name "as Trustee of the PG&E Fire Victim Trust and not individually." The Trustee shall continue to hold all such stock until such time as the Trustee determines, in consultation with the Investment Advisor (as defined below), that it is in the best interests of the beneficiaries of the Trust to liquidate some or all of the stock, consistent with the terms of the Shareholder Agreement. This provision is intended to modify the "prudent person"

16

rule, "prudent investor" rule, or any other rule of law that would require the Trustee to diversify this stock portfolio.

(c)     After a reasonable investigation and after consultation with the TOC, the Trustee shall retain a professional to act as an investment and financial advisor, broker, and escrow agent (the "**Investment Advisor**") who shall assist the Trustee in assessing acceptable levels of investment risks, making investment decisions based on budgetary considerations and market conditions, and taking reasonable steps to protect, sell, and reinvest Trust Assets. Candidates for the position of Investment Advisor shall fully disclose to the Trustee any interest in or relationship with the Debtors or the Reorganized Debtors. Any such interest or relationship shall not be an automatic disqualification for the position, but the Trustee shall take any such interest or relationship into account in selecting the Investment Advisor.

(d)     Notwithstanding the foregoing, if the Trustee takes possession of property as part of the enforcement of any rights and such property is in a form other than cash, the Trustee may retain such property. However, if the Trustee chooses to sell or exchange such property, any cash proceeds received in connection with such sale or exchange must be invested and reinvested as outlined in Section 3.3(b) above.

### 3.3    Payments.

(a)     **Payment of Trust Expenses.**  All Trust Expenses shall be, subject to the Budget, payable by the Trustee out of the Trust Assets. None of the Trustee, Delaware Trustee, Claims Administrator, Claims Processor, Neutrals, TOC, nor any of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any Trust Expense or any other liability of the Trust.

(b)     **Payment of Fire Victim Claims.**  The Trustee will pay Approved Fire Victim Claims against the Debtors and the Reorganized Debtors, from the Trust Assets up to the full amount of such Claims, in accordance with this Trust Agreement and the CRP.

(c)     **Allocation of Insurance Proceeds.**  All proceeds recovered under any insurance policies providing coverage for Fire Victim Claims shall be received and held by the Trustee as assets of the Trust to be used for payment of Fire Victim Claims and Trust Expenses.

(d)     **Inclusion in Annual Report.**  The Trustee shall include a reasonably detailed description of any payments made in accordance with this Section 3.3 in the Annual Report. However, any names of any Fire Victim recipient of any such payment and any information that could lead to the discovery of any recipient's identity such as property address, APN, telephone number, email address, and the like shall not be disclosed in the Annual Report, but shall be kept confidential by the Trustee, Delaware Trustee, the Claims Administrator, Claims Processor, Neutrals, the TOC, and each of the preceding person's and entity's officers, agents, advisors, professionals, or employees. Instead, the names of Fire Victim recipients of any such payment shall be identified by a unique numerical designation.

Case: 19-30088   Doc# 7626-5   Filed: 06/08/20   Entered: 06/08/20 18:07:51   Page 23 of 59

## SECTION IV
## DISTRIBUTIONS

**4.1** **Distributions.** The Trustee shall distribute all Trust Assets on behalf of the Trust in accordance with this Trust Documents at such time or times as the Trustee may determine.

**4.2** **Manner of Payment or Distribution.**

(a) All distributions made by the Trustee on behalf of the Trust to Beneficial Owners (or by a disbursing agent (the "**Disbursing Agent**") retained by the Trust to make distributions on behalf of the Trust) shall be payable to the Beneficial Owner of record on the date scheduled for the distribution (the "**Distribution Date**"), unless such day is not a Business Day, then such date for the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date. The Trustee shall direct the Disbursing Agent to effect an orderly and efficient disbursement of funds with respect to Approved Claims, after the Trust has satisfied any release, tax reporting, and other documents or requirements (including without limitation tax withholding, if necessary), in accordance with the Trust Documents.

(b) The Disbursing Agent may enter into arrangements with one or more banks with branch networks located in Northern California so as to expedite Beneficial Owner access to such funds.

(c) Neither the Disbursing Agent nor any banks retained pursuant to this Section 4.2 shall be required to meet the standards of a Financial Institution under Section 3.1(c) of this Trust Agreement.

(d) All Trust Assets shall be distributed in accordance with the Trust Documents.

**4.3** **Delivery of distributions.**

(a) All distributions under this Trust Agreement and CRP on behalf of the Trust to any Beneficial Owner shall be made to such Beneficial Owner's counsel, if any, as identified on the claims materials submitted to and maintained by the Claims Processor, including on any proof of claim, *provided however*, if the Beneficial Owner is not represented by counsel, then all distributions shall be made at the address of such Beneficial Owner as identified on the claims materials submitted to and maintained by the Claims Processor, including on any proof of claim, *provided further*, distributions shall be made in accordance with the above unless the Trustee has been notified pursuant to Section 8.12 below of a change of address, with such change of address provided at least twenty (20) days prior to such distribution Date, and *provided further*, that the Trustee, Claims Administrator, and Claims Processor, as applicable, shall have the authority, in their discretion, to seek further direction and information from any Beneficial Owner or their counsel, if applicable, regarding the direction of distributions under this Trust Agreement and CRP. .

In the event that any distribution to a Beneficial Owner is returned as undeliverable, no further distribution to such Beneficial Owner shall be made unless and until the Trustee has been

18

notified of the then current address of such Beneficial Owner, at which time such distribution shall be made to such Beneficial Owner without interest; provided, however, that all distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the applicable Distribution Date. After such date, all unclaimed property or interests in property (i) shall revert to the Trust (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), (ii) the Claim of any Beneficial Owner to such property or interest in property shall be released, settled, compromised, and forever barred, and (c) such unclaimed property interests shall be distributed to other holders of Class 5A-III and Class 5B-III Claims in accordance with the Trust Documents, as if the Claim of such Beneficial Owner had been disallowed as of the date the undeliverable distribution was first made. The Trustee shall take reasonable efforts to obtain a current address for any Beneficial Owner with respect to which any distribution is returned as undeliverable. In the event the Trust holds Cash after paying all Trust Expenses and all distributions contemplated under the Trust Documents, such remaining cash shall be distributed to a national recognized charitable organization of the Trustee's choice to the extent economically feasible. No Trust Asset or any unclaimed property shall escheat to any federal, state, or local government or any other entity.

**4.5    Cash distributions**. Distributions of Cash shall be distributed as provided in the CRP, and the Trustee is entitled to setoff and recoupment as provided in Section 5.13 of the Plan.

**4.6    No De Minimis Distribution.** Notwithstanding any provision in the Trust Documents to the contrary, no payment shall be made to any Beneficial Owner on account of any Approved Claim if the Trustee determines that the cost of making such distribution is greater than the amount of the distribution to be made.

**SECTION V**
**TRUSTEE AND DELAWARE TRUSTEE**

**5.1    Number.** In addition to the Delaware Trustee appointed pursuant to Section 5.11 hereof, there shall be one (1) Trustee. The initial Trustee shall be Hon. John K. Trotter (Ret.). For the avoidance of doubt, there shall be at least one (1) Trustee serving at all times (in addition to the Delaware Trustee).

**5.2    Term of Service and Successor Trustee.**

(a)     Subject to the other provisions of this Section 4, the Trustee shall serve from the Effective Date until the earlier of (i) his death, (ii) his resignation pursuant to Section 4.2(b) below, (iii) his or her removal pursuant to Section 4.2(c) below, or (iv) the termination of the Trust pursuant to Section 8.2 below.

(b)     The Trustee may resign at any time before the end of his or her term by written notice to the TOC. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)     The Trustee may be removed on application to the Court of Exclusive Jurisdiction, preceded by the Supermajority Vote of the TOC, in the event that the Trustee

19

becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause. Such good cause shall mean fraud, self-dealing, intentional misrepresentation, or willful misconduct.

(d)     If for any reason John Trotter is unable to serve as Trustee, Cathy Yanni shall become the Successor Trustee. If for any reason Cathy Yanni is unable to serve as trustee, the TOC shall promptly designate a new Successor Trustee by a Supermajority Vote, which Successor Trustee shall succeed to all of the rights, powers, and duties of the prior Trustee following confirmation by the Bankruptcy Court. If the TOC cannot agree on the Successor Trustee by a Supermajority Vote, the Bankruptcy Court shall make the appointment.

### 5.3     Reliance; No Personal Obligation.

Except as otherwise provided herein:

(a)     The Trustee, Delaware Trustee, TOC and Claims Administrator may rely upon, and, except as otherwise provided in this Trust Agreement, shall be indemnified by the Trust in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the them to be genuine and to have been signed or presented by the proper party or parties.

(b)     Persons dealing with the Trustee, Delaware Trustee, Claims Administrator, Claims Processor, Neutrals and TOC shall look only to the Trust Assets to satisfy any liability incurred by the Trustee to such Person in carrying out the terms of this Trust Agreement, and neither the Trustee, Neutrals, Claims Administrator, Claims Processor, nor any member of the TOC or any professionals, advisors, officers, agents, consultants, lawyer shall have any personal obligation to satisfy any such liability.

### 5.4     Standard of Care; Exculpation.

(a)     None of the Trustee, Delaware Trustee, TOC, Claims Administrator, Special Master or their respective members, officers, employees, agents, consultants, lawyers, advisors, or professionals (collectively, the "**Trust Indemnified Parties**" with each being a "**Trust Indemnified Party**") shall be liable for any damages arising out of the creation, operation, administration, enforcement, or termination of the Trust, except in the case of such Trust Indemnified Party's willful misconduct, bad faith or fraud as established by a Final Order To the fullest extent permitted by applicable law, the Trust Indemnified Parties shall have no liability for any action in performance of their duties under this Trust Agreement taken in good faith with or without the advice of counsel, accountants, appraisers, and other professionals retained by the Trust Indemnified Parties. None of the provisions of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their respective rights and powers. Any Trust Indemnified Party may rely, without inquiry, upon writings delivered to it under any of the Trust Documents, which the Trust Indemnified Party reasonably believes to be genuine and to have been given by a proper person. Notwithstanding the foregoing, nothing in this Section 5.4 shall relieve the Trust Indemnified Parties from any liability for any actions or omissions arising out of the willful misconduct, bad

faith or fraud as determined by a Final Order; <u>provided</u> that in no event will any such person be liable for punitive, exemplary, consequential, or special damages under any circumstances. Any action taken or omitted by the Trust Indemnified Parties with the approval of any of the Bankruptcy Court, the District Court, or the Superior Court of California for the County of San Francisco and, in the case of the Trustee, with the express approval of the TOC, will conclusively be deemed not to constitute willful misconduct, bad faith or fraud.

(b) The Trust Indemnified Parties shall not be subject to any personal liability whatsoever, whether in tort, contract, or otherwise, to any person in connection with the affairs of the Trust or for any liabilities or obligations of the Trust except for its own willful misconduct, bad faith, or fraud, and all Persons claiming against the Trust Indemnified Parties, or otherwise asserting claims of any nature in connection with affairs of the Trust, shall look solely to the Trust Assets for satisfaction of any such claims.

(c) To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the Trust or the Beneficiaries, it is hereby understood an agreed by the parties hereto and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trust Indemnified Parties, *provided however*, that the duties of care and loyalty are not eliminated but are limited and subject to the terms of the Trust Agreement, including but not limited to this Section 5.4 and its subparts.

(d) The Trust Indemnified Parties shall be indemnified to the fullest extent permitted by law by the Trust against all liabilities arising out of the creation, operation, administration, enforcement, or termination of the Trust, including actions taken or omitted in fulfillment of their duties with respect to the Trust, except for those acts that those acts that are determined by Final Order to have arisen out of their own willful misconduct, bad faith or fraud.

(e) The Trust will maintain appropriate insurance coverage for the protection of the Trust Indemnified Parties, as determined by the Trustee in his or her sole discretion.

**5.5    Protective Provisions**.

(a) Every provision of this Trust Agreement relating to the conduct or affecting the liability of or affording protection to Trust Indemnified Parties shall be subject to the provisions of this Section 5.5.

(b) In the event the Trustee and/or the Claims Administrator retains counsel (including, at the expense of the Trust), the Trustee and/or Claims Administrator, as applicable, shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Trustee and/or the Claims Administrator, as applicable, be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Trustee and/or the Claims Administrator in the performance of duties hereunder. A successor to either of the Trustee or the Claims Administrator shall succeed to and hold the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client

21

privilege. No Beneficial Owner or other party may raise any exception to the attorney-client privilege discussed herein as any such exceptions are hereby waived by all parties.

(c)     To the extent that, at law or in equity, the Trustee has duties (including fiduciary duties) and liabilities relating hereto, to the Trust or to the Trust Beneficiaries, it is hereby understood and agreed by the Parties and the Trust Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, including Section 3806 of the Delaware Statutory Trust Act, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trustee, *provided however*, that the duties of care and loyalty are not eliminated but are limited and subject to the terms of the Trust Agreement, including but not limited to Section 5.4 herein.

(d)     No Trust Indemnified Party shall be personally liable under any circumstances, except for their own willful misconduct, bad faith or fraud as determined by a Final Order.

(e)     No provision of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own personal funds or otherwise incur financial liability in the performance of their rights, duties, and powers hereunder.

(f)     In the exercise or administration of the Trust hereunder, the Trust Indemnified Parties (i) may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and the Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants, and other professions Persons to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered, or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants, or other professionals.

**5.6     Compensation and Expenses of the Trustee.**

(a)     [The Trustee shall receive a retainer from the Trust Assets for his or her service as a Trustee in the amount of $_____ per year, which amount shall be payable in quarterly installments, plus hourly compensation in the amount of $_____ per hour, and the sum or $_____ per hour for non-work travel time, in both cases computed on a quarter-hour basis. The Trustee shall record all hourly time to be charged to the Trust on a daily basis. The compensation payable to the Trustee hereunder shall be reviewed every year by the Trustee and appropriately adjusted for yearly inflation based on the *Consumer Price Index for Urban Wage Earners and Clerical Workers* published by the United States Department of Labor, Bureau of Labor Statistics. Any other changes in compensation of the Trustee shall be made subject to approval of the Bankruptcy Court.]

(b)     The Trust will promptly reimburse the Trustee for all reasonable out-of-pocket costs and expenses incurred by the Trustee in connection with the performance of the duties hereunder.

22

(c)     The Trustee shall include a description of the amounts paid under this Section 5.6 in the Annual Report.

**5.7     Indemnification.**

(a)     Without the need for further court approval, the Trust hereby indemnifies, holds harmless, and defends the Trust Indemnified Parties in the performance of their duties hereunder to the fullest extent that a trust is entitled to indemnify, hold harmless, and defend such persons against any and all liabilities, expenses, claims, damages, or losses (including attorney's fees and costs) incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to or after the Effective Date in connection with the formation, establishment, funding, or operations of the Trust.

(b)     Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit, or proceeding, whether civil, administrative, or arbitrative, from which they are indemnified by the Trust shall be paid by the Trustee in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Party, to repay such amount in the event that it shall be determined ultimately by final order of the Bankruptcy Court that the Trust Indemnified Party or any other potential indemnitee is not entitled to be indemnified by the Trust.

(c)     The Trustee shall purchase and maintain appropriate amounts and types of insurance on behalf of the Trust Indemnified Parties, as determined by the Trustee, which may include liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor, or consultant of any such person.

(d)     The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified.  Termination or modification of the Trust Agreement shall not affect any indemnification rights or obligations in existence at such time.  In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party hereunder, the person, persons, or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under the Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(e)     The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

**5.8     Trustee's Employment of Professionals and Experts.**

(a)     The Trustee may, but shall not be required to, retain and/or consult with legal counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors, and such other parties deemed by the Trustee to be qualified as experts on relevant matters (the "**Trust Professionals**"), the cost of which shall be paid as a Trust Expense, and in

23

the absence of willful misconduct, bad faith or fraud, the written opinion of or information provided by any such party deemed by the Trustee to be an expert on the particular matter submitted to such party shall be full and complete authorization and protection in respect of any action taken or not taken by the Trustee hereunder in good faith and in accordance with the written opinion of or information provided by any such party.

(b)    The Trustee may retain and reasonably compensate the Trust Professionals, the cost of which shall be paid as a Trust Expense, subject to the terms of this Trust Agreement, including the Budget. To the extent that any Trust Professionals provided services to the Trustee prior to the Effective Date and have not been compensated for such services, the Trustee is authorized to pay such fees and expenses.  All fees and expenses of the Trust Professionals incurred in connection with the foregoing shall be payable from the Trust Assets.

**5.9    Trustee's Independence.**  Except as otherwise contemplated and disclosed in the Trust Documents or to the TOC after Effective Date of this Trust, the Trustee shall not, during the term of his or her service, hold a financial interest in, act as attorney or agent for, or serve as any other professional for any entity with a financial interest in the Trust, *provided that* any passive investment held by the Trustee shall not constitute a conflict of interest under this Section 5.9. Any violation of this Section 5.9 shall be cause for removal of the Trustee.  For the avoidance of doubt, this Section shall not be applicable to the Delaware Trustee.

**5.10    Bond.** The Trustee and the Delaware Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

**5.11    Delaware Trustee.**

(a)    There shall at all times be a Delaware Trustee.  The Delaware Trustee shall either be (i) a natural person who is at least 21 years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law to be eligible to serve as the Delaware Trustee, and shall act through one or more persons authorized to bind such entity.  If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this Section 5.11, it shall resign immediately in the manner and with the effect hereinafter specified in Section 5.11(c) below.  For the avoidance of doubt, the Delaware Trustee will only have such rights, duties and obligations as expressly provided by reference to the Delaware Trustee hereunder.  The Trustee shall have no liability for the acts or omissions of any Delaware Trustee.

(b)    The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities of the Trustee set forth herein.  The Delaware Trustee shall be a trustee of the PG&E Fire Victim Trust for the sole and limited purpose of fulfilling the requirements of Section 3807(a) of the Act and for taking such actions as are required to be taken by a Delaware Trustee under the Act.  The duties (including fiduciary duties), liabilities, and obligations of the Delaware Trustee shall be limited to (i) accepting legal process served on the PG&E Fire Victim Trust in the State of Delaware and (ii) the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act.  There

24

shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee or the Beneficial Owners, such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement. The Delaware Trustee shall have no liability for the acts or omissions of any Trustee.

(c)     The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustee in accordance with the terms of Section 5.11(d) below. The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee, provided that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with Section 5.11(d) below, provided, further that if any amounts due and owing to the Delaware Trustee hereunder remain unpaid for more than ninety (90) days, the Delaware Trustee shall be entitled to resign immediately by giving written notice to the Trustee. If the Trustee does not act within such 60-day period, the Delaware Trustee, at the expense of the PG&E Fire Victim Trust, may apply to the Court of Chancery of the State of Delaware or any other court of competent jurisdiction for the appointment of a successor Delaware Trustee.

(d)     Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee, and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of his or her duties and obligations under this Trust Agreement. The successor Delaware Trustee shall make any related filings required under the Act, including filing a Certificate of Amendment to the Certificate of Trust of the PG&E Fire Victim Trust in accordance with Section 3810 of the Act.

(e)     Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto.

Case: 19-30088    Doc# 7629-5    Filed: 06/08/20    Entered: 06/08/20 18:07:51    Page 31
of 59

# SECTION VI
## TRUST OVERSIGHT COMMITTEE

**6.1    Members of the TOC.**  [The TOC shall represent the interests of holders of Fire Victim Claims in the administration of the Trust. The members of the TOC shall be appointed in accordance with the Plan.][6]

**6.2    Duties of the Members of the TOC.**  The members of the TOC shall serve in a fiduciary capacity representing current holders of Fire Victim Claims in the administration of the Trust.  The TOC shall not have any fiduciary duties or responsibilities to any party other than holders of Fire Victim Claims, provided that the TOC shall be entitled to the protections and limitations of duties provided for herein even with respect to the holders of Fire Victim Claims. The Trustee must obtain the consent of the TOC on matters identified in Section 2.2(f) above and consult with the TOC in accordance with other provisions herein.  Where provided elsewhere in the Trust Agreement or in the CRP, certain other actions by the Trustee may also be subject to the consent of the TOC.

**6.3    Term of Office of the TOC Members.**

(a)    Members of the TOC shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 6.3(b) below, (iii) his or her removal pursuant to Section 6.3(c) below, or (iv) the termination of the Trust pursuant to Section 8.2 below.

(b)    A member of the TOC may resign at any time by written notice to the other members of the TOC and the Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than thirty (30) days after the date such notice is given, where practicable.

(c)    A member of the TOC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause.  Such removal shall be made at the recommendation of the majority of the remaining members of the TOC and with the approval of the Trustee.

**6.4    Appointment of Successor Members of the TOC.**

(a)    If member of the TOC dies, resigns pursuant to Section 6.3(b) above, or is removed pursuant to Section 6.3(c) above, the vacancy shall be filled with an individual selected by and agreed to by a majority of the remaining members of the TOC; provided however, that if such members cannot agree on the successor, the Bankruptcy Court shall make the appointment.

(b)    Each successor or replacement member of the TOC shall serve under the same terms and conditions as the original members of the TOC.

---

[6] To be discussed.  Consider replacing with [reserved].

26

**6.5     Compensation and Expenses of the TOC.**  The members of the TOC shall not be entitled to compensation for their services but shall be reimbursed promptly for all reasonable out-of-pocket costs and expenses incurred in connection with the performance of their duties hereunder.  The TOC shall, in its discretion, be permitted to procure and maintain appropriate insurance coverage (as determined by the TOC with the consent of the Trustee) as a Trust Expense.  The Trustee shall include a description of the amounts paid under this Section 6.6 in the Annual Report to be filed with the Bankruptcy Court and provided to the TOC pursuant to Section 2.2(c)(i).

**6.6     Procedures for Consultation with and Obtaining the Consent of the TOC.**

(a)     **Quorum; Simple Majority for Consent.**  A quorum will be declared if at least [●] of the [●] members of the TOC Members are present.  Except as provided elsewhere in this Trust Agreement, all votes or determinations will require [●] affirmative votes.

(b)     **Consultation Process.**

(i)     In the event the Trustee is required to consult with the TOC pursuant to Section 2.2(e) above or on other matters as provided herein, the Trustee shall provide the TOC with written advance notice, which notice shall be deemed given if delivered by electronic mail, of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances.  The Trustee shall also provide the TOC with such reasonable access to the Trust Professionals and other experts retained by the Trustee and the Claims Administrator as the TOC may reasonably request during the time that the Trustee is considering such matter, and shall also provide the TOC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee.

(ii)     In determining when to take definitive action on any matter subject to the consultation procedures set forth in Section 6.6, the Trustee shall take into consideration the time required for the TOC, if its members so wish, to engage and consult with its own independent advisors as to such matter.  Except for the Emergency Consultation Matters and Emergency Consultation Procedures, the Trustee shall not take definitive action on any such matter until at least three (3) business days after providing the TOC with the initial written notice that such matter is under consideration by the Trustee, unless (a) such time period is waived in writing by the TOC or at a meeting where the TOC and Trustee are present,  or (b) the Trustee believes that the matter must be considered on less than three (3) business days' notice.  If the Trustee believes that the matter must be considered on less than three (3) business days' notice (an "**Emergency Consultation Matter**"), the Trustee shall so advise the TOC and provide a consultation deadline and information that is reasonable under the circumstances, after which the Trustee shall be deemed to have consulted with the TOC (the "**Emergency Consultation Procedures**").

(c)     **Consent Process.**

(i)     In the event the Trustee is required to obtain the consent of the TOC pursuant to any provision in the Trust Documents, the Trustee shall provide the TOC with a

27

written notice stating that its consent is being sought, describing in detail the nature and scope of the action the Trustee proposes to take. The Trustee shall provide the TOC as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Trustee shall also provide the TOC with such reasonable access to the Trust Professionals and other experts retained by the Trustee and the Claims Administrator as the TOC may reasonably request during the time that the Trustee is considering such action, and shall also provide the TOC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

(ii) The TOC must consider in good faith and in a timely fashion any request for its consent by the Trustee, and must in any event advise the Trustee, in writing, of its consent or its objection to the proposed action within three (3) business days of receiving the original request for consent from the Trustee. The TOC may not withhold its consent unreasonably. If the TOC decides to withhold its consent, it must explain in detail its objections to the proposed action. If the TOC does not advise the Trustee, in writing, of its consent or its objections to the action within three (3) business days of receiving notice regarding such request, the TOC's consent to the proposed actions shall be deemed to have been affirmatively granted. If, the TOC does not consent to the Trustee's proposed action, the Trustee and the TOC shall resolve their dispute pursuant to Section 8.18 below, however, in that event the TOC shall have the burden of proof to show the validity of the TOC's objection.

(iii) If the Trustee believes that the matter must be considered on less than three (3) business days' notice (the "**Emergency Consent Matter**"), the Trustee shall so advise the TOC of the Trustee's proposed action and provide a response deadline and information that is reasonable under the circumstances. The TOC shall be deemed to have consented if the TOC does not respond within the shortened response deadline. If the TOC does not consent to the Emergency Consent Matter, the Trustee may immediately seek the Bankruptcy Court's intervention.

## SECTION VII
## NEUTRALS

**7.1     Panel of Neutrals.**  The Trustee, Claims Administrator, Claims Processor, and TOC shall work with a panel of neutrals experienced in resolution of wildfire claims and related matters in resolving issues relating to the liquidation and settlement of claims against the Trust (the "**Panel of Neutrals**"). Only those neutrals with the requisite experience who attend all training or other preparatory meetings held by the Trustee will be eligible for approval by the Trustee as a neutral (the "**Neutrals**").

**7.2     Duties of the Neutrals.**  The duties of the Neutrals shall include:  (a) assisting the Trustee and the Claims Administrator in liquidating and approving Fire Victim Claims pursuant to the CRP; (b) mediating and arbitrating disputed amounts of Approved Claims; (c)  mediating and arbitrating disputes relating to attorneys' fees and costs; (d) mediating and arbitrating disputes between law firms relating to representation of Fire Victim Claimants; (e) recommending modifications of the CRP to the Trustee and the TOC; and (f) performing other services as directed by the Trustee and the Claims Administrator. No Neutral shall perform any

Case: 19-30088   Doc# 7039-5   Filed: 06/08/20   Entered: 06/08/20 18:07:51   Page 34 of 59

of these duties if he or she has a conflict of interest with any of the parties unless the existence of the conflict is disclosed in writing and waived by the affected parties in writing.

**7.3    Random Assignment of Neutrals.**  Neutrals shall be randomly assigned to resolve specific Fire Victim Claims or specific issues relating to specific Fire Victim Claims and general issues relating to all Fire Victim Claims or groups of Fire Victim Claims, and conduct mediations and/or arbitrations of specific Fire Victim Claims. Neither the Trustee nor the Claims Administrator shall have any power to assign any Fire Victim Claim to any Neutral.

**7.4    Meetings with Neutrals.**  The Trustee shall hold meetings with the Neutrals, Claims Administrator, Claims Processor and TOC on such schedule as the Trustee deems appropriate in his sole discretion  (either in person or via conference call) to discuss, refine, or devise methods of liquidating Fire Victim Claims in a fair, consistent, and equitable manner. The Trustee shall meet with some or all of the Neutrals at various times.  At all such meetings the Trustee and the Claims Administrator shall serve as co-chairs of the meeting.

**7.5    Indemnification.**  Without the need for further court approval, the Trust hereby indemnifies, holds harmless, and defends the Neutrals in the performance of their duties hereunder to the fullest extent that a trust is entitled to indemnify, hold harmless, and defend such persons against any and all liabilities, expenses, claims, damages, or losses (including attorney's fees and costs) incurred by them in the performance of their duties hereunder.

**SECTION VIII**
**GENERAL PROVISIONS**

**8.1    Irrevocability.**  To the fullest extent permitted by applicable law, the Trust is irrevocable.

**8.2    Term; Termination.**

(a)    The term for which the Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the following provisions.

(b)    The Trust shall automatically dissolve on the date (the "**Trust Termination Date**") ninety (90) days after the first to occur of the following events:

(i)    the date on which the Bankruptcy Court approves dissolution of the Trust because (1) all Claims duly filed with the Trust have been liquidated, approved or disallowed, accepted, and paid to the extent possible based upon funds available through the Plan and as provided in this Trust Agreement and the CRP or have been disallowed by a final non-appealable order, (2) all known claims against third parties have been pursued and all reasonably expected recoveries from those claims have been collected, and (3) a final accounting has been filed with and approved by the Bankruptcy Court; or

(ii)    to the extent that any rule against perpetuities shall be deemed applicable to the Trust, the date on which twenty-one (21) years less ninety-one (91) days pass after the death of the last survivor of all of the descendants of the late Joseph P. Kennedy, Sr., father of the late President John F. Kennedy, living on the date hereof.

29

(c)     On the Trust Termination Date or as soon as reasonably practicable thereafter, after the wind-up of the Trust's affairs by the Trustee and payment of all of the Trust's liabilities have been provided for as required by applicable law, all monies remaining in the Trust estate shall be distributed to the Fire Victims on a *pro rata* basis according to the percentage value of each Approved Claim relative to the total amount of Approved Claims, provided, however, that, notwithstanding any provision in the Trust Documents to the contrary, no payment in the aggregate of less than twenty-five dollars ($25.00) in Cash shall be made to any Beneficial Owner on account of any Approved Claim.

(d)     Following the dissolution and distribution of the assets of the Trust, the Trust shall terminate, and the Trustee (acting alone) shall perform all acts and duties necessary to complete the termination and winding up of the affairs of the Trust and shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the PG&E Fire Victim Trust to be filed in accordance with the Act.  Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the PG&E Fire Victim Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.  The Trustee shall provide to the Delaware Trustee a certified copy of the Certificate of Cancellation within a reasonable time after the filing of such Certificate of Cancellation.  The Certificate of Cancellation need not be signed by the Delaware Trustee.

**8.3     Amendments.**  Any modification or amendment made pursuant to this Section 8.3 must be done in writing.  Notwithstanding anything contained in this Trust Agreement or the CRP to the contrary, neither this Trust Agreement, the CRP, nor any document annexed to the foregoing shall be modified or amended in any way that could jeopardize, impair, or modify (i) the applicability of section 105 of the Bankruptcy Code to the Plan and the Confirmation Order, (ii) the efficacy or enforceability of the Channeling Injunction or any other injunction or release issued or granted in connection with the Plan, (iii) the Trust's qualified settlement fund status under the QSF Regulations, or (iv) the rights, duties, liabilities and obligations of the Delaware Trustee without the written consent of the Delaware Trustee.  Further, without the written consent of the TOC there shall be no modification of (i) Section 5.7 hereof or any rights, benefits or protections provided to the Trust Indemnified Parties, or (ii) the terms of the Claimant Release or the obligation of the Trust to obtain a properly executed Claimant Release as a pre-condition to a claimant receiving a distribution from the Trust.

**8.4     Meetings.**

(a)     The Trustee and the Claims Administrator will hold regularly scheduled, periodic meetings with the TOC, either in person or via telephone or videoconference, which shall occur at least quarterly. The Delaware Trustee shall not be required nor permitted to attend such meetings.

(b)     The TOC shall meet as needed, either in person or via telephone or videoconference.  The Trustee may participate in such meeting as requested by the TOC. Minutes will be maintained at meetings of the TOC and the TOC shall provide such minutes to the Trustee within ten (10) days following such meeting.

Case: 19-30088   Doc# 7629-5   Filed: 06/08/20   Entered: 06/08/20 18:07:51   Page 36 of 59

**8.5   Severability.**  Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

**8.6   Notices.**

(a)   Notices to persons asserting claims shall be given by e-mail as provided on such person's claim form submitted to the Trust with respect to his or her Fire Victim Claim.

(b)   Any notices or other communications required or permitted hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by email or facsimile pursuant to the instructions listed below, or mailed by first class mail, postage prepaid, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

To the Trustee:

[TBD]

To the Claims Administrator:

[TBD]

To the Claims Processor:

[TBD]

To the TOC:

[TBD]

To the Debtors:

[TBD]

With a copy (which shall not constitute notice) to:

[TBD]

(c)   All such notices and communications shall be sent by First Class Mail, fax, or email.  If mailed, the notices shall be effective when physically delivered at the designated addresses.  If sent by fax or email, the notices shall be effective upon transmission.

**8.7   Successors and Assigns.**  The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Trust, the Trustee, the TOC, and their respective successors and assigns, except that none of such persons may assign or otherwise transfer any of its rights or obligations, if any, under this Trust Agreement except, in the case of the Trust and the Trustee, as contemplated by Section 2.1 above, and in the case of the Delaware Trustee, as contemplated by section 5.11.

31

**8.8     Limitation on Claim Interests for Securities Laws Purposes.**  Fire Victim Claims, and any interests therein (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will or under the laws of descent and distribution; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest.

**8.9     Evidence of Beneficial Interests.**  Ownership of a beneficial interest in the Trust Assets by the Trust Beneficiaries shall not be evidenced by any certificate, security or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

**8.10     Exemption from Registration.**  The Parties hereto intend that the rights of the Trust Beneficiaries arising under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the Trust Interests will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

**8.11     Transfer and Exchange.**  The beneficial interests held by Trust Beneficiaries are not negotiable and shall be non-transferable other than if transferred by will, intestate succession, or otherwise by operation of law, and shall be subject to certain other restrictions. Moreover, any and all Trust Interests shall not be listed for trading on any national securities exchange and the Trustee shall not take any action the purpose of which is, or which would be in support of, the establishment of an active trading market in the Trust Interests. No voluntary transfer of a beneficial interest in the Trust shall be effective or binding upon the Trust or the Trustee for any purpose. In the case of a deceased individual Beneficial Owner, his or her executor or administrator shall provide written notice to the Trustee and deliver to the Trustee such documentation necessary to evidence the transfer by operation of law and identify the proper Person to succeed to such decedent's interests. The Trustee may fully rely on any such evidence provided by a purported executor or administrator and shall have no duty to investigate.

**8.12     Change of Address.**  A Beneficial Owner may, after the Effective Date, select an alternative distribution address or provide wire transfer instructions for any distribution by providing notice to the Trustee (or to another Person as directed by the Trustee) including such address or instructions. Such notification will be effective only upon receipt by the Trustee or other Person in accordance with this Section 8.12. Absent receipt of such notice, the Trustee shall not recognize any such change of distribution address.

**8.13     Entire Agreement; No Waiver.**  The entire agreement of the parties relating to the subject matter of this Trust Agreement is contained herein and in the documents referred to herein, and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof.  No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or

32

partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power, or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

**8.14   Headings.** The headings used in this Trust Agreement are inserted for convenience only and do not in any manner affect the construction of the provisions of this Trust Agreement.

**8.15   Compliance with Laws.** Any and all distributions of Trust Assets shall be in compliance with applicable laws, including applicable federal and state tax and securities laws.

**8.16   Governing Law.** The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by the laws of the State of Delaware, and the rights of all parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof which would purport to apply the law of any other jurisdiction; provided, however, that the laws of the State of California shall govern: (x) any issue of privilege between any holder of a Fire Victim Claim and his or her counsel; and (y) any issue of privilege between the Trust, the Trustee, and their professionals; provided, further, and for the avoidance of doubt, that all Fire Victim Claims administered under the CRP and this Trust Agreement shall be evaluated under the laws of the State of California; provided, further, that the parties hereto intend that the provisions hereof shall control and there shall not be applicable to the Trust, the Trustee, the Delaware Trustee, the Claims Administrator, the TOC, or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents, or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property, (d) fees or other sums payable to trustees, officers, agents, or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding of trust assets, (g) the existence of rights or interests (beneficial or otherwise) in trust assets, (h) the ability of beneficial owners or other persons to terminate or dissolve a trust, or (i) the establishment of fiduciary or other standards of responsibilities or limitations on the acts or powers of trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee, the Delaware Trustee, the Claims Administrator, or the TOC, as set forth or referenced in this Trust Agreement. Section 3540 of Title 12 of the Delaware Code shall not apply to the Trust.

**8.17   Settlors' Representative and Cooperation.** The Debtors are hereby irrevocably designated as the Settlors and are hereby authorized to take any action required of the Settlors by the Trustee in connection with this Trust Agreement. The Reorganized Debtors agree to cooperate in implementing the goals and objectives of this Trust Agreement.

**8.18   Dispute Resolution.** Any disputes that arise under this Trust Agreement or under the CRP among the parties hereto shall be resolved by an alternative dispute resolution (the

Case: 19-30088   Doc# 7629-5   Filed: 06/03/20   Entered: 06/03/20 18:07:51   Page 39 of 43

"**ADR**") process mutually agreeable to the parties involved. The parties involved agree to meet and confer in good faith in an effort to agree upon a mutually acceptable ADR process. Any party to the ADR process that is dissatisfied with the final outcome of the ADR process may apply to the Bankruptcy Court, and after the close of the Debtors' chapter 11 cases, the District Court, for a judicial determination of the matter, which shall be final. Any review conducted by the Bankruptcy Court (or District Court, as applicable) shall be de novo. In any case, if the dispute arose pursuant to the consent provision set forth in Section 6.7, the burden of proof shall be on the party or parties who withheld consent to show by a preponderance of the evidence that consent was not unreasonably withheld. If after thirty (30) days following notification to all involved parties that there is a matter in dispute, an ADR process has not been agreed upon by the parties or the dispute has not been resolved by an ADR process, the parties are relieved of the requirement to pursue ADR prior to application to the Bankruptcy Court (or District Court, as applicable). If the Trustee determines that the matter in dispute is exigent and cannot await the completion of the ADR process, the Trustee shall have the discretion to elect out of the ADR process at any stage of the process and seek resolution of the dispute in the Court of Exclusive Jurisdiction.

**8.19     Enforcement and Administration.**  The provisions of this Trust Agreement, the CRP, and the other Trust Documents shall be enforced by the Court of Exclusive Jurisdiction. The parties also acknowledge and agree that the Court of Exclusive Jurisdiction (1) shall have exclusive continuing jurisdiction over the settlement of accounts of the Trustee, those matters set forth in Section 1.6 above, and the determination that the Trust is terminated pursuant to Section 8.2 above, and (2) shall have exclusive continuing jurisdiction over all other matters relating to the Trust and its administration.

**8.20     Joinder.**  The Trustee, the Delaware Trustee, the Claims Administrator, [the Special Master] and each member of the TOC shall execute this Trust Agreement (or a Joinder hereto, as applicable) thereby acknowledging their respective obligations and rights created by the Trust, and agreeing to perform the duties set forth in the Trust Agreement.

**8.21     Capitalized Terms.**  All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference.  All capitalized terms not defined herein or defined in the Plan, but defined in the Bankruptcy Code or Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Rules, and such definitions are incorporated herein by reference.

**8.22     Effectiveness.**  This Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

**8.23     Counterpart Signatures.**  This Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument.  Delivery of a counterpart hereof by facsimile or email transmission of a PDF file shall be effective as delivery of a manually executed counterpart hereof.

IN WITNESS WHEREOF, the parties have executed this Trust Agreement as of the date first set forth above to be effective as of the Effective Date.

**[SIGNATORY NAME]**

By: _____

Title: _____

Date: _____


**[SIGNATORY NAME]**

By: _____

Title: _____

Date: _____


**[SIGNATORY NAME]**

By: _____

Title: _____

Date: _____


**[SIGNATORY NAME]**

By: _____

Title: _____

Date: _____


**[SIGNATORY NAME]**

By: _____

Title: _____

Date: _____

*[Signature page to PG&E Fire Victim Trust Agreement dated [●], 2020*

35

**[SIGNATORY NAME]**

By: _____

Title: _____

Date: _____

**[SIGNATORY NAME]**

By: _____

Title: _____

Date: _____

*[Signature page to PG&E Fire Victim Trust Agreement dated [●], 2020*

36

**EXHIBIT 1**

**2015, 2017, AND 2018 WILDFIRES**

The Trust is established to administer Claims related to the following Fires:

(a)     Butte Fire (2015)

(b)     North Bay Wildfires (2017)

|   |   |
|---|---|
| A. | 37 |
| B. | Adobe |
| C. | Atlas |
| D. | Blue |
| E. | Cascade |
| F. | Cherokee |
| G. | Honey |
| H. | LaPorte |
| I. | Lobo |
| J. | Maacama / Youngs |
| K. | McCourtney |
| L. | Norrbom |
| M. | Nuns |
| N. | Partrick |
| O. | Pocket |
| P. | Point |
| Q. | Pressley |
| R. | Pythian / Oakmont |
| S. | Redwood / Potter Valley |
| T. | Sullivan |
| U. | Sulphur |
| V. | Tubbs |

(c)     Camp Fire (2018)

**EXHIBIT 2**

**FIRE VICTIM CLAIMS RESOLUTION PROCEDURES**

RESERVED FOR DISCUSSION WITH TRUSTEE AND CLAIMS ADMINISTRATOR

# EXHIBIT 3

## FORM OF CERTIFICATE OF TRUST

## OF THE

## PG&E FIRE VICTIM TRUST

This Certificate of Trust of the **PG&E FIRE VICTIM TRUST** (the "*Trust*") is being duly executed and filed by the undersigned trustees of the Trust, to form a statutory trust under the Delaware Statutory Trust Act (12 Del. Code § 3801 *et seq.*) (the "*Act*").

1.      **Name.**  The name of the statutory trust formed hereby is:

**PG&E Fire Victim Trust**

2.      **Delaware Trustee.**  The name and business address of the Delaware Trustee of the Trust in the State of Delaware is:

[                                                                              ]

3.      **Effective Date.**  This Certificate of Trust shall be effective upon filing.

**IN WITNESS WHEREOF,** the undersigned, being all of the trustees of the Trust, have duly executed this Certificate of Trust in accordance with Section 3811(a) of the Act.

| TRUSTEE: | DELAWARE TRUSTEE: |
|---|---|
| <br><br>_____<br>Hon. John K. Trotter (Ret.), in his capacity as Trustee and not individually | <br><br>By: _____<br><br>Name:<br><br>Title |

**EXHIBIT 4**

**SETTLEMENT AGREEMENT, GENERAL RELEASE, AND ASSIGNMENT**

**EXHIBIT 5**

**MUTUAL MADE WHOLE RELEASE**

The terms "Claimant" and "Insurer," are defined in Paragraph G. below.

_____, Trustee of the Fire Victim Trust, the undersigned party or personal representative (referred to herein as "Claimant"), individually and on behalf of the estate of the Claimant, and the Insurer (collectively, the "Parties" or "Releasees") agree as follows:

A.     Whereas, the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated _____ (the "Plan"), was confirmed by an order of the United States Bankruptcy Court for the Northern District of California entered on _____, 2020, and the Plan became effective on _____, 2020.

B.     Whereas the Plan provides for the treatment of all allowed Fire Victim Claims (as defined in the Plan) against the Debtors through the Fire Victim Trust (as defined in the Plan) and for the discharge of the Debtors from any further or other liability on account of all Fire Victim Claims.

C.     Whereas the Plan provides for the treatment of all allowed Subrogation Wildfire Claims (as defined in the Plan) against the Debtors through the Subrogation Wildfire Trust (as defined in the Plan) and for the discharge of the Debtors from any further or other liability on account of all Subrogation Wildfire Claims.

D.     Whereas, the Plan provides that the Fire Victim Claims are administered by a Fire Victim Trust and a Fire Victim Trustee who operates independent from the Debtors, holders of the Fire Subrogation Claims, and the Insurer.  Neither the Debtors, holders of the Fire Subrogation Claims, nor the Insurer shall have any right to participate in the administration of the Fire Victim Trust, review any allocation or distribution decision of the Trustee or Trust Oversight Committee, including that of the Claimant, or make any claim for money against the Trust or the Trustee in any way or at any time.

E.     Whereas, the Trustee and Fire Victim Trust Oversight Committee have reviewed and advised the Claimant of (a) the total amount paid into the Fire Victim Trust available for compensation to the Fire Victims, (b) the total number of claims made against the Fire Victim Trust, (c) the process by which trust funds will be allocated and distributed, and (d) the total allocated amount from the Fire Victim Trust to the Claimant ("Total Allocation Award").

F.     Whereas, the Claimant has reviewed the Total Allocation Award.

G.     Whereas, the Plan provides the Claimant and the Insurer execute a mutual limited release after the Claimant has reviewed the Total Allocation Award wherein the Claimant agrees to release only their claim against the Insurer under the Made Whole Doctrine (see Paragraph 1) and no other claim, cause of action, defense or remedy against the Insurer, and the Insurer agrees to release the Claimant as described herein in Paragraph 3.  For the purpose of this Release, "Claimant" includes the Claimant's heirs, legal representatives, successor or assigns and "Insurer" includes the Claimants' insurance carriers, their past and present holders of insurance

1

subrogation claims against the Debtors (and their direct and indirect assignors or assignees), and each of their directors, officers, agents, consultants, financial advisers, employees, attorneys, predecessors, successors and assigns.

H.     Whereas, nothing in this Release is an affirmation, representation, or an acknowledgment that the Claimant has in fact been fully compensated for their damages covered by the contract of insurance between the Insurer and the Claimant.  The parties agree that Court's approval of the Plan and the Claimants' acceptance of the Total Allocation Award does not establish that the Claimant has been fully compensated under California law for their compensable damages as a result of the fire to the extent those damages are covered by insurance.

I.     Whereas, the Insurer has agreed to the terms, provisions, and agreements of this Mutual Release in a separate agreement dated _____, 20__, affirming, adopting, and attaching a copy of this Mutual Release ("Insurer Adoption Agreement").  This Mutual Release is conditioned upon the Insurer, or the Insurer's successor on behalf of the Insurer, filing in the Chapter 11 case the Insurer Adoption Agreement, which states the Insurer releases, as to the Made Whole Doctrine only, each Claimant who signs and agrees to the terms of this Mutual Release.  The terms, provisions, and agreements of the Insurer Adoption Agreement are incorporated herein by reference.  Insurer's consent and agreement to the terms, provisions, and agreements of this Mutual Release shall be effective upon the signature of the Claimant.

J.     Whereas, this release is not required for the Trustee to allocate and distribute preliminary awards to individuals on a case by case basis for humanitarian or urgent needs.

NOW, THEREFORE, in consideration for the agreements described in this Release and other good and valuable consideration, the Claimant and the Insurer agree as follows:

1.     By accepting the Total Allocation Award, the Claimant hereby waives and releases their rights, known or unknown, to assert the Made Whole Doctrine against the Insurer. Claimant is not waiving or releasing any other claim, cause of action, defense, or remedy against Insurer.  Also, by signing this agreement, the Claimant is not agreeing as a factual matter that the Claimant has been fully compensated for each and every category of their damages under California law.

2.     The Claimant is not releasing any claims the Claimant may have against the Insurer other than the Claimant's foregoing waiver set forth in Paragraph 1.  The Parties to this Release further agree and acknowledge that the Claimant is not releasing any claims, except and only to the extent set forth above, they might have against the Insurer, including but not limited to those claims or causes of action related to:  (1) the policy of insurance and what is still owed or to be paid under the policy terms and conditions; (2) the right to pursue claims already made or to make new or continued claims under the policy; (3) claims handling issues; (4) delay in paying claims under the policy; (5) inadequate or untimely communication relating to the claim; (6) unreasonable positions taken relating to coverage, payment of the claim, acknowledging coverage, or day-today claims decisions; (7) actions or inactions of insurance agents or brokers in underwriting, securing, adjusting, calculating or recommending coverage; (8) coverage issues over policy language; (9) any action for bad faith or breach of the covenant of good faith and fair

2

dealing; (10) any claims to reform or modify the terms of any policy; (12) any rights to recover damages for breach of contract or tort (including punitive damages), penalties or equitable relief; (13) any claims of violations of statutory or regulatory obligations; or (14) any claim for unfair business acts or practices.

3.      The Insurer agrees to release and waive any right to make claim for any amount paid to the Claimant pursuant to the Fire Victim Trust or to assert as a defense, offset or reduction, the money paid to the Claimant from the Fire Victim Trust, which belongs solely to the Claimant.  The Claimant agrees to make no claim on the money paid to the Insurer from the Subrogation Wildfire Trust.  In agreeing to this limited release, Insurer is not releasing any claim, cause of action, defense, or remedy it may have against the Claimant other than Claimant's foregoing release of any Made Whole Doctrine claim.

4.      The Insurer is not releasing any claims the Insurer may have against Claimant other than the Insurer's foregoing waiver set forth in Paragraph 3.  The Parties to this Release further agree and acknowledge that the Insurer is <u>not</u> releasing any claims, except and only to the extent set forth above, it might have against the Claimant, including but not limited to those claims related to:  (1) the policy of insurance and what is still owed or to be paid under the policy terms and conditions; (2) defenses to garden variety claims handling issues unrelated to the Made Whole Doctrine; (3) defenses related to delay in paying claims under the policy; (4) defenses to alleged inadequate or untimely communication relating to the claim; (5) defenses to alleged unreasonable positions taken relating to coverage, payment of the claim, acknowledging coverage, or day-today claims decisions;  (6) defenses to actions or inactions of insurance agents or brokers in securing coverage; (7) coverage issues over policy language unrelated to Made Whole Doctrine; or (8) defenses to any common law action for bad faith unrelated to Made Whole Doctrine.

5.      The Insurer further agrees that the Total Allocation Award shall not be the subject of discovery or mentioned in any pleadings in any state or federal court action or admissible in evidence in any state or federal court action for any of the causes of action or claims for relief identified in Paragraphs 2 or 4.  Claimant agrees that the amount paid to Insurer from the Subrogation Wildfire Trust shall not be the subject of discovery or mentioned in any pleadings in any state or federal court action or admissible in evidence in any state or federal court action.

6.      To the extent that the Claimant brings a claim for breach of contract, wrongful denial of coverage and/or bad faith against the Insurer, the Insurer shall not assert in any way or at any time that the Claimant should have or could have pursued that claim against the Debtors, the Fire Victim Trust, or any other party.  The Insurer agrees that that it will not assert in any action or proceeding covered under Paragraph 2 or 4 that the Claimant has been compensated as a result of the Claimant's settlement with the Debtors.

7.      Both the Claimant and the Insurer agree that this Release gives the parties released the status of third-party beneficiary of the Release, and such Releasees may enforce this Release and any rights or remedies set forth herein.

8.      This Release contains the entire agreement between the parties as to the subject matter hereof and is effective immediately upon signing.  Likewise, the release in Paragraph 1 is

3

effective immediately upon signing. If there is a conflict between this Release and any other prior or contemporaneous agreement between the parties concerning the subject matter of the Release, the Release controls.

9. The law of the State of California shall govern the interpretation of this Release. The Bankruptcy Court has jurisdiction to resolve any disputes under this agreement.

10. Each Releasor states that he, she, or it is of legal age, with no mental disability of any kind, is fully and completely competent, and is duly authorized to execute this Release on Releasor's own behalf. Releasor further states that this Release has been explained to Releasor and that Releasor knows the contents as well as the effect thereof. Releasor further acknowledges that Releasor executed this Release after consulting with Releasor's attorney or the opportunity to consult with an attorney.

11. For avoidance of doubt, the Made Whole Doctrine is described herein. Subrogation is a doctrine that permits an insurance company, or its assignees, to assert the rights and remedies of an insured against a third-party tortfeasor. The Made Whole Doctrine is a common law exception to insurer's right of subrogation. The Made Whole Doctrine, under certain circumstances, could preclude an insurer from recovering any third-party funds unless and until the insured has been made whole for the loss. Both the Claimant and Insurer agree that this Release does not modify, abrogate or affect any prior release or waiver between the Parties arising from the Fire.

12. Consistent with the foregoing, it is expressly understood and agreed by claimant that claimant is waiving and releasing all known or unknown claims under the Made Whole Doctrine. It is expressly understood and agreed by insurer that insurer is waiving and releasing all known or unknown claims under the Made Whole Doctrine as to claimant.

Executed on this [●] day of [●], 20[●].

**BY CLAIMANT [Add Name]:**

_____
Signature of Claimant or Representative

_____
Printed Name of Signatory

_____
Capacity of Signatory

4

1

2

3

4

5                          **EXHIBIT B**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 2

## FIRE VICTIM CLAIMS RESOLUTION PROCEDURES

### PREAMBLE

The goal of the Fire Victim Trust[1] is to provide an efficient process to fairly compensate the holders of timely filed Fire Victim Claims (respectively, "Claimants" and "Claims") in an equitable manner consistent with the terms of the Trust Agreement, Plan, and California and federal law. These Fire Victim Claims Resolution Procedures ("CRP") apply to all Claims. The Claims Administrator shall implement and administer the CRP in consultation with the Trustee, Claims Processor, Neutrals, and Trust Professionals with the goal of securing the just, speedy, and cost-efficient determination of every Claim. Those entrusted with the consideration and determination of Claims shall treat all Claimants with abiding respect and shall strive to balance the prudent stewardship of the Trust with care in its administration, allocation, and distribution.

The speed of any distribution in a program involving thousands of claimants relies on multiple variables impacting administrative expediency. To achieve maximum fairness and efficiency, the CRP is founded on the following principles:

1. Objective eligibility criteria;
2. Clear and reliable proof requirements;
3. Administrative transparency;
4. Rigorous review processes that generate consistent outcomes; and
5. Independence of the Trustee, Claims Administrator, Claims Processor, Neutrals, and Trust Professionals.

The Trustee and Claims Administrator will consult with the Claims Processor and other Trust Professionals to develop claims valuation processes that result in fair and reasonable compensation of eligible Claims in accordance with the Trust Agreement and CRP.

## I.    CLAIMANT ELIGIBILITY

To be eligible to receive compensation from the Trust, a Claimant must: (1) have a Claim related to an Included Fire; (2) have timely filed a Proof of Claim; and (3) submit supporting documentation outlined in Section II of this CRP or required by the Claims Administrator ("Supporting Documents"). Upon submission of the Supporting Documents, the Trust will review each Claim and consider all damages and costs recoverable under California law.

**A. Included Fires.** The Trust is established to administer Claims related to the fires identified in Exhibit 1 (each a "Fire" and collectively the "Fires"). Any Claims unrelated to the Fires are ineligible for payment by the Trust and, pursuant to the process described herein, shall

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the PG&E Fire Victim Trust Agreement (the "Trust Agreement") and the Debtors' Amended Joint Chapter 11 Plan of Reorganization dated January 31, 2020 (as it may be amended, modified, or supplemented, the "Plan").

1

be held to be ineligible on a final basis. For the purposes of the CRP, all Fires set forth in Exhibit 1 are deemed to have been caused by PG&E's equipment and as a result of PG&E's negligence.

**B. Proof of Claim.** All Claimants must have filed a Proof of Claim for their claims or those of their family in the Bankruptcy Cases on or before December 31, 2019, and as amended, which was the extended Bar Date for Fire Claimants. Claims that were not timely submitted to the Bankruptcy Cases are ineligible for payment by the Trust, unless the claimant obtains relief from the Bankruptcy Court to file a late Claim and submits the Claim to the Bankruptcy Cases and Trust within 30 days after the Bankruptcy Court order allowing such late filing. Claims that have been disallowed or that have been withdrawn from the official claims registry in the Bankruptcy Cases are ineligible for payment by the Trust.

**C. Supporting Documents.** Section II sets forth each Claim Type the Trust will consider and the Supporting Documents that may be submitted for each. In addition to the Supporting Documents outlined in Section II, Claimants will be required to submit a Claims Questionnaire, as explained in Section V.

## II.    CLAIM TYPES AND SUPPORTING DOCUMENTS

The Trust will use all information that assists in objectively valuing Claims and alleviates the burden on Claimants. This includes, but is not limited to, data from a Claimant's (a) Bankruptcy Proof of Claim Form; (b) Wildfire Assistance Program Claim Form; (c) Damages Questionnaire established under Case Management Order 5 in the California North Bay Fire Cases (JCCP 4955); and (d) other reasonably ascertainable and reliable information. Claimants may be required to submit additional facts and documents to support their Claims for each of the following Claim Types:

**A. Real Property.**

**1.** *Description of Real Property Claim.* Real Property Claims include claims for damage to structures on residential or commercial real property, landscaping, forestry, and other real property improvements (*e.g.*, hardscape, fencing, retaining walls, pools, and solar panels) as a result of the Fires. Real Property damages may be measured in one of two ways: (1) the loss in fair market value to the property ("Diminution in Value"); or (2) the reasonable costs to rebuild or repair the property ("Cost of Repair"). Whether Diminution in Value or Cost of Repair is awarded will depend on the facts of each Claim.

**(a)** *Diminution in Value.* Diminution in Value will be calculated by subtracting the fair market value of the property immediately after the Fire from the fair market value of the property immediately before the Fire.

**(b)** *Cost of Repair.* The reasonable costs to rebuild or repair the property will be determined based on: (1) the use of the structure(s) and other improvement(s); (2) the extent of damage to the structure(s) [*e.g.*, burn damage versus smoke and soot

2

damage]; (3) the square footage of structure(s); (4) the geographic location of the property; (5) the size of the vegetation on the property immediately before the Fire; (6) the extent of damage to vegetation; (7) the type of vegetation damaged; and (8) the fair market value of the property immediately before the Fire. In addition, the Claimant may claim the value of trees lost.

**(c)** ***Consequential Damages.*** Claimants also may make a claim for other reasonably foreseeable economic losses directly caused by destruction of or damage to real property.

2. ***Types of Supporting Documents.*** Claimants may provide the following documents to support a Real Property Claim:

(a) Verification of ownership;
(b) Appraisals;
(c) Tax records;
(d) Purchase records;
(e) Mortgage or loan documentation showing the pre-Fire condition or value of the property;
(f) Pre-Fire and post-Fire photos or videos of the structures (interior or exterior) or other damaged areas of the property;
(g) Architectural or engineering drawings;
(h) Permits;
(i) Contractor rebuild or repair estimates or invoices;
(j) Arborist reports, timber surveys, or documents relating to landscaping; and
(k) Other supporting documents within the Claimant's possession.

**B. Personal Property.**

1. ***Description of Personal Property Claim.*** Personal Property Claims include claims for loss of or damages to personal property, such as household items (*e.g.*, clothes, furniture, or tools) and automobiles, as a result of the Fires.

2. ***Types of Supporting Documents.*** Claimants may provide the following documents to support a Personal Property Claim:

(a) List of items destroyed or damaged in the residency;
(b) Proofs of purchase;
(c) Pre-Fire and post-Fire photos;
(d) Appraisals; and
(e) Other supporting documents within the Claimant's possession.

**C. Personal Income Loss.**

1. ***Description of Personal Income Loss Claim.*** Personal Income Loss Claims include claims of individuals who lost income because (a) they were displaced by the Fires; (b)

3

their employer suffered Business Losses and reduced or stopped paying wages to the Claimant as a result of the Fires; or (c) the Fires or resulting injuries or conditions otherwise interfered with their ability to earn income.

2. ***Loss of Rental Income.*** Personal Income Loss Claims also include loss of income from rental of a damaged or destroyed property.

3. ***Types of Supporting Documents.*** Claimants may provide the following documents to support a Personal Income Loss Claim:

(a) Tax returns, including all schedules and attachments;
(b) W-2 Forms;
(c) 1099 Forms;
(d) Lease agreements or canceled rent checks;
(e) Bank account statements identifying earnings;
(f) Paycheck stubs or payroll records; and
(g) Other supporting documents within the Claimant's possession.

**D. Business Loss.**

1. ***Description of Business Loss Claim.*** Business Loss Claims include claims for economic losses suffered by a business as a result of the Fires, including loss of business property or inventory used to conduct business and lost profits or revenue.

2. ***Types of Supporting Documents.*** Claimants may provide the following documents to support a Business Loss Claim:

(a) Description of the business, including its mission statement;
(b) Tax returns, including all schedules or attachments;
(c) Financial statements, including profit and loss statements;
(d) Articles of Incorporation, bylaws, shareholder lists, or partnership or limited partnership agreements;
(e) Leases, deeds, titles, or other documents identifying the property owned or occupied by the business;
(f) Canceled contracts;
(g) Photos, videos, or other documentary evidence of fire damage to the Claimant's home or business; and
(h) Other supporting documents within the Claimant's possession.

**E. Other Out of Pocket Expenses.**

1. ***Description of Other Out of Pocket Loss Claim.*** Other Out of Pocket Loss Claims include claims for out of pocket expenses that are not considered in any other claim type. These may include additional living expenses, medical and counseling expenses, and other out of pocket expenses as a result of the Fires.

4

2.  ***Types of Supporting Documents.***  Claimants may provide the following documents to support an Other Out of Pocket Loss Claim:

(a)  Documentation supporting a claim for additional living expenses;
(b)  Medical bills;
(c)  Counseling bills; and
(d)  Other supporting documents within the Claimant's possession.

## F.  Wrongful Death and Serious Personal Injury.

1.  ***Description of Wrongful Death and Serious Personal Injury Claim.***  Wrongful Death and Serious Personal Injury Claims include claims relating to individuals who died or suffered serious personal injury as a result of the Fires. The Trustee and Claims Administrator will devise procedures ensuring a streamlined and sensitive process providing Claimants and their family members the dignity that is critical to successfully resolving Claims relating to these extraordinary losses.

2.  ***Types of Supporting Documents.***  Claimants may provide medical records and other documents supporting a Wrongful Death or Serious Personal Injury Claim, as well as documents supporting a claim for loss of relationship, love, support, and companionship.

## G.  Emotional Distress.

1.  ***Description of Emotional Distress Claim.***  Emotional Distress Claims include claims arising from: (a) zone of danger evacuation from the Fires; (b) physical injury as a result of the Fires; and (c) substantial interference with the use and enjoyment of or invasion of property occupied by the Claimant, as well as the impact of the loss of the community.

2.  ***Types of Supporting Documents.***  Claimants may provide the following documents to support an Emotional Distress Claim:

(a)  A written narrative or an audio or video recording detailing the Claimant's evacuation and impact of the Fire on the Claimant and his or her family, including impact related to the loss of property and any sentimental items in the home;
(b)  Texts, emails, or social media content the Claimant created during the evacuation;
(c)  Photos or videos taken during the evacuation;
(d)  Pre-Fire and post-Fire photos and videos of the Claimant's property;
(e)  Records describing bodily injury or mental health counseling or treatment;
(f)  Documentation of medical and counseling expenses; and
(g)  Other supporting documents in the Claimant's possession.

5

### H. Previously Settled Claims.

    **1.** ***Description of Previously Settled Claim.*** Previously Settled Claims includes claims that a Claimant previously settled with PG&E by entering into a settlement agreement with PG&E, thereby liquidating their Claim, but for which the Claimant did not receive payment before the Bankruptcy Cases commenced.

    **2.** ***Types of Supporting Documents***. Claimants may provide a copy of their executed settlement agreement, or other documentation indicating a settlement was reached, to support a Previously Settled Claim.

## III.    <u>OTHER DAMAGES</u>

The Trustee and Claims Administrator will devise procedures to evaluate any additional categories of recoverable damages. These other damages may include:

1. Statutory attorney's fees and litigation, expert and consulting costs;
2. Statutory interest;
3. Punitive/exemplary damages; and
4. Damages multipliers.

## IV.    <u>CLAIMS SUBMISSION</u>

The Claims Processor will maintain a secure, web-based portal (a "Portal") for Claimants to submit Claims Questionnaires, Supporting Documents, Releases, and any other relevant information or documents. After submitting a Claim, Claimants will be able to use the Portal check their Claim status, receive and respond to determination notices, submit supplementary materials, and update contact information and other demographic information, if necessary.

## V.    <u>CLAIMS QUESTIONNAIRE</u>

In addition to the Claim-specific Supporting Documents identified in Section II, the Claims Administrator will require Claimants to complete a Claims Questionnaire that provides sufficient information to: (1) verify the Claimant's identity; (2) identify and support the claimed damages; and (3) demonstrate the Claimant's authority to assert the Claims.

Individual Claimants may submit Claims Questionnaires by household. The Claims Processor will pre-populate Claims Questionnaires with information already in its possession, including but not limited to data from a Claimant's (a) Bankruptcy Claim Proof of Claim Form; (b) Wildfire Assistance Program Claim Form; (c) Damages Questionnaire established under Case Management Order 5 in the California North Bay Fire Cases (JCCP 4955); and (d) information that is otherwise reasonably ascertainable and reliable.

The Trustee will use reasonable efforts to obtain insurance claim files directly from a Claimant's insurance carrier but may require certain insurance information directly from the Claimant in support of their Claim. The Claim Questionnaire may include a consent by the

Claimant to the Trust obtaining any and all information related to the Claim from Claimant's insurer. The Plan does not absolve the insurance carriers of their duty to fulfill their coverage obligations under their policies of insurance with a Claimant.

## VI.    RELEASE

Before receiving payment from the Trust, Claimants must submit signed releases in substantially the same form and content as the Claimant Release and Mutual Made Whole Release, attached to the Trust Agreement as Exhibits 4 and 5, respectively.

## VII.    NOTICE OF CLAIMS DETERMINATION

The CRP will govern the process by which each Claim is reviewed, including whether the Claim is eligible or ineligible for payment and, if eligible, the amount approved for payment ("Claims Determination"). After the Trust has fully evaluated a Claim, the Claims Processor will issue a notice to the Claimant explaining the review result ("Determination Notice"). If the Claim has been approved and is eligible for payment ("Approved Claim"), the notice will include the specific amount that the Trust has approved for payment ("Approved Claim Amount") and the stages in which payment may occur. If the Claim is missing documents or information required for the Trust to fully evaluate the Claim ("Deficient Claim"), the notice will explain what is required and provide a timeline within which the Claimant may resolve the deficiencies. If the Claim is ineligible for payment from the Trust pursuant to the CRP ("Disallowed Claim"), the notice will explain the reason(s) that the Claim is ineligible.

## VIII.    DISPUTE RESOLUTION

Claimants dissatisfied with their Claims Determination will have the opportunity to dispute the determination and to provide supplemental information or documents to support their dispute. The Trust will implement the following three-tiered process:

1. ***Reconsideration.*** If a Claimant contests a Claims Determination, the Claims Administrator and Claims Processor will review the Claim again and will consider any newly submitted information and documents and all previously submitted information. Afterwards, the Claims Processor will issue a Reconsideration Determination. The Claimant may accept the Reconsideration Determination or may appeal to a Neutral.

2. ***Appeal.*** If a Claimant appeals a Reconsideration Determination, the Claims Administrator will assign the Claim to a Neutral for further consideration. The Neutral will hold a hearing in a manner jointly agreed to by the Claimant and Neutral (*e.g.*, in person, by telephone, or on paper). The Neutral will consider the appeal based on all documents and information the Claimant previously provided and anything new the Claimant provides before or during the hearing. After the hearing, the Neutral will issue an Appeals Determination, which may increase, decrease, or confirm the Reconsideration Determination. The Claimant may accept the Appeals Determination or may request Panel Review.

Case: 19-30088    Doc# 7020-5    Filed: 06/08/20    Entered: 06/08/20 18:07:51    Page 58 of 59

3. ***Panel Review.*** If a Claimant requests Panel Review, the Claims Administrator will assign a panel of three Neutrals to review the Claim. The Neutral who reviewed the Claimant's Appeal will be excluded from the Claimant's Panel Review. No new documents or information may be submitted for Panel Review. After the reviewing the Appeal record, the Panel will submit to the Trustee a Panel Determination, which may increase, decrease, or confirm the Appeals Determination. The Trustee may accept, reject, or revise the Panel Determination and then will issue a Trustee Determination to the Claimant. The Trustee Determination is the final Claims Determination regarding both eligibility and payment amount, if any. The Trustee Determination will be final, binding, and non-appealable and is not subject to review by any Court, **including right to trial by jury.**[2]

## IX.   CONFIDENTIALITY OF CLAIMS INFORMATION

All personal information, facts, and documents submitted to the Trust by or regarding any Claimant or Claim shall be kept confidential and shall only be disclosed: (1) to the Trustee, Claims Administrator, Claims Processor, Neutrals, and Trust Professionals to the extent necessary to process and pay Claims; or (2) as may be required by applicable law, ethical requirements, or legitimate business uses associated with administering the Trust.

---

[2] As of the Effective Date, all Fire Victim Claims against PG&E are discharged and channeled into this Trust. Any trial would be against the Trust and against the interests of fellow Fire Victims, not against PG&E. As such, the procedures in this Trust are set up to protect Fire Victims' due process rights and create fair, just, and expedient results.

8