| | |
|---|---|
| 1 | WEIL, GOTSHAL & MANGES LLP |
| | Stephen Karotkin (*pro hac vice*) |
| 2 | (stephen.karotkin@weil.com) |
| | Theodore E. Tsekerides (*pro hac vice*) |
| 3 | (theodore.tsekerides@weil.com) |
| | Jessica Liou (*pro hac vice*) |
| 4 | (jessica.liou@weil.com) |
| | Matthew Goren (*pro hac vice*) |
| 5 | (matthew.goren@weil.com) |
| | 767 Fifth Avenue |
| 6 | New York, NY 10153-0119 |
| | Tel: 212 310 8000 |
| 7 | Fax: 212 310 8007 |
| 8 | KELLER BENVENUTTI KIM LLP |
| | Tobias S. Keller (#151445) |
| 9 | (tkeller@kbkllp.com) |
| | Jane Kim (#298192) |
| 10 | (jkim@kbkllp.com) |
| | 650 California Street, Suite 1900 |
| 11 | San Francisco, CA 94108 |
| | Tel: 415 496 6723 |
| 12 | Fax: 650 636 9251 |

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | (Lead Case) (Jointly Administered) |
| - and - | **DECLARATION OF ROBERT S. KENNEY IN SUPPORT OF THE MOTION OF THE DEBTORS PURSUANT TO 11 U.S.C. §§ 363 AND 105(a) FOR AN ORDER AUTHORIZING THE UTILITY TO (I) ENTER INTO LEASE AND PURCHASE OPTION AGREEMENT FOR THE OAKLAND HEADQUARTERS AND (II) GRANTING RELATED RELIEF** |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| Debtors. | |
| ☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors | |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Date: June 30, 2020<br>Time: 10:00 am (Pacific Time)<br>Place: (Telephonic or Video Conference)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |
| | **Objections Due**: June 23, 2020<br>4:00 pm (Pacific Time) |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I, Robert S. Kenney, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am the Vice President, State and Regulatory Affairs for Pacific Gas and Electric Company (the "**Utility**"). In this role, I am responsible for, among other things, executive management and strategic guidance of all aspects of PG&E's interactions with the California Public Utilities Commission (the "**Commission**"), the Federal Energy Regulatory Commission, the California Energy Commission, and other state agencies, including all regulatory filings and proceedings.

2. I am authorized to submit this Declaration on behalf of the Debtors in support of the *Motion of the Debtors Pursuant to 11 U.S.C. §§ 363 and 105(a) for an Order Authorizing the Utility to (i) Enter Into Lease and Purchase Option Agreement for Oakland Headquarters and (ii) Granting Related Relief* (the "**Motion**").[1] Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the Debtors or the Debtors' legal, restructuring, and financial advisors, or my opinions based upon experience, knowledge, and information concerning the Debtors' operations and the electricity and natural gas industries in the State of California. If called upon to testify, I would testify to the facts set forth in this Declaration.

3. This Declaration is submitted for the purpose of apprising the Court of the regulatory review process that will occur with respect to the proposed real estate transactions discussed in the Motion. I am informed that the Utility is seeking the Court's approval to enter into the **"Lease and Purchase Option Agreement,"** an agreement to lease, with option to purchase, the property at 300 Lakeside Drive in Oakland, California (the "**Lakeside Building**") for purposes of relocating the Utility's headquarters. In addition, although not the subject of the Motion, as part of the Utility's relocation plan, it will ultimately sell its current headquarters in San Francisco, otherwise known as the San Francisco General Office complex or the "**SFGO**

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

**complex**." The Utility anticipates initiating marketing of the SFGO complex for sale in the coming months.

4. Authorization from the Commission is not required for the Utility to enter into the Lease and Purchase Option Agreement for the Lakeside Building.

5. The disposition of utility assets such as the SFGO complex is governed by California Public Utilities Code section 851, which provides, in part, that "[a] public utility . . . shall not sell, lease, assign, mortgage, or otherwise dispose of . . . property necessary or useful in the performance of its duties to the public . . . without first having either secured an order from the commission authorizing it to do so for qualified transactions valued above five million dollars ($5,000,000) . . .." In determining whether to approve such a disposition under section 851, the Commission evaluates whether the proposed transaction is "adverse to the public interest." [*See Kotch Pipeline Company, LLP*, 1999 Cal. PUC LEXIS 498 *7 (citing *Universal Marine Corporation*, 14 CPUC2d 644, 646 (1984) and *Southern California Edison Company*, D.99-03-016, slip op. at 14).]

6. For an asset sale of the size anticipated by the sale of the SFGO complex, the Commission determines the allocation between a utility's customers and shareholders of the gain on sale on a case-by-case basis, guided by the principles set forth in Commission Decision (D.) 06-05-041, dated May 25, 2006, as modified by D.06-12-043, dated December 14, 2006.

7. The Utility anticipates filing in the near term an application pursuant to Public Utilities Code section 851 to obtain the Commission's approval to sell the SFGO complex. As part of that future application, the Utility will explain the significant customer benefits that would result from the Utility's plan to (i) enter into the Lease and Purchase Option Agreement for the Lakeside Building in Oakland and (ii) sell the SFGO complex, which are both part of the Utility's strategy to maximize value for customers and continue its transformation while preparing to emerge from bankruptcy.

8. The Utility intends to request that the Commission allocate to customers the substantial financial benefit resulting from the sale of the SFGO complex. The Utility further intends to demonstrate that the net effect of the two transactions will be to reduce the Utility's

costs overall, and hence result in a reduction in customer rates. Accordingly, the Utility will request that the Commission approve the sale of the SFGO complex and the Utility's proposed ratemaking treatment for the two transactions. The Utility anticipates that this future application will be resolved after the Utility's emergence from Chapter 11.

9. Given the significant customer benefits that the Utility anticipates will result from the real estate transactions at issue, I believe that the Commission should determine that the contemplated sale of the SFGO complex is not "adverse to the public interest"; that the Utility's proposed ratemaking treatment with respect to the gain on sale is reasonable; that the net effect of the two transactions is beneficial to customers; and accordingly, the contemplated SFGO complex sale and proposed rate treatment (including recovery of the costs associated with the Lakeside Building and relocation) should be approved by the Commission.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 9, 2020
San Francisco, CA

/s/ Robert S. Kenney
Robert S. Kenney