1      UNITED STATES BANKRUPTCY COURT

2      NORTHERN DISTRICT OF CALIFORNIA

3                -oOo-

4  In Re:                        ) Case No. 19-30088-DM
                                 ) Chapter 11
5  PG&E CORPORATION AND PACIFIC  )
   GAS AND ELECTRIC COMPANY      ) San Francisco, California
6                                ) Monday, June 8, 2020
                        Debtors. ) 9:30 AM
7  _____ )
                                   ORAL ARGUMENT RE:
8                                  CONFIRMATION HEARING

9          TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE DENNIS MONTALI
10          UNITED STATES BANKRUPTCY JUDGE

11

   APPEARANCES (Via Zoom):
12 For the Debtors:          STEPHEN KAROTKIN, ESQ.
                             THEODORE E. TSEKERIDES, ESQ.
13                           Weil, Gotshal & Manges LLP
                             767 Fifth Avenue
14                           New York, NY 10153
                             (212)310-8000
15

   For Official Committee of  ROBERT A. JULIAN, ESQ.
16 Tort Claimants:            Baker & Hostetler LLP
                              600 Montgomery Street
17                            Suite 3100
                              San Francisco, CA 94111
18                            (415)659-2600

19 For Official Committee of  GREGORY A. BRAY, ESQ.
   Unsecured Creditors:       Milbank, LLP
20                            2029 Century Park East
                              33rd Floor
21                            Los Angeles, CA 90067
                              (424)386-4000
22
   For Citibank N.A., as      DAVID SCHIFF, ESQ.
23 Administrative Agent for   Davis Polk & Wardwell LLP
   the Utility Revolving      450 Lexington Avenue
24 Credit Facility:           New York, NY 10017
                              (212)450-4000
25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
1   For AT&T Corp.:            BENJAMIN MINTZ, ESQ.
                               Arnold & Porter Kaye Scholer LLP
2                              250 West 55th Street
                               New York, NY 10019
3                              (212)836-8000

4   For Adventist Health       REBECCA J. WINTHROP, ESQ.
    System/West and Feather    Norton Rose Fulbright US LLP
5   River Hospital:            555 South Flower Street
                               Forty-First Floor
6                              Los Angeles, CA 90071
                               (213)892-9200
7
    For Municipal Objectors:   MARK GORTON, ESQ.
8                              Boutin Jones Inc.
                               555 Capitol Mall
9                              Suite 1500
                               Sacramento, CA 95814
10                             (916)321-4444

11  For South San Joaquin      PAUL R. GLASSMAN, ESQ.
    Irrigation District:       Stradling Yocca Carlson & Rauth,
12                             P.C.
                               10100 Santa Monica Boulevard
13                             Suite 1400
                               Los Angeles, CA 90067
14                             (424)214-7000

15  For City and County of San EDWARD J. TREDINNICK, ESQ.
    Francisco:                 Greene Radovsky Malone Share &
16                             Hennigh LLP
                               1 Front Street
17                             Suite 3200
                               San Francisco, CA 94111
18                             (415)981-1400

19  For Calpine Corporation:   MARK MCKANE, ESQ.
                               Kirkland & Ellis LLP
20                             555 California Street
                               27th Floor
21                             San Francisco, CA 94104
                               (415)439-1400
22
    For Consolidated Edison    HUGH M. MCDONALD, ESQ.
23  Development Inc.:          Troutman Sanders LLP
                               875 Third Avenue
24                             New York, NY 10022
                               (212)704-6000
25
```

escribers
(973)   | operations@escribers.net | www.escribers.net

| | | |
|---|---|---|
| 1 | For CN Utility Consulting, | MICHAEL B. LUBIC, ESQ. |
| | Inc., Cupertino Electric, | K&L Gates LLP |
| 2 | Inc., Wright Tree Service, | 10100 Santa Monica Boulevard |
| | Inc.: | 8th Floor |
| 3 | | Los Angeles, CA 90067 |
| | | (310)552-5000 |
| 4 | | |
| | For Osmose Utilities | HARRIS B. WINSBERG, ESQ. |
| 5 | Services, Inc.: | Troutman Sanders LLP |
| | | 600 Peachtree Street Northeast |
| 6 | | Suite 3000 |
| | | Atlanta, GA 30308 |
| 7 | | (404)885-3000 |
| 8 | For Arbormetrics | GEOFFREY A. HEATON, ESQ. |
| | Solutions, LLC, et al.: | Duane Morris LLP |
| 9 | | One Market Plaza |
| | | Suite 2200 |
| 10 | | San Francisco, CA 94105 |
| | | (415)957-3000 |
| 11 | | |
| | For McKinsey & Company, | SAMUEL A. NEWMAN, ESQ. |
| 12 | Inc.: | Sidley Austin LLP |
| | | 555 West Fifth Street |
| 13 | | Los Angeles, CA 90013 |
| | | (213)896-6020 |
| 14 | | |
| | For PG&E Shareholders: | JAMES O. JOHNSTON, ESQ. |
| 15 | | BRUCE BENNETT, ESQ. |
| | | Jones Day |
| 16 | | 555 South Flower Street |
| | | 50th Floor |
| 17 | | Los Angeles, CA 90071 |
| | | (213)243-2431 |
| 18 | | |
| | Court Recorder: | LORENA PARADA/ANKEY THOMAS |
| 19 | | United States Bankruptcy |
| | | Court |
| 20 | | 450 Golden Gate Avenue |
| | | San Francisco, CA 94102 |
| 21 | | |
| | Transcriber: | COLIN RICHILANO |
| 22 | | eScribers, LLC |
| | | 7227 N. 16th Street |
| 23 | | Suite #207 |
| | | Phoenix, AZ 85020 |
| 24 | | (973)406-2250 |

25     Proceedings recorded by electronic sound recording;
transcript provided by transcription service.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

-oOo-

1  

2  

3       (Call to order of the Court.)

4           THE CLERK:  This is the Bankruptcy Court for the

5   Northern District of California, court is now in session.  The

6   Honorable Dennis Montali presiding.

7           And I'll bring in Mr. Karotkin now.

8           THE COURT:  And Mr. Julian after that, please.

9           THE CLERK:  Yes.  Yes, Your Honor.

10          Mr. Karotkin is joining now, and Mr. Julian is joining

11  now.

12          THE COURT:  Good morning, Mr. Karotkin.

13          MR. KAROTKIN:  Good morning, Your Honor.  Can hear you

14  fine.

15          THE COURT:  Good.

16          And Mr. Julian, tighten your tie.  Why don't you both

17  state your appearance for the record, please.

18          MR. KAROTKIN:  Sure.  I'm Stephen --

19          MR. JULIAN:  Robert Julian, Baker & Hostetler, for the

20  TCC, Your Honor, and good morning.

21          THE COURT:  Good morning.

22          MR. KAROTKIN:  Good morning.  Stephen Karotkin, Weil,

23  Gotshal & Manges, for the debtors.

24          THE COURT:  So Mr. Karotkin, we heard over the weekend

25  from your colleague Ms. Liou about the need to spend some time

PG&E Corporation and Pacific Gas and Electric Company

1    on OCC issues this morning, and I also know somebody was busy

2    yesterday filing a new plan. Those are matters that I'll hear

3    from you in due course, including your suggested schedule, but

4    I -- the reason I wanted to start with the two of you today is

5    I -- there's a fair amount of confusion in my mind, and perhaps

6    in others, based upon some things I read over the weekend,

7    particularly Mr. Ziman's two declarations, but most

8    specifically the more recent one.

9        And then, of course, the sixty-four dollar question.

10    I think I know the answer, Mr. Karotkin, but one of the slides

11    Mr. Julian put up last Friday was page 14 that proposes

12    language in any confirmation order which is pretty clear. Does

13    the debtor agree to that language if I am inclined to sign a

14    confirmation order in the next few days?

15        MR. KAROTKIN: No, sir.

16        THE COURT: Okay.

17        Mr. Julian, with that, I don't want to argue about

18    that, I want to ask you, clarify one phrase. In the fourth

19    line of that slide, the words "plan funding documents" are

20    capitalized, but I -- I'm not sure that those three words

21    together are a defined term somewhere. Did I miss it or is

22    that a phrase that is not a defined term?

23        MR. JULIAN: There is a -- there is reference. It's

24    not defined precisely, but there is reference to the types of

25    documents, and I can --

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      THE COURT:  That's fine.  That's good.

2      MR. JULIAN:  -- I don't have that handy.

3      THE COURT:  That's a good enough answer.  I had my

4  homework assignment, and the plan is long and the supplements

5  are long and the documents are long, and I just wanted to make

6  sure, if I am called upon to make this -- the ruling, I need to

7  make sure I'm looking at the right documents.

8      So Mr. Julian, let's -- I've got a couple other

9  questions that are for both of you, but I really need to put

10 this back to you.

11     MR. KAROTKIN:  Your Honor, can I interrupt?

12     THE COURT:  Yes, sir.

13     MR. KAROTKIN:  It's my understanding that, as we

14 speak, mediation is going on with former Bankruptcy Judge

15 Newsome with respect to the registration rights agreement, so

16 it may be helpful not to get into those issues at this time.

17     THE COURT:  No, I -- I agree with you.  It's -- I

18 promise you I wasn't going to get into it, I was just asking

19 for a specific clarification, and obviously, on my wish list is

20 that that mediation is successful.  And so I promise you, I'm

21 not inviting to invade the mediation privilege.  In fact, to

22 the contrary, I want to keep it going.

23     MR. KAROTKIN:  I guess, Your Honor, my concern is to

24 the extent that -- I don't want to put words in your mouth, you

25 may be weighing in on some of these issues that may influence

PG&E Corporation and Pacific Gas and Electric Company

1  the mediation.

2  THE COURT:  I want to clarify some terms that are

3  confusing me.  And I'm looking -- I'm looking at Mr. Ziman's

4  declaration that he filed on May 22nd, and in particular the

5  attachment, which is doc 7512-1, entitled "Rights Offering

6  Procedures."

7  MR. KAROTKIN:  Yes.

8  THE COURT:  And I may be confused, but if I'm

9  confused, maybe other people are confused.  The text of the

10  rights offering procedures suggest that if one is a

11  shareholder, one has the right to sign up to purchase

12  additional subscriptions.

13  MR. KAROTKIN:  Your Honor, can I -- I think I can

14  clarify this really quite quickly.  The rights offering

15  procedures have nothing to do with the registration rights

16  agreement.  They are completely separate.  The rights offering

17  procedures are procedures that would be implemented under the

18  circumstances where the debtors made a determination -- again,

19  which is in their discretion -- to pursue a rights offering

20  with respect to a new equity raise as part of the nine billion

21  dollars of equity to be raised in connection with emergence.

22  It has absolutely nothing to do with the registration rights

23  agreement that is being mediated as we speak and that was the

24  subject of discussion last week.  They are completely

25  different, completely unrelated.  So hopefully, that's helpful.

PG&E Corporation and Pacific Gas and Electric Company

1     THE COURT: Well, it's helpful, and it's exactly what

2 I thought and you confirmed something. And so what I'm trying

3 to find is where I find the source of this dispute about the

4 registration rights. And again, I respect your request that I

5 not ask to develop it in any fashion, and I won't, and I

6 promise you I won't, and I don't want Mr. Julian to feel he

7 needs to argue his case, but I went back -- and so this kind of

8 segues into another question.

9     I got to wait until you're looking at me, Mr.

10 Karotkin. That's one of the -- one of the funny things about

11 Zoom. People turn your back on you, you have to wait until

12 they come back.

13     MR. KAROTKIN: I was -- I'm sorry. I was trying to

14 get a document off the floor.

15     THE COURT: It's okay. And I'm only kidding. I'm not

16 bothered by what you're doing.

17     Okay. But that gets to a related question. And you

18 made a statement on Friday that threw me for a loop, and that

19 was that, somehow, the underwriters or the company wants to

20 start the public offering process as early as Friday or Monday.

21 And I couldn't find anything in Mr. Ziman's two declarations,

22 and in particular his more recent one, that tells me anything

23 about that. And so what I don't know is where does that come

24 from other than your statement? And again, I don't think you

25 were deceiving me, I just want to know why that's so.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        And then the second question is how can the public

2   offering process even begin if there isn't a resolution of the

3   rights that might pass by mediation or court resolution to the

4   fire survivors?  In other words, how can that start without the

5   rights issue being settled?

6        MR. KAROTKIN:  I think, Your Honor, you have to

7   distinguish between the two types of funding raises that are

8   going to be conducted in connection with the implementation to

9   the plan.  And one element of that, a substantial element of

10  that, is a debt offering, which is not at all dependent on the

11  rights offering.  I'm sorry, on the registration rights

12  agreement.

13       THE COURT:  No, I know that.  I know.  I'm not talking

14  about the debt offering, I'm talking about the equity raising.

15  I can --

16       MR. KAROTKIN:  The equity raise, I believe, would

17  be -- a prerequisite to that would be a resolution of the

18  registration rights agreement issues, but that could start a

19  little later, I'm told, but is essential.  And I can get into

20  this more later for purposes of the debt raise, that certain

21  approvals have been ordered.

22       THE COURT:  I'm not worried about the debt raise.  The

23  people know how to do that.  Equity raise --

24       MR. KAROTKIN:  But again, Your Honor, in order to do

25  the debt raise, they do need -- they do need certain approvals

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   from Your Honor.

2           THE COURT:  Okay.  All right.  You've clarified what I

3   thought was the case and that signals to me that if there's a

4   mediated resolution of the dispute that's extant between the

5   TCC and the debtors, that solves the problem in the sense that

6   the equity process will take its due course.  If there isn't a

7   mediated resolution, I believe Mr. Julian made the case that

8   even if I were to sign a confirmation order, there would be a

9   provision that it would come to the court for judicial

10  determination before there could be an effective date.

11          Is that -- am I correctly understanding your view on

12  that, Mr. Julian?

13          MR. JULIAN:  Your Honor, I was finding the -- I found

14  the definition for you, and if you could restate your question

15  for me, since I was reading.  I apologize.

16          THE COURT:  Well, the question -- and I'm just -- I'm

17  just reaffirming something that you said in the argument,

18  that -- and this presumes what you and I hope, or at least I

19  hope, doesn't happen.  I hope there is a mediated resolution

20  and I don't have to worry about it, but if there's not a

21  mediation resolution and I am persuaded to sign an order or a

22  memorandum or something to say that I'm approving the plan,

23  then your position -- and I forgot the document, but I believe

24  it was in one of your slides, or maybe it was in your brief --

25  that even if I were to sign a confirmation order, there would

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    have to be a judicial resolution if there's not a consensual

2    one on the rights issue, before the plan can become effective?

3         MR. JULIAN:  Yes.

4         THE COURT:  Okay.

5         MR. JULIAN:  Yes.

6         THE COURT:  So you still believe that.  And so if I --

7    if I were to say, well, okay.  I can't sign the proposed order

8    that you want because the debtor contests it, but I can sign

9    the order if I'm satisfied that all the other requirements have

10   been met, and then that would start -- that would open a window

11   that I presume would be open at least until your side, or some

12   side, declared the plan dead, and there would never be an

13   effective date.  But assume if the only issue was to make a

14   decision on the rights question, it would be something done, in

15   the best-case, before the plan -- or excuse me, before the

16   contractual deadline for an effective date.

17        MR. KAROTKIN:  Your Honor, if I can --

18        MR. JULIAN:  Yes, and --

19        THE COURT:  Well, let him finish that first, yeah.

20   Okay.

21        MR. KAROTKIN:  I'm sorry.

22        MR. JULIAN:  And our point was we believe,

23   respectfully, that the confirmation order, in order to be

24   feasible, must state that the TCC and consenting fire

25   professionals have the rights in the RSA to consent to all

PG&E Corporation and Pacific Gas and Electric Company

1    equity and debt financing documents, plan documents.  And when

2    I have now found the definition of plan documents, it's in

3    paragraph NN, as in November November, in the debtors' proposed

4    confirmation order, wherein it describes all manner of plan

5    documents that are necessary, including all financing documents

6    necessary to do the financing.  And of course, a registration

7    agreement is a document that you need to do the equity

8    financing.

9             THE COURT:  My only distinguishing was that the word

10   "funding" is a capitalized term in your slide.  Let's not get

11   bogged down with that.

12            Mr. Karotkin, again, I want you to weigh in.  I mean,

13   I'm not -- I'm not going to make any decisions today, and I

14   promise you, I --

15            MR. KAROTKIN:  I know.

16            THE COURT:  Just tell me -- I think you both have

17   educated me for the questions that I had that arose over the

18   weekend, but go ahead and tell me what you want to say.

19            MR. KAROTKIN:  Okay.  I think I need to clarify that

20   with respect -- and I think I indicated earlier, in order to

21   conduct the equity raise for purposes of emergence, we would

22   need the registration rights agreement finalized.  And in view

23   of the timing to do that, taking into account the blackout

24   period that I mentioned to you last week, and in order to get

25   this plan to go effective on a timely basis, we would need to

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    start that equity raise, I believe -- I believe -- and I can

2    get you more information, like, within two weeks, so I --

3         THE COURT:  Okay.

4         MR. KAROTKIN:  -- (indiscernible) --

5         THE COURT:  But that's another way of saying go

6    mediate a resolution in the next two weeks because if there's

7    no mediated resolution, I won't be in a position to make a

8    ruling, obviously, and therefore, the equity raised might be

9    put on the back burner for a time, and there's nothing I can do

10   about that.

11        MR. KAROTKIN:  Well, Your Honor --

12        THE COURT:  Unless you want me to have a deadline for

13   the medication and say, I'll make a ruling, you know, some

14   particular day.  I don't think that's --

15        MR. KAROTKIN:  Well, we may have to do that, Your

16   Honor, if this plan is going to be funded and go effective on a

17   timely basis.  But my suggestion is let's let the mediation

18   play out, certainly for today, to see where we are, but it may

19   be -- as you said, it may be we must call on you to make a

20   determination with respect to that issue on a rather expedited

21   basis.

22        THE COURT:  Okay.  So my last question, really, is not

23   part of this controversy between the committee and the debtor.

24   It goes back to the other point that you stated on Friday, Mr.

25   Karotkin, the so-called blackout and the need to start this

PG&E Corporation and Pacific Gas and Electric Company

1   process immediately.  I could not find any reference to that,

2   at least in Mr. Ziman's declarations, so where did it come

3   from?

4           MR. KAROTKIN:  There is not --

5           THE COURT:  And what am I supposed to do?  Again, I

6   don't think you are deceiving me, but where is it in the record

7   that I know what to -- where that all comes from?

8           MR. KAROTKIN:  There is nothing in the record, Your

9   Honor, other than my remarks.  We can be happy to bring the

10  investment bankers back and explain to you how that works. It

11  really isn't, as I said, in connection with the equity raise.

12  It doesn't have -- as far as I understand it, it doesn't have

13  anything to do with whether or not the plan complies with the

14  requirements of 1129(a).  It is just a fact of life with

15  respect to raising the funding that will be necessary for

16  emergence, in order for that to be raised in the most

17  economical manner for the benefit of all parties-in-interest.

18  So it doesn't mean --

19          THE COURT:  Let me stop you.  I got it.  I mean, I --

20  You're saying the same thing over again.  If what you're really

21  saying is you would like to put some pressure on the TCC to

22  come to an agreement, fine, they can do it, but they can try to

23  put pressure on the debtor, too, and I'm not getting into that

24  discussion.

25          MR. JULIAN:  But Your Honor, I would like to respond

PG&E Corporation and Pacific Gas and Electric Company

1    to your point about Mr. Ziman's declaration.

2           So there is no evidence in the record of what the

3    registration rights agreement is or what the underwriters said,

4    and I was precluded, as you know, from going into it because of

5    the mediation privilege, which is why I spent my time with Mr.

6    Ziman stating to him, and I can't talk to you about those

7    matters, right, because they're subject to a mediation

8    privilege --

9           THE COURT:  Right.

10          MR. JULIAN:  -- and he agreed.

11          THE COURT:  I know.

12          MR. JULIAN:  So my rights to cross-examine and to

13   develop evidence were denied.  I'm not complaining, but the --

14   what's sauce for the goose is sauce for the gander, and so --

15          MR. KAROTKIN:  Your Honor --

16          THE COURT:  Well, let him finish, Mr. Karotkin.

17          MR. KAROTKIN:  I'm sorry.  I'm sorry.

18          MR. JULIAN:  Okay.  And so since we can't go into what

19   that advice was and it wasn't in writing, under the best

20   evidence rule, you really don't have any evidence in front of

21   you.

22          Look.  This is playing out in mediation.  We've been

23   trying for two months.  If it works, Mr. Karotkin and I are

24   going to be happy.  If it doesn't work, though, we're going to

25   need the two provisions that we recommended.  One is that our

(972) 256 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    rights are preserved --

2              THE COURT:  Okay.

3              MR. JULIAN:  -- our consent rights.

4              THE COURT:  Don't reargue your case.  I got it.  I

5    don't want you to reargue it and I'll tell you another reason

6    why.  I don't know if your personal emails are out there, but I

7    must have gotten ten emails over the weekend from survivors who

8    heard Mr. Julian's arguments on Friday and are now emailing me

9    directly, giving them -- me their views on the horribles that

10   they perceive.  I'm not going to -- I'm not criticizing those

11   people for communicating with me.  I'm not going to respond to

12   them, I just -- I assume that you both, and your clients and

13   your fellow counsel are aware of this, too, it is a -- it is

14   a -- another thing that's a little -- adds to the critical

15   nature of this.

16             I trust and respect both of you, and when Mr. Karotkin

17   says the underwriters need to do this to start this equity

18   process, I don't question his statement, I just say, okay. if

19   that's the case, maybe it will happen, maybe it won't.  And if

20   the mediation is unsuccessful, I'm not going to speculate on

21   what happens next, and I'll leave it at that.

22             So I'm prepared to conclude this portion of the

23   discussion now and move on to the rest of the things we have to

24   attend to, unless either of you feel obliged to add anything

25   further, but I'm asking you not to, and --

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        Mister --

2              MR. KAROTKIN:  Well, Your Honor, I feel obliged to say

3   something because what Mr. Julian said about Mr. Ziman's

4   testimony has nothing whatsoever to do with what I was talking

5   about.  I was talking the timing of the -- about an equity

6   raise and why these things have to be resolved and he was

7   talking about examining Mr. Ziman with respect to the actual

8   provisions of a registration rights agreement.  That's not what

9   I was talking about.  I was talking simply about timing, and I

10  don't know how he tried to convert that into something I wasn't

11  even talking about, but --

12             THE COURT:  Well, okay.

13             MR. KAROTKIN:  -- that's where we are.

14             THE COURT:  Maybe that's your take on it.  My

15  question, if I were having a conversation with Mr. Ziman, I

16  might ask for some clarification on things that were unclear to

17  me.  It's the -- it's the ambiguity or the awkwardness of this

18  whole way that we're dealing with it.  I can't absorb

19  everything an expert like Mr. Ziman says, then listen to other

20  people cross-examine, then have a conversation because I

21  wouldn't have -- I wouldn't have thought to ask him about a

22  blackout for securities purposes because it hadn't come up.

23             So look.  One more time.  I hope the mediation is

24  successful.  If it is not, you two and others will tell me what

25  I'm supposed to do about it, okay?  For now, I won't take any

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    action on it and nobody has to do anything.

2            And Mr. Julian, unless you want to stick around for

3    what's next, I'm going to excuse you from the panel, but I'm

4    not trying to throw you off and -- but I'm going to ask Mr.

5    Karotkin on other subjects what he believes is the proper

6    agenda for the rest of this morning, if not beyond.  So are you

7    good to go or do you want to stay here?  What's your pleasure,

8    Mr. Julian?

9            MR. JULIAN:  If it's not going to come up again, Your

10   Honor, I'm good to go.  I may raise my hand to come back on

11   something, but --

12           THE COURT:  We'll try to -- we'll try not to exclude

13   you.

14           MR. JULIAN:  Thank you, Your Honor.

15           THE COURT:  And on that subject, Mr. Karotkin, I'd

16   make another statement, too, there.  I personally don't like

17   having to be perceived as rude to people.  If we were in an

18   old-fashioned courtroom and a fire survivor was in the

19   courtroom and he or she raised a hand or said may I say

20   something, I would do my best to let that person speak.  With

21   the Zoom world, when someone like Mr. Abrams or some of the

22   other individuals who have spoken raise their hand, I wish, in

23   a perfect world, I could accommodate them.  I simply can't.

24           So I'm saying this to all the people who are listening

25   in this case that I -- I'm just not going to turn this into an

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    open discussion. I'm going to stick with the agenda because

2    there are a number of counsel representing clients who have a

3    right to be heard on arguments that are relevant to the

4    confirmation question.

5         So let me ask you both. There's some noise going on

6    outside my room -- my house here, that -- is that coming

7    through on the speaker or that's interfering with your -- are

8    you able to me?

9         MR. KAROTKIN: I can hear you fine. I do hear that

10   noise, but it's fine.

11        THE COURT: It's going away. We had a barking dog the

12   other day, but I couldn't solve that problem. Not my dog.

13        Mr. Karotkin, what's your suggested agenda for the

14   next couple of hours?

15        MR. KAROTKIN: Okay. So Your Honor, before we get --

16   we get to the actual, remaining items to be addressed in the

17   confirmation hearing, I would like to bring the Court up to

18   date with respect to a proposed amendment to the equity

19   backstop commitment letters and the announcement made this

20   morning by the debtors with respect to their equity raise

21   strategy. There was an AK filed this morning, and I believe a

22   press release with respect to that, and I thought it would be

23   appropriate to briefly bring the Court up to date on that item,

24   if I may.

25        THE COURT: All right.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1       MR. KAROTKIN:  Okay.  First, Your Honor, the amendment

2  to the backstop commitment letters, which I just mentioned,

3  will be brought before the Court for approval.  Unfortunately,

4  I think we will need to do that on an expedited basis.  We may

5  be filing a motion today, if not today, then tomorrow.  I can

6  assure Your Honor that the amendment is advantageous for the

7  debtors, all stakeholders, and in particular, Your Honor,

8  advantageous, in the debtors' view and all parties' view, to

9  the fire victim trust, as a future major stockholder, because

10  the amendment will facilitate the debtors' ability to affect a

11  marketed public offering and accelerate its return as a normal

12  capital markets participant, post-emergence from Chapter 11.

13       And importantly, Your Honor, I want to assure the

14  Court and other parties that the proposed amendment that we

15  will be bringing to Your Honor for approval has no impact

16  whatsoever -- no impact, on the percentage of the reorganized

17  PG&E equity that will be owned by the fire victim trusts on the

18  effective date, pursuant to the plan.

19       Your Honor, you're well aware of the fact, and in fact

20  you approved the existing backstop commitment letters under

21  which the debtors have the right to call upon, if necessary, up

22  to nine billion dollars in equity financing to fund the plan;

23  that backstop being subject to the conditions set forth in the

24  backstop commitment letters, again, which you approved.

25       Prior to the proposed amendment, those letters

PG&E Corporation and Pacific Gas and Electric Company

1    contemplated a three-tiered equity offering structure that

2    provided for certain thresholds -- certain stock price

3    thresholds, as a condition to the debtors' ability to effect a

4    marketed offering or a rights offering.  While the company

5    believed at the time that the existing commitment letters it

6    entered into and the thresholds contained in those letters

7    could be met, due to the recent market dislocations as a result

8    of COVID, it's become apparent that the thresholds required

9    under the existing backstop letters to execute a marketed

10   offering could not be met, or would not be able to be met, that

11   share price being, approximately, a threshold of 18 to 19

12   dollars a share versus the current trading price of

13   approximately $12.50, I think, at the close on Friday.

14          Additionally, the current stock price presents a

15   significant challenge to effecting a successful rights

16   offering, if the debtors chose to do so.  Again, that was

17   totally within the debtors' discretion at the required minimum

18   price threshold that was provided for in the existing backstop

19   commitment letters.

20          Accordingly, Your Honor, absent the proposed amendment

21   to the backstop letters, it was quite apparent that a marketed

22   public offering, which is the most optimum approach to raising

23   equity capital, or a rights offering, could not be pursued and

24   that drawing under or calling upon the existing backstops would

25   be the only alternative necessary to fund the plan, and that

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    would be at an approximate share price, under the terms of the
2    backstop letters, of about $7.50 a share.

3         Although the existing backstop letters certainly
4    provide the debtors with the access to the needed capital to go
5    effective with the plan, drawing on those backstops, as opposed
6    to effecting a marketed offering, would further depress the
7    stock price because of the lower backstop price and delay the
8    transition of the company's shareholder base to more
9    traditional utility investors.

10        It's in that context, Your Honor, that the debtors
11   engaged in negotiations with certain key backstop parties to
12   achieve an amendment that would permit the debtors to execute a
13   marketed public offering despite the market dislocations and
14   avoid drawing on the backstops at a lower backstop equity price
15   than could be accomplished in a marketed offering.  And
16   although the backstop has always served a very important
17   purpose in assuring the availability of the equity or the plan
18   financing, the debtors have always maintained that the most
19   beneficial -- as I mentioned earlier, the most beneficial
20   alternative is to raise the nine billion of equity capital
21   pursuant to a public market offering, as opposed to drawing on
22   the backstop, for the following reasons.  And again, all of
23   this will be explained in more detail in the motion we file
24   with Your Honor seeking to approve the amendment.

25        And those reasons are that a marketed offering should

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  allow the debtors to raise equity at a significant premium to

2  the backstop price, thereby avoiding additional dilution to

3  existing shareholders and maximizing the value of reorganized

4  PG&E common stock, including the stock that's going to be

5  issued to the fire victim trust under the plan, and investors

6  in a marketed offering are more traditional utility investors,

7  providing momentum to support a higher valuation, again, that

8  would benefit all shareholders.  And a marketing offering,

9  again, would position -- would put the debtors in a better

10  position for a future equity raise.

11        As the debtors reported this morning, the debtors and

12  their requisite backstop parties have agreed to an amendment

13  that will increase the likelihood of raising the nine billion

14  dollars of equity through a marketed offering, including the

15  removal of the price thresholds to which I referred earlier.

16  Of course, the backstop will still be there in the event we

17  need it.  That's not going away.  It will still be there.

18        In consideration of the amendment that also, Your

19  Honor, addresses certain other consent rights under the

20  existing backstop letters, relating, for example, to the CPUC

21  plan OII, I believe, the parties have agreed to provide the

22  backstop parties with a fee of 50 million shares, but

23  importantly, Your Honor, only in the event the public offering

24  is affected.  They would only get the fee if the public

25  offering is affected.  Again, it's payable only in shares of

                PG&E Corporation and Pacific Gas and Electric Company

 1   reorganized PG&E, so it has absolutely no impact on the cash

 2   needs to emerge from Chapter 11.  And as I said, Your Honor --

 3            THE COURT:  Well, you also -- excuse me -- you also

 4   said it doesn't impact the 20.9 percent that goes to the

 5   victims' trust, right?

 6            MR. KAROTKIN:  Absolutely.  Absolutely correct.

 7            THE COURT:  So then the new shares come out of the

 8   other eighty percent?

 9            MR. KAROTKIN:  Well, that's correct.  The new shares,

10   as I said, don't affect the number of shares to go to the fire

11   victim trust under the plan in that formula.  And actually, I

12   was just going to say that again when you chimed in.  And in

13   addition, as I said, the existing shareholders are benefitted

14   by a marketed offering, which would have less dilution.

15            In addition, we also announced this morning, Your

16   Honor, in addition to the amendment, that the debtors already

17   have obtained commitments for three-and-a-quarter billion

18   dollars of common stock investments from a group of five

19   lending -- from a group of five long-term investors, subject to

20   the amendment to the backstop agreement being approved.  And

21   the debtors are confident that the remaining five-and-three-

22   quarters billion dollars of equity contemplated by the plan

23   will be raised if the amendment is approved and the plan is

24   confirmed.

25            As I said, the amendment is subject to Your Honor's

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1 approval. We will be filing a motion shortly. And I can also

2 say, Your Honor, that if the amendment is approved, as we

3 believe it should be, based upon some of the items I just

4 mentioned, under those circumstances where it is approved,

5 there will be no rights offering.

6 So that is where we are, and we thought it important

7 to bring the Court up to date about the announcement.

8 THE COURT: I muted myself for a moment because there

9 was still some outside noise. So if that, what you just

10 described, goes forward, the rights offering that Mr. Ziman

11 previously described, that goes away.

12 MR. KAROTKIN: That's correct.

13 THE COURT: And the other issue that's still

14 negotiated, as you pointed out, that's different.

15 Okay. When do you -- well, I presume that both

16 official committees will have an opportunity to absorb what

17 you've just summarized and they'll be able to see the

18 underlying documents?

19 MR. KAROTKIN: Yes, and in fact we had a conversation

20 with representatives from the TCC yesterday afternoon to bring

21 them up to date on where we were prior to the announcement.

22 And they are, I'm told, evaluating it.

23 THE COURT: When do you want it heard?

24 MR. KAROTKIN: I think we're looking to get it filed

25 today or tomorrow, and we would like it heard next Tuesday, if

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  that's possible.

2  THE COURT:  Okay.  Let's assume that's possible.  You

3  know, my own personal schedule is such that I thought we were

4  going to be finished with argument on Friday.  Obviously we're

5  not.  Maybe we'll be finished with it today, and then the

6  matter is under advisement for me, and whether I have to act on

7  an expedited basis or not is another story.

8  Okay.  So well, offhand, there's no reason why I can't

9  commit and agree with you to have that heard next Tuesday.

10  Let's leave the fine point to a little later in the day.  My

11  courtroom deputy, Ms. Parada, can be in touch with Ms. Liou or

12  Ms. Kim.

13  One other thing that you promised me an answer on, and

14  I presume it's the same question, that even if this change that

15  you just described goes into effect, there's still a five-and-

16  a-half-billion-dollar public offering that has to be

17  contemplated or implemented, and that involves the dark-out

18  black-out period and all of the other stuff, right?

19  MR. KAROTKIN:  That's my understanding, yes, sir.

20  THE COURT:  Yeah, so what is needed from me?  Can it

21  be done without an order but nevertheless a judicial published

22  or public decision, such as a memorandum that says I will do

23  this once the order is in final form?

24  MR. KAROTKIN:  I don't believe, Your Honor, that --

25  first of all, as I said before, I think we need the

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  registration rights agreement issue resolved before the

2  marketed offering can take place.

3  And with respect to the other financings, we would

4  need an order entered authorizing those to go forward in order

5  to start the marketing effort on those.

6  Now, one alternative, Your Honor, that we've

7  contemplated to address these issues, and of course the burden

8  that's being placed on you with respect to these matters, is it

9  may be, if you are willing to entertain it -- again, this

10  doesn't solve the issue with respect to the registration rights

11  agreement, but we could present you with a proposed order

12  authorizing the financing, basically excising from the proposed

13  confirmation orders those particular provisions.

14  That might be another way to move forward that could

15  work.  It will give you a little more time to get a formal

16  confirmation order entered.  It's important for the debtors to

17  take advantage of the markets.  The markets are pretty robust

18  right now with respect to debt offerings, and I'm told every

19  point of interest rate is in excess of 100 million dollars to

20  the debtors and the rate bearers of California.

21  So there's a lot of incentive to move forward with

22  that.  I don't think it would prejudice anybody.  None of it

23  would be -- although certain of those amounts, as we described,

24  would be funded into escrow, if the effective date doesn't

25  occur and the plan doesn't go effective, the status quo would

PG&E Corporation and Pacific Gas and Electric Company

1    be returned, less a certain amount of fees and less a little

2    bit amount of interest. But we think that, if we're able to

3    move forward on this basis, that could be the most practical

4    way to proceed.

5              THE COURT: Okay. But still, I'm a little unclear

6    what I would do. You heard me express my concerns Friday about

7    triggering the finality in the appeal rights. And I understand

8    what the plan says about what it takes for the plan to be

9    effective.

10             But I also think that there's a certain public

11   psychology to what happens, and if I say I will approve -- I

12   will confirm the plan, but there are still issues about the

13   form of the order -- I mean, think about the various things

14   that you built into the order of the plan that you filed

15   yesterday that I haven't even had a chance to look at.

16             And then the kind of things that might -- leave aside

17   the big issue between the TCC and the debtor that we've talked

18   about this morning. I'm talking about the little or the

19   smaller points, the points with the trust, the points with the

20   securities litigation, the points with whatever's left with the

21   OCC.

22             I mean, I don't want to be having a lot of these

23   urgent sessions trying to figure out what the latest version of

24   a draft order means. And you know, you heard me say before I'm

25   a great fan of a one-liner order that says the plan's

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    confirmed, but I know you don't want that, and I'm not going to

2    insist on it.  But it's such a moving target that I don't want

3    to jeopardize the debtors' opportunity to get to the market,

4    but I can't trample on the rights of some of the major players

5    here.  And you know who the major players are, and even the

6    minor players.  I mean, even if it's one objector who has one

7    paragraph that there's a dispute about what goes in the order,

8    my responsibility is to try to resolve that.

9         So we don't have to solve the problem today.

10        MR. KAROTKIN:  Well, can I just briefly address your

11   remarks?

12        THE COURT:  Yeah.

13        MR. KAROTKIN:  What I was suggesting as an alternative

14   would not constitute an order "confirming" the plan in an

15   appealable order confirming the plan.  It would merely

16   authorize the proposed financing to go forward, just like you

17   did, for example, when you authorized the debt commitments

18   several months ago.

19        THE COURT:  Okay.  That's --

20        MR. KAROTKIN:  So it would be similar to that.  And

21   then, as I said, if you were to decide, Your Honor, to confirm

22   the plan and enter a formal full-blown confirmation order, we

23   could just incorporate that prior order by reference, and in

24   that way, again, I don't think the entry of the financing would

25   really prejudice anybody.

(973) operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Okay.  Let's assume that that's the

2    approach.  So we'll call it the financing order.  It would be

3    helpful then -- that's something that I would presumably be

4    issuing once I make the decision on this thing next Tuesday,

5    right?

6    MR. KAROTKIN:  Well --

7    THE COURT:  The backstop adjustments and the revisions

8    that you --

9    MR. KAROTKIN:  I think you could do it before then.

10    Because remember, that's with respect to the equity financing.

11    THE COURT:  Okay.  Sorry.  Sorry.

12    MR. KAROTKIN:  So I think you could do it before then.

13    And it's not a long -- I mean, we have a draft order.  It's not

14    long.  It's, I think, six or seven pages, and basically

15    excerpts from the proposed confirmation order, those provisions

16    relating to approvals of the exit financing and the matters

17    related to that, so that the people can go out and raise the

18    money comfortable that what they're doing is authorized by the

19    Court.  And again, if we don't close, we don't go effective,

20    aside from some interesting fees, I think no harm no foul.

21    THE COURT:  I think that maybe I lost you in your

22    description of what would come up next week, as far as

23    adjustments to the backstop commitments, that has the effect of

24    altering, if not making more favorable, the public equity

25    raise.  But then when you said, based upon the commitment of

PG&E Corporation and Pacific Gas and Electric Company

1    five lenders, I understood that to be three-plus billion of the

2    nine-million-dollar equity raise.  Isn't that correct?

3             MR. KAROTKIN:  That's correct.

4             THE COURT:  Okay.

5             MR. KAROTKIN:  And what I'm referring to is the

6    balance.

7             THE COURT:  No, I got you, but what's -- see, I may

8    have conflated in my own mind the need to get orders that start

9    the ball running on the equity raise, and you seem --

10            MR. KAROTKIN:  No.

11            THE COURT:  -- to be describing as more about the debt

12   financing.  Let's proceed your way.  If you can get a sign-off

13   on the debt financing order by at least the two official

14   committees, that makes it a lot easier.  I don't think that

15   there's a need for a further hearing on that.

16            MR. KAROTKIN:  Okay.

17            THE COURT:  At least somebody -- well, you need to get

18   something on the docket, so, on an expedited basis, somebody

19   has an opportunity to be heard if there is a legitimate concern

20   about it.

21            MR. KAROTKIN:  We will do that, sir.

22            THE COURT:  And so again, on the assumption that I've

23   come to the conclusion that I should confirm the plan, you're

24   right; I agree with you that an order in place already that is

25   a financing order that, much like so many other orders in this

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    case, they are all subject to being of various undoing if

2    there's no confirmation.  I understand that.  But that was the

3    whole point of getting these things out of the way.

4         So I think I'm okay.  And so we're clear, and I don't

5    think you have to educate me any further.  Rights offering and

6    registration and rights of the TCC are different concepts.  But

7    most of the discussion left me somewhat confused.  Okay.

8         MR. KAROTKIN:  Okay.

9         THE COURT:  Let's switch gears, unless you want to say

10   anything more on this, and go to the subject of an agenda.

11        MR. KAROTKIN:  Okay.  Now I'm prepared to move to the

12   agenda for today.

13        THE COURT:  Well, you're the drafter of the agenda, as

14   of now, so who's on the agenda?

15        MR. KAROTKIN:  Okay.  So this is what I would propose.

16   As you noted, we did file an amended plan last night which we

17   think addressed the matters that had been resolved over the

18   past week or so, and we think that reflects those resolutions.

19   There are still a couple of things outstanding with respect to

20   a couple of the provisions, at least, that the states have

21   raised that we can address later.

22        And of course the issue with the UCC, unfortunately,

23   we were not able to reach a settlement on that, and so that is

24   back before Your Honor.  So that my suggestion is that that be

25   the first item that Mr. Bray, and whoever else wants to speak

PG&E Corporation and Pacific Gas and Electric Company

1    on that, can argue their objections and their views on that

2    subject.

3            I think that after that Mr. Johnston would respond to

4    the PERA objection.  And then we will address the remaining

5    unresolved objections as well as the UCC objection, if that

6    makes sense.

7            THE COURT:  I have a note from my clerk that Mr.

8    Schiff wants a brief time, and I presume that's related to what

9    Mr. Bray's going to talk about; is that right?

10           MR. KAROTKIN:  That's my understanding.

11           THE COURT:  Okay.  Well, let's bring Mr. Bray into the

12   room, and let me take a quick look at the people who have their

13   hands up.  I see Mr. Mintz has his hand up.  Mr. Abrams has his

14   hand up.

15           Mr. Abrams, I'm not going to call on you for now.

16   Maybe I'll come to you later.

17           Mr. Hallisey, honestly, I'm really not inclined to

18   revisit the arguments that you raise, but I may be persuaded

19   later.

20           Mr. Bray, why don't you -- well, why don't you state

21   your name for the record, and I'll ask you a couple of

22   questions specifically.

23           MR. BRAY:  Sure, Your Honor.  Good morning, Gregory

24   Bray, Milbank LLP, counsel for the official committee of

25   unsecured creditors.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  So what other counsel are you in touch

2    with that are likely to want to participate in this phase of

3    the discussions?  Does that include Mr. Mintz, for example?  I

4    mean, I know who his client is and what he represents, but they

5    haven't been aligned exactly with your committee.  Who --

6    MR. BRAY:  Well, Your Honor, we had -- I know that

7    they're counsel for several of the vendors who want to be

8    heard.  I'm sorry I don't remember everyone's name.  But they

9    have asked you, in the past, they wanted to trail what we were

10    saying so there was some continuity in the arguments.

11    I know that I think counsel for Citibank wants to be

12    heard.  I know that counsel for the state agencies and the

13    municipalities share the concerns we have and they would like

14    to be heard.

15    So I can't tell you the exact number of parties, but

16    virtually every unsecured creditor of the type that is, sort

17    of, within the constituency, other than the noteholders who are

18    settled, want to be heard on a similar set of issues.

19    THE COURT:  Okay.  All right.  Let me do this.  I will

20    hear from you now, and then I see Mr. Mintz and -- I think it's

21    Mr. Schiff who, if I'm not mistaken, is Citibank's counsel.

22    And I will come back to them in a while.  I see another person

23    whose name I don't recognize, but I'll deal with that later.

24    Mr. Bray, why don't you go ahead?  And previously we

25    had you down for about fifty minutes.  You take what you need,

PG&E Corporation and Pacific Gas and Electric Company

1    and I, sometime ago, read through your objections and am pretty

2    much familiar with the issues, but some time ago is like four

3    days ago, which doesn't mean I can keep track of everything.

4    But you have the floor.

5           MR. BRAY:  Thank you, Your Honor.  And just following

6    up on your last statement, I am going to try to not wade into

7    the heavy details, because I know we have covered them in our

8    briefs, and I know when the dust settles here you will want to

9    go back and read those briefs.  So I'm not going to try and

10   overload, sort of, the intake on all of these issues today.  I

11   will certainly address them, and then I will rely on the

12   Court's re-familiarizing itself with some of the subtleties of

13   these issues in both our objection and our surreply, which we

14   thank you for allowing us to file, because I do think it

15   clarified, in many respects, what are the remaining outstanding

16   issues.

17          And just to go back and just remind the Court again,

18   there are a number of issues that we have resolved with the

19   debtors, and the revised plan on file deals with those.  It

20   does not deal with the issues that Mr. Karotkin covered in

21   his -- what he read into the record last week.  And those

22   issues remain open.

23          We have not had an opportunity to fully review the

24   plan that was filed yesterday.  I'm told, on a very brief

25   review, it didn't really substantively change much of anything.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Nor have we had a chance to go through in detail the

2    confirmation order.

3           Let me just also raise one other point.  What I would

4    propose to do, Your Honor, at the end of the hearing today, is

5    to file with the Court a proposed list of modifications to the

6    plan and the disclosure statement that the committee believes

7    would resolve the committee's issues, so you will have that.

8    You can see the actual words, take your time with it and study

9    them, and decide if they're acceptable or not.  The debtor can

10   respond to them.  You can pick and choose, but I do want to try

11   and make this as easy for the Court as possible in terms of

12   trying to give you language that solves our concerns.  Other

13   parties may have issues too, but in trying to come up with a

14   solution to what are difficult issues in the process, we're

15   hoping that that helps the process.

16          THE COURT:  Okay.  I do think it will help.

17          MR. BRAY:  Yeah.  So Your Honor, turning a little bit

18   more now to the substance, as I said just a moment ago, you

19   heard, in the form of objections, from virtually every type of

20   creditor, unsecured creditor constituency in this case, that

21   the plan is essentially fatally flawed.  It violates

22   1129(a)(1),(2), and (3) in respect of certain issues related to

23   discharge, releases, cure and assumption, indemnity, and

24   contribution claims.

25          The debtor has, in some sense, resolved the discharge

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    issue by its agreement to modify 10.3.  So I'm not going to

2    spend any more time directly on that.  I'm going to focus,

3    principally, my attention on the cure and assumption issues

4    that tie together with the indemnity and contribution issues.

5    And then I'll spend some time on the other issues, as well,

6    that Mr. Karotkin raised, in his statement on the record, about

7    what we were attempting to resolve last week.

8         And first, I want to start with two statements of

9    legal principles.  The first is that, as the Court knows, that

10   the plan purports to render us and treats us as unimpaired.  We

11   were disenfranchised and not allowed to vote, and in fact, to

12   some extent, have been sidelined from the plan process by the

13   debtors' position, you're unimpaired; we don't really need to

14   deal with you.  And as the Court knows, unimpaired, under the

15   Code, 1124(1) says:  "leaves unaltered the legal, equitable,

16   and contractual rights to which such claim or interest entitles

17   the holder of such claim or interest".

18        The second principle that I think is worth stating

19   here is stated by the Ninth Circuit in the Frontier Properties

20   case, 979 F.2d 1358.  And I quote:  "The cost of assumption is

21   nothing short of complete mutuality and requires performance in

22   full just as if bankruptcy had not intervened."

23        So in many respects my comments today really are teed

24   off of those two legal principles and then some statements in

25   the debtors' brief in respect of 502.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      But the primary issue that is still unresolved with

2   the debtor is the notion that indemnity and contribution rights

3   of a creditor, whether or not in a contract or otherwise, are

4   no further force and effect once a plan is confirmed.  That's

5   the debtors' position.  They've taken it in their brief, they

6   have now restated it in court.

7      And I want to focus on the two aspects of that.  First

8   is the rights of parties who have contracts, executory

9   contracts that are being assumed by the debtors.  And the quote

10  I just read from Frontier Properties is applicable to that

11  situation.  And I think it's clear and unequivocal; it means

12  what it says.

13      And what we have in the plan is an almost Orwellian

14  interpretation of that principle of law which is I'm going to

15  assume the contract, but in the act of assumption, I'm going to

16  invalidate your rights to indemnity and contribution.  When I

17  say "indemnity and contribution", I'm short-handing for those

18  types of claims.  We know what they are, and I'm not going to

19  get into every specific example of it.

20      My point is that it's the precise opposite of what the

21  law requires.  You don't get to assume and cherry-pick or

22  invalidate.  If you assume, you take the contract as it is with

23  the indemnity and contribution provisions riding through.

24      THE COURT:  Mr. Bray?

25      MR. BRAY:  When Congress --

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Mr. Bray?

2          MR. BRAY:  Yes.

3          THE COURT:  Is there any legal difference between a

4   contract that is a formally assumed and another one that so-

5   called rides through because it's never been dealt with at all

6   in the plan.  Is there any difference?

7          MR. BRAY:  Your Honor, my understanding of the way the

8   plan is drafted is there are schedules that I think -- I

9   believe the plan says if it's not assumed it's rejected.

10          THE COURT:  Okay.  Well, but the law -- well, I'm not

11   sure that it says that, but it might.  But the case law says

12   that --

13          MR. BRAY:  Yes.

14          THE COURT:  -- a plan that is neither specifically

15   assumed nor rejected passes through, which is not a legal term,

16   but essentially it's the same as cure.  I mean, it --

17          MR. BRAY:  I agree with that, Your Honor, especially

18   in the context of impairment or nonimpaired.  And that's why --

19          THE COURT:  Okay.

20          MR. BRAY:  -- I took a moment to read the statute

21   because that's exactly our point is -- I'm going to shorthand

22   the statement for you, and I'll just set it out there.  As a

23   general principle, the rights of unimpaired creditors, with

24   very limited exceptions set forth in the Code, should be riding

25   through this plan, unaltered, unaffected, "unimpaired".  That's

PG&E Corporation and Pacific Gas and Electric Company

1    what the statute says, and that's what the cases concerning the

2    statute say.  In fact, as you know, they say even a positive

3    modification in the favor of a creditor constitutes impairment

4    that allows the creditor to vote in the plan.  So I --

5              THE COURT:  No, I understand.  I understand.  But if

6    you just have a debtor who has one contract with somebody

7    and -- you know, some sort of a contract, and the debtor says

8    I'm going to assume this contract, then it rides through, and

9    certainly that creditor is not impaired if the debtor says I'm

10   assuming your contract.  And --

11             MR. BRAY:  Without exception to  --

12             THE COURT:  Yeah.

13             MR. BRAY:  The only exception the Code allows, Your

14   Honor -- there are two; Congress has been very clear about

15   this, an ipso facto clause, and an anti-assignment clause.  365

16   is very, very clear about what types of provisions are not

17   "enforceable" by the counterparty.  So --

18             THE COURT:  No, but if I have a contract with you that

19   says Montali does this and Bray does that, and it has some

20   standard issue indemnity and contribution type language and --

21   I'll put you in bankruptcy rather than me -- and you file

22   bankruptcy, and you assume the contract with me, and leave

23   aside the -- there's nothing to cure, I think the result is

24   that you and I still have whatever mutual -- or strike

25   "mutual" -- whatever contribution and indemnity rights that we

escribers
(973)406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  had before bankruptcy.

2        And I think the same result would apply even if you

3  didn't formally assume the contract, you didn't do anything,

4  you just got your plan confirmed.  I think our contract would

5  pass through with all of those -- you know, all the warts

6  attached, all the good things and all of the bad things, right?

7        MR. BRAY:  I agree with that statement, Your Honor.

8        THE COURT:  Okay.

9        MR. BRAY:  And as I said -- and in this instance,

10  again, looking at it through the prism of unimpaired assumption

11  and indemnity and contribution and ride-through what is

12  particularly noteworthy here is, while the debtor certainly

13  attempts to state that, as a legal matter, we are tilting at

14  windmills here and in fact it's the Code that is somehow giving

15  them these rights, under 502 or otherwise, and that we're

16  missing the mark by virtue of your decision on PPI, which is a

17  completely different situation, there is nothing in the Code,

18  as I pointed out, that limits our rights in the fashion that

19  the debtor attempts to.  But the debtor essentially admits as

20  much in the plan.

21        In the plan supplement, which we mention in our

22  surreply, Your Honor, in our opening brief, buried in 2,000

23  pages of exhibits, is a statement that basically says that --

24  let's see if I can find it here, Your Honor.  One moment.  I've

25  got so many papers.  It basically says, "except as set forth in

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  Section 8.4 of the plan" -- and we'll get to that in a

2  minute -- "with respect to the D&O indemnity obligations.  The

3  assumption by the debtors of all executory contracts pursuant

4  to the plan shall result in the full release and satisfaction

5  of all contingent pre-petition indemnification claims, and any

6  proof of claim premised on a pre-petition contractual

7  indemnification obligation alleged to be owned by the debtors

8  shall be deemed disallowed and discharged except for the D&O

9  claims."  So if in fact it is true that, as a legal matter,

10  that is what the law requires, how can the D&O's rights work?

11  This is a classic example of cherry picking.

12       THE COURT:  Well, but what if the contract that has

13  been assumed, there are no contingencies that exist, there are

14  no rights, there's nothing for which there needs to be

15  indemnity.  The way you just read this excerpt struck me as

16  dealing with pre-petition things; it didn't say that those

17  provisions disappear post-petition.

18       MR. BRAY:  Well, the debtors' position is they do.

19  That's exactly the dispute.

20       THE COURT:  But do they?  But why wouldn't they

21  disappear under any --

22       MR. BRAY:  They shouldn't.

23       THE COURT:  I mean, look, I think -- I wonder whether

24  you're overstating your case.  We can agree that if there's a

25  contract -- let's go back to the Bray-Montali contract.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   MR. BRAY:  Um-hum.

2   THE COURT:  And you want to assume the contract with

3 me, and I believe that you owe me 1,000 dollars.

4   MR. BRAY:  Right.

5   THE COURT:  Not for a cure of a traditional default-

6 like lease, but because --

7   MR. BRAY:  Right.

8   THE COURT:  -- because you should be indemnifying me

9 because something that happened pre-petition that made me incur

10 a 1,000-dollar expense that I think you should indemnify me

11 for.  But you assume the contract, and I don't do anything, I

12 don't assert a claim for 1,000 dollars.  I think the answer is

13 I'm out of luck because there existed a right, whether it's

14 contingent or -- well, a right that you could know about it.

15 It's within fair contemplation, to use a traditional Ninth

16 Circuit 365 term.

17   And I think I should be out of luck on that one, but

18 the next day after confirmation, if you do something that

19 triggers another kind of indemnity, I think I have a right to

20 assert it against you.  And I don't hear -- I mean, I doubt

21 that the debtor would disagree with that, so --

22   MR. BRAY:  Your Honor, let me see if I can break that

23 down.  The cure simply means the debtor has the right to assume

24 the contract.  It doesn't operate as discharge.  There's no law

25 I'm aware of, no case that says that the active cure discharges

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    claims.  In fact, the Ninth Circuit has said the opposite, that

2    all the active cure does is it is a predicate to the act of

3    assumption, nothing more.  There's nothing in 365 that says it

4    constitutes a discharge or anything else.  It just simply says

5    this is what you had to pay to assume the contract.  Once it's

6    assumed, all of its obligations remain in full force and

7    effect.

8             THE COURT:  I know, but again --

9             MR. BRAY:  That's what the Ninth Circuit is saying.

10            THE COURT:  -- you seem to agree that if we had an

11   identifiable monetary cure so that you're my tenant and I'm the

12   landlord, and you own me 1,000 dollars in back rent, and you

13   move to assume the lease, and you say there are no defaults,

14   and I fail to say, yes, there is, there's a 1,000-dollar

15   default, I think it's pretty clear, if the Court approves that

16   assumption, you don't have to pay me the 1,000 dollars.  Don't

17   you agree with that?

18            MR. BRAY:  No, actually, Your Honor, I would

19   slightly -- let me put it this way.  I can't state that you

20   couldn't assume the contract.  You cured what was stated that

21   had to be cured to assume the contract.  So the act of

22   assumption occurred.  I would not agree that the claim was

23   discharged.

24            THE COURT:  But okay, maybe it's not discharged as a

25   matter of bankruptcy law, but you, the debtor, say I don't owe

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Montali any back rent.  Montali is asleep at the switch and

2    does not assert 1,000 dollars of back rent, and the contract's

3    assumed.  I think the case laws are clear that I can't then

4    come back after you later and say, hey, Bray, you own me 1,000

5    bucks.  Your answer would be I cured that lease and assumed it.

6            Now, let's change the facts.  Mr. Karotkin --

7            MR. BRAY:  Your Honor, I would say you cured that

8    obligation.

9            THE COURT:  Okay.

10           MR. BRAY:  You didn't cure any other obligation in the

11   contract, and that's an important distinction.

12           THE COURT:  But if I --

13           MR. BRAY:  Property rights are a bundle of rights.

14   Yes, you cured the obligation to pay rent by tendering me the

15   1,000 dollars, and I accepted it.  That payment of that

16   obligation is satisfied.  It doesn't satisfy any other

17   obligation in the contract.

18           THE COURT:  No, you're twisting my hypothetical.  In

19   my hypothetical, you owe me 1,000 dollars.

20           MR. BRAY:  Oh, I'm sorry.  Okay, sorry.

21           THE COURT:  And I fail to assert the claim for 1,000.

22   Bray files the motion and says I want to assume the contract

23   with Montali, there are no defaults.  Montali doesn't do

24   anything, but has notice, and doesn't come in and say, wait a

25   minute, Bray, you owe me 1,000 dollars.  If I don't say it, I

PG&E Corporation and Pacific Gas and Electric Company

1    think I'm out of luck.   And whether it's legally discharged or

2    contractually discharged is probably angels on a pin.   But now

3    let's change the facts.

4            Mr. Karotkin has a damage claim because of something

5    you caused, but he has a right to assert it against me.   So he

6    hits me up for the 1,000 dollars, and I know that he's out

7    there, and I don't assert my indemnity or contribution claim

8    against you because it's a pre-existing default.   Hey, Bray,

9    you should have paid Karotkin his money.   He got me instead.   I

10   have a right of indemnity.   To me, if you assume the contract,

11   and I don't assert that claim, I've left it on the table and

12   you win.   That's my take.   Again, you can disagree with that.

13           MR. BRAY:   In your hypothetical, the 1,000 dollars was

14   due and owing under the indemnity clause at the time it was

15   assumed; is that correct?

16           THE COURT:   Mr. Karotkin did something that he was

17   owed money by you, but he had a right to assert it against me

18   too.   Maybe I'm the guarantor.   Let's say, you know, I said to

19   Karotkin, don't worry, Bray is good for it, he'll pay the bill.

20   So Bray goes into bankruptcy, Karotkin says, hey, Montali, Bray

21   just stiffed me for 1,000 dollars; make good on your guarantee.

22   So I have a contribution or indemnity claim against you if I am

23   forced to pay Mr. Karotkin.   But I don't do it.   I'm asleep at

24   the switch.   I don't assert an indemnity claim that I could

25   have asserted and that I had knowledge of.

(973)406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      And to me, whether it's an 1141 discharge, or a 365
2  discharge, or a state law discharge, that's for the scholars of
3  the academics.  For my take, if I have notice of Mr. Bray, you
4  owe me back rent, Mr. Bray, you owe me because you made me
5  incur guarantor obligation to Mr. Karotkin, I have the right to
6  assert both of those against you.  If I don't do it, and you
7  assume the contract, you win, I lose.  I think that's all we're
8  talking about here.

9      Now, Mr. Karotkin, if he likes my reasoning, he's
10  going to say that's a brilliant analysis, and if he doesn't
11  like my analysis, he'll say so.  But I don't think, to take the
12  hypothetical one step further, if the plan's confirmed on a
13  Monday, and on Tuesday you breached the lease, or Mr. Karotkin
14  causes -- he has a claim that he can assert against me as the
15  guarantor, I can assert an indemnity claim against you, post-
16  petition, and there's no discharge, there's no bankruptcy
17  relief available; you are on the hook.

18      And I think that's what's happening here.  And I don't
19  know what to say about the D&O issue, but if you represent
20  thousands of general creditors that want to have indemnity and
21  contribution obligations passed through, then your constituents
22  should be asserting them in response to the assumption motion
23  if they pre-existed the bankruptcy.  And if they didn't exist
24  in the first place, you're not at risk.

25      Anyway, I'm making the argument.  I should let you

PG&E Corporation and Pacific Gas and Electric Company

1    make it.

2         MR. BRAY:  Your Honor, a couple of observations.  One,

3    there is no assumption motion.  The debtor is relying on the

4    general bar date to play gotcha here.

5         THE COURT:  But --

6         MR. BRAY:  So that's a significant distinction.

7         THE COURT:  Oh, that's not true.  The request to

8    confirm the plan is the motion.

9         MR. BRAY:  Well, but there's no formal time period in

10   there to actually say you need to assert the -- well, let me

11   move on.

12        THE COURT:  Yes, there is; it's called deadline for

13   objection.

14        MR. BRAY:  I understand.

15        THE COURT:  Right?

16        MR. BRAY:  I understand.  My other point is, Your

17   Honor, I'm not sure I agree, at the end of the day, that there

18   is nothing in Section 365, and there's no case that the debtor

19   has cited, at least, that would support the notion that cure is

20   effectively the equivalent of discharge.  Again, I don't want

21   to repeat myself, but I maintain that the act of cure only

22   allows the assumption of the contract, nothing more.

23        THE COURT:  I'm just going to --

24        MR. BRAY:  The contract rides through, as per the

25   Ninth Circuit's statement that it requires performance in full.

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  I'm just going to quarrel with you one

2   more second.  I don't think this is a cure issue; I think it's

3   a nonassertion of a right issue.  And there's nothing -- if I

4   don't assert the indemnity entitlement, then that, to me, is

5   legally no different from failing to assert a cure amount that

6   I could have asserted.  Anyway, let's move on.

7          MR. BRAY:  All right.  Your Honor, I do think there's

8   a difference, but let's move on.  I agree.

9          Your Honor, the other point I was going to make was,

10  interestingly -- and this goes to your point -- in Section 8.4

11  of the plan -- let me see if I can grab that, if I may,

12  quickly.  I guess maybe this addresses your issue as well,

13  leaving your hypothetical.

14         The plan says -- and I'm going to use the D's and O's

15  again as my sounding board -- that there's always -- as you

16  know, there's always this hypothetical legal issue about what

17  are the rights D's and O's really have when they ride through.

18  How do we frame their rights, in a legal fashion, to justify

19  the complete ride-through of their rights?

20         And you'll see in the plan, here's how the debtors are

21  in Section 8.4.  They said that, essentially, that the rights

22  of the D's -- that the corporate documents, whatever rights

23  under anything, under any written agreements, or anything at

24  all that the D's and O's have with respect to indemnification,

25  are deemed to be executory contracts, and as a result of

PG&E Corporation and Pacific Gas and Electric Company

1  that -- and I'm going to quote, "shall remain in full force and

2  effect to the maximum extent permitted by applicable law, and

3  shall not be discharged, impaired, or otherwise affected by

4  this plan.  All such obligations shall be deemed and treated as

5  executory contracts that are assumed by the debtors under this

6  plan and shall continue as obligations of the reorganized

7  debtor.  Any claim, based on the debtors' obligations in this

8  section, including indemnities, shall not be a disputed claim

9  or subject to any objection, in either case, by reason of

10  502(e)(1)(B) or otherwise."

11          So I think the debtors' own plan disagrees with,

12  essentially, the hypothetical you've presented me before, Your

13  Honor.  They've taken the exact opposite position as to what

14  the consequence of assumption or being an executor or having

15  the rights of a party whose executory contract is assumed, what

16  that means.

17          THE COURT:  Why is it unfair or inappropriate for a

18  trade creditor to be treated with the traditional principles of

19  if a solvent debtor says, I'm going to cover any liability that

20  officers and directors have?  How does it hurt another -- a

21  trade creditor or anybody else in a solvent case?

22          MR. BRAY:  It doesn't hurt them.  It just is simply a

23  statement of the debtor's interpretation of what it means to

24  have an executory contract.

25          THE COURT:  Okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. BRAY:  That's my point.  If they had just said,

2     because I want it to be so, this is what I'm going to do, then

3     that would be one thing --

4          THE COURT:  But what --

5          MR. BRAY:  -- but that's not what they said.  They

6     said it's an -- they have a right to the holder of an executory

7     contract.  And what flows from that is what I read.

8          THE COURT:  Okay.

9          MR. BRAY:  And by the way, I'm going to go back again

10    to where I started, which was that 1124 says, unimpaired.  So I

11    also want to layer that on top of your hypothetical -- why is

12    this a different situation?  Because they were unimpaired.  If

13    you marry those principles up, I think it means we ride it

14    through.

15         THE COURT:  Okay.

16         MR. BRAY:  So Your Honor, I think -- a related issue,

17    which touches on the rights of non-upholders of -- nonexecutory

18    contract rights of unsecured creditors in this situation.  And

19    there, I think I'm probably more in sync with some of the

20    thoughts here.  In this case, the debtors, by virtue of the

21    plan supplement and in their confirmation brief took the

22    position that those rights are extinguished -- well, those

23    rights being indemnity contribution -- are extinguished as a

24    matter of law under 502(e)(1)(B).  No mention of 502(e)(2).

25    They basically just said they're gone, obliterated, and --

(973) 406- operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  whereas the debtor says, we're misinterpreting what statutory

2  impaired versus nonstatutory impairment -- it's actually quite

3  the opposite.  Their brief takes the position that we have no

4  rights under 502(e)(2), which mandates that once the claim is

5  liquidated, it shall be allowed in the respect to the indemnity

6  contribution.  The statute says "shall".  It's a mandatory

7  allowance issue subject to the normal types of issues.  But

8  it --

9          THE COURT:  Okay, let's go back to my hypothetical

10  with you and Mr. Karotkin and me.  Mr. Karotkin has -- he

11  contends that you owe him money, but he also contends that I'm

12  going to have to pay him money because I have indemnified or

13  guaranteed your debt.  So you file bankruptcy and I file a

14  claim for my guarantor claim against you, but I haven't paid

15  Mr. Karotkin yet.

16          I believe under the law, my claim would be disallowed

17  because I haven't paid him yet.  But if some day in the future,

18  I am forced to pay him, then I believe 502(e)(2) kicks in and I

19  get -- the contingency of my claim against you has matured.  I

20  know have to pay -- because I'm now -- I'm obligated to pay, I

21  have a right against you.

22          So that to me is the way the statute works.  He should

23  have filed a claim -- or I could have filed a claim on his

24  behalf.  And I can't -- particularly in an insolvent case, I

25  can't file a claim on my behalf and compete with him.  That's

PG&E Corporation and Pacific Gas and Electric Company

1   the principle of 502(e), right?

2           MR. BRAY:  Yes.  And I'm going to seize on a word you

3   said.  Couple points.  One, we're not talking about a

4   contractual assumption issue.  We're just talking about general

5   rights.  And two, the insolvency point you made -- 502, this

6   legislative (indiscernible) very clearly states it's designed

7   to essentially not have competing recoveries for the same

8   claim -- the same claim -- with the insolvent debtor under the

9   principle of equality of distribution.

10          Well, first, the focus of the concern here -- again, a

11  little background -- we're -- the genesis of this issue arises

12  in respect to the debtor's assignments of their litigation

13  claims against the vendors, the tree trimmers, the people that

14  they're relying on to keep them compliant with their

15  obligations under 1054.  It's those people whose claims are

16  being assigned into this fire victim trust, essentially being

17  thrown to the wolves.

18          So the issue -- and those claims and what we will have

19  is essentially those potential defendants having two claims

20  come up here:  one from the victims themselves and then

21  whatever rights the debtors had.

22          Now in respect to the victims themselves, when they --

23  that's a completely separate basis for recovery, unless the TCC

24  is going to say otherwise, which I highly doubt.  So 502 is

25  isn't implicated there because it's not a double recovery on

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      the same claim.  It's a separate basis of why they're billing.

2              So to the extent under applicable state law -- we

3      don't need to debate whether it's there or not; we're not

4      pressing that issue now -- if it exists, 502 isn't even

5      implicated because it's a separate basis of liability.  So --

6      and I'll get to your point about the proof of claim in a

7      second -- but essentially -- and we don't need to resolve the

8      issue completely because we acknowledge, as we did when we

9      talked to the Court about this in the settlement, that a

10     reservation of rights with respect to 502 may be appropriate,

11     that the Court may not want to get into every permutation of

12     that issue.  I'm merely pointing out that it is not at all

13     clear that it applies, and especially since we don't -- we have

14     a solvent and not an insolvent debtor -- this concern about

15     diluting other creditor's recoveries by essentially a double

16     payment on the same claim -- just simply isn't implicated here.

17             So I take it a step further.  Maybe there's an

18     argument that's applicable, but actually, if you step back and

19     think about it, 502 really isn't applicable here.  So the

20     attempt by the debtor to essentially use a statute which is --

21     it's debatable if it has any applicability, but excise the

22     rights under 502(e)(2) from the creditor, that is impairment.

23     That is the classic -- that's the worst kind of impairment you

24     can.  You're basically depriving this group of creditors of

25     their statutory rights, and again, I know -- just to complicate

PG&E Corporation and Pacific Gas and Electric Company

1    it a little further, I'm going to again layer on top of this

2    1124.  Statute says they have to be unimpaired.  That's the

3    guiding principle for having disenfranchised this group of

4    creditors is you cannot -- I won't read the statute again.  We

5    know what it says.  That principle of law has to be respected

6    with respect to every interpretation of the rights of the

7    parties under the circumstances.  And that's the point I can't

8    stress enough.

9            And Your Honor, I said this early on, but again, I

10   want to circle back to -- you know, essentially every creditor

11   class who holds an executory contract -- BPAs, the government

12   parties -- everyone has raised the same issue.  It is a chorus

13   of voices.  This is not a -- I don't think in terms of the

14   executory contract -- I'm not -- I mean, as I look at it, it's

15   not even close.  This is a open and shut issue.  I'm not

16   intending to any fashion -- I just -- I think from the creditor

17   body, given the chorus of voices on this issue, that that -- it

18   makes the issue all the more interesting that it really is

19   subject to debate.  I take the Court's comments for what they

20   are.  I respect those.  I just want to set the stage for you

21   that this is not, from the creditor's perspective, a nominal

22   principle of law in terms of riding through, in terms of these

23   rights.

24           I said enough about that.  I want to turn to a couple

25   of other issues, if I may.

(973) operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        THE COURT:  One more question.  What's the fix?

2        MR. BRAY:  Sure.

3        THE COURT:  The committee hasn't asked me to deny

4   confirmation, so what's the fix if I agree with you?

5        MR. BRAY:  I will -- we will submit to you at the end

6   of today, proposed language that fixes this issue and our other

7   issues.  And they will be relatively short.  They can be added

8   to both the plan and the confirmation order and, at least we

9   believe, will resolve the issue.

10        THE COURT:  Okay.

11        MR. BRAY:  Okay?

12        THE COURT:  I'll look forward to something then.

13        MR. BRAY:  Yeah.  And we would -- I have a draft of

14   it.  I just want to read it.  I want to make sure we like it,

15   and then we'll file it.

16        THE COURT:  Okay.

17        MR. BRAY:  So Your Honor, we talked about,

18   essentially, contribution of debtors (Indiscernible).  The --

19   there were some other issues -- and these came up with Mr.

20   Karotkin -- that one of the issues was an acknowledgment

21   regarding retained rights and defenses of these entities who

22   are being thrown to the wolves in the fire victims' trust with

23   respect to the idea that whatever rights and defenses they

24   have -- right -- or go along with the claims that are being

25   assigned.  Now, I don't really think that's a controversial

PG&E Corporation and Pacific Gas and Electric Company

1    issue of law.  I think the Court stated as much when we spoke

2    about this the other day, and in fact, I won't -- in debtor's

3    briefs, page 63 and 68 of the file copies -- I won't pull them

4    out now -- they basically say that that's right, that they're

5    not attempting to basically strip them of those rights.  The

6    debtor's argument is with respect to indemnity and contribution

7    back against the debtors, not with respect to the rights and

8    defenses that would flow with the assignment of the claims.  So

9    we're also going to submit language on that.

10           THE COURT:  You're familiar with the decision I issued

11   on the trust challenge by the major corporate claimants, right?

12           MR. BRAY:  Some.

13           THE COURT:  Well, okay.  I mean, the big issues had to

14   do with access to a Court and the subrogation offset issue.

15           MR. BRAY:  Right.

16           THE COURT:  But I thought I identified as something

17   that I thought was a -- could be clarified in the drafting is

18   something that Ms. Winthrop and Mr. Mintz and the other counsel

19   representing the major corporate fire victims in the TCC of the

20   trust, and I haven't heard back on that.  I thought that was

21   going to -- was getting resolved, but it seems like it's the

22   same issue here.  You can't have set off -- I'm sorry, set off

23   in a counterclaim.

24           MR. BRAY:  Recruitment.

25           THE COURT:  Issues divided it up going both ways.  It

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    could either be one of the other, and I thought that was

2    clarified.  But we'll see what other people said later on.

3         MR. BRAY:  Agreed, Your Honor, and again, we're

4    talking about rights and defenses.  So I offered essentially

5    the idea that they all flow together and there's mutuality

6    there.  It's not a one-way proposition.  Everyone's rights on

7    those issues are essentially reserved and preserved.  We'll

8    also submit language on that.

9         I don't think that is a -- as I understand it -- even

10   the debtor's own confirmation brief -- I don't really think

11   that that's a proposition that is challenged, but it does bring

12   to mind an issue with respect -- since you raised it -- the

13   fire victim's trust.  We do have a concern, and I thought this

14   was really in the nature of a clarification, but apparently

15   not -- these indemnification contribution rights that we spent

16   a fair amount of time discussing, there is an interpretation

17   that to the extent that those are allowable claims, for lack of

18   a better word to say it, against the debtors for indemnity

19   contribution, that those obligations to pay by the debtors are

20   channeled to the fire victims' trust such that the fire victims

21   themselves, their recovery will be diluted by the debtor's

22   obligation, either statutorily or by contract, to pay the

23   contractual counterparty or the vendor under a right of

24   indemnity.

25        I didn't think that that was the intention, first off,

PG&E Corporation and Pacific Gas and Electric Company

1    because the debtor's first said no such claims can be allowed,

2    and second, the vendors and the unsecured creditors are not the

3    fire victims here, so trying to have the fire victims -- have

4    them recover from a trust intended for the fire victims seems

5    to me to be unusual, but that is an interpretation, and when

6    we've asked for clarification on that, we've been met with a

7    resounding silence.

8            THE COURT:  I thought that was already clarified, and

9    maybe at some point, but not in this segment, Mr. Karotkin can

10   clarify the issue.  But I don't want him to do it now because I

11   need to let you complete your argument and --

12           MR. BRAY:  I understand, Your Honor.

13           THE COURT:  -- other people that want to object.  But

14   to me, that's in the probably a nonissue category.  But I could

15   be wrong.

16           MR. BRAY:  I hope you're right.  That's all I'll say.

17           THE COURT:  It would be an interesting disposition of

18   the trust if the debtor got to channel the trust and then

19   drained it all out again.

20           MR. BRAY:  Um.

21           THE COURT:  I don't think that's going to happen.

22           MR. BRAY:  Paying the vendors -- I'm just not sure

23   that that -- that's an interesting interpretation.  That's all

24   I'll say.

25           So Your Honor, I think that that covers the issues we

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  raised.  I do want to say several more things about the

2  arguments you're about to hear, and I want to lend some support

3  to the arguments of the state and others challenging the

4  provisions of Section 8.2(e).  We looked at that as well, and

5  let's just say that while we think that our proposed fixes to

6  the plan solve the problem, it is -- as drafted -- and has the

7  potential to create mischief and ambiguity, and we just don't

8  see why that type of a provision should stand as drafted.

9  There have been several recommended fixes to you from the other

10  parties in terms of clarifying how that provision should work.

11  We would be supportive of that or we would either be supportive

12  of just simply striking the provision.

13        If you look at the input, it's sort of an

14  unnecessarily cumbersome attempt to restate what the rights are

15  as a matter of law, and I think that as a matter of law, the

16  parties' rights are otherwise reserved and preserved.  As I

17  said, it just creates mischief.

18        Similarly, the -- there was a concern expressed about

19  the Court not having -- or about the debtor's being able to

20  make modifications to the plan without an order of the Court.

21  We also share that concern that there not be any substantive

22  modifications to the plan whatsoever.  The Court should have to

23  approve those changes, especially given the amount of

24  litigation that has occurred in respect of the terms of this

25  plan itself.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1       Then, Your Honor, lastly -- believe it was the

2   municipalities filed an objection.  It's a proposed language

3   with respect to Section 10.13.  In one of your text orders, you

4   asked why shouldn't I adopt this provision, especially with

5   respect to the GUCs?

6       And some of the language addressed not just the GUCs,

7   but the -- or not just the municipalities, but the GUCs.  I

8   think there's some merit to that.  It cuts through --

9       THE COURT:  Mr. Karotkin, frankly, had a heart attack

10  when he read it at the remarks.

11      MR. BRAY:  What it does is -- I'll tell you

12  (indiscernible) --

13      MR. KAROTKIN:  Your Honor, I thought we had resolved

14  this with Mr. Bray.  I don't know why he could raise that issue

15  now.

16      THE COURT:  Yeah, I thought it was --

17      MR. KAROTKIN:  I'm actually quite -- I'm actually

18  astonished that he would go before the Court today and raise an

19  issue that he said was resolved.

20      THE COURT:  Come on.  Let's take it easy.

21      MR. BRAY:  Well, wait it out.  I settled --

22      THE COURT:  Mr. Bray --

23      MR. BRAY:  Your Honor.  I'm perfectly happy to live by

24  our settlement offer.  I'm not the one -- I'm mystified by

25  this.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  But take a look at that.

2          MR. BRAY:  I live by the settlement.

3          THE COURT:  Take a look at the -- last night's version

4    of 10.13.

5          MR. BRAY:  I haven't seen it yet, Your Honor.

6          THE COURT:  Yeah.  I haven't.  So, okay.  Let's --

7    that's it for you?  Mr. Bray, we cover all your --

8          MR. BRAY:  Yeah, yeah.  Your Honor, just to be clear

9    about this.  Other than what I said about the fire victim's

10   trust, I don't think I said anything inconsistent with what we

11   said to the Court in terms of the settlement last week.  I --

12   as a matter of fact, if it becomes an issue, I would urge you

13   to go back and read the transcript on this issue, and then you

14   could decide if anything I have said is inconsistent with the

15   settlement that we talked about.

16         THE COURT:  I got lots of things to do, but going back

17   and (break in audio) --

18         MR. BRAY:  I understand.

19         THE COURT:  -- is not my first choice of things to do.

20         MR. BRAY:  That's why -- I didn't want to go there.

21   You've got a lot to do, and I -- you know, it didn't work and

22   it did work.  But I think I'm getting sort of somewhat unfairly

23   categorized as having said something that really doesn't -- it

24   was outside the scope of what we discussed.  I'm happy to live

25   with that subject to the clarification in respect of the fire

PG&E Corporation and Pacific Gas and Electric Company

1   victims' trust.

2          THE COURT:  Okay.  Mr. Bray.  Thank you for your

3   thorough argument.  I appreciate the colloquy.

4          I'm going to move you out of the room now, if you

5   don't take it personally.  And --

6          MR. BRAY:  No, Your Honor, not at all.

7          THE COURT:  -- I'm going to ask my clerk to bring Mr.

8   Mintz and Mr. Glassman in, and Mr. Schiff, if you're hearing

9   me, you should raise your hand because you had asked -- yeah.

10  Well, yeah.  And bring Mr. Schiff in.  Ms. Winthrop -- yeah,

11  bring Ms. Winthrop in too.  We'll get everybody.  We're going

12  to start with Mr. Schiff when he comes in here.

13         Okay, for each of you coming on to the panel -- Mr.

14  Glassman, Mr. Mintz, Ms. Winthrop, Mr. Schiff -- just remind

15  you to state your name for the record.

16         Let's start with Mr. Schiff, and then we'll go Mr.

17  Mintz, Mr. Glassman, and then Ms. Winthrop in that order.

18         Mr. Schiff?

19         MR. SCHIFF:  Okay.  Thank you, Your Honor.  Can you

20  hear me, Your Honor?

21         THE COURT:  Yes.  I can.

22         MR. SCHIFF:  Great.  Thank you.  David Schiff of Davis

23  Polk and Wardwell on behalf of Citi.  Thank you very much again

24  for allowing us to speak briefly on this issue here.

25         Citi, Your Honor, is the administrative agent under

PG&E Corporation and Pacific Gas and Electric Company

1   the utility revolving credit agreement.  We filed a reservation

2   of rights, not an objection, in connection with the plan, which

3   was docketed at UCF 2360 (phonetic).  We had asked to address

4   the Court on this issue last week after Your Honor raised the

5   specter of argument on this particular point because the

6   debtors had included numerous agreements with Citi and its

7   affiliates on the schedule of listed agreements and one of

8   those agreements was the utility revolving credit agreement.

9           With respect to the credit agreement, we were

10  concerned that given the breadth of paragraph 13 in the

11  schedule of listed agreements that the language would be so

12  broad as to conflict with language that was specifically

13  negotiated in the plan of provisions for the protection of the

14  funded debt trustees.  We raised that with the debtors, Your

15  Honor, and in response, the debtors, Friday night, filed an

16  amendment to the assumed agreement schedule that removed that

17  credit agreement as a proposed assumed contract, and we do not

18  object to that modification, so to the extent that that's not

19  changed further -- and I don't expect that it will be -- but to

20  the extent that that's not changed further, it should resolve

21  our issues with regard to the credit agreement.

22          I would mention, Your Honor, though that, again, we do

23  have several other contracts that are still on the schedule of

24  assumed agreements with the debtors, and I think that I thought

25  that Mr. Bray stated the issues very well, and I don't intend

PG&E Corporation and Pacific Gas and Electric Company

1    to rehash, but if you permit, I would just make a few brief

2    points.

3            First, Your Honor, with respect to Section 502(e),

4    which I understand I read from the confirmation brief and I

5    think, as Mr. Bray said in his sur-reply the debtors are

6    relying on as justification for the discharge of contingent

7    indemnification plans.  We just note that 502(e) by its terms

8    is limited and the debtors say this -- the instances in which

9    the claimant is co-liable with the debtors -- and I would note

10   that customary indemnities in financial contracts in particular

11   often go beyond that.  They cover defense costs.  They cover

12   other matters for which there is no finding of liability.  And

13   so I think the reliance on Section 502(e) as a basis to

14   discharge all contingent indemnification plans pre-petition is

15   misplaced.

16           THE COURT:  Did you hear my discussion with Mr. Bray

17   about my hypothetical?  My contingent claim of the money that I

18   have to pay Mr. Karotkin and don't I have a mature claim

19   against Mr. Bray?

20           MR. SCHIFF:  No, but thank you, Your Honor.  That was

21   actually was the next point that I was hoping to visit.  I

22   thought that that example was helpful, in particular, because I

23   think in your example, you had notice, as the creditors, the

24   contract counterparty -- you had actually had notice that some

25   event had occurred pre-petition or prior to confirmation --

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    prior to the cutoff of the indemnity that would have given rise

2    and would have presumably given you the ability as part of a

3    cure process to raise it.  And that, I think, is an important

4    point, maybe just of clarification, because as I read that

5    paragraph 13 and as I read the plan, the debtors are actually

6    saying it doesn't matter if you as the claimant -- as the

7    counterparty that would potentially seek to exercise the

8    indemnity -- it doesn't matter if you had knowledge or could

9    have had knowledge that there was some lurking liability pre-

10   petition.  It's just if your indemnity looks back to periods

11   pre-petition or maybe it's pre-confirmation -- but if your

12   indemnity looks back to before the time when the debtors are

13   seeking to cut off that right, then regardless of whether you

14   had notice, if you could have known, if you could have raised

15   it as part of the cure, because that sort of theoretically's

16   the case, that right is cut off.

17            And I guess the concern would be, to modify your

18   hypothetical, Your Honor, that, you know, let's say the plan is

19   confirmed at the end of this month, and next month, someone

20   goes to my client and says, something happened in 2017 and I

21   would go after PG&E for this, but they're in bankruptcy and

22   their plan was just confirmed, so here I am and I'm going to

23   assert this claim against you.  And I would look then to -- my

24   client would look to its indemnity -- if it has a contractual

25   indemnity that looks back to that period -- under the terms of

PG&E Corporation and Pacific Gas and Electric Company

1   the agreement, it would first be getting notice of this issue

2   in July 2020 and would be able to go back and look to the

3   indemnity of the agreement at that point.

4           As I understand what the debtors are saying, what the

5   debtors have proposed in the plan, there would be no lookback

6   to essentially pre-petition conduct or pre-petition events

7   whatsoever.  That's how I understand the plan to be cabineting

8   the time period that indemnification rights cover, is they have

9   a cut off -- if it's pre-assumption, that right is just read

10  out of the agreement.  And the issue, Your Honor, is if you

11  say, well, you have your cure process and you could make a cure

12  objection, then that's your window of time to raise the issue,

13  I'm just not sure how practically you could do that without

14  having notice that this liability is lurking.  And you could

15  have a situation where frankly the debtors have notice that the

16  liability's lurking, but the parties who's ultimately sued

17  who's party to an assumed contract with the debtors doesn't

18  have notice.  And that's the issue I'm looking at.

19          THE COURT:  Okay.  Well, would you restate the same

20  thing -- in your opening moment or two, you referenced

21  paragraph 13, but I didn't get paragraph 13 of what.

22          MR. SCHIFF:  Apologies, Your Honor.  Paragraph 13 of

23  the schedule of the schedule of assumed contracts.  The other

24  indemnification obligations provision.

25          THE COURT:  So in the supplement, right?

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. SCHIFF:  In the supplement, yes.  Yes.

2          THE COURT:  Okay.  All right.  I got it.  Thank you,

3     Mr. Schiff.  Appreciate your comments.  We're going to take you

4     out of the panel now.  We don't need to keep you here.

5          MR. SCHIFF:  Thank you, Your Honor.

6          THE COURT:  I'm going to go -- Mr. Mintz, I think you

7     had a hand up first.

8          MR. MINTZ:  Thank you, Your Honor.  Benjamin Mintz

9     from Arnold & Porter, counsel for AT&T.  I put my hand up in

10    response to the agenda that Mr. Karotkin outlined.  I'm not --

11    my issues, as I've alluded on a couple of the prior hearing

12    dates relate to the trust documents, and as I've previewed with

13    Your Honor, we've been working on trying to resolve those

14    issues with the TCC and the trust -- and the trustee.  We've

15    taken it as far as we can and we have two issues that we need

16    to bring to Your Honor's attention and have Your Honor

17    determine.  I know I'm kind of jumping in the middle of this

18    other argument and I don't necessarily want to do it now, but I

19    wanted to make sure with the opportunity to present those

20    issues to Your Honor, and we can defer that to a later point in

21    the agenda.  I probably need about five to ten minutes to

22    explain and describe the issues to Your Honor and argue the

23    point.

24         THE COURT:  Okay.  Well, the agenda is very fluid

25    because we --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. MINTZ:  I understand.

2          THE COURT:  -- it changes every five minutes.  Let's

3    defer it.

4          Ms. Winthrop, are you -- essentially, take your --

5    unmute and state your name.

6          MS. WINTHROP:  Rebecca Winthrop on behalf of the

7    Adventist Health claimants and we are on to echo Mr. Mintz'

8    request.

9          THE COURT:  But it's the same -- you're -- I mean,

10   obviously, you're coming from the same point about that.

11   Well --

12         MS. WINTHROP:  Yes, Your Honor.

13         THE COURT:  -- well, it seems to me that I need to

14   involve the counsel for the TCC and for the trustee on this, so

15   I don't even know if -- I know Mr. Julian, of course, was with

16   us for now.  I didn't -- I'm going to defer it.  I just don't

17   know when we're going to defer it so.  Why don't I urge you to

18   be in touch with both those counsel if you can and maybe we can

19   figure out a time to deal with it.  I don't know whether -- I

20   mean, I really am trying to avoid setting yet another hearing.

21   On the other hand, I can only take so many written briefs,

22   so --

23         MR. MINTZ:  Your Honor, we were prepared to do it on

24   arguments.  We're certainly happy to submit a writing if it

25   would be helpful to Your Honor, but the issues are fairly

escribers
(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    discrete, and we believe we could explain them to Your Honor in
2    a brief presentation.

3         But again, we're certainly happy to do it in writing
4    if that's Your Honor's --

5         THE COURT:  Okay.  Let's do this.  You two have been
6    very active.  Your fellow counsel who participated in the
7    motion, you know, three weeks -- or sharing the podium with
8    you -- but you two have been more active recently.  Why don't
9    you just file something later today if possible and make -- and
10   indicate -- well, I'll tell you what.  Go one step further.
11   Are you comfortable communicating with TCC and trustee's
12   counsel to sharpen the point so you could just have a joint
13   statement of what the issues are and then perhaps I could
14   prepare a little bit ahead of time and either set a separate
15   hearing later or not on -- just do something, but I need to get
16   focused on the issues.  So (indiscernible) --

17        MR. MINTZ:  Your Honor, we've been in regular touch
18   with the trustee and the TCC.  We spoke with them about an hour
19   before the hearing.  We certainly could undertake that effort.
20   We could also have them file the trust documents as they
21   currently stand and highlight the provisions at issue because
22   there have been other changes to the trust documents and it
23   would probably be appropriate to put everything in context
24   before --

25        THE COURT:  Well, it's appropriate, but it just adds

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    to my total overwhelming load of trying to read things, and so

2    if I get a hundred-page document and I have to read it to get

3    two paragraphs of what the issue are, it's just more difficult.

4    It's not that --

5              MR. MINTZ:  I understand.  We can frame this in a page

6    or two as to what the issues are.

7              THE COURT:  Yeah.  See if you can both do that.  If

8    you can't do it, I'll figure out a way to come back to it.  In

9    terms of where we're going from, in the bigger picture, I've

10   been working with my staff, and we're trying to put together a

11   written document that identifies the open issues that need me

12   to decide and perhaps just on another page identify the issues

13   that have been resolved so that, for example, when I go back to

14   the ruling that I made on the motion where you two were so

15   active, we -- I clearly made a decision on some and I left some

16   open.  So it's helpful to go back to, okay, what's open, what

17   are they going to -- what have they resolved on their own.

18   It's not that I don't care.  It's just that I can't absorb it

19   all.  So why don't you do that?  Let's see if you can put

20   together a brief statement that, I guess, the trustee's

21   counsel's the principal party here, but to the extent that the

22   TCC's counsel's involved, fine too.

23             Do what you can.  If it needs to get more fully dealt

24   with on the documents, I'm certainly not going to refuse the

25   offer.

(970) 324-6620 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      MR. MINTZ:  No, I think we'll be able to do that, Your

2 Honor.

3      THE COURT:  Okay.  Okay.

4      Ms. Winthrop?  That's okay?  All right.  Thank you

5 both.  I'm going to, again, move you both out for now.

6 Appreciate your effort.

7      MS. WINTHROP:  Thank Your Honor.

8      THE COURT:  Mr. Glassman, I thought -- well, okay.

9 You tell me why you're back here today.

10      MR. GLASSMAN:  Your Honor, it's on the 8.2(e) and

11 other issues that are of interest to the municipal objectors,

12 and we haven't spoken on that yet, so if this is the time -- if

13 you have other issues you want to deal with first, I'll wait,

14 but that's the reason.  It's to address the issues.

15      THE COURT:  Well, I don't see a hand raised at least

16 by anyone like Mr. Pascuzzi or Mr. Gorton.

17      MR. GLASSMAN:  I believe Mr. Gorton and Mr. Tredinnick

18 may want to speak after I speak depending upon what's covered.

19      THE COURT:  I see Mr. Gorton has now raised his hand.

20 Wait a minute.  Somebody has --

21      MR. GLASSMAN:  Based upon my --

22      THE COURT:  Somebody's talking to me for some reason.

23 I don't know why.  Okay.

24      Yeah.  Mr. Tredinnick and Mr. Gorton.  Okay.  I'll

25 come back to them.  I see that.

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      MR. GLASSMAN:  And you can bring them in at the same

2  time now, if that's fine too.

3      THE COURT:  Okay.  Ms. Parada, bring Mr. Gorton and

4  Mr. Tredinnick in please.

5      Mr. Gorton first and then Mr. Tredinnick --

6      MR. TREDINNICK:  Mr. Gorton has allowed me to make the

7  initial remarks.

8      THE COURT:  I just want them to state -- both of them

9  to state their appearances.  That's all.

10      MR. GORTON:  Thank you, Your Honor.  Mark Gorton of

11  Boutin Jones on behalf of the Northern California Power Agency,

12  the Transmission Agency of Northern California, Sonoma Clean

13  Power Authority, Valley Clean Energy Alliance, Redwood Coast

14  Energy Authority, and the city of Santa Clara doing business as

15  Silicon Valley Power.  We refer to this group as the municipal

16  objectors.

17      THE COURT:  Thank you.  Mr. Tredinnick?

18      MR. TREDINNICK:  Thank Your Honor.  Edward Tredinnick

19  of Greene Radovsky Malone and Share and on behalf of the city

20  and county of San Francisco.

21      THE COURT:  Okay.  One second.  Give me one second.

22  I'm trying to communicate with my staff at the same time.

23  Okay.  All right.

24      Mr. Glassman, you volunteered to be the (break in

25  audio) person, so you're up.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. GLASSMAN:  Yes.  Good morning, Your Honor.  Paul

2    Glassman of Stradling Yocca Carlson and Rauth for the South San

3    Joaquin Irrigation District.

4         Now some of the problematic plan discharge and release

5    provisions have been dealt with, like 10.3 and 6.1, but others

6    have not and I'd like to address the problems with 8.2(e) and

7    also 10.9(f), and I'm going to talk for a moment about our view

8    on assumption, and I'll come back and address a couple of

9    points addressed in your colloquy with Mr. Bray to explain how

10   it fits in with what I've said.  But give me a moment.

11        The statement in 8.2(e) -- I'm going to talk about

12   some of the specific language -- that assumption constitutes

13   satisfaction and release of claims and causes of action arising

14   under assumed executory contract.  It effectively makes the

15   provision a discharge and an improper one and 365 entitles the

16   debtor to the assumption of an executory contract if it agrees

17   to perform all of the obligations under the contract and cures

18   any defaults as a condition to assumption.  The section says

19   nothing about claims.  It only deals with contracts and

20   defaults under contracts, so it shouldn't discharge or even

21   affect claims unless they also happen to be defaults, and then

22   only to the extent they are cured.

23        And Section 365 certainly should not discharge causes

24   of action.  So the debtor should get what they are -- we

25   believe -- what they're entitled to under 365 and the language

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   in 8.2(e) would eviscerate the protections afforded to a

2   counterparty.

3        Now you're going to -- let me explain now -- in that

4   view, you would ask, what happens if an amount -- if there was

5   an amount that was not asserted as a -- if the -- a

6   counterparty did not assert -- if it wasn't discharged and then

7   there was an amount that they did not raise, what would happen

8   to it.  And you said -- the -- you suggested, Your Honor, that

9   it's really not a discharge issue perhaps, but a -- and I

10  think -- an estoppel issue.  So it would be taken care of

11  because when a contract is assumed, we move from the world of

12  bankruptcy law and claims into contracts and state law and

13  defaults, and so there would be a -- if there was an attempt to

14  assert that default later, it could be the -- the debtors could

15  assert a waiver estoppel and that that could not be permitted.

16       But the problem with the treating -- the not

17  treating -- I'm -- excuse me.  The problem here in dealing with

18  the claims issues is that the debtors take the position that --

19  because the contracts have these provisions in them that the

20  claim arises at the time of the contract and it's a pre-

21  petition claim discharged under 502(e) and that that -- but

22  that would mean that post-assumption -- that post-assumption

23  that the counterparty could not assert a right to payment, but

24  we've all agreed that it should.  The way to fix that from a

25  conceptual standpoint is to take the -- is to eliminate the

PG&E Corporation and Pacific Gas and Electric Company

1  claims upon assumption, and then you've moved into the area of

2  assumption because there's a very big difference between the

3  way these obligations are treated under state law and under an

4  assumed contract and claims in bankruptcy.

5       The indemnity and contribution obligations are a claim

6  in bankruptcy that the debtors say could be discharged, but

7  what -- upon assumption, they become part of the contract, and

8  then it's clear that if there's a triggering event later, that

9  obligation can be enforced by the counterparty, and I believe

10 that's the way it should work.

11      THE COURT:  Well, okay --

12      MR. GLASSMAN:  If the triggering event occurred first

13 before bankruptcy, it would part of cure.

14      THE COURT:  Well, Mr. Glassman, suppose after

15 assumption, some events occur that give rise to an indemnity

16 claim.  Wouldn't that be assertible against the company?

17 Against PG&E?  If some event occurs after PG&E assumes the

18 contract --

19      MR. GLASSMAN:  Well --

20      THE COURT:  -- (break in audio) it didn't even exist.

21 If the facts didn't even exist, but whatever facts would give

22 rise to an assertion of indemnity, why wouldn't -- who says

23 they would be freed of that?

24      MR. GLASSMAN:  Well, herein lies the rub, Your Honor.

25 It's because it's -- you're right.  They should be able to, but

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    as Mr. Schiff averted (sic) to, the problem is that the debtors

2    take the position that if indemnity and contribution of a

3    contractual nature is treated as a claim, as soon as the

4    contract is executed, the possibility of -- that there could be

5    a later event is in fair contemplation, and therefore, it

6    should be discharged.

7           Their position, as I understand it, is that because

8    it's a contractual indemnity and contribution obligation that

9    are under the contract, it should be discharged, and this is a

10   difference between the way contracts -- assumed contracts --

11   would be treated, and the way indemnity and contribution claims

12   under a contract would be treated if, say, there was no

13   assumption.  There was a rejection.

14          THE COURT:  Okay.  I --

15          MR. GLASSMAN:  You know, they say -- the debtors would

16   say they were cut off -- they would be cut off and they

17   couldn't be asserted is (break in audio) -- that's the issue.

18   If the -- if we all agree that they can be asserted pre-

19   petition when the event occurs on a contract, then I think that

20   would solve a lot of the problems.

21          THE COURT:  Well, let me rephrase my question.  To

22   hear you argue it, you're suggesting that if you look at the

23   document, the contract that exists between the company and your

24   client, then Mr. Karotkin wants to just tear out and strike

25   from the document an indemnity provision that hasn't even been

          PG&E Corporation and Pacific Gas and Electric Company

1    triggered.

2          MR. GLASSMAN:  That's exactly right.

3          THE COURT:  Yeah.  But I don't hear him making that

4    argument.  And what I'm hearing him say if a claim existed

5    or -- you distinguish between claim and cause of action.  To

6    me, a cause of action is a claim.  If a claim exists pre-

7    petition, it's the counterparty's responsibility to assert it,

8    and much like my hypothetical with Mr. Bray, if there's a

9    dollar amount that isn't asserted, it's lost.  Whether it's

10   discharged as a bankruptcy or a state law matter, I'm not going

11   to worry about.  The utility -- or the company has no post-

12   petition liability for what couldn't have been asserted pre-

13   petition.  But if the contract is still in existence and events

14   happen in the future, post-petition, and then the counterparty

15   has a right of indemnity, I don't believe that I'm hearing the

16   debtor say that that's gone.

17         MR. GLASSMAN:  We could ask Mr. Karotkin that right

18   now.

19         THE COURT:  No, well --

20         MR. GLASSMAN:  At the moment.  If you would like.

21   Because everybody on this side of the table believes that's

22   what's being argued and that's part of the --

23         THE COURT:  Mr. Karotkin, that's a yes or no question.

24   Is the indemnity obligation gone for events that occur post-

25   assumption?

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. KAROTKIN:  Your Honor, I think you put your finger

2  on it, like, a number of times.  The issue is -- and it has to

3  be determined in the context of an actual claim that arises.

4  You can't address it in a vacuum.  You have to look at the

5  claim and make a determination.  As you said, did the claim

6  exist prior to the time the cure had to be made -- the demand

7  for the cure had to be made.  It takes into account the fair

8  contemplation.  It takes into account those issues.  You can't

9  have a blanket response.

10    I will tell you, if every single possible event

11  happened post-assumption -- every single possible event -- you

12  know, maybe under the -- probably under those circumstances, it

13  would survive.  But again, you have to look at each claim --

14  one thing's become perfectly clear from all of this discussion

15  is that to make a blanket rule on any of these things doesn't

16  make any sense.  But what does make sense is if and when these

17  claims -- and I'll argue this later -- if and when these claims

18  ever arise -- and they may never arise -- then, Your Honor, you

19  can look at them in the context of the facts and circumstances

20  before you.  And then make a determination, should they have

21  been asserted in connection with your -- should they not have

22  been asserted?  Does 502(e) apply?  Does it not apply?  But to

23  make blanket rulings that, you know, everyone seems to be

24  arguing, is not appropriate.

25    MR. GLASSMAN:  Mr. Karotkin -- if I may ask Mr.

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Karotkin a question.  So you are not arguing that under

2    bankruptcy law, a -- that where there's a contractual indemnity

3    that the claim arises at the time the contract was executed and

4    therefore is a pre-petition claim in bankruptcy.

5            MR. KAROTKIN:  I think I said what I --

6            MR. GLASSMAN:  It's just a simple question.

7            MR. KAROTKIN:  These are --

8            THE COURT:  Mr. Glassman --

9            MR. KAROTKIN:  I think I made quite clear my position.

10           THE COURT:  Mr. Glassman, I'll put it a different way.

11           If there's a writing called a contract and that

12   contract is between PG&E on the one hand and your client on the

13   other and there's an assumption of that contract, Mr. Karotkin

14   doesn't get to take his scissors and slice off out of the

15   document the indemnity clause.  What he does get to do, if some

16   day in the future something happens and you assert an

17   indemnity, he can go back and say, hey, guess what, you should

18   have raised that before bankruptcy.  And I believe if you could

19   have raised it or it was contemplatable -- if -- to put it in

20   bankruptcy words, if it existed as a claim -- not that it

21   exists as a contractual term, but did a right of action

22   exist -- he will probably win that argument, and if he can't

23   make that argument, you will win the argument.  And it's that

24   simple.  It's as though the contract gets rebooted on the

25   petition date or the effective day, rather, and anything that

(973) 406-2250    operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    existed before should have been asserted. If it couldn't have

2    been asserted because there's no claim, then it didn't need to

3    be asserted, and that -- I'm almost telling you, that's how I

4    would interpret the statute and rule -- or not statute. Excuse

5    me. That's how I would apply this principle, and to the extent

6    that Mr. Gorton or you or Tredinnick or Pascuzzi thinks that

7    somehow Mr. Karotkin has pulled a fast one and he gets a

8    blanket release of anything that happens in the future, he will

9    not. And I don't think he's even asking to. It's fact-driven,

10   and if the contract sat there on the shelf for five years and

11   nobody even had anything come up but something came up on the

12   morning after the effective date, you're protected. They're on

13   the hook.

14        MR. GLASSMAN: That helps quite a bit, Your Honor.

15   And we hope the language in the -- the final language will

16   reflect that.

17        Let me move onto another issue you just raised that

18   the cause of action is a claim, and unfortunately, it's not the

19   case because cause of action -- and you were maybe talking

20   about generic action --

21        THE COURT: The bankruptcy definition of claim in this

22   document. See? That's by Bankruptcy Code.

23        MR. GLASSMAN: Okay. Yes. And -- but cause of

24   actions are also cut off in 502(e) -- I'm sorry -- are cut off

25   in 8.2(e) and cause of action has a very broad definition. I

(970) 212-0820 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   lost the Court.  Excuse me.

2            THE COURT:  What?  I'm sorry.  What?

3            MR. GLASSMAN:  I lost you -- your screen.  So the

4   cause of action has a very broad definition, way beyond the

5   common understanding of cause of action and it cuts off all of

6   these matters that are not even claims, like, before the other

7   day I was talking about powers of eminent domain -- has powers,

8   everything, and so these -- we're talking about whether claims

9   could be cut off and questioned, but certainly things that are

10  not claims should be cut off and cause of action has no

11  business in this language and that's the point because it

12  includes a multitude of matters that cannot be impacted by a

13  plan.  And I invite the Court to look at the definition of

14  cause of action.  I don't want to take the Court's time because

15  many parties have argued it, but it goes on for half a page and

16  it includes things like rights, powers, privileges, franchises,

17  unknown claims and so forth.

18           THE COURT:  Well, what are you --

19           MR. GLASSMAN:  (Indiscernible) and et cetera.

20           THE COURT:  Mr. Glassman, what are you reading?  Are

21  you reading the plan or the code?

22           MR. GLASSMAN:  Oh no.  I was just reading the

23  definition of -- I was flipping to the definition of causes of

24  action in 1.21 of the plan, if you were --

25           THE COURT:  Look at 1.015 of the Bankruptcy Code.

(973) operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  Doesn't that include cause of action?  It may not use the

2  words, but it -- doesn't --

3              MR. GLASSMAN:  Claim is liability on a claim.  Right

4  to payment.

5              THE COURT:  Yeah, but not a (break in audio).

6              MR. GLASSMAN:  This is (break in audio), but I invite

7  the Court to look at the definition in 1.21 is -- it would

8  include, for example, the -- we were -- as we were arguing, it

9  would include powers of -- it might include powers of eminent

10  domain.  It includes many items that would not constitute -- I

11  would argue would not constitute claims under the Bankruptcy

12  Code and --

13              THE COURT:  Okay.  Mr. Karotkin --

14              MR. GLASSMAN:  -- has no business in a discharge.

15              THE COURT:  Mr. Karotkin told us the other day that

16  eminent domain got solved.  I thought that's a nonissue now.

17  Isn't that right, Mr. --

18              MR. GLASSMAN:  Well, yeah.

19              THE COURT:  Eminent domain is no longer an issue,

20  right?

21              MR. KAROTKIN:  Yes, sir.  In fact, it's in 1.13 at Mr.

22  Glassman's request.  I mean, I have to tell you his appetite is

23  insatiable for changes to the plan.  We've covered his

24  legitimate arguments.

25              THE COURT:  Okay.  Don't --

(973)406-2250 | operations@escribers.net | www.escribers.net
of 226

PG&E Corporation and Pacific Gas and Electric Company

1    MR. GLASSMAN:  Well, with all due respect to Mr.

2  Karotkin, I'm going to talk about all the different provisions

3  we'd thought we'd addressed, like in 10.3, and you've got the

4  same -- it's like whack a mole -- the same release provisions

5  keep cropping up throughout the plan, so --

6    THE COURT:  Okay.

7    MR. GLASSMAN:  May I continue?

8    THE COURT:  Time out.  Time out one second.  You can

9  continue, but we've been going for two hours.  I'm tired, and I

10  want to take a midday break.  I've also got some technical

11  advice over the weekend that maybe my computer and maybe some

12  of yours needs to take a break after a while and that that's

13  causing some of these hang-ups.  I don't know if that's true or

14  not, but it may be a function of the process of speed or the

15  RAM or something.  I don't understand the technical of it, but

16  I'd like to ask all three of you gentleman how much time you

17  think you need to make your comments.

18    Mr. Glassman, how much time do you need -- more do

19  you --

20    MR. GLASSMAN:  I would say maybe ten minutes.

21    THE COURT:  Mr. Tredinnick and Gorton?  Are you

22  letting him take the lead on this?

23    MR. GORTON:  I'd -- sorry, Mr. Tredinnick.  I'd like

24  to have about two minutes, Your Honor, just to wrap.

25    THE COURT:  Mr. Tredinnick, the same?

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. TREDINNICK:  Your Honor, yeah.  Two minutes --

2    THE COURT:  Okay.

3    MR. TREDINNICK:  -- at the most.

4    THE COURT:  I'm not going to -- all right.  I'm going

5    to take 10 plus 2 plus 2 equals 20.  My math.  And I'll try not

6    to ask any more questions and I'll ask Mr. Karotkin not to also

7    unless he wants to or I want to.  And then we're going to take

8    a midday break.

9    Go ahead, Mr. Glassman.

10   MR. GLASSMAN:  So I -- on -- just to wrap up on the

11   cause of action, I would ask the Court to review 1.21 and also

12   in our papers, we got through all of the -- list a lot of the

13   items that we believe should not be in there because they're

14   not quite -- and so that's why ask that that language be

15   deleted because it's a defined term that is extremely broad and

16   it goes well beyond anything that properly be discharged in the

17   plan.

18   And so in addition to the problems with the language

19   in 8.2(e) -- of course, the plan supplement also has language

20   that would eliminate the debtor's indemnity and contribution

21   rights while allowing -- while requiring the counterparty to

22   perform and we believe -- let me just ask.  If the Court -- the

23   Court indicated it wanted to take its break.  I'm happy to take

24   the break now and finish up afterwards and I'll make it even

25   shorter.

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  No.  I want to take a break --

2          MR. GLASSMAN:  Okay.

3          THE COURT:  We -- wait.  Somebody's got a phone

4     ringing.

5          MR. GLASSMAN:  That's my phone.  I apologize, Your

6     Honor.  That's --

7          THE COURT:  Can you turn --

8          MR. GLASSMAN:  -- it's the barking dog and the ringing

9     the phone.

10         THE COURT:  Okay, while we're waiting for Mr.

11    Glassman's phone to stop ringing, I'm going to -- I've got a

12    signal from my office that Mr. McKane from Calpine wanted to be

13    heard also, and I think that's related to this, so as soon --

14    Mr. McKane, if you can hear me, when Mr. Glassman and Gorton

15    and Tredinnick finish, I will bring you in and you'll be the

16    final speaker for -- till the midday break.

17         So go ahead and finish, Mr. Glassman.

18         MR. GLASSMAN:  Your Honor, so if the indemnification

19    and contribution obligations in the plan were excised, then

20    that would be an unfair burden on the counterparty, such as my

21    client has numerous contracts with PG&E including

22    interconnection agreements and easements and all of that as

23    described in the declarations and exhibits that we submitted.

24         Now --

25         THE COURT:  Okay.  For what it's worth, and you know,

(973) 406-2250    operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    this isn't a final ruling, but you can take to the bank my

2    interpretation of the law here.  When a debtor assumes a

3    contract, the contract is still in place -- if the debtor gets

4    freed of is things that could have been translated into claims

5    as defined in the Bankruptcy Code that existed at least pre-

6    petition.  I won't get into a speculation about the window

7    between petition date and effective date.  I don't know that we

8    have to worry about that today.

9         And therefore, when you have something like an eminent

10   domain entitlement that isn't affected, if you have a cause of

11   action for eminent domain and you didn't assert it, then maybe

12   that would be a different result.  And the same is true with

13   all these other things.

14        So that's just my interpretation.  I will go back and

15   review the provisions that you've cited me to, Mr. Glassman,

16   that I don't believe that I would tolerate and frankly, I don't

17   think the debtor is trying to cut out portions of a contractual

18   relationship that it likes -- that it doesn't like and leave

19   the good things in there.  But I think it is entitled to get

20   the benefit of -- be sappy and call it the fresh start, be

21   legal and call it the DIPs charge, be technical and call it the

22   ability to assume a contract and put the burden on the

23   counterparty to claim or cry foul or claim -- assert a claim if

24   there's something that should be part of the cure.

25        It's a little tougher question when it's noncurable.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   I think I put to one of the counsel earlier in the hearing last

2   week about a landlord who (break in audio) for something that's

3   happened in the past that's not curable.  That's a different

4   issue.  Go ahead.

5           MR. GLASSMAN:  Thank you, Your Honor.  So I want to

6   turn now to Section 10.9(f), where the cause of action language

7   is also in that provision.  That's an injunction provision,

8   Your Honor.  And so my comments about the objectionable --

9   objections to cause of action would also apply to 10.9, which

10  also lists -- not only does it say cause of action, but it

11  lists a lot of the terms in the provision.  This is 10.9(f).

12          But another problem with this section is that -- this

13  injunction section, it says that the confirmation order enjoins

14  the commencement or prosecution by any person or entity of any

15  claims and causes of actions that are released or extirpated.

16          So the scope of the injunction, which applies to any

17  party or entity, is broader than the scope of plan releases

18  that apply only to releasing parties, for example, in the

19  10.9 -- the opt-in release.  So creditors who did not even opt

20  into the plan release would be swept within the language in

21  10.9(f).  So I believe this provision, if it was not intended

22  that way, it should be clarified so that a party who was -- is

23  not enjoined, who wasn't -- who hadn't -- wasn't part of the

24  release, is now somehow enjoined because of the -- the language

25  doesn't match up.

(9 7 7) 2 2 6   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      It's similar to the problem that was raised on 10.9(e)

2  by the I think the state agencies, where I think the language

3  in one section doesn't match -- or the plan doesn't match up

4  with another section.  And so the injunction is broader -- is

5  supposed to be intended to deal with releases, but the language

6  is broader.  It includes more parties, such as our -- my

7  client.

8      THE COURT:  Okay, got it.

9      MR. GLASSMAN:  And that's why (indiscernible).

10      THE COURT:  Thank you.

11      MR. GLASSMAN:  And we can submit -- okay.

12      Then that is -- given the Court's comments on the

13  cause of action, I'll wrap up before I close on the --

14  regarding the evidentiary objections raised by the debtors to

15  our exhibits and declarations, I want to say that they're

16  clearly relevant because they contain factual information

17  regarding the pending legal actions and underlying

18  administrative procedures to show there was a real controversy

19  as to whether the plan applied to them.

20      We've talked about them, so I want the record to be

21  clear on those claims.  And the exhibits and the request for

22  judicial notice or public records.  They're not hearsay.  The

23  declarations simply describe and authenticate them and provide

24  helpful context.  And the declarations are also relevant on the

25  executory contract issues that we've discussed.  So I would ask

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  that the objections be overruled and the exhibits be admitted

2  into evidence.

3          And I can give you the numbers of -- the docket

4  numbers if you would like --

5          THE COURT:  You don't need to.  You don't need to.

6  I'm aware of them.

7          MR. GLASSMAN:  Okay.  And that -- that's -- then I'm

8  done, Your Honor.

9          THE COURT:  All right, thank you Mr. Glassman.

10         Mr. Gorton?

11         MR. GORTON:  Thank you.  Thank you, Your Honor.

12  Appreciate the opportunity to close, if you will.

13         The municipal objectors have multiple contracts with

14  PG&E related to highly regulated and complex (break in audio).

15  Their objections have not been designed to impede the recovery

16  by the nonconsensual wildfire victims, but are intended to

17  protect the municipal objectors and their long-term

18  relationships from being subjected to the preclusive effect of

19  a confirmed plan that includes provisions exceeding what is

20  authorized under the code concerning discharge, release and

21  interpretation.

22         To a large extent, those objections and those of the

23  federal and state agencies and our local government allies,

24  city of -- county of San Francisco, the South San Joaquin

25  Irrigation District, the city of American Canyon, and the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  Feather River Water District have been successful in prompting

2  the proponents in the necessary plan amendments, subject to, of

3  course, these final arguments that Mr. Bray, Mr. Pascuzzi, Mr.

4  Troy, and Mr. Glassman, perhaps Mr. Tredinnick have that need

5  to be resolved.

6  With regard to the specific and separate supplemental

7  objections by the city of Santa Clara concerning its Grizzly

8  hydroelectric plant, PG&E has advised us that the FERC-approved

9  agreement is not an executory contract, which we have a

10  difficult time understanding.  But we are working with PG&E now

11  (indiscernible) the mechanism for resolving those issues and

12  our objection in that regard, for the specific objection for

13  the city of Santa Clara is not an impediment to confirmation.

14  In conclusion --

15  THE COURT:  And I take it as any objection by Santa

16  Clara is simply treated as withdrawn?

17  MR. GORTON:  With regard to that supplemental

18  objection about the treatment of the executory contract and the

19  deletion from the schedule.

20  THE COURT:  Okay, okay.

21  MR. GORTON:  We're looking at that and it's not an

22  impediment to confirmation.

23  THE COURT:  Okay.

24  MR. GORTON:  In conclusion, Your Honor, the classes of

25  wildfire victims who have accepted this plan deserve their

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1     compensation.  And all creditors, including the municipal

2     objectors and their allies, deserve a plan that affects them no

3     more than the law allows.  Thank you.

4              THE COURT:  Thank you, Mr. Gorton.

5              Wait one second Mr. Tredinnick.  I've got to look at a

6     message here.

7              Okay, Mr. Tredinnick?

8              MR. TREDINNICK:  Thank you, Your Honor.  On behalf of

9     the city and county of San Francisco, I -- which has many

10    relationships with PG&E, including many indemnity and

11    contribution issues, I just want to mirror the comments that

12    have been made today.  I'm not going to go into and repeat

13    them.  They've been made on several occasions.

14             We also believe that the provisions of 8.2(e) that

15    were detailed by Mr. Pascuzzi and Mr. Troy last week were well-

16    taken and we would encourage the Court to take a look at those,

17    as far as resolving the issues that have been raised.

18             As to the other objections that we have -- that we had

19    raised, the remainder of those have been resolved by the

20    debtors through their amendments to the plan that were made

21    last week.  So the city would just submit its objections in

22    joining with the other parties that have raised the objections

23    to the indemnity contribution issues and the issues in 8.2(e).

24    And thank you, Your Honor, for your assistance in getting this

25    thing done.  Thank you.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Okay, thank you, Mr. Tredinnick.

2          MR. TREDINNICK:  Thank you.

3          THE COURT:  I'm going to let Mr. McKane come in.

4          Ms. Parada, would you please remove the other three

5     speakers?  I'm going to fix my robe here that's coming undone

6     here.

7          And so Mr. Glassman, thank you.

8          MR. GLASSMAN:  Thank you, Your Honor.

9          THE COURT:  Mr. Gorton, thank you.

10          Mr. McKane, would you please state your name for the

11    record?

12          MR. MCKANE:  I believe it's still morning, Your Honor.

13    Good morning, Mark McKane of Kirkland & Ellis for Calpine

14    Corporation.

15          THE COURT:  Okay.  You've been patient.  You're on.

16          MR. MCKANE:  Thank you, Your Honor.  And I recognize

17    that Calpine has not needed to rise much with regards to these

18    cases.  And that's in part because Calpine has worked very hard

19    with the debtors to have their contracts assumed.  Calpine has

20    dozens of contracts, our purchase agreements, and others with

21    PG&E.

22          We did file an objection, a limited objection, to the

23    plan at 7214.  I did file a notice of speaking attorneys at

24    7489.  I had asked for a few minutes.  And really, what this

25    comes down to is the issue that's been brewing today that we

PG&E Corporation and Pacific Gas and Electric Company

1  thought was resolved on Thursday, when we heard Mr. Karotkin

2  say on the record for assumed executory contracts, contribution

3  and indemnity claims will be assumed in their entirety.

4        And if that is the statement that goes into the plan

5  and the order, that is all the revisions that we think are

6  necessary.  We think some of the stuff in the plan and

7  specifically in the order would need to come out to give that

8  full effect.  And I'll file a --

9        THE COURT:  Mr. McKane, were you able to review what

10  was filed yesterday?

11        MR. MCKANE:  Your Honor, what I've seen -- I have

12  reviewed parts of what was done yesterday.  I think the

13  problems still arise in three areas.  8.2(e), which you've

14  already heard about.  And I actually think Mr. Troy was very

15  succinct about this in his argument on Thursday, where he

16  flagged that if 8.2(e) was limited to defaults, it would

17  address the issue that you have been raising in your

18  hypothetical.

19        All of your hypotheticals with regard to the exchange

20  with Mr. Bray about the thousand dollars, if we tied assumption

21  of contracts to defaults, capital D as used in the plan and as

22  used in the code, as opposed to bringing in the concept of

23  claims, that would be fine.  Because what's causing people

24  heartburn is this concept of does the scope of a claim include

25  a contingent claim such that there could be a situation where

PG&E Corporation and Pacific Gas and Electric Company

1  an indemnity is cut off before the underlying claim is

2  crystalized.

3      And this is not a hypothetical concern with regards to

4  Calpine, Your Honor.  And I will give you a very specific

5  example.  There are indemnity obligations with regards --

6  between Calpine and PG&E as it relates to transactions that

7  have occurred up in Sonoma and Lake County in the area of the

8  Kincade fire.

9      The Kincade fire in this case has been decided to ride

10 through.  And under no circumstance could there be a scenario

11 in which Calpine's contracts are assumed but somehow, under a

12 function of the plan, an indemnity right was being cut off

13 before the claims that are going to be adjudicated by victims

14 of the Kincade fire are resolved.  And that is a real issue

15 here, Your Honor.  This is not just a hypothetical concern.

16     THE COURT:  Well, Mr. McKane, I'm a great fan of

17 hypotheticals.  If the Kincade fire was caused by an individual

18 and that individual filed Chapter 7 today, would you have a

19 basis to assert that the claim was not-dischargeable?

20     Let's assume the underlying entitlement.  Let's say

21 the individual, you know, you could make a case for arson.

22 Would it be dischargeable or not?  In other words, didn't -- is

23 it something that was known or knowable, that the facts would

24 give you or the victim reason to believe it should assert a

25 claim?

(973)406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. MCKANE:  Your Honor, I --

2    THE COURT:  Excuse me, I misstated.  Forget

3 dischargeable or not.  Would you have a claim?  The individual

4 files Chapter 7 and the trustee has a small amount of money to

5 distribute.  Do you have a claim that you could assert in that

6 person's bankruptcy?

7    MR. MCKANE:  It's a challenging question, Your Honor,

8 because I don't think the work has been done by the

9 investigators and made public sufficient to know whether anyone

10 in Calpine's circumstance or PG&E's circumstance of any other

11 victims of that fire, whether there has been enough causation

12 determined as to what would happen.

13    I -- Calpine, because it is a careful corporation, may

14 file a protective claim, recognizing a Chapter 7 -- you know,

15 may not yield much recovery.  But we don't know enough about

16 that fire, because the investigations aren't done yet.  It

17 really comes down to the notice issues that you've been

18 flagging about before.  And your notice concern, Your Honor,

19 can be addressed in the concept of default, not in the concept

20 of claim.  And that's really --

21    THE COURT:  But that's not default.  But that's --

22 that's not a default.  In other words, I understand in my

23 hypothetical it's not a contractual relationship.  But the

24 point is, you know there was a fire.  You know that the

25 defendant may be culpable.  And you've got two choices:  file a

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    claim or not.

2         MR. MCKANE:  Right.  Here --

3         THE COURT:  And the safer thing is to file a claim,

4    because if --

5         MR. MCKANE:  And Your Honor, think about it here in

6    this scenario with Calpine?  With regards to the cure

7    obligations to PG&E, we may come forward and say to, as part of

8    our cure, what about Kincade?  How are we going to address

9    Kincade?  You've agreed to assume all of our contracts.  We've

10   put -- we've filed proofs of claim.  We've filed administrative

11   proofs of claim, or protective rights there.  How are you going

12   to treat us with regards to Kincade, because we do not know,

13   but we may suspect that you are the cause of that fire?

14        And in that scenario, what is PG&E going to do?  Are

15   we going to have a cure estimation proceeding to determine what

16   rights I may have that are contingent on an indemnity

17   obligation?  That can't be the law.  That's where the

18   intersection between an indemnity obligation and a 365 doesn't

19   match up with 502.

20        And what they're trying to hang their hat on, Your

21   Honor, is 502(e).  And there is no intersection between 365 and

22   502, other than in the rejection context.  It's only in 502(g),

23   in the rejection context that we get into the discussion of

24   what is a claim.  And that's ultimately the conflating of

25   principles that we have a concern with here.

PG&E Corporation and Pacific Gas and Electric Company

1        Their arguments that they want to make about notice

2   and curing and default, that all rests within -- they have all

3   their rights under 365.  There is no case law that we have been

4   able to find, that the UCC was able to find in their surreply

5   that connects 562(e) to an assumed contract.

6        And Your Honor, the only case law that we've been able

7   to identify says the exact opposite.  And that is the in re G-I

8   Holdings case from the bankruptcy court in New Jersey, 580 B.R.

9   388 at 420, 421.  And Your Honor, this was cited by the UCC in

10  their surreply.  We found the same case.  And in that scenario,

11  a debtor tried to do exactly what PG&E's trying to do here,

12  which is assume the contracts, but leave behind some kind of

13  contingent indemnity obligations.

14        The bankruptcy court punted it to a state court and

15  then the subsequent state court said absolutely not, that you

16  assume a contract as whole, as we all have learned in Noel

17  (phonetic).  And that when those indemnity obligations

18  crystalized post-effective date, because the debtor had assumed

19  the contract, even if there was some contingent obligation

20  prior, it crystalized post-petition and the debtor had an

21  obligation.  It could not rely on res judicata or collateral

22  estoppel from a confirmation order to cut off that right.  And

23  that is what we're saying here.

24        They've come forward with no law to support it.  502

25  doesn't work on its face and the only case law that we're aware

PG&E Corporation and Pacific Gas and Electric Company

1   of goes against that.  And so, what we're trying to say is rely

2   on 365.  Everyone's on notice on how to cure.  If there's an

3   argument down the road, maybe it comes back to Your Honor.  But

4   it's not a 502(e) issue.  There's no case law that supports it.

5   And I think Mr. Bray has a legitimate point and it actually

6   comes to a comment that you had said earlier today.  And I

7   think that -- excuse me, Mr. Karotkin said earlier today, which

8   is the plan's not the proper procedure to raise these issues.

9           As they crystalize, if they ever do crystalize, we --

10  the counterparty will work it out with the debtor.  And if they

11  can't work it out with the debtor, we're probably coming back

12  to Your Honor for an interpretation.  But the procedure that

13  they're putting forward is inappropriate.

14          THE COURT:  Okay.

15          MR. MCKANE:  And so with that, I have -- apologies,

16  Your Honor.

17          THE COURT:  I appreciate your comments, Mr. McKane.

18  That's (indiscernible).

19          MR. MCKANE:  Yes.  I would just have one thing, just

20  specifically with regards to -- I haven't seen Mr. Bray's

21  proposed corrections to the order, but I would say that the

22  easiest way to cut through this from a contract counterparties

23  perspective is to strike paragraph 37 of the proposed

24  confirmation order.  And then specifically, there is a section,

25  paragraph 43, with regards to energy procurement contracts.

(971) 224 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Calpine obviously is one of the major counterparties there.

2    And all you would need to do to make this absolutely clear

3    would be to add the word indemnity obligations in the second

4    sentence in front of setoff and recouping rights.

5            And that's it, Your Honor.  Those are all my remarks.

6    I thank you for your time.

7            THE COURT:  Thank you, Mr. McKane.  I appreciate it.

8    We're going to take you out of the panel right now.

9            Hold on one second, Mr. Karotkin.  I'm going to give

10   you a break, too.  All right.  Well, there are some names on

11   the hand raise that I don't recognize and I'm not going to

12   identify them today.  I'm going to stick with our plan and take

13   a mid-day break.

14           Mr. Karotkin, you and Mr. Johnston are next up, you

15   think?  Or do you anticipate anybody else that you know of once

16   we're here, because I don't -- oh, you know what, it looks like

17   I -- let me -- I do have a message to my clerk that a number of

18   people also want to be heard on this UCC issue from Mr. Lubic,

19   Mr. Winsberg, Newman.

20           How about you, have you heard from anybody, Mr.

21   Karotkin?

22           MR. KAROTKIN:  I received -- I think I received a copy

23   of the same email that Ms. Parada received on that and --

24           THE COURT:  Okay.

25           MR. KAROTKIN:  I believe they had sent us emails last

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  week about this, that they did want some time.

2  THE COURT: What -- but when -- what's -- let's hold

3  that for a moment. Am I correct, then, that you and Mr.

4  Johnston wanted essentially to make a closing argument for

5  matters --

6  MR. KAROTKIN: Yes, Mr. Johnston is going to address

7  the PERA, the response to the PERA objection. And I intended

8  to address the UCC and the other parties' objections, with

9  respect to the issue we're discussing now. And some of the

10  remaining objections, which I think are quite few, some of

11  which were raised in connection with the UCC, with respect to

12  certain progress of the proposed order, including 8.2(e) and

13  10. --

14  THE COURT: Yeah, one person that I was scheduled or

15  anticipating hearing from, who I don't know -- I don't know

16  where we are on that, maybe he's listening, but I'm drawing a

17  blank. The trustee -- the fire victim trustee's counsel. I

18  believe it's Mr. Molton (phonetic). Mr. Molton, if you're in

19  the audience, would you just raise your hand so I know that

20  you're out there hearing my comments?

21  Okay, well I don't see him at the moment. All right,

22  let me do this, I am going to take a break, but I'm going to

23  take a whole hour. How risky of me? Again, these are very

24  long days to keep track of everybody, so I'm going to resume at

25  1 o'clock San Francisco time.

(972) 221-0151 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    I'm going to do my best to hear from the small group

2    of people who have contacted my law clerk or my court deputy.

3    And Mr. McDonald, if you are interested in being heard, you

4    need to send an email to my courtroom deputy as to what it is

5    you wanted to be heard about in the next little while, because

6    I may choose not to call on you.

7    And I do see from my courtroom deputy Mr. Molton -- I

8    misspoke his name, Mr. Molton is in the audience.  Mr. Molton,

9    I don't see you raising your hand, but I'm assuming that it

10   would be helpful to have you speak.

11   So here's what I'm going to do.  Sometime before 1

12   o'clock I will review any requests that come in from other

13   persons, like the person I just named, to my courtroom deputy.

14   And I'll make a decision whether to call on that person or not.

15   My expectation -- well, then I will also look at the

16   parties who asked to be heard that I just named, Mr. Lubic and

17   the others, send Ms. Parada your estimated time request and I

18   will make my best judgment on it.

19   Mr. Karotkin, I'll assume you and Mr. Johnston will

20   come after I hear from those folks.  And if Mr. Molton wishes

21   to be heard, I'll probably take him ahead of you and Mr.

22   Johnston.  From my point of view, you and Mr. Johnston are the

23   closing act for today.  And --

24   MR. KAROTKIN:  Okay, so I just would note that for

25   purposes of my closing act, I believe Mr. Bennett and Mr.

                PG&E Corporation and Pacific Gas and Electric Company

1    Tsekerides would like to be added to the panel, as well.

2              THE COURT:  Okay.  Okay.  My guess is that we'll be

3    doing that somewhere around 1:30 our time.  I'm not going to

4    be -- it's simply not going to take a lot of time for the

5    people that want to get in.  But I am going to take the break

6    for what I said for a number of reasons.  So I will be on --

7    see you all back in the virtual courtroom at 1 o'clock San

8    Francisco time.

9              Thank you for your time.  Thank you to the staff.

10             MR. MCKANE:  Thank you, sir.

11             THE COURT:  All right.

12        (Recess from 12:00 p.m., until 1:00 p.m.)

13             THE CLERK:  Okay, we're recording now, Your Honor.

14             THE COURT:  All right.  We're resuming our hearing.

15   It's 1 o'clock San Francisco time.  A couple of announcements,

16   I'm going to call on the following speakers in order:  Mr. Hugh

17   McDonald, Mr. Lubic, Mr. Wersberg -- Wes -- Winsberg, excuse

18   me, and Mr. Heaton.  I'm going to expect that the four of you

19   can make your presentations in an aggregate of no more than

20   thirty minutes.  I just can't take more time than that.

21             Mr. Abrams has filed something and previously raised

22   his hand.  I am not going to be able to call on Mr. Abrams.  He

23   filed something in response to the debtors filing of the plan,

24   another version of the plan yesterday.  He can file whatever he

25   wants, but it's not an action item and I don't intend to call

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    on him.  I'm aware of the filing.

2         And Ms. McDonald, not Mr. McDonald, but Ms. McDonald

3    had previously filed something in the form of a request and she

4    wants information about Judge Donato and the hearing before

5    him.  I'm not going to call on Ms. McDonald.  I know nothing

6    about what's going on in Judge Donato's court.  And if she

7    wants to find out from others who are appearing in that court,

8    there are other attorneys who have filed things recently,

9    including Mr. Hallisey.  She might consider contacting them.

10   But there's nothing I can do to help her.

11        So with that, I'll bring Mr. McDonald in.

12        THE CLERK:  Your Honor, Sam Newman with McKinsey, Inc.

13   has also raised a hand.

14        THE COURT:  Mr. Newman was someone who had asked also.

15   So I'll call on him after Mr. Heaton.

16        So it's Hugh McDonald, Lubic, Winsberg, Heaton,

17   Newman.  And those are the last ones I'm going to call on.

18        And Mr. Molton, you previously notified my courtroom

19   deputy that you were satisfied with some information you heard

20   on the record with counsel for the other claimants.  You need

21   to raise your hand only if there's something you want to be

22   heard on today.  I've got the message about something you're

23   going to submit.  So if you take your hand down, I won't expect

24   you to give any other report.  I thought perhaps you would want

25   to do a status report.  Okay.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Ms. Parada, let's proceed.

2    THE CLERK:  One moment while I bring Mr. McDonald in.

3    THE COURT:  And Mr. McDonald, Mr. Lubic, Mr. Winsberg,

4  Mr. Heaton, Mr. Newman, I'll remind you each, too, when you are

5  on the screen and your mic is activated, then state your name

6  for the record.

7    Mr. McDonald, good afternoon.

8    MR. MCDONALD:  Can you hear me -- can you hear me,

9  Your Honor?

10    THE COURT:  I can.  So please state your name and

11  let's -- welcome.

12    MR. MCDONALD:  Thank you, Your Honor.  Hugh McDonald,

13  Troutman Sanders, here on behalf of Consolidated Edison

14  Development.  Thank you for the opportunity to briefly address

15  the Court on the issues that have been addressed by Mr. Bray

16  and Mr. McKane.

17    Your Honor, I rise because of concern and some of the

18  comments that have been made thus far in these discussions.

19  Consolidated Edison Development, through its affiliates, has

20  sixteen projects with PG&E and supplies 665 megawatts of

21  renewable energy to PG&E.  Con Edison is a counterparty to both

22  power purchase agreements and interconnection agreements with

23  PG&E.

24    It seems, Your Honor, we started this case with PPA

25  controversies and it looks like we potentially are ending this

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  case with PPA controversies.  And I don't want to go back over

2  the prior issues we dealt with at the very outset of this case.

3  What I would like to do is point out two points of concern that

4  we have with respect to the provisions related to the indemnity

5  and the assumption of executory contracts.

6          In particular, Your Honor, the interconnection

7  agreements that Con Ed and many of the other energy providers

8  are parties to -- with PG&E also involve the California ISO.

9  They are tripartite agreements.  And indeed, these agreements

10 are part of PG&E's approved (indiscernible).

11         In fact, the very indemnification provisions we are

12 discussing here have been approved specifically by FERC orders

13 for inclusion in both small and large generation

14 interconnection agreements.  Those are --

15         THE COURT:  All right.  Excuse me, they've been

16 approved by whom?

17         MR. MCDONALD:  FERC, Your Honor.

18         THE COURT:  Okay.

19         MR. MCDONALD:  In FERC orders 2003 and 2006.  I think

20 as Mr. Bray noted and cited to the Frontier Properties case,

21 the debtor can't cherry-pick the provisions it wants to assume

22 as part of the assumption of an agreement.  The agreement

23 itself must ride through the bankruptcy in effect and must be

24 performed in full, on a go-forward basis, as if the bankruptcy

25 didn't happen.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    By allowing PG&E to shed what would be a potential

2    unknown pre-petition indemnity claims through this process,

3    PG&E would be effectuating a nonconsensual modification both

4    its power purchase agreements and its interconnection

5    agreements.

6    Indeed, Your Honor, the CPUC approved the very PPAs

7    that we are dealing with.  And the interconnection agreements

8    are FERC jurisdictional contracts.  Unlike the assumption or

9    rejection issue we dealt with with Your Honor at the outset of

10   these proceedings, this is an attempt to modify a provision by

11   cutting off liability for potentially unknown conditions or

12   claims that may exist without having to go into a proper

13   regulatory proceeding.

14   As Your Honor is aware, the PUC has approved PG&E's

15   plan and it found that it complied with AB 1054's requirement

16   that the plan be consistent with California's renewable energy

17   goals.  And this was premised, Your Honor, on PG&E's assumption

18   of all of this renewable energy contract.  PG&E represented to

19   the PUC that it was, in fact, assuming all energy-related

20   contracts.  It did not differentiate on any of the provisions

21   or saying it was not going to perform all of its obligations

22   underneath those contracts.

23   The nonconsensual modification of a FERC or PUC

24   contract -- regulated contract -- requires their approval

25   before those modifications can be effective.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Did PG&E take any position before the

2    commission that's contrary or inconsistent with the position

3    that's -- you're arguing here?

4    MR. MCDONALD:  No, Your Honor.  The only position PG&E

5    took before the commission was that it was satisfying the AB

6    1054 requirement through the assumption of all of its renewable

7    energy contracts.  And yet, the plan itself states that they

8    are assuming that all the renewable energy contracts are deemed

9    assumed.

10    THE COURT:  Well, what I'm saying is did they make any

11    statement to CPUC that says we're assuming it, but we're

12    actually rejecting some of these indemnity provisions of the

13    contract?

14    MR. MCDONALD:  Your Honor, I listened to all of the

15    PUC proceedings and I never heard a statement to that effect

16    from PG&E to the commissioner.

17    THE COURT:  Okay.

18    MR. MCDONALD:  Your Honor, the (indiscernible) that

19    was advocated by Mr. McKane to paragraph 43 I think works.  By

20    including the indemnity provisions in that, it'll demonstrate

21    that PG&E is, in fact, not seeking to have a nonconsensual

22    modification of either a FERC or PUC jurisdictional contract.

23    Otherwise, Your Honor, the parties will have to seek some

24    determination from the appropriate regulatory authorities at

25    some point, seeking appropriate relief from Your Honor,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    obviously, first that the provisions of the plan in fact do not

2    effectuate a modification of those indemnity obligations.

3           Frankly, Your Honor, we don't know what claims exist.

4    But the purpose of the assumption, I think as you heard from

5    both Mr. Schiff and Mr. McKane and Mr. Bray, is that you don't

6    have to go out and hunt down and figure out every potential

7    contingent claim.

8           Once, and it is clear from the Frontier Properties

9    case, which is the leading precedent in the circuit, PG&E must

10   perform these PPAs and interconnection agreements as if this

11   bankruptcy never occurred.  In order to do so, they should not

12   be able to modify their indemnification obligations as part of

13   a plan.

14          THE COURT:  Mr. McDonald, hold that thought for a

15   minute.

16          Ms. Parada, bring Mr. Karotkin in.

17          Mr. Karotkin raised his hand.  Maybe he's going to

18   solve the problem for us, Mr. McDonald.  Stay tuned.

19          MR. KAROTKIN:  I'm sorry, Your Honor.  I raised my

20   hand because I was having a hard time getting in at the outset,

21   so I apologize.

22          THE COURT:  Actually, I -- it was my fault.  I told

23   Ms. Parada she didn't need to bring you in.  I didn't think you

24   wanted to be in.

25          MR. KAROTKIN:  Oh, okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Here you are.

2          MR. KAROTKIN:  Maybe I should leave.

3          THE COURT:  Well, do you want to respond to something

4    Mr. McDonald said?

5          MR. KAROTKIN:  I'm happy to respond.  I think that

6    first of all, a couple of things.  Number one, what Mr.

7    McDonald -- the last thing that Mr. McDonald said is actually

8    wrong and not the law.  And I think Your Honor, you stated that

9    quite clearly before.  You don't get a free pass.  You don't

10   get a free pass on an assumption.  And if there are cure

11   amounts that have to be asserted, they have to be asserted.  I

12   think that's clearly the law.  That was addressed in the Arriva

13   Pharmaceuticals case, in fact, coming out of your court, not

14   you, Your Honor, one of your colleagues.

15         And again, what Mr. McDonald is saying is the same

16   thing that everybody else is saying, that let's address these

17   claims if and when they arise in the context of the facts.  And

18   it may be that we have no dispute with Mr. McDonald.  It may be

19   that we have no dispute with Mr. Kane (sic).  It may be that

20   this will all just go away.

21         But what these people are asking for, and Mr. Bray is

22   asking for, is a blanket pass, a totally blanket pass for

23   everybody, that, with respect to an assumed executory contract,

24   you don't have to comply with -- what Your Honor said, that you

25   don't have to comply with the Arriva Pharmaceuticals case and

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    that everything passes through, no matter what.  Whether you

2    should've thought of it or not, it all passes through.  And

3    that's just not the law.

4         Let everybody -- if this -- again, if it ever happens,

5    we can address the claims when they arise.  But it's not

6    appropriate today for this court to say no matter what, people

7    get a free pass.  That's not the law.  If we don't have rights

8    under 502, we don't have rights.  But let's address it in the

9    context of a claim that actually arises if it ever arises.

10   That's what we're saying.

11        THE COURT:  Well, you're saying what you said before.

12   That's fine.

13        Mr. McDonald, do you want to add anything further?  I

14   mean, I think it -- it's the same --

15        MR. MCDONALD:  Yes, Your Honor.  Briefly, I understand

16   Mr. Karotkin's position.  We have two -- and I know Your Honor

17   has addressed and Mr. Karotkin has been addressing it.  There's

18   a difference between unknown claims or conditions that may

19   exist, for example, in one of the areas where there's an

20   interconnection situation versus a known-extent claim.

21        What Karotkin is talking about in the cure process are

22   extent-known claims.  What we are saying is to the extent there

23   are any conditions or any claims that are unknown to us, that

24   they can't possibly be resolved through the cure process.  How

25   do you estimate or deal with facts you don't even know exist?

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        THE COURT:  Okay, but it seems to be the flip side,

2   Mr. McDonald, is if there is a known claim, then you ought to

3   do something, agreed?

4        MR. MCDONALD:  And we have.  Yes, Your Honor.  We have

5   entered into an arrangement with the debtor.  We have

6   incorporated it into the confirmation order to work out our

7   differences and our claims through a process to get to the

8   right cure amount.

9        THE COURT:  Okay.

10       MR. MCDONALD:  Our problem is the modification and

11  cutoff of an indemnification claim, which is inconsistent with

12  the Frontier Properties case --

13       THE COURT:  Okay, I --

14       MR. MCDONALD:  -- but also inconsistent with FERC and

15  PUC jurisdictional requirements.

16       THE COURT:  Okay.  I got it.

17       MR. MCDONALD:  These are different contracts, Your

18  Honor, the bottom line, than what Mr. Karotkin may be trying to

19  address through this provision.  But if the plan contains, and

20  the confirmation order contains, a blanket provision

21  disallowing these claims, which it currently does -- which I

22  would also note is procedurally improper -- because there

23  hasn't been any claim allowance process at all.  It's just a

24  disallowance of these claims.  That is improper, Your Honor.

25       THE COURT:  Okay.  I got it.  Thank you, Mr. McDonald.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Thank you.

2              MR. MCDONALD:  Your Honor, thanks for the opportunity.

3              THE COURT:  Okay, thank you.

4              MR. MCDONALD:  Thank you.

5              THE COURT:  Ms. Parada, go ahead and -- now Mr.

6    Karotkin, if you want to stay on duty here, while the others

7    come in or -- I don't need to have you come back and forth on

8    the same argument.

9              MR. KAROTKIN:  I'm happy to stay in.

10             THE COURT:  Okay, thanks.

11             So we're going to go to Mr. Lubic next.

12             And Mr. Lubic, state your name for the record, please?

13             MR. LUBIC:  Very good, Your Honor.  Michael Lubic of K

14   and L Gates for CN Utility Consulting, Cupertino Electric, and

15   Wright Tree Service of the West.  And we're addressing the

16   objections that we filed as docket numbers 7330, 7333, and

17   7336.

18             THE COURT:  Okay.

19             MR. LUBIC:  So the Court knows that there's lots of

20   stuff that goes on behind the scenes.  And I just wanted to let

21   you know that there is a large group of vendors, probably about

22   twenty, that has been loosely coordinating with respect to

23   issues that are important to them.  And one of the salutary

24   effects of that is then you don't have twenty people asking to

25   speak on these issues.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    My clients are safety and reliability service

2  providers.  They provide critical services that keep the system

3  operating.  They're not large public companies with significant

4  resources and access to the capital markets.  Wright Tree

5  Service is an employee-owned company based in West Des Moines,

6  Iowa.  So we're a little different than some of the other

7  creditors and speakers in this case.

8    We thought that there was a settlement put on the

9  record last Thursday, which resolved all of our issues.  And we

10  waited patiently for language to be filed and language was not

11  filed.  And late yesterday, we were told that the committee and

12  the debtor couldn't reach an agreement.

13    This is very concerning to us, because the settlement

14  that was put on the record was very simple.  And the language

15  that could be used to address the settlement should be very

16  simple to draft.  You know, we think it could be a couple of

17  sentences that resolves all of these issues.

18    And I can tell you that these large vendor group,

19  having read the plan and having been told that we're

20  unimpaired, and on the other hand seeing lots and lots of

21  complicated provisions with complicated legalese, may have

22  created some ambiguities and some concerns.  And I'm not here

23  to argue about those provisions, but those provisions include

24  without limitation, because these are scattered throughout the

25  plan, 4.23, 8.2(e), 10.3, 10.6, 10.7, and buried in the 2,000-

PG&E Corporation and Pacific Gas and Electric Company

1   page plan, supplement in the -- what we call the cure notice,

2   various provisions, including paragraph 13.

3          There's just a lot of stuff there that smart lawyers

4   can use to make different arguments.  And this plan should not

5   be about who can squeeze their interpretation of what it was

6   meant to their best interest.  We need a plan that is clear and

7   unambiguous, and we don't want to spend a lot of time and money

8   and this Court's time fighting about what the plan says and

9   what it actually meant.  So --

10          THE COURT:  Did you see the plan from yesterday that

11   was filed?

12          MR. LUBIC:  I did, and I looked at the redline, and it

13   doesn't address any of these issues --

14          THE COURT:  Okay.

15          MR. LUBIC:  -- as far as language.

16          THE COURT:  Would you like to propose the two-sentence

17   fix and put something on the docket that Mr. Karotkin and I can

18   look at this evening or tomorrow?

19          MR. LUBIC:  What we would like to do is wait and see

20   what the committee files.  And if we can figure out a more

21   elegant way to say it, or if our issue is perhaps maybe

22   different, we will put something on the docket, and it will be

23   no more than two pages.

24          THE COURT:  Well, but make it -- I mean, you got to

25   act quickly.  We're moving on a very fast track here.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        MR. LUBIC:  Understood, Your Honor.

2        THE COURT:  Okay.

3        MR. LUBIC:  We will try and file something before

4  tomorrow morning.

5        THE COURT:  Okay, good.  Thank you very much, Mr.

6  Lubic.

7        MR. LUBIC:  So -- wait, but we have four issues --

8        THE COURT:  Okay.

9        MR. LUBIC:  -- that I just want to be clear about

10  because these are the things that the vendors believe we need

11  clarity on.

12        Number one, should not be controversial.  The

13  assignment of the claims to the TCC is subject to all defenses

14  and rights.  And the vendors, in defending those claims, can

15  raise any argument that they could have made against the

16  debtor.  That should not be controversial.  That should not be

17  complicated to draft.

18        Number two, the executory contracts are assumed

19  without modification.  We obviously need to deal with the cure

20  issue because, as the Court has pointed out in its

21  hypotheticals, if there is a default, and a creditor wants that

22  default cured, it needs to file something.  My clients filed

23  something.  I'm less concerned about that.  But the idea that

24  we can address these claims as they arise works fine, as long

25  as the debtor can't say, oh, but the plan actually changed

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    these things.

2           Number 3, claims not related to assumed contracts need

3    to be preserved and dealt with in the claim process.  Pretty

4    straightforward.  And number 4 --

5           THE COURT:  I mean, why do you even raise that?  I

6    mean, why is that even controversial?

7           MR. LUBIC:  We do not have transparency into why the

8    debtor and the committee could not agree on language to resolve

9    that issue.  And we do not understand why it is controversial.

10          THE COURT:  Well, I guess I'm -- hold on, there's an

11   airplane going by.  One second.  We actually have airplanes

12   flying today.

13          I guess I don't understand why it even is something

14   that needs to be dealt with.  I mean, if there's a claim that

15   hasn't been at all involved with an executory contract, it

16   seems to me that the consequences follow automatically.  You

17   file a claim, or you don't, right?

18          MR. LUBIC:  Well, yes, except for all of this language

19   in the plan that gives rise to arguments that maybe that's not

20   the case.  We just want clarity on the issue.

21          THE COURT:  Okay, that --

22          MR. LUBIC:  And the --

23          THE COURT:  -- that will be included in your two-

24   sentence fix, or --

25          MR. LUBIC:  Absolutely, absolutely.  My two sentences

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    are going to cover all four of these issues.

2         THE COURT:  You know, I took Latin in high school, and

3    the Latin scholars could make one sentence go for about four

4    pages.  So be careful.

5         MR. LUBIC:  There may be some numbered clauses in the

6    sentence.  But the sentence is going to start with,

7    notwithstanding anything to the contrary in the plan and the

8    confirmation order:  one, two, three, four.

9         The fourth issue is carving out from the definition of

10   fire claim, claims that vendors might have back against PG&E,

11   arising out of their relationship.  Because if you read through

12   the fire claim definition, it's arguably a fire claim, which

13   gets tryouts in the trust, which can't possibly be what anyone

14   wants.  But that definitely needs clarification.  So those are

15   our four issues, and we will -- unless we agree completely with

16   what the UCC files, we'll file some proposed language.

17        THE COURT:  Okay.  Thank you very much, Mr. Lubic.  I

18   appreciate your comments.  All right, we're going to take you

19   out of the hearing room now.  Thank you.

20        And we have Mr. Winsberg next, and then Mr. Heaton.

21        Mr. Winsberg, can you hear me?

22        MR. WINSBERG:  Yes.  Can you hear me, Your Honor?

23        THE COURT:  Yes, I can.  Please state your name for

24   the record.

25        MR. WINSBERG:  Thank you -- thank you, Your Honor.

(973) 406- operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   Harris Winsberg from Troutman Sanders on behalf of Osmose

2   Utilities Services.

3           Your Honor, thank you for the time today.  I'll be

4   brief.  Osmose, like several other parties that have spoken,

5   including Mr. Lubic, have been during contractor of PG&E and is

6   unimpaired under the plan.  I'm not going to repeat the

7   arguments on the executory contracts and indemnity and

8   contribution claims.  I think those have been already

9   articulated.  I would just urge Your Honor to look at 365 and

10  the use of the term "default" and not claim it's part of the

11  cure process.

12          Your Honor, Mr. Lubic, I echo his comments -- and I'll

13  just be brief on this -- that under the TCC trust, there'll be

14  a signed rights and causes of action being transferred to the

15  trust.  But the plan is unclear as to the preservation of

16  vendors' and contractors' ability to assert all rights and

17  defenses that they would have to any such litigation.

18          And while the debtor, in their brief, as Mr. Bray

19  talked about earlier today, mentioned that those rights were

20  being preserved -- and that can be found in their brief on

21  pages 63 and then 69 -- they didn't point to any provision in

22  the plan or confirmation order that reflects that.  And so now,

23  we're almost -- we're getting close to the end of confirmation,

24  and we're concerned that there needs to be specific language in

25  the confirmation or in the plan that whatever defenses and

PG&E Corporation and Pacific Gas and Electric Company

1   rights that people have, those right through against any claims

2   that may be brought by the trust.

3          And it's not simply an esoteric issue, Your Honor.

4   For example, in the TCC and the assigned rights and claims, one

5   of the new things -- and it's at docket number 7711-1 --

6   according to the --

7          THE COURT:  Say the number again, please?

8          MR. WINSBERG:  I'm sorry, Your Honor.  It's 7711-1.

9   One of the things that's added in there is potential claims for

10  fraudulent conveyance.  And so I don't understand how you could

11  have a claim for fraudulent conveyance with the solvent debtor;

12  but putting that aside, any defendant to a claim like that

13  would have a right to assert a claim under 502(h).  And of

14  course, if we're unimpaired, that 502(h) claim gets paid in

15  full.

16         What the plan and confirmation order don't provide --

17  we have no indication whatsoever whether those rights are being

18  impaired here.  So we're concerned, Your Honor, that -- we want

19  to make sure there's language that there's a level playing

20  field and that the defendants have a right, if there is a claim

21  brought, to assert their rights and defenses against that

22  litigation.

23         THE COURT:  I guess I'm -- of course, I can't keep up

24  with these moving targets, but how could there be elimination

25  of a right that could only exist if you turned over a transfer?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. WINSBERG:  I agree with you, Honor.  It's the

2  language in the plan.  As Mr. Lubic said, there's many

3  provisions in there.  And I would add to his provisions section

4  10(f) and 10(g) of the plan.  There's all these provisions in

5  there, when coupled together, you give rise to arguments and

6  careful lawyers making creative arguments that things are being

7  cut off.  And we don't think that should be -- that's

8  appropriate here.

9    So what we're asking for isn't -- we don't believe is

10  controversial.  But we've not seen any language from the debtor

11  or anybody else that would fix the issue.  And we heard Your

12  Honor speak to Mr. Lubic, and we will prepare -- we haven't

13  seen the UCC's language, but we will certainly prepare language

14  and work with others that we think could fix it.  We think it's

15  an easy fix.  But we just need to make sure those rights are

16  preserved.

17    THE COURT:  Okay.  Well, why don't you take Mr.

18  Lubic's suggestion -- I mean, do the same, which you've

19  virtually done.  Let's see what the UCC does first, and if not,

20  maybe you and Mr. Lubic can put your heads together and give me

21  three sentences to fix it.  I mean, I don't -- they seem like

22  nonissues to me, but I share your concern that we shouldn't

23  create unnecessary confusion downstream for future generations.

24    Okay, anything else?

25    MR. WINSBERG:  No, Your Honor.  Thank you for your

                PG&E Corporation and Pacific Gas and Electric Company

1    time today.

2              THE COURT:  Thank you for your time, Mr. Winsberg.

3    Have a good day.

4              MR. WINSBERG:  Thank you.  You too.

5              THE COURT:  All right, Ms. Parada, we're going to get

6    Mr. Heaton, I believe, and then Mr. Newman.

7              Good afternoon, Mr. Heaton.  Nice to see you.

8              MR. HEATON:  Good afternoon, Your Honor.  Nice to see

9    you.

10             Geoff Heaton, Duane Morris for Arbormetrics; Asplundh

11   Construction; Western Environmental Consultants; Utility Tree

12   Service; and Trees, LLC.

13             Your Honor, my comments fold into the colloquy that

14   you had with Mr. Lubic a few minutes ago.  Our clients filed

15   objections to assumptions of executory contracts, raising the

16   same indemnity and contribution issues that we've been

17   discussing today.  However, our clients noted in their

18   objections that in fact, there are no executory contracts.

19   They were all terminated pre-petition.  The debtors, in

20   response to our objections, agreed with us and said, yes, we've

21   reviewed the matter, and we agree, there are no executory

22   contracts.  These were all terminated pre-petition, which we

23   thought should resolve the matter.  However, in the debtor's

24   confirmation brief, in footnote 22 on page 68, they single out

25   our clients, and they say that, "upon further review, the

(972) operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    debtors have determined that they agree with these parties that

2    their contracts were previously terminated and are not

3    executory.  In any case, however, these indemnification rights

4    would be nullified subject to operation of the Code and state

5    law as described above."

6         And they have similar comments in the spreadsheet

7    summarizing plan objections that is attached to their

8    confirmation brief, which is docket number 7528.  So Your

9    Honor, the plan supplement provides that if a contract gets

10   assumed, the indemnification rights -- or indemnification

11   claims are disallowed.  However, this suggests to us that the

12   debtors are taking the position that even if you don't have any

13   executory contracts with the debtor, your indemnification

14   claims are still disallowed under the terms of the plan.

15        THE COURT:  But Mr. Heaton, wouldn't they be subject

16   to the discharge if the debtor confirms the plan?  1141, how

17   could that -- how could a claim that might have existed be

18   passed through?  It would be discharged, wouldn't it?  Wait,

19   now I can't hear you.

20        No.  Ms. Parada, can you hear Mr. Heaton?

21        MS. PARADA:  No, Your Honor.  I cannot hear Mr.

22   Heaton.

23        THE COURT:  Well, see, it's not my end, Mr. Heaton.

24   It's something at your end that's not -- why don't you click

25   your mute button and then unclick it now?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. HEATON:  Does that work, Your Honor?

2          THE COURT:  It worked.

3          MR. HEATON:  Okay, great.

4          THE COURT:  When in doubt, reboot.

5          But if there's a contract that is now -- the

6    counterparty says it's no longer executory, it's terminated; it

7    would seem to me that's a classic case where if there's some

8    right that your client has to assert, it should be the subject

9    of a proof of claim.  Am I missing something?

10         MR. HEATON:  No, you're not, Your Honor.  We have

11   filed proofs of claim for those indemnification rights --

12         THE COURT:  Okay.

13         MR. HEATON:  -- contractual and otherwise.  However,

14   this suggest to us that the debtors are saying, your proofs of

15   claim with be disallowed under the terms of the plan.

16         Now, this folds into what you discussed with Mr.

17   Lubic.  What's the issue here?  Well, we agree, but it suggests

18   to -- we don't want to be in a position where the debtors say,

19   well, look here, your proofs of claim are disallowed.

20         Last week, Mr. Karotkin, when describing the proposed

21   resolution with the OCC, I believe he said that they had agreed

22   to terms essentially if no contracts were being assumed, the

23   parties reserved all rights.  And I believe Mr. Lubic said

24   essentially the same thing in part 3 of what he discussed with

25   you.  And we agree with Mr. Lubic that that should be the case.

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   And so --

2          THE COURT:  Well, why wouldn't a fix be something as

3   simple as, a contract that was terminated pre-petition will be

4   the subject of the claims allowance process?  It's not deemed

5   allowed -- I mean disallowed, because that's of no meaning at

6   all.  If you file a claim, it's deemed allowed unless objected

7   to.

8          MR. HEATON:  Yeah, we agree totally, Your Honor.  We

9   just don't want to have someone pull an aha, gotcha after the

10  fact.

11         THE COURT:  Okay.

12         MR. HEATON:  This language that I quoted concerned us.

13  This folds into what Mr. Lubic said, and we agree with Mr.

14  Lubic's proposed language.

15         THE COURT:  Okay.  Well, Mr. Heaton, I don't want to

16  make this sound like we got to go back and forth every time Mr.

17  Karotkin wants to be heard.  My suggestion will be that if this

18  problem gets swept up in whatever the OCC works out, fine.  If

19  not, you can join forces with Mr. Lubic and get something that

20  just states the obvious.  It seems to me it states the law.

21  But I share with you, you shouldn't be confronted with a

22  contrary provision in a plan.  So --

23         MR. HEATON:  Thank you, Your Honor.

24         THE COURT:  -- I think you're in a good position to be

25  able to protect your clients' interests.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      Okay?  Anything further today?

2      MR. HEATON:  That's it.

3      THE COURT:  All right.

4      MR. HEATON:  Thank you very much, Your Honor.

5      THE COURT:  Thank you.  Thank you, Mr. Heaton.

6      And Mr. Newman will be the last person that's going to

7   speak on this issue.

8      Mr. Newman, we're bringing you into the room here, so

9   your hand goes down.  Mr. Newman, good afternoon.  Can you hear

10  me?

11     MR. NEWMAN:  I can, Your Honor.  Can you hear me?

12     THE COURT:  Yes.  Please state your name for the

13  record.

14     MR. NEWMAN:  Thank you, Your Honor.  Sam Newman

15  representing McKinsey & Company, regarding our objection filed

16  at docket 7334 and 7349.

17     THE COURT:  All right.

18     MR. NEWMAN:  Your Honor, I'll be brief as possible.  I

19  think the comments you made in the last colloquy clear up one

20  of our two issues with respect to the allowing process.  And

21  that is not your intention that anything in the plan would

22  affect the allowance of unsecured claims, whether for rejection

23  or otherwise, simply because they relate to indemnification or

24  contribution.  And that will be subject to a subsequent claims

25  allowance process with all rights reserved.  We thought that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    was the intention of the settlement on Friday, and we think

2    that that's the appropriate way to address any issues with

3    respect to our claim, given that our claim is to be treated as

4    unimpaired, as all unsecured creditors.

5           We would wait for the UCC's proposed language, and we

6    will cooperate with the other vendors, to the extent we think

7    additional --

8           THE COURT:  Okay.

9           MR. NEWMAN:  -- information is --

10          THE COURT:  Again, let me -- and let me use you --

11   your presence as a way just to address a comment to you, but

12   really to a number of other lawyers.  I rely on people giving

13   me the straight scoop, and when someone several days ago said,

14   we got that resolved, and a stipulation is stated in this kind

15   of a colloquy, I simply can't keep track of it.  So I'm

16   assuming it'll be memorialized in some fashion.  And you and

17   the other counsel who just spoke are the guardians when this

18   thing gets close to a final order.  But my expectation is --

19   and Mr. Karotkin and his side will memorialize, well, all of

20   these things that have been worked out in some global fashion

21   that's consistent with everybody's interest.

22          You had two points, though.  What was the other one?

23          MR. NEWMAN:  Yes, the other issue -- and I wasn't sure

24   if it was unclear in some of the comments and colloquies, but I

25   just wanted to make this clear for the record that our view is

PG&E Corporation and Pacific Gas and Electric Company

1    that with respect to the requirement to state your cure, under

2    365(a)(1) -- I'm sorry, (b)(1)(A) -- you have to, at the time

3    of assumption, cure default.  The debtor's obligation is to

4    cure defaults, not to cure all claims.  And the issue that I

5    think has been somewhat aggregated inappropriately is the

6    question of whether there's a default at the time or whether

7    you somehow have to state all potential claims that may flow

8    from the facts as they then exist.

9         So with the particular example of indemnification

10   claims, if there is no present default or failure to pay on

11   behalf of the debtor, then the default that needs to be cured

12   is zero, but that doesn't obviate the fact that under

13   355(b)(1)(c), the debtor still has to adequately assure that it

14   will make future performance if and when that performance is

15   due.

16        So in the example of the Montali-Karotkin lease, at

17   the July assumption date, one has to pay the June rent if it's

18   not been paid as a cure but doesn't have to pay the August

19   rent.

20        THE COURT:  Well, no.  But on the other hand, if

21   Mr. -- who should we have in bankruptcy?  I think we'll have

22   Mr. Bray in bankruptcy.  So if Mr. Bray says, I'm going to pay

23   my future obligations to Mr. Karotkin, and Montali, the

24   guarantor says, wait a minute.  There's no way you're going to

25   be able to do it.  Then you put in issue the ability to perform

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  in the future.  That's a defense that I think you have to

2  make -- or an objection you have to make for a contract being

3  assumed, don't you agree?

4      MR. NEWMAN:  I don't agree.  I think, Your Honor, that

5  if one wishes to object on the basis of whether or not the

6  debtor can adequately assure future performance, whether

7  they're able to perform, that's an objection that needs to be

8  made --

9      THE COURT:  Right.

10      MR. NEWMAN:  -- at the time.

11      THE COURT:  Right.

12      MR. NEWMAN:  And then all then-outstanding defaults

13  have to be cured.  So if you look at the example of the Arriva

14  Pharmaceutical case that Mr. Karotkin cites --

15      THE COURT:  I'm sorry, which case?  Which case?

16      MR. NEWMAN:  Arriva Pharmaceuticals.  That was the

17  case that Mr. Karotkin referred to earlier.

18      THE COURT:  Okay.  I don't know the case, but I

19  remember he said something.  But what about it?  I mean,

20  what --

21      MR. NEWMAN:  The point in that case is that the debtor

22  had breached the agreement.  In that case, it was an IP license

23  that had assigned certain intellectual property to itself in

24  violation of the license.  And the court determined that that

25  breach had occurred pre-assumption, and therefore, any cure

operations@escribers.net | www.escribers.net
(973)? -

PG&E Corporation and Pacific Gas and Electric Company

1    relating to that breach had to be asserted at the time.

2            THE COURT:  Right.

3            MR. NEWMAN:  And we agree with that.  My point is if

4    the conduct in question has not given rise to a default, there

5    is nothing in §365 that requires any particular provision to be

6    made for future performance.  Defaults that exist on the

7    assumption date have to be cured.  That's 365(b)(1)(A).  And

8    adequate assurance has to be made for future performance under

9    (b)(1)(C) if the debtor has made a prove-up already of their

10   ability to adequately assure future performance.  It's not a

11   question of whether or not they're willing to perform in the

12   future.  It's that they can.  And that's not what's at issue

13   here.  By pointing to the contract --

14           THE COURT:  But you still have to assert something if

15   you question the assuming debtor's ability to perform in the

16   future.

17           MR. NEWMAN:  That's correct.  However, all we have to

18   do is point at the contract to identify what the debtor's

19   obligations are.  And the debtor has already said that they

20   have adequately assured future performance.  And that's not in

21   dispute.  Their assurance of future performance is their

22   balance sheet and their business plan.  They intend to perform

23   their obligations prospectively.

24           THE COURT:  Well, what's a --

25           MR. NEWMAN:  This is --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  -- go ahead, you finish.  Finish your

2     point.

3          MR. NEWMAN:  -- this is a question of what's being

4     raised by the language in the supplement.  And when you talk

5     about an easy fix, there's really one line in the supplement

6     that puts this at issue today, where they say that any assumed

7     contract does not include indemnification provisions.  It

8     doesn't say that you have to cure or state the cure of

9     unperformed indemnification provisions.  And it doesn't say

10    that the debtor is not able to perform in the future its

11    assumption obligations.  All it says is that for no reason tied

12    to any case law, that those particular provisions, as you

13    discussed earlier, are sliced out with the scissors.  And

14    that's what we're arguing is inappropriate.

15         THE COURT:  So what's --

16         MR. NEWMAN:  We have to cure --

17         THE COURT:  -- the --

18         MR. NEWMAN:  -- defaults today --

19         THE COURT:  -- what paragraph --

20         MR. NEWMAN:  -- and the debtor's already -- sorry, go

21    ahead, Your Honor.

22         THE COURT:  -- what paragraph in the supplement --

23         MR. NEWMAN:  I believe it --

24         THE COURT:  -- where do I find --

25         MR. NEWMAN:  -- I believe paragraph 13.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  13.  Yeah, that's the -- I think 13's the

2  unlucky number.  That's been cited before.

3    So let's test it.  So if -- I'm going to go back

4  because leases are so easy.  So you're the landlord, and I'm

5  the tenant, and I owe you one month's rent, but I'm on shaky

6  ground.  And I make my motion to assume, and I say my cure is

7  one month's rent, and I know I can perform going forward.  Your

8  response is, no, your default is two month's rent, and you are

9  financially impaired, and you won't be able to perform going

10  forward.  You have to raise both of those issues, right?  And

11  if you understated your default or didn't state your challenge

12  to my ability to perform in the future, you would be stuck with

13  it, right?

14    MR. NEWMAN:  That is correct.  However, Your Honor,

15  under --

16    THE COURT:  But what if I said, and also, I'm going to

17  perform all my indemnity obligations?  Don't you --

18    MR. NEWMAN:  So --

19    THE COURT:  -- we'll have to put that at issue, too?

20    MR. NEWMAN:  -- so Your Honor, I don't think that I

21  have to put -- I don't have to copy into my (break in audio) --

22    THE COURT:  Sorry, you're -- I could hear you, and

23  then I lost you again.  Maybe it's my end.

24    MR. NEWMAN:  I don't think there's any case law to

25  suggest that I have to specifically put every provision of the

(973) 406-2250 operations@escribers.net | www.escribers.net

         PG&E Corporation and Pacific Gas and Electric Company

1    contract into my (indiscernible).

2            THE COURT:  Hold on, Mr. Newman.

3            Ms. Parada, are you hearing him clearly, or --

4            MS. PARADA:  No, he's cutting in and out.

5            THE COURT:  Yeah.

6            THE COURT:  You're the culprit --

7            MS. PARADA:  It's faint.

8            THE COURT:  -- again, Mr. Newman.  I'm not.  Your

9    voice is cutting in and out.  So just say it again, if you can.

10   Maybe you're moving away from the microphone.  I'm not sure.

11           MR. NEWMAN:  Sorry, I'll try.  Can you hear me now?

12           THE COURT:  Sort of.

13           MR. NEWMAN:  So my point is simply --

14           THE COURT:  Yeah, your voice comes in and comes out.

15   So I don't know whether it's your connection or your

16   microphone.  I don't want to lose the point, but --

17           Mr. Karotkin, are you having trouble hearing him also?

18           MR. KAROTKIN:  Yes, sir.

19           THE COURT:  Yeah, so it's coming from your end.  Well,

20   let's see.  Why don't you do what I did through the other

21   counsel?  Turn of your mute -- mute your microphone and then

22   unmute it, and see if that -- now unmute it.  Now say

23   something.

24           MR. NEWMAN:  Is that any better, Your Honor?

25           THE COURT:  Yeah.

PG&E Corporation and Pacific Gas and Electric Company

1    MR. NEWMAN:  (Indiscernible)?

2    THE COURT:  Sort of.

3    MR. NEWMAN:  I will conclude very briefly.

4    THE COURT:  No.

5    MR. NEWMAN:  (Indiscernible).

6    THE COURT:  No, it's not working.

7    MR. NEWMAN:  Give me one second, Your Honor.  I tried

8  to mute the video and the audio.

9    THE COURT:  No, it's the same.  It's the same, it's in

10  and out.  Let's --

11    MR. NEWMAN:  Is it any better if I'm audio only?

12    THE COURT:  No, it sounds like you're underwater.  Can

13  you hear me now, Mr. Newman?

14    MR. NEWMAN:  I can hear you, Your Honor.

15    THE COURT:  No, same problem.  Okay, turn your video

16  back on.  I'm afraid I can't just keep you on hold here.

17    MR. NEWMAN:  No, I understand, Your Honor.

18    THE COURT:  Why don't you see if you can succinctly

19  restate it in the form that you're trying to make and put

20  something on the docket?  I'll do my best to review it.  I

21  mean, I want to get the point.  I don't -- and you know, I

22  can -- unfortunately, we just don't have the luxury of

23  continuing this hearing any longer.  Try one more time.  Let's

24  see what happens.

25    MR. NEWMAN:  Okay.  So my only point, Your Honor, was

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    that we don't have to put every aspect of the contract in our

2    adequate assurance objection.  The debtor is assuring us that

3    they can perform all aspects of the contract, and that is not

4    at issue.  And all we should have to put out today is our

5    objections to the cure amount, which has been done.  And

6    nothing in the plan should impose a higher standard.

7           THE COURT:  Okay, I got it.

8           MR. KAROTKIN:  Your Honor?

9           THE COURT:  Yes, sir?  Mr. Karotkin?

10          MR. KAROTKIN:  I thought I heard somebody say -- and I

11   didn't hear it clearly -- that -- maybe it was Mr. Newman --

12   that certain things have been worked out, and I'm not sure I

13   know what he was referring to.

14          MR. NEWMAN:  No, Your Honor, I don't think anything

15   has been worked out.  There was a proposed settlement discussed

16   on Friday that I think has not materialized.

17          MR. KAROTKIN:  Okay.

18          MR. NEWMAN:  We were simply trying --

19          MR. KAROTKIN:  Sorry to interrupt.

20          MR. NEWMAN:  -- no, we were simply trying to use that

21   as a framework to indicate what I think a fair result is, that

22   objections to claims should be reserved with all rights to a

23   subsequent proceeding.

24          MR. KAROTKIN:  Thank you.  I'm sorry to interrupt.

25          THE COURT:  Okay.  On that note --

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. NEWMAN:  So just concluding briefly, Your Honor,

2  as it appears that you can hear me a bit better, we think that

3  the cure amounts have been put at issue and have been stated.

4  And other than that, all of the obligations under the contract

5  should have to be performed in the future.  And that's the

6  point of what I think is the conflation of the two issues.  We

7  don't have to state today each specific provision of the

8  contract that needs to be reformed or the amount that we think

9  in the future they'll be unable to perform.  They have assured

10  us they can adequately perform their obligations under assumed

11  contracts, and they should have to do that.

12    THE COURT:  Okay, got it.  Thank you very much, Mr.

13  Newman.

14    MR. NEWMAN:  Thank you, Your Honor.  Sorry for the

15  technical difficulty.

16    THE COURT:  No, we got it straightened out.

17    Okay, one second, Mr. Karotkin.  All right, by my

18  calculation, we're down to -- well, Mr. Maltin (phonetic).  Mr.

19  Maltin did not re-raise his hand, so I'm assuming he doesn't

20  want to add anything at this point.

21    Mr. Maltin, I'll say once again, if you're out there,

22  and you want to weigh in, you're welcome.  Okay, you're not.

23    Mr. Karotkin, by my calculation, we're ready for Mr.

24  Bennett or Johnston, or both, and then you, right?

25    MR. KAROTKIN:  I think so, sir.  Yes, sir.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Okay.  Ms. Parada, let's bring Mr. Bennett

2     and Mr. Johnson in, and they can tell me how they want to

3     divide up their time.

4          I see Mr. Bennett.  Good afternoon, Mr. Bennett.

5     Unmute your microphone.

6          MR. BENNETT:  Good afternoon, Your Honor.

7          THE COURT:  You've got unmute yourself.  All right.

8     Would you state your name for the record.

9          MR. BENNETT:  Bruce Bennett, Jones Day, for plan

10    proponents.

11         THE COURT:  And Mr. Johnston, same?

12         MR. JOHNSTON:  Good afternoon, Your Honor.

13         Jim Johnston of Jones Day on behalf of the shareholder

14    proponents.

15         THE COURT:  Okay.  One second.  I'm going to turn your

16    volume up a little bit.  Wait a minute.  Not yet.

17         Okay.  Who is going first?

18         MR. JOHNSTON:  I think I have the honors, Your Honor.

19         THE COURT:  Okay.

20         MR. JOHNSTON:  And I'm going to tackle the response to

21    PERA, and the Class 10A-II claim.  And Your Honor, after what

22    you heard on Friday, which seems like a lot more than a few

23    days ago, but what Mr. Behlmann and Mr. Etkin said really needs

24    a great deal of correcting, so I'm going to try and do that in

25    my time here today.  And I'll start just by clearing out some

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    of the underbrush, starting with PERA's actual claim.

2         Mr. Behlmann conceded that PERA's latest proof of

3    claim, and the only one it filed in connection with the

4    extended bar date procedures that Your Honor specifically

5    crafted to address Class 10A-II, asserts a claim in the amount

6    of 119,134 dollars.  That claim was signed by an actual PERA

7    representative, and it liquidates the alleged damages to the

8    penny.

9         Mr. Behlmann's right that PERA's lawyers, I think his

10   firm, had filed a proof of claim more than six months earlier,

11   and that lawyer claim was marked unliquidated.  One would think

12   that the clients, PERA, knows its actual damages better than

13   its lawyers, and that PERA has now liquidated its claim in the

14   amount of 119,000 dollars, and so I think it's fair to assume

15   that the second claim signed by the client, and not the lawyer,

16   with a statement of liquidated damages supersedes the first.

17        THE COURT:  Can you give me the claim numbers?

18        MR. JOHNSTON:  Yes, the most -- the client claim, the

19   most -- the latest claim is proof of claim 101691.

20        THE COURT:  Okay.

21        MR. JOHNSTON:  The earlier claim asserted against PG&E

22   Corporation is proof of claim 71345, and there's an identical

23   claim to that one asserted against the utility at 69105.

24        THE COURT:  Okay.  And 101691, by PERA, who is that

25   asserted against?

(973) operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. JOHNSTON:  That is asserted against PG&E

2    Corporation.

3    Regardless of that, one thing we do know for sure is

4    that Mr. Behlmann's assertion of twenty-two some-odd million

5    dollars in PERA losses is unequivocally false.  Mr. Behlmann

6    cited the schedule attached to the earlier unliquidated lawyer

7    proof of claim which shows purchases of PG&E stock during the

8    class period in the neighborhood of twenty-two million dollars,

9    and he said voila, PERA has a twenty-two million dollar claim.

10    But Mr. Behlmann forgot to mention that that very same

11    schedule discloses more than seventeen million dollars in

12    proceeds from the sale of PG&E stock.  You can't assert a

13    twenty-two million dollar fraud claim related to twenty-two

14    million dollars in stock purchases when you wound up selling

15    the stock for seventeen million dollars.

16    This isn't, quote/unquote, manipulating the optics as

17    Mr. Etkin called it.  It's simply a fact that this is an

18    inflated, and we think largely, if not, entirely bogus claim.

19    And it's simply a fact that as we discussed on Wednesday, PERA

20    is the one and only Class 10A-II claimant who has objected; no

21    one else.

22    Okay.  Second point is the issue of PERA's alleged

23    claim against the utility.  Mr. Behlmann said that PERA needs

24    the right to assert claims against the utility because the

25    utility because the two estates have not been substantively

PG&E Corporation and Pacific Gas and Electric Company

1   consolidated.  That's true, but when you look at the PERA

2   complaint, you'll see that there's not a single claim asserted

3   solely against the utility.  In fact, PERA's complaint alleges

4   that the utility is an alter ego of PG&E Corporation, that's

5   the fourth cause of action in the complaint, and PERA actually

6   alleges that PG&E Corporation and the utility, are one in the

7   same.

8           To quote paragraph 43 of the complaint which is

9   Debtors' Exhibit 82, "The utility effective acts as an alter

10  ego of PG&E."  Then it goes onto give some allegations that

11  supposedly support that, and then it says, "Accordingly, this

12  complaint refers to the utility and PG&E interchangeably, as

13  'PG&E or the company, unless otherwise specified.'"

14          So it's richly ironic that PERA now objects to the

15  plan due to its alleged failure to treat claims against the

16  utility.

17          The plan just reflects what PERA itself has alleged --

18          THE COURT:  Mr. Johnston, you opt for the solution

19  there under the Circuit's Del Biaggio decision, and we treat

20  them as the parent anyway, right?

21          MR. JOHNSTON:  That is correct.

22          THE COURT:  Okay.  Well doesn't -- if I buy that

23  argument, doesn't that moot this whole discussion?

24          MR. JOHNSTON:  I think it does, yeah.

25          THE COURT:  Okay.

PG&E Corporation and Pacific Gas and Electric Company

1       MR. JOHNSTON:  The point is that the failure to

2  classify and treat a claim against a utility is not a basis for

3  denying confirmation of the plan.

4       THE COURT:  Okay.

5       MR. JOHNSTON:  Right.

6       THE COURT:  Well, I think both of the counsel on

7  Friday made the point that they weren't urging denial of

8  confirmation.  I mean, some objectors are urging denial of

9  confirmation; they are not.  So I fully perceive that to be a

10  way of saying, if I am otherwise satisfied that the plan should

11  be confirmed, then I put PERA in the category of many others

12  that there has to be a way to preserve their position or fix it

13  in the plan or something.  I mean, something has to happen.

14       So you agree with that, don't you, that that -- if the

15  plan gets confirmed, you still have to deal with PERA one way

16  or the other?

17       MR. JOHNSTON:  Yes and no, Your Honor.  If the plan

18  gets confirmed, the plan will specify the treatment of PERA's

19  claim.  We will have to deal with the liquidation of those

20  claims and allowance of those claims, if at all.

21       THE COURT:  Right.

22       MR. JOHNSTON:  In that context, we will be dealing

23  with them.

24       THE COURT:  Right, right, I understand, and whether

25  it's your formula, or their formula, or some other formula, or

PG&E Corporation and Pacific Gas and Electric Company

1   something, it's something.  Something has to be done.  Okay.  I

2   think we're on the same page here.

3           MR. JOHNSTON:  Okay.  So let's talk about the formula,

4   and I think the best place to start is with PERA's own slides,

5   which are very revealing.  So I've got them.  If you don't

6   mind, I will pull them up on the screen and we can go through a

7   couple of them.

8           THE COURT:  Oh, you have -- Ms. Parada, we have to

9   let -- no, he shares -- we do have to let him share?  No, he

10  shares.  There we go.  Okay.  All right.

11          MR. JOHNSTON:  Okay.  Can you see the demonstrative up

12  on the screen, Your Honor?

13          THE COURT:  I know it well.  I memorized it.

14          MR. JOHNSTON:  Okay.  So this is slide 10 from PERA,

15  and I think the point Mr. Behlmann was trying to make is that

16  there's some sort of inconsistency in using a petition date

17  claim amount, an outstanding share amount as of the petition

18  date with a market capitalization as of an earlier date,

19  October 12, 2017.  And I guess that's why they put October 12

20  in the area red fonts there.

21          THE COURT:  Well, I think they --

22          MR. JOHNSTON:  As --

23          THE COURT:  -- put it in red because that was the date

24  you gave them.

25          MR. JOHNSTON:  Correct, but notice that's different

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    than the rest of the fonts on the slide, and I'll get to

2    October 12th in a minute.

3            I submit, Your Honor, and I think you picked up on

4    this on Friday, this slide is highly misleading.  The allowed

5    claim amount is whatever losses can be proven.  That claim may

6    be allowed as of the petition date, but the calculation of

7    those losses is not a petition date issue.  PERA's alleged

8    losses were incurred, if at all, well before the petition date.

9            THE COURT:  I think Mr. Behlmann conceded that point

10   in the late part of the argument --

11           MR. JOHNSTON:  I --

12           THE COURT:  -- because he was going around with all

13   the other dates and I said, what about you giving up on the

14   petition date, he said, yes; I mean, words to that effect.

15           MR. JOHNSTON:  He conceded it may be marginally

16   because then he pivoted to a date that would was the end of the

17   class period several months earlier, and --

18           THE COURT:  Well, that's because he didn't like your

19   date.

20           MR. JOHNSTON:  Correct.

21           THE COURT:  He liked his date a lot better than your

22   date, and the petition date was the least appealing.  But

23   anyway, I understand your point.

24           MR. JOHNSTON:  Yes.  And I'm here to tell you why his

25   date, no matter how it moves, is inappropriate.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    So let's talk about the October 12th date.  That is

2    when PERA's losses allegedly were occurred.  In the complaint,

3    the first loss is alleged to have occurred sometime during the

4    day on October 12, 2017.  We didn't pick that date, Your Honor.

5    It's not "reverse engineered" to use Mr. Behlmann's term.  PERA

6    chose the date and the quotes from the complaint that I read

7    you on Wednesday make that crystal clear.

8    So each of the components of the plan formula are

9    consistent.  They're consistent with the incurrence of losses

10    as of October 12, 2017.  And I explained on Wednesday why,

11    given the allegation of first disclosure on October 12, 2017,

12    that's the most relevant and logical date for determining

13    sharing between shareholders, and fraud claimants.

14    So PERA tried to rebut that logic by showing a series

15    of slides starting on slide 13, which I think I can flip

16    through here, you see they say well, there were a lot of other

17    disclosures, and there were nine separate disclosures, so nine

18    separate frauds occurred over the course of the next thirteen

19    months.

20    Your Honor, I submit to you that that is absurd, and I

21    don't use that word lightly, to suggest that there were nine

22    different frauds.  There's one alleged fraud.  The alleged

23    failure to disclose what everyone already knew; that PG&E might

24    start a fire, and be strictly liable for the resulting damages.

25    The nine, quote/unquote, cleansing disclosures all relate to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    that one alleged fraud.

2          You heard Mr. Behlmann talk about an allegation of the

3    fraud being unwound over time.  That is a concept that's

4    sometimes used in connection with accounting fraud.  If a

5    company withdraws its financial statements as inaccurate, it

6    may take a while for it to generate new, accurate statements,

7    and the issuer might go onto correct misstatements one by one,

8    resulting in separate corrections, and separate dates for

9    measuring losses.  That's not what happened here.  You have

10   one, and only one, alleged fraud.

11         But the entire premise of the series of slides you

12   were shown is that there were nine alleged frauds, and that

13   every dollar of the decline and stock price from October 12,

14   2017, to November 15, 2018, is 100 percent attributable to

15   those alleged frauds.

16         That ignores both the law, and reality.  The Federal

17   Securities Laws do not presume that every dollar of loss, or

18   stock price decline is attributable to the supposed fraud.

19   That's why there's the requirement of loss causation, and it's

20   particularly important here where you have a lengthy class

21   period, and numerous alleged misstatements, and supposed

22   corrective disclosures.  By arguing that every dollar of

23   decline in PG&E stock price over the course of 399 days is

24   attributable to this supposed fraud, PERA's essentially arguing

25   that the securities laws give it some kind of investor

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    insurance.

2            PERA's various charts in theory ignore everything that

3    was happening during those 399 days.  They ignore the CPUC's

4    denial of inverse condemnation cost recovery to San Diego Gas &

5    Electric, and the perceived impacts it had on PG&E's exposure

6    for wildfire loss.  They ignore the ignition of the North Bay

7    Fires, and ignore the Camp Fire.

8            Let's look at slide -- another one of PERA's slide,

9    slide 23.

10           THE COURT:  Wait, back up.  Wasn't the Camp Fire right

11   when the last period ends -- no, the Camp Fire was a few

12   days -- excuse me, the Camp Fire was a few days before the

13   close of the class period; isn't that true?

14           MR. JOHNSTON:  That's correct.  That is --

15           THE COURT:  Okay.

16           MR. JOHNSTON:  -- what this slide that I'm showing you

17   right now --

18           THE COURT:  Yes.

19           MR. JOHNSTON:  -- showed.

20           THE COURT:  Okay.

21           MR. JOHNSTON:  You see that big drop right before the

22   end of the class period, that's on -- the class period ended on

23   November 15.  On November 8th, the class period --

24           THE COURT:  But I thought --

25           MR. JOHNSTON:  -- sorry, the Camp Fire was ignited.

(973) operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  -- I thought it was November 8th, and if

2    the class period ends, November 8th.  Okay.

3    MR. JOHNSTON:  And PERA would have you hang every

4    single dollar of that stock price decline on an alleged

5    fraudulent failure to disclose that PG&E might be liable for

6    the fire.

7    THE COURT:  Well, you make a good point, but what

8    about somebody who didn't know anything about the history, who

9    bought the stock, or bought the bonds, two weeks before the

10   Camp Fire?

11   MR. JOHNSTON:  That person is charged with

12   constructive knowledge, at least, of the entire public record

13   up to that date.

14   THE COURT:  Oh, maybe so, but that goes to how that

15   person maybe doesn't have a claim at all, right?

16   MR. JOHNSTON:  That's correct.

17   THE COURT:  I didn't --

18   MR. JOHNSTON:  And as I will get to, it goes to why

19   that person can't possibly, if that person can prove a claim,

20   be able to share in a market capitalization of PG&E that

21   diminished five or six times over from the time that this

22   alleged fraud was first disclosed.

23   THE COURT:  No, I understand.  I agree with you.  I

24   mean, I understand your point.

25   MR. JOHNSTON:  And Your Honor, I think your

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    hypothetical on Friday hit the nail on the head.  If someone

2    holding shares on October 12, 2017, suffered its alleged loss

3    on that date, those losses didn't somehow increase over time,

4    if the shareholder decided to hold the shares, and roll the

5    dice, as I think you put it.

6         So I think the best way to absorb that is by going

7    back a few slides, and this is PERA's -- let me just adjust the

8    sides here.  So this is what PERA says is the net impact of the

9    nine corrective disclosures over time.  And I'm glad they got

10   it down on paper because I think it says something astonishing.

11   On this slide, PERA claims that the alleged fraud that PERA

12   admits was at least partially revealed on October 12, 2017,

13   grew to be roughly 28.8 billion dollars in the thirteen months

14   after October 12.  Everything but that blue slice in the upper

15   left-hand corner is alleged to be fraud.  That's more than

16   eighty percent of PG&E's market capitalization on the date of

17   the first disclosure.

18        And more importantly for today's purposes, it's four

19   times the size of the petition date capitalization that PERA

20   itself had said should be the baseline for determining sharing

21   under the plan.  PERA wants to shove 28.8 billion dollars of

22   fraud claim into a 7.3 billion dollar pot.  There's no

23   consistent, intellectually coherent basis for doing that, and I

24   think Mr. Behlmann and Mr. Etkin effectively admitted as much.

25        You had the discussion with Mr. Etkin about his pivot.

PG&E Corporation and Pacific Gas and Electric Company

1    He simply picked a new capitalization date for his formula on

2    the fly when he realized that you weren't going to go for the

3    petition date capitalization.  That wasn't in his brief, and

4    it's not reflective of any logical reasoned approach.  All that

5    the pivot reveals is an intellectually bankrupt position, and

6    PERA, I submit, has no coherent theory at all.

7           So Mr. Etkin then pivoted again and he said wow, we

8    really should be mediating this, and he claimed to have been

9    ignored in prior discussions.  Your Honor, that's astonishing.

10   There's an ongoing multi-month mediation going on with PERA

11   about these claims.  I don't know how Mr. Etkin can say there's

12   been no effort to engage.  You know, those were his words, and

13   they're just false, given the pending mediation.

14          So before I move off the subject of the formula, let

15   me just spend a few minutes on what the plan actually does.

16   Unlike what PERA suggested, the plan formula has a coherent

17   consistent basis, and in a nutshell, that is to give the fraud

18   claimants what they thought they were getting when they

19   invested.

20          Mr. Behlmann needs the first page of our demonstrative

21   to set up a strawman, and I'll flip back to that, and this will

22   be the last time we look at these charts.  Right here, this was

23   actually our demonstrative that he put up on the screen, and he

24   said look at that -- he said, we're trying to limit the

25   entirety of the fraud claim to the orange wedge, and that's

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    what he juxtaposed against his 28.2 billion dollars in fraud,

2    and he said that's unfair, but that's not what the plan does.

3    There's a reason why we labeled that particular orange wedge

4    hypothetical.

5         All that chart shows is the market losses over two

6    days in October 2017 after the disclosure of the alleged fraud.

7    At the end of the day, the fraud claims are whatever they will

8    be, if anything at all, and whatever they are, they're

9    accounted in our plan formula.  But then Mr. Behlmann said

10   well, gotcha, the Ninth Circuit holds that benefit of the

11   bargain is not the measure of the securities fraud claim.  So

12   our plan formula which seeks to give fraud claimants what they

13   thought they were getting doesn't work.  I submit, Your Honor,

14   that's misdirection.

15        As I argued on Wednesday, the measure of damages is

16   relevant to the determination of the allowed amounts of PERA's

17   claim.  That's the numerator in our formula.  That amount will

18   be whatever it will be under governing law, if PERA is able to

19   prove its claim.

20        The question we're talking about here is something

21   entirely different.  We're figuring out how that claim, if and

22   when it's allowed, gets treated under the plan, and so PERA is

23   just conflating claim allowance with treatment.

24        On the numerator, Your Honor, we had a dispute

25   regarding the reduction in claim amount for insurance received

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  by a claimant.  To respond to the question that you asked that

2  you asked at the beginning of the day on Friday, the plan is

3  not distributing insurance proceeds on account of the claim.

4  What the plan does is it deducts a particular claimant's claim

5  amount and it recognizes that the claim is smaller because of

6  the payment of insurance from the estate.

7  I think, at the end of the day, Mr. Behlmann's

8  proposed fix to the plan language which concedes that a

9  deduction is appropriate in some circumstances, proves that

10  there's no Ivanhoe issue here, proves that there's no

11  collateral source issue.  The payment is from insurance that's

12  otherwise available to the debtors, and any payment from

13  insurance is a reduction in assets available to the estate.

14  THE COURT:  Why isn't it Ivanhoe because remember in

15  Ivanhoe, you have two wrongdoers.  In this case allegedly, you

16  have two wrongdoers, the corporate entity, and the individual

17  whose insurer has to pay.  So why isn't that Ivanhoe in spades?

18  MR. JOHNSTON:  Because Ivanhoe, I think the key of

19  Ivanhoe is that there's two sources of payments, and the point

20  to be made here is that insurance that's property of the estate

21  is one source of payment.

22  THE COURT:  Oh, well, then, Mr. Johnston --

23  MR. JOHNSTON:  It's the same as the estate.

24  THE COURT:  -- Mr. Johnston, if insurance is property

25  of the estate, this is all a complete red herring because the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    only way you ever have to worry about someone being paid from

2    some other source is when you wiped out the entire insurance

3    tally B and C, and left the debtor insolvent because you

4    never --

5              MR. JOHNSTON:  It --

6              THE COURT:  -- you never have to tap the insurance

7    funds that protects non-debtors.

8              MR. JOHNSTON:  And Your Honor, we are prepared to

9    concede that any payment from the Side A coverage should not be

10   deducted from the claim amount.

11             THE COURT:  Well, I mean, that's the end of the story

12   on that issue, isn't it?  I mean --

13             MR. JOHNSTON:  I think so.

14             THE COURT:  -- you didn't --

15             MR. JOHNSTON:  The PERA objection was --

16             THE COURT:  -- seen it the other day.

17             MR. JOHNSTON:  -- PERA had objected to the deduction

18   at large.  We will make a modification that says that insurance

19   proceeds received solely from the Side A part of the coverage,

20   which is only available when all the shared coverage is

21   exhausted, and there's a non-indemnified loss --

22             THE COURT:  Well, you just --

23             MR. JOHNSTON:  -- that will not be deducted.

24             THE COURT:  -- you've just argued yourself, and

25   conceded yourself out of the Ivanhoe trap.  So I -- we're on

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  the same page.  So what do we do -- and let's go -- I

2  appreciate that you did it, you confirmed it, cleared it.  I

3  thought it through a lot since their argument and I couldn't

4  reach my -- any other conclusion, and you made my life easier

5  by conceding the point.

6          But why is your October 12th date the right date for

7  someone who invested later?  And if your response is, well

8  later, we'll get rid of his claim, and I say, then it doesn't

9  matter.  In other words, why isn't it more appropriate to do

10  away with a formula until we know what the allowances are?

11  Because my guess is that some poor guy that bought 1,000

12  dollars' worth of PG&E stock the day before the Camp Fire,

13  probably isn't going to make a fraud claim at all because

14  there's no fraud, because it's so obvious of the risk of

15  investing in PG&E.  So why do we have this crazy formula that

16  just invites litigation when the proof is to find out what the

17  real claims are?

18          MR. JOHNSTON:  Well, Your Honor, that's only half the

19  story.  To find out what the real claims are is the claim

20  allowance.

21          THE COURT:  Yeah.

22          MR. JOHNSTON:  But that doesn't answer the question of

23  how that claim, if it's allowed, is entitled to share with

24  common shareholders.

25          THE COURT:  No, I under --

(970) 206-4499 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      MR. JOHNSTON:  That --

2      THE COURT:  -- I understand that it doesn't, but --

3  and then I know that's what you're trying to do here, but I'm

4  struggling with why I should create a formula which is

5  homemade -- not homemade; it's the wrong word.  I don't mean to

6  say you don't have a good intellectual basis, but there doesn't

7  seem to be a single case that's dealt with this issue, and it

8  may be a nonissue if the allowed claims are -- you have an

9  insignificant amount.

10      MR. JOHNSTON:  But the liquidation and litigation of

11  those claims is not going to make the question any easier at

12  the end of the day, other than if we win, and there are no

13  claims, but the plan has to account for the contingency of at

14  least some of these claims ultimately being allowed.  That's

15  all that this formula does.

16      THE COURT:  I know.

17      MR. JOHNSTON:  And let me take one more crack at

18  trying to explain why we think October 12th makes sense.

19      What we're trying to do is really honor the core goal

20  of 510(b), and that's by making the economic position of Class

21  10A-II claimants consistent with that of holders of common

22  stock.  The goal is to make sure that the plan does not place

23  the fraud claimant in a better position, or a worse position in

24  relation to current shareholders than would've been the case

25  had the Chapter 11 cases not occurred.

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    We know that the shareholders of PG&E suffered a

2  tremendous loss in value since October 2017.  PERA's materials

3  demonstrate that above all else.  The suggestion that you heard

4  on Friday that existing shareholders are somehow getting a

5  windfall now is silly.

6    Existing shareholders are not being, quote/unquote,

7  reinstated as Mr. Behlmann claims.  Their existing ownership

8  interests are being massively diluted by all the new stock

9  issued under the plan, including more than twenty percent going

10  to the fire trust, and all the new shares to be sold in the

11  market as Mr. Karotkin and you discussed earlier this morning,

12  and that of course, says nothing of the massive losses suffered

13  before bankruptcy, which we saw from the stock price charts.

14    The plan formula treats the fraud claimants

15  commensurate with the shareholders who suffered that loss.  The

16  formula takes damages, if any, that are proven by an individual

17  fraud claimant, and converts them into common stock in a way

18  that reflects the same diminution in value, as was suffered by

19  the shareholders as a result of the fires.

20    Applying the plan formula, the Court need not parse

21  out which claimants bought shares when, and which sold shares

22  when.  That's for the time of claim allowance which will

23  address purchases and sales, and every claimant individual's

24  circumstances.  Once a fraud claimant is allowed, if ever, the

25  plan formula puts the claimant on an equal footing with the

PG&E Corporation and Pacific Gas and Electric Company

1    shareholders who held their stock and suffered losses as the

2    share price declined.

3         By definition, PERA's argument for a petition date

4    capitalization, or an end of the class period capitalization

5    ignores the losses suffered by shareholders, and in so doing --

6         THE COURT:  Hang on.  Mr. Johnston, I have to tell you

7    that we're sympathetic -- I'm sympathetic to lots of people who

8    lost things, from fire victims, to contract parties, to

9    defrauded investors, to shareholders, but that's not the test.

10   The test is under the plan, if you weren't subordinating under

11   510(b) and be paying these people money, because you're taking

12   advantage of the consequences of the law that says where do you

13   treat people in a solvent case, the answer is you must treat

14   them pari passu, not based upon relative harm.

15        And the real easy answer here is in the Superior case,

16   that says let's kick this can down the road, and deal with it

17   later.  Why isn't that a good idea?

18        MR. JOHNSTON:  We can't do that --

19        THE COURT:  Well, I mean --

20        MR. JOHNSTON:  -- because kicking the can down the

21   road --

22        THE COURT:  -- it's not good because you didn't want

23   to reserve for it, but if you reserve for it --

24        MR. JOHNSTON:  Well --

25        THE COURT:  -- you do it.

(973) operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1       MR. JOHNSTON:  And then all of the goals that Mr.

2  Karotkin talked about earlier today with respect to a

3  successful equity offering, go out the window.

4       THE COURT:  But whose fault is that?

5       MR. JOHNSTON:  And kick --

6       THE COURT:  Is it the plaintiff's fault?  You know,

7  there could've been a motion to estimate under 502(c), eighteen

8  months ago.  There could've been a first day motion.  This

9  litigation was well known to PG&E, maybe not its bankruptcy

10  lawyers, on the petition date, and here we are eighteen months

11  later, and you're saying treat the defrauded folks like we're

12  treating the lost expectation of the shareholders, and that's

13  worthwhile, but it not what the law requires.  So that's a

14  dilemma.

15       MR. JOHNSTON:  What I'm struggling with, Your Honor,

16  is the idea that kicking the can down the road, waiting for

17  claim allowance is going to make this any easier.  It's not

18  unless all the claims are disallowed.  We're still going to

19  confront the exact same issue.

20       THE COURT:  Well, you could make a motion to estimate

21  the claims.  Now you can't do it in the next ten days but this

22  gets back to my point.  Your side, I can't remember who the

23  lawyer was, maybe it was Mr. Bennett, I forget, somebody made a

24  very persuasive argument to me that I shouldn't let this thing

25  go to a class claim.  And the arguments were, well, the class

PG&E Corporation and Pacific Gas and Electric Company

1   plaintiffs waited too long and, right or wrong, I made the

2   decision to let the late claim process go, but I think I even

3   invited them something to try to flush it out.

4          So here we are, literally on the eleventh hour, and

5   you're saying, oh, I'm going to throw the refinance into the

6   toilet because we've got these unknown people.  Well, why not

7   do something about it?  And I would welcome obviously immediate

8   resolution, but I can't -- I don't think it's fair to say well,

9   the stockholders suffer, therefore these plaintiffs should

10  suffer equally.  That's not the test.

11         The test is, if they have a valid claim under

12  non-bankruptcy law, 510(b), then does this thing that's nobody

13  done before, right -- and in Superior, they didn't do it, and

14  the court said that's okay.  And obviously there were reasons

15  in Superior that probably have justified waiting.  But here, I

16  mean, I'm struggling with this notion of because it's easy to

17  use the funnel that seems almost arbitrary to secure the

18  securities offering is, therefore, I throw the plaintiffs under

19  the bus and that doesn't seem right either.  So that's the --

20  that's my dilemma at the moment.

21         MR. JOHNSTON:  I agree, Your Honor.  If our formula

22  was throwing the plaintiffs under the bus, then you shouldn't

23  do it.  We do not think our formula is any way, shape, or form,

24  throwing the plaintiffs under the bus.

25         THE COURT:  If you'd made a 502(c) motion about the

PG&E Corporation and Pacific Gas and Electric Company

1    same time we had one coming down the road in the Tubbs Fire,

2    you wouldn't have had the Article III stuff, you would've had

3    me, and I would've had Mr. Etkin and Behlmann on one hand and

4    you on the other giving me the data to estimate the claims, and

5    I might've estimated them at fifty dollars, or I might've

6    estimated them at twenty billion or million dollars.  But I

7    haven't had that opportunity.

8            MR. JOHNSTON:  No, we did not put that before you in

9    large part because these claims came in the door within --

10           THE COURT:  Eighteen months --

11           MR. JOHNSTON:  -- the last --

12           THE COURT:  -- eighteen months ago.

13           MR. JOHNSTON:  -- eight weeks.

14           THE COURT:  Eighteen months ago.

15           MR. JOHNSTON:  Yes, we do not have an estimation

16   motion before you.

17           THE COURT:  Right.

18           MR. JOHNSTON:  The plan is our best effort at doing

19   what Section 510(b), which is subordinating the fraud claim to

20   the level of common stock.  If -- in Superior, the reason why

21   the court was able to put it off was because the court thought,

22   one, I think that was a closely held corporation, so a much

23   different situation, and --

24           THE COURT:  I think you --

25           MR. JOHNSTON:  -- if I recall correctly --

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT: I think Superior got it because nobody

2    thought about it, and the Court of Appeals, who was a former

3    bankruptcy lawyer, said well, we'll just let this -- deal with

4    it later, and that was the result.

5    MR. JOHNSTON: And I believe the Court that it could

6    kick the proverbial can down the road because the debtor

7    appeared to be insolvent --

8    THE COURT: Correct.

9    MR. JOHNSTON: -- as well, so it would never be an

10   issue.

11   THE COURT: Correct.

12   MR. JOHNSTON: So Your Honor, we think -- one last

13   point. On the technical unfair discrimination point that PERA

14   raised with respect to the subscription rights, the argument

15   was that existing shareholders are getting subscription rights

16   and the security fraud claimants are not.

17   As an initial matter, as you heard this morning, this

18   is very likely a moot point --

19   THE COURT: Right.

20   MR. JOHNSTON: -- if the amended registration rights

21   or backstop rights are approved next Tuesday, there will be no

22   more subscription rights --

23   THE COURT: No.

24   MR. JOHNSTON: -- and this is a nonissue.

25   THE COURT: Well, I thought about that this morning,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   too.  Yes, I would agree with you.

2           MR. JOHNSTON:  If that doesn't come to pass and

3   subscription rights are used, we submit for the reasons I

4   discussed on Wednesday, that there is no unfair discrimination

5   here.  In any event, as you recognized, the holder of a

6   subordinated fraud claim is in a fundamentally different

7   position than an existing holder of common shares, and that

8   difference in position justifies limiting any distribution of

9   subscription rights to the shareholders.

10          Acequia and Peabody Energy, I think are pretty closely

11  aligned there, and the two cases that Mr. Behlmann cited after

12  ignoring the cases that I cited to you, are nowhere to be found

13  in PERA's brief, Washington Mutual and Breitburn, and those

14  cases simply are not unfair discrimination cases.  They're

15  equal treatment cases under Section 1123(a)(4) involving

16  disparate treatment of members within the same class.

17          THE COURT:  Okay.

18          MR. JOHNSTON:  That's not this case.

19          THE COURT:  Mr. Johnston, I'm going to cut you off in

20  part because I want to -- I just can't go all day, in part

21  because I understand argument, in part because I want Judge

22  Newsome to get the big ticket item mediated, and I want him to

23  get this one mediated for you, the sooner the better, if

24  possible, because I don't -- obviously you make an argument,

25  but you should understand some of my concerns, as well.  So I

(973) 406-2250 | operations@escribers.net | www.escribers.net

               PG&E Corporation and Pacific Gas and Electric Company

1    would encourage your side to meet with the other side, and see

2    if you could reach some resolution because it makes a lot of

3    sense, but for now, I want to terminate this phase of the

4    argument, and I appreciate your presentation.

5               MR. JOHNSTON:  Okay.  Thank you, Your Honor.

6               THE COURT:  Okay.  Mr. Bennett, are you going to add

7    more on another subject, or this subject, or what's your

8    pleasure?

9               MR. BENNETT:  No, Your Honor, I don't have much to add

10   but I do want to point, and stress what Mr. Johnston said about

11   the other case, and this case, and that this is a case

12   involving public securities and the issuance of even more

13   public securities.

14              We have proposed a formula that actually works, that

15   resolves the issues raised by your hypothetical.  It is not by

16   any stretch of the imagination arbitrary.  It's part of a plan

17   that should be confirmed.

18              THE COURT:  Okay.  All right.  Are you going to make

19   any other argument?

20              MR. BENNETT:  I think that -- I don't know if I'm

21   going to have to or not, but I know Mr. Karotkin wants me to

22   stay on for the rest of the closing.

23              THE COURT:  I'm not trying to get rid of you.

24              MR. BENNETT:  No, look if you want to close me down,

25   it's perfectly okay with me.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  You can close yourself down.  I can throw

2    people out of the courtroom, but they can also shut me off,

3    too.

4    All right, Mr. Karotkin, let me take one more moment

5    before I come back to you.  I just have to check my thing.  I

6    have Mr. Hallisey's hand up.  Mr. Hallisey, I'm not going to

7    recognize you today.  You've made your point, and this isn't

8    your issue.  So I'm simply not going to interrupt our schedule,

9    and hear from you today.

10    So Mr. Karotkin, I'm happy to hear from you on the

11    closing arguments.

12    MR. KAROTKIN:  Okay.  Thank you, Your Honor.  Stephen

13    Karotkin, Weil, Gotshal, & Manges for the debtors.

14    I think what I'd like to do first, Your Honor, and --

15    is to address some of the issues with respect to the executory

16    contracts.  And I know that during the arguments that were

17    made, I made a number of remarks and I will try to keep it

18    relatively brief, but I would ask if you could, could you let

19    Mr. Tsekerides into the panel.

20    THE COURT:  Sure.

21    MR. JOHNSTON:  He has a couple of remarks.

22    THE COURT:  Ms. Parada, I didn't know Mr. Tsekerides

23    was in the wings.  Could you bring him in, please?

24    MR. JOHNSTON:  Your Honor, this is Jim Johnston.  I

25    will remove myself, unless you would like to me remain.

(973) operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1         THE COURT:  Okay.  Well, we'll go ahead and do it,

2   too.  Okay.  Thank you, Mr. --

3         MR. JOHNSTON:  Thank you.

4         MR. TSEKERIDES:  Good afternoon, Your Honor.

5         THE COURT:  Mr. Tsekerides, you put your tie back on.

6         MR. TSEKERIDES:  I did, and I'm only going to hot

7   seat, so I might deal with some of the document sharing.

8         THE COURT:  Okay.  All right.

9         MR. KAROTKIN:  Okay.  Thank you.

10        MR. TSEKERIDES:  Do you want me to pull that up,

11  Steve?

12        MR. KAROTKIN:  Not yet.  So Your Honor, I think that

13  one thing is abundantly clear from what you heard earlier today

14  on all of the arguments with respect to the executory contract

15  issues, and the contribution, and indemnity issues, and that

16  every claim, if it ever arises, and we don't know if any of

17  these claims will ever arise, will have its own unique

18  circumstances and how that claim should be determined, Your

19  Honor, should wait until those claims arise, and those

20  circumstances arise so they can be appropriate determined.

21        Multiple parties have acknowledged this point, and

22  they've said this, whether 502 applies or it doesn't apply,

23  whether a claim was fairly contemplated or not fairly

24  contemplated, when was the -- when did the claim arise?

25        And in the context before you today, there's no

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   reason, and it would be inappropriate, in fact, to make blanket

2   rulings, on any of these issues.  I think that -- if I recall

3   correctly, both Mr. Bray, Mr. McKane, and Mr. Schiff, said they

4   don't even know what claims there are, or what claims could be

5   raised but nevertheless, Your Honor, they're asking you today

6   to give them a categorical pass on what rides through, what

7   doesn't ride through, what obligation there was to raise a

8   claim, or a default in connection with the cure process.  In

9   fact, I think Mr. Bray said, and I think it's a pretty good

10  quote that, "Even he does not know every single permutation

11  that could arise here," and that's really the point; we don't

12  know.

13          These types of claims, again if they ever arise,

14  should be addressed at the time the claims arise, and then Your

15  Honor can apply to those particular circumstances, precisely

16  what the legal standard is, whether it should've been -- as I

17  said, whether it should've been raised, not raised.

18          THE COURT:  Well, give me a -- let's have a practical

19  answer.  You're nice to say that I can deal with it.  I don't

20  know how long I'm going to be doing this.  I don't know how

21  long you're going to be doing this.

22          MR. KAROTKIN:  I'm going to be doing it a lot less

23  than you, I think.

24          THE COURT:  But the problem is that, and this is what

25  I experience all the time, it might be presented two or three

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    years from now to a state court judge, or a federal district

2    court judge, or an administrative law judge, and none of the

3    above have the knowledge, and the expertise that you and I have

4    in our specialty.  And so what do I do when Mr. Gorton's

5    client, or Mr. McKane's client -- well, certainly to the extent

6    that FERC is involved, but that's a little different with Mr.

7    Tredinnick, City of San Francisco.  What do I do if three years

8    from now in the Superior Court in San Francisco, there's a

9    debate about was some indemnity provision that was page, you

10   know, a supplement, 2,000 pages long, did it survive the

11   bankruptcy or not?  How are the litigants and their lawyers,

12   and the non-bankruptcy-trained judicial officers supposed to

13   have even a clue to answer those questions?

14          MR. KAROTKIN:  Your Honor, it's not dissimilar from

15   any other situation where the issue of discharge comes up

16   several years after a plan has been confirmed.  And in fact,

17   that was the precise situation in the Arriva Pharmaceuticals

18   case where an issue as to whether a claim that should have been

19   asserted in connection with a cure under Section 365 was later

20   asserted in a non-bankruptcy jurisdiction, and the debtor

21   reopened the case and brought an adversary proceeding in the

22   bankruptcy court to adjudicate it.  And that's what also should

23   happen here, that's how it works.  And then the bankruptcy

24   court, which has the special expertise to deal with these

25   issues under 502 assumption, what does assumption mean, can

(972) 494-4565 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

address the issues.

1

As you recognized, Your Honor, this dispute basically

2

focuses on whether all pre-petition indemnification, and

3

contribution claims flow through when an executory contract is

4

assumed.  And as you recognized, that's not the law, and

5

perhaps more importantly, as I just said, there's no reason to

6

address that now.

7

Assumption of an executory contract under the

8

Bankruptcy Code is precisely that, assumption under Section

9

365, and as you noted, it can implicate a number of factors,

10

and as set forth appropriately by the court in the Arriva

11

Pharmaceutical case, that's from your district, Your Honor,

12

including an obligation, there's an obligation, to assert

13

rights in connection with a cure under Section 365.

14

And if I could ask Mr. Tsekerides to put up the slide.

15

You could put up the second -- if you could just put the third

16

slide.

17

THE COURT:  What am I looking at here?  Is this from

18

the brief?

19

MR. KAROTKIN:  No, this is some slides we have that we

20

can file.

21

THE COURT:  Oh, okay.

22

MR. KAROTKIN:  But Arriva Pharmaceutical makes it

23

clear that the burden is on the non-debtor party to the

24

executory contract to come up with all claims, nonmonetary, as

25

PG&E Corporation and Pacific Gas and Electric Company

1    well as monetary claims, and to assert all defaults prior to

2    the debtors' assumption.  And there's a good purpose for that,

3    Your Honor, and I think that Mr. Newman, in connection with

4    McKinsey, which I'll address.  The purpose of that is to

5    provide the debtor with the knowledge, the knowledge of what is

6    going on, so it can make a decision to either assume the

7    contract, or not assume the contract, and that's why there's an

8    obligation to go forward.  And if the party comes forward with

9    claims and indemnification claims, well, then maybe the debtor

10   decides not to assume the contract.

11          But you can't lie in wait, and then assert claims

12   later, which again, as you said, you could have asserted

13   earlier, and that's --

14          THE COURT:  Don't' you think the issue that most of

15   the lawyers who argued today, or all -- I don't know them all,

16   then you probably know a good number of them, too, they're

17   experienced bankruptcy lawyers.  And the issue is what's a

18   nonmonetary default versus something that doesn't rise itself

19   to default?

20          In other words, Arriva from the quote, and I don't --

21   you're going to tell me who decided it, it was one of my

22   colleagues, I don't know by name, but I can imagine if it were

23   my decision too, it would be -- it's a no-brainer if there's a

24   monetary or nonmonetary default, but the problem is what if

25   there is no default, what has to be asserted --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      MR. KAROTKIN:  Well, again --

2      THE COURT:  -- by --

3      MR. KAROTKIN:  -- again, Your Honor, I think you

4  said --

5      THE COURT:  There's nothing to assert, right?  Huh?

6      MR. KAROTKIN:  You said it earlier, it's the fair

7  contemplation test.

8      THE COURT:  Right.

9      MR. KAROTKIN:  Do you have a claim?  A fair

10  contemplation test.  And again, that should be addressed later

11  when the claim arises, if ever, in the context of a dispute

12  where those issues are joined.

13      Now --

14      THE COURT:  Well, the problem -- by the way, I

15  interrupted you again, the problem is we've taken a 365 concept

16  and extended it, as I think one of the other lawyers said

17  today, to some concepts that really go well beyond 365, and

18  they go on --

19      MR. KAROTKIN:  Precisely.

20      THE COURT:  -- to discharge --

21      MR. KAROTKIN:  Precisely.

22      THE COURT:  -- the petition and automatic stay issues,

23  and --

24      MR. KAROTKIN:  Well no, I think Your Honor what

25  they've gone onto, and what people are asserting like Mr. Bray,

of 226
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    is that he's saying assumption under Section 365 is the

2    equivalent of reinstatement, or non-impairment.  You -- first

3    of all, it's not.  And secondly, the argument that this is an

4    impairment issue, you rejected in connection with the

5    post-petition interest.  In connection with post-petition

6    interest, what the UCC argued was that impairment was the same

7    as reinstatement, that all rights flow through, including the

8    right to contractual interest, and you appropriately rejected

9    that because it doesn't.  That is impairment under the law, not

10   impairment by reason of the plan.

11           THE COURT:  That's right.

12           MR. KAROTKIN:  And that's what they're trying to do

13   here.  What he's trying to say is ignore the requirements of

14   Section 365, ignore the requirements that I've got to assert

15   defaults, every default, ignore that, and give me a free pass.

16   And again, that's not what the law is.

17           Now I'd go back to the first slide, which I think

18   really addresses a lot of the issues that have been raised

19   here.  First, we will amend the proposed confirmation order

20   that will be presented to Your Honor, to make it clear that all

21   rights and defenses of any entity with respect to any assigned

22   right and cause of action, asserted by the Fire Victim Trust

23   against such entity, may be asserted against the Fire Victim

24   Trust.  Couldn't be more clearer.  Could not be more clearer,

25   addresses, I would say, eighty percent of the issues that have

PG&E Corporation and Pacific Gas and Electric Company

1    been raised.

2            And we will also include in the order that any rights

3    of setoff, or recoupment, or defenses, held by any entity are

4    expressly retained, and preserved, subject to any applicable

5    limitations to the Bankruptcy Code.

6            Again, we will clarify that, so there is absolutely no

7    mistake about it, but --

8            THE COURT:  But are you saying that these two

9    paragraphs, which makes sense to me, also apply to any assumed

10   contract?

11           MR. KAROTKIN:  Yes.

12           THE COURT:  I mean, it doesn't say it.  Be careful, I

13   don't want to --

14           MR. KAROTKIN:  It applies to --

15           THE COURT:  -- I don't want to set you up either

16   because you don't want to leave for the future, something that

17   should've been asserted before.  So --

18           MR. KAROTKIN:  Your Honor, these are rights -- this is

19   with respect to assigned rights and causes of action.

20           THE COURT:  Right.

21           MR. KAROTKIN:  What the parties were objecting to is

22   that these claims would be assigned to the trust, and they

23   would be naked.  They couldn't assert whatever rights and

24   defenses they had if those claims had been asserted against the

25   debtors because those -- the debtors claims are the claims that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    are being pursued by the trust.

2        And what we're making clear here is that to the extent

3    they would have rights and defenses if we asserted that claim,

4    they would have the same rights against the trust.  That's what

5    they asked for, and that's what we're giving them, and there's

6    no issue with that.  And as I said, that addresses most of

7    their claims or most of the issues they've raised today.  And

8    certainly, Your Honor, I think it has to be absolutely clear

9    that under no circumstances, and let me go to slide umber --

10       THE COURT:  See, Mr. Karotkin --

11       MR. KAROTKIN:  Oh, number --

12       THE COURT:  -- I think I heard you talking about the

13   365 issue, and you put up a slide that really doesn't focus on

14   the whole 365 issue, it's a broader issue, and I understand, I

15   think the language that you have here is fine, and it belongs

16   in the order, but it doesn't answer the question on these

17   executory contracts.

18       MR. KAROTKIN:  Well, Your Honor, that was -- most of

19   those parties raised that issue:  that in connection with

20   confirmation of the plan and the plan going effective, the

21   assigned rights and causes of action would go to the trust.

22   And they wanted to make sure that their rights and defenses

23   were preserved.  So we've addressed that.

24       Under Section 365, Your Honor, you made it clear --

25   and I totally agree with you -- that there is an obligation to

(970) operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    come forward with defaults and claims in connection with cure.

2    And we're agreeing with that. You can't -- there is nothing in

3    the Bankruptcy Code or in Section 365 or any other provision in

4    the Bankruptcy Code that says you get a free pass.

5            THE COURT:  So go back to your slide from Arriva.

6    Mr. -- okay.  So Arriva -- right there, right on top -- cure

7    recovers and applies to monetary and nonmonetary defaults.  It

8    doesn't say it applies to nondefaults.

9            MR. KAROTKIN:  Well -- but Your Honor, read the next

10   sentence.  The burden is on the nondebtor party to assert all

11   defaults:  monetary or nonmonetary --

12           THE COURT:  I know.

13           MR. KAROTKIN:  -- to the debtors' assertion.

14           THE COURT:  What if I said, there is -- what if I said

15   there is no burden on the nondebtor parties to assert

16   nondefaults?  Nondefaults.

17           MR. KAROTKIN:  I'm not sure, Your Honor, I understand

18   what that means.

19           THE COURT:  It means --

20           MR. KAROTKIN:  But if someone --

21           THE COURT:  It means if there --

22           MR. KAROTKIN:  -- someone --

23           THE COURT:  It means if there's -- there is no --

24           MR. KAROTKIN:  There's no point to raise in the

25   context later, when a claim arose, and that could be determined

PG&E Corporation and Pacific Gas and Electric Company

1    in the context of the action or dispute, then they could argue

2    that.

3         THE COURT:  What I'm asking you is why we can't have

4    the confirmation order say, in some, perhaps, better words, if

5    there are no defaults and no events that might give rise to a

6    default or nothing that would, under any circumstance,

7    contemplate the existence of a right to assert a default, that

8    nobody has to do anything?  They pass through.  I mean, I

9    realize that's not very artful, but that's the concept.

10        Or stated differently, Mr. Karotkin, if you -- well,

11   go back to my example.  If you and I have a contractual

12   relationship and everything is hunky-dory, nothing is amiss

13   either way, and you go through and assume the contract, I don't

14   have to do anything.  And if you breach it in the future, then

15   I have a claim against you in the future.

16        Right?

17        MR. KAROTKIN:  Yes, if there is a -- if there is no

18   default.  But that doesn't permit you to come in in the future

19   and say, oh, I forgot about something, you did something wrong;

20   I had a -- I had a claim within reasonable contemplation, but I

21   didn't raise it.  It doesn't allow you to do that.

22        THE COURT:  No, I agree.  I agree with you.

23        MR. KAROTKIN:  I --

24        THE COURT:  If you had reasonable contemplation, you

25   should have done it.

of 226
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. KAROTKIN:  And again, but what these -- what the

2   UCC and the other parties are asking you to do is to say,

3   ignore that.

4    THE COURT:  No, I know.

5    MR. KAROTKIN:  They get a free pass for everything,

6   and that's not the law.

7    THE COURT:  You've said it many times that this is no

8   free pass, and I agree with you it's no free pass.

9    MR. KAROTKIN:  Okay.  And we think the way -- put

10  aside -- I'll get to paragraph 13 that everybody's talking

11  about, that's caused so much consternation here -- but I

12  think -- there's one point I just -- I really have to really

13  clarify, is on page -- slide 4.  And this is with respect to an

14  argument that the UCC made in its objection.  It was kind of

15  made half-heartedly, in my opinion, and I know Mr. Bray -- it

16  seems to me, for obvious reasons -- didn't raise that argument

17  today.

18    But he did suggest that the Court could eliminate the

19  rights of the debtor, under California Code of Civil Procedures

20  Section 877, on the -- on some basis.  There is absolutely no

21  basis that either assumption, reinstatement, or anything could

22  eliminate the debtors' rights and defenses under that section.

23  And as you, Your Honor, have repeatedly recognized,

24  particularly with respect to claim allowance, that's determined

25  in accordance with applicable state law.

PG&E Corporation and Pacific Gas and Electric Company

1    And to the extent Mr. Bray is suggesting that if a

2 claim for indemnity or contribution is ever raised in the

3 future, that the debtors would not have the right to assert

4 that defense under applicable state law, that's completely

5 wrong. And we must make sure that that right is preserved.

6    THE COURT: I want to make sure that slide 4 gets in

7 the record. So would you make sure somehow --

8    MR. KAROTKIN: Yes, we will.

9    THE COURT: Okay.

10    MR. KAROTKIN: We will.

11    So turning to the -- turning to one other point that I

12 think is important. When Mr. Lubic -- I believe it was Mr.

13 Lubic -- was making his argument, he said, well -- he was

14 concerned about certain provisions of the plan that perhaps

15 could prejudice his client's rights. And he had an easy fix.

16 He had an easy fix, and his easy fix was -- and I think these

17 were his exact words -- he's going to fix it by saying,

18 notwithstanding anything else in the plan or the confirmation

19 order, they can do whatever they want.

20    That doesn't work. If they have particular items in

21 the plan or confirmation order which they think unduly

22 prejudice their rights, we can try to address those, or the

23 Court can try to address those. But to say a wholesale

24 disregard of the plan and the confirmation order, which

25 provides for so many different things, including approvals of

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   settlements, including discharge provisions, any number of

2   things, including findings with respect to good faith and other

3   items, that doesn't work.

4           So maybe there is a way to craft some language -- and

5   we'll be happy to look at language that both Mr. Bray and other

6   people suggest -- but it is a nonstarter to say,

7   notwithstanding anything contained in the confirmation order in

8   the plan, because that will strip us of every single right

9   under those documents.  And that will not work.

10          So as we stated at the outset, we think we have a

11  solution for this.  And I think, Your Honor, that you were

12  thinking about it as well.

13          And I would ask Mr. Tsekerides to turn to the last

14  page.

15          There is no need to make definitive rulings on these

16  issues now.  As I said, a determination can be made in the

17  context of an actual dispute, if it ever arises.  Your Honor,

18  we don't think there are -- there will be any valid,

19  noncontractual indemnification claims, based on the California

20  statute.  And with respect to contractual claims, we don't

21  think there's going to be many there, because most of the

22  contracts don't provide for indemnification.  So maybe there

23  will be claims, but we don't think a lot of claims will arise.

24  And they can be addressed when they do arise.

25          There's no reason, as I said before, to make blanket

PG&E Corporation and Pacific Gas and Electric Company

1   rulings.  And deferring a determination is better than issuing

2   a blanket ruling in a vacuum on the impact of Section 502(e),

3   for example, or other matters, which are so factually oriented,

4   and they cannot be addressed in the abstract.

5           But to make it clear, Your Honor, everybody complained

6   about -- I think it's paragraph 13 in the plan supplement --

7   that -- we will be happy to delete that.

8           THE COURT:  Mr. Tsekerides, scroll down to the bottom

9   there.  You got it?  Okay.

10          MR. KAROTKIN:  So we will delete from the plan

11  supplement -- I think it's in the notice of assignment -- the

12  language that these contractual indemnity rights are

13  automatically discharged on assumption.  People can

14  appropriately preserve their rights.  But in that context, Your

15  Honor, they cannot strip us of our rights.  And I think that

16  that's the most logical way to proceed.

17          THE COURT:  Is this slide 5?  Mr. Karotkin.

18          MR. KAROTKIN:  Yes, Your Honor.

19          THE COURT:  Okay.  Okay.  Make sure that I get that in

20  a hard copy, one way or another, so I can preserve it for the

21  record.  I mean, I can't do it from our screen here.

22          MR. TSEKERIDES:  We'll file it, like the others have.

23          THE COURT:  Okay.  Thank you.

24          MR. KAROTKIN:  Okay.  So with that, Your Honor, that

25  concludes my argument with respect to that particular issue.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Okay.

2          MR. KAROTKIN:  So if I could move on?  Give me a

3    moment, please.

4          I have a lot of papers here.

5          Okay, Your Honor, I apologize.  I think that the

6    remaining issues with respect to outstanding objections -- and

7    again, we did file, as I noted, the amended plan, which I

8    believe addresses the issues.  I think that the remaining

9    issues raised by the governmental entities are with respect to

10   Section 8.2(e), with respect to which there was a lot of

11   discussion already in the context of the assumption of

12   executory contracts; and 10.9(f), with -- which, I believe,

13   either Mr. Gorton or one of his colleagues raised.

14          I think the other outstanding matters are respect to

15   the Roebbelen objection, the Gantner, the California Franchise

16   Tax Board, and to certain issues raised by individual fire

17   victims and fire victim attorneys.  There, of course, was the

18   issue with respect to the registration rights agreement, which

19   is the subject of mediation.

20          So turning first to the remaining governmental

21   entities and DOJ objection, we believe -- and I said it

22   earlier -- Section 8.2(e) is entirely consistent with what

23   Section 365 says.  And it results in a recognition that when a

24   contract is assumed under Section 365, it results in the cure

25   of all defaults as of the assumption date, not just monetary

(973) operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    defaults.  I think, as I said earlier, they're trying to

2    restrict the scope of that.  We think Section 8.2 is perfectly

3    appropriate to address the situation that I mentioned earlier,

4    Your Honor.  You have to come forward.  The debtor has a right

5    not to be surprised when it's making a decision to assume or

6    reject, and I think that's what Section 8.2 says.

7         And I don't want to go through the Arriva

8    Pharmaceuticals case again.  But it's consistent with Arriva

9    Pharmaceuticals.  And I think that, Your Honor, you can -- I'll

10   tell you who -- I'll tell you who decided that case.  And it's

11   really, directly on point.  It's -- give me one second.

12        THE COURT:  Okay.  I'll find out.  I don't --

13        MR. KAROTKIN:  Judge Jelam (phonetic).

14        THE COURT:  Judge Jelam?  Okay.

15        MR. KAROTKIN:  So I think that that addresses the 8.2

16   issue.  And there's really no more reason to talk about it.

17        With respect to Section 10.9(f), frankly, Your Honor,

18   I don't understand the objection to Section 10.9(f).  It's

19   absolutely clear that it's limited in scope.  It's

20   appropriately drafted.  I don't see any way it can be

21   interpreted in the way that Mr. Gorton and his colleagues say

22   it can be interpreted.  It's appropriately circumscribed to

23   things -- release or exculpated pursuant to the plan, and it

24   doesn't warrant any modification.  And there's really no --

25   there's nothing else to say about it.

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1       So with that, Your Honor, we believe it's appropriate,

2   and there's no reason to modify it.

3       With respect to the Roebbelen Contracting objection,

4   as you may recall, the Roebbelen claim is a partially secured

5   claim by mechanics liens.  And the objection focuses on Section

6   4.16 of the plan that addresses the treatment of claims of

7   secured creditors.  And there aren't many secured creditors in

8   this case, Your Honor.  Basically, that's a class of mechanics

9   lien or is in similarly type situated people.

10      The thrust of the objection is that Roebbelen wants

11  the plan specifically tailored -- the plan provision

12  specifically tailored to their situation rather than to the

13  treatment of all claims in the class.  And that's not

14  appropriate.  They wanted us to recognize they're entitled to

15  fees, expenses, and interest at the contract rate.  And they're

16  only entitled to that, Your Honor, as you well know, if they're

17  oversecured.  And that has not yet been determined.  And the

18  plan provision addresses it.  If they are oversecured, they

19  will be entitled to whatever they're entitled under Section

20  506.

21      I told Mr. Roebbelen's (sic) counsel, with respect to

22  one other item, he was concerned that the provision did not

23  take -- did not provide that, at such time as a claim became

24  allowed, that it would be paid within thirty days.  And we're

25  happy to make that change to accommodate that.

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Can you give me the claim number -- I mean

2  the docket number of the objection?

3    MR. KAROTKIN:  If you give me a minute, I can.

4    THE COURT:  If you don't have it readily available, I

5  can take it up later.  I mean, I've got a chart of all the

6  objections.  I just don't have --

7    MR. KAROTKIN:  Yeah.

8    THE COURT:  I can't put my hand on everything.

9  That --

10    MR. KAROTKIN:  I have it.  I have it.  I have it.

11    It's 7282.

12    THE COURT:  728- what?

13    MR. KAROTKIN:  7282.

14    THE COURT:  2?  Thank you.

15    MR. KAROTKIN:  Okay.  So I think that that disposes of

16  the Roebbelen objection.

17    With respect to Mr. Abrams -- and Your Honor, the

18  debtors understand Mr. Abrams' passion and deeply regret all

19  that happened to him and his family and his community.  But

20  that, Your Honor, is not a reason -- but that, Your Honor,

21  actually is a reason to confirm the plan rather to face the

22  alternative and the substantial delay in payments to wildfire

23  victims that would be inevitable if we don't move forward with

24  this plan.

25    Suffice it to say, Your Honor, Mr. Abrams' arguments

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  lack every -- lack any evidentiary foundation. And in fact,

2  Your Honor, the record is directly to the contrary as to all --

3  almost -- virtually all the allegations he has made. Simply by

4  way of example, Your Honor, the evidence as to feasibility is

5  uncontroverted: billions of dollars currently being spent on

6  wildfire mitigation and billions of dollars budgeted for the

7  future for wildfire mitigation efforts, participation in the

8  go-forward wildfire fund, access on the effective date to five

9  billion dollars of a working capital facility and to the

10  capital markets to address any potential contingencies.

11  Your Honor, newspaper articles are not evidence.

12  There is no evidence of improper solicitation of votes, and

13  there is no evidence -- I believe he said that hedge funds are

14  going to exit the stock immediately. And there's, similarly,

15  irrelevant information or allegations he's made with respect to

16  claims trading and the fact that claims may have been purchased

17  at a discount. That is irrelevant to the findings you must

18  make under 1129(a).

19  I think -- we understand that Mr. Abrams and Ms.

20  Wallace may be unhappy with the plan. Tens of thousands of

21  other fire claimants, however, are not. And neither he, Ms.

22  Wallace, and, for that matter, Mr. Scarpulla or Mr. Hallisey,

23  have presented any evidence to frustrate the wishes of those

24  tens or thousands of claimants.

25  Mr. Scarpulla and Mr. Hallisey have presented no

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    evidence in -- their suggestion that the plan be modified

2    across the three fire victim classes is not a solution.  That's

3    only a path, Your Honor, to complete chaos, determination of

4    the RSAs, and months and months and months of delays, and value

5    destruction.

6          Mr. Tosdal focused primarily on plan classification

7    issues.  As you said, Your Honor, you have already addressed

8    this issue in connection with your recent decision with respect

9    to the Adventist dispute regarding the fire victim trust claims

10   resolution procedures.  I think it's been more than adequately

11   demonstrated in the evidence that we've presented that

12   requirements for classification under the plan have been

13   satisfied.  Section 1122(a) does not require that all similar

14   claims be in the same class.  And as you well know, a debtor

15   has substantial discretion to place similar claims in different

16   classes.

17         There simply has to be a business or economic

18   justification to do so or that it makes economic sense.  The

19   testimony before the Court demonstrates the justification for

20   classification based on factors, Your Honor, among others, of

21   settlement history, the differences between subrogation

22   claimants and fire victim claimants, the fact that fire victim

23   claimants had their own official committee -- or have their own

24   official committee in this case, with no representatives of the

25   subrogation claimants, and the unique relationships that the

PG&E Corporation and Pacific Gas and Electric Company

1  debtors have with the public entities who signed settlement

2  agreements.

3      And one thing Mr. Tosdal did say is that the Dow

4  Corning case supported his argument that settlement dynamics

5  are an improper basis to separately classify claims. Well,

6  that's just plain wrong. And in fact, Dow stands for precisely

7  the opposite principle. In Dow, certain claimants challenged

8  the separate classification of breast implant victims based on

9  geographic location. And in upholding that classification, the

10  court noted:

11      "We begin by noting the fairly obvious point, upon

12  which there is virtually no disagreement. All breast implant

13  claims, both domestic and foreign, are substantially similar.

14  All are unsecured, unliquidated, and disputed toward claims

15  arising out of the debtors' fail and manufacture of silicone

16  gel breast implants. All such claimants allege that the breast

17  implants caused or will cause them personal injuries."

18      Again, the same argument that Mr. Tosdal was trying to

19  make, which really doesn't even apply here.

20      Then the Court further stated, "In upholding the

21  classification, the separate classification of those claims

22  based on geographic location, the debtor made a considered

23  judgment as to what" settlement amounts -- "what settle amounts

24  the various breast implant payments would accept in resolution

25  of their claims. The fact that, in the debtors' judgment,

       PG&E Corporation and Pacific Gas and Electric Company

1   different breast implant claims warrant different settlement

2   offers is a perfectly legitimate reason to classify them

3   separately."

4          So to the extent that Mr. Tosdal was raising that

5   argument should be rejected.

6          Here, in part, settlement dynamics did drive the

7   classification, and that is similarly appropriate, as was found

8   in the Dow Corning case.

9          I want to quickly address the Gantner objection with

10  respect to PSPS, and some remarks that Mr. Harris made on the

11  record to suggest that I agreed with what he was saying.  I'm

12  not sure that I did agree with what he was saying.

13         First of all, just to make it abundantly clear, the

14  debtors by no means admit that any claims that could be

15  sustained based on PSPS are administrative expense claims.  And

16  as I'm sure you're aware, Your Honor, Mr. Gantner filed his

17  complaint asserting, I believe, that same type of an argument.

18  That complaint was dismissed on the pleadings.  And as we

19  stated in our reply, there is no reason that the plan has to

20  state or acknowledge that all claims related to PSPS are

21  administrative claims.  In the unlikely event any of those

22  claims are sustained -- and we don't think that's possible,

23  certainly, based on your ruling and the applicable law -- and

24  if it -- if they are sustained and if they are determined to be

25  administrative claims, then they will be treated as

PG&E Corporation and Pacific Gas and Electric Company

1  administrative claims under the plan.  No modifications under

2  the plan are required to address the particular PSPS

3  circumstances.

4           As to the California Franchise Tax Board, we've made

5  several modifications to the plan to accommodate this

6  objection.  To the extent there are any remaining objections --

7  and I don't know whether there are -- they should be rejected.

8  The plan's treatment of priority tax claims is entirely

9  consistent with Section 1129(a), and it should be approved.

10          Lastly, a few remarks, Your Honor, on Mr. Kelly and

11  Mr. Skikos' remarks, and just some final words.  Mr. Kelly and

12  Mr. Skikos spoke briefly on behalf of their clients, and I

13  think it's important to note that Mr. Kelly's firm signed the

14  tort claimants' RSA, as did Mr. Skikos, I believe, which set

15  forth the settlement that is embodied in the plan, including

16  the formula for the stock portion of the consideration to be

17  delivered to the fire victim trust, and the formula for

18  determining those shares.

19          Under these circumstances, for Mr. Kelly to assert

20  last week, Your Honor, not once -- not once, but twice, that

21  fire victims were forced -- that's his word -- were forced to

22  take the stock is a bit disingenuous.  They voted

23  overwhelmingly to accept the plan, to accept the stock, with

24  full disclosure as to the value or the potential fluctuation in

25  value of that stock.  That disclosure was approved by the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Court, and there was supplemental disclosure drafted by the

2    tort claimants' committee that addressed the very same issues.

3           And with respect to the registration rights agreement,

4    I don't want to get into that.  They addressed that as well.

5    That's currently being mediated, and I don't think there's any

6    reason to address the issues they raised at this time.  But we

7    will be prepared to do so if that doesn't get resolved.

8           And I don't really want to address the comments Mr.

9    Julian made with respect to his solution that he proposed last

10   Friday and that you questioned him about today, as to what

11   should be contained in a proposed order.  Suffice it to say

12   that we believe that that language is totally inappropriate.

13   But hopefully, Your Honor, Mr. -- Judge Newsome will be

14   successful in bringing that to a mediated solution relatively

15   quickly.

16          Your Honor, as I said at the outset of my opening

17   remarks last week, the plan before the Court represents a

18   remarkable achievement:  a virtual universal consensus

19   including all CPUC approvals, the support of the Governor's

20   office in compliance with A.B. 1054.  The fire victims have

21   spoken, and the debtors have plainly demonstrated that the plan

22   satisfies the requirements for confirmation under A.B. 1054.

23          Your Honor, no objecting party -- no objecting party

24   has presented any cognizable evidence to support their

25   objections, much less to defeat confirmation and the will of

PG&E Corporation and Pacific Gas and Electric Company

1  the claimants.  In fact, Your Honor, as I've said previously,

2  confirmation is the only path here.  Any other path will be

3  value destructive, eliminate any chance of meeting the A.B.

4  1054 deadline, and getting the protection of the go-forward

5  wildfire fund prior to the next fire season, and perhaps most

6  importantly, Your Honor, will delay distributions to fire

7  claimants for months, if not year.

8       Your Honor, we've met our burden.  The debtors have

9  met -- the plan proponents, I should say, have met their

10  burden.  We urge you to promptly confirm the plan.

11       Thank you.

12       THE COURT:  Thank you, Mr. Karotkin.

13       A couple of questions for you.  If there's a solution

14  and a successful resolution of the rights issue in the coming

15  days, I presume I will hear about it fairly soon, as will a lot

16  of other people, and I don't have to be concerned about it.

17  And -- but if not, I presume I should -- from what you've said

18  this morning, at least for the next few days, there's nothing

19  pressing for me to act on so that -- you said, if I can cut

20  this right, next Tuesday -- that's eight days from now -- I

21  will hear the motion to adjust the backstop matters.  And I

22  won't even hear it if there's no objection, presumably.  But --

23  and so that's out of the way.  And the process can then begin

24  by the people that need to go on that piece of the -- of it.

25       If, for some reason, the --

PG&E Corporation and Pacific Gas and Electric Company

1    MR. KAROTKIN:  Not without the registration rights

2 agreement being resolved.

3    THE COURT:  Well -- but I thought you told me that --

4 well, okay.  Then I -- maybe I conflated what you said, because

5 you made it -- you made it clear that the debt financing is not

6 time -- I mean, they need to get moving on that and will do so

7 after next Tuesday.  But on the --

8    MR. KAROTKIN:  Right.

9    THE COURT:  -- debt financing, that's -- that depends

10 upon the rights agreement, right, or I got that wrong?

11    MR. KAROTKIN:  No, I think, Your Honor, that's right.

12 I think the debt financing could move forward earlier.  And as

13 I -- I also suggested to Your Honor; perhaps we could have a

14 separate order to address the debt financing.

15    THE COURT:  Yes, I understood that.  But maybe I

16 misunderstood you that that was the order that dealt with

17 what's coming up next Tuesday.  Maybe I got that confused.

18 So --

19    MR. KAROTKIN:  No, no.  I don't think -- no, that's

20 the debt financing, not the equity financing.

21    THE COURT:  Okay.  Let me rephrase my question then,

22 because I don't want to beat this to death for now.  I --

23    MR. KAROTKIN:  And if Mr. Bennett -- I'm sure he will

24 clarify any mistake I've made in trying to explain what's going

25 on.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Well, he's smiling, and he's not unmuting

2   himself.  So let me try it again.

3          I have to think about what I have to do, okay?  So

4   finally, the matter's submitted to me.  And obviously, the more

5   things that get resolved, the better.  So if the committee, the

6   OCC, and the various governmental entities and agencies fall in

7   line, then that solves my problem.  And if the mediation that

8   Judge Newsome is overseeing is resolved favorably, that solves

9   the problem.  Those are two things that will be out of the way.

10         But let's take -- going back to those two, if there's

11  not a resolution, then I believe it's up to me to make the

12  decision on the disputes that we've been discussing most of

13  today on executory contract, et cetera, et cetera.  And if

14  there is no announcement of a resolution of the mediation, at

15  some point, somebody has to tell me that it's time to listen to

16  the arguments and make whatever decision that I'm supposed to

17  make.  And I'd rather just leave it at that.

18         And so -- and it's -- so the issue of debt financing

19  and equity financing are different, but at least the nearest

20  thing that has a time sensitivity to it is a week from Tuesday.

21         MR. KAROTKIN:  Well --

22         THE COURT:  June 30th lurks out there, and I'm not

23  planning to wait until June 30th to issue a decision.  I

24  want --

25         MR. KAROTKIN:  But I think with respect to the debt

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   financing, Your Honor, if it would be possible to get a short

2   form of order from you sometime this week, that would, I think,

3   alleviate some of the pressure on you as well.

4        THE COURT:  Okay.  Well, I think what I said this

5   morning -- if I can keep track of everything I said this

6   morning -- is that maybe if the two official committees sign

7   off on it, I could just do it without anybody in a dispute

8   there.  There may be some people that have an issue, but I just

9   can't solve everything at this point.

10        And if, at some point in the coming days, there is an

11  impasse and no likely mediated result on the rights offering

12  question, then somebody's got to tell me what to do and what --

13  when I should focus on it.

14        MR. KAROTKIN:  You mean registration rights.

15        THE COURT:  Sorry.  Registration.  Registration.

16        So my homework assignment is to sort through these

17  issues that we've been arguing about, eliminate those that have

18  been resolved, those that might get resolved in the coming

19  days, and then issue a decision.  And I will tell you, Mr.

20  Karotkin, I'm still -- I won't say that I'm comfortable, but I

21  want to avoid problems of getting down into phrases or --

22  phrases or languages in an order.  So we may have to have a

23  hearing just to discuss the finetuning of the order.

24        But I can't -- and it's not fair to you; it's not fair

25  to the litigants; it's not fair to anybody to turn that into a

PG&E Corporation and Pacific Gas and Electric Company

1   new round of briefing and a new round of debates and

2   discussion.  I might very well, if necessary, have a hearing

3   where we just go right down the list.  This is this; this is

4   this; this is this and tell you what I'm prepared to do.

5           But the more things that get resolved, the better.  So

6   my expectation will be to issue something in -- well in advance

7   of June 30th and leave it at that.

8           So I want to thank you, particularly, and all the --

9   your colleagues on your firm and for the thorough preparation

10  and presentation in this argument.  I don't mean to exclude Mr.

11  Banner (phonetic) or Mr. Johnson or the committees or their

12  counsel.  This has been an enormous effort by a huge number of

13  people working for their respective goals.  And I am blessed

14  by -- and burdened -- by their competence and thoroughness.

15  And I'm doing my best to do what I can.

16          I am going to do, again, what I don't like to do.  I'm

17  going to decline further argument.  I see hands that come back

18  again from Mr. Abrams and Ms. Wallace.  And now I see Mr.

19  Etkin.

20          Mr. Etkin, again, I don't mean to be rude.  I'm simply

21  not going to reopen argument.

22          And Mr. Abrams, as I said before, you filed something.

23  It's not an action item.  If you take offense at something that

24  someone said, I'm sorry about that.

25          And Ms. Wallace, much the same to you.  I don't mean

PG&E Corporation and Pacific Gas and Electric Company

1    to minimize your situation, but I'm simply not going to

2    interfere with my next job.  And my job is to work through

3    these very complicated, thoroughly briefed arguments and

4    detailed documents and evidence and make a decision.

5           So I'm going to thank you all.  I'm going to conclude

6    the hearing and wish you well.  And the ball's in my court to

7    do what's next.  Thank you for your argument.

8           MR. KAROTKIN:  Thank you, Your Honor.

9           MR. TSEKERIDES:  Thank you, Your Honor.

10          THE COURT:  Thank you.

11       (Whereupon these proceedings were concluded)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1                    C E R T I F I C A T I O N

2

3    I, Colin Richilano, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ COLIN RICHILANO

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  June 9, 2020

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

**$**

**$12.50 (1)**
21:13
**$7.50 (1)**
22:2

**§**

**§365 (1)**
130:5

**A**

**AB (5)**
107:15;108:5;
188:20,22;189:3
**ability (9)**
20:10;21:3;66:2;
87:22;119:16;128:25;
130:10,15;132:12
**able (23)**
19:8;21:10;25:17;
28:2;32:23;60:19;67:2;
72:1;76:25;94:9;98:4,
4,6;103:22;109:12;
125:25;128:25;129:7;
131:10;132:9;147:20;
150:18;159:21
**above (4)**
123:5;155:3;166:3
**Abrams (9)**
18:21;33:13,15;
103:21,22;182:17;
183:19;193:18,22
**Abrams' (2)**
182:18,25
**absent (1)**
21:20
**absolutely (12)**
7:22;24:1,6,6;98:15;
100:2;117:25,25;
171:6;172:8;175:20;
180:19
**absorb (4)**
17:18;25:16;71:18;
148:6
**abstract (1)**
178:4
**absurd (1)**
144:20
**abundantly (2)**
164:13;186:13
**academics (1)**
47:3
**accelerate (1)**
20:11
**accept (3)**
185:24;187:23,23
**acceptable (1)**
36:9
**accepted (2)**

**access (4)**
22:4;57:14;114:4;
183:8
**accommodate (3)**
18:23;181:25;187:5
**accomplished (1)**
22:15
**accordance (1)**
175:25
**according (1)**
120:6
**Accordingly (2)**
21:20;140:11
**account (5)**
12:23;79:7,8;151:3;
154:13
**accounted (1)**
150:9
**accounting (1)**
145:4
**accurate (1)**
145:6
**Acequia (1)**
161:10
**achieve (1)**
22:12
**achievement (1)**
188:18
**acknowledge (2)**
54:8;186:20
**acknowledged (1)**
164:21
**acknowledgment (1)**
56:20
**across (1)**
184:2
**act (9)**
26:6;38:15;44:2,21;
48:21;102:23,25;
115:25;189:19
**action (30)**
18:1;74:13,24;78:5,
6;80:21;81:18,19,20,
25;82:4,5,10,14,24;
83:1;85:11;87:11;88:6,
9,10;89:13;103:25;
119:14;140:5;170:22;
171:19;172:21;174:1;
193:23
**actions (3)**
81:24;88:15;89:17
**activated (1)**
105:5
**active (5)**
43:25;44:2;70:6,8;
71:15
**acts (1)**
140:9
**actual (8)**
17:7;19:16;36:8;
79:3;138:1,6,12;
177:17

**actually (24)**
24:11;44:18;48:10;
52:2;54:18;61:17,17;
65:21,24;66:5;94:14;
99:5;108:12;109:22;
110:7;111:9;115:9;
116:25;117:11;140:5;
149:15,23;162:14;
182:21
**add (7)**
16:24;100:3;111:13;
121:3;136:20;162:6,9
**added (3)**
56:7;103:1;120:9
**addition (4)**
24:13,15,16;85:18
**additional (3)**
7:12;23:2;127:7
**Additionally (1)**
21:14
**address (39)**
27:7;29:10;32:21;
33:4;35:11;64:3;72:14;
74:6,8;79:4;94:17;
97:8;101:6,8;105:14;
110:16;111:5,8;
112:19;114:15;115:13;
116:24;127:2,11;
138:5;155:23;163:15;
167:1,7;168:4;176:22,
23;180:3;183:10;
186:9;187:2;188:6,8;
190:14
**addressed (17)**
19:16;32:17;61:6;
74:9;84:3;96:19;
105:15;110:12;111:17;
165:14;169:10;172:23;
177:24;178:4;184:7;
188:2,4
**addresses (9)**
23:19;49:12;170:18,
25;172:6;179:8;
180:15;181:6,18
**addressing (2)**
111:17;113:15
**adds (2)**
16:14;70:25
**adequate (2)**
130:8;135:2
**adequately (6)**
128:13;129:6;
130:10,20;136:10;
184:10
**adjudicate (1)**
166:22
**adjudicated (1)**
95:13
**adjust (2)**
148:7;189:21
**adjustments (2)**
30:7,23
**administrative (8)**

**actually (24)**
63:25;89:18;97:10;
166:2;186:15,21,25;
187:1
**admit (1)**
186:14
**admits (2)**
41:19;148:12
**admitted (2)**
90:1;148:24
**adopt (1)**
61:4
**advance (1)**
193:6
**advantage (2)**
27:17;156:12
**advantageous (2)**
20:6,8
**Adventist (2)**
69:7;184:9
**adversary (1)**
166:21
**advice (2)**
15:19;84:11
**advised (1)**
91:8
**advisement (1)**
26:6
**advocated (1)**
108:19
**affect (4)**
20:10;24:10;74:21;
126:22
**affected (4)**
23:24,25;50:3;87:10
**affects (1)**
92:2
**affiliates (2)**
64:7;105:19
**afforded (1)**
75:1
**afraid (1)**
134:16
**afternoon (9)**
25:20;105:7;122:7,8;
126:9;137:4,6,12;
164:4
**afterwards (1)**
85:24
**again (64)**
7:18;8:24,24;9:24;
12:12;14:5,20;18:9;
20:24;21:16;22:22;
23:7,9,25;24:12;27:9;
29:24;30:19;31:22;
35:17;41:10;44:8;
46:12;48:20;49:15;
51:9;53:10;54:25;55:1,
4,9;58:3;59:19;63:23;
64:22;70:3;72:5;79:13;
101:23;110:15;111:4;
120:7;127:10;132:23;
133:8,9;136:21;149:7;
165:13;168:12;169:1,

3,10,15;170:16;171:6;
175:1;179:7;180:8;
185:18;191:2;193:16,
18,20
**against (38)**
43:20;46:5,8,17,22;
47:6,14,15;52:14,19,
21;53:13;57:7;58:18;
65:19;66:23;76:16,17;
99:1;116:15;118:10;
120:1,21;138:21,23,25;
139:1,23,24;140:3,15;
141:2;150:1;170:23,
23;171:24;172:4;
174:15
**agencies (4)**
34:12;89:2;90:23;
191:6
**Agency (2)**
73:11,12
**agenda (10)**
18:6;19:1,13;32:10,
12,13,14;68:10,21,24
**agent (1)**
63:25
**aggregate (1)**
103:19
**aggregated (1)**
128:5
**ago (11)**
29:18;35:1,2,3;
36:18;122:14;127:13;
137:23;157:8;159:12,
14
**agree (35)**
5:13;6:17;26:9;
31:24;39:17;41:7;
42:24;44:10,17,22;
48:17;49:8;56:4;77:18;
117:8;118:15;121:1;
122:21;123:1;124:17,
25;125:8,13;129:3,4;
130:3;141:14;147:23;
158:21;161:1;172:25;
174:22,22;175:8;
186:12
**agreed (10)**
15:10;23:12,21;58:3;
75:24;97:9;112:3;
122:20;124:21;186:11
**agreeing (1)**
173:2
**agreement (32)**
6:15;7:16,23;9:12,
18;12:7,22;14:22;15:3;
17:8;24:20;27:1,1,11;
37:1;64:1,8,9,16,17,21;
67:1,3,10;91:9;106:22,
24;114:12;129:22;
179:18;188:3;190:2,10
**agreements (19)**
49:23;64:6,7,8,11,
24;86:22;93:20;

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 196
of 226

105:22,22;106:7,9,9,
14;107:4,5,7;109:10;
185:2
**agrees (1)**
74:16
**aha (1)**
125:9
**a-half-billion-dollar (1)**
26:16
**ahead (11)**
12:18;34:24;70:14;
85:9;86:17;88:4;
102:21;113:5;131:1,
21;164:1
**airplane (1)**
117:11
**airplanes (1)**
117:11
**AK (1)**
19:21
**aligned (2)**
34:5;161:11
**allegation (1)**
144:11;145:2
**allegations (3)**
140:10;183:3,15
**allege (1)**
185:16
**alleged (20)**
42:7;138:7;139:22;
140:15,17;143:7;
144:3,22,22;145:1,10,
12,15,21;147:4,22;
148:2,11,15;150:6
**allegedly (2)**
144:2;151:15
**alleges (2)**
140:3,6
**alleviate (1)**
192:3
**Alliance (1)**
73:13
**allies (2)**
90:23;92:2
**allow (2)**
23:1;174:21
**allowable (1)**
58:17
**allowance (11)**
52:7;112:23;125:4;
126:22,25;141:20;
150:23;153:20;155:22;
157:17;175:24
**allowances (1)**
153:10
**allowed (15)**
37:11;52:5;59:1;
73:6;125:5,6;143:4,6;
150:16,22;153:23;
154:8,14;155:24;
181:24
**allowing (5)**
35:14;63:24;85:21;

**107:1;126:20**
**allows (4)**
40:4,13;48:22;92:3
**alluded (1)**
68:11
**almost (5)**
38:13;81:3;119:23;
158:17;183:3
**along (1)**
56:24
**alter (2)**
140:4,9
**altering (1)**
30:24
**alternative (5)**
21:25;22:20;27:6;
29:13;182:22
**Although (3)**
22:3;16;27:23
**always (4)**
22:16,18;49:15,16
**ambiguities (1)**
114:22
**ambiguity (2)**
17:17;60:7
**amend (1)**
170:19
**amended (3)**
32:16;160:20;179:7
**amendment (17)**
19:18;20:1,6,10,14,
25;21:20;22:12,24;
23:12,18;24:16,20,23,
25;25:2;64:16
**amendments (2)**
91:2;92:20
**American (1)**
90:25
**amiss (1)**
174:12
**among (1)**
184:20
**amount (24)**
5:5;28:1,2;49:5;
58:16;60:23;75:4,5,7;
78:9;96:4;112:8;135:5;
136:8;138:5,14;
142:17,17;143:5;
150:17,25;151:5;
152:10;154:9
**amounts (6)**
27:23;110:11;136:3;
150:16;185:23,23
**analysis (2)**
47:10,11
**angels (1)**
46:2
**announced (1)**
24:15
**announcement (4)**
19:19;25:7,21;
191:14
**announcements (1)**

**103:15**
**anti-assignment (1)**
40:15
**anticipate (1)**
100:15
**anticipating (1)**
101:15
**Apologies (2)**
67:22;99:15
**apologize (4)**
10:15;86:5;109:21;
179:5
**apparent (2)**
21:8,21
**apparently (1)**
58:14
**appeal (1)**
28:7
**appealable (1)**
29:15
**appealing (1)**
143:22
**Appeals (1)**
160:2
**appearance (1)**
4:17
**appearances (1)**
73:9
**appeared (1)**
160:7
**appearing (1)**
104:7
**appears (1)**
136:2
**appetite (1)**
83:22
**applicability (1)**
54:21
**applicable (9)**
38:10;50:2;54:2,18,
19;171:4;175:25;
176:4;186:23
**applied (1)**
89:19
**applies (6)**
54:13;88:16;164:22;
171:14;173:7,8
**apply (10)**
41:2;79:22,22;81:5;
88:9,18;164:22;
165:15;171:9;185:19
**Applying (1)**
155:20
**appreciate (9)**
63:3;68:3;72:6;
90:12;99:17;100:7;
118:18;153:2;162:4
**approach (3)**
21:22;30:2;149:4
**appropriate (17)**
19:23;54:10;70:3,
25;79:24;108:24,25;
111:6;121:8;127:2;

**151:9;153:9;164:20;**
180:3;181:1,14;186:7
**appropriately (5)**
167:11;170:8;
178:14;180:20,22
**approval (4)**
20:3,15;25:1;107:24
**approvals (5)**
9:21,25;30:16;
176:25;188:19
**approve (3)**
22:24;28:11;60:23
**approved (14)**
20:20,24;24:20,23;
25:2,4;106:10,12,16;
107:6,14;160:21;
187:9,25
**approves (1)**
44:15
**approving (1)**
10:22
**approximate (1)**
22:1
**approximately (2)**
21:11,13
**arbitrary (2)**
158:17;162:16
**Arbormetrics (1)**
122:10
**area (3)**
76:1;95:7;142:20
**areas (2)**
94:13;111:19
**arguably (1)**
118:12
**argue (9)**
5:17;8:7;33:1;68:22;
77:22;79:17;83:11;
114:23;174:1
**argued (6)**
78:22;82:15;150:15;
152:24;168:15;170:6
**arguing (8)**
79:24;80:1;83:8;
108:3;131:14;145:22,
24;192:17
**argument (41)**
10:17;26:4;47:25;
54:18;57:6;59:11;63:3;
64:5;68:18;78:4;80:22,
23,23;94:15;99:3;
101:4;113:8;116:15;
140:23;143:10;153:3;
156:3;157:24;160:14;
161:21,24;162:4,19;
170:3;175:14,16;
176:13;178:25;185:4,
18;186:5,17;193:10,17,
21;194:7
**arguments (22)**
16:8;19:3;33:18;
34:10;60:2,3;69:24;
83:24;91:3;98:1;115:4;

**117:19;119:7;121:5,6;**
157:25;163:11,16;
164:14;182:25;191:16;
194:3
**arise (15)**
79:18,18;94:13;
110:17;111:5;116:24;
164:17,19,20,24;
165:11,13,14;177:23,
24
**arises (9)**
53:11;75:20;79:3;
80:3;111:9,9;164:16;
169:11;177:17
**arising (3)**
74:13;118:11;185:15
**Arnold (1)**
68:9
**arose (2)**
12:17;173:25
**around (3)**
18:2;103:3;143:12
**arrangement (1)**
112:5
**Arriva (12)**
110:12,25;129:13,
16;166:17;167:11,23;
168:20;173:5,6;180:7,
8
**arson (1)**
95:21
**artful (1)**
174:9
**Article (1)**
159:2
**articles (1)**
183:11
**articulated (1)**
119:9
**aside (5)**
28:16;30:20;40:23;
120:12;175:10
**asleep (2)**
45:1;46:23
**aspect (1)**
135:1
**aspects (2)**
38:7;135:3
**Asplundh (1)**
122:10
**assert (45)**
43:12,20;45:2,21;
46:5,7,11,17,24;47:6,
14,15;48:10;49:4,5;
66:23;75:6,14,15,23;
78:7;80:16;87:11,23;
95:19,24;96:5;119:16;
120:13,21;124:8;
130:14;139:12,24;
167:13;168:1,11;
169:5;170:14;171:23;
173:10,15;174:7;
176:3;187:19

Min-U-Script®

Case: 19-30088   Doc# 7869   Filed: 06/10/20   Entered: 06/10/20 07:33:26   Page 197
of 226

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(2) agrees - assert

**asserted (29)**
46:25;49:6;75:5;
77:17,18;78:9,12;
79:21,22;81:1,2,3;
110:11,11;130:1;
138:21,23,25;139:1;
140:2;166:19,20;
168:12,25;170:22,23;
171:17,24;172:3
**assertible (1)**
76:16
**asserting (3)**
47:22;169:25;186:17
**assertion (3)**
76:22;139:4;173:13
**asserts (1)**
138:5
**assets (1)**
151:13
**assigned (8)**
53:16;56:25;120:4;
129:23;170:21;171:19,
22;172:21
**assignment (5)**
6:4;57:8;116:13;
178:11;192:16
**assignments (1)**
53:12
**assistance (1)**
92:24
**assume (34)**
11:13;16:12;26:2;
30:1;38:15,21,22;40:8,
22;41:3;43:2,11,23;
44:5,13,20,21;45:22;
46:10;47:7;87:22;
95:20;97:9;98:12,16;
102:19;106:21;132:6;
138:14;168:6,7,10;
174:13;180:5
**assumed (38)**
38:9;39:4,9,15;
42:13;44:6;45:3,5;
46:15;50:5,15;64:16,
17,24;67:17,23;74:14;
75:11;76:4;77:10;
93:19;94:2,3;95:11;
98:5,18;108:9;110:23;
116:18;117:2;123:10;
124:22;129:3;131:6;
136:10;167:5;171:9;
179:24
**assumes (2)**
76:17;87:2
**assuming (8)**
40:10;102:9;107:19;
108:8,11;127:16;
130:15;136:19
**assumption (48)**
31:22;36:23;37:3,20;
38:15;41:10;42:3;44:3,
16,22;47:22;48:3,22;
50:14;53:4;74:8,12,16,

18;76:1,2,7,15;77:13;
78:25;80:13;94:20;
106:5,22;107:8,17;
108:6;109:4;110:10;
128:3,17;130:7;
131:11;166:25,25;
167:8,9;168:2;170:1;
175:21;178:13;179:11,
25
**assumptions (1)**
122:15
**assurance (3)**
130:8,21;135:2
**assure (5)**
20:6,13;128:13;
129:6;130:10
**assured (2)**
130:20;136:9
**assuring (2)**
22:17;135:2
**astonished (1)**
61:18
**astonishing (2)**
148:10;149:9
**AT&T (1)**
68:9
**attached (3)**
41:6;123:7;139:6
**attachment (1)**
7:5
**attack (1)**
61:9
**attempt (4)**
54:20;60:14;75:13;
107:10
**attempting (2)**
37:7;57:5
**attempts (2)**
41:13,19
**attend (1)**
16:24
**attention (2)**
37:3;68:16
**attorneys (3)**
93:23;104:8;179:17
**attributable (3)**
145:14,18,24
**audience (2)**
101:19;102:8
**audio (11)**
62:17;73:25;76:20;
77:17;83:5,6;88:2;
90:14;132:21;134:8,11
**August (1)**
128:18
**authenticate (1)**
89:23
**authorities (1)**
108:24
**Authority (2)**
73:13,14
**authorize (1)**
29:16

**authorized (3)**
29:17;30:18;90:20
**authorizing (2)**
27:4,12
**automatic (1)**
169:22
**automatically (2)**
117:16;178:13
**availability (1)**
22:17
**available (5)**
47:17;151:12,13;
152:20;182:4
**averted (1)**
77:1
**avoid (3)**
22:14;69:20;192:21
**avoiding (1)**
23:2
**aware (8)**
16:13;20:19;43:25;
90:6;98:25;104:1;
107:14;186:16
**away (6)**
19:11;23:17;25:11;
110:20;133:10;153:10
**awkwardness (1)**
17:17

**B**

**b1A (1)**
128:2
**b1C (1)**
130:9
**back (58)**
6:10;8:7,11,12;13:9,
24;14:10;18:10;32:24;
34:22;35:9,17;42:25;
44:12;45:1,2,4;47:4;
51:9;52:9;54:18;55:10;
57:7,20;62:13,16;
66:10,12,25;67:2;71:8,
13,16;72:9,25;74:8;
80:17;87:14;99:3,11;
103:7;106:1;113:7;
118:10;125:16;132:3;
134:16;146:10;148:7;
149:21;157:22;163:5;
164:5;170:17;173:5;
174:11;191:10;193:17
**background (1)**
53:11
**backstop (25)**
19:19;20:2,20,23,24;
21:9,18,21;22:2,3,7,11,
14,16,22;23:2,12,16,
20,22;24:20;30:7,23;
160:21;189:21
**backstops (3)**
21:24;22:5,14
**bad (1)**
41:6

**Baker (1)**
4:19
**balance (2)**
31:6;130:22
**ball (1)**
31:9
**ball's (1)**
194:6
**bank (1)**
87:1
**bankers (1)**
14:10
**bankrupt (1)**
149:5
**Bankruptcy (45)**
4:4;6:14;37:22;
40:21,22;41:1;44:25;
46:20;47:16,23;52:13;
66:21;75:12;76:4,6,13;
78:10;80:2,4,18,20;
81:21,22;82:25;83:11;
87:5;96:6;98:8,14;
106:23,24;109:11;
128:21,22;155:13;
157:9;160:3;166:11,
22,23;167:9;168:17;
171:5;173:3,4
**Banner (1)**
193:11
**bar (2)**
48:4;138:4
**bargain (1)**
150:11
**barking (2)**
19:11;86:8
**base (1)**
22:8
**based (13)**
5:6;25:3;30:25;50:7;
72:21;114:5;156:14;
177:19;184:20;185:8,
22;186:15,23
**baseline (1)**
148:20
**basically (10)**
27:12;30:14;41:23,
25;51:25;54:24;57:4,5;
167:2;181:8
**basis (21)**
12:25;13:17,21;20:4;
26:7;28:3;31:18;53:23;
54:1,5;65:13;95:19;
106:24;129:5;141:2;
148:23;149:17;154:6;
175:20,21;185:5
**Bay (1)**
146:6
**bearers (1)**
27:20
**beat (1)**
190:22
**became (1)**
181:23

**become (1)**
11:2;21:8;76:7;
79:14
**becomes (1)**
62:12
**begin (3)**
9:2;185:11;189:23
**beginning (1)**
151:2
**behalf (12)**
52:24,25;63:23;69:6;
73:11,19;92:8;105:13;
119:1;128:11;137:13;
187:12
**behind (2)**
98:12;113:20
**Behlmann (14)**
137:23;138:2;139:5,
10,23;142:15;143:9;
145:2;148:24;149:20;
150:9;155:7;159:3;
161:11
**Behlmann's (4)**
138:9;139:4;144:5;
151:7
**believes (3)**
18:5;36:6;78:21
**belongs (1)**
172:15
**beneficial (2)**
22:19,19
**benefit (4)**
14:17;23:8;87:20;
150:10
**benefitted (1)**
24:13
**Benjamin (1)**
68:8
**Bennett (14)**
102:25;136:24;
137:1,4,4,6,9,9;157:23;
162:6,9,20,24;190:23
**best (10)**
15:19;18:20;102:1,
18;115:6;134:20;
142:4;148:6;159:18;
193:15
**best-case (1)**
11:15
**better (13)**
23:9;58:18;133:24;
134:11;136:2;138:12;
143:21;154:23;161:23;
174:4;178:1;191:5;
193:5
**beyond (5)**
18:6;65:11;82:4;
85:16;169:17
**Biaggio (1)**
140:19
**big (5)**
28:17;57:13;76:2;
146:21;161:22

Min-U-Script®

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 198
of 226

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(3) asserted - big

**bigger (1)**
71:9
**bill (1)**
46:19
**billing (1)**
54:1
**billion (13)**
7:20;20:22;22:20;
23:13;24:17,22;31:1;
148:13,21,22;150:1;
159:6;183:9
**billions (2)**
183:5,6
**bit (7)**
28:2;36:17;70:14;
81:14;136:2;137:16;
187:22
**blackout (1)**
12:23;13:25;17:22
**black-out (1)**
26:18
**blank (1)**
101:17
**blanket (10)**
79:9,15,23;81:8;
110:22,22;112:20;
165:1;177:25;178:2
**blessed (1)**
193:13
**blue (1)**
148:14
**board (3)**
49:15;179:16;187:4
**body (1)**
55:17
**bogged (1)**
12:11
**bogus (1)**
139:18
**bonds (1)**
147:9
**both (27)**
4:16;6:9;12:16;
16:12,16;19:5;25:15;
35:13;47:6;56:8;57:25;
69:18;71:7;72:5,5;
73:8;105:21;106:13;
107:3;109:5;132:10;
136:24;141:6;145:16;
165:3;177:5;185:13
**bothered (1)**
8:16
**bottom (2)**
112:18;178:8
**bought (4)**
147:9,9;153:11;
155:21
**Boutin (1)**
73:11
**BPAs (1)**
55:11
**BR (1)**
98:8

**Bray (105)**
32:25;33:11,20,23,
24;34:6,24;35:5;36:17;
38:24,25;39:1,2,7,13,
17,20;40:11,13,19;
41:7,9;42:18,22;43:1,4,
7,22;44:9,18;45:4,7,10,
13,20,22,25;46:8,13,
19,20,20;47:3,4;48:2,6,
9,14,16,24;49:7;50:22;
51:1,5,9,16;53:2;56:2,
5,11,13,17;57:12,15,
24;58:3;59:12,16,20,
22;61:11,14,21,22,23;
62:2,5,7,8,18,20;63:2,
6;64:25;65:5,16,19;
74:9;78:8;91:3;94:20;
99:5;105:15;106:20;
109:5;110:21;119:18;
128:22,22;165:3,9;
169:25;175:15;176:1;
177:5
**Bray-Montali (1)**
42:25
**Bray's (2)**
33:9;99:20
**breach (3)**
129:25;130:1;174:14
**breached (2)**
47:13;129:22
**breadth (1)**
64:10
**break (21)**
43:22;62:17;73:24;
76:20;77:17;83:5,6;
84:10,12;85:8,23,24;
86:1,16;88:2;90:14;
100:10,13;101:22;
103:5;132:21
**breast (6)**
185:8,12,16,16,24;
186:1
**Breitburn (1)**
161:13
**brewing (1)**
93:25
**brief (24)**
10:24;33:8;35:24;
37:25;38:5;41:22;
51:21;52:3;58:10;65:1,
4;70:2;71:20;119:4,13,
18,20;122:24;123:8;
126:18;149:3;161:13;
163:18;167:19
**briefed (1)**
194:3
**briefing (1)**
193:1
**briefly (8)**
19:23;29:10;63:24;
105:14;111:15;134:3;
136:1;187:12
**briefs (4)**

35:8,9;57:3;69:21
**brilliant (1)**
47:10
**bring (21)**
4:7;14:9;19:17,23;
25:7,20;33:11;58:11;
63:7,10,11;68:16;73:1,
3;86:15;104:11;105:2;
109:16,23;137:1;
163:23
**bringing (4)**
20:15;94:22;126:8;
188:14
**broad (4)**
64:12;81:25;82:4;
85:15
**broader (4)**
88:17;89:4,6;172:14
**brought (4)**
20:3;120:2,21;
166:21
**Bruce (1)**
137:9
**bucks (1)**
45:5
**budgeted (1)**
183:6
**built (1)**
28:14
**bundle (1)**
45:13
**burden (8)**
27:7;86:20;87:22;
167:24;173:10,15;
189:8,10
**burdened (1)**
193:14
**buried (2)**
41:22;114:25
**burner (1)**
13:9
**bus (3)**
158:19,22,24
**business (5)**
73:14;82:11;83:14;
130:22;184:17
**busy (1)**
5:1
**button (1)**
123:25
**buy (1)**
140:22

**C**

**cabineting (1)**
67:7
**calculation (3)**
136:18,23;143:6
**CALIFORNIA (10)**
4:1,5;27:20;73:11,
12;106:8;175:19;
177:19;179:15;187:4

**California's (1)**
107:16
**Call (17)**
4:3;13:19;20:21;
30:2;33:15;87:20,21,
21;102:6,14;103:16,22,
25;104:5,15,17;115:1
**called (5)**
6:6;39:5;48:12;
80:11;139:17
**calling (1)**
21:24
**Calpine (10)**
86:12;93:13,17,18,
19;95:4,6;96:13;97:6;
100:1
**Calpine's (2)**
95:11;96:10
**came (3)**
56:19;81:11;159:9
**Camp (7)**
146:7,10,11,12,25;
147:10;153:12
**Can (144)**
4:13;5:25;6:11;7:13,
13;9:1,4,15,19;11:2,8,
17;13:1,9;14:9,22,22;
19:9;20:5;25:1;26:11,
20;27:2;29:10;30:17;
31:12;32:21;33:1;35:3;
36:8,9,10;41:24;42:10,
24;43:22;46:12;47:14,
15;49:11;54:24;56:7;
59:1,9;63:19,21;68:15,
20;69:18,18,21;71:5,7,
19,23;73:1;76:9;77:18;
79:19;80:17;84:8;86:7,
14;87:1;89:11;90:3;
96:19;103:19,24;
104:10;105:8,8,10;
107:25;111:5;114:18;
115:4,5,17,20;116:14,
24;118:21,22,23;
119:20;121:20;123:20;
125:19;126:9,11,11;
129:6;130:12;132:7;
133:9,11;134:12,14,18,
22;135:3;136:2,10;
137:2;138:17;142:6,
11;143:5;144:15;
147:19;149:11;156:16,
20;157:16;160:6;
163:1,1,2;164:20;
165:15,19;166:25;
167:10,21;168:6,22;
176:19,22,23;177:16,
24;178:13,20;180:9,20,
22;182:1,3,5;189:19,
23;192:5;193:15
**Canyon (1)**
90:25
**capital (8)**
20:12;21:23;22:4,20;

94:21;114:4;183:9,10
**capitalization (8)**
142:18;147:20;
148:16,19;149:1,3;
156:4,4
**capitalized (2)**
5:20;12:10
**care (2)**
71:18;75:10
**careful (4)**
96:13;118:4;121:6;
171:12
**Carlson (1)**
74:2
**carving (1)**
118:9
**case (68)**
8:7;10:3,7;16:4,19;
18:25;32:1;36:20;
37:20;39:11;42:24;
43:25;45:3;48:18;50:9,
21;51:20;52:24;66:16;
81:19;95:9,21;98:3,6,8,
10,25;99:4;105:24;
106:1,2,20;109:9;
110:13,25;112:12;
114:7;117:20;123:3;
124:7,25;129:14,15,15,
17,18,21,22;131:12;
132:24;151:15;154:7,
24;156:13,15;161:18;
162:11,11,11;166:18,
21;167:12;180:8,10;
181:8;184:24;185:4;
186:8
**cases (8)**
40:1;93:18;154:25;
161:11,12,14,14,15
**cash (1)**
24:1
**categorical (1)**
165:6
**categorized (1)**
62:23
**category (2)**
59:14;141:11
**causation (2)**
96:11;145:19
**cause (21)**
78:5,6;81:18,19,23,
25;82:4,5,10,14;83:1;
85:11;87:10;88:6,9,10;
89:13;97:13;140:5;
170:22;185:17
**caused (4)**
46:5;95:17;175:11;
185:17
**causes (8)**
47:14;74:13,23;
82:23;88:15;119:14;
171:19;172:21
**causing (1)**
84:13;94:23

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 199
of 226

**certain (16)**
9:20,25;21:2,2;
22:11;23:19;27:23;
28:1,10;36:22;101:12;
129:23;135:12;176:14;
179:16;185:7
**certainly (15)**
13:18;22:3;35:11;
40:9;41:12;69:24;70:3,
19;71:24;74:23;82:9;
121:13;166:5;172:8;
186:23
**cetera (3)**
82:19;191:13,13
**challenge (3)**
21:15;57:11;132:11
**challenged (2)**
58:11;185:7
**challenging (2)**
60:3;96:7
**chance (3)**
28:15;36:1;189:3
**change (5)**
26:14;35:25;45:6;
46:3;181:25
**changed (3)**
64:19,20;116:25
**changes (4)**
60:23;69:2;70:22;
83:23
**channel (1)**
59:18
**channeled (1)**
58:20
**chaos (1)**
184:3
**Chapter (6)**
20:12;24:2;95:18;
96:4,14;154:25
**charge (1)**
87:21
**charged (1)**
147:11
**chart (2)**
150:5;182:5
**charts (3)**
146:2;149:22;155:13
**check (1)**
163:5
**cherry (1)**
42:11
**cherry-pick (2)**
38:21;106:21
**chimed (1)**
24:12
**choice (1)**
62:19
**choices (1)**
96:25
**choose (2)**
36:10;102:6
**chorus (2)**
55:12,17

**chose (2)**
21:16;144:6
**circle (1)**
55:10
**Circuit (6)**
37:19;43:16;44:1,9;
109:9;150:10
**Circuit's (2)**
48:25;140:19
**circumscribed (1)**
180:22
**circumstance (4)**
95:10;96:10,10;
174:6
**circumstances (13)**
7:18;25:4;55:7;
79:12,19;151:9;
155:24;164:18,20;
165:15;172:9;187:3,19
**cited (8)**
48:19;87:15;98:9;
106:20;132:2;139:6;
161:11,12
**cites (1)**
129:14
**Citi (3)**
63:23,25;64:6
**Citibank (1)**
34:11
**Citibank's (1)**
34:21
**city (9)**
73:14,19;90:24,25;
91:7,13;92:9,21;166:7
**Civil (1)**
175:19
**claim (165)**
37:16,17;42:6;43:12;
44:22;45:21;46:4,7,11,
22,24;47:14,15;50:7,8;
52:4,14,14,16,19,23,23,
25;53:8,8;54:1,6,16;
65:17,18;66:23;75:20,
21;76:5,16;77:3;78:4,
5,6,6;79:3,5,5,13;80:3,
4,20;81:2,18,21;83:3,3;
87:23,23,23;94:24,25;
95:1,19,25;96:3,5,14,
20;97:1,3,10,11,24;
109:7;111:9,20;112:2,
11,23;117:3,14,17;
118:10,12,12;119:10;
120:11,12,13,14,20;
123:17;124:9,11,15,19;
125:6;127:3,3;137:21;
138:1,3,5,6,10,11,13,
15,17,18,19,19,21,22,
23;139:7,9,13,18,23;
140:2;141:2,19;
142:17;143:5,5;
147:15,19;148:22;
149:25;150:11,17,19,
21,23,25;151:3,4,5;

152:10;153:8,13,19,23;
155:22;157:17,25;
158:2,11;159:19;
161:6;164:16,18,23,24;
165:8;166:18;169:9,
11;172:3;173:25;
174:15,20;175:24;
176:2;181:4,5,23;
182:1
**claimant (9)**
65:9;66:6;139:20;
151:1;154:23;155:17,
23,24,25
**claimants (20)**
57:11;69:7;104:20;
144:13;149:18;150:12;
154:21;155:14,21;
160:16;183:21,24;
184:22,22,23,23;185:7,
16;189:1,7
**claimants' (2)**
187:14;188:2
**claimant's (1)**
151:4
**claimed (1)**
149:8
**claims (124)**
36:24;38:18;42:5,9;
44:1;53:13,15,18,19;
56:24;57:8;58:17;59:1;
74:13,19,21;75:12,18;
76:1,4;77:11;79:17,17;
82:6,8,10,17;83:11;
87:4;88:15;89:21;94:3,
23;95:13;107:2,12;
109:3;110:17,111:5,
18,22,23;112:7,21,24;
116:13,14,24;117:2;
118:10;119:8;120:1,4,
9;123:11,14;125:4;
126:22,24;128:4,7,10;
135:22;139:24;140:15;
141:20,20;148:11;
149:11;150:7;153:17,
19;154:8,11,13,14;
155:7;157:18,21;
159:4,9;164:17,19;
165:4,4,13,14;167:4,
25;168:1,9,9,11;
171:22,24,25,25;172:7;
173:1;177:19,20,23,23;
181:6,13;183:16,16;
184:9,14,15;185:5,13,
14,21,25;186:1,14,15,
20,21,22,25;187:1,8
**Clara (4)**
73:14;91:7,13,16
**clarification (7)**
6:19;17:16;58:14;
59:6;62:25;66:4;
118:14
**clarified (6)**
10:2;35:15;57:17;

58:2;59:8;88:22
**clarify (8)**
5:18;7:2,14;12:19;
59:10;171:6;175:13;
190:24
**clarifying (1)**
60:10
**clarity (2)**
116:11;117:20
**class (20)**
55:11;137:21;138:5;
139:8,20;143:17;
145:20;146:13,22,22,
23;147:2;154:20;
156:4;157:25,25;
161:16;181:8,13;
184:14
**classes (3)**
91:24;184:2,16
**classic (3)**
42:11;54:23;124:7
**classification (8)**
184:6,12,20;185:8,9,
21,21;186:7
**classify (3)**
141:2;185:5;186:2
**clause (4)**
40:15,15;46:14;
80:15
**clauses (1)**
118:5
**Clean (2)**
73:12,13
**cleansing (1)**
144:25
**clear (30)**
5:12;32:4;38:11;
40:14,16;44:15;45:3;
54:13;62:8;76:8;79:14;
80:9;89:21;100:2;
109:8;115:6;116:9;
126:19;127:25;144:7;
164:13;167:24;170:20;
172:2,8,24;178:5;
180:19;186:13;190:5
**cleared (1)**
153:2
**clearer (2)**
170:24,24
**clearing (1)**
137:25
**clearly (7)**
53:6;71:15;89:16;
110:9,12;133:3;135:11
**CLERK (9)**
4:4,9;33:7;63:7;
100:17;102:2;103:13;
104:12;105:2
**click (1)**
123:24
**client (12)**
34:4;66:20,24;77:24;
80:12;86:21;89:7;

58:2;59:8;88:22
**clarify (8)**
124:8;138:15,18;
166:5,5
**clients (9)**
16:12;19:2;114:1;
116:22;122:14,17,25;
138:12;187:12
**clients' (1)**
125:25
**client's (1)**
176:15
**close (10)**
21:13;30:19;55:15;
89:13;90:12;119:23;
127:18;146:13;162:24;
163:1
**closely (2)**
159:22;161:10
**closing (5)**
101:4;102:23,25;
162:22;163:11
**clue (1)**
166:13
**CN (1)**
113:14
**Coast (1)**
73:13
**Code (18)**
37:15;39:24;40:13;
41:14,17;81:22;82:21,
25;83:12;87:5;90:20;
94:22;123:4;167:9;
171:5;173:3,4;175:19
**cognizable (1)**
188:24
**coherent (3)**
148:23;149:6,16
**co-liable (1)**
65:9
**collateral (2)**
98:21;151:11
**colleague (1)**
4:25
**colleagues (5)**
110:14;168:22;
179:13;180:21;193:9
**colloquies (1)**
127:24
**colloquy (5)**
63:3;74:9;122:13;
126:19;127:15
**comfortable (3)**
30:18;70:11;192:20
**coming (12)**
19:6;63:13;69:10;
93:5;99:11;110:13;
133:19;159:1;189:14;
190:17;192:10,18
**commencement (1)**
88:14
**commensurate (1)**
155:15
**comment (2)**
99:6;127:11

Min-U-Script®

Case: 19-30088    Doc# 7869    eScribers, LLC | (973) 406-2250    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 200
operations@escribers.net | www.escribers.net    of 226

(5) certain - comment

**comments (17)**
37:23;55:19;68:3;
84:17;88:8;89:12;
92:11;99:17;101:20;
105:18;118:18;119:12;
122:13;123:6;126:19;
127:24;188:8
**commission (2)**
108:2,5
**commissioner (1)**
108:16
**commit (1)**
26:9
**commitment (7)**
19:19;20:2,20,24;
21:5,19;30:25
**commitments (3)**
24:17;29:17;30:23
**committee (12)**
13:23;33:24;34:5;
36:6;56:3;114:11;
115:20;117:8;184:23,
24;188:2;191:5
**committees (4)**
25:16;31:14;192:6;
193:11
**committee's (1)**
36:7
**common (8)**
23:4;24:18;82:5;
153:24;154:21;155:17;
159:20;161:7
**communicate (1)**
73:22
**communicating (2)**
16:11;70:11
**community (1)**
182:19
**companies (1)**
114:3
**company (9)**
8:19;21:4;76:16;
77:23;78:11;114:5;
126:15;140:13;145:5
**company's (1)**
22:8
**compensation (1)**
92:1
**compete (1)**
52:25
**competence (1)**
193:14
**competing (1)**
53:7
**complained (1)**
178:5
**complaining (1)**
15:13
**complaint (9)**
140:2,3,5,8,12;144:2,
6;186:17,18
**complete (5)**
37:21;49:19;59:11;

151:25;184:3
**completely (8)**
7:16,24,25;41:17;
53:23;54:8;118:15;
176:4
**complex (1)**
90:14
**compliance (1)**
188:20
**compliant (1)**
53:14
**complicate (1)**
54:25
**complicated (4)**
114:21,21;116:17;
194:3
**complied (1)**
107:15
**complies (1)**
14:13
**comply (2)**
110:24,25
**components (1)**
144:8
**computer (1)**
84:11
**Con (2)**
105:21;106:7
**concede (1)**
152:9
**conceded (4)**
138:2;143:9,15;
152:25
**concedes (1)**
151:8
**conceding (1)**
153:5
**concept (7)**
94:22,24;96:19,19;
145:3;169:15;174:9
**concepts (2)**
32:6;169:17
**conceptual (1)**
75:25
**concern (15)**
6:23;31:19;53:10;
54:14;58:13;60:18,21;
66:17;95:3,15;96:18;
97:25;105:17;106:3;
121:22
**concerned (8)**
64:10;116:23;
119:24;120:18;125:12;
176:14;181:22;189:16
**concerning (4)**
40:1;90:20;91:7;
114:13
**concerns (5)**
28:6;34:13;36:12;
114:22;161:25
**conclude (3)**
16:22;134:3;194:5
**concluded (1)**

194:11
**concludes (1)**
178:25
**concluding (1)**
136:1
**conclusion (4)**
31:23;91:14,24;
153:4
**condemnation (1)**
146:4
**condition (2)**
21:3;74:18
**conditions (4)**
20:23;107:11;
111:18,23
**conduct (3)**
12:21;67:6;130:4
**conducted (1)**
9:8
**confident (1)**
24:21
**confirm (6)**
28:12;29:21;31:23;
48:8;182:21;189:10
**confirmation (48)**
5:12,14;10:8,25;
11:23;12:4;19:4,17;
27:13,16;29:22;30:15;
32:2;36:2;43:18;51:21;
56:4,8;58:10;65:4,25;
88:13;91:13,22;98:22;
99:24;112:6,20;118:8;
119:22,23,25;120:16;
122:24;123:8;141:3,8,
9;170:19;172:20;
174:4;176:18,21,24;
177:7;188:22,25;189:2
**confirmed (15)**
8:2;24:24;29:1;38:4;
41:4;47:12;66:19,22;
90:19;141:11,15,18;
153:2;162:17;166:16
**confirming (2)**
29:14,15
**confirms (1)**
123:16
**conflated (2)**
31:8;190:4
**conflating (2)**
97:24;150:23
**conflation (1)**
136:6
**conflict (1)**
64:12
**confront (1)**
157:19
**confronted (1)**
125:21
**confused (5)**
7:8,9,9;32:7;190:17
**confusing (1)**
7:3
**confusion (2)**

5:5;121:23
**Congress (2)**
38:25;40:14
**connection (18)**
7:21;9:8;14:11;64:2;
79:21;101:11;133:15;
138:3;145:4;165:8;
166:19;167:14;168:3;
170:4,5;172:19;173:1;
184:8
**connects (1)**
98:5
**consensual (1)**
11:1
**consensus (1)**
188:18
**consent (3)**
11:25;16:3;23:19
**consenting (1)**
11:24
**consequence (1)**
50:14
**consequences (2)**
117:16;156:12
**consider (1)**
104:9
**consideration (2)**
23:18;187:16
**considered (1)**
185:22
**consistent (10)**
107:16;127:21;
144:9,9;148:23;
149:17;154:21;179:22;
180:8;187:9
**Consolidated (3)**
105:13,19;140:1
**consternation (1)**
175:11
**constituency (2)**
34:17;36:20
**constituents (1)**
47:21
**constitute (3)**
29:14;83:10,11
**constitutes (3)**
40:3;44:4;74:12
**Construction (1)**
122:11
**constructive (1)**
147:12
**Consultants (1)**
122:11
**Consulting (1)**
113:14
**contacted (1)**
102:2
**contacting (1)**
104:9
**contain (1)**
89:16
**contained (3)**
21:6;177:7;188:11

**contains (1)**
112:19,20
**contemplatable (1)**
80:19
**contemplate (1)**
174:7
**contemplated (6)**
21:1;24:22;26:17;
27:7;164:23,24
**contemplation (7)**
43:15;77:5;79:8;
169:7,10;174:20,24
**contends (2)**
52:11,11
**contests (1)**
11:8
**context (18)**
22:10;39:18;70:23;
79:3,19;89:24;97:22,
23;110:17;111:9;
141:22;164:25;169:11;
173:25;174:1;177:17;
178:14;179:11
**contingencies (2)**
42:13;183:10
**contingency (2)**
52:19;154:13
**contingent (10)**
42:5;43:14;65:6,14,
17;94:25;97:16;98:13,
19;109:7
**continue (3)**
50:6;84:7,9
**continuing (1)**
134:23
**continuity (1)**
34:10
**contract (100)**
38:3,15,22;39:4;
40:6,7,8,10,18,22;41:3,
4;42:12,25,25;43:2,11,
24;44:5,20,21;45:11,
17,22;46:10;47:7;
48:22,24;50:15,24;
51:7,18;55:11,14;
58:22;64:17;65:24;
67:17;74:14,16,17;
75:11,20;76:4,7,18;
77:4,9,12,19,23;78:13;
80:3,11,12,13,24;
81:10;87:3,3,22;89:25;
91:9,18;98:5,16,19;
99:22;107:18,24,24;
108:13,22;110:23;
117:15;123:9;124:5;
125:3;129:2;130:13,
18;131:7;133:1;135:1,
3;136:4,8;156:8;
164:14;167:4,8,25;
168:7,7,10;171:10;
174:13;179:24;181:15;
191:13
**Contracting (1)**

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 201
of 226

181:3
**contractor (1)**
119:5
**contractors' (1)**
119:16
**contracts (45)**
38:8,9;42:3;49:25;
50:5;64:23;65:10;
67:23;74:19,20;75:12,
19;77:10,10;86:21;
90:13;93:19,20;94:2,
21;95:11;97:9;98:12;
99:25;106:15;107:8,20,
22;108:7,8;112:17;
116:18;117:2;119:7;
122:15,18,22;123:2,13;
124:22;136:11;163:16;
172:17;177:22;179:12
**contract's (1)**
45:2
**contractual (17)**
11:16;37:16;42:6;
53:4;58:23;66:24;77:3,
8;80:2,21;87:17;96:23;
124:13;170:8;174:11;
177:20;178:12
**contractually (1)**
46:2
**contrary (5)**
6:22;108:2;118:7;
125:22;183:2
**contribution (33)**
36:24;37:4;38:2,16,
17,23;40:20,25;41:11;
46:7,22;47:21;51:23;
52:6;56:18;57:6;58:15,
19;76:5;77:2,8,11;
85:20;86:19;92:11,23;
94:2;119:8;122:16;
126:24;164:15;167:4;
176:2
**controversial (6)**
56:25;116:12,16;
117:6,9;121:10
**controversies (2)**
105:25;106:1
**controversy (2)**
13:23;89:18
**conversation (3)**
17:15,20;25:19
**convert (1)**
17:10
**converts (1)**
155:17
**conveyance (2)**
120:10,11
**cooperate (1)**
127:6
**coordinating (1)**
113:22
**copies (1)**
57:3
**copy (3)**

100:22;132:21;
178:20
**core (1)**
154:19
**corner (1)**
148:15
**Corning (2)**
185:4;186:8
**corporate (4)**
49:22;57:11,19;
151:16
**Corporation (7)**
93:14;96:13;138:22;
139:2;140:4,6;159:22
**correcting (1)**
137:24
**corrections (2)**
99:21;145:8
**corrective (2)**
145:22;148:9
**correctly (3)**
10:11;159:25;165:3
**cost (2)**
37:20;146:4
**costs (1)**
65:11
**counsel (22)**
16:13;19:2;33:24;
34:1,7,11,12,21;57:18;
68:9;69:14,18;70:6,12;
88:1;101:17;104:20;
127:17;133:21;141:6;
181:21;193:12
**counsel's (2)**
71:21,22
**counterclaim (1)**
57:23
**counterparties (2)**
99:22;100:1
**counterparty (15)**
40:17;58:23;65:24;
66:7;75:2,6,23;76:9;
78:14;85:21;86:20;
87:23;99:10;105:21;
124:6
**counterparty's (1)**
78:7
**county (4)**
73:20;90:24;92:9;
95:7
**couple (16)**
6:8;19:14;32:19,20;
33:21;48:2;53:3;55:24;
68:11;74:8;103:15;
110:6;114:16;142:7;
163:21;189:13
**coupled (1)**
121:5
**course (16)**
5:3,9;10:6;12:6;
23:16;27:7;32:22;
69:15;85:19;91:3;
120:14,23;144:18;

145:23;155:12;179:17
**Court (496)**
4:3,4,5,8,12,15,21,
24;5:16;6:1,3,12,17;
7:2,8;8:1,15;9:3,13,22;
10:2,9,16;11:4,6,19;
12:9,16;13:3,5,12,22;
14:5,19;15:9,11,16;
16:2,4;17:12,14;18:12,
15;19:11,17,23,25;
20:3,14;24:3,7;25:7,8,
13,23;26:2,20;28:5;
29:12,19;30:1,7,11,19,
21;31:4,7,11,17,22;
32:9,13;33:7,11;34:1,
19;35:17;36:5,11,16;
37:9,14;38:6,24;39:1,3,
10,14,19;40:5,12,18;
41:8;42:12,20,23;43:2,
5,8;44:8,10,15,24;45:9,
12,18,21;46:16;48:5,7,
12,15,23;49:1;50:17,
25;51:4,8,15;52:9;
54:9,11;56:1,3,10,12,
16;57:1,10,13,14,16,
25;59:8,13,17,21;
60:19,20,22;61:9,16,
18,20,22;62:1,3,6,11,
16,19;63:2,7,21;64:4;
65:16;67:19,25;68:2,6,
24;69:2,9,13;70:5,25;
71:7;72:3,8,15,19,22;
73:3,8,17,21;76:11,14,
20;77:14,21;78:3,19,
23;80:8,10;81:21;82:1,
2,13,18,20,25;83:5,7,
13,15,19,25;84:6,8,21,
25;85:2,4,11,22,23;
86:1,3,7,10,25;89:8,10;
90:5,9;91:15,20,23;
92:4,16;93:1,3,9,15;
94:9;95:16;96:2,21;
97:3;98:8,14,14,15;
99:14,17;100:7,24;
101:2,14;102:2;103:2,
11,14;104:6,7,14;
105:3,10,15;106:15,18;
108:1,10,17;109:14,22;
110:1,3,13;111:6,11;
112:1,9,13,16,25;
113:3,5,10,18,19;
115:10,14,16,24;116:2,
5,8,20;117:5,10,21,23;
118:2,17,23;120:7,23;
121:17;122:2,5;
123:15,23;124:2,4,12;
125:2,11,15,24;126:3,
5,12,17;127:8,10;
128:20;129:9,11,15,18,
24;130:2,14,24;131:1,
15,17,19,22,24;132:1,
16,19,22;133:2,5,6,8,
12,14,19,25;134:2,4,6,

9,12,15,18;135:7,9,25;
136:12,16;137:1,7,11,
15,19;138:17,20,24;
140:18,22,25;141:4,6,
21,24;142:8,13,21,23;
143:9,12,18,21;146:10,
15,18,20,24;147:1,7,
14,17,23;151:14,22,24;
152:6,11,14,16,22,24;
153:21,25;154:2,16;
155:20;156:6,19,22,25;
157:4,6,20;158:14,25;
159:10,12,14,17,21,21,
24;160:1,2,5,8,11,19,
23,25;161:17,19;162:6,
18,23;163:1,20,22;
164:1,5,8;165:18,24;
166:1,2,8,22,24;
167:11,18,22;168:14;
169:2,5,8,14,20,22;
170:11;171:8,12,15,20;
172:10,12;173:5,12,14,
19,21,23;174:3,22,24;
175:4,7,18;176:6,9,23;
178:8,17,19,23;179:1;
180:12,14;182:1,4,8,
12,14;184:19;185:10,
20;188:1,17;189:12;
190:3,9,15,21;191:1,
22;192:4,15;194:6,10
**courtroom (9)**
18:18;19:26:11;
102:4,7,13;103:7;
104:18;163:2
**Court's (5)**
35:12;55:19;82:14;
89:12;115:8
**cover (6)**
50:19;62:7;65:11,11;
67:8;118:1
**coverage (3)**
152:9,19,20
**covered (4)**
35:7,20;72:18;83:23
**covers (1)**
59:25
**COVID (1)**
21:8
**CPUC (4)**
23:20;107:6;108:11;
188:19
**CPUC's (1)**
146:3
**crack (1)**
154:17
**craft (1)**
177:4
**crafted (1)**
138:5
**crazy (1)**
153:15
**create (3)**
60:7;121:23;154:4

9,12,15,18;135:7,9,25;
**created (1)**
114:22
**creates (1)**
60:17
**creative (1)**
121:6
**credit (5)**
64:1,8,9,17,21
**creditor (13)**
34:16;36:20,20;38:3;
40:3,4,9;50:18,21;
54:22;55:10,16;116:21
**creditors (14)**
33:25;39:23;47:20;
51:18;54:24;55:4;59:2;
65:23;88:19;92:1;
114:7;127:4;181:7,7
**creditor's (2)**
54:15;55:21
**critical (2)**
16:14;114:2
**criticizing (1)**
16:10
**cropping (1)**
84:5
**cross-examine (2)**
15:12;17:20
**cry (1)**
87:23
**crystal (1)**
144:7
**crystalize (2)**
99:9,9
**crystalized (3)**
95:2;98:18,20
**culpable (1)**
96:25
**culprit (1)**
133:6
**cumbersome (1)**
60:14
**Cupertino (1)**
113:14
**curable (1)**
88:3
**cure (51)**
36:23;37:3;39:16;
40:23;43:5,23,25;44:2,
11;45:10;48:19,21;
49:2,5;66:3,15;67:11,
11;76:13;79:6,7;87:24;
97:6,8,15;99:2;110:10;
111:21,24;112:8;
115:1;116:19;119:11;
128:1,3,4,4,18;129:25;
131:8,8,16;132:6;
135:5;136:3;165:8;
166:19;167:14;173:1,
6;179:24
**cured (10)**
44:20,21;45:5,7,14;
74:22;116:22;128:11;
129:13;130:7

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 202
of 226

**cures (1)**
74:17
**curing (1)**
98:2
**current (3)**
21:12,14;154:24
**currently (4)**
70:21;112:21;183:5;
188:5
**customary (1)**
65:10
**cut (17)**
66:13,16;67:9;77:16,
16;81:24,24;82:9,10;
87:17;95:1,12;98:22;
99:22;121:7;161:19;
189:19
**cutoff (2)**
66:1;112:11
**cuts (2)**
61:8;82:5
**cutting (3)**
107:11;133:4,9

**D**

**D&O (3)**
42:2,8;47:19
**D&O's (1)**
42:10
**damage (1)**
46:4
**damages (6)**
138:7,12,16;144:24;
150:15;155:16
**dark-out (1)**
26:17
**data (1)**
159:4
**date (48)**
10:10;11:13,16;
19:18,23;20:18;25:7,
21;27:24;48:4;80:25;
81:12;87:7,7;98:18;
128:17;130:7;138:4;
142:16,18,18,23;143:6,
7,8,14,16,19,21,22,22,
25;144:1,4,6,12;
147:13;148:3,16,19;
149:1,3;153:6,6;156:3;
157:10;179:25;183:8
**dates (3)**
68:12;143:13;145:8
**David (1)**
63:22
**Davis (1)**
63:22
**day (23)**
13:14;19:12;26:10;
43:18;48:17;52:17;
57:2;80:16,25;82:7;
83:15;122:3;137:9,13;
144:4;150:7;151:2,7;

**152:**16;153:12;154:12;
157:8;161:20
**days (17)**
5:14;35:3;101:24;
127:13;137:23;145:23;
146:3,12,12;150:6;
157:21;181:24;189:15,
18,20;192:10,19
**dead (1)**
11:12
**deadline (4)**
11:16;13:12;48:12;
189:4
**deal (16)**
34:23;35:20;37:14;
69:19;72:13;89:5;
111:25;116:19;137:24;
141:15,19;156:16;
160:3;164:7;165:19;
166:24
**dealing (5)**
17:18;42:16;75:17;
107:7;141:22
**deals (2)**
35:19;74:19
**dealt (9)**
39:5;71:23;74:5;
106:2;107:9;117:3,14;
154:7;190:16
**death (1)**
190:22
**debatable (1)**
54:21
**debate (3)**
54:3;55:19;166:9
**debates (1)**
193:1
**debt (19)**
9:10,14,20,22,25;
12:1;27:18;29:17;
31:11,13;52:13;64:14;
190:5,9,12,14,20;
191:18,25
**debtor (65)**
5:13;11:8;13:23;
14:23;28:17;36:9,25;
38:2;40:6,7,9;41:12,19,
19;43:21,23;44:25;
48:3,18;50:7,19;52:1;
53:8;54:14,20;59:18;
74:16,24;78:16;87:2,3,
17;98:11,18,20;99:10,
11;106:21;112:5;
114:12;116:16,25;
117:8;119:18;120:11;
121:10;123:13,16;
128:11,13;129:6,21;
130:9,19;131:10;
135:2;152:3;160:6;
166:20;168:5,9;
175:19;180:4;184:14;
185:22
**debtors (68)**

**4:**23;7:18;10:5;
19:20;20:7,21;21:16;
22:4,10,12,18;23:1,9,
11,11;24:16,21;27:16,
20;35:19;38:9;42:3,7;
49:20;50:5;51:20;
53:21;56:18;57:7;
58:18,19;64:6,14,15,
24;65:5,8,9;66:5,12;
67:4,5,15,17;75:14,18;
76:6;77:1,15;89:14;
92:20;93:19;103:23;
122:19;123:1,12;
124:14,18;151:12;
163:13;171:25,25;
176:3;182:18;185:1;
186:14;188:21;189:8
**debtors' (18)**
12:3;20:8,10;21:3,
17;29:3;37:13,25;38:5;
42:18;50:7,11;140:9;
168:2;173:13;175:22;
185:15,25
**debtor's (14)**
50:23;53:12;57:2,6;
58:10,21;59:1;60:19;
85:20;122:23;128:3;
130:15,18;131:20
**deceiving (2)**
8:25;14:6
**decide (4)**
29:21;36:9;62:14;
71:12
**decided (4)**
95:9;148:4;168:21;
180:10
**decides (1)**
168:10
**decision (18)**
11:14;26:22;30:4;
41:16;57:10;71:15;
102:14;140:19;158:2;
168:6,23;180:5;184:8;
191:12,16,23;192:19;
194:4
**decisions (1)**
12:13
**declaration (2)**
7:4;15:1
**declarations (7)**
5:7;8:21;14:2;86:23;
89:15,23,24
**declared (1)**
11:12
**decline (5)**
145:13,18,23;147:4;
193:17
**declined (1)**
156:2
**deducted (2)**
152:10,23
**deduction (2)**
151:9;152:17

**deducts (1)**
151:4
**deemed (6)**
42:8;49:25;50:4;
108:8;125:4,6
**deeply (1)**
182:18
**default (26)**
44:15;46:8;75:14;
96:19,21,22;98:2;
116:21,22;119:10;
128:3,6,10,11;130:4;
132:8,11;165:8;
168:18,19,24,25;
170:15;174:6,7,18
**default- (1)**
43:5
**defaults (20)**
44:13;45:23;74:18,
20,21;75:13;94:16,21;
128:4;129:12;130:6;
131:18;168:1;170:15;
173:1,7,11;174:5;
179:25;180:1
**defeat (1)**
188:25
**defendant (2)**
96:25;120:12
**defendants (2)**
53:19;120:20
**defending (1)**
116:14
**defense (3)**
65:11;129:1;176:4
**defenses (14)**
56:21,23;57:8;58:4;
116:13;119:17,25;
120:21;170:21;171:3,
24;172:3,22;175:22
**defer (4)**
68:20;69:3,16,17
**deferring (1)**
178:1
**defined (5)**
5:21,22,24;85:15;
87:5
**definitely (1)**
118:14
**definition (12)**
10:14;12:2;81:21,25;
82:4,13,23,23;83:7;
118:9,12;156:3
**definitive (1)**
177:15
**defrauded (2)**
156:9;157:11
**Del (1)**
140:19
**delay (3)**
22:7;182:22;189:6
**delays (1)**
184:4
**delete (2)**

**178:**7,10
**deleted (1)**
85:15
**deletion (1)**
91:19
**delivered (1)**
187:17
**demand (1)**
79:6
**demonstrate (2)**
108:20;155:3
**demonstrated (2)**
184:11;188:21
**demonstrates (1)**
184:19
**demonstrative (3)**
142:11;149:20,23
**denial (1)**
141:7,8;146:4
**denied (1)**
15:13
**Dennis (1)**
4:6
**deny (1)**
56:3
**denying (1)**
141:3
**dependent (1)**
9:10
**depending (1)**
72:18
**depends (1)**
190:9
**depress (1)**
22:6
**depriving (1)**
54:24
**deputy (6)**
26:11;102:2,4,7,13;
104:19
**Des (1)**
114:5
**describe (2)**
68:22;89:23
**described (6)**
25:10,11;26:15;
27:23;86:23;123:5
**describes (1)**
12:4
**describing (2)**
31:11;124:20
**description (1)**
30:22
**deserve (2)**
91:25;92:2
**designed (2)**
53:6;90:15
**despite (1)**
22:13
**destruction (1)**
184:5
**destructive (1)**
189:3

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 203
of 226

**detail (2)**
22:23;36:1
**detailed (2)**
92:15;194:4
**details (1)**
35:7
**determination (10)**
7:18;10:10;13:20;
79:5,20;108:24;
150:16;177:16;178:1;
184:3
**determine (2)**
68:17;97:15
**determined (10)**
79:3;96:12;123:1;
129:24;164:18,20;
173:25;175:24;181:17;
186:24
**determining (3)**
144:12;148:20;
187:18
**develop (2)**
8:5;15:13
**Development (2)**
105:14,19
**dice (1)**
148:5
**Diego (1)**
146:4
**difference (7)**
39:3,6;49:8;76:2;
77:10;111:18;161:8
**differences (2)**
112:7;184:21
**different (25)**
7:25;25:14;32:6;
41:17;49:5;51:12;
80:10;84:2;87:12;88:3;
112:17;114:6;115:4,
22;142:25;144:22;
150:21;159:23;161:6;
166:6;176:25;184:15;
186:1,1;191:19
**differentiate (1)**
107:20
**differently (1)**
174:10
**difficult (3)**
36:14;71:3;91:10
**difficulty (1)**
136:15
**dilemma (2)**
157:14;158:20
**diluted (2)**
58:21;155:8
**diluting (1)**
54:15
**dilution (2)**
23:2;24:14
**diminished (1)**
147:21
**diminution (1)**
155:18

**DIPs (1)**
87:21
**directly (4)**
16:9;37:2;180:11;
183:2
**directors (1)**
50:20
**disagree (2)**
43:21;46:12
**disagreement (1)**
185:12
**disagrees (1)**
50:11
**disallowance (1)**
112:24
**disallowed (8)**
42:8;52:16;123:11,
14;124:15,19;125:5;
157:18
**disallowing (1)**
112:21
**disappear (2)**
42:17,21
**discharge (22)**
36:23,25;43:24;44:4;
47:1,2,2,16;48:20;65:6,
14;74:4,15,20,23;75:9;
83:14;90:20;123:16;
166:15;169:20;177:1
**dischargeable (2)**
95:22;96:3
**discharged (15)**
42:8;44:23,24;46:1,
2;50:3;75:6,21;76:6;
77:6,9;78:10;85:16;
123:18;178:13
**discharges (1)**
43:25
**disclose (2)**
144:23;147:5
**disclosed (1)**
147:22
**discloses (1)**
139:11
**disclosure (7)**
36:6;144:11;148:17;
150:6;187:24,25;188:1
**disclosures (5)**
144:17,17,25;
145:22;148:9
**discount (1)**
183:17
**discrete (1)**
70:1
**discretion (3)**
7:19;21:17;184:15
**discrimination (3)**
160:13;161:4,14
**discuss (1)**
192:23
**discussed (9)**
62:24;89:25;124:16,
24;131:13;135:15;

139:19;155:11;161:4
**discussing (5)**
58:16;101:9;106:12;
122:17;191:12
**discussion (12)**
7:24;14:24;16:23;
19:1;32:7;65:16;79:14;
97:23;140:23;148:25;
179:11;193:2
**discussions (3)**
34:3;105:18;149:9
**disenfranchised (2)**
37:11;55:3
**disingenuous (1)**
187:22
**dislocations (2)**
21:7;22:13
**dismissed (1)**
186:18
**disparate (1)**
161:16
**disposes (1)**
182:15
**disposition (1)**
59:17
**dispute (14)**
8:3;10:4;29:7;42:19;
110:18,19;130:21;
150:24;167:2;169:11;
174:1;177:17;184:9;
192:7
**disputed (2)**
50:8;185:14
**disputes (1)**
191:12
**disregard (1)**
176:24
**dissimilar (1)**
166:14
**distinction (2)**
45:11;48:6
**distinguish (2)**
9:7;78:5
**distinguishing (1)**
12:9
**distribute (1)**
96:5
**distributing (1)**
151:3
**distribution (2)**
53:9;161:8
**distributions (1)**
189:6
**District (6)**
4:5;74:3;90:25;91:1;
166:1;167:12
**divide (1)**
137:3
**divided (1)**
57:25
**doc (1)**
7:5
**docket (10)**

31:18;90:3;113:16;
115:17,22;120:5;
123:8;126:16;134:20;
182:2
**docketed (1)**
64:3
**document (10)**
8:14;10:23;12:7;
71:2,11;77:23,25;
80:15;81:22;164:7
**documents (17)**
5:19,25;6:5,7;12:1,1,
2,5,5;25:18;49:22;
68:12;70:20,22;71:24;
177:9;194:4
**dog (3)**
19:11,12;86:8
**DOJ (1)**
179:21
**dollar (9)**
5:9;78:9;139:9,13;
145:13,17,22;147:4;
148:22
**dollars (34)**
7:21;20:22;21:12;
23:14;24:18,22;27:19;
43:3,12;44:12,16;45:2,
15,19,25;46:6,13,21;
94:20;138:6,14;139:5,
8,11,14,15;148:13,21;
150:1;159:5,6;183:5,6,
9
**dollars' (1)**
153:12
**domain (6)**
82:7;83:10,16,19;
87:10,11
**domestic (1)**
185:13
**Donato (1)**
104:4
**Donato's (1)**
104:6
**done (12)**
11:14;26:21;90:8;
92:25;94:12;96:8,16;
121:19;135:5;142:1;
158:13;174:25
**Don't (1)**
168:14
**door (1)**
159:9
**double (2)**
53:25;54:15
**doubt (3)**
43:20;53:24;124:4
**Dow (4)**
185:3,6,7;186:8
**down (21)**
12:11;34:25;43:23;
93:25;96:17;99:3;
104:23;109:6;126:9;
136:18;148:10;156:16,

20;157:16;159:1;
160:6;162:24;163:1;
178:8;192:21;193:3
**downstream (1)**
121:23
**dozens (1)**
93:20
**draft (5)**
28:24;30:13;56:13;
114:16;116:17
**drafted (5)**
39:8;60:6,8;180:20;
188:1
**drafter (1)**
32:13
**drafting (1)**
57:17
**drained (1)**
59:19
**drawing (5)**
21:24;22:5,14,21;
101:16
**drive (1)**
186:6
**drop (1)**
146:21
**D's (4)**
49:14,17,22,24
**Duane (1)**
122:10
**due (7)**
5:3;10:6;21:7;46:14;
84:1;128:15;140:15
**during (5)**
119:5;139:7;144:3;
146:3;163:16
**dust (1)**
35:8
**duty (1)**
113:6
**dynamics (2)**
185:4;186:6

**E**

**earlier (23)**
12:20;22:19;23:15;
88:1;99:6,7;119:19;
129:17;131:13;138:10,
21;139:6;142:18;
143:17;155:11;157:2;
164:13;168:13;169:6;
179:22;180:1,3;190:12
**early (2)**
8:20;55:9
**easements (1)**
86:22
**easier (4)**
31:14;153:4;154:11;
157:17
**easiest (1)**
99:22
**easy (10)**

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 204
of 226

36:11;61:20;121:15;
131:5;132:4;156:15;
158:16;176:15,16,16
**echo (2)**
69:7;119:12
**economic (3)**
154:20;184:17,18
**economical (1)**
14:17
**Ed (1)**
106:7
**Edison (3)**
105:13,19,21
**educate (1)**
32:5
**educated (1)**
12:17
**Edward (1)**
73:18
**effect (11)**
21:3;26:15;30:23;
38:4;44:7;50:2;90:18;
94:8;106:23;108:15;
143:14
**effecting (2)**
21:15;22:6
**effective (19)**
10:10;11:2,13,16;
12:25;13:16;20:18;
22:5;27:24,25;28:9;
30:19;80:25;81:12;
87:7;107:25;140:9;
172:20;183:8
**effectively (3)**
48:20;74:14;148:24
**effects (1)**
113:24
**effectuate (1)**
109:2
**effectuating (1)**
107:3
**effort (6)**
27:5;70:19;72:6;
149:12;159:18;193:12
**efforts (1)**
183:7
**ego (2)**
140:4,10
**eight (2)**
159:13;189:20
**eighteen (5)**
157:7,10;159:10,12,
14
**eighty (3)**
24:8;148:16;170:25
**either (13)**
16:24;50:9;58:1,22;
60:11;70:14;108:22;
158:19;168:6;171:15;
174:13;175:21;179:13
**Electric (2)**
113:14;146:5
**elegant (1)**

115:21
**element (2)**
9:9,9
**eleventh (1)**
158:4
**eliminate (6)**
75:25;85:20;175:18,
22;189:3;192:17
**elimination (1)**
120:24
**Ellis (1)**
93:13
**else (11)**
32:25;44:4;50:21;
100:15;110:16;121:11,
24;139:21;155:3;
176:18;180:25
**email (2)**
100:23;102:4
**emailing (1)**
16:8
**emails (3)**
16:6,7;100:25
**embodied (1)**
187:15
**emerge (1)**
24:2
**emergence (3)**
7:21;12:21;14:16
**eminent (6)**
82:7;83:9,16,19;
87:9,11
**employee-owned (1)**
114:5
**encourage (2)**
92:16;162:1
**end (16)**
36:4;48:17;56:5;
66:19;119:23;123:23,
24;132:23;133:19;
143:16;146:22;150:7;
151:7;152:11;154:12;
156:4
**ended (1)**
146:22
**ending (1)**
105:25
**ends (2)**
146:11;147:2
**Energy (10)**
73:13,14;99:25;
105:21;106:7;107:16,
18;108:7,8;161:10
**energy-related (1)**
107:19
**enforceable (1)**
40:17
**enforced (1)**
76:9
**engage (1)**
149:12
**engaged (1)**
22:11

**engineered (1)**
144:5
**enjoined (2)**
88:23,24
**enjoins (1)**
88:13
**enormous (1)**
193:12
**enough (5)**
6:3;55:8,24;96:11,15
**enter (1)**
29:22
**entered (4)**
21:6;27:4,16;112:5
**entertain (1)**
27:9
**entire (3)**
145:11;147:12;152:2
**entirely (4)**
139:18;150:21;
179:22;187:8
**entirety (2)**
94:3;149:25
**entities (5)**
56:21;179:9,21;
185:1;191:6
**entitled (8)**
7:5;74:25;87:19;
153:23;181:14,16,19,
19
**entitlement (3)**
49:4;87:10;95:20
**entitles (2)**
37:16;74:15
**entity (6)**
88:14,17;151:16;
170:21,23;171:3
**entry (1)**
29:24
**Environmental (1)**
122:11
**equal (2)**
155:25;161:15
**equality (1)**
53:9
**equally (1)**
158:10
**equals (1)**
85:5
**equitable (1)**
37:15
**equity (34)**
7:20,21;9:14,16,23;
10:6;12:1,7,21;13:1,8;
14:11;16:17;17:5;
19:18,20;20:17,22;
21:1,23;22:14,17,20;
23:1,10,14;24:22;
30:10,24;31:2,9;157:3;
190:20;191:19
**equivalent (2)**
48:20;170:2
**escrow (1)**

27:24
**esoteric (1)**
120:3
**especially (4)**
39:17;54:13;60:23;
61:4
**essential (1)**
9:19
**essentially (21)**
36:21;39:16;41:19;
49:21;50:12;53:7,16,
19;54:7,15,20;55:10;
56:18;58:4,7;67:6;
69:4;101:4;124:22,24;
145:24
**estate (5)**
151:6,13,20,23,25
**estates (1)**
139:25
**estimate (4)**
111:25;157:7,20;
159:4
**estimated (3)**
102:17;159:5,6
**estimation (2)**
97:15;159:15
**estoppel (3)**
75:10,15;98:22
**et (3)**
82:19;191:13,13
**Etkin (9)**
137:23;139:17;
148:24,25;149:7,11;
159:3;193:19,20
**evaluating (1)**
25:22
**even (36)**
9:2;10:8,25;17:11;
26:14;28:15;29:5,6;
40:2;41:2;54:4;55:15;
58:9;69:15;74:20;
76:20,21;77:25;81:9,
11;82:6;85:24;88:19;
98:19;111:25;117:5,6,
13;123:12;158:2;
162:12;165:4,10;
166:13;185:19;189:22
**evening (1)**
115:18
**event (12)**
23:16,23;65:25;76:8,
12,17;77:5,19;79:10,
11;161:5;186:21
**events (5)**
67:6;76:15;78:13,24;
174:5
**everybody (7)**
63:11;78:21;101:24;
110:16,23;114:4;178:5
**everybody's (2)**
127:21;175:10
**everyone (3)**
55:12;79:23;144:23

**everyone's (1)**
34:8;58:6;99:2
**evidence (14)**
15:2,13,20,20;90:2;
183:4,11,12,13,23;
184:1,11;188:24;194:4
**evidentiary (2)**
89:14;183:1
**eviscerate (1)**
75:1
**exact (5)**
34:15;50:13;98:7;
157:19;176:17
**exactly (6)**
8:1;34:5;39:21;
42:19;78:2;98:11
**examining (1)**
17:7
**example (19)**
23:20;29:17;34:3;
38:19;42:11;65:22,23;
71:13;83:8;88:18;95:5;
111:19;120:4;128:9,
16;129:13;174:11;
178:3;183:4
**exceeding (1)**
90:19
**except (5)**
41:25;42:8;117:18
**exception (2)**
40:11,13
**exceptions (1)**
39:24
**excerpt (1)**
42:15
**excerpts (1)**
30:15
**excess (1)**
27:19
**exchange (1)**
94:19
**excise (1)**
54:21
**excised (1)**
86:19
**excising (1)**
27:12
**exclude (2)**
18:12;193:10
**exculpated (1)**
180:23
**excuse (11)**
11:15;18:3;24:3;
75:17;81:4;82:1;96:2;
99:7;103:17;106:15;
146:12
**execute (2)**
21:9;22:12
**executed (2)**
77:4;80:3
**executor (1)**
50:14
**executory (34)**

Case: 19-30088   Doc# 7869   Filed: 06/10/20   Entered: 06/10/20 07:33:26   Page 205
of 226

38:8;42:3;49:25;
50:5,15,24;51:6;55:11,
14;74:14,16;89:25;
91:9;18;94:2;106:5;
110:23;116:18;117:15;
119:7;122:15,18,21;
123:3,13;124:6;
163:15;164:14;167:4,
8,25;172:17;179:12;
191:13
**exercise (1)**
66:7
**exhausted (1)**
152:21
**Exhibit (1)**
140:9
**exhibits (5)**
41:23;86:23;89:15,
21;90:1
**exist (13)**
42:13;47:23;76:20,
21;79:6;80:22;107:12;
109:3;111:19,25;
120:25;128:8;130:6
**existed (6)**
43:13;78:4;80:20;
81:1;87:5;123:17
**existence (2)**
78:13;174:7
**existing (14)**
20:20;21:5,9,18,24;
22:3;23:3,20;24:13;
155:4,6,7;160:15;
161:7
**exists (4)**
54:4;77:23;78:6;
80:21
**exit (2)**
30:16;183:14
**expect (3)**
64:19;103:18;104:23
**expectation (4)**
102:15;127:18;
157:12;193:6
**expedited (4)**
13:20;20:4;26:7;
31:18
**expense (2)**
43:10;186:15
**expenses (1)**
181:15
**experience (1)**
165:25
**experienced (1)**
168:17
**expert (1)**
17:19
**expertise (2)**
166:3,24
**explain (7)**
14:10;68:22;70:1;
74:9;75:3;154:18;
190:24

**explained (2)**
22:23;144:10
**exposure (1)**
146:5
**express (1)**
28:6
**expressed (1)**
60:18
**expressly (1)**
171:4
**extant (1)**
10:4
**extended (2)**
138:4;169:16
**extent (18)**
6:24;37:12;50:2;
54:2;58:17;64:18,20;
71:21;74:22;81:5;
90:22;111:22;127:6;
166:5;172:2;176:1;
186:4;187:6
**extent-known (1)**
111:22
**extinguished (2)**
51:22,23
**extirpated (1)**
88:15
**extremely (1)**
85:15

**F**

**F2d (1)**
37:20
**face (2)**
98:25;182:21
**facilitate (1)**
20:10
**facility (1)**
183:9
**fact (33)**
6:21;14:14;20:19,19;
25:19;37:11;40:2;
41:14;42:9;44:1;57:2;
62:12;83:21;106:11;
107:19;108:21;109:1;
110:13;122:18;125:10;
128:12;139:17,19;
140:3;165:1,9;166:16;
183:1,16;184:22;
185:6,25;189:1
**fact-driven (1)**
81:9
**facto (1)**
40:15
**factors (2)**
167:10;184:20
**facts (9)**
45:6;46:3;76:21,21;
79:19;95:23;110:17;
111:25;128:8
**factual (1)**
89:16

**factually (1)**
178:3
**fail (1)**
44:14;45:21;185:15
**failing (1)**
49:5
**failure (5)**
128:10;140:15;
141:1;144:23;147:5
**faint (1)**
133:7
**fair (13)**
5:5;43:15;58:16;
77:5;79:7;135:21;
138:14;158:8;169:6,9;
192:24,24,25
**fairly (5)**
69:25;164:23,23;
185:11;189:15
**faith (1)**
177:2
**fall (1)**
191:6
**false (2)**
139:5;149:13
**familiar (1)**
35:2;57:10
**family (1)**
182:19
**fan (2)**
28:25;95:16
**far (6)**
14:12;30:22;68:15;
92:17;105:18;115:15
**fashion (6)**
8:5;41:18;49:18;
55:16;127:16,20
**fast (2)**
81:7;115:25
**fatally (1)**
36:21
**fault (3)**
109:22;157:4,6
**favor (1)**
40:3
**favorable (1)**
30:24
**favorably (1)**
191:8
**feasibility (1)**
183:4
**feasible (1)**
11:24
**Feather (1)**
91:1
**federal (3)**
90:23;145:16;166:1
**fee (2)**
23:22,24
**feel (3)**
8:6;16:24;17:2
**fees (3)**
28:1;30:20;181:15

**fellow (2)**
16:13;70:6
**FERC (8)**
106:12,17,19;107:8,
23;108:22;112:14;
166:6
**FERC-approved (1)**
91:8
**few (12)**
5:14;65:1;93:24;
101:10;122:14;137:22;
146:11,12;148:7;
149:15;187:10;189:18
**field (1)**
120:20
**fifty (2)**
34:25;159:5
**fighting (1)**
115:8
**figure (5)**
28:23;69:19;71:8;
109:6;115:20
**figuring (1)**
150:21
**file (28)**
22:23;32:16;35:14,
19;36:5;40:21;52:13,
13,25;56:15;57:3;70:9,
20;93:22,23;94:8;
96:14,25;97:3;103:24;
116:3,22;117:17;
118:16;125:6;167:21;
178:22;179:7
**filed (30)**
7:4;19:21;25:24;
28:14;35:24;52:23,23;
61:2;64:1,15;94:10;
95:18;97:10,10;
103:21,23;104:3,8;
113:16;114:10,11;
115:11;116:22;122:14;
124:11;126:15;138:3,
10;186:16;193:22
**files (4)**
45:22;96:4;115:20;
118:16
**filing (5)**
5:2;20:5;25:1;
103:23;104:1
**final (7)**
26:23;81:15;86:16;
87:1;91:3;127:18;
187:11
**finality (1)**
28:7
**finalized (1)**
12:22
**finally (1)**
191:4
**financial (2)**
65:10;145:5
**financially (1)**
132:9

**financing (24)**
12:1,5,6,8;20:22;
22:18;27:12;29:16,24;
30:2,10,16;31:12,13,
25;190:5,9,12,14,20,
20;191:18,19;192:1
**financings (1)**
27:3
**find (12)**
8:3,3,21;14:1;41:24;
98:4,4;104:7;131:24;
153:16,19;180:12
**finding (2)**
10:13;65:12
**findings (2)**
177:2;183:17
**fine (13)**
4:14;6:1;14:22;19:9,
10;26:10;71:22;73:2;
94:23;111:12;116:24;
125:18;172:15
**finetuning (1)**
192:23
**finger (1)**
79:1
**finish (7)**
11:19;15:16;85:24;
86:15,17;131:1,1
**finished (2)**
26:4,5
**fire (56)**
9:4;11:24;18:18;
20:9,17;23:5;24:10;
53:16;56:22;57:19;
58:13,20,20;59:3,3,4;
62:9,25;95:8,9,14,17;
96:11,16,24;97:13;
101:17;118:10,12,12;
144:24;146:7,10,11,12,
25;147:6,10;153:12;
155:10;156:8;159:1;
170:22,23;179:16,17;
183:21;184:2,9,22,22;
187:17,21;188:20;
189:5,6
**Fires (2)**
146:7;155:19
**firm (3)**
138:10;187:13;193:9
**first (35)**
11:19;20:1;26:25;
32:25;37:8,9;38:7;
47:24;53:10;58:25;
59:1;62:19;65:3;67:1;
68:7;72:13;73:5;76:12;
109:1;110:6;121:19;
137:17;138:16;144:3,
11;147:22;148:17;
149:20;157:8;163:14;
170:2,17,19;179:20;
186:13
**fits (1)**
74:10

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 206
of 226

**five (8)**
24:18,19;31:1;68:21;
69:2;81:10;147:21;
183:8
**five-and- (1)**
26:15
**five-and-three- (1)**
24:21
**fix (18)**
56:1,4;75:24;93:5;
115:17;117:24;121:11,
14,15,21;125:2;131:5;
141:12;151:8;176:15,
16,16,17
**fixes (3)**
56:6;60:5,9
**flagged (1)**
94:16
**flagging (1)**
96:18
**flawed (1)**
36:21
**flip (3)**
112:1;144:15;149:21
**flipping (1)**
82:23
**floor (2)**
8:14;35:4
**flow (5)**
57:8;58:5;128:7;
167:4;170:7
**flows (1)**
51:7
**fluctuation (1)**
187:24
**fluid (1)**
68:24
**flush (1)**
158:3
**fly (1)**
149:2
**flying (1)**
117:12
**focus (5)**
37:2;38:7;53:10;
172:13;192:13
**focused (1)**
70:16;184:6
**focuses (2)**
167:3;181:5
**fold (1)**
122:13
**folds (2)**
124:16;125:13
**folks (2)**
102:20;157:11
**follow (1)**
117:16
**following (3)**
22:22;35:5;103:16
**fonts (2)**
142:20;143:1
**footing (1)**

**155:25**
**footnote (1)**
122:24
**force (2)**
38:4;44:6;50:1
**forced (4)**
46:23;52:18;187:21,
21
**forces (1)**
125:19
**foreign (1)**
185:13
**Forget (2)**
96:2;157:23
**forgot (3)**
10:23;139:10;174:19
**form (7)**
26:23;28:13;36:19;
104:3;134:19;158:23;
192:2
**formal (3)**
27:15;29:22;48:9
**formally (2)**
39:4;41:3
**former (2)**
6:14;160:2
**formula (25)**
24:11;141:25,25,25;
142:3;144:8;149:1,14,
16;150:9,12,17;153:10,
15;154:4,15;155:14,16,
20,25;158:21,23;
162:14;187:16,17
**forth (8)**
20:23;39:24;41:25;
82:17;113:7;125:16;
167:11;187:15
**forward (18)**
25:10;27:4,14,21;
28:3;29:16;56:12;97:7;
98:24;99:13;132:7,10;
168:8,8;173:1;180:4;
182:23;190:12
**foul (2)**
30:20;87:23
**found (7)**
10:13;12:2;98:10;
107:15;119:20;161:12;
186:7
**foundation (1)**
183:1
**four (8)**
35:2;103:18;116:7;
118:1,3,8,15;148:18
**fourth (3)**
5:18;118:9;140:5
**frame (2)**
49:18;71:5
**framework (1)**
135:21
**Franchise (2)**
179:15;187:4
**franchises (1)**

**82:16**
**FRANCISCO (9)**
4:1;73:20;90:24;
92:9;101:25;103:8,15;
166:7,8
**frankly (5)**
61:9;67:15;87:16;
109:3;180:17
**fraud (29)**
139:13;144:13,22;
145:1,3,4,10,18,24;
147:22;148:11,15,22;
149:17,25;150:1,6,7,
11,12;153:13,14;
154:23;155:14,17,24;
159:19;160:16;161:6
**frauds (4)**
144:18,22;145:12,15
**fraudulent (3)**
120:10,11;147:5
**free (8)**
110:9,10;111:7;
170:15;173:4;175:5,8,
8
**freed (2)**
76:23;87:4
**fresh (1)**
87:20
**Friday (18)**
5:11;8:18,20;13:24;
16:8;21:13;26:4;28:6;
64:15;127:1;135:16;
137:22;141:7;143:4;
148:1;151:2;155:4;
188:10
**front (2)**
15:20;100:4
**Frontier (5)**
37:19;38:10;106:20;
109:8;112:12
**frustrate (1)**
183:23
**full (9)**
37:22;42:4;44:6;
48:25;50:1;94:8;
106:24;120:15;187:24
**full-blown (1)**
29:22
**fully (3)**
35:23;71:23;141:9
**function (2)**
84:14;95:12
**fund (4)**
20:22;21:25;183:8;
189:5
**fundamentally (1)**
161:6
**funded (3)**
13:16;27:24;64:14
**funding (4)**
5:19;9:7;12:10;
14:15
**funds (2)**

**152:7;183:13**
**funnel (1)**
158:17
**funny (1)**
8:10
**further (16)**
16:25;22:6;31:15;
32:5;38:4;47:12;54:17;
55:1;64:19,20;70:10;
111:13;122:25;126:1;
185:20;193:17
**future (28)**
20:9;23:10;52:17;
78:14;80:16;81:8;
121:23;128:14,23;
129:1,6;130:6,8,10,12,
16,20,21;131:10;
132:12;136:5,9;
171:16;174:14,15,18;
176:3;183:7

**G**

**gander (1)**
15:14
**Gantner (3)**
179:15;186:9,16
**Gas (1)**
146:4
**Gates (1)**
113:14
**gave (1)**
142:24
**gears (1)**
32:9
**gel (1)**
185:16
**general (4)**
39:23;47:20;48:4;
53:4
**generate (1)**
145:6
**generation (1)**
106:13
**generations (1)**
121:23
**generic (1)**
81:20
**genesis (1)**
53:11
**gentleman (1)**
84:16
**Geoff (1)**
122:10
**geographic (2)**
185:9,22
**gets (14)**
8:17;80:24;81:7;
87:3;118:13;120:14;
123:9;125:18;127:18;
141:15,18;150:22;
157:22;176:6
**G-I (1)**

**98:7**
**given (10)**
55:17;60:23;64:10;
66:1,2;89:12;127:3;
130:4;144:11;149:13
**gives (1)**
117:19
**giving (2)**
16:9;41:14;127:12;
143:13;159:4;172:5
**glad (1)**
148:9
**Glassman (54)**
63:8,14,17;72:8,10,
17,21;73:1,24;74:1,2;
76:12,14,19,24;77:15;
78:2,17,20;79:25;80:6,
8,10;81:14,23;82:3,19,
20,22;83:3,6,14,18;
84:1,7,18,20;85:9,10;
86:2,5,8,14,17,18;
87:15;88:5;89:9,11;
90:7,9;91:4;93:7,8
**Glassman's (2)**
83:22;86:11
**global (1)**
127:20
**goal (2)**
154:19,22
**goals (3)**
107:17;157:1;193:13
**goes (18)**
13:24;24:4;25:10,11;
26:15;29:7;46:20;
49:10;66:20;82:15;
85:16;94:4;99:1;
113:20;126:9;140:10;
147:14,18
**go-forward (3)**
106:24;183:8;189:4
**Good (37)**
4:12,13,15,20,21,22;
6:1,3;18:7,10;33:23;
41:6;46:19,21;74:1;
87:19;93:13;105:7;
113:13;116:5;122:3,7,
8;125:24;126:9;137:4,
6,12;147:7;154:6;
156:17,22;164:4;
165:9;168:2,16;177:2
**goose (1)**
15:14
**Gorton (22)**
72:16,17,19,24;73:3,
5,6,10,10;81:6;84:21,
23;86:14;90:10,11;
91:17,21,24;92:4;93:9;
179:13;180:21
**Gorton's (1)**
166:4
**gotcha (3)**
48:4;125:9;150:10
**Gotshal (2)**

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 207
of 226

4:23;163:13
**governing (1)**
150:18
**government (2)**
55:11;90:23
**governmental (3)**
179:9,20;191:6
**Governor's (1)**
188:19
**grab (1)**
49:11
**great (5)**
28:25;63:22;95:16;
124:3;137:24
**Greene (1)**
73:19
**Gregory (1)**
33:23
**grew (1)**
148:13
**Grizzly (1)**
91:7
**ground (1)**
132:6
**group (8)**
24:18,19;54:24;55:3;
73:15;102:1;113:21;
114:18
**guarantee (1)**
46:21
**guaranteed (1)**
52:13
**guarantor (5)**
46:18;47:5,15;52:14;
128:24
**guardians (1)**
127:17
**GUCs (3)**
61:5,6,7
**guess (11)**
6:23;49:12;66:17;
71:20;80:17;103:2;
117:10,13;120:23;
142:19;153:11
**guiding (1)**
55:3
**guy (1)**
153:11

# H

**half (2)**
82:15;153:18
**half-heartedly (1)**
175:15
**Hallisey (5)**
33:17;104:9;163:6;
183:22,25
**Hallisey's (1)**
163:6
**hand (28)**
18:10,19,22;33:13,
14;63:9;68:7,9;69:21;

72:15,19;80:12;
100:11;101:19;102:9;
103:22;104:13,21,23;
109:17,20;114:20;
126:9;128:20;136:19;
159:3;163:6;182:8
**hands (2)**
33:13;193:17
**handy (1)**
6:2
**hang (3)**
97:20;147:3;156:6
**hang-ups (1)**
84:13
**happen (10)**
10:19;16:19;59:21;
74:21;75:7;78:14;
96:12;106:25;141:13;
166:23
**happened (6)**
43:9;66:20;79:11;
88:3;145:9;182:19
**happening (2)**
47:18;146:3
**happens (7)**
16:21;28:11;75:4;
80:16;81:8;111:4;
134:24
**happy (13)**
14:9;15:24;61:23;
62:24;69:24;70:3;
85:23;110:5;113:9;
163:10;177:5;178:7;
181:25
**hard (3)**
93:18;109:20;178:20
**harm (2)**
30:20;156:14
**Harris (2)**
119:1;186:10
**hat (1)**
97:20
**head (1)**
148:1
**heads (1)**
121:20
**Health (1)**
69:7
**hear (34)**
4:13;5:2;19:9,9;
34:20;43:20;60:2;
63:20;65:16;77:22;
78:3;86:14;102:1,20;
105:8,8;118:21,22;
123:19,20,21;126:9,11;
132:22;133:11;134:13,
14;135:11;136:2;
163:9,10;189:15,21,22
**heard (37)**
4:24;16:8;19:3;
25:23,25;26:9;28:6,24;
31:19;34:8,12,14,18;
36:19;57:20;86:13;

94:1,14;100:18,20;
102:3,5,16,21;104:19,
22;108:15;109:4;
121:11;125:17;135:10;
137:22;145:2;155:3;
160:17;164:13;172:12
**hearing (22)**
19:17;31:15;36:4;
63:8;68:11;69:20;
70:15,19;78:4,15;88:1;
101:15,20;103:14;
104:4;118:19;133:3,
17;134:23;192:23;
193:2;194:6
**hearsay (1)**
89:22
**heart (1)**
61:9
**heartburn (1)**
94:24
**Heaton (24)**
103:18;104:15,16;
105:4;118:20;122:6,7,
8,10;123:15,20,22,23;
124:1,3,10,13;125:8,
12,15,23;126:2,4,5
**heavy (1)**
35:7
**hedge (1)**
183:13
**held (3)**
156:1;159:22;171:3
**help (2)**
36:16;104:10
**helpful (9)**
6:16;7:25;8:1;30:3;
65:22;69:25;71:16;
89:24;102:10
**helps (2)**
36:15;81:14
**herein (1)**
76:24
**here's (2)**
49:20;102:11
**herring (1)**
151:25
**hey (4)**
45:4;46:8,20;80:17
**high (1)**
118:2
**higher (2)**
23:7;135:6
**highlight (1)**
70:21
**highly (3)**
53:24;90:14;143:4
**himself (1)**
191:2
**history (2)**
147:8;184:21
**hit (1)**
148:1
**hits (1)**

46:6
**Hold (7)**
100:9;101:2;109:14;
117:10;133:2;134:16;
148:4
**holder (4)**
37:17;51:6;161:5,7
**holders (1)**
154:21
**holding (1)**
148:2
**Holdings (1)**
98:8
**holds (2)**
55:11;150:10
**homemade (2)**
154:5,5
**homework (2)**
6:4;192:16
**honestly (1)**
33:17
**Honor (277)**
4:9,13,20;6:11,23;
7:13;9:6,24;10:1,13;
11:17;13:11,16;14:9,
25;15:15;17:2;18:10,
14;19:15;20:1,6,7,13,
15,19;21:20;22:10,24;
23:19,23;24:2,16;25:2;
26:24;27:6;29:21;
32:24;33:23;34:6;35:5;
36:4,17;39:7,17;40:14;
41:7,22,24;43:22;
44:18;45:7;48:2,17;
49:7,9;50:13;51:16;
55:9;56:17;58:3;59:12,
25;61:1,13,23;62:5,8;
63:6,19,20,25;64:4,15,
22;65:3,20;66:18;
67:10,22;68:5,8,13,16,
20,22;69:12,23,25;
70:1,17;72:2,7,10;
73:10,18;74:1;75:8;
76:24;79:1,18;81:14;
84:24;85:1;86:6,18;
88:5,8;90:8,11;91:24;
92:8,24;93:8,12,16;
94:11;95:4,15;96:1,7,
18;97:5,21;98:6,9;
99:3,12,16;100:5;
103:13;104:12;105:9,
12,17,24;106:6,17;
107:6,9,14,17;108:4,
14,18,23,25;109:3,19;
110:8,14,24;111:15,16;
112:4,18,24;113:2,13;
116:1;118:22,25;
119:3,9,12;120:3,8,18;
121:1,12,25;122:8,13;
123:9,21;124:1,10;
125:8,23;126:4,11,14,
18;129:4;131:21;
132:14,20;133:24;

134:7,14,17,25;135:8,
14;136:1,14;137:6,12,
18,21;138:4;141:17;
142:12;143:3;144:4,
20;147:25;149:9;
150:13,24;152:8;
153:18;154:19;157:15;
158:21;160:12;162:5,
9;163:12,14,24;164:4,
12,19;165:5,15;
166:14;167:2,12;
168:3;169:3,24;
170:20;171:18;172:8,
18,24;173:9,17;
175:23;177:11,17;
178:5,15,18,24;179:5;
180:4,9,17;181:1,8,16;
182:17,20,20,25;183:2,
4,11;184:3,7,20;
186:16;187:10,20;
188:13,16,23;189:1,6,
8;190:11,13;192:1;
194:8,9
**Honorable (1)**
4:6
**honors (1)**
137:18
**Honor's (3)**
24:25;68:16;70:4
**hook (2)**
47:17;81:13
**hope (6)**
10:18,19,19;17:23;
59:16;81:15
**hopefully (2)**
7:25;188:13
**hoping (2)**
36:15;65:21
**horribles (1)**
16:9
**Hostetler (1)**
4:19
**hot (1)**
164:6
**hour (3)**
70:18;101:23;158:4
**hours (2)**
19:14;84:9
**house (1)**
19:6
**huge (1)**
193:12
**Hugh (3)**
103:16;104:16;
105:12
**Huh (1)**
169:5
**hundred-page (1)**
71:2
**hunky-dory (1)**
174:12
**hunt (1)**
109:6

Min-U-Script®
Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26
Page 208
of 226
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(13) governing - hunt

**hurt (2)**
50:20,22
**hydroelectric (1)**
91:8
**hypothetical (19)**
45:18,19;46:13;
47:12;49:13,16;50:12;
51:11;52:9;65:17;
66:18;78:8;94:18;95:3,
15;96:23;148:1;150:4;
162:15
**hypotheticals (3)**
94:19;95:17;116:21

**I**

**idea (5)**
56:23;58:5;116:23;
156:17;157:16
**identical (1)**
138:22
**identifiable (1)**
44:11
**identified (1)**
57:16
**identifies (1)**
71:11
**identify (4)**
71:12;98:7;100:12;
130:18
**ignited (1)**
146:25
**ignition (1)**
146:6
**ignore (8)**
146:2,3,6,7;170:13,
14,15;175:3
**ignored (1)**
149:9
**ignores (2)**
145:16;156:5
**ignoring (1)**
161:12
**III (1)**
159:2
**imagination (1)**
162:16
**imagine (1)**
168:22
**immediate (1)**
158:7
**immediately (2)**
14:1;183:14
**impact (6)**
20:15,16;24:1,4;
148:8;178:2
**impacted (1)**
82:12
**impacts (1)**
146:5
**impaired (5)**
40:9;50:3;52:2;
120:18;132:9

**impairment (9)**
39:18;40:3;52:2;
54:22,23;170:4,6,9,10
**impasse (1)**
192:11
**impede (1)**
90:15
**impediment (2)**
91:13,22
**implant (4)**
185:8,12,24;186:1
**implants (2)**
185:16,17
**implementation (1)**
9:8
**implemented (2)**
7:17;26:17
**implicate (1)**
167:10
**implicated (3)**
53:25;54:5,16
**important (9)**
22:16;25:6;27:16;
45:11;66:3;113:23;
145:20;176:12;187:13
**importantly (5)**
20:13;23:23;148:18;
167:6;189:6
**impose (1)**
135:6
**improper (5)**
74:15;112:22,24;
183:12;185:5
**inaccurate (1)**
145:5
**inappropriate (6)**
50:17;99:13;131:14;
143:25;165:1;188:12
**inappropriately (1)**
128:5
**Inc (1)**
104:12
**incentive (1)**
27:21
**inclined (2)**
5:13;33:17
**include (9)**
34:3;83:1,8,9,9;
94:24;114:23;131:7;
171:2
**included (2)**
64:6;117:23
**includes (5)**
82:12,16;83:10;89:6;
90:19
**including (21)**
5:3;12:5;23:4,14;
50:8;86:21;92:1,10;
101:12;104:9;108:20;
115:2;119:5;155:9;
167:13;170:7;176:25;
177:1,2;187:15;188:19
**inclusion (1)**

106:13
**inconsistency (1)**
142:16
**inconsistent (5)**
62:10,14;108:2;
112:11,14
**incorporate (1)**
29:23
**incorporated (1)**
112:6
**increase (2)**
23:13;148:3
**incur (2)**
43:9;47:5
**incurred (1)**
143:8
**incurrence (1)**
144:9
**indeed (2)**
106:9;107:6
**indemnification (25)**
42:5,7;49:24;58:15;
65:7,14;67:8,24;86:18;
106:11;109:12;112:11;
123:3,10,10,13;124:11;
126:23;128:9;131:7,9;
167:3;168:9;177:19,22
**indemnified (1)**
52:12
**indemnify (1)**
43:10
**indemnifying (1)**
43:8
**indemnities (2)**
50:8;65:10
**indemnity (68)**
36:23;37:4;38:2,16,
17,23;40:20,25;41:11;
42:2,15;43:19;46:7,10,
14,22,24;47:15,20;
49:4;51:23;52:5;57:6;
58:18,24;66:1,8,10,12,
24,25;67:3;76:5,15,22;
77:2,8,11,25;78:15,24;
80:2,15,17;85:20;
92:10,23;94:3;95:1,5,
12;97:16,18;98:13,17;
100:3;106:4;107:2;
108:12,20;109:2;
119:7;122:16;132:17;
164:15;166:9;176:2;
178:12
**indicate (2)**
70:10;135:21
**indicated (2)**
12:20;85:23
**indication (1)**
120:17
**indiscernible (14)**
13:4;53:6;56:18;
61:12;70:16;82:19;
89:9;91:11;99:18;
106:10;108:18;133:1;

134:1,5
**individual (7)**
95:17,18,21;96:3;
151:16;155:16;179:16
**individuals (1)**
18:22
**individual's (1)**
155:23
**inevitable (1)**
182:23
**inflated (1)**
139:18
**influence (1)**
6:25
**information (6)**
13:2;89:16;104:4,19;
127:9;183:15
**initial (2)**
73:7;160:17
**injunction (4)**
88:7,13,16;89:4
**injuries (1)**
185:17
**input (1)**
60:13
**insatiable (1)**
83:23
**insignificant (1)**
154:9
**insist (1)**
29:2
**insolvency (1)**
53:5
**insolvent (5)**
52:24;53:8;54:14;
152:3;160:7
**instance (1)**
41:9
**instances (1)**
65:8
**instead (1)**
46:9
**insurance (11)**
146:1;150:25;151:3,
6,11,13,20,24;152:2,6,
18
**insurer (1)**
151:17
**intake (1)**
35:10
**intellectual (2)**
129:23;154:6
**intellectually (2)**
148:23;149:5
**intend (3)**
64:25;103:25;130:22
**intended (5)**
59:4;88:21;89:5;
90:16;101:7
**intending (1)**
55:16
**intention (3)**
58:25;126:21;127:1

**interchangeably (1)**
140:12
**interconnection (8)**
86:22;105:22;106:6,
14;107:4,7;109:10;
111:20
**interest (11)**
27:19;28:2;37:16,17;
72:11;115:6;127:21;
170:5,6,8;181:15
**interested (1)**
102:3
**interesting (4)**
30:20;55:18;59:17,
23
**interestingly (1)**
49:10
**interests (2)**
125:25;155:8
**interfere (1)**
194:2
**interfering (1)**
19:7
**interpret (1)**
81:4
**interpretation (11)**
38:14;50:23;55:6;
58:16;59:5,23;87:2,14;
90:21;99:12;115:5
**interpreted (2)**
180:21,22
**interrupt (4)**
6:11;135:19,24;
163:8
**interrupted (1)**
169:15
**intersection (1)**
97:18,21
**intervened (1)**
37:22
**into (49)**
6:16,18;8:8;9:19;
12:23;14:23;15:4,18;
17:10;18:25;21:6;
26:15;27:24;28:14;
33:11;35:6,21;38:19;
46:20;53:16;54:11;
75:12;76:1;79:7,8;
87:4,6;88:20;90:2;
92:12;94:4;97:23;
107:12;112:5,6;117:7;
122:13;124:16;125:13;
126:8;132:21;133:1;
148:22;155:17;158:5;
163:19;188:4;192:21,
25
**invade (1)**
6:21
**invalidate (2)**
38:16,22
**inverse (1)**
146:4
**invested (2)**

Min-U-Script® 

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 209
of 226

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(14) hurt - invested

149:19;153:7
**investigations (1)**
96:16
**investigators (1)**
96:9
**investing (1)**
153:15
**investment (1)**
14:10
**investments (1)**
24:18
**investor (1)**
145:25
**investors (5)**
22:9;23:5,6;24:19;
156:9
**invite (2)**
82:13;83:6
**invited (1)**
158:3
**invites (1)**
153:16
**inviting (1)**
6:21
**involve (2)**
69:14;106:8
**involved (3)**
71:22;117:15;166:6
**involves (1)**
26:17
**involving (2)**
161:15;162:12
**Iowa (1)**
114:6
**IP (1)**
129:22
**ipso (1)**
40:15
**ironic (1)**
140:14
**irrelevant (2)**
183:15,17
**Irrigation (2)**
74:3;90:25
**ISO (1)**
106:8
**issuance (1)**
162:12
**issue (108)**
9:5;11:2,13;13:20;
25:13;27:1,10;28:17;
32:22;37:1;38:1;40:20;
47:19;49:2,3,12,16;
51:16;52:7;53:4,11,18;
54:4,8,12;55:12,15,17,
18;56:6,9;57:1,14,22;
58:12;59:10;61:14,19;
62:12,13;63:24;64:4;
67:1,10,12,18;70:21;
71:3;75:9,10;77:17;
79:2;81:17;83:19;88:4;
93:25;94:17;95:14;
99:4;100:18;101:9;

107:9;115:21;116:20;
117:9,20;118:9;120:3;
121:11;124:17;126:7;
127:23;128:4,25;
130:12;131:6;132:19;
135:4;136:3;139:22;
143:7;151:10,11;
152:12;154:7;157:19;
160:10;163:8;166:15,
18;168:14,17;170:4;
172:6,13,14,14,19;
178:25;179:18;180:16;
184:8;189:14;191:18,
23;192:8,19;193:6
**issued (3)**
23:5;57:10;155:9
**issuer (1)**
145:7
**issues (92)**
5:1;6:16,25;9:18;
27:7;28:12;34:18;35:2,
10,13,16,18,20,22;
36:7,13,14,22;37:3,4,5;
52:7;55:25;56:7,19,20;
57:13,25;58:7;59:25;
64:21,25;68:11,14,15,
20,22;69:25;70:13,16;
71:6,11,12;72:11,13,
14;75:18;79:8;89:25;
91:11;92:11,17,23,23;
96:17;99:8;105:15;
106:2;113:23,25;
114:9;17;115:13;
116:7;118:1,15;
122:16;126:20;127:2;
132:10;136:6;162:15;
163:15;164:15,15;
165:2;166:25;167:1;
169:12,22;170:18,25;
172:7;177:16;179:6,8,
9,16;184:7;188:2,6;
192:17
**issuing (2)**
30:4;178:1
**item (6)**
19:23;32:25;103:25;
161:22;181:22;193:23
**items (6)**
19:16;25:3;83:10;
85:13;176:20;177:3
**Ivanhoe (7)**
151:10,14,15,17,18,
19;152:25

**J**

**Jelam (2)**
180:13,14
**jeopardize (1)**
29:3
**Jersey (1)**
98:8
**Jim (2)**

137:13;163:24
**Joaquin (2)**
74:3;90:24
**job (2)**
194:2,2
**Johnson (2)**
137:2;193:11
**Johnston (85)**
33:3;100:14;101:4,6;
102:19,22,22;136:24;
137:11,12,13,18,20;
138:18,21;139:1;
140:18,21,24;141:1,5,
17,22;142:3,11,14,22,
25;143:11,15,20,24;
146:14,16,19,21,25;
147:3,11,16,18,25;
151:18,22,23,24;152:5,
8,13,15,17,23;153:18,
22;154:1,10,17;156:6,
18,20,24;157:1,5,15;
158:21;159:8,11,13,15,
18,25;160:5,9,12,20,
24;161:2,18,19;162:5,
10;163:21,24,24;164:3
**join (1)**
125:19
**joined (1)**
169:12
**joining (3)**
4:10,10;92:22
**joint (1)**
70:12
**Jones (3)**
73:11;137:9,13
**Judge (11)**
6:14;104:4,6;161:21;
166:1,2,2;180:13,14;
188:13;191:8
**judgment (3)**
102:18;185:23,25
**judicata (1)**
98:21
**judicial (5)**
10:9;11:1;26:21;
89:22;166:12
**Julian (30)**
4:8,10,16,19,19;5:11,
17,23;6:2,8;8:6;10:7,
12,13;11:3,5,18,22;
14:25;15:10,12,18;
16:3;17:3;18:2,8,9,14;
69:15;188:9
**Julian's (1)**
16:8
**July (2)**
67:2;128:17
**jumping (1)**
68:17
**JUNE (5)**
4:1;128:17;191:22,
23;193:7
**jurisdiction (1)**

166:20
**jurisdictional (3)**
107:8;108:22;112:15
**justification (3)**
65:6;184:18,19
**justified (1)**
158:15
**justifies (1)**
161:8
**justify (1)**
49:18
**juxtaposed (1)**
150:1

**K**

**Kane (1)**
110:19
**Karotkin (208)**
4:7,10,12,13,18,22,
22,24;5:10,15;6:11,13,
23;7:7,13;8:10,13;9:6,
16,24;11:17,21;12:12,
15,19;13:4,11,15,25;
14:4,8;15:15,16,17,23;
16:16;17:2,13;18:5,15;
19:9,13,15;20:1;24:6,
9;25:12,19,24;26:19,
24;29:10,13,20;30:6,9,
12;31:3,5,10,16,21;
32:8,11,15;33:10;
35:20;37:6;45:6;46:4,
9,16,19,20,23;47:5,9,
13;52:10,10,15;56:20;
59:9;61:9,13,17;65:18;
68:10;77:24;78:17,23;
79:1,25;80:1,5,7,9,13;
81:7;83:13,15,21;84:2;
85:6;94:1;99:7;100:9,
14,21,22,25;101:6;
102:19,24;109:16,17,
19,25;110:2,5;111:17,
21;112:18;113:6,9;
115:17;124:20;125:17;
127:19;128:23;129:14,
17;133:17,18;135:8,9,
10,17,19,24;136:17,23,
25;155:11;157:2;
162:21;163:4,10,12,13;
164:9,12;165:22;
166:14;167:20,23;
169:1,3,6,9,19,21,24;
170:12;171:11,14,18,
21;172:10,11,18;173:9,
13,17,20,22,24;174:10,
17,23;175:1,5,9;176:8,
10;178:10,17,18,24;
179:2;180:13,15;
182:3,7,10,13,15;
189:12;190:1,8,11,19,
23;191:21,25;192:14,
20;194:8
**Karotkin's (1)**

111:16
**keep (12)**
6:22;35:3;53:14;
68:4;84:5;101:24;
114:2;120:23;127:15;
134:16;163:17;192:5
**Kelly (3)**
187:10,11,19
**Kelly's (1)**
187:13
**key (2)**
22:11;151:18
**kick (3)**
156:16;157:5;160:6
**kicking (2)**
156:20;157:16
**kicks (1)**
52:18
**kidding (1)**
8:15
**Kim (1)**
26:12
**Kincade (7)**
95:8,9,14,17;97:8,9,
12
**kind (9)**
8:7;28:16;43:19;
54:23;68:17;98:12;
127:14;145:25;175:14
**Kirkland (1)**
93:13
**knew (1)**
144:23
**knowable (1)**
95:23
**knowledge (7)**
46:25;66:8,9;147:12;
166:3;168:5,5
**known (4)**
66:14;95:23;112:2;
157:9
**known-extent (1)**
111:20
**knows (4)**
37:9,14;113:19;
138:12

**L**

**labeled (1)**
150:3
**lack (3)**
58:17;183:1,1
**Lake (1)**
95:7
**landlord (3)**
44:12;88:2;132:4
**language (47)**
5:12,13;36:12;40:20;
56:6;57:9;58:8;61:2,6;
64:11,12;74:12,25;
81:15,15;82:11;85:14,
18,19;88:6,20,24;89:2,

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 210
of 226

5;114:10,10,14;
115:15;117:8,18;
118:16;119:24;120:19;
121:2,10,13,13;125:12,
14;127:5;131:4;151:8;
172:15;177:4,5;
178:12;188:12
**languages (1)**
192:22
**large (7)**
90:22;106:13;
113:21;114:3,18;
152:18;159:9
**largely (1)**
139:18
**last (29)**
5:11;7:24;12:24;
13:22;32:16;35:6,21;
37:7;62:3,11;64:4;
88:1;92:15,21;100:25;
104:17;110:7;114:9;
124:20;126:6,19;
146:11;149:22;159:11;
160:12;177:13;187:20;
188:9,17
**lastly (2)**
61:1;187:10
**late (3)**
114:11;143:10;158:2
**later (26)**
9:19,20;26:10;32:21;
33:16,19;34:23;45:4;
58:2;68:20;70:9,15;
75:14;76:8;77:5;79:17;
153:7,8;156:17;
157:11;160:4;166:19;
168:12;169:10;173:25;
182:5
**latest (3)**
28:23;138:2,19
**Latin (2)**
118:2,3
**law (52)**
38:14,21;39:10,11;
42:10;43:24;44:25;
47:2;50:2;51:24;52:16;
54:2;55:5,22;57:1;
60:15,15;75:12,12;
76:3;78:10;80:2;87:2;
92:3;97:17;98:3,6,24,
25;99:4;102:2;110:8,
12;111:3,7;123:5;
125:20;131:12;132:24;
145:16;150:18;156:12;
157:13;158:12;166:2;
167:5;170:9,16;175:6,
25;176:4;186:23
**laws (3)**
45:3;145:17,25
**lawyer (5)**
138:11,15;139:6;
157:23;160:3
**lawyers (10)**

115:3;121:6;127:12;
138:9,13;157:10;
166:11;168:15,17;
169:16
**layer (2)**
51:11;55:1
**lead (1)**
84:22
**leading (1)**
109:9
**learned (1)**
98:16
**lease (5)**
43:6;44:13;45:5;
47:13;128:16
**leases (1)**
132:4
**least (16)**
10:18;11:11;14:2;
31:13,17;32:20;48:19;
56:8;72:15;87:5;
143:22;147:12;148:12;
154:14;189:18;191:19
**leave (10)**
16:21;26:10;28:16;
40:22;87:18;98:12;
110:2;171:16;191:17;
193:7
**leaves (1)**
37:15
**leaving (1)**
49:13
**left (5)**
28:20;32:7;46:11;
71:15;152:3
**left-hand (1)**
148:15
**legal (12)**
37:9,15,24;39:3,15;
41:13;42:9;49:16,18;
87:21;89:17;165:16
**legalese (1)**
114:21
**legally (2)**
46:1;49:5
**legislative (1)**
53:6
**legitimate (4)**
31:19;83:24;99:5;
186:2
**lend (1)**
60:2
**lenders (1)**
31:1
**lending (1)**
24:19
**lengthy (1)**
145:20
**less (6)**
24:14;28:1,1;116:23;
165:22;188:25
**letters (13)**
19:19;20:2,20,24,25;

21:5,6,9,19,21;22:2,3;
23:20
**letting (1)**
84:22
**level (2)**
120:19;159:20
**liability (8)**
50:19;54:5;65:12;
66:9;67:14;78:12;83:3;
107:11
**liability's (1)**
67:16
**liable (2)**
144:24;147:5
**license (2)**
129:22,24
**lie (1)**
168:11
**lien (1)**
181:9
**liens (1)**
181:5
**lies (1)**
76:24
**life (2)**
14:14;153:4
**lightly (1)**
144:21
**liked (1)**
143:21
**likelihood (1)**
23:13
**likely (3)**
34:2;160:18;192:11
**likes (2)**
47:9;87:18
**limit (1)**
149:24
**limitation (1)**
114:24
**limitations (1)**
171:5
**limited (5)**
39:24;65:8;93:22;
94:16;180:19
**limiting (1)**
161:8
**limits (1)**
41:18
**line (4)**
5:19;112:18;131:5;
191:7
**Liou (2)**
4:25;26:11
**liquidated (3)**
52:5;138:13,16
**liquidates (1)**
138:7
**liquidation (2)**
141:19;154:10
**list (4)**
6:19;36:5;85:12;
193:3

**listed (2)**
64:7,11
**listen (2)**
17:19;191:15
**listened (1)**
108:14
**listening (2)**
18:24;101:16
**lists (2)**
88:10,11
**literally (1)**
158:4
**litigants (2)**
166:11;192:25
**litigation (8)**
28:20;53:12;60:24;
119:17;120:22;153:16;
154:10;157:9
**little (16)**
9:19;16:14;26:10;
27:15;28:1,5,18;36:17;
53:11;55:1;70:14;
87:25;102:5;114:6;
137:16;166:6
**live (3)**
61:23;62:2,24
**LLC (1)**
122:12
**LLP (1)**
33:24
**load (1)**
71:1
**local (1)**
90:23
**location (2)**
185:9,22
**logic (1)**
144:14
**logical (3)**
144:12;149:4;178:16
**long (11)**
6:4,5,5;30:13,14;
101:24;116:24;158:1;
165:20,21;166:10
**longer (3)**
83:19;124:6;134:23
**long-term (2)**
24:19;90:17
**Look (33)**
15:22;17:23;28:15;
33:12;42:23;55:14;
56:12;60:13;62:1,3;
66:23,24;67:2;77:22;
79:4,13,19;82:13,25;
83:7;92:5,16;102:15;
115:18;119:9;124:19;
129:13;140:1;146:8;
149:22,24;162:24;
177:5
**lookback (1)**
67:5
**looked (2)**
60:4;115:12

**looking (9)**
6:7;7:3,3;8:9;25:24;
41:10;67:18;91:21;
167:18
**looks (5)**
66:10,12,25;100:16;
105:25
**loop (1)**
8:18
**loosely (1)**
113:22
**lose (2)**
47:7;133:16
**loss (8)**
144:3;145:17,19;
146:6;148:2;152:21;
155:2,15
**losses (12)**
139:5;143:5,7,8;
144:2,9;145:9;148:3;
150:5;155:12;156:1,5
**lost (7)**
30:21;78:9;82:1,3;
132:23;156:8;157:12
**lot (21)**
27:21;28:22;31:14;
62:21;77:20;85:12;
88:11;103:4;115:3,7;
137:22;143:21;144:16;
153:3;162:2;165:22;
170:18;177:23;179:4,
10;189:15
**lots (5)**
62:16;113:19;
114:20,20;156:7
**lower (2)**
22:7,14
**Lubic (37)**
100:18;102:16;
103:17;104:16;105:3;
113:11,12,13,13,19;
115:12,15,19;116:1,3,
6,7,9;117:7,18,22,25;
118:5,17;119:5,12;
121:2,12,20;122:14;
124:17,23,25;125:13,
19;176:12,13
**Lubic's (2)**
121:18;125:14
**luck (3)**
43:13,17;46:1
**lurking (3)**
66:9;67:14,16
**lurks (1)**
191:22
**luxury (1)**
134:22

## M

**maintain (1)**
48:21
**maintained (1)**

Min-U-Script®

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 211
of 226

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(16) languages - maintained

22:18
**major (6)**
20:9;29:4,5;57:11,
19;100:1
**makes (9)**
31:14;33:6;55:18;
74:14;154:18;162:2;
167:23;171:9;184:18
**making (8)**
30:24;47:25;78:3;
121:6;154:20;172:2;
176:13;180:5
**Malone (1)**
73:19
**Maltin (3)**
136:18,19,21
**mandates (1)**
52:4
**mandatory (1)**
52:6
**Manges (2)**
4:23;163:13
**manipulating (1)**
139:16
**manner (2)**
12:4;14:17
**manufacture (1)**
185:15
**many (16)**
31:25;35:15;37:23;
41:25;69:21;82:15;
83:10;92:9,10;106:7;
121:2;141:11;175:7;
176:25;177:21;181:7
**marginally (1)**
143:15
**mark (3)**
41:16;73:10;93:13
**marked (1)**
138:11
**market (9)**
21:7;22:13,21;29:3;
142:18;147:20;148:16;
150:5;155:11
**marketed (12)**
20:11;21:4,9,21;
22:6,13,15,25;23:6,14;
24:14;27:2
**marketing (2)**
23:8;27:5
**markets (5)**
20:12;27:17,17;
114:4;183:10
**marry (1)**
51:13
**massive (1)**
155:12
**massively (1)**
155:8
**match (4)**
88:25;89:3,3;97:19
**materialized (1)**
135:16

**materials (1)**
155:2
**math (1)**
85:5
**matter (19)**
26:6;41:13;42:9;
44:25;51:24;60:15,15;
62:12;66:6,8;78:10;
111:1,6;122:21,23;
143:25;153:9;160:17;
183:22
**matters (12)**
5:2;15:7;27:8;30:16;
32:17;65:12;82:6,12;
101:5;178:3;179:14;
189:21
**matter's (1)**
191:4
**mature (1)**
65:18
**matured (1)**
52:19
**maximizing (1)**
23:3
**maximum (1)**
50:2
**may (53)**
6:16,25,25;7:4,8;
13:15,18,19;18:10,19;
19:24;20:4;27:9;31:7;
33:18;36:13;49:11;
54:10,11;55:25;72:18;
79:18,25;83:1;84:7,14;
96:13,15,25;97:7,13,
16;102:6;107:12;
110:18,18,19;111:18;
112:18;114:21;118:5;
120:2;128:7;143:5,15;
145:6;154:8;170:23;
181:4;183:16,20;
192:8,22
**maybe (43)**
7:9;10:24;16:19,19;
17:14;26:5;30:21;
33:16;44:24;46:18;
49:12;54:17;59:9;66:4,
11;69:18;79:12;81:19;
84:11,11,20;87:11;
99:3;101:16;109:17;
110:2;115:21;117:19;
121:20;132:23;133:10;
135:11;147:14,15;
157:9,23;168:9;177:4,
22;190:4,15,17;192:6
**McDonald (36)**
102:3;103:17;104:2,
2,2,5,11,16;105:2,3,7,8,
12,12;106:17,19;108:4,
14,18;109:14,18;110:4,
7,7,15,18;111:13,15;
112:2,4,10,14,17,25;
113:2,4
**McKane (23)**

86:12,14;93:3,10,12,
13,16;94:9,11;95:16;
96:1,7;97:2,5;99:15,17,
19;100:7;103:10;
105:16;108:19;109:5;
165:3
**McKane's (1)**
166:5
**McKinsey (3)**
104:12;126:15;168:4
**mean (48)**
12:12;14:18,19;
28:13,22;29:6;30:13;
34:4;35:3;39:16;42:23;
43:20;55:14;57:13;
69:9,20;75:22;83:22;
111:14;115:24;117:5,
6,14;121:18,21;125:5;
129:19;134:21;141:8,
13;143:14;147:24;
152:11,12;154:5;
156:19;158:16;166:25;
171:12;174:8;178:21;
182:1,5;190:6;192:14;
193:10,20,25
**meaning (1)**
125:5
**means (11)**
28:24;38:11;43:23;
50:16,23;51:13;
173:18,19,21,23;
186:14
**meant (2)**
115:6,9
**measure (2)**
150:11,15
**measuring (1)**
145:9
**mechanics (2)**
181:5,8
**mechanism (1)**
91:11
**mediate (1)**
13:6
**mediated (10)**
7:23;10:4,7,19;13:7;
161:22,23;188:5,14;
192:11
**mediating (1)**
149:8
**mediation (17)**
6:14,20,21;7:1;9:3;
10:21;13:17;15:5,7,22;
16:20;17:23;149:10,
13;179:19;191:7,14
**medication (1)**
13:13
**meet (1)**
162:1
**meeting (1)**
189:3
**megawatts (1)**
105:20

**members (1)**
161:16
**memorandum (2)**
10:22;26:22
**memorialize (1)**
127:19
**memorialized (1)**
127:16
**memorized (1)**
142:13
**mention (4)**
41:21;51:24;64:22;
139:10
**mentioned (6)**
12:24;20:2;22:19;
25:4;119:19;180:3
**merely (2)**
29:15;54:12
**merit (1)**
61:8
**message (3)**
92:6;100:17;104:22
**met (8)**
11:10;21:7,10,10;
59:6;189:8,9,9
**mic (1)**
105:5
**Michael (1)**
113:13
**microphone (4)**
133:10,16,21;137:5
**midday (3)**
84:10;85:8;86:16
**mid-day (1)**
100:13
**middle (1)**
68:17
**might (18)**
9:3;13:8;17:16;
27:14;28:16;39:11;
83:9;104:9;118:10;
123:17;144:23;145:7;
147:5;164:7;165:25;
174:5;192:18;193:2
**might've (2)**
159:5,5
**Milbank (1)**
33:24
**million (10)**
23:22;27:19;139:4,8,
9,11,13,14,15;159:6
**mind (4)**
5:5;31:8;58:12;
142:6
**minimize (1)**
194:1
**minimum (1)**
21:17
**minor (1)**
29:6
**Mintz (15)**
33:13;34:3,20;57:18;
63:8,14,17;68:6,8,8;

69:1,23;70:17;71:5;
72:1
**Mintz' (1)**
69:7
**minute (8)**
42:2;45:25;72:20;
109:15;128:24;137:16;
143:2;182:3
**minutes (10)**
34:25;68:21;69:2;
84:20,24;85:1;93:24;
103:20;122:14;149:15
**mirror (1)**
92:11
**mischief (2)**
60:7,17
**misdirection (1)**
150:14
**misinterpreting (1)**
52:1
**misleading (1)**
143:4
**misplaced (1)**
65:15
**miss (1)**
5:21
**missing (2)**
41:16;124:9
**misspoke (1)**
102:8
**misstated (1)**
96:2
**misstatements (2)**
145:7,21
**mistake (2)**
171:7;190:24
**mistaken (1)**
34:21
**Mister (1)**
17:1
**misunderstood (1)**
190:16
**mitigation (2)**
183:6,7
**modification (10)**
40:3;64:18;107:3,23;
108:22;109:2;112:10;
116:19;152:18;180:24
**modifications (6)**
36:5;60:20,22;
107:25;187:1,5
**modified (1)**
184:1
**modify (5)**
37:1;66:17;107:10;
109:12;181:2
**Moines (1)**
114:5
**mole (1)**
84:4
**Molton (7)**
101:18,18;102:7,8,8,
20;104:18

Case: 19-30088   Doc# 7869   Filed: 06/10/20   Entered: 06/10/20 07:33:26   Page 212
of 226

**moment (14)**
25:8;36:18;39:20;
41:24;67:20;74:7,10;
78:20;101:3,21;105:2;
158:20;163:4;179:3
**momentum (1)**
23:7
**MONDAY (3)**
4:1;8:20;47:13
**monetary (6)**
44:11;168:1,24;
173:7,11;179:25
**money (9)**
30:18;46:9,17;52:11,
12;65:17;96:4;115:7;
156:11
**Montali (8)**
4:6;40:19;45:1,1,23,
23;46:20;128:23
**Montali-Karotkin (1)**
128:16
**month (2)**
66:19,19
**months (15)**
15:23;29:18;138:10;
143:17;144:19;148:13;
157:8,10;159:10,12,14;
184:4,4,4;189:7
**month's (3)**
132:5,7,8
**moot (2)**
140:23;160:18
**more (52)**
5:8;8:22;9:20;13:2;
17:23;22:8,23;23:6;
27:15;30:24;31:11;
32:10;36:18;37:2;44:3;
48:22;49:2;51:19;
55:18;56:1;60:1;70:8;
71:3,23;84:18;85:6;
89:6;92:3;103:19,20;
115:20,23;134:23;
137:22;138:10;139:11;
148:15,18;153:9;
154:17;155:9;160:22;
162:7,12;163:4;167:6;
170:24,24;180:16;
184:10;191:4;193:5
**morning (24)**
4:12,13,20,21,22;
5:1;18:6;19:20,21;
23:11;24:15;28:18;
33:23;74:1;81:12;
93:12,13;116:4;
155:11;160:17,25;
189:18;192:5,6
**Morris (1)**
122:10
**most (19)**
5:7;14:16;21:22;
22:18,19;28:3;32:7;
85:3;138:18,19;
144:12;168:14;172:6,

7,18;177:21;178:16;
189:5;191:12
**motion (6)**
20:5;22:23;25:1;
45:22;47:22;48:3,8;
70:7;71:14;132:6;
157:7,8,20;158:25;
159:16;189:21
**mouth (1)**
6:24
**move (17)**
16:23;27:14,21;28:3;
32:11;44:13;48:11;
49:6,8;63:4;72:5;
75:11;81:17;149:14;
179:2;182:23;190:12
**moved (1)**
76:1
**moves (1)**
143:25
**moving (5)**
29:2;115:25;120:24;
133:10;190:6
**much (21)**
31:25;35:2,25;41:20;
57:1;63:23;78:8;84:16,
18;93:17;96:15;116:5;
118:17;126:4;136:12;
148:24;159:22;162:9;
175:11;188:25;193:25
**multi-month (1)**
149:10
**multiple (2)**
90:13;164:21
**multitude (1)**
82:12
**municipal (5)**
72:11;73:15;90:13,
17;92:1
**municipalities (3)**
34:13;61:2,7
**must (9)**
11:24;13:19;16:7;
106:23,23;109:9;
156:13;176:5;183:17
**mute (4)**
123:25;133:21,21;
134:8
**muted (1)**
25:8
**mutual (3)**
40:24,25;161:13
**mutuality (2)**
37:21;58:5
**myself (3)**
25:8;48:21;163:25
**mystified (1)**
61:24

**N**

**nail (1)**
148:1

**naked (1)**
171:23
**name (14)**
33:21;34:8,23;63:15;
69:5;93:10;102:8;
105:5,10;113:12;
118:23;126:12;137:8;
168:22
**named (2)**
102:13,16
**names (1)**
100:10
**nature (3)**
16:15;58:14;77:3
**nearest (1)**
191:19
**necessarily (1)**
68:18
**necessary (8)**
12:5,6;14:15;20:21;
21:25;91:2;94:6;193:2
**need (52)**
4:25;6:6,9;9:25,25;
12:7,19,22,25;13:25;
15:25;16:17;20:4;
23:17;26:25;27:4;31:8,
15,17;34:25;37:13;
48:10;54:3,7;59:11;
68:4,15,21;69:13;
70:15;71:11;81:2;
84:17,18;90:5,5;91:4;
94:7;100:2;102:4;
104:20;109:23;113:7;
115:6;116:10,19;
117:2;121:15;155:20;
177:15;189:24;190:6
**needed (3)**
22:4;26:20;93:17
**needs (5)**
8:7;24:2;42:14;
71:23;84:12;116:22;
117:14;118:14;119:24;
128:11;129:7;136:8;
137:23;139:23;149:20
**negotiated (2)**
25:14;64:13
**negotiations (1)**
22:11
**neighborhood (1)**
139:8
**neither (2)**
39:14;183:21
**net (1)**
148:8
**nevertheless (2)**
26:21;165:5
**new (12)**
5:2;7:20;24:7,9;
98:8;120:5;145:6;
149:1;155:8,10;193:1,
1
**Newman (55)**
100:19;104:12,14,

17;105:4;122:6;126:6,
8,9,11,14,14,18;127:9,
23;129:4,10,12,16,21;
130:3,17,25;131:3,16,
18,20,23,25;132:14,18,
20,24;133:2,8,11,13,
24;134:1,3,5,7,11,13,
14,17,25;135:11,14,18,
20;136:1,13,14;168:3
**Newsome (4)**
6:15;161:22;188:13;
191:8
**newspaper (1)**
183:11
**next (27)**
5:14;13:6;16:21;
18:3;19:14;25:25;26:9;
30:4,22;43:18;65:21;
66:19;100:14;102:5;
113:11;118:20;144:18;
157:21;160:21;173:9;
189:5,18,20;190:7,17;
194:2,7
**Nice (3)**
122:7,8;165:19
**night (2)**
32:16;64:15
**night's (1)**
62:3
**nine (10)**
7:20;20:22;22:20;
23:13;144:17,17,21,25;
145:12;148:9
**nine-million-dollar (1)**
31:2
**Ninth (6)**
37:19;43:15;44:1,9;
48:25;150:10
**NN (1)**
12:3
**nobody (5)**
18:1;81:11;158:12;
160:1;174:8
**no-brainer (1)**
168:23
**Noel (1)**
98:16
**noise (3)**
19:5,10;25:9
**nominal (1)**
55:21
**nonassertion (1)**
49:3
**non-bankruptcy (2)**
158:12;166:20
**non-bankruptcy-trained (1)**
166:12
**nonconsensual (4)**
90:16;107:3,23;
108:21
**noncontractual (1)**
177:19
**noncurable (1)**

17;105:4;122:6;126:6,
8,9,11,14,14,18;127:9,
23;129:4,10,12,16,21;
130:3,17,25;131:3,16,
18,20,23,25;132:14,18,
20,24;133:2,8,11,13,
14,17,25;135:11,14,18,
20;136:1,13,14;168:3

**nondebtor (2)**
173:10,15
**non-debtor (1)**
167:24
**non-debtors (1)**
152:7
**nondefaults (3)**
173:8,16,16
**None (2)**
27:22;166:2
**nonexecutory (1)**
51:17
**nonimpaired (1)**
39:18
**non-impairment (1)**
170:2
**non-indemnified (1)**
152:21
**nonissue (4)**
59:14;83:16;154:8;
160:24
**nonissues (1)**
121:22
**nonmonetary (5)**
167:25;168:18,24;
173:7,11
**nonstarter (1)**
177:6
**nonstatutory (1)**
52:2
**non-upholders (1)**
51:17
**Nor (2)**
36:1;39:15
**normal (2)**
20:11;52:7
**North (1)**
146:6
**Northern (3)**
4:5;73:11,12
**not-dischargeable (1)**
95:19
**note (7)**
33:7;65:7,9;102:24;
112:22;135:25;187:13
**noted (6)**
32:16;106:20;
122:17;167:10;179:7;
185:10
**noteholders (1)**
34:17
**noteworthy (1)**
41:12
**notice (18)**
45:24;47:3;65:23,24;
66:14;67:1,14,15,18;
89:22;93:23;96:17,18;
98:1;99:2;115:1;
142:25;178:11
**notified (1)**
104:18
**noting (1)**

**87:25**

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 213
of 226

185:11

**notion (3)**
38:2;48:19;158:16

**notwithstanding (3)**
118:7;176:18;177:7

**November (7)**
12:3,3;145:14;
146:23,23;147:1,2

**nowhere (1)**
161:12

**nullified (1)**
123:4

**number (25)**
19:2;24:10;34:15;
35:18;79:2;100:17;
103:6;110:6;116:12,
18;117:2,4;120:5,7;
123:8;127:12;132:2;
163:17;167:10;168:16;
172:11;177:1;182:1,2;
193:12

**numbered (1)**
118:5

**numbers (4)**
90:3,4;113:16;
138:17

**numerator (2)**
150:17,24

**numerous (3)**
64:6;86:21;145:21

**nutshell (1)**
149:17

**O**

**object (3)**
59:13;64:18;129:5

**objected (3)**
125:6;139:20;152:17

**objecting (3)**
171:21;188:23,23

**objection (32)**
33:4,5;35:13;48:13;
50:9;61:2;64:2;67:12;
91:12,12,15,18;93:22,
22;101:7;126:15;
129:2,7;135:2;152:15;
175:14;179:15,21;
180:18;181:3,5,10;
182:2,16;186:9;187:6;
189:22

**objectionable (1)**
88:8

**objections (26)**
33:1,5;35:1;36:19;
88:9;89:14;90:1,15,22;
91:7;92:18,21,22;
101:8,10;113:16;
122:15,18,20;123:7;
135:5,22;179:6;182:6;
187:6;188:25

**objector (1)**
29:6

**objectors (6)**
72:11;73:16;90:13,
17;92:2;141:8

**objects (1)**
140:14

**obligated (1)**
52:20

**obligation (21)**
42:7;45:8,10,14,16,
17;47:5;58:22;76:9;
77:8;78:24;97:17,18;
98:19,21;128:3;165:7;
167:13,13;168:8;
172:25

**obligations (28)**
42:2;44:6;47:21;
50:4,6,7;53:15;58:19;
67:24;74:17;76:3,5;
86:19;95:5;97:7;98:13,
17;100:3;107:21;
109:2,12;128:23;
130:19,23;131:11;
132:17;136:4,10

**obliged (2)**
16:24;17:2

**obliterated (1)**
51:25

**observations (1)**
48:2

**obtained (1)**
24:17

**obviate (1)**
128:12

**obvious (4)**
125:20;153:14;
175:16;185:11

**obviously (11)**
6:19;13:8;26:4;
69:10;100:1;109:1;
116:19;158:7,14;
161:24;191:4

**OCC (5)**
5:1;28:21;124:21;
125:18;191:6

**occasions (1)**
92:13

**occur (3)**
27:25;76:15;78:24

**occurred (11)**
44:22;60:24;65:25;
76:12;95:7;109:11;
129:25;144:2,3,18;
154:25

**occurs (2)**
76:17;77:19

**o'clock (4)**
101:25;102:12;
103:7,15

**October (15)**
142:19,19;143:2;
144:1,4,10,11;145:13;
148:2,12,14;150:6;
153:6;154:18;155:2

**off (27)**
8:14;18:4;37:24;
57:22,22;58:25;66:13,
16;67:9;77:16,16;
80:14;81:24,24;82:5,9,
10;95:1,12;98:22;
107:11;121:7;149:14;
159:21;161:19;163:2;
192:7

**offense (1)**
193:23

**offer (2)**
61:24;71:25

**offered (1)**
58:4

**Offering (37)**
7:5,10,14,16,19;
8:20;9:2,10,11,14;
20:11;21:1,4,4,10,16,
22,23;22:6,13,15,21,
25;23:6,8,14,23,25;
24:14;25:5,10;26:16;
27:2;32:5;157:3;
158:18;192:11

**offerings (1)**
27:18

**offers (1)**
186:2

**offhand (1)**
26:8

**office (2)**
86:12;188:20

**officers (2)**
50:20;166:12

**official (6)**
25:16;31:13;33:24;
184:23,24;192:6

**offset (1)**
57:14

**often (1)**
65:11

**OII (1)**
23:21

**old-fashioned (1)**
18:18

**once (11)**
26:23;30:4;38:4;
44:5;52:4;100:15;
109:8;136:21;155:24;
187:20,20

**one (104)**
5:8,10,18;7:10,11;
8:10,10,22;9:9;10:24;
11:2;15:25;17:23;
26:13;27:6;29:6,6,
36:3;39:4;40:6;41:24;
43:17;47:12;48:2;49:1;
51:3;53:3;20;56:1,20;
58:1;61:3,24;64:7;
70:10;73:21,21;74:15;
79:14;80:12;81:7;84:8;
88:1;89:3;92:5;99:19;
100:1,9;101:14;105:2;

110:6,14;111:19;
113:23;116:12;117:11;
118:3,8;120:4,9;
126:19;127:22;128:17;
129:5;131:5;132:5,7;
134:7,23;136:17;
137:15;138:3,11,23;
139:3,20,21;140:6;
141:15;144:22;145:1,
7,7,10,10;146:8;
151:21;154:17;159:1,
3,22;160:12;161:23;
163:4;164:13;168:21;
169:16;175:12;176:11;
178:20;179:13;180:11;
181:22;185:3

**one-liner (1)**
28:25

**ones (1)**
104:17

**one-way (1)**
58:6

**ongoing (1)**
149:10

**only (32)**
8:15;11:13;12:9;
21:25;23:23,24,25;
40:13;48:21;69:21;
74:19,22;88:10,18;
97:22;98:6,25;104:21;
108:4;120:25;134:11,
25;138:3;139:20;
145:10;152:1,20;
153:18;164:6;181:16;
184:3;189:2

**onto (4)**
81:17;140:10;145:7;
169:25

**oOo- (1)**
4:2

**open (8)**
11:10,11;19:1;35:22;
55:15;71:11,16,16

**opening (3)**
41:22;67:20;188:16

**operate (1)**
43:24

**operating (1)**
114:3

**operation (1)**
123:4

**opinion (1)**
175:15

**opportunity (9)**
25:16;29:3;31:19;
35:23;68:19;90:12;
105:14;113:2;159:7

**opposed (3)**
22:5,21;94:22

**opposite (6)**
38:20;44:1;50:13;
52:3;98:7;185:7

**opt (2)**

88:19;140:18

**optics (1)**
139:16

**optimum (1)**
21:22

**opt-in (1)**
88:19

**orange (2)**
149:25;150:3

**order (69)**
4:3;5:12,14;9:24;
10:8,21,25;11:7,9,23,
23;12:4,20,24,14;16;
26:21,23;27:4,4,11,16;
28:13,14,24,25;29:7,
14,15,22,23;30:2,13,
15;31:13,24,25;36:2;
56:8;60:20;63:17;
88:13;94:5,7;98:22;
99:21,24;101:12;
103:16;109:11;112:6,
20;118:8;119:22;
120:16;127:18;170:19;
171:2;172:16;174:4;
176:19,21,24;177:7;
188:11;190:14,16;
192:2,22,23

**ordered (1)**
9:21

**orders (6)**
27:13;31:8,25;61:3;
106:12,19

**oriented (1)**
178:3

**Orwellian (1)**
38:13

**O's (3)**
49:14,17,24

**Osmose (2)**
119:1,4

**others (12)**
5:6;17:24;60:3;74:5;
93:20;102:17;104:7;
113:6;121:14;141:11;
178:22;184:20

**otherwise (12)**
38:3;41:15;50:3,10;
53:24;60:16;108:23;
124:13;126:23;140:13;
141:10;151:12

**ought (1)**
112:2

**out (73)**
13:18;15:22;16:6;
24:7;25:14;28:23;
30:17;32:3;39:22;
41:18;43:13,17;46:1,6;
54:12;57:4;59:19;
61:21;63:4;67:10;68:4;
69:19;71:8;72:5;77:24;
80:14;84:8,8;87:17;
94:7;99:10,11;100:8;
101:20;104:7;106:3;

Min-U-Script®

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 214
of 226

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(19) notion - out

109:6,6;110:13;112:6;
115:20;116:20;118:9,
11,19;122:24;125:18;
127:20;131:13;133:4,
9,14;134:10;135:4,12,
15;136:16,21;137:25;
150:21;152:2,25;
153:16,19;155:21;
157:3;158:3;163:2;
180:12;185:15;189:23;
191:9,22

**outlined (1)**
68:10

**outset (5)**
106:2;107:9;109:20;
177:10;188:16

**outside (3)**
19:6;25:9;62:24

**outstanding (5)**
32:19;35:15;142:17;
179:6,14

**over (16)**
4:24;5:6;12:17;
14:20;16:7;32:17;
84:11;106:1;120:25;
144:18;145:3,23;
147:21;148:3,9;150:5

**overload (1)**
35:10

**overruled (1)**
90:1

**oversecured (2)**
181:17,18

**overseeing (1)**
191:8

**overstating (1)**
42:24

**overwhelming (1)**
71:1

**overwhelmingly (1)**
187:23

**owe (8)**
43:3;44:25;45:19,25;
47:4,4;52:11;132:5

**owed (1)**
46:17

**owing (1)**
46:14

**own (11)**
26:3;31:8;44:12;
45:4;50:11;58:10;
71:17;142:4;164:17;
184:23,23

**owned (2)**
20:17;42:7

**ownership (1)**
155:7

**P**

**page (13)**
5:11;57:3;71:5,12;
82:15;115:1;122:24;

142:2;149:20;153:1;
166:9;175:13;177:14

**pages (6)**
30:14;41:23;115:23;
118:4;119:21;166:10

**paid (7)**
46:9;52:14,17;
120:14;128:18;152:1;
181:24

**panel (6)**
18:3;63:13;68:4;
100:8;103:1;163:19

**paper (1)**
148:10

**papers (3)**
41:25;85:12;179:4

**Parada (18)**
26:11;73:3;93:4;
100:23;102:17;105:1;
109:16,23;113:5;
122:5;123:20,21;
133:3,4,7;137:1;142:8;
163:22

**paragraph (17)**
12:3;29:7;64:10;
66:5;67:21,21,22;
99:23,25;108:19;
115:2;131:19,22,25;
140:8;175:10;178:6

**paragraphs (2)**
71:3;171:9

**parent (1)**
140:20

**pari (1)**
156:14

**parse (1)**
155:20

**part (24)**
7:20;13:23;66:2,15;
76:7,13;78:22;87:24;
88:23;93:18;97:7;
106:10,22;109:12;
119:10;124:24;143:10;
152:19;159:9;161:20,
20,21;162:16;186:6

**partially (2)**
148:12;181:4

**participant (1)**
20:12

**participate (1)**
34:2

**participated (1)**
70:6

**participation (1)**
183:7

**particular (18)**
7:4;8:22;13:14;20:7;
27:13;64:5;65:10,22;
106:6;128:9;130:5;
131:12;150:3;151:4;
165:15;176:20;178:25;
187:2

**particularly (6)**

5:7;41:12;52:24;
145:20;175:24;193:8

**parties (28)**
20:14;22:11;23:12,
21,22;34:15;36:13;
38:8;55:7,12;60:10;
67:16;82:15;88:18;
89:6;92:22;102:16;
106:8;108:23;119:4;
123:1;124:23;156:8;
164:21;171:21;172:19;
173:15;175:2

**parties' (3)**
20:8;60:16;101:8

**parties-in-interest (1)**
14:17

**parts (1)**
94:12

**party (10)**
50:15;67:17;71:21;
88:17,22;167:24;
168:8;173:10;188:23,
23

**Pascuzzi (4)**
72:16;81:6;91:3;
92:15

**pass (15)**
9:3;41:5;110:9,10,
22,22;111:7;161:2;
165:6;170:15;173:4;
174:8;175:5,8,8

**passed (2)**
47:21;123:18

**passes (3)**
39:15;111:1,2

**passion (1)**
182:18

**passu (1)**
156:14

**past (3)**
32:18;34:9;88:3

**path (3)**
184:3;189:2,2

**patient (1)**
93:15

**patiently (1)**
114:10

**Paul (1)**
74:1

**pay (17)**
44:5,16;45:14;46:19,
23;52:12,18,20,20;
58:19,22;65:18;
128:10,17,18,22;
151:17

**payable (1)**
23:25

**Paying (2)**
59:22;156:11

**payment (9)**
45:15;54:16;75:23;
83:4;151:6,11,12,21;
152:9

**payments (3)**
151:19;182:22;
185:24

**Peabody (1)**
161:10

**pending (2)**
89:17;149:13

**penny (1)**
138:8

**people (35)**
7:9;8:11;9:23;16:11;
17:20;18:17,24;30:17;
33:12;53:13,15;58:2;
59:13;94:23;100:18;
102:2;103:5;110:21;
111:6;113:24;120:1;
127:12;156:7,11,13;
158:6;163:2;169:25;
177:6;178:13;181:9;
189:16,24;192:8;
193:13

**per (1)**
48:24

**PERA (35)**
33:4;101:7,7;137:21;
138:6,12,13,24;139:5,
9,19,23;140:1,5,14,17;
141:11,15;142:14;
144:5,14;147:3;148:8,
11,11,19,21;149:6,10,
16;150:18,22;152:15,
17;160:13

**PERA's (17)**
138:1,2,9;139:22;
140:3;141:18;142:4;
143:7;144:2;145:24;
146:2,8;148:7;150:16;
155:2;156:3;161:13

**perceive (2)**
16:10;141:9

**perceived (2)**
18:17;146:5

**percent (2)**
24:4,8;145:14;
148:16;155:9;170:25

**percentage (1)**
20:16

**perfect (1)**
18:23

**perfectly (5)**
61:23;79:14;162:25;
180:2;186:2

**perform (17)**
74:17;85:22;107:21;
109:10;128:25;129:7;
130:11,15,22;131:10;
132:7,9,12,17;135:3;
136:9,10

**performance (10)**
37:21;48:25;128:14,
14;129:6;130:6,8,10,
20,21

**performed (2)**

106:24;136:5

**perhaps (12)**
5:5;70:13;71:12;
75:9;91:4;104:24;
115:21;167:6;174:4;
176:14;189:5;190:13

**period (15)**
12:24;26:18;48:9;
66:25;67:8;139:8;
143:17;145:21;146:11,
13,22,22,23;147:2;
156:4

**periods (1)**
66:10

**permit (3)**
22:12;65:1;174:18

**permitted (2)**
50:2;75:15

**permutation (2)**
54:11;165:10

**person (2)**
18:20;34:22;73:25;
88:14;101:14;102:13,
14;126:6;147:11,15,19,
19

**personal (3)**
16:6;26:3;185:17

**personally (2)**
18:16;63:5

**persons (1)**
102:13

**person's (1)**
96:6

**perspective (2)**
55:21;99:23

**persuaded (2)**
10:21;33:18

**persuasive (1)**
157:24

**petition (22)**
47:16;66:10;75:21;
77:19;78:7,12,13;
80:25;87:6,7;142:16,
17;143:6,7,8,14,22;
148:19;149:3;156:3;
157:10;169:22

**PG&E (47)**
20:17;23:4;24:1;
66:21;76:17,17;80:12;
86:21;90:14;91:8,10;
92:10;93:21;95:6;97:7,
14;105:20,21,23;
106:8;107:1,3,18;
108:1,4,16,21;109:9;
118:10;119:5;138:21;
139:1,7,12;140:4,6,10,
12,13;144:23;145:23;
147:5,20;153:12,15;
155:1;157:9

**PG&E's (7)**
96:10;98:11;106:10;
107:14,17;146:5;
148:16

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 215
of 226

**Pharmaceutical (3)**
129:14;167:12,23
**Pharmaceuticals (6)**
110:13,25;129:16;
166:17;180:8,9
**phase (2)**
34:2;162:3
**phone (4)**
86:3,5,9,11
**phonetic (6)**
64:3;98:17;101:18;
136:18;180:13;193:11
**phrase (2)**
5:18,22
**phrases (2)**
192:21,22
**pick (2)**
36:10;144:4
**picked (2)**
143:3;149:1
**picking (1)**
42:11
**picture (1)**
71:9
**piece (1)**
189:24
**pin (1)**
46:2
**pivot (2)**
148:25;149:5
**pivoted (2)**
143:16;149:7
**place (7)**
27:2;31:24;47:24;
87:3;142:4;154:22;
184:15
**placed (1)**
27:8
**plain (1)**
185:6
**plainly (1)**
188:21
**plaintiffs (5)**
158:1,9,18,22,24
**plaintiff's (1)**
157:6
**plan (193)**
5:2,19;6:4;9:9;
10:22;11:2,12,15;12:1,
2,4,25;13:16;14:13;
20:18,22;21:25;22:5,
17;23:5,21;24:11,22,
23;27:25;28:8,8,12,14;
29:14,15,22;31:23;
32:16;35:19,24;36:6,
21;37:10,12;38:4,13;
39:6,8,9,14,25;40:4;
41:4,20,21;42:1,4;
48:8;49:11,14,20;50:4,
6,11;51:21;56:8;60:6,
20,22,25;64:2,13;66:5,
18,22;67:5,7;74:4;
82:13,21,24;83:23;

84:5;85:17,19;86:19;
88:17,20;89:3,19;
90:19;91:2,25;92:2,20;
93:23;94:4,6,21;95:12;
100:12;103:23,24;
107:15,16;108:7;
109:1,13;112:19;
114:19,25;115:1,4,6,8,
10;116:25;117:19;
118:7;119:6,15,22,25;
120:16;121:2,4;123:7,
9,14,16;124:15;
125:22;126:21;130:22;
135:6;137:9;140:15,
17;141:3,10,13,15,17,
18;144:8;148:21;
149:15,16;150:2,9,12,
22;151:2,4,8;154:13,
22;155:9,14,20,25;
156:10;159:18;162:16;
166:16;170:10;172:20,
20;176:14,18,21,24;
177:8;178:6,10;179:7;
180:23;181:6,11,11,18;
182:21,24;183:20;
184:1,6,12;186:19;
187:1,2,5,15,23;
188:17,21;189:9,10
**planning (1)**
191:23
**plans (2)**
65:7,14
**plan's (4)**
28:25;47:12;99:8;
187:8
**plant (1)**
91:8
**play (2)**
13:18;48:4
**players (3)**
29:4,5,6
**playing (2)**
15:22;120:19
**pleadings (1)**
186:18
**please (12)**
4:8,17;73:4;93:4,10;
105:10;113:12;118:23;
120:7;126:12;163:23;
179:3
**pleasure (2)**
18:7;162:8
**plus (2)**
85:5,5
**pm (2)**
103:12,12
**podium (1)**
70:7
**point (68)**
11:22;13:24;15:1;
26:10;27:19;32:3;36:3;
38:20;39:21;48:16;
49:9,10;51:1;53:5;

54:6;55:7;59:9;64:5;
65:21;66:4;67:3;68:20,
23;69:10;70:12;82:11;
96:24;99:5;102:22;
106:3;108:25;119:21;
129:21;130:3,18;
131:2;133:13,16;
134:21,25;136:6,20;
139:22;141:1,7;
142:15;143:9,23;
147:7,24;151:19;
153:5;157:22;160:13,
13,18;162:10;163:7;
164:21;165:11;173:24;
175:12;176:11;180:11;
185:11;191:15;192:9,
10
**pointed (3)**
25:14;41:18;116:20
**pointing (2)**
54:12;130:13
**points (9)**
28:19,19,19,20;53:3;
65:2;74:9;106:3;
127:22
**Polk (1)**
63:23
**poor (1)**
153:11
**Porter (1)**
68:9
**portion (2)**
16:22;187:16
**portions (1)**
87:17
**position (28)**
10:23;13:7;23:9,10;
37:13;38:5;42:18;
50:13;51:22;52:3;
75:18;77:2,7;80:9;
108:1,2,4;111:16;
123:12;124:18;125:24;
141:12;149:5;154:20,
23,23;161:7,8
**positive (1)**
40:2
**possibility (1)**
77:4
**possible (10)**
26:1,2;36:11;70:9;
79:10,11;126:18;
161:24;186:22;192:1
**possibly (3)**
111:24;118:13;
147:19
**post- (3)**
47:15;78:11,24
**post-assumption (3)**
75:22,22;79:11
**post-effective (1)**
98:18
**post-emergence (1)**
20:12

**post-petition (5)**
42:17;78:14;98:20;
170:5,5
**pot (1)**
148:22
**potential (8)**
53:19;60:7;107:1;
109:6;120:9;128:7;
183:10;187:24
**potentially (3)**
66:7;105:25;107:11
**Power (5)**
73:11,13,15;105:22;
107:4
**powers (5)**
82:7,7,16;83:9,9
**PPA (2)**
105:24;106:1
**PPAs (2)**
107:6;109:10
**PPI (1)**
41:16
**practical (2)**
28:3;165:18
**practically (1)**
67:13
**pre- (6)**
66:9;75:20;77:18;
78:6,12;87:5
**pre-assumption (2)**
67:9;129:25
**precedent (1)**
109:9
**precise (2)**
38:20;166:17
**precisely (6)**
5:24;165:15;167:9;
169:19,21;185:6
**precluded (1)**
15:4
**preclusive (1)**
90:18
**pre-confirmation (1)**
66:11
**predicate (1)**
44:2
**pre-existed (1)**
47:23
**pre-existing (1)**
46:8
**prejudice (4)**
27:22;29:25;176:15,
22
**premise (1)**
145:11
**premised (2)**
42:6;107:17
**premium (1)**
23:1
**preparation (1)**
193:9
**prepare (3)**
70:14;121:12,13

**prepared (6)**
16:22;32:11;69:23;
152:8;188:7;193:4
**pre-petition (15)**
42:5,6,16;43:9;
65:14,25;66:11;67:6,6;
80:4;107:2;122:19,22;
125:3;167:3
**prerequisite (1)**
9:17
**presence (1)**
127:11
**present (3)**
27:11;68:19;128:10
**presentation (3)**
70:2;162:4;193:10
**presentations (1)**
103:19
**presented (7)**
50:12;165:25;
170:20;183:23,25;
184:11;188:24
**presents (1)**
21:14
**preservation (1)**
119:15
**preserve (3)**
141:12;178:14,20
**preserved (9)**
16:1;58:7;60:16;
117:3;119:20;121:16;
171:4;172:23;176:5
**presiding (1)**
4:6
**press (1)**
19:22
**pressing (2)**
54:4;189:19
**pressure (3)**
14:21,23;192:3
**presumably (3)**
30:3;66:2;189:22
**presume (7)**
11:11;25:15;26:14;
33:8;145:17;189:15,17
**presumes (1)**
10:18
**pretty (7)**
5:12;27:17;35:1;
44:15;117:3;161:10;
165:9
**previewed (1)**
68:12
**previously (7)**
25:11;34:24;103:21;
104:3,18;123:2;189:1
**price (17)**
21:2,11,12,14,18;
22:1,7,7,14;23:2,15;
145:13,18,23;147:4;
155:13;156:2
**primarily (1)**
184:6

Case: 19-30088   Doc# 7869   Filed: 06/10/20   Entered: 06/10/20 07:33:26   Page 216
of 226

**primary (1)**
38:1
**principal (1)**
71:21
**principally (1)**
37:3
**principle (10)**
37:18;38:14;39:23;
53:1,9;55:3,5,22;81:5;
185:7
**principles (5)**
37:9,24;50:18;51:13;
97:25
**Prior (12)**
20:25;25:21;29:23;
65:25;66:1;68:11;79:6;
98:20;106:2;149:9;
168:1;189:5
**priority (1)**
187:8
**prism (1)**
41:10
**privilege (1)**
6:21;15:5,8
**privileges (1)**
82:16
**probably (13)**
46:2;51:19;59:14;
68:21;70:23;79:12;
80:22;99:11;102:21;
113:21;153:13;158:15;
168:16
**problem (19)**
10:5;19:12;29:9;
60:6;75:16,17;77:1;
88:12;89:1;109:18;
112:10;125:18;134:15;
165:24;168:24;169:14,
15;191:7,9
**problematic (1)**
74:4
**problems (5)**
74:6;77:20;85:18;
94:13;192:21
**procedurally (1)**
112:22
**procedure (2)**
99:8,12
**Procedures (9)**
7:6,10,15,17,17;
89:18;138:4;175:19;
184:10
**proceed (4)**
28:4;31:12;105:1;
178:16
**proceeding (4)**
97:15;107:13;
135:23;166:21
**proceedings (3)**
107:10;108:15;
194:11
**proceeds (3)**
139:12;151:3;152:19

**process (24)**
8:20;9:2;10:6;14:1;
16:18;36:14,15;37:12;
66:3;67:11;84:14;
107:2;111:21,24;
112:7,23;117:3;
119:11;125:4;126:20,
25;158:2;165:8;189:23
**procurement (1)**
99:25
**professionals (1)**
11:25
**progress (1)**
101:12
**projects (1)**
105:20
**promise (4)**
6:18,20;8:6;12:14
**promised (1)**
26:13
**prompting (1)**
91:1
**promptly (1)**
189:10
**proof (9)**
42:6;54:6;124:9;
138:2,10,19,22;139:7;
153:16
**proofs (5)**
97:10,11;124:11,14,
19
**proper (3)**
18:5;99:8;107:12
**properly (1)**
85:16
**Properties (5)**
37:19;38:10;106:20;
109:8;112:12
**Property (4)**
45:13;129:23;
151:20,24
**proponents (4)**
91:2;137:10,14;
189:9
**propose (3)**
32:15;36:4;115:16
**proposed (29)**
11:7;12:3;19:18;
20:14,25;21:20;27:11,
12;29:16;30:15;36:5;
56:6;60:5;61:2;64:17;
67:5;99:21,23;101:12;
118:16;124:20;125:14;
127:5;135:15;151:8;
162:14;170:19;188:9,
11
**proposes (1)**
5:11
**proposition (2)**
58:6,11
**prosecution (1)**
88:14
**prospectively (1)**

130:23
**protect (2)**
90:17;125:25
**protected (1)**
81:12
**protection (2)**
64:13;189:4
**protections (1)**
75:1
**protective (2)**
96:14;97:11
**protects (1)**
152:7
**prove (2)**
147:19;150:19
**proven (2)**
143:5;155:16
**proverbial (1)**
160:6
**proves (2)**
151:9,10
**prove-up (1)**
130:9
**provide (8)**
22:4;23:21;89:23;
114:2;120:16;168:5;
177:22;181:23
**provided (2)**
21:2,18
**providers (2)**
106:7;114:2
**provides (2)**
123:9;176:25
**providing (1)**
23:7
**provision (25)**
10:9;60:8,10,12;
61:4;67:24;74:15;
77:25;88:7,7,11,21;
107:10;112:19,20;
119:21;125:22;130:5;
132:25;136:7;166:9;
173:3;181:11,18,22
**provisions (37)**
15:25;17:8;27:13;
30:15;32:20;38:23;
40:16;42:17;60:4;
64:13;70:21;74:5;
75:19;84:2,4;87:15;
90:19;92:14;106:4,11,
21;107:20;108:12,20;
109:1;114:21,23,23;
115:2;121:3,3,4;131:7,
9,12;176:14;177:1
**PSPS (4)**
186:10,15,20;187:2
**psychology (1)**
28:11
**public (19)**
8:20;9:1;20:11;
21:22;22:13,21;23:23,
24;26:16,22;28:10;
30:24;89:22;96:9;

114:3;147:12;162:12,
13;185:1
**published (1)**
26:21
**PUC (6)**
107:14,19,23;
108:15,22;112:15
**pull (4)**
57:3;125:9;142:6;
164:10
**pulled (1)**
81:7
**punted (1)**
98:14
**purchase (4)**
7:11;93:20;105:22;
107:4
**purchased (1)**
183:16
**purchases (3)**
139:7,14;155:23
**purports (1)**
37:10
**purpose (4)**
22:17;109:4;168:2,4
**purposes (5)**
9:20;12:21;17:22;
102:25;148:18
**pursuant (4)**
20:18;22:21;42:3;
180:23
**pursue (1)**
7:19
**pursued (2)**
21:23;172:1
**put (46)**
5:11;6:9,24;13:9;
14:21,23;23:9;40:21;
44:19;68:9;70:23;
71:10,19;79:1;80:10,
19;87:22;88:1;97:10;
114:8,14;115:17,22;
121:20;128:25;132:19,
21,25;134:19;135:1,4;
136:3;141:11;142:19,
23;148:5;149:23;
159:8,21;164:5;
167:15,16,16;172:13;
175:9;182:8
**puts (2)**
131:6;155:25
**putting (2)**
99:13;120:12

**Q**

**quarrel (1)**
49:1
**quarters (1)**
24:22
**quick (1)**
33:12
**quickly (5)**

7:14;49:12;115:25;
186:9;188:15
**quite (9)**
7:14;21:21;52:2;
61:17;80:9;81:14;
85:14;101:10;110:9
**quo (1)**
27:25
**quote (6)**
37:20;38:9;50:1;
140:8;165:10;168:20
**quote/unquote (3)**
139:16;144:25;155:6
**quoted (1)**
125:12
**quotes (1)**
144:6

**R**

**Radovsky (1)**
73:19
**raise (39)**
7:20;9:16,20,22,23,
25;12:21;13:1;14:11;
17:6;18:10,22;19:20;
22:20;23:1,10;30:17,
25;31:2,9;33:18;36:3;
61:14,18;63:9;66:3;
67:12;75:7;99:8;
100:11;101:19;104:21;
116:15;117:5;132:10;
165:7;173:24;174:21;
175:16
**raised (43)**
7:21;13:8;14:16;
18:19;24:23;32:21;
37:6;55:12;58:12;60:1;
64:4,14;66:14;72:15,
19;80:18,19;81:17;
89:1,14;92:17,19,22;
101:11;103:21;104:13;
109:17,19;131:4;
160:14;162:15;165:5,
17,17;170:18;171:1;
172:7,19;176:2;179:9,
13,16;188:6
**raises (1)**
9:7
**raising (8)**
9:14;14:15;21:22;
23:13;94:17;102:9;
122:15;186:4
**RAM (1)**
84:15
**rate (3)**
27:19,20;181:15
**rather (6)**
13:20;40:21;80:25;
181:12;182:21;191:17
**Rauth (1)**
74:2
**re (1)**

Min-U-Script®

Case: 19-30088   Doc# 7869   Filed: 06/10/20   Entered: 06/10/20 07:33:26   Page 217
of 226

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(22) primary - re

98:7
**reach (4)**
32:23;114:12;153:4;
162:2
**read (22)**
5:6;35:1,9,21;38:10;
39:20;42:15;51:7;55:4;
56:14;61:10;62:13;
65:4;66:4,5;67:9;71:1,
2;114:19;118:11;
144:6;173:9
**readily (1)**
182:4
**reading (4)**
10:15;82:20,21,22
**ready (1)**
136:23
**reaffirming (1)**
10:17
**real (5)**
89:18;95:14;153:17,
19;156:15
**reality (1)**
145:16
**realize (1)**
174:9
**realized (1)**
149:2
**really (39)**
6:9;7:14;13:22;
14:11,20;15:20;29:25;
33:17;35:25;37:13,23;
49:17;54:19;55:18;
56:25;58:10,14;62:23;
69:20;75:9;93:24;
96:17,20;127:12;
131:5;137:23;149:8;
154:19;165:11;169:17;
170:18;172:13;175:12,
12;180:11,16,24;
185:19;188:8
**reargue (2)**
16:4,5
**reason (22)**
5:4;16:5;26:8;50:9;
72:14,22;95:24;
131:11;150:3;159:20;
165:1;167:6;170:10;
177:25;180:16;181:2;
182:20,21;186:2,19;
188:6;189:25
**reasonable (2)**
174:20,24
**reasoned (1)**
149:4
**reasoning (1)**
47:9
**reasons (6)**
22:22,25;103:6;
158:14;161:3;175:16
**Rebecca (1)**
69:6
**reboot (1)**

124:4
**rebooted (1)**
80:24
**rebut (1)**
144:14
**recall (3)**
159:25;165:2;181:4
**received (5)**
100:22,22,23;
150:25;152:19
**recent (4)**
5:8;8:22;21:7;184:8
**recently (2)**
70:8;104:8
**Recess (1)**
103:12
**recognition (1)**
179:23
**recognize (5)**
34:23;93:16;100:11;
163:7;181:14
**recognized (4)**
161:5;167:2,5;
175:23
**recognizes (1)**
151:5
**recognizing (1)**
96:14
**recommended (2)**
15:25;60:9
**record (25)**
4:17;14:6,8;15:2;
33:21;35:21;37:6;
63:15;89:20;93:11;
94:2;104:20;105:6;
113:12;114:9,14;
118:24;126:13;127:25;
137:8;147:12;176:7;
178:21;183:2;186:11
**recording (1)**
103:13
**records (1)**
89:22
**recouping (1)**
100:4
**recoupment (1)**
171:3
**recover (1)**
59:4
**recoveries (2)**
53:7;54:15
**recovers (1)**
173:7
**recovery (6)**
53:23,25;58:21;
90:15;96:15;146:4
**Recruitment (1)**
57:24
**red (3)**
142:20,23;151:25
**redline (1)**
115:12
**reduction (2)**

150:25;151:13
**Redwood (1)**
73:13
**re-familiarizing (1)**
35:12
**refer (2)**
73:15
**reference (4)**
5:23,24;14:1;29:23
**referenced (1)**
67:20
**referred (2)**
23:15;129:17
**referring (2)**
31:5;135:13
**refers (1)**
140:12
**refinance (1)**
158:5
**reflect (1)**
81:16
**reflective (1)**
149:4
**reflects (4)**
32:18;119:22;
140:17;155:18
**reformed (1)**
136:8
**refuse (1)**
71:24
**regard (5)**
64:21;91:6,12,17;
94:19
**regarding (6)**
56:21;89:14,17;
126:15;150:25;184:9
**regardless (2)**
66:13;139:3
**regards (5)**
93:17;95:3,5;97:6,
12;99:20,25
**registration (20)**
6:15;7:15,22;8:4;
9:11,18;12:6,22;15:3;
17:8;27:1,10;32:6;
160:20;179:18;188:3;
190:1;192:14,15,15
**regret (1)**
182:18
**regular (1)**
70:17
**regulated (2)**
90:14;107:24
**regulatory (2)**
107:13;108:24
**rehash (1)**
65:1
**reinstated (1)**
155:7
**reinstatement (3)**
170:2,7;175:21
**reject (1)**
180:6

**rejected (6)**
39:9,15;170:4,8;
186:5;187:7
**rejecting (1)**
108:12
**rejection (5)**
77:13;97:22,23;
107:9;126:22
**relate (3)**
68:12;126:23;144:25
**related (11)**
8:17;30:17;33:8;
36:22;51:16;86:13;
90:14;106:4;117:2;
139:13;186:20
**relates (1)**
95:6
**relating (3)**
23:20;30:16;130:1
**relation (1)**
154:24
**relationship (4)**
87:18;96:23;118:11;
174:12
**relationships (3)**
90:18;92:10;184:25
**relative (1)**
156:14
**relatively (3)**
56:7;163:18;188:14
**release (11)**
19:22;42:4;74:4,13;
81:8;84:4;88:19,20,24;
90:20;180:23
**released (1)**
88:15
**releases (3)**
36:23;88:17;89:5
**releasing (1)**
88:18
**relevant (5)**
19:3;89:16,24;
144:12;150:16
**reliability (1)**
114:1
**reliance (1)**
65:13
**relief (2)**
47:17;108:25
**rely (4)**
35:11;98:21;99:1;
127:12
**relying (3)**
48:3;53:14;65:6
**remain (4)**
35:22;44:6;50:1;
163:25
**remainder (1)**
92:19
**remaining (9)**
19:16;24:21;33:4;
35:15;101:10;179:6,8,
20;187:6

**remarkable (1)**
188:18
**remarks (11)**
14:9;29:11;61:10;
73:7;100:5;163:17,21;
186:10;187:10,11;
188:17
**remember (5)**
30:10;34:8;129:19;
151:14;157:22
**remind (1)**
35:17;63:14;105:4
**removal (1)**
23:15
**remove (2)**
93:4;163:25
**removed (1)**
64:16
**render (1)**
37:10
**renewable (5)**
105:21;107:16,18;
108:6,8
**rent (10)**
44:12;45:1,2,14;
47:4;128:17,19;132:5,
7,8
**reopen (1)**
193:21
**reopened (1)**
166:21
**reorganized (4)**
20:16;23:3;24:1;
50:6
**repeat (3)**
48:21;92:12;119:6
**repeatedly (1)**
175:23
**rephrase (2)**
77:21;190:21
**reply (1)**
186:19
**report (2)**
104:24,25
**reported (1)**
23:11
**represent (1)**
47:19
**representative (1)**
138:7
**representatives (1)**
25:20;184:24
**represented (1)**
107:18
**representing (3)**
19:2;57:19;126:15
**represents (1)**
34:4;188:17
**request (7)**
8:4;48:7;69:8;83:22;
89:21;102:17;104:3
**requests (1)**
102:12

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 218
of 226

**require (1)**
184:13
**required (7)**
21:8,17;187:2
**requirement (4)**
107:15;108:6;128:1;
145:19
**requirements (7)**
11:9;14:14;112:15;
170:13,14;184:12;
188:22
**requires (7)**
37:21;38:21;42:10;
48:25;107:24;130:5;
157:13
**requiring (1)**
85:21
**requisite (1)**
23:12
**re-raise (1)**
136:19
**res (1)**
98:21
**reservation (2)**
54:10;64:1
**reserve (2)**
156:23,23
**reserved (5)**
58:7;60:16;124:23;
126:25;135:22
**resolution (18)**
9:2,3,17;10:4,7,19,
21;11:1;13:6,7;124:21;
158:8;162:2;184:10;
185:24;189:14;191:11,
14
**resolutions (1)**
32:18
**resolve (9)**
29:8;36:7;37:7;54:7;
56:9;64:20;68:13;
117:8;122:23
**resolved (24)**
17:6;27:1;32:17;
35:18;36:25;57:21;
61:13,19;71:13,17;
91:5;92:19;94:1;95:14;
111:24;114:9;127:14;
188:7;190:2;191:5,8;
192:18,18;193:5
**resolves (2)**
114:17;162:15
**resolving (2)**
91:11;92:17
**resounding (1)**
59:7
**resources (1)**
114:4
**respect (72)**
6:15;7:20;8:4;12:20;
13:20;14:15;16:16;
17:7;19:18,20,22;27:3,
8,10,18;30:10;32:19;

36:22;37:25;42:2;
49:24;52:5;53:12,22;
54:10;55:6,20;56:23;
57:6,7;58:12;60:24;
61:3,5;62:25;64:9;
65:3;84:1;101:9,11;
106:4;110:23;113:22;
126:20;127:3;128:1;
157:2;160:14;163:15;
164:14;170:21;171:19;
175:13,24;177:2,20;
178:25;179:6,9,10,14,
18;180:17;181:3,21;
182:17;183:15;184:8;
186:10;188:3,9;191:25
**respected (1)**
55:5
**respectfully (1)**
11:23
**respective (1)**
193:13
**respects (2)**
35:15;37:23
**respond (7)**
14:25;16:11;33:3;
36:10;110:3,5;151:1
**response (10)**
47:22;64:15;68:10;
79:9;101:7;103:23;
122:20;132:8;137:20;
153:7
**responsibility (2)**
29:8;78:7
**rest (4)**
16:23;18:6;143:1;
162:22
**restate (4)**
10:14;60:14;67:19;
134:19
**restated (1)**
38:6
**restrict (1)**
180:2
**rests (1)**
98:2
**result (10)**
21:7;40:23;41:2;
42:4;49:25;87:12;
135:21;155:19;160:4;
192:11
**resulting (2)**
144:24;145:8
**results (2)**
179:23,24
**resume (1)**
101:24
**resuming (1)**
103:14
**retained (2)**
56:21;171:4
**return (1)**
20:11
**returned (1)**

28:1
**revealed (1)**
148:12
**revealing (1)**
142:5
**reveals (1)**
149:5
**reverse (1)**
144:5
**review (8)**
35:23,25;85:11;
87:15;94:9;102:12;
122:25;134:20
**reviewed (2)**
94:12;122:21
**revised (1)**
35:19
**revisions (2)**
30:7;94:5
**revisit (1)**
33:18
**revolving (2)**
64:1,8
**richly (1)**
140:14
**rid (2)**
153:8;162:23
**ride (5)**
49:17;51:13;95:9;
106:23;165:7
**rides (4)**
39:5;40:8;48:24;
165:6
**ride-through (2)**
41:11;49:19
**riding (3)**
38:23;39:24;55:22
**right (125)**
6:7;7:11;10:2;15:7,
9;19:3,25;20:21;24:5;
26:18;27:18;30:5;
31:24;33:9;34:19;41:6;
43:4,7,13,14,19,23;
46:5,10,17;47:5;48:15;
49:3,7;51:6;52:21;
53:1;56:24;57:4,11,15;
58:23;59:16;66:13,16;
67:9,25;68:2;72:4;
73:23;75:23;76:25;
78:2,15,17;80:21;83:3,
17,20;85:4;90:9;93:12;
97:2;98:22;100:8,10;
101:21;103:11,14;
106:15;112:8;117:17;
118:18;120:1,13,20,25;
122:5;124:8;126:3,17;
129:9,11;130:2;
132:10,13;136:17,24;
137:7;138:9;139:24;
140:20;141:5,21,24,24;
142:10;146:10,17,21;
147:15;149:22;153:6;
158:1,13,19;159:17;

160:19;162:18;163:4;
164:8;169:5,8;170:8,
11,22;171:20;173:6,6;
174:7,16;176:3,5;
177:8;180:4;189:20;
190:8,10,11;193:3
**rights (131)**
6:15;7:5,10,14,15,16,
19,22;8:4;9:3,5,11,11,
18;11:2,14,25;12:22;
15:3,12;16:1,3;17:8;
21:4,15,23;23:19;25:5,
10;27:1,10;28:7;29:4;
32:5,6;37:16;38:2,8,
16;39:23;40:25;41:15,
18;42:10,14;45:13,13;
49:17,18,19,21,22;
50:15;51:17,18,22,23;
52:4;53:5,21;54:10,22,
25;55:6,23;56:21,23;
57:5,7;58:4,6,15;60:14,
16;64:2;67:8;82:16;
85:21;97:11,16;98:3;
100:4;111:7,8;116:14;
119:14,16,19;120:1,4,
17,21;121:15;123:3,
10;124:11,23;126:25;
135:22;160:14,15,20,
21,22;161:3,9;167:14;
170:7,21;171:2,18,19,
23;172:3,4,21,22;
175:19,22;176:15,22;
178:12,14,15;179:18;
188:3;189:14;190:1,
10;192:11,14
**ringing (1)**
86:4,8,11
**rise (10)**
66:1;76:15,22;93:17;
105:17;117:19;121:5;
130:4;168:18;174:5
**risk (2)**
47:24;153:14
**risky (1)**
101:23
**River (1)**
91:1
**road (6)**
99:3;156:16,21;
157:16;159:1;160:6
**robe (1)**
93:5
**Robert (1)**
4:19
**robust (1)**
27:17
**Roebbelen (5)**
179:15;181:3,4,10;
182:16
**Roebbelen's (1)**
181:21
**roll (1)**
148:4

**room (5)**
19:6;33:12;63:4;
118:19;126:8
**roughly (1)**
148:13
**round (2)**
193:1,1
**RSA (2)**
11:25;187:14
**RSAs (1)**
184:4
**rub (1)**
76:24
**rude (2)**
18:17;193:20
**rule (3)**
15:20;79:15;81:4
**ruling (7)**
6:6;13:8,13;71:14;
87:1;178:2;186:23
**rulings (4)**
79:23;165:2;177:15;
178:1
**running (1)**
31:9

### S

**safer (1)**
97:3
**safety (1)**
114:1
**sale (1)**
139:12
**sales (1)**
155:23
**salutary (1)**
113:23
**Sam (2)**
104:12;126:14
**same (47)**
14:20;26:14;39:16;
41:2;53:7,8;54:1,16;
55:12;57:22;67:19;
69:9,10;73:1,22;84:4,4,
25;87:12;98:10;
100:23;110:15;111:14;
113:8;121:18;122:16;
124:24;134:9,9,15;
137:11;139:10;140:7;
142:2;151:23;153:1;
155:18;157:19;159:1;
161:16;170:6;172:4;
184:14;185:18;186:17;
188:2;193:25
**SAN (12)**
4:1;73:20;74:2;
90:24,24;92:9;101:25;
103:7,15;146:4;166:7,
8
**Sanders (2)**
105:13;119:1
**Santa (4)**

Min-U-Script®

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 219
of 226

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(24) require - Santa

73:14;91:7,13,15
**sappy (1)**
　87:20
**sat (1)**
　81:10
**satisfaction (2)**
　42:4;74:13
**satisfied (5)**
　11:9;45:16;104:19;
　141:10;184:13
**satisfies (1)**
　188:22
**satisfy (1)**
　45:16
**satisfying (1)**
　108:5
**sauce (2)**
　15:14,14
**saw (1)**
　155:13
**saying (25)**
　13:5;14:20,21;18:24;
　34:10;44:9;66:6;67:4;
　98:23;107:21;108:10;
　110:15,16;111:10,11,
　22;124:14;141:10;
　157:11;158:5;170:1;
　171:8;176:17;186:11,
　12
**Scarpulla (2)**
　183:22,25
**scattered (1)**
　114:24
**scenario (4)**
　95:10;97:6,14;98:10
**scenes (1)**
　113:20
**schedule (12)**
　5:3;26:3;64:7,11,16,
　23;67:23,23;91:19;
　139:6,11;163:8
**scheduled (1)**
　101:14
**schedules (1)**
　39:8
**Schiff (19)**
　33:8;34:21;63:8,10,
　12,14,16,18,19,22,22;
　65:20;67:22;68:1,3,5;
　77:1;109:5;165:3
**scholars (2)**
　47:2;118:3
**school (1)**
　118:2
**scissors (2)**
　80:14;131:13
**scoop (1)**
　127:13
**scope (6)**
　62:24;88:16,17;
　94:24;180:2,19
**screen (6)**
　82:3;105:5;142:6,12;

149:23;178:21
**scroll (1)**
　178:8
**season (1)**
　189:5
**seat (1)**
　164:7
**second (19)**
　9:1;37:18;49:2;54:7;
　59:2;73:21,21;84:8;
　92:5;100:3,9;117:11;
　134:7;136:17;137:15;
　138:15;139:22;167:16;
　180:11
**secondly (1)**
　170:3
**Section (42)**
　42:1;48:18;49:10,21;
　50:8;60:4;61:3;65:3,
　13;74:18,23;88:6,12,
　13;89:3,4;99:24;121:3;
　159:19;161:15;166:19;
　167:9,14;170:1,14;
　172:24;173:3;175:20,
　22;178:2;179:10,22,23,
　24;180:2,6,17,18;
　181:5,19;184:13;187:9
**secure (1)**
　158:17
**secured (3)**
　181:4,7,7
**securities (8)**
　17:22;28:20;145:17,
　25;150:11;158:18;
　162:12,13
**security (1)**
　160:16
**seeing (1)**
　114:20
**seek (2)**
　66:7;108:23
**seeking (4)**
　22:24;66:13;108:21,
　25
**seeks (1)**
　150:12
**seem (6)**
　31:9;44:10;121:21;
　124:7;154:7;158:19
**seems (11)**
　57:21;59:4;69:13;
　79:23;105:24;112:1;
　117:16;125:20;137:22;
　158:17;175:16
**segment (1)**
　59:9
**segues (1)**
　8:8
**seize (1)**
　53:2
**selling (1)**
　139:14
**send (2)**

102:4,17
**sense (9)**
　10:5;33:6;36:25;
　79:16,16;154:18;
　162:3;171:9;184:18
**sensitivity (1)**
　191:20
**sent (1)**
　100:25
**sentence (6)**
　100:4;117:24;118:3,
　6,6;173:10
**sentences (3)**
　114:17;117:25;
　121:21
**separate (13)**
　7:16;53:23;54:1,5;
　70:14;91:6;144:17,18;
　145:8,8;185:8,21;
　190:14
**separately (2)**
　185:5;186:3
**series (2)**
　144:14;145:11
**served (1)**
　22:16
**Service (4)**
　113:15;114:1,5;
　122:12
**services (2)**
　114:2;119:2
**session (1)**
　4:5
**sessions (1)**
　28:23
**set (13)**
　20:23;34:18;39:22,
　24;41:25;55:20;57:22,
　22;70:14;149:21;
　167:11;171:15;187:14
**setoff (2)**
　100:4;171:3
**setting (1)**
　69:20
**settle (1)**
　185:23
**settled (3)**
　9:5;34:18;61:21
**settlement (18)**
　32:23;54:9;61:24;
　62:2,11,15;114:8,13,
　15;127:1;135:15;
　184:21;185:1,4,23;
　186:1,6;187:15
**settlements (1)**
　177:1
**settles (1)**
　35:8
**seven (1)**
　30:14
**seventeen (2)**
　139:11,15
**several (11)**

29:18;34:7;60:1,9;
　64:23;92:13;119:4;
　127:13;143:17;166:16;
　187:5
**shaky (1)**
　132:5
**shall (9)**
　42:4,8;50:1,3,4,6,8;
　52:5,6
**shape (1)**
　158:23
**share (14)**
　21:11,12;22:1,2;
　34:13;60:21;73:19;
　121:22;125:21;142:9,
　17;147:20;153:23;
　156:2
**shared (1)**
　152:20
**shareholder (4)**
　7:11;22:8;137:13;
　148:4
**shareholders (17)**
　23:3,8;24:13;144:13;
　153:24;154:24;155:1,
　4,6,15,19;156:1,5,9;
　157:12;160:15;161:9
**shares (14)**
　23:22,25;24:7,9,10;
　142:9,10;148:2,4;
　155:10,21,21;161:7;
　187:18
**sharing (4)**
　70:7;144:13;148:20;
　164:7
**sharpen (1)**
　70:12
**shed (1)**
　107:1
**sheet (1)**
　130:22
**shelf (1)**
　81:10
**short (3)**
　37:21;56:7;192:1
**shorter (1)**
　85:25
**shorthand (1)**
　39:21
**short-handing (1)**
　38:17
**shortly (1)**
　25:1
**shove (1)**
　148:21
**show (1)**
　89:18
**showed (1)**
　146:19
**showing (2)**
　144:14;146:16
**shown (1)**
　145:12

**shows (2)**
　139:7;150:5
**shut (2)**
　55:15;163:2
**sic (3)**
　77:1;110:19;181:21
**side (10)**
　11:11,12;78:21;
　112:1;127:19;152:9,
　19;157:22;162:1,1
**sidelined (1)**
　37:12
**sides (1)**
　148:8
**sign (8)**
　5:13;7:11;10:8,21,
　25;11:7,8;192:6
**signal (1)**
　86:12
**signals (1)**
　10:3
**signed (5)**
　119:14;138:6,15;
　185:1;187:13
**significant (4)**
　21:15;23:1;48:6;
　114:3
**sign-off (1)**
　31:12
**silence (1)**
　59:7
**Silicon (1)**
　73:15
**silicone (1)**
　185:15
**silly (1)**
　155:5
**similar (7)**
　29:20;34:18;89:1;
　123:6;184:13,15;
　185:13
**Similarly (4)**
　60:18;181:9;183:14;
　186:7
**simple (5)**
　80:6,24;114:14,16;
　125:3
**simply (25)**
　17:9;18:23;43:23;
　44:4;50:22;54:16;
　60:12;89:23;91:16;
　103:4;120:3;126:23;
　127:15;133:13;135:18,
　20;139:17,19;149:1;
　161:14;163:8;183:3;
　184:17;193:20;194:1
**single (8)**
　79:10,11;122:24;
　140:2;147:4;154:7;
　165:10;177:8
**situated (1)**
　181:9
**situation (13)**

Case: 19-30088　Doc# 7869　Filed: 06/10/20　Entered: 06/10/20 07:33:26　Page 220
of 226

38:11;41:17;51:12,
18;67:15;94:25;
111:20;159:23;166:15,
17;180:3;181:12;194:1
**six (3)**
30:14;138:10;147:21
**sixteen (1)**
105:20
**sixty-four (1)**
5:9
**size (1)**
148:19
**Skikos (2)**
187:12,14
**Skikos' (1)**
187:11
**slice (2)**
80:14;148:14
**sliced (1)**
131:13
**slide (20)**
5:19;12:10;142:14;
143:1,4;144:15;146:8,
8,9,16;148:11;167:15,
17;170:17;172:9,13;
173:5;175:13;176:6;
178:17
**slides (7)**
5:10;10:24;142:4;
144:15;145:11;148:7;
167:20
**slightly (1)**
44:19
**small (3)**
96:4;102:1;106:13
**smaller (2)**
28:19;151:5
**smart (1)**
115:3
**smiling (1)**
191:1
**so- (1)**
39:4
**so-called (1)**
13:25
**sold (2)**
155:10,21
**solely (2)**
140:3;152:19
**solicitation (1)**
183:12
**solution (7)**
36:14;140:18;
177:11;184:2;188:9,
14;189:13
**solve (7)**
19:12;27:10;29:9;
60:6;77:20;109:18;
192:9
**solved (1)**
83:16
**solvent (5)**
50:19,21;54:14;

**solves (4)**
10:5;36:12;191:7,8
**somebody (9)**
5:1;31:17,18;40:6;
72:20;135:10;147:8;
157:23;191:15
**Somebody's (3)**
72:22;86:3;192:12
**somehow (9)**
8:19;41:14;81:7;
88:24;95:11;128:7;
148:3;155:4;176:7
**some-odd (1)**
139:4
**someone (11)**
18:21;66:19;104:14;
125:9;127:13;148:1;
152:1;153:7;173:20,
22;193:24
**sometime (4)**
35:1;102:11;144:3;
192:2
**sometimes (1)**
145:4
**somewhat (3)**
32:7;62:22;128:5
**somewhere (2)**
5:21;103:3
**Sonoma (2)**
73:12;95:7
**soon (3)**
77:3;86:13;189:15
**sooner (1)**
161:23
**sorry (27)**
8:13;9:11;11:21;
15:17,17;30:11,11;
34:8;45:20,20;57:22;
81:24;82:2;84:23;
109:19;120:8;128:2;
129:15;131:20;132:22;
133:11;135:19,24;
136:14;146:25;192:15;
193:24
**sort (10)**
34:16;35:10;40:7;
60:13;62:22;66:15;
133:12;134:2;142:16;
192:16
**sound (1)**
125:16
**sounding (1)**
49:15
**sounds (1)**
134:12
**source (4)**
8:3;151:11,21;152:2
**sources (1)**
151:19
**South (2)**
74:2;90:24
**spades (1)**

151:17
**speak (11)**
6:14;7:23;18:20;
32:25;63:24;72:18,18;
102:10;113:25;121:12;
126:7
**speaker (2)**
19:7;86:16
**speakers (3)**
93:5;103:16;114:7
**speaking (1)**
93:23
**special (1)**
166:24
**specialty (1)**
166:4
**specific (8)**
6:19;38:19;74:12;
91:6,12;95:4;119:24;
136:7
**specifically (12)**
5:8;33:22;39:14;
64:12;94:7;99:20,24;
106:12;132:25;138:4;
181:11,12
**specified' (1)**
140:13
**specify (1)**
141:18
**specter (1)**
64:5
**speculate (1)**
16:20
**speculation (1)**
87:6
**speed (1)**
84:14
**spend (5)**
4:25;37:2,5;115:7;
149:15
**spent (3)**
15:5;58:15;183:5
**spoke (4)**
57:1;70:18;127:17;
187:12
**spoken (4)**
18:22;72:12;119:4;
188:21
**spreadsheet (1)**
123:6
**squeeze (1)**
115:5
**staff (3)**
71:10;73:22;103:9
**stage (1)**
55:20
**stakeholders (1)**
20:7
**stand (2)**
60:8;70:21
**standard (3)**
40:20;135:6;165:16
**standpoint (1)**

75:25
**stands (1)**
185:6
**start (18)**
5:4;8:20;9:4,18;
11:10;13:1,25;16:17;
27:5;31:8;37:8;63:12,
16;87:20;118:6;
137:25;142:4;144:24
**started (2)**
51:10;105:24
**starting (2)**
138:1;144:15
**state (37)**
4:17;11:24;33:20;
34:12;41:13;44:19;
47:2;54:2;60:3;63:15;
69:5;73:8,9,9;75:12;
76:3;78:10;89:2;90:23;
93:10;98:14,15;105:5,
10;113:12;118:23;
123:4;126:12;128:1,7;
131:8;132:11;136:7;
137:8;166:1;175:25;
176:4;186:20
**stated (12)**
13:24;37:19;44:20;
57:1;64:25;110:8;
127:14;136:3;174:10;
177:10;185:20;186:19
**statement (19)**
8:18,24;16:18;18:16;
35:6;36:6;37:6;39:22;
41:7,23;48:25;50:23;
70:13;71:20;74:11;
94:4;108:11,15;138:16
**statements (4)**
37:8,24;145:5,6
**states (5)**
32:20;53:6;108:7;
125:20,20
**stating (2)**
15:6;37:18
**status (2)**
27:25;104:25
**statute (11)**
39:20;40:1,2;52:6,
22;54:20;55:2,4;81:4,
4;177:20
**statutorily (1)**
58:22
**statutory (2)**
52:1;54:25
**stay (6)**
18:7;109:18;113:6,9;
162:22;169:22
**step (4)**
47:12;54:17,18;
70:10
**Stephen (3)**
4:18,22;163:12
**Steve (1)**
164:11

**stick (3)**
18:2;19:1;100:12
**stiffed (1)**
46:21
**still (22)**
11:6;23:16,17;25:9,
13;26:15;28:5,12;
32:19;38:1;40:24;
64:23;78:13;87:3;
93:12;94:13;123:14;
128:13;130:14;141:15;
157:18;192:20
**stipulation (1)**
127:14
**stock (27)**
21:2,14;22:7;23:4,4;
24:18;139:7,12,14,15;
145:13,18,23;147:4,9;
153:12;154:22;155:8,
13,17;156:1;159:20;
183:14;187:16,22,23,
25
**stockholder (1)**
20:9
**stockholders (1)**
158:9
**stop (2)**
14:19;86:11
**story (3)**
26:7;152:11;153:19
**Stradling (1)**
74:2
**straight (1)**
127:13
**straightened (1)**
136:16
**straightforward (1)**
117:4
**strategy (1)**
19:21
**strawman (1)**
149:21
**stress (2)**
55:8;162:10
**stretch (1)**
162:16
**strictly (1)**
144:24
**strike (3)**
40:24;77:24;99:23
**striking (1)**
60:12
**strip (3)**
57:5;177:8;178:15
**struck (1)**
42:15
**structure (1)**
21:1
**struggling (3)**
154:4;157:15;158:16
**stuck (1)**
132:12
**study (1)**

Case: 19-30088   Doc# 7869   Filed: 06/10/20   Entered: 06/10/20 07:33:26   Page 221
of 226

36:8
**stuff (5)**
26:18;94:6;113:20;
115:3;159:2
**subject (25)**
7:24;15:7;18:15;
20:23;24:19,25;32:1,
10;33:2;50:9;52:7;
55:19;62:25;91:2;
116:13;123:4,15;
124:8;125:4;126:24;
149:14;162:7,7;171:4;
179:19
**subjected (1)**
90:18
**subjects (1)**
18:5
**submit (12)**
56:5;57:9;58:8;
69:24;89:11;92:21;
104:23;143:3;144:20;
149:6;150:13;161:3
**submitted (2)**
86:23;191:4
**subordinated (1)**
161:6
**subordinating (2)**
156:10;159:19
**subrogation (5)**
57:14;184:21,25
**subscription (5)**
160:14,15,22;161:3,
9
**subscriptions (1)**
7:12
**subsequent (3)**
98:15;126:24;135:23
**substance (1)**
36:18
**substantial (3)**
9:9;182:22;184:15
**substantially (1)**
185:13
**substantive (1)**
60:21
**substantively (2)**
35:25;139:25
**subtleties (1)**
35:12
**successful (7)**
6:20;17:24;21:15;
91:1;157:3;188:14;
189:14
**succinct (1)**
94:15
**succinctly (1)**
134:18
**sued (1)**
67:16
**suffer (2)**
158:9,10
**suffered (7)**
148:2;155:1,12,15,

18;156:1,5
**Suffice (2)**
182:25;188:11
**sufficient (1)**
96:9
**suggest (7)**
7:10;124:14;132:25;
144:21;175:18;177:6;
186:11
**suggested (5)**
5:3;19:13;75:8;
149:16;190:13
**suggesting (3)**
29:13;77:22;176:1
**suggestion (6)**
13:17;32:24;121:18;
125:17;155:3;184:1
**suggests (2)**
123:11;124:17
**summarized (1)**
25:17
**summarizing (1)**
123:7
**Superior (6)**
156:15;158:13,15;
159:20;160:1;166:8
**supersedes (1)**
138:16
**supplement (13)**
41:21;51:21;67:25;
68:1;85:19;115:1;
123:9;131:4,5,22;
166:10;178:6,11
**supplemental (3)**
91:6,17;188:1
**supplements (1)**
6:4
**supplies (1)**
105:20
**support (7)**
23:7;48:19;60:2;
98:24;140:11;188:19,
24
**supported (1)**
185:4
**supportive (2)**
60:11,11
**supports (1)**
99:4
**suppose (1)**
76:14
**supposed (8)**
14:5;17:25;89:5;
145:18,21,24;166:12;
191:16
**supposedly (1)**
140:11
**Sure (29)**
4:18;5:20;6:6,7;
33:23;39:11;48:17;
56:2,14;59:22;67:13;
68:19;120:19;121:15;
127:23;133:10;135:12;

139:3;154:22;163:20;
172:22;173:17;176:5,
6,7;178:19;186:12,16;
190:23
**surprised (1)**
180:5
**surreply (4)**
35:13;41:22;98:4,10
**sur-reply (1)**
65:5
**survive (2)**
79:13;166:10
**survivor (1)**
18:18
**survivors (2)**
9:4;16:7
**suspect (1)**
97:13
**sustained (3)**
186:15,22,24
**swept (2)**
88:20;125:18
**switch (3)**
32:9;45:1;46:24
**sympathetic (2)**
156:7,7
**sync (1)**
51:19
**system (1)**
114:2

**T**

**table (2)**
46:11;78:21
**tackle (1)**
137:20
**tailored (2)**
181:11,12
**talk (10)**
15:6;33:9;74:7,11;
84:2;131:4;142:3;
144:1;145:2;180:16
**talked (7)**
28:17;54:9;56:17;
62:15;89:20;119:19;
157:2
**talking (21)**
9:13,14;17:4,5,7,9,9,
11;28:18;47:8;53:3,4;
58:4;72:22;81:19;82:7,
8;111:21;150:20;
172:12;175:10
**tally (1)**
152:3
**tap (1)**
152:6
**target (1)**
29:2
**targets (1)**
120:24
**Tax (3)**
179:16;187:4,8

TCC (16)
4:20;10:5;11:24;
14:21;25:20;28:17;
32:6;53:23;57:19;
68:14;69:14;70:11,18;
116:13;119:13;120:4
**TCC's (1)**
71:22
**tear (1)**
77:24
**technical (5)**
84:10,15;87:21;
136:15;160:13
**teed (1)**
37:23
**telling (1)**
81:3
**tells (1)**
8:22
**ten (4)**
16:7;68:21;84:20;
157:21
**tenant (1)**
44:11;132:5
**tendering (1)**
45:14
**Tens (2)**
183:20,24
**term (9)**
5:21,22;12:10;39:15;
43:16;80:21;85:15;
119:10;144:5
**terminate (1)**
162:3
**terminated (5)**
122:19,22;123:2;
124:6;125:3
**terms (16)**
7:2;22:1;36:11;
55:13,22,22;60:10,24;
62:11;65:7;66:25;71:9;
88:11;123:14;124:15,
22
**test (7)**
132:3;156:9,10;
158:10,11;169:7,10
**testimony (2)**
17:4;184:19
**thanks (2)**
113:2,10
**then-outstanding (1)**
129:12
**theoretically's (1)**
66:15
**theory (2)**
146:2;149:6
**thereby (1)**
23:2
**therefore (7)**
13:8;77:5;80:4;87:9;
129:25;158:9,18
**there'll (1)**
119:13

**thing's (1)**
79:14
**thinking (1)**
177:12
**third (1)**
167:16
**thirteen (2)**
144:18;148:13
**thirty (2)**
103:20;181:24
**thorough (2)**
63:3;193:9
**thoroughly (1)**
194:3
**thoroughness (1)**
193:14
**though (4)**
15:24;64:22;80:24;
127:22
**thought (36)**
8:2;10:3;17:21;
19:22;25:6;26:3;57:16,
17,20;58:1,13;59:8;
61:13,16;64:24;65:22;
72:8;83:16;84:3;94:1;
104:24;109:14;111:2;
114:8;122:23;126:25;
135:10;146:24;147:1;
149:18;150:13;153:3;
159:21;160:2,25;190:3
**thoughts (1)**
51:20
**thousand (1)**
94:20
**thousands (3)**
47:20;183:20,24
**three (10)**
5:20;70:7;84:16;
93:4;94:13;118:8;
121:21;165:25;166:7;
184:2
**three-and-a-quarter (1)**
24:17
**three-plus (1)**
31:1
**three-tiered (1)**
21:1
**threshold (2)**
21:11,18
**thresholds (5)**
21:2,3,6,8;23:15
**threw (1)**
8:18
**throughout (2)**
84:5;114:24
**throw (2)**
18:4;158:5,18;163:1
**throwing (2)**
158:22,24
**thrown (2)**
53:17;56:22
**thrust (1)**
181:10

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 222
of 226

**Thursday (3)**
94:1,15;114:9
**thus (1)**
105:18
**ticket (1)**
161:22
**tie (3)**
4:16;37:4;164:5
**tied (2)**
94:20;131:11
**tighten (1)**
4:16
**till (1)**
86:16
**tilting (1)**
41:13
**timely (2)**
12:25;13:17
**times (4)**
79:2;147:21;148:19;
175:7
**timing (3)**
12:23;17:5,9
**tired (1)**
84:9
**today (49)**
5:4;12:13;13:18;
20:5,5;25:25;26:5;
29:9;32:12;35:10;36:4;
37:23;56:6;61:18;70:9;
72:9;87:8;92:12;93:25;
95:18;99:6,7;100:12;
102:23;104:22;111:6;
117:12;119:3,19;
122:1,17;126:1;131:6,
18;135:4;136:7;
137:25;157:2;163:7,9;
164:13,25;165:5;
168:15;169:17;172:7;
175:17;188:10;191:13
**today's (1)**
148:18
**together (7)**
5:21;37:4;58:5;
71:10,20;121:5,20
**toilet (1)**
158:6
**told (10)**
9:19;25:22;27:18;
35:24;83:15;109:22;
114:11,19;181:21;
190:3
**tolerate (1)**
87:16
**tomorrow (4)**
20:5;25:25;115:18;
116:4
**took (4)**
39:20;51:21;108:5;
118:2
**top (3)**
51:11;55:1;173:6
**tort (2)**

187:14;188:2
**Tosdal (4)**
184:6;185:3,18;
186:4
**total (1)**
71:1
**totally (5)**
21:17;110:22;125:8;
172:25;188:12
**touch (4)**
26:11;34:1;69:18;
70:17
**touches (1)**
51:17
**tougher (1)**
87:25
**toward (1)**
185:14
**track (5)**
35:3;101:24;115:25;
127:15;192:5
**trade (2)**
50:18,21
**trading (2)**
21:12;183:16
**traditional (5)**
22:9;23:6;43:5,15;
50:18
**trail (1)**
34:9
**trample (1)**
29:4
**transactions (1)**
95:6
**transcript (1)**
62:13
**transfer (1)**
120:25
**transferred (1)**
119:14
**transition (1)**
22:8
**translated (1)**
87:4
**Transmission (1)**
73:12
**transparency (1)**
117:7
**trap (1)**
152:25
**treat (7)**
97:12;140:15,19;
141:2;156:13,13;
157:11
**treated (10)**
50:4,18;76:3;77:3,
11,12;91:16;127:3;
150:22;186:25
**treating (3)**
75:16,17;157:12
**treatment (8)**
91:18;141:18;
150:23;161:15,16;

181:6,13;187:8
**treats (2)**
37:10;155:14
**Tredinnick (22)**
72:17,24;73:4,5,6,17,
18,18;81:6;84:21,23,
25;85:1,3;86:15;91:4;
92:5,7,8;93:1,2;166:7
**tree (4)**
53:13;113:15;114:4;
122:11
**Trees (1)**
122:12
**tremendous (1)**
155:2
**tried (4)**
17:10;98:11;134:7;
144:14
**triggered (1)**
78:1
**triggering (3)**
28:7;76:8,12
**triggers (1)**
43:19
**trimmers (1)**
53:13
**tripartite (1)**
106:9
**trouble (1)**
133:17
**Troutman (2)**
105:13;119:1
**Troy (3)**
91:4;92:15;94:14
**true (6)**
42:9;48:7;84:13;
87:12;140:1;146:13
**trust (34)**
16:16;20:9;23:5;
24:5,11;28:19;53:16;
56:22;57:11,20;58:13,
20;59:4,18,18;62:10;
63:1;68:12,14;70:20,
22;118:13;119:13,15;
120:2;155:10;170:22,
24;171:22;172:1,4,21;
184:9;187:17
**trustee (5)**
68:14;69:14;70:18;
96:4;101:17
**trustees (1)**
64:14
**trustee's (3)**
70:11;71:20;101:17
**trusts (1)**
20:17
**try (17)**
14:22;18:12,12;29:8;
35:6,9;36:10;85:5;
116:3;133:11;134:23;
137:24;158:3;163:17;
176:22,23;191:2
**trying (32)**

8:2,13;15:23;18:4;
28:23;36:12,13;59:3;
68:13;69:20;71:1,10;
73:22;87:17;97:20;
98:11;99:1;112:18;
134:19;135:18,20;
142:15;149:24;154:3,
18,19;162:23;170:12,
13;180:1;185:18;
190:24
**tryouts (1)**
118:13
**Tsekerides (12)**
103:1;163:19,22;
164:4,5,6,10;167:15;
177:13;178:8,22;194:9
**Tubbs (1)**
159:1
**Tuesday (9)**
25:25;26:9;30:4;
47:13;160:21;189:20;
190:7,17;191:20
**tuned (1)**
109:18
**turn (10)**
8:11;18:25;55:24;
86:7;88:6;133:21;
134:15;137:15;177:13;
192:25
**turned (1)**
120:25
**turning (4)**
36:17;176:11,11;
179:20
**twenty (4)**
113:22,24;155:9;
159:6
**twenty-two (5)**
139:4,8,9,13,13
**twice (1)**
187:20
**twisting (1)**
45:18
**two (49)**
5:4,7;8:21;9:7;13:2,
6;15:23,25;17:24;
31:13;37:8,24;38:7;
40:14;53:5,19;67:20;
68:15;70:5,8;71:3,6,
14;84:9,24;85:1;96:25;
106:3;111:16;115:23;
116:18;117:25;118:8;
126:20;127:22;132:8;
136:6;139:25;147:9;
150:5;151:15,16,19;
161:11;165:25;171:8;
191:9,10;192:6
**two- (1)**
117:23
**two-sentence (1)**
115:16
**type (6)**
34:16;36:19;40:20;

60:8;181:9;186:17

**U**

**UCC (12)**
32:22;33:5;98:4,9;
100:18;101:8,11;
118:16;121:19;170:6;
175:2,14
**UCC's (2)**
121:13;127:5
**UCF (1)**
64:3
**ultimately (3)**
67:16;97:24;154:14
**Um (1)**
59:20
**umber (1)**
172:9
**Um-hum (1)**
43:1
**unable (1)**
136:9
**unaffected (1)**
39:25
**unaltered (2)**
37:15;39:25
**unambiguous (1)**
115:7
**unclear (4)**
17:16;28:5;119:15;
127:24
**unclick (1)**
123:25
**uncontroverted (1)**
183:5
**under (94)**
7:17;15:19;20:20;
21:9,24;22:1;23:5,19;
24:11;25:4;26:6;37:14;
41:15;42:21;46:14;
49:23,23;50:5;51:24;
52:4,16;53:8,15;54:2,
22;55:7;58:23;63:25;
66:25;74:14,17,20,25;
75:21;76:3,3;77:9,12;
79:12,12;80:1;83:11;
90:20;95:10,11;98:3;
111:8;119:6,13;
120:13;123:14;124:15;
128:1,12;130:8;
132:15;136:4,10;
140:19;148:21;150:18,
22;153:25;155:9;
156:10,10;157:7;
158:11,18,22,24;
161:15;166:19,25;
167:8,9,14;170:1,9;
172:9,24;174:6;
175:19,22;176:4;

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 223
of 226

177:9;179:24;181:19;
183:18;184:12;187:1,
1,19;188:22
**underbrush (1)**
138:1
**underlying (4)**
25:18;89:17;95:1,20
**underneath (1)**
107:22
**understated (1)**
132:11
**understood (3)**
31:1;116:1;190:15
**undertake (1)**
70:19
**underwater (1)**
134:12
**underwriters (3)**
8:19;15:3;16:17
**undoing (1)**
32:1
**undone (1)**
93:5
**unduly (1)**
176:21
**unequivocal (1)**
38:11
**unequivocally (1)**
139:5
**unfair (6)**
50:17;86:20;150:2;
160:13;161:4,14
**unfairly (1)**
62:22
**Unfortunately (4)**
20:3;32:22;81:18;
134:22
**unhappy (1)**
183:20
**unimpaired (13)**
37:10,13,14;39:23,
25;41:10;51:10,12;
55:2;114:20;119:6;
120:14;127:4
**unique (2)**
164:17;184:25
**universal (1)**
188:18
**unknown (6)**
82:17;107:2,11;
111:18,23;158:6
**Unless (12)**
13:12;16:24;18:2;
32:9;53:23;74:21;85:7;
118:15;125:6;140:13;
157:18;163:25
**Unlike (2)**
107:8;149:16
**unlikely (1)**
186:21
**unliquidated (3)**
138:11;139:6;185:14
**unlucky (1)**

132:2
**unmute (5)**
69:5;133:22,22;
137:5,7
**unmuting (1)**
191:1
**unnecessarily (1)**
60:14
**unnecessary (1)**
121:23
**unperformed (1)**
131:9
**unrelated (1)**
7:25
**unresolved (2)**
33:5;38:1
**unsecured (8)**
33:25;34:16;36:20;
51:18;59:2;126:22;
127:4;185:14
**unsuccessful (1)**
16:20
**unusual (1)**
59:5
**unwound (1)**
145:3
**up (59)**
5:11;7:11;17:22;
18:9;19:17,23;20:21;
25:7,21;30:22;33:13,
13,14;35:6;36:13;46:6;
51:13;53:20;56:19;
57:25;68:7,9;73:25;
81:11,11;84:5;85:10,
24;88:25;89:3,13;95:7;
97:19;100:14;120:23;
125:18;126:19;137:3,
16;139:14;142:6,11;
143:3,13;146:10;
147:13;149:21,23;
163:6;164:10;166:15;
167:15,16,25;171:15;
172:13;182:5;190:17;
191:11
**upholding (2)**
185:9,20
**upon (14)**
5:6;6:6;20:21;21:24;
25:3;30:25;72:18,21;
76:1,7;122:25;156:14;
185:11;190:10
**upper (1)**
148:14
**urge (4)**
62:12;69:17;119:9;
189:10
**urgent (1)**
28:23
**urging (2)**
141:7,8
**use (11)**
43:15;49:14;54:20;
83:1;115:4;119:10;

127:10;135:20;144:5,
21;158:17
**used (5)**
94:21,22;114:15;
145:4;161:3
**using (1)**
142:16
**Utilities (1)**
119:2
**utility (18)**
22:9;23:6;64:1,8;
78:11;113:14;122:11;
138:23;139:23,24,25;
140:3,4,6,9,12,16;
141:2

**V**

**vacuum (2)**
79:4;178:2
**valid (2)**
158:11;177:18
**Valley (2)**
73:13,15
**valuation (1)**
23:7
**value (7)**
23:3;155:2,18;184:4;
187:24,25;189:3
**various (6)**
28:13;32:1;115:2;
146:2;185:24;191:6
**vendor (2)**
58:23;114:18
**vendors (9)**
34:7;53:13;59:2,22;
113:21;116:10,14;
118:10;127:6
**vendors' (1)**
119:16
**version (3)**
28:23;62:3;103:24
**versus (4)**
21:12;52:2;111:20;
168:18
**victim (15)**
20:9;17;23:5;24:11;
53:16;95:24;101:17;
170:22,23;179:17;
184:2,9,22,22;187:17
**victims (17)**
53:20,22;57:19;
58:20;59:3,3,4;90:16;
91:25;95:13;96:11;
156:8;179:17;182:23;
185:8;187:21;188:20
**victims' (4)**
24:5;56:22;58:20;
63:1
**victim's (2)**
58:13;62:9
**video (2)**
134:8,15

**view (8)**
10:11;12:22;20:8,8;
74:7;75:4;102:22;
127:25
**views (2)**
16:9;33:1
**violates (1)**
36:21
**violation (1)**
129:24
**virtual (2)**
103:7;188:18
**virtually (5)**
34:16;36:19;121:19;
183:3;185:12
**virtue (2)**
41:16;51:20
**visit (1)**
65:21
**voice (2)**
133:9,14
**voices (2)**
55:13,17
**voila (1)**
139:9
**volume (1)**
137:16
**volunteered (1)**
73:24
**vote (2)**
37:11;40:4
**voted (1)**
187:22
**votes (1)**
183:12

**W**

**wade (1)**
35:6
**wait (18)**
8:9,11;45:24;61:21;
72:13,20;86:3;92:5;
115:19;116:7;123:18;
127:5;128:24;137:16;
146:10;164:19;168:11;
191:23
**waited (2)**
114:10;158:1
**waiting (3)**
86:10;157:16;158:15
**waiver (1)**
75:15
**Wallace (4)**
183:20,22;193:18,25
**wants (16)**
8:19;32:25;33:8;
34:11;77:24;85:7;
103:25;104:4,7;
106:21;116:21;118:14;
125:17;148:21;162:21;
181:10
**Wardwell (1)**

63:23
**warrant (2)**
180:24;186:1
**warts (1)**
41:5
**Washington (1)**
161:13
**Water (1)**
91:1
**way (44)**
13:5;17:18;27:14;
28:4;29:24;31:12;32:3;
39:7;42:15;44:19;51:9;
52:22;71:8;75:24;76:3,
10;77:10,11;80:10;
82:4;88:22;99:22;
115:21;127:2,11;
128:24;141:10,12,15;
148:6;152:1;155:17;
158:23;169:14;174:13;
175:9;177:4;178:16,
20;180:20,21;183:4;
189:23;191:9
**ways (1)**
57:25
**wedge (2)**
149:25;150:3
**Wednesday (5)**
139:19;144:7,10;
150:15;161:4
**week (17)**
7:24;12:24;30:22;
32:18;35:21;37:7;
62:11;64:4;88:2;92:15,
21;101:1;124:20;
187:20;188:17;191:20;
192:2
**weekend (5)**
4:24;5:6;12:18;16:7;
84:11
**weeks (5)**
13:2,6;70:7;147:9;
159:13
**weigh (2)**
12:12;136:22
**weighing (1)**
6:25
**Weil (2)**
4:22;163:13
**welcome (3)**
105:11;136:22;158:7
**well- (1)**
92:15
**weren't (3)**
141:7;149:2;156:10
**Wersberg (1)**
103:17
**Wes (1)**
103:17
**West (2)**
113:15;114:5
**Western (1)**
122:11

Case: 19-30088    Doc# 7869    Filed: 06/10/20    Entered: 06/10/20 07:33:26    Page 224
of 226

**whack (1)**
84:4
**whatever's (1)**
28:20
**what's (24)**
15:14;18:3,7;19:13;
31:7;47:18;56:1,4;
71:16;72:18;78:22;
94:23;101:2;104:6;
124:17;130:12,24;
131:3,15;162:7;
168:17;190:17,24;
194:7
**whatsoever (5)**
17:4;20:16;60:22;
67:7;120:17
**whereas (1)**
52:1
**wherein (1)**
12:4
**Whereupon (1)**
194:11
**whole (6)**
17:18;32:3;98:16;
101:23;140:23;172:14
**wholesale (1)**
176:23
**who's (3)**
32:14;67:16,17
**whose (5)**
34:23;50:15;53:15;
151:17;157:4
**wildfire (8)**
90:16;91:25;146:6;
182:22;183:6,7,8;
189:5
**willing (2)**
27:9;130:11
**win (5)**
46:12;47:7;80:22,23;
154:12
**windfall (1)**
155:5
**windmills (1)**
41:14
**window (4)**
11:10;67:12;87:6;
157:3
**wings (1)**
163:23
**Winsberg (14)**
100:19;103:17;
104:16;105:3;118:20,
21,22,25;119:1;120:8;
121:1,25;122:2,4
**Winthrop (11)**
57:18;63:10,11,14,
17;69:4,6,6,12;72:4,7
**wiped (1)**
152:2
**wish (3)**
6:19;18:22;194:6
**wishes (3)**

102:20;129:5;183:23
**withdrawn (1)**
91:16
**withdraws (1)**
145:5
**within (10)**
13:2;21:17;34:17;
43:15;88:20;98:2;
159:9;161:16;174:20;
181:24
**without (10)**
9:4;26:21;40:11;
60:20;67:13;107:12;
114:24;116:19;190:1;
192:7
**wolves (2)**
53:17;56:22
**wonder (1)**
42:23
**word (7)**
12:9;53:2;58:18;
100:3;144:21;154:5;
187:21
**words (16)**
5:19,20;6:24;9:4;
36:8;80:20;83:2;95:22;
96:22;143:14;149:12;
153:9;168:20;174:4;
176:17;187:11
**work (19)**
15:24;27:15;42:10;
60:10;62:21,22;76:10;
96:8;98:25;99:10,11;
112:6;121:14;124:1;
150:13;176:20;177:3,
9;194:2
**worked (5)**
93:18;124:2;127:20;
135:12,15
**working (6)**
68:13;71:10;91:10;
134:6;183:9;193:13
**works (8)**
14:10;15:23;52:22;
108:19;116:24;125:18;
162:14;166:23
**world (3)**
18:21,23;75:11
**worried (1)**
9:22
**worry (5)**
10:20;46:19;78:11;
87:8;152:1
**worse (1)**
154:23
**worst (1)**
54:23
**worth (3)**
37:18;86:25;153:12
**worthwhile (1)**
157:13
**wound (1)**
139:14

**wow (1)**
149:7
**wrap (3)**
84:24;85:10;89:13
**Wright (2)**
113:15;114:4
**writing (4)**
15:19;69:24;70:3;
80:11
**written (3)**
49:23;69:21;71:11
**wrong (8)**
59:15;110:8;154:5;
158:1;174:19;176:5;
185:6;190:10
**wrongdoers (2)**
151:15,16

**Y**

**year (1)**
189:7
**years (4)**
81:10;166:1,7,16
**yesterday (9)**
5:2;25:20;28:15;
35:24;94:10,12;
103:24;114:11;115:10
**yield (1)**
96:15
**Yocca (1)**
74:2

**Z**

**zero (1)**
128:12
**Ziman (5)**
15:6;17:7,15,19;
25:10
**Ziman's (6)**
5:7;7:3;8:21;14:2;
15:1;17:3
**Zoom (2)**
8:11;18:21

**1**

**1 (4)**
101:25;102:11;
103:7,15
**1,000 (14)**
43:3,12;44:12,16;
45:2,4,15,19,21,25;
46:6,13,21;153:11
**1,000-dollar (2)**
43:10;44:14
**1.015 (1)**
82:25
**1.13 (1)**
83:21
**1.21 (3)**
82:24;83:7;85:11

**1:00 (1)**
103:12
**1:30 (1)**
103:3
**10 (3)**
85:5;101:13;142:14
**10.13 (2)**
61:3;62:4
**10.3 (4)**
37:1;74:5;84:3;
114:25
**10.6 (1)**
114:25
**10.7 (1)**
114:25
**10.9 (2)**
88:9,19
**10.9e (1)**
89:1
**10.9f (7)**
74:7;88:6,11,21;
179:12;180:17,18
**100 (2)**
27:19;145:14
**101691 (2)**
138:19,24
**1054 (5)**
53:15;108:6;188:20,
22;189:4
**1054's (1)**
107:15
**10A-II (4)**
137:21;138:5;
139:20;154:21
**10f (1)**
121:4
**10g (1)**
121:4
**11 (3)**
20:12;24:2;154:25
**1122a (1)**
184:13
**1123a4 (1)**
161:15
**1124 (2)**
51:10;55:2
**11241 (1)**
37:15
**1129a (3)**
14:14;183:18;187:9
**1129a12 (1)**
36:22
**1141 (2)**
47:1;123:16
**119,000 (1)**
138:14
**119,134 (1)**
138:6
**12 (9)**
142:19,19;144:4,10,
11;145:13;148:2,12,14
**12:00 (1)**
103:12

**12th (4)**
143:2;144:1;153:6;
154:18
**13 (11)**
64:10;66:5;67:21,21,
22;115:2;131:25;
132:1;144:15;175:10;
178:6
**1358 (1)**
37:20
**13's (1)**
132:1
**14 (1)**
5:11
**15 (2)**
145:14;146:23
**18 (1)**
21:11
**19 (1)**
21:11

**2**

**2 (3)**
85:5,5;182:14
**2,000 (2)**
41:22;166:10
**2,000- (1)**
114:25
**20 (1)**
85:5
**20.9 (1)**
24:4
**2003 (1)**
106:19
**2006 (1)**
106:19
**2017 (10)**
66:20;142:19;144:4,
10,11;145:14;148:2,
12;150:6;155:2
**2018 (1)**
145:14
**2020 (2)**
4:1;67:2
**22 (1)**
122:24
**22nd (1)**
7:4
**23 (1)**
146:9
**2360 (1)**
64:3
**28.2 (1)**
150:1
**28.8 (2)**
148:13,21

**3**

**3 (3)**
36:22;117:2;124:24
**30th (3)**

191:22,23;193:7
**355b1c (1)**
   128:13
**365 (26)**
   40:15;43:16;44:3;
   47:1;48:18;74:15,23,
   25;97:18,21;98:3;99:2;
   119:9;166:19;167:10,
   14;169:15,17;170:1,
   14;172:13,14,24;
   173:3;179:23,24
**365a1 (1)**
   128:2
**365b1A (1)**
   130:7
**37 (1)**
   99:23
**388 (1)**
   98:9
**399 (2)**
   145:23;146:3

**4**

**4 (3)**
   117:4;175:13;176:6
**4.16 (1)**
   181:6
**4.23 (1)**
   114:25
**420 (1)**
   98:9
**421 (1)**
   98:9
**43 (3)**
   99:25;108:19;140:8

**5**

**5 (1)**
   178:17
**50 (1)**
   23:22
**502 (13)**
   37:25;41:15;53:5,24;
   54:4,10,19;97:19,22;
   98:24;111:8;164:22;
   166:25
**502c (2)**
   157:7;158:25
**502e (10)**
   53:1;65:3,7,13;
   75:21;79:22;81:24;
   97:21;99:4;178:2
**502e1B (2)**
   50:10;51:24
**502e2 (4)**
   51:24;52:4,18;54:22
**502g (1)**
   97:22
**502h (2)**
   120:13,14
**506 (1)**

181:20
**510b (4)**
   154:20;156:11;
   158:12;159:19
**562e (1)**
   98:5
**580 (1)**
   98:8

**6**

**6.1 (1)**
   74:5
**63 (2)**
   57:3;119:21
**665 (1)**
   105:20
**68 (2)**
   57:3;122:24
**69 (1)**
   119:21
**69105 (1)**
   138:23

**7**

**7 (3)**
   95:18;96:4,14
**7.3 (1)**
   148:22
**71345 (1)**
   138:22
**7214 (1)**
   93:23
**728- (1)**
   182:12
**7282 (2)**
   182:11,13
**7330 (1)**
   113:16
**7333 (1)**
   113:16
**7334 (1)**
   126:16
**7336 (1)**
   113:17
**7349 (1)**
   126:16
**7489 (1)**
   93:24
**7512-1 (1)**
   7:5
**7528 (1)**
   123:8
**7711-1 (2)**
   120:5,8

**8**

**8 (1)**
   4:1
**8.2 (3)**
   180:2,6,15

**8.2e (15)**
   60:4;72:10;74:6,11;
   75:1;81:25;85:19;
   92:14,23;94:13,16;
   101:12;114:25;179:10,
   22
**8.4 (3)**
   42:1;49:10,21
**82 (1)**
   140:9
**877 (1)**
   175:20
**8th (3)**
   146:23;147:1,2

**9**

**9:30 (1)**
   4:1
**979 (1)**
   37:20

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

Case: 19-30088   Doc# 7869   Filed: 06/10/20   Entered: 06/10/20 07:33:26   Page 226
of 226