1        UNITED STATES BANKRUPTCY COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3                  -oOo-

4   In Re:                    ) Case No. 19-30088-DM
                              ) Chapter 11
5   PG&E CORPORATION AND PACIFIC   )
    GAS AND ELECTRIC COMPANY,  ) San Francisco, California
6                              ) Thursday, June 11, 2020
                      Debtors. ) 1:00 PM
7   _____ )
                                  HEARING REGARDING JOINT
8                                 STATEMENT OF THE TCC,
                                  TRUSTEE, AND AD HOC GROUP OF
9                                 OBJECTORS IN CONNECTION WITH
                                  MEMORANDUM ON OBJECTION OF
10                                ADVENTIST HEALTH, AT&T,
                                  PARADISE ENTITIES, AND
11                                COMCAST TO TRUST DOCUMENTS.
                                  FILED BY OFFICIAL COMMITTEE
12                                OF TORT CLAIMANTS

13            TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE DENNIS MONTALI
14            UNITED STATES BANKRUPTCY JUDGE

15
    APPEARANCES (Via Zoom):
16  For the Debtors:          STEPHEN KAROTKIN, ESQ.
                              Weil, Gotshal & Manges LLP
17                            767 Fifth Avenue
                              New York, NY 10153
18                            (212)310-8000

19                            PAUL H. ZUMBRO, ESQ.
                              Cravath, Swaine & Moore LLP
20                            Worldwide Plaza
                              825 Eighth Avenue
21                            New York, NY 10019
                              (212)474-1000
22
    For AT&T Corp.:           BENJAMIN MINTZ, ESQ.
23                            Arnold & Porter Kaye Scholer LLP
                              250 West 55th Street
24                            New York, NY 10019
                              (212)836-8000
25

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

| | | |
|---|---|---|
| 1 | For Fire Victim Trustee: | DAVID J. MOLTON, ESQ. |
| | | Brown Rudnick LLP |
| 2 | | 7 Times Square |
| | | New York, NY 10036 |
| 3 | | (212)209-4800 |
| | | |
| 4 | For Official Committee of | JOHN H. MACCONAGHY, ESQ. |
| | Tort Claimants: | MacConaghy & Barnier, PLC |
| 5 | | 645 First Street West |
| | | Suite D |
| 6 | | Sonoma, CA 95476 |
| | | (707)935-3205 |
| 7 | | |
| | For Adventist Health | REBECCA J. WINTHROP, ESQ. |
| 8 | System/West and Feather | Norton Rose Fulbright US LLP |
| | River Hospital: | 555 South Flower Street |
| 9 | | Forty-First Floor |
| | | Los Angeles, CA 90071 |
| 10 | | (213)892-9200 |
| | | |
| 11 | For Official Committee of | THOMAS R. KRELLER, ESQ. |
| | Unsecured Creditors: | Milbank LLP |
| 12 | | 2029 Century Park East |
| | | 33rd Floor |
| 13 | | Los Angeles, CA 90067 |
| | | (424)386-4000 |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| | Court Recorder: | LORENA PARADA/ANKEY THOMAS |
| 18 | | United States Bankruptcy |
| | | Court |
| 19 | | 450 Golden Gate Avenue |
| | | San Francisco, CA 94102 |
| 20 | | |
| 21 | Transcriber: | COLIN RICHILANO |
| | | eScribers, LLC |
| 22 | | 7227 North 16th Street |
| | | Suite #207 |
| 23 | | Phoenix, AZ 85020 |
| | | (973)406-2250 |
| 24 | | |
| 25 | Proceedings recorded by electronic sound recording; transcript provided by transcription service. | |

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1

2                                    -oOo-

3        (Call to order of the Court.)

4            THE COURT REPORTER:  This is the bankruptcy court for

5    the Northern District of California.  Court is now in session,

6    the Honorable Dennis Montali presiding.  Matter of PG&E

7    Corporation.

8            THE COURT:  Good afternoon, everyone, this is Judge

9    Montali.  I'm only anticipating a very brief hearing on a very

10   limited issue, and I have a long call list, but I don't see

11   some names on there that I expected to hear, so let me ask if

12   the following counsel are present.

13           Mr. MacConaghy, are you on the call?

14           MR. MACCONAGHY:  I am, Your Honor.

15           THE COURT:  Okay.

16           MR. MACCONAGHY:  John MacConaghy, special counsel --

17   go ahead, sorry.

18           THE COURT:  Thank you.  All right.  Oh, I'm sorry.

19   Finish your title.

20           MR. MACCONAGHY:  John MacConaghy, special counsel for

21   the official committee of tort claimants.

22           THE COURT:  Ms. Winthrop, are you on the call?

23           MS. WINTHROP:  Good afternoon, Your Honor, Rebecca

24   Winthrop of Norton Rose Fulbright, on behalf of the Adventist

25   claimants.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1          THE COURT:  Mr. Mintz?

2          MR. MINTZ:  Good afternoon, Your Honor, Benjamin

3   Mintz, Arnold & Porter, counsel for AT&T.  I'll be speaking on

4   behalf of the ad hoc group today.

5          THE COURT:  Mr. Goldblatt?  Oh, well actually, I don't

6   need to hear from other people in your group if Mr. Mintz is

7   going to be the spokesperson.

8          How about Mr. Molton?  Are you on the call, Mr.

9   Molton?

10          MR. MOLTON:  Good afternoon, Your Honor, I hope you

11   can hear me.  I'm here.  And Mr. MacConaghy and I are going to

12   be dividing responsibilities today.

13          THE COURT:  So I don't know if you're going to care,

14   but we have MacConaghy, Mintz, Molton, and Montali, all "M"s.

15   So I have a question.  Well, okay.

16          Well, all right, so let's start with Mr. Mintz on the

17   position of your side for what we'll call issue one.  What I

18   found confusing about the issue was not what you said, but what

19   the other side said.  Because you said for the objectors you

20   want -- you want them to have the presumption and the

21   concession that PG&E made about causing the fire.  And the

22   other side not only takes issue with that, but argues that it

23   has to keep its defenses.  But I didn't understand that you are

24   suggesting that the other side loses any defenses.  And am I

25   correct?  You do not contend that the trustee can't raise any

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1  defenses to the objectors; am I correct?

2          MR. MINTZ:  You're absolutely correct, Your Honor.

3  You've jumped to, I think, the third point I was going to make,

4  which is that's a total red herring and really a little bit

5  disingenuous.  That defense is fully preserved both during the

6  claim determination process and during the judicial review

7  process, and documents are clear in that regard.  And if they

8  think it's not, clarify it, but that's clearly a very different

9  issue from imposing a burden on us to have to prove PG&E's

10  negligence.

11          THE COURT:  Okay, but let's test this and then I'll

12  listen to both sides.

13          Mr. Mintz, you represent AT&T.  AT&T, I guess, from

14  what I've read, according to some, may have some culpability in

15  the fire.  So if the matter doesn't go through the claims

16  resolution process to conclusion, then under my decision, AT&T

17  would have a right to go to court, some court somewhere, and

18  your argument is we should start with the presumption, or the

19  fact, that PG&E has admitted to causing the fire.  Or maybe I'm

20  not phrasing it correctly, but then you have to put on all of

21  your damages case, and then the other side would put on its

22  defenses, including AT&T caused the fire or contributed to the

23  fire or did whatever, any defense available to it.  And that's

24  where I understand to be the outcome, and apparently you're

25  agreeing with me.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    MR. MINTZ:  Your Honor, I take issue with the notion

2    that AT&T has culpability, but for hypothetical argument, I

3    agree with that outcome.

4    THE COURT:  Yeah.

5    MR. MINTZ:  That is exactly how it would play out

6    under how we think it should work.

7    THE COURT:  Yeah.  I didn't expect you to concede that

8    AT&T did anything wrong, but the point is -- the point is your

9    opponent, whether it's the trustee or whatever, I mean, let's

10   just frame it.  The resolution process isn't successful.

11   Whether you initiate an action somewhere, in a court or

12   whatever, it doesn't matter, you still have to prove your

13   damages.  If you don't prove any damages, you're out.  If you

14   prove damages, the other side proves whatever that offsets,

15   diminishes, et cetera, your damage.  Okay.

16   Well, if you want to make any further argument about

17   what you want, I'll let you because that was the deal here, but

18   I think I got the point of what your side wants.  Why don't you

19   say -- why don't you say whatever you want to say, okay?

20   MR. MINTZ:  Okay.  I'll be quick, Your Honor.

21   You know, this was an outcome from Your Honor's

22   ruling.  We had a right of judicial review, and that we were

23   then directed to work with the trustee and the TCC on drafting

24   that, and thought that would be pretty easy to draft.  But they

25   clearly had the goal of trying to disfavor the claimants who

PG&E Corporation and Pacific Gas and Electric

1  exercised their judicial review right, and that was throughout

2  the process.  They started that in the disclosure statement, as

3  Your Honor may recall, that they had language that said they

4  were going to disfavor large claimants.  We solved that

5  problem, and we have language in the trust documents that says

6  all claimants will be treated the same, regardless of size, but

7  they keep coming at us.

8          And now they started with a notion that if you sought

9  the judicial review right, you weren't going to get paid for an

10  extra two years.  So you'd go through the whole process, you'd

11  win before the court, and then they were going to hold up your

12  money for two years.  So we persuaded them to take that off the

13  table, and then they came back with this.

14          So it's clearly intended to be punitive.  It's unfair.

15  It's not equitable.  It contradicts the basic underpinnings of

16  the settlement between the TCC and PG&E, and there's no

17  legitimate basis for it other than to disadvantage us, those

18  who exercise the right of judicial review.  Which we may not

19  ultimately see, but it's an important right that we've sought

20  and Your Honor upheld, and we shouldn't be prejudiced if we

21  exercise that right.  It's just a basic rule of fairness that

22  all claimants be subjected to the same standards, whether that

23  goes for the trust determination process or under judicial

24  review.

25          The last point I would make, Your Honor, is that if

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    this provision is sustained, the plan is going to need to be

2    modified in a material way to make clear that those who seek

3    judicial review are permitted to take discovery from PG&E to be

4    able to meet its evidentiary showing.  That's currently

5    precluded by the plan, and that's because PG&E has effectively

6    acknowledged the negligence and that's what the predicate for

7    the settlement is.  But if we have to go back to basics and

8    have to prove up those issues, we're going to need to take the

9    discovery from the debtor.  That's going to be burdensome on

10   the debtor, and I assume the debtors aren't going to be happy

11   with that.

12          But if you don't allow that, and at the same time

13   require us to make that evidentiary burden, you've totally

14   vitiated the judicial review right that Your Honor's already

15   sustained.  It would be totally hollow if we don't have a right

16   of discovery to be able to prove up the issue.

17          THE COURT:  Okay.  I got it.

18          MR. MINTZ:  Thanks, Your Honor.  I assume I'll come

19   back on second point after we work our way through this one.

20          THE COURT:  Right.  Okay.

21          Mr. MacConaghy or Mr. Molton; who wants to lead off?

22          MR. MOLTON:  Judge, this is going to be David Molton

23   of Brown Rudick, for the trustee, and it's a pleasure, again,

24   to appear in front of you.

25          I just want to say one thing.  It's good we heard from

PG&E Corporation and Pacific Gas and Electric

1    Mr. Mintz that he's agreeing, and I thank Your Honor for asking

2    that question, that the trust's full setoff and defense rights

3    are preserved and that they're not contesting the ability of

4    the trust to assert those important rights in connection with

5    any claim that's made by the objectors.

6         I think what is at essence here, in terms of the fact

7    that the objectors made a very, very -- the crux of their prior

8    objection was they wanted a judicial review.  They got it.  And

9    what our position is, Judge, they need to live with it, and

10   that includes the trust's right to dispute liability.  And if

11   Your Honor gives me a second, I'll try to articulate on our

12   position, because I think Mr. Mintz and his framing of

13   unfairness and oppressiveness is being a little rich in that.

14        In their objection, Judge, the objectors argued that

15   the "adjudication of their claims consistent" -- argued for the

16   "adjudication of their claims, consistent with the statutory

17   claims allowance process".  They cited Collier for that

18   proposition, Your Honor, and reminded us all that the

19   bankruptcy court, in such a claims adjudication process, always

20   retains the jurisdiction and right to determine the

21   allowability of the claim, which implicates liability.

22        Judge, in the Ninth Circuit, de novo review means

23   that.  It means that a court consider a matter anew, as if it

24   had not been heard before and as if no decision had been

25   rendered previously.  And I can cite a host of decisions, but

PG&E Corporation and Pacific Gas and Electric

1    just here, Your Honor, In re:  Jeffries, B.R. 373 at 377,

2    that's the Ninth Circuit BAP, 2012, and then the Ninth Circuit

3    itself, not in a bankruptcy case, but dealing with the concept

4    in Bartoloma v. Sessions, 904 F 3d. 803, 812, and that's a 2018

5    case.

6         Your Honor, the operation of two provisions of The

7    Code, which Adventist and the objectors -- which the objectors

8    asked for plainly provides that upon an objection, a claimant

9    has to prove each element of their unliquidated claim for that

10   claim to be allowed, and I'm referring to Section 502 of the

11   Code, as Your Honor knows.

12        Your Honor, the opt-out to the Court that the

13   objectors won by way of your decision, pursuant to the CPO we

14   proposed, in a part that is not challenged, creates a contested

15   proceeding; meaning for all intents and purposes, it operates

16   as an objection.  And that allows the bankruptcy court, in a

17   judicial de novo review, the very thing that you gave the

18   objectors, the ability to determine a right -- whether the

19   claims should be allowed, or a right to payment.  And in so

20   doing, Your Honor, pursuant to 502(b)(1), to consider whether

21   that claim is unenforceable against the debtor, or here its

22   successor, under (indiscernible).

23        THE COURT:  But Mr. Molton, what would happen -- Mr.

24   Molton, we've got --

25        MR. MOLTON:  Yes, sir.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    THE COURT:  We know that Adventist is a very large

2    creditor, we know that AT&T and Comcast are pretty well-off,

3    but you know, there are some individuals that preserve their

4    rights, too.  There's a gentleman named Mr. Carlson, who

5    participated in the oral argument and should have been involved

6    in this, I don't know if he's on the phone today, but what,

7    does Mr. Carlson have to come in and prove that PG&E was

8    negligent?

9    MR. MOLTON:  Judge --

10    THE COURT:  That doesn't seem right.

11    MR. MOLTON:  -- that's a great question, and how we've

12    written the trust protocols, the CRP, Your Honor, is that the

13    trustee retains the ability to waive or concede any fact or

14    issue of law.  So I would imagine what would happen is that Mr.

15    Carlson would come to the trustee, if he wants to opt into the

16    court system, and say what Your Honor just said.  And that will

17    be a decision that Judge Trotter, in his discretion, under the

18    circumstances of each case, will make, in accordance with

19    equity, justice, and fairness.  So we provided that --

20    THE COURT:  Well, I don't want to -- I don't want to

21    get bogged down on the specifics --

22    MR. MOLTON:  Yeah.

23    THE COURT:  -- of Mr. Carlson, so let's just have Mr.

24    Hypothetical.  So if Mr. Hypothetical goes through the CRP and

25    at the end of the day, after going through the multi-tier

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    level, the decision is, Mr. Hypothetical, you're entitled to a

2    hundred thousand dollars and he says, no, I don't like that.  I

3    want to take it to court.  Then I presume, what, the trustee

4    can then waive it at that point and say we'll give you the

5    150,000 or 200,000?  I mean, it seems to me --

6              MR. MOLTON:  Well, Judge --

7              THE COURT:  -- you've got to have some rules of

8    engagement or not.  When does it get -- become operative?

9              MR. MOLTON:  We do, Judge, and Your Honor noted in

10   your opinion, after review of the CRP, that was fair and

11   equitable and accorded with due process.  What would happen is

12   that the trustee -- if Mr. X or Ms. Y, who has this ability,

13   decided to exit to the court system and contest the trustee's

14   determination and believes that being held to show the element

15   of liability would be unfair, an impediment, overly burdensome,

16   that person or entity would make that position clear to the

17   trustee, who would then decide in the case --

18             THE COURT:  What if AT&T said it?  I don't know what

19   their total claim is, but if their claim is 500 million

20   dollars, what do they say?  Well, that's burdensome because

21   PG&E isn't cooperating and they don't want to cooperate with

22   discovery anymore, they're gone?

23             MR. MOLTON:  Judge --

24             THE COURT:  But (indiscernible) -- but we agreed to

25   make this quick, so I've got to go to one more question.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1      MR. MOLTON:  Okay, because --

2      THE COURT:  What would happen if -- what would happen

3  if one of these objectors takes it to trial and the court

4  determines that there was no liability on the part of PG&E,

5  then what happens to the entire CRP?  Do we have inconsistent

6  determinations?

7      MR. MOLTON:  No, Your Honor, because under the CRP,

8  one of the rules of that, which is a result of a settlement

9  that was voted on overwhelmingly, as Your Honor noted and

10  others noted by an overwhelming majority of the affected class,

11  provides that for the purpose of the CRP, PG&E's negligence

12  and/or the fact that its equipment caused the fire will be

13  assumed.

14      THE COURT:  No, I know that.  I'm well aware of that.

15      MR. MOLTON:  Yeah.

16      THE COURT:  I'm well aware of that, but there's

17  something wrong with this picture if you have a process

18  involving tens of thousands of fire claimants who are operating

19  under an assumption -- on a presumption, essentially a

20  stipulation, that PG&E caused the fire and was negligent, but

21  then what would happen if you had a judicial determination on a

22  particular fire that it wasn't negligent?  Anyway, it's just

23  that -- I'm just putting in the mix of making a decision.

24      Are you going to --

25      MR. MOLTON:  Judge, if I could --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    THE COURT:  -- Mr. MacConaghy, are you going to argue

2  on this point, too, or is this going to be your point of view?

3    MR. MOLTON:  No, Judge.  It's just Mr. MacConaghy --

4    THE COURT:  Okay.

5    MR. MOLTON:  -- is going to be arguing point two.

6    THE COURT:  Okay.

7    MR. MOLTON:  But Your Honor, that would be the

8  judgement in connection with that particular court proceeding,

9  but it would not effect the overwhelming amount of claims

10  processing and treatment that is undertaken in accordance with

11  a claims protocol that Your Honor has already found to be fair,

12  equitable, and consistent with due process.

13    THE COURT:  And Mr. Molton, in the Takata case, was

14  there any concession by Takata that they were liable and that

15  what had to be adjudicated was damages?  Or would you know one

16  way or the other, because --

17    MR. MOLTON:  Judge, yeah, I think I do.

18    THE COURT:  -- if you don't know, I'm not --

19    MR. MOLTON:  -- and I'll tell you why --

20    THE COURT:  Okay.

21    MR. MOLTON:  -- because I actually represent the

22  trustee in Takata -- the post-confirmation trustee and the DOJ

23  special master of the Takata restitution fund.  So I can tell

24  you, Takata dealt with claims against the debtor in a number of

25  ways, as Your Honor noted.  With respect to the rupture claims

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    that caused horrific physical injury, those were channeled, all

2    of them, to a trust that had, as Your Honor noted, no exit, and

3    were adjudicated therein.  And my understanding -- again, I

4    don't have it in front of me -- is that the liability of Takata

5    was not an issue with respect to that trust.

6             However, Your Honor, there were many other personal

7    injury claims asserted against Takata that were not channeled

8    into that (indiscernible) trust, but were exactly the point

9    of -- were given, basically, claims allowance in front of Judge

10   Shannon in bankruptcy -- in Delaware Bankruptcy Court.  With

11   respect to each one of those, Your Honor, that was then subject

12   to Section 502 and other claims allowance process, the trustee

13   retains the right to contest Takata's liability and has done so

14   repeatedly in connection with many, many cases that have gone

15   to the, what I call, the claims allowance process in the

16   bankruptcy court.

17            THE COURT:  Okay.  Last question.  What do we do with

18   the inverse condemnation principle that applies to a bare

19   portion of the measure of the damage, certainly that the

20   corporate entities here, not the ones that -- not the

21   individuals who might have suffered personal injury, but I

22   wouldn't imagine that AT&T and Comcast suffered any personal

23   injury, but I bet you they got a large component of their

24   claim, as based upon inverse condemnation.  Doesn't that --

25   what do we do about that?

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1      MR. MOLTON:  Judge --

2      THE COURT:  Do we presume that PG&E didn't even cause

3  the fire?

4      MR. MOLTON:  No, Judge.  My understanding is -- and I

5  was baffled to some extent by the statement that my friends,

6  the objectors, who basically raised this issue, because there's

7  nothing in their claims protocol that does away with the

8  ability of a claimant, whether it be one of the objectors or

9  anyone else, to assert an inverse condemnation claim.  Indeed,

10  in the trust, Your Honor, the -- that the fires -- that PG&E's

11  equipment was a substantial factor with respect to the fire --

12  with respect to the injury is presumed, as Your Honor knows.

13      That issue, again, to the extent there is -- we don't

14  purport to deny any of the objectors' ability, if they decide

15  to exit into the court system, to make, assert, and prosecute

16  and run an inverse condemnation claim.  All we're saying is, to

17  the extent they have to have any elements to prove of that

18  case, one of which, my understanding, although I'm not an

19  expert, may be that the equipment of P&G (sic) was a

20  substantial factor in the fire, that's going to be their proof,

21  like in any 502 proceeding.

22      THE COURT:  Okay.  Look, I -- here's my take on this,

23  and maybe I was a little bit loosy-goosy in using the word de

24  novo when I wrote my decision for -- on the objectors.  You

25  know, the issue that was -- Mr. Molton, you weren't involved in

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1   it, but you know about it, and it was really my being satisfied

2   by the objectors that it was inappropriate to close the door to

3   the courthouse.  And I also made the point that my own guess is

4   that, despite what Mr. MacConaghy argued at the oral argument,

5   this wasn't going to be floodgates.  It was going to be narrow,

6   and I still believe it.  I hope I'm right about that, but I

7   didn't even think about the question of whether, somehow, I was

8   opening the door for making the objectors prove something that

9   was essentially handed to them as part of the rules for the

10  CRP, and I certainly didn't think about, it wasn't on my mind

11  at all because it had nothing to do with the issues, of whether

12  this would be an imposition on PG&E to have to respond to

13  discovery.  I mean, I don't recall that that issue was ever,

14  ever even discussed, but again, that was only, what, three

15  weeks ago and I've only -- you know, the last three weeks, have

16  been a little -- I've been a little busy, as all of you have.

17  But I --

18          MR. MOLTON:  An eternity ago, Your Honor.

19          THE COURT:  Yeah, right.

20          But I have a -- to me, to do what the trustee and you,

21  Mr. Mulligan, you're arguing, is to make -- it makes a

22  difficult situation, perhaps, for you and the trustee even

23  worse.  It wasn't something that was on my radar at all, and I

24  think that it would be too disruptive to the orderly course of

25  business for the trust going one way and the reorganized

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    company going the other way.  Obviously it's not that simple,

2    but I'm satisfied that the objectors have the better argument

3    here and the presumption ought to be operating consistently, in

4    or out of court, that it's -- well, I'll just leave it at that.

5    I am gratified that I wasn't and the objectors weren't trying

6    to take away any defenses the trustee has, and that's clear.

7         So to me, it would be, frankly -- and this is an

8    oversimplification and you counsel that are drafting and

9    tweaking these documents will have to be the drafters, but if

10   at the end of the day one of these objectors gets an adverse --

11   or a decision that it's unhappy with from the trustee, they

12   just go to the next step.  And so it's not really de novo

13   review.  It's they go into that court with the same -- I'm

14   going to use the wrong word here -- presumption.

15        It's almost like -- it's almost like there's already

16   been a determination of liability.  What the plaintiffs have to

17   prove is their damages, and they have to overcome whatever

18   defenses the trustee may have.  So I believe that that's

19   consistent with the perception that I had when I was thinking

20   about the issues, that it's not to start over in a literal de

21   novo setting, and that -- and if I created the problem by using

22   that term, I'm sorry.  I should have, perhaps, been more clear,

23   but it simply wasn't something that was on my -- on my mind.

24   So with that, I'm prepared to say that's my decision, and

25   that's what I'm going to stick with.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    MR. MOLTON: Thank you, Judge. I appreciate that,

2  and I also appreciate the fact that we had the record

3  concession that the defenses and offsets are intact, because we

4  do understand, as Your Honor noted, that there is credible

5  evidence that one or more of the Bay Fires were also caused by

6  failures of AT&T and Comcast equipment.

7    THE COURT: Yeah, look if Mr. Mintz --

8    MR. MOLTON: So it's important for the Trustee --

9  yeah.

10    THE COURT: If Mr. Mintz or the objectors had even put

11  in one sentence that says by the way, we don't think the

12  Trustee should have any defenses, I think I would have taken

13  issue with it right from the outset, because it just -- it

14  ain't right, and it isn't right. So that's the fairest I can

15  be, and I note that the response that the debtor filed about

16  this issue was they want me to do the right thing, and that's

17  what I'm trying to do.

18    Okay, let's switch to the second issue.

19    MR. MOLTON: I appreciate it, Judge. Thank you.

20    MR. KAROTKIN: Your Honor?

21    MR. MOLTON: And thank you for hearing us.

22    MR. KAROTKIN: Your Honor?

23    THE COURT: Yes, sir. Yes, who's that?

24    MR. KAROTKIN: Sorry, Stephen Karotkin for the

25  debtors.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    THE COURT:  Yes, sir.

2    MR. KAROTKIN:  I have nothing -- as you noted, we did

3  file a pleading with -- mainly with respect to the second

4  issue, which is relatively new language.  It's not -- as we

5  noted, it is not in any proposed confirmation order that was

6  filed with the Court, and it significantly impacts the debtors

7  rights, so we wish to be heard.

8    I will note that we have had discussions with the TCC

9  about this language, as well as other recent proposed

10  modifications to the trust documents, as well as significant

11  proposed modifications there suggesting to the confirmation

12  order.  We had a call with them before this call, and we all

13  agreed we would try to work out that language over the next

14  couple of days.

15    So particularly, Your Honor, with respect to this

16  paragraph that you're going to be discussing now, we do have

17  serious issues.  We think it goes beyond the scope of what's

18  appropriate in the plan.  I know that counsel for the trust

19  was, I think, suggesting that retention of all setoff rights is

20  appropriate, but this language needs to be appropriately

21  circumscribed, and we've agreed with Mr. Julian and his

22  colleagues to try to work on that language in the next few

23  days, as well as other issues with respect to the trust

24  documents, and the proposed confirmation order to try to come

25  to a resolution.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1          But as I said, this proposed language --

2          THE COURT:  But Mr. Karotkin, you're --

3          MR. KAROTKIN:  -- is very problematic.

4          THE COURT:  You're satisfied, I take it, if that just

5    stays out, right?

6          MR. KAROTKIN:  Yes, we are --

7          THE COURT:  Is that all I have to do?

8          MR. KAROTKIN:  I believe we are, Your Honor, but there

9    will -- they have raised similar issues in connection with

10   proposed modifications, excuse me, to the confirmation order

11   relating to setoff, and recoupment, and those types of issues,

12   and what rights the trust would have, and it really does have

13   to be appropriately sorted out in the context of what is

14   actually being assigned to the trust, and what rights they

15   have, and I'm just very, very concerned that that not be done

16   on the fly.

17         THE COURT:  No, that's fine, and I'll just say I'm

18   going to stick with the understanding here that this is a very

19   narrow matter that's been teed up for me to hear today.

20   Obviously, it's a broader issue for the reasons you've stated.

21         So I'll let -- Mr. Karotkin, I'll come back to you

22   when we hear from the others.

23         MR. KAROTKIN:  Okay, thank you, sir.

24         THE COURT:  So Mr. MacConaghy, you said you're going

25   to -- and Mr. Mintz, is this yours again, or who said --

PG&E Corporation and Pacific Gas and Electric

1          MR. MINTZ:  It is me again, Your Honor.

2          THE COURT:  -- which one is going to --

3          MR. MINTZ:  It's Mr. Mintz.

4          THE COURT:  Okay.  So let me --

5          MR. MINTZ:  I'm going to argue this again.

6          THE COURT:  Okay.  Let me again make an opening

7   observation, and maybe I'm just overworked these days, but

8   maybe it's some colloquy that was had during the trial.  I

9   think there's a conflating of concepts here between assuming a

10  contract, and assigning rights and causes of action.  So maybe

11  this is old law school 101, but to me if there is a right to do

12  something, or there is a cause of action, which means somebody

13  has a claim, or a right to go after somebody else, those really

14  have nothing to do with executory contracts.

15          And so when the debtor under its 365 via the plan is

16  assuming thousands of pages of contracts, it is assuming the

17  burdens, and the benefits, but I think to my mind, that

18  separates from something that was an entitlement that it had

19  that perhaps is no longer part of the contract.  And again, I

20  might be over simplifying, so I'm focusing more on the phrase,

21  "cause of action" than "rights" because obviously if one is a

22  party to a contract, you have rights, and duties, and

23  obligations.

24          If you have a cause of action, even though it may have

25  come from the contractual relationship, but you are the

PG&E Corporation and Pacific Gas and Electric

1    prospective plaintiff, and you are the prospective assignor of

2    the executory contract, they go in different directions, and

3    therefore, when you assume the contract, you say I'm going to

4    take on the benefits, and I'm going to carry the burdens, but

5    why the way, if I have a cause of action to sue somebody, like

6    my counterparty, that's different.

7          So I don't think to me, conceptually, what PG&E, the

8    debtor coming out of the Chapter 11 is keeping its rights, and

9    causes of actions, except those which it specifically has

10   assigned to the trust under provisions that everybody's

11   familiar with, and I separate the concepts from what seems to

12   be merged here.

13         So in my mind, Mr. Karotkin is right, that sentence

14   should come out, and therefore, if PG&E had a right to sue or

15   had a right that is somehow not necessarily integral to the

16   executory contract that's being assumed, it can do what it

17   wants with those causes of action, and it's chosen to give some

18   of them to the trust and keep the balance, and therefore, I am

19   not inclined to be persuaded that I should let these concepts

20   mixed together here.

21         So Mr. Mintz, you won the first round.  You might have

22   a tougher time winning the second one, but you're up.

23         MR. MINTZ:  Okay.  So let me try to breakdown these

24   issues, Your Honor.  With respect to those assigned rights and

25   causes of action that are outside of the contracts, for

of 62   |   operations@escribers.net   |   www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    example, if there is an independent tort claim that PG&E has

2    against one of the counterparties to its assumed contracts, I

3    take no issue with the notion that that can be assigned to

4    trust.

5           My issue is with respect to those rights and causes of

6    action that arise under the contract itself, and by virtue of

7    365, we're all familiar with the notion that a contract can't

8    be cherry-picked.  And my position is that if the debtor

9    assumes the contract, it can't use Section 365 to assign rights

10   under that contract.

11          What it can do, Your Honor, and maybe this is what

12   Your Honor is thinking about, is it could assign those rights

13   under applicable nonbankruptcy law, or under the terms of the

14   contract, if the terms of the contract permit it, or if

15   applicable nonbankruptcy law permits it, but what I'm concerned

16   about is that the language as phrased, says that they can

17   affect that assignment under applicable law.

18          And so the way I proposed to deal with the issue was

19   to suggest that language that would say that nothing in the

20   order would prejudice the rights of parties with respect to the

21   question of whether the assigned rights under the assumed

22   executor contract were, in fact, assignable, pursuant to

23   applicable contract in nonbankruptcy law.  Obviously, Your

24   Honor can make that determination on the thousands or tens of

25   thousands of contracts that are being assumed at this juncture,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    and the answer may vary depending on the contract at issue, and

2    the cause of action at issue, but it should be the case that

3    Your Honor is in position to rule on a blank basis, that that

4    can be done across all contracts, and across all causes of

5    action.  It's just not permitted by 365, and it's a question

6    that I think deserves inquiry into the underlying facts, and

7    legal issues that would apply on a contract by contract basis.

8              THE COURT:  So Mr. Mintz, if I have a contract with

9    AT&T to provide internet service, and I file bankruptcy and I

10   want to assume that contract, but last week the internet went

11   down and I suffered damage, but I want to assume the contract

12   because I want to use AT&T going forward, doesn't my cause of

13   action separate?  Isn't it something independent of my

14   contractual relationship with AT&T?

15             So I assume the contract, but I assign my cause of

16   action for loss of whatever, business opportunity because of

17   something that happened, why is my harm that I suffered, which

18   gave rise to a cause of action, why is that still part of the

19   contract, rather than something that came about because of the

20   contractual relationship?

21             MR. MINTZ:  Well, it's a claim that --

22             THE COURT:  In other words, you assume --

23             MR. MINTZ:  -- arises --

24             THE COURT:  -- you assume rights and obligations, but

25   that doesn't mean you -- that going with it is a claim that I

PG&E Corporation and Pacific Gas and Electric

1   have against the counterparty.

2          MR. MINTZ:  Well, Your Honor, it arises under the

3   contract, and the contract's going to govern under what

4   circumstances, and limitations may be placed on that claim, if

5   for example, (indiscernible) assumption the debtor breaches the

6   contract, that may have ramifications for the claim, and cause

7   of action that existed at the time the contract was assumed.

8   The contract may have provisions that address that kind of

9   issue, and it's not clear what would happen in this

10  circumstance where the claim was assigned before that reach.

11         But we --

12         THE COURT:  Well, suppose my --

13         MR. MINTZ:  -- have our rights under our contract --

14         THE COURT:  Suppose my contract with AT&T had a

15  mandatory arbitration clause, I presume if I were assigning my

16  claim for damages to somebody, or I wanted to preserve it for

17  myself, or I would -- the arbitration provisions would survive,

18  but it's still not a right that is, in my mind, encompassed

19  within the assumption process.

20         In other words, there's nothing in 365 that talks

21  about assuming causes of action.  You assume benefits and

22  burdens of a contract, not -- well, I'm still -- I'm trying to

23  explain to you why I'm confused by what you want to do here.

24  So that's what I am (indiscernible).

25         MR. MINTZ:  I think a righting cause of action is one

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    of the benefits of the contract.  It's a right that flows from

2    the contract, and you're allowing them to sever a contract in a

3    way that's not permitted by 365.  I acknowledge there may be

4    other legal grounds to do that under applicable nonbankruptcy

5    law, or under the terms of the contract, but that's a separate

6    determination.

7         I maintain that as a matter of -- the law regarding

8    365 does not permit the severability of contracts between

9    assumption and assignment, and a cause of action is no

10   different from any other right or benefit under the contract.

11   It's a benefit under the contract --

12        THE COURT:  But you still don't agree with me then

13   that when something gives rise to what traditionally might be

14   called a cause of action, that that somehow is a separate right

15   -- sorry, I used the same word -- it's a separate entitlement

16   that I, as an injured party, can retain apart from my

17   contractual relationship.  You seem to be --

18        MR. MINTZ:  I think if it --

19        THE COURT:  -- (indiscernible)

20        MR. MINTZ:  I don't agree with that if it's a tort.

21   That's, of course, it's besides the contract, but if it's a

22   cause of action that's based on a contractual claim, a breach

23   or other claim that arises under the contract, to govern by the

24   terms of contract, and the party that's retaining the --

25   generally retaining the benefits and burdens of that contract

PG&E Corporation and Pacific Gas and Electric

1    have to be the one who maintains those rights.  Otherwise,

2    you're allowing 365 to effectively cherry-pick and say the

3    debtor can keep these provisions, and pass along these other

4    rights.  The contracts may very well have provisions that

5    govern what happen with respect to these types of cause of

6    action, whether there's limitations on damages, or other

7    provisions that implicate those things, and that are affected

8    by the debtors' own conduct.

9          As I alluded before, if the debtor takes action that

10   breaches the contract, after post-effective date, under the

11   terms of the contract, that may have material implications on

12   the cause of action.  It's not clear how that would play out in

13   the situation that's being proposed right now, and therefore,

14   it creates a great deal of prejudice for someone who is party

15   to one of these contracts.

16         But again --

17         THE COURT:  Well, if the debtor breaches --

18         MR. MINTZ:  -- I don't think it's --

19         THE COURT:  If the debtor breaches the contract post-

20   effective date, that's easy to me, for me to understand, but

21   what -- suppose -- let's use a more concrete example, and

22   again, I'm going to try to make this general without trying to

23   identify it, but we know that there are claims that the debtor

24   may have against some of its counterparties to -- for

25   vegetation management.  If it assumes a contract, and goes

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    forward in its relationship with that party, but assigns to the

2    tort committee -- tort trust -- excuse me, the trust, the right

3    to sue that person for pre-petition conduct, why is it linked

4    to the assumption?  Why isn't it what I said before?  Why isn't

5    it the separating out an entitlement to sue someone for harm

6    that existed before bankruptcy, apart from the 365 process?

7         If you -- look it, if they rejected the contract,

8    they'd still have the right to sue someone that damaged him.

9    If you have a right to sue somebody when you reject a contract,

10   why can't you sue it even though you've assumed the contract?

11        MR. MINTZ:  Well, they may be able to, Your Honor, but

12   that's going to depend on the terms of the contract, and what

13   that may say with regard to how those rights may be preserved.

14   It's governed by the contract.  That's my point, Your Honor,

15   and Your Honor isn't in a position to make the judgment cross

16   the tens of thousands of contracts that the debtor is going to

17   be assuming what's going to happen with those causes of action.

18        So all I'm suggesting, Your Honor, is that all rights

19   should be reserved with regard to whether the assigned rights

20   and causes of action, may be assigned pursuant to the

21   applicable contract, and what the implications and defenses

22   that may flow from that consequence.

23        So you know, that's the piece of this that I'm focused

24   on, Your Honor.  The contract, for example, might say -- might

25   expressly prohibit an assignment like that, and may say to the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    extent that the debtor does that, the contract is void, and

2    there's no liability thereunder.  I don't -- it's an unusual

3    type of provision but if it said something like that, this

4    shouldn't override that.

5              THE COURT:  Okay.

6              Mr. MacConaghy?

7              MR. MACCONAGHY:  Your Honor's question picked up a lot

8    of my points.  I just have a few things to add.  First off,

9    starting with the December 2019 tort committee RSA, this term

10   "assigned rights and causes of action" was created and it gave

11   a very expansive definition that included all choses in action

12   related to the fires that the debtors may have against third-

13   parties.  There was no exclusion whatsoever as to causes of

14   action relating to executory contracts.

15             The Court approved the RSA, including after a response

16   by Adventist, then the same language was included in the plan

17   and disclosure statement, and based on the assumption by the

18   TCC, and the consenting fire plaintiffs that we were getting

19   all these rights, we delivered the votes of 45,000 people to

20   accept the plan.

21             Now after all the votes are counted, the ad hoc

22   objectors, and somewhat disturbingly, it seems the debtors were

23   trying to take those rights back.  So this is in the plan right

24   now, that the TCC gets all of these rights, and if there was

25   something in AT&T's contract that somehow prevented this, or

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    created a bar, I think it was incumbent upon AT&T to make an

2    evidentiary showing, and attach a copy of its contract to its

3    latest pleading.

4                I want to just --

5                THE COURT:  Well, wait a minute.  What should AT&T --

6    what would they have done, impose the assumption, or they can't

7    -- they're not opposing just today's (indiscernible)?

8                MR. MACCONAGHY:  Object to confirmation on that basis.

9    Say oh, we saw on the plan that the debtor wants to assign all

10   rights and causes of action to the Fire Victim's Trust, and

11   they can't do that, and here's the provision of our executory

12   contract with them that bars them from doing that.

13               And instead of making that kind of evidentiary

14   showing, AT&T's counsel now are saying well, there may be

15   things and tens of thousands of contracts that we don't know

16   about.  Well, who cares about tens of thousands of contracts?

17   It's the AT&T Comcast contract that is at issue now.

18               THE COURT:  Do you perceive a distinction between

19   rights and causes of action in the phrase here?

20               MR. MACCONAGHY:  Well, under -- I think rights might

21   include setoffs, recoupments, other defenses.  The term

22   assigned rights, and causes of action is a defined term in the

23   plan, and it includes all sorts of stuff.

24               THE COURT:  But if not, then I don't --

25               MR. MACCONAGHY:  Plan --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    THE COURT:  -- I don't have it -- well, I do have it

2    here, well I got --

3    MR. MACCONAGHY:  I can --

4    THE COURT:  -- the plan keeps changing.  Well, wait a

5    minute, I just have to get one.  I've got the June 7th version

6    of it here.  So you're right, that's a defined term, and so let

7    me -- let's look at the defined term.  Well, rights -- well,

8    there's a schedule of assigned rights and causes of action,

9    1.89.  Are you looking at a -- is there a different section on

10   this --

11   MR. MACCONAGHY:  I'm looking at the definition which -

12   -

13   THE COURT:  Oh, it's in 1.8.

14   MR. MACCONAGHY:  1.8.

15   THE COURT:  1.8.

16   MR. MACCONAGHY:  Yes.

17   THE COURT:  Okay.  So let's -- let me take a look at

18   that, so -- so there's no reference to 365 in that definition,

19   is there?

20   MR. MACCONAGHY:  No.

21   THE COURT:  So that to me is consistent with my

22   opening comment on the subject that there are rights, and

23   again, the word causes of action -- oh, there, it's cause of

24   action as defined over in 1.21.

25   MR. MACCONAGHY:  Yes.

PG&E Corporation and Pacific Gas and Electric

1    THE COURT:  It's sort of like first-year law school,

2    what a cause of action is, and it's pretty similar to what a

3    claim is under Section 101 of the Bankruptcy Code, but -- and I

4    don't know if the word "rights" is defined.  I can find out.

5    Every single other term is defined, so it probably is too.

6    Well, no, the word rights isn't defined by itself.

7    It's -- so we'll have to leave to the legislative history to

8    figure what does rights mean.  It's not in the definitions.

9    But in any event, the -- Mr. MacConaghy, you seem to

10   be agreeing with me, and you probably will agree with me, if

11   you think I'm going your way here, that this bundle of rights

12   to sue people, and to do whatever other thing goes with

13   R-I-G-H-T, rather than cause of action, it goes to the trust

14   with the schedule of them, whether or not there is a related

15   executory contract being assumed.  Is that --

16   MR. MACCONAGHY:  Correct.

17   THE COURT:  -- is that a fair way of restating?  Mr.

18   Karotkin, do you agree with that interpretation?

19   MR. KAROTKIN:  I think that -- I think, Your Honor,

20   what the debtors are assigning is the defined term of "Assigned

21   Rights and Causes of Action", and what is within the scope of

22   that.  And that is very -- that is it.  That is what is being

23   assigned, nothing more and nothing less than that.

24   And whether or not a particular cause of action that

25   the trust elects to assert falls within that definition would

PG&E Corporation and Pacific Gas and Electric

1    have to be determined at the time because we can't think about

2    every single possible claim the trust might elect to assert.

3    And if a dispute arises at that time as to whether something is

4    an assigned right and cause of action, it can be addressed at

5    that time, whether if it's within the scope of it.

6         And I think what Mr. Mintz is saying is the debtors

7    can only assign what they have the right to assign.  And I

8    think that there is some logic to that.  The debtors can only

9    assign what they have the right to assign.  I don't think the

10   Bankruptcy Code can override that.  And that question, if it

11   comes up, can be addressed at the appropriate time as well.

12        So I think that, again, those things are pretty clear.

13   We can only assign what we can assign, and we're only assigning

14   what is within the concept or scope of assigned rights and

15   causes of action --

16        THE COURT:  Okay.

17        MR. KAROTKIN:  -- and that is why --

18        THE COURT:  But I understand that.

19        MR. KAROTKIN:  That's why we have a problem with this

20   paragraph.

21        THE COURT:  And I --

22        MR. MACCONAGHY:  Your Honor, if I may respond to Mr.

23   Karotkin.

24        MR. KAROTKIN:  At the very least -- if I just could

25   finish a little bit -- at the very least --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1      MR. MACCONAGHY:  Well, you kind of interrupted me, Mr.

2   Karotkin, but --

3      MR. KAROTKIN:  No.  Actually, Judge, I --

4      THE COURT:  I -- no.  I asked Mr. Karotkin the

5   question, so finish your point, Mr. Karotkin.

6      MR. KAROTKIN:  Okay.  So if you look at the second

7   paragraph of this proposed language -- and Your Honor, I think

8   it's important to keep in mind that we've just seen this

9   language.  This is something new that was proposed by the TCC.

10  And as I said before, this is not in -- as I said, this is not

11  in a proposed confirmation order that was filed with the court.

12  This is their suggested language, which we're trying to work

13  through with them.

14      We think certainly, the second half of that paragraph

15  goes beyond what is provided for in the plan.  We think, as I

16  mentioned earlier, we can work that language out with the TCC

17  and appropriately address the concerns we have with that.  So

18  once thing I would say, Your Honor, that we would hope that you

19  would give us the opportunity to do that and reserve decision

20  on this issue so we can try to work it out.  And at the same

21  time, we may be willing -- we may be able to address some of

22  the issues that Mr. Mintz has raised.  So that's why -- as I

23  said, this is new to us, this language.  It's new to us.

24      THE COURT:  Okay.  So Mr. Karotkin, just answer me a

25  couple of questions historically, though.  There is no

PG&E Corporation and Pacific Gas and Electric

1   independent definition of the word R-I-G-H-T-S in the document,

2   correct?

3          MR. KAROTKIN:  That is correct.

4          THE COURT:  So --

5          MR. KAROTKIN:  Assigned rights and causes of action

6   are defined -- that is the entirety of the term, okay?

7          THE COURT:  So if the word --

8          MR. KAROTKIN:  It is self-contained.  Self-contained.

9          THE COURT:  If you took the word "Rights" out of the

10  caption, is there any substantive change to the way 1.8 would

11  operate?  So it just said "Assigned Causes of Action"?

12         MR. KAROTKIN:  I don't think so.  I don't think so --

13         THE COURT:  Okay.

14         MR. KAROTKIN:  -- because one point -- that's just a

15  name.

16         THE COURT:  Yeah.

17         MR. KAROTKIN:  That's just a defined term.  That's --

18         THE COURT:  Absolutely.

19         MR. KAROTKIN:  The defined term, Assigned Rights and

20  Causes of Action, is what it is.  It's not separate defined

21  terms of "Assigned Rights" and "Assigned Causes of Action".  It

22  is what it is in the plan, Your Honor.

23         THE COURT:  And there's nothing in this definition

24  that links it to 365.

25         MR. KAROTKIN:  No, but --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1      THE COURT:  And so what's being assigned would be

2  assigned to the trust whether the contract is assumed or

3  rejected, right?

4      MR. KAROTKIN:  I think that that's correct if we have

5  the legal authority to do so.  I don't see any reason, sitting

6  here today, why we wouldn't.  But --

7      THE COURT:  Okay.

8      MR. KAROTKIN:  But it --

9      THE COURT:  I'm going to --

10      Mr. MacConaghy, I'm going to -- you were cut off, but

11  mostly by me, but I'm going to -- I'm inclined now to let Mr.

12  Karotkin's suggestion take effect and let this simmer a little

13  longer.  I don't see -- what, to me, was a very narrow question

14  is obviously a bigger question, and I don't feel like I even

15  got my arms around it at this point because I can't get a

16  document that was filed at 10 o'clock this morning that raises

17  an issue that at 2 o'clock I have to make a critical decision

18  about it.

19      And I'll stick with my first decision on issue one,

20  but I think the safer thing to do is to let the debtor and the

21  TCC and the trustee and the objectors see if they can come up

22  with some resolution of this because the last thing in the

23  world we -- well, yeah.  I'll leave it at that.

24      Mr. Mintz, I said at the outset of this phase of the

25  argument that I thought you had the shorter end of the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    argument, but at the moment, I'll just take the -- I'll say

2    we're at an even position at this point now because I don't

3    feel comfortable trying to decide it.  Now, the question is

4    when should I have to decide it?  Hopefully, not at all.

5    Hopefully, you'll resolve it.

6            MR. JULIAN:  Your Honor, we're certainly prepared to

7    work on language to try to resolve the issue, Your Honor.

8            MR. MACCONAGHY:  Your Honor, in that regard --

9            THE COURT:  Okay.

10           MR. MACCONAGHY:  -- the TCC thinks it's very important

11   that this be incorporated into the confirmation order.  The

12   debtor made an argument to the contrary in this thing that they

13   filed at 10.  We think it's important that this have -- that

14   this provision dealing with these assigned causes of action

15   have the preclusive effect of a confirmation order.  And

16   there's -- everybody's under a lot of pressure to get that

17   done, so let's get it done.

18           MR. KAROTKIN:  Your Honor, I'd just like to reply to

19   that very briefly.

20           THE COURT:  Okay.

21           MR. KAROTKIN:  I understand Counsel's -- I understand

22   Counsel's request.  We're anxious to get it done too.  I think

23   we need to also be cautious, very cautious.  And I think this

24   is the reason they want it in the confirmation order, is that

25   the plan and the confirmation order provide that they control

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    over the definitive documents in this case.  And I think we

2    have to be very, very careful of including certain plan-

3    implementing documents as exhibits of the confirmation order

4    and others as not.  So I just throw that out there, Your Honor,

5    because I think that's a very important issue.

6         THE COURT:  Well, one of the things that, Mr.

7    Karotkin, from the first day I met you a year and a half ago, I

8    probably complained about some things being dumped into the

9    order when it ought to be in the moving papers.  And of course,

10   now, seventeen months later, days before we're at the critical

11   moment, this confirmation order just keeps growing and growing

12   and growing.

13        And so it's one of those things I worry about because

14   I was trained in the concept that the plan is the contract.

15   The plan is what makes the rules.  And the plan can mean plan

16   and supplement and other things.  And the order is just the

17   judicial blessing that says, this is for real.

18        But I'm not going to go back and say, we've got to go

19   back to a one-sentence confirmation order, and I'm going to not

20   get hung up on this.  But it is critical, and I want the

21   principal lawyers who are dealing with this problem and the

22   related problems just to keep that in mind.  It doesn't do

23   anyone any good -- any fire victim, any creditor, anybody who

24   has anything to do with this case -- to have to have more

25   ambiguity by trying to sort through what was in the order, what

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1   was in the operative document or supplement to it that gets

2   changed every minutes.  So I won't make any more speeches, and

3   I'm not going to do a one-sentence confirmation order.  But I'm

4   troubled by it getting out of hand.

5        Mr. Karotkin, I will take your advice, urge you to get

6   to work with Mr. Mintz and Mr. MacConaghy and to the extent

7   that Mr. Molton's involved in this, whatever -- and anyone else

8   to get it done.

9        Now, you need to tell me what's going to happen.  I

10  think I previously indicated that I wanted to see what the

11  latest version of the order is, and I see from the docket,

12  earlier this afternoon you filed a seventh supplement.  But is

13  there -- what's your expectation for when you can place on the

14  docket the latest version of the confirmation order?

15       MR. KAROTKIN:  Well, definitely this evening.

16       THE COURT:  Okay.  Until it changes tomorrow, right?

17       MR. KAROTKIN:  Until it changes -- yeah.  Yeah.  I'll

18  reserve all rights.  The comments --

19       MR. JULIAN:  Your Honor, in that --

20       MR. KAROTKIN:  -- the comments are still coming in.

21       MR. JULIAN:  Your Honor, your order requires parties

22  to kind of raise their hand on any issues with this

23  confirmation order that's going to be filed tonight by tomorrow

24  morning.  But we're hearing that the confirmation order remains

25  a moving target and is still subject to further negotiation, so

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    it seems like we may be getting ahead of that process.  And I

2    don't know how many times we want to kind of partially argue

3    these issues while things are still moving.

4            THE COURT:  No.  And I don't want to do that too.

5    That's difficult for all of you.  It's difficult for me.  It's

6    almost impossible for me.  I'm sitting here by myself looking

7    at the docket wondering what's the next fifty-page document I

8    have to read in time for the hearing that's in twenty minutes.

9    And that's not fair to me, but it's also not fair to your

10   clients and to the goal we're all involved in with.

11           But that being said, there's still some major issues

12   out there.  What I had in mind for tomorrow and the so-called

13   raise your hand was, I thought, a very narrow issue pertaining

14   to the indemnity language that for -- in large measure, a lot

15   of things got resolved.  So the last thing in the world I want

16   to do is to make more confusing for everybody when I'm sending

17   out a docket text saying, somebody please bring me up to speed.

18           And I'm still on track in my own mind to issue at

19   least a decision on -- the confirmation decision, and it may

20   well be that the thing that I have to do after that -- if I am

21   inclined to indicate that I will confirm the plan -- is to have

22   another hearing within days.  But to use a term that Mr.

23   Karotkin would know -- it's a New York term -- to settle the

24   order.  And I mean, I just can't take the risk of having

25   everybody going around, which order?  What's he signing?  What

PG&E Corporation and Pacific Gas and Electric

1  order applies?  We've got to get to the point where everybody's

2  in agreement.

3          So I'm going to conclude this hearing by just

4  reiterating on the record, I disposed of the first of the two

5  issues that the objectors and the TCC and the trustee presented

6  to me for resolution.  That has to do with the de novo review.

7  I've clarified that on the second issue.  I've deferred it till

8  a further something, a further -- an agreed order or a further

9  hearing or a further something.  I'm not going to -- I'm not

10 going to make any judicial determinations.  I'm assuming my

11 decision on the jury -- excuse me, on the judicial review will

12 be memorialized in whatever Mr. Molton and the objector's

13 counsel agree on.

14         So unless someone --

15         MR. ZUMBRO:  Your Honor, may I be heard briefly --

16         THE COURT:  Yes, sir --

17         MR. ZUMBRO:  -- on a housekeeping matter.

18         THE COURT:  Yes.  Just say your name again.  I know

19 what it is, but for the record, Mr. Karotkin.

20         MR. ZUMBRO:  Sure --

21         MR. KAROTKIN:  It was somebody else.

22         THE COURT:  I'm sorry.

23         MR. ZUMBRO:  It's Mr. Zumbro, Your Honor, from Cravath

24 on behalf of the debtors.  I was just hoping that I might be

25 heard briefly on a housekeeping matter.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1          THE COURT:  Okay.  Let's go to you, Mr. Karotkin

2     first, and then Mr. Zumbro.

3          MR. KAROTKIN:  No, Your Honor, I didn't have -- I

4     didn't raise my hand.

5          THE COURT:  Oh.

6          MR. KAROTKIN:  I'm sorry.  That's was Mr. Zumbro who

7     spoke up.

8          THE COURT:  Okay.  Mr. Zumbro, yes, sir?

9          MR. ZUMBRO:  Yes, sir.  I just wanted to advise the

10    Court that we did file the proposed exit financing order that

11    Mr. Karotkin had mentioned to the Court the other day.

12         THE COURT:  Yes.  I'm aware of that.

13         MR. ZUMBRO:  I can't remember exactly what day --

14    okay.

15         THE COURT:  No.  I'm aware of it.

16         MR. ZUMBRO:  But I just wanted to make sure --

17         THE COURT:  I have it, but I'm not -- you're not

18    expecting me to sign it yet, are you?

19         MR. ZUMBRO:  Well, we were hoping if the Court were

20    inclined to do so.  The one provision we put in -- we did put

21    in something in the order that makes it clear that we can't

22    consummate an equity offering or an equity issue until the

23    registration rights agreement issue has been resolved.  That's

24    in paragraph 10 of the proposed order.  But we were hoping that

25    the Court, if it were so inclined, would go ahead and enter the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1   order which has been approved by both the TCC and the UCC. And

2   hopefully, we can be back to you quickly on those other issues.

3   But we would like to get it entered if Your Honor was so

4   inclined.

5         THE COURT: Well, Mr. Zumbro, I'm glad you raised this

6   question. Well, I'm so inclined to do anything that I'm

7   supposed to be doing, but the problem is -- let me just look at

8   something here. One second. Yeah, it's called -- make sure

9   we're clear, this is document 7881 -- excuse me, 7888-1,

10  order --

11        MR. ZUMBRO: Correct. 788-1 (sic).

12        THE COURT: -- order approving plan funding. Yeah.

13  See, that came over the docket last evening. Seems like a

14  month ago. And I printed it and had it on my stack of things

15  to review this morning, but I had no indication that anybody

16  had signed off on it. And maybe there's something on the

17  docket. But again, the docket, every time I turn around,

18  there's twenty more things on there. So --

19        MR. ZUMBRO: Yeah. We apologize. It is in the

20  notice, Your Honor. If you look in the notice, which is the

21  docket 7888, there is an indication in the one, two, three,

22  four, five, sixth paragraph that the proposed order has been

23  reviewed and approved by counsel to both the official

24  creditors' committee as well as the official tort claimants'

25  committee as per Your Honor's instruction.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    THE COURT:  Mr. Zumbro, you've only got one judge

2  operating on a laptop at home, in shelter-in-place, and trying

3  to keep up with you.  And I just simply saw that the order was

4  there and decided to read it.  I didn't take time.  I take your

5  representation.  I take your word for it.  I will sign it later

6  today, and it'll be on the way.

7    MR. ZUMBRO:  Thank you very much.  We appreciate it.

8    MR. KRELLER:  Your Honor --

9    THE COURT:  Okay.  Okay.

10   MR. KRELLER:  Your Honor, this is Thomas Kreller with

11  Milbank LLP on behalf of the official unsecured creditors'

12  committee.  Just for the record, I just want to affirm that Mr.

13  Zumbro is correct.  The official committee has reviewed the

14  order, and we have no objection to its entry.

15   THE COURT:  Okay.  Okay.  Thank you.  All right.

16   Okay.  Let me say one more thing because I might

17  have -- I hope I haven't made more confusion than I intended.

18  I didn't intend any confusion.  But the docket text that I sent

19  out -- one of the docket texts I sent out last night about

20  possibly having a hearing tomorrow was to try to see if there

21  were any open issues on what I'm going to call the indemnity

22  and contribution claims.  But it seems to me that the safer

23  thing to do is just to leave that open and tell Mr. Karotkin to

24  put it on his list to try to get it resolved because it just

25  doesn't lend itself into one little package.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1          So Mr. Karotkin, unless you think something would be

2    beneficial and we'd be well-served by having yet another

3    hearing tomorrow, I will cancel that and leave to you and

4    others to see if you can continue to get some of these

5    unresolved issues resolved.  Is that -- what do you prefer?

6          MR. KAROTKIN:  I think that might be a good idea.  I

7    note that something was just filed by the unsecured creditors'

8    committee in response to what we filed.  I don't know what it

9    says.  I think some of the issues may go to our discussions

10   with the TCC on some of the setoff language.  I'm not that

11   optimistic we will resolve everything with the UCC, but we may

12   be able to do something, so I forgot what time you had

13   scheduled the hearing for tomorrow?

14         THE COURT:  I didn't know.  I didn't set a time --

15         MR. KAROTKIN:  Oh, okay.

16         THE COURT:  -- because I didn't know whether it would

17   be necessary.  I mean, the problem, again, is that things are

18   happening so quickly that I can't keep up with the changes on

19   my own here, and I am mindful of the clock ticking.  It's June

20   11th.  I had a trial and I had matters submitted, and I'm

21   trying to put them all together.

22         MR. KAROTKIN:  Right.

23         THE COURT:  And I would -- I'm prepared to run the

24   risk that if I announce a decision, it'll be still we have to

25   get this order straightened out.  I'm not going to sign an

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1  order that is pages and pages and pages long that has been

2  changed two hours earlier.  And that's not fair to anyone.  So

3  I really mean it.  We might be best served by having a short

4  period of time when the agenda will be to literally go down

5  every single open paragraph and hear what do people agree or

6  disagree on and at the end of the day -- or evening -- have an

7  order that is called the confirmation order.

8         MR. KAROTKIN:  Right.

9         THE COURT:  What I called the OCP.  So I think the

10  safer thing then -- and for the number of people that are

11  hearing today, and I will put something on the docket this

12  afternoon -- I will not have a hearing tomorrow on the

13  unresolved issues that relate to what was framed by Calpine and

14  debtor and the OCC and the Cal Municipal agencies and so on.

15  They're too interrelated.

16         And to the extent that, Mr. Karotkin, you can get some

17  order, that'd be fine -- order in the order -- and somehow keep

18  me informed by filing an up-to-date status statement or

19  something, whatever you feel comfortable doing that can send me

20  the signal.

21         MR. KAROTKIN:  Okay.

22         THE COURT:  So for now, there's nothing I'm scheduling

23  for tomorrow.  I'm continuing to work on the matters submitted.

24  And of course, unrelated to that, there's one open issue

25  between the trustee and the state and federal agencies, but

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1  that doesn't seem to attract anyone else's attention, and I'm

2  dealing with that separately.

3      So all right.  Unless somebody desperately needs to be

4  heard, I'm going --

5      MR. KRELLER:  Your Honor --

6      THE COURT:  Here if I would have known we were going

7  to go this long, I would have gone on the video.

8      Yes, sir, the last person to speak.

9      MR. KRELLER:  Your Honor, I apologize; Thomas Kreller

10 again of Milbank on behalf of the official unsecured creditors'

11 committee.  I did have one item that is not clear to us at this

12 point.  I know there's a docket order requiring that the

13 debtors file a revised confirmation order and plan supplement

14 by the end of the day today.

15     There's no such requirement with respect to seeing a

16 revised plan, and these -- clearly, there are obviously a

17 number of issues kind of popping up in different places.  But

18 until we have a full set of a proposed order revised, a

19 proposed plan revised, and whatever further revisions there

20 might be to a plan supplement, it is awfully difficult to kind

21 of pin down all of the open issues.

22     So I don't know whether there's a contemplation.

23 We've been requesting an updated version of the plan so that we

24 can try and make sure we've captured all of our issues.  I

25 don't know what the contemplation is with respect to seeing a

PG&E Corporation and Pacific Gas and Electric

1  revised plan, but.

2        THE COURT:  Well, I'm not going to ask Mr. Karotkin to

3  answer that question because, again -- and again, it's such a

4  moving target.  I understand your point, Mr. Kreller, and

5  again, I'll go back to I feel the same way.  How can I keep up

6  with an order if the plan or the plan supplement is being

7  changed?  So I'll leave it at that at this point.

8        Okay.  I'm going to --

9        MR. KAROTKIN:  The plan supplement -- oh, I'm sorry,

10 Your Honor.  Mr. Karotkin.

11       THE COURT:  Go ahead.

12       MR. KAROTKIN:  The plan supplement was filed.

13       THE COURT:  Okay.  The plan supplement was filed.  Mr.

14 Karotkin, I will relieve you of the requirement that today you

15 file a proposed order confirming because it may change

16 tomorrow.  So you know what you're up against --

17       MR. KAROTKIN:  Yes.

18       THE COURT:  -- to try to keep me and the principal

19 players informed.  I don't know what else we can do.  And I'm

20 still --

21       MR. KAROTKIN:  Okay.

22       THE COURT:  -- intending to get some sort of a

23 reasoned decision out early next week.  So that's my game plan.

24       MR. KAROTKIN:  Okay.

25       THE COURT:  And I --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    MR. KAROTKIN:  But Your Honor --

2    THE COURT:  Yes?

3    MR. KAROTKIN:  I'm sorry.  I just want to make sure I

4  understood you correctly.  You are not requiring that we file a

5  proposed order tonight?  Tonight's --

6    THE COURT:  No.  Because it's going to -- because it's

7  changing so quickly.  That's why.

8    MR. KAROTKIN:  Yes.  No.  It's fine.  I'm not arguing

9  with you.  I just wanted to make sure I understood.

10   THE COURT:  Okay.  All right.  Thank you for your

11 time, everyone.

12   MR. KAROTKIN:  Thank you.

13   THE COURT:  Talk to you or see you at the next

14 hearing.  Bye-bye.

15   MR. KRELLER:  Thanks, Your Honor.

16   MR. KAROTKIN:  Thank you very much.

17   MR. JULIAN:  Thank you, Your Honor.

18     (Whereupon these proceedings were concluded)

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

# C E R T I F I C A T I O N

I, Colin Richilano, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

/s/ COLIN RICHILANO


eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020


Date:  June 12, 2020

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**ability (6)**
9:3;10:18;11:13;
12:12;16:8,14
**able (5)**
8:4,16;29:11;35:21;
46:12
**absolutely (2)**
5:2;36:18
**accept (1)**
30:20
**accordance (2)**
11:18;14:10
**accorded (1)**
12:11
**according (1)**
5:14
**acknowledge (1)**
27:3
**acknowledged (1)**
8:6
**across (2)**
25:4,4
**action (45)**
6:11;22:10,12,21,24;
23:5,17,25;24:6;25:2,5,
13,16,18;26:7,21,25;
27:9,14,22;28:6,9,12;
29:17,20;30:10,11,14;
31:10,19,22;32:8,23,
24;33:2,13,21,24;34:4,
15;36:5,11,20,21;38:14
**actions (1)**
23:9
**actually (4)**
4:5;14:21;21:14;
35:3
**ad (2)**
4:4;30:21
**add (1)**
30:8
**address (3)**
26:8;35:17,21
**addressed (2)**
34:4,11
**adjudicated (2)**
14:15;15:3
**adjudication (3)**
9:15,16,19
**admitted (1)**
5:19
**Adventist (4)**
3:24;10:7;11:1;
30:16
**adverse (1)**
18:10
**advice (1)**
40:5
**advise (1)**
43:9
**affect**

24:17
**affected (2)**
13:10;28:7
**affirm (1)**
45:12
**afternoon (6)**
3:8,23;4:2,10;40:12;
47:12
**again (20)**
8:23;15:3;16:13;
17:14;21:25;22:1,5,6,
19;28:16,22;32:23;
34:12;42:18;44:17;
46:17;48:10;49:3,3,5
**against (8)**
10:21;14:24;15:7;
24:2;26:1;28:24;30:12;
49:16
**agencies (2)**
47:14,25
**agenda (1)**
47:4
**ago (4)**
17:15,18;39:7;44:14
**agree (7)**
6:3;27:12,20;33:10,
18;42:13;47:5
**agreed (4)**
12:24;20:13,21;42:8
**agreeing (3)**
5:25;9:1;33:10
**agreement (2)**
42:2;43:23
**ahead (4)**
3:17;41:1;43:25;
49:11
**ain't (1)**
19:14
**allow (1)**
8:12
**allowability (1)**
9:21
**allowance (4)**
9:17;15:9,12,15
**allowed (2)**
10:10,19
**allowing (2)**
27:2;28:2
**allows (1)**
10:16
**alluded (1)**
28:9
**almost (3)**
18:15,15;41:6
**along (1)**
28:3
**although (1)**
16:18
**always (1)**
9:19
**ambiguity (1)**
39:25
**amount (1)**

14:9
**and/or (1)**
13:12
**anew (1)**
9:23
**announce (1)**
46:24
**anticipating (1)**
3:9
**anxious (1)**
38:22
**anymore (1)**
12:22
**apart (2)**
27:16;29:6
**apologize (2)**
44:19;48:9
**apparently (1)**
5:24
**appear (1)**
8:24
**applicable (6)**
24:13,15,17,23;27:4;
29:21
**applies (2)**
15:18;42:1
**apply (1)**
25:7
**appreciate (4)**
19:1,2,19;45:7
**appropriate (3)**
20:18,20;34:11
**appropriately (3)**
20:20;21:13;35:17
**approved (3)**
30:15;44:1,23
**approving (1)**
44:12
**arbitration (2)**
26:15,17
**argue (3)**
14:1;22:5;41:2
**argued (3)**
9:14,15;17:4
**argues (1)**
4:22
**arguing (3)**
14:5;17:21;50:8
**argument (9)**
5:18;6:2,16;11:5;
17:4;18:2;37:25;38:1,
12
**arise (1)**
24:6
**arises (4)**
25:23;26:2;27:23;
34:3
**arms (1)**
37:15
**Arnold (1)**
4:3
**around (3)**
37:15;41:25;44:17

**articulate (1)**
9:11
**assert (5)**
9:4;16:9,15;33:25;
34:2
**asserted (1)**
15:7
**assign (10)**
24:9;12;25:15;31:9;
34:7,7,9,9,13,13
**assignable (1)**
24:22
**assigned (23)**
21:14;23:10,24;24:3,
21;26:10;29:19,20;
30:10;31:22;32:8;
33:20,23;34:4,14;36:5,
11,19,21,21;37:1,2;
38:14
**assigning (4)**
22:10;26:15;33:20;
34:13
**assignment (3)**
24:17;27:9;29:25
**assignor (1)**
23:1
**assigns (1)**
29:1
**assume (9)**
8:10,18;23:3;25:10,
11,15,22,24;26:21
**assumed (9)**
13:13;23:16;24:2,21,
25;26:7;29:10;33:15;
37:2
**assumes (2)**
24:9;28:25
**assuming (6)**
22:9,16;26:21;
29:17;42:10
**assumption (7)**
13:19;26:5,19;27:9;
29:4;30:17;31:6
**AT&T (18)**
4:3;5:13,13,16,22;
6:2,8;11:2;12:18;
15:22;19:6;25:9,12,14;
26:14;31:1,5,17
**AT&T's (2)**
30:25;31:14
**attach (1)**
31:2
**attention (1)**
48:1
**attract (1)**
48:1
**authority (1)**
37:5
**available (1)**
5:23
**aware (4)**
13:14,16;43:12,15
**away (2)**

16:7;18:6
**awfully (1)**
48:20

## B

**back (9)**
7:13;8:7,19;21:21;
30:23;39:18,19;44:2;
49:5
**baffled (1)**
16:5
**balance (1)**
23:18
**bankruptcy (11)**
3:4;9:19;10:3,16;
15:10,10,16;25:9;29:6;
33:3;34:10
**BAP (1)**
10:2
**bar (1)**
31:1
**bare (1)**
15:18
**bars (1)**
31:12
**Bartoloma (1)**
10:4
**based (3)**
15:24;27:22;30:17
**basic (2)**
7:15,21
**basically (2)**
15:9;16:6
**basics (1)**
8:7
**basis (4)**
7:17;25:3,7;31:8
**Bay (1)**
19:5
**become (1)**
12:8
**behalf (5)**
3:24;4:4;42:24;
45:11;48:10
**believes (1)**
12:14
**beneficial (1)**
46:2
**benefit (1)**
27:10,11
**benefits (5)**
22:17;23:4;26:21;
27:1,25
**Benjamin (1)**
4:2
**besides (1)**
27:21
**best (1)**
47:3
**bet (1)**
15:23
**better (1)**

Case: 19-30088    Doc# 7932    Filed: 06/12/20    Entered: 06/12/20 17:55:01    Page 52
of 62

18:2
**beyond (2)**
20:17;35:15
**bigger (1)**
37:14
**bit (3)**
5:4;16:23;34:25
**blank (1)**
25:3
**blessing (1)**
39:17
**bogged (1)**
11:21
**both (4)**
5:5,12;44:1,23
**BR (1)**
10:1
**breach (1)**
27:22
**breaches (4)**
26:5;28:10,17,19
**breakdown (1)**
23:23
**brief (1)**
3:9
**briefly (3)**
38:19;42:15,25
**bring (1)**
41:17
**broader (1)**
21:20
**Brown (1)**
8:23
**bundle (1)**
33:11
**burden (2)**
5:9;8:13
**burdens (4)**
22:17;23:4;26:22;
27:25
**burdensome (3)**
8:9;12:15,20
**business (2)**
17:25;25:16
**busy (1)**
17:16
**Bye-bye (1)**
50:14

**C**

**Cal (1)**
47:14
**CALIFORNIA (2)**
3:1,5
**Call (10)**
3:3,10,13,22;4:8,17;
15:15;20:12,12;45:21
**called (1)**
27:14;44:8;47:7,9
**Calpine (1)**
47:13
**came (3)**

7:13;25:19;44:13
**can (34)**
4:11;9:25;12:4;
14:23;19:14;23:16;
24:3,11,16,24;25:4;
27:16;28:3;32:3;33:4;
34:4,7,8,10,11,13,13;
35:16,20;37:21;39:15;
40:13;44:2;46:4;47:16,
19;48:24;49:5,19
**cancel (1)**
46:3
**caption (1)**
36:10
**captured (1)**
48:24
**care (1)**
4:13
**careful (1)**
39:2
**cares (1)**
31:16
**Carlson (4)**
11:4,7,15,23
**carry (1)**
23:4
**case (10)**
5:21;10:3,5;11:18;
12:17;14:13;16:18;
25:2;39:1,24
**cases (1)**
15:14
**cause (21)**
16:2;22:12,21,24;
23:5;25:2,12,15,18;
26:6,25;27:9,14,22;
28:5,12;32:23;33:2,13,
24;34:4
**caused (5)**
5:22;13:12,20;15:1;
19:5
**causes (23)**
22:10;23:9,17,25;
24:5;25:4;26:21;29:17,
20;30:10,13;31:10,19,
22;32:8,23;33:21;
34:15;36:5,11,20,21;
38:14
**causing (2)**
4:21;5:19
**cautious (2)**
38:23,23
**certain (1)**
39:2
**certainly (4)**
15:19;17:10;35:14;
38:6
**cetera (1)**
6:15
**challenged (1)**
10:14
**change (2)**
36:10;49:15

**changed (3)**
40:2;47:2;49:7
**changes (3)**
40:16,17;46:18
**changing (2)**
32:4;50:7
**channeled (2)**
15:1,7
**Chapter (1)**
23:8
**cherry-pick (1)**
28:2
**cherry-picked (1)**
24:8
**chosen (1)**
23:17
**choses (1)**
30:11
**Circuit (3)**
9:22;10:2,2
**circumscribed (1)**
20:21
**circumstance (1)**
26:10
**circumstances (2)**
11:18;26:4
**cite (1)**
9:25
**cited (1)**
9:17
**claim (23)**
5:6;9:5,21;10:9,10,
21;12:19,19;15:24;
16:9,16;22:13;24:1;
25:21,25;26:4,6,10,16;
27:22,23;33:3;34:2
**claimant (2)**
10:8;16:8
**claimants (7)**
3:21,25;6:25;7:4,6,
22;13:18
**claimants' (1)**
44:24
**claims (17)**
5:15;9:15,16,17,19;
10:19;14:9,11,24,25;
15:7,9,12,15;16:7;
28:23;45:22
**clarified (1)**
42:7
**clarify (1)**
5:8
**class (1)**
13:10
**clause (1)**
26:15
**clear (11)**
5:7;8:2;12:16;18:6,
22;26:9;28:12;34:12;
43:21;44:9;48:11
**clearly (4)**
5:8;6:25;7:14;48:16
**clients (1)**

41:10
**clock (1)**
46:19
**close (1)**
17:2
**Code (4)**
10:7,11;33:3;34:10
**colleagues (1)**
20:22
**Collier (1)**
9:17
**colloquy (1)**
22:8
**Comcast (4)**
11:2;15:22;19:6;
31:17
**comfortable (2)**
38:3;47:19
**coming (3)**
7:7;23:8;40:20
**comment (1)**
32:22
**comments (2)**
40:18,20
**committee (9)**
3:21;29:2;30:9;
44:24,25;45:12,13;
46:8;48:11
**company (1)**
18:1
**complained (1)**
39:8
**component (1)**
15:23
**concede (2)**
6:7;11:13
**concept (3)**
10:3;34:14;39:14
**concepts (3)**
22:9;23:11,19
**conceptually (1)**
23:7
**concerned (2)**
21:15;24:15
**concerns (1)**
35:17
**concession (3)**
4:21;14:14;19:3
**conclude (1)**
42:3
**concluded (1)**
50:18
**conclusion (1)**
5:16
**concrete (1)**
28:21
**condemnation (4)**
15:18,24;16:9,16
**conduct (2)**
28:8;29:3
**confirm (1)**
41:21
**confirmation (20)**

20:5,11,24;21:10;
31:8;35:11;38:11,15,
24,25;39:3,11,19;40:3,
14,23,24;41:19;47:7;
48:13
**confirming (1)**
49:15
**conflating (1)**
22:9
**confused (1)**
26:23
**confusing (2)**
4:18;41:16
**confusion (2)**
45:17,18
**connection (4)**
9:4;14:8;15:14;21:9
**consenting (1)**
30:18
**consequence (1)**
29:22
**consider (2)**
9:23;10:20
**consistent (5)**
9:15,16;14:12;18:19;
32:21
**consistently (1)**
18:3
**consummate (1)**
43:22
**contemplation (2)**
48:22,25
**contend (1)**
4:25
**contest (2)**
12:13;15:13
**contested (1)**
10:14
**contesting (1)**
9:3
**context (1)**
21:13
**continue (1)**
46:4
**continuing (1)**
47:23
**contract (58)**
22:10,19,22;23:2,3,
16;24:6,7,9,10,14,14,
22,23;25:1,7,7,8,10,11,
15,19;26:3,6,7,8,13,14,
22;27:1,2,2,5,10,11,21,
23,24,25;28:10,11,19,
25;29:7,9,10,12,14,21,
24;30:1,25;31:2,12,17;
33:15;37:2;39:14
**contracts (13)**
22:14,16;23:25;24:2,
25;25:4;27:8;28:4,15;
29:16;30:14;31:15,16
**contract's (1)**
26:3
**contractual (5)**

Min-U-Script®

Case: 19-30088    Doc# 7932    Filed: 06/12/20    Entered: 06/12/20 17:55:01    Page 53
of 62

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(2) beyond - contractual

22:25;25:14,20;
27:17,22
**contradicts (1)**
7:15
**contrary (1)**
38:12
**contributed (1)**
5:22
**contribution (1)**
45:22
**control (1)**
38:25
**cooperate (1)**
12:21
**cooperating (1)**
12:21
**copy (1)**
31:2
**corporate (1)**
15:20
**Corporation (1)**
3:7
**correctly (2)**
5:20;50:4
**counsel (9)**
3:12,16,20;4:3;18:8;
20:18;31:14;42:13;
44:23
**Counsel's (2)**
38:21,22
**counted (1)**
30:21
**counterparties (2)**
24:2;28:24
**counterparty (2)**
23:6;26:1
**couple (2)**
20:14;35:25
**course (4)**
17:24;27:21;39:9;
47:24
**Court (145)**
3:3,4,4,5,8,15,18,22;
4:1,5,13;5:11,17,17;
6:4,7,11;7:11;8:17,20;
9:19,23;10:12,16,23;
11:1,10,16,20,23;12:3,
7,13,18,24;13:2,3,14,
16;14:1,4,6,8,13,18,20;
15:10,16,17;16:2,15,
22;17:19;18:4,13;19:7,
10,23;20:1,6;21:2,4,7,
17,24;22:2,4,6;25:8,22,
24;26:12,14;27:12,19;
28:17,19;30:5,15;31:5,
18,24;32:1,4,13,15,17,
21;33:1,17;34:16,18,
21;35:4,11,24;36:4,7,9,
13,16,18,23;37:1,7,9;
38:9,20;39:6;40:16;
41:4;42:16,18,22;43:1,
5,8,10,11,12,15,17,19,
25;44:5,12;45:1,9,15;

46:14,16,23;47:9,22;
48:6;49:2,11,13,18,22,
25;50:2,6,10,13
**courthouse (1)**
17:3
**CPO (1)**
10:13
**Cravath (1)**
42:23
**created (3)**
18:21;30:10;31:1
**creates (2)**
10:14;28:14
**credible (1)**
19:4
**creditor (2)**
11:2;39:23
**creditors' (4)**
44:24;45:11;46:7;
48:10
**critical (1)**
37:17;39:10,20
**cross (1)**
29:15
**CRP (7)**
11:12,24;12:10;13:5,
7,11;17:10
**crux (1)**
9:7
**culpability (2)**
5:14;6:2
**currently (1)**
8:4
**cut (1)**
37:10

---

## D

**damage (3)**
6:15;15:19;25:11
**damaged (1)**
29:8
**damages (8)**
5:21;6:13,13,14;
14:15;18:17;26:16;
28:6
**date (2)**
28:10,20
**David (1)**
8:22
**day (7)**
11:25;18:10;39:7;
43:11,13;47:6;48:14
**days (6)**
20:14,23;22:7;39:10;
41:22
**de (6)**
9:22;10:17;16:23;
18:12,20;42:6
**deal (3)**
6:17;24:18;28:14
**dealing (4)**
10:3;38:14;39:21;

48:2
**dealt (1)**
14:24
**debtor (20)**
8:9,10;10:21;14:24;
19:15;22:15;23:8;24:8;
26:5;28:3,9,17,19,23;
29:16;30:1;31:9;37:20;
38:12;47:14
**debtors (10)**
8:10;19:25;20:6;
30:12,22;33:20;34:6,8;
42:24;48:13
**debtors' (1)**
28:8
**December (1)**
30:9
**decide (4)**
12:17;16:14;38:3,4
**decided (2)**
12:13;45:4
**decision (17)**
5:16;9:24;10:13;
11:17;12:1;13:23;
16:24;18:11,24;35:19;
37:17,19;41:19,19;
42:11;46:24;49:23
**decisions (1)**
9:25
**defense (3)**
5:5,23;9:2
**defenses (10)**
4:23,24;5:1,22;18:6,
18;19:3,12;29:21;
31:21
**deferred (1)**
42:7
**defined (12)**
31:22;32:6,7,24;
33:4,5,6,20;36:6,17,19,
20
**definitely (1)**
40:15
**definition (6)**
30:11;32:11,18;
33:25;36:1,23
**definitions (1)**
33:8
**definitive (1)**
39:1
**Delaware (1)**
15:10
**delivered (1)**
30:19
**Dennis (1)**
3:6
**deny (1)**
16:14
**depend (1)**
29:12
**depending (1)**
25:1
**deserves (1)**

25:6
**desperately (1)**
48:3
**despite (1)**
17:4
**determination (7)**
5:6;7:23;12:14;
13:21;18:16;24:24;
27:6
**determinations (2)**
13:6;42:10
**determine (2)**
9:20;10:18
**determined (1)**
34:1
**determines (1)**
13:4
**different (6)**
5:8;23:2,6;27:10;
32:9;48:17
**difficult (7)**
17:22;41:5,5;48:20
**diminishes (1)**
6:15
**directed (1)**
6:23
**directions (1)**
23:2
**disadvantage (1)**
7:17
**disagree (1)**
47:6
**disclosure (2)**
7:2;30:17
**discovery (5)**
8:3,9,16;12:22;17:13
**discretion (1)**
11:17
**discussed (1)**
17:14
**discussing (1)**
20:16
**discussions (2)**
20:8;46:9
**disfavor (2)**
6:25;7:4
**disingenuous (1)**
5:5
**disposed (1)**
42:4
**dispute (2)**
9:10;34:3
**disruptive (1)**
17:24
**distinction (1)**
31:18
**District (1)**
3:5
**disturbingly (1)**
30:22
**dividing (1)**
4:12
**docket (12)**

40:11,14;41:7,17;
44:13,17,17,21;45:18,
19;47:11;48:12
**document (5)**
36:1;37:16;40:1;
41:7;44:9
**documents (7)**
5:7;7:5;18:9;20:10,
24;39:1,3
**DOJ (1)**
14:22
**dollars (2)**
12:2,20
**done (8)**
15:13;21:15;25:4;
31:6;38:17,17,22;40:8
**door (2)**
17:2,8
**down (4)**
11:21;25:11;47:4;
48:21
**draft (1)**
6:24
**drafters (1)**
18:9
**drafting (2)**
6:23;18:8
**due (2)**
12:11;14:12
**dumped (1)**
39:8
**during (3)**
5:5,6;22:8
**duties (1)**
22:22

---

## E

**earlier (3)**
35:16;40:12;47:2
**early (1)**
49:23
**easy (2)**
6:24;28:20
**effect (3)**
14:9;37:12;38:15
**effective (1)**
28:20
**effectively (2)**
8:5;28:2
**elect (1)**
34:2
**elects (1)**
33:25
**element (2)**
10:9;12:14
**elements (1)**
16:17
**else (5)**
16:9;22:13;40:7;
42:21;49:19
**else's (1)**
48:1

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(3) contradicts - else's
Page 54
of 62

Case: 19-30088    Doc# 7932    Filed: 06/12/20    Entered: 06/12/20 17:55:01

encompassed (1)
26:18
end (5)
11:25;18:10;37:25;
47:6;48:14
engagement (1)
12:8
enter (1)
43:25
entered (1)
44:3
entire (1)
13:5
entirety (1)
36:6
entities (1)
15:20
entitled (1)
12:1
entitlement (3)
22:18;27:15;29:5
entity (1)
12:16
entry (1)
45:14
equipment (4)
13:12;16:11,19;19:6
equitable (3)
7:15;12:11;14:12
equity (3)
11:19;43:22,22
essence (1)
9:6
essentially (2)
13:19;17:9
et (1)
6:15
eternity (1)
17:18
even (9)
16:2;17:7,14,22;
19:10;22:24;29:10;
37:14;38:2
evening (3)
40:15;44:13;47:6
event (1)
33:9
everybody (2)
41:16,25
everybody's (3)
23:10;38:16;42:1
everyone (2)
3:8;50:11
evidence (1)
19:5
evidentiary (4)
8:4,13;31:2,13
exactly (3)
6:5;15:8;43:13
example (4)
24:1;26:5;28:21;
29:24
except (1)

23:9
exclusion (1)
30:13
excuse (4)
21:10;29:2;42:11;
44:9
executor (1)
24:22
executory (6)
22:14;23:2,16;30:14;
31:11;33:15
exercise (2)
7:18,21
exercised (1)
7:1
exhibits (1)
39:3
existed (2)
26:7;29:6
exit (4)
12:13;15:2;16:15;
43:10
expansive (1)
30:11
expect (1)
6:7
expectation (1)
40:13
expected (1)
3:11
expecting (1)
43:18
expert (1)
16:19
explain (1)
26:23
expressly (1)
29:25
extent (6)
16:5,13,17;30:1;
40:6;47:16
extra (1)
7:10

F

fact (6)
5:19;9:6;11:13;
13:12;19:2;24:22
factor (2)
16:11,20
facts (1)
25:6
failures (1)
19:6
fair (6)
12:10;14:11;33:17;
41:9,9;47:2
fairest (1)
19:14
fairness (2)
7:21;11:19
falls (1)

33:25
familiar (2)
23:11;24:7
federal (1)
47:25
feel (4)
37:14;38:3;47:19;
49:5
few (2)
20:22;30:8
fifty-page (1)
41:7
figure (1)
33:8
file (6)
20:3;25:9;43:10;
48:13;49:15;50:4
filed (11)
19:15;20:6;35:11;
37:16;38:13;40:12,23;
46:7,8;49:12,13
filing (1)
47:18
financing (1)
43:10
find (1)
33:4
fine (3)
21:17;47:17;50:8
Finish (3)
3:19;34:25;35:5
fire (15)
4:21;5:15,19,22,23;
13:12,18,20,22;16:3,
11,20;30:18;31:10;
39:23
fires (3)
16:10;19:5;30:12
first (6)
23:21;30:8;37:19;
39:7;42:4;43:2
first-year (1)
33:1
five (1)
44:22
floodgates (1)
17:5
flow (1)
29:22
flows (1)
27:1
fly (1)
21:16
focused (1)
29:23
focusing (1)
22:20
following (1)
3:12
forgot (1)
46:12
forward (2)
25:12;29:1

found (2)
4:18;14:11
four (1)
44:22
frame (1)
6:10
framed (1)
47:13
framing (1)
9:12
FRANCISCO (1)
3:1
frankly (1)
18:7
friends (1)
16:5
front (3)
8:24;15:4,9
Fulbright (1)
3:24
full (2)
9:2;48:18
fully (1)
5:5
fund (1)
14:23
funding (1)
44:12
further (7)
6:16;40:25;42:8,8,8,
9;48:19

G

game (1)
49:23
gave (3)
10:17;25:18;30:10
general (1)
28:22
generally (1)
27:25
gentleman (1)
11:4
gets (3)
18:10;30:24;40:1
given (1)
15:9
gives (2)
9:11;27:13
glad (1)
44:5
goal (2)
6:25;41:10
goes (7)
7:23;11:24;20:17;
28:25;33:12,13;35:15
Goldblatt (1)
4:5
Good (7)
3:8,23;4:2,10;8:25;
39:23;46:6
govern (3)

26:3;27:23;28:5
governed (1)
29:14
gratified (1)
18:5
great (2)
11:11;28:14
grounds (1)
27:4
group (2)
4:4,6
growing (3)
39:11,11,12
guess (2)
5:13;17:3

H

half (2)
35:14;39:7
hand (3)
40:4,22;41:13;43:4
handed (1)
17:9
happen (10)
10:23;11:14;12:11;
13:2,2,21;26:9;28:5;
29:17;40:9
happened (1)
25:17
happening (1)
46:18
happens (1)
13:5
happy (1)
8:10
harm (2)
25:17;29:5
hear (6)
3:11;4:6,11;21:19,
22;47:5
heard (6)
8:25;9:24;20:7;
42:15,25;48:4
hearing (13)
3:9;19:21;40:24;
41:8,22;42:3,9;45:20;
46:3,13;47:11,12;
50:14
held (1)
12:14
here's (1)
16:22;31:11
herring (1)
5:4
historically (1)
35:25
history (1)
33:7
hoc (2)
4:4;30:21
hold (1)
7:11

Case: 19-30088    Doc# 7932    Filed: 06/12/20    Entered: 06/12/20 17:55:01    Page 55
of 62

hollow (1)
8:15
home (1)
45:2
Honor (75)
3:14,23;4:2,10;5:2;
6:1,20;7:3,20,25;8:18;
9:1,11,18;10:1,6,11,12,
20;11:12,16;12:9;13:7,
9;14:7,11,25;15:2,6,11;
16:10,12;17:18;19:4,
20,22;20:15;21:8;22:1;
23:24;24:11,12,24;
25:3;26:2;29:11,14,15,
18,24;33:19;34:22;
35:7,18;36:22;38:6,7,8,
18;39:4;40:19,21;
42:15,23;43:3;44:3,20;
45:8,10;48:5,9;49:10;
50:1,15,17
Honorable (1)
3:6
Honor's (4)
6:21;8:14;30:7;
44:25
hope (4)
4:10;17:6;35:18;
45:17
Hopefully (3)
38:4,5;44:2
hoping (3)
42:24;43:19,24
horrific (1)
15:1
host (1)
9:25
hours (1)
47:2
housekeeping (2)
42:17,25
hundred (1)
12:2
hung (1)
39:20
hypothetical (4)
6:2;11:24,24;12:1

                I

idea (1)
46:6
identify (1)
28:23
imagine (2)
11:14;15:22
impacts (1)
20:6
impediment (1)
12:15
implementing (1)
39:3
implicate (1)
28:7

implicates (1)
9:21
implications (2)
28:11;29:21
important (7)
7:19;9:4;19:8;35:8;
38:10,13;39:5
impose (1)
31:6
imposing (1)
5:9
imposition (1)
17:12
impossible (1)
41:6
inappropriate (1)
17:2
inclined (7)
23:19;37:11;41:21;
43:20,25;44:4,6
include (1)
31:21
included (2)
30:11,16
includes (2)
9:10;31:23
including (3)
5:22;30:15;39:2
inconsistent (1)
13:5
incorporated (1)
38:11
incumbent (1)
31:1
Indeed (1)
16:9
indemnity (2)
41:14;45:21
independent (3)
24:1;25:13;36:1
indicate (1)
41:21
indicated (1)
40:10
indication (2)
44:15,21
indiscernible (7)
10:22;12:24;15:8;
26:5,24;27:19;31:7
individuals (1)
11:3;15:21
informed (2)
47:18;49:19
initiate (1)
6:11
injured (1)
27:16
injury (5)
15:1,7,21,23;16:12
inquiry (1)
25:6
instead (1)
31:13

instruction (1)
44:25
intact (1)
19:3
integral (1)
23:15
intend (1)
45:18
intended (2)
7:14;45:17
intending (1)
49:22
intents (1)
10:15
internet (2)
25:9,10
interpretation (1)
33:18
interrelated (1)
47:15
interrupted (1)
35:1
into (8)
11:15;15:8;16:15;
18:13;25:6;38:11;39:8;
45:25
inverse (4)
15:18,24;16:9,16
involved (4)
11:5;16:25;40:7;
41:10
involving (1)
13:18
issue (36)
3:10;4:17,18,22;5:9;
6:1;8:16;11:14;15:5;
16:6,13,25;17:13;
19:13,16,18;20:4;
21:20;24:3,5,18;25:1,
2;26:9;31:17;35:20;
37:17,19;38:7;39:5;
41:13,18;42:7;43:22,
23;47:24
issues (22)
8:8;17:11;18:20;
20:17,23;21:9,11;
23:24;25:7;35:22;
40:22;41:3,11;42:5;
44:2;45:21;46:5,9;
47:13;48:17,21,24
item (1)
48:11

                J

Jeffries (1)
10:1
John (2)
3:16,20
Judge (20)
3:8;8:22;9:9,14,22;
11:9;17:12;6,9,23;
13:25;14:3,17;15:9;

16:1,4;19:1,19;35:3;
45:1
judgement (1)
14:8
judgment (1)
29:15
judicial (14)
5:6;6:22;7:1,9,18,23;
8:3,14;9:8;10:17;
13:21;39:17;42:10,11
Julian (5)
20:21;38:6;40:19,21;
50:17
jumped (1)
5:3
juncture (1)
24:25
JUNE (3)
3:1;32:5;46:19
jurisdiction (1)
9:20
jury (1)
42:11
justice (1)
11:19

                K

KAROTKIN (69)
19:20,22,24,24;20:2;
21:2,3,6,8,21,23;23:13;
33:18,19;34:17,19,23,
24;35:2,3,4,5,6,24;
36:3,5,8,12,14,17,19,
25;37:4,8;38:18,21;
39:7;40:5,15,17,20;
41:23;42:19,21;43:1,3,
6,11;45:23;46:1,6,15,
22;47:8,16,21;49:2,9,
10,12,14,17,21,24;
50:1,3,8,12,16
Karotkin's (1)
37:12
keep (11)
4:23;7:7;23:18;28:3;
35:8;39:22;45:3;46:18;
47:17;49:5,18
keeping (1)
23:8
keeps (2)
32:4;39:11
kind (7)
26:8;31:13;35:1;
40:22;41:2;48:17,20
known (1)
48:6
knows (2)
10:11;16:12
KRELLER (8)
45:8,10,10;48:5,9,9;
49:4;50:15

16:1,4;19:1,19;35:3;
45:1

                L

language (19)
7:3,5;20:4,9,13,20,
22;21:1;24:16,19;
30:16;35:7,9,12,16,23;
38:7;41:14;46:10
laptop (1)
45:2
large (4)
7:4;11:1;15:23;
41:14
last (3)
7:25;15:17;17:15;
25:10;37:22;41:15;
44:13;45:19;48:8
later (2)
39:10;45:5
latest (3)
31:3;40:11,14
law (9)
11:14;22:11;24:13,
15,17,23;27:5,7;33:1
lawyers (1)
39:21
lead (1)
8:21
least (3)
34:24,25;41:19
leave (6)
18:4;33:7;37:23;
45:23;46:3;49:7
legal (3)
25:7;27:4;37:5
legislative (1)
33:7
legitimate (1)
7:17
lend (1)
45:25
less (1)
33:23
level (1)
12:1
liability (8)
9:10,21;12:15;13:4;
15:4,13;18:16;30:2
liable (1)
14:14
limitations (2)
26:4;28:6
limited (1)
3:10
linked (1)
29:3
links (1)
36:24
list (2)
3:10;45:24
listen (1)
5:12
literal (1)

Case: 19-30088    Doc# 7932    Filed: 06/12/20    Entered: 06/12/20 17:55:01    Page 56
of 62

18:20
**literally (1)**
47:4
**little (8)**
5:4;9:13;16:23;
17:16,16;34:25;37:12;
45:25
**live (1)**
9:9
**LLP (1)**
45:11
**logic (1)**
34:8
**long (3)**
3:10;47:1;48:7
**longer (2)**
22:19;37:13
**Look (8)**
16:22;19:7;29:7;
32:7,17;35:6;44:7,20
**looking (3)**
32:9,11;41:6
**loosy-goosy (1)**
16:23
**loses (1)**
4:24
**loss (1)**
25:16
**lot (3)**
30:7;38:16;41:14

## M

**MacConaghy (32)**
3:13,14,16,16,20,20;
4:11,14;8:21;14:1,3;
17:4;21:24;30:6,7;
31:8,20,25;32:3,11,14,
16,20,25;33:9,16;
34:22;35:1;37:10;38:8,
10;40:6
**mainly (1)**
20:3
**maintain (1)**
27:7
**maintains (1)**
28:1
**major (1)**
41:11
**majority (1)**
13:10
**makes (3)**
17:21;39:15;43:21
**making (3)**
13:23;17:8;31:13
**management (1)**
28:25
**mandatory (1)**
26:15
**many (4)**
15:6,14,14;41:2
**master (1)**
14:23

**material (2)**
8:2;28:11
**Matter (8)**
3:6;5:15;6:12;9:23;
21:19;27:7;42:17,25
**matters (2)**
46:20;47:23
**may (31)**
5:14;7:3,18;16:19;
18:18;22:24;25:1;26:4,
6,8;27:3;28:4,11,24;
29:11,13,13,20,22,25;
30:12;31:14;34:22;
35:21,21;41:1,19;
42:15;46:9,11;49:15
**maybe (7)**
5:19;16:23;22:7,8,
10;24:11;44:16
**mean (9)**
6:9;12:5;17:13;
25:25;33:8;39:15;
41:24;46:17;47:3
**meaning (1)**
10:15
**means (3)**
9:22,23;22:12
**measure (2)**
15:19;41:14
**meet (1)**
8:4
**memorialized (1)**
42:12
**mentioned (2)**
35:16;43:11
**merged (1)**
23:12
**met (1)**
39:7
**might (13)**
15:21;22:20;23:21;
27:13;29:24,24;31:20;
34:2;42:24;45:16;46:6;
47:3;48:20
**Milbank (1)**
45:11;48:10
**million (1)**
12:19
**mind (9)**
17:10;18:23;22:17;
23:13;26:18;35:8;
39:22;41:12,18
**mindful (1)**
46:19
**Mintz (37)**
4:1,2,3,6,14,16;5:2,
13;6:1,5,20;8:18;9:1,
12;19:7,10;21:25;22:1,
3,3,5;23:21,23;25:8,21,
23;26:2,13,25;27:18,
20;28:18;29:11;34:6;
35:22;37:24;40:6
**minute (2)**
31:5;32:5

**minutes (2)**
40:2;41:8
**mix (1)**
13:23
**mixed (1)**
23:20
**modifications (3)**
20:10,11;21:10
**modified (1)**
8:2
**Molton (36)**
4:8,9,10,14;8:21,22,
22;10:23,24,25;11:9,
11,22;12:6,9,23;13:1,7,
15,25;14:3,5,7,13,17,
19,21;16:1,4,25;17:18;
19:1,8,19,21;42:12
**Molton's (1)**
40:7
**moment (2)**
38:1;39:11
**money (1)**
7:12
**Montali (3)**
3:6,9;4:14
**month (1)**
44:14
**months (1)**
39:10
**more (12)**
12:25;18:22;19:5;
22:20;28:21;33:23;
39:24;40:2;41:16;
44:18;45:16,17
**morning (3)**
37:16;40:24;44:15
**mostly (1)**
37:11
**moving (4)**
39:9;40:25;41:3;
49:4
**much (2)**
45:7;50:16
**Mulligan (1)**
17:21
**multi-tier (1)**
11:25
**Municipal (1)**
47:14
**myself (2)**
26:17;41:6

## N

**name (2)**
36:15;42:18
**named (1)**
11:4
**names (1)**
3:11
**narrow (4)**
17:5;21:19;37:13;
41:13

**necessarily (1)**
23:15
**necessary (1)**
46:17
**need (6)**
4:6;8:1,8;9:9;38:23;
40:9
**needs (2)**
20:20;48:3
**negligence (3)**
5:10;8:6;13:11
**negligent (3)**
11:8;13:20,22
**negotiation (1)**
40:25
**new (5)**
20:4;35:9,23,23;
41:23
**next (6)**
18:12;20:13,22;41:7;
49:23;50:13
**night (1)**
45:19
**Ninth (3)**
9:22;10:2,2
**nonbankruptcy (4)**
24:13,15,23;27:4
**Northern (1)**
3:5
**Norton (1)**
3:24
**note (3)**
19:15;20:8;46:7
**noted (8)**
12:9;13:9,10;14:25;
15:2;19:4;20:2,5
**notice (2)**
44:20,20
**notion (4)**
6:1;7:8;24:3,7
**novo (6)**
9:22;10:17;16:24;
18:12,21;42:6
**number (2)**
14:24;47:10;48:17

## O

**Object (1)**
31:8
**objection (5)**
9:8,14;10:8,16;45:14
**objectors (22)**
4:19;5:1;9:5,7,14;
10:7,7,13,18;13:3;16:6,
8,24;17:2,8;18:2,5,10;
19:10;30:22;37:21;
42:5
**objectors' (1)**
16:14
**objector's (1)**
42:12
**obligations (2)**

**necessarily** column continues...

22:23;25:24
**observation (1)**
22:7
**Obviously (6)**
18:1;21:20;22:21;
24:23;37:14;48:16
**OCC (1)**
47:14
**o'clock (2)**
37:16,17
**OCP (1)**
47:9
**off (5)**
7:12;8:21;30:8;
37:10;44:16
**offering (1)**
43:22
**official (4)**
3:21;44:23,24;45:11,
13;48:10
**offsets (2)**
6:14;19:3
**old (1)**
22:11
**once (1)**
35:18
**one (35)**
4:17;8:19,25;12:25;
13:3,8;14:15;15:11;
16:8;18:17;25;18:10;
19:5,11;22:2,21;23:22;
24:2;26:25;28:1,15;
32:5;36:14;37:19;39:6,
13;43:20;44:8,21;45:1,
16,19,25;47:24;48:11
**ones (1)**
15:20
**one-sentence (2)**
39:19;40:3
**only (9)**
3:9;4:22;17:14,15;
34:7,8,13,13;45:1
**oOo- (1)**
3:2
**open (5)**
45:21,23;47:5,24;
48:21
**opening (2)**
17:8;22:6;32:22
**operate (1)**
36:11
**operates (1)**
10:15
**operating (3)**
13:18;18:3;45:2
**operation (1)**
10:6
**operative (2)**
12:8;40:1
**opinion (1)**
12:10
**opponent (1)**
6:9

Case: 19-30088    Doc# 7932    Filed: 06/12/20    Entered: 06/12/20 17:55:01    Page 57
of 62

**opportunity (2)**
  25:16;35:19
**opposing (1)**
  31:7
**oppressiveness (1)**
  9:13
**opt (1)**
  11:15
**optimistic (1)**
  46:11
**opt-out (1)**
  10:12
**oral (2)**
  11:5;17:4
**order (49)**
  3:3;20:5,12,24;
  21:10;24:20;35:11;
  38:11,15,24,25;39:3,9,
  11,16,19,25;40:3,11,
  14,21,23,24;41:24,25;
  42:1,8;43:10,21,24;
  44:1,10,12,22;45:3,14;
  46:25;47:1,7,7,17,17,
  17;48:12,13,18;49:6,
  15;50:5
**orderly (1)**
  17:24
**others (4)**
  13:10;21:22;39:4;
  46:4
**Otherwise (1)**
  28:1
**ought (2)**
  18:3;39:9
**out (22)**
  6:5,13;18:4;20:13;
  21:5,13;23:8,14;28:12;
  29:5;33:4;35:16,20;
  36:9;39:4;40:4;41:12,
  17;45:19,19;46:25;
  49:23
**outcome (3)**
  5:24;6:3,21
**outset (2)**
  19:13;37:24
**outside (1)**
  23:25
**over (6)**
  18:20;20:13;22:20;
  32:24;39:1;44:13
**overcome (1)**
  18:17
**overly (1)**
  12:15
**override (2)**
  30:4;34:10
**oversimplification (1)**
  18:8
**overwhelming (2)**
  13:10;14:9
**overwhelmingly (1)**
  13:9
**overworked (1)**

  22:7
**own (4)**
  17:3;28:8;41:18;
  46:19

**P**

**P&G (1)**
  16:19
**package (1)**
  45:25
**pages (4)**
  22:16;47:1,1,1
**paid (1)**
  7:9
**papers (1)**
  39:9
**paragraph (7)**
  20:16;34:20;35:7,14;
  43:24;44:22;47:5
**part (5)**
  10:14;13:4;17:9;
  22:19;25:18
**partially (1)**
  41:2
**participated (1)**
  11:5
**particular (3)**
  13:22;14:8;33:24
**particularly (1)**
  20:15
**parties (3)**
  24:20;30:13;40:21
**party (5)**
  22:22;27:16,24;
  28:14;29:1
**pass (1)**
  28:3
**payment (1)**
  10:19
**people (5)**
  4:6;30:19;33:12;
  47:5,10
**per (1)**
  44:25
**perceive (1)**
  31:18
**perception (1)**
  18:19
**perhaps (3)**
  17:22;18:22;22:19
**period (1)**
  47:4
**permit (2)**
  24:14;27:8
**permits (1)**
  24:15
**permitted (3)**
  8:3;25:5;27:3
**person (3)**
  12:16;29:3;48:8
**personal (1)**
  15:6,21,22

**persuaded (2)**
  7:12;23:19
**pertaining (1)**
  41:13
**PG&E (15)**
  3:6;4:21;5:19;7:16;
  8:3,5;11:7;12:21;13:4,
  20;16:2;17:12;23:7,14;
  24:1
**PG&E's (3)**
  5:9;13:11;16:10
**phase (1)**
  37:24
**phone (1)**
  11:6
**phrase (2)**
  22:20;31:19
**phrased (1)**
  24:16
**phrasing (1)**
  5:20
**physical (1)**
  15:1
**picked (1)**
  30:7
**picture (1)**
  13:17
**piece (1)**
  29:23
**pin (1)**
  48:21
**place (1)**
  40:13
**placed (1)**
  26:4
**places (1)**
  48:17
**plainly (1)**
  10:8
**plaintiff (1)**
  23:1
**plaintiffs (2)**
  18:16;30:18
**plan (32)**
  8:1,5;20:18;22:15;
  30:16,20,23;31:9,23,
  25;32:4;35:15;36:22;
  38:25;39:14,15,15,15;
  41:21;44:12;48:13,16,
  19,20,23;49:1,6,6,9,12,
  13,23
**plan- (1)**
  39:2
**play (2)**
  6:5;28:12
**players (1)**
  49:19
**pleading (2)**
  20:3;31:3
**please (1)**
  41:17
**pleasure (1)**
  8:23

**PM (1)**
  3:1
**point (21)**
  5:3;6:8,8,18;7:25;
  8:19;12:4;14:2,2,5;
  15:8;17:3;29:14;35:5;
  36:14;37:15;38:2;42:1;
  48:12;49:4,7
**points (1)**
  30:8
**popping (1)**
  48:17
**Porter (1)**
  4:3
**portion (1)**
  15:19
**position (8)**
  4:17;9:9,12;12:16;
  24:8;25:3;29:15;38:2
**possible (1)**
  34:2
**possibly (1)**
  45:20
**post- (1)**
  28:19
**post-confirmation (1)**
  14:22
**post-effective (1)**
  28:10
**precluded (1)**
  8:5
**preclusive (1)**
  38:15
**predicate (1)**
  8:6
**prefer (1)**
  46:5
**prejudice (2)**
  24:20;28:14
**prejudiced (1)**
  7:20
**prepared (3)**
  18:24;38:6;46:23
**pre-petition (1)**
  29:3
**present (1)**
  3:12
**presented (1)**
  42:5
**preserve (2)**
  11:3;26:16
**preserved (3)**
  5:5;9:3;29:13
**presiding (1)**
  3:6
**pressure (1)**
  38:16
**presume (3)**
  12:3;16:2;26:15
**presumed (1)**
  16:12
**presumption (5)**
  4:20;5:18;13:19;

  18:3,14
**pretty (4)**
  6:24;11:2;33:2;
  34:12
**prevented (1)**
  30:25
**previously (2)**
  9:25;40:10
**principal (2)**
  39:21;49:18
**principle (1)**
  15:18
**printed (1)**
  44:14
**prior (1)**
  9:7
**probably (3)**
  33:5,10;39:8
**problem (6)**
  7:5;18:21;34:19;
  39:21;44:7;46:17
**problematic (1)**
  21:3
**problems (1)**
  39:22
**proceeding (3)**
  10:15;14:8;16:21
**proceedings (1)**
  50:18
**process (17)**
  5:6,7,16;6:10;7:2,10,
  23;9:17,19;12:11;
  13:17;14:12;15:12,15;
  26:19;29:6;41:1
**processing (1)**
  14:10
**prohibit (1)**
  29:25
**proof (1)**
  16:20
**proposed (19)**
  10:14;20:5,9,11,24;
  21:1,10;24:18;28:13;
  35:7,9,11;43:10,24;
  44:22;48:18,19;49:15;
  50:5
**proposition (1)**
  9:18
**prosecute (1)**
  16:15
**prospective (2)**
  23:1,1
**protocol (2)**
  14:11;16:7
**protocols (1)**
  11:12
**prove (11)**
  5:9;6:12,13,14;8:8,
  16;10:9;11:7;16:17;
  17:8;18:17
**proves (1)**
  6:14
**provide (2)**

Case: 19-30088    Doc# 7932    Filed 06/12/20    Entered 06/12/20 17:55:01    Page 58
of 62

25:9;38:25
**provided (2)**
11:19;35:15
**provides (2)**
10:8;13:11
**provision (5)**
8:1;30:3;31:11;
38:14;43:20
**provisions (7)**
10:6;23:10;26:8,17;
28:3,4,7
**punitive (1)**
7:14
**purport (1)**
16:14
**purpose (1)**
13:11
**purposes (1)**
10:15
**pursuant (4)**
10:13,20;24:22;
29:20
**put (8)**
5:20,21;19:10;43:20,
20;45:24;46:21;47:11
**putting (1)**
13:23

**Q**

**quick (2)**
6:20;12:25
**quickly (3)**
44:2;46:18;50:7

**R**

**radar (1)**
17:23
**raise (4)**
4:25;40:22;41:13;
43:4
**raised (4)**
16:6;21:9;35:22;
44:5
**raises (1)**
37:16
**ramifications (1)**
26:6
**rather (2)**
25:19;33:13
**re (1)**
10:1
**reach (1)**
26:10
**read (3)**
5:14;41:8;45:4
**real (1)**
39:17
**really (6)**
5:4;17:1;18:12;
21:12;22:13;47:3
**reason (2)**

37:5;38:24
**reasoned (1)**
49:23
**reasons (1)**
21:20
**Rebecca (1)**
3:23
**recall (2)**
7:3;17:13
**recent (1)**
20:9
**record (4)**
19:2;42:4,19;45:12
**recoupment (1)**
21:11
**recoupments (1)**
31:21
**red (1)**
5:4
**reference (1)**
32:18
**referring (1)**
10:10
**regard (4)**
5:7;29:13,19;38:8
**regarding (1)**
27:7
**regardless (1)**
7:6
**registration (1)**
43:23
**reiterating (1)**
42:4
**reject (1)**
29:9
**rejected (2)**
29:7;37:3
**relate (1)**
47:13
**related (3)**
30:12;33:14;39:22
**relating (2)**
21:11;30:14
**relationship (5)**
22:25;25:14,20;
27:17;29:1
**relatively (1)**
20:4
**relieve (1)**
49:14
**remains (1)**
40:24
**remember (1)**
43:13
**reminded (1)**
9:18
**rendered (1)**
9:25
**reorganized (1)**
17:25
**repeatedly (1)**
15:14
**reply (1)**

38:18
**REPORTER (1)**
3:4
**represent (2)**
5:13;14:21
**representation (1)**
45:5
**request (1)**
38:22
**requesting (1)**
48:23
**require (1)**
8:13
**requirement (2)**
48:15;49:14
**requires (1)**
40:21
**requiring (2)**
48:12;50:4
**reserve (2)**
35:19;40:18
**reserved (1)**
29:19
**resolution (5)**
5:16;6:10;20:25;
37:22;42:6
**resolve (3)**
38:5,7;46:11
**resolved (4)**
41:15;43:23;45:24;
46:5
**respect (14)**
14:25;15:5,11;16:11,
12;20:3,15,23;23:24;
24:5,20;28:5;48:15,25
**respond (2)**
17:12;34:22
**response (3)**
19:15;30:15;46:8
**responsibilities (1)**
4:12
**restating (1)**
33:17
**restitution (1)**
14:23
**result (1)**
13:8
**retain (1)**
27:16
**retaining (2)**
27:24,25
**retains (3)**
9:20;11:13;15:13
**retention (1)**
20:19
**review (16)**
5:6,6;6:22;7:1,9,18,24;
8:3,14;9:8,22;10:17;
12:10;18:13;42:6,11;
44:15
**reviewed (2)**
44:23;45:13
**revised (5)**

48:13,16,18,19;49:1
**revisions (1)**
48:19
**rich (1)**
9:13
**right (50)**
3:18;4:16;5:17;6:22;
7:1,9,18,19,21;8:14,15,
20;9:10,20;10:18,19;
11:10;15:13;17:6,19;
19:13,14,14,16;21:5;
22:11,13;23:13,14,15;
26:18;27:1,10,14;
28:13;29:2,8,9;30:23;
32:6;34:4,7,9;37:3;
40:16;45:15;46:22;
47:8;48:3;50:10
**R-I-G-H-T (1)**
33:13
**righting (1)**
26:25
**rights (47)**
9:2,4;11:4;20:7,19;
21:12,14;22:10,21,22;
23:8,24;24:5,9,12,20,
21;25:24;26:13;28:1,4;
29:13,18,19;30:10,19,
23,24;31:10,19,20,22;
32:7,8,22;33:4,6,8,11,
21;34:14;36:5,9,19,21;
40:18;43:23
**R-I-G-H-T-S (1)**
36:1
**rise (2)**
25:18;27:13
**risk (2)**
41:24;46:24
**Rose (1)**
3:24
**round (1)**
23:21
**RSA (2)**
30:9,15
**Rudick (1)**
8:23
**rule (2)**
7:21;25:3
**rules (4)**
12:7;13:8;17:9;
39:15
**ruling (1)**
6:22
**run (2)**
16:16;46:23
**rupture (1)**
14:25

**S**

**safer (3)**
37:20;45:22;47:10
**same (8)**
7:6,22;8:12;18:13;

27:15;30:16;35:20;
49:5
**SAN (1)**
3:1
**satisfied (3)**
17:1;18:2;21:4
**saw (2)**
31:9;45:3
**saying (4)**
16:16;31:14;34:6;
41:17
**schedule (2)**
32:8;33:14
**scheduled (1)**
46:13
**scheduling (1)**
47:22
**school (2)**
22:11;33:1
**scope (4)**
20:17;33:21;34:5,14
**second (9)**
8:19;9:11;19:18;
20:3;23:22;35:6,14;
42:7;44:8
**Section (5)**
10:10;15:12;24:9;
32:9;33:3
**seeing (2)**
48:15,25
**seek (1)**
8:2
**seem (4)**
11:10;27:17;33:9;
48:1
**seems (6)**
12:5;23:11;30:22;
41:1;44:13;45:22
**Self-contained (2)**
36:8,8
**send (1)**
47:19
**sending (1)**
41:16
**sent (2)**
45:18,19
**sentence (2)**
19:11;23:13
**separate (6)**
23:11;25:13;27:5,14,
15;36:20
**separately (1)**
48:2
**separates (1)**
22:18
**separating (1)**
29:5
**serious (1)**
20:17
**served (1)**
47:3
**service (1)**
25:9

Case: 19-30088    Doc# 7932    Filed: 06/12/20    Entered: 06/12/20 17:55:01    Page 59
of 62

**session (1)**
  3:5
**Sessions (1)**
  10:4
**set (2)**
  46:14;48:18
**setoff (4)**
  9:2;20:19;21:11;
  46:10
**setoffs (1)**
  31:21
**setting (1)**
  18:21
**settle (1)**
  41:23
**settlement (3)**
  7:16;8:7;13:8
**seventeen (1)**
  39:10
**seventh (1)**
  40:12
**sever (1)**
  27:2
**severability (1)**
  27:8
**Shannon (1)**
  15:10
**shelter-in-place (1)**
  45:2
**short (1)**
  47:3
**shorter (1)**
  37:25
**show (1)**
  12:14
**showing (3)**
  8:4;31:2,14
**sic (2)**
  16:19;44:11
**side (7)**
  4:17,19,22,24;5:21;
  6:14,18
**sides (1)**
  5:12
**sign (3)**
  43:18;45:5;46:25
**signal (1)**
  47:20
**signed (1)**
  44:16
**significant (1)**
  20:10
**significantly (1)**
  20:6
**signing (1)**
  41:25
**similar (2)**
  21:9;33:2
**simmer (1)**
  37:12
**simple (1)**
  18:1
**simplifying (1)**

**22:20**
**simply (2)**
  18:23;45:3
**single (3)**
  33:5;34:2;47:5
**sitting (2)**
  37:5;41:6
**situation (2)**
  17:22;28:13
**sixth (1)**
  44:22
**size (1)**
  7:6
**so-called (1)**
  41:12
**solved (1)**
  7:4
**somebody (8)**
  22:12,13;23:5;26:16;
  29:9;41:17;42:21;48:3
**somehow (5)**
  17:7;23:15;27:14;
  30:25;47:17
**someone (3)**
  28:14;29:5,8;42:14
**somewhat (1)**
  30:22
**somewhere (2)**
  5:17;6:11
**sorry (9)**
  3:17,18;18:22;19:24;
  27:15;42:22;43:6;49:9;
  50:3
**sort (3)**
  33:1;39:25;49:22
**sorted (1)**
  21:13
**sorts (1)**
  31:23
**sought (2)**
  7:8,19
**speak (1)**
  48:8
**speaking (1)**
  4:3
**special (3)**
  3:16,20;14:23
**specifically (1)**
  23:9
**specifics (1)**
  11:21
**speeches (1)**
  40:2
**speed (1)**
  41:17
**spoke (1)**
  43:7
**spokesperson (1)**
  4:7
**stack (1)**
  44:14
**standards (1)**
  7:22

**start (3)**
  4:16;5:18;18:20
**started (2)**
  7:2,8
**starting (1)**
  30:9
**state (1)**
  47:25
**stated (1)**
  21:20
**statement (4)**
  7:2;16:5;30:17;
  47:18
**status (1)**
  47:18
**statutory (1)**
  9:16
**stays (1)**
  21:5
**step (1)**
  18:12
**Stephen (1)**
  19:24
**stick (3)**
  18:25;21:18;37:19
**still (14)**
  6:12;17:6;25:18;
  26:18,22;27:12;29:8;
  40:20,25;41:3,11,18;
  46:24;49:20
**stipulation (1)**
  13:20
**straightened (1)**
  46:25
**stuff (1)**
  31:23
**subject (3)**
  15:11;32:22;40:25
**subjected (1)**
  7:22
**submitted (2)**
  46:20;47:23
**substantial (2)**
  16:11,20
**substantive (1)**
  36:10
**successful (1)**
  6:10
**successor (1)**
  10:22
**sue (8)**
  23:5,14;29:3,5,8,9,
  10;33:12
**suffered (4)**
  15:21,22;25:11,17
**suggest (1)**
  24:19
**suggested (1)**
  35:12
**suggesting (4)**
  4:24;20:11,19;29:18
**suggestion (1)**
  37:12

**supplement (9)**
  39:16;40:1,12;48:13,
  20;49:6,9,12,13
**suppose (3)**
  26:12,14;28:21
**supposed (1)**
  44:7
**Sure (6)**
  42:20;43:16;44:8;
  48:24;50:3,9
**survive (1)**
  26:17
**sustained (2)**
  8:1,15
**switch (1)**
  19:18
**system (3)**
  11:16;12:13;16:15

**T**

**table (1)**
  7:13
**Takata (7)**
  14:13,14,22,23,24;
  15:4,7
**Takata's (1)**
  15:13
**Talk (1)**
  50:13
**talks (1)**
  26:20
**target (2)**
  40:25;49:4
**TCC (12)**
  6:23;7:16;20:8;
  30:18,24;35:9,16;
  37:21;38:10;42:5;44:1;
  46:10
**teed (1)**
  21:19
**tens (5)**
  13:18;24:24;29:16;
  31:15,16
**term (13)**
  18:22;30:9;31:21,22;
  32:6,7;33:5,20;36:6,17,
  19;41:22,23
**terms (8)**
  9:6;24:13,14;27:5,
  24;28:11;29:12;36:21
**test (1)**
  5:11
**texts (1)**
  45:19
**Thanks (2)**
  8:18;50:15
**that'd (1)**
  47:17
**therefore (4)**
  23:3,14,18;28:13
**therein (1)**
  15:3

**thereunder (1)**
  30:2
**thinking (2)**
  18:19;24:12
**third (1)**
  5:3
**third- (1)**
  30:12
**Thomas (2)**
  45:10;48:9
**though (3)**
  22:24;29:10;35:25
**thought (3)**
  6:24;37:25;41:13
**thousand (1)**
  12:2
**thousands (7)**
  13:18;22:16;24:24,
  25;29:16;31:15,16
**three (3)**
  17:14,15;44:21
**throughout (1)**
  7:1
**throw (1)**
  39:4
**THURSDAY (1)**
  3:1
**ticking (1)**
  46:19
**till (1)**
  42:7
**times (1)**
  41:2
**title (1)**
  3:19
**today (9)**
  4:4,12;11:6;21:19;
  37:6;45:6;47:11;48:14;
  49:14
**today's (1)**
  31:7
**together (2)**
  23:20;46:21
**tomorrow (9)**
  40:16,23;41:12;
  45:20;46:3,13;47:12,
  23;49:16
**tonight (2)**
  40:23;50:5
**Tonight's (1)**
  50:5
**took (1)**
  36:9
**tort (7)**
  3:21;24:1;27:20;
  29:2,2;30:9;44:24
**total (2)**
  5:4;12:19
**totally (2)**
  8:13,15
**tougher (1)**
  23:22
**track (1)**

Min-U-Script®

Case: 19-30088    Doc# 7932    Filed: 06/12/20    Entered: 06/12/20 17:55:01    Page 60
of 62

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(9) session - track

41:18
**traditionally (1)**
27:13
**trained (1)**
39:14
**treated (1)**
7:6
**treatment (1)**
14:10
**trial (3)**
13:3;22:8;46:20
**Trotter (1)**
11:17
**troubled (1)**
40:4
**trust (24)**
7:5,23;9:4;11:12;
15:2,5,8;16:10;17:25;
20:10,18,23;21:12,14;
23:10,18;24:4;29:2,2;
31:10;33:13,25;34:2;
37:2
**trustee (22)**
4:25;6:9,23;8:23;
11:13,15;12:3,12,17;
14:22,22;15:12;17:20,
22;18:6,11,18;19:8,12;
37:21;42:5;47:25
**trustee's (1)**
12:13
**trust's (2)**
9:2,10
**try (12)**
9:11;20:13,22,24;
23:23;28:22;35:20;
38:7;45:20,24;48:24;
49:18
**trying (11)**
6:25;18:5;19:17;
26:22;28:22;30:23;
35:12;38:3;39:25;45:2;
46:21
**turn (1)**
44:17
**tweaking (1)**
18:9
**twenty (2)**
41:8;44:18
**two (7)**
7:10,12;10:6;14:5;
42:4;44:21;47:2
**type (1)**
30:3
**types (2)**
21:11;28:5

---

**U**

**UCC (2)**
44:1;46:11
**ultimately (1)**
7:19
**under (27)**

5:16;6:6;7:23;10:22;
11:17;13:7,19;22:15;
23:10;24:6,10,13,13,
17,21;26:2,3,13;27:4,5,
10,11,23;28:10;31:20;
33:3;38:16
**underlying (1)**
25:6
**underpinnings (1)**
7:15
**understood (2)**
50:4,9
**undertaken (1)**
14:10
**unenforceable (1)**
10:21
**unfair (2)**
7:14;12:15
**unfairness (1)**
9:13
**unhappy (1)**
18:11
**unless (3)**
42:14;46:1;48:3
**unliquidated (1)**
10:9
**unrelated (1)**
47:24
**unresolved (2)**
46:5;47:13
**unsecured (3)**
45:11;46:7;48:10
**unusual (1)**
30:2
**up (16)**
7:11;8:8,16;21:19;
23:22;30:7;34:11;
37:21;39:20;41:17;
43:7;45:3;46:18;48:17;
49:5,16
**updated (1)**
48:23
**upheld (1)**
7:20
**upon (3)**
10:8;15:24;31:1
**up-to-date (1)**
47:18
**urge (1)**
40:5
**use (5)**
18:14;24:9;25:12;
28:21;41:22
**used (1)**
27:15
**using (2)**
16:23;18:21

---

**V**

**vary (1)**
25:1
**vegetation (1)**

28:25
**version (4)**
32:5;40:11,14;48:23
**via (1)**
22:15
**victim (1)**
39:23
**Victim's (1)**
31:10
**video (1)**
48:7
**view (1)**
14:2
**virtue (1)**
24:6
**vitiated (1)**
8:14
**void (1)**
30:1
**voted (1)**
13:9
**votes (2)**
30:19,21

---

**W**

**wait (2)**
31:5;32:4
**waive (2)**
11:13;12:4
**wants (5)**
6:18;8:21;11:15;
23:17;31:9
**way (15)**
8:2,19;10:13;14:16;
17:25;18:1;19:11;23:5;
24:18;27:3;33:11,17;
36:10;45:6;49:5
**ways (1)**
14:25
**week (2)**
25:10;49:23
**weeks (2)**
17:15,15
**well-off (1)**
11:2
**well-served (1)**
46:2
**weren't (3)**
7:9;16:25;18:5
**what's (7)**
20:17;29:17;37:1;
40:9,13;41:7,25
**whatsoever (1)**
30:13
**Whereupon (1)**
50:18
**whole (1)**
7:10
**who's (1)**
19:23
**willing (1)**
35:21

win (1)
7:11
**winning (1)**
23:22
**Winthrop (3)**
3:22,23,24
**wish (1)**
20:7
**within (6)**
26:19;33:21,25;34:5,
14;41:22
**without (1)**
28:22
**won (2)**
10:13;23:21
**wondering (1)**
41:7
**word (10)**
16:23;18:14;27:15;
32:23;33:4,6;36:1,7,9;
45:5
**words (2)**
25:22;26:20
**work (11)**
6:6,23;8:19;20:13,
22;35:12,16,20;38:7;
40:6;47:23
**world (2)**
37:23;41:15
**worry (1)**
39:13
**worse (1)**
17:23
**written (1)**
11:12
**wrong (3)**
6:8;13:17;18:14
**wrote (1)**
16:24

---

**Y**

**year (1)**
39:7
**years (2)**
7:10,12
**York (1)**
41:23

---

**Z**

**ZUMBRO (18)**
42:15,17,20,23,23;
43:2,6,8,9,13,16,19;
44:5,11,19;45:1,7,13

---

**1**

**1.21 (1)**
32:24
**1.8 (4)**
32:13,14,15;36:10
**1.89 (1)**

32:9
**1:00 (1)**
3:1
**10 (3)**
37:16;38:13;43:24
**101 (2)**
22:11;33:3
**11 (2)**
3:1;23:8
**11th (1)**
46:20
**150,000 (1)**
12:5

---

**2**

**2 (1)**
37:17
**200,000 (1)**
12:5
**2012 (1)**
10:2
**2018 (1)**
10:4
**2019 (1)**
30:9
**2020 (1)**
3:1

---

**3**

**365 (11)**
22:15;24:7,9;25:5;
26:20;27:3,8;28:2;
29:6;32:18;36:24
**373 (1)**
10:1
**377 (1)**
10:1
**3d (1)**
10:4

---

**4**

**45,000 (1)**
30:19

---

**5**

**500 (1)**
12:19
**502 (3)**
10:10;15:12;16:21
**502b1 (1)**
10:20

---

**7**

**7881 (1)**
44:9
**788-1 (1)**
44:11
**7888 (1)**

Case: 19-30088    Doc# 7932    Filed: 06/12/20    Entered: 06/12/20 17:55:01    Page 61
of 62

44:21
**7888-1 (1)**
    44:9
**7th (1)**
    32:5

**8**

**803 (1)**
    10:4
**812 (1)**
    10:4

**9**

**904 (1)**
    10:4

Case: 19-30088    Doc# 7932    Filed: 06/12/20    Entered: 06/12/20 17:55:01    Page 62
of 62