Theresa Ann McDonald
5044 Russell Drive
Paradise, CA 95969
Phone Number: 530-636-3148
Tmcdonald120@yahoo.com

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT
## (SAN FRANCISCO DIVISION)

In re:

PG&E CORPORATION

    -and-

PG&E GAS AND ELECTRIC COMPANY

    Debtors

       vs.

Theresa Ann McDonald

    Creditor

Bankruptcy Case

No. 19-30088-DM

Chapter 11

(Lead Case)

(Jointly Administered) Case

No. 19-30089-DM


Proof of Claim No. 54975

Filed October 21, 2019

Camp Fire

Judge: Honorable Dennis Montali


Emergency Pleading Responding To

The Preliminary Report Of Official Tort

Claimants' Investigation Of Voting

Results, Document 7847


Relief Requested: The Appointment Of

An Independent Examiner To Review

Physical Records, Conduct Random

Surveys Of Voters, Compare Lists Of

Non-Voters To Lists Of Returned

Solicitation Packets, And Other Tests

Validating Impartiality Of The Voting
Process

I appreciate the fact that the TCC is looking into the voting irregularities. However, the *Preliminary Report of the Official Committee Of Tort Claimants' Investigation Of Voting Results* (Document Number 7847) fails to address a key point of any investigation into the voting irregularities, the investigation of whether or not the solicitation packets were distributed in a timely manner. Furthermore, an investigation by any Party so closely tied to the outcome of the vote does not meet the needs of the Court.

Ms. Pullo testified that Prime Clerk followed all of the procedures the Court had approved. However, she could not testify as to when the solicitation packets that contained the ballots and voting instructions were actually distributed via the United States Postal Service because Prime Clerk did not do the mailing. I do not believe she was asked who actually distributed the emailed solicitation packets.

1. Prime Clerk should be able to easily verify how many solicitation packets were to be sent via United States Postal Service 1st Class mail and how any were to be sent via email.

2. Prime Clerk should also be able to easily verify the weight of each physical solicitation packet.

3. The weight of a solicitation packet could be used to calculate the postage cost per package.

4. A simple calculation of number of packets to be sent multiplied by the cost per package would reveal the minimum postage that should have been processed through the unidentified mailing vendor's postage machine(s).

5. An examination of the postage meter(s) of the unidentified mailing vendor would reveal the actual postage charged during the period of March 30, 2020 through April 8, 2020.

6. Comparing the postage needed to send the number of packets that were to be

mailed to the actual postage charged would reveal if it was possible that the packets were actually mailed in the required time frame.

7. If there were tens of thousands of solicitation packets, it is also possible that whoever at the U. S. Postal Service received the mailing may remember it.

8. A query by the U. S. Postal Inspector of the appropriate U. S. Postal Service Station and the U. S. Postal Service Processing Plant would reveal if there was a substantial delay at either of those locations for any reason.

9. What, if any, additional effort was made to deliver the ballots that were returned as undeliverable by the U. S. Postal Service?

10. It may be possible by examining the outbound mail server logs of the organization that was responsible for sending the email solicitation packets to verify the number of email packets sent out between March 30, 2020, and April 8, 2020, to see if there was a delay in the issuance of those documents.

11. Conduct a statistically significant number random survey of Yes voters to ask if they felt pressured to vote Yes.

12. Conduct a similar random survey of No voters to ask if it was harder for them to vote No.

13. Run a comparison between the solicitation packets that were returned and the claimants who did not vote, to determine the percentage of non-votes that were caused by the solicitation packet being returned.

The validity of the voting procedure for the Fire Victim Claimants to accept or reject the Reorganization Plan and the Fire Victim Trust Settlement Agreement has been questioned in the press, on social media, and in objections and pleadings submitted to the Court. That means the Court needs to be concerned about validating the voting process

because it might be used as the basis for an appeal if a confirmation order is issued.

The longer the delay in gathering facts about the actual distribution activity by the mailing vendor(s) and the handling of the mailing by the U. S. Postal Service, the less reliable the information will become. The memories of those who actually handled the solicitation packets will fade. Physical evidence such as the information from postal meters and outbound mail server logs may not be preserved.

Failing to authorize an independent Examiner to investigate possible voting irregularities might be perceived as bias on the part of the Court. There have already been allegations of corruption and bias in the case because of the close connections between Prime Clerk and the Debtors' legal team.

In today's world in which there is so little confidence in the impartiality of so many government agencies, so much discussion of corruption in the legislative and executive branches of government, it is imperative that the Court shine the brightest possible light on its decisions. Doing anything less is to invite allegations of abuse of judicial power and bias in favor of the attorneys and Debtors because they have so much more power than the individual claimants who lost everything in the fires. Those allegations are much more likely to be made in this case because of the massive amount of damages and public attention being given to this case. The country has not yet forgotten destruction of the Town of Paradise.

Appeals, successful or not, will further delay final resolution of the bankruptcy process. They will further delay payments to the fire victims, many of whom are still living in trailers because without the settlement money from PG&E they cannot afford to rebuild.

For all of these reasons I again respectfully request that you appoint an independent Examiner to take at least all of the steps I outlined above and report both the data and the final conclusion to the Court.

Theresa Ann McDonald