Jeremiah F. Hallisey (SBN 4001)
Karen J. Chedister (SBN 99473)
HALLISEY AND JOHNSON PC
465 California St, Ste 405
San Francisco, CA 94104
Telephone: (415) 433—5300
Email:: jfhallisey@gmail.com
kchedister@h-jlaw.com

Quentin L. Kopp (SBN 25070)
Daniel S. Mason (SBN 54065)
Thomas W. Jackson (SBN 107608)
FURTH SALEM MASON & LI LLP
640 Third Street, 2nd Floor
Santa Rosa, CA 95404-4445
Telephone: (707) 244-9422
Email: quentinlkopp@gmail.com
          dmason@fsmllaw.com
          tjackson@fsmllaw.com

Francis O. Scarpulla (SBN 41059)
Patrick B. Clayton (SBN 240191)
LAW OFFICES OF FRANCIS O.
SCARPULLA
456 Montgomery Street, 17th Floor
San Francisco, CA 94104
Tel: (415) 788-7210
Email:  fos@scarpullalaw.com
          pbc@scarpullalaw.com

Richard A. Lapping (SBN 107496)
TRODELLA & LAPPING, LLP
540 Pacific Avenue
San Francisco, CA 94133-4608
Telephone: (415) 399-1015
Email: rich@trodellalapping.com[1]

*[Attorneys for clients as listed on signature page0])*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors. | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11  (Lead Case)<br><br>(Jointly Administered)<br><br>**CERTAIN FIRE VICTIMS' AMENDED OPPOSITION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING TERMS OF, AND DEBTORS' ENTRY IN TO AND PERFORMANCE UNDER, AMENDED EQUITY BACKSTOP COMMITMENT DOCUMENTS AND (II) AUTHORIZING INCURRENCE, PAYMENT AND ALLOWANCE OF RELATED PREMIUMS AS ADMINISTRATIVE EXPENSE CLAIMS [Related Docket Nos. 7848, 7849]**<br><br>Date:  June 16, 2020<br>Time:  10:00 a.m.:<br>Place:  Telephonic or Video Appearance Only<br>          United States Bankruptcy Court<br>Courtroom 17, 16th Floor, San Francisco, CA 94102<br>Judge:  Hon. Dennis Montali |

---

[1]  Associated as co-counsel on behalf of the Fire Victim claimants/creditors herein

-1-

Fire Victim Claimants/Creditors GER Hospitality, LLC, Adolfo Veronese Family, William O'Brien, Ming O'Brien, Fuguan O'Brien; Michael Heinstein, Kye Heinstein, Karen Roberds; Anita Freeman; William N. Steel, Clinton Reilly; Ken Born, Christine Born, Cathy Ference, William Ference, Allen Goldberg, Robert Johnson, Patricia Goodberg, Paul Goodberg, Terence Redmond, Melissa Redmond, Sonoma Court Shops, Inc., and Rita Godward, hereby oppose Debtors' Motion For Entry of an Order (I) Approving Terms of, and Debtors' Entry in to and Performance Under, Amended Equity Backstop Commitment Documents and (II) Authorizing Incurrence, Payment and Allowance of Related Premiums As Administrative Expense Claims.

## I. Background

### A. Fire Victim Equity Value

The Tort Claimants' Restructuring Support Agreement dated December 6, 2019 (RSA) in this proceeding provides that a portion of the consideration to the Fire Victims is $6.75 billion in New HoldCo Common Stock (at Fire Victim Equity Value), which shall not be less than 20.9% of the New HoldCo Common Stock,

The RSA and the proposed Plan of Reorganization May 22, 2020, Paragraph 1.81 provides *that Fire Victim Equity Value means 14.9 multiplied by the Normalized Estimated Net Income as of a date to be agreed upon among the parties to the Tort Claimants RSA.*

### B. Normalized Estimated Net Income (NENI)

The Court's recent Order dated June 12, 2020 (Order Approving the Parties' Joint Stipulation Regarding Normalized Estimated Net Income) (Docket No. 7914, 7919) set NENI as follows:

> *NENI for 2021 under the Plan shall be deemed to be the amount such that the $6.75 billion in New HoldCo Common Stock to be issued to the Fire Victim Trust at Fire Victim Equity Value under the Plan shall result in the Fire Victim Trust receiving 22.19% of the New HoldCo Common Stock on the Effective Date.*

The Debtors' motion for approval of the Backstop Amendment, is based on the assertion, *first made to this court by the Debtors on June 9, 2020,* that the market dislocation

driven by COVID-19 combined with the minimum price thresholds in the Approved Equity Backstop Commitment Letters constrain the Debtors' ability to raise the $9 billion of equity proceeds such that the existing backstop commitments would be drawn rather than through a Market Offering.   The motion is opposed on the grounds that the proposed amended equity backstop arrangements would result in a reduction of funds available to the Fire Victims.  The motion draws into question whether the multiple of 14.9 used to generate the Fire Victim Equity Value of the stock portion of the Fire Victim settlement was realistic to begin with. Last, the Debtors' representatives testified that the COVID-19 pandemic would not affect the viability of the Plan, while at the same time, they were actively negotiating with potential underwriters and backstop parties for more favorable terms based upon the ongoing market collapse as a result of the COVID-19 pandemic.

## II.     ARGUMENT

### A.  The Equity Backstop Commitment Letters Intentionally Restricted the Downward Adjustment of a Market Offering and Should Not Require the Payment of Approximately $600 million in Value to Accomplish Something in the Backstop Parties Interest

Under the Equity Backstop Commitment, there are three tiers outlined for an exit equity offering: a Market Offering; a Rights Offering; and a Backstop Draw.  However, unlike that of a Rights Offering or Backstop Draw, only the threshold at which a Market Offering could be accomplished was restricted from decreasing with the Applicable Utility Index Multiple, as defined in the Equity Backstop Commitment Letters.  Additionally, the Debtors have already agreed to pay a fee of 119 million shares valued at ~$1.4 billion to ensure that it gets the equity necessary to exit bankruptcy. Adding another 50 million shares worth approximately $600 million will bring the total fees the Backstop Parties to approximately $2.0 billion for a backstop commitment of $9.0 billion, an amount that the backstop parties remain unlikely to have to deliver.

- 3 -

**B. Under the Proposed Amended Equity Backstop, the Multiple of 14.9x of the 2021 NENI to Generate the Fire Victim Equity Value is up to 69% Above Market**

A week prior to the filing of the motion, the Debtors' witnesses testified in support of the Plan and declared (1) the 14.9x is a fair multiple, and (2) that the Fire Victims can benefit from appreciation in the value of the stock. However, as set forth below, these assertions are not supported.

In the instant motion filed on June 9, 2020 the Debtors point to the likely range of an exit equity issuance at between 8.8x and 10.6x. Kenneth Ziman's Declaration filed on June 6, 2020 [Dkt 7849] indicates that the anticipated exit equity offering multiple is in the range of 8.8 times to 10.6 times (8.8x to 10.6x). Meanwhile, the multiple being charged to the Fire Victims (14.9) is 41%-69% higher. Assuming the above equity valuation multiple range put forth by the Debtors and Mr. Ziman, the actual value of the allocation to the Fire Victim Trust would be between $4.0 billion and $4.8 billion, substantially less than the $6.75 billion promised.

The instant motion, which discusses at length the difficulties in raising equity at multiples even approaching 10.0x, and the need for such equity backstop amendment proves that the original multiple of 14.9 is neither reasonable, realistic or fair.

The Victim Trust is a vehicle to facilitate the payment of Fire Victim claims. Any notion that the Fire Victims agreed to the settlement in the hopes of owning stock that could appreciate is unsupported. Buying and holding PG&E stock for a profit was never the goal of the Fire Victims in any settlement, and given the statements made by the Debtors and their investment banker it would appear that achieving a value of $6.75 billion for the Fire Victims, as agreed, is very unlikely to happen.

Finally, even if one were to believe that the Fire Victim Equity multiple was fair at the time it was negotiated, the assertions that the Fire Victims will receive $13.5 billion in value and be able to benefit from the appreciation in the value of the stock over time are no longer true.

**C. The Debtors Were Negotiating for more favorable backstop terms at the same time their witnesses Supported Confirmation on the Existing Backstop Terms**

The Debtors' Backstop Amendment motion and the supporting Declaration of Kenneth Ziman, the Debtors' investment banker dated June 9, 2020, assert that capital markets in general,

and the valuing of utilities specifically have change dramatically due to the ongoing COVID-19 pandemic and the resulting disruption in the capital markets.

Yet prior to filing the motion on June 9, 2020, there was no mention of this "dramatic change" in Kenneth Ziman's declaration in support of Plan Confirmation filed on May 22, 2020 (Dkt 7512], Plan confirmation testimony on June 1, 2020, nor any other witness or pleading filed by the Debtors in support of the Plan Confirmation. The debtors represented to the Court that the cash to be raised by equity was available to the debtors under the backstop commitments; that essentially the Fire Victims were getting what was bargained for.

However, it was clear that the capital markets and utility valuations had been impacted as far back as March following the initial spread of the COVID-19 pandemic and this was discussed in Wall Street research which showed estimates indicating a significant negative impact to the Applicable Utility Index, as defined in the Equity Backstop Commitment. Nonetheless, the Debtors and their investment bankers in particular, Messrs. Boken and Ziman, filed declarations, under oath [Dkt 7512, 7514], and testified in June 2020 that the COVID-19 pandemic would not affect the viability of the Plan. Meanwhile, at the same time, the Debtors were negotiating to change the terms of the backstop agreement with potential underwriters and backstop parties. <u>In fact, starting in May 2020</u> the Debtors were actively negotiation with the backstop parties based upon the ongoing market collapse.

The Debtors waited a week after the start of the confirmation hearing before filing the instant Backstop Amendment motion. The Debtors now argue that the equity capital markets have changed so materially that the Debtors need to adjust the backstop equity commitment and pay the backstop parties an additional 50 million shares worth approximately $600 million. How can it be that the situation has changed so materially for the Debtors, but not for the Fire Victims?

Given that the ongoing health crisis and capital market disruption have been known and ongoing since as early as March, it would seem quite clear that the Debtors, who waited until after the confirmation hearings to apply for amended backstop commitments, have not been forthcoming and their credibility has been called in to question. The opposing Fire Victim claimants/creditors respectfully request the Court to inquire as to the real need for the backstop

- 5 -

amendment, the effect of the proposed equity backstop amendment on the Fire Victim equity

value, and the actual cash value to be transferred and made available to the Fire Victim Trust.

Dated: June 15, 2020

*/s/ Jeremiah F. Hallisey*
Jeremiah F. Hallisey
Hallisey and Johnson, PC
465 California Street, Suite 405
San Francisco, CA 94104-1812
Telephone: (415) 433-5300
Email: jfhallisey@gmail.com

Attorneys for William, Ming, and Fuguan O'Brien;
Kye and Michael Heinstein; Clint Reilly; Karen
Roberds and Anita Freeman; and William N. Steel

Frances O. Scarpulla (SBN 41059)
Patrick B. Clayton (SBN 240191)
LAW OFFICES OF FRANCIS O. SCARPULLA
456 Montgomery Street, 17th Floor
San Francisco, CA 94104
Tel: (415) 788-7210
Email: fos@scarpullalaw.com
        pbc@scarpullalaw.com
Attorneys for GER HOSPITALITY, LLC and
ADOLFO VERONESE FAMILY

Quentin L. Kopp (SBN 25070)
Daniel S. Mason (SBN 54065)
Thomas W. Jackson (SBN 107608)
FURTH SALEM MASON & LI LLP
640 Third Street, 2nd Floor
Santa Rosa, CA 95404-4445
Telephone: (707) 244-9422
Email: quentinlkopp@gmail.com
        dmason@fsmllaw.com
        tjackson@fsmllaw.com
Attorneys for Ken Born, Christine Born, Cathy Ference,
William Ference, Allen Goldberg, Robert Johnson,
Patricia and Paul Goodberg, Terence Redmond, Melissa
Redmond, Sonoma Court Shops, Inc., Rita Godward

- 6 -

Case: 19-30088    Doc# 7949    Filed: 06/15/20    Entered: 06/15/20 11:09:41    Page 7 of
7

1

2                              **<u>CERTIFICATE OF SERVICE</u>**

3

4    I, Karen J. Chedister, declare as follows:

5            I am over the age of eighteen (18) years and not a party to the within action.  My business

6    address is 465 California Street, Suite 405, San Francisco, CA 94104.

7            On June 15, 2020, I served document(s) described as:

8
     **CERTAIN FIRE VICTIMS' OPPOSITION TO DEBTORS' MOTION FOR ENTRY OF**
9    **AN ORDER (I) APPROVING TERMS OF, AND DEBTORS' ENTRY IN TO AND**
     **PERFORMANCE UNDER, AMENDED EQUITY BACKSTOP COMMITMENT**
10   **DOCUMENTS AND (II) AUTHORIZING INCURRENCE, PAYMENT AND**
     **ALLOWANCE OF RELATED PREMIUMS AS ADMINISTRATIVE EXPENSE**
11   **CLAIMS [Related Docket Nos. 7848, 7849]**

12   on the interested parties in this action as follows:

13    BY E-MAIL/NEF:  Service was accomplished through the Notice of Electronic Filing

14          ("NEF") for all parties and counsel who are registered ECF Users and those identified

15          below:

16          I declare under penalty of perjury under the laws of the United States of America that the

17   above is true and correct.  This declaration was executed on June 15, 2020 at San Francisco,

18   California.

19                                              */s/ Karen J. Chedister*

20                                              Karen J. Chedister, Esq.

21

22

23

24

25

26

27

28

                                        - 7 -