William B. Abrams
end2endconsulting@gmail.com
1519 Branch Owl Place
Santa Rosa, CA, 95409
Tel: 707 397 5727

*Pro Se Claimant and*

*Party to California Public Utilities Commission Proceeding I.19-09-016 to Consider the Ratemaking and Other Implications of a Proposed Plan for Resolution of Voluntary Case filed by Pacific Gas and Electric Company, pursuant to Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court, Northern District of California, San Francisco Division, In re Pacific Gas and Electric Corporation and Pacific Gas and Electric Company, Case No. 19- 30088.*

*Party to California Public Utilities Commission Proceeding I.15-08-019 to Determine whether Pacific Gas and Electric Company and PG&E's Corporation's Organizational Culture and Governance Prioritizes Safety*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*  All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankr. Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**WILLIAM B. ABRAMS OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING TERMS OF, AND DEBTORS' ENTRY INTO AND PERFORMANCE UNDER, AMENDED EQUITY BACKSTOP COMMITMENT DOCUMENTS AND (II) AUTHORIZING INCURRENCE, PAYMENT AND ALLOWANCE OF RELATED PREMIUMS AS ADMINISTRATIVE EXPENSE CLAIMS PURSUANT TO U.S.C. §§ 1129(A)(8) AND §§ 1129 (B) [DKT. 7848]**<br><br><u>Hearing:</u> **Telephonic Appearances Only**<br><br>Date: June 16, 2020<br>Time: 10am PT<br>Place: Courtroom 17, 450 Golden Gate Ave., 16th Floor, San Francisco, CA, 94102 |

## PRELIMINARY STATEMENT

1. I, William B. Abrams, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief:

2. *"The Debtors' Motion for Entry of an Order (I) approving terms of, and Debtors' entry into and performance under, amended equity backstop commitment documents and (II) authorizing incurrence, payment and allowance of related premiums as administrative expense claims"* [Dkt. 7848] ("**Backstop Amendment Motion**") undermines the value of the victims' trust. The disproportionate treatment of claimant classes exhibited in the Debtors' motion also undermines the feasibility of the plan in that it violates Section 1129(a)(8) which requires a class not to be "impaired under the plan" and Section 1129(b) which requires a plan to be "fair and equitable, with respect to each class." Further compounding these issues, when the Debtors' Backstop Motion is viewed in the context of the victims' registration rights agreement it ensures manifestly unjust outcomes. Therefore, the Backstop Amendment Motion must be amended to ensure that the value of the victim trust is not undermined beyond what has already been accomplished by the Debtors through the plan of reorganization and the associated registration rights agreement.

## ARGUMENT

3. **PLEASE TAKE NOTICE** that the "*PARTIES' JOINT STIPULATION REGARDING THE REGISTRATION RIGHTS AGREEMENT AND RELATED AGREEMENTS OF THE FIRE VICTIM TRUST*" [Dkt. 7913] filed on June 12, 2020 indicated that "The TCC will not object to the Backstop Amendment Motion."[1] This stipulation was unwarranted and ill-timed given that the Backstop Amendment Motion undermines the efficacy of the registration rights agreement to provide recovery for victims through stock sales.

---

[1] See "*PARTIES' JOINT STIPULATION REGARDING THE REGISTRATION RIGHTS AGREEMENT AND RELATED AGREEMENTS OF THE FIRE VICTIM TRUST*", page 4, line 6

4. **PLEASE TAKE FURTHER NOTICE** that the Backstop Amendment Motion indicates that that the equity backstop commitment will have "*no impact on the **percentage** of New HoldCo Common Stock that will be owned by the Fire Victims.*"[2] However, the Backstop Amendment Motion makes no such assertion regarding the **value** of the Victims' stock which of course is the only measure that matters. No such assertion could be made in the Debtors' motion because these backstop commitments will in fact drive down the value of the victims' shares. Therefore, the Debtors' statement that these backstop commitments are in the "*best interest of their estates and all stakeholders*" is categorically false to the extent that the Debtors consider victim claimants also stakeholders in the plan.[3]

5. **PLEASE TAKE FURTHER NOTICE** that calling these equity commitments "backstops" is now largely inaccurate. Consider that the Backstop Amendment Motion indicates that the need to draw on the backstop is "inevitable."[4] Furthermore, the Backstop Amendment eliminates critical ingredients to the equity offering that protect victims such as striking the provision that "*at least 80% of the aggregate cash proceeds are raised through a rights offering to holders of shares of common stock of PG&E Corp.*"[5] So, it is clear that what has been characterized as "backstops" is really a primary vehicle to fund this plan. Therefore, the discounting and under-market offerings associated with these transactions constitutes a significant undermining of the feasibility of the plan.

6. **PLEASE TAKE FURTHER NOTICE** that the Backstop Amendment Motion indicates that "the Debtors have also reached an agreement with five institutional investors for the sale of $3.25 billion of New HoldCo Common Stock in a private investment in the public equity transaction (the "**PIPE**")."[6] However, the motion fails to mention that this stock offering was made

---

[2] See "*DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING TERMS OF, AND DEBTORS' ENTRY INTO AND PERFORMANCE UNDER, AMENDED EQUITY BACKSTOP COMMITMENT DOCUMENTS AND (II) AUTHORIZING INCURRENCE, PAYMENT AND ALLOWANCE OF RELATED PREMIUMS AS ADMINISTRATIVE EXPENSE CLAIMS*" page 2, (lines 15-16), page 8 (lines 20-22), page 20 (lines 19-23)
[3] *Id.* page 2, (line 7)
[4] *Id.* page 10, (line 26)
[5] *Id.* page 15, (line 14-17)
[6] *Id.* page 8, (lines 14-16)

at a substantial "**16% discount**" and that investors will pay "***up to a price of $10.50 a share***".[7] This discounted sale to investors including Appaloosa, Third Point LLC, Fidelity Management and Research Co. LLC and Zimmer Partners precipitated a (6.2%) drop in the value of the shares. Victims can expect these same types of drops in the value of their shares in subsequent discounted offerings thus undermining the value of the victims' shares exponentially if this Backstop Amendment Motion is approved.

7. **PLEASE TAKE FURTHER NOTICE** that these deeply discounted stock sales point to the fact that the formulation of the victims' shares was never based upon market rates and that the added 2.1% of shares (from 20.9% to 22.19%) in no way makes up for the deliberately misleading valuation formula. Consider that the provision that would limit the backstops to 20% of new equity has been eliminated through this amendment so a great many (perhaps majority) of new "shares would be issued at approximately $7.50 per share" and that "minimum pricing tiers" have been removed.[8] These price points offered to other shareholders are less than half the Debtors valuation of victim shares through the plan and associated registration rights agreement. This stock price disparity points very directly to the degree to which this plan is NOT "fair and equitable, with respect to each class" and violates Section 1129(b). No, the victims are NOT a priority for the Debtors when they force us to have stock that they offer to other shareholders at these deep discounts. **This Backstop Amendment Motion essentially guts the value of the victim shares.**

8. **PLEASE TAKE FURTHER NOTICE** that this Backstop Amendment Motion states that "Under the Bankruptcy Code, the decision of the debtor-in-possession to obtain financing commitments is entitled to deference under the business judgement rule."[9] This is rather a bold assertion of "deference" when you consider that on the same day this motion will be heard, victims of

---

[7] *See* https://www.marketwatch.com/story/pges-stock-falls-after-325-billion-equity-investment-announced-to-be-priced-at-a-discount-2020-06-08, MarketWatch, Published June 8, 2020

[8] See "*DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING TERMS OF, AND DEBTORS' ENTRY INTO AND PERFORMANCE UNDER, AMENDED EQUITY BACKSTOP COMMITMENT DOCUMENTS AND (II) AUTHORIZING INCURRENCE, PAYMENT AND ALLOWANCE OF RELATED PREMIUMS AS ADMINISTRATIVE EXPENSE CLAIMS*" page 7, (lines 15-16)

[9] *Id.* page 8, (lines 27-28), page 9 (line 1)

the PG&E Camp Fire are due to testify against these same Debtors for the 85 counts of manslaughter. Moreover, this deference request from the Debtors must be seen in light of their continued efforts to push this "comprehensive equity raise strategy" on the backs of ratepayers. The City and County of San Francisco on June 4, 2020 filed the "*PROTEST OF THE CITY AND COUNTY OF SAN FRANCISCO TO THE APPLICATION OF PACIFIC GAS AND ELECTRIC COMPANY FOR (1) ADMINISTRATION OF STRESS TEST METHODOLOGY AND (2) DETERMINATION THAT $7.5 BILLION OF 2017 CATASTROPHIC WILDFIRE COSTS AND EXPENSES ARE STRESS TEST COSTS THAT MAY BE FINANCED THROUGH ISSUANCE OF RECOVERY BONDS PURSUANT TO 451.2(C) AND SECTION 850 ET SEQ.*" at the California Public Utilities Commission ("**CPUC**") which speaks directly to this point.[10]  Mr. Herrera the City Attorney stated that "*PG&E's securitization plan is a financial house of cards*" and that "*PG&E's proposal would shift all the risks to ratepayers*".[11]  Given that victims are also ratepayers, this shift of risk is exponential true for victim claimants and should be considered by this court as one more way that the Debtors do not deserve deference to the Business Judgement Rule but instead deserve added scrutiny which has been largely avoided to date in this proceeding.  The Debtors' continued efforts to subvert AB1054 and many other state laws shows how this plan is designed with the sole purpose to serve the interests of entrenched investors to the detriment of other classes of claimants and the public.  Will this protest and others filed before the CPUC push this $7.5B to be financed by more backstop parties?  This court needs to consider these implications that go to the heart of the unfairness and inequity associated with this plan.

*///*

---

[10] See Exhibit A: "*PROTEST OF THE CITY AND COUNTY OF SAN FRANCISCO TO THE APPLICATION OF PACIFIC GAS AND ELECTRIC COMPANY FOR (1) ADMINISTRATION OF STRESS TEST METHODOLOGY AND (2) DETERMINATION THAT $7.5 BILLION OF 2017 CATASTROPHIC WILDFIRE COSTS AND EXPENSES ARE STRESS TEST COSTS THAT MAY BE FINANCED THROUGH ISSUANCE OF RECOVERY BONDS PURSUANT TO 451.2(C) AND SECTION 850 ET SEQ.*", filed June 4, 2020 with the California Public Utilities Commission.

[11] See Bay City News "SF City Attorney Files Legal Protest Against PG&E Plan", https://www.nbcbayarea.com/news/local/san-francisco/sf-city-attorney-files-legal-protest-against-pge-plan/2308867/

## **CONCLUSION**

9. The Debtors have not adequately described how these backstop commitments will be leveraged but the Backstop Amendment Motion clearly demonstrates a myriad of unjust outcomes for victims. Given the fact that this backstop agreement and the registration rights agreement were brought into the light of day after the victim vote should mean that the Debtors and the TCC should have an extra burden of proof regarding their compliance with Bankruptcy Law. Despite this high-bar and even with the Debtors' undeserved deference to the business judgement rule, the Backstop Amendment Motion as drafted and when viewed through the lens of the registration rights agreement is manifestly unjust and violates Section 1129(a)(8) and Section 1129(b) of the United States Bankruptcy Code. This motion does not amend the backstop agreement but rather guts the agreement and turns the backstops into primary financing vehicles for this plan. This strategic maneuver by the Debtors and the TCC is designed to avoid the courts' scrutiny and will directly undermine the value of the victim shares. The fact that the registration rights agreement was filed by the Debtors and the TCC [Dkt. 7913] and then immediately approved by the court [Dkt. 7918] to avoid filed objections is very disconcerting. Given the lack of due process on that critical agreement, I urge the court to consider that these amendments to the backstop agreement must be amended further to address the issues raised above or denied in their entirety so that recovery for victims will not be a complete loss.

Dated: June 15, 2020

Respectfully submitted,

William B. Abrams
Pro Se Claimant