| | |
|---|---|
| WEIL, GOTSHAL & MANGES LLP<br>Stephen Karotkin (*pro hac vice*)<br>(stephen.karotkin@weil.com)<br>Theodore E. Tsekerides (*pro hac vice*)<br>(theodore.tsekerides@weil.com)<br>Richard W. Slack (*pro hac vice*)<br>(richard.slack@weil.com)<br>Jessica Liou (*pro hac vice*)<br>(jessica.liou@weil.com)<br>Matthew Goren (*pro hac vice*)<br>(matthew.goren@weil.com)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Tel: 212 310 8000<br>Fax: 212 310 8007<br><br>KELLER BENVENUTTI KIM LLP<br>Tobias S. Keller (#151445)<br>(tkeller@kbkllp.com)<br>Jane Kim (#298192)<br>(jkim@kbkllp.com)<br>650 California Street, Suite 1900<br>San Francisco, CA 94108<br>Tel: (415) 496-6723<br>Fax: (415) 636-9251<br><br>*Attorneys for Debtors and Debtors in Possession* | JONES DAY<br>Bruce S. Bennett (SBN 105430)<br>(bbennett@jonesday.com)<br>Joshua M. Mester (SBN 194783)<br>(jmester@jonesday.com)<br>James O. Johnston (SBN 167330)<br>(jjohnston@jonesday.com)<br>555 South Flower Street<br>Fiftieth Floor<br>Los Angeles, CA 90071-2300<br>Tel: 213 489 3939<br>Fax: 213 243 2539<br><br>*Attorneys for Shareholder Proponents* |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**PLAN PROPONENTS' OPPOSITION TO EX PARTE MOTION TO RECALL JOHN BOKEN AND KENNETH ZIMAN FOR FURTHER CROSS-EXAMINATION**<br><br>**Relates to Docket No. 7934** |

The Plan Proponents hereby submit this Opposition to the *Ex Parte Motion to Recall John Boken and Kenneth Ziman for Further Cross-Examination*, filed by certain fire victims [Docket No. 7934] (the "**Ex Parte Motion**").

I. **RESPONSE**

Unhappy with how the votes came in with respect to the Plan, certain fire victims, led by GER Hospitality, LLC (the "**Movants**"), continue their quest to thwart the will of the overwhelming majority of fire victims who voted in favor of the Plan. Movants' latest gambit is to claim that witnesses at the confirmation hearing gave inconsistent and "questionable" testimony regarding the impact of COVID-19 that requires these witnesses to be recalled for further examination. The basis for these assertions is premised entirely on the mistaken belief that a declaration Mr. Ziman provided on June 9, 2020 in support of the Debtors' motion for entry of an order amending the equity backstop agreements, somehow is inconsistent with the testimony Mr. Ziman and Mr. Boken gave in connection with the confirmation hearing. The Movants are wrong and there is no inconsistency. The Movants confuse the impact COVID-19 may have on the financial markets and the utility sector with the impact it may have on the Debtors' financial projections and their ability to meet their obligations under the Plan. In fact, not only is Mr. Ziman's June 9, 2020 declaration ("**Ziman June Declaration**") [Docket No. 7849] entirely consistent with his and Mr. Boken's prior testimony, it actually underscores the point Mr. Ziman made during the confirmation hearing that the Debtors would look to raise equity capital at the best possible price and through the most effective method. *See* Mr. Ziman's 5/22/20 Decl. ("**Ziman May Declaration**") [Docket No. 7512], ¶ 13; *see also*, Confirmation Hr'g Tr. 6/1/20 at pp 39:9-40:1, 53:14-54:6.

Both Mr. Ziman and Mr. Boken testified as to the Debtors' ability to effectuate their Plan and their ability to meet their obligations. Notably, Mr. Ziman made it abundantly clear that regardless of the market, the Debtors have the commitments for all of the financing and capital needed to fund their emergence from Chapter 11 and to satisfy all of their obligations on an ongoing basis post-emergence. For example, in the Ziman May Declaration, Mr. Ziman testified that, "I believe that the Debtors will have the necessary sources of financing in order to emerge from these Chapter 11 Cases

in a timely manner, and to meet their obligations under the Plan." Ziman May Declaration ¶ 16; *see also* Confirmation Hr'g Tr. 6/1/20 at 6:1-13, 10:8-11:3, 49:2-16. He also made the point that even though the equity backstop commitments remain in full force and effect and will be available if necessary, "the best way to raise equity is through a public market offering." Confirmation Hr'g Tr. 6/1/20 at 9:21-10:7, 57:21-58:5. Similarly, Mr. Boken testified that "based on what we have observed and learned to date, taking into account that assessment [referring to COVID-19], it is my opinion that these recent developments are not expected to have a material impact on the Financial Projections or the Debtors' ability to meet their obligations under the Plan." Mr. Boken's 5/22/20 Decl. [Docket No. 7514], ¶ 11; *see also* Confirmation Hr'g Tr. 5/29/20 at 41:4-19. The confirmation hearing testimony thus addressed what impact COVID-19 might have on the Debtors' ability to meet their obligations, and on that score the testimony was clear and uncontroverted—the funds necessary for emergence from Chapter 11 were committed and, regardless of COVID-19, the Debtors will have sufficient resources and capital to meet their obligations under the Plan and going forward post-emergence.

Nothing in the Ziman June Declaration relating to amendments to the backstop commitments undermines or is inconsistent with Mr. Ziman's or Mr. Boken's hearing testimony in any way. Rather, that declaration addresses the optimum method to raise equity capital, not whether that capital will or will not be available. It further explains that the amendments to the backstop commitments "significantly *enhance* the Debtors' flexibility in financing their emergence from the Chapter 11 Cases, while increasing overall equity value and protecting current and future shareholder value." Ziman June Declaration ¶ 11 (emphasis added). This is entirely consistent with Mr. Ziman's prior testimony in seeking the best avenue to raise the equity. COVID-19's impact on market conditions may have made amendments to the equity backstop commitments preferable so that the Debtors could find the most attractive way to use the public markets to raise equity, while also continuing to maintain the equity backstops as a fail-safe. *See* Ziman June Declaration ¶ 13. But that is by no means contradictory to, or inconsistent with, any of the prior testimony regarding the Debtors' ability to raise the necessary sources of funding or their ability to meet their obligations

under the Plan, notwithstanding the COVID-19 pandemic. Indeed, Mr. Ziman's and Mr. Boken's hearing testimony is further confirmed by the fact that the Debtors have obtained $3.25 billion in PIPE commitments as part of their equity raise strategy. *See* Ziman June Declaration ¶ 15.

## II. CONCLUSION

For the reasons stated above, there is nothing in the Ex Parte Motion to support recalling either Mr. Ziman or Mr. Boken for further testimony or to reopen the confirmation hearing. Movants' latest effort to derail the Plan should be rejected and the Ex Parte Motion denied.

Dated: June 15, 2020

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

/s/ *Theodore E. Tsekerides*
Theodore E. Tsekerides

*Attorneys for Debtors and Debtors in Possession*