William B. Abrams
end2endconsulting@gmail.com
1519 Branch Owl Place
Santa Rosa, CA, 95409
Tel: 707 397 5727

*Pro Se Claimant and*

*Party to California Public Utilities Commission Proceeding I.19-09-016 to Consider the Ratemaking and Other Implications of a Proposed Plan for Resolution of Voluntary Case filed by Pacific Gas and Electric Company, pursuant to Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court, Northern District of California, San Francisco Division, In re Pacific Gas and Electric Corporation and Pacific Gas and Electric Company, Case No. 19- 30088.*

*Party to California Public Utilities Commission Proceeding I.15-08-019 to Determine whether Pacific Gas and Electric Company and PG&E's Corporation's Organizational Culture and Governance Prioritizes Safety*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* All papers shall be filed in the lead case, No. 19-30088 (DM) | Bankr. Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**WILLIAM B. ABRAMS MOTION FOR RECONSIDERATION AND RELIEF FROM THE ORDERS PURSUANT TO U.S.C. §§ 363(b) AND 105(a) AND BANKRUPTCY RULE 9024 APPROVING THE PARTIES' JOINT STIPULATION REGARDING THE REGISTRATION RIGHTS AGREEMENT AND RELATED AGREEMENTS OF THE FIRE VICTIM TRUST [Dkt. No. 7918]**<br><br><u>Hearing:</u> Telephonic Appearances Only<br><br>Date: Earliest Convenience of the Court<br>Time: TBD<br>Place: Courtroom 17<br>450 Golden Gate Ave., 16th Floor<br>San Francisco, CA, 94102 |

# PRELIMINARY STATEMENT

1. The Registration Rights Agreement was filed with the U.S. Securities and Exchange Commission ("**SEC**"), filed with the court as the "*PARTIES' JOINT STIPULATION REGARDING THE REGISTRATION RIGHTS AGREEMENT AND RELATED AGREEMENTS OF THE FIRE VICTIM TRUST*" [Dkt. 7913] ("**Registration Rights Stipulation**") and subsequently approved by the court through the "*ORDER APPROVING THE PARTIES' JOINT STIPULATION REGARDING THE REGISTRATION RIGHTS AGREEMENT AND RELATED AGREEMENTS OF THE FIRE VICTIM TRUST*" [Dkt. 7918] ("**Registration Rights Order**") all within hours and **WITHOUT the ability of parties to review and file objections or opposition to the stipulation.** This Registration Rights Order was approved alongside the "*ORDER APPROVING THE PARTIES' JOINT STIPULATION REGARDING NORMALIZED ESTIMATED NET INCOME*" [Dkt. 7919] ("**Order Approving Stock Valuation Formula**").

2. Given that there was not time permitted by the court to file opposition and/or an objection to the Registration Rights Stipulation, I am filing this "*WILLIAM B. ABRAMS MOTION FOR RECONSIDERATION AND RELIEF FROM THE ORDERS PURSUANT TO U.S.C. §§ 363(b) AND 105(a) AND BANKRUPTCY RULE 9024 APPROVING THE PARTIES' JOINT STIPULATION REGARDING THE REGISTRATION RIGHTS AGREEMENT AND RELATED AGREEMENTS OF THE FIRE VICTIM TRUST*" ("**Motion for Reconsideration**"). Through this Motion for Reconsideration, I will demonstrate how the Registration Rights Agreement and associated stipulation are in violation of bankruptcy law. **There is new evidence that the court did not have the time to consider** given the rushed process that demonstrates very specifically how this agreement and associated valuation formula have served to ensure unjust outcomes and undermine the feasibility of the Debtors' plan of reorganization.

///

# ARGUMENT

3.  **PLEASE TAKE NOTICE** that the registration rights agreement **ignores significant conflicts of interest regarding the selection of the Royal Bank of Canada** as the investment banking firm for the trust. It states "the Trust shall select one (and no more than one) nationally recognized investment banking firm acceptable to the Corporation (such acceptance not to be unreasonably withheld, conditioned or delayed), it being agreed that Royal Bank of Canada is acceptable to the Corporation for such purposes."[1] The largest conflict is associated with the selection of this bank is the fact that this bank has a $350M loan which it is purportedly in default.[2] The degree to which this loan default has played a role in their selection and the degree to which this will play a role in their administration of the victim shares has not been disclosed. The fact that this registration rights agreement states that sales of the stock cannot provide an "*adverse effect (as defined herein), as determined jointly by the investment banking firms*" underlines the importance of this investment bank selection and why financial conflicts of interest must be disclosed.[3]

4.  Furthermore, it is important to note that Mr. Singleton in the hearing before this court on May 12, 2020 regarding the Designation of Improperly Solicited Votes stated "*For example, **my firm has a line of credit with a subsidiary of the Royal Bank of Canada**. I don't necessarily know that I need to disclose that to my clients. It might be a good idea to do so. But certainly, under the rules, I think there's no responsibility.*"[4] The terms of this loan and the degree to which there are other such loans and litigation financing has not been disclosed to the court or to victim claimants. Indeed, Bankruptcy Rule 2019 has not been enforced which has continued to undermine this proceeding.

---

[1] See Registration Rights Agreement page 8, section (C)(4)(d)
[2] See Financial Post article "Royal Bank Of Canada Keeps Its Powder Dry in Pricey U.S. Market", February 22, 2019, https://business.financialpost.com/news/fp-street/royal-bank-of-canada-keeps-its-powder-dry-in-pricey-u-s-market
[3] See Registration Rights Agreement, page 8, section (C)(iv)
[4] See "Transcript of Proceedings Before the Honorable Dennis Montali United States Bankruptcy Judge", May 12, 2020, Page 42 (lines 1-5)

5.	**PLEASE TAKE FURTHER NOTICE** that the registration rights agreement rather than ensuring parity for victim shareholders provides a basis for the Debtors to undermine the value of the New HoldCo Common Stock to benefit the exit strategy of existing shareholders. The misdirected reliance on $2.2 normalized net income and the 14.9x multiple without reasonable disagreement is in point-of-fact an overinflated valuation of the stock and remains unaddressed in this registration rights agreement. This reliance on a share price that is exponentially higher than any other shareholder offering through this plan is simply unjust.

6.	This price gauging of victims should not be tolerated by the court but is permitted in this registration rights agreement. Without a doubt, the fact that the Debtors need to provide steep discounts and remove price restrictions and other limitations around the backstops will drive the stock price down. The only shareholders that benefit from these contorted arrangements are the current shareholders given that it gives their stock a significant market advantage to be able to sell and trade during the 90-day lockout period when other shareholders like the victims are forced to hold. Again, it is important to note that the degree to which these shareholders have influenced stakeholders and decision-makers through the creation of this registration rights agreement through "disclosable economic interest" is unknown because the court has chosen not to enforce Bankruptcy Rule 2019 through a call for disclosures and transparency.

7.	**PLEASE TAKE FURTHER NOTICE** that this registration rights agreement does nothing to protect victims from the financial risks of another devastating wildfire caused by PG&E. This agreement seems to overly rely upon the California Wildfire Fund without other safeguards. The 90-day lockout period is particularly detrimental for victims given that this 90-day period falls within the heart of wildfires season. The Debtors continued statements that they are safe operators and have prepared for wildfire season are unsubstantiated by any facts or measurable outcomes. This "safety first" rhetoric rings hollow for wildfire survivors and the fact that the TCC has largely ignored the unmitigated wildfire risks in their negotiations is very unfortunate. Through this registration rights agreement, victim claimants are disproportionately exposed to these risks and that is just another way this agreement and the associated plan of reorganization are manifestly unjust.

## **CONCLUSION**

8. This registration rights agreement was not disclosed to victims before their vote. Furthermore, the consistent impasse between the Debtors and the TCC has largely been unaddressed in this registration rights agreement. The mere 2.1% increase in shares does nothing to address the underlying miscalculation of value for those shares. The Debtors and the TCC arguments that "percentage" provides overall parity is flatly bad math. The VALUE of the stock and the protections under this registration rights agreement significantly disadvantage victims when compared to other shareholders and any other class in this proceeding. The degree to which conflicts of interests have driven these disparities among classes is largely unknown because of the unwillingness of parties and the court to enforce Bankruptcy Rule 2019. However, what is clear is that victims are faced with a plethora of unmitigated risks through this registration rights agreement which no other class of claimants are forced to endure. This approval of this registration rights agreement further violates U.S. Bankruptcy Code Section 1129(a)(8) and Section 1129(b) given that it markedly unfair, inequitable and impairs victim claimants. I urge the court not to succumb to the pressures from parties to quickly approve this agreement without due process. This order should be reconsidered.

Dated: June 16, 2020

Respectfully submitted,

William B. Abrams
Pro Se Claimant