1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                    -oOo-

4    In Re:                    ) Case No. 19-30088-DM
                               ) Chapter 11
5    PG&E CORPORATION AND PACIFIC   )
     GAS AND ELECTRIC COMPANY,  ) San Francisco, California
6                               ) Tuesday, June 16, 2020
                    Debtors.    ) 10:00 AM
7    _____ )
                               DEBTORS' MOTION FOR ENTRY OF
8                              AN ORDER (I) APPROVING TERMS
                               OF, AND DEBTORS ENTRY INTO
9                              AND PERFORMANCE UNDER,
                               AMENDED EQUITY BACKSTOP
10                             COMMITMENT DOCUMENTS AND
                               (II) AUTHORIZING INCURRENCE,
11                             PAYMENT AND ALLOWANCE OF
                               RELATED PREMIUMS AS
12                             ADMINISTRATIVE
                               EXPENSE CLAIMS [7848]
13
                    TRANSCRIPT OF PROCEEDINGS
14              BEFORE THE HONORABLE DENNIS MONTALI
                 UNITED STATES BANKRUPTCY JUDGE
15
     APPEARANCES (Via Zoom):
16   For the Debtors:          STEPHEN KAROTKIN, ESQ.
                               Weil, Gotshal & Manges LLP
17                             767 Fifth Avenue
                               New York, NY 10153
18                             (212)310-8000

19                             PAUL H. ZUMBRO, ESQ.
                               Cravath, Swaine & Moore LLP
20                             Worldwide Plaza
                               825 Eighth Avenue
21                             New York, NY 10019
                               (212) 474-1036

22
     For Individual and Tubbs  JEREMIAH F. HALLISEY, ESQ.
23   Fire Claimant:            Hallisey & Johnson
                               465 California Street
24                             Suite 405
                               San Francisco, CA 94104
25                             (415)433-5300

(973)406-2250 | operations@escribers.net | www.escribers.net

```
 1
    For AT&T Corp.:            BENJAMIN MINTZ, ESQ.
 2                             Arnold & Porter Kaye Scholer LLP
                               250 West 55th Street
 3                             New York, NY 10019
                               (212)836-8000
 4
    For Official Committee of  JOHN H. MACCONAGHY, ESQ.
 5  Tort Claimants:            MacConaghy & Barnier, PLC
                               645 First Street West
 6                             Suite D
                               Sonoma, CA 95476
 7                             (707)935-3205

 8  For Fire Victim Trustee:   DAVID J. MOLTON, ESQ.
                               Brown Rudnick LLP
 9                             7 Times Square
                               New York, NY 10036
10                             (212)209-4800

11  For Public Employees       MICHAEL S. ETKIN, ESQ.
    Retirement Association of   Lowenstein Sandler LLP
12  New Mexico:                One Lowenstein Drive
                               Roseland, NJ 07068
13                             (973)597-2500

14  For PG&E Shareholders:     JAMES O. JOHNSTON, ESQ.
                               Jones Day
15                             555 South Flower Street
                               50th Floor
16                             Los Angeles, CA 90071
                               (213)489-3939
17
    For Ad Hoc Committee of    MICHAEL S. NEUMEISTER, ESQ.
18  holders of trade claims:   Gibson, Dunn & Crutcher LLP
                               333 South Grand Avenue
19                             Los Angeles, CA 90071
                               (213)229-7000
20
    For Official Committee of  GREGORY A. BRAY, ESQ.
21  Unsecured Creditors:       Milbank LLP
                               2029 Century Park East
22                             33rd Floor
                               Los Angeles, CA 90067
23                             (424)386-4000

24

25
```

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

For Official Committee of Tort Claimants: ROBERT A. JULIAN, ESQ.
Baker and Hostetler LLP
600 Montgomery Street
Suite 3100
San Francisco, CA 94111
(415)659-2600

Also Present: William B. Abrams
Individual Fire Claimant

Eric Carlson,
Individual Fire Claimant

Debra Grassgreen,
Individual Fire Claimant

Court Recorder: LORENA PARADA/ANKEY THOMAS
United States Bankruptcy Court
450 Golden Gate Avenue
San Francisco, CA 94102

Transcriber: SHARONA SHAPIRO
eScribers, LLC
7227 N. 16th Street
Suite #207
Phoenix, AZ 85020
(973)406-2250

Proceedings recorded by electronic sound recording; transcript provided by transcription service.



Case: 19-30088 Doc# 7984 Filed: 06/17/20 Entered: 06/17/20 08:32:57 Page 3 of 83

PG&E Corporation and Pacific Gas and Electric

1

2                              -oOo-

3      (Call to order of the Court.)

4           THE CLERK:  This is the bankruptcy court for the

5  Northern District of California.  Court is now in session, the

6  Honorable Dennis Montali presiding at our PG&E Corporation.

7           One moment, Your Honor.  I'll bring in counsel.

8           THE COURT:  All right.  Can you hear me all right, Ms.

9  Parada?

10          THE CLERK:  Yes, Your Honor.  I can hear you and see

11 you.

12          THE COURT:  All right.

13          THE CLERK:  Mr. Karotkin is joining now.

14          THE COURT:  Good morning, Mr. Karotkin.

15          MR. KAROTKIN:  Good morning.  How are you?

16          THE COURT:  Okay.

17          MR. KAROTKIN:  I can hear you fine.

18          THE COURT:  Day ninety.

19          THE COURT:  Mr. Zumbro, good morning.

20          MR. ZUMBRO:  Good morning, Your Honor.

21          THE COURT:  Mr. Abrams, you can unmute.  There you go.

22 Good morning, Mr. Abrams.

23          MR. ABRAMS:  Good morning.

24          THE COURT:  And is Mr. Scarpulla coming in, Ms.

25 Parada?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    THE CLERK:  Your Honor, I don't see him as having

2 joined in.

3    UNIDENTIFIED SPEAKER:  I believe Mr. Hallisey is going

4 to be speaking on behalf of that party.

5    THE COURT:  Mr. Hallisey; is Mr. Hallisey in the --

6    THE CLERK:  Yes, I see Mr. Hallisey.  I'll bring him

7 in.

8    THE COURT:  Okay.

9    THE CLERK:  Mr. Hallisey is joining now.

10    THE COURT:  All right.  Mr. Hallisey, you need to

11 unmute your microphone and turn on your video.

12    MR. HALLISEY:  I'm here, Your Honor, and the video is

13 being turned on.

14    THE COURT:  Okay.  Good morning.

15    MR. HALLISEY:  Good morning.

16    THE COURT:  All right.  Mr. Zumbro, do you want to

17 begin, and are you going to reserve some time?

18    MR. ZUMBRO:  Yes, sir, I'd like to reserve three

19 minutes, but I don't think I'll need the full thirty minutes,

20 in any event.

21    THE COURT:  Okay.

22    MR. ZUMBRO:  Is there any preliminary housekeeping

23 things that Your Honor would like to take care of before, or

24 should I just start?

25    THE COURT:  Well, I'll take that up with Mr. Karotkin

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1   and others after this portion of the argument.

2          MR. ZUMBRO:  Okay.  Well, if it pleases the Court,

3   Your Honor, we are here today on the debtors' motion to approve

4   the amended equity backstop commitment documents.  That's at

5   docket number 7848.

6          Your Honor, this is an important motion for the plan

7   and for the plan funding process as obtaining the relief sought

8   in the motion will allow the debtors to carry out their

9   comprehensive equity-raise strategy.

10         The debtors' position on the equity raise has remained

11  consistent throughout these proceedings, that the best way to

12  conduct an equity raise is through a marketed public offering.

13         A marketed public offering provides the best

14  opportunity to sell equity at the highest price per share.  The

15  backstop amendment creates the opportunities for the debtors to

16  affect a public marketed offering and accelerate its return as

17  a normal capital markets participant post-emergence.

18         Without these amendments, the debtors would need to

19  draw on the backstop commitments that fund the plan at a

20  significantly lower equity price than the debtors expect to

21  obtain through a market offer.

22         The debtors firmly believe that the backstop

23  amendments are in the debtors' best interests, as well as in

24  the best interests of all the stakeholders, including,

25  importantly, Your Honor, the Fire Victim Trust who will be

PG&E Corporation and Pacific Gas and Electric

1    receiving 22.19 percent of the debtors' equity at emergence.

2    Your Honor, the debtor received two objections

3    yesterday, but importantly, neither of the official creditors'

4    committees, the TCC or the UCC, has opposed the relief that is

5    sought by the debtors in the motion.

6    THE COURT:  Was the TCC prohibited from opposing it,

7    if they wanted to, under the RSA?

8    MR. ZUMBRO:  They agreed, under the terms of the RSA

9    stipulation, not to oppose the motion, but I believe, Your

10   Honor, that they support the relief in the sense that, A, the

11   financing helps the fire victims by obtaining long-term

12   investors, and B, the fee is payable solely in shares and does

13   not dilute the fire victims' stock.

14   THE COURT:  Well, your opponent, particularly Mr.

15   Hallisey, believes that it does.  I mean, how do you counter

16   that argument?

17   MR. ZUMBRO:  I believe there's some missed

18   apprehension in the objections as to what actually happens

19   through the amendment.  Mr. Abrams' objection seems to assert

20   that the amendments would turn the backstop -- I'm looking at

21   his objection -- "turns the backstop into the primary

22   financing".

23   THE COURT:  Right.

24   MR. ZUMBRO:  That's the --

25   THE COURT:  That's what I read too.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    MR. ZUMBRO:  That's the exact opposite, Your Honor, of

2  what the amendment would do.  The amendment would allow the

3  debtors to undertake market offerings at substantially higher

4  prices and would avoid the need for the debtors to have to draw

5  on the backstop commitment.  The backstop commitments are

6  there, and they have been a very important part of this plan

7  and a foundation for the plan, but the debtors have never

8  intended to draw on them if they were able to do so at higher

9  prices.

10    THE COURT:  Well, am I correct the backstop is what it

11  says; it's a backstop.  So --

12    MR. ZUMBRO:  Right.

13    THE COURT:  -- Mr. Ziman's testimony at the trial, and

14  his prior testimony to me suggests that he believes if the

15  company needs to go to the backstop, or now an amended

16  backstop, it can do it, it just costs more.

17    MR. ZUMBRO:  Correct.

18    THE COURT:  And it costs more whether it's in terms of

19  depressed equity or it costs more to do it.  Either way you're

20  brining in a relief pitcher at a higher place.

21    MR. ZUMBRO:  That's correct, Your Honor.

22    THE COURT:  Okay.  All right.

23    MR. ZUMBRO:  The issues that were raised by GER

24  Hospitality, the other fire victims, raise many of the same

25  issues regarding what's referred to as normalized estimated net

PG&E Corporation and Pacific Gas and Electric

1    income, and their unfounded concerns regarding plan feasibility

2    that were presented in their ex parte motion and their proposed

3    modifications to the debtors' plan, which the Court denied in

4    your docket order of June 14th, 2020.  Your Honor, their

5    objections really are not relevant to the motion that's before

6    the Court today.

7         As the Court is aware, the company is party to several

8    backstop commitment letters under which it may draw up to nine

9    billion dollars to fund the plan on the terms and conditions

10   set forth therein.  I may refer to these as the BCLs.  As I

11   mentioned, these backstop letters have served a very important

12   purpose in the sense that they were the foundation around which

13   the plan was built.

14        Prior to the current proposed amendment, the backstop

15   letter contemplated a three-tiered equity offering structure

16   and included certain pricing requirements:  one, a marketed

17   offering at 13.5 times earnings which, based on current share

18   prices, current market prices, equates to 18 to 19 dollars a

19   share; two, a rights offering at approximately 10.6 earnings,

20   as adjusted, which would equate to approximately 11 to 12

21   dollars per share; or three, drawing on the backstop, at around

22   8.8 times earnings, as adjusted, which equates to a price of

23   approximately $7.50 a share.

24        The important point is, due to the COVID-induced

25   market dislocation, it's become evident that the only viable

PG&E Corporation and Pacific Gas and Electric

1    option under this structure would be drawing on the backstop

2    without the current amendments.

3            THE COURT:  Mr. Zumbro, let's turn this into simple

4    laymen's terms.

5            MR. ZUMBRO:  Sure.

6            THE COURT:  The market today is what it is, and if the

7    company tried to issue new stock at 18 dollars, it'd be laughed

8    off of Wall Street.  If they tried to issue it at ten dollars

9    for rights, nobody would buy -- pay more to get something that

10   they could buy at a lesser price.  And the company is forced to

11   go to backstop.  They're, in effect, upping the price

12   dramatically that they pay and giving a bargain to the backstop

13   parties.  Is it that simple?

14           MR. ZUMBRO:  It is that simple, Your Honor.  I think

15   it's that simple.  And I think, for that reason, it is

16   demonstrably within the debtors' business judgment to enter

17   into this amendment because it's better for old equity, it's

18   better for new equity, and it has no impact whatsoever on

19   creditors.  And importantly, as we pointed out in our papers,

20   it does not have any impact whatsoever on the percentage of the

21   overall equity of the reorganized company that will go into the

22   fire victims' trust.

23           It doesn't impact the percentage, but we believe, and

24   Mr. Ziman's declaration, which is evidence, supports this, that

25   in fact the value of the stock that will go into the fire

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1   victims' trust will benefit greatly from the math that Your

2   Honor just went through.

3        THE COURT:  Well, the number of the dilution of 20.1

4   or now 22 down to some other number, that's just an absolute

5   guarantee, but the flip side that I think both other objectors

6   argue is that it will drop the value, that the value of that 22

7   percent will drop, if you go with the facts -- I mean, I go

8   with the motion, and I guess I don't -- just explain why that's

9   not true.

10        MR. ZUMBRO:  I think it's not true because, as Your

11   Honor just pointed out, without the amendment, we would be

12   forced to sell the shares to the backstop parties at $7.50 a

13   share.  Mr. Ziman has made it clear that we have this plan

14   fully funded, but we'd like to fund it at the most optimal

15   price.  And so if we have to hit the $7.50 a share, that

16   impacts the price of this stock in everybody's hand.  It would

17   have a depressing effect on the stock price for all

18   shareholders, including the Fire Victim Trust.  On the flip

19   side --

20        THE COURT:  So if we can jump forward to the effective

21   date and we can say that the fire trustee now has twenty-two

22   percent of the company, if the company has to go to backstop,

23   that twenty-two percent is still twenty-two percent, but it's

24   worth much less, right?

25        MR. ZUMBRO:  Correct.  Correct.  And we have already,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    Your Honor, showed an ability to raise money at a higher price.

2    The company announced a PIPE, which is a private investment and

3    public equity.  The acronym is PIPE --

4                THE COURT:  Right.

5                MR. ZUMBRO:  -- which is used, which was announced

6    last week.  That equity offering was at around $10.50 a share,

7    significantly higher, I would note, than the backstop share.

8    And that forms the foundation for us to go out and raise the

9    rest of the money.

10               There was 3.25 billion dollars which was agreed to be

11   raised in the PIPE.  The remaining 5.75 billion dollars --

12   sorry, they're big numbers -- the remaining 5.75 billion

13   dollars will be raised through a market offering, if Your Honor

14   grants the relief we're requesting today.

15               And so that will -- the PIPE can't be done without the

16   amendments that we're asking for today.  It's at a higher price

17   than the backstop.  And then we're hoping that the marketed

18   offering will be at an even higher offering -- a higher price

19   than the PIPE.  And so the value of the 22.19 percent that goes

20   into the Fire Victim Trust will be considerably higher if Your

21   Honor approves this amendment, and we're able to do a market

22   offering, rather than if we're forced to sell stock at $7.50 a

23   share which is a considerable discount to the current trading

24   price.

25               THE COURT:  Got it.  Okay.  And do you want to reserve

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    the rest of your time or do you want to -- do have some more to

2    add now?

3              MR. ZUMBRO:  Um --

4              THE COURT:  Whatever.

5              MR. ZUMBRO:  I don't -- oh, the other point I would

6    like to point out, Your Honor, is that it's important that the

7    backstop -- the fee that we are paying for this amendment is

8    payable solely in shares.  It's a fixed amount of fifty million

9    shares.  But it's payable only in the event that the debtors

10   effect a public offering, which is what we are hopeful that we

11   will do.

12             But importantly, from an economic perspective, as Mr.

13   Ziman points out in his declaration, this fee, the fifty-

14   million-dollar fee -- excuse me -- the 50-million-share fee, is

15   by far -- it's more than offset by what we think is about 300

16   million shares that we would have to issue additionally if we

17   were forced to hit the backstop.  And we think that that would

18   preserve some 900 million dollars of equity value.

19             So I think it's important to note that while there is

20   a fee payable here, it's payable solely in shares, and so has

21   no impact on feasibility, it has no impact on plan funding and

22   the like, and like I said, it has no impact on creditors.  And

23   the impact on old equity and new equity is positive.  And for

24   that reason we think the amendment should be approved.

25             THE COURT:  Okay.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1  MR. ZUMBRO:  And we would respectfully ask you to do

2  so.

3  THE COURT:  Thank you.  We'll reserve about three

4  minutes for you.

5  All right, Mr. Abrams and Mr. Hallisey, have you

6  decided and agreed how to share your time?

7  MR. ABRAMS:  Yes, Your Honor.  I'm going to proceed

8  with about twenty minutes, and I believe Mr. Hallisey is going

9  to continue our arguments for about ten minutes.

10  THE COURT:  Okay, thank you.  You're up.

11  MR. ABRAMS:  Thank you, Your Honor.  I'm very

12  concerned about the backstop amendment motion, particularly in

13  light of the registration-rights agreement, which was approved

14  within hours of its issuance.  And given the fact that this

15  governs over fifty percent of the value for fire victims,

16  without having the opportunity to review, provide support or an

17  objection to that, leaves this backstop amendment in a very

18  difficult place in terms of its evaluation.

19  THE COURT:  Well, wait.  Are you objecting to the

20  rights amendment or to the backstop motion?

21  MR. ABRAMS:  Yes.  If I had the opportunity to object

22  to the registration-rights agreement, I would have done so.

23  There was no opportunity --

24  THE COURT:  Mr. Abrams --

25  MR. ABRAMS:  -- to do that.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1          THE COURT:  -- Mr. Abrams, you've objected to the

2   absence of a registration-rights agreement for months, and

3   suddenly the appointed committee, after weeks and weeks and

4   weeks of mediation, reaches an agreement, and now you're

5   complaining.

6          I'm having trouble understanding why you would

7   complain about --

8          MR. ABRAMS:  I --

9          THE COURT:  -- something that the committee agreed to.

10         MR. ABRAMS:  I love it that they agreed to it.  I just

11  wish there had been a few days between when it was presented to

12  parties to when the Court approved it.

13         So the Court approved it, issued an order approving

14  that, within hours, without any opportunity --

15         THE COURT:  And you didn't -- and Mr. Abrams, you

16  haven't made a motion for reconsideration.  You've been very

17  quick to file motions for reconsideration of other things.  You

18  didn't file one for this one.  So but --

19         MR. ABRAMS:  Okay, okay.

20         THE COURT:  -- that's not on the table today.  It's

21  that simple.

22         MR. ABRAMS:  I understand.  I'm just painting the

23  context of why this particular amendment is so important.

24         Your Honor, I'd like to divide up my time into three

25  parts.  First, I'd like to talk about how the debtors in their

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1   papers describe that they deserve deference to the business-

2   judgment rule and just trust them regarding this backstop

3   commitment, and that's how the Court should proceed.

4           Second, I want to outline a number of false assertions

5   that were rehashed in the debtors' arguments this morning.  And

6   lastly, I want to talk about a few remedies that I think could

7   turn this around.

8           So regarding the business-judgment rule deference,

9   Your Honor, it just -- I know these things we don't want in

10  front of this Court, but it's important.  At the same time

11  we're having this hearing, the Butte County Court is arraigning

12  PG&E for eighty-five counts of manslaughter.  That is not

13  insignificant to, on this side, giving them deference to the

14  business-judgment rule.

15          If an individual was charged with eighty-five counts

16  of manslaughter and then went into another court on that same

17  day asking for deference, they would be laughed off the court.

18  This makes no sense.  And we give them all the --

19          THE COURT:  Let us --

20          MR. ABRAMS:  -- business --

21          THE COURT:  -- let us --

22          MR. ABRAMS:  -- trust -- all of this trust associated

23  with the business-judgment rule that is undeserved.

24          THE COURT:  Mr. Abrams --

25          MR. ABRAMS:  Yes.

of 83 | operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corporation and Pacific Gas and Electric

1    THE COURT:  -- what if that convicted felon, was at

2    the same time, going into court asking permission to borrows

3    tens of billions of dollars to pay some of the victims of its

4    crime?  Would they be laughed out of court?  Would the judge

5    say no, you'll have to go finish your sentence; we're not going

6    to let you pay your victims of your crime?

7        Now, Mr. Abrams, you don't really mean that; do you?

8        MR. ABRAMS:  I do not really believe that this is

9    paying victims for the crime, Your Honor, which is why I

10   objected --

11       THE COURT:  Okay.

12       MR. ABRAMS:  -- to this.

13       THE COURT:  But that's a fundamental theory that

14   you've advocated all along, and again, I'm not here to talk you

15   out of your view.  I'm trying to focus only on today's

16   question.

17       MR. ABRAMS:  Okay.

18       THE COURT:  Go ahead, then.  Go ahead.

19       MR. ABRAMS:  Okay.  I'll continue.  Again, I'm just

20   trying to lay the foundation for my arguments, Your Honor.

21       So the City of San Francisco also filed an appeal or a

22   protest, sorry -- a protest associated with the debtors'

23   financing, and called it a house of cards, where the slightest

24   breeze will blow this over, let alone a fire.

25       However, Your Honor, I believe that this is more akin

PG&E Corporation and Pacific Gas and Electric

1  to a three-card Monte card game, where it is sleight-of-hand

2  and deception that is driving this deal.  The first sleight of

3  hand is definitional.  These are not backstop agreements.  They

4  eliminated the twenty-percent threshold for which these

5  backstop commitments could be held to.  Now there is no twenty-

6  percent.  They could make up the vast majority of their

7  financial commitments according to the things that they struck

8  out in this plan.

9         And again, it requires trust that, oh, no, that is

10  really not their intention.  But they eliminate that floor.

11  Why?

12         All this does is provide them with an opportunity to

13  undercut the victims' shares.  Yes, it will cost some of their

14  investors more money, but other investors, it will provide

15  greater returns.

16         Think of how they have changed this game and indicated

17  in their amendment that these backstops are now inevitable.  A

18  backstop is not inevitable before the offering takes place.

19  That defies the definition of a backstop.

20         The second sleight-of-hand in this backstop amendment

21  motion is regarding parity or equivalency.  The TCC, before

22  this backstop amendment was issued, indicated that their

23  threshold was that it needed to ensure that there was parity or

24  equivalency.  These backstops essentially are a fire sale, a

25  pre-fire sale, if you will.  $7.50 a share?  The debtors in

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    their arguments just prior indicated that the 3.25 billion

2    dollars deal that was just struck was at a price of $10.50 a

3    share.  They neglected to state that in that it said "up to" a

4    price of $10.50 a share.  Again, everybody else gets a

5    discount.  This drives the victims' shares lower and lower.

6         These deeply discounted stocks go to show that the

7    formulation that the victims were afforded to price their stock

8    was hugely overinflated, was nowhere near the market value.

9    This should not be permitted.

10        Your Honor, this essentially creates two classes of

11   stockholders.  It creates one class of stockholders who have

12   stock, who are going to be very well-positioned upon the exit

13   of bankruptcy.  They'll be able to sell off as quick as

14   possible, because these backstops are in place.  The other

15   group of shareholders will consist of victims, essentially

16   priced at eighteen-plus dollars a share, and everybody else

17   that's going to be having this stock at a greatly reduced

18   price, driving down the value of the shares.

19        The debtors have contended that this no longer will

20   take five to six years for the victims to get paid.  It is

21   likely to take five or six years for the value of the stock to

22   rebound from this.  Consider the fact that when that 3.25

23   billion deal hit, that that drove down the stock -- just that

24   one offering drove down the stock by 6.2 percent.

25        THE COURT:  But Mr. Abrams, what do you think would

PG&E Corporation and Pacific Gas and Electric

1  happen to the stock today if I disapprove this motion?

2          MR. ABRAMS:  Your Honor, the fact that they have to

3  amend these backstops to cover a bad deal and poor financing,

4  should not be lost on the Court.  They're turning to --

5          THE COURT:  What do you -- what do you think would

6  happen to the stock today if I disapproved the financing?

7          MR. ABRAMS:  Your Honor, I -- I believe that what this

8  points to, again, is the infeasibility of the plan.  The fact

9  that they have to make all of these amendments to make sure

10  that there are no restrictions on the price or how much

11  backstops shows you the level of confidence they have in the

12  plan.

13          Don't -- part of this is we're listening to their

14  words and not their actions.  If they're so confident, as they

15  stated before, that no, you know, our plan is fantastic, it can

16  withstand COVID, it can withstand the Kincade fire liabilities,

17  it can withstand penalties and fines, we got it all covered, no

18  problem; and then on the other hand, the backstop's oh, we need

19  perfect flexibility with that, because this is so shaky we need

20  as much flexibility as possible with the backstops.

21          They're trying to have their cake and eat it too.  On

22  the one hand they want to argue this is a well-financed plan.

23  On the other hand, they want to say well, we're a little unsure

24  about this.  We want complete flexibility with the backstops.

25  And again, Your Honor, it would require the Court and parties

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    to have enormous trust.  Don't follow our actions; listen to

2    our words.

3         PG&E has blown through those opportunities over and

4    over again.  Your Honor, this deal and these backstops plays

5    the short game for PG&E.  What this does is it allows the

6    current shareholders to sell off at the expense of new

7    shareholders, namely victims.

8         The notion that they provide parity by giving us an

9    extra two percent of stock is not the point.  You can have a

10   greater percentage of something that isn't worth anything; it's

11   still not worth anything.

12        This drags the victims' shares down into the gutter.

13   It exposes them and their shares to at least a couple wildfire

14   seasons, while the other shareholders leave.  That's what this

15   backstop agreement amendment has done -- this backstop

16   amendment is designed to do, is to support that exit.

17        THE COURT:  So Mr. Abrams, what happens if the -- if

18   the backstop is approved but there is no draw, and the public

19   financing and the other financing that Mr. Zumbro was referring

20   to becomes effective?  As I calculate it, the backstop parties

21   will get a chunk of shares, but the rest -- all these other

22   predictions won't happen.

23        So tell me, in your mind, if you disagree with that

24   proposition?  So I'm assuming, for the moment, unlike you, that

25   there will not be a draw on the backstop, there will be the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    nine billion dollars, based upon five-point-whatever it is,

2    public money plus the pipe plus the other debt financing plus

3    all these other things.

4           The backstop parties will never be called upon, and

5    they will get fifty million shares, which is not an

6    insignificant amount, but that's all that will happen.  What is

7    the scenario that happens at that point, in your mind?

8           MR. ABRAMS:  Well --

9           THE COURT:  Starting with the value of the PG&E

10    victims' stock?

11           MR. ABRAMS:  Your Honor, of course there's a lot of

12    unknowns as opposed to what happens in the market.  But if that

13    was the case, the debtors would not be negotiating this removal

14    of this twenty-percent floor.

15           THE COURT:  Well, you're not answering the --

16           MR. ABRAMS:  If it's --

17           THE COURT:  -- you're not answering the question.

18           MR. ABRAMS:  They would be so confident, that they

19    would --

20           THE COURT:  You're not answering your question.  You

21    keep going back to that point, which is a valid point, but you

22    didn't tell me what'll happen if what I said happens.  What, in

23    your judgment, will be place?  There won't be this tale of woe

24    that you described, will it?

25           MR. ABRAMS:  It -- it -- look, Your Honor, it still

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1   may be this tale of woe.

2          THE COURT:  Someone needs to mute a mic somewhere.

3   We're getting a lot of feedback here.

4          MR. ABRAMS:  No ambulance here, Your Honor.

5          So Your Honor, this still is a tale of woe.  This

6   still exposes victims to another summer, likely another few

7   summers, of risk.  And the debtors, again, have argued that no,

8   we're all prepared for these risks, even though they put no

9   witnesses forward, yet they need all of this backstop.  It

10  just -- it just does not add up.  It does not make sense.

11         Your Honor, I do believe that the victims, regardless

12  of these backstops, are significantly impaired and at risk.

13  This backstop agreement just increases their risks.

14         And -- and again, it just -- you know, we need to try

15  and improve this plan at every point we can, and this is one

16  area where we can improve the plan.  We should not allow the

17  debtors to be able to have these amendments, and on the other

18  hand, argue that they don't need them.

19         THE COURT:  Okay.  One more question.  It's June 16th.

20  You know if AB 1054 is to be believed, that's fourteen days

21  from now.  What is this alternative that you think could be

22  implemented, given these deadlines, if I disapproved the

23  current motion?  So the company was forced to go -- well, I

24  don't know what they do to go to plan B.  It sounds like the

25  three-and-a-half billion is not available.  So it sounds to me

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    like all that's left to go effective is to draw on the existing

2    backstop.  Do you agree with that or disagree with that?

3        And what else -- what could happen if I am persuaded

4    by your argument and I say to Mr. Zumbro, motion denied?  Then

5    what happens?

6        MR. ABRAMS:  Well, I guess they would have to rely on

7    their closing arguments, Your Honor.  I guess they would have

8    to rely on the fact that they got this all locked up, and they

9    are so confident they'll be able to get the equity.  I guess

10   they would have to rely --

11       THE COURT:  But where would they get it?  Where would

12   they get it?  They wouldn't sell it at eighteen dollars.  They

13   wouldn't get the subscription agreement at ten dollars.  So it

14   sounds to me like what they would do, given -- if you are

15   persuasive, is they go to the existing backstop, which means

16   7.50, right, or whatever the number is.  I've forgotten the

17   number.

18       MR. ABRAMS:  And --

19       THE COURT:  Nothing could be more a guarantee to

20   perhaps, either kill the plan, which is again, maybe what you'd

21   like, or depress the stock dramatically.

22       MR. ABRAMS:  So Your Honor, but that's like saying we

23   should give them any leeway, whatever way this plan goes

24   forward is better than no way at all, that there is no scenario

25   about how we move forward, never mind the devastation, never

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1  mind the impacts of claimants.  It's just better to approve the

2  plan and roll the dice --

3      THE COURT:  Okay.

4      MR. ABRAMS:  -- than it is to not do it.  And I

5  just -- I just flatly disagree with that approach.

6      THE COURT:  And Mr. Abrams --

7      MR. ABRAMS:  At some point --

8      THE COURT:  -- but that has been your --

9      MR. ABRAMS:  -- this plan --

10      THE COURT:  -- philosophy for months, and again --

11      MR. ABRAMS:  It's not a philo --

12      THE COURT:  -- it's not my place to --

13      MR. ABRAMS:  -- it's --

14      THE COURT:  -- it's not my place to try to talk you

15  out of your view, it's to make my best judgment on whether to

16  adopt -- accept your view or to accept the view of lots of

17  other people.  That's all.

18      Go ahead.  You need to -- finish up, and I'll try not

19  to ask you any more questions.

20      MR. ABRAMS:  Okay, thank you.  Sorry, Your Honor.  And

21  I apologize for perhaps not addressing your points as directly

22  as I should.

23      THE COURT:  Lawyers are used to not answering the

24  questions, why should anybody be different?  Judges don't even

25  all of the time.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1   MR. ABRAMS: Thank you. Your Honor, I just

2   wholeheartedly believe that the Court has to set some bar that

3   establishes that the plan has to at least be this good in order

4   for it to pass muster.

5   And -- and this backstop amendment argues against the

6   efficacy of the plan. And I know it's meant to be an insurance

7   policy, but if you remove the price restrictions and you remove

8   the fact that this has to be limited to twenty percent, it's no

9   longer an insurance policy.

10   And -- and again, all this does is make the plan worse

11   for victims and worse for the public. Consider that they are

12   now looking to make sure that 7.5 billion is being charged to

13   rate payers. Again, they're just -- they are -- they're saying

14   one thing in one court and one hearing and then contradicting

15   themselves completely in the other court and in the next

16   hearing.

17   We have to -- we have to get to a point where they

18   have to demonstrate with their actions that they intend to

19   follow through with their commitments. And that is not in this

20   backstop commitment, and it undermines the plan feasibility.

21   I'll stop there, Your Honor.

22   THE COURT: Okay, thank you, Mr. Abrams.

23   Mr. Hallisey, you have about ten minutes.

24   MR. HALLISEY: Well, Your Honor, I think you -- I

25   think you understand the problem, and I understand your dilemma

PG&E Corporation and Pacific Gas and Electric

1  about essentially, at 14.9 times, the victims are going to

2  subsidize existing equity.

3  Even if you take Mr. Ziman's second declaration, he

4  says the upper end of the range is 10.6 times rather than 14.9

5  times earnings.  That results in a shortfall of approximately

6  two billion dollars that the sticker price is going to be

7  discounted.  I mean, that's the bottom line.

8  You are faced -- the debtor has an equity offering

9  that they're trying to put together at the present time, and if

10  you don't figure out an elegant solution to this thing, it's

11  not going to be probably be helpful to anyone's position,

12  including the victims'.

13  The only thing I could think of to suggest would be

14  that the debtor arrange for a debenture to the victims in the

15  amount of a billion-two to relieve at least a substantial

16  portion of the shortfall, and let's everyone call it a day.

17  You know, this plan is going to be confirmed.  I think

18  it just has to (break in audio) modification.  These great

19  risk-takers on Wall Street will still preserve their equity

20  position, but will be partially relieved from a total subsidy

21  of their long investment decisions.

22  As we started this case, the victims did not choose to

23  be here.  The debtors and the shareholders did choose to be

24  here.  And that's it, Your Honor.

25  You understand the issue.  At 14.9, there's been

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    dramatically changed conditions since those were mentioned for

2    the first time in December.  There's unemployment, all --

3    mostly all resulting from COVID-19.

4        Just looking at the Bloomberg headlines of this week,

5    the cover, GE climbs five percent, retail sales sixteen

6    percent, unemployment 14.7.  There's changed conditions since

7    the time of 14.9 was tentatively agreed on as based on an index

8    that has dramatically fallen since then.  And I think there has

9    to be an adjustment.

10       Obviously the subrogation people are not interested in

11   helping out the situation by taking some sort of discount in

12   stock.  They're going to leave with a barrel full of money.

13   And it's really unfair, is the bottom line.

14       And the tort victims' committee is hampered by having

15   a restructuring support agreement that hampers them from

16   opposing this thing.  But it's really unfair.  It's blatantly

17   unfair, and you should not permit that without some adjustment

18   that allows the equity financing to go forward but make an

19   adjustment to help out the victims a little better and get them

20   more cash.

21       That's the argument.  You understand the problem.  And

22   I understand your (break in audio).

23       THE COURT:  Okay.  Thank you, Mr. Hallisey.

24       Mr. Zumbro, do you want to add anything further.

25   Well, actually, Mr. Zumbro, wait one second.

of 83
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    I've been -- I'm going to -- Mr. Julian has his hand

2   up.  And Mr. Julian, I'll bring you into the room if you want

3   to be heard on this matter, but I didn't know that the TCC was

4   taking a position.  But if you want to come in on this matter,

5   then take your hand down, and we'll bring you into the panel.

6        All right, Ms. Parada, bring Mr. Julian in, please.

7        THE CLERK:  Mr. Julian is joining now.  Mr. Julian,

8   please state your appearance and unmute your microphone.

9        THE COURT:  You have to -- there you go.  Mr. Julian I

10  wasn't expecting you to argue, and we didn't set time for you,

11  but if you -- I know -- and I do expect to hear from you on

12  other subjects.  So would you want to weigh in on this argument

13  today?

14        MR. JULIAN:  I'll be brief, Your Honor.

15        Yes, the TCC did agree not to oppose this motion, and

16  for good reason.  Your Honor, it benefits the victims across

17  the board and preserves their anti-dilution protections under

18  the plan and preserves their protections for the trustee to

19  exercise his broad discretion within the recently negotiated

20  registration rights agreement, to maximize value for the

21  victims' stock by selling, when he wants to, subject to terms

22  of the agreement.

23        Mr. Zumbro's explanation is exactly why we decided not

24  to oppose this motion.  First, Your Honor, and really the

25  opposition is misdirected in this; the TCC and eighty-eight

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    percent of the victims who voted for this, want stability in

2    the marketplace for this stock.  And this motion achieves it in

3    two ways.

4          First, the pipe investment by the long-term

5    institutional investors at 3.25 billion dollars is good for

6    long-term stability in the marketplace.  That's what the TCC

7    wants.  And secondly, the offering at 5.75 billion dollars in a

8    more market-adjusted market price in the public offering is

9    excellent, because it's going to draw in long-term

10   institutional investors too.

11         And what the victims want is for the truth to be told,

12   Your Honor.  And trashing the stock is not good with incorrect

13   facts.  The correct facts are correctly stated in my closing

14   argument.

15         This utility has a corner on the largest energy market

16   in the fifth largest economy in the world.  It's a great stock

17   to buy.  And what the debtors have done in this brilliant

18   motion is to now put out 5.75 billion dollars in a market

19   offering, which is much higher than the backstop parties were

20   going to be paying.

21         You talk about doing justice in this case, now the

22   marketplace is going to price the stock, and it's going to

23   price it at a time, where because of COVID, unfortunately, the

24   markets are down, but if you look what's going to happen with

25   the Wildfire Mitigation Fund and everything, we have every

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    expectation that this stock is going to pop up, and the people

2    who buy the stock on the market are going to be making a long-

3    term good investment.  And we will go a long ways to curing the

4    problems that Mr. Hallisey and Mr. Abrams spoke about with the

5    stock.

6         Last but not least, Your Honor, the plan provides that

7    our victims' stock will not be diluted by any of this.  And no

8    one's said this to you, but let me do it in layman's terms.

9         As the stock price comes down and as fees are paid to

10   the backstop parties, the stock loss comes out of old equity.

11   It doesn't come out of the victims.

12        The new marketplace shareholders benefit.  The victims

13   benefit.  The employees of PG&E who are now guaranteed a long-

14   term employment with a well-capitalized company benefit.  And

15   last but not least, the registration-rights agreement that we

16   just negotiated provides full protection for the trustee to

17   exercise his discretion to maximize value over a period of time

18   that he and his financial advisors will decide.

19        And so Mr. Zumbro got it right.  Your Honor's

20   questions focused on the right thing.  And that's why this is a

21   very good motion, why the TCC is not opposing it, and in fact,

22   is supporting it.

23        THE COURT:  Thank you, Mr. Julian.

24        Mr. Zumbro, there's probably little to add with

25   that --

PG&E Corporation and Pacific Gas and Electric

1          MR. ZUMBRO:  Well, there's little to add --

2          THE COURT:  -- after those nice things from Mr.

3    Julian.

4          MR. ZUMBRO:  No, we do need these amendments, Your

5    Honor.

6          I would just like the record clearly to reflect how

7    far we've come in these cases for Mr. Julian to use the words

8    "brilliant" and "debtors" in the same sentence, and that's

9    really a testament to Your Honor's supervision of these cases

10   and Mr. Karotkin's good leadership on both sides with him and

11   Mr. Julian.

12         So look, we need these amendments, Your Honor.  The

13   only evidence that's in the record on this motion in front of

14   Your Honor is that this amendment would make it better for the

15   victims than not having this amendment.  That is the crucial

16   point, that we have a good plan, we have a fully funded plan,

17   but we want Your Honor to give us the ability to pivot, to

18   allow us, in light of COVID-19 and the disruptions that it has

19   caused in the market, to sell equity to the market rather than

20   hitting the backstop, because that's in the best interests of

21   the debtors and all stakeholders, including, in particular, the

22   fire victims' trust.

23         And for that reason we would respectfully ask Your

24   Honor to enter the approval order for the proposed amendment.

25         THE COURT:  Okay, thank you, Mr. Zumbro.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    Mr. Julian said how brilliant your side was, but he

2    didn't say how brilliant the judge's penetrating questions to

3    you on oral argument were.  No --

4    MR. ZUMBRO:  That was the unstated -- that was the

5    unstated premise of his question (sic), Your Honor -- or his

6    statement.

7    THE COURT:  I've given this some thought.  This has

8    been on an expedited basis.  But obviously it's critical, and

9    it's so critical to the points that we're dealing with in these

10   coming days.

11   I'm going to overrule the two objections and grant the

12   motion.  Let me explain very summarily why.

13   Mr. Abrams, first, again, I don't question your

14   emotion and your own feelings, but I think you start with a

15   misconception.  And I read your arguments -- let me switch to

16   the mic.

17   I read your written arguments and was surprised to

18   have you, in effect, misstate something which I think -- I hope

19   was an error and just an oversight.  But you alleged that Mr.

20   Ziman said a draw on the backstop was inevitable, when in fact,

21   that's exactly the opposite of what he said, that it would --

22   without the motion, the draw would be inevitable.

23   And that's the starting point to go back and say I

24   wanted to make sure I understood what Mr. Ziman was saying.

25   And I do not -- I do not think your characterization is

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1   accurate.  Again, I'm not faulting you.  I'm just clarifying

2   it.

3           And on a related subject, Mr. Hallisey and his

4   colleagues complained and have complained that I then want the

5   opportunity to reexamine Mr. Ziman.  And I gave that some

6   thought, too.  I obviously acted quickly on what was sent on a

7   docket text -- I mean, on a posting on the weekend.  But I

8   wanted to make sure that it was the correct thing to do not to

9   go back to take further testimony.

10          And what was helpful for me is the way the debtors and

11  Mr. Zumbro, in their written response and explained it today,

12  and I went back and reviewed Mr. Ziman's declaration.  Mr.

13  Ziman said there -- it's a very difficult situation for a

14  variety of reasons, but we can make it anyway.  And then his

15  supporting declaration on today's motion, in effect, says yes,

16  we have the world out there with the COVID and the market and

17  the economy that we all know about.  And there is a better way

18  than the fallback.

19          So much -- so to me, that is why I am not going to

20  require Mr. Ziman to testify further, where I'm going to

21  consider this a closed matter.  That Mr. Hallisey -- I

22  appreciate his creative ideas, but once again, the notion that

23  I, on June 16th, can order the debtor to do anything like go

24  out and borrow 1.2 billion dollars on a debenture, it's wishful

25  thinking.  I simply can't do it.

PG&E Corporation and Pacific Gas and Electric

1    I have the option only of approving the motion or

2   denying the motion.  That said, occasionally judges can

3   influence slight tweaks.  I do it all the time.  I've done it

4   several times in connection with the plan issues, and in

5   several other cases I have not.

6    But here, to me, the evidence is satisfactory and

7   well-established that despite Mr. Abrams' pessimism, the

8   company is charting a course in the middle of COVID and the

9   depressed economy and bankruptcies popping up everywhere, and

10  still is on track to be able to make this plan effective on

11  schedule.

12   And the support of Mr. Julian and the TCC is

13  consistent with, frankly, my own personal view, that when a

14  company emerges from bankruptcy and it's gotten the green light

15  from the governor and his legislative position, the regulators

16  from its CPUC position, the bankruptcy court, whether you like

17  my take or not, the process of cleansing -- if it's a

18  cleanse -- as we say for -- we have a phrase for businesses

19  that file in a bankruptcy and stay there too long, it's not a

20  parking place, it's more like a carwash.

21   And lots of companies go through the carwash.  PG&E

22  hasn't quite gone through the carwash, but it's coming -- it's

23  headed out the door, in my mind, a much better place to be out

24  there, to deal with its vast problems, including the billions

25  and billions and billions of dollars of damage that it caused

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    to the victims like Mr. Abrams and his 80,000 fellow sufferers,

2    for which I am sad and sympathetic, and pleased that they're on

3    the way to getting some recovery.

4         So that's a long way of saying I'm going to overrule

5    the motion (sic).  I'm going to grant the motion for the

6    alternative backstop and conclude this phase of the hearing and

7    turn to the second question about what are the open issues on

8    the details of the plan.

9         Let me tell you all my personal intention, if I can do

10   it, is by tomorrow to be able to issue at least a written

11   decision.  And it should come as no surprise, I'm going to come

12   to the conclusion that the plan should be confirmed.  I am

13   still open on a couple of issues that hopefully Mr. Karotkin

14   and others are going to educate me on.  And it'd be my

15   expectation that if I can keep with this goal tomorrow, to

16   issue at least an explanation of my thinking on the issues that

17   were contested in the trial and some of the more -- or I should

18   say -- less controversial issues, but nevertheless requisites

19   for the bankruptcy court to make the determinations to confirm

20   a plan.

21        But the operative document -- again the lawyers will

22   understand this and some of the non-lawyers will understand it,

23   that it's still -- the Court speaks through an order not an

24   opinion, and the final event for this pre-confirmation process

25   to get to the company for the company to move to the effective

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    stage is to sign an order confirming the plan, or words to that

2    effect.

3            And my expectation is to schedule one more hearing,

4    probably Monday or Tuesday, for any open issues on the order

5    and to sign the order so that that will start the ball running

6    in a more formal sense, in terms of the decision.  So that's a

7    status report on where we are.

8            So I'm going to ask Ms. Parada to excuse Mr. Abrams

9    and Mr. Hallisey and Mr. Zumbro.  I guess you don't want to

10   stick around for this phase.

11           Mr. Julian, please stay with us.  And Mr. Karotkin,

12   I'm going to let some of the other folks that want to be heard

13   on the status of the open issues, and they'll come in in just a

14   minute.

15           And Mr. Zumbro -- well, Mr. Zumbro left, but I'll

16   expect Mr. Zumbro or someone from his firm to be uploading the

17   final version of the order approving today's motion.

18           Yes, the new parties coming in, make sure you state

19   your name for the record.  Mr. Molton, why don't we start with

20   you, please?  Name for the record?  Unmute yourself.  Turn your

21   mute button -- unmute your mic.

22           MR. MOLTON:  I thought I just did.  And I actually

23   muted myself, Your Honor.  So good morning.  David Molton of

24   Brown Rudnick, for the fire victim trustee.

25           THE COURT:  All right, Mr. Julian, you've already

PG&E Corporation and Pacific Gas and Electric

1   stated your appearance.

2          Mr. Bray, you're coming in?  And then -- all right,

3   let's start with Mr. Bray.

4          MR. BRAY:  There we go.  Is that better, Your Honor?

5          THE COURT:  Sure, just state your appearance.  Mr.

6   Bray, state your --

7          MR. BRAY:  Gregory Bray of Milbank, for the -- counsel

8   for the committee.  Your Honor, as you have seen, I'm having

9   connectivity issues and noise issues today.  If it becomes

10  intolerable, my partner, Mr. Kreller will step up and take up

11  the slack --

12         THE COURT:  Okay.

13         MR. BRAY:  -- if we have a real problem.

14         THE COURT:  All right, Mr. Mintz and then Ms.

15  Winthrop, please.

16         MR. MINTZ:  Good morning, Your Honor.  Benjamin Mintz,

17  Arnold & Porter, counsel for AT&T, and I'm speaking with Ms.

18  Winthrop, on behalf of the designated ad hoc group of business

19  claimants.

20         THE COURT:  Okay.  Ms. Parada, before I get the other

21  appearance, let me -- yeah, okay.  Let's bring Mr. Johnston and

22  Mr. MacConaghy and Mr. Etkin.  That's a little more than

23  normally, but I'm going to do that.

24         Ms. Grassgreen and Ms. Carlson, I'm not going to --

25  I'm not ignoring you.  I'm just going to bring you in to talk

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    about the specific issues that you're concerned about, in a

2    moment.  So the other counsel that I just identified, just

3    state your name and appearance for the record, please.

4             Mr. Johnston, let's start with you.  Good morning.

5             MR. JOHNSTON:  Good morning, Your Honor.  Jim Johnston

6    of Jones Day, on behalf of the shareholder proponents.

7             THE COURT:  Mr. MacConaghy?

8             MR. MACCONAGHY:  Good morning, Your Honor.  John

9    MacConaghy special counsel for the official committee of tort

10   claimants.

11            THE COURT:  All right.  And Mr. Etkin?

12            MR. ETKIN:  Good morning, Your Honor, or good

13   afternoon here.  Michael Etkin on behalf of the Public

14   Employees Retirement Association of New Mexico.

15            THE COURT:  Mr. Julian, do you want to stay in this

16   discussion?  I mean, again, I don't know where you and Mr.

17   MacConaghy kind of divide the turf here.

18            MR. JULIAN:  Mr. MacConaghy is going to take this

19   issue -- as you call it, issue 2, and I'll take the rest of

20   them, I believe.

21            THE COURT:  All right.  Let's start with Mr. Karotkin.

22   You're the master of ceremonies now.  What can you tell me?

23            MR. KAROTKIN:  Okay, Your Honor.  Stephen Karotkin,

24   Weil, Gotshal & Manges, for the debtors.

25            THE COURT:  Oh, I'm sorry, I mean -- Ms. Winthrop,

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    you -- okay, I'm sorry.  Go ahead.  Go ahead, Mr. Karotkin.

2              MR. KAROTKIN:  Okay.  On Sunday evening we filed a

3    revised draft of the plan and a revised draft of the

4    confirmation order, for people to have a look at and see how we

5    have addressed some of the outstanding objections and believe

6    have resolved most of them.

7              I think that we also filed a response with respect to

8    the pleading filed by the unsecured creditors' committee on

9    Sunday night as to their remaining issues, the first issue

10   being the language of section 8.2(e) of the plan and the

11   corresponding paragraph 34(d) of the proposed confirmation

12   order, regarding the consequences of assumption.

13             We've explained our rationale on that.  They have.  I

14   think we've gone as far as we can on that issue.  We think

15   we've addressed it appropriately.  And I think that is now in

16   your hands to decide.

17             THE COURT:  That's three -- you identified three

18   issues.  The third one seems to be the issue of adding --

19   extending the deadline out for assumption and rejection.

20             MR. KAROTKIN:  I was addressing them individually.

21             THE COURT:  Okay.

22             MR. KAROTKIN:  I'm sorry.

23             So that was the first issue with the UCC.  The second

24   issue with the UCC is determining and pre-judging what

25   constitutes a fire claim.  Again, we've responded to that, and

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    I think, if I read one of your docket orders appropriately, I

2    think that at least you were inclined to agree that that should

3    be addressed at the appropriate time in the context of an

4    actual dispute with respect to a claim and would not require

5    any further amendments.  Again, we would ask you to decide that

6    issue as well.

7         And the last issue, as you mentioned, is that we

8    requested a brief fifteen-business-day extension of the time to

9    make a decision with respect to assumption and rejection or to

10   change our mind on those items within that period.  We think

11   that in view of all the issues raised before the Court in the

12   last week so on those issue, that that's appropriate.

13        As we've stated in our pleadings, we don't think that

14   would prejudice anybody, and we would allow any contract that

15   is rejected to have thirty days from the date of rejection to

16   file a claim.

17        With respect to last Thursday's hearing on the

18   provisions of the trust documents, there were two issues raised

19   last week.  The first issue, Your Honor, you ruled on.  The

20   second issue you deferred on, at our request.

21        I would point out that we are still engaged in

22   discussions and negotiations among the debtors, the tort

23   claimants' committee, the trust representatives, and Mr. Mintz

24   and Ms. Winthrop's group, as with respect to this issue as well

25   as certain other drafting issues in the trust documents.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1        Those discussions are continuing, and in fact I

2   believe we have another call scheduled for after this hearing

3   to try to plow through those issues and get to a consensus.

4        I'm hopeful we can achieve that.  No guarantees, of

5   course.  I would suggest that for now we maintain the status

6   quo on that, and let's see what happens over the next twenty-

7   four hours.

8        I believe the last issue is the outstanding issue with

9   respect to PERA's objection to confirmation.  And that is

10  currently in mediation with former bankruptcy judge Newsome.

11  And I think it just would not be appropriate for me to comment

12  on the status of the mediation.

13       THE COURT:  Well, you've in effect said that the

14  status is it's still in mediation.  So that's the status.

15       MR. KAROTKIN:  Yes, and that -- that's correct.  And

16  Mr. Etkin can disagree with me, but I think that's an accurate

17  statement.

18       THE COURT:  So circling back to the three items that

19  you listed for the OCC, from your point of view, are those the

20  only three items in dispute?  I mean, to some extent, the

21  arguments made by the OCC and some other similarly situated

22  parties overlap, I think, the trust document issues.  But at

23  least if we can divide the territory or the turf battle between

24  the debtor, on the one hand, and the OCC on the other, it's

25  just you think just those three items are the -- are the open

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1  issues.

2       MR. KAROTKIN:  I believe so.

3       THE COURT:  Okay.

4       MR. KAROTKIN:  Those were the issues that Mr. Bray and

5  Mr. Kreller had raised in the pleading I think they filed this

6  past Friday.

7       THE COURT:  Yeah.  I'm trying to keep up with the

8  various pleadings.

9       Okay, let's go to Mr. Bray, then, to see if you agree

10  with the issue or there's anything more that you think I need

11  to know about, Mr. Bray.

12       MR. BRAY:  No, Your Honor.  Those are the three

13  issues.  It's the -- there was a revision to section 8.2(e) and

14  the confirmation order 34(d).  And we maintain that the words

15  "of any claims" should be stricken, otherwise the change isn't

16  acceptable to us.

17       And then the other two issues are, as Mr. Karotkin

18  noted, the definition of "fire claims" picking up vendors and

19  providers of services in respect of their claims against the

20  company; and the issue of the extension of the rejection date,

21  which we just don't believe the debtor has established cause to

22  essentially rewrite the disclosure statement order that dealt

23  with this and the plan that was put before the Court, when

24  confirmation -- when the hearing on confirmation was closed.

25       THE COURT:  Okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1          MR. BRAY:  But there's nothing else.

2          THE COURT:  Okay.  Let me go to Mr. Mintz and Ms.

3   Winthrop, because -- well, no, Mr. Julian, do you want to weigh

4   in on this -- these issues?  You need to unmute yourself, Mr.

5   Julian.

6          MR. JULIAN:  I'm not going to weigh in on the trust or

7   the -- the only thing is I'll say is on the UCC issue, we agree

8   with your tentative arguments on -- tentative conclusion on

9   issue 2.  But Mr. MacConaghy will explain the reasoning, if it

10  comes up today.

11         THE COURT:  Okay.  Mr. Mintz, let's go to you.

12         MR. MINTZ:  Your Honor, as Mr. Karotkin said, we're

13  still working in an effort to try to resolve outstanding

14  drafting issue with regard to the trust documents, the

15  confirmation order; and we do have a call this afternoon with

16  all the parties to try to work our way through that.  We hope

17  we can make as much progress towards resolution jointly with

18  the parties.

19         And if we are unable to resolve anything, we know

20  where Your Honor is, and we will seek your intervention if we

21  need it.  But we hope that we can reach a consensus with the

22  parties either later today or within the next twenty-four

23  hours.

24         THE COURT:  Ms. Winthrop, you concur with that, I

25  presume, right?

PG&E Corporation and Pacific Gas and Electric

1      MS. WINTHROP:  Yes, Your Honor.  We do have concerns

2  about much of the language of the documents, but we are

3  committed to working together to try to see if we can reach a

4  resolution consensually.

5      THE COURT:  Ms. Winthrop, Mr. Mintz.  Am I correct

6  that the specific three issues that the official creditors'

7  committee and the debtor are disagreeing about are not your

8  issues?  You're not concerned about them.  Is that right?

9      MR. MINTZ:  I think that's correct, Your Honor.  There

10  may be a little spillover in some of the concepts that are

11  flowing through to the trust documents with regard to assigned

12  rights and causes of action, so I don't think it's entirely

13  independent, but it's slightly different language that we're

14  focused on.

15      THE COURT:  Well, you may recall if -- during the

16  argument, then, when you were involved, and we were having the

17  argument about the trust issue, I, perhaps, went off

18  overthinking things, and I find these issues so interrelated

19  that I was concerned about them, and the last thing in the

20  world I want to do is make a ruling on an issue that I think is

21  discrete while the litigants are trying to negotiate a

22  resolution.

23      That being said, we have to do something.  So you

24  heard what my personal plan is.  I'm going to not do anything

25  on the issue that divides the trust and the trustee and your

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1  clients.  And by the way, I'll say that also with respect to

2  the individuals who are going to be heard in a couple of

3  minutes who wanted to be heard.  That's Mr. Carlson,

4  specifically, and Ms. Grassgreen.  And Mr. Carlson is the

5  person who I thought was going to be somehow in the loop with

6  you, counsel for the bigger creditors, the corporate creditor

7  fire victims, but I'm going to consider that issue as open, and

8  I'm not going to touch coming up with a ruling if, indeed, the

9  parties can reach a consensual resolution of it.

10        So Mr. MacConaghy, I assume that's in your

11  jurisdiction also, that that's for this afternoon's phone call,

12  right?

13        MR. MACCONAGHY:  Yes, Your Honor.  The only thing that

14  I would add is that I think there's a hearing on an unrelated

15  matter on June 22nd and maybe another one on June 24th, and it

16  might be a good idea to pick one of those dates as a holding

17  date in the event that we can't agree and we need to argue the

18  matter.

19        I am optimistic, based on everything I'm hearing, that

20  we'll come to a deal on this.

21        THE COURT:  Well, I'm optimistic too, but on the other

22  hand, I'm supposed to make these critical decisions, right?  So

23  let me just look at something for a minute.  I'm looking down

24  at something in my hand here for a second.

25        Yes.  I don't think we have anything, but that doesn't

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1   mean we can't.  I mean, getting these matters resolved for PG&E

2   is the highest of priorities, and June 22nd is next Tuesday, I

3   believe, right?  No, on Monday.  Next Monday.  So you heard me

4   make my comments about my personal expectation is to issue a

5   written decision on the big issues, or some of the issues, and

6   then to reserve a date for, sort of, final arguments, if you

7   will, on the form the order.  So I'm probably going to tell

8   Mr. -- wait.  Thinking a minute here.  I'm just -- let me think

9   out loud.

10          I'm going to consider and try to make a decision

11  within the next day on the open issues between the debtor and

12  the OCC, those three topics that we just talked about, and

13  leave open whatever you are going to be discussing before them.

14  And if they get resolved, fine, and if they don't -- but even

15  if they don't get resolved, I still want to have a hearing

16  where everybody has an opportunity to say the final word on

17  what is said in the order that confirms the plan, because

18  that's the operative document, in my opinion, and certainly is

19  the critical document for purposes of starting times and so on

20  and so forth.

21          So let me just read another message here.  See, I

22  don't look at the feature to send messages back and forth on

23  Zoom.  I do it separately in a text.

24          Yes, well we have -- we have a date set aside on the

25  24th, but I may set this earlier.  So I'll keep open about

PG&E Corporation and Pacific Gas and Electric

1    that.  I don't want to play chicken with the legislature with

2    June 30th looming.  I want to have my job done well before

3    then.

4            So Mr. MacConaghy, I will wish you and your colleagues

5    good luck on the phone call this afternoon.

6            MR. MACCONAGHY:  Thank you, Your Honor.  And then Mr.

7    Molton will speak on the Grassgreen/Carlson matter.

8            THE COURT:  Okay.  Okay.  Mr. Etkin and Mr. Johnston,

9    would you -- Mr. Johnston, unmute yourself, and I assume that

10   what I heard already, there is ongoing mediation in your

11   dispute, and there's probably nothing we need to talk about

12   now.  Is that a fair statement?  Sorry.  Are you Mr. Johnston?

13           MR. JOHNSTON:  Your Honor, that's a fair statement.

14   With Judge Newsome's help, I would say that we have reached

15   agreement in principle on all but one issue, and importantly,

16   our agreement in principle includes a mechanism for converting

17   claim amounts into shares, which I know is the thorniest issue.

18   Of course, the devil's in the details.  We're working on plan

19   language.

20           I talked to Mr. Etkin this morning.  We're both going

21   to work really hard to get this resolved in the next twenty-

22   four to forty-eight hours.

23           THE COURT:  Mr. Etkin, you concur?

24           MR. ETKIN:  I concur with that, Your Honor, and I

25   appreciate everybody's help in moving this along to where it

PG&E Corporation and Pacific Gas and Electric

1　currently is.

2　　　　　THE COURT:　Well, let me tell you.　From my point of

3　view, and you gentlemen obviously know the issues, but I know

4　the issues, and it would seem to me that it comes down to a

5　couple of rather obvious ones.　Would you be better off if I'd

6　say nothing?

7　　　　　Well, let me clarify my statement.　I said a couple of

8　times my goal is to issue a written decision, but I'm not

9　bashful about including in the written decision a paragraph

10　that says stay tuned.　There's no answer here.　And so in my

11　outline of my decision I have what we'll conveniently call the

12　securities litigation dispute.　And it should come as no

13　surprise, in my outline I've identified these various issues.

14　　　　　But suddenly, one of them maybe goes away, and that's

15　the subscription issue, because of the developments that have

16　been taking place, and the other ones, you're well aware of.

17　Would you prefer that I say nothing about any of the issues, or

18　would you like me to leave -- to speculate on what's the

19　opening issue and just leave that in the document?

20　　　　　Start with you, Mr. Johnston.

21　　　　　MR. JOHNSTON:　Your Honor, given where we are in the

22　discussions, I think a "to be decided" paragraph in your ruling

23　would probably be beneficial to all concerned.

24　　　　　THE COURT:　Of course, if I told you that I'm going to

25　issue the ruling on Wednesday, you might -- may be at a result

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    tomorrow, right?

2          MR. JOHNSTON:  And I'm hopeful that will be the case,

3    in any event.

4          THE COURT:  Mr. Etkin, what's your pleasure?

5          MR. ETKIN:  Your Honor, I think we're far enough

6    along, as Mr. Johnston has indicated, that just a "to be

7    decided" sentence, not even a paragraph, is all that's

8    necessary so that we can continue our good work and bring this

9    to the finish line.

10          THE COURT:  Okay.  That's fine with me.  I will do

11   that.  That makes for a little easier on my end, and my law

12   clerks will thank me and you.  And obviously, and this goes to

13   the issue that Mr. MacConaghy was addressing as well, to the

14   extent that these matters are resolvable or resolved, I don't

15   need anything other than the brief language that comes up in

16   the OCP.  So we won't worry about it.  I'm not looking to

17   publish something that's for a law review in terms of my

18   memorandum decision on confirmation.  The more issues that have

19   been resolved, the better.

20          So I'll thank you all for the --

21          MR. KAROTKIN:  Your Honor.

22          THE COURT:  Hold on.

23          MR. KAROTKIN:  Your Honor.

24          THE COURT:  Yes?  Mr. Karotkin?

25          MR. KAROTKIN:  I'm sorry.  I didn't know whether you

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    were ending the hearing but --

2            THE COURT:  No, I'm not.  But you can go ahead.

3            MR. KAROTKIN:  I'm getting a little feedback from the

4    people raising the equity that there's a little bit of

5    heartburn with issuing a formal order next week.  I don't like

6    to put pressure on you, but I think you --

7            THE COURT:  -- on behalf --

8            MR. KAROTKIN:  I think people would like to have it

9    sooner, or at least -- and I'm looking at emails, so I

10   apologize, but at least if we had certainty it would be by

11   Monday, that might work.

12           THE COURT:  Well, what do you suggest that I do about

13   these open issues?  In other words, if the trust and the

14   counsel who are active -- and again, I'm not slighting the two

15   lawyers who are representing their own interests who want to be

16   heard, because I want them to be heard.  If the parties are

17   working on something, I don't want to -- I can't issue an

18   order.

19           MR. KAROTKIN:  No, no.  I guess my question is,

20   perhaps, if we could have the hearing, at least schedule the

21   hearing on Friday in the event there are these open issues.

22           The other thing I will tell you that really concerns

23   me, and I know you, kind of, alluded to it last week, and I

24   don't look past -- that's not actually when I heard it, but

25   when I regained consciousness, the thought of going through the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    confirmation order page by page by page with all of the parties

2    who are interested, to me would be completely unproductive and

3    just would be another opportunity to revisit all of the

4    objections and concerns that people have raised for the last

5    three weeks.  And I don't think that's a productive way --

6    obviously, it's your call -- a productive way to get to the

7    finish line.

8         We have provided -- a draft of the order was filed on

9    May 26th.  Another draft was filed on Sunday.  Over the course

10   of time we have received comments.  We have inputted changes to

11   that proposed order to address objections that have been

12   resolved.  The most recent proposed order, I believe, addresses

13   all of the issues other than the ones we discussed today.  I am

14   just very, very concerned about having a hearing at which

15   anybody and everybody can raise their concerns with respect to

16   particular words in a confirmation order.  But again, that's

17   your call.

18        THE COURT:  Okay.  I don't mean to terrorize you, Mr.

19   Karotkin.  I wasn't going to have a town hall meeting.  And I

20   was going to really focus on the issues that are still in

21   dispute.  And so if I overstated the case, I apologize to you.

22        We've identified three areas of dispute.  I think the

23   counsel who want to be heard in a moment, it's to their

24   subsets, this issue that Mr. MacConaghy's been dealing with

25   with Mr. Mintz and Ms. Winthrop.  But I have to have some way

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    of making sure --

2         How can I say this Mr. Karotkin?  I simply can't keep

3    up with the drafts that come in with fifty-page redline

4    documents, when I then get something from somebody else that

5    says well, I disagree with it.  So I want to make it work best

6    for you, and I'll try to schedule a hearing on Friday, if

7    necessary, but I can't -- what do I do with these issues that

8    are open?  You tell me.

9         MR. KAROTKIN:  Well, I think, really, there are only

10   two issues open that are not ready for decision.  The first

11   issue is the PERA issue, which you've heard about, and I think

12   the second issue is the trust documents, which we're working

13   on.  I think all of the others have been joined and are ready

14   for decision, and I don't think there is anything else left.

15        So my suggestion is at least we schedule something for

16   Friday.  If need be, we can change it, but at least it's on the

17   calendar and everyone is aware of it.

18        If that works for you.  Obviously, Your Honor, if

19   you're --

20        THE COURT:  Yes, okay.  Let me -- Mr. Karotkin, I

21   wasn't kidding.  This is my high priority as well as,

22   certainly, yours and your clients and the investment bankers

23   and financial advisors and underwriters that are really getting

24   ready to do very critical things.  I am not going to stand on

25   formality or delay things, and I apologize again if I sent

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1     terror through your mind and hearts by suggesting there's going

2     to be an open forum on the form of an order.

3          Let me say this, that my goal continues to be to get

4     out a written decision tomorrow, and I will promise you that I

5     will set something in that decision -- more likely on Friday,

6     at your request, okay?

7          MR. KAROTKIN:  Thank you, sir.  I appreciate that.

8          THE COURT:  Okay.  All right.  So unless -- okay.

9     Now, wait one second while I check the -- all right.

10         Ms. Parada, please bring Mr. Carlson and Ms.

11    Grassgreen and Mr. Neumeister -- those three.

12         And then I'm going to suggest that Mr. Bray and Mr.

13    Johnston and Mr. Etkin don't need to stick around.  I'll excuse

14    you three.

15         But for Mr. Mintz and Ms. Winthrop, I want you to

16    be -- and Mr. MacConaghy, be here when we hear from Mr. Carlson

17    and Ms. Grassgreen.

18         So again, Mr. Carlson and Ms. Grassgreen, please state

19    your name for the record, starting with you, Mr. Carlson.

20         MR. CARLSON:  Hi, Your Honor.  Eric Carlson

21    representing my wife and I.

22         THE COURT:  Okay.  Good afternoon.

23         Ms. Grassgreen, good afternoon.

24         MS. GRASSGREEN:  Good afternoon, Your Honor.  Debra

25    Grassgreen, not as a member of the firm, on my individual

PG&E Corporation and Pacific Gas and Electric

1    behalf and on behalf of my minor son.

2            THE COURT:  And --

3            THE CLERK:  -- Your Honor.

4            THE COURT:  Mr. Neumeister?  State your appearance.

5            MR. NEUMEISTER:  Good morning.  Good morning, Your

6    Honor.  Mike Neumeister, Gibson, Dunn & Crutcher, on behalf of

7    the ad hoc committee of holders of trade claims.

8            THE COURT:  Okay.  Let me deal with Mr. Carlson and

9    Ms. Grassgreen.

10            MR. MINTZ:  Your Honor, before you begin, I apologize.

11    This is Mr. Mintz.  I am in the middle of another hearing, and

12    it's a first day hearing where my motion is up next, and I

13    would ask if I could be excused and not --

14            THE COURT:  You can be excused.  Thank you, Mr. Mintz.

15    Good luck.

16            MR. MINTZ:  Thank you, Your Honor.

17            THE COURT:  Mr. MacConaghy, I thought at least Mr.

18    Carlson had reached out and asked somebody to be in touch on

19    the subject, because he did object to the same things that Ms.

20    Winthrop and others object to.  And Ms. Grassgreen herself did

21    that too.  So I didn't -- and I can understand the dynamics of

22    the discussions, but doesn't the issue that I announced the

23    ruling on the other day, isn't that what Mr. Carlson and Ms.

24    Grassgreen are really worrying about, the right to a judicial

25    review?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1      MR. MACCONAGHY:  Well, Your Honor, on this issue the

2   devil is in the details.  And again, I think the person in the

3   best position to answer this is Mr. Molton, because the

4   objections still out there are issues of timing.

5      THE COURT:  Okay.  Mr. Molton, why don't you tell me

6   where we are on this, and then I'll hear from Mr. Carlson and

7   Ms. Grassgreen?

8      MR. MOLTON:  Yes, Your Honor.  David Molton for the

9   trustee.  The issue really doesn't go to the heart of Your

10  Honor's ruling on judicial review.  That's not the topic of the

11  objection, as I understand it.  The topic of the objection has

12  to do with the administration of the judicial review right that

13  Your Honor wrote about for those who timely filed an objection

14  on that ground by the confirmation objection deadline, and the

15  procedures we put into the trust agreement, Your Honor, to

16  allow the trustee to basically have an ability to administer

17  all 65 to 70,000 claims before the folks who have the right to

18  judicial review get to exert that right and go into court.

19      So it basically allows the trustee and his staff to

20  deal fairly equitably with every one of the 70,000 fire victims

21  and have their claims administered, and then, basically, the

22  way the provision is written, Your Honor, then gives those

23  folks who have the right Your Honor granted, pursuant to Your

24  Honor's memorandum decision, the right to pursue that right in

25  accordance with Your Honor's ruling in the court -- whatever

of 83   (973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    the court of competent jurisdiction that's contained in the --

2            THE COURT:  Oh, does that mean that these two, for

3    example, have to wait for all 80,000 claims to get resolved

4    or --

5            MR. MOLTON:  Yes, Judge.

6            THE COURT:  That a yes?

7            MR. MOLTON:   Yes, Judge.  The way that this is

8    written, basically, is not necessarily that different from the

9    same philosophy that governs a bankruptcy.  We want to be able

10   to administer all of the fire victims and devote all of our

11   resources and attention to administering their claims,

12   including Ms. Grassgreen's and her family's claim and Mr.

13   Carlson's claim, without the divergence or the distraction of

14   litigation, and allow that to happen as a precondition before

15   the judicial remedy is, from a timing perspective, invoked.

16           THE COURT:  Okay.  Mr. Carlson?

17           MS. GRASSGREEN:  Your Honor, may I be heard for a

18   moment?

19           THE COURT:  Sure.  Yes.

20           MS. GRASSGREEN:  Your Honor, I'm somewhat surprised

21   that Mr. Molton got into the detail on this today, because we

22   were specifically told that we could not share the details of

23   the issue with you, because they were provided to us under Rule

24   408.  So I won't respond.  Suffice it to say that we have more

25   than one issue with the procedures that have been placed and

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    the restrictions on judicial review, and at the appropriate

2    time we'll raise them with you, but we need to have the ability

3    to share the actual document with you, and we don't have that

4    authority.  We asked yesterday, could we submit the document,

5    and we were told no, because it was provided under confidential

6    settlement privilege.

7            In addition, as I noted in our statement, our claim

8    involves the claim of a minor.  There are particular provisions

9    in the language, without getting into the detail, that impact

10   the claim of the minor, and there are confidentiality concerns,

11   and I'll think we'll need to work out how we're going to bring

12   that in front of you in light of those concerns.

13           But in addition, Your Honor, just one other point.  We

14   noted in our statement that we don't believe this affects the

15   timing of your entry of the confirmation order, to not delay

16   for a minute the timing of your entry of your confirmation

17   order.  It's simply an interpretation of what you meant when

18   you said the parties that objected timely have a right to

19   judicial review when they conclude their claims re process.

20           THE COURT:  Well, I --

21           MS. GRASSGREEN:  It's definitely an interpretation.

22   We can deal with it before the effective date.  It doesn't have

23   to --

24           THE COURT:  I assume you heard my oral discussion at

25   the prior hearing on issue number one, right?

PG&E Corporation and Pacific Gas and Electric

1          MS. GRASSGREEN:  Yes, I did.

2          THE COURT:  Yes.  And that's why, actually, Ms.

3   Grassgreen, I know you've been active in other aspects of this

4   case.  I was surprised when you wanted to be heard today,

5   because I wondered well, what's the rush to be heard today?

6          Mr. Carlson's case might be a little different,

7   because I had a colloquy with him earlier, and I thought he's

8   going to be involved.

9          But my sense is yes, why can't this issue, in its

10  entirety, wait at least till next week or the following week?

11         MS. GRASSGREEN:  Absolutely.  I suggested that in what

12  I filed, that it could be handled between the entry of the

13  confirmation order and the effective date.  And I spoke to Mr.

14  Molton about that this morning, and he agreed.

15         THE COURT:  How about you, Mr. Carlson?  Were you in

16  on that discussion?

17         MR. CARLSON:  I was, Your Honor.  And I guess what I

18  would add to that is that you made a comment earlier that you

19  were a bit surprised that I was not part of the discussion with

20  the business claimants on these issues, which I was not.  I was

21  delivered language components after the fact, and it wasn't

22  until I requested the complete documents did they send them

23  over under 408, restricting my ability to bring them to your

24  attention, did I decide that I needed to at least get in front

25  of you to let you know that that had happened, in the first

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1 place, and second, that my issue with respect to what Mr.

2 Molton has described is a -- I feel like the trust is

3 effectively harming my family for exercising my rights in this

4 case by pushing us to the end of the line.

5 I agree with Ms. Grassgreen that we don't need to deal

6 with this today, but I felt it was important to bring the issue

7 to your attention so that it doesn't get lost, and we can deal

8 with this at its appropriate time.

9 THE COURT: Well, Mr. Molton and his client, Justice

10 Trotter, who I've never met and would like to -- hopefully,

11 maybe, he'll come and participate in a hearing one day, so I

12 can see him. They probably wish I would go back and revisit

13 the whole point and deny you everything you and your other

14 colleagues asked for.

15 But this is in the category of things I didn't think

16 about, or Ms. Winthrop and others made persuasive arguments

17 about what ultimately led to the ruling in their favor, but I

18 wasn't dealing with details, because the range of possibilities

19 goes from hundreds of thousands of dollars to a hospital that

20 burned down to whatever the individual situation either of you

21 or your families experienced, which I don't need to know. And

22 then we can dice that into what about somebody who has a

23 stipulated judgment from a Butte fire versus somebody who fled

24 from the Camp Fire two months before a bankruptcy.

25 So there's a range of things that none of this was on

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    my mind, and I didn't give one second of thought to whether Ms.

2    Grassgreen or Mr. Carlson would have to wait until 80,000

3    claims were resolved or would go directly to superior court.  I

4    just didn't think about it, because it wasn't on my agenda.

5            So what I'm going to do is I'm going to just defer it

6    for the time being.  I'm not even sure, Ms. Grassgreen, that it

7    couldn't be dealt with after the effective date, but that

8    doesn't mean I'm going to delay it.  I'm not going anywhere,

9    and I'll put this high on the agenda.

10            I guess I, after what I heard from others this

11   morning, I want there to be an effective date before people

12   spend a lot of time and effort on things, but if either of you,

13   or if Mr. Molton or Mr. MacConaghy, if you believe that these

14   things should be decided before the effective date, then we'll

15   do it.

16            If it can wait until even after, again, I'll leave

17   that to the trustee and his counsel.  They are the ones that

18   have to administer it.  So --

19            MS. WINTHROP:  Your Honor?

20            THE COURT:  Yes, ma'am.  Yes?

21            MS. WINTHROP:  My apologies, Your Honor.  Rebecca

22   Winthrop on behalf of the Adventist Health claimants.  In terms

23   of the timing, one of the important protections that are

24   afforded my clients is that there be no material modifications

25   to the trust documents different from what is proposed by the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    time of confirmation.  And I'm, obviously, paraphrasing the

2    protections, so some of these issues do need to be addressed

3    before we have a confirmation order entered, so that we know

4    exactly what the trust documents are.

5              THE COURT:  Well, are you saying I have to resolve

6    these specific issues --

7              MS. WINTHROP:  No, Your Honor.

8              THE COURT:  -- Friday?

9              MS. WINTHROP:  This is my clients, my clients' issues.

10             THE COURT:  But you're not -- well, but are your

11   clients' issues part of the same -- similar to what these two

12   folks are talking about, their concerns?

13             MS. WINTHROP:  Our issues are focused on the scope of

14   judicial review, which is still up for apparent negotiation.

15   We do not, and did not, raise the issue about the timing of Ms.

16   Grassgreen's issues.

17             THE COURT:  Well, I don't know.  I, sort of, don't

18   know what to say.  I'm going to repeat what I said to Mr.

19   MacConaghy.  Good luck this afternoon.  Work out your

20   differences.

21             Ms. Grassgreen and Mr. Carlson can, I suspect, be

22   heard if they think somehow their rights are prejudiced by

23   something that's done with Adventist.  I doubt that's the case.

24   I doubt that the trustee won't have the flexibility to deal

25   with a client like yours in a one-on-one, one-off type

(973) 406-2250 | operations@escribers.net | www.escribers.net

                    PG&E Corporation and Pacific Gas and Electric

1    situation, but I just can't worry about that.

2            If there's no resolution in this conference you're

3    going to have this afternoon, I guess if I have to make a

4    decision, I'll do what I can, but I'm more optimistic, as Mr.

5    MacConaghy seemed to be, that that issue will get resolved.

6    Fair enough?  Is that --

7            MS. GRASSGREEN:  Your Honor?  If I --

8            THE COURT:  Well, let me -- Ms. Winthrop, are you

9    satisfied with that statement?

10           MS. WINTHROP:  Yes, Your Honor.  I have great hope for

11   our conversation.

12           THE COURT:  Ms. Grassgreen?

13           MS. GRASSGREEN:  Your Honor, how would you like us to

14   approach the confidentiality issue with respect to the child?

15           THE COURT:  Well, again, I don't want you to -- I

16   can't answer, because I don't know what the issues are, but I

17   mean, I know that children are entitled to certain protections,

18   so I think whatever you are comfortable with for the child and

19   for the law, and if Mr. Molton agrees, then there's certainly

20   a -- if I need to even know the details of it, it can be done

21   by a sealed document.  We have procedures in place for that.

22           Maybe I don't need to know.  I mean, I don't -- again,

23   I don't want you to tell me why I need to know it, because

24   you'd be breaching the very thing you shouldn't breach.

25           Look, I have enough confidence.  You're a known

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric

1    commodity, Ms. Grassgreen, a very capable lawyer, and although

2    you're perhaps representing different interests here, but I

3    hope you can work something out to your satisfaction and Mr.

4    Molton's satisfaction.  If not, I'll do what we can do and

5    figure out what to do.  Fair enough?

6          MS. GRASSGREEN:  Thank you, Your Honor.

7          THE COURT:  Okay.  All right.  I'm going to excuse --

8    I think I can excuse all of you except Mr. Julian and Mr.

9    Neumeister and Mr. Karotkin, unless any of you think you need

10   to be heard on any issues.

11         And Mr. Neumeister, I'm sure, yours is still one of

12   the contract issues, object to our contract issues, right?

13   Okay.  So all right.  So I'm going to --

14         Ms. Parada, you can excuse Ms. Winthrop, Mr.

15   MacConaghy, Mr. Carlson, Ms. Grassgreen, and Mr. Molton.  Thank

16   you all for your time.

17         IN UNISON:  Thank you, Your Honor.

18         MR. KAROTKIN:  Your Honor?

19         THE COURT:  Yes, sir, Mr. Karotkin?

20         MR. KAROTKIN:  I'm sorry.  Before we continue, I

21   promised Mr. Laffredi that I would put on the record the

22   overall fees.  He had asked what the overall -- I think I

23   could -- last week or something, what the overall fees were.

24         I don't know, Your Honor.  You disappeared.

25         Can other people hear me?

PG&E Corporation and Pacific Gas and Electric

1 UNIDENTIFIED SPEAKER:  Can hear you.

2 MR. KAROTKIN:  Well, Your Honor, you had disappeared.

3 THE COURT:  Yes.  I'm back now, right?

4 MR. KAROTKIN:  Yes.

5 THE COURT:  Yes.  Start over again, though.  I don't

6 know.  I just got disconnected.  This was a Zoom issue not an

7 internet issue.

8 Okay.  Start over again.  You mentioned Mr. Laffredi,

9 and then I didn't hear you.

10 MR. KAROTKIN:  Yes.  I think last week or sometime

11 toward the end of the confirmation hearing Mr. Laffredi asked

12 me if I would put on the record the total approximate fees in

13 connection with the financing for the plan, both the equity and

14 the debt financing.  Debt financing total is about 52 billion

15 dollars, and the total fees for the 9 billion of equity and the

16 43.1 billion of debt are approximately 400 million dollars,

17 which I'm told are customary in the marketplace.

18 THE COURT:  Mary in the marketplace.  Okay.  Thank

19 you.  All right.

20 Mr. Neumeister, unmute yourself.  I thought we had you

21 all accounted for, but go ahead and tell me what I'm missing

22 here.

23 MR. NEUMEISTER:  My apologies, Your Honor.  Mike

24 Neumeister, Gibson, Dunn.

25 I was trying to respect your docket order about who

PG&E Corporation and Pacific Gas and Electric

1   was going to appear in the status conference. But the trade

2   committee filed a separate objection and a joinder with respect

3   to the UCC's objection on the issue with respect to the

4   debtors' request to extend the time to list rejected contracts.

5   We filed that brief --

6          THE COURT: Yes, I know that.

7          MR. NEUMEISTER: -- over the weekend. Okay. Your

8   Honor, I just wanted to make that clear. It sounded like from

9   the prior session that it sounded like you may rule on the

10  pleadings on those, so we just request that you consider our

11  joinder. And if not, we're available to speak and appear on

12  Friday.

13         THE COURT: No, I -- well, let's back up. Again, Mr.

14  Neumeister, you've been active, as have others, and it was my

15  sense that these issues were coalescing and being narrowed, and

16  when Mr. Karotkin summarized the three, I heard what I heard

17  from Mr. Karotkin was three issues that primarily were

18  discussed with the OCC. No resolution, ball's in my court,

19  decided. I had in mind you and your client were part of the

20  issue. I was aware of the filing over -- again, the days are

21  all merging, but you had filed something that was taking issue

22  with the executory contract issue. And as far as I'm

23  concerned, it's submitted for decision. It's a pretty simple

24  question. I've kind of thought about it, and I'll do my best

25  to issue something as part of what I hope to issue tomorrow.

PG&E Corporation and Pacific Gas and Electric

1  And so I don't need any oral argument.  If you want to add

2  something that's critical, I'll hear you right now, but I don't

3  think it's necessary.  I know the issue.

4          MR. NEUMEISTER:  No, Your Honor.  That sounds good.  I

5  just wanted to make sure that you were aware of our position.

6  And we're fine.  We'll rest on our papers.

7          THE COURT:  Okay.  Mr. Karotkin, I'll do my best to

8  stick with my commitment to you for issuing something by

9  tomorrow.  To some extent, I've gotten -- let me just think

10 about this for a minute.  Well, I'm going to stick with that,

11 and I will understand and I will issue, included, what I issue

12 tomorrow will deal with the question of whether we have a

13 hearing and when.  And I'm mindful of what you're asking for

14 for Friday.  So stay tuned, okay?

15         MR. KAROTKIN:  Thank you, sir.

16         THE COURT:  One more stop.  Okay.  I'm going to

17 conclude the hearing then unless -- Mr. Julian, you're still on

18 the screen, but I didn't throw you out.  Did you want to add

19 anything further?  Unmute.

20         MR. JULIAN:  No, Your Honor.  We're fine.

21         THE COURT:  Okay.  Thank you all.  Have a good

22 evening.  See you all --

23         MR. JULIAN:  Thank you.

24         THE COURT:  -- next hearing.  Thank you for your time.

25     (Whereupon these proceedings concluded at 11:36 a.m.)

1                              I N D E X

2    RULINGS:                                    PAGE LINE

3    Debtors' motion for entry of order approving      33    11

4    amended equity backstop commitment is

5    granted.   Objections are overruled.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                       C E R T I F I C A T I O N

3

4    I, Sharona Shapiro, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    *Sharona Shapiro*

8

9

10

11   _____

12   /s/ SHARONA SHAPIRO, CET-492

13

14   eScribers

15   7227 N. 16th Street, Suite #207

16   Phoenix, AZ 85020

17

18   Date:   June 17, 2020

19

20

21

22

23

24

25

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

**$**

**$10.50 (3)**
12:6;19:2,4
**$7.50 (5)**
9:23;11:12,15;12:22;
18:25

**A**

**AB (1)**
23:20
**ability (5)**
12:1;32:17;56:16;
58:2;59:23
**able (8)**
8:8;12:21;19:13;
23:17;24:9;35:10;
36:10;57:9
**Abrams (50)**
4:21,22,23;14:5,7,11,
21,24,25;15:1,8,10,15,
19,22;16:20,22,24,25;
17:7,8,12,17,19;19:25;
20:2,7;21:17;22:8,11,
16,18,25;23:4;24:6,18,
22;25:4,6,7,9,11,13,20;
26:1,22;31:4;33:13;
36:1;37:8
**Abrams' (2)**
7:19;35:7
**absence (1)**
15:2
**absolute (1)**
11:4
**Absolutely (1)**
59:11
**accelerate (1)**
6:16
**accept (2)**
25:16,16
**acceptable (1)**
43:16
**accordance (1)**
56:25
**according (1)**
18:7
**accounted (1)**
65:21
**accurate (2)**
34:1;42:16
**achieve (1)**
42:4
**achieves (1)**
30:2
**acronym (1)**
12:3
**across (1)**
29:16
**acted (1)**
34:6
**action (1)**

45:12
**actions (3)**
20:14;21:1;26:18
**active (3)**
51:14;59:3;66:14
**actual (2)**
41:4;58:3
**actually (5)**
7:18;28:25;37:22;
51:24;59:2
**ad (2)**
38:18;55:7
**add (9)**
13:2;23:10;28:24;
31:24;32:1;46:14;
59:18;67:1,18
**adding (1)**
40:18
**addition (2)**
58:7,13
**additionally (1)**
13:16
**address (1)**
52:11
**addressed (4)**
40:5,15;41:3;62:2
**addresses (1)**
52:12
**addressing (3)**
25:21;40:20;50:13
**adjusted (2)**
9:20,22
**adjustment (3)**
28:9,17,19
**administer (3)**
56:16;57:10;61:18
**administered (1)**
56:21
**administering (1)**
57:11
**administration (1)**
56:12
**adopt (1)**
25:16
**Adventist (2)**
61:22;62:23
**advisors (2)**
31:18;53:23
**advocated (1)**
17:14
**affect (1)**
6:16
**affects (1)**
58:14
**afforded (2)**
19:7;61:24
**afternoon (8)**
39:13;44:15;48:5;
54:22,23,24;62:19;
63:3
**afternoon's (1)**
46:11
**again (32)**

17:14,19;18:9;19:4;
20:8,25;21:4;23:7,14;
24:20;25:10;26:10,13;
33:13;34:1,22;36:21;
39:16;40:25;41:5;
51:14;52:16;53:25;
54:18;56:2;61:16;
63:15,22;65:5,8;66:13,
20
**against (2)**
26:5;43:19
**agenda (2)**
61:4,9
**agree (7)**
24:2;29:15;41:2;
43:9;44:7;46:17;60:5
**agreed (7)**
7:8;12:10;14:6;15:9,
10;28:7;59:14
**agreement (14)**
14:13,22;15:2,4;
21:15;23:13;24:13;
28:15;29:20,22;31:15;
48:15,16;56:15
**agreements (1)**
18:3
**agrees (1)**
63:19
**ahead (7)**
17:18,18;25:18;40:1,
1;51:2;65:21
**akin (1)**
17:25
**alleged (1)**
33:19
**allow (7)**
6:8;8:2;23:16;32:18;
41:14;56:16;57:14
**allows (3)**
21:5;28:18;56:19
**alluded (1)**
51:23
**alone (1)**
17:24
**along (3)**
17:14;48:25;50:6
**alternative (2)**
23:21;36:6
**although (1)**
64:1
**ambulance (1)**
23:4
**amend (1)**
20:3
**amended (2)**
6:4;8:15
**amendment (23)**
6:15;7:19;8:2,2;
9:14;10:17;11:11;
12:21;13:7,24;14:12,
17,20;15:23;18:17,20,
22;21:15,16;26:5;
32:14,15,24

**amendments (10)**
6:18,23;7:20;10:2;
12:16;20:9;23:17;32:4,
12;41:5
**among (1)**
41:22
**amount (3)**
13:8;22:6;27:15
**amounts (1)**
48:17
**announced (3)**
12:2,5;55:22
**anti-dilution (1)**
29:17
**apologies (2)**
61:21;65:23
**apologize (5)**
25:21;51:10;52:21;
53:25;55:10
**apparent (1)**
62:14
**appeal (1)**
17:21
**appear (2)**
66:1,11
**appearance (6)**
29:8;38:1,5,21;39:3;
55:4
**appointed (1)**
15:3
**appreciate (3)**
34:22;48:25;54:7
**apprehension (1)**
7:18
**approach (2)**
25:5;63:14
**appropriate (5)**
41:3,12;42:11;58:1;
60:8
**appropriately (2)**
40:15;41:1
**approval (1)**
32:24
**approve (2)**
6:3;25:1
**approved (3)**
13:24;14:13;15:12,
13;21:18
**approves (1)**
12:21
**approving (3)**
15:13;35:1;37:17
**approximate (1)**
65:12
**approximately (5)**
9:19,20,23;27:5;
65:16
**area (1)**
23:16
**areas (1)**
52:22
**argue (5)**
11:6;20:22;23:18;

29:10;46:17
**argued (1)**
23:7
**argues (1)**
26:5
**argument (10)**
6:1;7:16;24:4;28:21;
29:12;30:14;33:3;
45:16,17;67:1
**arguments (11)**
14:9;16:5;17:20;
19:1;24:7;33:15,17;
42:21;44:8;47:6;60:16
**Arnold (1)**
38:17
**around (6)**
9:12,21;12:6;16:7;
37:10;54:13
**arraigning (1)**
16:11
**arrange (1)**
27:14
**aside (1)**
47:24
**aspects (1)**
59:3
**assert (1)**
7:19
**assertions (1)**
16:4
**assigned (1)**
45:11
**associated (2)**
16:22;17:22
**Association (1)**
39:14
**assume (3)**
46:10;48:9;58:24
**assuming (1)**
21:24
**assumption (3)**
40:12,19;41:9
**AT&T (1)**
38:17
**attention (3)**
57:11;59:24;60:7
**audio (2)**
27:18;28:22
**authority (1)**
58:4
**available (2)**
23:25;66:11
**avoid (1)**
8:4
**aware (5)**
9:7;49:16;53:17;
66:20;67:5
**away (1)**
49:14

**B**

**back (9)**

Case: 19-30088    Doc# 7984    Filed: 06/17/20    Entered: 06/17/20 08:32:57    Page 70
of 83

22:21;33:23;34:9,12;
42:18;47:22;60:12;
65:3;66:13
**backstop (52)**
6:4,15,19,22;7:20,
21;8:5,5,10,11,15,16;
9:8,11,14,21;10:1,11,
12;11:12,22;12:7,17;
13:7,17;14:12,17,20;
16:2;18:3,5,18,19,20,
22;21:15,15,18,20,25;
22:4;23:9,13;24:2,15;
26:5,20;30:19;31:10;
32:20;33:20;36:6
**backstops (9)**
18:17,24;19:14;20:3,
11,20,24;21:4;23:12
**backstop's (1)**
20:18
**bad (1)**
20:3
**ball (1)**
37:5
**ball's (1)**
66:18
**bankers (1)**
53:22
**bankruptcies (1)**
35:9
**bankruptcy (9)**
4:4;19:13;35:14,16,
19;36:19;42:10;57:9;
60:24
**bar (1)**
26:2
**bargain (1)**
10:12
**barrel (1)**
28:12
**based (4)**
9:17;22:1;28:7;
46:19
**bashful (1)**
49:9
**basically (4)**
56:16,19,21;57:8
**basis (1)**
33:8
**battle (1)**
42:23
**BCLs (1)**
9:10
**become (1)**
9:25
**becomes (2)**
21:20;38:9
**begin (2)**
5:17;55:10
**behalf (9)**
5:4;38:18;39:6,13;
51:7;55:1,1,6;61:22
**believes (2)**
7:15;8:14

**beneficial (1)**
49:23
**benefit (4)**
11:1;31:12,13,14
**benefits (1)**
29:16
**Benjamin (1)**
38:16
**best (10)**
6:11,13,23,24;25:15;
32:20;53:5;56:3;66:24;
67:7
**better (11)**
10:17,18;24:24;25:1;
28:19;32:14;34:17;
35:23;38:4;49:5;50:19
**big (2)**
12:12;47:5
**bigger (1)**
46:6
**billion (17)**
9:9;12:10,11,12;
19:1,23;22:1;23:25;
26:12;27:6;30:5,7,18;
34:24;65:14,15,16
**billions (4)**
17:3;35:24,25,25
**billion-two (1)**
27:15
**bit (2)**
51:4;59:19
**blatantly (1)**
28:16
**Bloomberg (1)**
28:4
**blow (1)**
17:24
**blown (1)**
21:3
**board (1)**
29:17
**borrow (1)**
34:24
**borrows (1)**
17:2
**both (4)**
11:5;32:10;48:20;
65:13
**bottom (2)**
27:7;28:13
**Bray (13)**
38:2,3,4,6,7,7,13;
43:4,9,11,12;44:1;
54:12
**breach (1)**
63:24
**breaching (1)**
63:24
**break (2)**
27:18;28:22
**breeze (1)**
17:24
**brief (4)**

29:14;41:8;50:15;
66:5
**brilliant (1)**
30:17;32:8;33:1,2
**bring (12)**
4:7;5:6;29:2,5,6;
38:21,25;50:8;54:10;
58:11;59:23;60:6
**brining (1)**
8:20
**broad (1)**
29:19
**Brown (1)**
37:24
**built (1)**
9:13
**burned (1)**
60:20
**business (4)**
10:16;16:20;38:18;
59:20
**business- (1)**
16:1
**businesses (1)**
35:18
**business-judgment (3)**
16:8,14,23
**Butte (2)**
16:11;60:23
**button (1)**
37:21
**buy (4)**
10:9,10;30:17;31:2

---

# C

**cake (1)**
20:21
**calculate (1)**
21:20
**calendar (1)**
53:17
**CALIFORNIA (2)**
4:1,5
**Call (10)**
4:3;27:16;39:19;
42:2;44:15;46:11;48:5;
49:11;52:6,17
**called (2)**
17:23;22:4
**Camp (1)**
60:24
**Can (48)**
4:8,10,17,21;8:16;
11:20,21;20:15,16,17;
21:9;23:15,16;34:14,
23;35:2;36:9,15;39:22;
40:14;42:4,16,23;
44:17,21;45:3;46:9;
50:8;51:2;52:15;53:2,
16;55:14,21;58:22;
60:7,12,22;61:16;
62:21;63:4,20;64:3,4,8,

14,25;65:1
**capable (1)**
64:1
**capital (1)**
6:17
**card (1)**
18:1
**cards (1)**
17:23
**care (1)**
5:23
**Carlson (19)**
38:24;46:3,4;54:10,
16,18,19,20,20;55:8,
18,23;56:6;57:16;
59:15,17;61:2;62:21;
64:15
**Carlson's (2)**
57:13;59:6
**carry (1)**
6:8
**carwash (3)**
35:20,21,22
**case (9)**
22:13;27:22;30:21;
50:2;52:21;59:4,6;
60:4;62:23
**cases (3)**
32:7,9;35:5
**cash (1)**
28:20
**category (1)**
60:15
**cause (1)**
43:21
**caused (2)**
32:19;35:25
**causes (1)**
45:12
**ceremonies (1)**
39:22
**certain (3)**
9:16;41:25;63:17
**certainly (3)**
47:18;53:22;63:19
**certainty (1)**
51:10
**change (3)**
41:10;43:15;53:16
**changed (3)**
18:16;28:1,6
**changes (1)**
52:10
**characterization (1)**
33:25
**charged (2)**
16:15;26:12
**charting (1)**
35:8
**check (1)**
54:9
**chicken (1)**
48:1

**child (2)**
63:14,18
**children (1)**
63:17
**choose (2)**
27:22,23
**chunk (1)**
21:21
**circling (1)**
42:18
**City (1)**
17:21
**claim (3)**
40:25;41:4,16;48:17;
57:12,13;58:7,8,10
**claimants (5)**
25:1;38:19;39:10;
59:20;61:22
**claimants' (1)**
41:23
**claims (10)**
43:15,18,19;55:7;
56:17,21;57:3,11;
58:19;61:3
**clarify (1)**
49:7
**clarifying (1)**
34:1
**class (1)**
19:11
**classes (1)**
19:10
**cleanse (1)**
35:18
**cleansing (1)**
35:17
**clear (2)**
11:13;66:8
**clearly (1)**
32:6
**CLERK (8)**
4:4,10,13;5:1,6,9;
29:7;55:3
**clerks (1)**
50:12
**client (3)**
60:9;62:25;66:19
**clients (4)**
46:1;53:22;61:24;
62:9
**clients' (2)**
62:9,11
**climbs (1)**
28:5
**closed (1)**
34:21;43:24
**closing (2)**
24:7;30:13
**coalescing (1)**
66:15
**colleagues (1)**
34:4;48:4;60:14
**colloquy (1)**

Case: 19-30088   Doc# 7984   Filed: 06/17/20   Entered: 06/17/20 08:32:57   Page 71
of 83

59:7
**comfortable (1)**
63:18
**coming (6)**
4:24;33:10;35:22;
37:18;38:2;46:8
**comment (2)**
42:11;59:18
**comments (2)**
47:4;52:10
**commitment (6)**
6:4;8:5;9:8;16:3;
26:20;67:8
**commitments (5)**
6:19;8:5;18:5,7;
26:19
**committed (1)**
45:3
**committee (10)**
15:3,9;28:14;38:8;
39:9;40:8;41:23;45:7;
55:7;66:23
**committees (1)**
7:4
**commodity (1)**
64:1
**companies (1)**
35:21
**company (15)**
8:15;9:7;10:7,10,21;
11:22,22;12:2;23:23;
31:14;35:8,14;36:25,
25;43:20
**competent (1)**
57:1
**complain (1)**
15:7
**complained (2)**
34:4,4
**complaining (1)**
15:5
**complete (2)**
20:24;59:22
**completely (2)**
26:15;52:2
**components (1)**
59:21
**comprehensive (1)**
6:9
**concepts (1)**
45:10
**concerned (7)**
14:12;39:1;45:8,19;
49:23;52:14;66:23
**concerns (8)**
9:1;45:1;51:22;52:4,
15;58:10,12;62:12
**conclude (3)**
36:6;58:19;67:17
**concluded (1)**
67:25
**conclusion (2)**
36:12;44:8

**concur (3)**
44:24;48:23,24
**conditions (3)**
9:9;28:1,6
**conduct (1)**
6:12
**conference (2)**
63:2;66:1
**confidence (2)**
20:11;63:25
**confident (3)**
20:14;22:18;24:9
**confidential (1)**
58:5
**confidentiality (2)**
58:10;63:14
**confirm (1)**
36:19
**confirmation (17)**
40:4,11;42:9;43:14,
24,24;44:15;50:18;
52:1,16;56:14;58:15,
16;59:13;62:1,3;65:11
**confirmed (1)**
27:17;36:12
**confirming (1)**
37:1
**confirms (1)**
47:17
**connection (2)**
35:4;65:13
**connectivity (1)**
38:9
**consciousness (1)**
51:25
**consensual (1)**
46:9
**consensually (1)**
45:4
**consensus (2)**
42:3;44:21
**consequences (1)**
40:12
**Consider (6)**
19:22;26:11;34:21;
46:7;47:10;66:10
**considerable (1)**
12:23
**considerably (1)**
12:20
**consist (1)**
19:15
**consistent (2)**
6:11;35:13
**constitutes (1)**
40:25
**contained (1)**
57:1
**contemplated (1)**
9:15
**contended (1)**
19:19
**contested (1)**

36:17
**context (2)**
15:23;41:3
**continue (4)**
14:9;17:19;50:8;
64:20
**continues (1)**
54:3
**continuing (1)**
42:1
**contract (4)**
41:14;64:12,12;
66:22
**contracts (1)**
66:4
**contradicting (1)**
26:14
**controversial (1)**
36:18
**conveniently (1)**
49:11
**conversation (1)**
63:11
**converting (1)**
48:16
**convicted (1)**
17:1
**corner (1)**
30:15
**corporate (1)**
46:6
**Corporation (1)**
4:6
**correctly (1)**
30:13
**corresponding (1)**
40:11
**cost (1)**
18:13
**costs (3)**
8:16,18,19
**counsel (9)**
4:7;38:7,17;39:2,9;
46:6;51:14;52:23;
61:17
**counter (1)**
7:15
**counts (2)**
16:12,15
**County (1)**
16:11
**couple (5)**
21:13;36:13;46:2;
49:5,7
**course (5)**
22:11;35:8;42:5;
48:18;49:24;52:9
**Court (174)**
4:3,4,5,8,12,14,16,
18,19,21,24;5:5,8,10,
14,16,21,25;6:2;7:6,14,
23,25;8:10,13,18,22;
9:3,6,7;10:3,6;11:3,20;

12:4,25;13:4,25;14:3,
10,19,24;15:1,9,12,13,
15,20;16:3,10,11,16,
17,19,21,24;17:1,2,4,
11,13,18;19:25;20:4,5,
25;21:17;22:9,15,17,
20;23:2,19;24:11,19;
25:3,6,8,10,12,14,23;
26:2,14,15,22;28:23;
29:9;31:23;32:2,25;
33:7;35:16;36:19,23;
37:25;38:5,12,14,20;
39:7,11,15,21,25;
40:17,21;41:11;42:13,
18;43:3,7,23,25;44:2,
11,24;45:5,15;46:21;
48:8,23;49:2,24;50:4,
10,22,24;51:2,7,12;
52:18;53:20;54:8,22;
55:2,4,8,14,17;56:5,18,
25;57:1,2,6,16,19;
58:20,24;59:2,15;60:9;
61:3,20;62:5,8,10,17;
63:8,12,15;64:7,19;
65:3,5,18;66:6,13,18;
67:7,16,21,24
**cover (2)**
20:3;28:5
**covered (1)**
20:17
**COVID (4)**
20:16;30:23;34:16;
35:8
**COVID-19 (2)**
28:3;32:18
**COVID-induced (1)**
9:24
**CPUC (1)**
35:16
**creates (3)**
6:15;19:10,11
**creative (1)**
34:22
**creditor (1)**
46:6
**creditors (3)**
10:19;13:22;46:6
**creditors' (3)**
7:3;40:8;45:6
**crime (3)**
17:4,6,9
**critical (6)**
33:8,9;46:22;47:19;
53:24;67:2
**crucial (1)**
32:15
**Crutcher (1)**
55:6
**curing (1)**
31:3
**current (7)**
9:14,17,18;10:2;
12:23;21:6;23:23

**currently (1)**
42:10;49:1
**customary (1)**
65:17

**D**

**damage (1)**
35:25
**date (11)**
11:21;41:15;43:20;
46:17;47:6,24;58:22;
59:13;61:7,11,14
**dates (1)**
46:16
**David (2)**
37:23;56:8
**Day (8)**
4:18;16:17;27:16;
39:6;47:11;55:12,23;
60:11
**days (5)**
15:11;23:20;33:10;
41:15;66:20
**deadline (2)**
40:19;56:14
**deadlines (1)**
23:22
**deal (14)**
18:2;19:2,23;20:3;
21:4;35:24;46:20;55:8;
56:20;58:22;60:5,7;
62:24;67:12
**dealing (3)**
33:9;52:24;60:18
**dealt (2)**
43:22;61:7
**debenture (2)**
27:14;34:24
**Debra (1)**
54:24
**debt (4)**
22:2;65:14,14,16
**debtor (8)**
7:2;27:8,14;34:23;
42:24;43:21;45:7;
47:11
**debtors (23)**
6:8,15,18,20,22;7:5;
8:3,4,7;13:9;15:25;
18:25;19:19;22:13;
23:7,17;27:23;30:17;
32:8,21;34:10;39:24;
41:22
**debtors' (9)**
6:3,10,23;7:1;9:3;
10:16;16:5;17:22;66:4
**December (1)**
28:2
**deception (1)**
18:2
**decide (4)**
31:18;40:16;41:5;

Case: 19-30088    Doc# 7984    Filed: 06/17/20    Entered: 06/17/20 08:32:57    Page 72
of 83

59:24
**decided (6)**
14:6;29:23;49:22;
50:7;61:14;66:19
**decision (16)**
36:11;37:6;41:9;
47:5,10;49:8,9,11;
50:18;53:10,14;54:4,5;
56:24;63:4;66:23
**decisions (2)**
27:21;46:22
**declaration (5)**
10:24;13:13;27:3;
34:12,15
**deeply (1)**
19:6
**defer (1)**
61:5
**deference (4)**
16:1,8,13,17
**deferred (1)**
41:20
**defies (1)**
18:19
**definitely (1)**
58:21
**definition (2)**
18:19;43:18
**definitional (1)**
18:3
**delay (3)**
53:25;58:15;61:8
**delivered (1)**
59:21
**demonstrably (1)**
10:16
**demonstrate (1)**
26:18
**denied (2)**
9:3;24:4
**Dennis (1)**
4:6
**deny (1)**
60:13
**denying (1)**
35:2
**depress (1)**
24:21
**depressed (2)**
8:19;35:9
**depressing (1)**
11:17
**describe (1)**
16:1
**described (2)**
22:24;60:2
**deserve (1)**
16:1
**designated (1)**
38:18
**designed (1)**
21:16
**despite (1)**

35:7
**detail (2)**
57:21;58:9
**details (6)**
36:8;48:18;56:2;
57:22;60:18;63:20
**determinations (1)**
36:19
**determining (1)**
40:24
**devastation (1)**
24:25
**developments (1)**
49:15
**devil (1)**
56:2
**devil's (1)**
48:18
**devote (1)**
57:10
**dice (2)**
25:2;60:22
**differences (1)**
62:20
**different (6)**
25:24;45:13;57:8;
59:6;61:25;64:2
**difficult (2)**
14:18;34:13
**dilemma (1)**
26:25
**dilute (1)**
7:13
**diluted (1)**
31:7
**dilution (1)**
11:3
**directly (2)**
25:21;61:3
**disagree (5)**
21:23;24:2;25:5;
42:16;53:5
**disagreeing (1)**
45:7
**disappeared (2)**
64:24;65:2
**disapprove (1)**
20:1
**disapproved (2)**
20:6;23:22
**disclosure (1)**
43:22
**disconnected (1)**
65:6
**discount (3)**
12:23;19:5;28:11
**discounted (2)**
19:6;27:7
**discrete (1)**
45:21
**discretion (2)**
29:19;31:17
**discussed (2)**

52:13;66:18
**discussing (1)**
47:13
**discussion (4)**
39:16;58:24;59:16,
19
**discussions (4)**
41:22;42:1;49:22;
55:22
**dislocation (1)**
9:25
**dispute (6)**
41:4;42:20;48:11;
49:12;52:21,22
**disruptions (1)**
32:18
**distraction (1)**
57:13
**District (1)**
4:5
**divergence (1)**
57:13
**divide (3)**
15:24;39:17;42:23
**divides (1)**
45:25
**docket (5)**
6:5;9:4;34:7;41:1;
65:25
**document (8)**
36:21;42:22;47:18,
19;49:19;58:3,4;63:21
**documents (11)**
6:4;41:18,25;44:14;
45:2,11;53:4,12;59:22;
61:25;62:4
**dollars (24)**
9:9,18,21;10:7,8;
12:10,11,13;13:18;
17:3;19:2,16;22:1;
24:12,13;27:6;30:5,7,
18;34:24;35:25;60:19;
65:15,16
**done (8)**
12:15;14:22;21:15;
30:17;35:3;48:2;62:23;
63:20
**door (1)**
35:23
**doubt (2)**
62:23,24
**down (11)**
11:4;19:18,23,24;
21:12;29:5;30:24;31:9;
46:23;49:4;60:20
**draft (4)**
40:3,3;52:8,9
**drafting (2)**
41:25;44:14
**drafts (1)**
53:3
**drags (1)**
21:12

**dramatically (4)**
10:12;24:21;28:1,8
**draw (10)**
6:19;8:4,8;9:8;21:18,
25;24:1;30:9;33:20,22
**drawing (2)**
9:21;10:1
**drives (1)**
19:5
**driving (2)**
18:2;19:18
**drop (2)**
11:6,7
**drove (2)**
19:23,24
**due (1)**
9:24
**Dunn (2)**
55:6;65:24
**during (1)**
45:15
**dynamics (1)**
55:21

**E**

**earlier (3)**
47:25;59:7,18
**earnings (4)**
9:17,19,22;27:5
**easier (1)**
50:11
**eat (1)**
20:21
**economic (1)**
13:12
**economy (3)**
30:16;34:17;35:9
**educate (1)**
36:14
**effect (7)**
10:11;11:17;13:10;
33:18;34:15;37:2;
42:13
**effective (10)**
11:20;21:20;24:1;
35:10;36:25;58:22;
59:13;61:7,11,14
**effectively (1)**
60:3
**efficacy (1)**
26:6
**effort (2)**
44:13;61:12
**eighteen (1)**
24:12
**eighteen-plus (1)**
19:16
**eighty-eight (1)**
29:25
**eighty-five (2)**
16:12,15
**Either (5)**

8:19;24:20;44:22;
60:20;61:12
**elegant (1)**
27:10
**eliminate (1)**
18:10
**eliminated (1)**
18:4
**else (6)**
19:4,16;24:3;44:1;
53:4,14
**emails (1)**
51:9
**emergence (1)**
7:1
**emerges (1)**
35:14
**emotion (1)**
33:14
**employees (2)**
31:13;39:14
**employment (1)**
31:14
**end (4)**
27:4;50:11;60:4;
65:11
**ending (1)**
51:1
**energy (1)**
30:15
**engaged (1)**
41:21
**enormous (1)**
21:1
**enough (4)**
50:5;63:6,25;64:5
**ensure (1)**
18:23
**enter (2)**
10:16;32:24
**entered (1)**
62:3
**entirely (1)**
45:12
**entirety (1)**
59:10
**entitled (1)**
63:17
**entry (3)**
58:15,16;59:12
**equate (1)**
9:20
**equates (2)**
9:18,22
**equitably (1)**
56:20
**equity (26)**
6:4,10,12,14,20;7:1;
8:19;9:15;10:17,18,21;
12:3,6;13:18,23,23;
24:9;27:2,8,19;28:18;
31:10;32:19;51:4;
65:13,15

Case: 19-30088    Doc# 7984    Filed: 06/17/20    Entered: 06/17/20 08:32:57    Page 73
of 83

**equity-raise (1)**
6:9
**equivalency (2)**
18:21,24
**Eric (1)**
54:20
**error (1)**
33:19
**essentially (5)**
18:24;19:10,15;27:1;
43:22
**established (1)**
43:21
**establishes (1)**
26:3
**estimated (1)**
8:25
**Etkin (12)**
38:22;39:11,12,13;
42:16;48:8,20,23,24;
50:4,5;54:13
**evaluation (1)**
14:18
**even (9)**
12:18;23:8;25:24;
27:3;47:14;50:7;61:6,
16;63:20
**evening (2)**
40:2;67:22
**event (6)**
5:20;13:9;36:24;
46:17;50:3;51:21
**everybody (4)**
19:4,16;47:16;52:15
**everybody's (2)**
11:16;48:25
**everyone (2)**
27:16;53:17
**everywhere (1)**
35:9
**evidence (3)**
10:24;32:13;35:6
**evident (1)**
9:25
**ex (1)**
9:2
**exact (1)**
8:1
**exactly (3)**
29:23;33:21;62:4
**example (1)**
57:3
**excellent (1)**
30:9
**except (1)**
64:8
**excuse (6)**
13:14;37:8;54:13;
64:7,8,14
**excused (2)**
55:13,14
**executory (1)**
66:22

**exercise (2)**
29:19;31:17
**exercising (1)**
60:3
**exert (1)**
56:18
**existing (3)**
24:1;15;27:2
**exit (2)**
19:12;21:16
**expect (3)**
6:20;29:11;37:16
**expectation (4)**
31:1;36:15;37:3;
47:4
**expecting (1)**
29:10
**expedited (1)**
33:8
**expense (1)**
21:6
**experienced (1)**
60:21
**explain (3)**
11:8;33:12;44:9
**explained (2)**
34:11;40:13
**explanation (2)**
29:23;36:16
**exposes (2)**
21:13;23:6
**extend (1)**
66:4
**extending (1)**
40:19
**extension (2)**
41:8;43:20
**extent (3)**
42:20;50:14;67:9
**extra (1)**
21:9

**F**

**faced (1)**
27:8
**fact (11)**
10:25;14:14;19:22;
20:2,8;24:8;26:8;
31:21;33:20;42:1;
59:21
**facts (3)**
11:7;30:13,13
**fair (4)**
48:12,13;63:6;64:5
**fairly (1)**
56:20
**fallback (1)**
34:18
**fallen (1)**
28:8
**false (1)**
16:4

**families (1)**
60:21
**family (1)**
60:3
**family's (1)**
57:12
**fantastic (1)**
20:15
**far (5)**
13:15;32:7;40:14;
50:5;66:22
**faulting (1)**
34:1
**favor (1)**
60:17
**feasibility (3)**
9:1;13:21;26:20
**feature (1)**
47:22
**fee (6)**
7:12;13:7,13,14,14,
20
**feedback (2)**
23:3;51:3
**feel (1)**
60:2
**feelings (1)**
33:14
**fees (5)**
31:9;64:22,23;65:12,
15
**fellow (1)**
36:1
**felon (1)**
17:1
**felt (1)**
60:6
**few (3)**
15:11;16:6;23:6
**fifteen-business-day (1)**
41:8
**fifth (1)**
30:16
**fifty (3)**
13:8;14:15;22:5
**fifty- (1)**
13:13
**fifty-page (1)**
53:3
**figure (2)**
27:10;64:5
**file (4)**
15:17,18;35:19;
41:16
**filed (12)**
17:21;40:2,7,8;43:5;
52:8,9;56:13;59:12;
66:2,5,21
**filing (1)**
66:20
**final (4)**
36:24;37:17;47:6,16
**financial (3)**

18:7;31:18;53:23
**financing (12)**
7:11,22;17:23;20:3,
6;21:19,19;22:2;28:18;
65:13,14,14
**find (1)**
45:18
**fine (5)**
4:17;47:14;50:10;
67:6,20
**fines (1)**
20:17
**finish (4)**
17:5;25:18;50:9;
52:7
**Fire (22)**
6:25;7:11,13;8:24;
10:22,25;11:18,21;
12:20;14:15;17:24;
18:24;20:16;32:22;
37:24;40:25;43:18;
46:7;56:20;57:10;
60:23,24
**firm (2)**
37:16;54:25
**firmly (1)**
6:22
**First (12)**
15:25;18:2;28:2;
29:24;30:4;33:13;40:9,
23;41:19;53:10;55:12;
59:25
**five (3)**
19:20,21;28:5
**five-point-whatever (1)**
22:1
**fixed (1)**
13:8
**flatly (1)**
25:5
**fled (1)**
60:23
**flexibility (4)**
20:19,20,24;62:24
**flip (2)**
11:5,18
**floor (2)**
18:10;22:14
**flowing (1)**
45:11
**focus (2)**
17:15;52:20
**focused (3)**
31:20;45:14;62:13
**folks (4)**
37:12;56:17,23;
62:12
**follow (2)**
21:1;26:19
**following (1)**
59:10
**forced (5)**
10:10;11:12;12:22;

13:17;23:23
**forgotten (1)**
24:16
**form (2)**
47:7;54:2
**formal (2)**
37:6;51:5
**formality (1)**
53:25
**former (1)**
42:10
**forms (1)**
12:8
**formulation (1)**
19:7
**forth (3)**
9:10;47:20,22
**forty-eight (1)**
48:22
**forum (1)**
54:2
**forward (5)**
11:20;23:9;24:24,25;
28:18
**foundation (4)**
8:7;9:12;12:8;17:20
**four (3)**
42:7;48:22
**fourteen (1)**
23:20
**FRANCISCO (2)**
4:1;17:21
**frankly (1)**
35:13
**Friday (8)**
43:6;51:21;53:6,16;
54:5;62:8;66:12;67:14
**front (4)**
16:10;32:13;58:12;
59:24
**full (3)**
5:19;28:12;31:16
**fully (2)**
11:14;32:16
**fund (4)**
6:19;9:9;11:14;
30:25
**fundamental (1)**
17:13
**funded (2)**
11:14;32:16
**funding (2)**
6:7;13:21
**further (5)**
28:24;34:9,20;41:5;
67:19

**G**

**game (3)**
18:1,16;21:5
**gave (1)**
34:5

Case: 19-30088    Doc# 7984    Filed: 06/17/20    Entered: 06/17/20 08:32:57    Page 74
of 83

**GE (1)**
28:5
**gentlemen (1)**
49:3
**GER (1)**
8:23
**gets (1)**
19:4
**Gibson (2)**
55:6;65:24
**given (5)**
14:14;23:22;24:14;
33:7;49:21
**gives (1)**
56:22
**giving (3)**
10:12;16:13;21:8
**goal (3)**
36:15;49:8;54:3
**goes (5)**
12:19;24:23;49:14;
50:12;60:19
**Good (35)**
4:14,15,19,20,22,23;
5:14,15;26:3;29:16;
30:5,12;31:3,21;32:10,
16;37:23;38:16;39:4,5,
8,12,12;46:16;48:5;
50:8;54:22,23,24;55:5,
5,15;62:19;67:4,21
**Gotshal (1)**
39:24
**governor (1)**
35:15
**governs (2)**
14:15;57:9
**grant (2)**
33:11;36:5
**granted (1)**
56:23
**grants (1)**
12:14
**Grassgreen (28)**
38:24;46:4;54:11,17,
18,23,24,25;55:9,20,
24;56:7;57:17,20;
58:21;59:1,3,11;60:5;
61:2,6;62:21;63:7,12,
13;64:1,6,15
**Grassgreen/Carlson (1)**
48:7
**Grassgreen's (2)**
57:12;62:16
**great (3)**
27:18;30:16;63:10
**greater (2)**
18:15;21:10
**greatly (2)**
11:1;19:17
**green (1)**
35:14
**Gregory (1)**
38:7

**ground (1)**
56:14
**group (3)**
19:15;38:18;41:24
**guarantee (2)**
11:5;24:19
**guaranteed (1)**
31:13
**guarantees (1)**
42:4
**guess (9)**
11:8;24:6,7,9;37:9;
51:19;59:17;61:10;
63:3
**gutter (1)**
21:12

**H**

**hall (1)**
52:19
**Hallisey (18)**
5:3,5,5,6,9,10,12,15;
7:15;14:5,8;26:23,24;
28:23;31:4;34:3,21;
37:9
**hampered (1)**
28:14
**hampers (1)**
28:15
**hand (11)**
11:16;18:3;20:18,22,
23;23:18;29:1,5;42:24;
46:22,24
**handled (1)**
59:12
**hands (1)**
40:16
**happen (8)**
20:1,6;21:22;22:6,
22;24:3;30:24;57:14
**happened (1)**
59:25
**happens (7)**
7:18;21:17;22:7,12,
22;24:5;42:6
**hard (1)**
48:21
**harming (1)**
60:3
**headed (1)**
35:23
**headlines (1)**
28:4
**Health (1)**
61:22
**hear (10)**
4:8,10,17;29:11;
54:16;56:6;64:25;65:1,
9;67:2
**heard (21)**
29:3;37:12;45:24;
46:2,3;47:3;48:10;

51:16,16,24;52:23;
53:11;57:17;58:24;
59:4,5;61:10;62:22;
64:10;66:16,16
**hearing (24)**
16:11;26:14,16;36:6;
37:3;41:17;42:2;43:24;
46:14,19;47:15;51:1,
20,21;52:14;53:6;
55:11,12;58:25;60:11;
65:11;67:13,17,24
**heart (1)**
56:9
**heartburn (1)**
51:5
**hearts (1)**
54:1
**held (1)**
18:5
**help (3)**
28:19;48:14,25
**helpful (2)**
27:11;34:10
**helping (1)**
28:11
**helps (1)**
7:11
**herself (1)**
55:20
**Hi (1)**
54:20
**high (2)**
53:21;61:9
**higher (10)**
8:3,8,20;12:1,7,16,
18,18,20;30:19
**highest (2)**
6:14;47:2
**hit (3)**
11:15;13:17;19:23
**hitting (1)**
32:20
**hoc (2)**
38:18;55:7
**Hold (1)**
50:22
**holders (1)**
55:7
**holding (1)**
46:16
**Honor (110)**
4:7,10,20;5:1,12,23;
6:3,6,25;7:2,10;8:1,21;
9:4;10:14;11:2,11;
12:1,13,21;13:6;14:7,
11;15:24;16:9;17:9,20,
25;19:10;20:2,7,25;
21:4;22:11,25;23:4,5,
11;24:7,22,25;26:1,
21,24;27:24;29:14,16,
24;30:12;31:6;32:5,12,
14,17,24;33:5;37:23;
38:4,8,16;39:5,8,12,23;

41:19;43:12;44:12,20;
45:1,9;46:13;48:6,13,
24;49:21;50:5,21,23;
53:18;54:20,24;55:3,6,
10,16;56:1,8,13,15,22,
23;57:17,20;58:13;
59:17;61:19,21;62:7;
63:7,10,13;64:6,17,18,
24;65:2,23;66:8;67:4,
20
**Honorable (1)**
4:6
**Honor's (5)**
31:19;32:9;56:10,24,
25
**hope (6)**
33:18;44:16,21;
63:10;64:3;66:25
**hopeful (3)**
13:10;42:4;50:2
**hopefully (2)**
36:13;60:10
**hoping (1)**
12:17
**hospital (1)**
60:19
**Hospitality (1)**
8:24
**hours (5)**
14:14;15:14;42:7;
44:23;48:22
**house (1)**
17:23
**housekeeping (1)**
5:22
**hugely (1)**
19:8
**hundreds (1)**
60:19

**I**

**idea (1)**
46:16
**ideas (1)**
34:22
**identified (4)**
39:2;40:17;49:13;
52:22
**ignoring (1)**
38:25
**impact (8)**
10:18,20,23;13:21,
21,22,23;58:9
**impacts (2)**
11:16;25:1
**impaired (1)**
23:12
**implemented (1)**
23:22
**important (10)**
6:6;8:6;9:11,24;13:6,
19;15:23;16:10;60:6;

61:23
**importantly (5)**
6:25;7:3;10:19;
13:12;48:15
**improve (2)**
23:15,16
**inclined (1)**
41:2
**included (2)**
9:16;67:11
**includes (1)**
48:16
**including (7)**
6:24;11:18;27:12;
32:21;35:24;49:9;
57:12
**income (1)**
9:1
**incorrect (1)**
30:12
**increases (1)**
23:13
**indeed (1)**
46:8
**independent (1)**
45:13
**index (1)**
28:7
**indicated (4)**
18:16,22;19:1;50:6
**individual (3)**
16:15;54:25;60:20
**individually (1)**
40:20
**individuals (1)**
46:2
**inevitable (4)**
18:17,18;33:20,22
**infeasibility (1)**
20:8
**influence (1)**
35:3
**inputted (1)**
52:10
**insignificant (2)**
16:13;22:6
**institutional (2)**
30:5,10
**insurance (2)**
26:6,9
**intend (1)**
26:18
**intended (1)**
8:8
**intention (2)**
18:10;36:9
**interested (1)**
28:10;52:2
**interests (5)**
6:23,24;32:20;51:15;
64:2
**internet (1)**
65:7

Case: 19-30088    Doc# 7984    Filed: 06/17/20    Entered: 06/17/20 08:32:57    Page 75
of 83

**interpretation (2)**
  58:17,21
**interrelated (1)**
  45:18
**intervention (1)**
  44:20
**into (18)**
  7:21;10:3,17,21,25;
  12:20;15:24;16:16;
  17:2;21:12;29:2,5;
  48:17;56:15,18;57:21;
  58:9;60:22
**intolerable (1)**
  38:10
**investment (5)**
  12:2;27:21;30:4;
  31:3;53:22
**investors (5)**
  7:12;18:14,14;30:5,
  10
**invoked (1)**
  57:15
**involved (2)**
  45:16;59:8
**involves (1)**
  58:8
**issuance (1)**
  14:14
**issue (66)**
  10:7,8;13:16;27:25;
  36:10,16;39:19,19;
  40:9,14,18,23,24;41:6,
  7,12,19,20,24;42:8,8;
  43:10,20;44:7,9,14;
  45:17,20,25;46:7;47:4;
  48:15,17;49:8,15,19,
  25;50:13;51:17;52:24;
  53:11,11,12;55:22;
  56:1,9;57:23,25;58:25;
  59:9;60:1,6;62:15;
  63:5,14;65:6,7;66:3,20,
  21,22,25,25;67:3,11,11
**issued (2)**
  15:13;18:22
**issues (55)**
  8:23,25;35:4;36:7,
  13,16,18;37:4,13;38:9,
  9;39:1;40:9,18;41:11,
  18,25;42:3,22;43:1,4,
  13,17;44:4;45:6,8,18;
  47:5,5,11;49:3,4,13,17;
  50:18;51:13,21;52:13,
  20;53:7,10;56:4;59:20;
  62:2,6,9,11,13,16;
  63:16;64:10,12,12;
  66:15,17
**issuing (2)**
  51:5;67:8
**items (4)**
  41:10;42:18,20,25

**J**

**Jim (1)**
  39:5
**job (1)**
  48:2
**John (1)**
  39:8
**Johnston (13)**
  38:21;39:4,5,5;48:8,
  9,12,13;49:20,21;50:2,
  6;54:13
**joinder (2)**
  66:2,11
**joined (2)**
  5:2;53:13
**joining (3)**
  4:13;5:9;29:7
**jointly (1)**
  44:17
**Jones (1)**
  39:6
**judge (5)**
  17:4;42:10;48:14;
  57:5,7
**Judges (2)**
  25:24;35:2
**judge's (1)**
  33:2
**judgment (7)**
  10:16;16:2;22:23;
  25:15;60:23
**judicial (8)**
  55:24;56:10,12,18;
  57:15;58:1,19;62:14
**Julian (24)**
  29:1,2,6,7,7,9,14;
  31:23;32:3,7,11;33:1;
  35:12;37:11,25;39:15,
  18;44:3,5,6;64:8;
  67:17,20,23
**jump (1)**
  11:20
**JUNE (8)**
  4:1;9:4;23:19;34:23;
  46:15,15;47:2;48:2
**jurisdiction (2)**
  46:11;57:1
**justice (2)**
  30:21;60:9

**K**

**Karotkin (42)**
  4:13,14,15,17;5:25;
  36:13;37:11;39:21,23,
  23;40:1,2,20,22;42:15;
  43:2,4,17;44:12;50:21,
  23,24,25;51:3,8,19;
  52:19;53:2,9,20;54:7;
  64:9,18,19,20;65:2,4,
  10;66:16,17;67:7,15
**Karotkin's (1)**
  32:10
**keep (5)**

**22:21;36:15;43:7;**
  47:25;53:2
**kidding (1)**
  53:21
**kill (1)**
  24:20
**Kincade (1)**
  20:16
**kind (3)**
  39:17;51:23;66:24
**known (1)**
  63:25
**Kreller (2)**
  38:10;43:5

**L**

**Laffredi (3)**
  64:21;65:8,11
**language (7)**
  40:10;45:2,13;48:19;
  50:15;58:9;59:21
**largest (2)**
  30:15,16
**last (13)**
  12:6;31:6,15;41:7,
  12,17,19;42:8;45:19;
  51:23;52:4;64:23;
  65:10
**lastly (1)**
  16:6
**later (1)**
  44:22
**laughed (3)**
  10:7;16:17;17:4
**law (3)**
  50:11,17;63:19
**lawyer (1)**
  64:1
**Lawyers (3)**
  25:23;36:21;51:15
**lay (1)**
  17:20
**layman's (1)**
  31:8
**laymen's (1)**
  10:4
**leadership (1)**
  32:10
**least (17)**
  21:13;26:3;27:15;
  31:6,15;36:10,16;41:2;
  42:23;51:9,10,20;
  53:15,16;55:17;59:10,
  24
**leave (6)**
  21:14;28:12;47:13;
  49:18,19;61:16
**leaves (1)**
  14:17
**led (1)**
  60:17
**leeway (1)**

  24:23
**left (3)**
  24:1;37:15;53:14
**legislative (1)**
  35:15
**legislature (1)**
  48:1
**less (2)**
  11:24;36:18
**lesser (1)**
  10:10
**letter (1)**
  9:15
**letters (2)**
  9:8,11
**level (1)**
  20:11
**liabilities (1)**
  20:16
**light (4)**
  14:13;32:18;35:14;
  58:12
**likely (3)**
  19:21;23:6;54:5
**limited (1)**
  26:8
**line (5)**
  27:7;28:13;50:9;
  52:7;60:4
**list (1)**
  66:4
**listed (1)**
  42:19
**listen (1)**
  21:1
**listening (1)**
  20:13
**litigants (1)**
  45:21
**litigation (2)**
  49:12;57:14
**little (10)**
  20:23;28:19;31:24;
  32:1;38:22;45:10;
  50:11;51:3,4;59:6
**locked (1)**
  24:8
**long (4)**
  27:21;31:3;35:19;
  36:4
**long- (2)**
  31:2,13
**longer (2)**
  19:19;26:9
**long-term (4)**
  7:11;30:4,6,9
**look (8)**
  22:25;30:24;32:12;
  40:4;46:23;47:22;
  51:24;63:25
**looking (6)**
  7:20;26:12;28:4;
  46:23;50:16;51:9

**looming (1)**
  48:2
**loop (1)**
  46:5
**loss (1)**
  31:10
**lost (2)**
  20:4;60:7
**lot (3)**
  22:11;23:3;61:12
**lots (2)**
  25:16;35:21
**loud (1)**
  47:9
**love (1)**
  15:10
**lower (3)**
  6:20;19:5,5
**luck (3)**
  48:5;55:15;62:19

**M**

**ma'am (1)**
  61:20
**MacConaghy (19)**
  38:22;39:7,8,9,17,
  18;44:9;46:10,13;48:4,
  6;50:13;54:16;55:17;
  56:1;61:13;62:19;63:5;
  64:15
**MacConaghy's (1)**
  52:24
**maintain (2)**
  42:5;43:14
**majority (1)**
  18:6
**makes (2)**
  16:18;50:11
**making (2)**
  31:2;53:1
**Manges (1)**
  39:24
**manslaughter (2)**
  16:12,16
**many (1)**
  8:24
**market (16)**
  6:21;8:3;9:18,25;
  10:6;12:13,21;19:8;
  22:12;30:8,15,18;31:2;
  32:19,19;34:16
**market-adjusted (1)**
  30:8
**marketed (5)**
  6:12,13,16;9:16;
  12:17
**marketplace (6)**
  30:2,6,22;31:12;
  65:17,18
**markets (2)**
  6:17;30:24
**Mary (1)**

Case: 19-30088    Doc# 7984    Filed: 06/17/20    Entered: 06/17/20 08:32:57    Page 76
of 83

65:18
**master (1)**
39:22
**material (1)**
61:24
**math (1)**
11:1
**matter (6)**
29:3,4;34:21;46:15,
18;48:7
**matters (2)**
47:1;50:14
**maximize (2)**
29:20;31:17
**may (10)**
9:8,10;23:1;45:10,
15;47:25;49:25;52:9;
57:17;66:9
**maybe (5)**
24:20;46:15;49:14;
60:11;63:22
**mean (15)**
7:15;11:7;17:7;27:7;
34:7;39:16,25;42:20;
47:1,1;52:18;57:2;
61:8;63:17,22
**means (1)**
24:15
**meant (2)**
26:6;58:17
**mechanism (1)**
48:16
**mediation (5)**
15:4;42:10,12,14;
48:10
**meeting (1)**
52:19
**member (1)**
54:25
**memorandum (2)**
50:18;56:24
**mentioned (4)**
9:11;28:1;41:7;65:8
**merging (1)**
66:21
**message (1)**
47:21
**messages (1)**
47:22
**met (1)**
60:10
**Mexico (1)**
39:14
**mic (3)**
23:2;33:16;37:21
**Michael (1)**
39:13
**microphone (2)**
5:11;29:8
**middle (2)**
35:8;55:11
**might (4)**
46:16;49:25;51:11;

59:6
**Mike (2)**
55:6;65:23
**Milbank (1)**
38:7
**million (5)**
13:8,16,18;22:5;
65:16
**million-dollar (1)**
13:14
**mind (9)**
21:23;22:7;24:25;
25:1;35:23;41:10;54:1;
61:1;66:19
**mindful (1)**
67:13
**minor (3)**
55:1;58:8,10
**Mintz (15)**
38:14,16,16;41:23;
44:2,11,12;45:5,9;
52:25;54:15;55:10,11,
14,16
**minute (5)**
37:14;46:23;47:8;
58:16;67:10
**minutes (7)**
5:19,19;14:4,8,9;
26:23;46:3
**misconception (1)**
33:15
**misdirected (1)**
29:25
**missed (1)**
7:17
**missing (1)**
65:21
**misstate (1)**
33:18
**Mitigation (1)**
30:25
**modification (1)**
27:18
**modifications (2)**
9:3;61:24
**Molton (17)**
37:19,22,23;48:7;
56:3,5,8,8;57:5,7,21;
59:14;60:2,9;61:13;
63:19;64:15
**Molton's (1)**
64:4
**moment (4)**
4:7;21:24;39:2;
52:23;57:18
**Monday (4)**
37:4;47:3,3;51:11
**money (5)**
12:1,9;18:14;22:2;
28:12
**Montali (1)**
4:6
**Monte (1)**

18:1
**months (3)**
15:2;25:10;60:24
**more (24)**
8:16,18,19;10:9;
13:1,15;17:25;18:14;
23:19;24:19;25:19;
28:20;30:8;35:20;
36:17;37:3,6;38:22;
43:10;50:18;54:5;
57:24;63:4;67:16
**morning (20)**
4:14,15,19,20,22,23;
5:14,15;16:5;37:23;
38:16;39:4,5,8,12;
48:20;55:5,5;59:14;
61:11
**most (3)**
11:14;40:6;52:12
**mostly (1)**
28:3
**motion (30)**
6:3,6,8;7:5,9;9:2,5;
11:8;14:12,20;15:16;
18:21;20:1;23:23;24:4;
29:15,24;30:2,18;
31:21;32:13;33:12,22;
34:15;35:1,2;36:5,5;
37:17;55:12
**motions (1)**
15:17
**move (2)**
24:25;36:25
**moving (1)**
48:25
**much (8)**
11:24;20:10,20;
30:19;34:19;35:23;
44:17;45:2
**muster (1)**
26:4
**mute (2)**
23:2;37:21
**muted (1)**
37:23
**myself (1)**
37:23

**N**

**name (4)**
37:19,20;39:3;54:19
**namely (1)**
21:7
**narrowed (1)**
66:15
**near (1)**
19:8
**necessarily (1)**
57:8
**necessary (3)**
50:8;53:7;67:3
**need (30)**

5:10,19;6:18;8:4;
20:18,19;23:9,14,18;
25:18;32:4,12;43:10;
44:4,21;46:17;48:11;
50:15;53:16;54:13;
58:2,11;60:5,21;62:2;
63:20,22,23;64:9;67:1
**needed (2)**
18:23;59:24
**needs (2)**
8:15;23:2
**neglected (1)**
19:3
**negotiate (1)**
45:21
**negotiated (2)**
29:19;31:16
**negotiating (1)**
22:13
**negotiation (1)**
62:14
**negotiations (1)**
41:22
**neither (1)**
7:3
**net (1)**
8:25
**Neumeister (12)**
54:11;55:4,5,6;64:9,
11;65:20,23,24;66:7,
14;67:4
**nevertheless (1)**
36:18
**new (7)**
10:7;18;13:23;21:6;
31:12;37:18;39:14
**Newsome (1)**
42:10
**Newsome's (1)**
48:14
**next (11)**
26:15;42:6;44:22;
47:2,3,11;48:21;51:5;
55:12;59:10;67:24
**nice (1)**
32:2
**night (1)**
40:9
**nine (2)**
9:8;22:1
**ninety (1)**
4:18
**nobody (1)**
10:9
**noise (1)**
38:9
**none (1)**
60:25
**non-lawyers (1)**
36:22
**normal (1)**
6:17
**normalized (1)**

8:25
**normally (1)**
38:23
**Northern (1)**
4:5
**note (2)**
12:7;13:19
**noted (1)**
43:18;58:7,14
**notion (2)**
21:8;34:22
**nowhere (1)**
19:8
**number (7)**
6:5;11:3,4;16:4;
24:16,17;58:25
**numbers (1)**
12:12

**O**

**object (4)**
14:21;55:19,20;
64:12
**objected (3)**
15:1;17:10;58:18
**objecting (1)**
14:19
**objection (10)**
7:19,21;14:17;42:9;
56:11,11,13,14;66:2,3
**objections (8)**
7:2,18;9:5;33:11;
40:5;52:4,11;56:4
**objectors (1)**
11:5
**obtain (1)**
6:21
**obtaining (2)**
6:7;7:11
**obvious (1)**
49:5
**Obviously (8)**
28:10;33:8;34:6;
49:3;50:12;52:6;53:18;
62:1
**OCC (5)**
42:19,21,24;47:12;
66:18
**occasionally (1)**
35:2
**OCP (1)**
50:16
**off (6)**
10:8;16:17;19:13;
21:6;45:17;49:5
**offer (1)**
6:21
**offering (18)**
6:12,13,16;9:15,17,
19;12:6,13,18,22;
13:10;18:18;19:24;
27:8;30:7,8,19

Case: 19-30088    Doc# 7984    Filed: 06/17/20    Entered: 06/17/20 08:32:57    Page 77
of 83

**offerings (1)**
8:3
**official (1)**
7:3;39:9;45:6
**offset (1)**
13:15
**old (3)**
10:17;13:23;31:10
**once (1)**
34:22
**One (31)**
4:7;9:16;15:18;18;
19:11;24;20:22;23:15,
19;26:14,14,14;28:25;
37:3;40:18;41:1;42:24;
46:15,16;48:15;49:14;
54:9;56:20;57:25;
58:13,25;60:11;61:1,
23;64:11;67:16
**one-off (1)**
62:25
**one-on-one (1)**
62:25
**ones (4)**
49:5,16;52:13;61:17
**one's (1)**
31:8
**ongoing (1)**
48:10
**only (10)**
9:25;13:9;17:15;
27:13;32:13;35:1;
42:20;44:7;46:13;53:9
**oOo- (1)**
4:2
**open (14)**
36:7,13;37:4,13;
42:25;46:7;47:11,13,
25;51:13,21;53:8,10;
54:2
**opening (1)**
49:19
**operative (2)**
36:21;47:18
**opinion (2)**
36:24;47:18
**opponent (1)**
7:14
**opportunities (2)**
6:15;21:3
**opportunity (9)**
6:14;14:16,21,23;
15:14;18:12;34:5;
47:16;52:3
**oppose (3)**
7:9;29:15,24
**opposed (2)**
7:4;22:12
**opposing (3)**
7:6;28:16;31:21
**opposite (2)**
8:1;33:21
**opposition (1)**

29:25
**optimal (1)**
11:14
**optimistic (3)**
46:19,21;63:4
**option (2)**
10:1;35:1
**oral (3)**
33:3;58:24;67:1
**order (31)**
4:3;9:4;15:13;26:3;
32:24;34:23;36:23;
37:1,4,5,17;40:4,12;
43:14,22;44:15;47:7,
17;51:5,18;52:1,8,11,
12,16;54:2;58:15,17;
59:13;62:3;65:25
**orders (1)**
41:1
**others (7)**
6:1;36:14;53:13;
55:20;60:16;61:10;
66:14
**otherwise (1)**
43:15
**out (31)**
6:8;10:19;11:11;
12:8;13:6,13;17:4,15;
18:8;25:15;27:10;
28:11,19;30:18;31:10,
11;34:16,24;35:23,23;
40:19;41:21;47:9;54:4;
55:18;56:4;58:11;
62:19;64:3,5;67:18
**outline (3)**
16:4;49:11,13
**outstanding (3)**
40:5;42:8;44:13
**over (12)**
14:15;17:24;21:3,4;
31:17;42:6;52:9;59:23;
65:5,8;66:7,20
**overall (4)**
10:21;64:22,22,23
**overinflated (1)**
19:8
**overlap (1)**
42:22
**overrule (2)**
33:11;36:4
**oversight (1)**
33:19
**overstated (1)**
52:21
**overthinking (1)**
45:18
**own (3)**
33:14;35:13;51:15

**P**

**page (3)**
52:1,1,1

**paid (2)**
19:20;31:9
**painting (1)**
15:22
**panel (1)**
29:5
**papers (3)**
10:19;16:1;67:6
**Parada (7)**
4:9,25;29:6;37:8;
38:20;54:10;64:14
**paragraph (4)**
40:11;49:9,22;50:7
**paraphrasing (1)**
62:1
**parity (3)**
18:21,23;21:8
**parking (1)**
35:20
**part (6)**
8:6;20:13;59:19;
62:11;66:19,25
**parte (1)**
9:2
**partially (1)**
27:20
**participant (1)**
6:17
**participate (1)**
60:11
**particular (4)**
15:23;32:21;52:16;
58:8
**particularly (2)**
7:14;14:12
**parties (17)**
10:13;11:12;15:12;
20:25;21:20;22:4;
30:19;31:10;37:18;
42:22;44:16,18,22;
46:9;51:16;52:1;58:18
**partner (1)**
38:10
**parts (1)**
15:25
**party (2)**
5:4;9:7
**pass (1)**
26:4
**past (2)**
43:6;51:24
**pay (4)**
10:9,12;17:3,6
**payable (5)**
7:12;13:8,9,20,20
**payers (1)**
26:13
**paying (3)**
13:7;17:9;30:20
**penalties (1)**
20:17
**penetrating (1)**
33:2

**people (9)**
25:17;28:10;31:1;
40:4;51:4,8;52:4;
61:11;64:25
**per (2)**
6:14;9:21
**PERA (1)**
53:11
**PERA's (1)**
42:9
**percent (14)**
7:1;11:7,22,23,23;
12:19;14:15;18:6;
19:24;21:9;26:8;28:5,
6;30:1
**percentage (3)**
10:20,23;21:10
**perfect (1)**
20:19
**perhaps (5)**
24:20;25:21;45:17;
51:20;64:2
**period (2)**
31:17;41:10
**permission (1)**
17:2
**permit (1)**
28:17
**permitted (1)**
19:9
**person (2)**
46:5;56:2
**personal (4)**
35:13;36:9;45:24;
47:4
**perspective (2)**
13:12;57:15
**persuaded (1)**
24:3
**persuasive (2)**
24:15;60:16
**pessimism (1)**
35:7
**PG&E (8)**
4:6;16:12;21:3,5;
22:9;31:13;35:21;47:1
**phase (2)**
36:6;37:10
**philo (1)**
25:11
**philosophy (2)**
25:10;57:9
**phone (2)**
46:11;48:5
**phrase (1)**
35:18
**pick (1)**
46:16
**picking (1)**
43:18
**PIPE (7)**
12:2,3,11,15,19;
22:2;30:4

**pitcher (1)**
8:20
**pivot (1)**
32:17
**place (12)**
8:20;14:18;18:18;
19:14;22:23;25:12,14;
35:20,23;49:16;60:1;
63:21
**placed (1)**
57:25
**plan (45)**
6:6,7,19;8:6,7;9:1,3,
9,13;11:13;13:21;18:8;
20:8;12,15,22;23:15,
16,24;24:20,23;25:2,9;
26:3,6,10,20;27:17;
29:18;31:6;32:16,16;
35:4,10;36:8,12,20;
37:1;40:3,10;43:23;
45:24;47:17;48:18;
65:13
**play (1)**
48:1
**plays (1)**
21:4
**pleading (2)**
40:8;43:5
**pleadings (3)**
41:13;43:8;66:10
**please (8)**
29:6,8;37:11,20;
38:15;39:3;54:10,18
**pleased (1)**
36:2
**pleases (1)**
6:2
**pleasure (1)**
50:4
**plow (1)**
42:3
**plus (3)**
22:2,2,2
**point (27)**
9:24;13:5,6;21:9;
22:7,21,21,23;13;25:7;
26:17;32:16;33:23;
41:21;42:19;49:2;
58:13;60:13
**pointed (2)**
10:19;11:11
**points (4)**
13:13;20:8;25:21;
33:9
**policy (2)**
26:7,9
**poor (1)**
20:3
**pop (1)**
31:1
**popping (1)**
35:9
**Porter (1)**

Case: 19-30088    Doc# 7984    Filed: 06/17/20    Entered: 06/17/20 08:32:57    Page 78
of 83

38:17
**portion (2)**
6:1;27:16
**position (8)**
6:10;27:11,20;29:4;
35:15,16;56:3;67:5
**positive (1)**
13:23
**possibilities (1)**
60:18
**possible (2)**
19:14;20:20
**post-emergence (1)**
6:17
**posting (1)**
34:7
**precondition (1)**
57:14
**pre-confirmation (1)**
36:24
**predictions (1)**
21:22
**prefer (1)**
49:17
**pre-fire (1)**
18:25
**pre-judging (1)**
40:24
**prejudice (1)**
41:14
**prejudiced (1)**
62:22
**preliminary (1)**
5:22
**premise (1)**
33:5
**prepared (1)**
23:8
**present (1)**
27:9
**presented (2)**
9:2;15:11
**preserve (2)**
13:18;27:19
**preserves (2)**
29:17,18
**presiding (1)**
4:6
**pressure (1)**
51:6
**presume (1)**
44:25
**pretty (1)**
66:23
**price (23)**
6:14,20;9:22;10:10,
11;11:15,16,17;12:1,
16,18,24;19:2,4,7,18;
20:10;26:7;27:6;30:8,
22,23;31:9
**priced (1)**
19:16
**prices (4)**

8:4,9;9:18,18
**pricing (1)**
9:16
**primarily (1)**
66:17
**primary (1)**
7:21
**principle (2)**
48:15,16
**prior (5)**
8:14;9:14;19:1;
58:25;66:9
**priorities (1)**
47:2
**priority (1)**
53:21
**private (1)**
12:2
**privilege (1)**
58:6
**probably (7)**
27:11;31:24;37:4;
47:7;48:11;49:23;
60:12
**problem (4)**
20:18;26:25;28:21;
38:13
**problems (2)**
31:4;35:24
**procedures (3)**
56:15;57:25;63:21
**proceed (2)**
14:7;16:3
**proceedings (2)**
6:11;67:25
**process (4)**
6:7;35:17;36:24;
58:19
**productive (2)**
52:5,6
**progress (1)**
44:17
**prohibited (1)**
7:6
**promise (1)**
54:4
**promised (1)**
64:21
**proponents (1)**
39:6
**proposed (7)**
9:2,14;32:24;40:11;
52:11,12;61:25
**proposition (1)**
21:24
**protection (1)**
31:16
**protections (5)**
29:17,18;61:23;62:2;
63:17
**protest (2)**
17:22,22
**provide (4)**

14:16;18:12,14;21:8
**provided (3)**
52:8;57:23;58:5
**providers (1)**
43:19
**provides (3)**
6:13;31:6,16
**provision (1)**
56:22
**provisions (2)**
41:18;58:8
**public (10)**
6:12,13,16;12:3;
13:10;21:18;22:2;
26:11;30:8;39:13
**publish (1)**
50:17
**purpose (1)**
9:12
**purposes (1)**
47:19
**pursuant (1)**
56:23
**pursue (1)**
56:24
**pushing (1)**
60:4
**put (9)**
23:8;27:9;30:18;
43:23;51:6;56:15;61:9;
64:21;65:12

## Q

**quick (2)**
15:17;19:13
**quickly (1)**
34:6
**quite (1)**
35:22
**quo (1)**
42:6

## R

**raise (8)**
6:10,12;8:24;12:1,8;
52:15;58:2;62:15
**raised (7)**
8:23;12:11,13;41:11,
18;43:5;52:4
**raising (1)**
51:4
**range (3)**
27:4;60:18,25
**rate (1)**
26:13
**rather (4)**
12:22;27:4;32:19;
49:5
**rationale (1)**
40:13
**re (1)**

58:19
**reach (3)**
44:21;45:3;46:9
**reached (2)**
48:14;55:18
**reaches (1)**
15:4
**read (3)**
7:25;33:15,17;41:1;
47:21
**ready (1)**
53:10,13,24
**real (1)**
38:13
**really (15)**
9:5;17:7,8;18:10;
28:13,16;29:24;32:9;
48:21;51:22;52:20;
53:9,23;55:24;56:9
**reason (4)**
10:15;13:24;29:16;
32:23
**reasoning (1)**
44:9
**reasons (1)**
34:14
**Rebecca (1)**
61:21
**rebound (1)**
19:22
**recall (1)**
45:15
**received (2)**
7:2;52:10
**receiving (1)**
7:1
**recent (1)**
52:12
**recently (1)**
29:19
**reconsideration (2)**
15:16,17
**record (8)**
32:6,13;37:19,20;
39:3;54:19;64:21;
65:12
**recovery (1)**
36:3
**redline (1)**
53:3
**reduced (1)**
19:17
**reexamine (1)**
34:5
**refer (1)**
9:10
**referred (1)**
8:25
**referring (1)**
21:19
**reflect (1)**
32:6
**regained (1)**

51:25
**regard (2)**
44:14;45:11
**regarding (6)**
8:25;9:1;16:2,8;
18:21;40:12
**regardless (1)**
23:11
**registration (1)**
29:20
**registration-rights (4)**
14:13,22;15:2;31:15
**regulators (1)**
35:15
**rehashed (1)**
16:5
**rejected (2)**
41:15;66:4
**rejection (2)**
40:19;41:9,15;43:20
**related (1)**
34:3
**relevant (1)**
9:5
**relief (5)**
6:7;7:4,10;8:20;
12:14
**relieve (1)**
27:15
**relieved (1)**
27:20
**rely (3)**
24:6,8,10
**remained (1)**
6:10
**remaining (3)**
12:11,12;40:9
**remedies (1)**
16:6
**remedy (1)**
57:15
**removal (1)**
22:13
**remove (2)**
26:7,7
**reorganized (1)**
10:21
**repeat (1)**
62:18
**report (1)**
37:7
**representatives (1)**
41:23
**representing (3)**
51:15;54:21;64:2
**request (4)**
41:20;54:6;66:4,10
**requested (2)**
41:8;59:22
**requesting (1)**
12:14
**require (3)**
20:25;34:20;41:4

Case: 19-30088    Doc# 7984    Filed: 06/17/20    Entered: 06/17/20 08:32:57    Page 79
of 83

**requirements (1)**
9:16
**requires (1)**
18:9
**requisites (1)**
36:18
**reserve (5)**
5:17,18;12:25;14:3;
47:6
**resolution (6)**
44:17;45:4,22;46:9;
63:2;66:18
**resolvable (1)**
50:14
**resolve (3)**
44:13,19;62:5
**resolved (11)**
40:6;47:1,14,15;
48:21;50:14,19;52:12;
57:3;61:3;63:5
**resources (1)**
57:11
**respect (14)**
40:7;41:4,9,17,24;
42:9;43:19;46:1;52:15;
60:1;63:14;65:25;66:2,
3
**respectfully (2)**
14:1;32:23
**respond (1)**
57:24
**responded (1)**
40:25
**response (2)**
34:11;40:7
**rest (5)**
12:9;13:1;21:21;
39:19;67:6
**restricting (1)**
59:23
**restrictions (3)**
20:10;26:7;58:1
**restructuring (1)**
28:15
**result (1)**
49:25
**resulting (1)**
28:3
**results (1)**
27:5
**retail (1)**
28:5
**Retirement (1)**
39:14
**return (1)**
6:16
**returns (1)**
18:15
**review (9)**
14:16;50:17;55:25;
56:10,12,18;58:1,19;
62:14
**reviewed (1)**

**34:12**
**revised (2)**
40:3,3
**revision (1)**
43:13
**revisit (2)**
52:3;60:12
**rewrite (1)**
43:22
**right (43)**
4:8,8,12;5:10,16;
7:23;8:12,22;11:24;
12:4;14:5;24:16;29:6;
31:19,20;37:25;38:2,
14;39:11,21;44:25;
45:8;46:12,22;47:3;
50:1;54:8,9;55:24;
56:12,17,18,23,24,24;
58:18,25;64:7,12,13;
65:3,19;67:2
**rights (7)**
9:19;10:9;14:20;
29:20;45:12;60:3;
62:22
**risk (2)**
23:7,12
**risks (2)**
23:8,13
**risk-takers (1)**
27:19
**roll (1)**
25:2
**room (1)**
29:2
**RSA (2)**
7:7,8
**Rudnick (1)**
37:24
**rule (6)**
16:2,8,14,23;57:23;
66:9
**ruled (1)**
41:19
**ruling (8)**
45:20;46:8;49:22,25;
55:23;56:10,25;60:17
**running (1)**
37:5
**rush (1)**
59:5

**S**

**sad (1)**
36:2
**sale (2)**
18:24,25
**sales (1)**
28:5
**same (8)**
8:24;16:10,16;17:2;
32:8;55:19;57:9;62:11
**SAN (2)**

4:1;17:21
**satisfaction (2)**
64:3,4
**satisfactory (1)**
35:6
**satisfied (1)**
63:9
**saying (5)**
24:22;26:13;33:24;
36:4;62:5
**Scarpulla (1)**
4:24
**scenario (2)**
22:7;24:24
**schedule (5)**
35:11;37:3;51:20;
53:6,15
**scheduled (1)**
42:2
**scope (1)**
62:13
**screen (1)**
67:18
**sealed (1)**
63:21
**seasons (1)**
21:14
**Second (12)**
16:4;18:20;27:3;
28:25;36:7;40:23;
41:20;46:24;53:12;
54:9;60:1;61:1
**secondly (1)**
30:7
**section (2)**
40:10;43:13
**securities (1)**
49:12
**seek (1)**
44:20
**seem (1)**
49:4
**seemed (1)**
63:5
**seems (2)**
7:19;40:18
**sell (7)**
6:14;11:12;12:22;
19:13;21:6;24:12;
32:19
**selling (1)**
29:21
**send (2)**
47:22;59:22
**sense (7)**
7:10;9:12;16:18;
23:10;37:6;59:9;66:15
**sent (2)**
34:6;53:25
**sentence (3)**
17:5;32:8;50:7
**separate (1)**
66:2

**separately (1)**
47:23
**served (1)**
9:11
**services (1)**
43:19
**session (2)**
4:5;66:9
**set (6)**
9:10;26:2;29:10;
47:24,25;54:5
**settlement (1)**
58:6
**several (3)**
9:7;35:4,5
**shaky (1)**
20:19
**share (17)**
6:14;9:17,19,21,23;
11:13,15;12:6,7,23;
14:6;18:25;19:3,4,16;
57:22;58:3
**shareholder (1)**
39:6
**shareholders (7)**
11:18;19:15;21:6,7,
14;27:23;31:12
**shares (14)**
7:12;11:12;13:8,9,
16,20;18:13;19:5,18;
21:12,13,21;22:5;
48:17
**short (1)**
21:5
**shortfall (2)**
27:5,16
**show (1)**
19:6
**showed (1)**
12:1
**shows (1)**
20:11
**sic (2)**
33:5;36:5
**side (4)**
11:5,19;16:13;33:1
**sides (1)**
32:10
**sign (2)**
37:1,5
**significantly (3)**
6:20;12:7;23:12
**similar (1)**
62:11
**similarly (1)**
42:21
**simple (6)**
10:3,13,14,15;15:21;
66:23
**simply (3)**
34:25;53:2;58:17
**situated (1)**
42:21

**situation**
28:11;34:13;60:20;
63:1
**six (2)**
19:20,21
**sixteen (1)**
28:5
**slack (1)**
38:11
**sleight (1)**
18:2
**sleight-of-hand (2)**
18:1,20
**slight (1)**
35:3
**slightest (1)**
17:23
**slighting (1)**
51:14
**slightly (1)**
45:13
**solely (3)**
7:12;13:8,20
**solution (1)**
27:10
**somebody (4)**
53:4;55:18;60:22,23
**somehow (2)**
46:5;62:22
**Someone (2)**
23:2;37:16
**sometime (1)**
65:10
**somewhat (1)**
57:20
**somewhere (1)**
23:2
**son (1)**
55:1
**sooner (1)**
51:9
**sorry (9)**
12:12;17:22;25:20;
39:25;40:1,22;48:12;
50:25;64:20
**sort (3)**
28:11;47:6;62:17
**sought (2)**
6:7;7:5
**sounded (2)**
66:8,9
**sounds (4)**
23:24,25;24:14;67:4
**speak (2)**
48:7;66:11
**SPEAKER (2)**
5:3;65:1
**speaking (2)**
5:4;38:17
**speaks (1)**
36:23
**special (1)**
39:9

Case: 19-30088    Doc# 7984    Filed: 06/17/20    Entered: 06/17/20 08:32:57    Page 80
of 83

**specific (3)**
39:1;45:6;62:6
**specifically (2)**
46:4;57:22
**speculate (1)**
49:18
**spend (1)**
61:12
**spillover (1)**
45:10
**spoke (2)**
31:4;59:13
**stability (2)**
30:1,6
**staff (1)**
56:19
**stage (1)**
37:1
**stakeholders (2)**
6:24;32:21
**stand (1)**
53:24
**start (10)**
5:24;33:14;37:5,19;
38:3;39:4,21;49:20;
65:5,8
**started (1)**
27:22
**Starting (4)**
22:9;33:23;47:19;
54:19
**state (8)**
19:3;29:8;37:18;
38:5,6;39:3;54:18;55:4
**stated (4)**
20:15;30:13;38:1;
41:13
**statement (9)**
33:6;42:17;43:22;
48:12,13;49:7;58:7,14;
63:9
**status (7)**
37:7,13;42:5,12,14,
14;66:1
**stay (5)**
35:19;37:11;39:15;
49:10;67:14
**step (1)**
38:10
**Stephen (1)**
39:23
**stick (4)**
37:10;54:13;67:8,10
**sticker (1)**
27:6
**still (18)**
11:23;21:11;22:25;
23:5,6;27:19;35:10;
36:13,23;41:21;42:14;
44:13;47:15;52:20;
56:4;62:14;64:11;
67:17
**stipulated (1)**

**stipulation (1)**
60:23
7:9
**stock (29)**
7:13;10:7,25;11:16,
17;12:22;19:7,12,17,
21,23,24;20:1,6;21:9;
22:10;24:21;28:12;
29:21;30:2,12,16,22;
31:1,2,5,7,9,10
**stockholders (2)**
19:11,11
**stocks (1)**
19:6
**stop (2)**
26:21;67:16
**strategy (1)**
6:9
**Street (2)**
10:8;27:19
**stricken (1)**
43:15
**struck (2)**
18:7;19:2
**structure (2)**
9:15;10:1
**subject (3)**
29:21;34:3;55:19
**subjects (1)**
29:12
**submit (1)**
58:4
**submitted (1)**
66:23
**subrogation (1)**
28:10
**subscription (2)**
24:13;49:15
**subsets (1)**
52:24
**subsidize (1)**
27:2
**subsidy (1)**
27:20
**substantial (1)**
27:15
**substantially (1)**
8:3
**suddenly (2)**
15:3;49:14
**sufferers (1)**
36:1
**Suffice (1)**
57:24
**suggest (4)**
27:13;42:5;51:12;
54:12
**suggested (1)**
59:11
**suggesting (1)**
54:1
**suggestion (1)**
53:15

**suggests (1)**
8:14
**summarily (1)**
33:12
**summarized (1)**
66:16
**summer (1)**
23:6
**summers (1)**
23:7
**Sunday (3)**
40:2,9;52:9
**superior (1)**
61:3
**supervision (1)**
32:9
**support (5)**
7:10;14:16;21:16;
28:15;35:12
**supporting (2)**
31:22;34:15
**supports (1)**
10:24
**supposed (1)**
46:22
**Sure (12)**
10:5;20:9;26:12;
33:24;34:8;37:18;38:5;
53:1;57:19;61:6;64:11;
67:5
**surprise (2)**
36:11;49:13
**surprised (4)**
33:17;57:20;59:4,19
**suspect (1)**
62:21
**switch (1)**
33:15
**sympathetic (1)**
36:2

**T**

**table (1)**
15:20
**tale (3)**
22:23;23:1,5
**talk (7)**
15:25;16:6;17:14;
25:14;30:21;38:25;
48:11
**talked (2)**
47:12;48:20
**talking (1)**
62:12
**TCC (9)**
7:4,6;18:21;29:3,15,
25;30:6;31:21;35:12
**ten (4)**
10:8;14:9;24:13;
26:23
**tens (1)**
17:3

**tentative (2)**
44:8,8
**tentatively (1)**
28:7
**term (2)**
31:3,14
**terms (10)**
7:8;8:18;9:9;10:4;
14:18;29:21;31:8;37:6;
50:17;61:22
**territory (1)**
42:23
**terror (1)**
54:1
**terrorize (1)**
52:18
**testament (1)**
32:9
**testify (1)**
34:20
**testimony (3)**
8:13,14;34:9
**theory (1)**
17:13
**therein (1)**
9:10
**thinking (3)**
34:25;36:16;47:8
**third (1)**
40:18
**thirty (2)**
5:19;41:15
**thorniest (1)**
48:17
**though (2)**
23:8;65:5
**thought (10)**
33:7;34:6;37:22;
46:5;51:25;55:17;59:7;
61:1;65:20;66:24
**thousands (1)**
60:19
**three (18)**
5:18;9:21;14:3;
15:24;40:17,17;42:18,
20,25;43:12;45:6;
47:12;52:5,22;54:11,
14;66:16,17
**three-and-a-half (1)**
23:25
**three-card (1)**
18:1
**three-tiered (1)**
9:15
**threshold (2)**
18:4,23
**throughout (1)**
6:11
**throw (1)**
67:18
**Thursday's (1)**
41:17
**till (1)**

**timely (2)**
59:10
56:13;58:18
**times (8)**
9:17,22;27:1,4,5;
35:4;47:19;49:8
**timing (6)**
56:4;57:15;58:15,16;
61:23;62:15
**today (18)**
6:3;9:6;10:6;12:14,
16;15:20;20:1,6;29:13;
34:11;38:9;44:10,22;
52:13;57:21;59:4,5;
60:6
**today's (3)**
17:15;34:15;37:17
**together (2)**
27:9;45:3
**told (5)**
30:11;49:24;57:22;
58:5;65:17
**tomorrow (7)**
36:10,15;50:1;54:4;
66:25;67:9,12
**topic (2)**
56:10,11
**topics (1)**
47:12
**tort (3)**
28:14;39:9;41:22
**total (4)**
27:20;65:12,14,15
**touch (2)**
46:8;55:18
**toward (1)**
65:11
**towards (1)**
44:17
**town (1)**
52:19
**track (1)**
35:10
**trade (2)**
55:7;66:1
**trading (1)**
12:23
**trashing (1)**
30:12
**trial (2)**
8:13;36:17
**tried (2)**
10:7,8
**Trotter (1)**
60:10
**trouble (1)**
15:6
**true (2)**
11:9,10
**Trust (26)**
6:25;10:22;11:1,18;
12:20;16:2,22,22;18:9;
21:1;32:22;41:18,23,

Case: 19-30088   Doc# 7984   Filed: 06/17/20   Entered: 06/17/20 08:32:57   Page 81
of 83

25;42:22;44:6,14;
45:11,17,25;51:13;
53:12;56:15;60:2;
61:25;62:4
**trustee (10)**
11:21;29:18;31:16;
37:24;45:25;56:9,16,
19;61:17;62:24
**truth (1)**
30:11
**try (9)**
23:14;25:14,18;42:3;
44:13,16;45:3;47:10;
53:6
**trying (7)**
17:15,20;20:21;27:9;
43:7;45:21;65:25
**TUESDAY (3)**
4:1;37:4;47:2
**tuned (2)**
49:10;67:14
**turf (2)**
39:17;42:23
**turn (6)**
5:11;7:20;10:3;16:7;
36:7;37:20
**turned (1)**
5:13
**turning (1)**
20:4
**turns (1)**
7:21
**tweaks (1)**
35:3
**twenty (2)**
14:8;26:8
**twenty- (3)**
18:5;42:6;48:21
**twenty-four (1)**
44:22
**twenty-percent (2)**
18:4;22:14
**twenty-two (3)**
11:21,23,23
**two (14)**
7:2;9:19;19:10;21:9;
27:6;30:3;33:11;41:18;
43:17;51:14;53:10;
57:2;60:24;62:11
**type (1)**
62:25

**U**

**UCC (4)**
7:4;40:23,24;44:7
**UCC's (1)**
66:3
**ultimately (1)**
60:17
**Um (1)**
13:3
**unable (1)**

44:19
**under (8)**
7:7,8;9:8;10:1;
29:17;57:23;58:5;
59:23
**undercut (1)**
18:13
**undermines (1)**
26:20
**understood (1)**
33:24
**undertake (1)**
8:3
**underwriters (1)**
53:23
**undeserved (1)**
16:23
**unemployment (2)**
28:2,6
**unfair (3)**
28:13,16,17
**unfortunately (1)**
30:23
**unfounded (1)**
9:1
**UNIDENTIFIED (2)**
5:3;65:1
**UNISON (1)**
64:17
**unknowns (1)**
22:12
**unless (3)**
54:8;64:9;67:17
**unlike (1)**
21:24
**unmute (9)**
4:21;5:11;29:8;
37:20,21;44:4;48:9;
65:20;67:19
**unproductive (1)**
52:2
**unrelated (1)**
46:14
**unsecured (1)**
40:8
**unstated (2)**
33:4,5
**unsure (1)**
20:23
**up (23)**
5:25;9:8;14:10;
15:24;18:6;19:3;23:10;
24:8;25:18;29:2;31:1;
35:9;38:10,10;43:7,18;
44:10;46:8;50:15;53:3;
55:12;62:14;66:13
**uploading (1)**
37:16
**upon (3)**
19:12;22:1,4
**upper (1)**
27:4
**upping (1)**

10:11
**use (1)**
32:7
**used (2)**
12:5;25:23
**utility (1)**
30:15

**V**

**valid (1)**
22:21
**value (12)**
10:25;11:6,6;12:19;
13:18;14:15;19:8,18,
21;22:9;29:20;31:17
**variety (1)**
34:14
**various (2)**
43:8;49:13
**vast (2)**
18:6;35:24
**vendors (1)**
43:18
**version (1)**
37:17
**versus (1)**
60:23
**viable (1)**
9:25
**Victim (4)**
6:25;11:18;12:20;
37:24
**victims (27)**
7:11;8:24;14:15;
17:3,6,9;19:7,15,20;
21:7;23:6,11;26:11;
27:1,14,22;28:19;
29:16;30:1,11;31:11,
12;32:15;36:1;46:7;
56:20;57:10
**victims' (12)**
7:13;10:22;11:1;
18:13;19:5;21:12;
22:10;27:12;28:14;
29:21;31:7;32:22
**video (2)**
5:11,12
**view (8)**
17:15;25:15,16,16;
35:13;41:11;42:19;
49:3
**voted (1)**
30:1

**W**

**wait (8)**
14:19;28:25;47:8;
54:9;57:3;59:10;61:2,
16
**Wall (2)**
10:8;27:19

**wants (2)**
29:21;30:7
**way (5)**
6:11;8:19;24:23,24;
34:10,17;36:3,4;44:16;
46:1;52:5,6,25;56:22;
57:7
**ways (2)**
30:3;31:3
**Wednesday (1)**
49:25
**week (10)**
12:6;28:4;41:12,19;
51:5,23;59:10,10;
64:23;65:10
**weekend (2)**
34:7;66:7
**weeks (4)**
15:3,3,4;52:5
**weigh (3)**
29:12;44:3,6
**Weil (1)**
39:24
**well-capitalized (1)**
31:14
**well-established (1)**
35:7
**well-financed (1)**
20:22
**well-positioned (1)**
19:12
**what'll (1)**
22:22
**what's (5)**
8:25;30:24;49:18;
50:4;59:5
**whatsoever (2)**
10:18,20
**Whereupon (1)**
67:25
**whole (1)**
60:13
**wholeheartedly (1)**
26:2
**wife (1)**
54:21
**wildfire (2)**
21:13;30:25
**Winthrop (20)**
38:15,18;39:25;44:3,
24;45:1,5;52:25;54:15;
55:20;60:16;61:19,21,
22;62:7,9,13;63:8,10;
64:14
**Winthrop's (1)**
41:24
**wish (3)**
15:11;48:4;60:12
**wishful (1)**
34:24
**within (7)**
10:16;14:14;15:14;
29:19;41:10;44:22;

47:11
**Without (10)**
6:18;10:2;11:11;
12:15;14:16;15:14;
28:17;33:22;57:13;
58:9
**withstand (3)**
20:16,16,17
**witnesses (1)**
23:9
**woe (1)**
22:23;23:1,5
**wondered (1)**
59:5
**word (1)**
47:16
**words (9)**
20:14;21:2;32:7;
37:1;43:14;51:13;
52:16
**work (8)**
44:16;48:21;50:8;
51:11;53:5;58:11;
62:19;64:3
**working (5)**
44:13;45:3;48:18;
51:17;53:12
**works (1)**
53:18
**world (3)**
30:16;34:16;45:20
**worry (2)**
50:16;63:1
**worrying (1)**
55:24
**worse (2)**
26:10,11
**worth (3)**
11:24;21:10,11
**written (9)**
33:17;34:11;36:10;
47:5;49:8;9;54:4;
56:22;57:8
**wrote (1)**
56:13

**Y**

**years (2)**
19:20,21
**yesterday (2)**
7:3;58:4

**Z**

**Ziman (7)**
11:13;13:13;33:20,
24;34:5,13,20
**Ziman's (2)**
8:13;10:24;27:3;
34:12
**Zoom (2)**
47:23;65:6

Case: 19-30088    Doc# 7984    Filed: 06/17/20    Entered: 06/17/20 08:32:57    Page 82
of 83

**Zumbro (38)**
4:19,20;5:16,18,22;
6:2;7:8,17,24;8:1,12,
17,21,23;10:3,5,14;
11:10,25;12:5;13:3,5;
14:1;21:19;24:4;28:24,
25;31:19,24;32:1,4,25;
33:4;34:11;37:9,15,15,
16
**Zumbro's (1)**
29:23

**1**

**1.2 (1)**
34:24
**10.6 (2)**
9:19;27:4
**1054 (1)**
23:20
**11 (1)**
9:20
**11:36 (1)**
67:25
**12 (1)**
9:20
**13.5 (1)**
9:17
**14.7 (1)**
28:6
**14.9 (4)**
27:1,4,25;28:7
**14th (1)**
9:4
**16 (1)**
4:1
**16th (2)**
23:19;34:23
**18 (2)**
9:18;10:7
**19 (1)**
9:18

**2**

**2 (2)**
39:19;44:9
**20.1 (1)**
11:3
**2020 (2)**
4:1;9:4
**22 (2)**
11:4,6
**22.19 (2)**
7:1;12:19
**22nd (2)**
46:15;47:2
**24th (2)**
46:15;47:25
**26th (1)**
52:9

**3**

**3.25 (4)**
12:10;19:1,22;30:5
**300 (1)**
13:15
**30th (1)**
48:2
**34d (2)**
40:11;43:14

**4**

**400 (1)**
65:16
**408 (2)**
57:24;59:23
**43.1 (1)**
65:16

**5**

**5.75 (4)**
12:11,12;30:7,18
**50-million-share (1)**
13:14
**52 (1)**
65:14

**6**

**6.2 (1)**
19:24
**65 (1)**
56:17

**7**

**7.5 (1)**
26:12
**7.50 (1)**
24:16
**70,000 (2)**
56:17,20
**7848 (1)**
6:5

**8**

**8.2e (2)**
40:10;43:13
**8.8 (1)**
9:22
**80,000 (3)**
36:1;57:3;61:2

**9**

**9 (1)**
65:15
**900 (1)**
13:18

Case: 19-30088    Doc# 7984    Filed: 06/17/20    Entered: 06/17/20 08:32:57    Page 83
of 83