Bonnie E. Kane, Esq., SBN: 167700
Steven S. Kane, Esq., SBN: 061670
**THE KANE LAW FIRM**
402 W. Broadway, Suite 2500
San Diego, CA 92101
Telephone: (619) 236-8700
Facsimile: (619) 236-1370
E-mail: bonnie@thekanelawfirm.com
E-mail: skane@thekanelawfirm.com

Attorneys for KAREN GOWIN, Creditor, and
Many Wildfire Victim Creditors

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No: 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 (Lead Case) |
| **And** | (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | **JOINDER BY KAREN GOWINS, CREDITOR, AND MANY FIRE VICTIM CREDITORS TO WILLIAM B. ABRAMS MOTION FOR RECONSIDERATION** |
| **Debtors.** | |
| Affects both Debtors | |
| *All papers should be filed in the Lead Case No. 19-3008 (DM)* | |

Karen Gowins, Creditor and Many Wildfire Victim Creditors hereby join in the "William B. Abrams Motion For Reconsideration and Relief From the Orders Pursuant to U.S.C. section 363(b) and 105(1) and Bankruptcy Rule 9024 Approving the Parties' Joint Stipulation Regarding The Registration Rights Agreement and Related Agreements of the Fire Victim Trust," Dkt 7974, filed on June 16, 2020.

The Registration Rights Agreement ("RRA") is one of the most important documents in this bankruptcy case. It governs all of the circumstances surrounding the sale of stock by the Fire Victims Trust.

The value of the stock has been one of the major issues in this bankruptcy. One part of that issue is that the value has decreased since the RSA was entered into, and there has been evidence presented to this Court on that issue. Another major concern is whether the stock when issued will decrease dramatically if other parties were allowed to sell before the Fire Victims Trust.

> "And this Court should not confirm a plan where that risk is clearly and avoidably increased by the refusal of the proponents to guarantee in a publicly disclosed, unambiguous writing not to disadvantage the fire victims in the ability to sell stock. . .
> . . .
> This Court betrays the individual fire victims by approving and confirming a plan which permits the debtor to carry out stock sales by its financial backers, institutional investors, and backstop parties before the victims or which delays the victims' ability to liquidate their stock at optimal value when the trust actually needs the money." Michael Kelly, Transcript 6-5-20, 42: 16-21.

The Fire Victims were the only class of creditors required to take one-half of their compensation in stock. Yet, although the Restructuring Settlement Agreement ("RSA") between the Debtors and the Official Committee of Tort Claimants ("TCC") was entered into on December 6, 2019, the RRA, a critical component of the RSA was not negotiated. Counsel for the TCC in oral argument regarding confirmation stated on June 5, that the negotiations were still ongoing. (Transcript 6-5-20, 160:11-16). The Court appeared somewhat concerned that he was being approached on this issue because the parties had not reached resolution, and sent the Debtors, (Transcript 6-5-20, 56:10-22) the TCC and the Fire Victim Trustee back to mediation on the RRA. It was extremely disconcerting as the RRA had been cloaked in secrecy due to the mediation, which lasted over six months with no progress in resolving. It was hidden from the Court and from the Fire Victim Creditors.

Finally, on June 12, 2020, "The Parties' Joint Stipulation Regarding the Registration Rights Agreement and Related Agreements of the Fire Victims Trust" was filed with the Court as

Docket Number 7913, attaching the RRA. It was filed at 6:10 A.M. At 11:55 A.M. the Court entered an order approving the RRA, less than six hours after the RRA had been filed as part of the Joint Stipulation. Dkt. 7913.

It is difficult to understand why the Court did not provide notice and opportunity to be heard on one of the most important documents in the case to over 80,000 Wildfire Victim claimants before entering the Order approving the RRA.

"Notice is the cornerstone underpinning Bankruptcy Code procedure." *Western Auto Supply Co. v. Savage Arms (In re Savage Indus.)* 43 F.3rd 714, 720 (1st Cir. 1994). Parties in interest must be given adequate notice and opportunity to be heard *before* their interests may be adversely affected. *Id.* In discussing the fundamental notions of procedural due process, the *Western Auto* court stated, "The right to be heard 'has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Id* at 721, quoting *Mullane v. Central Hanover Bank and Trust Co.* 339 U.S. 306, 314 (1950).

In *Western Auto Supply* the Court held that the term "parties in interest" included "not only entities holding claims against the debtor, but any entity whose pecuniary interests might be directly and adversely affected by the proposed action," *Id.* at 720, citing *Yadkin Valley Bank &*

/ / /

/ /

/ /

/ /

/ /

//

3

JOINDER BY KAREN GOWINS, CREDITOR, AND MANY FIRE VICTIM

Case: 19-30088    Doc# 8046    Filed: 06/19/20    Entered: 06/19/20 20:03:50    Page 3 of 4

*Trust Co. v. McGee (In re Hutchinson)* 5 F.3d. 750, 756.  The requirement for due process is broad.  Here, the Fire Victim claimants <u>are creditors in this bankruptcy, whose payment would depend to a great extent on the RRA.</u>  Yet, the joint stipulation was acted upon by the Court with notice of only a few hours and no opportunity to be heard.  There was no due process for those whose interests will be affected.

Dated: June 19, 2020.                      Respectfully submitted,

                                                  THE KANE LAW FIRM

                                                /s/ Bonnie E. Kane
                                                Bonnie E. Kane
                                                Attorneys for KAREN GOWINS, Creditor, and
                                                Many Wildfire Victim Creditors