1           UNITED STATES BANKRUPTCY COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3                     -oOo-

4   In Re:                      ) Case No. 19-30088-DM
                                ) Chapter 11
5   PG&E CORPORATION AND PACIFIC )
    GAS AND ELECTRIC COMPANY     ) San Francisco, California
6                                ) Friday, June 19, 2020
                    Debtors.     ) 12:00 PM
7   _____ )
                                  HEARING ON FORM OF ORDER
8                                 CONFIRMING PLAN

9              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE DENNIS MONTALI
10             UNITED STATES BANKRUPTCY JUDGE

11  APPEARANCES (Via Zoom):
    For the Debtors:            STEPHEN KAROTKIN, ESQ.
12                              Weil, Gotshal & Manges LLP
                                767 Fifth Avenue
13                              New York, NY 10153
                                (212)310-8000
14
    For South San Joaquin       PAUL R. GLASSMAN, ESQ.
15  Irrigation District:        Stradling Yocca Carlson
                                & Rauth, P.C.
16                              10100 Wilshire Boulevard
                                4th Floor
17                              Santa Monica, CA 90401
                                (424)214-7021
18
    For Fire Victim Trustee:    DAVID J. MOLTON, ESQ.
19                              Brown Rudnick LLP
                                7 Times Square
20                              New York, NY 10036
                                (212)209-4800
21
    For Public Employees        MICHAEL S. ETKIN, ESQ.
22  Retirement Association of    Lowenstein Sandler LLP
    New Mexico:                 One Lowenstein Drive
23                              Roseland, NJ 07068
                                (973)597-2500
24

25

| | | |
|---|---|---|
| 1 | For PG&E Shareholders: | JAMES O. JOHNSTON, ESQ.<br>Jones Day |
| 2 | | 555 South Flower Street<br>50th Floor |
| 3 | | Los Angeles, CA 90071<br>(213)489-3939 |
| 4 | | |
| 5 | For Official Committee of<br>Unsecured Creditors: | GREGORY A. BRAY, ESQ.<br>Milbank LLP |
| 6 | | 2029 Century Park East<br>33rd Floor |
| 7 | | Los Angeles, CA 90067<br>(424)386-4000 |
| 8 | For California State<br>Agencies: | PAUL J. PASCUZZI, ESQ.<br>Felderstein Fitzgerald Willoughby |
| 9 | | Pascuzzi & Rios LLP<br>500 Capitol Mall |
| 10 | | Suite #2250<br>Sacramento, CA 95814 |
| 11 | | (916)329-7400 |
| 12 | For the United States of<br>America: | MATTHEW J. TROY, ESQ.<br>United States Department of |
| 13 | | Justice - Civil Division<br>P.O. Box 875 Ben Franklin Station |
| 14 | | Washington, DC 20044<br>(202)305-2419 |
| 15 | | |
| 16 | Also Present: | Debra Grassgreen<br>Individual Fire Claimant |
| 17 | Court Recorder: | LORENA PARADA/ANKEY THOMAS<br>United States Bankruptcy |
| 18 | | Court<br>450 Golden Gate Avenue |
| 19 | | San Francisco, CA 94102 |
| 20 | | |
| 21 | Transcriber: | LINDA FERRARA<br>eScribers, LLC<br>7227 North 16th Street |
| 22 | | Suite #207<br>Phoenix, AZ 85020 |
| 23 | | (973)406-2250 |
| 24 | Proceedings recorded by electronic sound recording;<br>transcript provided by transcription service. | |
| 25 | | |

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

-oOo-

1

2

3    (Call to order of the Court.)

4        THE COURT:  Good morning -- or good afternoon.

5        THE CLERK:  Good morning -- good afternoon.  This is

6    the Bankruptcy Court for the Northern District of California.

7    Court is now in session.  The Honorable Dennis Montali

8    presiding, Matter of PG&E Corporation.

9        THE COURT:  I guess we're bringing Mr. Karotkin in

10    first, and anyone else asked to come in at this point?

11        THE CLERK:  Not at the moment.

12        THE COURT:  All right.

13        THE CLERK:  I'm bringing Mr. Karotkin in, Your Honor.

14        MR. KAROTKIN:  Good afternoon.

15        THE COURT:  Good afternoon, Mr. Karotkin.

16        MR. KAROTKIN:  How are you, Your Honor?

17        THE COURT:  I'm ready to roll.

18        MR. KAROTKIN:  Good, good.

19        THE COURT:  All right.  I need a name and appearance

20    from you, even though I know you who you are.

21        MR. KAROTKIN:  I'm sorry, sir.  Stephen Karotkin,

22    Weil, Gotshal & Manges for the debtors.  Thank you.

23        THE COURT:  So you've got everything solved for me?

24        MR. KAROTKIN:  You've put a huge burden on me over the

25    last two weeks, and I addressed with my colleagues and other

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1    plan proponents, and the TCC, almost everything you asked us to

2    address.  Unfortunately, I couldn't accommodate you on the last

3    two items.

4         THE COURT:  Well, if we're only down to two, that's

5    okay.  I've got about four items, so let's see.  Let's compare

6    lists.  I've got a very discrete matter that needs to be

7    resolved, or maybe it's been resolved involving the San Joaquin

8    Irrigation District, and then -- and then we have the one issue

9    on the securities litigation, a couple of issues on the

10   creditors' committee, and I've lost track of where we are on

11   the, what's called issue number 2 in the -- between the trust

12   and some victims.  So that's what I have on my list.

13        MR. KAROTKIN:  Okay.

14        THE COURT:  What do you have?

15        MR. KAROTKIN:  Let me give you my list.  We have the,

16   what I'll call the PERA litigation that we can talk about, and

17   I know Mr. Johnston and Mr. Etkin will want to address that.  I

18   think that is largely resolved.  There were some pleadings

19   filed over the last twenty-four hours with respect to that.

20        THE COURT:  Right.

21        MR. KAROTKIN:  And I'm sure you've --

22        THE COURT:  I'm aware of that.

23        MR. KAROTKIN:  There is the San Joaquin issue that was

24   raised yesterday, I believe, for the first time.  As far as I'm

25   concerned, it was raised yesterday for the first time.  I

PG&E Corp. and Pacific Gas and Electric Company

1  thought we had disposed of that two weeks ago.

2       There are the two issues with the creditors'

3  committee.  I'm pleased to say that the issue from last

4  Thursday, July 11th, on the trust agreement, has been resolved.

5  And in fact, the trust documents, meaning the -- excuse me, the

6  Fire Victim's Trust agreement, and the fire victim claims

7  resolution procedures have been finalized among all of the

8  parties, and it is our intention later today to file those

9  documents with an updated plan supplement in final form.  So

10  that's another one we took away from you, sir.

11       THE COURT:  Does the --

12       MR. KAROTKIN:  That's another one for you.

13       THE COURT:  -- does the order confirming have to be

14  conformed to something on the trust resolution, or can they

15  stand alone in terms of matters?

16       MR. KAROTKIN:  They can stand alone in the plan

17  supplement, I believe.  I mean, we do have -- we have filed a

18  new proposed order which we have modified to incorporate that

19  you -- your memorandum and decision the other day, so we think

20  that that proposed order works with what you've already done in

21  terms of the findings of fact.

22       So I think -- oh, Mr. Pascuzzi and Mr. Troy, I

23  believe, have an issue with the time within which they have to

24  give us the information on cure amounts, which --

25       THE COURT:  Okay.

PG&E Corp. and Pacific Gas and Electric Company

1          MR. KAROTKIN:  So I think that's it.

2          THE COURT:  Why don't you tell me, you believe you

3   have a resolution of the San Joaquin Irrigation District?

4          MR. KAROTKIN:  I frankly don't understand what they're

5   asking for.

6          THE COURT:  Okay.

7          MR. KAROTKIN:  I think we made it clear in 10.13, I

8   think it's 10.13, that there's a carve-out for eminent domain,

9   and I think that's what they raised.  We addressed that.  No

10  one said anything, and now all of the sudden they are asking

11  us, as I understand it, to specifically address their piece of

12  litigation, and I just don't think that's necessary, Your

13  Honor.  The --

14          THE COURT:  Okay, let me stop you.  Let's bring Mr.

15  Glassman in.  Mr. Glassman wanted to be heard.  This is a

16  discrete question.  I think we can resolve it quickly, and

17  we'll hear from him.

18          Good afternoon, Mr. Glassman.  When you come on --

19  when you unmute, and then state your appearance for the record.

20  All right?

21          MR. GLASSMAN:  Good afternoon, Your Honor.  Paul

22  Glassman of Stradling Yocca Carlson & Rauth for the South San

23  Joaquin Irrigation District.

24          THE COURT:  Mr. Glassman, I want to, not apologize,

25  but I want to tell you I wasn't trying to ignore you when I

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1    issued my decision.  I thought it was a resolved matter, and so

2    it was just a done deal, and then when you filed your request

3    for clarification, maybe I hurt your feelings, and you didn't

4    think you were -- thought maybe you were unloved.

5         But I thought it was resolved in the paragraph 10.13,

6    and I have to agree with Mr. Karotkin, I think we end up --

7    this thing looks like a Christmas tree constructed by a

8    committee if we add onto the order confirming the plan,

9    specific treatment of various individual parties' disputes.  So

10   it seems to me substantively your client's a hundred percent

11   protected.  I'm not opposed to approving a stipulated order

12   that sort of lives by itself that memorializes the specifics of

13   the litigation you've got going on between the debtors and your

14   clients, but I don't think it belongs in the order confirming

15   the plan.

16        MR. GLASSMAN:  Well, Your Honor, we -- in speaking on

17   the eminent domain issue, of course, we have actual live

18   controversy regarding the issue, and we were speaking on our

19   behalf, and also on behalf of others who, taking the lead, who

20   have concerns on eminent domain as well.

21        So in the resolution of the colloquies, and the Court

22   may recall one of the colloquies we had where we indicated that

23   we would review the language, and that we were going to ask for

24   a specific finding which does nothing more than memorialize

25   what the debtor has already -- has said in the papers, and the

PG&E Corp. and Pacific Gas and Electric Company

1    purpose is just to make it clear for purposes of our actual

2    live litigation, so no court, looking at it, has to kind of

3    figure out whether it's within the scope, and it just adds --

4    we're just talking about adding a few words in the confirmation

5    order, just so it says including this specific action.

6        THE COURT:  Yeah, but listen Mr. Glassman, that's my

7    point.  You certainly ought to have a clear path to resolution

8    in front of a superior court judge down in your neck of the

9    woods who doesn't know about bankruptcy.  That's why a

10   stipulated separate order that lays out in specific is

11   perfectly fine, but putting it into a plan, which is dozens and

12   dozens and dozens of pages long, doesn't solve the problem.  It

13   complicates the problem because I've got news for you,

14   everybody else will want a separate provision in the order, and

15   I'm not willing to do that, and I think Mr. Karotkin's point is

16   well taken.

17       So if the goal here is to make sure the Irrigation

18   District has nobody -- no bankruptcy issues standing in the

19   way, I'll solve the problem for you with a standalone order.

20       MR. GLASSMAN:  That would be fine, Your Honor.

21       THE COURT:  Mr. Karotkin, you don't care.  You're not

22   going to complain about that, right?

23       MR. KAROTKIN:  We're happy to consider a proposed

24   stipulation, and assuming it is what it is, then it should be

25   fine, but then --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1      THE COURT:  Okay, but what it is should be almost the

2  verbatim language on page 3 of Mr. Glassman's latest filing.

3  It's about an eight-line statement that he wants in the order,

4  and I'll say let's put it in a stipulated side order.

5      MR. KAROTKIN:  Your Honor, as I said, we'll review it.

6  I don't -- I haven't consulted with the client if that's the

7  precise action that we're talking about.

8      THE COURT:  Okay.

9      MR. KAROTKIN:  And if it is, that's fine.

10      MR. GLASSMAN:  Well, Your Honor --

11      MR. KAROTKIN:  But we need to address it today.

12      MR. GLASSMAN:  It --

13      MR. KAROTKIN:  First of all, let me finish.  Mr.

14  Glassman had an opportunity two weeks ago to tell Your Honor

15  that he wanted specific language in the order addressing his

16  particular lawsuit.  I have absolutely no recollection of that,

17  but what I do have a recollection of is that this language was

18  agreed to.

19      THE COURT:  Okay, but Mr. Karotkin, I'm trying to put

20  this baby to bed, just like you are today, and no one needs to

21  apologize for not remembering everything.  I'm not going to

22  apologize for not remembering thousands of things that have

23  come in front of me in the last two weeks, and you need

24  neither, but neither does Mr. Glassman.

25      So look, the language that -- to my way of thinking,

PG&E Corp. and Pacific Gas and Electric Company

1    1015, I believe it is, in the plan and the language in the

2    proposed order is fine.  A separate stipulation, Mr. Glassman,

3    if you can follow the language in the document that I --

4            MR. GLASSMAN:  I will follow --

5            THE COURT:  I think it'll probably work.  If Mr.

6    Karotkin and you want to tweak it, that's fine too.

7            MR. GLASSMAN:  Okay, but what I'm hearing, and this is

8    the problem why I'm asking, this is exact -- this colloquy

9    demonstrates exactly why I'm asking for the language because

10   after all of the back and forth in the pleadings where it

11   was -- we believed it was clear that our action was covered,

12   and such, and it couldn't have been more clearer, now I hear

13   Mr. Karotkin saying we're not so such.  So that's exactly the

14   statement --

15           MR. KAROTKIN:  That's not what I'm saying.

16           THE COURT:  No, no, that's not what he's saying.

17           MR. KAROTKIN:  That's not what I'm saying.

18           THE COURT:  That's not what he's saying, Mr. Glassman.

19           MR. KAROTKIN:  Please.

20           THE COURT:  That's not fair.  It's not -- he's not

21   saying that.  He saying he doesn't remember the specifics of

22   the deal, but I remember the specifics of 10.13, that quite

23   unequivocally carves out eminent domain.  So --

24           MR. KAROTKIN:  And all I'm saying, Your Honor, is --

25           THE COURT:  Yeah.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1          MR. KAROTKIN:  -- let me have an opportunity to look

2     at the exact action he's talking about, speak to my client, and

3     if it's within an eminent domain proceeding, it's not going to

4     be an issue.

5          THE COURT:  Yes.

6          MR. KAROTKIN:  But on the fly, I'm entitled to look at

7     that.

8          THE COURT:  Okay.  Mr. Karotkin, you don't have to say

9     it again.  I'm in your --

10          MR. KAROTKIN:  Yeah.

11          THE COURT:  -- camp on this one.

12          MR. KAROTKIN:  Okay.

13          THE COURT:  Mr. Glassman, I'm looking at 10.13, if I

14     were a superior court judge in San Joaquin County, I think I

15     could understand that I'm free to go forward without regard to

16     the bankruptcy to decide on an eminent domain action, even

17     though it doesn't mention it in the plan.  But in a separate

18     order, it can name it by case number, and initials of the

19     judge, if you like.

20          MR. GLASSMAN:  Yeah.

21          THE COURT:  Okay?

22          MR. GLASSMAN:  Thank you, Your Honor.  I just want to

23     say one more thing.  In addition to that language, there was

24     also a specific indication in the reply papers that the eminent

25     domain action, the actions -- the eminent domain action, our

PG&E Corp. and Pacific Gas and Electric Company

1    action, and the LAFCo action, in their specific reply to our

2    papers was not a claim that would be affected by discharge.  So

3    I really don't understand what the controversy is --

4              THE COURT:  I know, but --

5              MR. GLASSMAN:  -- but we'll submit that.

6              THE COURT:  I'm satisfied.  I think your client is one

7    hundred percent protected by 10.13 and the clarification that

8    I'll grant it in an order, so I'm really not --

9              MR. GLASSMAN:  Thank you, Your Honor.

10             THE COURT:  Okay.

11             MR. GLASSMAN:  That resolves it.

12             THE COURT:  All right, thank you.  Thank you, Mr.

13   Glassman.  I'll look for you to exchange with Mr. Karotkin on

14   a -- he's got his hands full -- on a separate order.  Okay.

15             MR. GLASSMAN:  Thank you, Your Honor.

16             THE COURT:  Thank you.

17             Mr. Karotkin, can you go back and clarify something?

18   Maybe I just didn't hear you exactly right.  There's been a

19   final resolution of all the issues that were between the

20   trust -- the trustee, and the, what we'll call the objectors,

21   that's been resolved?

22             MR. KAROTKIN:  Yes, and --

23             THE COURT:  Okay.

24             MR. KAROTKIN:  -- and the debtors and the plan

25   proponents, as well.  All of those documents -- those two

PG&E Corp. and Pacific Gas and Electric Company

1    agreements -- documents have been agreed to by all the parties.

2         THE COURT:  Okay, now but Ms. Grassgreen, who also had

3    an issue has raised her hand.  So --

4         MR. KAROTKIN:  That's a different issue.

5         THE COURT:  That's a different issue?  Okay.

6         MR. KAROTKIN:  That's a different issue.

7         THE COURT:  Ms. Grassgreen, we'll come back to you in

8    a little while.  Well, I see -- yeah, okay.

9         Mr. Molton has raised his hand.  Mr. Molton, since Mr.

10   Karotkin was answering my question about that, let me have you

11   come in because I considered -- this is a done deal also, if

12   what he says is consistent with what you can confirm, Mr.

13   Molton, and if Ms. Grassgreen, if she needs to be treated

14   separately, I think she made it clear before, it doesn't have

15   to hold up confirmation.

16        So Mr. Molton, good morning or good afternoon.  Please

17   state your appearance.

18        MR. MOLTON:  Good afternoon, Your Honor.

19        And I know Ms. Grassgreen wanted to confirm this as

20   well when we heard Mr. Karotkin make the point.  Yeah, there's

21   one issue unresolved but it doesn't affect confirmation, it

22   doesn't affect the finality of the agreements in substantial

23   part, as Mr. Karotkin mentioned, with all the other objectors,

24   and that's an issue that Your Honor heard about earlier this

25   week from Ms. Grassgreen, and also Mr. Carlson.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1        And Your Honor had taken Ms. Grassgreen's point that

2   it is not a confirmation issue, can be dealt with in a discrete

3   manner next week, and I think Your Honor even made that point

4   that Your Honor has a lot on his plate this week, and would

5   hear it next week.  And we propose -- we've talked with Ms.

6   Grassgreen -- Ms. Greengrass (sic), I'm sorry -- and Mr.

7   Carlson --

8        THE COURT:  Grassgreen -- no, Grassgreen.

9        MR. MOLTON:  Yes.  I get it mixed up, I'm sorry to --

10       THE COURT:  And she's -- I'm going to bring her into

11  the room.  You can look to the --

12       MR. MOLTON:  I'm sorry for that.

13       THE COURT:  Yeah.

14       MR. MOLTON:  But she -- I call her Debra; that

15  works --

16       THE COURT:  No, you can't call her Debra on duty here.

17       MR. MOLTON:  I understand, Judge.  In any event, so

18  we've been in discussions with her, Judge.  We hope to talk

19  about her issues.  We're going to be working to discuss them

20  with her, and hopefully not have them be in a position where we

21  need to come and find you.

22       THE COURT:  Okay.  Again, let me hold you for a

23  minute.  Ms. Grassgreen has raised her hand.  Ms. Grassgreen,

24  if you want to be heard, we'll bring you in now, but if -- you

25  don't need to come in just to confirm what you just heard, so

PG&E Corp. and Pacific Gas and Electric Company

1    I'll leave it to you.  If your hand is up, we'll bring you in.

2          But Mr. Molton, while Ms. Grassgreen is either coming

3    in or not coming in, can you confirm that the so-called "issue

4    number 2" has been resolved then and --

5          MR. MOLTON:  Yes, Your Honor.

6          THE COURT:  Okay, great.  That's good news.  And

7    again, do you understand, Mr. Karotkin, that that's something

8    that -- my commitment to you was to ideally sign an order

9    confirming the plan today, so that doesn't -- that can wait; is

10   that correct, Mr. Karotkin?  You've got to unmute.  There you

11   go.

12         MR. KAROTKIN:  Yeah, I'm sorry.  I'm not sure I

13   understand.  What can wait?

14         THE COURT:  The resolution, or what we would call the

15   trust issue number 2 and 1, I mean, the issues that were --

16   excuse me, that Mr. MacConaghy, and Mr. Molton were working on.

17         MR. KAROTKIN:  Those have been resolved.

18         THE COURT:  I know.  Will they be incorporated into

19   the OCP today?

20         MR. KAROTKIN:  Yeah, to the extent that they're

21   required to be incorporated, they are.

22         THE COURT:  Okay.  Ms. Grassgreen, good afternoon.

23         MS. GRASSGREEN:  Good afternoon, Your Honor.

24         THE COURT:  Just state your appearance for the record

25   please.

PG&E Corp. and Pacific Gas and Electric Company

1          MS. GRASSGREEN:  Debra Grassgreen on my individual

2     behalf and on behalf of my family, husband and my son.  Your

3     Honor can you hear me okay?

4          THE COURT:  Yes.

5          MS. GRASSGREEN:  Okay.

6          THE COURT:  Yes.

7          MS. GRASSGREEN:  Your Honor, I just -- I think what we

8     had agreed with the TCC and counsel for the trustee is that we

9     would submit a joint statement next week once the final

10    documents landed.  We didn't -- the documents were a moving

11    target, and we would just ask Your Honor today for some time

12    next week, so that you could resolve it at your convenience

13    next week.

14          So I thought it just made sense while we were here,

15    all of us, to try to work out the scheduling matter.  If you'd

16    prefer that we do it offline with your clerk, we can do that as

17    well.

18          THE COURT:  We have a PG&E calendar next Wednesday,

19    unless -- and if everything goes away, it's there.  We also

20    have a PG&E calendar on the 30th.  So those are already

21    designated days.  I can accommodate you on either of those

22    days, and if necessary, I'll do it separately.  I may not treat

23    you to a Zoom treatment if it's a very discrete question, but

24    those dates are both available, and you can just let my

25    courtroom deputy know if you want to get onto have those

PG&E Corp. and Pacific Gas and Electric Company

1  considered.

2          MS. GRASSGREEN:  Thank you very much, Your Honor.

3          THE COURT:  All right.  So, Ms. --

4          MR. MOLTON:  Thank you, Judge.

5          THE COURT:  All right, thank you.  And Mr. Molton, for

6  you, and if Mr. MacConaghy and others are hearing, I want to --

7  and all the lawyers who are representing the various fire

8  victims, the institutional fire victims, I want to congratulate

9  you for getting that resolved.  I appreciate that happening.

10  Okay.

11          MR. MOLTON:  Thank you, Judge.  There was a lot of

12  hard work that went on the last few days to get there.

13          THE COURT:  That's why you get the big bucks, right?

14  Okay.  I'm going to take both of you out of the room now.

15          Mr. Karotkin, I'm willing to go to the securities

16  question now unless you want to deal with the committee or OCC

17  issue, it's up to you.

18          MR. KAROTKIN:  Why don't you go to the committee's

19  issues, if you don't mind?

20          THE COURT:  Okay.  Ms. Parada, please bring in Mr.

21  Etkin and Mr. Johnson, I guess.

22          Good afternoon, Mr. Etkin.

23          MR. ETKIN:  Good afternoon, Your Honor.

24          THE COURT:  State your appearance please.  I need your

25  name for the record.

PG&E Corp. and Pacific Gas and Electric Company

1          MR. ETKIN:  Of course.  I'm sorry, Your Honor.

2   Michael Etkin, Lowenstein Sandler for the Public Employees

3   Retirement Association of New Mexico.

4          THE COURT:  Good afternoon.

5          Mr. Johnston, are you with us?

6          MR. JOHNSTON:  Good afternoon, Your Honor.

7          Jim Johnston of Jones Day on behalf of the shareholder

8   proponents.

9          THE COURT:  Well, you gentlemen fooled me.  I turned

10  you loose with our mystery, surprise super mediator, and you

11  settled one thing, but not the thing I thought you'd settle,

12  and didn't settle the other thing, so -- but congratulations to

13  you for getting that resolved.

14         Do I understand from your filings, you're tossing up

15  the open issue for me to decide, right?

16         MR. ETKIN:  That's correct, Your Honor.  We agreed

17  that with respect to the one discrete issue that remains, that

18  we would submit it to the Court for a decision based upon the

19  papers that are already before the Court --

20         THE COURT:  Okay.

21         MR. ETKIN:  -- and the prior arguments.

22         THE COURT:  Mr. Johnston, do you concur with that?

23         MR. JOHNSTON:  I concur with that, Your Honor.

24         THE COURT:  Okay.  Those of you who know me know I

25  love hypotheticals, so I'm going to tell you my ruling, and

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1   when you tell me how to answer the following hypothetical.  And

2   let's keep in mind something that Mr. Karotkin likes to remind

3   me, that 1124 isn't cited in Section 365, but I'm a fan of

4   1124, and I know the distinction, and you do, between how you

5   figure out a claim on the one hand and how you treat a class of

6   claims on the other.  And what's critical for my thinking here

7   is, as I said in my memorandum and having been said in the

8   prior discussions, that -- or maybe I didn't say it in the

9   memorandum and decision because you convinced me to take it

10  out, but one of the open issues is how do we evaluate the claim

11  of any particular claimant before we know the way the

12  treatment?

13          So here we are; I'm going to do it in a hypothetical.

14  I'm going to assume that one fraud claimant under the

15  securities laws has gotten to a point where his or her claim

16  has been liquidated, and I'm fixing it at 1,000 dollars.  And

17  let's assume as a result of the formula, that you've agreed to

18  the issue that you mediated -- and again I'm happy that you

19  had; I had my own resolution of it, but you've taken that off

20  the table, but let's assume as a result of that formula,

21  that -- and without regard to any insurance, that claimant

22  would get a hundred shares of the company.  And again, you can

23  quarrel with my math, it's hypothetical, but suddenly a 1,000-

24  dollar claim becomes 100 shares.  And so the question is if the

25  plan becomes effective, and the stock is issued, and that

PG&E Corp. and Pacific Gas and Electric Company

1    claimant is given his or her hundred shares, the claim has been

2    satisfied, end of story.

3           And so the question is -- and under Ivanhoe, that was

4    all that claim was determined to be worth, and it's been paid

5    in full, and if it were not a 510(b) conversion under this

6    plan, the claimant would get 1,000 dollars, but under this

7    treatment for 510(b), the claimant would get 100 shares --

8    excuse me, 100 shares.

9           So the question then is, well, what do we do -- and to

10   me, that's faithful to Ivanhoe.  Ivanhoe says you've got to get

11   the guy paid in full.  Now suppose before there's a conversion

12   of the stock, the insurers -- the insurance company pays the

13   claimant 200 dollars, and the claimant accepts 200 dollars.

14   Now under Ivanhoe, you still have to treat the claim as 1,000

15   but you can't recover more than 1,000.  So in fact, that

16   claimant, although still having a claim for 1,000 dollars, is

17   only entitled to 800 dollars, or eighty shares in my

18   calculation.

19          So if our hypothetical claimant's claim was fixed at

20   1,000, and then the conversion said that gets you 100 shares,

21   sir, and he got no money, he'd get 100 shares.  If he already

22   got 200 dollars, he'd get 800 shares or excuse me, 80 shares,

23   and it's that simple.

24          And so -- and the reason why Ivanhoe in theory works

25   is because Ivanhoe is a principle of law that says tortfeasors

PG&E Corp. and Pacific Gas and Electric Company

1    don't get off the hook until their victims are paid in full.

2    But Ivanhoe didn't deal with a solvent company converting money

3    to shares.  And so if this plan becomes effective and the

4    claimant gets his hundred shares, there's nothing left to pay

5    him, and if he got paid some money before that, he can't get

6    the full payment of the money because he got -- excuse me, of

7    the shares, because he got the money, it's that simple.

8         So I'm going to tell you that this convinces me that

9    you have to go back in time -- well, excuse me, you have to get

10   to a point where each claimants' claim is liquidated, and if

11   that claimant got any money from an insurance company along the

12   way, then it takes a lesser amount of shares having converted

13   from dollars to pay him in full.  More likely than not, it

14   won't happen, and it will become a nonissue because my guess is

15   that, unless there's some insurance payments earlier on the --

16   the conversion formula will be in place, and all you have to do

17   is to determine what an individual claimant's claim is worth.

18        And so that convinces to me that the company, the

19   shareholder -- excuse me, the proponents, have the better

20   argument here, and you don't reduce the amount a claimant gets

21   in an artificial way if you know that it can never get paid

22   more than he's entitled to.

23        So I said it was a hypothetical, and it's really more

24   my thinking, but that's my hypothetical.  So Mr. Etkin, if my

25   hypothetical claimant had a 1,000-dollar claim, and the

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1    conversion was ten shares -- excuse me, a hundred shares, I

2    don't know why you ever get to any other result, and he gets to

3    keep whatever money comes out first.  After that, he's paid in

4    full in shares.

5         MR. ETKIN:  Your Honor, I -- apologies in advance, but

6    I think that that assumes that by virtue of the conversion

7    formula that we've agreed to, that an individual claimant in

8    class 10A-II would be paid in full in connection with whatever

9    they're allowed claim is, but to convert --

10        THE COURT:  But that's what they're entitled to.  In

11   other words, that's what they're entitled to.  If they were

12   getting dollars, they would be paid in dollars in full, and --

13        MR. ETKIN:  But the problem --

14        THE COURT:  -- they would get, they'd be entitled to

15   whatever the adjudication of their particular claim determines.

16        MR. ETKIN:  It's not just a function of the amount of

17   their claim; it's a function of what the distribution under the

18   plan produces in terms of satisfaction of that claim.

19        THE COURT:  No, I don't agree with you.

20        MR. ETKIN:  So your --

21        THE COURT:  See, the reasons I don't agree with you --

22        MR. ETKIN:  Your hypothetical -- I'm sorry.

23        THE COURT:  -- because you have to determine how much

24   the claim's claim is, and then you just plug in the formula

25   and -- as of the -- it has to be as of the effective date

PG&E Corp. and Pacific Gas and Electric Company

1    conversion formula, the diluted stock.

2            MR. ETKIN:  That's right.  That's right.  So at the

3    end of the day, if a claimant has a claim for 1,000 dollars,

4    once you apply the conversion formula, that claim won't be paid

5    1,000 dollars' worth of stock, as things currently stand with

6    respect to the formula that's been agreed upon.  And that's by

7    virtue of the fact that these are subordinated claims, and not

8    entitled and required to be paid in full; that's why they're

9    impaired under the plan as opposed to unimpaired classes.

10           Our position, Your Honor, is that we agree with the

11   Court, and consistent with Ivanhoe, that a particular claimant

12   can't receive more than a hundred percent of the amount of

13   their claim.  That's clearly what Ivanhoe provides.  But --

14           THE COURT:  Okay, but Mr. Etkin, what would happen if

15   one of those claimants settled through an insurance company

16   today and he got paid 200 dollars?  What do we do with his

17   claim?

18           MR. ETKIN:  Well, it's --

19           THE COURT:  Under Ivanhoe --

20           MR. ETKIN:  It's the settle --

21           THE COURT:  Under Ivanhoe, we don't reduce his claim,

22   but under Ivanhoe, we don't pay him more than a hundred cents

23   on the dollar either.

24           MR. ETKIN:  Well, that's correct.  And if there was a

25   settlement, Your Honor, with respect to -- let's take the

PG&E Corp. and Pacific Gas and Electric Company

1  directors and officers, for example, based upon the claims, not

2  against the company but against the particular directors and

3  officers, then that amount of money would have to be applied

4  once the claim against the company was liquidated, as you put

5  it, to determine whether the settlement amount, plus whatever

6  is received from the company, exceeds a hundred percent of the

7  allowed claim which was determined in connection with the

8  bankruptcy case because there was no opportunity, in the face

9  of a settlement, to determine what the amount of the claim is,

10 for purposes of the actual damages or loss, because a

11 settlement is exactly that, just a settlement.

12         So you don't ignore the fact that there's been

13 insurance paid, but it doesn't come off the top.  It's only

14 there to determine that, at the end of the day, when you factor

15 in that insurance payment, that the claimant, in connection

16 with its liquidated claim against the company, does not get in

17 excess of what that claim comes out to be from a loss or

18 damages or allowance perspective.

19         So I almost think, Your Honor, that we're saying the

20 same thing, in terms of having to take the insurance into

21 account, but not for purposes of just lopping it off -- let me

22 give --

23         THE COURT:  But Mr. Etkin -- Mr. Etkin --

24         MR. ETKIN:  Let me give you the example you --

25         THE COURT:  Mr. Etkin, what would happen, under

PG&E Corp. and Pacific Gas and Electric Company

1  Ivanhoe, if this was a cash payment, if it wasn't a conversion,

2  and my claimant got 200 dollars?  He'd have a claim for 1,000,

3  but he could only recover 800.

4       MR. ETKIN:  That's right, Your Honor.

5       THE COURT:  He couldn't recover more than 1,000.  So

6  if he accepts 200 dollars from the insurance company, his

7  maximum recovery from the debtor is 800 dollars.  And to me, we

8  don't have the luxury today of knowing what every individual

9  claimant's stock on a conversion fund is worth.  We have to do

10 this in reverse.  And chances are the particular claimant's

11 amount will be liquidated long after the conversion is in place

12 and the real value.  But that's the breaks.

13      This gets back to why this is a treatment of a class

14 problem not a payment of a claim problem.  And if you have a

15 claim out there that somebody suffered a million dollars, then

16 that million-dollar claimant will get a lot more stock.  And if

17 he takes some money from an insurance company along the way,

18 that's his choice.

19      MR. ETKIN:  And he can't recover more than a hundred

20 percent of his claim.

21      THE COURT:  Just putting some more zeros on my

22 hypothetical, my --

23      MR. ETKIN:  But let me -- but let --

24      THE COURT:  -- claimant is owed a million dollars and

25 he gets 200,000 from the insurance company.  He's got --

PG&E Corp. and Pacific Gas and Electric Company

1          MR. ETKIN:  But for example -- let me give you another

2    hypothetical, Your Honor.  Let's say that a claimant -- under

3    the plan proponent's formula, if a claimant got 200 dollars

4    from insurance already, and this of course ignores the fact

5    that at the time the claim is liquidated against the company

6    there may not have been any insurance payment.  We don't know

7    what the insurance payment was before.  So timing becomes

8    important, and that's what we also tried to point out in the

9    pleading we filed early this morning.

10          But if the claimant has gotten 200 dollars' worth of

11   insurance, and let's say they have an allowed claim of 1,000

12   dollars, based upon a determination on the merits as to what

13   the value of that claim should be.

14          THE COURT:  Right.

15          MR. ETKIN:  And let's say, which is the facts in this

16   case, that at the end of the day, that claimant, when you apply

17   the formula, is getting stock that's worth less than 800

18   dollars on a 1,000-dollar claim.

19          THE COURT:  But how can that be?

20          MR. ETKIN:  Well, because the conversion formula, Your

21   Honor -- very easily.

22          THE COURT:  But it --

23          MR. ETKIN:  The conversion formula --

24          THE COURT:  But it's a compromise.  That's why you

25   compromised it.  Mr. Etkin, that's why you compromised it, and

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1  you did the right thing because, if you didn't compromise it

2  and I had gone with Mr. Johnston's theory, you know what the

3  formula would be.  And if I'd gone with your theory, he knows

4  what the formula would be.  You compromised the formula, you

5  compromised the treatment methodology without giving up the

6  right of a particular claim to be stand -- its claim is what it

7  is.

8       MR. ETKIN:  No, we didn't compromise the treatment

9  methodology, Your Honor.  We compromised the formula for

10 converting a dollar claim into a claim for shares.

11      THE COURT:  Well, I think that's a treatment --

12      MR. ETKIN:  Under anyone's formula, Your Honor, at the

13 end of the day, if you're multiplying the claim amount by a

14 particular number, it's going to come out to less than payment

15 in full in terms of the value of the stock.  And the point I'm

16 trying --

17      THE COURT:  I need you -- let's see what Mr. Johnston

18 says.  He might think I'm crazy too.  But --

19      MR. ETKIN:  Well, I don't think you're crazy, Your

20 Honor, by any stretch of the imagination.

21      THE COURT:  Mr. Johnston --

22      MR. ETKIN:  The only thing that I -- I happen to think

23 that we're saying the same thing but coming out at a different

24 place, and the primary reason for that is that the assumption

25 in your hypothetical is that whatever number of shares that a

PG&E Corp. and Pacific Gas and Electric Company

1    particular claimant gets at the end of the day, from a value

2    perspective, will amount to a hundred percent of the claim

3    amount.  And that's just simply not going to happen.  And if

4    that doesn't happen, and if you just assume that that doesn't

5    happen, then taking the insurance off the top is just further

6    diluting the claim if by virtue of the distribution to that

7    claimant through the bankruptcy case, in shares, is not going

8    to pay that claimant in full.

9         THE COURT:  Okay.  Let's see what Mr. Johnston says,

10   because if I've screwed up the formula, I'll withdraw it.

11        But Mr. Johnston?

12        MR. JOHNSTON:  Your Honor, under your hypothetical,

13   you got it exactly right.  The plan formula would deliver

14   eighty shares to your hypothetical claimant.  And so we clearly

15   think that is the appropriate result.  I can go into all of the

16   reasons why but --

17        THE COURT:  Well, Mr. Johnston --

18        MR. JOHNSTON:  -- Your Honor is exactly right.

19        THE COURT:  -- instead of saying it's right, tell me

20   whether the methodology is right.  In other words, if we knew

21   today that a claimant's claim was 1,000 dollars, under a

22   conversion formula that you negotiated, the 1,000 is

23   hypothetical.  It is what it is based upon the different days

24   that you put into your settlement, right?

25        MR. JOHNSTON:  That's correct.

(970) 485-2992 operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1    THE COURT:  You have four different -- you had one

2  date in October of 2017.  Mr. Etkin had one day two weeks after

3  the Camp Fire.  You compromised in, as I read it, four

4  different milestones because the circumstances changed for

5  different investors at different times with different knowledge

6  of the market.

7    MR. JOHNSTON:  That's exactly what we did.

8    THE COURT:  Yeah.  Mr. Etkin, I'm going to stick with

9  my ruling, to the extent it was a ruling.  If you think you and

10  I are saying the same thing, you haven't persuaded me that I

11  should change the result.  So how would you articulate the

12  ruling, if you were in my position, given what you've just

13  said, that we are saying the same thing?

14    MR. ETKIN:  We are saying the same thing, but the plan

15  proponent's definition of insurance deduction doesn't lead to

16  that result.  It --

17    THE COURT:  Well, but I have to tell you, here's what

18  is different.  See, I really didn't think you were going to

19  settle this issue.  I thought you were going to settle the

20  other issue and not leave for me what you left for me.  And so

21  I started to think about it, and I had in my mind and literally

22  had drafted how I was going to figure out what I thought was a

23  fair outcome.  Based upon the Etkin theory, originally it was

24  petition date, and the Johnston theory, initially, and probably

25  still is, October 12th, 2017.

PG&E Corp. and Pacific Gas and Electric Company

1          And I had tentatively come to a conclusion on how I

2   was going to resolve that.  But you folks resolved it, and

3   therefore I'm not going there.  So you left me the way to make

4   it implemented, and this is the way I believe I have to do it

5   because, to me -- I'll tell you what I'm saying.  It's almost

6   that Ivanhoe dealt with dollars for dollars, and 510(b), in my

7   research, said -- I think that Superior case from Texas was the

8   only case that even comes close -- Superior Refinery, or

9   whatever it was.  And that one kicked the can.  It didn't solve

10  the problem; it just said -- the Court said, well, they didn't

11  figure out the solution here, but that's okay, we can still

12  confirm the plan.

13          Here we had to figure out a solution, and you and your

14  clients did the right thing, in my mind, by coming up with a

15  compromise of how you do it based upon the real world, that

16  several times, over the span of October 2017 to November of

17  2018, and the market going from seventy to whatever -- eight or

18  whatever it was.

19          And so I just couldn't take the Ivanhoe formula and

20  apply it knowing that, A, first of all, there maybe never will

21  be insurance payments.  Secondly, if a claimant wants to accept

22  an insurance settlement in some amount, they can do it.  They

23  won't get it in stock; they'll get it in dollars.  And

24  consistent with the concept of Ivanhoe, they can't get

25  overpaid.

(97?) 6-2092  operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1        So anyway, look, Mr. Etkin, I had to decide it one way

2   or the other.  This was my thinking.  I'm going to assume that

3   this can be done in some sort of a stipulate -- if not

4   stipulated at least an adjudicated order.  I don't think

5   it's -- from what you said before, Mr. Etkin, it's not a

6   confirmation issue, per se.  And you made it clear before that

7   you weren't trying to oppose confirmation, so I expect to be

8   able to -- even if you're unhappy with this outcome that the

9   confirmation order can stand without being challenged.

10       But again, Mr. Johnston, how would you like to

11  implement this?

12       MR. JOHNSTON:  Well, Your Honor, we have implemented

13  this by putting in to the amended plan, or the draft amended

14  plan that was filed shortly before the hearing and the draft

15  amended confirmation order which was filed at the same time,

16  the language that we appended to Exhibit A to the pleading we

17  put in yesterday.  So in our mind, the resolution of the

18  objection is contained in that amended language.

19       THE COURT:  Okay.  Well, let me tell you that I think

20  what you filed this morning -- oh, no, I see -- whenever you

21  filed it; things are moving very quickly.  And as I said, I was

22  surprised, I was happy to hear that you had a resolution, but I

23  was surprised that you resolved the thing I didn't expect you

24  to resolve.  So I had to do a little quick thinking to be able

25  to come up with my response here today.  And therefore I'll

PG&E Corp. and Pacific Gas and Electric Company

1    leave it to you to implement it in a way that you think is

2    appropriate.

3            MR. ETKIN:  Well --

4            MR. JOHNSTON:  Thank you, Your Honor.

5            MR. ETKIN:  -- Your Honor, there is -- if I may?

6            THE COURT:  Yes, sir.

7            MR. ETKIN:  There is one other aspect of this that we

8    did raise in what we filed this morning that came up only

9    because of the new language that was drafted by the plan

10   proponents.  And that's the definition of Side A policy, that

11   they've come up with and incorporated into the plan, that we

12   also had a problem with.  And I'll make it very simple, Your

13   Honor.

14           THE COURT:  I wasn't even able to look at what you

15   filed this morning.  I thought I looked at everything that came

16   in from everybody, but I didn't get that one, so --

17           MR. ETKIN:  Well, that's a shame, Your Honor, because

18   it obviously touched upon the issue that we just spent the last

19   twenty or so minutes talking about.

20           But the other issue is the issue of the definition

21   that the plan proponents have provided for Side A policy.  And

22   our position was very simple with respect to that.  Our

23   position was that Side A policy and what it means is set forth

24   specifically in the insurance policy itself.  It can't be

25   redefined through a separate provision in the plan.

PG&E Corp. and Pacific Gas and Electric Company

1    And in fact there's a provision in the plan regarding

2  insurance policies that says -- and it's 8.7 of the plan --

3  that say that those policies have been assumed and the terms of

4  those plans apply, and the terms of those plans are what they

5  are.  And we agree with that.  We agree with the plan language.

6  And we don't agree with any attempt to rejigger that language

7  through a separate definitional section that the plan

8  proponents have come up with for purposes of the plan.

9    THE COURT:  Mr. Etkin, let me correct one-half of what

10  I said.  I was aware that you filed a notice of withdrawal.

11  And when I looked at the notice of withdrawal that you did file

12  at about 5 o'clock this morning -- I wasn't up reading it -- I

13  noticed that there was some language and reference to the

14  language of the policies, and I just set it aside.  I had

15  plenty of other things to do, including another calendar on

16  another matter this morning.

17    So Mr. Johnston, can we not pick this up later?  This

18  doesn't have to be --

19    MR. JOHNSTON:  Well, Your Honor, this is part of the

20  plan.  This goes into the plan formula.  The definition of Side

21  A is an accurate recitation of what the Side A policy says.

22  The PERA responses yesterday or this morning said we should

23  refer to the definition of Side A coverage in the policy.

24  There is no definition of Side A coverage in the policy.  And

25  if you look at what they cited you to, you will see that.  The

PG&E Corp. and Pacific Gas and Electric Company

1  provision of the policy they cited to is the actual operating

2  coverage language for Side A.  So the language we put forward,

3  which they haven't objected to in any substantive way, is what

4  Side A says, and we believe that it's appropriate.

5  THE COURT:  Well, I'm not going to -- look, Mr. Etkin

6  shouldn't be punished for compromising something and then

7  having me, twelve hours later, giving him a bad result on a

8  ruling that I made that he'd offered to submit to me and then

9  say, well, I'm sorry, I haven't had a chance even to look at

10  this.

11  I'm going to run the risk here that I can sign an

12  order confirming the plan as effective and there can be some

13  subsequent agreement of clarification on how these formulas

14  should work, I think.  I mean, I don't want to delay confirming

15  the plan, but I'm not going to run the brush out over Mr.

16  Etkin's client's rights, particularly when he withdrew his

17  objection.

18  So I'd like you to come up with a way to let this ship

19  leave the dock with the Court confirming the plan but, if

20  necessary, let me try to clarify something, if there's a reason

21  to.  I don't know; you may be right, Mr. Johnston.  And clearly

22  you can't create something that isn't consistent with the

23  operative documents.  But I just haven't had a moment to think

24  about it.

25  MR. KAROTKIN:  Your Honor?

PG&E Corp. and Pacific Gas and Electric Company

1          THE COURT:  Yes.

2          MR. KAROTKIN:  I'll try to address it.  In order to

3    confirm the plan, you have to make the findings under

4    1129(a) --

5          THE COURT:  Right.

6          MR. KAROTKIN:  -- or 1129(b).

7          THE COURT:  Which I did.

8          MR. KAROTKIN:  Not with respect to this particular

9    class because they voted to reject the plan.

10         THE COURT:  Well, but I can --

11         MR. KAROTKIN:  I don't --

12         THE COURT:  -- make an oral ruling that the plan

13   treats the equitably and fairly, I mean, consistent with

14   1129(a) and (b), fair and equitable.

15         MR. KAROTKIN:  You can make that determination based

16   on the proposed treatment that will be set forth in the plan,

17   as Mr. Johnston indicated.

18         THE COURT:  I know.

19         MR. KAROTKIN:  But I don't --

20         THE COURT:  I tried --

21         MR. KAROTKIN:  I don't know how else to address it and

22   enter a confirmation order.  Let me try to make a suggestion,

23   Your Honor, because I agree with the fact that we agreed to

24   submit this issue, this discrete issue, regarding the insurance

25   deduction.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1          THE COURT:  Right.

2          MR. KAROTKIN:  That's it.  That's all that's --

3          THE COURT:  Right.

4          MR. KAROTKIN:  That's all that's sitting out there.

5    Not the formula; that's done.  It's just a function of how you

6    treat receipt of insurance proceeds.

7          THE COURT:  Right.

8          MR. KAROTKIN:  This plan is not going to rise or fall

9    with respect to a determination of that issue, especially when

10   the parties have agreed to submit it to Your Honor.  And I

11   think it's a little unfair to the Court to indicate that, in

12   the wake of that, that you can't confirm the plan without

13   getting this discrete issue resolved when I think that that has

14   not been the assumption that has been made.

15         But leaving that aside, I believe that the Court can

16   confirm the plan.  We've withdrawn our objection as it relates

17   to cramdown.  That was the deal that we made, and we're

18   standing by that deal.  So you no longer have an objection with

19   respect to cramdown as to the only nonconsenting class.  So the

20   plan can in fact be confirmed.  And to push the Court to render

21   a decision on that discrete issue, in the guise of you not

22   being able to confirm this plan without it, I just don't think

23   that that's appropriate, I don't think it's true, and I don't

24   think it's fair.

25         The Court will decide what the appropriate insurance

PG&E Corp. and Pacific Gas and Electric Company

1　deduction is.  Whatever happens there, we'll deal with that,

2　one way or another, but that's certainly not a condition to

3　confirmation that I've seen.  And in keeping with the Court's

4　desire to give everybody their fair chance, while at the same

5　time making sure that January 30th is dealt with --

6　　　　THE COURT:  June 30th.

7　　　　MR. KAROTKIN:  June 30th, rather, is dealt with, you

8　know, I don't see any conflict there with what the Court has

9　suggested in getting all of that done.

10　　　　MR. JOHNSTON:  Your Honor, Jim Johnston again.  First

11　of all, I thought you did decide the insurance deduction issue.

12　That's not an issue to be punted.  That is part and parcel of

13　the treatment of these claims and part and parcel of the plan.

14　I thought we were talking about the discrete definition of Side

15　A policy that we proposed and that is now incorporated in the

16　plan.  That's not a surprise.  That simply embodies the

17　concession I made to Your Honor last time we argued this, a

18　week or so ago, probably more than a week ago.  So this is not

19　an issue to be kicked down the road any further.  This is a

20　confirmation issue that involves the treatment of Class 10A-II.

21　The insurance deduction is part and parcel of that treatment,

22　and I don't see how it can be set aside.

23　　　　THE COURT:  Mr. Johnston, I've got a million things on

24　my table here.  Where do I look at the language?  Is it in the

25　supplement to the plan?  Where is this?

PG&E Corp. and Pacific Gas and Electric Company

1    MR. JOHNSTON:  Do you have what we filed last night?

2    THE COURT:  I think so.

3    MR. JOHNSTON:  I can point you specifically to it.

4    THE COURT:  Document 8016?

5    MR. JOHNSTON:  Yes.

6    THE COURT:  Okay.  I do.

7    MR. JOHNSTON:  If you look at Exhibit A to that

8    document, I think it's on about the fifth page of the document.

9    THE COURT:  I've got it.  I mean, I --

10   MR. JOHNSTON:  It's three-quarters of --

11   THE COURT:  That just --

12   MR. JOHNSTON:  Three-quarters of the way down, you see

13   the definition of Side A policy?

14   THE COURT:  I see the new definition disputed by PERA,

15   insurance deduction.

16   MR. JOHNSTON:  And then below that.

17   THE COURT:  The next one, okay, Side A policy.

18   MR. JOHNSTON:  Yes.

19   THE COURT:  Okay, yes.

20   MR. JOHNSTON:  That's what we're talking about.

21   THE COURT:  Well, but does it identify a particular

22   policy or group of policies?

23   MR. JOHNSTON:  Well --

24   THE COURT:  In other words, it's a very fancy title,

25   but it doesn't name specifically what operates.

PG&E Corp. and Pacific Gas and Electric Company

1          MR. JOHNSTON:  No, clearly the language does not

2     identify a specific policy or group of policies.

3          THE COURT:  Okay.  Mr. Etkin, what is wrong with the

4     definition that is identified?  And I have it right in front of

5     me, so what do you find troublesome about the definition?  It

6     does cover the universe, doesn't it, of what we've generally

7     been calling the Side A policies throughout this case?

8          MR. ETKIN:  Well, Your Honor, if you look at footnote

9     2 of our submission, which is on page --

10          THE COURT:  Yes.

11          MR. ETKIN:  And we did attach the policy.

12          THE COURT:  I've got it.

13          MR. ETKIN:  We attached --

14          THE COURT:  I've got it.

15          MR. ETKIN:  We did attached the primary policy for the

16     Court's convenience.

17          THE COURT:  I know, but I couldn't look at those.

18          MR. ETKIN:  I understand.  I understand.  But in our

19     footnote 2, which is on page 3 of 59, we identify the

20     provisions of the actual policy that define what Side A

21     coverage is.  And the policy governs.  Whatever the language of

22     the policy is, as it relates to the applicability of Side A

23     coverage, when it kicks in, when it doesn't kick in, and the

24     terms with respect to the availability of that coverage, that's

25     defined by the policy.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1        And if we then take a look, Your Honor, at Section 8.7

2  of the plan, it says that "all insurance policies, including

3  all D&O liability insurance policies", et cetera, "to which any

4  debtor is a party, as of the effective date, shall be deemed to

5  be and treated as executory contracts and shall be assumed by

6  the applicable debtors or reorganized debtors and shall

7  continue in full force and effect thereafter in accordance with

8  their respective terms".

9        So Your Honor, the language that they provided in

10  their definition of Side A policy, which is the same thing as

11  Side A coverage -- there isn't a separate Side A insurance

12  policy; it's Side A coverage under the D&O insurance policy --

13  that says what it says and provides what it provides.  And an

14  attempt to wordsmith it or indicate how and when it pops into

15  effect is inappropriate where the policy has been assumed and

16  the terms and conditions of that policy are what they are,

17  including what Side A coverage is, which is contrary to what

18  Mr. Johnston indicated, which is set forth specifically in

19  those provisions that we reference in our footnote 2.

20        THE COURT:  My problem is that I can't --

21        MR. JOHNSTON:  Your Honor, I don't --

22        THE COURT:  I mean, you can only assume what you can

23  assume, and so why is the definition different from what is

24  actually being assumed, Mr. Johnston?

25        MR. JOHNSTON:  It's not, Your Honor.  This is a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1  description of that coverage.  And I have not heard from Mr.

2  Etkin a single word in that definition that's inaccurate.

3          THE COURT:  Well, why can't we incorporate his

4  footnote 2 into your new definition?

5          MR. JOHNSTON:  Well, his footnote 2 refers to one

6  policy, and it says that we're supposed to incorporate the

7  definition of that coverage when there is no definition.  What

8  he is citing you to is an operative provision of an insurance

9  policy that describes coverage, not a definition.

10          MR. ETKIN:  That's what Side A coverage is, Your

11  Honor.

12          THE COURT:  Is this really --

13          MR. ETKIN:  So why can't it be -- why can't the

14  language be, or why can't you add to that language, "consistent

15  with the terms and conditions of the relevant policies"?

16          THE COURT:  It --

17          MR. ETKIN:  Or is Mr. Johnston afraid of that?  I

18  don't know.

19          THE COURT:  Well, Mr. Johnston, is it --

20          MR. JOHNSTON:  We can add that language if it makes

21  this issue go away.

22          THE COURT:  Well, let's agree that you shouldn't be

23  importing into a definition something that doesn't exist out

24  there in a policy.  And if there's a policy out there that

25  covers something that isn't operative within the scope of 8.7

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1    then you shouldn't be adding it.  And so, in effect, Mr.

2    Johnston, if you're conceding that a Side A policy means all

3    the policies that have things that are generally known as Side

4    A in the trade, then that's what we're describing.  It's

5    consistent.

6         MR. JOHNSTON:  That's what we're describing, Your

7    Honor, yes.

8         THE COURT:  Then go with the add-on that Mr. Etkin

9    suggested.

10         MR. JOHNSTON:  Okay.  We can make that change.

11         THE COURT:  Give him the words.  Mr. Etkin, listen to

12    what the words are going to read again.  Say it again, please,

13    Mr. Johnston?

14         MR. JOHNSTON:  I think the proposal was to add at the

15    end a comma, "consistent with the terms and conditions of the

16    applicable policy".

17         THE COURT:  I think that's about what you said, Mr.

18    Etkin.

19         MR. ETKIN:  I think that's about what I said, Your

20    Honor.

21         THE COURT:  I still have a sense that this is angels

22    on a pin, to some extent, because it's hard for me to imagine

23    that this is ever really going to make a difference because the

24    company is going to indemnify all of its officers and directors

25    anyway.  But I'll leave that for another day.

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1    Thank you for resolving two of the issues out of

2 three, leaving me the third one.

3    I'm sorry, Mr. Etkin, if I came out the wrong side on

4 your end, but I appreciate your efforts and what you've done.

5 And so I'm going to consider this a closed issue and

6 congratulate you and Mr. Johnston and your clients and Judge

7 Newsome for helping us get this one under the wraps too, or --

8    MR. KAROTKIN:  Your Honor, so --

9    THE COURT:  -- solve the problems.

10    MR. KAROTKIN:  So --

11    MR. JOHNSTON:  Thank you, Your Honor.

12    MR. KAROTKIN:  So things are absolutely clear, the

13 plan has been modified to include this provision for the

14 treatment of the HoldCo rescission and damage claims.  We will

15 modify the definition of the Side A in the plan to reflect

16 that.  And that will be the proposed treatment in the plan.

17 And consistent with that, and I believe consistent with what's

18 happened today, there will be an order paragraph, in the

19 proposed order, that says that the treatment of that class, in

20 so many words, complies with 1129(b).

21    THE COURT:  Well, I'll say it again -- Mr. Etkin said

22 it.  He conceded the point because he agreed to it.  And so the

23 oral record, the order, and my memorandum decision in effect

24 said it already, that -- this gets back to treatment.  Again,

25 it's relevant to the issue of I'm not determining the amount of

PG&E Corp. and Pacific Gas and Electric Company

1    any particular claimant's claim.  I'm approving as fair and

2    equitable, and satisfying 1129(b) cram down, the treatment of

3    this class, fair and equitably, nondiscriminatorily, consistent

4    with everything that we've talked about completing.  Okay?

5         MR. ETKIN:  Your Honor, just one last housekeeping

6    thing?

7         THE COURT:  Yes, sir.

8         MR. ETKIN:  The revised proposed order and plan were

9    filed minutes before this hearing began.  And we would just

10   like the opportunity to be able to take a look at it.

11        THE COURT:  Well, you have an opportunity.  Mr. Etkin,

12   I have to trust counsel, principal counsel, and I do trust

13   them.  I trust all the counsel in this case, but if something

14   goes awry, and I sign an order confirming a plan today, and

15   tomorrow or the next day it comes to light that somebody either

16   intentionally or unintentionally mixed up and acted

17   inconsistently, I have the ability to modify those things on a

18   proper record.  I'm hoping it won't happen.

19        So everybody's been moving quickly.  And I committed

20   to it, and Mr. Karotkin did, and Mr. Johnston did, and I look

21   for you to do it too.  So do your best and take a look at what

22   he said, and certainly the record reflects what Mr. Johnston

23   offered and you heard me say.

24        MR. JOHNSTON:  And Your Honor, I can confirm at least

25   the draft that I saw, kind of, immediately before the plan and

(973) 406-2250   operations@escribers.net | www.escribers.net

                PG&E Corp. and Pacific Gas and Electric Company

1    confirmation order were filed, contains the language that's set

2    forth on Exhibit A to our filing last night --

3               THE COURT:  Okay.

4               MR. JOHNSTON:  -- verbatim.

5               THE COURT:  Okay.

6               MR. JOHNSTON:  Thank you.

7               THE COURT:  Thank you, Mr. Etkin, I appreciate your

8    efforts, and Mr. Johnston.  I'm going to excuse you both now

9    because we've got the remaining issue, I think, with the

10   creditors' committee.  All right.  Thank you.

11              Mr. Karotkin, while -- I guess we're going to bring

12   Mr. Bray in, and I don't know if the -- let me just check and

13   see if anybody has put up a hand.  No, I don't know -- I guess

14   Mr. Bray is coming in.  And I don't know if any -- Mr. Julian

15   or Mr. Richardson wanted to, but they don't need to unless they

16   choose to.

17              So Ms. Parada, are you finding Mr. Bray?  Is he on

18   your list?

19              THE CLERK:  Yes, Your Honor.  Mr. Bray is joining in

20   now.

21              THE COURT:  So Mr. Karotkin, while Mr. Bray is

22   checking in with us, I have to digress and tell you something

23   that I didn't know the other day.  I'll let --

24              Oh, good afternoon, Mr. Bray.  Just state your

25   appearance.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1        MR. BRAY:  Good afternoon, Your Honor.  Gregory Bray,

2   Milbank LLP, counsel for the unsecured creditors' committee.

3        THE COURT:  So Mr. Karotkin, the other day when you

4   were citing Arriva, the name didn't mean much to me because I

5   just didn't recognize it.  And now of course you take issue

6   with my conflating Section 365 with 1124, and I will agree with

7   you that they don't mention each other, but the concepts are

8   pretty much obvious because 1123 says you can have a plan that

9   assumes an executory contract consistent with 365, and the

10  notion of a plan that doesn't cure a default wouldn't pass

11  muster under 365, and it wouldn't pass muster as part of

12  confirmation.

13        And it's true, an executory contract being assumed

14  isn't treated as an impaired claim, but you cited Arriva.  So I

15  went back, and something rang a bell with Arriva.  And so what

16  I'm going to tell you is just a story that in about -- you'll

17  see the Arriva decision was decided by colleague, Judge Jellen

18  in April.  Earlier that year, I got recruited to be a mediator

19  or settlement judge in that case.  And I spent a long time with

20  the litigants in that case, the very people who are named in

21  the case and, unhappily, didn't bring about a consensual

22  resolution.  Thus, Judge Jellen wrote the decision.

23        And briefly, I saw him or talked to him after he

24  issued it, and I said, you know, I tried to get that case

25  settled, and I think your decision is wrong.  So I've disagreed

(970) 649-2082 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1    with my colleague, Judge Jellen, for years about Arriva.  But

2    the principle, I think, is still valid, and I'm not going to

3    change any outcome.

4           And let's hear from Mr. Bray as to what issue is still

5    alive, because your proposal, Mr. Karotkin, I think, is

6    persuasive, but I want to hear what the committee says.

7           MR. BRAY:  Yes, thank you, Your Honor.  On the first

8    issue, the 8.2 paragraph 34(d) of the confirmation order, the

9    debtors' submission closed the issues significantly.  Really

10   the only area of disagreement is whether or not the term

11   "nonmonetary" should be in the discussion of Section 8.2E.

12   Otherwise, our submission and the debtors' proposed submission

13   are essentially the same.

14          THE COURT:  Well, this gets back --

15          MR. BRAY:  But --

16          THE COURT:  This gets back to the whole point, my

17   thinking about 1124.  And what threw me for a loop here was

18   that Mr. Karotkin correctly cites Section 365 in what he filed

19   this morning, but 365 says "such default", it doesn't say

20   "monetary default".  And then when you read further, you'll see

21   that certain nonmonetary defaults can be dealt with.  But if

22   you go to the debtors' plan, and this is --

23          MR. BRAY:  Yes.

24          THE COURT:  -- where I looked at Section 8.2A, 8.2A --

25          MR. BRAY:  8.2A, Your Honor, yes.  Yes.

PG&E Corp. and Pacific Gas and Electric Company

1    THE COURT:  Huh? 8 --

2    MR. BRAY:  In 8.1A they only say they're curing

3  monetary defaults.

4    THE COURT:  It doesn't use the nonmonetary.  So --

5    MR. BRAY:  That's right.

6    THE COURT:  So the plan seemed a little unfaithful to

7  the statute.

8    MR. BRAY:  I agree.

9    THE COURT:  And Mr. Karotkin, that was the concern I

10  had.  So it gets back to, of course 1124 doesn't apply,

11  technically.  But given L & J Anaheim in this circuit, to me,

12  you have to be consistent, particularly when you have an

13  executory contract assumption as part of a plan.  A standalone

14  365 motion maybe you get away with.  But the plan says you've

15  got to cure a default.  1124 says you've got to cure defaults.

16  Excuse me, and 365 says it.

17    So how do we fix this, Mr. Bray, by picking

18  nonmonetary defaults that can be dealt with the way the statute

19  says they can be dealt with.  It can be dealt with --

20    MR. BRAY:  Your Honor --

21    THE COURT:  -- in some other form.

22    MR. BRAY:  -- there are a two -- or a couple of fixes

23  here.  One of them is to fix 8.1A, say that they'll also cure

24  the nonmonetary defaults that they're supposed to cure under

25  the Code.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1      THE COURT:  That they can --

2      MR. BRAY:  And then --

3      THE COURT:  That the Code requires it, they can, yes.

4      MR. BRAY:  Exactly, that they're required to cure.

5 And then you could go with the language as it is, or as the

6 debtor proposed it.  The other option is to just simply strike

7 "monetary" or "nonmonetary" from the debtors' submission or

8 proposed language and just say "defaults".  That still doesn't

9 cleanly resolve the issue, but it also resolves the ambiguity

10 because they're only referencing monetary defaults in 8.1A,

11 therefore the logical interpretation of 8.2E would be that it's

12 only the defaults that they cured.

13      Either one of those is satisfactory to us, Your Honor.

14 We're not -- we don't want this to become a relitigation of

15 issues you put to bed in your decision.  We're really trying,

16 at this point, to be constructive on this issue and to just

17 have an unambiguous statement with respect to 365 and

18 assumption and cure.  And we appreciate the debtor having made

19 a movement on this.  The issue is pretty narrow at this point.

20 Either of those fixes are fine with us, Your Honor, and then we

21 can talk about the fire claim whenever you like.

22      THE COURT:  Mr. Karotkin, what's your choice?  You've

23 got two choices; which one would you like?

24      MR. KAROTKIN:  I think -- I'm not sure I understand

25 the first choice.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1      THE COURT:  Well, you would expand 8.1 --

2      MR. BRAY:  1A.

3      THE COURT:  -- 1A to include nonmonetary defaults.

4      MR. BRAY:  That are required to be cured under the

5  Code.

6      THE COURT:  Well, yes, of course.  You can't -- the

7  Code gives you -- the trustee, a right to avoid certain --

8      MR. BRAY:  Correct.

9      THE COURT:  It's a very narrow band of nonmonetaries.

10     MR. BRAY:  Agreed.

11     THE COURT:  I mean, again, Mr. Karotkin, this is why I

12  got so focused on this because it seemed to me that, whether it

13  was intentional or not -- I'm not going to get into that, you

14  have to be faithful to what 1124 would require if this were

15  governed some other way.  And even apart from 1124, it's got to

16  be consistent with 365.  And --

17     MR. KAROTKIN:  Well, Your Honor, I don't, frankly,

18  think 1124 applies here at all.

19     THE COURT:  I know you don't.

20     MR. KAROTKIN:  And I know you disagree with me, but I

21  don't, frankly, see how reinstatement or unimpairment have

22  anything to do with the assumption of an executory contract.

23     THE COURT:  I just said -- I said it's the concept.

24  It's the concept.  You cannot -- and I'm not -- I concede the

25  point that you measure performance under 365.  But it is so

                PG&E Corp. and Pacific Gas and Electric Company

1    parallel to the concept of 1124.

2         But it doesn't matter.  Why not just go with the

3    nonmonetary defaults, the way Mr. Bray suggests, except those

4    that are not required?  Again, I feel like we're talking about

5    angels on a pin here.

6         MR. KAROTKIN:  More than likely.  I think what I would

7    like to do -- I don't want to impose on people.  I would like

8    to take a ten-minute recess to discuss it with my co-plan

9    proponents to see what we would agree to, if I could indulge

10   the Court.

11        THE COURT:  Okay.  Well, what about fire plan?  Are we

12   settled on fire plan, Mr. Bray?

13        We'll take a ten-minute recess in a minute, Mr.

14   Karotkin, because this might be our last issue.

15        MR. KAROTKIN:  Yes.

16        MR. BRAY:  On the fire claim, Your Honor, again, I

17   understand that there is -- I understand the logic of drafting

18   into the order your statement on this.  My concern is you also

19   said -- I reread your statement or part of your decision on

20   this several times -- that, and I'm just -- what you said

21   was -- I'm sorry; I've got to find it here.  "The Court agrees

22   with the debtors, but it is best to avoid ambiguity before the

23   problem arises".

24        The part of the definition that continues to trouble

25   is the phrase, and I quote:  "in any way arising out of the

PG&E Corp. and Pacific Gas and Electric Company

1    fires".  That very broad statement could be interpreted to

2    mean, if you have a contractual claim, that basically it is

3    channeled and it somehow has something to do with a fire, it's

4    channeled into the trust, even though you're not a fire victim

5    and you were in the general GUC class of claims.

6        So in our submission, Your Honor, that's the issue

7    we're trying to clarify.  And I'm trying to do it consistently

8    with what you said in your decision to avoid unnecessary

9    ambiguity before a problem arises.  I don't know how else to

10   say it.  We submitted some language to you on this.  It's --

11       THE COURT:  Well, Mr. Bray, what about --

12       MR. BRAY:  -- pretty straightforward.

13       THE COURT:  What about the fourth line of the proposed

14   language in the debtors' document 8020, page -- I forgot what

15   page it is, 6, I believe.  They quote -- they said here's a

16   provision they're going to put in the confirmation order that

17   tracks my decision.  That, to me, seemed right on --

18       MR. BRAY:  Right, but it's right from your decision.

19   The issue is --

20       MR. KAROTKIN:  It's right from your decision.

21       THE COURT:  Yeah.

22       MR. KAROTKIN:  You said -- I mean, you said the

23   definition was clear.  What Mr. Bray's raising is -- with

24   respect to a defined term that has been in the plan since day

25   one, negotiated, all of a sudden, he wants to pre-legislate how

PG&E Corp. and Pacific Gas and Electric Company

1    that turns out in a particular situation.  This may never come

2    up, and we -- I've said this before.  It ought to be addressed

3    in the context of a real live dispute --

4              THE COURT:  That's why I --

5              MR. KAROTKIN:  -- rather than --

6              THE COURT:  That's why I liked your language.

7              MR. KAROTKIN:  Okay.  And that's why we liked your

8    language.  And I think that this addresses the issue.  At

9    least, Your Honor, you and I are in agreement on this.  And --

10             THE COURT:  I mean, I guess the --

11             MR. KAROTKIN:  -- and what Mr. Bray's trying to do --

12             THE COURT:  -- there might be a -- there might be a

13   fire victim out there who also is a counterparty to a contract

14   the debtor seeks to assume.  But it just seems so unlikely, and

15   I -- although I do recognize and recall several of the lawyers

16   or various counterparties arguing about the confusion about it.

17   And all I was trying to do was to separate out the concept of

18   who is harmed by a fire and who is affected by an operation of

19   this strange animal in bankruptcy called assume a contract.

20             And they're two -- they're com -- they're apples and

21   oranges, for the most part.  You can have the same person who's

22   in both categories, but that's a rarity.

23             MR. BRAY:  Your Honor, I agree with that -- with the

24   clarification you've just made.  We'll submit on the issue.

25             THE COURT:  Okay.

PG&E Corp. and Pacific Gas and Electric Company

1        MR. BRAY:  That's fine.

2        THE COURT:  Mr. Karotkin, you got your language.

3        MR. KAROTKIN:  Okay.  Thank you.

4        THE COURT:  All we have left is the issue of

5   nonmonetary default.  If you want to recess, we can do it.  But

6   we don't have much else to do, other than to --

7        MR. KAROTKIN:  No, I don't think we have anything else

8   to do after that, unless someone's raising their hand.

9        THE COURT:  Mr. Pascuzzi, Mr. Troy, they had actually

10  asked to be heard before -- and Mr. Abrams.  I may let Mr.

11  Abrams in, but I'll call Mr. -- or ask Mr. -- Ms. Parada to

12  bring Mr. Pascuzzi and Mr. Troy in.  They -- they're probably

13  related to this issue.

14       And by -- while we're doing that, Mr. Karotkin, unless

15  Mr. Pascuzzi or Mr. Troy have a different take on this, rather

16  than take a recess, I'd be more inclined to tell you that I'll

17  go -- I believe what -- Mr. Bray offered two alternatives.  You

18  can just pick the one you like.  I'm going to stick with one or

19  the other, because I think the absence of the nonmonetary

20  portion of the default is something that has to be fixed.  And

21  he and I are offering you the way -- either way you want to fix

22  it.

23       MR. KAROTKIN:  I appreciate that, Your Honor, but I

24  think -- I would prefer a recess so that when we come back, we

25  can actually get the exact words and there's no

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1      misunderstanding.  If you don't mind.

2           Your Honor, can you hear us?

3           MR. BRAY:  I don't see him on the screen, either.

4           MR. KAROTKIN:  He's frozen on my --

5           THE CLERK:  It sounds --

6           MR. KAROTKIN:  -- screen.

7           THE CLERK:  -- like he's frozen.  One moment while I

8      check in with Judge Montali.

9           THE COURT:  And take advantage of your ten-minute

10     recess.  But I -- poor Mr. Pascuzzi and Mr. Troy were stranded

11     there.

12          Okay.  Mr. Pascuzzi, state your appearance, please.

13     And sorry for the delay.

14          MR. PASCUZZI:  Thank you, Your Honor.  Paul Pascuzzi

15     for the California state agencies.

16          Your Honor, our issue has to do with -- not 8.2(e),

17     but it does have to do with executory contracts and a provision

18     in the confirmation order, specifically paragraph 67(d), as in

19     Dog.  And there's a provision in there that is unique to

20     governmental units that the debtors added.  If you recall, the

21     issues regarding cure and executory contract are put off,

22     basically, until after confirmation.

23          And that's all fine, but the debtors have added

24     something in the last sentence of 67(d) that requires

25     governmental units, such as Mr. Troy's clients and my clients,

                PG&E Corp. and Pacific Gas and Electric Company

1    to file something with the Court if -- within ninety days of

2    the confirmation date.  Nobody else has to do that.  All of the

3    other parties are governed by 34(a) and (b), which is fine, and

4    everybody's rights are preserved.

5            So we are objecting to the last sentence of 67(d),

6    which puts a special burden and may attempt to shift the burden

7    on us with regard to executory contracts.

8            THE COURT:  Okay.

9            MR. PASCUZZI:  We had asked the debtors to take this

10   out, but they apparently decided not to, because it's still in

11   there.

12           THE COURT:  Are you looking at -- what's the date of

13   the filing of that version?  Because I don't have the most

14   recent one.  I have the June 14th --

15           MR. KAROTKIN:  It's not new.  It's not new.

16           MR. PASCUZZI:  It's -- it was in there before, Your

17   Honor.  It should --

18           THE COURT:  Okay.

19           MR. PASCUZZI:  -- still be in there.

20           THE COURT:  So I -- in document 7938-1?

21           MR. PASCUZZI:  We've been asking them to take it out

22   for a while, so --

23           THE COURT:  Okay.  One second.

24           One second, because I haven't had occasion to read

25   this.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1    Okay.  Mr. Karotkin, why -- what does this add to

2    the -- and Mr. Troy, are you -- before you -- Mr. Karotkin,

3    before you speak, let Mr. Troy -- why don't you unmute and

4    state your appearance also?

5    MR. TROY:  Thank you, Your Honor.  Matthew Troy, U.S.

6    Department of Justice - Civil Division, on behalf of --

7    THE COURT:  Okay.

8    MR. TROY:  -- various government agencies.

9    THE COURT:  Mr. Karotkin, why do you need this guy in

10   there?

11   MR. KAROTKIN:  Well, I mean, Mr. Pascuzzi makes it

12   sound like this is worse than everybody who has an executory

13   contract, when, in fact, it's better.  We gave them an

14   additional ninety days to come back to us with their cure

15   amounts.  And essentially, what they're saying is, well, as to

16   the government and as to the state government, they never have

17   to do that.

18   So we're out there in limbo at their pleasure.  And

19   when they feel like coming back to us and telling us something,

20   well, that's fine.  I mean -- but that's not fine.  We're

21   entitled to know what defaults there are under these contracts.

22   Everybody else was required to come forward with their cure

23   amounts.

24   THE COURT:  Okay.  Just --

25   MR. KAROTKIN:  We gave the government an extra ninety

PG&E Corp. and Pacific Gas and Electric Company

1    days.

2         THE COURT:  Because I'm overloading -- my Wi-Fi and my

3    brain are overloading here, almost, tell me how this actually

4    works.  If the plan were confirmed today and Mr. Pascuzzi has

5    an agency that has a contract being assumed, what happens under

6    your proposal?  They have ninety days to do what?  What happens

7    then?

8         MR. KAROTKIN:  Well, they have ninety days to serve an

9    objection setting forth the dispute with respect to whether or

10   not it's an assumed contract, and the cure amount.

11        THE COURT:  Okay.  So --

12        MR. KAROTKIN:  But --

13        THE COURT:  -- if they were not -- if we weren't at

14   confirmation, if this was just a 365 motion against CAL FIRE or

15   any other agency, there'd be a deadline for them to assert

16   their defaults and --

17        MR. KAROTKIN:  Yeah, which everyone else already had

18   their deadline.

19        THE COURT:  Mr. Pascuzzi, what's the problem?

20        MR. PASCUZZI:  Your Honor, we filed our objection as

21   well, at docket 7276.  And so just like everybody else, we

22   filed our objections.  Under paragraph 34(a) and (b) of the

23   confirmation order, our rights are preserved subject to being

24   resolved post-confirmation.  And so I don't know what this last

25   sentence of 67(d) is for, other than maybe trying to shift the

PG&E Corp. and Pacific Gas and Electric Company

1    burden to us that the debtors should have under 365 with

2    respect to assuming a contract.  It's unnecessary.

3            MR. KAROTKIN:  There's no burden -- the burden is on

4    the counterparty to come forward with the cure amount.

5            THE COURT:  No, the --

6            MR. KAROTKIN:  And what --

7            THE COURT:  The gover --

8            MR. KAROTKIN:  What Mr. Pascuzzi is saying is they

9    never have to do that.

10           THE COURT:  Well --

11           MR. KAROTKIN:  That's not how it works.

12           THE COURT:  Well, Mr. Pascuzzi, if there's a -- if a

13   debtor assumes a contract and the counter -- and doesn't admit

14   to any defaults, the burden is on the counterparty to say, hey,

15   there's a default.  Right?  And --

16           MR. PASCUZZI:  Yes.

17           THE COURT:  -- and if the debtor says there is a

18   default, it's 100 dollars, the burden's on the counterparty to

19   say, no, it's 500 dollars.  So --

20           MR. PASCUZZI:  You're --

21           THE COURT:  -- why is this different?

22           MR. PASCUZZI:  It's not different at all, Your Honor.

23   We have already filed an objection to their list of executory

24   contracts in the plan supplement that they want to assume, and

25   the cure amounts, because there are several bases for that.  We

PG&E Corp. and Pacific Gas and Electric Company

1    already filed it.  It's at docket 7276.

2        THE COURT:  Well, if you've already filed it, then

3    this paragraph descends -- doesn't -- isn't operative.

4        MR. PASCUZZI:  It makes no sense that the sentence is

5    even in there, because paragraph 34(a) and (b) already preserve

6    our rights and the United States' rights for this to get

7    resolved post-confirmation.  So I don't know what this sentence

8    is or why it's in there.

9        THE COURT:  Okay.  Mr. Troy --

10        MR. KAROTKIN:  Because --

11        THE COURT:  -- you have a different -- the same

12    argument?

13        MR. TROY:  The exact same argument, Your Honor.  And I

14    also wanted to emphasize that we also -- the United States also

15    filed a cure objection at document number 7273.

16        MR. KAROTKIN:  Providing no cure amounts whatsoever.

17        THE COURT:  Okay.  But keep in mind that I have not

18    had the time or the inclination to go look at cure amounts.  We

19    thought -- I thought we were reserving cures.  But --

20        MR. TROY:  Your Honor, if I could address this?  If

21    you recall, when I cross-examined Mr. Boken, I was given a

22    little leeway, and then Mr. Tsekerides and Karotkin -- Mr.

23    Karotkin jumped in and said, we're not really sure why we have

24    to do this.  It's not relevant.  All the executory contract

25    cure issues are preserved.  Look at the new draft of the

(973) 406-2250  operations@escribers.net | www.escribers.net

                PG&E Corp. and Pacific Gas and Electric Company

1       confirmation order we just filed.  Paragraph 34 preserves all

2       this.  I'm not sure why Mr. Troy needs to do this.

3               THE COURT:  Mr. Karotkin, if Mr. Pascuzzi, on behalf

4       of his many clients, has already filed his response to the

5       executory contract issues, he doesn't have to do anything under

6       this last sentence, right?  Isn't that right?

7               MR. KAROTKIN:  If he's filed his cure amounts --

8               THE COURT:  If he's already done it.  If he's done it.

9               MR. KAROTKIN:  If he's already complied with it, then

10      he's already complied with it.

11              THE COURT:  And what if some other governmental agency

12      hasn't done anything yet?  This gives them ninety days to do

13      it, right?

14              MR. KAROTKIN:  Right.  Yes.

15              THE COURT:  So again, I'm -- I wonder for you two

16      counsel for the two governmental agencies, if you're worried

17      about something that you just can ignore, because you've

18      already acted.  I mean, what's the worst that can happen?  I

19      mean, why do you have to do anything if you've already done

20      this?

21              MR. PASCUZZI:  Your Honor, this is Paul Pascuzzi.

22              I don't know what this sentence means, if it means

23      something different than what we've already done.  And --

24              THE COURT:  What about if --

25              MR. PASCUZZI:  -- that's really the point.

PG&E Corp. and Pacific Gas and Electric Company

1    THE COURT:  What about if we put on this record that

2  any governmental agency that has already asserted any executory

3  contract issues, including cures, doesn't have to do it again.

4    MR. PASCUZZI:  And the burdens under 365 remain as --

5  are not affected by this sentence, then that probably covers

6  it.

7    THE COURT:  I mean, I have --

8    MR. PASCUZZI:  But while --

9    THE COURT:  -- to -- I have a -- it sounded to me like

10  this was pretty benign, actually, because the -- it's a lot

11  longer than typical.  I mean, the typical is thirty days.  I

12  mean, the debtor has already gotten my approval to extend some

13  time to do their assumption.  And that's going to trigger a

14  thirty-day restart.

15    MR. KAROTKIN:  Well --

16    THE COURT:  You've got the benefit of ninety days, no

17  matter what.

18    MR. KAROTKIN:  Your Honor, if Mr. Pascuzzi believes

19  he's already complied with all he has to comply with, then it

20  shouldn't be an issue.  We need to restate the law.

21    THE COURT:  Right.

22    MR. KAROTKIN:  We need to restate Section 365 to give

23  him a comfort order.

24    THE COURT:  Mr. Troy, is that how you -- again, is

25  this conversation enough to make you comfortable?

PG&E Corp. and Pacific Gas and Electric Company

1          MR. TROY:  Not entirely, Your Honor, no, because I'm

2     still not sure why that paragraph is in there.  I'm

3     representing --

4          THE COURT:  I just told you.  There might be some

5     other governmental agency that's sound asleep.

6          MR. TROY:  Well, Your Honor, they're covered --

7     they're -- I would submit there aren't any.  I filed that cure

8     objection on May 15th in accordance with the scheduling order

9     and the disclosure statement order, and that covers it.

10          MR. KAROTKIN:  If you think so, then you're covered.

11          THE COURT:  Mr. -- to both of you -- they're both

12     experienced in this case, experienced bankruptcy lawyers.  You

13     both have said that you have already done what you think you

14     need to do, and you have both said, I've done what I got to do;

15     it's up to the debtor to do something about it.  It seemed to

16     me you can safely ignore this paragraph -- or this sentence --

17     this is six lines -- because you've already done it.

18          And if, on the ninety-first day, if Mr. Karotkin pulls

19     a got ya that says, ha-ha, I got ya, you didn't comply with the

20     ninety days, I presume the two of you will whack his wrists and

21     say, we already did it before then.  But if there is another

22     agency, not -- maybe a state agency that -- if there is one

23     that Mr. Pascuzzi doesn't -- well, not state agency, a

24     governmental party -- that could be an irrigation district or a

25     flood district or some local agency, couldn't it, Mr. Pascuzzi?

PG&E Corp. and Pacific Gas and Electric Company

1          MR. PASCUZZI:  Your Honor, the language is limited to

2     an agency or instrumentality of the State of California.  So if

3     it -- if you wanted to change the application of that paragraph

4     to governmental units, I think you'd be broadening it.  And I

5     would have no opposition to that.

6          THE COURT:  Well, I didn't -- I mean, again, you guys

7     have done your homework on the definitions.  I've got to go

8     back and look at the plan.  Where'd I put my plan?  I --

9          MR. KAROTKIN:  But Your Honor, what I don't understand

10    is this -- this has been in the plan for weeks --

11         THE COURT:  But he's --

12         MR. KAROTKIN:  -- and this is the --

13         THE COURT:  I think what he's saying -- but he's

14    saying -- I don't -- he's saying, I've done it -- I've done

15    what I have to do.

16         MR. KAROTKIN:  Okay.  Then fine.

17         THE COURT:  And I --

18         MR. KAROTKIN:  If --

19         THE COURT:  -- don't have to do it again.

20         MR. KAROTKIN:  You said it.  If he's done it, he's

21    done it.  He doesn't need a comfort order.

22         THE COURT:  I agree with you.  I'm trying to agree

23    with you.

24         MR. TROY:  We're not asking for one, Your Honor.

25         MR. KAROTKIN:  I mean, we've given the -- this plan --

PG&E Corp. and Pacific Gas and Electric Company

1　this confirmation order has turned into a comfort order for

2　governmental units.

3　　　　THE COURT:  Governmental units -- the plan defines

4　"governmental unit" as the Code defines it.  The Code defines

5　"governmental unit" to mean everything from a school district

6　to the Office of -- the Internal Revenue Service and anywhere

7　in between.  And if there is a contractual relationship between

8　the debtor and a little local governmental agency, a city, a

9　county, or something, then -- and if -- well, here, I -- if

10　Berkeley, California has a contractual relationship with PG&E

11　and there is a contract being assumed, and Berkeley is owed

12　some cure amount, they've got ninety days to scream or die.

13　　　　Mr. Pascuzzi, you wouldn't have been in there

14　representing the City of Berkeley, would you?

15　　　　MR. PASCUZZI:  Well, Your Honor, paragraph 67(d),

16　though, does not apply to governmental units; it applies to

17　governmental parties, which the debtors have defined to include

18　my clients and Mr. Troy's clients.  Again, that's why we were

19　flagging this paragraph as, why are they putting this in here

20　as specifically addressing our issue -- these issues with us

21　when 34(a) and (b) already cover it?

22　　　　THE COURT:  Okay.

23　　　　MR. PASCUZZI:  So --

24　　　　THE COURT:  Then why -- when --

25　　　　MR. KAROTKIN:  Because you were asking for -- because

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1  you came to us and asked for additional time with special

2  treatment.  And --

3            THE COURT:  Where's the --

4            MR. KAROTKIN:  -- we tried to accommodate you.

5            THE COURT:  Where is the definition of "governmental

6  party"?  Where will I find that?

7            MR. PASCUZZI:  It's in 67(d) of the confirmation

8  order, that same paragraph we were looking at.

9            THE COURT:  No.  Where is it a defined term?

10            MR. KAROTKIN:  In paragraph 67(d), in the middle, line

11  10.

12            THE COURT:  Oh.  I see.  So Mr. Karotkin, let's talk

13  about my hypothetical of the City of Berkeley, who has a

14  contractual relationship with PG&E.  They're not governed by

15  this ninety days, then?

16            MR. KAROTKIN:  No, they're governed by other

17  provisions, which I believe required them to already do this.

18            THE COURT:  Well, this is one of those things where,

19  here are, it's 20 minutes to 2 our time on the day and time to

20  confirm this plan.  And two experienced lawyers say, why do I

21  have to worry about this paragraph; it doesn't mean anything.

22  And Mr. Karotkin says, if you've already complied with it, you

23  don't need it.  And I'm going, well, what's the harm in doing

24  nothing?

25            Look, I'm going to -- Mr. Pascuzzi and Mr. Troy, I

PG&E Corp. and Pacific Gas and Electric Company

1  don't -- I think you well know whether your clients have

2  complied with this requirement of this sentence.  And if they

3  haven't, they've got ninety days to do it.  I don't think it's

4  necessary to do anything further about it.  This colloquy is on

5  the record.  If Mr. Karotkin tries to take a different point of

6  view in the future by saying, you didn't comply, you lose, he

7  will lose, because he's just clarified what he said.  And I

8  think the record speaks for itself on that.

9       MR. KAROTKIN:  Your Honor, I'll just say one last

10  thing.  The company has a lot of relationships with the United

11  States government and the State of California.  It's not going

12  to do anything irresponsible in that regard to jeopardize those

13  relationships.

14       THE COURT:  I -- that's fine.  I do appreciate the

15  problem, and I'm not faulting these lawyers for raising it.

16  But I think, given the clarification, they don't have much to

17  worry about on this one.  So --

18       MR. PASCUZZI:  Thank you, Your Honor.

19       THE COURT:  Okay.

20       MR. TROY:  Thank you.

21       THE COURT:  Now --

22       MR. KAROTKIN:  I would still, Your Honor, like a ten

23  or fifteen-minute recess.  And I think that we can resolve

24  this.  I'd just rather do it on the record so we know it's

25  resolved and everyone agrees to it.  So if I can --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1    THE COURT: Okay.

2    MR. KAROTKIN: -- indulge the Court --

3    THE COURT: Hold on.

4    Mr. Abrams, you've got your hand up.  I'm not going to

5 call upon you.  I'm dealing with confirmation issues today, and

6 I -- to the extent that you want to be heard, I know you have

7 lots of things you want to be heard about.  But you are not a

8 participant on the objections that are the subject of this

9 hearing today.  So I'm not going to call on you and leave it at

10 that.

11    And Mr. Karotkin, I will -- I'll ask Ms. Parada.

12    Ms. Parada, given my problems, would you -- should we

13 just keep the Zoom session running and just tell Mr. Karotkin

14 to go offline, and I'll mute out and close my screen, and we'll

15 come back in about ten minutes?  Does that work for you?

16    THE CLERK: Yes, Your Honor.  I could keep the Zoom

17 going, and whoever wants to log out can log back in, and I'll

18 bring them back in at the --

19    THE COURT: Yeah.  I don't know what --

20    THE CLERK: -- after the recess.

21    THE COURT: I don't know what went wrong on my end.

22    But -- okay.  Mr. Karotkin, by my calculation, it's

23 about 10, 20 -- 20 minutes to 2 our time.  We'll -- do you

24 think ten is enough, or do you want a little longer?

25    MR. KAROTKIN: How about fifteen?

PG&E Corp. and Pacific Gas and Electric Company

1    THE COURT:  Okay.  We'll start at 5 minutes to 2 our

2    time.  And for everyone who's monitoring, I'll just -- I'm just

3    going to mute and close down my screen and see you all in

4    fifteen minutes.  Okay?

5    All right.  Thank you.

6    (Whereupon a recess was taken)

7    THE COURT:  Mr. Karotkin, Mr. Bray and I were

8    speculating on whether you left us and walked out on the

9    hearing.

10    MR. KAROTKIN:  I was thinking about it.

11    THE COURT:  All right.  What's the verdict?

12    MR. KAROTKIN:  So here's the proposal, and hopefully,

13    it addresses what we were talking about.

14    In 8.2(a) of the plan -- I'll make sure Mr. Bray has

15    it handy.

16    THE COURT:  I --

17    MR. BRAY:  8.1, right?

18    MR. KAROTKIN:  Well, actually, it's --

19    MR. BRAY:  8.1?

20    MR. KAROTKIN:  -- at -- it's at 8.2, I think.

21    THE COURT:  8.2(a)?

22    MR. KAROTKIN:  No, I think it meant 8.2(a), not

23    8.1(a).

24    MR. BRAY:  I have to find the provision now, sorry.

25    THE COURT:  Well, the first sentence of 8.2(a) is "Any

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1    monetary defaults", and that's where --

2         MR. BRAY:  Right.  Exactly.

3         THE COURT:  -- there was no reference to nonmonetary.

4         MR. KAROTKIN:  So what we would propose -- unless Mr.

5    Bray wants me to wait?

6         MR. BRAY:  No, I'll follow.  Go ahead.

7         MR. KAROTKIN:  We would suggest, in 8.2(a), deleting

8    the word "monetary" in the first sentence -- in the first line.

9    And then in the third line, where it says, "By payment of the

10   default amount", we would add the words if applicable -- comma

11   if applicable comma.  And then --

12        THE COURT:  Well, wait one second on that.  Remember,

13   the statute allows you to do something other than pay.

14        MR. KAROTKIN:  Well, that's why we said, if it's

15   payable -- if you keep reading, as reflected in the applicable

16   cure notes, in cash.

17        THE COURT:  Okay.

18        MR. KAROTKIN:  That's how we address it.

19        And then in the proposed language for 8.2(e) that we

20   put in our pleading -- not the language that's in the plan, the

21   one that we -- on page 6- -- 5 or 6 of the pleading --

22        MR. BRAY:  Right.

23        MR. KAROTKIN:  -- that we filed this morning --

24        THE COURT:  Yeah.

25        MR. KAROTKIN:  -- we would delete the words -- pardon

PG&E Corp. and Pacific Gas and Electric Company

1    me -- on line 8, "whether monetary or nonmonetary".  So it

2    would just go, "In keeping to the fullest extent permitted

3    until applicable law."

4           THE COURT:  So let me read it with that strikeout.  So

5    it says "Assumption", et cetera, leads "to the fullest extent".

6           Mr. Bray?

7           MR. BRAY:  Yeah, Your Honor, the only other thing we

8    need to fix is the definition of "cure amount", which also only

9    speaks to a monetary default.  That's why I referenced 8.1(a).

10   If you look at the definition of "cure amount", it has the same

11   issue.  And that was really why -- means the payment of cash or

12   the distribution of other property to cure a monetary default.

13   It's definition 1.40.  It's the same issue.

14          THE COURT:  Well -- but the definition in -- oh,

15   you're right.  The word --

16          MR. BRAY:  Yeah.

17          THE COURT:  -- "nonmonetary" is missing from the

18   definition.

19          MR. BRAY:  Right.

20          THE COURT:  I had marked that also.

21          MR. BRAY:  Yeah.

22          THE COURT:  So do we fix it by the order, or, Mr.

23   Karotkin, are we going to --

24          MR. KAROTKIN:  Well, I think that -- I think that the

25   words in the 1.40 actually word, because I think (b) covers the

PG&E Corp. and Pacific Gas and Electric Company

1  other thing, which permit the debtors to assume -- as necessary

2  to permit the debtors to assume or assume and assign.  So I

3  think it would cover that.

4            THE COURT:  Okay.  Say that --

5            MR. BRAY:  A nonmonetary -- I didn't read it that way.

6  If there's a nonmonetary default, I read this to mean you don't

7  have to cure it.

8            THE COURT:  Well --

9            MR. BRAY:  Subject to the --

10            THE COURT:  Mr. Karotkin, you proposed -- the first

11  thing you said -- you were striking "monetary" from the 8.2(a),

12  right?

13            MR. KAROTKIN:  Right.

14            THE COURT:  So it says any default, so therefore it's

15  saying defaults.  And then they're paid, if applicable, in

16  cash.  But what if it's --

17            MR. BRAY:  Right.

18            THE COURT:  -- what if it's not in cash?  Where do we

19  pick it up?

20            MR. KAROTKIN:  You have to cure it under 365.

21            THE COURT:  Well --

22            MR. KAROTKIN:  Or on --

23            THE COURT:  Why can't you --

24            MR. KAROTKIN:  It's becoming really complicated now.

25            THE COURT:  Well, this whole thing is complicated, but

PG&E Corp. and Pacific Gas and Electric Company

1  so what?  That's why we're doing it.  I mean, I --

2        MR. KAROTKIN:  I've been doing it on my --

3        THE COURT:  Remember, Mr. Bray gave you two

4  alternatives.

5        MR. KAROTKIN:  I know.  Neither of which are

6  appropriate.

7        THE COURT:  Mr. Bray, do you remember the actual words

8  of your alternatives?

9        MR. BRAY:  Well, I -- if you look at -- if you -- I

10  think you can fix this pretty easily.  In Section -- in def --

11  the definition of "cure amount", 1.40, if you strike the word

12  "monetary", it just says, "to cure a default as required by

13  Section 365 of the Code," I think you fixed it there.  And then

14  the same with respect to 8.2(a).

15        MR. KAROTKIN:  Yeah, but if you look at -- 1.40 says

16  you're distributing cash to cure a monetary --

17        MR. BRAY:  Well, the --

18        MR. KAROTKIN:  -- default.

19        MR. BRAY:  Right.  Right.

20        THE COURT:  No, you're going too -- wait, Mr.

21  Karotkin, you're going too fast for me.  1.39 is where Mr. Bray

22  says, strike "monetary".

23        MR. KAROTKIN:  Your Honor, I --

24        MR. BRAY:  Yeah, it's 1.40, Your Honor, the definition

25  of "cure".

PG&E Corp. and Pacific Gas and Electric Company

1    THE COURT:  Well, that's a new -- what plan are you

2    looking at?

3    MR. BRAY:  It's 8.1(a).  It's -- 8.1(a) and 8.2 have

4    the -- it's the -- they're the same issue.  They all refer to

5    monetary defaults only.  That's how we got into this pickle.

6    So the definition --

7    THE COURT:  Yeah.

8    MR. BRAY:  -- of "cure amount" in those two sections

9    need to be revised to pick up for the possibility of having to

10   cure a nonmonetary default, as required by the Code.

11   THE COURT:  Yeah, I think he's right on that, Mr.

12   Karotkin.

13   Can -- but if you -- you can solve the problem by -- I

14   think, by expanding the definition of "cure amount".  And

15   that --

16   MR. BRAY:  Right, I think -- right.

17   THE COURT:  And then you have --

18   MR. KAROTKIN:  But we've already --

19   THE COURT:  -- you have the ability to pay cash, if

20   applicable.  But if they -- again, we might be talking about

21   angels on a pin here.

22   MR. KAROTKIN:  But it says, "The payment of cash or

23   the distribution of other property, as necessary, to permit the

24   assumption."

25   THE COURT:  But the --

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1        MR. BRAY:  Well, it says, "to cure a monetary

2   default".

3        THE COURT:  Your "cure amount" definition is more

4   limited than the statute.

5        MR. BRAY:  Right.

6        THE COURT:  You don't have anything in the

7   definitional section for --

8        MR. KAROTKIN:  I know, but the --

9        THE COURT:  -- taking care of nonmonetary defaults

10   that are fixable.

11        MR. KAROTKIN:  But the cure amount is a defined term

12   so people can tell you the cash that you need to pay to cure.

13        THE COURT:  Mr. Karotkin, look at the 1.39 --

14        MR. KAROTKIN:  I'm looking at it.

15        THE COURT:  -- (a) --

16        MR. KAROTKIN:  I'm looking at it.

17        THE COURT:  -- so the low -- "cure a monetary

18   default".  So my question is, where are you curing a

19   nonmonetary default?

20        MR. KAROTKIN:  I'm curing it in 8.2(a).

21        THE COURT:  But you're not curing it in your

22   definition.

23        MR. KAROTKIN:  No, but the cure amount is dollars.

24   That doesn't preclude the fact that you have to -- if there are

25   things that have to be cured, they have to be cured.  The cure

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1    amount is just a definition of dollars.

2         THE COURT:  It may not -- but it may not be a

3    dollar --

4         MR. KAROTKIN:  Not, but --

5         THE COURT:  -- amount.

6         MR. KAROTKIN:  -- but -- and I'm saying, Judge, in

7    8.2(a), it requires you do everything.  But for purposes of the

8    dollars, that's the cure amount that has to be paid.  So I

9    think it's entirely consistent.

10        THE COURT:  Well -- but you're --

11        MR. KAROTKIN:  In paragraph B --

12        THE COURT:  I guess I'm still having --

13        MR. KAROTKIN:  I think --

14        THE COURT:  -- trouble with your being inconsistent --

15   your definitions don't track the statute.  So why not --

16        MR. KAROTKIN:  Yes, they do.  Yes, they do.  We're --

17   the cure amount is not supposed to necessarily encompass

18   everything.  It's supposed to encompass the cash element of the

19   cure.

20        THE COURT:  Okay.  Tell me about a non- -- tell me --

21        MR. KAROTKIN:  8.2(a) -- if you look at 8.2(a), "Any

22   default under an assumed or assigned contract shall be

23   satisfied pursuant to Section 365(b) by the payment of"

24   applicable -- "of cash on the effective date or on such other

25   terms."

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1    THE COURT:  Okay.  Again, I -- I'm wonder -- we're on

2    the same version.  So I'm in 8.2(a), and you said you would

3    strike the second word, which is "monetary".  And so then it

4    would read, any default that is curable later on in cash, if

5    applicable, or something like that.

6        So what if we have a nonmonetary default that needs to

7    be cured by noncash matters?  How is it -- where do you take

8    care of that?

9    MR. KAROTKIN:  That's -- actually, now looking at it,

10   that's in paragraph B of the definition of "cure amount",

11   because you're required to do anything else that's necessary --

12   MR. BRAY:  Well --

13   MR. KAROTKIN:  -- to do the cure.

14   MR. BRAY:  -- it says "and".  It doesn't because it

15   says "and".  It's not an "or".  It's still not -- I thought

16   about that, too.

17   MR. KAROTKIN:  "And" and "or" are the same.

18   THE COURT:  Yeah, I don't think that solves the

19   problem, either.  But again, we ought to be able to fix this.

20   And I'm not --

21   MR. KAROTKIN:  Your Honor, I think it worked.

22   THE COURT:  Well, let's go back to what the committee

23   and Mr. Bray suggested and whether that --

24   MR. BRAY:  Our fix was just 8.2(e) that just

25   referenced monetary defaults and tracked the other provisions.

PG&E Corp. and Pacific Gas and Electric Company

1          THE COURT:  Right.  That's right.

2          MR. KAROTKIN:  Which was what?  Just to delete those

3    four words, five words?

4          MR. BRAY:  The nonmonetary defaults, deleted "or

5    non" -- I think or -- yeah, deleted "or nonmonetary default".

6          THE COURT:  Yeah, he did -- that's what he did on what

7    he filed this morning, on page --

8          MR. BRAY:  Yeah.

9          THE COURT:  -- page 5 or 6.

10         MR. BRAY:  Page 3.

11         THE COURT:  In that indented quote, he struck "whether

12   monetary or nonmonetary".

13         MR. KAROTKIN:  That's what I proposed with respect to

14   8.2(e) as well ten minutes ago.

15         MR. BRAY:  I just -- Your Honor, I think we just need,

16   in the confirmation order, some clear statement that both

17   monetary and nonmonetary defaults could be cured as required by

18   the Code.

19         THE COURT:  Well -- and I think --

20         MR. BRAY:  And I think we're --

21         THE COURT:  But I think that's what you're suggesting,

22   because everything -- every time we talk about 8.2, we're also

23   talking about --

24         MR. BRAY:  Right.

25         THE COURT:  -- paragraph 34(d) of the order.

operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1    MR. BRAY:  Right.  Right.  Right.  I think we just add

2    a provision that says what I just said:  and any -- the debtors

3    shall cure any monetary or nonmonetary defaults to the extent

4    required by Section 365.

5    MR. KAROTKIN:  Well, now we're talking about other

6    changes?

7    MR. BRAY:  I -- it's just --

8    MR. KAROTKIN:  Or 8.2(e)?

9    MR. BRAY:  No, it would -- well, I --

10    MR. KAROTKIN:  Now --

11    MR. BRAY:  -- was thinking --

12    MR. KAROTKIN:  -- we're going beyond 8.2(e)?

13    THE COURT:  No, I don't think he is.  I -- again, look

14    at his -- look at -- I thought Mr. Bray was agreeing to the

15    language, Mr. Karotkin, that you had mentioned this morning.  I

16    mean, I -- maybe I'm missing --

17    MR. BRAY:  Yeah, we -- the difference was -- the issue

18    was the inclusion in their language of the nonmonetary

19    defaults.  That's been the distinction between our two

20    provisions all along.  So we either make it -- we -- I think

21    the fix is to make it clear in the plan or the disclosure

22    statement -- or, I'm sorry, the order that the debtor, to the

23    extent they're required to do it under the Code, will cure

24    nonmonetary defaults.

25    MR. KAROTKIN:  I think that the best way to do this

PG&E Corp. and Pacific Gas and Electric Company

1    is, with respect to paragraph 8.2(e), is just to delete the

2    reference to "whether monetary or nonmonetary" and be done with

3    it.

4          THE COURT: Shouldn't the (e) --

5          MR. KAROTKIN: And that's what Mr. Bray propo -- I

6    think that's he proposed this morning.

7          THE COURT: Well, I'll make one nitpick with you.

8    Wouldn't it be better to take the (e) out of the -- well, never

9    mind. Wait, excuse me. No, I'm sorry. Yeah, take -- just

10    make 8.2 -- 8.2, delete -- strike the word "monetary" in 8.2(a)

11    and then -- and make the same change in 8.2(e). In other

12    words --

13          MR. BRAY: Yeah, that would work, Your Honor.

14          THE COURT: That's consistent. You take "monetary"

15    out of 8.2(a) and take "whether monetary or nonmonetary" out of

16    8.2(e). And then the confirmation order, you take the phrase

17    "whether monetary or nonmonetary".

18          MR. KAROTKIN: But I just want to make -- can I just

19    ask -- if you look at what we proposed in our pleading this

20    morning or this afternoon --

21          THE COURT: I'm looking at it.

22          MR. KAROTKIN: Okay. On page 6 -- or 5, we would

23    delete at the end, "whether monetary or nonmonetary".

24          THE COURT: I -- you got -- I got you. I got you.

25          MR. KAROTKIN: Okay. Is that -- all right. So we

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1   will do that.  And then in -- I guess, in 8.2(a), delete the

2   word "monetary" --

3              THE COURT:  Yes.

4              MR. KAROTKIN:  -- and be done with it?

5              THE COURT:  And that's con -- then you're consistent.

6              MR. KAROTKIN:  Okay.  I think -- I thought that's what

7   I said.

8              THE COURT:  Mr. Bray, I think --

9              MR. BRAY:  We're -- based upon this colloquy and those

10  fixes, we're fine, Your Honor.

11             THE COURT:  This is a drafting by --

12             MR. KAROTKIN:  Okay.  But will you --

13             THE COURT:  -- drafting --

14             MR. KAROTKIN:  -- will you --

15             THE COURT:  -- by committee.

16             MR. BRAY:  Yes.

17             MR. KAROTKIN:  So Mr. Bray, just so there's no

18  misunderstanding, our language on page -- the second to the

19  last page of our pleading, correct --

20             THE COURT:  Yes.

21             MR. BRAY:  I'll find it here.  Yeah.

22             MR. KAROTKIN:  -- before the subsection fire claim --

23             THE COURT:  You strike four words from the indent.

24             MR. KAROTKIN:  Four words at the bottom:  "whether

25  monetary or nonmonetary".  And in 8.2(a), we strike the word

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1   "monetary".

2           THE COURT:  That's correct.

3           MR. BRAY:  That is correct.

4           MR. KAROTKIN:  Done.

5           MR. BRAY:  Yeah.  And then that, coupled with this

6   exchange, I think we're fine.

7           MR. KAROTKIN:  Okay.  Done.

8           THE COURT:  We have agreement?

9           MR. KAROTKIN:  Yes.

10          MR. BRAY:  We do.

11          THE COURT:  So Mr. Karotkin -- well, thank you,

12  gentlemen.

13          Mr. Karotkin, what's next?

14          MR. KAROTKIN:  We file the revised plan -- we need to

15  file a revised plan -- an actual formal revised plan to reflect

16  today's -- whatever happened today, to address Mr. Bray's

17  issue, to address -- well, the other -- I think, really, just

18  to address Mr. Bray's issues.  And I think that's it.

19          THE COURT:  Okay.

20          MR. KAROTKIN:  Unless my colleagues tell me otherwise.

21          THE COURT:  Is this something you're able to do or

22  need to do?  Is it something you want us to be able to enter an

23  order tomorrow?  We can do it if necessary.

24          MR. KAROTKIN:  Yeah.

25          THE COURT:  I'll do it today if necessary.  The

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1    question's, can you do it?

2         MR. KAROTKIN:  I think we can get you something in --

3    within a couple of hours.  I've got to talk to my colleagues,

4    but I believe -- I believe it doesn't require very many

5    changes.

6         THE COURT:  The question that I have for you is, is it

7    critical from your point of view and the people that you're

8    awaiting to hear from me that you get an order today versus

9    tomorrow or Sunday or Monday?  And --

10        MR. KAROTKIN:  I think tomorrow would be fine.  I

11   think --

12        THE COURT:  I mean, if not --

13        MR. KAROTKIN:  -- people would --

14        THE COURT:  There's no -- we can enter an order on a

15   Saturday, and it's set.

16        MR. KAROTKIN:  Right.  Well, as I said, we have -- we

17   will provide a revised plan in this -- and confirmation order

18   to you within a couple of hours.  We will file a plan

19   supplement with the trust documents, and I believe that

20   resolves everything.  And --

21        THE COURT:  If you can --

22        MR. KAROTKIN:  -- we will add the language -- I'm

23   sorry, Mr. Johnson reminds me, we will add the language to

24   address the side A resolution as well.

25        THE COURT:  If you can upload the order today, we'll

PG&E Corp. and Pacific Gas and Electric Company

1  enter it today.  It's not a problem.

2          MR. KAROTKIN:  Okay.

3          THE COURT:  I have to trust you, and I do.  And as I

4  said, if there is a screwup, we'll fix it by an amended order,

5  if necessary.  Obviously, nobody wants to do that.  And --

6  but -- and if Mr. Bray and Mr. Etkin want to have a chance to

7  weigh in, they've got a couple of hours to let you know of any

8  last-minute problems.

9          Well, Mr. Karotkin, your staff and you are in touch

10  with my courtroom deputy frequently.  You can give her a heads

11  up when you are about to upload -- to file the plan and upload

12  the order.  My commitment to you --

13          MR. KAROTKIN:  Will do.

14          THE COURT:  -- will be, unless it's past bedtime,

15  we'll manage to get that order entered today, unless it's --

16  just can't be done, in which case we'll do it tomorrow.

17          MR. KAROTKIN:  Okay.  Very well.  Thank you, sir.

18          And thank you for your guidance throughout this

19  process.

20          THE COURT:  Well, I'm going to start by thanking.  I

21  want to congratulate you and all of your staff and the two

22  official committees.

23          Mr. Bray, you've been main point lately, but certainly

24  Mr. Julian and the committees, but also the unofficial

25  committees, and the lawyers representing a number of the very

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp. and Pacific Gas and Electric Company

1  significant players:  the agencies, the governmental agencies,

2  the state and federal, the various players representing other

3  municipalities and governmental agencies that have played a

4  role, and even the individual counsel who have been

5  participating on behalf of their own clients.

6       This has been a very comprehensive and complex

7  challenge for everyone, but we've all set out to try to get the

8  plan in place.  And hopefully, it is on the way now and will

9  become effective.  So it's been a pleasure to see so many

10 lawyers working diligently for their clients, but

11 professionally and highest quality of legal work and civility

12 and conduct of officers of the court of the highest order.

13      So it's been my pleasure to oversee it.  And I'm

14 not -- you're not done with me yet, but this is an important

15 point.  So I'm glad to be there and happy and thank you for

16 your hard work and your efforts.

17      MR. KAROTKIN:  Thank you, sir.

18      MR. BRAY:  Thank you, Your Honor.

19      MR. KAROTKIN:  It's very much appreciated.

20      THE COURT:  Let me just take one --

21      MR. KAROTKIN:  On behalf of my firm, our colleagues,

22 the Cravath firm, and, of course, the company, foremost.

23      THE COURT:  Okay.

24      MR. BRAY:  Likewise, Your Honor, we appreciate it -- I

25 appreciate it very much having the pleasure of appearing before

PG&E Corp. and Pacific Gas and Electric Company

1    you.  And the committee thanks you for your efforts and --

2              THE COURT:  Okay.

3              MR. BRAY:  -- commitment to this case.

4              THE COURT:  This is turning into a lovefest.

5              Thank you all.  Have a good weekend.

6              Mr. Karotkin, make sure Ms. Parada knows our schedule.

7              MR. KAROTKIN:  Will do.

8              THE COURT:  All right.  I'm going to end the session.

9    Thank you all for your time.

10             MR. KAROTKIN:  Thank you.

11          (Whereupon these proceedings were concluded)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

1                          I N D E X

2    RULINGS:                                    PAGE LINE

3    Form of order confirming plan granted as        84    1

4    specified

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

escribers
(973) 406-2250   operations@escribers.net | www.escribers.net

1               C E R T I F I C A T I O N

2

3    I, Linda Ferrara, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7    *Linda Ferrara*

8    _____

9    /s/ LINDA FERRARA, CET-656

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  June 22, 2020

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**ability (2)**
44:17;74:19
**able (8)**
31:8;24;32:14;36:22;
44:10;77:19;82:21,22
**Abrams (3)**
54:10,11;68:4
**absence (1)**
54:19
**absolutely (2)**
9:16;43:12
**accept (1)**
30:21
**accepts (2)**
20:13;25:6
**accommodate (3)**
4:2;16:21;66:4
**accordance (2)**
40:7;63:8
**account (1)**
24:21
**accurate (1)**
33:21
**acted (2)**
44:16;61:18
**action (9)**
8:5;9:7;10:11;11:2,
16,25,25;12:1,1
**actions (1)**
11:25
**actual (7)**
7:17;8:1;24:10;34:1;
39:20;73:7;82:15
**actually (8)**
40:24;54:9,25;58:3;
62:10;69:18;71:25;
77:9
**add (9)**
7:8;41:14,20;42:14;
57:1;70:10;79:1;83:22,
23
**added (2)**
55:20,23
**adding (2)**
8:4;42:1
**addition (1)**
11:23
**additional (2)**
57:14;66:1
**add-on (1)**
42:8
**address (12)**
4:2,17;6:11;9:11;
35:2,21;60:20;70:18;
82:16,17,18;83:24
**addressed (3)**
3:25;6:9;53:2
**addresses (2)**
53:8;69:13
**addressing (2)**

9:15;65:20
**adds (1)**
8:3
**adjudicated (1)**
31:4
**adjudication (1)**
22:15
**admit (1)**
59:13
**advance (1)**
22:5
**advantage (1)**
55:9
**affect (2)**
13:21,22
**affected (3)**
12:2;53:18;62:5
**afraid (1)**
41:17
**afternoon (17)**
3:4,5,14,15;6:18,21;
13:16,18;15:22,23;
17:22,23;18:4,6;45:24;
46:1;80:20
**again (24)**
11:9;14:22;15:7;
19:18,22;31:10;37:10;
42:12,12;43:21,24;
50:11;51:4,16;61:15;
62:3,24;64:6,19;65:18;
74:20;77:1,19;79:13
**against (6)**
24:2,2,4,16;26:5;
58:14
**agencies (6)**
55:15;57:8;61:16;
85:1,1,3
**agency (11)**
58:5,15;61:11;62:2;
63:5,22,22,23,25;64:2;
65:8
**ago (5)**
5:1;9:14;37:18,18;
78:14
**agree (15)**
7:6;22:19,21;23:10;
33:5,5,6;35:23;41:22;
46:6;48:8;51:9;53:23;
64:22,22
**agreed (11)**
9:18;13:1;16:8;
18:16;19:17;22:7;23:6;
35:23;36:10;43:22;
50:10
**agreeing (1)**
79:14
**agreement (5)**
5:4,6;34:13;53:9;
82:8
**agreements (2)**
13:1,22
**agrees (2)**
51:21;67:25

**ahead (1)**
70:6
**alive (1)**
47:5
**allowance (1)**
24:18
**allowed (3)**
22:9;24:7;26:11
**allows (1)**
70:13
**almost (5)**
4:1;9:1;24:19;30:5;
58:3
**alone (2)**
5:15,16
**along (3)**
21:11;25:17;79:20
**alternatives (3)**
54:17;73:4,8
**although (2)**
20:16;53:15
**ambiguity (3)**
49:9;51:22;52:9
**amended (5)**
31:13,13,15,18;84:4
**among (1)**
5:7
**amount (30)**
21:12,20;22:16;
23:12;24:3,5,9;25:11;
27:13;28:2,3;30:22;
43:25;58:10;59:4;
65:12;70:10;71:8,10;
73:11;74:8,14;75:3,11,
23;76:1,5,8,17;77:10
**amounts (7)**
5:24;57:15,23;59:25;
60:16,18;61:7
**Anaheim (1)**
48:11
**angels (3)**
42:21;51:5;74:21
**animal (1)**
53:19
**apart (1)**
50:15
**apologies (1)**
22:5
**apologize (3)**
6:24;9:21,22
**apparently (1)**
56:10
**appearance (8)**
3:19;6:19;13:17;
15:24;17:24;45:25;
55:12;57:4
**appearing (1)**
85:25
**appended (1)**
31:16
**apples (1)**
53:20
**applicability (1)**

39:22
**applicable (10)**
40:6;42:16;70:10,11,
15;71:3;72:15;74:20;
76:24;77:5
**application (1)**
64:3
**applied (1)**
24:3
**applies (2)**
50:18;65:16
**apply (6)**
23:4;26:16;30:20;
33:4;48:10;65:16
**appreciate (8)**
17:9;43:4;45:7;
49:18;54:23;67:14;
85:24,25
**appreciated (1)**
85:19
**appropriate (6)**
28:15;32:2;34:4;
36:23,25;73:6
**approval (1)**
62:12
**approving (2)**
7:11;44:1
**April (1)**
46:18
**area (1)**
47:10
**argued (1)**
37:17
**arguing (1)**
53:16
**argument (3)**
21:20;60:12,13
**arguments (1)**
18:21
**arises (2)**
51:23;52:9
**arising (1)**
51:25
**Arriva (5)**
46:4,14,15,17;47:1
**articulate (1)**
29:11
**artificial (1)**
21:21
**aside (3)**
33:14;36:15;37:22
**asleep (1)**
63:5
**aspect (1)**
32:7
**assert (1)**
58:15
**asserted (1)**
62:2
**assign (1)**
72:2
**assigned (1)**
76:22

**Association (1)**
18:3
**assume (13)**
19:14,17,20;28:4;
31:2;40:22,23;53:14,
19;59:24;72:1,2,2
**assumed (9)**
33:3;40:5,15,24;
46:13;58:5,10;65:11;
76:22
**assumes (3)**
22:6;46:9;59:13
**assuming (2)**
8:24;59:2
**assumption (8)**
27:24;36:14;48:13;
49:18;50:22;62:13;
71:5;74:24
**attach (1)**
39:11
**attached (2)**
39:13,15
**attempt (3)**
33:6;40:14;56:6
**availability (1)**
39:24
**available (1)**
16:24
**avoid (3)**
50:7;51:22;52:8
**awaiting (1)**
83:8
**aware (3)**
4:22;33:10
**away (4)**
5:10;16:19;41:21;
48:14
**awry (1)**
44:14

## B

**baby (1)**
9:20
**back (18)**
10:10;12:17;13:7;
21:9;25:13;43:24;
46:15;47:14,16;48:10;
54:24;57:14,19;64:8;
68:15,17,18;77:22
**bad (1)**
34:7
**band (1)**
50:9
**Bankruptcy (8)**
3:6;8:9,18;11:16;
24:8;28:7;53:19;63:12
**based (8)**
18:18;24:1;26:12;
28:23;29:23;30:15;
35:15;81:9
**bases (1)**
59:25

Case: 19-30088    Doc# 8066    Filed: 06/22/20    Entered: 06/22/20 14:48:50    Page 89
of 102

**basically (2)**
52:2;55:22
**become (3)**
21:14;49:14;85:9
**becomes (4)**
19:24,25;21:3;26:7
**becoming (1)**
72:24
**bed (2)**
9:20;49:15
**bedtime (1)**
84:14
**began (1)**
44:9
**behalf (9)**
7:19,19;16:2,2;18:7;
57:6;61:3;85:5,21
**believes (1)**
62:18
**bell (1)**
46:15
**belongs (1)**
7:14
**below (1)**
38:16
**benefit (1)**
62:16
**benign (1)**
62:10
**Berkeley (4)**
65:10,11,14;66:13
**best (3)**
44:21;51:22;79:25
**better (3)**
21:19;57:13;80:8
**beyond (1)**
79:12
**big (1)**
17:13
**Boken (1)**
60:21
**both (9)**
16:24;17:14;45:8;
53:22;63:11,11,13,14;
78:16
**bottom (1)**
81:24
**brain (1)**
58:3
**Bray (95)**
45:12,14,17,19,21,
24;46:1,1;47:4,7,15,23,
25;48:2,5,8,17,20,22;
49:2,4;50:2,4,8,10;
51:3,12,16;52:11,12,
18;53:23;54:1,17;55:3;
69:7,14,17,19,24;70:2,
5,6,22;71:6,7,16,19,21;
72:5,9,17;73:3,7,9,17,
19,21,24;74:3,8,16;
75:1,5;77:12,14,23,24;
78:4,8,10,15,20,24;
79:1,7,9,11,14,17;80:5,

13;81:8,9,16,17,21;
82:3,5,10;84:6,23;
85:18,24;86:3
**Bray's (4)**
52:23;53:11;82:16,
18
**breaks (1)**
25:12
**briefly (1)**
46:23
**bring (9)**
6:14;14:10,24;15:1;
17:20;45:11;46:21;
54:12;68:18
**bringing (2)**
3:9,13
**broad (1)**
52:1
**broadening (1)**
64:4
**brush (1)**
34:15
**bucks (1)**
17:13
**burden (7)**
3:24;56:6,6;59:1,3,3,
14
**burdens (1)**
62:4
**burden's (1)**
59:18

**C**

**CAL (1)**
58:14
**calculation (2)**
20:18;68:22
**calendar (3)**
16:18,20;33:15
**CALIFORNIA (6)**
3:1,6;55:15;64:2;
65:10;67:11
**Call (9)**
3:3;4:16;12:20;
14:14,16;15:14;54:11;
68:5,9
**called (2)**
4:11;53:19
**calling (1)**
39:7
**came (4)**
32:8,15;43:3;66:1
**camp (2)**
11:11;29:3
**can (71)**
4:16;5:14,16;6:16;
10:3;11:18;12:17;
13:12;14:2,11;15:3,9,
13;16:3,16,21,24;
19:22;21:21;26:19;
28:15;30:9,11,22;31:3,
9;33:17;34:11,12;

35:10,15;36:15,20;
37:22;38:3;40:22,22;
41:20;42:10;44:24;
46:8;47:21;48:18,19,
19;49:1,3,21;53:21;
54:5,18,25;55:2;61:17,
18;63:16;67:23,25;
68:17;73:10;74:13,13;
75:12;80:18;82:23;
83:1,2,14,21,25;84:10
**care (3)**
8:21;75:9;77:8
**Carlson (1)**
6:22;13:25;14:7
**carve-out (1)**
6:8
**carves (1)**
10:23
**case (15)**
11:18;24:8;26:16;
28:7;30:7,8;39:7;
44:13;46:19,20,21,24;
63:12;84:16;86:3
**cash (12)**
25:1;70:16;71:11;
72:16,18;73:16;74:19,
22;75:12;76:18,24;
77:4
**categories (1)**
53:22
**cents (1)**
23:22
**certain (2)**
47:21;50:7
**certainly (4)**
8:7;37:2;44:22;
84:23
**cetera (2)**
40:3;71:5
**challenge (1)**
85:7
**challenged (1)**
31:9
**chance (3)**
34:9;37:4;84:6
**chances (1)**
25:10
**change (5)**
29:11;42:10;47:3;
64:3;80:11
**changed (1)**
29:4
**changes (2)**
79:6;83:5
**channeled (2)**
52:3,4
**check (2)**
45:12;55:8
**checking (1)**
45:22
**choice (3)**
25:18;49:22,25
**choices (1)**

49:23
**choose (1)**
45:16
**Christmas (1)**
7:7
**circuit (1)**
48:11
**circumstances (1)**
29:4
**cited (4)**
19:3;33:25;34:1;
46:14
**cites (1)**
47:18
**citing (2)**
41:8;46:4
**city (3)**
65:8,14;66:13
**Civil (1)**
57:6
**civility (1)**
85:11
**claim (50)**
12:2;19:5,10,15,24;
20:1,4,14,16,19;21:10,
17,25;22:9,15,17,18,
24;23:3,4,13,17,21;
24:4,7,9,16,17;25:2,14,
15,20;26:5,11,13,18;
27:6,6,10,10,13;28:2,6,
21;44:1;46:14;49:21;
51:16;52:2;81:22
**claimant (29)**
19:11,14,21;20:1,6,7,
13,13,16;21:4,11,20,
25;22:7;23:3,11;24:15;
25:2,16,24;26:2,3,10,
16;28:1,7,8,14;30:21
**claimants (1)**
23:15
**claimants' (1)**
21:10
**claimant's (6)**
20:19;21:17;25:9,10;
28:21;44:1
**claims (7)**
5:6;19:6;23:7;24:1;
37:13;43:14;52:5
**claim's (1)**
22:24
**clarification (5)**
7:3;12:7;34:13;
53:24;67:16
**clarified (1)**
67:7
**clarify (3)**
12:17;34:20;52:7
**class (9)**
19:5;22:8;25:13;
35:9;36:19;37:20;
43:19;44:3;52:5
**classes (1)**
23:9

**cleanly (1)**
49:9
**clear (10)**
6:7;8:1,7;10:11;
13:14;31:6;43:12;
52:23;78:16;79:21
**clearer (1)**
10:12
**clearly (4)**
23:13;28:14;34:21;
39:1
**CLERK (9)**
3:5,11,13;16:16;
45:19;55:5,7;68:16,20
**client (3)**
9:6;11:2;12:6
**clients (11)**
7:14;30:14;43:6;
55:25,25;61:4;65:18,
18;67:1;85:5,10
**client's (2)**
7:10;34:16
**close (3)**
30:8;68:14;69:3
**closed (2)**
43:5;47:9
**Code (10)**
48:25;49:3;50:5,7;
65:4,4;73:13;74:10;
78:18;79:23
**colleague (2)**
46:17;47:1
**colleagues (4)**
3:25;82:20;83:3;
85:21
**colloquies (2)**
7:21,22
**colloquy (3)**
10:8;67:4;81:9
**com (1)**
53:20
**comfort (3)**
62:23;64:21;65:1
**comfortable (1)**
62:25
**coming (6)**
15:2,3;27:23;30:14;
45:14;57:19
**comma (3)**
42:15;70:10,11
**commitment (2)**
15:8;84:12;86:3
**committed (1)**
44:19
**committee (10)**
4:10;5:3;7:8;17:16;
45:10;46:2;47:6;77:22;
81:15;86:1
**committees (3)**
84:22,24,25
**committee's (1)**
17:18
**company (17)**

Case: 19-30088   Doc# 8066   Filed: 06/22/20   Entered: 06/22/20 14:48:50   Page 90
of 102

19:22;20:12;21:2,11,
18;23:15;24:2,4,6,16;
25:6,17;25:26:5;42:24;
67:10;85:22
**compare (1)**
4:5
**complain (1)**
8:22
**completing (1)**
44:4
**complex (1)**
85:6
**complicated (2)**
72:24,25
**complicates (1)**
8:13
**complied (5)**
61:9,10;62:19;66:22;
67:2
**complies (1)**
43:20
**comply (3)**
62:19;63:19;67:6
**comprehensive (1)**
85:6
**compromise (4)**
26:24;27:1,8;30:15
**compromised (6)**
26:25,25;27:4,5,9;
29:3
**compromising (1)**
34:6
**con (1)**
81:5
**concede (1)**
50:24
**conceded (1)**
43:22
**conceding (1)**
42:2
**concept (5)**
30:24;50:23,24;51:1;
53:17
**concepts (1)**
46:7
**concern (2)**
48:9;51:18
**concerned (1)**
4:25
**concerns (1)**
7:20
**concession (1)**
37:17
**concluded (1)**
86:11
**conclusion (1)**
30:1
**concur (2)**
18:22,23
**condition (1)**
37:2
**conditions (3)**
40:16;41:15;42:15

**conduct (1)**
85:12
**confirm (11)**
13:12,19;14:25;15:3;
30:12;35:3;36:12,16,
22;44:24;66:20
**confirmation (27)**
8:4;13:15,21;14:2;
31:6,7,9,15;35:22;37:3,
20;45:1;46:12;47:8;
52:16;55:18,22;56:2;
58:14,23;61:1;65:1;
66:7;68:5;78:16;80:16;
83:17
**confirmed (2)**
36:20;58:4
**confirming (8)**
5:13;7:8,14;15:9;
34:12,14,19;44:14
**conflating (1)**
46:6
**conflict (1)**
37:8
**conformed (1)**
5:14
**confusion (1)**
53:16
**congratulate (3)**
17:8;43:6;84:21
**congratulations (1)**
18:12
**connection (3)**
22:8;24:7,15
**consensual (1)**
46:21
**consider (2)**
8:23;43:5
**considered (2)**
13:11;17:1
**consistent (17)**
13:12;23:11;30:24;
34:22;35:13;41:14;
42:5,15;43:17,17;44:3;
46:9;48:12;50:16;76:9;
80:14;81:5
**consistently (1)**
52:7
**constructed (1)**
7:7
**constructive (1)**
49:16
**consulted (1)**
9:6
**contained (1)**
31:18
**contains (1)**
45:1
**context (1)**
53:3
**continue (1)**
40:7
**continues (1)**
51:24

**contract (17)**
46:9;13;48:13;50:22;
53:13,19;55:21;57:13;
58:5,10;59:2,13;60:24;
61:5;62:3;65:11;76:22
**contracts (5)**
40:5;55:17;56:7;
57:21;59:24
**contractual (4)**
52:2;65:7,10;66:14
**contrary (1)**
40:17
**controversy (2)**
7:18;12:3
**convenience (2)**
16:12;39:16
**conversation (1)**
62:25
**conversion (14)**
20:5;11,20;21:16;
22:1,6;23:1,4;25:1,9,
11;26:20;23;28:22
**convert (1)**
22:9
**converted (1)**
21:12
**converting (2)**
21:2;27:10
**convinced (1)**
19:9
**convinces (2)**
21:8,18
**co-plan (1)**
51:8
**Corporation (1)**
3:8
**correctly (1)**
47:18
**counsel (7)**
16:8;44:12,12,13;
46:2;61:16;85:4
**counter (1)**
59:13
**counterparties (1)**
53:16
**counterparty (4)**
53:13;59:4,14,18
**County (2)**
11:14;65:9
**couple (5)**
4:9;48:22;83:3,18;
84:7
**coupled (1)**
82:5
**course (7)**
7:17;18:1;26:4;46:5;
48:10;50:6;85:22
**Court (340)**
3:3,4,6,7,9,12,15,17,
19,23;4:4,14,20,22;
5:11,13,25;6:2,6,14,24;
7:21;8:2,6,8,21;9:1,8,
19;10:5,16,18,20,25;

11:5,8,11,13,14,21;
12:4,6,10,12,16,23;
13:2,5,7;14:8,10,13,16,
22;15:6,14,18,22,24;
16:4,6,18;17:3,5,13,20,
24;18:4,9,18,19,20,22,
24;22:10,14,19,21,23;
23:11,14,19,21;24:23,
25;25:5,21,24;26:14,
19,22,24;27:11,17,21;
28:9,17,19;29:1,8,17;
30:10;31:19;32:6,14;
33:9;34:5,19;35:1,5,7,
10,12,18,20;36:1,3,7,
11,15,20,25;37:6,8,23;
38:2,4,6,9,11,14,17,19,
21,24;39:3,10,12,14,
17;40:20,22;41:3,12,
16,19,22;42:8,11,17,
21;43:9,21;44:7,11;
45:3,5,7,21;46:3;47:14,
16,24;48:1,4,6,9,21;
49:1,3,22;50:1,3,6,9,
11,19,23;51:10,11,21;
52:11,13,21;53:4,6,10,
12,25;54:2,4,9;55:9;
56:1,8,12,18,20,23;
57:7,9,24;58:2,11,13,
19;59:5,7,10,12,17,21;
60:2,9,11,17;61:3,8,11,
15,24;62:1,7,9,16,21,
24;63:4,11;64:6,11,13,
17,19,22;65:3,22,24;
66:3,5,9,12,18;67:14,
19,21;68:1,2,3,19,21;
69:1,7,11,16,21,25;
70:3,12,17,24;71:4,14,
17,20,22;72:4,8,10,14,
18,21,23,25;73:3,7,20;
74:1,7,11,17,19,25;
75:3,6,9,13,15,17,21;
76:2,5,10,12,14,20;
77:1,18,22;78:1,6,9,11,
19,21,25;79:13;80:4,7,
14,21,24;81:3,5,8,11,
13,15,20,23;82:2,8,11,
19,21,25;83:6,12,14,
21,25;84:3,14,20;
85:12,20,23;86:2,4,8
**courtroom (2)**
16:25;84:10
**Court's (2)**
37:3;39:16
**cover (3)**
39:6;65:21;72:3
**coverage (13)**
33:23,24;34:2;39:21,
23,24;40:11,12,17;
41:1,7,9,10
**covered (3)**
10:11;63:6,10
**covers (4)**
41:25;62:5;63:9;

71:25
**cram (1)**
44:2
**cramdown (2)**
36:17,19
**Cravath (1)**
85:22
**crazy (2)**
27:18,19
**create (1)**
34:22
**creditors' (4)**
4:10;5:2;45:10;46:2
**critical (2)**
19:6;83:7
**cross-examined (1)**
60:21
**curable (1)**
77:4
**cure (48)**
5:24;46:10;48:15,15,
23,24;49:4,18;55:21;
57:14,22;58:10;59:4,
22;60:15,16,18,25;
61:7;63:7;65:12;70:16;
71:8,10,12;72:7,20;
73:11,12,16,25;74:8,
10,14;75:1,3,11,12,17,
23,25;76:8,17,19;
77:10,13;79:3,23
**cured (6)**
49:12;50:4;75:25,25;
77:7;78:17
**cures (2)**
60:19;62:3
**curing (4)**
48:2;75:18,20,21
**currently (1)**
23:5

## D

**D&O (2)**
40:3,12
**damage (1)**
43:14
**damages (2)**
24:10,18
**date (7)**
22:25;29:2,24;40:4;
56:2,12;76:24
**dates (1)**
16:24
**day (15)**
5:19;18:7;23:3;
24:14;26:16;27:13;
28:1;29:2;42:25;44:15;
45:23;46:3;52:24;
63:18;66:19
**days (16)**
16:21,22;17:12;
28:23;56:1;57:14;58:1,
6,8;61:12;62:11,16;

Case: 19-30088    Doc# 8066    Filed: 06/22/20    Entered: 06/22/20 14:48:50    Page 91
of 102

63:20;65:12;66:15;
67:3
**deadline (2)**
58:15,18
**deal (8)**
7:2;10:22;13:11;
17:16;21:2;36:17,18;
37:1
**dealing (1)**
68:5
**dealt (8)**
14:2;30:6;37:5,7;
47:21;48:18,19,19
**Debra (3)**
14:14,16;16:1
**debtor (6)**
7:25;25:7;40:4;49:6,
18;53:14;59:13,17;
62:12;63:15;65:8;
79:22
**debtors (14)**
3:22;7:13;12:24;
40:6,6;51:22;55:20,23;
56:9;59:1;65:17;72:1,
2;79:2
**debtors' (5)**
47:9,12,22;49:7;
52:14
**decide (5)**
11:16;18:15;31:1;
36:25;37:11
**decided (2)**
46:17;56:10
**decision (15)**
5:19;7:1;18:18;19:9;
36:21;43:23;46:17,22,
25;49:15;51:19;52:8,
17,18,20
**deduction (6)**
29:15;35:25;37:1,11,
21;38:15
**deemed (1)**
40:4
**def (1)**
73:10
**default (23)**
46:10;47:19,20;
48:15;54:5,20;59:15,
18;70:10;71:9,12;72:6,
14;73:12,18;74:10;
75:2,18,19;76:22;77:4,
6;78:5
**defaults (23)**
47:21;48:3,15,18,24;
49:8,10,12;50:3;51:3;
57:21;58:16;59:14;
70:1;72:15;74:5;75:9;
77:25;78:4,17;79:3,19,
24
**define (1)**
39:20
**defined (5)**
39:25;52:24;65:17;

66:9;75:11
**defines (3)**
65:3,4,4
**definition (36)**
29:15;32:10,20;
33:20,23,24;37:14;
38:13,14;39:4,5;40:10,
23;41:2,4,7,7,9,23;
43:15;51:24;52:23;
66:5;71:8,10,13,14,18;
73:11,24;74:6,14;75:3,
22;76:1;77:10
**definitional (2)**
33:7;75:7
**definitions (2)**
64:7;76:15
**delay (2)**
34:14;55:13
**delete (6)**
70:25;78:2;80:1,10,
23;81:1
**deleted (2)**
78:4,5
**deleting (1)**
70:7
**deliver (1)**
28:13
**demonstrates (1)**
10:9
**Dennis (1)**
3:7
**Department (1)**
57:6
**deputy (2)**
16:25;84:10
**descends (1)**
60:3
**describes (1)**
41:9
**describing (2)**
42:4,6
**description (1)**
41:1
**designated (1)**
16:21
**desire (1)**
37:4
**determination (3)**
26:12;35:15;36:9
**determine (5)**
21:17;22:23;24:5,9,
14
**determined (2)**
20:4;24:7
**determines (1)**
22:15
**determining (1)**
43:25
**die (1)**
65:12
**difference (2)**
42:23;79:17
**different (18)**

13:4,5,6;27:23;
28:23;29:1,4,5,5,5,18;
40:23;54:15;59:21,22;
60:11;61:23;67:5
**digress (1)**
45:22
**diligently (1)**
85:10
**diluted (1)**
23:1
**diluting (1)**
28:6
**directors (3)**
24:1,2;42:24
**disagree (1)**
50:20
**disagreed (1)**
46:25
**disagreement (1)**
47:10
**discharge (1)**
12:2
**disclosure (2)**
63:9;79:21
**discrete (9)**
4:6,6;16;14:2;16:23;
18:17;35:24;36:13,21;
37:14
**discuss (2)**
14:19;51:8
**discussion (1)**
47:11
**discussions (2)**
14:18;19:8
**disposed (1)**
5:1
**dispute (2)**
53:3;58:9
**disputed (1)**
38:14
**disputes (1)**
7:9
**distinction (2)**
19:4;79:19
**distributing (1)**
73:16
**distribution (4)**
22:17;28:6;71:12;
74:23
**District (8)**
3:6;4:8;6:3,23;8:18;
63:24,25;65:5
**Division (1)**
57:6
**dock (1)**
34:19
**docket (2)**
58:21;60:1
**document (7)**
10:3;38:4,8,8;52:14;
56:20;60:15
**documents (8)**
5:5,9;12:25;13:1;

16:10,10;34:23;83:19
**Dog (1)**
55:19
**dollar (4)**
19:24;23:23;27:10;
76:3
**dollars (29)**
19:16;20:6,13,13,16,
17,22;21:13;22:12,12;
23:3,16;25:2,6,7,15,24;
26:3,12,18;28:21;30:6,
6,23;59:18,19;75:23;
76:1,8
**dollars' (2)**
23:5;26:10
**domain (8)**
6:8;7:17,20;10:23;
11:3,16,25,25
**done (26)**
5:20;7:2;13:11;31:3;
36:5;37:9;43:4;61:8,8,
12,19,23;63:13,14,17;
64:7,14,14,20,21;80:2;
81:4;82:4,7;84:16;
85:14
**down (6)**
4:4;8:8;37:19;38:12;
44:2;69:3
**dozens (3)**
8:11,12,12
**draft (4)**
31:13,14;44:25;
60:25
**drafted (2)**
29:22;32:9
**drafting (3)**
51:17;81:11,13
**duty (1)**
14:16

# E

**earlier (3)**
13:24;21:15;46:18
**early (1)**
26:9
**easily (2)**
26:21;73:10
**effect (4)**
40:7;15;42:1;43:23
**effective (7)**
19:25;21:3;22:25;
34:12;40:4;76:24;85:9
**efforts (4)**
43:4;45:8;85:16;
86:1
**eight (1)**
30:17
**eight-line (1)**
9:3
**eighty (2)**
20:17;28:14
**either (10)**

15:2;16:21;23:23;
44:15;49:13,20;54:21;
55:3;77:19;79:20
**element (1)**
76:18
**else (11)**
3:10;8:14;35:21;
52:9;54:6,7;56:2;
57:22;58:17,21;77:11
**embodies (1)**
37:16
**eminent (8)**
6:8;7:17,20;10:23;
11:3,16,24,25
**emphasize (1)**
60:14
**Employees (1)**
18:2
**encompass (2)**
76:17,18
**end (12)**
7:6;20:22;23:3;24:14;
26:16;27:13;28:1;
42:15;43:4;68:21;
80:23;86:8
**enough (2)**
62:25;68:24
**enter (4)**
35:22;82:22;83:14;
84:1
**entered (1)**
84:15
**entirely (2)**
63:1;76:9
**entitled (8)**
11:6;20:17;21:22;
22:10,11,14;23:8;
57:21
**equitable (2)**
35:14;44:2
**equitably (2)**
35:13;44:3
**especially (1)**
36:9
**essentially (2)**
47:13;57:15
**et (2)**
40:3;71:5
**Etkin (68)**
4:17;17:21,22,23;
18:1,2,16,21,24;24:
22:5,13,16,20,22;23:2,
14,18,20,24;24:23,23,
24,25;25:4,19,23;26:1,
15,20,23,25;27:8,12,
19,22;29:2,8,14,23;
31:1,5;32:3,5,7,17;
33:9;34:5;39:3,8,11,13,
15,18;41:2,10,13,17;
42:8,11,18,19;43:3,21;
44:5,8,11;45:7;84:6
**Etkin's (1)**
34:16

Case: 19-30088    Doc# 8066    Filed: 06/22/20    Entered: 06/22/20 14:48:50    Page 92
of 102

evaluate (1)
19:10
even (11)
3:20;11:16;14:3;
30:8;31:8;32:14;34:9;
50:15;52:4;60:5;85:4
event (1)
14:17
everybody (6)
8:14;32:16;37:4;
57:12,22;58:21
everybody's (2)
44:19;56:4
everyone (4)
58:17;67:25;69:2;
85:7
exact (4)
10:8;11:2;54:25;
60:13
exactly (9)
10:9,13;12:18;24:11;
28:13,18;29:7;49:4;
70:2
example (3)
24:1,24;26:1
exceeds (1)
24:6
except (1)
51:3
excess (1)
24:17
exchange (2)
12:13;82:6
excuse (11)
5:5;15:16;20:8,22;
21:6,9,19;22:1;45:8;
48:16;80:9
executory (13)
40:5;46:9,13;48:13;
50:22;55:17,21;56:7;
57:12;59:23;60:24;
61:5;62:2
Exhibit (3)
31:16;38:7;45:2
exist (1)
41:23
expand (1)
50:1
expanding (1)
74:14
expect (2)
31:7,23
experienced (3)
63:12,12;66:20
extend (1)
62:12
extent (8)
15:20;29:9;42:22;
68:6;71:2,5;79:3,23
extra (1)
57:25

# F

face (1)
24:8
fact (11)
5:5,21;20:15;23:7;
24:12;26:4;33:1;35:23;
36:20;57:13;75:24
factor (1)
24:14
facts (1)
26:15
fair (7)
10:20;29:23;35:14;
36:24;37:4;44:1,3
fairly (1)
35:13
faithful (2)
20:10;50:14
fall (1)
36:8
family (1)
16:2
fan (1)
19:3
fancy (1)
38:24
far (1)
4:24
fast (1)
73:21
faulting (1)
67:15
federal (1)
85:2
feel (2)
51:4;57:19
feelings (1)
7:3
few (2)
8:4;17:12
fifteen (2)
68:25;69:4
fifteen-minute (1)
67:23
fifth (1)
38:8
figure (5)
8:3;19:5;29:22;
30:11,13
file (7)
5:8;33:11;56:1;
82:14,15;83:18;84:11
filed (27)
4:19;5:17:7:2;26:9;
31:14,15,20,21;32:8,
15;33:10;38:1;44:9;
45:1;47:18;58:20,22;
59:23;60:1,2,15;61:1,4,
7;63:7;70:23;78:7
filing (3)
9:2;45:2;56:13

filings (1)
18:14
final (3)
5:9;12:19;16:9
finality (1)
13:22
finalized (1)
5:7
find (6)
14:21;39:5;51:21;
66:6;69:24;81:21
finding (2)
7:24;45:17
findings (2)
5:21;35:3
fine (17)
8:11,20,25;9:9;10:2,
6;49:20;54:1;55:23;
56:3;57:20,20;64:16;
67:14;81:10;82:6;
83:10
finish (1)
9:13
fire (15)
5:6,6;17:7,8;29:3;
49:21;51:11,12,16;
52:3,4;53:13,18;58:14;
81:22
fires (1)
52:1
firm (2)
85:21,22
first (13)
3:10;4:24,25;9:13;
22:3;30:20;37:10;47:7;
49:25;69:25;70:8,8;
72:10
five (1)
78:3
fix (10)
48:17,23;54:21;71:8,
22;73:10;77:19,24;
79:21;84:4
fixable (1)
75:10
fixed (3)
20:19;54:20;73:13
fixes (3)
48:22;49:20;81:10
fixing (1)
19:16
flagging (1)
65:19
flood (1)
63:25
fly (1)
11:6
focused (1)
50:12
folks (1)
30:2
follow (3)
10:3,4;70:6

following (1)
19:1
fooled (1)
18:9
footnote (5)
39:8,19;40:19;41:4,5
force (1)
40:7
foremost (1)
85:22
forgot (1)
52:14
form (2)
5:9;48:21
formal (1)
82:15
formula (23)
19:17,20;21:16;22:7,
24;23:1,4,6;26:3,17,20,
23;27:3,4,4,9,12;28:10,
13,22;30:19;33:20;
36:5
formulas (1)
34:13
forth (6)
10:10;32:23;35:16;
40:18;45:2;58:9
forward (4)
11:15;34:2;57:22;
59:4
four (6)
4:5;29:1,3;78:3;
81:23,24
fourth (1)
52:13
FRANCISCO (1)
3:1
frankly (3)
6:4;50:17,21
fraud (1)
19:14
free (1)
11:15
frequently (1)
84:10
FRIDAY (1)
3:1
front (3)
8:8;9:23;39:4
frozen (2)
55:4,7
full (13)
12:14;20:5,11;21:1,
6,13;22:4,8,12;23:8;
27:15;28:8;40:7
fullest (1)
71:2,5
function (3)
22:16,17;36:5
fund (1)
25:9
further (4)
28:5;37:19;47:20;

67:4
future (1)
67:6

# G

gave (3)
57:13,25;73:3
general (1)
52:5
generally (2)
39:6;42:3
gentlemen (2)
18:9;82:12
gets (11)
20:20;21:4,20;22:2;
25:13,25;28:1;43:24;
47:14,16;48:10
given (7)
20:1;29:12;48:11;
60:21;64:25;67:16;
68:12
gives (2)
50:7;61:12
giving (2)
27:5;34:7
glad (1)
85:15
Glassman (25)
6:15,15,18,21,22,24;
7:16;8:6,20;9:10,12,14,
24;10:2,4,7,18;11:13,
20,22;12:5,9,11,13,15
Glassman's (1)
9:2
goal (1)
8:17
goes (3)
16:19;33:20;44:14
good (23)
3:4,4,5,5,14,15,18,
18;6:18,21;13:16,16,
18;15:6,22,23;17:22,
23;18:4,6;45:24;46:1;
86:5
Gotshal (1)
3:22
gover (1)
59:7
governed (4)
50:15;56:3;66:14,16
government (5)
57:8,16,16,25;67:11
governmental (18)
55:20,25;61:11,16;
62:2;63:5,24;64:4;
65:2,3,4,5,8,16,17;
66:5;85:1,3
governs (1)
39:21
grant (1)
12:8
Grassgreen (18)

Case: 19-30088    Doc# 8066    Filed: 06/22/20    Entered: 06/22/20 14:48:50    Page 93
of 102

13:2,7,13,19,25;14:6,
8,8,23,23;15:2,22,23;
16:1,1,5,7;17:2
**Grassgreen's (1)**
14:1
**great (1)**
15:6
**Greengrass (1)**
14:6
**Gregory (1)**
46:1
**group (2)**
38:22;39:2
**GUC (1)**
52:5
**guess (8)**
3:9;17:21;21:14;
45:11,13;53:10;76:12;
81:1
**guidance (1)**
84:18
**guise (1)**
36:21
**guy (2)**
20:11;57:9
**guys (1)**
64:6

## H

**ha-ha (1)**
63:19
**hand (8)**
13:3,9;14:23;15:1;
19:5;45:13;54:8;68:4
**hands (1)**
12:14
**handy (1)**
69:15
**happen (9)**
21:14;23:14;24:25;
27:22;28:3,4,5;44:18;
61:18
**happened (2)**
43:18;82:16
**happening (1)**
17:9
**happens (3)**
37:1;58:5,6
**happy (4)**
8:23;19:18;31:22;
85:15
**hard (3)**
17:12;42:22;85:16
**harm (1)**
66:23
**harmed (1)**
53:18
**heads (1)**
84:10
**hear (10)**
6:17;10:12;12:18;
14:5;16:3;31:22;47:4,

6;55:2;83:8
**heard (10)**
6:15;13:20,24;14:24,
25;41:1;44:23;54:10;
68:6,7
**hearing (6)**
10:7;17:6;31:14;
44:9;68:9;69:9
**helping (1)**
43:7
**here's (3)**
29:17;52:15;69:12
**hey (1)**
59:14
**highest (2)**
85:11,12
**hold (3)**
13:15;14:22;68:3
**HoldCo (1)**
43:14
**homework (1)**
64:7
**Honor (107)**
3:13,16;6:13,21;
7:16;8:20;9:5,10,14;
10:24;11:22;12:9,15;
13:18,24;14:1,3,4;15:5,
23;16:3,7,11;17:2,23;
18:1,6,16,23;22:5;
23:10,25;24:19;25:4;
26:2,21;27:9,12,20;
28:12,18;31:12;32:4,5,
13,17;33:19;34:25;
35:23;36:10;37:10,17;
39:8;40:1,9,21,25;
41:11;42:7,20;43:8,11;
44:5,24;45:19;46:1;
47:7,25;48:20;49:13,
20;50:17;51:16;52:6;
53:9,23;54:23;55:2,14,
16;56:17;57:5;58:20;
59:22;60:13,20;61:21;
62:18;63:1,6;64:1,9,
24;65:15;67:9,18,22;
68:16;71:7;73:23,24;
77:21;78:15;80:13;
81:10;85:18,24
**Honorable (1)**
3:7
**hook (1)**
21:1
**hope (1)**
14:18
**hopefully (3)**
14:20;69:12;85:8
**hoping (1)**
44:18
**hours (5)**
4:19;34:7;83:3,18;
84:7
**housekeeping (1)**
44:5
**huge (1)**

3:24
**Huh (1)**
48:1
**hundred (11)**
7:10;12:7;19:22;
20:1;21:4;22:1;23:12,
22;24:6;25:19;28:2
**hurt (1)**
7:3
**husband (1)**
16:2
**hypothetical (15)**
19:1,13,23;20:19;
21:23,24,25;22:22;
25:22;26:2;27:25;
28:12,14,23;66:13
**hypotheticals (1)**
18:25

## I

**ideally (1)**
15:8
**identified (1)**
39:4
**identify (3)**
38:21;39:2,19
**ignore (4)**
6:25;24:12;61:17;
63:16
**ignores (1)**
26:4
**imagination (1)**
27:20
**imagine (1)**
42:22
**immediately (1)**
44:25
**impaired (2)**
23:9;46:14
**implement (2)**
31:11;32:1
**implemented (2)**
30:4;31:12
**important (2)**
26:8;85:14
**importing (1)**
41:23
**impose (1)**
51:7
**inaccurate (1)**
41:2
**inappropriate (1)**
40:15
**inclination (1)**
60:18
**inclined (1)**
54:16
**include (3)**
43:13;50:3;65:17
**including (5)**
8:5;33:15;40:2,17;
62:3

**inclusion (1)**
79:18
**inconsistent (1)**
76:14
**inconsistently (1)**
44:17
**incorporate (3)**
5:18;41:3,6
**incorporated (4)**
15:18,21;32:11;
37:15
**indemnify (1)**
42:24
**indent (1)**
81:23
**indented (1)**
78:11
**indicate (2)**
36:11;40:14
**indicated (3)**
7:22;35:17;40:18
**indication (1)**
11:24
**individual (6)**
7:9;16:1;21:17;22:7;
25:8;85:4
**indulge (2)**
51:9;68:2
**information (1)**
5:24
**initially (1)**
29:24
**initials (1)**
11:18
**instead (1)**
28:19
**institutional (1)**
17:8
**instrumentality (1)**
64:2
**insurance (32)**
19:21;20:12;21:11,
15;23:15;24:13,15,20;
25:6,17,25;26:4,6,7,11;
28:5;29:15;30:21,22;
32:24;33:2;35:24;36:6,
25;37:11,21;38:15;
40:2,3,11,12;41:8
**insurers (1)**
20:12
**intention (1)**
5:8
**intentional (1)**
50:13
**intentionally (1)**
44:16
**Internal (1)**
65:6
**interpretation (1)**
49:11
**interpreted (1)**
52:1
**into (18)**

8:11;14:10;15:18;
24:20;27:10;28:15,24;
32:11;33:20;40:14;
41:4,23;50:13;51:18;
52:4;65:1;74:5;86:4
**investors (1)**
29:5
**involves (1)**
37:20
**involving (1)**
4:7
**irresponsible (1)**
67:12
**Irrigation (5)**
4:8;6:3,23;8:17;
63:24
**issue (61)**
4:8,11,23;5:3,23;
7:17,18;11:4;13:3,4,5,
6,21,24;14:2;15:3,15;
17:17;18:15;17;19:18;
29:19,20;31:6;32:18,
20,20;35:24;24;36:9,
13,21;37:11,12,19,20;
41:21;43:5,25;45:9;
46:5;47:4,8;49:9,16,
19;51:14;52:6,19;53:8,
24;54:4,13;55:16;
62:20;65:20;71:11,13;
74:4;79:17;82:17
**issued (3)**
7:1;19:25;46:24
**issues (18)**
4:9;5:2;8:18;12:19;
14:19;15:15;17:19;
19:10;43:1;47:9;49:15;
55:21;60:25;61:5;62:3;
65:20;68:5;82:18
**items (2)**
4:3,5
**Ivanhoe (16)**
20:3,10,10,14,24,25;
21:2;23:11,13,19,21,
22;25:1;30:6,19,24

## J

**January (1)**
37:5
**Jellen (3)**
46:17,22;47:1
**jeopardize (1)**
67:12
**Jim (2)**
18:7;37:10
**Joaquin (5)**
4:7,23;6:3,23;11:14
**Johnson (2)**
17:21;83:23
**Johnston (58)**
4:17;18:5,6,7,22,23;
27:17,21;28:9,11,12,
17,18,25;29:7,24;

Case: 19-30088    Doc# 8066    Filed: 06/22/20    Entered: 06/22/20 14:48:50    Page 94
of 102

31:10,12;32:4;33:17,
19;34:21;35:17;37:10,
10,23;38:1,3,5,7,10,12,
16,18,20,23;39:1;
40:18,21,24,25;41:5,
17,19,20;42:2,6,10,13,
14;43:6,11;44:20,22,
24;45:4,6,8
**Johnston's (1)**
27:2
**joining (1)**
45:19
**joint (1)**
16:9
**Jones (1)**
18:7
**judge (14)**
8:8;11:14,19;14:17,
18;17:4,11;43:6;46:17,
19,22;47:1;55:8;76:6
**Julian (1)**
45:14;84:24
**July (1)**
5:4
**jumped (1)**
60:23
**JUNE (4)**
3:1;37:6,7;56:14
**Justice (1)**
57:6

**K**

**Karotkin (229)**
3:9,13,14,15,16,18,
21,21,24;4:13,15,21,
23;5:12,16;6:1,4,7;7:6;
8:21,23;9:5,9,11,13,19;
10:6,13,15,17,19,24;
11:1,6,8,10,12;12:13,
17,22,24;13:4,6,10,20,
23;15:7,10,12,17,20;
17:15,18;19:2;34:25;
35:2,6,8,11,15,19,21;
36:2,4,8;37:7;43:8,10,
12;44:20;45:11,21;
46:3;47:5,18;48:9;
49:22,24;50:11,17,20;
51:6,14,15;52:20,22;
53:5,7,11;54:2,3,7,14,
23;55:4,6;56:15;57:1,
2,9,11,25;58:8,12,17;
59:3,6,8,11;60:10,16,
22,23;61:3,7,9,14;
62:15,18,22;63:10,18;
64:9,12,16,18,20,25;
65:25;66:4,10,12,16,
22;67:5,9,22;68:2,11,
13,22,25;69:7,10,12,
18,20,22;70:4,7,14,18,
23,25;71:23,24;72:10,
13,20,22,24;73:2,5,15,
18,21,23;74:12,18,22;

75:8,11,13,14,16,20,
23;76:4,6,11,13,16,21;
77:9,13,17,21;78:2,13;
79:5,8,10,12,15,25;
80:5,18,22,25;81:4,6,
12,14,17,22,24;82:4,7,
9,11,13,14,20,24;83:2,
10,13,16,22;84:2,9,13,
17;85:17,19,21;86:6,7,
10
**Karotkin's (1)**
8:15
**keep (6)**
19:2;22:3;60:17;
68:13,16;70:15
**keeping (2)**
37:3;71:2
**kick (1)**
39:23
**kicked (2)**
30:9;37:19
**kicks (1)**
39:23
**kind (2)**
8:2;44:25
**knew (1)**
28:20
**knowing (2)**
25:8;30:20
**knowledge (1)**
29:5
**known (1)**
42:3
**knows (2)**
27:3;86:6

**L**

**LAFCo (1)**
12:1
**landed (1)**
16:10
**language (41)**
7:23;9:2,15,17,25;
10:1,3,9;11:23;31:16,
18;32:9;33:5,6,13,14;
34:2,2;37:24;39:1,21;
40:9;41:14,14,20;45:1;
49:5,8;52:10,14;53:6,
8;54:2;64:1;70:19,20;
79:15,18;81:18;83:22,
23
**largely (1)**
4:18
**last (18)**
3:25;4:2,19;5:3;
9:23;17:12;32:18;
37:17;38:1;44:5;45:2;
51:14;55:24;56:5;
58:24;61:6;67:9;81:19
**last-minute (1)**
84:8
**lately (1)**

84:23
**later (4)**
5:8;33:17;34:7;77:4
**latest (1)**
9:2
**law (3)**
20:25;62:20;71:3
**laws (1)**
19:15
**lawsuit (1)**
9:16
**lawyers (7)**
17:7;53:15;63:12;
66:20;67:15;84:25;
85:10
**lays (1)**
8:10
**lead (2)**
7:19;29:15
**leads (1)**
71:5
**least (3)**
31:4;44:24;53:9
**leave (6)**
15:1;29:20;32:1;
34:19;42:25;68:9
**leaving (2)**
36:15;43:2
**leeway (1)**
60:22
**left (5)**
21:4;29:20;30:3;
54:4;69:8
**legal (1)**
85:11
**less (2)**
26:17;27:14
**lesser (1)**
21:12
**liability (1)**
40:3
**light (1)**
44:15
**liked (2)**
53:6,7
**likely (2)**
21:13;51:6
**likes (1)**
19:2
**Likewise (1)**
85:24
**limbo (1)**
57:18
**limited (2)**
64:1;75:4
**line (5)**
52:13;66:10;70:8,9;
71:1
**lines (1)**
63:17
**liquidated (6)**
19:16;21:10;24:4,16;
25:11;26:5

**list (4)**
4:12,15;45:18;59:23
**listen (2)**
8:6;42:11
**lists (1)**
4:6
**literally (1)**
29:21
**litigants (1)**
46:20
**litigation (5)**
4:9,16;6:12;7:13;8:2
**little (7)**
13:8;31:24;36:11;
48:6;60:22;65:8;68:24
**live (3)**
7:17;8:2;53:3
**lives (1)**
7:12
**LLP (1)**
46:2
**local (2)**
63:25;65:8
**log (2)**
68:17,17
**logic (1)**
51:17
**logical (1)**
49:11
**long (3)**
8:12;25:11;46:19
**longer (3)**
36:18;62:11;68:24
**look (30)**
9:25;11:1,6;12:13;
14:11;31:1;32:14;
33:25;34:5,9;37:24;
38:7;39:8,17;40:1;
44:10,20,21;60:18,25;
64:8;66:25;71:10;73:9,
15;75:13;76:21;79:13,
14;80:19
**looked (3)**
32:15;33:11;47:24
**looking (9)**
8:2;11:13;56:12;
66:8;74:2;75:14,16;
77:9;80:21
**looks (1)**
7:7
**loop (1)**
47:17
**loose (1)**
18:10
**lopping (1)**
24:21
**lose (2)**
67:6,7
**loss (2)**
24:10,17
**lost (1)**
4:10
**lot (5)**

14:4;17:11;25:16;
62:10;67:10
**lots (1)**
68:7
**love (1)**
18:25
**lovefest (1)**
86:4
**low (1)**
75:17
**Lowenstein (1)**
18:2
**luxury (1)**
25:8

**M**

**MacConaghy (2)**
15:16;17:6
**main (1)**
84:23
**makes (3)**
41:20;57:11;60:4
**making (1)**
37:5
**manage (1)**
84:15
**Manges (1)**
3:22
**manner (1)**
14:3
**many (4)**
43:20;61:4;83:4;
85:9
**marked (1)**
71:20
**market (2)**
29:6;30:17
**math (1)**
19:23
**Matter (7)**
3:8;4:6;7:1;16:15;
33:16;51:2;62:17
**matters (2)**
5:15;77:7
**Matthew (1)**
57:5
**maximum (1)**
25:7
**may (11)**
7:22;16:22;26:6;
32:5;34:21;53:1;54:10;
56:6;63:8;76:2,2
**maybe (10)**
4:7;7:3,4;12:18;
19:8;30:20;48:14;
58:25;63:22;79:16
**mean (26)**
5:17;15:15;34:14;
35:13;38:9;40:22;46:4;
50:11;52:2,22;53:10;
57:11,20;61:18,19;
62:7,11,12;64:6,25;

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(7) Johnston's - mean
Page 95

Case: 19-30088    Doc# 8066    Filed: 06/22/20    Entered: 06/22/20 14:48:50    Page 95
of 102

65:5;66:21;72:6;73:1;
79:16;83:12
**meaning (1)**
5:5
**means (5)**
32:23;42:2;61:22,22;
71:11
**meant (1)**
69:22
**measure (1)**
50:25
**mediated (1)**
19:18
**mediator (2)**
18:10;46:18
**memorandum (4)**
5:19;19:7,9;43:23
**memorialize (1)**
7:24
**memorializes (1)**
7:12
**mention (2)**
11:17;46:7
**mentioned (2)**
13:23;79:15
**merits (1)**
26:12
**methodology (3)**
27:5,9;28:20
**Mexico (1)**
18:3
**Michael (1)**
18:2
**middle (1)**
66:10
**might (6)**
27:18;51:14;53:12,
12;63:4;74:20
**Milbank (1)**
46:2
**milestones (1)**
29:4
**million (3)**
25:15,24;37:23
**million-dollar (1)**
25:16
**mind (8)**
17:19;19:2;29:21;
30:14;31:17;55:1;
60:17;80:9
**minute (2)**
14:23;51:13
**minutes (8)**
32:19;44:9;66:19;
68:15,23;69:1,4;78:14
**missing (2)**
71:17;79:16
**misunderstanding (2)**
55:1;81:18
**mixed (2)**
14:9;44:16
**modified (2)**
5:18;43:13

**modify (2)**
43:15;44:17
**Molton (15)**
13:9,9,13,16,18;14:9,
12,14,17;15:2,5,16;
17:4,5,11
**moment (3)**
3:11;34:23;55:7
**Monday (1)**
83:9
**monetary (30)**
47:20;48:3;49:7,10;
70:1,8;71:1,9,12;
72:11;73:12,16,22;
74:5;75:1,17;77:3,25;
78:12,17;79:3;80:2,10,
14,15,17,23;81:2,25;
82:1
**money (9)**
20:21;21:2,5,6,7,11;
22:3;24:3;25:17
**monitoring (1)**
69:2
**Montali (2)**
3:7;55:8
**more (9)**
7:24;10:12;11:23;
20:15;21:13,22,23;
23:12,22;25:5,16,19,
21;37:18;51:6;54:16;
75:3
**morning (16)**
3:4,5;13:16;26:9;
31:20;32:8,15;33:12,
16,22;47:19;70:23;
78:7;79:15;80:6,20
**most (2)**
53:21;56:13
**motion (2)**
48:14;58:14
**movement (1)**
49:19
**moving (3)**
16:10;31:21;44:19
**much (8)**
17:2;22:23;46:4,8;
54:6;67:16;85:19,25
**multiplying (1)**
27:13
**municipalities (1)**
85:3
**muster (2)**
46:11,11
**mute (2)**
68:14;69:3
**mystery (1)**
18:10

**N**

**name (5)**
3:19;11:18;17:25;
38:25;46:4

**named (1)**
46:20
**narrow (2)**
49:19;50:9
**necessarily (1)**
76:17
**necessary (10)**
6:12;16:22;34:20;
67:4;72:1;74:23;77:11;
82:23,25;84:5
**neck (1)**
8:8
**need (20)**
3:19;9:11,23;14:21,
25;17:24;27:17;45:15;
57:9;62:20,22;63:14;
64:21;66:23;71:8;74:9;
75:12;78:15;82:14,22
**needs (5)**
4:6;9:20;13:13;61:2;
77:6
**negotiated (2)**
28:22;52:25
**neither (2)**
9:24,24;73:5
**new (9)**
5:18;18:3;32:9;
38:14;41:4;56:15,15;
60:25;74:1
**news (2)**
8:13;15:6
**Newsome (1)**
43:7
**next (9)**
14:3,5;16:9,12,13,
18;38:17;44:15;82:13
**night (2)**
38:1;45:2
**ninety (11)**
56:1;57:14,25;58:6,
8;61:12;62:16;63:20;
65:12;66:15;67:3
**ninety-first (1)**
63:18
**nitpick (1)**
80:7
**nobody (3)**
8:18;56:2;84:5
**non (1)**
78:5
**non- (1)**
76:20
**noncash (1)**
77:7
**nonconsenting (1)**
36:19
**nondiscriminatorily (1)**
44:3
**nonissue (1)**
21:14
**nonmonetaries (1)**
50:9
**nonmonetary (31)**

47:11,21;48:4,18,24;
49:7;50:3;51:3;54:5,
19;70:3;71:1,17;72:5,
6;74:10;75:9,19;77:6;
78:4,5,12,17;79:3,18,
24;80:2,15,17,23;81:25
**Northern (1)**
3:6
**notes (1)**
70:16
**notice (2)**
33:10,11
**noticed (1)**
33:13
**notion (1)**
46:10
**November (1)**
30:16
**number (8)**
4:11;11:18;15:4,15;
27:14,25;60:15;84:25

**O**

**objected (1)**
34:3
**objecting (1)**
56:5
**objection (9)**
31:18;34:17;36:16,
18;58:9,20;59:23;
60:15;63:8
**objections (2)**
58:22;68:8
**objectors (2)**
12:20;13:23
**obvious (1)**
46:8
**obviously (2)**
32:18;84:5
**OCC (1)**
17:16
**occasion (1)**
56:24
**o'clock (1)**
33:12
**OCP (1)**
15:19
**October (3)**
29:2,25;30:16
**off (6)**
19:19;21:1;24:13,21;
28:5;55:21
**offered (3)**
34:8;44:23;54:17
**offering (1)**
54:21
**Office (1)**
65:6
**officers (4)**
24:1,3;42:24;85:12
**official (1)**
84:22

**offline (2)**
16:16;68:14
**once (3)**
16:9;23:4;24:4
**one (47)**
4:8;5:10,12;6:10;
7:22;9:20;11:11,23;
12:6;13:21;18:11,17;
19:5,10,14;23:15;29:1,
2;30:9;31:1;32:7,16;
37:2;38:17;41:5;43:2,
7;44:5;48:23;49:13,23;
52:25;54:18,18;55:7;
56:14,23,24;63:22;
64:24;66:18;67:9,17;
70:12,21;80:7;85:20
**one-half (1)**
33:9
**only (16)**
4:4;20:17;24:13;
25:3;27:22;30:8;32:8;
36:19;40:22;47:10;
48:2;49:10,12;71:7,8;
74:5
**onto (2)**
7:8;16:25
**oOo- (1)**
3:2
**open (2)**
18:15;19:10
**operates (1)**
38:25
**operating (1)**
34:1
**operation (1)**
53:18
**operative (4)**
34:23;41:8,25;60:3
**opportunity (5)**
9:14;11:1;24:8;
44:10,11
**oppose (1)**
31:7
**opposed (2)**
7:11;23:9
**opposition (1)**
64:5
**option (1)**
49:6
**oral (2)**
35:12;43:23
**oranges (1)**
53:21
**order (58)**
3:3;5:13,18,20;7:8,
11,14;8:5,10,14,19;9:3,
4,15;10:2;11:18;12:8,
14;15:8;31:4,9,15;
34:12;35:2,22;43:18,
19,23;44:8,14;45:1;
47:8;51:18;52:16;
55:18;58:23;61:1;
62:23;63:8,9;64:21;

Case: 19-30088    Doc# 8066    Filed: 06/22/20    Entered: 06/22/20 14:48:50    Page 96
of 102

65:1,1;66:8;71:22;
78:16,25;79:22;80:16;
82:23;83:8,14,17,25;
84:4,12,15;85:12
**originally (1)**
29:23
**others (2)**
7:19;17:6
**Otherwise (2)**
47:12;82:20
**ought (3)**
8:7;53:2;77:19
**out (36)**
8:3,10;10:23;16:15;
17:14;19:5,10;22:3;
24:17;25:15;26:8;
27:14,23;29:22;30:11,
13;34:15;36:4;41:23,
24;43:1,3;51:25;53:1,
13,17;56:10,21;57:18;
68:14,17;69:8;80:8,15,
15;85:7
**outcome (3)**
29:23;31:8;47:3
**over (4)**
3:24;4:19;30:16;
34:15
**overloading (2)**
58:2,3
**overpaid (1)**
30:25
**oversee (1)**
85:13
**owed (2)**
25:24;65:11
**own (2)**
19:19;85:5

**P**

**page (13)**
9:2;38:8;39:9,19;
52:14,15;70:21;78:7,9,
10;80:22;81:18,19
**pages (1)**
8:12
**paid (14)**
20:4,11;21:1,5,21;
22:3,8,12;23:4,8,16;
24:13;72:15;76:8
**papers (4)**
7:25;11:24;12:2;
18:19
**Parada (6)**
17:20;45:17;54:11;
68:11,12;86:6
**paragraph (20)**
7:5;43:18;47:8;
55:18;58:22;60:3,5;
61:1;63:2,16;64:3;
65:15,19;66:8,10,21;
76:11;77:10;78:25;
80:1

**parallel (1)**
51:1
**parcel (3)**
37:12,13,21
**pardon (1)**
70:25
**part (10)**
13:23;33:19;37:12,
13,21;46:11;48:13;
51:19,24;53:21
**participant (1)**
68:8
**participating (1)**
85:5
**particular (13)**
9:16;19:11;22:15;
23:11;24:2;25:10;27:6,
14;28:1;35:8;38:21;
44:1;53:1
**particularly (2)**
34:16;48:12
**parties (5)**
5:8;13:1;36:10;56:3;
65:17
**parties' (1)**
7:9
**party (3)**
40:4;63:24;66:6
**Pascuzzi (38)**
5:22;54:9,12,15;
55:10,12,14,14;56:9,
16,19,21;57:11;58:4,
19,20;59:8,12,16,20,
22;60:4;61:3,21,21,25;
62:4,8,18;63:23,25;
64:1;65:13,15,23;66:7,
25;67:18
**pass (2)**
46:10,11
**past (1)**
84:14
**path (1)**
8:7
**Paul (3)**
6:21;55:14;61:21
**pay (7)**
21:4,13;23:22;28:8;
70:13;74:19;75:12
**payable (1)**
70:15
**payment (11)**
21:6;24:15;25:1,14;
26:6,7;27:14;70:9;
71:11;74:22;76:23
**payments (2)**
21:15;30:21
**pays (1)**
20:12
**people (5)**
46:20;51:7;75:12;
83:7,13
**per (1)**
31:6

**PERA (3)**
4:16;33:22;38:14
**percent (6)**
7:10;12:7;23:12;
24:6;25:20;28:2
**perfectly (1)**
8:11
**performance (1)**
50:25
**permit (3)**
72:1,2;74:23
**permitted (1)**
71:2
**person (1)**
53:21
**perspective (2)**
24:18;28:2
**persuaded (1)**
29:10
**persuasive (1)**
47:6
**petition (1)**
29:24
**PG&E (5)**
3:8;16:18,20;65:10;
66:14
**phrase (2)**
51:25;80:16
**pick (4)**
33:17;54:18;72:19;
74:9
**picking (1)**
48:17
**pickle (1)**
74:5
**piece (1)**
6:11
**pin (3)**
42:22;51:5;74:21
**place (4)**
21:16;25:11;27:24;
85:8
**plan (82)**
4:1;5:9,16;7:8,15;
8:11;10:1;11:17;12:24;
15:9;19:25;20:6;21:3;
22:18;23:9;26:3;28:13;
29:14;30:12;31:13,14;
32:9,11,21,25;33:1,2,5,
7,8,20,20;34:12,15,19;
35:3,9,12,16;36:8,12,
16,20,22;37:13,16,25;
40:2;43:13,15,16;44:8,
14,25;46:8,10;47:22;
48:6,13,14;51:11,12;
52:24;58:4;59:24;64:8,
8,10,25;65:3;66:20;
69:14;70:20;74:1;
79:21;82:14,15,15;
83:17,18;84:11;85:8
**plans (1)**
33:4,4
**plate (1)**

14:4
**played (1)**
85:3
**players (2)**
85:1,2
**pleading (6)**
26:9;31:16;70:20,21;
80:19;81:19
**pleadings (2)**
4:18;10:10
**Please (7)**
10:19;13:16;15:25;
17:20,24;42:12;55:12
**pleased (1)**
5:3
**pleasure (4)**
57:18;85:9,13,25
**plenty (1)**
33:15
**plug (1)**
22:24
**plus (1)**
24:5
**point (21)**
3:10;8:7,15;13:20;
14:1,3;19:15;21:10;
26:8;27:15;38:3;43:22;
47:16;49:16,19;50:25;
61:25;67:5;83:7;84:23;
85:15
**policies (10)**
33:2,3,14;38:22;
39:2,7;40:2,3;41:15;
42:3
**policy (30)**
32:10,21,23,24;
33:21,23,24;34:1;
37:15;38:13,17,22;
39:2,11,15,20,21,22,
25;40:10,12,12,15,16;
41:6,9,24,24;42:2,16
**poor (1)**
55:10
**pops (1)**
40:14
**portion (1)**
54:20
**position (5)**
14:20;23:10;29:12;
32:22,23
**possibility (1)**
74:9
**post-confirmation (2)**
58:24;60:7
**precise (1)**
9:7
**preclude (1)**
75:24
**prefer (2)**
16:16;54:24
**pre-legislate (1)**
52:25
**preserve (1)**

60:5
**preserved (3)**
56:4;58:23;60:25
**preserves (1)**
61:1
**presiding (1)**
3:8
**presume (1)**
63:20
**pretty (5)**
46:8;49:19;52:12;
62:10;73:10
**primary (1)**
27:24;39:15
**principal (1)**
44:12
**principle (2)**
20:25;47:2
**prior (2)**
18:21;19:8
**probably (5)**
10:5;29:24;37:18;
54:12;62:5
**problem (17)**
8:12,13,19;10:8;
22:13;25:14,14;30:10;
32:12;40:20;51:23;
52:9;58:19;67:15;
74:13;77:19;84:1
**problems (3)**
43:9;68:12;84:8
**procedures (1)**
5:7
**proceeding (1)**
11:3
**proceedings (1)**
86:11
**proceeds (1)**
36:6
**process (1)**
84:19
**produces (1)**
22:18
**professionally (1)**
85:11
**proper (1)**
44:18
**property (2)**
71:12;74:23
**propo (1)**
80:5
**proponents (8)**
4:1;12:25;18:8;
21:19;32:10,21;33:8;
51:9
**proponent's (2)**
26:3;29:15
**proposal (4)**
42:14;47:5;58:6;
69:12
**propose (2)**
14:5;70:4
**proposed (18)**

Case: 19-30088    Doc# 8066    Filed: 06/22/20    Entered: 06/22/20 14:48:50    Page 97
of 102

5:18,20;8:23;10:2;
35:16;37:15;43:16,19;
44:8;47:12;49:6,8;
52:13;70:19;72:10;
78:13;80:6,19
**protected (2)**
7:11;12:7
**provide (1)**
83:17
**provided (2)**
32:21;40:9
**provides (3)**
23:13;40:13,13
**Providing (1)**
60:16
**provision (11)**
8:14;32:25;33:1;
34:1;41:8;43:13;52:16;
55:17,19;69:24;79:2
**provisions (5)**
39:20;40:19;66:17;
77:25;79:20
**Public (1)**
18:2
**pulls (1)**
63:18
**punished (1)**
34:6
**punted (1)**
37:12
**purpose (1)**
8:1
**purposes (5)**
8:1;24:10,21;33:8;
76:7
**pursuant (1)**
76:23
**push (1)**
36:20
**put (14)**
3:24;9:4,19;24:4;
28:24;31:17;34:2;
45:13;49:15;52:16;
55:21;62:1;64:8;70:20
**puts (1)**
56:6
**putting (4)**
8:11;25:21;31:13;
65:19

## Q

**quality (1)**
85:11
**quarrel (1)**
19:23
**question's (1)**
83:1
**quick (1)**
31:24
**quickly (3)**
6:16;31:21;44:19
**quite (1)**

10:22
**quote (3)**
51:25;52:15;78:11

## R

**raise (1)**
32:8
**raised (6)**
4:24,25;6:9;13:3,9;
14:23
**raising (3)**
52:23;54:8;67:15
**rang (1)**
46:15
**rarity (1)**
53:22
**rather (4)**
37:7;53:5;54:15;
67:24
**Rauth (1)**
6:22
**read (8)**
29:3;42:12;47:20;
56:24;71:4;72:5,6;77:4
**reading (2)**
33:12;70:15
**ready (1)**
3:17
**real (3)**
25:12;30:15;53:3
**really (13)**
12:3,8;21:23;29:18;
41:12;42:23;47:9;
49:15;60:23;61:25;
71:11;72:24;82:17
**reason (3)**
20:24;27:24;34:20
**reasons (2)**
22:21;28:16
**recall (4)**
7:22;53:15;55:20;
60:21
**receipt (1)**
36:6
**receive (1)**
23:12
**received (1)**
24:6
**recent (1)**
56:14
**recess (9)**
51:8,13;54:5,16,24;
55:10;67:23;68:20;
69:6
**recitation (1)**
33:21
**recognize (2)**
46:5;53:15
**recollection (2)**
9:16,17
**record (10)**
6:19;15:24;17:25;

43:23;44:18,22;62:1;
67:5,8,24
**recover (4)**
20:15;25:3,5,19
**recovery (1)**
25:7
**recruited (1)**
46:18
**redefined (1)**
32:25
**reduce (2)**
21:20;23:21
**refer (2)**
33:23;74:4
**reference (4)**
33:13;40:19;70:3;
80:2
**referenced (2)**
71:9;77:25
**referencing (1)**
49:10
**refers (1)**
41:5
**Refinery (1)**
30:8
**reflect (2)**
43:15;82:15
**reflected (1)**
70:15
**reflects (1)**
44:22
**regard (4)**
11:15;19:21;56:7;
67:12
**regarding (4)**
7:18;33:1;35:24;
55:21
**reinstatement (1)**
50:21
**reject (1)**
35:9
**rejigger (1)**
33:6
**related (1)**
54:13
**relates (2)**
36:16;39:22
**relationship (3)**
65:7,10;66:14
**relationships (2)**
67:10,13
**relevant (3)**
41:15;43:25;60:24
**relitigation (1)**
49:14
**remain (1)**
62:4
**remaining (1)**
45:9
**remains (1)**
18:17
**remember (5)**
10:21,22;70:12;73:3,

7
**remembering (2)**
9:21,22
**remind (1)**
19:2
**reminds (1)**
83:23
**render (1)**
36:20
**reorganized (1)**
40:6
**reply (2)**
11:24;12:1
**representing (5)**
17:7;63:3;65:14;
84:25;85:2
**request (1)**
7:2
**require (2)**
50:14;83:4
**required (7)**
15:21;23:8;49:4;
50:4;51:4;57:22;66:17;
73:12;74:10;77:11;
78:17;79:4,23
**requirement (1)**
67:2
**requires (3)**
49:3;55:24;76:7
**reread (1)**
51:19
**rescission (1)**
43:14
**research (1)**
30:7
**reserving (1)**
60:19
**resolution (12)**
5:7,14;6:3;7:21;8:7;
12:19;15:14;19:19;
31:17,22;46:22;83:24
**resolve (6)**
6:16;16:12;30:2;
31:24;49:9;67:23
**resolved (17)**
4:7,7,18;5:4;7:1,5;
12:21;15:4,17;17:9;
18:13;30:2;31:23;
36:13;58:24;60:7;
67:25
**resolves (3)**
12:11;49:9;83:20
**resolving (1)**
43:1
**respect (16)**
4:19;18:17;23:6,25;
32:22;35:8;36:9,19;
39:24;49:17;52:24;
58:9;59:2;73:14;78:13;
80:1
**respective (1)**
40:8
**response (2)**

31:25;61:4
**responses (1)**
33:22
**restart (1)**
62:14
**restate (2)**
62:20,22
**result (7)**
19:17,20;22:2;28:15;
29:11,16;34:7
**Retirement (1)**
18:3
**Revenue (1)**
65:6
**reverse (1)**
25:10
**review (2)**
7:23;9:5
**revised (6)**
44:8;74:9;82:14,15,
15;83:17
**Richardson (1)**
45:15
**right (67)**
3:12,19;4:20;6:20;
8:22;12:12,18;17:3,5,
13;18:15;23:2,2;25:4;
26:14;27:1,6;28:13,18,
19,20,24;30:14;34:21;
35:5;36:1,3,7;39:4;
45:10;48:5;50:7;52:17,
18,18,20;59:15;61:6,6,
13,14;62:21;69:5,11,
17;70:2,22;71:15,19;
72:12,13,17;73:19,19;
74:11,16,16;75:5;78:1,
1,24;79:1,1,1;80:25;
83:16;86:8
**rights (5)**
34:16;56:4;58:23;
60:6,6
**rise (1)**
36:8
**risk (1)**
34:11
**road (1)**
37:19
**role (1)**
85:4
**roll (1)**
3:17
**room (2)**
14:11;17:14
**ruling (5)**
18:25;29:9,9,12;
34:8;35:12
**run (2)**
34:11,15
**running (1)**
68:13

## S

Case: 19-30088    Doc# 8066    Filed: 06/22/20    Entered: 06/22/20 14:48:50    Page 98
of 102

**safely (1)**
63:16
**same (20)**
24:20;27:23;29:10,
13,14;31:15;37:4;
40:10;47:13;53:21;
60:11,13;66:8;71:10,
13;73:14;74:4;77:2,17;
80:11
**SAN (6)**
3:1;4:7,23;6:3,22;
11:14
**Sandler (1)**
18:2
**satisfaction (1)**
22:18
**satisfactory (1)**
49:13
**satisfied (3)**
12:6;20:2;76:23
**satisfying (1)**
44:2
**Saturday (1)**
83:15
**saw (2)**
44:25;46:23
**saying (23)**
10:13,15,16,17,18,
21,21,24;24:19;27:23;
28:19;29:10,13,14;
30:5;57:15;59:8;64:13,
14,14;67:6;72:15;76:6
**schedule (1)**
86:6
**scheduling (2)**
16:15;63:8
**school (1)**
65:5
**scope (2)**
8:3;41:25
**scream (1)**
65:12
**screen (4)**
55:3,6;68:14;69:3
**screwed (1)**
28:10
**screwup (1)**
84:4
**se (1)**
31:6
**second (5)**
56:23,24;70:12;77:3;
81:18
**Secondly (1)**
30:21
**Section (13)**
19:3;33:7;40:1;46:6;
47:11,18,24;62:22;
73:10,13;75:7;76:23;
79:4
**sections (1)**
74:8
**securities (3)**

4:9;17:15;19:15
**seeks (1)**
53:14
**seemed (4)**
48:6;50:12;52:17;
63:15
**seems (2)**
7:10;53:14
**sense (3)**
16:14;42:21;60:4
**sentence (12)**
55:24;56:5;58:25;
60:4,7;61:6,22;62:5;
63:16;67:2;69:25;70:8
**separate (9)**
8:10,14;10:2;11:17;
12:14;32:25;33:7;
40:11;53:17
**separately (2)**
13:14;16:22
**serve (1)**
58:8
**Service (1)**
65:6
**session (3)**
3:7;68:13;86:8
**set (8)**
32:23;33:14;35:16;
37:22;40:18;45:1;
83:15;85:7
**setting (1)**
58:9
**settle (5)**
18:11,12;23:20;
29:19,19
**settled (4)**
18:11;23:15;46:25;
51:12
**settlement (8)**
23:25;24:5,9,11,11;
28:24;30:22;46:19
**seventy (1)**
30:17
**several (4)**
30:16;51:20;53:15;
59:25
**shall (5)**
40:4,5,6;76:22;79:3
**shame (1)**
32:17
**shareholder (2)**
18:7;21:19
**shares (21)**
19:22,24;20:1,7,8,17,
20,21,22,22;21:3,4,7,
12;22:1,1,4;27:10,25;
28:7,14
**shift (2)**
56:6;58:25
**ship (1)**
34:18
**shortly (1)**
31:14

**sic (1)**
14:6
**side (27)**
9:4;32:10,21,23;
33:20,21,23,24;34:2,4;
37:14;38:13,17;39:7,
20,22;40:10,11,11,12,
17;41:10;42:2,3;43:3,
15;83:24
**sign (3)**
15:8;34:11;44:14
**significant (1)**
85:1
**significantly (1)**
47:9
**simple (4)**
20:23;21:7;32:12,22
**simply (3)**
28:3;37:16;49:6
**single (1)**
41:2
**sitting (1)**
36:4
**situation (1)**
53:1
**six (1)**
63:17
**so-called (1)**
15:3
**solution (2)**
30:11,13
**solve (5)**
8:12,19;30:9;43:9;
74:13
**solved (1)**
3:23
**solvent (1)**
21:2
**solves (1)**
77:18
**somebody (2)**
25:15;44:15
**somehow (1)**
52:3
**someone's (1)**
54:8
**son (1)**
16:2
**sorry (15)**
3:21;14:6,9,12;
15:12;18:1;22:22;34:9;
43:3;51:21;55:13;
69:24;79:22;80:9;
83:23
**sort (2)**
7:12;31:3
**sound (2)**
57:12;63:5
**sounded (1)**
62:9
**sounds (1)**
55:5
**South (1)**

6:22
**span (1)**
30:16
**speak (2)**
11:2;57:3
**speaking (2)**
7:16,18
**speaks (2)**
67:8;71:9
**special (2)**
56:6;66:1
**specific (8)**
7:9,24;8:5,10;9:15;
11:24;12:1;39:2
**specifically (7)**
6:11;32:24;38:3,25;
40:18;55:18;65:20
**specifics (3)**
7:12;10:21,22
**speculating (1)**
69:8
**spent (2)**
32:18;46:19
**staff (2)**
84:9,21
**stand (5)**
5:15,16;23:5;27:6;
31:9
**standalone (1)**
8:19;48:13
**standing (2)**
8:18;36:18
**start (2)**
69:1;84:20
**started (1)**
29:21
**state (14)**
6:19;13:17;15:24;
17:24;45:24;55:12,15;
57:4,16;63:22,23;64:2;
67:11;85:2
**statement (10)**
9:3;10:14;16:9;
49:17;51:18,19;52:1;
63:9;78:16;79:22
**States (2)**
60:14;67:11
**States' (1)**
60:6
**statute (5)**
48:7,18;70:13;75:4;
76:15
**Stephen (1)**
3:21
**stick (2)**
29:8;54:18
**still (14)**
20:14,16;29:25;
30:11;42:21;47:2,4;
49:8;56:10,19;63:2;
67:22;76:12;77:15
**stipulate (1)**
31:3

**stipulated (1)**
7:11;8:10;9:4;31:4
**stipulation (2)**
8:24;10:2
**stock (9)**
19:25;20:12;23:1,5;
25:9,16;26:17;27:15;
30:23
**stop (1)**
6:14
**story (2)**
20:2;46:16
**Stradling (1)**
6:22
**straightforward (1)**
52:12
**stranded (1)**
55:10
**strange (1)**
53:19
**stretch (1)**
27:20
**strike (7)**
49:6;73:11,22;77:3;
80:10;81:23,25
**strikeout (1)**
71:4
**striking (1)**
72:11
**struck (1)**
78:11
**subject (3)**
58:23;68:8;72:9
**submission (6)**
39:9;47:9,12,12;
49:7;52:6
**submit (8)**
12:5;16:9;18:18;
34:8;35:24;36:10;
53:24;63:7
**submitted (1)**
52:10
**subordinated (1)**
23:7
**subsection (1)**
81:22
**subsequent (1)**
34:13
**substantial (1)**
13:22
**substantive (1)**
34:3
**substantively (1)**
7:10
**sudden (2)**
6:10;52:25
**suddenly (1)**
19:23
**suffered (1)**
25:15
**suggest (1)**
70:7
**suggested (3)**

Case: 19-30088   Doc# 8066   Filed: 06/22/20   Entered: 06/22/20 14:48:50   Page 99
of 102

37:9;42:9;77:23
**suggesting (1)**
78:21
**suggestion (1)**
35:22
**suggests (1)**
51:3
**Sunday (1)**
83:9
**super (1)**
18:10
**superior (4)**
8:8;11:14;30:7,8
**supplement (5)**
5:9,17;37:25;59:24;
83:19
**suppose (1)**
20:11
**supposed (4)**
41:6;48:24;76:17,18
**sure (10)**
4:21;8:17;15:12;
37:5;49:24;60:23;61:2;
63:2;69:14;86:6
**surprise (2)**
18:10;37:16
**surprised (2)**
31:22,23

**T**

**table (2)**
19:20;37:24
**talk (6)**
4:16;14:18;49:21;
66:12;78:22;83:3
**talked (3)**
14:5;44:4;46:23
**talking (11)**
8:4;9:7;11:2;32:19;
37:14;38:20;51:4;
69:13;74:20;78:23;
79:5
**target (1)**
16:11
**TCC (2)**
4:1;16:8
**technically (1)**
48:11
**telling (1)**
57:19
**ten (5)**
22:1;67:22;68:15,24;
78:14
**ten-minute (3)**
51:8,13;55:9
**tentatively (1)**
30:1
**term (4)**
47:10;52:24;66:9;
75:11
**terms (13)**
5:15,21;22:18;24:20;

27:15;33:3,4;39:24;
40:8,16;41:15;42:15;
76:25
**Texas (1)**
30:7
**thanking (1)**
84:20
**thanks (1)**
86:1
**theory (5)**
20:24;27:2,3;29:23,
24
**thereafter (1)**
40:7
**there'd (1)**
58:15
**therefore (4)**
30:3;31:25;49:11;
72:14
**thinking (8)**
9:25;19:6;21:24;
31:2,24;47:17;69:10;
79:11
**third (2)**
43:2;70:9
**thirty (1)**
62:11
**thirty-day (1)**
62:14
**though (4)**
3:20;11:17;52:4;
65:16
**thought (16)**
5:1;7:1,4,5;16:14;
18:11;29:19,22;32:15;
37:11,14;60:19,19;
77:15;79:14;81:6
**thousands (1)**
9:22
**three (1)**
43:2
**three-quarters (2)**
38:10,12
**threw (1)**
47:17
**throughout (2)**
39:7;84:18
**Thursday (1)**
5:4
**Thus (1)**
46:22
**times (3)**
29:5;30:16;51:20
**timing (1)**
26:7
**title (1)**
38:24
**today (21)**
5:8;9:11,20;15:9,19;
16:11;23:16;25:8;
28:21;31:25;43:18;
44:14;58:4;68:5,9;
82:16,25;83:8,25;84:1,

15
**today's (1)**
82:16
**told (1)**
63:4
**tomorrow (5)**
44:15;82:23;83:9,10;
84:16
**took (1)**
5:10
**top (2)**
24:13;28:5
**tortfeasors (1)**
20:25
**tossing (1)**
18:14
**touch (1)**
84:9
**touched (1)**
32:18
**track (2)**
4:10;76:15
**tracked (1)**
77:25
**tracks (1)**
52:17
**trade (1)**
42:4
**treat (4)**
16:22;19:5;20:14;
36:6
**treated (3)**
13:13;40:5;46:14
**treatment (18)**
7:9;16:23;19:12;
20:7;25:13;27:5,8,11;
35:16;37:13,20,21;
43:14,16,19,24;44:2;
66:2
**treats (1)**
35:13
**tree (1)**
7:7
**tried (4)**
26:8;35:20;46:24;
66:4
**tries (1)**
67:5
**trigger (1)**
62:13
**trouble (2)**
51:24;76:14
**troublesome (1)**
39:5
**Troy (20)**
5:22;54:9,12,15;
55:10;57:2,3,5,5,8;
60:9,13,20;61:2;62:24;
63:1,6;64:24;66:25;
67:20
**Troy's (2)**
55:25;65:18
**true (2)**

36:23;46:13
**trust (13)**
4:11;5:4,5,6,14;
12:20;15:15;44:12,12,
13;52:4;83:19;84:3
**trustee (3)**
12:20;16:8;50:7
**try (5)**
16:15;34:20;35:2,22;
85:7
**trying (11)**
6:25;9:19;27:16;
31:7;49:15;52:7,7;
53:11,17;58:25;64:22
**Tsekerides (1)**
60:22
**turned (2)**
18:9;65:1
**turning (1)**
86:4
**turns (1)**
53:1
**tweak (1)**
10:6
**twelve (1)**
34:7
**twenty (1)**
32:19
**twenty-four (1)**
4:19
**two (22)**
3:25;4:3,4;5:1,2;
9:14,23;12:25;29:2;
43:1;48:22;49:23;
53:20;54:17;61:15,16;
63:20;66:20;73:3;74:8;
79:19;84:21
**typical (2)**
62:11,11

**U**

**unambiguous (1)**
49:17
**under (31)**
19:14;20:3,5,6,14;
22:17;23:9,19,21,22;
24:25;26:2;27:12;
28:12,21;35:3;40:12;
43:7;46:11;48:24;50:4,
25;57:21;58:5,22;59:1;
61:5;62:4;72:20;76:22;
79:23
**unequivocally (1)**
10:23
**unfair (1)**
36:11
**unfaithful (1)**
48:6
**Unfortunately (1)**
4:2
**unhappily (1)**
46:21

**unhappy (1)**
31:8
**unimpaired (1)**
23:9
**unimpairment (1)**
50:21
**unintentionally (1)**
44:16
**unique (1)**
55:19
**unit (2)**
65:4,5
**United (3)**
60:6,14;67:10
**units (6)**
55:20,25;64:4;65:2,
3,16
**universe (1)**
39:6
**unless (10)**
16:19;17:16;21:15;
45:15;54:8,14;70:4;
82:20;84:14,15
**unlikely (1)**
53:14
**unloved (1)**
7:4
**unmute (3)**
6:19;15:10;57:3
**unnecessary (2)**
52:8;59:2
**unofficial (1)**
84:24
**unresolved (1)**
13:21
**unsecured (1)**
46:2
**up (24)**
7:6;13:15;14:9;15:1;
17:17;18:14;27:5;
28:10;30:14;31:25;
32:8,11;33:8,12,17;
34:18;44:16;45:13;
53:2;63:15;68:4;72:19;
74:9;84:11
**updated (1)**
5:9
**upload (1)**
83:25;84:11,11
**upon (10)**
18:18;23:6;24:1;
26:12;28:23;29:23;
30:15;32:18;68:5;81:9
**use (1)**
48:4

**V**

**valid (1)**
47:2
**value (4)**
25:12;26:13;27:15;
28:1

**various (5)**
7:9;17:7;53:16;57:8;
85:2
**verbatim (2)**
9:2;45:4
**verdict (1)**
69:11
**version (2)**
56:13;77:2
**versus (1)**
83:8
**victim (3)**
5:6;52:4;53:13
**victims (4)**
4:12;17:8,8;21:1
**Victim's (1)**
5:6
**view (2)**
67:6;83:7
**virtue (3)**
22:6;23:7;28:6
**voted (1)**
35:9

**W**

**wait (6)**
15:9,13;70:5,12;
73:20;80:9
**wake (1)**
36:12
**walked (1)**
69:8
**wants (6)**
9:3;30:21;52:25;
68:17;70:5;84:5
**way (23)**
8:19;9:25;19:11;
21:12,21;25:17;30:3,4;
31:1;32:1;34:3,18;
37:2;38:12;48:18;
50:15;51:3,25;54:21,
21;72:5;79:25;85:8
**Wednesday (1)**
16:18
**week (9)**
13:25;14:3,4,5;16:9,
12,13;37:18,18
**weekend (1)**
86:5
**weeks (6)**
3:25;5:1;9:14,23;
29:2;64:10
**weigh (1)**
84:7
**Weil (1)**
3:22
**weren't (2)**
31:7;58:13
**whack (1)**
63:20
**what's (10)**
4:11;19:6;43:17;

49:22;56:12;58:19;
61:18;66:23;69:11;
82:13
**whatsoever (1)**
60:16
**whenever (2)**
31:20;49:21
**Where'd (1)**
64:8
**Where's (1)**
66:3
**Whereupon (2)**
69:6;86:11
**whole (2)**
47:16;72:25
**who's (2)**
53:21;69:2
**Wi-Fi (1)**
58:2
**willing (2)**
8:15;17:15
**withdraw (1)**
28:10
**withdrawal (2)**
33:10,11
**withdrawn (1)**
36:16
**withdrew (1)**
34:16
**within (7)**
5:23;8:3;11:3;41:25;
56:1;83:3,18
**without (7)**
11:15;19:21;27:5;
31:9;36:12,22
**wonder (2)**
61:15;77:1
**woods (1)**
8:9
**word (9)**
41:2;70:8;71:15,25;
73:11;77:3;80:10;81:2,
25
**words (17)**
8:4;22:11;28:20;
38:24;42:11,12;43:20;
54:25;70:10,25;71:25;
73:7;78:3,3;80:12;
81:23,24
**wordsmith (1)**
40:14
**work (8)**
10:5;16:15;17:12;
34:14;68:15;80:13;
85:11,16
**worked (1)**
77:21
**working (3)**
14:19;15:16;85:10
**works (5)**
5:20;14:15;20:24;
58:4;59:11
**world (1)**

30:15
**worried (1)**
61:16
**worry (2)**
66:21;67:17
**worse (1)**
57:12
**worst (1)**
61:18
**worth (6)**
20:4;21:17;23:5;
25:9;26:10,17
**wraps (1)**
43:7
**wrists (1)**
63:20
**wrong (4)**
39:3;43:3;46:25;
68:21
**wrote (1)**
46:22

**Y**

**ya (2)**
63:19,19
**year (1)**
46:18
**years (1)**
47:1
**yesterday (4)**
4:24,25;31:17;33:22
**Yocca (1)**
6:22

**Z**

**zeros (1)**
25:21
**Zoom (3)**
16:23;68:13,16

**1**

**1 (1)**
15:15
**1,000 (13)**
19:16;20:6,14,15,16,
20;23:3,5;25:2,5;
26:11;28:21,22
**1,000- (1)**
19:23
**1,000-dollar (2)**
21:25;26:18
**1.39 (2)**
73:21;75:13
**1.40 (5)**
71:13,25;73:11,15,
24
**10 (2)**
66:11;68:23
**10.13 (6)**
6:7,8;7:5;10:22;

11:13;12:7
**100 (6)**
19:24;20:7,8,20,21;
59:18
**1015 (1)**
10:1
**10A-II (2)**
22:8;37:20
**1123 (1)**
46:8
**1124 (10)**
19:3,4;46:6;47:17;
48:10,15;50:14,15,18;
51:1
**1129a (2)**
35:4,14
**1129b (3)**
35:6;43:20;44:2
**11th (1)**
5:4
**12th (1)**
29:25
**14th (1)**
56:14
**15th (1)**
63:8
**19 (1)**
3:1
**1A (2)**
50:2,3

**2**

**2 (11)**
4:11;15:4,15;39:9,
19;40:19;41:4,5;66:19;
68:23;69:1
**20 (3)**
66:19;68:23,23
**200 (8)**
20:13,13,22;23:16;
25:2,6;26:3,10
**200,000 (1)**
25:25
**2017 (3)**
29:2,25;30:16
**2018 (1)**
30:17
**2020 (1)**
3:1

**3**

**3 (3)**
9:2;39:19;78:10
**30th (4)**
16:20;37:5,6,7
**34 (1)**
61:1
**34a (4)**
56:3;58:22;60:5;
65:21
**34d (2)**

47:8;78:25
**365 (18)**
19:3;46:6,9,11;
47:18,19;48:14,16;
49:17;50:16,25;58:14;
59:1;62:4,22;72:20;
73:13;79:4
**365b (1)**
76:23

**5**

**5 (5)**
33:12;69:1;70:21;
78:9;80:22
**500 (1)**
59:19
**510b (3)**
20:5,7;30:6
**59 (1)**
39:19

**6**

**6 (4)**
52:15;70:21;78:9;
80:22
**6- (1)**
70:21
**67d (7)**
55:18,24;56:5;58:25;
65:15;66:7,10

**7**

**7273 (1)**
60:15
**7276 (2)**
58:21;60:1
**7938-1 (1)**
56:20

**8**

**8 (2)**
48:1;71:1
**8.1 (3)**
50:1;69:17,19
**8.1A (7)**
48:2,23;49:10;69:23;
71:9;74:3,3
**8.2 (6)**
47:8;69:20;74:3;
78:22;80:10,10
**8.2A (19)**
47:24,24,25;69:14,
21,22,25;70:7;72:11;
73:14;75:20;76:7,21,
21;77:2;80:10,15;81:1,
25
**8.2E (11)**
47:11;49:11;55:16;
70:19;77:24;78:14;

Case: 19-30088    Doc# 8066    Filed: 06/22/20    Entered: 06/22/20 14:48:50    Page 101
of 102

79:8,12;80:1,11,16
**8.7 (3)**
33:2;40:1;41:25
**80 (1)**
20:22
**800 (5)**
20:17,22;25:3,7;
26:17
**8016 (1)**
38:4
**8020 (1)**
52:14

Case: 19-30088   Doc# 8066   Filed: 06/22/20   Entered: 06/22/20 14:48:50   Page 102
of 102