# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors. | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered) |
| ☐ **Affects PG&E Corporation**<br>☐ **Affects Pacific Gas and Electric Company**<br>☒ **Affects both Debtors**<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Date:  June 24, 2020<br>Time:  10:00 a.m. (Pacific Time)<br>Place:  United States Bankruptcy Court<br>          Courtroom 17, 16th Floor<br>          San Francisco, CA 98102<br><br>**Objection Deadline**:  N/A |

## JOINT STATEMENT OF THE TCC, TRUSTEE, DEBRA GRASSGREEN AND KARL KNIGHT, AND ERIC AND JULIE CARLSON REGARDING UNRESOLVED OBJECTIONS TO THE FIRE VICTIM CLAIMS RESOLUTION PROCEDURES

During the hearing held on June 16, 2020, the Court directed counsel for the Official Committee of Tort Claimants (the "**TCC**"), counsel for the Trustee of the PG&E Fire Victim Trust (the "**Trustee**"), Debra Grassgreen and Karl Knight and Eric and Julie Carlson (collectively, the "**Objectors**") to meet and confer regarding the Objectors' dispute with a certain provision of the Fire Victim Claims Resolution Procedures (the "**CRP**") (at the Objectors' request, a redline of the current version of the CRP to the version filed on May 1, 2020 is attached hereto as **Exhibit 1**). This Joint Statement sets forth the Objectors' position followed by the position of the TCC and the Trustee.[1]  The TCC, Trustee, and Objectors request that the Bankruptcy Court consider this matter at the hearing scheduled for Wednesday, June 24, 2020, beginning at 10:00 a.m.

---

[1] Neither the Objectors nor the TCC and Trustee have had the opportunity to review the position of the other parties as set forth in this statement.  The positions herein therefore are not in response to the opposing positions, but instead are based on each parties' understanding of the other parties' position as explained over the course of the discussions among the parties.

# I. Statement of Objectors' Positions

## A. Knight Family Position

### Background

My husband, 9 year old son and I were victims of the Atlas Fire which started just above our home on the night of October 8, 2017. Our property and neighborhood were destroyed and my husband and son barely escaped alive. We live every day with the consequences of that night. We commenced an action against PG&E in Superior Court prepetition and that action was stayed upon the commencement of these cases. In connection with Confirmation, we objected to the provisions of the CRP that provided no judicial review of Fire Victim Claims.

At a hearing on May 15, 2020, the Court held that those parties that timely objected to confirmation of the Plan would retain the right of judicial review and that "the doors to the courthouse would not be closed." As set forth in the Confirmation Order, only three (3) individual Fire Victims ("Eligible Individual Fire Victims") and nine (9) business Fire Victims ("Business Claimants") fit into this category.

Rather than implement the Court's ruling, the TCC and the Trustee secretly put in place a series of procedural hurdles and substantive alterations in an effort to effectively eviscerate the judicial review mandated by this Court. The CRP was amended to add a new section IX, titled "Court Review." Section IX went beyond a procedural framework for implementing the Court Review in a manner that impacted substantive rights. First, the revised CRP would have required Eligible Claimants (and no others) to litigate PG&E's negligence. The Business Claimants objected to this discriminatory treatment and the Court agreed, clarifying that "*de novo*" review only applied to damages calculations, not liability. In addition, the revised CRP also included multiple other changes that, when read together are specifically designed to ensure that the right to seek judicial review by the Eligible Individual Fire Victims is never exercised. These provisions included:

- Delaying any right to seek judicial review;
- Redefining "personal injury claims" to exclude claims for emotional distress;

2

- Disallowing interest for Eligible Individual Fire Victims while the Trustee retains full authority to pay interest to all other Fire Victim;

- Subordinating punitive or exemplary damages for Eligible Individual Fire Victims when all other Fire Victims are not subject to the same subordination;

- Requiring the Eligible Individual Fire Victims to wait for conceivably a decade or more for every last Fire Victim to conclude their process with no reserve to protect against the risk of the Trust's insolvency; and

- After waiting years for the right to judicial review to mature, that right is forfeited unless the Eligible Individual Fire Victim commences a contested matter within 14 calendar days after the Trustee posts a notice on a website and sends one email.

*After raising all of these concerns with the TCC and the Trustee, only minor issues have been addressed in the CRP, but the most critical issues remain.* Unfortunately, it was by sheer happenstance that Eligible Individual Fire Victims discovered these provisions. Neither the Carlson Family nor the Knight family were invited or permitted to participate in the negotiations between the Debtors, the TCC, the Trustee and certain other objectors over the implementation of the Court's ruling. Neither the Debtor, the Trustee nor the TCC reached out to disclose these changes much less provide drafts of the documents or seek input. It was only after seeing the filings outlining the ongoing disputes between the Business Claimants and the Trust, that it became evident that there was an entirely undisclosed framework being negotiated to address these issues in the CRP. Up until that time, attorneys for the TCC provided assurances that the right to judicial review would be addressed in a footnote to the Confirmation Order, which the Eligible Individual Fire Victims were included in that footnote and not to worry because "you're covered" (*see* June 8, 2012 email, attached hereto as **Exhibit 2**)[2].

/ / /

---

[2] Mr. Goodman's statement in the July 8, 2012 email was completely misleading. At the same time that he was advising us that "we were covered" the CRP was fully drafted and being vetted with the Business Claimants. *See* Docket 7851, which laid out the issues with the Business Claimants which was presented the very next day. We were anything but "covered." As the party appointed to look out for fire victims, he should have advised that there was a draft of the CRP in near final form and voluntarily provided that draft.

3

Once it became clear from the filings by the Business Claimants on June 10, 2012 that the CRP, and not just the Confirmation Order, included undisclosed details regarding judicial review, we asked to see a draft of the CRP, and, only then, was one provided (on June 12, 2012). The draft that was provided had four pages of punitive and offensive provisions applicable to parties seeking Court Review. Although certain minor provisions were changed after we raised objections thereto, the CRP, as filed, continues to contain four offensive provisions which are outlined below.

Before addressing those substantive objections to the CRP, it bears repeating that we are not seeking preferential treatment. We have concerns about the lack of judicial review for a number of reasons and the way we have been treated over the past several weeks validates these concerns. Most significantly, we are and remain concerned that while the appeals process is binding on Fire Victims, it is <u>not binding</u> on the Trustee. The CRP provides that after Fire Victims present their claims, take the time and effort to go through an appeal and demonstrate the unique features of their claim to the satisfaction of the "Neutral" assigned to consider an appeal, the Trustee can nonetheless override the appeals determination and the Fire Victims have no further recourse.

The stated reason for opposing judicial review is distraction. However, the Court determined that parties that did not object to the CRP effectively consented to the claims procedures in the CRP. As such, the judicial review only applies to twelve (12) Fire Victims out of over 80,000 and of those only three (3) of those are individual Fire Victims. The Court was advised that the Business Claimants have now agreed to the form of CRP. Thus, it simply cannot hold that the judicial review of three (3) Eligible Individual Fire Victim Claims, if that ever occurs, will disrupt anything the Trust is doing.

**<u>Remaining Unresolved Issues</u>**

**Claimants Cannot Start the Judicial Review Process Until All 80,000**
**<u>Fire Victims Complete Their Process and Receive Final Determinations.</u>**

The CRP provides that the beginning of the judicial review process is not triggered by the conclusion of the individual claim review process. Instead, even if Eligible Individual Fire Victims have provided all required documentation in response to the claims questionnaire, sought reconsideration, and fully exhausted their remedies of reconsideration and appeal under the CRP,

4

they must wait to start the judicial review process until every single other fire victim (even ones that file their claims late) <u>concludes</u> their review process. Specifically, the CRP, as revised, includes the following language (the "Delayed Resolution Provision"):

> *Judicial Determinations after Initial Review Period*. Electing Judicial Claimants may only seek a Final Judicial Determination by commencing a contested matter against the Trust in Bankruptcy Court under this Section IX.B within the time prescribed herein *after all Claimants that hold Approved Claims have received a Determination Notice* with respect to such Approved Claims and have had an opportunity to fully exhaust the dispute resolution process set forth in Section VIII of this CRP (the "**Initial Review Period**"). The Trustee shall file a notice that the Initial Review Period has ended (the "**Initial Review Period Notice**") with the Bankruptcy Court and post the Initial Review Period Notice on the Trust Website. *Electing Judicial Claimants who fail to commence a contested matter in the Bankruptcy Court within the fourteen (14) day period after the filing of the Initial Review Period Notice shall be deemed to accept the Trustee Determination* of their Claims, and such Trustee Determination shall become a Final Determination that is final, binding, non-appealable and not subject to review by any Court. (Emphasis Added)

The Court expressly found that the right to judicial review was ripe after an Eligible Individual Fire Victim exhausts <u>its</u> remedies under the CRP not after **every single claimant** exhausted its remedies. ("The order confirming the Plan should include specific language assuring this preserved right of Objectors to seek judicial de novo review after ***they have exhausted their*** <u>***remedies***</u> under the CRP." *See* Docket 7597 (emphasis added).

The Trustee and TCC's stated reason for this provision is that the Trustee should not be distracted with litigation while he is trying to get payments out to thousands of victims that desperately need funds. This simply is not credible. As noted above, this applies only to three (3) Eligible Individual Fire Victims and if they are treated fairly, there would be no reason for them to ever exercise this right.

It will be nearly 3 years since the Atlas Fire by the time the Trust goes into effect. If the Trustee and TCC are allowed to include the proposed Delayed Resolution Provision in the CRP, it could be a decade or more before the Court ordered right to judicial review matures. There is no rational justification for this, particularly where, as here, the claim of a minor child is involved. In fact, because the CRP has no timelines within which response to questionnaires have to be submitted or reviewed, no timeline regarding when an appeal officer will be assigned and when an

5

appeal can start and conclude, and no provision for claims to be considered in the order in which they are presented, it is simply conjecture for the Trustee to argue that at that unknown time, resolving less than a handful of claims judicially will be a distraction that that a trust of this size cannot manage. Moreover, if at the time the right to judicial review matures, the Trustee reasonably believes that the judicial review would create a hardship on the Trust, he or she should bear the burden of seeking relief from this Court. That decision should be made at the time the judicial review right matures, based on actual facts—not in advance and based on conjecture.

*In order to accommodate the Trustee's stated concern about possible disruption or distraction without unduly delaying the judicial review process, the CRP must be revised to provide that the right to judicial review matures for each Eligible Claimant when that Eligible Claimant receives a Trustee Determination (as defined in the CRP); provided, however, that the Trustee can request that Bankruptcy Court stay the judicial review process for an appropriate amount of time for good cause and the Eligible Claimant can object to any such request.*

### The Bankruptcy Court Should Determine if a Claim That is Subject to 28 U.S.C. 157(b)(5) Should Be Heard in the District Court or State Court.

The Court may recall that in connection with the Estimation Proceedings, the Court received extensive briefing from the TCC on the issue of whether emotional distress claims constitute "personal injury" claims for purposes of 28. U.S.C. 157(b)(5). (*See DKT* 2842 and 2855*).* Notwithstanding that position, for purposes of judicial review of Eligible Individual Fire Victim claims, the CRP initially defined PI/WD claims to <u>exclude</u> PI/WD claims. After informally objecting to this provision, the language was modified, but one issue remains. The process for seeking judicial review should include having the Bankruptcy Court determine whether the claim is a personal injury claim under 157(b)(5). Thereafter, the claimant can either consent to having the claim heard in the Bankruptcy Court, can have the claim heard in the District Court, or can request that the discharge and channeling injunctions be lifted so that the claim be heard in the court where the claim was pending prior to the bankruptcy. The last clause is the remaining point of dispute, as the TCC and Trustee are insisting that while Eligible Individual Fire Victims go to the Bankruptcy Court to have the 157(b)(5) determination made, they cannot concurrently ask the Bankruptcy

Case: 19-30088    Doc# 8074    Filed: 06/22/20    Entered: 06/22/20 19:14:01    Page 6 of 46

Court to provide relief from the Plan injunctions to permit the matter to be heard in state court where the claims were pending prepetition. Instead, Eligible Individual Fire Victims are required to go through a second step to seek that relief from the District Court. Once again, the TCC and the Trustee are throwing up roadblocks to cause unnecessary delay and expense to Eligible Individual Fire Victims.

*Footnote 6 of the CRP should be modified to provide that an Eligible PI/WD Claimant may request that the Bankruptcy Court allow review of its Claim to proceed in the court where such claim was pending or could have been pending prior to the Petition Date.*

## Payment of Interest Must be Applied Equally to All Fire Victims.

The Frequently Asked Questions that were provided to all Fire Victims with the Disclosure Statement (and approved by the Court) and are posted on the Prime Clerk Website include following question and answer:

> 24. Can I receive interest on my claim?
> *Answer: The Trustee and the Claims Administrator are developing procedures to evaluate whether the Fire Victim Trust can pay interest.*

The reference to interest only appears once in the CRP—in a provision, Section IX, governing Court Review:

> 7. *Payment of Bankruptcy Court Determinations*. Under no circumstances shall interest be paid under any statute on any judgments obtained in the tort system. If and when a Claimant obtains a Final Judicial Determination it shall be treated within and receive *pro rata* distributions from the Trust, subject to the Trust Documents, including Section VII.B hereof, the Plan and the Confirmation Order.

*The CRP should be revised to provide that to the extent any other fire victim claim is paid interest as part of their claim under applicable law, the claims of Eligible Claimants should likewise be paid interest as part of their claims under applicable law.*

/ / /

/ / /

/ / /

7

**To the Extent Subordination of Punitive
and Exemplary Damages is Appropriate Under
<u>Applicable Law, it Must Apply Equally Among Fire Victims</u>**

The word "punitive" only appears in the CRP in new Section IX governing Court Review. Specifically, Sections B includes the following language:

> *"Payment by the Trust of a judgment for monetary damages obtained pursuant to this Section IX shall be subject to adjustment, if applicable, for subordination of Claims for punitive or exemplary damages as provided in Section IX.C."*

And Section C provides:

> **<u>Punitive and Exemplary Damages.</u>** The Trustee shall have the discretion to award punitive or exemplary damages consistent with California law and the Trust Agreement. Any award of punitive or exemplary damages made by the Trustee or a Court with respect to any Claim shall be subordinate and junior in right to the prior payment in full of all Final Determinations and Final Judicial Determinations as provided herein.

We objected to this provision on the basis that all Fire Victim's Claims for punitive damages should be treated the same. Thereafter, the CRP was revised to add footnote 5. However, the language in footnote 5 should not be in Section IX as that section begins with the statement that it only applies to claimants eligible for Court Review.

*The section on Punitive Damages should be moved to Section III—Other Damages. However, this section does not require that all claimants that are entitled to such damages under applicable law will be treated equally. The words "shall have the discretion" should be removed.*

B. **Carlson Family Position**

<u>Background</u>

My wife and I were victims of the Tubbs Fire. While we have spent the past 2½ years beginning to clean up the immediate hazards, the immense devastation to our property will take many more years to restore. We join in the discussion and objections outlined above by the Knight Family. In addition, as *pro per* Fire Victims, we feel compelled to share with the Court our frustration with how we have been treated by certain counsel for the TCC, the very lawyers that we

8

thought were supposed to be looking out for our interests. We made multiple efforts to resolve our concerns informally at various stages of these cases and we were ignored.

**Before the Disclosure Statement Hearing**

On March 4th of this year, I raised our initial concerns about the Fire Victim Trust Claims Resolution Procedure ("CRP") to Baker Hostetler, citing two main concerns: 1) the Trust can be modified after confirmation, without notice to affected parties and 2) the Trustee's ability to override the decision of the appeal panel, without any judicial review or recourse. In response, I received correspondence from Elizabeth Green on March 5th, which did not address my substantive concerns. I responded with a second email the same day. I did not receive a response to my second email prior to the Disclosure Statement Hearing. As such, we filed an objection to the Disclosure Statement on this limited basis. At the Disclosure Statement Hearing, the Debtors agreed with our Objection. Surprisingly, the TCC opposed our objection and argued that the issues that we raised were confirmation Issues. The Court agreed with the TCC that our issues should be addressed during Confirmation.

**Communications Before and In Connection with the Confirmation Hearing**

Given the timing and the substance of my issues, I expected to hear from counsel to the TCC or counsel to the Trustee after the Disclosure Statement hearing to attempt to resolve our issues informally. I did not. Accordingly, we filed an objection to Confirmation on the same grounds. I was not contacted by either counsel for the Debtors or counsel for the TCC to try to address or resolve our objection. Accordingly, I appeared at the Confirmation Hearing during which the Court confirmed that we retained the right to judicial review. Furthermore, the Court advised the parties to confer with me on language in the Confirmation Order to preserve that right.

Thereafter, the TCC and the Trustee proceeded to negotiate with the business claimants, but did not include me or any other non-business objector in those discussions, to my knowledge. I was not provided drafts of the relevant documents during those discussions but rather was told by lawyers for both the TCC and the Trustee that they had addressed our issues. Specifically, I was provided language that was to be included as a footnote in the Confirmation Order and advised that this addressed my concerns. I received the following email from counsel to the TCC on June 6th:

9

1

2

> *The proposed confirmation order has not been filed yet. Docket No.*
> *7851 is not the confirmation order. The current draft of the*
> *confirmation order includes the following language:*

3

4

5

6

7

> <u>*De Novo Adjudication of Claims*</u>. *Notwithstanding anything to the*
> *contrary in the Fire Victim Trust Documents, each of the parties who*
> *timely submitted an objection to the Fire Victim Trust Documents as*
> *noted herein[1] shall have the right to seek de novo review in*
> *accordance with Section IX of the Fire Victim Claims Resolution*
> *Procedures.*

8

9

10

11

12

13

14

15

16

> *[FN1]: The parties who timely submitted objections to the Fire*
> *Victim Trust Documents are listed as follows: Adventist Health*
> *System/West and Feather River d/b/a Adventist Health Feather*
> *River; Paradise Unified School District, Northern Recycling and*
> *Waste Services, LLC/Northern Holdings, LLC, Napa County*
> *Recycling& Waste Services, LLC/Napa Recycling& Waste Services,*
> *LLC, Christian & Missionary Alliance Church of Paradise, dba*
> *Paradise Alliance Church and Paradise Irrigation District; AT&T*
> *Corp. and all affiliates; and Comcast Cable Communications, LLC*
> *and all affiliates. [Docket Nos. 7072 and 7121], Butte County*
> *Mosquito and Vector Control District [Docket No. 7145], <u>**Eric and**</u>*
> *<u>**Julie Carlson [Docket Nos. 7207 and 7363]**</u>, Karl Knight [Docket*
> *No. 7366], Mary Kim Wallace [Docket No. 7367], Helen Sedwick*
> *and James Finn [Docket No. 7377].*

17

18

> *The confirmation order will be filed before Thursday, June 11th. I*
> *hope this resolves your issue. If not, please let me know.*

19

20

> *Best Regards,*
> *Eric*

21          I advised Mr. Goodman that, while this language seemed to address my issues, I reserved

22   my rights until I was able to review full sets of all the relevant documents. I received complete

23   drafts of the Trust Agreement and the CRP on June 11th, and I was shocked by what I read. After

24   being left out of the discussion as directed by the Court, the documents included pages of new

25   language that actively singles us out and punishes us for the right to judicial review. We have

26   attempted to resolve our concerns with this language informally to no avail. We fully agree with

27   the three concerns raised by the Knight Family, particularly in light of the lack of candor we have

28   been shown. This Trust has not even begun its work yet and we have serious concerns about the

motivations of the parties in charge, including the attorneys that compose the Trust Oversight Committee. Accordingly, given the Court's retention of jurisdiction over matters regarding the Trust, we hope that the doors to this Court will remain open to address any concerns that may arise in the future.

<u>**Remaining Unresolved Issues**</u>

I have heard your Honor request multiple times that duplication be avoided where possible. I will simply summarize for you our remaining unresolved issues together with our proposed solutions outlined in detail by the Knight Family in this joint statement:

<u>Issue: Claimants cannot start the judicial review process until all 80,000 fire victims complete their process and receive final determination.</u>

**Solution:** *CRP must be revised to provide that the right to judicial review matures for each Eligible Claimant when that Eligible Claimant receives a Trustee Determination (as defined in the CRP); provided, however, that the Trustee can request that Bankruptcy Court stay the judicial review process for an appropriate amount of time for cause and the Eligible Claimant can object to any such request.*

<u>Issue: The Bankruptcy court should determine if a claim that is subject to 28 U.S.C. 157(b)(5) should be heard in the District Court or State Court.</u>

**Solution:** *Footnote 6 of the CRP should be modified to provide that an Eligible PI/WD Claimant may request that the* <u>**Bankruptcy**</u> *Court provide relief, such that review of its Claim may proceed in the court where such claim was pending or could have been pending prior to the Petition Date.*

<u>Issue: Payment of interest must be applied equally to all Fire Victims</u>

**Solution:** *The CRP should be revised to provide that to the extent any other fire victim claim is paid interest as part of their claim under applicable law, the claims of Eligible Claimants should likewise be paid interest as part of their claims under applicable law.*

<u>Issue: Inconsistent Punitive and Exemplary Damages language</u>

**Solution:** *The section on Punitive Damages should be moved to Section III--Other Damages. However, this section does not require that all claimants that are entitled to such damages under applicable law will be treated equally. The word "discretion" should be removed.*

## II. Statement of TCC's and Trustee's Position

### A. The Initial Review Period Is Fair and Equitable to All Fire Victims

All fire victims must be treated fairly. As stated at the beginning of the CRP, the goal of the Fire Victim Trust (the "**Trust**") is to "provide an efficient process to fairly compensate the holders of timely filed Fire Victim Claims … in an equitable manner and on a *pro rata* basis consistent with the terms of the Trust Documents, the Plan, the Confirmation Order and California law and federal law." The Initial Review Period in Section IX.B.3 of the CRP achieves this goal and equitably balances the appeal rights of the Objectors against the rights of other fire victims. Eliminating the Initial Review Period would effectively provide the Objectors with preferential treatment and would be inconsistent with the stated goal of the CRP and the Trust.

The Objectors have the same rights as every other fire victim under the CRP. Nothing in the CRP discriminates against the Objectors for having the right to seek judicial review. The rational, prudent and, above all, equitable reason for the Initial Review Period is that the Objectors are among tens of thousands of similarly-situated individual fire victims, including many other minor fire victims and some who hold wrongful death claims and related emotional distress claims.

The CRP contemplates that all fire victims be given the right and opportunity to pass through the claims resolution process, including the significant oversight and internal appeals procedures, and obtain a determination by the Trustee before the Trustee's attention is diverted to addressing claimant litigation. In other words, the Objectors are treated exactly the same as other fire victims with respect to their claim determination until they exhaust the internal appeals process in the CRP. The Objectors, like all other fire victims, have the right to have their claims determined under the CRP. The Objectors, like all other fire victims, have the right to dispute and appeal their claim determinations under the CRP. The Objectors, like all other fire victims, have the right to a hearing before a neutral. The Objectors have the same rights as every other fire victim under the CRP.

But, under the Confirmation Order, the Objectors have an additional option that other fire victims do not have—*i.e.*, the right to seek court review of their claims if they are dissatisfied with the Trustee's determination. *See* Dkt. No. 8053 at 18.k. The Objectors, unlike most other fire

Case: 19-30088    Doc# 8074    Filed: 06/22/20    Entered: 06/22/20 19:14:01    Page 12 of 46

victims, have the additional option to return to this Court, or, if they have personal injury claims, to the District Court, for an additional pass through an appeal process. The Trustee hopes that, despite the Objectors' unsubstantiated view that they will not be treated fairly, the Objectors, along with all other fire victims, will be satisfied with their claim determinations.

If the Objectors are not satisfied, they may avail themselves of an additional level of court review to which they are afforded. The TCC's and the Trustee's position is that the Objectors' ability to progress this additional level of review should be triggered only after the other fire victims have first received their claim determinations. This is a matter of basic fairness to the other fire victims, including many other minor fire victims. The Ad Hoc Group of Business Claimants never raised the issue now being raised by the Objectors and, as the Court knows, have signed off on the filed CRP. The Objectors are the only fire claimants that believe that they should be able to litigate their claims in court before other fire victims even receive their claim determinations under the CRP.

The CRP originally proposed to keep all claims determinations within the Trust to preserve the Trust's assets for distribution to fire victims rather than divert them to the potentially significant costs and expenses of defending the Trust in litigation over claim awards. The overwhelming majority of fire victims accepted this process. Only a small handful of the tens of thousands of fire victims were unwilling to accept this. The TCC and the Trustee acknowledge that the Objectors are entitled to preserve their right to claim adjudication by a court beyond the Trust. The Confirmation Order and the CRP, as amended, afford the Objectors this right.

As has been shown within these cases, the chapter 11 process is unlike anything else when it comes to the adjudication and payment of claims. Within large bankruptcy cases, it is routine for creditors to wait years—sometimes decades—to receive payment on their claims despite the best efforts of all involved quickly and equitably to adjudicate and pay claims. *See*, *e.g.*, *In re Johns-Manville Corp.* (filed August 26, 1982, emerged from bankruptcy and established PI Settlement Trust in 1988); *In re Celotex Corp.* (filed October 12, 1990, emerged from bankruptcy December 9, 1996 and established Asbestos Settlement Trust on February 1, 1998); *In re Federal Mogul* (filed October 1, 2001, emerged from bankruptcy and established Federal Mogul Asbestos Personal

13

Injury Trust in 2007). And, it is the rule rather than the exception in mass tort bankruptcies involving trusts for claimants who opt out of the trust for court review to receive payments on account of their claims later than they would have if they had accepted the final claim determination offered within the trust.

Asbestos trusts, for example, uniformly place claimants that opt out at the end of the payment line upon a final court determination and additionally impose waiting periods of up to ten years for payment of the full amount of claim awards, without the payment of any interest. *See,e.g*., API Trust Distribution Procedures (2005) (*In re API,* Case No. 05-30073 (D. Minn. 2005)); Second Amended and Restated Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust Distribution Procedures (2015) (*In re Armstrong World Industries, Inc.*, Case No. 00-4471 (RJN) (D. Del. 2000)); Combustion Engineering 524(g) Asbestos PI Trust Agreement (2005) (*In re Combustion Engineering*, Case No. 03-10495 JKF (D. Del. 2003)); Federal-Mogul Asbestos Personal Injury Trust Distribution Procedures (2007) (*In re Federal Mogul,* Case No. 01-10578 (RTL) (D. Del. 2001)); Amended and Restated WRG Asbestos PI Trust Distribution Procedures (2019) (*In re WR Grace*, Case No. 01-1139 (KG) (D. Del. 2001)). These asbestos trusts generally do not require a waiting period before claimants can opt out, *but* they impose a greater burden on parties that opt out than Section IX.B.3 of the CRP—*i.e.*, ten years for payment versus waiting until other victims receive their determinations.[3]

The Objectors retain the right to be treated exactly like every other fire victim in these cases—nothing in the CRP or the Trust Agreement requires them to exercise their right to seek

---

[3] The standard provision in asbestos trust distribution procedures regarding the payment of judgments for money damages is as follows:

If and when a claimant obtains a judgment in the tort system, the claim shall be placed in the FIFO Payment Queue based on the date on which the judgment became final. Thereafter, the claimant shall receive from the PI Trust an initial payment (subject to the applicable Payment Percentage, the Maximum Available Payment and the Claims Payment Ratio provisions set forth above) of an amount equal to the greater of (i) the PI Trust's last offer to the claimant or (ii) the award that the claimant declined in non-binding arbitration; provided, however, that in no event shall such payment amount exceed the amount of the judgment obtained in the tort system. The claimant shall receive the balance of the judgment, if any, in five (5) equal installments in years six (6) through ten (10) following the year of the initial payment (also subject to the applicable Payment Percentage, the Maximum Available Payment and the Claims Payment Ratio provisions above in effect on the date of the payment of the subject installment).

* * *

Under no circumstances shall (a) sequencing adjustments be paid . . . or (b) interest be paid under any statute on any judgments obtained in the tort system.

14

court review of the Trustee's determinations of their claims. To the extent that the Objectors exercise this right, the CPR balances their ability to take a second pass on the adjudication of their claims against the ability of all other fire victims to receive the full attention of the Trustee to the initial determination of their equally important claims. Simply put, the Objectors are not being asked to accept a claims review process that is unusual for a large bankruptcy case, much less unfair.

The goal of the Trust is to fairly compensate all fire victims in an equitable manner. In the Objectors' view, they seek to put their ability to progress their court determination rights ahead of other fire victims obtaining their determinations from the Trustee. This preferential view necessarily discriminates against other fire victims. Eliminating the Initial Review Period and providing the Objectors with preferential treatment of their claims compared to the treatment afforded all other fire victims is inconsistent with the goal of the Trust. The TCC and the Trustee request that the Court overrule this objection.

### B. The CRP Does Not Foreclose Any Right to Request That Claims Determination Be Reviewed in the Court in Which Claims Were Pending Prepetition

The CRP does not take away the Objectors' right to seek review by the court in which their claims were pending prepetition. The Objectors do not have the right to bypass the Trust. The Ad Hoc Group of Business Claimants complained that the Trustee determination was "not subject to any form of judicial review." Dkt. No. 7072 at p. 4. They did not seek to avoid the Trust and proceed directly to court. They sought the right to seek court review of a Trustee determination, which the Objectors now have under the amended CRP and Trust Agreement.

In response to the Objectors' concerns, the CRP was further amended to clarify that if the Objectors have personal injury claims and reject the Trustee determination and seek court review, they can request that the District Court permit their claims to proceed in the court where such claims were pending prepetition. This is set forth in footnote 6 of the CRP as follows:

> To the extent the Bankruptcy Court determines that a claim asserted by an Eligible Claimant constitutes a personal injury tort or wrongful death claim under and for purposes of 28 U.S.C. § 157(b)(5) (an "**Eligible PI/WD Claimant**"), that Eligible PI/WD Claimant may elect review of its claim

pursuant to this Section IX in the District Court for the Northern District of California, subject to the same constraints, election, notice and filing requirements, and other limitations described herein with respect to Bankruptcy Court Review; provided, however, that an Eligible PI/WD Claimant may request that the District Court provide relief, such that review of its Claim may proceed in the court where such claim was pending or could have been pending prior to the Petition Date. The Trustee's rights to contest any such request are hereby preserved. Nothing in these procedures shall be deemed a waiver or modification of the Eligible PI/WD Claimant's right, if any, to a trial by jury.

The Objectors have complained that this provision does not give them everything they want. Specifically, the Objectors want to bring to the Bankruptcy Court a request for abstention/remand to the state court. But 28 U.S.C. § 157(b)(5) places personal injury tort claims (for purposes of claims adjudication for distribution) in the District Court. Nothing in 28 U.S.C. § 1334(c) or 28 U.S.C. § 1452 supports the argument that the Objectors should be permitted to bring a request for abstention or removal before the Bankruptcy Court.

Additionally, the Objectors have requested the right to seek relief from the Channeling Injunction and any other injunction or release issued or granted in connection with the Plan. This is well beyond any relief contemplated by this Court's *Memorandum on Objection of Adventist Health, AT&T, Paradise Entities and Comcast to Trust Documents* entered on May 26, 2020 [Docket No. 7597] and would require modification of the confirmed Plan. The TCC and the Trustee request that the Court overrule this objection.

### C. The CRP Does Not Provide for the Payment of Interest on Any Claims

The CRP does not discriminate against the Objectors regarding the payment of interest. Nothing in the Trust Agreement or the CRP provides for any fire victim to receive interest on any claim. The CRP Summary filed on March 16, 2020 [Docket No. 6329-1] includes a list of "Frequently Asked Questions" that includes at number 24 "Can I receive interest on my claim?" The stated answer is, "The Trustee and Claims Administrator are developing procedures to evaluate whether the Fire Victim Trust can pay interest."

It may be unlikely that the Trust will have enough assets to pay all fire victim claims in full, much less provide interest on any awards. The TCC and the Trustee acknowledge that CRP is

16

silent on the inclusion of interest within a claim determination.  In the event that interest can be awarded, all fire victims, including the Objectors, will be entitled to receive interest on their claims.

### D.      The CRP Subordinates Non-Compensatory Damages Awards for All Claimants

The CRP does not discriminate against the Objectors regarding awards for punitive damages.  Nothing in the Trust Agreement or the CRP provides for any fire victim to receive punitive or other non-compensatory damages on any claim.

The CRP Summary filed on March 16, 2020 [Docket No. 6329-1] includes a list of "Frequently Asked Questions" that includes at number 23 "Can I receive punitive damages?" The stated answer is, "The Trustee and Claims Administrator are developing procedures to evaluate whether the Fire Victim Trust can pay punitive damages."  The CRP filed on June 21, 2020 [Docket No. 8057-1] clarifies in footnote 5 that the provision to which the Objectors object applies to all fire victims.  If any claim to be paid by the Trust includes punitive or other non-compensatory damages, such damages are subordinated to the full payment of all compensatory damages awarded on account of all fire victim claims.  The Objectors are not being subject to any treatment that is different from the treatment afforded to all other fire victims.

Dated:

June 22, 2020

                                        BAKER & HOSTETLER LLP


                                        // ERIC GOODMAN
                                        Eric Goodman (admitted *pro hac vice*)
                                        (egoodman@bakerlaw.com)
                                        Key Tower, Suite 2000
                                        127 Public Square
                                        Cleveland, Ohio 44114
                                        Telephone:      (216) 621-0200
                                        Facsimile:      (216) 696-0740

                                        Attorney *for the Official Committee
                                        of Tort Claimants*

BROWN RUDNICK LLP


_____
Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive
Seventh Floor
Irvine, California 92612
Telephone:        (949) 752-7100
Facsimile:        (949) 252-1514

and

BROWN RUDNICK LLP
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone:        (212) 209-4800
Facsimile:        (212) 209-4801

Attorneys for Trustee and Claims
Administrator


DEBRA GRASSGREEN and KARL KNIGHT


//DEBRA GRASSGREEN and KARL KNIGHT
Individual *Fire Victims*


ERIC and JULIE CARLSON


// ERIC and JULIE CARLSON
Individual *Fire Victims*

18

EXHIBIT "1"

# FIRE VICTIM CLAIMS RESOLUTION PROCEDURES

## PREAMBLE

The goal of the Fire Victim Trust[1] is to provide an efficient process to fairly compensate the holders of timely filed Fire Victim Claims (respectively, "**Claimants**" and "**Claims**") in an equitable manner and on a *pro rata* basis consistent with the terms of the Trust ~~Agreement,~~ Documents, the Plan, the Confirmation Order and California and federal law. These Fire Victim Claims Resolution Procedures ("**CRP**") apply to all Claims, provided that, any Claim that has been liquidated pursuant to a settlement agreement approved by the Bankruptcy Court or is the subject of a Final Judicial Determination shall not be subject to further determination under the CRP. The Claims Administrator shall implement and administer the CRP in consultation with the Trustee, Claims Processor, Neutrals, and Trust Professionals with the goal of securing the just, speedy, and cost-efficient determination of every Claim. Those entrusted with the consideration and determination of Claims shall treat all Claimants with abiding respect and shall strive to balance the prudent stewardship of the Trust with care in its administration, allocation, and distribution.

The speed of any distribution in a program involving thousands of claimants relies on multiple variables impacting administrative expediency. To achieve maximum fairness and efficiency, the CRP is founded on the following principles:

1. Objective eligibility criteria;

2. Clear and reliable proof requirements;

3. Administrative transparency;

4. Rigorous review processes that generate consistent outcomes regardless of the asserted amount of the Claim; and

5. Independence of the Trustee, Claims Administrator, Claims Processor, Neutrals, Appeals Officer and Trust Professionals.

The Trustee and Claims Administrator will consult with the Claims Processor and other Trust Professionals to develop claims valuation processes that result in fair and reasonable compensation of eligible Claims in accordance with the Trust ~~Agreement~~ Documents, the Plan and ~~CRP~~ the Confirmation Order.

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the PG&E Fire Victim Trust Agreement (the "**Trust Agreement**") and the Debtors' ~~Amended~~ and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated ~~March 16~~ June [●], 2020 ~~,~~ as it may be ~~amended.~~ further modified, amended, or supplemented from time to time and, together with all exhibits and schedules thereto, the "Plan"), as applicable.

Exh 2- 1

Case: 19-30088    Doc# 8074    Filed: 06/22/20    Entered: 06/22/20 19:14:01    Page 20 of 46

# I.  CLAIMANT ELIGIBILITY

To be eligible to receive compensation from the Trust, a Claimant must: (1) have a Claim related to ~~an Included~~a Fire; (2) have timely filed a Proof of Claim; and (3) submit supporting documentation as outlined in Section II of this CRP or as required by the Claims Administrator ("**Supporting Documents**"). Upon submission of the Supporting Documents, the Trust will review each Claim and ~~consider all damages and costs recoverable under~~apply California law or, if applicable, other non-bankruptcy law to determine the Approved Amount of the Claim, including all recoverable damages and costs, whether or not identified or enumerated in Article II hereof.

**A.  Included Fires**. The Trust is established to administer Claims related to the fires identified in Exhibit 1 (each a "**Fire**" and collectively the "**Fires**"). Any claims unrelated to the Fires are ineligible for payment by the Trust and, pursuant to the process described herein, shall be held to be ineligible on a final basis. Solely for the purposes of claims determination, including assertion of defenses, in accordance with the CRP, ~~all Fires set forth in Exhibit 1 are deemed to have been caused by~~including Section IX hereof, PG&E's negligence and/or equipment ~~and as a result of PG&E's negligence.~~is deemed to be a substantial factor in causing all Fires, provided that, (i) nothing herein or in any of the Trust Documents, Plan or Confirmation Order shall be deemed to require the Trustee to concede that PG&E was negligent or that its negligence and/or equipment is deemed to be a substantial factor in causing all Fires with respect to the Assigned Rights and Causes of Action, and (ii) except as otherwise provided in the Trust Documents, the Plan and the Confirmation Order, the Trustee shall have the right to assert all defenses that the Debtors have or would have had under applicable law to all Fire Victim Claims, provided, however, that (A) the Trust's and Trustee's right to assert the defenses of comparative fault and/or comparative negligence with respect to a Claimant shall be limited to the determination of the amount of that Claimant's Claims and for no other purpose (including the determination of the amount of any other Claimant's Claims), (B) the Trust's rights and defenses (except as otherwise expressly set forth in this subsection (ii)(A) and (ii)(C)) shall not include claims that may be asserted by the Debtors or Reorganized Debtors by way of setoff, recoupment, counterclaim, or cross claim and (C) the Trustee may raise and assert Assigned Rights and Causes of Action in defense of a Claim. Any holder of a Fire Victim Claim shall be permitted to assert any defense to Assigned Rights and Causes of Action that such holder would have had under applicable law, if the Debtors, as opposed to the Trust, were asserting the Assigned Rights and Causes of Action.

**B.  Proof of Claim**. All Claimants must have filed a Proof of Claim for their Claims or those of their family in the ~~Bankruptcy~~Chapter 11 Cases on or before December 31, 2019, and as amended, which was the extended Bar Date for Fire Claimants. Claims that were not timely ~~submitted to~~filed in the ~~Bankruptcy~~Chapter 11 Cases are ineligible for payment by the Trust, unless the Claimant (a) obtains relief from the Bankruptcy Court to file a late Claim, and ~~submits the Claim to the Bankruptcy Cases and Trust~~(b) within 30 days after the Bankruptcy Court order allowing such late filing (i) files the Claim in the Chapter 11 Cases and (ii) submits such Claim to the Trust. Claims that have been disallowed or that have been withdrawn from the ~~official~~ Claims ~~registry~~Register in the ~~Bankruptcy~~Chapter 11 Cases are ineligible for payment by the Trust.

Case: 19-30088   Doc# 8074   Filed: 06/22/21   Entered: 06/22/20 19:14:01   Page 21

**C.** **Supporting Documents**. Section II sets forth each type of Claim ("**Claim Type**") the Trust will consider and the Supporting Documents that may be submitted for each. In addition to the Supporting Documents outlined in Section II, Claimants will be required to submit a Claims Questionnaire, as explained in Section V.

## II.   CLAIM TYPES AND SUPPORTING DOCUMENTS

The Trust will use all information that assists in objectively valuing Claims and alleviates the burden on Claimants. This includes, but is not limited to, data from a Claimant's (a) ~~Bankruptcy~~ Proof of Claim Form; (b) Wildfire Assistance Program Claim Form; (c) Damages Questionnaire established under Case Management Order 5 in the California North Bay Fire Cases (JCCP 4955); and (d) other reasonably ascertainable and reliable information. Claimants may be required to submit additional facts and documents to support their Claims for each of the following Claim Types:

**A.** **Real Property**.

    **1.** *Description of Real Property Claim.* Real Property Claims include Claims for damage to structures on residential or commercial real property, landscaping, forestry, and other real property improvements (*e.g.*, hardscape, fencing, retaining walls, pools, and solar panels) as a result of the Fires. Real Property damages may be measured in one of two ways: (1) the loss in fair market value to the property ("**Diminution in Value**"); or (2) the reasonable costs to rebuild or repair the property ("**Cost of Repair**"). Whether Diminution in Value or Cost of Repair is awarded will depend on the facts of each Claim.

        (a) *Diminution in Value.* Diminution in Value will be calculated by subtracting the fair market value of the property immediately after the Fire from the fair market value of the property immediately before the Fire.

        (b) *Cost of Repair.* The reasonable costs to rebuild or repair the property will be determined based on: (1) the use of the structure(s) and other improvement(s); (2) the extent of damage to the structure(s) ~~(~~; (e.g., burn damage versus smoke and soot damage~~)~~); (3) the square footage of structure(s); (4) the geographic location of the property; (5) the size of the vegetation on the property immediately before the Fire; (6) the extent of damage to vegetation; (7) the type of vegetation damaged; and (8) the fair market value of the property immediately before the Fire. In addition, the Claimant may claim the value of trees lost.

Exh 2- 3

(c) ***Consequential Damages.*** Claimants also may make a claim for other reasonably foreseeable economic losses directly caused by destruction of or damage to real property.

2. ***Types of Supporting Documents.*** Claimants may provide the following documents to support a Real Property Claim:

(a) Verification of ownership;
(b) Appraisals;
(c) Tax records;
(d) Purchase records;
(e) Mortgage or loan documentation showing the pre-Fire condition or value of the property;
(f) Pre-Fire and post-Fire photos or videos of the structures (interior or exterior) or other damaged areas of the property;
(g) Architectural or engineering drawings;
(h) Permits;
(i) Contractor rebuild or repair estimates or invoices;
(j) Arborist reports, timber surveys, or documents relating to landscaping; and
(k) Other supporting documents within the Claimant's possession.

**B.** **Personal Property**.

1. ***Description of Personal Property Claim.*** Personal Property Claims include Claims for loss of or damages to personal property, such as household items (*e.g.*, clothes, furniture, or tools) and automobiles, as a result of the Fires.

2. ***Types of Supporting Documents***. Claimants may provide the following documents to support a Personal Property Claim:

(a) List of items destroyed or damaged in the residency;
(b) Proofs of purchase;
(c) Pre-Fire and post-Fire photos;
(d) Appraisals; and
(e) Other supporting documents within the Claimant's possession.

**C.** **Personal Income Loss**.

1. ***Description of Personal Income Loss Claim.*** Personal Income Loss Claims include Claims of individuals who lost income ~~because (a) they were displaced by the Fires; (b) their employer suffered Business Losses and reduced or stopped paying wages to the Claimant~~ as a result of the Fires~~; or (c) the Fires or resulting injuries or conditions otherwise~~

~~interfered with their ability to earn income~~, to the extent permitted by California law.

    **2.**     *Loss of Rental Income.* Personal Income Loss Claims also include loss of income from rental of a damaged or destroyed property.

    **3.**     *Types of Supporting Documents.* Claimants may provide the following documents to support a Personal Income Loss Claim:

    (a)     Tax returns, including all schedules and attachments;
    (b)     W-2 Forms;
    (c)     1099 Forms;
    (d)     Lease agreements or canceled rent checks;
    (e)     Bank account statements identifying earnings;
    (f)     Paycheck stubs or payroll records; and
    (g)     Other supporting documents within the Claimant's possession.

**D.**     **Business Loss**.

    **1.**     *Description of Business Loss Claim.* Business Loss Claims include Claims for economic losses suffered by a business as a result of the Fires, including loss of business property or inventory used to conduct business and lost profits or revenue.

    **2.**     *Types of Supporting Documents.* Claimants may provide the following documents to support a Business Loss Claim:

    (a)     Description of the business, including its mission statement;
    (b)     Tax returns, including all schedules or attachments;
    (c)     Financial statements, including profit and loss statements;
    (d)     Articles of Incorporation, bylaws, shareholder lists, or partnership or limited partnership agreements;
    (e)     Leases, deeds, titles, or other documents identifying the property owned or occupied by the business;
    (f)     Canceled contracts;
    (g)     Photos, videos, or other documentary evidence of fire damage to the Claimant's home or business; and
    (h)     Other supporting documents within the Claimant's possession.

**E.**     **Other ~~Out of Pocket~~Out-of-Pocket Expenses**.

    **1.**     *Description of Other ~~Out of Pocket~~Out-of-Pocket Loss Claim.* Other ~~Out of Pocket~~Out-of-Pocket Loss Claims include Claims for ~~out of pocket~~out-of-pocket expenses that are not considered in any other Claim

Type. These may include additional living expenses, medical and counseling expenses, and other ~~out of pocket~~out-of-pocket expenses as a result of the Fires.

2. ***Types of Supporting Documents.*** Claimants may provide the following documents to support an Other ~~Out of Pocket~~Out-of-Pocket Loss Claim:

(a)        Documentation supporting a claim for additional living expenses;
(b)        Medical bills;
(c)        Counseling bills; and
(d)        Other supporting documents within the Claimant's possession.

**F.**       **Wrongful Death and ~~Serious~~ Personal Injury**.

1. ***Description of Wrongful Death and ~~Serious~~ Personal Injury Claim.*** Wrongful Death and ~~Serious~~ Personal Injury Claims include Claims relating to individuals who died or suffered ~~serious~~ personal injury as a result of the Fires **("PI/WD Claims")**. The Trustee and Claims Administrator will devise procedures ensuring a streamlined and sensitive process providing Claimants and their family members the dignity that is critical to successfully resolving Claims relating to these extraordinary losses.

2. ***Types of Supporting Documents.*** Claimants may provide medical records and other documents supporting a Wrongful Death or ~~Serious~~ Personal Injury Claim, as well as documents supporting a Claim for loss of relationship, love, support, and companionship.

**G.**       **Emotional Distress**.

1. ***Description of Emotional Distress Claim.*** Emotional Distress Claims include claims ~~arising from: (a) zone of danger evacuation from the Fires; (b) physical injury~~ for emotional distress the claimant suffered as a result of the Fires~~; and (c) substantial interference with the use and enjoyment of or invasion of property occupied by the Claimant, as well as the impact of the loss of the community~~, to the extent permitted by California law.

2. ***Types of Supporting Documents.*** Claimants may provide the following documents to support an Emotional Distress Claim:

(a)        A written narrative or an audio or video recording detailing the Claimant's evacuation and impact of the Fire on the Claimant and his or her family, including impact related to the loss of property and any sentimental items in the home;
(b)        Texts, emails, or social media content the Claimant created during the evacuation;

(c)     Photos or videos taken during the evacuation;

(d)     Pre-Fire and post-Fire photos and videos of the Claimant's property;

(e)     Records describing bodily injury or mental health counseling or treatment;

(f)     Documentation of medical and counseling expenses; and

(g)     Other supporting documents in the Claimant's possession.


## III.     OTHER DAMAGES

The Trustee and Claims Administrator will devise procedures to evaluate any additional categories of recoverable damages.


## IV.     CLAIMS SUBMISSION

The Claims Processor will maintain a secure, web-based portal (~~a~~the "**Portal**") for Claimants to submit Claims Questionnaires, Supporting Documents, Releases, and any other relevant information or documents. After submitting a Claim, Claimants will be able to use the Portal check their Claim status, receive and respond to determination notices, submit supplementary materials, and update contact information and other demographic information, if necessary.


## V.     CLAIMS QUESTIONNAIRE

In addition to the Claim-specific Supporting Documents identified in Section II, the Claims Administrator will require Claimants to complete a Claims Questionnaire that provides sufficient information to: (1) verify the Claimant's identity; (2) identify and support the claimed damages; and (3) demonstrate the Claimant's authority to assert the Claims.

Individual Claimants may submit Claims Questionnaires by household. The Claims Processor will pre-populate Claims Questionnaires with information already in its possession, including but not limited to data from a Claimant's (a) Bankruptcy Claim Proof of Claim Form; (b) Wildfire Assistance Program Claim Form; (c) Damages Questionnaire established under Case Management Order 5 in the California North Bay Fire Cases (JCCP 4955); and (d) information that is otherwise reasonably ascertainable and reliable.

The ~~Trustee will use reasonable efforts to~~Claims Administrator shall obtain insurance ~~claim~~claims files ~~directly from a Claimant's~~("**Insurance** ~~carrier but may require certain insurance information directly from the Claimant in support of their Claim. The Claim Questionnaire may include a consent by the Claimant to the Trust obtaining any and all information related to the Claim from Claimant's insurer.~~**Claims Files**") from the relevant insurers and store them on the Portal where they shall be made available to relevant Claimants and their attorneys for download, review and response over a thirty (30) day period. Such responses may include: (1) approving the ability of the Claims Administrator and Trust professionals to access the Insurance Claims Files applicable to a Claimant; (2) redacting portions of the Insurance Claims Files applicable to a Claimant; and/or (3) contesting

redactions applied to Insurance Claims Files by insurers or objecting to the Insurance Claims Files production, which will prevent the use of the Insurance Claims Files or specific portions thereof in the claims process. The Plan does not absolve the insurance carriers of their duty to fulfill their coverage obligations under their policies of insurance with a Claimant.

## VI.    ~~RELEASE~~RELEASES

~~Before receiving payment from the Trust, Claimants must submit signed releases in substantially the same form and content as the Claimant Release and Mutual Made Whole Release, attached to the Trust Agreement as Exhibits 4 and 5, respectively.~~

Prior to making each distribution to a Claimant on account of an Approved Fire Victim Claim, the Trust will require the Claimant to execute a release in substantially the same form and content as the (i) Claimant Release and Indemnification in Connection With the Fire Victim Trust Awards or (ii) Entity Claimant Release and Indemnification in Connection With the Fire Victim Trust Awards, attached to the Trust Agreement as **Exhibits 4A and 4B** (each, a "**Claimant Release**" and together the "**Claimant Releases**").[2] In addition, pursuant to and subject to Section 4.25(f)(ii) of the Plan and the Confirmation Order, and except with respect to any settlement or other agreement regarding the Fire Victim Claims asserted by Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River, the Trust shall require all Claimants who hold Approved Fire Victim Claims to execute a release in substantially the same form and content as the Mutual Made Whole Release attached to the Trust Agreement as **Exhibit 5**.

By signing ~~the~~a Claimant Release, the Claimant will agree to release, through the date on which the Claimant receives the distribution on account of which the Claimant Release is signed, the Trust, the Trustee, Delaware Trustee, TOC, Claims Administrator ~~and~~, Special Master and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, trustees, insurers, beneficiaries, administrators, and any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the Trust, the Trustee, Delaware Trustee, TOC, Claims Administrator or Special Master (the "**Trust Released Parties**") from any and all past, present and future claims, counterclaims, actions, rights or causes of action, liabilities, suits, demands, damages, losses, payments, judgments, debts, dues, sums of money, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, in law or in equity, contingent or non-contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether direct, representative, class or individual in nature, in any forum that an applicant had, have, or may have in the future ~~("Released Claims")~~ arising from, relating to, resulting from or in any way connected to, in whole or in part, the discharge of the Trust

---

[2] In accordance with the *Order on Remaining Objection of California State Agencies and the United States of America Regarding Proposed Government Entity Release* [Docket No. 7973] the governmental entities that were the subject of such Order shall not be required to execute a Claimant Release in connection with receiving distributions from the Trust.

Case: 19-30088    Doc# 8074    Filed: 06/22/20    Entered: 06/22/20 19:14:01    Page 27

Released Parties' duties and responsibilities under the Retention Order, the Trust Agreement, including any agreement, document, instrument or certification contemplated by the Trust Agreement, the CRP, the ~~Chapter 11~~ Plan, the formulation, preparation, negotiation, execution or consummation of the Trust Agreement, the CRP and the ~~Chapter 11~~ Plan, and any and all other orders of the District Court or Bankruptcy Court relating to the <u>Trust</u> Released Parties and/or their duties and responsibilities.

The <u>Claimant</u> Release will also require the Claimant to (i) acknowledge and agree that the Claimant remains solely responsible for resolving all open Government Payors<sup>~~2~~</sup><u>3</u> and Non-Government Payors' liens, rights of reimbursement, and other claims (collectively, "**Liens <u>and Other Claims</u>**"); (ii) use best efforts to resolve all known Liens <u>and Other Claims</u>; (iii) agree to indemnify and hold harmless the Trust in connection with all known Liens and <u>Other Claims and</u> any future Liens <u>and Other Claims</u>; (iv) agree that the Trust will not be liable for any act, or failure to act, of the lien resolution administrator retained in connection with the Fire Victim Trust; and (v) assign the Trust the right to pursue the 2015 Insurance Rights, if any, and the Claimant Insurance Rights (as defined in the Trust Agreement), if applicable, for the full value of the Fire Victim Claim.

## VII.   NOTICE OF CLAIMS DETERMINATION

**A.**   <u>**Claims Determination**</u>. The CRP will govern the process by which each Claim is reviewed, including <u>determining</u> whether ~~the~~<u>a</u> Claim is eligible or ineligible for payment and, if eligible, the amount approved for payment (<u>the</u> "**Claims Determination**"). After the Trust has fully evaluated a Claim, the Claims Processor will issue a notice to the Claimant explaining the review result ("**Determination Notice**"). If the Claim has been approved and is eligible for payment (<u>an</u> "**Approved Claim**"), <u>then</u> the notice will include the specific amount that the Trust has approved ~~for payment~~ (<u>the</u> "**Approved Claim Amount**") ~~and the stages in which payment may occur~~. <u>If the Claimant accepts the Approved Claim Amount, it becomes the final determination of the Claim (the "Final Determination")</u>. If the Claim is missing documents or information required for the Trust to fully evaluate the Claim (<u>a</u> "**Deficient Claim**"), the notice will explain what is required and provide a timeline within which the Claimant may resolve the deficiencies. If the Claim is ineligible for payment from the Trust pursuant to the CRP (~~"Disallowed Claim"~~), the notice will explain the reason(s) that the Claim is ineligible.

**B.**   <u>**Application of the Payment Percentage**</u>.

**1.**   <u>***Payment Upon Final Determination***</u>. Only after the Trustee has established an Initial Payment Percentage in accordance with Section

---

<sup>~~2~~</sup> ~~"Governmental Payor" means any federal, state, or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs, including, but not limited to, the Medicare Program, the Medicaid Program, Tricare, the Department of Veterans Affairs, and the Department of Indian Health Services.~~

<sup>3</sup> <u>"**Governmental Payor**" means any federal, state, or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs, including, but not limited to, the Medicare Program, the Medicaid Program, Tricare, the Department of Veterans Affairs, and the Department of Indian Health Services.</u>

VII.B.2 and the Trust Agreement, then once there is a Final Determination of a Claim pursuant to Section II.B., VII.A, VIII.A, VIII.C, IX.B.1 or IX.C.1 hereof, the Claimant will receive a *pro rata* share of the Final Determination based on a Payment Percentage described in Section VII.B.2 & VII.B.3. For the purpose of payment by the Trust, a Final Judicial Determination (as defined in Section IX.B.1 hereof) shall constitute a Final Determination.

2. *Initial Payment Percentage.* An Initial Payment Percentage shall be set after the Trust is established by the Trustee in accordance with the Trust Agreement. The Initial Payment Percentage shall apply to **all** Final Determinations except as provided in Section VII.B.3 with respect to supplemental payments in the event the Initial Payment Percentage is changed.

3. *Supplemental Payment Percentage.* When the Trustee determines that the then-current estimates of the Trust's assets and its liabilities, as well as then-estimated value of then-pending Claims, warrant additional distributions on account of Final Determinations, the Trustee shall set a Supplemental Payment Percentage in accordance with the Trust Agreement. Such Supplemental Payment Percentage shall be applied to all Final Determinations that became final prior to the establishment of such Supplemental Payment Percentage. Claimants whose Claim becomes a Final Determination after a Supplemental Payment Percentage is set shall receive an initial distribution equal to the aggregate of the Initial Payment Percentage and all prior Supplemental Payment Percentages set by the Trustee.

## VIII. DISPUTE RESOLUTION

Claimants dissatisfied with their Claims Determination will have the opportunity to dispute the determination and to provide supplemental information or documents to support their dispute. The Trust will implement the following three-tiered process:

A. 1. **Reconsideration**. If a Claimant contests a Claims Determination, the Claims Administrator and Claims Processor will review the Claim again and will consider any newly submitted information and documents and all previously submitted information. Afterwards, Taking into account all information before them, the Claims Administrator and Claims Processor will determine the amount in which the Claim should be approved, and the Claims Processor will issue a Reconsideration Determination. The Claimant may accept the Reconsideration Determination or may appeal to a Neutral. If accepted by the Claimant, the Reconsideration Determination becomes the Final Determination of the Claim.

Exh 2- 10

**B.** ~~2.~~ **Appeal**. If a Claimant appeals a Reconsideration Determination, the Claimant shall submit a Notice of Appeal to the Claims Administrator. The Claims Administrator shall submit the Claim to the Appeals Officer³⁴ for further consideration *de novo* in accordance with the procedure set forth herein.

1. ~~(a)~~ The Claims Administrator shall submit the following to the Appeals Officer and the Claimant:

   (a) ~~(i)~~ The Notice of Appeal;
   (b) ~~(ii)~~ The record from the Claims Administrator and Claims Processor resulting in the Claims Determination;
   (c) ~~(iii)~~ The record from the Claims Administrator and Claims Processor resulting in the Reconsideration Determination;

2. ~~(b)~~ Claimant may submit to the Appeals Officer and the Claims Administrator the following:

   (a) ~~(i)~~ Any additional information and/or documents not included in the record from either the Claims ~~or~~Determination or the Reconsideration Determination;
   (b) ~~(ii)~~ A brief not to exceed twenty (20) pages setting forth the issues on appeal and the basis for appeal as to each such issue.

3. ~~(c)~~ Claimant shall designate the type of review sought:

   (a) ~~(i)~~ Document review only;
   (b) ~~(ii)~~ Document review followed by telephonic hearing;
   (c) ~~(iii)~~ Document review followed by virtual hearing
   (d) ~~(iv)~~ Document review followed by in-person hearing.

4. ~~(d)~~ The Appeals Officer shall determine whether the appeal shall be considered by a Neutral from the Complex Panel. The Claimant may request that the appeal be considered by a Neutral from the Complex Panel, subject to a determination by the Appeals Officer.

   (a) ~~(i)~~ The determination of whether an appeal should be considered by a Neutral from the Complex Panel shall be made by the Appeals Officer in his sole discretion.
   (b) ~~(ii)~~ The Appeals Officer may consider the type, amount and complexity of a Claim and the type of review requested when

---

³⁴ The **Appeals Officer** shall be an individual appointed for the sole purpose of determining whether an appeal from a Determination of the Claims Administrator should be heard by a Neutral from the General Panel or by a Neutral from the Complex Panel. Such determination shall be at the sole and exclusive discretion of the Appeals Officer, who shall at all times remain independent of the Trustee and the Claims Administrator.

Exh 2- 11

determining whether an appeal should be considered by a Neutral from the Complex Panel the Claim

(c) ~~(iii)~~ The Appeals Officer's determination of whether an appeal should be considered by a Neutral from the Complex Panel shall be final, binding and non-appealable and is not subject to review by any Court.

**5.** ~~(e)~~ A Neutral shall be chosen at random from the General Panel or from the Complex Panel, as determined by the Appeals Officer, to consider the Claim *de novo* in accordance with the type of review requested by Claimant~~:~~.

**6.** ~~(f)~~ The Neutral shall consider the appeal based on all items submitted by Claimant through the close of the review and/or hearing.

**7.** ~~(g)~~ Within thirty (30) days of the close of the hearing, the Neutral shall issue an Appeals Determination, increasing, decreasing, or confirming the Reconsideration Determination.

**C.** ~~3.~~ **Trustee Determination**. The Neutral shall submit to the Trustee the Appeals Determination, increasing, decreasing, or confirming the Reconsideration Determination. The Trustee may accept, reject, or revise the Appeals Determination to ensure that all Claims are treated equitably and then will issue a Trustee Determination to the Claimant. If an Eligible Claimant (as defined in Section IX.B, below) rejects the Trustee Determination ~~is the final Claims Determination regarding both eligibility and payment amount, if any,~~ but fails to file an election notice pursuant to Section IX.B.1 hereof within 14 days of receiving the Trustee Determination ~~will be final, binding, and non-appealable and is not subject to review by any Court, **including right to trial by jury**.~~[4], the Eligible Claimant shall be deemed to have accepted the Trustee Determination. If the Claimant accepts the Trustee Determination it becomes a Final Determination.

# IX.   COURT REVIEW

**A.   Court Review of Claims**.  This Section IX shall only apply to Claimants who are identified in the Confirmation Order at paragraph [18(k)].[5]

---

[4] ~~As of the Effective Date, all Fire Victim Claims against PG&E are discharged and channeled into this Trust. Any trial would be against the Trust and against the interests of fellow Fire Victims, not against PG&E. As such, the procedures in this Trust are set up to protect Fire Victims' due process rights and create fair, just, and expedient results.~~

[5] For the avoidance of doubt, Section IX(C) of this CRP applies to all Claimants and all Claims generally.

**B.** **Bankruptcy Court Review for Eligible Claims**. Claimants who fully exhaust the dispute resolution process set forth in Section VIII by (i) contesting their Claims Determinations, (ii) exhausting their appellate rights under the CRP, (iii) rejecting the Trustee Determination, and (iv) satisfying the condition of eligibility under Section IX.A ("**Eligible Claimants**") with respect to their Claims, shall have the right to have the Trustee Determination (x) with respect to such Claims and in respect of damages, and (y) with respect to any other determination (legal or factual) made by the Trustee in connection with such Claims, in each case, given plenary review by the Bankruptcy Court,[6] in accordance with the Trust Documents, the Plan and the Confirmation Order and the procedures set forth therein. Judicial Determination (described herein, and generally "**Judicial Determination**") shall be treated as a contested matter pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure. Except as otherwise provided in the Trust Documents, Plan or Confirmation Order, the Trustee shall have the right to assert all defenses that the Debtors have or would have had under applicable law to such Claims, provided, however, that (A) the Trust's and the Trustee's right to assert the defenses of comparative fault and/or comparative negligence with respect to a Claimant shall be limited to the determination of the amount of that Claimant's Claims and for no other purpose (including the determination of the amount of any other Claimant's Claims), (B) the Trust's rights and defenses (except as otherwise expressly set forth in this Section IX(B)(A) and Section IX(B)(C)) shall not include claims that may be asserted by the Debtors or Reorganized Debtors by way of setoff, recoupment, counterclaim, or cross claim, (C) the Trustee may raise and assert Assigned Rights and Causes of Action in respect to a Claim, and (D) the Trustee may waive any defense and/or concede any issue of fact or law. Eligible Claimants shall be permitted to assert any defense to Assigned Rights and Causes of Action that such Eligible Claimants would have had under applicable law if the Debtors, as opposed to the Trust, were asserting the Assigned Rights and Causes of Action. Eligible Claimants remain subject to, and bound by, the Plan, including, without limitation, the Channeling Injunction and any other injunction or release issued or granted in connection with the Plan. Payment by the Trust of a judgment for monetary damages obtained pursuant to this Section IX shall be subject to adjustment, if applicable, for subordination of Claims for punitive or exemplary damages as provided in Section IX.C.

1. *Election of Judicial Determination*. Within fourteen (14) days after an Eligible Claimant receives a Trustee Determination (the "**Election Deadline**") with respect to a Claim, such Eligible Claimant must notify the Trust of the Eligible Claimant's intent to seek a Judicial Determination by submitting a written notice to the Trustee (a "**Judicial**

---

[6] To the extent the Bankruptcy Court determines that a claim asserted by an Eligible Claimant constitutes a personal injury tort or wrongful death claim under and for purposes of 28 U.S.C. § 157(b)(5) (an "**Eligible PI/WD Claimant**"), that Eligible PI/WD Claimant may elect review of its claim pursuant to this Section IX in the District Court for the Northern District of California, subject to the same constraints, election, notice and filing requirements, and other limitations described herein with respect to Bankruptcy Court Review; provided, however, that an Eligible PI/WD Claimant may request that the District Court provide relief, such that review of its Claim may proceed in the court where such claim was pending or could have been pending prior to the Petition Date. The Trustee's rights to contest any such request are hereby preserved. Nothing in these procedures shall be deemed a waiver or modification of the Eligible PI/WD Claimant's right, if any, to a trial by jury.

Determination Election Notice**") and filing a copy of such Judicial Determination Election Notice with the Bankruptcy Court. Eligible Claimants who fail to submit and file a Judicial Determination Election Notice by the Election Deadline shall be deemed to accept the Trustee Determination of such Claim, and such Trustee Determination shall become a Final Determination that is final, binding, non-appealable and not subject to review by any Court. Eligible Claimants who submit and file a Judicial Determination Election Notice by the Election Deadline ("**Electing Judicial Claimants**") shall have no right to receive any distribution from the Trust absent the issuance of an order or judgment of the Bankruptcy Court, or District Court as applicable, awarding damages on account of the Eligible Claimants' Claim that is no longer subject to appeal and for which no appeal is pending (a "**Final Judicial Determination**").

2.    *Recovery Limited to Final Judicial Determination*.  To the extent that a Claimant's Final Judicial Determination with respect to a Claim results in a judgment or award in an amount less than the amount of the Trustee Determination with respect to such Claim, the Claimant will receive payments from the Trust that will be based on the amount of the Final Judicial Determination for such Claim. In determining whether a Claimant's Final Judicial Determination is less than the amount of the Trustee Determination, no amounts awarded for punitive or exemplary damages shall be considered in either circumstance.

3.    *Judicial Determinations after Initial Review Period*. Electing Judicial Claimants may only seek a Final Judicial Determination by commencing a contested matter against the Trust in Bankruptcy Court under this Section IX.B within the time prescribed herein after all Claimants that hold Approved Claims have received a Determination Notice with respect to such Approved Claims and have had an opportunity to fully exhaust the dispute resolution process set forth in Section VIII of this CRP (the "**Initial Review Period**").  The Trustee shall file a notice that the Initial Review Period has ended (the "**Initial Review Period Notice**") with the Bankruptcy Court and post the Initial Review Period Notice on the Trust Website.[7]  Electing Judicial Claimants who fail to commence a contested matter in the Bankruptcy Court within the fourteen (14) day period after the filing of the Initial Review Period Notice shall be deemed to accept the Trustee Determination of their Claims, and such Trustee

---

[7] The Trustee shall also contemporaneously serve a copy of the Initial Review Period Notice via email on counsel of record or as otherwise provided in the Claims Questionnaire for Claimants who are identified in the Confirmation Order at paragraph [18(k)] and upon such additional representatives of any of such Claimants as may be designated in writing by that Claimant from time to time, provided that, such email notices shall be required for a Claimant only if the Claimant is an Electing Judicial Claimant or the Election Deadline for the Claimant has not passed when the Initial Review Period Notice is filed.

Exh 2- 14

Determination shall become a Final Determination that is final, binding, non-appealable and not subject to review by any Court. Upon filing, all contested matters commenced under this section shall be stayed pending a decision by the Bankruptcy Court regarding the consolidation of all such matters as set forth in Section IX.B.5 hereof.

4. ***Supporting Evidence.*** During the Judicial Determination, the Claimant and the Trustee shall be governed by the rights and obligations imposed upon parties to a contested matter under the Federal Rules of Bankruptcy Procedure; provided, however, that an Electing Judicial Claimant shall not have the right to introduce into evidence during the Judicial Determination any information or documents that (a)(1) were requested by the Trustee or (2) the Electing Judicial Claimant reasonably could have been expected (before issuance of the Trustee Determination) to rely on or introduce as evidence in a Judicial Proceeding, and (b) were available to the Electing Judicial Claimant at the time of the request or during the pendency of the review of the Claim by the Trustee and Claims Administrator, but which the Claimant failed to or refused to provide to the Trust prior to the issuance of the Trustee Determination; provided, however, that nothing in this Subsection IX.B.4 shall prohibit an Electing Judicial Claimant from introducing information or documents that is responsive to information or documents not disclosed to the Electing Judicial Claimant before the issuance of the Trustee Determination. The Claimant's responses to requests by the Trustee for documents or information shall be subject to Rule 37 of the Federal Rules of Civil Procedures, as applicable under the Federal Rules of Bankruptcy Procedure. Claimants shall not have the right to disclose the Claims Determination, Appeals Determination or Trustee Determination to any Court except as provided in the following sentence. Subject to the terms of any protective order entered by a Court, a Claimant's filing of a Judicial Determination Election Notice shall permit the Trust or any representative thereof to introduce as evidence before a Court all information and documents submitted to the Trust under the CRP, and the Claimant may introduce any and all information and documents that it submitted to the Trust under the CRP.

5. ***Consolidation of Judicial Determinations***. Subject to notice and a hearing and at the discretion of the Bankruptcy Court, all judicial review proceedings elected pursuant to this section IX.B may be heard and determined in one or more consolidated proceedings to the extent practicable, in a manner acceptable to the court, and in accordance with applicable law. All contested matters filed within the fourteen (14) day period following the filing of the Initial Review Period Notice shall be stayed pending the Bankruptcy Court's determination on how or whether to proceed under this subsection.

Exh 2- 15

6.    ***Attorneys' Fees and Expenses.*** Electing Judicial Claimants shall be required to pay their own attorneys' fees and expenses unless such fees and expenses are otherwise recoverable as part of their Claim under California law.

7.    ***Payment of Bankruptcy Court Determinations***. Under no circumstances shall interest be paid under any statute on any judgments obtained in the tort system. If and when a Claimant obtains a Final Judicial Determination it shall be treated within and receive *pro rata* distributions from the Trust, subject to the Trust Documents, including Section VII.B hereof, the Plan and the Confirmation Order.

**C.** **Punitive and Exemplary Damages**. The Trustee shall have the discretion to award punitive or exemplary damages consistent with California law and the Trust Agreement. Any award of punitive or exemplary damages made by the Trustee or a Court with respect to any Claim shall be subordinate and junior in right to the prior payment in full of all Final Determinations and Final Judicial Determinations as provided herein.

**D.** **Redetermination of Prior Final Determinations**. To the extent that a Final Judicial Determination of a Claim implicates a determination of damages which is inconsistent to other Claims, theories, facts, or issues of a similar type to the Claim subject of a Final Judicial Determination, the Trustee, in his sole and absolute discretion, may redetermine, adjust or modify the amount of any prior Final Determinations, solely in an upward manner, to be consistent with such Final Judicial Determination.

## X. PREVENTION AND DETECTION OF FRAUD

**A.** The Claims Administrator may institute claim auditing procedures and other procedures to detect and prevent the allowance of fraudulent claims. All Claims must be signed under the pains and penalties of perjury. To the extent of applicable law, the submission of a fraudulent Claim may violate the criminal laws of the United States, including the criminal provisions applicable to Bankruptcy Crimes, 18 U.S.C. § 152, and to the extent of applicable law, may subject those responsible to criminal prosecution in the federal courts. If the Claims Administrator determines that a Claim is fraudulent, the Trustee shall deny the Claim and so inform the Claimant.

**B.** The Claims Administrator shall have the authority to request the Claimant to submit additional records in order to make a determination of allowance or denial of any Claim. If the Claimant refuses to or fails to respond to such a request within ninety (90) days or if the Claims Administrator determines that a Claimant's response is inadequate, the Claims Administrator shall take such actions as she deems appropriate on the Claim and notify the Claimant of the action and basis therefore and the Claimant may dispute the same and seek a Judicial Determination as set forth in Article IX.

**C.** The Claims Administrator may conduct random audits to verify supporting documentation submitted (including death certificates, medical and other records) by randomly selecting Claims and may audit individual claims or groups of Claims.

**D.** All Claimants must certify to the Claims Administrator on the Claims Questionnaire that the Claimant has not transferred his or her or its right to recover from the Released Parties with respect to his or her Claim such that the Claim can be asserted by another person or entity. The fact that a Claimant has executed a "subrogation" agreement with a health insurer or that a statutory provision grants to any governmental entity rights of subrogation shall not of itself be construed as a transfer of Claimant's right to recover.

Case: 19-30088    Doc# 8074    Filed: 06/22/20    Entered: 06/22/20 19:14:01    Page 36

# XI.    ATTORNEY'S FEES

**A.    Attorney's Fees Determined Pursuant to State Law.** Any award of attorney's fees with respect to a Claim shall be determined in accordance with the laws of the State of California.

## B.    ~~IX.~~ Hold-Back for Attorney Liens

Prior to receiving any award in respect of any Claim Determination, any Claimant who was represented by an attorney ("**Claimant Attorney**") at the time of filing its Proof of Claim in the Chapter 11 Cases or at any time thereafter, shall: (1) agree to receive their award through their Claimant Attorney; or (2) provide evidence to the satisfaction of the Claims Administrator and Trustee that there is no lien or potential lien on their ~~Claims~~Final Determination asserted or assertable by a Claimant Attorney (an "**Attorney Lien**"), including by providing written confirmation from such Claimant Attorney that no Attorney Lien exists. If an Attorney Lien exists, is asserted or assertable, then only the undisputed portion of the award shall be provided to the Claimant. The disputed portion shall be held back until the Claims Administrator receives satisfactory notice in his or her sole determination, that such dispute and Attorney Lien has been resolved. The payment of attorney's fees incurred by Claimant and the satisfaction of any Attorney Lien is the sole obligation of Claimant. Neither the Trustee nor the Trust is responsible for the payment of any attorney's fees or the resolution of any Attorney Lien incurred in connection with a Claim.

## XII. ~~X.~~ CREDITS AND DEDUCTIONS

      **A.    Credits for Amounts Covered By Insurance**. In determining all award amounts, the Trustee will take into account all insurance recoveries available to the Claimant as provided in the Trust Agreement.

      **B.    Deduction for Payment Received from Wildfire Assistance Fund**. In determining all award amounts, the Trustee will take into account any payment Claimant has received from the Wildfire Assistance Fund as provided in the Trust Agreement.

      **C.    Deduction for Payment Received from FEMA.** In determining all award amounts, the Trustee will take into account any payment Claimant has received from the Federal Emergency Management Agency ("**FEMA**") on account of the same damages or losses, as provided in the Trust Agreement.

      **D.    Medical Liens.** In determining all award amounts, the Trustee will take into account all known outstanding governmental medical liens, if any, currently owed by the Claimant. Claimants shall be responsible for the payment of all medical or other applicable liens. The Claimant will undertake to resolve such liens, and if not done, the Trustee will take over the process, solely with respect to governmental liens. The Trustee will retain the services of a Lien Resolution Administrator to identify, resolve, and satisfy, in accordance with applicable law, certain Claimant governmental repayment obligations, including, but not limited to, Medicare (Parts A and B), Medicaid, and other governmental liens.

      **E.    Taxes.** In connection with their duties hereunder, the Trustee and Claims Administrator will make every effort to ensure that the Trust complies with all applicable laws, including without limitation all tax return filings and information reporting requirements set forth in applicable laws.

      **F.    Authority to Withhold Distributions Pending Resolution of Third Party Claims.** The Trustee has the authority and discretion to withhold any distribution, or portions thereof, on account of any Claim that received a Final Determination or Judicial Determination if the Claimant is subject to pending or contemplated litigation brought by the Trust in respect of Assigned Rights and Causes of Action under the Plan until the final resolution of such litigation, including the conclusion of all appellate rights or expiration of any statutes of limitation. The Trustee may disallow any Claim of any entity or person that is liable to the Trust in respect of Assigned Rights and Causes of Action under the Plan until such entity or person has paid the amount for which such entity or person is liable to the Trust.

## XIII. ~~XI.~~ CONFIDENTIALITY OF CLAIMS INFORMATION

      All personal information, facts, and documents submitted to the Trust by or regarding any Claimant or Claim shall be kept confidential and shall only be disclosed: (1) to the Trustee, Claims Administrator, Claims Processor, Neutrals, and Trust Professionals to the extent

Case: 19-30088   Doc# 8074   Filed: 06/22/20   Entered: 06/22/20 19:14:01   Page 38

necessary to process and pay Claims; or (2) as may be required by applicable law, ethical requirements, or legitimate business uses associated with administering the Trust.

63737092.v7

| Summary report: Litéra® Change-Pro TDC 7.5.0.125 Document comparison done on 6/19/2020 6:45:33 PM | |
|---|---|
| **Style name:** Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 63737092_7.docx | |
| **Modified filename:** 63794343_7.docx | |
| **Changes:** | |
| Add | 178 |
| Delete | 103 |
| Move From | 4 |
| Move To | 4 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 289 |

EXHIBIT "2"

| | |
|---|---|
| **Subject:** | RE: Notice in Accordance with Court's May 27, 2020 Order |
| **Date:** | Monday, June 8, 2020 at 2:39:10 PM Pacific Daylight Time |
| **From:** | Goodman, Eric R. |
| **To:** | Debra Grassgreen |
| **Attachments:** | image001.jpg, image002.jpg, image003.jpg, image004.jpg, image005.jpg |

I don't know the exact timing, but you're covered.

---

**From:** Debra Grassgreen <dgrassgreen@pszjlaw.com>
**Sent:** Monday, June 08, 2020 5:38 PM
**To:** Goodman, Eric R. <egoodman@bakerlaw.com>
**Subject:** RE: Notice in Accordance with Court's May 27, 2020 Order

Hi Eric.

What is the timing of the filing of a markup of the order that will reflect this?   Could you also advise when you expect to file the revised trust documents and claims resolution procedures?

Best,

Debra

**Debra Grassgreen**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 415.217.5102
Tel: 415.263.7000 | Cell: 415.297.1994 | Fax: 415.263.7010
dgrassgreen@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Costa Mesa

---

**From:** Goodman, Eric R. [mailto:egoodman@bakerlaw.com]
**Sent:** Tuesday, June 02, 2020 7:18 AM
**To:** Karl Knight; Liou, Jessica
**Cc:** jkim@kbkllp.com; Stephen karotkin; Goren, Matthew; tkeller@kbkllp.com; Foust, Rachael; Carens, Liza; Morganelli, Brian; Debra Grassgreen
**Subject:** RE: Notice in Accordance with Court's May 27, 2020 Order

Karl,

We do not object to including your Statement of Non-Consent as a timely submitted objection to the lack of de novo review in the Confirmation Order.  This may be moot, however, if the Trust Documents are changed to provide for de novo review for all fire victims.

Best Regards,

Eric

---

**From:** Karl Knight <karl@karlknight.com>
**Sent:** Monday, June 01, 2020 11:44 PM
**To:** Liou, Jessica <jessica.liou@weil.com>
**Cc:** jkim@kbkllp.com; Karotkin, Stephen <stephen.karotkin@weil.com>; Goren, Matthew
<matthew.goren@weil.com>; tkeller@kbkllp.com; Foust, Rachael <Rachael.Foust@weil.com>; Carens, Liza
<Liza.Carens@weil.com>; Morganelli, Brian <Brian.Morganelli@weil.com>; Goodman, Eric R.
<egoodman@bakerlaw.com>; Debra Grassgreen <dgrassgreen@pszjlaw.com>
**Subject:** Re: Notice in Accordance with Court's May 27, 2020 Order

[External Email: Use caution when clicking on links or opening attachments.]

Jessica:

Thank you for your email.  However, I do not believe that we need to ask other parties if
they have an objection to having judicial review of our claims.   The Court made a ruling in
a detailed memorandum decision that fire victims who filed timely objections preserved
their right to judicial review.

The ambiguity arises from the fact that the Court considered the objection of a handful of
parties on this issue before the deadline had passed for others to file objections on the
very same basis.   There is no reason to believe that the Court would or could grant that
right to the business claimants and not grant that right to other fire victims that filed timely
objections on this basis, as we did.   I stated clearly in my pleading that I was objecting to
confirmation of the plan on this basis.

I am copying Eric Goodman as you suggest, but at this point, I will also reach out to the
Court and request that I be heard on this matter at the confirmation hearing.   I was hoping
that I would not have to bother the Court with what should be a straight-forward matter in
light of the Court's prior ruling.

Thank you

Karl


On Mon, Jun 1, 2020 at 6:49 PM Liou, Jessica <jessica.liou@weil.com> wrote:

> Mr. Knight,
> Thanks for reaching out.  The Debtors have no objection to preserving your right to have your Fire Victim
> Claim adjudicated by the Court after exhaustion of all available remedies under the Fire Victim Trust
> Agreement and Fire Victim Claims Resolution Procedures.  We will note, however, that this issue is
> primarily an issue being negotiated and discussed among the advisors to the Fire Victim Trustee, the
> Official Committee of Tort Claimants (the TCC), the Consenting Fire Claimant Professionals and the Ad Hoc
> Group of Business Claimants (i.e., Adventist, ATT, Comcast, and certain Paradise entities).  So we suggest

you reach out directly to Eric Goodman at Baker Hostetler (who represents the TCC) in the first instance to confirm that all those parties likewise see no issue with preserving your right to Court adjudication of your Fire Victim Claim. I've provided Eric Goodman's contact information below:

**Eric Goodman**
Partner

Key Tower
127 Public Square | Suite 2000
Cleveland, OH 44114-1214
T +1.216.861.7418

egoodman@bakerlaw.com
bakerlaw.com

Thanks,
Jessica



**Jessica Liou**
Partner
Business Finance & Restructuring

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Jessica.Liou@weil.com
+1 212 310 8817 Direct
+1 212 310 8007 Fax

Weil's Bankruptcy Blog: http://bfr.weil.com

**From:** Karl Knight <karl@karlknight.com>
**Sent:** Monday, June 1, 2020 7:26 PM
**To:** jkim@kbkllp.com; Karotkin, Stephen <stephen.karotkin@weil.com>; Liou, Jessica <jessica.liou@weil.com>; Goren, Matthew <matthew.goren@weil.com>; tkeller@kbkllp.com
**Subject:** Re: Notice in Accordance with Court's May 27, 2020 Order

Counsel:

I have not received a response to any of my emails on this matter and for some reason the Court's order

Case: 19-30088    Doc# 8074    Filed: 06/22/20    Entered: 06/22/20 19:14:01    Page 44

scheduling time at the hearing which was just issued did not include my name.   Before I reach out to the Court and request that they correct this, could you respond to my email and let me know what the Plan Proponents' position is on whether this will be addressed in the proposed Confirmation Order.

Karl Knight

On Sat, May 30, 2020 at 8:52 AM Karl Knight <karl@karlknight.com> wrote:

Dear Judge Montali:

In accordance with this Court's Order,  I am notifying your honor (and copying Debtor's counsel), of the following:

Docket Number of Objection:  7366
Name of Person Who Will Speak:  Karl A. Knight (pro per)
Amount of Time Requested:  2 minutes

I have reached out to Debtors' counsel to confirm that the Court's ruling  (Docket 7366) on certain business objections with respect to judicial claims review will also apply to our objection and that the Confirmation Order will include language to make that clear.  However,  as of the Court's deadline, I have not received such confirmation.

I understand that Debtors' counsel is very busy.   If this matter is resolved in advance of the hearing, I will have no need to address the Court.  However, in light of the Court's deadline to submit this notice, I felt that I needed to request the time to address the Court on this issue.

Respectfully,

Karl Knight

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content
of this email is limited to the matters specifically addressed herein
and may not contain a full description of all relevant facts or a
complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

CONFIDENTIALITY
This e-mail message and any attachments thereto is intended only for use by the addressee(s) named herein and may contain legally privileged and/or
confidential information. If you are not the intended recipient of this e-mail message, you are hereby notified that any dissemination, distribution or
copying of this e-mail message, and any attachments thereto is strictly prohibited. If you have received this e-mail message in error, please
immediately notify me by telephone and permanently delete the original and any copies of this email and any prints thereof.

NOT INTENDED AS A SUBSTITUTE FOR A WRITING
Notwithstanding the Uniform Electronic Transactions Act or the applicability of any other law of similar substance and effect, absent an express
statement to the contrary hereinabove, this e-mail message, its contents, and any attachments hereto are not intended to represent an offer or
acceptance to enter into a contract and are not otherwise intended to bind the sender, Pachulski Stang Ziehl & Jones LLP, any of its clients, or any
other person or entity.