**Exhibit A-5**

**De-Identification Tool Development**



# Contract Work Authorization (CWA)

**This Contract Work Authorization ("CWA") No. 4102020 is issued under and pursuant to the Blanket Agreement or Master Service Agreement No. C73 (formerly 4400011340) dated January 19, 2017 (the "MSA") KPMG LLP ("Contractor"), a Delaware limited liability partnership, and Pacific Gas and Electric Company ("PG&E")**, and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105. Contractor shall perform all Work under this CWA pursuant to and in accordance with the terms and conditions of the MSA.

| | | | |
|---|---|---|---|
| **Contractor's Legal Name:** | KPMG, LLP | **Total Number of Pages:** | 11 |
| **Contractor's Address:** | PO Box 120001<br>Dallas, TX 75312 | | |
| **Project Name**: | KPMG –De-Identification Tool Deployment | | |
| **Job Location**: | San Francisco, CA and other various PG&E Locations | | |

**WORK**: Contractor shall, at its own risk and expense, perform the Work described in this Contract Work Authorization and furnish all labor, equipment, and materials necessary to complete the Work as summarized below and as more fully described in Attachment 1, Scope of Work.

KPMG will support PG&E in running a pilot of the tool Dataguise. This support includes onboarding to four (4) on premise applications, de-identifying the lower-level databases of the selected applications, providing performance testing and test results, and providing an access management playbook to facilitate future de-identification.

Your work under this Agreement is subject to the applicable procedures and/or processes approved by the Bankruptcy Court in PG&E's bankruptcy proceeding (Bankruptcy Case No. 19-30088 (DM)) in the United States Bankruptcy Court, Northern District of California, San Francisco Division for the retention of counsel [outside professionals] and those procedures and processes are expressly incorporated herein, as they may be changed from time to time by the Bankruptcy Court.

**ATTACHMENTS: Each of the following documents are attached to this CWA and are incorporated herein by this reference:**
Attachment 1: Scope of Work,
Attachment 2: Appendix A, 3 pages

**CWA TERM**: This CWA is effective upon signature by both parties and expires on November 30,2020. Time is of the essence.

**CWA COMPLETION:** Contractor shall commence performance hereof when directed to do so by PG&E and Work shall be completed by the completion date of November 30, 2020.

**CONSIDERATION**: As full consideration for satisfactory performance of the Work under this CWA by Contractor, PG&E's total obligation to Contractor shall not exceed the following amount. This amount is inclusive of all taxes incurred in the performance of the Work. Any change to this amount shall only be authorized in writing by a PG&E CWA Change Order, fully executed by both PG&E and Contractor.

**TOTAL**: $90,000.00

**THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT WORK AUTHORIZATION.**

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR: KPMG, LLP | |
|---|---|---|---|
| **Signature** | *Lazaro Hernandez* | **Signature** | *Michael Gomez* |
| **Name** | Lazaro Hernandez | **Name** | Michael Gomez |
| **Title** | Manager, Sourcing Operations | **Title** | Principal |
| **Date** | 04/27/2020 | **Date** | 4/27/2020 |

62-4229 CWA (9/26/11)          Sourcing



| ADMINISTRATION | | | |
|---|---|---|---|
| **PG&E Negotiator** | | **Contractor Represent** | |
| **Phone** | | **Phone** | |
| **Email** | | **Email** | |
| **Accounting Reference** | | | |
| **PG&E Work Supervisor:** | Tyler Howe | **Phone: (**415) 973-1434 | |
| **INVOICE INSTRUCTIONS**: Contractor shall send invoices for each payment when due, showing the CWA number, to: PACIFIC GAS AND ELECTRIC COMPANY | **Send ORIGINAL Invoice to:** | Invoices should be sent to PG&E Law Department Finance Group, P. O. Box 7133, San Francisco, CA 94120 or emailed to GenlCnslLawPaymentProcessingGroup@pge.com. | |
| | | | |
| | For information regarding invoice status: GenlCnslLawPaymentProcessingGroup@pge.com or call 415-972-5673. | | |

| INTERNAL PG&E USE ONLY | | |
|---|---|---|
| **Distribution Date** | | |
| **Distribution of Copies:** | ☐ Document Services (Signed Original Copy) Mail Code N5D 245 MARKET ST., SAN FRANCISCO | ☐ Contractor (Signed Original Copy) |
| | ☐ Work Supervisor | ☐ Manager |
| | ☐ Invoice Approver | ☐ Supervisor |
| | ☐ V.P. | ☐ Sourcing/ Purchasing |
| | ☐ Director | ☐ Law |

# Attachment A

# Statement of Work
# Symantec IT Analytics Reporting Server Project

This Statement of Work (this "**SOW**") outlines the engagement between Pacific Gas and Electric Company ("**PG&E**") and KPMG LLP ("**KPMG**") to perform the services described below.

The governing master services agreement for this SOW and the work hereunder is Master Services Agreement #4400011340, dated January 19, 2017, as amended (the "**MSA**").

## 1. DESCRIPTION OF SERVICES

During this project, KPMG will support PG&E in running a pilot of the tool Dataguise. This support includes onboarding to four (4) on premise applications, de-identifying the lower-level databases of the selected applications, providing performance testing and test results, and providing an access management playbook to facilitate future de-identification.

## 2. SCOPE

This SOW covers the current understanding between the parties of the Services to be provided under this SOW; however, the parties will work together if PG&E requests changes to the scope of Services to be provided hereunder to document any such changes in an addendum to or Change Order with respect to the Contract Work Authorization to which this SOW is attached (the "**CWA**"), subject to agreement between the parties.

## 3. SCHEDULE

The planned project duration is twelve weeks. KPMG will begin work on March 9, 2020 or after receiving a signed copy of the CWA, whichever occurs later. The project is anticipated to end work on June 5, 2020 based on the start date and duration. A detailed schedule with the individual tasks required to support this project will be provided as part of the project.

## 4. ENGAGEMENT FEE SCHEDULE & DELIVERABLES

KPMG shall invoice PG&E for a fixed fee of $90,000.00. No expenses will be incurred or billed to PG&E as part of this engagement. Each payment will be made upon PG&E's review and acceptance of deliverables from each of the activities and will be paid by PG&E within sixty (60) days of receiving a correct invoice. The payment schedule will be as follows:

| Phase | Deliverable | Value |
|---|---|---|
| **De-Identification tool deployment for on** | Successfully onboard up to four (4) on premises applications with structured databases to de-identify their lower level environments | $45,000.00 |
| | Performance testing & test results | $30,000.00 |

| Phase | Deliverable | Value |
|---|---|---|
| **premise structured data** | Access management playbook for Dataguise including a full-service and self-service model | $15,000.00 |

### 5. ENGAGEMENT RESOURCES

The following team of KPMG professionals will provide the highest quality of professional services as needed by the PG&E, as outlined below -

- **Michael Gomez** (Engagement Partner): Michael will be responsible for overseeing the overall quality of service PG&E receives from KPMG and is available as a source of escalation as needed.

- **Toby Sedgewick** (Engagement Manager): Toby's responsibilities include: managing resources, tracking budget, creating and overseeing schedules, tracking issues and risks, reporting to management as requested.

- **Other Subject Matter Professionals**: This engagement will be staffed by qualified and experienced professionals who will work as a team designed to meet PG&E's needs. In addition to the aforementioned professionals, KPMG will leverage a combination of skilled resources to execute the engagement. Over the course of the project, the following resources will be utilized when appropriate to support project activities:
  - An experienced de-identification resource that has knowledge of unstructured de-identification methodologies and can support the expansion and configuration of the selected de-identification tool to de-identify these environments.

### 6. OTHER MATTERS

- KPMG will provide our services in accordance with the terms and conditions of this SOW. Our services as outlined in this letter constitute an Advisory Engagement conducted under the American Institute of Certified Public Accountants ("AICPA") Standards for Consulting Services. Such services are not intended to be an audit, examination, attestation, special report or agreed-upon procedures engagement as those services are defined in AICPA literature applicable to such engagements conducted by independent auditors. Accordingly, these services will not result in the issuance of a written communication to third parties by KPMG directly reporting on financial data or internal control or expressing a conclusion or any other form of assurance.

- The Deliverables presented as part of this engagement are for the internal use of PG&E management, the Audit Committee, and Board of Directors and are not to be distributed externally to third-parties, in whole or in part, without prior written consent from Contractor in each instance, or used for any other purpose. Contractor disclaims any intention or obligation to update or revise the observations whether as a result of new information, future events or otherwise. Should additional documentation or other information become available which impacts upon the observations described in the Deliverables, Contractor reserves the right to amend its observations and summary documents accordingly.

- PG&E consents to Contractor's disclosure to a member firm, affiliate or third party service provider and such member firms, affiliates and third party service provider's use of data and information, including but not limited to Confidential Information.

**Internal**

- Contractor is responsible for ensuring that any member firm, affiliate or third party service provider to whom Contractor shares PG&E's data or information uses such data or information in way that is no less protective of the data or information than Contractor has agreed to, and only for the purposes set forth in this Agreement.

- Any Services performed by a member firm, affiliate or third party service provider shall satisfy the terms of this Agreement and the applicable SOW and Contractor shall remain responsible to PG&E for the performance of such Services. PG&E agrees that any claim relating to the Services may only be made against Contractor and not any other member firm, affiliate or third-party service provider referred to above.

Contractor will act as an independent contractor in providing the services as set out in this SOW and does not undertake to perform obligations of PG&E, whether regulatory or contractual. In carrying out our work hereunder:

- Contractor will provide its services in accordance with the terms and conditions of this SOW and the MSA No. 4400011340. Contractor will not act in the capacity equivalent to a member of management or as an employee of PG&E

- Contractor will provide observations to PG&E management during this engagement. PG&E management is solely responsible for evaluating such observations and then determining what changes/improvements (if any) PG&E should implement in light of PG&E's objectives in carrying out the project to which Contractor's services relate (the "Project")

- Contractor will not form part of the PG&E's internal control structure

**Conflicts of Interest**

- If identified, KPMG will advise PG&E of the general nature of any services provided by KPMG, or other member firms of the KPMG network of independent firms and firms and entities controlled by, or under common control with, one or more such member firms (collectively, "Member Firms") to the parties (i.e., audit, tax and/or advisory).

- If PG&E fails to promptly notify KPMG of its objection to any identified relationships, PG&E agrees that the identified relationships do not (i) constitute a limitation on the services requested, (ii) create a basis for disqualification of KPMG or its professionals, or (iii) constitute a conflict of interest for purposes of KPMG's engagement to perform the services for PG&E. PG&E expressly waives its right to assert any such conflict against KPMG.

- KPMG's process for conducting searches of potential conflicts takes place at the time the parties are identified and provided by PG&E. However, if KPMG becomes aware of any potential conflicts after the start of the engagement, KPMG will promptly inform PG&E. In addition, during the course of this engagement, PG&E agrees that they will inform KPMG of additional parties in this matter or name changes for those parties previously provided. At such time, KPMG will perform an additional limited internal search for relationships on those parties. If identified, KPMG will advise PG&E of the general nature of any services provided to that subject (i.e., audit, tax and/or advisory).

**Internal**

Page **3** of **9**

Case: 19-30088    Doc# 8107-5    Filed: 06/24/20    Entered: 06/24/20 19:56:08    Page 6 of 12

- KPMG reserves the right to resign from this engagement at any time if a conflict, as contemplated by the professional standards of the AICPA, law or regulation, arises or becomes known to KPMG that prohibits KPMG from conducting this engagement, or in KPMG's judgment, would impair KPMG's ability to perform objectively. If KPMG serves as independent auditors of a party, KPMG may require consent from the party, which will be determined on a case-by-case basis.

- Should PG&E require additional hours, more professionals or a change in the anticipated staff for this engagement, fees for such additional hours or professionals will be commensurate with the experience levels requested and utilized. KPMG will require that PG&E sign an addendum to or Change Order with respect to the CWA in the event that the parties seek to modify the duration of this engagement or the scope of Services.

- The aforementioned fees include a significantly discounted hourly rate which shall satisfy the "Volume Rebate," "Tenure Discount", "Early Pay Discount" and "No Bid Discount" provisions set forth in the MSA, such that the fees set shall not be recalculated in the rebate calculations.

- The provisions in the "Engagement Fee Schedule" section will apply with respect to this SOW notwithstanding anything in the MSA to the contrary. Without limiting the generality of the foregoing, the Statement of Work Template Requirements set forth in Exhibit B, the Sample Resource and Scheduling Budget set forth in Exhibit B-1, and Exhibit C of Attachment 1 to the MSA will not apply to this SOW or the Services provided under this SOW.

KPMG acknowledges that the Bankruptcy Court must approve the terms of this SOW and its fees in order for KPMG to be compensated. In that regard, KPMG intends to file applications with the Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any order of the Bankruptcy Court establishing procedures for monthly compensation and reimbursement of expenses for professionals. PG&E acknowledges that professional time required to prepare detailed applications in accordance with the Bankruptcy Code, applicable rules and guidelines differs from KPMG's normal billing procedures and, as a result, requires significant effort by KPMG to comply therewith. The expense required by this effort was not included in the hourly or estimated fees described above. PG&E agrees that, subject to Bankruptcy Court approval, KPMG's fees for such applications will be capped at 3% of the professional fees on this engagement.

To the extent that the services involve procedures in connection with PG&E's restructuring activities or emergence from bankruptcy, such work will be considered out-of-scope services under this SOW ("**Out-of-Scope Services**"). Such Out-of-Scope Services also include professional time required to prepare detailed applications in accordance with the Bankruptcy Code (described above). To the extent that changes in circumstances, such as the loss of PG&E personnel during the bankruptcy process, increase the effort required to deliver the services, this additional effort also will be billed as Out-of-Scope Services. Out-of-Scope Services will be billed in addition to the estimated fees described above, at our standard professional hourly rates. In its fee applications, KPMG will identify and describe any Out-of-Scope Services.

### 7. SYSTEMS IMPLEMENTATION

The systems implementation terms attached in Appendix A: Systems Implementation Addendum to Master Professional Services Agreement are incorporated into this SOW by this reference.

### 8. ENGAGEMENT ASSUMPTIONS

**Internal**

Case: 19-30088    Doc# 8107-5    Filed: 06/24/20    Entered: 06/24/20 19:56:08    Page 7 of 12

The success of this project is highly dependent on project coordination and support from PG&E. Contractor's services described in this document are per following assumptions:
- PG&E will assume overall responsibility for this project.
- PG&E will designate a management level individual as a coordination point and who will facilitate the scheduling of interviews and working sessions, the gathering of documentation and information supporting analysis conducted.
- PG&E will also identify a project owner for this project who will be available for review and approval of deliverables. If changes in PG&E personnel result in the delay or change of deliverables under this SOW, Contractor and PG&E will meet, determine the impact and the appropriate course of action, which may include, but not be limited to modifying the level of Contractor resources (and modification of Contractor fees, in a manner consistent with this SOW)
  - The PG&E project owner will oversee the conduct of this project, including coordination of PG&E resources needed.
  - The PG&E project owner will maintain an effective internal communication and control structure. The responsibility for establishing and maintaining adequacy of the controls in place over security and directing activities related to the review of business processes and controls rests with management of PG&E project owner.
  - The PG&E project owner will establish the project objectives, scope and extent of Contractor services. The project scope will be agreed upon by both PG&E, and the Contractor team and will not change without the prior written approval of both parties.
  - The PG&E project owner will oversee, along with the Contractor team, the project progress and address issues as they arise.
  - The PG&E project owner assigned to the project will review draft deliverables on a timely basis. PG&E will provide timely sign-off for each project stage. Deliverable sign-off will occur and assume within five working days from the submission of deliverables.
- PG&E will make any and all management decisions related to the scope of this project.
- KPMG services provided as part of this project are limited to the project scope, and will not act as a direct employee or agent of PG&E.
- KPMG will provide observations and suggest recommendations to PG&E management during the course of this engagement. PG&E staff (management and employees) are solely responsible for evaluating and deciding what recommendations are accepted and should be put in place.
- PG&E will provide appropriate workspace for the Contractor resources when on-site, including, but not limited to, telephones, workstations, printers, whiteboards, office supplies, photocopiers, internet access, and fax machines.
- PG&E will work with Contractor to resolve any and all issues related to the project in a timely fashion.
- It is assumed that PG&E will provide timely sign-off for each project phase. Deliverable sign-off will occur and assume within five working days from the submission of deliverables. The responsibility for the Project rests with management of PG&E. With regard to Contractor's services, PG&E is responsible for:
  - Determining the objectives, scope, and extent of Contractor's services hereunder
  - Designating a management-level individual, who will have responsibility to manage and oversee, as assisted by the Contractor team, the Project progress and to address issues as they arise, and who has the skills and experience necessary to effectively perform this function, including but not limited to:
    - Familiarity with the business functions, processes or divisions that are the subject of the Project objectives;
    - Being in a position to evaluate the information provided to him/her by the Contractor engagement team; is responsible for, and authorized to make management decisions based on such information; and

**Internal**

- In a sufficiently senior position, or to otherwise have a reporting relationship with senior management to provide appropriate internal PG&E communications regarding project status and potential concerns.
  - Agreeing to a written management framework that identifies PG&E managers responsible for approvals and judgments and for approving key milestones and interim and final deliverables as defined by PG&E
  - Evaluating the adequacy of the procedures performed by Contractor
  - Evaluating the observations and recommendations arising from Contractor's services contemplated by this SOW
- PG&E gives Contractor the right to use PG&E's logo on documents prepared for PG&E internally (e.g., internal presentations, etc.) and for no other purpose.

**Technical Assumptions**

- PG&E will provide KPMG access to their personnel and facilities sufficient for KPMG to fulfill its obligations under this proposal. This includes (but is not limited to):
  - Providing necessary computing resources including all hardware, software, licensing (where applicable), and access required for reporting and configuration activities described in this document. PG&E will install and implement all necessary hardware and software necessary for the completion of the project, including backend services such as databases, servers, firewalls, and networks.
  - Granting remote access to the PG&E development, test, and production environments through the use of Citrix Terminal Server or Citrix Virtual Desktop (if tools require a workstation).
  - Allocating appropriate workspace for the KPMG resources on-site, such as telephones, workstations, printers, whiteboards, office supplies, photocopiers, internet access, and fax machines.
- All non-production environments (applications, servers, systems, databases, etc.) will be available (up and running normal) and accessible during the duration of this engagement. Any planned downtime (such as PSPS events) will be communicated in advance to KPMG. Some unplanned downtimes are expected. PG&E and KPMG will work together on potential impact to the timelines due to any delays due to unavailability.
- PG&E will be responsible for operating system and application patching, maintenance, and operations for both non-production and production environments.

Enclosure: Appendix A – System Implementation Addendum to Master Professional Services Agreement

**Internal**

# Appendix A

### Systems Implementation Addendum to
### Master Professional Services Agreement

This SI Addendum ("**SI Addendum**") is made and entered into by and between PG&E ("**PG&E**") and KPMG LLP ("**Consultant**") and amends the Services Agreement ("**Agreement**"), incorporated by reference into the statement of work executed by and between PG&E and Consultant (the "**SOW**"). In the event of a conflict between (on the one hand) the provisions of this SI Addendum and (on the other hand) the provisions of the SOW and Agreement, this SI Addendum will govern with respect to the system implementation services described in the SOW ("**SI Services**"). Any capitalized term not otherwise defined in this SI Addendum will have the meaning ascribed to it in the SOW or the Agreement (as applicable).

1. **Definitions**. "**PG&E Materials**" shall mean any and all materials, facilities, network, hardware, systems, software, data and other equipment or information, owned by or licensed or leased to PG&E (including any Third Party Materials (as defined in Paragraph 3(d) below)), to which Consultant is provided with access in connection with the SI Services and which may be used by Consultant in providing the SI Services, Deliverables and/or Configured System pursuant to the SOW. "**Configured System**" means the Third Party Materials as configured by the SI Services. "**Consultant Knowledge**" includes, in addition to the items enumerated in Section 16 of the Agreement, the following materials and project tools: (i) components, programs, systems, analysis, frameworks, documentation, drawings, configuration techniques and specifications, owned by or licensed or leased to Consultant or any of the other Consultant Parties, and (ii) any modifications, enhancements, improvements or derivative works of any Consultant Knowledge, irrespective of their date of creation.

2. **Use of PG&E Materials and Acceptance.**

    a. With respect to any PG&E Materials to which Consultant is provided with access in connection with the SI Services, PG&E hereby grants to Consultant a non-exclusive, transferable, sublicensable, paid-up, royalty-free right and license to use, copy, modify and make derivative works of, and transmit such PG&E Materials to the extent necessary for Consultant to provide the SI Services to PG&E.

    b. Upon delivery of a Deliverable or Configured System to PG&E, PG&E shall review the Deliverable or Configured System in accordance with the acceptance procedure and within the acceptance period specified in the SOW, or where no such acceptance period is specified, within ten (10) business days of delivery. PG&E may reject the Deliverable or Configured System within the applicable acceptance period by providing to Consultant a notice of rejection ("**Rejection Notice**") specifying a list of material non-conformities with the specifications set forth in the SOW (the "**Specifications**"). To be effective, the Rejection Notice shall be in writing (email being acceptable) and sent to the Consultant Project Manager specified in the SOW or otherwise identified to PG&E in writing by Consultant. Consultant shall then conform the Deliverable or Configured System to the Specifications and resubmit it to PG&E for review and acceptance in accordance with this Paragraph 2(b). This process will continue until the Deliverable or Configured System is accepted under this Paragraph 2(b). The Deliverable or Configured System will be accepted when the applicable acceptance period has expired without Consultant receiving an effective Rejection Notice, or when PG&E uses such Deliverable or Configured System (notwithstanding any rejection of such Deliverable or Configured System) in a production environment, whichever occurs first.

3. **Warranties and Disclaimers.**

    a. Consultant warrants to PG&E that (i) Consultant will provide the SI Services using reasonable care and skill, and (ii) for a period of ninety (90) days after acceptance thereof, each Deliverable or Configured System as delivered by Consultant will conform to its Specifications in all material respects. Any claim for breach of Consultant's warranties in this Paragraph 3(a) with respect to any SI Service, Deliverable or Configured System must be made by written notice to Consultant within thirty (30) days of provision of such SI Service or within ninety (90) days of acceptance of such Deliverable or Configured System (as applicable). For any such breach, PG&E's exclusive remedies, and Consultant's entire liability, shall be, at Consultant's option, (i) the re-provision of such SI Service, or the repair and replacement of the Deliverable or Configured System (as applicable), or (ii) the refund to PG&E of the amount paid to Consultant for the specific SI Service, Configured System or Deliverable.

    b. PG&E represents, warrants and covenants to Consultant that (i) PG&E has obtained all consents, permits, licenses and other approvals required (if any) to grant Consultant the rights under Paragraph 2(a) of this SI Addendum, (ii) Consultant's exercise of its rights under Paragraph 2(a) will not infringe, misappropriate or otherwise violate the rights of any third party (including the rights of any owner of Third Party Materials), or violate any applicable law, rule, regulation or other official government release and (iii) PG&E will use the Configured System in accordance with applicable law.

    c. PG&E understands that contractor is providing the SI services hereunder in relation to PG&E materials (including third party materials) for which contractor has no responsibility. except as expressly stated in paragraph 3(a) above, contractor expressly disclaims and makes no warranties of any kind or nature with respect to the SI services, PG&E materials (including third party materials), deliverables, configured system or otherwise, whether expressly in the sow or otherwise express or implied, including warranties of merchantability, fitness for a particular purpose or use, or non-infringement, or the appropriateness of PG&E or third-party specifications. In addition, contractor expressly disclaims any warranty or liability with respect to design or latent defects or compliance with laws, rules, regulations, or other official government releases applicable to PG&E, which shall be the sole responsibility of PG&E.

    d. The SI Services may include providing assistance to PG&E with PG&E's procurement of third-party hardware, software or other items which will be identified in the SOW (such items, together with all other third party items used or provided in connection with the Work and/or Deliverables provided pursuant to the SOW shall be referred to as the "**Third Party Materials**"). Unless otherwise expressly stated in the SOW, PG&E will license or purchase such Third Party Materials directly from the vendor or reseller (which may be an affiliate of Consultant). PG&E retains sole responsibility for compliance with the license terms governing such Third Party Materials, the selection of such Third Party Materials, and, unless the SOW expressly specifies otherwise, the payment therefor. If Consultant agrees in the SOW or otherwise to provide any Third Party Materials, such THIRD PARTY MATERIALS ARE PROVIDED ON AN "AS IS" "AS AVAILABLE" BASIS WITHOUT WARRANTY FROM CONSULTANT, with the exception of any manufacturers' or licensors' warranties which Consultant is able to arrange for PG&E's benefit. Consultant, its Member Firms, and its and their subcontractors, reserve the right to retain ancillary benefits, including credits, rebates or referral fees, they may receive relating to such Third Party Materials, regardless of whether PG&E pays for such Third Party Materials directly, on a pass-through basis, or otherwise. PG&E agrees that the retention of such benefits shall not constitute a conflict of interest.

4. **Deliverables.** Upon full and final payment by PG&E of all amounts due under the SOW, Consultant hereby grants to PG&E a perpetual, non-exclusive, non-transferable, paid-up, royalty-free right and

license to use, copy, modify, make derivative works of, distribute, display and perform the Deliverables or Configured System, and any Consultant Knowledge to the extent embedded therein, solely for PG&E's own internal business purposes and subject to any other restrictions specifically set forth in the SOW; provided that PG&E may provide the Deliverables or Configured System to an affiliate or third party (each, an "**Approved Sublicensee**") solely for purposes of operating, maintaining and enhancing PG&E's internal use of the Deliverables or Configured System in PG&E's business. PG&E shall ensure that each such Approved Sublicensee complies with all applicable terms of this SI Addendum and shall be liable to Consultant for any damages caused by an Approved Sublicensee's failure to do so. Except as expressly provided in this Paragraph 4, PG&E may not sell or license, in whole or in part, the Deliverables or Configured System. Consultant shall own all right, title and interest in and to any Deliverables or Configured System produced under this SI Addendum, including any modifications, enhancements, improvements or derivative works of any PG&E Materials (including modifications, enhancements, improvements or derivative works of any Third Party Materials), whether developed by or on behalf of Consultant solely or both parties jointly, other than any PG&E Materials incorporated therein, the rights in which shall remain in PG&E (subject to the license to Consultant granted under Paragraph 2(a) above).

5. **Indemnification.** Without limiting Section 28.2 of the Agreement, PG&E shall indemnify, hold harmless and defend the Consultant from and against any and all Liabilities incurred or suffered by or asserted against the Consultant in connection with a third party claim to the extent resulting from (a) the PG&E Materials and/or any other materials provided by or on behalf of any of the PG&E Parties, (b) Consultant's compliance with any designs, specifications, or instructions provided by or on behalf of any of the PG&E Parties, (c) PG&E's breach or alleged breach of Paragraph 3(b) or Paragraph 4 hereof, (d) use by or on behalf of PG&E of any Deliverables or Configured System other than as provided or updated by Consultant, and (e) any unauthorized use of any Deliverables or Configured System in the possession or control of PG&E or any Approved Sublicensee.

6. **Changes and Adjustment Events**.

    a. The parties acknowledge and agree that the occurrence of any of the following events (each, an **"Adjustment Event"**) may require an extension in the schedule set forth in the SOW and/or an increase in the fees and expenses and/or a change to the nature of the SI Services: (i) a change to, deficiency in, or retraction of information or materials supplied to Consultant by or on behalf of any of PG&E; (ii) a failure by PG&E and/or its vendors to perform any of their respective responsibilities in a timely manner, including the supply to Consultant of adequate resources and information; (iii) the failure of any PG&E Materials provided by or on behalf of PG&E to perform in accordance with applicable specifications; (iv) circumstances beyond the reasonable control of Consultant, including actual or potential force majeure events; (v) any assumption in the SOW not being fully realized; or (vi) PG&E's failure to timely obtain pursuant to Paragraph 3(b) above all of the consents, permits, licenses and other approvals necessary for Consultant to provide the SI Services in the manner, and accordance with the schedule, set forth in the SOW.

    b. In the event an Adjustment Event occurs or the parties agree on a change to the scope of SI Services, Consultant may prepare and provide to PG&E a proposed change order identifying the impact and setting forth any applicable adjustments in the schedule and/or payments to Consultant. An authorized representative of each party shall promptly sign each such proposed change order to acknowledge the impact and to indicate that party's agreement to the adjustments.

    c. Notwithstanding Paragraph 6(a) above, if any delays or deficiencies in the SI Services, or with respect to the Deliverables or Configured System, occur as a result of Adjustment Events, the scheduled completion date under the SOW for the affected SI Services, Deliverables and/or Configured System shall be extended to the extent of any such delays or deficiencies, and Consultant shall not incur any liability to PG&E as a result of such delays or deficiencies.

**Internal**

Page **9** of **9**

Case: 19-30088    Doc# 8107-5    Filed: 06/24/20    Entered: 06/24/20 19:56:08    Page 12 of 12