**Exhibit A-6**

**Fraud Mitigation Project**



# Contract Work Authorization (CWA)

This Contract Work Authorization ("CWA") No. 6042020 is issued under and pursuant to the Blanket Agreement or Master Service Agreement No. 4400011340 (C73) dated January 19, 2017, as amended (the "MSA") between the below-named Contractor ("Contractor"), KPMG LLP, a Delaware limited liability partnership, and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105. Contractor shall perform all Work under this CWA pursuant to and in accordance with the terms and conditions of the MSA.

| | | | |
|---|---|---|---|
| **Contractor's Legal Name:** | KPMG LLP | **Total Number of Pages:** | 7 |
| **Contractor's Address:** | 55 2nd Street<br>Suite 1400<br>San Francisco, CA 94105 | | |
| **Project Name**: | Fraud Mitigation, Risk Analytics and Resolution | | |
| **Job Location**: | San Francisco, CA | | |

**WORK**: Contractor shall, at its own risk and expense, perform the Work described in this Contract Work Authorization and furnish all labor, equipment, and materials necessary to complete the Work as summarized below and as more fully described in Attachment 1, Scope of Work.

**Your work under this Agreement is subject to the applicable procedures and/or processes approved by the Bankruptcy Court in PG&E's bankruptcy proceeding (Bankruptcy Case No. 19-30088 (DM)) in the United States Bankruptcy Court, Northern District of California, San Francisco Division for the retention of counsel [outside professionals] and those procedures and processes are expressly incorporated herein, as they may be changed from time to time by the Bankruptcy Court.**

FOR THE AVOIDANCE OF DOUBT, THE WORK PERFORMED UNDER THIS CONTRACT IS NOT BEING PERFORMED AT THE DIRECTION OF THE PG&E LAW DEPARTMENT OR OTHER LEGAL COUNSEL AND COMMUNICATIONS REGARDING THIS WORK ARE NOT INTENDED TO BE COVERED BY ATTORNEY-CLIENT OR OTHER PRIVILEGE

**ATTACHMENTS: Each of the following documents are attached to this CWA and are incorporated herein by this reference:**
Attachment 1: Attachment A: Scope of Work, Pages 3 through 7

**CWA TERM**: This CWA is effective upon signature by both parties and expires on December 31, 2020. Time is of the essence.

**CWA COMPLETION:** Contractor shall commence performance hereof when directed to do so by PG&E and Work shall be completed by the completion date of December 31, 2020

**CONSIDERATION**: As full consideration for satisfactory performance of the Work under this CWA by Contractor, PG&E's total obligation to Contractor shall not exceed the following amount. This amount is inclusive of all taxes incurred in the performance of the Work. Any change to this amount shall only be authorized in writing by a PG&E CWA Change Order, fully executed by both PG&E and Contractor.

**TOTAL**: $200,000 (subject to the terms of the SOW)

**THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT WORK AUTHORIZATION.**

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR: KPMG, LLP | |
|---|---|---|---|
| **Signature** | *Lazaro Hernandez* | **Signature** | *Juan González III* |
| **Name** | Lazaro Hernandez | **Name** | Juan González III |
| **Title** | Manager, Sourcing Operations | **Title** | Principal |
| **Date** | 06/15/2020 | **Date** | June 15, 2020 |



Contract Work Authorization

CWA No. **6042020**

| ADMINISTRATION | | | |
|---|---|---|---|
| **PG&E Negotiator** | | **Contractor Represent** | Juan González III |
| **Phone** | | **Phone** | 510-352-6798 |
| **Email** | | **Email** | juangonzalez@kpmg.com |
| **Accounting Reference** | | | |
| **PG&E Work Supervisor:** | Stephen Cairns | **Phone:** 415-973-0292 | |
| **INVOICE INSTRUCTIONS**: Contractor shall send invoices for each payment when due, showing the CWA number, to: PACIFIC GAS AND ELECTRIC COMPANY | **Send ORIGINAL Invoice to:** | Invoices should be sent to PG&E Law Department Finance Group, P. O. Box 7133, San Francisco, CA 94120 or emailed to GenlCnslLawPaymentProcessingGroup@pge.com. | |
| | | | |
| | | | |

| INTERNAL PG&E USE ONLY | | |
|---|---|---|
| **Distribution Date** | | |
| **Distribution of Copies:** | ☐ Document Services (Signed Original Copy) Mail Code N5D 245 MARKET ST., SAN FRANCISCO | ☐ Contractor (Signed Original Copy) |
| | ☐ Work Supervisor | ☐ Manager |
| | ☐ Invoice Approver | ☐ Supervisor |
| | ☐ V.P. | ☐ Sourcing/ Purchasing |
| | ☐ Director | ☐ Law |

Statement of Work

This Statement of Work (this "SOW") outlines the engagement between Pacific Gas and Electric Company ("PG&E") and KPMG LLP ("KPMG" or "Consultant") to perform the services described below.

The governing master services agreement for this SOW and the work hereunder is Master Services Agreement #4400011340, dated on January 19, 2017 (as amended, the "**MSA**"). Capitalized terms used but not defined in this SOW have the respective meanings given to them in the MSA.

1) **Engagement Objectives and Scope**

   PG&E seeks to obtain a better understanding of the various risks it currently faces as it relates to fraud, waste and abuse and to take certain steps to mitigate and address these risks. The nature of the work will be on call and related to specific tasks as identified either jointly by KPMG and PG&E or solely by PG&E. Prior to commencing work PG&E will request KPMG in writing those tasks it wished KPMG to undertake. As part of its work, KPMG will in conjunction with PG&E will consider the viability of using other fraud prevention, identification and certain automated testing techniques. *This engagement is separate and distinct from the procurement integrity tool initiative being conducted concurrently in a partnership between KPMG, PG&E and SAS.*

   The objectives for this engagement will be to:

   - Work with PG&E to support the organization with responding to various requests and inquires related to potential fraud, waste, and abuse.
   - Identify potential sources of risk related to potential fraud, waste, and abuse that might be identified by considering PG&E's accounting system cost codes, cost centers and financial accounts used by PG&E
   - Attempt to identify payments made by PG&E to various suppliers that could potentially be problematic from a controls and fraud, waste, and abuse perspective.
   - Conduct data analysis over a variety of data sources that might help PG&E identify instances of fraud, waste, abuse and control break downs.
   - Attempt to identify and memorialize any issues and challenges relate to fraud, waste, and abuse.
   - Aggregate and present the results of the various tasks that we are directed to undertake in manner which is suitable for the audience as designated by PG&E
   - Provide observations and recommendations to PG&E regarding process improvement opportunities as identified
   - Conduct other tasks as directed by PG&E as it relates to fraud, waste and abuse.

2) **Work Plan**

   a. For the tasks that are contemplated and authorized by PG&E in writing for each specific project/task we will generally:

      i. Identify key stakeholders and points of contact for each task and review/confirm engagement objectives.
      ii. Identify key process owners and stakeholders for preliminary interviews and potential sources of information and data.

      iii. Prepare data and information requests including identifying requested data, files and documents to be provided by PG&E and other constituents.
      iv. Develop timelines for completing the analysis and other tasks.
      v. Develop and finalize work and resource plans as needed.

b. Analysis
      i. Read and review information received from PG&E related to those specific fraud, waste, and abuse issues we are requested to assist with. In writing as note above
      ii. Conduct interviews and workshops with PG&E stakeholders to understand data and information received.
      iii. Request and review additional PG&E documents, potentially including policies, standards, and procedures related to capital project accounting, project management, and encroachment permitting.
      iv. Review supporting documentation received by PG&E in support of certain transactions.

c. PG&E stakeholder review and final deliverables
      i. Provide preliminary findings and observations in a format as agreed for each specific task KPMG is directed to complete by PG&E

**3) Deliverables**

Deliverables for this SOW will:

- Be determined for each of the distinct separate tasks as identified jointly by KPMG and Final work plan, data and document request lists and a summary of information provided by PG&E stakeholders during the course of this engagement.

**4) Schedule**

Work is to be performed over the course of the balance of the calendar year and will begin based on the specific tasks initiated by PG&E following full execution of this CWA.

**5) PG&E Responsibilities**

PG&E is responsible for the following:

- PG&E will designate a qualified management-level individual to be responsible and accountable for overseeing the engagement.
- PG&E will establish and monitor the performance of the engagement to ensure that it meets management's objectives.
- PG&E will make any decisions that involve management functions related to the engagement and accept full responsibility for such decisions.
- PG&E will evaluate the adequacy of the services performed and any findings that result.
- PG&E stakeholders will be available for interviews and working sessions consistent with the ten-week expected time duration of this engagement.
- PG&E will provide, or cause to provide, responses to data and information requests within 1-2 days.

- PG&E will provide KPMG complete, accurate and timely information from which to conduct our analysis and will confirm there are no other sources of relevant information prior to completion of KPMG's analysis.

- PG&E will be responsible for providing complete data from its systems for KPMG's sample selection; KPMG is not assuring the completeness of PG&E's data extraction.

- PG&E will be responsible for distributing all communication to PG&E employees, stakeholders, vendors and AHJs related to workshops, meetings, interviews and deliverables.

- PG&E will identify and schedule all interviews.

- PG&E will provide security badge access, dedicated conference room space, individual work space, internet connections, printer access, and phone access for KPMG for the duration of the project.

**6) Professional Fees and Expenses**

The fees for this engagement will be invoiced on a time and material basis, plus expenses to be reimbursed by PG&E in an amount up to 7.5% of KPMG's professional fees for travel, lodging, meals, etc., which will be passed through to PG&E at cost, without markup (subject to Section 43.0(k) of Attachment 2 to the MSA). The total fees and expenses under this agreement will not exceed $200,000.

KPMG's current hourly rates by professional level for this engagement are:

| | |
|---|---|
| Analyst (off-shore) | $ 150 |
| Associate | $ 325 |
| Senior Associate | $ 425 |
| Manager | $ 475 |
| Director | $ 550 |
| Managing Director | $ 625 |
| Principal | $ 625 |

KPMG's fees and expenses are not contingent upon the final results, nor does KPMG guarantee any result or legal/regulatory outcome as a result of our efforts.

KPMG acknowledges that the Bankruptcy Court must approve the terms of this CWA and its fees in order for KPMG to be compensated. In that regard, KPMG intends to file applications with the Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any order of the Bankruptcy Court establishing procedures for monthly compensation and reimbursement of expenses for professionals. PG&E acknowledges that professional time required to prepare detailed applications in accordance with the Bankruptcy Code, applicable rules and guidelines differs from KPMG's normal billing procedures and, as a result, requires significant effort by KPMG to comply therewith. The expense required by this effort was not included in the estimated fees described above. PG&E agrees that, subject to Bankruptcy Court approval, KPMG shall be reimbursed for such professional time incurred.

To the extent that the services involve procedures in connection with PG&E's restructuring activities or emergence from bankruptcy, such work will be considered out-of-scope services under this SOW ("Out-of-Scope Services"). Such Out-of-Scope Services also include professional time required to prepare detailed applications in accordance with the Bankruptcy Code (described above). To the extent that changes in circumstances, such as the loss of PG&E personnel during the bankruptcy process, increase the effort required

to deliver the services, this additional effort also will be billed as Out-of-Scope Services. Out-of-Scope Services will be billed in addition to the estimated fees described above, at 100% of our standard professional hourly rates. In its fee applications, KPMG will identify and describe any Out-of-Scope Services.

The provisions in this Section 6 will apply with respect to this SOW notwithstanding anything in the MSA to the contrary. Without limiting the generality of the foregoing, the Statement of Work Template Requirements set forth in Exhibit B, the Sample Resource and Scheduling Budget set forth in Exhibit B-1, and Exhibit C of Attachment 1 to the MSA will not apply to this SOW or the services provided under this SOW.

**7) Invoicing**

We will submit our billings on a monthly basis according to the MSA and this SOW. We reserve the right to halt further services under this SOW until payment is received on past-due invoices.

In the event Consultant is unable to have access to resources, data or other information required for the project, or if PG&E determines, at its sole discretion, that Consultant should not continue with the work, then PG&E and Consultant agree that Consultant is not required to perform further services hereunder and Consultant shall be paid for hours and expenses incurred to date and no further obligation from PG&E to Consultant for services provided by Consultant hereunder shall be due.

Consultant's invoices shall be submitted to PG&E Law Department as noted on the CWA and a copy provided to the PG&E Work Supervisor at the address listed on the CWA. Payment will be made pursuant to date of receipt of invoice by PG&E Law Department.

**8) PG&E and Consultant Work Supervisor Name and email address**

| | |
|---|---|
| Stephen Cairns | Juan González III |
| Vice President, | Principal |
| Internal Audit and Chief Risk Officer | |
| SJCO@pge.com | juangonzalez@kpmg.com |

**9) Work Location(s)**

The majority of work is expected to occur remotely, neither at KPMG or PG&E's physical facilities, but by telephone and video conference.

**10) Other Matters**

KPMG's services as described in this SOW constitute an Advisory engagement conducted under the American Institute of Certified Public Accountants ("AICPA") Standards for Consulting Services. Such services are not intended to be an audit, examination, attestation, special report or agreed-upon procedures engagement as those services are defined in AICPA literature applicable to such engagements conducted by independent auditors. Accordingly, these services will not result in the issuance of a written communication to third parties by KPMG directly reporting on financial data or internal control or expressing a conclusion or any other form of assurance.

KPMG's role is limited to providing the services articulated in this SOW. In so doing, KPMG will undertake no role or view that could be fairly interpreted as public policy advocacy, lobbying, or otherwise be perceived as impairing our independence or objectivity; the firm's work is not intended to be used as a public policy advocacy document or in that context. The deliverable report will be on client letterhead, provided as a holistic work and should be read and interpreted only in its entirety.

# Attachment A

Additionally, the scope of work does not require that KPMG make any legal interpretations or render any legal advice, and the parties hereby agree that KPMG's performance of the services under this SOW shall not include or be construed to include the provision by KPMG of legal advice or legal services.

Information stored on routine back-up media for the purpose of disaster recovery will be subject to destruction in due course. Latent data such as deleted files and other non-logical data types, such as memory dumps, swap files, temporary files, printer spool files and metadata that can customarily only be retrieved by computer forensics experts and are generally considered inaccessible without the use of specialized tools and techniques will not be within the requirement for 'Delivery and Retention of Records' as set forth by paragraph 22.0 of the MSA. KPMG is authorized to maintain a copy of all materials in order to comply with its contractual obligations and applicable professional standards."

***This proposal is made by KPMG LLP, a Delaware limited liability partnership and the U.S. member firm of KPMG International Cooperative ("KPMG International"), and is in all respects subject to our client and engagement acceptance procedures as well as the execution of a definitive engagement letter or contract. KPMG International provides no client services. No member firm has any authority to obligate or bind KPMG International or any other member firm vis-à-vis third parties, nor does KPMG International have any such authority to obligate or bind any member firm.***