MICHAEL G. COLANTUONO, (State Bar No. 143551)
JOHN L. JONES II (State Bar No. 225411)
**COLANTUONO, HIGHSMITH & WHATLEY, PC**
790 E. Colorado Boulevard, Suite 850
Pasadena, California 91101-2109
Telephone: (213) 542-5700
Facsimile: (213) 542-5710
Email: MColantuono@chwlaw.us
Email: JJones@chwlaw.us

Special Counsel for Creditors,
CITIES OF ARCATA, BLUE LAKE, CHICO, CUPERTINO, DINUBA, MONTEREY, ORANGE COVE, OROVILLE, PACIFIC GROVE, SACRAMENTO, SALINAS, SAN LEANDRO, SANGER, SANTA CRUZ, SUNNYVALE, VALLEJO, WOODLAKE and the COUNTY OF SACRAMENTO

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.** | Bankruptcy Case No. 19–30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSE OR, IN THE ALTERNATIVE, RELIEF FROM STAY OR FROM DISCHARGE INJUNCTION TO PERMIT PROCEEDINGS IN NON-BANKRUPTCY FORUM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Judge: Hon. Dennis Montali<br><br>Date: July 21, 2020<br>Time: 10:00 a.m.<br>Place: Telephonic Hearing (or via video, where approved and applicable)<br><br>**Objection Deadline:**<br>July 16, 2020 at 4:00 p.m. (PT) |

The Cities of Arcata, Blue Lake, Chico, Cupertino, Dinuba, Monterey, Orange Cove, Oroville, Pacific Grove, Sacramento, Salinas, San Leandro, Sanger, Santa Cruz, Sunnyvale, Vallejo, Woodlake, and the County of Sacramento (collectively "Cities") hereby move (the "Motion") pursuant to sections 362(a), 362(d), 503(b), and 507(a)(8) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Local Rules") for entry of an order (a) directing payment of the under-collected electricity taxes for each City as an administrative expense or, in the alternative, granting relief from the automatic stay or from the discharge injunction to commence an action in San Francisco County Superior Court to liquidate the Cities' administrative expense claims and to obtain a declaratory judgment in service of same, (b) relief from the fourteen (14) day stay of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure and (c) granting such other and further relief as the Court deems necessary and proper.

This Motion is based on the attached Memorandum of Points and Authorities, the concurrently filed Notice of Motion, Declaration of John L. Jones II, the records and files in this case and all related proceedings, and such other and further matters as this Court may consider at or before any hearing on this Motion.

DATED: June 28, 2020

COLANTUONO, HIGHSMITH & WHATLEY, PC

/s/ John L. Jones II
MICHAEL G. COLANTUONO
JOHN L. JONES II
Creditors Cities of Arcata, Blue Lake, Chico, Cupertino, Dinuba, Monterey, Orange Cove, Oroville, Pacific Grove, Sacramento, Salinas, San Leandro, Sanger, Santa Cruz, Sunnyvale, Vallejo, Woodlake and the County of Sacramento

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

The Cities of Arcata, Blue Lake, Chico, Cupertino, Dinuba, Monterey, Orange Cove, Oroville, Pacific Grove, Sacramento, Salinas, San Leandro, Sanger, Santa Cruz, Sunnyvale, Vallejo, Woodlake, and the County of Sacramento (collectively "Cities") have each enacted ordinances, in most cases voter approved, which impose a tax on the use of electricity within their boundaries.[1] As the monopoly service provider in each of the Cities, Pacific Gas and Electric Corporation ("PG&E" or "Debtor") is obliged to collect the electricity taxes for each of the Cities and to remit these taxes to each City monthly and in full.[2]

Although required to collect the full amount of electricity tax owed by its customers, the Debtor has failed to do so. Rather than collect the full amount of electricity tax from its customers, the Debtor instead chose to unilaterally reduce the tax base for its customers by deducting credits it affords its customers for greenhouse gas allowances which it obtains — at no cost — from the State. Because of this under-collection, the Debtor has consistently failed to remit the full amount of electricity tax due. Thus, the Debtor has breached its duty to comply with each City's tax ordinance and is now liable for the underpayment of the tax, plus interest, in an unliquidated amount to be determined.

As discussed more fully below, Cities respectfully submit they are entitled to immediate payment of the post-petition electricity tax under-collections as an administrative expense or as a priority tax claim. However, in the event this Court decides stay relief is required, cause exists to permit the Cities to commence an action in the San Francisco County Superior Court to liquidate their administrative expense claims and to obtain a declaratory judgment to prevent the Debtor from continuing to under-collect the Cities' electricity taxes going forward (a copy of the Cities' proposed complaint is attached as Exhibit 1 to the Declaration of John L. Jones II). The proposed litigation

---

[1] Sacramento County taxes the use of electricity within its unincorporated area.

[2] The Debtor sought and obtained the authority to continue paying these and other utility taxes during the pendency of its bankruptcy case. Docket No. 698

235588.1

3

will not interfere with the Debtor's bankruptcy case, because the under-collected electricity taxes are administrative expense claims or priority tax claims unimpaired under the terms of the Debtor's plan of reorganization. The Cities seek only limited relief from stay or discharge. Enforcement of any monetary judgment would be reserved to this Court. The Cities only request the ability to enforce equitable remedies provided by the Superior Court. The Cities respectfully request that the Court grant the Motion.

## II. JURISDICTION & VENUE

The Court has jurisdiction to consider this matter under 28 U.S.C. §§157 and 1334, and the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.) and rule 5011-1(A) of the Bankruptcy Local Rules for the Northern District of California. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§1408 and 1409.

## III. STATEMENT OF FACTS

This case involves decisions of California's investor-owned utilities to divert for their own benefit local government taxes on utilities, which fund vital public services such as police, fire, emergency medical services, streets, libraries, and parks. The Debtor must collect those taxes, but has no power to reduce them. Nor does the California Public Utilities Commission ("PUC"), which stands on equal constitutional footing with California's charter cities and has no power over any City's tax. The Debtor and the state's other two other investor-owned utilities do so by excluding from the tax base (defined by local ordinances) credits issued under California's greenhouse gas law to reduce the impact on electricity customers of that law's upward pressure on electricity rates. These credits — paid to the Debtor's residential customers, commercial customers, and a class of large, commercial customers called "energy intensive and trade exposed" or "EITE" customers, such as an oil refineries in San Francisco — constitute a form of payment for power, much like a gift certificate at a restaurant or retailer. However, the Debtor treats them as though they were a reduction in charges for power consumption. The Cities' utility users taxes, by their terms, however, apply to all

charges for power consumption, whether paid in cash or by such other forms of consideration as these greenhouse gas credits. The Debtor has refused to correct its error and benefits from it — it collects millions of dollars from the PUC to cover the credits, sells its power at full rates, but diverts tens of millions of dollars annually from the treasuries of the Cities, and other cities and counties in the Debtor's service area which impose utility users taxes. This scheme costs the Debtor nothing and allows it to reward its largest customers and to subsidize the price of its service, encouraging more power use in a state trying to conserve it. The Debtor's conduct is illegal and harms the Cities, their employees, and the vital public services the Cities provide their residents and businesses.

The Cities have enacted ordinances, in most cases voter approved, which impose electricity user's taxes ("Electricity Taxes") as a percentage of all charges for electricity used within their boundaries or, in the case of Sacramento County, its unincorporated area. The Debtor has failed to remit the full amount of the Electricity Tax it owes to each of the Cities due to its willful miscalculation of these taxes.

For example, Sacramento City Code, Chapter 3.32 of Title 3 imposes a 5 percent tax on "charges" for electricity used in that City. Sacramento City Code, § 3.32.050, subd. (A). Sacramento imposes its Electricity Tax on "charges" The Debtor makes to every person who uses electricity in that City. These charges include service charges. *Ibid*. The Debtor is required to collect Sacramento's Electricity Tax from its customers and remit the tax to the City monthly. Sacramento City Code, § 3.32.050, subd. (C). The Electricity Tax for each of the remaining Cities is codified in much the same way using substantially similar language.

In September 2006, the Legislature adopted the Global Warming Solutions Act of 2006 (AB 32), Health and Safety Code, section 38500 et seq. (the "GWS Act"), which authorized a "cap-and-trade" program to reduce greenhouse gas ("GHG") emissions in California. In general terms, that program limits GHG emissions from all sources covered by the GWS Act and creates a market in which GHG "allowances" (i.e., permits to emit discrete volumes of GHGs) are allocated, used, or traded.

The cap-and-trade program rates upward pressure on power rates because utilities must purchase GHG allowances to emit carbon while generating power. The PUC developed three

financial assistance programs for EITE customers, residential customers, and commercial customers. (collectively "GHG Credits").

The Debtor contends the "charges" to which each City's Electricity Tax applies should be reduced by GHG Credits afforded its customers, before taxes are calculated. Thus, the Debtor has unilaterally decided to under-collect Electricity Taxes its customers owe under the Cities' tax ordinances, resulting in a consistent failure by the Debtor to remit the full amount of the Electricity Taxes owed, subsidizing the Debtor's power sales at City expense. However, the practice costs the Debtor nothing, as it still collects the full amount for its power sales, by pocketing millions of dollars annually in GHG credit payments. Only the Cities, their employees, and those who value their vital public services suffer in this scheme.

The Cities, however, contend the Electricity Taxes apply to total charges for electricity consumed by the Debtor customers in the Cities, regardless of how a customer pays for those services, as by cash or application of any GHG credit. The Cities contend the Debtor has no authority to interpret the Cities' Electricity Tax ordinances and to reduce the taxes the Debtor is obligated to collect and to remit to the Cities.

The Debtor never consulted with the Cities about this interpretation. The Cities learned of it when a city noticed a significant drop in its Electricity Tax receipts.

## IV. ARGUMENT

### A. The Cities are Entitled to Payment of Under-Collected Electricity Taxes as an Administrative Expense

A claim is entitled to administrative expense claim status if it "(1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate." *In re DAK Industries, Inc*. 66 F.3d 1091, 1094 9th Cir. 1995 (citing *In re White Motor Corp*., 831 F.2d 106, 110 (6th Cir. 1987)). The under-collected electricity taxes meet this test.

Under the first prong, the issue is whether "the consideration for the claim was received during the post-petition period." *In re DAK Indus., supra,* 66 F.3d at 1094. Notably, "[t]ransactions in the ordinary course of business of the debtors-in-possession create expenses of administration." *See In re Crystal Apparel, Inc.*, 220 B.R. 816, 830 (Bankr. S.D.N.Y. 1998). Here, the Debtor receives the benefit of an exclusive franchise with each City which has continued uninterrupted throughout these proceedings.

Under the second prong, the issue is whether the provision of that the Debtor's exclusive franchise directly and substantially benefitted the state. *In re Sunarhauserman*, 126 F.3d 811, 816 (6th Cir. 1997). The consideration provided by the Cities to the Debtor is both necessary and essential for the continuation of the Debtor's business and for the preservation of the bankruptcy estate.

### B. The Automatic Stay Should be Lifted for Cause to Allow the Cities to Liquidate Their Administrative Expense Claims

#### 1. The Standard for "Cause" for Relief from Stay

If this Court decides that stay relief (or relief from the discharge injunction) is necessary, then it should grant limited relief to allow the Cities to commence an action in Superior Court for "cause" under 11 U.S.C. § 362(d). "'Because there is no clear definition of what constitutes "cause," discretionary relief from the stay must be determined on a case by case basis.'" *In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir. 1986) (quoting *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985)). Cause may exist where, as here, the party requesting relief from the automatic stay seeks to litigate state law claims in a non-bankruptcy forum. *Id.* at 163 ("A clear congressional policy exists to give state law claimants a right to have claims heard in state court.") (citing 28 U.S.C. § 1334(c)). Furthermore, the "legislative history of Section 362(d)(1) states that 'a desire to permit an action to proceed to completion in another tribunal may provide [] cause' for relief from a stay. H.R. No. 95-595, 95th Cong., 1st sess. (1977), p. 343, 1978 U.S. Code Cong. & Admin. News 5787, 6300." *In re Universal Life Church*, 127 B.R. 453, 455 (E.D. Cal. 1991). *Accord*, *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987) (cause existed where "the issues involved were matters of state law best decided by state courts").

To determine whether cause exists to permit an action to proceed in a non-bankruptcy forum, courts in this Circuit generally consider the following twelve (12) non-exclusive factors set forth in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984):

1. Whether the relief will result in a partial or complete resolution of the issues;
2. The lack of any connection with or interference with the bankruptcy case;
3. Whether the foreign proceeding involves the debtor as a fiduciary;
4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;
5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;
7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties;
8. Whether the judgment claim arising from the foreign action is subject to equitable subordination;
9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);
10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;
11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and
12. The impact of the stay and the balance of hurt. [citations]

*In re Curtis*, 40 B.R. at 799-800. The Court is not required to give each factor equal weight. *In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004).) Further, not all factors will be relevant in every case. *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). As an initial matter, the third through sixth, eighth and ninth factors do not apply here. The remaining factors all weigh heavily in favor of granting the Cities relief from the stay. Here, stay relief will allow the Debtor and the Cities to resolve all of the issues relating to the Debtor's under-collection of the electricity tax — something that cannot be achieved in this Court. Because the declaratory relief at issue cannot be obtained here, litigation in state court is unavoidable. Thus, granting relief will promote judicial economy. In addition, it will save costs and avoid duplication or

8

Case: 19-30088   Doc# 8143   Filed: 06/28/20   Entered: 06/28/20 22:11:10   Page 8 of 12

235588.1

inconsistent results. *See In re Olmstead*, 608 F.2d 1365, 1368 (10th Cir. 1979); *In re Harris*, 7 B.R. 284 (S.D. Fla. 1980). *In re Universal Life Church*, *supra*, 127 B.R. at 455 (affirming bankruptcy court's finding of cause to grant relief from automatic stay based on (i) the complexity of tax issues involved, (ii) whether parties are in or on the eve of trial, (iii) after the parties had conducted extensive discovery, and (iv) promotion of judicial economy).

Allowing a suit to commence will not prejudice the interests of creditors, the creditor's committee and other interested parties. As discussed above, litigation in state court is unavoidable and, standing alone is not a basis to deny relief. *Cf. In re Lehigh Valley Pros. Inc.*, 482 B.R. 127, 131 fn. 8 (Bankr. E.D. Pa. 2012) (No prejudice to estate from condemnation proceeding continuing in state court).

The last relevant factor — the impact of the stay and balance of the hurt — also weighs in favor of lifting the stay. The Debtor, its creditors, and other interested parties will not be impacted by allowing this litigation to commence. The declaratory relief requested will have — at most — a minor impact on the estate. However, denying relief hurts all parties because they will be forced to litigate these issues twice.

### 2. Alternate Standards for "Cause" Also Favor Granting Relief from Stay

Instead of relying on the Curtis-factors, some bankruptcy courts have used other methods to determine whether cause exists to grant relief from stay. (*E.g.*, *In re America West Airlines* 148 B.R. 920, 922 (Bankr. D. Ariz. 1993).) *In America West Airlines*, the court identified several factors, any of which alone could be sufficient to warrant lifting the automatic stay. These factors include: (A) whether great prejudice to the debtors will result from lifting the stay; (B) whether the issues are solely state law actions; (C) the status of the actions and the interest of judicial economy; (D) whether the litigation involves other non-debtor parties; (E) whether hardship will inure to non-debtors if relief is not granted (sometimes called "the balance of hurt"); and (F) and the probability of a creditor's success on the merits. *See id*. at 923, cited with approval in *In re Santa Clara Cnty. Fair Ass'n*, 180 B.R. 564, 567 (9th Cir. B.A.P. 1995). These factors also weigh in favor of relief. As

explained previously, there will be no prejudice to the debtor and the issues involved here are based solely on state and municipal tax law. Judicial economy, too, favors relief here.

### 3. This Court Should Exercise Discretionary Abstention and Grant the Cities Permission to Proceed in the State Court

The stay should also be lifted to allow the Cities to commence litigation in state court because the Court should exercise its discretion and abstain from deciding the matter. The leading case on this issue is *In re Tucson Estates, Inc*., 912 F.2d 1162 (9th Cir. 1990). There, the Ninth Circuit listed twelve factors that a court should consider in deciding whether to abstain from hearing either a core or non-core proceeding, as follows (relevant factors are in bold):

> **(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention**, **(2) the extent to which state law issues predominate over bankruptcy issues**, **(3) the difficulty or unsettled nature of the applicable law**, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, **(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334**, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, **(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy cour**t, **(9) the burden of [the bankruptcy court's] docket**, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Id*. at 1167 (9th Cir. 1990) (citing *In re Republic Reader's Service, Inc*., 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987); *see also Security Farms v. Int'l Brotherhood of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1009 (9th Cir. 1997) ("Section 1334(c)(1) provides for permissive abstention in both core and non-core proceedings[.]"). Of the six factors that are germane here, all warrant discretionary abstention of this Court in favor of the state court.

At least six of the listed in *Tucson Estates* are germane to the present case and warrant discretionary abstention of this Court in favor of the Superior Court. First, the litigation will not impact the administration of the estate. Second, state law issues not only predominate over bankruptcy issues here — indeed, they are the only issues to be decided in the context of Cities' administrative expense claims. Third, the state and municipal tax law issues to be decided here are specialized and difficult areas of law that are best left to the Superior Court. Fourth, no jurisdictional basis exists outside of 28 U.S.C. § 1334. Fifth, Cities only seek limited relief here to liquidate their claims and obtain declaratory relief. Enforcement of any monetary judgment will be left to this Court. Lastly, the case load of bankruptcy courts nationwide is well documented and further merits abstention where abstention is appropriate.

### C. Granting Relief from Stay will Benefit this Court.

The Cities respectfully submit that granting relief here will also benefit this Court because any judgment will be entitled to preclusive effect, as noted by the Ninth Circuit in *In re Peklar*, 260 F.3d 1035 (9th Cir. 2001):

> A state court judgment is given the same preclusive effect by a federal court as it would be given by a court of the state in which the judgment was rendered.

*Id*. at 1039 (citing 28 U.S.C. §§ 1738; *Marrese v. Am. Acad. Of Orthopaedic Surgeons*, 470 U.S. 373 (1985)). Under California preclusion law, collateral estoppel effect is given to a judgment that 'actually and necessarily' decides the issue in question." *People v. Howie*, 41 Cal. App. 4th 729, 736 (1995). The preclusive effect of a final decision, 4icularly as it relates to the liquidation of the Cities' administrative expense claims will greatly assist this Court in resolving this dispute.

### V. CONCLUSION

For the foregoing reasons, Cities respectfully submit that it is appropriate for this Court to (a) directing payment of the under-collected electricity taxes for each City as an administrative expense or, in the alternative, granting relief from the automatic stay or from the discharge injunction to commence an action in San Francisco County Superior Court to liquidate the Cities' administrative expense claims and to obtain a declaratory judgment, (b) relief from the fourteen (14)

Colantuono, Highsmith & Whatley, PC
790 E. COLORADO BOULEVARD, SUITE 850
PASADENA, CA 91101-2109

235588.1

day stay of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure and (c) granting such other and further relief as the Court deems necessary and proper.

DATED: June 28, 2020

**COLANTUONO, HIGHSMITH & WHATLEY, PC**

/s/ John L. Jones II
MICHAEL G. COLANTUONO
JOHN L. JONES II
Creditors Cities of Arcata, Blue Lake, Chico, Cupertino, Dinuba, Monterey, Orange Cove, Oroville, Pacific Grove, Sacramento, Salinas, San Leandro, Sanger, Santa Cruz, Sunnyvale, Vallejo, Woodlake and the County of Sacramento