MICHAEL G. COLANTUONO, (State Bar No. 143551)
JOHN L. JONES II (State Bar No. 225411)
**COLANTUONO, HIGHSMITH & WHATLEY, PC**
790 E. Colorado Boulevard, Suite 850
Pasadena, California 91101-2109
Telephone: (213) 542-5700
Facsimile: (213) 542-5710
Email: MColantuono@chwlaw.us
Email: JJones@chwlaw.us

Special Counsel for Creditors,
CITIES OF ARCATA, BLUE LAKE, CHICO, CUPERTINO, DINUBA, MONTEREY, ORANGE COVE, OROVILLE, PACIFIC GROVE, SACRAMENTO, SALINAS, SAN LEANDRO, SANGER, SANTA CRUZ, SUNNYVALE, VALLEJO, WOODLAKE and the COUNTY OF SACRAMENTO

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19–30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**DECLARATION OF JOHN L. JONES II IN SUPPORT OF MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSE OR, IN THE ALTERNATIVE, RELIEF FROM STAY OR FROM DISCHARGE INJUNCTION TO PERMIT PROCEEDINGS IN NON-BANKRUPTCY FORUM**<br><br>Judge: Hon. Dennis Montali<br><br>Date: July 21, 2020<br>Time: 10:00 a.m.<br>Place: Telephonic Hearing (or via video, where approved and applicable)<br><br>**Objection Deadline:**<br>July 16, 2020 at 4:00 p.m. (PT) |

I, John L. Jones II, do declare and state as follows:

1. I am an attorney licensed to practice law in the State of California and before this Court. I am Senior Counsel with the law firm Colantuono, Highsmith & Whatley, PC, and special counsel of record for Cities of Arcata, Blue Lake, Chico, Cupertino, Dinuba, Monterey, Orange Cove, Oroville, Pacific Grove, Sacramento, Salinas, San Leandro, Sanger, Santa Cruz, Sunnyvale, Vallejo, Woodlake, and the County of Sacramento (collectively "Cities"). Unless otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, I could competently testify thereto.

2. By their motion, the Cities seek an order directing payment of the under-collected electricity taxes for each of them as an administrative expense or, in the alternative, granting relief from the automatic stay or from the discharge injunction to commence an action in San Francisco County Superior Court to liquidate the Cities' administrative expense claims and to obtain a declaratory judgment in service of same.

3. Attached hereto as **Exhibit 1** is a true and correct copy of the complaint the Cities seek to file in the San Francisco County Superior Court.

EXECUTED this 28th day of June, 2020, at San Gabriel, California.

        /s/ John L. Jones II
        John L. Jones II

# EXHIBIT 1

MICHAEL G. COLANTUONO, State Bar No. 143551
MColantuono@chwlaw.us
JOHN L. JONES II, State Bar No. 225411
JJones@chwlaw.us
JIN SOO LEE, State Bar No. 303655
JLee@chwlaw.us
COLANTUONO, HIGHSMITH & WHATLEY, PC
790 E. Colorado Boulevard, Suite 850
Pasadena, California 91101-2109
Telephone: (213) 542-5700
Facsimile: (213) 542-5710

Attorneys for Plaintiffs,
CITIES OF ARCATA, BLUE LAKE, CHICO, CUPERTINO, DINUBA,
MONTEREY, ORANGE COVE, OROVILLE, PACIFIC GROVE,
SACRAMENTO, SALINAS, SAN LEANDRO, SANGER, SANTA CRUZ,
SUNNYVALE, VALLEJO, WOODLAKE and the COUNTY OF SACRAMENTO

**Exempt from Filing Fees**
**Government Code § 6103**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| CITY OF ARCATA, CITY OF BLUE LAKE, CITY OF CHICO, CITY OF CUPERTINO, CITY OF DINUBA, CITY OF MONTEREY, CITY OF ORANGE COVE, CITY OF OROVILLE, CITY OF PACIFIC GROVE, CITY OF SACRAMENTO, CITY OF SALINAS, CITY OF SAN LEANDRO, CITY OF SANGER, CITY OF SANTA CRUZ, CITY OF SUNNYVALE, CITY OF VALLEJO, CITY OF WOODLAKE, AND THE COUNTY OF SACRAMENTO,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC GAS & ELECTRIC COMPANY, and DOES 1 through 100,<br><br>Defendants. | CASE NO.<br>*Unlimited Jurisdiction*<br><br>**COMPLAINT FOR:**<br><br>1. **DECLARATORY RELIEF**<br>2. **REQUEST FOR ORDER TO COMPEL COMPLIANCE WITH MUNICIPAL CODES**<br>3. **UNFAIR BUSINESS PRACTICES** |

Plaintiffs City of Arcata, City of Blue Lake, City of Chico, City of Cupertino, City of Dinuba, City of Monterey, City of Oroville, City of Pacific Grove, City of Sacramento, City of Salinas, City of Sanger, City of Santa Cruz, City of Sunnyvale, City of Vallejo, City of Woodlake and the County of Sacramento (collectively "Cities" or "Plaintiffs") allege:

**INTRODUCTION**

1. This case involves decisions of California's investor-owned utilities to divert for their own benefit local government taxes on the use of utilities, which fund vital public services such as police, fire, emergency medical services, streets, libraries, and parks. Pacific Gas & Electric Company, a California corporation ("PG&E") is obliged to collect those taxes, but has no power to reduce them. Nor does the California Public Utilities Commission ("PUC"), which stands on equal constitutional footing with California's charter cities and has no power over any City's tax. PG&E and the state's other two other investor-owned utilities do so by excluding from the tax base (defined by local ordinances) credits issued under California's greenhouse gas law to reduce the impact on electricity customers of that law's upward pressure on electricity rates. These credits — paid to PG&E's residential customers, commercial customers, and a class of large, commercial customers called "energy intensive and trade exposed" or "EITE" customers, such as oil refineries in Torrance — constitute a form of payment for power, much like use of a gift certificate at a restaurant or retailer. However, PG&E treats them as though they were a reduction in charges for power consumption. The Cities' utility users taxes, by their terms, however, apply to **all** charges for power consumption, whether paid in cash or by such other consideration as these greenhouse gas credits. PG&E has refused to correct its error and benefits from it — it collects millions of dollars from the PUC to cover the credits, sells its power at full rates, but diverts of tens of millions of dollars annually from the treasuries of the Cities, and other cities and counties in its service area which impose utility users taxes. This scheme costs PG&E nothing and allows it to reward its largest customers and to subsidize the price of its service, encouraging more power use in a state trying to conserve. PG&E's conduct is illegal and harms the Cities, their employees, and the vital public services the Cities provide their residents and businesses. PG&E's illegal conduct undermines the goals of California's greenhouse gas law to reduce use of carbon-intensive power. PG&E refuses to

1. collect fully the Cities' taxes, lawfully imposed, in most cases by voters. Therefore, this suit is necessary to enforce the law and to protect public services from PG&E's abusive, illegal and self-serving tactics.

2. The Cities have enacted ordinances, in most cases voter-approved, which impose electricity user's taxes ("Electricity Taxes") as a percentage of all charges for electricity used within their boundaries or, in the case of Sacramento County, its unincorporated area. PG&E has failed to remit the full amount of the Electricity Tax it owes to each of the Cities due to its willful miscalculation of these taxes.

3. For example, Sacramento City Code, Chapter 3.32 of Title 3 imposes a 5 percent tax on "charges" for electricity used in that City. (Sacramento City Code, § 3.32.050, subd. (A).) Sacramento imposes its Electricity Tax on "charges" PG&E makes to every person who uses electricity in that City. These charges include service charges. (*Ibid*.) PG&E is required to collect Sacramento's Electricity Tax from its customers and remit the tax to the City monthly. (Sacramento City Code, § 3.32.050, subd. (C).) The Electricity Tax for each of the remaining Cities is codified in much the same way using substantially similar language.

4. In September 2006, the Legislature adopted the Global Warming Solutions Act of 2006 (AB 32), Health and Safety Code, section 38500 et seq. (the "GWS Act"), which authorized a "cap-and-trade" program to reduce greenhouse gas ("GHG") emissions in California. In general terms, that program limits GHG emissions from all sources covered by the GWS Act and creates a market in which GHG "allowances" (i.e., permits to emit discrete volumes of GHGs) are allocated, used, or traded.

5. The cap-and-trade program rates upward pressure on power rates because utilities must purchase GHG allowances to emit carbon while generating power. The PUC developed three financial assistance programs for electric utility customers affected by that rate pressure: (i) CA Industry Assistance Credit ("IA Credit"), which compensates EITE businesses and is intended to encourage businesses to reduce GHG emissions; (ii) Residential Climate Credit ("RCC"), which provides residential utility ratepayers a share of payments to utilities from the cap and trade program; and (iii) Small Business Climate Credit ("SCC"), which is paid monthly to non-residential

commercial, industrial, or agricultural customers who typically use less than 20 kilowatts (kW) of power per month (collectively, the IA Credit, the RCC, and the SCC are the "GHG Credits").

6. PG&E contends the "charges" to which each City's Electricity Tax applies should be reduced by GHG Credits afforded its customers, **before** taxes are calculated. Thus, PG&E has unilaterally decided to under-collect Electricity Taxes its customers owe under the Cities' tax ordinances, resulting in a consistent failure by PG&E to remit the full amount of the Electricity Taxes owed, subsidizing PG&E's power sales at City expense. However, the practice costs PG&E nothing, as it still collects the full amount for its power sales, by pocketing millions of dollars annually in GHG credit payments. Only the Cities, their employees, and those who value their vital public services suffer in this scheme.

7. The Cities, however, contend the Electricity Taxes apply to total charges for electricity consumed by PG&E customers in the Cities, regardless of how a customer pays for those services, as by cash or application of any GHG credit. The Cities contend PG&E has no authority to interpret the Cities' Electricity Tax ordinances and to reduce the taxes PG&E is obligated to collect and to remit to the Cities.

8. PG&E never consulted with the Cities about this interpretation. The Cities learned of it when a city noticed a significant drop in its Electricity Tax Receipts.

9. The Cities have no alternative but to seek this Court's order to (1) declare the meaning of each City's Electricity Tax ordinance; (2) compel PG&E to comply with those ordinances prospectively; (3) require PG&E to remit all past underpaid amounts according to proof, plus penalties and interest; (4) require PG&E to pay the Cities' costs and attorney fees; (5) award treble damages, civil penalties, and other remedies under the Unfair Business Practices Law, Business and Professions Code section 17200 et seq., and other applicable law, and (6) to provide such other and further relief as law and equity allow.

**PARTIES**

10. Plaintiffs are 17 cities and one county that impose Electricity Taxes under ordinances, most voter-approved, that obligate PG&E to collect those taxes from customers of its monopoly

Colantuono, Highsmith & Whatley, PC
790 E. COLORADO BOULEVARD, SUITE 850
PASADENA, CA 91101-2109

1 electricity service in those cities and that county's unincorporated area and to remit tax proceeds to
2 the Cities monthly.

3     11.    Plaintiff City of Arcata is a general law city organized under the laws of the State of
4 California and located in the County of Humboldt.

5     12.    Plaintiff City of Blue Lake is a general law city organized under the laws of the State
6 of California and located in the County of Humboldt.

7     13.    Plaintiff City of Chico is a charter city organized and operating in the County of
8 Butte, under the city's charter and article XI, section 5 of the California Constitution.

9     14.    Plaintiff City of Cupertino is a general law city organized under the laws of the State
10 of California and located in the County of Santa Clara.

11     15.    Plaintiff City of Dinuba is a charter city organized and operating in the County of
12 Tulare, under the city's charter and article XI, section 5 of the California Constitution.

13     16.    Plaintiff City of Monterey is a charter city organized and operating in the County of
14 Monterey, under the city's charter and article XI, section 5 of the California Constitution.

15     17.    Plaintiff City of Orange Cove is a general law city organized under the laws of the
16 State of California and located in the County of Fresno.

17     18.    Plaintiff City of Oroville is a charter city organized and operating in the County of
18 Butte, under the city's charter and article XI, section 5 of the California Constitution.

19     19.    Plaintiff City of Pacific Grove is a charter city organized and operating in the County
20 of Monterey, under the city's charter and article XI, section 5 of the California Constitution.

21     20.    Plaintiff City of Sacramento is a charter city organized and operating in the County of
22 Sacramento, under the city's charter and article XI, section 5 of the California Constitution.

23     21.    Plaintiff City of Salinas is a charter city organized and operating in the County of
24 Monterey, under the city's charter and article XI, section 5 of the California Constitution.

25     22.    Plaintiff City of San Leandro is a charter city organized and operating in the County
26 of Alameda, under the city's charter and article XI, section 5 of the California Constitution.

27     23.    Plaintiff City of Sanger is a general law city organized under the laws of the State of
28 California and located in the County of Fresno.

24. Plaintiff City of Santa Cruz is a charter city organized and operating in the County of Santa Cruz, under the city's charter and article XI, section 5 of the California Constitution.

25. Plaintiff City of Sunnyvale is a charter city organized and operating in the County of Santa Clara, under the city's charter and article XI, section 5 of the California Constitution.

26. Plaintiff City of Vallejo is a charter city organized and operating in the County of Solano, under the city's charter and article XI, section 5 of the California Constitution.

27. Plaintiff City of Woodlake is a charter city organized and operating in the County of Tulare, under the city's charter and article XI, section 5 of the California Constitution.

28. Plaintiff County of Sacramento is a charter county organized and operating in the State of California under the county's charter and article XI, section 4 of the California Constitution.

29. Defendant Pacific Gas & Electric Company is an investor-owned utility incorporated and existing under the laws of the State of California whose principal office is located at 77 Beale Street, P.O. Box 770000, San Francisco, California 94177, in the County of San Francisco. PG&E is engaged in the generation, purchase, transmission, and distribution of electricity in a monopoly service territory in Northern and Central California. PG&E serves residential and business electricity customers in each of the Cities under a long-term franchise granted by each.

30. The Cities are unaware of the true names and capacities, whether individual, corporate, or otherwise, of Defendants Does 1 through 100, inclusive, and therefore sues those parties by such fictitious names. The Cities will seek leave to amend this Complaint to state the true names and capacities of the fictitiously named parties and to insert appropriate allegations concerning them when their true names have been ascertained.

31. The Cities are informed and believe, and thereon allege, that each defendant is, and at all times mentioned herein was, an agent, servant, representative, employee, or assign of the other defendants herein, whether named or unnamed, and in doing the things hereinafter mentioned, acted within the scope of such authority as agent, servant, representative, employee, or assign with the knowledge, permission, consent, and authorization of each other defendant herein. Actions taken, or omissions made, by each defendant are actions or omissions of the other defendants for purposes of this Complaint.

## JURISDICTION AND VENUE

32. This Court has jurisdiction over this action under Code of Civil Procedure section 1060 et seq. because each City desires a declaration of its rights and duties with respect to its Electricity Tax. Jurisdiction is also proper under the California Constitution. PG&E has its principal place of business in San Francisco; that business required it to collect and pay an Electricity Tax during the period covered by this lawsuit; and Cities sue here to recover the taxes PG&E should have paid but did not. PG&E has "purposefully directed" certain activities to San Francisco, and this lawsuit is the result of injuries to Cities that "arise out of or relate to" those activities. (Code Civ. Proc., § 410.10; *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472; *International Shoe Co. v. State of Washington* (1945) 326 U.S. 310, 317.)

33. The Cities contend the PUC's jurisdiction is not relevant to this action, as the dispute between the Cities and PG&E concerns application of the Electricity Tax ordinances — questions over which the PUC has no jurisdiction. (*Monterey Peninsula Water Management Dist. v. Public Utilities Com*. (2016) 62 Cal.4th 693, 698 [PUC has no authority over local government "absent a statute expressly authorizing such regulation"]; Investigation on the Commission's Own Motion to Establish Guidelines for the Equitable Treatment of Revenue Producing Mechanisms Imposed by Local Government Entities on Public Utilities [D.89-05-063] (1989) 32 Cal.P.U.C.2d 60, 69 ["This Commission does not dispute the authority or right of any local government entity to impose or levy any form of tax or fee upon utility customers or the utility itself, which that local entity, as a matter of general law or judicial decision, has jurisdiction to impose[.]"].)

34. Venue is, therefore, proper in this Court under Code of Civil Procedure section 395.5.

## GENERAL ALLEGATIONS

35. PG&E is the monopoly electricity service provider in each of the Cities and the Electricity Tax ordinances oblige it to timely and fully collect the Electricity Taxes for each of the Cities from its customers and to remit the Electricity Tax owed to each City monthly and in full.

### SACRAMENTO'S ELECTRICITY TAX ORDINANCE

36. The Electricity Tax ordinance of the City of Sacramento is codified in Chapter 3.32 of Title 3 of the Sacramento City Code. Section 3.32.050, subdivision (A) imposes Sacramento's

Colantuono, Highsmith & Whatley, PC
790 E. COLORADO BOULEVARD, SUITE 850
PASADENA, CA 91101-2109
232526.5

Electricity Tax as: "a tax upon every person in the city … [who uses] electrical energy in the city. (Sacramento City Code, § 3.32.050, subd. (A).) Sacramento taxes electricity "at the rate of five percent (5%) of the charges made for such energy, including minimum charges for service[.]" (*Ibid*.) The tax shall be paid by the person paying for such energy. (*Ibid*.) The "charges" taxed include "minimum charges for service." (*Ibid*.)

37. Sacramento granted PG&E an exclusive franchise to serve electricity to all residents and businesses in that City., PG&E must collect the Electricity Tax from service users. (Sacramento City Code, § 3.32.050, subd.(C).)

38. Absent conditions not relevant here, no exceptions or circumstances permit PG&E to reduce the "charges" subject to Sacramento's Electricity Tax to reflect credits provided by the State or any other entity. (Sacramento City Code, §§ 3.32.170 [low income citizen refund and credits] and 3.32.050, subd. (B) [exempting storage of electrical energy in a battery and electricity used to produce water].) None of the exceptions allow PG&E to reduce Sacramento's Electricity Tax based on credits provided by the State or any other entity. (*Dean v. Superior Court (Lever)* (1998) 62 Cal.App.4th 638, 641 ["*expressio unius*" canon].)

39. On or before the last day of the following month, PG&E is required to remit Electricity Tax billed for the preceding month. (Sacramento City Code, § 3.32.050, subd. (C).) Failure to do so in full is subject to penalty (Sacramento City Code, § 3.32.100.)

40. Sacramento can sue PG&E to collect the full amount of Electricity Tax due: "Any person owing money to the city under the provisions of this chapter shall be liable to an action brought in the name of the city for the recovery of such amount." (Sacramento City Code, § 3.2.110.)

41. Each of the other Cities imposes an Electricity Tax in language substantially similar to Sacramento's. A table listing the citations and tax rates for each City's Electricity Tax is attached as **Exhibit 1** and is incorporated by this reference.

**PG&E'S WILLFUL MISCALCULATION OF ELECTRICITY TAXES**

42. As stated in Paragraph 4 above, the PUC receives and applies GHG Credits under the 2006 GWS Act. However, none of these lowers PUC-approved rates for PG&E's power sales to customers in the Cities.

43. The PUC implemented the IA Credit for businesses operating in an "emissions-intensive and trade-exposed" ("EITE") industry. The credit is intended to discourage GHG "emissions leakage."

> "Emissions leakage" occurs when emissions decrease within California but increase outside of California as a result of the Cap-and-Trade Program. This credit protects eligible industrial sectors against emissions leakage by compensating them for a portion of the GHG emission costs associated with the electricity they buy.

Cal. Pub. Util. Com., *GHG Cap-and-Trade — CA Industry Assistance* <www.cpuc.ca.gov/industryassistance> (as of June 15, 2020). Eligible EITE businesses receive this credit annually, usually in April.

44. The RCC is paid to residents semi-annually without respect to energy use. The SCC is paid to qualifying small businesses monthly and does reflect credit recipients' energy use.

45. Citing the GHG Credits, PG&E, unilaterally — and without notice to any of the Cities — reduced the Electricity Taxes it collects for, and remits to, them. Each Electricity Tax applies by its terms to all "charges" PG&E bills for electricity service regardless of whether and how those charges are paid. This is akin to purchasing a discounted cellphone as part of a new cellular plan. Tax is owed on the phone's full non-discounted retail price, not the (often heavily discounted) net price. So, too, here. Any "credit" provided to the customer to reflect funds PG&E obtains for its services on account of a customer, but not from that customer, applies after the Electricity Tax is calculated. That is, the GHG credits do not erode the tax bases of the Cities' Electricity Taxes — not least because neither PG&E nor the PUC has any power to alter those taxes which, in most cases, voters approved.

46. Nevertheless, PG&E has consistently reduced the base of the Electricity Taxes, wrongly crediting service users with an applicable GHG Credit before calculating the Electricity Tax

Case: 19-30088    Doc# 8145    Filed: 06/28/20    Entered: 06/28/20 22:29:29    Page 12 of 19

owed. PG&E's willful miscalculation and under-collection of the Electricity Taxes has substantially reduced the revenue each City receives under its Electricity Tax ordinance. And it will continue to do so until this Court orders otherwise.

## FIRST CAUSE OF ACTION
## (DECLARATORY RELIEF)
## (Against All DEFENDANTS)

47. The Cities reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 46.

48. An actual controversy has arisen, and now exists, between each of the Cities and PG&E concerning the proper calculation of each Electricity Tax, as well as the rights, claims, and obligations related thereto as alleged here.

49. The Cities seek a judicial declaration that, the Electricity Tax ordinance of each City obliges PG&E, as the electric service provider for each City, to apply the Electricity Taxes to every person in the Cities using electrical energy and to **all** PG&E's charges for such energy, including charges made for metered energy, and minimum charges for service, including customer charges, service charges, demand charges, standby charges, and annual and monthly charges — with no reduction for GHG Credits.

50. A judicial declaration is necessary and appropriate under the circumstances to allow each of the Cities to ascertain its rights as to the imposition, collection, and remittance of its Electricity Tax, as well as PG&E's obligations under the Electricity Tax ordinances and other law.

## SECOND CAUSE OF ACTION
## (VIOLATION OF MUNICIPAL CODE PROVISIONS)
## (Against ALL DEFENDANTS)

51. The Cities reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 46.

52. Each City's Electricity Tax ordinance applies its Electricity Tax to all electricity consumed within its boundaries with stated exceptions not relevant here. Exhibit 1 attached to this

Colantuono, Highsmith & Whatley, PC
790 E. COLORADO BOULEVARD, SUITE 850
PASADENA, CA 91101-2109

232526.5

Complaint and incorporated within it by reference identifies those ordinances and the rate of tax each imposes.

53. The Electricity Tax ordinances oblige PG&E to collect the full amount of tax due from its customers, and to remit that amount to the Cities monthly.

54. Since at least 2016, PG&E has violated the Electricity Tax ordinances by willfully misconstruing them and under-collecting Electricity Taxes due from its customers, resulting in underpayment of the Electricity Taxes to the Cities. Therefore, PG&E is now liable to each City for the underpayment of Electricity Taxes, plus penalties and interest, in an amount to be determined at trial.

55. The Electricity Tax ordinances empower each City to bring sue for an order to compel PG&E to comply with those ordinances and to: (1) pay all Electricity Taxes owed in the future without reduction for GHG Credits; (2) remit all previously underpaid Electricity Taxes in an amount to be determined at trial; and (3) pay penalties and interest on the underpaid amounts as each Electricity Tax ordinance requires.

56. This cause of action is timely because all violations the Electricity Tax ordinances in issue occurred within three years before each City knew, or could reasonably have discovered, the actions which are the subject of this action. (Code Civ. Proc., § 338, subd. (a).) Moreover, a new duty to collect and remit the Electricity Taxes lawfully arises with each monthly charge for electric service and a new claim for breach of that duty arises each time PG&E fails to do so in compliance with each City's Electricity Tax ordinances.

## THIRD CAUSE OF ACTION
## UNFAIR BUSINESS COMPETITION
## BUS. & PROF. CODE, § 17200 ET SEQ.
### (Against ALL DEFENDANTS)

57. The Cities reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 46.

58. California's Unfair Competition Law forbids "any unlawful, unfair or fraudulent business act or practice," or "unfair, deceptive, untrue or misleading advertising," or any act that

violates the state's false advertising law. (Bus. & Prof. Code, § 17200.) Its prohibition is "sweeping," covering "anything that can properly be called a business practice and that at the same time is forbidden by law." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 838–839, emphasis added.)

59. Action under the Unfair Competition Law is properly brought in this Court — not before the PUC, even if a defendant is regulated by the PUC. (Bus. & Prof. Code, § 17204; *Greenlining Institute v. Public Utilities Com.* (2002) 103 Cal.App.4th 1324, 1330.)

60. Collecting revenue from its customers is among PG&E's core business practices. Since 2016, however, PG&E has engaged in this practice unlawfully by willfully under-collecting Electricity Taxes due from its customers in violation of the Electricity Tax ordinances. PG&E has effectively appropriated City tax revenues to subsidize its sales, causing substantial financial harm to each City, its employees, and those who rely on the vital public services it provides. The Cities are therefore entitled to an order enjoining PG&E to comply with the Electricity Tax ordinances henceforth and to provide restitution of Electricity Tax revenues which each City has lost due to PG&E's unlawful acts. (Bus. & Prof. Code, § 17203.)

61. The Cities have standing to bring this cause of action against PG&E because each has lost tax revenues as a result of PG&E's unfair competition. (Bus. & Prof. Code, § 17204.)

62. The Cities are entitled to receive restitution damages from PG&E in an amount according to proof.

63. This cause of action is timely because all violations of the Unfair Competition Law alleged herein occurred within four years before the filing of this action, subject to such tolling or other extension under the orders of the Judicial Council and this Court in light of the global pandemic. (Bus. & Prof. Code, § 17208.)

# PRAYER FOR RELIEF

WHEREFORE, the Cities respectfully pray for judgment as follows:

**FIRST CAUSE OF ACTION**

1. For a declaration that
   a. each City's Electricity Tax requires PG&E to apply that tax to all charges it makes for electrical energy, including charges made for metered energy and minimum charges for service, including customer charges, service charges, demand charges, standby charges and annual and monthly charges henceforward, with no reduction for GHG Credits or other credits the PUC may provide for;
   b. The Electricity Tax ordinances require PG&E to pay all penalties and interest on all previously underpaid Electricity Tax amounts in an amount to be determined at trial;
2. For attorneys' fees;
3. For the costs of the suit; and
4. For such other and further relief as the Court may deem just and proper

**SECOND CAUSE OF ACTION**

1. That the court issue an order:
   a. Enjoining PG&E to apply each City's Electricity Tax to every person who consumes electrical energy within that City to all PG&E's charges for such energy, including charges made for metered energy and minimum charges for service, including customer charges, service charges, demand charges, standby charges and annual and monthly charges henceforward, with no reduction for GHG Credits or other credits the PUC may provide for;
   b. Enjoining PG&E to account for and remit to the Cities all previously underpaid Electricity Taxes owed them;
   c. Enjoining PG&E to pay penalties and interest on previously underpaid Electricity Taxes owed to each City as required by that City's Electricity Tax ordinance.
2. For attorneys' fees;

3. For costs of the suit; and

4. For such other and further relief as the court may deem just and proper.

**THIRD CAUSE OF ACTION**

1. That the Court issue an injunction:

    a. Enjoining PG&E to apply each City's Electricity Tax to every person who consumes electrical energy within that City to all PG&E's charges for such energy, including charges made for metered energy and minimum charges for service, including customer charges, service charges, demand charges, standby charges and annual and monthly charges henceforward, with no reduction for GHG Credits or other credits the PUC may provide for;

    b. Enjoining PG&E to pay restitution to each City by accounting for and remitting all previously underpaid Electricity Taxes owed that City in an amount to be determined at trial, with interest as allowed by law and treble that amount as authorized by the Unfair Business Practices Law;

2. For attorneys' fees;

3. For costs of the suit;

4. For civil penalties as authorized by the Unfair Business Practices Law; and

5. For such other and further relief as the court may deem just and proper.

DATED: _____ ___, 2020            **COLANTUONO, HIGHSMITH & WHATLEY, PC**

_____
MICHAEL G. COLANTUONO
JOHN L. JONES II
JIN SOO LEE
Plaintiffs, Cities of Arcata, Blue Lake, Chico, Cupertino, Dinuba, Monterey, Oroville, Pacific Grove, Sacramento, Salinas, Sanger, Santa Cruz, Sunnyvale, Vallejo, Woodlake and the County of Sacramento

EXHIBIT 1

Exhibit 1

| City | Statute |
|---|---|
| Arcata | Arcata, Cal., Municipal Code, § 2628 |
| Blue Lake | Blue Lake, Cal., Municipal Code, § 3.16.040 |
| Chico | Chico, Cal., Municipal Code, § 3.56.040 |
| Cupertino | Cupertino, Cal., Municipal Code, § 3.34.40 |
| Dinuba | Dinuba, Cal., Municipal Code, § 3.18.060 |
| Monterey | Monterey, Cal., Municipal Code, § 35-43 |
| Orange Cove | Orange Cove, Cal., Municipal Code, § 3.20.060 |
| Oroville | Oroville, Cal., Municipal Code, § 3.28.040 |
| Pacific Grove | Pacific Grove, Cal., Municipal Code, § 6.10.040 |
| Sacramento Co. (uninc.) | Sacramento Co., Cal., Municipal Code, § 3.24.020 |
| Sacramento | Sacramento, Cal., Municipal Code, § 3.32.050 |
| Salinas | Salinas, Cal., Municipal Code, § 32-50 |
| San Leandro | San Leandro, Cal., Municipal Code, § 2-4-205 |
| Sanger | Sanger, Cal., Municipal Code, § 66-89 |
| Santa Cruz | Santa Cruz, Cal., Municipal Code, § 3.29.050 |
| Sunnyvale | Sunnyvale, Cal., Municipal Code, § 3.12.070 |
| Vallejo | Vallejo, Cal., Municipal Code, § 3.12.030 |
| Woodlake | Woodlake, Cal., Municipal Code, § 3.20.040 |