# BakerHostetler

BakerHostetler
600 Montgomery Street
Suite 3100
San Francisco, CA 94111
T: 415.659.2900
F: 415.659.2601
www.bakerlaw.com

David J. Richardson
direct dial: 415.659.2583
drichardson@bakerlaw.com

June 29, 2020

**VIA ECF**

Honorable Dennis Montali
United States Bankruptcy Court
Northern District of California
450 Golden Gate Avenue, 16th Floor
San Francisco, CA 94102

Re: In re PG&E Corporation and Pacific Gas and Electric Company, Case No. 19-30088 (DM) (Jointly Administered)

Dear Judge Montali,

For several months, the Official Committee of Tort Claimants (the "**TCC**") has been engaged in litigation with Burns & McDonnell Engineering Co., Inc. ("**Burns & McDonnell**") and certain other contractors of PG&E Corporation and Pacific Gas and Electric Company (the "**Debtors**"), seeking full compliance with the TCC's Rule 2004 subpoenas. The TCC is working as expeditiously as possible to complete this litigation and compliance work but expects that this litigation will continue post-Effective Date pursuant to Section 12.1 of the Debtor's Plan of Reorganization, under which the TCC may continue past the Effective Date for certain purposes, including the ability to "hav[e] standing and a right to be heard in connection with any pending litigation, including appeals, to which such committee is a party." *See* 6/20/20 Confirmation Order, ECF No. 8053, at ¶ 76, ECF No. 8053-1, at Section 12.1(ii) ("Dissolution of Statutory Committees").

On April 21, 2020, Your Honor permitted the TCC to conduct Rule 2004 discovery of PG&E's contractors, concluding that the assigned causes of action against these contractors "are still property of the estate, and discovery is necessary to determine if any claims may be subject to limitations or other defenses upon assignment to the TCC" and that the discovery pertains to "the present and future value and validity of such claims." *See* 4/21/20 Order, ECF No. 6866, at 3. The TCC served 42 subpoenas and has worked to compel compliance with the same. The TCC has completed approximately 80% of the work necessary to obtain compliance with its subpoena and estimates that 20% of its compliance work remains for third parties that have not yet complied with their obligations, either partially or fully, under the subpoenas. The TCC is in various stages

Atlanta   Chicago   Cincinnati   Cleveland   Columbus   Costa Mesa   Denver
Houston   Los Angeles   New York   Orlando   Philadelphia   Seattle   Washington, DC

Case: 19-30088    Doc# 8206    Filed: 06/29/20    Entered: 06/29/20 17:29:53    Page 1 of 5

of meet and confer communications with these entities, *see* attached Appendix, and the TCC hopes to resolve many or most without court intervention.

One of the non-compliant subpoena recipients—Burns & McDonnell—is ripe for review now and is the subject of this letter. The TCC requests an order compelling documents from Burns & McDonnell for the following reasons.

### **Burns & McDonnell Must Be Compelled to Comply with the TCC's Subpoena**

On April 22, 2020, the Court granted the TCC's application to serve on Burns & McDonnell its Rule 2004 subpoena, *see* 4/22/20 Order, ECF No. 6870, which sought contract and insurance documents relating to the Debtors' fire-related claims against Burns & McDonnell. *See* **Ex. A**, Rule 2004 subpoena to Burns & McDonnell. Burns & McDonnell has produced some contract-related information but has refused to produce the following categories of insurance documents in response to Requests for Production Nos. 4-15: (1) insurance policies and related documents and communications that cover claims by the Debtors arising out of PG&E contractors' services, (2) indemnification/hold harmless agreements related to services provided to either or both of the debtors, and (3) documents pertaining to any payments or obligations arising under the insurance policies sought in the Rule 2004 subpoena (collectively referred to as "**Insurance Policies and Agreements**").

After receiving the TCC's subpoena on April 22, 2020, Burns & McDonnell initially refused to produce any insurance information whatsoever. The TCC sent meet and confer correspondence on May 7, June 9, and June 10 and engaged in a meet and confer phone call on June 11, 2020. On June 18, 2020, Burns & McDonnell offered to produce certain insurance *certificates and endorsements* and a letter from its insurer, but only if the TCC agreed such documents would be "acceptable" as a compromise to a full production under RFPs 4-15. The TCC informed Burns & McDonnell by email on June 24, 2020, that it cannot accept such a meager substitute to the subpoenaed information, as the offered documents contain only a fraction of the information contained in the policies themselves. The full scope of Burns & McDonnell's insurance coverage is key to understanding the nature and value of the assigned causes of action, including the nature and value of potential indemnification claims, notification provisions for asserting timely claims, and other such data.

The TCC believes that Burns & McDonnell, and potentially other subpoena recipients, may believe that they can simply refuse to produce documents through to the Effective Date, and "run out the clock" on the subpoenas after five months of stalling.[1] As well as being inappropriate litigation strategy, it would be ineffective, as Section 12.1 of the Plan permits the TCC to complete pending litigation. These subpoenas provide a context for the proper purpose of Section 12.1, as the Fire Victim Trust should not be disadvantaged from the outset by improper stonewalling tactics of subpoena recipients, and should not be expected to start its litigation analysis from the same

---

[1] The TCC first served its document subpoenas in January 2020 under Rule 45 in connection with a contested matter. After parties objected (and pursuant to the Court's direction during the March 10, 2020 hearing), the TCC served identical document requests through its Rule 2004 subpoenas in March and April. Most contractors listed in the Appendix have had the same document requests for five months.

position the TCC was in five months ago, but instead should be able to benefit from the discovery efforts that the TCC has undertaken since January 2020.

### A. The Court has Already Authorized Rule 2004 Discovery

The Court has already concluded that the TCC is permitted to conduct Rule 2004 discovery of these contractors. *See supra* (citing 4/21/20 Order, ECF No. 6866). Despite the Court's conclusion that the TCC's Rule 2004 discovery is appropriate and will be permitted, Burns & McDonnell has refused to produce any Insurance Policies and Agreements whatsoever as well as any related insurance information concerning the preservation of notices of claims and the remaining value associated the policies. The type of Insurance Information the TCC seeks is commonly produced in the Rule 2004 context, particularly under the circumstances that exist in this case, given the Debtors' policies pertaining to contractor insurance. Specifically, insurance policies are discoverable as they pertain to the assigned causes of action in the following manners:

1. To the extent the contracts between PG&E and the contractor require the contractor to name PG&E as an additional insured, the TCC needs to know if that obligation has been met, and if not, the extent to which a cause of action arising from the Fires exists for failure to procure contractually-required insurance coverage in favor of PG&E as Additional Insureds.

2. To the extent the insurance policy has an aggregate limit, the TCC needs to discover information regarding the extent to which that limit has been exhausted, whether partially or completely, and whether such exhaustion implicates contractual obligations to maintain certain levels of insurance in favor of debtors as Additional Insureds.

3. To the extent the insurance policy has timely notice requirements to state a claim, the TCC needs to know what the notice obligations are, the timeframe for providing notice to preserve the value of the policy, and whether and to what extent notice has or has not already been provided for the claims subject to the Rule 2004 subpoena.

### B. L.R. 37-1 Certification

The TCC conferred with counsel for Burns & McDonnell for the purpose of resolving all disputed issues, as set forth in L.R. 37-1, in a phone call on June 11, 2020, as well as in an earlier phone call on the same topic on February 7, 2020. The parties have also engaged in multiple meet and confer discussions via email, in which the TCC attempted to obtain full subpoena compliance, including TCC emails of May 7, June 9, June 10, and June 24. Unfortunately, these efforts were unavailing and the parties are at an impasse.

As noted above and as detailed in the attached Appendix, the TCC notes that it is in the midst of meet and confer efforts with other contractors who have not yet produced responsive documents in response to the TCC's Rule 2004 subpoenas. These disputes are not yet ripe, but if the TCC's meet and confer efforts fail, we intend to raise them with Your Honor in short order.

The Honorable Dennis Montali
June 29, 2020
Page 4

For all these reasons, the TCC respectfully requests that the Court schedule a call to resolve the above dispute as soon as reasonably possible.

Sincerely,

*/s/ David J. Richardson*

David J. Richardson
BakerHostetler
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
(415) 659-2900
drichardson@bakerlaw.com

*Counsel to the Official Committee of Tort Claimants*

Jointly Submitted With,

*/s/ John H. MacConaghy*

John H. MacConaghy
MacConaghy & Barnier, PLC
645 First Street, West, Suite D
Sonoma, CA 95476
(707) 935-3205
macclaw@macbarlaw.com

*Special Counsel to the Official Committee of Tort Claimants*

cc: Counsel for Burns & McDonnell (via email: conradj@pepperlaw.com, hackm@pepperlaw.com)
All other parties via ECF

**Appendix**

The lists below identify certain PG&E contractors that received the TCC's Rule 2004 subpoenas for which the TCC is working to achieve full subpoena compliance. List A identifies subpoena recipients that have not produced any documents ("Full Compliance Needed"). List B identifies subpoena recipients that have produced some documents, but not a full set of responsive documents ("Partial Compliance Needed"). Please note that the TCC continues to work with all contractors on the list and hopes to resolve compliance issues without Court intervention, to the extent possible.

**List A: Full Compliance Needed**

1. Black & Veatch Construction, Inc.
2. Exponent, Inc.
3. Family Tree Service, Inc.
4. High Country Forestry
5. Loggers Unlimited, Inc.
6. MLU Services, Inc.
7. Mountain F. Enterprises, Inc.
8. KPMG LLP[2]

**List B: Partial Compliance Needed**

1. Accenture LLP
2. Asplundh entities (Western Environmental Consultants, Inc., Arbormetrics Solutions, LLC, Utility Tree Service, LLC, Trees, LLC)
3. Arcadis US
4. Burns & McDonnell Engineering Co., Inc.
5. California Forestry & Vegetation Management, Inc.
6. Davey Tree entities (Davey Resource Group, Davey Tree Surgery Company)
7. The Original Mowbray's Tree Service, Inc.
8. McKinsey & Company Inc.
9. Oliver Wyman, Inc.
10. PricewaterhouseCoopers LLP
11. Quanta entities (Quanta Energy Services LLC, Quanta Technology, LLC, PAR Electrical Contractors, Inc., Crux Subsurface, Inc.)
12. Reax Engineering, Inc.
13. TRC Solutions Inc.

---

[2] The TCC is represented by its Special Counsel, John H. MacConaghy, for purposes of its Rule 2004 subpoena to KPMG LLP.