

Luke N. Eaton
direct dial: 213.928.9838
luke.eaton@troutman.com

July 1, 2020

Via ECF

Honorable Dennis Montali
United States Bankruptcy Court
Northern District of California
450 Golden Gate Ave, 16th Floor
San Francisco, CA 94102

      Re:    In re PG&E Corporation and Pacific Gas and Electric Company, Case No. 19-30088 (DM) – RULE 2004 SUBPOENA TO BURNS & MCDONNELL

Dear Judge Montali:

      This letter is in response to the June 29, 2020 letter (the "Letter") (Docket No. 8206) submitted by the Official Committee of Tort Claimants ("TCC") seeking an order of this Court compelling Burns & McDonnell Engineering Co. Inc. ("B&M") to respond to the TCC's Rule 2004 subpoena. For the reasons set forth herein, B&M submits that such request should be denied by this Court.

      B&M is a **non-party** to the claims of the TCC and has no involvement in the bankruptcy of PG&E except for the Rule 2004 subpoena at issue here. As B&M has explained to the TCC on countless occasions, B&M did not provide any construction, repair, or vegetation management services to PG&E on the transmission lines that are allegedly responsible for the wildfires at issue and only provided limited consulting and design services to PG&E. Despite the statements in the Letter, B&M is not involved in any "litigation" nor aware of any "assigned causes of action" against it by PG&E. **To date, PG&E has neither threatened, put B&M on notice or asserted any claims against B&M for any work it performed on PG&E's behalf.** The Rule 2004 subpoenas were specifically limited to discovery "necessary to determine if any claims may be subject to limitations or other defenses upon assignment to the TCC." The order is clear - a prerequisite to the allowed discovery is a claim. There are no claims by PG&E against B&M. Thus, this discovery is not authorized by your April 21, 2020 order.

Philadelphia    Boston    Washington, D.C.    Los Angeles    New York    Pittsburgh    Detroit
Berwyn    Harrisburg    Orange County    Princeton    Rochester    Silicon Valley    Wilmington
www.pepperlaw.com

Case: 19-30088   Doc# 8236   Filed: 07/01/20   Entered: 07/01/20 15:55:08   Page 1 of 4



Here, the TCC appears to be fishing for insurance money instead of seeking proper discovery for legitimate claims. The TCC issued approximately 100 subpoenas to various vendors that provided services to PG&E in California. **No attempt was made by the TCC to determine whether these parties had any liability at all for the fires at issue**. Indeed, if such an inquiry had been made there would be no subpoena served on B&M. As this Court is well aware, "Rule 2004 is not without limits," and any discovery should not "stray into matters which are not relevant to the basic inquiry." *In re Mastro*, 585 B.R. 587, 597 (Appellate Panel for 9th Cir. 2018); see also *In re Wilcher*, 56 B.R. 428 (N. Dist. IL 1985) (the examination of a witness as to matters having no relationship to the debtor's affairs or no effect on the administration of his estate is improper). Here, the Insurance Policies and Agreements are not relevant and cannot have an effect on the estate since in the first instance there are no viable claims against B&M. Moreover, the Insurance Policies and Agreements constitute privileged and highly confidential business information that B&M should not be compelled to be produced.

If the TCC is indeed trying to determine whether any claims are "subject to limitations of other defenses upon assignment to the TCC," B&M produced and has offered to produce all the documents the TCC needs in order to make a reasonable assessment. Despite failing to provide any legal reasoning to justify the production of further documentation – documentation that PG&E itself would not be entitled to under its contracts with B&M - the TCC brought this unnecessary proceeding.

### A. Requests 1-3 – Contracts and Reports

Subpoena Requests 1-3 sought, contracts, project summaries and engineering reports issued by B&M and PG&E that dealt with the areas surrounding the Camp Fire. These contracts include recitation of hold harmless and indemnification requirements, as well as express limitation of liability terms that specifically apply to any potential indemnity obligation of B&M to PG&E. **B&M produced all responsive documents to these requests.** Thus, it was B&M's understanding that there is no dispute regarding these requests. Now the TCC claims they need to compel production of all "indemnification/hold harmless agreement related to services provided to PG&E." TCC has these documents so no further order is required.

### B. Requests 4-9 - Insurance Policies

Subpoena Requests 4-9 sought all of Burns & McDonnell's insurance policy documents for professional liability (otherwise known as Errors & Omissions or "E&O" insurance), commercial general liability ("CGL"), Directors and Officers insurance, Environmental/Pollution liability insurance, and any other policy required to be maintained under the contracts between B&M and PG&E. B&M objected to Request Nos. 4-9, noting to the TCC that these insurance documents were confidential business records which were protected by the trade secret privilege. In order to resolve this dispute without the court's intervention, **B&M offered to provide its insurance certificates and additional insured endorsements evidencing the amounts and**



**types of coverage, and the coverage limits required by the contracts – the same exact information that PG&E would be entitled to under the contract with PG&E**. (See Exhibit 1). B&M also agreed to provide assurances that the contractual limits on the policy were intact, thus assuring that the amounts of coverage were available for potential claims. There is no explanation by the TCC why this is not a sufficient production especially when there are no current or threatened claims on these policies. Balancing the highly sensitive nature of the requests versus the right of discovery, the subpoena should be limited to the documents B&M has agreed to produce as the TCC has provided no legal or factual justification to go beyond that.

C. Requests 10-15 – Communications with Insurers

Subpoena Requests 10-15 sought privileged communications between B&M and its insurance carriers and brokers, including: (i) notices of claims or tenders of defense; (ii) payments of any defense costs; or (iii) discussions of insurance policy limits dealing with other contracts and projects that B&M was involved. The communications requested are confidential business records and trade secrets not subject to production, and are covered by the common interest doctrine and thus privileged communications. *Futurecraft Corp. v. Clary Corp,* 205 Cal.App.2d 279, 289 (1962); *Lectrolarm Custom Sys. v. Pelco Sales, Inc.,* 212 F.R.D. 567 (2002) [The attorney-client privilege still exists even where communications directly occur between an insured and its insurance carrier. "The existence of a common defense allows the parties and counsel allied in that defense to disclose privileged information to each other without destroying the privileged nature of those communications."] The assurance of contractual limits being available, as noted above, precludes the need for the information sought in these requests. B&M can confirm that there have been no claims on these policies that would affect the limits of the policies. This reasonable offer would have prevented the release of privileged information yet provided TCC with the information that it allegedly needs, but the TCC rejected this offer outright.

Further, insurance applications normally include financial information, past claims history and other confidential and proprietary information submitted to insurance brokers or agents, and underwriters for the purpose of evaluating an insured's risk profile. To require B&M, a nonparty to this bankruptcy, to produce this type of information will have a chilling effect on the candor with which insureds submit confidential information to insurance companies. Courts recognize this extraordinary burden on a nonparty. For example, in *Catholic Mutual Relief Society v. Superior Court*, (2007) 42 Cal.4th 358, the state Supreme Court held that a nonparty was not required to produce its reinsurance agreements and that the production of insurance information could create an undue burden on non-parties. *Id*.

During the meet and confer process B&M cited numerous cases and legal reasoning to justify its objections to Requests Nos. 4-15. The TCC failed to provide any case citations or legal reasoning to evidence that the insurance policies or communications with insurance carriers or brokers fall within the PG&E estate or were valid requests under Rule 2004. The TCC's



position is merely that "we want the information so you should have to produce it." This is not valid reasoning to justify a fishing expedition into B&Ms most confidential and protected documents and clearly exceeds the limits of Rule 2004.

Sincerely,

*/s/ L. Eaton*

Luke N. Eaton
Counsel for Non-Party
Burns & McDonnell Engineering Co., Inc.