**Signed and Filed: July 6, 2020**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and<br>    Electric Company<br>☒ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered |

**MEMORANDUM DECISION REGARDING MOTION TO APPOINT AN EXAMINER**

On June 4, 2020, this court held a video hearing on the "Motion for an Appointment of an Examiner of Voting Procedural Irregularities Pursuant to Section 1104(c) of the Bankruptcy Code and Bankruptcy Rule 2007.1" (the "Examiner Motion") (dkt. 7568) filed by Karen Gowins and "Many Wildfire Victim Creditors" ("Movants"). Movants allege that votes on the Joint Chapter 11 Plan of Reorganization ("Plan") filed (and amended) by Debtors

-1-

and the Shareholder Proponents were improperly or inadequately solicited from wildfire victims, and an examiner should investigate the voting process. For the reasons set forth below, the court concludes that insufficient grounds exist to grant the relief sought by the Movants.

I.  PROCEDURAL BACKGROUND

On May 19, 2020, Movants filed a motion for an order shortening time ("OST") (dkt. 7427) for a hearing on the Examiner Motion, which was appended as an exhibit to the motion for an OST. On May 22, 2020 the court granted the OST; it held a hearing on June 4, 2020. Objections were filed by Watts Guerra LLP (dkts. 7436 and 7706); Singleton Law Firm Fire Victim Claimants (dkt. 7724) and by Debtors (dkt. 7719). Debtors also filed a declaration by Christina F. Pullo ("Pullo"), a vice president of Prime Clerk LLC, the court-authorized claims and noticing agent for Debtors (dkt. 7720).[1] Following the June 4 hearing, the court took the matter under advisement.

A significant development occurred the day after the hearing on the Examiner Motion. Counsel for the Official Committee of Tort Claimants (the "TCC") indicated at the June 5 hearing on confirmation that it was conducting its own examination into the voting irregularities alleged by Movants.[2]

---

[1] As discussed later, Ms. Pullo testified and was cross-examined about the transmission of the Plan, the accompanying disclosure statement, and the ballots to all creditors, particularly with respect to the wildfire victims. *See* Transcript of the Confirmation Hearing held on May 27, 2020 (dkt. 7637).

[2] At the June 5 hearing, counsel for the TCC discussed the preliminary findings reached by his firm and other professionals retained by the TCC:

-2-

The TCC offered to provide the court with its findings and did so on June 5, 2020. *See* Preliminary Report of Official Committee of Tort Claimants' Investigation of Voting Results ("TCC Preliminary Report") filed on June 9, 2020 (dkt. 7847). After completing its investigation, the TCC filed its Final Report of Official Committee of Tort Claimants' Investigation of Voting Results ("TCC Final Report") on June 19, 2020 (dkt. 8022).

II. DISCUSSION

Movants seek the appointment of an examiner to investigate purported irregularities in the voting process. All parties agree that the applicable provision governing this motion is section 1104(c) of the Bankruptcy Code, which provides:

> (c) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an

---

> I just wanted to inform you that, again, whether you appoint an examiner in [sic] subject to your discretion, but I wanted you to know that when these voting complaints came up about irregularities, we established a Baker review team, due diligence team, to work [with] Mr. Karotkin's firm and Prime Clerk. Mr. Karotkin's firm and Prime Clerk turned over all documents that we requested in order to investigate whether there were irregularities on a systemic basis and whether that affected the vote. We've gone through 75 percent of the data turned over by Weil, Gotshal, and Prime Clerk. And our preliminary conclusion was that we didn't see anything that we believed affected the 66 percent threshold though.

*See* Transcript of Hearing Held on June 5, 2020, at dkt. 7843, pp. 178-79.

-3-

Case: 19-30088    Doc# 8282    Filed: 07/06/20    Entered: 07/06/20 17:46:57    Page 3 of 7

> investigation of the debtor <u>as is appropriate</u>, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—
>
> > (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
> >
> > (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

*See* 11 U.S.C. § 1104(c) (emphasis added).

While Congress did not define or set forth the parameters of the "as is appropriate" language, the legislative history provides some guidance:

> Subsection [(c)] permits the court, at any time after the commencement of the case and on request of a party in interest, to order the appointment of an examiner, if the court has not ordered the appointment of a trustee. The examiner would be appointed to conduct such an investigation of the debtor as is appropriate under the particular circumstances of the case, including an investigation of any allegations of fraud, dishonesty, or gross mismanagement of the debtor of or by current or former management of the debtor. The standards for the appointment of an examiner are the same as those for the appointment of a trustee; <u>the protection must be needed, and the cost and expense must not be disproportionately high</u>.

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 402 (1977) (emphasis added). *See also In re Residential Capital, LLC*, 474 B.R. 112, 120-21 (Bankr. S.D.N.Y. 2012)(the appointment must be "appropriate under the particular circumstances" and "the protection must be needed"). Upon reviewing the TC Final

-4-

Report, the court concludes that the protection of an examiner is not needed and is not appropriate under the circumstances.

As noted by TCC's counsel at the confirmation hearing, "the [Wildfire Victims] weren't necessarily asking for an examiner. They just wanted to know what the answer to the question [of possible disenfranchisement] was." *See* Transcript of Hearing Held on June 5, 2020, at dkt. 7843, pp. 178-79. The independent investigation by the TCC and its consultants into the alleged voting irregularities provides that answer, namely that they "have not identified any evidence of a voting issue in the data that the consultants believe would have affected the two thirds threshold required for approval by the fire victim class." *See* TCC Preliminary Report, dkt. 7847, ¶ 4.

In conducting its investigation, the TCC's counsel and consultants "made a number of assumptions about the voting data – even if those assumptions were extreme – in order to stress test the voting results." *See* TCC Final Report at dkt. 8022, pg. 2, lines 18-20. Even after assuming that all blank votes would be counted as rejections and that certain wildfire victims intended to be vote differently, the TCC's counsel and consultants again concluded that the two-thirds threshold for Plan approval by the wildfire victim class had been met. *See* TCC Final Report, dkt. 8022 at pg. 2, lines 20-28.

In determining that the voting irregularities alleged by Movants would not have changed the ultimate vote to accept the Plan by the wildfire victims, the TCC made five significant findings:

-5-

> **Finding 1**: The data validates Debtors' tabulation of fire victims' votes (dkt. 8022 at pg. 5, lines 10-13);
>
> **Finding 2:** The defective ballots, if tabulated, would not have affected the Debtors' meeting the two-thirds threshold required for acceptance of the Plan (*id.* at pgs. 5-8);
>
> **Finding 3:** Duplication of votes, if any, would not have affected the Debtors' meeting the two-thirds threshold required for acceptance of the Plan (*id.* at pgs. 8-9);
>
> **Finding 4:** Combining the effects of the defective and potentially duplicative ballots would not have affected the Debtors' meeting the two-thirds threshold required for acceptance of the Plan (*id.* at pgs. 9-10);
>
> **Finding 5:** The TCC's counsel and consultants did not observe any evidence to support the allegation that Prime Clerk or Debtors failed to comply with the Solicitation Procedures Order (*id.* at pgs. 10-12).

Based on the TCC's investigation results, the appointment of an examiner would be unnecessarily duplicative and costly and thus inappropriate under section 1104(c). Appointment of an examiner would be futile as any findings would not affect the ultimate determination that more than half of those casting ballots holding at least two-thirds in dollar amount voted to accept the Plan. Consequently, the court finds that the appointment of an examiner is not necessary as such an examination would duplicate the efforts of the TCC and would result in "disproportionately high" costs. *See* H.R. Rep. No. 95-595.

///

///

Case: 19-30088    Doc# 8282    Filed: 07/06/20    Entered: 07/06/20 17:46:57    Page 6 of 7

### III. CONCLUSION

The court regrets that a small number of the wildfire victims felt disenfranchised for various reasons, including the complexity of the voting materials, the relocation of so many of those victims, and the misplacement or delayed receipt of many ballots and other materials. In cases of this complexity, such unfortunate occurrences are not uncommon. But the court is encouraged by the large number of claimants who did respond and whose votes were counted, both for and against confirmation of the Plan.

For the foregoing reasons, the court is denying the Examiner Motion, and entering an order to that effect concurrently with the issuance of the Memorandum Decision.

**\*\*END OF MEMORANDUM DECISION\*\***