# BakerHostetler

**BakerHostetler**
600 Montgomery Street
Suite 3100
San Francisco, CA 94111
T: 415.659.2900
F: 415.659.2601
www.bakerlaw.com

David J. Richardson
direct dial: 415.659.2583
drichardson@bakerlaw.com

July 10, 2020

**VIA ECF**

Honorable Dennis Montali
United States Bankruptcy Court
Northern District of California
450 Golden Gate Avenue, 16th Floor
San Francisco, CA 94102

Re:   In re PG&E Corporation and Pacific Gas and Electric Company, Case No. 19-30088 (DM) (Jointly Administered)

Dear Judge Montali,

On behalf of the TCC, and in response to your Docket Order of July 8, 2020, we are writing to address the letter brief filed by PG&E Corporation and Pacific Gas and Electric Company (collectively, the "Debtors"), on July 2, 2020 [Dkt. No. 8242], in which the Debtors raised arguments in response to the TCC's efforts to enforce a Rule 2004 subpoena issues to Burns & McDonnell ("Burns").

**A. The TCC Has Continuing Standing to Complete Pending Litigation**

The Debtors argue that, as a result of confirmation of their plan of reorganization (the "Plan"), the TCC no longer has standing to pursue its pending Rule 2004 subpoenas, and that "pursuit of the Burns 2004 Subpoena and all similar discovery must now be undertaken by the Fire Victim Trust." The TCC disagrees with this analysis. As was referenced in the TCC's letter of June 29, 2020 [Dkt. No. 8206] to this Court, Section 12.1 of the Plan continues the TCC's existence and standing for certain specific purposes. Section 12.1 states:

> **Dissolution of Statutory Committees**. On the Effective Date, the Statutory Committees shall dissolve, the current and former members of the Statutory Committees, including any ex officio members, and their respective officers, employees, counsel, advisors and agents, shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases, except for the limited purpose of (i) prosecuting requests for allowances of compensation and reimbursement of expenses incurred prior

*Atlanta   Chicago   Cincinnati   Cleveland   Columbus   Costa Mesa   Denver*
*Houston   Los Angeles   New York   Orlando   Philadelphia   Seattle   Washington, DC*

Case: 19-30088   Doc# 8350   Filed: 07/10/20   Entered: 07/10/20 11:02:32   Page 1 of 3

> to the Effective Date and objecting to any such requests filed by other Professionals, including any appeals in connection therewith, (ii) <u>having standing and a right to be heard in connection with any pending litigation, including appeals, to which such committee is a party</u>, or (iii) prosecuting any appeals of the Confirmation Order.

<u>See</u> Dkt. No. 8048, Section 12.1 (emphasis added).

The term "litigation" is not a defined term in the Plan. The TCC contends that its issuance of Rule 45 subpoenas, its re-issuance of the same subpoenas pursuant to Rule 2004, and its efforts to enforce those subpoenas, constitute pending "litigation" for purposes of Section 12.1. There is no other TCC "litigation" that is pending, and no other meaning for Section 12.1, if it is to have meaning.

The TCC previously explained to this Court that it had three reasons for seeking documents from potential vendor/consultant defendants: (i) understanding the value of the Assigned Rights and Causes of Action prior to Plan confirmation; (ii) confirming deadlines for notices of claims under applicable insurance policies, to ensure that no claims are lost; and (iii) preparing and analyzing the Assigned Rights and Causes of Action so that the Trust is able to commence litigation without rushing up against statutes of limitations deadlines. Only the first of those grounds for the discovery has been mooted by Plan confirmation.

The TCC is not seeking any standing or authority to commence any new discovery. Rather, it is seeking to complete pending discovery that was first served five months ago under Rule 45. The same subpoenas were re-served under Rule 2004, but this had the effect of erasing the "overbroad" objections of parties like Burns. *See Rigby v. Mastro (In re Mastro)*, 585 B.R. 587, 597 (9th Cir. BAP 2018) ("As the Rule's text makes clear, the scope of a Rule 2004 examination is 'unfettered and broad'; the rule essentially permits a "fishing expedition" … And the examination may "extend to third parties who have had dealings with the debtor.") (citations omitted); *In re Mitchell*, 2019 Bankr. LEXIS 658 *16 and 20, 2019 WL 1054715 (Bankr. D. Idaho March 5, 2019) (permitting discovery of insurance policies under Rule 2004 "fishing expedition" as "proper request"). The nature of the TCC's discovery is consistent with the purposes of Rule 2004. *In re Recoton Corp.*, 307 B.R. 751, 756 (Bankr. N.D.N.Y. 2004) ("The Rule 2004 discovery sought by the Committee is thus prima facie consistent with the Rule's ... purposes of allowing the Committee to obtain information necessary to determine whether claims beneficial to the estates exist and whether to pursue such claims.").

While there may seem to be some appeal to the idea that the TCC has concluded its role in these cases (absent appeals and other matters addressed in Section 12.1), and that the Trust should now assume the mantle of completing the TCC's discovery, the flip side to that is that forcing the Trust to start over with new subpoenas rewards intransigent parties who have refused to produce documents by continuing to assert bad faith claims that Rule 2004 does not apply or reach the requested documents. The TCC has been seeking these documents for five months. If the Trust is forced to start from scratch, and faces the same refusals to respond, it could find itself running up against statutes of limitations without having received productions, and with all of 2020 having passed during which notices of potential claims will not have been served on insurance companies.

The Debtors appear to be focused on "who pays," but the TCC is focused on ensuring that Fire Victims are not prejudiced by a ruling that permits subpoena recipients to "run out the clock" with intransigence rather than good faith productions. Whether the TCC has standing to complete this litigation under Section 12.1 of the Plan, or the Trust is able to step into the TCC's shoes and continue enforcement of the same subpoenas on behalf of the same constituent group of Fire Victims, the outcome of Burns' objection and the Debtors' letter brief should not be a ruling that rewards intransigence and bad faith refusals to comply with proper subpoenas.

### B. The Debtors Are the Appropriate Party to Pay for Completion of this Discovery

The Debtors have argued that they should not have to pay for any work by the TCC to compel enforcement and obtain documents under its pending Rule 2004 subpoenas.

Debtors' estates are responsible for the fees and expenses of official committees. Section 12.1 of the Plan continues the existence and standing of official committees in these cases for certain purposes, including "requests for allowances of compensation," "litigation" and "appeals." Any task that falls under Section 12.1 is a proper expense of the estates, including the TCC's efforts to compel enforcement of pending Rule 2004 subpoenas. If this Court were to find that the Trust should bear the expense of subpoena enforcement that have been incurred after July 1, 2020, despite the language of Section 12.1, then the TCC requests that this Court confirm that it is not erasing the TCC's standing under Section 12.1, nor the proper role of the Debtors' estates to pay for work arising in appeals and fee applications. The TCC's standing to participate in appeals and fee applications should remain recognized expenses of the Debtors' estates.

### C. Conclusion

The TCC seeks a resolution to this dispute that does not reward bad faith refusals to produce documents that plainly fall within the scope of Rule 2004's "unfettered and broad" scope, and does not encourage further refusals to respond to proper discovery investigating claims of the estate to be litigated for the benefit of creditors. At a minimum, if this Court finds that the TCC should not complete its discovery in its own name, the Fire Victim Trust should be able to step into the TCC's shoes to enforce the existing subpoenas for the benefit of the same constituency of Fire Victims.

Sincerely,

*/s/ David J. Richardson*

David J. Richardson
*Counsel to the Official Committee of Tort Claimants*


cc (via Email):
    John H. Conrad, Counsel for Burns & McDonnell
    Marion T. Hack, Counsel for Burns & McDonnell
    John H. MacConaghy, Special Counsel to the Official Committee of Tort Claimants
    Joel S. Miliband, Counsel for Fire Victim Trustee
    David J. Molton, Counsel for Fire Victim Trustee
    Debtors' Counsel