# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case<br>No. 19-30088 (DM) |
| **PG&E CORPORATION,** | |
| **- and -** | Chapter 11<br>(Lead Case)<br>(Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | **FOURTH INTERIM APPLICATION OF LINCOLN PARTNERS ADVISORS LLC FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD JANUARY 1, 2020 THROUGH MAY 31, 2020** |
| □ Affects PG&E Corporation | |
| □ Affects Pacific Gas and Electric Company | |
| ■ Affects both Debtors | |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Objection Date: August 4, 2020 |

| | |
|---|---|
| To: | <u>The Notice Parties</u> |
| Name of Applicant: | <u>Lincoln Partners Advisors LLC</u> |
| Authorized to Provide Professional Services to: | <u>Financial Advisor to the Official Committee of Tort Claimants</u> |
| Date of Retention: | <u>March 1, 2019</u> |
| Period for which compensation and reimbursement are sought: | <u>January 1, 2020 through May 31, 2020</u> |
| Amount of compensation and reimbursement are sought: | <u>$8,766,589.50 (100%)</u> |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | <u>$41,284.46 [1]</u> |

[1] Includes expenses related to prior fee periods that were not previously filed due to timing.

# SUMMARY OF FOURTH INTERIM FEE APPLICATION

| Date Filed | Period Covered | Total Compensation and Expenses for Period Covered | | Total Amount Previously Requested with Monthly Fee Statement | | Total Amount Paid to Date | | Holdback Fees, Unpaid Fees and Expenses Requested |
|---|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees @80% | Expenses @100% | Fees | Expenses | Fees |
| 3/30/20 (DE 6527) | 1/1/20-1/31/20 | $1,421,820.50 | $8,695.07 | $1,137,456.40 | $8,695.07 | $1,137,456.40 | $8,695.07 | $284,364.10 |
| 4/24/20 (DE 6933) | 2/1/20-2/29/20 | $1,743,096.00 | $24,107.92 | $1,394,476.80 | $24,107.92 | $1,394,476.80 | $24,107.92 | $348,619.20 |
| 6/11/20 (DE 7910) | 3/1/20-3/31/20 | $1,709,384.50 | $7,456.88 | $1,367,507.60 | $7,456.88 | $0 | $0 | $1,716,841.38 |
| 7/9/20 (DE 8344) | 4/1/20-4/30/20 | $1,836,560.50 | $1,024.59 | $1,469,248.40 | $1,024.59 | $0 | $0 | $1,837,585.09 |
| 7/13/20 (DE 8369) | 5/1/20-5/31/20 | $2,055,728.00 | $0 | $1,644,582.40 | $0 | $0 | $0 | $2,055,728.00 |
| **Total for Fourth Interim Fee Application** | | **$8,766,589.50** | **$41,284.46** | **$7,013,271.60** | **$41,284.46** | **$2,531,933.20** | **$32,802.99** | **$6,243,137.77** |

Objections to Monthly Fee Statements: No objections have been filed regarding the Eleventh, Twelfth, and Thirteenth Monthly Fee Statements for January, February, and March 2020. The objection deadlines for the Fourteenth and Fifteenth Monthly Fee Statements for April and May 2020 are July 31 and August 3, 2020, respectively.

# SUMMARY OF HOURS INCURRED BY PROFESSIONAL DURING

# THE APPLICATION PERIOD

| Professional | Position | Billing Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Brent Williams | Managing Director | $ 1,195 | 1,284.8 | $ 1,535,336.00 |
| Alex Stevenson | Managing Director | 1,195 | 588.5 | 703,257.50 |
| Brendan Murphy | Managing Director | 1,095 | 1,251.6 | 1,370,502.00 |
| Sherman Guillema | Director | 895 | 541.9 | 485,000.50 |
| Peter Gnatowski | Director | 895 | 1,431.8 | 1,281,461.00 |
| Matt Merkel | Vice President | 795 | 1,374.5 | 1,092,727.50 |
| Erik Ellingson | Associate | 695 | 712.8 | 495,396.00 |
| Naeem Muscatwalla | Associate | 695 | 377.9 | 262,640.50 |
| Max Golembo | Associate | 695 | 128.8 | 89,516.00 |
| Jeremy Mau | Associate | 695 | 102.8 | 71,446.00 |
| Jacob Kinstler | Associate | 695 | 17.4 | 12,093.00 |
| Riley Jacobs | Analyst | 395 | 1,228.7 | 485,336.50 |
| Alex Gebert | Analyst | 395 | 1,113.9 | 439,990.50 |
| Zack Stone | Analyst | 395 | 695.0 | 274,525.00 |
| Aadil Khan | Analyst | 395 | 131.2 | 51,824.00 |
| John Rutkowski | Analyst | 395 | 37.5 | 14,812.50 |
| Charles Hallett | Analyst | 395 | 128.9 | 50,915.50 |
| Thomas Steve | Analyst | 395 | 126.1 | 49,809.50 |
| **Total** | | | **11,274.1** | **$ 8,766,589.50** |

## SUMMARY OF HOURS INCURRED BY PROJECT CATEGORY DURING

## THE APPLICATION PERIOD

| Task Code | Task Description | Total Hours | Total Fees |
|---|---|---|---|
| 3 | Financial Analysis (Requested by Counsel, or Otherwise) | 1,367.0 | $ 1,032,900.25 |
| 4 | 13-Week Cash Flow / MOR / Liquidity Analysis | 179.2 | 117,399.25 |
| 6 | Due Diligence of Wildfire Safety Plan and Related Analysis | 241.3 | 167,933.50 |
| 7 | Debtor Professionals - Diligence / Meetings / Calls | 200.4 | 175,868.00 |
| 8 | UCC Professionals - Diligence / Meetings / Calls | 0.7 | 766.50 |
| 9 | Other Professionals / Interested Parties - Diligence / Meetings / Calls | 116.6 | 133,777.00 |
| 10 | Tort Claimants (Counsel/FA) - Diligence / Meetings / Calls | 437.9 | 477,580.50 |
| 11 | Assist Counsel in Responses / Objections to Bankruptcy Court Motions | 26.5 | 22,317.50 |
| 12 | Committee Related Matters - Diligence / Meetings / Calls | 665.8 | 629,921.00 |
| 13 | Bankruptcy Filings, Motions and Other Document Review | 372.7 | 235,361.75 |
| 15 | Review of Employee-Related Matters, Including Retention Plans | 98.0 | 65,230.00 |
| 16 | Review of Claims and Related Analysis | 368.4 | 287,038.00 |
| 17 | Asset Sale(s), Strategic Alternatives, and Related Analysis | 336.4 | 231,648.00 |
| 18 | Analysis of New Debt or Equity Capital | 1,418.6 | 1,084,812.25 |
| 19 | Analysis of Pro-Forma Capital Structure, and Related Analysis | 533.4 | 441,078.25 |
| 20 | Benchmarking and Related Analysis | 1,382.9 | 865,115.50 |
| 21 | Term Sheets, Plan, and Disclosure Statement Analysis | 1,311.2 | 1,121,474.00 |
| 22 | Review of Discovery Documents and Deposition Preparation (Witnesses) | 82.2 | 47,149.00 |
| 23 | Deposition(s), Testimony, Court Hearing(s), and Related Preparation / Attendance | 173.8 | 161,231.00 |
| 24 | Business Plan | 342.9 | 284,935.50 |
| 25 | Regulatory and Legislative Matters, and Related Financial Analysis | 916.4 | 716,823.25 |
| 26 | Travel Time - Non Working Travel (Capped) | 46.0 | 50,070.00 |
| 27 | Project Administration | 218.5 | 174,167.50 |
| 31 | Fee Application Preparation | 422.0 | 224,050.00 |
| 32 | Mediation Preparation / Attendance | 15.6 | 17,942.00 |
| **Total** | | **11,274.1** | **8,766,589.50** |

## SUMMARY OF EXPENSES INCURRED DURING

## THE APPLICATION PERIOD

| Expense Type | Amount |
|---|---|
| Airfare | $15,333.48 |
| Ground Transportation (In-Town - Taxi/Uber/Car Service) | $2,344.78 |
| Ground Transportation (Out-of-Town - Taxi/Uber/Car Service) | $3,588.94 |
| Hotel Stay (Traveling) | $10,027.39 |
| Internet/Online Fees | $288.87 |
| Meals - In Town Only | $2,487.21 |
| Meals - Out-of-Town Travel Only | $2,103.35 |
| Other / Miscellaneous | $584.56 |
| Parking | $570.80 |
| Printing/Photocopying (In-House) | $1,832.95 |
| Research (Databases) | $0.00 |
| Teleconferencing | $2,122.13 |
| Transcripts | $0.00 |
| **Total** | **$41,284.46** |

Lincoln Partners Advisors LLC ("**Lincoln**" or the "**Applicant**"), the financial advisor for the Official Committee of Tort Claimants (the "**TCC**"), representing the largest group of stakeholders in the jointly administered bankruptcy cases (the "**Cases**") of PG&E Corporation and Pacific Gas and Electric Company (the "**Debtors**"), hereby submits its Fourth Interim Fee Application (the "**Fee Application**") for allowance of compensation for professional services performed by Lincoln for the period commencing January 1, 2020 through and including May 31, 2020 (the "**Application Period**") and reimbursement of its actual and necessary expenses incurred during the Application Period. The Applicant seeks interim approval of compensation and reimbursement of expenses totaling **$8,807,873.96,** which sum represents compensation for professional services rendered in the amount of **$8,766,589.50** and reimbursement for expenses incurred in the amount of **$41,284.46.** The Applicant is seeking entry of an order pursuant to sections 330, 331, and 1103 of title 11, United States Code (the "**Bankruptcy Code**"); Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); the Local Rules for the United States Bankruptcy Court for the Northern District of California (the "**Local Rules**"); the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines**"); the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, governing the narrative portion of fee applications, effective February 19, 2014 (the "**Narrative Guidelines**"); the *Order Pursuant to 11 U.S.C §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professional*s, entered on February 27, 2019 (the "**Interim Compensation Order**"); and the revised Fee Examiner Protocol filed on October 24, 2019 (the "**Revised Protocol**" and collectively, the "**Guidelines**") [Docket No. 4473].

This Application is based upon the contents hereof, together with the exhibits; the certification of Brent C. Williams filed concurrently herewith; the pleadings, papers, and records on file in the Cases; and any evidence or argument that the Court may entertain at the time of the hearing on the Application.

Pursuant to the Narrative Guidelines, a cover letter enclosing this Application is being sent to the Chair of the TCC concurrently. The letter invites the Chair to discuss with the Applicant and/or the Office of the United States Trustee any objections, concerns, or questions the Chair may have regarding the requested compensation and reimbursement set forth in the Application. A copy of the transmittal letter is attached hereto as **Exhibit A.**

This Fee Application summarizes the services rendered by Lincoln on behalf of the TCC during the Application Period. A breakdown of the hours and fees by professional is attached hereto as **Exhibit B**. A breakdown of the hours and fees by task code is attached hereto as **Exhibit C**. A breakdown of expenses by expense type is attached hereto as **Exhibit D.** A detailed copy of the time records by professional and by task code is attached hereto as **Exhibit E**. A detailed copy of the expense records by professional and expense type is attached here to as **Exhibit F.**

<u>**TERMS AND CONDITIONS OF EMPLOYMENT**</u>

1.      Lincoln is compensated on an hourly fee basis, plus reimbursement of actual and necessary expenses incurred. For further information regarding the terms and conditions of Lincoln's retention, please refer to the Retention Order (defined below).

<u>**RELEVANT BACKGROUND**</u>

2.      On January 29, 2019 (the "**Petition Date**"), the Debtors filed the Cases. During the Application Period, the Debtors continued to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

3.      On February 15, 2019, the Office of the United States Trustee ("**UST**") filed an Appointment of the Official Committee of Tort Claimants [Docket No. 453]. Following the resignation of Richard Heffern from the original TCC and the addition of Tommy Wehe, on February 21, 2019, the UST filed the Amended Appointment of the Official Committee of Tort Claimants [Docket No. 530]. The UST filed the Second Amended Appointment of the Official Committee of Tort Claimants on March 27, 2020 following the resignations of Kirk Trostle and GER Hospitality, LLC [Dkt. No. 6503], and the Third Amended Appointment of the Official Committee of Tort Claimants on April 3, 2020 following the resignation of Karen K. Gowins [Dkt.

No. 6613]. The members of the TCC are: (i) Tommy Wehe; (ii) Angelo Loo; (iii) Agajanian, Inc.; (iv) Susan Slocum; (v) Samuel Maxwell; (vi) Karen M. Lockhart; (vii) Wagner Family Wines-Caymus Vineyards; and (viii) Gregory Wilson.

4. On March 30, 2019, the TCC filed its *Application to Employ Lincoln Partners Advisors LLC as Financial Advisor Effective as of March 1, 2019* [Docket No. 1134] (the "**Retention Application**"). On May 10, 2019, the Court entered its *Order Approving the Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. 2014 and 5002 to Retain and Employ Lincoln Partners Advisors LLC as Financial Advisors Effective as of March 1, 2019* [Docket No. 1976] (the "**Retention Order**").

5. On May 28, 2019, the Court entered an order appointing Bruce A. Markell as fee examiner ("**Fee Examiner**") in the Cases [Docket No. 2267]. Lincoln has communicated with the Fee Examiner, and it has supplied information to the Fee Examiner as requested and necessary for the Fee Examiner to evaluate the reasonableness of the compensation sought in this Application.

## RELIEF REQUESTED AND BASIS FOR RELIEF

6. This Application is Lincoln's fourth interim request for allowance and payment of fees and expenses as financial advisor to the TCC.

7. Pursuant to Bankruptcy Code §§ 330 and 331, Lincoln respectfully requests entry of an order, on an interim basis, allowing and approving $8,807,873.96, which sum represents compensation for professional services rendered in the amount of $8,766,589.50 and reimbursement for expenses incurred in the amount of $41,284.46. The services and expenses for which interim compensation is sought herein were rendered for and on behalf of the TCC. Lincoln respectfully submits that the nature of the services has been necessary and beneficial to the TCC in maximizing their recoveries.

8. Lincoln's retention and corresponding engagement scope have been to serve as the financial advisor to the TCC during the pendency of the Cases. While the Official Committee of Unsecured Creditors ("**UCC**") retained FTI Consulting ("**FTI**") and Centerview Partners ("**Centerview**") to serve two separate financial advisory roles, the TCC's focus on efficiency and cost-effectiveness has required Lincoln to perform both functions (e.g. investment banker and

financial advisor to the TCC). The TCC and its counsel Baker & Hostetler LLP ("**Baker**" or "**Counsel**") required Lincoln to dedicate senior resources to many specific assignments and case issues in these matters. This has also been reflected in the professionals involved and hours worked.

9. That said, in an effort to streamline and control professional fees and expenses where possible, Lincoln endeavored to minimize the expenditure of time by its senior members and to delegate responsibilities to junior members, associates, analysts, and other employees as appropriate.

10. Further, Lincoln has made every effort to ensure that this Application complies with the Guidelines and to avoid unnecessary duplication of effort by and among its team members, as well as with other retained professionals in these cases. Lincoln has supplied the Fee Examiner and the UST with Lincoln's monthly fee statements in an electronic format (Excel) Lincoln believes is acceptable to the Fee Examiner and the UST. Pursuant to Bankruptcy Code § 504, Lincoln has no understanding, agreement, or arrangement of any kind to divide with or pay to anyone any fees that may be awarded to Lincoln in the Cases, other than as may be shared among the members of Lincoln.

### SUMMARY OF PROFESSIONAL SERVICES RENDERED

11. The Debtors' Cases are among the largest and most complex cases in history. There are many issues and considerations impacting the TCC and tort claimants' potential recoveries. The services rendered by Lincoln include, but are not limited to, the following project billing categories. The specific tasks, the number of hours devoted, and the amounts charged within each billing category are set forth below.

    a. <u>Financial Analysis (Requested by Counsel, or Otherwise) (003)</u>: Throughout the Application Period, Lincoln spent significant time evaluating the Debtors' financial performance and business operations, including reviewing historical results, operating metrics, earnings releases, outstanding assets and liabilities, and financial forecasts. Lincoln reviewed and analyzed information provided by the Debtors; public SEC filings, such as the Debtors' quarterly and annual financial statements; investor presentations; and other public sources. Lincoln created various models and analyses, including an operating financial model, a waterfall recovery model,

and analyses related to the Debtors' historical and projected financial results and capital expenditures, outstanding make-whole premiums, pro forma post-petition obligations and other financial and operational analyses. Lincoln researched various tax related matters, including the treatment of the Debtors' tax attributes and net operating losses ("**NOL**"), the preservation of the Debtors' pre- and post-petition NOLs, and tax monetization mechanisms. Lincoln performed valuation recovery analysis and reviewed the allocation of equity and recovery to various parties under different scenarios. Lincoln analyzed the formulation of Normalized Expected Net Income ("**NENI**"), including the inputs to NENI and the impact of changes to these inputs on the NENI formulation. Lincoln reviewed risk factors and the potential financial and operational impacts of COVID-19 on the Debtors' operations, financial results, and liquidity. Additionally, Lincoln performed in-depth research into registration rights agreements, lock-up terms, and other topics related to contractual rights and obligations of shareholders involved in primary and secondary equity offerings. This assisted Counsel and the TCC in understanding the Debtors' financial position, outstanding claims, assets and liabilities, and potential recoveries to tort claimants across various scenarios and assumptions.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **1,367.0 hours** and $**1,032,900.25** in fees.

    b.  <u>13-Week Cash Flow / MOR / Liquidity Analysis (004)</u>: This category encompasses services rendered related to the Debtors' liquidity, cash flow, and monthly operating reports. Throughout the Application Period, Lincoln monitored the Debtors' liquidity position and cash flow results compared to the initial DIP forecast and subsequent updated monthly cash flow forecasts. Lincoln reviewed and analyzed the bi-weekly actual to budgeted results, reviewed the assumptions driving the updated cash flow forecasts furnished by the Debtors, and compared original cash flow forecasts to updated forecasts to understand the key drivers of the variances and changes. Based on the review of the liquidity and cash flow results, Lincoln created diligence questions and made numerous requests to the Debtors in order to understand the variances, changes, and assumptions. The diligence requests were supplemented with diligence calls with the Debtors, when applicable. Lincoln also reviewed the Debtors' monthly operating results to assess and

evaluate the Debtors' monthly financial performance, account balances of certain assets and liabilities, including wildfire-related claims and reserves, and payments on pre-petition obligations, among others. Lincoln frequently advised Counsel and the TCC regarding the Debtors' liquidity and cash flow position, actual versus forecasted results, and future projections.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **179.2 hours** and **$117,399.25** in fees.

       c.    <u>Due Diligence of Wildfire Safety Plan and Related Analysis (006):</u> During the Application Period, Lincoln spent time reviewing and analyzing the Debtors' wildfire mitigation and safety efforts, including reviewing and evaluating regular updates to the Wildfire Safety Plan ("**WSP**"). Lincoln participated in meetings and calls with the Debtors' management and their advisors to discuss the development, implementation, and status of the WSP.

Lincoln reviewed and evaluated various metrics and targets of the WSP, including vegetation management, system hardening, inspections, power safety shutoff programs, and situational awareness, among others. Lincoln analyzed the Debtors' periodic status updates regarding the WSP and the Wildfire Assistance Fund, including plan progress, actual results to plan targets, and reasons for variances to plan. Lincoln closely monitored WSP categories that were behind plan, including enhanced vegetation management, and the Debtors' plans for the upcoming fire season. Lincoln performed in-depth reviews of the Debtors' power safety shutoff programs, including monitoring and evaluating the results, potential costs, regulatory responses, and media coverage related to the actual implementation of the shutoffs. Lincoln reviewed the Debtors' future planned investment, including operational costs and capital expenditures, related to the wildfire mitigation efforts. Lincoln also considered the many wildfire safety requirements and findings of the California Public Utilities Commission (the "**CPUC**"), Governor Gavin Newson's Strike Force report, Blue Ribbon Commission report, the Federal Monitor's Report, and various requests from Judge Alsup, among others.

Lincoln considered the risks wildfires posed on effectuating a plan of emergence and maximizing value for the tort claimants. Lincoln also considered wildfire safety as it relates to partaking in future California legislative funding and/or insurance programs. Lincoln frequently

created presentations for Counsel and the TCC detailing the WSP, status updates of the WSP, and legislative and regulatory updates related to the WSP.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **241.3 hours** and **$167,933.50** in fees.

      d.     <u>Debtor Professionals - Diligence / Meetings / Calls (007)</u>:  During the Application Period, Lincoln held calls, attended in-person meetings, and video-conferenced with the Debtors and the Debtors' advisors, including Alix Partners and Lazard Freres & Co., to discuss and negotiate matters related to the Cases including business diligence, liquidity forecasts, financial projections, exit financing, securitization application, the business plan, monthly operating reports, WSP, financing commitments, and other filed motions and matters.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **200.4 hours** are **$175,868.00** in fees.

      e.     <u>UCC Professionals - Diligence / Meetings / Calls (008)</u>:  During the Application Period, Lincoln held calls and attended in-person meetings with the UCC and professionals representing the UCC, including FTI and Centerview, to discuss matters related to the Cases and joint interests, including WSP, mediation, other filed motions and matters.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **0.7 hours** and **$766.50** in fees.

      f.     <u>Other Professionals / Interested Parties - Diligence / Meetings / Calls (009)</u>: During the Application Period, Lincoln held confidential calls and attended in-person meetings with the other professionals and interested parties to the Cases to discuss case-related matters and potential joint interests. Lincoln spent time preparing for and communicating via calls, meetings, and emails with these professionals and interested parties.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **116.6 hours** and **$133,777.00** in fees.

g. <u>Tort Claimants (Counsel/FA) - Diligence / Meetings / Calls (010):</u> Time spent in this category is related to correspondence with Baker regarding strategy, approach, recommendations, and financial analyses of various filings by the Debtors and case-specific issues, including many of the topics and issues addressed in this Fee Application. Lincoln also coordinated with Baker on TCC discussion topics for weekly meetings and related presentation materials.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **437.9 hours** and **$477,580.50** in fees.

h. <u>Assist Counsel in Responses / Objections to Bankruptcy Court Motions (011):</u> During the Application Period, Lincoln assisted Baker with financial analyses related to evaluating and/or responding to issues impacting the tort claimants and/or motions filed by the Debtors including the treatment of tax attributes, financing commitments, disclosure statements, and confirmation briefs, among others. At Counsel's request, Lincoln researched and analyzed support materials related to the requested relief and presented its findings and recommendations to Counsel. If requested by Counsel, Lincoln prepared declarations in support of its recommendations and findings.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **26.5 hours** and **$22,317.50** in fees.

i. <u>Committee Related Matters - Diligence / Meetings / Calls (012):</u> This task code encompassed substantial time for services rendered to the TCC including preparation of presentations, attending regularly scheduled (typically weekly) committee meetings, and participation in other regular communications with individual TCC members and sub-committees outside of the scheduled weekly meetings. Lincoln assisted the TCC with evaluating the numerous issues and topics covered in this Fee Application and assessing their potential financial impact to tort claimants and/or their eventual recovery. Lincoln prepared and presented numerous analyses, presentations and recommendations to the TCC on various topics including the Debtors' financial and operational position, WSP, waterfall and recovery analysis, treatment of tax attributes, term sheets and proposals, plans of reorganization, equity valuations, strategic alternatives, exit

financing, negotiations with the Debtors and interested parties, and regulatory and legislative updates, among many others.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **665.8 hours** and **$629,921.00** in fees.

        j.      <u>Bankruptcy Filings and Document Review (013)</u>:  During the Application Period, Lincoln reviewed and evaluated various other documents, motions, and filings that are not covered under a specific task code in this Fee Application. Lincoln also regularly reviewed the Debtors' and third-party media coverage to monitor and evaluate developments related to the Cases and the impact, if any, to the tort claimants.

One junior Lincoln professional daily reviewed, summarized, and circulated all relevant court dockets internally to ensure the engagement team stayed informed of key filings and case developments in a timely and cost-efficient manner. Additional Lincoln junior professionals daily monitored the Debtors' and third-party media coverage, including news articles from regional and national media outlets, restructuring publications, subscription databases and regulatory websites. A Lincoln professional (junior or senior depending on underlying topic) monitored and analyzed developments, trends, and market sentiment related to the Debtors, regulators, third parties, and tort victims. Similar to the key docket filings, key media coverage articles and/or publications were circulated to the engagement team and, in certain instances, Counsel and the TCC.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **372.7 hours** and **$235,361.75** in fees.

        k.      <u>Review of Employee-Related Matters, Including Retention Plans (015)</u>: Time billed to this category primarily focused on the review and analysis of employee compensation and retention, the composition of the Board of Directors, the compensation and resignation of William (Bill) Johnson, the Chief Executive Officer of the PG&E Corporation, as well as the review of the Debtors' Short-Term Incentive Plan ("**STIP**") results.

Lincoln evaluated and analyzed matters surrounding the resignation of Mr. Johnson, including analysis of the value of Mr. Johnson's cash and equity compensation and the possible effects of the resignation on Mr. Johnson's cash and equity compensation.

Lincoln reviewed the Debtors' Q4 2019 STIP results. Lincoln compared the actual Q4 2019 STIP results to the forecasted results under the 2019 WSP and analyzed notable variances. Lincoln communicated the results to Counsel and followed up with the Debtors to understand what was driving the variances in the results, as needed.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **98.0 hours** and **$65,230.00** in fees.

l. <u>Review of Claims and Related Analysis (016)</u>: During the Application Period, Lincoln evaluated and analyzed various claims including the size, type, and expected treatment of the claims pre-petition, post-petition and upon emergence. Lincoln considered information provided by the Debtors, various motions, and other documents to understand the proposed size and validity of various claims. Lincoln's claims analysis considered the filings and relief from stay on the Tubbs claims and estimation conferences.

Lincoln also reviewed and analyzed the claim amounts filed by the various state and federal governmental agencies, including the proof supporting the filed claims, the scope of services of the claims, and the potential duplication of claims.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **368.4 hours** and **$287,038.00** in fees.

m. <u>Asset Sale(s), Strategic Alternatives, and Related Analysis (017)</u>: Time billed to this category relates to evaluating various strategic alternatives available to the Debtors including potential sale(s) of core and non-core assets. Lincoln reviewed and evaluated the Debtors' comprehensive asset portfolio across gas, electric, and hydroelectric for identifying potential sale(s) of assets. In reviewing the potential sale(s) of assets, Lincoln considered the nature of the Debtors asset base, impact to operations from the sale(s), and the estimated recovery value, if any. Lincoln performed diligence on the assets based on publicly available information including the SEC, CPUC, and the Federal Energy Regulatory Commission ("**FERC**") and based on information supplied by the Debtors. Based on available information on the Debtors' portfolio of assets and using valuation metrics obtained from other relevant assets and transactions in the market, Lincoln performed sum-of-the-parts ("**SOTP**") valuation analysis and best interests test analysis for the

purposes of evaluating recoveries proposed under the plan. Lincoln assessed and evaluated contingent alternatives, including the off-ramp option from the state of California. Lincoln also reviewed prior asset sale proposals from city and local municipalities to acquire certain assets of the Debtors, including electric infrastructure assets and hydroelectric assets.

Lincoln evaluated the impact of the CPUC and other regulatory proceedings on any asset sale(s) including the impact of AB 1054 and CPUC restrictions on proceeds of asset sales, among many others. Lincoln prepared presentations for Counsel and the TCC summarizing and analyzing the Debtors' asset portfolio, offers to acquire assets, requested motions to sell assets, and the potential impact of any asset sale(s) for recoveries to tort claimants.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **336.4 hours** and **$231,648.00** in fees.

n. <u>Analysis of New Debt or Equity Capital (018)</u>: Time billed to this category includes analyzing new debt or equity capital financing proposals as part of the Debtors' plan of reorganization. Lincoln analyzed and compared the related debt commitment letters, confident letters, various iterations of equity backstop commitment letters, and proposed securitization transaction in accordance with the respective plan of reorganization. Lincoln reviewed and evaluated the key terms and conditions, termination rights, registration rights, feasibility and the cost of capital, among other terms. Lincoln also researched and analyzed trust mechanisms and trust monetization mechanics. Lincoln analyzed the amount of new equity capital being raised, the number of shares being issued, the share price and the implied equity value per share. Lincoln performed an in-depth evaluation and review of the Debtors' securitization application and other related documents filed with the CPUC. Lincoln advised Counsel and the TCC regarding the debt commitment letters, equity considerations to the tort claimants, confident letters, trust mechanisms, equity backstop commitment letters, and proposed securitization transaction under the proposed plans and the risk factors and potential impact to tort claimants and their recovery.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **1,418.6 hours** and **$1,084,812.25** in fees.

o.    <u>Analysis of Pro-Forma Capital Structure, and Related Analysis (019)</u>:  Time billed to this category includes analyzing the pro-forma capital structure under the Debtors' plan of reorganization. Lincoln performed financial modeling and analysis of the Debtors' pro-form capital structure and frequently updated the analysis based on changes to the plan funding sources, market conditions, and for other reasons. Lincoln performed in-depth analysis on the build-up to NENI, the inputs to NENI, and the impact NENI has on the implied equity value at plan emergence and to the tort claimants. Lincoln analyzed the pre-petition interest expense, post-petition interest expense, and proposed interest expense under each plan of reorganization. Lincoln analyzed the interest rate impact between the Federal Judgment Rate and the contract rates on pre-petition debt. Lincoln also researched and evaluated the expected credit rating for the Debtors upon emergence under various plan scenarios. As part of the illustrative S&P credit rating analysis, Lincoln performed diligence on the business plan assumptions provided by the Debtors, analyzed the Debtors' funds-from-operations-to-debt ratio and other relevant ratios, and reviewed the comparable company S&P Ratings Direct credit rating metrics.

Lincoln advised Counsel and the TCC regarding the pro-forma capital structure under both plans and outlined the potential impact to tort claimant recoveries. The total hours and amount charged by Lincoln to this matter during the Application Period represents **533.4 hours** and **$441,078.25** in fees.

p.    <u>Benchmarking and Related Analysis (020)</u>:  Time billed to this category includes analyzing the Debtors' business and operating performance relative to competitors and/or other similar companies. Lincoln performed significant research to identify and refine a set of comparable companies with characteristics similar to the Debtors, considering such factors as nature and size of operations, operating history, geographic region, financial performance and regulatory oversight. Using similar characteristics, Lincoln also developed and refined a list of precedent transactions involving companies similar to the Debtors. Lincoln spent significant time analyzing and reviewing public filings and relevant investor presentations of the selected public companies to compile and compare various operating metrics of the Debtors' business, including total operating revenue, rate base and profitability. Lincoln compared these operating metrics to

those of the comparable public companies. These comparisons helped Lincoln understand the financial and operational performance of the Debtors relative to comparable companies and the potential impact to its enterprise value and equity value. Lincoln also reviewed and compared similar analyses from third-party advisors. Lincoln regularly updated the benchmarking analysis to assist in evaluating the Debtors' potential enterprise value in conjunction with new proposals, terms sheets and plans of reorganization.

Lincoln also reviewed and benchmarked other comparable securities offered under various term sheets and plans of reorganization including bonds and preferred equity instruments. Lincoln frequently analyzed and monitored the capital markets activity, including recent capital raises, interest rate movements, and changes to valuation multiples in order to assess the potential impact on the Debtors' valuation and plan emergence. Lincoln also analyzed the impact that Covid-19 has had on valuations for other comparable utilities and analyzed the potential impact to the equity value for the tort claimants. Lincoln evaluated key terms of the proposed bonds such as principal, term, conditions and coupon, among others. Lincoln also researched and evaluated other bankruptcy precedents for comparable mandatory preferred equity structures and terms, including PIK rates, conversion periods, and discounts for converting to common equity. Lincoln compared the results of the bond and preferred equity analysis to the proposed capital structures in the term sheets and plans of reorganization to assess the reasonableness of the requested securities.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **1,382.9 hours** and **$865,115.50** in fees.

q. <u>Term Sheets, Plan, and Disclosure Statement Analysis (021):</u> Time billed to this category includes devoting significant time to reviewing and evaluating term sheets, proposals, and plans submitted by the Debtors. Lincoln performed various analyses to understand the potential recoveries to tort claimants including, among other things, the total consideration, form of consideration, plan funding, proposed capital structure, total enterprise value, equity value, and overall feasibility of the illustrative plans. Lincoln spent significant time comparing and evaluating the various plans of reorganization including all amendments to term sheets, iterations and the supplemental materials prepared by the Debtors, interested parties and their advisors. Lincoln

performed in-depth analysis on the restructuring support agreement ("**RSA**") entered into between the Debtors and various plan constituents. Lincoln prepared numerous presentations and recovery and waterfall analyses to assist Counsel and the TCC in evaluating the updated and revised plans and the impact on recoveries to the tort claimants. Lincoln also assisted in analyzing term sheets and proposals to assist Counsel, Lincoln and the TCC in the negotiations with the Debtors and interested parties. Lincoln also reviewed and analyzed the Debtors' plan disclosure statements and the corresponding financial statement projections.

The total hours and amount charge by Lincoln to this matter during the Application Period represents **1,331.2 hours** and **$1,121,474.00** in fees.

r. <u>Review of Discovery Documents and Deposition Preparation (Witnesses) (022):</u> Time billed to this category includes assisting Counsel in preparation of depositions including reviewing, analyzing, and summarizing discovery documents and preparing deposition questions related to financial topics. Discovery documents were typically loaded onto a third-party data site by Baker for Lincoln to review.

The total hours and amount charge by Lincoln to this matter during the Application Period represents **82.2 hours** and **$47,149.00** in fees.

s. <u>Deposition(s), Testimony, Court Hearing(s), and Related Preparation / Attendance (023):</u> Time billed to this category includes preparation and attendance of court hearings, testimony and depositions – in person or by phone. Attendance at hearings included omnibus hearing(s), confirmation hearing(s), and hearings related to securing plan financing and plan support, among other topics. Attendance of depositions included various interested parties and advisors from the Debtors, Ad Hoc Committee of Unsecured Noteholders, Ad Hoc Group of Subrogation Claim Holders, and the TCC. Preparation included strategy discussions internally and with Counsel; reviewing hearing specific filings including motions, objections, and replies; and reviewing previously prepared work product by Lincoln or other advisors. Lincoln reviewed extensive documentation related to status conferences, court hearings, and evidentiary hearings to support Counsel.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **173.8 hours** and **$161,231.00** in fees.

t.  Business Plan (024):  Time billed to this category encompasses the review and analysis of the Debtors' updated business plan. Lincoln reviewed and analyzed all the information provided at the meeting and subsequently requested additional follow-up materials to fully evaluate the Debtors' financial and operational projections including operating revenues, operating expenses, capital expenditures, and profitability, among others. Lincoln also reviewed and evaluated the Debtors' plans for infrastructure and wildfire safety investments, cost savings initiatives, anticipated cost recovery and the impact to customer rates. Lincoln performed analysis on the Debtors' proposed cost of capital assumptions and compared these assumptions to authorized and pending rate cases filed and expected to be filed with the CPUC. These analyses allowed Lincoln to evaluate and assess the potential impact that the business plan will have on the Debtors' future enterprise value, proforma capital structure at emergence, and the potential distributable value to tort claimants.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **342.9 hours** and **$284,935.50** in fees.

u.  Regulatory and Legislative Matters, and Related Financial Analysis (025): Time billed to this category includes all regulatory and legislative matters and analyses related to the Cases. Lincoln reviewed and evaluated Assembly Bills No. 1054 and No. 235 and various CPUC and FERC applications, settlements, fines, penalties, investigations, and decisions to assess the potential impact that these regulatory and legislative matters may have on the Debtors' current and future operations, business plan, reorganization efforts, and any potential impact on the recovery to the tort claimants. Lincoln also monitored, reviewed, and analyzed potential fines and penalties imposed on the Debtors by the CPUC and the impact, if any, of the fines on plan funding and tort claimants' recoveries. Lincoln reviewed and analyzed the Debtors' Case Contingency Plan Motion, the California purchase option, the CPUC Order Instituting Investigation ("**OII**") and related proceedings, as well as the Debtors' various rate case filings, among many others. Lincoln also attended the multiday in-person meetings related to the Debtors' OII testimony proceedings.

Lincoln also reviewed and monitored the expected timelines and milestones of Debtors' regulatory cases, reviewed and monitored the status of various CPUC applications, and participated in select conferences.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **916.4 hours** and **$716,823.25** in fees.

v. <u>Travel Time - Non Working Travel (026)</u>:

Time billed to this category encompasses the non-working travel time spent by Lincoln personnel travelling to and from court hearings. This task code also included depositions and meetings with the TCC, Counsel, and other professionals. Non-working travel time has been capped at 2.0 hours.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **46.0 hours** and **$50,070.00** in fees.

w. <u>Project Administration (027)</u>: Time billed to this category relates to Lincoln's planning, strategizing, and coordinating of case-related efforts, including the development of work streams, staffing of resources, and internal communication of project allocation(s) to avoid unnecessary duplication of efforts. This code includes establishing and maintaining an internal work site to house the task and time tracking databases, key filings, and various work product prepared for Counsel and the TCC. To coordinate efforts, Lincoln holds a weekly internal meeting to discuss outstanding deliverables, allocate new tasks between team members, and discuss new case developments that may have an impact to the TCC.

The total hours and amount charged by Lincoln to this matter during the Application Period represents **218.5 hours** and **$174,167.50** in fees.

x. <u>Fee Application Preparation (031)</u>: Time billed to this category consists of communications relating to and preparing monthly and interim fee statements to comply with local and federal rules including reviewing timekeeping records for privileged, confidential, and work product issues; reducing time and expense entries; and working with Counsel to draft the fee application motion.

The total hours and amount charged by Baker to this matter during the Application Period represents **422.0 hours** and **$224,050.00** in fees.

y.  <u>Mediation Preparation / Attendance (32):</u> Time billed to this category includes preparation and attendance of mediation session(s) between various parties – in person or by phone. Preparation included strategy discussions internally and with Counsel; reviewing hearing specific filings including motions, objections, and replies, and reviewing previously prepared work product or analyses by Lincoln or other advisors.

The total hours and amount charged by Baker to this matter during the Application Period represents **15.6 hours** and **$17,942.00** in fees.

## **CONCLUSION**

12.  Lincoln believes that this Application appropriately sets forth the significant services Lincoln performed on behalf of the TCC and provides this Court, the UST, the Fee Examiner, the Debtors' creditors, and other interested parties with an insightful overview of the scope of services rendered.  Thus, Lincoln respectfully submits that the fees and expenses sought herein are reasonable and that the services rendered were necessary, effective, efficient, and economical.  Accordingly, Lincoln respectfully requests that this Application for allowance of fees and expenses, on an interim basis, be granted in all respects.

Dated: July 15, 2020

LINCOLN PARTNERS ADVISORS LLC
By: */s/ Brent C. Williams*

Financial Advisor to the Official Committee of Tort Claimants

**CERTIFICATION**

I, Brent C. Williams, declare as follows:

The following facts are personally known to me, and if called to do so, I could and would

competently testify thereto.

1.      I am a Managing Director and Co-Head of Lincoln's Special Situations Group at

Lincoln Partners Advisors LLC ("**Lincoln**"). I submit this certification in support of the *Fourth*

*Interim Application of Lincoln Partners Advisors LLC for Allowance and Payment of*

*Compensation and Reimbursement of Expenses for the Period January 1, 2020 through May 31,*

*2020* (the "**Application**").[1]

2.      I have personally reviewed the information contained in the Application and believe

its contents to be true to the best of my knowledge, information and belief.

3.      The compensation and expense reimbursement sought in this Application, to the

best of my knowledge, information and belief, after reasonable inquiry, is in conformity with

sections 330, 331, and 1103 of title 11, United States Code; Rule 2016 of the Federal Rules of

Bankruptcy Procedure; the Local Rules for the United States Bankruptcy Court for the Northern

District of California; the *Order Pursuant to 11 U.S.C §§ 331 and 105(a) and Fed. R. Bankr. P.*

*2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of*

*Expenses of Professional*s, entered on February 27, 2019; the *U.S. Trustee Guidelines for*

*Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C.*

*§ 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013; and the *Guidelines*

*for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated

pursuant to Local Rule 9029-1, governing the narrative portion of fee applications, effective

February 19, 2014.

---

[1] Capitalized terms not defined have the meanings used in the Application.

1    4.    The compensation and expense reimbursement requested in this Application are
2 billed at rates, in accordance with practices, no less favorable than those customarily employed by
3 Lincoln and generally accepted by Lincoln's clients.
4    Date:   July 15, 2020
5
6                                        LINCOLN PARTNERS ADVISORS LLC
                                         BY: */s/ Brent C. Williams*
7
8                                        Financial Advisor to the Official Committee of Tort
                                         Claimants
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28