Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone:     415.659.2600
Facsimile:     415.659.2601
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025
Telephone:     310.820.8800
Facsimile:     310.820.8859
Email:  esagerman@bakerlaw.com
Email:  drichardson@bakerlaw.com
Email:  lattard@bakerlaw.com

*Counsel for the Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | |
|     **- and -** | Chapter 11 (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
|             **Debtors.** | **FOURTH INTERIM APPLICATION OF BAKER & HOSTETLER LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FEBRUARY 1, 2020 THROUGH MAY 31, 2020** |
| □ Affects PG&E Corporation | |
| □ Affects Pacific Gas and Electric Company | Date: TBD Time: TBD |
| ■ Affects both Debtors | |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Objection Date: August 4, 2020 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**COVERSHEET FOR FOURTH INTERIM APPLICATION OF THE LAW FIRM OF BAKER & HOSTETLER LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF TORT CLAIMANTS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FEBRUARY 1, 2020 THROUGH MAY 31, 2020**

| | |
|---|---|
| Name of Applicant: | Baker & Hostetler LLP |
| Name of Client: | Official Committee of Tort Claimants |
| Time period covered by this application: | 2/1/2020-5/31/2020 |
| Total fees sought this period: | $14,563,600.00* |
| Total expenses sought this period: | $1,847,978.50** |
| Petition Date: | 1/29/2019 |
| Retention Date: | *Effective* 2/15/2019 |
| Date of order approving employment | 4/10/2019 |
| Total compensation approved by interim order to date: | $6,820,134.67 |
| Total expenses approved by interim order to date: | $233,430.74 |
| Total allowed compensation paid to date: | $26,882,934.60 |
| Total allowed expenses paid to date: | $6,425,257.39 |
| Blended rate in this application for all attorneys | $722.08 |
| Blended rate in this application for all timekeepers | $691.81 |
| Compensation sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $8,432,995.20 |
| Expenses sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $1,012,423.51 |
| Number of professionals included in this application | 90 |
| If applicable, number of professionals in this application not included in staffing plan approved by client | 0 |
| If applicable, difference between fees budgeted and compensation sought for this period | Actual: $14,563,600.00 Budget Range:$10,197,004.00-$14,656,104.00 |
| Number of professionals billing fewer than 15 hours to the case during the period | 18 |
| Are any rates higher than those approved or disclosed at retention? If yes, calculate and disclose the total compensation sought in this application using the rates originally disclosed in the retention application | No |
| RBC Capital Markets, LLC (see explanation on pages 30-31 of this application) | $375,000.00 |

*In each of the four months covered by this Fourth Interim Application, February, March, April and May, Applicant voluntarily reduced the amount of fees sought prior to generating its monthly fee statements, writing off, in Applicant's discretion, fees totaling $216,412.50 for the benefit of the estate.

** Applicant also reduced the amount of expenses sought prior to generating its monthly fee statements for the months of February, March, April and May, writing off, in Applicant's discretion, expenses totaling $8,557.87 for the benefit of the estate.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## SUMMARY OF FOURTH INTERIM FEE APPLICATION

| Date Filed | Period Covered | Total Compensation and Expenses for Period Covered | | Total Amount Previously Requested with Monthly Fee Statement | | Total Amount Paid to Date | | Holdback Fees, Unpaid Fees and Expenses Requested |
|---|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees @80% | Expenses @100% | Fees | Expenses | Fees |
| 3/30/20 (DE 6514) (13th) | 2/1/20 - 2/29/20 | $3,380,906.00 | $400,867.10 | $2,704,724.80 | $400,867.10 | $2,704,724.80 | $400,867.10 | $676,181.20 |
| 4/30/20 (DE 7000) (14th) | 3/1/20 - 3/31/20 | $3,475,568.50 | $550,756.48 | $2,780,454.80 | $550,756.48 | $2,780,454.80 | $550,756.48 | $695,113.70 |
| 6/2/2020 (DE 7714) (Amd. 15th) | 4/1/20 – 4/30/20 | $3,684,769.50 | $60,799.93 | $2,947,815.60 | $60,799.93 | $0 | $0 | $3,745,569.43 |
| 6/30/20 (DE 8210) (16th) | 5/1/20- 5/31/20 | $4,022,356.00 | $835,554.99 | $3,217,884.80 | $835,554.99 | $0 | $0 | $4,857,910.99 |
| **Total for Fourth Interim Fee Application** | | **$14,563,600.00** | **$1,847,978.50** | **$11,650,880.00** | **$1,847,978.50** | **$5,485,179.60** | **$951,623.58** | **$9,974,775.32** |

  <u>Objections to Monthly Fee Statements</u>:  No objections have been filed regarding the Thirteenth, Fourteenth or Amended Fifteenth Monthly Fee Statements.  The deadline for objections to the Sixteenth Monthly Fee Statement is July 21, 2020.

Case: 19-30088  Doc# 8403  Filed: 07/15/20  Entered: 07/15/20 12:03:44  Page 3 of 44

**FOURTH INTERIM APPLICATION OF BAKER & HOSTETLER LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FEBRUARY 1, 2020 THROUGH MAY 31, 2020**

**TO THE HONORABLE DENNIS MONTALI,
UNITED STATES BANKRUPTCY JUDGE**

Baker & Hostetler, LLP ("**Baker**" or "**Applicant**"), counsel to the Official Committee of Tort Claimants ("**TCC**") appointed in the above-captioned voluntary Chapter 11 bankruptcy cases (the "**Bankruptcy Cases**"), hereby submits its *Fourth Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period February 1, 2020 through May 31, 2020* (the "**Application**") seeking entry of an order, on an interim basis, pursuant to sections 330(a) and 331 of title 11, United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1 of the Local Bankruptcy Rules for the Northern District of California (the "**Local Rules**"), the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, effective February 19, 2014 (the "**Local Guidelines**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines"**), the *Order Pursuant to 11 U.S.C. § § 331 and 105(a) and Fed. R. Bankr. P. 2016 For Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* ("**Interim Compensation Order**") [Docket No. 701], and the revised Fee Examiner Protocol filed on October 24, 2019 (the "**Revised Protocol**") [Docket No. 4473] (collectively, the "**Guidelines**") for interim allowance of compensation for professional services and reimbursement of actual and necessary expenses in connection with Baker's representation of the TCC in the above captioned cases.

The Applicant seeks interim approval of compensation and reimbursement of expenses from February 1, 2020 through May 31, 2020 (the "**Application Period**") totaling **$16,411,578.50** which sum represents compensation for legal services rendered in the amount of $14,563,600.00 and reimbursement for expenses incurred in the amount of $1,847,978.50.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

This Application is based upon the contents hereof, together with the exhibits, the declaration of Cecily A. Dumas filed concurrently herewith, the pleadings, papers, and records on file in these cases, and any evidence or argument that the Court may entertain at the time of the hearing on the Application.

Pursuant to the Guidelines, a cover letter enclosing this Application is being sent to the Chair of the TCC concurrently. The letter invites the Chair to discuss with the Applicant and/or the Office of the United States Trustee any objections, concerns, or questions the Chair may have regarding the requested compensation and reimbursement set forth in the Application. A copy of the transmittal letter is attached hereto as **Exhibit G**.

## **RELEVANT BACKGROUND**

1. On January 29, 2019 (the "**Petition Date**") the Debtors filed the Bankruptcy Cases. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Bankruptcy Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

2. On February 15, 2019, the Office of the UST filed an Appointment of the Official Committee of Tort Claimants [Docket No. 453]. Following the resignation of Richard Heffern from the original TCC and the addition of Tommy Wehe, on February 21, 2019, the UST filed the Amended Appointment of the Official Committee of Tort Claimants [Docket No. 530]. Following the resignation of Kirk Trostle and GER Hospitality, LLC, the UST filed the Second Amended Appointment of the TCC on March 27, 2020 [Docket No. 6503]. On April 3, 2020, following the resignation of Karen K. Gowins, the UST filed the Third Amended Appointment of the TCC [Docket No. 6613]. The current members of the TCC are: (i) Tommy Wehe; (ii) Angelo Loo; (iii) Agajanian, Inc.; (iv) Susan Slocum; (v) Samuel Maxwell; (vi) Karen M. Lockhart; (vii) Wagner Family Wines-Caymus Vineyards; and (viii) Gregory Wilson.

3. The TCC represents the interests of fire claimants, whose claims arose as a result of the Debtors' long history of unsafe operations.

4. As permitted in the Guidelines, Baker incorporates by reference the narrative history furnished in the contemporaneous applications filed by the Debtors' professionals.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5. On March 17, 2019, the TCC filed its *Application to Employ Baker & Hostetler LLP as Attorneys for the Official Committee of Tort Claimants, Effective February 15, 2019* [Docket No. 934] (the "**Retention Application**"). On April 10, 2019, the Court entered its *Order Granting the Application to Employ Baker & Hostetler LLP as Attorneys for the Official Committee of Tort Claimants, Effective February 15, 2019* [Docket No. 1331] (the "**Retention Order**"). A true and correct copy of the Retention Order is attached hereto as **Exhibit E**. Baker is not holding, and has not held, any retainer in connection with the Bankruptcy Cases or the work performed on behalf of the TCC.

6. As specifically detailed and set forth below, Baker worked with the TCC, its financial advisors, the Official Committee of Unsecured Creditors (the "**OCUC**"), its financial advisors, the Debtors, and their financial advisors to address the numerous critical issues arising in the Bankruptcy Cases during the Application Period.

7. On May 28, 2019, the Court entered an order appointing Bruce A. Markell as fee examiner ("**Fee Examiner**") in the Bankruptcy Cases. [Docket No. 2267]. Baker has communicated with the Fee Examiner and has promptly supplied information to the Fee Examiner as requested and necessary for the Fee Examiner to evaluate the reasonableness of the compensation sought in this Application.

## RELIEF REQUESTED AND BASIS FOR RELIEF

8. This Application is Baker's fourth interim request for allowance and payment of fees and expenses as counsel to the TCC.

9. Pursuant to Bankruptcy Code §§ 330 and 331, Baker respectfully requests entry of an order, on an interim basis, allowing and approving **$16,411,578.50** which sum represents compensation for legal services rendered in the amount of $14,563,600.00 and reimbursement for expenses incurred in the amount of $1,847,978.50. Copies of Baker's invoices detailing the services rendered and expenses incurred during the Application Period have been filed on the docket as attachments to Baker's monthly fee statements and have been furnished to the Debtors, counsel for the OCUC, the UST and the Fee Examiner (see Docket Nos. 6514, 7000, 7714 and 8210).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.     Baker has made every effort to ensure that this Application complies with the Guidelines and to avoid unnecessary duplication of effort by and among its attorneys and paraprofessionals, as well as with other retained professionals in these cases.  Baker has supplied the Fee Examiner with Baker's monthly fee statements in an electronic LEDES format Baker believes is acceptable to the Fee Examiner.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED

11.     Baker's attorneys spent 19,351.30 hours in performing the services described in the Application, at an average billing rate of $722.08 per hour.  Baker's blended hourly rate for all timekeepers in this Application is $691.81.

## PROJECT BILLING AND NARRATIVE STATEMENT OF SERVICES RENDERED

12.     In addition to the requirement that a description of the general services rendered by a professional be provided in a fee application, the Guidelines also require that applications for compensation should:

> "…categorize by subject matter and separately discuss, each project or task. With respect to each project or task, the number of hours spent, the results obtained, and the amount of compensation and expenses requested should be set forth at the conclusion of the discussion of that project or task."

13.     Accordingly, Baker established separate project billing categories for its representation of the TCC during the Application Period, as follows:

| CODE | DESCRIPTION |
|------|-------------|
| 001 | Administrative Expense Claims |
| 002 | Asset Sales/363 Sales |
| 004 | Bankruptcy Litigation |
| 005 | Bar Date Motion/Claims Noticing |
| 006 | Case Administration (docket updates, WIP, and calendar) |
| 008 | Chapter 11 Plan/Plan Confirmation |
| 009 | Committee Meetings and Preparation |
| 010 | Corporate and Board Issues |
| 012 | DIP Financing/Cash Mgmt./Hedging Transactions |
| 013 | Disclosure Statement |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| CODE | DESCRIPTION |
|------|-------------|
| 014 | Employee Issues |
| 018 | General Case Strategy (includes communication with Committee) |
| 019 | Hearings and Court Matters |
| 020 | Legislative Issues |
| 021 | Non-Bankruptcy Litigation |
| 022 | Non-Working Travel |
| 024 | District Court Litigation |
| 025 | Regulatory Issues including CPUC and FERC |
| 026 | Retention Applications |
| 027 | Fee Application: Baker |
| 028 | Fee Application: Other Professionals |
| 030 | Tax Issues |
| 031 | U.S. Trustee/Fee Examiner Issues |
| 032 | Unsecured Creditor Issues/ Communications/ Meetings |
| 037 | Investigations |
| 039 | Other Contested Matters |
| 040 | Operations |
| 042 | Subrogation |
| 043 | Securities |
| 044 | Wildfire Assistance Program |
| 045 | Asset Analysis and Recovery |
| 046 | Tort Claims Estimation |
| 047 | Class Claims Issues |
| 048 | Kincade Fire Issues |
| 049 | Mediation |
| 050 | Government Claims |
| 051 | CPUC BK OII 19-09-016 |
| 052 | Tort Claims |
| 053 | Contingency Process |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.     These distinct, numbered project billing categories[*] enabled Baker to monitor its activities and appropriately account for the time expended by its professionals and paraprofessionals.  This procedure enables Baker to better inform the TCC, the Court, the UST and the Fee Examiner regarding the nature of the services provided and time expended by its professionals and paraprofessionals.  The project billing categories adopted by Baker are consistent with those used by the Debtors in order to ease the burden of the Fee Examiner's review.  To the extent the project billing categories are not identical to those used by the Debtors, it is because representing the TCC requires services somewhat different than those the Debtors' professionals are providing to the Debtors, so Baker tailored certain task code descriptions and may have added task codes as necessary to more accurately reflect the nature of the work being performed by Baker on the TCC's behalf.

15.     In an effort to streamline and control legal fees and expenses, Baker endeavored to minimize the expenditure of time by its senior partners and to delegate responsibilities to junior partners, associates and other paraprofessional employees as appropriate.  In addition, because Baker does not charge national rates, Baker has endeavored to minimize fees and expenses by staffing the matter with partners and associates from a cross-section of its offices, in order to take advantage of lower rates charged in certain markets.  The blended hourly rate for all Baker professionals and paraprofessionals who provided services during the Application Period is $691.81.  Attached hereto as **Exhibit B** is a Summary of the Timekeepers included in this Application, including the name and billing rate of each Baker professional and paraprofessional who provided services to the TCC.

16.     In compliance with the Guidelines, a description of the people employed by Baker who rendered services to the TCC in the Bankruptcy Cases during the Application Period and whose time entries appear in the invoices is included in **Exhibit A**, attached hereto.

---

[*] In certain instances, where more than one category of issues might have been addressed during the course of a meeting or telephone conference, Baker's time records may include that time in only one billing category.

17.     Pursuant to Bankruptcy Code §504, Baker has no understanding, agreement, or arrangement of any kind to divide with or pay to anyone any fees that may be awarded to Baker in the Bankruptcy Cases, other than as may be shared among the members of the Baker firm.

18.     Set forth below is a summary description, by project billing category, of the services rendered by Baker during the Application Period. The specific tasks, the number of hours devoted, and the amounts charged within each billing category are set forth below and are detailed in the invoices filed on the docket as attachments to Baker's monthly fee statements (see Docket Nos. 6514, 7000, 7714 and 8210).

a.     Administrative Expense Claims (001): During the period covered by this Application, Baker focused on the risk of administrative expense claims occurring between the confirmation order and an extended effective date, should the effective date be substantially delayed. Baker reviewed the Debtors' expense projections and analyzed potential events that may result in unanticipated administrative claims taking priority over victim claims. Work in this category focused on evaluating whether certain claims arising post-petition could be treated as administrative claims as necessary to determine what, if any, position the TCC should take concerning the Debtors' plans for treatment of such claims.

The total hours and amount charged by Baker to this matter during the Application Period represents **6.90 hours** and **$6,555.00** in fees.

b.     Asset Sales/363 Sales (002): The Debtors entered into a stipulation with the Office of the Governor of California pursuant to which the parties agreed that, should the plan fail to become effective by December 31, 2020, the Debtors would sell their assets pursuant to the process set forth in the stipulation. Baker produced a detailed analysis of the issues associated with a sale of assets pursuant to Bankruptcy Code section 363, including the right of the State of California to bid and to approve other bidders, the purchase price, the potential structures for a sale, and ultimately the effect of an asset sale on the victims' recovery in the Cases. Baker analyzed the prospect of successor liability, sales free and clear of pre-existing interests, and engaged in discussions with the Governor's Office on each of these issues on behalf of the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **75.10 hours** and **$41,670.50** in fees.

    c.    <u>Bankruptcy Litigation (004)</u>: Baker continued to perform the bankruptcy-related litigation work efficiently and effectively on behalf of the TCC and fire victims during the Application Period. This included Baker evaluating court filings with potential impact on the TCC and the fire victims, internally planning strategies to achieve litigation objectives, communicating with the TCC constituency, other parties and counsel, preparing documents and filings, and representing the TCC at hearings and other events.

Baker litigated and resolved a wide variety of issues that arose during the Application Period. Baker handled contested fire victim claims on behalf of the TCC, including discovery, motion practice, and efforts to resolve claims issues. For some of these claims, Baker engaged with conflicts counsel. Baker also addressed various issues concerning objections to the restructuring agreement, objections to the reorganization plan, alleged plan voting irregularities, third-party insurance coverage, and evidence collected for wildfires.

Baker spent substantial time during the Application Period on discovery related to litigation issues impacting the TCC and fire victims. This work encompassed preparing numerous subpoenas and requests for information, developing and maintaining voluminous databases of information concerning litigation matters, researching and targeting relevant information, analyzing documents, and preparing internal reports and reports to the TCC advising on issues relevant to litigation.

The total hours and amount charged by Baker to this matter during the Application Period represents **562.00 hours** and **$253,630.50** in fees.

    d.    <u>Bar Date Motion/Claims Noticing (005)</u>: The work performed in this task category involved reviewing and responding to correspondence from *pro se* fire victims regarding the claims bar date and requesting copies of various pleadings.

The total hours and amount charged by Baker to this matter during the Application Period represents **1.50 hours** and **$781.50** in fees.

    e.    <u>Case Administration (docket updates, WIP, and calendar) (006)</u>: Baker's work in this category encompasses ongoing docket review for maintenance of a master service list

Case: 19-30088   Doc# 8403   Filed: 07/15/20   Entered: 07/15/20 12:03:44   Page 11 of 44

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

and the receipt, review, and tracking of statutory deadlines in the firm's docketing system for all pleadings filed in the bankruptcy court and in related cases pending in other forums. In addition, this work includes ongoing: (i) discussions, planning, and strategizing regarding the client communication platform for sharing of documents and information; (ii) maintaining the workspace layout, daily updates to the Magnum tool, and managing account access; (iii) collaboration on case management, staffing and administration; (iv) distribution of e-filing notices, document management protocols, e-filing procedures and team calendars; (v) maintaining and updating case-specific discovery management protocols; and (vi) preparation of a weekly Critical Dates Memo for communications with the TCC and core team.

The total hours and amount charged by Baker to this matter during the Application Period represents **319.80 hours** and **$133,010.00** in fees.

    f.  <u>Chapter 11 Plan/Plan Confirmation (008)</u>: This category covers all matters pertaining to confirmation of the Debtors' plan, including the Disclosure Statement, negotiations with the Debtors and other Plan parties, analysis of Plan terms, negotiations over Plan documents and support agreements, research and briefing on early Plan objections as well as Plan objections filed in connection with the confirmation hearing, and post-confirmation transition to the Trust.

The total hours and amount charged by Baker to this matter during the Application Period represents **4,183.20 hours** and **$3,332,013.00** in fees.

    g.  <u>Committee Meetings and Preparation (009)</u>: The work performed by Baker professionals in this task code was related to TCC meetings and communications among Baker's leadership team to discuss action items, strategy, and staffing. TCC meetings, and the calls among Baker professionals to discuss case strategy, work in progress, and preparation of presentations to the TCC regarding case developments generally occurred on a weekly basis but were held more or less often as the facts warranted. Specifically, Baker's work in this task code included (i) preparation for and participation in TCC meetings and TCC subcommittee meetings; (ii) researching and preparing presentations to the TCC case or leadership team; (iii) advising the TCC on points of procedure and governance; (iv) conferring with Baker attorneys or other professionals regarding TCC meetings, TCC presentations, and the like; (vi) preparing resolutions or other

Case: 19-30088 Doc# 8403 Filed: 07/15/20 Entered: 07/15/20 12:03:44 Page 12 of 44

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

documents for TCC approval; (v) direct communications with TCC members, such as responses to member questions, notifications of important events, or written advice to the TCC; (vi) identifying items that should be brought to the TCC's attention for a vote; and (vii) preparing meeting agendas and minutes, including conferring with members and the TCC Chair regarding items that should be on the agenda.

The total hours and amount charged by Baker to this matter during the Application Period represents **1,142.80 hours** and **$925,657.00** in fees.

h.    <u>Corporate and Board Issues (010)</u>: Baker's work in this task code focused on reviewing and analyzing issues relating to various corporate and governance matters that impacted the Debtor, including review of proposed amendments to the Debtor's corporate documents, review of issues that impacted the Debtor's stock price and, consequently, the interests of the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **68.00 hours** and **$47,416.00** in fees.

i.    <u>DIP Financing/Cash Mgmt./Hedging Transactions (012)</u>:    During the Application Period, Baker advised the TCC with respect to the Debtors' second amended motion for entry of orders approving the terms of certain exit financing commitment letters and authorizing the Debtors to incur related fees and premiums as administrative expense claims. Among other tasks, Baker professionals analyzed the terms of the proposed exit financing with the assistance of the TCC's financial advisors, evaluated legal issues concerning the propriety of the requested relief under the Bankruptcy Code and other applicable law, and evaluated whether the financing motion outlined a capital structure different from the structure that was proposed at the time the TCC entered into the Tort Claimants RSA with the Debtors. Baker also prepared a reservation of rights with respect to the motion. Baker continued to monitor and evaluate developments to the Debtors' financing to inform the TCC regarding changes, if any, that could impact the Tort Claimants RSA and the Debtors' proposed plan.

The total hours and amount charged by Baker to this matter during the Application Period represents **43.20 hours** and **$33,546.00** in fees.

1    j.  <u>Disclosure Statement (013)</u>: This task code encompasses the work

2 performed by Baker for reviewing issues related to the disclosure statement, solicitation procedures,

3 and voting procedures, as necessary for Baker to advise and protect the interests of the TCC.

4    During the Application Period, Baker assisted the Debtors and the TCC by reviewing and

5 revising numerous sets of solicitation procedures applicable to both fire claimants and law firms

6 representing fire claimants. Baker assisted the fire victims and fire victims' counsel by assisting in

7 the drafting of voting and solicitation procedures that would be usable by counsel for fire victims

8 with thousands of clients as well as one individual fire victim that may vote on one claim.

9    During the Application Period, Baker assisted the Debtors with comments to the Disclosure

10 Statement relating to the fire victims' treatment under the Plan. Baker assisted the TCC by drafting

11 standalone disclosures to be appended to the Disclosure Statement for unrepresented fire victims.

12 Baker further assisted the TCC by filing and resolving objections to the Disclosure Statement.

13    Baker incurred significant time reviewing and revising the Debtors solicitation and voting

14 procedures and Disclosure Statement so that these complex issues would be clear and

15 understandable to fire victims.

16    The total hours and amount charged by Baker to this matter during the Application Period

17 represents **420.00 hours** and **$327,314.50** in fees.

18    k.  <u>Employee Issues (014)</u>: During the Application Period, Baker's activities

19 consisted of reviewing PG&E's Employee Compensation Motion and related responses of the

20 OCUC and the Court's ruling on same.

21    The total hours and amount charged by Baker to this matter during the Application Period

22 represents **0.50 hours** and **$210.00** in fees.

23    l.  <u>General Case Strategy (includes communication with Committee) (018)</u>:

24 Baker's work in this task code encompassed frequent, ongoing communications (orally and in the

25 form of memoranda) with members of the TCC as necessary to keep the TCC continuously and

26 timely updated with respect to all bankruptcy court, state court, district court, and regulatory

27 proceedings impacting the TCC and its constituents. Time in this category also included working

28 with TCC subcommittees to prioritize tasks and achieve TCC goals and addressing discovery

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

matters. Services encompassed in this task code also included internal and external communications in furtherance of case strategy. In addition, time spent in this category included review and evaluation of pleadings and other documents filed with the courts or regulatory authorities to assess their potential impact on the TCC or its constituents.

Communications with the TCC included drafting summaries of hearings, and analysis of pleadings and other documents filed in the bankruptcy court, district court, state court and CPUC. Baker frequently communicated with the TCC and its members regarding strategic action and progress in the cases. Baker advised the TCC regarding its financial advisors, methods of providing victim outreach, and other media coverage concerning case developments. Communications in this task category also include maintaining an efficient system for tracking and responding to TCC member requests and maintaining and expanding the Magnum database and data room.

The total hours and amount charged by Baker to this matter during the Application Period represents **399.90 hours** and **$300,336.00** in fees.

m. <u>Hearings and Court Matters (019)</u>: The work performed in this task category covers all hearings before the Bankruptcy Court, and any other court hearings that do not have a separate time category. Most hearings over the past six months have pertained to Plan confirmation, the Disclosure Statement, early hearings on certain Plan objections, and other hearings that have arisen as a result of motions filed by creditors, committees or other parties. All hearings have taken place by Zoom or conference call since mid-March.

The total hours and amount charged by Baker to this matter during the Application Period represents **214.80 hours** and **$174,739.50** in fees.

n. <u>Legislative Issues (020)</u>: In this task category, Baker conducted a comprehensive analysis of AB 1054, the statute pursuant to which the State's Go-Forward Wildfire Fund was established. In particular, Baker's professionals analyzed the Debtors' access to the State fund under various scenarios, including the failure of the plan to become effective, the occurrence of wildfires between the entry of an order confirming the plan and a delayed effective date. Under a stipulation between the Debtors and the Governor of California, the Debtors were given an outside deadline for the effective date of the joint plan of December 31, 2020. Under certain interpretations

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

of AB 1054, the Debtors would have had access to the Go-Forward Wildfire Fund in an amount no greater than 40% of the uninsured damages. The Firm developed protective legal strategies under such circumstances and engaged with the Office of the Governor and other parties with respect to such strategies.

The total hours and amount charged by Baker to this matter during the Application Period represents **261.70 hours** and **$204,073.00** in fees.

      o.    <u>Non-Bankruptcy Litigation (021)</u>: Baker's work in this task code consisted of assessment of options for revoking PG&E's probation based on corporate violations, and analysis of transcripts related to the probation violation hearing in the criminal case.

The total hours and amount charged by Baker to this matter during the Application Period represents **2.30 hours** and **$2,360.50** in fees.

      p.    <u>Non-Working Travel (022)</u>: This task code encompassed the time spent by Baker personnel travelling to and from hearings, depositions, meetings with the TCC, meetings with experts, and meetings with bondholders and various other interested parties. Baker professionals spent over **263.00 hours** related to non-working travel during the Application Period, which was reduced to **161.40 hours** per the applicable guidelines.

The total hours and amount charged by Baker to this matter during the Application Period represents **161.40 hours** and **$117,182.00** in fees.

      q.    <u>District Court Litigation (024)</u>: Work performed on this matter during the course of the billing period included identifying and analyzing specific relevant filings in the district court action, U.S. v. Pacific Gas and Electric Company, 3:14-cr-000175-WHA, in connection with PG&E's criminal probation. Many of the filings in this action during the operative time period were relevant to the TCC, its interests, and its planning and strategy with respect to negotiating the RSA, plan confirmation, discovery efforts, and potential future litigation.

During the quarterly period, tasks performed for this matter included evaluating and drafting substantive analysis and recommendations with respect to specific court orders and responsive filings regarding such issues as PG&E's compliance with certain conditions of its probation, PG&E's responses and filings regarding 2019 public safety power shutoffs, certain 2019 fires in

PG&E's service territory, PG&E's wildfire mitigation plan and vegetation management efforts, insurance coverage requirements, relevant reports prepared by state agencies, and proposed modifications to PG&E's probation conditions. Evaluating these issues entailed the targeted assessment of specific orders and requests for information issued by Judge William Alsup and the corresponding responses, briefs, memoranda, reports, exhibits, admissions, photographs, declarations and other related relevant filings.

After identifying and evaluating these relevant filings, work on this matter also entailed drafting substantive analysis of key issues and information of particular importance to the TCC, along with recommendations and guidance regarding the same, which was then used to inform certain aspects of litigation strategy and global case planning. This analysis included identifying certain issues and areas of interest to the TCC warranting further examination, and specific evidence and/or categories of evidence to target during discovery and potential future litigation. Indeed, work on this matter led to Judge Alsup issuing specific orders permitting the TCC and one of its expert witnesses to be heard in the matter and to submit evidence.

In addition, work on this matter entailed researching and analyzing legal issues concerning probation condition modification resulting from violations of criminal and/or corporate probation for use in determining and evaluating scope, nature and/or application of relevant legal, strategic and procedural issues and assessing litigation strategy for the TCC as pertaining to PG&E's probation. Specific issues researched included assessment of operative legal framework for said modifications and imposition of revised terms and conditions in other large-scale corporate criminal actions following probation violations, notable criminal probation terms in analogous corporate cases, and specific modified conditions such as extensions of periods of probation, ordering retention of corporate and/or independent monitors, impact of public safety concerns, outside compliance officers, monetary fines and penalties, and/or imposition of monitorships. After conducting the above-referenced research, Baker attorneys drafted memoranda providing analysis of the relevant legal issues and related guidance and recommendations with respect to potential modifications to PG&E's probation conditions and/or other potential remedies in the instant proceedings.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    The total hours and amount charged by Baker to this matter during the Application Period

2    represents **311.30 hours** and **$226,544.00** in fees.

3            r.    <u>Regulatory Issues including CPUC and FERC (025)</u>:  The work performed

4    in task code 025 involves regulatory issues, particularly issues pertaining to the California Public

5    Utilities Commission ("CPUC").  The TCC has been granted party status in four proceedings before

6    the CPUC: the investigation of PG&E's Plan of Reorganization, Investigation 19-09-016; the

7    investigation into penalties and other remedies to be levied against PG&E for its role in igniting

8    wildfires in 2017 and 2018, Investigation 19-06-015; PG&E's application for securitized financing

9    of wildfire costs and expenses as stress test costs, Application 20-04-023; and PG&E's application

10   for additional and alternative financing, Application 20-05-005.  In each of these proceedings, the

11   TCC participated fully as a party.  This participation entailed: review and analysis of testimony,

12   briefs, comments, replies, motions and other filings from PG&E and other parties; preparation for

13   and participation in conferences and hearings; preparation for and participation in evidentiary

14   hearings at the CPUC, including cross-examination of witnesses for PG&E and other parties; legal

15   research into statutory law, state and federal court precedent, and CPUC precedent to inform and

16   support positions taken in these proceedings; close review and analysis of rulings and decisions by

17   administrative law judges, assigned commissioners, and the CPUC; and drafting and filing of briefs,

18   comments, and replies on evidentiary hearings, assigned commissioner's rulings, presiding

19   officer's decisions, proposed decisions, appeals, requests for review, and requests for rehearing.

20   The work also included monitoring of CPUC voting meetings when issues pertaining to these

21   proceedings were addressed; regular tracking of procedural developments in these proceedings;

22   weekly teleconferences to discuss the status of proceedings and upcoming needs; internet-based

23   research of press coverage and public commentary concerning these proceedings; and oral and

24   written communication with the TCC about developments in these proceedings.

25           In addition, the work involves monitoring of several proceedings in which the TCC did not

26   seek party status, but which implicate PG&E, its bankruptcy, and its ability to fund its settlement

27   with fire victims and the Fire Victim Trust.  Those proceedings include: the investigation into

28   PG&E's locate and mark practices, Investigation 18-12-007; the investigation into public safety

power shutoffs in late 2019, Investigation 19-11-013; the rulemaking into the Emergency Disaster Relief Program, Rulemaking 18-03-011; the rulemaking to implement wildfire mitigation plans, Rulemaking 10-10-007; the rulemaking on a non-bypassable charge to support the Wildfire Fund, Rulemaking 19-07-017; the rulemaking on criteria and methodology for wildfire cost recovery, Rulemaking 19-01-006; the rulemaking into de-energization in dangerous conditions, Rulemaking 18-12-005; PG&E's application to recover costs recorded in the Catastrophic Event Memorandum Account, Application 18-03-015; and PG&E's application to enter into interest rate hedges in connection with its financing to exit bankruptcy, Application 19-11-002. In these proceedings, work entailed review and analysis of filings by parties (particularly filings by PG&E) and the rulings, proposed decisions, and final decisions by administrative law judges, assigned commissioners, and the CPUC; regular tracking of procedural developments in these proceedings; weekly teleconferences to discuss the status and expectations of these proceedings; internet-based research of press coverage and public commentary concerning these proceedings; and oral and written communication with the TCC regarding developments in these proceedings as they affect the interests of fire victims. Beyond these specific proceedings, work included regular searches for reports and other publications by the CPUC, as well as regular review of CPUC dockets to identify newly filed proceedings which might implicate the interests of fire victims.

Lastly, work billed to 025 includes collaborations with attorneys working on issues and filings outside the CPUC but which intersect with the CPUC's jurisdiction. This collaboration includes: research of statutory law and precedent in federal court, state court, and the CPUC to inform jurisdictional arguments about the CPUC; review and analysis of positions taken by the CPUC in briefs and hearings during bankruptcy court proceedings; drafting and editing of briefs (or portions of briefs) arguing and analyzing the jurisdiction and precedent of the CPUC; and advice regarding the procedure and appropriate expectations for proceedings pending before the CPUC.

The total hours and amount charged by Baker to this matter during the Application Period are **1,069.80 hours** representing **$750,458.50** in fees.

s. <u>Retention Applications (026)</u>: During the Application Period, Baker continued to provide substantial assistance to the TCC in seeking and obtaining the professional

Case: 19-30088   Doc# 8403   Filed: 07/15/20   Entered: 07/15/20 12:03:44   Page 19 of 44

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

representation desired by the TCC on its behalf, and also on behalf of the proposed Fire Victims Trust, and evaluating whether the retention of certain professionals by the Debtors was necessary and appropriate. With respect to the TCC's professionals, Baker prepared applications to employ Professor Lynn Baker as special counsel, MacConaghy & Barnier, PLC as conflicts counsel and RBC Capital Markets as a financial advisor. With respect to the Fire Victims Trust, Baker prepared applications to employ Justice John Trotter (retired) as trustee, and Cathy Yanni as claims administrator and assisted Justice Trotter and Ms. Yanni with the related disclosures, declarations and budget.

With respect to other retention applications, Baker reviewed the Debtors' amended applications to retain PricewaterhouseCoopers LLP, KPMG and McKinsey & Company, Inc., the application to retain Latham & Watkins, and advised the TCC with respect to relevant considerations. In addition, Baker analyzed issues concerning disclosures.

The total hours and amount charged by Baker to this matter during the Application Period represents **215.40 hours** and **$166,835.50** in fees.

t. <u>Fee Application – Baker (027)</u>: During the Application Period, Baker reviewed and analyzed all expenses and billing entries for the months of January, February, March and April as necessary to prepare monthly fee statements and to confirm that billing for both fees and costs substantially complied with UST guidelines, the Revised Protocol, and Judge Montali's rules in terms of the adequacy of task descriptions and to confirm tasks were properly categorized consistent with the task codes established for use by professionals in the Bankruptcy Cases, reallocating time entries into appropriate task codes where necessary. Baker also made discretionary downward adjustments in fees for the benefit of the estate each month, and prepared certificates of no objection for January, February, March and April. In addition, Baker timely responded to requests from the Fee Examiner's staff and UST for backup documentation and reviewed and organized multiple files containing receipts over $75 for submission for the Fee Examiner.

Baker also drafted and filed its Third Interim Fee Application. This work included reviewing all work performed during the Application Period and drafting narrative summaries for

Case: 19-30088    Doc# 8403    Filed: 07/15/20    Entered: 07/15/20 12:03:44    Page 20 of 44

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

activities in each task code, drafting responses per the UST Guidelines for Larger Chapter 11 cases, and preparation of all exhibit attachments to Baker's Third Interim Fee Application. Baker also conferred with TCC chair regarding Baker's monthly fee statements and prepared an analysis of the Fee Examiner's initial conclusions on the costs submitted in Baker's monthly fee statements and applications and Third Interim Fee Application. In addition, Baker worked on its staffing plan and budget for the upcoming fourth interim period.

The total hours and amount charged by Baker to this matter during the Application Period represents **145.50 hours** and **$69,073.50** in fees.

u. Fee Application – Other Professionals (028): Baker's work this task code consisted of assisting the TCC's professionals, including Lincoln Partners Advisors LLC, Development Specialists, Inc., Lynn Baker and Trident DMG LLC, in preparing their fee statements and fee applications in accordance with established protocols in the Chapter 11 Cases and in preparing certificates of no objection. Baker's work also included time spent in negotiating a budget for the Fire Victims Trust. Baker consulted with the Fee Examiner and/or his professionals, the Office of the United States Trustee as well as other case professionals to address billing procedures and protocols.

The total hours and amount charged by Baker to this matter during the Application Period represents **48.40 hours** and **$33,135.00** in fees.

v. Tax Issues (030): Baker professionals performed substantial analysis of tax issues during the Application Period in connection with the development of the trust being established pursuant to the plan for the treatment of fire claims. Baker analyzed issues concerning the impacts of Net Operating Losses ("NOLs") and carry forwards in connection with a settlement with equity holders, performed research regarding preservation of NOLs and related research regarding IRC 382, reviewed PG&E NOL monetization considerations prepared by Lincoln, reviewed PG&E SEC filings which include Tax Receivable Agreements, performed analysis and review of Tax Benefit Agreements and letters of credit, analysis of income taxation of trusts under various domiciles as relevant to situs of the plan trust, researched whether certain provisions of the IRC were incorporated into the California Revenue and Taxation Code, analyzed California

Franchise Tax Board rulings, and provided input on tax issues for the plan term sheet as relevant to the interests of the TCC. Baker assisted the TCC with negotiating a Tax Benefits Agreement with the Debtors and the other plan proponents, along with various related documents, including stipulated judgments and a letter of credit.

The total hours and amount charged by Baker to this matter during the Application Period represents **131.50 hours** and **$112,619.00** in fees.

w. U.S. Trustee/Fee Examiner Issues (031): During the Application Period, a Baker paralegal communicated with the Fee Examiner and UST analysts to supply LEDES files and additional backup in formation for expenses incurred by Baker in representing the TCC in December, January, February and March, and continued analyzing conclusions of the Fee Examiner in his Initial Report on Baker's Third Interim Fee Application with respect to costs.

The total hours and amount charged by Baker to this matter during the Application Period represents **11.90 hours** and **$3,332.00** in fees.

x. Unsecured Creditor Issues/ Communications/ Meetings (032): Baker attorneys performed an analysis of derivative complaints filed against the debtors, including preparing a comprehensive summary of such complaints, analyzing the allegations in the complaints, and preparing a memorandum detailing the same as relevant to advising the TCC. Baker attorneys also performed extensive research on equitable mootness in connection with the Committee's inverse condemnation brief.

The total hours and amount charged by Baker to this matter during the Application Period represents **9.10 hours** and **$7,005.50** in fees.

y. Investigations (037): Baker's work in this task code involved a detailed analysis of the Debtors' proposed case resolution contingency process order and examination of the various issues raised by that order from the TCC's perspective. Among other things, this process envisioned the possibility that the Debtors' assets would be sold in a process favoring the State, or the State's nominee, as a purchaser. In particular, the focus was on questions raised assuming that the contingency process was adopted and took effect, and what remedies the tort

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

victims might be able to pursue, including under the Bankruptcy Code and the federal and state constitutions.

The total hours and amount charged by Baker to this matter during the Application Period represents **136.40 hours** and **$146,052.00** in fees.

z. <u>Other Contested Matters (039)</u>: Baker's work associated with numerous contested matters not included within other task categories is contained under the general category Other Contested Matters. Baker was required to monitor contested matters initiated by parties in interest to determine whether the relief requested would have an impact on the rights of tort claimants. Among the contested matters initiated by other parties, the contested matters that had substantial impact on tort claimants were various contested matters filed by Adventist Health, a health care provider that sustained damage to hospital facilities in Paradise, California. Adventist asserted the single largest tort claim, seeking over $500 million in property damages and business losses, and $500 million in punitive damages. In addition to the Adventist matters, Baker analyzed, and where appropriate, responded to many other contested matters as set forth in the detailed time entries included in this application.

The total hours and amount charged by Baker to this matter during the Application Period represents **131.50 hours** and **$100,333.50** in fees.

aa. <u>Operations (040)</u>: Baker's services in this task category involved multiple aspects of how the TCC operates. Baker worked with the TCC and Trident in responding to inquiries from fire victims and the media and to prepare press releases. Baker continued to address ethical issues and fiduciary duties of the TCC with special counsel and addressed special counsel's communication protocols with the TCC.

Baker prepared and revised proposed common interest agreements for TCC consideration, addressed issues with respect to interpretation of TCC bylaws, and evaluated and adopted all necessary changes to procedures for TCC meetings and protocols as necessary to address COVID-19. Baker addressed issues with respect to TCC composition and resignation of certain TCC members and communicated with the TCC frequently with respect to TCC obligations and goals. Baker prepared memoranda analyzing the rights of individual TCC members with respect to the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Debtors' proposed plan, and analyzed pleadings impacting the TCC as necessary to prepare summaries for the TCC website.

Baker's services in this task code also included administrative tasks carried out by staff in connection with reimbursements of TCC costs, and frequent maintenance and updates to the TCC website to supply new pleadings, transcripts, meeting minutes, and case development summaries, and other information concerning the Debtors as necessary to inform the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represent **137.80 hours** and **$80,521.50** in fees.

        bb.    <u>Subrogation (042)</u>: This category includes time spent by Baker professionals analyzing the treatment of subrogation claims against the Debtors and the impact such claims could have on recoveries for tort claimants. Baker also engaged in extensive discussions with the subrogation claimants about the turnover of the subrogation claimants data to the Trust for use in the valuation of tort claimants recovery and for use in creating budgets and the Claims Resolution Procedures for various categories of claims requested by the Court in connection with plan confirmation. In addition, Baker professionals continued to address issues relating to third-party releases. Baker engaged in extensive discussions with other professionals, including the mediator, regarding issues connected to the subrogation claims.

The total hours and amount charged by Baker to this matter during the Application Period represent **86.40 hours** and **$71,165.00** in fees.

        cc.    <u>Securities (043)</u>:  In this task code, Baker performed substantial legal research into a multitude of securities laws issues, including registration rights, lock-ups, registration requirements, Rule 144, private placement sales, exemptions from registration, block trades, and underwritten offerings. In connection with this work, Baker had numerous conferences with financial advisors and counsel to other parties including the Debtors. Baker analyzed the backstop commitment letter and arrangements with respect to potential impacts to the fire victims trust, reviewed a multitude of precedent transactions involving significant equity issuances including reviewing and comprehensively analyzing: precedent registration rights agreements in IPOs and follow-on offerings; precedent lock-up arrangements in IPOs and follow-on offerings;

Baker & Hostetler llp
Attorneys at Law
San Francisco

24

and investment banking engagement letters in IPOs and follow on offerings, as necessary to advise and protect the TCC's interests.

In addition, Baker reviewed, analyzed and negotiated a registration rights agreement and lock-up provisions; prepared multiple drafts of registration rights and lock-up term sheets both for internal use and analysis in the case and for the TCC's consideration; prepared multiple drafts of registration rights and lock-up term sheets for use in litigation and in negotiations with the Debtors. In addition, Baker professionals performed a detailed review and analysis of the Debtors' public filings and conferred with Baker's litigation teams on securities laws issues in connection with objections to the Debtors' plan.

The total hours and amount charged by Baker to this matter during the Application Period represent **887.70 hours** and **$712,950.50** in fees.

        dd.    <u>Wildfire Assistance Fund (044):</u>  Baker's time in this category consisted only of brief communications concerning the established Wildfire Assistance Fund.

The total hours and amount charged by Baker to this matter during the Application Period represent **0.30 hours** and **$352.50** in fees.

        ee.    <u>Asset Analysis and Recovery (045)</u>: During the Application Period, Baker worked to assess and protect the value of the Assigned Causes of Action as provided in the RSA. Specifically, Baker reviewed the Debtor's records with respect to over one hundred contractors with potential liability for the 2017 and 2018 fires as defined in the RSA. Following the initial review, Baker met and conferred with the third parties, reviewed documents produced by the third parties and analyzed the potential liability for each of the third parties. Following this initial analysis, Baker served over forty [40] Rule 2004 subpoenas on the third parties seeking, among other information, contracts and insurance information. The Baker team analyzed work performed by each company and the insurance available to each entity, as a source of potential recovery.

Baker's services served several purposes: 1) preparation for plan confirmation hearing in light of complaints by the UCC that third parties may not be able to obtain insurance if they were sued post confirmation; 2) protecting the assigned causes of action from statute of limitations

arguments; and 3) assessing the strength and value of the assigned causes of action against each of over forty [40] third party entities.

The total hours and amount charged by Baker to this matter during the Application Period represent **5,861.80 hours** and **$2,763,164.00** in fees.

    ff.    <u>Tort Claims Estimation (046)</u>:  This task category encompasses the work performed by Baker professionals in connection with the briefing of issues pending before Judge Donato relating to tort claims estimation including the analysis and determination of an estimation trial structure, working with experts, gathering facts, and extensive research and writing.

Specifically, Baker devoted significant time to drafting, editing, and revising the estimation brief, reviewing and researching other pleadings in the District Court, and reviewing transcripts of hearings relevant to estimation.  Baker also devoted time to writing response brief to Debtor's $13.5 billion estimation brief.

The total hours and amount charged by Baker to this matter during the Application Period represent **613.40 hours** and **$416,757.50** in fees.

    gg.    <u>Class Claims Issues (047)</u>:  This category covers time pertaining to the class action litigation filed by certain former shareholders in District Court, and the proceedings in Bankruptcy Court pertaining to their related proofs of claim, their motion for certification, and the TCC's motion for standing.  Because these securities plaintiffs seek to recover policy proceeds from the sale insurance policies that cover D&O claims assigned to the Trust, they are equity holders in competition with unsecured creditors for the same assets.  But because their complaint is virtually identical to the pending D&O derivative claims, but for a few pages of allegations of purported false statements that create securities claims, the TCC has taken the position that their complaint is baseless, and when viewed by its only proper allegations is properly characterized as seeking to recover the same company-wide damages as the Fire Victim Trust's derivative claims. The TCC filed a motion to obtain standing to pursue litigation addressing this issue, but it was denied by the Bankruptcy Court, who invited the TCC to bring the issue directly before the District Court rather than asking the Bankruptcy Court to enjoin a District Court.  The TCC has continued to prepare this litigation, as timing is of the essence if the policy proceeds are to be protected.  This

Case: 19-30088   Doc# 8403   Filed: 07/15/20   Entered: 07/15/20 12:03:44   Page 26 of 44

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

matter also covers discussions with the parties and may include some mediation timing pertaining to these securities claims.

The total hours and amount charged by Baker to this matter during the Application Period represent **133.80 hours** and **$99,955.00** in fees.

hh. <u>Kincade Fire Issues (048)</u>: This task code included time spent drafting an analysis of issues concerning the motion to expunge class proof of claim for the purpose of advising the TCC on the same. The time should have been billed to task code 047 but was erroneously included in task code 048.

The total hours and amount charged by Baker to this matter during the Application Period represent **0.50 hours** and **$325.00** in fees.

ii. <u>Mediation (049)</u>: The work performed by Baker in this task category involved preparation for and participation in mediation of issues between the TCC, the Debtors, and Shareholder Proponents. On February 18, 2020, during the Application Period, the parties were ordered to mediate further complex issues with Judge Randall Newsome in order to reach a consensual resolution of the cases. Baker's work relating to mediation included negotiating the RSA, negotiating interpretation of the RSA, negotiating claims and disputed issues with the Federal and State government, and the extension of the bar date for securities plaintiffs. Because most of the resolution of this case was negotiated through mediation, time spent in this category was significant.

The total hours and amount charged by Baker to this matter during the Application Period represent **304.30 hours** and **$282,870.50** in fees.

jj. <u>Government Claims (050)</u>: Work performed on this matter during the course of the Application Period included research and analysis of legal issues related to the TCC's objections to the Plea Agreement and Settlement reached by PG&E and the Butte County District Attorney concerning the Camp Fire, including protections and the right to restitution for fire victims in the event of Debtor's non-performance under terms of RSA and/or plea agreement, analysis of specific provisions of the California Penal Code ("CPC") concerning modifications made to plea agreements, victims' right to restitution, victims' bill of rights, enforcement of restitution orders

under the CPC, calculation of potential reward and enforcement mechanisms, related procedural and strategic issues, and related consideration regarding the fire victims' interests.

Next, Baker's attorneys applied their analyses of the above-referenced issues to draft a legal brief and statement on behalf of fire victims from the TCC for possible filing in the California Superior Court for the County of Butte regarding the TCC's objections to the Plea Agreement and Settlement, including legal arguments and support for objections to the proposed payment of PG&E's criminal fines and penalties with funds from the Fire Victim's Trust, the proposed double-trust structure, substantive and procedural issues concerning rights of fire victims in the settlement, opportunity to be heard at the plea hearing, and related objections and/or assertions of fire victims' rights with respect to the plea agreement. Ultimately, the work performed by Baker in this task code resulted in certain concessions and additional protections for the rights of the fire victims with respect to the plea agreement and specific portions of the RSA.

The total hours and amount charged by Baker to this matter during the Application Period represent **1,025.10 hours** and **$899,303.50** in fees.

kk.    CPUC BK OII 19-09-016 (051):  As a result of Baker's work during the period covered by the last interim fee application, the TCC was permitted to intervene in the CPUC BK OII, the proceeding in which the California Public Utilities Commission determined whether it would approve the Debtors' and Shareholders' Joint Plan, and the terms and conditions under which approval would be granted. During this Application Period, Baker performed substantial analysis of the testimony of all parties in the CPUC BK OII concerning the Chapter 11 plan, the Debtors' data responses, and the Presiding Commissioner's recommendations for approval of the plan and future CUPC enforcement actions that would culminate in State receivership. Baker's professionals continued to analyze legislation on performance-based rate making as relevant to the CPUC BK OII, and extensively analyzed the relationship between the Debtors' proposed Chapter 11 plan and the CPUC BK OII, Baker also regularly conferred with the TCC's financial advisors regarding specific issues to be briefed in the CPUC BK OII.

Baker engaged in extensive and swift strategic planning for the multi-week CPUC BK OII hearing, coordinating and planning every aspect of intervenor and expert testimony. Baker was

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28

required to meet and coordinate with Baker attorneys working on Chapter 11 plan issues as necessary to fully prepare for and participate in the CPUC BK OII hearings. Baker prepared extensive briefings during the proceedings and, following the conclusion of the multi-week case, analyzed hearing transcripts and testimony as relevant to outlining and drafting all post-hearing briefing, including performing extensive work on reply briefing on behalf of the TCC. As a result of Baker's efforts, the Administrative Law Judge presiding over the BK OII issued a proposed decision in which the ALJ adopted many of the TCC's recommendations.

Upon issuance of the proposed decision in the CPUC BK OII, Baker performed the required analysis to draft memoranda detailing impacts of the proposed decision and evaluated the decision's impacts on plan confirmation. In addition, Baker professionals attended the CPUC voting meeting on the CPUC BK OII and attended to press releases regarding same as necessary to communicate the interests of the TCC.

Baker's work in this task category was essential in defeating the Debtors' proposal to include all regulatory fines in the definition of Fire Claims under the Joint Plan. The immediate result was the disapproval of the CPUC's $200 million fine as payable from the victims' recovery.

The total hours and amount charged by Baker to this matter during the Application Period represent **893.60 hours** and **$788,047.00** in fees.

ll. <u>Tort Claims (052)</u>: Baker's work in this category during the Application Period encompasses analyzing and addressing issues raised by tort claimants relating to the treatment of fire claims in the Fire Victim Trust Agreement and the Claims Resolution Procedures, including objections raised by tort claimants to the Claims Resolution Procedures and the Fire Victim Trust Agreement during plan confirmation proceedings, including the objections filed by the business group of claimants. Baker's work also in this category also addressed late filed claims by tort claimants. Finally, Baker's work in this category also included researching certain issues that could impact the value of the claims such as statutes of limitation and insurance notification requirements and preparing and negotiation the Schedule of Assigned Rights and Causes of Action for the plan documents as contemplated by the RSA. Baker also analyzed pending third party causes of action filed by others currently pending in the bankruptcy and other courts against the

same claimants, including the securities claimants' claims against the Debtors directors and officers.  In connection with that suit, Baker filed legal briefs to protect the value of certain D&O claims assigned to the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represent **800.10 hours** and **$633,044.50** in fees.

mm.    Contingency Process (053):  The Firm's work in this task category was dedicated to analysis of, and planning for, the protection of the interests of tort claimants in the event that the Debtors failed to obtain an order confirming the plan, or the plan failed to become effective.  The category also includes work associated with planning for protection of tort claimants in the event that a substantial delay occurred between the order confirming the plan and the funding of the plan and effective date.  The plan contemplated the requirement of almost $60 billion in debt and equity financing under several different financings.  Pursuant to the Restructuring Support Agreement between the Debtors, the TCC and the Consenting Fire Claimant Professionals ("TCC RSA"), the Debtors agreed to a deadline of August 29, 2020 for the plan effective date.  The Debtors further entered into a stipulation with the Governor's Office pursuant to which the State could take certain steps if the Debtors failed to meet certain deadlines set forth therein.  In particular, the Firm's work encompassed three main categories:  (1) the impact of a wildfire event after plan confirmation but before the plan effective date; (2) the incurrence of administrative expenses that would have priority over victim claims between the date of an order confirming the plan, and the effective date; and (3) the sale process contemplated by the stipulation should the Debtors' plan were to not become effective by December 31, 2020, the outside deadline imposed under the stipulation.

The total hours and amount charged by Baker to this matter during the Application Period represent **232.60 hours** and **$299,260.00** in fees.

19.    RBC Capital Markets, LLC.  During the Application Period, and with the approval of the Debtors, the TCC engaged RBC Capital Markets, LLC ("RBC") as an expert in registration rights as necessary to assist the TCC in connection with transactions stemming from the creation of the fire victim trust and the anticipated distribution of equity into the fire victim trust pursuant

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

to the Debtors' plan. RBC's services on behalf of the TCC during the Application Period included review of the Debtors' plan and all supporting documentation including the RSA, the fire victim trust agreement, claims resolution procedures and related documentation necessary to evaluate the magnitude of the funding needs, monetization alternatives relative to scenarios involving the backstop commitment, negotiating a registration rights agreement, and advising the TCC with respect to same. Per agreement with RBC, Baker, as counsel to the TCC, agreed to submit RBC's invoices for payment by the Debtors' estates as a part of Baker's monthly fee statements and Baker's Fourth Interim Application.

Baker included RBC's April 2020 invoice in the amount of $125,000 on Baker's Amended Fifteenth Monthly Fee Statement filed on June 2, 2020. [Docket No. 7714]. No objections have been filed regarding the Amended Fifteenth Monthly Fee Statement. Baker included RBC's May 2020 invoice in the amount of $250,000 on Baker's Sixteenth Monthly Fee Statement filed on June 30, 2020. [Docket No. 8210]. The deadline for objections to the Sixteenth Monthly Fee Statement is July 21, 2020. The total sought by RBC for services performed on behalf of the TCC during the Application Period is **$375,000**.

20. <u>Costs and Expenses</u>: Baker requests allowance and reimbursement of actual, reasonable, and necessary out-of-pocket expenses in the amount of $1,847,978.50 incurred while rendering professional services on behalf of the TCC during the Application Period.

21. Expenses incurred by Baker during the Application Period are set forth in detail on the invoices found on the docket as attachments to Baker's monthly fee statements (see Docket Nos. 6514, 7000, 7714, and 8210) and are summarized in **Exhibit D-2.**

22. Baker submits that all expenses incurred during the Application Period were reasonable and necessary, are sought in compliance with the Guidelines, and should be allowed on an interim basis by the Court.

## THE FEES AND EXPENSES REQUESTED
## SHOULD BE AWARDED BASED UPON APPLICABLE LAW

23. Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award

of such compensation. Section 330 provides that a Court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> > (A)  the time spent on such services;
> >
> > (B)  the rates charged for such services;
> >
> > (C)  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> >
> > (D)  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> >
> > (E)  with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> >
> > (F)  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Id. § 330(a)(3).

24.     In determining the amount of allowable fees under Bankruptcy Code section 330(a), courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *Burgess v. Klenske (In re Manoa Finance Co., Inc.*), 853 F.2d 687, 691 (9th Cir. 1988).

25.     In assessing the propriety of an award of attorneys' fees, twelve factors relevant to determining such fees were identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974, a Title VII class action case under the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and *Kerr v. Screen Extras Guild, Inc.*, 526 F 2d. 67, 70 (9th Cir. 1975), *cert denied*,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

425 U.S. 951 (1976): (a) the time and labor required, (b) the novelty and difficulty of the questions, (c) the skill requisite to perform the service properly, (d) the preclusion of other employment by the professional due to acceptance of the case, (e) the customary fee, (f) whether fee is fixed or contingent, (g) time limitations imposed by client or the circumstances, (h) the amount involved and the results obtained, (i) the experience, reputation and ability of the professionals, (j) the undesirability of the case, (k) the nature and length of the professional relationship with the client, and (l) awards in similar cases. *See American Benefit Life Ins. Co. v. Baddock* (*In re First Colonial Corp. of America*), 544 F. 2d 1291 (5th Cir. 1977) (*Johnson* criteria applicable in bankruptcy cases):

a. <u>the time and labor required</u>:  Baker and the TCC represent the interests of the most vulnerable and important constituency in these cases.  Unlike other major parties in interest in these cases, the TCC had no relationship with PG&E pre-petition, other than as its victim.  The time required to protect the interests of the victims the TCC represents is substantial, and the labor is complicated and multifaceted, particularly due the scope of injuries represented by the members of the TCC, ranging from death and personal injury to business and other economic losses.

Baker meets with the TCC in person on a monthly basis, and weekly by phone.  Multiple attorneys frequently attend these meetings to field questions from the eleven [11] members of the TCC and sometimes also from counsel for individual TCC members.  These meetings cover numerous agenda items, and involve a broad area of topics and expertise, often including claims estimation, financial analysis, updates on pending motions and objections, corporate governance, criminal issues, committee operations, website updates, legislative updates, and Chapter 11 plan analysis.  Baker has different attorneys working on different issues and each attorney briefs the TCC on the issues for which they are responsible.

In addition, Baker has a weekly "core" PG&E team meeting that lasts approximately one hour.  These meetings always include a number of attorneys (more than four), each of whom leads a particular project or work team and/or specializes in a particular practice area.  These meetings involve high-level and substantive strategy considerations and are essential to avoid duplication of effort.  The meetings are critical to coordination of case strategy and are where the core team communicates on how best to achieve the objectives of the TCC.  For example, Baker's

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

professionals working on claims estimation need to communicate with Baker's professionals working on Chapter 11 plan issues, and each need to be apprised of legislative developments. The weekly calls are where ideas and information are shared among Baker's work teams so that research and investigative results can be conveyed and strategic decisions can be made.

Finally, a number of attorneys (more than four) frequently attend hearings that involve multiple or complex issues. The TCC's lead counsel, generally Ms. Dumas and Mr. Julian, attend hearings together with other litigation counsel and/or the attorneys on the team responsible for working on the matter being heard. Given the number of firms and professionals employed by the Debtors, and the complicated issues the Debtors' cases present, representation of the TCC requires the attendance of multiple attorneys at hearings.

b. the novelty and difficulty of the questions: Many of the issues related to this case are novel, due to the significant issues presented regarding the fire victims' claims and the nature of the Debtors' business. As Baker noted in its previous interim applications, these cases present some of the most difficult issues ever addressed in a bankruptcy case, including the Debtors' ability to finance its reorganization, and the rights of over 70,000 tort claimants holding claims for damages including business losses, property damages and personal injuries arising from over 20 fires caused by the Debtors. The bankruptcy cases proceeded in parallel with numerous regulatory investigations by the CPUC, a federal court probation proceeding, and, during this application period, a criminal plea in Butte County, California, as a result of the deaths of more than 80 people in the Camp Fire. The main complex issues addressed in the bankruptcy cases during the period covered by this application pertained to the negotiation and documentation of the victim trust agreement and claims resolution procedures, the disclosure statement, and the Joint Plan. Further, the complex nature of the compensation for victims under the TCC RSA, Baker professionals participated in mediation proceedings with the Debtors and Shareholder Proponents during this period. Moreover, the United States, through FEMA, asserted the first claim ever in a major bankruptcy case for recovery of disaster relief payments. Finally, Baker was required to monitor, and where appropriate participate in, contested matters initiated by creditors and other parties in interest to protect the victim recoveries.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1          c.      <u>the skill requisite to perform the service properly</u>:  The skill to perform the

2 representation of the TCC properly is significant.  There are numerous complex issues presented

3 by these cases, as evidenced by the number of professionals the Debtors have employed.

4          d.      <u>the preclusion of other employment by the professional due to acceptance of</u>

5 <u>the case</u>:  Other employment of Baker has been precluded due to conflict issues created by this

6 representation.

7          e.      <u>the customary fee</u>:  Baker is charging its customary hourly fees in this matter

8 with the exception that Baker has frozen the hourly rates of its professionals performing services

9 on behalf of the TCC at 2019 rates.

10          f.      <u>whether fee is fixed or contingent</u>:  Baker's fee is an hourly fee.

11          g.      <u>time limitations imposed by client or the circumstances</u>:  There have been

12 constrained time limitations in this representation due to the pace of legislation enacted pertaining

13 to the Debtors' cases and the need to evaluate volumes of critical information to the TCC's interests

14 on an expedited basis.

15          h.      <u>the amount involved and the results obtained</u>:  Through the efforts of Baker

16 and other tort claimant professionals, the TCC and representatives of more than 70% of tort

17 claimants achieved the largest settlement ever in a mass tort bankruptcy case, through distributions

18 of cash and stock in the reorganized debtors.  As the court is aware, the TCC's role in this case was

19 pervasive, having participated in all of the significant developments in the cases, including, during

20 this application period, the disclosure statement and Joint Plan.  While the Debtors' employed two

21 major firms as chapter 11 counsel, other firms as criminal counsel, corporate, securities, CPUC and

22 FERC regulatory counsel, tort litigation defense counsel and a legion of other special counsel and

23 ordinary course professionals, Baker was able to staff its representation of the TCC with

24 experienced and capable bankruptcy, corporate, regulatory, white collar criminal, complex

25 litigation, insurance, and appellate attorneys, along with other professionals and paraprofessionals.

26 Baker accomplished its representation of the TCC at blended rates lower than counsel for any other

27 major constituent in the cases.

28

1            i.    the experience, reputation and ability of the professionals:  Baker is well

2    known for its experience and expertise in bankruptcy matters.  Cecily Dumas and Elizabeth Green

3    are fellows in the American College of Bankruptcy, and Baker's team is comprised of seasoned

4    litigators and well-respected lawyers in every diverse aspect of Baker's representation of the TCC.

5            j.    the undesirability of the case:  Representing the TCC in the Debtors' cases

6    is not undesirable, but the representation is multi-faceted, time-consuming, and complicated.

7            k.    the nature and length of the professional relationship with the client:  Baker

8    had no professional relationship with the TCC prior to these cases.

9            l.    awards in similar cases:  Baker's fee application is comparable with other

10   awards in similar cases involving representation of a committee of tort victims.

11       26.    The time for which compensation is sought is detailed in Baker's professional fee

12   invoices filed on the docket as attachments to Baker's monthly fee statements (see Docket Nos.

13   6514, 7000, 7714 and 8210).  Baker's services and time expenditures are reasonable considering

14   the labor required and outcome achieved to date in these complicated cases.  Baker charges for its

15   professional services based upon the time, nature, extent and value of such services and the cost of

16   comparable services in the San Francisco bay area, other than in a case under the Bankruptcy Code.

17   The compensation Baker seeks by way of this Application is the customary compensation

18   commonly sought by the Baker and other professionals representing trustees, committees, and

19   debtors in similar circumstances.

20       27.    Further, the Debtors spent in excess of $80 million preparing to file the Bankruptcy

21   Cases, and Baker was not appointed as counsel to the TCC until several weeks after the Bankruptcy

22   Cases were filed.  The Debtors' cases draw on a number of specialties as evidenced by the Debtors'

23   employment of a number of firms, including firms to handle fire claims and criminal issues.  The

24   specialties required for the complex issues presented by the Debtors' wrongdoing and

25   circumstances include constitutional law, white collar criminal practice, issuance of securities, and

26   regulatory issues involving FERC and CPUC, and are at the higher end of Baker's rate structure

27   due to the skill and experience associated with these specialties.

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28. To wit, Mr. Rivkin ($1,625) is a nationally known constitutional lawyer in Baker's Washington, D.C. office. Mr. Dettelbach ($1,015) is the former U.S. Attorney for the Northern District of Ohio and is a leader of Baker's white-collar practice. Jerry Bloom ($1,145), based in Los Angeles, California, and Elizabeth Foley ($1,100), based in Washington D.C., are of counsel to Baker in the Debtors' Chapter 11 Cases. Mr. Bloom is one of very few of lawyers in the United States who specializes in CPUC matters and is nationally recognized in Chambers as Band One in the field of energy and regulatory matters. Ms. Foley is a nationally recognized constitutional lawyer and a Professor of Law at Florida International University, where she teaches constitutional law. The two specialties in which Mr. Bloom and Ms. Foley practice are essential to representation of the TCC and the rates these specialties command are significantly higher than the rates Baker's other attorneys of Counsel, who practice in less specialized areas, enjoy.

29. Simply put, Baker has staffed the Debtors' Chapter 11 Cases with its best and brightest lawyers because the complexities of the cases demand it. It is worth noting that Baker's blended rate for all timekeepers in Baker's Third Interim Application, including Baker's partners and counsel, was approximately $405 less than Debtors' counsel's blended rate for all timekeepers during the same time period.

### ADDITIONAL QUESTIONS FROM THE
### UST GUIDELINES FOR LARGER CHAPTER 11 CASES

30. Pursuant to Appendix B of the UST Guidelines, Applicant answers the questions below as follows:

31. Did Applicant agree to any variations from, or alternatives to, Applicants' standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

*ANSWER: Yes. On an annual basis, Baker typically increases the hourly rates of its personnel to reflect increases in work experience. However, when Baker applied these firmwide increases in January, 2020, Baker carved out an exception for the billing rates applied to this engagement and did not increase the hourly rates of the professionals performing services on behalf*

*of the TCC as a courtesy to the TCC and to the Debtors' estates, freezing the rates of Baker professionals at 2019 levels.*

32.     If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher than 10% or more, did Applicant discuss the reasons for the variation with the client?

*ANSWER:  The fees sought in Baker's Application fell in line with those budgeted as a whole.  On occasion, fees associated with one particular task code may have exceeded the fees budgeted for that task code.  For other task codes, however, Baker's fees were less than the amount budgeted, bringing the total amount of fees sought by Baker in this Application in line to the fees budgeted for at the inception of this engagement.  As such, the fees sought did not exceed the fees budgeted by 10% or more in the period covered by this Application.*

33.     Have any of the professionals in this fee application varied their hourly rate based on the geographic location of the bankruptcy cases?

*ANSWER:  No.*

34.     Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.)  If so, please quantify by hours and fees.

*ANSWER:  Baker reviewed each time entry in the billing records submitted with this Application in connection with preparation of the required monthly fee statements for the TCC as necessary to confirm tasks were allocated to an appropriate task code by each timekeeper and that each task was adequately described as required by the Guidelines and as necessary to facilitate the Fee Examiner's evaluation of the reasonableness of the fees requested by this Application, and as expressly necessary to preparing interim fee applications.*

*On occasion during this review, time entries may have been moved from one task code to another task code as appropriate or divided up and apportioned between two or more task codes[†]*

---

[†]For instance, a time entry reflecting 1.5 hours may have been broken down into smaller increments and spread between two or more task code categories.  For example, where a task described research performed that could impact both Chapter 11 plan structure and the treatment of particular claims, the 1.5 hour entry may have been apportioned so that

Case: 19-30088    Doc# 8403    Filed: 07/15/20    Entered: 07/15/20 12:03:44    Page 38 of 44

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*where the time entry clearly reflected work performed that impacted more than one area of Baker's representation of the TCC, as necessary to adhere to the projected budget. Baker estimates that between eight [8] and ten [10] hours each month for the period covered by this Application was spent performing such work. Baker employs fifty-three [53] separate task codes in the Debtors' cases and Baker is required to allocate its work among them to draft its fee applications and the required narrative descriptions of work performed in each task code. In a non-bankruptcy engagement, extensive task codes usage is seldom employed, and professionals are not required to prepare applications to be compensated. This application does not include time or fees related to preparing, reviewing, or revising invoices, beyond confirming that task code usage is appropriate and that work is grouped in a manner that permits Baker's professionals to review the descriptions of the work performed in each task code as necessary to draft an accurate summary for the fee application for the applicable covered period. To date, Baker's fees for preparing its interim fee applications have been extremely reasonable, and this is largely attributable to the attention given each month to the appropriate use of task codes.*

35.     Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

***ANSWER:*** *As stated above, Baker reviewed each time entry in the Application to confirm tasks were allocated to an appropriate task code by each timekeeper and that each task was adequately described as required by the Guidelines and as necessary to facilitate the Fee Examiner's evaluation of the reasonableness of the fees requested by this Application. Each of Applicant's timekeepers have been instructed to consider issues of confidentiality contemporaneously with drafting his or her time entries so that a further subsequent review of time records in connection with an assessment of privilege or confidentiality is, for the most part, unnecessary. Baker's billing records submitted with this Application contain few (if any) redactions, and Baker has submitted unredacted invoices to the Fee Examiner and believes the Fee Examiner possesses sufficient information with which to evaluate the reasonableness of fees*

---

.7 was allocated to Task Code 008 (concerning Chapter 11 Plan/Plan Confirmation) and .8 was allocated to Task Code 005 (concerning, among other things, claims).

*charged. Baker estimates no more than two [2] hours were spent evaluating confidentiality of time entries for this Application Period.*

36.     If this fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

*ANSWER: The Application contains no rate increases. As stated above, Baker froze its rates at 2019 levels and did not implement rate increases as it typically does in January of each year, as a courtesy to the TCC and the Debtors' estates.*

37.     Pursuant to the UST Guidelines, required exhibits are attached as:

a.      **Exhibit A** – "Customary and Comparable Compensation Disclosure with Fee Applications"

b.      **Exhibit B** – "Summary of Timekeepers Included in this Application".

c.      **Exhibit C-1** – "Budget"

d.      **Exhibit C-2** – "Staffing Plan"

e.      **Exhibit D-1** – "Summary of Compensation Requested by Project Category"

f.      **Exhibit D-2** –"Summary of Expense Reimbursement Requested by Category"

## AVAILABLE FUNDS

38.     Baker understands that the Debtors have sufficient funds available for the payment of interim fees and costs requested herein.

## CONCLUSION

39.     Baker believes that this Application appropriately sets forth the significant matters handled on behalf of the TCC and provides this Court, the UST, the Fee Examiner, the Debtors' creditors, and other interested parties with an insightful overview of the scope of services rendered. Thus, Baker respectfully submits that the fees and expenses sought herein are reasonable and that the services rendered were necessary, effective, efficient and economical. Accordingly, Baker

respectfully requests that this Application for allowance of fees and expenses, on an interim basis, be granted in all respects.

WHEREFORE, Baker respectfully seeks entry of an order, essentially in the form as attached **Exhibit H**:

1.      Awarding interim allowance of compensation for professional services rendered during the Application Period in the amount of **$16,411,578.50**, consisting of $14,563,600.00 in reasonable fees incurred and $1,847,978.50 in actual and necessary expenses.

2.      Authorizing and directing the Debtors to make prompt payment to Baker in the total amount of **$9,974,775.32,** which is the difference between the amount requested and the amount already paid by the Debtors pursuant to the Interim Compensation Order.

3.      Granting such other and further relief as the Court may deem just and proper.

Dated:  July 15, 2020                    BAKER & HOSTETLER LLP

By: */s/ Cecily A. Dumas*
Cecily A. Dumas
Counsel to the Official Committee of Tort Claimants

## CERTIFICATION

I, Cecily A. Dumas, declare as follows:

The following facts are personally known to me, and if called to do so, I could and would competently testify thereto.

1.     I am a partner in the law firm of Baker & Hostetler LLP ("**Baker**"). I submit this certification in support of the *Fourth Interim Application of Baker & Hostetler LLP for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period February 1, 2020 through May 31, 2020* (the "**Application**").‡

2.     I have personally reviewed the information contained in the Application and believe its contents to be true to the best of my knowledge, information and belief.

3.     The compensation and expense reimbursement sought in this Application, to the best of my knowledge, information and belief, after reasonable inquiry, is in conformity with sections 330(a) and 331 of title 11, United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Northern District of California (the "**Local Rules'**), the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, effective February 19, 2014 (the "**Local Guidelines**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines**"), and the *Order Pursuant to 11 U.S.C. § § 331 and 105(a) and Fed. R. Bankr. P. 2016 For Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* ("**Interim Compensation Order**") [Docket No. 701], and the revised Fee Examiner Protocol filed on October 24, 2019 (the "**Revised Protocol**") [Docket No. 4473] (collectively, the "**Guidelines**").

4.     The compensation and expense reimbursement requested in this Application are billed at rates, in accordance with Baker's practices, no less favorable than those customarily charged by Baker and generally accepted by Baker's clients.

---

‡Capitalized terms not defined have the meanings used in the Application.

42

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Dated:  July 15, 2020                          BAKER & HOSTETLER LLP

                                               By:  */s/ Cecily A. Dumas*
                                               Cecily A. Dumas
                                               Counsel to the Official Committee of Tort Claimants

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Notice Parties**

| | |
|---|---|
| PG&E Corporation<br>c/o Pacific Gas & Electric Company<br>Attn:   Janet Loduca, Esq.<br>77 Beale Street<br>San Francisco, CA 94105 | Keller & Benvenutti LLP<br>Attn:   Tobias S. Keller, Esq.<br>          Jane Kim, Esq.<br>650 California Street, Suite 1900<br>San Francisco, CA 94108 |
| The Office of the United States Trustee for Region 17<br>Attn:   James L. Snyder, Esq.<br>          Timothy Laffredi, Esq.<br>450 Golden Gate Avenue, 5th Floor, Suite #05-0153<br>San Francisco, CA 94102 | Milbank LLP<br>Attn:   Dennis F. Dunne, Esq.<br>          Sam A. Khalil, Esq.<br>55 Hudson Yards<br>New York, NY 10001-2163 |
| Milbank LLP<br>Attn:   Paul S. Aronzon, Esq.<br>          Gregory A. Bray, Esq.<br>          Thomas R. Kreller, Esq.<br>2029 Century Park East, 33rd Floor<br>Los Angeles, CA 90067 | Weil, Gotshal & Manges LLP<br>Attn:  Stephen Karotkin, Esq.<br>Jessica Liou, Esq.<br>Matthew Goren, Esq.<br>767 Fifth Avenue<br>New York, NY 10153-0119 |
| Bruce A. Markell<br>Fee Examiner<br>541 N. Fairbanks Court<br>Suite 2200<br>Chicago, IL 60611-3710 | Scott H. McNutt<br>Attorney for the Fee Examiner<br>324 Warren Road<br>San Mateo, CA 94402 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO