**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| - and - | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | **FOURTH INTERIM FEE APPLICATION OF MILBANK LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM FEBRUARY 1, 2020 THROUGH MAY 31, 2020** |

Affects PG&E Corporation

Affects Pacific Gas and Electric Company

☑ Affects both Debtors

*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

Re: Docket Nos.: 6797, 7373, 7892 and 8189

**Objection Deadline:** August 5, 2020,
at 4:00 p.m. (PT)

| | |
|---|---|
| Name of Applicant: | Milbank LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | April 29, 2019 *nunc pro tunc* to February 12, 2019 |
| Time Period for which compensation and reimbursement are sought: | February 1, 2020 through May 31, 2020 |
| Amount of Compensation sought as actual, reasonable, and necessary: | $4,942,522.75 |
| Amount of Expense Reimbursement sought as actual, reasonable, and necessary: | $146,824.85 |
| Total Compensation and Expenses Requested for Compensation Period: | $5,089,347.60 |

1  This is a(n): ___ monthly _X_ interim ___ final application

2

3  This is the fourth interim fee application filed by Milbank LLP in these cases.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Summary of Monthly Fee Statements for Compensation Period:**

| Filing | Period Covered | Requested | | Approved/ Pending Approval | | Holdback Fees (20%) Requested Fees |
| --- | --- | --- | --- | --- | --- | --- |
| | | Fees | Expenses | Fees (80%) | Expenses (100%) | |
| *Thirteenth Monthly Fee Statement* <br><br> Docket No. 6797 <br><br> Date Filed: 4/20/20 | 2/1/20 - 2/29/20 | $1,296,101.25 | $80,249.66 | $1,036,881.00 | $80,249.66 | $259,220.25 |
| *Fourteenth Monthly Fee Statement* <br><br> Docket No. 7373 <br><br> Date Filed: 5/18/20 | 3/1/20 - 3/31/20 | $1,582,052.00 | $38,785.73 | $1,265,641.40 | $38,785.73 | $316,410.40 |
| *Fifteenth Monthly Fee Statement* <br><br> Docket No. 7892 <br><br> Date Filed: 6/11/20 | 4/1/20 - 4/30/20 | $1,137,697.00 | $13,174.38 | $910,157.60 | $13,174.38 | $227,539.40 |
| *Sixteenth Monthly Fee Statement* <br><br> Docket No. 8189 <br><br> Date Filed: 6/29/20 | 5/1/20 - 5/31/20 | $926,672.50 | $14,615.08 | $741,338.00 | $14,615.08 | $185,334.50 |
| **TOTALS:** | | **$4,942,522.75** | **$146,824.85** | **$3,954,018.00** | **$146,824.85** | **$988,504.55** |

**Summary of Any Objections to Monthly Fee Applications:** No objections were filed with respect to the Thirteenth, Fourteenth or Fifteenth Monthly Fee Statements. <u>See</u> *Certificates of No Objection* [Docket Nos. 7157, 7845 and 8271]. The objection deadline with respect to the Sixteenth Monthly Fee Statement is July 20, 2020.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| **- and -** | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | |

**FOURTH INTERIM FEE APPLICATION OF MILBANK LLP
FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND
REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
FROM FEBRUARY 1, 2020 THROUGH MAY 31, 2020**

TO THE HONORABLE DENNIS MONTALI
UNITED STATES BANKRUPTCY JUDGE

Milbank LLP ("Milbank"), counsel to the Official Committee of Unsecured Creditors (the "Committee") of PG&E Corporation and Pacific Gas and Electric Company (collectively, the "Debtors") in the above-captioned chapter 11 cases (these "Chapter 11 Cases"), hereby submits its fourth interim application (this "Fourth Interim Application"), seeking entry of an order pursuant to: (i) sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"); (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"); (iii) the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals*, dated February 27, 2019 [Docket No. 701] (the "Interim Compensation Order"); (iv) the *Order Pursuant to 11 U.S.C. Section 1103(a) and Fed. R. Bankr. P. 2014 and 2016 Authorizing the Retention and Employment of Milbank LLP as Counsel for the Official Committee of Unsecured Creditors Effective as of February 12, 2019* [Docket No. 1766] (the "Retention Order"); (v) the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses by*

*Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "U.S. Trustee Guidelines"); (vi) the Bankruptcy Local Rules for the Northern District of California (the "Local Rules"); (vii) the *Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees for the Northern District of California*, dated February 19, 2014 (the "Local Guidelines" and together with the U.S. Trustee Guidelines, the "Fee Guidelines"); and (viii) the *Fee Examiner Protocol for Chapter 11 Cases of PG&E Corporation and Pacific Gas and Electric Company*, filed on October 24, 2019 [Docket No. 4473-1] (the "Fee Examiner Protocol").

By this Fourth Interim Application, Milbank seeks the allowance, on an interim basis, and payment (to the extent not previously paid) of: (i) compensation for professional services rendered during the period from February 1, 2020 through and including May 31, 2020 (the "Compensation Period") in the aggregate amount of $4,942,522.75, including amounts previously held back pursuant to the Interim Compensation Order; and (ii) reimbursement of actual and necessary expenses incurred by Milbank in connection with such services during the Compensation Period in the amount of $146,824.85. In support of this Fourth Interim Application, Milbank respectfully states as follows:

## PRELIMINARY STATEMENT

1.     Filed in the aftermath of the horrific 2017 and 2018 wildfires in Northern California, these chapter 11 cases represent one of the largest and most complex chapter 11 filings in United States history. From its formation, the Committee has undertaken its duties with two goals – to attempt to work consensually with all of the various constituents to bring these cases to an expeditious conclusion, while at the same time working to ensure that the various rights and ultimate recovery of the Committee's unsecured creditor constituency are protected. With these goals in mind, Milbank has advised the Committee on the numerous plan, financing, regulatory and confirmation issues. After eighteen months, these efforts culminated in the confirmation of the Debtors' chapter 11 plan (as amended, the "Plan") on June 20, 2020.

2. Milbank's efforts during this Compensation Period have largely been focused on the Debtors' plan process and confirmation. Prior to the beginning of the Compensation Period, on December 6, 2019, the Debtors, the Official Committee of Tort Claimants (the "TCC"), the Consenting Fire Claimant Professional Group and the Shareholder Proponents entered into a Restructuring Support Agreement (as amended, the "Tort Claimants RSA") [Docket No. 5038] that, among other things, resolved the treatment of all Fire Victim Claims under the Plan. Soon thereafter, on January 22, 2020, the Debtors, the Shareholder Proponents, and the Ad Hoc Noteholders Committee (the "Noteholders") entered into that certain Restructuring Support Agreement (the "Noteholder RSA") [Docket No. 5519], pursuant to which, among other things, the Noteholders also agreed to support the Plan. The Court approved the Noteholder RSA during the Compensation Period [Docket No. 5637]. Subsequently, the Debtors filed an earlier version of the Plan on January 31, 2020 [Docket No. 5590] containing its agreements with the TCC, the Noteholders as well as settlements with the Ad Hoc Subrogation Claimants Group and certain public entities which had been entered into previously. These settlements formed the core of the eventually confirmed Plan.

3. A further revised version of the Plan was filed during the Compensation Period on March 9, 2020 [Docket No. 6217], along with a related proposed Disclosure Statement (the "Disclosure Statement") [Docket No. 6219] and the Debtors' Solicitation Procedures Motion [Docket No. 5835].

4. For the remainder of the Compensation Period, the chief focus of all parties in these chapter 11 cases was to reach a proper and successful confirmation. To that end, on March 6, 2020, the Committee filed a statement regarding the Disclosure Statement [Docket No. 6154]. While the Committee did not oppose the Disclosure Statement itself, it did raise certain issues with

regard to the Plan, including numerous changes that were ultimately included in the Plan. The Disclosure Statement was ultimately approved by the Court on March 17, 2020 [Docket No. 6340].

5. In support of the Plan, the Debtors also filed Exit Financing Motion [Docket No. 6013]. The Committee reviewed and diligence all of the various components of the proposed Exit Financing to ensure that the proposed financing was not illusory, met the feasibility requirements of section 1129 of the Bankruptcy Code and was on the best terms available. The Committee also filed a statement with respect to its views regarding the Exit Financing Motion [Docket No. 6277].

6. Following approval of the Disclosure Statement and Exit Financing Motion, the Committee actively took part in plan negotiations and sought a number of specific changes to the Plan on behalf of its constituency. Such efforts involved participating in numerous discussions with the Debtors, other constituents as well as attending numerous hearings, reviewing the Court's various docket text orders and reviewing numerous pleadings, amendments and supplements regarding the Plan. These efforts eventually led to the successful confirmation of the Plan, which occurred immediately following the end of the Compensation Period, on June 20, 2020.

7. In addition to the Committee's efforts regarding the Plan, during this period and in connection with the larger plan process, the Committee also took leading roles with respect to: (i) an appeal of the Court's PPI Decision [Docket No. 6199] (the "PPI Appeal"); (ii) *The Official Committee of Tort Claimants' Motion to Establish Procedures for Discovery Preceding Plan Confirmation* [Docket No. 5840] (the "TCC Discovery Motion") [Docket No. 5840]; (iii) *The Official Committee of Tort Claimants' Motion For Standing To Prosecute Claims Of The Debtors' Estates* [Docket No. 5972] (the "TCC Standing Motion"); and (iv) the Debtors' *Motion Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(c) for Entry of an Order Approving Debtors' 2020 (I) Short Term Incentive Plan; (II) Long Term Incentive Plan; (III) Performance Metrics for the Chief Executive Officer and President of PG&E Corporation; and (IV) Granting Related Relief* (the

"2020 Employee Compensation Motion") [Docket No. 6088]. Milbank attorneys similarly reviewed, advised the Committee on, and participated in discovery regarding each of these motion and appeals.

8. Milbank attorneys also appeared on behalf of the Committee at all of the Debtors' omnibus and telephonic hearings before the Bankruptcy Court, on all motions and applications, in addition to numerous other matters. Milbank attorneys also participated in numerous meetings, depositions and conferences with the Debtors, representatives of the other major case constituents, Committee members and other unsecured creditors and drafted and filed on behalf of the Committee numerous pleadings, including objections, statements, discovery requests, notices and stipulations with respect to, among other things, the various motions and applications listed above. Milbank also attended numerous hearings before the California Public Utilities Commission ("CPUC").

9. All of these efforts have allowed the Committee to carry out its fiduciary responsibilities to the Debtors' unsecured creditors and bring these cases to a successful end. The professional services performed and expenses incurred by Milbank were actual and necessary to preserve and maximize the value of the Debtors' estates for the benefit of general unsecured creditors.

10. In light of the size, complexity and nature of these cases, Milbank's charges for professional services performed and expenses incurred are reasonable under the applicable standards. Milbank respectfully requests that the Court grant this Fourth Interim Application and allow interim compensation for professional services and reimbursement for expenses as requested herein.

**BACKGROUND**

11. Bankruptcy Filing. On January 29, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The

Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. On February 1, 2019 the Court entered an order consolidating these cases for procedural purposes only [Docket No. 207].

12.     Creditors' Committee. On February 12, 2019, the United States Trustee for the Northern District of California (the "U.S. Trustee") appointed the Committee [Docket No. 409]. The Committee currently consists of the following nine members: (i) BOKF, N.A., as indenture trustee under unsecured bond indentures; (ii) The Davey Tree Expert Company, Davey Tree Surgery Company, and DRG, Inc.; (iii) Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as indenture trustee; (iv) G4S Secure Solutions (USA) Inc. and G4S Secure Integration LLC; (v) International Brotherhood of Electrical Workers, Local 1245; (vi) Mizuho Bank, Ltd.; (vii) NextEra Energy, Inc.; (viii) Pension Benefit Guaranty Corporation; and (ix) Roebbelen Contracting, Inc.

13.     Jurisdiction. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code.

14.     Authorization for Milbank's Retention. On April 3, 2019, the Committee filed its *Application to Employ Milbank LLP as Counsel to the Official Committee of Unsecured Creditors, Effective as February 12, 2019* [Docket No. 1208] (the "Retention Application"). In connection with the Retention Application, Milbank filed the *Declaration of Thomas R. Kreller in Support of Application to Employ Milbank LLP as Counsel to the Official Committee of Unsecured Creditors, Effective as of February 12, 2019* (the "Kreller Declaration") [Docket No. 1210]. On April 29, 2019, the Court authorized Milbank's retention as counsel to the Committee. The Retention Order

6

provides that Milbank will be compensated on an hourly basis for services rendered to the Committee and reimbursed for actual and necessary out-of-pocket expenses. This Fourth Interim Application is Milbank's fourth interim application for the payment of its fees and reimbursement of its expenses as well the release of the twenty-percent holdback (the "<u>Holdback</u>") maintained during the Compensation Period. Milbank is not holding, and has not held, any retainer in connection with these cases or work performed on behalf of the Committee.

15. <u>Fee Examiner</u>. On May 28, 2019, the Court entered an order appointing Bruce A. Markell as fee examiner (the "<u>Fee Examiner</u>") in these cases [Docket No. 2267]. Subsequently, the parties have agreed to the Fee Protocol. Milbank has provided certain information to the Fee Examiner, including copies of pertinent receipts, as requested by the Fee Examiner so that he may evaluate the reasonableness of certain expenses sought in this Fourth Interim Application. Milbank is in the process of providing additional expense information to the Fee Examiner with respect to certain information related to this Fourth Interim Application as well.

16. <u>Status of Cases</u>. The Debtors are continuing their operations as debtors in possession. The Debtors filed their proposed disclosure statement on February 7, 2020 [Docket No. 5700] and certain schedules and exhibits thereto on February 18, 2020 [Docket No. 5801]. Most recently, the Debtors filed the Plan on June 19, 2020, which was confirmed on June 20, 2020.

17. <u>Monthly Fee Statements</u>. In accordance with the Interim Compensation Order, each Retained Professional (as defined therein) is required to file monthly fee statements. To the extent there are no objections to a monthly fee statement, the relevant Retained Professional is authorized to file a certification of no objection, after which the Debtors are authorized to pay such professional eighty percent (80%) of the fees and one hundred percent (100%) of the expenses requested in such monthly fee statement. Interim Compensation Order ¶ 2(f). Pursuant to the

Interim Compensation Order, Milbank submitted the following monthly fee statements (each a "Monthly Fee Statement"):

    a.   On April 20, 2020, Milbank filed its thirteenth fee statement for the period from February 1, 2020 through February 29, 2020 [Docket No. 6797] (the "Thirteenth Fee Statement"). The Thirteenth Fee Statement sought: (i) compensation for services rendered, in the amount of $1,296,101.25; and (ii) reimbursement of actual and necessary expenses incurred in connection with such services, in the amount of $80,249.66.

    b.   On May 18, 2020, Milbank filed its fourteenth fee statement for the period from March 1, 2020 through and including March 31, 2020 [Docket No. 7373] (the "Fourteenth Fee Statement"). The Fourteenth Fee Statement sought: (i) compensation for services rendered, in the amount of $1,582,052.00; and (ii) reimbursement of actual and necessary expenses incurred in connection with such services, in the amount of $38,785.73.

    c.   On June 11, 2020, Milbank filed its fifteenth fee statement for the period from April 1, 2020 through and including April 30, 2020 [Docket No. 7892] (the "Fifteenth Fee Statement"). The Fifteenth Fee Statement sought: (i) compensation for services rendered, in the amount of $1,137,697.00; and (ii) reimbursement of actual and necessary expenses incurred in connection with such services, in the amount of $13,174.38.

    d.   On June 29, 2020, Milbank filed its sixteenth fee statement for the period from May 1, 2020 through and including May 31, 2020 [Docket No. 8189] (the "Sixteenth Fee Statement"). The Sixteenth Fee Statement sought: (i) compensation for services rendered, in the amount of $926,672.50; and (ii) reimbursement of actual

and necessary expenses incurred in connection with such services, in the amount of $14,615.08.[1]

18.     Milbank has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in the Chapter 11 Cases.  No promises have been received by Milbank or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## RELIEF REQUESTED

19.     By this Fourth Interim Application, Milbank seeks: (i) interim allowance and award of 100% of the compensation for professional services rendered by Milbank, as counsel to the Committee, during the Compensation Period in the amount of $4,942,522.75; (ii) reimbursement of actual and necessary expenses incurred by Milbank in connection with such services during the Compensation Period in the amount of $146,824.85; and (iii) the release of the Holdback.

20.     As stated in the certification (the "Kreller Certificate") attached hereto as **Exhibit G**, which certifies Milbank's compliance with the Fee Guidelines, all of the services for which compensation is sought herein were rendered solely for or on behalf of the Committee in connection with these cases.

21.     Pursuant to the Interim Compensation Order, Milbank has already received payment for the Compensation Period in the total amount of $2,421,557.99.  Milbank seeks further payment of $2,667,789.61 pursuant to this Fourth Interim Application, which amount represents

---

[1]     The objection deadlines for the Thirteenth Fee Statement, the Fourteenth Fee Statement and the Fifteenth Fee Statement expired on May 11, 2020, June 8, 2020 and July 2, 2020, respectively.  No objections were filed with respect to the Thirteenth, Fourteenth or Fifteenth Fee Statements, and a *Certificate of No Objection* has been filed with respect to each [Docket Nos. 7157, 7845 and 8271, respectively].  The objection deadline with respect to the Sixteenth Fee Statement (filed on June 29, 2020) has not yet passed, thus, the amounts requested therein have not yet been allowed.  To date, no objections have been filed with respect this fee statement either.

the portion of Milbank's fees for legal services rendered and expenses incurred during the Compensation Period not previously paid to Milbank pursuant to the Monthly Fee Statements.

22.     The fees sought by this Fourth Interim Application reflect an aggregate of 4,485.70 hours of attorney and paraprofessional time spent and recorded in performing services to the Committee during the Compensation Period, at a blended average hourly rate of $1,101.84 for both attorneys and paraprofessionals.  The blended hourly rate for attorneys is $1,148.47.

23.     The fees charged by Milbank in these cases are billed in accordance with Milbank's existing billing rates and procedures in effect during the Compensation Period.  The rates Milbank charges for the services rendered by its professionals in these cases generally are the same rates Milbank charges for professional services rendered in comparable bankruptcy and non-bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive legal market.

24.     Copies of Milbank's invoices detailing the services rendered and expenses incurred during the Compensation Period are attached to the Monthly Fee Statements, which have been filed on the docket and furnished to the Debtors, counsel to the TCC, the U.S. Trustee and the Fee Examiner. Milbank has provided the Fee Examiner and U.S. Trustee with the Monthly Fee Statements in an electronic LEDES format Milbank believes is acceptable to these parties.

25.     Milbank has made every effort to ensure that this Fourth Interim Application complies with the Fee Guidelines and Fee Protocol to the extent applicable.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED

26. In the ordinary course of its practice, Milbank maintains written records of the time expended by professionals and paraprofessionals in the rendition of professional services.[2] A chart showing the name of each relevant professional or paraprofessional, each attorney's year of bar admission, the aggregate time expended by each such professional or paraprofessional, the hourly billing rate for each such professional or paraprofessional in effect during the Compensation Period, and the amount requested for each such professional or paraprofessional is attached hereto as **Exhibit A**. A schedule of the project categories and amounts for which compensation is requested in each category is attached hereto as **Exhibit B**.

27. In the ordinary course of its practice, Milbank also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the performance of professional services, all of which are available for inspection. A detailed summary of the expenses incurred during the Compensation Period is attached hereto as **Exhibit C**.

28. Milbank respectfully submits that the services that it has rendered on behalf of the Committee during the Compensation Period were necessary and appropriate and have directly contributed to the effective administration of these cases.

29. Annexed hereto as **Exhibit D** is a summary and comparison of the aggregate blended hourly rates billed by Milbank's timekeepers in all domestic offices to non-bankruptcy matters during the preceding fiscal year and the blended hourly rates billed to the Debtors during the Compensation Period.

30. Milbank discussed its rates, fees, and staffing with the Committee at the outset of its retention in these cases. The Committee is aware of the complexities of these cases, the many

---

[2] Copies of these computerized records (as modified to address privileged and confidential matters) have been filed on the docket with the Monthly Fee Statements and furnished to the Debtors, the TCC, the U.S. Trustee and the Fee Examiner.

issues that need to be addressed, the various disciplines involved, and that the staffing needs are dynamic and based on a number of factors, many of which are unpredictable, including the activities of other parties in interest in these cases.[3] **Exhibit E** is the *Certification of Thomas R. Kreller*, certifying certain matters addressed in this Fourth Interim Application.

## Summary of Services Performed by Milbank by Project Code

31.     The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed.  Rather, it merely highlights certain project billing categories areas in which significant services were rendered by Milbank, as well as identifies some of the issues Milbank was required to address.  Detailed descriptions of the day-to-day services provided by Milbank and the time expended performing such services in each project billing category were attached as exhibits to the Monthly Fee Statements.  Such detailed descriptions demonstrate that Milbank was heavily involved in the performance of services for the Committee on a daily basis, including night and weekend work, often under extreme time constraints, to meet the needs of the Committee.

## Automatic Stay
(Fees: $5,892.50; Hours: 6.70)

32.     During the Compensation Period, Milbank attorneys reviewed various motions asking the Court to: (a) lift the automatic stay; (b) abstain from addressing certain matters; and/or (c) find that the automatic stay did not apply, including those filed by, among others: (i) Kayla Ruhnke and E.R.; (ii) San Joaquin Irrigation District; (iii) Adam Cronin; (iv) Sarah Pazdan; (v) Laurie Deuschel; and (vi) numerous appellants in a Ninth Circuit Court of Appeals case related to Hinkley, CA.  In connection with the various stay motions, Milbank researched legal issues

---

[3]     While Milbank has previously provided the Committee its budgets and staffing plans for earlier interim periods, given that the Committee has been dissolved at this time, Milbank believed that providing a budget and staffing plan for the Compensation Period was not necessary.

where necessary, drafted memoranda regarding the issues raised therein, and corresponded and worked with counsel to the Debtors to address and resolve any issues where possible.

**Bankruptcy Litigation**
(Fees: $726,238.50; Hours: 726.90)

33. During the Compensation Period, Milbank attorneys engaged in various litigation and discovery related activities in connection with: (i) settlements between the Debtors, the United States Department of Homeland Security/Federal Emergency Management Agency ("FEMA"), California Governor's Office of Emergency Services ("Cal OES"), and other federal and state agencies of damages claims arising from the 2017 and 2018 wildfires; (ii) the Committee's PPI Appeal and related papers; (iii) the TCC Discovery Motion; (iv) diligence received from the TCC with respect to assignment of potential causes of action of the Debtors to the Fire Victim Trust; (v) the TCC Standing Motion; (vi) the *Ex Parte Applications of the Official Committee of Tort Claimants Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of An Order Authorizing Service of a Subpoena* on various of the Debtors' vendors [Docket No. 6342, et al.]; (vii) appeals to the Ninth Circuit Court of Appeals related to the adversary proceeding initiated by the Debtors for a preliminary injunction against the FERC (Adv. Pro. 19-03003); (viii) *Motion for the Appointment of an Examiner of Voting Procedural Irregularities* [Docket No. 7568]; and (ix) the criminal probationary proceedings before Judge Alsup in *U.S. v. Pacific Gas and Electric Co.*, Case No. 14-cr-00175 (WHA) (N.D. Cal.).[4] Among other things, Milbank attorneys, as applicable, reviewed underlying pleadings, including motions, briefs, objections, and proposed orders, researched relevant legal issues and diligenced factual issues, received and reviewed discovery in connection with certain matters, advised the Committee and members thereof, drafted

---

[4] Where appropriate, Milbank moved litigation time to other submatters, such as plan or wildfire matters below.

related memoranda for the Committee, prepared and filed pleadings in support of the Committee's positions, and participated in hearings before the Court with respect to these issues.

**Case Administration**
(Fees: $133,970.50; Hours: 191.40)

34. During the Compensation Period, Milbank expended substantial time attending to various case administrative matters, including among other things: (i) preparing and updating an internal calendar of critical dates for the Committee; (ii) maintaining an internal task list to monitor the status of pending matters; (iii) arranging telephonic and video hearing lines for Milbank attorneys' participation in remote hearings; (iv) coordinating critical work streams among Milbank attorneys and the Committee's various other advisors; and (v) reviewing the docket for new pleadings and distributing such filings to the Committee and its advisors along with summaries of such pleadings. Milbank attorneys endeavored to minimize such administration matters while at the same time ensuring that all of the Committee's various activities were performed in the most expeditious manner possible.

**Plan of Reorganization**
(Fees: $1,752,573.00; Hours: 1,544.40)

35. The Debtors filed the first iteration of their chapter 11 plan on September 9, 2019 [Docket No. 3841] which was subsequently amended numerous times following settlements with various of the Debtors' constituencies and other case developments. The remarkable efforts of all parties in these Chapter 11 Cases culminated in the Debtors' filing of their final chapter 11 plan dated June 19, 2020 [Docket No. 8048] and the Plan's confirmation on June 20, 2020.

36. Throughout this time, Milbank attorneys reviewed the various issues raised in the Debtors' Plan, Disclosure Statement, Solicitation Procedures Motion, *Notice of Filing of Plan Supplement in Connection with Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* [Docket. No. 7037] (as amended, modified, or supplemented from time to time, the "Plan Supplement"), the *Debtors' Motion for Entry of an*

14

*Order (I) Approving Case Resolution Contingency Process and (II) Granting Related Relief* [Docket No. 6398] (the "CRCP Motion"), and the Noteholder RSA. Importantly, Milbank engaged in vigorous negotiations with the Debtors to consensually resolve various plan and disclosure statement issues and drafted and filed a limited objection to confirmation of the Debtors' then-filed plan of reorganization [Docket No. 7300] as well as a response to the Disclosure Statement and Solicitation Procedures Motion [Docket No. 6154]. In addition, Milbank participated in status conferences for and advised the Committee with respect to the estimation proceeding before the Northern District of California.

37. In connection with the Plan, Milbank attorneys researched and analyzed a number of other confirmation issues, including, but not limited to, release, exculpation, discharge, impairment, and classification of claims and interests. Milbank attorneys held numerous meetings and calls with various parties with respect to the various plans and related documents and motions, drafted memoranda with respect to issues raised in such documents for dissemination to the Committee, and participated in hearings before the Court with respect to the Plan.

**Communications with Client**
(Fees: $325,757.50; Hours: 280.30)

38. During the Compensation Period, in coordination with the Committee's financial advisors, Milbank attorneys spent a substantial amount of time coordinating, preparing materials (including meeting agendas, factual and legal memoranda, summaries, and presentations) for Committee meetings. In advance of such meetings, Milbank attorneys drafted memoranda for the Committee summarizing and providing analyses and recommendations with respect to each substantive matter that was scheduled for an upcoming hearing or was otherwise active. Milbank attorneys also drafted substantive memoranda on numerous case topics, including, among other things: (i) various iterations of the Plan; (ii) the Disclosure Statement; (iii) the Solicitation Procedures; (iv) the Exit Financing Motion; (v) 2020 Compensation Motion; (vi) certain executory

contract motions; (vii) the release provisions contained in the Plan; (viii) the TCC's Standing and Discovery Motions; (ix) certain retention applications filed by the Debtors and other parties; and (x) each of the Debtors' other substantive motions.

39.     Milbank attorneys also prepared for and participated in numerous calls and other communications, including via email, with individual Committee members and their counsel, as well as with the subcommittees established by the Committee.

**Communications with Unsecured Creditors**
(Fees: $17,284.50; Hours: 13.10)

40.     During the Compensation Period, in accordance with the Committee's statutory duties under section 1102(b) of the Bankruptcy Code, Milbank attorneys responded electronically and telephonically to various inquires received from the Debtors' unsecured creditors regarding these cases.  Milbank also maintained frequent contact with advisors to major constituencies in these cases, including the Debtors, the TCC, the AHC and the Subrogation Group, to discuss open issues and upcoming matters important to the Committee, communicate the Committee's positions and seek mutually acceptable courses of action.

**Committee Meetings**
(Fees: $368,416.50; Hours: 285.40)

41.     Given the significant size of the Debtors' cases and the sheer amount of materials that the Committee's advisors were tasked with handling, including multiple plans, the Disclosure Statement, the Exit Financing Motion, and other substantial motions and applications, Milbank conducted regular telephonic meetings with the Committee (collectively, the "Committee Meetings").  During Committee Meetings, Milbank attorneys discussed key issues with the Committee, including all of the upcoming matters scheduled for hearing by the Court.  Prior to such meetings, Milbank attorneys reviewed pending matters requiring the Committee's attention and the underlying documentation and coordinated advice with the Committee's other professionals.  Milbank attorneys also drafted agendas for all such meetings and distributed

Case: 19-30088   Doc# 8411   Filed: 07/15/20   Entered: 07/15/20 15:37:43   Page 19 of 39

pertinent information in advance to the Committee. Thereafter, Milbank discussed each of these matters with the Committee, as well as individual Committee members on separate occasions, and assisted the Committee in formulating a position with respect to each matter. Milbank also provided Committee members with regular, and sometimes daily, update emails regarding the status of these cases.

### General Case Strategy
(Fees: $457,858.00; Hours: 369.00)

42. As Committee counsel, Milbank expended significant time organizing the Committee by, among other things: (i) conducting numerous calls, both internally, with Milbank attorneys, and externally, with the Committee's other professionals to discuss and analyze pending motions and applications, as well as other tasks and projects; (ii) corresponding with the Debtors and their advisors regarding various work streams and diligence items; and (iii) analyzing new pleadings filed on the bankruptcy docket.

43. Further, on a weekly basis during the Compensation Period, Milbank attorneys led advisors-only calls with the Committee's financial advisors to prepare for regular Committee meetings and other matters. During such calls, the Committee's advisors discussed general case strategy, issues that may be appropriate for special attention by the Committee and proposed recommendations with respect to such issues. Also during the Compensation Period, Milbank attorneys drafted minutes to memorialize the Committee's resolutions during Committee meetings.

### Court Hearings
(Fees: $460,127.00; Hours: 423.70)

44. During the Compensation Period, Milbank attorneys spent considerable time preparing for and attending (either in person or telephonically) all significant hearings and Court conferences in these cases and related adversary proceedings. Significant hearings were held with regard to: (i) the Noteholders' and TCC's RSAs; (ii) the Exit Financing Motion; (iii) the *Omnibus*

*Objection of the Official Committee of Tort Claimants (Substantive) to No Liability Claims Filed by the Department of Homeland Security/Federal Emergency Management Agency (Claim Nos. 59692, 59734 & 59783* [Docket No. 4943] (the "FEMA Claims Objection") and the *Omnibus Objection of the Official Committee of Tort Claimants (Substantive) to Claims Filed by California Governor's Office of Emergency Services* [Docket No. 5096] (the "Cal OES Claims Objection"); (iv) the TCC Discovery Motion; (v) the Disclosure Statement and Solicitation Procedures Motion; (vi) the CRCP Motion; (vii) the *Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Cathy Yanni as Claims Administrator Nunc Pro Tunc to January 13, 2020 through the Effective Date of the Resolution Trust Agreement* [Docket No. 5723] and *Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Hon. John K. Trotter (Ret.) as Trustee Nunc Pro Tunc to January 13, 2020 through the Effective Date of the Resolution Trust Agreement* [Docket No. 5726] (together, the "Trotter & Yanni Retention Applications"); (viii) the TCC Standing Motion; (ix) the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Fed. R. Bankr. P. Rule 9019 for Entry of an Order Approving (I) Agreement and Settlement with People of the State of California and (II) Granting Related Relief* [Docket No. 6418] (the "Butte County Agreement Motion"); (x) Plan confirmation hearings; and (xi) numerous other motions.

45. Milbank attorneys communicated in advance of hearings with other parties in interest, including the Debtors, the TCC, the Subrogation Group, the AHC and the U.S. Trustee regarding the relief requested and any issues raised thereby, in an effort to consensually resolve concerns prior to the applicable hearing. Given the nature of these cases, many matters went forward during the Compensation Period on a contested basis, necessitating active Committee participation to advance and protect the interests of its constituency. Moreover, because the issues

Case: 19-30088    Doc# 8411    Filed: 07/15/20    Entered: 07/15/20 15:37:43    Page 21 of 39

that arose implicated numerous nuanced areas of the law, the contribution of Milbank attorneys spanning multiple specialties was necessary to properly represent the Committee.

**Non-Working Travel**
(Fees: $31,829.25; Hours: 56.10)

46.     Prior to the outbreak of the COVID-19 pandemic, during the Compensation Period, Milbank attorneys were required to travel to and from San Francisco on a regular basis – sometimes making multiple trips in a single week – for court hearings, meetings with the Debtors and their respective advisors. Efforts were made to use travel time productively, for performing work for the estates or for other client-related matters, but this was not always possible or practicable. Pursuant to an agreement with the Fee Examiner, as directed by the Court, non- working travel time spent by Milbank attorneys traveling to and from meetings, conferences, hearings and similar events in connection with Milbank's representation of the Committee was either not billed or limited to two (2) hours for each way of a trip.

**Retention/Fee Applications**
(Fees: $131,711.50; Hours: 140.90)

47.     During the Compensation Period, Milbank worked with the Committee and its financial advisors to draft and/or finalize each professional's fee applications and exhibits thereto. Specifically, Milbank prepared its own fee applications and assisted with the preparation of the fee applications of FTI Consulting, Inc., as the Committee's financial advisor, Centerview Partners LLC, as the Committee's investment banker, and Axiom Advisors, as the Committee's government affairs consultant.

**Wildfire Claims and Treatment**
(Fees: $36,817.00; Hours: 32.60)

48.     During the Compensation Period, Milbank attorneys researched and addressed a host of issues for the Committee related to mass tort cases, including the claims estimation process

and potential mechanisms or structures to address those claims and other liability issues. In addition, Milbank reviewed various issues related to the possible treatment of the wildfire claims.

49. Following the entry into the Subrogation and TCC RSAs, Milbank reviewed and analyzed the related materials and reviewed drafts of the various documents intended to govern the trusts and distribution of funds to be made pursuant to these agreements, including the various trust agreements, claims procedures and TCC Standing Motion.

## ALLOWANCE OF COMPENSATION

50. In light of the size and complexity of these Chapter 11 Cases, the professional services rendered by Milbank required the expenditure of substantial time and effort by a large but lean team of attorneys and a high degree of professional competence and expertise across multiple specialties. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited unsecured creditors and the Debtors' estates.

51. The interim allowance of compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in Bankruptcy Code section 331:

> … any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

52. With respect to the level of compensation, Bankruptcy Code section 330(a)(1)(A) provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered[.]" See In re Manoa Finance Co., 853 F.2d 687, 689 (9th Cir. 1988) (stating that section 330 authorizes reasonable compensation for certain services and costs). Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and expertise in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). The clear Congressional intent and policy expressed by the statute is to provide for adequate compensation to professionals in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases. In re Fleming Cos., 304 B.R. 85, 92 (Bankr. D. Del. 2003) ("in enacting the Bankruptcy Code provisions which allow compensation to attorneys, Congress sought to encourage qualified attorneys to develop bankruptcy expertise by assuring that they would be compensated at the *same level* as their peers in other practice areas.").

53.     The total time spent by Milbank attorneys and paraprofessionals during the Compensation Period was 4,485.70 hours and has a fair market value of $4,942,522.75.  As demonstrated by this Fourth Interim Application and supporting exhibits, Milbank submits that its services were rendered economically and without unnecessary duplication of efforts. In addition, the work involved, and thus the time expended, was carefully assigned in consideration of the experience and expertise required for each particular task.  The compensation requested in the Fourth Interim Application is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code.

21

54.     As reflected in this Fourth Interim Application and the supporting documents, Milbank spent its time efficiently and without unnecessary duplication of time. Nonetheless, Milbank has voluntarily agreed to reduce its fees during the Compensation Period in the amount of $450,070.00 (the "Voluntary Reduction").[5]

## EXPENSES

55.     Bankruptcy Code Section 330 also authorizes "reimbursement for actual, necessary expenses" incurred by a retained professional. 11 U.S.C. § 330(a)(1)(B). "Once documented, 'actual and necessary expenses' are automatically reimbursable." In re Wendy's of Montana, Inc., 111 B.R. 314, 315 (Bankr. N.D. Mont. 1988).  Milbank seeks reimbursement for actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $131,711.50.  The disbursements have been incurred in accordance with Milbank's normal practice of charging clients for expenses clearly related to and required by particular matters.  In accordance with section 330 of the Bankruptcy Code, Milbank seeks reimbursement only for the actual cost of such expenses to Milbank.  Milbank charges for these expenses at rates consistent with those charged to Milbank's other bankruptcy clients, which rates are equal to or less than the rates charged by Milbank to its non-bankruptcy clients. Milbank has minimized these expenses to the greatest extent possible.  A detailed summary of the expenses is attached hereto as **Exhibit C**.  Copies of supporting documentation for the out-of-pocket expenses (receipts, statements, invoices, etc.) will be provided to the Court, the U.S. Trustee and the Fee Examiner upon request.

56.     Milbank's hourly billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial

---

[5]   Milbank reserves the right to seek allowance of all or a portion of such fees in connection with its final fee application or in advance thereof.

overtime, postage and certain other office services, since the needs of each client for such services differ. Milbank believes that it is more appropriate to charge each client only for the expenses actually incurred in performing services therefor.

57. Milbank seeks reimbursement at the following rates for the following expenses: (i) ten cents ($0.10) per page for photocopying; (ii) ten cents ($0.10) per page for black and white printing; and (iii) ten cents ($0.10) per page for color printing. Milbank's charges for internal duplicating are well below the $.50 per page rate authorized by statute for copies made by the clerks of the United States Courts. See 28 U.S.C. § 1914(b); Judicial Conference Schedule of Fees n.4. Milbank currently does not charge for facsimile transmissions. Milbank has negotiated a discounted transactional rate for computer assisted legal research. Milbank is not seeking reimbursement of hourly fees of its secretarial services in this Fourth Interim Application. Further, in providing or obtaining services from third parties that are reimbursable by clients, Milbank does not include in such reimbursable amount any costs of investment, equipment, or capital outlay.

58. Throughout the Compensation Period, Milbank has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

**NO FEE SHARING; DISINTERESTEDNESS OF MILBANK;
NO PRIOR APPLICATIONS**

59. No agreement or understanding exists between Milbank and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

60. No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

**RESERVATION OF RIGHTS**

61. Although every effort has been made to include all fees and expenses incurred during the Compensation Period, some fees and expenses incurred during the period might not be

included in this Fourth Interim Application due to delays caused in connection with the accounting and processing of such time and expenses. Accordingly, Milbank reserves the right to make further application to this Court for allowance of such fees and expenses incurred during this Compensation Period but not included herein.

### NOTICE

62.     No trustee or examiner has been appointed in the Chapter 11 Cases. Pursuant to the Interim Compensation Order, notice of this Application has been served upon: (i) the Debtors c/o Pacific Gas & Electric Company, 77 Beale Street, San Francisco, CA 94105 (Attn: Janet Loduca, Esq.); (ii) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq. and Rachael Foust, Esq.) and Keller & Benvenutti LLP, 650 California Street, Suite 1900, San Francisco, CA 94108 (Attn: Tobias S. Keller, Esq. and Jane Kim, Esq.); (iii) the Office of the United States Trustee for Region 17, 450 Golden Gate Avenue, 5th Floor, Suite #05-0153, San Francisco, CA 94102 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (iv) counsel for the TCC, Baker & Hostetler LLP, 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509 (Attn: Eric Sagerman, Esq. and Cecily Dumas, Esq.); and (v) counsel to the Fee Examiner, Scott McNutt, 324 Warren Road, San Mateo, CA 94402 (Attn: Scott McNutt).

### CONCLUSION

WHEREFORE, Milbank respectfully requests that the Court enter an order: (i) allowing Milbank (a) interim compensation for professional services rendered as counsel for the Committee during the Compensation Period in the amount of $4,942,522.75; and (b) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $146,824.85, for a total award of $5,089,347.60; (ii) authorizing and directing the Debtors to pay (to the extent not previously paid in accordance with the Interim Compensation Order) to Milbank $2,667,789.61 which is an amount equal to the difference between (a) this $5,089,347.60 award;

and (b) $2,421,557.99, the total of all amounts that the Debtors have previously paid to Milbank

pursuant to the Interim Compensation Order for services rendered and expenses incurred during

the Compensation Period; and (iii) granting such further relief as is just and appropriate.


Dated: July 15, 2020

Respectfully submitted,

MILBANK LLP

By: */s/ Thomas R. Kreller*
Dennis F. Dunne (admitted pro hac vice)
Samuel A. Khalil (admitted pro hac vice)
Gregory A. Bray
Thomas R. Kreller

*Counsel for the Official Committee of Unsecured Creditors*

25

# EXHIBIT A
## COMPENSATION BY PROFESSIONAL

The attorneys who rendered professional services in these Chapter 11 Cases from February 1, 2020 through May 31, 2020 (the "Fee Period") are:

| NAME OF PROFESSIONAL PARTNERS, COUNSEL & SENIOR ATTORNEYS: | DEPARTMENT | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| William Bice | Global Project, Energy and Infrastructure Finance | 1996 | $1,615 | 141.00 | $227,715.00 |
| Gregory Bray | Financial Restructuring | 1984 | $1,615 $807.5* | 384.10 6.30 | $620,321.50 $5,087.25 |
| Dennis Dunne | Financial Restructuring | 1991 | $1,615 | 115.60 | $186,694.00 |
| Russell Kestenbaum | Tax | 1999 | $1,615 | 16.90 | $27,293.50 |
| Thomas Kreller | Financial Restructuring | 1992 | $1,615 $807.5* | 182.00 4.00 | $293,930.00 $3,230.00 |
| Andrew Leblanc | Litigation | 2000 | $1,615 $807.5* | 41.60 4.00 | $67,184.00 $3,230.00 |
| Alan Stone | Litigation | 1988 | $1,615 $807.5* | 120.80 8.00 | $195,092.00 $6,460.00 |
| Manan Shah | Tax | 2002 | $1,425 | 5.40 | $8,316.00 |
| Craig Price | Financial Restructuring | 2000 | $1,175 | 770.90 | $905,807.50 |
| Samir Vora | Litigation | 2007 | $1,175 $587.5* | 585.90 6.00 | $688,432.50 $3,525.00 |
| Lena Mandel | Financial Restructuring | 1991 | $1,175 | 176.10 | $206,917.50 |
| **Total Partners, Counsel & Senior Attorneys:** | | | **$1,342.85** | **2,568.60** | **$3,449,235.75** |

1

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT | YEAR ADMITTED* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Kamel Aitelaj | Litigation | 2008 | $1,045 | 25.60 | $26,752.00 |
| James Beebe | Tax | 2011 | $1,045 | 8.00 | $8,360.00 |
| Erin Dexter | Litigation | 2014 | $995 | 310.70 | $309,146.50 |
| Rachael Franzoia | Financial Restructuring | 2013 | $995 | 11.30 | $11,243.50 |
| Jordan Weber | Financial Restructuring | 2015 | $995 / $497.5* | 114.00 / 8.70 | $113,430.00 / $4,328.25 |
| Chad Richards | Global Project, Energy and Infrastructure Finance | 2015 | $965 | 93.80 | $90,517.00 |
| Christina Skaliks | Tax | 2015 | $965 | 6.40 | $6,176.00 |
| Julie Wolf | Litigation | 2016 | $965 | 62.90 | $60,698.50 |
| Kavon Khani | Litigation | 2017 | $920 | 476.10 | $438,012.00 |
| Megan McGuiggan | Litigation | 2018 | $870 | 1.60 | $1,392.00 |
| Margherita Capolino | Litigation | 2019 | $770 | 33.60 | $25,872.00 |
| Benjamin Heller | Tax | 2016 | $770 | 3.30 | $2,541.00 |
| Andrew Abell | Financial Restructuring | 2020 | $625 | 150.20 | $93,875.00 |
| Anna Bergstrom | Litigation | 2020 | $625 / $312.5* | 228.10 / 4.00 | $142,562.50 / $1,250.00 |
| Nicholas Prey | Financial Restructuring | Not Yet Admitted | $625 | 1.10 | $687.50 |
| Jamie Santos Chavez | Financial Restructuring | 2020 | $625 | 12.50 | $7,812.50 |
| Jeff Snyder | Financial Restructuring | 2019 | $625 / $312.50 | 93.60 / 15.10 | $58,500.00 / $4,718.75 |
| **Total Associates:** | | | **$847.81** | **1,660.60** | **$1,407,875.00** |

| NAME OF PARAPROFESSIONALS: | DEPARTMENT | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Angel Anderson | Litigation | $365 | 5.50 | $2,007.50 |
| Abayomi Ayandipo | Litigation | $365 | 20.50 | $7,482.50 |

Case: 19-30088   Doc# 8411   Filed: 07/15/20   Entered: 07/15/20 15:37:43   Page 30 of 39

| NAME OF PARAPROFESSIONALS: | DEPARTMENT | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Jenifer Gibbs | Litigation | $365 | 8.00 | $2,920.00 |
| David McCracken | Litigation | $365 | 46.80 | $17,082.00 |
| Ricky Windom | Litigation | $340 | 8.80 | $2,992.00 |
| Ishmael Taylor-Kamara | Financial Restructuring | $320 | 9.60 | $3,072.00 |
| Charmaine Thomas | Financial Restructuring | $320 | 122.80 | $39,296.00 |
| Jacqueline Brewster | Financial Restructuring | $300 | 31.70 | $9,510.00 |
| James Mcguire | Practice Support | $375 | 2.80 | $1,050.00 |
| **Total Paraprofessionals and other non-legal staff:** | | **$332.99** | **256.50** | **$85,412.00** |

| PROFESSIONALS<br><br>TOTALS: | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Counsel | $1,342.85 | 2,568.60 | $3,449,235.75 |
| Associates | $847.81 | 1,660.60 | $1,407,875.00 |
| Paraprofessionals and other non-legal staff | $332.99 | 256.50 | $85,412.00 |
| **Blended Attorney Rate** | **$1,148.47** | **4,229.20** | **$4,857,110.75** |
| **Total Fees Incurred** | **$1,101.84** | **4,485.70** | **$4,942,522.75** |

Case: 19-30088   Doc# 8411   Filed: 07/15/20   Entered: 07/15/20 15:37:43   Page 31 of 39

## EXHIBIT B

## COMPENSATION BY PROJECT CATEGORY

| Project Category | Total Hours | Total Fees |
|---|---|---|
| 00003 Automatic Stay | 6.70 | $5,892.50 |
| 00004 Bankruptcy Litigation | 726.90 | $736,238.50 |
| 00007 Case Administration (Dockets updates, WIP and calendar) | 191.40 | $133,970.50 |
| 00009 Plan of Reorganization | 1,544.40 | $1,752,573.00 |
| 00010 Communications with Client | 280.30 | $325,757.50 |
| 00011 Communications with Unsecured Creditors | 13.10 | $17,284.50 |
| 00012 Committee Meetings | 285.40 | $368,416.50 |
| 00016 DIP Financing/Cash Management/Exit Financing | 39.70 | $47,128.00 |
| 00018 General Case Strategy(includes calls with client | 369.00 | $457,858.00 |
| 00020 Court Hearings | 423.70 | $460,127.00 |
| 00022 Non-Bankruptcy Litigation | 2.00 | $3,230.00 |
| 00023 Non-Working Travel | 56.10 | $31,829.25 |
| 00027 CPUC | 305.50 | $359,027.50 |
| 00029 Retention/Fee Applications | 140.90 | $131,711.50 |
| 00032 Subrogation Issues | 6.60 | $7,699.50 |
| 00034 Tax Issues | 7.00 | $9,520.00 |
| 00038 Wildfire Claims and Treatment | 32.60 | $36,817.00 |
| 00039 Employee Benefits/Severance Issues | 54.40 | $57,442.00 |
| **Total** | **4,485.70** | **$4,942,522.75** |

**<u>EXHIBIT C</u>**

**EXPENSE SUMMARY**

| Expense Category | Total Expenses |
|---|---|
| Airfreight/Messenger | $1,260.78 |
| Cab Fares/Local Transportation | $5,017.79 |
| Computerized Database Research | $77,228.17 |
| Filing Fees | $1,278.40 |
| Lodging | $26,902.89 |
| Meals | $5,233.21 |
| Outside Word Processing | 917.50 |
| Photocopies/Printing | $3,288.09 |
| Telephone | $3,043.91 |
| Transcript Expenses | $9,923.83 |
| Travel | $12,730.28 |
| **TOTAL** | **$146,824.85** |

# EXHIBIT D

## CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURES

| Category of Timekeeper | Blended Hourly Rate | |
|---|---|---|
| | **Billed Firm-wide for preceding Fiscal year (FY2019)**[1] | **Billed February1, 2020 through May 31, 2020** |
| Partner | $1,221.77 | $1,597.12 |
| Counsel | $911.75 | $1,172.71 |
| Associate | $668.38 | $847.81 |
| Paralegal | $261.99 | $332.99 |
| Aggregated | $755.31 | $1,101.84 |

---

[1] As requested in the U.S. Trustee Guidelines, the calculations in this column exclude members of Milbank's Financial Restructuring Group.

1

2                               **EXHIBIT E**

3                          **KRELLER DECLARATION**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| - and - | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | **CERTIFICATION OF THOMAS R. KRELLER REGARDING FOURTH INTERIM FEE APPLICATION OF MILBANK LLP FOR ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM FEBRUARY 1, 2020 THROUGH MAY 31, 2020** |
| ☐ Affects PG&E Corporation | |
| ☐ Affects Pacific Gas and Electric Company | |
| ☑ Affects both Debtors | |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

1. I am a partner in the Financial Restructuring Group of the firm Milbank LLP ("Milbank"), counsel to the official committee of unsecured creditors (the "Committee") in these Chapter 11 Cases. I am admitted to the bar of the State of California.

2. I make this certification regarding the *Fourth Interim Fee Application of Milbank LLP for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period from February 1, 2020 through May 31, 2020* (the "Fourth Interim Fee Application"). I am familiar with: (i) the *Order Pursuant to 11 U.S.C. §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 701] (the "Interim Compensation Order"); (ii) the *Guidelines for*

*Compensation and Expense Reimbursement of Professionals and Trustees for the Northern District of California*, dated February 19, 2014 (the "Local Guidelines"); (iii) the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "U.S. Trustee Guidelines"); and (iv) the *Fee Examiner Protocol for Chapter 11 Cases of PG&E Corporation and Pacific Gas and Electric Company*, filed on October 24, 2019 [Docket No. 4473-1] (the "Fee Examiner Protocol" and collectively, the "Fee Guidelines").

3.      I have reviewed the Fourth Interim Fee Application and hereby certify that, to the best of my knowledge, information and belief, it complies with the Fee Guidelines and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.  The fees and disbursements sought are billed at rates in accordance with those generally charged by Milbank and generally accepted by Milbank's clients.  I certify that: (i) all of the services for which compensation is sought in the Fourth Interim Fee Application were rendered for or on behalf of the Committee solely in connection with the Chapter 11 Cases; and (ii) the Fourth Interim Fee Application is being served on the Debtors, the TCC, the U.S. Trustee and the Fee Examiner in accordance with the Interim Compensation Order.  Additionally, I hereby certify that, in accordance with the Interim Compensation Order, and in connection with preparing this Fourth Interim Fee Application, Milbank has made a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures set forth in the U.S. Trustee Guidelines.  To that end, Milbank specifically responds to certain questions identified in the U.S. Trustee Guidelines as follows:

Question 1:   Did Milbank agree to any variations from, or alternatives to, Milbank's standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

Answer:      No.

| | | | |
|---|---|---|---|
| 1 | Question 2: | | If the fees sought in the Fourth Interim Fee Application as compared to the fees budgeted for the time period covered by the Application are higher by 10% or more, did Milbank discuss the reasons for the variation with the client? |
| 2 | | | |
| 3 | | | |
| 4 | | Answer: | Milbank has discussed its fees with the Committee. Because the Debtors' Plan was confirmed and it has gone effective, the Committee has been dissolved. |
| 5 | | | |
| 6 | Question 3: | | Have any of the professionals included in the Fourth Interim Fee Application varied their hourly rate based on geographic location of the bankruptcy case? |
| 7 | | | |
| 8 | | Answer: | No. |
| 9 | Question 4: | | Does the Fourth Interim Fee Application include time or fees related to reviewing or revising time records or preparing, reviewing or revising invoices? |
| 10 | | | |
| 11 | | | |
| 12 | | Answer: | The Fourth Interim Fee Application includes a small amount of time and fees related to reviewing or revising time records for privileged or confidentiality and preparing, reviewing or revising invoices in connection with the preparation of Monthly Fee Statements relating to the period covered by this Fourth Interim Fee Application. |
| 13 | | | |
| 14 | | | |
| 15 | Question 5: | | Does the Fourth Interim Fee Application include time for fees for reviewing time records to redact any privileged or other confidential information? |
| 16 | | | |
| 17 | | Answer: | Yes. See above. |
| 18 | Question 6: | | Does the Fourth Interim Fee Application include any rate increases since retention in these cases: |
| 19 | | | |
| 20 | | Answer: | Yes. The Fourth Interim Fee Applications does include rate increases since retention in these cases. |
| 21 | | | |
| 22 | Question 7: | | Did the client agree when retaining Milbank to accept all future rate increases? If not, did Milbank inform the client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458? |
| 23 | | | |
| 24 | | Answer: | The client did not prospectively approve such rate increases but was notified at the outset of the engagement that Milbank's hourly rates are reviewed and revised from time to time. In accordance with ABA Formal Ethics Opinion 11-458, Milbank also notified the Committee at the outset of the representation that it need not agree to any modified rates or terms in order to have Milbank continue its representation of the Committee. |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Thomas R. Kreller*
Thomas R. Kreller