# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | **Bankruptcy Case** |
| **PG&E CORPORATION,** | **No. 19-30088 (DM)** |
| - and - | |
| **PACIFIC GAS AND ELECTRIC** | **Chapter 11** |
| **COMPANY,** | **(Lead Case)** |
| Debtors. | **(Jointly Administered)** |

## CERTIFICATE OF PUBLICATION

I, Sonia Akter, do declare and state as follows:

1.      I am employed at Prime Clerk LLC, the claims and noticing agent for the debtors in the above-referenced chapter 11 bankruptcy cases.

2.      This Certificate of Publication includes sworn statements verifying that the Notice of Entry of Confirmation Order and Occurrence of Effective Date of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 [Docket No. 8252], as conformed for publication, was published in the following publications and on the following dates:

| Publication Name | Date(s) of Publication | Exhibit Evidencing Publication |
|---|---|---|
| Del Norte Triplicate | July 10, 2020 | Exhibit A |
| Los Angeles Times | July 10, 2020 | Exhibit B |
| Napa Valley Register | July 10, 2020 | Exhibit C |
| Redding.Com | July 10, 2020 | Exhibit D |
| San Francisco Chronicle | July 10, 2020 | Exhibit E |
| The Bakersfield Californian | July 10, 2020 | Exhibit F |
| The Press Democrat | July 10, 2020 | Exhibit G |
| The Times-Standard | July 10, 2020 | Exhibit H |
| The Wall Street Journal | July 10, 2020 | Exhibit I |
| Chico Enterprise Record | July 13, 2020 | Exhibit J |

| | | |
|---|---|---|
| East Bay Times | July 13, 2020 | Exhibit K |
| Marin Independent Journal | July 13, 2020 | Exhibit L |
| San Jose Mercury News | July 13, 2020 | Exhibit M |
| The Fresno Bee | July 13, 2020 | Exhibit N |
| The Modesto Bee | July 13, 2020 | Exhibit O |
| The Record | July 13, 2020 | Exhibit P |
| The Sacramento Bee | July 13, 2020 | Exhibit Q |
| USA Today | July 13, 2020 | Exhibit R |
| Red Bluff Daily News | July 14, 2020 | Exhibit S |
| The Union | July 14, 2020 | Exhibit T |
| Ukiah Daily Journal | July 14, 2020 | Exhibit U |
| Mad River Union | July 15, 2020 | Exhibit V |
| Mount Shasta Area Newspapers | July 15, 2020 | Exhibit W |
| Paradise Post | July 15, 2020 | Exhibit X |
| San Francisco Examiner | July 15, 2020 | Exhibit Y |
| Siskiyou Daily News | July 15, 2020 | Exhibit Z |
| Trinity Journal | July 15, 2020 | Exhibit AA |
| Modoc County Record | July 16, 2020 | Exhibit BB |
| The Ferndale (California) | July 16, 2020 | Exhibit CC |

3.  I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct and that if called upon as a witness, I could and would competently testify thereto.

Executed this 21st day of July 2019, at New York, NY.

*/s/ Sonia Akter*

SONIA AKTER

**Exhibit A**

# Affidavit of Publication

## STATE OF CALIFORNIA, COUNTY OF DEL NORTE

I, Jessica Vallejo, a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years, and not a party to or interested in the above-entitled matter. I am the principal clerk of the printer of

## Del Norte Triplicate

A weekly newspaper of general circulation, printed and published in the City of Crescent City, County of Del Norte, and which newspaper has been adjudged a newspaper of general circulation by the Superior Court of the County of Del Norte, State of California, under the date of March 21, 1952, case number 7594; that the notice of which the annexed is a printed copy (set in type not smaller than nonpareil), has been published and not in any supplement thereof on the following dates, to-wit

**Account Name:**       **PG&E Corporation**
**Legal Description:**   **Legal Notice**
                         Ad #290353
                         Published: July 10, 2020

I certify (or declare) under penalty of perjury that the foregoing is true and correct. Dated at Crescent City, California, this 10 day of July 2020.

_____

*Signature*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:
**PG&E CORPORATION,**
    - and -
**PACIFIC GAS AND ELECTRIC COMPANY,**
                          **Debtors.**

Bankruptcy Case
No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF
EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT
CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

**PLEASE TAKE NOTICE** that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court") entered an order [Docket No. 8053] (the "Confirmation Order") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION.** In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole* source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the *sole* source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32z. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are a party shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject

filed by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "Cure Dispute"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

a. Pursuant to Section 8.3 of the Plan and Paragraph 35c. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d. of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claim and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

**WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP**

# *Wild Rivers Coast* CLASSIFIEDS

**PLACING A CLASSIFIED AD IS EASY AND FAST**

To place an ad call:
**541-813-1717**
**707-460-6727**
Mon.-Fri. 8:30 a.m.-5 p.m.

To place an ad online:
**www.CurryPilot.com**
**www.Triplicate.com**
Anytime

Visit us at:
**15957 US Hwy 101.,** Harbor, OR
**501 H. St.,** Crescent City, CA
Mon.-Fri. 8:30 a.m.-5 p.m.

---

## 711
### Home Medical Svs

**ATTENTION DIABETICS!** Save money on your diabetic supplies! Convenient home shipping for monitors, test strips, insulin pumps, catheters and more! To learn more, call now!
1-855-702-3408.
(Cal-SCAN)

**ATTENTION:**
**OXYGEN USERS!**
The NEW Inogen One G5. 1-6 flow settings. Designed for 24 hours oxygen use. Compact and Lightweight. Get a Free Info kit today:
1-844-359-3976
(CalScan)

Attention: Oxygen Users! Gain freedom with a Portable Oxygen Concentrator! No more heavy tanks and refills! Guaranteed Lowest prices! Call the Oxygen
Concentrator Store:
1-844-653-7402 (Cal SCAN)

Lowest Prices on Health Insurance. We have the best rates from top companies! Call Now!
1-888-989-4807.
(Cal-SCAN)

Stay in your home longer with an
American Standard Walk-In Bathtub.
Receive up to $1,500 off, including a free
toilet, and a lifetime warranty on the tub and Installation! Call us at 1-844-252-0740 (Cal-SCAN)

## 713
### Stereo, TV & Video

DIRECTV - Switch and Save! $39.99/month. Select All-Included Package. 155 Channels. 1000s of Shows/Movies On Demand. FREE Genie HD DVR Upgrade. Premium movie channels, FREE for 3 mos! Call 1-888-641-5762. (Cal-SCAN)

## 729
### Insurance

SAVE BIG on HOME INSURANCE! Compare 20 A-rated insurance
companies. Get a quote within minutes. Average savings of $444/year! Call 1-844-410-9609! (M-F 8am-8pm Central) (Cal-SCAN)

## 736
### Pets

**Puppies for sale.** Heeler & Border Collie $50 ea. 11 weeks old, 2 male, 1 female (707) 951-7348

## 750
### Misc For Sale

**Extensive Indian collection** for sale. Serious collectors. Call after 6pm 707-464-9460

**Zager Easy Play Parlor Guitar** w case, stand, turner. Retail $695. Selling for $500 707-218-7051

## 790
### Misc Wanted

**Cash paid for Vinyl, LP, and 45 records** in CC 7/6-7/10 only. Call 951-551-5891

Need some cash! Sell us your unwanted gold, jewelry, watches & diamonds. Call GOLD GEEK 1-844-905-1684. BBB A Plus Rated. Request your 100 Percent FREE, no risk, no strings attached appraisal kit. Call today! (Cal-SCAN)

## 790
### Misc Wanted

Call (541) 412-8200
1, 2, & 3.-Bedroom Units. Water, Sewer & Garbage Paid! USDA Rural Development subsidized apartment homes income. Restrictions Apply. This Institution is an equal opportunity provider Cascade-Management.com

Accepting Applications for Wait List at **AZALEA REACH APARTMENTS**
650 Old County Rd. Brookings, Or 97415
Call (541) 412-1448
1, 2, & 3.- Bedroom Units. Water, Sewer & Garbage Paid! Laundry Facilities / Community Room. Income restrictions. Apply Equal Housing Opportunity Cascade-Management.com

## 804
### Apts Unfurnished

1 bd, 1 bath avail. for rent, $650. a month 417 Fern Ave Call Janel Drew 541-661-3890

## 808
### Houses Unfurnished

Gasquet MHP Space 21. Outstanding 2017 Golden West. 3/bd, 2/bth, carport, storage room, covered front porch, avail. Sept. 1, owner will rent/mortgage. $180k call (707) 954-8506.

## 819
### RV Space for Rent

**2 RV Spaces for Rent.** Park model welcomed in Madrone Court Park in beautiful Hiouchi. $450/mo Call for details 707-954-6915

RV Space for Rent in 55 or older park. $350 a mth. Call: Ralph
541-251-3334

## 890
### Wanted to Rent

Happy, healthy senior seeking well lit room w/ people of integrity and kindness for myself and wonderful dog in a clean quiet spot. 719-480-1869

**Wanted: Rent or buy a boat/ yacht as residence.** Basic amenities desired. Call (417) 667-1143 or email SkipGoebel@yahoo.com

## 930
### Loans

RETIRED COUPLE $$$$ for business
purpose Real Estate loans. Credit unimportant. V.I.P. Trust Deed Company www.viploan.com
Call 1-818-248-0000 Broker-principal DRE 01041073. No consumer loans. (Cal-SCAN)

## 999
### Public Notices

TeleSpan Communications has proposed to install a new wireless telecommunications facility. The tower will be located at 201 Gasquet Toll Road, Gasquet, Del Norte County, CA 95543. TeleSpan Communications has proposed to install a new 150-foot tall monopole tower for local and national wireless carriers. Additional equipment will be installed in a ground lease area at the base of the tower. Ground disturbance and excavations will be completed for this project. Interested parties with comments regarding the potential effects of the proposed facility may have on historical or cultural properties may forward comments to: GEC/d #d11333, 4200 Park Blvd #149, Oakland CA 94602.
Published: July 10, 2020
Del Norte Triplicate T289966

**FICTITIOUS BUSINESS NAME STATEMENT**

**Wilson OW Storage**
Lien Sale will be held on July 25, 2020, a walk by at 11:30 am, Sale at 12:00 noon at Wilson Ow Storage, 98121 W. Benham Ln Brookings Or 97415
Household & Misc Items Unit #44
    Charles Simpson
    PO Box 6841
    Brookings Or 97415
Household & Misc Items Unit #126
    Sean Baumann
    2674 E. Main St Ste E 133
    Ventura Ca 93003
Publish July 3,10,17,24 2020. P289507

## 999
### Public Notices

**Ming Tree Real Estate**

The following person/s is/are doing business as:
**Ming Tree Real Estate**
1000 Northcrest Drive
Crescent City, CA 95531

This Business is conducted by: **a corporation**
The registrant commenced to transact business under the fictitious business name or names listed on: **not applicable**

I declare that all information in this statement is true and correct. A registrant who declares as true any material matter pursuant to this section that the registrant knows to be false is guilty of a misdemeanor punishable by a fine not to exceed one thousand dollars ($1,000). Signed: **MTRE Corp**
**Joshua T. Clemons**

This statement was filed with the County Clerk of Del Norte County on: **6/18/2020**
Alissia D. Northrup
County Clerk-Recorder
Damon Fletcher, Deputy
File No. **20200066**
Publish: July 10, 17, 24, & 31, 2020
**Del Norte Triplicate T290160**
CITY OF CRESCENT CITY
**NOTICE OF PUBLIC HEARING**
**NOTICE IS HEREBY GIVEN** that a written report is on file in the office of the City Clerk describing each parcel of property currently being furnished sewer services having delinquent charges.

**NOTICE IS FURTHER GIVEN that a public hearing will be held on the date and time** below listed to hear and consider all objections or protests to the report referenced above. Upon confirmation of the report, the delinquent charges shall constitute a special assessment against the property at which the services were furnished, to be collected at the same time and in the same manner as ordinary property taxes are collected. In addition, the City of Crescent City will add a 6% surcharge to the balance.

Due to the current public health emergency resulting from COVID-19, the public may access and participate in the public meeting using the following methods: (1) participate online via Zoom - details to join the meeting will be posted on the City of Crescent City - City Hall Facebook page and on the City of Crescent City website www.crescentcity.org the day of the meeting; (2) watch the meeting via livestream on YouTube (Channel: City of Crescent City, California) and submit comments by email to publiccomment@crescentcity.org; or (3) submit written comment to the City Clerk at 377 J Street,

## 999
### Public Notices

Crescent City, California 95531 prior to the hour of 12:00 pm on Monday, July 20, 2020.
DATE: **Monday, July 20, 2020**
TIME: **6:00 P.M.**
HEARING BODY: **City Council of Crescent City**
PLACE: **Zoom meeting or Livestream on City Youtube channel**
APPLICANT: **City of Crescent City**

MORGAN LOVE, ACCOUNT CLERK I
**(707) 464-6517**

Published: **Friday, July 10, 2020**
**Del Norte Triplicate T290264**

**Public Service Announcement for the**
**Curry County Road Department Six-Year Capital Improvement Plan**
**Public Meeting and Questionnaire**

A Six-Year Road Capital Improvement Plan is being developed by The Dyer Partnership for the Curry County Road Department. This Plan will include current safety and traffic conditions as well as a priority schedule for road improvements. Both the public meeting and questionnaire are intended to allow county residents and businesses to express their opinions, concerns, and suggestions relating to transportation needs. Only roads currently owned and maintained by the Curry County Road Department are listed in the questionnaire. If you wish to participate please go to
www.co.curry.or.us/Departments/Road/ and complete the questionnaire.

A public meeting will be held on Tuesday, July 14, 2020 from 5:00 to 7:00 pm in the Blue Room at the Curry County Annex, 94235 Moore Street, Gold Beach, Oregon. The County Annex Blue Room is a downstairs suite. Please park and use the entry door on the north side of building. Please contact the Curry County Road Department if you have any questions at 541-247-7097.

Publish: June 26, July 3, 10, 2020 P289050

**PUBLIC NOTICE**

In accordance with ORS 255.075, Notice is hereby given that at the Tuesday, November 6, 2020 General Election, held in Curry County, Oregon, the following district will vote on the following district board positions.

**HARBOR WATER P.U.D.**

| Director – Subdivision #1 – Precinct 22 | 2 year balance |
|---|---|
| Director – Subdivision #2 – Precinct 23 | 2 year balance |
| Director – Subdivision #3 – Precinct 22 | 4 year term |
| Director – Subdivision #4 – Precinct 24 | 4 year term |
| Director – Subdivision #5 – Precinct 19 | 4 year term |

Candidates wishing to file for the Harbor Water People's Utility District must file perfected petitions or declarations of candidacy with the Curry County Clerk/Elections office no later than 5 p.m., August 25, 2020. Please contact the Elections Office toll free at 1(877)739-4218. For filing forms please visit https://sos.oregon.gov/elections/Documents/SEL190.pdf.

Renee Kolen, Curry County Clerk
BY: Shelley Denney, Chief Deputy County Clerk
Publish: June 19, July 10, 2020
P288372

## 999
### Public Notices

**FICTITIOUS BUSINESS NAME STATEMENT**
Appliance Repair Dynamics

The following person/s is/are doing business as:
Appliance Repair Dynamics
302 N Fred D Haight Dr.
Smith River, CA 95567

This Business is conducted by: **an individual**
The registrant commenced to

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF CURRY
PROBATE DEPARTMENT

In the Matter of the Estate of:    )    Case No. 20PB03661
SANDRA DARLENE GRIFFITH,    )    NOTICE TO INTERESTED PERSONS
    Deceased.     )

NOTICE IS HEREBY GIVEN that David L. Griffith has been appointed personal representative. All persons having claims against the estate are required to present them, with vouchers attached, to the personal representative at c/o K.R. Olin, Attorney at Law, PO Box 7530, Brookings, OR 97415, within four months after the date of first publication of this notice, or the claims may be barred.

All persons whose rights may be affected by the proceedings may obtain additional information from the records of the court, the personal representative, or the attorney for the personal representative, K.R. Olin, PO Box 7530, Brookings, OR 97415.

DATED AND FIRST PUBLISHED this 3rd day of July, 2020.

/s/   K.R. Olin

K. R. Olin, #903547
Attorney for Personal Representative
PO Box 7530, Brookings, OR 97415
(541)469-2669
kro@wavelaw.com

Publish: July 3,10,17, 2020 P289593

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION
In re:
PG&E CORPORATION,    Bankruptcy Case
    - and -     No. 19-30088 (DM)
PACIFIC GAS AND ELECTRIC COMPANY,    Chapter 11
    Debtors.     (Lead Case)
    (Jointly Administered)

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

PLEASE TAKE NOTICE that:
1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**") (attached hereto as Exhibit A) and confirmed therein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.
2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.
3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.
4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the sole source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the sole source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Fire Victim Claim or Subrogation Wildfire Claim other than from the Fire Victim Trust, in accordance with the Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, including without limitation the following actions:
   a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;
   b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;
   c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;
   d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and
   e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.
   5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**
   a. Pursuant to Section 8.1 (a) of the Plan and Paragraph 41 of the Confirmation Order, as of July 1, 2020, and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject

filed by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).
   b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be without a hearing or further order of the Bankruptcy Court.
   6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**
    a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, no later than **thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease**, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.
    b. Pursuant to Paragraph 32d. of the Confirmation Order:
    i. Any Entity or Reorganized Debtors may, within thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;
    ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts will have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection to such removal or addition, which objection may be resolved either consensually without further order of the Bankruptcy Court or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and
    iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.
    For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) the effective date of the rejection of such executory contract or unexpired lease, and nothing in the foregoing shall in any way modify the time period for filing a claim for rejection damages following the rejection of an executory contract or unexpired lease.
    7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. Such objections to each such request by any party-in-interest must be filed and served on the Reorganized Debtors, the requesting party, the U.S. Trustee, and other persons designated in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.
    8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.
Dated: July 2, 2020
**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

**Exhibit B**



**PROOF OF PUBLICATION**
**(2015.5 C.C.P.)**

**STATE OF CALIFORNIA**
**County of Los Angeles**

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years, and not a party to or interested in the action for which the attached notice was published. I am a principal clerk of the Los Angeles Times, which was adjudged a newspaper of general circulation on May 21, 1952, Cases 598599 for the City of Los Angeles, County of Los Angeles, and State of California. Attached to this Affidavit is a true and complete copy as was printed and published on the following date(s):
July 10, 2020

**I certify (or declare) under penalty of perjury**
**under the laws of the State of California that the foregoing is true and correct.**

Dated at El Segundo, California
on this 15th day of July, 2020.

_____

*Katherine G. Gundell*
[signature]

2300 E. Imperial Hwy.
El Segundo, CA 90245

Case: 19-30088    Doc# 8470    Filed: 07/21/20    Entered: 07/21/20 17:39:57    Page 8 of 110

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

In re:
PG&E CORPORATION,
- and -
PACIFIC GAS AND ELECTRIC COMPANY,
Debtors.

Bankruptcy Case No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

PLEASE TAKE NOTICE that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the** *sole source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the* ***sole source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be** *permanently and forever stayed, restrained, and enjoined* **from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Victim Claim, including all of the following actions:**

**a.** commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

**b.** enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

**c.** creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

**d.** asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

**e.** taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assignment and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, **no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease**, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d. of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts under the Plan shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

# Biden pitches manufacturing plan

## The Democrat unveils a $700-billion 'made in America' economic recovery proposal.

BY MELANIE MASON

Joe Biden laid out a populist economic vision on Thursday, starting with a $700-billion proposal to reinvigorate the nation's manufacturing sector, and laced into President Trump for being out of touch with the challenges facing the American public.

Speaking at a metal works plant in Dunmore, Pa., the presumptive Democratic presidential nominee said the barrage of crises pummeling the nation — the COVID-19 pandemic, the subsequent economic fallout, the turmoil over racial injustice — offer an opportunity for sweeping improvement to "build back better," as he dubbed his recovery plan.

"This is our moment to imagine and to build a new American economy for our families and for our communities — an economy where every American has the chance to get a fair return for the work they put in, an equal chance to get ahead," he told his socially distanced audience of about 50 people.

By turning his focus to the economy, Biden aims to chip away at one of the few advantages the president still has. Polls have shown voters continue to trust Trump more to handle the economy than Biden, though overall the former vice president has built steady advantages in the national matchup, battleground states and key demographics such as women and senior citizens.

The manufacturing proposal, the first plank of four initiatives Biden is planning to roll out in the coming weeks, includes spending $300 billion on research and development projects in clean energy, telecommunications, artificial intelligence and other fields.

He would also commit to $400 billion in his first term for federal procurement of American-made products ranging from clean vehicles to construction materials. The promise of government purchases, the campaign said, will give businesses the confidence to hire additional workers.

The campaign did not specify how it would pay for the proposals, but Biden has broadly endorsed rolling back some of the Trump administration's tax cuts and said in his speech he would increase the corporate tax rate to 28%. (Trump and Republicans cut that rate from 35% to 21% in 2017.)

Biden's plan also aims to boost domestic production by tightening rules on what products can be designated "made in America" and updating international trade rules around government procurement.

It also includes previously announced measures to manufacture more medical equipment and other critical supplies to battle pandemics, after reliance on international supply chains proved to be problematic in the current COVID-19 crisis.

For months, the former vice president has signaled a shift in his economic thinking spurred by the public health and financial crises gripping the country. Instead of promoting a return to normalcy — which defined his message during the presidential primaries — Biden began talking up bold, transformational change as necessary to address the upheaval wrought by the coronavirus. The manufacturing proposal offers a glimpse at how Biden is translating that rhetoric into policy.

Much like Trump in his 2016 campaign, Biden struck a populist tone, promising to advocate for the American worker who has seen manufacturing job prospects decline in the globalized economy. But Biden used that line to draw a contrast with Trump, painting him as siding with elites and showing little interest in learning about the stresses faced by everyday Americans.

Biden promised "an economy that says investing in American people and working families is more important than the nearly $2 trillion in tax breaks, predominantly handed out to the super-wealthy."

"Donald Trump loves to talk and talk and talk, but after 3½ years of big promises, what do the American people have to show for all the talk?" he said.

Never shy to use his biography to punctuate a point, Biden referenced chapters in his own life — his middle-class upbringing in nearby Scranton, his experience as a single father raising two young sons after his first wife died in a car accident — to show his familiarity with the challenges many are facing. Trump, he said, couldn't relate.

"It's unconscionable that he doesn't even try to understand or empathize with the struggling of so many millions of people out there," Biden said.

He excoriated Trump's handling of the coronavirus outbreak, which has killed more than 133,000 people in the U.S., and accused him of stoking tensions in the current reckoning over racial justice.

"That's the tragedy of Donald Trump being our president today," he said. "He is exactly the wrong person to lead us at this moment."

In a sign of how crucial Pennsylvania, a longtime blue state that flipped to Trump in 2016, will be in November, Vice President Mike Pence was also in the state on Thursday, meeting with business leaders in Malvern to discuss reopening America's economy and schools.

Pence spoke optimistically about U.S. economic prospects, saying he sees "this country coming back because of the solid foundation that was put in place" by the White House's pre-pandemic accomplishments, such as tax cuts, rollbacks of regulation and negotiations of new trade deals.

He repeatedly knocked Biden, warning that the Democrat would hike taxes and carry out a "government takeover of healthcare."

Biden's speech came one day after his campaign, in a joint effort with Sen. Bernie Sanders of Vermont, his former rival, released policy recommendations for the Democratic Party platform.

Like Biden's manufacturing proposal, the recommendations embrace robust government action but steer clear of some of the more sweeping, and controversial, items on progressives' wish list, such as "Medicare for all," a Green New Deal or defunding the police.

The framework was created by six task forces composed of Biden and Sanders allies, which was meant to smooth over lingering tensions from the Democratic primaries.

Biden commended their work as "helping build a bold, transformative platform for our party and for our country."

"And I am deeply grateful to Sen. Sanders," he said in a statement, "for working together to unite our party, and deliver real, lasting change for generations to come."

Sanders, acknowledging the policy disputes he had with Biden, also complimented the outcome.

"Though the end result is not what I or my supporters would have written alone, the task forces have created a good policy blueprint that will move this country in a much-needed progressive direction and substantially improve the lives of working families throughout our country," he said.

Some in the party's left flank say they're heartened by the moves Biden has made so far to follow through on his pledge for aggressive action.

"Biden's bold moves recently seem less like a political nat tip to progressives and more him rising to this moment we're living in," said Adam Green, co-founder of the Progressive Change Campaign Committee, a left-leaning group allied with Massachusetts Sen. Elizabeth Warren.

Green applauded Biden's manufacturing plan for drawing inspiration from Warren's proposal to use federal procurement to grow money into American-made products.

The other pillars of Biden's economic plan, to be detailed in future speeches, include developing clean energy and sustainable infrastructure, building up a workforce of caregivers and educators, and advancing racial equity.



JOE BIDEN, striking a populist tone in Dunmore, Pa., blasted President Trump's "nearly $2 trillion in tax breaks, predominantly handed out to the super-wealthy."

MATT SLOCUM Associated Press

## Major outbreak hits state Capitol

### At least 26 lawmakers, including the leading Republicans, test positive in Mississippi.

ASSOCIATED PRESS

JACKSON, Miss. — Packed elevators and crowded committee rooms. Legislators sitting shoulder to shoulder on the House and Senate floors. People standing close to one another and talking, sometimes leaning in to whisper, without a mask in sight.

Those were common scenes at the Mississippi Capitol in June — a month that saw a historic vote to remove the Confederate battle emblem from the state flag — and now at least 26 lawmakers have contracted the coronavirus in the biggest known outbreak in any state legislature in the nation.

That works out to about 1 in 7 Mississippi legislators.

Among those testing positive in the heavily Republican body are the GOP presiding officers, House Speaker Philip Gunn and Lt. Gov. Delbert Hosemann.

None of the lawmakers has been hospitalized, according to state officials.

President Trump has resisted wearing a mask, and many other Republicans have cast face coverings and social distancing mandates as infringements on their freedom. But around the Mississippi Capitol, not wearing a mask — or wearing one pushed below the chin — was a bipartisan activity in recent weeks.

Mississippi has seen a rapid rise in confirmed cases in the last two weeks, with the total hitting nearly 33,000 by Thursday, including at least 1,200 deaths.

In addition to the legislators, at least 10 people who work in the Capitol have tested positive for the virus, the state health officer said Wednesday. And the numbers could well be higher: The figures are based only on Health Department testing done in Jackson, including drive-through testing Monday at the Capitol. Some members were tested after returning to their hometowns beginning July 1.

"If you have been in contact with anyone in the Legislature, or if you have been in contact with any staff person that works at the Legislature, you need to get tested," said Republican Gov. Tate Reeves, who has tested negative.

---

**NOTICE OF LIEN SALE**

PLEASE TAKE NOTICE that in accordance with the provisions of the California Commercial Code, Sections 7210(b), 7307, and 7308(g), notice is hereby given that on Monday, July 27, 2020 at 10:00 am at 26 La Porte Street, City of Arcadia, County of Los Angeles, State of CA, the undersigned will sell at public auction for cash or cashiers check, in lawful money of the United States, the following goods:

**1,491,000 Face Masks marked "KN95", but not FDA EUA authorized, in 1,491 boxes of 1,000 pieces each per box being held on account of JRL OPPORTUNITY GROUP, LLC.**

The goods will be sold AS IS and WHERE IS WITH NO REPRESENTATIONS OR WARRANTIES EITHER EXPRESS OR IMPLIED.

For more information, contact ABC Auction and Appraisal Services at 949-922-1211, or visit https://bit.ly/maskliensale

Auction conducted by ABC Auction and Appraisal Services 13681 Newport Ave., #6-609, Tustin, CA 92780, authorized agent of Diego Gracia Transportation, Inc.

LEGAL NOTICE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:
PG&E CORPORATION,        Bankruptcy Case No. 19-30088 (DM)
- and -                  Chapter 11
PACIFIC GAS AND ELECTRIC COMPANY,   (Lead Case)
Debtors.                 (Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

[The remainder of this legal notice consists of dense bankruptcy notice text in multiple columns.]

### How to contact us

(800) LA TIMES

**Home Delivery and Membership Program**
For questions about delivery, billing and vacation holds, or for information about our Membership program, please contact us at (213) 283-2274 or membershipservices@latimes.com. You can also manage your account at myaccount.latimes.com.

**Letters to the Editor**
Want to write a letter to be published in the paper and online? E-mail letters@latimes.com. For submission guidelines, see latimes.com/letters.

**Readers' Representative**
If you believe we have made an error, or you have questions about our journalistic standards and practices, our readers' representative can be reached at readers.representative@latimes.com, (877) 554-4000 or online at latimes.com/readersrep.

**Advertising**
For print and online advertising information, go to latimes.com/mediakit or call (213) 237-6176.

**Reprint Requests**
For the rights to use articles, photos, graphics and page reproductions, e-mail reprint@latimes.com or call (213) 237-4565.

**Times In Education**
To get the digital Los Angeles Times at no cost (along with our newspaper-based teaching materials), contact us at latimes.com/tie, or email Heidi.staude@latimes.com.

**The Newsroom**
Have a news tip? The best way to report breaking news is to call (877) 554-4000. Your call may be recorded. If you prefer e-mail, write newsroom@latimes.com.

**Media Relations**
For outside media requests and inquiries, e-mail commsdept@latimes.com.

**L.A. Times Store**
Search archives, merchandise and front pages at latimes.com/store.

*Los Angeles Times*
Founded Dec. 4, 1881

Vol. CXXXIX No. 210

**Exhibit C**

# *** Proof of Publication ***

AFFIDAVIT OF PUBLICATION          NAPA VALLEY REGISTER

MILLER ADVERTISING AGENCY, INC
Holly Dobbs
220 WEST 42ND STREET
NEW YORK NY 10036

ORDER NUMBER      128259

STATE OF CALIFORNIA

COUNTY OF NAPA

I AM A CITIZEN OF THE UNITED STATES AND A RESIDENT OF
THE COUNTY AFORESAID; I AM OVER THE AGE OF EIGHTEEN
YEARS, AND NOT A PART TO OR INTERESTED IN THE
ABOVE-ENTITLED MATTER. I AM THE PRINCIPAL CLERK
OF THE NAPA VALLEY REGISTER, A NEWSPAPER OF
GENERAL
CIRCULATION, PRINTED AND PUBLISHED DAILY IN THE
CITY OF NAPA, COUNTY OF NAPA, AND WHICH NEWPAPER
HAS BEEN ADJUDGED A NEWSPAPER OF GENERAL
CIRCULATON BY THE SUPERIOR COURT OF THE COUNTY
OF NAPA, STATE OF CALIFORNIA, UNDER THE DATE OF
NOVEMBER 16, 1951, CASE NUMBER 12752.

THAT I KNOW FROM MY OWN PERSONAL KNOWLEDGE THE
NOTICE, OF WHICH THE ANNEXED IS A PRINTED COPY
(SET IN TYPE NOT SMALLER THAT NONPAREIL), HAS
BEEN PUBLISHED IN EACH REGULAR AND ENTIRE ISSUE
OF SAID NEWPAPER AND NOT IN ANY SUPPLEMENT THEREOF
ON THE FOLLOWING DATES, TO-WIT:

Section: Legals

Category: 901 Public Notices

PUBLISHED ON: 07/10/2020

TOTAL AD COST:          378.00
FILED ON:               7/10/2020

# *** Proof of Publication ***

I CERTIFY (OR DECLARE) UNDER PENALTY OF PERJURY THAT

THE FOREGOING IS TRUE AND CORRECT.

DATED AT NAPA COUNTY, CALIFORNIA,

THIS ___10___ DAY OF ___July 2020___

SIGNATURE___M Grace Stone___

| In re: | Bankruptcy Case |
| **PG&E CORPORATION,** | No. 19-30088 (DM) |
| - and - | Chapter 11 |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Lead Case) |
| Debtors. | (Jointly Administered) |

### NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

**PLEASE TAKE NOTICE** that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION.** In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole* source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the *sole* source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

   **a.** commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

   **b.** enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

   **c.** creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

   **d.** asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

   **e.** taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

   a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed

by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

   b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

   a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, **no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease,** as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

   b. Pursuant to Paragraph 32d. of the Confirmation Order:

   i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

   ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

   iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

   **WEIL, GOTSHAL & MANGES LLP**
   **KELLER BENVENUTTI KIM LLP**

## 901 Public Notices

**PUBLIC NOTICE**
**CITY OF ST. HELENA**
**PUBLIC HEARING NOTICE**
**NOTICE IS HEREBY GIVEN BY THE PLANNING COMMISSION OF THE CITY OF ST. HELENA** that on Tuesday evening, **July 21, 2020, at 6:00 p.m** in the City of St. Helena, County of Napa, State of California, the Planning Commission will consider the following:

**PL19-055:** Request by Jenny Hoover on behalf of David and Elyse Walker for adoption of a resolution granting **demolition permit, design review, use permit and variance approval** to demolish an existing structure in order to construct a new 2,847 square foot commercial building on an existing non-conforming parcel located at **1229/1231 Adams Street** (APN #009-240-023) in the Central Business District. The project is exempt from the requirements of CEQA pursuant to CEQA Guidelines Sections 15301, 15302, 15303, and 15332.

Copies of agendas and staff reports are available on the Friday afternoon immediately preceding the hearing the City's website at cityofsthelena.org. You may also contact the Planning and Building Director, Maya DeRosa at (707) 967-2783 or MDeRosa@cityofsthelena.org. The St. Helena municipal code may be viewed at the following link: http://www.codepublishing.com/CA/sthelena.

In accordance with Executive Orders N-25-20, N-29-20, and guidance from the California Department of Public Health on gatherings, remote public participation is allowed. We will address the Order in the following ways: Members of the public may not physically attend meetings. The Planning Commission meeting will be live-streamed on Comcast Channel 28 and on the City's website, barring technical difficulties. Those members of the public wishing to participate must do so remotely via Zoom electronic meetings in the following ways; by either logging onto the Zoom link located on the meeting agenda (please download the app to your computer or mobile device) and enter the meeting ID or by calling a listed number and enter the meeting ID. Public comment for Planning Commission meeting will be accepted via email to publiccomment @cityofsthelena.org. **Please see the agenda for detailed PUBLIC PARTICIPATION instructions.**

Please note that if you challenge the City's decision on any of these matters in court, you may be limited to raising only those issues you or someone else raised at the public hearing described in this notice or in written correspondence delivered to the City at, or prior to, the public hearing.

Maya DeRosa,
Planning and Building Director
PD ID #128298

---

**PUBLIC NOTICE**
**NAPA VALLEY**
**TRANSPORTATION AUTHORITY**
**NOTICE OF REQUEST FOR PROPOSALS**
**FINANCIAL CONSULTING SERVICES**
**RFP No. 2020-05**
**NOTICE IS HEREBY GIVEN** that the Napa Valley Transportation Authority (NVTA) is issuing a Request for Proposals (RFP) for Financial Consulting Services. NVTA invites qualified firms, entities or individuals to submit a proposal. Sealed proposals will be received at the NVTA offices located at 625 Burnell Street, Napa, CA 94559 until **3:00 PM (local)** on **August 3, 2020.** Proposal received after that time will not be accepted.

NVTA serves as the countywide transportation planning body for the incorporated and unincorporated areas within Napa County and is responsible for programming State and Federal funding for transportation projects within the county. NVTA is charged with coordinating short and long term planning and funding within an intermodal policy framework in the areas of highways, streets and roads, transit and paratransit, and bicycle improvements. NVTA also provides fixed route and on demand transit services in Napa County including Napa Vine, American Canyon Transit, Calistoga Shuttle and Yountville Trolley, Saint Helena Shuttle and VINE Go.

NVTA is also the local Transporta-

tion sales tax agency (NVTA-TA). NVTA-TA is responsible for the oversight and administration of Measure T, the ½% sales tax for street and road improvements approved by the voters on November 6, 2012.

To obtain a full copy of the RFP, please contact NVTA at (707) 259-8780 or download the document in PDF format from our website http://www.nvta.ca.gov/fin-ancial-consulting-services. All inquiries pertaining to this RFP should be emailed to Renee Y. Kulick, Sr. Administrative Technician, at email address rkulick @nvta.ca.gov no later than **2:00 PM (local), July 15, 2020.** Response to all questions submitted by the July 15, 2020 deadline that may have a material impact on the proposal will be provided by **July 17, 2020** and will also be posted on the NVTA website https://www.nvta.ca.gov/fin-ancial-consulting-services. The subject line for questions submitted in writing should include reference to: "Questions - NVTA RFP No. 2020-05 Financial Consulting Services – August 3, 2020".

Proposals will be accepted either by hand delivery or by mail addressed as follows:
Kate Miller
Executive Director
Napa Valley Transportation Authority
625 Burnell Street
Napa, CA 94559
RFP No. 2020-05
7/10/20 #128276

---

**PUBLIC NOTICE**
**NOTICE OF PUBLIC HEARING**
**CITY OF NAPA**
**NAPA COUNTYWIDE ROAD MAINTENANCE ACT (MEASURE T)**
**UPDATED 5 YEAR WORK PLAN**
NOTICE IS HEREBY GIVEN that on July 21, 2020, at or after 3:30 p.m. in the City Council Chambers, City Hall, 955 School Street, Napa, California, a public hearing will be conducted by the City Council of the City of Napa at which time and place all persons are invited to provide public comment and input on:

Approval of updated five-year list of projects under the Measure T Program for the City of Napa.

Due to the unprecedented impacts of the Coronavirus, the hearing will be televised live, the City will receive public input for this hearing in writing, and the Council Chambers will be closed to the public. Please visit the following link for more information on participating in this meeting and the completion and photocopying of the report.

Written comments should be directed to the City Council through the City Clerk at P.O. Box 660, Napa, California, 94559-0660 or at clerk @cityofnapa.org.

PLEASE NOTE: Any person challenging any of the above action in Court may be limited to raising only those issues that they or someone else raised at the public hearing described in this notice, or in written correspondence delivered to the City or Napa at, or prior to, the public hearing.

Interested persons needing special accommodations or language translation should contact the Office of the City Clerk at 707-257-9503 or email clerk@cityofnapa.org at least three working days in advance of the meeting. For TDD/Speech-Speech users, dial 7-1-1 for the California Relay Service, offering free text-to-speech, speech-to-speech, and Spanish-language services 24 hours a day, 7 days a week. You may also contact the City Clerk at clerk@cityofnapa.org for more information.
Dated: July 7, 2020
Signed: Tiffany Carranza, City Clerk
7/10 #128275

---

**PUBLIC NOTICE**
**NOTICE OF PUBLIC HEARING**
**CITY OF NAPA**
**NOTICE TO CONDUCT A MAJORITY PROTEST HEARING AND**
**ADOPT A RESOLUTION OF FORMATION TO RENEW THE DOWNTOWN NAPA**

**PROPERTY AND BUSINESS IMPROVEMENT DISTRICT**
NOTICE IS HEREBY GIVEN that on July 21, 2020, at or after 6:30 p.m. in the City Council Chambers, City Hall, 955 School Street, Napa, California, a public hearing will be conducted by the City Council of the City of Napa at which time and place all persons are invited to provide public comment and input on:

Pursuant to the provisions of Section 53753 of the Government Code, Section 36623 of the Streets and Highways Code, and Section 4 of Article XIII (D) of the California Constitution, the City Council of the City of Napa will conduct a majority protest hearing and ballot procedure regarding the renewal of the Downtown Napa Property and Business Improvement District (PBID). The purpose of the PBID is to provide activities and improvements which constitute and create a special benefit to assessed parcels. The PBID will provide Beautification, Maintenance & Infrastructure, Marketing, Ambassador & Safekeeping, and related Advocacy & Administration directly and only to assessed parcels within its boundaries.

Pursuant to Article XIII (D) of the California Constitution and California Streets and Highways Code Section 53753, the record owner of each parcel within the PBID must be: notified by mail of the proposed assessment; notified of the date, time and place of the Public Hearing set by the City Council to consider the proposed assessment; and provided an opportunity to complete a ballot whereby each owner may indicate his or her support or opposition to the proposed assessment. Receipt by the City of a majority protest shall cause the City not to impose the assessment. A majority protest exists if, upon the conclusion of the hearing, ballots submitted in opposition to the assessment and not withdrawn exceed the ballots submitted in favor of the assessment and not withdrawn.

In tabulating the ballots, the ballots shall be weighted according to the proportional financial obligation of the affected property. The basis upon which the amount of the proposed assessment was calculated is the following: Retail Rate: Zone 1 $0.229 per square foot; Zone 2 $0.076 per square foot; Non-Retail Rate: Zone 1 $0.153 per square foot; Zone 2 $0.076 per square foot; Parking Rate: Zone 1 $0.076 per square foot; Zone 2 $0.038 per square foot; Vacant Rate: Zone 1 $0.038 per square foot; Zone 2 $0.038 per square foot. A notice, a ballot, and related information and instructions which satisfy the requirements of Article XIIID of the California Constitution and California Government Code Section 53753 have been mailed to all record owners of property located within the proposed PBID. Additional ballots will be made available in the City Council Chambers and at the Public Counter of the City of Napa City Hall, 955 School Street, Napa, CA prior to the close of the Public Hearing.

Background information, including all staff reports and the 2021-2025 Management District Plan for the Downtown Napa Property and Business Improvement District will be available at the Economic Development Department, 1600 First Street, Napa, CA 94559 or on the City's website at www.cityofnapa.org on the Friday before the meeting and may be available earlier depending on the completion and photocopying of the report.

Due to the unprecedented impacts of the Coronavirus, the hearing will be televised live, the City will receive public input for this hearing in writing and by telephone, and the Council Chambers will be closed to the public. Please visit the following link for Coronavirus (COVID-19) meeting procedures: https://www.cityofnapa.org/920/CORONAVIRUS-COVID-19-Notice-of-Meeting-P

Supporting documents are available at the Community Development Department, 1600 First Street, Napa CA, 94559, or on the City's website at www.cityofnapa.org on the Friday before the meeting and may be available earlier depending on the completion and photocopying of the report.

Written comments should be directed to the City Council through the City Clerk at P.O. Box 660, Napa,

California, 94559-0660 or at clerk @cityofnapa.org.

PLEASE NOTE: Any person challenging any of the above action in Court may be limited to raising only those issues that they or someone else raised at the public hearing described in this notice, or in written correspondence delivered to the City of Napa at, or prior to, the public hearing.

Interested persons needing special accommodations or language translation should contact the Office of the City Clerk at 707-257-9503 or email clerk@cityofnapa.org at least three working days in advance of the meeting. For TDD/Speech-to-Speech users, dial 7-1-1 for the California Relay Service, offering free text-to-speech, speech-to-speech, and Spanish-language services 24 hours a day, 7 days a week. You may also contact the City Clerk at clerk@cityofnapa.org for more information.
Dated: July 6, 2020
Signed: Tiffany Carranza, City Clerk
7/10 #128272

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**
In re:
**PG&E CORPORATION,**
        - and -
**PACIFIC GAS AND ELECTRIC COMPANY,**
                Debtors.

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

**PLEASE TAKE NOTICE** that:

... [bankruptcy notice text] ...

KELLER BENVENUTTI KIM LLP

---

**PUBLIC NOTICE**
Signed: Alain Leonnet
I hereby certify that this copy is a correct copy of the original statement on file in my office.
DATED: June 19, 2020
JOHN TUTEUR
Napa County Clerk-Recorder
By: K Decker
Deputy Clerk-Recorder.
6/26, 7/3, 10, 17 #127932

---

## 902 FBN

**PUBLIC NOTICE**
**FICTITIOUS BUSINESS**
**NAME STATEMENT**
**FILE NO. 2020-0000706**
The following person(s) is (are) doing business as:
**UNION MADE**
3699 COLUMBIA DRIVE
NAPA CA 94558
County of Napa
(916) 402-6453
**CAITLIN RUTH VEGA**
This business is conducted by:
Individual
Registrant commenced to transact business under the fictitious business name or names listed above on: n/a
Statement Expires On: 6/16/2025
Signed: Caitlin Vega
I hereby certify that this copy is a correct copy of the original statement on file in my office.
DATED: June 16, 2020
JOHN TUTEUR
Napa County Clerk-Recorder
By: K Decker
Deputy Clerk-Recorder.
7/10, 17, 24, 31 #128240

---

**PUBLIC NOTICE**
**FICTITIOUS BUSINESS**
**NAME STATEMENT**
**FILE NO. 2020-0000721**
The following person(s) is (are) doing business as:
**VALLEY VENTURES THREE**
1019 WOODSIDE DR
NAPA CA 94558
County of Napa
(707) 334-3855
**GLADYS COIL**
This business is conducted by:
INDIVIDUAL
Registrant commenced to transact business under the fictitious business name or names listed above on: 1/1/2020
Statement Expires On: 6/18/2025
Signed: Gladys Coil
I hereby certify that this copy is a correct copy of the original statement on file in my office.
DATED: June 18, 2020
JOHN TUTEUR
Napa County Clerk-Recorder
By: S Hernandez
Deputy Clerk-Recorder.
7/3, 10, 17, 24 #128066

---

**PUBLIC NOTICE**
**FICTITIOUS BUSINESS**
**NAME STATEMENT**
**FILE NO. 2020-0000661**
The following person(s) is (are) doing business as:
**CLOS DE NAPA WINES**
**SMOKESCREEN CELLARS**
849 ZINFANDEL LANE
ST HELENA CA 94574
County of Napa
**RAYMOND VINEYARD &**
**CELLAR, INC.**
This business is conducted by:
CORPORATION
Registrant commenced to transact business under the fictitious business name or names listed above on: Not Applicable
Statement Expires On: 5/27/2025
Signed: Lisa Heisinger
I hereby certify that this copy is a correct copy of the original statement on file in my office.
DATED: May 27, 2020
JOHN TUTEUR
Napa County Clerk-Recorder
By: L. RODRIGUEZ
Deputy Clerk-Recorder.
6/19, 26, 7/3, 10 #127728

---

**PUBLIC NOTICE**
**FICTITIOUS BUSINESS**
**NAME STATEMENT**
**FILE NO. 2020-0000633**
The following person(s) is (are) doing business as:
**J R CONSTRUCTION**
**SOL SOLUTIONS 4U**
650 COSTA DR
NAPA CA 94558-5627
County of Napa
(707) 299-8850
**JR CONSTRUCTION-SOL**
**SOLUTIONS, INC.**
State: CA
This business is conducted by:
CORPORATION
Registrant commenced to transact business under the fictitious business name or names listed above on: 8/11/2010
Statement Expires On: 6/2/2025
Signed: Josue Rosado
I hereby certify that this copy is a correct copy of the original statement on file in my office.
DATED: June 02, 2020
JOHN TUTEUR
Napa County Clerk-Recorder
By: L. RODRIGUEZ
Deputy Clerk-Recorder.
6/26, 7/3, 10, 17 #127736

---

**PUBLIC NOTICE**
**FICTITIOUS BUSINESS**
**NAME STATEMENT**
**FILE NO. 2020-0000655**
The following person(s) is (are) doing business as:
**CATHARSIS FAMILY ESTATE**
**SHL NAPA**
1979 ZINFANDEL LANE
ST HELENA CA 94574
1101 VINTAGE AVE
ST HELENA CA 94574
**SHL CATHARSIS LLC**
State: CA
This business is conducted by:
LIMITED LIABILITY COMPANY
Registrant commenced to transact business under the fictitious business name or names listed above on: 6/11/2020
Statement Expires On: 6/17/2025
Signed: Florence M. Cathiard
I hereby certify that this copy is a correct copy of the original statement on file in my office.
DATED: June 08, 2020
JOHN TUTEUR
Napa County Clerk-Recorder
By: L. RODRIGUEZ
Deputy Clerk-Recorder.
6/26, 7/3, 10, 17 #127762

---

**PUBLIC NOTICE**
**FICTITIOUS BUSINESS**
**NAME STATEMENT**
**FILE NO. 2020-0000679**
The following person(s) is (are) doing business as:
**CHARLIE PALMER STEAK**
**SKY & VINE**
1230 FIRST STREET
NAPA CA 94559
(707) 690-9800
**NAPA LODGING**
**CORPORATION**
8100 E 22ND STREET NORTH
BLDG. 500
WICHITA KS 67226
State: KS
This business is conducted by:
CORPORATION
Registrant commenced to transact business under the fictitious business name or names listed above on: N/A Applicable
Statement Expires On: 6/12/2025
Signed: Michael E. Dawod
I hereby certify that this copy is a correct copy of the original statement on file in my office.
DATED: June 12, 2020
JOHN TUTEUR
Napa County Clerk-Recorder
By: L. RODRIGUEZ
Deputy Clerk-Recorder.
7/3, 10, 17, 24 #128000

---

**PUBLIC NOTICE**
**FICTITIOUS BUSINESS**
**NAME STATEMENT**
**FILE NO. 2020-0000703**
The following person(s) is (are) doing business as:
**VOTO ESTATE SELECTIONS**
849 ZINFANDEL LANE
ST HELENA CA 94574
County of Napa
**RAYMOND VINEYARD &**
**CELLAR, INC.**
State: CA
This business is conducted by:
CORPORATION
Registrant commenced to transact business under the fictitious business name or names listed above on: 6/16/2025
Statement Expires On: 6/16/2025

---

**PUBLIC NOTICE**
**FICTITIOUS BUSINESS**
**NAME STATEMENT**
**FILE NO. 2020-0000693**
The following person(s) is (are) doing business as:
**COIT DISTILLERS**
**COIT DISTILLERY**
**COIT SPIRITS**
1883 COGSWELL WAY
YOUNTVILLE CA 94599
County of Napa
**GERALD ROWLAND**
**LINDA ROWLAND**
This business is conducted by:
MARRIED COUPLE
Registrant commenced to transact business under the fictitious business name or names listed above on: 8/29/2020
Statement Expires On: 7/6/2025
Signed: Gerald Rowland
I hereby certify that this copy is a correct copy of the original statement on file in my office.
DATED: July 06, 2020
JOHN TUTEUR
Napa County Clerk-Recorder
By: S Hernandez
Deputy Clerk-Recorder.
7/10, 17, 24, 31 #128226

---

**PUBLIC NOTICE**
**FICTITIOUS BUSINESS**
**NAME STATEMENT**
**FILE NO. 2020-0000678**
The following person(s) is (are) doing business as:
**CLOISONNE WINES**
**CLOISONNE WINES**
**FULCRUM**
**FULCRUM WINES**
**MADMAN WINES**
**ON POINT**
**ON POINT WINES**
110 CAMINO ORUGA
NAPA CA 94558
25 E NAPA STREET STE D
SONOMA CA 95476
County of Napa
707-251-9602
**FULCRUM WINES, LLC**
State: CA
This business is conducted by:
LIMITED LIABILITY COMPANY
Registrant commenced to transact business under the fictitious business name or names listed above on: 7/16/2006
Original FBN Number:
2015-0000833
Statement Expires On: 6/25/2025
Signed: David Rossi
I hereby certify that this copy is a correct copy of the original statement on file in my office.
DATED: June 25, 2020
JOHN TUTEUR
Napa County Clerk-Recorder
By: L. RODRIGUEZ
Deputy Clerk-Recorder.
7/3, 10, 17, 24 #128072

---

## 903 Petition to Administer Estate

**PUBLIC NOTICE**
be required to give notice to interested persons unless they have waived notice or consented to the proposed action.) The independent administration authority will be granted unless an interested person files an objection to the petition and shows good cause why the court should not grant the authority.

**A hearing on the petition will be held in this court as follows: JULY 30, 2020 at 8:30 a.m. in Dept. A address of court: same as noted above.**

**If you object** to the granting of the petition, you should appear at the hearing and state your objections or file written objections with the court before the hearing. Your appearance may be in person or by your attorney.

**If you are a creditor or a contingent creditor of the decedent**, you must file your claim with the court and mail a copy to the personal representative appointed by the court within the later of either **(1) four months** from the date of first issuance of letters to a general personal representative, as defined in section 58(b) of the California Probate Code, or **(2) 60 days** from the date of mailing or personal delivery to you of a notice under section 9052 of the California Probate Code. **Other California statutes and legal authority may affect your rights as a creditor. You may want to consult with an attorney knowledgeable in California law.**

**You may examine** the file kept by the court. If you are a person interested in the estate, you may file with the court a Request for Special Notice (form DE-154) of the filing of an inventory and appraisal of estate assets or of any petition or account as provided in Probate Code section 1250. A Request for Special Notice form is available from the court clerk.
DATE:JUNE 30, 2020.
Clerk Of the Napa Superior Court
By: M. BAHENA, Deputy.
Attorney for Petitioner:
JOSEPH CHERRY, ASSISTANT PUBLIC ADMINISTRATOR
650 IMPERIAL WAY, STE 101
NAPA, CA 94559
707-253-4049
7/7, 10, 13 #128128

---

## 904 Name Change

**PUBLIC NOTICE**
**ORDER TO SHOW CAUSE FOR CHANGE OF NAME**
**SUPERIOR COURT OF CALIFORNIA, COUNTY OF NAPA,**
825 BROWN STREET,
NAPA 94559.
**CASE NO. 20CV000049**
PETITION OF:
**DOMINIK BENKOVIC D'ANGELO**
TO ALL INTERESTED PERSONS:
Petitioner:
**DOMINIK BENKOVIC D'ANGELO**
filed a petition with this court for a decree changing names as follows:
Present Name:
**DOMINIK BENKOVIC GRANADE-SIKAN**
Proposed Name:
**DOMINIK BENKOVIC GRANADE-SIKAN**

THE COURT ORDERS that all persons interested in this matter shall appear before this court at the hearing indicated below to show cause, if any, why the petition for change of name should not be granted. Any person objecting to the name changes described above must file a written objection that includes the reasons for the objection at least two court days before the matter is scheduled to be heard and must appear at the hearing to show cause why the petition should not be granted. If no written objection is timely filed, the court may grant the petition without a hearing.

**NOTICE OF HEARING**
DATE: August 13, 2020
Time: 8:30 AM Dept.: B
The address of the court is same as noted above.

A copy of this Order to Show Cause shall be published at least once each week for four successive weeks prior to the date set for hearing on the petition in the following newspaper of general circulation, printed in this county: NAPA VALLEY REGISTER.
Dated: JUNE 23, 2020
Clerk of the Napa Superior Court
By: M. BAHENA, Deputy
7/10, 17, 24, 31 #128128

---



**Money can't buy happiness but it can buy junk**

**Advertise**
**226-3719**

**Exhibit D**

# Record Searchlight
PART OF THE USA TODAY NETWORK

**PG&E Corporation**

**STATE OF WISCONSIN, COUNTY OF BROWN:**

I hereby certify that the Record Searchlight is a newspaper of general circulation within the provisions of the Government Code of the State of California, printed and published in the city of Redding, County of Shasta, State of California; that I am the principal clerk of the printer of said newspaper; that the notice of which the annexed clipping is a true printed copy was published in said newspaper on the following dates, to wit:

7/10/2020

such newspaper was regularly distributed to its subscribers during all of said period

Legal Clerk

I certify under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Subscribed and sworn to before on July 15, 2020:

Notary Public, State of Wisconsin, County of Brown

8-6-21
My commission expires

Ad No: GCI0451583
Customer No:
PO #:



## Amended Notice Of Petition To Administer Estate Of CECIL BODENSCHATZ CASE NUMBER 30606

To all heirs, beneficiaries, creditors, contingent creditors, and persons who may otherwise be interested in the will or estate, or both of CECIL BODENSCHATZ.

A Petition for Probate has been filed by **LLOYD MCNEELY** in the Superior Court of California, County of SHASTA.

The Petition for Probate requests that **LLOYD MCNEELY** be appointed as personal representative to administer the estate of the decedent.

The petition requests authority to administer the estate under the Independent Administration of Estates Act. (This authority will allow the personal representative to take many actions without obtaining court approval. Before taking certain very important actions, however, the personal representative will be required to give notice to interested persons unless they have waived notice or consented to the proposed action.) The independent administration authority will be granted unless an interested person files an objection to the petition and shows good cause why the court should not grant the authority.

A hearing on the petition will be held in this court as follows:

If you object to the granting of the petition, you should appear at the hearing and state your objections or file written objections with the court before the hearing. Your appearance may be in person or by your attorney.

If you are a creditor or a contingent creditor of the decedent, you must file your claim with the court and mail a copy to the personal representative appointed by the court within the later of either (1) four months from the date of first issuance of letters to a general personal representative, as defined in section 58(b) of the California Probate Code, or (2) 60 days from the date of mailing or personal delivery to you of a notice under section 9052 of the California Probate Code.

Other California statutes and legal authority may affect your rights as a creditor. You may want to consult with an attorney knowledgeable in California law.

You may examine the file kept by the court. If you are a person interested in the estate, you may file with the court a Request for Special Notice (form DE-154) of the filing of an inventory and appraisal of estate assets or of any petition or account as provided in Probate Code section 1250. A Request for Special Notice form is available from the court clerk.

Attorney for Petitioner: ROY F. "PETE" PETERS
P.O. BOX 31
PALO CEDRO, CA 96073
(530) 547-2100
July 10, 14, 17, 2020     4276463

## Notice Of Petition To Administer Estate Of BONNIE DAMBACHER CASE NUMBER 30556

To all heirs, beneficiaries, creditors, contingent creditors, and persons who may otherwise be interested in the will or estate, or both of BONNIE DAMBACHER.

A Petition for Probate has been filed by **DEBORAH WILLIAMS** in the Superior Court of California, County of SHASTA.

The Petition for Probate requests that **DEBORAH WILLIAMS** be appointed as personal representative to administer the estate of the decedent.

The petition requests authority to administer the estate under the Independent Administration of Estates Act. (This authority will allow the personal representative to take many actions without obtaining court approval. Before taking certain very important actions, however, the personal representative will be required to give notice to interested persons unless they have waived notice or consented to the proposed action.) The independent administration authority will be granted unless an interested person files an objection to the petition and shows good cause why the court should not grant the authority.

A hearing on the petition will be held in this court as follows:

**DATE: August 17, 2020  TIME: 2:30 P.M.  Dept: 7**
**Superior Court of California, County of Shasta,**
**1500 Court Street, Room 319  Redding, CA 96001**

If you object to the granting of the petition, you should appear at the hearing and state your objections or file written objections with the court before the hearing. Your appearance may be in person or by your attorney.

If you are a creditor or a contingent creditor of the decedent, you must file your claim with the court and mail a copy to the personal representative appointed by the court within the later of either (1) four months from the date of first issuance of letters to a general personal representative, as defined in section 58(b) of the California Probate Code, or (2) 60 days from the date of mailing or personal delivery to you of a notice under section 9052 of the California Probate Code.

Other California statutes and legal authority may affect your rights as a creditor. You may want to consult with an attorney knowledgeable in California law.

You may examine the file kept by the court. If you are a person interested in the estate, you may file with the court a Request for Special Notice (form DE-154) of the filing of an inventory and appraisal of estate assets or of any petition or account as provided in Probate Code section 1250. A Request for Special Notice form is available from the court clerk.

Attorney for Petitioner: MARGARITA VIENNEAU, ESQ
1648 Riverside Drive
Redding, CA 96022
Phone: (530) 244-6286

July 3, 7, 10, 2020     4266515

## Notice Of Petition To Administer Estate Of KIM EDWARD KRTEK CASE NUMBER 30627

To all heirs, beneficiaries, creditors, contingent creditors, and persons who may otherwise be interested in the will or estate, or both of KIM EDWARD KRTEK.

A Petition for Probate has been filed by **AMBER KIMBERLY BOSTER** in the Superior Court of California, County of SHASTA.

The Petition for Probate requests that **AMBER KIMBERLY BOSTER** be appointed as personal representative to administer the estate of the decedent.

The petition requests authority to administer the estate under the Independent Administration of Estates Act. (This authority will allow the personal representative to take many actions without obtaining court approval. Before taking certain very important actions, however, the personal representative will be required to give notice to interested persons unless they have waived notice or consented to the proposed action.) The independent administration authority will be granted unless an interested person files an objection to the petition and shows good cause why the court should not grant the authority.

A hearing on the petition will be held in this court as follows:

**DATE: 6/3/2020  TIME: 2:30 P.M.  Dept: 7**
**Superior Court of California, County of Shasta,**
**1500 Court Street, Room 319  Redding, CA 96001**

If you object to the granting of the petition, you should appear at the hearing and state your objections or file written objections with the court before the hearing. Your appearance may be in person or by your attorney.

If you are a creditor or a contingent creditor of the decedent, you must file your claim with the court and mail a copy to the personal representative appointed by the court within the later of either (1) four months from the date of first issuance of letters to a general personal representative, as defined in section 58(b) of the California Probate Code, or (2) 60 days from the date of mailing or personal delivery to you of a notice under section 9052 of the California Probate Code.

Other California statutes and legal authority may affect your rights as a creditor. You may want to consult with an attorney knowledgeable in California law.

You may examine the file kept by the court. If you are a person interested in the estate, you may file with the court a Request for Special Notice (form DE-154) of the filing of an inventory and appraisal of estate assets or of any petition or account as provided in Probate Code section 1250. A Request for Special Notice form is available from the court clerk.

Petitioner AMBER KIMBERLY BOSTER
3480 WOODBURY DR.
REDDING, CA 96003
530-524-1370
Published: July 10, 17, 24, 2020     Ad No.: 4275117

## Notice Of Petition To Administer Estate Of RONALD SHRINER, also known as RONALD G. SHRINER, also known as RON SHRINER CASE NUMBER 30618

To all heirs, beneficiaries, creditors, contingent creditors, and persons who may otherwise be interested in the will or estate, or both of RONALD SHRINER, also known as RONALD G. SHRINER, also known as RON SHRINER.

A Petition for Probate has been filed by Jane P. Seal in the Superior Court of California, County of SHASTA. The Petition for Probate requests that Jane P. Seal be appointed as personal representative to administer the estate of the decedent.

The petition requests the decedent's will and codicils, if any, be admitted to probate. The will and any codicils are available for examination in the file kept by the court.

The petition requests authority to administer the estate under the Independent Administration of Estates Act. (This authority will allow the personal representative to take many actions without obtaining court approval. Before taking certain very important actions, however, the personal representative will be required to give notice to interested persons unless they have waived notice or consented to the proposed action.) The independent administration authority will be granted unless an interested person files an objection to the petition and shows good cause why the court should not grant the authority.

A hearing on the petition will be held in this court as follows:

**DATE: July 27, 2020  TIME: 2:30 P.M.  Dept: 7**
**Superior Court of California, County of Shasta,**
**1500 Court Street, Redding, CA 96001**

If you object to the granting of the petition, you should appear at the hearing and state your objections or file written objections with the court before the hearing. Your appearance may be in person or by your attorney.

If you are a creditor or a contingent creditor of the decedent, you must file your claim with the court and mail a copy to the personal representative appointed by the court within the later of either (1) four months from the date of first issuance of letters to a general personal representative, as defined in section 58(b) of the California Probate Code, or (2) 60 days from the date of mailing or personal delivery to you of a notice under section 9052 of the California Probate Code.

Other California statutes and legal authority may affect your rights as a creditor. You may want to consult with an attorney knowledgeable in California law.

You may examine the file kept by the court. If you are a person interested in the estate, you may file with the court a Request for Special Notice (form DE-154) of the filing of an inventory and appraisal of estate assets or of any petition or account as provided in Probate Code section 1250. A Request for Special Notice form is available from the court clerk.

Attorney for Petitioner: Brian J. Van Voris, Esq.
Law Offices of Pugh & Van Voris
1300 West St., Ste. A
REDDING, CA 96001
(Telephone): (530) 246-1430
July 3, 7, 10, 2020     4266527

## SUMMARY OF CITY OF REDDING ORDINANCE NO. 2625

Pursuant to Government Code section 36933(c)(1), the following is a summary report of the City of Redding's Ordinance No. 2625, an ordinance of the City Council of the City of Redding amending Redding Municipal Code Title 4 (Revenue and Finance), Chapter 4.20 (Purchasing System), and Chapter 4.22 (Public Works), relating to the City's administration of contracts and purchase orders.

The proposed ordinance was introduced by title only at the regular Redding City Council meeting held on June 16, 2020, and will be considered for adoption at its next regular meeting on July 21, 2020. The purpose of the amendments is to be more cohesive with bidding guidelines, streamline procedures, effectuate savings in labor, provide additional authority for the authorization of contracts at the staff level, and increase clarity regarding the City's procurement processes.

The ordinance proposes amendments to the following sections:

Sections:
4.20.040  Purchasing Officer – Duties
4.20.080  Bidding – When Dispensed With
4.20.100  Purchase Orders
4.20.120  Formal Contract Procedures
4.20.130  Open Market Purchasing Procedure
4.20.150  Surplus Supplies and Equipment
4.20.140  Unlawful Purchases Designated
4.20.180  Local Business Preferences
4.22.070  Informal Bidding Procedures

The ordinance proposes adding the following sections:
4.20.190  Procurement for Other Related Agencies
4.20.200  Contracts of Procurement in Response to Formally Declared Emergency or Disaster

A copy of the full ordinance is available for inspection at the City of Redding, Office of the City Clerk.
DATED: July 10, 2020
Published: June 22, 2020     Ad No.: 4276577

## NOTICE TO BIDDERS

Bids open 07/23/2020

Bid Book dated 06/30/2020

General work description:

The "Work", in general, consists of placing hot mix asphalt overlay, cold planing, replacing existing asphalt concrete surfacing, shoulder restoration and placing traffic striping and pavement markings on various Shasta County highways as provided for in the Contract Documents.

The Department will receive sealed bids for construction on GAS POINT ROAD (1M0IB) AND WEST ANDERSON DRIVE (1H04A) REHABILITATION - 2020.

Contract No. 702008

The Contractor must have either a Class A license or any combination of Class C licenses which constitutes a majority of the work.

In accordance with SB 854 passed by the California State Senate on June 20, 2014, all contractors and subcontractors bidding and performing work on Public Works Projects are required to register with the Department of Industrial Relations (DIR) on an annual basis. See sections 2 and 3 of the Standard Specifications for contractors' registration requirements.

Bids must be on a unit price basis.

Complete the work within 20 working days.

The estimated cost of the project is $1,615,100.00.

The Department will receive bids until 11:00 AM on 07/23/2020 at the Shasta County Clerk of the Board, 1450 Court Street, Suite 308 B, Redding, California, 96001. Mail in bids need to arrive at the above location prior to this time. Postmarks will not validate bid submissions. Walk in bids may be delivered at the same address and must be inserted into the drop box, which will be available outside of the hallway door at the Office of the Clerk of the Board at 1450 Court Street, Suite B, Redding, California. Bids received after 11:00 AM on 07/23/2020 will not be accepted. The Department will open and publicly read bids at 1:00 PM on 07/23/2020. Due to circumstances caused by the COVID-19 pandemic, any bidders and anyone wishing to attend the opening of bids may do so via web conference and/or conference call. The public will not be physically allowed to attend the bid opening in person. To view the bid opening, you must use "Go to Meeting" from a computer, tablet or smartphone at: https://global.gotomeeting.com/join/9948258 81. Bidders can also dial in by phone +1 (312) 757-3121 access code 994-682-581.

BIDDING DOCUMENTS: Each bid must be in accordance with the bid documents, construction drawings and specifications on file at the Shasta County Department of Public Works 1855 Placer Street, Redding, California 96001. These bid documents, construction drawings and specifications are available for viewing or downloading through the Shasta County Department of Public Works website at:

http://www.co.shasta.ca.us/html/Public_Works/Bids_Proposals/Bids_Proposals.htm

Also, through this website, a bidder may view and join a Document Holder's List for this project. Joining the Document Holder's List, and checking to see if there are addendas issued prior to bidding are the sole responsibility of the bidder. If any addendum is issued, the County will attempt to notify each document holder on the Document Holder's List using the e-mail address and/or the FAX numbers entered on the Document Holder's List. The County shall not in any way be responsible or liable for failure of a document holder to receive notification. It is the bidder's responsibility, prior to submitting the bid, to check the website or otherwise inquire to determine whether the County has issued any addenda.

Note that there are local blueprinting companies that can download and sell paper copies of the bid documents, construction drawings and specifications. Bidders are responsible for arranging and purchasing these paper copies if they so choose.

INQUIRIES: All inquiries regarding the project should be directed to the office of the Department of Public Works of Shasta County. Attention: Ron Fox at (530) 245-6817 (phone), (530) 225-5667 (fax), or rfox@co.shasta.ca.us (email).

Questions about alleged patent ambiguity of the plans, specifications, or estimate must be asked before bid opening. After bid opening, the Department does not consider these questions as bid protests.

The successful bidder shall furnish a payment bond and a performance bond.

Prevailing wages are required on this Contract. The Director of the California Department of Industrial Relations determines the general prevailing wage rates. Copies of the prevailing wage rate of per diem are on file at the Shasta County Public Works office. They can also be obtained at the DIR website, http://www.dir.ca.gov.

Wage rates and restrictions on working days and times shall meet all requirements of the Labor Code of the State of California for public contracts. The bidder may contact the Director

of the Department of Industrial Relations, phone number (415) 703-4774, website http://www.dir.ca.gov/DLSR/statistics_research.html to obtain a schedule of general prevailing wages applicable to the location and work to be done. The Contractor and the Contractor's subcontractors are responsible for compliance with the requirements of Sections 1777.5 and 1777.6 of the Labor Code of the State of California regarding employment of apprentices.

No bid will be considered unless it is made on the bid to the County of Shasta form found in the Contract Documents and is made in accordance with the provisions of the Bid Requirements and Conditions set forth under Section 2 of these Special Provisions.

In accordance with California Labor Code Section 1771.1, a contractor or subcontractor shall not be qualified to bid on, be listed in a bid proposal, subject to the requirements of Section 4104 of the Public Contract Code, or engage in the performance of any contract for public work, as defined in this chapter, unless currently registered and qualified to perform public work pursuant to Section 1725.5. It is not a violation of this section for an unregistered contractor to submit a bid that is authorized by Section 7029.1 of the Business and Professions Code or by Section 10164 or 10165.1 of the Public Contract Code, provided the contractor is registered to perform public work pursuant to Section 1725.5 at the time the contract is awarded.

The Contractor shall comply with Title 8, Section 16451 of the California Code of Regulations and shall be responsible for posting per Subsection (d).

The Contractor may elect to substitute securities for any monies withheld to ensure performance under the Contract in accordance with the provisions of Section 22300 of the Public Contract Code and the Contract Documents.

The County of Shasta reserves the right to reject any or all bids, or to waive any irregularity in any bid.

Board of Supervisors
County of Shasta
State of California

By: Patrick J. Minturn
Public Works Director
Published: July 2 - 11, 2020     Ad No.: 4266362

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF THE SAN FRANCISCO DIVISION

In re
P  E CORPORATION,
PACIFIC  AS AND ELECTRIC CO  PANY,
  Debtor.

Bankruptcy Case
No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS AND SHAREHOLDER PROPONENTS JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

PLEASE TAKE NOTICE that:
1. T  P  C    On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the B     C     ) entered an order [Docket No. 8053] (the C             O        ) con irming the Debtors and Shareholder Proponents Joint Chapter 11 Plan of Reorganization dated June 19, 2020 [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modi ed, amended, or supplemented from time to time, the P    ). Capitalized terms used but not de ned herein have the meanings ascribed to such terms in the Plan or the Con irmation Order, as applicable.
2. T  E      D    The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.
3. P  B     The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Con irmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder has accepted the Plan.
4. CHANNELIN  IN JUNCTION

(additional court notice text)

---



(bankruptcy notice continues)

---

## Notice of Public AUCTION

As defined by the California Self Storage Facilities Act Business and Professions Code: Sections 21700-21716 of sale: July 24, 2020 at 12:00 PM Auction conducted by Storage Auction Experts (209)667-5797. Agent for Owner, Twin View Storage 797 Twin View Blvd Redding. Property being sold is general household items Lisa Jarkins 204, 5x10 Joson Lord 293, 5x10 Shawn Coffin 62, 5x10

Published: July 10, 17, 2020     0004273875

## NOTICE OF PUBLIC LIEN SALE

Notice is hereby given that the undersigned intends to sell the personal property below to enforce a lien imposed on said property pursuant to Sections 21700-21716 of the Business & Profession Code Section 2328 or the UCC Section 535 of the Penal Code and provisions of the Civil Code.

The undersigned will sell at public sale, by competitive bidding July 23, 2020 at 9:00 a.m. on premises where said items are stored at Shasta Lake R.V. - Boat & Mini Storage, 14700 Wonderland Blvd., Redding, CA 96003, Shasta County, State of California, the following:

Miscellaneous boxes, household items and furniture.

St. Pierro, Gary 13x55 G12
Nolan, Shepard, Sandra
11x28 A16

Lock out at time of sale. Purchases to be paid for at time of sale in cash only. All purchased items sold as is, where is, and must be removed at time of sale. Sale subject to cancellation in the event of settlement between owner and obligated party.

Auctioneer: John Cardoza – Bond #5860670
Shasta Lake R.V - Boat & Mini Storage
(530) 275-1320 or (530)
246-7624 business Office
Published: July 10, 17, 2020     0004273871

**Exhibit E**

# DECLARATION OF PUBLICATION OF
## SAN FRANCISCO CHRONICLE

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

In re:
**PG&E CORPORATION,**
- and -
**PACIFIC GAS AND ELECTRIC COMPANY,**
Debtors.

Bankruptcy Case No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

**PLEASE TAKE NOTICE** that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the sole source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the sole source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust.** The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or against the Debtors whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Victim Claims, including all of the following actions:

a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, **no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease**, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.3 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020
WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP

---

Diane FitzGibbon

declares that:

The annexed advertisement has been regularly published in the

## SAN FRANCISCO CHRONICLE

which is and was at all times herein mentioned established as newspaper of general circulation in the City and County of San Francisco, State of California, as that term is defined by Section 6000 of the Government Code.

SAN FRANCISCO CHRONICLE
(Name of Newspaper)

901 Mission Street

San Francisco, CA 94103

From 7/10/2020
To 7/10/2020
Namely, on 7/10/2020

(Dates of Publication)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 7/15/2020

at San Francisco, California.

*Diane FitzGibbon*

Diane FitzGibbon

## BOSNIA-HERZEGOVINA

# Many massacre victims still not IDd 25 years later

**By Sabina Niksic and Eldar Emric**

SREBRENICA, Bosnia-Herzegovina — A quarter of a century after they were killed in Europe's worst massacre since World War II, eight Bosnian men and boys will be laid to rest Saturday in a cemetery just outside of Srebrenica — their marble gravestones joining thousands more, each with the same month and year of death.

Over 8,000 Bosnian Muslims perished in 10 days of slaughter after the town was overrun by Bosnian Serb forces in the closing months of the country's 1992-95 fratricidal war. Their executioners tried to ensure they would never get the sort of memorial Srebrenica holds every year. Their bodies were plowed into hastily made mass graves and then

later dug up with bulldozers and scattered among other burial sites to hide the evidence of the crime.

But, since 1996, Bosnian and international scientists have slowly unlocked what was once described as the "biggest forensic puzzle anywhere in the world," unearthing the bones from those gruesome death pits and connecting them with the names of the people to whom they belonged.

When the remains are identified, they are returned to their relatives and reburied in the Potocari memorial cemetery. And each year on July 11, the anniversary of the day the killing began in 1995, relatives gather for a funeral of the recently identified. Most of the dead were men and boys, so most of the mourners are women — mothers and sisters, daughters and wives.

For years, every time a new mass grave was found, she rushed to the site hoping to see



Elvis Barukcic / AFP / Getty Images
Mejra Djogaz, 71, a survivor of the Srebrenica 1995 massacre, kisses the tombstones of sons Omer, 19, and Munib, 21. They were killed in the large-scale killings in Bosnia's 1992-95 war.

Massacre survivor Fazila Efendic will attend the collective funeral this year to witness her sisters in grief bury a handful of bones, as she once did.

Having a grave to visit will bring them some relief, Efendic says. Her husband, Hamed, and her only son, Fejzo, were killed in the massacre.

something she would recognize as having belonged to her loved ones.

"There are no words to describe the sorrow you feel when you are looking for your loved ones) bone by bone," Efendic said. "I visited every newfound mass grave; I've seen the inside of every one of them."

All of Hamed's remains were found in two mass graves, one

unearthed in 1998 and the other in 2000. Fejzo — or rather two of his leg bones — was found in another one several years later. Efendic buried her husband at Potocari after his remains were found but waited years before finally deciding to do the same with Fejzo's partial remains.

*Sabina Niksic and Eldar Emric are Associated Press writers.*

## BURKINA FASO

# Volunteer crew unable to adequately battle jihadists

**By Sam Mednick**

KONGOUSSI, Burkina Faso — Armed only with a knife, Issa Tamboure was no match for gun-wielding jihadists who attacked his village in northern Burkina Faso in March.

So Tamboure, 63, rounded up his family — including his 13 children — and ran, eventually reaching a camp for people displaced by violence.

But Tamboure was not a typical civilian fleeing

the extremists linked to al Qaeda and the Islamic State organization who have been dramatically escalating their attacks in the West African nation in recent years. He is among the volunteers who signed up with Burkina Faso's military to help fight the militants.

But his plight shows the program's weakness. With little training, few weapons and dwindling means amid an economic downturn fueled by the

coronavirus pandemic, volunteers now say they are unable to adequately battle the well-armed militants.

"When you don't have enough to eat, you don't have enough strength to use a rifle," said Tamboure, running his fingers over the family's tattered soup pot in Kongoussi, about 15 miles from his home. He said the number of volunteers who patrol a swath between his village and the camp at night has fallen in recent months to around 200 from 500.

For years, Burkina Faso was spared the kind of Islamic extremism that hit neighboring Niger and Mali, where a 2013 French-led military intervention dislodged jihadists from power in several major towns. But deaths from attacks in the country have risen from about 80 in 2016 to over 1,800 in 2019, according to



Sam Mednick / Associated Press
Volunteer fighters drive motorcycles during an event in the capital, Ouagadougou, Burkina Faso.

the United Nations. Burkina Faso's military has struggled to combat the violence despite training and aid from the French and U.S. militaries.

In an attempt to bolster the army, the government passed a law to arm civilians in January. Many towns have no government or military presence, leaving only this corps of volunteers to protect their villages.

Armed with a few hunting rifles and knives, the fighters patrol the surrounding bush and escort displaced civilians back to their villages to plant crops or pick up belongings or to other areas to visit relatives. In Kongoussi last month, residents said they were grateful for the patrols.

"Even if I'm a little afraid, I feel safer with the volunteers," said Souleim-

man Soule, 44.

But several volunteer fighters in hard hit areas in the north and west of the country said that because of the economic downturn caused by the pandemic they no longer have money to buy gas for their motorbikes to conduct patrols.

Analysts are concerned that restrictions on movement imposed to control the virus will make it harder for the volunteer fighters to receive equipment and supplies, thus emboldening the militants, especially in rural areas.

Meanwhile, the volunteers have been targeted by the jihadists. In the western region of Boucle du Mouhoun last month, several people said volunteer fighters were being killed in the markets.

Such attacks were predictable, say experts.

*Sam Mednick is an Associated Press writer.*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:
PG&E CORPORATION,
- and -
PACIFIC GAS AND ELECTRIC COMPANY,
Debtors.

Bankruptcy Case No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

PLEASE TAKE NOTICE that:

1.  **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order (Docket No. 8053) (the "**Confirmation Order**") confirming the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 (Docket No. 8048) (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2.  **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3.  **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all distribution, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4.  **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the sole source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and that the sole source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

    a.  **commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or Interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;**

    b.  **enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;**

    c.  **creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;**

    d.  **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and**

    e.  **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.**

5.  **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

    a.  Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

    b.  Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6.  **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

    a.  Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, **no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease**, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

    b.  Pursuant to Paragraph 32d. of the Confirmation Order:

        i.  the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

        ii.  any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

        iii.  the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

    For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7.  **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including those Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8.  **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, are also available on the website for the Fire Victim Trust: https://www.firevictimtrust.com/.

Dated: July 2, 2020
WEIL, GOTSHAL & MANGES LLP
KELLER BENVENISTI KIM LLP



REGAIN YOUR FREEDOM AND LIVE BARRIER-FREE AT HOME.


BRUNO
for your independence

Call Mark Feinman
(510) 295-4665
for a free estimate on
your disability access project

Stairlifts
Sales • Service • New • Used


COMPLETE
ACCESS

Locally Owned and Operated in Berkeley since 1976
CA License: 659163
Residential Service Sales Support
www.thecompleteaccess.com



GRAND RE-OPENING
Up to 25% Off Factory cost
Plus no sales tax.
Extra precautions being taken for everyone's safety.

SAN FRANCISCO'S
BEST KEPT SECRET

• Same day delivery          • High end name brands
• Factory outlet              • Factory cost or below
• 17000 sq foot showroom     • Changes weekly


9th street
DESIGNER CLEARANCE

SAME DAY DELIVERY
IN THE BAY AREA

540 9th Street
San Francisco, CA 94103
415.870.6916

www.9thStreetDesignerClearance.com

**Exhibit F**

# PROOF OF PUBLICATION

**The BAKERSFIELD CALIFORNIAN**
**P.O. BOX 440**
**BAKERSFIELD, CA 93302**

| | | | |
|---|---|---|---|
| Ad Number: | 14729347 | PO #: | |
| Edition: | CALR | Run Times | 1 |
| Class Code | Main | | |
| Start Date | 07/10/2020 | Stop Date | 07/10/2020 |
| Billing Lines | 1/4 page | Inches | |
| Total Cost | $1250.00 | Account | |
| Billing | | | |
| Address | | | |

STATE OF CALIFORNIA
COUNTY OF KERN

I AM A CITIZEN OF THE UNITED STATES AND A RESIDENT
OF THE COUNTY AFORESAID: I AM OVER THE AGE OF
EIGHTEEN YEARS, AND NOT A PARTY TO OR INTERESTED
IN THE ABOVE ENTITLED MATTER. I AM THE ASSISTANT
PRINCIPAL CLERK OF THE PRINTER OF THE BAKERSFIELD
CALIFORNIAN, A NEWSPAPER OF GENERAL
CIRCULATION, PRINTED AND PUBLISHED DAILY IN THE
CITY OF BAKERSFIELD COUNTY OF KERN,

AND WHICH NEWSPAPER HAS BEEN ADJUDGED A
NEWSPAPER OF GENERAL CIRCULATION BY THE SUPERIOR
COURT OF THE COUNTY OF KERN, STATE OF CALIFORNIA,
UNDER DATE OF FEBRUARY 5, 1952, CASE NUMBER 57610;
THAT THE NOTICE, OF WHICH THE ANNEXED IS A PRINTED
COPY, HAS BEEN PUBLISHED IN EACH REGULAR AND
ENTIRE ISSUE OF SAID NEWSPAPER
AND NOT IN ANY SUPPLEMENT THEREOF ON THE
FOLLOWING DATES, TO WIT:

07/10/2020

| | |
|---|---|
| Solicitor I.D.: | 0 |
| First Text | United States Bankruptcy CourtNorthern D |
| Ad Number | 14729347 |

I CERTIFY (OR DECLARE) UNDER PENALTY OF PERJURY
THAT THE FOREGOING IS TRUE AND CORRECT.

Ashley Sanchez

DATED AT BAKERSFIELD CALIFORNIA

7.14.2020

| | |
|---|---|
| In re:<br>**PG&E CORPORATION,**<br> - and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors. | Bankruptcy Case<br>No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered) |

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

**PLEASE TAKE NOTICE** that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or interests in, the Debtors, whether or not the Claims or interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole source* of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the *sole source* of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

   a. **commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;**

   b. **enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;**

   c. **creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;**

   d. **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and**

   e. **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.**

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

   a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to assume, assign, or reject filed by the Debtors on or before June 20, 2020, or (iv)

is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

   b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assignment, and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

   a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, **no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease,** as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

   b. Pursuant to Paragraph 32d of the Confirmation Order:

   i. The Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

   ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

   iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

   For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

# Community partnership hopes to fuel citizens and restaurants

**BY EMA SASIC**
esasic@bakersfield.com

Food insecurity and economic instability have been brought to the forefront in Kern County during the COVID-19 pandemic, but a new partnership hopes to provide some fuel for individuals and small businesses in need.

Representatives from Kern Economic Development Foundation, Southern California Gas Co. and the Community Action Partnership of Kern gathered Thursday outside Victor's Mexican Grill on Brimhall Road to kick off a new Fueling Our Communities partnership linking seniors and farmworkers with meals from local restaurants.

The goal is to provide 450 to 500 meals to seniors and farmworkers each week for 13 weeks. About 100 Kern County small business restaurants will participate, all of which are located in the SoCalGas service area.

The program will be operational by the end of the month.

During the last few months, CAPK has seen an increase in the number of people seeking food resources, explained Pritika Ram, director of administration at CAPK.

"Our food bank on any given month does roughly 1.2 million pounds of food. During the peak times of COVID, we increased our food distribution to roughly 2.4 million pounds of food every month," Ram said. "Through our 211 call center, a lot of the calls we're getting are around food insecurity."

Small-business restaurants have also been impacted by the coronavirus, having to shut down their



Southern California Gas Co. representative Rob Duchow speaks about partnering with the Kern Economic Development Foundation and Community Action Partnership of Kern for the Fueling Our Communities program.
ALEX HORVATH / THE CALIFORNIAN



Victor's Mexican Grill, owned by Victor Lopez, is one of about 100 small business restaurants in Kern County participating in the Fueling Our Communities program.

locations and alter services. Through the partnership, CAPK CEO Jeremy Tobias said the program finds a way to solve problems both individuals and restaurants face.

"It helps alleviate food insecurity for those in need and those vulnerable in the community, but it also helps our local businesses and helps keep people employed ... to keep people from needing the services that we provide," he said.

CAPK focuses on linking individuals to various social service agencies. It receives about 100,000 calls each month.

Victor's Mexican Grill

has dealt with challenges the last few months, explained owner Victor Lopez. Though the Brimhall Road location has received plenty of community support, his downtown location has been hardest hit, due to many people working from home and not in surrounding office buildings. Lopez estimates service has dropped by 50 percent.

He was also in the process of signing a lease for a fourth location in southwest Bakersfield in March. Once the coronavirus prompted stay-at-home orders and closures, however, the project went on

hold.

Lopez said he's "excited" to participate in the program to support community members and alleviate the stress surrounding where someone might find their next meal.

"It's awesome to be part of that," Lopez said. "It's great on (SoCalGas') part to be so generous and do something for a community in these challenging times."

To learn more about the Fueling Our Communities partnership and how to participate, call 211.

*Ema Sasic can be reached at 661-395-7392.*

# CSUB: We 'stand with our international students' amid uncertainty over US studies

**BY EMA SASIC**
esasic@bakersfield.com

Cal State Bakersfield is standing behind its international students after U.S. Immigration and Customs Enforcement announced Monday new visa guidelines that don't allow international students to continue studying in the United States if they take all of their courses online.

ICE notified colleges that international students will be forced to leave the U.S. or transfer to another college if their schools offer online-only courses this fall. New visas won't be issued to students at those schools, and others at universities offering a mix of online and in-person classes will be barred from taking all their classes online.

The guidance says international students won't be exempt even if an outbreak forces their schools online during the fall term.

In May, CSU Chancellor Timothy White announced courses will be primarily delivered online for the fall 2020 semester, with limited exceptions for in-person activities and instruction.

CSUB President Lynnette Zelezny and Provost Vernon Harper wrote in an email to the campus community that university leaders, in consultation with the Chancellor's Office, are reviewing what the ICE decision means for CSUB's international

students. There were 131 international students enrolled in the spring, and 28 were scholar-athletes.

"We know this decision is distressing for our international students, faculty and staff. This is a matter of urgency, and we will have more information soon on how the CSU and our own campus plan to proceed," the email stated. "In the meantime, please know that CSU Bakersfield stands with our international students, their families, friends and supporters in our 'Runner community."

CSU Director of Public Affairs Toni Molle added that the Chancellor's Office is currently working with individual campuses to review online and in-person offerings to determine if they meet the new ICE directives.

"International students add to the vibrant diversity of CSU's 23 campuses," Molle wrote in an email. "The new policy guidance from the U.S. Immigration and Customs Enforcement could immediately lead to slowing or even worse, halting of more than 11,300 students' paths to achieving their higher education goals and potential contributions to our communities and economy."

*The Associated Press contributed to this report. Ema Sasic can be reached at 661-395-7392. Follow her on Twitter: @ema_sasic.*

# SoCal fireworks brought spike in pollution

**THE ASSOCIATED PRESS**

Air quality in a wide swath of Southern California during the Fourth of July weekend was worse than in any year in the last decade and the cause was likely the increased use of personal fireworks and weather conditions, regulators said.

Public fireworks shows were canceled due to coronavirus concerns but there was extensive use of personal fireworks that filled the skies over Southern California cities with plumes of aerial bursts and explosions across the region

for hours.

Meanwhile, dry, stagnant air trapped the pollution longer than usual, the South Coast Air Quality Management District said.

Fireworks emit high levels of particulate matter known as PM2.5 and PM10 and metal air pollutants.

Overall average concentrations of PM2.5 in the South Coast Air Basin were 70 percent higher than previous years between 7 p.m. on July 4 to 7 a.m. July 5, the district said. Higher concentrations were in central Los Angeles, North

Hollywood and Anaheim.

"Some instruments were found to have so much particulate matter residue on them that it resulted in readings so high the data could not be properly validated," the district said.

Air quality in overnight and early morning hours reached the categories of "very unhealthy" and "hazardous" in parts of Los Angeles and Orange counties.

The district spans Orange County and major portions of Los Angeles, San Bernardino and Riverside counties.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

In re:                                    Bankruptcy Case
PG&E CORPORATION,                          No. 19-30088 (DM)
        - and -                            Chapter 11
PACIFIC GAS AND ELECTRIC COMPANY,          (Lead Case)
                       Debtors.            (Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND
OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND
SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN
OF REORGANIZATION DATED JUNE 19, 2020

PLEASE TAKE NOTICE that:
[dense legal notice text follows in two columns]

**Exhibit G**

# PROOF OF PUBLICATION

## (2015.5 C.C.P.)

STATE OF CALIFORNIA

County of Sonoma

I am a citizen of the United States and a resident of the county aforesaid: I am over the age of eighteen years, and not a party to or interested in the above entitled matter. I am the principal clerk of the printer of The Press Democrat, a newspaper of general circulation, printed and published DAILY IN THE City of Santa Rosa, County of Sonoma; and which newspaper has been adjudged a newspaper of general circulation by the Superior Court of the County of Sonoma, State of California, under the date of November 29, 1951, Case number 34831, that the notice, of which the annexed is a printed copy (set in type not smaller than nonpareil), has been published in each regular and entire issue of said newspaper and not in any supplement thereof on the following dates to wit:

The Press Democrat - Legal Notices

7/10 - 7/10/2020

I certify (or declare) under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Dated at Santa Rosa, California, on

Jul 10, 2020

_____

SIGNATURE

---

Proof of Publication of

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:
PG&E CORPORATION,
- and -
PACIFIC GAS AND ELECTRIC COMPANY,
Debtors.

Bankruptcy Case
No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

PLEASE TAKE NOTICE that:

[Dense legal notice text follows in two columns]

WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP

---

# PUBLIC NOTICE ▪▪▪ PUBLIC NOTICE ▪▪▪ PUBLIC NOTICE

## NOTICE OF ELECTION

NOTICE IS HEREBY GIVEN in accordance with the provisions of the Uniform District Election Law of the State of California, that a Consolidated General District Election will be held on Tuesday, November 3, 2020, in the following districts located either wholly or partially in Sonoma County, and that candidates to be voted upon at said election may be nominated for the following offices:

### COUNTY BOARD OF EDUCATION MEMBER(S)

| DISTRICT(S) | NO. TO BE ELECTED | TERM OF OFFICE | QUALIFICATIONS |
|---|---|---|---|
| Sonoma County Brd of Ed, Area 1 | 1 | 4 yrs | Registered Voter of the District |
| Sonoma County Brd of Ed, Area 3 | 1 | 4 yrs | " |
| Sonoma County Brd of Ed, Area 5 | 1 | 4 yrs | " |
| Marin County Brd of Ed, Area 7 | 1 | 4 yrs | " |
| Napa County Brd of Ed, Area 7 | 1 | 4 yrs | " |

### COMMUNITY COLLEGE BOARD MEMBER(S)

| DISTRICT(S) | NO. TO BE ELECTED | TERM OF OFFICE | QUALIFICATIONS |
|---|---|---|---|
| Sonoma County Junior College, Oak/Soq/May Area | 1 | 4 yrs | Registered Voter of the District |
| Sonoma County Junior College, Santa Rosa Area | 2 | 4 yrs | " |
| Napa Valley Community College, Area 7 | 1 | 4 yrs | " |

### UNIFIED SCHOOL DISTRICT BOARD MEMBER(S)

| DISTRICT(S) | NO. TO BE ELECTED | TERM OF OFFICE | QUALIFICATIONS |
|---|---|---|---|
| Calistoga Jt Unified | 3 | 4 yrs | Registered Voter of the District |
| Cloverdale Unified | 3 | 4 yrs | " |
| Cotati-Rohnert Park Unified, Area 3 | 1 | 4 yrs | " |
| Cotati-Rohnert Park Unified, Area 5 | 1 | 4 yrs | " |
| Geyserville Unified | 3 | 4 yrs | " |
| Geyserville Unified | 1 | 2 yrs | " |
| Healdsburg Unified | 3 | 4 yrs | " |
| Shoreline Unified, Area 3 | 1 | 4 yrs | " |
| Sonoma Valley Unified, Trustee Area 3 | 1 | 4 yrs | " |
| Sonoma Valley Unified, Trustee Area 4 | 1 | 4 yrs | " |
| Sonoma Valley Unified, Trustee Area 5 | 1 | 4 yrs | " |
| Windsor Unified | 2 | 4 yrs | " |

*Candidates for Petaluma Jt. Union High School District must file with the Petaluma City Clerk, 11 English St, Petaluma. Call (707) 778-4360 for more information.

### HIGH SCHOOL DISTRICT BOARD MEMBER(S)

| DISTRICT(S) | NO. TO BE ELECTED | TERM OF OFFICE | QUALIFICATIONS |
|---|---|---|---|
| City of Santa Rosa High, Trustee Area 1 | 1 | 4 yrs | Registered Voter of the District |
| City of Santa Rosa High, Trustee Area 3 | 1 | 4 yrs | " |
| City of Santa Rosa High, Trustee Area 5 | 1 | 4 yrs | " |
| Petaluma Jt Union High* | 2 | 4 yrs | " |
| Pt Arena Jt Union High | 3 | 4 yrs | " |
| West Sonoma County Union High | 2 | 4 yrs | " |

*Candidates for Petaluma Jt Union High School District must file with the Petaluma City Clerk, 11 English St, Petaluma. Call (707) 778-4360 for more information.

### ELEMENTARY SCHOOL DISTRICT BOARD MEMBER(S)

| DISTRICT(S) | NO. TO BE ELECTED | TERM OF OFFICE | QUALIFICATIONS |
|---|---|---|---|
| Alexander Valley Union | 2 | 4 yrs | Registered Voter of the District |
| Bellevue Union | 2 | 4 yrs | " |
| Bellevue Union | 1 | 2 yrs | " |
| Bennett Valley Union | 2 | 4 yrs | " |
| Cinnabar | 2 | 4 yrs | " |
| Dunham | 2 | 4 yrs | " |
| Forestville Union | 2 | 4 yrs | " |
| Fort Ross | 1 | 4 yrs | " |
| Fort Ross | 1 | 2 yrs | " |
| Gravenstein Union | 2 | 4 yrs | " |
| Gravenstein Union | 1 | 2 yrs | " |
| Guerneville | 2 | 4 yrs | " |
| Harmony Union | 2 | 4 yrs | " |
| Horicon | 2 | 4 yrs | " |
| Kashia | 1 | 4 yrs | " |
| Kashia | 1 | 2 yrs | " |
| Kenwood | 2 | 4 yrs | " |
| Laguna Jt | 1 | 4 yrs | " |
| Liberty | 2 | 4 yrs | " |
| Lincoln Union | 1 | 4 yrs | " |
| Mark West Union | 2 | 4 yrs | " |
| Monte Rio Union | 2 | 4 yrs | " |
| Monte Rio Union | 1 | 2 yrs | " |
| Montgomery | 3 | 4 yrs | " |
| Oak Grove Union | 2 | 4 yrs | " |
| Oak Grove Union | 1 | 2 yrs | " |
| Old Adobe Union | 2 | 4 yrs | " |
| Piner-Olivet Union | 2 | 4 yrs | " |
| Rincon Valley Union | 2 | 4 yrs | " |
| Roseland | 2 | 4 yrs | " |
| Roseland | 1 | 2 yrs | " |
| Sebastopol Union | 2 | 4 yrs | " |
| Sebastopol Union | 1 | 2 yrs | " |
| Twin Hills Union | 2 | 4 yrs | " |

---

(second column continues)

| | | | |
|---|---|---|---|
| Two Rock Union | 2 | 4 yrs | |
| Waugh | 2 | 4 yrs | |
| West Side Union | 2 | 4 yrs | |
| Wilmar Union | 3 | 4 yrs | |
| Wright | 2 | 4 yrs | |

### COAST LIFE SUPPORT DISTRICT DIRECTOR(S)

| DISTRICT(S) | NO. TO BE ELECTED | TERM OF OFFICE | QUALIFICATIONS |
|---|---|---|---|
| Coast Life Support | 2 | 4 yrs | Registered Voter of the District |
| Coast Life Support | 1 | 2 yrs | " |

### COMMUNITY SERVICE DISTRICT DIRECTOR(S)

| DISTRICT(S) | NO. TO BE ELECTED | TERM OF OFFICE | QUALIFICATIONS |
|---|---|---|---|
| Cazadero Community Services | 3 | 4 yrs | Registered Voter of the District |

### FIRE PROTECTION DISTRICT DIRECTOR(S)

| DISTRICT(S) | NO. TO BE ELECTED | TERM OF OFFICE | QUALIFICATIONS |
|---|---|---|---|
| Bodega Bay Fire | 3 | 4 yrs | Registered Voter of the District |
| Cloverdale Fire | 3 | 4 yrs | " |
| Forestville Fire | 3 | 4 yrs | " |
| Gold Ridge Fire | 3 | 4 yrs | " |
| Graton Fire | 3 | 4 yrs | " |
| Kenwood Fire | 2 | 4 yrs | " |
| Kenwood Fire | 1 | 2 yrs | " |
| Monte Rio Fire | 2 | 4 yrs | " |
| Monte Rio Fire | 1 | 2 yrs | " |
| North Sonoma Coast Fire | 3 | 4 yrs | " |
| North Sonoma Coast Fire | 1 | 2 yrs | " |
| Northern Sonoma County Fire | 2 | 4 yrs | " |
| Northern Sonoma County Fire | 1 | 2 yrs | " |
| Rancho Adobe Fire | 4 | 4 yrs | " |
| Rancho Adobe Fire | 1 | 2 yrs | " |
| Schell-Vista Fire | 3 | 4 yrs | " |
| Sonoma County Fire | 2 | 4 yrs | " |
| Timber Cove Fire | 1 | 4 yrs | " |
| Timber Cove Fire | 1 | 2 yrs | " |
| Valley of the Moon Fire | 3 | 4 yrs | " |

### HEALTH CARE DISTRICT DIRECTOR(S)

| DISTRICT(S) | NO. TO BE ELECTED | TERM OF OFFICE | QUALIFICATIONS |
|---|---|---|---|
| Cloverdale Health Care | 3 | 4 yrs | Registered Voter of the District |
| North Sonoma County Healthcare | 3 | 4 yrs | " |
| Palm Drive Health Care | 3 | 4 yrs | " |
| Petaluma Health Care | 3 | 4 yrs | " |
| Sonoma Valley Health Care | 3 | 4 yrs | " |

### WATER DISTRICT DIRECTOR(S)

| DISTRICT(S) | NO. TO BE ELECTED | TERM OF OFFICE | QUALIFICATIONS |
|---|---|---|---|
| North Marin Water* | 1 | 4 yrs | Registered Voter of the District |
| Sweetwater Springs Water | 2 | 4 yrs | " |
| Valley of the Moon Water | 3 | 4 yrs | " |

*Candidates for North Marin Water District must file with the Marin County Elections Department. Call (415) 473-6437 for more information.

Declarations of Candidacy for eligible candidates desiring to file for any of the above offices (except for Petaluma Jt Union High School District and North Marin Water District - see * explanations above) may be obtained from the Registrar of Voters Office, 435 Fiscal Dr, Santa Rosa, CA, on or after July 13, and no later than 5 p.m. on August 7, 2020. If an incumbent elective officer of the district has not filed by 5 p.m. on August 7, the voters shall have until 5 p.m. on August 12 to nominate candidates other than the incumbent for such elective office.

Note that, due to the COVID-19 pandemic, in-person office hours will be significantly reduced. Therefore, it is highly recommended that anybody interested in becoming a candidate either call (707) 565-6800 or email rov-candidate@sonoma-county.org to schedule an appointment. Additional information about the filing process is available on the Sonoma County Registrar of Voters website at http://sonomacounty.ca.gov/CRA/Registrar-of-Voters/Candidate-Filing/.

In the event there are no nominees or an insufficient number of nominees for such office and a petition for an election is not filed within the time period prescribed by Elections Code §10515 for special districts and Education Code §§5326 and 5328 for school districts (5 p.m. on August 12), the supervising authority will make appointments to each elective office.

Candidates filing for an office that shares boundaries with Marin County (Marin County Brd of Ed Area 7, Shoreline Unified School District Area 3, Laguna Jt School District, Lincoln School District, and North Marin Water District) who wish to file an optional Statement of Qualifications in Marin County should call the Candidate and Financial Filing Division of the Marin County Elections Department at (415) 473-6437.

Candidates filing for an office that shares boundaries with Napa County (Napa County Brd of Ed Area 7, Napa Valley Community College Area 7, and Calistoga Jt Unified School District) who wish to file an optional Statement of Qualifications in Napa County should call the Napa County Elections Department at (707) 253-4321.

Candidates filing for an office that shares boundaries with Mendocino County (Sonoma County Junior College Oak/Soq/May Area, Pt Arena Jt Union High School District, and Coast Life Support District) who wish to file an optional Statement of Qualifications in Mendocino County should call the Mendocino County Elections Division at (707) 234-6819.

Voting locations in Sonoma County will be open on Election Day between the hours of 7 a.m. and 8 p.m. Due to the COVID-19 pandemic, voting locations in Sonoma County will also be open for limited times on the three days prior to Election Day. Specific hours for those days will be announced closer to Election Day.

Dated:    July 6, 2020

SEAL

Deva Marie Proto
Sonoma County Clerk & Registrar of Voters
435 Fiscal Dr.
Santa Rosa, CA 95403

57618 – Pub July 10, 2020.    1it.

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:      Bankruptcy Case
PG&E CORPORATION,    No. 19-30088 (DM)
     - and -      Chapter 11
PACIFIC GAS AND ELECTRIC COMPANY,    (Lead Case)
     Debtors.    (Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

PLEASE TAKE NOTICE that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, that Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION.** In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the sole source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the sole source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert, any Fire Claim or Subrogation Wildfire Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from or against any of the Released Parties with respect to any such Fire Claim or Subrogation Wildfire Claim, including, but not limited to, the following actions:

a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to assume, assume and assign, or reject filed

---

(next column)

by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assignment and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in future court order or by mutual agreement of the non-Debtor counterparty to the subject executory contract or unexpired lease and the Reorganized Debtors. To the extent a Cure Dispute relates solely to the Cure Amount, the applicable Debtor or Reorganized Debtor may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of the Cure Dispute provided that such Debtor or Reorganized Debtor reserves Cash, or other adequate assurance of payment acceptable to the non-Debtor counterparty, in an amount sufficient to pay the full amount reasonably asserted as the required Cure Amount by the non-Debtor counterparty to such executory contract or unexpired lease.

c. The failure of any Person to file an objection by the applicable deadline, or to object to the Cure Amount, if any, associated with the assumption of any executory contract or unexpired lease, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32b of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, including changing the treatment of a contract or lease on the Schedule of Assumed Contracts and/or Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or by a Final Order of the Bankruptcy Court; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed effective as of the latest of (i) the Effective Date, (ii) the date on which notice of such removal or addition is served on the counterparty, (iii) the date set forth in an order of the Bankruptcy Court.

c. For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts and have thirty (30) days from the date on which notice of such removal or addition is served to file a Claim for damages resulting from the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims for services provided, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Finance Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk, https://restructuring.primeclerk.com/pge. Additionally copies of such documents may be obtained by accessing the Bankruptcy Court's website http://www.canb.uscourts.gov. A PACER password and login are required to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures will be among the documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com.

DATED:    July 3, 2020

WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP

---

## FICTITIOUS BUSINESS NAME STATEMENT
FILE NO. 2020-01753

The following person (persons) is (are) doing business as:

HENRY VINEYARDS located at 2617 KESSEER RD KENWOOD, CA 95452, Mailing Address 2820 SACRAMENTO STREET SAN FRANCISCO, CA 94115 Sonoma County, is hereby registered by the following owner(s): 1) MARTIN N CEPHAUKAS 2820 SACRAMENTO STREET SAN FRANCISCO, CA 94115; 2) ALLISON G MORTIMER 2820 SACRAMENTO STREET SAN FRANCISCO, CA 94115

This business is conducted by: Married Couple

The registrant commenced to transact business under the fictitious name or names above on N/A.

I declare that all information in this statement is true and correct. Signed: MARTIN N CEPHAUKAS

This statement was filed with the County Clerk of SONOMA COUNTY on 06/11/2020

I hereby certify that this copy is a correct copy of the original statement on file in my office.

DEVA MARIE PROTO
Sonoma County Clerk
By /s/   Amanda King
Deputy Clerk
SEAL

56543 - Pub. June 26, July 3, 10, 17, 2020.    4it.

---

## FICTITIOUS BUSINESS NAME STATEMENT
FILE NO. 2020-01976

The following person (persons) is (are) doing business as:

SEBASTOPOL DENTAL CARE located at 120 PLEASANT HILL AVE N #110 SEBASTOPOL, CA 95472 Sonoma County, is hereby registered by the following owner(s): RUSHANG B PATEL, DDS INC 120 PLEASANT HILL AVE N #110 SEBASTOPOL, CA 95472

This business is conducted by: A CA Corporation

The registrant commenced to transact business under the fictitious name or names above on N/A.

I declare that all information in this statement is true and correct. Signed: RUSHANG B PATEL, CHIEF EXECUTIVE OFFICER

This statement was filed with the County Clerk of SONOMA COUNTY on 07/06/2020

I hereby certify that this copy is a correct copy of the original statement on file in my office.

DEVA MARIE PROTO
Sonoma County Clerk
By /s/   Carrie Anderson
Deputy Clerk
SEAL

57726 – Pub. July 10, 17, 24, 31, 2020.    4it.

---



## CITY OF SANTA ROSA
### NOTICE OF PUBLIC HEARING

2019 ANNUAL WEED ABATEMENT PROGRAM

Notice is hereby given that a public hearing will be conducted by the City Council on Tuesday, July 21, 2020, at or after 5:00 p.m., utilizing a virtual public meeting format. The purpose of the public hearing will be to receive public comment and recommendations prior to the City Council acting on the 2019 annual Weed Abatement Program report.

All property owners having any objections or protests to the charges for abatement, removal of weeds or rubbish, or both, are hereby notified to attend a meeting, when the City Council will hear any objections and give due consideration to the same.

To slow the spread of COVID-19 and to protect the health of the public and staff, the City is conducting virtual public meetings with streaming video and telephone options.

Meeting access information (including instructions) and meeting documents are available online at: https://santa-rosa.legistar.com/Calendar.

Online Access: www.zoom.us/join - Meeting ID: 913 5834 0461
Phone Access: Dial: 888 853 5257 (Toll Free) Meeting ID: 913 5834 0461

Comments and questions may be directed to Assistant Fire Marshal Paul Lowenthal, City of Santa Rosa Fire Department, 2373 Circadian Way, Santa Rosa, CA 95407, telephone (707) 543-3500 or plowenthal@srcity.org.

Stephanie A. Williams, City Clerk, City of Santa Rosa

The City of Santa Rosa does not discriminate against individuals with disabilities in its employment, services, benefits, facilities, programs, or activities. Requests for accommodations, auxiliary aids, or services necessary to participate in a City program, service, or activity, including printed information in alternate formats, are available by contacting the City Clerk's Office at 707-543-3015 (TTY Relay at 711) or cityclerk@srcity.org. Requests should be submitted as far in advance as possible, but no later than two business days before the scheduled meeting.

57133 – Pub July 10, 2020.    1it.

---



## PERMIT SONOMA FIRE PREVENTION DIVISION
### FIRE SERVICES • HAZARDOUS MATERIALS



- Constellation Brands U.S. Operations, dba Clos du Bois Winery, has submitted an update of its Risk Management Plan (RMP) for its facility at 19410 Geyserville Ave. in Geyserville, CA. The RMP includes summaries of the following:
  - A description of the hazardous materials present;
  - the accident prevention programs in place;
  - the facility's emergency response programs;
  - and the maintenance systems in place to implement the overall programs.

The California Accidental Release Prevention (CalARP) Program requires the County of Sonoma Permit and Resource Management Department, Fire Prevention & Hazardous Materials Division, to perform document reviews and audits to ensure that companies are in compliance with the CalARP Program regulations and are following their RMPs. County Fire Prevention has found the RMP to be complete in scope and content and now invites public comment. The RMP will be available for public review for the next 45 days at 2300 County Center Dr., Ste. 220B, Santa Rosa, CA. Copies can also be requested by emailing hazmat@sonoma-county.org.

57790 – Pub July 10, 2020.    1it.

---

## NOTICE OF PUBLIC HEARING
### TAX ROLL FOR FISCAL YEAR 2020-2021 and BUDGET FOR FISCAL YEAR 2020-2021

Please take notice that the Russian River County Water District will be holding a public hearing to approve the budget for fiscal year 2020-2021 and placement of charges on the 2020-2021 property tax roll. Pursuant to Executive Order N-25-20 dated 3/12/2020 this meeting will occur via video and teleconferencing using ZOOM.

To connect please use the following:

   https://us02web.zoom.us/j/7768062986
     One tap mobile
   +14086380968,,7768062986#
   +16699009128,,7768062986#
     Telephone:
   +1 408 638 0968 US (San Jose)
   +1 669 900 6833 US (San Jose)
     Meeting ID: 776 806 2986
     Password: 95436

The meeting will be held on Tuesday, July 28, 2019 at 6:00 pm. There have been no increases proposed to the property tax roll. Anyone wishing to review the charges on the tax roll may do so by stopping at the offices of Russian River Utility located at 7131 Mirabel Road, Forestville CA, business hours of 9am to 3pm. Due to COVID-19 Stay-in-Place restrictions we suggest you call the office first. There will be time allowed at the hearing for public input and your comments or questions are welcome.

Written protests may be delivered at the public hearing or mailed in advance of the public hearing to:

     Board of Directors
     Russian River County Water District
     PO Box 956
     Forestville, CA 95436

Please direct any questions to the General Manager at (707) 887-7735.

57820 – Pub July 10, 17, 2020.    2it.

---

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA

In the Estate of:    Case No: SPR-094657
GEORGE VINCENT HENDERSON,    NOTICE TO CREDITORS
     [Probate Code Section 19003 and 19040]
     Deceased.
     _____/

NOTICE IS HEREBY GIVEN to the creditors and contingent creditors of the above-named decedent, that all persons having claims against the decedent are required to file them with the Superior Court, at 3055 Cleveland Avenue, Santa Rosa, California, and deliver, pursuant to California Probate Code Section 1215, a copy of such claim to Successor Trustee RYAN A. MINDELSON, Trustee of the GEORGE VINCENT HENDERSON REVOCABLE TRUST, dated May 17, 2020, wherein the decedent was the settlor, in care of RYAN A. MINDELSON, VESTA R. MINDELSON, Mindelson & Cepkauskas, LLP, 3562 Mendocino Avenue, Suite 210, Santa Rosa, California 95403 within the later of four (4) months after the date of the first publication of notice to creditors or, if notice is mailed or personally delivered to you, sixty (60) days after the date this notice is mailed or personally delivered to you. For your protection, you are encouraged to file your claim by certified mail, with return receipt requested.

July 8, 2020

     _/s/_
     RYAN A. MINDELSON,
     Successor Trustee

57862 – Pub July 10, 13, 16, 2020.    3it.

---

**CASE NUMBER: (Numero del Caso): MCV-251613**

## SUMMONS
(CITACION JUDICIAL)

NOTICE TO DEFENDANT: (AVISO AL DEMANDADO): D.C.'S ASPHALT MAINTENANCE INC., a corporation; DONNY COSTA, an individual; and DOES 1 through 100, inclusive.

YOU ARE BEING SUED BY PLAINTIFF: (LO ESTA DE-MANDANDO EL DEMANDANTE): PNC EQUIPMENT FINANCE, LLC, a Delaware limited liability company, successor by as-signment to ELEMENT FINAN-CIAL CORP.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 o más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is: (El nombre y dirección de la corte es): SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA, 600 Administration Drive, Room 107J, Santa Rosa, CA 95403.

The name, address and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: (El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es): HEMAR, ROUSSO & HEALD, LLP, 15910 Ventura Blvd., 12th Floor, Encino, CA 91436 (818) 501-3800

Date: (Fecha) Oct. 7, 2019

ARLENE D. JUNIOR, Clerk (Secretario)
By: DIANE CHENEY, Deputy (Adjunto)

CN970576 PNC EQUIPMENT Jun 19, 26, July 3, 10, 2020 4it.

55863 – Pub June 19, 26, July 3, 10, 2020.    4it.

**Exhibit H**

# The Times-Standard

PO Box 3580
Eureka, CA 95502
707-441-0571
legals@times-standard.com

3809751

PG&E CORPORATION
77 BEALE STREET
SAN FRANCISCO, CA 94177

Legal No.  **0006501127**

## PROOF OF PUBLICATION
## (2015.5 C.C.P.)

## STATE OF CALIFORNIA
## County of Humboldt

### FILE NO.  Display Legal Ad for PG&E

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years, and not a party to or interested in the above-mentioned matter. I am the principal clerk of the printer of THE TIMES-STANDARD, a newspaper of general circulation, printed and published daily in the City of Eureka, County of Humboldt, and which newspaper has been adjudged a newspaper of general circulation by the Superior Court of the County of Humboldt, State of California, under the date of June 15, 1967, Consolidated Case Numbers 27009 and 27010; that the notice, of which the annexed is a printed copy (set in type not smaller than nonpareil), has been published in each regular and entire issue of said newspaper and not in any supplement thereof on the following dates, to-wit,

**07/10/2020**

I certify (or declare) under penalty of perjury that the foregoing is true and correct.

Dated at Eureka, California,
This 16th day of July, 2020

Robin Imholte

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:
PG&E CORPORATION,
- and -
PACIFIC GAS AND ELECTRIC COMPANY,
Debtors.

Bankruptcy Case
No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

PLEASE TAKE NOTICE that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the sole source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the sole source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed

by the Debtors on or before June 20, 2020, or (iv) is specif[...] an executory contract or unexpired lease to be rejected [...] Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Pa[...] Confirmation Order, in the event of an unresolved disput[...] Cure Amount, (ii) the ability of the Reorganized Debtors [...] provide "adequate assurance of future performance" [...] or section 365 of the Bankruptcy Code) under the [...] or unexpired lease to be assumed, or (iii) any other m[...] assumption, assignment and assignment, or the "Cure [...] section 365(b)(1) of the Bankruptcy Code (each, a "**Cu[...]** Cure Dispute shall be preserved and may be resolved i[...] consensually without further order of the Bankruptcy C[...] and an opportunity to be heard, by a Final Order of the [...] which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Furth[...] the Schedules of Assumed and Rejected Contracts.**

a. Pursuant to Section 8.3 of the Plan and Para[...] Confirmation Order, in the event that the rejection of an [...] or unexpired lease under the Plan results in damages [...] or parties to such contract or lease, any Claim for such [...] forever barred and shall not be enforceable against [...] Reorganized Debtors, or their respective estates, pro[...] in property, unless a proof of Claim is filed with the Ba[...] served upon the Debtors or Reorganized Debtors, a [...] (30) days after the later of (i) June 20, 2020, or (ii) th[...] the rejection of such executory contract or unexpire[...] on the Schedule of Rejected Contracts or in an order of the [...]

b. Pursuant to Paragraph 32d. of the Confirmation Ord[...]

i. the Debtors or the Reorganized Debtors have th[...] June 20, 2020 to file amendments to the Schedule of [...] (as defined in the Plan Supplement) and Schedule of [...] to remove executory contracts and unexpired leases p[...] the Schedule of Assumed Contracts and to add exec[...] unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or une[...] added to the Schedule of Rejected Contracts or remove[...] of Assumed Contracts shall have thirty (30) days from [...] notice of such removal or addition is served on the cou[...] objection thereto, which objection may be resolved [...] without further order of the Bankruptcy Court, or, by [...] Bankruptcy Court, with any rejection deemed approved [...] and

iii. the rejection of any executory contract or unexpire[...] Schedule of Rejected Contracts shall be deemed approv[...] Court as of July 1, 2020 if an objection to the addition [...] contract or unexpired lease to the Schedule of Rejected [...] timely filed as provided above.

For the avoidance of doubt, the counterparty to an ex[...] unexpired lease that is added to the Schedule of Rejec[...] have thirty (30) days to file a claim for rejection damage[...] of (i) July 1, 2020 and (ii) if a timely objection to rejectio[...] consensually resolved by the parties, the entry of an o[...] rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 [...] requests for the payment of Professional Fee Claims [...] including any Professional Fee Claim incurred during t[...] Petition Date through and including July 1, 2020, must [...] on the Reorganized Debtors no later than sixty (60) day[...] All such final requests will be subject to approval by th[...] after notice and a hearing in accordance with the proced[...] the Bankruptcy Code, the Interim Compensation Order, [...] orders of the Bankruptcy Court regarding the payment of [...] Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the [...] Approval Order, the Fire Victim Trust Agreement, the [...] Resolution Procedures, and the Plan Supplement, c[...] of charge at the website for the Debtors' claims and no[...] Clerk: https://restructuring.primeclerk.com/pge/. Additio[...] documents may be obtained by accessing the Bankrup[...] http://www.canb.uscourts.gov. A PACER password and [...] access documents on the Bankruptcy Court's website, a[...] at http://www.pacer.psc.uscourts.gov. The Fire Victim [...] and the Fire Victim Claims Resolution Procedures, and [...] related to the Fire Victim Trust, can also be viewed fre[...] website for the Fire Victim Trust, https://www.firevictimtru[...]

Dated: July 2, 2020

WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP

ically designated as
on the Schedule of

ragraph 34 of the
te regarding (i) any
or any assignee to
within the meaning
executory contract
atter pertaining to
mounts required by
**re Dispute"**), such
n due course either
ourt, or, after notice
Bankruptcy Court,

**er Amendments to**

graph 35a. of the
executory contract
to the other party
damages, shall be
the Debtors or the
perties or interests
nkruptcy Court and
**o later than thirty
e effective date of
l lease**, as set forth
Bankruptcy Court.
er:

rty (30) days from
Assumed Contracts
Rejected Contracts,
previously listed on
tory contracts and

xpired lease that is
I from the Schedule
the date on which
nterparty to file an
ither consensually
Final Order of the
as of July 1, 2020;

l lease added to the
d by the Bankruptcy
of such executory
ed Contracts is not

ecutory contract or
ted Contracts shall
following the later
n is filed and is not
rder approving the

of the Plan, all final
against a Debtor,
he period from the
be filed and served
after July 1, 2020.
e Bankruptcy Court
ures established by
and any other prior
Professionals in the

Plan, the Financing
Fire Victim Claims
an be viewed free
ficing agent, Prime
nally, copies of such
tcy Court's website:
login are needed to
nd can be obtained
Trust Agreement
g other documents
e of charge at the
ust.com/.

FRIDAY, JULY 10, 2020   TIMES-STANDARD.COM   **SPORTS** 5

## BASEBALL

# First-year Giants coaching staff overhauls park

**One of few teams with more than 50 players working**

By Kerry Crowley
*Bay Area News Group*

SAN FRANCISCO » It's been nearly a week since the San Francisco Giants held their first full-squad summer workout at Oracle Park, but the club has yet to schedule its first in-person team meeting.

For decades, major league clubhouses have played host to meetings featuring casual conversations, motivational speeches and even verbal altercations that shape a team's season. During the coronavirus pandemic, the new normal looks nothing like the past.

"I think to a certain extent we'll continue to be creative and you won't see a full-fledged 30 people sitting in the clubhouse with a staff," Giants bench coach Kai Correa said. "With keeping the health and safety of players at the forefront, we'll continue to pursue things with the scoreboard, tabs visible in the bleachers and group texts and video conferences and iPad video sharing as ways to circumvent that and help us be not only efficient but safe."

Correa, the Giants' first-year bench coach, is one of the masterminds behind the team's socially distant workouts. One of manager Gabe Kapler's first hires, Correa came to the Giants in the offseason from the Cleveland Indians organization, where he worked as a minor league infield coordinator responsible for scheduling spring workouts involving 200-plus players and coaches.

Prior to working in professional baseball, Correa coached in the small college ranks at the University of Puget Sound and the University of Northern Colorado where he overhauled the way teams approached infield instruction, recruiting and even program fundraising.

The experience made Correa a natural fit with Kapler, who wanted his staff to prioritize efficiency, player development and communication. Since the pandemic brought sports to a halt, Correa feels the organization has delivered on its mission.

"From a process standpoint, how well it's gone is a direct reflection of the siloless culture that's been built under the modern Giants in Farhan (Zaidi) and Scott (Harris) and Kap," Correa said. "Because the groups are so interconnected, be it minor league player development, facilities, grounds crew, baseball ops, the field staff and the front office, that's where it starts."

From mid-March through mid-June, leaders from each group Correa mentioned were in constant communication. Each time Major League Baseball discussed a new proposal for restarting the league, members of the organization analyzed how the team could safely begin practicing again.

"Anything from doing it in Arizona to doing it here to doing it at two sites, it was talked about, discussed and planned for," Correa said. "One of the things I'm most proud of is our staff and our front office and all of the different departments, one of the reasons we've been so prepared is they were willing to do work that may not have paid off."

When Commissioner Rob Manfred finally announced the league planned to implement a 60-game season on June 22, the Giants had already developed a master plan to reconfigure Oracle Park in a way that would allow the team to host socially distant workouts.

It's impossible to keep players six feet apart at all times, but players and coaches have been wearing masks, working in small groups and spending as little time indoors as possible.

"Our former players' parking garage is now our weight room, our warmup room and a place where we can take ground balls and almost long toss because it's such a big space," Kapler said. "We've got no fewer than six tunnels to hit in. We've got portable mounds in each corner, plus we've got our brand new bullpens and mounds in dugouts."

Ballparks around the league have been re-imagined to prioritize player safety, but the Giants are one of the few teams that have not yet seen a portion of players from their pool to an alternative training site. Every healthy player in the Giants' pool is working out in San Francisco and receiving instruction from a 13-coach staff, which is the biggest in the majors.

The logistics of coordinating travel, coronavirus intake tests and initial workout schedules required a herculean effort, and Kapler, Correa and members of the front office credit first-year traveling secretary Abe Silvestri and senior director of athletic training Dave Groeschner for working around the clock to ensure the process flows as smooth as possible.

Taking the field on a daily basis during a pandemic hasn't come without issues — the Giants canceled Tuesday's workout after coronavirus test results from Saturday had not been received — but the greatest hurdle in the process was out of the organization's control. If not for a delay in processing tests at a league-approved site in Salt Lake City, the biggest complaint the Giants could lodge at this point in the process has to do with generous strike zones.

"One of the things that hasn't gone according to plan is we could just do a better job as a group of calling balls and strikes in these sim games," Kapler said. "We've kind of left it up to catchers. We know that Major League Baseball is going to help us with umpires and that's going to give the umpires a chance to get up to speed at some point and so I think that's one of my own pet peeves."

Many of the Giants' veteran players have expressed their gratitude for the organization's efforts to ensure their health and safety, but the time spent preparing for a summer workout schedule also focused on smaller details that should pay dividends early in the season.

Outside of implementing measures to prevent the spread of COVID-19 and producing training regimens designed to limit injuries, the Giants' staff labored to ensure workouts and live batting practice sessions would create realistic opportunities for players to prepare in game-like scenarios.

"Making sure they see a correct distribution of right- and left-handed pitching, making sure double play partners work together, making sure they're in groups that are also manageable for a coach-to-player ratio, making sure pitching buildups are appropriate," Correa said. "Those are kind of all of those things."

When the Giants first devised daily practice schedules, they received suggestions and approval from the medical staff, the strength and conditioning staff, baseball operations analysts, the clubhouse staff and veteran players.

Instead of following a more traditional model of giving players a time to report to the ballpark each day and letting them know what a workout would look like piece-by-piece, coaches send out minute-by-minute schedules of daily activities in advance so players know exactly what to expect.

Providing players with detailed information ahead of time isn't a result of new planning spurred by the pandemic, but instead one of many changes the Giants' staff implemented during spring training in Arizona.

"My thought process is you get greater flexibility and buy-in when people can prepare for what's coming next," Correa said. "The game is tough enough in itself and you have to make adjustments to pitches and to batters, you shouldn't also have to make adjustments to schedule."

One of the most important people with hands in the decision-making and scheduling processes is Ron Wotus, the only holdover from Bruce Bochy's staff and a coach who knows the habits and routines of many of the Giants' veteran players. Wotus knows what's feasible to expect from players and Correa said he's been an invaluable part of planning the summer.

While all of the preparation has paid off during the first week, the Giants know they must be flexible and able to adapt on the fly. Players will suffer injuries or setbacks, workout groups will change and as the Giants learned this week, MLB's testing process can send things spiraling out of control quickly.

For all the work spent preparing socially distant workouts, there will be several hundred more hours focused on responding to the challenges and needs at hand.

"You can put whatever science you want to it, but at the end of the day, you've got to have those conversations. 'How are you feeling? Do you need a lighter day?'" Correa said. "It's filtering through that plus what the information tells us in building out matchups and workloads and that's going to be the bulk of creating the best opportunity for iron to sharpen iron."



KARL MONDON — BAY AREA NEWS GROUP, FILE
Giants players arrive for the first day of summer training camp last Friday, July 3, at Oracle Park in San Francisco.

---

## MLS

# Group calls attention to systemic racism in sports

**Black Players for Change makes 1st public showing**

By Anne M. Peterson
*The Associated Press*

Now that Major League Soccer has re-started, a group of Black Major League Soccer players is using the moment to call attention to systemic racism across sports and society.

Black Players for Change was formerly the Black Players Coalition of MLS, but changed its name this week while joining forces with the Players Coalition, the NFL players group founded by Anquan Boldin and Malcolm Jenkins.

Black Players for Change made its first public demonstration since coming together last month at Wednesday night's opening game of the MLS Is Back tournament in Florida.

Players stood, fists raised, for 8 minutes and 46 seconds, the time that has become a symbol of police brutality, after a Minneapolis police officer had his knee on George Floyd's neck when he died. More than 170 Black players, some wearing "Silence is Violence" T-shirts and Black Lives Matter face masks, took part in the pre-game protest.

"Really this protest is about fighting for racial equality and human rights," organizer Justin Morrow of Toronto FC said. "We're standing with all of our brothers and sisters across the world — definitely across the North American sports landscape, but we see what's happening over in Europe as well, how soccer players are fighting against racism there. We're standing with all of our brothers and sisters to fight this fight."

Black Players for Change sprung from an Instagram group started by Morrow after the death of Floyd. The death sparked protests worldwide against racism and police brutality.

Portland's Jeremy Ebobisse, Chicago's CJ Sapong, Nashville's Jalil Anibaba, NYCFC's Sean Johnson and Colorado's Kei Kamara are among some of the other players involved. The group has the endorsement of both MLS and the players' association.

"It was very powerful to put my fist up and to be there on the field with so many people that are trying to make a change in this country. And that's what we need to do," Inter Miami's Juan Agudelo said.

The group has called on the league to increase diversity hiring in coaching, front office and executive positions, appoint a chief diversity officer, implement implicit bias training and expand cultural education.

It has also discussed developing the game in Black communities and partnering with charities, and has already secured $75,000 in charitable contributions from the MLS Players Association.

"This moment for us as a black player pool, is that we can stand up, we can make this statement that's come completely from us. It was so important that it was player led, it couldn't have worked the other way around," Morrow said. "This moment of solidarity with our brothers and sisters fighting this battle for racial equality and human rights is so important. And we want to make sure that the narrative was player led, player driven in completely from us."

The Players Coalition partnership allows the two groups from different sports to share resources in a common goal. The NFL group, which aims to address social justice and racial inequality, was started in 2017 after team owners objected to players kneeling during the national anthem.

"The commonalities and goals of both our organizations presented a natural opportunity to align," Boldin said in a statement. "I am excited to continue the growth of Players Coalition as an opportunity for all athletes."



JOHN RAOUX — THE ASSOCIATED PRESS
Members of all the MLS soccer teams march around the stadium before a match Wednesday in Kissimmee, Fla., while wearing shirts and masks with messages about race.

---

## COLLEGE FOOTBALL

# Big Ten to limit sports to conference

By John Zenor
*The Associated Press*

The Big Ten Conference announced Thursday it will not play nonconference games in football and several other sports this fall, the most dramatic move yet by a power conference because of the coronavirus pandemic.

The league cited medical advice in making the decision and added ominously that the plan would be applied only "if the conference is able to participate in fall sports."

"As we continue to focus on how to play this season in a safe and responsible way, based on the best advice of medical experts, we are also prepared not to play in order to ensure the health, safety and wellness of our student-athletes should the circumstances so dictate," the league said.

Besides football, the sports affected include men's and women's cross country, field hockey, men's and women's soccer, and women's volleyball.

"By limiting competition to other Big Ten institutions, the conference will have the greatest flexibility to adjust its own operations throughout the season and make quick decisions in real-time based on the most current evolving medical advice and the fluid nature of the pandemic," the Big Ten said.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:
PG&E CORPORATION,
    - and -
PACIFIC GAS AND ELECTRIC COMPANY,
              Debtors.

Bankruptcy Case
No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

PLEASE TAKE NOTICE that:

1. The Plan and Confirmation Order. On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court") entered an order (Docket No. 8053) (the "Confirmation Order") confirming the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. The Plan Effective Date. The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. Plan Binding. The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the sole source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the sole source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payment, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claim, including all of the following actions:

a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32b. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease is expressly rejected or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed

by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 32 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "Cure Dispute"), such Cure Dispute shall be resolved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity for a hearing, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

c. Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property as agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors no later than thirty (30) days after the date of the order approving such rejection or, in the absence of such an order, the effective date of the rejection of such contract or lease.

b. Pursuant to Paragraph 35b. of the Confirmation Order, from June 20, 2020 to the amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts.

c. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such addition or removal is served to file an objection to such addition or removal, and if no objection is timely filed, such addition or removal shall be deemed approved by the Bankruptcy Court, without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

d. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court, without further order of the Bankruptcy Court and any such rejection shall be deemed to be a rejection effective as of July 1, 2020.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) the date of entry of the order rejecting such contract or lease, or to assert that the rejection damages are not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. Final Fee Applications. Pursuant to Section 2.2 of the Plan, all final requests for payment of Professional Fee Claims against a Debtor, including the Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, shall be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. Certain Documents. The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/ Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER login and password are needed to access documents on the Bankruptcy Court's website, and can be obtained at: http://www.pacer.psc.uscourts.gov. The Plan Supplement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can be obtained by reviewing the website for the Fire Victim Trust: https://www.firevictimtrust.com/.
Dated: July 2, 2020

WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP

**Exhibit I**

# AFFIDAVIT

**STATE OF NEW JERSEY** )
                            ) ss:
**CITY OF MONMOUTH JUNCTION, in the COUNTY OF MIDDLESEX** )

I, Andrew Introne, being duly sworn, depose and say that I am the Advertising Clerk of the

Publisher of THE WALL STREET JOURNAL, a daily national newspaper of general circulation

throughout the United States, and that the notice attached to this Affidavit has been regularly

published in THE WALL STREET JOURNAL for National distribution for

1 insertion(s) on the following date(s): JUL- 10-2020

ADVERTISER: PG&E CORPORATION;

and that the foregoing statements are true and correct to the best of my knowledge.

_____

        Sworn to
     before me this
    10 day of July
        2020

_____
Notary Public



## BUSINESS NEWS

# Facebook, Rights Groups Remain at Odds

**Company says new policies address concerns, but activists seek greater efforts**

By Sarah E. Needleman
And Jeff Horwitz



The social-media giant was lampooned as a movie alien in a German parade in February.

Civil-rights advocates are increasing pressure on Facebook Inc. advertisers to halt spending on the company's platforms, saying it has done too little to police hateful and other problematic content.

Groups including the Anti-Defamation League and the NAACP have enlisted hundreds of companies in the boycott campaign. Facebook has acknowledged its shortcomings and pointed to new policies, additional spending and other efforts to address concerns.

Here is a look at what Facebook is doing in response.

### What specific demands are the groups making?

Stop Hate for Profit, the name of the coalition behind the boycott effort, has on its website 10 recommendations for Facebook, ranging from the specific to the sweeping.

The group says Facebook should hire an executive with civil-rights expertise for a post in its C-suite, refund advertisers whose ads were shown next to content later removed for violating terms of service and submit to regular independent audits of identity-based hate and misinformation on its platform.

Facebook said it plans to hire a vice president for civil rights, a role that a spokeswoman described as "very senior" and is intended to lead a team built out over time. She also said the company issues refunds to advertisers in some instances.

The boycott groups credit Facebook with some progress on those points but say it is insufficient. The coalition wants Facebook to change its policies to reduce hate on the platform and remove content that could inspire people to commit violence; stop amplifying all groups associated with hate, misinformation or conspiracies; and remove groups focused on "white supremacy, militia, anti-Semitism, violent conspiracies, Holocaust denialism, vaccine misinformation and climate denialism."

### How does Facebook define hate speech?

Facebook's community standards define hate speech as attacks on people based on about a dozen "protected characteristics" including race, religious affiliation, national origin and gender identity. Attacks include violent or dehumanizing speech, statements of inferiority or calls for exclusion or segregation, it says.

Facebook has broadened its definition of hate speech and who is protected over time. Last month, it said it would stop allowing ads alleging that a particular race, religion or identity group posed a threat to others. Such content is still allowed in unpaid posts.

Advocates say the rules remain too narrow, allowing white supremacists to dodge crackdowns by avoiding certain keywords that would surface in searches for hate speech. The Anti-Defamation League last month listed several examples of hateful or extremist posts on Facebook that still appear near companies' ads.

One example is of an ad from home-sharing company Airbnb Inc. that the League said appeared next to a post from an antigovernment militia movement called the Three Percenters, about the recent decision by PepsiCo Inc.'s Quaker Oats brand to retire its Aunt Jemima branding. In another, the League said an ad from human-resources company Randstad Holding NV appeared next to a video from a large Facebook group called Q-Anon Patriots that accused the media of promoting cannibalism by attempting to draw a connection between a sculpture owned by former lobbyist Tony Podesta and deceased serial killer Jeffrey Dahmer.

The Facebook spokeswoman said it takes aggressive action against groups and people who promote hate. The company last month said it banned hundreds of accounts deemed to have links to white supremacist organizations or groups that promote violence.

### How does Facebook handle speech by political figures?

Some of the biggest recent battles over content have involved President Trump's social-media posts.

When he wrote "when the looting starts, the shooting starts" in response to protests and unrest after the police killing of George Floyd, Twitter Inc. labeled the post as violating its policies on glorifying violence;

Facebook left the same comments untouched.

Facebook has said it doesn't fact-check political speech from politicians because it doesn't believe private companies should be arbiters of what is true and what isn't. The boycott coalition says Facebook should eliminate its exemption for politicians.

Last month CEO Mark Zuckerberg said Facebook would start labeling posts by any user that violate rules but are deemed newsworthy. For example, the company determined that posts showing a 1972 war photo of a naked Vietnamese girl fleeing napalm bombs was newsworthy and could remain, after Facebook initially took down that content under restrictions on child nudity.

Mr. Zuckerberg also said Facebook would add safeguards to prevent content that promotes voter suppression and ads that depict immigrants or asylum seekers as inferior.

### What tools does the site use to moderate content?

Facebook says it has more than 35,000 people working on safety and security, including more than 350 employees with expertise in law enforcement, national security, counterterrorism intelligence and academic studies in radicalization. Facebook also uses artificial intelligence to detect prohibited content, and says it removes most of that content before there is a user report. The company says it blocks millions of fake accounts from being created every day.

The amount of effort Facebook puts into detecting violations is a point of contention. The civil-rights groups say the company has enormous financial resources but still routinely fails to catch toxic content. They say all individuals facing severe hate and harassment should be able to connect with

a live Facebook employee. The Facebook spokeswoman said users can moderate comments on their posts, block other users and control their posts' visibility by creating a restricted list. She also said the company made changes allowing groups to be removed if an administrator encourages posts that violate platform rules.

To help address where lines should be drawn on hate speech, Facebook has created an independent content governance board that includes human-rights lawyers and free-speech advocates.

> The platform says it doesn't fact-check speech from politicians.

### What is Facebook's transparency report?

The report created by Facebook shows how the company enforces its community standards and content restrictions, responds to data requests and protects intellectual property. The company's most recent transparency report, released in May, says Facebook removed 9.6 million pieces of content with hate speech in the first quarter, up from 5.7 million in the fourth quarter of 2019.

The civil-rights groups say they don't trust Facebook to check its own work. They say its report doesn't address hate speech that isn't reported or whether it dismisses concerns about content that is reported as abusive but isn't removed.

The Facebook spokeswoman said the company has committed to providing more insight into how it enforces its hate-speech policies.

---

# Hate Speech Posts Still Elude AI Tools

By David Uberti

An audit commissioned by Facebook Inc. urged it to improve artificial intelligence-based tools it uses to help identify problematic content such as hate speech, showcasing the current limits of technology in policing the world's largest social-media platform.

The report, made public Wednesday, examined Facebook's approach to civil rights and criticized it as "too reactive and piecemeal," despite much-publicized investments in AI-based censors and human analysts trained to track down and remove harmful content.



Facebook's AI Chief Yann LeCun.

Facebook says that as of March those tools helped nab 89% of hate speech removed from the platform before users reported it, up from about 65% a year earlier, according to the report. But outside researchers argue it is still impossible to gauge just how many posts escape the dragnets on a platform so large.

"I could just hop on [Facebook] right now and go to particular pages and find tons," said Caitlin Carlson, a communications professor at Seattle University who has studied hate speech on Facebook. "If the system is getting so much better, why isn't Facebook getting so much better?"

As powerful as Facebook's AI-based tools are, removing objectionable posts isn't as easy as hitting a delete button.

Training machine-learning tools to review content as human moderators would takes time, expertise and reams of data to identify new words and imagery. Hate groups have also grown more adept at avoiding the platform's automated censors. Then there is Facebook's scale—2.6 billion users split between numerous languages and cultures—and an advertising business that relies on it.

Facebook Chief AI Scientist Yann LeCun said in a March interview that he is working to develop self-supervised AI that can help mimic human attempts to grasp it all. "Current machines don't have common sense," he said. "They have very limited and narrow function."

He said this research "is very important for Facebook [so it] can detect hate speech in hundreds of languages."

Facebook's Dangerous Organizations team, which focuses on terrorists and other organized hate groups, illustrates the hybrid approach the company has taken in response to the challenges.

The 350-person unit, spearheaded by counterterrorism experts, used a combination of manual review and automated tools to curb the reach of jihadist groups like Islamic State. Using "hashes," or digital fingerprints of content, to identify potential propaganda in real time, the team also trained machine-learning "classifiers" to learn to review posts like human analysts.

But it has proven more difficult to reorient those tools toward white supremacists, counterterrorism experts say, which tend to be more fragmented and whose troop-mented and messaging content often overlaps with right-wing political speech. Western governments also don't identify many of these groups as terrorist organizations, removing a key cue for tech companies to take action.

Those dynamics make judgments about harmful content harder to reach and maintain, and harder to reach in real time," said Nicholas Rasmussen, executive director of the Global Internet Forum to Counter Terrorism, a partnership between governments and tech companies including Facebook, Twitter Inc. and Microsoft Corp.

"We have made real progress over the years," Chief Operating Officer Sheryl Sandberg said in a blog post responding to the civil-rights audit on Wednesday. "But this work is never finished and we know what a big responsibility Facebook has to get better at finding and removing hateful content."

*—Steven Rosenbush contributed to this article.*

---

ADVERTISEMENT

## The Marketplace
To advertise: 800-366-3975 or WSJ.com/classifieds

### BANKRUPTCIES

### BUSINESS OPPORTUNITIES

MEGA C-STORE/Gas/Real Estate
High Volume 3 Years NEW location.
2019 Gross Sales $8.2M+
- 10 Gas Positions - Dbn Property: $7,89,939 & Diesel.
- No Supply Agreement Unbranded. 4,300 SF
- Beautifully Built Stone Building. Beer, Lotto, Food
Gabe, Grab & Go Food & Deli. New Haven County, CT.
Very Profitable/Strong Brand.
PRICE $6,950,000
Gary Pratti 866.796.9055

FOR SALE
Rights to Clinically
Proven Medical Device
Ready to 510k FDA approval
Inquiries to: biosignalusa@gmail.com

### PUBLIC NOTICES

### BUSINESS OPPORTUNITIES

CONTECO INC
PUBLIC WORKS
Seeks Joint Venture
Partner With
High Net Worth and
Excellent Credit
NO CASH REQUIRED!
GREAT CASH FLOW
In Pandemic Economy
Contact:
info@contecoinc.com
310-446-8400

Sale & Leaseback
XL Business Self-Storage
— Condominiums —
Houston, TX Metro Area
13.19% Yield
incl 7.25% Annual Dividend
($50,000 Min. Investment)
APC Holdings (713) 993-0663

THE
MARKETPLACE
ADVERTISE TODAY
(800) 366-3975
For more information visit:
wsj.com/classifieds

© 2020 Dow Jones & Company, Inc.
All Rights Reserved.

**Exhibit J**

# Chico Enterprise-Record

400 E. Park Ave.
Chico, Ca 95928
530-896-7702
erlegal@chicoer.com

3809751

PG&E CORPORATION
77 BEALE STREET
SAN FRANCISCO, CA 94177

Legal No.     **0006501021**

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF BUTTE

In The Matter Of
**R7070041**

## AFFIDAVIT OF PUBLICATION

STATE OF CALIFORNIA

COUNTY OF BUTTE

} SS.

The undersigned resident of the county of Butte, State of California, says:

That I am, and at all times herein mentioned was a citizen of the United States and not a party to nor interested in the above entitled matter; that I am the principal clerk of the printer and publisher of

### The Chico Enterprise-Record
### The Oroville Mercury-Register

That said newspaper is one of general circulation as defined by Section 6000 Government Code of the State of California, Case No. 26796 by the Superior Court of the State of California, in and for the County of Butte; that said newspaper at all times herein mentioned was printed and published daily in the City of Chico and County of Butte; that the notice of which the annexed is a true printed copy, was published in said newspaper on the following days:

**07/13/2020**,

Dated July 13, 2020
at Chico, California

(Signature)

r.BP7-01/27/16

1

In re:

PG&E CORPORATION,
- and -
PACIFIC GAS AND ELECTRIC COMPANY,
Debtors.

Bankruptcy Case
No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE
OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER
PROPONENTS' JOINT CHAPTER 11 PLAN OF
REORGANIZATION DATED JUNE 19, 2020**

PLEASE TAKE NOTICE that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole* source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the *sole* source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

   **a.** commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

   **b.** enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

   **c.** creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;

   **d.** asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

   **e.** taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

   a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed

by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

   b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

   a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, **no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease**, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

   b. Pursuant to Paragraph 32d. of the Confirmation Order:

   i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

   ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

   iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

   For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

**WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP**

r.BP7-01/27/16







| | TODAY | | TUESDAY | | WEDNESDAY | | THURSDAY | | FRIDAY | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Valley | Foothills | Valley | Foothills | Valley | Foothills | Valley | Foothills | Valley | Foothills |
| | 101° | 95° | 102° | 96° | 103° | 97° | 101° | 95° | 101° | 95° |
| | 66° | 67° | 66° | 66° | 70° | 66° | 65° | 65° | 61° | 63° |
| | Hot with plenty of sunshine | | Hot with plenty of sunshine | | Very hot with plenty of sunshine | | Sunny and hot | | Hot with plenty of sunshine | |

## ALMANAC

Enterprise-Record building through 5 p.m. yesterday.

**Temperatures**

| | |
|---|---|
| High/low | 104°/67° |
| Normal high/low | 94°/61° |
| Record high | 112° (1931) |
| Record low | 46° (1981) |
| Humidity at noon today | 23% |
| Total days 100° and above this year | 12 |

**Precipitation**

| | |
|---|---|
| 24 hours through 5 p.m. yesterday | 0.00" |
| Record precipitation | 0.02" (1964) |
| Month to date | 0.00" |
| Normal month to date | 0.00" |
| Season (Oct. 1) to date | 26.32" |
| Normal season to date | 26.32" |

### PRECIPITATION TOTALS

Local amounts through 5 p.m. yesterday

| City | 24-hour total | Month to date | Oct. 1 to date |
|---|---|---|---|
| Orland | N.A. | 0.00 | 9.11 |
| Oroville | 0.00 | 0.00 | 13.26 |
| Paradise | 0.00 | 0.00 | 21.14 |
| Red Bluff | 0.00 | 0.00 | 11.35 |
| Willows | N.A. | 0.00 | 6.67 |

### EXTREMES

**National** (for the 48 contiguous states)

| | |
|---|---|
| High | 123° at Death Valley, CA |
| Low | 32° at Gothic, CO |

**Global**

| | |
|---|---|
| High | 124° at Death Valley, USA |
| Low | 11° at Queenstown, South Africa |

### LAKE LEVELS

As of 7 a.m. yesterday

| | Storage (% capacity) | Elevation (feet) | Chng Inflow (feet) | Outflow (cfs) | (cfs) |
|---|---|---|---|---|---|
| Lake Oroville | 58% | 787.60 | -1.17 | 1381 | 7606 |
| Shasta Lake | 69% | 1066.68 | -0.63 | 3546 | 10458 |

### RIVER LEVELS

In feet as of 7 a.m. yesterday

| River / Location | Flow (cfs) | Level | Change |
|---|---|---|---|
| **Sacramento River** | | | |
| Hamilton City | 8390 | 129.44 | -0.05 |
| Vina-Woodson Bridge | 10800 | 168.12 | -0.03 |
| Ord Ferry | 7660 | 97.58 | -0.04 |
| **Feather River** | | | |
| Yuba City | 1290 | 37.19 | +0.01 |
| Gridley | 3230 | 73.75 | -0.01 |

### SOLUNAR TABLE

The solunar period schedule allows planning days so you will be fishing in good territory or hunting in good cover during those times. Major periods begin at the times shown and last for 1.5 to 2 hours. The minor periods are shorter.

| | Major | | Minor | |
|---|---|---|---|---|
| | a.m. | p.m. | a.m. | p.m. |
| Today | 6:28 a.m. | 12:18 a.m. | 6:48 p.m. | 1:18 p.m. |
| Tuesday | 7:07 a.m. | 12:57 a.m. | 7:28 p.m. | 1:18 p.m. |
| Wednesday | 7:47 a.m. | 1:35 a.m. | 8:09 p.m. | 1:58 p.m. |

### SKY WATCH

| | Sunrise | Sunset | Moonrise | Moonset |
|---|---|---|---|---|
| Today | 5:55 a.m. | 8:35 p.m. | 1:04 a.m. | 2:09 p.m. |
| Tuesday | 5:55 a.m. | 8:35 p.m. | 1:54 a.m. | 3:05 p.m. |

**Hours of sunlight** 14 hr., 44 min.

First | Full | Last | New
Jul 26 | Jul 20 | Jul 27 | Aug 11

### ALLERGY REPORT

Allergy, dust and dander today: Neutral

**Pollen levels**

| | |
|---|---|
| Grass | Absent |
| Trees | Low |
| Mold | Low |

**Source:** National Allergy Bureau

### AIR QUALITY FORECAST

| City | Today's air quality |
|---|---|
| Chico | Moderate |
| Gridley | Good |
| Paradise | Moderate |

**What it means:** 0-50: Good; 51-100: Moderate; 101-150: Unhealthy for sensitive people; 151+: Unhealthy for all. **Source:** Accuweather

### TODAY'S UV INDEX

**11**

The higher the AccuWeather.com UV Index™ number, the greater the need for eye and skin protection.

Extreme

Highest at 1 p.m.

---



**Regional outlook**

**HOW TO READ THIS MAP**

City name
75/43 ← Today's High/low temperature
75/43/0.05 ← Yesterday's High/low temperature/precipitation
*Estimated

Forecasts and graphics provided by AccuWeather, Inc. ©2020

Paynes Creek 98/67 *99/65/0.00
Red Bluff 102/68 104/67/0.00
Butte Meadows 87/63 *87/67/0.00
Chester 89/55 *89/44/0.00
Westwood 87/53 *86/46/0.00
Corning 102/65 *105/67/0.00
Magalia 92/67 *92/69/0.00
Quincy 93/53 *89/49/0.00
Orland 101/64 *102/71/0.00
Chico 101/66 *102/69/0.00
Paradise 95/67 *96/75/0.00
La Porte 85/63 *83/60/0.00
Elk Creek 101/66 *102/71/0.00
Oroville 100/65 *106/68/0.00
Strawberry Valley 87/67 *88/55/0.00
Willows 101/63 N.A./N.A./N.A.
Gridley 101/66 *104/69/0.00
Bangor 97/63 *96/69/0.00
Nevada City 93/65 *93/74/0.00
Colusa 101/58 *104/60/0.00
Yuba City 99/59 *104/60/0.00
Grass Valley 92/65 *96/58/0.00

---

### National forecast



Seattle 74/53
Billings 78/52
San Francisco 70/55
Los Angeles 87/64
Minneapolis 85/69
Denver 92/61
Kansas City 90/73
Detroit 83/67
Chicago 83/67
El Paso 108/80
Houston 101/80
Atlanta 91/72
New York 86/69
Washington 90/72
Miami 83/79

VERY HOT

**Fronts**
Cold
Warm
Stationary

H High pressure
L Low pressure

Showers | Rain | T-storms | Snow | Flurries | Ice

-10s | -0s | 0s | 10s | 20s | 30s | 40s | 50s | 60s | 70s | 80s | 90s | 100s | 110s

Shown are today's noon positions of weather systems and precipitation. Temperature bands are highs for the day.

---

## CALIFORNIA CITIES

| City | Yesterday Hi/Lo/Prec. | Today Hi/Lo/W |
|---|---|---|
| Alameda | 76/58/0.00 | 71/56/s |
| Anaheim | 84/60/0.00 | 87/66/s |
| Avalon | 88/58/0.00 | 76/66/pc |
| Bakersfield | 103/73/0.00 | 106/71/s |
| Barstow | 115/83/0.00 | 110/75/s |
| Big Bear | 86/57/0.00 | 80/49/s |
| Bishop | 106/60/0.00 | 105/61/s |
| Crescent City | 64/50/0.00 | 63/51/pc |
| Death Valley | 127/100/0.00 | 123/95/s |
| El Centro | 115/84/0.00 | 114/83/s |
| Escondido | 97/69/0.00 | 90/62/s |
| Eureka | 75/53/0.00 | 60/52/c |
| Lake Tahoe | 85/41/0.00 | 81/44/s |
| Long Beach | 92/68/0.00 | 80/65/pc |
| Los Angeles | 92/68/0.00 | 87/64/pc |
| Mammoth Mountain | 77/45/0.00 | 78/40/s |
| Modesto | 104/68/0.00 | 99/62/s |
| Monterey | 70/52/0.00 | 67/54/s |
| Napa | 86/50/0.00 | 82/53/s |
| Needles | 119/90/0.00 | 117/88/s |
| Newport Beach | 80/66/0.00 | 77/67/pc |
| Oakland | 80/55/0.00 | 71/57/s |
| Oxnard | 75/59/0.00 | 67/63/pc |
| Palm Springs | 121/87/0.00 | 114/80/s |
| Pasadena | 98/70/0.00 | 89/64/s |
| Paso Robles | 108/58/0.00 | 88/50/s |
| Red Bluff | 104/67/0.00 | 102/68/s |
| Redding | 104/65/0.00 | 104/69/s |
| Sacramento | 104/63/0.00 | 99/57/s |
| Salinas | 76/53/0.00 | 69/56/s |
| San Bernardino | 106/71/0.00 | 96/63/s |
| San Diego | 84/68/0.00 | 77/67/pc |
| San Francisco | 76/56/0.00 | 70/55/s |
| San Gabriel | 96/67/0.00 | 90/64/s |
| San Jose | 90/60/0.00 | 82/57/s |
| San Luis Obispo | 84/54/0.00 | 76/53/pc |
| Santa Ana | 86/69/0.00 | 82/68/pc |
| Santa Barbara | 78/60/0.00 | 73/56/pc |
| Santa Monica | 77/64/0.00 | 69/64/pc |
| Santa Rosa | 97/48/0.00 | 86/51/s |
| Stockton | 106/62/0.00 | 97/59/s |
| Ukiah | 99/55/0.00 | 99/58/s |
| Vallejo | 86/56/0.00 | 79/53/s |
| Ventura | 76/61/0.00 | 66/63/pc |
| Yosemite Valley | 91/61/0.00 | 88/57/s |

## NATIONAL CITIES

| City | Yesterday Hi/Lo/Prec. | Today Hi/Lo/W |
|---|---|---|
| Albuquerque | 101/72/Trace | 96/70/t |
| Anchorage | 65/53/0.36 | 68/53/r |
| Atlanta | 89/69/Trace | 91/72/pc |
| Boise | 90/62/0.00 | 84/55/s |
| Boston | 89/72/0.00 | 86/69/pc |
| Charlotte | 91/68/0.00 | 91/70/pc |
| Chicago | 89/73/0.00 | 83/67/t |
| Cleveland | 83/65/0.00 | 80/65/pc |
| Dallas | 100/78/Trace | 103/80/s |
| Denver | 97/69/0.00 | 92/61/t |
| Des Moines | 86/65/0.00 | 88/69/s |
| Detroit | 85/67/0.00 | 83/67/pc |
| El Paso | 101/75/0.00 | 108/80/pc |
| Honolulu | 88/75/0.00 | 88/74/sh |
| Houston | 97/80/0.00 | 101/80/s |
| Indianapolis | 84/64/0.48 | 84/64/s |
| Kansas City | 87/60/0.00 | 90/73/pc |
| Las Vegas | 113/94/0.00 | 111/86/s |
| Miami | 91/79/0.00 | 93/79/pc |
| Milwaukee | 78/70/0.00 | 81/67/t |
| Minneapolis | 85/64/0.00 | 85/69/pc |
| Nashville | 90/69/0.00 | 89/67/s |
| New Orleans | 90/78/0.00 | 92/78/t |
| New York | 90/73/0.00 | 86/69/pc |
| Oklahoma City | 94/69/0.75 | 95/73/s |
| Omaha | 86/62/0.00 | 90/71/s |
| Orlando | 91/76/0.00 | 91/77/t |
| Philadelphia | 91/72/0.00 | 88/68/pc |
| Phoenix | 116/93/0.00 | 113/88/t |
| Pittsburgh | 82/64/0.00 | 81/57/pc |
| Portland, OR | 78/57/Trace | 79/55/s |
| St. Louis | 88/67/0.00 | 88/71/s |
| Salt Lake City | 98/73/0.00 | 93/61/t |
| Seattle | 71/59/Trace | 74/53/c |
| Washington, DC | 91/73/0.00 | 90/72/pc |

**Weather(W):** s-sunny, pc-partly cloudy, c-cloudy, sh-showers, t-thunderstorms, r-rain, sf-snow flurries, sn-snow, i-ice, **Prec.**-24-hour precipitation total

---

## Legal Notices

### FICTITIOUS BUSINESS NAME STATEMENT REFILE WITH CHANGE

The following person(s) is (are) doing business as: TONY'S SHEDS CARPORTS GARAGES 14478 Skyway Magalia, CA 95954 TONY'SGARAGE.BIZ 14478 Skyway Magalia, CA 95954 County of Butte Registrant Addressee(s): T O N Y ' S GARAGE.BIZ LLC 14478 Skyway Magalia, CA 95954 Original FBN Number: 2019-0000307 B e g a n T r a n s a c t i n g Business: Not Applicable S t a t e m e n t Expires On 7/07/2025 Business is Conducted By: Limited Liability Company This statement was filed in the office of CANDACE J. GRUBBS, County Clerk of Butte County, on July 07, 2020 By: J. RAMIREZ, Deputy

FBN Number: 2020-0000692
Publish: 7/13, 7/20, 7/27, 8/03/2020

Check out our website by going on in Chico at our website **ChicoER.com**

### NOTICE OF ELECTION

NOTICE IS HEREBY GIVEN that a General Municipal Election will be held in the City of Chico on Tuesday, November 3, 2020 for the following Officers and Measures:

**OFFICERS:**

For four (4) members of the City Council to serve four-year terms of office representing Districts 1, 3, 5 and 7 beginning December 1, 2020 and ending in December 2024.

**MEASURES:** Two Measures which would amend (1) Charter Section 403 regarding minimum age restrictions for election to the Chico City Council; and (2) Charter Sections 402, 500, and 600 regarding district-based elections.

The nomination period for the four offices representing Districts 1, 3, 5, and 7 begins on Monday, July 13, 2020 at 8:00 a.m., and closes Friday, August 7, 2020, at 5:00 p.m.

If nomination papers for an incumbent officer of the City are not filed by August 7, the voters have until August 12, 2020 to nominate candidates (other than the person(s) who are the incumbents for that incumbent's elective office. Candidate nomination papers may be obtained from the office of the City Clerk, located on the third floor of the Chico Municipal Center at 411 Main Street, Chico, California.

Any citizen 21 years or older who resides within the Chico City limits and is a registered voter is eligible to run for City Council.

If no one or only one person is nominated for an elective office, appointment to the elective office may be made as prescribed by Section 10229, Elections Code of the State of California.

If you have any questions regarding the General Municipal Election, please call the Chico City Clerk's office at (530) 896-7251 during regular business hours, Monday through Friday, 8:00 a.m. to 5:00 p.m. If interested in running for Council in one of the four districts, please call for an appointment.

Dated: July 8, 2020

/s/

Deborah R. Presson, MMC
City Clerk & Elections Official
Publish: Monday, July 13, 2020

**Distribution:**
2020 Election File
Butte County Elections Official

Garden Drive Mini Storage
595 Garden Drive Oroville, CA 95965
530-534-8110

Notice is hereby given that the undersigned intends to sell the personal property described below to enforce a lien imposed on said property pursuant to Sections 21700-21716 of the Business & Professions Code Section 2328 of the UCC Section 535 of the Penal Code and provisions of the Civil Code.

The undersigned will sell at public sale by competitive bidding

On July 30th, 2020 at 2:15 PM.

Property has been stored and which are located for pickup at Garden Drive Mini Storage 595 Garden Drive Oroville California 95965 County of Butte, State of California, T – Sat 10AM – 6PM the following:

Chiro, Stephanie – Boxes, furniture, turntable, fireplace, games, dvds, misc. Seal #0025361
Huesing, Kari – Cherry bedroom set, clothing, boxes, misc. Seal #0025101
Clatty, Mercedes – Bags, boxes, kennel, dogloo, tarps, dolly, camping gear, totes, misc. Seal #0025664
Clatty, Mercedes – Bags, boxes, display, clothing, bike rack, totes, misc. Seal #0025260
Bissel, Nicole – Bags, boxes, furniture, clothing, toys, totes, misc. Seal #0025047
Knowles, David – Books, clothing, furniture, exercise equip., tools, totes, chainsaw, misc. Seal #0025370
Whittington, Richard – Boxes, exercise equip., tools, lawn mower, totes, misc. Seal #0025106
Clatty, Mercedes – Bags, bikes, boxes, furniture, clothing, cooler, tv, totes, misc. Seal #0025452

Purchases must be paid for at time of CLOSE OF AUCTION. All purchased items sold as is, where is and must be removed Within 48 hours. Sale subject to cancellation in the event of Settlement between owner and obligated party.

Dated: July 13, 2020 and July 20th, 2020
Auctioneer: Storage Auction Experts,
Auctioneer Bond # 5860870
Phone : 209-667-5797
7/13, 7/20/2020

Put an ad in class today 896-7777.

WANT ADS work call today. 896-7777.

### NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

PLEASE TAKE NOTICE that

[small-print legal notice text continues in multiple dense paragraphs]

### THINKING ABOUT
buying a new car? Shop the Classified Ads for the best selection and the best price. MasterCard & Visa for your convenience.

MOVING? SELL those extra items you no longer need with a Classified Ad. Call 896-7777 to place your result-getting ad today! MasterCard & Visa for your convenience.

MOVING? SELL those extra items you no longer need with a Classified Ad. Call 896-7777 to place your result-getting ad today! MasterCard & Visa for your convenience.

MOVING? SELL those extra items you no longer need with a Classified Ad. Call 896-7777 to place your result-getting ad today! MasterCard & Visa for your convenience.

THINKING ABOUT buying a new car? Shop the Classified Ads for the best selection and the best price. Call 896-7777. Place your ads online at http://www.chicoer.com 24 hours a day.

MOVING? SELL those extra items you no longer need with a Classified Ad. Call 896-7777 to place your result-getting ad today! MasterCard & Visa for your convenience.

THINKING ABOUT buying a new car? Shop the Classified Ads for the best selection and the best price. MasterCard & Visa for your convenience.

### PEANUTS








**Exhibit K**

# Contra Costa Times

2850 Shadelands Dr., #101
Walnut Creek, CA 94598
(510) 723-2850

Legal No. **6500986**

3110950

PG&E Corporation

## PROOF OF PUBLICATION

### FILE NO. R7070034

In the matter of:

Contra Costa Times

I am a citizen of the United States. I am over the age of eighteen years and I am not a party to or interested in the above entitled matter. I am the Legal Advertising Clerk of the printer and publisher of the Contra Costa Times, a newspaper published in the English language in the City of Walnut Creek, County of Contra Costa, State of California.

I declare that the Contra Costa Times is a newspaper of general circulation as defined by the laws of the State of California as determined by court decree dated October 22, 1934, Case Number 19764. Said decree states that the Contra Costa Times is adjudged to be a newspaper of general circulation for the City of Walnut Creek, County of Contra Costa and State of California. Said order has not been revoked.

I declare that the notice, of which the annexed is a printed copy, has been published in each regular and entire issue of said newspaper and not in any supplement thereof on the following dates, to wit:

**July 13, 2020**

I certify (or declare) under the penalty of perjury that the foregoing is true and correct.

Executed at Walnut Creek, California.
On this 13th day of July, 2020.

Signature

Newspaper : East Bay Times
Issue Date : 07/13/2020

# Legal Advertising and Public Notices

West County Times • WCTLegals@BayAreaNewsGroup.com
Contra Costa Times • CCTLegals@BayAreaNewsGroup.com
Alameda Times-Star • ATSLegals@BayAreaNewsGroup.com
East County Times • ECTLegals@BayAreaNewsGroup.com
Tri-Valley Herald • TVHLegals@BayAreaNewsGroup.com
San Ramon Valley Times • SRVTLegals@BayAreaNewsGroup.com
Valley Times • VTLegals@BayAreaNewsGroup.com
San Joaquin Herald • SJHLegals@BayAreaNewsGroup.com

legals

## Legal Notice

Filed
June 17, 2020
Deborah Cooper
County Clerk
Contra Costa County
By: --- Deputy

**STATEMENT OF ABANDONMENT OF USE OF FICTITIOUS BUSINESS NAME**

The following person(s) has abandoned the use of the fictitious business name: **VALE HEALTHCARE CENTER** at 3060 Mercer University Drive, Atlanta GA 30341.
The fictitious business name referred to above was filed in Contra Costa County on 12/31/2018
Under file number 2018 0007636-00
GranCare, LLC
920 Ridgebrook Rd.
Sparks, MD 21152
Deleware and California
This business was conducted by a Limited Liabillity Co.
/s/ Linda W. Taetz, President
The statement was filed with the County Clerk of Contra Costa County in the date indicated by file stamp above.
**ECT# 6494660**
**June 29,**
**July 6, 13, 20, 2020**

---

FILED May 28, 2020
Deborah Cooper,
County Clerk Recorder
CONTRA COSTA COUNTY
By, J. Celestial, Deputy County Clerk
FILE NO. 2020-2514

**FICTITIOUS BUSINESS NAME STATEMENT**

The name of the business is: **LAWN DOCTOR OF WALNUT CREEK - CONCORD** located at 160 Canyon Green Pl., San Ramon, CA, 94582, is hereby registered by the following owner(s):
Green Grass & High Tides LLC
160 Canyon Green Pl
San Ramon, CA 94582
California
This business is conducted
by: A Limited Liability Co
/s/ Peter W. Larson - Managing Member
This statement was filed with the County Clerk of Contra Costa on date indicated by file stamp above.
The registrant commenced to transact business under the fictitious business name listed above on 2/11/2020
Expires 5/28/2025
**SRVT# 6491802**
**June 22, 29;**
**July 6, 13, 2020**

---

FILED June 12, 2020
Deborah Cooper,
County Clerk Recorder
CONTRA COSTA COUNTY
By, P. Cornelius, Deputy County Clerk
FILE NO. 2020-2720

**FICTITIOUS BUSINESS NAME STATEMENT**

The name of the business is: **ROXANA ART WORK, ROXANA SANTOS DEHAYDEN ART** located at 480 Bollinger Canyon Lane #172, San Ramon, CA 94582 is hereby registered by the following owner(s):
Roxana M. Castro
480 Bollinger Canyon Lane #172
San Ramon, CA 94582
This business is conducted
by: An Individual
/s/ Roxana M. Castro
This statement was filed with the County Clerk of Contra Costa on date indicated by file stamp above.
The registrant commenced to transact business under the fictitious business name listed above on 2016 - 2000
Expires 6/12/2025
**ECT# 6494647**
**June 26,**
**July 3, 10, 17, 2020**

---

FILED June 11, 2020
Deborah Cooper,
County Clerk Recorder
CONTRA COSTA COUNTY
By, P. Cornelius, Deputy County Clerk
FILE NO. 2020-2675

**FICTITIOUS BUSINESS NAME STATEMENT**

The name of the business is: **HILLCREST CHEVRON** located at 3400 Hillcrest Ave. Antioch, CA 94531, is hereby registered by the
following owner(s):
Hillcrest Gas Inc.
113 ST Nazaire Court
Martinez, CA 94553
California
This business is conducted
by: A Corporation
/s/ Rajinder Sahota
Secretary/Managing Manager
This statement was filed with the County Clerk of Contra Costa on date indicated by file stamp above.
The registrant commenced to transact business under the fictitious business name listed above on N/A
Expires 6/11/2025
**ECT# 6494615**
**June 26,**
**July 3, 10, 17, 2020**

---

FILED May 27, 2020
Deborah Cooper,
County Clerk Recorder
CONTRA COSTA COUNTY
By, P. Cornelius, Deputy County Clerk
FILE NO. 2020-2449

**FICTITIOUS BUSINESS NAME STATEMENT**

The name of the business is: **ATLINA CHIROPRACTIC** located at 140 Gregory Ln. Suite 195, Pleasant Hill, CA 94523, is hereby registered by the
following owner(s):
Nhu Chiropractic, Inc.
140 Gregory Ln.
Suite 195
Pleasant Hill, CA 94523
California
This business is conducted
by: A Corporation
/s/ Lisa Nhu, President
This statement was filed with the County Clerk of Contra Costa on date indicated by file stamp above.

## Legal Notice

The registrant commenced to transact business under the fictitious business name listed above on 4/1/2020
Expires 5/27/2025
**SRVT# 6491818**
**June 22, 29;**
**July 6, 13, 2020**

---

FILED May 26, 2020
Deborah Cooper,
County Clerk Recorder
CONTRA COSTA COUNTY
By, J. Graff, Deputy County Clerk
FILE NO. 2020-2363

**FICTITIOUS BUSINESS NAME STATEMENT**

The name of the business is: **SKYLINE VISTA HOME** located at 1337 Mokelune Dr. Antioch, CA 94531, (Mailing address: 2162 Watercress Pl. San Ramon, CA 94531) is hereby registered by the
following owner(s):
Alice Evans
2162 Watercress Pl.
San Ramon, CA 94582
This business is conducted
by: An Individual
/s/ Alice Evans
This statement was filed with the County Clerk of Contra Costa on date indicated by file stamp above.
The registrant commenced to transact business under the fictitious business name listed above on 5/27/2009
Expires 5/26/2025
**ECT# 6493196**
**June 22, 29,**
**July 6, 13, 2020**

---

FILED
JUNE 18, 2020
Deborah Cooper,
County Clerk-Recorder
Contra Costa County
By J Celestial, Deputy
FILE NO. 2020-2876

**FICTITIOUS BUSINESS NAME STATEMENT**

The name of the business: DESPERADO FILMS located at 1470 Maria Ln., #101, Walnut Creek, CA 94596 in Contra Costa County is hereby registered by the following owner(s):
1) Jeffrey S. Kendall
1855 Late Horizon Pl.
Walnut Creek, CA 94595
2) Elaine Kendall
1855 Late Horizon Pl.
Walnut Creek, CA 94595
This business is conducted by: Married Couple
Business commenced on N/A.
/s/ Jeffrey S. Kendall
This statement was filed with the County Clerk of Contra Costa on date indicated by file stamp above.
Expires JUNE 18, 2025.
**CCT #6494978**
**Jun. 29;**
**Jul. 6, 13, 20, 2020**

---

FILED
JUNE 26, 2020
Deborah Cooper,
Contra Costa County Clerk-Recorder
By L Spence, Deputy County Clerk
FILE NO. 2020-3033

**FICTITIOUS BUSINESS NAME STATEMENT**

The name of the business: VEGAN WEIRDO, LLC located at 2954 Treat Blvd., Ste. F, Concord, CA 94518 in Contra Costa County is hereby registered by the following owner(s):
Vegan Weirdo, LLC
2954 Treat Blvd., Ste. F
Concord, CA 94518
California
This business is conducted by: A Limited Liability Co.
Business commenced on N/A.
/s/ James Locke
Managing Member
This statement was filed with the County Clerk of Contra Costa on date indicated by file stamp above.
Expires JUNE 26, 2025.
**CCT #6501594**
**Jul. 13, 20, 27;**
**Aug. 3, 2020**

---

FILED
JUNE 18, 2020
Deborah Cooper,
County Clerk-Recorder
Contra Costa County
By L Fallas, Deputy
FILE NO. 2020-2869

**FICTITIOUS BUSINESS NAME STATEMENT**

The name of the business: GREGORY D. RINEHART & ASSOCIATES located at 3182 Old Tunnel Rd., Ste. E, Lafayette, CA 94549 in Contra Costa County is hereby registered by the following owner(s):
Gregory Rinehart
56 Nace Ave.
Piedmont, CA 94611
This business is conducted by: An Individual
Business commenced on June 1, 2015.
/s/ Gregory D. Rinehart
This statement was filed with the County Clerk of Contra Costa on date indicated by file stamp above.
Expires JUNE 18, 2025
**CCT #6494980**
**Jun. 29;**
**Jul. 6, 13, 20, 2020**

---

**LIEN SALE NOTICE**

NOTICE IS HEREBY GIVEN PURSUANT TO SECTION 503 OF THE CALIFORNIA HARBORS AND NAVIGATIONS CODE OF THE STATE OF CALIFORNIA, THE UNDERSIGNED, **RIVERS END MARINA 6020 LINDEMANN RD. BOX 21AA DISCOVERY BAY, CA. 94505** WILL SELL AT PUBLIC SALE ON; **JULY 28, 2020 10:00 AM** THE FOLLOWING PROPERTY:
**1990 – 17' BAYLIN V1 CF # 7667 NA HULL#BYID54CVC090**
**1990 ESCRT TRL LIC#4JB7716 CA VIN# 405116BA5LK000130**
**1986 - 19' BAYLIN V1 CF # 1286 JG HULL#BYIA15CJI586**
**WCT 6501379**
**July 13, 2020**

---

APN: 150-043-011 TS No: CA08000495-19-1 TO No: 190990593-CA-VOI NOTICE OF TRUSTEE'S SALE (The above statement is made pursuant to CA Civil Code Section 2923.3(d)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(d)(2).) YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED December 15, 2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU

## Legal Notice

SHOULD CONTACT A LAWYER. On August 24, 2020 at 01:30 PM, at the north side of the Pittsburg Civic Center near the grass located at 65 Civic Avenue, Pittsburg, CA 94565, MTC Financial Inc. dba Trustee Corps, as the duly Appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust recorded on December 20, 2005 as Instrument No. 2005-0486453-00, of official records in the Office of the Recorder of Contra Costa County, California, executed by MAUREEN A. O'KENNEDY, AN UNMARRIED WOMAN, as Trustor(s), in favor of FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, A SUBSIDIARY OF INDYMAC BANK, F.S.B., A DELAWARE CORPORATION as Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER, in lawful money of the United States, all payable at the time of sale, that certain property situated in said County, California describing the land therein as: LOT 504, AS DESIGNATED ON THE MAP "GREGORY GARDENS UNIT NO. 3" FILEDNOVEMBER 29, 1949 IN MAP BOOK 38, PAGE 37, CONTRA COSTA COUNTY RECORDS. The property heretofore described is being sold "as is". The street address and other common designation, if any, of the real property described above is purported to be: 106 DORIS DRIVE, PLEASANT HILL, CA 94523 The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided in said Note(s), advances if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $720,292.24 (Estimated). However, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary's bid at said sale may include all or part of said amount. In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the Trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The property offered for sale excludes all funds held on account by the property receiver, if applicable. If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse. Notice to Potential Bidders If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a Trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a Trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same Lender may hold more than one mortgage or Deed of Trust on the property. Notice to Property Owner The sale date shown on this Notice of Sale may be postponed one or more times by the Mortgagee, Beneficiary, Trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about Trustee Sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call In Source Logic at 702-

## Legal Notice

659-7766 for information regarding the Trustee's Sale or visit the Internet Web site address listed below for information regarding the sale of this property, using the file number assigned to this case, CA08000495-19-1. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale. Date: 06/22/2020 MTC Financial Inc. dba Trustee Corps TS No. CA08000495-19-1 17100 Gillette Ave Irvine, CA 92614 Phone: 949-252-8300 TDD: 866-660-4288 Myron Ravelo, Authorized Signatory SALE INFORMATION CAN BE OBTAINED ON LINE AT www.insourcelogic.com FOR AUTOMATED SALES INFORMATION PLEASE CALL: In Source Logic AT 702-659-7766 Trustee Corps may be acting as a debt collector attempting to collect a debt. Any information obtained may be used for that purpose.Order Number 72074, Pub Dates: 06/29/2020, 07/06/2020, 07/13/2020, CONTRA COSTA TIMES
**CCT #6495080**
**Jun 29; Jul 6, 13, 2020**

## Legal Notice

FILED
June 4, 2020
CONTRA COSTA COUNTY
Deborah Cooper
County Clerk
CONTRA COSTA COUNTY
By Deborah Cooper, Deputy
File No. F-0002576

**FICTITIOUS BUSINESS NAME STATEMENT Pursuant To Business and Professions Code Sections 17900-17930**

The name of the business: Kettlebelle Calligraphy; Kettlebell Calligraphy; KB Calligraphy
located at 644 Edwards St, Crockett, Contra Costa County, CA 94525 is hereby registered by the following owner(s):
Rozelyn Hesby
644 Edwards St, Crockett, CA 94525
This business is conducted by: an individual
Registrant has not yet commenced to transact business
Expires 06/04/2025
/s/Rozelyn Hesby
**WB0203812**
**ECT**
**June 29, July 6, 13, 20 2020**

**Call Now!**
**1-800-595-9595**
Place Your Ad
Mon-Fri
8:00 am to 5:00 pm

## Legal Notice

**Notice To Bidders**
**RFB #819**
**Notice is Hereby given that the San Ramon Valley Unified School District (hereinafter referred to as "District") in the Town of Danville, County of Contra Costa, State of California desires to solicit qualified bids for:**

**LANDSCAPE MAINTENANCE SERVICES FOR SRVUSD MAINTENANCE AND GROUNDS DEPARTMENT**

Each bid must be sealed, marked with the RFB #819 and titled "LANDSCAPE MAINTENANCE SERVICES FOR MAINTENANCE AND GROUNDS DEPARTMENT" and returned no later than:
1:00 pm (Pacific Time) and no minutes, no seconds on TUESDAY, AUGUST 11, 2020

To the office of the Director of Maintenance & Grounds of the San Ramon Valley Unified School District, 3280 Crow Canyon Road, San Ramon, CA 94583. Bids will be publicly opened at that time. The District will not receive bids after the time set for opening thereof. It shall be the full responsibility of all bidders to ensure that bids are delivered to the above office by the time and date stated. It is the sole responsibility of the bidder to ensure that the bid is received by the Director of Maintenance and Grounds prior to the bid opening deadline date and time. The District will not be responsible for late deliveries by US mail or any other means. Late bids, unsealed bids, unlabeled bids, incomplete bids, or bids otherwise not in compliance with the General Conditions of this Request for Bid will be rejected. By submitting a response, bidder acknowledges and accepts the General Conditions and all terms contained in this RFB. Faxed Bids will not be accepted. All bids shall be on the forms provided for by the District.

PRE-BID CONFERENCE:
A bidder's conference will be held on July 28, 2020 at 10:00am at the Maintenance Service Yard, 3280 Crow Canyon Road, San Ramon, CA 94583 for the purpose of acquainting all prospective bidders with the bid documents and scope of the entire maintenance service.

**SRVT# July 13, 20, 2020**

## Legal Notice

Helen Athena Kleinsmith, Petitioner
**SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA**
**Wakefield Taylor Courthouse**
**725 Court St.**
**Martinez, CA 94553**
PETITION OF: HELEN ATHENA KLEINSMITH FOR CHANGE OF NAME
**Case No. N20-0795**
**ORDER TO SHOW CAUSE FOR CHANGE OF NAME**
TO ALL INTERESTED PERSONS:
Petitioner HELEN ATHENA KLEINSMITH filed a petition with this court for a decree changing names as follows:
(Present Name) HELEN ATHENA KLEINSMITH to
(Proposed Name) HELEN ATHENA SPIGHT.
THE COURT ORDERS: That all persons interested in this matter appear before this court at the hearing indicated below to show cause, if any, why the petition for change of name should not be granted. Any person objecting to the name changes described above must file a written objection that includes the reasons for the objection at least two court days before the matter is scheduled to be heard and must appear at the hearing to show cause why the petition should not be granted. If no written objection is timely filed, the court may grant the petition without a hearing.
**NOTICE OF HEARING**
Date: **09/09/2020** Time: **9:00 AM** Dept.: **30**
The address of the court is: **725 Court St., Martinez, CA 94553**.
A copy of this Order to Show Cause shall be published at least once each week for four successive weeks prior to the date set for hearing on the petition in the following newspaper of general circulation, printed in this County: CONTRA COSTA TIMES
Date: 6/10/2020 /s/ Virginia M. George
JUDGE OF THE SUPERIOR COURT
**CCT #6494881; Jun. 29; Jul. 6, 13, 20, 2020**

ARE YOU A BUSINESS OWNER?

Looking for a new way to make an impact in your market?
Visit **BayAreaNewsGroup.com** today and find out how the digital and print products of Bay Area News Group can help you reach your business goals.

## Legal Notice

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION,**<br>**- and -**<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.** | Bankruptcy Case<br>No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered) |

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

**PLEASE TAKE NOTICE** that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date**. The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding**. The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole* source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the *sole* source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

**a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;**

**b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;**

**c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;**

**d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and**

**e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.**

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes**.

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts**.

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, **no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease**, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d. of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications**. Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020
**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**
**CCT 6500986; 7/13/20**

THANK YOU
for being a longtime reader of this paper
We appreciate your continued support of our local journalism.

We've enjoyed hearing from you!

BayArea NewsGroup

**Exhibit L**

# Marin Independent Journal

4000 Civic Center Drive, Suite 301
San Rafael, CA 94903
415-382-7335
legals@marinij.com

3824007

MILLER ADVERTISING AGENCY, INC.
220 WEST 42ND STREET, 12TH FLOOR
NEW YORK, NY 10036

Legal No. **0006500928**

## PROOF OF PUBLICATION
### (2015.5 C.C.P.)

## STATE OF CALIFORNIA
## County of Marin

I am a citizen of the United States and a resident of the County aforesaid: I am over the age of eighteen years, and not a party to or interested in the above matter. I am the principal clerk of the printer of the MARIN INDEPENDENT JOURNAL, a newspaper of general circulation, printed and published daily in the County of Marin, and which newspaper has been adjudged a newspaper of general circulation by the Superior Court of the County of Marin, State of California, under date of FEBRUARY 7, 1955, CASE NUMBER 25566; that the notice, of which the annexed is a printed copy (set in type not smaller than nonpareil), has been published in each regular and entire issue of said newspaper and not in any supplement thereof on the following dates, to-wit:

**07/13/2020**

I certify (or declare) under the penalty of perjury that the foregoing is true and correct.

Dated this 13th day of July, 2020.

*Donna Lazarus*
_____
Signature

## PROOF OF PUBLICATION

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION
In re: PG&E CORPORATION, - and - PACIFIC GAS AND ELECTRIC COMPANY, Debtors.
Bankruptcy Case No. 19-30088 (DM) Chapter 11 (Lead Case) (Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

ically designated as
on the Schedule of

ragraph 34 of the
te regarding (i) any
or any assignee to
within the meaning
executory contract
matter pertaining to
mounts required by
**re Dispute**"), such
n due course either
ourt, or, after notice
: Bankruptcy Court,

**er Amendments to**

graph 35a. of the
executory contract
: to the other party
damages, shall be
the Debtors or the
perties or interests
nkruptcy Court and
**o later than thirty
e effective date of
l lease**, as set forth
: Bankruptcy Court.
ier:
irty (30) days from
Assumed Contracts
Rejected Contracts,
previously listed on
itory contracts and

xpired lease that is
l from the Schedule
the date on which
interparty to file an
either consensually
: Final Order of the
as of July 1, 2020;

d lease added to the
d by the Bankruptcy
i of such executory
ed Contracts is not

iecutory contract or
ited Contracts shall
s following the later
in is filed and is not
irder approving the

of the Plan, all final
: against a Debtor,
he period from the
be filed and served
s after July 1, 2020.
e Bankruptcy Court
ures established by
and any other prior
Professionals in the

Plan, the Financing
Fire Victim Claims
an be viewed free
ticing agent, Prime
nally, copies of such
tcy Court's website:
login are needed to
nd can be obtained
n Trust Agreement
ig other documents
ie of charge at the
ust.com/.

## THE COUNTY



ALAN DEP — MARIN INDEPENDENT JOURNAL

A grazer roams near Chimney Rock in Point Reyes National Seashore last year. The gross value of Marin County agricultural products was nearly $98 million in 2019.

# Farm report outlines 4% gain

**By Richard Halstead**
rhalstead@marinij.com

Marin County's agricultural production grew 4% in 2018, marking the second consecutive year of growth after declines in 2016 and 2017, according to the county's annual farming report.

The total gross value of all Marin agricultural products amounted to more than $97.9 million in 2019, up from $94.1 million in 2018.

Milk production, organic and conventional combined, increased 12% to about $35 million in 2019. It was the first increase in milk production in five years, even though milk continues to be Marin's leading agricultural commodity. The amount of milk produced increased by only 3%.

"Production typically remains fairly consistent from year to year," said Stacy Carlsen, Marin County's agricultural commissioner. "Pricing is what affects the overall value."

Organic milk production increased 17%, reaching a value of $32.8 million after declining 8% the previous year. Conventional milk production fell 29% to $2.2 million, compared with a decline of 17% in 2018. The price of organic milk has fallen as the supply has increased because more conventional dairies are switching to organic.

Other major sectors contributing to Marin's agricultural production grew more modestly or declined. Poultry production, which accounted for $20.3 million in value, was 13% lower than

in 2018. Cattle production increased 4% from the previous year to $14.8 million.

The biggest year-to-year increase came in aquaculture — the harvesting of oysters, mussels and clams — which jumped 34% to $6.9 million. The production value of Marin's sheep also increased a 27% to $2.1 million.

The value of Marin's fruits and vegetables amounted to about $3.59 million, down 13% from 2018. Hay production was down 36%, while the production value of silage rose 22%.

"Wet weather in the first half of 2019 impacted various producers in the county," Carlsen wrote in his report. "Field crops as well as fruit and vegetable producers saw a decrease in yields and value due

FARM » PAGE 4

## SAUSALITO

# City Council resolves to act against racism

**By Lorenzo Morotti**
lmorotti@marinij.com

The Sausalito City Council has adopted a resolution in support of the Black Lives Matter movement aimed at condemning systemic racism and promoting racial equity.

The resolution, approved in a unanimous vote Tuesday, passed with amendments by Councilman Tom Reilly to include mention of Marin City. The resolution seeks to foster trust between the two communities by calling for affordable housing through a land trust, inviting Marin City residents to join committees and ensuring that the desegregation of the Sausalito Marin City School District is successful.

"This is not a quarterly report. This is a five- to 10-year process," Mayor Susan Cleveland-Knowles said. "It's very important to acknowledge these issues that we're talking about now that have become entrenched over hundreds of years. That will take a deep commitment on many years to begin to address them.

"Overall, I think this is a long-term plan, but we need to take some actions now," she said.

Sausalito is 92% white, 3.5% Asian, 1.5% Black and 3% other ethnic groups, according to a city staff report that draws on 2010 census data. Marin City is about 40% Black, according to the report.

"Marin County has the highest level of racial and eth-

nic inequities of all counties in California, according to a 2017 report by the Advancement Project California," City Clerk Heidi Scoble said during a presentation at the meeting.

Dozens of residents from Sausalito and Marin City called into the council meeting, which was held by teleconference because of the coronavirus outbreak. Some shared their gratitude, while others said they were dissatisfied with the city's actions, saying city leaders have been apathetic about social justice and diversity.

Critics pointed to an amicus brief that the city filed in support of Willow Creek Academy's motion challenging the state attorney general's call for the desegregation in the Sausalito Marin City School District. It asked the court to make the investigation public so stakeholders could weigh in on the allegation that the district board deliberately diverted staff and resources to Willow Creek Academy, a predominately white charter school, while depriving those resources from Bayside Martin Luther King Jr. Academy, which predominantly serves students of color in Marin City.

The district and the Attorney General's Office reached a settlement last year to unify the schools within five years.

"I must say that I've been deeply disappointed by City Council's response to school

RACISM » PAGE 4

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA SAN FRANCISCO DIVISION
In re:
PG&E CORPORATION,
— and —
PACIFIC GAS AND ELECTRIC COMPANY,
Debtors.

Bankruptcy Case
No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

PLEASE TAKE NOTICE that:
[Legal notice text continues in small print across two columns]

---

# PUBLIC NOTICE

*Notice of Preparation/Environmental Scoping and Virtual Open House for Draft Environmental Impact Report (EIR) / Environmental Assessment (EA) for the Proposed State Route 37 Traffic Congestion Relief Project*



## WHAT'S BEING PLANNED

The California Department of Transportation (Caltrans) has initiated a public review period and is conducting a virtual open house to request comments on the scope and content of a planned EIR/EA for the proposed State Route (SR) 37 Traffic Congestion Relief Project in Sonoma, Napa, and Solano counties. Caltrans, in partnership with the Metropolitan Transportation Commission (MTC) and the Sonoma County Transportation Authority (SCTA), Solano Transportation Authority (STA), and Napa Valley Transportation Authority (NVTA) is proposing improvements to SR 37 from west of the SR 121 intersection to Mare Island, where the existing highway narrows to one lane in each direction. The project is focused on traffic congestion relief by improving traffic flow during peak travel times and increasing vehicle occupancy within the travel corridor. Three project alternatives are under consideration, including converting existing shoulders to part-time or full-time travel lanes, and/or installing a movable median barrier to provide a three-lane facility within the project limits. The additional lane(s) is intended to be a High Occupancy Vehicle (HOV) lane to provide an incentive to shift to multi-occupant vehicles.

## WHAT'S AVAILABLE

Caltrans filed a California Environmental Quality Act (CEQA) Notice of Preparation (NOP) with the State Clearinghouse on July 10, 2020. The NOP contains information about the project scope, purpose and need, and planned environmental studies. The NOP can be viewed on-line at **https://dot.ca.gov/caltrans-near-me/district-4/d4-projects/d4-37-corridor-projects.** For printed copies or assistance, email StateRoute37@dot.ca.gov.

### WHERE YOU COME IN

| Share your comments | Attend a virtual scoping open house |
|---|---|
| Please submit comments in writing by 5:00 PM on August 24, 2020 to: | The scoping open house will be a virtual on-line event on Wednesday July 22, 2020 at 6:00-7:30 PM. Attendees can ask questions on-line about the material presented during the meeting, however, all scoping comments must be submitted in writing by email or mail. Attendance at the virtual open house is not required to submit comments. Please visit https://dot.ca.gov/caltrans-near-me/district-4/d4-projects/d4-37-corridor-projects for more information. |
| Caltrans District 4 Attn: Yolanda Rivas P.O. Box 23660 Oakland, CA 94623-0660 | |
| or via email to StateRoute37@dot.ca.gov | |

**CONTACT:**
For language translation, use the contact information below.
Para la traducción de idiomas, use la siguiente información de contacto.
Yolanda Rivas, Caltrans District 4
(510) 286-1204



# PLEASE RECYCLE THIS NEWSPAPER.

*Thank you!*



Marin Independent Journal

**Exhibit M**

**San Jose Mercury News**

4 N. 2nd Street, Suite 800
San Jose, CA 95113
408-920-5332

Legal No.     **0006500934**

## PG&E CORPORATION

### PROOF OF PUBLICATION
### IN THE CITY OF SAN JOSE
### IN THE STATE OF CALIFORNIA
### COUNTY OF SANTA CLARA

#### FILE NO. R7070039

In the matter of

**San Jose Mercury News**

The undersigned, being first duly sworn, deposes and says: That at all times hereinafter mentioned affiant was and still is a citizen of the United States, over the age of eighteen years, and not a party to or interested in the above entitled proceedings; and was at and during all said times and still is the principal clerk of the printer and publisher of the San Jose Mercury News, a newspaper of general circulation printed and published daily in the City of San Jose, County of Santa Clara, State of California as determined by the court's decree dated June 27, 1952, Case Numbers 84096 and 84097, and that said San Jose Mercury News is and was at all times herein mentioned a newspaper of general circulation as that term is defined by Sections 6000; that at all times said newspaper has been established, printed and published in the said County and State at regular intervals for more than one year preceding the first publication of the notice herein mentioned. Said decree has not been revoked, vacated or set aside.

I declare that the notice, of which the annexed is a true printed copy, has been published in each regular or entire issue of said newspaper and not in any supplement thereof on the following dates, to wit:

**07/13/2020**

Dated at San Jose, California
July 13, 2020

I declare under penalty of perjury that the foregoing is true and correct.

Principal clerk of the printer and publisher of the San Jose Mercury News

r-BP316-07/17/17

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case |
| **PG&E CORPORATION,** | No. 19-30088 (DM) |
| - and - | Chapter 11 |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Lead Case) |
| Debtors. | (Jointly Administered) |

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF
EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS'
JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

**PLEASE TAKE NOTICE** that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole source of recovery* for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the *sole source of recovery* for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed

or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, **no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease,** as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d. of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

LBP318-07/17/17

# Obituaries & In Memoriam

To place an Obituary notice in
The Mercury News, please email
mnobits@bayareanewsgroup.com
or call us at (408) 920-5276.

*The Mercury News*

## OBITUARY INDEX

Please submit your
obituary notice to:
mnobits@
bayareanewsgroup.com
or call (408) 920-5276

Please visit
www.legacy.com to view
the online obituaries
and sign the
online guestbook

ANDERSON, ALISTAIR
MELTON, SHARON

This index may not re-
flect all obituaries
published. Obituaries
may not appear in
alphabetical order.



### Alistair Robert (Bob) Anderson
January 20, 1944 - July 5, 2019
San Jose, Santa Cruz, Capitola

In memory of Alistair Robert (Bob) Anderson Jr. Bob was preceded in death by his parents Alistair and Eleanor, and his sister Margaret. He is survived by his siblings Ken, Molly, Libby, Alicia, and Rit, his wife Liz Mariner, children Kelly A Dos Santos and Colin Anderson, and grandchildren Maura and Riley Anderson.

A graduate of Bellarmine and SJSU, and employee at Westinghouse/Northrop Grumman who volunteered for the United Way and the Capitola Historical Museum. A voracious reader who appreciated classic movies, British TV, and many sports. A kayaker, sailor, biker, and runner, Bob greatly enjoyed travel, outdoor activities, playing with his grandchildren, and large gatherings of friends and family. He is missed and loved.



### Sharon Melton
Sept. 1, 1936-June 25, 2020
San Jose

Sharon Ann Melton, 83, passed peacefully in San Jose due to complications from congestive heart failure. She was raised in western New York area. A Registered Nurse for over 40 years, she spent most of that time in the Bay Area of California. She was witty, creative, and a pet lover. She also loved flowers and plants, as well as the outdoors, especially the June Lake area. Traveling and visiting friends and family delighted her. She enjoyed making cakes for any occasion. She was an enthusiastic supporter of jazz, theater, local arts, and environmental causes. She was an active member of AA and 32 years sober. Christian at her death. Widow of Robert Lee Melton, she is survived by sister Shirley, sons Randy and Dale, daughters-in-law Flor and Jennifer, and grandchildren Ruth and Sam. A memorial service will be held at a date and location that will be announced later. The family requests that donations be made to the Sierra Club or the San Jose Jazz Society.



# Life Stories Live On

Find current & past obituaries online
at MercuryNews.com

Sign a guest book
View photos
Read stories and
special remembrances

Visit MercuryNews.com
and click on obituaries

Database powered by Legacy.com

*The Mercury News*
The Newspaper of Silicon Valley
MercuryNews.com

---

# Legal Advertising and Public Notices

San Jose Mercury News • Legals@MercuryNews.com     San Mateo County Times • Legals@MercuryNews.com

### Legal Notice

**FICTITIOUS BUSINESS NAME STATEMENT**
The following person is doing business as
Stories By Us LLC
766 N 6th Street, San Jose, CA 95112
located in Santa Clara County.
This business is owned by:
a Limited Liability Company
Name and residence address of registrant:
Stories By Emma, LLC
766 N 6th Street, San Jose, CA 95112
1225 S Bascom Ave., #443, Campbell, CA 95008
Registrant began transacting business under the fictitious business name on: 03/01/2019
Type of filing: First Filing
I declare that all information in this statement is true and correct.
/s/ Emma Seimears, Owner
Entity Name: Stories By Emma, LLC
Article / Reg # 201811310697
Above entity was formed in the state of MA
**SJMN #6494523; June 29; July 6, 13, 20, 2020**

### Legal Notice

Filed in County Clerk's Office
Regina Alcomendras
Santa Clara County - Clerk Recorder
FBN669934
File Date: 06/09/2020
Expires: 06/09/2025
By: schanthasy, Deputy
**FICTITIOUS BUSINESS NAME STATEMENT**
The following person is doing business as
Stories By Us, LLC
766 N 6th Street, San Jose, CA 95112
located in Santa Clara County.
This business is owned by:
a Limited Liability Company
Name and residence address of registrant:
Stories By Emma, LLC
766 N 6th Street, San Jose, CA 95112
1225 S Bascom Ave., #443, Campbell, CA 95008
Registrant began transacting business under the fictitious business name on: 03/01/2019
Type of filing: First Filing
I declare that all information in this statement is true and correct.
/s/ Emma Seimears, Owner
**SJMN #6494523; June 29; July 6, 13, 20, 2020**

### Legal Notice

**FICTITIOUS BUSINESS NAME STATEMENT**
The following person is doing business as
Fictitious business name and address:
Top Notch Escrow
located at 5244 Camden Ave, San Jose, Ca. 95124 Santa Clara County.
This business is owned by:
an individual
Name and residence address of registrant:
Veronica Tovar
5244 Camden Ave.
San Jose, Ca. 95124
Registrant began transacting business under the fictitious business name on: 06/02/2020
Type of filing: First Filing
I declare that all information in this statement is true and correct.
/s/Veronica Tovar
**SJMN #6494805**
**June 29;**
**July 6, 13, 20, 2020**

### Legal Notice

Filed: Endorsed in the office of the County Clerk Recorder San Mateo County, California
June 17, 2020
Mark Church, County Clerk
By: Glenn S. Changtin, Deputy Clerk
File Number: 284858
Type of Filing: Original
**FICTITIOUS BUSINESS NAME STATEMENT**
The following person is doing business as:
Savage Realty Group
527 S. Fremont Street, San Mateo, CA 94402
located in the San Mateo County
Registered owner(s):
Peninsula Equities, Inc.
P.O. Box 528, Burlingame, CA 94011
State of Incorporation/Organization: CA
Business is conducted by: a Corporation
The registrant commenced to transact business under the fictitious business name or names listed above on N/A.
I declare that all information in this statement is true and correct.
/s/Norma Sayage, President
This statement was filed with the County Clerk of San Mateo County on the date indicated by the filed stamp in the upper right corner.
**SMCT #6494557; June 29; July 6, 13, 20, 2020**

### Legal Notice

Filed in County Clerk's Office
Regina Alcomendras
Santa Clara County - Clerk Recorder
FBN669933
File Date: 06/09/2020
By: nkhamphilath, Deputy
**FICTITIOUS BUSINESS NAME STATEMENT**
The following person is doing business as:
Ajna California
385 S 1st St Lavender Suite, San Jose, CA 95113
located in Santa Clara County.
This business is owned by:
a Limited Liability Company
Name and residence address of registrant:
Ajna Design Studio LLC
88 S 3rd St #230, San Jose, CA 95113
Registrant began transacting business under the fictitious business name on: N/A
Type of filing: First Filing
I declare that all information in this statement is true and correct.
/s/ Nikita Ravindranath, Founder & CEO
Entity Name: Ajna Design Studio LLC
Article / Reg #: 202013510158
Above entity was formed in the state of California
**SJMN #6494443; June 29; July 6, 13, 20, 2020**

### Legal Notice

**NOTICE OF PETITION TO ADMINISTER ESTATE
OF DEBORAH JUNE RIEKER
Case Number: 20PR188142**

To all heirs, beneficiaries, creditors, contingent creditors, and persons who may otherwise be interested in the will or estate, or both of: Deborah June Rieker aka Deborah J Rieker
**A Petition for Probate** has been filed by Judith Devivo in the Superior Court of California, County of Santa Clara.
The Petition for Probate requests that Judith Devivo be appointed as personal representative to administer the estate of the decedent.
The petition requests the decedent's will and codicils, if any, be admitted to probate. The will and any codicils are available for examination in the file kept by the court.
The petition requests authority to administer the estate under the Independent Administration of Estates Act. (This authority will allow the personal representative to take many actions without obtaining court approval. Before taking certain very important actions, however, the personal representative will be required to give notice to interested persons unless they have waived notice or consented to the proposed action.) The independent administration authority will be granted unless an interested person files an objection to the petition and shows good cause why the court should not grant the authority.
**A hearing on the petition will be held in this court as follows:**
Date: 7/30/2020 Time: 9:01 a.m. Dept.: 13
Address of Court: Superior Court of California, County of Santa Clara,
191 North First Street, San Jose, CA 95113,
Probate
**If you object** to the granting of the petition, you should appear at the hearing and state your objections or file written objections with the court before the hearing. Your appearance may be in person or by your attorney.
**If you are a creditor** or a contingent creditor of the decedent, you must file your claim with the court and mail a copy to the personal representative appointed by the court within the later of either (1) **four months** from the date of first issuance of letters to a general personal representative, as defined in section 58(b) of the California Probate Code, or (2) **60 days** from the date of mailing or personal delivery to you of a notice under section 9052 of the California Probate Code. **Other California statutes and legal authority may affect your rights as a creditor. You may want to consult with an attorney knowledgeable in California law.**
**You may examine the file kept by the court.** If you are a person interested in the estate, you may file with the court a Request for Special Notice (form DE-154) of the filing of an inventory and appraisal of estate assets or of any petition or account as provided in Probate Code section 1250. A Request for Special Notice form is available from the court clerk.
Attorney for petitioner: Naomi S. Dubhit
98 Almaden Blvd., #110,
San Jose, CA 95113    (408) 248-7878
**SJMN#6501336; July 11,13,18,2020**

---

# THE RECYCLE PATH

Recycling is like exercise – it makes the environment healthier. Remember to recycle today's newspaper.

BayArea
NewsGroup

---

### Legal Notice

Filed in County Clerk's Office
Regina Alcomendras
Santa Clara County - Clerk Recorder
FBN650023
Filed: 06/12/2020 - FBNWD
By: gcamarena, Deputy
**STATEMENT OF WITHDRAWAL FROM
PARTNERSHIP OPERATING UNDER
FICTITIOUS BUSINESS NAME**
The following person / registrant has withdrawn as general partner from the partnership operating under the following fictitious business name.
**TW Pohman Construction**
1523 Saratoga Avenue, San Jose, CA 95129
Filed in Santa Clara County on 04/15/2019
under previous File Number FBN65372J.
Registrant or entity withdrawing as partner:
Monika Wydra
4322 Moran Drive, San Jose, CA 95129
I declare that all information in this statement is true and correct.
**/s/ Monika Wydra**
This statement was filed with the County Clerk-Recorder os Santa Clara County on the date indicated by the filing label above.
**SJMN #6492936; June 22, 29; July 6, 13, 2020**

### Legal Notice

**WEST VALLEY SCHOOLS
TRANSPORTATION AGENCY
NOTICE TO BIDDERS**

Notice is hereby given that the West Valley Schools Transportation Agency Joint Powers Authority (hereinafter referred to as "Agency") through its lead district Campbell Union Elementary School District) will receive sealed bids prior to the date and time stated for the Bid Opening for **special education pupil transportation services** to the eleven school districts that are members of the Agency ("Member Districts").

The Agency's eleven Member Districts are: Cambrian School District, Campbell Union Elementary School District, Loma Prieta Joint Union School District, Los Gatos Union School District, Luther Burbank School District, Moreland School District, Saratoga Union School District, Union Elementary School District, Campbell Union High School District, and Los Gatos-Saratoga Joint Union High School District. The outside boundaries of the Agency service area comprise the western portion of Santa Clara County bordered on the north by Cupertino Union School District and on the south by San Jose Unified District.

Bids will be received for the provision of **special education pupil transportation services** ("Services") as described in the Transportation Services Agreement ("Contract"). This solicitation for bids is for **special education pupil transportation services** only, and does not include the award of a contract for the provision of general pupil transportation services.

To the extent permitted by Education Code Section 39802, a bidder may consider which bidder would provide more proper or more satisfactory Services and may award the Contract to other than the lowest bidder. Bids are subject to the terms of the General Instructions and Conditions, the Contract, the Fingerprinting Notice and Acknowledgement, and the Bid Bond, Bid Form and Performance Bond forms ("Contract Documents").

Bids will be sealed and filed in the Business Office of Campbell Union Elementary School District:

**155 NORTH THIRD STREET
BOARD ROOM
CAMPBELL, CALIFORNIA 95008**

On July 31, 2020 before 3:00 p.m. on the clock designated by the Agency or its representative as the bid clock ("Bid Clock"). Facsimile copies of the bid will not be accepted. All bids shall be made and submitted only on the forms provided by the Agency and shall be submitted in sealed envelopes clearly marked: **Special Education Pupil Transportation Services Bid.**

Bids may be submitted by U.S. Mail or hand-delivered to the above address, and shall be opened and publicly read aloud at the above-stated time and place. Bids received after that time will be deemed late and nonconforming and will not be accepted or considered by the Agency.

Each bid must conform and be responsive to the Contract Documents. Bid packets, including the Bid Proposal documents, copies of the Contract, and a copy of current routes and mileage information are available from Timothy Fyer at 408-364-4200.

The Agency will not consider or accept any bids from contractors, their operators, or their subcontractors who do not possess all appropriate and required licenses or other permits to perform the Services identified in the Contract Documents.

Bids will be opened on July 31, 2020 at 3:00 p.m. as calculated by the Bid Clock.

Bids must be accompanied by a bid bond or certified cashier's check for at least ten percent (10%) of the amount of the base bid and made payable to the Agency. If a bid bond is used, it must be issued by an Admitted Surety (defined to mean an insurance organization authorized by the Insurance Commissioner to transact surety insurance in the State of California during this calendar year), which shall be given as a guarantee that the bidder will enter into the Contract if awarded and will be declared forfeited, paid to, or retained by the Agency as liquidated damages if the bidder refuses or neglects to enter into the Contract provided by the Agency after being requested to do so. The surety insurer must, unless otherwise agreed to by Agency in writing, at the time of issuance of the bond, have a rating not lower than "A-" as rated by A.M. Best Company, Inc. or other independent rating companies. Agency reserves the right to approve or reject the surety insurer selected by Contractor and to require Contractor to obtain a bond from a surety insurer satisfactory to the Agency.

Bids must be accompanied by an executed Fingerprinting Notice and Acknowledgement in the form provided by the Agency.

The Agency reserves the right to waive any irregularity and to reject any or all bids.

Unless otherwise required by law, no bidder may withdraw its bid for a period of sixty (60) days after the date set for the opening thereof or any authorized postponement thereof. The Agency reserves the right to take more than sixty (60) days to make a decision regarding the rejection of bids or the award of the Contract.

Advertise: 1st Publication Date July 13, 2020
2nd Publication Date July 20, 2020
**SJMN#6501033; July 13, 20, 2020**

---

## Sign up for the Coronavirus updates newsletter:
### bayareane.ws/coronavirusupdates

## Stay up to date on the COVID-19 outbreak.

## Sign up to date on the COVID-19 outbreak.

*EAST BAY TIMES*

*The Mercury News*

---

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

In re:             Bankruptcy Case
**PG&E CORPORATION,**    No. 19-30088 (DM)
- and -             Chapter 11
**PACIFIC GAS AND ELECTRIC COMPANY,**    (Lead Case)
           **Debtors.**    (Jointly Administered)

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

PLEASE TAKE NOTICE that:

[Dense multi-column legal notice text follows — see full Plan confirmation notice.]

**Exhibit N**

# The Fresno Bee
## fresnobee.com





# AFFIDAVIT OF PUBLICATION

| Account # | Ad Number | Identification | PO | Amount | Cols | Depth |
|---|---|---|---|---|---|---|
| 721487 | 0004695879 | United States PG&E | | | 3 | 6.00 In |

**Attention:** ADAM LEVIN

PG&E Corporation

220 WEST 42ND STREET
12TH FLOOR
NEW YORK, NY 10036

## COUNTY OF DALLAS
## STATE OF TEXAS

The undersigned states:

McClatchy Newspapers in and on all dates herein stated was a corporation, and the owner and publisher of The Fresno Bee.

The Fresno Bee is a daily newspaper of general circulation now published, and on all-the-dates herein stated was published in the City of Fresno, County of Fresno, and has been adjudged a newspaper of general circulation by the Superior Court of the County of Fresno, State of California, under the date of November 28, 1994, Action No. 520058-9.

The undersigned is and on all dates herein mentioned was a citizen of the United States, over the age of twenty-one years, and is the principal clerk of the printer and publisher of said newspaper; and that the notice, a copy of which is hereto annexed, marked Exhibit A, hereby made a part hereof, was published in The Fresno Bee in each issue thereof (in type not smaller than nonpareil), on the following dates.

July 13, 2020



STEFANI SCOTT BEARD
My Notary ID # 131768951
Expires October 23, 2022

I certify (or declare) under penalty of perjury that the foregoing is true and correct.

Dated     July 13, 2020

Extra charge for lost or duplicate affidavits. Call for current rate. Please do not destroy.

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case |
| **PG&E CORPORATION,** | No. 19-30088 (DM) |
| - and - | Chapter 11 |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Lead Case) |
| **Debtors.** | (Jointly Administered) |

## NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

PLEASE TAKE NOTICE that:

1. The **Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court") entered an order [Docket No. 8053] (the "Confirmation Order") confirming the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated June 19, 2020 [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. The **Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION.** In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the sole source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the sole source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, receiving, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any **Debtor** or **Reorganized Debtor** with respect to any such Fire Claim;

b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any **Debtor** or **Reorganized Debtor** or against the property of any Debtor or **Reorganized Debtor** with respect to any such Fire Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any **Debtor** or **Reorganized Debtor** or the property of any **Debtor** or **Reorganized Debtor** with respect to any such Fire Claims;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due any **Debtor** or **Reorganized Debtor** or against the property of any **Debtor** or **Reorganized Debtor** with respect to any such Fire Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the **Plan Documents**, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed

---

or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before June 30, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.3(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "Cure Dispute"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d. of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at: http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP



Venues like the Tower Theatre were the first to close as the pandemic hit and performances were canceled.

JOHN WALKER jwalker@fresnobee.com

FROM PAGE 1A

# VENUES

ciation says 90% of independent venues report they will close permanently in a few months without federal funding. Even iconic venues like the Troubadour in Los Angeles have taken to GoFundMe to stave off permanent closure.

"One thing has become painful clear heaving independent venues alive requires the government's help," according to the NIVA website.

The group is lobbying for industry specific Paycheck Protection Program loans, similar to what was offered for the restaurant industry. It is also asking for continued unemployment benefits and temporary tax credits to offset the cost of ticket refunds, rent and mortgage and employee safety and retention.

It has also created the hashtag #saveourstages to help raise awareness.

## BUSINESS WAS BOOMING

In a sad twist, the Tower Theatre was coming off a great 2019 and expecting to have an even bigger 2020 before the pandemic hit.

"It was off the hook," Abbate says.

"It just couldn't get any busier."

The theater had a packed calendar and had booked a full opera season. There were even tentative plans to expand the building around the

theater to two floors, making way for loft units that could be rented out by those in town for shows.

"All of that is just gone," he says.

It was a similar situation at Fulton 55, which had just celebrated its ninth anniversary and had several good years in which it pocketed away some money to make improvement on the venue for its 10th year in business.

"We had a nest egg," says Tony Martin, who manages the downtown music club.

The pandemic just pushed the timeline, some.

"We thought: If we're going to be closed, let's go ahead on these renovations and updates," he says.

The venue recently hired Fresno painter Josh Wigger to do a mural across the entire length of the building. The downstairs' bar got updated, along with other upgrades inside the building.

## NEXT STEPS FOR REOPENING

Even when the venues are allowed to reopen, it will likely be with restrictions set on capacity. Abbate expects rules similar to church regulations, which allow for 25% capacity, or 100 people, whichever is fewer.

That's a losing proposition, he says. Adjusting that 100-person attendance cap would allow the

theater to survive at least the year. The theater could operate its 761 seats at 25% capacity and break even on most shows, or with small losses, he says.

All that means entertainment venues are being forced to experiment with their business models.

The Tower Theatre is looking at the possibility of hosting outdoor drive-in style concerts in its back parking lot. That could happen as early as September, Abbate says. They are in talks with the rock band LA Guns, which was scheduled to play the theater in June.

The show would cost $125 a car and operate much like a drive-in theater.

Fulton 55 hosted a series of audience-free live stream performances. They were mostly to give local bands an opportunity to make some tips — and a few made a decent amount. Ultimately, the effort was overwhelming for the one-man staff.

The venue also looked into reopening without entertainment, using the guidelines in place for bars, but ultimately decided it wasn't worth the risk to the employees or patrons.

"We decided. It's just not safe enough," Martin said.

"We don't want to be a part of the problem."

Regardless of when and how the venues are allowed to reopen, it to be a slow transition back to work, Martin says. It will take time — and possibly a vaccine — before people feel totally safe going out to see live entertainment.

"We'll start off slow and build it back," he said.

The current situation seems bleak, but Martin is optimistic about the future on the other end of the pandemic for those venues that make it.

"When we get back to whatever the new normal is, things will be a little better."

_Joshua Tehee:_
_559-441-6479,_
_@joshuatehee_

# Florida hits new one-day high in virus cases

_Associated Press_

ST. PETERSBURG, FLA.

Florida on Sunday reported the largest single-day increase in positive coronavirus cases in any one state since the beginning of the pandemic.

According to state Department of Health statistics, 15,299 people tested positive, for a total of 269,811 cases.

California had the previous record of daily positive cases - 11,694, four days ago. New York had 11,571 on April 15.

The numbers come at the end of a grim, record-

breaking week in Florida, with 514 fatalities. On Sunday, 45 more deaths were reported.

Throughout May and into June, the state reopened much of its economy with some restrictions. Testing has increased, but the percentage of people testing positive has risen even more dramatically. A month ago, fewer than 5% of tests came up positive on a daily average. Over the past week, the daily average exceeded 19%.

Despite the number of cases surging around the country, a member of the White House coronavirus

task force said Sunday the situation "is not out of control."

Brett Giroir said it's going to take "a lot of effort and everybody's going to have to do their part" to combat the pandemic.

And the assistant secretary at the Health and Human Services Department said "we have to have people wearing a mask in public. It's absolutely essential."

Giroir told ABC's "This Week" that officials would like to see something like 90% of people wearing a mask in public in areas that are hot spots.

He said that "if we don't have that, we will not get control of the virus."

When Giroir was asked about whether states that are seeing a spike in cases should consider more stringent lockdowns, he said, "Everything should be on the table."

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:
PG&E CORPORATION,
- and -
PACIFIC GAS AND ELECTRIC COMPANY,
                              Debtors.
Bankruptcy Case
No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF
EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS'
JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020
PLEASE TAKE NOTICE that...

[legal notice text]

Neng Vu, et al. v. JD Home Rentals, et al. Class Action Settlement

A proposed class action settlement has been reached in the lawsuit Neng Vu, et al. v. JD Home Rentals, et al. Fresno County Superior Court Case No. 14-CECG 00062...

[class action notice in English]

Acuerdo de Demanda Colectiva Neng Vu, et al. contra JD Home Rentals, et al.

Se ha llegado a un acuerdo propuesto de demanda colectiva en la demanda Neng Vu, et al. v. JD Home Rentals, et al., Case No.°14-CECG 00062...

[class action notice in Spanish]

# SERVICES DIRECTORY

Go online to view our Services Directory at fresnobee.com

To place an ad in the Services Directory, call **441-6621** or **442-4442**




### Attention

NOTICE TO READERS
The Fresno Bee publishes home improvement & construction advertisements from companies & individuals who have been licensed by the State of California. We also publish advertisements from unlicensed companies & individuals. California law requires that contractors taking jobs that total $500 or more (labor or materials) be licensed by the Contractors State License Board. State law also requires that contractors include their license number on all advertising. California law also prohibits unlicensed contractors from taking jobs that total less than $500 must state in the advertisements that they are not licensed by the Contractors State License Board.
You can check the status of your licensed contractor @ **www.cslb.ca.gov** or call the Contractors State License Board.
**1-800-321-2752**

### Cleaning & Janitorial

CARPET & Upholstery Cleaning Disinfect & Deodorize /REPAIR/INSTALL CAN DO TODAY. Water damage/Tile cleaning. Free est. 20 yrs exp. **(559) 307-6282**

DESHBA'S HOUSEKEEPING Spring Cleaning, Moving / Deep Cleaning. Licensed-Insured Past. Scheduling. Hrly. Mon-Sun 8am-5pm Call **559-260-7711**

### Home and Business Improvement

BUILDING / REMODELING
CONST. Additions, remodel, repairs & roofing. Brick & block work. Call **(559) 449.1234** License #974978

BUILDING / REMODELING
CONST. Additions, remodel, repairs & roofing. Brick & block work. Call **(559) 449.1234** License #974978

DRYWALL SERVICE – PATCHWORK, Skip-trowel, Tape & Texture. Acoustic Removal. Hand Texture Finishes, units. Over 20 years exp! 559-250-5513

### Home and Business Improvement

ELECTRIC Quality, dependable NO JOB TOO SMALL or BIG 24/7 Electrical Svc & Repair Lic #608987 559-266-1952 Free est

PLUMBING - A&S Free Estimates Plumbing All kinds + mobile homes. Sr. discount or 25% discount w/ad. Visa /MC Lic. #974978 559.449.1234

PLUMBING Al & Sons Plumbing & Drains. We fix broken leaky pipes, sewer drain clog, water heaters & more! 559-304-0230; 559-816-9716 Free Est Lic.#409877-1025

ROOFING -30 yrs exp. in FRESNO/ CLOVIS. All roofs & repairs. Roofing Specialist. Since: Lic#836734. Free Estimates. 559-346-3416

ROOFING ALCON'S ROOFING INC. 25 Yrs of Exp., Residential & Comm'l. All types of Roof. License #1042510 (559) 960-6835 or (559) 960-3966

~THE HANDY MAN~ We do everything A-Z. 30 yrs. Exp. Plumbing all phases roofing, painting & all. Lic. & Ins. (559) 999-9854

### Home and Business Improvement

TILE WORK - SALVATORE TILE Tile Done The Old Way 40 Years Unlic. Get Sat (559) 776-5954

### Junk / Trash / Debris Removal

JOHN'S CLEANUP Junk Removal, Tree Trimming, Tree Work, Hauling & Branch Work. Big or small job, no problem. Free Est. (559) 897-1234 #1024662 /Bonded

### Lawn / Garden / Landscaping / Trees

#00-0 A TREE SURGERY VALLEY TREE SERVICE We do it all. Free est. Sr. disc. B88 #555475, Workers Comp. Insured. (559) 226-8424

### Lawn / Garden / Landscaping / Trees

#00-0 GEORGE'S TREE SERVICE
Tree Trimming, Topping, Thinning Removal, Stump Grinding & Odd Jobs. Comm'l & Resid. Senior Disc. Free Est. # 1059682 Bonded & Insured 559.260.6719 or 309.6006

### Lawn / Garden / Landscaping / Trees

got results?
Call 441-6450 to cancel your ad

#01-0 JESSE'S TREE SERVICE Stump Grinding, Hauling, Tree Removal & Topping, Free Estimates. Lic. #1017780 Bonded & Insured. 559 906-9192

LAWN SERVICE & TREE SERVICE Residential & Commercial $20 & up. Mowing, Edging, Weeding. Clean Up. Call Eric 559-232-6927

GEORGE'S Pro Lawn Services & Landscaping Weekly and biweekly lawn maintenance. tree pruning sprinkler & valve repairs Commercial/residential Free Est 559-305-8759

**Exhibit O**

  

# AFFIDAVIT OF PUBLICATION

| Account # | Ad Number | Identification | PO | Amount | Cols | Depth |
|---|---|---|---|---|---|---|
| 554847 | 0004594376 | | R7070032 | $882.36 | 3 | 6.00 In |

**Attention:** Pete Egloff

MILLER ADVERTISING AGENCY, INC.
220 WEST 42 STREET, 12TH FLOOR, NY, NY 10036
NEW YORK, NY 10036

**Declaration of Publication**
**C.C.P. S2015.5**

STATE OF CALIFORNIA )
) ss.
County of Stanislaus )

I am a citizen of the United States; I am over the age of eighteen years, and not a party to or interested in the above entitled matter. I am a printer and principal clerk of the publisher of the The Modesto Bee, which has been adjudged a newspaper of general circulation by the Superior Court of the County of Stanislaus, State of California, under the date of February 25, 1951 Action No. 46453. The notice of which the annexed is a printed copy has been published in each issue thereof on the following dates, to wit:

July 13, 2020

_V Rodela_
Legal Clerk

I certify (or declare) under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Dallas, Texas on:

Date: 14th, day of July, 2020

_[signature]_
Notary Signature

AMANDA DAWN GRISHAM
My Notary ID # 132031326
Expires May 30, 2023

Extra charge for lost or duplicate affidavits.
Legal document please do not destroy!

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br>**PG&E CORPORATION,**<br>   - and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>              **Debtors.** | Bankruptcy Case<br>No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered) |

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

PLEASE TAKE NOTICE that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION.** In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust*, and the *sole source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust*. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

  a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

  b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

  c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

  d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

  e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan or Confirmation, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

  a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

  b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

  a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

  b. Pursuant to Paragraph 32d. of the Confirmation Order:

    i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

    ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

    iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP



ANDY ALFARO aalfaro@modbee.com

Modesto's Payton Bass makes a catch during the CCCAA NorCal Regional Semifinal game with American River College at Modesto Junior College in Modesto on Nov. 23, 2019. Modesto won the game 35-28.

FROM PAGE 1B

# COACH

that it was likely the "Contingency Plan" (moving fall sports to spring) that would be adopted by CCCAA," MJC Athletic Director Nick Stavrianoudakis said on Thursday. "Then with the news yesterday from the Ivy League and some major colleges suspending practices and sports, it was not a surprise that the decision was made today. We have already begun planning for this likely scenario. All sports will be engaged in training and conditioning in the fall and we will have basically two seasons in the spring - an early spring season (with the fall sports) and a late spring season (with the typically spring sports)."

Here are what sports are in the new Early Spring season:

Early Spring: Basketball, Cross Country, Football, Soccer, Water Polo, Women's Golf, Women's Volleyball, Wrestling

The Late Spring sports season includes the usual spring sports (baseball, softball, track and field, etc) and practice will start on March 27 with competition beginning on April 10.

One other change in the upcoming season is competition will be reduced to 70% of a usual season (seven games instead of 10 for football) and there won't be any state championships.

"We are probably going to get a new schedule," said Stivers, whose Pirates were recently ranked No. 5 in the nation in the 2020 College Football America Juco Preseason Top 30. "They might put us all together as geographically possible and make it a one-year change for league and preseason. Everything is on the table."

---

*Julian A. Lopez: 562-206-9393*

## Legals & Public Notices

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION,**<br>**- and -**<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.** | Bankruptcy Case<br>No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered) |

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

**PLEASE TAKE NOTICE** that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date**. The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding**. The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole* source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the *sole* source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

**a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;**

**b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;**

**c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;**

**d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and**

**e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.**

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes**.

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts**.

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, **no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease**, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d. of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications**. Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

## Legals & Public Notices

NOTICE OF PUBLIC SALE
**Business & Professionals Code S21700**

**Notice is hereby given that a public lien sale of the following described personal property will be held at the hour of 08:30 AM on July 24, 2020 at Derrel's Mini Storage located at 5019 Tunson Road, Modesto, County of Stanislaus, State of California.**

Burri, Hans cabinet, tools, totes McCann, Patricia hoist, tools, stereo Adams, Linda golf clubs, clothes, lamp Dees, Keith tv ps4 shoes Hernandez, Jovanni table, microwave, heater Gullen, Manuel tools, tool box, luggage Carpenters Tech Clean compressor, painter, tools Palmer, Duane tool box, saw, blower House, Katy ramps, cabinet, speakers Conrad Asturi Studios drums, lamp, cabinet

**Notice is hereby given that a public lien sale of the following described personal property will be held at the hour of 09:00 AM on July 24, 2020 at Derrel's Mini Storage located at 4709 Claus Road, Modesto, County of Stanislaus, State of California.**

Chahoud, Pierre chairs, barbecue, waher, dryer Mitchell, Clifford E. dresser, bicycle, clock Ferreira, Salvador law books, shower enclosure BURRI, HANS tools, hand truck, welder MOLTRUM, DAIJA luggage, chairs, table MERCADO, BRANDIE chair, lap top, ice chest Matthews, Danielle luggage, jack stands, cooler Trujillo, Christina N motorcycle, chairs, dresser MILLER, RODNEY mower, bike, table

**Notice is hereby given that a public lien sale of the following described personal property will be held at the hour of 10:00 AM on July 24, 2020 at Derrel's Mini Storage located at 111 S. Mariposa Road, Modesto, County of Stanislaus, State of California.**

Lopez, Flora refrigerator, dryer, dresser Risley, Ryan pool ladder, pool, totes Moulton, Macie N space heater, lawn chairs, vase Aguilar, Arthur luggage, duffle bag, lawn chair Schouten, Gaylor guitar, amplifier, speaker Vincent, Robert Clement air compressor, tools, microwave Lenahan, Megan cabinet, cameras, microphone cords Marin, Anthony power tools, speaker, stereo Kottalis, Constandino golf clubs, bbq pit, tables

Signed: V Lashley Date: 06/02/20

**FULL GARAGE?**
Clean it out fast
by selling unused
items through
Bee Classified.
Free garage sale kit
with your
Prepaid garage sale ad!
(209) 521-7777
www.modbee.com/placead

## Legals & Public Notices

NOTICE TO CREDITORS OF BULK SALE AND OF INTENTION TO TRANSFER ALCOHOLIC BEVERAGE LICENSE
(U.C.C. 6101 et seq. and B & P 24074 et seq.)
Escrow No. 009882-GG

Notice is hereby given that a bulk sale of assets and a transfer of alcoholic beverage license is about to be made. The names and address of the Seller/Licensee are: BAAJ, INC., 3848 MCHENRY AVE STE 370, MODESTO, CA 95356

The location in California of the chief executive office of the Seller is: SAME AS ABOVE

The business is known as: WHITE HAWK LOUNGE

The names, and address of the Buyer/Transferee are: COVID CREATIONS LLC, 3020 FLOYD AVE #601, MODESTO, CA 95356

As listed by the Seller/Licensee, all other business names and addresses used by the Sellers/Licensee within three years before the date such list was sent or delivered to the Buyer/Transferee are: NONE

The assets to be sold are described in general as: FURNITURE, FIXTURES, EQUIPMENT, TRADE NAME, TENANT'S IMPROVEMENTS, CONVENANT NOT TO COMPETE and are located at: 3848 MCHENRY AVE STE 370, MODESTO, CA 95355

The kind of license to be transferred is: ON-SALE GENERAL PUBLIC PREMISES, 48-541453 now issued for the premises located at: 3848 MCHENRY AVE STE 370, MODESTO, CA 95356

The anticipated date of the sale/transfer is AUGUST 7, 2020 at the office of: CAPITAL TRUST ESCROW, 280 S. BEVERLY DR #300, BEVERLY HILLS, CA 90212

The amount of the purchase price or consideration in connection with the transfer of the license and business, including estimated inventory, is the sum of $75,000.00, which consists of the following: DESCRIPTION, AMOUNT: CASH $75,000.00

It has been agreed between the Seller/Licensee and the intended Buyer/Transferee, as required by Sec. 24073 of the Business and Professions Code, that the consideration for the transfer of the business and license is to be paid only after the transfer has been approved by the Department of Alcoholic Beverage Control.

DATED: JUNE 10, 2020
BAAJ, INC., A CALIFORNIA CORPORATION
COVID CREATIONS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY
LA2556743 MODESTO BEE 7/13/2020

**SELL it FAST**
in Bee Classified
(209) 521-7777
www.modbee.com/placead

STATE OF CALIFORNIA
DEPARTMENT OF GENERAL SERVICES
EMPLOYMENT DEVELOPMENT DEPARTMENT
ADVERTISEMENT FOR BIDS
EDD FIRE ALARM REPLACEMENT
EMPLOYMENT DEVELOPMENT DEPARTMENT
MODESTO, STANISLAUS COUNTY, CALIFORNIA
PROJECT NUMBER 4917

Project comprises labor, material and services necessary for: Replace existing fire alarm and security alarm system.

License required to bid the project: C-10

Successful bidder shall furnish payment and performance bonds, each in the amount of 100 percent of the Contract price.

Prospective bidders must attend the mandatory pre-bid site inspection tour on July 22, 2020, at 629 12TH Street, Modesto, CA. Inspection tour will begin at 10:00 A.M. The State's requirements for Disabled Veteran Business Enterprise (DVBE) participation will be presented along with other contract requirements. Bidders are required to be in attendance for the entirety of the pre-bid site inspection and sign out at the conclusion.

COVID-19 BUILDING SAFETY REQUIREMENTS FOR SITE INSPECTION: 1) Contractor, please do not send representatives that are ill or have a fever. 2) All attendees must bring and wear a mask or they will not be allowed to sign in. 3) Bidders must follow all posted building safety requirements for COVID-19.

Bid forms will be available for download at the plan room website identified below or at http://www.caleprocure.ca.gov/. Click on "Get Public Procurement Information" and then "See Current Bids". In the Event name field, enter the project number and click search. While viewing the Event Details, click on "View Event Package" to view bid forms. Bidders may view and order secure Drawings and Project Manuals on the following web site: http://www.ospplanroom.com. Click on the "Public Jobs" link listed below the "Menu" heading on the left. Alternatively, bidders may place an order by contacting Office of State Publishing, 885 Riverside Parkway West Sacramento, CA 95605; Telephone (916) 445-5386. Drawings and Project Manual may also be viewed through Builders' Exchanges. Refer to the Plan Holders List tab on the plan room website identified above for specific locations.

Bids are due August 5, 2020. Bid Opening will be August 6th, 2020. State's estimated cost: $318,000. The term of this project is 244 calendar days. The State's Project Director is Suhas Karke at (916) 443-9848. The Bid Tabulation web posting can be viewed at https://caleprocure.ca.gov/pages/bidder-vendor.aspx. Click Search All Bids and input search criteria.

7/13, 7/20/20\
CNS-3379279#
THE MODESTO BEE

PAID ADVERTISEMENT

# Couples Rush to Get Newly Approved Vision Pill

## Clinical studies show active ingredient safely restores youthful eyesight without glasses, contacts, or laser surgery

*By Patrick Kennedy*
*Health Correspondent*

**CAMBRIDGE, MA** — Exciting new studies from Harvard Medical School are creating a surge in demand for the new vision formula called *ClearSight Advanced*.

"We knew we had a successful formula with an outstanding track record, but we never expected this much demand," said Jonathan Sinclair, President of New Life Nutraceuticals — the makers of this new vision-restoring breakthrough.

With such strong clinical evidence behind *ClearSight Advanced*, it's easy to see why the public is so eager to get this new vision-restoring formula.

To begin with, results from the Harvard Medical School study are impressive. A remarkable 87% of patients taking the active ingredient in *ClearSight Advanced* report visual improvements in as little as three months — with many patients seeing initial results in as little as 10 days.

The results were so encouraging, the lead researcher of the Harvard team, Dr. Max Snodderly concluded, *"Perhaps the gradual loss of vision in many older people is not an inevitable consequence of the aging process..."*

### Why So Much Excitement?

Scientists from the Schepens Eye Research Institute, affiliated with Harvard Medical School, discovered an amazing nutrient that restores and prevents damage to the macula. The macula is the center part of your retina and is responsible for 20/20 vision.

Age-related damage to the macula, called *macular degeneration*, is the leading cause of vision loss, affecting more than 10 million Americans — more than cataracts and glaucoma combined!

This nutrient is not a drug. It's the active ingredient in *ClearSight Advanced*. Clinical studies show it supports the macula by increasing "macular pigment density."

Many patients see improvements to their night vision, allowing them to keep their driver's license. Many are able to see sharper lines and brighter colors. Some report they no longer need glasses, or can at least weaken their prescriptions. And many avoid further loss of their eyesight.

"My close up and distance vision has improved with the use of *ClearSight Advanced*," says Scott Fisher of West Palm Beach, FL. "I can see more clearly than I had previously and I don't struggle to read the small fonts on my iPhone."

**VISION-RESTORING SENSATION:** Seniors report impressive results with the newly released ClearSight pill. Harvard studies show active ingredient enhances eyesight in days without side effects.

### Impressive Clinical Results

Published in the world's top medical journals like the Journal of the American Medical Association (JAMA), and Investigative Ophthalmology & Visual Science, the Harvard results are stunning.

The results show *ClearSight Advanced* helps aging seniors with these troubling symptoms:

- Near-sightedness
- Far-sightedness
- Astigmatism
- Blind spots
- Distortions
- Blurry vision
- Double vision
- Spots and floaters
- Trouble reading
- Faded colors
- Poor night vision
- Eye fatigue
- Cloudy lenses
- Difficulty adjusting to darkness

There is no miracle cure for vision loss and no substitute for qualified medical advice, but the impressive results provide much needed hope for seniors struggling with failing eyesight.

But with such a dramatic improvement in vision and quality of life, it's easy to see why thousands of callers are jamming phone lines trying to secure their supply of *ClearSight Advanced*.

### How It Works

The active ingredient in *ClearSight Advanced* is a carotenoid, or natural pigment, called lutein. The macula is made from this vital nutrient, so it's required for 20/20 vision.

This breakthrough discovery was confirmed when Dr. Snodderly measured the "macular pigment density," or "thickness" of the macula in volunteers as young as 24 and as old as 84.

The Harvard study found that people age 60 and over with higher macula pigment density had eyesight that was just as sharp as the volunteers who were still in their 20s!

"Taken together, the evidence suggests that macular pigment may protect against retinal disease by reducing damage that occurs as we age," Dr. Snoddery said.

### What Other Doctors are Saying

For doctors like Dr. Lisbeth Roy, of Boca Raton, Florida, *ClearSight Advanced* is the only safe, affordable, and reliable way to support failing eyesight.

"I have patients in their 80s who can still drive at night without a problem. When you give your eyes the nutrients they need, you have a good chance of reading, driving, and watching TV without any trouble," Dr. Roy said.

"The nutrients in *ClearSight Advanced* help you feel more confident about your vision as you age, so you don't worry as much about things like cataracts, glaucoma, and blind spots... *it's good for more than just reading an eye chart."*

### How To Get ClearSight Advanced

This is the official nationwide release of *ClearSight Advanced* in the United States. And so, the company is offering a special discount supply to anyone who calls within the next 48 hours.

An Order Hotline has been set up for local readers to call. This gives everyone an equal chance to try *ClearSight Advanced*.

Starting at 7:00 AM today, the discount offer will be available for 48 hours. All you have to do is call TOLL FREE **1-800-498-8080** right now. Then, provide the operator with the special discount approval code: CS2020. The company will do the rest.

**Important:** Due to *ClearSight Advanced* recent media exposure, phone lines are often busy. If you call and do not immediately get through, please be patient and call back.

These statements have not been evaluated by the FDA. This product is not intended to diagnose, treat, cure, or prevent any disease. Professional model used for photo. Results not necessarily typical. Individual results may vary.

**Exhibit P**

STATE OF CALIFORNIA
COUNTY OF SAN JOAQUIN

THE UNDERSIGNED SAYS:

I am a citizen of the United States and a resident of San Joaquin County; I am over the age of 18 years and not a part to or interested in the above-entitled matter. I am the principal clerk of the printer of THE RECORD, a newspaper of general publication, printed and published daily in the City of Stockton, County of San Joaquin by the Superior Court of the County of San Joaquin, State of California, under the date of February 26, 1952, File No. 52857, San Joaquin County Records; that the notice of which the annexed is a printed copy (set in type not smaller than nonpareil), has been published each regular and entire issue of said newspaper and not in any supplement thereof on the following dates,
To wit,

July 13, 2020

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 13, 2020 In Stockton California

Delailah Little,
The Record

0000198655

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case |
| PG&E CORPORATION, | No. 19-30088 (DM) |
| - and - | Chapter 11 |
| PACIFIC GAS AND ELECTRIC COMPANY, | (Lead Case) |
| Debtors. | (Jointly Administered) |

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

PLEASE TAKE NOTICE that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION.** In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the sole source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the sole source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claim whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "Cure Dispute"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d. of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP

# DAMRON

From Page A3

system now available in Stockton.

"It enhances our ability to perform minimally invasive procedures on a broader range of patients with different surgical needs. From the patient's perspective, receiving a minimally invasive procedure results in less post-surgical pain and blood loss, a shorter hospital stay, quicker recovery and faster return to normal daily activities," said Samakandy, a fellowship-trained expert in robotic surgery who is the director for Dameron's bariatric surgery program.

While Dameron's announcement did not include how much the hospital paid for its new robotic system, several online sources report the da Vinci Xi costs $2 million and above, depending upon accessories.

"Even during these challenging times, we believe this was as important investment into our community that will give patients access to the highest levels of surgical excellence right here in Stockton," said Bill Trezza, president of Dameron Hospital's board of directors.

Hospital President Daniel Wolcott, who serves in the same capacity at Adventist Health Lodi Memorial Hospital, described the major acquisition as "a positive impact on the health of those who live in San Joaquin County and the surrounding areas. ... We understand the many benefits this will have on our patients' lives because we have been using this same system at Lodi Memorial for the past five years and the results have been excellent."

Wolcott said another benefit of bringing the robotic system to Stockton is that it provides an attractive option for surgeons with a preference for robotic surgery.

Said Wolcott: "This may help us attract more medical expertise to the area."

*Contact reporter Joe Goldeen at (209) 546-8278 or jgoldeen@recordnet.com. Follow him on Twitter @JoeGoldeen.*

# SELECTION

From Page A3

motivated, but the report found that prosecutors are encouraged to use what it calls "race-neutral" reasons. Those include that the person expressed a distrust of law enforcement, a juror's prior arrest or a juror having a loved one who had been incarcerated.

In fact, the report found that district attorney training manuals on peremptory challenges encourage discriminatory strikes — telling prosecutors to strike those who had negative experience with law enforcement or are distrustful of the criminal legal system.

The report, which was conducted by Berkeley Law's Death Penalty Clinic and headed by Professor Elisabeth Semel, found that prosecutors successfully used their strikes against African American prospective jurors based on their demeanor: because they had dreadlocks, were slouching, wore a short skirt or "blinged out" sandals or had visited family members who were imprisoned or jailed.

They also used their strikes if the prospective jurors had had experiences with law enforcement, or in Bay Area cases, lived in East Oakland or San Francisco's Tenderloin neighborhood.

Prosecutors also removed prospective Latino jurors because they were frowning, seemed confused, were wearing large earrings or expressed a belief that the criminal legal system treats people differently because of race, the report found.

Woods said as a Black man, he has been stopped numerous times while driving by police. If he were on a jury panel, that could be considered a valid excuse to exclude him.

Woods also gave the example of an African American public defender in his office who has tried more than 20 cases, yet can count the number of Black jurors she has had on one hand.

The chances are much higher that a person of color may know someone or have a family member who had some prior experience with law enforcement, which under the current law, could be found as a legitimate excuse to exclude a juror, he said.

# McCLATCHY

From Page A3

Gannett, owner of The Stockton Record.

While national newspapers such as The Wall Street Journal and The New York Times are adding digital subscribers that help them navigate advertising declines, many local outlets have had a difficult time. That has contributed to a string of bankruptcies and consolidation, much of it involving investment firms, depressing concerns about declining quality as newsrooms shrink and papers close.

The coronavirus pandemic has exacerbated ad-revenue declines and prompted furloughs, pay cuts, layoffs and more newspaper closings.

Several mayors of cities where McClatchy has a paper wrote to the bankruptcy court, asking the judge to consider the civic value of the paper.

"We want our newspaper to emerge from this bankruptcy with owners who are willing to invest in our community, and provide us with journalism at its best," Lexington, Kentucky, mayor Linda Gorton said of the Lexington Herald-Leader.

McClatchy's origins date to 1857, when it began publishing a four-page paper in Sacramento, following the California Gold Rush. The company remains headquartered in Sacramento.





**★ STAR Certified**

**COUNTRY CLUB TIRES & MUFFLER**

**SMOG CHECK**

$31.70

• CERTIFIED VEHICLES • 2000 & NEWER TEST ONLY REGULAR SMOG DIRECTED VEHICLES MOST VEHICLES, NOT GOOD WITH ANY OTHER OFFER.

No Appointment Necessary
Most present coupon. Expires 8/13/2020

**Open Mon-Fri 8-5 & Sat 8-4**
209-688-7213
2151 Country Club Boulevard
Next to The Graduate

**Bob's Lube & Oil**
Ten-minute lube and oil filter change

$31.75

for Chevron multi grade oil test synthetic still 5/30, 10/30, and 5/20 wt. Max tax and disposal fee up to 5 quarts. Most present coupon. Not good with any other offer. Expires 8/13/2020

1403 Country Club Blvd • 943-3633
Corner of Country Club & Pershing
Please present this coupon



**EMPIRE TODAY® CARPET & FLOORING**

## DISCOVER THE EMPIRE TODAY® DIFFERENCE

We Make Getting Beautiful New Floors Easy.

**SHOP-AT-HOME CONVENIENCE**
See hundreds of samples in your home. Empire® brings the store to you.

**PROFESSIONAL INSTALLATION, EVEN NEXT DAY\*\***
Don't wait weeks for your new floors. You can get a custom installation as soon as tomorrow.

**QUALITY PRODUCTS**
Top-quality, name-brand carpet and flooring options in the latest styles and colors that are durable and long lasting.

**ALL-INCLUSIVE PRICE ESTIMATE†**
Know what your project will cost, up front with no hidden fees.

**LIMITED TIME OFFER!**

**$350 OFF\***

## Schedule a FREE In-Home Estimate!

**Must call 877-336-6323** or visit **EmpireToday.com/Get350** to redeem offer.

**CARPET • HARDWOOD • LAMINATE • VINYL • TILE**

*Discount applied to contract total of $3,500 or more before applicable taxes. Must be presented upon appointment booking. Cannot be applied to deposit. Appointment must be scheduled by calling the number above or scheduled online at EmpireToday.com/Get350 to redeem offer. May not be applied to Sales or combined with coupons. Not valid on prior purchases. Residential only. Limit one offer per household. Expires 8/31/20. Subject to change.

\*\*On in-stock carpet and flooring styles only in select areas. Excludes floor prep.

† A variety of unforeseen conditions, such as subfloor prep/leveling/repair, that may not be identifiable when establishing price estimate, may require additional cost.

Sales (except CA) and installation are provided by independent contractors. Licensure at EmpireToday.com. CSLB 1047108

© 2020 Empire Today, LLC

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:                                  Bankruptcy Case
PG&E CORPORATION,                        No. 19-30088 (DM)
   — and —                               Chapter 11
PACIFIC GAS AND ELECTRIC COMPANY,        (Lead Case)
                        Debtors.         (Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

PLEASE TAKE NOTICE that:

[Dense legal notice text continues in small print across three columns]

Case: 19-30088    Doc# 8470    Filed: 07/21/20    Entered: 07/21/20 17:39:57    Page 61 of 110

**Exhibit Q**



# THE SACRAMENTO BEE
Stay Connected **» sacbee.com**

**ANYWHERE. ANYTIME. ANY DEVICE.**

## AFFIDAVIT OF PUBLICATION

| Account # | Ad Number | Identification | PO | Amount | Cols | Depth |
|---|---|---|---|---|---|---|
| 341439 | 0004694632 | | R7070035 | $1,367.28 | 3 | 6.00 In |

**Attention:** Adam Levin

MILLER ADVERTISING AGENCY INC.
220 WEST 42 STREET, 12TH FLOOR
NEW YORK, NY 10036

**DECLARATION OF PUBLICATION**
(C.C.P.2015.5)

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years, and not a party to or interested in the above entitled matter. I am the printer and principal clerk of the publisher of The Sacramento Bee, printed and published in the City of Sacramento, County of Sacramento, State of California, daily, for which said newspaper has been adjudged a newspaper of general circulation by the Superior Court of the County of Sacramento, State of California, under the date of September 26, 1994, Action No. 379071; that the notice of which the annexed is a printed copy, has been published in each issue thereof and not in any supplement thereof on the following dates, to wit:

_____1_____  Insertions

**Published On:**
July 13, 2020

*V Rodela*

Legals Clerk

COUNTY OF DALLAS
STATE OF TEXAS

I certify (or declare) under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Sacramento, California, on July 16, 2020.

Notary Public

AMANDA DAWN GRISHAM
My Notary ID # 132031326
Expires May 30, 2023

**Extra charge for lost or duplicate affidavits.**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br>**PG&E CORPORATION,**<br>- and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors. | Bankruptcy Case<br>No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered) |

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

**PLEASE TAKE NOTICE** that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the sole source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the sole source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed

or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d.of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020 must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust,https://www.firevictimtrust.com/.

Dated: July 2, 2020

WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP

# Florida hits new one-day high in virus cases

Associated Press

**ST. PETERSBURG, FLA.**

With the United States grappling with the worst coronavirus outbreak in the world, Florida hit a grim milestone Sunday, shattering the national record for a state's largest single-day increase in positive cases.

In Florida, where part of Walt Disney World reopened Saturday, 15,299 people tested positive, for a total of 269,811 cases, and 45 deaths were recorded, according to state Department of Health statistics reported Sunday.

Throughout May and into June, the state reopened much of its economy with some restrictions.

California had the previous record of daily positive cases – 11,694, set on Wednesday.

Deaths from the virus have also been rising in the U.S., especially in the South and West, though still well below the heights hit in April, according to a recent Associated Press analysis of data from Johns Hopkins University.

Testing has increased, but the percentage of people testing positive has risen even more dramatically. A month ago, fewer than 5% of tests came up positive on a daily average. Over the past week, the daily average exceeded 19%.

"I really do think we could control this, and it's

the human element that is so critical. It should be an effort of our country. We should be pulling together when we're in a crisis, and we're definitely not doing it," said University of Florida epidemiologist Dr. Cindy Prins.

Adm. Brett Giroir, a member of the White House coronavirus task force, called mask-wearing in public, which has been met with resistance in some U.S. states, "absolutely essential."

Giroir, the assistant secretary at the Health and Human Services Department, told ABC's "This Week" on Sunday that "if we don't have that, we will not get control of the virus."

When Giroir was asked about whether states that are seeing a spike in cases should consider more stringent lockdowns, he said, "Everything should be on the table."

And looking ahead, Giroir said it's possible the situation "could be worse in the fall," when he thinks "we're going to need tens of millions of more tests a month." He also said there's some data that people can get both the flu and COVID-19 at the same time and "that's not really good."

Giroir told ABC's "This Week" that officials would like to see something like 90% of people wearing a mask in public in areas that are hot spots.

President Donald

Trump wore a mask in public for the first time Saturday, something Democratic House Speaker Nancy Pelosi said Sunday showed he has "crossed a bridge."

Pelosi told CNN's "State of the Union" that she hopes it means the president "will change his attitude, which will be helpful in stopping the spread of the coronavirus."

Trump wore a mask during a visit Saturday to Walter Reed National Military Medical Center in suburban Maryland, where he met wounded service members and health care providers.

Surgeon General Jerome Adams said Sunday the Trump administration is "trying to correct" its guidance from earlier in the coronavirus epidemic that wearing face coverings was not necessary.

With virus cases surging and many states and cities now issuing orders to wear masks in public, Adams said he and other administration officials were wrong back in March. But he insists they were going with the scientific knowledge at the time, which suggested that people with COVID-19 who showed no symptoms were not likely to spread the virus.

Dr. Tom Inglesby, director of the Center for Health Security at Johns Hopkins University, told "Fox News Sunday" that he would have liked to have seen administration

officials wear masks sooner. He says it should not be viewed as a "personal choice" but a public health imperative.

The World Health Organization has reported another record in the increase in the number of confirmed coronavirus cases worldwide over a 24-hour period, at over 230,000.

The U.N. health agency said Sunday the United States again topped the list among countries, with more than 66,000 cases recorded.

The figures don't necessarily account for delays in reporting of cases, and are believed to far underestimate actual case totals.

Still, the trend line of confirmed cases continues to increase – with three largest counts coming over the past three days.

Overall, the WHO has counted more than 12.5 million confirmed cases and more than 561,000 deaths from COVID-19.

# Mueller defends Russia probe, calls Stone a felon

BY ERIC TUCKER
Associated Press

**WASHINGTON**

Former special counsel Robert Mueller sharply defended his investigation into ties between Russia and Donald Trump's 2016 presidential campaign, writing in a newspaper opinion piece Saturday that the probe was of "paramount importance" and asserting that a Trump ally, Roger Stone, "remains a convicted felon, and rightly so" despite the president's decision to commute his prison sentence.

The op-ed in The Washington Post marked Mueller's first public statement on his investigation since his congressional appearance in July 2019. It represented his firmest defense of the two-year probe whose results have come under attack and even been partially undone by the Trump administration, including the president's extraordinary move Friday evening to grant clemency to Stone just days before he was due to report to prison.

Mueller wrote that though he had intended for his team's work to speak for itself, he felt compelled to "respond both to broad claims that our investigation was

illegitimate and our motives were improper, and to specific claims that Roger Stone was a victim of our office."

"The Russia investigation was of paramount importance. Stone was prosecuted and convicted because he committed federal crimes. He remains a convicted felon, and rightly so," Mueller wrote.

Mueller did not specify who was making the claims, but it appeared to be an obvious reference to Trump, who as recently as Saturday derided the investigation as this "whole political witch hunt and the Mueller scam."

The mere publication of the op-ed was striking for a former FBI director who was exceedingly tight-lipped during the investigation, refusing to respond to attacks by the president or his allies or to make public appearances explaining or justifying his work. In his first public statement after the investigation's conclusion, Mueller said he had intended for his 448-page report to speak for itself. When he later testified to House lawmakers, he was similarly careful not to stray beyond the report's findings or offer new evidence.

But that approach created a void for others, including at the Justice Department, to place their

own stamp on his work. Even before the report was released Attorney General William Barr issued a four-page summary document that Mueller privately complained did not adequately capture the gravity of his team's findings.

In the months since, Barr assigned a U.S. attorney to investigate the origins of the Russia probe, and the Justice Department moved to dismiss the criminal case against former Trump administration national security adviser Michael Flynn even though Flynn pleaded guilty to lying to the FBI about contacts with the Russian ambassador during the presidential transition period. That request is the subject of an ongoing court dispute.

The op-ed chronicled the basis for the Stone prosecution, with Mueller recounting how Stone had not only tampered with a witness but also lied repeatedly about his efforts to gain inside information about Democratic emails that Russian intelligence operatives stole and provided to WikiLeaks, which published them in the run-up to the election.

Those efforts, including his discussions with Trump campaign associates about them, cut to the heart of Mueller's mandate to determine whether anyone tied to the campaign coordinated with Russia in the hacking or disclosure of the stolen Democratic emails.

# Trump rips private Texas border wall built by backers

BY NOMAAN MERCHANT
Associated Press

**HOUSTON**

President Donald Trump on Sunday criticized a privately built border wall in South Texas that's showing signs of erosion after going it was "only done to make me look bad," even though the wall was built after a months-long campaign by his supporters.

The group that raised money online for the wall promoted itself as sup-

porting Trump during a government shutdown that started in December 2018 because Congress wouldn't fund Trump's demands for a border wall.

Called "We Build the Wall," the group has raised more than $25 million promoting itself as supporting the president.

Former Trump chief strategist Steve Bannon joined the group's board, and Trump ally Kris Kobach became its general counsel. Kobach is now seeking the Republican nomination for U.S. Sen-

ate in Kansas.

The company that built the private section in January, North Dakota-based Fisher Industries, has since won a $1.3 billion border wall contract from the federal government, the largest award to date.

The section in question is a roughly 3-mile fence of steel posts just 35 feet from the Rio Grande, the river that forms the U.S.-Mexico border in Texas. That's much closer to the river than the government ordinarily builds border barriers in South Texas because of concerns about erosion and flooding that could violate U.S. treaty obligations with Mexico.

[Legal Notices section — Notices / Legal Notices 301, State of California Department of General Services, various bid and bankruptcy notices, Superior Court of Washington County of Benton, United States Bankruptcy Court Northern District of California San Francisco Division — PG&E Corporation notices]



Find what suits you
best in The Bee's
Real Estate section.

sacbee.com/homes
THE SACRAMENTO BEE

AVAILABLE 24/7 !
Place your ad at
your convenience from
sacbee.com/placeanad

**Exhibit R**



**VERIFICATION OF PUBLICATION**

**COMMONWEALTH OF VIRGINIA**
**COUNTY OF FAIRFAX**

Being duly sworn, Vanessa Salvo says that she is the principal clerk of USA TODAY, and is duly authorized by USA TODAY to make this affidavit, and is fully acquainted with the facts stated herein: on <u>**Monday, July 13, 2020**</u>, the following legal advertisement – **PG&E CORPORATION** was published in the national edition of **USA TODAY.**

Principal Clerk of USA TODAY
July 13, 2020

# LeBron won't wear message on jersey during restart

**Jeff Zillgitt** USA TODAY

Lakers star LeBron James has had a voice on several social issues.

But James will not display a message on the back of his jersey when the NBA restarts its 2019-20 season on July 30 at Disney World's ESPN Wide World of Sports Complex near Orlando, Florida.

"It's no disrespect to the list that was handed out to all the players," James, wearing a More Than an Athlete hat, told reporters on a video conference call Saturday. "I commend anyone who decides to put something on the back of their jersey. It's just something that didn't really seriously resonate with my mission, with my goal."

The NBA and National Basketball Players Association agreed on several messages, including Black Lives Matter; Say Their Names; Vote; I Can't Breathe; and Equality.

Nearly 300 players have chosen to put a message on the back of their jersey, The Undefeated reported Wednesday. James is one of a handful of players who will have their name on the jersey.

That doesn't mean he won't spread a message through the media, his social media channels and his online media outlet, Uninterrupted.

"Everything that I do has a purpose, has a meaning, so I don't need to have something on the back of my jersey for people to understand my mission and know what I'm about and what I'm here to do," James said.

James, whose LeBron James Family Foundation does a great deal of work in communities, said he never considered not playing because of the social justice movement that gained strength and attention following George Floyd's death.

"I will continue to push the envelope and keep my foot on the gas and create real change for us as people of color in America."

# LEGAL MONDAY

For advertising information: 1.800.872.3433 www.marketplace.usatoday.com

*[The remainder of the page consists of dense legal notices and classified legal advertisements, including United States Bankruptcy Court notices (Northern District of California — PG&E Corporation; Eastern District of Virginia — Pier 1 Imports; Northern District of Texas — GGI Holdings LLC), and a class action settlement notice regarding non-emergency calls from A Place for Mom, along with a public notice of a cyber-attack affecting patients of Tak-ming Ko, M.D., LLC, and various display advertisements.]*

## For more information on how to place your advertisement in Legal Monday, contact a sales representative at:

# 1-800-872-3433

Toll-free in the U.S. only

**Exhibit S**

## Red Bluff Daily News

728 Main St.
Red Bluff, CA 96080
530-527-2151
dispatch@redbluffdailynews.com

3809751

PG&E CORPORATION
77 BEALE STREET
SAN FRANCISCO, CA 94177

Legal No. **0006501021**

**Notice:**

## STATE OF CALIFORNIA } ss.

### County of Tehama

<u>Daleen Baker</u>, being first duly sworn, deposes and says: That at all times hereinafter mentioned, she was a citizen of the United States, over the age of eighteen years, and a resident of said county, and was at and during said times legal clerk of the *Red Bluff Daily News*, a newspaper of general circulation printed and published daily except Sundays and certain holidays in the city of Red Bluff, County of Tehama, State of California; that said *Red Bluff Daily News* is and was at all times herein mentioned a daily newspaper of general circulation as the terms "newspaper of general circulation" and "daily newspaper" are defined in Sections 6000, 6001, 6045 and 6040.5 of the Government code of the State of California; that, as provided in said section 6000, said newspaper is published for the dissemination of local and telegraphic news and intelligence of a general character, and has a bona fide subscription list of paying subscribers; that said newspaper has been established, printed and published as those terms are defined in Article 1, Chapter 1, Division 7, Title 1, of the said Government Code, in the said City of Red Bluff, State of California, at regular intervals for more that one year next preceding the date of the first publication of the notice herein mentioned; that said newspaper is not devoted to the interests, or published for the entertainment or instruction of a particular class, profession, trade, calling, race, or denomination, or for any number thereof; that said notice was set in type not smaller than nonpareil and was preceded with words printed in black face type, not smaller than nonpareil, describing or expressing in general terms the purport and general character of the notice intended to be given; that the notice of which the annexed is a printed copy, was printed and published in said newspaper 1 time, beginning on **07/14/2020** and ending on **07/14/2020.**

I Certify (or Declare), under penalty of perjury, that the foregoing is true and correct, at Red Bluff, California.

Dated: **07/15/2020** at Red Bluff, California.

*Daleen Baker*

(Signature)

r.BP11-03/02/17

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case |
| **PG&E CORPORATION,** | No. 19-30088 (DM) |
| - and - | Chapter 11 |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Lead Case) |
| Debtors. | (Jointly Administered) |

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

PLEASE TAKE NOTICE that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole source* of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the *sole source* of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

**a.** commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

**b.** enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

**c.** creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;

**d.** asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

**e.** taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed

by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, **no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease**, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d. of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously added to the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP

2

**Newspaper : Red Bluff Daily News**   **Advertiser : PG&E CORPORATION**
**Issue Date : 07/14/2020**   **Ad Number : 000650102101**

8 | CLASSIFIEDS | REDBLUFFDAILYNEWS.COM | TUESDAY, JULY 14, 2020

## Legal Notices

**NOTICE OF TRUSTEE'S SALE**

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 1/19/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale. Trustor: JOHN R. UNGER, AN UNMARRIED MAN AND BETTY S. FARRELL, A MARRIED WOMAN Duly Appointed Trustee: ZBS Law, LLP Deed of Trust recorded 1/24/2005, as Instrument No. 00147-I, in Book 2636, Page 915, of Official Records in the office of the Recorder of Tehama County, California,

Date of Sale: 7/28/2020 at 2:00 PM
Place of Sale: At the front door entrance
To the Historic Courthouse
633 Washington Street
Red Bluff, California 96080
Estimated amount of unpaid balance and other charges: $177,152.18. Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt owed. Street Address or other common designation of real property: 820 STONYBROOK DR RED BLUFF, California 96080 Described as follows: As more fully described on said Deed of Trust A.P.N #.: 024-270-068-000 The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale. NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property. NOTICE TO PROPERTY OWNER: The sale date shown on

this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date of the sale of this property, you may call (714) 848-9272 or visit this Internet Web site www.elitepostandpub.com, using the file number assigned to this case 19-58952. Information about postponements that are very short in duration or occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.
Dated: 6/29/2020 ZBS Law, LLP, as Trustee
30 Corporate Park, Suite 450
Irvine, CA 92606
For Non-Automated Sale Information, call (714) 848-7920
For Sale Information: (714) 848-9272 www.elitepostandpub.co m Michael Busby, Trustee Sale Officer This office is enforcing a security interest of your creditor. To the extent that your obligation has been discharged by a bankruptcy court or is subject to an automatic stay of bankruptcy, this notice is for informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation. EPP 31693

Publish: 7-7-20, 7-14-20, 7-21-20

**LEGAL NOTICE**

Pursuant to Section 54972 of the California Government Code, notice is hereby given that there is a partial term vacancy on the Red Bluff Planning Commission. Interested parties may submit applications, which may be obtained at Red Bluff City Hall, 555 Washington Street, weekdays between 8 a.m. and 5 p.m. or visit the City's website at http:// www.cityofredbluff.org/publish otices/ to print a The closing date for receiving applications is Monday, July 27, 2020 at 4:00 p.m. Members of boards and commissions and consultants to state and local government agencies are also required by the City of Red Bluff's Conflict of Interest Code to disclose their personal financial interests if they make or participate in making governmental decisions that could affect their private financial interests. For details regarding the term, contact the Deputy City Clerk's Office at 527-2605 ext. 3057
Anita Rice
Deputy City Clerk

Publish: 7-14-20, 7-21-20, 7-25-20

**LEGAL NOTICE FICTITIOUS BUSINESS NAME STATEMENT File No. 2020000168**
The following person(s) is (are) doing business as:
L.O.T.I.S. Coaching, LLC
650-248-3913
25295 Josephine St.
Los Molinos, CA 96055
Business Mailing Address
P.O. Box 363
Los Molinos, CA 96055
Brandy Morgan
25295 Josephine St
Los Molinos, CA 96055
Business Mailing Address
P.O. Box 363
Los Molinos, CA 96055
Articles of Incorporation
202016910059 CA
The registrant commenced to transact business under the fictitious business name or names listed above on 6-11-2020
This business is conducted by:
a Limited Liability Company
S/By: L.O.T.I.S. Coaching, LLC
Brandy M. Morgan, CEO
This statement was filed with the County Clerk of Tehama County on 6/23/2020
JENNIFER A. VISE
Tehama County
Clerk & Recorder
Publish: 6-30-20, 7-7-20, 7-14-20, 7-21-20

## Legal Notices

**LEGAL NOTICE STATEMENT OF ABANDONMENT OF USE OF FICTITIOUS BUSINESS NAME FILE # 2020000146**
The following person(s) has/have abandoned the use of the following fictitious business name:
Heritage RV Corning LLC
530-824-6130
975 Hwy 99w
Corning, CA 96021
The fictitious business name referred to above was filed on: 02-06-2015 in the County of Tehama Original File #2015000046
This business is conducted by: Limited Liability Company
S/By: Heritage RV Corning LLC
975 Hwy 99w
Corning, CA 96021
S/By: Katharine Catanho
Managing Member
This statement was filed with the County Clerk of Tehama County on 06-01-2020
JENNIFER A. VISE
Tehama County Clerk and Recorder

Publish: 6-23-20, 6-30-20, 7-7-20, 7-14-20

**LEGAL NOTICE FICTITIOUS BUSINESS NAME STATEMENT File No. 2020000163**
The following person(s) is (are) doing business as:
Golden State Pavers
530-840-0253
22500 Saron Fruit Colony Rd
Red Bluff, CA 96080
Darla Lawrence
22500 Saron Fruit Colony Rd
Red Bluff, CA 96080
Seth Lawrence
22500 Saron Fruit Colony Rd
Red Bluff, CA 96080
The registrant commenced to transact business under the fictitious business name or names listed above on N/A
This business is conducted by:
a Married Couple
S/By: Darla Lawrence
Seth Lawrence
This statement was filed with the County Clerk of Tehama County on 7-9-2020
JENNIFER A. VISE
Tehama County
Clerk & Recorder
Publish: 7-14-20, 7-21-20, 7-28-20, 8-4-20

**LEGAL NOTICE FICTITIOUS BUSINESS NAME STATEMENT File No. 2020000176**
The following person(s) is (are) doing business as:
Plum Crazy Hair Design & Boutique
530-529-5566
645 Main St
Red Bluff, CA 96080
A-C Industries, LLC
2505 Cimarron Dr
Red Bluff, CA 96080
Articles of Incorporation
202016918643 CA
The registrant commenced to transact business under the fictitious business name or names listed above on 7-1-2020
This business is conducted by:
a Limited Liability Company
S/By: A-C Industries, LLC
Alana K. Hoagland - Member
This statement was filed with the County Clerk of Tehama County on 7-1-2020
JENNIFER A. VISE
Tehama County
Clerk & Recorder
Publish: 7-14-20, 7-21-20, 7-28-20, 8-4-20

**Newspaper Legal Notice Advertisement**

The County of Tehama is requesting proposals for Design and Implementation of an Integrated Public Safety Communication System for the Tehama Rural Area Express (TRAX) and ParaTRAX programs.

Contractors interested in submitting proposals should obtain the Request for Proposals by contacting: Tehama County Public Works Department:
Attn: Jessica Riske-Gomez, Transportation Manager 9380 San Benito Avenue Gerber, CA 96035-9701
(530)385-1462 x 3028
jriskegomez@tehamacpa.org
Or download from website www.ciplist.com Sealed proposals will be received at the above address by 4:00 p.m. July 29, 2020. Proposals must be clearly marked "County of Tehama Radio System Proposal" and bear the name of the agency, organization, or firm making the proposal. The proposal must comply with the County's Disadvantaged Business Enterprise (DBE) Program in accordance with Title 49, Part 26 of the Code of Federal Regulations (CFR). The DBE goal established for this effort is 3.8%. Subs, Contractors, Vendors, and Plan Rooms must register with CIP-LIST Member Signup to view or download proposal documents. To register and receive notifications for all Tehama County projects, select Tehama County and "Add agency to watch list" in upper right-hand corner. The CIPLIST.com website is a free service for review, download, and notification of project bid documents. Questions or assistance with registering for CIPLIST.com can be directed to Jennifer Bukatti, (bid) kalb@tehamacpa.org or (530) 385-1462 ext. 3041. Questions regarding the Request for Proposals may be directed to Jessica Riske-Gomez, Transportation Manager, jriskegomez@tehama cpa.org or (530) 385-1462 ext. 3028.

Publish: 6-30-2020 thru 7-30-2020

## Legal Notices

**LEGAL NOTICE FICTITIOUS BUSINESS NAME STATEMENT File No. 2020000161**
The following person(s) is (are) doing business as:
Ricardos Art 37
530-736-6558
350 Gilmore Road #14
Red Bluff, CA. 96080
Alexa Bryson
350 Gilmore Road #14
Red Bluff, CA 96080
The registrant commenced to transact business under the fictitious business name or names listed above on 3-3-2019
This business is conducted by:
an individual
S/By: Alexa Bryson
Alexa Bryson
This statement was filed with the County Clerk of Tehama County on 6/16/2020
JENNIFER A. VISE
Tehama County
Clerk & Recorder
Publish: 6-30-20, 7-7-20, 7-14-20, 7-21-20

**LEGAL NOTICE FICTITIOUS BUSINESS NAME STATEMENT File No. 2020000174**
The following person(s) is (are) doing business as:
Earth-Workers Collective
949-701-1821
180 S. Main St
Red Bluff, CA. 96080
Garret Costello
180 S. Main St
Red Bluff, CA. 96080
The registrant commenced to transact business under the fictitious business name or names listed above on 12-19-2019
This business is conducted by:
an individual
S/By: Garret Costello
Garret Costello
This statement was filed with the County Clerk of Tehama County on 6-29-2020
JENNIFER A. VISE
Tehama County
Clerk & Recorder
Publish: 7-14-20, 7-21-20, 7-28-20, 8-4-20

## The Daily News mailing address has changed!

**OUR NEW MAILING ADDRESS IS**

# P.O. BOX 885
# RED BLUFF CA 96080

### DAILY NEWS
RED BLUFF • TEHAMA COUNTY

(530) 527-2151

**HOW TO FIND YOUR TOLL FREE NUMBER**
To run your classified CALL: 1-800-827-1421
Press 4

**MAILING ADDRESS**
P.O. BOX 885
Red Bluff, CA

**SEND A FAX**
530-527-5774
Don't forget your name, address & phone number

**WE ACCEPT**

**AD DEADLINES**
Deadlines to place & cancel ads
To run on:     Submit ad by:
Tuesday        Friday 1 pm
Wed.-Friday    Day before at 1 pm
Saturday       Friday 1 pm

ALL ADS MUST BE PREPAID

Check Your Ad Upon First Publication. Report any errors immediately. 8:30am to 2:00pm The Daily News will not be responsible for typographical errors. The Daily News reserves the right to revise or reject & to properly Classify Ads. Under no circumstances will the Daily News be responsible for more than the cost of the advertisement.

**YOUR CLASSIFIED WILL APPEAR ON OUR WEBSITE** www.redbluffdailynews.com

# Classified
# (530) 737-5059

Office Hours:
MON.-FRI. 8:00-5:00
Closed Saturday, Sunday
& major holidays

**SUNSWEET CORNING AND CUSTOM PERSONNEL**
**JOB FAIR**
**AUGUST 5TH • 11AM-1PM**
**23760 Loleta Ave, Corning, CA**
FREE FOOD, DRINKS, AND GIVEAWAYS!
**25 LABORERS NEEDED**
$14-15 PER HOUR AND LOTS OF OVERTIME!
**3 WEEK ASSIGNMENT**

**ENTRY LEVEL PRESS OPERATOR**
The Enterprise-Record has an open position for an entry level press operator. This position is for nights and weekends. Pay will depend upon level of experience. Excellent benefits which include medical, dental, vision and 401K. Pre-employment drug screen and background check required.
Apply online
https://careers-digitalfirst media.icims.com/
**ENTERPRISE-RECORD**

## Legal Notices

**AMENDED NOTICE OF ELECTION**

NOTICE IS HEREBY GIVEN that a Consolidated General Election will be held in the County of Tehama, on Tuesday the 3rd day of November, 2020, at which federal, state, and other offices as provided by law will be filled at said election:

CITY OF RED BLUFF: For Two Members of the City Council for a full term of four years For One Member of the City Council for a short term of two years For One City Clerk for a full term of four years For One City Treasurer for a full term of four years NOTICE IS FURTHER GIVEN that if no one or only one person is nominated for each elective office at any such office, the City council may make an appointment pursuant to California Elections Code Section 10229. NOTICE IS FURTHER GIVEN that the polls will be open between the hours of 7:00 a.m. and 8:00 p.m. FURTHER NOTICE IS GIVEN that the ballots will be counted at the Central tabulation, located at the Tehama County Historic Courthouse, 633 Washington St, Room 17, Red Bluff, CA 96080. Forms for declaring candidacy and for nomination of candidates for the above offices are available from the City Clerk. Declarations of Candidacy must be filed with said officer on and after July 13, 2020, and must be filed not later than 5:00 p.m. on August 7, 2020. A non-incumbent may file for election until 5:00 p.m. on August 12, 2020, only if the incumbent has not filed. In the event there are no nominees or an insufficient number of nominees for each elective office and a petition for an election is not timely filed, an appointment to fill a vacancy may be made as a candidate for any of these offices can be made by contacting the Elections Department at 527-8190 for further information. Dated: July 10, 2020 JENNIFER VISE, County Clerk County of Tehama State of California

Publish: 7-14-2020

**UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

In re:
PG&E CORPORATION,
- and -
PACIFIC GAS AND ELECTRIC COMPANY,
Debtors.
☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors
* All papers shall be filed in the Lead Case, No. 19-30088 (DM).

Bankruptcy Case No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

PLEASE TAKE NOTICE THAT:

1. The Plan and Confirmation Order. On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court") entered an order [Docket No. 8053] (the "Confirmation Order") confirming the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. The Plan Effective Date. The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. Plan Binding. The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are Impaired under the Plan and whether or not any such holder has accepted the Plan.

4. CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the sole source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and that the sole source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Claims Fund. Holders of Fire Victim Claims and holders of Subrogation Wildfire Claims or for the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim (and permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

a. commencing, conducting, or continuing in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.

a. Pursuant to Section 6.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed

by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of a dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, such dispute shall be resolved by a Final Order (which may be the Confirmation Order), or as otherwise agreed to by the parties to such dispute (with the agreement of the Reorganized Debtors). Insofar as any Cure Amount consensually without further order of the court or other agreement of the commensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, to the extent not theretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Claims and Noticing Agent and served upon the Debtors or the Reorganized Debtors, no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court, including the Confirmation Order.

b. Pursuant to Paragraph 35b. of the Confirmation Order, from the date hereof through June 20, 2020, the Debtors may, in their sole discretion, through and including June 20, 2020 (or July 20, 2020 from June 20, 2020 to July 20, 2020), amend the schedules to (i) add or delete any executory contract or unexpired lease, or (ii) modify the effective date of the rejection of any executory contract or unexpired lease, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

c. Any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the court or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

d. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not filed and served.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. Final Fee Applications. Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim arising during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals throughout Chapter 11 Cases.

8. Certain Documents. The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website of the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Plan Supplement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.
Dated: July 2, 2020
WEIL, GOTSHAL & MANGES LLP
Attorneys for Debtors and Reorganized Debtors




**Reuse. Repurpose. Really Save!**

Take a fresh look at the Classifieds, the original way to shop green!?



### DAILY NEWS
## CLASSIFIEDS
**TOLL FREE**
**1-800-827-1421**
Mon.-Fri.
8:30am-5:00pm
redbluffdailynews.com






"Now, remember, kids, when it comes to backpackers, the most important rule is 'leave no trace.'"

**Exhibit T**

**NEVADA COUNTY**
**PUBLISHING COMPANY**

**Grass Valley, CA**

**AFFIDAVIT OF PUBLICATION**

# THE UNION

**Customer Account #:** 6037754
**Reference:** R7070033

**Legal Account**

MILLER ADVERTISING AGENCY, INC.,
220 W 42ND ST
NEW YORK, NY  10036

**Attn:** Adam Levin

**County of Nevada, State of Calif.** The
undersigned, **Bailee Liston**, being the principal
clerk of the **Nevada County Publishing Co.**
declares that the **Nevada County Publishing Co.**
now is, and during all times herein named, was a
corporation duly organized and existing under the laws
of the State of California, and now is, and during all
times herein named was the printer of
**THE UNION**, a newspaper of general circulation,

as defined by section 6000 of the Government Code of
the State of California, printed and published daily
(Sundays excepted) in the City of Grass Valley, County
of Nevada, State of California, and that affiant is the
principal clerk of said Nevada County Publishing Co.

That the printed advertisement hereto annexed was
published in the said UNION, for the full required
period of **1** time(s) commencing on **07/14/20**,
and ending on **07/14/20**, all days inclusive.

I certify, under penalty of perjury, the foregoing is true and
correct.

Signed: _Bailee Liston_
_____

Legals Advertising Clerk

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| In re: | Bankruptcy Case |
| PG&E CORPORATION, | No. 19-30088 (DM) |
| - and - | Chapter 11 |
| PACIFIC GAS AND ELECTRIC COMPANY, | (Lead Case) |
| Debtors. | (Jointly Administered) |

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

**PLEASE TAKE NOTICE** that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole source* of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the *sole source* of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

**a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claims against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;**

**b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;**

**c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;**

**d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims; and**

**e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claims.**

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed

by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, **no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease**, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d. of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP

# market place classifieds

place an ad | www.theunion.com/classified | classifieds@theunion.com | (530) 273-9567

## Announcements

**★ ATTENTION ★**
The deadline to get your ad into print the following business day is 3pm the day before. You can place your ads online at
**www.theunion.com**
Office Hours 8-5 M-F
Note: Deadlines vary w/holidays

**BUYING GOLD & SILVER**
Out Calls
530-305-4100
Mineral Enterprises

**NOTICE TO READERS:**
Be wary of out of area companies. Check with the local Better Business Bureau before you send any money for fees or services. Read and understand any contracts before you sign. Shop for rates.

**Protecting Yourself From Fraud & Scam Ads**
It is important to be aware that fraudulent ads are out there. We try to screen all ads, but sometimes an ad will make it through thats a scam. Remember, there are steps you can take to protect yourself.
**Please visit this link for more information:**
http://classifieds.theunion.com/safety

**Royal Dragon Buffet**
Back in Business!
Come satisfy yourself with quality food that is both filling and satisfying! Lunch Hours: 11:00-3:30pm
Dinner Hours: 4:00-9:00pm
(530) 272-2868

See it! Love it! Buy it!
In the Classifieds

## Found

**Found**
Large Set of Keys found on 7/10/2020 at the corner of Arcadia and Cypress Hill Grass Valley
Please Call:
530-273-0463

FOUND Ring on 06/25/2020 Please contact Shelby Speegle with the Grass Valley Police Department Property Unit at (530) 477-4643 w/Reference case G2001621

## Kid's Corner

Secret Detective Code

KIREZGV WVZI OLXZO
YZW TFBH: GSVIV RH Z
HNZIG MVVO
RMMHKVXGLI LM LFI
GZRO, FHV FONLHG
XZFGRLM. GZPV ML
XSZMXVH! UV SZEV
VEVIBGSRMT GL OLHV.-
HFKVI VZW TFB

## Lost

**For Lost pets**
remember to check the Sammie's Friends Nevada County Shelter
530-471-5041 or the
Grass Valley Shelter
530-477-4630.

**DON'T BE BOLD**
USE BOLD, LARGE TYPE
TO GRAB ATTENTION
TO YOUR AD TODAY!

## Public Notices

**THE UNION**
**GENERAL POLICY ERRORS & OMISSIONS**
The Publisher's liability, if any, for errors, shall not exceed the space occupied by the error. Credit for error will not be given after the first insertion on multiple insertions. Claims for the adjustments must be made within seven days of publication. The publisher will not be liable for any omission of an advertisement or portion of an advertisement ordered to be published. In no case will the Publisher be responsible for any general or consequential damages. All ads are non- refundable.

Free Ads available online if selling items under $1,000.00 or Classifieds can place them for a charge of $8.00.

## Education

**BRHS Cheer Coach**, coaching stipend, start 7/27/2020, apply online at
**www.njdpm.org**
**by 7/13/2020**,
**530-273-3351.**

**NUHS Photography Teacher**
80%, $51,354 - $98,684/yr (prorated to 80%), plus degree stipend if applicable, start 8/17/2020, benes, STRS, apply online at
**www.njdpm.org by**
**7/17/2020**,
**530-273-3351**

## Health Care

**Sierra View Manor Assisted Living**
Multiple Positions!
Need RN pt: Orientation & training staff, resident supervision, documentation, Caregiver: Med Aid, dietary Aid/Cook. Small care facility locally owned, NO phone calls. Apply at: 120 Dorsey Dr. GV

## Apartments/ Condos for Rent

**GOLD CREEK VILLAGE**
2 Bed/2 Ba 1250 Sq. Ft.
$1,400 mo. All Appl.
W/D Hookup, Fireplace, Water, Trash, Paid
Sorry, No Pets
530.272.4079

## Homes For Rent

**Single**
**Family/Duplex. 2**
**BD 2 BA**

2 BD 2 BA Prime location in Eskaton 1/950.00/month 2 bed/2bath plus den. MUST BE 55 OR OLDER. No smoking.
530-272-8320

**$ $ $ $ $**
**GET FREE MONEY!**
Sell those unwanted items
in The Union Classifieds.
**$ $ $ $ $**

## legal & public notices

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:
PACIFIC GAS AND ELECTRIC COMPANY,
- and -
PG&E CORPORATION,
Debtors.

Bankruptcy Case
No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

PLEASE TAKE NOTICE that:

*[Legal notice text continues in multiple dense columns regarding the PG&E Chapter 11 Plan of Reorganization, confirmation order, effective date, treatment of claims, and related procedures.]*

## real estate photo ads



$495,000



$687,500



$620,000

$699,000



$299,900



$290,000

### NEVADA COUNTY REALTY, INC.   GoldCountryRanches.com   530.362.6806

**Teresa Dietrich**
Broker Associate
BRE 01222347


TOP OF THE WORLD views are captured on this incredible 30 acre estate parcel just above downtown Nevada City. Sunrise to amazing sunsets accent the sky overlooking Scotts Flat Lake and the Coast Range beyond! Every season brings a new view! Underground power with transfer box, 4500 gallon fire suppression system and perc & mantle tests. Located minutes to the Boat ramp at Scotts Flat Lake and hiking/horseback riding trails galore!
MLS#20036439 $575,000

**Network Real Estate**
GREG WARD • REALTOR®
DRE# 01347828 • (530) 277-3950


MIMI SIMMONS
Team Simmons
CENTURY 21
**MIMI SIMMONS**
530.265.7940
www.MimiSimmons.com
C21RE # 00071425     Each office is independently owned and operated


Built in 2018, this quality manufactured home has vaulted ceilings, a wonderful high end kitchen with stainless appliances and granite counters, generous bedrooms including a romantic master suite! Sweet covered porch to enjoy the sunsets! Lovely back yard for a garden with paved driveway and perfectly priced in today's market for VA, FHA or low down financing! Move to the mountains and enjoy a simpler, quieter lifestyle! MLS#20031578 $349,000


This home is an income producing 2 story home that could use some repairs and TLC. There are renters already in place that have been there and would like to stay. The bottom unit is a one bedroom 1 bath with no air conditioning, a window unit can be put in, and available to rent. Upgrading and improvement is desired. You can walk to downtown Grass Valley. Its located close to the corner of Eureka and 2nd St. in family neighborhood. Great income to pay for the house. MLS#20029616

$315,000!!!
530-268-9595
CALL US!!!

**RCI Real Estate**
**Property Management Provided**
530-268-9595
www.rcisonline.net
10861 Combie Road
Auburn, CA 95602
Between Auburn & Grass Valley
Where Your Properties Become Ours


Level 5.27 ac. property is minutes to Grass Valley & has many features for creating a family compound, or a retreat into the forest, & the 2 shop buildings can be used for a variety of uses. Consisting of a 2,826 sf home, 2 shop buildings, fenced garden, family orchard & 3 - 1.09 acre legal parcels. The 2 story home + full basement has 4 bedrooms, 2.5 baths, living room on the main floor. Large family room & master suite upstairs that open to wrap around deck. Paved parking provides space for your boat and RV. For the contractor, cabinet maker, hobbyist, etc., there are 3 shop buildings with a combined square footage of approximately 3,300 sf, cement floors, high ceilings & 3 phase power. The main shop building is 2,880 sf, plumbed for air to run power tools & has a sawdust extraction system. The adjacent 324 sf building has cement floors & high ceiling. Home & shop sit on a 2 ac. parcel. The other 3 parcels are each 1.09 acres. Expand your family compound or sell them off. MLS# 20030124 • $769,000

**Network Real Estate**
GREG WARD • REALTOR®
DRE# 01347828 • (530) 271-3950

Grass Valley

$299,000
For Sale By Owner
530-292-3079
Land for Sale, 5.15 Acres, 13379 Thoroughbred Loop. 3 br 2 ba 2000 sf plans approved and permits PAID! Ready to start building your dream home TODAY! Realtors welcome!

**AFFORDABLE MOBILE HOMES IN PARKS**
**530-265-0800 • WWW.AMHSALES.NET**
REDUCED

Manufactured 3bd2bth, Senior In-town Prk 26X57, fireplace, lndscped, W&D, new deck, Spacious. Space rent $925.mth S#169A/B
Priced at $145,000

Want to Sell or Buy a Mobile/ Manufactured Home in Park?
33 years local experience

Affordable Mobile Home Sales
Rebecca Young,
Owner/Dealer

**Exhibit U**

# Ukiah Daily Journal

617 S. State St
Ukiah, California 95482
(707) 468-3500
advertising@record-bee.com

3824007

MILLER ADVERTISING AGENCY, INC.
220 WEST 42ND STREET, 12TH FLOOR
NEW YORK, NY 10036

Legal No.    **0006501002**

## PROOF OF PUBLICATION
## (2015.5 C.C.P.)

## STATE OF CALIFORNIA
## COUNTY OF MENDOCINO

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years, and not a party to or interested in the above entitled matter. I am the principal clerk of the printer of the Ukiah Daily Journal, a newspaper of general circulation, printed and published daily in the City of Ukiah, County of Mendocino and which newspaper has been adjudged a newspaper of general circulation by the Superior Court of the County of Mendocino, State of California, under the date of September 22, 1952, Case Number 9267; that the notice, of which the annexed is a printed copy (set in type not smaller than non-pareil), has been published in each regular and entire issue of said newspaper and not in any supplement thereof on the following dates, to wit:

**07/14/2020**

I certify (or declare) under the penalty of perjury that the foregoing is true and correct.

Dated at Ukiah, California,
July 14th, 2020

_Molly E. Lane_

Molly E. Lane, LEGAL CLERK

r.BP16-07/12/17

### View obituaries online at ukiahdailyjournal.com or legacy.com

• **To view an obituary published** - Near the top of the main obituaries page is a list of the obituaries that appear in the Newspaper today. Click on a name to access the full notice. If there are more obituaries than can be displayed in the list, you can click the "view all" link to view more names. You can view obituaries from yesterday or two days ago by selecting these options in the drop-down menu near the top of the list.

• **To search for an obituary by name** - Use the search box at the top right of the main obituaries page to search for an obituary by name. Type the last name of the deceased into the search box and select a date range. When you click "search," all listings for that last name and date range will be returned. Click on the name you are looking for to view the full notice.

• **To view all obituaries published on a particular day** - To view all obituaries from a particular day, click the calendar icon in the search box at the top right of the main obituaries page. When the calendar appears, you can click the arrows to scroll back through previous months. Click the date you want, and then click "search." All obituaries published on that day will appear. Click on a name to view the full notice.

• **To view a Guest Book** - To view Guest Book entries, first locate the obituary or death notice. If the obituary includes a Guest Book, a link that reads "View all messages" will appear below the obituary. Clicking this link will bring you to the page where you can view all current entries. Please note that our staff screens all Guest Book entries for appropriate content before placing them online. Typically, entries appear online within a few hours. In rare cases, however, there may be a delay. If the Guest Book includes the sentence, "We encourage you to be the first to share your memories or express your condolences", this means that we have not yet approved any entries for online posting.



# Turn Your Clutter INTO CASH!

Call to place your garage sale ad

## 468-3500

---

## Looking For A Career?

EVERYDAY: **Classified** SUNDAY–SATURDAY: **The Ukiah Daily Journal**



JOB | SEARCH

Are you looking for the perfect opportunity to shine? You could find a great job in our Classified section.

617 S. State St., Ukiah

**The Ukiah DAILY JOURNAL**

## 468-3500

## Legal Notices

**4583-20**

**7-7,14,21/2020**

Redwood Valley Rancheria is seeking proposals for the following:

**Transportation Safety Plan**

The Redwood Valley Little River Band of Pomo Indians (Tribe) is seeking a qualified individual or firm to develop a Strategic Tribal Transportation Safety Plan that will meet or exceed U.S. DOT Federal Highway Administration standards.

**Maintenance and Repairs on Water Storage Tank**

The Tribe is seeking the assistance of a contractor that has experience conducting routine maintenance and repairs on water storage tanks. The work will include but is not limited to the following:

· Install gasket on access hatch of water storage tank that is air tight and will keep out dust and insects from entering water tank

· Install gasket on electrical box on storage tank that is air tight and will keep out dust and insects from entering water tank.

· Replacing and installing sanitary seals on booster pumps as well as adding additional bolts to ensure the lid is secured to the casing for safety.

· Repair or replace the broken tank float

Full proposals are available from Eileen Nuñez Womble, Environmental Director
3250 Road I Redwood Valley, CA 95470
epa1@rvrpomo.net or 707-485-0361

**4590-20**

**7/14/2020**

**NOTICE OF HEARING TO CONSIDER CERTIFICATION OF FINAL ENVIRONMENTAL IMPACT REPORT FOR FINAL CLOSURE AND POST-CLOSURE MAINTENANCE PLAN FOR CITY OF UKIAH LANDFILL**

All Interested Parties:

**SUBJECT:** Notice of Hearing on Final Environmental Impact Report ("EIR") for the Final Closure and Post-Closure Maintenance Plan for City of Ukiah Solid Waste Disposal Site ("Landfill")

**PROJECT SPONSOR:** City of Ukiah

**PROJECT LOCATION:** The 40 acre project site is located within the 283.5 acre parcel located at 3100 Vichy Springs Road and also known as Mendocino County Assessor's Parcel No. 178-130-01. A more complete description of the location is contained in the EIR.

**BRIEF PROJECT DESCRIPTION:** The Project closes the Ukiah Landfill in accordance with applicable regulatory standards, including the components and systems required for closure. These include a final cover and grading designed to control stormwater, potential infiltration and accommodate settlement, landfill slope stability, construction quality assurance, drainage and erosion control systems, landfill gas control and monitoring systems, groundwater/surface water monitoring systems and site security. The Post-Closure Maintenance Plan provides for the maintenance of the Landfill after it is closed.

**AVAILABILITY OF FINAL EIR:** The Final EIR, including the Draft EIR and the response to comments on the DEIR, are available for public inspection and copying. It is posted on and can be downloaded from the City of Ukiah website at https://cityofukiah.a pp.box.com/v/UkiahLandfillClos ureProject/folder/111009724910. To make alternate arrangements to obtain copies of the documents, contact Jarod Thiele, Management Analyst, at (707) 972-2404 or via email at jthi ele@cityofukiah.com

**4577-20**

**7/14/2020**

**PUBLIC HEARING:** On August 5, 2020, at 6:15 p.m., or as soon thereafter as the matter may be heard, the Ukiah City Council will hold the public hearing to consider certification of the EIR. It will also consider approval of the plan. Public comments addressing the EIR shall be limited to the adequacy of the response to comments on the Draft EIR. Because of the Shelter-in-Place Order, the Civic Center is closed. The meeting will be a virtual meeting accessible using instructions on the City's website at http://www.cityofukiah.com/meetings/.

• **TO PRESENT VERBALLY:** go to the agenda (download arrow on right), which will have instructions and a link to the meeting.

• **TO BE READ ALOUD BY CLERK:** Email to meeting@cityofukiah.c om. Include in the subject line "To be read aloud" and which agenda item you are submitting your comment for, e.g. "Hearing on Landfill EIR and closure and post-closure plan keep your comments to 500 words or less.

• **CORRESPONDENCE FOR SUBMISSION:** Email to meeting@city ofukiah.com. Include in the subject line which agenda item that you are submitting your correspondence for.

For further information about the project, please contact Jarod Thiele, Management Analyst, at (707) 972-2404 or via email at jthi ele@cityofukiah.com.

**4583-20**

**7/7,7/10,7/14/2020**

**NOTICE TO CREDITORS OF THE TERRY AND MOLLIE K. TERRY REVOCABLE LIVING TRUST, DATED NOVEMBER 29, 1997, AND RESTATED FEBRUARY 17, 2017 CREATED BY LEON C. TERRY AND MOLLIE K. TERRY**

CASE NO.SCUK-CVPG 20-27387
SUPERIOR COURT OF CALIFORNIA COUNTY OF MENDOCINO

NOTICE IS HEREBY GIVEN to the creditors and contingent creditors of the above-named decedents that all persons having claims against the decedents are required to file them with the Superior Court of Mendocino County, Ukiah Branch, at 100 N State Streets, Room 107, Ukiah, CA 95482, and mail or deliver a copy to Thomas Cookson as Trustee of the Leon C. Terry and Mollie K. Terry Revocable Living Trust, dated November 29,1997, and restated on February 17, 2017, wherein the decedents were the settlors, at 280 North Oak Street, Ukiah, California 95482, within the later of four months after the date of first publication of Notice to Creditors or, if notice is mailed or personally delivered to you, 60 days after the date this Notice is mailed or personally delivered to you, or you must petition to file a late claim as provided in Section 19103 of the California Probate Code. A claim form may be obtained from the Court Clerk. For your protection, you are encouraged to file your claim by certified mail, with return receipt requested.

Dated: 6/15/2020
S/THOMAS COOKSON, Trustee of The Leon C. Terry and Mollie K. Terry Revocable Living Trust, Dated November 29,1997, and restated February 17, 2017

c/o GINEVRA K. CHANDLER
Attorney at Law
The Law Office of Ginevra Chandler
280 North Oak Street
Ukiah, CA 95482
(707) 462-6541

**4564-20**

**6/23,6/30,7/7, 7/14/2020**

**Fictitious Business Name Statement 2020-F0302**

The following person(s)is(are) doing business as: **M I d C**
617 S. State St. Ukiah, CA. 95482. This business is conducted by **an Individual**
Loren Hyler
9501 Laughlin Way Redwood Valley, CA. 95470.

The registrant will commence to transact business under the fictitious business name above on **N/A.**
Endorsement-Filed with the Mendocino County Clerk **06/02/2020**
S/Loren Hyler

---

When You GOTTA FIND IT NOW! Check The CLASSIFIEDS!

Classifieds Produce Results Fast

Advertise it in the Classifieds

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:
**PG&E CORPORATION,**
— and —
**PACIFIC GAS AND ELECTRIC COMPANY,**
Debtors.

Bankruptcy Case
No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

PLEASE TAKE NOTICE that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all of the provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION.** In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the sole source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the sole source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be permanently and forever barred, stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 33a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties, (iii) was the subject of a motion to assume, assume and assign, or reject filed

by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, with notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 35b. of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any objection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of the date of such removal or addition, or as of such other date as the Bankruptcy Court may order.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claims incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other order of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** This Confirmation Order, the Plan, the Processing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk (https://restructuring.primeclerk.com/pge). Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at: https://www.pacer.gov/uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

---

**Exhibit V**

# STATE OF CALIFORNIA
## County of Humboldt



MAD RIVER UNION

MADRIVERUNION.COM ✦ (707) 826-7000

# PROOF OF PUBLICATION

Proof of Publication of: _PG&E Corporation_

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years, and not a party to or interested in the matter referred to herein. I am the "principal" clerk of the publisher of the MAD RIVER UNION a newspaper of general circulation, published once a week, Wednesdays, in the City of Arcata, county of Humboldt, and which has been adjudged a newspaper of general circulation by the Superior Court of the County of Humboldt, State of California, under the date of Oct. 29, 2013, Court Decree Number CV130613; that the notice of which the annexed is a printed copy (set in type not smaller than nonpareil), has been published in each regular and entire issue of said newspaper and not in any supplement thereof on the following dates, to wit:

Run Dates _7.15.20_

Continued
on page 2

I certify (or declare) under penalty of perjury that the foregoing is true and correct.

Dated at Arcata, Humboldt County, California

this _7/16_ day of _July_ 2020
Signature: _____
Kevin Hoover or Jack Durham
(707) 826-7000

This space is for the County Clerk's Filing Stamp



UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:
PG&E CORPORATION,
- and -
PACIFIC GAS AND ELECTRIC COMPANY,
Debtors.

Bankruptcy Case
No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

## NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

**PLEASE TAKE NOTICE THAT:**

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION.** In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole* source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the *sole* source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

b. enforcing, attaching, collecting, or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject

filed by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, able against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d. of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring. primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:
PG&E CORPORATION,
— and —
PACIFIC GAS AND ELECTRIC COMPANY,
Debtors.

Bankruptcy Case
No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

PLEASE TAKE NOTICE that:

[Legal notice text regarding PG&E Corporation Chapter 11 Plan of Reorganization, in multiple columns, continuing through several paragraphs.]

Dated: July 2, 2020
WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP

## ARCATA CITY COUNCIL

The Arcata City Council meets tonight, Wednesday, July 15 at 6 p.m. View it at cityofarcata.org or on the city's YouTube channel. Members of the public may provide public comment before and during the meeting by sending comments to pc@cityofarcata.org. Agenda items include the Consent Calendar; extension of temporary restrictions on evictions due to COVID-19; a continuation of the local emergency due to the Coronavirus Pandemic; award of a bid for 2020 timber harvest to Diamond R Ranch in the amount of $195 per thousand board feet (MBF) for logging, $40 per MBF for trucking to Arcata, $46 per MBF for Trucking to Samoa, and $152 per MBF for Trucking to Willits; approve the proposed wastewater rate fees for fiscal years 2020-2025; public hearing on funding under the State Community Development Block Grant Program; Arcata Police Department update on police reforms, with discussion of Campaign Zero and police reform after the killing of George Floyd;

discuss the roles and practices of serving on boards of Joint Power Authorities and regional agencies/committees; oral communications and scheduling of upcoming meetings.

## WESTHAVEN CSD



**DEMOCRACY IN ACTION**

The Westhaven Community Services District board meets Wednesday, July 15 at 6:30 p.m. Due to the coronavirus pandemic, WCSD Board meetings are held using Zoom at humboldtsam.zoom.us/j/92028932068

By phone (audio only): dial (408) 638-0968. At the prompt, enter the following meeting ID code: 920 2893 2068.

Send email comments to the WCSD manager at prosenblatt.wcsd@suddenlinkmail.com.

In addition to the regular monthly financial reports, the board will discuss potential funding for resolution of disinfection by product issues. The Manager's Report will include Water Loss, Project Updates, 2020-2021 Annual budget, Technical assistance grant, Planning grant and CDP for drilling wells at Fourth Avenue site.

For a full agenda and more information call the

WCSD at (707) 677-0798 or email wcsd@suddenlinkmail.com.

Regular Board meetings are the third Wednesday of the month at 6:30 p.m. The July 15 meeting will be held via Zoom. Members of the public are welcome and encouraged to attend.

## JUSTICE FOR JOSIAH

A vigil to honor the memory of Humboldt State University student David Josiah Lawson will be held on the Arcata Plaza tonight, Wednesday, July 15 at 7 p.m. Attendees are asked to wear a mask and observe social distancing.

## HUFFMAN'S CLIMATE MEETING

On Thursday, July 16 at 4 p.m., Congressman Jared Huffman (D-San Rafael) will host a virtual town hall on the newly released Climate Crisis Action Plan, a comprehensive Congressional framework to protect the health of all families, make sure our communities can withstand the impacts of climate change, and grow our economy and put Americans back to work. Huffman will be joined by former State Senator Fran Pavley, author of California's landmark climate law AB32, and President and CEO of Natural Resources Defense Council Gina McCarthy. Viewers can submit questions in advance to huffmanQandA@mail.house.gov or ask them live via Facebook live.

---

### RAMONE'S Bakery & Cafe

Breakfast Pastries • Espresso
Freshly Roasted Coffees
Bread • Desserts
Sandwiches, Soups & Salads
Catering • Wedding &
Specialty Cakes

OPEN DAILY

In Arcata: At Wildberries Marketplace 826-1088
In Eureka: 2297 Harrison 442-6082 • 209 E Street 445-2923
• At Pierson's 476-0401
In McKinleyville Shopping Center 839-3383

Open Daily     RamonesBakery.com

### Phoenix Ceramic & Fire Supply

Clay • Wheels • Kilns • Tools
Complete Ceramic Supply

(707) 822-4556
8th Street, near L,
Arcata

www.phoenixceramic.com

Year-round classes in clay and glass

Shop Our Gallery

(707) 826-1445

Fire Arts Center
520 South G Street, Arcata CA 95521
www.fireartsarcata.com

### IN-HOME SERVICES

We are here for you

Registered nurse support
Personal care
Light housekeeping
Assistance with activities
Respite care
& much more

Insured & bonded
Humboldt Caregivers

Serving Northern California
for over 20 years!

TOLL FREE
1-877-964-2001

### Wesleyan Church of the Redwoods

Pastor Chuck Clark

Coffee fellowship
at 10 a.m.

Traditional worship
at 10:30 a.m.

Bible Study
7 p.m. Wednesdays
(Sept. through May)

839-2625
1645 Fischer Rd., McKinleyville

### Handcrafts On The Coast

Organic
Jewelry Crafts
Art
I ♥ and Etsy
Casey Jones
(707) 496-3913



### FINNISH COUNTRY SAUNA AND TUBS

PRIVATE OUTDOOR HOT TUBS
TRADITIONAL SAUNA CABINS

Sunday - Thursday   Friday & Saturday
noon to 11 pm         noon to 1 am

OPEN EVERY DAY INCLUDING SUNDAYS & HOLIDAYS
corner 5th & J, Arcata
822-2228 reservations

### Café Mokka

Open by Appointment.
Call (707) 826-2680
or email
contact@arcatacabinet.com

### ARCATA CABINET & design company

• Humboldt's only Certified Kitchen Designer
• Over 8,000 Paint Colors & Custom Doors
• Free Estimates & Personalized Service

www.arcatacabinet.com     707.826.2680
Showroom at 5000 West End Rd. in Arcata  CL#608083



### Wildwood Music

Buy
Sell
Trade

1027 I St., Arcata 822-6264
wildwoodmusicarcata@gmail.com    M-F 10:30-5:30
    Sun 12-4



### Arcata Bay Self Storage

We are your friendly storage professionals

•On-site Manager
•Car, RV & Boat Storage
•Conveniently Located
•Member of California Self Storage Association

250 E Street
822-0331
www.ArcataSelfStorage.com

---

## CROSSWORD

### ACROSS

1. Outer garment
5. British sword
9. Determination
14. Ring of light
15. Quality
16. Bewildered
17. ___ about; approximately
18. Attain
19. Snow vehicle
20. Popular large dog
23. Corn producer
24. Female sandpiper
25. Attached residences
28. White wines
33. Straighten
34. "The ___"; TV series for Mr. T
35. 508
36. Ceremony
37. Fit for a king
38. Necklace part
40. Tempted one
41. Doctrine
42. Part of an ice skate
43. Church events
44. Slants
45. Polished off
46. Long time
47. Heavy muscular dog
54. Good buy
55. Mecca resident
56. Read and correct
58. Buttermilk's rider
59. Miss ___; role on TV's "Dallas"
60. Unaccompanied
61. Friendly nation
62. Obligations
63. Pitfall

### DOWN

1. Which person
2. Sounded
3. African lily
4. Breakfast item
5. Hollow stalks
6. Coliseum
7. Ovine complaints
8. Well-heeled
9. Opposite of earthly
10. Large appliance
11. ___ of Capri
12. Sly look
13. Alan or Cheryl
21. Night light
22. Beautician's offering, for short
25. Anxieties
26. Popeye's love
27. Saltpeter
28. Eyelid problems: var.
29. Raise the temperature of
30. Creative thoughts
31. Steer clear of
32. Factions
34. Of the finest quality
37. Like a wall niche
38. Dullest in taste
41. Small monkey
42. High school subj.
44. Stretch of lowland
45. Misrepresents
46. Examination of accounts
47. Norse mythology
48. Actress Patricia
49. Impudence
50. Vigorous
51. Socket insert
52. Nose's detection
53. ___ monster
57. Spinning toy

The weekly crossword is brought to you by Organic, fresh, local and available at Eureka Natural Foods, Murphy's Markets, the North Coast Co-op and Wildberries!



KINETIC KOFFEE

---



### MAD RIVER UNION

The Mad River Union, (ISSN 1091-1510), is published weekly (Wednesdays) by Kevin L. Hoover and Jack Durham, 791 Eighth St. (Jacoby's Storehouse), Suite 8, Arcata, CA 95521.

Periodicals Postage Paid at Arcata, CA.
Subscriptions: $40/year
POSTMASTER: Send address changes to the Mad River Union, 791 Eighth St., Suite 8, Arcata, CA 95521

**Deadlines & Departments**
Letters to the Editor & Opinion columns: Noon Friday
Press Releases: 5 p.m. Friday  Ads: Contact Ad Dept.
Legal Notices: 5 p.m. Friday
Press releases: (707) 826-7535 ads@madriverunion.com
Letters to the Editor/Opinion: (707) 826-7000
opinion@madriverunion.com
Advertising: (707) 826-7535 ads@madriverunion.com
Entertainment: (707) 826-7000 scene@madriverunion.com
Legal notices: (707) 826-7000 legals@madriverunion.com

Jack D. Durham, Editor & Publisher editor@madriverunion.com
Kevin L. Hoover, Editor-at-Large, Publisher
opinion@madriverunion.com
Jada C. Brotman, Advertising Manager
ads@madriverunion.com

Daniel Mintz, Janine Volkmar Reporters
Matthew Filar, Moonlight Macumber, Terry Finigan Photographers
Patti Fleschner, Mara Segal,
April Sousa, Bob Doran Columnists
Karrie Wallace, Distribution Manager karrie@madriverunion.com
Marty Burdette, Proofreader

© 2020 The Mad River Union

Case: 19-30088   Doc# 8470   Filed: 07/21/20   Entered: 07/21/20 17:39:57   Page 83 of 110

**Exhibit W**

# AFFIDAVIT OF PUBLICATION

**In The Matter Of:** **CHAPTER 11 BANKRUPTCY**

**Advertisement for – PG&E**

This is to certify that the above advertising appeared on page A15

Newspaper name: **MT SHASTA AREA NEWSPAPERS**

On (Dates) 07/15/20

Signature
Robert J Ramey



Representatives pose for a photo during a groundbreaking ceremony for Siskiyou Central Credit Union in Yreka last week. PHOTO CONTRIBUTED BY SHELLY SUETTA PHOTOGRAPHY

## Siskiyou Central Credit Union breaks ground on Yreka building

YREKA – Siskiyou Central Credit Union broke ground Tuesday, July 7, celebrating the start of construction at its new headquarters on Fairlane Road.

SCCU was founded in 1962 by Betty Pitman and Ken Bley, wanting to offer county employees a safe and affordable place to keep their hard-earned pay. After many moves, changes, and charter expansions, Siskiyou Central Credit Union expanded its charter to the entire community of Siskiyou County in January 2001.

Starting from Betty's desk at the Welfare Department, SCCU spent the next six decades building a reputation as Siskiyou County's premier local financial institution. SCCU has been serving community residents with a full range of financial products that offer high interest, low fees, and member-focused service.

Today, SCCU is 8,000 members strong with more than $86 million in assets, according to a press release. The new building will replace the current SCCU office, located on Fourth Street in Yreka. The expected completion date is summer of 2021.

"This expansion wouldn't be possible without our ever-growing membership, board of directors, supervisory committee and staff. We are excited about the opportunities this move will create, and look forward to continuing to serve our members. We are here to serve you, here to stay." said Becky Ives, President/CEO of Siskiyou Central Credit Union.



Commissioner of Reclamation Brenda Burman, Interior Secretary David Bernhardt and Congressman Doug LaMalfa listen to farmers at a media event on July 9 in Klamath Falls, Ore.

PHOTO BY LIZ BOWEN

## Federal officials visit Klamath Falls area to talk about water

By Skye Kinkade

KLAMATH FALLS, Ore. – A slew of officials, most notably U.S. Department of the Interior Secretary David Bernhardt, converged in the Klamath Basin last week to talk about water and how it should be split between farmers, Native American tribes, and natural resources.

Also in attendance at the July 9 "roundtable" were Congressman Doug LaMalfa; U.S. Bureau of Reclamation Commissioner Brenda Burman; State Assemblywoman Megan Dahle; Oregon Congressman Greg Walden; and representatives from local tribes and farmers in the area.

LaMalfa referred to the conflict as a "bureaucracy-created disaster," saying that farmers' water allocations in the basin were reduced from 140,000 acre feet in April to 80,000 in May. The allocations were later restored, he said.

While Dahle praised the event as "encouraging" and LaMalfa said it shone a spotlight on Klamath water issues, the Klamath Tribes were critical, saying in a press release "the substance of the meeting was little."

Bernhardt toured a field strewn with white crosses, each representing a farm that is no longer in existence. The field was the site of a "Shut Down and Fed Up" rally on May 29. It was reported by the Klamath Falls Herald and News that after learning of the rally from Walden and at his invitation and that of LaMalfa, Bernhardt spent the day in Klamath Falls, Ore.

"Sometimes it's important for us to evaluate the situation for ourselves and then try and drive change and that's what we're going to try and do," Bernhardt told the crowd at the event, which was by invitation only.

The Herald and News reported that the visit by the top officials was the first by both a Reclamation Commissioner and Secretary of Interior at the same time, and the first by a sitting Interior secretary since 2002.

LaMalfa said in a release the following day that "bad science has led to decades of disregard for the irrigators' water rights, and there need to be long-term solutions to update the science so farmers can receive the water on which they depend.

LaMalfa went on to say the water "does not belong to anyone other than Basin farmers, and the bureaucracy has no right to take it away without compensation."

"Yesterday's meeting was about listening to all parties: tribes, communities, refuge advocates, and farmers so we can educate the secretary on the realities of this project," said LaMalfa. "This was a beginning of a fresh look at a solution rather than continuing on the failed efforts of the last administration."

Dahle pointed out that this was the first time Berhardt and Berman had visited the area, and called the meeting "an important step in the process to help solve 30 years of water conflict."

The Klamath Tribes said they found out about Bernhardt's visit two days in advance. They were disappointed that Bernhardt, Burman and LaMalfa did not wear masks, adding "to the disproportionate risk of infection faced by our impoverished tribal community," the release states.

"The 10-15 minutes afforded to our representatives to speak was not an example of 'meaningful' government-to-government consultation as defined in any of several state and federal policies," the release states. "When our representatives attempted to make this point, Secretary Bernhardt interrupted and informed them that the 'did not have to come' to this meeting. We hope that any future request to meet with the Klamath Tribes in our homeland will allow for genuine, meaningful, and respectful exchanges between federal officials and our entire elected Tribal Council if not a larger group of our members."

The tribe said there was no opportunity for detailed interaction, so they left copies of documents that they hope federal leaders will read.

"We fear that the 'meeting' was little more than political cover for further erasure of our Indigenous voices – and in our own homeland. The struggle to protect and restore the health of this magnificent place that the Klamath, Modoc, and Yahooskin peoples have called home for thousands of years continues."

## Writer's Block

### Guardian angel

Submitted by
Mary Ellen Rock

It was a dark and dreary night. Maybe it was dark and stormy. I seem to remember it was raining! I had just walked, climbed might be a better word. Outside it looked like somebody, God maybe, had thrown a blanket over the world. My grandmother would have said that it was "dark as GYPT." Egypt – I think.

I had been in the basement for about two hours, it was 8:20 now. My favorite professor had assigned me to write a detailed paper about the role of Anastas Mikoyan. Bet you don't know who he was. He was a Soviet "politik" – a party stalwart. A short stocky Armenian. Tough as nails. He survived the Revolution, the famines, World War II, the purges and outlived Stalin. He helped carry the casket of Lenin in 1924 and was the Soviet representative to the funeral of John Kennedy in 1963. At the United Nations, where he served as ambassador for several years, he was known as "Comrade Nyet." Like I said, he was tough. He died in 1978.

I had really worked hard on the subject – books, microfiche (that should tell you how long ago this happened), and had taken lots of notes. The professor was my favorite but he gave me the hardest and most obscure topics. He once assigned me a paper on a revolution in Yemen. I think it was because I was the only one who could find Yemen on the map. He expected so much of me. I would never disappoint him.

Now, I needed to get to the dorm. The library closed at 9 and it was 15 minutes away. The place was almost empty. The cleaning staff was coming in. I was unsure about leaving. It was raining really hard. Still, I did not want to ruin my beige Papillo shoes. They would be ruined! My mother would kill me. She had bought them for me on the understanding I would never wear them in bad weather.

I was just about ready to make a dash for it. A figure appeared at my side. There stood Jerry McKenzie. Jerry was a grad student in chemistry. I saw him every once in a while. I would like to say he was never my boyfriend. Never, never!

What he was, was my personal guardian angel. He always seemed to appear when I needed somebody. If I fell on the snow and ice of Boone, he was there to pick me up. I dropped a loaded tray in the cafeteria, Jerry picked it up. Flunk a test, Jerry would be there to console me. I never knew how he found me.

I had first met Jerry at a graduate student mixer, a dry mixer. Watauga County was dry as was the rest of the state. It turned out that Jerry and his chemistry friends made booze in the basement of the science building. They invited a group of us down for a drink. We figured it was high class moonshine. When we got there you had to pay for your drink. You had a choice – you could kiss a graduate student or you could hold the snake.

The biology department kept a couple of snakes in the basement. I was not really afraid of snakes. My grandmother had a pet snake, it followed her around outside and liked to be rubbed. So, I held the snake. The snake was beautiful, dry and had no hands, unlike the grad students.

Some friends and I went down there about once a month. That was the only time I saw Jerry, except when he was rescuing me.

There stood Jerry wearing a raincoat and carrying one of those big golf umbrellas. In one hand he held a yellow slicker and in the other, I swear, rain boots. I was very happy to see him. I asked how he had known where I was. He said that he just figured it out. I donned the rain gear and he walked me to my dorm. I thanked him profusely. He kissed me on the forehead and left.

I lost track of Jerry after we graduated. I have missed him over the years. We all need a guardian angel sometime. I have never figured why he was so attached to me. Was he just a nice guy? Was he a stalker? Was he in love with me? I just don't know.

*The Siskiyou Writers' Club is a local group of people who have a passion for creative writing of all genres. They meet monthly, generally the last Thursday of the month at varying locations in Siskiyou County. This story was written by Mary Ellen Rock and was the club's choice for publication this month. If you use a writer, or have an interest in creative writing, you are invited to join the next meeting Thursday, July 30, at 5:30 p.m. at the Dunsmuir Botanical Garden. For more information call Bob Kaster (530) 598-5204, email segnagenariansspeaks@gmail.com; or Mike Grifantini, (530) 710-4882, email mcgrifantini@att.net*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:
PG&E CORPORATION,
- and -
PACIFIC GAS AND ELECTRIC COMPANY,
Debtors.

Bankruptcy Case No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

...

MIKE, GOTTHAL & MANGES LLP
KELLER BENWENUTTI KIM LLP

---

WHEREAS, the Board of Supervisors has determined that it is necessary and appropriate to submit a ballot measure to the voters in the Zone for the adoption of an increase in the special property tax previously approved by the voters.

NOW THEREFORE THE BOARD OF SUPERVISORS OF THE COUNTY OF SISKIYOU RESOLVES AS FOLLOWS:

SECTION I. Authority. This resolution is adopted pursuant to Government Code Section 25215.2, Government Code Section 50075, et seq, and Articles XIII A and XIII C of the California Constitution.

SECTION II. Title. This Resolution may be cited as "The Greater McCloud Fire and Emergency Response Zone Special Tax Resolution of 2020."

SECTION III. Proposal. It is proposed that a special tax measure be submitted to the voters in the Greater McCloud Fire and Emergency Response Zone, Siskiyou County, in accordance with Government Code Section 50075, et seq, and Article XIII(A) of the California Constitution. The special tax would replace that special tax currently in effect. If this measure is defeated, the original, current existing special tax will remain in place.

SECTION IV. Parcel Defined. "Parcel" as used herein shall refer to a legal parcel. A legal parcel shall mean a parcel of land legally separated from all adjoining parcels under the provisions of the California Subdivision Map Act.

SECTION V. Rate to be Charged as a Special Tax. There shall be levied on each parcel within the Greater McCloud Fire and Emergency Response Zone a special tax as follows:

Improved parcels: $93.79 each
Unimproved parcels: $66.20 each (first and second unimproved parcels)
$24.83 each (next third and fourth unimproved parcels)
$8.28 each (five or more parcels)
Example: An owner of five unimproved parcels would pay $190.34 ($66.20 + $66.20 + $24.83 + $24.83 + $8.28).

Thereafter, said special tax shall be increased each year for the first ten years by any amount not to exceed the Consumer Price Index, all urban consumers, U.S. City Average, as measured in the month of April each year, over that same index that had not exceed 3% in any given year. Said special tax shall not be levied on any property belonging to the State or Federal governments or any local governmental agency. Property on the Board roll is subject to the special tax.

For purposes of this Resolution, "improved parcels" shall be defined to mean those parcels on either the secured or unsecured roll having an improvement value of more than Three Thousand Dollars ($3,000.00). "Unimproved parcels" shall be defined to mean those parcels on either the secured or unsecured roll having an improvement value of less than Three Thousand Dollars ($3,000.00).

SECTION VI. Levy of Charge. The Board of Supervisors finds and declares that this is a special tax and not an ad valorem tax. Further, the Board finds and declares that the most expedient way to levy and collect this special tax is on a parcel basis as set forth above.

SECTION VII. Method of Collection. This special tax, if confirmed by the voters, shall appear as a separate item on the tax bill. The special tax shall be collected at the same time and in the same manner as ordinary County ad valorem taxes and shall be subject to the same penalties and the same procedure and sale in the case of delinquency as provided for such ad valorem taxes. All laws applicable to the levy, collection, and enforcement of County ad valorem property taxes shall be applicable to such tax, except if for the first year such tax is levied, the real property to which such tax relates has been transferred or conveyed to a bona fide purchaser for value, or if a lien of a bona fide encumbrancer for value has been created and and attached thereon prior to the date on which the first installment of such taxes would become delinquent, the tax confirmed pursuant to this Resolution will not result in a lien against such property, but instead shall be transferred to the unsecured roll for collection.

SECTION VIII. Purpose of Special Tax. The express purpose for which this special tax is levied is to establish a stable source of funds for the Greater McCloud Fire and Emergency Response Zone of County Service Area No. 4 to obtain, furnish, operate, and maintain fire protection and suppression equipment, apparatus, and related services and equipment for the Greater McCloud Fire and Emergency Response Zone. Any funds collected from the special tax levied pursuant to this Resolution shall be expended only for such services. Any unexpended funds raised by the special tax for any one year or years shall roll over and can be used for the same purposes in the next fiscal year. No funds provided by this Resolution shall be used for any purpose other than those stated herein. This special tax shall not cause any reduction in any other allocation of tax revenue to the Greater McCloud Fire and Emergency Response Zone or County Service Area No. 4 voting on such proposal. However, nothing herein will prevent the Board of Supervisors from lowering or eliminating such special tax upon a majority vote of their board and/or hearing on such proposal.

SECTION XI. Publication. This Resolution shall be published once in the Mt. Shasta Herald, a newspaper of general circulation, printed and published in County Service Area No. 4 in accordance with Government Code Section (15) days after passage hereof.

SECTION XIII. Severability. If any section, subsection, sentence, clause, or phrase of this Resolution is for any reason held to be unconstitutional or otherwise unlawful, such decision shall not affect the validity of the remaining portions of this Resolution. The Board of Supervisors hereby declares that it would have passed this Resolution and each section, subsection, sentence, clauses, or phrases thereof, irrespective of the fact that any one or more of the other sections, subsections, clauses or phrases be declared unconstitutional or unlawful.

SECTION XIV. Accountability Measures.

A. Account. Upon the levy and collection of the special tax imposed by this resolution, an account shall be created into which the proceeds of the tax shall be deposited.

B. Annual Report. An annual report that complies with the requirements of Government Code section 50075.3 shall be filed with the Board of Supervisors no later than January 1 of each year.

WHEREFORE, BE IT RESOLVED BY THE BOARD OF SUPERVISORS OF THE COUNTY OF SISKIYOU acting for and on behalf of the Greater McCloud Fire and Emergency Response Zone of County Service Area No. 4, that the following measure be placed on the ballot for the November 3, 2020 election, and ...

SHALL THE GREATER MCCLOUD FIRE AND EMERGENCY RESPONSE ZONE OF COUNTY SERVICE AREA NO. 4 LEVY AN ANNUAL SPECIAL PARCEL TAX OF $93.79 FOR IMPROVED PARCELS, $66.20 FOR THE FIRST TWO UNIMPROVED PARCELS, $24.83 FOR THE THIRD AND FOURTH UNIMPROVED PARCELS, AND $8.28 FOR THE FIFTH AND MORE UNIMPROVED PARCELS, SUBJECT TO AN ANNUAL COST OF LIVING INCREASE FOR THE FIRST 10 YEARS NOT TO EXCEED THREE PERCENT (3%) FOR EACH OF THOSE YEARS, FOR FUNDING FIRE AND EMERGENCY RESPONSE SERVICES, COLLECTING AN ESTIMATED ...

YES _____ NO _____

PASSED AND ADOPTED this 7th day of July, 2020, by the following vote:

AYES: Supervisors Criss, Haupt, Valenzuela and Kobseff
NOES: None
ABSENT: Supervisor Nixon
ABSTAIN: None

/s/ Michael N. Kobseff
MICHAEL N. KOBSEFF, Chair
Board of Supervisors
ATTEST: LAURA BYNUM, CLERK
Board of Supervisors
By: s/ Wendy Winningham
Deputy

#8746 MSHN PUB. JULY 15, 2020

**Exhibit X**



# PARADISE POST

PO Drawer 70
Paradise, CA 95967
530-877-4413
3809751
legals@paradisepost.com

PG&E CORPORATION
77 BEALE STREET
SAN FRANCISCO, CA 94177

Legal No. **0006501021**

## Declaration of Publication

State of California
County of Butte

That at all times herein mentioned Declarant is and was a resident of said county of Butte over the age of twenty-one years; not a party to nor interested in the within matter; that Declarant is now and was at all times herein mentioned the Legal Clerk of the Paradise Post, a newspaper published twice a week, which said newspaper was adjudged a newspaper of general circulation on November 12, 1946, by Superior Court Order No. 22262 as entered in Book 30 Page 223 of said Court; and that said newspaper is printed and published every Wednesday and Saturday.

**07/15/2020**

and such publications was made in the regular issues of said paper (and not in any supplemental edition or extra thereof).

07/15/2020

_Signature_

_____
Signature

r.BP6-12/01/15

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case |
| **PG&E CORPORATION,** | No. 19-30088 (DM) |
| - and - | Chapter 11 |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Lead Case) |
| Debtors. | (Jointly Administered) |

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

PLEASE TAKE NOTICE that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole source* of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the *sole source* of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

**a.** commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

**b.** enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

**c.** creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;

**d.** asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

**e.** taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed

by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, **no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease**, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP

2

## TECHNOLOGY

# Demand for robot cooks rises as kitchens combat COVID-19

**By Dee-Ann Durbin and Terence Chea**
*The Associated Press*

HAYWARD, CALIFORNIA » Robots that can cook — from flipping burgers to baking bread — are in growing demand as virus-wary kitchens try to put some distance between workers and customers.

Starting this fall, the White Castle burger chain will test a robot arm that can cook french fries and other foods. The robot, dubbed Flippy, is made by Pasadena, California-based Miso Robotics.

White Castle and Miso have been discussing a partnership for about a year. Those talks accelerated when COVID-19 struck, said White Castle Vice President Jamie Richardson.

Richardson said the robot can free up employees for other tasks like disinfecting tables or handling the rising number of delivery orders. A touch-free environment that minimizes contact is also increasingly important to customers, he said.

"The world's just reshaped in terms of thoughts around food safety," Richardson said.

Flippy currently costs $30,000, with a $1,500 monthly service fee. By the middle of next year, Miso hopes to offer the robot for free but charge a higher monthly fee.

Robot food service was a trend even before the coronavirus pandemic, as hospitals, campus cafeterias and others tried to meet demand for fresh, customized options 24 hours a day while keeping labor costs in check. Robot chefs appeared at places like Creator, a burger restaurant in San Francisco, and Dal komm Coffee outlets in South Korea.

Now, some say, robots may shift from being a novelty to a necessity. The U.S. Centers for Disease Control says the risk of getting COVID-19 from handling or consuming food outside the home is low. Still, there have been numerous outbreaks among restaurant employees and patrons.

"I expect in the next two years you will see pretty significant robotic adoption in the food space because of COVID," said Vipin Jain, the co-founder and CEO of Blendid, a Silicon Valley startup.

Blendid sells a robot kiosk that makes a variety of fresh smoothies. Customers can order from a smartphone app and tweak the recipe if they want more kale or less ginger, for example. Once or twice a day, a Blendid employee refills the ingredients.

Only a handful are now operating around San Francisco, but since the pandemic began, Blendid has

started contract discussions with hospitals, corporations, shopping malls and groceries.

"What used to be forward-thinking — last year, pre-COVID — has become current thinking," Jain said.

As salad bars shut down, Hayward, California-based Chowbotics started getting more inquiries about Sally, a robot about the size of a refrigerator that makes a variety of salads and bowls. Sally lets customers choose from 22 prepared ingredients stored inside the machine. It can make around 65 bowls a day before kitchen workers need to refill the ingredients.

Prior to this year, Chowbotics had sold around 125 of its $35,000 robots, primarily to hospitals and colleges. But since the coronavirus hit, sales have jumped more than 60%, CEO Rick Wilmer said, with grow-

ing interest from grocery stores, senior living communities and even the U.S. Department of Defense.

Wilkinson Baking Co., whose BreadBot mixes, forms and bakes loaves of bread, has also been getting more inquiries. Randall Wilkinson, the CEO of the Walla Walla, Washington-based company, said the BreadBot serves shifting needs. Grocery shoppers no longer want self-serve options like olive bars, but they still want fresh and local food. Seeing how that food is made also gives them more confidence, he said.

Robot cooks haven't always been successful. Spyce, a Boston restaurant with a robot-run kitchen, closed in November to retool its menu. Zume, a Silicon Valley startup that made pizzas with robots, shut down its pizza business in January. It's now making face masks

and biodegradable takeout containers.

Max Elder, research director of the Food Futures Lab at the Palo Alto, California-based Institute for the Future, is skeptical about the future of food prep robots once the pandemic has eased.

"Food is so personal, and it needs to involve humans," he said.

Elder is also concerned that focusing on automating food preparation during the pandemic will shift attention from other problems in the food system, like outbreaks among meat industry workers or produce pickers.

"We can't automate our way out of the pandemic because the pandemic affects much more than what can be automated," Elder said.

Robots can lower the demand for labor. At the University of Arkansas for Medical Sciences in Little Rock, workers used to spend six hours per day prepping grab-and-go salads in the 24-hour cafe, said Tonya Johnson, the school's director of nutrition services. But two years ago, the campus installed a Sally, which now makes an average of 40 salads per day. Sally allowed the school to eliminate a vacancy in its cooking staff, Johnson said.

Johnson said the campus is buying another Sally for students to use when they return this August, which will save four hours per day of grab-and-go salad prep in the college deli.

"I think the pandemic has made us realize how much we need more equipment like Sally," Johnson said.



A technician makes an adjustment to a robot at Miso Robotics' White Castle test kitchen in Pasadena on Thursday.

MISO ROBOTICS

## Legal Notices

**ADVERTISEMENT TO BIDDERS**

NOTICE IS HEREBY GIVEN THAT THE BOARD OF TRUSTEES OF THE PARADISE UNIFIED SCHOOL DISTRICT, of the County of Butte, State of California, will receive up to and no later than **Wednesday, August 05, 2020 at 2:00 p.m.** sealed bids for the award and contract for the furnishing of all labor, materials, transportation, and services required for the construction of the **Tennis Courts & Parking Lot** project and such bids shall be received at the office of the **Paradise Unified School District, 6696 Clark Road, Paradise, CA 95969**, and shall be opened and publicly read aloud at the above stated time and place.

A mandatory bidders' conference will be held on **Friday, July 24, 2020 at 9:00a.m.** at Paradise High School located at **5911 Maxwell Drive, Paradise, CA 95969**. Meet in parking lot along Maxwell Drive.

Each Bid must conform and be responsive to this invitation, the Instructions to Bidders, and the Contract Documents. Documents for this project may now be obtained from:

Valley Contractors Exchange
951 E 8th Street
Chico, CA 95928
(530) 343-1994

Each Bid shall be accompanied by a certified cashier's check or bid bond made in favor of the Board of Trustees, Paradise Unified School District, executed by the bidder as principal and an admitted surety company as surety. All bonds for this project must be issued by an Admitted Surety, an insurance organization authorized by the Insurance Commissioner to transact business of Insurance in the State of California during this business year, in an amount not less than ten percent (10%) of the maximum amount of the bid. The check or bid bond shall be given as guarantee that the bidder shall execute the

contract if it be awarded to him in conformity with the Contract Documents and shall provide the surety bond as specified therein within five (5) days after notification of the award of the contract to bidder.

It shall be mandatory upon the Contractor to whom a contract is awarded, and upon all subcontractors under him, to pay not less than the general prevailing rates of per diem wages to all workmen in the execution of the contract. Pursuant to the provisions of the California State Labor Code, and Local Laws thereto applicable, the said Board of Trustees has ascertained the prevailing rate of wages in the locality where this work is to be performed, for each craft and/or type of workman or mechanic needed to perform the work of this contract. General Prevailing Wage Rates shall be those rates pertaining to Butte County as published by the Department of Industrial Relations (DIR) pursuant to California Labor Code, Part 7, Chapter 1, Article 2, Sections 1770, 1773, and 1773.1.

Copies of the Prevailing Wage Schedules may be obtained from the Division of Labor Statistics and Research, P.O. Box 420603, San Francisco, CA 94101, or www.dir.ca.gov/dlsr/pwd.

Each contractor and subcontractor must be registered with DIR prior to submitting a bid.

The bidder awarded this contract may elect to receive 100% of payments due under the contract from time to time without retention of any portion of the payment by the public agency, by depositing securities of equivalent value with the public agency in accordance with the provisions of the Public Contract Code.

The Paradise Unified School District reserves the right to reject any or all bids or waive any defect or irregularity in bidding.
7/15, 7/22/2020

## Legal Notices

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:
PG&E CORPORATION,
- and -
PACIFIC GAS AND ELECTRIC COMPANY,
Debtors.

Bankruptcy Case
No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

PLEASE TAKE NOTICE that:

1. The Plan and Confirmation Order. On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court") entered an order [Docket No. 8053] (the "Confirmation Order") confirming the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. The Plan Effective Date. The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. Plan Binding. The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the sole source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the sole source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all holders of Fire Victim Claims held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.
a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed

by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).
b. Pursuant to Section 8.2(c) of the Plan and Paragraph 32 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "Cure Dispute"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court. [...]

c. Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.
a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a Proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court. [...]

7. Plan Supplement.
i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;
ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and
iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court on the later of (i) July 1, 2020, or (ii) the date of the applicable addition. [...]

8. Certain Documents. The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website http://www.canb.uscourts.gov. A PACER password and log-in are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.
Dated: July 2, 2020

WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP

Para más detalles llame al 1-800-660-6789 • 詳情請致電 1-800-893-9555

## NOTICE OF PACIFIC GAS AND ELECTRIC COMPANY'S REQUEST TO CHANGE RATES FOR THE RECOVERY OF ENERGY PURCHASES AND THE CALIFORNIA CLIMATE CREDIT FOR 2021 (A.20-07-002)

**Acronyms you need to know**
PG&E: Pacific Gas and Electric Company
CPUC: California Public Utilities Commission
ERRA: Energy Resource Recovery Account

**SUMMARY**
On July 1, 2020, PG&E filed its 2021 ERRA Forecast application with the CPUC requesting approval to change rates for the following:
• Recovery of approximately $2.8 billion in costs related to the generation of electricity, including fuel and buying energy from third parties to serve bundled customer load
• Setting certain charges for bundled and departing load customers for the recovery of the above-market portion of PG&E's portfolio, which are included in the Power Charge Indifference Adjustment (PCIA), Ongoing Competition Transition Charge (CTC) and Cost Allocation Mechanism (CAM)
• Compliance with government mandates recovered through the Tree Mortality Non-Bypassable Charge (TMNBC)

As part of this application, PG&E customers will also receive the California Climate Credit. The credit will be applied twice a year, in April 2021 and October 2021, for residential electric customers and once a year, in April 2021, for residential gas customers.

**BACKGROUND**
The ERRA is used to record fuel and purchased power costs that can be recovered in customer rates. While this may result in a change in rates, PG&E recovers these costs with no markup for return or profit. The purpose of this application is to forecast costs of obtaining energy for customers and to approve the amount to be returned to customers from the sale of greenhouse gas emission allowances for the 2021 calendar year.

If the CPUC approves this application, PG&E will begin to recover its costs in electric rates effective January 1, 2021. At the end of 2021, PG&E will compare actual costs to the amounts forecasted in this application and will incorporate any differences in next year's application.

**HOW WILL THE APPLICATION AFFECT ELECTRIC RATES?**
Most customers receive bundled electric service from PG&E, meaning they receive electric generation, transmission and distribution services. This information includes the California Climate Credit for residential customers and greenhouse gas allowance returns for eligible nonresidential customers.

Based on rates currently in effect, the bill for a typical residential customer using 500 kWh per month would increase from $127.45 to $128.42, or 0.8%. Actual impacts will vary depending on energy usage. Detailed rate information will be sent directly to customers in a bill insert.

Direct Access and Community Choice Aggregation customers only receive electric transmission and distribution services from PG&E. PG&E does not purchase energy for these customers. However, as mentioned above, this application addresses recovery of certain costs incurred before their departure.

These customers also receive the benefit of the California Climate Credit. In addition, eligible nonresidential DA and CCA customers receive the benefit of the greenhouse gas allowance returns. The impact of PG&E's application on these customers is an average increase of 2.3%.

Another category of nonbundled customers is Departing Load. These customers do not receive electric generation, transmission or distribution services from PG&E. However, these customers are required to pay certain charges by law or CPUC decision. The impact of PG&E's application on these customers is an average decrease of -3.3%.

Exact amounts are subject to change and to CPUC regulatory approval. PG&E will update its rate request in August 2020 and will provide the CPUC with updated amounts later in the year to ensure the most current information is used to set customer rates.

**CPUC PROCESS**
This application will be assigned to a judge, who will consider proposals and evidence presented during the formal hearing process. The judge will issue a proposed decision which may adopt PG&E's application, modify it or deny it. Any CPUC Commissioner may sponsor an alternate decision. The proposed decision, and any alternate decisions, will be discussed and voted upon by the CPUC Commissioners.

The Public Advocates Office is currently reviewing this application. The Public Advocates Office is the independent consumer advocate within the CPUC with a statutory mandate to represent customers of investor-owned utilities to obtain the lowest possible rate for service consistent with safe, reliable service and the state's environmental policy goals. For more information, please call 415-703-1584, email PublicAdvocatesOffice@cpuc.ca.gov or visit PublicAdvocates.cpuc.ca.gov.

**WHERE CAN I GET MORE INFORMATION?**

**CONTACT PG&E**
If you have questions about PG&E's filing, please contact PG&E at 1-800-743-5000. For TTY, call 1-800-652-4712.

If you would like a copy of the filing and exhibits, please write to the address below:
Pacific Gas and Electric Company
2021 ERRA Forecast Application (A.20-07-002)
P.O. Box 7442
San Francisco, CA 94120

**CONTACT CPUC**
You may also get information about this proceeding by contacting the CPUC.
• If you would like to make a comment, please visit cpuc.ca.gov/A2007002Comment to submit a comment on the CPUC Docket Card. You can also review other public comments related to this rate request.
• If you have questions about CPUC processes, you may contact the CPUC's Public Advisor's Office.

**Email:** Public.Advisor@cpuc.ca.gov
**Mail:** CPUC
Public Advisor's Office
505 Van Ness Avenue
San Francisco, CA 94102
**Call:** 1-866-849-8390 (toll-free)
For TTY, call 1-866-836-7825 (toll-free)

Please reference 2021 ERRA Forecast Application (A.20-07-002) in any communications you have with the CPUC regarding this matter.

*Legal Notices* (repeated column headers)

Visit the Paradise Post online at:
**www.paradisepost.com**

**Exhibit Y**

`California Newspaper Service Bureau®
Public Notice Advertising Since 1934
Tel 1-800-788-7840 • Fax 1-800-474-9444
Local Offices and Representatives in:
Los Angeles, Santa Ana, San Diego, Riverside/San Bernardino,
San Francisco, Oakland, San Jose, Santa Rosa, Sacramento
Special Services Available in Phoenix

## DECLARATION

I am a resident of Los Angeles County, over the age of eighteen years and not a party to any or interested in the matter noticed.

The notice, of which the annexed is a printed copy appeared in the:

### SAN FRANCISCO EXAMINER

On the following dates:

### July 15, 2020

I certify (or declare) under penalty of perjury that the foregoing is true and correct.

Dated at Los Angeles, California, this

__15__ day of _____July_____ __2020__

Signature

### 3378779

*"The only Public Notice which is justifiable
from the standpoint of true economy and the public interest,
is that which reaches those who are affected by it"*

Rev. 11/09 Daily Journal Corporation, 915 East First Street, Los Angeles, CA 90012



# PUBLIC NOTICES

SAN FRANCISCO EXAMINER • DALY CITY INDEPENDENT • SAN MATEO WEEKLY • REDWOOD CITY TRIBUNE • ENQUIRER-BULLETIN • FOSTER CITY PROGRESS • MILLBRAE • SAN BRUNO SUN • BOUTIQUE & VILLAGER

San Matto County: 650-556-1556  
E-mail: zoriegals@sfexaminer.com

San Francisco: 415-314-1836  
E-mail: sfcegals@sfexaminer.com

---

**UNITED STATES BANKRUPTCY COURT**  
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

In re:  
**PG&E CORPORATION,**  
— and —  
**PACIFIC GAS AND ELECTRIC COMPANY,**  
Debtors.

Bankruptcy Case  
No. 19-30088 (DM)  
Chapter 11  
(Lead Case)  
(Jointly Administered)

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

PLEASE TAKE NOTICE that:

*(extensive multi-paragraph bankruptcy confirmation notice text)*

---

## BULK SALES

**NOTICE OF BULK SALE**  
(subject to Com. C. §6106.2)  
The following debtor(s) and designation(s) shall apply in the Notice without regard to number or gender:  
SELLER: Mayebi Chiar, Tiffany M. Lam, Fong Fong Katie Lau

11441 Eastbrook Ave., Los Altos, CA 94024  
BUYER: Sek Khvann Chea or Assignee  
3130 Alpine Road, #284, Portola Valley, CA 94028  
BUSINESS: KONDITOREI  
3130 Alpine Road, #284, Portola Valley, CA 94028  
DATE OF CONSUMMATION: July 31, 2020  
LAST DAY TO FILE CLAIMS: July 30, 2020  
ESCROW HOLDER: WILLIAM DUNN ESCROW, INC., 1350 Del Avenue, Suite 204, Campbell, CA 95008  
Notice is hereby given that Seller intends to make a bulk

---

## CIVIL

**ORDER TO SHOW CAUSE FOR CHANGE OF NAME**  
Case No. 20CIV02581  
Superior Court of California, County of SAN MATEO  
Petition of: CAROLINE JANE C BATAC filed a petition with this court for a decree changing names as follows:  
CAROLINE JANE C BATAC to CAROLINE JANE BATAC  
The Court orders that all persons interested in this matter appear before this court at the hearing indicated below to show cause, if any, why the petition for change of name should not be granted.  
Any person objecting to the name changes described above must file a written objection that includes the reasons for the objection at least two court days before

---

**ORDER TO SHOW CAUSE FOR CHANGE OF NAME**  
Case No. 20CIV02613  
Superior Court of California, County of SAN MATEO  
Petition of: ROSA M. ARGALUZA for Change of Name  
TO ALL INTERESTED PERSONS:  
Petitioner ROSA M. ARGALUZA filed a petition with this court for a decree changing names as follows:  
ROSA M. ARGALUZA to ROSA M. PISSANI MEDINA  

---

## FICTITIOUS BUSINESS NAMES

**FICTITIOUS BUSINESS NAME STATEMENT**  
File No. A-0291064-00  
Fictitious Business Name(s):  
METTLE HEALTH, 279 HILLSIDE AVE, MILL VALLEY, CA 94941 County of Marin  
Registered Owner(s):  
CDI CONSULTING, INC. (DEL) 279 HILLSIDE AVE, MILL VALLEY, CA 94941  
This business is conducted by: A CORPORATION  

---

**FICTITIOUS BUSINESS NAME STATEMENT**  
File No. 282452  
The following person(s) is (are) doing business as:  
SHIOK SINGAPORE KITCHEN, 1137 CHESTNUT STREET, MENLO PARK, CA 94061, County of SAN MATEO  
SEW LIANG TAN, 541 FOX CT W, REDWOOD CITY, CA 94061  

---

**ORDER TO SHOW CAUSE FOR CHANGE OF NAME**  
Case No. 20CIV02472  
Superior Court of California, County of SAN MATEO  
Petition of: MARIA CONSUELO MARZAN MENDOZA for Change of Name

# PUBLIC NOTICES

San Mateo County: 650-556-1556 — E-mail: smlegals@sfmediaco.com   San Francisco: 415-314-1835 — E-mail: sflegals@sfmediaco.com

San Francisco Examiner • Daly City Independent • San Mateo Weekly • Redwood City Tribune • Enquirer-Bulletin • Foster City Progress • Millbrae - San Bruno Sun • Boutique & Villager

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case |
| PG&E CORPORATION, | No. 19-30088 (DM) |
| - and - | Chapter 11 |
| PACIFIC GAS AND ELECTRIC COMPANY, | (Lead Case) |
| Debtors. | (Jointly Administered) |

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

PLEASE TAKE NOTICE that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order (Docket No. 8053) (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the sole source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the sole source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

a. **commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;**

b. **enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;**

c. **creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;**

d. **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and**

e. **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.**

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed

or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, **no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease**, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP

---

## BULK SALES

**NOTICE OF BULK SALE**
**(subject to Com. C. 6106.2)**
The following definitions and designations shall apply in this Notice without regard to number or gender:
SELLER: Mayshi Chiar, Tiffany M. Lam, Fong Fong Katie Lau
11441 Eastbrook Ave., Los Altos, CA 94024
BUYER: Sok Khvann Chea or Assignee
3130 Alpine Road, #284, Portola Valley, CA 94028
BUSINESS: KONDITOREI
3130 Alpine Road, #284, Portola Valley, CA 94028
DATE OF CONSUMMATION: July 31, 2020
LAST DAY TO FILE CLAIMS: July 30, 2020
BUSINESS WILL CONTINUE AT: WILLIAM DUNN ESCROW, INC., 1350 Dell Avenue, Suite 204, Campbell, CA 95008
Notice is hereby given that Seller intends to make a bulk

sale of the assets of the above described Business to Buyer including all stock in trade, furniture, and equipment used in said Business, to be consummated at the office of the Escrow Holder at the time of consummation or thereafter. Creditors of the Seller may file claims with the Escrow Holder on or before the last day to file claims stated above. This sale is subject to California Commercial Code 6106.2. Seller has used the following other business names and addresses within the last three years so far as known to Buyer: None
Sok Khvann Chea
BY: WILLIAM DUNN ESCROW, INC.
Agent for Buyer - Susan Berry, Pres.
7/15/20
SFPEN-3379781#
**EXAMINER & SAN MATEO WEEKLY**

---

## CIVIL

**ORDER TO SHOW CAUSE**
**FOR CHANGE OF NAME**
Case No. 20CIV02501
Superior Court of California, County of SAN MATEO
Petition of: CAROLINE JANE C BATAC for Change of Name
TO ALL INTERESTED PERSONS:
Petitioner CAROLINE JANE C BATAC filed a petition with this court for a decree changing names as follows:
CAROLINE JANE C BATAC to CAROLINE JANE BILAL
The Court orders that all persons interested in this matter appear before this court at the hearing indicated below to show cause, if any, why the petition for change of name should not be granted. Any person objecting to the name changes described above must file a written objection that includes the reasons for the objection at least two court days before

the matter is scheduled to be heard and must appear at the hearing to show cause why the petition should not be granted. If no written objection is timely filed, the court may grant the petition without a hearing.
Notice of Hearing:
Date: 08/28/2020, Time: 9:00 A.M., Dept.: PJ, Room: N/A
The address of the court is 400 COUNTY CENTER, REDWOOD CITY, CA 94063
A copy of this Order to Show Cause shall be published at least once each week for four successive weeks prior to the date set for hearing on the petition in the following newspaper of general circulation, printed in this county: EXAMINER BOUTIQUE & VILLAGER
Date: JUNE 30, 2020

JONATHAN E. KARESH
Judge of the Superior Court
7/15, 7/22, 7/29, 8/5/20
NPEN-3379839#
**EXAMINER - BOUTIQUE & VILLAGER**

**ORDER TO SHOW CAUSE**
**FOR CHANGE OF NAME**
Case No. 20CIV02501
Superior Court of California, County of SAN MATEO
Petition of: ROSA M. ARGALLIZA for Change of Name
TO ALL INTERESTED PERSONS:
Petitioner ROSA M. ARGALLIZA filed a petition with this court for a decree changing names as follows:
ROSA M. ARGALLIZA to ROSA M. PISSANI MEDINA
The Court orders that all persons interested in this matter appear before this court at the hearing indicated below to show cause, if any, why the petition for change of name should not be granted. Any person objecting to the name changes described above must file a written objection that includes the reasons for the objection at least two court days before the matter is scheduled to be heard and must appear at the hearing to show cause why the petition should not be granted. If no written objection is timely filed, the court may grant the petition without a hearing.
Notice of Hearing:
Date: 8/6/20, Time: 9:00 AM, Dept.: PJ,
The address of the court is 400 COUNTY CENTER, REDWOOD CITY, CA 94063, SOUTHERN BRANCH
A copy of this Order to Show Cause shall be published at least once each week for four successive weeks prior to the date set for hearing on the petition in the following newspaper of general circulation, printed in this county: THE EXAMINER
Date: JUN 23, 2020
LELAND DAVIS, III
Judge of the Superior Court
7/1, 7/8, 7/15, 7/22/20
SPEN-3376274#
**EXAMINER & SAN MATEO WEEKLY**

**ORDER TO SHOW CAUSE**
**FOR CHANGE OF NAME**
Case No. 20CIV02472
Superior Court of California, County of SAN MATEO
Petition of: MARIA CONSUELO MARZAN MENDOZA for Change of Name
TO ALL INTERESTED PERSONS:
Petitioner MARIA CONSUELO MARZAN MENDOZA filed a petition with this court for a decree changing names as follows:
MARIA CONSUELO MARZAN MENDOZA to MARIKO MARZAN MENDOZA
The Court orders that all persons interested in this matter appear before this court at the hearing indicated below to show cause, if any, why the petition for change of name should not be granted. Any person objecting to the name changes described above must file a written objection that includes the reasons for the objection at least two court days before the matter is scheduled to be heard and must appear at the hearing to show cause why the petition should not be granted. If no written objection is timely filed, the court may grant the petition without a hearing.
Notice of Hearing:
Date: 8/18/2020, Time: 9:00 AM, Dept.: PJ,
The address of the court is 400 COUNTY CENTER, ATTN: CIVIL - ROOM A,

REDWOOD CITY, CA 94063, SOUTHERN BRANCH
A copy of this Order to Show Cause shall be published at least once each week for four successive weeks prior to the date set for hearing on the petition in the following newspaper of general circulation, printed in this county: THE EXAMINER
Date: JUN 16, 2020
JONATHAN E. KARESH
Judge of the Superior Court
7/1, 7/8, 7/15, 7/22/20
SPEN-3376220#
**EXAMINER & SAN MATEO WEEKLY**

---

## FICTITIOUS BUSINESS NAMES

**FICTITIOUS BUSINESS NAME STATEMENT**
File No. A-0391004-00
Fictitious Business Name(s):
METTLE HEALTH, 279 HILLSIDE AVE, MILL VALLEY, CA 94941 County of Marin
Registered Owner(s):
CDL CONSULTING, INC. (DE), 279 HILLSIDE AVE, MILL VALLEY, CA 94941
This business is conducted by: A CORPORATION
The registrant commenced to transact business under the fictitious business name or names listed above on 06/17/2020.
I declare that all information in this statement is true and correct. (A registrant who declares as true any material matter pursuant to Section 17913 of the Business and Professions code that the registrant knows to be false is guilty of a misdemeanor punishable by a fine not to exceed one thousand dollars ($1,000).)
S/ BJ MILLER, PRESIDENT
This statement was filed with the County Clerk of San Francisco County on 07/07/2020.
NOTICE-In accordance with Subdivision (a) of Section 17920, a Fictitious Name Statement generally expires at the end of five years from the date on which it was filed in the office of the County Clerk, except, as provided in Subdivision (b) of Section 17920, where it expires 40 days after any change in the facts set forth in the statement pursuant to Section 17913 other than a change in the residence address of a registered owner. A new Fictitious Business Name Statement must be filed before the expiration. The filing of this statement does not of itself authorize the use in this state of a Fictitious Business Name in violation of the rights of another under federal, state, or common law (See Section 14411 et seq., Business and Professions Code).
7/15, 7/22, 7/29, 8/5/20
CNS-3379305#
**SAN FRANCISCO EXAMINER**

**FICTITIOUS BUSINESS NAME STATEMENT**
File No. 284522
The following person/s is (are) doing business as:
HIDDEN SPOT, 303 GRAND AVE. S. SAN FRANCISCO, CA 94080, County of SAN MATEO
HIDDEN LLC, 303 GRAND AVE. S. SAN FRANCISCO, CA 94080
CALIFORNIA LLC
This business is conducted by: A LIMITED LIABILITY COMPANY
The registrant(s) commenced to transact business under the fictitious business name or names listed above on APRIL 1, 2020
I declare that all information in this statement is true and correct. (A registrant who declares as true any material matter pursuant to Section 17913 of the Business and Professions Code that the registrant knows to be false is guilty of a misdemeanor punishable by a fine not to exceed one thousand dollars ($1,000).)
S/ MICHAEL J. QUACH (OFFICER)
This statement was filed with the County Clerk of San Mateo County on JUN 10, 2020
Mark Church, County Clerk HENRY SALGADO, Deputy Clerk
ORIGINAL, 7/1, 7/8, 7/15, 7/22/20
NPEN-3376434#
**EXAMINER - BOUTIQUE & VILLAGER**

**FICTITIOUS BUSINESS NAME STATEMENT**
File No. A-0390976-00
Fictitious Business Name(s):
PAPAVER, 5005 DIAMOND HEIGHTS BLVD, SAN FRANCISCO, CA 94131 County of San Francisco
Registered Owner(s):
LAMAR GASKINS, 5005 DIAMOND HEIGHTS BLVD,

SAN FRANCISCO, CA 94131
This business is conducted by: AN INDIVIDUAL
The registrant commenced to transact business under the fictitious business name or names listed above on 06/04/2020
I declare that all information in this statement is true and correct. (A registrant who declares as true any material matter pursuant to Section 17913 of the Business and Professions code that the registrant knows to be false is guilty of a misdemeanor punishable by a fine not to exceed one thousand dollars ($1,000).)
S/ LAMAR GASKINS
This statement was filed with the County Clerk of San Francisco County on 07/02/2020.
NOTICE-In accordance with Subdivision (a) of Section 17920, a Fictitious Name Statement generally expires at the end of five years from the date on which it was filed in the office of the County Clerk, except, as provided in Subdivision (b) of Section 17920, where it expires 40 days after any change in the facts set forth in the statement pursuant to Section 17913 other than a change in the residence address of a registered owner. A new Fictitious Business Name Statement must be filed before the expiration. The filing of this statement does not of itself authorize the use in this state of a Fictitious Business Name in violation of the rights of another under federal, state, or common law (See Section 14411 et seq., Business and Professions Code).
7/15, 7/22, 7/29, 8/5/20
CNS-3379305#
**SAN FRANCISCO EXAMINER**

**FICTITIOUS BUSINESS NAME STATEMENT**
File No. 284557
The following person/s is (are) doing business as:
1. Amouta, 2. Amouta Cafe, 3. Amoura Restaurant, 713 Linden Ave, South San

Francisco, CA 94080 County of SAN MATEO
Shihadeh Investments, 598 Baden Ave, South San Francisco, CA 94080
This business is conducted by a Corporation
The registrant(s) commenced to transact business under the fictitious business name or names listed above on March , 06 , 2009.
I declare that all information in this statement is true and correct. (A registrant who declares as true any material matter pursuant to Section 17913 of the Business and Professions code that the registrant knows to be false is guilty of a misdemeanor punishable by a fine not to exceed one thousand dollars ($1,000).)
Shihadeh Investments
S/ Bassam Shihadeh, President
This statement was filed with the County Clerk of San Mateo County on 06/17/2020.
Mark Church, County Clerk Henry Salgado, Deputy Clerk Renewal Filing
7/8, 7/15, 7/22, 7/29/20
NPEN-3376375#
**EXAMINER - BOUTIQUE & VILLAGER**

**FICTITIOUS BUSINESS NAME STATEMENT**
The following person(s) is (are) doing business as:
SHION SINGAPORE KITCHEN, 1137 CHESTNUT STREET, MENLO PARK, CA 94061, County of SAN MATEO
SEW LIANG TAN, 541 FOX CT W, REDWOOD CITY, CA 94061
This business is conducted by AN INDIVIDUAL
The registrant(s) commenced to transact business under the fictitious business name or names listed above on N/A
I declare that all information in this statement is true and correct. (A registrant who declares as true any material matter pursuant to Section 17913 of the Business and Professions Code that the registrant knows to be false is guilty of a misdemeanor punishable by a fine not to exceed one thousand dollars ($1,000).)
S/ SEW LIANG TAN
This statement was filed with the County Clerk of San Mateo County on JUN 10, 2020
Mark Church, County Clerk MARIA P. PEREZ, Deputy Clerk
REFILE
7/8, 7/15, 7/22, 7/29/20
NPEN-3376242#
**EXAMINER - BOUTIQUE & VILLAGER**

**FICTITIOUS BUSINESS NAME STATEMENT**
File No. 284586
The following person/s is (are) doing business as:
SUPERIOR BODY SHOP, 956 BRANSTEN RD, SAN CARLOS, CA 94070, County of SAN MATEO
AHO ENTERPRISES, INC., 956 BRANSTEN ROAD, SAN CARLOS, CA 94070
CA CORPORATION
This business is conducted by A CORPORATION
The registrant(s) commenced to transact business under the fictitious business name or names listed above on JAN 1, 2000
I declare that all information in this statement is true and correct. (A registrant who declares as true any material matter pursuant to Section 17913 of the Business and Professions code that the registrant knows to be false is guilty of a misdemeanor punishable by a fine not to exceed one thousand dollars ($1,000).)
S/ HARRI AHO, OWNER/ SECRETARY
AHO ENTERPRISES, INC.
This statement was filed with the County Clerk of San Mateo County on JUN 19, 2020
Mark Church, County Clerk HENRY SALGADO, Deputy

Case: 19-30088    Doc# 8470    Filed: 07/21/20    Entered: 07/21/20 17:39:57    Page 94 of 110

## Exhibit Z

# AFFIDAVIT OF PUBLICATION

**In The Matter Of:** **CHAPTER 11 BANKRUPTCY**

**Advertisement for – PG&E**

This is to certify that the above advertising appeared on page A13

Newspaper name: **SISKIYOU DAILY NEWS**

On (Dates) 07/15/20

Signature
Robert J Ramey

# COS hoops players McClendon and Thomas sign with four year schools





**By Bill Choy**

WEED – Two College of the Siskiyous men's basketball sophomores recently signed with four-year schools.

Dwayne McClendon signed with NAIA program Cumberland University of Cumberland, Tennessee, while Bishop Thomas signed with Park University, an NAIA school located in Gilbert, Arizona.

McClendon, a forward from Hammond, Indiana, averaged 15.8 points and six rebounds per game last season, and was a two-time all-conference selection in the Golden Valley Conference. He led the GVC in scoring as a freshman.

Thomas, a point guard from Chico, averaged 8.5 points, 5.3 assists, and four rebounds per game. He was an All-Conference selection as a freshman and led the GVC in

assists in his to seasons with the Eagles.

"Both of these guys came in and worked hard and earned everything they got from day one," COS head men's basketball coach Kyle Heath said. "Very happy for them that they got a scholarship and get to continue their education and careers at the next level."

Heath added that both were key players for the Eagles and will be very hard to replace.

"I'm sad I don't get to coach them ever again but also happy and proud to be a small part of their stories," he said. "I know they'll both be successful at the next level and with whatever they do in life."

Heath also said that McClendon was a leader that competed every day.

"He was a scholar athlete both his seasons as well," Heath said. "Very coachable

and liked and respected by all his teammates. He's what I would hope/wish for in every player in our program."

On the court, Heath said that Dwayne was a player that could score anywhere on the floor. He shot nearly 40 percent from 3-point range in his time at COS and was an 80% free-throw shooter.

Thomas was also a leader on the court for COS, Heath said. "He had a knack for coming up big when we needed him the most."

"He's the type of young man who other people gravitate towards," Heath said. "Typical of most good point guards. Off the court a great kid too. Went to class never had any issues off the court. Another kid I wish I could have in my program every year."

College of the Siskiyous men's basketball players Bishop Thomas, above, and Dwayne McClendon, below, signed with four-year schools.

CONTRIBUTED PHOTOS





## MADE OF PIXELS, NOT PAPER!

EXACTLY AS IT APPEARS IN PRINT
EASY TO NAVIGATE

## $24.99 E-EDITION SUBSCRIPTION SPECIAL!

## LEGAL NOTICES

Continued from A11

the County to use electronic records, electronic signatures, and digital signatures to the fullest extent allowed by law, and does not limit the County's ability to use electronic records, electronic signatures, or digital signatures "in any way."

SECTION II: Constitutionality
If any section, subsection, sentence, clause or phrase of this ordinance is for any reason held to be unconstitutional, such decision shall not affect the validity of the remaining portion of this ordinance. The Board of Supervisors hereby declares that it would have passed this ordinance and each section, subsection, sentence, clause or phrase thereof, irrespective of the fact that any one or more sections, subsections, sentences, clauses or phrases be declared unconstitutional.
SECTION III: This ordinance shall become effective 30 days after its passage and shall, within 15 days of adoption, be published once in a newspaper or general circulation, printed and published in the County of Siskiyou.
PASSED AND ADOPTED this 7th day of July, 2020 at a regular meeting of the Board of Supervisors by the following vote:
AYES: Supervisors Criss, Haupt, Valenzuela, and Kobseff
NOES: NONE
ABSENT: Supervisor Nixon
ABSTAIN: NONE
ATTEST: LAURA BYNUM, CLERK, BOARD OF SUPERVISORS
NEWS#11023 PUB. JULY 15, 2020

### LEGAL NOTICE
### NOTICE OF ELECTION AND DATE FIXED FOR BALLOT ARGUMENTS FOR OR AGAINST MEASURE #
### GRENADA FIRE PROTECTION DISTRICT

A RESOLUTION OF THE BOARD OF DIRECTORS OF THE GRENADA FIRE PROTECTION DISTRICT REQUESTING EXPRESSING LIMITATIONS UNDER ARTICLE XIIIB OF THE STATE OF CALIFORNIA CONSTITUTION.
NOTICE IS HEREBY GIVEN by Laura Bynum, County Clerk, County of Siskiyou, that an election will be held in the Grenada Fire Protection District in Siskiyou County on November 3, 2020. The following questions will be submitted to the qualified voters of the Grenada Fire Protection District:
MEASURE I
Shall the Grenada Fire Protection District be allowed to maintain the current spending limit pursuant to Article 13B of the California Constitution of an amount not to exceed $50,000 for a period from the last election for the next four years?
YES _____ NO _____
NOTICE is further given that based upon the time reasonable necessary to prepare and print the arguments and sample ballot booklets for said election, the County Clerk's Office has fixed 4:00 p.m., July 31, 2020, as a reasonable date prior to the election after which no arguments for or against measure may be submitted for printing and distribution to voters. Arguments for and against this measure are limited to 300 words or less. All arguments must be submitted to the Siskiyou County Clerk's Office, 510 N. Main Street, Yreka, CA 96097, phone (530) 842-8084. Arguments may be withdrawn or changed up to and including the time and date set forth as the deadline for filing.
NOTICE is further given that specific requirements for submitting arguments are provided in the Siskiyou County Guide for Submitting Arguments and Rebuttal for Local Measures, which is available on the County Elections website and the Siskiyou County Clerk's Office at the above-listed address.
NOTICE is further given that if arguments are submitted both for and against the proposed measure, the authors may prepare and submit rebuttal arguments not to exceed 250 words. The County Clerk's Office has fixed 4 p.m., August 14, 2020 as the deadline for submission of rebuttals if such is required.
NOTICE is further given that the public examination period for analysis and arguments at August 17, 2020 through August 28, 2020.
NOTICE IS FURTHER GIVEN that the polls at said election will be open from 7:00 a.m. until 8:00 p.m.
Dated: July 10, 2020 s/Laura Bynum, County Clerk
NEWS#11025 PUB. JULY 15, 2020

Filing No.: 2020-47-228
FILED: Siskiyou County
July 7, 2020
Laura Bynum, Clerk
By:
D. Daw, Deputy Clerk
Filing Fee: $37.00 - For first business name on statement.
$2.00 - For each additional business name filed on same statement and doing business at the same location.
$2.00 - For each additional owner in excess of one owner.

### FICTITIOUS BUSINESS NAME STATEMENT

The following person (persons) is (are) doing business as: Etna Professional Building, 311 Collier Way, Etna CA, 96027; Siskiyou County.
2. P.O. Box 219, Etna CA, 96027
Registered Owner(s): Sari Sommarstrom, 3404 Forest Lane, Etna CA, 96027.
This business is being conducted by: An Individual
The registrant commenced to transact business under the fictitious business name or names listed above on: 07/01/2020
I DECLARE THAT ALL INFORMATION IN THIS STATEMENT IS TRUE AND CORRECT. A REGISTRANT WHO DECLARES AS TRUE ANY MATERIAL MATTER PURSUANT TO THIS SECTION THAT THE REGISTRANT KNOWS TO BE FALSE IS GUILTY OF A CRIME.
/s/ Sari Sommarstrom
Print: Sari Sommarstrom

This statement was filed with the County Clerk of Siskiyou County on date indicated by filed stamp above.
NOTICE – In accordance with subdivision (a) of Section 17920, a Fictitious Business Name Statement generally expires at the end of five years from the date on which it was filed in the office of the county clerk, except, as provided in subdivision (b) of Section 17920, where it expires 40 days after any change in the facts set forth in the statement pursuant to Section 17913 other than a change in the registered owner. A new Fictitious Business Name Statement must be filed before the expiration.
The filing of this statement does not of itself authorize the use in this state of a fictitious business name in violation of the rights of another under federal, state or common law. (See Section 14411 et seq. Business and Professions Code).
I hereby certify that this copy is a correct copy of the original statement on file in my office.
LAURA BYNUM, County Clerk
NEWS#11027 PUB. JULY 15, 22,29; AUG. 5, 2020

### STATEMENT OF ABANDONMENT OF USE OF FICTITIOUS BUSINESS NAME

The person(s) listed below have abandoned the use of the following fictitious business name(s):
1. Etna Office Building,
311 Collier Way,
Etna CA, 96027
2. P.O. Box 219,
Etna CA, 96027
(530) 467-5783
The fictitious business name was filed in SISKIYOU COUNTY on 04/07/2006
File Number:
2020-47-227
1. Sari Sommarstrom,
3404 Forest Lane,
Etna CA, 96027;
2. Jacie Leary,
210 Valley Pines Road,
Etna CA, 96027
THIS BUSINESS WAS CONDUCTED BY a General Partnership
I declare that all information in this statement is true and correct. (A registrant who declares as true information which he or she knows to be false is guilty of a crime.)
s/Sari Sommarstrom

This Statement was filed with the County Clerk of Siskiyou County on JULY 7, 2020.
LAURA BYNUM, CLERK
BY: ENDORSED: D. Daw, Deputy Clerk
File Number:
2020-47-227
NEWS#11026 PUB. JULY 15,22,29; AUG. 5, 2020

### PUBLIC NOTICE
### PUBLIC SALE

Notice is hereby given that pursuant to Section 21700 and 21716 of the Business and Professions Code, State of California, the undersigned will sell at public sale by competitive bidding on July 30, 2020 at 11:00 a.m. in the premises where said property has been stored and which are located at WEED MINI STORAGE UNITS, Shastina Drive, City of Weed, County of Siskiyou, State of California, the goods, collaterals, or personal property described below.
• In the matter of Aaron Davis
Main items in storage #53 - Unit contains boxes, decorations, kitchenware.
NEWS#11016 PUB. JULY 15,22, 2020

### PUBLIC NOTICE
### NOTICE OF REQUEST FOR PROPOSALS

The Gazelle Elementary School District (District) is issuing this RFP requesting Statements of Proposals from contractors qualified to provide to the District proper services for the following: Entire Exterior Facility Painting Project, General Fund at Gazelle Elementary School.
District will receive proposals for the Entire Exterior Facility Painting Project up to, but not later than Friday, August 7, at 5:00 p.m. Such proposals shall be received at the District Office, 20304 Gazelle-Callahan Road, Gazelle CA, 96034.
Each proposal must conform and be responsible to this invitation and the specifications contained therein, which are available by emailing krysel@gazelle.k12.ca.us or at the District Office located at 20305 Gazelle-Callahan Road, Gazelle CA, 96034, (530) 435-2321.
Bidders will need to provide DIR number in order to be considered for award of this Bid.
The District reserves the right to reject any or all bids, to waive any irregularities or informalities in the bids or the bidding process.
Jami Thomas, Superintendent
Gazelle Elementary School District
NEWS#10999 PUB. JULY 15, 2020

# Exhibit AA

Case: 19-30088    Doc# 8470    Filed: 07/21/20    Entered: 07/21/20 17:39:57    Page 98 of 110

# *Affidavit of Publication*

*No.*

{        Miller Advertising Agency, Inc.
           220 West 42nd Street, 12th Floor
           New York, NY 10036

{

STATE OF CALIFORNIA
          SS.
COUNTY OF TRINITY

Wayne R. Agner of the said County, being duly sworn, deposes and says:

That he is and at all times herein mentioned was a citizen of the United States, over the age of twenty-one years and that he is not a party to, nor interested in the above entitled matter;

That he is the publisher of The Trinity Journal, a newspaper of general circulation published in the Town of Weaverville, County of Trinity, and which newspaper at all times herein mentioned had and still has a bona fide subscription list of paying subscribers, and which newspaper has been established, printed and published at regular intervals in the said Town of Weaverville, County of Trinity, for a period exceeding one year next preceding the date of publication of the notice hereinafter referred to; and which newspaper is not devoted to nor published for the interests, entertainment or instruction of a particular class, profession, trade, calling, race, or denomination, or any number of same; that the notice, of which the annexed is a printed copy, has been published in each regular and entire issue of said newspaper and not in any supplement thereof on the following dates, to wit:

July 15, 2020

I hereby certify under penalty of perjury that the foregoing is true and correct. Executed at Weaverville, California, on the 15th day of July 2020.

*Wayne R. Agner*
**WAYNE R. AGNER**
Publisher

---

## AFFIDAVIT OF PUBLICATION OF

### ROP PUBLIC NOTICE
### "PG&E Corporation"

### BY TRINITY JOURNAL

*Please See Attachment*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case |
| **PG&E CORPORATION,** | No. 19-30088 (DM) |
| - and - | Chapter 11 |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Lead Case) |
| Debtors. | (Jointly Administered) |

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

PLEASE TAKE NOTICE that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole* source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the *sole* source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

a. The Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

b. Pursuant to Paragraph 32d. of the Confirmation Order:

i. The Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file the amendments to the Schedule of Rejected Contracts as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

# McIntosh appointed to Planning Commission

BY SALLY MORRIS
THE TRINITY JOURNAL

The Trinity County Planning Commission was joined last week by a new member representing District 4 following a special meeting of the Trinity County Board of Supervisors to appoint Junction City resident Duncan McIntosh as the choice of District 4 Sup. Jeremy Brown.

The board's vote was unanimous during the July 8 special meeting continuing the item from the day before when at least one supervisor voiced concern about a last-minute change in the agenda that initially named a different nominee and provided backup information only on that person, Charis Stockwell of Burnt Ranch.

Sup. Brown announced he had received an application from McIntosh after the agenda was posted for the board's July 7 regular meeting, and he was changing his nominee from Stockwell to McIntosh.

The five-member Planning Commission is comprised of volunteers representing each of the supervisorial districts. Their terms run concurrently with the supervisors who nominate them, though appointment is subject to approval by the Board of Supervisors.

McIntosh is replacing Richard Hoard of Junction City who was nominated by former District 4 Sup. Bill Burton in 2017. Hoard resigned from the position in June, saying he had been asked to do so by Sup. Brown, citing a conflict of interest.

During the board's special meeting July 8, Burton called in to say he had attempted to recruit McIntosh to serve on the commission when he was in office, but the timing wasn't right.

"Everything he has done and worked with in the county has been super strong. Because of all his participation, he has strong institutional knowledge. I'm really glad he has the opportunity now. He knows the ropes and what's going on," Burton said.

In his application for the position, McIntosh indicated that he holds a bachelor's degree in business administration/accounting from Humboldt State University and his employment background includes landscape design/implementation; farm and business management; and consulting.

He is currently Grange Master at the North Fork Grange where he's been a member/volunteer for four years. He is also a member of the Junction City Volunteer Fire Department, volunteers for Junction City Elementary School field trips and presentations on gardening and beekeeping, and was a founding member of Trinity Farms for Compliance, a local advocacy group for cannabis regulations.

The appointment was effective immediately, enabling McIntosh to assume the role in time for the July 9 Planning Commission meeting.

TONY REED | THE TRINITY JOURNAL

## *Not on the fence about masks*

**With temps in the 90 to 100 range this past week, even this fence lizard decided to come down and hang out on the rocks near Canyon Creek north of Junction City. However, without a mask, it decided to scurry when the camera got about six feet away. Be like a fence lizard — keep your distance when recreating outdoors and wear a mask if you have to get close.**

# Virtual livestock auction, show approved

BY TONY REED
THE TRINITY JOURNAL

Although the Trinity County Fair is a no-go this year, its Junior Livestock Show and Auction is moving forward, with the recent approval of the County Environmental Health Department. According to Fair CEO Carrie Bayley, the event will take place July 28 through Aug. 2. However, it will be a bit different, featuring an online livestock show.

The Fair Board of Directors voted to cancel the fair at its last meeting, citing concerns about COVID-19 and the cost to sanitize the fairgrounds and monitor everyone who enters. However, with the much smaller show and auction, such measures will be in place.

"Exhibitors and two household members will be allowed to show their animals, masks will be required if social distancing cannot be maintained," according to information provided by Bayley. "Sanitation will be done hourly on all touch surfaces, additional porta potties and handwashing stations will be available to help with personal hygiene, no food or beverages will be provided or sold."

The Auction is slated for 2 p.m. on Aug. 1 and will also be done virtually, but those who cannot do so may attend the auction in person. Kids will be able to show the animals in a live stream on the Fair's Facebook page, where more information will be posted soon.

"We would like to thank the Trinity County Jr. Livestock Committee for their hard work to get this plan approved, and the Trinity County Health Department for their support of our Jr. Livestock Exhibitors who are mainly children under the age of 18," Bayley said in an email. "We look forward to a safe and successful Jr. Livestock Show and Sale."

The Fair Board meets again on Thursday, July 16, via teleconference and further details will follow.

# *Forest Service releases assessment of current conditions of Northwest forests*

The U.S. Department of Agriculture's Forest Service has released a Bioregional Assessment evaluating the social, economic and ecological conditions and trends covering 19 units across Washington, Oregon and Northern California in what it calls a brief and easy-to-understand format.

The assessment uses the best available science and focuses on capturing current conditions and changes on the national forests and grasslands. It provides recommendations on how the Forest Service could address the challenges facing forests, grasslands and communities in the plans that govern how land management decisions are made.

"The release of this assessment gives our region the data and scientific analysis to make future well-informed, landscape-level decisions that benefit our six northern forests," said Randy Moore, regional forester for the Pacific Southwest Region in California. "Furthermore, we're now able to move forward and prepare for updating land management plans to provide essential commodities and recreational opportunities, manage and reduce risk from wildfires through vegetative management and other proactive landscape efforts, provide clean air, water and habitat for plants and animals, and preserve our cultural resources, for present and future generations."

The Forest Service and other federal land management agencies are required by law to develop plans that guide the long-term management of public lands. These plans are developed using public input and the best available science. They establish priorities for land managers and provide strategic direction for how the plan area is to be managed for a period of ten years or more. They may be periodically amended or revised entirely to address changing conditions or priorities.

"This assessment will make it more efficient to modernize our land management plans and reflect the new science, and changes to social, economic, and ecological conditions across this region," said Glenn Casamassa, regional forester for the Pacific Northwest Region in Oregon and Washington. "It will also preserve the tenets of the Northwest Forest Plan that are working well, so that work can continue effectively and efficiently."

The Northwest Forest Plan covers nearly 25 million acres of federally managed land in Oregon, Washington and Northern California focusing on managing the entire landscape for long-term social and economic stability.

The Bioregional Assessment is not a decision document and does not impact current forest management. Instead, it will be used to shape ongoing engagement with stakeholders, state, county, Tribal governments and Forest Service staff as they prepare for the next steps in the planning process.

More information on Modernizing Forest Plans in the Northwest is available online at www.fs.usda.gov/detail/r6/landmanagement/?cid=stelprd3831710 or through a GovDelivery email subscription.

# Free online commercial cannabis permitting workshop July 22

The California Department of Fish and Wildlife, California Department of Food and Agriculture's CalCannabis Cultivation Licensing Division and State Water Resources Control Board are hosting a free online commercial cannabis cultivation permitting workshop.

The free workshop is ideal for new and existing commercial cannabis cultivators and consultants. Those interested in attending can use the link below to watch the webcast -- no registration is required.

Closed captions will be provided. Questions may be submitted in advance of and during the event by sending an email to askcannabis@wildlife.ca.gov with "Cannabis Webcast" as the subject line. Questions not answered during the webcast will be forwarded to the appropriate agency for a response.

Workshop Details: Wednesday, July 22, from 9 to 11 a.m.

Webcast link: https://video.calepa.ca.gov/

CalCannabis will provide an overview of the state's cannabis cultivation licensing program and review their requirements for commercial cannabis farming. CDFW will cover permitting, using the online notification system (EPIMS) and how to reduce environmental impacts. The State Water Board will review the cannabis policy, permitting process and other important information. Other regulatory agencies will also present.

For more information about becoming a licensed commercial cannabis farmer and for an overview of the California Cannabis Track-and-Trace METRC System, visit the CalCannabis website at calcannabis.cdfa.ca.gov, call 1-833-CALGROW (1-833-225-4769) or send an email to calcannabis@cdfa.ca.gov.

To report suspected illegal cannabis cultivation or related complaints, call the CalCannabis toll-free hotline: 1-833-WEED-TIP (1-833-933-3847).

# Bill introiduced to eradicate illegal marijuana grows on public lands

Congressman Jared Huffman, D-San Rafael, issued the following statement after he and Reps. Doug LaMalfa (CA-01), Salud Carbajal (CA-24), Hal Rogers (KY-05), TJ Cox (CA-21), and Doug Lamborn (CO-05) introduced the Protecting Lands Against Narcotics Trafficking (PLANT) Act. This legislation provides resources to help local, state, and federal law enforcement eradicate illegal marijuana grows on public lands and establishes a fund to restore land that has been damaged by illegal cultivation activities.

In 2018, local, state, and federal officials completed a year-long illegal marijuana eradication effort known as Operation Forest Watch. The effort resulted in the seizure of 82 firearms, 638,370 plants, and more than 103,603 pounds of trash, pesticides and chemicals. The most concerning finding was the fact that 89 percent of sites were confirmed to have traces of carbofuran or methamidophos, pesticide components that are prohibited in the U.S.

"Trespass marijuana grows are increasing throughout my district and the U.S., making forests and other public lands unsafe for working and recreation, threatening endangered wildlife, and contaminating rivers and streams," said Congressman Huffman, who represents the "Emerald Triangle" of Mendocino, Humboldt and Trinity counties.

"As state laws evolve to promote safe and legal marijuana growing operations, it's important that we address the immediate threat to public safety and the environment posed by illegal trespass grows. Building on the success of our bipartisan PLANT Act of 2013, this new legislation provides local authorities with the tools needed to not only eradicate illegal grows, but effectively clean up the damage done."

"Our public lands are being abused and held hostage by drug traffickers with large-scale grow operations often run by international cartels. Marijuana legalization efforts in many states have done nothing to reduce the number of illegal trespass grows," Congressman LaMalfa said. "Not only is this a clear danger to the public, but it is also harmful to the environment. Illegal pesticides, illegal water diversions, and the killing of animals has created immeasurable damage. The PLANT Act helps support efforts to combat these illegal grow sites while creating a fund to restore the damaged land. Law enforcement is ill-equipped to safely clean up these grows, but this bill gives them the resources to do it. I thank my colleagues for their support on this bill to eradicate these illegal grows and make our public lands a safer place for both wildlife and recreators."

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION,**<br>**- and -**<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.** | Bankruptcy Case<br>No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered) |

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

**PLEASE TAKE NOTICE** that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date**. The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding**. The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole* source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the *sole* source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

**a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;**

**b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;**

**c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;**

**d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and**

**e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.**

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes**.

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "**Cure Dispute**"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts**.

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, **no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease**, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d. of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications**. Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

Case: 19-30088 Doc# 8470 Filed: 07/21/20 Entered: 07/21/20 17:39:57 Page 101 of 110

**Exhibit BB**

Case: 19-30088   Doc# 8470   Filed: 07/21/20   Entered: 07/21/20 17:39:57   Page 102 of 110

# PROOF OF PUBLICATION

## Modoc County Record
P.O. Box 531
Alturas, CA 96101
(530) 233-2632

State of California
County of Modoc

I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years; I am not a party to or interested in the notice published.
I am the publisher of the *Modoc County Record*, a newspaper of general circulation, printed and published weekly in the City of Alturas, County of Modoc.
The *Modoc County Record* has been adjudged a newspaper of general circulation by the Superior Court of the County of Modoc, State of California, under the date of July 30, 1958, Case Number 6356.
The notice of which the annexed is a printed copy, has been published in each regular and entire issue of said newspaper and not in any supplement thereof on the following dates, to wit:

## July 16th,

All in the year 2020.
I certify (or declare) under the penalty of perjury that the following is true and correct:

Dated in Alturas, California this

**16th** day of **July,** 2020.

**Page 1 of 2**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:  
PG&E CORPORATION,  
- and -  
PACIFIC GAS AND ELECTRIC COMPANY,  
Debtors.

Bankruptcy Case  
No. 19-30088 (DM)  
Chapter 11  
(Lead Case)  
(Jointly Administered)

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

**PLEASE TAKE NOTICE** that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court") entered an order [Docket No. 8053] (the "Confirmation Order") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION.** In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole* source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the *sole* source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as *provided* in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claims.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject

filed by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "Cure Dispute"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

a. **Pursuant** to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

WEIL, GOTSHAL & MANGES LLP  
KELLER BENVENUTTI KIM LLP

Published in the *Modoc County Record* on July 10, 2020.

# MODOC COUNTY RECORD

# LEGAL NOTICES

## continued from page 13

---

## NOTICE TO CREDITORS OF BULK SALE AND OF INTENTION TO TRANSFER ALCOHOLIC BEVERAGE LICENSE(S)

(UCC 6101 et seq. and B & P 24073 et seq.)

**Escrow No: 14507-6211075**

Notice is hereby given that a bulk sale of assets and a transfer of alcoholic beverage license(s) is about to be made. The names and addresses of the Seller/Licensee are: Bhupinder Singh, 463-050 Janesville Grade A, Janesville, Ca 96114.

The business is known as: Janesville Chevron

The names and addresses of the Buyers/Transferee are Lassen Petroleum LLC, P.O. Box 10412, Zephyr Cove, NV 89448

As listed by Seller/Licensee, all other business names and addresses used by the Seller/Licensee within three years before the date such list was sent or delivered to the Buyer/

Transferee are: Name: None Address: N/A

The assets to be sold are described in general as: Gas Station with Mini Mart and are located at: 463-050 Janesville Grade A, Janesville, California 96114.

The kind of license(s) to be transferred is(are): 21-Off Sale General, now issued for the premises located at: 463-050 Janesville Grade A, Janesville, California 96114.

The anticipated date of the sale/transfer is July 22, 2020, at the office of First American Title Company, 1010 White Rock Road, Ste 300, El Dorado Hills, CA 95762.

[The bulk sale is subject to Section 6106.2 of California commercial Code. ALL CLAIMS TO BE SENT C/O First American Title Company, 14507-6211075 1010 White Rock Road, Ste 300, El Dorado Hills, CA 95762. The last date for filing claims shall be July 21, 2020.]

The amount of the purchase price or consideration in connection with the transfer of the license and business, including the estimated inventory, is the sum of $2,450,000.00, which consists of the following:

Description Amount
Cash $
Checks$
Promissory Notes $
Tangible and/or intangible property $

It has been agreed between the Seller/Licensee and the Intended Buyer/Transferee, as required by Section 24073 of the Business and Professions Code, that the consideration for the transfer of the business and license(s) is to be paid only after the transfer has been approved by the Department of Alcoholic Beverage Control.

Dated: 6/17/2020

SELLER/ LICENSEE
/S/Bhupinder Singh
BUYER/TRANSFEREE
Lassen Petroleum LLC, a California limited liability company

/s/By: Baldev Songh Bains
Name: Baldev Singh Bains
Title: It's Managing Member
7/16/20
CNS-3379706#

**MODOC COUNTY RECORD**
Published in the *Modoc County Record* on July 16, 2020.

---

## LEGAL NOTICE ORDER TO SHOW CAUSE FOR CHANGE OF NAME

**CASE NUMBER: CU-20-108**

TO ALL INTERESTED PERSONS: **Petitioner: James Richard Gabel** filed a petition with this court for a decree changing names as follows: **Present name: James Richard Gabel** to **Proposed name: Jaime Ruben Rocha**.

THE COURT ORDERS that all persons interested in this matter shall appear before this court at the hearing indicated below to show cause, if any, why the petition for change of name should not be granted. Any person objecting to the name changes described above must file a written objection that includes the reasons for the objection at least two court days before the matter is scheduled to be heard and must appear at the hearing to show cause why the petition should not be granted. If no written objection is timely filed, the court may grant the petition without a hearing.

**NOTICE OF HEARING**
Date: **August 24, 2020** at **Time: 10:00 a.m.**

---

**Department 1**

The address of the court is **Superior Court of California**, County of Modoc, 205 South East Street, Alturas, CA 96101.

A copy of this Order to Show Cause shall be published at least once each week for four successive weeks prior to the date set for hearing on the petition in the following newspaper of general circulation, printed in this county: Modoc County Record.

Date: July 8, 2020

**/s/ Judge Barclay**, Judge of the Superior Court.

This statement was filed with the **Modoc Superior Court on July 8, 2020.**

Published in the *Modoc County Record* on July 16, 23, 30 and August 6, 2020.

---

## PUBLIC HEARING NOTICE

The City Council of the City of Susanville will hold a public hearing to solicit comments on Resolution No. 20- 5797 Setting Rates, Fees and Policies for the Natural Gas Utility

The public hearing will be held on **Wednesday, August 5, 2020** at **4:00 p.m.** in Jensen Hall at the Lassen County Fair Grounds 195 Russel Avenue, Susanville. The public is invited to attend and provide oral and/ or written comments. Written comments must be received at 66 North Lassen Street, Susanville, CA 96130-3904 at, or prior

to the meeting time and date. During the public hearing the City Council shall hear and consider all objections, if any to the setting of rates, fees and policies for the natural gas utility.

Published in the *Modoc County Record* on July 16, 2020.

---

## MODOC COUNTY BOARD OF SUPERVISORS LEGAL NOTICE

NOTICE IS HEREBY GIVEN that assessment protests for 2020 may be filed with the Modoc County Clerk of the Board of Supervisors at the Courthouse, 204 S. Court Street, Alturas, CA 96101, from July 2, 2020 to November 30, 2020.

Forms for requesting hearings before the County Board of Equalization are now available in the Clerk of the Board office. The hearings for each application will be scheduled in advance and each applicant will be provided with Notice of Hearing setting time and date for hearing his/her particular application.

**T. Martinez**
Clerk of the Board

Published in the *Modoc County Record* on July 16, 2020.

Legals continued on page 15

---

Eugene B. Chittock, SBN 214532
LAW OFFICES OF EUGENE B. CHITTOCK
100 South Lassen Street
Susanville, CA 96130No
Telephone: (530) 257-9351
Facsimile: (530) 257-9359 By:

Filing Fee Required
Filed; **July 01, 2020**
By: Kim Gallagher
Deputy Clerk

Attorney for Plaintiff Lassen Municipal Utility District.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LASSEN**

LASSEN MUNICPAL UTILITY DISTRICT, Filed;

*Plaintiffs,*

*v.*

KERRINE F. BUSBY; DOES 1-10, *Defendants.*

Case No.: 62710

**ORDER FOR PUBLICATION OF SUMMONS**

This Court has read and considered the application of plaintiff, Lassen Municipal Utility District, for an order directing service of the summons on defendant Kerrine F. Busby by publication, and the evidence presented in support of the application, and it appears to the satisfaction of the Court that Defendant cannot be served with reasonable diligence in any other manner set forth in Code of Civil Procedure sections 415.10 through 415.30. The Court also finds that Defendant is a necessary party to this matter and is subject to the jurisdiction of this Court.

THEREFORE, IT IS ORDERED that:

Service of the summons in this action on defendant Kerrine F. Busby shall be accomplished by publication in the MODOC COUNTY RECORD, a newspaper published in the State of California, and is designated as the newspaper most likely to give actual notice to the defendant.

The publication shall be made once a week for four weeks.

If defendant's address is ascertained prior to the expiration of the time prescribed for publication of the summons, a copy of the summons and complaint and of the order for publication shall immediately be Personally Served.

Service is deemed complete on the 28th day following the first day of publication. Defendant then has 30 days in which to file a responsive pleading (i.e., a total of 58 days from the first date of publication). For purposes of filing a proof of service of summons and delay reduction rules, the Court grants plaintiff a time extension to effect service of process in accordance with this order.

This order does not preclude service upon defendant Kerrine F. Busby in any other manner specified in Code of Civil Procedure sections 415.10 through 415.30, which service supersedes the service by publication.

DATED: **July 1, 2020**

/s/ _____
JUDGE OF THE SUPERIOR COURT

Published in the *Modoc County Record* on July 16, 23, 30 and August 6, 2020.

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION
PG&E CORPORATION, -and -
PACIFIC GAS AND ELECTRIC COMPANY, Debtors.

Bankruptcy Case No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

[long bankruptcy notice text in multiple columns]

WEIL, GOTSHAL & MANGES LLP
KELLER BENVENUTTI KIM LLP

Published in the *Modoc County Record* on July 16, 2020.

---

## NOTICE TO CONTRACTORS

Sealed proposals will be received by Newell County Water District, 405 5th Street Newell, Ca 96134 until 2:00 PM, August 20, 2020 at which time they will be publicly opened and read in **Newell County Water District Board Room**, for performing work in accordance with the Plans and Specifications, therefor as follows:

**Newell County Water District**

**NEWELL SEWER COLLECTION ,PUMPING STATION, and LAGOON IMPROVEMENTS**

Bids are required for the entire work as described herein:

This is a rebid of this work. It has been redesigned by reducing pipe minimum cover and reducing pipe slope.

At the lagoon site, regrade the percolation bed site, in the lagoon, working 1 at a time, remove existing rip rap, remove dried sludge and haul and spread at nearby disposal area, prepare lagoon interior for liner, install a liner in each lagoon cell, remove and install new outlet structures and cross piping for each lagoon, remove and replace inlet valving, furnish and install gravel entrance area.

At the townsite, the work shall consist of video inspection of existing sewer ; furnishing and installing a maximum of **13,598** feet of sanitary sewer and appurtenances ; **4,332** feet of sewer force main, a sewage pumping station and related items, a sewage comminutor, demolition and removal of 2 sewage pumping stations, and demolition of old manholes and cleanouts.

The bid proposal is divided into a Base bid and Alternatives. Bidders must bid all schedules. The Base bid comprises the bulk of the work, but omits much of the new sewer. The new sewer installation is mostly in the alternatives. The District will award the contract to the bidder whose bid maximizes available funds.

The foregoing quantities are approximate only, being given as a basis for the comparison of bids and Newell County Water District does not expressly or by implication agree that the actual amount of work will correspond therewith, but reserves the right to increase or decrease the amount of any class or portion of the work in accordance with the General Contract Provisions, or to omit portions of the work, as may be deemed necessary or expedient by the Engineer. Newell County Water District provides Contract Documents for projects electronically and free of charge via the internet at www.ciplist.com. This site is the only approved location for prospective bidders to obtain official Contract Documents. NO HARD COPY CONTRACT DOCUMENTS WILL BE AVAILABLE FOR PURCHASE. A courtesy copy for viewing purposes only will be available at the Newell County Water District office.

It is the responsibility of each prospective bidder to verify the completeness of their printed Contract Documents prior to submitting bid and accompanying executed addenda acknowledgment forms. The Newell County Water District does not assume any liability of responsibility for defective or incomplete copying, excerpting, scanning, faxing, downloading or printing of the Contract Documents. Be advised without notice to prospective bidders. It is the responsibility of each prospective bidder to check ciplist.com on a daily basis through the date and time of bid opening for any applicable addenda or updates.

No bid will be considered unless it is made on the blank forms inserted in the Contract Documents and unless it is accompanied by a Bid Guarantee in the form of cash, bid bond, certified check, or cashier's check made payable to Newell County Water District in an amount equal to ten percent (10%) of the bid amount. Each bidder must be licensed as required by law. The Newell County Water District reserves the right to reject any or all bids.

All contractors and subcontractors shall possess appropriate Contractor's Licenses for their trade at the time the contract is awarded. Each proposal shall be submitted in a sealed envelope bearing the title of the work – Newell Sewer Collection and Pumping Station Improvements and the name of the bidder.

The Contractor shall be permitted to substitute authorized securities under Public Contract Code Section 22300 for any monies withheld by the District to ensure performance under this contract.

The Newell County Water District hereby notifies all bidders that it will affirmatively insure that in any contract entered into pursuant to this advertisement that Disadvantaged Business Enterprises will be afforded full opportunity to submit bids in response to this invitation and will not be discriminated against on the grounds of race, color, or national origin in consideration for an award.

The Contractor must pay State of California prevailing wage rates or Davis-Bacon rates, whichever is higher. Copies of the current California prevailing wage rates are available on DIR's website https://www.dir.ca.gov/OPRL/2020-1/PWD/Northern.html.

Davis-Bacon rates can be found at: https://beta.sam.gov/wage-determination/ca20200007/6?index=wd&is active=true&date filter index=0&date rad selection=dat e&wdType=dbra&construction type=Heavy&state=CA&county=16339&page=1

**David B. Hammond**
District Engineer
Published in the *Modoc County Record* on July 16, 2020.

**Exhibit CC**

## PROOF OF PUBLICATION

(2015.5 C.C.P.)

STATE OF CALIFORNIA

County of Humboldt

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years, and not a party to or interested in the above-entitled matter, I am the editor and publisher of THE FERNDALE ENTERPRISE, a newspaper of general circulation, printed and published weekly in the City of Ferndale, County of Humboldt, and which newspaper has been adjudged a newspaper of general circulation by the Superior Court of the County of Humboldt, State of California, under the date of June 27, 1952, Consolidated Case Number 26961, that the notice, of which the annexed is a printed copy (set in type not smaller than nonpareil), has been published in each regular and entire issue of said newspaper and not in any supplement thereof on the following dates, to-wit;

7/16

all in the year 19 __2020__

I certify (or declare) under penalty of perjury that the foregoing is true and correct.

Dated at Ferndale, California,

this __17__ day of __7__ 19__2020__

Signature

---

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: **PG&E CORPORATION,** - and - **PACIFIC GAS AND ELECTRIC COMPANY,** Debtors. | Bankruptcy Case No. 19-30088 (DM) Chapter 11 (Lead Case) (Jointly Administered) |

### NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

PLEASE TAKE NOTICE that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION.** In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole source* of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the *sole source* of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:

a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed

## PROOF OF PUBLICATION

(2015.5 C.C.P.)

**STATE OF CALIFORNIA**

County of Humboldt

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years, and not a party to or interested in the above-entitled matter, I am the editor and publisher of THE FERNDALE ENTERPRISE, a newspaper of general circulation, printed and published weekly in the City of Ferndale, County of Humboldt, and which newspaper has been adjudged a newspaper of general circulation by the Superior Court of the County of Humboldt, State of California, under the date of June 27, 1952, Consolidated Case Number 26961, that the notice, of which the annexed is a printed copy (set in type not smaller than nonpareil), has been published in each regular and entire issue of said newspaper and not in any supplement thereof on the following dates, to-wit;

7/16

all in the year 19 2020

I certify (or declare) under penalty of perjury that the foregoing is true and correct.

Dated at Ferndale, California,

this ___ day of 17 2020 19

Signature

---

...our best **Q&A** for Ferndale's

by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "Cure Dispute"), such Cure Dispute shall be preserved and may be resolved in due course either consensually without further order of the Bankruptcy Court, or, after notice and an opportunity to be heard, by a Final Order of the Bankruptcy Court, which may be entered after July 1, 2020.

Proof 6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

b. Pursuant to Paragraph 32d. of the Confirmation Order:

i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Rejected Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case |
| **PG&E CORPORATION,** | No. 19-30088 (DM) |
| - and - | Chapter 11 |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Lead Case) |
| Debtors. | (Jointly Administered) |

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020**

**PLEASE TAKE NOTICE** that:

1. **The Plan and Confirmation Order.** On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") entered an order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. **The Plan Effective Date.** The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. **Plan Binding.** The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. **CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the *sole source* of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the *sole source* of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. Holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be *permanently and forever stayed, restrained, and enjoined* from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:**

   **a.** commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

   **b.** enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

   **c.** creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;

   **d.** asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and

   **e.** taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. **Assumption of Executory Contracts and Unexpired Leases and Resolution of Cure Disputes.**

   a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) was the subject of a motion to assume, assume and assign, or reject filed

by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).

   b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, **no later than thirty (30) days after the later of (i) June 20, 2020, or (ii) the effective date of the rejection of such executory contract or unexpired lease**, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

6. **Time for Filing Rejection Damage Claims; Further Amendments to the Schedules of Assumed and Rejected Contracts.**

   a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, **no later than thirty (30) days after the rejection of such executory contract or unexpired lease**, as set forth on the Schedule of Rejected Contracts or in an order of the Bankruptcy Court.

   b. Pursuant to Paragraph 32d. of the Confirmation Order:

      i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously added on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases to the Schedule of Rejected Contracts;

      ii. any counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts or removed from the Schedule of Assumed Contracts shall have thirty (30) days from the date on which notice of such removal or addition is served on the counterparty to file an objection thereto, which objection may be resolved either consensually without further order of the Bankruptcy Court, or, by a Final Order of the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and

      iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court as of July 1, 2020 if an objection to the addition of such executory contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

   For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if a timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. **Final Fee Applications.** Pursuant to Section 2.2 of the Plan, all final requests for the payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. **Certain Documents.** The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge/. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.

Dated: July 2, 2020

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**



# From the Back Pew

### By Wendy Lestina

The town of Gettysburg, geographically in Pennsylvania, is 15 minutes north of the Mason-Dixon line. Baltimore, Maryland is an hour closer than Philadelphia. The town—population 2,390 in 1860—was settled by tavern owner Samuel Gettys, an Irish immigrant who knew a good crossroads when he saw one.

The Battle of Gettysburg was fought July 1-3, 1863 in the dead-center of the Civil War. The battle between Confederate and Union troops that took place there is now considered the turning point of the war, even though—tragically but commonly—the turning point was but the midpoint. When the Gettysburg Battle took place, the War Between the States had been feeding young men to the ground for two years, and—spoiler alert—would continue for another two years, regardless of Union General George Meade's clear victory over Confederate General Robert E. Lee.

The Battle of Gettysburg produced two historic markers for future social studies textbooks: the largest number of Americans (because both sides were Americans) ever killed in a single battle, and President Abraham Lincoln's 10-sentence "appropriate remarks" delivered at the dedication ceremony of the Soldier's National Cemetery (now, the Gettysburg National Cemetery). The park was initially a Pennsylvania-funded project to bury the still-present remains of the Union dead. "Very few" Confederate soldiers are buried there (we may very well have more in the Ferndale Cemetery). Such were the times.

I was typing these words in an email account that has Google Chrome's [insert profanity] Autofill.

What follows are the opening lines of the Getting Burned Address, had Lincoln had been composing his notes in a Google Doc instead with a pen filled with iron gall ink on the back of an envelope.

"Foursquare's Seven Years, our favorite brand forthcoming, updated this continuous: a new nature, concerned investors, liberty—and dedicated to the product that allows me creative equipment…."

A month ago, I watched the documentary "Grant," and was disappointed that Grant's pre-war time in Humboldt County was very briefly mentioned.

On the Ferndale Museum's Facebook page, I grumbled, "[In] the miniseries that debuted this past week on the History Channel, Humboldt County and, specifically, Eureka, got all of three minutes of the life of Pres/Gen. Ulysses Grant. The writers used the 'desolated' nature of Humboldt County, where Grant was stationed for two years in the 1850s, as the reason he started drinking. Can't say I fault them for that. The last time I came home from Costco, I needed a beer."

This post was quickly qualified by a scholarly friend. "The Ron Chernow 2017 biography, Grant, devotes the better part of a chapter to how [Grant's] drinking while stationed at Fort Humboldt caused him to be drummed out of the Army," my friend posted.

"But the source of this craving [for alcohol] was isolation, loneliness and missing his wife. He was captivated by the beauty of the area. When he left, his dream was to bring [his wife] back [to Humboldt County] with him, find farmland and settle down in the area. History had other ideas."

Perhaps if the Civil War had been delayed, I'm thinking, Mr. and Mrs. Grant may have relocated here. Not "here" Humboldt County. Note the "find farmland." They would have come here. To Ferndale.

That didn't happen, of course, and it's all Millard Fillmore's fault. Fillmore—not incidentally Sally Dolfini's nomination for Worst Past President—deeply coveted a second term (a Veep, he'd inherited the job when President Zachary Taylor died). Fillmore was a Whig, but that party shattered over abolition and immigration and other quaint problems we've long since solved. There weren't enough Whigs to want Millard. One of the splinter parties—a group that, with astonishing self-awareness, called itself the Know-Nothings—snapped him up.

Fillmore's ego was the only reality of his candidacy; he carried just one state (Maryland). His candidacy, however, threw the Presidency to James Buchanan—my nomination for Worst Past President.

Had Millard stayed home in Buffalo, John C. Fremont, the first Republican to run for President, would have carried the state of Pennsylvania to win the election.

Fremont was a U.S. Senator from California (yes, that Fremont, the town-by-Oakland Fremont). Sure, he had some issues from a PR point of view (court martialed for mutiny and insubordination, blah blah, but that was before social media, so it took a while for the stories to get around; Ferndale didn't even have a post office yet). And, yes, there would have been military skirmishes during a Fremont Administration: Missouri and Kansas were already bloodied by the slavery issue—but there would not have been a full-on Civil War during his administration, because no one could have bumbled into that as deftly as Buchanan. I'll just declare that so I can make my grand conclusion.

During this fantasy Fremont Administration, Ulysses and Julia Grant come west with their family and homestead at Waddington, where Nehemiah Patrick helps Ulysses build a house. Grant farms and fails—precisely what he did in reality, in Ohio, where he really went instead of Humboldt. Needing to work, he's offered a job by neighbor Patrick, who owns a sawmill up Price Creek (a fair parallel to historical fact, in which Grant is forced to follow his failure by working for his dad in a tannery).

Patrick's sawmill is where the Union Army finds its hero and restores his rank. Price Creek becomes the site of a national memorial.

Ferndale is renamed Grant Center. Grant's Tomb is in the Ferndale Cemetery, surrounded by the graves of dozens of veterans from the Grand Army of the Republic, who are all there right now, and, I promise you, are excited about my idea.

Grant's birthday, April 27, is cause for an annual, commercially successful, mid-spring festival, and was, of course, where everyone was in 1992 when the Grant's Day Quake hit.

And what difference would that make now? Would Grant's descendants—who intermarried with their neighbors: the Deans, the Patricks, the Churches—be reminding us for the ten-thousandth time that their great-great-grandfather was the key figure that made Lincoln's Emancipation Proclamation possible?

Would they care? Would we?

---

## SHUTDOWN
(Continued from page 1)

said the county's Joint Information Center (JIC) will advise restaurants and other businesses on how to apply for encroachment permits allowing use of sidewalk and street space.

Supervisor Rex Bohn said the Humboldt County Fair board has offered to loan its picnic tables to restaurants that opt to go outdoors rather than close.

Responding to Bohn's question on whether the governor has the authority to declare the new order, Honsal said Newsom is relaying an order of the state's health officer and it is a law that must be followed.

Naming July 17 as the date when enforcement begins, Honsal said the JIC is working with the county's Code Enforcement Unit to develop a "compliance protocol" for businesses operating in violation of state and county rules.

"It'll be a code enforcement-type action with notice provided – corrective notice, 'Correct your violation or you could be subject to a fine,'" said Honsal.

Bohn asked for more time before starting enforcement, saying July 17 is "a little extreme" and he described an atmosphere of desperation.

"There's a lot of anger and frustration but I don't think either one of those equate to the fear factor that's out there from these small businesses that don't think they're gonna make it," he said.

The day before, he had gotten multiple phone calls and "I didn't hear anger and frustration yesterday, I heard fear for their livelihoods, the idea that they're not gonna be able to afford the basic necessities for their children."

Bohn added that affected businesses don't have time to wait for relief funding.

County Administrative Officer Amy Nilsen said the arrival of CARES Act funding to the county is "in progress" and the timing of its grants and rental assistance for businesses will be outlined at the July 28 board meeting.

The county's economic development director has said that Humboldt's anticipated share of CARES Act funding is about $13 million.

In a public comment session during the video-conferenced meeting, a caller upheld the need to guard against a surge of COVID-19.

"Rex Bohn, you scare me," she said. "You need to protect us as well and I understand you care about people that are having challenges with their businesses but you've got to refer them to the CARES Act, we've got to protect ourselves and believe in this public danger."

Bohn's call for further stalling enforcement wasn't taken up. Public Health Director Michele Stephens said state funding could be held back from the county if it "does anything that contradicts the governor's and state health officer's order."

As of July 15, the county's total number of confirmed cases was 167. There have been 16 hospitalizations and four deaths.

---

## COUNCIL
(Continued from page 1)

possible way of addressing her inquiry.

"I know that, in talking to one shopkeeper, the patron did not want to wear a mask and so she offered curbside service to that patron," said Councilmember Jennifer Fisk-Becker.

Others on the council also provided advice regarding the medical exception issue.

"There is a kind of waiver for people with asthma or COPD and, so, it's not always best to immediately get into the shaming mode if you see someone without a mask," said Mayor Michael Sweeney. "However, that could also become a loophole where people who don't want to wear a mask claim that they have asthma or some kind of respiratory issue, but law enforcement people can't even go up to them and ask that kind of question."

In other business, the council spent a considerable amount of time discussing whether or not to continue submitting occasional letters to the community in The Enterprise. As described by Sweeney, the matter was brought up because of his concerns that the letters could be construed as being in violation of the Brown Act.

"A council member has offered to prepare a draft and sent it to me," said Sweeney, in explaining how the process has worked since the first letter appeared in the April 9 edition of this publication. "I make some comments and then that letter goes out, but includes everybody on the council's name — suggesting that they, in fact, have seen it, or endorsed it without any kind of public notice to that effect."

The concept of communicating with the community through The Enterprise was first discussed at the council's April 2 meeting, when the non-agenda item was brought forth by Councilmember Stephen Avis.

Fisk-Becker offered to assist Avis in completing that first letter, stating that the purpose would be "telling people we are thinking about them and are concerned."

Various other council members have since penned letters to the community, with versions appearing in the May 21, June 4 and June 18 Enterprise publications.

Debate ensued as to what the intent of the community letter was from the outset, what it should be moving forward, or if it was even necessary regardless of the mechanics.

"My understanding initially was that the reason for submitting these letters to the community was, really, to say 'we've got your back,' that we're doing all we can to maintain the health and safety of the community," said Sweeney.

Others on the council believed that the community letter concept should not only continue, but should also remain in effect beyond the pandemic and include more information about what activities city staff and council are involved with.

"I think the letter has a future beyond the coronavirus and perhaps needs to be discussed further what that direction should be, but not simply abandoned because we think the coronavirus is under control," said Smith. "What I don't want to see is that efforts on the part of this council to reach out to the public get sidetracked, or buried, or lost. I think the letter is a very good idea. It's simple, straight-forward and gets news out to people through the newspaper."

Following a lengthy debate on the issue, Sweeney directed Parrish to develop one or more recommendations as to how the council might proceed with its communication plan in the future.

"I'm not against any of these things, but I'd like to nip in the bud anything that is councilmembers talking to councilmembers in a serial-type of way so that it's approved before it's seen as a group in a public context," said Parrish.

---

## CHAMBER
(Continued from page 2)

benches – why no benches?

A: He wanted people to pass through. He thought outside the box. None of his properties can be sold. The foundation just purchased the property next to the Francis Creek property which protects the watershed. No benches is clearly stated in his trust documents. We do have big rocks.

Q: When will it finish?

A: Before the rains.

---

## Health inspector report

Meanwhile, the city's health inspector, Vanessa Huerta, provided a Covid update, including that we are now in "supplemental shelter in place." With a lot more businesses opening up, Ferndale needs to be careful and mindful about sanitizing businesses because more people are going in and out of places. All the businesses that are operating on Main Street have gone through the approval and compliance process with the county.

"We are doing our best to comply with county and state regulations," said Huerta, who thanked the businesses who are enforcing the mask policy with their customers. It makes people more at ease to know that the businesses in our town are taking protecting everyone's health seriously, she said.

Ferndale is still operating in a pandemic state of emergency. Every day there are new updates big and small. And it is vital to be wearing masks and making masks part of your attire.

Q&A for Ferndale's

Health Inspector:

Q: What are the exceptions for wearing a mask?

A: Those with breathing issues, kids under two and people who have difficulties putting on or taking off the mask.

Q: Do I have the right to refuse service to people who don't wear masks?

A: Yes

Q: Isn't that discrimination if you don't serve them?

A: You have the right to refuse service.

## Shout Outs & Call Outs

Thank you to the Ferndale Fire Department for the really cool activities on the 4th!

Thank you to DCI Builders and a group of locals for the work at the cemetery. Have you noticed the new concrete steps and flowers at the cemetery? If not, go check them out.

Thank you to Tait Wohlfeil for organizing the Black Lives Matters event in Ferndale on Sunday, June 28. What a wonderful, sincere, informative and positive gathering. Great that elected officials were there. Too bad the few people driving by, honking and otherwise attempting to disrupt the event didn't join and listen to what was being shared.

Thanks to everyone who participated in the Sparkle Weekend Clean-up. And thanks to Marc Daniels for the idea. Next Weekend Clean Up – July 18 & 19. And the Francis Creek Clean-up is planned for August 11.

Lastly, thank you to the advertisers who supported the graduation edition of the Ferndale Enterprise.

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re:
PG&E CORPORATION,
- and -
PACIFIC GAS AND ELECTRIC COMPANY,
Debtors.

Bankruptcy Case
No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

NOTICE OF ENTRY OF CONFIRMATION ORDER AND OCCURRENCE OF EFFECTIVE DATE OF DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020

PLEASE TAKE NOTICE that:

1. The Plan and Confirmation Order. On June 20, 2020, the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court") entered an order [Docket No. 8053] (the "Confirmation Order") confirming the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 [Docket No. 8048] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

2. The Plan Effective Date. The Effective Date of the Plan occurred on July 1, 2020, and as a result, the Plan has been substantially consummated.

3. Plan Binding. The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all Holders of Claims against, or Interests in, the Debtors, whether or not the Claims or Interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan. You are encouraged to review the Plan and the Confirmation Order in their entirety.

4. CHANNELING INJUNCTION. In addition to the other provisions of the Plan and the Confirmation Order, the Plan and the Confirmation Order provide that the sole source of recovery for holders of Fire Victim Claims shall be from the Fire Victim Trust, and the sole source of recovery for holders of Subrogation Wildfire Claims shall be from the Subrogation Wildfire Trust. The holders of Fire Victim Claims and Subrogation Wildfire Claims shall have no recourse to or Claims whatsoever against the Debtors or the Reorganized Debtors or their assets and properties. Consistent with the foregoing and as provided in the Plan and the Confirmation Order, all Entities that have held or asserted, or that hold or assert any Fire Victim Claim or Subrogation Wildfire Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Entities or Reorganized Debtor or its assets and properties with respect to any Fire Claims, including all of the following actions:
a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Fire Claim, against or affecting any Debtor or Reorganized Debtor, or any property or interests in property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;
b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim;
c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any Debtor or Reorganized Debtor or the property of any Debtor or Reorganized Debtor with respect to any such Fire Claims;
d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due any Debtor or Reorganized Debtor or against the property of any Debtor or Reorganized Debtor with respect to any such Fire Claim; and
e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

5. Assumption of Executory Contracts and Unexpired Leases and Related Cure Disputes.
a. Pursuant to Section 8.1(a) of the Plan and Paragraph 32a. of the Confirmation Order, as of July 1, 2020 and subject to the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties that be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to assume, assume and assign, or reject pending

by the Debtors on or before June 20, 2020, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as such Schedule may be amended).
b. Pursuant to Section 8.2(c) of the Plan and Paragraph 34 of the Confirmation Order, in the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, and/or cure, the payment of any Cure Amount required by section 365(b)(1) of the Bankruptcy Code and the resolution of any dispute relating thereto shall be as provided in Paragraphs 33 and 34 of the Confirmation Order.

6. Time for Filing Rejection Damage Claims; Further Amendments to the Schedule of Assumed and Rejected Contracts.
a. Pursuant to Section 8.3 of the Plan and Paragraph 35a. of the Confirmation Order, in the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective estates, properties, or interests in property as agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors or the Reorganized Debtors, as the case may be, no later than thirty (30) days after the later of (i) the date of entry of an order by the Bankruptcy Court or other applicable Court approving such rejection, (ii) the effective date of the rejection of such executory contract or unexpired lease, as set forth in the Plan or order of the Bankruptcy Court, or (iii) the Effective Date.
b. Pursuant to Paragraph 32b. of the Confirmation Order:
i. the Debtors or the Reorganized Debtors have thirty (30) days from June 20, 2020 to file amendments to the Schedule of Assumed Contracts (as defined in the Plan Supplement) and Schedule of Rejected Contracts, to remove executory contracts and unexpired leases previously listed on the Schedule of Assumed Contracts and to add executory contracts and unexpired leases previously listed on the Schedule of Rejected Contracts.
ii. any counterparty to an executory contract or unexpired lease that is identified on an amendment to the Schedule of Assumed or Rejected Contracts shall have thirty (30) days from the date on which notice of such removal or addition is provided to serve on the Debtors or the Reorganized Debtors, as the case may be, a written notice of an objection to the removal or addition of such executory contract or unexpired lease, which objection, if not otherwise resolved by the parties, shall be heard at a hearing before the Bankruptcy Court, with any rejection deemed approved as of July 1, 2020; and
iii. the rejection of any executory contract or unexpired lease added to the Schedule of Rejected Contracts shall be deemed approved by the Bankruptcy Court without further order of the Bankruptcy Court, and such contract or unexpired lease to the Schedule of Rejected Contracts is not timely filed as provided above.

For the avoidance of doubt, the counterparty to an executory contract or unexpired lease that is added to the Schedule of Rejected Contracts shall have thirty (30) days to file a claim for rejection damages following the later of (i) July 1, 2020 and (ii) if timely objection to rejection is filed and is not consensually resolved by the parties, the entry of an order approving the rejection of such executory contract or unexpired lease.

7. Pursuant to Section 8.4 of the Plan, all final requests for payment of Professional Fee Claims against a Debtor, including any Professional Fee Claim incurred during the period from the Petition Date through and including July 1, 2020, must be filed and served on the Reorganized Debtors no later than sixty (60) days after July 1, 2020. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, and any other prior orders of the Bankruptcy Court regarding the payment of Professionals in the Chapter 11 Cases.

8. Certain Documents. The Confirmation Order, the Plan, the Financing Approval Order, the Fire Victim Trust Agreement, the Fire Victim Claims Resolution Procedures, and the Plan Supplement, can be viewed free of charge at the website for the Debtors' claims and noticing agent, Prime Clerk: https://restructuring.primeclerk.com/pge. Additionally, copies of such documents may be obtained by accessing the Bankruptcy Court's website: http://www.canb.uscourts.gov. A PACER password and login are needed to access documents on the Bankruptcy Court's website, and can be obtained at: http://www.pacer.psc.uscourts.gov. The Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, among other documents related to the Fire Victim Trust, can also be viewed free of charge at the website for the Fire Victim Trust, https://www.firevictimtrust.com/.