1  BROWN RUDNICK LLP
   Joel S. Miliband (SBN 077438)
2  (JMiliband@brownrudnick.com)
   2211 Michelson Drive
3  Seventh Floor
   Irvine, California 92612
4  Telephone:     (949) 752-7100
   Facsimile:     (949) 252-1514
5
   BROWN RUDNICK LLP
6  David J. Molton (SBN 262075)
   (DMolton@brownrudnick.com)
7  Seven Times Square
   New York, New York 10036
8  Telephone:     (212) 209-4800
   Facsimile:     (212) 209-4801
9
   *Counsel for Fire Victim Trustee*
10

11              **UNITED STATES BANKRUPTCY COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
12                  **SAN FRANCISCO DIVISION**

13  **In re:**                          Bankruptcy Case
                                        No. 19-30088 (DM)
14  **PG&E CORPORATION**
                                        Chapter 11
15          **-and-**                   (Lead Case)
                                        (Jointly Administered)
16  **PACIFIC GAS AND ELECTRIC**
    **COMPANY,**                        **THE FIRE VICTIM TRUSTEE'S**
17                        **Debtors.**  **APPLICATION FOR CLARIFICATION**
                                        **AND MODIFICATION OF**
18  □ Affects PG&E Corporation         **PROTECTIVE ORDER TO PERMIT**
                                        **THE TRANSFER OF INFORMATION**
19  □ Affects Pacific Gas and Electric Company  **FOR USE BY THE FIRE VICTIM**
                                        **TRUST**
20  ■ Affects both Debtors
                                        **Hearing**
21  *All papers shall be filed in the Lead Case,*  **Date:      August 25, 2020**
    *No. 19-30088 (DM)*                 **Time:      10:00 a.m. (Pacific Time)**
22                                      **Place:     Courtroom 17**
                                        **450 Golden Gate Ave., 16th Fl.**
23                                      **San Francisco, CA 94102**

24

25

26

27

28

Justice John K. Trotter (Ret.) in his capacity as trustee for the Fire Victim Trust (as defined below) (the "**Fire Victim Trustee**"), respectfully submits this application ("**Motion**"), pursuant to section 105(a) of title 11 of the United States Code and Rules 2002(m) and 9007 of the Federal Rules of Bankruptcy Procedure, for entry of an order in the form of Exhibit A (the "**Proposed Order**"), which would direct the clarification or modification of certain provisions of the Confidentiality and Protective Order (the "**Protective Order**") [Dkt. No. 3405] to permit the Fire Victim Trustee and his staff, consultants, experts, and counsel and Cathy Yanni in her capacity as Claims Administrator of the Fire Victim Trust (the "**Claims Administrator**") and her staff, consultants, experts, and counsel[1] to access and use information produced and generated in the Cases (the "**Discovery Material**")[2] in connection with the administration of the trust established for the fire victims (the "**Fire Victim Trust**") and the prosecution of the causes of action assigned to the Fire Victim Trust (the "**Assigned Claims**") pursuant to the Court-approved and effective Plan of Reorganization dated June 19, 2020, (the "**Plan**" and the "**Confirmation Order**") [Dkt. No. 8053 & 8252].[3]

## PRELIMINARY STATEMENT

A significant component of the consideration provided by the Debtors to the Fire Victim Trust (and therefore to the fire victims) under the Plan are the Assigned Claims, which include among others, causes of action relating to the Fires which the Debtors may have had against contractors, consultants and others. Over the course of these chapter 11 cases (the "**Cases**") the Official Committee of Tort Claimants (the "**TCC**") acted as a fiduciary and representative of fire victims, to collect and generate an extensive databank of information directly relevant to the Fire Victim Trust and much of it crucial for the Fire Victim Trust to affect its mandate in an efficient manner without wasting funds that are better served being provided to the victims. The databank

---

[1] Where the terms Fire Victim Trustee and Claims Administrator are used herein, in the proposed modified Protective Order, and in the Proposed Order, such terms include the Fire Victim Trustee, the Claims Administrator and their staff, consultants, experts, and counsel.

[2] The Protective Order generally defines "Discovery Material" to include all information produced, generated, or provided in disclosures or responses to requests in connection with the Cases. *See* Protective Order at ¶ 2.4.

[3] Capitalized terms have the definitions provided in the Plan or Protective Order, unless otherwise stated.

of information includes work product, documents and information about fire victims claims and the Assigned Claims. A statutory committee's transfer of information and work product to a liquidating trust is a routine step during committee winddown. The orderly transfer from the TCC (and its professionals) of its information and work product to the Fire Victim Trust benefits the Trust and fire victims, by increasing the efficiency and effectiveness of the claims administration process and the prosecution of the Assigned Claims.

The Protective Order was entered early on in these Cases, prior to the formation of a Trust for the fire victims. It does not expressly permit the TCC (and its professionals) to transfer the aforementioned information to the Fire Victim Trust and its professionals or for the Fire Victim Trustee's and Claims Administrator's access and use of the Discovery Material. The Protective Order does, however, acknowledge that the Court may modify any terms of the Protective Order at any time for good cause. Accordingly, the Fire Victim Trustee requests that the Court direct the following clarification and modification:[4]

- Clarify that the work of the Fire Victim Trust is within "the purposes of these Chapter 11 Cases" as stated in paragraph 7.1 so the Trust may use the Discovery Material and make other clarifications to paragraphs 1, 2.11 and 3 of the Protective to achieve the same effect;

- Modify paragraph 7.3(b) to include the Trustee and Claims Administrator and their staff, advisors, consultants, experts, and counsel, so they can access confidential Discovery Material;

- Modify paragraph 8 to clarify that with respect to use of certain Discovery Material by the Fire Victim Trust in other litigation or proceeding, the Fire Victim Trust will seek entry in the relevant proceeding of a protective order with similar protections to the Protective Order; and

- Modify paragraphs 4 and 14 to extend the duration of the Protective Order and permit the Fire Victim Trust to retain the Discovery Material through completion of its work.

---

[4] A redline marking the proposed clarifications and modifications of the Protective Order is attached hereto as Exhibit 1.

The requested clarification and modification would enable the TCC to effectuate a routine transfer of relevant information to the Fire Victim Trust for use in liquidating and administering the Trust for the largest creditor group in the Cases, and for prosecuting the Assigned Claims conveyed to the Fire Victim Trust under the Plan. The Protective Order, as clarified and modified, in combination with a common interest agreement among Baker & Hostetler, the TCC, the Trustee, the Claims Administrator, and others (the "**Common Interest Agreement**"), would provide uninterrupted protection for confidential, privileged, or work product material the TCC transfers to the Fire Victim Trust.

There is good cause for clarifying and modifying the Protective Order. Doing so would permit the Fire Victim Trust to receive, access, and use information from the TCC for the benefit of the fire victims. The Debtors and Reorganized Debtors (as applicable, the "**Debtors**"), who provided the vast majority of the Discovery Material, consent to the transfer of their documents to the Fire Victim Trust following modification of the Protective Order. The TCC, which continues to exist for certain purposes under the Plan, also consents to the relief requested herein. Other parties that produced documents relevant to the Trust administration, including documents in response to the TCC's 2004 subpoenas relating to the Assigned Claims, will not need to reproduce the same documents to the Trustee (all of which are relevant and would be subject to discovery), saving time and resources of both the Fire Victim Trust and third parties.

## JURISDICTION AND VENUE

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory basis for the Motion's requested relief is section 105 of the United States Bankruptcy Code and Rules 2002(m) and 9007 of the Federal Rules of Bankruptcy Procedure.

/ / /

/ / /

## **BASIS FOR RELIEF**

The Plan authorizes the Trustee to administer and liquidate the Fire Victim Trust. *See* Plan at ¶¶ 6.7(a), 6.8(a). The Plan also funds the Fire Victim Trust, in part, by the assignment of the Assigned Claims. *See id.* at ¶ 6.7(a). Under the Plan, the Trustee is "substituted and will replace the Debtors" or "any official committee" for all Assigned Claims…." *Id.* at ¶ 6.8(b).

The Fire Victim Trustee understands that the TCC has and continues to collect and organize information relevant to the Fire Victim Trust. For instance, the Fire Victim Trustee understand that the TCC has collected more than 5.7 million documents spanning more than 19.5 million pages from the Debtors and other parties regarding the wildfires and fire victim claims. Additionally, the Fire Victim Trustee understands that the TCC obtained analyses from numerous consultants and experts regarding the wildfires and fire victim claims in preparation for the estimation trial and generated a vast body of work product related to both fire victim claims and the Assigned Claims. Moreover, the TCC also issued forty (40) Rule 2004 subpoenas to third parties as part of its due diligence of the Assigned Claims and plan confirmation.

The transfer of the TCC's extensive catalog of information would relieve the Fire Victim Trust of the expensive and time-consuming burden of recreating the same work. The documents that the TCC obtained from third parties, and continues to obtain from third parties, are documents that are relevant to the Assigned Claims, and would be obtainable by the Fire Victim Trust in its own Rule 2004 exams or other discovery. Thus, the issue is not whether the Fire Victim Trust should be entitled to receive such documents, but whether amendments to the Protective Order should be made in order to ensure that the Fire Victims Trust is not hampered by the terms in the Protective Order that were drafted before the concept of a Fire Victim Trust was contemplated. Similarly, the TCC's organization of documents, analyses from consultants and experts, and other similar information and work product would help the Trustee and Claims Administrator better understand wildfire-specific issues, make claims determinations, and would assist the Trustee with evaluating, planning, and prosecuting the Assigned Claims.

Overall, the transfer of information and work product from the TCC to the Fire Victim Trust would benefit the Fire Victim Trust and fire victims by avoiding duplicative costs,

achieving administration efficiencies, and potentially increasing recoveries on Assigned Claims. Additionally, the transfer of the millions of documents produced by the Debtors and third parties would save the Reorganized Debtors and third parties the time and expense of reproducing those same documents to the Trustee.

The relief requested herein is not extraordinary. The transfer of a statutory committee's documents and work product to liquidating trusts, as sought here, is recognized as "prevent[ing] the bankruptcy estate from having to pay twice for the same investigation in pursuit of potential claims." *In re New Century TRS Holdings, Inc.*, 407 B.R. 558, 568 (Bankr. D. Del. 2009) (Carey, J.) (authorizing creditors' committee and examiner to transfer materials on estate's potential claims to liquidating trustee). Transfer of the TCC's documents to the Fire Victim Trust does not raise concerns about inappropriate access by third parties, but rather is "allowing access to the same documents by a party who succeeded to the claims of the debtor's estate, such as the Liquidating Trustee, and is pursuing the claims for the benefit of creditors in accordance with the terms of a confirmed plan." *Id*. at 569. It is an unremarkable request that the assignee and successor to claims of the estate to be prosecuted for the benefit of creditors is able to receive discovery generated during the Case in connection with those claims, and it is appropriate that the Protective Order be amended to permit such turnover.

Accordingly, the Fire Victim Trustee requests clarification and modification of the Protective Order, explained below, so the Fire Victim Trust may receive, access, and use the TCC's information.

### A. Clarification that the Fire Victim Trust May Use Discovery Material.

The Fire Victim Trustee requests clarification that the work of the Fire Victim Trust is "for purposes of" the Cases so the Fire Victim Trust may use Discovery Material. The Protective Order states that Discovery Material may be used "solely for purposes of these Chapter 11 Cases and not for any other purpose, including any other litigation of judicial proceedings.…" Protective Order at ¶ 7.1. The Protective Order was entered prior to the existence of the Fire Victim Trustee and Claims Administrator and does not refer to them, or state expressly whether their work is "for purposes of" the Cases. To avoid uncertainty about the Protective Order

Case: 19-30088   Doc# 8492   Filed: 07/22/20   Entered: 07/22/20 17:12:17   Page 6 of 34

possibly precluding their use of Discovery Material, the Fire Victim Trustee seeks clarification of Paragraph 7.1.

To assist in that clarification, the Fire Victim Trustee requests express clarification in Paragraph 1 of the Protective Order that the Protective Order applies to all discovery "provided or used for the administration of the Fire Victim Trust or pursuit of the Assigned Rights and Causes of Action . . . ." Relatedly, the Fire Victim Trustee requests modification of Paragraph 3, the "Scope" provision of the Protective Order, to expressly state that the Order applies to all Discovery Material produced "to assist in the Administration of the Fire Victim Trust or pursuit of the Assigned Rights and Causes of Action . . . ." To make the requested modifications internally consistent, the Fire Victim Trustee requests the addition of a definitional paragraph to define "Assigned Rights and Causes of Action", "Fire Victim Trust," "Fire Victim Trustee," and "Claims Administrator" to assign the definitions provided to them in the Plan.

The Fire Victim Trust's work should be confirmed as "for purposes of" the Cases. The Fire Victim Trustee and Claims Administrator's work includes administering and liquidating the Fire Victim Trust established by the Plan for the largest creditor group in the Cases. This work is for purposes of the Cases because "a chief purpose" of bankruptcy cases is the prompt and effective administration, distribution, and settlement of the estate. *In re Beaty*, 306 F.3d 914, 922 (9th Cir. 2002). The Fire Victim Trustee's work also includes prosecuting the Assigned Claims, and this work is for purposes of the Cases because the Assigned Claims constitute a part of the consideration for the Fire Victim Trust and the Plan authorizes the Fire Victim Trustee to "prosecute or settle" the Assigned Claims among his powers and duties under the Plan. *See* Plan at ¶¶ 6.7(a), 6.8(a); *see also New Century TRS Holdings*, 407 B.R. at 569 (noting that post-confirmation trust was "pursuing the claims for the benefit of creditors in accordance with the terms of a confirmed plan"). As demonstrated by the Fire Victim Trustee substituting and replacing the Debtors and the TCC upon the Effective Date, *see* Plan at ¶ 6.8(b), the work of carrying out the Plan for the Cases certainly is for purposes of the Cases.

The requested clarification also is consistent with the purpose of the Protective Order. Its first purpose is to "facilitate and expedite the production, exchange and treatment of Discovery

Case: 19-30088   Doc# 8492   Filed: 07/22/20   Entered: 07/22/20 17:12:17   Page 7 of 34

Material," and the Protective Order covers and enables all forms of discovery in the Cases and related proceedings. *See* Protective Order at ¶ 1. The transfer of the TCC's information to the Fire Victim Trust furthers the Protective Order's purpose by facilitating the provision of information to avoid inefficiency and duplication of work. *See New Century TRS Holdings*, 407 B.R. at 568 (explaining transfer of committee information to liquidating trust is consistent with protective order and its purpose of enabling efficient exchange of information). The Debtors, who the Fire Victim Trustee understands provided the majority of the Discovery Material, consent to this requested clarification.[5] The TCC also consents to the relief requested herein.

### B. Modification to permit the Fire Victim Trustee and Claims Administrator to access confidential information.

The Fire Victim Trustee also requests a modification of the Protective Order to include the Fire Victim Trustee and Claims Administrator among the list of those permitted to access Discovery Material, including the Material designated as confidential (the "**Protected Material**").[6] The Protective Order permits access to Protected Material by "financial advisors, accounting advisors, experts, and consultants" that are "retained by the Receiving Party"[7] and "approved by the Court" if retained by a committee. Protective Order at ¶ 7.3(b). This list does not expressly include the Fire Victim Trustee, Claims Administrator, or professionals they engage to assist them.

In order to update the Protective Order to include the Fire Victim Trustee, the Claims Administrator and their professionals, the TCC requests that paragraph 7.3(b) be modified as follows (modification in blackline):

> 7.3  Disclosure of "HIGHLY CONFIDENTIAL" or "PROFESSIONAL EYES ONLY" Information or Items. Unless otherwise ordered by the Court or permitted by the Designating Party, a Receiving Party

---

[5] While the Protective Order suggests a process for negotiating particular uses of discovery with each producing party, *see* Protective Order at ¶ 7.3(k), this process is not required, *see id.* at 13.4, and the number of parties producing discovery would make it impractical if not impossible.

[6] The Protective Order defines Protected Material as "any Discovery Material that is designated as "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", PROFESSIONAL EYES ONLY", or "CONTRACTOR CONFIDENTIAL." Protective Order at ¶ 2.9.

[7] "Receiving Party" refers recipients of the Discovery Material from a producing party.

may disclose any information or item designated "HIGHLY CONFIDENTIAL" or "PROFESSIONAL EYES ONLY" only to:

\* \* \*

(b) the Fire Victim Trustee and the Claims Administrator under the Fire Victim Trust approved by the Court and their respective staff, advisors, experts, consultants, and counsel, or financial advisors, accounting advisors, experts, consultants (and their respective staff) that are retained by the Receiving Party (and in the case of the Debtors or any Official Committee, approved by the Court), in connection with the Chapter 11 Cases who have signed the "Acknowledgement and Agreement to be Bound (Exhibit A);

As modified, the Protective Order would consider the Fire Victim Trustee and Claims Administrator (and their staffs and professionals) the same as advisors, experts, and consultants for the Parties, with the same rights and obligations with respect to the Protected Material. This modification is consistent with, if not required by, the Plan's provisions that substitute the Fire Victim Trustee for the Debtors and official committees with respect to the Assigned Claims. *See* Plan at ¶ 6.8(b).

With the modification, the Fire Victim Trustee and Claims Administrator would be permitted to receive (and the TCC would be enabled to transfer) the Discovery Material, including the Protected Material.[8] Information and work product transferred by the TCC also would be eligible for additional protection under the Common Interest Agreement. The Protective Order acknowledges that the Court retains the authority to make the requested modification. *See* Protective Order at ¶ 7.3 ("Unless otherwise ordered by the Court…").

Similarly, paragraph 8 of the Protective Order has been modified to add the following language to ensure that information produced to the Fire Victim Trust would be protected from disclosure in other litigation or proceedings:

In addition to the notice obligations set forth above, in any other litigation or proceedings instituted by or against the Fire Victim Trust involving the disclosure of information or items designated in a Case or these Chapter 11 Cases as "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", "PROFESSIONAL EYES ONLY", or "CONTRACTOR CONFIDENTIAL" pursuant to this Order, the Fire Victim Trust shall, prior to disclosing Protected Material, seek entry in the relevant

---

[8] With access to materials under paragraph 7.3, the Trustee and Claims Administrator could also receive documents bearing other levels of confidentiality under the Protective Order. *See* Protective Order at ¶ 7.2(f) (providing that persons specified in paragraph 7.3 may receive "CONFIDENTIAL" materials) and ¶ 7.4 (providing that non-PG&E persons specified in paragraph 7.3 may receive "CONTRACTOR CONFIDENTIAL" materials).

Case: 19-30088    Doc# 8492    Filed: 07/22/20    Entered: 07/22/20 17:12:17    Page 9 of 34

proceedings of a protective order and confidentiality agreement that provides similar protections for such items and/or information as set forth in this Order.

The Fire Victim Trustee understands that the Debtors and the TCC consent to these requested modification.

### C. Modification to Extend Duration of the Protective Order and Retention of Protected Material Through the Completion of the Fire Victim Trust Work.

The Fire Victim Trustee also requests that the Court direct a modification so that the Protective Order continues for the duration of the Fire Victim Trust's work and permits the Fire Victim Trustee and Claims Administrator to retain confidential information until they complete their work.

The Protective Order elsewhere states that Protected Material must be destroyed or returned "[w]ithin 90 days after conclusion of the Debtors' emergence from Bankruptcy, unless otherwise ordered by the Court." *Id*. at ¶ 14.[9] This could be read to preclude the Fire Victim Trust from retaining and utilizing Protected Material beyond 90 days after the Debtors' emergence from bankruptcy, unless otherwise ordered by the Court.

The claims administration and prosecution of the Assigned Claims undoubtedly will extend beyond the Protective Order's current duration and final disposition of material (90 days after the Debtors' emergence). For the Fire Victim Trust to retain and use Discovery Material until its work is completed, the Fire Victim Trustee requests that the Court direct the following modification of paragraph 14 of the Protective Order:

- the final disposition of Protected Material by the Claims Administrator and the Trustee under paragraph 14 shall occur within 90 days of the later of (a) the Claims Administrator notifying the Court that the Fire Victim Trust claims process has concluded and (b) the Trustee notifying the Court that the litigation of the Assigned Claims has concluded.

As above, this requested modification is consistent with the Fire Victim Trustee's and Claims Administrator's roles in the Cases, which includes the use of Discovery Material for administering the fire victim claims and handling the Assigned Claims through their completion.

---

[9] Paragraph 7.1 further provides: "When the Debtors emerge from Bankruptcy, a Receiving Party must comply with the provisions of section 14 below (FINAL DISPOSITION)."

Case: 19-30088    Doc# 8492    Filed: 07/22/20    Entered: 07/22/20 17:12:17    Page 10 of 34

The Protective Order authorizes the requested modification. *See* Protective Order at ¶ 4 ("or a Court order otherwise directs..."); *id*. at ¶ 14 ("unless otherwise ordered by the Court..."). Again, the Fire Victim Trustee understands that the Debtors and the TCC consent to the requested modification.

### D. There is Good Cause for the Requested Clarification and Modification.

There is good cause for the requested clarification and modification. *See* Protective Order at ¶ 13.4 ("any or all of the provisions" may be modified "upon good cause shown"); see also *Foltz v. State Farm Mut. Auto. Ins. Co*., 331 F.3d 1122, 1133 (9th Cir. 2003) (explaining that courts have inherent authority to modify protective orders upon consideration of benefits of further disclosure and reliance interests of parties that provided information).

As explained above, the requested clarification and modification would enable the TCC to transfer its database of relevant material to the Fire Victim Trust so it may avoid spending time and money to replicate the TCC's work. This alone is good cause. *See CBS Interactive, Inc. v. Etilize, Inc.,* 257 F.R.D. 195, 206 (N.D. Cal. 2009) (finding good cause to modify protective order and permit further sharing of material to avoid duplicative discovery effort).

There is additional good cause because the clarification and modification to permit the Fire Victim Trustee to use the TCC's information for litigating the Assigned Claims furthers the "strong policy" in this Circuit "favor[ing] access to discovery materials to meet the needs of parties engaged in collateral litigation." *Foltz*, 331 F.3d at 1133; *Beckman Indus., Inc. v. Int'l Ins. Co*., 966 F.2d 470, 475 (9th Cir. 1992) (explaining "Ninth Circuit precedent strongly favors" use of discovery materials in "one litigation to facilitate preparation in other cases" because this "advances the interests of judicial economy by avoiding the wasteful duplication of discovery.").

On balance, there is good cause for clarifying and modifying the Protective Order to permit the Fire Victim Trust to receive, access, and use the TCC's information, confirmed by the Debtors' consent and agreement for their documents to be transferred to the Fire Victim Trust, and the Fire Victim Trustee's agreement to receive the documents, following clarification and modification of the Protective Order.

/ / /

## NOTICE

Notice of this Motion will be provided to (i) counsel to the Debtors; (ii) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (iii) counsel to the Creditors Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; (xii) the Consenting Fire Claimant Professionals; (xiii) counsel for the Shareholder Proponents; (xiv) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002; and (xv) the recipients of the TCC's document subpoena. The Fire Victim Trustee respectfully submits that no further notice is required.

## CONCLUSION

WHEREFORE, for the good cause shown and reasons presented herein, the Fire Victim Trustee respectfully requests entry of the Proposed Order and any further relief the Court may deem just and proper.

DATED: July 22, 2020           BROWN RUDNICK LLP

By:  /s/  Joel S. Miliband
Joel S. Miliband (SBN 077438)
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone:    (949) 752-7100

And

BROWN RUDNICK LLP
David J. Molton (SBN 262075)
Seven Times Square
New York, New York 10036
Telephone:    (212) 209-4800

*Counsel for Fire Victim Trustee*

1                                           EXHIBIT "A"

26                                           EXHIBIT "A"

WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew *Goren* (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

Keller & Benvenutti LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

CRAVATH, SWAINE & MOORE LLP
Paul H. Zumbro (*pro hac vice*)
(pzumbro@cravath.com)
Timothy G. Cameron (*pro hac vice*)
(tcameron@cravath.com)
Kevin J. Orsini (*pro hac vice*)
(korsini@cravath.com)
Omid H. Nasab (*pro hac vice*)
(onasab@cravath.com)
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 |
| – and – | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | **CONFIDENTIALITY AND PROTECTIVE ORDER** |
| ☐ Affects PG&E Corporation ☐ Affects Pacific Gas and Electric Company ☒ Affects both Debtors | |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

This Confidentiality and Protective Order ("**Order**") shall govern the production, review, disclosure, and handling of any Discovery Material (as defined herein) by any person or entity (each a "**Party**" and, collectively, the "**Parties**") in connection with the above-captioned chapter 11 cases pending before the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**"), Ch. 11 Case Nos. 19-30088 (DM) and 19-30089 (DM) (collectively, the "**Chapter 11 Cases**").

1.     PURPOSES AND LIMITATIONS

This Order applies to all discovery in the Chapter 11 Cases and related proceedings, including informal discovery, discovery provided or used for the administration of the Fire Victim Trust  or pursuit of the Assigned Rights and Causes of Action (as each term is defined herein), discovery under Bankruptcy Rule 2004, and discovery in connection with judicial or other proceedings, such as contested matters, adversary proceedings and other disputes (each, a "**Case,**" and collectively, the "**Cases**"). The Parties have sought or may seek certain Discovery Material (as defined below) from one another with respect to the Chapter 11 Cases (collectively, "**Discovery Requests**") as provided by the Federal Rules of Civil Procedure (the "**Federal Rules"**), the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court (the "**Local Rules**"). The purpose of this Order is to facilitate and expedite the production, exchange and treatment of Discovery Material (as defined below) and to protect Discovery Material that a Party seeks to maintain as confidential. However, the Parties acknowledge that this Order does not entitle them to file confidential information under seal without further order of the Court; United States District Court for the Northern District of California Civil Local Rule 79-5 (incorporated into the Local Rules by Rule 1001-2) sets forth the procedures that must be followed and the standards that will be applied when a Party seeks permission from the Court to file material under seal.

2.     DEFINITIONS

2.1     Challenging Party: a Party that challenges the designation of information or items under this Order.

2.2     Counsel (without qualifier): Outside Counsel of Record or House Counsel (as well as their support staff).

2.3     <u>Designating Party</u>: a Party that designates information or items that it produces in response to Discovery Requests as "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", "PROFESSIONAL EYES ONLY" or "CONTRACTOR CONFIDENTIAL."

2.4     <u>Discovery Material</u>: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to Discovery Requests or provided to industry advisors, financial advisors, accounting advisors, experts and consultants (and their respective staff) that are retained by the Debtors' creditors in connection with the Chapter 11 Cases, including deposition testimony, interrogatories, answers to interrogatories, requests for admission, responses to requests for admission, documents, information and things produced, including information provided to the Receiving Party orally, as well as any and all copies, abstracts, digests, notes, summaries, and excerpts thereof.

2.5     <u>House Counsel</u>: attorneys who are employees or contractors of a Party. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.6     <u>Outside Counsel</u>: attorneys who are not employees of a Party but are retained to represent or advise a Party regarding the Chapter 11 Cases. With respect to the Debtors, and any Official Committee, Outside Counsel refers to counsel that has been retained by one of the above Parties and whose retention has been approved by the Court.

With respect to the Ad Hoc Group of Subrogation Claim Holders (the "**Ad Hoc Group**"), Outside Counsel also shall include attorneys who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), so long as the attorney continues to represent members of the Ad Hoc Group in such capacity (the "**Subrogation Outside Counsel**").

2.7     <u>Producing Party</u>: a Party that produces Discovery Material.

2.8     <u>Professional Vendors</u>: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.9    <u>Protected Material</u>: any Discovery Material that is designated as "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", "PROFESSIONAL EYES ONLY" "CONTRACTOR CONFIDENTIAL."

2.10    <u>Receiving Party</u>: a Party that receives Discovery Material directly from the Producing Party.

2.11    "Assigned Rights and Causes of Action", "Fire Victim Trust," "Fire Victim Trustee" and "Claims Administrator" shall have the definitions provided in the Debtors' Court-approved Plan of Reorganization dated June 19, 2020, [Dkt. No. 8053].

3.    SCOPE

This Order applies to all Discovery Material exchanged in or subject to discovery that is produced, formally or informally in response to or in connection with any Discovery Requests in the Cases, or to assist in the administration of the Fire Victim Trust or pursuit of the Assigned Rights and Causes of Action (the "**Assigned Claims**"). Except as otherwise set forth herein, Discovery Material produced informally by the Debtors in connection with the Chapter 11 Cases or pursuant to Rule 2004 (unless otherwise agreed by the Debtors) may only be used in the Chapter 11 Cases, including in connection with any contested motions in the Chapter 11 Cases, and may not be used in connection with any adversary proceeding or other litigation. This Order does not affect, amend or modify any existing confidentiality agreements, Committee Bylaws, non-disclosure agreements, intercreditor agreements, protective orders or similar agreements applicable to any Producing Party and/or Receiving Party, and nothing in this Order shall constitute a waiver of any rights under such agreements or orders. Where this Order is in conflict with any existing confidentiality agreements, intercreditor agreements, Committee Bylaws, non-disclosure agreements, protective orders or similar agreements applicable to any Producing Party and/or Receiving Party in connection with the Cases, the provision that provides the most confidentiality protection for Discovery Materials applies.

The protections conferred by this Order cover not only Protected Material, but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Order

do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party.

This Order does not apply to (a) the California Public Utilities Commission; (b) the state agencies as defined in California Government Code section 11000 and including the California State University; (c) the United States of America; (d) the City and County of San Francisco; (e) the City of San José; (f) Sonoma Clean Power Authority; (g) Valley Clean Energy Alliance; (h) Redwood Coast Energy Authority; (i) Pioneer Community Energy; (j) Peninsula Clean Energy; (k) CleanPowerSF; (l) Marin Clean Energy; (m) Silicon Valley Clean Energy Authority; (n) East Bay Community Energy Authority; (o) the Monterey Bay Community Power Authority; (p) the Northern California Power Agency; and (q) Transmission Agency of Northern California. With respect to the entities in (f)-(o) above (collectively, the "CCA's") and with respect to the entities in (p) and (q) above (collectively, the "JPA's"), the carve- out includes each of the governmental unit constituent members of the CCA's and the JPA's, solely in such governmental unit's capacity as a constituent member of the applicable CCA or JPA.

Nothing herein shall prevent or otherwise restrict a Receiving Party from notifying, confidentially and in good faith, law enforcement or regulatory personnel of a governmental unit of a potential violation of law revealed by the Discovery Material; provided that such notification shall not involve the transmission of the Protected Materials themselves.

4.     DURATION

Even after Debtors' emergence from Bankruptcy, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a Court order otherwise directs. The Debtors' emergence from Bankruptcy shall not relieve the Parties from their responsibility to maintain the confidentiality of Discovery Material pursuant to this Order, and the Court shall retain jurisdiction to enforce the terms of this Order.

5.       DESIGNATING PROTECTED MATERIAL

          5.1    Manner and Timing of Designations. Subject to Paragraphs 5.5 and 5.6 and, except as otherwise provided in this Order, or as otherwise stipulated or ordered, Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced. Any Producing Party may designate Discovery Material as "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", "PROFESSIONAL EYES ONLY" or "CONTRACTOR CONFIDENTIAL" in accordance with the following provisions:

          5.2    "CONFIDENTIAL" Material. A Producing Party may designate Discovery Material as "CONFIDENTIAL" if such Producing Party believes in good faith (or with respect to documents received from another person, has been reasonably advised by such other person) that: (1) such Discovery Material (a) constitutes or contains nonpublic proprietary or confidential technical, business, financial, personal or other information of a nature that can be protected under the Bankruptcy Rules or the Federal Rules or (b) is subject by law or by contract to a legally protected right of privacy; or (2) the Producing Party (a) is under a preexisting obligation to a third-party to treat such Discovery Material as confidential or (b) has in good faith been requested by another Party to so designate such Discovery Material on the grounds that such other Party considers such Discovery Material to contain information that is confidential or proprietary to such Party.

          5.3    "HIGHLY CONFIDENTIAL" or "PROFESSIONAL EYES ONLY" Material. A Producing Party may designate Discovery Material as "HIGHLY CONFIDENTIAL" and/or "PROFESSIONAL EYES ONLY" if such Producing Party believes in good faith (or with respect to documents received from another person, has been reasonably advised by such other person) that such Discovery Material constitutes or includes "HIGHLY CONFIDENTIAL" and/or "PROFESSIONAL EYES ONLY" Material that is of such a nature that a risk of competitive injury or a material risk to the Debtors' development of a plan of reorganization or emergence from Bankruptcy would be created if such Discovery Material were disclosed to persons other than those identified in Paragraph 7.3 of this Order, such as trade secrets, sensitive financial, personal or business information, including insurance policy information, or material prepared by its industry advisors, financial advisors, accounting advisors, experts or consultants (and their respective staff) that are retained by any Party in connection

Case: 19-30088   Doc# 8492   Filed: 07/22/20   Entered: 07/22/20 17:12:17   Page 19 of 34

with these Chapter 11 Cases, and only to the extent that the Producing Party believes in good faith that such material is of such a nature that Highly Confidential or Professional Eyes Only treatment is warranted.

    5.4 <u>"CONTRACTOR CONFIDENTIAL" Material.</u>

    (a) A Producing Party may designate Discovery Material as "CONTRACTOR CONFIDENTIAL" if disclosure of such Material to a PG&E contractor would create a substantial risk of serious harm that could not be avoided by less restrictive means. "PG&E Contractors" means any person or entity retained to provide any goods and/or services to PG&E. This designation will also encompass the following: (1) any information copied or extracted from Contractor Confidential material; (2) all copies, excerpts, summaries, or compilations of Contractor Confidential material; and (3) any testimony, conversations, or presentations by parties or their Counsel that might reveal Contractor Confidential material.

    (b) If a PG&E Contractor is a Producing Party, the PG&E Contractor may redact sensitive and proprietary information at the time of its initial production, identifying the redaction by general description (for example, "bidding calculations," or "profit information"). If any Party objects to the redaction of such information and contends that a particular need exists for production of the redacted information, the procedures for challenging confidential designations in Paragraph 6 shall apply to the redaction.

    5.5 <u>Manner Of Designating Discovery Material.</u> Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", "PROFESSIONAL EYES ONLY" "CONTRACTOR CONFIDENTIAL" to each page that contains protected material.

(b) for testimony given in deposition or in other pretrial or trial proceedings, such testimony may be designated as appropriate by: (a) Stating so orally on the record and requesting that the relevant portion(s) of testimony is so designated; or (b) Providing written notice within seven (7) days of the Party's receipt of the final transcript from the court reporter that the relevant portion(s) of such

Case: 19-30088 Doc# 8492 Filed: 07/22/20 Entered: 07/22/20 17:12:17 Page 20 of 34

transcript or recording of a deposition thereof is so designated, except in the event that a hearing on related issues is scheduled to occur within seven (7) days, in which case the foregoing seven (7) day period will be reduced to three (3) business days. Until expiration of the aforesaid designation period, as applicable, following receipt of the transcript by the Parties, all deposition transcripts and recordings shall be considered and treated as Confidential Material unless otherwise designated by counsel to any Party on the record at the deposition or in other pretrial or trial proceedings.

(c)     for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", "PROFESSIONAL EYES ONLY" or "CONTRACTOR CONFIDENTIAL."

    5.6 <u>Inadvertent Failures to Designate.</u> The failure to designate particular Discovery Material as "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", "PROFESSIONAL EYES ONLY" or "CONTRACTOR CONFIDENTIAL" at the time of production shall not operate to waive a Producing Party's right to later designate such Discovery Material as Protected Material or later apply another designation pursuant to this Order ("Misdesignated Material"). At such time, arrangement will be made for the destruction of the Misdesignated Material or for the return to the Producing Party of all copies of the Misdesignated Material and for the substitution, where appropriate, of properly labeled copies of such Discovery Material. Upon receipt of replacement copies of such Misdesignated Material with the proper designation, the Receiving Party or Parties shall promptly take all commercially reasonable steps to return or destroy all previously produced copies of such Misdesignated Material. If requested by the Producing Party, a Receiving Party shall verify in writing that it has taken all commercially reasonable steps to return or destroy such Misdesignated Material. No Party shall be deemed to have violated this Order if, prior to notification of any later designation, such Discovery Material was disclosed or used in any manner consistent with its original designation but inconsistent with its later designation. Once such later designation has been made, however, any Discovery Material shall be treated in accordance with that later designation; provided, however, that if the material that was not designated has been, at the time of the later designation, previously publicly filed

with a Court, no Party shall be bound by such later designation except to the extent determined by the Court upon motion of the Party that did not make the designation.

6.     CHALLENGING CONFIDENTIALITY DESIGNATIONS

      6.1     Timing of Challenge to Confidentiality Designations. A Receiving Party shall not be obliged to challenge the propriety of a confidentiality designation at the time made, and a failure to do so shall not preclude a subsequent challenge thereto. The failure of any Party to challenge the designation by a Producing Party of Discovery Materials as "Confidential," "Highly Confidential," or "Professional Eyes Only" during the discovery period shall not be a waiver of that Party's right to object to the designation at trial.

      6.2     Meet and Confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Order. Within five (5) business days of the date of service of the notice challenging the designation, the Parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the Protected Material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

      6.3     Judicial Intervention. If the Parties cannot resolve a challenge without court intervention and if either the Challenging Party or the Designating Party wishes to then seek Court intervention, both the Challenging Party and Designating Party shall submit a joint letter or motion to the Court, reflecting each party's position, describing adherence to paragraph 6.2's "meet and confer" requirement, and attaching any relevant information (including documents or declarations), within ten (10) business days after the conclusion of efforts to meet and confer and the indication in writing by either the Challenging Party or the Designating Party of its intent to seek court intervention. If by joint

1   motion, the motion shall be set at the first available date on regular notice. The Court expects the

2   parties to cooperate in the preparation of the joint letter or motion so that each side has adequate time

3   to prepare its own arguments and address its adversary's arguments before submission. The burden of

4   persuasion in any such challenge proceeding shall be on the Designating Party.

5         All Parties shall continue to afford the material in question the level of protection to which it is

6   entitled under the Producing Party's designation until the Court rules on the challenge.

7   7.     ACCESS TO AND USE OF DISCOVERY MATERIAL

8         7.1     Use of Discovery Material. A Receiving Party may use Discovery Material that

9   is disclosed or produced by another Party solely for the purposes of these Chapter 11 Cases and not for

10   any other purpose, including any other litigation or judicial proceedings, or any business, competitive,

11   governmental, commercial, or administrative purpose or function. In the case of use by Official

12   Committees or Committee Professionals, Protected Material may be used only in a manner consistent

13   with the Committee's duties and responsibilities. Such Protected Material may be disclosed only to the

14   categories of persons and under the conditions described in this Order. When the Debtors emerge from

15   Bankruptcy, a Receiving Party must comply with the provisions of section 14 below (FINAL

16   DISPOSITION). For the avoidance of doubt, the administration of the Fire Victim Trust and the

17   prosecution of the Assigned Claims is deemed to be for the purposes of these Chapter 11 Cases and

18   Discovery Material may be used in connection with the administration of the Fire Victim Trust and the

19   prosecution of the Assigned Claims.

20         Protected Material must be stored and maintained by a Receiving Party at a location and in a

21   secure manner that ensures that access is limited to the persons authorized under this Order.

22         7.2     Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise

23   ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose

24   any information or item designated "CONFIDENTIAL" only to:

25   (a)     the officers, directors, employees, and Counsel of the Receiving Party to whom disclosure is

26   reasonably necessary for purposes of the Chapter 11 Cases or a Case;

27   (b)     where the Receiving Party is an Official Committee, its members, Outside Counsel and its

28   advisors that are retained by the Official Committee or its Outside Counsel and where necessary

1 approved by the Court, to whom disclosure is reasonably necessary for purposes of the Chapter 11

2 Cases or a Case;

3 (c) the Debtors;

4 (d) any Official Committee, including its members, and the Official Committee's Outside Counsel

5 to whom the Producing Party has given consent;

6 (e) the U.S. Trustee;

7 (f) any other persons specified in Paragraph 7.3 below.

8       7.3    Disclosure of "HIGHLY CONFIDENTIAL" or "PROFESSIONAL EYES

9 ONLY" Information or Items. Unless otherwise ordered by the Court or permitted in writing by the

10 Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY

11 CONFIDENTIAL" or "PROFESSIONAL EYES ONLY" only to:

12 (a) Outside Counsel of the Receiving Party to whom disclosure is reasonably necessary for

13 purposes of the Chapter 11 Cases or a Case;

14 (b) the Fire Victim Trustee and the Claims Administrator under the Fire Victim Trust approved by

15 the Court and their respective staff, advisors, experts, consultants, and counsel, or financial advisors,

16 accounting advisors, experts and consultants (and their respective staff) that are retained by the

17 Receiving Party (and in the case of the Debtors or any Official Committee, approved by the Court) in

18 connection with the Chapter 11 Cases who have signed the "Acknowledgment and Agreement to Be

19 Bound" (Exhibit A);

20 (c) financial advisors, accounting advisors, experts and consultants (and their respective staff) that

21 are retained by any Party (and in the case of the Debtors or any Official Committee, approved by the

22 Court) in connection with the Chapter 11 Cases, to whom the Producing Party may consent in writing

23 and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

24 (d) Outside Counsel for the U.S. Trustee;

25 (e) the Bankruptcy Court or any Court to which an appeal of a Case is taken, and their personnel;

26 (f) court reporters and their staff, professional jury or trial consultants, mock jurors, and

27 Professional Vendors to whom disclosure is reasonably necessary for purposes of the Chapter 11 Cases

28 or a Case and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g)     for purposes of witness preparation, any deponent or witness who was noticed for a deposition, or is on a witness list for hearing or trial, in preparation for his or her noticed deposition, hearing, or trial testimony where such Protected Material is determined by counsel in good faith to be necessary to the anticipated subject matter of testimony, and that doing so would not cause competitive harm, provided, however, that such persons (1) sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), (2) are only provided such Protected Material in connection with preparation for the anticipated testimony, and (3) shall not be permitted to retain copies of such Protected Material.

(h)     Deponents and witnesses where counsel has a good faith basis for believing that the witness would have had knowledge of the contents of the Protected Material in the course of fulfilling his or her responsibilities or has information that directly bears upon the Protected Material.

(i)     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

(j)     any adverse witness during the course of a deposition where counsel questioning the witness reasonably and in good faith believes that questioning the witness regarding the document is necessary and that doing so would not cause competitive harm and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

(k)     any other person or entity with respect to whom the Producing Party may consent in writing and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A). A request by a Receiving Party under this Section 7.3(k) must be in writing and reasonably specify the Discovery Materials that it seeks to disclose, the "person or entity" to which it seeks to disclose this Discovery Material, and the reason it seeks to disclose these Discovery Materials. The Producing Party shall use reasonable best efforts to provide a response in three (3) business days, and no later than (5) business days, from receipt of a written request. If the request is denied, either Party may promptly seek Court intervention.

       7.4     <u>Disclosure of "CONTRACTOR CONFIDENTIAL" Information or Items.</u> Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONTRACTOR CONFIDENTIAL" only to

Case: 19-30088   Doc# 8492   Filed: 07/22/20   Entered: 07/22/20 17:12:17   Page 25 of 34

those parties listed in sections 7.2 – 7.3, but may not disclose such information to PG&E contractors or their advisors.

7.5 <u>Filing or Submitting Protected Material To Court.</u> Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record related to a Case or the Chapter 11 Cases any Protected Material. A Party that seeks to file any Protected Material with the Court must file under seal in accordance with the Federal Rules, the Bankruptcy Rules, the Local Rules, and the individual practice rules of the Judge. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue.

7.6 <u>Use of Protected Material in Open Court.</u> The limitations on disclosure in this Order shall not apply to any Discovery Materials offered or otherwise used by any Party at trial or any hearing held in open court except as provided in this paragraph. As part of any pretrial conference or any meet and confer regarding the use of exhibits in any evidentiary hearing, and at least 72 hours prior to the use of any Protected Material at trial or any hearing to be held in open court, counsel for any Party who desires to offer or use such Protected Material at trial or any hearing to be held in open court shall meet and confer in good faith with the Producing Party together with any other Parties who have expressed interest in participating in such meet and confer to discuss ways to redact the Protected Material so that the material may be offered or otherwise used by any party, in accordance with the provisions of the Bankruptcy Code and Bankruptcy Rules. If the Parties are unable to resolve a dispute related to such Protected Material, then the Party who desires to offer or use such Protected Material at trial or any hearing to be held in open court bears the burden of requesting relief from the Court and, in the absence of such relief, such Protected Material shall not be offered or otherwise used at trial or any hearing held in open court.

8. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER PROCEEDINGS

If a Party is served with a subpoena or a court order issued in other proceedings that compels disclosure of any information or items designated in a Case or these Chapter 11 Cases as

"CONFIDENTIAL", "HIGHLY CONFIDENTIAL", "PROFESSIONAL EYES ONLY", or "CONTRACTOR CONFIDENTIAL" that Party must:

(a)     promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b)     promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order. Such notification shall include a copy of this Order; and

(c)     cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any Protected Material before a determination by the Court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that Court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another Court.

In addition to the notice obligations set forth above, in any other litigation or proceedings instituted by or against the Fire Victim Trust involving the disclosure of information or items designated in a Case or these Chapter 11 Cases as "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", "PROFESSIONAL EYES ONLY", or "CONTRACTOR CONFIDENTIAL" pursuant to this Order, the Fire Victim Trust shall, prior to disclosing Protected Material, seek entry in the relevant proceedings of a protective order and confidentiality agreement that provides similar protections for such items and/or information as set forth in this Order.

9.     UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request

such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A. Disclosure of Protected Material other than in accordance with the terms of this Order may subject the disclosing person to such sanctions and remedies as the Court may deem appropriate.

10.    INADVERTENT PRODUCTION OF PRIVILEGED DISCOVERY MATERIAL

This Order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. If a Producing Party produces materials that the Producing Party later discovers to be privileged or subject to other protection, such as work-product protection, the production of that material shall not be deemed to constitute the waiver of any applicable privileges or protections. In such circumstances, shortly after the Producing Party becomes aware that privileged material was produced, it must notify the Receiving Party and request, at the Producing Party's election, either the return or the destruction of the produced material. Immediately after receiving such notification, the Receiving Party shall, as instructed, return or destroy and confirm destruction of all such produced material, including all copies, notes, and/or summaries thereof in any Receiving Party work product. The Receiving Party shall not use the contents of such material for any purpose, including in connection with any effort seeking to compel production of the produced material. The Receiving Party must take reasonable steps to retrieve the produced material if the Receiving Party disclosed it before being notified. Such return or destruction and confirmation of destruction shall not preclude the Receiving Party from seeking to compel production of the produced material for reasons other than its production or any information about the contents of the material that was gained due to its production. Moreover, this Order shall not prevent any Party from challenging the designation of such material as privileged or protected and moving to compel production of allegedly privileged or protected documents. If the Receiving Party becomes aware during the review of any material that is likely to be privileged or subject to other protection, the Receiving Party shall immediately notify the Producing Party and sequester the material until the Producing Party has had a reasonable opportunity to respond.

11.    DEPOSITIONS

11.1    Presence Of Persons During Deposition Testimony. Anyone who attends a deposition is subject to the provisions of this Order with respect to such deposition. When Protected

1  Material is elicited during a deposition, persons not entitled to receive such information under the

2  terms of this Order shall, upon request, be excluded from the portion of the deposition so designated.

3       11.2   <u>Responsibilities And Obligations Of Court Reporters.</u> In the event that

4  testimony is designated as Confidential, Highly Confidential or Professional Eyes Only Material, the

5  court reporter, who shall first have agreed to abide by the terms of this paragraph, shall be instructed to

6  include on the cover page of each such transcript the legend, "This transcript portion contains

7  information subject to a Protective Order and shall be used only in accordance therewith," and each

8  page of the transcript shall include the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL",

9  "PROFESSIONAL EYES ONLY" or "CONTRACTOR CONFIDENTIAL" as appropriate. If the

10  deposition is recorded, the recording shall also be subject to the same level of confidentiality as the

11  transcript and include the legend "CONFIDENTIAL", "HIGHLY CONFIDENTIAL",

12  "PROFESSIONAL EYES ONLY," or "CONTRACTOR CONFIDENTIAL" as appropriate, if any

13  portion of the transcript itself is so designated.

14  <u>12.    PRODUCTION OF CUSTOMER SMART METER DATA</u>

15       12.1   Pursuant to California Public Utilities Commission Decision No. 11-07-056 and

16  related decisions, utility customer smart meter usage data may only be disclosed after providing

17  affected customers with seven days notice and an opportunity to object to such disclosure as required

18  by the Decision. Pursuant to Debtor Pacific Gas and Electric Company's tariff Electric and Gas Rules

19  9.M and 27, confidential customer information is subject to similar prior notice requirements as

20  applicable to such customer information. To the extent Debtors produce customer smart meter usage

21  data subject to these rules and tariffs, Debtors shall provide affected customers with appropriate notice

22  prior to production and appropriate notification to the affected customers as required by the rules and

23  tariffs. Producing Party and Receiving Party shall comply with all federal and state privacy laws as

24  applicable to customer data under this Order.

25  <u>13.    MISCELLANEOUS</u>

26       13.1   <u>Right to Further Relief.</u> Nothing in this Order abridges the right of any person to

27  seek its modification by the Court in the future, including as this Order applies to any particular

28  contested matter or adversary proceeding.

13.2   <u>Right to Assert Other Objections.</u> Nothing in this Order waives any right by a Party that it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Order.

13.3   <u>Continuing Applicability Of Order.</u> The provisions of this Order shall survive the Debtors' emergence from Bankruptcy for any retained Discovery Material. The Debtors' emergence from Bankruptcy shall not relieve the Parties from their responsibility to maintain the confidentiality of Discovery Material pursuant to this Order, and the Court shall retain jurisdiction to enforce the terms of this Order.

13.4   <u>Amendment Of Order.</u> This Order is subject to modification by this Court upon good cause shown by any Party. Nothing herein shall preclude a Party from applying at any time (including, without limitation, after the conclusion of these Chapter 11 proceedings) to the Court for relief from (including, without limitation termination of) any or all of the provisions of this Order. The Debtors and the Party seeking to modify or terminate the Order shall meet and confer in good faith to reach an agreement on any issues in dispute concerning the meaning, application, or interpretation of this Order prior to any application to the Court for resolution of such dispute. A Producing Party and a Receiving Party may agree to modify this Order as it applies to a particular production or a particular proceeding in the Cases with (7) business days prior notice to the Debtors.

13.5   <u>Use Of Discovery Material By Producing Party.</u> Nothing in this Order affects the right of any Producing Party to use or disclose its own Discovery Material in any way. Such disclosure will not waive the protections of this Order and will not otherwise entitle other Parties or their attorneys to use or disclose such Discovery Material in violation of this Order.

13.6   <u>Obligations Of Parties.</u> Nothing herein shall relieve a Party of its obligations under the Federal Rules, Bankruptcy Rules, Local Rules, or under any future stipulations and orders, regarding the production of documents or the making of timely responses to Discovery Requests in connection with any Dispute or the Chapter 11 Cases.

13.7   <u>Advice Of Counsel.</u> Nothing herein shall prevent or otherwise restrict counsel from rendering advice to their clients in connection with these Chapter 11 proceedings and, in the

1    course thereof, relying on examination of Protected Material; provided, however, that in rendering

2    such advice and otherwise communicating with such client, counsel shall not make specific disclosure

3    of any information in any manner that is inconsistent with the restrictions or procedures set forth

4    herein.

5            13.8   <u>Enforcement.</u> The provisions of this Order constitute an Order of this Court and

6    violations of the provisions of this Order are subject to enforcement and the imposition of legal

7    sanctions in the same manner as any other Order of the Court.

8    <u>14.    FINAL DISPOSITION</u>

9          Within 90 days after the conclusion of the Debtors' emergence from Bankruptcy, unless

10   otherwise ordered by the Court or described herein, each Receiving Party must return all Protected

11   Material, other than Protected Material intended for the Fire Victim Trust, to the Producing Party or

12   destroy such material. With respect to Discovery Material provided to the Fire Victim Trust, the Fire

13   Victim Trustee and Claims Administrator shall destroy or return Protected Material within 90 days of

14   the later of (a) the Claims Administrator notifying the Court that the Fire Victim Trust administration

15   process has concluded and (b) the Fire Victim Trustee notifying the Court that the investigation,

16   prosecution, and litigation of the Assigned Claims has concluded. As used in this subdivision, "all

17   Protected Material" includes all copies, abstracts, compilations, summaries, and any other format

18   reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or

19   destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not

20   the same person or entity, to the Designating Party) by the 90 day deadline that (1) identifies (by

21   category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms

22   that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other

23   format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Outside

24   Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and

25   hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports,

26   attorney work product, and consultant and expert work product, even if such materials contain

27   Protected Material. A Receiving Party's obligations under this paragraph shall not require the

28   destruction or return of Confidential, Highly Confidential or Professional Eyes Only Material by

1    Outside Counsel that is stored on backup storage or in archiving solutions made in accordance with

2    regular data backup procedures for disaster recovery or litigation hold, provided that Outside Counsel

3    maintains the confidentiality thereof in accordance with this Order. If a Receiving Party chooses to

4    take all commercially reasonable steps to destroy, rather than return, documents in accordance with

5    this paragraph, that Receiving Party shall, if requested by the Producing Party, verify such destruction

6    in writing to counsel for the Producing Party. Notwithstanding anything in this paragraph, to the extent

7    that the information in the Discovery Material remains confidential, the terms of this Order shall

8    remain binding.

9                                    **END OF ORDER**

<u>EXHIBIT A</u>

<u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Confidentiality and Protective Order that was issued by the United States Bankruptcy Court for the Northern District of California on ==[date]== in *In re PG&E Corp.*, et al., CASE NO. 3:19-bk-30088 (the "Order"). I agree to comply with and to be bound by all the terms of the Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to the Order to any person or entity except in strict compliance with the provisions of the Order.

I further agree to submit to the jurisdiction of the United States Bankruptcy Court for the Northern District of California for the purpose of enforcing the terms of this Confidentiality and Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of the Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

63819121 v1-WorkSiteUS-000002/3660

| Summary report: Litera® Change-Pro for Word 10.8.2.11 Document comparison done on 7/20/2020 4:07:26 PM | |
|---|---|
| **Style name:** Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 2019.08.06 - Protective Order and Confidentiality Agreement_final.docx | |
| **Modified filename:** 7.16 Protective Order- Redline_Word_BR edits (7.20.20 Version with Incremental Versions).DOCX | |
| **Changes:** | |
| Add | 11 |
| Delete | 1 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 12 |

Case: 19-30088   Doc# 8492   Filed: 07/22/20   Entered: 07/22/20 17:12:17   Page 34