WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>      - and –<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                              **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**DECLARATION OF DANIEL BOWMAN IN SUPPORT OF DEBTORS' THIRD SUPPLEMENTAL APPLICATION PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) AND FED. R. BANKR. P. 2014(a) AND 2016 FOR AUTHORITY TO RETAIN AND EMPLOY PRICEWATERHOUSECOOPERS LLP AS MANAGEMENT, TAX, INTERNAL ACCOUNTING, AND ADVISORY CONSULTANTS TO THE DEBTORS *NUNC PRO TUNC* TO PETITION DATE** |

I, Daniel Bowman, being duly sworn, state the following under penalty of perjury:

I am a principal at PricewaterhouseCoopers LLP ("**PwC**"), an accounting and financial services firm that maintains offices at Three Embarcadero Center, San Francisco, California 94111. I am duly authorized to make this declaration (this "**Third Supplemental Declaration**") on behalf of PwC and submit it (a) in support of the *Third Supplemental Application of Debtors Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ PricewaterhouseCoopers LLP as Management, Tax, Internal Accounting, and Advisory Consultants to the Debtors Nunc Pro Tunc to Petition Date* (the "**Third Supplemental Application**") and (b) in compliance with the *Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ PricewaterhouseCoopers LLP as Management, Tax, Internal Accounting, and Advisory Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 2230] (the "**Retention Order**"), the *Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Amend the Scope of PricewaterhouseCoopers LLP as Management, Tax, Internal Accounting, and Advisory Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 4959] (the "**First Supplemental Retention Order**"), and the *Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Amend the Scope of PricewaterhouseCoopers LLP as Management, Tax, Internal Accounting, and Advisory Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 6751] (the "**Second Supplemental Retention Order**", together with the Retention Order, and the First Supplemental Retention Order, the "**PwC Retention Orders**").[1] Unless otherwise stated in this Third Supplemental Declaration, I have personal knowledge of the facts set forth herein.[2]

More specifically, I submit this Third Supplemental Declaration in connection with the proposed continued and expanded retention of PwC as management, tax, and advisory consultants for PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Third Supplemental Application.
[2] Certain disclosures herein relate to matters within the personal knowledge of other professionals at PwC and are based on information provided by them.

(the "**Chapter 11 Cases**") to perform those engagements summarized in the Third Supplemental Application (the "**Third Supplemental Engagements**").³

By way of background, on May 1, 2019, the Debtors filed the *Application Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ PricewaterhouseCoopers LLP as Management, Tax, and Advisory Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 1791] (the "**Original Retention Application**"). In support of the Original Retention Application, the Debtors filed the *Declaration of Daniel Bowman in Support of Debtors' Application Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ PricewaterhouseCoopers LLP as Management, Tax, and Advisory Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 1792] (the "**Bowman Declaration**"). The various engagements described in the Original Retention Application and the Bowman Declaration (the "**Original Engagements**") included, but were not limited to various management, operations and legal support activities, strategic analysis services and bankruptcy tax and accounting advisory services.

On May 24, 2019, the Court entered the Retention Order approving the Original Retention Application and authorizing PwC to perform the Original Engagements *nunc pro tunc* to the Petition Date. Many of the Original Engagements were subject to work orders that, consistent with historical practice between PG&E and PwC, were for a set term of short duration (e.g., three to four months) and, by the terms of such agreements, required written extensions executed by the parties in order for such work to continue.

At various times following the Petition Date, the terms of the Original Engagements expired but the Debtors requested that PwC continue such work so that the various management, tax, and advisory consulting service projects that were the subject of the Original Engagements approved by the Retention Order could continue without interruption as any delay in the performance of such services would clearly

---

³ The summary of the Third Supplemental Engagements included in this Third Supplemental Declaration is provided for purposes of convenience only and is qualified in its entirety by reference to the Third Supplemental Engagements. To the extent that this Third Supplemental Declaration and the terms of each Third Supplemental Engagement are inconsistent, the terms of the Third Supplemental Engagement shall control.

3

be detrimental to the Debtors' estates. Additionally, following the Petition Date, the Debtors requested that PwC undertake several entirely new projects in connection with the Chapter 11 Cases that were consistent with PwC's core capabilities and expertise.

On November 7, 2019, the Debtors filed a supplemental retention application (the "**First Supplemental Application**") amending the scope of PwC's retention by requesting approval for its supplemental engagements representing continuation of expired Original Engagements and new projects requested to be performed by the Debtors (the "**First Supplemental Engagements**"). On December 2, 2019, the Court entered the supplemental retention order (the "**First Supplemental Order**") approving the First Supplemental Retention Application and authorizing PwC to amend and expand their Original Engagements and approving the First Supplemental Engagements *nunc pro tunc* to the Petition Date.

On March 18, 2020, the Debtors filed a second supplemental retention application (the "**Second Supplemental Retention Application**") amending the scope of PwC's retention by requesting approval for additional engagements representing continuation of expired First Supplemental Engagements and new projects requested to be performed by the Debtors (the "**Second Supplemental Engagements**", together with the Original Engagements, and the First Supplemental Engagements, the "**Approved Engagements**"). On April 13, 2020, the Court entered the Order authorizing PwC to amend and expand their Second Supplemental Engagements *nunc pro tunc* to the Petition Date.

Consistent with the previous Retention Orders, and in an effort to ensure continued and uninterrupted provision to the Debtors of necessary services, PwC and the Debtors have entered into agreements for several Third Supplemental Engagements described in greater detail below, recognizing that such agreements would ultimately need to be approved by the Court upon Third Supplemental Application.

The scope of the continuing and additional work contemplated by the Third Supplemental Engagements is summarized as follows:

Third Supplemental Services Provided Pursuant to the MSA. Pursuant to the terms and conditions of that certain Master Services Agreement, dated as of January 17, 2017 (previously attached to the *Bowman Declaration* [Docket No. 1792, Exhibit 1] (as amended December 13, 2019, the "**Master**

4

Services Agreement Amendment"), including three expanded contracts and two new contracts related thereto (the "**Third Supplemental MSA Contracts**") by and between the Debtors and PwC (such Third Supplemental MSA Contracts, collectively with the Master Services Agreement, and the Master Services Agreement Amendment, the "**MSA**"), attached hereto as **Exhibits 1-A through 1-E**, PwC continues to provide management and advisory services to the Debtors, to the extent expressly required by and as more particularly described in the applicable agreements.

    A.    <u>Hourly Fees - Extensions of Previously Approved Services</u>

        i.    Perform forensic collection of data from electronic devices related to the 2017 North Bay Fires and 2018 Camp Fire (the "**E-Discovery Services**" as described in **Exhibit 1-B** hereto);

    B.    <u>Fixed-Fee Engagements – Extensions of Previously Approved Services</u>

        i.    Assist the Debtors with their corporate incident reporting processes related to the 2018 Camp Fire and other major events in the Debtors' service territory, including, operations and legal support activities (the "**Camp Fire Services**", as described in **Exhibits 1-A** hereto);

        ii.    Assist the Debtors with their approach and response reporting processes related to the Public Safety Power Shutoff ("**PSPS**") program, including but not limited to: process development of the program, documentation and training, and execution of the PSPS program (the "**PSPS Program Support Services**", as described in **Exhibit 1-C** hereto);

    C.    <u>Fixed Fee Engagements – Other Services</u>

        (i)    Assist the Debtors with their assessment of the Electric Operations team with plans, strategy and documentation, assisting Debtors' management with the training and implementation of certifications, as mutually agreed (the "**Electric Asset Excellence Program**", as described in **Exhibit 1-D** hereto);

        (ii)    Assist the Debtors with its Ariba Supply Chain including streamline the supplier onboarding process, automation of the supplier data registration and implementation of a process to support solutions for cost management and reporting (the "**Ariba Supply Chain Support Services**", as described in **Exhibit 1-E** hereto);

<u>Recurring Tax Services</u>. Pursuant to the terms and conditions of that certain Recurring Tax Services Engagement Letter (previously attached to the *Bowman Declaration* [Docket No. 6365, Exhibit 3]), the Debtors and PwC have amended the terms of the services provided under the Recurring

Tax Services Engagement Letter, as set forth in **Exhibit 2** to the Third Supplemental Bowman Declaration (the "**Amended Recurring Tax Services Engagement Letter**" and, together with the Recurring Tax Services Engagement Letter, the "**Engagement Letter**"). The terms of the tax recurring services are amended to include a variety of state and local tax issues, including, but not limited to, state assessee property tax valuations, positions, and filings, state and local sales tax issues, and state and local income tax issues (the "**State Tax Services**").

PwC is well qualified and uniquely able to perform the services and represent the Debtors in these Chapter 11 Cases in an efficient and timely manner. Therefore, PwC submits that continued employment and retention of PwC as management, tax, and advisory consultants to the Debtors as set forth in the agreements governing the Third Supplemental Engagements is in the best interests of the Debtors, their creditors and all parties in interest.

It is my understanding that the Debtors intend that the services of PwC described herein will complement and will not duplicate the services rendered by any other professional retained by the Debtors in these Chapter 11 Cases. PwC understands that the Debtors have retained and may retain additional professionals during the term of the engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors and avoid the duplication of services being rendered by PwC and other professionals in these Chapter 11 Cases.

To the extent that the Debtors and PwC later determine that PwC will perform additional services deemed appropriate and necessary to benefit the Debtors' estates, PwC and the Debtors may enter into additional agreements with respect to such services and will seek separate retention orders with regard to any such additional agreements.

PwC intends to apply to the Court for allowance of compensation and reimbursement of expenses for the services performed for the Debtors, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines, and any applicable Orders of the Court, both in connection with this Third Supplemental Application and any interim and final fee applications to be filed by PwC in these Chapter 11 Cases, in accordance with the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

terms and conditions of the MSA and the Engagement Letter. Moreover, PwC will make reasonable efforts to comply with the requests of the United States Trustee ("the **U.S. Trustee**") for information and additional disclosures as set forth in the Fee Guidelines or any other applicable Orders.

PwC's decision to advise and assist the Debtors in connection with these Chapter 11 Cases is subject to its ability to be retained in accordance with the terms set forth in the MSA and the Engagement Letter. Subject to this Court's approval, PwC, in accordance with its customary terms and conditions of employment, including the proposed compensation arrangements set forth in the respective MSA Contracts and Engagement Letters (the "**Fee Structures**"), for (a) compensation on an hourly basis for the Bankruptcy E-Discovery Services in accordance with PwC's ordinary and customary rates in effect on the date such services are rendered; (b) compensation on a fixed-fee basis for the Camp Fire Services, PSPS Program Support Services, Electric Asset Excellence Program Support Services, Ariba Supply Chain Support Services, and State Tax Services in accordance with the terms of each respective Third Supplemental MSA Contract; and (c) reimbursement of actual and necessary costs and expenses incurred by PwC in connection with all services performed on behalf of the Debtors. I believe that these Fee Structures and compensation for each of the Third Supplemental Supplemental Engagements are market-based and reasonable considering PwC's knowledge and experience.

<u>Hourly Fee Engagements</u>. The hourly rates set forth below are PwC's applicable hourly rates for the work of its professionals and staff members for the E-Discovery engagement set forth more fully at Exhibit 1-B. These hourly rates reflect PwC's normal and customary billing practices for engagements of this complexity and magnitude. PwC's hourly rates are subject to periodic adjustment from time to time in accordance with PwC's established billing practices and procedures. PwC will provide reasonable notice of any changes to its hourly rates to the Debtors and the U.S. Trustee.

| Billing Category | E-Discovery Services |
|---|---|
| Partner / Principal | $499 |
| Director/Senior Manager | $404 |
| Manager | $329 |
| Senior Associate | $267 |
| Associate | $172 |

7

Case: 19-30088    Doc# 8496    Filed: 07/22/20    Entered: 07/22/20 17:42:59    Page 7 of 11

<u>Fixed-Fee Engagements</u>. The Debtors and PwC have agreed to fixed-fee compensation for several of the MSA Contracts and the Engagement Letter. These fixed-fee estimates are based on the time required by the individuals assigned to the Debtors' engagements. In addition, the fee estimates are based on the assumption that the Debtors will provide certain information and assistance to PwC.

| Services | Fixed-Fee Amount |
|---|---|
| Camp Fire Services – Change Order No. 5 (Exhibit 1-A) | $250,000 |
| PSPS Program Support Services – Change Order No. 4 (Exhibit 1-C) | $360,000 |
| Electric Asset Excellence Program Services (Exhibit 1-D) | $1,800,000 |
| Ariba Supply Chain Support Services (Exhibit 1-E) | $700,000 |
| State Tax Services (Exhibit 2) | $50,000 |

<u>Expenses.</u> Additionally, as was the case with the expenses described in the Original Retention Application and the Bowman Declaration (and approved by the Retention Orders) PwC will continue to invoice the Debtors for its reasonable out-of-pocket expenses charged during the Chapter 11 Cases, which include, among other things, telephone and other charges, mail and express mail charges, travel expenses, expenses for "working meals" and computerized research, applicable sales, use or value added tax, as well as non-ordinary costs such as secretarial and other overtime.

It is PwC's intention to seek compensation for its services as described in the Third Supplemental Application and the MSA and Engagement Letter in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines and any and all rules and Orders of this Court. It is not the practice of PwC's professionals to keep detailed time records in one tenth-of-an-hour increments (i.e., six-minute increments) as customarily kept by attorneys who are compensated subject to approval of the Bankruptcy Court. Instead, the customary practice of PwC's professionals is to keep reasonably detailed records of services rendered during the course of an engagement in half-hour (0.5) increments. Thus, in the Third Supplemental Application, the Debtors request that this Court allow PwC's professionals to provide the following in its monthly, interim, and final fee applications: (a) a narrative summarizing each project category and the services rendered under each project category; (b) as an exhibit to each monthly, interim, and final fee application that PwC files in these Chapter 11 Cases, a summary, by project category, of services rendered to the Debtors, which identifies each professional

rendering services, the number of hours expended by each professional, and the amount of compensation requested with respect to the services rendered by each professional; and (c) reasonably detailed records of time in half-hour (0.5) increments, describing the services rendered by each professional and the amount of time spent on each date.

Given the nature of the services to be provided by PwC, such billing format and associated time details will be sufficient for the Debtors and other parties-in-interest to make informed judgments regarding the nature and appropriateness of PwC's services and fees.

As part of the overall compensation payable to PwC under terms of certain of the MSA Contracts and Engagement Letter, the Debtors have agreed to certain indemnification obligations as described in such MSA Contracts and Engagement Letter. The terms of the MSA and Engagement Letter and the indemnification provisions contained therein were fully negotiated in good faith and at arm's length.

PwC received from the Debtors an updated list of "Potential Parties in Interest," set forth on **Exhibit 3**. PwC's conflict analysis, completed under my supervision, consisted of queries of an internal computer database containing names of individuals and entities that are present or recent former clients of PwC in order to identify relationships with the Potential Parties in Interest. A summary of the relationships and representations that PwC was able to identify using its reasonable efforts is set forth on **Exhibit 4** to this Declaration, with such new additions to the list of connections in **bold**. PwC's representation of each entity listed on Exhibit 4 was or is only on matters that are unrelated to the Debtors and these Chapter 11 Cases.

Except as set forth on such hereto: (a) PwC has no connection with the Debtors, the Debtors' creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party with an actual or potential interest in these Chapter 11 Cases or their respective attorneys or accountants; (b) PwC is not a creditor, equity security holder, or insider of the Debtors; (c) neither PwC (nor any of its principals) is or was, within two years of the Petition Date, a director, officer or employee of the Debtors; and (d) PwC does not have an interest materially adverse to the Debtors, their estates or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason. Accordingly, to the best of my knowledge, PwC

is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

PwC should not be disqualified from acting as the Debtors' management, tax, internal accounting and advisory consultant merely because it represents the Debtors' creditors, equity holders or other parties in interests in matters unrelated to these Chapter 11 Cases.

To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of PwC's retention are discovered or arise, PwC will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

[*Signature on Next Page*]

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 22, 2020

> By: *Daniel Bowman*
> Daniel Bowman
> Principal
> PricewaterhouseCoopers LLP

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119