| | |
|---|---|
| 1 | WEIL, GOTSHAL & MANGES LLP |
| 2 | Stephen Karotkin (*pro hac vice*) (stephen.karotkin@weil.com) |
| 3 | Ray C. Schrock, P.C. (*pro hac vice*) (ray.schrock@weil.com) |
| 4 | Jessica Liou (*pro hac vice*) (jessica.liou@weil.com) |
| 5 | Matthew Goren (*pro hac vice*) (matthew.goren@weil.com) |
| 6 | 767 Fifth Avenue New York, NY 10153-0119 |
| 7 | Tel: 212 310 8000 Fax: 212 310 8007 |
| 8 | KELLER BENVENUTTI KIM LLP |
| 9 | Tobias S. Keller (#151445) (tkeller@kbkllp.com) |
| 10 | Jane Kim (#298192) (jkim@kbkllp.com) |
| 11 | 650 California Street, Suite 1900 San Francisco, CA 94108 |
| 12 | Tel: 415 496 6723 Fax: 650 636 9251 |
| 13 | *Attorneys for Debtors and Reorganized Debtors* |

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: <br><br> **PG&E CORPORATION,** <br><br> - and - <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br> **Debtors.** <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ☒ Affects both Debtors <br><br> *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM) <br> Chapter 11 (Lead Case) (Jointly Administered) <br><br> **DECLARATION OF JACOB R. SORENSEN IN SUPPORT OF APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. § 327(e), FED. R. BANKR. P. 2014(a) AND 2016, AND THE ORDER AUTHORIZING THE DEBTORS TO EMPLOY PROFESSIONALS USED IN THE ORDINARY COURSE OF BUSINESS FOR AUTHORITY TO RETAIN AND EMPLOY PILLSBURY WINTHROP SHAW PITTMAN LLP AS SPECIAL COUNSEL FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE** <br><br> Date: August 25, 2020 <br> Time: 10:00 a.m. (Pacific Time) <br> Place: (Telephonic or Video Appearances Only) <br>        United States Bankruptcy Court <br>        Courtroom 17, 16th Floor <br>        San Francisco, CA 94102 |

Pursuant to 28 U.S.C. § 1746, I, Jacob R. Sorensen, hereby declare as follows:

1. I am a partner of Pillsbury Winthrop Shaw Pittman LLP, and my office is located at Four Embarcadero Center, 22nd Floor, San Francisco, CA 94111 ("**Pillsbury**" or the "**Firm**").

2. I submit this Declaration in connection with the Application, submitted on the date hereof (the "**Application**"),[1] of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for authority to employ and retain Pillsbury as their special counsel for certain matters, effective as of January 29, 2019 (the "**Petition Date**"), at its existing agreed-upon hourly rates in effect from time to time and in accordance with its existing reimbursement policies applicable to the Debtors, in compliance with section 327(e) of title 11 of the United States Code (the "**Bankruptcy Code**"), and to provide the disclosure under the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Bankruptcy Local Rules for the U.S. District Court for the Northern District of California (the "**Bankruptcy Local Rules**") as applicable to retention under section 327(e) of the Bankruptcy Code. Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein. To the extent any information disclosed herein requires amendment or modification upon Pillsbury's completion of further review, or as additional information becomes available, a supplemental declaration will be submitted to the Court reflecting such amended, supplemented or otherwise modified information.

3. Except as set forth herein, to the best of my knowledge, after due inquiry, neither I, Pillsbury, nor any partner of, counsel to, or associate of the Firm represents any entity other than the Debtors in connection with these Chapter 11 Cases. In addition, except as set forth herein, to the best of my knowledge, after due inquiry, neither I, Pillsbury, nor any partner of, counsel to, or associate of the Firm represents any party in interest with respect to the matters for which Pillsbury is to be employed. Additionally, Pillsbury does not represent any party other than the Debtors in connection with the Specific Matters (as defined below) that are the subject of the Application.

---

[1] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to such terms in the Application.

**Background**

4. On February 27, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 105(a), 327, 328, and 330 Authorizing the Debtors to Employ Professionals Used in the Ordinary Course of Business Nunc Pro Tunc to the Petition Date* [Dkt No. 707] (the "**OCP Order**") authorizing the Debtors to retain and compensate legal services professionals that the Debtors employ in the ordinary course of business (collectively, the "**Ordinary Course Professionals**") subject to the terms of the OCP Order. Pillsbury has served as counsel to the Debtors prior to the Petition Date and has continued to serve in such capacity pursuant to the OCP Order. Pursuant to the OCP Order, the Debtors previously filed the *Declaration and Disclosure Statement of Jacob R. Sorensen, On Behalf of Pillsbury Winthrop Shaw Pittman LLP* (the "**Prior Sorensen Declaration**"), annexed as Exhibit A-51 to the *Notice of Filing of (I) Ordinary Course Professional Declarations and Retention Questionnaires and (II) List of Additional Ordinary Course Professionals* [Dkt. No 1130].

5. While Pillsbury was approved and has been serving as an Ordinary Course Professional in the Chapter 11 Cases, recent developments have compelled Pillsbury to dedicate significantly more time to its representation of the Debtors. Based on my discussions with the Debtors, the services they have asked Pillsbury to perform in connection with the Specific Matters have exceeded the caps set forth in the OCP Order; accordingly, the Debtors seek approval of Pillsbury as special counsel in connection with the Specific Matters pursuant to section 327(e) of the Bankruptcy Code, *nunc pro tunc* to the Petition Date, as contemplated by paragraph 2(ix) of the OCP Order. Pillsbury's continued representation of PG&E in these matters is the most efficient and cost-effective path for PG&E.

6. Pillsbury has represented and continues to represent and advise PG&E in (i) transactional matters relating to PG&E's relocation of its headquarters to Oakland, California (the "**Oakland Office Project**"); (ii) transactional matters relating to local energy generation in connection with mitigation of Public Safety Power Shutoff or PSPS events (the "**Energy Supply Advice**"); (iii) nuclear regulatory advice (the "**Nuclear Work**"); (iv) environmental enforcement defense and compliance advice (the "**Environmental Advice**"); and (v) general pre-litigation advice and strategy (the "**Litigation Advice**") (together, (i) through (v), the "**Specific Matters**"). The Specific Matters are described in more detail below.

### A. The Oakland Office Project

7. Pillsbury advised PG&E on the move of its headquarters from San Francisco to Oakland. Since the early 2000s, PG&E had been considering alternatives to its San Francisco headquarters and, in 2018, the Debtors engaged a property developer (TMG Partners R.E., LLC or "**TMG**") and a real estate company to assist in evaluating its options. Throughout the process, PG&E had been focused on finding a new headquarters that would allow it to consolidate its various Bay Area locations, improve employees' workspace, and increase collaboration and productivity. In 2019, PG&E briefly considered redeveloping and consolidating its operations into one of its San Francisco locations, but this option presented significant shortcomings.

8. In late 2019, PG&E found a replacement location in Oakland that could house all its employees, and Pillsbury was retained to provide counsel on this matter in early 2020. PG&E's board of directors approved a plan wherein TMG would acquire the Oakland property and enter a long-term lease with PG&E with an option for PG&E to acquire the property in 2023. TMG was then selected as the buyer of the property and entered a Lease and Purchase Option Agreement with PG&E in June 2020. This agreement was contingent on the Bankruptcy Court's approval. This process culminated in the filing of the *Motion of the Debtors Pursuant to 11 U.S.C. §§ 363 and 105(A) for an Order Authorizing the Utility to (I) Enter Into Lease and Purchase Option Agreement for Oakland Headquarters and (II) Granting Related Relief* [Dkt. No. 7852], and the Court entering the *Order Granting Motion of the Debtors Pursuant to 11 U.S.C. §§ 363 and 105(a) for an Order Authorizing the Utility to (I) Enter Into Lease and Purchase Option Agreement for Oakland Headquarters and (II) Granting Related Relief* [Dkt. No. 8103] approving the transaction.

### B. Energy Supply Advice

9. In December 2019 Pillsbury was engaged to represent PG&E in connection with the System Reliability Request for Offers in the initial phase to procure energy resources to provide Distributed Generation Microgrid Services ("**DGEMS**"). PG&E was seeking DGEMS in order to create islanded microgrids, with integrated storage, at up to 20 substation sites to mitigate the effects of public safety power shutoff events, which procurement would qualify towards minimum procurement required

under the California Public Utilities Commission ("**CPUC**") Decision D. 19-11-016. PG&E suspended the Request for Offers in early March 2020.

10. In late March 2020, PG&E identified the 44MW natural gas fired Red Bluff Power Plant (the "**Plant**") as capable of being upgraded to provide islanded microgrid services during PSPS events and engaged Pillsbury for assistance. By creating a microgrid in Red Bluff, CA, PG&E will be able to keep the lights on in Tehama County, California if they need to de-energize transmission lines to two substations (Rawson and Tyler). The Plant is ideally suited to provide microgrid islanding services for several reasons and is owned by a third party. Pillsbury advised PG&E on the contractual structure pursuant to which the Plant would be upgraded to enable it to provide DGEMS and PG&E would purchase the power generated by the plant when operating during PSPS events. Final documentation was executed on May 7, 2020 and CPUC approval was secured on June 11, 2020. Pillsbury continues to advise on issues as they arise during the implementation of the upgrades at the Plant.

### C. Nuclear Work

11. Pillsbury has advised PG&E regarding the compliance of aspects of the Plan of Reorganization with Nuclear Regulatory Commission ("**NRC**") requirements. Pillsbury has also been advising on strategic planning relating to the decommissioning of the Diablo Canyon nuclear power plant. In addition, Pillsbury has provided advice on other nuclear regulatory issues that have arisen from time to time, such as the effect of the COVID-19 virus on NRC-regulated activities, and compliance with NRC requirements pertaining to the nuclear decommissioning trust for the Diablo Canyon nuclear plant.

### D. Environmental Advice

12. Pillsbury has been advising PG&E for a number of years with respect to enforcement defense and compliance with federal, state and local environmental, health and safety requirements, including more recently on compliance with California's greenhouse gas regulations, and on air quality compliance and permitting issues associated with provision of emergency power to the grid during Public Power Safety Shutoffs ("**PSPS**").

### E. Litigation Advice

13. Pillsbury has provided advice and counseling relating to various contract disputes or potential disputes with one of the company's vendors.

**Scope of Services**

14. As contemplated by the Application, the Debtors seek to engage Pillsbury as special counsel to provide professional services in connection with the Specific Matters.

15. As to the Oakland Office Project, Pillsbury's representation of PG&E includes, but is not limited to, counseling PG&E on its recent headquarters move from San Francisco to Oakland.

16. With respect to the Energy Supply Advice, Pillsbury's representation includes, but is not limited to, representing PG&E in the procurement process to obtain energy resources and advising PG&E on the contractual structure related to the Red Bluff Power Plant.

17. Regarding the Nuclear Work, Pillsbury's representation of PG&E includes, but is not limited to, strategic planning related to the decommissioning of the Diablo Canyon nuclear power plant and ensuring compliance with NRC requirements.

18. With respect to the Environmental Advice, Pillsbury's work includes, but is not limited to, guiding PG&E on matters relating to federal, state, and local environmental requirements and ensuring PG&E's compliance with greenhouse gas and air quality regulations.

19. Finally, regarding the Litigation Advice, Pillsbury's mandate involves the provision of advice concerning various contract disputes.

20. Pillsbury also has performed all other necessary legal services for the Debtors, as related to the above matters, in connection with the Chapter 11 Cases, including fact investigation, legal researching, briefing, argument, discovery, reorganization, plan and disclosure statement matters, appearance and participation in hearings, and communications and meetings with parties in interest.

**Pillsbury's Qualifications**

21. Pillsbury is well-qualified to represent the Debtors on all matters within the scope of the proposed engagement. The Specific Matters for which Pillsbury's retention is sought hereunder as special counsel are expected to be substantially the same as those performed under the OCP Order; however, the scope of such services is expected to increase in connection with the Chapter 11 Cases, necessitating the filing of the Application. The Debtors seek to retain Pillsbury in connection with the Specific Matters because of Pillsbury's recognized expertise in matters such as the Specific Matters, and

extensive experience and knowledge in connection with the Specific Matters themselves as a result of representing the Debtors in connection with such matters before and during the Chapter 11 Cases.

22. Pillsbury's real estate attorneys are highly skilled and experienced in all aspects of real estate law including acquisitions, development projects, and financing. The Firm advises companies across the United States and globally on real estate matters ranging from multijurisdictional portfolio transactions to single-asset deals in local markets.

23. Pillsbury also has extensive history in the energy industry. Pillsbury has a long record of advising clients on the unique issues related to oil and gas and power companies. In particular, Pillsbury has one of the largest and most preeminent nuclear energy practices in the legal industry. Pillsbury has worked on large-scale energy projects in more than seventy-five countries on six continents.

24. Moreover, Pillsbury's environmental regulatory practice is experienced in guiding clients through complex environmental law and compliance matters. The Firm's top-notch environmental regulatory attorneys appear for clients before regulatory agencies and advocate for clients on legislation, regulation, and policy.

25. Lastly, Pillsbury is well qualified with respect to litigation matters in general and with litigation involving contract disputes in particular. Pillsbury has a long history of success in representing many of the nation's leading energy companies in litigation and regulatory matters. Pillsbury's commercial litigation lawyers are known for combining their deep understanding of the energy industry and with their litigation skills and have earned a national reputation for successful advocacy in litigation matters.

26. Further, as noted above, Pillsbury already has extensive experience advising and representing the Debtors on the various pending litigation matters. In addition, prior to the Petition Date, Pillsbury represented the Debtors in several matters, acquiring considerable knowledge of Debtors' business and operations. Accordingly, Pillsbury is both well qualified and uniquely able to represent the Debtors in the Chapter 11 Cases with respect to the Specific Matters.

27. Accordingly, I believe that Pillsbury is both well-qualified and uniquely able to represent the Debtors in the Chapter 11 Cases with respect to the Specific Matters.

**Terms of Pillsbury's Engagement**

28. The terms of Pillsbury's current representations of the Debtors in the above-referenced matters are set forth in the Master Services Agreement between PG&E and Pillsbury, dated January 16, 2018, as modified by a Letter Agreement between PG&E and Pillsbury, dated March 13, 2018, and as further amended by the Addendum to Master Services Agreement for Pillsbury Winthrop Shaw Pittman LLP, dated January 1, 2020, along with additional mandate-specific short form engagement letters, which are governed explicitly by the foregoing (collectively, the "**Engagement Agreement**"). A copy of the Engagement Agreement (excluding the short form engagement letters) is attached as **Exhibit A**.

**Coordination With the Debtors' Other Professionals**

29. Pillsbury is aware that the Debtors have retained other law firms in connection with the Chapter 11 Cases, including in connection with various civil litigation matters. Pillsbury has coordinated closely with the Debtors and their other retained professionals to delineate the scope of services and avoid duplication of services wherever reasonably possible.

**Compensation and Fee Applications**

30. Prior to the filing of this Application, Pillsbury was compensated pursuant to the OCP Order. Pursuant to the OCP Order, between the Petition Date and the date hereof, Pillsbury has been paid in the amount of $902,250.99 on account of its post-petition fees and expenses. Pillsbury has incurred approximately $1,320,996.14 in fees and expenses on account of its post-petition services as an ordinary course professional for the Debtors for the months of July 2019 through June 2020.

31. Subject to Court approval of this Application, Pillsbury intends to apply for compensation for professional services rendered on an hourly basis and the reimbursement of reasonable expenses. The hourly rates and corresponding rate structure Pillsbury will apply reflect Pillsbury's negotiated hourly rates with respect to the Debtors' engagement of Pillsbury in connection with the Specific Matters. These rates are consistent with the rates charged by Pillsbury under the OCP Order and are not varied based on whether a fee application is required.

32. In accordance with the OCP Order, following entry of the order approving the Application (or, in accordance with the OCP Order, for any prior period to the extent Pillsbury's fees and expenses

will exceed the applicable caps set forth in the OCP Order), Pillsbury will seek allowance of its fees and reimbursement of its expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the *United States Bankruptcy Court Northern District of California Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees*, effective February 19, 2014, and the *United States Trustee Guidelines Region 17*, updated December 16, 2016 (the "**Local Guidelines**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**U.S. Trustee Guidelines**" and together with the Local Guidelines, the "**Fee Guidelines**"), the OCP Orders, and any additional further Order of the Court in these Chapter 11 Cases regarding professional compensation and reimbursement of expenses (the "**Orders**"). Pillsbury will seek allowance of all fees and expenses for the period of June 1, 2020 to July 1, 2020. Fees attributable to the period after December 31, 2019, will be charged at Pillsbury's 2020 hourly rates.[2]

33. Pillsbury and the Debtors have not agreed to any variations from, or alternatives to, Pillsbury's standard billing arrangements negotiated with the Debtors and also used under the OCP Order. As discussed in more detail below, Pillsbury rates are subject to periodic change in the ordinary course of business. The Pillsbury 2020 hourly rates for the attorneys presently working on the engagement range as follows:

| **Billing Category** | **Range** |
|---|---|
| Partners | $725 to $950 |
| Counsel | $650 to $1,010 |
| Associates | $410 to $700 |
| Paraprofessional | $240 to $280 |

34. The Pillsbury hourly rates are set at a level designed to compensate Pillsbury fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly rates

---

[2] Pillsbury's 2020 rates are subject to customary rate adjustment to be negotiated and agreed to by the Debtors and Pillsbury in a manner consistent with past practice.

vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[3]

35. Pillsbury will maintain detailed, contemporaneous time records in six-minute intervals and apply to the Court for payment of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, Bankruptcy Rules, the Fee Guidelines, and the Orders. Pillsbury timekeepers will record time using billing categories that substantially conform to those categories set forth at section 8(b) of the U.S. Trustee Guidelines, and will record the amount of time per task within each billing category. Furthermore, Pillsbury will maintain records of expenses incurred and itemize those expenses as well as summarize them by expense categories established as part of Pillsbury's customary billing procedures.

36. Pillsbury's policy is to charge its clients in all areas of practice for out-of-pocket expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, mail and express mail, special or hand delivery, messengers, photocopying, scanning and/or printing, computerized research fees (which shall not be more than the actual cost Pillsbury incurs), travel expenses, "working meals," transcription, as well as non-ordinary overhead expenses such as secretarial and other overtime. For disbursements over $1,500, we may request specific payment arrangements or that advances be provided. Our personnel bill for travel time, but if they work on another matter while traveling for the Debtors, the Debtors will not be billed for that time.

37. Pillsbury will charge for these expenses in a manner and at rates consistent with charges made generally to its other clients, in accordance with the terms and conditions set forth in the Engagement Agreement, and in compliance with all applicable rules, procedures and orders of the Court.

38. Pillsbury understands that interim and final fee awards are subject to approval by this Court.

---

[3] Like many other law firms, Pillsbury typically increases the hourly billing rate of attorneys and paraprofessionals once a year, which increase includes (i) ordinary course step increases related to the advancing seniority or promotion of an attorney or paraprofessional (a "**Step Increase**"), and (ii) periodic (generally yearly) rate increases with respect to each level of seniority (a "**Rate Increase**"). The Step Increases do not constitute "rate increases" (as the term is used in the U.S. Trustee Guidelines). The proposed order provides that Pillsbury will provide reasonable advance notice to the Debtors and the U.S. Trustee of any Rate Increase.

### Pillsbury's Prepetition Claims

39. On October 15, 2019, Pillsbury filed a proof of claim related a pre-petition claim held against PG&E in the amount of $9,527.98. That claim, which is identified as Claim No. 55145 on the official register of claims in these cases, was transferred to Fair Harbor Capital, LLC, on January 13, 2020. *See Notice of Transfer of Claim Other Than For Security* [Docket No. 5355].

### No Interest Adverse to the Debtors With Respect to the Specific Matters

40. Pillsbury maintains a master client database as part of its conflict clearance and billing records. The master client database includes the names of the entities for which any attorney time charges have been billed since the database was first created (the "**Client Database**"). The Client Database includes the names of all current and former clients, the names of the parties who are or were related or adverse to such current and former clients, and the names of the Pillsbury personnel who are or were responsible for current or former matters for such clients. The Client Database also includes the name of former clients of Pillsbury attorneys while such attorneys were at a prior firm. Pillsbury's policy is that no new matter may be accepted or opened within Pillsbury without completing and submitting to those charged with maintaining the conflict clearance system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the name of the matter, adverse parties, and, in some cases, parties related to the client or to an adverse party. Accordingly, the database is updated for every new matter undertaken by Pillsbury. The accuracy of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a new matter.

41. In connection with the Debtors' proposed retention of Pillsbury, the Firm undertook to determine whether it has any conflicts or other relationships that might cause it to hold or represent an interest adverse to the Debtors or their estates with respect to the Specific Matters. In addition, on July 29, 2020, counsel for the Debtors provided Pillsbury with a list of creditors of the Debtors and other persons and entities who potentially have an interest in the Chapter 11 Cases (collectively, the "**Interested Parties List**"). The Interested Parties List may change during the pendency of these Chapter 11 Cases without our knowledge. Pillsbury will update this Declaration as necessary when new names of parties in interest are made available.

42. To the extent I have been able to ascertain based on the search of the Client Database and reasonable inquiry, **Schedule 1** to this Declaration identifies those Interested Parties, or affiliates, that are or have been Pillsbury clients within the immediately prior two years. None of the representations listed on **Schedule 1** or described below is materially adverse to the interests of the Debtors or their estates with respect to the Specific Matters, and all prior and current Pillsbury representations of the clients, former clients, or their affiliates and/or subsidiaries are or have been in matters unrelated to the Specific Matters.

43. To the best of my knowledge, after due inquiry, none of the representations identified in **Schedule 1** is related to the Specific Matters for which the Debtors seek to engage Pillsbury pursuant to the Application.

44. In addition, as part of its intake process in connection with each of the Specific Matters and again in connection with this Application, Pillsbury performed a conflicts search regarding the names of adversaries in the Specific Matters. To the best of my knowledge, after due inquiry, Pillsbury does not represent any adversary of the Debtors in the Specific Matters.

45. The Firm may have performed services in the past and may perform services in the future, in matters unrelated to the Chapter 11 Cases, for persons that are creditors or other parties in interest in the Debtors' Chapter 11 Cases. As part of Pillsbury's customary practice, the Firm is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be claimants or employees of the Debtors, or other parties in interest in these Chapter 11 Cases. Except as disclosed below, Pillsbury does not perform services for any such person in connection with these Chapter 11 Cases. The Firm does not have any relationship with any person, or such person's attorneys, or such person's accountants that would be adverse to the Debtors or their estates with respect to the Specific Matters. From time to time, Pillsbury has referred work to other professionals retained or to be retained in these Chapter 11 Cases, and certain such professionals have referred work to Pillsbury. Also, as part of its practice, Pillsbury appears in cases, proceedings, and transactions involving many different attorneys, accountants, financial consultants, and investment bankers, some of whom now or may in the future represent claimants and other parties in interest in this case. Except as disclosed below, Pillsbury does not represent any such parties in relation to the Debtors or these Chapter 11 Cases, and will not do

so in the future without the Debtors' consent. Pillsbury does not have any relationship with any such attorneys, accountants, financial consultants, or investment bankers that would be adverse to the Debtors or their estates in connection with the Specific Matters.

46. Pillsbury may currently represent or formerly may have represented the following parties in the following matters related to the Debtor and these Chapter 11 Cases:

    a. Bank of America, N.A., in its capacity as administrative agent (and its successor Wilmington Trust National Association) under PG&E Corporation's syndicated bank revolving credit agreement in connection with the Chapter 11 Cases and in its individual capacity in connection with various financial accommodations with the Debtors;

    b. Chevron Corporation and its operating affiliates and entities, including, but not limited to, Chevron USA, Inc., its affiliates and divisions, Chevron Products Company, Chevron Power Holdings, Inc., Chevron North America Exploration and Production, Chevron's Upstream, Midstream, Downstream, and trading divisions, and Chevron Natural Gas Services, Inc., in connection with various prepetition agreements and operational arrangements and accommodations;

    c. Hawaiian Electric Company in connection with its prepetition contracts with, and prepetition claims against, the Debtors.

    d. San Francisco Baseball Associates LLC and its affiliates, China Basin Ballpark Company LLC and San Francisco Giants Baseball Club LLC in connection with the Chapter 11 Cases;

    e. The Board of Trustees of the Leland Stanford Junior University and Stanford Health Care in connection with its prepetition contracts with, and prepetition claims against, the Debtors;

    f. TH Kazakatom in connection with negotiation and documentation of a postpetition contract; and

    g. Wells Fargo Bank, N.A., in connection with various financial accommodations with the Debtors.

I do not believe that Pillsbury's past or current representation of such parties, all of which are subject to written waivers from the Debtors, creates any interest materially adverse to the Debtors with respect to the Specific Matters.

47. Certain insurance companies pay the legal bills of Pillsbury clients. Some of these insurance companies may be involved in these Chapter 11 Cases. None of these insurance companies, however, is a Pillsbury client as a result of the fact that it pays legal fees on behalf of a client of Pillsbury.

48. From time to time, Pillsbury partners, counsel, associates, and employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds, through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors, often without the knowledge of Pillsbury. To the extent that Pillsbury partners, counsel, associates, and employees personally directly acquire a debt or equity security of a company, Pillsbury has a long-standing policy prohibiting attorneys and employees from using confidential information that may come to their attention in the course of their work. In this regard, all Pillsbury attorneys and employees are barred from trading in securities with respect to which they possess confidential information.

49. Based on the inquiry above, to the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, I can attest that Pillsbury neither holds nor represents an interest adverse to the Debtors or their estates with respect to the Specific Matters. Pillsbury will review its files periodically during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise with respect to the Specific Matters. If any new relevant facts or relationships are discovered or arise with respect to the Specific Matters, Pillsbury will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

**Attorney Statement Pursuant to U.S. Trustee Guidelines**

The following is provided in response to the request for additional information set forth in Paragraph D.1 of the U.S. Trustee Fee Guidelines.

**Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? **Response**: Yes. The rates in the Engagement Agreement,

attached as Exhibit A, were specifically negotiated with the Debtors and are significantly lower than Pillsbury's standard hourly rates.

**Question**: Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? **Response**: No.

**Question**: If you represented the client in the twelve (12) months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the twelve (12) months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference. **Response**: Pillsbury represented the Debtors in connection with certain of the Specific Matters prior to the Petition Date. The applicable rates for 2018 for the individuals working on the Specific Matters are set forth in the Engagement Agreement, attached as Exhibit A. The 2018 rates were negotiated as part of the Debtors' competitive Request for Proposal solicitation process, with an agreement that the 2018 rates would remain in place for 2019 without any increases. At the end of 2019, Pillsbury negotiated increases in its billing rates for 2020 because of expiration of the two-year rate agreement. The 2020 hourly rates for the individuals working on the Specific Matters are set forth in the Addendum to Master Services Agreement for Pillsbury Winthrop Shaw Pittman LLP, dated January 1, 2020. The increase in hourly rates reflects changes in economic conditions and other factors. The 2020 hourly rates negotiated with the Debtors remain significantly lower than Pillsbury's standard hourly rates.

**Question**: Has your client approved your prospective budget and staffing plan, and, if so, for what budget period? **Response**: Pillsbury has agreed that the Specific Matters governed by short form engagement letters are subject to approved budget and staffing plans.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct and that this declaration was executed at Piedmont, California on this 5th day of August, 2020.

                                           */s/ Jacob R. Sorensen*
                                           Jacob R. Sorensen