| | |
|---|---|
| 1 | WEIL, GOTSHAL & MANGES LLP |
| | Stephen Karotkin (*pro hac vice*) |
| 2 | (stephen.karotkin@weil.com) |
| | Ray C. Schrock, P.C. (*pro hac vice*) |
| 3 | (ray.schrock@weil.com) |
| | Jessica Liou (*pro hac vice*) |
| 4 | (jessica.liou@weil.com) |
| | Matthew Goren (*pro hac vice*) |
| 5 | (matthew.goren@weil.com) |
| | 767 Fifth Avenue |
| 6 | New York, NY 10153-0119 |
| | Tel: 212 310 8000 |
| 7 | Fax: 212 310 8007 |
| 8 | KELLER BENVENUTTI KIM LLP |
| | Tobias S. Keller (#151445) |
| 9 | (tkeller@kbkllp.com) |
| | Jane Kim (#298192) |
| 10 | (jkim@kbkllp.com) |
| | 650 California Street, Suite 1900 |
| 11 | San Francisco, CA 94108 |
| | Tel: 415 496 6723 |
| 12 | Fax: 650 636 9251 |
| 13 | *Attorneys for Debtors* |
| | *and Reorganized Debtors* |

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| PG&E CORPORATION, | Chapter 11 (Lead Case) (Jointly Administered) |
| - and - | **DECLARATION OF KATE DYER IN SUPPORT OF APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. § 327(e), FED. R. BANKR. P. 2014(a) AND 2016, AND THE ORDER AUTHORIZING THE DEBTORS TO EMPLOY PROFESSIONALS USED IN THE ORDINARY COURSE OF BUSINESS FOR AUTHORITY TO RETAIN AND EMPLOY CLARENCE DYER & COHEN LLP AS SPECIAL COUNSEL FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE** |
| PACIFIC GAS AND ELECTRIC COMPANY, | |
| **Debtors.** | |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors | |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Date: August 25, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Telephonic or Video Appearances Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

Pursuant to 28 U.S.C. § 1746, I, Kate Dyer, hereby declare as follows:

1. I am a partner of Clarence Dyer & Cohen LLP, and my office is located at 899 Ellis Street, San Francisco, CA 94109 ("**CDC**" or the "**Firm**").

2. I submit this Declaration in connection with the Application, submitted on the date hereof (the "**Application**"),[1] of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for authority to employ and retain CDC as their special counsel for certain matters, effective as of January 29, 2019 (the "**Petition Date**"), at its existing agreed-upon hourly rates in effect from time to time and in accordance with its existing reimbursement policies applicable to the Debtors, in compliance with section 327(e) of title 11 of the United States Code (the "**Bankruptcy Code**"), and to provide the disclosure under the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Bankruptcy Local Rules for the U.S. District Court for the Northern District of California (the "**Bankruptcy Local Rules**") as applicable to retention under section 327(e) of the Bankruptcy Code. Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein. To the extent any information disclosed herein requires amendment or modification upon CDC's completion of further review, or as additional information becomes available, a supplemental declaration will be submitted to the Court reflecting such amended, supplemented or otherwise modified information.

3. Except as set forth herein, to the best of my knowledge, after due inquiry, neither I, CDC, nor any partner of, counsel to, or associate of the Firm represents any entity other than the Debtors in connection with these Chapter 11 Cases. In addition, except as set forth herein, to the best of my knowledge, after due inquiry, neither I, CDC, nor any partner of, counsel to, or associate of the Firm represents any party in interest with respect to the matters for which CDC is to be employed. Additionally, CDC does not represent any party other than the Debtors in connection with the Specific Matters (as defined below) that are the subject of the Application.

---

[1] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to such terms in the Application.

**Background**

4. On February 27, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 105(a), 327, 328, and 330 Authorizing the Debtors to Employ Professionals Used in the Ordinary Course of Business Nunc Pro Tunc to the Petition Date* [Dkt No. 707] (the "**OCP Order**") authorizing the Debtors to retain and compensate legal services professionals that the Debtors employ in the ordinary course of business (collectively, the "**Ordinary Course Professionals**") subject to the terms of the OCP Order. CDC has served as counsel to the Debtors prior to the Petition Date and has continued to serve in such capacity pursuant to the OCP Order. Pursuant to the OCP Order, the Debtors previously filed the *Declaration and Disclosure Statement of Kate Dyer on Behalf of Clarence Dyer & Cohen LLP* (the "**Prior Dyer Declaration**"), annexed as Exhibit A-1 to the *Notice of Filing of List of Additional Ordinary Course Professionals* [Dkt. No 2509].

5. While CDC was approved and has been serving as an Ordinary Course Professional in the Chapter 11 Cases, recent developments—particularly in the certain litigation matters—have compelled CDC to dedicate significantly more time to its representation of the Debtors. Based on my discussions with the Debtors, the services they have asked CDC to perform in connection with the Specific Matters will exceed the caps set forth in the OCP Order; accordingly, the Debtors seek approval of CDC as special counsel in connection with the Specific Matters pursuant to section 327(e) of the Bankruptcy Code, *nunc pro tunc* to the Petition Date, as contemplated by paragraph 2(ix) of the OCP Order. CDC's continued representation of PG&E in these matters, and specifically in the Ghost Ship Case and the Federal Probation and Monitorship (as defined below), is the most efficient and cost-effective path for PG&E.

6. CDC has represented and continues to represent and advise PG&E in (i) the pre-petition Ghost Ship fire litigation pending in state court (the "**Ghost Ship Case**"); (ii) the pre-petition matter pending in federal court arising out of the imposition of a five-year term of probation and federal monitorship in January 2017 (the "**Federal Probation and Monitorship**" matter); and (iii) several other litigation and pre-litigation matters (together, (i) through (iii), the "**Specific Matters**"). The Specific Matters are described in more detail below.

A. The Ghost Ship Case

7. Following a tragic warehouse fire in Oakland in December 2016, families of fire victims, as well as survivors, filed suits in Alameda County Superior Court. Pacific Gas and Electric Company and PG&E Corporation were named as defendants in the Master Complaint filed on May 16, 2017, alleging causes of action for negligence, premises liability, strict liability and nuisance. Fifty-three lawsuits are pending, involving 78 plaintiffs, which have been related and are proceeding as *In re Ghost Ship Fire Litigation*, Lead Case No. RG16843631 (and related cases) (Alameda County Superior Court). CDC has represented PG&E in this matter since the case was filed.

8. The Ghost Ship Case was stayed as to PG&E upon PG&E's filing of these Chapter 11 cases on January 29, 2019. On November 26, 2019, the Plaintiffs' Executive Committee appointed by the Alameda Superior Court in the Ghost Ship Case filed a motion before this Court for relief from the automatic stay. [*See* Docket No. 4875.] A hearing on the motion was held on December 17, 2019. On January 6, 2020, the Court entered the *Order Re: Motion for Relief from Automatic Stay to Permit the Courts of the State of California to Conduct a Jury Trial and Related Pretrial and Post Trial Matters in Connection with the Ghost Ship Fire Cases* [Docket No. 5280].

9. Following the lifting of the stay, the Alameda County Superior Court set a trial date of October 19, 2020 in the Ghost Ship Case, and discovery and pretrial matters proceeded. On July 1, 2020, the Court moved the trial to February 1, 2021 in light of the parties' progress toward resolution and the pandemic's impact on jury trial calendaring.

### B. Federal Probation and Monitorship

10. On April 1, 2014, Pacific Gas and Electric Company was indicted in the Northern District of California on multiple counts alleging violation of federal pipeline safety regulations. After conviction on six of twelve counts in 2016, PG&E was sentenced to a five-year term of probation and a federal monitorship in January 2017. PG&E's probation and monitorship will continue through January 2022 and are being actively managed by United States District Court Judge William H. Alsup. CDC has represented PG&E in this matter since April 2015.

### C. Other Matters

11. Since October 2017, CDC has represented and advised PG&E in connection with certain potential and actual criminal investigations relating to a series of fires that occurred in Northern

California in the fall of 2017 and the November 2018 Camp Fire. With PG&E's guilty plea and sentencing in Butte County in June 2020, these matters have concluded. In addition, since December 2019, CDC has been advising PG&E in connection with issues and litigation arising out of pre-petition wrongful termination and retaliation claims made by five former PG&E employees.[2] CDC also represents PG&E in a post-petition action brought on November 20, 2019 for negligence and breach of contract arising out an alleged reduction in gas service volume. *New Leaf Family Farms, Inc. v. Pac. Gas & Elec. Co., Monterey County Superior Court Case No. 19-CV-004685*. Finally, CDC is advising PG&E in connection with an April 2019 electric incident in Solano County and a May 2020 low-pressure gas leak in San Joaquin County.

### Scope of Services

12. As contemplated by the Application, the Debtors seek to engage CDC as special counsel to provide professional services in connection with the Specific Matters.

13. As to the Ghost Ship Case, CDC's representation of PG&E has included, without limitation, overall case management, development of legal strategy, conducting and responding to discovery, appearing and participating at hearings, drafting and responding to motions and briefs, working with experts and consultants, preparing PG&E's case for trial, and participating in potential settlement efforts.

14. As to the Federal Probation and Monitorship, CDC's representation of PG&E has included, without limitation, drafting sections of responses to multiple orders from Judge Alsup and coordinating with co-counsel regarding sections of responses drafted by co-counsel; preparing for and participating in probation hearings; attending interviews conducted by the federal monitor and reviewing related documents; preparing and reviewing detailed responses to requests for information from the federal monitor; conducting legal research related to various probation and monitorship issues; and counseling the company in relation to ongoing issues that impact the terms of probation, including

---

[2] On November 20, 2019, one of these former employees, Todd Hearn, filed before this Court a motion for relief from stay (Dkt. 4820), which motion the Court granted on February 25, 2020 (Dkt. 5893). On April 9, 2020, PG&E and the other four former employees filed a stipulation for limited relief from the automatic stay (Dkt. 6722), which the Court approved on May 6, 2020 (Dkt. 7083). Mr. Hearn filed a lawsuit on June 1, 2020 alleging wrongful termination and retaliation. *Todd Hearn v. Pacific Gas and Electric Company, Napa County Superior Court Case No. 20-CV-000391*.

ongoing investigations into various wildfires.

15. As to the Other Matters, CDC's representation of PG&E with regard to the wildfire investigations has included, without limitation, advising and representing PG&E in connection with potential or actual criminal investigations and prosecutions, communicating and negotiating with the California Attorney General and certain state District Attorney offices, coordinating with counsel representing PG&E in civil and regulatory actions regarding the potential impact of those proceedings on the criminal investigations and vice-versa. CDC's representation in the remaining matters has included, without limitation, factual analysis, development of legal strategy, conducting and responding to discovery, appearing and participating at hearings, preparing for trial, participating in potential settlement efforts and providing advice and counsel.

16. CDC has also will performed all other necessary legal services for the Debtors, as related to the above matters, in connection with the Chapter 11 Cases, including fact investigation, legal researching, briefing, argument, discovery, reorganization, plan and disclosure statement matters, appearance and participation in hearings, and communications and meetings with parties in interest.

### CDC's Qualifications

17. CDC is well-qualified to represent the Debtors on all matters with the scope of the proposed engagement. The Specific Matters for which CDC's retention is sought as special counsel are expected to be substantially the same as those performed under the OCP Order, although the scope of such services increased in connection with the Chapter 11 Cases, necessitating the filing of the Application. The Debtors seek to retain CDC in connection with the Specific Matters because of CDC's recognized expertise in such matters, and extensive experience and knowledge in connection with the Specific Matters themselves as a result of representing the Debtors in connection with such matters before and during the Chapter 11 Cases.

18. CDC is exceptionally qualified with respect to litigation matters in general and with litigation involving the Debtors in particular. CDC is a premier Bay Area litigation firm with decades of experience providing aggressive, cost-effective representation to companies and individuals in complex criminal and civil matters. We specialize in cases where our clients face parallel criminal, regulatory and civil proceedings and deliver top-quality legal services in the responsive environment of

a small law firm. Our attorneys have represented both institutional and individual clients under investigation by federal, state and local authorities across the United States and we have defended companies and individuals in a wide array of state and federal civil actions ranging from mass tort to wrongful termination to breach of contract matters. In addition, we have significant experience conducting internal investigations for clients ranging from Fortune 200 corporations to small, family-owned businesses.

19. Further, as noted above, CDC already has extensive experience advising and representing the Debtors on the various pending litigation matters. In addition, prior to the Petition Date, CDC has represented the Debtors in a wide variety of matters, including some of PG&E's most consequential litigation, since 2006. Through these many engagements, CDC has acquired considerable knowledge of Debtors' business and operations. Accordingly, CDC is both well qualified and uniquely able to represent the Debtors in the Chapter 11 Cases with respect to the Specific Matters.

20. Accordingly, I believe that CDC is both well-qualified and uniquely able to represent the Debtors in the Chapter 11 Cases with respect to the Specific Matters.

### Terms of CDC's Engagement

21. The terms of CDC's current representations of the Debtors in the above-referenced matters are set forth in the Master Services Agreement between PG&E and CDC, dated January 8, 2018, as amended by an Addendum, dated November 18, 2019 (collectively, the "**Engagement Agreement**"). A copy of the Engagement Agreement is attached as **Exhibit A**.

### Coordination With the Debtors' Other Professionals

22. CDC is aware that the Debtors have retained other law firms in connection with the Chapter 11 Cases, including in connection with various civil litigation matters. CDC has been coordinating and will continue to coordinate closely with the Debtors and their other retained professionals to delineate the scope of services and avoid duplication of services wherever reasonably possible.

### Compensation and Fee Applications

23. Prior to the filing of this Application, CDC was compensated pursuant to the OCP Order. Pursuant to the OCP Order, between the Petition Date and the date hereof, CDC has been paid in the

amount of $1,049.494.10 on account of its post-petition fees and expenses. Currently, CDC is owed approximately $980,007.69 in fees and expenses on account of its post-petition services as an ordinary course professional for the Debtors for the months of February 1 through July 1, 2020.

24. Subject to Court approval of this Application, CDC intends to apply for compensation for professional services rendered on an hourly basis and the reimbursement of reasonable expenses. The hourly rates and corresponding rate structure CDC will reflect CDC's negotiated hourly rates with respect to the Debtors' engagement of CDC in connection with the Specific Matters. These rates are consistent with the rates charged by CDC under the OCP Order and are not varied based on whether a fee application is required.

25. In accordance with the OCP Order, following entry of the order approving the Application (or, in accordance with the OCP Order, for any prior period to the extent CDC's fees and expenses will exceed the applicable caps set forth in the OCP Order), CDC will seek allowance of its fees and reimbursement of its expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the United States Bankruptcy Court Northern District of California Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees, effective February 19, 2014, and the United States Trustee Guidelines Region 17, updated December 16, 2016 (the "**Local Guidelines**"), the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013 (the "**U.S. Trustee Guidelines**" and together with the Local Guidelines, the "**Fee Guidelines**"), the OCP Orders, and any additional further Order of the Court in these Chapter 11 Cases regarding professional compensation and reimbursement of expenses (the "**Orders**"). CDC will seek allowance of all fees and expenses for the period beginning February 1, 2020.

26. CDC and the Debtors have not agreed to any variations from, or alternatives to, CDC's standard billing arrangements negotiated with the Debtors and also used under the OCP Order. In addition, the Engagement Agreement attached as Exhibit A sets forth certain volume discounts.

27. CDC will maintain detailed, contemporaneous time records in six-minute intervals and apply to the Court for payment of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, Bankruptcy Rules, the Fee Guidelines, and the Orders. CDC timekeepers will record

time using billing categories that substantially conform to those categories set forth at section 8(b) of the U.S. Trustee Guidelines, and will record the amount of time per task within each billing category. Furthermore, CDC will maintain records of expenses incurred and itemize those expenses as well as summarize them by expense categories established as part of CDC's customary billing procedures.

28. CDC's policy is to charge its clients in all areas of practice for out-of-pocket expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, mail and express mail, special or hand delivery, messengers, photocopying, scanning and/or printing, travel expenses and transcription. Our personnel bill for travel time, but if they work on another matter while traveling for the Debtors, the Debtors will not be billed for that time.

29. CDC will charge for these expenses in a manner and at rates consistent with charges made generally to its other clients, in accordance with the terms and conditions set forth in the Engagement Agreement, and in compliance with all applicable rules, procedures and orders of the Court.

30. CDC understands that interim and final fee awards are subject to approval by this Court.

## CDC's Prepetition Claims

31. On October 7, 2019, CDC filed a proof of claim related a pre-petition claim held against the Utility in the amount of $121,007.00.

## No Interest Adverse to the Debtors With Respect to the Specific Matters

32. CDC maintains a master client database as part of its conflict clearance and billing records. The master client database includes the names of the entities for which any attorney time charges have been billed since the database was first created (the "**Client Database**"). The Client Database includes the names of all current and former clients, the names of the parties who are or were related or adverse to such current and former clients, and the names of the CDC personnel who are or were responsible for current or former matters for such clients. CDC's policy is that no new matter may be accepted or opened within CDC without submitting to those charged with maintaining the conflict clearance system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the name of the matter, adverse parties, and, in some cases, parties related to the client or to an adverse party. Accordingly, the database is updated for every new matter undertaken by CDC. The accuracy of the system is a function of the completeness and accuracy of the information

submitted by the attorney opening a new matter.

33. In connection with the Debtors' proposed retention of CDC, the Firm undertook to determine whether it has any conflicts or other relationships that might cause it to hold or represent an interest adverse to the Debtors or their estates with respect to the Specific Matters. To do so, CDC searched the names of each Debtor to determine whether it represented any party adverse to the Debtors. To the best of my knowledge, there are no matters in which CDC personnel are currently representing parties adverse (or potentially adverse) to the Debtors.

34. CDC may have previously represented parties adverse to the Debtors in matters unrelated to the Chapter 11 Cases, which, to the best of my knowledge, after due inquiry, are no longer active or have concluded.

35. In addition, on July 27, 2020, counsel for the Debtors provided CDC with a list of creditors of the Debtors and other persons and entities who potentially have an interest in the Chapter 11 Cases (collectively, the "**Interested Parties List**"). The Interested Parties List may change during the pendency of these Chapter 11 Cases without our knowledge. CDC will update this Declaration as necessary when new names of parties in interest are made available.

36. To the extent I have been able to ascertain based on the search of the Client Database and reasonable inquiry, no Interested Parties, or affiliates, are or have been CDC clients within the immediately prior two years.

37. In addition, as part of its intake process in connection with each of the Specific Matters and again in connection with this Application, CDC performed a conflicts search regarding the names of adversaries in the Specific Matters. To the best of my knowledge, after due inquiry, CDC does not represent any adversary of the Debtors in the Specific Matters.

38. Accordingly, to the best of my knowledge, after due inquiry, CDC does not represent or hold any interest adverse to the Debtors or their estates with respect to the Specific Matters.

39. The Firm may have performed services in the past and may perform services in the future, in matters unrelated to the Chapter 11 Cases, for persons that are creditors or other parties in interest in the Debtors' Chapter 11 Cases. As part of CDC's customary practice, the Firm is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be

claimants or employees of the Debtors, or other parties in interest in these Chapter 11 Cases. The Firm does not perform services for any such person in connection with these Chapter 11 Cases. The Firm does not have any relationship with any person, or such person's attorneys, or such person's accountants that would be adverse to the Debtors or their estates with respect to the Specific Matters. From time to time, CDC has referred work to other professionals retained or to be retained in these Chapter 11 Cases, and certain such professionals have referred work to CDC. Also, as part of its practice, CDC appears in cases and proceedings involving many different attorneys, accountants and financial consultants, some of whom now or may in the future represent claimants and other parties in interest in this case. CDC does not represent any such parties in relation to the Debtors or these Chapter 11 Cases, and will not do so in the future without the Debtors' consent. CDC does not have any relationship with any such attorneys, accountants, or financial consultants that would be adverse to the Debtors or their estates in connection with the Specific Matters.

40. CDC may currently represent or formerly may have represented certain of the Debtors' other professionals in matters unrelated to the Debtor and these Chapter 11 Cases. I do not believe that CDC's past or current representation of these other professionals in matters unrelated to the Debtors or these Chapter 11 Cases creates any interest materially adverse to the Debtors with respect to the Specific Matters.

41. Certain financial and educational institutions pay the legal bills of CDC clients. Some of these institutions may be involved in these Chapter 11 Cases. None of these institutions, however, is a CDC client as a result of the fact that it pays legal fees on behalf of a client of CDC.

42. Certain insurance companies also pay the legal bills of CDC clients. Some of these insurance companies may be involved in these Chapter 11 Cases. None of these insurance companies, however, is a CDC client as a result of the fact that it pays legal fees on behalf of a client of CDC.

43. From time to time, CDC partners, counsel, associates, and employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds, through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors, often without the knowledge of CDC. To the extent that CDC partners, counsel, associates, and employees personally directly acquire a debt or

equity security of a company, CDC has a long-standing policy prohibiting attorneys and employees from using confidential information that may come to their attention in the course of their work. In this regard, all CDC attorneys and employees are barred from trading in securities with respect to which they possess confidential information.

44. Based on the inquiry above, to the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, I can attest that CDC neither holds nor represents an interest adverse to the Debtors or their estates with respect to the Specific Matters. CDC will review its files periodically during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, CDC will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## Attorney Statement Pursuant to U.S. Trustee Guidelines

The following is provided in response to the request for additional information set forth in Paragraph D.1 of the U.S. Trustee Fee Guidelines.

**Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? **Response**: Yes. The rates in the Engagement Agreement, attached as Exhibit A, were specifically negotiated with the Debtors and are significantly lower than CDC's standard hourly rates.

**Question**: Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? **Response**: No.

**Question**: If you represented the client in the twelve (12) months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the twelve (12) months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference. **Response**: CDC represented the Debtors in connection with the Specific Matters prior to the Petition Date. The applicable discounted rates for 2018 for the individuals working on the Specific Matters are set forth in the Engagement Agreement, attached as Exhibit A. Hourly rates for partners were $495; $385 for associates; and $150 for paraprofessionals. The 2018 rates were negotiated as part of the Debtors' competitive Request for

Proposal solicitation process and reflected a substantial discount from CDC's standard hourly rates. The Request for Proposal stipulated that those 2018 rates would remain in place for 2019 without any increases. At the end of 2019, CDC negotiated increases in its billing rates for 2020 because of expiration of the two-year rate agreement. The 2020 hourly rates for lawyers presently working on the engagement are $575 for partners; $495 for counsel; $440 for associates; and $150 for paraprofessionals. The increase in hourly rates reflects changes in economic conditions and other factors. The 2020 hourly rates negotiated with Debtors remain significantly lower than CDC's standard hourly rates.

**Question**: Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?  **Response**: CDC's engagement letters for specific matters include a budget for the matter and address staffing, but these budgets are subject to periodic revision and updates. CDC has submitted budget and staffing plans for its work relating to the Ghost Ship Case, which is under review.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct and that this declaration was executed at San Francisco, California on this 5th day of August, 2020.

                                */s/ Kate Dyer*
                                Kate Dyer