# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>    - and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                **Debtors.**<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**FIFTH INTERIM AND FINAL APPLICATION OF LINCOLN PARTNERS ADVISORS LLC FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR (1) THE INTERIM PERIOD JUNE 1, 2020 THROUGH JUNE 30, 2020 AND (2) THE FINAL PERIOD FROM MARCH 1, 2019 THROUGH JUNE 30, 2020**<br><br><br>Objection Date: September 16, 2020 |

| | |
|---|---|
| To: | The Notice Parties |
| Name of Applicant: | Lincoln Partners Advisors LLC |
| Authorized to Provide Professional Services to: | Financial Advisor to the Official Committee of Tort Claimants |
| Date of Retention: | March 1, 2019 |
| Petition Date: | January 29, 2019 |
| Interim period for which compensation and reimbursement are sought: | June 1, 2020 through June 30, 2020 |
| Interim amount of compensation and reimbursement are sought: | $1,621,947.75 (100%) |
| Interim amount of expense reimbursement sought as actual, reasonable, and necessary: | $99.90 |

| | |
|---|---|
| Final period for which compensation and reimbursement are sought: | <u>March 1, 2019 through June 30, 2020</u> |
| Final amount of compensation and reimbursement are sought: | <u>$22,923,197.63</u> |
| Final amount of expense reimbursement sought as actual, reasonable, and necessary: | <u>$289,667.63</u> |

## SUMMARY OF FIFTH INTERIM AND FINAL FEE APPLICATION

| Date Filed | Period Covered | Total Requested Compensation and Expenses for Period Covered | | Total Amount Paid to Date[1] | | Holdback Fees, Unpaid Fees and Expenses Requested |
|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | Fees |
| 1st Interim Fee Application (DE 4633) | 3/1/19-5/31/19 | $3,005,418.88 | $82,943.80 | $2,905,418.88 | $57,943.80 | $ - |
| 2nd Interim Fee Application (DE 4724) | 6/1/19-9/30/19 | $4,867,813.00 | $98,444.49 | $3,923,505.65 | $69,189.24 | $743,562.60 |
| 3rd Interim Fee Application (DE 6313) | 10/1/19-12/31/19 | $4,661,428.50 | $66,894.98 | $3,747,347.32 | $48,690.46 | $837,285.70 |
| 4th Interim Fee Application (DE 8402) | 1/1/20-5/31/20 | $8,766,589.50 | $41,284.46 | $2,533,759.23 | $30,976.96 | $6,018,137.77 |
| 16th Monthly Statement 8/10/20 (DE 8727) | 6/1/20-6/30/20 | $1,621,947.75 | $99.90 | $ - | $ - | $1,622,047.65 |
| **Total** | | **$22,923,197.63** | **$289,667.63** | **$13,110,031.08** | **$206,800.46** | **$9,221,033.72** |

Objections to Interim Fee Applications/Monthly Fee Statements: There have been no objections to the First, Second, Third or Fourth Interim Fee Applications, and the objection deadline for the Sixteenth Monthly Fee Statement for June 2020 is August 31, 2020.

---

[1] Amounts paid on account of the First, Second, Third, and Fourth Interim Fee Applications reflect reductions in fees and expenses agreed to between Applicant and the Fee Examiner.

**SUMMARY OF HOURS INCURRED BY PROFESSIONAL DURING**

**THE INTERIM APPLICATION PERIOD**

| Professional | Position | Billing Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Brent Williams | Managing Director | $ 1,195 | 265.6 | $ 317,392.00 |
| Alex Stevenson | Managing Director | 1,195 | 71.5 | 85,442.50 |
| Brendan Murphy | Managing Director | 1,095 | 249.9 | 273,640.50 |
| Sherman Guillema | Director | 895 | 65.4 | 58,533.00 |
| Peter Gnatowski | Director | 895 | 299.5 | 268,052.50 |
| Matt Merkel | Vice President | 795 | 289.8 | 230,391.00 |
| Erik Ellingson | Associate | 695 | 183.8 | 127,741.00 |
| Naeem Muscatwalla | Associate | 695 | 63.4 | 44,063.00 |
| Jeremy Mau | Associate | 695 | 23.8 | 16,506.25 |
| Riley Jacobs | Analyst | 395 | 157.0 | 62,015.00 |
| Alex Gebert | Analyst | 395 | 200.2 | 79,079.00 |
| Zack Stone | Analyst | 395 | 86.5 | 34,167.50 |
| Aadil Khan | Analyst | 395 | 36.7 | 14,496.50 |
| Charles Hallett | Analyst | 395 | 9.7 | 3,831.50 |
| Thomas Steve | Analyst | 395 | 16.7 | 6,596.50 |
| **Total** | | | | **$ 1,621,947.75** |

# SUMMARY OF HOURS INCURRED BY PROFESSIONAL DURING

## THE FINAL APPLICATION PERIOD

| Professional | Position | Billing Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Brent Williams | Managing Director | $ 1,195 | 3,735.5 | $ 4,463,862.75 |
| Alex Stevenson | Managing Director | 1,195 | 1,427.3 | 1,705,623.50 |
| Brendan Murphy | Managing Director | 1,095 | 4,005.9 | 4,386,460.50 |
| Sherman Guillema | Director | 895 | 1,126.8 | 1,008,486.00 |
| Peter Gnatowski(1) | Vice President / Director | 838 | 4,034.1 | 3,380,239.50 |
| Carl Comstock | Vice President | 695 | 242.1 | 168,259.50 |
| Matt Merkel(1) | Associate / Vice President | 740 | 3,684.6 | 2,727,192.25 |
| Naeem Muscatwalla(1) | Analyst / Associate | 561 | 1,333.7 | 748,416.75 |
| Riley Jacobs | Analyst | 395 | 3,217.7 | 1,270,991.50 |
| Alex Gebert | Analyst | 395 | 2,881.2 | 1,138,074.00 |
| Rikki Maynard | Legal and Professional Support | 250 | 38.3 | 9,575.00 |
| Troy Peters | General Counsel (In-House) | 1,195 | 10.1 | 12,069.50 |
| Jane Su | Professional Support | 250 | 25.3 | 6,325.00 |
| Jackie Hurley | Professional Support | 250 | 16.5 | 4,125.00 |
| Erik Ellingson | Associate | 695 | 1,451.6 | 1,008,862.00 |
| Zack Stone | Analyst | 395 | 1,591.9 | 628,800.50 |
| Max Golembo | Associate | 695 | 128.8 | 89,516.00 |
| Thomas Steve | Analyst | 395 | 142.8 | 56,406.00 |
| Charles Hallett | Analyst | 395 | 138.6 | 54,747.00 |
| Aadil Khan | Analyst | 395 | 167.9 | 66,320.50 |
| Jeremy Mau | Associate | 695 | 126.6 | 87,952.25 |
| Jacob Kinstler | Associate | 695 | 17.4 | 12,093.00 |
| John Rutkowski | Analyst | 395 | 37.5 | 14,812.50 |
| **Subtotal** | | | **29,582.0** | **$ 23,049,210.50** |
| Less: 50% Discount for Non-Working Travel Time | | | | (126,012.88) |
| **Grand Total** | | | | **$ 22,923,197.63** |

(1) Reflects a blended rate due to promotion during the term of the engagement.

## SUMMARY OF HOURS INCURRED BY PROJECT CATEGORY DURING

## THE INTERIM APPLICATION PERIOD

| Task Code | Task Description | Total Hours | Total Fees |
|---|---|---|---|
| 3 | Financial Analysis (Requested by Counsel, or Otherwise) | 181.8 | $ 143,121.00 |
| 4 | 13-Week Cash Flow / MOR / Liquidity Analysis | 1.5 | $ 942.50 |
| 7 | Debtor Professionals - Diligence / Meetings / Calls | 39.4 | $ 34,663.00 |
| 9 | Other Professionals / Interested Parties - Diligence / Meetings / Calls | 15.0 | $ 17,365.00 |
| 10 | Tort Claimants (Counsel/FA) - Diligence / Meetings / Calls | 78.3 | $ 83,268.50 |
| 12 | Committee Related Matters - Diligence / Meetings / Calls | 40.5 | $ 41,507.50 |
| 13 | Bankruptcy Filings, Motions and Other Document Review | 63.3 | $ 47,203.50 |
| 17 | Asset Sale(s), Strategic Alternatives, and Related Analysis | 127.9 | $ 85,480.50 |
| 18 | Analysis of New Debt or Equity Capital | 707.7 | $ 551,916.75 |
| 19 | Analysis of Pro-Forma Capital Structure, and Related Analysis | 220.5 | $ 194,467.50 |
| 20 | Benchmarking and Related Analysis | 99.3 | $ 67,023.50 |
| 21 | Term Sheets, Plan, and Disclosure Statement Analysis | 104.6 | $ 91,027.00 |
| 23 | Deposition(s), Testimony, Court Hearing(s), and Related Preparation / Attendance | 143.3 | $ 149,813.50 |
| 25 | Regulatory and Legislative Matters, and Related Financial Analysis | 10.0 | $ 6,650.00 |
| 27 | Project Administration | 35.4 | $ 28,873.00 |
| 31 | Fee Application Preparation | 151.0 | $ 78,625.00 |
| **Grand Total** | | **2,019.5** | **$ 1,621,947.75** |

## SUMMARY OF HOURS INCURRED BY PROJECT CATEGORY DURING

## THE FINAL APPLICATION PERIOD

| Task Code | Task Description | Total Hours | Total Fees |
|---|---|---|---|
| 1 | DIP Financing and Related Analysis | 99.2 | $ 88,904.00 |
| 2 | First / Second Day Motions and SOFAs | 29.2 | 25,214.00 |
| 3 | Financial Analysis (Requested by Counsel, or Otherwise) | 3,324.8 | 2,429,411.25 |
| 4 | 13-Week Cash Flow / MOR / Liquidity Analysis | 476.9 | 319,160.75 |
| 5 | Due Diligence of Debtor's Assets and Liabilities | 728.0 | 530,340.00 |
| 6 | Due Diligence of Wildfire Safety Plan and Related Analysis | 1,115.3 | 888,123.50 |
| 7 | Debtor Professionals - Diligence / Meetings / Calls | 426.6 | 383,227.00 |
| 8 | UCC Professionals - Diligence / Meetings / Calls | 37.6 | 40,222.00 |
| 9 | Other Professionals / Interested Parties - Diligence / Meetings / Calls | 369.7 | 419,911.50 |
| 10 | Tort Claimants (Counsel/FA) - Diligence / Meetings / Calls | 1,119.9 | 1,198,870.50 |
| 11 | Assist Counsel in Responses / Objections to Bankruptcy Court Motions | 432.7 | 368,716.50 |
| 12 | Committee Related Matters - Diligence / Meetings / Calls | 1,635.4 | 1,579,208.25 |
| 13 | Bankruptcy Filings, Motions and Other Document Review | 1,427.7 | 957,361.50 |
| 14 | Review of Executory Contracts and Related Analysis | 192.9 | 129,635.50 |
| 15 | Review of Employee-Related Matters, Including Retention Plans | 573.8 | 416,574.00 |
| 16 | Review of Claims and Related Analysis | 904.5 | 687,817.50 |
| 17 | Asset Sale(s), Strategic Alternatives, and Related Analysis | 742.1 | 524,179.50 |
| 18 | Analysis of New Debt or Equity Capital | 3,083.5 | 2,305,342.50 |
| 19 | Analysis of Pro-Forma Capital Structure, and Related Analysis | 1,053.8 | 831,216.25 |
| 20 | Benchmarking and Related Analysis | 2,338.9 | 1,430,875.50 |
| 21 | Term Sheets, Plan, and Disclosure Statement Analysis | 3,347.9 | 2,828,000.50 |
| 22 | Review of Discovery Documents and Deposition Preparation (Witnesses) | 618.7 | 424,656.50 |
| 23 | Deposition(s), Testimony, Court Hearing(s), and Related Preparation / Attendance | 727.1 | 692,174.50 |
| 24 | Business Plan | 599.0 | 494,305.00 |
| 25 | Regulatory and Legislative Matters, and Related Financial Analysis | 1,511.4 | 1,133,548.25 |
| 26 | Travel Time - Non Working Travel (Capped) | 338.9 | 378,155.75 |
| 27 | Project Administration | 699.1 | 551,023.00 |
| 28 | Professional Retention | 77.3 | 59,083.50 |
| 29 | Time and Expenses Tracking | - | - |
| 30 | Other/Miscellaneous | 23.9 | 6,244.50 |
| 31 | Fee Application Preparation | 1,290.3 | 693,828.50 |
| 32 | Mediation Preparation / Attendance | 236.2 | 233,879.00 |
| **Subtotal** | | **29,582.0** | **$ 23,049,210.50** |
| Less: 50% Discount for Non-Working Travel Time | | | (126,012.88) |
| **Grand Total** | | | **$ 22,923,197.63** |

## SUMMARY OF EXPENSES INCURRED DURING

## THE INTERIM APPLICATION PERIOD

| Expense Type | Amount |
|---|---|
| Internet/Online Fees | $99.90 |
| **Total** | **$99.90** |

## SUMMARY OF EXPENSES INCURRED DURING

## THE FINAL APPLICATION PERIOD

| Expense Type | Amount |
|---|---|
| Airfare | $99,551.19 |
| Car Rental | 842.1 |
| Data Processing / Materials For Committee | 364.8 |
| Ground Transportation (In-Town - Taxi/Uber/Car Service) | 15,961.5 |
| Ground Transportation (Out-of-Town - Taxi/Uber/Car Service) | 14,346.0 |
| Hotel Stay (Traveling) | 72,924.5 |
| Internet/Online Fees | 1,930.7 |
| Meals - In Town Only | 7,753.0 |
| Meals - Out-of-Town Travel Only | 16,643.9 |
| Other / Miscellaneous | 1,805.5 |
| Parking | 3,184.2 |
| Printing/Photocopying (In-House) | 12,197.1 |
| Research (Databases) | 36,099.0 |
| Teleconferencing | 4,584.7 |
| Transcripts | 1,479.5 |
| **Total** | **$289,667.63** |

Lincoln Partners Advisors LLC ("**Lincoln**" or the "**Applicant**"), the financial advisor for the Official Committee of Tort Claimants (the "**TCC**"), representing the largest group of stakeholders in the jointly administered bankruptcy cases (the "**Cases**") of PG&E Corporation and Pacific Gas and Electric Company (the "**Debtors**" or "**Reorganized Debtors**"), hereby submits its *Fifth Interim and Final Application of Lincoln Partners Advisors LLC for Allowance and Payment of Compensation and Reimbursement of Expenses for (1) the Interim Period June 1, 2020 through June 30, 2020* (the "**Interim Application Period**") *and (2) the Final Period from March 1, 2019 through June 30, 2020* (the "**Final Application Period**" and together with the Interim Application Period, the "**Application Period**") (the "**Fee Application**"). The Applicant seeks interim approval of compensation and reimbursement of expenses totaling **$1,622,047.65,** which sum represents compensation for professional services rendered in the amount of **$1,621,947.75** and reimbursement for expenses incurred in the amount of **$99.90**, and final approval of **$23,212,865.26** ($22,537,865.26 net of agreed upon Fee Examiner reductions), which sum represents compensation for professional services rendered in the amount of **$22,923,197.63** ($22,330,964.90 net of agreed upon Fee Examiner reductions) and reimbursement for expenses incurred in the amount of **$289,667.63** ($206,900.26 net of agreed upon Fee Examiner reductions). The Applicant is seeking entry of an order pursuant to sections 330, 331, and 1103 of title 11, United States Code (the "**Bankruptcy Code**"); Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); the Local Rules for the United States Bankruptcy Court for the Northern District of California (the "**Local Rules**"); the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines**"); the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, governing the narrative portion of fee applications, effective February 19, 2014 (the "**Narrative Guidelines**"); the *Order Pursuant to 11 U.S.C §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professional*s, entered on February 27, 2019 (the "**Interim**

**Compensation Order**"); and the revised Fee Examiner Protocol filed on October 24, 2019 (the "**Revised Protocol**" and collectively, the "**Guidelines**") [Docket No. 4473].

This Application is based upon the contents hereof, together with the exhibits; the certification of Brent C. Williams filed concurrently herewith; the pleadings, papers, and records on file in the Cases; and any evidence or argument that the Court may entertain at the time of the hearing on the Application.

Pursuant to the Narrative Guidelines, a cover letter enclosing this Application is being sent to the Chair of the TCC concurrently. The letter invites the Chair to discuss with the Applicant and/or the Office of the United States Trustee any objections, concerns, or questions the Chair may have regarding the requested compensation and reimbursement set forth in the Application. A copy of the transmittal letter is attached hereto as **Exhibit A.**

This Fee Application summarizes the services rendered by Lincoln on behalf of the TCC during the Application Period. A breakdown of the hours and fees by professional for the Interim Application Period is attached hereto as **Exhibit B**. A breakdown of the hours and fees by task code for the Interim Application Period is attached hereto as **Exhibit C**. A breakdown of expenses by expense type for the Interim Application Period is attached hereto as **Exhibit D.** A detailed copy of the time records by professional and by task code for the Interim Application Period is attached hereto as **Exhibit E**. A detailed copy of the expense records by professional and expense type for the Interim Application Period is attached here to as **Exhibit F.** Additionally, copies of Applicant's invoices detailing the services rendered during the Final Application Period can be found on the Court's docket at Doc. Nos. 2722, 3160, 3734, 3938, 4211, 4596, 4633, 4719, 4724, 5110, 5412, 6062, 6313, 6527, 6933, 7910, 8344, 8369, 8402, and 8727.

## TERMS AND CONDITIONS OF EMPLOYMENT

1. Lincoln is compensated on an hourly fee basis, plus reimbursement of actual and necessary expenses incurred. For further information regarding the terms and conditions of Lincoln's retention, please refer to the Retention Order (defined below).

## **RELEVANT BACKGROUND**

2.      On January 29, 2019 (the "**Petition Date**"), the Debtors filed the Cases. During the Application Period, the Debtors continued to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

3.      On February 15, 2019, the Office of the United States Trustee ("**UST**") filed an Appointment of the Official Committee of Tort Claimants [Docket No. 453].  Following the resignation of Richard Heffern from the original TCC and the addition of Tommy Wehe, on February 21, 2019, the UST filed the Amended Appointment of the Official Committee of Tort Claimants [Docket No. 530].  The UST filed the Second Amended Appointment of the Official Committee of Tort Claimants on March 27, 2020 following the resignations of Kirk Trostle and GER Hospitality, LLC [Dkt. No. 6503], and the Third Amended Appointment of the Official Committee of Tort Claimants on April 3, 2020 following the resignation of Karen K. Gowins [Dkt. No. 6613].  The members of the TCC are: (i) Tommy Wehe; (ii) Angelo Loo; (iii) Agajanian, Inc.; (iv) Susan Slocum; (v) Samuel Maxwell; (vi) Karen M. Lockhart; (vii) Wagner Family Wines-Caymus Vineyards; and (viii) Gregory Wilson.

4.      On March 30, 2019, the TCC filed its *Application to Employ Lincoln Partners Advisors LLC as Financial Advisor Effective as of March 1, 2019* [Docket No. 1134] (the "**Retention Application**").  On May 10, 2019, the Court entered its *Order Approving the Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. 2014 and 5002 to Retain and Employ Lincoln Partners Advisors LLC as Financial Advisors Effective as of March 1, 2019* [Docket No. 1976] (the "**Retention Order**").

5.      On May 28, 2019, the Court entered an order appointing Bruce A. Markell as fee examiner ("**Fee Examiner**") in the Cases [Docket No. 2267]. Lincoln has communicated with the Fee Examiner, and it has supplied information to the Fee Examiner as requested and necessary for the Fee Examiner to evaluate the reasonableness of the compensation sought in this Application.

## RELIEF REQUESTED AND BASIS FOR RELIEF

6.     This Fee Application is Lincoln's fifth interim and final request for allowance and payment of fees and expenses as financial advisor to the TCC.

7.     Pursuant to Bankruptcy Code §§ 330 and 331, Lincoln respectfully requests entry of an order, on a final basis, allowing and approving $23,212,865.26 ($22,537,865.26 net of agreed upon Fee Examiner reductions), which sum represents compensation for professional services rendered in the amount of $22,923,197.63 ($22,330,964.90 net of agreed upon Fee Examiner reductions) and reimbursement for expenses incurred in the amount of $289,667.63 ($206,900.26 net of agreed upon Fee Examiner reductions). The services and expenses for which compensation is sought herein were rendered for and on behalf of the TCC. Lincoln respectfully submits that the nature of the services has been necessary and beneficial to the TCC in maximizing their recoveries.

8.     Lincoln's retention and corresponding engagement scope have been to serve as the financial advisor to the TCC during the pendency of the Cases. While the Official Committee of Unsecured Creditors ("**UCC**") retained FTI Consulting ("**FTI**") and Centerview Partners ("**Centerview**") to serve two separate financial advisory roles, the TCC's focus on efficiency and cost-effectiveness has required Lincoln to perform both functions (e.g. investment banker and financial advisor to the TCC). The TCC and its counsel Baker & Hostetler LLP ("**Baker**" or "**Counsel**") required Lincoln to dedicate senior resources to many specific assignments and case issues in these matters. This has also been reflected in the professionals involved and hours worked.

9.     That said, in an effort to streamline and control professional fees and expenses where possible, Lincoln endeavored to minimize the expenditure of time by its senior members and to delegate responsibilities to junior members, associates, analysts, and other employees as appropriate.

10.     Further, Lincoln has made every effort to ensure that this Fee Application complies with the Guidelines and to avoid unnecessary duplication of effort by and among its team members, as well as with other retained professionals in these Cases. Lincoln has supplied the Fee Examiner and the UST with Lincoln's monthly fee statements in an electronic format (Excel) Lincoln believes is acceptable to the Fee Examiner and the UST. Pursuant to Bankruptcy Code § 504, Lincoln has

no understanding, agreement, or arrangement of any kind to divide with or pay to anyone any fees that may be awarded to Lincoln in the Cases, other than as may be shared among the members of Lincoln.

**SUMMARY OF PROFESSIONAL SERVICES RENDERED**

11. The Debtors' Cases are among the largest and most complex cases in history. There are many issues and considerations impacting the TCC and tort claimants' potential recoveries. The services rendered by Lincoln during the Interim Application Period include, but are not limited to, the following project billing categories. The specific tasks, the number of hours devoted, and the amounts charged within each billing category are set forth below. Summary descriptions, by project category, of the services rendered by Lincoln during the First, Second, Third, and Fourth Interim Periods can be found on the docket at Doc Nos. 4633, 4724, 6313 and 8402, respectively.

a. Financial Analysis (Requested by Counsel, or Otherwise) (003): Throughout the Interim Application Period, Lincoln spent significant time evaluating the Debtors' financial performance and business operations, including reviewing historical results, operating metrics, earnings releases, outstanding assets and liabilities, and financial forecasts. Lincoln reviewed and analyzed information provided by the Debtors; public SEC filings, such as the Debtors' quarterly and annual financial statements; investor presentations; and other public sources. Lincoln created various models and analyses, including an operating financial model, a waterfall recovery model, and analyses related to the Debtors' historical and projected financial results and capital expenditures, pro forma post-petition obligations and other financial and operational analyses. Lincoln researched various tax related matters, including the treatment of the Debtors' tax attributes and net operating losses ("**NOL**"), the preservation of the Debtors' pre- and post-petition NOLs, and tax monetization mechanisms. Lincoln performed valuation recovery analysis and reviewed the allocation of equity and recovery to various parties under different scenarios. Lincoln analyzed the formulation of Normalized Expected Net Income ("**NENI**"), including the inputs to NENI and the impact of changes to these inputs on the NENI formulation. Lincoln reviewed risk factors and the potential financial and operational impacts of COVID-19 on the Debtors' operations, financial results, and liquidity. Additionally, Lincoln performed in-depth

research into registration rights agreements, lock-up terms, and other topics related to contractual rights and obligations of shareholders involved in primary and secondary equity offerings. This assisted Counsel and the TCC in understanding the Debtors' financial position, outstanding claims, assets and liabilities, and potential recoveries to tort claimants across various scenarios and assumptions.

The total hours and amount charged by Lincoln to this matter during the Interim Application Period represents **181.8 hours** and $**143,121.00** in fees.

b.    13-Week Cash Flow / MOR / Liquidity Analysis (004):    This category encompasses services rendered related to the Debtors' liquidity, cash flow, and monthly operating reports. Lincoln reviewed the Debtors' monthly operating results to assess and evaluate the Debtors' monthly financial performance, account balances of certain assets and liabilities, and payments on pre-petition obligations, among others. Lincoln advised Counsel and the TCC regarding the Debtors' liquidity and cash flow position, actual versus forecasted results, and future projections.

The total hours and amount charged by Lincoln to this matter during the Interim Application Period represents **1.5 hours** and **$942.50** in fees.

c.    Debtor Professionals - Diligence / Meetings / Calls (007):    During the Interim Application Period, Lincoln held calls and video-conferenced with the Debtors and the Debtors' advisors, including Alix Partners and Lazard Freres & Co., to discuss and negotiate matters related to the Cases including business diligence, liquidity forecasts, financial projections, exit financing, securitization application, monthly operating reports, financing commitments, and other filed motions and matters.

The total hours and amount charged by Lincoln to this matter during the Interim Application Period represents **39.4 hours** are **$34,663.00** in fees.

d.    Other Professionals / Interested Parties - Diligence / Meetings / Calls (009):    During the Interim Application Period, Lincoln held confidential calls with the other professionals and interested parties to the Cases to discuss case-related matters and potential joint interests.

Lincoln spent time preparing for and communicating via calls and emails with these professionals and interested parties.

The total hours and amount charged by Lincoln to this matter during the Interim Application Period represents **15.0 hours** and **$17,365.00** in fees.

e. <u>Tort Claimants (Counsel/FA) - Diligence / Meetings / Calls (010):</u> Time spent in this category is related to correspondence with Baker regarding strategy, approach, recommendations, and financial analyses of various filings by the Debtors and case-specific issues, including many of the topics and issues addressed in this Fee Application. Lincoln also coordinated with Baker on TCC discussion topics for weekly meetings and related presentation materials.

The total hours and amount charged by Lincoln to this matter during the Interim Application Period represents **78.3 hours** and **$83,268.50** in fees.

f. <u>Committee Related Matters - Diligence / Meetings / Calls (012):</u> This task code encompassed substantial time for services rendered to the TCC including preparation of presentations, attending regularly scheduled (typically weekly) committee meetings, and participation in other regular communications with individual TCC members and sub-committees outside of the scheduled weekly meetings. Lincoln assisted the TCC with evaluating the numerous issues and topics covered in this Fee Application and assessing their potential financial impact to tort claimants and/or their eventual recovery. Lincoln prepared and presented numerous analyses, presentations and recommendations to the TCC on various topics including the Debtors' financial and operational position, waterfall and recovery analysis, treatment of tax attributes, term sheets and proposals, plans of reorganization, equity valuations, strategic alternatives, exit financing, negotiations with the Debtors and interested parties, and regulatory and legislative updates, among many others.

The total hours and amount charged by Lincoln to this matter during the Interim Application Period represents **40.5 hours** and **$41,507.50** in fees.

g. <u>Bankruptcy Filings and Document Review (013):</u> During the Interim Application Period, Lincoln reviewed and evaluated various other documents, motions, and filings that are not covered under a specific task code in this Fee Application. Lincoln also regularly

reviewed the Debtors' and third-party media coverage to monitor and evaluate developments related to the Cases and the impact, if any, to the tort claimants.

One junior Lincoln professional daily reviewed, summarized, and circulated all relevant court dockets internally to ensure the engagement team stayed informed of key filings and case developments in a timely and cost-efficient manner. Additional Lincoln junior professionals daily monitored the Debtors' and third-party media coverage, including news articles from regional and national media outlets, restructuring publications, subscription databases and regulatory websites. A Lincoln professional (junior or senior depending on underlying topic) monitored and analyzed developments, trends, and market sentiment related to the Debtors, regulators, third parties, and tort victims. Similar to the key docket filings, key media coverage articles and/or publications were circulated to the engagement team and, in certain instances, Counsel and the TCC.

The total hours and amount charged by Lincoln to this matter during the Interim Application Period represents **63.3 hours** and **$47,203.50** in fees.

        h.      <u>Asset Sale(s), Strategic Alternatives, and Related Analysis (017)</u>:  Time billed to this category relates to evaluating various strategic alternatives available to the Debtors including potential sale(s) of core and non-core assets, including the Debtors' comprehensive real estate portfolio and its headquarters in San Francisco, California. In reviewing the potential sale(s) of assets, Lincoln considered the nature of the Debtors asset base, comparable market transactions, impact to operations from the sale(s), and the estimated recovery value, if any.

The total hours and amount charged by Lincoln to this matter during the Interim Application Period represents **127.9 hours** and **$85,480.50** in fees.

        i.      <u>Analysis of New Debt or Equity Capital (018)</u>:  Time billed to this category includes analyzing new debt or equity capital financing proposals as part of the Debtors' plan of reorganization. Lincoln analyzed and compared the related debt commitment letters, confident letters, various iterations of equity backstop commitment letters, and proposed securitization transaction in accordance with the respective plan of reorganization. Lincoln reviewed and evaluated the key terms and conditions, termination rights, registration rights, feasibility and the cost of capital, among other terms. Lincoln also researched and analyzed trust mechanisms and

trust monetization mechanics. Lincoln analyzed the amount of new equity capital being raised, the number of shares being issued, the share price and the implied equity value per share. Lincoln performed an in-depth evaluation and review of the Debtors' securitization application and other related documents filed with the CPUC. Lincoln advised Counsel and the TCC regarding the debt commitment letters, equity considerations to the tort claimants, confident letters, trust mechanisms, equity backstop commitment letters, and proposed securitization transaction under the proposed plans and the risk factors and potential impact to tort claimants and their recovery.

The total hours and amount charged by Lincoln to this matter during the Interim Application Period represents **707.7 hours** and **$551,916.75** in fees.

j.      Analysis of Pro-Forma Capital Structure, and Related Analysis (019):  Time billed to this category includes analyzing the pro-forma capital structure under the Debtors' plan of reorganization. Lincoln performed financial modeling and analysis of the Debtors' pro-form capital structure and frequently updated the analysis based on changes to the plan funding sources, market conditions, and for other reasons. Lincoln performed in-depth analysis on the build-up to NENI, the inputs to NENI, and the impact NENI has on the implied equity value at plan emergence and to the tort claimants. Lincoln analyzed the pre-petition interest expense, post-petition interest expense, and proposed interest expense under the plan of reorganization. Lincoln also researched and evaluated the expected credit rating for the Debtors upon emergence under various plan scenarios. As part of the illustrative S&P credit rating analysis, Lincoln performed diligence on the business plan assumptions provided by the Debtors, analyzed the Debtors' funds-from-operations-to-debt ratio and other relevant ratios, and reviewed the comparable company S&P Ratings Direct credit rating metrics.

Lincoln advised Counsel and the TCC regarding the pro-forma capital structure and outlined the potential impact to tort claimant recoveries. The total hours and amount charged by Lincoln to this matter during the Interim Application Period represents **220.5 hours** and **$194,467.50** in fees.

k.      Benchmarking and Related Analysis (020):  Time billed to this category includes analyzing the Debtors' business and operating performance relative to competitors and/or other similar companies. Lincoln performed significant research to identify and refine a set of

comparable companies with characteristics similar to the Debtors, considering such factors as nature and size of operations, operating history, geographic region, financial performance and regulatory oversight. Using similar characteristics, Lincoln also developed and refined a list of precedent transactions involving companies similar to the Debtors. Lincoln spent significant time analyzing and reviewing public filings and relevant investor presentations of the selected public companies to compile and compare various operating metrics of the Debtors' business, including total operating revenue, rate base and profitability. Lincoln compared these operating metrics to those of the comparable public companies. These comparisons helped Lincoln understand the financial and operational performance of the Debtors relative to comparable companies and the potential impact to its enterprise value and equity value. Lincoln regularly updated the benchmarking analysis to reflect market fluctuations and assist in evaluating the Debtors' potential enterprise value in conjunction with updated proposals and plans of reorganization.

Lincoln also reviewed and benchmarked other comparable securities offered under various term sheets and plans of reorganization including bonds and preferred equity instruments. Lincoln frequently analyzed and monitored the capital markets activity, including recent capital raises, interest rate movements, and changes to valuation multiples in order to assess the potential impact on the Debtors' valuation and plan emergence. Lincoln also analyzed the impact that Covid-19 has had on valuations for other comparable utilities and analyzed the potential impact to the equity value for the tort claimants. Lincoln evaluated key terms of the proposed bonds such as principal, term, conditions and coupon, among others. Lincoln also researched and evaluated other bankruptcy precedents for comparable mandatory preferred equity structures and terms, including PIK rates, conversion periods, and discounts for converting to common equity. Lincoln compared the results of the bond and preferred equity analysis to the proposed capital structures in the term sheets and plans of reorganization to assess the reasonableness of the requested securities.

The total hours and amount charged by Lincoln to this matter during the Interim Application Period represents **99.3 hours** and **$67,023.50** in fees.

1.   <u>Term Sheets, Plan, and Disclosure Statement Analysis (021):</u>  Time billed to this category includes devoting significant time to reviewing and evaluating term sheets, proposals,

and plans submitted by the Debtors. Lincoln performed various analyses to understand the potential recoveries to tort claimants including, among other things, the total consideration, form of consideration, plan funding, proposed capital structure, total enterprise value, equity value, and overall feasibility of the illustrative plans. Lincoln spent significant time comparing and evaluating the various plans of reorganization including all amendments to term sheets, iterations and the supplemental materials prepared by the Debtors, interested parties and their advisors. Lincoln prepared numerous presentations and recovery and waterfall analyses to assist Counsel and the TCC in evaluating the updated and revised plans and the impact on recoveries to the tort claimants. Lincoln also assisted in analyzing term sheets and proposals to assist Counsel, Lincoln and the TCC in the negotiations with the Debtors and interested parties. Lincoln also reviewed and analyzed the Debtors' plan disclosure statements and the corresponding financial statement projections.

The total hours and amount charge by Lincoln to this matter during the Interim Application Period represents **104.6 hours** and **$91,027.00** in fees.

m. <u>Deposition(s), Testimony, Court Hearing(s), and Related Preparation / Attendance (023)</u>: Time billed to this category includes preparation and attendance of court hearings – by phone. Attendance at hearings included omnibus hearing(s), confirmation hearing(s), and hearings related to securing plan financing and plan support, among other topics. Preparation included strategy discussions internally and with Counsel; reviewing hearing specific filings including motions, objections, and replies; and reviewing previously prepared work product by Lincoln or other advisors. Lincoln reviewed extensive documentation related to status conferences, court hearings, and confirmation hearings to support Counsel.

The total hours and amount charged by Lincoln to this matter during the Interim Application Period represents **143.3 hours** and **$149,813.50** in fees.

n. <u>Regulatory and Legislative Matters, and Related Financial Analysis (025)</u>: Time billed to this category includes all regulatory and legislative matters and analyses related to the Cases, including statements and decisions from the CPUC regarding fines, penalties, probations and approvals to plan confirmation. Lincoln reviewed and evaluated the fines, penalties, investigations, and decisions to assess the potential impact that these regulatory and legislative

matters may have on the Debtors' current and future operations, NENI, business plan, reorganization efforts, and any potential impact on the recovery to the tort claimants.

The total hours and amount charged by Lincoln to this matter during the Interim Application Period represents **10.0 hours** and **$6,650.00** in fees.

          o.      <u>Project Administration (027)</u>:  Time billed to this category relates to Lincoln's planning, strategizing, and coordinating of case-related efforts, including the development of work streams, staffing of resources, and internal communication of project allocation(s) to avoid unnecessary duplication of efforts. This code includes establishing and maintaining an internal work site to house the task and time tracking databases, key filings, and various work product prepared for Counsel and the TCC. To coordinate efforts, Lincoln holds a weekly internal meeting to discuss outstanding deliverables, allocate new tasks between team members, and discuss new case developments that may have an impact to the TCC.

The total hours and amount charged by Lincoln to this matter during the Interim Application Period represents **35.4 hours** and **$28,873.00** in fees.

          p.      <u>Fee Application Preparation (031)</u>:  Time billed to this category consists of communications relating to and preparing monthly and interim fee statements to comply with local and federal rules including reviewing timekeeping records for privileged, confidential, and work product issues; reducing time and expense entries; and working with Counsel to draft the fee application motion.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **151.0 hours** and **$78,625.00** in fees.

## CONCLUSION

12.    Lincoln believes that this Fee Application appropriately sets forth the significant services Lincoln performed on behalf of the TCC and provides this Court, the UST, the Fee Examiner, the Debtors' creditors, and other interested parties with an insightful overview of the scope of services rendered.  Thus, Lincoln respectfully submits that the fees and expenses sought herein are reasonable and that the services rendered were necessary, effective, efficient, and

1   economical.  Accordingly, Lincoln respectfully requests that this Fee Application for allowance of

2   fees and expenses, on a final basis, be granted in all respects.

3   Dated: August 26, 2020

4

5                                                   LINCOLN PARTNERS ADVISORS LLC
                                                    By: */s/ Brent C. Williams*
6

7                                                   Financial Advisor to the Official Committee of Tort
                                                    Claimants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATION**

I, Brent C. Williams, declare as follows:

The following facts are personally known to me, and if called to do so, I could and would competently testify thereto.

1.     I am a Managing Director and Co-Head of Lincoln's Special Situations Group at Lincoln Partners Advisors LLC ("**Lincoln**"). I submit this certification in support of the *Fifth Interim and Final Application of Lincoln Partners Advisors LLC for Allowance and Payment of Compensation and Reimbursement of Expenses for (1) the Interim Period June 1, 2020 through June 30, 2020 and (2) the Final Period from March 1, 2019 through June 30, 2020* (the "**Fee Application**").[1]

2.     I have personally reviewed the information contained in the Fee Application and believe its contents to be true to the best of my knowledge, information and belief.

3.     The compensation and expense reimbursement sought in this Fee Application, to the best of my knowledge, information and belief, after reasonable inquiry, is in conformity with sections 330, 331, and 1103 of title 11, United States Code; Rule 2016 of the Federal Rules of Bankruptcy Procedure; the Local Rules for the United States Bankruptcy Court for the Northern District of California; the *Order Pursuant to 11 U.S.C §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professional*s, entered on February 27, 2019; the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013; the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, governing the narrative portion of fee applications, effective February 19, 2014; and the revised Fee Examiner Protocol filed on October 24, 2019.

4.     The compensation and expense reimbursement requested in this Fee Application are billed at rates, in accordance with practices, no less favorable than those customarily employed by Lincoln and generally accepted by Lincoln's clients.

---

[1] Capitalized terms not defined have the meanings used in the Application.

| | |
|---|---|
| 1 | Date: August 26, 2020 |
| 2 | |
| 3 | LINCOLN PARTNERS ADVISORS LLC |
| 4 | BY: */s/ Brent C. Williams* |
| 5 | Financial Advisor to the Official Committee of Tort Claimants |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |