# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| **- and -** | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | **FINAL FEE APPLICATION OF MILBANK LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |

☐    Affects PG&E Corporation
☐    Affects Pacific Gas and Electric Company
☑    Affects both Debtors

*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

Date: TBD
Time: TBD
Place: United States Bankruptcy Court
     Courtroom 17,
     16th Floor San Francisco, CA 94102
Judge: Hon. Dennis Montali

| | |
|---|---|
| Name of Applicant: | <u>Milbank LLP</u> |
| Authorized to Provide Professional Services to: | <u>Official Committee of Unsecured Creditors</u> |
| Date of Retention: | <u>April 29, 2019 *nunc pro tunc* to February 12, 2019</u> |
| Time Period for which compensation and reimbursement are sought: | <u>February 12, 2019 through July 31, 2020</u> |
| Amount of Compensation sought as actual, reasonable, and necessary: | <u>$28,307,647.25</u> |
| Amount of Expense Reimbursement sought as actual, reasonable, and necessary: | <u>$922,318.05</u> |
| Total Compensation and Expenses Requested for Compensation Period: | <u>$29,229,965.30</u> |

This is a(n): ___ monthly ___ interim <u>X</u> final application

This is the final fee application filed by Milbank LLP in these cases.

**Summary of Interim Fee Applications for Compensation Period:**

| Filing | Period Covered | Fees | Expenses |
|---|---|---|---|
| *Corrected First Interim Fee Statement*<br><br>Docket No. 3117<br><br>Date Filed: 7/22/19 | 2/12/19 – 5/31/19 | $7,284,101.25 | $225,980.03 |
| *Second Interim Fee Statement*<br><br>Docket No. 4723<br><br>Date Filed: 11/14/19 | 6/1/19 – 9/30/19 | $7,965,307.50 | $274,206.05 |
| *Third Interim Fee Statement*<br><br>Docket No. 6278<br><br>Date Filed: 3/13/20 | 10/1/19 – 1/31/20 | $7,182,215.25 | $252,836.83 |
| *Fourth Interim Fee Statement*<br><br>Docket No. 8411<br><br>Date Filed: 6/29/20 | 2/1/20 – 5/31/20 | $4,942,522.75 | $146,824.85 |
| *Monthly Fee Statement for June/July 2020*<br><br>Docket No. 8773<br><br>Date Filed: 8/14/20 | 6/1/20 – 7/31/20 | $933,500.50 | $22,470.29 |
| **TOTALS:**[1] | | **$28,307,647.25** | **$922,318.05** |

---

[1] Pursuant to section 12.1 of the Plan, the Committee dissolved upon the Effective Date (July 1, 2020). The Plan does, however, provide for the payment of certain fees and expenses following the Effective Date. As such, Milbank has filed one monthly fee statement (which covered both June and July 2020). In addition, following the filing of this Application, Milbank expects to file additional monthly fee statements covering the time spent, among other things, preparing this Application.

**Summary of Monthly Fee Statements for Compensation Period:**

| Application | Date Filed | Period Covered | Requested Fees / Expenses | Authorized Fees (80%) / Expenses (100%) |
|---|---|---|---|---|
| First Monthly Fee Statement [Docket No. 2219] | 5/24/19 | 2/12/19–2/28/19 | $1,579,807.00/ $17,428.27 | $1,263,845.60/ $17,428.27 |
| Second Monthly Fee Statement [Docket No. 2707] | 6/21/19 | 3/1/19 – 3/31/19 | $2,154,205.25/ $88,823.53 | $1,723,364.20/ $88,823.53 |
| Third Monthly Fee Statement [Docket No.2950 ] | 7/12/19 | 4/1/19 – 4/30/19 | $1,893,348.75/ $65,490.56 | $1,514,679.00/ $65,490.56 |
| Fourth Monthly Fee Statement [Docket No. 3071] | 7/18/19 | 5/1/19 – 5/31/19 | $1,656,740.25/ $54,237.67 | $1,325,392.20/ $54,237.67 |
| Fifth Monthly Fee Statement [Docket No. 3659] | 8/22/19 | 6/1/19 – 6/30/19 | $2,068,600.25/ $61,397.77 | $1,654,880.20/ $61,397.77 |
| Sixth Monthly Fee Statement [Docket No. 3959] | 9/20/19 | 7/1/19 – 7/31/19 | $2,393,383.25/ $79,173.27 | $1,914,706.60/ $79,173.27 |
| Seventh Monthly Fee Statement [Docket No. 4291] | 10/18/19 | 8/1/19 – 8/31/19 | $1,987,907.75/ $56,717.98 | $1,590,329.20/ $56,717.98 |
| Eighth Monthly Fee Statement [Docket No. 4620] | 11/8/19 | 9/1/19 – 9/30/19 | $1,515,416.25/ $76,917.03 | $1,212,333.00/ $76,917.03 |
| Ninth Monthly Fee Statement [Docket No. 4884] | 11/27/19 | 10/1/19 – 10/31/19 | $2,139,056.00/ $50,825.55 | $1,711,244.80/ $50,825.55 |
| Tenth Monthly Fee Statement [Docket No. 5048] | 1/17/20 | 11/1/19 – 11/30/19 | $2,004,837.50/ $87,672.04 | $1,603,870.00/ $87,672.04 |
| Eleventh Monthly Fee Statement [Docket No. 5817] | 2/18/20 | 12/1/19 – 12/31/19 | $1,441,306.50/ $70,574.91 | $1,153,045.20/ $70,574.91 |

| | | | | |
|---|---|---|---|---|
| Twelfth Monthly Fee Statement [Docket No. 6207] | 3/9/20 | 1/1/20 – 1/31/20 | $1,597,015.25/ $43,764.33 | $1,277,612.20/ $43,764.33 |
| Thirteenth Monthly Fee Statement [Docket No. 6797] | 4/20/20 | 2/1/20 – 2/29/20 | $1,296,101.25/ $80,249.66 | $1,036,881.00/ $80,249.66 |
| Fourteenth Monthly Fee Statement [Docket No. 7373] | 5/18/20 | 3/1/20– 3/31/20 | $1,582,052.00/ $38,785.73 | $1,265,641.60/ $38,785.73 |
| Fifteenth Monthly Fee Statement [Docket No. 7892] | 6/11/20 | 4/1/20 – 4/30/20 | $1,137,697.00/ $13,174.38 | $910,157.60/ $13,174.38 |
| Sixteenth Monthly Fee Statement [Docket No. 6129] | 6/29/20 | 5/1/20 – 5/31/20 | $926,672.50/ $14,615.08 | $741,338.00/ $14,615.08 |
| Seventeenth Monthly Fee Statement [Docket No. 8773] | 8/14/20 | 6/1/20 – 7/31/20 | $933,500.50/$22,470.29 | $746,800.40/ $22,470.29 |
| **TOTALS:** | | | $28,307,647.25/ $922,318.05 | $22,646,117.80/ $922,318.05 |

**Summary of Any Objections to Monthly Fee Applications:** No objections were filed with respect to the First through Sixteenth Monthly Fee Statements. See *Certificates of No Objection* [Docket Nos. 2565, 2976, 3570, 3490, 3891, 4249, 4681, 4950, 5170, 5816, 6252, 6576, 7157, 7845, 8271 and 8471]. The objection deadline with respect to the Seventeenth Monthly Fee Statement is September 4, 2020.

# FINAL COMPENSATION BY PROJECT CATEGORY

| Project Category | Total Hours | Total Fees |
|---|---|---|
| 00002 Asset Sales | 20.10 | $19,569.00 |
| 00003 Automatic Stay | 451.60 | $447,181.00 |
| 00004 Bankruptcy Litigation | 2,612.40 | $2,392,870.50 |
| 00005 Bar Date | 238.50 | $270,698.50 |
| 00006 Claims Reconciliation/Objections | 246.00 | $253,486.00 |
| 00007 Case Administration (Dockets updates, WIP and calendar) | 897.50 | $701,871.50 |
| 00008 CCA and Aggregator Issues | .40 | $368.00 |
| 00009 Plan of Reorganization | 4,786.00 | $5,492,233.50 |
| 00010 Communications with Client | 1,254.80 | $1,363,591.00 |
| 00011 Communications with Unsecured Creditors | 140.90 | $179,118.00 |
| 00012 Committee Meetings | 1,649.70 | $2,010,772.00 |
| 00013 Committee Governance | 80.90 | $98,239.50 |
| 00014 Corporate Governance and Board Issues | 269.30 | $283,727.00 |
| 00015 Customer, Supplier and Vendor Issues | 29.80 | $30,080.00 |
| 00016 DIP Financing/Cash Management/Exit Financing | 1,103.60 | $1,064,073.00 |
| 00017 Executory Contracts/Lease Issues | 173.20 | $180,515.50 |
| 00018 General Case Strategy | 2,452.80 | $2,830,567.50 |
| 00020 Court Hearings | 2,203.50 | $2,461,229.50 |
| 00022 Non-Bankruptcy Litigation | 121.60 | $108,821.00 |
| 00023 Non-Working Travel | 783.10 | $487,352.25 |
| 00024 Power Purchase Agreements | 18.60 | $17,442.00 |

Case: 19-30088   Doc# 8885   Filed: 08/28/20   Entered: 08/28/20 13:18:51   Page 5 of 43

| | | |
|---|---|---|
| 00025 Reclamation/503(b)(9) Claims | .60 | $801.00 |
| 00026 Regulatory, Political and Legislative | 307.70 | $365,387.00 |
| 00027 CPUC | 783.90 | $812,551.50 |
| 00028 FERC | 100.30 | $102,155.00 |
| 00029 Retention/Fee Applications | 1,624.30 | $1,561,026.00 |
| 00030 Retention/Fee applications Ordinary Course | 6.20 | $5,201.50 |
| 00032 Subrogation Issues | 284.50 | $312,264.50 |
| 00033 Tort Committee | 72.20 | $71,424.00 |
| 00034 Tax Issues | 91.50 | $100,415.00 |
| 00036 U.S. Trustee | 19.80 | $20,523.00 |
| 00038 Wildfire Claims and Treatment | 3,749.10 | $3,612,634.00 |
| 00039 Employee Benefits/Severance Issues | 629.70 | $649,458.50 |
| **Total** | **27,204.10** | **$28,307,647.25** |

## FINAL COMPENSATION BY PROFESSIONAL

The attorneys who rendered professional services in these Chapter 11 Cases from February 12, 2019 through July 31, 2020 (the "Compensation Period") are:

| NAME OF PROFESSIONAL PARTNERS, COUNSEL & SENIOR ATTORNEYS: | DEPARTMENT | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| William Bice | Global Project, Energy and Infrastructure Finance | 1996 | $1,615 | 156.50 | $252,747.50 |
| | | | $1,540 | 321.80 | $495,572.00 |
| | | | $770* | 20.00 | $15,400.00 |
| Gregory Bray | Financial Restructuring | 1984 | $1,615 | 608.50 | $982,727.50 |
| | | | $1,540 | 1,479.40 | $2,278,276.00 |
| | | | $807.5* | 6.30 | $5,087.25 |
| | | | $770* | 39.70 | $30,569.00 |
| Dennis Dunne | Financial Restructuring | 1991 | $1,615 | 189.20 | $305,558.00 |
| | | | $1,540 | 595.40 | $916,916.00 |
| Russell Kestenbaum | Tax | 1999 | $1,615 | 16.90 | $27,293.50 |
| | | | $1,540 | 63.00 | $97,020.00 |
| Thomas Kreller | Financial Restructuring | 1992 | $1,615 | 305.70 | $493,705.50 |
| | | | $1,540 | 680.60 | $1,048,124.00 |
| | | | $807.5* | 4.00 | $3,230.00 |
| | | | $770* | 56.20 | 43,274.00 |
| Andrew Leblanc | Litigation | 2000 | $1,615 | 50.40 | $81,396.00 |
| | | | $1,540 | 612.60 | $943,404.00 |
| | | | $807.5* | 4.00 | $3,230.00 |
| | | | $770 | 204.80 | $157,696.00 |
| Allan Marks | Global Project, Energy and Infrastructure Finance | 1990 | $1,540 | 67.80 | $104,412.00 |
| Eric Moser | Alternative Investments | 1991 | $1,540 | 1.40 | $2,156.00 |
| Adam Moses | Global Corporate | 2002 | $1,540 | 9.80 | $15,092.00 |
| Michael Nolan | Litigation | 1992 | $1,540 | 33.30 | $51,282.00 |
| Albert Pisa | Alternative Investments | 1997 | $1,540 | 6.50 | $10,010.00 |

3

| Name | Department | Year | Rate | Hours | Amount |
|---|---|---|---|---|---|
| | | | $1,615 | 194.40 | $313,956.00 |
| | | | $1,540 | 367.60 | $566,104.00 |
| | | | $807.5* | 21.70 | $17,522.75 |
| Alan Stone | Litigation | 1988 | $770 | 60.00 | $46,200.00 |
| Karen Wong | Global Project, Energy and Infrastructure Finance | 1986 | $1,540 | 3.80 | $5,852.00 |
| Paul Aronzon | Financial Restructuring | 1979 | $1,540 | 254.90 | $392,546.00 |
| Nicholas Smith | Global Corporate | 2003 | $1,465 | 3.00 | $4,395.00 |
| Samuel Khalil | Financial Restructuring | 2004 | $1,425 | 162.60 | $231,705.00 |
| | | | $712.5* | 7.60 | $5,415.00 |
| Manan Shah | Tax | 2002 | $1,540 | 5.40 | $8,316.00 |
| | | | $1,425 | 83.00 | $118,275.00 |
| Aaron Renenger | Litigation | 2002 | $1,335 | 0.60 | $801.00 |
| Michael Price | Financial Restructuring | 2011 | $1,155 | 10.40 | $12,012.00 |
| Jason Anderson | Global Corporate | 2009 | $995 | 9.30 | $9,253.50 |
| Dennis O'Donnell | Financial Restructuring | 1992 | $1,250 | 28.40 | $35,500.00 |
| Jennifer Harris | Alternative Investments | 2000 | $1,120 | 12.80 | $14,336.00 |
| Brian Kinney | Financial Restructuring | 2004 | $1,120 | 6.30 | $7,056.00 |
| Craig Price | Financial Restructuring | 2000 | $1,175 | 1,146.10 | $1,346,667.50 |
| | | | $1,120 | 1,934.40 | $2,166,528.00 |
| | | | $1,175 | 877.00 | $1,030,475.00 |
| | | | $1,120 | 1,021.30 | $1,143,856.00 |
| | | | $995 | 326.30 | $324,668.50 |
| | | | $587.5* | 14.00 | $8,225.00 |
| | | | $560* | 61.70 | $34,552.00 |
| Samir Vora | Litigation | 2007 | $497.5* | 5.50 | $2,736.25 |
| Lena Mandel | Financial Restructuring | 1991 | $1,175 | 261.30 | $307,027.50 |
| | | | $1,080 | 482.30 | $520,884.00 |
| **Total Partners, Counsel & Senior Attorneys:** | | | **$1,321.32** | **12,895.50** | **$17,039,043.25** |

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT | YEAR ADMITTED* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Kamel Aitelaj | Litigation | 2008 | $1,045 | 25.60 | $26,752.00 |
| | | | $995 | 39.30 | $39,103.50 |
| James Beebe | Tax | 2011 | $1,045 | 8.00 | $8,360.00 |
| | | | $995 | 56.60 | $56,317.00 |
| Nicholas Deluca | Tax | 2009 | $995 | 1.00 | $995.00 |
| Daniel Denny | Financial Restructuring | 2005 | $995 | 567.50 | $564,662.50 |
| | | | $497.5* | 20.10 | $9,999.75 |
| Yigal Gross | Alternative Investments | 2015 | $995 | 10.40 | $10,348.00 |
| James Behrens | Financial Restructuring | 2015 | $955 | 15.60 | $14,898.00 |
| Erin Dexter | Litigation | 2014 | $995 | 439.50 | $437,302.50 |
| | | | $920 | 878.70 | $808,404.00 |
| | | | $460 | 2.80 | $1,288.00 |
| Rachael Franzoia | Financial Restructuring | 2013 | $995 | 40.90 | $40,695.50 |
| | | | $920 | 563.20 | $518,144.00 |
| | | | $460 | 7.50 | $3,450.00 |
| Ryan Hart | Global Project, Energy and Infrastructure Finance | 2014 | $920 | 19.10 | $17,572.00 |
| Matthew Koch | Financial Restructuring | 2014 | $995 | 115.60 | $115,022.00 |
| | | | $920 | 1,785.30 | $1,642,476.00 |
| Parker Milender | Financial Restructuring | 2014 | $920 | 91.00 | $83,720.00 |
| Katherine Pierucci | Litigation | 2014 | $920 | 65.60 | $60,352.00 |
| Jordan Weber | Financial Restructuring | 2015 | $995 | 257.20 | $255,914.00 |
| | | | $920 | 1,120.50 | $1,030,860.00 |
| | | | $497.5* | 25.90 | $12,885.25 |
| | | | $460* | 41.10 | $18,906.00 |
| Kathryn Kincade | Global Project, Energy and Infrastructure Finance | 2015 | $875 | 9.90 | $8,662.50 |
| Chad Richards | Global Project, Energy and Infrastructure Finance | 2015 | $965 | 93.80 | $90,517.00 |
| | | | $875 | 146.80 | $128,450.00 |
| | | | $437.5* | 4.00 | $1,750.00 |
| Christina Skaliks | Tax | 2015 | $965 | 6.40 | $6,176.00 |
| | | | $875 | 58.50 | $51,187.50 |
| Julie Wolf | Litigation | 2016 | $965 | 77.10 | $74,401.50 |

Case: 19-30088   Doc# 8885   Filed: 08/28/20   Entered: 08/28/20 13:18:51   Page 9 of 43

| Name | Department | Year | Rate | Hours | Amount |
|---|---|---|---|---|---|
| | | | $875 | 978.50 | $856,187.50 |
| | | | $437.5* | 94.50 | $41,343.75 |
| Emile Ayoub | Litigation | 2017 | $830 | 77.80 | $64,574.00 |
| James Donahue | Global Project, Energy and Infrastructure Finance | 2016 | $830 | 9.30 | $7,719.00 |
| Archan Hazra | Tax | 2017 | $830 | 29.50 | $24,485.00 |
| Kavon Khani | Litigation | 2017 | $920 | 637.40 | $586,408.00 |
| | | | $830 | 1,070.10 | $888,183.00 |
| Megan McGuiggan | Litigation | 2018 | $870 | 1.60 | $1,392.00 |
| Jesse Yoder | Financial Restructuring | 2017 | $830 | 11.70 | $9,711.00 |
| Adeola Adeyosoye | Financial Restructuring | 2018 | $735 | 129.00 | $94,815.00 |
| Julia Duke | Litigation | 2018 | $735 | 368.60 | $270,921.00 |
| Will Clark Farmer | Litigation | 2017 | $735 | 4.30 | $3,160.50 |
| Natalie Karl | Global Project, Energy and Infrastructure Finance | 2017 | $735 | 5.30 | $3,895.50 |
| Melanie Miller | Financial Restructuring | 2018 | $735 | 47.80 | $35,133.00 |
| Ben Nicholson | Litigation | 2017 | $735 | 67.40 | $49,539.00 |
| Luis Orengo | Litigation | 2018 | $735 | 341.20 | $250,782.00 |
| Henry Seeley | Global Project, Energy and Infrastructure Finance | 2018 | $735 | 77.90 | $57,256.50 |
| Yuliya Zahoroda | Financial Restructuring | 2018 | $735 | 15.30 | $11,245.50 |
| Stephen Benz | Litigation | 2019 | $595 | 40.90 | $24,335.50 |
| Margherita Capolino | Litigation | 2019 | $770 | 68.40 | $52,668.00 |
| | | | $595 | 270.50 | $160,947.50 |
| Rachael Connelly | Global Corporate | 2018 | $595 | 19.10 | $11,364.50 |
| Colette Gulick | Global Project, Energy and Infrastructure Finance | 2018 | $595 | 7.00 | $4,165.00 |
| Katherine Gutierrez | Financial Restructuring | Not Yet Admitted | $595 | 13.20 | $7,854.00 |
| Michael Harman | Global Project, Energy and Infrastructure Finance | 2019 | $595 | 14.70 | $8,746.50 |
| Benjamin Heller | Tax | 2016 | $770 | 3.30 | $2,541.00 |
| | | | $595 | 19.00 | $11,305.00 |
| Erin Hood | Alternative Investments | 2019 | $595 | 4.50 | $2,677.50 |
| Christopher Kim | Litigation | 2019 | $595 | 16.10 | $9,579.50 |
| Danielle Lee | Litigation | 2019 | $595 | 114.10 | $67,889.50 |

Case: 19-30088   Doc# 8885   Filed: 08/28/20   Entered: 08/28/20 13:18:51   Page 10 of 43

| Aaron Metviner | Financial Restructuring | 2018 | $595 | 207.50 | $123,462.50 |
|---|---|---|---|---|---|
| Alice O'Brien | Litigation | 2019 | $595 | 85.90 | $51,110.50 |
| Jonathan Sorger | Tax | 2019 | $595 | 16.20 | $9,639.00 |
| Ariella Stepanian | Transportation & Space | 2019 | $595 | 7.00 | $4,165.00 |
| Julia Wu | Litigation | 2018 | $595 | 446.00 | $265,370.00 |
| | | | $297.5* | 62.60 | $18,623.50 |
| Joshua Zimberg | Litigation | 2019 | $595 | 66.40 | $39,508.00 |
| Andrew Abell | Financial Restructuring | 2020 | $625 | 232.60 | $145,375.00 |
| | | | $450 | 192.80 | $86,760.00 |
| Nicholas Prey | Financial Restructuring | Not Yet Admitted | $625 | 1.10 | $687.50 |
| Jamie Santos Chavez | Financial Restructuring | 2020 | $625 | 12.50 | $7,812.50 |
| Anna Bergstrom | Litigation | 2020 | 625 | 336.10 | $210,062.50 |
| | | | $450 | 106.20 | 47,790.00 |
| | | | $312.5* | 4.00 | $1,250.00 |
| Tyler Krenek | Transportation & Space | Not Yet Admitted | $450 | 5.40 | $2,430.00 |
| Jeff Snyder | Financial Restructuring | 2019 | $625 | 119.40 | $74,625.00 |
| | | | $450 | 26.20 | $11,790.00 |
| | | | $312.5* | 15.10 | $4,718.75 |
| **Total Associates:** | | | **$829.72** | **13,095.50** | **$10,865,576.00** |

| NAME OF PARAPROFESSIONALS: | DEPARTMENT | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Angel Anderson | Litigation | $365 | 5.50 | $2,007.50 |
| | | $350 | 24.50 | $8,575.00 |
| Abayomi Ayandipo | Litigation | $365 | 35.90 | $13,103.50 |
| | | $350 | 101.50 | $35,525.00 |
| Jenifer Gibbs | Litigation | $365 | 12.30 | $4,489.50 |
| | | $350 | 95.50 | $33,425.00 |
| David McCracken | Litigation | $365 | 61.50 | $22,447.50 |
| | | $350 | 70.10 | $24,535.00 |
| Paul Butters | Litigation | $325 | 7.90 | $2,567.50 |
| Ishmael Taylor-Kamara | Financial | $320 | 9.60 | $3,072.00 |

Case: 19-30088   Doc# 8885   Filed: 08/28/20   Entered: 08/28/20 13:18:51   Page 11 of 43

| NAME OF PARAPROFESSIONALS: | DEPARTMENT | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| | Restructuring | $300 | 9.50 | $2,850.00 |
| | | $365 | 2.20 | $803.00 |
| | Financial Restructuring | $320 | 188.40 | $60,288.00 |
| Charmaine Thomas | | $300 | 229.30 | $68,790.00 |
| | | $340 | 8.80 | $2,992.00 |
| Ricky Windom | Litigation | $300 | 62.10 | $18,630.00 |
| | | 365 | 3.80 | $1,387.00 |
| | Financial Restructuring | $300 | 41.10 | $12,330.00 |
| Jacqueline Brewster | | $290 | 57.70 | $16,733.00 |
| Doug Shannon | Litigation | $360 | 2.50 | $900.00 |
| Brandon Fiscina | Litigation | $250 | 31.90 | $7,975.00 |
| | Financial Restructuring | $270 | 10.00 | $2,700.00 |
| Jae Yeon Cecilia Kim | | $235 | 15.90 | $3,736.50 |
| Alejandro Mendoza | Litigation | $235 | 5.00 | $1,175.00 |
| Marcin Grabysz | Litigation | $360 | 22.20 | $7,992.00 |
| | | $375 | 12.50 | $4,687.50 |
| James Mcguire | Practice Support | $360 | 55.40 | $19,944.00 |
| James Liles | Practice Support | $635 | 30.50 | $19,367.50 |
| **Total Paraprofessionals and other non-legal staff:** | | **$332.23** | **1,213.10** | **$403,028.00** |

| PROFESSIONALS TOTALS: | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Counsel | $1,321.32 | 12,895.50 | $17,039,043.25 |
| Associates | $829.72 | 13,095.50 | $10,865,576.00 |
| Paraprofessionals and other non-legal staff | $332.23 | 1,213.10 | $403,028.00 |
| **Blended Attorney Rate** | **$1,073.63** | **25,991.00** | **$27,904,619.25** |
| **Total Fees Incurred** | **$1,040.57** | **27,204.10** | **$28,307,647.25** |

8

## FINAL EXPENSE SUMMARY

| Expense Category | Total Expenses |
|---|---|
| Airfreight/Messenger | $7,979.51 |
| Cab Fares/Local Transportation | $41,526.15 |
| Computerized Database Research | $483,270.73 |
| Filing Fees | $5,277.56 |
| Lodging | $138,976.85 |
| Meals | $25,314.29 |
| Outside Word Processing | $1,306.39 |
| Photocopies/Printing | $30,343.84 |
| Telephone | $19,024.78 |
| Transcript Expenses | $59,648.22 |
| Travel | $109,649.73 |
| **TOTAL** | **$922,318.05** |

1

## CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURES

| Category of Timekeeper | Blended Hourly Rate | |
|---|---|---|
| | Billed Firm-wide for preceding Fiscal year (FY2019)[1] | Billed February12, 2019 through July 31, 2020 |
| Partner | $1,221.77 | $1,502.88 |
| Counsel | $911.75 | $1,125.29 |
| Associate | $668.38 | $844.96 |
| Paralegal | $261.99 | $332.23 |
| Aggregated | $755.31 | $1,040.57 |

---

[1] As requested in the U.S. Trustee Guidelines, the calculations in this column exclude members of Milbank's Financial Restructuring Group.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| **- and -** | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | |

**FINAL FEE APPLICATION OF MILBANK LLP**
**FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO**
**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD**
**FROM FEBRUARY 12, 2019 THROUGH JULY 31, 2020**

TO THE HONORABLE DENNIS MONTALI
UNITED STATES BANKRUPTCY JUDGE

Milbank LLP ("Milbank"), counsel to the Official Committee of Unsecured Creditors (the "Committee") of PG&E Corporation and Pacific Gas and Electric Company (collectively, the "Debtors") in the above-captioned chapter 11 cases (these "Chapter 11 Cases"), hereby submits its final fee application (this "Application"), seeking entry of an order pursuant to: (i) sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"); (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"); (iii) the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals*, dated February 27, 2019 [Docket No. 701] (the "Interim Compensation Order"); (iv) the *Order Pursuant to 11 U.S.C. Section 1103(a) and Fed. R. Bankr. P. 2014 and 2016 Authorizing the Retention and Employment of Milbank LLP as Counsel for the Official Committee of Unsecured Creditors Effective as of February 12, 2019* [Docket No. 1766] (the "Retention Order"); (v) the United States Trustee's *Guidelines for*

*Reviewing Applications for Compensation and Reimbursement of Expenses by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "U.S. Trustee Guidelines"); (vi) the Bankruptcy Local Rules for the Northern District of California (the "Local Rules"); (vii) the *Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees for the Northern District of California*, dated February 19, 2014 (the "Local Guidelines" and together with the U.S. Trustee Guidelines, the "Fee Guidelines"); and (viii) the *Fee Examiner Protocol for Chapter 11 Cases of PG&E Corporation and Pacific Gas and Electric Company*, filed on October 24, 2019 [Docket No. 4473-1] (the "Fee Examiner Protocol").

By this Application, Milbank seeks the allowance, on a final basis, and payment (to the extent not previously paid) of: (i) compensation for professional services rendered during the period from February 12, 2019 through and including July 31, 2020 (the "Compensation Period") in the aggregate amount of $28,307,647.25, including the twenty (20%) of fees, totaling $5,474,829.35, held back pursuant to the Interim Compensation Order (the "Holdback"); and (ii) reimbursement of actual and necessary expenses incurred by Milbank in connection with such services during the Compensation Period in the amount of $922,318.05. In support of this Application, Milbank respectfully states as follows:

## BACKGROUND

1. Bankruptcy Filing. On January 29, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. On February 1, 2019 the Court entered an order consolidating these cases for procedural purposes only [Docket No. 207].

2. Creditors' Committee. On February 12, 2019, the United States Trustee for the Northern District of California (the "U.S. Trustee") appointed the Committee [Docket No. 409].

The Committee consisted of the following nine members: (i) BOKF, N.A., as indenture trustee under unsecured bond indentures; (ii) The Davey Tree Expert Company, Davey Tree Surgery Company, and DRG, Inc.; (iii) Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as indenture trustee; (iv) G4S Secure Solutions (USA) Inc. and G4S Secure Integration LLC; (v) International Brotherhood of Electrical Workers, Local 1245; (vi) Mizuho Bank, Ltd.; (vii) NextEra Energy, Inc.; (viii) Pension Benefit Guaranty Corporation; and (ix) Roebbelen Contracting, Inc.

3. <u>Jurisdiction</u>. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code.

4. <u>Authorization for Milbank's Retention</u>. On April 3, 2019, the Committee filed its *Application to Employ Milbank LLP as Counsel to the Official Committee of Unsecured Creditors, Effective as February 12, 2019* [Docket No. 1208] (the "<u>Retention Application</u>"). In connection with the Retention Application, Milbank filed the *Declaration of Thomas R. Kreller in Support of Application to Employ Milbank LLP as Counsel to the Official Committee of Unsecured Creditors, Effective as of February 12, 2019* (the "<u>Kreller Declaration</u>") [Docket No. 1210]. On April 29, 2019, the Court entered an order (the "<u>Retention Order</u>") [Docket No. 1766] authorizing Milbank's retention as counsel to the Committee. The Retention Order provides that Milbank will be compensated on an hourly basis for services rendered to the Committee and reimbursed for actual and necessary out-of-pocket expenses. This Application seeks payment of its fees and reimbursement of its expenses as well as the release of any Holdback amounts previously withheld during the Compensation Period. Milbank is not holding, and has not held, any retainer in connection with these cases or work performed on behalf of the Committee.

5.     <u>Fee Examiner</u>.  On May 28, 2019, the Court entered an order appointing Bruce A. Markell as fee examiner (the "<u>Fee Examiner</u>") in these cases [Docket No. 2267].  Subsequently, the parties have agreed to the Fee Protocol.  Milbank has provided certain information to the Fee Examiner, including copies of pertinent receipts, as requested by the Fee Examiner so that he and his team may evaluate the reasonableness of certain expenses sought in this Application.  Milbank is in the process of providing additional expense and other information to the Fee Examiner with respect to certain information related to this Application as well.  Milbank expects to resolve any issues with the Fee Examiner regarding its fee statements and applications in the near term.

6.     <u>Status of Cases</u>.  The Debtors filed its chapter 11 plan or reorganization on June 19, 2020 (the "<u>Plan</u>") [Docket No. 8048], which was confirmed on June 20, 2020 [Docket No. 8053].  The Plan went effective on July 1, 2020.  <u>See</u> *Notice of Entry of Confirmation Order and Occurrence of Effective Date of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan or Reorganization dated June 19, 2020* [Docket No. 8252].

7.     <u>Post-Effective Date Compensation</u>.  Pursuant to section 12.1 of the Plan, on the Effective Date (July 1, 2020), the "Statutory Committees shall dissolve … except for the limited purpose of (i) prosecuting requests for allowances of compensation and reimbursement of expenses incurred prior to the Effective Date …."  For the period following the Effective Date, Milbank has filed one monthly fee statement (which covered both June and July 2020); the time for July 2020 has been limited to those amounts permitted pursuant to section 12.1 of the Plan.  In addition, following the filing of this Application, Milbank expects to file additional monthly fee statements covering the time spent, among other things, preparing this Application.

## **BILLING HISTORY**

8.     <u>Monthly Fee Statements</u>.  In accordance with the Interim Compensation Order, each Retained Professional (as defined therein) is required to file monthly fee statements and

interim fee applications. To the extent there are no objections to a monthly fee statement, the relevant Retained Professional is authorized to file a certification of no objection, after which the Debtors are authorized to pay such professional eighty percent (80%) of the fees and one hundred percent (100%) of the expenses requested in such monthly fee statement. Interim Compensation Order ⁋ 2(f). Pursuant to the Interim Compensation Order, Milbank has, to date, submitted seventeen (17) monthly fee statements (each a "Monthly Fee Statement") for each of the monthly periods through July 31, 2020. Attached hereto as part of the cover sheet is a billing summary for each of the Monthly Fee Statements filed to date.

9.      Interim Fee Applications:  As well as the Monthly Fee Statements, pursuant to the Interim Compensation Order, Milbank also submitted four interim fee statements (each an "Interim Fee Statement").

10.      This Application is Milbank's final fee application requesting approval and allowance of compensation and reimbursement of expenses. Milbank has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in the Chapter 11 Cases. No promises have been received by Milbank or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. No prior fee statement or application has been made to this or any other court seeking the relief requested herein, nor has payment been received by Milbank for legal services provided to and on behalf of the Committee, or for out-of-pocket expenses incurred in connection therewith, in respect of the Compensation Period.

**RELIEF REQUESTED**

11.      By this Application, Milbank seeks: (i) final allowance and award of 100% of the compensation for professional services rendered by Milbank, as counsel to the Committee, during the Compensation Period in the amount of $28,307,647.25; (ii) reimbursement of actual and

necessary expenses incurred by Milbank in connection with such services during the Compensation Period in the amount of $922,318.05; and (iii) the payment of $5,474,829.35, constituting the Holdback amount as well as other outstanding amounts. Milbank also seeks authorization for payment of all fee and expense amounts to be billed in the future in accordance with section 12.1 of the Plan, which will be set forth in additional Monthly Fee Statements, to be filed in the near term.

12. For the convenience of the Court and parties in interest, attached hereto as part of the cover sheet is a billing summary, setting forth the name of each attorney and paraprofessional for whose work on these cases compensation is sought, each attorney's year of bar admission, the aggregate time expended by each such attorney or paraprofessional, the hourly billing rate for each such attorney or paraprofessional at Milbank's current billing rates, and an indication of the individual amounts requested as part of the total amount of compensation requested. Additionally, set forth in the billing summary is further information indicating whether each attorney is a partner, counsel, or associate, how many years each attorney has held such position, and each attorney's primary area of concentration. The compensation requested by Milbank is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code.

13. Milbank also maintains contemporaneous records of all actual and necessary expenses incurred in connection with performing professional services. A summary of the expenses incurred during the Compensation Period is set forth on the cover sheet. The summary lists the amounts and categories of expenses for which reimbursement is sought.

14. As stated in the certification (the "Kreller Certificate") attached hereto as **Exhibit A**, which certifies Milbank's compliance with the Fee Guidelines, all of the services for which

8

compensation is sought herein were rendered solely for or on behalf of the Committee in connection with these cases.

15.     Pursuant to the Interim Compensation Order, Milbank has already received payment for the Compensation Period in the total amount of $22,799,165.16.  Milbank seeks further payment of $6,430,800.14 pursuant to this Application, which amount represents the portion of Milbank's fees for legal services rendered and expenses incurred during the Compensation Period not previously paid to Milbank pursuant to the Interim Fee Applications and Monthly Fee Statements.  Such amount includes, among other things, the $5,474,829.35 Holdback amount plus other amounts due and owing for the last Monthly Fee Statement for which the objection date has not yet passed.  Such amounts are subject to further agreement with the Fee Examiner.

16.     The fees sought by this Application reflect an aggregate of 27,204.10 hours of attorney and paraprofessional time spent and recorded in performing services to the Committee during the Compensation Period, at a blended average hourly rate of $1,040.57 for both attorneys and paraprofessionals.  The blended hourly rate for attorneys is $1,073.63.

17.     The fees charged by Milbank in these cases are billed in accordance with Milbank's existing billing rates and procedures in effect during the Compensation Period.  The rates Milbank charges for the services rendered by its professionals in these cases generally are the same rates Milbank charges for professional services rendered in comparable bankruptcy and non-bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive legal market.

18.     Copies of Milbank's invoices detailing the services rendered and expenses incurred during the Compensation Period are attached to the Monthly Fee Statements, which have been

filed on the docket and furnished to the Debtors, counsel to the TCC, the U.S. Trustee and the Fee Examiner. Milbank has previously provided the Fee Examiner and U.S. Trustee with the Monthly Fee Statements in an electronic LEDES format Milbank believes is acceptable to these parties.

19.     Milbank has made every effort to ensure that this Application complies with the Fee Guidelines and Fee Protocol to the extent applicable.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED

20.     To provide an orderly and meaningful summary of the services rendered by Milbank on behalf of the Committee, Milbank established separate project billing categories for these cases. A chart of the various project billing categories is attached above.

21.     The following summary of services rendered is intended only to highlight matters in certain of the above-listed categories where Milbank has expended a considerable number of hours on behalf of the Committee during the Compensation Period, and it is not meant to be a detailed description of all of the work performed. Indeed, this Application does not detail each and every correspondence, meeting, discussion, court appearance, or work stream, or all research conducted by Milbank during the Compensation Period.

22.     General Overview of Services Rendered. During the course of these cases, Milbank rendered a variety of services to the Committee, including, among other things, tasks related to the administration of the Committee, research and analysis of matters arising during the Compensation Period, preparation of pleadings and other documents, negotiations, and other legal services as were required by and deemed to be in the best interests of the Committee. In connection therewith, Milbank conducted numerous telephone conferences with Committee members, the Committee's other advisors, the Debtors, and other parties in interest, and at all times kept the Committee apprised of events in these Chapter 11 Cases.

23.	Automatic Stay:	During the Compensation Period, Milbank attorneys reviewed various motions asking the Court to: (a) lift the automatic stay; (b) abstain from addressing certain matters; and/or (c) find that the automatic stay did not apply.  In addition to those motions, the TCC [Docket No. 2904] and Subrogation Group [Docket No. 2863] each filed lift stay motions to pursue the Tubbs Fire litigation before the San Francisco Superior Court.  In connection with the various stay motions, Milbank researched legal issues where necessary, drafted memoranda regarding the issues raised therein, and corresponded and worked with counsel to the Debtors to address and resolve any issues where possible.

24.	Bankruptcy Litigation:	During the Compensation Period, Milbank attorneys engaged in various litigation and discovery related activities in connection with large number of matters.  This included, among other things: (i) the adversary proceeding initiated by the Debtors for a preliminary injunction against the FERC (Adv. Pro. 19-03003); (ii) the subrogation litigation (Adv. Pro. 19-03015); (iv) the motion filed by TURN for the appointment of a ratepayers' statutory committee; (iv) a number of discovery related requests and requests for a protective order associated with the proceeding to estimate fire damages (the "Estimation Proceeding") before the District Court; (v) settlements between the Debtors, the United States Department of Homeland Security/Federal Emergency Management Agency ("FEMA"), California Governor's Office of Emergency Services ("Cal OES"), and other federal and state agencies of damages claims arising from the 2017 and 2018 wildfires; (vi) the Committee's PPI action and appeal and related papers; (vii) the TCC Discovery Motion; (viii) diligence received from the TCC with respect to assignment of potential causes of action of the Debtors to the Fire Victim Trust; (ix) the TCC Standing Motion; (x) the *Ex Parte Applications of the Official Committee of Tort Claimants Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of An Order Authorizing Service of a Subpoena* on various of the Debtors' vendors [Docket No. 6342, et al.]; (xi) *Motion for the Appointment of an*

*Examiner of Voting Procedural Irregularities* [Docket No. 7568]; and (xii) the criminal probationary proceedings before Judge Alsup in *U.S. v. Pacific Gas and Electric Co.*, Case No. 14-cr-00175 (WHA) (N.D. Cal.).[2]

25.    Among other things, Milbank attorneys, as applicable, reviewed underlying pleadings, including motions, briefs, objections, and proposed orders, researched relevant legal issues and diligenced factual issues, received and reviewed discovery in connection with certain matters, advised the Committee and members thereof, drafted related memoranda for the Committee, prepared and filed pleadings in support of the Committee's positions, and participated in hearings before the Court with respect to these issues.

26.    <u>Bar Date</u>: The Debtors' Bar Date Motion was filed on May 1, 2019 along with proposed proof of claim forms and notice procedures.  On May 31, 2019, the TCC filed its own bar date motion [Docket No. 2297] and objected to the Debtors' Bar Date Motion [Docket No. 2306].  The Subrogation Group also filed a separate motion to approve its own proof of claim form [Docket No. 2044].  After reviewing and analyzing the various motions, forms and notice procedures, the Committee filed a statement in support of the Debtors' Bar Date Motion [Docket No. 2308], and later, an objection to the TCC's bar date motion and retention application for Angeion [Docket No. 2650].  The Committee also commented on the Debtors' proposed proof of claim forms and proposed order (comments which were incorporated into the final drafts), conducted discovery, attended depositions, reviewed related objections and other pleadings and reviewed correspondence from the Debtors regarding their proposed bar date procedures and order. Milbank attorneys also participated in the hearing with respect to the various bar date motions at

---

[2]    Where appropriate, Milbank moved litigation time to other submatters, such as plan or wildfire matters below.

12

which the Debtors' revised bar date, notices and proof of claims were approved by the Bankruptcy Court on July 1, 2019 [Docket No. 2806].

27.  <u>Case Administration</u>:  During the Compensation Period, Milbank expended substantial time attending to various case administrative matters, including among other things: (i) preparing and updating an internal calendar of critical dates for the Committee; (ii) maintaining an internal task list to monitor the status of pending matters; (iii) arranging telephonic and video hearing lines for Milbank attorneys' participation in remote hearings; (iv) coordinating critical work streams among Milbank attorneys and the Committee's various other advisors; and (v) reviewing the docket for new pleadings and distributing such filings to the Committee and its advisors along with summaries of such pleadings.  Milbank attorneys endeavored to minimize such administration matters while at the same time ensuring that all of the Committee's various activities were performed in the most expeditious manner possible.

28.  <u>Plan of Reorganization</u>:  The Noteholders filed its first motion to limit exclusivity on June 25, 2019, which included a term sheet (the "<u>AHC Term Sheet</u>") for a possible chapter 11 plan, and subsequently filed related commitment letters in connection with the proposed plan [Docket No. 3024].  In response, the Committee filed a statement in favor of lifting the Debtors' exclusivity so that a plan on the terms of the AHC Term Sheet could be filed [Docket No. 2064]. Subsequently, the Subrogation Group also filed an exclusivity termination motion [Docket No. 3147].  Following the filing of the AHC Term Sheet, the Committee reviewed the proposed plan's various terms, the financing documents and researched and analyzed numerous related confirmation issues. The Committee also worked with various parties in an attempt to devise a competing plan schedule, and filed a statement to this effect on August 12, 2019 [Docket No. 3517].

29.     The Debtors filed the first iteration of their chapter 11 plan on September 9, 2019 [Docket No. 3841].  On September 19, 2019, after the TCC and AHC reached a settlement with respect to the aggregate amount of wildfire claims, they jointly filed the Second Exclusivity Termination Motion [Docket No. 3940], seeking to terminate exclusivity and permission to file a joint plan based on a term sheet included in the motion.  Soon thereafter, on September 25, 2019, the Debtors filed a motion to further extend their exclusive periods (the "Debtors' Exclusivity Extension Motion") [Docket No. 4005].  The TCC and AHC also filed an objection to the Debtors' Exclusivity Extension Motion.

30.     Throughout this time, the Committee reviewed the various issues raised in the Debtors' initial plan, the AHC Term Sheet, the Second Exclusivity Termination Motion and the various objections filed in connection therewith.  Such work culminated in the Committee filing a second statement in support of terminating exclusivity [Docket No. 4049].  Following argument in front of the Bankruptcy Court, during which the Committee's counsel played a significant role, the Court terminated the Debtors' exclusivity so that the TCC/AHC Plan could be filed, and denied the Debtors' Exclusivity Extension Motion.

31.     Subsequently, the Committee participated in briefing regarding a number of outstanding confirmation issues, including, but not limited to, reinstatement, cram down, impairment and post-petition interest payable in a solvent debtor case.

32.     Ultimately, the Debtors filed the Plan on June 19, 2020 and the Plan was confirmed on June 20, 2020.  During the Compensation Period, Milbank attorneys reviewed the various issues raised in the Debtors' Plan, Disclosure Statement, Solicitation Procedures Motion, *Notice of Filing of Plan Supplement in Connection with Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* [Docket. No. 7037] (as amended, modified, or supplemented from time to time, the "Plan Supplement"), and *Debtors' Motion for Entry of an*

*Order (I) Approving Case Resolution Contingency Process and (II) Granting Related Relief* [Docket No. 6398] (the "CRCP Motion"). The Plan itself was based in large part on the agreements contained in the TCC RSA, the Subrogation RSA and the Noteholder RSA. Regarding each of these agreements, the Committee reviewed, participated in hearings regarding their terms and filed various pleadings stating the Committee's positions. Importantly, Milbank also engaged in vigorous negotiations with the Debtors to consensually resolve various plan and disclosure statement issues and drafted and filed a limited objection to confirmation of the Debtors' then-filed plan of reorganization [Docket No. 7300] as well as a response to the Disclosure Statement and Solicitation Procedures Motion [Docket No. 6154]. In addition, Milbank participated in status conferences for and advised the Committee with respect to the Estimation Proceeding.

33.     In connection with the Plan, Milbank attorneys researched and analyzed a number of other confirmation issues, including, but not limited to, release, exculpation, discharge, impairment and classification of claims and interests. Milbank attorneys also participated in briefing regarding postpetition interest issues. Milbank attorneys held numerous meetings and calls with various parties with respect to the various plans and related documents and motions, drafted memoranda with respect to issues raised in such documents for dissemination to the Committee, and participated in hearings before the Court with respect to the Plan.

34.     Communications with Client:  During the Compensation Period, in coordination with the Committee's financial advisors, Milbank attorneys spent a substantial amount of time coordinating and preparing materials (including meeting agendas, factual and legal memoranda, summaries, and presentations) for Committee meetings. In advance of such meetings, Milbank attorneys drafted memoranda for the Committee summarizing and providing analyses and recommendations with respect to each substantive matter that was scheduled for an upcoming hearing or was otherwise active. Milbank attorneys also drafted substantive memoranda on

numerous case topics, including, among other things: (i) various iterations of the Plan; (ii) the Disclosure Statement; (iii) the Solicitation Procedures; (iv) the Exit Financing Motion; (v) 2020 Compensation Motion; (vi) certain executory contract motions; (vii) the release provisions contained in the Plan; (viii) the TCC, Subrogation and Noteholders' RSAs; (ix) the TCC's Standing and Discovery Motions; (x) certain retention applications filed by the Debtors and other parties; and (xi) each of the Debtors' other substantive motions. Milbank attorneys also prepared for and participated in numerous calls and other communications, including via email, with individual Committee members and their counsel, as well as with the subcommittees established by the Committee.

35. Milbank attorneys also prepared for and participated in numerous calls and other communications, including via email, with individual Committee members and their counsel, as well as with the subcommittees established by the Committee, which include the: (i) Public Affairs Subcommittee; (ii) Business Operations Subcommittee; (iii) Wildfire Mitigation Subcommittee; and (iv) Wildfire Claims Subcommittee.

36. Communications with Unsecured Creditors: During the Compensation Period, in accordance with the Committee's statutory duties under section 1102(b) of the Bankruptcy Code, Milbank attorneys responded electronically and telephonically to various inquires received from the Debtors' unsecured creditors regarding these cases. Milbank also maintained frequent contact with advisors to major constituencies in these cases, including the Debtors, the TCC, the AHC and the Subrogation Group, to discuss open issues and upcoming matters important to the Committee, communicate the Committee's positions and seek mutually acceptable courses of action.

37. Committee Meetings: Given the significant size of the Debtors' cases and the sheer amount of materials that the Committee's advisors were tasked with handling, including multiple plans, the Disclosure Statement, the Exit Financing Motion, the Estimation Proceedings and other

substantial motions and applications, Milbank conducted regular telephonic meetings with the Committee (collectively, the "Committee Meetings"). During Committee Meetings, Milbank attorneys discussed key issues with the Committee, including all of the upcoming matters scheduled for hearing by the Court. Prior to such meetings, Milbank attorneys reviewed pending matters requiring the Committee's attention and the underlying documentation and coordinated advice with the Committee's other professionals. Milbank attorneys also drafted agendas for all such meetings and distributed pertinent information in advance to the Committee. Thereafter, Milbank discussed each of these matters with the Committee, as well as individual Committee members on separate occasions, and assisted the Committee in formulating a position with respect to each matter. Milbank also provided Committee members with regular, and sometimes daily, update emails regarding the status of these cases.

38. <u>DIP Financing/Cash Management/Exit Financing</u>: One of the most significant "first day" issues related to the Debtors request for authorization to obtain $5.5 billion of secured, superpriority postpetition financing pursuant to their *Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, 364, 503 and 507, and Fed. R. Bankr. P. 2002, 4001, 6003, 6004 and 9014 for Interim and Final Orders (I) Authorizing the Debtors to Obtain Senior Secured, Superpriority Postpetition Financing, (II) Granting Liens and Superpriority Claims, (III) Modifying the Automatic Stay, (IV) Scheduling Final Hearing, and (V) Granting Related Relief* (the "<u>DIP Motion</u>") [Docket No. 23].

39. Immediately upon the Committee's formation, Milbank and the Committee's financial advisors began to review the DIP credit agreement and an enormous amount of diligence regarding the DIP Motion, which required that the Committee's advisors to work closely with the Committee and the Debtors' advisors, in order to understand the various aspects of the proposed financing, the Debtors' capital structure, funding needs and market conditions and comparables with respect to loans of this type and size. Among other things, Milbank and the Committee's

17

other advisors specifically focused on the sizing of the DIP Financing. Milbank also reviewed the related cash management order and the Debtors' proposed DIP Order, and Milbank attorneys also appeared at the final hearing on the DIP Motion. Based on its review of all of the aspects of the DIP financing, the Committee ultimately came to support the DIP Motion, and Milbank drafted and filed a *Statement of the Official Committee of Unsecured Creditors in Support of the Final Approval of the Debtors' DIP Motion* [Docket No. 835].

40.     In addition, in support of the Plan, the Debtors also filed Exit Financing Motion [Docket No. 6013]. The Committee reviewed and diligence all of the various components of the proposed Exit Financing to ensure that the proposed financing was not illusory, met the feasibility requirements of section 1129 of the Bankruptcy Code and was on the best terms available. The Committee also filed a statement with respect to its views regarding the Exit Financing Motion [Docket No. 6277].

41.     <u>General Case Strategy</u>:  As Committee counsel, Milbank expended significant time organizing the Committee by, among other things: (i) conducting numerous calls, both internally, with Milbank attorneys, and externally, with the Committee's other professionals to discuss and analyze  pending motions and applications, as well as other tasks and projects; (ii) corresponding with the Debtors and their advisors regarding various work streams and diligence items; and (iii) analyzing new pleadings filed on the bankruptcy docket.

42.     Further, on a weekly basis during the Compensation Period, Milbank attorneys led advisors-only calls with the Committee's financial advisors to prepare for regular Committee meetings and other matters. During such calls, the Committee's advisors discussed general case strategy, issues that may be appropriate for special attention by the Committee and proposed recommendations with respect to such issues. Also during the Compensation Period, Milbank

attorneys drafted minutes to memorialize the Committee's resolutions during Committee meetings.

43. <u>Court Hearings</u>: During the Compensation Period, Milbank attorneys spent considerable time preparing for and attending (either in person or telephonically) all significant hearings and Court conferences in these cases and related adversary proceedings, before the Bankruptcy Court, the District Court and in other forums. Significant hearings were held with regard to: (i) the Noteholders' and TCC's RSAs; (ii) the Exit Financing Motion; (iii) the *Omnibus Objection of the Official Committee of Tort Claimants (Substantive) to No Liability Claims Filed by the Department of Homeland Security/Federal Emergency Management Agency (Claim Nos. 59692, 59734 & 59783* [Docket No. 4943] (the "<u>FEMA Claims Objection</u>") and the *Omnibus Objection of the Official Committee of Tort Claimants (Substantive) to Claims Filed by California Governor's Office of Emergency Services* [Docket No. 5096] (the "<u>Cal OES Claims Objection</u>"); (iv) the Subrogation RSA Motion; (v) the TCC and AHG's Exclusivity Termination Motion [Docket No. 4167]; (vi) the Second Exclusivity Extension Motion [Docket No. 4005]; (vii) the TCC Discovery Motion; (viii) the Disclosure Statement and Solicitation Procedures Motion; (ix) the CRCP Motion; (x) the *Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Cathy Yanni as Claims Administrator Nunc Pro Tunc to January 13, 2020 through the Effective Date of the Resolution Trust Agreement* [Docket No. 5723] and *Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Hon. John K. Trotter (Ret.) as Trustee Nunc Pro Tunc to January 13, 2020 through the Effective Date of the Resolution Trust Agreement* [Docket No. 5726] (together, the "<u>Trotter & Yanni Retention Applications</u>"); (xi) the TCC Standing Motion; (xii) the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Fed. R. Bankr. P. Rule 9019 for Entry of an Order Approving (I)*

*Agreement and Settlement with People of the State of California and (II) Granting Related Relief*
[Docket No. 6418] (the "Butte County Agreement Motion"); (xiii) the Estimation Proceedings;
(xiv) Plan confirmation hearings; and (xv) numerous other motions.

44.    Milbank attorneys communicated in advance of hearings with other parties in
interest, including the Debtors, the TCC, the Subrogation Group, the AHC and the U.S. Trustee
regarding the relief requested and any issues raised thereby, in an effort to consensually resolve
concerns prior to the applicable hearing.  Given the nature of these cases, many matters went
forward during the Compensation Period on a contested basis, necessitating active Committee
participation to advance and protect the interests of its constituency.  Moreover, because the issues
that arose implicated numerous nuanced areas of the law, the contribution of Milbank attorneys
spanning multiple specialties was necessary to properly represent the Committee.

45.    Non-Working Travel:  Non-working travel time includes that time spent by
Milbank attorneys traveling to and from meetings, conferences, hearings and similar events in
connection with Milbank's representation of the Committee.  Most significantly, during the
Compensation Period, Milbank attorneys were required to travel to and from San Francisco on a
regular basis – sometimes making multiple trips in a single week – for court hearings, meetings
with the Debtors and their respective advisors.  Efforts were made to use travel time productively,
for performing work for the estates or for other client-related matters, but this was not always
possible or practicable.  Pursuant to an agreement with the Fee Examiner, as directed by the Court,
non- working travel time spent by Milbank attorneys traveling to and from meetings, conferences,
hearings and similar events in connection with Milbank's representation of the Committee was
either not billed or limited to two (2) hours for each way of a trip.[3]

---

[3]    Adjustments are expected to be made with the Fee Examiner regarding such amounts.

46. <u>Retention/Fee Applications</u>: Soon after its engagement, Milbank coordinated with the Committee, FTI Consulting Inc. ("<u>FTI</u>"), and Centerview Partners LLC ("<u>Centerview</u>"), to draft and/or finalize each professional firm's retention application and exhibits thereto, including engagement letters, conflict schedules and declarations, in addition to those for Milbank. Subsequently, the Committee determined to retain Axiom Advisors ("<u>Axiom</u>") as its government affairs consultant, given the significant legislative issues at play in these cases. To the extent required by applicable bankruptcy law, each professional ran a conflicts check for purposes of disclosing relationships to parties potentially interested in these cases, a list of such parties having been supplied by the Debtors' advisors to Milbank. Given the voluminous nature of the list, significant time was required to be spent by Milbank attorneys During the Compensation Period, Milbank worked with the Committee and its financial advisors to draft and/or finalize each professional's fee applications and exhibits thereto. Specifically, Milbank prepared its own fee applications and assisted with the preparation of the fee applications of FTI Consulting, Inc., as the Committee's financial advisor, Centerview Partners LLC, as the Committee's investment banker, and Axiom Advisors, as the Committee's government affairs consultant.

47. <u>Wildfire Claims and Treatment</u>: During the Compensation Period, Milbank attorneys researched and addressed a host of issues for the Committee related to mass tort cases, including the claims estimation process and potential mechanisms or structures to address those claims and other liability issues. In addition, Milbank reviewed various issues related to the possible treatment of the wildfire claims.

48. Following the entry into the Subrogation and TCC RSAs, Milbank reviewed and analyzed the related materials and reviewed drafts of the various documents intended to govern the trusts and distribution of funds to be made pursuant to these agreements, including the various trust agreements, claims procedures and TCC Standing Motion.

49. <u>Employment Issues</u>: During the Compensation Period, the Debtors sought a variety of employee-related relief, including with respect to: (i) the payment of prepetition wages, salaries, withholding obligations and other compensation and benefits and the continuation of employee benefits programs; and (ii) a STIP for the 2019 fiscal year. Given the size and scope of the STIP, with the assistance of FTI, Milbank conducted substantial diligence on the proposed terms of the program, prepared written analyses for the Committee, and engaged in extensive negotiations with the Debtors for improved terms, while also preparing an objection and supporting documents to the extent an acceptable compromise was not reached. Following the Committee's filing of a limited objection to the STIP, and after numerous weeks of diligence, analysis, and productive negotiations, the Committee reached a resolution with the Debtors for significant improvements to be made to the program, which the Court ultimately approved.

## ALLOWANCE OF COMPENSATION

50. In light of the size and complexity of these Chapter 11 Cases, the professional services rendered by Milbank required the expenditure of substantial time and effort by a large but lean team of attorneys and a high degree of professional competence and expertise across multiple specialties. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited unsecured creditors and the Debtors' estates.

51. The final allowance of compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in Bankruptcy Code section 331:

> … any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

52. With respect to the level of compensation, Bankruptcy Code section 330(a)(1)(A) provides, in pertinent part, that the Court may award to a professional person "reasonable

compensation for actual, necessary services rendered[.]"  See In re Manoa Finance Co., 853 F.2d

687, 689 (9th Cir. 1988) (stating that section 330 authorizes reasonable compensation for certain

services and costs).  Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded to . . .
> [a] professional person, the court shall consider the nature, the extent, and the value
> of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at
> the time which the service was rendered toward the completion of, a case under
> this title;
>
> (D) whether the services were performed within a reasonable amount of time
> commensurate with the complexity, importance, and nature of the problem, issue,
> or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or
> otherwise has demonstrated skill and expertise in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation
> charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). The clear Congressional intent and policy expressed by the statute is to

provide for adequate compensation to professionals in order to continue to attract qualified and

competent bankruptcy practitioners to bankruptcy cases. In re Fleming Cos., 304 B.R. 85, 92

(Bankr. D. Del. 2003) ("in enacting the Bankruptcy Code provisions which allow compensation

to attorneys, Congress sought to encourage qualified attorneys to develop bankruptcy expertise by

assuring that they would be compensated at the *same level* as their peers in other practice areas.").

53.    The total time spent by Milbank attorneys and paraprofessionals during the

Compensation Period was 27,204.10 hours which has a fair market value of $28,307,647.25.  As

demonstrated by this Application and supporting exhibits, Milbank submits that its services were

rendered economically and without unnecessary duplication of efforts.  In addition, the work

involved, and thus the time expended, was carefully assigned in consideration of the experience and expertise required for each particular task. The compensation requested in the Application is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code.

54. As reflected in this Application and the supporting documents, Milbank spent its time efficiently and without unnecessary duplication of time. Nonetheless, Milbank has voluntarily agreed to reduce its fees during the Compensation Period in the amount of $2,797,465.25 (the "Voluntary Reduction").

**EXPENSES**

55. Bankruptcy Code Section 330 also authorizes "reimbursement for actual, necessary expenses" incurred by a retained professional. 11 U.S.C. § 330(a)(1)(B). "Once documented, 'actual and necessary expenses' are automatically reimbursable." In re Wendy's of Montana, Inc., 111 B.R. 314, 315 (Bankr. N.D. Mont. 1988). Milbank seeks reimbursement for actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $922,318.05. The disbursements have been incurred in accordance with Milbank's normal practice of charging clients for expenses clearly related to and required by particular matters. In accordance with section 330 of the Bankruptcy Code, Milbank seeks reimbursement only for the actual cost of such expenses to Milbank. Milbank charges for these expenses at rates consistent with those charged to Milbank's other bankruptcy clients, which rates are equal to or less than the rates charged by Milbank to its non-bankruptcy clients. Milbank has minimized these expenses to the greatest extent possible. A detailed summary of the expenses is attached to the cover sheet hereto. Copies of supporting documentation for the out-of-pocket expenses (receipts, statements, invoices, etc.) have been provided to the Fee Examiner.

56. Milbank's hourly billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial

Case: 19-30088    Doc# 8885    Filed: 08/28/20    Entered: 08/28/20 13:18:51    Page 36 of 43

overtime, postage and certain other office services, since the needs of each client for such services differ. Milbank believes that it is more appropriate to charge each client only for the expenses actually incurred in performing services therefor.

57.     Milbank seeks reimbursement at the following rates for the following expenses: (i) ten cents ($0.10) per page for photocopying; (ii) ten cents ($0.10) per page for black and white printing; and (iii) ten cents ($0.10) per page for color printing. Milbank's charges for internal duplicating are well below the $.50 per page rate authorized by statute for copies made by the clerks of the United States Courts. See 28 U.S.C. § 1914(b); Judicial Conference Schedule of Fees n.4. Milbank currently does not charge for facsimile transmissions. Milbank has negotiated a discounted transactional rate for computer assisted legal research. Milbank is not seeking reimbursement of hourly fees of its secretarial services in this Application. Further, in providing or obtaining services from third parties that are reimbursable by clients, Milbank does not include in such reimbursable amount any costs of investment, equipment, or capital outlay.

58.     Throughout the Compensation Period, Milbank has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## RESERVATION OF RIGHTS

59.     Although every effort has been made to include all fees and expenses incurred during the Compensation Period, some fees and expenses incurred during the period might not be included in this Application due to delays caused in connection with the accounting and processing of such time and expenses. Accordingly, Milbank reserves the right to make further application to this Court for allowance of such fees and expenses incurred during this Compensation Period but not included herein.

## NOTICE

60.     No trustee or examiner has been appointed in the Chapter 11 Cases. Pursuant to the Interim Compensation Order, notice of this Application has been served upon: (i) the Debtors

Case: 19-30088    Doc# 8885    Filed: 08/28/20    Entered: 08/28/20 13:18:51    Page 37 of 43

c/o Pacific Gas & Electric Company, 77 Beale Street, San Francisco, CA 94105 (Attn: Janet Loduca, Esq.); (ii) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq. and Rachael Foust, Esq.) and Keller & Benvenutti LLP, 650 California Street, Suite 1900, San Francisco, CA 94108 (Attn: Tobias S. Keller, Esq. and Jane Kim, Esq.); (iii) the Office of the United States Trustee for Region 17, 450 Golden Gate Avenue, 5th Floor, Suite #05-0153, San Francisco, CA 94102 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (iv) counsel for the TCC, Baker & Hostetler LLP, 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509 (Attn: Eric Sagerman, Esq. and Cecily Dumas, Esq.); and (v) counsel to the Fee Examiner, Scott McNutt, 324 Warren Road, San Mateo, CA 94402 (Attn: Scott McNutt).

## CONCLUSION

WHEREFORE, Milbank respectfully requests that the Court enter an order: (i) allowing Milbank (a) final allowance for professional services rendered as counsel for the Committee during the Compensation Period in the amount of $28,307,647.25; and (b) final allowance of reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $922,318.05, for a total award of $29,229,965.30; (ii) authorizing and directing the Debtors to pay all amounts to the extent not previously paid in accordance with the Interim Compensation Order; and (iii) granting such further relief as is just and appropriate.

Dated: August 28, 2020

Respectfully submitted,

**MILBANK LLP**

By: */s/ Thomas R. Kreller*
Dennis F. Dunne (admitted pro hac vice)
Samuel A. Khalil (admitted pro hac vice)
Gregory A. Bray
Thomas R. Kreller
*Counsel for the Official Committee of Unsecured Creditors*

Case: 19-30088    Doc# 8885    Filed: 08/28/20    Entered: 08/28/20 13:18:51    Page 38 of 43

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>EXHIBIT A</u>**

**KRELLER DECLARATION**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| - and - | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | **CERTIFICATION OF THOMAS R. KRELLER REGARDING FINAL FEE APPLICATION OF MILBANK LLP FOR ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM FEBRUARY 12, 2019 THROUGH JULY 31, 2020** |

☐     Affects PG&E Corporation
☐     Affects Pacific Gas and Electric Company
☑     Affects both Debtors

*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

1.      I am a partner in the Financial Restructuring Group of the firm Milbank LLP ("Milbank"), counsel to the official committee of unsecured creditors (the "Committee") in these Chapter 11 Cases. I am admitted to the bar of the State of California.

2.      I make this certification regarding the *Final Fee Application of Milbank LLP for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period from February 12, 2019 through July 31, 2020* (the "Application"). I am familiar with: (i) the *Order Pursuant to 11 U.S.C. §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 701] (the "Interim Compensation Order"); (ii) the *Guidelines for Compensation and Expense Reimbursement*

*of Professionals and Trustees for the Northern District of California*, dated February 19, 2014 (the "Local Guidelines"); (iii) the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "U.S. Trustee Guidelines"); and (iv) the *Fee Examiner Protocol for Chapter 11 Cases of PG&E Corporation and Pacific Gas and Electric Company*, filed on October 24, 2019 [Docket No. 4473-1] (the "Fee Examiner Protocol" and collectively, the "Fee Guidelines").

3.     I have reviewed the Application and hereby certify that, to the best of my knowledge, information and belief, it complies with the Fee Guidelines and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. The fees and disbursements sought are billed at rates in accordance with those generally charged by Milbank and generally accepted by Milbank's clients. I certify that: (i) all of the services for which compensation is sought in the Application were rendered for or on behalf of the Committee solely in connection with the Chapter 11 Cases; and (ii) the Application is being served on the Debtors, the TCC, the U.S. Trustee and the Fee Examiner in accordance with the Interim Compensation Order. Additionally, I hereby certify that, in accordance with the Interim Compensation Order, and in connection with preparing this Application, Milbank has made a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures set forth in the U.S. Trustee Guidelines. To that end, Milbank specifically responds to certain questions identified in the U.S. Trustee Guidelines as follows:

Question 1:     Did Milbank agree to any variations from, or alternatives to, Milbank's standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

Answer:     No.

| | |
|---|---|
| Question 2: | If the fees sought in the Application as compared to the fees budgeted for the time period covered by the Application are higher by 10% or more, did Milbank discuss the reasons for the variation with the client? |
| Answer: | Milbank has previously discussed its fees with the Committee. Since the Debtors' Plan was confirmed and it has gone effective, the Committee has been dissolved. Milbank complied with the periodic budgeting requirement during the cases and never exceeded budget by 10%. |
| Question 3: | Have any of the professionals included in the Application varied their hourly rate based on geographic location of the bankruptcy case? |
| Answer: | No. |
| Question 4: | Does the Application include time or fees related to reviewing or revising time records or preparing, reviewing or revising invoices? |
| Answer: | The Application includes a small amount of time and fees related to reviewing or revising time records for privileged or confidentiality and preparing, reviewing or revising invoices in connection with the preparation of Monthly Fee Statements and Interim Fee Applications relating to the period covered by this Application as well as time spent preparing this Application. |
| Question 5: | Does the Application include time for fees for reviewing time records to redact any privileged or other confidential information? |
| Answer: | Yes. See above. |
| Question 6: | Does the Application include any rate increases since retention in these cases: |
| Answer: | Yes. The Applications does include rate increases since retention in these cases. All rate increases are reflected in the billings by professional chart included in this Application. |
| Question 7: | Did the client agree when retaining Milbank to accept all future rate increases? If not, did Milbank inform the client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458? |
| Answer: | The client did not prospectively approve such rate increases but was notified at the outset of the engagement that Milbank's hourly rates are reviewed and revised from time to time. In accordance with ABA Formal Ethics Opinion 11-458, Milbank also notified the Committee at the outset of the representation that it need not agree to any modified rates or |

1     terms in order to have Milbank continue its representation of
2     the Committee.

3

                 */s/ Thomas R. Kreller*
4                  Thomas R. Kreller