Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone:    415.659.2600
Facsimile:    415.659.2601
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:   esagerman@bakerlaw.com
Email:   drichardson@bakerlaw.com
Email:   lattard@bakerlaw.com

*Counsel for the Official Committee of Tort Claimants*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>    **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                    **Debtors.**<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**FIFTH INTERIM AND FINAL APPLICATION OF BAKER & HOSTETLER LLP FOR THE ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR: (1) THE INTERIM PERIOD JUNE 1, 2020 THROUGH JULY 1, 2020 AND (2) THE FINAL PERIOD FEBRUARY 15, 2019 THROUGH JULY 1, 2020**<br><br>Objection Date: September 17, 2020 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**COVERSHEET FOR *FIFTH INTERIM* APPLICATION OF THE LAW FIRM OF BAKER & HOSTETLER LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF TORT CLAIMANTS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD <u>JUNE 1, 2020 THROUGH JULY 1, 2020</u>**

| | |
|---|---|
| Name of Applicant: | Baker & Hostetler LLP |
| Name of Client: | Official Committee of Tort Claimants |
| Time period covered by this application: | 6/1/2020-7/1/2020 |
| Total fees sought this period: | $3,904,871.00* |
| Total expenses sought this period: | $183,352.41** |
| Petition Date: | 1/29/2019 |
| Retention Date: | *Effective* 2/15/2019 |
| Date of order approving employment | 4/10/2019 |
| Total compensation approved by interim order to date: | $6,820,134.67 |
| Total expenses approved by interim order to date: | $233,430.74 |
| Total allowed compensation paid to date: | $33,048,635.00 |
| Total allowed expenses paid to date: | $7,321,612.31 |
| Blended rate in this application for all attorneys | $677.79 |
| Blended rate in this application for all timekeepers | $649.57 |
| Compensation sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $0 |
| Expenses sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $0 |
| Number of professionals included in this application | 71 |
| If applicable, number of professionals in this application not included in staffing plan approved by client | 0 |
| If applicable, difference between fees budgeted and compensation sought for this period | Actual: $3,904,871.00 Budget Range: $3,062,100-$4,311,160 |
| Number of professionals billing fewer than 15 hours to the case during the period | 13 |
| Are any rates higher than those approved or disclosed at retention? If yes, calculate and disclose the total compensation sought in this application using the rates originally disclosed in the retention application | No |
| RBC Capital Markets, LLC (see explanation on pages 24-25 of this application) | $329,907.50 |

*In each of the two months covered by this Fifth Interim Application, June and July, Applicant voluntarily reduced the amount of fees sought prior to generating its monthly fee statements, writing off, in Applicant's discretion, fees totaling $38,633.50 for the benefit of the estates.

** Applicant also reduced the amount of expenses sought prior to generating its monthly fee statements for the months of June and July, writing off, in Applicant's discretion, expenses totaling $158.85 for the benefit of the estates.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

**COVERSHEET FOR _FINAL_ APPLICATION OF THE LAW FIRM OF BAKER & HOSTETLER LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF TORT CLAIMANTS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FEBRUARY 15, 2019 THROUGH JULY 1, 2020**

| | |
|---|---|
| Name of Applicant: | Baker & Hostetler LLP |
| Name of Client: | Official Committee of Tort Claimants |
| Time period covered by this application: | 2/15/2019-7/1/2020 |
| Total fees sought this period: | $52,035,799.42[*][†] |
| Total expenses sought this period: | $7,738,395.46[‡] |
| Petition Date: | 1/29/2019 |
| Retention Date: | _Effective_ 2/15/2019 |
| Date of order approving employment | 4/10/2019 |
| Total compensation approved by interim order to date: | $6,820,134.67 |
| Total expenses approved by interim order to date: | $233,430.74 |
| Total allowed compensation paid to date: | $33,048,635.00 |
| Total allowed expenses paid to date: | $7,321,612.31 |
| Blended rate in this application for all attorneys | $704.95 |
| Blended rate in this application for all timekeepers | $661.72 |
| Compensation sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $33,048,635.00 |
| Expenses sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $7,321,612.31 |
| Number of professionals included in this application | 140 |
| If applicable, number of professionals in this application not included in staffing plan approved by client | 0 |
| If applicable, difference between fees budgeted and compensation sought for this period | Actual: $52,035,799.42 Budget: $42,047,164 - $59,350,524 |
| Number of professionals billing fewer than 15 hours to the case during the period | 26 |
| Are any rates higher than those approved or disclosed at retention? If yes, calculate and disclose the total compensation sought in this application using the rates originally disclosed in the retention application | No |
| RBC Capital Markets, LLC (see explanation on pages 24-25 of this application) | $704,907.50 |

---

[*] In all of the eighteen monthly fee statements comprising the Final Application Period (February 15, 2019 through July 1, 2020) Applicant voluntarily reduced the amount of fees sought prior to generating its monthly fee statements, writing off, in Applicant's discretion, fees totaling $2,361,374.25 for the benefit of the estates.

[†] The initial fee request of $52,406,515.75 has been reduced by $370,716.33, per Court Order (DE 5674).

[‡] Applicant also reduced the amount of expenses sought prior to generating its monthly fee statements for the eighteen months of February 15, 2019 through July 1, 2020, writing off, in Applicant's discretion, expenses totaling $169,025.63 for the benefit of the estates.

3

## SUMMARY OF FIFTH INTERIM FEE APPLICATION

| Date Filed | Period Covered | Total Compensation and Expenses for Period Covered | | Total Amount Previously Requested with Monthly Fee Statement | | Total Amount Paid to Date | | Holdback Fees, Unpaid Fees and Expenses Requested |
|---|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees @80% | Expenses @100% | Fees | Expenses | Fees |
| 7/30/2020 (DE 8570) (17th) | 6/1/20-6/30/20 | $3,860,835.50 | $162,435.05 | $3,088,668.40 | $162,435.05 | $0 | $0 | $4,023,270.55 |
| 8/28/20 (DE 8880) (18th) | 7/1/20 - 7/1/20 | $44,035.50 | $20,917.36 | $35,228.40 | $20,917.36 | $0 | $0 | $64,952.86 |
| **Total for Fifth Interim Fee Application** | | **$3,904,871.00** | **$183,352.41** | **$3,123,896.80** | **$183,352.41** | **$0** | **$0** | **$4,088,223.41** |

Objections to Monthly Fee Statements:  No objections have been filed regarding the Seventeenth Monthly Fee Statement.  The deadline for objections to the Eighteenth Monthly Fee Statement is September 18, 2020.

## SUMMARY OF FINAL FEE APPLICATION

| Date Filed | Period Covered | Total Compensation and Expenses for Period Covered | | Total Amount Previously Requested with Monthly Fee Statement | | Total Amount Paid to Date | | Holdback Fees, Unpaid Fees and Expenses Requested |
|---|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees @80% | Expenses @100% | Fees | Expenses | Fees |
| 1st Interim Fee App. (DE 2995) | 2/15/2019-5/31/2020 | $6,820,134.67§ | $233,430.74 | $5,752,680.80 | $233,430.74 | $6,820,134.67§ | $233,430.74 | $0 |
| 2nd Interim Fee App * (DE 4733) | 6/1/2019-9/31/2019 | $11,494,553.25 | $1,899,103.14 | $9,195,642.60 | $1,899,103.14 | $9,195,642.60 | $1,899,103.14 | $2,298,910.65 |
| 3rd Interim Fee App * (DE 6286) | 10/1/2019-1/31/2020 | $15,252,640.50 | $3,574,530.67 | $12,202,112.40 | $3,574,530.67 | $12,202,112.40 | $3,574,530.67 | $3,050,528.10 |
| 4th Interim Fee App * (DE 8403) | 2/1/2020-5/31/2020 | $14,563,600.00 | $1,847,978.50 | $11,650,880.00 | $1,847,978.50 | $11,650,880.00 | $1,847,978.50 | $2,912,720.00 |
| 5th Interim Fee App (DE XXXX) | 6/1/2020-7/1/2020 | $3,904,871.00 | $183,352.41 | $3,123,896.80 | $183,352.41 | $0 | $0 | $4,088,223.41 |
| **Total for Final Fee Application** | | **$52,035,799.42** | **$7,738,395.46** | **$41,925,212.60** | **$7,738,395.46** | **$39,868,769.67** | **$7,555,043.05** | **$12,350,382.16** |

---

§  Pursuant to Court Order (DE 5674), Applicant has taken a $370,716.33 reduction in fees

*  The Fee Examiner and Baker are working to address the Fee Examiner's comments to Baker's Second Interim Fee Application timely filed by Baker on 11/14/19, Baker's Third Interim Fee Application timely filed by Baker on 3/13/20, and Baker's Fourth Interim Fee Application timely filed by Baker on 7/15/20.

Case: 19-30088   Doc# 8895   Filed: 08/28/20   Entered: 08/28/20 16:30:13   Page 4 of 39

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**FIFTH INTERIM AND FINAL APPLICATION OF BAKER & HOSTETLER LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR: (1) THE INTERIM PERIOD JUNE 1, 2020 THROUGH JULY 1, 2020 AND (2) THE FINAL PERIOD FEBRUARY 15, 2019 THROUGH JULY 1, 2020**

**TO THE HONORABLE DENNIS MONTALI,
UNITED STATES BANKRUPTCY JUDGE**

Baker & Hostetler, LLP ("**Baker**" or "**Applicant**"), counsel to the Official Committee of Tort Claimants ("**TCC**") appointed in the above-captioned voluntary Chapter 11 bankruptcy cases (the "**Bankruptcy Cases**"), hereby submits its *Fifth Interim and Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses for: (1) the Interim Period June 1, 2020 through July 1, 2020* (the "**Interim Application Period**") *and (2) the Final Period February 15, 2019 through July 1, 2020* (the "**Final Application Period**") (the "**Application**") seeking entry of an order, on a final basis, pursuant to sections 330(a) and 331 of title 11, United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1 of the Local Bankruptcy Rules for the Northern District of California (the "**Local Rules**"), the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, effective February 19, 2014 (the "**Local Guidelines**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines**"), the *Order Pursuant to 11 U.S.C. § § 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* ("**Interim Compensation Order**") [Docket No. 701], and the  revised Fee Examiner Protocol filed on October 24, 2019 (the "**Revised Protocol**") [Docket No. 4473] (collectively, the "**Guidelines**") for final allowance of compensation for professional services and reimbursement of actual and necessary expenses in connection with Baker's representation of the TCC in the above captioned cases.

The Applicant seeks final approval of compensation and reimbursement of expenses for the Interim Application Period totaling **$4,088,223.41**, which sum represent compensation for legal services rendered in the amount of $3,904,871.00 and reimbursement for expenses incurred in the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

amount of $183,352.41. In addition, the Applicant seeks final approval of compensation and reimbursement of expenses for the Final Application Period totaling **$59,774,194.88** which sum represents compensation for legal services rendered in the amount of $52,035,799.42 and reimbursement for expenses incurred in the amount of $7,738,395.46.

This Application is based upon the contents hereof, together with the exhibits, the declaration of Cecily A. Dumas filed concurrently herewith, the pleadings, papers, and records on file in these cases, and any evidence or argument that the Court may entertain at the time of the hearing on the Application.

Pursuant to the Guidelines, a cover letter enclosing this Application is being sent to the Chair of the TCC concurrently. The letter invites the Chair to discuss with the Applicant and/or the Office of the United States Trustee any objections, concerns, or questions the Chair may have regarding the requested compensation and reimbursement set forth in the Application. A copy of the transmittal letter is attached hereto as **Exhibit G**.

## **RELEVANT BACKGROUND**

1. On January 29, 2019 (the "**Petition Date**") the Debtors filed the Bankruptcy Cases. The Debtors operated their businesses and managed their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code during the Bankruptcy Cases, which were jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b). On June 20, 2020, the Debtors confirmed a reorganization plan [Docket No. 8053] and filed a notice of the plan's effective date on July 15, 2020 [Docket No. 8420].

2. Shortly after the Petition Date, on February 15, 2019, the Office of the UST filed an Appointment of the Official Committee of Tort Claimants [Docket No. 453]. Following the resignation of Richard Heffern from the original TCC and the addition of Tommy Wehe, on February 21, 2019, the UST filed the Amended Appointment of the Official Committee of Tort Claimants [Docket No. 530]. Following the resignation of Kirk Trostle and GER Hospitality, LLC, the UST filed the Second Amended Appointment of the TCC on March 27, 2020 [Docket No. 6503]. On April 3, 2020, following the resignation of Karen K. Gowins, the UST filed the Third Amended Appointment of the TCC [Docket No. 6613]. The current members of the TCC are: (i)

Case: 19-30088    Doc# 8895    Filed: 08/28/20    Entered: 08/28/20 16:30:13    Page 6 of
39

Tommy Wehe; (ii) Angelo Loo; (iii) Agajanian, Inc.; (iv) Susan Slocum; (v) Samuel Maxwell; (vi) Karen M. Lockhart; (vii) Wagner Family Wines-Caymus Vineyards; and (viii) Gregory Wilson.

3. The TCC represents the interests of fire claimants, whose claims arose as a result of the Debtors' long history of unsafe operations.

4. As permitted in the Guidelines, Baker incorporates by reference the narrative history furnished in the contemporaneous applications filed by Debtors' professionals.

5. On March 17, 2019, the TCC filed its *Application to Employ Baker & Hostetler LLP as Attorneys for the Official Committee of Tort Claimants, Effective February 15, 2019* [Docket No. 934] (the "**Retention Application**"). On April 10, 2019, the Court entered its *Order Granting the Application to Employ Baker & Hostetler LLP as Attorneys for the Official Committee of Tort Claimants, Effective February 15, 2019* [Docket No. 1331] (the "**Retention Order**"). A true and correct copy of the Retention Order is attached hereto as **Exhibit E**. Baker is not holding, and has not held, any retainer in connection with the Bankruptcy Cases or the work performed on behalf of the TCC.

6. As specifically detailed and set forth below, Baker worked with the TCC, its financial advisors, the Official Committee of Unsecured Creditors (the "**OCUC**"), its financial advisors, the Debtors, and their financial advisors to address the numerous critical issues arising in the Bankruptcy Cases during the Application Period.

7. On May 28, 2019, the Court entered an order appointing Bruce A. Markell as fee examiner ("**Fee Examiner**") in the Bankruptcy Cases. [Docket No. 2267]. Baker has communicated with the Fee Examiner and has promptly supplied information to the Fee Examiner as requested and necessary for the Fee Examiner to evaluate the reasonableness of the compensation sought in this Application.

## RELIEF REQUESTED AND BASIS FOR RELIEF

8. This Application is Baker's fifth interim and final request for allowance and payment of fees and expenses as counsel to the TCC.

9. Pursuant to Bankruptcy Code §§ 330 and 331, Baker respectfully requests entry of an order, on a final basis, allowing and approving **$4,088,223.41** which sum represents

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case: 19-30088    Doc# 8895    Filed: 08/28/20    Entered: 08/28/20 16:30:13    Page 7 of 39

compensation for legal services rendered in the amount of $3,904,871.00 and reimbursement for expenses incurred in the amount of $183,352.41 for the Interim Application Period and requests entry of an order, on a final basis, allowing and approving **$59,774,194.88,** which sum represents compensation for legal services rendered in the amount of $52,035,799.42 and reimbursement for expenses incurred in the amount of $7,738,395.46 for the Final Application Period. Copies of Baker's invoices detailing the services rendered and expenses incurred during the Final Application Period have been filed on the docket as attachments to Baker's monthly fee statements and have been furnished to the Debtors, counsel for the OCUC, the UST and the Fee Examiner (See Doc. Nos. 1478, 2063, 2295, 2798, 3314, 3769, 4037, 4513, 4937, 5247, 5557, 5980, 6514, 7000, 7714, 8210, 8570 and 8880).

10.     Baker has made every effort to ensure that this Application complies with the Guidelines and to avoid unnecessary duplication of effort by and among its attorneys and paraprofessionals, as well as with other retained professionals in these cases. Baker has supplied the Fee Examiner with Baker's monthly fee statements in an electronic LEDES format Baker believes is acceptable to the Fee Examiner.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED

11.     Baker spent 6,011.50 hours performing legal services during the Interim Application Period, at an average attorney billing rate of $677.79 per hour. Baker's blended hourly rate for all timekeepers during the Interim Application Period was $649.57.

12.     Baker spent 79,197.15 hours performing legal services described in the Final Application Period, at an average attorney billing rate of $704.95 per hour. Baker's blended hourly rate for all timekeepers during the Final Application Period was $661.72.

## PROJECT BILLING AND NARRATIVE STATEMENT OF SERVICES RENDERED

13.     In addition to the requirement that a description of the general services rendered by a professional be provided in a fee application, the Guidelines also require that applications for compensation should:

> "…categorize by subject matter and separately discuss, each project or task. With respect to each project or task, the number of hours spent, the results

8

obtained, and the amount of compensation and expenses requested should be set forth at the conclusion of the discussion of that project or task."

14.     Accordingly, Baker established separate project billing categories for its representation of the TCC during the Final Application Period, as follows:

| CODE | DESCRIPTION |
|------|-------------|
| 001 | Administrative Expense Claims |
| 002 | Asset Sales/363 Sales |
| 004 | Bankruptcy Litigation |
| 005 | Bar Date Motion/Claims Noticing |
| 006 | Case Administration (docket updates, WIP, and calendar) |
| 008 | Chapter 11 Plan/Plan Confirmation |
| 009 | Committee Meetings and Preparation |
| 010 | Corporate and Board Issues |
| 012 | DIP Financing/Cash Mgmt./Hedging Transactions |
| 013 | Disclosure Statement |
| 014 | Employee Issues |
| 018 | General Case Strategy (includes communication with Committee) |
| 019 | Hearings and Court Matters |
| 020 | Legislative Issues |
| 021 | Non-Bankruptcy Litigation |
| 022 | Non-Working Travel |
| 024 | District Court Litigation |
| 025 | Regulatory Issues including CPUC and FERC |
| 026 | Retention Applications |
| 027 | Fee Application: Baker |
| 028 | Fee Application: Other Professionals |
| 030 | Tax Issues |
| 031 | U.S. Trustee/Fee Examiner Issues |
| 032 | Unsecured Creditor Issues/ Communications/ Meetings |
| 037 | Investigations |
| 039 | Other Contested Matters |

9

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| CODE | DESCRIPTION |
|------|-------------|
| 040 | Operations |
| 042 | Subrogation |
| 043 | Securities |
| 044 | Wildfire Assistance Program |
| 045 | Asset Analysis and Recovery |
| 046 | Tort Claims Estimation |
| 047 | Class Claims Issues |
| 048 | Kincade Fire Issues |
| 049 | Mediation |
| 050 | Government Claims |
| 051 | CPUC BK OII 19-09-016 |
| 052 | Tort Claims |
| 053 | Contingency Process |

15.     These distinct, numbered project billing categories[**] enabled Baker to monitor its activities and appropriately account for the time expended by its professionals and paraprofessionals.  This procedure enables Baker to better inform the TCC, the Court, the UST and the Fee Examiner regarding the nature of the services provided and time expended by its professionals and paraprofessionals.  The project billing categories adopted by Baker are consistent with those used by the Debtors in order to ease the burden of the Fee Examiner's review.  To the extent the project billing categories are not identical to those used by the Debtors, it is because representing the TCC requires services different than those the Debtors' professionals provided to the Debtors, so Baker tailored certain task code descriptions and have added task codes as necessary to more accurately reflect the nature of the work being performed by Baker on the TCC's behalf.

16.     In an effort to streamline and control legal fees and expenses, Baker endeavored to minimize the expenditure of time by its senior partners and to delegate responsibilities to junior partners, associates and other paraprofessional employees as appropriate.  In addition, because

[**]In certain instances, where more than one category of issues might have been addressed during the course of a meeting or telephone conference, Baker's time records may include that time in only one billing category.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Baker does not charge national rates, Baker endeavored to minimize fees and expenses by staffing the matter with partners and associates from a cross-section of its offices, in order to take advantage of lower rates in certain markets in areas of the United States in which Baker maintains offices. The blended hourly rate for all Baker professionals and paraprofessionals who provided services during the Interim Application Period is $649.57. Attached hereto as **Exhibit B** is a Summary of the Timekeepers included in this Interim Application Period, including the name and billing rate of each Baker professional and paraprofessional who provided services to the TCC.

17. In compliance with the Guidelines, a description of the people employed by Baker who rendered services to the TCC in the Bankruptcy Cases during the Interim Application Period and whose time entries appear in the invoices, is included in **Exhibit F**, attached hereto.

18. Pursuant to Bankruptcy Code §504, Baker has no understanding, agreement, or arrangement of any kind to divide with or pay to anyone any fees that may be awarded to Baker in the Bankruptcy Cases, other than as may be shared among the members of the Baker firm.

## SUMMARY OF SERVICES RENDERED BY PROJECT CATEGORY

19. Set forth below is a summary description, by project billing category, of the services rendered by Baker during the Interim Application Period. Summary descriptions, by project category, of the services rendered by Baker during the Final Application Period can be found on the docket at Docket Nos. 2995, 4733, 6286, and 8403. The specific tasks, the number of hours devoted, and the amounts charged within each billing category are detailed in the invoices filed on the docket as attachments to Baker's monthly fee statements (see Docket Nos. 1478, 2063, 2295, 2798, 3314, 3769, 4037, 4513, 4937, 5247, 5557, 5980, 6514, 7000, 7714, 8210, 8570 and 8880).

a. <u>Asset Sales/363 Sales (002):</u> This work involved contingency planning and research for multiple contemplated courses of litigation that may have followed from failures of plan confirmation or effectiveness, including expedited proceedings under Section 363 of the bankruptcy code or a state takeover of PG&E through eminent domain. Various contingencies could have substantially impacted or impaired the tort victims' claims, rights, or ability to collect. As such, Baker's attorneys researched the rights of tort claimants under these various

Baker & Hostetler LLP
Attorneys at Law
San Francisco

circumstances, prepared detailed memoranda to address these issues, and prepared for litigation on an expedited basis if certain contingencies materialized.

The total hours and amount charged by Baker to this issue during the Interim Application Period represents **5.40 hours** and **$3,505.50** in fees.

        b.     <u>Bankruptcy Litigation (004)</u>:  Baker continued to perform the bankruptcy related litigation work efficiently and effectively on behalf of the TCC and fire victims during the Application Period. This included Baker evaluating court filings with potential impact on the TCC and the fire victims, formulating strategies to achieve litigation objectives, communicating with parties and counsel, and preparing related documents.  Baker spent substantial time during the Application Period on discovery related to litigation issues impacting the TCC and fire victims. Specifically, Baker prepared subpoenas and requests for information, developed and maintained voluminous databases of information concerning litigation matters, researched and targeted relevant information, analyzed documents and prepared reports advising the TCC on issues relevant to litigation. This work also encompassed conducting research related to discovery matters. Baker also spent substantial time during the Application Period on agreements and stipulations related to evidence, discovery, and the turnover of information from the TCC to the Fire Victim Trustee.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **128.20 hours** and **$53,906.50** in fees.

        c.     <u>Bar Date Motion/Claims Noticing (005)</u>:  Baker's work in Task Code 5 involved a review of the court's tentative ruling on claims procedures and attention to issues concerning late-filed claims.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **0.70 hours** and **$707.00** in fees.

        d.     <u>Case Administration (docket updates, WIP, and calendar) (006)</u>: Baker's services captured in this task code includes all of the work performed relating to the receipt, review, and analysis required for the docketing of statutory deadlines in the firm's docketing system for all e-filed documents in the bankruptcy court and related proceedings.  In addition, the Case Administration task code encompassed  the weekly preparation of critical dates memoranda

12

Baker & Hostetler LLP
Attorneys at Law
San Francisco

prepared for communications with the TCC, and daily docket review as necessary for maintenance of the master service list. Finally, the Case Administration task code includes collaborative discussions among Baker's professionals concerning communications to and document sharing with the TCC, and case planning and staffing and team assignment tracking.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **69.00 hours** and **$29,848.00** in fees.

e. Chapter 11 Plan/Plan Confirmation (008): This category covers all matters pertaining to confirmation of the Debtors' plan, including the Disclosure Statement, negotiations with the Debtors and other Plan parties, analysis of Plan terms, negotiations over Plan documents and support agreements, research and briefing on early Plan objections as well as Plan objections filed in connection with the confirmation hearing, and post-confirmation transition to the Trust.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **1,088.00 hours** and **$875,356.50** in fees.

f. Committee Meetings and Preparation (009): This task code primarily covers items related to meetings of the TCC and calls among Baker's leadership team to discuss action items, strategy, and staffing. Both of those events generally occurred on a weekly basis but were sometimes held more often as necessary to address case exigencies as they arose. This work included (i) preparation for and participation in TCC meetings, TCC subcommittee meetings, Baker leadership team strategy calls; (ii) researching and preparing presentations to the TCC and Baker's leadership team as necessary to strategic decisions; (iii) advising the TCC on points of procedure and governance; (iv) conferring with Baker attorneys or other professionals regarding TCC meetings and presentations; (vi) preparing resolutions or other documents for TCC approval; (v) direct communications with individual TCC members including responding to member questions concerning important events and questions concerning written communications and advice to the TCC; (vi) identifying items that should be brought to the TCC's attention for a vote; and (vii) preparing meeting agendas and minutes, including conferring with members and the TCC Chair regarding items that should be on the agenda.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **187.60 hours** and **$141,453.00** in fees.

g. <u>Corporate and Board Issues (010)</u>: Baker's work in this task code focused on reviewing and analyzing issues relating to various corporate and governance matters that impacted the Debtors as required to assess how such may also impact the interests of the TCC, including review of proposed amendments to the Debtors' corporate documents and issues related to the Debtors' stock price.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **24.80 hours** and **$17,806.50** in fees.

h. <u>DIP Financing/Cash Mgmt./Hedging Transactions (012)</u>: During the Application Period, Baker advised the TCC with respect to the Debtors' second amended motion for entry of orders approving the terms of certain exit financing commitment letters and authorizing the Debtors to incur related fees and premiums as administrative expense claims. Among other tasks, Baker professionals analyzed the terms of the proposed exit financing with the assistance of the TCC's financial advisors, evaluated legal issues concerning the propriety of the requested relief under the Bankruptcy Code and other applicable law, and evaluated whether the financing motion outlined a capital structure different from the structure that was proposed at the time the TCC entered into the Tort Claimants RSA with the Debtors. Baker also advised the TCC in connection with the Debtors' capital raises. Baker also worked with the TCC's financial advisors to advise the TCC regarding potential impacts that the COVID-19 crisis would have on the Debtors financings. Baker continued to monitor and evaluate developments to the Debtors' financing to inform the TCC regarding changes, if any, that could impact the Tort Claimants RSA and the Debtors' proposed plan, plan confirmation, and exit from chapter 11.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **17.70 hours** and **$17,697.00** in fees.

i. <u>Equity Security Holders (015)</u>: Baker's work in Task Code 15 involved a review of the objection to omnibus claims filed by the lead securities plaintiffs and related objection procedures, and the plan proponents' statement concerning a partial compromise.

14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **1.10 hours** and **$1,045.00** in fees.

j. General Case Strategy (includes communication with Committee) (018): Baker's General Case Strategy professional services encompassed frequent, ongoing communications (orally and in writing) with members of the TCC as necessary to keep the TCC continuously and timely updated with respect to all bankruptcy court, state court, district court, and regulatory proceedings impacting the TCC and its constituents, up to and including the confirmation hearings on the Debtors' Chapter 11 plan. Time spent in this category included daily, or near-daily, review and evaluation of pleadings and other documents filed with the courts or regulatory authorities to assess their potential impact on the TCC and its constituents, and related internal and external communications in furtherance of case strategy, including maintaining an efficient system for tracking and responding to TCC member requests for information and maintaining and expanding the TCC's website to facilitate communication. . Baker drafted analysis of pleadings and other documents filed in the bankruptcy court, district court and state court and routinely communicated with the TCC and its members regarding strategic action and progress in the cases. Baker advised the TCC regarding its financial advisors and other media coverage concerning case developments.

Time in this category also included certain of Baker's services working on TCC wrap-up issues and addressing discovery matters.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **98.40 hours** and **$74,189.00** in fees.

k. Hearings and Court Matters (019): This category covers preparations for and attendance (either in person, via Zoom or other "virtual" platform) at hearings before the Bankruptcy Court on matters concerning but not limited to Plan confirmation, the adequacy of the Debtors' Disclosure Statement, hearings on certain Plan objections, and other hearings that have arisen as a result of motions filed by creditors, committees or other parties.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **139.30 hours** and **$116,287.50** in fees.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

l.   Legislative Issues (020):  Baker's services in connection with Legislative Issues involved tracking and analyzing the proposal, amendments, and debates surrounding Senate Bill 350, which provided a means for a public utility to supplant PG&E if PG&E failed to emerge from bankruptcy in a timely manner or if PG&E reached the final stage of the CPUC's enhanced oversight process. Baker's work includes analysis of the bill, reports thereon, and its amendments; drafts and revisions of proposed amendments to protect victim recovery; monitoring press coverage and public officials' statements regarding the bill; and attendance at and/or monitoring of hearings and votes on the Bill. In addition, Baker rendered services to the TCC in analyzing, researching, and responding to litigation challenges to Assembly Bill 1054.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **164.00 hours** and **$124,671.00** in fees.

m.   Non-Bankruptcy Litigation (021):  Baker's work in Task Code 21 involved a review of the report concerning the Butte County criminal plea, and the commencement of victim impact statements.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **0.60 hours** and **$570.00** in fees.

n.   District Court Litigation (024):  Baker's services to the TCC on this matter during the course of the billing period included identifying and analyzing specific relevant filings in the district court action, U.S. v. Pacific Gas and Electric Company, 3:14-cr-000175-WHA, in connection with PG&E's criminal probation.  Work also included monitoring the Butte County criminal proceedings and the effects of P&GE's guilty plea on the plan confirmation proceedings.  Many of the filings and proceedings in these actions during the operative time period were relevant to the TCC, its interests, the RSA, plan confirmation, discovery efforts, and potential future litigation.

During the Application period, Baker's work included evaluating and drafting substantive analysis and recommendations with respect to specific court orders and responsive filings regarding such issues as PG&E's compliance with certain conditions of its probation,  responsive filings from PG&E, state agencies, and other interested parties regarding proposed modifications to PG&E's

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

probation conditions, and numerous hearings and filings in connection with PG&E's arraignment and sentencing in the Butte County criminal case. Evaluating these issues on the TCC's behalf entailed the targeted assessment of specific orders and requests for information issued by Judge William Alsup as well as numerous other pleadings and hearings in both criminal matters.

After identifying and evaluating these relevant filings, Baker's professionals drafted substantive analysis of key issues and information of importance to the TCC, along with recommendations and guidance, which was then used to inform certain aspects of litigation strategy and global case planning as necessary to best protect the interests of the TCC and the constituency of creditors the TCC represents. This analysis included identifying certain issues and areas of interest to the TCC warranting further examination, and specific evidence and/or categories of evidence to target during discovery and potential future litigation.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **86.40 hours** and **$50,440.00** in fees.

        o.    <u>Regulatory Issues including CPUC and FERC (025)</u>: Under this task code, Baker's services to the TCC included tracking and participating in CPUC proceedings implicating PG&E and fire victims' interests. This included review of party filings, Commission voting meetings, and review and analysis of court docket entries and hearing transcripts bearing on the proceeding in which the CPUC approved PG&E's Chapter 11 plan and the Commission's own ruling approving the plan. There were additionally filings in the CPUC's investigation of PG&E regarding penalties for wildfires during 2017 and 2018, to which Baker reviewed, analyzed, and responded. Other ongoing proceedings implicating fire victims included CPUC investigations and rulemakings pertaining to de-energization and public safety power shutoffs, and PG&E's applications pertaining to securitization and other financing mechanisms. In these proceedings, Baker participated directly, preparing briefs and arbitration or mediation materials, and actively monitored other filings by parties and by the Commission. In addition, Baker's work includes a filing under the Hart Scott Rodino Act with the Department of Justice's Antitrust Division and the Federal Trade Commission.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

The total hours and amount charged by Baker to this matter during the Interim Application Period are **352.20 hours** representing **$228,909.00** in fees.

  p. <u>Retention Applications (026)</u>: Baker's work in Task Code 26 involved the review of, and related correspondence concerning, a supplemental application to retain McKinsey & Company and issues concerning an objection to the prior retention application, the Debtors' supplemental application to retain KPMG, and correspondence with counsel for RBC regarding retention issues.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **2.10 hours** and **$1,858.50** in fees.

  q. <u>Fee Application – Baker (027)</u>: Baker's work in Task Code 27 involved preparing, filing, and serving Baker's Fifteenth monthly fee statement and exhibits, preparation of certificate of no objection to same and related certificate of service; analysis of the Fee Examiner's initial report regarding Baker's Second and Third Interim fee applications with respect to conclusions related to costs; drafting and preparing exhibits required for Baker's interim fee application; analysis of work performed by Baker during interim application period and drafting narrative summaries of work performed in task codes as required for interim fee application; preparing, filing, and serving Baker's Sixteenth monthly fee statement and exhibits, and preparation of certificate of no objection to same and related certificate of service.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **39.10 hours** and **$19,067.00** in fees.

  r. <u>Fee Application – Other Professionals (028)</u>: Baker's work in this task code consisted of assisting the TCC's professionals, including Lincoln Partners Advisors, LLC, Lynn Baker and Trident DMG, LLC, in preparing their fee statements in accordance with established protocols in the Chapter 11 Cases and in preparing certificates of no objection. Baker consulted with the Fee Examiner and/or his professionals, the Office of the United States Trustee as well as other case professionals to address and resolve any fee issues.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **16.70 hours** and **$12,376.00** in fees.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

s. Tax Issues (030): Baker professionals performed substantial analysis of tax issues during the Application Period in connection with the development of the trust being established pursuant to the plan for the treatment of fire claims. Baker analyzed issues concerning the impacts of Net Operating Losses ("NOLs") and carry forwards in connection with a settlement with equity holders, performed research regarding preservation of NOLs and related research regarding IRC 382, reviewed PG&E NOL monetization considerations prepared by Lincoln, reviewed PG&E SEC filings which included Tax Receivable Agreements, performed analysis and review of Tax Benefit Agreements, letters of credit, income taxation of trusts under various domiciles as relevant to situs of plan trust, researched whether certain provisions of the IRC were incorporated into the California Revenue and Taxation Code, analyzed California Franchise Tax Board rulings, and provided input on tax issues for the plan term sheet as relevant to the interests of the TCC.

Baker also assisted the TCC with negotiating a Tax Benefits Agreement with the Debtors and the other plan proponents, along with various related documents, including stipulated judgments and a letter of credit. Baker assisted the TCC with analyzing and negotiating numerous issues relating to the Tax Benefits Agreement and its related documents which was resolved after plan confirmation.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **34.80 hours** and **$29,971.50** in fees.

t. U.S. Trustee/Fee Examiner Issues (031): Baker's work in Task Code 031 involved limited correspondence with the Fee Examiner's staff regarding expert fees.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **0.20 hours** and **$56.00** in fees.

u. Unsecured Creditor Issues/ Communications/ Meetings (032): Baker's work in Task Code 032 involved limited correspondence with the unsecured creditors committee counsel regarding the timing of the effective date.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **0.50 hours** and **$505.00** in fees.

19

v. <u>Real Estate and Real Property Issue (035)</u>: Baker's work in Task Code 035 involved the review of the TCC's financial advisor's analysis regarding the Debtors' motion to enter into a lease of headquarters with purchase option and relocate.

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **1.70 hours** and **$1,613.00** in fees.

w. <u>Other Contested Matters (039)</u>: Baker's work associated with numerous contested matters not included within other task categories is contained under the general category Other Contested Matters. Baker was required to monitor contested matters initiated by parties in interest to determine whether the relief requested would have an impact on the rights of the TCC and its constituents, and Baker responded to contested matters as set forth in the detailed time entries included in this Application. Included among these matters was a motion for recusal and a motion to appoint an examiner. .

The total hours and amount charged by Baker to this matter during the Interim Application Period represents **4.90 hours** and **$4,996.00** in fees.

x. <u>Operations (040)</u>: Baker's services in this task category involved multiple aspects of how the TCC operates. Baker worked with the TCC and Trident in responding to inquiries from fire victims and the media and to prepare press releases. Baker continued to address ethical issues and fiduciary duties of the TCC with special counsel and addressed special counsel's communication protocols with the TCC. Baker also addressed a number of TCC wind-down issues in connection with the expedited Effective Date of the Debtors' plan of reorganization.

Baker prepared and revised proposed common interest agreements for TCC consideration, addressed issues with respect to interpretation of TCC bylaws, and evaluated and adopted all necessary changes to procedures for TCC meetings and protocols as necessary to address COVID-19. Baker addressed issues with respect to TCC composition and resignation of certain TCC members and communicated with the TCC frequently with respect to TCC obligations and goals. Baker prepared memoranda analyzing the rights of individual TCC members with respect to the Debtors' proposed plan, and analyzed pleadings impacting the TCC as necessary to prepare summaries for the TCC website.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case: 19-30088    Doc# 8895    Filed: 08/28/20    Entered: 08/28/20 16:30:13    Page 20 of 39

Baker's services in this task code also included administrative tasks carried out by staff in connection with reimbursements of TCC costs, and frequent maintenance and updates to the TCC website to supply new pleadings, transcripts, meeting minutes, and case development summaries, and other information concerning the Debtors as necessary to inform the TCC.

The total hours and amount charged by Baker to this matter during the Interim Application Period represent **27.40 hours** and **$21,778.50** in fees.

y.      Subrogation (042): Baker's work in Task Code 042 involved communications regarding dismissal of the subrogation plaintiffs' adversary proceeding and analysis of issues concerning a response to a motion concerning plan trust issues, and attention to closing issues.

The total hours and amount charged by Baker to this matter during the Interim Application Period represent **2.00 hours** and **$1,487.50** in fees.

z.      Securities (043): Baker's work on the TCC's behalf regarding securities-related issues encompassed attention to analysis and strategy with respect to registration rights; review of PG&E's registration statement; legal research regarding securities law issues relevant to registration rights and block sales; preparing, reviewing, revising and exchanging numerous registration rights term sheets; numerous conference calls and emails with TCC, financial advisors and fire victim trust counsel regarding registration rights issues; in-depth negotiations with PG&E professionals regarding registration rights agreement issues; presentations to the TCC regarding registration rights issues, negotiations and term sheets; reviewing relevant backstop agreement terms and descriptions and terms of documents for proposed PG&E capital structure on emergence; reviewing, revising and exchanging registration rights agreement drafts with PG&E professionals; calls and emails with mediator regarding registration rights agreement issues and resolutions; preparing, reviewing and revising bankruptcy court filings for approval of registration rights agreement; reviewing and revising registration rights agreement press talking points; preparing and revising brief in opposition to objection to registration rights agreement, and review of fire victim trust's related brief; and working with financial advisors, fire victim trust counsel and PG&E professionals regarding stock to be issued to fire victim trust.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The total hours and amount charged by Baker to this matter during the Interim Application Period represent **158.20 hours** and **$135,170.50** in fees.

aa.    <u>Asset Analysis and Recovery (045)</u>: During the Application Period, Baker worked to assess and protect the value of the Assigned Causes of Action as provided in the RSA. Specifically, Baker met and conferred with third parties, reviewed documents produced by the third parties and analyzed the potential liability for each of the third parties in connection with over forty [40] Rule 2004 subpoenas Baker served on third parties seeking, among other information, contracts and insurance information. Baker analyzed work performed by each company and the insurance available to each entity, as a source of potential recovery.   Baker also prepared Court filings in connection with a possible motion to compel compliance with its Rule 2004 subpoenas.

Baker's services to the TCC in this area served several purposes: 1) preparation for plan confirmation hearing in light of complaints by the UCC that third parties may not be able to obtain insurance if they were sued post confirmation; 2) protecting the assigned causes of action from statute of limitations arguments; and 3) assessing the strength and value of the assigned causes of action against each of over forty [40] third party entities.

The total hours and amount charged by Baker to this matter during the Interim Application Period represent **2,821.10 hours** and **$1,381,712.00** in fees.

bb.    <u>Tort Claims Estimation (046)</u>:  This task category encompasses the work performed by Baker professionals in connection with the briefing of issues pending before Judge Donato relating to tort claims estimation including addressing issues relating to the dismissal of the estimation proceeding before Judge Donato in connection with plan confirmation, and wrapping up the estimation related work.

The total hours and amount charged by Baker to this matter during the Interim Application Period represent **11.90 hours** and **$10,929.00** in fees.

cc.    <u>Class Claims Issues (047)</u>: Baker's work in this category concerned the class action litigation filed by certain former PG&E shareholders in District Court, and the proceedings in Bankruptcy Court pertaining to their related proofs of claim, their motion for certification, and the TCC's motion for standing.  Because the securities plaintiffs sought to recover policy proceeds

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

from the sale insurance policies that cover D&O claims assigned to the Trust, these equity holders were in direct competition with unsecured creditors for the same assets, including the Fire Victim Trust's derivative claims. The TCC filed a motion to obtain standing to pursue litigation addressing this issue and was ultimately invited to bring the issue directly to the District Court for consideration. Accordingly, Baker prepared litigation as necessary to protect the policy proceeds and the interests of the TCC. Baker's services in this task code also covers discussions with the parties relevant to mediation of securities claims.

The total hours and amount charged by Baker to this matter during the Interim Application Period represent **12.60 hours** and **$8,631.00** in fees.

dd. Mediation (049): Baker represented the TCC's interests in substantial issues sent to mediation. The vast majority of mediation issues pertained to Plan negotiations with the Debtors and equity plan proponents and took place before Judge Newsome. Other work performed by Baker on the TCC's behalf took place before a JAMS mediator and concerned the claims of securities litigants. In the case of Plan negotiations, the mediation led to a resolution of all of the TCC's plan confirmation issues and helped lead to a successful plan confirmation and the Debtors' reorganization and emergence from Chapter 11.

The total hours and amount charged by Baker to this matter during the Interim Application Period represent **94.90 hours** and **$83,217.00** in fees.

ee. CPUC BK OII 19-09-016 (051): During the Application Period, Baker addressed questions concerning the petitions for re-hearing of the CPUC's decision on the Bankruptcy OII, the relationship with AB 1054 and newly-enacted SB 350. As the Debtors Chapter 11 cases reached a conclusion, Baker managed the transition and wind-down of the TCC's involvement in cases pending before the CPUC.

The total hours and amount charged by Baker to this matter during the Interim Application Period represent **12.70 hours** and **$13,587.50** in fees.

ff. Tort Claims (052): Baker's work on behalf of the TCC in this category during the Application Period encompasses analyzing and addressing issues raised by tort claimants relating to the treatment of fire claims in the Fire Victim Trust Agreement and the Claims

23

Resolution Procedures, including objections raised by tort claimants to the Claims Resolution Procedures and the Fire Victim Trust Agreement during plan confirmation proceedings, and the objections filed by the business group of claimants. Baker's also addressed late filed claims by tort claimants. Finally, Baker's services to the TCC included researching certain issues that could impact the value of fire claims such as statutes of limitation and insurance notification requirements. Baker also analyzed pending third party causes of action filed by others currently pending in the bankruptcy and other courts against the same claimants, including the securities claimants' claims against the Debtors' directors and officers.

The total hours and amount charged by Baker to this matter during the Interim Application Period represent **140.40 hours** and **$84,733.00** in fees.

gg.  <u>Contingency Process (053)</u>:  During the Application Period, Baker's continued the work performed during the prior Application Period, and eventually wound down that work following confirmation of the Debtor's Chapter 11 plan on June 20, 2020. Baker continued to focus on analyzing, planning for, and protecting the interests of tort claimants in the event that the Debtors failed to obtain an order confirming the plan, or if the plan failed to become effective, or if a substantial delay occurred between the order confirming the plan and the funding of the plan and the plan's effective date.  In particular, Baker's work encompassed three main categories of issues that could affect the interests of the TCC:  (1) the impact of a wildfire event after plan confirmation but before the plan effective date; (2) the incurrence of administrative expenses that would have priority over victim claims between the date of an order confirming the plan, and the effective date; and (3) the sale process contemplated by the stipulation should the Debtors' plan were to not become effective by December 31, 2020, the outside deadline imposed under the stipulation.

The total hours and amount charged by Baker to this matter during the Interim Application Period represent **266.90 hours** and **$356,790.50** in fees.

20.    <u>RBC Capital Markets, LLC.</u>  During the Interim Application Period, and with the approval of the Debtors, the TCC engaged RBC Capital Markets, LLC ("RBC") as an expert in registration rights as necessary to assist the TCC in connection with transactions stemming from

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the creation of the fire victim trust and the anticipated distribution of equity into the fire victim trust pursuant to the Debtors' plan. RBC's services on behalf of the TCC during the Interim Application Period included review of the Debtors' plan and all supporting documentation including the RSA, the fire victim trust agreement, claims resolution procedures and related documentation necessary to evaluate the magnitude of the funding needs, monetization alternatives relative to scenarios involving the backstop commitment, negotiating a registration rights agreement, and advising the TCC with respect to same. Per agreement with RBC, Baker, as counsel to the TCC, agreed to submit RBC's invoices for payment by the Debtors' estates as a part of Baker's monthly fee statements and Baker's Interim and Final Application.

Baker included RBC's June 2020 invoice in the amount of $329,907.50 on Baker's Seventeenth Monthly Fee Statement filed on July 30, 2020 [Docket No. 8570]. No objections have been filed regarding the Seventeenth Monthly Fee Statement. The total sought by RBC for services performed on behalf of the TCC during the Interim Application Period is **$329,907.50**. The total sought by RBC for services performed on behalf of the TCC during the Final Application Period is **$704,907.50**.

21. <u>Costs and Expenses</u>: Baker requests allowance and reimbursement of actual, reasonable, and necessary out-of-pocket expenses in the amount of $183,352.41 incurred while rendering professional services on behalf of the TCC during the Interim Application Period. Baker requests allowance and reimbursement of actual, reasonable, and necessary out-of-pocket expenses in the amount of $7,738,395.46 incurred while rendering professional services on behalf of the TCC during the Final Application Period.

22. Expenses incurred by Baker during the Final Application Period are set forth in detail on the invoices found on the docket as attachments to Baker's monthly fee statements (see Docket Nos. (see Docket Nos. 1478, 2063, 2295, 2798, 3314, 3769, 4037, 4513, 4937, 5247, 5557, 5980, 6514, 7000, 7714, 8210, 8570 and 8880). Expenses incurred by Baker during the Interim Application Period are summarized in **Exhibit D-2.**

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23.     Baker submits that all expenses incurred during the Interim Application Period and the Final Application Period were reasonable and necessary, are sought in compliance with the Guidelines, and should be allowed on a final basis by the Court.

## THE FEES AND EXPENSES REQUESTED
## SHOULD BE AWARDED BASED UPON APPLICABLE LAW

24.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. Section 330 provides that a Court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Id. § 330(a)(3).

25.     In determining the amount of allowable fees under Bankruptcy Code section 330(a), courts are to be guided by the same "general principles" as are to be applied in determining awards

26

under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *Burgess v. Klenske (In re Manoa Finance Co., Inc.)*, 853 F.2d 687, 691 (9th Cir. 1988).

26.     In assessing the propriety of an award of attorneys' fees, twelve factors relevant to determining such fees were identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974, a Title VII class action case under the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and *Kerr v. Screen Extras Guild, Inc.*, 526 F 2d. 67, 70 (9th Cir. 1975), *cert denied*, 425 U.S. 951 (1976): (a) the time and labor required, (b) the novelty and difficulty of the questions, (c) the skill requisite to perform the service properly, (d) the preclusion of other employment by the professional due to acceptance of the case, (e) the customary fee, (f) whether fee is fixed or contingent, (g) time limitations imposed by client or the circumstances, (h) the amount involved and the results obtained, (i) the experience, reputation and ability of the professionals, (j) the undesirability of the case, (k) the nature and length of the professional relationship with the client, and (l) awards in similar cases. *See American Benefit Life Ins. Co. v. Baddock* (*In re First Colonial Corp. of America*), 544 F. 2d 1291 (5th Cir. 1977) (*Johnson* criteria applicable in bankruptcy cases):

a.      the time and labor required:  Baker and the TCC represented the interests of the most vulnerable and important constituency in these cases.  Unlike other major parties in interest in these cases, the TCC had no relationship with PG&E pre-petition, other than as its victim.  The time required to protect the interests of the victims the TCC represents is substantial, and the labor is complicated and multifaceted, particularly due the scope of injuries represented by the members of the TCC, ranging from death and personal injury to business and other economic losses.

Baker met with the TCC in person on a monthly basis, and weekly by phone.  Multiple attorneys frequently attended these meetings to field questions from the eleven [11] members of the TCC and sometimes also from counsel for individual TCC members.  These meetings covered numerous agenda items, and involved a broad area of topics and expertise, often including claims estimation, financial analysis, updates on pending motions and objections, corporate governance, criminal issues, committee operations, website updates, legislative updates, and Chapter 11 plan

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

analysis. Baker had different attorneys working on different issues and each attorney briefed the TCC on the issues for which they were responsible.

In addition, Baker had a weekly "core" PG&E team meeting that typically lasted about one hour. These meetings always included a number of attorneys (more than four), each of whom led a particular project or work team and/or specialized in a particular practice area. These meetings involved high-level and substantive strategy considerations and were essential to avoid duplication of effort, and/or multiple "one off" calls between Baker's attorneys to ascertain the status of matters relevant to various workstreams. Baker's core team meetings were critical to coordinate case strategy on how best to achieve the objectives of the TCC. For example, Baker's professionals working on claims estimation needed to communicate with Baker's professionals working on Chapter 11 plan issues, and each needed to be apprised of legislative developments. The weekly calls were where ideas and information were shared among Baker's work teams so that research and investigative results could be conveyed and strategic decisions could be made in a manner that avoided duplication of effort and in a way that assured the team moved forward in the same direction.

Finally, a number of attorneys (more than four) frequently attended hearings that involve multiple or complex issues. The TCC's lead counsel, generally Ms. Dumas and Mr. Julian, attended hearings together with other litigation counsel and/or the attorneys on the team responsible for working on the matter being heard. Given the number of firms and professionals employed by the Debtors, and the complicated issues the Debtors' cases present, representation of the TCC required the attendance of several attorneys at hearings.

       b.    <u>the novelty and difficulty of the questions</u>: Many of the issues related to this case were novel, due to the complexity of issues presented regarding the fire victims' claims, the nature of the Debtors' business, and the legislative and regulatory issues involved. As Baker noted in its previous interim applications, these cases presented some of the most difficult issues ever addressed in a bankruptcy case, including the Debtors' ability to finance its reorganization, and the rights of over 70,000 tort claimants holding claims including business losses, property damages, personal injuries, and deaths arising from over 20 fires caused by the Debtors. The bankruptcy

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

cases proceeded in parallel with numerous regulatory investigations by the CPUC, a federal court probation proceeding, and a criminal plea in Butte County, California, as a result of the deaths of more than 80 people in the Camp Fire. The main complex issues addressed in the bankruptcy cases during the period covered by this application pertained to the negotiation and documentation of the victim trust agreement and claims resolution procedures, the disclosure statement, the Joint Plan, and the Contingency Process. Further, as a result of the complex nature of the compensation for victims under the TCC RSA, Baker professionals participated in mediation proceedings with the Debtors and Shareholder Proponents. Moreover, the United States, through FEMA, asserted the first claim ever in a major bankruptcy case for recovery of disaster relief payments. Finally, Baker was required to monitor, and where appropriate participate in, contested matters initiated by creditors and other parties in interest to protect the victim recoveries.

c. <u>the skill requisite to perform the service properly</u>: The skill to perform the representation of the TCC properly is significant. There are numerous complex and varied issues presented by these cases, as evidenced by the number of professionals the Debtors have employed.

d. <u>the preclusion of other employment by the professional due to acceptance of the case</u>: Other employment of Baker has been precluded due to conflict issues either created by or resulting from Baker's representation of the TCC in these cases.

e. <u>the customary fee</u>: Baker is charging its customary hourly fees in this matter with the exception that Baker has frozen the hourly rates of its professionals performing services on behalf of the TCC at 2019 rates as a courtesy to the estates.

f. <u>whether fee is fixed or contingent</u>: Baker's fees for representing the TCC are charged at Baker's standard hourly rates and are not contingent.

g. <u>time limitations imposed by client or the circumstances</u>: There have been constrained time limitations in this representation due to the pace of legislation enacted pertaining to the Debtors' cases and the need to evaluate volumes of critical information to the TCC's interests on an expedited basis in order to achieve the best results for the victims of the Debtors' fires. Indeed, the TCC was appointed and Baker was retained less than seventeen [17] months before the Effective Date of the Debtors' Chapter 11 plan, making this a very swift moving case from start to finish.

h. <u>the amount involved and the results obtained</u>: Through the efforts of Baker and other tort claimant professionals, the TCC and representatives of more than 70% of tort claimants achieved the largest settlement ever in a mass tort bankruptcy case, through distributions of cash and stock in the reorganized debtors. As the court is aware, the TCC's role in this case was pervasive, having participated in all of the significant developments in the cases, including, during this application period the final portion of the hearing on the Debtors' Chapter 11 plan. While the Debtors' employed two major firms as chapter 11 counsel, along with other firms as criminal counsel, corporate counsel, securities counsel, CPUC and FERC regulatory counsel, tort litigation defense counsel and a legion of other special counsel and ordinary course professionals, Baker was able to fully staff its representation of the TCC internally with experienced and capable bankruptcy, corporate, regulatory, white collar criminal, complex litigation, insurance, and appellate attorneys, along with other professionals and paraprofessionals. Notably, Baker accomplished its representation of the TCC at blended rates lower than counsel for any other major constituent in the cases.

i. <u>the experience, reputation and ability of the professionals</u>: Baker is well known for its experience and expertise in bankruptcy matters. Cecily Dumas and Elizabeth Green are fellows in the American College of Bankruptcy, and Baker's team is comprised of seasoned litigators and well-respected lawyers in every diverse aspect of Baker's representation of the TCC. In addition, many of Baker's attorneys representing the TCC in these cases are highly ranked in Chambers and Partners.

j. <u>the undesirability of the case</u>: Representing the TCC in the Debtors' cases was not undesirable, but the representation was multi-faceted, swift-moving, and complicated.

k. <u>the nature and length of the professional relationship with the client</u>: Baker had no professional relationship with the TCC prior to these cases.

l. <u>awards in similar cases</u>: Baker's fee application is comparable with other awards in similar cases involving representation of a committee of tort victims.

27. The time for which compensation is sought is detailed in Baker's professional fee invoices filed on the docket as attachments to Baker's monthly fee statements (see Docket Nos.

30

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1478, 2063, 2295, 2798, 3314, 3769, 4037, 4513, 4937, 5247, 5557, 5980, 6514, 7000, 7714, 8210, 8570 and 8880).

28. Baker's services and time expenditures are reasonable considering the labor required and outcome achieved to date in these complicated cases. Baker charges for its professional services based upon the time, nature, extent and value of such services and the cost of comparable services in the San Francisco bay area, other than in a case under the Bankruptcy Code. The compensation Baker seeks by way of this Application is the customary compensation commonly sought by the Baker and other professionals representing trustees, committees, and debtors in similar circumstances.

29. Further, the Debtors spent in excess of $80 million preparing to file the Bankruptcy Cases, and Baker was not appointed as counsel to the TCC until several weeks after the Bankruptcy Cases were filed. The Debtors' cases draw on a number of specialties as evidenced by the Debtors' employment of a number of firms, including firms to handle fire claims and criminal issues. The specialties required for the complex issues presented by the Debtors' wrongdoing and circumstances include constitutional law, white collar criminal practice, issuance of securities, and regulatory issues involving FERC and CPUC, and are at the higher end of Baker's rate structure due to the skill and experience associated with these specialties.

30. To wit, Mr. Rivkin ($1,625) is a nationally known constitutional lawyer in Baker's Washington, D.C. office. Mr. Dettelbach ($1,015) is the former U.S. Attorney for the Northern District of Ohio and is a leader of Baker's white-collar practice. Jerry Bloom ($1,145), based in Los Angeles, California, and Elizabeth Foley ($1,100), based in Washington D.C., are of counsel to Baker in the Debtors' Chapter 11 Cases. Mr. Bloom is one of very few lawyers in the United States who specializes in CPUC matters and is nationally recognized in Chambers as Band One in the field of energy and regulatory matters. Ms. Foley is a nationally recognized constitutional lawyer and a Professor of Law at Florida International University, where she teaches constitutional law. The two specialties in which Mr. Bloom and Ms. Foley practice are essential to representation of the TCC and the rates these specialties command are significantly higher than the rates Baker's other attorneys of Counsel, who practice in less specialized areas, enjoy.

31.     Simply put, Baker has staffed the Debtors' Chapter 11 Cases with its best and brightest lawyers because the complexities of the cases demanded it. Moreover, and as stated above, Baker accomplished its representation of the TCC at blended rates lower than counsel for any other major constituent in the cases.

### ADDITIONAL QUESTIONS FROM THE
### UST GUIDELINES FOR LARGER CHAPTER 11 CASES

32.     Pursuant to Appendix B of the UST Guidelines, Applicant answers the questions below as follows:

33.     Did Applicant agree to any variations from, or alternatives to, Applicants' standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

*ANSWER:  Yes. On an annual basis, Baker typically increases the hourly rates of its personnel to reflect increases in work experience. However, when Baker applied these firmwide increases in January, 2020, Baker carved out an exception for the billing rates applied to this engagement and did not increase the hourly rates of the professionals performing services on behalf of the TCC as a courtesy to the TCC and to the Debtors' estates, freezing the rates of Baker professionals at 2019 levels as a courtesy to the estates.*

34.     If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher than 10% or more, did Applicant discuss the reasons for the variation with the client?

*ANSWER:  The fees sought in Baker's Application fell in line with those budgeted as a whole.  On occasion, fees associated with one particular task code may have exceeded the fees budgeted for that task code.  For other task codes, however, Baker's fees were less than the amount budgeted, bringing the total amount of fees sought by Baker in this Application in line to the fees budgeted for at the inception of this engagement.  As such, the fees sought did not exceed the fees budgeted by 10% or more in the period covered by this Application.*

35.     Have any of the professionals in this fee application varied their hourly rate based on the geographic location of the bankruptcy cases?

32

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    ***ANSWER:*** *No.*

2    36.    Does the fee application include time or fees related to reviewing or revising time

3    records or preparing, reviewing or revising invoices?  (This is limited to work involved in preparing

4    and editing billing records that would not be compensable outside of bankruptcy and does not

5    include reasonable fees for preparing a fee application.)  If so, please quantify by hours and fees.

6    ***ANSWER:***  *Baker reviewed each time entry in the billing records submitted with this*

7    *Application in connection with preparation of the required monthly fee statements for the TCC as*

8    *necessary to confirm tasks were allocated to an appropriate task code by each timekeeper and that*

9    *each task was adequately described as required by the Guidelines and as necessary to facilitate the*

10   *Fee Examiner's evaluation of the reasonableness of the fees requested by this Application, and as*

11   *expressly necessary to preparing interim fee applications.*

12   *On occasion during this review, time entries may have been moved from one task code to*

13   *another task code as appropriate or divided up and apportioned between two or more task codes*[††]

14   *where the time entry clearly reflected work performed that impacted more than one area of Baker's*

15   *representation of the TCC, as necessary to adhere to the projected budget.  Baker estimates that*

16   *approximately eight [8] hours each month for the period covered by this Application were spent*

17   *performing such work. Baker employed fifty-three [53] separate task codes in the Debtors' cases*

18   *and Baker was required to allocate its work among them to draft its fee applications and the*

19   *required narrative descriptions of work performed in each task code.   In a non-bankruptcy*

20   *engagement, extensive task codes usage is seldom employed, and professionals are not required to*

21   *prepare applications to be compensated.  This application does not include time or fees related to*

22   *preparing, reviewing, or revising invoices, beyond confirming that task code usage is appropriate*

23   *and that work is grouped in a manner that permits Baker's professionals to review the descriptions*

24   *of the work performed in each task code as necessary to draft an accurate summary for the fee*

25   *application for the applicable covered period. To date, Baker's fees for preparing its interim fee*

---

26

27   [††]For instance, a time entry reflecting 1.5 hours may have been broken down into smaller increments and spread
between two or more task code categories.  For example, where a task described research performed that could impact

28   both Chapter 11 plan structure and the treatment of particular claims, the 1.5 hour entry may have been apportioned so
that .7 was allocated to Task Code 008 (concerning Chapter 11 Plan/Plan Confirmation) and .8 was allocated to Task
Code 005 (concerning, among other things, claims).

*applications have been extremely reasonable, and this is largely attributable to the attention given each month to the appropriate use of task codes.*

37.    Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

*ANSWER:  As stated above, Baker reviewed each time entry in the Application to confirm tasks were allocated to an appropriate task code by each timekeeper and that each task was adequately described as required by the Guidelines and as necessary to facilitate the Fee Examiner's evaluation of the reasonableness of the fees requested by this Application.  Each of Applicant's timekeepers have been instructed to consider issues of confidentiality contemporaneously with drafting his or her time entries so that a further subsequent review of time records in connection with an assessment of privilege or confidentiality is, for the most part, unnecessary.  Baker's billing records submitted with this Application contain few (if any) redactions, and Baker has submitted unredacted invoices to the Fee Examiner and believes the Fee Examiner possesses sufficient information with which to evaluate the reasonableness of fees charged.  Baker estimates no more than two [2] hours were spent evaluating confidentiality of time entries for this Application Period.*

38.    If this fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

*ANSWER:  The Application contains no rate increases. As stated above, Baker froze its rates at 2019 levels and did not implement rate increases as it typically does in January of each year, as a courtesy to the TCC and the Debtors' estates.*

39.    Pursuant to the UST Guidelines, required exhibits for the Fifth Interim Application Period are attached as:

a.    **Exhibit A** – "Customary and Comparable Compensation Disclosure with Fee Applications"

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

b. **Exhibit B** – "Summary of Timekeepers Included in this Application".

c. **Exhibit C-1** – "Budget"

d. **Exhibit C-2** – "Staffing Plan"

e. **Exhibit D-1** – "Summary of Compensation Requested by Project Category"

f. **Exhibit D-2** –"Summary of Expense Reimbursement Requested by Category"

## AVAILABLE FUNDS

40.     Baker understands that the Debtors have sufficient funds available for the payment of final fees and costs requested herein.

## CONCLUSION

41.     Baker believes that this Application appropriately sets forth the significant matters handled on behalf of the TCC and provides this Court, the UST, the Fee Examiner, the Debtors' creditors, and other interested parties with an insightful overview of the scope of services rendered. Thus, Baker respectfully submits that the fees and expenses sought herein are reasonable and that the services rendered were necessary, effective, efficient and economical.  Accordingly, Baker respectfully requests that this Application for allowance of fees and expenses, on a final basis, be granted in all respects.

WHEREFORE, Baker respectfully seeks entry of an order, essentially in the form as attached **Exhibit H**:

1.     Awarding final allowance of compensation for professional services rendered during the Fifth Interim Application Period in the amount of **$4,088,223.41**, consisting of $3,904,871.00 in reasonable fees incurred and $183,352.41 in actual and necessary expenses.

2.     Awarding final allowance of compensation for professional services rendered during the Final Application Period in the amount of **$59,774,194.88**, consisting of $52,035,799.42 in reasonable fees incurred and $7,738,395.46 in actual and necessary expenses.

3.     Authorizing and directing the Debtors to make prompt payment to Baker in the total amount of **$12,350,382.16,** which is the difference between the amount requested and the amount already paid by the Debtors pursuant to the Interim Compensation Order.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1      4.      Granting such other and further relief as the Court may deem just and proper.

2

3    Dated:   August 28, 2020                    BAKER & HOSTETLER LLP

4                                               By: */s/ Cecily A. Dumas*
                                                Cecily A. Dumas
5                                               Counsel to the Official Committee of Tort Claimants

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

36

## **CERTIFICATION**

I, Cecily A. Dumas, declare as follows:

The following facts are personally known to me, and if called to do so, I could and would competently testify thereto.

1.     I am a partner in the law firm of Baker & Hostetler LLP ("**Baker**").  I submit this certification in support of the *Fifth Interim and Final Application of Baker & Hostetler LLP for Allowance and Payment of Compensation and Reimbursement of Expenses for: (1) the Interim Period June 1, 2020 through July 1, 2020 and (2)  the Final Period February 15, 2019 through July 1, 2020* (the "**Application**").‡‡

2.     I have personally reviewed the information contained in the Application and believe its contents to be true to the best of my knowledge, information and belief.

3.     The compensation and expense reimbursement sought in this Application, to the best of my knowledge, information and belief, after reasonable inquiry, is in conformity with sections 330(a) and 331 of title 11, United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Northern District of California (the "**Local Rules'**), the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, effective February 19, 2014 (the "**Local Guidelines**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines**), and the *Order Pursuant to 11 U.S.C. § § 331 and 105(a) and Fed. R. Bankr. P. 2016 For Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* ("**Interim Compensation Order**") [Docket No. 701], and the revised Fee Examiner Protocol filed on October 24, 2019 (the "**Revised Protocol**") [Docket No. 4473] (collectively, the "**Guidelines**").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

‡‡Capitalized terms not defined have the meanings used in the Application.

1    4.    The compensation and expense reimbursement requested in this Application are

2 billed at rates, in accordance with Baker's practices, no less favorable than those customarily

3 charged by Baker and generally accepted by Baker's clients.

4

5 Dated:  August 28, 2020                    BAKER & HOSTETLER LLP

6                                                   By: */s/ Cecily A. Dumas*

7                                                   Cecily A. Dumas
                                                     Counsel to the Official Committee of Tort Claimants

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Notice Parties**

| | |
|---|---|
| PG&E Corporation<br>c/o Pacific Gas & Electric Company<br>Attn:  Janet Loduca, Esq.<br>77 Beale Street<br>San Francisco, CA 94105 | Keller & Benvenutti LLP<br>Attn:   Tobias S. Keller, Esq.<br>         Jane Kim, Esq.<br>650 California Street, Suite 1900<br>San Francisco, CA 94108 |
| The Office of the United States Trustee for Region 17<br>Attn:   James L. Snyder, Esq.<br>         Timothy Laffredi, Esq.<br>450 Golden Gate Avenue, 5th Floor, Suite #05-0153<br>San Francisco, CA 94102 | Milbank LLP<br>Attn:   Dennis F. Dunne, Esq.<br>         Sam A. Khalil, Esq.<br>55 Hudson Yards<br>New York, NY 10001-2163 |
| Milbank LLP<br>Attn:   Paul S. Aronzon, Esq.<br>         Gregory A. Bray, Esq.<br>         Thomas R. Kreller, Esq.<br>2029 Century Park East, 33rd Floor<br>Los Angeles, CA 90067 | Weil, Gotshal & Manges LLP<br>Attn:  Stephen Karotkin, Esq.<br>Jessica Liou, Esq.<br>Matthew Goren, Esq.<br>767 Fifth Avenue<br>New York, NY 10153-0119 |
| Bruce A. Markell<br>Fee Examiner<br>541 N. Fairbanks Court<br>Suite 2200<br>Chicago, IL 60611-3710 | Scott H. McNutt<br>Attorney for the Fee Examiner<br>324 Warren Road<br>San Mateo, CA 94402 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO