WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel:    (415) 496-6723
Fax:    (415) 636-9251

*Attorneys for Debtors and
Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).* | Case Nos. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>**REORGANIZED DEBTORS' MOTION TO APPROVE SECURITIES ADR AND RELATED PROCEDURES FOR RESOLVING SUBORDINATED SECURITIES CLAIMS**<br><br>Date:    September 22, 2020<br>Time:   10:00 a.m. (Pacific Time)<br>Place:  Video conference<br><br>**Opposition Deadline**: September 15, 2020 at 4:00 pm (Pacific Time) |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

PG&E Corporation ("**HoldCo**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**" or as reorganized pursuant to the Plan,[1] the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"):

(a)     approving the procedures, attached to the Proposed Order as **Exhibit A-1** (the "**Securities Claims Information Procedures**"), and the associated Trading Information Request Form (as defined below), requiring Subordinated Securities Claimants (as defined below) to submit to the Reorganized Debtors by mail or via a user-friendly online portal the trading data and certain other limited and targeted information with respect to the Subordinated Securities Claims necessary to allow the Reorganized Debtors to evaluate the individual Subordinated Securities Claims and to calculate potential damages, if any;

(b)     approving the procedures, attached to the Proposed Order as **Exhibit A-2** (the "**Securities ADR Procedures**"), designed to facilitate the potential settlement of Subordinated Securities Claims (as defined below) without the need for expensive and protracted litigation on the merits, including, without limitation, (i) procedures to allow the Reorganized Debtors and the Subordinated Securities Claimants to exchange settlement offers, and (ii) procedures for both standard and abbreviated mandatory, non-binding mediation of Subordinated Securities Claims, along with approving the form of Abbreviated Mediation Notice and Standard Mediation Notice (each as defined below); and

(c)     approving the procedures, attached to the Proposed Order as **Exhibit A-3** (the "**Securities Omnibus Objection Procedures**," and, together with the Securities Claims Information Procedures and the Securities ADR Procedures, the "**Securities Claims Procedures**"), to allow the Reorganized Debtors to lodge objections on an omnibus basis to Subordinated Securities Claims that are not otherwise settled and/or are procedurally defective.

In support of the Motion, the Reorganized Debtors submit the (i) *Declaration of Michael A. Keable in Support of the Reorganized Debtors' Motion to Approve Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* (the "**Keable Declaration**"), and (ii) *Declaration of Richard W. Slack in Support of the Reorganized Debtors' Motion to Approve Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* (the "**Slack Declaration**"), filed concurrently herewith.

---

[1] Capitalized terms used but not herein defined have the meanings ascribed to such terms in the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8048] (as it may be amended, modified, or supplemented and together which any exhibits or schedules thereto, the "**Plan**").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## **TABLE OF CONTENTS**

I.     Preliminary Statement ..................................................................................................1

II.    Jurisdiction ....................................................................................................................5

III.   Background ....................................................................................................................5

IV.   Overview Of The Securities Claims Procedures ..........................................................8

     A.    The Securities Claims Information Procedures ..................................................8

     B.    The Securities ADR Procedures .........................................................................9

          1.    The Offer Procedures .............................................................................10

          2.    The Securities Mediation Procedures .....................................................10

     C.    Securities Omnibus Objection Procedures .......................................................11

V.    Basis For Relief Requested ..........................................................................................13

     A.    The Securities Claims Procedures are an Efficient Means for Resolving the
          Subordinated Securities Claims .......................................................................13

     B.    Preserving the Reorganized Debtors' Ability to Prioritize Claims in their
          Discretion is Appropriate and Necessary to Achieve Expeditious Resolution
          of Subordinated Securities Claims ...................................................................14

     C.    The Securities Claim Information Procedures Are Narrowly Tailored and
          Appropriate .......................................................................................................15

     D.    The Securities ADR Procedures Are Appropriately Designed to Facilitate the
          Potential Settlement and Resolution of the Subordinated Securities Claims ........17

     E.    The Securities Omnibus Objection Procedures Are Appropriate and Should
          Be Approved ......................................................................................................19

          1.    Modification of Bankruptcy Rule 3007(e)(6) is Appropriate ..................20

          2.    Relief from Bankruptcy Local Rule 3007-1(a) is Also Appropriate .........21

VI.   Notice ...........................................................................................................................21

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Blockbuster Inc.*,
    441 B.R. 239 (Bankr. S.D.N.Y. 2011) ..................................................................14

*Canal Corp. v. Finnman (In re Johnson)*,
    960 F.2d 396 (4th Cir. 1992) ............................................................................19

*In re Chong Sang Tak*,
    No. 2:18-AP-01217-ER, 2019 WL 451225 (Bankr. C.D. Cal. Feb. 4, 2019)..............18

*In re City of Detroit, Mich.*,
    No. 13-53846 (TJT) (Bankr. E.D. Mich. Dec. 24, 2013)....................................14, 18

*In re City of San Bernardino*,
    No. 6:12-bk-28006 (Bankr. C.D. Cal. July 29, 2016)....................................14, 15, 18

*In re Clayton*,
    168 B.R. 700 (Bankr. N.D. Cal. 1994) ................................................................18

*Delphi Corp.*,
    Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Dec. 6, 2006)................................18

*Gentry v. Circuit City Stores, Inc. (In re Circuit City Stores, Inc.)*,
    439 B.R. 652 (E.D. Va. 2010), *aff'd* 668 F.3d 83 (4th Cir. 2012)......................14

*Heath v. Am. Express Travel Related Servs. Co. (In re Heath)*,
    331 B.R. 424 (B.A.P. 9th Cir. 2005) (Montali, *J.*) ............................................16

*In re Lehman Bros. Holding Inc.*,
    Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Sept. 17, 2009)..............................18

*In re Lehman Brothers Holdings Inc.*,
    Case No. 08-13555 (Bankr. S.D.N.Y. Mar. 31, 2010) ......................................20

*McMahan & Co. v. Warehouse Entm't, Inc.*,
    65 F.3d 1044 (2d Cir. 1995)..............................................................................16

*Motors Liquidation Co.*,
    Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Feb. 23, 2010) ........................13, 15, 18

*Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*,
    187 F.3d 439 (4th Cir. 1999) ............................................................................15

*In re Patriot Coal Corporation*,
    Case No. 12-51502 (Bankr. E.D. Mo. Mar. 1, 2013)..........................................21

*In re Sasson*,
    424 F.3d 864 (9th Cir. 2005) ...................................................................................13

*In re Tara Retail Grp., LLC*,
    595 B.R. 215 (Bankr. N.D.W. Va. 2018)....................................................................15

*In re TelexFree, LLC*,
    Case No. 14-40987 (Bankr. D. Mass. Dec. 26, 2017) ................................................21

**Statutes**

11 U.S.C. § 105 .............................................................................................................. *passim*

15 U.S.C. § 77k(e) ..................................................................................................................16

15 U.S.C. § 78u-4(e) ...............................................................................................................16

28 U.S.C. § 157 .........................................................................................................................5

28 U.S.C. § 1334 .......................................................................................................................5

28 U.S.C. § 1408 .......................................................................................................................5

28 U.S.C. § 1409 .......................................................................................................................5

**Other Authorities**

Bankruptcy Local Rule 9040-2(a) ....................................................................................17, 18

Fed. R. Bankr. P. 1015(b) .........................................................................................................5

Fed. R. Bankr. P. 2002 .............................................................................................................21

Fed. R. Bankr. P. 3007 ................................................................................................... *passim*

Bankruptcy Local Rule 5011-1(a) .............................................................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## I. PRELIMINARY STATEMENT

The Reorganized Debtors seek authority from the Court to implement a comprehensive set of procedures to allow the efficient resolution of the outstanding and unresolved Subordinated Debt Claims and Subordinated Equity Claims that are classified under the Plan in Classes 9A (HoldCo Subordinated Debt Claims), 10B (Utility Subordinated Debt Claims), and 10A-II (HoldCo Rescission or Damage Claims) (collectively, the "**Subordinated Securities Claims**," and the holders of Subordinated Securities Claims, the "**Subordinated Securities Claimants**").

To facilitate confirmation of the Plan, the Court previously determined that certain individual holders of potential securities claims should have the benefit of an extended Bar Date. As a result, the Debtors provided Court-approved notice to more than 300,000 current and former securities holders,[2] which resulted in the filing of only approximately 7,000 timely and untimely claims, a substantial majority of which, based on a review of a sampling of claims, have either been asserted in unliquidated amounts or with incomplete trading data. These procedures—which are based on protocols that have previously been adopted by Bankruptcy Courts in other large and complex chapter 11 cases—are designed to use traditional tools of the Bankruptcy Code and bankruptcy practice to resolve proofs of claim more quickly, efficiently, and cost effectively than typical protracted and expensive litigation.

The Securities Claims Procedures will: (i) allow Subordinated Securities Claimants to submit by mail or via a simple online portal the information necessary to allow the Reorganized Debtors to evaluate the Subordinated Securities Claims, calculate the potential asserted damages with respect to each claim, and develop settlement proposals for individual claimants; (ii) allow the parties to exchange settlement offers or engage in standard or abbreviated forms of mediation to resolve many of the Subordinated Securities Claims; and (iii) authorize the Reorganized Debtors to file omnibus objections to Subordinated Securities Claims that are facially or procedurally defective. As discussed in further detail below, these procedures are designed to work together and form a comprehensive and efficient pre-litigation approach to resolve Subordinated Securities Claims.

---

[2] Over 75,000 registered holders and approximately 270,000 beneficial owners through nominees.

More specifically, the Securities Claims Procedures are comprised of the following three procedures, designed to enable the Reorganized Debtors and the holders of Subordinated Securities Claims to resolve asserted claims without the need for expensive and protracted litigation:

1. **Securities Claims Information Procedures**. To allow the Reorganized Debtors to properly assess each of the individual Subordinated Securities Claim and determine the appropriate path forward for each claim under the other Securities Claims Procedures (*e.g.*, settlement offer, mediation, or potential objection), the Reorganized Debtors are requesting that all Subordinated Securities Claimants be required to provide the Reorganized Debtors by mail or via a user-friendly online portal with complete trading data in connection with their asserted Subordinated Securities Claims.

2. **Securities ADR Procedures.** Recognizing that the Subordinated Securities Claims are comprised of different types of claimants and varying amounts of asserted and potential damages, the Reorganized Debtors are proposing three (3) separate mechanisms for potential settlement of Subordinated Securities Claims, each of which is explained in further detail below:

    (a) ***The Offer Procedures***. These procedures will allow the Reorganized Debtors and Subordinated Securities Claimants to exchange settlement offers and counteroffers confidentially and without mediation;

    (b) ***The Abbreviated Mediation Process.*** These are procedures for abbreviated mandatory, non-binding mediation because formal mediation may not be appropriate for all Subordinated Securities Claims, especially those with smaller asserted or potential claim amounts; and

    (c) ***The Standard Mediation Process.*** These are procedures for regular mandatory, non-binding mediation, principally for claimants that have asserted or have larger potential Subordinated Securities Claims.

3. **Securities Omnibus Objection Procedures.** The Securities Omnibus Objection Procedures, which are substantially similar to those already adopted by the Court with respect to claims other than Subordinated Securities Claims, will allow the Reorganized Debtors to lodge objections, on an omnibus basis, to Subordinated Securities Claims that are not otherwise settled and/or are facially or procedurally defective. This process will eliminate the need to potentially file thousands of duplicative individual objections to Subordinated Securities Claims, as well as the associated expense and administrative burden both to the Reorganized Debtors and the Court.

Although the Reorganized Debtors dispute that they or their affiliates violated the federal securities laws, the Reorganized Debtors recognize that resolving the Subordinated Securities Claims through settlement, where possible, is beneficial to both the Reorganized Debtors and Subordinated Securities Claimants. However, the biggest challenge standing between the Reorganized Debtors and potential settlements with individual holders of Subordinated Securities Claims is the lack of

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

complete trading information, which is necessary to assess the potential amount of each Subordinated Securities Claim under the federal securities laws. Without that fundamental information, the Reorganized Debtors are simply unable to mediate or negotiate with individual Subordinated Securities Claimants on an informed basis.

The Securities Claims Information Procedures are designed to address this threshold issue. The Securities Claims Information Procedures are information-gathering protocols whereby each Subordinated Securities Claimant will be required to provide the Reorganized Debtors with the relevant trading history for their individual Subordinated Securities Claims in a standardized form through a plain English, efficiently designed Trading Information Request Form. This information will enable the Reorganized Debtors, where appropriate, to comprehensively fashion settlement proposals in light of, among other things, the potential claim amounts for each individual Subordinated Securities Claimant, as well as the Subordinated Securities Claimants as a whole. The information requested by the Trading Information Request Form is largely the same information previously requested in the *Rescission or Damage Claim Proof of Claim Form* approved by this Court in connection with the Extended Securities Bar Date Order [Dkt. No. 5493-3], in response to which it appears most claimants provided little or incomplete information. The Securities Claims Information Procedures, thus also serve the dual benefit of allowing Subordinated Securities Claimants another opportunity to provide the required information—which will be collected in a streamlined, standardized and confidential manner.

Once the Reorganized Debtors have received and evaluated this information, they can make an informed decision as to how best to attempt to resolve these claims without the need for extensive proceedings under the Securities ADR Procedures. This may involve a simple exchange of confidential settlement offers or participation in one of the two forms of mandatory, non-binding, and confidential mediation depending on, among other factors, the size and complexity of the individual claim, whether the claimant is a financial institution or an individual, and the gap between offers and counteroffers in settlement exchanges. Like similar procedures used by other Bankruptcy Courts to resolve claims in other large and complex bankruptcies, the Securities ADR Procedures

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

are designed to facilitate prompt settlements with individual claimants as opposed to resolution of these claims on the merits.

Finally, the Securities Omnibus Objection Procedures will permit the Reorganized Debtors to eliminate certain facially and procedurally defective claims through omnibus objections (each, an "**Omnibus Objection**"). For example, the Reorganized Debtors may object to all Subordinated Securities Claims that fall outside the purview of the Court's Extended Securities Bar Date Order (as defined below), or where proofs of claim were not timely filed.

The Securities Claims Procedures expressly exclude certain Subordinated Securities Claimants for whom these procedures are wholly unnecessary and inapplicable because those claimants are named plaintiffs already pursing separate litigation in federal court and are involved in separate mediation and settlement discussions with the Reorganized Debtors.[3] The Reorganized Debtors expect those separate negotiations with these Subordinated Securities Claimants, who represent no claimants in these Chapter 11 Cases other than themselves, will continue outside of these procedures.

Absent a settlement with a claimant, the final resolution of that claimant's Subordinated Securities Claim on the merits could take years, including potential appeals, and require significant discovery and expense. The Reorganized Debtors expect that these Securities Claims Procedures, which are based on typical tools utilized in other chapter 11 cases, will be successful in providing claimants the opportunity to efficiently resolve the Subordinated Securities Claims without the need for expensive litigation or for claimants to share any recoveries with litigation counsel.

These procedures are designed to avoid the time and expense of resolution of the Subordinated Securities Claims on the merits. Depending upon the number and amount of unresolved claims, if any, after implementation of these procedures, the Reorganized Debtors will then propose an appropriate method to resolve any remaining claims in an efficient and coordinated manner.

---

[3] The Securities Claims Procedures therefore exclude claims filed by: (i) the Public Employees Retirement Association of New Mexico ("**PERA**"); (ii) York County on behalf of County of York Retirement Fund ("**York County**"), (iii) City of Warren Police and Fire Retirement System ("**City of Warren**"), and (iv) Mid-Jersey Trucking Industry & Local No. 701 Pension Fund ("**Mid-Jersey**").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## II.   JURISDICTION

This Court has jurisdiction to consider these issues pursuant to 28 U.S.C. §§ 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**").  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.   BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced voluntary cases for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California.  Prior to the Effective Date of the Plan, the Debtors continued to operate their businesses and manage their properties during the Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**").

On July 1, 2019, the Court entered an Order [Dkt. No. 2806] establishing October 21, 2019 at 5:00 p.m. (Pacific Time) (the "**Original Bar Date**") as the deadline for holders of certain claims against the Debtors to file proofs of claim in respect thereof.

On December 9, 2019—more than five months after the Original Bar Date was established, and nearly two months after it had passed—certain claimants[4] filed a *Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim* [Dkt. No. 5042] (the "**7023 Motion**").[5]  In the 7023 Motion, the

---

[4] Prior to the Petition Date, PERA and certain other claimants (collectively, the "**Securities Plaintiffs**") were pursuing claims against the Debtors, as well as various of their officers, directors, and underwriters under Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities-Exchange Act of 1934 in the United States District Court for the Northern District of California, which were later consolidated (as consolidated, the "**Securities Litigation**").  *See* Case No. 18-03509 (N.D. Cal.) [Dkt. No. 117].  As of today, no class had been certified in the Securities Litigation, and no class notice has been sent to absent putative class members in the Securities Litigation.  As a result, the absent class members likely have ***not*** received, in connection with that action, the complaint brought by PERA.

[5] Both the Debtors and the TCC opposed the 7023 Motion.  *See* Dkt. Nos. 5369 and 5373.

Securities Plaintiffs asked this Court to treat their proofs of claim as class proofs of claim even though no class had been certified. *See id.*

On February 27, 2020, following supplemental briefing, the Court entered the *Order (i) Denying Securities Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim and (ii) Extending Bar Date for Certain Holders of Securities Rescission or Damages* [Dkt. No. 5943] (the "**Extended Securities Bar Date Order**"), which set midnight (Pacific Time) on April 16, 2020 (the "**Extended Securities Bar Date**") as the deadline to file proofs of claim (each, a "**Rescission or Damage Proof of Claim**") "solely with respect to those persons or entities . . . that purchased or acquired the Debtors' publicly traded debt and/or equity securities . . . during the period from April 29, 2015 through November 15, 2018, inclusive [(the "**Subject Period**")], and who may have claims under the securities laws against the Debtors for rescission or damages." *Id.* ¶ 2.

Pursuant to the Extended Securities Bar Date Order, the Debtors, through their claims and noticing agent, Prime Clerk LLC ("**Prime Clerk**"), mailed (i) a Rescission or Damage Proof of Claim Form, and (ii) the Rescission or Damage Claim Bar Date Notice (collectively, the "**Rescission or Damage Claim Bar Date Materials**") to the 75,089 parties identified by EQ Shareowner Services as registered holders of the Debtors' equity securities during the Subject Period. *See Declaration of Christina F. Pullo in Support of Debtors' Omnibus Response to Motions to Enlarge Time to File Rescission or Damage Claim Proof of Claim Forms* ¶ 3 [Dkt. No. 6936 (the "**Pullo Decl.**"). In addition, Prime Clerk, on behalf of the Debtors, served the Rescission or Damage Claim Bar Date Materials on approximately 795 banks, brokers, and financial institutions (or their agents) (collectively, the "**Nominees**"), whose clients were underlying beneficial holders of PG&E securities. *See id.* ¶ 4.

The Extended Securities Bar Date Order required the Nominees to either (i) request from Prime Clerk sufficient copies of the Rescission or Damage Claim Bar Date Materials so that the Nominees could forward the materials to their beneficial owners, or (ii) provide Prime Clerk with a list of names and addresses of the beneficial holders so that Prime Clerk could mail the materials directly. *See* Extended Bar Date Order [Dkt. No. 5943] ¶ 6(a). Pursuant to the Nominees' requests, Prime Clerk mailed approximately 270,000 printed copies of the Rescission or Damage Claim Bar

Date Materials, either to various beneficial owners identified by Nominees, or directly to the Nominees for the Nominees to distribute to their beneficial owners. *See* Pullo Decl. ¶¶ 6–7.

On June 20, 2020, this Court entered the Order confirming the Plan [Dkt. No. 8053] (the "**Confirmation Order**"). The Plan became effective on July 1, 2020 [Dkt. No. 8252] (the "**Effective Date**"). Pursuant to the Plan, the Reorganized Debtors may object to Claims until the later of (i) one-hundred and eighty (180) days after the Effective Date (*e.g.*, December 28, 2020) and (ii) such later date as may be fixed by the Bankruptcy Court for cause shown. *See* Plan § 7.1. The Plan further vests the Reorganized Debtors with the discretion and authority to compromise, settle, otherwise resolve, or withdraw any objections to Disputed Claims and to compromise, settle, or otherwise resolve Disputed Claims. *See* Plan § 7.2.

As set forth in the Keable Declaration, the proofs of claim filed by Subordinated Securities Claimants do not contain all of the trading information necessary to allow the calculation of potential damages under the federal securities laws. For example, at least 250 claimants failed to provide information demonstrating the claimant's specific holdings as of certain dates, as required by the *Rescission or Damage Claim Proof of Claim Form*, and at least 500 other claimants failed to provide any transactional-level data. *See* Keable Decl. ¶¶ 8, 13; *see also infra* § V.C. Without complete trading information, the Reorganized Debtors are unable to evaluate the Subordinated Securities Claims and, therefore, cannot develop reasonable settlement proposals for claimants (which the Reorganized Debtors need to be able to justify to their insurance carriers). In addition, with respect to Subordinated Debt Claimants, the Reorganized Debtors are also unable to calculate potential damage amounts, if any, because the statutory formula under Section 11 of the Securities Act requires information regarding a claimant's Subordinated Debt holdings beyond the Subject Period, which information was generally not provided with the proofs of claim. Keable Decl. ¶ 11.

On June 3, 2020, the Debtors filed a motion [Dkt. No. 7758] (the "**Omnibus Claims Objection Procedure Motion**") seeking approval of omnibus claims objection procedures for certain claims other than Subordinated Securities Claims. On June 30, 2020, the Court entered an Order approving the Omnibus Claims Objection Procedures Motion. *See Order Approving (A) Procedures for Filing Omnibus Objections to Claims and (B) the Form and Manner of the Notice of*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Omnibus Objections* [Dkt. No. 8228] (the "**Omnibus Claims Objection Procedures Order**"). Consistent with the proposed order submitted by the Reorganized Debtors, the Court expressly exempted the Subordinated Securities Claims from those procedures and further provided that "Omnibus claims resolution and/or objection procedures with respect to the Subordinated Securities Claims, if any, shall be filed by the Debtors or Reorganized Debtors, as applicable, pursuant to a separate motion on appropriate notice." *See id.* ¶ 5.

## IV.     OVERVIEW OF THE SECURITIES CLAIMS PROCEDURES[6]

The Securities Claims Procedures consist of three related sets of procedures that will (i) allow the Reorganized Debtors to obtain necessary trading information confidentially through the Securities Claims Information Procedures and expedite the consensual claims resolution process, and (ii) create opportunities to resolve claims prior to litigation on the merits, including allowing individual claimants the opportunity to realize prompt settlements on their claims through the Securities ADR Procedures and the Securities Omnibus Objection Procedures.

### A.     The Securities Claims Information Procedures

Critical to any successful ADR process is sufficient information for parties to assess potential damages.  The Subordinated Securities Claimants have not provided sufficient information for the Reorganized Debtors to calculate potential damages for individual claims.

To address this lack of necessary trading information, the Securities Claims Information Procedures allow the Reorganized Debtors to send out to each claimant a Trading Information Request Form, substantially in the form attached as **Annex 1** to the Proposed Order (the "**Trading Information Request Form**").[7]  The Trading Information Request Form directs the recipient to an online portal and provides simple instructions for uploading the required information.  Because the

---

[6] The description of the Securities Claims Procedures contained herein is intended to be a summary for the convenience of the Court and parties in interest and is not intended to modify any of the Securities Claims Procedures set forth more fully in the Proposed Order.  As such, the descriptions of the Securities Claims Procedures provided herein are qualified in all respects by the terms of the Securities Claims Procedures as set forth in the Proposed Order.

[7] Although the Reorganized Debtors anticipate that the Trading Information Request Form will be substantially in the form as Annex 1, the Reorganized Debtors reserve the right to make non-substantive modifications to the Trading Information Request Form, as necessary or appropriate, consistent with the terms of the Securities Claims Procedures approved by the Court.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

requisite information varies by security type—*i.e.*, common stock, preferred shares, debt securities, options, etc.—the portal will be tailored to address those differences. *See* Proposed Order, Ex. A-1 § I.B.

Importantly, the information sought is limited and targeted. None of the requests go to the underlying merits of the proofs of claim. The Securities Claims Information Procedures are, therefore, designed to pave the way towards consensual resolution of the Subordinated Securities Claims promptly and in a less expensive manner than if the parties were to litigate the merits.

Upon entry of the Proposed Order implementing the Securities Claims Procedures, including the Securities Claims Information Procedures, the Reorganized Debtors will promptly begin mailing the Trading Information Request Forms to Subordinated Securities Claimants at the address listed on their respective Rescission or Damage Proofs of Claim, as well as to their attorney of record, if any. *See id.* § I.A. Subordinated Securities Claimants will then have twenty-eight (28) days to return a completed Trading Information Request Form either by mail or via the online portal (the "**Information Deadline**"). *See id.* If the Trading Information Request Form is not returned on or before the Information Deadline, the Reorganized Debtors will send a reminder (the "**Information Reminder**") to the Subordinated Securities Claimant, providing that individual or entity another fourteen (14) days to return a completed Information Request (the "**Reminder Deadline**"). *See id.* § I.D. The Reorganized Debtors will send the Information Reminder to the e-mail address listed on the Rescission or Damage Proof of Claim, but if no e-mail address is listed, the Reorganized Debtors will send the Information Reminder by mail. *See id.* Any Subordinated Securities Claim filed by a Subordinated Securities Claimant who fails to timely return a Trading Information Request Form by the Reminder Deadline in accordance with the Subordinated Securities Information Procedures shall be subject to a formal objection seeking disallowance in accordance with the Securities Omnibus Objection Procedures.

### B.    The Securities ADR Procedures

Following the receipt of trading information through the Securities Claim Information Procedures, the Reorganized Debtors will seek, where appropriate, to resolve claims through the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

Securities ADR Procedures, which are comprised of: (i) the Offer Procedures, and (ii) the Securities Mediation Procedures.[8]

### 1. The Offer Procedures

The Offer Procedures will allow the Reorganized Debtors and the Subordinated Securities Claimants to exchange settlement offers without the need for mediation or litigation on the merits. To facilitate expedient, consensual resolution of the Subordinated Securities Claims, the Reorganized Debtors expect to employ the Offer Procedures with the majority of Subordinated Securities Claimants. Claimants who receive and accept a confidential offer may immediately receive a settlement amount. The Offer Procedures provide that Subordinated Securities Claimants may also provide a counteroffer, which the Reorganized Debtors may accept, reject, or counter in turn. This process will continue until the parties either reach an agreement or the Offer Procedures are terminated without settlement, in which case the Reorganized Debtors may (i) submit the claim to nonbinding, mandatory mediation, pursuant to the Securities Mediation Procedures, or (ii) seek to resolve the claim in the claims reconciliation and objection process before the Bankruptcy Court.

### 2. The Securities Mediation Procedures

The Securities Mediation Procedures provide a more comprehensive process for Subordinated Securities Claims where the Offer Procedures have not been successful or where the magnitude of the claim asserted may warrant a more formal process. Each Subordinated Securities Claimant designated for the Securities Mediation Procedures will receive a notice informing the Claimant that they have been designated for either the Abbreviated Mediation Process or the Standard Mediation Process.[9]

---

[8] The Offer Procedures are set forth in full in section II of Exhibit A-2 to the Proposed Order. Each of the proposed Securities Mediation Procedures are set forth in full in section III of Exhibit A-2 to the Proposed Order.

[9] The forms of the Abbreviated Mediation Notice and Standard Mediation Notice are attached as **Annex 2** and **Annex 3**, respectively, to the Proposed Order. Although the Reorganized Debtors anticipate that the Abbreviated and Standard Mediation Notices will be substantially in those forms, the Reorganized Debtors reserve the right to make non-substantive modifications as necessary or appropriate, consistent with the terms of the Securities Claims Procedures approved by the Court.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The Abbreviated Mediation Process is designed to provide the opportunity to mediate without the burden of preparing lengthy mediation submissions and marshalling evidence to support legal and factual arguments. Thus, it provides the parties with the opportunity to resolve their claims with the help of an experienced and independent Court-approved mediator (paid for by the Reorganized Debtors) without the expense of a typical standard mediation, including the hiring of counsel. The Standard Mediation Process will provide a more formal process, typically for institutional investors and larger asserted or potential claims.

In both processes, the Reorganized Debtors will pay the mediator's fees and expenses, communications and submissions will remain confidential, and the parties will bear their own costs of participation. In determining whether to refer a particular Subordinated Securities Claimant to the Abbreviated or Standard Mediation Process, the Reorganized Debtors may consider, among other factors: (i) the asserted amount or the potential amount of the Subordinated Securities Claim based on complete trading records provided by claimant; (ii) the nature and amount of the Subordinated Securities Claimant's trading; and (iii) whether the claimant is an individual or a sophisticated investor.

### C. Securities Omnibus Objection Procedures

Prior to, or in parallel with, or after implementation of the Securities ADR Procedures, the Reorganized Debtors may seek to resolve certain Subordinated Securities Claims through the Securities Omnibus Objection Procedures.[10] The Securities Omnibus Objection Procedures, which closely track the procedures already approved by the Court in the Omnibus Claims Objection Procedures Order, would, among other things: (i) authorize the Reorganized Debtors to file Omnibus Objections not only on the grounds itemized in Bankruptcy Rule 3007(d),[11] but also on the additional

---

[10] The proposed Securities Omnibus Objection Procedures are set forth in full on Exhibit A-3 to the Proposed Order.

[11] The eight grounds for omnibus objection to claims specified in Bankruptcy Rule 3007(d) are: (1) they duplicate other claims; (2) they have been filed in the wrong case; (3) they have been amended by subsequently filed proofs of claim; (4) they were not timely filed; (5) they have been satisfied or released during the case in accordance with the Code, applicable rules, or a court order; (6) they were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim because of the noncompliance; (7) they are interests,

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

common grounds set forth herein that are applicable to the Subordinated Securities Claims; (ii) authorize and approve procedural and formal aspects of Omnibus Objections that augment, supplement, or modify what is specified in Bankruptcy Rule 3007(e); (iii) relieve the Reorganized Debtors of the obligation under Bankruptcy Local Rule 3007-1(a) to file a copy of each proof of claim that is the subject of an Omnibus Objection; and (iv) approve the form and manner of notice of each such Omnibus Objection.

The Securities Omnibus Objection Procedures will eliminate the filing of potentially thousands of duplicative individual objections to Rescission or Damage Proofs of Claim, as well as the associated expense, administrative burden, and docket clutter. At the same time, the Securities Omnibus Objection Procedures are designed to: (i) provide to Subordinated Securities Claimants a guide to the claims objection process that clearly describes the form and manner of Securities Omnibus Objections and the process by which Subordinated Securities Claimants must file and serve responses thereto; and (ii) ensure that all Subordinated Securities Claimants are given sufficient information to navigate the claims objection process effectively and otherwise preserve and protect the rights they are afforded under the Bankruptcy Code and Bankruptcy Rules.

The primary difference between the Securities Omnibus Objection Procedures and those already approved by the Court in these Chapter 11 Cases is that the Reorganized Debtors have specifically tailored the list of potential additional grounds for omnibus objections to the Subordinated Securities Claims. *See* Securities Omnibus Objection Procedures § I.C. In addition to the grounds identified in Bankruptcy Rule 3007(d), the Reorganized Debtors are requesting authority to object to Subordinated Securities Claims on the following bases:

  i. **Outside the Subject Period:** Certain Subordinated Securities Claimants filed claims based on purchases of securities outside of the Subject Period set forth in the Extended Bar Date Order.

  ii. **Liquidation of Position Prior to a "Corrective Disclosure":** Certain Subordinated Securities Claimants suffered no alleged harm where a Subordinated Securities Claimant sold his or her entire positions before any alleged "corrective disclosure" – in other words, the claimant both bought and sold securities at allegedly inflated prices.

---

rather than claims; or (8) they assert priority in an amount that exceeds the maximum amount under section 507 of the Code.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

iii.     **Failure to Comply with Securities Claim Information Procedures:** Those Subordinated Securities Claimants who failed to timely submit a properly completed Trading Information Request Form or otherwise failed to comply with the Securities Claim Information Procedures, including after receiving a Reminder Notice.

iv.     **Unauthorized Bulk Claims:** Certain claims were not filed by individual claimants as contemplated by the Extended Securities Bar Date Order, but instead by third parties, typically Nominees, seeking to file on behalf of multiple individuals even though these Nominees received notice of the Original Bar Date and could have filed any such bulk claim, if appropriate, in the original notice period.

v.     **Otherwise Objectionable:** Certain Subordinated Securities Claims are objectionable on some other common basis under applicable bankruptcy or non-bankruptcy law, including failure to file timely claims by the Extended Securities Bar Date and statute of limitations defects.

The Securities Omnibus Objection Procedures provide Subordinated Securities Claimants with more than sufficient time to respond to Omnibus Objections. Under these procedures, the Reorganized Debtors are required to serve the Omnibus Objection on the individual Subordinated Securities Claimant by mail, not less than forty-two (42) days before the date set for hearing of the Omnibus Objection.[12] *See* Proposed Order, Ex. A-3 § III.B.1.

## V.    BASIS FOR RELIEF REQUESTED

This Court has the authority to implement the Securities Claims Procedures pursuant to section 105 of the Bankruptcy Code because these procedures are "necessary or appropriate" to ensure that these Chapter 11 Cases are "handled expeditiously and economically." *See* 11 U.S.C. § 105(a), (d)(2); *see, e.g.*, Slack Decl., Ex. 1 (*Motors Liquidation Co.*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Feb. 23, 2010) [Dkt. No. 5037])) (implementing ADR procedures involving mandatory, non-binding mediation, pursuant to section 105 of the Bankruptcy Code); *see also In re Sasson*, 424 F.3d 864, 874 (9th Cir. 2005) ("[T]he bankruptcy court may use its inherent equitable power to fashion relief, so long as the remedy is consistent with the objectives of the Bankruptcy Code.") (citation omitted).

### A.    The Securities Claims Procedures are an Efficient Means for Resolving the Subordinated Securities Claims

Through the Securities Claims Procedures, the Reorganized Debtors are proposing comprehensive procedures that will promote confidential and consensual resolutions between the

---

[12] In contrast, the Omnibus Claims Objection Procedures Order provides for thirty-seven (37) days. *See* Omnibus Claims Objection Procedures Order ¶ 2.F.

Reorganized Debtors and individual Subordinated Securities Claimants without the need to engage in protracted and expensive litigation on the merits of the claims. The Securities Claims Procedures allow for individualized resolution of claims using traditional bankruptcy procedures, which courts have recognized provide significant advantages over expensive and lengthy collective resolution of such claims, either through class action litigation or similar collective means. *See Gentry v. Circuit City Stores, Inc. (In re Circuit City Stores, Inc.)*, 439 B.R. 652, 658 (E.D. Va. 2010), *aff'd* 668 F.3d 83, 93–94 (4th Cir. 2012) ("The superiority and efficiency of the bankruptcy claims resolution process over class litigation is well established."). One important advantage for Subordinated Securities Claimants of the traditional bankruptcy proof of claim process is the ability for these claimants to resolve claims without the need to pay lawyers or share recoveries with lawyers. *See In re Blockbuster Inc.*, 441 B.R. 239, 241 (Bankr. S.D.N.Y. 2011) ("[T]he superiority of the class action vanishes when the 'other available method' is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost.").

Thus, these procedures allow the Reorganized Debtors and individual Subordinated Securities Claimants to negotiate and agree on potentially larger and more prompt settlements than resolution by collective means. Moreover, the Securities Omnibus Objection Procedures provide an additional advantage over traditional litigation by allowing the Reorganized Debtors to identify Subordinated Securities Claims that should not have been filed or are otherwise facially or procedurally defective. Addressing common issues on an omnibus basis will allow the Bankruptcy Court to efficiently administer its docket while reducing claims that need to be addressed by other procedures or on the merits.

### B. Preserving the Reorganized Debtors' Ability to Prioritize Claims in their Discretion is Appropriate and Necessary to Achieve Expeditious Resolution of Subordinated Securities Claims

Courts in similar cases frequently approve ADR procedures that provide debtors the discretion to determine how and in what order to resolve claims. *See, e.g.*, Slack Decl., Ex. 2 (*In re City of San Bernardino*, No. 6:12-bk-28006 (Bankr. C.D. Cal. July 29, 2016) [Dkt. No. 1882-4]) ("Given the large number of Disputed Claims, the City shall have the discretion to prioritize the initiation of the mediations."); *id.*, Ex. 3 (*In re City of Detroit, Mich.*, No. 13-53846 (TJT) (Bankr.

E.D. Mich. Dec. 24, 2013) [Dkt. No. 2302]) (approving ADR procedures that allowed the City "to prioritize the initiation of Case Evaluation proceedings" in light of "the large number of actual and potential prepetition litigation claims asserted . . . against the City").

Moreover, reserving these decisions to the discretion of the Reorganized Debtors "maintains the integrity of the bankruptcy proceeding and ensures that individual creditors cannot hijack the bankruptcy process." *See Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 442 (4th Cir. 1999). Were it otherwise, there would be a "rush to judgment whose organizing principle could only be first-come-first-served." *See id.* (quoting *American Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1274 (5th Cir.1983)); *see also In re Tara Retail Grp., LLC*, 595 B.R. 215, 224 (Bankr. N.D.W. Va. 2018) ("To avoid hijacking a [right] that belongs to a bankruptcy estate, the general rule is that a creditor may assert rights that are personal to the creditor but not matters that are generalized for the bankruptcy estate.") (citing cases).

Here, the Subordinated Securities Claims are large in number and diverse in complexity, and the Reorganized Debtors should be afforded the typical flexibility to address each Subordinated Securities Claim at the appropriate time and in the most appropriate manner based on the characteristics of each claim and claimant.

## C. The Securities Claim Information Procedures Are Narrowly Tailored and Appropriate

Implementing the Securities Claims Information Procedures is an appropriate exercise of this Court's discretion under section 105 of the Bankruptcy Code. As discussed above, the Securities Claims Information Procedures are a simple information gathering protocol through which each Subordinated Securities Claimant will provide, through an efficiently designed Trading Information Request Form, relevant trading history in a standardized manner, most of which already has been approved by this Court. Such procedures are frequently approved by Bankruptcy Courts as part of claims resolution procedures. *See, e.g.*, Slack Decl., Ex. 1 (*Motors Liquidation Co.*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Feb. 23, 2010) [Dkt. No. 5037]), Ex. A § II.A.5(c) (approving ADR procedures that provided for limited discovery); *id.*, Ex. 2 (*In re City of San Bernardino*, No. 6:12-bk-28006 (Bankr. C.D. Cal. July 29, 2016) [Dkt. No. 1882-4]) § II.A.4(d) (same).

Likewise, the Securities Claims Information Procedures are entirely appropriate because, as this Court has recognized, the majority of courts "agree . . . that creditors have an obligation to respond to formal or informal requests for information." *See Heath v. Am. Express Travel Related Servs. Co. (In re Heath)*, 331 B.R. 424, 436 (B.A.P. 9th Cir. 2005) (Montali, *J.*). The Securities Claims Information Procedures are particularly appropriate in these circumstances where complete trading information is necessary to assess the potential damage amount that each Subordinated Securities Claimant would be asserting under the federal securities laws.

For example, the Private Securities Litigation Reform Act imposes a "nominal loss" cap on damages during a so-called 90-day "bounce back" period following a corrective disclosure and further limits damages if the security is sold or repurchased during this period. *See* 15 U.S.C. § 78u-4(e). Thus, Subordinated Equity Claimants will be requested to provide information through the 90-day "bounce back" period to allow Debtors to assess whether this bounce-back period is applicable and its impact on damages. Subordinated Debt Claims, on the other hand, must be valued pursuant to Section 11 of the Securities Act of 1933, which requires trading data through the Subject Period and up until the time of sale or judgment. *See* 15 U.S.C. § 77k(e); *see also McMahan & Co. v. Warehouse Entm't, Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995) ("The plain language of section 11(e) prescribes the method of calculating damages . . . and the court ***must*** apply that method ***in every case***.") (emphasis added). Thus, the Subordinated Debt Claimants will be asked to provide trading data through and including the Effective Date.

As discussed above, the Reorganized Debtors currently are unable to assess the potential damages associated with each individual Subordinated Securities Claim, as they do not have complete trading information, much of which should have already been, but as explained in the accompanying Keable Declaration was not, provided with the proof of claim submissions. Without this information, the Reorganized Debtors cannot reasonably develop settlement offers for any Subordinated Securities Claimant.

The Reorganized Debtors' review of a substantial sampling of the Subordinated Securities Claims also reveals a number of additional deficiencies with how Subordinated Securities Claimants

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

have provided their trading data as part of the Rescission or Damage Proof of Claim. As set forth in the Keable Declaration:

- Because a significant number of the Subordinated Debt and Equity Claims analyzed report non-zero balances held on November 15, 2018, the Reorganized Debtors do not have sufficient trading information after the Subject Period to calculate individualized potential damages for a substantial number of those claims under the applicable statutory damage methodologies (*see* Keable Decl. ¶¶ 11–12);

- Over 500 Subordinated Securities Claims provided only summary-level information—*i.e.*, they failed to provide purchase and sale transactions data, as required by the Rescission or Damage Proof of Claim Form (*see* Keable Decl. ¶ 8); and

- Over 250 Subordinated Securities Claims failed to provide holdings balances as of April 29, 2015 and/or November 15, 2018, as required by the Rescission or Damage Proof of Claim Form (*see* Keable Decl. ¶ 13);

To properly resolve the Subordinated Securities Claims in an efficient and cost-effective manner, Subordinated Securities Claimants should be required to provide the trading information necessary to allow the Reorganized Debtors to evaluate the amount of potential damages for each individual claimant – information which was largely supposed to be included with the filed Rescission or Damage Proofs of Claim. Of course, the Reorganized Debtors do not concede that there is any liability or damages and, as stated, contest and deny any liability or damages with respect to the Subordinated Securities Claims.

Accordingly, the Securities Claims Information Procedures are both necessary and appropriate to ensure the expeditious and economic resolution of Subordinated Securities Claims.

### D. The Securities ADR Procedures Are Appropriately Designed to Facilitate the Potential Settlement and Resolution of the Subordinated Securities Claims

The Securities ADR Procedures are appropriately designed to expeditiously resolve the individual Subordinated Securities Claims without first expending significant amounts on litigating the merits of the claims. Alternative methods of dispute resolution, such as those embodied in the Securities ADR Procedures, facilitate the expeditious and economic handling of chapter 11 cases because, as noted in the Local Bankruptcy Rules governing this District's Bankruptcy Dispute Resolution Program, "[a] Court authorized dispute resolution program . . . offers an opportunity to

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

parties to settle legal disputes promptly and less expensively, to their mutual satisfaction." *See* Bankr. L. R. 9040-2(a).

Courts have recognized that "[m]ediation is a crucial component of the adjudicative process" that furthers "[t]he public's interest in expeditious resolution of litigation." *See In re Chong Sang Tak*, No. 2:18-AP-01217-ER, 2019 WL 451225, at \*2 (Bankr. C.D. Cal. Feb. 4, 2019); *see also In re Clayton*, 168 B.R. 700, 705 (Bankr. N.D. Cal. 1994) (noting "the strong national policy interest in favor of alternative dispute resolution") (citing *Southland Corp. v. Keating*, 465 U.S. 1 (1984), and *Moses H. Cone Hosp. v. Mercury Constr.*, 460 U.S. 1, 23–25 (1983)). Indeed, this Court has already recognized the benefits of alternative dispute resolution procedures by ordering mediation in these Chapter 11 Cases. *See Order Appointing Mediator* [Dkt. No. 4499] (Oct. 28, 2019); *Order for Further Mediation* [Dkt. No. 5810] (Feb. 18, 2020).

For these reasons, among others, courts in this and other Circuits have implemented similar alternative dispute resolution procedures in complex bankruptcy cases pursuant to section 105 of the Bankruptcy Code. *See* Slack Decl., Ex. 1 (*Motors Liquidation Co.*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Feb. 23, 2010) [Dkt. No. 5037]) (implementing mandatory, non-binding mediation procedures for designated claims); *id.*, Ex. 2 (*In re City of San Bernardino, California*, No. 6:12-bk-28006 (MJ) (Bankr. C.D. Cal. July 29, 2016) [Dkt. No. 1882-4]); *id.*, Ex. 3 (*In re City of Detroit, Michigan*, No. 13-53846 (SWR) (Bankr. E.D. Mich. Dec. 24, 2013) [Dkt. No. 2302]) (approving alternative dispute resolution procedures to promote the liquidation of certain prepetition claims); *id.*, *id.*, Ex. 4 (*In re Lehman Bros. Holding Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Sept. 17, 2009) [Dkt. No. 5207]) (implementing ADR procedures, which included mandatory, non-binding mediation).[13]

As was the case in these other complex chapter 11 cases, approval of the Securities ADR Procedures here will promote the expeditious resolution of the Subordinated Securities Claims

---

[13] *See also Delphi Corp.*, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Dec. 6, 2006) [Dkt. No. 6089] (implementing mandatory, nonbinding mediation procedures for all unresolved claims).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

without the Reorganized Debtors and Subordinated Securities Claimants expending significant amounts on litigating the merits of the claims and, accordingly, they should be approved.

### E.   The Securities Omnibus Objection Procedures Are Appropriate and Should Be Approved

Approving the Securities Objection Procedures is also an appropriate exercise of this Court's discretion and authority under section 105 of the Bankruptcy Code, as well as Bankruptcy Rule 3007. Despite Bankruptcy Rule 3007(c)'s general prohibition of joining more than one proof of claim to a single objection, Bankruptcy Rule 3007(d) identifies eight specific grounds for which omnibus objections to claims are allowed. Therefore, the Bankruptcy Rules recognize that the efficiency and economy of administration an omnibus claim objection process can provide is desirable in resolving objections to proofs of claim. These Omnibus Objection Procedures are modeled after and consistent with those already approved by the Court in its Omnibus Claims Objection Procedures Order.

The Reorganized Debtors are not limited to the eight specific grounds articulated in Bankruptcy Rule 3007(d). The introductory clause to Rule 3007(c)—"[u]nless otherwise ordered by the court"—recognizes that there are circumstances beyond those described in Rule 3007(d), in which the Court should have discretion to authorize omnibus objections. *Id*. A bankruptcy court may also rely on its general equitable powers to grant the relief requested herein under section 105(a) of the Bankruptcy Code, which empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [the Bankruptcy Code]." 11 U.S.C. § 105(a); *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 404 (4th Cir. 1992) ("[T]he allowance or disallowance of a claim in bankruptcy is a matter of federal law left to the bankruptcy court's exercise of its equitable powers."). Indeed, this Court recently approved procedures permitting omnibus objections on grounds not specifically authorized by Bankruptcy Rule 3007(d). *See* Omnibus Claims Objection Procedures Order.

In light of the number of Subordinated Securities Claims that have been filed in these Chapter 11 Cases, the Reorganized Debtors respectfully submit that approval of the proposed Securities Omnibus Objection Procedures is an appropriate exercise of this Court's discretion under Bankruptcy Rule 3007(c) and its equitable powers under section 105(a) of the Bankruptcy Code.

The Securities Omnibus Objection Procedures will benefit the Reorganized Debtors, their creditors, and other parties in interest by allowing the Reorganized Debtors to minimize administrative burdens and reduce the costs associated with preparing, filing, and litigating myriad separate individual objections on the same grounds applicable to a great many proofs of claim. Requiring the filing of individual objections would result in significant expense without providing any meaningful benefit, particularly in light of the Reorganized Debtors' proposal to provide individualized, personalized notice to each Subordinated Securities Claimant. In addition, the filing of multiple individualized claims objections by the Reorganized Debtors would materially delay the claims resolution process and the Reorganized Debtors' efforts to administer these Chapter 11 Cases so they can make payments under the Plan, including any payments to the Subordinated Securities Claimants, as efficiently and expeditiously as possible.

### 1. Modification of Bankruptcy Rule 3007(e)(6) is Appropriate

With one minor exception, all Omnibus Objections filed pursuant to the Securities Omnibus Objection Procedures will comply with the procedural requirements of Bankruptcy Rule 3007(e). Bankruptcy Rule 3007(e)(6) states: "[a]n omnibus objection shall contain objections to no more than 100 claims." The Reorganized Debtors seek relief from the 100-claim limit on the basis that the proposed form of the Omnibus Objection will protect Subordinated Securities Claimants against possible confusion by providing an alphabetized list of each Subordinated Securities Claimant subject to the Omnibus Objection. The limit proposed in the Securities Omnibus Objection Procedures—250 proofs of claim per Omnibus Objection—is the same limit previously approved by the Court in connection with the Omnibus Claims Objection Procedures Order. *See* Omnibus Claims Objection Procedures Order ¶ 2.B.

Similar relief has been granted in other large chapter 11 cases. *See, e.g.*, Slack Decl., Ex. 6 (*In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. Mar. 31, 2010) [Dkt.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

No. 7956]) (500 claims).[14]  Consistent with the Omnibus Objections Order, this Court should modify Bankruptcy Rule 3007(e) as requested in the Securities Omnibus Objection Procedures.

### 2. Relief from Bankruptcy Local Rule 3007-1(a) is Also Appropriate

The Reorganized Debtors also request that the Court waive the requirement of Bankruptcy Local Rule 3007-1(a) that a copy of a proof of claim be attached to each objection.  As this Court has already recognized in the Omnibus Objection Order, given the number of Subordinated Securities Claims, attaching each and every proof of claim to the Omnibus Objection would be cumbersome and inefficient and in a great many instances—quite possibly the vast majority of them—would serve no purpose at all.  Moreover, relieving the Reorganized Debtors of this obligation will create a more streamlined claims resolution process, enabling the Reorganized Debtors and their professionals to focus on the substance of any disputes rather than the compilation of separate individual objections.

This Court should approve and implement the Securities Omnibus Objection Procedures to facilitate an efficient and economical administration of the claims resolution process, which will benefit all parties in interest.

## VI. NOTICE

Notice of this Motion will be provided to: (i) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (ii) all counsel and parties receiving electronic notice through the Court's electronic case filing system; (iii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002; and (iv) those individuals or entities that have submitted Subordinated Securities Claims.  The Reorganized Debtors respectfully submit that no further notice is required.  No previous request for the relief sought herein has been made by the Reorganized Debtors to this or any other Court.

WHEREFORE the Reorganized Debtors respectfully request entry of the Proposed Order granting (i) the relief requested herein, and (ii) such other and further relief as the Court may deem just and appropriate.

---

[14] *See also In re TelexFree, LLC*, Case No. 14-40987 (Bankr. D. Mass. Dec. 26, 2017) [Dkt. No. 955] (250 claims); *In re Patriot Coal Corporation*, Case No. 12-51502 (Bankr. E.D. Mo. Mar. 1, 2013) [Dkt. No. 3021] ("The Debtors may file Omnibus Objections that contain more than 100 claims").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

Dated:  September 1, 2020

**WEIL, GOTSHAL & MANGES LLP**

**KELLER BENVENUTTI KIM LLP**

By:     /s/ *Richard W. Slack*
        Richard W. Slack

*Attorneys for the Debtors and*
*Reorganized Debtors*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119