WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

*Attorneys for Debtors and*
*Reorganized Debtors*

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel:    (415) 496-6723
Fax:    (415) 636-9251

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).* | Case Nos. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF MICHAEL A. KEABLE IN SUPPORT OF THE REORGANIZED DEBTORS' MOTION TO APPROVE SECURITIES ADR AND RELATED PROCEDURES FOR RESOLVING SUBORDINATED SECURITIES CLAIMS** |

**Compass Lexecon**
332 South Michigan Ave., Suite 1300
Chicago, Illinois 60604

I, Michael A. Keable, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

## I.  QUALIFICATIONS

1.  I am an Executive Vice President of Compass Lexecon, an economics consulting firm specializing in the application of economics to a variety of legal and regulatory matters.  Among the staff and professional affiliates of Compass Lexecon are several prominent academics and a group of full time economists, accountants, computer programmers, and research assistants.

2.  I have been employed by Compass Lexecon for over thirty years and have specialized in the areas of securities markets, damages, corporate finance, and financial statement analysis, primarily in the context of securities litigation.  I have worked on hundreds of matters involving market efficiency, materiality, loss causation, and damages.  My responsibilities have included designing, performing, and supervising economic studies of various issues.  I have served as a consulting and/or testifying expert on economic issues for, among others, the United States Department of Justice, the United States Internal Revenue Service, and the United States Securities and Exchange Commission.

3.  I am a member of the American Economic Association and the American Finance Association.  I received a B.A. in History from The University of Chicago and an M.B.A with concentrations in Finance and Business Policy from The University of Chicago Graduate School of Business.  My curriculum vitae, which lists my prior testimony and publications, is attached as Appendix A.

4.  I submit this declaration in support of the *Reorganized Debtors' Motion to Approve Securities ADR and Related Procedures for Resolving Subordinated Securities Claims*.  The matters stated herein are based upon my personal knowledge, information provided by counsel, my discussions with other Compass Lexecon professionals, and my review of relevant information and documents.  If called upon, I would testify to the facts set forth in this declaration.

## II.  ASSIGNMENT

5.  Compass Lexecon and I have been asked by counsel for PG&E Corporation ("**PG&E**") and Pacific Gas and Electric Company (the "**Utility**" and, collectively, the "**Debtors**" or "**Reorganized**

Compass Lexecon
332 South Michigan Ave., Suite 1300
Chicago, Illinois 60604

**Debtors**," as applicable) to provide support to counsel in connection with their providing legal advice to the Reorganized Debtors concerning the proofs of claim filed by certain claimants alleging claims for rescission or damage under federal securities laws based on purchases of (i) PG&E common stock ("Equity") and (ii) publicly-traded senior notes issued after April 29, 2015 ("Debt," collectively, the "Securities"), in each case purchased during the period from April 29, 2015 through November 15, 2018 (the "Purchase Period"). As part of this work, Compass Lexecon has reviewed a sampling of more than 2,300 proofs of claim filed by claimants purporting to assert rescission or damage claims for Securities purchased in the Purchase Period.

6.  Compass Lexecon has been asked to set forth in this declaration our observations regarding whether the trading information supplied in these proof of claim forms ("Claim Forms") is sufficient to allow for the calculations of amounts plaintiffs commonly assert in securities litigation as follows ("Aggregate Loss"):[1]

    A.    **Equity Security Aggregate Loss** under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder incorporating, among other things, our understanding of the statutory limitation on this measure under the Private Securities Litigation Reform Act of 1995, which examines sales of common stock in the 90-day period following the end of the relevant purchase period; and

    B.    **Debt Securities Aggregate Loss** based on our understanding of the statutory calculation set forth in Section 11 of the Securities Act of 1933, which damage calculation incorporates debt securities transactions after the relevant purchase period.[2]

Aggregate Loss establishes the outer bound of potential damages a claimant may seek to recover, which must then be analyzed for a range of factors to determine what, if any of it, is actually recoverable under applicable law. In preparing this declaration, I have been assisted by Compass Lexecon's professional staff and have relied on Claim Forms and information supplied by counsel.

7.  Based on Compass Lexecon's preliminary review of a sampling of over 2,300 submitted Claim Forms, the trading data provided by the substantial majority of claimants are insufficient to

---

[1] Compass Lexecon does not endorse the analytical results of these calculations as appropriate estimates of claimants' actual losses, if any, attributable to alleged misstatements.

[2] I understand that, among other things, the statutory calculation compares the purchase price to the price at the time the security is disposed of before judgment.

**Compass Lexecon**
332 South Michigan Ave., Suite 1300
Chicago, Illinois 60604

**Compass Lexecon**
332 South Michigan Ave., Suite 1300
Chicago, Illinois 60604

1    reliably estimate the claimants' Aggregate Loss. Many claimants did not provide the specific

2    information requested by the Claim Form. However, even if every claimant had provided all

3    information requested by the Claims Form, additional information would be needed to determine the

4    claimants' Aggregate Loss.

5    **III.    PRELIMINARY REVIEW**

6          8.    The information presented below is based on Compass Lexecon's review of over 2,300

7    unique Claim Forms, all of which provide at least some of the requested transactions data. I understand

8    that at least 500 Claim Forms involving the Securities, which were not provided to Compass Lexecon,

9    did not contain any of the purchase and sale transaction data as required in the Court-approved Claim

10   Forms.

11         9.    Our review focused on the Claim Forms that provided transaction-level data in

12   computer-readable formats (e.g., Excel spreadsheets, PDFs that were laid out well and could be scanned

13   into a spreadsheet, etc.), regardless of whether the Claim asserted a specific amount of damages

14   ("Liquidated Claims") or not ("Unliquidated Claims"). Compass Lexecon also obtained Claim Form

15   data that were manually entered. Approximately 44% of the Claim Forms examined by Compass

16   Lexecon asserted Liquidated Claims, which range from relatively modest figures, e.g., under $100, to

17   hundreds of millions of dollars.

18         10.   Based on Compass Lexecon's preliminary review of a sampling of more than 2,300

19   Claims Forms, I make the following observations regarding the insufficiency, for purposes of reliable

20   loss calculations, of the trading information provided with submitted Claim Forms.

21
22   **IV.    ISSUES IN SUBMITTED CLAIMS FORMS THAT PREVENT RELIABLE
            AGGREGATE LOSS CALCULATIONS**

23         11.   ***Debt Claim Information Following Purchase Period***. First, in the substantial majority

24   of the Claim Forms reviewed that included purchases of Debt Securities, the submitted Claim Forms

25   do not provide the data required to calculate Aggregate Loss for the Debt claims. I understand that the

26   statutory loss formula for the Debt claims relies on transactions through final judgment in securities

27   litigation. Thus, while a claimant may have submitted a Debt claim, if that claimant was fully

28   compensated in the chapter 11 cases, for example, the claimant would not have incurred any

**Compass Lexecon**
332 South Michigan Ave., Suite 1300
Chicago, Illinois 60604

recoverable loss under the statute. Because approximately 70% of the Debt claims Compass Lexecon has analyzed appear to have continued to hold debt securities on November 15, 2018 – the last day of the Purchase Period – assessing statutory damages requires additional trading data to show when, if at all, those positions were liquidated. Consequently, absent that trading data, there is not sufficient information to calculate Aggregate Loss for a substantial majority of Debt claimants.

12. ***Equity Sales Information for 90-Days Following Purchase Period***. Second, there is insufficient data to reliably calculate Aggregate Loss for a substantial portion of the Equity claims Compass Lexecon examined. I understand that the statutory damages formula for the Equity claims incorporates sales in the 90-day period after November 15, 2018. Specifically, I understand that losses may be mitigated depending on the prices of the stock during this 90-day period relative to the purchase price, and the amount of such mitigation depends on the date a share is sold during that period. Of the 2,300 Claim Forms Compass Lexecon examined, approximately 1,400 report purchases of common stock for a single claimant ***and*** provide holdings balances. Of those, more than half, i.e., more than 700, report Equity holdings on November 15, 2018 but did not provide transactions data during the subsequent 90-day period. Consequently, without transactions data from that subsequent 90-day period, Aggregate Loss cannot be reliably calculated for those Equity claims.

13. ***Beginning Holdings Information.*** Third, at least 250 Claim Forms we reviewed do not contain the beginning holdings as of April 29, 2015 and/or the ending holdings as of November 15, 2018, both of which were supposed to be provided in the Claim Forms. The calculations of Aggregate Loss require matching sales to purchases. Therefore, the absence of beginning and ending securities balances may make it impossible to match a sale to the appropriate purchase to reliably determine Aggregate Loss. In addition, it is typical to use beginning and ending balances to verify whether the data provided by a claimant are complete and accurate; if the beginning balance plus the net transactions does not equal the ending balance, the transaction and/or balance data are either incomplete, inaccurate, or both.

14. ***Indecipherable Transaction Data***. Finally, the transactions identified in a number of Claim Forms are difficult to decipher because they are provided in dozens of different formats. For example, in some Claim Forms the transaction types for common stock are not defined so Compass

Lexecon cannot reliably determine whether the transaction is a purchase or a sale. Further, for certain Debt and Equity claims, Compass Lexecon cannot reliably determine whether a transfer of securities was between two related accounts which may not constitute an economic purchase or sale (i.e., the transaction is equivalent to moving cash from one pants pocket to another). Having a complete set of transactions and balances produced in the same format with, among other things, easily identifiable purchases and sales, would substantially enhance the ability to accurately calculate potential losses.

**Compass Lexecon**
332 South Michigan Ave., Suite 1300
Chicago, Illinois 60604

1    Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true

2    and correct to the best of my knowledge, information, and belief.  Executed on September 1, 2020, in

3    Chicago, Illinois.

4

5

6

7                                                                          Michael A. Keable

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Compass Lexecon**
332 South Michigan Ave., Suite 1300
Chicago, Illinois 60604