# EXHIBIT 3

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-----------------------------------------------------x
                                                     :

In re                                  : Chapter 9

                                                     :

CITY OF DETROIT, MICHIGAN,     : Case No. 13-53846

                                                     :

                        Debtor.      : Hon. Steven W. Rhodes

                                                     :

                                                     :

-----------------------------------------------------x

---

### NOTICE

This order is the proposed order that the parties submitted for entry, except that the Court has added paragraph 20 addressing claims under 42 U.S.C. § 1983 pending in the district court.

---

## ORDER, PURSUANT TO SECTIONS 105 AND 502 OF THE BANKRUPTCY CODE, APPROVING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES TO <u>PROMOTE THE LIQUIDATION OF CERTAIN PREPETITION CLAIMS</u>

This matter coming before the Court on the Motion of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (Docket No. 1665) (the "<u>ADR Procedures Motion</u>"), filed by the City of Detroit (the "<u>City</u>"); the following responses to the ADR Procedures Motion having been filed (collectively, the "<u>Filed Responses</u>"):

    (a)     the response (Docket Nos. 1763 and 1765) of Jeffrey Sanders;

    (b)     the objection (Docket No. 1828) (the "<u>Cooperatives Response</u>") of

LaSalle Town Houses Cooperative Association, Nicolet Town Houses Cooperative Association and St. James Cooperative;

(c)    the limited objection (Docket No. 1834) of the Police and Fire Retirement System of the City of Detroit and the General Retirement System (together, the "Retirement Systems");

(d)    the objection (Docket No. 1866) (the "Ryan Response") of Deborah Ryan;

(e)    the limited objection (Docket No. 1902) of the Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association and the Detroit Police Command Officers Association (collectively, the "Public Safety Unions");

(f)    the objection (Docket No. 1915) of the Michigan Council 25 the American Federation of State, County and Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees ("AFSCME"); and

(g)    the objection (Docket No. 2211) of certain alleged prepetition claimants.

The City also having received informal responses (collectively, the "Informal Responses" and, together with the Filed Responses, the "Responses") from the following parties:

(a)    the United States Department of Justice (the "DOJ");

(b)    Financial Guaranty Insurance Company ("FGIC");

(c)    Ambac Assurance Corporation ("Ambac"); and

(d)    Amalgamated Transit Union Local 26 ("ATU").

The City having filed the Reply in Support of Motion of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving

Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (the "Reply"); Walter Swift and Deborah Ryan jointly having filed the Motion to Substitute Petitioner Swift to Replace Petitioner Ryan Regarding Her Objections to Motion of Debtor for an Order Approving ADR Proceedings (Docket No. 2140) (the "Substitution Motion"); the Court having reviewed the ADR Procedures Motion, the Filed Responses, the Reply and the Substitution Motion and having considered the statements of counsel and the evidence adduced with respect to the ADR Procedures Motion and the Substitution Motion at a hearing before the Court (the "Hearing"); the Court being advised that the Alternative Dispute Resolution Procedures attached hereto as Annex I (the "ADR Procedures")[1] and the terms of this Order resolve the Responses of (a) the Retirement Systems, (b) the Public Safety Unions, (c) AFSCME, (d) the DOJ, (e) FGIC, (f) Ambac and (g) ATU; the Court further being advised that the Ryan Response is resolved, subject to the City's and the Public Safety Unions' agreement that, by separate order of the Court, the Stay will be lifted solely to the extent necessary to allow the lawsuit captioned Ryan v. City of Detroit, et al., Case No. 11-cv-10900 (E.D. Mich.) (the "Ryan Lawsuit"), to proceed to judgment, thereby liquidating the claims of Deborah Ryan against the City and the current or former Public Safety Union member defendants in the Ryan Lawsuit; the Court

---

[1] Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the ADR Procedures.

having entered the Order for Relief from the Automatic Stay to Allow Class Action to Proceed (Docket No. 2223) (the "Cooperatives Order"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b) and (c) notice of the ADR Procedures Motion and the Hearing was sufficient under the circumstances; and the Court having determined that the legal and factual bases set forth in the ADR Procedures Motion, the Reply and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The ADR Procedures Motion is GRANTED, as set forth herein, and the Substitution Motion is DENIED.  The Informal Responses are resolved by the terms of this Order, the Cooperatives Response is mooted by the Cooperatives Order, and the remaining Filed Responses are overruled to the extent not resolved or addressed by the ADR Procedures and the terms of this Order.

2.      The ADR Procedures are approved in all respects, pursuant to sections 105 and 502 of the Bankruptcy Code.  For the avoidance of doubt, all of the terms and provisions of the ADR Procedures are approved, whether or not such terms and provisions are restated below.

3.      The City is authorized to take any and all actions that are necessary or appropriate to implement the ADR Procedures.  Nothing in this Order

or the ADR Procedures, however, shall obligate the City to settle or pursue settlement of any particular Designated Claim.  Any such settlements may be pursued and agreed upon as the City believes are reasonable and appropriate in its sole discretion, subject to the terms and conditions set forth in the ADR Procedures.

4.      Notwithstanding any other provision of this Order to the contrary, the following claims (collectively, the "Excluded Claims") shall not be Initial Designated Claims or Designated Claims and shall not otherwise be subject to the ADR Procedures, provided, however, that nothing herein shall preclude (a) the City and the applicable claimant from agreeing to submit any Excluded Claim to the ADR Procedures or (b) the City from seeking to establish in the future, by separate motion, alternative dispute resolution procedures in connection with any Excluded Claim(s) (or the holder of an Excluded Claim from opposing such requested relief):

(a)      claims solely for unpaid pension contributions, unfunded actuarially accrued pension liabilities and/or unpaid pension benefits (whether asserted by the Retirement Systems or directly or derivatively by or on behalf of retirees or active employees, and whether filed by the applicable claimant or scheduled by the City);

(b)      claims for liabilities associated with post-employment benefits under the City's Health and Life Insurance Benefit Plan, the Supplemental Death Benefit Plan or other non-pension post-employment welfare benefits, including unfunded actuarially accrued liabilities;

(c)      claims arising from labor-related grievances;

(d)     claims solely asserting workers' compensation liabilities against the City;

(e)     claims, if any, arising from or related to (i) that certain GRS Service Contract 2005 between the Detroit General Retirement System Service Corporation and the City of Detroit, dated May 25, 2005, (ii) that certain PFRS Service Contract 2005 between the Detroit Police and Fire Retirement System Service Corporation and the City of Detroit, dated May 25, 2005, (iii) that certain GRS Service Contract 2006 between the Detroit General Retirement System Service Corporation and the City of Detroit, dated June 7, 2006 and (iv) that certain PFRS Service Contract 2006 between the Detroit Police and Fire Retirement System Service Corporation and the City of Detroit, dated June 7, 2006;

(f)     claims by holders for amounts owed under the City's unlimited tax general obligation bonds, limited tax general obligation bonds and general fund bonds (collectively, the "GO Bonds") and claims by bond insurers related to the GO Bonds; and

(g)     claims filed by the United States government.

5.     From the date of this Order until the date that is 119 days after the General Bar Date, the holders of the Initial Designated Claims (and any other person or entity asserting an interest in such claim) shall be enjoined (the "Initial Injunction") from filing or prosecuting Stay Motions with respect to such Initial Designated Claims.  The Initial Injunction is separate and distinct from the ADR Injunction as defined and described below.

6.     Upon the service of an ADR Notice on any Designated Claimant, such Designated Claimant (and any other person or entity asserting an interest in the relevant Designated Claim) shall be enjoined (the "ADR Injunction")

from filing or prosecuting any Stay Motion or otherwise seeking to establish, liquidate, collect on or enforce the Designated Claim(s) identified in the ADR Notice, other than by liquidating the claim through the ADR Procedures. The ADR Injunction shall expire with respect to a Designated Claim only when the ADR Procedures have been completed as to that claim. For the avoidance of doubt, the City may serve an ADR Notice on any Designated Claimant at any time, and the ADR Injunction shall become effective at the time of service without any further action by the Court.

7. Certain Designated Claims (each, a "Multi-Party Tort Claim") arise out of personal injury actions: (a) asserted concurrently against the City and one or more current or former Public Safety Union members (each, a "Public Safety Union Member"); and (b) with respect to which, the applicable Public Safety Union Member seeks related defense costs and/or an indemnification claim from the City (any such Public Safety Union Member, an "Indemnification Claimant," and any such claim, an "Indemnification Claim"). When a Multi-Party Tort Claim is designated as a Designated Claim to proceed to the ADR Procedures, any related Indemnification Claim also shall be designated by the City as a Designated Claim to proceed through the ADR Procedures along with the Multi-Party Tort Claim. Concurrently with the service of an ADR Notice on any Designated Claimant for a Multi-Party Tort Claim, the City shall serve a copy of

the ADR Notice on the Public Safety Unions and on any related Indemnification Claimant known to the City. Thereafter, the Indemnification Claimant shall participate in the attempted resolution of the Multi-Party Tort Claim and the related Indemnification Claim pursuant to the ADR Procedures, with the goal of resolving all related claims in a single settlement. Any dispute regarding whether the City is required to pay the defense costs of, or indemnify, any Indemnification Claimant shall be resolved pursuant to the City's and the Public Safety Unions' ordinary course nonbankruptcy procedures, and not by this Court or through the ADR Procedures, and, notwithstanding the Initial Injunction and the ADR Injunction, the Public Safety Unions may seek relief from the Stay/Injunction for this purpose.

8.     Except as expressly set forth in the ADR Procedures, the expiration of the Initial Injunction and/or the ADR Injunction shall not extinguish, limit or modify the Stay or any Plan Injunction (the "Stay/Injunction"), which shall remain in place to the extent then in effect, except as otherwise provided in the ADR Procedures. The Initial Injunction and the ADR Injunction shall be in addition to the Stay/Injunction.

9.     The City in its sole discretion (a) may elect not to send an ADR Notice to the holder of an Initial Designated Claim and (b) instead file and serve on the applicable Designated Claimant a notice (a "Stay Modification Notice") that

the Stay/Injunction is lifted to permit the underlying claim to be liquidated in an appropriate non-bankruptcy forum. In that event, immediately upon the filing of the Stay Modification Notice, the Stay/Injunction shall be deemed modified with respect to the applicable Initial Designated Claim solely to permit the liquidation of the claim in a non-bankruptcy forum; provided, however, that, solely in the case of a Multi-Party Tort Claim, the Stay/Injunction will be deemed modified with respect to the Multi-Party Tort Claim and any related Indemnification Claims 35 days after the filing of the Stay Modification Notice unless the Public Safety Unions or the applicable Indemnification Claimant(s) file a motion requesting that the Stay/Injunction remain in place (any such motion, a "Stay Preservation Motion"). If a Stay Preservation Motion is filed, then the Court will determine whether relief from the Stay/Injunction is appropriate with respect to the Multi-Party Tort Claim pursuant to the standards set forth in section 362(d) of the Bankruptcy Code.

      10.    If the Stay/Injunction is modified as a result of a Stay Modification Notice, the liquidation of each applicable Initial Designated Claim shall proceed in either: (a) the non-bankruptcy forum in which the Initial Designated Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Initial Designated Claim was not pending in any forum on the Petition Date, then

in the United States District Court for the Eastern District of Michigan (the "<u>District Court</u>") or such other non-bankruptcy forum selected by the Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the claim, (iii) has <u>in rem</u> jurisdiction over the property involved in the Initial Designated Claim (if applicable) and (iv) is a proper venue.  For the avoidance of doubt, all proceedings against the City or any Indemnification Claimant relating to an Initial Designated Claim following the liquidation of the Initial Designated Claim shall remain subject to the Stay/Injunction, absent further order of the Court.  If necessary, any disputes regarding the application of the foregoing terms, conditions and limitations shall be determined by this Court; <u>provided</u> <u>that</u> disputes about the jurisdiction of a matter presented to a non-bankruptcy court may be determined by such court.

11. The resolution of a Designated Claim pursuant to the ADR Procedures or the entry of an Arbitration Award pursuant to the ADR Procedures[2] shall not grant the Designated Claimant any enforcement rights except as permitted under a Chapter 9 Plan, and the Stay/Injunction shall apply to any such resolved Designated Claim or Arbitration Award.  For the avoidance of doubt, all proceedings against the City or any Indemnification Claimant relating to a

---

[2] For the avoidance of doubt, "Arbitration Award" refers to an arbitration award as defined by the ADR Procedures Motion and the ADR Procedures and not to any award issued pursuant to the City and the Public Safety Unions' labor arbitration procedures.

Designated Claim following the resolution of the Designated Claim or the entry of an Arbitration Award shall remain subject to the Stay/Injunction, absent further order of the Court. Any aspect of an Arbitration Award that violates the foregoing rules and limitations shall be void without further action of any court.

12. Designated Claims not resolved through the ADR Procedures ("Unresolved Designated Claims") shall proceed to litigation to be liquidated. Unless the City agrees otherwise, liquidation of any Unresolved Designated Claim shall proceed in this Court (to the extent that this Court has subject matter jurisdiction over the Unresolved Designated Claim) as soon as practicable following the date that the ADR Procedures are concluded for an Unresolved Designated Claim (the "ADR Completion Date"). Such litigation will be initiated by the filing of a claim objection by the City (a "Claim Objection") within 35 days after the ADR Completion Date (the "Claim Objection Deadline"). Disputes over the subject matter jurisdiction of this Court shall be determined by this Court, and the Designated Claimants shall retain whatever rights they have to seek withdrawal of the reference, abstention or other procedural relief in connection with a Claim Objection.

13. If an Unresolved Designated Claim cannot be adjudicated in this Court because of lack of, or limitations upon, subject matter jurisdiction, or if the City does not file a Claim Objection by the Claim Objection Deadline (any

such claim, a "<u>Non-Bankruptcy Claim</u>"), then liquidation of any such Non-Bankruptcy Claim shall proceed in either: (a) the non-bankruptcy forum in which the Non-Bankruptcy Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Non-Bankruptcy Claim was not pending in any forum on the Petition Date, then in the District Court or such other nonbankruptcy forum selected by the Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the Non-Bankruptcy Claim, (iii) has <u>in rem</u> jurisdiction over the property involved in the Non-Bankruptcy Claim (if applicable) and (iv) is a proper venue. If necessary, any disputes regarding the application of the foregoing terms, conditions and limitations shall be determined by this Court; <u>provided</u> <u>that</u> disputes about the jurisdiction of a matter presented to a non-bankruptcy court may be determined by such court.

14. The Stay/Injunction shall be deemed modified with respect to any Non-Bankruptcy Claim unless, within 35 days of the ADR Completion Date, the City files a notice (a "<u>Stay Notice</u>") that it intends for the Stay/Injunction to remain in effect with respect to a Non-Bankruptcy Claim. If the City files a Stay Notice, the Stay/Injunction shall remain in place, and the applicable Designated Claimant may seek relief from the Stay/Injunction under the standards set forth in section 362(d) of the Bankruptcy Code. In addition, with respect to any Non-

Bankruptcy Claims that are Multi-Party Tort Claims, an Indemnification Claimant may file a motion within 35 days of the ADR Completion Date seeking to maintain the Stay/Injunction as to the Indemnification Claimant for good cause shown.

15.     If the City does not file a Stay Notice (or, in the case of Multi-Party Tort Claims, no Indemnification Claimant asserts and establishes cause to maintain the Stay/Injunction) with respect to a Non-Bankruptcy Claim, then the Stay/Injunction shall be deemed modified solely for the purpose of, and to the extent necessary for, liquidating such Non-Bankruptcy Claim in an appropriate non-bankruptcy forum (as applicable under the ADR Procedures).  For the avoidance of doubt, following the liquidation of a Non-Bankruptcy Claim, all proceedings against the City or any Indemnification Claimant relating to the Non-Bankruptcy Claim shall remain subject to the Stay/Injunction, absent further order of the Court.

16.     Nothing contained in this Order or the ADR Procedures shall (a) prevent the City and any Designated Claimant (including any Indemnification Claimant) from settling any Designated Claim at any time or (b) limit, expand or otherwise modify the City's authority to settle or pay claims or the City's authority over its property and revenues under section 904 of the Bankruptcy Code.  The

authority to settle Designated Claims pursuant to the ADR Procedures will be in addition to, and cumulative with, any existing authority to resolve claims against the City.

17.     The terms of this Order shall not be deemed to preclude any party in interest from objecting to any Designated Claim to the extent such entity has standing to assert an objection in accordance with Bankruptcy Code and applicable law.

18.     Nothing herein shall be deemed to limit, expand or otherwise affect (a) any rights of the Public Safety Unions to obtain discovery from the City with respect to Multi-Party Tort Claims if the Stay/Injunction is modified, (b) any rights of the Public Safety Unions to obtain information from the City necessary to identify any potential Indemnification Claims prior to the Claims Bar Date or (c) any rights of the City to object to any such discovery requests, and all such rights are preserved.

19.     This Court shall retain jurisdiction for all purposes specified in the ADR Procedures and with respect to all disputes arising from or relating to the interpretation, implementation and/or enforcement of this Order and the ADR Procedures.

**20.     Notwithstanding anything in this Order, the "ADR Procedures" that this Order approves (Annex 1), or in the ADR Procedures**

**Motion, all lawsuits alleging claims against the City, its employees or both under 42 U.S.C. § 1983 that are pending in the United States District Court are referred to Chief United States District Judge Gerald Rosen for mediation under such procedures as he determines.**

Signed on December 24, 2013

_____/s/ Steven Rhodes_____
Steven Rhodes
United States Bankruptcy Judge

13-53846-tjt Doc 2302 Filed 12/24/13 Entered 12/24/13 10:17:03 Page 15 of 16
13-53846-swr Doc 2305 Filed 12/24/13 Entered 12/24/13 11:07:00 Page 15 of 16
of 62

# **ANNEX I**

ATI-2587951v7

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

-------------------------------------------------------x
:
In re                                    :          Chapter 9
:
CITY OF DETROIT, MICHIGAN,               :          Case No. 13-53846
:
Debtor.              :          Hon. Steven W. Rhodes
:
:
-------------------------------------------------------x

**ALTERNATIVE DISPUTE RESOLUTION PROCEDURES**

On [_____], 2013, the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") entered an order (Docket No. __) (the "ADR Order") in the above-captioned case under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") approving and adopting the following alternative dispute resolution procedures (the "ADR Procedures") with respect to certain claims asserted against the City of Detroit (the "City"):

I.    **CLAIMS SUBJECT TO THE**
      **ADR PROCEDURES AND ADR INJUNCTION**

      A.    **Claims Subject to the ADR Procedures**

      The claims subject to the ADR Procedures consist of all claims designated by the City under the notice procedures set forth below (collectively, the "Designated Claims"). The City may designate for liquidation pursuant to the ADR Procedures any proof of claim, other than Excluded Claims (as defined below), timely asserted in these cases by serving a notice (the "ADR Notice") on the applicable claimant, if the City believes, in its sole discretion, that the ADR Procedures would promote the resolution of such claim and serve the intended objectives of the ADR Procedures. Without limiting the foregoing, any and all timely filed prepetition claims, other than Excluded Claims, in the following categories shall be Designated Claims hereunder prior to the City serving an ADR Notice on the applicable claimant: (1) personal injury tort or wrongful death claims, (2) property damage claims or (3) claims, to the extent not

satisfied in the ordinary course, relating to the operation of motor vehicles for which the City is self-insured pursuant to chapter 31 of Michigan's Insurance Code of 1956, M.C.L. §§ 500.3101, et seq. (collectively, the "Initial Designated Claims") The holders of the Designated Claims, including Initial Designated Claims, are referred to herein as the "Designated Claimants."

Notwithstanding any provision of the ADR Procedures or the ADR Order to the contrary, the following claims (collectively, the "Excluded Claims") shall not be Initial Designated Claims or Designated Claims and shall not otherwise be subject to these ADR Procedures, provided, however, that nothing herein shall preclude (a) the City and the applicable claimant from agreeing to submit any Excluded Claim to the ADR Procedures or (b) the City from seeking to establish in the future, by separate motion, alternative dispute resolution procedures in connection with any Excluded Claim(s):

1.    claims solely for unpaid pension contributions, unfunded actuarially accrued pension liabilities and/or unpaid pension benefits (whether asserted by the Police and Fire Retirement System of the City of Detroit or the General Retirement System of the City of Detroit or directly or derivatively by or on behalf of retirees or active employees, and whether filed by the applicable claimant or scheduled by the City);

2.    claims for liabilities associated with post-employment benefits under the City's Health and Life Insurance Benefit Plan, the Supplemental Death Benefit Plan or other non-pension post employment welfare benefits, including unfunded actuarially accrued liabilities;

3.    claims arising from labor-related grievances;

4.    claims solely asserting workers' compensation liabilities against the City;

5.    claims, if any, arising from or related to (i) that certain GRS Service Contract 2005 between the Detroit General Retirement System Service Corporation and the City of Detroit, dated May 25, 2005, (ii) that certain PFRS Service Contract 2005 between the Detroit Police and Fire Retirement System Service Corporation and the City of Detroit, dated May 25, 2005, (iii) that certain GRS Service Contract 2006 between the

Detroit General Retirement System Service Corporation and the City of Detroit, dated June 7, 2006 and (iv) that certain PFRS Service Contract 2006 between the Detroit Police and Fire Retirement System Service Corporation and the City of Detroit, dated June 7, 2006;

6.  claims by holders for amounts owed under the City's unlimited tax general obligation bonds, limited tax general obligation bonds and general fund bonds (collectively, the "<u>GO Bonds</u>") and claims by bond insurers related to the GO Bonds; and

7.  claims filed by the United States government.

## B.  <u>Injunctions in Support of the ADR Procedures</u>

The Bankruptcy Court has established February 21, 2014, at 4:00 p.m., Eastern Time, as the general bar date for filing proofs of claim in the City's chapter 9 case (the "<u>General Bar Date</u>").  For the period commencing on the date of entry of the ADR Order until the date that is 119 days after the General Bar Date (the "<u>Initial Designation Period</u>"), any Designated Claimant holding an Initial Designated Claim (and any other person or entity asserting an interest in such claim) shall be enjoined (the "<u>Initial Injunction</u>") from filing or prosecuting, with respect to such Initial Designated Claim, any motion (a "<u>Stay Motion</u>") for relief from either (1) the automatic stay of sections 362 and 922 of the Bankruptcy Code, as modified and extended from time to time by orders of the Bankruptcy Court (the "<u>Stay</u>"), or (2) any similar injunction (together with the Stay, the "<u>Stay/Injunction</u>") that may be imposed upon the confirmation or effectiveness of a plan of adjustment of debts confirmed in the City's chapter 9 case (a "<u>Chapter 9 Plan</u>").  The Initial Injunction is separate and distinct from the ADR Injunction as defined and described below.  Any Designated Claimant that is subject to the Initial Injunction with respect to an Initial Designated Claim shall instead become subject to the ADR Injunction upon the service of an ADR Notice with respect to the underlying Designated Claim, as described in the following paragraph, whether that occurs during or after the Initial Designation Period.

Upon service of an ADR Notice on any Designated Claimant under Section II.A.1 below, such Designated Claimant (and any other person or entity asserting an interest in the relevant Designated Claim) shall be enjoined (the "<u>ADR Injunction</u>") from filing or prosecuting any Stay Motion or otherwise seeking to establish, liquidate, collect on or enforce the Designated Claim(s) identified in the ADR Notice, other than by liquidating the claim through the ADR Procedures

ATI-2587951v7

described herein. The ADR Injunction shall expire with respect to a Designated Claim only when the ADR Procedures have been completed as to that Designated Claim.[1] For the avoidance of doubt, the City may serve an ADR Notice on any Designated Claimant at any time, and the ADR Injunction shall become effective at the time of service without any further action by the Bankruptcy Court.

Except as expressly set forth herein or in a separate order of the Bankruptcy Court, the expiration of the Initial Injunction or the ADR Injunction shall not extinguish, limit or modify the Stay/Injunction, and the Stay/Injunction shall remain in place to the extent then in effect, except as otherwise provided herein. The Initial Injunction and the ADR Injunction shall be in addition to the Stay/Injunction.

The City in its sole discretion (1) may elect not to send an ADR Notice to the holder of an Initial Designated Claim (i.e., not send the claim to the ADR Procedures) and (2) instead may file and serve on the applicable Designated Claimant a notice that the Stay/Injunction is lifted to permit the underlying claim to be liquidated in a non-bankruptcy forum consistent with the terms, conditions and limitations of Section II.E.2 below (a "Stay Modification Notice"). In that event, immediately upon the filing of the Stay Modification Notice, the Stay/Injunction shall be deemed modified with respect to the applicable Initial Designated Claim solely to permit the liquidation of the claim in a non-bankruptcy forum; provided, however, that, solely in the case of a Multi-Party Tort Claim (as defined below), the Stay/Injunction will be deemed modified with respect to the Multi-Party Tort Claim and any related Indemnification Claim (as defined below) 35 days after the filing of the Stay Modification Notice unless the applicable Indemnification Claimant(s) or their union representatives file a motion requesting that the Stay/Injunction remain in place (any such motion, a "Stay Preservation Motion"). If a Stay Preservation Motion is filed, then the Bankruptcy Court will determine whether relief from the Stay/Injunction is appropriate with respect to the Multi-Party Tort Claim pursuant to the standards set forth in section 362(d) of the Bankruptcy Code.

---

[1] The ADR Procedures expire upon any resolution of a Designated Claim through the ADR Procedures, upon the Case Evaluation Termination Date (as defined below) for Designated Claims not resolved though the ADR Procedures or at any other time that the ADR Procedures are terminated by agreement of the parties or the terms hereof.

ATI-2587951v7
13-53846-tjt  Doc 2302-96  Filed 12/24/13  Entered 12/24/13 10:17:03  Page 29 of 62
13-53846-swr  Doc 2966  Filed 03/01/13  Entered 03/01/13 00:27:03  Page 21 of 62

### C. **Multi-Party Tort Claims**

Certain Designated Claims (each, a "Multi-Party Tort Claim") arise out of personal injury actions (a) asserted concurrently against the City and one or more current or former members of the Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association or the Detroit Police Command Officers Association (each such member, a "Public Safety Union Member") and (b) with respect to which, the applicable Public Safety Union Member seeks related defense costs and/or an indemnification claim from the City (any such Public Safety Union Member, an "Indemnification Claimant," and any such claim, an "Indemnification Claim"). When a Multi-Party Tort Claim is designated as a Designated Claim to proceed to the ADR Procedures, any related Indemnification Claim also shall be designated by the City as a Designated Claim to proceed through the ADR Procedures along with the Multi-Party Tort Claim. Concurrently with the service of an ADR Notice on any Designated Claimant for a Multi-Party Tort Claim, the City shall serve a copy of the ADR Notice on any related Indemnification Claimant known to the City. Thereafter, the Indemnification Claimant shall participate in the attempted resolution of the Multi-Party Tort Claim and the related Indemnification Claim pursuant to the ADR Procedures, with the goal of resolving all related claims in a single settlement. Any dispute regarding whether the City is required to pay the defense costs of, or indemnify, any Indemnification Claimant shall be resolved pursuant to the City's and the Public Safety Unions' ordinary course nonbankruptcy procedures, and not by the Bankruptcy Court or through the ADR Procedures, and, notwithstanding the Initial Injunction and the ADR Injunction, the Public Safety Unions may seek relief from the Stay/Injunction for this purpose.

## II. **THE ADR PROCEDURES**

### A. **Offer Exchange Procedures**

The first stage of the ADR Procedures will be the following offer exchange procedures that require the parties to exchange settlement offers and thereby provide an opportunity to resolve the underlying Designated Claim on a consensual basis without any further proceedings (the "Offer Exchange Procedures").

-5-

ATI-2587951v7

1.  *Service of the ADR Notice*
    *and Settlement Offer by the City*

(a)     At any time following the filing of a proof of claim by the applicable Designated Claimant, [2] the City may serve upon the Designated Claimant, at the address listed on the Designated Claimant's most recently filed proof of claim or amended proof of claim, as well as upon any counsel of record in these cases for the Designated Claimant, the following materials (collectively, the "ADR Materials"):  (i) an ADR Notice, [3] (ii) a copy of the ADR Order and (iii) a copy of these ADR Procedures.  For transferred claims, the City also shall serve a copy of the ADR Materials on the transferee identified in the notice of transfer of claim.  The ADR Notice shall serve as (i) notice that a claim has been designated by the City as a Designated Claim (if not already designated herein as an Initial Designated Claim) and (ii) notice that the Designated Claim has been submitted to the ADR Procedures.  Promptly following the service of the ADR Materials on any Designated Claimant, the City shall file a notice with the Court indicating that the Designated Claim has been submitted to the ADR Procedures.

(b)     In the ADR Notice, the City:  (i) may request that the Designated Claimant verify or, as needed, correct, clarify or supplement certain information regarding the Designated Claim; (ii) shall include an offer by the City to settle the Designated Claim (a "Settlement Offer"); and (iii) may state whether the City consents to the adjudication of the Designated Claim by binding arbitration, as set forth below, if the Designated Claim is not resolved pursuant to the Offer Exchange Procedures.  The ADR Notice shall require the Designated Claimant to sign and return the ADR Notice along with a Permitted Response (as defined below) to the City so that it is received by the City no later than 28 days[4] after the mailing of the ADR Notice (the "Settlement Response Deadline").

---

[2]     The ADR Procedures will not be initiated with respect to a claim unless and until a timely proof of claim is filed.

[3]     The form of the ADR Notice is attached hereto as Annex 1 and incorporated herein by reference.  Although the City anticipates that the ADR Notice will be substantially in the form of Annex 1, the City reserves the right to modify the ADR Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

[4]     Rule 9006(a) of the Federal Rules of Bankruptcy Procedure shall apply to all time periods calculated in the ADR Procedures.

(c)     *Failure to sign and return the ADR Notice or to include a Permitted Response with the returned ADR Notice by the Settlement Response Deadline shall be deemed to be a denial by the Designated Claimant of the Settlement Offer, and the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.*

2.     <u>*The Permitted Responses*</u>

The only permitted responses to a Settlement Offer (together, the "<u>Permitted Responses</u>") are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (as further defined below, a "<u>Counteroffer</u>").  *If the ADR Notice is returned without a response or with a response that is not a Permitted Response, the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.*

3.     <u>*The Counteroffer*</u>

The Counteroffer shall be signed by an authorized representative of the Designated Claimant and shall identify the proposed amount that the Designated Claimant will accept as a prepetition claim against the City in settlement of the Designated Claim.  The Counteroffer may not exceed the amount or improve the priority set forth in the Designated Claimant's most recent timely filed proof of claim or amended proof of claim (but may liquidate any unliquidated amounts expressly referenced in a proof of claim).[5]  *A Counteroffer may not be for an unknown, unliquidated or indefinite amount or priority, or the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.*  All Counteroffers shall be for prepetition claims payable pursuant to the Chapter 9 Plan.  <u>See</u> Section II.D below.  With the agreement of the City, postpetition claims may be submitted to the ADR Procedures along with any related prepetition claims.

4.     <u>*Consent to Subsequent Binding Arbitration*</u>

As described in Sections II.B and II.C below, in the absence of a settlement at the conclusion of the Offer Exchange Procedures, the ADR Procedures contemplate submitting Designated Claims to Case Evaluation (as defined below).  Where no settlement is reached following Case Evaluation, the

---

[5]     A Designated Claimant may not amend its proof of claim solely for the purpose of proposing a Counteroffer of a higher amount or a better priority.  Any dispute over the validity of any Counteroffer may be submitted by the City to the Bankruptcy Court for review.

-7-

ADR Procedures contemplate submitting Designated Claims to binding arbitration, if the City and the Designated Claimant both agree to binding arbitration of the applicable Designated Claim (or in the case of Multi-Party Tort Claims, all parties agree). When returning the ADR Notice, therefore, the Designated Claimant is required to notify the Debtors if it consents to (and thereby opts in to) or does *not* consent to (and thereby opts out of) binding arbitration in the event that its Designated Claim ultimately is not resolved through the Offer Exchange Procedures or Case Evaluation. If the Designated Claimant returns the ADR Notice without expressly notifying the Debtors that it consents to, and seeks to opt into, binding arbitration, the Designated Claimant shall be deemed to have opted out of binding arbitration. Any Designated Claimant that does not consent to binding arbitration in its response to the ADR Notice may later consent in writing to binding arbitration, subject to the agreement of the City. If the City did not consent to binding arbitration in the ADR Notice, it may later consent to binding arbitration at any time in the process by providing a written notice to the Designated Claimant (including through an Arbitration Notice, as defined below). Consent to binding arbitration, once given, cannot subsequently be withdrawn. In addition, any attempt to refuse binding arbitration in the response to the ADR Notice shall be ineffective if the Designated Claimant previously consented in writing to binding arbitration as a means to resolve its claim(s), either before or after the commencement of the City's chapter 9 case on July 18, 2013 (the "Petition Date").

### 5. *The City's Response to a Counteroffer*

The City must respond to any Counteroffer within 14 days after its receipt of the Counteroffer (the "Response Deadline"), by returning a written response (as further defined below, a "Response Statement"). The Response Statement shall indicate that the City either: (a) accepts the Counteroffer; (b) rejects the Counteroffer, with or without making a revised Settlement Offer (a "Revised Settlement Offer"); (c) requests additional information or documentation so that the City may respond in good faith to the Counteroffer; or (d) terminates the Offer Exchange Procedures and advances the Designated Claim the next step of the ADR Procedures, as set forth below.

#### (a) *The City's Rejection of the Counteroffer Without Making a Revised Settlement Offer*

If the City rejects the Counteroffer without making a Revised Settlement Offer, (i) the Offer Exchange Procedures will be deemed terminated

ATI-2587951v7
13-53846-tjt Doc 2302 Filed 12/24/13 Entered 12/24/13 10:17:03 Page 24 of 62
13-53846-swr Doc 2965 Filed 03/01/14 Entered 03/01/14 11:10:00 Page 25 of 62

with respect to the Designated Claim and (ii) the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.

(b) *The City's Failure to Respond*

If the City fails to respond to the Counteroffer by the Response Deadline: (i) the Counteroffer will be deemed rejected by the City, (ii) the Offer Exchange Procedures will be deemed terminated with respect to the Designated Claim and (iii) the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.

(c) *Revised Settlement Offer*

If the City makes a Revised Settlement Offer by the Response Deadline, the Designated Claimant may accept the Revised Settlement Offer by providing the City with a written statement of acceptance no later than 14 days after the date of service of the Revised Settlement Offer (the "Revised Settlement Offer Response Deadline"). If the Designated Claimant does not accept the Revised Settlement Offer by the Revised Settlement Offer Response Deadline, the Revised Settlement Offer will be deemed rejected, and the Designated Claim automatically will advance to the next step of the ADR Procedures, as set forth below.

(d) *Request for Additional Information*

If the City requests additional information or documentation by the Response Deadline, the Designated Claimant shall serve such additional information or documentation so that it is received by the City within 14 days after such request. If the Designated Claimant timely responds, the City shall have 14 days to provide an amended Response Statement, which may include a Revised Settlement Offer as a counter to the Counteroffer. If the City does not provide an amended Response Statement within this period, or if the Designated Claimant fails to provide the requested information or documentation within the time allotted, the Designated Claim automatically will proceed to the next step of the ADR Procedures, as set forth below.

6. *Offer Exchange Termination Date*

Upon mutual written consent, the City and a Designated Claimant may exchange additional Revised Settlement Offers and Counteroffers for up to 21 days after the later of (a) the Revised Settlement Offer Response Deadline or (b) the expiration of the applicable timeframes provided for in Section II.A.5(d)

ATI-2587951v7

above with respect to requesting, receiving and responding to additional information or documentation. Any date that the Offer Exchange Procedures conclude without a resolution is referred to herein as the "Offer Exchange Termination Date."

7. *Ability to Settle Claims*

Nothing herein shall limit the ability of a Designated Claimant and the City to settle a Designated Claim by mutual consent at any time. All such settlements shall be subject to the terms of Section II.D below.

**B. Case Evaluation**

The next step of the ADR Procedures following the Offer Exchange Procedures is case evaluation ("Case Evaluation") before the Wayne County Mediation Tribunal Association (the "MTA") under the procedures set forth in Rules 2.403 and 2.404 of the Michigan Court Rules of 1985 ("MCR"), as provided for by Rule 16.3 of the Local Rules of the United States District Court for the Eastern District of Michigan. Copies of MCR §§ 2.403 and 2.404 are attached hereto collectively as Annex II.

All Designated Claims not settled through the Offer Exchange Procedures shall be referred to Case Evaluation unless the City and the applicable Designated Claimant previously have undergone Case Evaluation with respect to the applicable Designated Claim.[6] Additional parties may intervene in the Case Evaluation process solely by agreement between the City and the applicable Designated Claimant.

1. *Prioritization of Referral of*
   *Designated Claims to Case Evaluation*

As soon as reasonably practicable following the Offer Exchange Termination Date with respect to any Designated Claim, the City shall issue to the applicable Designated Claimant, any other parties to the Case Evaluation and the Clerk of the MTA (the "ADR Clerk"), a notice of case evaluation (a "Case

---

[6] Where the City and the applicable Designated Claimant previously underwent Case Evaluation with respect to the applicable Designated Claim, then the Designated Claim will proceed to the next step of the ADR Procedures unless the parties agree to conduct another Case Evaluation with respect to the Designated Claim.

-10-

Evaluation Notice") substantially in the form attached hereto as <u>Annex III</u>.  Given the large number of actual and potential prepetition litigation claims asserted or to be asserted against the City, however, the City anticipates that it will be necessary to prioritize the initiation of Case Evaluation proceedings.  In prioritizing among Designated Claims, the City may consider, along with any other factors the City deems relevant or appropriate in its sole discretion, (a) the absolute or relative difference between the final offers made by the City and the applicable Designated Claimant during the Offer Exchange Procedures, (b) the nature and complexity of the Designated Claim, (c) the status of any underlying lawsuit or (d) whether the Designated Claimant returned the ADR Notice and its level of participation in the ADR Procedures.

## 2. *Summary of Case Evaluation Rules and Procedures*

Except to the extent modified by the terms of these ADR Procedures, the Case Evaluation of any Designated Claim shall be governed by the rules and procedures set forth in MCR §§ 2.403 and 2.404.  The following provisions of MCR § 2.403, however, are expressly inapplicable to these Case Evaluation procedures:  (a) MCR §§ 2.403(A-C) (relating to the assignment of cases to Case Evaluation) and (b) MCR §§ 2.403(N-O) (relating to the posting of bonds for frivolous claims and defenses and the awarding of costs against a party that rejects a Case Evaluation and subsequently fails to achieve a superior result at trial).

The purpose of the Case Evaluation process is to obtain a nonbinding, confidential, monetary valuation of each Designated Claim that serves as a focal point for ongoing settlement negotiations between the parties.  Each Designated Claim shall be evaluated by a panel of three case evaluators (the "<u>Case Evaluation Panel</u>").  The Case Evaluation Panel hears the arguments of the parties at a short hearing (the "<u>Case Evaluation Hearing</u>") and, within 14 days following the Case Evaluation Hearing, issues its written evaluation of the Designated Claim.

### (a) *Fees and Costs for Case Evaluation, Derivative Claims*

Pursuant to MCR § 2.403(H), the fees and costs for each Case Evaluation proceeding will be $75.00 payable by each party to the ADR Clerk. Where one claim is derivative of another within the Case Evaluation proceeding, the claims will be treated as a single claim, with one fee to be paid and a single valuation to be made by the Case Evaluation Panel.  In addition, with the agreement of all of the parties, Multi-Party Tort Claims also may be treated as a

ATI-2587951v7
13-53846-tjt  Doc 2302-9  Filed 12/24/13  Entered 12/24/13 11:07:03  Page 27 of 28
13-53846-swr  Doc 2302  Filed 12/24/13  Entered 12/24/13 10:11:00  Page 27 of 62
of 62

single claim, with one fee to be paid and a single valuation to be made by the Case Evaluation Panel.[7]

(b)    *Scheduling of the Case Evaluation Hearing*

The ADR Clerk shall select the members of the Case Evaluation Panel in accordance with MCR § 2.404(C).  The ADR Clerk shall set a time and place for the Case Evaluation Hearing, consistent with MCR § 2.403(G)(1), and provide notice to the members of the Case Evaluation Panel and the parties to the Case Evaluation at least 42 days prior to the date set for the Case Evaluation Hearing.  Adjournments of the Case Evaluation Hearing may be granted only for good cause.

(c)    *The Case Evaluation Summary*

At least 14 days prior to the date scheduled for the Case Evaluation Hearing, each party shall serve a copy of a case evaluation summary (a "Case Evaluation Summary") and supporting documents on the other parties to the Case Evaluation and file a proof of service and three copies of the Case Evaluation Summary with the ADR Clerk.  The Case Evaluation Summary shall consist of a concise statement setting forth the party's factual and legal position on issues presented by the Designated Claim.  The Case Evaluation Summary shall not exceed 20 pages, double spaced, exclusive of attachments.  Quotations and footnotes may be single spaced.  At least one-inch margins shall be used, and printing shall not be smaller than 12-point font.  See MCR § 2.403(I)(3).

(d)    *Conduct of the Case Evaluation Hearing*

The Case Evaluation Hearing shall be conducted in accordance with MCR § 2.403(J).  Thus, for example:  (i) oral presentation shall be limited to 15 minutes per side unless multiple parties or unusual circumstances warrant addition time; (ii) no testimony will be taken or permitted of any party, (iii) factual information having a bearing on damages or liability must be supported by documentary evidence, if possible; and (iv) statements by the attorneys and the briefs or summaries are not admissible in any court or evidentiary proceeding.

(e)    *The Case Evaluation Panel's Decision*

Within 14 days following the Case Evaluation hearing, the Case Evaluation Panel will estimate the value of the Designated Claim (the "Evaluation")

---

[7]    If for any reason the costs for any Case Evaluation proceeding exceeds $75.00 per party, such costs shall be borne equally by each of the parties.

ATI-2587951v7
Case 1:13-cv-53846-tjt88-Doc 2302965 Filed 12/24/13 01 Entered 12/24/13 01 10:17 00 3:1 Page 29 of 62 of 62

and notify each party of the Evaluation in writing. The Case Evaluation Panel shall only liquidate the monetary value, if any, of the Designated Claim in light of the evidence and arguments presented at in the Case Evaluation Summary and at the Case Evaluation Hearing and shall not raise or purport to determine any issues relating to the potential treatment or priority of the Designated Claim in this chapter 9 case. All claims subject to an Evaluation shall be prepetition claims subject to treatment under a Chapter 9 Plan.

(f)     *Acceptance or Rejection of the Evaluation*

Within 28 days following the issuance of the Evaluation by the Case Evaluation Panel, each of the parties shall file a written acceptance or rejection of the Evaluation with the ADR Clerk. Each acceptance or rejection must encompass all claims as between any two parties to the Case Evaluation. The failure to file a written acceptance or rejection within 28 days constitutes a rejection of the Evaluation.

If the ADR Clerk informs such parties that they both have accepted the Evaluation then the Designated Claim shall be deemed settled, and the settlement as between such parties shall be documented and made of record in accordance with the procedures set forth in Section II.D below.

If one or both parties rejects the Evaluation, then the parties shall have a further 28 days to negotiate a consensual settlement of the Designated Claim. If no settlement is reached by the end of this period (the "Case Evaluation Termination Date") then the Designated Claim shall proceed to binding arbitration, if applicable.

## C.     <u>Binding Arbitration</u>

If the Designated Claimant previously consented in writing to binding arbitration as a means to resolve its claim(s) as set forth above (either in its response to the ADR Notice or by the terms of a separate written agreement either before or after the Petition Date), and if the City agrees to binding arbitration, then the Designated Claim shall be subject to binding arbitration, if such claim is not resolved in the Offer Exchange Procedures or in Case Evaluation.[8]     If the

---

[8]     The City's agreement to arbitration with respect to any Designated Claim shall be set forth in the Arbitration Notice, as defined below. In the case of Multi-Party Tort Claims, or if the City otherwise deems it necessary or appropriate in its discretion to resolve multiple Designated Claims on a

-13-

ATI-2587951v7

Designated Claimant has not expressly consented to binding arbitration in its response to the ADR Notice and has not otherwise expressly consented to binding arbitration, or if the City has not consented to binding arbitration, at the conclusion of Case Evaluation, the liquidation of the Designated Claim shall advance in accordance with the procedures for Unresolved Designated Claims set forth below.

1.   *Arbitration Notice*

Where the parties have agreed to binding arbitration, as soon as reasonably practicable following the Case Evaluation Termination Date with respect to any Designated Claim, the City shall serve on the applicable Designated Claimant (or their counsel if known), any other parties to the Case Evaluation and the ADR Clerk, a notice of arbitration (an "Arbitration Notice") substantially in the form attached hereto as Annex IV.  Additional parties may intervene in the binding arbitration process solely by agreement between the City and the applicable Designated Claimant.

2.   *Arbitration Rules and Procedures*

The arbitration of any Designated Claims shall be conducted by a single arbitrator selected by the ADR Clerk and shall be governed by the commercial arbitration rules of the American Arbitration Association (the "AAA"), as amended and effective on October 1, 2013 unless the parties agree otherwise (the "Arbitration Rules"), except where the Arbitration Rules are expressly modified by the terms of these ADR Procedures.  In the event of any conflict between the Arbitration Rules and the ADR Procedures, the ADR Procedures shall control.

(a)   *Governing Law*

The ADR Procedures, as they relate to arbitration proceedings, are governed by title 9 of the United States Code (the "Federal Arbitration Act"), except as modified herein.

_____

(continued…)

consolidated basis, the matter may proceed to binding arbitration solely with the consent of all parties.

-14-

(b)    *Selection of Arbitrator*

The ADR Clerk shall select the arbitrator and provide notice to the arbitrator and the parties of his or her appointment.  Any person appointed as an arbitrator:  (i) must be an impartial, neutral person; (ii) must be experienced (either from past arbitrations or former employment) in the law that is the subject of the Designated Claim; (iii) must have no financial or personal interest in the proceedings or, except when otherwise agreed by the parties, in any related matter; and (iv) upon appointment, must disclose any circumstances likely to create a reasonable inference of bias.  In the event that an arbitrator discloses circumstances likely to create a reasonable inference of bias, either (i) the parties may agree that such arbitrator may be replaced by the ADR Clerk or (ii) in case the parties disagree, the party seeking to replace the arbitrator may petition the Bankruptcy Court to make a final decision with respect to the replacement of the arbitrator.

(c)    *Fees and Costs for Binding Arbitration; Sharing*

The City is in the process of negotiating a rate with the MTA for arbitrations under these ADR Procedures.  Unless the parties expressly have agreed otherwise in writing (either before or after the Petition Date) as part of an agreement to submit Designated Claims to binding arbitration, the fees and costs charged by the arbitrator and the MTA shall be shared equally among the parties; provided, however, that the arbitrator, in the arbitrator's sole discretion, may assess fees and costs against any party that the arbitrator finds to be abusing or unduly delaying the arbitration process.  The arbitrator shall submit invoices to the MTA, which shall invoice the parties, according to the MTA's ordinary practices then in effect and subject to the MTA's ordinary payment terms then in effect.

(d)    *Time and Location of Arbitration Hearings*

All arbitration hearings shall be scheduled by the arbitrator, in consultation with the parties and shall be conducted in Detroit, Michigan unless otherwise agreed by all of the parties and the arbitrator.

No more than one case shall be scheduled per arbitrator per hearing day.  There shall be no more than three days of arbitration hearings scheduled by in any calendar week containing no legal holidays and no more than two days of arbitration hearings in any calendar week containing a legal holiday.

To the maximum extent practicable, the scheduling of arbitration hearings shall give due consideration to the convenience of the parties.  The

arbitrator shall provide written notice of the date, time and place of the arbitration to the parties within 14 days after the arbitrator's appointment.

(e) *Pre-Hearing Matters*

Any pre-hearing issues, matters or disputes (other than with respect to merits issues) shall be presented to the arbitrator telephonically (or by such other method agreed to by the arbitrator and the parties) for expeditious, final and binding resolution. Any pre-hearing issue, matter or dispute (other than with respect to merits issues) must be presented to the arbitrator not later than 21 days prior to the arbitration hearing so as to permit the arbitrator to review and rule upon the requests by telephonic or email communication at least five days prior to the arbitration hearing.

(f) *Limited Discovery*

There shall be no interrogatories. Any requests for production of documents, electronically stored information and things ("Document Requests") shall be made in writing and shall be served by electronic mail and overnight mail no later than by 5:00 p.m., Eastern Time, on a weekday that is not a legal holiday, no fewer than 42 days before the arbitration hearing, and shall be limited to no more than ten requests, including discrete subparts. Items requested in the Document Requests must be produced within 28 days after service of the Document Requests. Affidavits permitted under the Arbitration Rules (e.g., Rule 32 of the AAA rules) must be submitted at least 21 days prior to the scheduled arbitration hearing. Each party may depose up to three witnesses. Each deposition shall be limited to three hours. All depositions must be completed at least 21 days prior to the arbitration hearing. All documents, affidavits and deposition transcripts from discovery shall be confidential and shall not be either (i) disclosed to any person or party not participating in the arbitration proceeding or (ii) used for any purpose other than in connection with the arbitration proceeding, except as provided herein. Subject to approval by the arbitrator upon written request, each party may depose up to two additional witnesses and may serve up to five additional Document Requests. Any request for such additional depositions or Document Requests, and any objection to initial or additional requests for depositions or Document Requests, shall be made in writing and shall be submitted to the arbitrator and the applicable party within such time as to permit the arbitrator no fewer than three days in which to review and rule upon the request so that the ruling is issued, by telephonic or email communication, at least 14 days prior to the first such deposition or the deadline for production, as applicable. The arbitrator shall approve the request only if the requested depositions or Document

-16-

ATI-2587951v7

Requests are directly relevant to and necessary for the complete presentation of any party's case in the arbitration. Notwithstanding anything to the contrary in this paragraph (f), the arbitrator may modify any term of discovery set forth herein for good cause.

(g)     *Pre-Arbitration Statement*

On or before 14 days prior to the scheduled arbitration hearing, each party shall submit to the arbitrator and serve on the other party or parties by electronic mail and overnight mail a pre-arbitration statement (the "Pre-Arbitration Statement"). The Pre-Arbitration Statement shall not exceed 20 pages, double spaced, exclusive of attachments. Quotations and footnotes may be single spaced. At least one-inch margins shall be used, and printing shall not be smaller than 12-point font.

(h)     *Arbitration Hearing*

Unless otherwise agreed by the parties and the arbitrator or as provided herein, and subject to the limitations on number of arbitration hearings per week as set forth in Section II.C.2(d) above, the arbitration hearing must be held no later than 112 days after the date of appointment of the arbitrator. Each party shall have a maximum of three hours, including any rebuttal and cross-examination, within which to present its position at the arbitration hearing. The arbitration hearing is open only to the parties, their counsel and any witnesses. Non-party witnesses shall be sequestered. No post-hearing briefs may be filed, unless the arbitrator requests such briefs, in which case such briefing shall be subject to the issues, timing and page limitations the arbitrator imposes. There shall be no reply briefs.

(i)     *Arbitration Awards*

The arbitrator shall issue a short written opinion and award (the "Arbitration Award") within 14 days after the last day of the arbitration hearing, provided that the arbitrator can extend such period up to 30 days after the last day of the arbitration hearing. The arbitrator shall not be compensated for more than eight hours of deliberations on and preparation of the Arbitration Award. In no event shall the amount of any Arbitration Award exceed the claim amount shown on the Designated Claimant's most recent proof of claim prior to the service of the Arbitration Notice.

Except as otherwise agreed in writing by the parties in advance of the arbitration, any Arbitration Award shall only liquidate the applicable Designated

ATI-2587951v7
Case 13-53846-tjt  Doc 2305  Filed 12/24/13  Entered 12/24/13 10:17:03  Page 33 of 34
Case 13-53846-swr  Doc 2302  Filed 12/24/13  Entered 12/24/13 11:00:27  Page 33 of 61
of 62

Claim and shall not raise or purport to determine any issues relating to the potential treatment or priority of the Designated Claim in this chapter 9 case. The Arbitration Award may not award the Designated Claimant with: (i) punitive damages; (ii) interest, attorneys' fees or other fees and costs, unless permissible under section 506(b) of the Bankruptcy Code; (iii) an award under any penalty rate or penalty provision of the type specified in section 365(b)(2)(D) of the Bankruptcy Code; (iv) amounts associated with obligations that are subject to disallowance under section 502(b) of the Bankruptcy Code; (v) specific performance, other compulsory injunctive relief, restrictive, restraining or prohibitive injunctive relief or any other form of equitable remedy; or (vi) any relief not among the foregoing, but otherwise impermissible under applicable bankruptcy or non-bankruptcy law. The entry of an Arbitration Award shall not grant the Designated Claimant any enforcement or collection rights except as permitted under a Chapter 9 Plan, and the Stay/Injunction shall apply to the Arbitration Award. For the avoidance of doubt, all proceedings against the City or any Indemnification Claimant relating to a Designated Claim following the entry of an Arbitration Award shall remain subject to the Stay/Injunction, absent further order of the Bankruptcy Court. Any aspect of an Arbitration Award that violates the foregoing rules and limitations shall be void without further action of any court.

(j)     *Vacation of Arbitration Awards*

All Arbitration Awards shall be final and binding. Other than the Designated Claimants' identities, the claims register number(s) assigned to the applicable arbitrated Designated Claims, the dollar amounts of the Designated Claims as awarded in the Arbitration Awards, and except as otherwise required by law, all Arbitration Awards shall be treated as confidential. No party shall have the right to request that an Arbitration Award be vacated except: (i) in the event that an Arbitration Award violates the Bankruptcy Code or these ADR Procedures, such as by purporting to grant priority status to any Arbitration Award, in which case any application to vacate must be made to the Bankruptcy Court; or (ii) pursuant to the provisions of the Federal Arbitration Act, in which case any application to vacate must be to the United States District Court for the Eastern District of Michigan. Any further proceedings shall be governed by the Federal Arbitration Act. Failure to timely apply to vacate shall result in the loss of any vacation rights. Once the Arbitration Award is final, the City shall update the claims docket in this case accordingly and may file any notice of the liquidated amount of the Designated Claim that it deems necessary or appropriate for such purpose.

ATI-2587951v7

The arbitration procedures described herein may be modified only after the appointment of an arbitrator in the applicable arbitration proceeding and only upon the mutual written consent of the applicable arbitrator and each of the parties.

**D.    Approval and Satisfaction of Any Settlement or Arbitration Award**

**If you hold a Designated Claim with respect to which settlement has been reached through the ADR Procedures or an Arbitration Award has been entered, please read the following carefully.  Except as otherwise agreed by the City, you will receive an allowed general unsecured nonpriority claim against the City that will be treated in accordance with the Chapter 9 Plan in the City's bankruptcy case *and not* a full cash payment of the settlement amount of your Designated Claim.  Notwithstanding the foregoing, any disputes about the priority of a Designated Claim may be raised with and determined by the Bankruptcy Court after the conclusion of the ADR Procedures.**  Payment of any settlement or award under the ADR Procedures shall be governed by the procedures set forth in this Section II.D.

1.    *Settlements Permitted at Any Stage of ADR Procedures*

Designated Claims may be settled by the City and a Designated Claimant before or during the Offer Exchange Procedures, Case Evaluation or any arbitration proceeding, or at any other point in the process.  Nothing herein shall prevent the parties from settling any claim at any time.

2.    *Release*

All settlements shall include a release of all claims relating to the underlying occurrence, including the Designated Claim and the Designated Claimant's claim against any other party with respect to whom the Stay/Injunction applies.

3.    *Settlement Reporting*

By no later than the 91st day following the General Bar Date or as soon thereafter as reasonably practicable, and every 91 days thereafter, the City will file a report with the Bankruptcy Court that identifies all Designated Claims

ATI-2587951v7
13-53846-tjt   Doc 2302   Filed 12/24/13   Entered 12/24/13 10:17:03   Page 35 of 62

and the status of each such Designated Claim as it moves through the stages of these ADR Procedures.

4. *Satisfaction of Any Settlement or Award*

Payment of any settlement or award on account of any Designated Claim arising prior to the Petition Date shall be in the form of an allowed general unsecured nonpriority claim to be paid in the amount and form as set forth in the Chapter 9 Plan, except (a) as otherwise agreed by the City; or (b) with respect to the priority of the claim, as determined by the Bankruptcy Court as provided in Section II.D above. Notwithstanding the foregoing, nothing herein shall limit, expand or otherwise modify the City's authority to settle or pay claims or the City's authority over its property and revenues under section 904 of the Bankruptcy Code. The authority to settle Designated Claims pursuant to the ADR Procedures will be in addition to, and cumulative with, any existing authority to resolve claims against the City.

For the avoidance of doubt, all proceedings against the City (or, in the case of Multi-Party Tort Claims, against the applicable Indemnification Claimant) following the liquidation of any settlement or award shall remain subject to the Stay/Injunction, absent further order of the Court.

E. **Failure to Resolve a Designated Claim Through ADR Procedures**

1. *Liquidation of Unresolved*
   *Designated Claims in Bankruptcy Court*

Designated Claims not resolved through the ADR Procedures ("Unresolved Designated Claims") shall proceed to litigation to be liquidated. Unless the City agrees otherwise, liquidation of any Unresolved Designated Claim shall proceed in the Bankruptcy Court (to the extent that the Bankruptcy Court has subject matter jurisdiction over the Unresolved Designated Claim) as soon as practicable following the date that the ADR Procedures are concluded for an Unresolved Designated Claim (the "ADR Completion Date").[9] Such litigation will

---

[9] With respect to Unresolved Designated Claims, the ADR Completion Date will be the Case Evaluation Termination Date except where the the ADR Procedures are terminated sooner, such as where Case Evaluation was conducted with respect to a Designated Claim prior to the Petition Date, and the parties do not agree to conduct a second round of Case Evaluation. In that

-20-

be initiated by the filing of a claim objection by the City (a "Claim Objection") within 35 days after the ADR Completion Date (the "Claim Objection Deadline"). Disputes over the subject matter jurisdiction of the Bankruptcy Court shall be determined by the Bankruptcy Court, and the Designated Claimants shall retain whatever rights they have to seek withdrawal of the reference, abstention or other procedural relief in connection with a Claim Objection. *For the avoidance of doubt, consistent with 28 U.S.C. § 157(b)(5), personal injury tort and wrongful death claims shall not be heard by the Bankruptcy Court and shall be subject to Section II.E.2 below.*

2. *Liquidation of Unresolved Designated Claims in Other Courts*

Except as provided below, if the Unresolved Designated Claim cannot be adjudicated in the Bankruptcy Court because of lack of, or limitations upon, subject matter jurisdiction or if the City does not file a Claim Objection by the Claim Objection Deadline (any such claim, a "Non-Bankruptcy Claim"), then liquidation of any such Non-Bankruptcy Claim shall proceed in either (a) the non-bankruptcy forum in which the Non-Bankruptcy Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Non-Bankruptcy Claim was not pending in any forum on the Petition Date, then in the United States District Court for the Eastern District of Michigan or such other nonbankruptcy forum selected by the Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the Non-Bankruptcy Claim, (iii) has *in rem* jurisdiction over the property involved in the Non-Bankruptcy Claim (if applicable) and (iv) is a proper venue. If necessary, any disputes regarding the application of this Section II.E.2 shall be determined by the Bankruptcy Court; provided that disputes about the jurisdiction of a matter presented to a non-bankruptcy court may be determined by such court.

The Stay/Injunction shall be deemed modified with respect to any Non-Bankruptcy Claim as set forth herein unless, within 35 days of the ADR Completion Date, the City files a notice (a "Stay Notice") that it intends for the Stay/Injunction to remain in effect with respect to a Non-Bankruptcy Claim. If the City files a Stay Notice, the Stay/Injunction shall remain in place, and the applicable Designated Claimant may seek relief from the Stay/Injunction under the

_____
(continued…)

instance, the ADR Completion Date will be the Offer Exchange Termination Date.

ATI-2587951v7

standards set forth in section 362(d) of the Bankruptcy Code. In addition, with respect to any Non-Bankruptcy Claims that are Multi-Party Tort Claims, an Indemnification Claimant may file a motion within 35 days of the ADR Completion Date seeking to maintain the Stay/Injunction as to the Indemnification Claimant for good cause shown.

If the City does not file a Stay Notice (or in the case of Multi-Party Tort Claims, no Indemnification Claimant asserts and establishes cause to maintain the Stay/Injunction) with respect to a Non-Bankruptcy Claim, then the Stay/Injunction shall be deemed modified solely for the purpose of, and to the extent necessary for, liquidating such Non-Bankruptcy Claim in an appropriate non-bankruptcy forum, as provided for above. For the avoidance of doubt, following the liquidation of a Non-Bankruptcy Claim, all proceedings against the City or any Indemnification Claimant relating to the Non-Bankruptcy Claim shall remain subject to the Stay/Injunction, absent further order of the Bankruptcy Court.

Notwithstanding anything herein, the City and any Designated Claimant may agree to terminate the ADR Procedures at any time and proceed to litigation of the applicable Designated Claim, as set forth herein.

**F.** **Duty to Negotiate in Good Faith**

During the period of the ADR Procedures, the Designated Claimant and the City shall negotiate in good faith in an attempt to reach an agreement for the compromise of the applicable Designated Claim.

**G.** **Failure to Comply with the ADR Procedures**

If a Designated Claimant fails to comply with the ADR Procedures, negotiate in good faith or cooperate with the City as may be necessary to effectuate the ADR Procedures, the Bankruptcy Court may, after notice and a hearing, find such conduct to be in violation of the ADR Order or an abandonment of or failure to prosecute the Designated Claim, or both. Upon such findings, the Bankruptcy Court may, among other things, disallow and expunge the Designated Claim, in whole or part, or grant such other or further remedy deemed just and appropriate under the circumstances, including, without limitation, awarding attorneys' fees, other fees and costs to the City.

Dated: [_____], 2013                    BY ORDER OF THE COURT

# **ANNEX I**

ATI-2587951v7

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------x
                                          :
In re                                     :          Chapter 9
                                          :
CITY OF DETROIT, MICHIGAN,                :          Case No. 13-53846
                                          :
                              Debtor.     :          Hon. Steven W. Rhodes
                                          :
                                          :
-------------------------------------------------------x


## ADR NOTICE

Service Date:

Designated Claimant(s):

Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

**Deadline to Respond:**


      By this ADR Notice, the City of Detroit (the "<u>City</u>") hereby submits the above-identified claim(s) (the "<u>Designated Claim(s)</u>") in the City's chapter 9 case to alternative dispute resolution, pursuant to the procedures (the "<u>ADR Procedures</u>") established by the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims, entered by the United States Bankruptcy Court for the Eastern District of Michigan (the "<u>Bankruptcy Court</u>") on [_____], 2013.  A copy of the ADR Procedures is enclosed for your reference.

      The City has reviewed your Designated Claim(s) and, pursuant to the ADR Procedures, offers the amount(s) set forth below as a general unsecured

nonpriority claim in full and final settlement of your Designated Claim(s) (the "Settlement Offer").

You are required to return this ADR Notice with a Permitted Response (as defined below) to the Settlement Offer by no later than the **Deadline to Respond** indicated above.

In addition, to the extent your most recent proof(s) of claim does not: (a) state the correct amount of your Designated Claim(s); (b) expressly identify each and every cause of action and legal theory on which you base your Designated Claim(s); (c) include current, correct and complete contact information of your counsel or other representative; or (d) provide all documents on which you rely in support of your Designated Claim(s), you hereby are requested to provide all such information and documentation with your Permitted Response.

IF YOU DO NOT RETURN THIS ADR NOTICE WITH THE REQUESTED INFORMATION AND A PERMITTED RESPONSE TO THE SETTLEMENT OFFER TO **[INSERT THE CITY'S REPRESENTATIVE]** SO THAT IT IS RECEIVED BY THE DEADLINE TO RESPOND, YOU WILL BE DEEMED TO HAVE REJECTED THE SETTLEMENT OFFER AND THE LIQUIDATION OF YOUR DESIGNATED CLAIMS WILL ADVANCE TO CASE EVALUATION AS SET FORTH IN SECTION II.B OF THE ADR PROCEDURES.

IN ADDITION, YOU ARE REQUIRED TO INDICATE EXPRESSLY WHETHER YOU CONSENT TO **BINDING ARBITRATION** YOUR DESIGNATED CLAIM CANNOT BE SETTLED THROUGH THE OFFER EXCHANGE PROCEDURES OR CASE EVALUATION. PLEASE COMPLETE THE APPROPRIATE BOX BELOW TO INDICATE WHETHER YOU DO OR DO NOT CONSENT TO **BINDING ARBITRATION**. *IF YOU DO NOT COMPLETE THE BOX BELOW, YOU WILL BE DEEMED TO HAVE REJECTED BINDING ARBITRATION WITH RESPECT TO YOUR DESIGNATED CLAIM.* PLEASE NOTE THAT YOUR CONSENT TO **BINDING ARBITRATION** CANNOT SUBSEQUENTLY BE WITHDRAWN.

In addition, any attempt to opt out of binding arbitration in the response to this Notice shall be ineffective if you previously have consented in writing (either prepetition or postpetition) to binding arbitration as a means to resolve your claim(s). Details about the arbitration process, including the sharing of fees, are set forth in Section II.C of the ADR Procedures.

ATI-2587951v7
Case 13-53846-tjt Doc 2302-9 Filed 12/24/13 Entered 12/24/13 10:17:03 Page 42 of 62

Note that binding arbitration will only take place if **all parties** to a claim dispute – including the City – agree to submit the dispute to arbitration. **[Optional:  May add statement about the City's consent to binding arbitration, if desired.]**

YOU MUST RESPOND TO THE FOLLOWING SETTLEMENT OFFER:

**Settlement Offer**:  The City offers you an allowed general unsecured nonpriority claim in the amount of **[$_____]** against the City in full satisfaction of your Designated Claim(s), to be satisfied in accordance with any plan of adjustment of debts confirmed and implemented in the City's chapter 9 case.

The only permitted responses (the "Permitted Responses") to the Settlement Offer are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (a "Counteroffer").  Accordingly, please select your Permitted Response below:

_____ I/we agree to and accept the terms of the Settlement Offer.

**or**

_____ I/we reject the Settlement Offer.  However, I/we will accept an allowed general unsecured claim against the City in the amount of $_____ in full satisfaction of the Designated Claim(s), to be satisfied in accordance with any plan of adjustment of debts confirmed and implemented in the City's chapter 9 case.

SECTION II.A.3 OF THE ADR PROCEDURES SETS FORTH THE RESTRICTIONS ON COUNTEROFFERS.  YOUR COUNTEROFFER MAY NOT INCLUDE UNKNOWN, UNLIQUIDATED OR SIMILAR AMOUNTS AND MAY NOT EXCEED THE AMOUNT OR IMPROVE THE PRIORITY SET FORTH IN YOUR MOST RECENT TIMELY FILED OR AMENDED PROOF OF CLAIM.  YOU MAY NOT AMEND YOUR PROOF OF CLAIM SOLELY FOR THE PURPOSE OF PROPOSING A COUNTEROFFER OF A HIGHER AMOUNT OR A BETTER PRIORITY.  IF YOU RETURN THIS FORM WITH A COUNTEROFFER THAT DOES NOT COMPLY WITH THE TERMS OF THE ADR PROCEDURES YOU WILL BE DEEMED TO HAVE REJECTED THE SETTLEMENT OFFER AND THE LIQUIDATION OF YOUR

ATI-2587951v7
Case 13-53846-tjt  Doc 2302  Filed 12/24/13  Entered 12/24/13 10:17:03  Page 42 of 43
13-53846-swr  Doc 2965  Filed 03/01/14  Entered 03/01/14 11:10:03  Page 42 of 62

DESIGNATED CLAIMS WILL ADVANCE TO CASE EVALUATION AS SET FORTH IN SECTION II.B OF THE ADR PROCEDURES.

Please indicate below whether you consent to binding arbitration with respect to the Designated Claim(s):

_____ I/WE **CONSENT** TO BINDING ARBITRATION.

_____ I/WE **DO NOT CONSENT** TO BINDING ARBITRATION.

I acknowledge that my/our consent to binding arbitration, once given, cannot be withdrawn.

[Signature of the Designated Claimant's Authorized Representative]

By: _____
[Printed Name]

**[N.B. – Additional Signature Lines as Needed.]**

[Signature of the Designated Claimant's Authorized Representative]

By: _____
[Printed Name]

Case 13-53846-tjt Doc 2302 Filed 12/24/13 Entered 12/24/13 01:17:03 Page 44 of 61
Case 13-53846-tjt Doc 2965 Filed 12/24/13 Entered 12/24/13 10:12:00 Page 43 of 62

# **ANNEX II**

ATI-2587951v7

## Rule 2.403 Case Evaluation

(A) Scope and Applicability of Rule.

(1) A court may submit to case evaluation any civil action in which the relief sought is primarily money damages or division of property.

(2) Case evaluation of tort cases filed in circuit court is mandatory beginning with actions filed after the effective dates of Chapters 49 and 49A of the Revised Judicature Act, as added by 1986 PA 178.

(3) A court may exempt claims seeking equitable relief from case evaluation for good cause shown on motion or by stipulation of the parties if the court finds that case evaluation of such claims would be inappropriate.

(4) Cases filed in district court may be submitted to case evaluation under this rule. The time periods set forth in subrules (B)(1), (G)(1), (L)(1) and (L)(2) may be shortened at the discretion of the district judge to whom the case is assigned.

(B) Selection of Cases.

(1) The judge to whom an action is assigned or the chief judge may select it for case evaluation by written order after the filing of the answer

(a) on written stipulation by the parties,

(b) on written motion by a party, or

(c) on the judge's own initiative.

(2) Selection of an action for case evaluation has no effect on the normal progress of the action toward trial.

(C) Objections to Case Evaluation.

(1) To object to case evaluation, a party must file a written motion to remove from case evaluation and a notice of hearing of the motion and serve a copy on the attorneys of record and the ADR clerk within 14 days after notice of the order assigning the action to case evaluation. The motion must be set for hearing within 14 days after it is filed, unless the court orders otherwise.

(2) A timely motion must be heard before the case is submitted to case evaluation.

(D) Case Evaluation Panel.

(1) Case evaluation panels shall be composed of 3 persons.

(2) The procedure for selecting case evaluation panels is as provided in MCR 2.404.

(3) A judge may be selected as a member of a case evaluation panel, but may not preside at the trial of any action in which he or she served as a case evaluator.

(4) A case evaluator may not be called as a witness at trial.

ATI-2587951v7

(E) Disqualification of Case Evaluators. The rule for disqualification of a case evaluator is the same as that provided in MCR 2.003 for the disqualification of a judge.

(F) ADR Clerk. The court shall designate the ADR clerk specified under MCR 2.410, or some other person, to administer the case evaluation program. In this rule and MCR 2.404, "ADR clerk" refers to the person so designated.

(G) Scheduling Case Evaluation Hearing.

(1) The ADR clerk shall set a time and place for the hearing and send notice to the case evaluators and the attorneys at least 42 days before the date set.

(2) Adjournments may be granted only for good cause, in accordance with MCR 2.503.

(H) Fees.

(1) Each party must send a check for $75 made payable in the manner and within the time specified in the notice of the case evaluation hearing. However, if a judge is a member of the panel, the fee is $50. If the order for case evaluation directs that payment be made to the ADR clerk, the ADR clerk shall arrange payment to the case evaluators. Except by stipulation and court order, the parties may not make any other payment of fees or expenses to the case evaluators than that provided in this subrule.

(2) Only a single fee is required of each party, even where there are counterclaims, cross-claims, or third-party claims. A person entitled to a fee waiver under MCR 2.002 is entitled to a waiver of fees under this rule.

(3) If one claim is derivative of another (e.g., husband-wife, parent-child) they must be treated as a single claim, with one fee to be paid and a single award made by the case evaluators.

(4) Fees paid pursuant to subrule (H) shall be refunded to the parties if

(a) the court sets aside the order submitting the case to case evaluation or on its own initiative adjourns the case evaluation hearing, or

(b) the parties notify the ADR clerk in writing at least 14 days before the case evaluation hearing of the settlement, dismissal, or entry of judgment disposing of the action, or of an order of adjournment on stipulation or the motion of a party.

If case evaluation is rescheduled at a later time, the fee provisions of subrule (H) apply regardless of whether previously paid fees have been refunded.

(5) Fees paid pursuant to subrule (H) shall not be refunded to the parties if

(a) in the case of an adjournment, the adjournment order sets a new date for case evaluation and the fees are applied to the new date, or

(b) the request for and granting of adjournment is made within 14 days of the scheduled case evaluation, unless waived for good cause.

Penalties for late filing of papers under subrule (I)(2) are not to be refunded.

(I) Submission of Summary and Supporting Documents.

    (1) Unless otherwise provided in the notice of hearing, at least 14 days before the hearing, each party shall

        (a) serve a copy of the case evaluation summary and supporting documents in accordance with MCR 2.107, and

        (b) file a proof of service and three copies of a case evaluation summary and supporting documents with the ADR clerk.

    (2) Each failure to timely file and serve the materials identified in subrule (1) and each subsequent filing of supplemental materials within 14 days of the hearing, subjects the offending attorney or party to a $150 penalty to be paid in the manner specified in the notice of the case evaluation hearing. An offending attorney shall not charge the penalty to the client, unless the client agreed in writing to be responsible for the penalty.

    (3) The case evaluation summary shall consist of a concise summary setting forth that party's factual and legal position on issues presented by the action. Except as permitted by the court, the summary shall not exceed 20 pages double spaced, exclusive of attachments. Quotations and footnotes may be single spaced. At least one inch margins must be used, and printing shall not be smaller than 12-point font.

(J) Conduct of Hearing.

    (1) A party has the right, but is not required, to attend a case evaluation hearing. If scars, disfigurement, or other unusual conditions exist, they may be demonstrated to the panel by a personal appearance; however, no testimony will be taken or permitted of any party.

    (2) The rules of evidence do not apply before the case evaluation panel. Factual information having a bearing on damages or liability must be supported by documentary evidence, if possible.

    (3) Oral presentation shall be limited to 15 minutes per side unless multiple parties or unusual circumstances warrant additional time. Information on settlement negotiations not protected under MCR 2.412 and applicable insurance policy limits shall be disclosed at the request of the case evaluation panel.

    (4) Statements by the attorneys and the briefs or summaries are not admissible in any court or evidentiary proceeding.

    (5) Counsel or the parties may not engage in ex parte communications with the case evaluators concerning the action prior to the hearing. After the evaluation, the case evaluators need not respond to inquiries by the parties or counsel regarding the proceeding or the evaluation.

(K) Decision.

(1) Within 14 days after the hearing, the panel will make an evaluation and notify the attorney for each party of its evaluation in writing. If an award is not unanimous, the evaluation must so indicate.

(2) Except as provided in subrule (H)(3), the evaluation must include a separate award as to each plaintiff's claim against each defendant and as to each cross-claim, counterclaim, or third-party claim that has been filed in the action. For the purpose of this subrule, all such claims filed by any one party against any other party shall be treated as a single claim.

(3) The evaluation may not include a separate award on any claim for equitable relief, but the panel may consider such claims in determining the amount of an award.

(4) In a tort case to which MCL 600.4915(2) or MCL 600.4963(2) applies, if the panel unanimously finds that a party's action or defense as to any other party is frivolous, the panel shall so indicate on the evaluation. For the purpose of this rule, an action or defense is "frivolous" if, as to all of a plaintiff's claims or all of a defendant's defenses to liability, at least 1 of the following conditions is met:

    (a) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the opposing party.

    (b) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

    (c) The party's legal position was devoid of arguable legal merit.

(5) In an action alleging medical malpractice to which MCL 600.4915 applies, the evaluation must include a specific finding that

    (a) there has been a breach of the applicable standard of care,

    (b) there has not been a breach of the applicable standard of care, or

    (c) reasonable minds could differ as to whether there has been a breach of the applicable standard of care.

(L) Acceptance or Rejection of Evaluation.

(1) Each party shall file a written acceptance or rejection of the panel's evaluation with the ADR clerk within 28 days after service of the panel's evaluation. Even if there are separate awards on multiple claims, the party must either accept or reject the evaluation in its entirety as to a particular opposing party. The failure to file a written acceptance or rejection within 28 days constitutes rejection.

(2) There may be no disclosure of a party's acceptance or rejection of the panel's evaluation until the expiration of the 28-day period, at which time the ADR clerk shall send a notice indicating each party's acceptance or rejection of the panel's evaluation.

(3) In case evaluations involving multiple parties the following rules apply:

    (a) Each party has the option of accepting all of the awards covering the claims by or against that party or of accepting some and rejecting others.

ATI-2587951v7

However, as to any particular opposing party, the party must either accept or reject the evaluation in its entirety.

(b) A party who accepts all of the awards may specifically indicate that he or she intends the acceptance to be effective only if

(i) all opposing parties accept, and/or

(ii) the opposing parties accept as to specified coparties.

If such a limitation is not included in the acceptance, an accepting party is deemed to have agreed to entry of judgment, or dismissal as provided in subrule (M)(1), as to that party and those of the opposing parties who accept, with the action to continue between the accepting party and those opposing parties who reject.

(c) If a party makes a limited acceptance under subrule (L)(3)(b) and some of the opposing parties accept and others reject, for the purposes of the cost provisions of subrule (O) the party who made the limited acceptance is deemed to have rejected as to those opposing parties who accept.

(M) Effect of Acceptance of Evaluation.

(1) If all the parties accept the panel's evaluation, judgment will be entered in accordance with the evaluation, unless the amount of the award is paid within 28 days after notification of the acceptances, in which case the court shall dismiss the action with prejudice. The judgment or dismissal shall be deemed to dispose of all claims in the action and includes all fees, costs, and interest to the date it is entered, except for cases involving rights to personal protection insurance benefits under MCL 500.3101 *et seq.*, for which judgment or dismissal shall not be deemed to dispose of claims that have not accrued as of the date of the case evaluation hearing.

(2) If only a part of an action has been submitted to case evaluation pursuant to subrule (A)(3) and all of the parties accept the panel's evaluation, the court shall enter an order disposing of only those claims.

(3) In a case involving multiple parties, judgment, or dismissal as provided in subrule (1), shall be entered as to those opposing parties who have accepted the portions of the evaluation that apply to them.

(N) Proceedings After Rejection.

(1) If all or part of the evaluation of the case evaluation panel is rejected, the action proceeds to trial in the normal fashion.

(2) If a party's claim or defense was found to be frivolous under subrule (K)(4), that party may request that the court review the panel's finding by filing a motion within 14 days after the ADR clerk sends notice of the rejection of the case evaluation award.

(a) The motion shall be submitted to the court on the case evaluation summaries and documents that were considered by the case evaluation panel. No other exhibits or testimony may be submitted. However, oral argument on the motion shall be permitted.

ATI-2587951v7

(b) After reviewing the materials submitted, the court shall determine whether the action or defense is frivolous.

(c) If the court agrees with the panel's determination, the provisions of subrule (N)(3) apply, except that the bond must be filed within 28 days after the entry of the court's order determining the action or defense to be frivolous.

(d) The judge who hears a motion under this subrule may not preside at a nonjury trial of the action.

(3) Except as provided in subrule (2), if a party's claim or defense was found to be frivolous under subrule (K)(4), that party shall post a cash or surety bond, pursuant to MCR 3.604, in the amount of $5,000 for each party against whom the action or defense was determined to be frivolous.

(a) The bond must be posted within 56 days after the case evaluation hearing or at least 14 days before trial, whichever is earlier.

(b) If a surety bond is filed, an insurance company that insures the defendant against a claim made in the action may not act as the surety.

(c) If the bond is not posted as required by this rule, the court shall dismiss a claim found to have been frivolous, and enter the default of a defendant whose defense was found to be frivolous. The action shall proceed to trial as to the remaining claims and parties, and as to the amount of damages against a defendant in default.

(d) If judgment is entered against the party who posted the bond, the bond shall be used to pay any costs awarded against that party by the court under any applicable law or court rule. MCR 3.604 applies to proceedings to enforce the bond.

(4) The ADR clerk shall place a copy of the case evaluation and the parties' acceptances and rejections in a sealed envelope for filing with the clerk of the court. In a nonjury action, the envelope may not be opened and the parties may not reveal the amount of the evaluation until the judge has rendered judgment.

(O) Rejecting Party's Liability for Costs.

(1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

(2) For the purpose of this rule "verdict" includes,

(a) a jury verdict,

(b) a judgment by the court after a nonjury trial,

(c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation.

ATI-2587951v7

(3) For the purpose of subrule (O)(1), a verdict must be adjusted by adding to it assessable costs and interest on the amount of the verdict from the filing of the complaint to the date of the case evaluation, and, if applicable, by making the adjustment of future damages as provided by MCL 600.6306. After this adjustment, the verdict is considered more favorable to a defendant if it is more than 10 percent below the evaluation, and is considered more favorable to the plaintiff if it is more than 10 percent above the evaluation. If the evaluation was zero, a verdict finding that a defendant is not liable to the plaintiff shall be deemed more favorable to the defendant.

(4) In cases involving multiple parties, the following rules apply:

(a) Except as provided in subrule (O)(4)(b), in determining whether the verdict is more favorable to a party than the case evaluation, the court shall consider only the amount of the evaluation and verdict as to the particular pair of parties, rather than the aggregate evaluation or verdict as to all parties. However, costs may not be imposed on a plaintiff who obtains an aggregate verdict more favorable to the plaintiff than the aggregate evaluation.

(b) If the verdict against more than one defendant is based on their joint and several liability, the plaintiff may not recover costs unless the verdict is more favorable to the plaintiff than the total case evaluation as to those defendants, and a defendant may not recover costs unless the verdict is more favorable to that defendant than the case evaluation as to that defendant.

(c) Except as provided by subrule (O)(10), in a personal injury action, for the purpose of subrule (O)(1), the verdict against a particular defendant shall not be adjusted by applying that defendant's proportion of fault as determined under MCL 600.6304(1)-(2).

(5) If the verdict awards equitable relief, costs may be awarded if the court determines that

(a) taking into account both monetary relief (adjusted as provided in subrule [O][3]) and equitable relief, the verdict is not more favorable to the rejecting party than the evaluation, or, in situations where both parties have rejected the evaluation, the verdict in favor of the party seeking costs is more favorable than the case evaluation, and

(b) it is fair to award costs under all of the circumstances.

(6) For the purpose of this rule, actual costs are

(a) those costs taxable in any civil action, and

(b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation.

For the purpose of determining taxable costs under this subrule and under MCR 2.625, the party entitled to recover actual costs under this rule shall be considered the prevailing party.

ATI-2587951v7

(7) Costs shall not be awarded if the case evaluation award was not unanimous. If case evaluation results in a nonunanimous award, a case may be ordered to a subsequent case evaluation hearing conducted without reference to the prior case evaluation award, or other alternative dispute resolution processes, at the expense of the parties, pursuant to MCR 2.410(C)(1).

(8) A request for costs under this subrule must be filed and served within 28 days after the entry of the judgment or entry of an order denying a timely motion for a new trial or to set aside the judgment.

(9) In an action under MCL 436.1801, if the plaintiff rejects the award against the minor or alleged intoxicated person, or is deemed to have rejected such an award under subrule (L)(3)(c), the court shall not award costs against the plaintiff in favor of the minor or alleged intoxicated person unless it finds that the rejection was not motivated by the need to comply with MCL 436.1801(6).

(10) For the purpose of subrule (O)(1), in an action filed on or after March 28, 1996, and based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, a verdict awarding damages shall be adjusted for relative fault as provided by MCL 600.6304.

(11) If the "verdict" is the result of a motion as provided by subrule (O)(2)(c), the court may, in the interest of justice, refuse to award actual costs.

## Rule 2.404 Selection of Case Evaluation Panels

(A) Case Evaluator Selection Plans.

(1) Requirement. Each trial court that submits cases to case evaluation under MCR 2.403 shall adopt by local administrative order a plan to maintain a list of persons available to serve as case evaluators and to assign case evaluators from the list to panels. The plan must be in writing and available to the public in the ADR clerk's office.

(2) Alternative Plans.

(a) A plan adopted by a district or probate court may use the list of case evaluators and appointment procedure of the circuit court for the circuit in which the court is located.

(b) Courts in adjoining circuits or districts may jointly adopt and administer a case evaluation plan.

(c) If it is not feasible for a court to adopt its own plan because of the low volume of cases to be submitted or because of inadequate numbers of available case evaluators, the court may enter into an agreement with a neighboring court to refer cases for case evaluation under the other court's system. The agreement may provide for payment by the referring court to cover the cost of administering case evaluation. However, fees and costs may not be assessed against the parties to actions evaluated except as provided by MCR 2.403.

(d) Other alternative plans must be submitted as local court rules under MCR 8.112(A).

ATI-2587951v7

(B) Lists of Case Evaluators.

(1) Application. An eligible person desiring to serve as a case evaluator may apply to the ADR clerk to be placed on the list of case evaluators. Application forms shall be available in the office of the ADR clerk. The form shall include an optional section identifying the applicant's gender and racial/ethnic background. The form shall include a certification that

(a) the case evaluator meets the requirements for service under the court's selection plan, and

(b) the case evaluator will not discriminate against parties, attorneys, or other case evaluators on the basis of race, ethnic origin, gender, or other protected personal characteristic.

(2) Eligibility. To be eligible to serve as a case evaluator, a person must meet the qualifications provided by this subrule.

(a) The applicant must have been a practicing lawyer for at least 5 years and be a member in good standing of the State Bar of Michigan. The plan may not require membership in any other organization as a qualification for service as a case evaluator.

(b) An applicant must reside, maintain an office, or have an active practice in the jurisdiction for which the list of case evaluators is compiled.

(c) An applicant must demonstrate that a substantial portion of the applicant's practice for the last 5 years has been devoted to civil litigation matters, including investigation, discovery, motion practice, case evaluation, settlement, trial preparation, and/or trial.

(d) If separate sublists are maintained for specific types of cases, the applicant must have had an active practice in the practice area for which the case evaluator is listed for at least the last 3 years.

If there are insufficient numbers of potential case evaluators meeting the qualifications stated in this rule, the plan may provide for consideration of alternative qualifications.

(3) Review of Applications. The plan shall provide for a person or committee to review applications annually, or more frequently if appropriate, and compile one or more lists of qualified case evaluators. Persons meeting the qualifications specified in this rule shall be placed on the list of approved case evaluators. Selections shall be made without regard to race, ethnic origin, or gender.

(a) If an individual performs this review function, the person must be an employee of the court.

(b) If a committee performs this review function, the following provisions apply.

(i) The committee must have at least three members.

(ii) The selection of committee members shall be designed to assure that the goals stated in subrule (D)(2) will be met.

(iii) A person may not serve on the committee more than 3 years in any 9 year period.

(c) Applicants who are not placed on the case evaluator list or lists shall be notified of that decision. The plan shall provide a procedure by which such an applicant may seek reconsideration of the decision by some other person or committee. The plan need not provide for a hearing of any kind as part of the reconsideration process. Documents considered in the initial review process shall be retained for at least the period of time during which the applicant can seek reconsideration of the original decision.

(4) Specialized Lists. If the number and qualifications of available case evaluators makes it practicable to do so, the ADR clerk shall maintain

(a) separate lists for various types of cases, and,

(b) where appropriate for the type of cases, separate sublists of case evaluators who primarily represent plaintiffs, primarily represent defendants, and neutral case evaluators whose practices are not identifiable as representing primarily plaintiffs or defendants.

(5) Reapplication. Persons shall be placed on the list of case evaluators for a fixed period of time, not to exceed seven years, and must reapply at the end of that time in the manner directed by the court.

(6) Availability of Lists. The list of case evaluators must be available to the public in the ADR clerk's office.

(7) Removal from List. The plan must include a procedure for removal from the list of case evaluators who have demonstrated incompetency, bias, made themselves consistently unavailable to serve as a case evaluator, or for other just cause.

(8) The court may require case evaluators to attend orientation or training sessions or provide written materials explaining the case evaluation process and the operation of the court's case evaluation program. However, case evaluators may not be charged any fees or costs for such programs or materials.

(C) Assignments to Panels.

(1) Method of Assignment. The ADR clerk shall assign case evaluators to panels in a random or rotating manner that assures as nearly as possible that each case evaluator on a list or sublist is assigned approximately the same number of cases over a period of time. If a substitute case evaluator must be assigned, the same or similar assignment procedure shall be used to select the substitute. The ADR clerk shall maintain records of service of case evaluators on panels and shall make those records available on request.

(2) Assignment from Sublists. If sublists of plaintiff, defense, and neutral case evaluators are maintained for a particular type of case, the panel shall include one case evaluator who primarily represents plaintiffs, one case evaluator who primarily represents defendants, and one neutral case evaluator. If a judge is assigned to a panel as permitted by MCR 2.403(D)(3), the judge shall serve as the neutral case evaluator if sublists are maintained for that class of cases.

ATI-2587951v7

(3) Special Panels. On stipulation of the parties, the court may appoint a panel selected by the parties. In such a case, the qualification requirements of subrule (B)(2) do not apply, and the parties may agree to modification of the procedures for conduct of case evaluation. Nothing in this rule or MCR 2.403 precludes parties from stipulating to other ADR procedures that may aid in
resolution of the case.

(D) Supervision of Selection Process.

(1) The chief judge shall exercise general supervision over the implementation of this rule and shall review the operation of the court's case evaluation plan at least annually to assure compliance with this rule. In the event of noncompliance, the court shall take such action as is needed. This action may include recruiting persons to serve as case evaluators or changing the court's case evaluation plan.

(2) In implementing the selection plan, the court, court employees, and attorneys involved in the procedure shall take all steps necessary to assure that as far as reasonably possible the list of case evaluators fairly reflects the racial, ethnic, and gender diversity of the members of the state bar in the jurisdiction for which the list is compiled who are eligible to serve as case evaluators.

# **ANNEX III**

ATI-2587951v7

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
-------------------------------------------------------x
                                        :
In re                                   :        Chapter 9
                                        :
CITY OF DETROIT, MICHIGAN,              :        Case No. 13-53846
                                        :
                         Debtor.        :        Hon. Steven W. Rhodes
                                        :
                                        :
-------------------------------------------------------x
```

## CASE EVALUATION NOTICE

Service Date:

Claimant(s):

Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

   By this Case Evaluation Notice, the City of Detroit (the "City") hereby submits the above-identified claim(s) (the "Designated Claim(s)") in the City's chapter 9 case to **case evaluation**, pursuant to the procedures (the "ADR Procedures") established by the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims, entered by the United States Bankruptcy Court for the Eastern District of Michigan on [_____], 2013. The City has been unable to resolve your Designated Claim(s) on a consensual basis through the offer exchange component of the ADR Procedures. THEREFORE, YOUR DESIGNATED CLAIM(S) WILL PROCEED TO CASE EVALUATION, PURSUANT TO THE ADR PROCEDURES.

   In accordance with the ADR Procedures, a copy of this Case Evaluation Notice has been served upon the Clerk (the "ADR Clerk") of the

ATI-2587951v7

Wayne County Mediation Tribunal Association (the "MTA"). As described more fully in the ADR Procedures, the ADR Clerk will select a panel of three evaluators to conduct the case evaluation, set a time and place for the case evaluation hearing and provide you with at least 42 days notice of the hearing. Adjournments of the case evaluation hearing may be granted only for good cause. The ADR Procedures also require you and the City to share the administrative fees and costs of case evaluation charged by the mediation.

A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section II.B of the ADR Procedures, concerning **case evaluation**.

[Signature of the City's Authorized Person]

# **ANNEX IV**

ATI-2587951v7

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

------------------------------------------------------x
```
                                      :
In re                                 :        Chapter 9
                                      :
CITY OF DETROIT, MICHIGAN,            :        Case No. 13-53846
                                      :
                        Debtor.       :        Hon. Steven W. Rhodes
                                      :
                                      :
```
------------------------------------------------------x


## <u>ARBITRATION NOTICE</u>

Service Date:

Claimant(s):

Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:


   By this Arbitration Notice, the City of Detroit (the "<u>City</u>") hereby submits the above-identified claim(s) (the "<u>Designated Claim(s)</u>") in the City's chapter 9 case to **binding arbitration**, pursuant to the procedures (the "<u>ADR Procedures</u>") established by the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims, entered by the United States Bankruptcy Court for the Eastern District of Michigan on **[_____]**, 2013. The City has been unable to resolve your Designated Claim(s) on a consensual basis through the offer exchange component of the ADR Procedures or through case evaluation. THE CITY **[PREVIOUSLY HAS CONSENTED]/[HEREBY CONSENTS]** TO BINDING ARBITRATION OF THE DESIGNATED CLAIM(S). YOU PREVIOUSLY HAVE CONSENTED TO BINDING ARBITRATION. THEREFORE, YOUR DESIGNATED CLAIM(S) WILL

ATI-2587951v7

PROCEED TO BINDING ARBITRATION, PURSUANT TO THE ADR PROCEDURES.

In accordance with the ADR Procedures, a copy of this Arbitration Notice has been served upon the Clerk (the "ADR Clerk") of the Wayne County Mediation Tribunal Association (the "MTA").  As described more fully in the ADR Procedures, the ADR Clerk will select an arbitrator to conduct the arbitration hearing and provide notice to you and the arbitrator of his or her appointment. All arbitration hearings are scheduled by the arbitrator, in consultation with the parties and are conducted in Detroit, Michigan unless otherwise agreed by all of the parties and the arbitrator.  Generally, the arbitration hearing must be held no later than 112 days after the date of appointment of the arbitrator.  The ADR Procedures also require you and the City to share the administrative fees and costs of arbitration charged by the MTA.

A complete copy of the ADR Procedures is enclosed for your reference.  Please refer to Section II.C of the ADR Procedures, concerning **binding arbitration**.

[Signature of the City's Authorized Person]

ATI-2587951v7
Case 13-53846-tjt  Doc 2302-9  Filed 12/24/13  Entered 12/24/13 10:17:03  Page 62 of 62