SEYFARTH SHAW LLP
M. Ryan Pinkston (SBN 310971)
rpinkston@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

*Attorneys for*
*Turner Construction Company*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

In re:

PG&E CORPORATION,

- and -

PACIFIC GAS AND ELECTRIC COMPANY,

Debtors.

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

*All papers shall be filed in the Lead Case, No. 19-30088 (DM)*

Bankruptcy Case
No. 19-30088 (DM)

Chapter 11
(Lead Case)

(Jointly Administered)

**TURNER CONSTRUCTION COMPANY'S OBJECTION TO DEBTORS' MOTION TO APPROVE ADR AND RELATED PROCEDURES FOR RESOLVING GENERAL CLAIMS (DKT. NO. 8970)**

Date:     September 22, 2020
Time:     10:0 a.m. (Pacific Time)
Place:    (Telephonic or Video Only)
          United States Bankruptcy Court
          Courtroom 17, 16th Floor
          San Francisco, CA 94102

Turner Construction Company ("Turner") hereby objects to the Motion to Approve ADR and Related Procedures for Resolving General Claims (Dkt. No. 8970) (the "Motion") filed by the Reorganized Debtors.[1] In support of its objection, Turner respectfully states as follows:

## INTRODUCTION

As explained below, the relief requested by the Debtors is both improper and unnecessary. First, the Debtor's proposed General Claims Information Procedures attempt to supersede the procedural requirements and protections embodied in Bankruptcy Rule 9014, and the Debtors' suggestion that a failure to comply with the Information Procedures may, in and of itself, result in disallowance of a creditor's claim runs afoul of Bankruptcy Code section 502(a) and Bankruptcy Rule 3001(f). Second, the Debtors do not require a formal order from this Court in order to engage in precisely the same sort of activities contemplated by the Offer Procedures. Third, the Debtors are not entitled to the unilateral authority to compel a creditor to participate in mandatory mediation conducted by a mediator of the Debtors' choosing. Fourth, and critically, the Debtors' Motion seeks improperly to extend, potentially indefinitely, the Debtors' deadline in the Plan to resolve claims (and make payment) by granting the Debtors or their handpicked mediator with the unfettered discretion to terminate the various steps of the General ADR Procedures.

## BACKGROUND

The Utility and Turner are counterparties to a Master Services Agreement, as amended, pursuant to which Turner has provided prepetition and postpetition construction services on various projects. Turner and its subcontractors continue to provide construction services on numerous projects, and their claims for repayment from the Utility are secured by constitutional and statutory liens against the Utility's property and equipment. Turner is owed in excess of $14 million and is also owed amounts for its postpetition and post-confirmation services.

## ARGUMENT

**I. The General Information Procedures Are Unnecessary And Improper.**

The Debtors' complaint that many creditors have refused to provide sufficient information to support such creditors' claims is a problem for which the Debtors already have a solution. Bankruptcy

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Motion.

Rule 3007 permits the Debtors to lodge an objection to such creditors' claims, and Bankruptcy Rule 9014 permits the Debtors to issue any necessary discovery to such creditors once the contested matter has been commenced.

The Debtors' apparent counter to this point is their statement that "[w]ithout more complete information, the Reorganized Debtors cannot reasonably develop settlement offers for many General Claimants." (Motion, at 11:15-16.) But, the Debtors do not offer any further assurances that after mass-mailing Information Requests to their creditors, such settlement offers will be forthcoming. Indeed, nothing in the Debtors' Motion ensures that the procedures the Debtors intend to employ will expedite the resolution and payment of all creditors' claims, as the Debtors simultaneously request permission to extend, potentially indefinitely, the deadline set forth in the confirmed Plan for objections to claims.

Instead, the Debtors' requested relief appears designed to permit the Debtors to conduct a fishing expedition without following the procedures and protections afforded to all parties by the Bankruptcy Rules. The Motion also leaves creditors who may be the subject of such Information Requests without any ability to compel the Debtors to provide information regarding their books and records and their purported concerns with such creditors' claims. At an absolute minimum, should the Debtors be permitted to employ this *ultra vires* examination of their creditors, such creditors should have a reciprocal right to demand information from the Debtors.[2]

## II. The Debtors Seek An Unnecessary Order Regarding The Offer Procedures.

The Offer Procedures and an order approving them are unnecessary. The Reorganized Debtors already have the ability to engage in an exchange of settlement offers and to attempt to resolve claims without adopting and implementing the Offer Procedures. The Motion is silent as to why the Reorganized Debtors require the Offer Procedures.

Perhaps that is because the real value to the Reorganized Debtors in the Offer Procedures, improper as they may be, is that the Reorganized Debtors have sole discretion regarding when to implement such procedures and when to terminate such procedures. In other words, the Offer

---

[2] For example, Turner and the Utility have been engaged in discussions with respect to Turner's secured claim against the Utility, but the Utility has generally refused to provide any information beyond the generic statements that it is reviewing creditors' claims.

Procedures present the Debtors with a potential end-run around the confirmed Plan's deadline by which the Reorganized Debtors must object to claims and, accordingly, an indefinite extension of time in which such claims must be paid.

The Court should not approve the Offer Procedures, or if approved, the Court should reject the Debtors' request to permit the Debtors' utilization of the Offer Procedures to extend the claim-objection deadline set forth in the confirmed Plan. If the Debtors are sincere about their motivation to use the Offer Procedures to resolve claims expediently and efficiently, then they can and should do so in advance of the deadlines set forth in the Plan.

### III. The Debtors Are Not Entitled To The Unilateral Authority To Compel Creditors To Participate In Mandatory Mediation Conducted By Mediators Of The Debtors' Choosing.

This Court has the authority to refer litigants to mediation (or another form of alternative dispute resolution). However, the Debtors are not entitled to commandeer this Court's authority and wield it at their sole discretion without some baseline showing of need or appropriateness with respect to a particular creditor's claim. Turner objects to the Debtors being handed the unfettered discretion to compel a creditor to attend and participate in mediation, especially given that the Debtors are not required to identify for such creditor the nature or basis of any purported objection to such creditor's claim (particularly with respect to the proposed Standard Mediation Process, which contemplates placing upon the creditor the burden to prepare and submit an opening statement). These processes turn Bankruptcy Code section 502 and Bankruptcy Rule 3001(f) on their head and eliminate the presumptive validity that accompanies a filed proof of claim.

Furthermore, the Debtors' proposal that they unilaterally compile panels of mediators without any input from impacted creditors is improper. The credentials and potential effectiveness of a mediator are not something that should be examined in a vacuum, and the Debtors' vague commitment to work with the panel (again, without creditor input) to develop a process of fair distribution provides little comfort. If the Court is inclined to approve the Debtors' mediation procedures, then the affected creditors should have input with respect to the specific mediator that will preside over such procedures.

Also, just as with the Offer Procedures, granting the Debtors the unilateral discretion to determine when a claim has not been settled through the Abbreviated Mediation Process or requiring a

creditor to continue in the Standard Mediation Process until the Debtors' selected mediator determines that an impasse has been reached invites mischief. If the Court is inclined to approve the General Mediation Procedures, then such procedures should be qualified by an affirmative condition that the Debtors' comply with the claims objection deadline set forth in the confirmed Plan. The Debtors should not be permitted to extend such deadline (and any corresponding obligation to make payment to their creditors) by way of the General Mediation Procedures

## **CONCLUSION**

For the reasons set forth herein, the Motion should be denied.

DATED: September 15, 2020                    SEYFARTH SHAW LLP

By: /s/ M. Ryan Pinkston
       M. Ryan Pinkston

*Attorneys for Turner Construction Company*

65834822v.1