WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel:    (415) 496-6723
Fax:   (650) 636-9251

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).* | Case Nos. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>**REORGANIZED DEBTORS' REPLY IN SUPPORT OF MOTION TO APPROVE ADR AND RELATED PROCEDURES FOR RESOLVING GENERAL CLAIMS**<br><br>Date:   September 22, 2020<br>Time:  10:00 a.m. (Pacific Time)<br>Place: **(Telephonic or Video Only)**<br>         United States Bankruptcy Court<br>         Courtroom 17, 16th Floor<br>         San Francisco, CA 94102 |

PG&E Corporation ("**HoldCo**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**" or as reorganized pursuant to the Plan, the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this this reply in further support of the Reorganized Debtors' Motion, pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of an order approving the General Claims Information Procedures, the General ADR Procedures, and the Related Relief [Dkt. No. 8970] (the "**Motion**").[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

The Reorganized Debtors believe that the *Amended [Proposed] Order Approving ADR and Related Procedures for Resolving General Claims* (the "**Amended Proposed Order**")[2] fully addresses all objections and informal inquiries raised, and that, with those changes, the hearing on the Motion will be uncontested.

A summary of the objections and primary changes to the relief requested is as follows. Two General Claimants filed objections to the Motion: Turner Construction Company (the "**Turner Objection**") [Dkt. No. 9040] and Tyrrell Resources, Inc. (the "**Tyrrell Objection**") [Dkt. No. 9041] (collectively, the "**Objectors**," and their objections, collectively, the "**Objections**").[3] The Reorganized Debtors have agreed to exempt General Claims held by the Objectors, as well as certain General Claims held by the United States, from the General Claims Procedures. The Reorganized Debtors have also clarified that certain "pass-through" Claims are exempt from the General Claims Procedures. Finally, the Reorganized Debtors have agreed, at the request of one of their insurers, to include clarifying language in the Amended Proposed Order regarding the applicability of the General Claims Procedures to certain insurance-related matters. With these agreed-upon changes, which are reflected in the Amended Proposed Order, the Reorganized Debtors believe they have addressed any and all concerns raised, formally or informally, by any General Claimant regarding

---

[1] Capitalized terms used but not herein defined have the meanings ascribed to such terms in the Motion.

[2] A redline comparison against the text of the original proposed order attached to the Motion is attached hereto as **Exhibit A**. Exhibit A-3 (the excluded claims) has been added to the Amended Proposed Order. Exhibits A-1, A-2, and their respective annexes remain unchanged.

[3] The Tyrrell Objection also joined in the Turner Objection.

the General Claims Procedures and, therefore, the General Claims Procedures should be approved for all the reasons set forth in the Motion.

Nonetheless, the Reorganized Debtors here briefly address the central points raised in the Objections.

## I. GENERAL CLAIMS INFORMATION PROCEDURES

The Reorganized Debtors have received more than 12,000 Proofs of Claim from over 8,000 General Claimants. McWilliams Decl. ¶ 4. Over 2,000 of these Proofs of Claim did not include any supporting documentation or information beyond the General Claimant's name and address. *Id.* As set forth in the Motion, the General Claims Information Procedures represent a modest, targeted effort by the Reorganized Debtors to reach beyond these and other inadequate Proofs of Claim and attempt to gather sufficient information to support the Reorganized Debtors' efforts to timely resolve the outstanding General Claims.[4]

One of the Objectors argued that the General Claims Information Procedures were "unnecessary" because "Rule 3007 permits the Debtors to lodge an objection" based on inadequate information, and "Rule 9014 permits the Debtors to issue any necessary discovery . . . once [a] contested matter has been commenced." Turner Obj. at 3. But this misses the point. The General Claims Information Procedures, like the General Claims Procedures generally, are superior to the cited Rule-based procedures because they will facilitate resolution of a large number of General Claims without burdening the Court and the parties with a proliferation of books-and-records objections, contested matters, and formal discovery. Indeed, the General Claims Information Procedures call for significantly more limited and targeted information than would ordinarily be requested in formal discovery.

---

[4] The General Claims Information Procedures allow the Reorganized Debtors to ask General Claimants for: (1) a description of the general nature of the General Claim (*e.g.*, contract, personal injury, cessation of service, etc.); (2) a statement of, and supporting documents indicating, the underlying basis for such General Claim; (3) a statement of the liquidated amount allegedly owing on such General Claim, including documentation as available; and (4) any additional information the General Claimant believes is necessary or appropriate to enable the Reorganized Debtors to evaluate the General Claim.

The Court should approve the General Claims Information Procedures as necessary and appropriate support for the expeditious resolution of the outstanding General Claims.

## II. EXTENSION OF OBJECTION DEADLINE

The General Claims Procedures would extend the Reorganized Debtors' deadline for objecting to General Claims made subject to those Procedures, until the later of (a) the Claims objection deadline set in accordance with Section 7.1 of the Plan, or (b) 60 days after the termination of the last General Claims Procedure used for a given General Claim, so long as there is no interim gap of more than 60 days between the termination of one and the commencement of another General Claims Procedure. One Objector contends that this mechanism "present[s] the Debtors with a potential end-run around the confirmed Plan's deadline." Turner Obj. at 4.

This Objection ignores the Plan's express authorization to the Court to extend the objection deadline for cause shown. Plan, §7.1. There is ample cause to approve the extensions proposed here: the accommodation of a limited Claim-by-Claim extension of the objection deadline is both narrowly tailored and vital if the Reorganized Debtors and General Claimants are to realize the full benefits of the General Claims Procedures. Without it, the parties would in many instances risk running out of time to complete informal negotiations before a formal objection is required. And the Reorganized Debtors' discretion to extend the objection deadline as to affected General Claims would indeed be limited: the Reorganized Debtors' participation in the General Claims Procedures must be in good faith, the Reorganized Debtors may not allow a gap of more than 60 days between Procedures, and, for any Standard Mediation, the Mediator will have discretion to end the mediation if he or she determines there is no reasonable opportunity to settle. Thus, any General Claimant who believes a Standard Mediation is no longer fruitful may request that the Mediator end the mediation, and the Mediator will then have the discretion and ability to do so.

The Reorganized Debtors maintain that the efficiency and economy to be provided by the General Claims Procedures to the parties and to the Court constitute good cause for the requested Claim-by-Claim extension of the objection deadline.[5]

### III. MEDIATION PARTICIPATION AND MEDIATOR SELECTION

Finally, one Objector raises two points regarding the General Mediation Procedures. First, the Objector questions whether the Reorganized Debtors should have "discretion to compel a creditor to attend and participate in mediation." Turner Obj. at 3. But mandatory mediation is not at all unusual in large chapter 11 cases. *See, e.g.*, ADR Resolution Procedures, *In re City of San Bernardino*, No. 6:12-bk-28006 (Bankr. C.D. Cal. July 29, 2016) [Dkt. No. 1882-4] ("[A]ll Designated Claims not settled through the Offer Exchange Procedures will proceed to mediation."); *Motors Liquidation Co.*, No. 09-50026 (REG) (Bankr. S.D.N.Y. Feb. 23, 2010) [Dkt. No. 5037] (implementing mandatory, non-binding mediation procedures for designated claims); *In re Delphi Corp.*, No. 05-44481 (RDD) (Bankr. S.D.N.Y. Dec. 6, 2006) [Dkt. No. 6089] (implementing mandatory, nonbinding mediation procedures for all unresolved claims). Such a provision is particularly necessary where, as here, hundreds of General Claimants who have submitted no information beyond their names and addresses have not responded to the Reorganized Debtors' informal solicitations for additional information. McWilliams Decl. ¶ 4. Mandatory mediation is merely an efficient mechanism to encourage widespread, good-faith participation in the General Claims resolution process.

Second, the Objector complains that the General Mediation Procedures would allow the Reorganized Debtors to "unilaterally compile panels of mediators without any input from impacted creditors." Turner Obj. at 4. This is a mischaracterization. The General Mediation Procedures require the Reorganized Debtors to propose a panel of qualified and experienced mediators for Court approval. This provision, again, draws on predecessors in large chapter 11 matters. *See, e.g.*, ADR Resolution Procedures, *In re City of San Bernardino*, No. 6:12-bk-28006 ("The City will appoint a

---

[5] The Reorganized Debtors reserve the right to seek a general extension of the objection deadline. Such a request would depend upon the relevant circumstances at the time the request is made and would likely involve somewhat different considerations than this Motion.

panel of qualified and experienced mediators, and will select a mediator from the panel with respect to each mediated claim."). And, like any other matter presented for Court approval, the appointment of the proposed panel will be subject to notice and a hearing, during which any General Claimant may submit input and offer argument.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant the Motion with the modifications set forth in the Amended Proposed Order.

Dated: September 21, 2020

**WEIL, GOTSHAL & MANGES LLP**

**KELLER BENVENUTTI KIM LLP**

By:    /s/ Tobias S. Keller

*Attorneys for the Debtors and Reorganized Debtors*