1               UNITED STATES BANKRUPTCY COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                   -oOo-

4  In Re:                ) Case No. 19-30088-DM
                      ) Chapter 11
5  PG&E CORPORATION AND PACIFIC  )
    GAS AND ELECTRIC COMPANY,    ) San Francisco, California
6                     ) Tuesday, September 22, 2020
              Debtors.  ) 10:00 AM
7  _____  )
                           REORGANIZED DEBTORS' FOURTH
8                           OMNIBUS OBJECTION TO CLAIMS
                           (DUPLICATE CLAIMS). FILED BY
9                           PG&E CORPORATION [8756]

10                        REORGANIZED DEBTORS' MOTION
                           TO APPROVE ADR AND RELATED
11                        PROCEDURES FOR RESOLVING
                           GENERAL CLAIMS [8970]
12
                TRANSCRIPT OF PROCEEDINGS
13          BEFORE THE HONORABLE DENNIS MONTALI
            UNITED STATES BANKRUPTCY JUDGE
14
  APPEARANCES (Via Zoom):
15  For the Debtors:         PETER J. BENVENUTTI, ESQ.
                        DAVID TAYLOR, ESQ.
16                     Keller Benvenutti Kim LLP
                      650 California Street
17                   Suite 1900
                      San Francisco, CA 94108
18                   (415)496-6723

19  For State Agencies:      PAUL J. PASCUZZI, ESQ.
                      Felderstein Fitzgerald Willoughby
20                   Pascuzzi & Rios LLP
                      500 Capitol Mall #2250
21                   Sacramento, CA 95814
                      (916)329-7400
22
  Also Present:            Michael Jurkovic
23                     Individual Claimant

24

25

(973)406-2250 | operations@escribers.net | www.escribers.net

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18 Court Recorder:               LORENA PARADA/ANKEY THOMAS
United States Bankruptcy
Court
19 450 Golden Gate Avenue
San Francisco, CA 94102

20

21 Transcriber:                  LINDA FERRARA
eScribers, LLC
22 7227 N. 16th Street
Suite #207
23 Phoenix, AZ 85020
(973)406-2250

24

Proceedings recorded by electronic sound recording;
25 transcript provided by transcription service.

(973)406-7250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    SAN FRANCISCO, CALIFORNIA, TUESDAY SEPTEMBER 22, 2020, 10:00 AM

2                              -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Court is now in session, the Honorable

5    Dennis Montali presiding.  Calling the matter of PG&E

6    Corporation.

7            THE COURT:  Good morning everyone on the call.  Sorry

8    to have kept you delayed there.

9            Mr. Benvenutti, are you speaking up -- are you

10   covering for PG&E today?

11           MR. BENVENUTTI:  Yes, I am, Your Honor, and with

12   respect to the ADR procedures motion, my partner, David Taylor,

13   will also be joining me to the extent the Court has questions

14   or we get into details about the procedures, in which he may be

15   more expert than I am.

16           THE COURT:  Okay.

17           MR. BENVENUTTI:  So we --

18           THE COURT:  Well, I do have a couple of --

19           MR. BENVENUTTI:  -- get to both matters that are --

20   that are (indiscernible) issue with.

21           THE COURT:  Yeah, I have a couple of questions, and I

22   see there are a number of people who have called in.  I'm not

23   going to try to take the appearances but I'll get my questions

24   to you, and then we'll see if anybody wants to be heard.

25           My first question is -- again, first of all, I

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    compliment you, and the company, and your colleagues for

2    putting together a very comprehensive process that certainly

3    covers a lot of bases, and you've dealt with a number of

4    responses.  When will the mediation panels be identified?

5             MR. BENVENUTTI:  I'm happy to respond to that now if

6    you'd like.

7             THE COURT:  Yeah, please.

8             MR. BENVENUTTI:  Okay.  We are in the process of

9    identifying prospective mediators.  We expect to be presenting

10   panels -- suggestions to the Court, appointments to the Court

11   within the next few weeks.

12            THE COURT:  And when you have a panel of X number of

13   people, then how is any one particular mediator picked for a

14   particular case?

15            MR. BENVENUTTI:  Our expectation, Your Honor, is that

16   the debtors would designate a mediator for a particular case.

17            THE COURT:  Okay.  I don't anticipate doing anything

18   but a formality in terms of approving the panel.  In other

19   words, it's fine if you -- hold on one second.  I have to cover

20   this call.

21            MR. BENVENUTTI:  Certainly.

22            THE COURT:  This is a mix-up here.  Okay.  I'm not

23   going to be able to do it, okay.

24            So if you had a slate of people that are going to

25   serve in either of the two mediation formats, I don't

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  anticipate a noticed hearing, or anything.  I would be happy to

2  sign an order, but I am not going to second guess the company.

3  So unless you see some reason to do it in any more formal way,

4  I would just say go ahead and submit it when you're ready.  It

5  wouldn't be my place to do anything about it, unless for some

6  reason something jumped out at me as inappropriate but I don't

7  anticipate that.  I'll just leave that as a closed issue.

8           So then, so let's say you have a panel, and then on a

9  particular matter that comes up, the company will say we

10 designate so-and-so to be the mediator, right?

11          MR. BENVENUTTI:  Yes, Your Honor.

12          THE COURT:  Okay.  One of the things that I thought

13 was a little bit missing, and I'd like to think about getting

14 your thoughts on expanding it slightly, and that is first of

15 all, a nitpick, there's a bit of duplication between the two

16 different ADR -- the abbreviated one, and the -- sort of the

17 formal one because there's this repetition about the

18 compensation, and the lack of conflicts, and some of the other

19 things, and I just wondered why it needed to be said twice,

20 when it's the same set of ground rules for both procedures.

21          But more importantly, and this is where I am really

22 more focusing on something more substantive --

23          MR. BENVENUTTI:  Okay.

24          THE COURT:  -- a lot of experienced lawyers, and maybe

25 experienced business people have mediation history, but a lot

PG&E Corporation and Pacific Gas and Electric Company

1   of people who are in this bundle of claims that are going to be

2   dealt with this don't, and one thing that seemed missing to me

3   was a little bit of a general statement, a paragraph or two,

4   maybe not a lot more, about what will be the -- what will

5   happen at the mediation.  In other words, not that I want to

6   try to suggest that the company should script it out, but if

7   I'm a person that's got a dispute with PG&E and I don't have

8   counsel, I don't have the experience, and all of the sudden I'm

9   told well, you're going to mediation, and the mediator is Mr.

10  So-and-So, and it's going to happen on such-and-such a day,

11  then it doesn't really say what happens.  It doesn't say what

12  the mediator will do, and what will be expected, and that sort

13  of thing.

14        And so I would be interested in your thoughts about

15  whether you could expand that to be more informative to the

16  less informed audience for this procedure.

17        MR. BENVENUTTI:  Well, I don't think there's any

18  reason we couldn't expand it.  I suppose we did proceed with

19  the assumption that people were generally familiar with the

20  mediation process, but the Court's question is well taken, and

21  in some instances, and I think some of those instances may very

22  well occur with respect to claimant's designated for the more

23  abbreviated, the streamlined form of mediation.

24        As I say, I don't have a conceptual problem with

25  providing more information.  I would invite Mr. Taylor, who as

PG&E Corporation and Pacific Gas and Electric Company

1    I said, has more detailed knowledge of the workings of the

2    process than I do, to offer his thoughts as well, but before he

3    does that, it just seems to me that we could, that we do it,

4    the only issue then is one of process in terms of whether we

5    need to have the Court approve what that statement is going to

6    be, and how we can do that, and how we can do that in a

7    streamlined fashion.  I will say that --

8            THE COURT:  Well --

9            MR. BENVENUTTI:  -- I think it's un --

10           THE COURT:  Go ahead.  No, go ahead.  Please continue.

11           MR. BENVENUTTI:  It's unlikely, given the fact that we

12   still need to appoint mediators, and frankly, I think in many

13   instances, we would be looking at the information process

14   first, or the offer process first.

15           I think we have a little bit of time before we would

16   be designating particular claims for mediation, so that could

17   give us the opportunity to craft language subject to whatever

18   approval the Court wanted to give it, but I defer to Mr.

19   Taylor --

20           THE COURT:  I wasn't ever --

21           MR. BENVENUTTI:  -- if he has any thoughts.

22           THE COURT:  I wasn't -- I don't feel strongly about

23   even having to approve it again.

24           MR. BENVENUTTI:  Um-hum.

25           THE COURT:  And here's a couple of general comments,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   again more general but more specific to this question. I'm

2   starting again with the assumption that a number of people in

3   this process won't have experience with mediation, so it

4   doesn't make clear that the mediator doesn't take a position,

5   the mediator is not an advocate for either side, and most

6   importantly, the mediator can't bind either side, and that the

7   communications -- I think the statement is made that they're

8   confidential, but that they aren't confidential, and the

9   mediator is a party whose function is to try to bring the two

10  sides to an agreement, and that's about all.

11         I mean, I'm not trying to script it out to say when

12  and what time it will be, and how any particular mediator will

13  conduct his or her sessions. It's more like mediation 101, you

14  know, a paragraph or two, and nothing more than that, and if

15  Mr. Taylor has a thought on that, I'd be happy to hear that

16  comment.

17         MR. TAYLOR: Thank you, Your Honor, yes. This is

18  David Taylor.

19         Only one thought, I mean, this all makes sense to me.

20  Would it make sense to include this paragraph, this mediation

21  101 as part of the form of notice of either abbreviated

22  mediation, or also standard mediation? In other words, this is

23  a form that we will send out to notify claimants that they

24  have -- their claim has been designated for mediation, and it

25  just occurred to me that that might be the appropriate place to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   have a little bit of instruction on what the process is.

2           THE COURT:  One of the things, Mr. Taylor then, Mr.

3   Benvenutti, and -- pardon me -- and others in the PG&E case may

4   have heard me rail about eighteen months ago, and I thought we

5   were past that, was short motions with long orders, and so I

6   have a relatively short motion here, and a very long order, and

7   I would've preferred to have a motion with procedures, and the

8   order short.  I'm not going to go back and start over but to

9   me, whether it's in the order, or a form that accompanies the

10  order, or something else is not important.

11          What is important is that there at least be one slight

12  attempt -- again, I made the comment about whether it's

13  duplicative, whether you have to say it twice in one procedure,

14  how in abbreviated mediation, and then in the full mediation,

15  the compensation is, the selection is, the unbiased business,

16  but then a -- nothing more than a paragraph or so that explains

17  the concepts that I just explained.  It is confidential, the

18  mediator doesn't bind anybody.  The mediator is there to, and I

19  use the more common term, to facilitate reaching agreement, you

20  know whatever an experienced mediation handbook, introduction

21  to mediation would say, and most importantly, that the mediator

22  can't force anybody to do anything, only persuade.  Pardon me.

23          MR. TAYLOR:  Yes.

24          THE COURT:  I didn't get a cough drop before I was

25  late getting to the call, but Mr. Benvenutti --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. BENVENUTTI:  Would Your Honor like to take a break

2  with (indiscernible).

3         THE COURT:  Just a minute.

4         MR. BENVENUTTI:  Yes, sir.

5      (Pause.)

6         THE COURT:  Okay.  I'm sorry, we're back to business.

7  I made a timing error, that's why we started late, and I had an

8  interruption.  Okay.  So let's go back to where we are.

9         I'm okay with -- I'm just letting Mr. Benvenutti, you,

10  and Mr. Taylor, and anybody else, put something together that

11  you believe is consistent with this and be done with it, if

12  you're okay with that.

13         MR. BENVENUTTI:  We drafted --

14         MR. TAYLOR:  That certainly sounds reasonable.

15         MR. BENVENUTTI:  That's fine.  That's fine.  You've

16  given us pretty guidance, and I think we both understand what

17  it is the Court is driving at.

18         THE COURT:  Okay.  I do have a couple of questions --

19         MR. BENVENUTTI:  I think we can do that.

20         THE COURT:  -- a couple of questions more

21  specifically.  What happens under the procedure -- under the

22  settlement process?  Now I'm pre-mediation, under the

23  settlement process, what happens if a claimant doesn't respond

24  to the proposal, because I think your proposal says the party

25  is supposed to present a counteroffer.  Now what if he doesn't,

PG&E Corporation and Pacific Gas and Electric Company

1    or it doesn't, what happens?  I didn't see anything that is a

2    consequence of that.

3              MR. BENVENUTTI:  Mr. Taylor, would you like to respond

4    to that question?

5              MR. TAYLOR:  Yes, yes, yes.  I think -- Your Honor, I

6    think you're correct that there's no specified response, or no

7    specified remedy on the spot.  I think though that it might be

8    at least that falls within the general obligation to

9    participate in good faith, and there are remedies --

10             THE COURT:  Yes.

11             MR. TAYLOR:  -- for nonparticipation in good faith.

12             THE COURT:  Well, this judge is probably not going to

13   sanction a nonlawyer for not responding to a settlement

14   offer --

15             MR. TAYLOR:  Understood.

16             THE COURT:  -- that doesn't have that.

17             MR. TAYLOR:  Yeah, I mean, I can't imagine --

18             THE COURT:  I mean, what if the response is X-rated?

19             MR. TAYLOR:  I mean, I don't imagine that we would be

20   seeking sanctions regularly either.  I suppose then merely

21   objecting to the claim, or seeking to have the claim disallowed

22   would be the other primary avenue that we would take.

23             THE COURT:  Well, it would seem to me if you send out

24   to the claimant, here's a proposal, we agree to allow your

25   claimant 50,000 dollars, and if the party gets back to you and

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   says no, it should be 250,000, that's a counteroffer.  If the

2   party says I'm insulted, I'm not even going to respond to that,

3   maybe that's the end of the process, and maybe you then trigger

4   the mediation, or if necessary, you trigger the objection

5   process, but I guess I'll just -- I obviously -- someone should

6   be sanctioned if there's sanctionable conduct, but not if

7   there's an innocent misunderstanding, or an inability, or

8   unwillingness, or just a dislike of the response.

9           Why not something like is expected to submit a

10  counteroffer, or words to that effect, so you're not violating

11  some court order, if you don't do a counteroffer, but if

12  there's no response, then I would think that the company would

13  just take position okay, this didn't work, we'd go to the --

14  either the mediation option, or the claims objection option.

15          MR. TAYLOR:  I think that's right, Your Honor, and I

16  don't --

17          THE COURT:  Is that workable?

18          MR. TAYLOR:  -- see any issue with including that

19  language.  Our goal here --

20          THE COURT:  Yeah.

21          MR. TAYLOR:  -- is to minimize the number of times we

22  need to go back to the Court, so we're certainly not looking --

23          THE COURT:  Right.

24          MR. TAYLOR:  -- to create those opportunities.

25          THE COURT:  Okay.  The last question I have on the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    mediation, on this whole process is I did see the responses

2    from Turner Construction and Tyrrell Resources, and I see that

3    they were dealt within the -- with the squeaky wheel principal.

4    If you squeak, you get put in a separate category.

5          But --

6          MR. BENVENUTTI:  With the -- I'm sorry, Your Honor.

7          THE COURT:  What, go ahead?

8          MR. BENVENUTTI:  There's a little more to the story if

9    the Court wants to hear it but yes, there's no question that

10   that's the way it works.

11         THE COURT:  But here's the question, this is on the

12   very last page of -- page 41 of document 9084-1, I believe that

13   was the third appendix.  It said the following general claims

14   are exempted from the general claims information procedures,

15   and general ADR, and then it just lists claim number, and it

16   seems strange.  Why can't you just put the name of the claimant

17   and the claim number?

18         MR. BENVENUTTI:  Your Honor, we should've --

19         MR. TAYLOR:  So I think that one --

20         MR. BENVENUTTI:  -- done that.

21         Please go ahead, David -- Mr. Taylor.

22         MR. TAYLOR:  Yeah, no, agreed.  It's -- so we can do

23   that.  The first nine of the claims are held by a number of

24   U.S. agencies, and we had not had a particularly clear

25   understanding from them exactly how we wanted them, or they

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    wanted them organized.  They all relate to three fires, Murphy,

2    Railroad, and El Portal, and then the final two claims are

3    Turner and Tyrrell.

4           THE COURT:  Well, I'm not a fan of this use of the

5    word transparent, but it seems to me in a case of this

6    complexity with 60,000 claims, anyone else who wanted to see

7    how does this thing work shouldn't have to go figure out what

8    claim number 79,094 is.  So if there's just a list that says

9    Turner, or Tyrrell, or whatever, that's fine with me.  That's a

10   very minor point.  If you can live with it, I can live with it.

11          MR. TAYLOR:  Understood, Your Honor.

12          MR. BENVENUTTI:  Yeah.

13          THE COURT:  It's again -- I mean, first is either

14   counsel for either Tyrrell or Turner on the phone, I believe

15   you're satisfied, but do either of you wish to be heard this

16   morning?

17          Okay, deafening silence.  Does anyone else want to be

18   heard on the ADR motion without -- and I'm not referring to the

19   two specific omnibus claims objections that are also on the

20   calendar.  Anyone else on the call want to be heard on the ADR

21   motion?

22          MR. PASCUZZI:  Your Honor, this is Paul Pascuzzi for

23   certain California State Agencies.

24          THE COURT:  Yes, sir.

25          MR. PASCUZZI:  Thank you.  Your Honor, one of your

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  questions to Mr. Benvenutti was how is the mediator going to be

2  picked for any particular matter, and my recollection of my

3  conversations with Mr. Taylor was not that the debtors were

4  going to pick it, the mediator, but that the mediation panel

5  would assign particular matters. Is that a clarification, or

6  is that a change in what Mr. Taylor told me, if I could

7  inquire?

8      THE COURT: Well, Mr. Taylor, you need to answer that.

9      MR. TAYLOR: Mr. Pascuzzi, I do remember the

10  conversation. I don't believe there has been a change since

11  then, and you've now caused me to scan back through the

12  procedures to recall exactly how we ended up framing this.

13      THE COURT: Well, let's -- again, Mr. Taylor, let's

14  put it from a layman's point of view. Here comes this list,

15  and the list has names of ten people, mediators one through

16  ten, and I'm a stranger to this. I don't even know who any of

17  these ten are. Then I'm told mediator number seven is your

18  assigned guy, or do I get anything to say about it, or do I

19  just get told PG&E, it's going to be mediated with mediator

20  number seven?

21      MR. TAYLOR: Yes, I think our view is that the primary

22  opportunity for claimant input on the mediators would be in the

23  noticed proposed list of mediators that we planned to submit,

24  and Your Honor spoke to that earlier. Simply as a matter of

25  administration of dozens potentially, I suppose hundreds of

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   these claims, I don't think we envisioned a lot of back and

2   forth with claimants on particular mediators for particular

3   mediations.

4       I would think that if they had any objection to a

5   particular mediator, we would be incentivized to change the

6   mediator.  I don't think we would want them mediating with a

7   disinclination to settle because they don't like the mediator

8   to (indiscernible) the settlement.

9       THE COURT:  Well, I mean, it wouldn't be fair to the

10  mediator either or to the parties if the mediator says golly, I

11  forgot to realize I'm related to that guy, or I'm legally

12  disqualified, and that's not something that's going to come to

13  the surface until there's an identification of a particular

14  issue.

15      In other words, you'd say that there are 12,000

16  claims.  I don't imagine all 12,000 of them are going to be

17  mediated, but I don't think anybody on that list should be held

18  to some silence if next month, there's a notice of the

19  following, or the mediators for the PG&E ADR general claims

20  procedure.

21      I'll tell you what, I'm willing to take a chance here

22  that the system will self-correct, that the mediators

23  themselves will identify any disqualifiers that should take

24  them out of any particular mediation, and that a claimant will

25  have the ability to make a fuss if he or she believes that the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      mediator is inappropriate for some reason.

2              So I'm satisfied with that explanation, but Mr.

3      Pascuzzi, are you satisfied with it?

4              MR. PASCUZZI:  Your Honor, Paul Pascuzzi.  I just

5      think for my clients, they're obviously, you know, have lawyers

6      and are going to be sophisticated.  If the parties are going to

7      try and work things out, it would be probably better to have

8      input from the state agency that's going into a mediation and

9      selection of the mediator.  So I think I'm comfortable that --

10     with Your Honor's statement, that the claimants should have

11     some input in there, if they so desire, and the debtors'

12     willing to do that, that sounds fine to me.

13             THE COURT:  Well, when I think about our BDRP, I think

14     about JAMS or the other professional mediation services, I

15     don't know that I know that many of them impose on the litigant

16     who the mediator is.  There is a difference perhaps with PG&E

17     paying the bill here.

18             But let me put the burden back on Mr. Taylor, and Mr.

19     Benvenutti, I think if you would come up with some language

20     that keeps open the process of a particular party being able to

21     be heard if there's some issue about the designated mediator,

22     because Mr. Pascuzzi --

23             MR. TAYLOR:  Yes.

24             THE COURT:  -- knows how to be heard.  He will call

25     you up and say wait a minute, we don't think this person is

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    appropriate, and that will get worked out.  But again, I'm back

2    to the unsophisticated person who just wants to get on with his

3    life, and is suddenly told, you've got to go mediate this with

4    Ms. So-and-So, and for some reason that person isn't

5    comfortable with it.

6         So I'll put the burden on you to put it into the

7    procedure in some way that makes that -- keeps open that -- I

8    mean, notifies the parties what the ground rules are.  Is that

9    clear enough?

10        MR. TAYLOR:  I think it is, Your Honor.

11        MR. BENVENUTTI:  I think so, Your Honor.

12        MR. TAYLOR:  This is David Taylor.

13        MR. BENVENUTTI:  Yeah.

14        MR. TAYLOR:  Yep.

15        THE COURT:  Okay.

16        MR. BENVENUTTI:  And Peter Benvenutti.  Let me just

17   say one other thing to you, I would absolutely expect that in

18   any given mediation, the mediator with a conflict is not going

19   to accept appointment, so that's not going to happen.

20        THE COURT:  No, I know that.  I know that, but it

21   might not come to the surface and tending -- attention, until

22   the process is underway.  It's just like habit, it's like when

23   a judge takes the bench and says, what are you doing in the

24   courtroom?  I have to recuse myself.  I mean, you don't want

25   that to happen when this trial begins, you want to have it

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   happen early where there's a way to clean it.  And again, I

2   fully expect you're not going to be -- I hope you're not going

3   to be selecting mediators who have a bias or a conflict.  I'm

4   not going to worry about that.  I trust the system and the way

5   you've put this together.  Okay.

6               MR. BENVENUTTI:  Thank you, Your Honor.

7               THE COURT:  Anyone else wish to be heard on the

8   general ADR issue?

9               MR. JURKOVIC:  Hello, yes.  My name is Mike Jurkovic.

10  I'm one -- I'm one of the creditors.

11              THE COURT:  Yes, Mr. Jurkovic, we're going to come to

12  you in a minute.  Yours is a specific claim, and I expect

13  you're --

14              MR. JURKOVIC:  Oh, no, no, I have a question about

15  what you just discussed.

16              THE COURT:  All right, go ahead, sir.

17              MR. JURKOVIC:  So what information will be given about

18  the mediators, other than a name, as a basis for evaluating the

19  mediators for suitability?

20              THE COURT:  Okay.  Mr. Taylor, do you want to answer

21  Mr. Jurkovic's question?

22              MR. TAYLOR:  Sure.  I don't believe this has been set

23  forth with specificity yet, but as we are collecting

24  possibilities for a proposal, and I assume we'd disclose the

25  same information, their affiliation, whether it be JAMS or

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Triple A, or otherwise, and then probably areas of focus, along

2    with a link to a bio where further information could be found.

3            THE COURT:  Mr. Taylor --

4            MR. JURKOVIC:  Right, so if you take the --

5            THE COURT:  -- I'm not sure if you're familiar with

6    the -- wait hold on, Mr. Jurkovic, please.

7            Mr. Taylor, you may not be familiar with the Court's

8    own bankruptcy dispute resolution procedures.  Mr. Benvenutti

9    is, and in our own one, which is called the BDRP, there is a

10   link to a website where a brief bio information is available

11   for everybody on the list.

12           So if you put something like that in place, that might

13   solve the problem that Mr. Jurkovic is asking about.

14           MR. TAYLOR:  That's exactly right.

15           THE COURT:  I mean --

16           MR. TAYLOR:  We actually have a few names from that

17   list in our hopper, and yes, we would put just those links.

18           THE COURT:  Okay.  Mr. Jurkovic, go ahead.  You had

19   another question?

20           MR. JURKOVIC:  Well, yes.  So I just want to make sure

21   that this kind of bio information would include things like

22   business relationships, and things like that?

23           THE COURT:  Well, it's -- I mean let me just say that

24   if somebody is a member of a law firm, or is affiliated with

25   one of the mediation services, you -- there isn't necessarily

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    the way of getting all the contacts, but if you were told that

2    the mediator involved in your case was going to be Ms. So-and-

3    So, you would have the ability to get some information,

4    education, background, legal experience, affiliations, and so

5    on.  And again, that Ms. So-and-So has a responsibility to

6    disclose to you any potential conflicts, and to make sure she

7    doesn't hear the matter, but we can't make it like a job

8    interview, but it's close to a job interview in the sense that

9    you're entitled to know some basic information, and frankly, I

10   don't think there'd be any prohibition if it were a specific

11   thing, for you to frame a particular question for that

12   mediator.

13          I mean, if the mediator says well, I worked for PG&E

14   for twenty years, and I just decided to be a mediator, I don't

15   think you have to worry about that.  If the mediator says well,

16   I worked for an insurance company, or some other related entity

17   in the industry, that might be relevant, whether it satisfies

18   or would disqualify as somebody I'm not going to worry about.

19          So as I said to Mr. Taylor, you have the remedy if you

20   believe that you're being imposed upon, or you're being taken

21   unfair advantage, you'll have an opportunity to complain, if

22   necessary, to the Court, although I'm trying to avoid that.

23          MR. BENVENUTTI:  Your Honor, if I may, Peter

24   Benvenutti.

25          THE COURT:  Do you follow me?  Yes, sir.  Yes.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. BENVENUTTI:  If I may?

2    THE COURT:  Yes.

3    MR. BENVENUTTI:  The mediator for a particular

4 mediation will be identified at least twenty-eight days prior

5 to the mediation date.

6    THE COURT:  Right.

7    MR. BENVENUTTI:  That's for the abbreviated

8 mediations, and I think it's forty-five days before the

9 mediation date for the standard mediation.  So --

10    THE COURT:  Right.

11    MR. BENVENUTTI:  -- that provides ample time for a

12 claimant who is, number one to elicit what information the

13 claimant thinks is important, and number two, to raise an

14 objection to the service of that particular mediator, if the

15 claimant thinks that that's warranted because it's four

16 weeks --

17    THE COURT:  Yes, I agree with you.

18    MR. BENVENUTTI:  -- the claimant has to do that.

19    THE COURT:  Yeah.  So Mr. Jurkovic -- then again, Mr.

20 Benvenutti is answering the question.  If you were told twenty-

21 eight days in advance the mediator was so-and-so, you have an

22 opportunity to do your own investigation, or to ask the person.

23 There's no rule that says you can't ask the mediator, well what

24 about -- what is your connection or your experience, or

25 whatever.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Nobody wants to turn this process into another battle.

2    It's supposed to be avoid the battle, and try to have a

3    conversation.  So I'm not going to speak for PG&E, but I'm

4    going to say I can't imagine they would want to get bogged down

5    in a debate with any claimant about whether this particular

6    mediator should be in or out, they'd get another mediator.

7    MR. JURKOVIC:  Okay.  Thank you.

8    MR. BENVENUTTI:  Your Honor, Peter Benvenutti.  I'm

9    sorry.  Yeah, I can assure you that that's true.

10   THE COURT:  Okay.

11   Anyone else wish to be heard?  And again, Mr.

12   Jurkovic, we'll come back to your particular objection in a

13   moment.  All right.  Then hearing no others, Mr. Benvenutti,

14   and Mr. Taylor, I will look to you to make some edits,

15   consistent with what we said.  If you -- I'm not going to have

16   a hissy fit if you put the same thing in there twice, but to

17   the extent you can put it in there once, it makes for a

18   slightly shorter document, and I will just expect you to upload

19   something, and I will hope that it will be fine for me, and if

20   not, I'll let you know.  Okay?

21   MR. BENVENUTTI:  Yes, Your Honor.  Very well.

22   THE COURT:  Now, Mr. Benvenutti, are you also covering

23   the two claims objections?  Is that what you said?

24   MR. BENVENUTTI:  Yes, I am, Your Honor, although I

25   think as you'll quickly learn, there's only one that needs to

PG&E Corporation and Pacific Gas and Electric Company

1    go forward now, and that does not include Mr. -- is it [Jerk-o-

2    vitch] or [Yerk-o-vitch]?

3              MR. JURKOVIC: [Yerk-o-vitch].

4              THE COURT: I thought you --

5              MR. BENVENUTTI: Okay.

6              THE COURT: -- still had an objection to your

7    duplicate claim, Mr. Jurkovic.

8              MR. BENVENUTTI: We did, Your Honor, but if I may, if

9    I may?

10             THE COURT: Yes.

11             MR. BENVENUTTI: In preparing for the hearing this

12   morning, early this morning, I concluded that Mr. Jurkovic is

13   correct, that we had incorrectly asserted that he had two

14   claims that were duplicates of one another, and only this

15   morning did I realize that he, in fact, filed one claim against

16   Pacific Gas and Electric Company, the utility, and a second

17   identical claim, but nevertheless, a second separate claim

18   against PG&E Corporation, the holding company, and we had

19   objected on a basis that they were duplicates of one another.

20   They're not.

21             And so the objection that we brought is not well-

22   taken. I sent an email to Mr. Jurkovic early this morning, but

23   I suppose he didn't get it, and I apologize for the late

24   notice, but I --

25             MR. JURKOVIC: Oh, I'm -- I'm sorry.

PG&E Corporation and Pacific Gas and Electric Company

1      MR. BENVENUTTI:  -- told --

2      MR. JURKOVIC:  Hello, this is Mr. Jurkovic.  I'm

3  sorry.  I just -- I'm looking at your email right now.  I --

4  sorry, I didn't see it early, I just saw it now.  Sorry about

5  that.

6      MR. BENVENUTTI:  That's quite -- well, it's on us

7  because we should've caught this sooner.  But the short of it

8  is, Your Honor, that we're not proceeding with the objection

9  that was filed as to Mr. Jurkovic's claim because that was

10  filed in error, and he had in fact had two separate claims, and

11  we're not getting into the merits of whether he's entitled to

12  have a claim against both the corporation and the -- against

13  the holding company and the utility.  That wasn't the objection

14  that was brought.  We brought the objection that they were

15  duplicate, they're not.  They're two distinct claims against

16  each one of the debtor entities, and on that basis, the

17  objection is not well-taken, and is being withdrawn with our

18  apologies for not having caught it sooner.

19      THE COURT:  Mr. Jurkovic, and in preparing for the

20  hearing though, I did read what you filed, and it looks to me

21  like you really only have a claim against the utility, and you

22  shouldn't matter if you establish your claim, you're going to

23  get paid, and you acknowledge, you're not trying to get paid

24  double, you're trying to get paid the money that you believe

25  you are entitled to, and I don't disagree, but it's hard for me

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   to understand and anticipate the merits on this.  The problem

2   has to do with the trees that are falling down, and may fall

3   down on your hillside.  I don't know how the holding company

4   has any liability here.

5            So I -- Mr. Benvenutti is withdrawing his challenge

6   today, but if he files an objection again based upon there's no

7   asserted liability of PG&E Corporation, I will tell you that on

8   the strength of what you filed, there is no claim asserted

9   against the corporation, and you might be well-advised just to

10  voluntarily withdraw that.  I'm not going to insist that you do

11  it today, but I'm giving you a heads-up that if you prove your

12  case that the trees caused the damage to your property, the

13  utility will pay you, and that's all you have to worry about.

14           So I'll --

15           MR. JURKOVIC:  Well, okay.

16           THE COURT:  -- leave it to you to decide whether you

17  want to just take my advice, and voluntarily withdraw your

18  claim against the holding company.  If you don't, then the

19  company may file a different objection saying not that it's

20  duplicate, but that there's no liability because there's none

21  asserted.  So take that as a free piece of advice, and maybe

22  what you need to do is focus on your claim against the utility,

23  and maybe they'll make you an offer, and maybe you'll accept

24  it, and maybe you'll counter it, or maybe it will go to

25  mediation.  I'll leave it at that.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. JURKOVIC:  Got it.  Okay.  Thank you.

2          THE COURT:  So Mr. Benvenutti, you said there's only

3   one left.  Do you have Mr. Williams, or do you --

4          MR. BENVENUTTI:  Which would be Mr. Williams

5   (phonetic).  Mr. Williams.  And that is a straightforward

6   duplicate claim being filed.  Mr. Williams filed the same claim

7   as best we can tell --

8          THE COURT:  I got that.

9          MR. BENVENUTTI:  -- against --

10         THE COURT:  Is Mr. Williams --

11         MR. BENVENUTTI:  -- against --

12         THE COURT:  -- on the phone call today?  Wait, hold

13  on.  Is Mr. Williams on the call?

14         Operator, did you have a call-in from Bruce Williams?

15         THE OPERATOR:  Let me double-check.  One moment, Your

16  Honor.

17         THE COURT:  Well, I've checked, and I don't see it on

18  the list.

19         THE OPERATOR:  No, I don't have anyone by that name.

20         THE COURT:  Mr. Benvenutti, would you like me to enter

21  a default here on the claim against the parent?

22         MR. BENVENUTTI:  Yes, Your Honor.  It's --

23         THE COURT:  Well, I think --

24         MR. BENVENUTTI:  -- not against the parent, it's the

25  duplicate claim.  You mean the objection --

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  But if Mr. --

2    MR. BENVENUTTI:  -- that's been filed?

3    THE COURT:  If Mr. -- one of the things that struck me

4 as unusual, and I did look at Mr. Williams' claim, it doesn't

5 have a date on it, and it looks like the repair to his car was

6 just a few days after the petition, and of course if the

7 alleged damage had occurred post-petition, then we wouldn't

8 even be talking about it here today.

9    But clearly, I would tell Mr. Williams, were he on the

10 call, the same thing I told Mr. Jurkovic, he doesn't -- he just

11 doesn't state a claim against the parent, and it's clearly a

12 duplicate, but I don't imagine, Mr. Benvenutti, you are today

13 trying to strike a 2,000 dollar claim against the utility,

14 right?

15    MR. BENVENUTTI:  Your Honor, unless I misread his

16 claims, both of his claims were filed against the utility, both

17 were filed against the utility.  I would like to just strike

18 the one, and leave the surviving one, so that we have the same

19 result as if he hadn't responded.  I mean, this will survive

20 the claim.  We'll deal with the merits of the claim later.  We

21 would seek to disallow both of his claims, but we simply wanted

22 to clear the register of the second one.

23    THE COURT:  Well --

24    MR. BENVENUTTI:  That's the relief we're asking for.

25    THE COURT:  Yeah.  Okay.  I'll strike his claim as

PG&E Corporation and Pacific Gas and Electric Company

1    to -- I'll sustain the objection that it's a duplicate claim,

2    and it's reduced down to one claim for, as I recall, about

3    2,200 dollars, right?

4            MR. BENVENUTTI:  Yes, Your Honor.  Yes, Your Honor, it

5    was -- ordinarily, I don't think we would -- let's just say we

6    were surprised that we had a response on this one but it is

7    what it is, and --

8            THE COURT:  It is what it is, okay.

9            MR. BENVENUTTI:  -- when claimants --

10           THE COURT:  It's sustained.

11           MR. BENVENUTTI:  -- respond, one must deal with that.

12           THE COURT:  Is there anyone on this call that thinks

13   that there's anything else on our docket for this morning?  I

14   believe we've gotten everything else out of the way but does

15   anyone wish to be heard on anything that might have been on the

16   calendar?

17           All right.  Thank you all for your time.  I'm sorry to

18   have kept you waiting.  Thank you, Mr. Taylor, and Mr.

19   Benvenutti, for laying out the issues on the ADR procedures,

20   and I'll look forward to seeing the submitted order, and with

21   that, I'll conclude the hearing, and thank you all for -- have

22   a good day.  Thank you.

23           MR. BENVENUTTI:  Thank you, Your Honor.

24           MR. TAYLOR:  Thank you, Your Honor.

25           (Whereupon these proceedings were concluded at 10:42 AM)

(973) 406-2250 | operations@escribers.net | www.escribers.net

C E R T I F I C A T I O N

I, Linda Ferrara, certify that the foregoing transcript is a
true and accurate record of the proceedings.



_____

/s/ LINDA FERRARA, CET-656


eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020


Date:  September 23, 2020

**[**

**[Jerk-o- (1)**
24:1
**[Yerk-o-vitch] (2)**
24:2,3

**A**

**abbreviated (5)**
5:16;6:23;8:21;9:14;
22:7
**ability (2)**
16:25;21:3
**able (2)**
4:23;17:20
**absolutely (1)**
18:17
**accept (2)**
18:19;26:23
**accompanies (1)**
9:9
**acknowledge (1)**
25:23
**actually (1)**
20:16
**administration (1)**
15:25
**ADR (8)**
3:12;5:16;13:15;
14:18,20;16:19;19:8;
29:19
**advance (1)**
22:21
**advantage (1)**
21:21
**advice (2)**
26:17,21
**advocate (1)**
8:5
**affiliated (1)**
20:24
**affiliation (1)**
19:25
**affiliations (1)**
21:4
**again (13)**
3:25;7:23;8:1,2;
9:12;14:13;15:13;18:1;
19:1;21:5;22:19;23:11;
26:6
**against (17)**
24:15,18;25:12,12,
15,21;26:9,18,22;27:9,
11,21,24;28:11,13,16,
17
**agencies (2)**
13:24;14:23
**agency (1)**
17:8
**ago (1)**
9:4

**agree (2)**
11:24;22:17
**agreed (1)**
13:22
**agreement (2)**
8:10;9:19
**ahead (7)**
5:4;7:10,10;13:7,21;
19:16;20:18
**alleged (1)**
28:7
**allow (1)**
11:24
**along (1)**
20:1
**although (2)**
21:22;23:24
**ample (1)**
22:11
**anticipate (4)**
4:17;5:1,7;26:1
**apologies (1)**
25:18
**apologize (1)**
24:23
**appearances (1)**
3:23
**appendix (1)**
13:13
**appoint (1)**
7:12
**appointment (1)**
18:19
**appointments (1)**
4:10
**appropriate (2)**
8:25;18:1
**approval (1)**
7:18
**approve (2)**
7:5,23
**approving (1)**
4:18
**areas (1)**
20:1
**asserted (4)**
24:13;26:7,8,21
**assign (1)**
15:5
**assigned (1)**
15:18
**assume (1)**
19:24
**assumption (2)**
6:19;8:2
**assure (1)**
23:9
**attempt (1)**
9:12
**attention (1)**
18:21
**audience (1)**
6:16

**available (1)**
20:10
**avenue (1)**
11:22
**avoid (2)**
21:22;23:2

**B**

**back (10)**
9:8;10:6,8;11:25;
12:22;15:11;16:1;
17:18;18:1;23:12
**background (1)**
21:4
**bankruptcy (1)**
20:8
**based (1)**
26:6
**bases (1)**
4:3
**basic (1)**
21:9
**basis (3)**
19:18;24:19;25:16
**battle (2)**
23:1,2
**BDRP (1)**
17:13;20:9
**begins (1)**
18:25
**believes (1)**
16:25
**bench (1)**
18:23
**Benvenutti (73)**
3:9,11,17,19;4:5,8,
15,21;5:11,23;6:17;
7:9,11,21,24;9:3,25;
10:1,4,9,13,15,19;11:3;
13:6,8,18,20;14:12;
15:1;17:19;18:11,13,
16,19;19:6;20:8;21:23,
24;22:1,3,7,11,18,20;
23:8,8,13,21,22,24;
24:5,8,11;25:1,6;26:5;
27:2,4,9,11,20,22,24;
28:2,12,15,24;29:4,9,
11,19,23
**best (1)**
27:7
**better (1)**
17:7
**bias (1)**
19:3
**bill (1)**
17:17
**bind (2)**
8:6;9:18
**bio (3)**
20:2,10,21
**bit (5)**
5:13,15;6:3;7:15;9:1

**bogged (1)**
23:4
**both (7)**
3:19;5:20;10:16;
25:12;28:16,16,21
**break (1)**
10:1
**brief (1)**
20:10
**bring (1)**
8:9
**brought (3)**
24:21;25:14,14
**Bruce (1)**
27:14
**bundle (1)**
6:1
**burden (2)**
17:18;18:6
**business (4)**
5:25;9:15;10:6;
20:22

**C**

**calendar (2)**
14:20;29:16
**CALIFORNIA (2)**
3:1;14:23
**Call (10)**
3:3,7;4:20;9:25;
14:20;17:24;27:12,13;
28:10;29:12
**called (2)**
3:22;20:9
**call-in (1)**
27:14
**Calling (1)**
3:5
**can (9)**
7:6,6;10:19;13:22;
14:10,10;23:9,17;27:7
**car (1)**
28:5
**case (6)**
4:14,16;9:3;14:5;
21:2;26:12
**category (1)**
13:4
**caught (2)**
25:7,18
**caused (2)**
15:11;26:12
**certain (1)**
14:23
**certainly (4)**
4:2,21;10:14;12:22
**challenge (1)**
26:5
**chance (1)**
16:21
**change (3)**
15:6,10;16:5

**checked (1)**
27:17
**claim (30)**
8:24;11:21,21;13:15,
17;14:8;19:12;24:7,15,
17,17;25:9,12,21,22;
26:8,18,22;27:6,6,21,
25;28:4,11,13,20,20,
25;29:1,2
**claimant (11)**
10:23;11:24,25;
13:16;15:22;16:24;
22:12,13,15,18;23:5
**claimants (4)**
8:23;16:2;17:10;
29:9
**claimant's (1)**
6:22
**claims (19)**
6:1;7:16;12:14;
13:13,14,23;14:2,6,19;
16:1,16,19;23:23;
24:14;25:10,15;28:16,
16,21
**clarification (1)**
15:5
**clean (1)**
19:1
**clear (4)**
8:4;13:24;18:9;
28:22
**clearly (2)**
28:9,11
**CLERK (1)**
3:4
**clients (1)**
17:5
**close (1)**
21:8
**closed (1)**
5:7
**colleagues (1)**
4:1
**collecting (1)**
19:23
**comfortable (2)**
17:9;18:5
**comment (2)**
8:16;9:12
**comments (1)**
7:25
**common (1)**
9:19
**communications (1)**
8:7
**company (12)**
4:1;5:2,9;6:6;12:12;
21:16;24:16,18;25:13;
26:3,18,19
**compensation (2)**
5:18;9:15
**complain (1)**
21:21

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(1) [Jerk-o- - complain
Page 31

Case: 19-30088    Doc# 9113    Filed: 09/23/20    Entered: 09/23/20 12:29:54    Page 31
of 37

**complexity (1)**
14:6
**compliment (1)**
4:1
**comprehensive (1)**
4:2
**concepts (1)**
9:17
**conceptual (1)**
6:24
**conclude (1)**
29:21
**concluded (2)**
24:12;29:25
**conduct (2)**
8:13;12:6
**confidential (3)**
8:8,8;9:17
**conflict (2)**
18:18;19:3
**conflicts (2)**
5:18;21:6
**connection (1)**
22:24
**consequence (1)**
11:2
**consistent (2)**
10:11;23:15
**Construction (1)**
13:2
**contacts (1)**
21:1
**continue (1)**
7:10
**conversation (2)**
15:10;23:3
**conversations (1)**
15:3
**Corporation (5)**
3:6;24:18;25:12;
26:7,9
**cough (1)**
9:24
**counsel (2)**
6:8;14:14
**counter (1)**
26:24
**counteroffer (4)**
10:25;12:1,10,11
**couple (5)**
3:18,21;7:25;10:18,
20
**course (1)**
28:6
**Court (90)**
3:3,4,7,13,16,18,21;
4:7,10,10,12,17,22;
5:12,24;7:5,8,10,18,20,
22,25;9:2,24;10:3,6,17,
18,20;11:10,12,16,18,
23;12:11,17,20,22,23,
25;13:7,9,11;14:4,13,
24;15:8,13;16:9;17:13,

24;18:15,20;19:7,11,
16,20;20:3,5,15,18,23;
21:22,25;22:2,6,10,17,
19;23:10,22;24:4,6,10;
25:19;26:16;27:2,8,10,
12,17,20,23;28:1,3,23,
25;29:8,10,12
**courtroom (1)**
18:24
**Court's (2)**
6:20;20:7
**cover (1)**
4:19
**covering (2)**
3:10;23:22
**covers (1)**
4:3
**craft (1)**
7:17
**create (1)**
12:24
**creditors (1)**
19:10

**D**

**damage (2)**
26:12;28:7
**date (3)**
22:5,9;28:5
**David (4)**
3:12;8:18;13:21;
18:12
**day (2)**
6:10;29:22
**days (4)**
22:4,8,21;28:6
**deafening (1)**
14:17
**deal (2)**
28:20;29:11
**dealt (3)**
4:3;6:2;13:3
**debate (1)**
23:5
**debtor (1)**
25:16
**debtors (2)**
4:16;15:3
**debtors' (1)**
17:11
**decide (1)**
26:16
**decided (1)**
21:14
**default (1)**
27:21
**defer (1)**
7:18
**delayed (1)**
3:8
**Dennis (1)**
3:5

**designate (2)**
4:16;5:10
**designated (3)**
6:22;8:24;17:21
**designating (1)**
7:16
**desire (1)**
17:11
**detailed (1)**
7:1
**details (1)**
3:14
**difference (1)**
17:16
**different (2)**
5:16;26:19
**disagree (1)**
25:25
**disallow (1)**
28:21
**disallowed (1)**
11:21
**disclose (1)**
19:24;21:6
**discussed (1)**
19:15
**disinclination (1)**
16:7
**dislike (1)**
12:8
**dispute (2)**
6:7;20:8
**disqualified (1)**
16:12
**disqualifiers (1)**
16:23
**disqualify (1)**
21:18
**distinct (1)**
25:15
**docket (1)**
29:13
**document (2)**
13:12;23:18
**dollar (1)**
28:13
**dollars (2)**
11:25;29:3
**done (2)**
10:11;13:20
**double (1)**
25:24
**double-check (1)**
27:15
**down (4)**
23:4;26:2,3;29:2
**dozens (1)**
15:25
**drafted (1)**
10:13
**driving (1)**
10:17
**drop (1)**

9:24
**duplicate (7)**
24:7;25:15;26:20;
27:6,25;28:12;29:1
**duplicates (2)**
24:14,19
**duplication (1)**
5:15
**duplicative (1)**
9:13

**E**

**earlier (1)**
15:24
**early (1)**
19:1;24:12,22;25:4
**edits (1)**
23:14
**education (1)**
21:4
**effect (1)**
12:10
**eight (1)**
22:21
**eighteen (1)**
9:4
**either (10)**
4:25;8:5,6,21;11:20;
12:14;14:13,14,15;
16:10
**El (1)**
14:2
**Electric (1)**
24:16
**elicit (1)**
22:12
**else (9)**
9:10;10:10;14:6,17,
20;19:7;23:11;29:13,
14
**email (2)**
24:22;25:3
**end (1)**
12:3
**ended (1)**
15:12
**enough (1)**
18:9
**enter (1)**
27:20
**entities (1)**
25:16
**entitled (3)**
21:9;25:11,25
**entity (1)**
21:16
**envisioned (1)**
16:1
**error (2)**
10:7;25:10
**establish (1)**
25:22

**evaluating (1)**
19:18
**even (4)**
7:23;12:2;15:16;
28:8
**everybody (1)**
20:11
**everyone (1)**
3:7
**exactly (3)**
13:25;15:12;20:14
**exempted (1)**
13:14
**expand (2)**
6:15,18
**expanding (1)**
5:14
**expect (5)**
4:9;18:17;19:2,12;
23:18
**expectation (1)**
4:15
**expected (2)**
6:12;12:9
**experience (4)**
6:8;8:3;21:4;22:24
**experienced (3)**
5:24,25;9:20
**expert (1)**
3:15
**explained (1)**
9:17
**explains (1)**
9:16
**explanation (1)**
17:2
**extent (2)**
3:13;23:17

**F**

**facilitate (1)**
9:19
**fact (3)**
7:11;24:15;25:10
**fair (1)**
16:9
**faith (2)**
11:9,11
**fall (1)**
26:2
**falling (1)**
26:2
**falls (1)**
11:8
**familiar (3)**
6:19;20:5,7
**fan (1)**
14:4
**fashion (1)**
7:7
**feel (1)**
7:22

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

**few (3)**
4:11;20:16;28:6
**figure (1)**
14:7
**file (1)**
26:19
**filed (10)**
24:15;25:9,10,20;
26:8;27:6,6;28:2,16,17
**files (1)**
26:6
**final (1)**
14:2
**fine (6)**
4:19;10:15,15;14:9;
17:12;23:19
**fires (1)**
14:1
**firm (1)**
20:24
**first (7)**
3:25,25;5:14;7:14,
14;13:23;14:13
**fit (1)**
23:16
**focus (1)**
20:1;26:22
**focusing (1)**
5:22
**follow (1)**
21:25
**following (2)**
13:13;16:19
**force (1)**
9:22
**forgot (1)**
16:11
**form (4)**
6:23;8:21,23;9:9
**formal (2)**
5:3,17
**formality (1)**
4:18
**formats (1)**
4:25
**forth (2)**
16:2;19:23
**forty-five (1)**
22:8
**forward (2)**
24:1;29:20
**found (1)**
20:2
**four (1)**
22:15
**frame (1)**
21:11
**framing (1)**
15:12
**FRANCISCO (1)**
3:1
**frankly (2)**
7:12;21:9

**free (1)**
26:21
**full (1)**
9:14
**fully (1)**
19:2
**function (1)**
8:9
**further (1)**
20:2
**fuss (1)**
16:25

**G**

**Gas (1)**
24:16
**general (9)**
6:3;7:25;8:1;11:8;
13:13,14,15;16:19;
19:8
**generally (1)**
6:19
**gets (1)**
11:25
**given (4)**
7:11;10:16;18:18;
19:17
**giving (1)**
26:11
**goal (1)**
12:19
**golly (1)**
16:10
**Good (4)**
3:7;11:9,11;29:22
**ground (1)**
5:20;18:8
**guess (1)**
5:2;12:5
**guidance (1)**
10:16
**guy (2)**
15:18;16:11

**H**

**habit (1)**
18:22
**handbook (1)**
9:20
**happen (5)**
6:5,10;18:19,25;19:1
**happens (4)**
6:11;10:21,23;11:1
**happy (3)**
4:5;5:1;8:15
**hard (1)**
25:25
**heads-up (1)**
26:11
**hear (3)**
8:15;13:9;21:7

**heard (10)**
3:24;9:4;14:15,18,
20;17:21,24;19:7;
23:11;29:15
**hearing (5)**
5:1;23:13;24:11;
25:20;29:21
**held (2)**
13:23;16:17
**Hello (2)**
19:9;25:2
**here's (3)**
7:25;11:24;13:11
**hillside (1)**
26:3
**hissy (1)**
23:16
**history (1)**
5:25
**hold (3)**
4:19;20:6;27:12
**holding (4)**
24:18;25:13;26:3,18
**Honor (30)**
3:11;4:15;5:11;8:17;
10:1;11:5;12:15;13:6,
18;14:11,22,25;15:24;
17:4;18:10,11;19:6;
21:23;23:8,21,24;24:8;
25:8;27:16,22;28:15;
29:4,4,23,24
**Honorable (1)**
3:4
**Honor's (1)**
17:10
**hope (2)**
19:2;23:19
**hopper (1)**
20:17
**hundreds (1)**
15:25

**I**

**identical (1)**
24:17
**identification (1)**
16:13
**identified (2)**
4:4;22:4
**identify (1)**
16:23
**identifying (1)**
4:9
**imagine (5)**
11:17,19;16:16;23:4;
28:12
**important (3)**
9:10,11;22:13
**importantly (3)**
5:21;8:6;9:21
**impose (1)**
17:15

**imposed (1)**
21:20
**inability (1)**
12:7
**inappropriate (2)**
5:6;17:1
**incentivized (1)**
16:5
**include (3)**
8:20;20:21;24:1
**including (1)**
12:18
**incorrectly (1)**
24:13
**indiscernible (3)**
3:20;10:2;16:8
**industry (1)**
21:17
**information (11)**
6:25;7:13;13:14;
19:17,25;20:2,10,21;
21:3,9;22:12
**informative (1)**
6:15
**informed (1)**
6:15
**innocent (1)**
12:7
**input (3)**
15:22;17:8,11
**inquire (1)**
15:7
**insist (1)**
26:10
**instances (3)**
6:21,21;7:13
**instruction (1)**
9:1
**insulted (1)**
12:2
**insurance (1)**
21:16
**interested (1)**
6:14
**interruption (1)**
10:8
**interview (2)**
21:8,8
**into (5)**
3:14;17:8;18:6;23:1;
25:11
**introduction (1)**
9:20
**investigation (1)**
22:22
**invite (1)**
6:25
**involved (1)**
21:2
**issue (7)**
3:20;5:7;7:4;12:18;
16:14;17:21;19:8
**issues (1)**

**29:19**

**J**

**JAMS (2)**
17:14;19:25
**job (2)**
21:7,8
**joining (1)**
3:13
**judge (2)**
11:12;18:23
**jumped (1)**
5:6
**Jurkovic (24)**
19:9,9,11,14,17;20:4,
6,13,18,20;22:19;23:7,
12;24:3,7,12,22,25;
25:2,2,19;26:15;27:1;
28:10
**Jurkovic's (2)**
19:21;25:9

**K**

**keeps (2)**
17:20;18:7
**kept (2)**
3:8;29:18
**kind (1)**
20:21
**knowledge (1)**
7:1
**knows (1)**
17:24

**L**

**lack (1)**
5:18
**language (3)**
7:17;12:19;17:19
**last (2)**
12:25;13:12
**late (3)**
9:25;10:7;24:23
**later (1)**
28:20
**law (1)**
20:24
**lawyers (2)**
5:24;17:5
**laying (1)**
29:19
**layman's (1)**
15:14
**learn (1)**
23:25
**least (3)**
9:11;11:8;22:4
**leave (4)**
5:7;26:16,25;28:18
**left (1)**

Case: 19-30088    Doc# 9113    Filed: 09/23/20    Entered: 09/23/20 12:29:54    Page 33
of 37

27:3
**legal (1)**
  21:4
**legally (1)**
  16:11
**less (1)**
  6:16
**letting (1)**
  10:9
**liability (3)**
  26:4,7,20
**life (1)**
  18:3
**link (2)**
  20:2,10
**links (1)**
  20:17
**list (8)**
  14:8;15:14,15,23;
  16:17;20:11,17;27:18
**lists (1)**
  13:15
**litigant (1)**
  17:15
**little (5)**
  5:13;6:3;7:15;9:1;
  13:8
**live (2)**
  14:10,10
**long (2)**
  9:5,6
**look (3)**
  23:14;28:4;29:20
**looking (3)**
  7:13;12:22;25:3
**looks (2)**
  25:20;28:5
**lot (5)**
  4:3;5:24,25;6:4;16:1

**M**

**makes (3)**
  8:19;18:7;23:17
**many (2)**
  7:12;17:15
**matter (6)**
  3:5;5:9;15:2,24;
  21:7;25:22
**matters (2)**
  3:19;15:5
**may (10)**
  3:14;6:21;9:3;20:7;
  21:23;22:1;24:8,9;
  26:2,19
**maybe (9)**
  5:24;6:4;12:3,3;
  26:21,23,23,24,24
**mean (14)**
  8:11,19;11:17,18,19;
  14:13;16:9;18:8,24;
  20:15,23;21:13;27:25;
  28:19

**mediate (1)**
  18:3
**mediated (2)**
  15:19;16:17
**mediating (1)**
  16:6
**mediation (32)**
  4:4,25;5:25;6:5,9,20,
  23;7:16;8:3,13,20,22,
  22,24;9:14,14,20,21;
  12:4,14;13:1;15:4;
  16:24;17:8,14;18:18;
  20:25;22:4,5,9,9;26:25
**mediations (2)**
  16:3;22:8
**mediator (38)**
  4:13,16;5:10;6:9,12;
  8:4,5,6,9,12;9:18,18,
  21;15:1,4,17,19;16:5,6,
  7,10,10;17:1,9,16,21;
  18:18;21:2,12,13,14,
  15;22:3,14,21,23;23:6,
  6
**mediators (11)**
  4:9;7:12;15:15,22,
  23;16:2,19,22;19:3,18,
  19
**member (1)**
  20:24
**merely (1)**
  11:20
**merits (3)**
  25:11;26:1;28:20
**might (7)**
  8:25;11:7;18:21;
  20:12;21:17;26:9;
  29:15
**Mike (1)**
  19:9
**minimize (1)**
  12:21
**minor (1)**
  14:10
**minute (3)**
  10:3;17:25;19:12
**misread (1)**
  28:15
**missing (2)**
  5:13;6:2
**misunderstanding (1)**
  12:7
**mix-up (1)**
  4:22
**moment (2)**
  23:13;27:15
**money (1)**
  25:24
**Montali (1)**
  3:5
**month (1)**
  16:18
**months (1)**
  9:4

**more (18)**
  3:15;5:3,21,22,22;
  6:4,15,22,25;7:1:8:1,1,
  13,14;9:16,19;10:20;
  13:8
**morning (7)**
  3:7;14:16;24:12,12,
  15,22;29:13
**most (2)**
  8:5;9:21
**motion (5)**
  3:12;9:6,7;14:18,21
**motions (1)**
  9:5
**Murphy (1)**
  14:1
**must (1)**
  29:11
**myself (1)**
  18:24

**N**

**name (4)**
  13:16;19:9,18;27:19
**names (2)**
  15:15;20:16
**necessarily (1)**
  20:25
**necessary (2)**
  12:4;21:22
**need (5)**
  7:5,12;12:22;15:8;
  26:22
**needed (1)**
  5:19
**needs (1)**
  23:25
**nevertheless (1)**
  24:17
**next (2)**
  4:11;16:18
**nine (1)**
  13:23
**nitpick (1)**
  5:15
**Nobody (1)**
  23:1
**none (1)**
  26:20
**nonlawyer (1)**
  11:13
**nonparticipation (1)**
  11:11
**notice (3)**
  8:21;16:18;24:24
**noticed (2)**
  5:1;15:23
**notifies (1)**
  18:8
**notify (1)**
  8:23
**number (13)**

3:22;4:3,12;8:2;
  12:21;13:15,17,23;
  14:8;15:17,20;22:12,
  13

**O**

**objected (1)**
  24:19
**objecting (1)**
  11:21
**objection (15)**
  12:4,14;16:4;22:14;
  23:12;24:6,21;25:8,13,
  14,17;26:6,19;27:25;
  29:1
**objections (2)**
  14:19;23:23
**obligation (1)**
  11:8
**obviously (1)**
  12:5;17:5
**occur (1)**
  6:22
**occurred (2)**
  8:25;28:7
**offer (4)**
  7:2,14;11:14;26:23
**omnibus (1)**
  14:19
**once (1)**
  23:17
**one (34)**
  4:13,19;5:12,16,17;
  6:2;7:4;8:19;9:2,11,13;
  13:19;14:25;15:15;
  18:17;19:10,10;20:9,
  25;22:12;23:25;24:14,
  15,19;25:16;27:3,15;
  28:3,18,18,22;29:2,6,
  11
**only (7)**
  7:4;8:19;9:22;23:25;
  24:14;25:21;27:2
**oOo- (1)**
  3:2
**open (2)**
  17:20;18:7
**Operator (3)**
  27:14,15,19
**opportunities (1)**
  12:24
**opportunity (4)**
  7:17;15:22;21:21;
  22:22
**option (2)**
  12:14,14
**order (8)**
  3:3;5:2;9:6,8,9,10;
  12:11;29:20
**orders (1)**
  9:5
**ordinarily (1)**

29:5
**organized (1)**
  14:1
**others (2)**
  9:3;23:13
**otherwise (1)**
  20:1
**out (12)**
  5:6;6:6;8:11,23;
  11:23;14:7;16:24;17:7;
  18:1;23:6;29:14,19
**over (1)**
  9:8
**own (3)**
  20:8,9;22:22

**P**

**Pacific (1)**
  24:16
**page (2)**
  13:12,12
**paid (3)**
  25:23,23,24
**panel (4)**
  4:12,18;5:8;15:4
**panels (2)**
  4:4,10
**paragraph (4)**
  6:3;8:14,20;9:16
**pardon (2)**
  9:3,22
**parent (3)**
  27:21,24;28:11
**part (1)**
  8:21
**participate (1)**
  11:9
**particular (19)**
  4:13,14,16;5:9;7:16;
  8:12;15:2,5;16:2,2,5,
  13,24;17:20;21:11;
  22:3,14;23:5,12
**particularly (1)**
  13:24
**parties (3)**
  16:10;17:6;18:8
**partner (1)**
  3:12
**party (5)**
  8:9;10:24;11:25;
  12:2;17:20
**Pascuzzi (8)**
  14:22,22,25;15:9;
  17:3,4,4,22
**past (1)**
  9:5
**Paul (2)**
  14:22;17:4
**Pause (1)**
  10:5
**pay (1)**
  26:13

**paying (1)**
17:17
**people (8)**
3:22;4:13,24;5:25;
6:1,19;8:2;15:15
**perhaps (1)**
17:16
**person (5)**
6:7;17:25;18:2,4;
22:22
**persuade (1)**
9:22
**Peter (3)**
18:16;21:23;23:8
**petition (1)**
28:6
**PG&E (11)**
3:5,10;6:7;9:3;
15:19;16:19;17:16;
21:13;23:3;24:18;26:7
**phone (2)**
14:14;27:12
**phonetic (1)**
27:5
**pick (1)**
15:4
**picked (2)**
4:13;15:2
**piece (1)**
26:21
**place (3)**
5:5;8:25;20:12
**planned (1)**
15:23
**please (4)**
4:7;7:10;13:21;20:6
**point (2)**
14:10;15:14
**Portal (1)**
14:2
**position (2)**
8:4;12:13
**possibilities (1)**
19:24
**post-petition (1)**
28:7
**potential (1)**
21:6
**potentially (1)**
15:25
**preferred (1)**
9:7
**pre-mediation (1)**
10:22
**preparing (2)**
24:11;25:19
**present (1)**
10:25
**presenting (1)**
4:9
**presiding (1)**
3:5
**pretty (1)**

10:16
**primary (2)**
11:22;15:21
**principal (1)**
13:3
**prior (1)**
22:4
**probably (3)**
11:12;17:7;20:1
**problem (3)**
6:24;20:13;26:1
**procedure (5)**
6:16;9:13;10:21;
16:20;18:7
**procedures (8)**
3:12,14;5:20;9:7;
13:14;15:12;20:8;
29:19
**proceed (1)**
6:18
**proceeding (1)**
25:8
**proceedings (1)**
29:25
**process (17)**
4:2,8;6:20;7:2,4,13,
14;8:3;9:1;10:22,23;
12:3,5;13:1;17:20;
18:22;23:1
**professional (1)**
17:14
**prohibition (1)**
21:10
**property (1)**
26:12
**proposal (4)**
10:24,24;11:24;
19:24
**proposed (1)**
15:23
**prospective (1)**
4:9
**prove (1)**
26:11
**provides (1)**
22:11
**providing (1)**
6:25
**put (12)**
10:10;13:4,16;15:14;
17:18;18:6,6;19:5;
20:12,17;23:16,17
**putting (1)**
4:2

**Q**

**quickly (1)**
23:25
**quite (1)**
25:6

**R**

**rail (1)**
9:4
**Railroad (1)**
14:2
**raise (1)**
22:13
**reaching (1)**
9:19
**read (1)**
25:20
**ready (1)**
5:4
**realize (2)**
16:11;24:15
**really (3)**
5:21;6:11;25:21
**reason (5)**
5:3,6;6:18;17:1;18:4
**reasonable (1)**
10:14
**recall (2)**
15:12;29:2
**recollection (1)**
15:2
**recuse (1)**
18:24
**reduced (1)**
29:2
**referring (1)**
14:18
**register (1)**
28:22
**regularly (1)**
11:20
**relate (1)**
14:1
**related (2)**
16:11;21:16
**relationships (1)**
20:22
**relatively (1)**
9:6
**relevant (1)**
21:17
**relief (1)**
28:24
**remedies (1)**
11:9
**remedy (2)**
11:7;21:19
**remember (1)**
15:9
**repair (1)**
28:5
**repetition (1)**
5:17
**resolution (1)**
20:8
**Resources (1)**
13:2

**respect (2)**
3:12;6:22
**respond (5)**
4:5;10:23;11:3;12:2;
29:11
**responded (1)**
28:19
**responding (1)**
11:13
**response (5)**
11:6,18;12:8,12;29:6
**responses (2)**
4:4;13:1
**responsibility (1)**
21:5
**result (1)**
28:19
**right (13)**
5:10;12:15,23;19:16;
20:4,14;22:6,10;23:13;
25:3;28:14;29:3,17
**rule (1)**
22:23
**rules (2)**
5:20;18:8

**S**

**same (6)**
5:20;19:25;23:16;
27:6;28:10,18
**SAN (1)**
3:1
**sanction (1)**
11:13
**sanctionable (1)**
12:6
**sanctioned (1)**
12:6
**sanctions (1)**
11:20
**satisfied (3)**
14:15;17:2,3
**satisfies (1)**
21:17
**saw (1)**
25:4
**saying (1)**
26:19
**scan (1)**
15:11
**script (2)**
6:6;8:11
**second (5)**
4:19;5:2;24:16,17;
28:22
**seeing (1)**
29:20
**seek (1)**
28:21
**seeking (2)**
11:20,21
**seem (1)**

11:23
**seemed (1)**
6:2
**seems (3)**
7:3;13:16;14:5
**selecting (1)**
19:3
**selection (2)**
9:15;17:9
**self-correct (1)**
16:22
**send (2)**
8:23;11:23
**sense (3)**
8:19,20;21:8
**sent (1)**
24:22
**separate (3)**
13:4;24:17;25:10
**SEPTEMBER (1)**
3:1
**serve (1)**
4:25
**service (1)**
22:14
**services (2)**
17:14;20:25
**session (1)**
3:4
**sessions (1)**
8:13
**set (2)**
5:20;19:22
**settle (1)**
16:7
**settlement (4)**
10:22,23;11:13;16:8
**seven (2)**
15:17,20
**short (4)**
9:5,6,8;25:7
**shorter (1)**
23:18
**side (2)**
8:5,6
**sides (1)**
8:10
**sign (1)**
5:2
**silence (1)**
14:17;16:18
**Simply (2)**
15:24;28:21
**slate (1)**
4:24
**slight (1)**
9:11
**slightly (2)**
5:14;23:18
**So-and- (1)**
21:2
**so-and-so (5)**
5:10;6:10;18:4;21:5;

Min-U-Script®

Case: 19-30088    Doc# 9113    Filed: 09/23/20    Entered: 09/23/20 12:29:54    Page 35
of 37

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(5) paying - so-and-so

22:21
**solve (1)**
20:13
**somebody (2)**
20:24;21:18
**someone (1)**
12:5
**sooner (2)**
25:7,18
**sophisticated (1)**
17:6
**Sorry (9)**
3:7;10:6;13:6;23:9;
24:25;25:3,4,4;29:17
**sort (2)**
5:16;6:12
**sounds (2)**
10:14;17:12
**speak (1)**
23:3
**speaking (1)**
3:9
**specific (4)**
8:1;14:19;19:12;
21:10
**specifically (1)**
10:21
**specificity (1)**
19:23
**specified (2)**
11:6,7
**spoke (1)**
15:24
**spot (1)**
11:7
**squeak (1)**
13:4
**squeaky (1)**
13:3
**standard (2)**
8:22;22:9
**start (1)**
9:8
**started (1)**
10:7
**starting (1)**
8:2
**State (3)**
14:23;17:8;28:11
**statement (4)**
6:3;7:5;8:7;17:10
**still (2)**
7:12;24:6
**story (1)**
13:8
**straightforward (1)**
27:5
**strange (1)**
13:16
**stranger (1)**
15:16
**streamlined (2)**
6:23;7:7

**strength (1)**
26:8
**strike (1)**
28:13,17,25
**strongly (1)**
7:22
**struck (1)**
28:3
**subject (1)**
7:17
**submit (3)**
5:4;12:9;15:23
**submitted (1)**
29:20
**substantive (1)**
5:22
**such-and-such (1)**
6:10
**sudden (1)**
6:8
**suddenly (1)**
18:3
**suggest (1)**
6:6
**suggestions (1)**
4:10
**suitability (1)**
19:19
**suppose (4)**
6:18;11:20;15:25;
24:23
**supposed (2)**
10:25;23:2
**Sure (4)**
19:22;20:5,20;21:6
**surface (2)**
16:13;18:21
**surprised (1)**
29:6
**survive (1)**
28:19
**surviving (1)**
28:18
**sustain (1)**
29:1
**sustained (1)**
29:10
**system (2)**
16:22;19:4

**T**

**talking (1)**
28:8
**Taylor (46)**
3:12;6:25;7:19;8:15,
17,18;9:2,23;10:10,14;
11:3,5,11,15,17,19;
12:15,18,21,24;13:19,
21,22;14:11;15:3,6,8,9,
13,21;17:18,23;18:10,
12,12,14,19;20,22;
20:3,7,14,16;21:19;

23:14;29:18,24
**ten (3)**
15:15,16,17
**tending (1)**
18:21
**term (1)**
9:19
**terms (2)**
4:18;7:4
**there'd (1)**
21:10
**third (1)**
13:13
**though (2)**
11:7;25:20
**thought (5)**
5:12;8:15,19;9:4;
24:4
**thoughts (4)**
5:14;6:14;7:2,21
**three (1)**
14:1
**times (1)**
12:21
**timing (1)**
10:7
**today (6)**
3:10;26:6,11;27:12;
28:8,12
**together (3)**
4:2;10:10;19:5
**told (9)**
6:9;15:6,17,19;18:3;
21:1;22:20;25:1;28:10
**transparent (1)**
14:5
**trees (2)**
26:2,12
**trial (1)**
18:25
**trigger (2)**
12:3,4
**Triple (1)**
20:1
**true (1)**
23:9
**trust (1)**
19:4
**try (5)**
3:23;6:6;8:9;17:7;
23:2
**trying (5)**
8:11;21:22;25:23,24;
28:13
**TUESDAY (1)**
3:1
**turn (1)**
23:1
**Turner (4)**
13:2;14:3,9,14
**twenty (1)**
21:14
**twenty- (1)**

22:20
**twenty-eight (1)**
22:4
**twice (3)**
5:19;9:13;23:16
**two (12)**
4:25;5:15;6:3;8:9,
14;14:2,19;22:13;
23:23;24:13;25:10,15
**Tyrrell (4)**
13:2;14:3,9,14

**U**

**Um-hum (1)**
7:24
**un (1)**
7:9
**unbiased (1)**
9:15
**under (3)**
10:21,21,22
**Understood (2)**
11:15;14:11
**underway (1)**
18:22
**unfair (1)**
21:21
**unless (3)**
5:3,5;28:15
**unlikely (1)**
7:11
**unsophisticated (1)**
18:2
**unusual (1)**
28:4
**unwillingness (1)**
12:8
**up (5)**
3:9;5:9;15:12;17:19,
25
**upload (1)**
23:18
**upon (2)**
21:20;26:6
**use (2)**
9:19;14:4
**utility (8)**
24:16;25:13,21;
26:13,22;28:13,16,17

**V**

**view (2)**
15:14,21
**violating (1)**
12:10
**vitch] (1)**
24:2
**voluntarily (2)**
26:10,17

**W**

**wait (3)**
17:25;20:6;27:12
**waiting (1)**
29:18
**wants (4)**
3:24;13:9;18:2;23:1
**warranted (1)**
22:15
**way (7)**
5:3;13:10;18:7;19:1,
4;21:1;29:14
**website (1)**
20:10
**weeks (2)**
4:11;22:16
**well- (1)**
24:21
**well-advised (1)**
26:9
**well-taken (1)**
25:17
**wheel (1)**
13:3
**Whereupon (1)**
29:25
**whole (1)**
13:1
**whose (1)**
8:9
**Williams (8)**
27:3,4,5,6,10,13,14;
28:9
**Williams' (1)**
28:4
**willing (2)**
16:21;17:12
**wish (4)**
14:15;19:7;23:11;
29:15
**withdraw (2)**
26:10,17
**withdrawing (1)**
26:5
**withdrawn (1)**
25:17
**within (3)**
4:11;11:8;13:3
**without (1)**
14:18
**wondered (1)**
5:19
**word (1)**
14:5
**words (5)**
4:19;6:5;8:22;12:10;
16:15
**work (3)**
12:13;14:7;17:7
**workable (1)**
12:17

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(6) solve - workable

Page 36
of 37

Case: 19-30088    Doc# 9113    Filed: 09/23/20    Entered: 09/23/20 12:29:54

**worked (3)**
  18:1;21:13,16
**workings (1)**
  7:1
**works (1)**
  13:10
**worry (4)**
  19:4;21:15,18;26:13

| X |
|---|

**X-rated (1)**
  11:18

| Y |
|---|

**years (1)**
  21:14
**Yep (1)**
  18:14

| 1 |
|---|

**10:42 (1)**
  29:25
**101 (2)**
  8:13,21
**12,000 (2)**
  16:15,16

| 2 |
|---|

**2,000 (1)**
  28:13
**2,200 (1)**
  29:3
**2020 (1)**
  3:1
**22 (1)**
  3:1
**250,000 (1)**
  12:1

| 4 |
|---|

**41 (1)**
  13:12

| 5 |
|---|

**50,000 (1)**
  11:25

| 6 |
|---|

**60,000 (1)**
  14:6

| 7 |
|---|

**79,094 (1)**
  14:8

| 9 |
|---|

**9084-1 (1)**
  13:12

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(7) worked - 9084-1

Page 37
of 37

Case: 19-30088    Doc# 9113    Filed: 09/23/20    Entered: 09/23/20 12:29:54
of 37