WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
 Fax: (650) 636 9251

Attorneys for Debtors and Reorganized
Debtors

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                    **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**REORGANIZED DEBTORS' REPLY IN SUPPORT OF INITIAL OPPOSITION TO ELLIOTT MANAGEMENT CORPORATION'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM AND RECONSIDERATION OF CONFIRMATION ORDER AND RELATED JOINDERS**<br><br>**Related to Dkt. Nos.:** 8536, 8663, 8704, 8746, 8864, 9032, 9034<br><br>**Date:** October 13, 2020<br>**Time:** 10:00 a.m. (Pacific Time)<br>**Place:** Video Conference |

**TABLE OF CONTENTS**

Page

I.   PRELIMINARY STATEMENT ................................................................................1

II.  ARGUMENT ..........................................................................................................5

     A.   Section 10.8 of the Plan and Paragraph 54 of the Confirmation Order
          Exculpate the Reorganized Debtors From the Noteholder Claims ........................5

          1.   The Plain Language of the Plan and Confirmation Order Exculpation
               Provisions Covers the Noteholder Claims ....................................................5

          2.   Section 2.1 of the Plan Does Not Except Administrative Expense
               Claims From Exculpation ............................................................................8

          3.   The Noteholder Claimants' Argument That Section 10.8 Violates
               Section 1129(a) of the Bankruptcy Code is Incorrect...............................11

     B.   Section 10.9(b) of the Plan and Paragraph 56 of the Confirmation Order
          Release the Reorganized Debtors From the Noteholder Claims ..........................13

     C.   The Noteholder Claimants Have Both Waived and Forfeited Their Right to
          Assert the Noteholder Claims .................................................................................15

     D.   The Noteholder Claimants are Not Entitled to Modify the Plan Because  They
          Fail to Satisfy Section 1127(b) of the Bankruptcy Code and Also Because
          They Cannot Present any Facts That Warrant Reconsideration ..........................19

          1.   Federal Rule 60(b) is not Available Because the Noteholder Claimants
               do not Satisfy Section 1127(b) of the Bankruptcy Code ..........................19

          2.   The Court Should Deny Reconsideration Because the Noteholder
               Claimants Have Failed to Carry Their Prima Facie Burden.....................21

          3.   The Request for Reconsideration Must be Denied Based on the
               Undisputed Record Before the Court..........................................................22

III. CONCLUSION.......................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 401 E. 89th St. Owners Inc.*,
    223 B.R. 75 (Bankr. S.D.N.Y. 1998) .................................................................. 20

*AAA Nev. Ins. Co. v. Chau*,
    No. 2:08-cv-00827-RCJ-LRL, 2010 WL 1756986 (D. Nev. Apr. 30, 2010) ....................... 22

*Antiquities of Nev., Inc. v. Bala Cynwyd Corp. (In re Antiquities of Nev., Inc.)*,
    173 B.R. 926 (B.A.P. 9th Cir. 1994) .................................................................. 19

*Arriva Pharms., Inc. v. Lezdey (In re Arriva Pharms., Inc.)*,
    456 B.R. 419 (Bankr. N.D. Cal. 2011) ................................................................ 17

*In re Aureal, Inc.*,
    No. 00-42104, 2006 WL 2355022 (Bankr. N.D. Cal. Aug. 14, 2006) .......................... 12

*Blixseth v. Credit Suisse*,
    961 F.3d 1074 (9th Cir. 2020) ...................................................................... 8-10

*Blixseth v. Credit Suisse (In re Blixseth)*,
    No. 16-35304, 2020 WL 3089263 (9th Cir. June 11, 2020) ........................... 3, 9, 10

*In re BNW, Inc.*,
    201 B.R. 838 (Bankr. S.D. Ala. 1996) ............................................................. 20, 21

*In re Cellular 101, Inc.*,
    539 F.3d 1150 (9th Cir. 2008) ........................................................................ 17

*Citrus Tower Blvd. Imaging Ctr., LLC v. Key Equip. Fin., Inc. (In re Citrus Tower Blvd. Imaging Ctr., LLC)*,
    520 B.R. 892 (Bankr. N.D. Ga. 2014) ............................................................... 18

*Coe v. RJM, LLC*,
    372 F. App'x 188 (2d Cir. 2010) ..................................................................... 21

*In re Contessa Liquidating Co.*,
    No. 2:11-BK-13454-PC, 2012 WL 2153271 (Bankr. C.D. Cal. June 13, 2012) ................. 22

*Corex Corp. v. United States*,
    638 F.2d 119 (9th Cir. 1981) ......................................................................... 24

*Countrywide Home Loans, Inc. v. Wilkerson (In re O'Kelley)*,
    No. 10-00356 DAE-LEK, 2010 WL 4176540 (D. Haw. Oct. 19, 2010) ......................... 22

*In re Daewoo Motor Am., Inc.*,
  488 B.R. 418 (C.D. Cal. 2011) ........................................................................... 19

*Enewally v. Wash. Mut. Bank (In re Enewally)*,
  368 F.3d 1165 (9th Cir. 2004) ........................................................................... 17

*In re Fraser's Boiler Serv., Inc.*,
  593 B.R. 636 (Bankr. W.D. Wash. 2018) .................................................... 8, 10

*Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*,
  193 F.3d 1083 (9th Cir. 1999) ........................................................................... 16

*Hamer v. Neighborhood Hous. Servs. of Chicago*,
  138 S. Ct. 13 (2017) ........................................................................................... 16

*In re Hechinger Inv. Co. of Del.*,
  298 F.3d 219 (3d Cir. 2002) ............................................................................... 12

*Johnson v. Zerbst*,
  304 U.S. 458 (1938) ........................................................................................... 16

*In re Joseph Edward Co.*,
  357 B.R. 441 (Bankr. E.D. Ky. 2006) ................................................................ 20

*Kilopass Tech. Inc. v. Sidense Corp.*,
  No. C-10-02066 SI, 2012 WL 1901198 (N.D. Cal. May 24, 2012) ................... 23

*Liljeberg v. Health Servs. Acquisition Corp.*,
  486 U.S. 847 (1988) ........................................................................................... 24

*In re Logan Place Properties, Ltd.*,
  327 B.R. 811 (Bankr. S.D. Tex. 2005) ............................................................... 19

*Milk Indus. Regul. Off. of P.R. v. Ruiz (In re Ruiz)*,
  B.A.P. No. PR 19-023, 2020 WL 3264985 (B.A.P. 1st Cir. June 10, 2020) ............ 23, 24

*In re Nat'l Heritage Found., Inc.*,
  478 B.R. 216 (Bankr. E.D. Va. 2012) .................................................................. 8

*People v. Simon*,
  25 P.3d 598 (Cal. 2001) ..................................................................................... 16

*Pinel v. Aurora Loan Servs., LLC*,
  814 F. Supp. 2d 930 (N.D. Cal. 2011) ............................................................... 11

*In re Plant Insulation Co.*,
  Case No. 09-31347 (TEC), 2012 Bankr. LEXIS 1716 (Bankr. N.D. Cal. Mar. 15, 2012) ..... 10

*In re Poteet Constr. Co.*,
  122 B.R. 616 (Bankr. S.D. Ga. 1990) ................................................................. 20

*Progressive W. Ins. Co. v. Tran*,
No. 07-CV-1999 JAH(POR), 2008 WL 11508656 (S.D. Cal. Nov. 20, 2008) ....................22

*In re PWS Holding Corp.*,
228 F.3d 224 (3d. Cir. 2000).............................................................................................9, 10

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012).................................................................................................................14

*In re Red Mountain Machinery Co.*,
448 B.R. 1 (Bankr. D. Ariz. 2011)........................................................................................12

*Reid & Hellyer, APC v. Laski (In re Wrightwood Guest Ranch, LLC)*,
896 F.3d 1109 (9th Cir. 2018) ................................................................................................16

*In re Rickel & Assocs., Inc.*,
260 B.R. 673 (Bankr. S.D.N.Y. 2001).............................................................................20, 21

*In re Sanitec Indus., Inc.*,
B.A.P. No. CC–09–1183–DHPa., 2009 WL 7809007 (B.A.P. 9th Cir. Dec. 21, 2009) ........10

*In re Sciacca*,
No. 16-26421-B-7, 2018 WL 4945715 (Bankr. E.D. Cal. Oct. 9, 2018).............16, 17, 19, 24

*Tanner v. McMurray*,
No. CV 17-0876 JB\KBM, 2018 WL 6050675 (D.N.M. Nov. 19, 2018) .............................18

*United States v. Olano*,
507 U.S. 725 (1993)..................................................................................................................16

*United Student Funds, Inc. v. Wylie (In re Wylie)*,
349 B.R. 204 (B.A.P. 9th Cir. 2006).......................................................................................22

*Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.)*,
326 B.R. 497 (S.D.N.Y. 2005)................................................................................................10

*In re Vencor, Inc.*,
284 B.R. 79 (Bankr. D. Del. 2002) .........................................................................................19

*Vieira v. AGM II, LLC (In re Worldwide Wholesale Lumber, Inc.)*,
372 B.R. 796 (Bankr. D.S.C. 2007).........................................................................................18

*In re Xpedior Inc.*,
354 B.R. 210 (Bankr. N.D. Ill. 2006)......................................................................................20

*In re Yellowstone Mountain Club, LLC*,
460 B.R. 254 (Bankr. D. Mont. 2011)................................................................................8, 10

iv

**Statutes**

11 U.S.C. § 507(a)(2) .................................................................................................12

11 U.S.C. § 1129(a)(9) ....................................................................................... 11-13, 15

11 U.S.C. § 1127 ................................................................................................... 19-21

**Other Authorities**

*Drafting Chapter 11 Plans: Overview*, Practical Law Practice Note Overview w-001-0647 ........9

Fed. R. Bankr. P. 7008 ..............................................................................................18

Fed. R. Bankr. P. 9014 ..............................................................................................18

Fed. R. Civ. P. 8 ......................................................................................................18

Fed. R. Civ. P. 60(b) ........................................................................................*passim*

PG&E Corporation and Pacific Gas and Electric Company, as reorganized debtors (collectively, the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), in accordance with the Scheduling Order,[1] respectfully submit this reply (the "**Reply**") in support of the *Reorganized Debtors' Initial Opposition to Elliott Management Corporation's Motion for Allowance and Payment of Administrative Expense Claim and Reconsideration of Confirmation Order and Related Joinders*, dated August 26, 2020 [Dkt. No. 8864] (the "**Reorganized Debtors' Initial Opposition**"), and in opposition to the responses to the Reorganized Debtors' Initial Opposition filed by Elliott Management Corporation [Dkt. No. 9032] (the "**Elliott Response**") and the other Noteholder Claimants [Dkt. No. 9034] (the "**Additional Noteholders' Response**", and together with the Elliott Response, the "**Responses**").

## I.     PRELIMINARY STATEMENT

The Noteholder Claimants assert the Noteholder Claims in an effort to extract hundreds of millions of dollars from the Reorganized Debtors in addition to the one hundred percent recovery (plus postpetition interest) they have already received on their prepetition claims. This would come at the expense of the Reorganized Debtors' common stockholders, including the Fire Victim Trust. The Noteholder Claimants ask the Court to ignore the plain language of the Plan and the Court's Confirmation Order and allow them to assert litigation claims arising under a restructuring support agreement that was indisputably a core part of the administration of these Chapter 11 Cases and the formulation and development of the Plan. These matters are precisely the type that the exculpation provisions of the Plan and Confirmation Order are designed to address. In addition, granting any relief to the Noteholder Claimants here would also require the Court to ignore the Noteholder Claimants' blatant and indisputable failure to pursue any of their rights prior to entry of the Confirmation Order and substantial consummation of the Plan.

As demonstrated in the Reorganized Debtors' Initial Opposition, Section 10.8 of the Plan and Paragraph 54 of the Confirmation Order expressly exculpate and release the Debtors and Reorganized Debtors from any liability for the Noteholder Claims, and do so "[n]otwithstanding

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Reorganized Debtors' Initial Opposition or the Plan, as applicable.

anything [in the Plan] to the contrary." The Noteholder Claimants' argument rests virtually entirely on their contention that the exculpation provisions should not apply to the Noteholder Claims because, in their view, those claims somehow do not arise out of "the negotiation or pursuit of" the Noteholder RSA. However, even if the Court were to accept the Noteholder Claimants' incorrect reading of that one phrase, the Noteholder Motion must still fail because ***Section 10.8 of the Plan and Paragraph 54 of the Confirmation Order set forth at least five other exculpated and released matters—each of which the Noteholder Claimants fail to mention—that apply to exculpate and release the Reorganized Debtors from any liability for the Noteholder Claims***. Section 10.8 and Paragraph 54 of the Confirmation Order exculpate and release the Reorganized Debtors, without limitation or exception (other than for acts of actual fraud and intentional wrongdoing), from, among other things, any and all Claims and Causes of Action "in connection with or arising out of": "the administration of the Chapter 11 Cases;" "the negotiation and pursuit of . . . the Backstop Commitment Letters . . . the Plan Funding . . . the Restructuring Transactions . . . or any agreement, transaction, or document related to any of the foregoing;" "the funding of the Plan;" "the issuance of Securities under or in connection with this Plan;" or "the transactions in furtherance of any of the foregoing."

Further, there can be no dispute that the Noteholder Claims relate to the parties' performance of their obligations under the Noteholder RSA, and thus plainly are "in connection with and arise out of" the "pursuit of" the Noteholder RSA. Indeed, it is inconceivable that anyone could logically assert that claims in connection with and arising out of the "pursuit" of the Noteholder RSA could somehow exclude performance under the Noteholder RSA, including the performance of the parties' affirmative obligations that are the sole basis for the Noteholder Claims.

Recognizing that the plain language of the Plan and Confirmation Order exculpation provisions encompasses the Noteholder Claims (several times over, in fact), the Noteholder Claimants argue that the Court must accept their contention that Section 2.1 preserves all Administrative Expense Claims, or else the language of Section 10.8 would somehow bar *all* Administrative Expense Claims against the Reorganized Debtors, including ordinary course

postpetition vendor claims and Professional Fee Claims. This argument is specious and stretches any interpretation of the Plan and the Confirmation Order well beyond reason. As an initial matter, the Noteholder Claims are not ordinary course postpetition vendor claims or Professional Fee Claims. The Plan's treatment of those types of claims is not at issue here. Rather, the claims here—classic litigation claims, brought after the Plan was confirmed and consummated, arising directly out of one of the key settlement agreements underlying the Plan—are precisely the types of claims that Section 10.8 of the Plan and Paragraph 54 of the Confirmation Order exculpate and release. In any event, the exculpation provisions do not purport to release all ordinary course Administrative Expense Claims, nor could anyone seriously argue that they do.

Nowhere do the Noteholder Claimants tackle the illogical and untenable consequence of their interpretation of Sections 2.1 and 10.8 of the Plan. To accept the Noteholder Claimants' interpretation of Section 2.1 would nullify the customary and well-established purpose of the exculpation provisions and render the protection of exculpation entirely meaningless as to the Reorganized Debtors.

Like other similar exculpation provisions approved in chapter 11 cases, Section 10.8 of the Plan and Paragraph 54 of the Confirmation Order exculpate and release the Debtors and Reorganized Debtors, and the other Exculpated Parties, from the limited universe of claims and causes of action enumerated therein that may have arisen in connection with the administration of the Chapter 11 Cases and the process of developing, confirming, and consummating the Plan. The Court previously determined that Section 10.8 was appropriately tailored, holding in its *Memorandum Decision* confirming the Plan that Section 10.8 was "consistent with the complexities and difficulties of these cases, and comports with the contours of such a provision as recognized in [*Blixseth v. Credit Suisse (In re Blixseth)*, No. 16-35304, 2020 WL 3089263 (9th Cir. June 11, 2020)]." Dkt. No. 8001 at 26.

Section 2.1 of the Plan cannot and does not constitute a wholesale override of the Plan and Confirmation Order exculpation provisions. Rather, Sections 2.1 and 10.8 are entirely consistent with one another. Section 2.1 preserves Administrative Expense Claims, subject to, among other

things, other provisions of the Plan—such as Sections 10.8 and 10.9(b)—that expressly address the validity and enforceability of certain potential Administrative Expense Claims.

The argument by the Noteholder Claimants that Administrative Expense Claims must be excluded from the exculpation and release provisions because those provisions apply only "to the maximum extent permitted by law," and section 1129(a)(9) of the Bankruptcy Code mandates that a debtor pay *all* administrative expense claims in full in order to confirm a chapter 11 plan, is similarly specious. Section 1129(a)(9), of course, requires that a debtor pay all *allowed* administrative expense claims in full to confirm a plan, but it does not act to fix or allow *all* administrative expense claims that have been asserted against a debtor, nor does it mandate or require a debtor to pay administrative expense claims that have been exculpated or released in a plan by voluntary agreement of the parties, as the Noteholder Claims have been here.

Moreover, nothing in the Responses alters the inescapable conclusion that the Noteholder Claimants have waived and forfeited the Noteholder Claims. It is indisputable that, for more than seven weeks, the Noteholder Claimants remained silent while the Backstop Amendment Motion was approved, the Confirmation Order was entered, and the Plan was consummated. Their contention that waiver is an affirmative defense, and so it is premature to decide that issue now, is wrong. As demonstrated, a party's silence results in forfeiture, which can be resolved at this time where the incontrovertible facts mandate that determination. Indeed, Bankruptcy Courts appropriately take a dim view of such behavior and have found forfeiture under similar circumstances. In addition, in situations where, as here, the inaction involved failure to take action in Court and the facts are not in dispute, the Court can find waiver.

Finally, the Responses confirm that the Noteholder Claimants are not entitled to reconsideration of the Confirmation Order or the Plan under Federal Rule 60(b). As a threshold matter, and as demonstrated in the Reorganized Debtors' Initial Opposition, the Plan may not be modified under Federal Rule 60(b) *unless* the conditions of section 1127(b) of the Bankruptcy Code are satisfied. The Noteholder Claimants simply ignore the numerous cases that hold Federal Rule 60(b) cannot be used to modify a plan when the provisions of 1127(b) are not met, and do not cite

any case that has considered the issue and decided otherwise. The Noteholder Claimants do not even attempt to, nor can they, argue that they satisfy section 1127(b). Reconsideration must be denied on this basis alone. In addition, the undisputed facts demonstrate that neither excusable neglect nor extraordinary circumstances warrant reconsideration. Instead, the Noteholder Claimants argue that they should be entitled to reconsideration if the Court finds Sections 10.8 and/or 10.9 of the Plan mean what they plainly say and therefore cover the asserted claims here; however, this cannot be the basis for a motion to modify the Plan or the Confirmation Order. Accordingly, the Noteholder Motion should be denied.

## II. ARGUMENT

### A. Section 10.8 of the Plan and Paragraph 54 of the Confirmation Order Exculpate the Reorganized Debtors From the Noteholder Claims

#### 1. The Plain Language of the Plan and Confirmation Order Exculpation Provisions Covers the Noteholder Claims

In their Motion, the Noteholder Claimants recognize that the Plan's exculpation provisions expressly cover claims arising out of the Noteholder RSA, but assert that those provisions are trumped by Section 2.1 of the Plan. *See* Elliott Motion ¶ 12 ("Notwithstanding the Amended Plan's unequivocal preservation of all Administrative Expense Claims, the Amended Plan purports to provide certain releases and exculpations in favor of the Debtors, including releases for claims and causes of action relating to or arising out of, among other things, the Noteholder RSA.") (citing Plan §§ 10.8 and 10.9). Reversing course, the Noteholder Claimants posit for the first time in their Responses that the exculpation provisions do *not* cover the Noteholder Claims. Specifically, the Noteholder Claimants now assert that Section 10.8 somehow does not apply because the phrase "the negotiation and pursuit of . . . the Noteholder RSA" does not include alleged breaches of the Noteholder RSA. *See* Elliott Response ¶¶ 8-9; Additional Noteholders' Response at 4-6.

The Noteholder Claimants contend that the Reorganized Debtors' arguments are "too cute by half," but in reality, it is the Noteholder Claimants that are being cute in their selective reading of the exculpation provisions.[2] Indeed, even if the Court were to accept the Noteholder Claimants'

---

[2] The Noteholder Claimants assert that the Reorganized Debtors attempt to deceive the Court by using ellipses to omit certain language contained in Section 10.8, including the "negotiation and pursuit" language that precedes the reference to the Noteholder RSA. The omission of that language was neither nefarious nor deceptive in any way. The Reorganized Debtors did not set forth the

strained and incorrect interpretation of the phrase "negotiation and pursuit of" (which, as set forth below, the Court should not), there are no less than five other matters covered by Section 10.8 of the Plan and Paragraph 54 of the Confirmation Order, all of which the Noteholder Claimants conveniently ignore, that unequivocally exculpate and release the Noteholder Claims:

- Section 10.8 and Paragraph 54 exculpate and release all claims "in connection with or arising out of the administration of the Chapter 11 Cases." It is not in dispute that the purpose of the Noteholder RSA was to facilitate the Plan and its confirmation, or that the Noteholder RSA was a fundamental element of the administration of the Chapter 11 Cases. Accordingly, any claim arising out of or relating to a breach of the Noteholder RSA is expressly within the scope of the exculpation provisions.

- Section 10.8 and Paragraph 54 exculpate and release all claims "in connection with or arising out of . . . the negotiation and pursuit of . . . the Backstop Commitment Letters . . . the Plan Funding . . . the Restructuring Transactions . . . or any agreement, transaction, or document related to any of the foregoing." The Noteholder Claims are premised entirely on the Debtors' alleged failure, during the "negotiation and pursuit" of the amendment to the Backstop Commitment Letters and, in turn, the Plan Funding and the Restructuring Transactions, to use their "best efforts," in accordance with the Noteholder RSA, to cause the Backstop Parties to voluntarily transfer to the Noteholder Claimants certain rights under the Backstop Commitment Letters. Similarly, the Noteholder Claims plainly arise in connection with "any agreement, transaction, or document" relating to the Backstop Commitment Letters, the Plan Funding, and the Restructuring Transactions. Again, the Noteholder Claims are squarely within the purview of the exculpation provisions.

- Section 10.8 and Paragraph 54 exculpate and release all claims "in connection with or arising out of . . . the funding of this Plan." As stated, the Noteholder Claims are premised on the Debtors' alleged failure to use their "best efforts" to cause the Backstop Parties to voluntarily transfer to the Noteholder Claimants certain rights under the Backstop Commitment Letters, which were entered into in connection with the funding of the Plan. Notably, this provision is not in any way qualified by the words "negotiation and pursuit."

- Section 10.8 and Paragraph 54 exculpate and release all claims "in connection with or arising out of . . . the issuance of Securities under or in connection with this Plan." The Noteholder Claims are premised on the Debtors' alleged failure to use their "best efforts" to cause the Backstop Parties to voluntarily transfer to the Noteholder Claimants certain rights under the Backstop Commitment Letters to purchase certain equity Securities in connection with the Plan and the funding of the Debtors' emergence and exit from chapter 11. This provision is similarly

---

entirety of Section 10.8 because, as noted above, the Noteholder Claimants had conceded in the Noteholder Motion that the plain language of Section 10.8 encompassed the Noteholder Claims, and because, as demonstrated herein, on its face Section 10.8 encompasses the Noteholder Claims in a multitude of ways. In any event, as also demonstrated herein, the "negotiation and pursuit" language plainly covers the Noteholder Claims.

not limited to claims arising out of "the negotiation and pursuit of" the applicable agreements or transactions.

- Section 10.8 and Paragraph 54 exculpate and release all claims "in connection with or arising out of . . . the transactions in furtherance of any of the foregoing." As set forth above, the Noteholder Claims arise in connection with a transaction, approved by the Court, to amend the Backstop Commitment Letters, which was entered into in furtherance of the Debtors' ability to consummate the Plan Funding and the Restructuring Transactions. Accordingly, this provision also encompasses the Noteholder Claims and exculpates the Reorganized Debtors from the Noteholder Claims.[3]

Each of the above exculpated matters standing alone brings the Noteholder Claims within the purview of the exculpation provisions of the Plan and Confirmation Order. The Noteholder Claimants' selective reading of Section 10.8 and Paragraph 54 cannot alter this inescapable conclusion.

Moreover, the Noteholder Claims plainly are "in connection with or arising out of . . . the negotiation or pursuit of . . . the Noteholder RSA . . . or any agreement, transaction or document related to any of the foregoing." Indeed, to suggest otherwise is untenable, as under any rationale or logical reading, "pursuit" of the Noteholder RSA must include performance of the parties' obligations thereunder, including all of their affirmative and negative covenants and other obligations. And the phrase "any agreement, transaction or document related" to the pursuit of the Noteholder RSA obviously includes the Noteholder RSA and the transactions called for in that agreement. Section 10.8 on its face thus exculpates and releases all claims that are in connection with or arise out of the Noteholder RSA, including claims premised on alleged breaches of the Noteholder RSA, such as the Noteholder Claims.

The Noteholder Claims are clearly within the purview of the Plan and Confirmation Order exculpation provisions, to which the Noteholder Claimants expressly and knowingly agreed, and that control "notwithstanding anything [in the Plan] to the contrary." Section 10.8 of the Plan and Paragraph 54 of the Confirmation Order, therefore, release and exculpate the Debtors and Reorganized Debtors from the Noteholder Claims.

---

[3] Attached as Exhibit A hereto is the language of Section 10.8 highlighted to show each of the separate matters exculpated and released which cover the Noteholder Claims.

**2.** **Section 2.1 of the Plan Does Not Except Administrative Expense Claims From Exculpation**

The Noteholder Claimants contend that Section 2.1 operates to carve out all Administrative Expense Claims from the Plan and Confirmation Order exculpation provisions. As set forth in the Reorganized Debtors' Initial Opposition, however, excepting Administrative Expense Claims from Section 10.8 of the Plan would render that Section meaningless as to the Debtors and Reorganized Debtors, and would be completely inconsistent with and antithetical to the stated and underlying purpose of an exculpation provision in a chapter 11 case—namely, to protect debtors and certain other parties from litigation claims arising in connection with the administration of the chapter 11 cases and the formulation, confirmation, and consummation of plans of reorganization.

Bankruptcy Courts routinely approve exculpation provisions encompassing debtors, but only where their application is appropriately limited to claims, especially litigation claims, arising out of the administration of chapter 11 cases and the formulation and pursuit of a chapter 11 plan. *See, e.g.*, *Blixseth v. Credit Suisse*, 961 F.3d 1074, 1081 (9th Cir. 2020) (approving exculpation clause on basis it was "'narrow in both scope and time,' limited to releasing the parties from liability for 'any act or omission in connection with, relating to or arising out of the Chapter 11 cases' or bankruptcy filing") (quoting *In re Yellowstone Mountain Club, LLC*, 460 B.R. 254, 267, 272 (Bankr. D. Mont. 2011)); *In re Fraser's Boiler Serv., Inc.*, 593 B.R. 636, 638-41 (Bankr. W.D. Wash. 2018) (approving provision exculpating the debtor and others for claims arising out of "the Chapter 11 Cases . . . the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto" on the basis that it was "not a broad sweeping provision," and on the condition that the debtor clarified that the provision did "not exculpate post-Effective Date acts"); *In re Nat'l Heritage Found., Inc.*, 478 B.R. 216, 232-34 (Bankr. E.D. Va. 2012) (stating that exculpation provisions "generally are permissible, so long as they are properly limited and not overly broad," and approving provision exculpating debtor and others where it was "narrowly tailored to meet the needs of the bankruptcy estate" and "limited to acts or omissions taken in connection [with] the bankruptcy case itself") (internal citations omitted).

The narrow, permitted scope of these provisions, which typically encompass debtors and reorganized debtors, is consistent with their purpose to "prevent liability for parties who have participated in the bankruptcy for claims arising in the case." *Drafting Chapter 11 Plans: Overview*, Practical Law Practice Note Overview w-001-0647; *see also Blixseth*, 961 F.3d at 1084-85 (noting Bankruptcy Court's authority to approve exculpation clause "*intended to trim subsequent litigation over acts taken during the bankruptcy proceedings* and so render the [p]lan viable," and stating that "similar limited exculpatory clauses focused on acts committed as part of the bankruptcy proceedings are 'apparently a commonplace provision in Chapter 11 plans'") (quoting *In re PWS Holding Corp.*, 228 F.3d 224, 245 (3d. Cir. 2000)) (emphasis added).

As noted above, the Court already has determined that Section 10.8's exculpation provisions—which exculpate and release only potential claims that arise out of or relate to the administration of the Chapter 11 Cases, including the pursuit, confirmation, and consummation of the Plan—is properly so limited. *See* Dkt. No. 8001 at 25-26. Accordingly, and contrary to the Noteholder Claimants' incorrect interpretation, the Plan's exculpation provisions plainly cover litigation claims against the Debtors, the Reorganized Debtors, and other estate fiduciaries, including the Noteholder Claimants, and do not bar ordinary course postpetition vendor claims or Professional Fee Claims.

As demonstrated in the Reorganized Debtors' Initial Opposition, a determination that Section 2.1 excludes all Administrative Expense Claims from Section 10.8 of the Plan and Paragraph 54 of the Confirmation Order would render the exculpation provisions completely meaningless as to the Debtors and Reorganized Debtors. In all but conceding this fact, the Noteholders Claimants try to justify their position by stating that the Plan's exculpation and release provisions should not apply to the Reorganized Debtors at all. *See* Additional Noteholders' Response at 6-7, 10. The Noteholder Claimants cite the Ninth Circuit's decision in *Blixseth* as alleged support for the proposition that "exculpation provisions [and] release provisions are often included in bankruptcy plans, not to benefit the debtor, but instead to protect non-debtor parties, such as the debtor's officers and directors and estate professionals, for actions they took during the

course of the bankruptcy process." *Id.* at 10 (citing *Blixseth*, 961 F.3d at 1084). In *Blixseth*, however, the Ninth Circuit did not in any way state or even suggest that exculpation provisions do not benefit or apply to debtors. Rather, the Ninth Circuit decided a very different issue—whether an exculpation provision's application to non-debtors violates section 524(e) of the Bankruptcy Code, ultimately determining that properly limited exculpation provisions, such as that here, are permissible. *See Blixseth*, 961 F.3d at 1084.[4]

Indeed, the Noteholder Claimants' assertion that exculpation provisions should not apply to a debtor has no basis in law. As fiduciaries to the estate, debtors can be exculpated. Courts both in this Circuit and elsewhere routinely approve exculpation clauses that apply to debtors. *See, e.g., In re Plant Insulation Co.*, Case No. 09-31347 (TEC), 2012 Bankr. LEXIS 1716, at *57-59 (Bankr. N.D. Cal. Mar. 15, 2012) ("A post-petition exculpation clause may be approved where it is limited to the *Debtor*, the Committee, the Futures Representative, and certain third parties and their respective agents . . . .") (emphasis added); *In re Sanitec Indus., Inc.*, B.A.P. No. CC–09–1183–DHPa., 2009 WL 7809007, at *3, *13 (B.A.P. 9th Cir. Dec. 21, 2009) (approving exculpation provision that applied to debtor and stating that, while "there are a number of decisions in the Ninth Circuit that do not favor exculpation clauses that limit liability for negligence," an "exculpation clause excusing a *debtor* and its officers, members, directors, and professionals from liability resulting from any act taken or not taken in connection with the chapter 11 process is not per se against public policy or unreasonable") (emphasis added); *Fraser's Boiler*, 593 B.R. at 638-640 (approving exculpation provision that applied to the debtor, among others); *Yellowstone Mountain Club*, 460 B.R. at 267, 277 (same); *PWS Holding*, 228 F.3d at 246-47, 250 (same); *Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.)*, 326 B.R. 497, 500-01, 504 (S.D.N.Y. 2005) (same).

---

[4] The Noteholder Claimants further posit that the Plan's exculpation and release provisions are unnecessary as to the Reorganized Debtors because "a debtor typically receives a discharge at the end of a chapter 11 case." Additional Noteholders Motion at 7. This assertion is surprising, considering that Section 2.1 of the Plan, upon which the Noteholder Claimants so heavily rely, explicitly states that "no Administrative Expense Claims shall be discharged pursuant to the Plan." So, the Noteholder Claimants argue that the Reorganized Debtors should not get the benefit of the Court-approved and agreed upon exculpation provisions because the Reorganized Debtors can rely on their own discharge under the Bankruptcy Code, while at the same time contending that the Noteholder Claims have expressly been exempted from discharge—the epitome of a "heads I win, tails you lose" argument.

The fact that Courts routinely approve exculpation clauses covering debtors undermines the argument by the Noteholder Claimants that these provisions do not exculpate administrative expense claims against debtors, especially litigation claims arising out of key agreements and transactions at the core of the administration of chapter 11 cases. Moreover, if the Noteholder Claimants are now objecting to the fact that the Plan's exculpation provisions cover the Reorganized Debtors, that objection to Section 10.8 and Paragraph 54 of the Confirmation Order (provisions that, in accordance with the Noteholder RSA, were modified to specifically include the Consenting Noteholders as Exculpated Parties themselves) should have been raised prior to the Effective Date of the Plan. They were not.

In sum, a determination that Section 2.1 of the Plan removes Administrative Expense Claims from the Plan and Confirmation Order exculpation provisions is not, as the Noteholder Claimants contend, necessary to save Section 10.8 from barring all Administrative Expense Claims (as that is not what the clause purports or is meant to do). Instead, such a finding would result in rendering the exculpation provisions meaningless as to the Debtors and Reorganized Debtors. This result would run contrary to well-settled California law requiring Courts to "interpret contractual language in a manner [that] gives force and effect to every provision, and not in a way [that] renders some clauses nugatory, inoperative or meaningless." *Pinel v. Aurora Loan Servs.*, *LLC*, 814 F. Supp. 2d 930, 943 (N.D. Cal. 2011) (alterations in original); *see also* Initial Opposition at 9. Moreover, if this occurred, the exculpation provisions would then only run one way, *i.e.*, the Noteholder Claimants would be exculpated from claims arising from their dealings with the Debtors in the context of the Chapter 11 Cases, but the Debtors and Reorganized Debtors would not. The same would be true with respect to any other of the Reorganized Debtors' counterparties that benefit from Section 10.8. That would be an irrational result.

### 3. The Noteholder Claimants' Argument That Section 10.8 Violates Section 1129(a) of the Bankruptcy Code is Incorrect

The Noteholder Claimants raise yet another new argument that, if at all applicable, should have been raised in the Noteholder Motion. The Noteholder Claimants contend that the Plan and Confirmation Order exculpation provisions do not cover the Noteholder Claims, or any

Administrative Expense Claims for that matter, because those provisions apply only to the "maximum extent permitted by law," and section 1129(a)(9) of the Bankruptcy Code "requires that a debtor pay its administrative expenses in full as a condition for confirmation of a plan and the debtor's emergence from bankruptcy." Additional Noteholders Opposition at 8 (citing 11 U.S.C. § 1129(a)(9)(A)); *see also* Elliott Response ¶ 10. The Noteholder Claimants' interpretation of section 1129(a)(9) of the Bankruptcy Code makes no sense and is wrong.

Under the Noteholder Claimants' view, section 1129(a)(9) requires the payment of *all* administrative expense claims asserted against a debtor, including those that are not enforceable or have, as here, otherwise been exculpated or released under a plan or otherwise by agreement of the parties. To the contrary, section 1129(a)(9) mandates only that that a debtor pay in full any *allowed* administrative expense claims. *See* 11 U.S.C. 1129(a)(9)(A) ("[W]ith respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim."); 11 U.S.C. 507(a)(2) (specifying priority of "administrative expenses *allowed* under section 503(b) of [title 11]") (emphasis added).[5]

Indeed, to adopt the Noteholder Claimants' interpretation would lead to the absurd result of requiring the Reorganized Debtors to pay all Administrative Expense Claims in the full asserted amount regardless of whether such claims have been exculpated or released under the Plan or

---

[5] The Noteholder Claimants cite several cases they contend support their argument that section 1129(a)(9) requires payment of all asserted Administrative Expense Claims. *See* Elliott Response ¶ 17. Unsurprisingly, none of them provide such support. First, in *In re Hechinger Inv. Co. of Del.*, 298 F.3d 219 (3d Cir. 2002), the Third Circuit stated: "Administrative expenses *allowed* under § 503(b) receive first priority in the distribution of the assets of the debtor's estate. In a chapter 11 case, a court cannot confirm a distribution plan unless the plan provides full cash payment of all § 503(b) administrative expense claims or the claim holder agrees to different treatment." *Id.* at 224 (emphasis added) (internal citations omitted). The Noteholder Claimants quote only the second sentence of that passage in their discussion of *Hechinger*. *See* Elliott Response ¶ 17. Second, in *In re Red Mountain Machinery Co.*, 448 B.R. 1, 16 (Bankr. D. Ariz. 2011), that Court's statement that "[t]he Code unequivocally requires that administrative expenses be paid in full" was made in the context of a discussion regarding, and clearly referred to, *allowed* administrative expense claims. *Compare id.* at 16 *with* 2:09-bk-19166-RJH, Doc. 384 at 34. Finally, *In re Aureal, Inc.*, No. 00-42104, 2006 WL 2355022 (Bankr. N.D. Cal. Aug. 14, 2006), after the debtor objected to an administrative expense claim, that Court issued a decision "disallowing the Administrative Claim in its entirety." *Id.*, at *1. In other words, the fact that the administrative claim was asserted had no bearing on whether it was required to be paid in full.

Confirmation Order.  In effect, the Noteholder Claimants' interpretation of section 1129(a)(9) would prohibit exculpation clauses covering any debtor, since all exculpated claims against debtors must arise in connection with the administration of chapter 11 cases and, thus, give rise to administrative expense claims.  The Noteholder Claimants provide no authority that section 1129(a)(9) invalidates exculpation clauses in favor of debtors, because no such authority exists.  Clearly section 1129(a)(9) requires no such irrational outcome.

Simply put, neither section 1129(a)(9) nor any other section of the Bankruptcy Code requires the payment of an administrative expense claim that has been exculpated or released pursuant to a plan and confirmation order.

**B.** **Section 10.9(b) of the Plan and Paragraph 56 of the Confirmation Order Release the Reorganized Debtors From the Noteholder Claims**

The plain language of Section 10.9(b) of Plan and Paragraph 56 of the Confirmation Order releases any and all claims "based on or relating to, or in any manner arising from," among other things, "the Plan Funding . . . the Backstop Commitment Letters . . . [and] the Noteholder RSA." Plan § 10.9(b).[6]  The release provisions in the Plan and Confirmation Order also encompass the Noteholder Claims through various other matters listed in Section 10.9(b) and Paragraph 56, respectively.  *See* Initial Opposition at 11.

As they do in connection with the Plan's exculpation provisions, the Noteholder Claimants assert that Section 2.1 must be read to exclude Administrative Expense Claims in order to prevent the release of all such claims pursuant to Section 10.9(b) and Paragraph 56.  *See* Elliott Response ¶ 16; Additional Noteholders' Response at 7, 9.  This, too, is mistaken.  Section 10.9(b) is a *voluntary* release provision.  The only Administrative Expense Claims released thereunder are those held by parties who agreed to such release.  Specifically, Section 10.9(b) operates only to release claims held by "Releasing Parties," each of whom voluntarily agreed to release their claims.[7]  As

---

[6] There is nothing in Section 10.9(b) qualifying the Plan's release provisions to claims related to the "negotiation and pursuit" of Noteholder RSA (which language, as set forth above, encompasses the Noteholder Claims in any event).

[7] The Noteholder Claimants assert that anyone who voted in favor of the Plan automatically granted a release.  *See* Additional Noteholders' Response at 7, 9.  This is patently wrong.  Indeed, nothing could be clearer in the Plan, the Ballots, and the Confirmation Order that, aside from those few

1  such, the Court need not read Section 2.1 to carve out from Section 10.9(b) ordinary course vendor

2  claims or Professional Fee Claims—indeed, neither the Reorganized Debtors nor anyone else is

3  taking that position.[8]

4  The Noteholder Claimants separately argue that the Plan's release provisions cannot apply to

5  the Noteholder Claims because Section 10.9(b) contains language stating that it applies "except as

6  otherwise provided in the Plan" and that this "means that the release provision is thus expressly

7  subject to Section 2.1 of the Plan." *See* Elliott Response ¶ 13. However, as set forth in the

8  Reorganized Debtors' Initial Opposition, Section 2.1 refers only to discharge of Administrative

9  Expense Claims, and does not and cannot trump and override the release of such claims as expressly

10  agreed to by the Releasing Parties (which include the Noteholder Claimants), and as approved by

11  the Court in Section 10.9(b) of the Plan and Paragraph 56 of the Confirmation Order. Moreover,

12  Section 10.9(b) controls over Section 2.1 with respect to the Noteholder Claims, because it

13  specifically addresses claims arising out of the Noteholder RSA, while Section 2.1 does not mention

14  the Noteholder RSA or the Consenting Noteholders. *See, e.g., RadLAX Gateway Hotel, LLC v.*

15  *Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[I]t is a commonplace of statutory construction that

16  the specific governs the general.") (alteration in original); *see also* Initial Opposition at 12.

17  Finally, the Noteholder Claimants contend that the exception from Section 10.9(b) for "any

18  rights to enforce the Plan" somehow removes the Noteholder Claims from the release provisions.

19  Again, this makes no sense. First, the Noteholder Claims do not arise from a "right to enforce the

20  Plan"; they arise from the Noteholder Claimants' alleged rights under Section 3(a)(iv) of Noteholder

21  RSA. Second, there are no rights to enforce in any event, because the Noteholder Claims have been

22  expressly released and exculpated.

23

24  entities specified in the definition of "Releasing Parties" in the Plan, which included the Consenting Noteholders, definitive affirmative opt-in was required to grant a release.

25  [8] The Noteholder Claimants agreed to Section 10.9(b) in connection with the Noteholder RSA, dated January 22, 2020. *Compare Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of*

26  *Reorganization Dated December 12, 2019* [Dkt. No. 5101] §§ 1.161-62 (not including "Consenting Noteholders" in definition of "Releasing Parties" or "Released Parties") *with Debtors' and*

27  *Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated January 31, 2020* [Dkt. No. 5590] §§ 1.173-74 (including "Consenting Noteholders" in definition of "Releasing Parties"

28  and "Released Parties").

Accordingly, the Noteholder Claims have been released pursuant to Section 10.9(b) of the Plan and Paragraph 56 of the Confirmation Order.[9]

## C. The Noteholder Claimants Have Both Waived and Forfeited Their Right to Assert the Noteholder Claims

The Noteholder Claimants concede, as they must, that they did not object to the Backstop Amendment Motion or otherwise take *any action for nearly seven weeks* after it was filed. *See* Elliott Response ¶¶ 21-22. The Noteholder Claimants could have acted in the following ways to assert and preserve their rights, but did nothing:

- As they had done previously, the Noteholder Claimants could have filed under seal a motion seeking authority to enforce the Noteholder RSA;

- They could have objected to the Backstop Amendment Motion;

- They could have objected to the entry of the Confirmation Order;

- They could have issued a notice of termination of the Noteholder RSA. The Noteholder Claimants had over three weeks to send a notice of termination to the Debtors, allow the Reorganized Debtors the requisite ten (10) days to cure the alleged breach, terminate the Noteholder RSA, and pursue the Noteholder Claims; and

- They could have issued a notice of termination of the Noteholder RSA and sought injunctive relief in order to remedy that alleged breach or to prevent the exculpation and release provisions of the Plan and Confirmation Order from becoming effective as to the Noteholder Claims.

The record of the case establishes that the Noteholder Claimants have *both* forfeited *and* waived the Noteholder Claims by their acknowledged inaction. Moreover, contrary to the Noteholder Claimants' assertions, this Court can find waiver and forfeiture at this time, based on the uncontroverted record of the proceedings over which this Court presided prior to the Effective Date.

In response to the Reorganized Debtors' Initial Opposition, the Noteholder Claimants focus solely on waiver. *See* Elliott Response ¶ 20. The Noteholder Claimants do not even address forfeiture or acknowledge the fact that the "terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous." *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 n.1 (2017) (citing *United States v. Olano*, 507 U.S. 725, 733

---

[9] The Noteholder Claimants also assert that Section 1129(a)(9) prevents exculpation of Administrative Expense Claims under Section 10.9(b) of the Plan. This argument fails for the same reasons it fails with respect to Section 10.8 as discussed above. *See supra* at 11-12.

(1993)).  "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'"  *Olano*, 507 U.S. at 733 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *accord People v. Simon*, 25 P.3d 598, 609 n.9 (Cal. 2001) (noting that "the terms 'waiver' and 'forfeiture' long have been used interchangeably" despite the two being different legal concepts).

The Noteholder Claimants have plainly forfeited the Noteholder Claims based on the record of the proceedings prior to the Effective Date.  *See Reid & Hellyer, APC v. Laski (In re Wrightwood Guest Ranch, LLC)*, 896 F.3d 1109, 1113 (9th Cir. 2018) (holding that administrative creditors "forfeited their claims regarding the propriety of the [Bankruptcy Court's 9019] settlement order" where they did not object to a 9019 motion); *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083, 1086 (9th Cir. 1999) (holding that a creditor "cannot later complain about a certain provision contained in a confirmed plan" where the creditor had notice and "fail[ed] to protect its interests by timely objecting").

The analysis in *In re Sciacca* is directly relevant in this context.  *See In re Sciacca*, No. 16-26421-B-7, 2018 WL 4945715 (Bankr. E.D. Cal. Oct. 9, 2018).  There, the chapter 7 trustee filed a motion under section 363 of the Bankruptcy Code to sell the estate's interests in certain assets.  *Id.*, at *1.  The debtor and the trustee agreed to a sale price, an auction was held, the Court held a hearing on the sale motion at which time the Court approved a bid, and the following day the Court entered an order granting the sale motion and approving the sale.  *Id.*  The record established that the debtor had notice of all of these events, yet did not appear at the sale hearing or make an objection of any kind.  *Id.*  Following entry of the order approving the sale, the debtor moved for reconsideration and argued that the sale price "deprive[d] him of the benefit of postpetition payments applied to reduce liens on the assets."  *Id.*, at *2.  The Court held that the debtor's arguments and claims were "untimely, improper, and forfeited" because the debtor failed to raise them prior to entry of the order approving the sale despite having notice and opportunity to do so.  *Id.*  The record, *i.e.*, the various docket entries, established that "the debtor and his attorney had at least three opportunities to address the terms of the overbid sale and make the court aware of the debtor's position on the assets' sale

before the sale motion order was entered *and they availed themselves of none*." *Id.*, at *2-3 (emphasis added). As a result, the Court found based on the record of the proceedings that those arguments and claims were forfeited, as should be the case here.

In addition, the Noteholder Claimants have waived the Noteholder Claims through their intentional and obviously strategic decision to remain silent. As demonstrated in the Reorganized Debtors' Initial Opposition, Bankruptcy Courts find waiver where the uncontroverted facts establish that parties were "laying in the weeds" or "sandbagging" the Court. *See* Reorganized Debtors' Initial Opposition at 13-14 (citing cases); *see also Enewally v. Wash. Mut. Bank (In re Enewally)*, 368 F.3d 1165, 1173 (9th Cir. 2004) (finding party "waived any objection to the bankruptcy court's valuation by failing to contest it before the bankruptcy court" where Bankruptcy Court's determination was premised on uncontroverted evidence)). For example, in *In re Cellular 101, Inc.*, the Ninth Circuit looked to the facts in the record and found that the party waived its right to assert a particular argument because, instead of promptly bringing that issue to the Court's attention, it "elected" to remain silent in hopes "for a second bite at the apple" if it lost. 539 F.3d 1150, 1155 (9th Cir. 2008). Similarly, in *In re Arriva Pharm. Inc.*, the Bankruptcy Court emphasized that the time to raise an issue with respect to the confirmation order was prior to confirmation. *See* 456 B.R. 419, 427 (Bankr. N.D. Cal. 2011).

Here, the uncontroverted facts show there was both forfeiture and waiver. The Noteholder Claimants had ample opportunities, and could have and should have raised their allegations of breach of the Noteholder RSA prior to the Effective Date, but they did not. Indeed, the Noteholder Claimants' assertions that "Elliott acted expeditiously" and "simply had no opportunity to object or seek relief prior to the Plan being confirmed," (Elliott Response ¶¶ 22, 23), are nothing more than naked assertions without any possible factual or reasonable basis. As some of the most active participants in the Chapter 11 Cases, the Noteholder Claimants certainly knew how to assert their rights and did so aggressively and repeatedly throughout the Chapter 11 Cases. The Noteholder Claimants intentionally determined to remain silent. Having failed to act, the Noteholder Claimants cannot now come forward and inflict prejudice on the other parties in the Chapter 11 Cases,

including the Reorganized Debtors' common stockholders, and particularly the Fire Victim Trust, all of whom have relied on the implementation and consummation of the Plan.

The Noteholder Claimants' arguments with respect to waiver are without merit. First, they argue that waiver is an affirmative defense and, therefore, it would be premature for this Court to find that the Noteholder Claimants waived the Noteholder Claims. *See* Elliott Response ¶ 20. They are wrong. The Noteholder Motion is a contested matter, not a complaint, and Bankruptcy Rule 9014 specifically provides that Bankruptcy Rule 7008, which incorporates Federal Rule 8, including the provision on affirmative defenses, does not apply to contested matters. *See* Fed. R. Bank. P. 9014(c); *Vieira v. AGM II, LLC (In re Worldwide Wholesale Lumber, Inc.)*, 372 B.R. 796, 808-809 (Bankr. D.S.C. 2007). Accordingly, consistent with the authority cited by the Reorganized Debtors herein and in the Initial Opposition, a Bankruptcy Court in a contested matter can find waiver and forfeiture based on the undisputed record, especially a record based on the Court's prior proceedings.[10] Second, the Noteholder Claimants argue that the reason for their failure to act to preserve their claims is that their alleged litigation claims relating to the Noteholder RSA were preserved under the Plan, so there was no need to take any action. *See* Elliott Response ¶ 22. This argument, however, is inconsistent with the assertion, made throughout the Noteholder Motion, that the Noteholder Claimants did not act because they had "no opportunity to object or seek relief prior to the Plan being confirmed," (Elliott Response ¶ 23), and with the request in the Noteholder Motion to modify the Plan and Confirmation Order. If there was even a risk that the Plan or Confirmation Order needed to be modified or reconsidered, which the Consenting Noteholders evidently believe given that they made such a request in the Noteholder Motion, that should have been raised prior to the entry of the Confirmation Order and the occurrence of the Effective Date.

---

[10] Indeed, even if the Noteholder Motion was deemed to be a complaint and the law with respect to affirmative defenses applied, Courts can still find a waiver where the relevant facts, as here, are undisputed and based on the record of the proceedings over which the Court presided. *See, e.g.*, *Tanner v. McMurray*, No. CV 17-0876 JB\KBM, 2018 WL 6050675, at *28 (D.N.M. Nov. 19, 2018) (noting Courts may consider affirmative defenses on a motion to dismiss "where the facts establishing the affirmative defense are apparent on the face of the complaint"); *Citrus Tower Blvd. Imaging Ctr., LLC v. Key Equip. Fin., Inc. (In re Citrus Tower Blvd. Imaging Ctr., LLC)*, 520 B.R. 892, 899 (Bankr. N.D. Ga. 2014) (noting Courts may consider affirmative defenses at the pleading stage "when there is no factual dispute").

The Noteholder Claimants could have taken numerous steps to attempt to enforce their rights had they believed the Noteholder RSA was breached. Notwithstanding naked and unsupported assertions by the Noteholder Claimants to the contrary, the pertinent facts underlying their purported claims were known by the Noteholder Claimants by June 9, 2020. Yet, they did nothing. Accordingly, as in *In re Sciacca,* the Noteholder Claims are "untimely, improper, and forfeited." 2018 WL 4945715, at *3.

**D.** **The Noteholder Claimants are Not Entitled to Modify the Plan Because They Fail to Satisfy Section 1127(b) of the Bankruptcy Code and Also Because They Cannot Present any Facts That Warrant Reconsideration**

**1.** **Federal Rule 60(b) is not Available Because the Noteholder Claimants do not Satisfy Section 1127(b) of the Bankruptcy Code**

The Noteholder Claimants do not even attempt to argue that they meet the requirements of section 1127(b) of the Bankruptcy Code, which provides the "exclusive means by which to modify a plan." *In re Daewoo Motor Am., Inc.*, 488 B.R. 418, 426 (C.D. Cal. 2011); *see also Antiquities of Nev., Inc. v. Bala Cynwyd Corp. (In re Antiquities of Nev., Inc.)*, 173 B.R. 926, 928 (B.A.P. 9th Cir. 1994) (stating that the "post-confirmation modification of a plan is governed by 11 U.S.C. § 1127(b)" and noting that "Congress drafted § 1127(b) to safeguard the finality of plan confirmation"). Although the cases holding that section 1127(b) of the Bankruptcy Code provides the exclusive means to modify a plan fully dispose of the Noteholder Claimants' attempt to modify the Plan here, numerous Courts also have explicitly stated that this means that a litigant cannot use Federal Rule 60(b) to avoid the requirements of section 1127(b). *See, e.g.*, *In re Logan Place Properties, Ltd.*, 327 B.R. 811, 812-14 (Bankr. S.D. Tex. 2005) (finding movant could not modify plan under Federal Rule 60(b) holding that section 1127 of the Bankruptcy Code is "the exclusive means by which a plan can be modified"); *Daewoo Motor*, 488 B.R. at 426 ("[T]he Court agrees with the analysis in *Logan*. Section 1127 is the exclusive means by which to modify a plan."); *In re Vencor, Inc.*, 284 B.R. 79, 85 (Bankr. D. Del. 2002) (denying relief under Federal Rule 60(b) where "[s]uch a modification may not be requested by anyone other than the plan proponent, the Debtors in this case, and may not be made after the plan has been substantially consummated, as it has been in this case"); *In re Xpedior Inc.*, 354 B.R. 210, 232 (Bankr. N.D. Ill. 2006) ("While a

court can modify a confirmation order under Rule 60(b) . . . the Rules cannot provide a remedy that the Bankruptcy Code has substantively foreclosed . . . Hence, Rule 60(b) cannot be invoked to bypass § 1127(b).") (quoting *In re Rickel & Assocs., Inc.*, 260 B.R. 673, 678 (Bankr. S.D.N.Y. 2001)) (internal citations omitted).

Ignoring this precedent, the Noteholder Claimants contend that "Courts have recognized Federal Rule 60(b) as a valid means for creditors and interest holders to obtain relief from confirmation orders." Elliott Response ¶ 30. Not one case cited by the Noteholder Claimants, however, considered whether Federal Rule 60(b) can be used where the requirements of section 1127(b) have not been met—and the Noteholder Claimants do not cite a single case where a Court considered and rejected section 1127(b) as the exclusive means of modifying a Plan. Indeed, three of the four cases cited by the Noteholder Claimants do not even address section 1127(b) whatsoever.[11]

In the single case cited by the Noteholder Claimants addressing section 1127(b) of the Bankruptcy Code and Federal Rule 60(b), *In re BNW, Inc.*, 201 B.R. 838 (Bankr. S.D. Ala. 1996), the Court held that the debtor's plan could not be modified under either section 1127(b) or Federal Rule 60(b). Modification under section 1127(b) of the Bankruptcy Code was unavailable because the debtor's plan had been substantially consummated and, thus, the requirements of section 1127(b) of the Bankruptcy Code were not satisfied. *See id.* at 845. The Court also denied reconsideration under Federal Rule 60(b), but the Court did not address the issue of whether satisfying the requirements of section 1127(b) is a prerequisite to seeking relief under Federal Rule 60(b). *See id.* at 847. That issue—and the lack of any discussion on the point in *BNW*—was directly addressed in a case cited in the Reorganized Debtors' Initial Opposition, *Rickel*:

> *BNW* did not expressly state that it could grant such relief under Rule 60(b), but implied as much since the *BNW* court analyzed the modification motion under the criteria of Rule 60(b). Although this is a fair reading of *BNW*, **it does not correctly state the law**; a plan proponent cannot skirt § 1127(b) by moving to modify the confirmation order instead of the plan . . . **no court**

---

[11] *See In re Joseph Edward Co.*, 357 B.R. 441, 445 (Bankr. E.D. Ky. 2006); *In re 401 E. 89th St. Owners Inc.*, 223 B.R. 75, 79 (Bankr. S.D.N.Y. 1998); *In re Poteet Constr. Co.*, 122 B.R. 616, 618 (Bankr. S.D. Ga. 1990).

*has ever relied on rule 60(b) to modify a plan after substantial consummation*.

260 B.R. at 678-80 (emphasis added) (internal citations omitted).

Because the Noteholder Claimants cannot under any circumstances meet the requirements of section 1127(b) of the Bankruptcy Code, their request for modification of the Plan under Federal Rule 60(b) must be denied on this basis alone.

### 2. The Court Should Deny Reconsideration Because the Noteholder Claimants Have Failed to Carry Their Prima Facie Burden

The Noteholder Claimants go to great lengths to conjure purported factual disputes raised ostensibly in the Reorganized Debtors' Initial Opposition, but they miss the point: what they fail to address is the complete lack of any evidentiary support that they are required to present in the Noteholder Motion to establish a basis for the relief they seek, including modification of the Plan and reconsideration of the Confirmation Order.[12]

The Noteholder Claimants assert that they have "alleged sufficient facts in the [Noteholder] Motion establishing a basis for limited relief from the Confirmation Order under Federal Rule 60(b)," Elliott Response ¶ 35; however, the Noteholder Motion is not an adversary proceeding, and they filed a motion, not a complaint. The authority cited by the Reorganized Debtors in the Initial Opposition establishes that the Noteholder Claimants' burden in filing the Noteholder Motion was *not* to simply allege sufficient facts, but to actually prove those facts by providing support by affidavit or other appropriate evidentiary means. *See* Reorganized Debtors Initial Opposition at 18-19; *see Coe v. RJM, LLC*, 372 F. App'x 188, 190 (2d Cir. 2010) (affirming denial of relief under Federal Rule 60(b), where motion was "unsupported by any affidavits or other evidence" and contained "only unsubstantiated allegations"). Indeed, the "party seeking Rule 60(b) relief bears the burden of *proving* that the prerequisites for such relief are satisfied." *AAA Nev. Ins. Co. v. Chau*, No. 2:08-cv-00827-RCJ-LRL, 2010 WL 1756986, at *2 (D. Nev. Apr. 30, 2010) (emphasis added);

---

[12] The Noteholder Claimants incorrectly assert that the Scheduling Order precludes this Court from deciding the Federal Rule 60(b) issue. *See* Elliott Response ¶ 33. The Scheduling Order, however, does not prevent the Court from deciding the Federal Rule 60(b) issue based on the Noteholder Claimants' failure to meet their burden or based on the undisputed record. Scheduling Order ¶ 2 (stating that the Initial Responses shall argue based on "facts set forth in the [Noteholder] Motion, the Joinders, and any Additional Joinders, or otherwise not in dispute, and applicable law.").

*see also United Student Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 213 (B.A.P. 9th Cir. 2006) (affirming denial of motion for reconsideration under Federal Rule 60(b)(6) where movant had "not proven any extraordinary circumstances that prevented it from timely responding"); *In re Contessa Liquidating Co.*, No. 2:11-BK-13454-PC, 2012 WL 2153271, at *5 (Bankr. C.D. Cal. June 13, 2012) ("The burden of presenting facts demonstrating excusable neglect [under Federal Rule 60(b)(1)] is on the movant.").

The Noteholder Claimants were required to submit evidence with and in support of the Noteholder Motion, which they failed to do. This is yet another, independent, basis for denying reconsideration. *See Progressive W. Ins. Co. v. Tran*, No. 07-CV-1999 JAH(POR), 2008 WL 11508656, at *3 n.3 (S.D. Cal. Nov. 20, 2008) (refusing to consider evidence in support of movant's Federal Rule 60(b) motion where first submitted with movant's reply brief); *Countrywide Home Loans, Inc. v. Wilkerson (In re O'Kelley)*, No. 10-00356 DAE-LEK, 2010 WL 4176540, at *4 (D. Haw. Oct. 19, 2010) (affirming bankruptcy court's denial of a motion for reconsideration under Federal Rule 60(b) where the movant made "mere[] factual assertions with absolutely no evidentiary support").

### 3. The Request for Reconsideration Must be Denied Based on the Undisputed Record Before the Court

The facts that the Noteholder Claimants assert (without any factual backing) in support of their motion for reconsideration—even if assumed to be true (which, as set forth above, would not be appropriate with a motion under Federal Rule 60(b))—plainly do not constitute "excusable neglect" under Federal Rule 60(b)(1) or "extraordinary circumstances" under Federal Rule 60(b)(6).[13] *See* Reorganized Debtors' Initial Opposition at 20-21 (demonstrating no excusable neglect here), at 22-23 (demonstrating no extraordinary circumstances here). The Noteholder Claimants contend the following four alleged facts establish a basis for reconsideration:

- The Debtors first disclosed facts and circumstances giving rise to the Noteholder Claims on June 9, 2020;

- The objection deadline for Plan confirmation was May 15, 2020;

---

[13] The Noteholder Claimants concede they are not entitled to reconsideration under Federal Rule 60(b)(2) and retreat to arguing they are entitled to reconsideration under Federal Rule 60(b)(1) and/or 60(b)(6).

- The record for the Confirmation Hearing had already closed by the time the Debtors filed the Backstop Amendment Motion; and

- The Noteholder RSA precluded the Noteholder Claimants from objecting to Plan confirmation.

*See* Elliott Response ¶ 35. None of these facts remotely relate to, much less support, excusable neglect. This is because the Noteholder Claimants kept silent for seven weeks while the Plan was confirmed and went effective. In addition, far from constituting extraordinary circumstances beyond the Noteholder Claimants' control, these facts demonstrate that the Noteholder Claimants had full knowledge and more than ample opportunity to raise the alleged breach of the Noteholder RSA prior to the approval of the Backstop Amendment Motion, prior to entry of the Confirmation Order, and prior to the Plan Effective Date.

As cited in the Reorganized Debtors' Initial Opposition, Courts have routinely denied motions for reconsideration under Federal Rule 60(b) where, as here, the party had an opportunity to raise the issue to the Court but failed to do so. *See* Reorganized Debtors' Initial Opposition at 20-23 (citing cases); *see also, e.g.*, *Kilopass Tech. Inc. v. Sidense Corp.*, No. C-10-02066 SI, 2012 WL 1901198, at *4 (N.D. Cal. May 24, 2012) ("The Court finds that the rule does not apply where the 'new material fact' is merely a party's attempt to undo a strategic position for which it has been penalized."). Moreover, in *In re Ruiz,* the Bankruptcy Appellate Panel affirmed a Bankruptcy Court's determination that reconsideration was inappropriate because the party seeking reconsideration had "decided to remain quietly on the sidelines." *Milk Indus. Regul. Off. of P.R. v. Ruiz (In re Ruiz)*, B.A.P. No. PR 19-023 (slip copy), 2020 WL 3264985, at *1 (B.A.P. 1st Cir. June 10, 2020). There, a regulatory entity in Puerto Rico "made a conscious and informed choice not to respond to the motion" which the Bankruptcy Court ultimately granted. *Id*., at *7. The regulator later moved for reconsideration and the Bankruptcy Court denied the motion based entirely on the facts in the record. *Id.* In affirming the Bankruptcy Court's finding, the Bankruptcy Appellate Panel stated that a motion for reconsideration "does not permit the losing party to advance arguments they could have, and should have, presented to the bankruptcy court prior to the entry of the subject order." *Id.* "In short, we do not see any neglect here, let alone excusable neglect. Instead, we see a calculated decision by a litigant. It follows, then, that [the regulatory entity] was not entitled to

Rule 60(b) relief." *Id.* The Noteholder Claimants had ample opportunity—more than seven weeks—to attempt to protect their rights, but decided to remain silent. That decision forecloses relief under Federal Rule 60(b). *See In re Sciacca*, 2018 WL 4945715, at *2 ("[T]he reconsideration motion [was] improper and untimely because [movant] ma[de] arguments and assert[ed] claims that could (and should) have been raised before the sale motion was decided and the order approving the overbid sale to creditors Rice and Bullis was entered.").

None of the facts here support the use of the extraordinary circumstances clause in Federal Rule 60(b)(6). Having sought reconsideration under Federal Rule 60(b)(1), Federal Rule 60(b)(6) is not available to the Noteholder Claimants. *See In re O'Kelley*, 2010 WL 4176540, at *5 ("Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from final judgment 'upon such terms as are just,' provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5).") (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 & n.11 (1988))); *Corex Corp. v. United States*, 638 F.2d 119, 121 (9th Cir. 1981) ("It is established that clause (6) and the preceding clauses are mutually exclusive; a motion brought under clause (6) must be for some reason other than the five reasons preceding it under the rule."), *impliedly overruled on other grounds by Gregorian v. Izvestia*, 871 F.2d 1515, 1516 (9th Cir. 1989). Accordingly, there exists no basis—neither excusable neglect nor extraordinary circumstances—to reconsider the Plan or Confirmation Order.

### III.  <u>CONCLUSION</u>

Accordingly, for the reasons set forth herein and in the Reorganized Debtors' Initial Opposition, the Noteholder Motion and Joinders should be denied.

Dated: September 25, 2020

WEIL, GOTSHAL & MANGES LLP

KELLER BENVENUTTI KIM LLP

By: */s/ Richard Slack*
        Richard W. Slack

*Attorneys for Debtors and Reorganized Debtors*