| | | |
|---|---|---|
| 1 | **LABATON SUCHAROW LLP** | **LOWENSTEIN SANDLER LLP** |

**LABATON SUCHAROW LLP**
Thomas A. Dubbs
Carol C. Villegas
Jeffrey A. Dubbin (SBN 287199)
140 Broadway
New York, New York 10005

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
Scott Cargill
Colleen Maker
One Lowenstein Drive
Roseland, New Jersey 07068

*Lead Counsel to Securities Lead Plaintiff and the Class*

*Special Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Local Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

*(additional counsel on Exhibit A)*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>    - and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                  Debtors.<br><br>☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | Case No. 19-30088 (DM) (Lead Case)<br>Chapter 11<br>(Jointly Administered)<br><br>**SECURITIES LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO APPLY BANKRUPTCY RULE 7023 AND CERTIFY A LIMITED CLASS**<br><br>Date:       October 28, 2020<br>Time:      10:00 a.m. (PT)<br>Before:   (Telephonic Appearances Only)<br>           United States Bankruptcy Court<br>           Courtroom 17, 16th Floor<br>           San Francisco, California 94102<br><br>**Objection Deadline:** October 14, 2020, 4:00 PM (PT) |

Case: 19-30088   Doc# 9152   Filed: 09/28/20   Entered: 09/28/20 16:04:00   Page 1 of 35

# <u>TABLE OF CONTENTS</u>

<u>INTRODUCTION</u> .................................................................................................................1

<u>PROCEDURAL HISTORY</u> ................................................................................................4

<u>ARGUMENT</u> .......................................................................................................................5

I.    THIS COURT SHOULD APPLY RULE 7023 TO THE SECURITIES CLAIMS ...............5

    A.    Factors Relevant to this Court's Discretion in Applying Rule 7023 ............................5

    B.    The Court Should Use its Discretion to Apply Rule 7023 to the Securities Claims ...................................................................................................................6

II.    THE COURT SHOULD ADOPT ONE OR BOTH OF THE PROPOSED RULE 23 ALTERNATIVES TO RESOLVE CLAIMS ON A CLASS-WIDE BASIS .........................9

    A.    THIS SECURITIES CLAIMS SATISFY ALL FOUR RULE 23(a) FACTORS ...................................................................................................................9

        1.    *Numerosity*: Members of the Proposed Class Are So Numerous such that Joinder of All Members is Impracticable..............................................................10

        2.    *Commonality*: The Proposed Class Shares Questions of Law and Fact, Which This Court May Also Certify as Issue Classes .......................................10

        3.    *Typicality*: PERA's Claims Are Typical of the Proposed Class's Claims..........11

        4.    *Adequacy of Representation*: Securities Lead Plaintiff and Counsel Will Fairly and Adequately Protect the Interests of the Proposed Class ...................12

            (a)    Securities Lead Plaintiff and Its Counsel Have No Conflicts with the Proposed Class..............................................................................13

            (b)    Securities Lead Plaintiff and Its Counsel Are Well-Qualified, Have Vigorously Advocated for Securities Claimants, and Will Continue To Do So.......................................................................13

    B.    TWO OF THE RULE 23(b) SCENARIOS ARE SATISFIED HERE – EITHER OF WHICH IS SUFFICIENT FOR CLASS CERTIFICATION ................15

        1.    Rule 23(b)(1)(A) is Satisfied Because Non-Class Adjudications of Equity and Debt Claims Would Be Unworkable.................................................15

            (a)    A Class-wide damages process is more appropriate than Reorganized Debtors' prejudicial ADR process by both avoiding inconsistency and achieving fairness. ......................................................16

            (b)    The "Omnibus Objections" in the ADR Motion compel certification..............................................................................................19

(c) The ADR Motion ignores numerous, significant threshold issues that can simply be coordinated and adjudicated on a class-wide basis. ................................................................................................20

2. Under *Ortiz*, Rule 23(b)(1)(B) Mandates Certification Because Proceeding Individually, by ADR or Otherwise, Prejudices Class 10A-II Claimants ............................................................................................20

(a) The Plan Creates a "Limited Fund" of Shares to Pay Class 10A-II Claims.................................................................................................21

(b) Certification Ensures the Limited Fund Gives the Class "the Best Deal"...................................................................................................22

(c) Class Certification Will Result in "an Equitable, Pro Rata Distribution".........................................................................................23

C. FRAMEWORK FOR IMPLEMENTING SECURITIES LEAD PLAINTIFF'S PROPOSAL .......................................................................24

1. *Select a Class Mediator* .......................................................................24

2. *Determine Whether Threshold Issues Should Be Litigated or Mediated*............24

(a) Option 1: Global Mediation .................................................................24

(b) Option 2: Threshold Issue-Classes Separated for Mediation or Litigation.................................................................................................25

CONCLUSION.................................................................................................................26

SECURITIES LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO APPLY BANKRUPTCY RULE 7023 AND CERTIFY A LIMITED CLASS

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Matter of Am. Reserve Corp.*,
  840 F.2d 487 (7th Cir. 1988) ................................................................17

*Barnes v. AT&T Pension Benefit Plan*,
  270 F.R.D. 488 (N.D. Cal. 2010).............................................................10

*Birting Fisheries v. Lane (In re Birting Fisheries)*,
  92 F.3d 939 (9th Cir. 1996) .....................................................................5

*Central Wesleyan College v. W.R. Grace & Co.*,
  6 F.3d 177 (4th Cir. 1993) .......................................................................18

*In re Cooper Cos. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009)..............................................................10

*In re Davies*, No. 11-ap-01001, 2012 WL 370689 (B.A.P. 9th Cir. Jan. 12, 2012),
  *aff'd*, 565 F. App'x 630 (9th Cir. 2014)...................................................20

*In re Death Row Records, Inc.*,
  No. ADV. 10-02574, 2012 WL 952292 (B.A.P. 9th Cir. Mar. 21, 2012) ...................11, 14, 18

*In re Dehon, Inc.*,
  298 B.R. 206 (Bankr. D. Mass. 2003) .......................................................22

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992)......................................................................22

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ....................................................................13

*Gentry v. Siegel*,
  668 F.3d 83 (4th Cir. 2012) ......................................................................6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014).................................................................................11

*In re Hoopai*,
  No. 04-02511, 2007 WL 2460762 (Bankr. D. Haw. Aug. 27, 2007) .......................20

*K.M. v. Regence Blue Shield*,
  No. ADV. 10-02574, 2015 WL 519932 (W.D. Wash. Feb. 9, 2015)......................15

*In re LendingClub Sec. Litig.*,

SECURITIES LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO APPLY BANKRUPTCY RULE 7023 AND CERTIFY A LIMITED CLASS

iii

282 F. Supp. 3d 1171 (N.D. Cal. 2017) .................................................................................11

*McDonnell-Douglas Corp. v. U.S. Dist. Court for Cent. Dist. of Cal., McDonnell-Douglas*,
    523 F.2d 1083 (9th Cir. 1975) ..........................................................................................22

*Mortland v. Aughney*,
    No. C 11-00743, 2011 WL 2653515 (N.D. Cal. July 6, 2011).............................................6

*In re Musicland Holding Corp.*,
    362 B.R. 644 (Bankr. S.D.N.Y. 2007)........................................................................... *passim*

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)..............................................................................19, 20, 21, 22

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ..........................................................................10, 11, 12, 13

*Richie v. Blue Shield of Cal.*,
    No. C-13-2693, 2014 WL 6982943 (N.D. Cal. Dec. 9, 2014).................................................10

*Roberts v. Heim*,
    42 F.3d 1401 (9th Cir. 1994) .............................................................................................18

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ...........................................................................................13

*Schuman v. The Connaught Grp., Ltd. (In re The Connaught Grp., Ltd.)*,
    491 B.R. 88 (Bankr. S.D.N.Y. 2013)..................................................................................7, 8

*In re Sequoia Senior Solutions, Inc.*,
    No. 16-11036, 2017 WL 2533345 (Bankr. N.D. Cal. June 9, 2017)........................................8

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .............................................................................................14

*In re UTStarcom, Inc. Sec. Litig.*,
    No. C 04-04908, 2010 WL 1945737 (N.D. Cal. May 12, 2010).............................................11

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) .............................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)......................................................................................................16, 17

*In re Woodward & Lothrop Holdings, Inc.*,
    205 B.R. 365 (Bankr. S.D.N.Y. 1997)...................................................................................9

**Statutes**

Case 19-30088   Doc# 9152   Filed: 09/28/20   Entered: 09/28/20 16:04:00   Page 5 of 35

15 U.S.C. § 78u-4(b)(3)(B)..................................................................................7

**Other Authorities**

Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1772 (3d ed.)....................................17

Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1790 (3d ed.)....................................12

1 McLaughlin on Class Actions § 2:10 (16th ed.) ....................................................6, 9

Fed. R. Bankr. P.
    7023................................................................................................ *passim*
    9014....................................................................................................5, 6
    9014(a)....................................................................................................1
    9014(c)....................................................................................................1

Fed. R. Civ. P. 23........................................................................................18

Fed. R. Civ. P. 23
    (a)................................................................................................. *passim*
    (a)(1)....................................................................................................10
    (a)(2)................................................................................................11, 12
    (a)(3)....................................................................................................13
    (a)(4)................................................................................................14, 16
    (b)....................................................................................................9, 16
    (b)(1).........................................................................................5, 18, 19, 22
    (b)(1)(A)..................................................................................1, 10, 16, 18
    (b)(1)(B)............................................................................................ *passim*
    (b)(3)..................................................................................................5, 11
    (c)(4)..................................................................................................5, 12
    (c)(4)(A)................................................................................................12
    (c)(5)....................................................................................................10

Fed. R. Evid. 201........................................................................................20

Steinberg, 2 Bankruptcy Litigation § 10:17...........................................................7

Public Employees Retirement Association of New Mexico ("**Securities Lead Plaintiff**" or "**PERA**"), the court-appointed lead plaintiff in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**") pending in the U.S. District Court for the Northern District of California (the "**District Court**"), on behalf of itself and the proposed class it represents in the Securities Litigation (the "**Class**"), together with York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund, hereby submit this motion (the "**Motion**") for entry of an order, pursuant to Rules 7023 and 9014(a) and (c) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), substantially in the form submitted herewith (the "**Proposed Order**") as Exhibit C:

- Applying Bankruptcy Rule 7023 to all Rescission or Damage Claims (classified as Classes 9A, 10A-II, and 10B, the "**Securities Claims**");

- Holding that all four of the factors enumerated in Federal Rule of Civil Procedure 23(a)(1)-(4), made applicable through Bankruptcy Rule 7023, are satisfied;

- Holding that Federal Rule of Civil Procedure 23(b)(1)(A) is satisfied with regard to the Securities Claims;

- Holding that Federal Rule of Civil Procedure 23(b)(1)(B) is further satisfied with regard to Class 10A-II claims; and

- Certifying a class as defined herein.

## <u>INTRODUCTION</u>

The facts and circumstances here are tailor made for application of Rule 7023. And, as demonstrated below, all criteria of Federal Rule 23 are met. In addition, a class must be certified under the clear Supreme Court precedent of *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).

This Court's previous reason not to use the Rule 7023 process for the Class Proofs of Claim – the potential impact on plan confirmation by the once-looming A.B. 1054 deadline – has passed. Indeed, this Court recently indicated that a collective process for resolving the thousands of Securities Claims is sensible. *See* June 24, 2020 Hrg. Tr. at 19:14-20:24. Yet Reorganized Debtors have still made no proposal in that regard. Their *Motion to Approve Securities ADR and*

1  *Related Procedures* (the "**ADR Motion**") [Dkt. No. 8964] suggests, at most, how a subset of the

2  Securities Claims might be settled. However, the ADR Motion fails to address how a single

3  disputed issue could be resolved uniformly and equitably – and certainly not on a collective

4  basis. Securities Lead Plaintiff will oppose the ADR Motion on multiple grounds, including that

5  it is unworkably vague, burdensome, self-contradictory, contrary to law, and fundamentally

6  unfair. With the Plan confirmed, prior reasons to deny class treatment are moot, and common

7  questions must be answered through the collective process envisioned by Bankruptcy Rule 7023.

8       This is precisely the circumstance for which Bankruptcy Rule 7023 exists and Federal

9  Rule 23 was designed, honed, and revalidated over years: to help administer comparable claims

10  efficiently, fairly, and equitably for similarly situated claimants, through adjudication by an

11  *adequate* representative. Further, it is the only way that final resolution of *all* claims can be

12  negotiated on a fair and collective basis. This Court must decide whether that resolution will

13  draw from the procedural protections implemented by Rule 23, or by some untested means that

14  Reorganized Debtors may devise for resolving the very wrongdoing of which they are accused.

15       A complete detailing of the allegations against Reorganized Debtors is not necessary for

16  this Court to determine whether the unresolved Securities Claims are amenable to class-wide

17  resolution.[1] Not one of the more than 7,000 Securities Claimants is proceeding on a different

18  theory of liability, and presumably, Reorganized Debtors will not be mounting over 7,000 unique

19  defenses. Because Rule 7023 should apply and all Rule 23 criteria are satisfied, Securities Lead

20  Plaintiff presents this Court with two complementary frameworks for implementing Rule 23's

21  processes:

22       • First, this Court can certify a class for the purpose of implementing the Confirmed

23

---

24  [1]  Generally, Debtors are accused of making nineteen discrete false and misleading statements
25  or omissions from April 29, 2015 through November 8, 2018, which actively misrepresented
     facts about PG&E's compliance with federal and state law, its financial condition, its safety,
26  and other material issues. For example, it was materially false for Debtors to warrant that
     "[e]ach year, PG&E's Vegetation Management department . . . *inspects every mile of power*
27  *line* in our service area" when, as is now well-known, PG&E had not inspected Tower
     :27/222 from August 2014 through its malfunction on November 8, 2018 that caused the
     Camp Fire. *See* Securities Litigation, Dkt. No. 121 ¶¶197-205. Myriad other manifest
28  falsities combined with this one to ensure that investors overpaid for PG&E stock, and
     proximately caused investor losses. *Id.* ¶¶194-316. Similar statements appeared in the
     Debtors' bond offerings, which were materially false for similar reasons. *Id.* ¶¶495-682.

Plan of Reorganization (the "**Plan**"), including negotiation of Securities Claimant damages on a fair, class-wide basis before a nationally-recognized mediator, with securities litigation experience, chosen by this Court and paid by both sides. This is the overwhelmingly typical method by which securities claims are collectively resolved. Most importantly, this process would entail resolution of an appropriate damages formula tailored to the fraud allegations at issue – *i.e.*, the extent of losses related to various market disclosures – which dictates claimants' damages on an objective basis depending on when each claimant bought and sold its securities.

- o This method of determining claim value is far superior to an *ad hoc* ADR process because it measures claims based on a uniform damages methodology rather than the bargaining power of each claimant.

- o It gives the parties the opportunity to agree on damages related to each of the ***nine*** alleged disclosures, which can be combined with the already agreed-on formula for four time periods set forth in the Plan (*see* Plan §1.109) to calculate Securities Claimant recoveries. Thus, the focus is on a relatively small, finite number of decisions.

- o This method is also far easier to implement, because it allows damages to be determined objectively, formulaically, and collectively.

- o It gives this Court the opportunity to construe and apply the Plan's terms related to Securities Claims valuation on a fair, class-wide basis.

- o This time-tested method is how ***thousands*** of securities class actions are resolved, making it legally sufficient and a superior model to Reorganized Debtors' handful of non-analogous cases where massive ADR programs were implemented in non-securities claim contexts.

- Second, this Court may certify discrete, threshold issues that directly impact the value of Securities Claims, the resolution of which will help clarify the parties' positions and bring them closer to a global resolution (through mediation or

litigation). Such class-wide, impactful issues include resolution of Reorganized Debtors' class-wide objections, including collective defenses, *e.g.*, the permissibility of a single agent filing more than one principal's claims on a single claim form (so-called "bulk claims"), timeliness, and the availability of their "truth-on-the-market" defense.

The ADR Motion does not present a collective path forward on any of these common issues, which are essential to determining "Allowed HoldCo Rescission or Damage Claim" values (as the term is used in the Plan). For full and fair resolution of these important, class-wide, threshold issues, Rule 7023 should be applied, and a class should be certified.

## PROCEDURAL HISTORY

On December 9, 2019, Securities Lead Plaintiff moved for this Court to apply Rule 7023 to its Class proofs of claim and schedule class certification briefing. *See Securities Lead Plaintiff's Mot. to Apply Bankr. Rule 7023 to Class Proof of Claim* [Dkt. No. 5042] (the "**Initial 7023 Motion**").

On February 24, 2020, this Court denied the Initial 7023 Motion but extended the bar date for individual members of the Class. *See* 7023 Order [Dkt. No. 5887]. Applying the *Musicland* factors, this Court held, correctly, that the absence of a pre-petition certified class was irrelevant here, where "a motion to dismiss is currently pending in the [District Court] Securities Litigation." *Id.* at 3. Next, this Court correctly determined that the second *Musicland* factor, "whether members of the putative class received notice of the bar date," weighed "heavily in favor" of granting the Initial 7023 Motion, because "Debtors failed to provide" such notice. *Id.* at 3-4. This Court denied the motion based purely on the third *Musicland* factor, "whether class certification will adversely affect the administration of the estate." *Id.* at 4. This Court found this factor to be a "close call" but sided with Debtors, stating that "[a]t this juncture, it appears granting the Motion may result in more chaos than certainty." *Id.* Referring to A.B. 1054, this Court noted that the Class was "prejudiced" here by the "anomalous circumstance of a legislative deadline for plan confirmation." *Id.*

Although this Motion appears to make similar arguments to the Initial 7023 Motion, it is

distinct by the relief it seeks. The first important difference between the Initial 7023 Motion and this Motion is that here, Securities Lead Plaintiff requests class certification under Rule 23(b)(1) instead of Rule 23(b)(3). The second key difference is that Securities Lead Plaintiff requests class certification under Federal Rule 23(c)(4) of targeted common issues. As such, this Motion calls for distinct, less fact-intensive, and more limited analyses. In particular, certification under Rule 23(b)(1) does not require a showing that common issues "predominate," hence it avoids invoking the heavily litigated "presumption of reliance" that Rule 23(b)(3) securities class actions typically involve.

This Court may address the more straightforward Rule 23(b)(1) analysis on the briefing alone (and public evidence cited herein), eliminating any potential burden on estate administration. Accordingly, Securities Lead Plaintiff addresses these distinct class certification issues in full below, and submits them for this Court's determination for the first time, in Section II, *infra*. For the reasons set forth herein, certification under Rule 23(b)(1) provides a superior alternative to the inadequacies of the ADR Motion (detailed in a forthcoming objection), and provides for the most efficient and fair means for handling both the equity and debt Securities Claims.

## ARGUMENT

## I.    THIS COURT SHOULD APPLY RULE 7023 TO THE SECURITIES CLAIMS

Bankruptcy Rule 9014 permits courts, in non-adversary proceedings, to apply bankruptcy rules to a "contested matter not otherwise governed by these rules." As such, "a bankruptcy court has *discretion* to apply Rule 23 via Rule 7023 via Rule 9014." *Mortland v. Aughney*, No. 11-00743, 2011 WL 2653515, at *2 (N.D. Cal. July 6, 2011) (emphasis in original); *see also* 1 McLaughlin on Class Actions § 2:10 (16th ed.) ("Because all disputes in a bankruptcy case are either adversary proceedings or contested matters, Rule 23 and its class action procedures may apply throughout a bankruptcy case at the bankruptcy judge's discretion.").

### A.    Factors Relevant to this Court's Discretion in Applying Rule 7023

This Court has discretion to apply Rule 7023 to Class claims, as many other bankruptcy courts have done. A range of factors may guide such discretion:

> In exercising that discretion, courts have evaluated a number of factors, including whether the proposed class representative moved to apply Rule 23 to its proof of claim, whether the benefits of the class claim device comport with the goals of bankruptcy, whether the claims which the proponent seeks to certify meet the requirements of Rule 23, and any prejudice to the debtor or its other creditors, . . . efficient estate administration, the conduct in the bankruptcy case of the putative class representatives, and the status of related proceedings in other courts.

McLaughlin § 2:10 (collecting cases). Typically, a bankruptcy court's discretion focuses on "whether the benefits of applying Rule 7023 (and Civil Rule 23) are superior to the benefits of the standard bankruptcy claims procedures." *Gentry v. Siegel*, 668 F.3d 83, 93 (4th Cir. 2012).

The parties and this Court previously agreed that the three factors set forth in *Musicland* provide guidance to the extent relevant. *Accord* Lead Pl.'s Br. [Dkt. No. 5042], Debtors' Br. [Dkt. No. 4684] *and* 7023 Memorandum Decision [Dkt. No. 5887]. This Court is familiar with these factors, and Securities Lead Plaintiff agrees with the Court's finding that the first *Musicland* factor is irrelevant to these Chapter 11 Cases, and that "[t]he second factor weighs heavily in favor of" applying Rule 7023. *See* 7023 Memorandum Decision [Dkt. No. 5887].

The third factor – effect on case administration – should be the focus of the inquiry. Indeed, bankruptcy courts have decided to apply Rule 7023 where the efficiency it adds to claims administration was the "principal consideration." *Schuman v. The Connaught Grp.*, 491 B.R. 88, 99 (Bankr. S.D.N.Y. 2013) ("[I]f I deny the class certification and extend the bar date for the WARN Act claimants, the delay may be as great or greater than if I grant the motion. Some number, perhaps most of the putative class members will then file claims. The Trust will have to examine every filed claim anyway. . . . Accordingly, the motion to certify the class is granted.").

**B.      The Court Should Use its Discretion to Apply Rule 7023 to the Securities Claims**

The Damoclean threat imposed by A.B. 1054 has passed. The Plan has been confirmed and gone effective. Accordingly, the sole consideration that previously weighed against application of Rule 7023 to the Securities Claims is no longer relevant.

Rule 7023 should apply because, consistent with the third *Musicland* factor, it would promote efficient administration at this stage of the Chapter 11 Cases, especially compared to the burdensome and unworkable alternative Reorganized Debtors have proposed. The application of

Rule 7023 is not novel; in fact, this bankruptcy court has invoked Rule 7023 **after** plan confirmation in order to facilitate resolution of claims by unsecured creditors. *See In re Sequoia Senior Solutions, Inc.*, No. 16-11036, 2017 WL 2533345 (Bankr. N.D. Cal. June 9, 2017). In *Sequoia*, this bankruptcy court certified a class of creditors with state-law claims for overtime pay after a confirmed plan allocated a fund for the payment of unsecured creditors. *Id.* at *1-*2. In doing so, it noted that the existence of a confirmed plan weighed in favor of applying Rule 7023 to class claims. *Id.* ("[Debtor] is not exposed to any greater liability than provided for in its plan, and will not be permitted to use the Chapter 11 process to entirely avoid its responsibility to pay its employees according to law.").

The equities here weigh equally, if not more so, in favor of applying Rule 7023. In *Sequoia*, as here, the putative class was not certified prepetition. Indeed, all putative Class members in *Sequoia* received actual notice of the bar date – a fact that Reorganized Debtors cannot assert occurred here, making application of Rule 7023 even more appropriate. Further, in *Sequoia*, "[t]he putative class took no action in the case beyond filing the claim until Sequoia's plan came up for confirmation," a factor deemed to weigh against application of Rule 7023. *Id.* In contrast, here, Securities Lead Plaintiff's timely Class proofs of claim and involvement throughout this case weigh in favor of applying Rule 7023 due to the efficiencies that will stem from its proven commitment, its case knowledge, and the lack of unfair prejudice to the Reorganized Debtors. Most importantly, the *Sequoia* court held that while "disruption to the reorganization process would have been too great" pre-confirmation, applying Rule 7023 would present no administrative obstacle where the request was made after "having confirmed the plan." *Id.* at *2.

Debtors previously promised this Court that complete relief could be afforded to Securities Claimants through an extended bar date. *See* 7023 Memorandum Decision (Dkt. No. 5887) at 4 ("Initially, Debtors indicated that they were unable to implement this procedure (Dkt. No. 5370) but have since reversed their position and stated that they are able to implement this procedure (Dkt. No. 5789)."). ***Now, the ADR Motion takes the position that Debtors were unsuccessful in obtaining enough information from Securities Claimants to even make a***

**single settlement offer.** ADR Motion at 21 ("Without this information, the Reorganized Debtors cannot reasonably develop settlement offers for any Subordinated Securities Claimant.").

The ADR Motion is an exercise in chaos and inefficiency. It proposes that limited issues (*e.g.*, bulk claims and timeliness) may be addressed through an omnibus objection procedure at the **end** of a multi-tracked ADR process (*id.* at 11-13), creating great uncertainty as to the legal positions of Securities Claimants – and by extension, uncertainty as to the value of each claim. This backward process prejudices claimants in negotiating any ADR process. Further, the ADR proposal lacks any details on actual mechanics: *e.g.,* which claimants will be permitted to file briefs opposing the objections, and how to proceed given that an adverse ruling against one claimant cannot bind other claimants (who may want to develop different facts and arguments). Where details are provided, they reek of impropriety, *e.g.*, requiring mediators to depend on Reorganized Debtors for fees while limiting claimants' opportunities for "marshalling evidence to support legal and factual arguments." ADR Motion at 11. Moreover, the ADR proposal leaves unaddressed myriad other issues – ones common to the proposed Class – such as how claimants can make informed settlement decisions before their allowed damages have been calculated. In sum, the ADR Motion proves that **not** applying Rule 7023 ensures the chaos of proceeding individually. In contrast, by applying Rule 7023, this Court can address all common issues directly, through the well-tested process afforded by class certification: by adjudicating and/or settling them once and for all via an adequate representative.

More generally, Securities Claim values here will all rise – or fall – on the same issues. Unless a class is certified, the common issues (listed in Part II.A.2, *infra*) will have to be addressed individually, and such thousand proceedings will certainly "gum[] up" administering the estate. *See Musicland*, 362 B.R. at 654; *accord In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997). This is especially true if Reorganized Debtors' ADR procedure is attempted, as its dilatory effect would multiply with each unique defense they lodge against individual claimants.[2] Instead, the Court should exercise its discretion and apply Rule

---

[2] The ADR Motion proposes omnibus objections that exacerbate this problem. There is no guarantee that such defenses will result in uniform **outcomes**. Without class certification, each disputed omnibus defense must be addressed on a claimant-by-claimant basis, by

1    7023 to administer equity and debt Securities claims on a collective, class-wide basis.

2                                          *        *        *

3            When this Court last examined Rule 7023, it judged the discretionary factors to be a

4    "close call."   In determining not to apply the rule, this Court held that the deciding factor

5    "prejudic[ing]" Securities Lead Plaintiff's request was "an extrinsic deadline for confirmation

6    that is unrelated to their claims."  7023 Memorandum Decision [Dkt. No. 5887].  That deadline,

7    and any weight it bore on this Court's analysis, no longer exist.

8            For the reasons in Securities Lead Plaintiff's previous briefing, and the additional reasons

9    described above, this Court should exercise its discretion and apply Rule 7023 to the Securities

10   Claims.

11   **II.    THE COURT SHOULD ADOPT ONE OR BOTH OF THE PROPOSED RULE 23
            ALTERNATIVES TO RESOLVE CLAIMS ON A CLASS-WIDE BASIS**

12           For a class to merit certification, it must satisfy all four of the Rule 23(a) factors, and

13   match at least one Rule 23(b) scenario.  *See* Fed. R. Civ. P. 23(a)-(b).  Here, as delineated below,

14   Plan Classes 9A, 10A-II, and 10B together meet all of the Rule 23(a) factors, and match the

15   scenario for certification set out in Rule 23(b)(1)(A).  Plan Class 10A-II further matches the

16   certification scenario of Rule 23(b)(1)(B) and *Ortiz* for "limited fund" class actions.   While

17   equity and debt Securities Claims present slightly different damages issues based on the nature of

18   each security and the statutory damages formula, the same structure of mediation proposed

19   herein can work for all Securities Claimants on a class-wide basis.   Thus, this Court should

20   certify a class of both equity and debt claimants as defined herein.[3]

21   **A.     THIS SECURITIES CLAIMS SATISFY ALL FOUR RULE 23(a) FACTORS**

22           Class certification is appropriate because the Securities Claims satisfy each of the four

     prerequisites set forth in Federal Rule 23(a): "(1) numerosity; (2) commonality; (3) typicality;

23   and (4) adequacy of representation." *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014).

24

25           definition.  Just the existence of omnibus defenses favors application of Rule 7023:  Not only
             would it be far more efficient to administer uniform defenses collectively (including

26           litigating only one set of briefs), but further, it would ensure that each claimant's adjudication
             does not result in gross inconsistencies.  *See* Section II.B.1, *infra*.

27   3       Bond claims under Plan Classes 9A and 10B are a putative subclass in the District Court
             Securities Action.  The subclass also has its own counsel identified in Exhibit A.  This Court

28           may adopt the same subclass structure.  *See* Fed. R. Civ. P. 23(c)(5) ("When appropriate, a
             class may be divided into subclasses that are each treated as a class under this rule.").

### 1. *Numerosity*: Members of the Proposed Class Are So Numerous such that Joinder of All Members is Impracticable

Rule 23(a)(1) is met where "the class is so numerous that joinder of all members is impracticable." To satisfy the "numerosity" requirement, one "need not state the exact number of potential class members." *Richie v. Blue Shield of Cal.*, 2014 WL 6982943, at *15 (N.D. Cal. 2014). Courts in this circuit hold, "[a]s a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Barnes v. AT&T Pen. Ben. Plan*, 270 F.R.D. 488, 493 n.2 (N.D. Cal. 2010); *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) ("[N]umerosity is presumed where the plaintiff class contains forty or more members.").

Here, the proposed class contains at minimum 4,400 members by Debtors' own admission. *See* Debtors' Status Letter [Dkt. No. 7048] ("[A]s of April 26, 2020, the Debtors have received more than 4,400 Rescission or Damage Claims, with the aggregate asserted value of those claims exceeding $6 billion.").[4] By a review of the public Prime Clerk claims website, which contains limited information about Rescission or Damage Proofs of Claim, **a total of 7,082 Class proofs of claim have been filed to date**, with more than 2,500 additional claims being filed since Debtors last reported the tally to this Court.[5] Accordingly, the impracticability of joinder for this sufficiently numerous class should be presumed.

### 2. *Commonality*: The Proposed Class Shares Questions of Law and Fact, Which This Court May Also Certify as Issue Classes

Many common questions underlie the claims at issue and amply satisfy Rule 23's commonality requirement. Commonality "has been construed permissively," *In re UTStarcom, Inc. Sec. Litig.*, No. 04-04908, 2010 WL 1945737, at *4 (N.D. Cal. May 12, 2010), and does not require a plaintiff to "show . . . that every question in the case, or even a preponderance of questions, is capable of class wide resolution," *In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1179 (N.D. Cal. 2017). "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons*, 754 F.3d at 675.

Putting aside the manifest common issues that go to the merits of Class claims –

---

[4] Further, there is reason to believe that PG&E's estimate of 4,400 covers closer to 6,400 actual claimants after so-called "bulk claims" – single claim forms listing multiple claimants – get counted as additional claimants. Thus, the bulk claim issue is material.

[5] *See* https://restructuring.primeclerk.com/pge/Home-ClaimInfo?RescissionorDamage=MTY=

including every element of each Securities Claim asserted[6] – the mere administration of these thousands of similar claims presents substantial common factual and legal issues, each of which impacts claim values on a class-wide basis, including:

- Resolution of the appropriate damages formula tailored to the allegations at issue (flowing from market disclosures) that dictate claimants' damages for fraud on an objective basis depending on when each claimant bought and sold its securities;

- Application of the Plan's terms related to claim valuation, including the term "Allowed HoldCo Rescission or Damage Claim" (*see* Plan §1.109); and

- Resolving Reorganized Debtors' class-wide objections, including collective defenses, *e.g.*, the permissibility of a single agent filing more than one principal's claims on a single claim form (so-called "bulk claims"), timeliness, and the availability of their proffered "truth-on-the-market" defense.

These common issues may be certified for class-wide decision, together or separately. "When appropriate, an action may be . . . maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4); *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues."). "[T]he advantages and economies of adjudicating issues that are common to the entire class on a representative basis may be secured even though other issues in the case may need to be litigated separately by each class member." Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1790 (3d ed.).

All of the above are common questions of law and fact, any one of which is sufficient to satisfy Rule 23(a)(2). *See Parsons*, 754 F.3d at 675. Even "where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Id.* (alteration omitted). Commonality is readily satisfied here.

### 3. *Typicality*: PERA's Claims Are Typical of the Proposed Class's Claims

---

[6] At this time, Lead Plaintiff does not seek certification of merits issues relating to underlying violations of the securities laws. Lead Plaintiff reserves all rights to seek such relief at an appropriate time in the appropriate venue. Because Lead Plaintiff does not seek certification from the predominance of common questions (Fed. R. Civ. P. 23(b)(3)) or the presumption of reliance for its fraud claims (*see generally Halliburton v. Erica P. John Fund*, 573 U.S. 258, 264 (2014)), Debtors' previous arguments against such certification are irrelevant.

Under Rule 23(a)(3)'s "permissive standards" for typicality, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 675. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation omitted). Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).

Here, PERA's claims and injuries are typical of those of the Class. In particular, PERA holds both equity and debt claims, and is a claimant in Plan Classes 9A, 10A-II, and 10B. *See* Claim Nos. 69105 & 71345. Accordingly, PERA's claims and injuries are "reasonably co-extensive" with those of all Class claimants. *See Parsons*, 754 F.3d at 675. Indeed, all Securities Claims filed pursuant to the Extended Bar Date are based on the claims in PERA's putative class action complaint. *See* 7023 Order (Dkt. No. 5943) at 2-3. Thus, not only are PERA's claims typical of the Securities Claims, but it is also the claimant best positioned to be making "similar legal arguments to prove the defendant's liability." *See Rodriguez*, 591 F.3d at 1124.

Because PERA's claims necessarily arise from the same series of events that give rise to all Class claims, and because PERA is in a unique position to pursue a similar course both here and in the District Court, the typicality requirement is satisfied.

**4. *Adequacy of Representation*: Securities Lead Plaintiff and Counsel Will Fairly and Adequately Protect the Interests of the Proposed Class**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether the representation meets this standard, [courts in this Circuit] ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *In re Death Row Records, Inc.*, No. 10-ap-02574, 2012 WL 952292, at *16 (B.A.P. 9th Cir. Mar. 21, 2012) ("In determining whether

the interests of a class will be adequately represented, the court must determine that the class representative does not have an interest antagonistic to the class; and, that the class counsel must be qualified, experienced and able to conduct the litigation.").

**(a)** **Securities Lead Plaintiff and Its Counsel Have No Conflicts with the Proposed Class**

PERA does not have any interest antagonistic to Securities Claimants. In fact, PERA's interests are directly aligned with the interests of all other such claimants. *See* Claim Nos. 69105 & 71345. As a member of Classes 9A and 10B, PERA is squarely incentivized to prosecute Class claims to recover the greatest amount of actual damages for debt purchaser victims, to be paid in full in cash. As a member of Class 10A-II, PERA is equally incentivized to prosecute Class claims to recover the greatest amount of actual damages for stockholder victims, to be paid in stock. *See* Confirmed Plan [Dkt. No. 8053-1] at §§4.12, 4.14, and 4.32. Similarly, PERA's counsel does not have any known actual or potential conflicts of interest with the proposed class.

**(b)** **Securities Lead Plaintiff and Its Counsel Are Well-Qualified, Have Vigorously Advocated for Securities Claimants, and Will Continue To Do So**

Securities Lead Plaintiff and its counsel are qualified, experienced, and fully capable of prosecuting this action vigorously on behalf of the proposed Class, as detailed below.

**(i)** **PERA and Labaton Sucharow are the most adequate class representative and class counsel.**

Proposed Class Representative PERA manages a retirement system for state, county, and municipal employees including police, firefighters, judges, magistrates, legislators, and volunteer firefighters of New Mexico. PERA oversees assets of more than $15 billion on behalf of its members, retirees, and beneficiaries. *See* District Court Action, Dkt. No. 121, Third Amended Consolidated Class Action Complaint ¶41. A sophisticated public pension fund, PERA was appointed Securities Lead Plaintiff by the District Court in the Securities Action. *Id.*, Dkt. No. 62.

Moreover, PERA has engaged qualified, experienced, and capable attorneys who have an excellent track record in prosecuting complex securities class actions such as this litigation.

PERA's chosen counsel, Labaton Sucharow LLP, have fully, fairly, and more than adequately represented the interests of the Class in this action to date, which is further demonstrated by counsel's activities in other cases. Furthermore, its counsel has hired and supervised the qualified, experienced, and capable bankruptcy counsel of Lowenstein Sandler LLP and the Michelson Law Group, whose bankruptcy expertise is well known to this Court. Together, PERA and its counsel have done more for the proposed Class than any other claimant, making it the most qualified representative. *See K.M. v. Regence Blue Shield*, No. 10-ap-02574, 2015 WL 519932, at *3 (W.D. Wash. Feb. 9, 2015) ("Questions of a class representative's adequacy dovetail with questions of his counsel's adequacy.").

                    **(ii)**      **PERA and Labaton Sucharow have safeguarded the rights and recoveries of all putative class members, and will continue to do so**

Securities Lead Plaintiff and all its counsel have demonstrated their willingness and ability to serve as Class Representative and Class counsel. PERA and Counsel have ***already*** vigorously advocated for the rights of all Securities Claimants. Specifically, PERA and its counsel:

(i)       defeated Debtors' Section 105 motion for preliminary injunction;

(ii)     led efforts that resulted in an extension of the Bar Date for thousands of class member claimants whose claims would otherwise have been time barred; and

(iii)    defeated the TCC's motion for standing to transform, assume, and otherwise co-opt Securities Claims – which would have diverted recoveries away from the shareholder and bondholder members of Classes 9A, 10A-II, and 10B.

Further, proposed Class Counsel Labaton Sucharow LLP was principally responsible for the extensive settlement negotiations right up to Plan Confirmation, which provided a significant benefit to Securities Claimants, by working directly with Debtors, Plan Proponents, and Mediator Judge Newsome. This track record demonstrates proposed Class counsel's readiness and ability to resolve the pertinent class-wide issues, identified herein, fairly and adequately.

As their actions in this case and others demonstrate, Securities Lead Plaintiff and its chosen counsel have committed, and are willing to commit, considerable resources to

representing the class of Securities Claimants in these Chapter 11 Cases. The hard-fought proceedings to date establish that Securities Lead Plaintiff and its counsel will continue to do so on behalf of the proposed Class.

In sum, PERA is well-suited to represent the Securities Claimants, has no antagonistic interests, and has suffered injuries substantially similar to all others. As Securities Lead Plaintiff, PERA has demonstrated that it is willing and able to advocate tirelessly on behalf of Classes 9A, 10A-II, and 10B, and "will fairly and adequately protect the interests of the class." *See* Rule 23(a)(4). Accordingly, the adequacy requirement of Rule 23(a)(4) is satisfied, and the Court should appoint PERA as Class representatives and Labaton Sucharow LLP as Class counsel.

**B.     TWO OF THE RULE 23(b) SCENARIOS ARE SATISFIED HERE – EITHER OF WHICH IS SUFFICIENT FOR CLASS CERTIFICATION**

After satisfying the Rule 23(a) factors described above, a "proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). For the reasons below, the proposed Class matches more than one of the Rule 23(b) scenarios: first, the Class as a whole satisfies the requirement of Rule 23(b)(1)(A); and second, the subset of equity Class claims from Plan Class 10A-II additionally satisfies the requirement of Rule 23(b)(1)(B). Either of these is sufficient for class certification, and "it is quite common for suits brought under subdivision (b)(1) to meet both the test for clause (A) and for clause (B) of that provision." Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1772 (3d ed.).

**1.     Rule 23(b)(1)(A) is Satisfied Because Non-Class Adjudications of Equity and Debt Claims Would Be Unworkable**

Given both the *pro se* nature of many Securities Claimants and the disparity of amounts-in-controversy reflected on their various proofs of claim (large, small, or unliquidated), the range of potential outcomes for individual claim objections and mediation is vast and unworkable. It is for the avoidance of this exact outcome that the Seventh Circuit held that Rule 7023 should be applied to the proof of claim process: "Substantively, the class action permits the aggregation and litigation of many small claims that otherwise would lie dormant. At least in principle, the class action provides compensation that cannot be achieved ***in any other way***." *Matter of Am. Reserve Corp.*, 840 F.2d 487, 489-93 (7th Cir. 1988) (Easterbrook, J.) (emphasis added).

1   Where maintaining individual actions is simply unworkable, as we believe this Court has

2   acknowledged, a class must be certified under Rule 23(b)(1). *See* Transcript of June 24, 2020

3   Hrg. p. 19:16-18 (referring to "securities claims" as "something that's got to be dealt with on a

4   macro basis at some point down the road"). Per the U.S. Supreme Court, one of the two "most

5   traditional justifications for class treatment" is that proceeding individually "would be

6   impossible or unworkable, as in a (b)(1) class." *Wal-Mart*, 564 U.S. at 361–62. Once this Court

7   determines that the four Rule 23(a) factors are met, it must certify a class if separate proceedings

8   "by or against individual class members would create *a risk* of 'establish[ing] incompatible

9   standards of conduct for the party opposing the class,' such as '*where the party is obliged by law*

10  *to treat the members of the class alike*.'" *See id* at 361 & n.11 (quoting Rule 23(b)(1)(A) and

11  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Here, Reorganized Debtors'

12  obligation to treat similarly-situated Securities Claimants alike confirms why proceeding

13  individually – through ADR and its proposed disparate treatment for similarly situated claimants

14  – is "unworkable."

15  "Inconsistent," "varying," and "incompatible standards of conduct" (Rule 23(b)(1)(A))

16  would be inevitable here without class certification, because the Securities Claims at issue do not

17  substantively differ from claimant to claimant. The class-wide similarities here are inherent,

18  stemming directly from the fact that the claims are shared by holders of fungible securities; this

19  is precisely why the Ninth Circuit "ha[s] recognized that actions involving alleged fraud in

20  connection with the sale of securities are particularly suitable for class certification." *Roberts v.*

21  *Heim*, 42 F.3d 1401, 1401 (9th Cir. 1994). The number of common procedural issues listed in

22  Section II.A.2, *supra* ("Commonality"), cast a correspondingly long shadow of inconsistent

23  processes that would result if the ADR Motion were granted and thousands of separate processes

24  went forward without coordination, detailed below.

25      **(a)    A Class-wide damages process is more appropriate than Reorganized
            Debtors' prejudicial ADR process by both avoiding inconsistency and
26          achieving fairness.**

27  The ADR Motion recognizes that it would result in inconsistent processes *and* outcomes:

28      This [ADR process] may involve a simple exchange of confidential
        settlement offers or participation in one of the two forms of

16

> mandatory, non-binding, and confidential mediation ***depending on***, among other factors, the size and complexity of the individual claim, whether the claimant is a financial institution or an individual, and the gap between offers and counteroffers in settlement exchanges.

ADR Motion at 3 (emphasis added). Reorganized Debtors appear to concede that they intend the "settlement" component of their ADR process to favor certain claimants "depending on" a variety of factors, ***none of which*** is the relative merits of respective claims. Based on a policy judgment that such inconsistency is unacceptable, Rule 23(b)(1)(A) was framed to avoid precisely what Reorganized Debtors propose: "More commonly, subdivision (b)(1)(A) is applicable when practical necessity forces the opposing party to act in the same manner toward the individual class members and thereby makes inconsistent adjudications in separate actions unworkable or intolerable." Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1773 (3d ed.).

In contrast, securities fraud class actions have a time-tested approach to measure damages fairly and equitably on a class-wide basis. This case is typical of the paradigmatic securities fraud case because as all claimants are proceeding on a measurement of damages "generally equal to the artificial inflation when the shares were purchased minus the artificial inflation when the shares were sold." *In re Vivendi, S.A. Securities Litigation*, 838 F.3d 223, 260 (2d Cir. 2016) (internal quotations omitted). Because Debtors' alleged fraud (and related declines in securities' values) had a blanket effect on investors, recoveries should differ based purely on when investors purchased or sold their securities. As the Second Circuit explained, this "has now become standard operating procedure in federal securities litigation," including an expert's development of a class-wide formula "to determine whether, and the extent to which, [a Defendant Company's] stock price was artificially high (*i.e.*, inflated) during the Class Period due to the market's misapprehension." *Vivendi*, 838 F.3d at 253. The Second Circuit continues:

> The expert then identifies which information caused notable changes in the price of a company's securities and the magnitude of those changes. [] Thus, an event study [formula] can help an expert determine whether, and the extent to which, the release of certain information caused a stock price to fall. [] This, in turn, allows an expert to make inferences about the degree to which the company's stock price may have been artificially inflated on the basis of the market's misconception as to the truth . . . .

17

*Id.* at 253-54 (citations omitted). Such an analysis creates a legally sufficient "damages model directly measur[ing] that harm by examining the drop in price that occurred" on alleged dates. *Waggoner v. Barclays*, 875 F.3d 79, 106 (2d Cir. 2017) (affirming class certification).

Here, Securities Lead Plaintiff is in a unique position to develop a legally sufficient framework that will meet established standards and pass scrutiny. Securities Lead Plaintiff has already retained a qualified damages expert for developing the industry-standard "event study" formula for measuring the nine class-wide damage amounts, as is typical for both litigating and mediating such claims. *See* Coffman Decl. ¶ 15. Unlike the ADR proposal, such a framework is commonplace and will compute damages with consistency, both among Securities Claimants and with developments in the District Court. Securities Lead Plaintiff alone will be able to pursue a consistent, class-wide damages theory based on a precise measurement of damages for each of the nine legally actionable events that resulted in recoverable losses to class members – through litigation, mediation, or both.[7]

These factors for the correct measure of damages for fraud (*e.g.,* the effect of each misstatement and the extent of damage from each decline in security value) can either be negotiated once, by an experienced Securities Lead Plaintiff before a nationally-recognized mediator of securities cases chosen by this Court and paid by both sides, or thousands of times to the advantage of Reorganized Debtors and exclusion of numerous investors, including the *pro se*, with small (but valid) claims, and others – all but guaranteed to receive no recovery on their own.

The Ninth Circuit has held that class certification is proper under Rule 23(b)(1)(A) to avoid inconsistencies where a defendant has admitted that proceeding individually would mean "that some [class members] would receive relief while others would not." *See Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 965 (9th Cir. 2016) (affirming Rule 23(b)(1)(A) certification where "[p]rosecuting separate actions in this case would have the result of subjecting [defendant] to incompatible standards of conduct"). Granting the ADR Motion would allow exactly what

---

[7] The appropriate measure of damages for bond claims in Plan Classes 9A and 10B are set by statute and can be determined on a class-wide basis. *See* 15 U.S.C. § 77k(e); *see also* Coffman Decl. ¶ 19.

this Circuit prohibits.  In contrast, class certification enables Securities Lead Plaintiff to negotiate a class-wide outcome that treats all similarly-situated claimants both uniformly and fairly.

### (b)    The "Omnibus Objections" in the ADR Motion compel certification

Reorganized Debtors propose an ADR process that would include "Omnibus Objection Procedures" to eliminate claims that, in their view, "are facially or procedurally defective." ADR Motion at 4 & 11-14.  Reorganized Debtors also intend such procedures to take place after settlement discussions, putting the cart before the horse.  *See id.*

Reorganized Debtors propose omnibus objections for so-called "bulk claims" and "timeliness," presuming that such issues can be determined on an omnibus basis – ***which appears to mean the same as a class-wide basis***.  They also propose a grab-all omnibus objection, "Otherwise Objectionable," described as applying where "Certain Subordinated Securities Claims are objectionable on some other ***common basis***" – presumably a reference to their anticipated defense that the truth of its falsehoods was otherwise known by the market.  *Id.* at 13 (emphasis added).  The proposed omnibus objections include other defenses, such as where a "claimant both bought and sold securities at allegedly inflated prices." ADR Motion at 12-13.  But ultimately, the ADR Motion is vague as to how such "common" objections are to be decided.  It seeks class-wide ***outcomes*** without the procedural protections of class certification.  Put differently, it appears that Reorganized Debtors are trying to reach the mountain-top of having class-wide defenses without making the ascent through the procedures of Rule 23.

Left vague in Reorganized Debtors' proposal is how this Court would make such determinations.  Supposing one Securities Claimant disputes and defeats an "omnibus objection" to its claim, the proposal is unclear how this Court could apply that ruling to other Securities Claimants.  The same uncertainty exists if Reorganized Debtors were successful proving an omnibus objection against one Securities Claimant.  Generally, one entity is not bound by another's result, absent class certification.  *See Hansberry v. Lee*, 311 U.S. 32, 40-41 (1940) ("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party" but "there is a recognized exception" for "a 'class' or 'representative' suit"); *Richards v. Jefferson County*, 517

U.S. 793, 798 (1996) (holding that the application of claim and issue preclusion to nonparties runs up against the "deep-rooted historic tradition that everyone should have his own day in court."). The Supreme Court has disallowed such outcomes "shorn of the procedural protections prescribed in *Hansberry*, *Richards*, and Rule 23." *Taylor v. Sturgell*, 553 U.S. 880, 901 (2008).

In contrast, class certification leaves no ambiguity as to how common defenses would proceed. If mediation results in an impasse, litigation of these issues would follow by an adequate, Court-approved class representative, the results of which bind all Class members under the well-established terms of Rule 23. With a certified class, as described *infra*, this Court could order mediation of these issues or, alternatively, decide Reorganized Debtors' remaining defenses pursuant to the normal class process, avoiding the pitfalls of the ADR proposal. *See Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 260 (D. Mass. 2005) (certifying class with common issues including "whether the so-called truth-on-the-market defense is applicable").

### (c) The ADR Motion ignores numerous, significant threshold issues that can simply be coordinated and adjudicated on a class-wide basis.

The common issues will all need to be addressed – but the ADR Motion provides no clear way to do so. For example, the ADR Motion has no proposal for addressing issues regarding an appropriate damages formula tailored to the allegations at issue.[8]

To avoid the problems that would result if the Court allowed individual ADR, or even proceeded claimant-by-claimant, Rule 23(b)(1)(A) provides for a straightforward process for class-wide resolution. Because of PERA's unique role as District Court-appointed Securities Lead Plaintiff in the Securities Action, it is in a superior position to coordinate these matters. In contrast, Reorganized Debtors' proposal set forth in the ADR Motion advances none of the important, common issues. Accordingly, if Rule 23 is applied to these disputed claims (Section I.B) and the four Rule 23(a) factors are met (Sections II.A.1-4), a Rule 23 (b)(1)(A) class should be certified.

### 2. Under *Ortiz*, Rule 23(b)(1)(B) Mandates Certification Because Proceeding Individually, by ADR or Otherwise, Prejudices Class 10A-II Claimants

The claims of Class 10A-II members qualify as an additional type of class action. This

---

[8] By further example, developments in the District Court Securities Litigation will impact the Securities Claims in these Chapter 11 Cases in unpredictable ways that Lead Plaintiff and Counsel will be in the best position to handle, including complex preclusion issues.

20

species of class action, also known as a "limited fund" class, has been held by the Supreme Court to be **mandatory** when three factors are met:

> In sum, mandatory class treatment through representative actions on a limited fund theory was justified with reference to [1] a 'fund' with a definitely ascertained limit, [2] all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability, [3] by an equitable, pro rata distribution. . . . The Advisory Committee, and presumably the Congress in approving subdivision (b)(1)(B), must have assumed that an action with these characteristics would satisfy the limited fund rationale cognizable under that subdivision.

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841 (1999). As detailed below, all three factors are present here, creating an additional reason why this Court should certify a class for Class 10A-II.

**(a)  The Plan Creates a "Limited Fund" of Shares to Pay Class 10A-II Claims**

Class 10A-II claimants, purely by virtue of being subordinated under Section 510(b), will share in the remainder of the HoldCo's value, in lieu of receiving the cash value of their claims against PG&E. This fact is underscored by the Plan, which provides for payment of Class 10A-II claims in HoldCo equity alone, in amounts insufficient to satisfy Class 10A-II claims in full.

Meanwhile, Reorganized Debtors only have so many shares they can issue. According to PG&E's Amended and Restated Articles of Incorporation, filed with the State of California on June 22, 2020, PG&E is not authorized to issue more than 3.6 billion shares of common stock.[9]

Almost all of those 3.6 billion shares are already spoken for. According to a recent SEC filing, PG&E had "1,941,473,377" shares of common stock outstanding as of June 30, 2020.[10] On the July 1, 2020 Effective Date, HoldCo issued "342,105,261 shares of Common Stock" to finance the Plan as well as an additional "169,000,016 shares of Common Stock" to the Backstop Parties.[11] A subsequent filing details the additional 477,743,590 shares issued to the Fire Victim Trust over two dates in July, as well as 42,337,173 additional shares to the Backstop Parties (as only partial satisfaction of a larger redeemable forward stock purchase agreement).[12] *Id.* And these totals, of **approximately 3 billion shares**, do not include the stock that HoldCo may

---

[9]   *See* Securities Lead Plaintiff's Request For Judicial Notice ("RJN"), Ex. A (PG&E Articles of Incorporation dated June 22, 2020), filed herewith.
[10]  *See* RJN Ex. B (SEC Form 10-Q dated July 30, 2020).
[11]  *See* RJN Ex. C (SEC Form 8-K dated July 2, 2020).
[12]  *See* RJN Ex. D (SEC Form 8-K dated August 3, 2020).

21

continue issue in the coming months. Nor do they include the "large" and "substantial" number of additional shares (in Debtors' own words) earmarked to cover the various anti-dilution provisions to which PG&E has agreed, which further limit the availability of shares PG&E could issue to pay Class 10A-II claimants.[13] With a hard cap at 3.6 billion shares, the common stock available for Debtors to pay Class 10A-II claims is precisely limited. And it is dwindling.

Because the Plan allots a limited pot of available shares as *partial* payment to impaired claims, "the inadequacy of the fund to pay all the claims," *Ortiz*, 527 U.S. at 838, even on a somewhat impaired basis, cannot reasonably be disputed. Indeed, with fewer than 600,000,000 shares that could be issued today (many of which are earmarked for others), Reorganized Debtors could not even cover the $8.6 billion of *liquidated* damages listed in the filed proofs of claim (to say nothing of unliquidated damages) – even if all such shares could issue at the current trading price. *See id.* (fund is "limited" when "the totals of the aggregated *liquidated* claims and the fund available for satisfying them, *set definitely at their maximums*, demonstrate the inadequacy of the fund to pay all the claims"). Thus, the first *Ortiz* factor is met.

### (b) Certification Ensures the Limited Fund Gives the Class "the Best Deal"

The second factor, that certification does "not give a defendant a better deal than *seriatim* litigation would have produced," is satisfied here. *See Ortiz*, 527 U.S. at 839 (analyzing cases, finding "[t]he limited fund cases thus ensured that the class as a whole was given the best deal").

From the perspective of Class 10A-II claimants here, *seriatim* individual litigation would significantly impair claimants' rights compared to a certified class. Indeed, such a divide-and-conquer *seriatim* approach is at the heart of the ADR proposal, which would enable Reorganized Debtors to utilize its attorneys, resources, hand-picked mediators (whom Reorganized Debtors alone pay) and significant bargaining power to take advantage of the most vulnerable,

---

[13] In a Form S-3 Registration Statement that Debtors recently filed with the SEC, Debtors warned investors that the number of shares HoldCo may need to issue was *large*, *significant* and *substantial*. The filing specifically warned (a) of the existence of "the holders of a *large number* of . . . securities convertible into or exercisable for such shares," (b) that "the number of shares of our common stock issuable upon settlement of the purchase contracts that comprise a component of our equity units issued in connection with the Units Offering (as defined herein) may be *substantial*," and (c) that "the settlement rates for the purchase contracts will be subject to certain anti-dilution adjustments that could increase, *potentially significantly*, the number of shares of our common stock issuable upon such settlement." *See* RJN Ex. E (SEC Form S-3 dated July 27, 2020).

unrepresented claimants. And because Class 10A-II claimants are receiving shares, which impact one another as they are issued due to dilution, *seriatim* claims litigation would also vastly favor early recoveries over later ones. Thus, the ADR Motion contemplates exactly that prohibited form of *seriatim* payouts to individuals that Rule 23(b)(1)(B) is designed to prevent. In contrast, class certification is essential to give Class 10A-II "the best deal" as a whole.

As will be confirmed by the Reorganized Debtors' likely objection to this Motion, there is no likelihood that certification will result in a "better deal" for them than a *seriatim* process.

### (c) Class Certification Will Result in "an Equitable, Pro Rata Distribution"

The third factor, that certification will provide "an equitable, pro rata distribution" (*see Ortiz*, 527 U.S. at 839), is guaranteed by the terms of the Plan. Class 10A-II claimants are set to receive a particular pro rata "HoldCo Rescission or Damage Claim Share" calculated according to a formula set forth in the Plan (*see* Plan §1.109), which this Court has already judged to be fair and equitable (*see* Confirmation Order ¶71 [Dkt. No. 8053]). If, in contrast, individual claims proceeded *seriatim*, then recoveries could not possibly be divided equitably or pro rata for two reasons: first, earlier-paid claimants would receive shares that are less diluted; and second, later-paid claimants would bear the risk that the Reorganized Debtors hit their 3.6 billion share cap.

Rather, the only way to ensure "an equitable, pro rata distribution" is through class certification. *See Ortiz*, 527 U.S. at 817, 855-56 (limited fund must "provid[e] for procedures to resolve the difficult issues of treating such differently situated claimants with fairness as among themselves"); *see also In re Drexel Burnham Lambert Grp., Inc*., 960 F.2d 285, 292 (2d Cir. 1992) ("A mandatory class action under Rule 23(b)(1)(B) is thus necessary here to prevent claimants with such motivations [to pursue individual actions] from unfairly diminishing the eventual recovery of other class members."); *In re Dehon, Inc*., 298 B.R. 206, 216 (Bankr. D. Mass. 2003) (certifying a Rule 23(b)(1)(B) class for the holders of "stock repurchase rights," where "the cost of bringing each and every such claim before the Court would impact and impair the distribution to each and every unsecured creditor in the case, whose [stock] dividend is ultimately determined by what is left after administrative costs have been paid").

*       *       *

23

Because the three *Ortiz* factors are met, Class 10A-II constitutes a classic "limited fund" situation where – if Rule 23 applies and all Rule 23(a) factors are met – class certification is "mandatory." *See Ortiz*, 527 U.S. at 841 and Fed. R. Civ. P. 23(b)(1)(B). In contrast, the ADR Motion's aim – to allow Reorganized Debtors to provide varying settlement terms to favored and disfavored claimants – is precisely the circumstance that Rule 23(b)(1)(B) is designed to prevent.

## C. FRAMEWORK FOR IMPLEMENTING SECURITIES LEAD PLAINTIFF'S PROPOSAL

If this Court certifies one or both proposed classes, no multi-stage ADR process requiring 50 pages of proposed procedures, filled with traps for the unwary and strong-arm negotiation against unrepresented claimants overseen by Reorganized Debtor-selected and -paid mediators, will be needed. *Contra* ADR Motion Proposed Order *and* Exs. A-1, A-2, & A-3 [Dkt. No. 8964-1]. Rather, the framework for implementing certification of either class is relatively straightforward.

### 1. *Select a Class Mediator*

Whether this Court certifies a Rule 23(b)(1)(A) class or (b)(1)(B) class (or both), a global settlement will become possible for the first time in these Chapter 11 Cases. This Court should select a nationally-recognized mediator with proven securities litigation experience and order the parties to mediate in good faith. To ensure fairness, the mediator should be paid by both sides.

### 2. *Determine Whether Threshold Issues Should Be Litigated or Mediated*
#### (a) Option 1: Global Mediation

The entirety of Securities Claims may be submitted to a mediator for global resolution without necessarily separating out the discrete common issues. This is true whether the equity and debt claims together are certified under Rule 23(b)(1)(A) (*see* Section II.B.1) or an equity-only class is certified as a mandatory "limited fund" class under *Ortiz* (*see* Section II.B.2).

Either way, this mediation will focus on Allowed Claim amounts, left unresolved by the Plan. To resolve it, the parties will pursue an appropriate damages formula tailored to the alleged stock drops at issue – a device to dictate damages on an objective basis depending on when each claimant bought and sold its securities. Such resolution would have several components.

- The damages owed to different groups of similarly-situated equity Securities Claimants can be calculated according to when each suffered injury, based on:

- False and misleading statements or omissions are alleged to have caused investor losses on nine dates.
- As a result, investors holding Debtor securities on these nine alleged dates suffered compensable damages to measurable extents. The amounts of these different values can be mediated, including adjustment for various defenses. (In addition, the four time periods set forth in the Plan, that have already been determined (*see* Plan §1.109), will be considered as well.)
- Thus, the parties can mediate to determine appropriate damages for equity claimants on a class-wide basis, and damages can be calculated solely on when each claimant bought and/or sold its shares, and in what amounts.

- The damages owed to debt Securities Claimants are even simpler to calculate, set by a statutory formula (*see* 15 U.S.C. § 77k(e)) and treated by the Plan as unimpaired. As such, these claim values can similarly be mediated.

As in the case of thousands of class action settlement structures, once the above damages formula is agreed, all that remains is to mechanically apply these numbers to claimant data based on when they bought and sold the securities at issue, at what prices. *See* Coffman Decl. ¶ 19.

**(b) Option 2: Threshold Issue-Classes Separated for Mediation or Litigation**

Alternatively, this Court may separate out discrete, class-wide issues that bear directly on claim value for resolution as issue classes. *See* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues."); *see also* Section II.A.2, *supra* ("Commonality"). As noted above, global resolution may be hastened by resolving Reorganized Debtors' "omnibus" defenses on a class-wide basis, *e.g.*:

- perhaps most importantly, the permissibility of a single agent filing more than one principal's claims on a single claim form (so-called "bulk claims"),
- timeliness, and
- the availability of their "truth-on-the-market" defense.

The Court may also use issue classes to resolve other issues that directly impact the value of Securities Claims, including matters related to the determination of an appropriate damages

Case: 19-30088    Doc# 9152    Filed: 09/28/20    Entered: 09/28/20 16:04:00    Page 31 of 35

formula for the equity Securities Claimants tailored to the alleged stock drops at issue.

At its option, this Court may order briefing on some or all of the above issues for it to decide on a class-wide basis, or order class-wide mediation of these issues *ab initio* with recourse to this Court only in the event of an impasse. The parties would then be in an advanced position to pursue mediation toward global resolution of the multiple damages issues described above.

Regardless of which option this Court elects, class certification will facilitate global resolution by an ***adequate*** representative in an evenhanded manner.

## <u>CONCLUSION</u>

Class certification is a far superior, quicker, more efficient, and more equitable case management tool than the unfair, slanted proposals in the ADR Motion. This Court should exercise its discretion to apply Rule 7023 to Securities Claims and certify an appropriate class.

Dated: September 28, 2020

Respectfully submitted,

**MICHELSON LAW GROUP**

By:   _/s/ Randy Michelson_
Randy Michelson (SBN 114095)

*Local Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

- and -

**LABATON SUCHAROW LLP**

*Lead Counsel to Securities Lead Plaintiff and the Class*

- and -

**LOWENSTEIN SANDLER LLP**

*Special Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

- and -

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**

*Liaison Counsel for the Class*

- and -

**ROBBINS GELLER RUDMAN & DOWD LLP**

*Counsel for the Securities Act Plaintiffs*

- and -

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**

*Additional Counsel for the Securities Act Plaintiffs*

**EXHIBIT A**
**COUNSEL**

**LABATON SUCHAROW LLP**
Thomas A. Dubbs
Carol C. Villegas
Jeffrey A. Dubbin (SBN 287199)
Aram Boghosian
140 Broadway
New York, New York 10005
Telephone  212-907-0700
tdubbs@labaton.com
cvillegas@labaton.com
jdubbin@labaton.com
aboghosian@labaton.com

*Lead Counsel to Securities Lead Plaintiff and the Class*

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
James M. Wagstaffe (SBN 95535)
Frank Busch (SBN 258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone  415-357-8900
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for the Class*

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin *(pro hac vice)*
Andrew Behlmann *(pro hac vice)*
Scott Cargill
Colleen Maker
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone  973-597-2500
Facsimile  973-597-2333
metkin@lowenstein.com
abehlmann@lowenstein.com
scargill@lowenstein.com
cmaker@lowenstein.com

*Special Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

**MICHELSON LAW GROUP**
Randy Michelson, Esq. (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, CA 94104
Telephone  415-512-8600
Facsimile  415-512-8601
randy.michelson@michelsonlawgroup.com

*Local Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Darren J. Robbins (SBN 168593)
Brian E. Cochran (SBN 286202)
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone  619-231-1058
darrenr@rgrdlaw.com
bcochran@rgrdlaw.com

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**
Thomas C. Michaud
79 Alfred Street
Detroit, Michigan 48201
Telephone  313-578-1200
tmichaud@vmtlaw.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
Willow E. Radcliffe (SBN 200089)
Kenneth J. Black (SBN 291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone  415-288-4545
willowr@rgrdlaw.com
kennvb@rgrdlaw.com

*Additional Counsel for the Securities Act Claims*

# EXHIBIT B
## RESERVATION OF RIGHTS

This Notice, and any subsequent pleading, appearance, argument, claim, or suit made or filed by Lead Plaintiff, either individually or for the Class or any member thereof, do not, shall not, and shall not be deemed to:

a. constitute a submission by Lead Plaintiff, either individually or for the Class or any member thereof, to the jurisdiction of the Bankruptcy Court;

b. constitute consent by Lead Plaintiff, either individually or for the Class or any member thereof, to entry by the Bankruptcy Court of any final order or judgment, or any other order having the effect of a final order or judgment, in any non-core proceeding, which consent is hereby withheld unless, and solely to the extent, expressly granted in the future with respect to a specific matter or proceeding;

c. waive any substantive or procedural rights of Lead Plaintiff or the Class or any member thereof, including but not limited to (a) the right to challenge the constitutional authority of the Bankruptcy Court to enter a final order or judgment, or any other order having the effect of a final order or judgment, on any matter; (b) the right to have final orders and judgments, and any other order having the effect of a final order or judgment, in non-core matters entered only after de novo review by a United States District Court judge; (c) the right to trial by jury in any proceedings so triable herein, in the Chapter 11 Cases, including all adversary proceedings and other related cases and proceedings (collectively, "Related Proceedings"), in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, the Chapter 11 Cases, any Related Proceedings, or the Securities Litigation; (d) the right to seek withdrawal of the bankruptcy reference by a United States District Court in any matter subject to mandatory or discretionary withdrawal; or (e) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Lead Plaintiff or the Class or any member thereof are or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved.

For the avoidance of doubt, Lead Plaintiff, on behalf of itself and the Class, does not, and will not impliedly, consent to this Court's adjudication of the claims asserted against any Non-Debtor Defendants now or hereafter named in the Securities Litigation.