**LABATON SUCHAROW LLP**
Thomas A. Dubbs
Carol C. Villegas
Jeffrey A. Dubbin (SBN 287199)
140 Broadway
New York, New York 10005

*Lead Counsel to Lead Plaintiff and the Proposed Class*

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Local Bankruptcy Counsel to Lead Plaintiff and the Proposed Class*

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
Scott Cargill
Colleen Maker
One Lowenstein Drive
Roseland, New Jersey 07068

*Special Bankruptcy Counsel to Lead Plaintiff and the Proposed Class*

Additional counsel listed on Exhibit A

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br>☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | Case No. 19-30088 (DM) (Lead Case)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br><br>**SECURITIES LEAD PLAINTIFF'S OBJECTION TO REORGANIZED DEBTORS' MOTION TO APPROVE SECURITIES ADR AND RELATED PROCEDURES FOR RESOLVING SUBORDINATED SECURITIES CLAIMS**<br><br>Date: October 28, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Before: Video Conference<br><br>**Objection Deadline:** October 5, 2020, 4:00 p.m. (Pacific Time) |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

OBJECTION..................................................................................................................................4

I. THE SECURITIES CLAIMS INFORMATION PROCEDURES IMPERMISSIBLY PLACE THE BURDEN OF PROOF ON SECURITIES CLAIMANTS ............................4

II. THE SECURITIES ADR PROCEDURES ARE NOT A FAIR AND COST-EFFECTIVE WAY TO RESOLVE DISPUTES RELATING TO SECURITIES CLAIMS .........................................................................................................................8

    A. The Offer Procedures ............................................................................................9

    B. The Mediation Process..........................................................................................9

        1. The Abbreviated Mediation Process........................................................10

        2. The Standard Mediation Process .............................................................10

III. THE OMNIBUS OBJECTION PROCEDURES PROVIDE INAPPROPRIATE GROUNDS TO OBJECT TO SECURITIES CLAIMS ......................................................11

CONCLUSION.............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hansberry v. Lee*,
   311 U.S. 32 (1940) ...................................................................................................... 13

*In re Liberty Asset Mgmt. Corp.*,
   No. 2:16-bk-13575-ER, 2019 WL 12287 (Bankr. C.D. Cal. Jan. 7, 2019) ..................... 4, 7

*Lundell v. Anchor Constr. Specialists, Inc.*,
   223 F.3d 1035 (9th Cir. 2000) ........................................................................................ 4

*In re McNemar*,
   No. 18-40208 CN, 2019 WL 2482866 (Bankr. N.D. Cal. May 3, 2019) ........................ 4

*Richards v. Jefferson County*,
   517 U.S. 793 (1996) .................................................................................................... 13

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) .................................................................................................... 13

**Statutes**

Bankruptcy Code § 502(a) .................................................................................................... 4

**Other Authorities**

Bankruptcy Rule 3001(f) ...................................................................................................... 4

Bankruptcy Rule 3007(d): (i) .............................................................................................. 12

Northern District of California ADR Local Rule 6-3 ......................................................... 9

Rescission or Damage Claims, *https://restructuring.primeclerk.com/pge/Home-ClaimInfo?RescissionorDamage=MTY* ............................................................................. 5

Public Employees Retirement Association of New Mexico ("**Securities Lead Plaintiff**" or "**PERA**"), the court-appointed lead plaintiff in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**") pending in the U.S. District Court for the Northern District of California (the "**District Court**"), as lead plaintiff for the proposed class it represents in the Securities Litigation (the "**Class**") and as a creditor in the chapter 11 bankruptcy cases (the "**Chapter 11 Cases**") of the above-captioned debtors (as reorganized pursuant to the Plan (as defined below), the "**Reorganized Debtors**"), together with York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund (together with Securities Lead Plaintiff, "**Securities Plaintiffs**"), hereby submit this objection (the "**Objection**") to the motion (the "**Motion**" or the "**ADR Motion**") [ECF No. 8964] of the Reorganized Debtors for entry of an order approving certain procedures relating to unresolved Subordinated Debt and Equity Claims classified in Classes 9A (the "**Class 9A Claims**" or "**HoldCo Subordinated Debt Claims**"), 10B (the "**Class 10B Claims**" or "**Utility Subordinated Debt Claims**"), and 10A-II (the "**Class 10A-II Claims**" or "**HoldCo Rescission or Damage Claims,**" and, together with the Class 9A Claims and Class 10B Claims, the "**Securities Claims**"). Also joining in support of the Objection is New Orleans Employers - International Longshoremen's Association, AFL-CIO Pension Fund. Securities Lead Plaintiff respectfully states as follows:

## PRELIMINARY STATEMENT[1]

Before the Court is the Reorganized Debtors proposal on how the approximately 7000 Securities Claims should be adjudicated. Their ADR Motion makes one thing very clear: the ADR process is specifically designed to benefit the Reorganized Debtors and the Reorganized Debtors alone. Each part of the so-called "streamlined" process creates unnecessary roadblocks to recovery, seeking to deter Securities Claimants from pursuing valid claims rather than seeking to resolve them. Another collective resolution process must be adopted.

---

[1] Capitalized terms not defined in this Preliminary Statement shall have the meanings set forth in this Objection.

The Motion proposes that each securities claim be addressed separately (despite their being common issues) in thousands of unconnected proceedings, via the Securities ADR Procedures, or by this Court. These Securities ADR Procedures requiring (1) duplicative information gathering (where the Reorganized Debtors inexplicably require all claimants to resubmit duplicative information or forfeit their claim), (2) a "take-it-or-leave-it" one-sided mediation (where the Reorganized Debtors call all the shots, including picking, paying, and privately instructing the mediator, and deciding who gets to go to mediation and who gets left out), and (3) an objection process (where the Reorganized Debtors get to trot out a laundry list of objections to presumptively valid claims) *are just not fair*. Claimants are effectively shunted through a morass of a process—with each "stage" requiring an understanding of complicated rules, where one false step leads to a claim being denied with no recourse.

Indeed, this so-called "streamlined" ADR process took over 280 pages to explain and, even then, did not lay out all the rules, forms, or hurdles each claimant would have to jump through. The ADR process is neither efficient nor in the interest of judicial economy. It will require thousands of claimants to retain counsel (if they can afford it) and spend resources to navigate its unnecessarily complex procedures, effectively reducing the amount of recovery (if any) of Securities Claimants. The Reorganized Debtors hope this process will result in many claimants throwing their hands up in frustration and walking away—effectively being dispossessed of their rights to recover. Nevertheless, this Court will still have to resolve a myriad of claims.

Based on the conduct of Reorganized Debtors to date, their audacious proposal is unsurprising. During the June 24, 2020 hearing on the Reorganized Debtors' *Motion for Order Approving (A) Procedures for Filing Omnibus Objections to Claims and (B) the Form and Manner of the Notice of Omnibus Objections* [ECF 7758] (the "**Initial Claims Procedures Motion**"), this Court directed Reorganized Debtors to work with Securities Lead Plaintiff and its counsel to create an efficient claims resolution procedure for Securities Claimants. The Court

expressed optimism for such a procedure due to the common features of the Securities Claims.[2]

While Securities Lead Plaintiff reached out to Reorganized Debtors and scheduled a call to begin that process, Reorganized Debtors offered no constructive proposal. The Reorganized Debtors then unilaterally filed the Motion with no input from Securities Lead Plaintiff.[3]

It is apparent that Reorganized Debtors' Motion is intended to use procedure to bar Securities Claimants from recovery, regardless of the substantive merit of their claims. This is accomplished through a vague, burdensome, and one-sided process whereby Reorganized Debtors are solely responsible for picking the mediators, paying the mediators and privately instructing them prior to hearing claims. Reorganized Debtors should not be permitted to game the system in this manner to prevent the victims of their fraudulent conduct from recovering.

In short, the Securities ADR Procedures fail to provide adequate due process to the Securities Claimants defrauded by Reorganized Debtors—a group that includes the pension and retirement assets of countless individuals. It also does not provide the efficient approach the Court requested.[4]

The Motion must be denied.

---

[2] *See* Transcript of June 24, 2020 Hearing; p. 16:4-9; p. 19:14-20:24, p.47:16-48:12 (noting likelihood that proofs of claim for Securities Claimants would be indicative of a prima facie case and that Reorganized Debtors' opposition would likely be similar for all Claimants and need for a procedure to resolve Securities Claims).
[3] Reorganized Debtors assert that the Proposed ADR process does not apply Securities Lead Plaintiff. This is without merit. Motion at 10 n.2. While mediation has taken place, it involved the class-wide claims at issue in the district court, rather than only PERA's individual claims, in addition to claims brought in this Court. As such, the carveout for PERA in the Motion proceeds from a flawed premise.
[4] The Reorganized Debtor's Motion attempts to shoehorn the Securities Claimants into a nearly identical procedure as the process approved to resolve general unsecured claims, after this Court already indicated that the Securities Claims are fundamentally different from general unsecured claims and should follow a different procedure. Transcript of June 24, 2020 Hearing; p. 16:4-9; p. 19:14-20:24, p.47:16-48:12. ("There is a whole process [in the District Court] of a new claims procedure that was implemented here that made a number – made 6,000 claimants file claims.") Accordingly, on June 24, 2020, this Court ordered that the Securities Claims be excluded from the omnibus claims objection procedures in order to afford parties the opportunity to work together to develop a separate, more appropriate collective procedure for addressing the Securities Claims.

## OBJECTION

The Motion seeks approval of the "**Securities Claims Information Procedures**," the "**Securities ADR Procedures**," and the "**Securities Omnibus Objection Procedures**" as described below (collectively, the "**Securities Claims Procedures**").

Reorganized Debtors argue these procedures should be adopted because they are efficient, as parties will not require a lawyer, and a settlement could conceivably be reached quickly. Motion at 19. This underscores the vice, rather than the virtue, of the Motion. And it does not excuse the one-sided and unfair nature of the summary procedures, which, as discussed below, will greatly disadvantage parties who are forced to prosecute their claims independently without representation of counsel. Any benefit to an efficient and summary process is undermined when cumbersome procedures are adopted that are unfair to Securities Claimants and unrecognizable as a standard bankruptcy process.

### I. THE SECURITIES CLAIMS INFORMATION PROCEDURES IMPERMISSIBLY PLACE THE BURDEN OF PROOF ON SECURITIES CLAIMANTS

The first aspect of Reorganized Debtors' proposal, the Securities Claims Information Procedures, impose unacceptable burdens on Securities Claimants alone.

First, even if Reorganized Debtors' proposed procedures were workable, which they are not, they are contrary to law. A proof of claim is deemed allowed unless objected to under Bankruptcy Code § 502(a), and the proof of claim is considered "*prima facie* evidence of the validity and amount of the claim pursuant to Bankruptcy Rule 3001(f)." *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). "To overcome the presumption of validity created by a timely-filed proof of claim, an objecting party must do one of the following: (1) object based on legal grounds and provide a memorandum of points and authorities setting forth the legal basis for the objection; or (2) object based on a factual ground and provide sufficient evidence (usually in the form of declarations under penalty of perjury) to create triable issues of fact." *In re Liberty Asset Mgmt. Corp.*, No. 2:16-bk-13575-ER, 2019 WL 122827, at *5 (Bankr. C.D. Cal. Jan. 7, 2019); *see also In re McNemar*, No. 18-40208 CN, 2019 WL 2482866, at *1 (Bankr. N.D. Cal. May 3, 2019) ("To defeat a claim, the objector must come forward with sufficient evidence and show facts tending to default the claim by probative force

equal to that of the allegation of the proofs of claim themselves.") (internal quotations omitted).

If approved, the procedures will require Securities Claimants to submit to Reorganized Debtors additional unspecified trading data, resubmit their original data, and provide certain other information "to evaluate the individual Subordinated Securities Claims and to calculate potential damages," even though thousands of Securities Claimants have already provided Reorganized Debtors with proofs of claim containing detailed trading information, as requested in the Court's February 27, 2020 Order extending the bar date to April 16, 2020 solely for the holders of Securities Claims to file individual proofs of claim (the "**Extended Bar Date Notice**"). The Securities Plaintiffs timely filed individual and class proofs of claim against each of the Reorganized Debtors on October 21, 2019, asserting claims based upon the allegations in made in the Securities Litigation.[5]

The intent here is clear. This is once again a transparent attempt by Reorganized Debtors to "redo" the claims filing process and subject Securities Claimants to the burden of filing trading data as Reorganized Debtors see fit. This process will inevitability lead to fewer claims being considered, regardless of their merit, as many Securities Claimants, especially those with smaller claims, will forgo this burdensome process. As discussed below, if a Securities Claimant does not timely or properly submit and resubmit this additional evidence, the Securities Claimant will be subject to disallowance by the Reorganized Debtors on that basis.

Reorganized Debtors' information-gathering procedures are unreasonable. To begin, the deadlines are unnecessarily tight. The Securities Claims Information Procedures propose that Reorganized Debtors will mail claim information materials to Securities Claimants at the address

---

[5] As of the date of this Objection, Debtors' claims agent has processed at least 7,041 proofs of claim asserting liquidated claim amounts exceeding $8.6 billion. However, those figures are almost certainly significantly understated because (a) several authorized agents filed bulk proofs of claim consolidating the claims of numerous individual clients (adding hundreds, possibly thousands of claims to the 7,041), and (b) numerous claimants, including large institutional investors, submitted unliquidated proofs of claim (not included in the $8.6 billion). *See* Prime Clerk's schedule of Rescission or Damage Claims, *https://restructuring.primeclerk.com/pge/Home-ClaimInfo?RescissionorDamage=MTY*. However, the total number of claims, and the value of such claims, are much higher than the amounts listed because many claimants filed joint or "bulk" claims and/or indicated an "unliquidated" or unknown amount for their claim, which may make the amount of total claims well **in excess of $10 billion**.

listed on their most recently filed proof of claim, and (if applicable) at the address for their counsel. Motion at 12. Securities Claimants will then have only 28 days to complete and return the requested information. *Id*. Such a rapid turnaround would not be realistic during normal times—and the proposal is indefensible during a pandemic where many individuals may not have ready access to their business mail. This problem is in no way cured by the information reminder procedure that provides an additional 14 days from the date that the reminder is sent for Securities Claimants to act. *Id*. at 14. The obvious purpose of these deadlines is to create a basis to object to as many claims as possible on non-substantive grounds. Indeed, Reorganized Debtors provide no rationale for why this burdensome time frame is justified, when Reorganized Debtors waited until September to make their proposal after the June 24 hearing.

Reorganized Debtors further propose that Securities Claimants be required to provide their "complete trading history, in transaction-level detail" of the relevant securities during the class period. Motion at 13. Providing data on a trade-by-trade basis is overly burdensome for large institutional investors and for individuals. As noted in the attached declaration provided by A.B. Data at ¶¶ 10-14, the standard process for claims administration is to create a searchable electronic database for claims, which provides the ability to easily supplement incomplete claims when filed. Such databases do not require submissions to include individualized "transaction-level detail" when claims are filed. *Id*. at ¶¶ 7-9 (noting that claims typically may combine numerous transactions of multiple parties).

Reorganized Debtors have also proven to be unreliable custodians of claims data. After Reorganized Debtors' failure to provide relief to Securities Claimants through an extended bar date, Reorganized Debtors' Motion admits they failed to gather information sufficient to make a single settlement offer. *See* Motion at 12 ("Without this information, the Reorganized Debtors cannot reasonably develop settlement offers for any Subordinated Securities Claimant."). Instead of acknowledging their failures as a custodian, Reorganized Debtors now seek to shift the burden to the Securities Claimants.

Despite Reorganized Debtors crafting a proof of claim form specially tailored to evaluate the Rescission or Damage Claims, and despite the deemed validity of the filed claims,

Reorganized Debtors now argue that they need more information from Securities Claimants before any evaluation of the merits of the claims or settlement process can occur. They do not advise this Court of a single deficient claim. The Securities Claims Information Procedures require Securities Claimants to complete a purportedly improved Trading Information Request (the precise form of which is not detailed in the Motion), seeking all previously submitted information plus new, but undefined—theoretical—and potentially nonexistent, information that Reorganized Debtors had initially decided not to request in the Rescission or Damage Proof of Claim Form.

If the information requested is not provided by the Reorganized Debtors' deadline or is otherwise not to Reorganized Debtors' liking, Reorganized Debtors will object to the claim on those summary grounds, undermining the purpose of the presumption of validity and the bankruptcy claims process. In other words, the Reorganized Debtors are manufacturing a basis for an objection not contemplated by—and contrary to—the Extended Bar Date Notice. Requiring Securities Claimants to proceed through these additional formalities, which no law makes essential, can have no motivation other than a trap for the unwary: to supply the Reorganized Debtors *not* with necessary information, but rather, with an additional technical ground to move for disallowance of an otherwise valid claim. This is likely to harm Securities Claimants, especially those who have not retained counsel. Imposing such a requirement is entirely at odds with the principle that a proof of claim is *prima facie* evidence of a prima facie valid claim. *See Liberty*, 2019 WL 122827, at *5 ("Upon objection, a proof of claim provides 'some evidence to its validity and amount' and is strong enough to carry over a mere formal objection without more.") (internal quotations omitted), *citing Lundell*, 223 F.3d at 1039. Moreover, it was never contemplated in Reorganized Debtors' Extended Bar Date Notice.

There is also no justification for forcing presumptive victims of fraud to bear the consequences of Reorganized Debtors' admittedly inaccurate claims form, rather than the Reorganized Debtors themselves. This unfairness is furthered by the thoroughly burdensome nature of Reorganized Debtors' proposal.

7
Case: 19-30088    Doc# 9189    Filed: 10/05/20    Entered: 10/05/20 14:44:21    Page 10 of 19

## II. THE SECURITIES ADR PROCEDURES ARE NOT A FAIR AND COST-EFFECTIVE WAY TO RESOLVE DISPUTES RELATING TO SECURITIES CLAIMS

The second aspect of Reorganized Debtors' proposal, the Securities ADR Procedures, undermine any hope for a fair resolution of Securities Claims. Should the Reorganized Debtors unilaterally decide that the additional information sought through the Securities Claims Information Procedures is satisfactory, Reorganized Debtors ask this Court for the power to determine in their "sole discretion" whether to apply one of three separate ADR mechanisms: (1) "the Offer Procedures," which will permit the Reorganized Debtors and each Securities Claimant to exchange settlement offers confidentially without mediation; (2) "the Abbreviated Mediation Process" for mandatory, non-binding mediation to be used for smaller asserted or potential claim amounts; and (3) "the Standard Mediation Process" for regular mandatory, non-binding mediation for larger asserted or potential claims. Motion at 14-16. Securities Claimants will have no input in determining which Securities ADR Procedure is appropriate for their particular claims. The one-sided nature of these processes is further compounded because, under either mediation process, the Reorganized Debtors also retain the exclusive right to pick, pay for and "work with the Panel of Mediators . . . ***to develop a process of fair distribution of*** . . . Mediations among the mediators." (*See* Motion at 22; 25 emphasis added), while retaining the "discretion to prioritize the initiation of mandatory mediations as they see fit." Motion at 29.

Further, the three different ADR mechanisms each has substantive defects that have no explanation in law or practicality, sounding only in unfairness.

Reorganized Debtors will select which Securities ADR Procedure applies, affording them discretion to subject thousands of Securities Claimants to individualized mandatory mediation. Besides being time-consuming and expensive for both the Reorganized Debtors' estates and the individual Securities Claimants, this process will also ensure inconsistent treatment of similar claims. While the outcomes of the proposed mediations will be inconsistent with each other, they can be expected to be unfair.

### A. The Offer Procedures

The Offer Procedures fail to provide Securities Claimants with the ability to settle their claims at a fair value—as only Reorganized Debtors will possess crucial information about the substantive merits of claims when offers are exchanged. In contrast, Reorganized Debtors (as the parties that committed the frauds at issue) have a significant information advantage. The take-it-or-leave-it Securities ADR Procedures will provide Securities Claimants with no opportunity to make an informed decision as to whether they should accept the offer. Given their lack of guaranteed representation, the tight deadlines, and the uncertain process should they be referred back to this Court to face a litany of objections from Reorganized Debtors, Securities Claimants will face unreasonable pressure to settle their claims at a discount. This is especially true for unsophisticated and unrepresented Securities Claimants as well as those Securities Claimants with smaller damages claims.

### B. The Mediation Process

The Securities ADR Procedures further heighten settlement pressure on Securities Claimants by giving PG&E the unilateral power to select mediators with no input from Securities Claimants. While the proposal contemplates approval of the mediators by this Court, it provides no procedure for that process to be uniform, effective, and avoid undue burden to this Court. To the contrary, as described above, the Reorganized Debtors' proposal leaves almost all authority in the hands of their hand-picked mediators, who play a ministerial role subject to the Reorganized Debtors' approval. Equally troubling, there is no provision for selecting mediators with significant experience in handling securities fraud actions with national stature to be effective. Furthermore, even where mediators are appointed by courts, without input from one of the parties, procedures are typically established for a party to object to a mediator. *See*, *e.g.*, Northern District of California ADR Local Rule 6-3 (allowing a party to object to a court-appointed mediator when there is a perceived conflict of interest). The lack of such a procedure is made more problematic by Reorganized Debtors' proposal that they, rather than this Court, initially select the mediators. This process does not even provide the appearance of fairness.

Should a Securities Claimant resist the immense pressure to settle at a discount, Reorganized Debtors will use information gained about claimants' negotiating positions to decide (at their sole discretion) whether to refer the claim to the Standard Mediation Process or back to this Court.

### *1. The Abbreviated Mediation Process*

The Abbreviated Mediation Process will be particularly burdensome for unsophisticated investors forced to respond to PG&E's position, on a tight deadline of just one week, most of whom are not represented by counsel. This transforms what should have been a virtue of the bankruptcy claims system, the presumption of validity and decreased need for representation, into little better than a trap for the unwary. Alternatively, such investors may be forced to hire counsel, forcing them to weigh that expenditure against the value of their claims.

The Securities ADR Procedures further allow Reorganized Debtors to abuse the process for selecting which mediation procedure is utilized. Under the proposal, a debtor looking to minimize its liability could easily shunt unrepresented, unsophisticated investors with smaller claims into the "standard mediation procedure," a more formal process that practically compels retention of counsel (which may not be economical for such claims). The Motion also allows Reorganized Debtors to refer such a claimant to the standard mediation process ***after*** the abbreviated mediation process results in an impasse. This provides Reorganized Debtors additional information about the sophistication and negotiating position of a Securities Claimant before Reorganized Debtors make their choice as to how Reorganized Debtors will handle their claim. Justice cannot be expected from such transparently unfair procedures.

### *2. The Standard Mediation Process*

The Standard Mediation Process is burdensome for large institutions, who will be forced to send a representative to each mediation. Motion at 22-23 (stating that if a Securities Claimant is not a natural person, it must send an Authorized Representative). This problem is heightened by the feature that such representatives must have "have complete (and not limited) authority to settle without reversion to others not attending the Abbreviated Mediation" unless otherwise agreed. *Id.* at 23. In the case of institutional investors, this would likely mean that a senior

executive would be required to attend each mediation. Even legal counsel would generally be insufficient to meet this unusual and extraordinarily high bar unless the General Counsel herself was present. This would unreasonably burden such institutions and is again intended to create non-substantive barriers for the successful prosecution of Securities Claims.

In addition, the Standard Mediation Process provides Reorganized Debtors with the opportunity to punt claims back to this Court, when it becomes apparent that such claims have merit, only to face the Omnibus Objections after mediation. *See infra* at Point III. This is because the mediators selected by Reorganized Debtors will be able to use their position to access additional information about the trades of Securities Claimants. It is standard in mediations that mediators, who are selected and paid for by the Reorganized Debtors, may request information from parties for their sole review. If a review of such information shows that a claim likely has merit, the mediator may exercise their standard discretion to end the mediation. This is because any offer Reorganized Debtors would be willing to make in this framework would likely be insufficient. Consequently, the Standard Mediation Process is likely to waste the time and resources of those holding meritorious claims, without offering the realistic possibility of a fair settlement.

Further demonstrating the unequal bargaining positions of the parties in the Standard Mediation Process, the Reorganized Debtors propose empowering their selected and paid for mediators with the exclusive authority to terminate the mediation, rather than allowing either party to withdraw at any time they see fit. To be clear, this process would give the Reorganized Debtors exclusive authority to decide if mediation was appropriate and its hand-selected mediators exclusive authority to end the mediation. Rather than an arm's length negotiation, the Reorganized Debtors have proposed procedures that violates the due process rights of Securities Claimants and is now asking this Court to bless their transparently unfair proposal.

### III. THE OMNIBUS OBJECTION PROCEDURES PROVIDE INAPPROPRIATE GROUNDS TO OBJECT TO SECURITIES CLAIMS

The final aspect of the proposed Securities Claims Procedures presents some of the most troublingly unfair aspects that threaten Securities Claimants' due process rights. Rather than

return to this Court to seek resolution of any unresolved issues from mediation, for any Securities Claims not settled, Reorganized Debtors seek authority to object to the Securities Claims on five grounds in addition to the grounds provided for in Bankruptcy Rule 3007(d): (i) "outside the subject period," for Securities Claims which do not relate to the Class Period; (ii) "liquidation of position prior to a 'corrective disclosure'" for Securities Claimants who sold his or her entire position before any corrective disclosure (with no explanation of which corrective disclosures will be applied); (iii) "failure to comply with Securities Claims Information Procedures" to disallow Securities Claims if the information sought through the Securities Claims Information Procedures is not provided timely or properly; (iv) "unauthorized bulk claims" to disallow claims filed by third parties, such as Nominees, on behalf of multiple claimants, and (v) "otherwise objectionable" as a catch-all for any other basis, including failure to file timely claims by the original claim deadline or Extended Bar Date. Motion at 17-18. Thus, all these admittedly common issues that can be fatal to a claim are purposefully put after mediation. This gives additional leverage to the Reorganized Debtors, making evaluation of any claim more difficult for Securities Claimants.

These categories serve no purpose besides distancing the proposal from the presumption of claim validity and objections already provided by the Bankruptcy Code. Instead, they appear to be motivated solely to provide Reorganized Debtors with the opportunity to resolve substantive issues in their favor. Most notably, the catch-all category of "Otherwise Objectionable," is described as applying where "Certain Subordinated Securities Claims are objectionable on some other common basis." Motion at 18. This cavernous objection is so wide as to allow full defenses bearing on the substantive merits of the Securities Litigation, such as the anticipated defense that truth about Reorganized Debtors' alleged false statements was already known to Securities Claimants. The proposed objections include other substantive defenses, such as where a "claimant both bought and sold securities at allegedly inflated prices." *Id.* at 17.

There is no principled basis for such a process that unilaterally benefits Reorganized Debtors against presumptively valid claims. It is incompatible with due process for Reorganized Debtors to adjudicate their objections in an omnibus manner, without the procedural protections

afforded by class certification, while not affording Securities Claimants the same opportunity to resolve global issues in their favor (either through a class action or a less one-sided procedure).

The Securities Claims Objection Procedures would also prevent Reorganized Debtors' proposed disallowance of "bulk" claims, even where there is no substantive deficiency, which would deny recovery to thousands of investors simply because they filed a claim in a streamlined and efficient manner through a duly authorized agent. This would also be unfair to institutional investors, including those who administer retirement plans, who typically utilize third parties to file securities claims and were not prevented from doing so earlier in this process. It would also be a reversal of procedures already utilized in this action, as Prime Clerk previously accommodated the filing of bulk claims, demonstrating the lack of any compelling reason to exclude such claims. Reorganized Debtors seek to manufacture a basis to disallow meritorious claims for no valid purpose.

The Securities Claim Objection Procedures, by suggesting collective outcomes for omnibus objections, creates due process violations. One entity is not bound by another's result, absent class certification. See *Hansberry v. Lee*, 311 U.S. 32, 40-41 (1940) ("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party" but "there is a recognized exception" for "a 'class' or 'representative' suit"); *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996) (holding that applying claim and issue preclusion to nonparties runs up against the "deep-rooted historic tradition that everyone should have his own day in court."). The Supreme Court has disallowed such outcomes "shorn of the procedural protections prescribed in *Hansberry*, *Richards*, and Rule 23." *Taylor v. Sturgell*, 553 U.S. 880, 901 (2008).

Reorganized Debtors claim that "[t]hese Securities Claims Procedures are designed to facilitate and simply the resolution of certain proofs of claim" that have been filed. (Motion at 8). However, upon analysis, the process will only "facilitate and simplify" Reorganized Debtors intent to deny valid claims rather than resolve them. The motion must be denied.

[ *signature page follows* ]

## CONCLUSION

For all of the foregoing reasons, Securities Plaintiffs respectfully request that this Court enter an Order denying the Motion and granting such other and further relief as may be just and proper.

Dated: October 5, 2020

**LOWENSTEIN SANDLER LLP**
**MICHELSON LAW GROUP**

By: */s/ Randy Michelson*
Randy Michelson (SBN 114095)

*Bankruptcy Counsel to Lead Plaintiff and the Class*

# EXHIBIT A
## COUNSEL

**LABATON SUCHAROW LLP**
Thomas A. Dubbs
Carol C. Villegas
Jeffrey A. Dubbin (SBN 287199)
140 Broadway
New York, New York 10005
Telephone   212-907-0700
tdubbs@labaton.com
cvillegas@labaton.com
jdubbin@labaton.com

*Lead Counsel to Lead Plaintiff and the Proposed Class*

**MICHELSON LAW GROUP**
Randy Michelson, Esq. (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, CA 94104
Telephone   415-512-8600
Facsimile   415-512-8601
randy.michelson@michelsonlawgroup.com

*Local Bankruptcy Counsel to Lead Plaintiff and the Proposed Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Darren J. Robbins (SBN 168593)
Brian E. Cochran (SBN 286202)
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone   619-231-1058
darrenr@rgrdlaw.com
bcochran@rgrdlaw.com

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**
Thomas C. Michaud
79 Alfred Street
Detroit, Michigan 48201
Telephone   313-578-1200
tmichaud@vmtlaw.com

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
Scott Cargill
Colleen Maker
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone   973-597-2500
Facsimile   973-597-2333
metkin@lowenstein.com
abehlmann@lowenstein.com

*Special Bankruptcy Counsel to Lead Plaintiff and the Proposed Class*

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
James M. Wagstaffe (SBN 95535)
Frank Busch (SBN 258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone   415-357-8900
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for the Proposed Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Willow E. Radcliffe (SBN 200089)
Kenneth J. Black (SBN 291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone   415-288-4545
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

*Additional Counsel for the Securities Act Plaintiffs*