| | |
|---|---|
| 1 | **LABATON SUCHAROW LLP** |
| | Thomas A. Dubbs (*pro hac vice*) |
| 2 | Carol C. Villegas (*pro hac vice*) |
| | Jeffrey A. Dubbin (SBN 287199) |
| 3 | 140 Broadway |
| | New York, New York 10005 |

**LABATON SUCHAROW LLP**
Thomas A. Dubbs (*pro hac vice*)
Carol C. Villegas (*pro hac vice*)
Jeffrey A. Dubbin (SBN 287199)
140 Broadway
New York, New York 10005

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
Scott Cargill
Nicole Fulfree
Colleen Maker
One Lowenstein Drive
Roseland, New Jersey 07068

*Lead Counsel to Lead Plaintiff and the Class*

*Bankruptcy Counsel to Lead Plaintiff and the Class*

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Bankruptcy Counsel to Lead Plaintiff and the Class*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

In re:

PG&E CORPORATION

- and –

PACIFIC GAS AND ELECTRIC
COMPANY,

Debtors.

☒ Affects Both Debtors
☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company

Case No. 19-30088 (DM) (Lead Case)

Chapter 11

(Jointly Administered)

**DECLARATION OF ADAM D. WALTER ON BEHALF OF A.B. DATA LTD. CONCERNING SECURITIES LEAD PLAINTIFF'S OBJECTION TO REORGANIZED DEBTORS' MOTION TO APPROVE SECURITIES ADR AND RELATED PROCEDURES FOR RESOLVING SUBORDINATED SECURITIES CLAIMS**

Adam D. Walter hereby declares as follows, pursuant to 28 U.S.C. § 1746:

1. I am a Senior Project Manager of A.B. Data, Ltd.'s Class Action Administration Division ("**A.B. Data**"), whose Corporate Office is located in Milwaukee, Wisconsin.

2. I am providing this declaration to supplement my previous declaration and in support of Securities Lead Plaintiff's Objection to Reorganized Debtors' Motion to Approve Securities ADR and Related Procedures for Resolving Subordinated Securities Claims and to provide the Court and the parties to this proceeding information about the standard procedures and methods that are used to gather and process claim data and notify claimants about deficiencies in their claims. I make this declaration based on personal knowledge and, if called to testify, I could and would do so competently.

3. As noted in my previous declaration, A.B. Data has been a court-appointed administrator and has successfully implemented notification and claims administration programs in hundreds of class actions. Members of our team have administered many noteworthy securities class action settlements in recent years, including *In re AIG Securities Litigation*, No. 04 Civ. 8141 (S.D.N.Y.); *In re Countrywide Financial Corp. Securities Litigation*, No. 07 Civ. 05295 (C.D. Cal.); *In re Fannie Mae 2008 Securities Litigation*, No. 08 Civ. 7831 (S.D.N.Y.); *In re General Electric Co. Securities Litigation*, No. 09 Civ. 1951 (S.D.N.Y.); and *In re Facebook, Inc., IPO Securities & Derivative Litigation*, MDL No. 12-2389 (S.D.N.Y.).

4. I have personally overseen the administration of more than 75 securities class action settlements. Several of those settlements involved issuers that were in bankruptcy, and A.B. Data has recently provided notice of a settlement to class members in connection with a bankruptcy proceeding. More information on A.B. Data's qualifications and experience can be found on our website at www.abdataclassaction.com. A detailed description of A.B. Data's background and capabilities, including lists of representative cases and clients, is attached as Exhibit A.

**Standard Procedures for Receiving and Processing Claims**

5. Over the years, class action administrators have developed certain customary and well-tested procedures that have been regularly approved by courts and are designed to

efficiently and effectively receive, process, and determine the calculation of losses in connection with submitted claims.

6. In a typical class action, claims are submitted by individuals through the completion of a proof of claim form, attaching relevant documentation, and mailing the claim form to the administrator. Certain settlements also allow individuals to go to a website and submit a claim form online through the website dedicated to the class action. Typically, paper claims report a discrete number of transactions that are not very numerous. Claims received via mail are processed manually by a team of trained claims processors. The claim is scanned into a system and the data written on the claim form is entered into a database and documentation is reviewed.

7. Banks, institutions, brokers, and third-party filers typically submit electronic claims ("Electronic Filings"), that report multiple claims on behalf of themselves and/or underlying individual investors of a security. These files, even a file of an institution on behalf of itself, typically contain thousands of transactions and usually make up approximately 70% to 80% of the total number of claims received in any given class action. Electronic Filings by a nominee or third-party filer on behalf of others are typically required to include proof of the filer's authority to file the claims on behalf of the underlying investors. Overall, this process provides an efficient way for claims that have a large number of transactions to be submitted and allows for more efficient and accurate processing of very voluminous data. This practice has been in place for more than 15 years and institutions rely on it being available to them.

8. To manage the data provided through Electronic Filings, it is common for claim forms to include instructions for the submission of Electronic Filings or to include information about how to access instructions. To ensure there is consistency in the Electronic Filings, administrators typically create, in consultation with counsel, detailed electronic filing guidelines that provide specific instructions and a template for submitting electronic data. The instructions include, but are not limited to, providing the exact security(ies) involved, the class period or relevant time period that the transactions must fall in, what specific transactional information should be included in the Electronic Filing (such as whether the transaction is a purchase, sale, transfer; date of each transaction; holding position at the start of the relevant period and holding

positions at other data points; prices per share in each transaction; number of shares in each transaction; total sale or purchase price for each transaction; strike prices for options, number of option contracts, exercise and expiration dates; face value of bonds etc.), and how to submit the Electronic Filing. The electronic filing guidelines also include a description of the required authorization letters and documentation necessary to submit an Electronic Filing. A sample of electronic filing guidelines is attached as Exhibit B.

9. Claims received electronically go through a review process to ensure the format of the submitted data matches what was requested in the electronic filing guidelines previously mentioned. Once it is determined that the submission formatting is correct, all claims and the transactional information provided in each Electronic Filing are loaded into a unique database for the project. Since these claims are in an electronic format when submitted, programmatic reviews and audits, for example searches for ineligible securities or prices out of the trading range for the security, are completed at the time of loading the transactional information in lieu of a lengthy manual process.

**Standard Procedures for Deficiency and Rejection Determinations**

10. In typical class actions, each claim is reviewed to verify that all required information has been provided and that any documentation provided in support of the claim is complete and supports the claim. Claims that are missing information or contain conditions of ineligibility (such as having transactions outside the relevant period) are flagged in the project database.

11. The administrator will then contact claimants to provide them with an opportunity to resolve any deficiency or ineligibility conditions identified in their claim so that they can cure the conditions and become eligible to participate in the settlement.

12. Claimants that have submitted claims via mail and/or online are mailed a letter that describes the deficient or ineligible condition in the claim, and what, if anything, is needed to cure the condition, along with a timeframe in which to respond. The notifications also explain that the filer has the right to dispute the claims administrator's determination with the court. Each response to such a notification is carefully reviewed and the claim is updated to reflect the changes submitted.

13. Electronic Filers are e-mailed a letter and an Excel spreadsheet detailing, for each reported transaction, all deficiency or ineligibility conditions associated with the Electronic Filing. The letter provides an opportunity for each Electronic Filer to submit updated data that resolves the deficiency or condition of ineligibility. The notifications also explain that the filer has the right to dispute the claims administrator's determination with the court. All responses are reviewed and the claim records are updated manually and/or programmatically to reflect the changes submitted.

14. This notification procedure provides claimants with detailed information about the claims administrator's determination of the claims, as well as clear procedures for curing problems in order to become eligible for a recovery.

**Conclusion**

15. In my experience, the reasonable and customary procedures outlined here have proven highly effective with respect to ensuring the receipt, processing, and correct calculation of claims for financial losses.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of October, 2020.

_Adam D. Walter_
Adam D. Walter

# EXHIBIT A



**Headquarters**
600 A.B. Data Drive
Milwaukee, WI 53217
P: 866-217-4470
F: 414-961-3099

**New York**
One Battery Park Plaza
32nd Floor
New York, NY 10004
P: 646-290-9137

**Washington DC**
915 15th St., NW, Ste. 300
Washington, DC 20005
P: 202-618-2900
F: 202-462-2085

**Florida**
5080 PGA Boulevard, Ste. 209
Palm Beach Gardens, FL 33418
P: 561-336-1801
F: 561-252-7720

**Israel**
19 Weissburg Street
Tel Aviv 69358
Israel
P: +972 (3) 720-8782



# CAPABILITIES

## About A.B. Data

Founded in 1981, **A.B. Data has earned a reputation** for expertly managing the complexities of class action administration in consumer, antitrust, securities, Securities and Exchange Commission (SEC) enforcement actions, and ERISA, Attorneys General, employment, civil rights, insurance, environmental, wage and hour, and other class action cases. **A.B. Data's work in all aspects of class action administration** has been perfected by decades of experience in hundreds of class action cases involving billions of dollars in total settlements. Dedicated professionals deliver **A.B. Data's all-inclusive services,** working in partnership with its clients to administer their class action cases effectively, efficiently, and affordably, regardless of size or scope.

**A.B. Data offers unmatched resources and capacity** and is capable of expertly administering any class action notice, settlement, and/or fund administration. Whether notifying millions of class members in the United States or throughout the world, processing millions of claims, distributing payments digitally via A.B. Data's Digital PayPortal℠, or printing and distributing millions of checks, **A.B. Data matches its talent and technology** to the specific needs of its clients, delivering unparalleled service on time and on budget without ever compromising quality.

## Location, Ownership Structure

**A.B. Data is an independently owned,** 39-year-old, Milwaukee, Wisconsin-based company that prides itself on its vast expertise and industry-leading innovations. We like to remind our clients and partners that we're not just a class action administration company, but a group of experienced, dedicated professionals who believe that relationships are just as important as the accurate and timely management of class action administrations. In other words, we are people who do business with people.

## Services

**Every A.B. Data client is deserving of the best job we can put forward.** A.B. Data makes class action administration easy for our clients with clarity, convenience, and efficiency. Our priority is to navigate the intricacies of our clients' matters and deliver successful results by using our solid expertise, advanced technology, and top-quality products and services. We pay attention to the details and get it right the first time.

We aim to provide our clients the full experience of a truly collaborative working relationship. It is why we believe much of our success originates from our philosophy of "people doing business with people."



## Services

### All Digital — From Notice to Distribution

**A.B. Data is uniquely positioned to design, implement, and maintain notice and settlement administration programs** using an innovative, "all-digital" approach that replaces the more traditional and less efficient methods of administration, such as newspaper ads, mailed notices, and paper checks. Many of our recent proposed notice plans and claim programs utilize the latest technologies such as microtargeted digital ads for notice, streamlined online claims, and distributing settlement funds electronically using a digital paywall. These methods provide significant cost savings, are consistent with the amendments to Rule 23 that are now in effect, and importantly provide much-needed alignment of class action notice and administration with current consumer behaviors.

### Pre-Settlement Consultation

**The pre-settlement consultation is a collaborative session** designed to help A.B. Data clients prepare a stronger case. Our support teams simplify the task of sorting through a maze of documents during investigation and discovery, streamlining the process and preserving fund assets. From there, we assist with fully interactive media packages for court presentations and settlement negotiations. A.B. Data works closely with our clients, offering expert testimony on documents, processing, class and notice manageability, and proposed plans of allocation.

### Media Services

**A.B. Data continues to earn our reputation** as the early innovator in integrating advanced micro-targeting techniques, including contextual targeting, behavioral targeting, and predictive modeling. Coupled with inventive digital media strategies to drive claims, case-specific banner ad development, class member research, and comScore analysis services, our multi-tiered media programs are designed to cost-effectively deliver notice to potential class members and increase claims rates.

### Notice Administration

**In A.B. Data, clients have a comprehensive resource** with a depth of experience in direct notice. Our compliance and understanding of Rule 23 of the Federal Rules of Civil Procedure are crucial in meeting the "plain language" legal requirements for any campaign. From our sophisticated digital media capabilities and extensive global experience with class member research, our experts create notice documents that are easily understandable and cost-efficient to produce. We consult with our clients to deliver notice documents from multi-page, mailed, or emailed notice packets to concise postcards that establish the most influential and cost-effective means of communicating with potential claimants.

New York | Washington, DC | West Palm Beach | Milwaukee | Tel Aviv | abdataclassaction.com

Page 2



## Claims Processing

**A.B. Data continues to bring game-changing technologies** to improve the speed and precision in claims processing. Our robust system for online claims submissions allows us to meticulously verify data and documentation, preserve and authenticate claims, and calculate and verify settlement amounts. In addition, our data network infrastructure includes on-site data storage, backup, contingency plans, and security for electronic and hard copy claim filings. It is all part of a total commitment to be the most innovative and comprehensive resource in the industry. At A.B. Data, we take pride in having the in-house capacity to process millions of pages, as well as the organizational integrity to treat every claim as if it were the only one.

## Contact Center

**A.B. Data's Contact Center is comprised of a full staff** that is trained on and equipped with online and telecommunication systems to monitor and connect with class members. Associates routinely monitor class member communication for all class action administrations, including antitrust, consumer, and securities.

Utilizing monitoring software, associates watch multiple social media channels simultaneously, allowing for instantaneous routing of inquiries and interaction with claimants. Detailed and concise analytical reports outlining Contact Center activities are always provided.

Our Contact Center and case websites are capable of handling millions of class member engagements, as recently displayed in a campaign which garnered over 1.2 million website visits in two months and had more than 72,500 Facebook engagements. Facebook comments and threads are monitored and claimants are guided to the website for more information. Google AdWords and display advertising have also brought hundreds of thousands of visitors to various case websites.

A.B. Data's Contact Center also has Spanish language associates in-house and we can accommodate any language, given proper lead time. Traditional call center facilities are also available, if needed.

## Case Websites

**We offer a state-of-the-art technology platform** that supports every step of our class action administration process. Our expert marketing professionals design customized case-specific websites that provide potential class members easy access to case information, critical documents, important deadlines, as well as the capability to file claim forms and register for future mailings about the case. Claimants can use the website to elect to receive their settlement payments by mail or by one of several digital payment options, all accessible by mobile devices.

## Settlement Fund Distribution

**From complete escrow services to establishment of qualified settlement funds,** check printing and mailing, electronic cash or stock distribution and tax services, A.B. Data has always provided a full-service solution to Settlement Fund Distribution. Our IT team has decades of experience in developing and implementing fast, secure databases and claims administration systems that ensure class members receive the correct amount in their settlement disbursement. Today's digital capabilities allow even greater convenience for class members. In certain instances, claimants can now elect to instantaneously receive settlement payments through popular digital-payment options, such as PayPal, Amazon, and virtual debit cards.

New York | Washington, DC | West Palm Beach | Milwaukee | Tel Aviv | **abdataclassaction.com**



# A.B. Data's Leadership

 **A.B. Data's administration team** is composed of the following key executives, who collectively have decades of experience settling and administering class actions:

**Bruce A. Arbit, Co-Managing Director** and one of the founders of the A.B. Data Group, serves as Chairman of the Board and oversees the day-to-day operations of the A.B. Data Group of companies, employing almost 400 people in the United States and Israel. Mr. Arbit is also Chairman of the Board of Integrated Mail Industries, Ltd. and has served as a member of the Board of Directors of University National Bank and State Financial Bank. He is the past Chairman of Asset Development Group, Inc., Home Source One, and American Deposit Management and is a member of the National Direct Marketing Association, the Direct Marketing Fundraising Association, and the American Association of Political Consultants. He was named 1996 Direct Marketer of the Year by the Wisconsin Direct Marketing Association.

A.B. Data's work in class action litigation support began with the Court selecting A.B. Data to oversee the restitution effort in the now-famous Swiss Banks Class Action Case, the International Commission on Holocaust Era Insurance Claims, and every other Holocaust Era Asset Restitution program, in which it was the company's job to identify, contact, and inform survivors of the Holocaust. A.B. Data delivered by reaching out to millions of people in 109 countries who spoke more than 30 languages. Since those days, Mr. Arbit has guided the class action division through phenomenal growth and success. Today, A.B. Data manages hundreds of administrations annually that distributes billions of dollars to class members.

**Thomas R. Glenn, President**, Mr. Glenn's management of A.B. Data's Class Action Administration Company includes designing and implementing notice plans and settlement administration programs for antitrust, securities, and Securities and Exchange Commission settlements and SEC disgorgement fund distributions, as well as consumer, employment, insurance, and civil rights class actions. Mr. Glenn previously served as Executive Vice President at Rust Consulting and has more than 30 years of executive leadership experience.

**Eric Miller, Senior Vice President**, as a key member of A.B. Data's Class Action Administration Leadership Team, oversees the Case Management Department and supervises the operations and procedures of all of A.B. Data's class action administration cases. Mr. Miller is recognized in the class action administration industry as an expert on securities, SEC, consumer, product recall, product liability, general antitrust, pharmaceutical antitrust, and futures contract settlements, to name a few settlement types. Prior to joining A.B. Data, Mr. Miller served as the Client Service Director for Rust Consulting, responsible there for its securities practice area. He has more than 20 years of operations, project management, quality assurance, and training experience in the class action administration industry. In addition, Mr. Miller manages A.B. Data's office in Palm Beach Gardens, Florida.

**Ravin Raj, Vice President-Operations**, has more than 15 years of experience in class action claims management, document management, and insurance claims remediation. Mr. Raj's responsibilities for A.B. Data's Class Action Administration Company include heading the shared operations center, which includes mailroom, contact center, claims processing, quality control, and information systems operations. His areas of expertise include business process development, strategic/tactical operations



planning and implementation, risk analysis, budgeting, business expansion, growth planning and implementation, cost reduction, and profit, change, and project management. In his previous position, as Assistant Vice President-Operations at RR Donnelley India Pvt. Ltd., in Chennai, India, he led a team of more than 400 employees with the capacity to process more than 4 million claims a year, servicing several leading claims administrators. Mr. Raj managed six of the top ten securities class action settlements, by settlement value, including several multibillion-dollar settlements. His background also includes work as a Project Lead for iMarque Solutions Pvt. Ltd., Chennai, India.

**Linda V. Young, Vice President, Media**, oversees the Media Department and is responsible for the direction, development, and implementation of media notice plans for A.B. Data's clients. Ms. Young is an expert in media planning using most forms of advertising including digital, print, and broadcast. She developed some of the first Court-approved Notice Plans using an all-digital approach for cases such as *In re Vizio Consumer Privacy Litigation*, *In re Qualcomm Antitrust Litigation*, and *In re Google Inc. Street View Electronic Communications Litigation*, among others. Her ability to create notice plans that efficiently extend reach and drive class member engagement and participation has made a significant impact across many types of administrations. Ms. Young has developed and implemented national and international print, digital-, and earned-media notice plans for some of the industry's leading pharmaceutical, insurance, and securities class action cases, including Libor-based Financial Instruments Antitrust Litigation, Cipro Antitrust Cases I and II, Euribor and Euroyen-based Derivatives cases, and many more. She has more than 20 years of general market and ethnic media advertising and media planning experience, having managed advertising for brands such as Georgia-Pacific, American Express, Denny's, and Coca-Cola USA.

**Eric Schachter, Vice President**, is a member of A.B. Data's Class Action Administration Leadership Team. He has over 15 years of experience in the legal settlement administration services industry. Mr. Schachter's responsibilities include ensuring successful implementation of claims administration services for A.B. Data's clients in accordance with settlement agreements, court orders, and service agreements. He also works closely with Project Managers to develop plans of administration to provide the highest level of effective and efficient delivery of work product. A frequent speaker on claims administration innovation and best practices at industry events nationwide, Mr. Schachter has a bachelor's degree in sociology from Syracuse University, earned his law degree at Hofstra University School of Law, and was previously an associate at Labaton Sucharow LLP in New York City.

**Paul Sauberer, Director of Quality Assurance**, is responsible for overseeing quality assurance and process management, working diligently to mitigate risk, ensure exceptional quality control, and develop seamless calculation programming. Mr. Sauberer brings more than 20 years of experience as a quality assurance specialist with a leading claims-processing company where he developed extensive knowledge in securities class action administration. He is recognized as the class action administration industry's leading expert on claims and settlement administrations of futures contracts class actions.

**Justin Parks, Business Development Director**, provides expertise in legal marketing strategies and brings extensive experience in client relations to A.B. Data's business development team. Previously, Mr. Parks served the legal industry as part of the marketing group at a major class action administration firm where he successfully managed and consulted on notice plans and other administrative aspects in hundreds of cases with an estimated value of several hundred million dollars in settlement funds distributed to class members, including some of the largest Employment settlements in history. Mr. Parks is uniquely experienced in Data Privacy matters, having consulted with clients on numerous matters stemming from data breaches as well as violations of the Illinois Biometric Information Privacy Act (BIPA), several of which resulted in the first ever Biometric Privacy related settlements in history. Mr. Parks' knowledge and understanding of the class action industry, as well as his client relationship skills, expand A.B. Data's capacity to achieve its business development and marketing goals effectively.



**Camron Assadi, Vice President, Digital Marketing**, has more than 20 years of experience in digital marketing leadership, which includes directing and overseeing all aspects of the company's digital notice plans and campaigns across multiple networks and platforms. Mr. Assadi is an expert in online advertising and social media campaigns including Facebook, Google Ads, LinkedIn, Twitter, Amazon, Pinterest, Verizon Media, and others. He holds certifications in Google Ads Display and Search, and is a Facebook Certified Digital Marketing Associate. His ability to create and optimize business opportunities, extend brand reach, and capture the interest and support of local and international audiences has proven him an invaluable leader of A.B. Data's effort to maximize and streamline class member notice and engagement. Mr. Assadi has managed the notice plans for cases that have garnered millions of unique visitors and social media interactions. He holds a BS in Psychology from the University of Utah.

**Adam Walter, PMP, Senior Project Manager**, has nearly fifteen years of experience managing the administration of securities class action settlements and SEC disgorgements totaling more than $4 billion. He has managed settlement programs in engagements involving some of the largest securities class action settlements and is a key contributor to the development of administration strategies that meet the evolving needs of our clients. His responsibilities include developing case administration strategies to ensure that all client and court requirements and objectives are met, overseeing daily operations of case administrations, ensuring execution of client deliverables, providing case-related legal and administration support to class counsel, overseeing notice dissemination programs, implementing complex claims-processing and allocation methodologies, establishing quality assurance and quality control procedures, and managing distribution of settlement funds. Mr. Walter holds a bachelor's degree in business administration from Florida Atlantic University, Boca Raton, Florida. He also has been an active member of the Project Management Institute since 2010 and is PMP®-certified.

**Steve Straub, Senior Project Manager**, joined A.B. Data in February 2012. As a Senior Project Manager, his responsibilities include developing case administration strategies, overseeing daily operations of case administrations, ensuring execution of client deliverables, providing case-related legal and administration support to case counsel, overseeing notice dissemination programs, implementing complex claims processing and allocation methodologies, establishing quality assurance and quality control procedures, and managing distribution of settlement funds. Mr. Straub's experience in administering class action settlements includes securities, consumer, and antitrust settlements, with a primary focus on antitrust cases. He holds a Juris Doctor degree from Seton Hall University School of Law, Newark, New Jersey.

**Patty Nogalski, Project Manager**, is a veteran in the equity and securities industry and now contributes her talents to A.B. Data as a Project Manager specializing in class action administrations for securities litigation. Ms. Nogalski brings to A.B. Data many new ideas, methods, and technologies to achieve project efficiency and organizational integration. For much of her twenty-year career, she served as Vice President Equity Trading for BMO Global Asset Management Corporation where she managed equity trading for mutual funds and institutional accounts. She works closely with Eric Miller and the project management team to deliver strategies that meet the unique needs of securities and commodities settlements. Ms. Nogalski attended the University of Wisconsin-Milwaukee where she earned her Bachelor of Arts in Communications, and has also obtained her Financial Industry Regulatory Authority (FINRA) Series 7, Series 63, and Series 65 licenses.

**Eric Schultz, MCSE, Information Technology Manager and Security Team Chairperson**, has been with A.B. Data for more than 19 years, and is currently responsible for overseeing all information technology areas for all A.B. Data divisions across the United States and abroad, including network infrastructure and architecture, IT operations, data security, disaster recovery, and all physical, logical, data, and information systems security reviews and audits required by our clients or otherwise. As a Microsoft Certified Systems Engineer (MCSE) with more than 25 years of experience in information technology systems and solutions, Mr. Schultz has developed specializations in network security, infrastructure, design/architecture, telephony, and high-availability network systems.



## Secure Environment



**A.B. Data's facilities provide the highest level of security** and customization of security procedures, including:

- A Secure Sockets Layer server
- Video monitoring
- Limited physical access to production facilities
- Lockdown mode when checks are printed
- Background checks of key employees completed prior to hire
- Frequency of police patrol – every two hours, with response time of five or fewer minutes
- Disaster recovery plan available upon request

## Data Security



**A.B. Data is committed to protecting the confidentiality, integrity, and availability of personal identifying information** and other information it collects from our clients, investors, and class members and requires that its employees, subcontractors, consultants, service providers, and other persons and entities it retains to assist in distributions do the same. A.B. Data has developed an Information Security Policy, a suite of policies and procedures intended to cover all information security issues and bases for A.B. Data, and all of its divisions, departments, employees, vendors, and clients. A.B. Data has also recently taken the necessary, affirmative steps toward compliance with the EU's General Data Protection Regulation and the California Consumer Privacy Act.

A.B. Data has a number of high-profile clients, including the Securities and Exchange Commission (SEC), the United States Department of Justice, the Attorneys General of nearly all 50 states, other agencies of the United States government, and the Government of Israel, as well as direct banking and payment services companies with some of the most recognized brands in United States financial services and some of the largest credit card issuers in the world.

We are therefore frequently subjected to physical, logical, data, and information systems security reviews and audits. We have been compliant with our clients' security standards and have also been determined to be compliant with ISO/IEC 27001/2 and Payment Card Industry (PCI) data-security standards, the Gramm-Leach-Bliley Act (GLB) of 1999, the National Association of Insurance Commissioners (NAIC) Regulations, the Health Insurance Portability and Accountability Act (HIPAA) of 1996, and the Health Information Technology for Economic and Clinical Health Act (HITECH).

The Government of Israel has determined that A.B. Data is compliant with its rigorous security standards in connection with its work on Project HEART (Holocaust Era Asset Restitution Taskforce).

A.B. Data's fund distribution team has been audited by EisnerAmper LLP and was found compliant with class action industry standards and within 99% accuracy. EisnerAmper LLP is a full-service advisory and accounting firm and is ranked the 15th-largest accounting firm in the United States.

New York | Washington, DC | West Palm Beach | Milwaukee | Tel Aviv | abdataclassaction.com

Page 7



In addition, as part of PCI compliance requirements, A.B. Data has multiple network scans and audits from third-party companies, such as SecurityMetrics and 403 Labs, and is determined to be compliant with each of them.

# Fraud Prevention and Detection

**A.B. Data is at the forefront of class action fraud prevention.**

A.B. Data maintains and utilizes comprehensive proprietary databases and procedures to detect fraud and prevent payment of allegedly fraudulent claims.

We review and analyze various filing patterns across all existing cases and claims. Potential fraudulent filers are reported to our clients as well as to the appropriate governmental agencies where applicable.

# Representative Class Action Engagements



**A.B. Data and/or its team members have successfully administered** hundreds of class actions, including many major cases. Listed below are just some of the most representative or recent engagements.

## Consumer & Antitrust Cases

- *Phil Shin, et al. v. Plantronics, Inc.*
- *In re: Qualcomm Antitrust Litigation*
- *In re Resistors Antitrust Litigation*
- *The Hospital Authority of Metropolitan Government of Nashville and Davidson County, Tennessee v. Momenta Pharmaceuticals, Inc. and Sandoz Inc.* ("Lovenox Antitrust Matter")
- *William Kivett, et al. v. Flagstar Bank, FSB, and DOES 1-100, inclusive*
- *Adelphia, Inc. v. Heritage-Crystal Clean, Inc.*
- *LLE One, LLC, et al. v. Facebook, Inc.*
- *Bach Enterprises, Inc., et al. v. Advanced Disposal Services South, Inc., et al.*
- *JWG Inc., et al. v. Advanced Disposal Services Jacksonville, L.L.C., et al.*
- *State of Washington v. Motel 6 Operating L.P. and G6 Hospitality LLC*
- *In re GSE Bonds Antitrust Litigation*
- *Wave Lengths Hair Salons of Florida, Inc., et al. v. CBL & Associates Properties, Inc., et al.*
- *In re Loestrin 24 FE Antitrust Litigation*
- *Office of the Attorney General, Department of Legal Affairs, State of Florida v. Pultegroup, Inc. and Pulte Home Company, LLC*
- *In re Cigna-American Specialties Health Administration Fee Litigation*
- *In re: Intuniv Antitrust Litigation*
- *High Street, et al. v. Cigna Corporation, et al.*
- *Gordon Fair, et al. v. The Archdiocese of San Francisco, San Mateo, and Marin County*



- *Bizzarro, et al. v. Ocean County Department of Corrections, et al.*
- *Meeker, et al. v. Bullseye Glass Co.*
- *MSPA Claims 1, LLC v. Ocean Harbor Casualty Insurance Company*
- *Tennille v. Western Union Company - Arizona*
- *Garner, et al. v. Atherotech Holdings, Inc.* and *Garner, et al. v. Behrman Brothers IV, LLC, et al.*
- *Robinson, et al. v. Escallate, LLC*
- *Josefina Valle and Wilfredo Valle, et al. v. Popular Community Bank f/k/a Banco Popular North America*
- *Vision Construction Ent., Inc. v. Waste Pro USA, Inc. and Waste Pro USA, Inc. and Waste Pro of Florida, Inc.*
- *Plumley v. Erickson Retirement Communities, et al.*
- *In re London Silver Fixing, Ltd. Antitrust Litigation*
- *In re EpiPen Marketing, Sales Practices and Antitrust Litigation*
- *Ploss v. Kraft Foods Group, Inc. and Mondelēz Global LLC*
- *In re Mexican Government Bonds Antitrust Litigation*
- *In re Ready-Mixed Concrete Antitrust Litigation*
- *In re: Marine Hose Antitrust Litigation*
- *Iowa Ready Mixed Concrete Antitrust Litigation*
- *In re Potash Antitrust Litigation (II)*
- *In re Evanston Northwestern Healthcare Corp. Antitrust Litigation*
- *In re Polyurethane Foam Antitrust Litigation*
- *In re LIBOR-Based Financial Instruments Antitrust Litigation*
- *In re Lorazepam and Clorazepate Antitrust Litigation*
- *In re Cardizem CD Antitrust Litigation*
- *Vista Healthplan, Inc., and Ramona Sakiestewa v. Bristol-Myers Squibb Co., and American BioScience, Inc.*
- *In re Lupron Marketing and Sales Practices Litigation*
- *In re Terazosin Hydrochloride Antitrust Litigation*
- *In re Warfarin Sodium Antitrust Litigation*
- *Rosemarie Ryan House, et al. v. GlaxoSmithKline PLC and SmithKline Beecham Corporation*
- *Carpenters and Joiners Welfare Fund, et al. v. SmithKline Beecham*
- *New Mexico United Food and Commercial Workers Union's and Employers' Health and Welfare Trust Fund, et al. v. Purdue Pharma L.P.*
- *In Re Pharmaceutical Industry Average Wholesale Price Litigation*
- *Alma Simonet, et al. v. SmithKline Beecham Corporation, d/b/a GlaxoSmithKline*
- *In re Relafen Antitrust Litigation*
- *In Re Remeron Direct Purchaser Antitrust Litigation*
- *In re TriCor Indirect Purchasers Antitrust Litigation*
- *Nichols, et al., v. SmithKline Beecham Corporation*
- *In re: DDAVP Indirect Purchaser Antitrust Litigation*

## Securities Cases

- *Laydon v. Mizuho Bank, Ltd., et al.*
- *Lomingkit, et al. v. Apollo Education Group, Inc., et al.*
- *In re Caraco Pharmaceutical Laboratories, Ltd. Shareholder Litigation*
- *Norfolk County Retirement System, et al. v. Community Health Systems, Inc., et al.*
- *Chester County Employees' Retirement Fund v. KCG Holdings, Inc., et al.*
- *Oklahoma Law Enforcement Retirement System, et al. v. Adeptus Health Inc., et al.*
- *Di Donato v. Insys Therapeutics, Inc., et al.*
- *Lundgren-Wiedinmyer, et al. v. LJM Partners, Ltd, et al.*



- *Martin, et al. v. Altisource Residential Corporation, et al.*
- *Stephen Appel, et al. v. Apollo Management, et al.*
- *In re Medley Capital Corporation Stockholder Litigation*
- *Forman, et al. v. Meridian BioScience, Inc., et al.*
- *Public Employees' Retirement System of Mississippi, et al. v. Endo International PLC, et al.*
- *In Re Flowers Foods, Inc. Securities Litigation*
- *Jiangchen, et al. v. Rentech, Inc., et al.*
- *In re Liberty Tax, Inc. Stockholder Litigation*
- *In re RH, Inc. Securities Litigation*
- *Lazan v. Quantum Corporation, et al.*
- *Nabhan v. Quantum Corporation, et al.*
- *Edmund Murphy III, et al. v. JBS S.A.*
- *Public Employees' Retirement System of Mississippi, et al. v. Sprouts Farmers Market, Inc., et al.*
- *In re Starz Stockholder Litigation*
- *Judith Godinez, et al. v. Alere Inc., et al.*
- *Rahman and Giovagnoli, et al. v. GlobalSCAPE, Inc., et al.*
- *Arthur Kaye, et al. v. ImmunoCellular Therapeutics, Ltd., et al.*
- *In re CPI Card Group Inc. Securities Litigation*
- *Daniel Aude, et al. v. Kobe Steel, Ltd., et al.*
- *In re Quality Systems, Inc. Securities Litigation*
- *Cooper, et al. v. Thoratec Corporation, et al.*
- *Washtenaw County Employees' Retirement System, et al. v. Walgreen Co., et al.*
- *Elkin v. Walter Investment Management Corp., et al.*
- *In Re CytRx Corporation Securities Litigation*
- *Ranjit Singh, et al. v. 21Vianet Group, Inc., et al.*
- *In re PTC Therapeutics, Inc. Securities Litigation*
- *Securities and Exchange Commission v. Mark A. Jones*
- *In re Sequans Communications S.A. Securities Litigation*
- *In re Henry Schein, Inc. Securities Litigation*
- *Ronge, et al. v. Camping World Holdings, Inc., et al.*
- *Oklahoma Firefighters Pension & Retirement System v. Lexmark International, Inc.*
- *Christakis Vrakas, et al. v. United States Steel Corporation, et al.*
- *Emerson et al. v. Mutual Fund Series Trust, et al.* ("Catalyst")
- *In re Fannie Mae 2008 Securities Litigation*
- *In re Anadarko Petroleum Corporation Class Action Litigation*
- *Ge Dandong, et al., v. Pinnacle Performance Limited, et al.*
- *In Re: Rough Rice Commodity Litigation*
- *Xuechen Yang v. Focus Media Holding Limited et al.*
- *In re Massey Energy Co. Securities Litigation*
- *In re Swisher Hygiene, Inc.*
- *The City of Providence vs. Aeropostale, Inc., et al.*
- *In re Metrologic Instruments, Inc. Shareholders Litigation*
- *Public Pension Fund Group v. KV Pharmaceutical Company et al.*
- *Pension Trust Fund for Operating Engineers, et al. v. Assisted Living Concepts, Inc., et al.*
- *In re Lehman Brothers Equity/Debt Securities Litigation*
- *In re: Platinum and Palladium Commodities Litigation* (Platinum/Palladium Physical Action)
- *In re: Platinum and Palladium Commodities Litigation* (Platinum/Palladium Futures Action)
- *In re General Electric Co. Securities Litigation*
- *In re CNX Gas Corporation Shareholders Litigation*
- *Oscar S. Wyatt, Jr. et al. v. El Paso Corporation, et al.*
- *In re Par Pharmaceutical Securities Litigation*



- *In re Par Pharmaceutical Companies, Inc. Shareholders Litigation*
- *In re Delphi Financial Group Shareholders Litigation*
- *In re SLM Corporation Securities Litigation*
- *In re Del Monte Foods Company Shareholder Litigation*
- *Leslie Niederklein v. PCS Edventures!.com, Inc. and Anthony A. Maher*
- *In re Beckman Coulter, Inc. Securities Litigation*
- *Michael Rubin v. MF Global, Ltd., et al.*
- *Allen Zametkin v. Fidelity Management & Research Company, et al.*
- *In re BP Prudhoe Bay Royalty Trust Securities Litigation*
- *Police and Fire Retirement System of the City of Detroit et al. v. SafeNet, Inc., et al.*
- *In re Limelight Networks, Inc. Securities Litigation*
- *In re Gilead Sciences Securities Litigation*
- *In re ACS Shareholder Litigation, Consolidated C.A. No. 4940-VCP*
- *Lance Provo v. China Organic Agriculture, Inc., et al.*
- *In re LDK Solar Securities Litigation*

## Labor & Employment Cases

- *Talisa Borders, et al. v. Wal-mart Stores, Inc.*
- *Reale v. McClain Sonics Inc., et al.*
- *Larita Finisterre and Songhai Woodard, et al. v. Global Contact Services, LLC*
- *Adebisi Bello v. The Parc at Joliet*
- *Garcia, et al. v. Vertical Screen, Inc.*
- *Brook Lemma and Matthieu Hubert, et al. v. 103W77 Partners LLC, et al. ("Dovetail Settlement")*
- *American Federation of Government Employees, Local 1145 v. Federal Bureau of Prisons, U.S. Penitentiary, Atlanta, Georgia*
- *Lisa Ferguson, Octavia Brown, et al. v. Matthew G. Whitaker, Acting AG, DOJ Bureau of Prisons ("USP Victorville")*
- *American Federation of Government Employees, Local 2001 v. Federal Bureau of Prisons, Federal Correctional Institution, Fort Dix, New Jersey*
- *American Federation of Government Employees, Local 506 v. U.S. Department of Justice, Federal Bureau of Prisons, U.S. Penitentiary Coleman II, Coleman, Florida*
- *Vargas v. Sterling Engineering*
- *Rosenbohm v. Verizon*
- *Alex Morgan, et al. v. United States Soccer Federation, Inc.*
- *Iskander Rasulev v. Good Care Agency, Inc.*
- *Kyndl Buzas, et al., v. Phillips 66 Company and DOES 1 through 10*
- *American Federation of Government Employees, Local 408 v. U.S. Dept. of Justice, Federal Bureau of Prisons, Federal Correctional Complex, Butner, NC*
- *In re 2014 Avon Products, Inc. ERISA Litigation*
- *In re Eastman Kodak ERISA Litigation*
- *Taronica White, et al. v. Attorney General Loretta Lynch, Department of Justice*
- *Lisa Ferguson, et al. v. Acting Attorney General Matthew Whitaker, Department of Justice*
- *Melissa Compere v. Nusret Miami, LLC, et al.*
- *Abelar v. American Residential Services, L.L.C., Central District of California*
- *Flores, et al. v. Eagle Diner Corp., et al., Eastern District of Pennsylvania*
- *Michael Furman v. Godiva Chocolatier, Inc., 15th Judicial Circuit, Palm Beach County, Florida*
- *Finisterre et. al v. Global Contact Services, LLC, New York State Supreme Court, Kings County*
- *McGuire v. Intelident Solutions, LLC, et al., Middle District of Florida, Tampa Division*
- *Duran De Rodriguez, et al. v. Five Star Home Health Care Agency, Inc. et al., Eastern District of New York*

New York | Washington, DC | West Palm Beach | Milwaukee | Tel Aviv | abdataclassaction.com



## Data Breach/BIPA Cases

- *In re: Vizio, Inc. Consumer Privacy Litigation*
- *In re: Google, Inc. Street View Electronic Communications Litigation*
- *Devin Briggs and Bobby Watson, et al. v. Rhinoag, Inc.* ("Briggs Biometric Settlement")
- *Trost v. Pretium Packaging L.L.C.*

## Telephone Consumer Protection Act (TCPA) Cases

- *Lowe and Kaiser, et al. v. CVS Pharmacy, Inc., et al.*
- *Johansen v. HomeAdvisor, Inc., et al.*
- *Charvat, et al. v. National Holdings Corporation*
- *Hopkins, et al. v. Modernize, Inc.*
- *Diana Mey vs. Frontier Communications Corporation*
- *Matthew Donaca v. Dish Network, L.L.C.*
- *Matthew Benzion and Theodore Glaser v. Vivint, Inc.*
- *John Lofton v. Verizon Wireless (VAW) LLC, et al.*
- *Lori Shamblin v. Obama for America et al.*
- *Ellman v. Security Networks*

## For More Information

For more detailed information regarding A.B. Data's experience, services, or personnel, please see our website at **www.abdataclassaction.com**

# EXHIBIT B



*PTC Therapeutics Securities Litigation*

## ELECTRONIC CLAIM FILING GUIDELINES

A.B. DATA, LTD.
abdataclassaction.com
New York  |  Washington, D.C.  |  Chicago  |  West Palm Beach  |  Milwaukee

# Table of Contents

Overview ..................................................................................................................................1

Electronic Filing Requirements ...........................................................................................1

Documentation Requirements ..............................................................................................2

How to account for Free Receipts, Free Deliveries, and Transfers.....................................2

Claim Balancing ...................................................................................................................3

# Appendices

**Appendix A:  Case Specific Information**

**Appendix B:  Proof of Claim and Release**

**Appendix C:  Authorization Requirements**

**Appendix D:  Sample Cover Letter**

**Appendix E:  Electronic Claim Filing Template Mapping Instructions**

A.B. DATA, LTD.
abdataclassaction.com
New York | Washington, D.C. | Chicago | West Palm Beach | Milwaukee

Electronic Claim Filing applies to institutions or entities that are filing multiple Proofs of Claim and Release on behalf of themselves and/or others, as well as individuals or entities that are filing Proofs of Claim and Release with a large number of transactions (50+).

Electronic Claim Filings are subject to rejection if not prepared in compliance with these Electronic Claim Filing Guidelines.

PLEASE NOTE: No Electronic Claim Filing will be considered to have been properly submitted unless the Claims Administrator issues to the filer a written acknowledgment of receipt and acceptance of electronically submitted data.

## Electronic Filing Requirements

**Complete and Sign a Proof of Claim and Release:**

- One executed Proof of Claim and Release should be completed per submission. This Proof of Claim and Release serves as a master Proof of Claim and Release for one or all of the accounts included on your file. The Proof of Claim and Release is attached hereto as Appendix B.

- Complete the first page of the Proof of Claim and Release. Be sure to include company name, account name/number, and company address. If submitting an electronic file on behalf of several accounts, enter "Various Accounts" for the account name/number.

- Complete the signature page on the Proof of Claim and Release. If you are filing on behalf of your clients, you must include a letter or document providing your authorization to sign on behalf of your clients, as set forth in Appendix C.

- A valid email address must be on file with the Claims Administrator. Communication regarding deficiencies and rejections on electronically filed claims may be conducted by email. A valid email address MUST be included on the Proof of Claim and Release, and the email address provided MUST be updated in the event the contact person or email address changes; it is the sole responsibility of the filing party to maintain up-to-date, complete contact information with the Claims Administrator.

**Prepare a cover letter:**

- A cover letter MUST be included with the master Proof of Claim and Release. The cover letter must include the total number of accounts; total number of transactions; total number of shares purchased, acquired, and sold; and contact name(s) with phone number(s) and email address(es). Please see the sample cover letter as set forth in Appendix D.

**Prepare a data file:**

- An Excel spreadsheet or other electronic file containing account information and transactional data MUST be prepared in accordance with A.B. Data, Ltd.'s Electronic Claim Filing Template Mapping Instructions found in Appendix E. The following formats are acceptable: a) MEDIA: CD, DVD, and FLASH DRIVE and b) DATA: ASCII, MS EXCEL, and MS ACCESS. For your convenience, an Excel spreadsheet template is available for your use and may be downloaded from HarmanSecuritiesLitigation.com.

- If you cannot provide the information in the aforementioned formats or you have other requests, questions, concerns, or comments, please email A.B. Data, Ltd., at efiling@abdata.com or you may call 800-949-0194 to speak to an Electronic Claims Filing Specialist.

**Mail your executed master Proof of Claim and Release with a cover letter and media format to:**

### PTC Therapeutics Securities Litigation
### C/O A.B. Data, Ltd.
### PO Box 173032
### Milwaukee, WI 53217

<table>
<tr><td>Documentation Requirements</td></tr>
</table>

A.B. Data, Ltd., reserves the right to request additional documentation at any time after your Proof of Claim and Release and file have been received and processed. The documentation provided should be sufficient to verify the validity and accuracy of the data provided in the file.

If you provided a letter/affidavit attesting to the truth and accuracy of your data when initially submitting your file, A.B. Data may still require specific documentary evidence (trade confirmations, monthly statement, or equivalent) to verify the details of your transactions and/or holdings.

<table>
<tr><td>How to account for Free Receipts, Free Deliveries, and Transfers</td></tr>
</table>

Free receipt, free delivery, and transfer transactions are not eligible for payment unless you have additional information regarding the original purchase, acquisition, or subsequent sale. If you do not have this information, free receipt, free delivery, and transfer transactions should only be included on your electronic file for balancing purposes. You MUST use the following instructions when filing for accounts that have free receipt, free delivery, and transfer transactions during the Class Period:

**If shares were transferred to or from a different custodian (corresponding account is not on your electronic file), you must follow these instructions:**

- SHARES RECEIVED INTO ACCOUNT: You must account for any received shares by providing the opening position or original purchase or acquisition of these shares from the prior account.

- SHARES DELIVERED OUT OF ACCOUNT: You must account for any delivered shares by providing the sale and/or closing position from the subsequent account.

- NO INFORMATION AVAILABLE ON ORIGINAL PURCHASE/ACQUISITION or SUBSEQUENT SALE: You must provide the free receipt and/or free delivery shares in order to balance your claim. A "transfer in" should be reflected as transaction type "FR," and a "transfer out" should be reflected as transaction type "FD" (prices and net amounts should be zero).

**If shares were transferred between accounts on your file, you must follow these instructions:**

- DO NOT claim the same purchase or acquisition transaction(s) on both accounts.

- The account that owned the shares most recently should be the account claiming the eligible purchase or acquisition. These shares should already be accounted for in the sales and/or closing position of the most recent account.

- If shares were transferred between accounts for the same beneficial owner on your file, you must combine these accounts and file all eligible purchases, acquisitions, and sales with the most recent account name and number. You must also include all opening and closing positions on the most recent account name and number.

- If you are unable to combine these accounts accordingly, you must provide the free receipt and free delivery shares in order to balance your claim. A "transfer in" should be reflected as transaction type "FR," and a "transfer out" should be reflected as transaction type "FD" (prices and net amounts should be zero).

**A.B. DATA, LTD.**
abdata.com
New York | Washington, D.C. | Chicago | West Palm Beach | Milwaukee

## Claim Balancing

Transactions for PTC Therapeutics Securities Litigation for each account must balance. This means that the opening position plus total purchases and acquisitions (including free receipts) and the total number of shares purchased during the 90-day Lookback period MUST EQUAL total sales (including free deliveries) plus the closing position.

All transactions must be positive values.

A.B. DATA, LTD.
abdata.com
New York | Washington, D.C. | Chicago | West Palm Beach | Milwaukee

# Appendix A

# Case Specific Information

| | |
|---|---|
| CUSIP NUMBER: | 69366J200 |
| ISIN: | US69366J2006 |
| TICKER SYMBOL: | PTCT |
| CLASS DEFINITION: | If you purchased or otherwise acquired the publicly traded common stock of PTC Therapeutics, Inc. during the period from November 6, 2014 to February 23, 2016, inclusive and were allegedly damaged thereby. |
| CLAIM FILING DEADLINE: | SEPTEMBER 27, 2018 |

## Transactions for each account should include:

| Transaction Type | Definition | Valid Dates |
|---|---|---|
| O | Total number of shares owned at the beginning of the Class Period. | NOVEMBER 6, 2014 |
| P | Purchases/acquisitions during the Class Period | NOVEMBER 6, 2014 THROUGH FEBRUARY 23, 2016 |
| FR | Transfer into account during the Class Period | NOVEMBER 6, 2014 THROUGH FEBRUARY 23, 2016 |
| L | Total number of shares purchased or acquired during the 90-day look-back period | FEBRUARY 24, 2016 THROUGH MAY 20, 2016 |
| S | Sales during the Class Period and 90-day look-back period | NOVEMBER 6, 2014 THROUGH MAY 20, 2016 |
| FD | Transfer out to another account during the Class Period and 90-day look-back period | NOVEMBER 6, 2014 THROUGH MAY 20, 2016 |
| C | Unsold shares at the close of trading at the end of the 90-day look-back period | MAY 20, 2016 |

**\*Please see Appendix E for mapping instructions detailing how to properly submit your file. Files submitted that do not follow the mapping instructions are subject to rejection.**

**A.B. DATA, LTD.**
abdataclassaction.com
New York | Washington, D.C. | Chicago | West Palm Beach | Milwaukee

# Appendix B

A.B. DATA, LTD.
abdataclassaction.com
New York | Washington, D.C. | Chicago | West Palm Beach | Milwaukee

| | |
|---|---|
| IN RE PTC THERAPEUTICS, INC. SECURITIES LITIGATION | Civil Action No. 16-1224 (KM)(MAH) |

## PROOF OF CLAIM AND RELEASE

### A. GENERAL INSTRUCTIONS

1. To recover as a member of the Settlement Class based on your claims in the action entitled *In re PTC Therapeutics, Inc. Securities Litigation,* No. 16-1224 (KM) (D.N.J.) (the "Action"), you must complete and, on page 5 hereof, sign this Proof of Claim and Release form ("Claim Form"). If you fail to submit a timely and properly addressed (as set forth in paragraph 3 below) Claim Form, your claim may be rejected and you may not receive any recovery from the Net Settlement Fund created in connection with the proposed Settlement.

2. Submission of this Claim Form, however, does not assure that you will share in the proceeds of the settlement of the Action.

3. **THIS CLAIM FORM MUST BE SUBMITTED EITHER:**

   **(i) ONLINE AT WWW.PTCTHERAPEUTICSSECURITIESLITIGATION.COM NO LATER THAN SEPTEMBER 27, 2018; OR**

   **(ii) BY MAIL, POSTMARKED OR RECEIVED NO LATER THAN SEPTEMBER 27, 2018, ADDRESSED AS FOLLOWS**:

   *PTC Therapeutics, Inc. Securities Litigation*
   Claims Administrator
   c/o A.B. Data, Ltd.
   PO Box 173032
   Milwaukee, WI 53217
   www.PTCTherapeuticsSecuritiesLitigation.com

If you are NOT a member of the Settlement Class (as defined in the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice"), which accompanies this Claim Form) DO NOT submit a Claim Form.

4. If you are a member of the Settlement Class and you did not timely request exclusion in response to the Notice dated May 30, 2018, you are bound by the terms of any judgment entered in the Action, including the releases provided therein, WHETHER OR NOT YOU SUBMIT A CLAIM FORM.

### B. CLAIMANT IDENTIFICATION

1. If you purchased or otherwise acquired the publicly traded common stock of PTC Therapeutics, Inc. ("PTC" or the "Company") during the period from November 6, 2014 through February 23, 2016, inclusive (the "Class Period") and held the stock in your name, you are the beneficial purchaser as well as the record purchaser. If, however, you purchased or otherwise acquired the publicly traded common stock of PTC during the Class Period through a third party, such as a brokerage firm, you are the beneficial purchaser and the third party is the record purchaser.

2.   Use Part I of this form entitled "Claimant Identification" to identify each beneficial purchaser or acquirer of PTC publicly traded common stock that forms the basis of this claim, as well as the purchaser or acquirer of record if different.   THIS CLAIM MUST BE FILED BY THE ACTUAL BENEFICIAL PURCHASER(S) OR THE LEGAL REPRESENTATIVE OF SUCH PURCHASER(S).

3.   All joint purchasers must sign this claim.   Executors, administrators, guardians, conservators, and trustees must complete and sign this claim on behalf of persons represented by them and their authority must accompany this claim and their titles or capacities must be stated.   The Social Security (or taxpayer identification) number and telephone number of the beneficial owner may be used in verifying the claim.   Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

## C.   IDENTIFICATION OF TRANSACTIONS

1.   Use Part II of this form entitled "Schedule of Transactions in PTC Publicly Traded Common Stock" to supply all required details of your transaction(s) in PTC publicly traded common stock.   If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form.   Sign and print or type your name on each additional sheet.

2.   On the schedules, provide all of the requested information with respect to: (i) all of your holdings of PTC publicly traded common stock as of the beginning of trading on November 6, 2014; (ii) all of your purchases, acquisitions, and sales of PTC publicly traded common stock during the requested time periods; and (iii) all of your holdings in PTC publicly traded common stock as of the close of trading on May 20, 2016, whether such purchases, acquisitions, sales or transactions resulted in a profit or a loss. Failure to report all such transactions may result in the rejection of your claim.

3.   The date of covering a "short sale" is deemed to be the date of purchase of PTC publicly traded common stock.   The date of a "short sale" is deemed to be the date of sale of PTC publicly traded common stock.

4.   Copies of broker confirmations or other documentation of your transactions in PTC publicly traded common stock should be attached to your claim.   Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.   The Parties do not have information about your transactions in PTC publicly traded common stock.

5.   NOTICE REGARDING ELECTRONIC FILES: Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files.   All claimants MUST submit a manually signed paper Claim Form whether or not they also submit electronic copies.   If you wish to file your claim electronically, you must contact the Claims Administrator at (877) 242-4889 to obtain the required file layout.   No electronic files will be considered to have been properly submitted unless the Claims Administrator issues to the claimant a written acknowledgment of receipt and acceptance of electronically submitted data.

## PART I – CLAIMANT INFORMATION

The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing at the address above. Complete names of all persons and entities must be provided.

Beneficial Owner's Name

First Name

Last Name

Joint Beneficial Owner's Name (*if applicable*)

First Name

Last Name

If this claim is submitted for an IRA, and if you would like any check that you MAY be eligible to receive made payable to the IRA, please include "IRA" in the "Last Name" box above (*e.g.*, Jones IRA).

Entity Name (if the Beneficial Owner is not an individual)

Name of Representative, if applicable (*executor, administrator, trustee, c/o, etc.*), if different from Beneficial Owner

Last 4 digits of Social Security Number or Taxpayer Identification Number

Street Address

City

State/Province

Zip Code

Foreign Postal Code (if applicable)

Foreign Country (if applicable)

Telephone Number (Day)

Telephone Number (Evening)

Email Address (email address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim):

**Type of Beneficial Owner:**

Specify one of the following:

☐ Individual(s)  ☐ Corporation  ☐ UGMA Custodian

☐ IRA  ☐ Partnership  ☐ Estate

☐ Trust  ☐ Other (describe) _____

## PART II – SCHEDULE OF TRANSACTIONS IN PTC PUBLICLY TRADED COMMON STOCK

| | |
|---|---|
| **1. HOLDINGS AS OF NOVEMBER 6, 2014** – State the total number of shares of PTC publicly traded common stock held as of the opening of trading on November 6, 2014.  (Must be documented.)  If none, write "zero" or "0." _____ | Confirm Proof of Position  Enclosed<br>○ |

**2. PURCHASES/ACQUISITIONS FROM NOVEMBER 6, 2014 THROUGH FEBRUARY 23, 2016.** Separately list each and every purchase/acquisition of PTC publicly traded common stock from after the opening of trading on November 6, 2014 through and including the close of trading on February 23, 2016.  (Must be documented.)

| Date of Purchase/ Acquisition (List Chronologically) (Month/Day/Year) | Number of Shares Purchased/ Acquired | Purchase/ Acquisition Price Per Share | Total Purchase/ Acquisition Price (excluding taxes, commissions, and fees) | Confirm Proof of Purchase/ Acquistion Enclosed |
|---|---|---|---|---|
| /    / | | $ | $ | ○ |
| /    / | | $ | $ | ○ |
| /    / | | $ | $ | ○ |
| /    / | | $ | $ | ○ |

**3. PURCHASES/ACQUISITIONS FROM FEBRUARY 24, 2016 THROUGH MAY 20, 2016** – State the total number of shares of PTC publicly traded common stock purchased/acquired from after the opening of trading on February 24, 2016 through and including the close of trading on May 20, 2016. If none, write "zero" or "0."[1] _____

| | |
|---|---|
| **4. SALES FROM NOVEMBER 6, 2014 THROUGH MAY 20, 2016** – Separately list each and every sale/disposition of PTC publicly traded common stock from after the opening of trading on November 6, 2014 through and including the close of trading on May 20, 2016. (Must be documented.) | **IF NONE, CHECK HERE**<br>○ |

| Date of Sale (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions, and fees) | Confirm Proof of Sale Enclosed |
|---|---|---|---|---|
| /    / | | $ | $ | ○ |
| /    / | | $ | $ | ○ |
| /    / | | $ | $ | ○ |
| /    / | | $ | $ | ○ |

| | |
|---|---|
| **5. HOLDINGS AS OF MAY 20, 2016** – State the total number of shares of PTC publicly traded common stock held as of the close of trading on May 20, 2016. (Must be documented.)  If none, write "zero" or "0." _____ | Confirm Proof of Position  Enclosed<br>○ |

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX** ☐

**IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL <u>NOT</u> BE REVIEWED. INCLUDE THE BENEFICIAL OWNER'S FULL NAME AND LAST FOUR DIGITS OF SOCIAL SECURITY NUMBER/TAXPAYER IDENTIFICATION NUMBER ON EACH PAGE.**

---

[1] **Please note**:  Information requested with respect to your purchases/acquisitions of PTC publicly traded common stock from after the opening of trading on February 24, 2016 through and including the close of trading on May 20, 2016 is needed in order to balance your claim; purchases during this period, however, are not eligible under the Settlement and will not be used for purposes of calculating your Recognized Claim pursuant to the Plan of Allocation.

**YOU MUST READ AND SIGN THE RELEASE ON THIS PAGE. FAILURE TO SIGN THE RELEASE MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.**

## D.  SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

I (We) submit this Proof of Claim and Release under the terms of the Stipulation and Agreement of Settlement, dated March 1, 2018 (the "Stipulation") described in the Notice.  I (We) also submit to the jurisdiction of the United States District Court for the District of New Jersey, with respect to my (our) claim as a Settlement Class Member and for purposes of enforcing the release set forth herein.  I (We) further acknowledge that I am (we are) bound by and subject to the terms of any judgment that may be entered in the Action.  I (We) agree to furnish additional information to the Claims Administrator to support this claim (including transactions in other PTC securities) if requested to do so.  I (We) have not submitted any other claim in the Action covering the same purchases or sales of PTC publicly traded common stock during the Class Period and know of no other person having done so on my (our) behalf.

## E.  RELEASE AND ACKNOWLEDGEMENT

1.   I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally, and forever settle, release, and discharge from the Released Claims each and all of the Released Defendant Parties, both as defined in the accompanying Notice. This release shall be of no force or effect unless and until the Court approves the Settlement and the Settlement becomes effective on the Effective Date (as defined in the Stipulation).

2.   I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

3.   I (We) hereby warrant and represent that I (we) have included the information requested about all of my (our) transactions in PTC publicly traded common stock which are the subject of this claim, as well as the opening and closing positions in such securities held by me (us) on the dates requested in this Claim Form.

4.   I (We) certify that I am (we are) not subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code. (Note: If you have been notified by the Internal Revenue Service that you are subject to backup withholding, please strike out the prior sentence.)

I declare under penalty of perjury under the laws of the United States of America that all of the foregoing information supplied on this Claim Form by the undersigned is true and correct.

Executed this _____ day of _____, in _____, _____.
                            (Month / Year)          (City)        (State/Country)


_____          _____
Signature of Claimant                              Signature of Joint Claimant, if any


_____          _____
Print Name of Claimant                             Print Name of Joint Claimant, if any


(Capacity of person(s) signing, *e.g.*, Beneficial Purchaser, Executor or Administrator)

ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME.

THANK YOU FOR YOUR PATIENCE.

Case: 19-30088   Doc# 9189-1   Filed: 10/05/20   Entered: 10/05/20 14:44:21   Page 32 of 37

## REMINDER CHECKLIST

1. Please sign the above release and acknowledgement.

2. If this claim is being made on behalf of Joint Claimants, then both must sign.

3. Remember to attach copies of supporting documentation, if available.

4. **Do not send** originals of certificates.

5. Keep a copy of your Claim Form and all supporting documentation for your records.

6. If you desire an acknowledgment of receipt of your Claim Form, please send it Certified Mail, Return Receipt Requested.

7. If you move, please send your new address to:

   *PTC Therapeutics, Inc. Securities Litigation*
   Claims Administrator
   c/o A.B. Data, Ltd.
   PO Box 173032
   Milwaukee, WI 53217
   info@PTCTherapeuticsSecuritiesLitigation.com

8. **Do not use red pen or highlighter** on the Claim Form or supporting documentation.

**Appendix C**

**Authorization Requirements**

**If you are a nominee filing on behalf of your account holders, you must include the following documentation:**

- Affidavit attesting that your entity has legal rights and authorization from your account holders to file Proofs of Claim and Release on their behalf **and** that your account holders understand that they are bound by and subject to the terms of all releases that may be entered in this Settlement, etc.; and
- Authorization to sign on your account holders' behalf.

**If you are a third party filing on behalf of a nominee, you must include an Affidavit attesting to the following:**

- Your entity has the legal right and authorization from the nominee to file and sign any Proofs of Claim and Release on their behalf;

- Your entity has the legal right and authorization from the nominee's account holders to file and sign any Proofs of Claim and Release on their behalf; and

- The account holders understand they are bound by and subject to the terms of all releases that may be entered in the *In Re PTC Therapeutics, Inc. Securities Litigation*

**If you are a third party filing on behalf of another party, you must include an Affidavit attesting to the following:**

- Your entity has the legal right and authorization from the other party to file and sign any Proofs of Claim and Release on its behalf; and

- The other party understands it is bound by and subject to the terms of all releases that may be entered in the *In Re PTC Therapeutics, Inc. Securities Litigation*

**If you are not a nominee or a third party and would like to file claims electronically, you must include documentation supporting all transactional data of your claim as follows:**

- Documents may include, but are not limited to, a) photocopies of stockbrokers' confirmation slips; b) photocopies of stockbrokers' monthly statements reflecting ALL transactional data and how it was compiled for the opening of the Class Period through the end of the Class Period and 90-day look back period; or c) a signed letter from your broker, on their letterhead, providing all of the information that would be found on a confirmation slip and/or other aforementioned documents.

**Appendix D**

**Sample Cover Letter**

LETTERHEAD

Re: *In Re PTC Therapeutics, Inc. Securities Litigation*

Date:

Enclosed is a fully executed master Proof of Claim and Release with required authorizations and affidavits as well as an electronic media attachment, which is being filed in connection with the above-referenced matter on behalf of [COMPANY NAME(S) OR INDIVIDUAL NAME(S)] for the proprietary accounts of [ENTITY].

We, [ENTITY], hereby agree that further communication from the Claims Administrator may be conducted by email, and we accept sole responsibility to ensure the email address for [ENTITY] is updated in the event the email address provided on the master Proof of Claim and Release should change.

The attachment consists of a [CD, DVD, OR FLASH DRIVE] containing [NUMBER] accounts/claims in [ASCII, MS EXCEL, OR MS ACCESS] format with [NUMBER OF TRANSACTIONS] transactions for PTC Therapeutics Common Stock, as well as all the opening positions and closing positions held for [ENTITY]'s proprietary accounts. Each transaction contains corresponding account information for which the claims are being filed.

The total number of PTC Therapeutics Securities purchased or acquired [##.##] for the amount of [$0.0000] and PTC Therapeutics Securities sold [##.##] for the amount of [$0.0000][1] can be found on the enclosed [CD, DVD, OR FLASH DRIVE].

We, [ENTITY], attest that the data provided on the media attachment corresponds to [ENTITY]'s internal records.

I attest that the above information is true and correct.


Signature

Company Name

Job Title

Contact Information (including telephone number, fax number, and email address).

---

[1] Please list all other transactions, if applicable, including free receipts and free deliveries.

**ab DATA**

A.B. DATA, LTD.
abdataclassactions.com
New York | Washington, D.C. | Chicago | West Palm Beach | Milwaukee

**Electronic Claim Filing Template Mapping Instructions**

| Column | Field Name | Max Length | PTC Therapeutics Common Stock<br>FIELD DESCRIPTION |
|---|---|---|---|
| A | Account Number | 40 | Account number associated with the proprietary account for which transactions are being submitted with this Proof of Claim and Release. |
| B | Account Name | 40 | Name of individual, company, or entity associated with the account listed in Column A. |
| C | Full Name of the Beneficial Owner | 40 | Full name of the beneficial owner associated with the account listed in Column A. |
| D | TIN of the Beneficial Owner | 9 | Taxpayer identification number (TIN) for beneficial owner, no spaces and no dashes. |
| E | Beneficial Owner TIN Type (**E/S/U/F**) | 1 | **E** = Employer Identification Number (EIN); **S** = Social Security Number (SSN); **U** = Unknown; **F** = Foreign. |
| F | Care of: | 40 | Name of the entity to which Fund Distribution should be mailed. |
| G | Attn: | 40 | Name of the person to whose attention Fund Distribution should be mailed. |
| H | Street 1 | 40 | Street Address 1 for Fund Distribution. |
| I | Street 2 | 40 | Street Address 2 for Fund Distribution. |
| J | City | 25 | City for Fund Distribution. |
| K | State | 2 | State for Fund Distribution. |
| L | Zip Code | 5 | Zip code for Fund Distribution. |
| M | Province | 40 | Province for Fund Distribution. |
| N | Country | 40 | Country for Fund Distribution. |
| O | TIN of the Claimant | 9 | Taxpayer identification number (TIN) for claimant, no spaces and no dashes. |
| P | CUSIP/ISIN | 10 | CUSIP number or ISIN for common stock. |
| Q | Transaction Type/Holdings (**O/C/P/L/S/FD/FR**) | 2 | **O** = Opening position – Shares held as of the close of trading on November 6, 2014.<br>**C** = Closing position at the close of trading May 20, 2016.<br>**P** = Purchase between November 6, 2014 Through February 23, 2016.<br>**L** = Purchased or acquired between February 24, 2016 Through May 20, 2016.<br>**S** = Sale between November 6, 2014 Through May 20, 2016.<br>**FD** = Free delivery between November 6, 2014 Through May 20, 2016.<br>**FR** = Free receipt between November 6, 2014 Through February 23, 2016. |
| R | Trade Date | 10 | Trade date for transaction or holding date for opening and closing positions |
| S | Number of Shares of Common Stock | 19 | Number of shares associated with a transaction. No commas; use decimal point if needed. Up to four digits after decimal point. |
| T | Price Per Share **EXCLUDING** Commissions/Taxes/Fees | 19 | Price per share (USD) of common stock, excluding commissions/taxes/fees, associated with a transaction. No dollar sign, no commas; use decimal point, if needed. Up to four digits after decimal point. Leave blank when providing opening positions or closing positions. Use zero when specifying free receipts and/or free deliveries. |
| U | Total Price **EXCLUDING** Commissions/Taxes/Fees | 19 | Aggregate cost or proceeds received (USD), including commissions/taxes/fees. No dollar sign, no commas; use decimal point, if needed. Up to four digits after decimal point. Use zero when specifying free receipts and/or free deliveries. |

**\* All eligible PTC Therapeutics Common Stock for each account must balance. This means that the opening position plus total purchases, and free receipts during the Class Period MUST EQUAL the total sales and free deliveries during the Class Period plus 90-day lookback plus the closing position (O+P+L+FR=S+FD+C).**

**\* You MUST include a cover letter with your electronic file that provides the total number of accounts; total number of transactions; total number of purchases and sales; and contact name(s) with phone number(s) and email address(es) in the event that we have any questions or require further information. See Appendix D for a sample cover letter. Any electronic files not in accordance with these Electronic Claims Filing Guidelines are subject to rejection.**

**ab**
**DATA**
**A.B. DATA, LTD.**
abdataclassaction.com
New York | Washington, D.C. | Chicago | West Palm Beach | Milwaukee

| Account Number | Account Name | Full Name of the Beneficial Owner | TIN of the Beneficial Owner | Beneficial Owner TIN Type (E/S/U/F) | Fund Distribution Address | | | | | | | | | TIN of the Claimant | CUSIP | Transaction Type/Holdings (O/C/P/L/S/FD/FR) | Trade Date (MM/DD/YYYY) | Number of Shares | Price Per Share EXCLUDING Commissions/Fees/Taxes | Total Price EXCLUDING Commissions/Fees/Taxes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Care of: | Attn: | Street 1 | Street 2 | City | State | Zip Code | Province | Country | | | | | | | |