PILLSBURY WINTHROP SHAW PITTMAN LLP
PHILIP S. WARDEN (54572)
philip.warden@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:    415.983.1000
Facsimile:    415.983.1200

Counsel to Chevron Master Pension Trust
and Chevron UK Pension Plan

IN THE UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:<br>**PG&E, CORPORATION**<br>-and-<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>    **Debtors.** | No. 19-30088 (DM)<br>CHAPTER 11<br>(Lead Case)<br>(Jointly Administered) |
| ___ Affects PG&E Corporation<br>___ Affects Pacific Gas and Electric Company<br>_X_ Affects both Debtors<br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | **CHEVRON'S OBJECTION TO THE REORGANIZED DEBTORS' MOTION TO APPROVE SECURITIES ADR AND RELATED PROCEDURES FOR RESOLVING SUBORDINATED SECURITIES CLAIMS**<br><br>Date: October 28, 2020<br>Time: 10:00 a.m. (PT)<br>Before: (Telephonic Appearances)<br>    United States Bankruptcy<br>    Court Courtroom 17, 16th Floor<br>    San Francisco, California 94102 |

Chevron Master Pension Trust ("CMPT") and Chevron UK Pension Plan ("CUPP" and together with CMPT, "Chevron"), with claims totaling approximately $18 million dollars, through undersigned counsel, submit this objection (the "Objection") to the *Reorganized Debtors' Motion to Approve Securities ADR and Related Procedures for Resolving Subordinated Securities Claim* (the "ADR Motion") [Docket 8964], and respectfully represents as follows:

## BACKGROUND

On January 29, 2019 (the "Petition Date"), PG&E Corporation ("HoldCo") and Pacific Gas and Electric Company ("Utility", and together with HoldCo, the "Debtors") commenced voluntary cases for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California.

Both CUPP and CMPT are prepetition holders of the Debtors' publicly traded equity securities or debt securities. On April 16, 2020, CUPP and CMPT filed Rescission Proofs of Claim on account of those holdings at Claim Nos. 101,365 and 101,416 respectively. On May 14, 2020, CUPP and CMPT filed amended Recission Proofs of Claim at Claim Nos. 104,534 and 104,490 respectively (as amended, the "Chevron Rescission Claims").

On December 9, 2019, the Public Employees Retirement Association of New Mexico ("PERA") filed its *Motion to Apply Bank. Rule 7023 to Class Proof of Claim* (the "Initial 7023 Motion") [Docket No. 5042]. PERA is the court-appointed lead plaintiff in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "Securities Litigation") pending in the U.S. District Court for the Northern District of California on behalf of itself and the proposed class it represents in the Securities Litigation (the "Class"). On February 24, 2020, this Court denied the Initial 7023 Motion, but extended the bar date for individual members of the Class.

On September 1, 2020, the Debtors filed the ADR Motion proposing a three-step process. In the first step, the Debtors would seek certain information from securities claim holders to evaluate those claims and either mediate or object to them. The information would be submitted either via mail or through a specially designed online portal. The deadline to submit the information requested by the Debtors would be 28 days after receipt of the Trading Information

2
CHEVRON'S OBJECTION TO ADR MOTION
Case No. 19-30088

4834-3912-2893

Request Forms. If the Debtors did not get a response, they would then send a follow up reminder which allows for another 14 days. If no response came after the additional 14 days, the Debtors would be allowed to file a formal objection seeking disallowance. In relevant part, the Trading Information Request Forms seek "complete trading history, including, among other things, each purchase and sale separately along with the trade date of each separate transaction, identification of the type of transaction, e.g., a purchase or sale, the number of securities involved in the transaction, and the price of the transaction on a per security basis."

In the second step, three separate mechanisms for potential settlement would be employed: (1) offer procedures where the parties exchange settlement offers and counteroffers confidentially and without mediation; (2) abbreviated mediation processes that are mandatory and non-binding because formal mediation may not be appropriate for all claims, especially those with smaller asserted or potential claim amounts; and (3) standard mediation processes that are mandatory and non-binding, principally for claimants that have asserted or have larger potential claims.

In the third step, an omnibus objection procedure would be undertaken allowing Debtors to lodge objections, on an omnibus basis, to claims that are not otherwise settled and/or are facially or procedurally defective.

The hearing on the ADR Motion was set for September 22, 2020 with a deadline to file an opposition to the ADR Motion of September 15, 2020 at 4:00 pm (Pacific Time). On September 12, 2020, the Debtors filed a stipulation continuing the hearing on the ADR Motion to October 28, 2020 and extending the deadline to file responses or objections to October 5, 2020, at 4:00 pm (Pacific Time) (the "Stipulation") [Docket No. 9030]. On September 14, 2020, the Court entered its order approving the Stipulation [Docket No. 9036].

On September 28, 2020, PERA filed a new 7023 Motion (the "New 7023 Motion") [Docket No. 9152] seeking distinct relief from the Initial 7023 Motion to provide an alternative to the ADR Motion and a more efficient and fair means for handling both the recission claims against the Debtors' estate.

On October 5, 2020, PERA filed its Objection to the ADR Motion (the "PERA ADR Objection") [Docket No. 9189]. The PERA ADR Objection rightfully addresses many of the same

issues discussed below, as well as others. Chevron joins in the PERA ADR Objection to the extent the arguments therein are consistent with the arguments in this Objection.

## OBJECTION

The Debtors have proposed, through the ADR Motion, a process to resolve approximately 7,000 securities claims that would not only be exceedingly expensive to implement, but also highlight the disparity in resources between the Debtors on one side and individual security holders on the other. The Debtors conceived and proposed the ADR Motion without consulting the claimants and it appears to be a unilateral effort to achieve the Debtors' goal, that is, to achieve the most abstemious settlement possible of the recission claims.

By the ADR Motion, Debtors seek to use their unitary, well-represented position to divide and conquer claimants who lack the opportunity and financial resources to present a fulsome challenge. The Debtors deliberately proposed a complex multi-step process that contains several time-consuming, complicated, and (as a result) expensive procedures targeting each individual claimant. These complex processes would force small claimants to weigh the expense of pursuing their claim (and the expected cost of defending Debtors' objections) against the value of the claim itself. Most will abandon the field of battle in the face of this pyrrhic result. The Debtors, on the other hand, have granted themselves functionally unlimited resources to prosecute the objections and benefit from the inequality built into the Debtors' proposed process.

The Debtors have also seeded their proposed ADR procedures with a series of potential forfeitures and traps for the entities less sophisticated in Chapter 11 proceedings. First, the burdensome, one-sided fact gathering process provides the Debtors with information about all claims while individual claimants receive no corresponding communal benefit to obtain or share information against the Debtors. To remedy this, the court should provide all claimants with the ability and forum to collaborate on their claims.

Second, the proposed mediation process creates unnecessary complications and inequities:
    a. the Debtors (and ONLY the Debtors) pick the parties that will serve as the mediators (the "Mediators") without consultation with the claimants—like only one sports team choosing all the referees for all of their the games;

      b. the Debtors (and ONLY the Debtors) are allowed to brief the Mediators on issues relating to the specific claims being disputed before the Mediators, but the claimants holding those claims are allowed no such right; and

      c. in an "impasse" between the Debtors and a claimant (determined by the Debtors and the mediators they select), the Mediators can have *ex parte* conversations with Court, but not the ordinary claimants.

Third, ordinary claimants will not likely have the resources or financial wherewithal to hire an expert with resources even approaching parity with the Debtors and their experts. Again, the deck looks stacked to an ordinary claimant who would not know how to find an expert, much less pay for one. The Debtors seek to overwhelm ordinary claimants with a platoon of well-heeled experts (by design).

Fourth, ADR Motion virtually guarantees asymmetrical outcomes. The use of omnibus objections to the common issues would be met with unique objections on a claimant-by-claimant basis. Adjudication of the unique objections is likely to produce gross inconsistencies. Conversely, the application of Rule 7023 would allow the efficient implementation of uniform defenses collectively and limit the litigation thereof to one set of briefs. Yet, under the Debtors' proposed procedures each claimant is left alone to fight an asymmetrical war.

Debtors intend to present extensive facts underpinning the recission claims with complex legal issues to which most claimants cannot economically or practically respond. Equity forbids this result. The procedures would allow the Debtors to isolate each individual claimant and force them, very likely without the level of technical and legal expertise possessed by the Debtors, to carry a heavy burden of discovery and expenses. The Court should not put the burden on claimants to resist each of Debtors' objections without help, without coordination, underrepresented, and alone.

The New 7023 Motion proposes a superior process whereby the claimants can effectively pool their resources and meet the Debtors on a fair playing field in order to reach a fair and equitable settlement of the recission claims. The complexity necessitates the use of an expert whose cost the claimants will be unable to justify individually. Even if some claimants employ

5

experts, small differences between claimants' experts could be exploited. To avoid such an inequitable pitfall, a collectively chosen and compensated expert should be utilized.

Chevron acknowledges benefits of the New 7023 Motion because it is equitable, reasonable, minimizes the burden on the parties and this Court, and follows a logical, fair process:

a. negotiation of damages claims on a fair, class-wide basis before a single nationally recognized mediator with securities litigation experience;

b. a mediator chosen by this Court (not Debtors) and paid by both sides;

c. an appropriate damage formula tailored to specific allegations, dictating damages on an objective basis by accounting for the purchase and sale date of the securities;

d. uniform measurement of claims as opposed to the *ad hoc* ADR process where the outcome is a function of relative bargaining power; and

e. the opportunity to agree to negotiate and then agree on metrics for an appropriate damage formula.

This process will prove easier to administer because the nationally recognized expert mediator and parties will be acting together to determine damages objectively, formulaically, and collectively. The Court retains the opportunity to construe and apply the Plan's terms on a fair, class-wide basis. The process has proven to be effective in many other securities class action resolutions.

Lastly, any requirement of in person attendance, at mediations or otherwise, would be particularly burdensome for CUPP, which is headquartered in the U.K.

# CONCLUSION

WHEREFORE, Chevron respectfully requests that, unless this Objection is resolved or withdrawn, the ADR Motion be denied. Chevron continues to reserve all rights and requests that the Court order such other relief as is just and necessary.

Dated: October 5, 2020

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Philip S. Warden*
PHILIP S. WARDEN

Counsel to Chevron Master Pension Trust and Chevron UK Pension Plan