UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

-oOo-

| | |
|---|---|
| In Re: | ) Case No. 19-30088-DM |
| | ) Chapter 11 |
| PG&E CORPORATION AND PACIFIC | ) |
| GAS AND ELECTRIC COMPANY | ) San Francisco, California |
| | ) Tuesday, October 13, 2020 |
| Debtors. | ) 10:00 AM |
| _____ | ) |

MOTION OF ELLIOTT MANAGEMENT CORPORATION FOR (I) ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM AND (II) TO THE EXTENT NECESSARY, RECONSIDERATION AND RELIEF FROM THE CONFIRMATION ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B) [8536]

REORGANIZED DEBTORS' THIRD OMNIBUS OBJECTION TO CLAIMS (DUPLICATE CLAIMS). FILED BY PG&E CORPORATION [8753]

REORGANIZED DEBTORS' FIFTH OMNIBUS OBJECTION TO CLAIMS (DUPLICATE CLAIMS). FILED BY PG&E CORPORATION [8759]

REORGANIZED DEBTORS' SIXTH OMNIBUS OBJECTION TO CLAIMS (SATISFIED CLAIMS). FILED BY PG&E CORPORATION [8978]

REORGANIZED DEBTORS' SEVENTH OMNIBUS OBJECTION TO CLAIMS (SATISFIED CLAIMS) FILED BY PG&E CORPORATION [8981]

REORGANIZED DEBTORS' EIGHTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS) FILED BY PG&E CORPORATION [8983]

(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1                                    REORGANIZED DEBTORS' NINTH
                                      OMNIBUS OBJECTION TO CLAIMS
 2                                    (NO LIABILITY CLAIMS) FILED
                                      BY PG&E CORPORATION [8986]
 3
                                      REORGANIZED DEBTORS' TENTH
 4                                    OMNIBUS OBJECTION TO CLAIMS
                                      (PLAN PASSTHROUGH
 5                                    ENVIRONMENTAL CLAIMS) FILED
                                      BY PG&E CORPORATION [8988]
 6
                        TRANSCRIPT OF PROCEEDINGS
 7               BEFORE THE HONORABLE DENNIS MONTALI
                     UNITED STATES BANKRUPTCY JUDGE
 8
       APPEARANCES (Via Zoom):
 9     For the Debtors:          STEPHEN KAROTKIN, ESQ.
                                  RICHARD W. SLACK, ESQ.
10                                Weil, Gotshal & Manges LLP
                                  767 Fifth Avenue
11                                New York, NY 10153
                                  (212)310-8000
12
       For Elliott Management    GREGG M. GALARDI, ESQ.
13     Corporation:              Ropes & Gray LLP
                                  1211 Avenue of the Americas
14                                New York, NY 10036
                                  (212)596-9000
15
       For Canyon, Citadel,      PHILIP D. ANKER, ESQ.
16     Davidson Kempner,         Wilmer Cutler Pickering Hale and
       Farallon, Sculptor, and   Dorr LLP
17     Värde:                    250 Greenwich Street
                                  New York, NY 10007
18                                (212)230-8890

19     For Pacific Investment    DAVID P. SIMONDS, ESQ.
       Management Company LLC:    Hogan Lovells U.S. LLP
20                                1999 Avenue of the Stars
                                  Suite 1400
21                                Los Angeles, CA 90067
                                  (310)785-4600
22

23

24

25
```

escribers

(973)406-2250 | operations@escribers.net | www.escribers.net

```
1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17
       Court Recorder:              LORENA PARADA/ANKEY THOMAS
18                                  United States Bankruptcy
                                    Court
19                                  450 Golden Gate Avenue
                                    San Francisco, CA 94102
20

21     Transcriber:                 LINDA FERRARA
                                     eScribers, LLC
22                                   7227 N. 16th Street
                                     Suite #207
23                                   Phoenix, AZ 85020
                                     (973)406-2250
24

       Proceedings recorded by electronic sound recording;
25     transcript provided by transcription service.
```

PG&E Corporation and Pacific Gas and Electric Company

1    SAN FRANCISCO, CALIFORNIA, TUESDAY, OCTOBER 13, 2020, 10:30 AM

2                              -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Calling the matter of PG&E Corporation,

5    and we're recording now, Your Honor.

6            Mr. Simonds is joining now.

7            THE COURT:  Okay.  Mr. Simonds, can you hear me?  Mr.

8    Simonds, can you hear me?  And if so, you need to turn your

9    camera on, and say something in the mic.

10           Ms. Parada, can you hear Mr. Simonds?

11           THE CLERK:  No, Your Honor.

12           THE COURT:  All right.  And we have others to come in?

13   Mr. Simonds, can you hear me now?

14           THE CLERK:  One moment while I bring in Mr. Slack, he

15   has a hand raised.  Mr. Slack is joining now.  Mr. Galardi --

16           THE COURT:  You should bring in Mr. Anker also.  All

17   right.

18           Mr. Simonds, I can see you.  Can you hear me?

19           MR. SIMONDS:  I can, Your Honor.  Can you hear me?

20           THE COURT:  All right.  Yes, fine.

21           Mr. Slack, can you hear me?

22           MR. SLACK:  I can, Your Honor.  Good morning, or

23   afternoon, wherever you are sitting.

24           THE CLERK:  Mr. Anker is joining.

25           Shall I bring in Mr. Karotkin?  He has raised a (audio

(973) 407-1250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    interference).  Your Honor?

2          THE COURT:  Yes.

3          THE CLERK:  Your video has frozen.

4          THE COURT:  My video has frozen?

5          THE CLERK:  Yes, on my end.

6          THE COURT:  Mr. Slack, can you see me?

7          MR. SLACK:  I can but you are frozen, Your Honor.

8          THE COURT:  Can you hear me all right?

9          MR. SLACK:  I can.  Let's see if I unfreeze, and if I

10   stay frozen, I'll just take -- turn the camera off and do it by

11   audio.

12          Mr. Anker, can you hear me?

13          MR. ANKER:  I can, and Your Honor, you -- I do now see

14   you moving your head.  So I think you've unfrozen.

15          THE COURT:  Okay.  Who is appearing for Elliott?

16   Is --

17          MR. ANKER:  Mr. Galardi and Mr. Devore are appearing

18   for Elliott, Your Honor.

19          THE COURT:  Okay.

20          THE CLERK:  Mr. Galardi is joining --

21          THE COURT:  Ms. Parada, bring --

22          THE CLERK:  -- in.

23          THE COURT:  Yeah, okay, there we go.  I thought we

24   were going to see Mr. Goldblatt this morning after his warmup

25   act this morning with the U.S. Supreme Court.

(973) 407-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. ANKER:  He passes on his regards, Your Honor, but
2  as you note, he did have a warmup act this morning, and he
3  reported to me that he was exhausted, but felt good.  I'll
4  leave it at that.
5    THE COURT:  Well, it was just a warmup.  I always
6  figured that's what he needed before he came into the main
7  event here.
8    MR. ANKER:  We knew --
9    THE COURT:  Mr. Galardi, can you hear me and see me?
10    MR. GALARDI:  I can both hear you and see you, Your
11  Honor.  Thank you.
12    THE COURT:  All right.  So as soon as Mr. Karotkin
13  comes in, I'll ask you all to state your appearances, and then
14  we'll get underway with the discussion.  So will you bring --
15  are you having him on the way in, Ms. Parada?
16    THE CLERK:  Yes, Your Honor.  Mr. Karotkin's joining
17  now.
18    THE COURT:  All right.  Good morning, Mr. Karotkin.
19  Good to see you.
20    MR. KAROTKIN:  Good to see you, sir.  Thank you.
21    THE COURT:  Are you going to argue also, Mr. Karotkin?
22    MR. KAROTKIN:  It depends on how Mr. Slack does.
23    THE COURT:  Okay.  All right.  Why don't you state
24  your appearances?  Let's go with the debtors' counsel, and then
25  Elliott, and then the other two counsel.  Just state your

PG&E Corporation and Pacific Gas and Electric Company

1   appearances for the record, please.

2           MR. KAROTKIN:  Stephen Karotkin --

3           MR. SLACK:  Your Honor, Richard Slack --

4           MR. KAROTKIN:  Sorry.

5           MR. SLACK:  Go ahead, Steve.

6           MR. KAROTKIN:  Go ahead.  Go ahead, Richard.  Go

7   ahead.

8           MR. SLACK:  Your Honor, Richard Slack from Weil

9   Gotshal & Manges for the reorganized debtors.

10          MR. KAROTKIN:  Stephen Karotkin from Weil Gotshal &

11  Manges for the reorganized debtors, as well.

12          THE COURT:  All right.

13          MR. GALARDI:  Good morning, Your Honor.

14          Gregg Galardi on behalf of Elliott Management Corp.

15          MR. ANKER:  Good morning, Your Honor.

16          Philip Anker of Wilmer Cutler Pickering Hale and Dorr

17  on behalf of the Canyon, Citadel, Farrallon, Davidson Kempner,

18  Sculptor and Varde parties.

19          MR. SIMONDS:  Good morning, Your Honor.

20          David Simonds of Hogan Lovells U.S. LLP on behalf of

21  PIMCO.

22          THE COURT:  And Mr. (audio interference).

23          All right.  Come on -- I'll try to make everything

24  work here.  My connection was working fine.

25          Have you or Elliott, et al., divided up your time?

PG&E Corporation and Pacific Gas and Electric Company

1  Mr. Galardi, you have to unmute your mic.

2       MR. GALARDI:  Apologies, Your Honor.  We will take --

3       THE COURT:  Mr. Galardi, you've got your microphone

4  muted.

5       MR. GALARDI:  It's no longer muted, Your Honor.  Can

6  you hear me?

7       THE COURT:  Mr. Galardi, turn on your mic.

8       MR. SIMONDS:  Your Honor, I hear Mr. Galardi.  This is

9  David Simonds.

10      THE COURT:  Yes.

11      MR. GALARDI:  It is on, Your Honor.  Can you hear me

12  now?  You're frozen on my screen.

13      THE COURT:  Yeah, I can hear you fine.

14      MR. GALARDI:  Okay.  Your Honor, we have divided up

15  the time.  We would take twenty minutes for the beginning of

16  our argument, ten for rebuttal, and then Mr. Anker and I have

17  decided to split that first twenty minutes, twelve and eight,

18  and the final ten minutes, I believe seven and three.

19      THE COURT:  All right.  Well, it froze recently but if

20  it's acting quirky, and it freezes, I will just turn the camera

21  off, and stay on in the audio class.  So all right.

22      I've read all the briefs.  There's a lot of briefing,

23  and I've never in my career had to debate on what the word

24  pursuit means, except pursuit of culprits, but here we are

25  pursuing -- pursuit is the critical word.

PG&E Corporation and Pacific Gas and Electric Company

1        But Mr. Galardi, you're up, and I'm looking forward to

2   hearing from you.

3        MR. GALARDI:  Thank you, Your Honor.  And again, I

4   think you've put your finger exactly on the critical phrase

5   here.  So let me just level set and be quick about it.

6        Your Honor, the issue as pursuant to the scheduling

7   order was whether the debtors will, on the face of the motion,

8   and the undisputed facts show that there is no circumstance

9   under which Elliott and the noteholders could proceed and

10  succeed on their administrative claims.  Elliott and the

11  noteholders believe that they have not carried that burden

12  today.

13       I think to start, the debtors do not dispute that if

14  there were a breach of the -- our noteholder RSA, that would

15  rise to an administrative claim, whether there was a breach,

16  whether that's allowed is a factual matter I will leave for

17  another day.

18       What the debtors have interposed is, I would think,

19  five objections on legal basis and facts.  First is that the

20  exculpation provision of the plan 10.8, exculpates this claim.

21  Second is, if it weren't exculpated, it was released, and then

22  I will say there were three follow-up arguments, waiver,

23  forfeiture, and no grounds to go and seek relief under 60(b).

24       I think Your Honor has put your finger on it, and I am

25  not capable enough of being able to put the language of the

PG&E Corporation and Pacific Gas and Electric Company

1    plan in front of you, but we specifically --

2          THE COURT:  I have -- by the way, Mr. Galardi, I have

3    excerpts, every single critical excerpt is right here in front

4    of me, so you can --

5          MR. GALARDI:  That's great.

6          THE COURT:  -- refer to it, and I'll have it.

7          MR. GALARDI:  And I figured that everybody else does

8    as well, Your Honor.  So going specifically to 10.8, which I

9    think goes right to the heart of Your Honor's question is

10   whether or not 10.8 constitutes an exculpation of the debtors

11   for conduct that Elliott claims could give rise to a breach of

12   the noteholder RSA.

13         Your Honor has seen in the debtors' opening brief, and

14   we would endorse the debtors' opening brief with respect to

15   contracts interpretation, as you have to read the words as used

16   in the common language, that you read specific where general is

17   ambiguous, and as Your Honor has noted, you've never had a

18   dispute perhaps about the phrase pursuit, but that is exactly

19   the issue in this.  Whether or not claims arising from a

20   breach, an alleged breach, of the noteholder RSA fall within

21   claims that are exculpated, our view is based on the specific

22   language of the terms "negotiation and pursuit" of the RSA,

23   there is no meaningful way to say that a claim for breach falls

24   within that particular provision.

25         In particular --

PG&E Corporation and Pacific Gas and Electric Company

1        THE COURT:  And let me --

2        MR. GALARDI:  -- as in --

3        THE COURT:  -- (audio interference) any guidance on

4   what the word pursuit means in this context?

5        MR. GALARDI:  Well, I think in this context, it has --

6   it can have a very specific meaning to -- just like you say,

7   you pursue bank robbers, or you pursue them, you are going

8   after them, and once you capture them, you are no longer

9   pursuing them.  There is a temporal element to it that doesn't

10  really govern, and we would say in this particular instance,

11  and by its close neighbor, negotiation, it's negotiation and

12  pursuit.  It goes to exactly the kinds of dialogues and

13  questions which Your Honor was somewhat familiar with, but a

14  lot happened outside of the court, the negotiations that were

15  to actually get and enter into.

16        So in that sense, we see pursuit means nothing but the

17  chasing down of the noteholder RSA, the temporal element

18  leading in, and the events leading into the RSA.

19        Another way, Your Honor, and I think the debtors

20  raised this at some point with respect to the reply, someone

21  might say well, pursuit could also be, that is trying to bring

22  it to the finish line.  But in that -- and that language would

23  really be in furtherance of.

24        But again, Your Honor, we think that a breach, if

25  there is a breach, of the noteholder RSA, even if you were to

PG&E Corporation and Pacific Gas and Electric Company

1    read pursuit to be something in furtherance of the RSA, and you

2    were going to read it broadly, which we don't think is

3    appropriate, and go from entry into -- to confirmation, there

4    is no meaningful way to say that pursuit of the noteholder RSA,

5    that a breach could possibly be in pursuit of the noteholder

6    RSA.

7         So in our view, this is a specific claim, an

8    administrative claim, if it is a breach, and if we can sustain

9    our burden to show that it's a breach, then we believe it is

10   not an exculpated claim.

11        We believe that the other language around that, you

12   know, all the other language is not specific, and we believe

13   that 5. -- 2.1, I'm sorry, is the general rule that says

14   administrative claims get paid, then you see --

15        THE COURT:  Well, there's a lot of time spent in the

16   briefs about how can there be a -- there's a conflict between

17   2.1 and 10.8, but I mean, I think the debtors are right in this

18   sense, an administrative claim has to be an allowed

19   administrative claim, and if there's no allowed claim, then

20   there's no conflict between the sections.  You don't disagree

21   with that, do you?

22        MR. GALARDI:  No, I absolutely don't disagree with

23   that, Your Honor, but the question really comes, which comes

24   first, and which comes second.  I think the first issue is you

25   think you have to pay under the Bankruptcy Code, administrative

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    claims.  Then the question is, is there a carve-back of what

2    administrative claims can be paid.  I think exculpation is

3    exactly that carve-back of administrative claims.  They don't

4    have to be paid.  Leave aside that only allowed administrative

5    claims have to be paid.

6         Then the carve-back has said, even if you had a valid

7    breach of fiduciary duty, or misrepresentation in the

8    negotiation and pursuit of the RSA, we don't dispute that those

9    types of claims are exculpated.  So now the question is --

10        THE COURT:  So if Elliott said I want a million

11   dollars because we negotiated, we bargained back and forth with

12   the debtor, and that the result was the RSA, you'd probably

13   concede that was a pursuit of the RSA --

14        MR. GALARDI:  Absolutely, Your Honor.

15        THE COURT:  -- and that's not --

16        MR. GALARDI:  Absolutely.

17        THE COURT:  Okay.

18        MR. GALARDI:  And even to the extent --

19        THE COURT:  We were pursuing the criminal --

20        MR. GALARDI:  -- of (indiscernible) --

21        THE COURT:  -- but we didn't catch him.  Okay.

22        MR. GALARDI:  Okay.

23        THE COURT:  Okay.  Got it.

24        MR. GALARDI:  And even if it were -- you know, again

25   only subject to willful misconduct or something, but anything

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  in that sense, knowingly and willingly, was given an

2  exculpation.  Those types of actions, and quite frankly, people

3  were negotiating back and forth.  There could've been claims.

4  There might not have been claims, but those are definitely

5  carved out.

6          Now the question is well, was the administrative claim

7  for breach carved out, and our view is no, because the

8  exculpation is specific to negotiation and pursuit.  A breach

9  claim is not -- both leading up to the agreement, or we would

10 say even in furtherance of the agreement -- something that can

11 be carved out that was actually carved out and waived.

12         So we think we fall within 10.8, and it's not

13 exculpated, so you're back to the general rule, and allowed

14 administrative claim.

15         Similarly, when you get --

16         THE COURT:  Well, but now -- but getting back to the

17 merits, if at the end of the day, the debtors win on the

18 merits, then there is no allowed administrative claim, but

19 that's --

20         MR. GALARDI:  Absolutely agree.

21         THE COURT:  -- that's okay.  That's the same with any

22 other administrative claim that's defeated, whether it be a

23 trade claim, or Mr. Karotkin's reasonable fees, or anyone else

24 that has a traditional admin claim, right?

25         MR. GALARDI:  Absolutely correct, Your Honor.  There

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    is nothing -- today is only about whether we get to go to that

2    hearing on the merits, as opposed to our dismissed because of

3    the exculpation is a bar to even asserting the claim.

4            Similarly, Your Honor, we believe that 10.9 for a

5    similar reasons, plus two other carve-outs in the except

6    language is not a bar to our claim because that says again, it

7    says except the right to remain in effect after the effective

8    date, and Your Honor we believe that an administrative claim

9    was preserved.  There are 7.2 section, that allows for them to

10   dispute an administrative claim, and Your Honor, if it's not

11   settled, would resolve that.

12           Again, back to your fundamental point that an

13   administrative claim can be asserted but it could still be

14   disallowed post the effective date.

15           THE COURT:  Well, does Elliott concede that 10.9(b) is

16   a valid release though, that it released anything that falls

17   within this exception to 10.b -- 10.9(b)?

18           MR. GALARDI:  Again, I guess you're -- I'm not sure

19   exactly what you're asking, but let me say this, I do believe

20   it is a valid release.

21           THE COURT:  Okay.

22           MR. GALARDI:  We do believe that it released types of

23   claims, but we do not believe that it released the type of

24   claim that the breach of the noteholder RSA would've been able

25   to assert, and that is because of the two except clauses,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  because those rights to pursue those administrative claims were

2  reserved by the right to remain in effect after the effective

3  date, which again administrative --

4       THE COURT:  Well, I guess I'm having trouble -- but

5  it's circular because the only right to get best efforts ended

6  on the effective date.  So how did anything survive the

7  effective date that (audio interference) you could (audio

8  interference).

9       MR. GALARDI:  You froze a little bit, Your Honor.

10      THE COURT:  Sure.

11      MR. GALARDI:  But I think what you were asking me, and

12 I'll stay -- say it is, if the best efforts ended on the

13 effective date, how could you pursue a claim --

14      THE COURT:  What does that mean?

15      MR. GALARDI:  -- after the effective date for the best

16 efforts?

17      THE COURT:  The (audio interference).

18      MR. GALARDI:  I don't know if anyone else is having

19 problems hearing his Honor --

20      THE COURT:  Another (audio interference).

21      MR. GALARDI:  -- but I'm having a problem.

22      MR. ANKER:  I too am, Gregg.

23      THE COURT:  There's the (audio interference) operative

24 (audio interference) event (audio interference) or let's put it

25 this way --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        THE CLERK:  Your Honor, this is Ms. Parada?

2        THE COURT:  -- the debtors' failure to --

3        THE CLERK:  We're having --

4        THE COURT:  -- (audio interference) --

5        THE CLERK:  -- trouble hearing you.

6        Counsel, it appears we've lost Judge Montali.  One

7   moment while we try and reconnect.

8        THE COURT:  And again, I think -- can you hear me, Ms.

9   Parada?

10        THE CLERK:  Yes, Your Honor.  I can hear you, and I

11   see you now.

12        THE COURT:  Well, I'm sorry, gentlemen, I didn't --

13   you know, everything was working fine.  So Mr. Galardi, let's

14   go back up to the discussion about 10.9(b) and start over.  I

15   won't run the clock against you.  It's certainly my fault here.

16   Bad connection.

17        MR. GALARDI:  And Your Honor, I think what you were

18   asking me when I lost you was well, didn't best efforts all

19   terminate on the effective date, and so why is there not a

20   release?  Am I paraphrasing your question?

21        THE COURT:  Yes, yes.  That's correct.

22        MR. GALARDI:  Sure.  Your Honor, I think the issue

23   though is we are not saying that best efforts extended beyond

24   the effective date.  What we are saying is a claim arose prior

25   to the effective date, and pursuant to the express provisions

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   of the plan, 2.1, 7.2, I believe it is, and all the other

2   provisions, we had the right to enforce that as a breach of

3   contract claim, just as anybody else could administer it -- do

4   an administrative claim.

5           So it wasn't that there were best efforts breached

6   post-effective date.  The efforts were -- we allege they were

7   breached beforehand, and then what 10.9 says is that as long as

8   you had that right in effect, as a -- to bring the breach claim

9   as of the effective date, and we did under the plan, then --

10  and it was brought under the plan, we were free to pursue that.

11          Indeed, in this case, unlike some cases, the debtor

12  didn't put a bar date for administrative claims.  So our view

13  would be as a breach of contract matter under California law,

14  we could've waited four years.  We didn't.  We pursued it.  We

15  pursued it right after the effective date, and we were entitled

16  to do --

17          THE COURT:  Yeah, but you see --

18          MR. GALARDI:  -- under 2.1 and 7.2 of the plan.

19          THE COURT:  If you go down to the next page of 10.9(b)

20  in the middle of the very long, long paragraph, beginning at

21  about lines -- on the margin, lines 9 through 13, there's some

22  pretty broad language, and not language that's limited by the

23  word pursuit.  So doesn't that get you anyway, in terms of --

24  it's hard to find where it is but -- because it's a long

25  sentence, but it seems to be that it's very, very broad in

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    terms of what is released --

2            MR. GALARDI:  But --

3            THE COURT:  -- not limited to pursuit.  Pardon me?

4            MR. GALARDI:  Well, but I don't think it has to be

5    limited to pursuit, Your Honor, and I'm trying to see the

6    specific language, but as I have 10.9, what it is limited by

7    however, is except for the rights that remain in effect, and

8    after the effective date, to enforce the plan and the plan

9    documents, and again, and as except as otherwise provided in

10   the plan or in the confirmation order.

11           Those are two carve-outs specifically that allow,

12   regardless of all the other words, and there's lots of them

13   there, regardless of the words, as long as we had the right in

14   the plan, which we say we do as an administrative claim, as a

15   result of the breach, you don't swallow that all up.

16           What we couldn't do, for example, is pursue third

17   parties, but we could in fact, pursue the debtors on our claims

18   as pursuant to the plan, which the plan specifically

19   contemplated.

20           So I understand that that's very broad language, and

21   we could also say, well, it's broad and you go back to the

22   exculpation, but I think you have to start with the premise,

23   it's an administrative claim, it's not exculpated.  Therefore,

24   we have it.  And the release provisions say that to the extent

25   I have it, under the plan, and could enforce it under the plan,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    I could do so after the effective date.

2         That's the simple argument on -- it seems to me on

3    10.9, and the debtors have the burden to say why --

4         THE CLERK:  Excuse me, counsel?  Ms. -- oh, I'm sorry.

5    We had lost you for a minute --

6         THE COURT:  I'm --

7         THE CLERK:  -- Judge -- Your Honor.

8         THE COURT:  No, I don't -- I am very frustrated again

9    by this because I'm not supposed to be having this (audio

10   interference).

11        (Pause.)

12        THE COURT:  Sorry about this.  This is not something

13   planned.  Give me one second.  I just have to move some papers.

14        (Pause.)

15        THE COURT:  Okay.  Let's try it now.

16        Mr. Karotkin never would've gotten his plan confirmed

17   on video, if I had the bad connections like I do today.  All

18   right.

19        MR. GALARDI:  I understand how frustrating it can be,

20   Your Honor.  May I just try to finish up on your question about

21   the broad language in --

22        THE COURT:  Yes.

23        MR. GALARDI:  -- 10.9(b)?

24        THE COURT:  Uh-hum.

25        MR. GALARDI:  So Your Honor, first I think there's two

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    aspects to it, one is when you look at claims against the

2    debtor, if you read it as broadly as Your Honor suggests it

3    might have been read, we see no principled objection -- no

4    principled way to demarcate between -- let's take a few classic

5    administrative claims, Weil Gotshal's fees, Lazard's fees, the

6    fee of the claims agent.

7           The only way those claims come in against the debtors,

8    is if it is this -- the two except language which we emphasized

9    in our pleadings, except the rights that remain in effect from

10   and after the effective date, and except as otherwise provided

11   in the plan, and that would include certain litigation claims

12   like ours, to the extent those litigation claims were not cut

13   back by the exculpation.

14          So Your Honor, we think that that is the appropriate

15   reading, but then it's not just simply -- but there are still

16   claims, it is meaningful, there are still claims for which

17   there are releases.  The released parties are far broader than

18   the debtors and the reorganized debtors, and so we do believe

19   that there are claims that are released with respect to third

20   parties.

21          So we believe that you can give meaning to 10.9

22   without the particular broad reading of what we believe is

23   still preserved, the right to go with administrative claims.

24          THE COURT:  Okay.

25          MR. GALARDI:  So maybe I'll turn it to Mr. -- I think

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    I've actually used my twelve minutes, Your Honor, so I may turn

2    it over to Mr. Anker, unless you had questions with me.

3            THE COURT:  No, since I have been disconnecting for

4    more than twelve minutes, you have -- if you want to -- we're

5    just going to be loose on the time here, but let's let Mr.

6    Anker add what he wants to add, and then I'll come back to --

7            MR. GALARDI:  Thank you.

8            THE COURT:  -- you, and you'll have plenty of time for

9    rebuttal.

10           Mr. Anker?  Good morning, again.

11           MR. ANKER:  Good morning.  Good morning, Your Honor.

12   Can you hear me?

13           THE COURT:  Perfectly well.

14           MR. ANKER:  Your Honor, I really want to make two

15   points, both going to questions you asked and let me start with

16   the last one 10.9(b), and I too have the plan with the numbers,

17   and I want to make sure you see the language that Mr. Galardi

18   was referring to.  If on page 85 of 108, you start where

19   10.9(b) begins --

20           THE COURT:  Right.

21           MR. ANKER:  -- it's "As of and subject to the

22   occurrence of the effective date, except for the rights (audio

23   interference) remain in effect from and after the effective

24   date to enforce the plan and the plan documents."  That

25   exception clause (audio interference) everything that follows,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    and our position simply is that one of the rights that remains

2    in effect from an (audio interference) effective date under the

3    plan is the right to file and have adjudicated an

4    administrative expense claim for events that occurred before

5    the effective date.

6         And then if you go on to the next page, that one

7    exception would be sufficient but if you go to line 2, it says,

8    "and except as otherwise provided in the plan, or the

9    confirmation order", and the plan provides that no

10   administrative claims are discharged in 2.1, all can be filed,

11   and all can be adjudicated post-effective date.

12        THE COURT:  Now that goes back to the same point that

13   I mentioned with Mr. Galardi about circular because if it's not

14   an allowed administrative claim, then there's nothing to

15   assert.

16        MR. ANKER:  If there's another provision in the plan

17   that disallows it, I completely agree with you, but that gets

18   to whether the exculpation provision disallows it, or -- and I

19   completely agree with your point, if you deny their initial

20   objection, we still have to prove that we have a valid admin

21   claim.

22        THE COURT:  Right.

23        MR. ANKER:  So I agree if the admin --

24        THE COURT:  And if you lose that, then --

25        MR. ANKER:  Right.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  -- we're back to square one because you

2    never had an allowed administrative claim to begin with.

3    MR. ANKER:  Correct, Your Honor.

4    THE COURT:  Okay.

5    MR. ANKER:  The only question before you today though

6    is does this release kill us from the outset, and the answer is

7    it doesn't kill us from the outset because of both exceptions.

8    And I want to pick up just quickly on the last point Mr.

9    Galardi made about how reading those exceptions not to mean

10   what they say, will lead to an absurd result.

11   This provision (audio interference) all Releasing

12   Parties, cap R, cap P.  If you look at the definition of that

13   term as defined in the plan at the outset in the definitions

14   in -- on page 31 of 108, section 1.180, the releasing parties

15   include (a) the debtors.  Should I wait, Your Honor, or are you

16   with (audio interference)?

17   THE COURT:  No, I don't -- I'm not going to turn to

18   the plan.

19   MR. ANKER:  Okay.  That's all right.

20   THE COURT:  I got it.  I know what the (audio

21   interference).

22   MR. ANKER:  And then it says in S, as in Sam, "and

23   with respect to each of the foregoing entities, A through R,

24   such entities" and I'm going to skip words, "financial advisors

25   and attorneys."

PG&E Corporation and Pacific Gas and Electric Company

1    So how (audio interference) Weil Gotshal, how is it

2    that Lazard, how is it that all of them can assert an

3    administrative claim for their fees, notwithstanding that they

4    are Releasing Parties under 10.9(b).  They can assert their

5    claim, and I don't belittle it.  They have a right to because

6    of the two exceptions in 10.9(b) that I referenced.

7    Both of them say if the plan otherwise permits you to

8    file an admin claim, and it may be disallowed, nothing in this

9    release releases it.  So they have a provision that says they

10   can file professional fees, so too the plan says in section

11   2.1, we can file an admin claim, and if you don't read those

12   exceptions as we are reading them, then frankly, all the

13   professionals are not entitled to a penny in this case.

14   And this is a common release.  It's common to have a

15   release that seems very broad, but then it says key words,

16   except for all the rights under the plan, and therefore

17   everything the plan provides is preserved including the right

18   to assert an admin claim.

19   Your Honor, I'm going to -- Your Honor, I think you

20   may have just froze, so I'm going to stop right now unless

21   other -- unless you can hear me, but I don't see you any

22   longer.

23   THE CLERK:  Counsel, this is Ms. Parada.  It seems

24   we've lost Judge Montali.  One moment.

25   MR. ANKER:  Your Honor, let me just complete that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    thought, and then I was going to say, unless you had questions,

2    but you won't be able to ask them, I will move to the

3    exculpation.

4         Your Honor noted that if you look at the release

5    provision in 10.9(b), and you go to the second page, that is

6    page 86 of 108, and you go to line 9, what is released is very

7    broad, and I absolutely agree what's released is anything based

8    on, or relating to, or in any manner arising from either in

9    whole or in part, the debtors, the fires, the Chapter 11 cases.

10   Obviously all of the professionals' fees relate to the debtor

11   in the Chapter 11 cases.

12        And again, I'm not in any way begrudging them, or

13   arguing they should disgorge all their fees, I'm simply say --

14   and they've questioned, but the reason they shouldn't is

15   because the two except clauses in paragraph 10.9(b), except all

16   the rights under the plan including their right to file fee

17   applications, so too they except our right to assert an admin

18   claim, and Your Honor is entirely right.

19        If ultimately it gets disallowed, it gets disallowed.

20   We are not arguing (audio interference) that you should allow

21   the claim.  We're arguing that their threshold objection to it

22   that fails as a matter of law, should be rejected, so we can

23   move to the merits.

24        With that, let me move to exculpation, and you began

25   by saying you've never had a case about what the word pursuit

PG&E Corporation and Pacific Gas and Electric Company

1    means, and it's not defined in the plan, but there's lots of

2    California cases just like there are federal U.S. Supreme Court

3    cases, saying where you have a term in a contract or a statute

4    that's not otherwise defined, it takes its common, normal

5    meaning.

6            And so I asked an associate on my team, what does the

7    dictionary tell us the word pursuit means, and here's Merriam-

8    Webster.  In pursuit of means, "in order to achieve".  So let's

9    pause there.  Do the debtors achieve the noteholder RSA by

10   breaching it?  Of course they don't.

11           Cambridge Dictionary has a similar definition.

12   Pursuit means, "an attempt to achieve something".  The same

13   point, you don't achieve an agreement by breaching it.

14           The Oxford English Dictionary says pursuit is, "the

15   observance or carrying out of a plan, design, or order.  The

16   action of proceeding or acting in accordance with a plan."

17           Do you act in accordance with an agreement by

18   breaching it?  No, you do precisely the opposite.

19           So Mr. Galardi's right, first, pursuit has a temporal

20   element.  It means actions taken in advance.  You pursue an

21   agreement by entering into and negotiating the agreement.  If I

22   were in common parlance to say I hope each of my three

23   daughters -- I have three daughters -- pursues a degree, higher

24   education, I'm asking that she, or hoping that she will go to

25   college, and maybe go to graduate school thereafter.  I'm not

PG&E Corporation and Pacific Gas and Electric Company

1    suggesting what she should do later.

2         But even putting the temporal point aside, even if

3    pursuit can have an after-the-entry into the agreement,

4    breaching an agreement is not pursuing it.  Complying with it

5    is pursuing it.  Rejecting an executory contract in bankruptcy

6    is not pursuing it, assuming it is pursuing it.

7         Just a couple of more points.  Mr. Galardi mentioned

8    the notion that it says negotiation and pursuit, and I'm not

9    going to attempt to butcher the Latin, I never studied it, but

10   there is the Latin principle that translates to literally, "a

11   word takes it meaning from the company it keeps".

12        Here the word pursuit takes it meaning from the

13   company it keeps, the word negotiation.  One negotiates an

14   agreement before entering into it, not after, and one certainly

15   doesn't negotiate it by breaching it.

16        Third, under established California law, and

17   California law controls here because the plan says that

18   California law governs, ambiguities get construed against the

19   drafter.  I don't think there's anything ambiguous here, but if

20   there is, the debtors, with sophisticated counsel, were the

21   drafters of these provisions of the plan.

22        And finally, just step back and think about

23   exculpation.  I think we were right, and I understand there's a

24   disagreement here, when we said exculpation normally appears in

25   bankruptcy for the professionals, for management, not for the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   debtor because the debtor gets a release, gets a discharge, I

2   should say.

3           But even if exculpation covers the debtor, think about

4   what exculpation in bankruptcy is about.  Everything people to

5   do to get to the finish line, to get to the plan confirmed,

6   that gets exculpated, not -- and that was entering into the

7   RSA, which enabled -- which caused all of our clients to

8   support the plan.

9           What's not exculpated is breaching, breaching those

10  agreements.  Think about the implication of the debtors'

11  argument again.  The debtors' note that the exculpation covers

12  not merely the noteholder RSA but the exit financing.  Under

13  their argument, under the logic of their argument, they were

14  exculpated if the day after the plan was confirmed, they

15  decided to breach the exit financing.  They simply didn't pay

16  for it.  They didn't do anything to (audio interference).  That

17  can't be right, as a matter of logic, and as a matter of what

18  exculpation (audio interference) to do.

19          We ask Your Honor, that you deny this motion.  We do

20  not ask that you (audio interference) our admin claim today.

21  We are going to have to prove that claim, but we're entitled to

22  go forward and prove that it is an allowed admin claim, and if

23  so, then and only then will we be entitled to payment, just as

24  the debtors are free to go forward with their objection to the

25  claim.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1       Your Honor, I think you --

2       THE COURT:  Okay.

3       MR. ANKER:  -- (audio interference) --

4       THE COURT:  Can you hear me now, Mr. Anker?

5       MR. ANKER:  I can, Judge Montali, and I was literally

6   about to say if you were on, unless Your Honor has questions, I

7   have said my peace but I am more than happy to address any

8   questions --

9       THE COURT:  (Audio interference).

10      MR. ANKER:  -- Your Honor may have.

11      THE COURT:  Let me see if -- I'm trying to make the

12  audio work alone.  You can hear me now, right?

13      MR. ANKER:  I can, Your Honor.

14      THE COURT:  Okay.  I'm going to -- so I tried to call

15  in, and I'm killed on that phone, and I'm now -- and I'm not

16  going to put the video on.  You're stuck with my name, and then

17  we'll see if we can finish the argument.

18      Again, I'm going to do everything I can to make sure

19  that everybody feels they've had their day in court here, and

20  not a victim of my hookups.

21      So Mr. Slack, I think it's your turn to -- and by the

22  way, Mr. Anker, I have no further questions at the moment.

23      MR. ANKER:  Thank you, Your Honor.

24      THE COURT:  You have all the time you want, but you've

25  got to turn your mic on.  There you go.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. SLACK:  There we go.  So good morning to you, and

2     Your Honor, Richard Slack, Weil Gotshal for the reorganized

3     debtors.

4          And Your Honor, let's put aside for today that no

5     rational economic actor would ever give up their significant

6     backstop rights, including the rights to significant fees for

7     no consideration once the Court approved the backstop motion.

8     In other words, the entire premise of the motion here is

9     absurd, and so let's focus instead on regardless of how absurd

10    the claims are on their face, that they're barred by the plain

11    language of the plan, and the confirmation order.

12         And Your Honor, there's sort of what I'll call a

13    direct route, and there's a lot of arguments that have been

14    made here, but the direct route is the exculpation clause, and

15    1127, and I'm going to focus on those two, and then talk about

16    the others.

17         But it's crystal clear the exculpation provision on

18    its face, not only expressly covers the debtors themselves, and

19    claims arising out of the administration of the estates in

20    multiple ways.  It doesn't myopically only have one language --

21    one set of language dealing with the negotiation and pursuit,

22    and it's very important that we look at not just one piece of

23    it, but the entire exculpation clause which has independent

24    pieces to it.

25         And so because the plain language of the exculpation

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    clause covers the claims, the only recourse that the

2    noteholders would have, since they didn't object to the plan,

3    and they didn't appeal, is to modify it, and the --

4            THE COURT:  Well, they don't have a right to modify,

5    do they?  Isn't the point you make?

6            MR. SLACK:  They don't, Your Honor, and that's exactly

7    the point.  So once you reach the point that they didn't

8    appeal, they didn't object, they didn't appeal, and they can't

9    modify, if Your Honor finds that they fall within the plain

10   language of the exculpation, and we're going to spend some time

11   on that because I think it's important, then this motion's

12   over, and it's --

13           THE COURT:  No, I --

14           MR. SLACK:  -- on the express lane.

15           THE COURT:  -- I agree with you.  If you persuade me

16   that Elliott, et al., is within 10.8, I think you win.  The

17   question is it's like they failed to state a claim for relief.

18   It's like the 12(b)(6), an analog here, but that is not the

19   whole point we're debating.

20           MR. SLACK:  And the good news, Your Honor, is we're

21   going to do just that.  We're going to go through it because

22   Your Honor, what happened here is important only because it

23   explains why exculpation does what it does.  What we have here

24   is a sophisticated distressed debt investors who already

25   received a hundred cents on the dollar, on their notes.  They

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    know exactly what they're doing, and they made a calculated

2    decision not to raise these claims before either confirmation,

3    or the effective date of the plan.  And all of the

4    constituents, including the fire victims, they relied on the

5    exculpation in order to vote on the plan, and then having the

6    plan confirmed.

7              THE COURT:  Well, that's kind of a --

8              MR. SLACK:  And --

9              THE COURT:  -- stretch to assume that the fire victims

10   understood the exculpation clause, but I will accept that the

11   plan was overwhelmingly accepted --

12             MR. SLACK:  Certainly, the --

13             THE COURT:  -- but I don't know how I'm supposed to

14   infer that those fire victims were out there saying well, I'm

15   happy with pursuit, rather than something broader than that.

16             MR. SLACK:  I guess I would say this, Your Honor, is

17   that the fire victims here were represented by the TCC, the TCC

18   saw this language, relied on it, didn't object to it.  And the

19   fact is that all of the parties here rely on the plan, so that

20   people don't lie in the weeds and wait until after the plan's

21   confirmed to bring a litigation claim, and indeed, it's

22   precisely this type of claim that the exculpation provision was

23   intended to prevent.

24             Your Honor, when you approved the exculpation, you

25   cited the Ninth Circuit in Blixseth, and the court in that case

PG&E Corporation and Pacific Gas and Electric Company

1    approving a narrowly-tailored exculpation as here, described

2    the type of claim that the exculpation clause covers, and what

3    Blixseth said was, "The exculpation clause here deals only with

4    the highly litigious nature of Chapter 11 bankruptcy

5    proceedings."  As one of the bankruptcy attorneys in this case

6    stated during the bankruptcy court's hearings on the

7    exculpation clause, in bankruptcy proceedings, lawyers battle

8    each other tirelessly, oxen are gored.

9           And then the Blixseth court in reaching its

10   conclusions relied on the Third Circuit decision in PWS, and I

11   cite that because the Third Circuit in PWS approved an

12   exculpation clause that included the debtors, and in discussing

13   that case, the Blixseth court also said, "According to PWS,

14   similar limited exculpatory clauses focused on acts committed

15   as part of the bankruptcy proceedings, are apparently a

16   commonplace provision in Chapter 11 plans, presumably because

17   of the features of bankruptcy litigation just noted."  The same

18   quote that I gave to Your Honor.

19          Thus, the purpose of the exculpation clause here is to

20   prevent a party from lying in the weeds, and then after

21   confirmation, and the effective date, springing hundreds of

22   millions of dollars in claims on the estate, which affects

23   every constituent, and that's why that claim is barred here

24   under the exculpation clause.

25          So let's look at 10.8 of the plan, Your Honor, and

PG&E Corporation and Pacific Gas and Electric Company

1    what I would say, Your Honor, is that 10.8 of the plan covers

2    these claims in at least five different ways, and each of

3    these -- they're not exclusive, each of these separately covers

4    the claim.

5            THE COURT:  Well, your brief -- by the way, your brief

6    listed those five things, and I went back and read all five of

7    them again, all five of them, and we're back to did you do this

8    five different times, or are there five different ways that

9    this thing operates, but here there's only whether Elliott, et

10   al. falls in or outside of the phrase pursuit of.

11           MR. SLACK:  I --

12           THE COURT:  I mean the word pursuit of, if we exchange

13   pursuit to enforcement, perhaps we're done.

14           MR. SLACK:  I'm not sure I understand the question,

15   Your Honor, because pursuit -- negotiation and pursuit which by

16   the way I think covers this, and I'll get to that in a second,

17   that only yields with one -- if you look at the clause itself,

18   the different areas that are exculpated are separated by

19   semicolons, and each one of those is a separate element, that

20   is not -- that is not discussed with negotiation or pursuit.

21   In other words, negotiation and pursuit does not deal with any

22   of them, other than a handful.

23           So I think it's important, Your Honor, to go through

24   10.8.  10.8, in the first part, it says that it exculpates and

25   releases all claims in connection with, or arising out of the

PG&E Corporation and Pacific Gas and Electric Company

1    administration of the Chapter 11 estates.  Now, the noteholder

2    RSA and the performance under the RSA are indisputably part of

3    a confirmation process and a fundamental element of the

4    administration of the estates.  And so even if the exculpation

5    clause contained no more language than just that, it's clear

6    that this alone would cover the claims here.  But of course,

7    the exculpation clause goes further, and in 10.8 it says -- and

8    this is one that does have negotiation and pursuit -- it says,

9    "in connection with or arising out of the negotiation and

10   pursuit of the backstop commitment letters, the plan funding,

11   the restructuring transactions, or any agreement, transaction,

12   or document related to any of the foregoing."

13          So the first thing to recognize, Your Honor, and it's

14   interesting that this wasn't mentioned.  It's not just that

15   what is exculpated is the pursuit.  It's all claims arising out

16   of the pursuit and negotiation.  And what does it say?  Not

17   just the RSA transaction, but the backstop commitment letters.

18   So first the claims here are entirely premised on the debtors'

19   alleged failure during the negotiation and pursuit of the

20   amendment of the backstop letters and, in turn, during the

21   negotiation and pursuit of plan funding and the restructuring

22   transactions to use their best efforts to cause the backstop

23   parties to voluntarily transfer to the noteholder claimants

24   with no consideration certain rights under the backstop

25   commitment letters.  It is absolutely --

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Mr. Slack?  Mr. Slack, I'm following you

2    with my printed copy of 10.8.  Are you looking at a copy where

3    you can match me up with the line numbers?  Like at line -- the

4    phrase "negotiation and pursuit" shows up at line 15.  And are

5    you looking at a version that is that way?  I'm just trying to

6    highlight what --

7    MR. SLACK:  Yes.

8    THE COURT:  Okay.  So where is --

9    MR. SLACK:  So would it help, Your Honor, if I call in

10   my colleague, Kevin Kramer?  Mr. Kramer can put up the

11   highlighted version, and we can go through it.  Can we do that?

12   Can we call Mr. Kramer --

13   THE COURT:  Well, we can do it.  We can do it, but

14   what I want to explain to you is that I can do better if you

15   just point me to the words and I mark them as I --

16   MR. SLACK:  Sure.  I'm happy to do that, Your Honor.

17   THE COURT:  Okay.

18   MR. SLACK:  So --

19   THE COURT:  And I want you to understand that I've

20   done the sharing of the screen before, and sometimes they're

21   too small for even me to look at.  So that's why I've got the

22   real McCoy in front of me, so --

23   MR. SLACK:  Yeah.

24   THE COURT:  Thank you.  Below line 15, and where do

25   you want me to zero in?

PG&E Corporation and Pacific Gas and Electric Company

1    MR. SLACK:  Right.  So the first thing, Your Honor, is

2    that it talks about in connection with or arising out of, and

3    then it has a number of different elements including the

4    administration of the Chapter 11 cases, which is on 14 and 15.

5    In connection with or arising out of under the next thing is

6    what we're talking about, the negotiation on 15 through 18.

7    Now there's a bunch of different transactions, and I sort of

8    went between them.  But it says here in these lines, so and

9    we'd read, "in connection with or arising out of the

10   negotiation and pursuit of the backstop commitment letters, the

11   exit financing documents, the plan documents, the restructuring

12   transactions."  And then, it says, "or any agreement,

13   transaction, or document related to any of the foregoing."

14        And so, Your Honor, what you have to look at is

15   whether these claims are in connection with or arise out of the

16   negotiation and pursuit of, for example, the plan funding.  And

17   of course, that's exactly what they're saying, or the backstop

18   commitment letters.  The claims here are entirely related to

19   the fact that they're saying, when the debtors were negotiation

20   and pursuing the plan funding and the backstop amendments, that

21   we didn't include them and that we didn't go out and ask folks

22   whether they were willing to give up their valuable rights in

23   connection with the amendments.  And so there's absolutely no

24   question that under the plain language of the exculpation that

25   these claims fall under it.  And Your Honor --

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Oh, but Mr. Slack, you could also argue

2    that the phrase "negotiation and pursuit of" modifies one of

3    the things that follow.

4    MR. SLACK:  Well, but what it modifies -- and just so

5    to be clear, if you look at negotiation and pursuit, Your

6    Honor, you see it comes after the word cases, so it's within

7    that --

8    THE COURT:  Yeah.

9    MR. SLACK:  It's within that semicolon.  So

10   "negotiation and pursuit" does modify everything in that list

11   that we're just -- that we're just talking about.

12   THE COURT:  Right.  Right.  But that's the point, the

13   point that Mr. Galardi was arguing, that he doesn't -- he says

14   there's no pursuit of all these other things.  It's something

15   else, like enforcement.  And so, if the words had said

16   negotiation, pursuit, and enforcement, it might be --

17   MR. SLACK:  So --

18   THE COURT:  -- different.  I just have to figure out

19   whether the word pursuit limits all these things because you

20   keep telling me -- and it doesn't help the argument to try to

21   tell me what no rational person would do.  That's not the

22   point.  Well, no rational person would agree to use their best

23   efforts to do something that no rational person would do, but

24   your client agreed to use best efforts to do something.  And

25   for you to say, well, nobody would do it, is then all you had

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    to do was use your best effort to get somebody to do something

2    that he would never do, and you'd win the case on the merits.

3    Right?

4         MR. SLACK:  So Your Honor, I guess what I would say

5    there is is that at one point -- and this will come out -- the

6    debtors, in fact, went and asked folks -- and this is in a

7    footnote.  But that's not what we're -- that's not what we are

8    dealing with today.

9         THE COURT:  No, I know.  I --

10        MR. SLACK:  We're arguing with --

11        THE COURT:  -- agree.

12        MR. SLACK:  What we're arguing with, Your Honor, is

13   that the language here, "negotiation and pursuit" in this

14   particular context, also goes to the negotiation and pursuit of

15   plan funding.  And the claims here, Your Honor, arise out of

16   and in connection with explicitly the pursuit and negotiation

17   of the plan funding and the backstop letters.  And I haven't

18   heard anything or any explanation of how these claims don't

19   arise out of or are in connection with, for example, the plan

20   funding or the backstop commitment letters because what they're

21   saying is, Your Honor, we needed to during the negotiations use

22   best efforts to have these parties be part of the backstop

23   funding.

24        So what I would say to Your Honor is that this

25   language here, which isn't just the RSA but also talks about

PG&E Corporation and Pacific Gas and Electric Company

1    negotiation and pursuit of plan funding and the backstop

2    letters covers it.  And Your Honor, what's important is is

3    that, because the language isn't just negotiation and pursuit,

4    it's in connection or arising out of the pursuit.  And there's

5    again, when you talk about something arising out of the

6    pursuit, the agreement itself and the performance under arises

7    out of the pursuit.  And so, you can't just say it's the

8    negotiation and pursuit.  You have to look at the entire

9    language of the exculpation clause.

10        THE COURT:  Oh, but Mr. Slack, I think you're ignoring

11   the semicolon because you just pointed out to me the word cases

12   at line 15 is followed by a semicolon.  So if you just stop

13   right there, there's nothing about negotiation and pursuit.

14   But then, after the semicolon, it's negotiation and pursuit of,

15   and then you list twenty different things, which I agree.  I

16   understand your point.  And then, your point also is where over

17   on page --

18        MR. SLACK:  So --

19        THE COURT:  -- 12 and 13 of your reply brief, you've

20   got at least five other instances that you think make the case.

21   But they don't -- to some extent, one of them just repeats the

22   rising out of the administration language.  That's where I'm

23   struggling to understand your point.

24        MR. SLACK:  So let me try this, Your Honor.  And first

25   off, I know this is just -- this is a clause construction, but

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    the way the clause is constructed is -- and if you read it, it

2    says, "released and exculpated from", and then, it says, "in

3    connection with or arising out of".  And then, everything that

4    follows, each of the -- each of the semicolons, comes after "in

5    connection with or arising out of".  So you would read "the

6    administration of the estate", "the negotiation and pursuit",

7    "the property to be distributed", "the funding of this plan".

8    So all of them are modified by "in connection with or arising

9    out of" as you see it there.

10           And then, Your Honor, just to make a fine point of

11   this because I think it's important, if you go down to line 18,

12   all right, it talks about being released in connection with or

13   arising out of the funding of this plan.  Now, the important

14   thing there is there is no negotiation or pursuit that limits a

15   exculpation with respect to the funding of the plan.  So any

16   claim which arises out of or is in connection with the funding,

17   which is again precisely what these claims are.  These claims

18   were, you didn't use best efforts to get us involved in the

19   funding of the plan.  That's what these claims are, and they

20   are not limited -- this is not limited to negotiation or

21   pursuit, even if you were to decide that "arising out of the

22   pursuit" didn't include what we think it includes.

23           And Your Honor, another one says here in 10.8 if you

24   look a little further down, it exculpates and releases all

25   claims in connection with or arising out of the issuance of

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    securities under or in connection with this plan, and that's at

2    line 20.  And again, that is not -- that is not -- that is not

3    limited by negotiation and pursuit and at --

4         THE COURT:  Mr. Slack, what you're arguing is what you

5    stated in detail back in your reply brief on page 6.  I mean,

6    you did break out those same --

7         MR. SLACK:  Yes.

8         THE COURT:  -- five instances.  I understand your

9    point, and I studied them when I was reading the briefs, and I

10   kept circling back to the point.  So I understand your point.

11   Let's leave it at that and turn to the waiver and forfeiture.

12   And I understand the difference between a waiver and a

13   forfeiture, and I know what the -- Elliott et al., have argued.

14   How about --

15        MR. SLACK:  Your Honor, I guess the point just to

16   finish off the exculpation is that the exculpation clause here,

17   because it's clear that in many ways it covers.  The only issue

18   you have then, Your Honor, because it's the argument they

19   raised in their motion is whether 2.1, if I can use the word

20   without being political, trumps Section 2 -- or trumps Section

21   2.8.  And what I would say to Your Honor is is that the

22   language, notwithstanding anything herein to the contrary with

23   respect to the exculpation clause, specifically mandates that

24   2.1 not override 10.8.

25        And Your Honor, the other point there which I think is

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    critical is that -- and Your Honor, we agree with what you said

2    at the beginning of the argument, that 2.1 only deals with

3    discharge and allowed claims.  And so, the fact is is that the

4    word discharge has to have a different meaning than release and

5    exculpate and --

6         THE COURT:  Well, of course they do.  I understand

7    they do.  I mean, the --

8         MR. SLACK:  And the point is is --

9         THE COURT:  If you just have a simple proof of claim

10   for goods and services, the debtor gets its discharge, but the

11   claim is still an allowed claim, and it's taken care of under

12   the plan.  And same with an administrative claim, if you had a

13   post-petition provider of services or goods, that person

14   would --

15        MR. SLACK:  I --

16        THE COURT:  There would be a discharge, but the

17   discharge wouldn't have any impact because that person's

18   provided for under the plan.  I understand the point.

19        MR. SLACK:  And so the point, Your Honor, is is that

20   if these are released, if they fall within the release or the

21   exculpation, the plain language, then 2.1 doesn't impact that.

22   So if Your Honor finds that these claims fall within the plain

23   language, which again I think they do in many ways, then that

24   ends the issue because as Your Honor pointed out, in order then

25   to deal with that, what the noteholders would have to do is

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   modify the plan, which they can't do under --

2         THE COURT:  Yeah.  That's --

3         MR. SLACK:  -- 1127.

4         THE COURT:  That's why I wondered why you spend so

5   much time in both sides dealing with them.  That to me is a

6   nonissue, but the issue is whether they can do it.  So your

7   point as I take is, well, they should have done something.

8   They should have done something, and they waited too long.  I

9   don't know whether I agree with that or not because I don't

10  know that an administrative claimant has to do anything.

11        But what about -- let's go back, Mr. Slack, to Mr.

12  Galardi's argument about 10.9(b).  Do you think that the except

13  provisions and the provisions about matters that relate to pre-

14  petition -- excuse me, pre-effective date events are preserved

15  or not?

16        MR. SLACK:  So Your Honor, we agree entirely with what

17  it sounded like your position was, which is that the except

18  language here only deals with pre-petition claims -- or things

19  that are post-petition.  Anything that's pre-petition is

20  covered by the release.  And if you think about it, it has to

21  be that way because all claims that are released occur pre-

22  petition, and all claims that are released that would have any

23  effect are claims that you could theoretically bring after

24  because of the statute of limitations or something else.  So if

25  this language meant what Mr. Galardi and Mr. Anker suggest it

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  means, then you would never be able to have a release of any

2  activity pre-petition that still had time left to bring post-

3  petition. So it completely negates any rational interpretation

4  of the release itself, Your Honor. So we would agree with

5  that.

6  THE COURT: Okay.

7  MR. SLACK: So Your Honor, with respect to a couple of

8  other points which I think are critical here, number one, Your

9  Honor, the release itself and when you look at the release

10  language -- and I think this is critical -- there's a reason

11  they didn't go in and look at the release language because the

12  release clearly covers again much like the exculpation clause

13  clearly covers this conduct. And so, unless they can pigeon-

14  hole it into one of the exceptions, which they can't do for the

15  reason Your Honor stated and the idea that 2.1 only deals with

16  discharge, if that claim is either released or exculpated, the

17  release overrides it and says you don't have an allowed claim.

18  And so, in this circumstance, Your Honor, when you

19  look at the release, and again I would urge Your Honor to give

20  separate meaning to both release and discharge. And 2.1 as

21  Your Honor recognized only deals with discharge, whereas the

22  release and the exculpation talk about exculpating and

23  releasing. And so where things have been exculpated and

24  released, they're not in conflict with 2.1 whatsoever.

25  So Your Honor, the last thing I guess I would get to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    because it sounds like we're on the same page on the

2    modification point, is that here what you had were

3    sophisticated parties who knew about supposedly this breach if

4    it was, which it isn't, long before the effective date, and

5    they did nothing.  They could have done a lot, but they didn't

6    do anything.  They could have filed a motion in front of the

7    Court.  They could have objected to the backstop amendment.

8    They could have objected to the entry of the confirmation

9    order.  They could have issued a notice of termination.  They

10   could have filed injunctive relief.  All of these things are

11   things that they had a right to do under the RSA, especially if

12   they viewed it as being breached.

13            THE COURT:  But they also could have filed an admin

14   claim, which is what they did.

15            MR. SLACK:  Yeah.  And the difference, though, Your

16   Honor, and that's the point.  They filed a motion for an admin

17   claim after the fact, after sitting on their rights, when

18   people were relying on the plan itself.

19            THE COURT:  Oh, I understand.  I understand.  You said

20   that again.  You start to play the heartstrings about bringing

21   in the fire victims, and they're taking money from the fire

22   victims.  That's playing it too far, and I have to -- you've

23   got to convince me that somehow they let a valuable right go

24   away by their silence, and I'm -- so far, the notion in waiver

25   and forfeiture, they're there.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          What about last point for you, though, why is there

2   even a theory of 60(b) here?  And I'm going to ask Mr. Galardi

3   and Mr. Anker to come back and address the 60(b), but what's

4   your take on that?  It kind of disappeared in the briefing I

5   think.

6          MR. SLACK:  Well, Your Honor, in our briefing, and I

7   think it's clear under the law, that 1127(b) is the exclusive

8   means by the Ninth Circuit to modify a plan.  And so, once you

9   recognize that 1127(b) is the exclusive means to modify the

10  plan, then 60(b) does go away.

11         And what I would say, Your Honor, is when you look at

12  what we cited in both our briefs, our five cases that looked at

13  the issue of whether 60(b) could be used when 1127(b) wasn't

14  met, and these five cases all explicitly say you cannot use

15  60(b).  And what's interesting is they cite a handful of cases

16  that have used 60(b) on modifying plans.  None of them, none of

17  them address 1127(b).  And the reason that the courts -- and

18  again there are five different decisions that we cite -- say

19  you can't use 60(b) when you haven't met the requirements of

20  1127(b) is because 1127 is the Code; 60(b) is a rule.  1127

21  overrides -- the Code overrides 60(b).  And so, the cases are

22  all uniform, and they haven't cited a single case that would

23  suggest that you could use 60(b) when 1127 isn't met.

24         THE COURT:  Okay.  I got it.  All right.  Thank you,

25  Mr. Slack.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. SLACK:  Thank you, Your Honor.

2          THE COURT:  Mr. Galardi, you and Mr. Anker and I don't

3     know if Mr. Simonds wants to say anything yet.  Why don't you

4     go ahead and give me your final arguments?

5          And again, I apologize to all of you for the delays.

6     It seems to me we're working effectively now.  You just can't

7     see me.

8          MR. GALARDI:  I'm sorry for that, Your Honor, but it

9     does seem to be working now.

10          Very, very, very briefly and then I'll leave time for

11    the other parties.  I think what Mr. Slack has done is conceded

12    that the exculpation clause and the specific provision

13    addressing the RSA is not adequate.  But then, he reads five

14    other exceptions and says it must fall under those.  But then,

15    it is they that cited in the first instance that the specific

16    governs over the general.  And as Your Honor pointed out, there

17    is simply a semicolon after the word cases.  And as you parse

18    through the language the specific provision, which Your Honor

19    started the hearing with, that is the most important is the

20    negotiation and pursuit of the RSA.  And it would exculpate

21    them for -- even with respect to the wildfire claims to have

22    exculpated them for not following the claims resolution

23    procedures, if you read that language literally as Mr. Slack

24    would like to read it.  So we think that, Your Honor, it is not

25    "exculpated and the arises in connection".  At most, it has to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    be "arises and in connection with the negotiation and the

2    pursuit of", no broader and not with respect to breaches of the

3    contract.

4            Your Honor, with respect to, again, the releases, the

5    releases is -- I think I heard Mr. Slack and I don't think this

6    is what he intended, said it only goes to pre-petition conduct.

7    I think they are trying to read it more broadly than pre-

8    petition.  I think he made pre-effective date --

9            THE COURT:  Yeah, that's how I -- that's what I

10   interpreted it also, pre-effective date.

11           MR. GALARDI:  And again, Your Honor, then I would go

12   back to if you read it that broadly and Mr. Slack failed to

13   give a principle demarcation between the claims of Weil,

14   Gotshal or the claims agent and how those except language don't

15   except out exactly the types of administrative claims that we

16   think could relate to pre-effective date conduct but could be

17   prosecuted and brought pursuant to the plan and the plan

18   document's post-effective date.  That's exactly what, unless it

19   was paid and you go back to Section 2.1, or unless as Mr. Slack

20   said it was released in the exculpation language, it was

21   released.  You could bring an administrative claim under the

22   plan after the effective date, and that is exactly what we did,

23   and that is exactly what we believe the exception clauses

24   govern.

25           Your Honor, with respect to the 60(b), waiverture

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  (sic) and forfeiture and coming back to a question that Your

2  Honor asked me and I responded to, do we believe that the

3  releases are enforceable?  Yes, we believe the releases are

4  enforceable to the extent that the language that we have said,

5  the except language, is itself enforceable.  Otherwise, the

6  releases would have been too broad, and we would challenge

7  those.

8         With respect to waiver and forfeiture and in

9  particular you could only waive or forfeit a right if at the

10  time you had to do so before the effective date, I think we

11  have made clear that our view is we did not have to seek

12  injunctive relief.  There was nothing under the noteholder RSA

13  that required us to do so.  If we do have an administrative

14  claim, which we believe we do, and it is not subject to the

15  exculpation clause, which we believe it is not, and it is not

16  subject to the release, which we believe it is not because of

17  the two except clause, there is nothing that precluded us or

18  even required us to bring it seven weeks, a month, two months,

19  five months.  It had to be brought within the statute of

20  limitations period of four years.  We brought it timely.  So

21  when we --

22         THE COURT:  Mr. Galardi, I'm sorry.  Let me interrupt.

23  Mr. Wofford, who I believe is a colleague of yours, has a hand

24  up.  Do you know -- did you intend to have him argue or

25  something to say something?

PG&E Corporation and Pacific Gas and Electric Company

1      MR. GALARDI:  I did not intend, but I don't have his

2  hand up.

3      THE COURT:  Well --

4      MR. GALARDI:  I can't --

5      THE COURT REPORTER:  Your Honor, this -- this is Ms.

6  Parada.  He's lowered his hand.

7      THE COURT:  Oh, he's lowered his hand?  Okay.

8      THE COURT REPORTER:  Now, he has.  Yes.

9      THE COURT:  Okay.

10      MR. GALARDI:  He probably wanted to put it over my

11  mouth, Your Honor, at certain points, but he's unable to do so.

12      THE COURT:  Okay.

13      MR. GALARDI:  And finally, Your Honor, so with respect

14  to waiver and forfeiture, we don't believe that there was

15  either a waiver or forfeiture.

16      And then finally, with respect to 60(b), Your Honor,

17  again as made clear in our initial motion and otherwise, it was

18  brought as an abundance of caution to challenge or to

19  reconsider the confirmation order and the plan.  We have cited

20  cases that would permit us to do it.  I understand Mr. Slack's

21  argument, but our view is that we could seek but do not think

22  we need to seek --

23      THE COURT:  Well, I mean, I couldn't find anything

24  that would fit you telling the traditional thing.  You didn't

25  cite newly discovered evidence.  You didn't talk about a change

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    in law, obviously.  So any of the traditional 60(b) relief, I'm

2    not sure where you'd find it.  But if you want --

3              MR. GALARDI:  Well, Your Honor, I guess the

4    question --

5              THE COURT:  Within this motion you don't need 60(b).

6              MR. GALARDI:  I don't think -- obviously, if we have

7    succeeded on the first part that it's not exculpated and

8    released, 60(b) goes by the wayside unnecessary.  If, however,

9    Your Honor were to read, which we don't think you can, the

10   release and exculpation clauses, then I would say that that

11   would be a mistake of law or fact or manifest error, so you

12   could use 60(b).  We don't think that's necessary because --

13             THE COURT:  Well, what's the difference between a

14   manifest error and an error?  In other words, what -- I mean,

15   seriously --

16             MR. GALARDI:  Well --

17             THE COURT:  -- if I agree with Mr. Slack and I believe

18   that his interpretation of 10(b) fits, how do I come up with a

19   60(b) theory that gives you a second bite of the apple?  You

20   don't have newly discovered evidence.  You don't have a change

21   in law.  If you want me to say a manifest injustice, that's a

22   last gasp for people.  What else would I do?  In other words,

23   let's try it a different way.  If is say I think you should win

24   but you lose on 10.8, how would I articulate the 60(b)

25   justification to give you another crack at it?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. GALARDI:  Well, two things.  One is, to me, the

2   60(b) is a factual issue raised on the waiver.  But if you were

3   to find that that was a manifest error of law, that the release

4   could not be that broad, then you could give the relief there.

5   But again, I think the fundamental point is we believe that the

6   first argument is we can simply bring the administrative claim.

7   They can object to it.  It's not exculpated, and it's not

8   released.

9    THE COURT:  Okay.  I gotcha.

10    Mr. Anker, did you want to add some more?

11    MR. ANKER:  Yeah, just a couple of points, Your Honor.

12   Let me start with exculpation.  I want to go beyond, although I

13   certainly agree with Mr. Galardi that the basic rule is the

14   specific controls over the general.  So the language in the

15   exculpation clause referring to the RSA and being limited to

16   pursuit and negotiation has to control over other provisions.

17   It would be rather odd that there's a reference to the RSA.  It

18   doesn't mention breach but other provisions that don't mention

19   the RSA somehow exculpate for a claim for breach.  But let me

20   go beyond that.

21    The proposition Mr. Slack asserted is that our claim

22   arises (audio interference) he says the exit financing or the

23   amendment to the backstop.  No, it doesn't.  Our claim is for

24   (audio interference) RSA and only breach of the RSA.  It arises

25   out the rights provided in the RSA.  The RSA and the RSA alone

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   obligated the debtors to use best efforts to get us into the

2   funding.  So none of those other provisions by their terms,

3   even if one were to look at them notwithstanding the rule that

4   the specific controls over the general, none of them applies

5   here.

6          And finally, on the first clause and on this I will

7   say Mr. Slack's right about one thing.  The provision saying

8   that there's exculpation for all claims in connection with or

9   arising out of the administration of the Chapter 11 cases

10  doesn't refer to pursuit and negotiation.  But again, the

11  specific controls over the general and again that proves too

12  much.  I don't mean to keep beating this horse but, Your Honor,

13  the fees of every professional in this case arise out of or in

14  connection with the administration of the Chapter 11 case.  And

15  unless Your Honor is prepared to hold that every professional

16  did this case pro bono, that provision can't mean what the

17  debtors are saying it means.

18         THE COURT:  Well, that's kind of a tempting way to

19  resolve it, I should think.  I should give that some

20  consideration.

21         MR. ANKER:  I will not so argue, Your Honor.  I'm here

22  to let my clients have a claim, not to take money out of the

23  pockets of professionals who worked quite hard.

24         THE COURT:  Okay.

25         MR. ANKER:  Let me go on the release and try to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    explain why I think does it apply to pre-effective or post-

2    effective date is a red herring.  Let's look at the language at

3    the very beginning on 10.9(b).  It says, except for the rights

4    that remain in effect from and after the effective date to

5    enforce the plan and the plan documents.  So let's ask a

6    question.  Do admin claimants have right under the plan, do

7    they have a right to assert an admin claim?  It can be objected

8    to.  It may be disallowed on the merits because it doesn't

9    satisfy the standard for an admin claim.  But with the respect

10   to conduct that occurred between the petition date and the

11   effective date, does the plan provide a right after the

12   effective to assert that claim and, if it is allowed, to demand

13   payment in full?  Absolutely.  Section 2.1 and 7.2 specifically

14   give every admin claimant the right after the effective date to

15   assert an admin claim, obtain an adjudication from Your Honor,

16   and if it is allowed obtain payment in full from the

17   reorganized debtors.  That is the beginning and the end of the

18   point.

19          And I will say again, the professionals in this case

20   who are releasing parties by definition are filing fee

21   applications after the effective date to enforce their right

22   under the plan to have those fees, if allowed, paid by the

23   debtors and obtain adjudication.  I don't begrudge them that.

24   That's exactly the same reason why (audio interference) not to

25   have a claim allowed without Your Honor concluding that it is a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   valid admin claim, but a valid admin claim the plan preserved

2   our right to assert it.  And as Mr. Galardi points out, many

3   plans set a cutoff date.  Sometimes before -- not typically

4   before the effective date, but shortly thereafter for the

5   filing of an admin claim.  Here, this plan contained no such

6   limitation, so you simply look to the statute of limitations

7   under California, which was four years from the breach.  This

8   breach occurred a few weeks before we filed the claim, not more

9   than four years after we filed the claim.

10       THE COURT:  Okay.  I'm going to -- I'm going to cut

11  you off only because I think we've been through this in --

12       MR. ANKER:  That's right.

13       THE COURT:  -- the past.  Mr. Simonds --

14       MR. ANKER:  And Your Honor, that's all I have, unless

15  you have questions of me.

16       THE COURT:  No, I don't.

17       Mr. Simonds, did you want to add anything?

18       MR. SIMONDS:  No, Your Honor.  I agree; between Mr.

19  Galardi, Mr. Anker, and I, we had Mr. Anker and Galardi cover

20  the principle arguments.  I reserved time in case I had

21  something to add on rebuttal, but that's not necessary.  I

22  think they covered --

23       THE COURT:  And we did you -- we did you a disservice

24  by leaving you on the screen.  You had to sit there and pay

25  attention.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        How about you, Mr. Karotkin?  Did you want to add

2    anything?

3        MR. KAROTKIN:  Yes.  If you don't mind, Your Honor, I

4    have just a couple of sentences.

5        First of all, Mr. Anker -- and I appreciate Mr.

6    Anker's concern for my firm's fees, but Mr. Anker did say when

7    he was describing the word pursuit, he said that pursuit

8    includes the observance or carrying out of an agreement or plan

9    and encompasses getting everything to the finish line.  Now,

10   how anyone can explain to me how the word pursuit could not

11   encompass the performance of the parties' obligations under the

12   noteholder RSA and their covenants under the noteholder RSA

13   under any rational interpretation of the word pursuit just

14   defies logic.  It's completely irrational.

15       And the last thing I'll say, Your Honor, is what you

16   said.  Mr. Anker's argument about the release is completely

17   circular.  There is no right to assert an administrative

18   expense claim for something that has been released or

19   exculpated under the plan.  They specifically required as part

20   of the noteholder RSA that they be included as released parties

21   and exculpated parties.  That's what they insisted on, and

22   that's the consequence of it.  They released these claims.

23   They arise under the noteholder RSA.  How else could they

24   arise?  And how could pursuit not include the word or not

25   include performance under an agreement?  Your Honor, that's

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    what they're asking you to find, and frankly I don't know how

2    you possibly could find that.

3              THE COURT:  Well --

4              MR. KAROTKIN:  That's all I have.

5              THE COURT:  -- but I guess I could say I don't why you

6    wouldn't put in a breach prior to the effective date as an

7    exculpation.  I mean, I hope you'll strike the word pursuit

8    from your firm's form file for the future and keep it, reserve

9    it only for going after criminals.

10             MR. KAROTKIN:  Well --

11             THE COURT:  I'm going to -- I'm going to think about

12   this, take it under advisement.  I'll do my best to do it

13   quickly.  Again, I won't apologize more than one more time

14   about the connections because it worked fine once I turned my

15   camera off.  So I want to thank you all for your thorough

16   briefing and patience today, and I will take the matter under

17   advisement and wish you all a good day.

18             IN UNISON:  Thank you, Your Honor.

19             THE COURT:  Thank you, Ms. Parada and Ms. Thomas.

20             THE COURT REPORTER:  Yes, Your Honor.

21             THE COURT:  We'll conclude the hearing.  Thank you.

22        (Whereupon these proceedings were concluded at 11:23 AM)

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

1               C E R T I F I C A T I O N

2

3    I, Linda Ferrara, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ LINDA FERRARA, CET-656

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  October 14, 2020

16

17

18

19

20

21

22

23

24

25

**A**

**able (4)**
9:25;15:24;26:2;
46:1
**absolutely (9)**
12:22;13:14,16;
14:20,25;26:7;36:25;
38:23;56:13
**absurd (3)**
24:10;31:9,9
**abundance (1)**
52:18
**accept (1)**
33:10
**accepted (1)**
33:11
**accordance (2)**
27:16,17
**According (1)**
34:13
**achieve (4)**
27:8,9,12,13
**act (3)**
5:25;6:2;27:17
**acting (2)**
8:20;27:16
**action (1)**
27:16
**actions (2)**
14:2;27:20
**activity (1)**
46:2
**actor (1)**
31:5
**acts (1)**
34:14
**actually (3)**
11:15;14:11;22:1
**add (6)**
22:6,6;54:10;57:17,
21;58:1
**address (3)**
30:7;48:3,17
**addressing (1)**
49:13
**adequate (1)**
49:13
**adjudicated (2)**
23:3,11
**adjudication (2)**
56:15,23
**admin (19)**
14:24;23:20,23;25:8,
11,18;26:17;29:20,22;
47:13,16;56:6,7,9,14,
15;57:1,1,5
**administer (1)**
18:3
**administration (8)**
31:19;36:1,4;38:4;
41:22;42:6;55:9,14

**administrative (37)**
9:10,15;12:8,14,18,
19,25;13:2,3,4;14:6,14,
18,22;15:8,10,13;16:1,
3;18:4,12;19:14,23;
21:5,23;23:4,10,14;
24:2;25:3;44:12;45:10;
50:15,21;51:13;54:6;
58:17
**advance (1)**
27:20
**advisement (2)**
59:12,17
**advisors (1)**
24:24
**affects (1)**
34:22
**afternoon (1)**
4:23
**after-the-entry (1)**
28:3
**again (32)**
9:3;11:24;13:24;
15:6,12,18;16:3;17:8;
19:9;20:8;22:10;26:12;
29:11;30:18;35:7;41:5;
42:17;43:2;44:23;
46:12,19;47:20;48:18;
49:5;50:4,11;52:17;
54:5;55:10,11;56:19;
59:13
**against (4)**
17:15;21:1,7;28:18
**agent (2)**
21:6;50:14
**agree (16)**
14:20;23:17,19,23;
26:7;32:15;39:22;
40:11;41:15;44:1;45:9,
16;46:4;53:17;54:13;
57:18
**agreed (1)**
39:24
**agreement (14)**
14:9,10;27:13,17,21,
21;28:3,4,14;36:11;
38:12;41:6;58:8,25
**agreements (1)**
29:10
**ahead (5)**
7:5,6,6,7;49:4
**al (4)**
7:25;32:16;35:10;
43:13
**allege (1)**
18:6
**alleged (2)**
10:20;36:19
**allow (2)**
19:11;26:20
**allowed (16)**
9:16;12:18,19;13:4;
14:13,18;23:14;24:2;

29:22;44:3,11;46:17;
56:12,16,22,25
**allows (1)**
15:9
**alone (3)**
30:12;36:6;54:25
**although (1)**
54:12
**always (1)**
6:5
**ambiguities (1)**
28:18
**ambiguous (2)**
10:17;28:19
**amendment (3)**
36:20;47:7;54:23
**amendments (2)**
38:20,23
**analog (1)**
32:18
**Anker (45)**
4:16,24;5:12,13,17;
6:1,8;7:15,16;8:16;
16:22;22:2,6,10,11,14,
21;23:16,23,25;24:3,5,
19,22;25:25;30:3,4,5,
10,13,22,23;45:25;
48:3;49:2;54:10,11;
55:21,25;57:12,14,19,
19;58:5,6
**Anker's (2)**
58:6,16
**Apologies (1)**
8:2
**apologize (2)**
49:5;59:13
**apparently (1)**
34:15
**appeal (3)**
32:3,8,8
**appearances (3)**
6:13,24;7:1
**appearing (2)**
5:15,17
**appears (2)**
17:6;28:24
**apple (1)**
53:19
**applications (2)**
26:17;56:21
**applies (1)**
55:4
**apply (1)**
56:1
**appreciate (1)**
58:5
**appropriate (2)**
12:3;21:14
**approved (3)**
31:7;33:24;34:11
**approving (1)**
34:1
**areas (1)**

35:18
**argue (4)**
6:21;39:1;51:24;
55:21
**argued (1)**
43:13
**arguing (7)**
26:13,20,21;39:13;
40:10,12;43:4
**argument (13)**
8:16;20:2;29:11,13,
13;30:17;39:20;43:18;
44:2;45:12;52:21;54:6;
58:16
**arguments (4)**
9:22;31:13;49:4;
57:20
**arise (6)**
38:15;40:15,19;
55:13;58:23,24
**arises (6)**
41:6;42:16;49:25;
50:1;54:22,24
**arising (18)**
10:19;26:8;31:19;
35:25;36:9,15;38:2,5,
9;41:4,5;42:3,5,8,13,
21,25;55:9
**arose (1)**
17:24
**around (1)**
12:11
**articulate (1)**
53:24
**aside (3)**
13:4;28:2;31:4
**aspects (1)**
21:1
**assert (11)**
15:25;23:15;25:2,4,
18;26:17;56:7,12,15;
57:2;58:17
**asserted (2)**
15:13;54:21
**asserting (1)**
15:3
**associate (1)**
27:6
**assume (1)**
33:9
**assuming (1)**
28:6
**attempt (2)**
27:12;28:9
**attention (1)**
57:25
**attorneys (2)**
24:25;34:5
**audio (31)**
4:25;5:11;7:22;8:21;
11:3;16:7,7,17,20,23,
24,24;17:4;20:9;22:2,
25;23:2;24:11,16,20;

25:1;26:20;29:16,18,
20;30:3,9,12;54:22,24;
56:24
**away (2)**
47:24;48:10

**B**

**back (21)**
13:11;14:3,13,16;
15:12;17:14;19:21;
21:13;22:6;23:12;24:1;
28:22;35:6,7;43:5,10;
45:11;48:3;50:12,19;
51:1
**backstop (16)**
31:6,7;36:10,17,20,
22,24;38:10,17,20;
40:17,20,22;41:1;47:7;
54:23
**Bad (2)**
17:16;20:17
**bank (1)**
11:7
**Bankruptcy (10)**
12:25;28:5,25;29:4;
34:4,5,6,7,15,17
**bar (2)**
15:3,6;18:12
**bargained (1)**
13:11
**barred (2)**
31:10;34:23
**based (2)**
10:21;26:7
**basic (1)**
54:13
**basis (1)**
9:19
**battle (1)**
34:7
**beating (1)**
55:12
**beforehand (1)**
18:7
**began (1)**
26:24
**begin (1)**
24:2
**beginning (5)**
8:15;18:20;44:2;
56:3,17
**begins (1)**
22:19
**begrudge (1)**
56:23
**begrudging (1)**
26:12
**behalf (3)**
7:14,17,20
**belittle (1)**
25:5
**Below (1)**

Case: 19-30088    Doc# 9307    Filed: 10/14/20    Entered: 10/14/20 16:36:02    Page 61
of 71

37:24
**best (14)**
16:5,12,15;17:18,23;
18:5;36:22;39:22,24;
40:1,22;42:18;55:1;
59:12
**better (1)**
37:14
**beyond (3)**
17:23;54:12,20
**bit (1)**
16:9
**bite (1)**
53:19
**Blixseth (4)**
33:25;34:3,9,13
**bono (1)**
55:16
**both (8)**
6:10;14:9;22:15;
24:7;25:7;45:5;46:20;
48:12
**breach (27)**
9:14,15;10:11,20,20,
23;11:24,25;12:5,8,9;
13:7;14:7,8;15:24;
18:2,8,13;19:15;29:15;
47:3;54:18,19,24;57:7,
8;59:6
**breached (3)**
18:5,7;47:12
**breaches (1)**
50:2
**breaching (7)**
27:10,13,18;28:4,15;
29:9,9
**break (1)**
43:6
**brief (6)**
10:13,14;35:5,5;
41:19;43:5
**briefing (4)**
8:22;48:4,6;59:16
**briefly (1)**
49:10
**briefs (4)**
8:22;12:16;43:9;
48:12
**bring (13)**
4:14,16,25;5:21;
6:14;11:21;18:8;33:21;
45:23;46:2;50:21;
51:18;54:6
**bringing (1)**
47:20
**broad (10)**
18:22,25;19:20,21;
20:21;21:22;25:15;
26:7;51:6;54:4
**broader (3)**
21:17;33:15;50:2
**broadly (4)**
12:2;21:2;50:7,12

**brought (5)**
18:10;50:17;51:19,
20;52:18
**bunch (1)**
38:7
**burden (3)**
9:11;12:9;20:3
**butcher (1)**
28:9

**C**

**calculated (1)**
33:1
**CALIFORNIA (7)**
4:1;18:13;27:2;
28:16,17,18;57:7
**Call (5)**
4:3;30:14;31:12;
37:9,12
**Calling (1)**
4:4
**Cambridge (1)**
27:11
**came (1)**
6:6
**camera (4)**
4:9;5:10;8:20;59:15
**can (64)**
4:7,8,10,13,18,18,19,
19,21,22;5:6,7,8,9,12,
13;6:9,10;8:5,11,13;
10:4;11:6;12:8,16;
13:2;14:10;15:13;17:8,
10;20:19;21:21;22:12;
23:10,11;25:2,4,10,11,
21;26:22;28:3;30:4,5,
12,13,17,18;37:3,10,
11,11,12,13,13,14;
43:19;45:6;46:13;53:9;
54:6,7;56:7;58:10
**Canyon (1)**
7:17
**cap (2)**
24:12,12
**capable (1)**
9:25
**capture (1)**
11:8
**care (1)**
44:11
**career (1)**
8:23
**carried (1)**
9:11
**carrying (2)**
27:15;58:8
**carve-back (3)**
13:1,3,6
**carved (1)**
14:5,7,11,11
**carve-outs (2)**
15:5;19:11

**case (14)**
18:11;25:13;26:25;
33:25;34:5,13;40:2;
41:20;48:22;55:13,14,
16;56:19;57:20
**cases (15)**
18:11;26:9,11;27:2,
3;38:4;39:6;41:11;
48:12,14,15,21;49:17;
52:20;55:9
**catch (1)**
13:21
**cause (1)**
36:22
**caused (1)**
29:7
**caution (1)**
52:18
**cents (1)**
32:25
**certain (3)**
21:11;36:24;52:11
**certainly (4)**
17:15;28:14;33:12;
54:13
**challenge (2)**
51:6;52:18
**change (2)**
52:25;53:20
**Chapter (8)**
26:9,11;34:4,16;
36:1;38:4;55:9,14
**chasing (1)**
11:17
**circling (1)**
43:10
**Circuit (4)**
33:25;34:10,11;48:8
**circular (3)**
16:5;23:13;58:17
**circumstance (2)**
9:8;46:18
**Citadel (1)**
7:17
**cite (4)**
34:11;48:15,18;
52:25
**cited (5)**
33:25;48:12,22;
49:15;52:19
**claim (77)**
9:15,20;10:23;12:7,
8,10,18,19,19;14:6,9,
14,18,22,23,24;15:3,6,
8,10,13,24;16:13;
17:24;18:3,4,8;19:14,
23;23:4,14,21;24:2;
25:3,5,8,11,18;26:18,
21;29:20,21,22,25;
32:17;33:21,22;34:2,
23;35:4;42:16;44:9,11,
11,12;46:16,17;47:14,
17;50:21;51:14;54:6,

19,21,23;55:22;56:7,9,
12,15,25;57:1,1,5,8,9;
58:18
**claimant (2)**
45:10;56:14
**claimants (2)**
36:23;56:6
**claims (59)**
9:10;10:11,19,21;
12:14;13:1,2,3,5,9;
14:3,4;15:23;16:1;
18:12;19:17;21:1,5,6,7,
11,12,16,16,19,23;
23:10;31:10;19;32:1;
33:2;34:22;35:2,25;
36:6,15,18;38:15,18,
25;40:15,18;42:17,17,
19,25;44:3,22;45:18,
21,22,23;49:21,22;
50:13,14,15;55:8;
58:22
**class (1)**
8:21
**classic (1)**
21:4
**clause (25)**
22:25;31:14,23;32:1;
33:10;34:2,3,7,12,19,
24;35:17;36:5,7;41:9;
25;42:1;43:16,23;
46:12;49:12;51:15,17;
54:15;55:6
**clauses (5)**
15:25;26:15;34:14;
50:23;53:10
**clear (7)**
31:17;36:5;39:5;
43:17;48:7;51:11;
52:17
**clearly (2)**
46:12,13
**CLERK (16)**
4:4,11,14,24;5:3,5,
20,22;6:16;17:1,3,5,10;
20:4,7;25:23
**client (1)**
39:24
**clients (2)**
29:7;55:22
**clock (1)**
17:15
**close (1)**
11:11
**Code (3)**
12:25;48:20,21
**colleague (2)**
37:10;51:23
**college (1)**
27:25
**coming (1)**
51:1
**commitment (6)**
36:10,17,25;38:10,

19,21,23;55:22;56:7,9,
12,15,25;57:1,1,5,8,9;
58:18
**claimant (2)**
45:10;56:14
19,21,23;55:22;56:7,9,
12,15,25;57:1,1,5,8,9;
58:18
**case (14)**

19,21,23;55:22;56:7,9,
12,15,25;57:1,1,5,8,9;
58:18

18;40:20
**committed (1)**
34:14
**common (5)**
10:16;25:14,14;27:4,
22
**commonplace (1)**
34:16
**company (2)**
28:11,13
**complete (1)**
25:25
**completely (5)**
23:17,19;46:3;58:14,
16
**Complying (1)**
28:4
**concede (2)**
13:13;15:15
**conceded (1)**
49:11
**concern (1)**
58:6
**conclude (1)**
59:21
**concluded (1)**
59:22
**concluding (1)**
56:25
**conclusions (1)**
34:10
**conduct (5)**
10:11;46:13;50:6,16;
56:10
**confirmation (9)**
12:3;19:10;23:9;
31:11;33:2;34:21;36:3;
47:8;52:19
**confirmed (5)**
20:16;29:5,14;33:6,
21
**conflict (3)**
12:16,20;46:24
**connection (23)**
7:24;17:16;35:25;
36:9;38:2,5,9,15,23;
40:16,19;41:4;42:3,5,8,
12,16,25;43:1;49:25;
50:1;55:8,14
**connections (2)**
20:17;59:14
**consequence (1)**
58:22
**consideration (3)**
31:7;36:24;55:20
**constituent (1)**
34:23
**constituents (1)**
33:4
**constitutes (1)**
10:10
**constructed (1)**
42:1

Case: 19-30088    Doc# 9307    Filed: 10/14/20    Entered: 10/14/20 16:36:02    Page 62
of 71

**construction (1)**
41:25
**construed (1)**
28:18
**contained (2)**
36:5;57:5
**contemplated (1)**
19:19
**context (3)**
11:4,5;40:14
**contract (5)**
18:3,13;27:3;28:5;
50:3
**contracts (1)**
10:15
**contrary (1)**
43:22
**control (1)**
54:16
**controls (4)**
28:17;54:14;55:4,11
**convince (1)**
47:23
**copy (2)**
37:2,2
**Corp (1)**
7:14
**Corporation (1)**
4:4
**counsel (6)**
6:24,25;17:6;20:4;
25:23;28:20
**couple (4)**
28:7;46:7;54:11;
58:4
**course (4)**
27:10;36:6;38:17;
44:6
**Court (147)**
4:3,7,12,16,20;5:2,4,
6,8,15,19,21,23,25;6:5,
9,12,18,21,23;7:12,22;
8:3,7,10,13,19;10:2,6;
11:1,3,14;12:15;13:10,
15,17,19,21,23;14:16,
21;15:15,21;16:4,10,
14,17,20,23;17:2,4,8,
12,21;18:17,19;19:3;
20:6,8,12,15,22,24;
21:24;22:3,8,13,20;
23:12,22,24;24:1,4,17,
20;27:2;30:2,4,9,11,14,
19,24;31:7;32:4,13,15;
33:7,9,13,25;34:9,13;
35:5,12;37:1,8,13,17,
19,24;39:1,8,12,18;
40:9,11;41:10,19;43:4,
8;44:6,9,16;45:2,4;
46:6;47:7,13,19;48:24;
49:2;50:9;51:22;52:3,
5,7,8,9,12,23;53:5,13,
17;54:9;55:18,24;
57:10,13,16,23;59:3,5,

**courts (1)**
48:17
**court's (1)**
34:6
**covenants (1)**
58:12
**cover (2)**
36:6;57:19
**covered (2)**
45:20;57:22
**covers (12)**
29:3,11;31:18;32:1;
34:2;35:1,3,16;41:2;
43:17;46:12,13
**crack (1)**
53:25
**criminal (1)**
13:19
**criminals (1)**
59:9
**critical (6)**
8:25;9:4;10:3;44:1;
46:8,10
**crystal (1)**
31:17
**culprits (1)**
8:24
**cut (2)**
21:12;57:10
**Cutler (1)**
7:16
**cutoff (1)**
57:3

**D**

**date (41)**
15:8,14;16:3,6,7,13,
15;17:19,24,25;18:6,9,
12,15;19:8;20:1;21:10;
22:22,24;23:2,5,11;
33:3;34:21;45:14;47:4;
50:8,10,16,18,22;
51:10;56:2,4,10,11,14,
21;57:3,4;59:6
**daughters (2)**
27:23,23
**David (2)**
7:20;8:9
**Davidson (1)**
7:17
**day (5)**
9:17;14:17;29:14;
30:19;59:17
**deal (2)**
35:21;44:25
**dealing (3)**
31:21;40:8;45:5
**deals (5)**
34:3;44:2;45:18;
46:15,21
**debate (1)**

8:23
**debating (1)**
32:19
**debt (1)**
32:24
**debtor (8)**
13:12;18:11;21:2;
26:10;29:1,1,3;44:10
**debtors (28)**
7:9,11;9:7,13,18;
10:10;11:19;12:17;
14:17;19:17;20:3;21:7,
18,18;24:15;26:9;27:9;
28:20;29:24;31:3,18;
34:12;38:19;40:6;55:1,
17;56:17,23
**debtors' (7)**
6:24;10:13,14;17:2;
29:10,11;36:18
**decide (1)**
42:21
**decided (2)**
8:17;29:15
**decision (2)**
33:2;34:10
**decisions (1)**
48:18
**defeated (1)**
14:22
**defies (1)**
58:14
**defined (3)**
24:13;27:1,4
**definitely (1)**
14:4
**definition (3)**
24:12;27:11;56:20
**definitions (1)**
24:13
**degree (1)**
27:23
**delays (1)**
49:5
**demand (1)**
56:12
**demarcate (1)**
21:4
**demarcation (1)**
50:13
**deny (2)**
23:19;29:19
**depends (1)**
6:22
**described (1)**
34:1
**describing (1)**
58:7
**design (1)**
27:15
**detail (1)**
43:5
**Devore (1)**
5:17

**dialogues (1)**
11:12
**dictionary (3)**
27:7,11,14
**difference (3)**
43:12;47:15;53:13
**different (11)**
35:2,8,8,18;38:3,7;
39:18;41:15;44:4;
48:18;53:23
**direct (2)**
31:13,14
**disagree (2)**
12:20,22
**disagreement (1)**
28:24
**disallowed (5)**
15:14;25:8;26:19,19;
56:8
**disallows (2)**
23:17,18
**disappeared (1)**
48:4
**discharge (9)**
29:1;44:3,4,10,16,
17;46:16,20,21
**discharged (1)**
23:10
**disconnecting (1)**
22:3
**discovered (2)**
52:25;53:20
**discussed (1)**
35:20
**discussing (1)**
34:12
**discussion (2)**
6:14;17:14
**disgorge (1)**
26:13
**dismissed (1)**
15:2
**dispute (3)**
9:13;10:18;13:8;
15:10
**disservice (1)**
57:23
**distressed (1)**
32:24
**distributed (1)**
42:7
**divided (2)**
7:25;8:14
**document (2)**
36:12;38:13
**documents (5)**
19:9;22:24;38:11,11;
56:5
**document's (1)**
50:18
**dollar (1)**
32:25
**dollars (2)**

13:11;34:22
**done (6)**
35:13;37:20;45:7,8;
47:5;49:11
**Dorr (1)**
7:16
**down (4)**
11:17;18:19;42:11,
24
**drafter (1)**
28:19
**drafters (1)**
28:21
**during (4)**
34:6;36:19,20;40:21
**duty (1)**
13:7

**E**

**economic (1)**
31:5
**education (1)**
27:24
**effect (9)**
15:7;16:2;18:8;19:7;
21:9;22:23;23:2;45:23;
56:4
**effective (32)**
15:7,14;16:2,6,7,13,
15;17:19,24,25;18:9,
15;19:8;20:1;21:10;
22:22,23;23:2,5;33:3;
34:21;47:4;50:22;
51:10;56:2,4,11,12,14,
21;57:4;59:6
**effectively (1)**
49:6
**effort (1)**
40:1
**efforts (13)**
16:5;12,16;17:18,23;
18:5,6;36:22;39:23,24;
40:22;42:18;55:1
**eight (1)**
8:17
**either (4)**
26:8;33:2;46:16;
52:15
**element (5)**
11:9;17;27:20;35:19;
36:3
**elements (1)**
38:3
**Elliott (13)**
5:15,18;6:25;7:14,
25;9:9,10;10:11;13:10;
15:15;32:16;35:9;
43:13
**else (8)**
10:7;14:23;16:18;
18:3;39:15;45:24;
53:22;58:23

Case: 19-30088     Doc# 9307     Filed: 10/14/20     Entered: 10/14/20 16:36:02     Page 63
of 71

**emphasized (1)**
21:8
**enabled (1)**
29:7
**encompass (1)**
58:11
**encompasses (1)**
58:9
**end (3)**
5:5;14:17;56:17
**ended (2)**
16:5,12
**endorse (1)**
10:14
**ends (1)**
44:24
**enforce (6)**
18:2;19:8,25;22:24;
56:5,21
**enforceable (3)**
51:3,4,5
**enforcement (3)**
35:13;39:15,16
**English (1)**
27:14
**enough (1)**
9:25
**enter (1)**
11:15
**entering (3)**
27:21;28:14;29:6
**entire (3)**
31:8,23;41:8
**entirely (4)**
26:18;36:18;38:18;
45:16
**entities (2)**
24:23,24
**entitled (4)**
18:15;25:13;29:21,
23
**entry (2)**
12:3;47:8
**error (4)**
53:11,14,14;54:3
**especially (1)**
47:11
**established (1)**
28:16
**estate (2)**
34:22;42:6
**estates (3)**
31:19;36:1,4
**et (4)**
7:25;32:16;35:9;
43:13
**even (16)**
11:25;13:6,18,24;
14:10;15:3;28:2,2;
29:3;36:4;37:21;42:21;
48:2;49:21;51:18;55:3
**event (2)**
6:7;16:24

**events (3)**
11:18;23:4;45:14
**everybody (2)**
10:7;30:19
**evidence (2)**
52:25;53:20
**exactly (13)**
9:4;10:18;11:12;
13:3;15:19;32:6;33:1;
38:17;50:15,18,22,23;
56:24
**example (3)**
19:16;38:16;40:19
**except (22)**
8:24;15:5,7,25;19:7,
9;21:8,9,10;22:22;
23:8;25:16;26:15,15,
17;45:12,17;50:14,15;
51:5,17;56:3
**exception (4)**
15:17;22:25;23:7;
50:23
**exceptions (6)**
24:7,9;25:6,12;
46:14;49:14
**excerpt (1)**
10:3
**excerpts (1)**
10:3
**exchange (1)**
35:12
**exclusive (3)**
35:3;48:7,9
**exculpate (3)**
44:5;49:20;54:19
**exculpated (20)**
9:21;10:21;12:10;
13:9;14:13;19:23;29:6,
9,14;35:18;36:15;42:2;
46:16,23;49:22,25;
53:7;54:7;58:19,21
**exculpates (3)**
9:20;35:24;42:24
**exculpating (1)**
46:22
**exculpation (53)**
9:20;10:10;13:2;
14:2,8;15:3;19:22;
21:13;23:18;26:3,24;
28:23,24;29:3,4,11,18;
31:14,17,23,25;32:10,
23;33:5,10,22,24;34:1,
2,3,7,12,19,24;36:4,7;
38:24;41:9;42:15;
43:16,16,23;44:21;
46:12,22;49:12;50:20;
51:15;53:10;54:12,15;
55:8;59:7
**exculpatory (1)**
34:14
**Excuse (2)**
20:4;45:14
**executory (1)**

28:5
**exhausted (1)**
6:3
**exit (4)**
29:12,15;38:11;
54:22
**expense (2)**
23:4;58:18
**explain (3)**
37:14;56:1;58:10
**explains (1)**
32:23
**explanation (1)**
40:18
**explicitly (2)**
40:16;48:14
**express (2)**
17:25;32:14
**expressly (1)**
31:18
**extended (1)**
17:23
**extent (5)**
13:18;19:24;21:12;
41:21;51:4

## F

**face (3)**
9:7;31:10,18
**fact (7)**
19:17;33:19;38:19;
40:6;44:3;47:17;53:11
**facts (2)**
9:8,19
**factual (2)**
9:16;54:2
**failed (2)**
32:17;50:12
**fails (1)**
26:22
**failure (2)**
17:2;36:19
**fall (7)**
10:20;14:12;32:9;
38:25;44:20,22;49:14
**falls (3)**
10:23;15:16;35:10
**familiar (1)**
11:13
**far (3)**
21:17;47:22,24
**Farrallon (1)**
7:17
**fault (1)**
17:15
**features (1)**
34:17
**federal (1)**
27:2
**fee (3)**
21:6;26:16;56:20
**feels (1)**

30:19
**fees (11)**
14:23;21:5,5;25:3,
10;26:10,13;31:6;
55:13;56:22;58:6
**felt (1)**
6:3
**few (2)**
21:4;57:8
**fiduciary (1)**
13:7
**figure (1)**
39:18
**figured (2)**
6:6;10:7
**file (6)**
23:3;25:8,10,11;
26:16;59:8
**filed (7)**
23:10;47:6,10,13,16;
57:8,9
**filing (2)**
56:20;57:5
**final (2)**
8:18;49:4
**finally (4)**
28:22;52:13,16;55:6
**financial (1)**
24:24
**financing (4)**
29:12,15;38:11;
54:22
**find (6)**
18:24;52:23;53:2;
54:3;59:1,2
**finds (2)**
32:9;44:22
**fine (6)**
4:20;7:24;8:13;
17:13;42:10;59:14
**finger (2)**
9:4,24
**finish (6)**
11:22;20:20;29:5;
30:17;43:16;58:9
**fire (6)**
33:4,9,14,17;47:21,
21
**fires (1)**
26:9
**firm's (2)**
58:6;59:8
**first (16)**
8:17;9:19;12:24,24;
20:25;27:19;35:24;
36:13,18;38:1;41:24;
49:15;53:7;54:6;55:6;
58:5
**fit (1)**
52:24
**fits (1)**
53:18
**five (14)**

30:19
**9:19;35:2,6,6,7,8,8;**
41:20;43:8;48:12,14,
18;49:13;51:19
**focus (2)**
31:9,15
**focused (1)**
34:14
**folks (2)**
38:21;40:6
**follow (1)**
39:3
**followed (1)**
41:12
**following (3)**
37:1;49:22
**follows (2)**
22:25;42:4
**follow-up (1)**
9:22
**footnote (1)**
40:7
**foregoing (3)**
24:23;36:12;38:13
**forfeit (1)**
51:9
**forfeiture (8)**
9:23;43:11,13;47:25;
51:1,8;52:14,15
**form (1)**
59:8
**forth (2)**
13:11;14:3
**forward (3)**
9:1;29:22,24
**four (4)**
18:14;51:20;57:7,9
**FRANCISCO (1)**
4:1
**frankly (3)**
14:2;25:12;59:1
**free (2)**
18:10;29:24
**freezes (1)**
8:20
**front (4)**
10:1,3;37:22;47:6
**froze (1)**
8:19;16:9;25:20
**frozen (5)**
5:3,4,7,10;8:12
**frustrated (1)**
20:8
**frustrating (1)**
20:19
**full (2)**
56:13,16
**fundamental (3)**
15:12;36:3;54:5
**funding (15)**
36:10,21;38:16,20;
40:15,17,20,23;41:1;
42:7,13,15,16,19;55:2
**further (3)**

Case: 19-30088    Doc# 9307    Filed: 10/14/20    Entered: 10/14/20 16:36:02    Page 64
of 71

30:22;36:7;42:24
**furtherance (3)**
　11:23;12:1;14:10
**future (1)**
　59:8

## G

**Galardi (72)**
　4:15;5:17,20;6:9,10;
　7:13,14;8:1,2,3,5,7,8,
　11,14;9:1,3;10:2,5,7;
　11:2,5;12:22;13:14,16,
　18,20,22,24;14:20,25;
　15:18,22;16:9,11,15,
　18,21;17:13,17,22;
　18:18;19:2,4;20:19,23,
　25;21:25;22:7,17;
　23:13;24:9;28:7;39:13;
　45:25;48:2;49:2,8;
　50:11;51:22;52:1,4,10,
　13;53:3,6,16;54:1,13;
　57:2,19,19
**Galardi's (2)**
　27:19;45:12
**gasp (1)**
　53:22
**gave (1)**
　34:18
**general (7)**
　10:16;12:13;14:13;
　49:16;54:14;55:4,11
**gentlemen (1)**
　17:12
**gets (7)**
　23:17;26:19,19;29:1,
　1,6;44:10
**given (1)**
　14:1
**gives (1)**
　53:19
**goes (7)**
　10:9;11:12;23:12;
　36:7;40:14;50:6;53:8
**Goldblatt (1)**
　5:24
**Good (14)**
　4:22;6:3,18,19,20;
　7:13,15,19;22:10,11,
　11;31:1;32:20;59:17
**goods (2)**
　44:10,13
**gored (1)**
　34:8
**gotcha (1)**
　54:9
**Gotshal (5)**
　7:9,10;25:1;31:2;
　50:14
**Gotshal's (1)**
　21:5
**govern (2)**
　11:10;50:24

**governs (2)**
　28:18;49:16
**graduate (1)**
　27:25
**great (1)**
　10:5
**Gregg (2)**
　7:14;16:22
**grounds (1)**
　9:23
**guess (8)**
　15:18;16:4;33:16;
　40:4;43:15;46:25;53:3;
　59:5
**guidance (1)**
　11:3

## H

**Hale (1)**
　7:16
**hand (5)**
　4:15;51:23;52:2,6,7
**handful (1)**
　35:22;48:15
**happened (2)**
　11:14;32:22
**happy (3)**
　30:7;33:15;37:16
**hard (2)**
　18:24;55:23
**head (1)**
　5:14
**hear (21)**
　4:7,8,10,13,18,19,21;
　5:8,12;6:9,10;8:6,8,11,
　13;17:8,10;22:12;
　25:21;30:4,12
**heard (2)**
　40:18;50:5
**hearing (6)**
　9:2;15:2;16:19;17:5;
　49:19;59:21
**hearings (1)**
　34:6
**heart (1)**
　10:9
**heartstrings (1)**
　47:20
**help (2)**
　37:9;39:20
**herein (1)**
　43:22
**here's (1)**
　27:7
**herring (1)**
　56:2
**higher (1)**
　27:23
**highlight (1)**
　37:6
**highlighted (1)**
　37:11

**highly (1)**
　34:4
**Hogan (1)**
　7:20
**hold (1)**
　55:15
**hole (1)**
　46:14
**Honor (142)**
　4:5,11,19,22;5:1,7,
　13,18;6:1,11,16;7:3,8,
　13,15,19;8:2,5,8,11,14;
　9:3,6,24;10:8,13,17;
　11:13,19,24;12:23;
　13:14;14:25;15:4,8,10;
　16:9,19;17:1,10,17,22;
　19:5;20:7,20,25;21:2,
　14;22:1,11,14;24:3,15;
　25:19,19,25;26:4,18;
　29:19;30:1,6,10,13,23;
　31:2,4,12;32:6,9,20,22;
　33:16,24;34:18,25;
　35:1,15,23;36:13;37:9,
　16;38:1,14,25;39:6;
　40:4,12,15,21,24;41:2,
　24;42:10,23;43:15,18,
　21,25;44:1,19,22,24;
　45:16;46:4,7,9,15,18,
　19,21,25;47:16;48:6,
　11;49:1,8,16,18,24;
　50:4,11,25;51:2;52:5,
　11,13,16;53:3,9;54:11;
　55:12,15,21;56:15,25;
　57:14,18;58:3,15,25;
　59:18,20
**Honor's (1)**
　10:9
**hookups (1)**
　30:20
**hope (2)**
　27:22;59:7
**hoping (1)**
　27:24
**horse (1)**
　55:12
**hundred (1)**
　32:25
**hundreds (1)**
　34:21

## I

**idea (1)**
　46:15
**ignoring (1)**
　41:10
**impact (2)**
　44:17,21
**implication (1)**
　29:10
**important (8)**
　31:22;32:11,22;
　35:23;41:2;42:11,13;

49:19
**include (6)**
　21:11;24:15;38:21;
　42:22;58:24,25
**included (2)**
　34:12;58:20
**includes (2)**
　42:22;58:8
**including (5)**
　25:17;26:16;31:6;
　33:4;38:3
**Indeed (2)**
　18:11;33:21
**independent (1)**
　31:23
**indiscernible (1)**
　13:20
**indisputably (1)**
　36:2
**infer (1)**
　33:14
**initial (2)**
　23:19;52:17
**injunctive (1)**
　47:10;51:12
**injustice (1)**
　53:21
**insisted (1)**
　58:21
**instance (2)**
　11:10;49:15
**instances (2)**
　41:20;43:8
**instead (1)**
　31:9
**intend (2)**
　51:24;52:1
**intended (2)**
　33:23;50:6
**interesting (2)**
　36:14;48:15
**interference (28)**
　5:1;7:22;11:3;16:7,8,
　17,20,23,24,24;17:4;
　20:10;22:23,25;23:2;
　24:11,16,21;25:1;
　26:20;29:16,18,20;
　30:3,9;54:22,24;56:24
**interposed (1)**
　9:18
**interpretation (4)**
　10:15;46:3;53:18;
　58:13
**interpreted (1)**
　50:10
**interrupt (1)**
　51:22
**into (10)**
　6:6;11:15,18;12:3;
　27:21;28:3,14;29:6;
　46:14;55:1
**investors (1)**
　32:24

**involved (1)**
　42:18
**irrational (1)**
　58:14
**issuance (1)**
　42:25
**issue (9)**
　9:6;10:19;12:24;
　17:22;43:17;44:24;
　45:6;48:13;54:2
**issued (1)**
　47:9

## J

**joining (5)**
　4:6,15,24;5:20;6:16
**Judge (4)**
　17:6;20:7;25:24;
　30:5
**justification (1)**
　53:25

## K

**Karotkin (17)**
　4:25;6:12,18,20,21,
　22;7:2,2,4,6,10,10;
　Karotkin's (2)
　6:16;14:23
**keep (3)**
　39:20;55:12;59:8
**keeps (2)**
　28:11,13
**Kempner (1)**
　7:17
**kept (1)**
　43:10
**Kevin (1)**
　37:10
**key (1)**
　25:15
**kill (2)**
　24:6,7
**killed (1)**
　30:15
**kind (3)**
　33:7;48:4;55:18
**kinds (1)**
　11:12
**knew (2)**
　6:8;47:3
**knowingly (1)**
　14:1
**Kramer (3)**
　37:10,10,12

## L

**lane (1)**
　32:14
**language (42)**

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(5) furtherance - language

Page 65
of 71

Case: 19-30088　　Doc# 9307　　Filed: 10/14/20　　Entered: 10/14/20 16:36:02

9:25;10:16,22;11:22;
12:11,12;15:6;18:22,
22;19:6,20;20:21;21:8;
22:17;31:11,20,21,25;
32:10;33:18;36:5;
38:24;40:13,25;41:3,9,
22;43:22;44:21,23;
45:18,25;46:10,11;
49:18,23;50:14,20;
51:4,5;54:14;56:2
**last (6)**
22:16;24:8;46:25;
48:1;53:22;58:15
**later (1)**
28:1
**Latin (2)**
28:9,10
**law (3)**
18:13;26:22;28:16,
17,18;48:7;53:1,11,21;
54:3
**lawyers (1)**
34:7
**Lazard (1)**
25:2
**Lazard's (1)**
21:5
**lead (1)**
24:10
**leading (3)**
11:18,18;14:9
**least (2)**
35:2;41:20
**leave (5)**
6:4;9:16;13:4;43:11;
49:10
**leaving (1)**
57:24
**left (1)**
46:2
**legal (1)**
9:19
**letters (9)**
36:10,17,20,25;
38:10,18;40:17,20;
41:2
**level (1)**
9:5
**lie (1)**
33:20
**limitation (1)**
57:6
**limitations (3)**
45:24;51:20;57:6
**limited (9)**
18:22;19:3,5,6;
34:14;42:10,20;43:3;
54:15
**limits (2)**
39:19;42:14
**line (3)**
11:22;23:7;26:6;
29:5;37:3,3,4,24;

**41:12;42:11;43:2;58:9**
**lines (3)**
18:21;21;38:8
**list (2)**
39:10;41:15
**listed (1)**
35:6
**literally (3)**
28:10;30:5;49:23
**litigation (4)**
21:11,12;33:21;
34:17
**litigious (1)**
34:4
**little (2)**
16:9;42:24
**LLP (1)**
7:20
**logic (3)**
29:13,17;58:14
**long (7)**
18:7,20,20,24;19:13;
45:8;47:4
**longer (3)**
8:5;11:8;25:22
**look (18)**
21:1;24:12;26:4;
31:22;34:25;35:17;
37:21;38:14;39:5;41:8;
42:24;46:9,11,19;
48:11;55:3;56:2;57:6
**looked (1)**
48:12
**looking (3)**
9:1;37:2,5
**loose (1)**
22:5
**lose (2)**
23:24;53:24
**lost (4)**
17:6,18;20:5;25:24
**lot (5)**
8:22;11:14;12:15;
31:13;47:5
**lots (2)**
19:12;27:1
**Lovells (1)**
7:20
**lowered (2)**
52:6,7
**lying (1)**
34:20

**M**

**main (1)**
6:6
**Management (2)**
7:14;28:25
**mandates (1)**
43:23
**Manges (2)**
7:9,11

**manifest (4)**
53:11,14,21;54:3
**manner (1)**
26:8
**many (3)**
43:17;44:23;57:2
**margin (1)**
18:21
**mark (1)**
37:15
**match (1)**
37:3
**matter (7)**
4:4;9:16;18:13;
26:22;29:17,17;59:16
**matters (1)**
45:13
**May (6)**
20:20;22:1;25:8,20;
30:10;56:8
**maybe (2)**
21:25;27:25
**McCoy (1)**
37:22
**mean (11)**
12:17;16:14;24:9;
35:12;43:5;44:7;52:23;
53:14;55:12,16;59:7
**meaning (7)**
11:6;21:21;27:5;
28:11,12;44:4;46:20
**meaningful (3)**
10:23;12:4;21:16
**means (12)**
8:24;11:4,16;27:1,7,
8,12,20;46:1;48:8,9;
55:17
**meant (1)**
45:25
**mention (2)**
54:18,18
**mentioned (3)**
23:13;28:7;36:14
**merely (1)**
29:12
**merits (6)**
14:17,18;15:2;26:23;
40:2;56:8
**Merriam- (1)**
27:7
**met (3)**
48:14,19,23
**mic (4)**
4:9;8:1,7;30:25
**microphone (1)**
8:3
**middle (1)**
18:20
**might (4)**
11:21;14:4;21:3;
39:16
**million (1)**
13:10

**millions (1)**
34:22
**mind (1)**
58:3
**minute (1)**
20:5
**minutes (5)**
8:15,17,18;22:1,4
**misconduct (1)**
13:25
**misrepresentation (1)**
13:7
**mistake (1)**
53:11
**modification (1)**
47:2
**modified (1)**
42:8
**modifies (2)**
39:2,4
**modify (7)**
32:3,4,9;39:10;45:1;
48:8,9
**modifying (1)**
48:16
**moment (4)**
4:14;17:7;25:24;
30:22
**money (2)**
47:21;55:22
**Montali (3)**
17:6;25:24;30:5
**month (1)**
51:18
**months (2)**
51:18,19
**more (9)**
22:4;28:7;30:7;36:5;
50:7;54:10;57:8;59:13,
13
**morning (12)**
4:22;5:24,25;6:2,18;
7:13,15,19;22:10,11,
11;31:1
**most (2)**
49:19,25
**motion (9)**
9:7;29:19;31:7,8;
43:19;47:6,16;52:17;
53:5
**motion's (1)**
32:11
**mouth (1)**
52:11
**move (4)**
20:13;26:2,23,24
**moving (1)**
5:14
**much (3)**
45:5;46:12;55:12
**multiple (1)**
31:20
**must (1)**

**49:14**
**muted (2)**
8:4,5
**myopically (1)**
31:20

**N**

**name (1)**
30:16
**narrowly-tailored (1)**
34:1
**nature (1)**
34:4
**necessary (2)**
53:12;57:21
**need (3)**
4:8;52:22;53:5
**needed (2)**
6:6;40:21
**negates (1)**
46:3
**negotiate (1)**
28:15
**negotiated (1)**
13:11
**negotiates (1)**
28:13
**negotiating (2)**
14:3;27:21
**negotiation (41)**
10:22;11:11,11;13:8;
14:8;28:8,13;31:21;
35:15,20,21;36:8,9,16,
19,21;37:4;38:6,10,16,
19;39:2,5,10,16;40:13,
14,16;41:1,3,8,13,14;
42:6,14,20;43:3;49:20;
50:1;54:16;55:10
**negotiations (2)**
11:14;40:21
**neighbor (1)**
11:11
**newly (2)**
52:25;53:20
**news (1)**
32:20
**next (3)**
18:19;23:6;38:5
**Ninth (2)**
33:25;48:8
**nobody (1)**
39:25
**None (4)**
48:16,16;55:2,4
**nonissue (1)**
45:6
**normal (1)**
27:4
**normally (1)**
28:24
**note (2)**
6:2;29:11

Case: 19-30088    Doc# 9307    Filed: 10/14/20    Entered: 10/14/20 16:36:02    Page 66
of 71

**noted (3)**
10:17;26:4;34:17
**noteholder (17)**
9:14;10:12,20;11:17,
25;12:4,5;15:24;27:9;
29:12;36:1,23;51:12;
58:12,12,20,23
**noteholders (4)**
9:9,11;32:2;44:25
**notes (1)**
32:25
**notice (1)**
47:9
**notion (2)**
28:8;47:24
**notwithstanding (3)**
25:3;43:22;55:3
**number (2)**
38:3;46:8
**numbers (2)**
22:16;37:3

**O**

**object (4)**
32:2,8;33:18;54:7
**objected (3)**
47:7,8;56:7
**objection (4)**
21:3;23:20;26:21;
29:24
**objections (1)**
9:19
**obligated (1)**
55:1
**obligations (1)**
58:11
**observance (2)**
27:15;58:8
**obtain (3)**
56:15,16,23
**Obviously (3)**
26:10;53:1,6
**occur (1)**
45:21
**occurred (3)**
23:4;56:10;57:8
**occurrence (1)**
22:22
**OCTOBER (1)**
4:1
**odd (1)**
54:17
**off (6)**
5:10;8:21;41:25;
43:16;57:11;59:15
**once (5)**
11:8;31:7;32:7;48:8;
59:14
**One (28)**
4:14;17:6;20:13;
21:1;22:16;23:1,6;
24:1;25:24;28:13,14;

31:20,21,22;34:5;
35:17,19;36:8;39:2;
40:5;41:21;42:23;46:8,
14;54:1;55:3,7;59:13
**only (24)**
13:4,25;15:1;16:5;
21:7;24:5;29:23;31:18,
20;32:1,22;34:3;35:9,
17;43:17;44:2;45:18;
46:15,21;50:6;51:9;
54:24;57:11;59:9
**oOo- (1)**
4:2
**opening (2)**
10:13,14
**operates (1)**
35:9
**operative (1)**
16:23
**opposed (1)**
15:2
**opposite (1)**
27:18
**order (11)**
4:3;9:7;19:10;23:9;
27:8,15;31:11;33:5;
44:24;47:9;52:19
**others (2)**
4:12;31:16
**otherwise (7)**
19:9;21:10;23:8;
25:7;27:4;51:5;52:17
**ours (1)**
21:12
**out (41)**
14:5,7,11,11;27:15;
31:19;33:14;35:25;
36:9,15;38:2,5,9,15,21;
39:18;40:5,15,19;41:4,
5,7,11,22;42:3,5,9,13,
16,21,25;43:6;44:24;
49:16;50:15;54:25;
55:9,13,22;57:2;58:8
**outset (3)**
24:6,7,13
**outside (2)**
11:14;35:10
**over (10)**
17:14;22:2;32:12;
41:16;49:16;52:10;
54:14,16;55:4,11
**override (1)**
43:24
**overrides (3)**
46:17;48:21,21
**overwhelmingly (1)**
33:11
**oxen (1)**
34:8
**Oxford (1)**
27:14

**P**

**page (9)**
18:19;22:18;23:6;
24:14;26:5,6;41:17;
43:5;47:1
**paid (6)**
12:14;13:2,4,5;
50:19;56:22
**papers (1)**
20:13
**Parada (8)**
4:10;5:21;6:15;17:1,
9;25:23;52:6;59:19
**paragraph (2)**
18:20;26:15
**paraphrasing (1)**
17:20
**Pardon (1)**
19:3
**parlance (1)**
27:22
**parse (1)**
49:17
**part (7)**
26:9;34:15;35:24;
36:2;40:22;53:7;58:19
**particular (6)**
10:24,25;11:10;
21:22;40:14;51:9
**parties (15)**
7:18;19:17;21:17,20;
24:12,14;25:4;33:19;
36:23;40:22;47:3;
49:11;56:20;58:20,21
**parties' (1)**
58:11
**party (1)**
34:20
**passes (1)**
6:1
**past (1)**
57:13
**patience (1)**
59:16
**Pause (3)**
20:11,14;27:9
**pay (3)**
12:25;29:15;57:24
**payment (3)**
29:23;56:13,16
**peace (1)**
30:7
**penny (1)**
25:13
**people (5)**
14:2;29:4;33:20;
47:18;53:22
**Perfectly (1)**
22:13
**performance (4)**
36:2;41:6;58:11,25

**perhaps (2)**
10:18;35:13
**period (1)**
51:20
**permit (1)**
52:20
**permits (1)**
25:7
**person (4)**
39:21,22,23;44:13
**person's (1)**
44:17
**persuaded (1)**
32:15
**petition (5)**
45:14,22;46:3;50:8;
56:10
**PG&E (1)**
4:4
**Philip (1)**
7:16
**phone (1)**
30:15
**phrase (5)**
9:4;10:18;35:10;
37:4;39:2
**pick (1)**
24:8
**Pickering (1)**
7:16
**piece (1)**
31:22
**pieces (1)**
31:24
**pigeon- (1)**
46:13
**PIMCO (1)**
7:21
**plain (6)**
31:10,25;32:9;38:24;
44:21,22
**plan (80)**
9:20;10:1;18:1,9,10,
18;19:8,8,10,14,18,18,
25,25;20:16;21:11;
22:16,24,24;23:3,8,9,
16;24:13,18;25:7,10,
16,17;26:16;27:1,15,
16;28:17,21;29:5,8,14;
31:11;32:2;33:3,5,6,11,
19;34:25;35:1;36:10,
21;38:11,16,20;40:15,
17,19;41:1;42:7,13,15,
19;43:1;44:12,18;45:1;
47:18;48:8,10;50:17,
17,22;52:19;56:5,5,6,
11,22;57:1,5;58:8,19
**planned (1)**
20:13
**plans (3)**
34:16;48:16;57:3
**plan's (1)**
33:20

**play (1)**
47:20
**playing (1)**
47:22
**pleadings (1)**
21:9
**please (1)**
7:1
**plenty (1)**
22:8
**plus (1)**
15:5
**pockets (1)**
55:23
**point (34)**
11:20;15:12;23:12,
19;24:8;27:13;28:2;
32:5,7,7,19;37:15;
39:12,13,22;40:5;
41:16,16,23;42:10;
43:9,10,10,15,25;44:8,
18,19;45:7;47:2,16;
48:1;54:5;56:18
**pointed (3)**
41:11;44:24;49:16
**points (6)**
22:15;28:7;46:8;
52:11;54:11;57:2
**political (1)**
43:20
**position (2)**
23:1;45:17
**possibly (2)**
12:5;59:2
**post (1)**
15:14
**post- (2)**
46:2;56:1
**post-effective (3)**
18:6;23:11;50:18
**post-petition (2)**
44:13;45:19
**pre- (3)**
45:13,21;50:7
**precisely (3)**
27:18;33:22;42:17
**precluded (1)**
51:17
**pre-effective (5)**
45:14;50:8,10,16;
56:1
**premise (2)**
19:22;31:8
**premised (1)**
36:18
**prepared (1)**
55:15
**pre-petition (4)**
45:18,19;46:2;50:6
**preserved (5)**
15:9;21:23;25:17;
45:14;57:1
**presumably (1)**

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(7) noted - presumably
Page 67
of 71

Case: 19-30088    Doc# 9307    Filed: 10/14/20    Entered: 10/14/20 16:36:02

34:16
**pretty (1)**
18:22
**prevent (2)**
33:23;34:20
**principle (1)**
28:10;50:13;57:20
**principled (2)**
21:3,4
**printed (1)**
37:2
**prior (2)**
17:24;59:6
**pro (1)**
55:16
**probably (2)**
13:12;52:10
**problem (1)**
16:21
**problems (1)**
16:19
**procedures (1)**
49:23
**proceed (1)**
9:9
**proceeding (1)**
27:16
**proceedings (4)**
34:5,7,15;59:22
**process (1)**
36:3
**professional (3)**
25:10;55:13,15
**professionals (4)**
25:13;28:25;55:23;
56:19
**professionals' (1)**
26:10
**proof (1)**
44:9
**property (1)**
42:7
**proposition (1)**
54:21
**prosecuted (1)**
50:17
**prove (3)**
23:20;29:21,22
**proves (1)**
55:11
**provide (1)**
56:11
**provided (5)**
19:9;21:10;23:8;
44:18;54:25
**provider (1)**
44:13
**provides (2)**
23:9;25:17
**provision (14)**
9:20;10:24;23:16,18;
24:11;25:9;26:5;31:17;
33:22;34:16;49:12,18;

55:7,16
**provisions (9)**
17:25;18:2;19:24;
28:21;45:13,13;54:16,
18;55:2
**purpose (1)**
34:19
**pursuant (4)**
9:6;17:25;19:18;
50:17
**pursue (8)**
11:7,7;16:1,13;
18:10;19:16,17;27:20
**pursued (2)**
18:14,15
**pursues (1)**
27:23
**pursuing (8)**
8:25;11:9;13:19;
28:4,5,6,6;38:20
**pursuit (77)**
8:24,24,25;10:18,22;
11:4,12,16,21;12:1,4,5;
13:8,13;14:8;18:23;
19:3,5;26:25;27:7,8,12,
14,19;28:3,8,12;31:21;
33:15;35:10,12,13,15,
15,20,21;36:8,10,15,
16,19,21;37:4;38:10,
16;39:2,5,10,14,16,19;
40:13,14,16;41:1,3,4,6,
7,8,13,14;42:6,14,21,
22;43:3;49:20;50:2;
54:16;55:10;58:7,7,10,
13,24;59:7
**put (10)**
9:4,24,25;16:24;
18:12;30:16;31:4;
37:10;52:10;59:6
**putting (1)**
28:2
**PWS (3)**
34:10,11,13

---

## Q

**quick (1)**
9:5
**quickly (2)**
24:8;59:13
**quirky (1)**
8:20
**quite (2)**
14:2;55:23
**quote (1)**
34:18

---

## R

**raise (1)**
33:2
**raised (5)**
4:15,25;11:20;43:19;

54:2
**rather (2)**
33:15;54:17
**rational (6)**
31:5;39:21,22,23;
46:3;58:13
**reach (1)**
32:7
**reaching (1)**
34:9
**read (17)**
8:22;10:15,16;12:1,
2;21:2,3;25:11;35:6;
38:9;42:1,5;49:23,24;
50:7,12;53:9
**reading (5)**
21:15,22;24:9;25:12;
43:9
**reads (1)**
49:13
**real (1)**
37:22
**really (4)**
11:10,23;12:23;
22:14
**reason (5)**
26:14;46:10,15;
48:17;56:24
**reasonable (1)**
14:23
**reasons (1)**
15:5
**rebuttal (3)**
8:16;22:9;57:21
**received (1)**
32:25
**recently (1)**
8:19
**recognize (2)**
36:13;48:9
**recognized (1)**
46:21
**reconnect (1)**
17:7
**reconsider (1)**
52:19
**record (1)**
7:1
**recording (1)**
4:5
**recourse (1)**
32:1
**red (1)**
56:2
**refer (2)**
10:6;55:10
**reference (1)**
54:17
**referenced (1)**
25:6
**referring (2)**
22:18;54:15
**regardless (3)**

19:12,13;31:9
**regards (1)**
6:1
**rejected (1)**
26:22
**Rejecting (1)**
28:5
**relate (3)**
26:10;45:13;50:16
**related (3)**
36:12;38:13,18
**relating (1)**
26:8
**release (28)**
15:16,20;17:20;
19:24;24:6;25:9,14,15;
26:4;29:1;44:4,20;
45:20;46:1,4,9,9,11,12,
17,19,20,22;51:16;
53:10;54:3;55:25;
58:16
**released (23)**
9:21;15:16,22,23;
19:1;21:17,19;26:6,7;
42:2,12;44:20;45:21,
22;46:16,24;50:20,21;
53:8;54:8;58:18,20,22
**releases (9)**
21:17;25:9;35:25;
42:24;50:4,5;51:3,3,6
**Releasing (5)**
24:11,14;25:4;46:23;
56:20
**relied (3)**
33:4,18;34:10
**relief (6)**
9:23;32:17;47:10;
51:12;53:1;54:4
**rely (1)**
33:19
**relying (1)**
47:18
**remain (6)**
15:7;16:2;19:7;21:9;
22:23;56:4
**remains (1)**
23:1
**reorganized (5)**
7:9,11;21:18;31:2;
56:17
**repeats (1)**
41:21
**reply (3)**
11:20;41:19;43:5
**reported (1)**
6:3
**REPORTER (3)**
52:5,8;59:20
**represented (1)**
33:17
**required (3)**
51:13,18;58:19
**requirements (1)**

48:19
**reserve (1)**
59:8
**reserved (2)**
16:2;57:20
**resolution (1)**
49:22
**resolve (2)**
15:11;55:19
**respect (15)**
10:14;11:20;21:19;
24:23;42:15;43:23;
46:7;49:21;50:2,4,25;
51:8;52:13,16;56:9
**responded (1)**
51:2
**restructuring (3)**
36:11,21;38:11
**result (3)**
13:12;19:15;24:10
**Richard (4)**
7:3,6,8;31:2
**right (59)**
4:12,17,20;5:8;6:12,
18,23;7:12,23;8:19,21;
10:3,9;12:17;14:24;
15:7;16:2,5;18:2,8,15;
19:13;20:18;21:23;
22:20;23:3,22,25;
24:19;25:5,17,20;
26:16,17,18;27:19;
28:23;29:17;30:12;
32:4;38:1;39:12,12;
40:3;41:13;42:12;
47:11,23;48:24;51:9;
55:7;56:6,7,11,14,21;
57:2,12;58:17
**rights (14)**
16:1;19:7;21:9;
22:22;23:1;25:16;
26:16;31:6,6;36:24;
38:22;47:17;54:25;
56:3
**rise (2)**
9:15;10:11
**rising (1)**
41:22
**robbers (1)**
11:7
**route (2)**
31:13,14
**RSA (37)**
9:14;10:12,20,22;
11:17,18,25;12:1,4,6;
13:8,12,13;15:24;27:9;
29:7,12;36:2,2,17;
40:25;47:11;49:13,20;
51:12;54:15,17,19,24,
24,25,25,25;58:12,12,
20,23
**rule (5)**
12:13;14:13;48:20;
54:13;55:3

Case: 19-30088    Doc# 9307    Filed: 10/14/20    Entered: 10/14/20 16:36:02    Page 68
of 71

**run (1)**
17:15

**S**

**Sam (1)**
24:22
**same (8)**
14:21;23:12;27:12;
34:17;43:6;44:12;47:1;
56:24
**SAN (1)**
4:1
**satisfy (1)**
56:9
**saw (1)**
33:18
**saying (10)**
17:23,24;26:25;27:3;
33:14;38:17,19;40:21;
55:7,17
**scheduling (1)**
9:6
**school (1)**
27:25
**screen (3)**
8:12;37:20;57:24
**Sculptor (1)**
7:18
**Second (6)**
9:21;12:24;20:13;
26:5;35:16;53:19
**section (7)**
15:9;24:14;25:10;
43:20,20;50:19;56:13
**sections (1)**
12:20
**securities (1)**
43:1
**seek (4)**
9:23;51:11;52:21,22
**seem (1)**
49:9
**seems (5)**
18:25;20:2;25:15,23;
49:6
**semicolon (5)**
39:9;41:11,12,14;
49:17
**semicolons (2)**
35:19;42:4
**sense (3)**
11:16;12:18;14:1
**sentence (1)**
18:25
**sentences (1)**
58:4
**separate (2)**
35:19;46:20
**separated (1)**
35:18
**separately (1)**
35:3

**seriously (1)**
53:15
**services (2)**
44:10,13
**set (3)**
9:5;31:21;57:3
**settled (1)**
15:11
**seven (2)**
8:18;51:18
**Shall (1)**
4:25
**sharing (1)**
37:20
**shortly (1)**
57:4
**show (2)**
9:8;12:9
**shows (1)**
37:4
**sic (1)**
51:1
**sides (1)**
45:5
**significant (2)**
31:5,6
**silence (1)**
47:24
**similar (3)**
15:5;27:11;34:14
**Similarly (2)**
14:15;15:4
**Simonds (15)**
4:6,7,8,10,13,18,19;
7:19,20;8:8,9;49:3;
57:13,17,18
**simple (2)**
20:2;44:9
**simply (7)**
21:15;23:1;26:13;
29:15;49:17;54:6;57:6
**single (2)**
10:3;48:22
**sit (1)**
57:24
**sitting (1)**
4:23;47:17
**skip (1)**
24:24
**Slack (63)**
4:14,15,21,22;5:6,7,
9;6:22;7:3,3,5,8,8;
30:21;31:1,2;32:6,14,
20;33:8,12,16;35:11,
14;37:1,1,7,9,16,18,23;
38:1;39:1,4,9,17;40:4,
10,12;41:10,18,24;
43:4,7,15;44:8,15,19;
45:3,11,16;46:7;47:15;
48:6,25;49:1,11,23;
50:5,12,19;53:17;
54:21
**Slack's (2)**

52:20;55:7
**small (1)**
37:21
**somebody (1)**
40:1
**somehow (2)**
47:23;54:19
**someone (1)**
11:20
**sometimes (2)**
37:20;57:3
**somewhat (1)**
11:13
**soon (1)**
6:12
**sophisticated (3)**
28:20;32:24;47:3
**Sorry (7)**
7:4;12:13;17:12;
20:4,12;49:8;51:22
**sort (2)**
31:12;38:7
**sounded (1)**
45:17
**sounds (1)**
47:1
**specific (13)**
10:16,21;11:6;12:7,
12;14:8;19:6;49:12,15,
18;54:14;55:4,11
**specifically (7)**
10:1,8;19:11,18;
43:23;56:13;58:19
**spend (2)**
32:10;45:4
**spent (1)**
12:15
**split (1)**
8:17
**springing (1)**
34:21
**square (1)**
24:1
**standard (1)**
56:9
**start (7)**
9:13;17:14;19:22;
22:15,18;47:20;54:12
**started (1)**
49:19
**state (4)**
6:13,23,25;32:17
**stated (3)**
34:6;43:5;46:15
**statute (4)**
27:3;45:24;51:19;
57:6
**stay (3)**
5:10;8:21;16:12
**step (1)**
28:22
**Stephen (2)**
7:2,10

**Steve (1)**
7:5
**still (7)**
15:13;21:15,16,23;
23:20;44:11;46:2
**stop (2)**
25:20;41:12
**stretch (1)**
33:9
**strike (1)**
59:7
**struggling (1)**
41:23
**stuck (1)**
30:16
**studied (2)**
28:9;43:9
**subject (2)**
13:25;22:21;51:14,
16
**succeed (1)**
9:10
**succeeded (1)**
53:7
**sufficient (1)**
23:7
**suggest (2)**
45:25;48:23
**suggesting (1)**
28:1
**suggests (1)**
21:2
**support (1)**
29:8
**supposed (2)**
20:9;33:13
**supposedly (1)**
47:3
**Supreme (2)**
5:25;27:2
**sure (8)**
15:18;16:10;17:22;
22:17;30:18;35:14;
37:16;53:2
**survive (1)**
16:6
**sustain (1)**
12:8
**swallow (1)**
19:15

**T**

**talk (4)**
31:15;41:5;46:22;
52:25
**talking (2)**
38:6;39:11
**talks (3)**
38:2;40:25;42:12
**TCC (2)**
33:17,17
**team (1)**

27:6
**telling (2)**
39:20;52:24
**temporal (4)**
11:9;17;27:19;28:2
**tempting (1)**
55:18
**ten (2)**
8:16,18
**term (2)**
24:13;27:3
**terminate (1)**
17:19
**termination (1)**
47:9
**terms (4)**
10:22;18:23;19:1;
55:2
**theoretically (1)**
45:23
**theory (2)**
48:2;53:19
**thereafter (2)**
27:25;57:4
**Therefore (2)**
19:23;25:16
**third (5)**
19:16;21:19;28:16;
34:10,11
**Thomas (1)**
59:19
**thorough (1)**
59:15
**though (5)**
15:16;17:23;24:5;
47:15;48:1
**thought (2)**
5:23;26:1
**three (4)**
8:18;9:22;27:22,23
**threshold (1)**
26:21
**Thus (1)**
34:19
**timely (1)**
51:20
**times (1)**
35:8
**tirelessly (1)**
34:8
**today (8)**
9:12;15:1;20:17;
24:5;29:20;31:4;40:8;
59:16
**trade (1)**
14:23
**traditional (3)**
14:24;52:24;53:1
**transaction (1)**
36:11,17;38:13
**transactions (1)**
36:11,22;38:7,12
**transfer (1)**

Case: 19-30088    Doc# 9307    Filed: 10/14/20    Entered: 10/14/20 16:36:02    Page 69
of 71

36:23
**translates (1)**
28:10
**tried (1)**
30:14
**trouble (2)**
16:4;17:5
**trumps (2)**
43:20,20
**try (8)**
7:23;17:7;20:15,20;
39:20;41:24;53:23;
55:25
**trying (5)**
11:21;19:5;30:11;
37:5;50:7
**TUESDAY (1)**
4:1
**turn (11)**
4:8;5:10;8:7,20;
21:25;22:1;24:17;
30:21,25;36:20;43:11
**turned (1)**
59:14
**twelve (3)**
8:17;22:1,4
**twenty (3)**
8:15,17;41:15
**two (13)**
6:25;15:5,25;19:11;
20:25;21:8;22:14;25:6;
26:15;31:15;51:17,18;
54:1
**type (3)**
15:23;33:22;34:2
**types (4)**
13:9;14:2;15:22;
50:15
**typically (1)**
57:3

**U**

**Uh-hum (1)**
20:24
**ultimately (1)**
26:19
**unable (1)**
52:11
**under (43)**
9:9,23;12:25;18:9,
10,13,18;19:25,25;
23:2;25:4,16;26:16;
28:16;29:12,13;34:24;
36:2,24;38:5,24,25;
41:6;43:1;44:11,18;
45:1;47:11;48:7;49:14;
50:21;51:12;56:6,22;
57:7;58:11,12,13,19,
23,25;59:12,16
**understood (1)**
33:10
**underway (1)**

6:14
**undisputed (1)**
9:8
**unfreeze (1)**
5:9
**unfrozen (1)**
5:14
**uniform (1)**
48:22
**UNISON (1)**
59:18
**unless (10)**
22:2;25:20,21;26:1;
30:6;46:13;50:18,19;
55:15;57:14
**unlike (1)**
18:11
**unmute (1)**
8:1
**unnecessary (1)**
53:8
**up (16)**
7:25;8:14;9:1;14:9;
17:14;19:15;20:20;
24:8;31:5;37:3,4,10;
38:22;51:24;52:2;
53:18
**urge (1)**
46:19
**use (12)**
36:22;39:22,24;40:1,
21;42:18;43:19;48:14,
19,23;53:12;55:1
**used (4)**
10:15;22:1;48:13,16

**V**

**valid (6)**
13:6;15:16,20;23:20;
57:1,1
**valuable (2)**
38:22;47:23
**Varde (1)**
7:18
**version (2)**
37:5,11
**victim (1)**
30:20
**victims (6)**
33:4,9,14,17;47:21,
22
**video (4)**
5:3,4;20:17;30:16
**view (6)**
10:21;12:7;14:7;
18:12;51:11;52:21
**viewed (1)**
47:12
**voluntarily (1)**
36:23
**vote (1)**
33:5

**W**

**wait (2)**
24:15;33:20
**waited (2)**
18:14;45:8
**waive (1)**
51:9
**waived (1)**
14:11
**waiver (8)**
9:22;43:11,12;47:24;
51:8;52:14,15;54:2
**waiverture (1)**
50:25
**wants (2)**
22:6;49:3
**warmup (3)**
5:24;6:2,5
**way (17)**
6:15;10:2,23;11:19;
12:4;16:25;21:4,7;
26:12;30:22;35:5,16;
37:5;42:1;45:21;53:23;
55:18
**ways (5)**
31:20;35:2,8;43:17;
44:23
**wayside (1)**
53:8
**Webster (1)**
27:8
**weeds (2)**
33:20;34:20
**weeks (2)**
51:18;57:8
**Weil (6)**
7:8,10;21:5;25:1;
31:2;50:13
**weren't (1)**
9:21
**what's (6)**
26:7;29:9;41:2;48:3,
15;53:13
**whatsoever (1)**
46:24
**whereas (1)**
46:21
**Whereupon (1)**
59:22
**wherever (1)**
4:23
**whole (2)**
26:9;32:19
**wildfire (1)**
49:21
**willful (1)**
13:25
**willing (1)**
38:22
**willingly (1)**
14:1

**Wilmer (1)**
7:16
**win (4)**
14:17;32:16;40:2;
53:23
**wish (1)**
59:17
**within (12)**
10:20,24;14:12;
15:17;32:9,16;39:6,9;
44:20,22;51:19;53:5
**without (3)**
21:22;43:20;56:25
**Wofford (1)**
51:23
**wondered (1)**
45:4
**word (21)**
8:23,25;11:4;18:23;
26:25;27:7;28:11,12,
13;35:12;39:6,19;
41:11;43:19;44:4;
49:17;58:7,10,13,24;
59:7
**words (11)**
10:15;19:12,13;
24:24;25:15;31:8;
35:21;37:15;39:15;
53:14,22
**work (2)**
7:24;30:12
**worked (2)**
55:23;59:14
**working (4)**
7:24;17:13;49:6,9

**Y**

**years (4)**
18:14;51:20;57:7,9
**yields (1)**
35:17

**Z**

**zero (1)**
37:25

**1**

**1.180 (1)**
24:14
**10.8 (15)**
9:20;10:8,10;12:17;
14:12;32:16;34:25;
35:1,24,24;36:7;37:2;
42:23;43:24;53:24
**10.9 (5)**
15:4;18:7;19:6;20:3;
21:21
**10.9b (13)**
15:15,17;17:14;
18:19;20:23;22:16,19;

25:4,6;26:5,15;45:12;
56:3
**108 (3)**
22:18;24:14;26:6
**10b (2)**
15:17;53:18
**11 (8)**
26:9,11;34:4,16;
36:1;38:4;55:9,14
**11:23 (1)**
59:22
**1127 (5)**
31:15;45:3;48:20,20,
23
**1127b (5)**
48:7,9,13,17,20
**12 (1)**
41:19
**12b6 (1)**
32:18
**13 (3)**
4:1;18:21;41:19
**14 (1)**
38:4
**15 (5)**
37:4,24;38:4,6;41:12
**18 (2)**
38:6;42:11

**2**

**2 (2)**
23:7;43:20
**2.1 (15)**
12:13,17;18:1,18;
23:10;25:11;43:19,24;
44:2,21;46:15,20,24;
50:19;56:13
**2.8 (1)**
43:21
**20 (1)**
43:2
**2020 (1)**
4:1

**3**

**31 (1)**
24:14

**5**

**5 (1)**
12:13

**6**

**6 (1)**
43:5
**60b (20)**
9:23;48:2,3,10,13,15,
16,19,20,21,23;50:25;
52:16;53:1,5,8,12,19,

Case: 19-30088    Doc# 9307    Filed: 10/14/20    Entered: 10/14/20 16:36:02    Page 70
of 71

24;54:2

**7**

**7.2 (4)**
15:9;18:1,18;56:13

**8**

**85 (1)**
22:18
**86 (1)**
26:6

**9**

**9 (2)**
18:21;26:6

Case: 19-30088    Doc# 9307    Filed: 10/14/20    Entered: 10/14/20 16:36:02    Page 71
of 71