DOWNEY BRAND LLP
DAVID ALADJEM (Bar No. 152203)
JAMIE P. DREHER (Bar No. 209380)
PAUL GAUS (Bar No. 319979)
Email: daladjem@downeybrand.com
jdreher@downeybrand.com;
pgaus@downeybrand.com
621 Capitol Mall, 18th Floor
Sacramento, California 95814
Telephone: 916.444.1000
Facsimile: 916.444.2100

Attorneys for Mendocino County Inland Water
Agency & Power Commission

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E Corporation,<br><br>and<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>[X] Affects PG&E Corporation<br>[ ] Affects Pacific Gas and Electric Company<br>[X] Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088-DM, | Case No. 19-30088-DM<br><br>Chapter 11<br>Lead Case, Jointly Administered<br><br>**DECLARATION OF JANET K.F. PAULI IN SUPPORT OF MENDOCINO COUNTY INLAND WATER AGENCY & POWER COMMISSION'S OPPOSITION TO REORGANIZED DEBTORS' EIGHTH OMNIBUS OBJECTION (ECF NO. 8983)**<br><br>**Response Deadline:**<br>**October 15, 2020**<br>**4:00 P.M. (PST)**<br><br>**Hearing Information If Timely Response Made:**<br><br>Date: October 28, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Telephonic Appearances Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

I, JANET K.F. PAULI, declare:

1.     I am the Chair of the Mendocino County Inland Water & Power Commission

Case: 19-30088     Doc# 9309-1     Filed: 10/15/20     Entered: 10/15/20 15:48:05     Page 1 of 90

1662894v1

("Commission"). I submit this Declaration in support of *Mendocino County Inland Water Agency & Power Commission's Opposition to Reorganized Debtors' Eighth Omnibus Objection (No Liability Claims)* (ECF No. 8983).

2. The Commission is a joint powers authority formed in 1996 to serve as stewards of the Russian and Eel River Watersheds and to safeguard the water that plays a vital role in the region's economic development, environmental quality, and general well-being of those who use the water.

3. The members of the Commission consist of (1) the County of Mendocino; (2) City of Ukiah; (3) Redwood Valley County Water District; (4) Potter Valley Irrigation District; (5) and the Mendocino County Russian River Flood Control and Water Conservation Improvement District.

4. As Chair of the Commission, I am familiar with the Commission's day-to-day operations, business affairs, and books and records. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge and my review of relevant documents and information attached to this Declaration. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Commission.

5. Attached as Exhibit "A" is a true and correct copy of the Commission's Proof of Claim ("Claim") which I signed in my capacity as Chair of the Commission on October 18, 2019. The Commission, through counsel, filed the Claim on October 21, 2019

6. Attached as Exhibit "B" is a true and correct copy of the Addendum to the Commission's Proof of Claim, which the Commission attached to its filed Claim. I reviewed and approved this Addendum and it accurately reflects the Commission's basis for its Claim in the above captioned chapter 11 bankruptcy proceedings of PG&E Corporation ("PG&E Corp.") and Pacific Gas and Electric Company ("Utility") (collectively, the "Reorganized Debtors").

7. Attached as Exhibit "C" is a true and correct copy of the Utility's Notice of Withdrawal of Notice of Intent to File License Application and Pre-Application Document filed with the Federal Energy Regulatory Commission ("FERC") on January 25, 2019.

8. Attached as Exhibit "D" is a true and correct copy of the Notice of Intent for a New

1 | License for the Potter Valley Project submitted by (1) the Commission; (2) California Trout, Inc.;
2 | (3) the County of Humboldt; and (4) the Sonoma County Water Agency (collectively, the "NOI
3 | Parties") and dated June 28, 2019 and addressed to Kimberly D. Bose, as Secretary for FERC. I
4 | signed this document on behalf of the Commission.

5 |     9.    Attached as Exhibit "E" is a true and correct copy of the Notice of Continuation of
6 | Relicensing Proceeding issued by FERC on August 1, 2019 to the NOI Parties.

7 |     10.    Attached as Exhibit "F" is a true and correct copy of the Agreement between
8 | Pacific Gas and Electric Company and Potter Valley Irrigation District ("PVID") dated March 30,
9 | 1936 ("1936 Agreement").

10 |     11.    Attached as Exhibit "G" is a true and correct copy of the Second Amendment to the
11 | 1936 Agreement between Pacific Gas and Electric Company and PVID dated October 15, 2014.

12 |     12.    Attached as Exhibit "H" is a true and correct copy of the Resolution of the
13 | Mendocino County Board of Supervisors Regarding the Future of the Potter Valley Project dated
14 | August 21, 2018.

15 |     13.    Attached as Exhibit "I" is a true and correct copy of the Assignment Agreement
16 | between PVID and the Commission dated October 16, 2019. I signed the Assignment Agreement
17 | on behalf of the Commission.

18 |     Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true
19 | and correct to the best of my knowledge, information, and belief. Executed this 14th day of
20 | October, 2020 in _____, California.

21 |
22 |
23 |
24 | JANET K.F. PAULI
25 |
26 |
27 |
28 |

1662894v1

3

DOWNEY BRAND LLP

# EXHIBIT A

# United States Bankruptcy Court, Northern District of California

**RECEIVED**

**OCT 2 1 2019**

**PRIME CLERK LLC**

Fill in this information to identify the case (Select only one Debtor per claim form):

[X] PG&E Corporation (19-30088)

[ ] Pacific Gas and Electric Company (19-30089)

Official Form 410

|||||||||||||||||||||||||||||||||||
193008880024361

[ ] Date Stamped Copy Returned
[ ] No Self-Addressed Stamped Envelope
[X] No Copy Provided

## Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

### Part 1:   Identify the Claim

| | | |
|---|---|---|
| 1. **Who is the current creditor?** | Mendocino County Inland Water Agency and Power Commission | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |
| 2. **Has this claim been acquired from someone else?** | [✓] No<br>[ ] Yes. From whom? | |
| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent?<br><br>Mendocino County Inland Water Agency and Power Commission<br>c/o David Aladjem<br>Downey Brand LLP<br>621 Capitol Mall, 18th Floor<br>Sacramento, CA 95814 | Where should payments to the creditor be sent? (if different) |
| | Contact phone  916-520-5361 | Contact phone |
| | Contact email  daladjem@downeybrand com | Contact email |
| 4. **Does this claim amend one already filed?** | [✓] No<br>[ ] Yes.  Claim number on court claims registry (if known)_____ | Filed on _____<br> MM  / DD  / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | [✓] No<br>[ ] Yes. Who made the earlier filing? | |

Official Form 410

Proof of Claim

page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ _In excess of $100 million_ . Does this amount include interest or other charges?

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See Addendum

_____

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410                    Proof of Claim                    page 2

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☑ No

☐ Yes. *Check one:*

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)( ) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment

---

**Part 3:** **Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date __10/18/19__ (mm/dd/yyyy)

Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Janet K.F. Pauli | | |
| | First name | Middle name | Last name |
| Title | Chair | | |
| Company | Mendocino County Inland Water & Power Commission | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | P.O. Box 1247 | | |
| | Number      Street | | |
| | Ukiah, California 95482 | | |
| | City | State | ZIP Code |
| Contact phone | 707-391-7574 | Email | iwpc@mendoiwpc.com |

Case: 19-30088    Doc# 9309-1    Filed: 10/15/20    Entered: 10/15/20 15:48:05    Page 7 of 90

# EXHIBIT B

**Addendum to Claim by Mendocino County Inland Water & Power Commission
Against Pacific Gas & Electric Company
Potter Valley Project Relicensing**

**October 18, 2019**

*Project Background*

The Potter Valley Project (Project) consists of water diversion and hydroelectric facilities located in Mendocino County and Lake County. Scott Dam impounds headwaters to the Russian River, creating Lake Pillsbury, and also diverts water through the Potter Valley Powerhouse. Downstream of Scott Dam, Cape Horn Dam impounds waters of the Eel River and forms the Van Arsdale reservoir, which diverts water through a tunnel to the Potter Valley Powerhouse. Water then flows into the Russian River valley where it is delivered to Potter Valley, other locations in Mendocino County, and much of Sonoma County. Pacific Gas & Electric (PG&E)[*] acquired the Project in 1933 and maintains the diversion and hydroelectric facilities today. The Project also includes a series of twelve check dams and a number of bridges located along the Russian River between the Powerhouse and Lake Mendocino.

PG&E claims the following water rights for the operation of the Project:

1.  The right to directly divert up to 340 cubic feet per second from the Eel River to the Potter Valley Tunnel for both power and irrigation under claim of pre-1914 water right, as specified in Statement of Water Diversion and Use No. 1010, with a priority of 1905.

2.  The right to divert up to 4,500 acre feet to storage in Lake Pillsbury for irrigation in Potter Valley under Water Right license No. 1191 (Application 5661, priority date: 8/15/1927).

3.  The right to divert up to 4,908 acre feet to storage in Lake Pillsbury and to directly divert up to 40 cubic feet per second from the Eel River to the Potter Valley Tunnel, provided the combined amount of such diversion to storage and direct diversion does not exceed 4,908 acre feet, for irrigation in Potter Valley under Water Right License No. 5545 (Application 6594, priority date: 3/11/1930).

PG&E operates the hydroelectric facilities pursuant to a 50 year license from the Federal Energy Regulatory Commission (FERC) that expires on April 14, 2022.

*FERC Proceedings*

On April 6, 2017, PG&E filed a notice of intent (NOI) to relicense the Project and a pre-application document (PAD). On January 25, 2019, PG&E filed a notice of withdrawal of its NOI and PAD, indicating it was discontinuing its efforts to relicense the Project. The

---

[*]       For purposes of this Claim, Mendocino County Inland Water & Power Commission uses the term "PG&E" to refer interchangeably to both the PG&E Corporation and Pacific Gas & Electric Company. This Claim is intended to apply to both entities.

1586836.2

Case: 19-30088    Doc# 9309-1    Filed: 10/15/20    Entered: 10/15/20 15:48:05    Page 9 of 90

withdrawal became effective on February 11, 2019. A copy of PG&E's withdrawal notice is attached hereto as **Exhibit 1**. On March 1, 2019, FERC issued a Notice Soliciting Applications, establishing a deadline of 120 days from the date of the notice (i.e. July 1, 2019) for interested applicants, other than PG&E, to file NOIs, PADs, and requests to complete the pre-filing stages of the licensing process. A copy of the Notice Soliciting Applications is attached hereto as **Exhibit 2**.

On June 28, 2019 the Mendocino County Inland Water and Power Commission (MCIWPC), Sonoma County Water Agency, California Trout, Inc. and the County of Humboldt (NOI Parties) filed a NOI and PAD for the Project as required by the FERC July 1st deadline. A copy of the NOI is attached hereto as **Exhibit 3**. No other NOI/PAD documents were submitted to FERC by other entities interested in licensing the Project. FERC approved the submittal from the NOI partners on August 1, 2019 and designated the NOI Parties as non-federal representatives for purposes of consultation under the Endangered Species Act and National Historic Preservation Act. A copy of the August 1, 2019 notice is attached hereto as **Exhibit 4**. The NOI Parties propose to continue the Integrated Licensing Process initiated by PG&E. According to the proposed pre-filing process plan and schedule, the NOI Parties propose to complete a feasibility study in April 2020, consult on the need for additional studies and file a final license application by April 14, 2022. The cost of relicensing the Potter Valley Project is estimated to exceed $100 million, subject to further investigation and proof. These costs are included as part of this claim.

If the NOI Parties or a successor regional entity, do not successfully relicense the Potter Valley Project, then PG&E would be compelled to surrender the license and incur costs associated with the shut-down of the power plant and removal of facilities necessary to protect public safety, environmental quality and other aspects of the public interest. The cost of decommissioning could well exceed the $196.3 million estimated by PG&E. In its 2020 General Rate Case pending before the California Public Utilities Commission (CPUC), PG&E seeks authorization for rate recovery of the costs associated with surrendering its license for the Potter Valley Project and associated costs of decommissioning.

### *MCIWPC's Interests in the Project*

Through their involvement in the FERC licensing process, the NOI Parties have an interest in the Potter Valley Project facilities currently owned by PG&E and the ongoing operations of those facilities for water supply and power. Specifically, the NOI Parties have entered into a Planning Agreement on the assumption that FERC will issue a new license for the Project to continue hydroelectric generation for the period for the new license. As part of a feasibility study, the NOI Parties will develop plans that are focused on ensuring water supply reliability that will meet the needs of consumptive water user in both the Eel River and Russian River basins and will ensure the restoration of viable, anadromous fisheries in both river basins.

MCIWPC is a joint powers authority consisting of the County of Mendocino, City of Ukiah, Redwood Valley County Water District, Potter Valley Irrigation District and the Mendocino County Russian River Flood Control and Water Conservation Improvement District. Together the MCIWPC and its member districts share interests in water supply provided by the Potter Valley Project. For example, Potter Valley Irrigation District is party to an agreement with PG&E for the right to delivery of up to 19,000 acre feet of water to Potter Valley Irrigation

1586836 2

Case: 19-30088   Doc# 9309-1   Filed: 10/15/20   Entered: 10/15/20 15:48:05   Page 10
of 90

District at a rate not to exceed 50 cubic feet per second. A copy of the original contract dated March 30, 1936, together with its Second Amendment, is attached hereto as **Exhibit 5**. Section 2 of the Second Amendment provides that the Agreement remains in full force and effect until the later of expiration of the existing FERC license on April 14, 2022, the termination of any annual license issued after April 14, 2022 or the termination of the subsequent FERC license for the Potter Valley Project. In addition, section 5 of the Original Contract provides that PG&E "shall maintain the existing diversion works and water measuring facilities" and "at its own cost and expense replace, improve, or otherwise alter, said works and/or measuring facilities."

Similarly, on August 21, 2018, in Resolution 18-131, the Board of Supervisors of Mendocino County found *inter alia* that the water used as part of the Project was intended for use in Potter Valley and downstream within the Russian River watershed in Mendocino, Sonoma and Marin Counties, that the direct and indirect economic value of the water supply is estimated at $775 million annually within Mendocino County alone, that more than a half-million people benefit from this water supply, and that the Project "provides a critically important segment of our water supply infrastructure." A copy of Resolution No. 18-131 is attached hereto as **Exhibit 6**.

### *Claims Against PG&E*

1.      *Anticipatory Breach of Contract*

Potter Valley Irrigation District (PVID) has a claim against PG&E for anticipatory breach by its repudiation of the March 30, 1936 contract as extended by the Second Amendment. Under California law, anticipatory breach occurs when the contract is repudiated by the promisor before the promisor's performance under the contract is due. *Taylor v. Johnston*, 15 Cal. 3d 130, 137 (1975). By discontinuing its efforts to seek a new FERC license for the Potter Valley Project and making an irrevocable decision under the Federal Power Act that will have the post-petition effect of terminating PG&E's operations of the Project, PG&E has repudiated its promise to deliver water to PVID through the term of any annual license issued after April 14, 2022 or through a subsequent FERC license for the Potter Valley Project. PVID has assigned its claim for damages to MCIWPC; a copy of the assignment is attached hereto as **Exhibit 7**. MCIWPC, as the assignee of PVID, is entitled to damages resulting from PG&E's repudiation and anticipatory breach of the March 30, 1936 contract. MCIWPC estimates that these damages exceed $100 million for the life of a new license from FERC.

Alternatively, MCIWPC would accept a stipulation with PG&E, or order of this Court, providing that PG&E would make an appropriate filing before the CPUC in the 2020 General Rate Case requesting authorization for rate recovery of such costs associated with relicensing the Potter Valley Project and pay over such funds to the NOI Parties or successor regional entity. Any such authorization from the CPUC would be subject to this Court's continuing jurisdiction pursuant to the April 19, 2019 "Order Authorizing Debtors to Sell, Transfer, Lease or Otherwise Encumber Real Property" (Docket No. 1676).

In either case, because of PG&E's repudiation of the agreement with PVID, MCIWPC (along with the other NOI Parties) is now in a position of incurring the costs of relicensing the Project, which as noted above are estimated to exceed $100 million. Those costs are included in this claim, together with the costs associated with foregone water.

2.  *Waste*

MCIWPC is informed and believes that PG&E is well aware that there has been a substantial deposition of sediment behind Scott Dam (and also behind Cape Horn Dam). Such sediments are potentially contaminated with mercury and other toxic materials that may be in concentrations that constitute contaminated soils under state and federal law. PG&E has failed-due to the potential costs of mitigation and liability- to determine if the sediments behind the dams have toxic sediments that may impact all existing downstream uses of the impounded water with continued operation of the Project. In addition, MCIWPC is informed and believes that PG&E has minimized necessary operations and maintenance practices for the Project with the goal of reducing costs at the expense of the long-term viability of the Project As an example, without limitation, PG&E has failed to provide any maintenance to the check dams downstream of the Powerhouse for at least ten years.

Under California law, PG&E is under a duty to preserve and protect the property against waste for the reasonable expectations of another's interests in the property. *See Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 597–598; *Old Republic Ins. Co. v. Superior Court*, (1998) 66 Cal. App. 4th 128, 149 (disapproved on other grounds in *Vandenberg v. Superior Court* (1999) 21 Cal. 4th 815, 838 n. 12). MCIWPC, its successors and assignees, hold a claim against PG&E for damages arising out of its tortious waste of the Potter Valley Project facilities. MCIWPC and its member agencies, not to mention Sonoma County Water Agency and its member agencies, have had a reasonable expectation that PG&E would properly maintain the Project facilities so as to enable those facilities to continue to provide water deliveries to Mendocino and Sonoma Counties. Those interests have been reinforced by FERC's determination that the NOI Parties are the proper potential successor s in interest to PG&E for the operation of the Project.

3.  *Other Claims*

MCIWPC and the other NOI Parties reserve the right to bring other claims or to use other legal theories that fall within the common nucleus of operative facts alleged above. The value of the claims described herein, including all damages and claims for attorney fees and costs, are subject to further investigation and proof at trial and/or estimation.

MCIWPC understands that Sonoma County Water Agency (Sonoma Water) is also filing claims related to the Potter Valley Project. MCIWPC respectfully requests a coordinated approach to these claims and, to the extent appropriate, joins in the claims made by Sonoma Water.

### *Reservation of Rights*

1.  Out of abundance of caution and due to the difficulty in some instances of identifying the debtor against which MCIWPC has a particular claim or the debtor making the decision resulting in a particular claim, and due to the possibility that the debtors are alter egos, MCIWPC files this claim in both the PG&E Corporation and Pacific Gas and Electric Company chapter 11 cases.

2.  If the debtors decide to reject any contracts described in this Addendum, MCIWPC will amend this Proof of Claim to include damages resulting from those rejections.

15868362

3.      PG&E caused a Public Safety Power Shutoff (PSPS Outage) within Mendocino County on the following dates: October 9-11,2019.  As a direct and proximate result of this PSPS Outage, MCIWPC and/or its member agencies were damaged in the following ways in presently undetermined amounts:  increased costs from workers' compensation claims and overtime, and from increased use of and need for law enforcement, emergency response personnel, and other public safety services, increased costs as a result of the need to use backup power generation or to have to plan for and obtain, either immediately or in the future, backup power generation equipment and facilities to protect against the results of PSPS Outages.  MCIWPC also believes that it and/or its member agencies have been damaged in other ways not presently known or identifiable as a result of these PSPS Outages and MCIWPC will amend this Proof of Claim when these further damages are identified.  PG&E Electric Rule 14 indicates that Pacific Gas and Electric Company will not have liability for PSPS Outages unless it fails to "exercise reasonable diligence." To the extent that any PSPS Outage was caused by one or both Debtors and was not in the exercise of reasonable diligence in whole or in part, MCIWPC and/or its member agencies have a claim against any such debtor for damages of the kind described above.  It is further possible that PSPS Outages will be caused by one or both Debtors in the future and during the course of this chapter 11 case causing damage of the kinds described above and MCIWPC and/or its member agencies reserve the right to amend this claim to add damages resulting from any such PSPS Outage.

4.      To the extent that there is no specific amount stated for any asserted claim, liability or obligation set forth in this proof of claim, the amount of such claim, liability or obligation is presently unknown. This proof of claim will be amended when any such amount becomes known.

5.      This proof of claim summarizes MCIWPC's claims against the PG&E but does not describe them in full detail and is based on information currently available to MCIWPC. MCIWPC reserves the right to amend, supplement and/or modify the proof of claim, including with respect to the amounts, obligations, duties and/or indebtedness due MCIWPC, to assert additional claims, whether legal or equitable, and to provide additional documentation or evidence.

6.      MCIWPC does not, by filing this Proof of Claim, waive of any of its rights: (i) to have final orders in core and non-core matters entered only after de novo review by a District Judge; (ii) to have any final order entered by, or other exercise of the judicial power of the United States performed by, an Article III court; (iii) to trial by jury in any proceeding so triable in these cases, or any controversy or proceeding related to these cases; (iv) to relief from the CPUC, FERC, or any other regulatory or governmental authority which MCIWPC has or may have under applicable law, (v) to have the reference withdrawn by the District Court in any matter subject to mandatory or discretionary withdrawal; or (vi) to assert any other rights, claims, actions, defenses, setoffs or recoupments to which the MCIWPC is or may be entitled, in law or in equity, all of which rights, claims, actions, defenses, setoffs and recoupments the MCIWPC expressly reserves.

7.      Nothing herein nor in any other pleading or paper filed by or for MCIWPC is a waiver (or a basis for estoppel, impairment, or other adverse effect) of the right or ability of MCIWPC

1586836 2

to demand or require alternative dispute resolution, mediation, regulatory or similar process which it has or may have available under applicable agreements, law or otherwise. Nothing erein nor in any other pleading or paper filed by MCIWPC shall limit, estop, adversely effect, or impair any right, remedy, claim or interest, whether legal or equitable of MCIWPC against any person or entity, or with respect to any property or conduct.

8.     MCIWPC does not, by filing this Proof of Claim, waive, and specifically preserves, any procedural andlor substantive and/or regulatory defenses to any claim that may be asserted against MCIWPC by or for PG&E, by or for any trustee of the debtor's estate, or by any official committee appointed in this case, or by or for any other party, person, entity or group. The filing of this Proof of Claim shall not constitute an election of remedies or choice of law, or a waiver (or other basis for estoppel, impairment, or other adverse effect) of any of MCIWPC's rights, remedies or claims. Nothing contained in this proof of claim shall limit any right of MCIWPC to commence or continue any proceeding or take any action to the extent permitted by the Bankruptcy Code, applicable nonbankruptcy law or regulations, or order of a court or regulator of competent jurisdiction.

9.     MCIWPC submits this proof of claim to assert and preserve any and all claims, interests, remedies, or powers it has or may have against the Debtors, whether known or unknown, whether in contract or tort, or law or equity, or whether under federal or state law. Without limiting any of the foregoing, MCIWPC reserves any and all prepetition claims and post-petition administrative expense rights or post-petition claims it has or may have with respect to matters not in its fair contemplation at the time of filing this proof of claim.

# EXHIBIT C

# UNITED STATES OF AMERICA
# BEFORE THE
# FEDERAL ENERGY REGULATORY COMMISSION

| | | |
|---|---|---|
| **Pacific Gas and Electric Company** | ) | **Project No. 77** |
| | ) | **(Potter Valley)** |

## NOTICE OF WITHDRAWAL OF NOTICE OF INTENT TO FILE LICENSE APPLICATION AND PRE-APPLICATION DOCUMENT

On April 6, 2017, pursuant to 18 C.F.R. §§ 5.5 and 5.6, Pacific Gas and Electric Company ("PG&E"), filed with the Federal Energy Regulatory Commission ("Commission") notice of its intent to file an application for a new license ("NOI") for the Potter Valley Hydroelectric Project No. 77 ("Project" or "Potter Valley") and a Pre-Application Document ("PAD"). The Project license expires on April 14, 2022, requiring PG&E to submit its Final License Application ("Application") on or before April 14, 2020. PG&E is hereby withdrawing its NOI and PAD, and discontinuing the Integrated Licensing Process initiated to prepare a license application. PG&E is also terminating its efforts to transfer and sell the Project.

PG&E would like to thank the Commission Staff and all participating stakeholders for their time and efforts on the relicensing process and those who have participated in PG&E's Request for Offers to acquire the Project. After extensive deliberation, PG&E has determined that it would be contrary to the interests of its electric ratepayers to continue relicensing the Potter Valley project. Hence, PG&E is discontinuing its efforts to seek a new Project license.

Potter Valley has long been recognized by PG&E as uneconomic for PG&E's ratepayers (i.e., the cost of production exceeding the cost of alternative sources of renewable power on the

open market). Regrettably, continued declining energy markets, potential increased costs associated with anticipated new license conditions, and challenging financial circumstances have caused PG&E to conclude that it cannot justify further expenditures to its ratepayers associated with the Project.

PG&E anticipates the Commission will institute its "orphan project" process codified as 18 C.F.R. § 16.25 to solicit license applications for Potter Valley from other entities. PG&E supports such action and understands that it would be responsible for surrendering the existing Potter Valley license if no other entity seeks and obtains a new license for the Project.

PG&E recognizes the value of Potter Valley to local communities because it provides for protection of important environmental resources, consumptive water uses, public recreation, and other economic values. Accordingly, PG&E is committed to working with stakeholders to ensure these values are appropriately considered if PG&E is required to file a surrender application.

DATED: January 25, 2019

Respectfully submitted,

**PACIFIC GAS AND ELECTRIC COMPANY**

By: _____
**ANNETTE FARAGLIA**

Chief Counsel, Hydro Generation
Pacific Gas and Electric Company
Law Department
77 Beale Street, B30A-3005
San Francisco, CA 94105
Telephone:    (415) 973-7145
Facsimile:    (415) 973-5520
E-Mail:    annette.faraglia@pge.com

# EXHIBIT D

   

June 28, 2019

Ms. Kimberly D. Bose
Secretary
Federal Energy Regulatory Commission
888 First Street, NE
Washington, DC 20426

> **Re:** **FERC Project No. 77; Pre-Application Document and Notice of Intent to File an Application for a New License for the Potter Valley Project**

Dear Secretary Bose:

Pursuant to 18 C.F.R. § 5.5 (2018) and the Federal Energy Regulatory Commission's (FERC or Commission) March 1, 2019 "Notice Soliciting Applications" (Notice),[1] Mendocino County Inland Water and Power Commission (Mendocino County IWPC), Sonoma County Water Agency (Sonoma Water), California Trout, Inc. (Cal Trout), and the County of Humboldt, California (together, NOI Parties) hereby file a Notice of Intent (NOI) to file an application for new license for the Potter Valley Project, FERC Project No. 77 (Project). As further discussed below, NOI Parties file this NOI as proxies for a new Regional Entity that will be the license applicant for the Project, as may be proposed to be modified to achieve the shared objectives described below.

## I. BACKGROUND

The Project is located on the Eel River and the East Branch Russian River in Mendocino and Lake Counties, California. The Project is approximately 15 miles northeast of the City of Ukiah. Project features include Lake Pillsbury, a 2,300-acre storage reservoir impounded by Scott Dam; the 106-acre Van Arsdale Reservoir, impounded by the Cape Horn Diversion Dam; and a tunnel and penstock across a natural divide to the Project's powerhouse located in the headwaters of the Russian River Basin. The Project stores winter runoff from the upper Eel River Basin and annually diverts an average of approximately 60,000 acre-feet of Eel River water into the Russian River to

---

[1] Notice Soliciting Applications, Project No. 77-285 (issued Mar. 1, 2019) (Notice).

Case: 19-30088   Doc# 9309-1   Filed: 10/15/20   Entered: 10/15/20 15:48:05   Page 19 of 90

generate hydroelectric power. The authorized capacity of the Project under the current license is 9.9 megawatts (MW).[2]

The Project is licensed to Pacific Gas and Electric Company (PG&E). The license expires on April 14, 2022.[3] On April 6, 2017, PG&E filed a Pre-Application Document (PAD) and NOI to formally initiate the relicensing process for the Project. On January 25, 2019, PG&E withdrew its NOI and PAD and formally discontinued its efforts to relicense the Project. On January 29, 2019, PG&E filed a petition for reorganization under Chapter 11 of the U.S. Bankruptcy Code. On March 1, 2019, the Commission issued the Notice soliciting interested potential applicants other than PG&E to file an NOI and PAD and request to complete the pre-filing stages of the licensing process.

At the request of several interested entities, U.S. Representative Jared Huffman has convened stakeholders in a Potter Valley Project Ad Hoc Committee to enable dialogue among stakeholders to develop recommendations on the terms of any new license for the Project. The Ad Hoc Committee is comprised of over 25 federal and state resource agencies, licensees, local counties, tribes, and environmental organizations.[4] The Ad Hoc Committee has formed two technical working groups to examine fish passage alternatives at the site of Scott Dam and water supply conditions under various operations alternatives. The working groups are in the final stages of developing information and recommendations for viable solutions to these issues. Members of the Ad Hoc Committee are committed to reaching a "Two-Basin Solution" with co-equal goals of improving fish passage and habitat on the Eel River sufficient to support recovery of naturally reproducing, self-sustaining and harvestable native anadromous fish populations including migratory access upstream and downstream at current project dam locations and minimizing or avoiding adverse impacts to water supply reliability, fisheries, water quality, and recreation in the Russian River and Eel River basins.[5]

Prompted by the collaborative discussions and progress of Congressman Huffman's Ad Hoc Committee, on May 14, 2019, NOI Parties entered into a planning agreement (Planning Agreement) to explore pathways to obtain a new license for the Project. The Planning Agreement was later amended.[6] The Planning Agreement contains a set of principles (Shared Objectives) ensuring that any new license application

---

[2]   *Pac. Gas & Elec. Co.*, 71 FERC ¶ 62,082 (1995).

[3]   *Pac. Gas & Elec. Co.*, 25 FERC ¶ 61,010 (1983).

[4]   Ad Hoc Committee participants include:  California Department of Fish and Wildlife, Cal Trout, City of Ukiah, Congressman Jared Huffman's Office, Coyote Valley Band of Pomo Indians, Friends of the Eel River, Humboldt County, Lake County, Mendocino County, National Marine Fisheries Service, Pacific Coast Federation of Fishermen's Association, PG&E, Potter Valley Irrigation District, Round Valley Indian Tribes, Russian Riverkeeper, Sonoma County, Sonoma Water, California State Water Resources Control Board, Trout Unlimited, U.S. Fish and Wildlife Service, U.S. Forest Service, and the Wiyot Tribe.

[5]   *See* Potter Valley Project, Overview, http://pottervalleyproject.org/overview/ (last visited June 24, 2019).

[6]   A copy of the amended Planning Agreement is attached as Appendix A.

Case: 19-30088    Doc# 9309-1    Filed: 10/15/20    Entered: 10/15/20 15:48:05    Page 20 of 90

for the Project will advance the mutual goals of the "Two-Basin Solution," including: (1) minimizing or avoiding adverse impacts to water supply reliability, fisheries, water quality, and recreation in both basins; (2) improving fish passage and habitat on the Eel River sufficient to support recovery of native anadromous fish populations, including passage at existing dam locations; (3) reliance on best available science and engineering analyses to evaluate options for restoration, water delivery, and hydroelectric generation under a new license; (4) collaboration on funding; (5) active participation of tribes and other stakeholders supportive of the Shared Objectives; (6) economic welfare of both basins; (7) continued hydroelectric generation; and (8) protecting tribal cultural, economic, and other interests in both basins.

Under the Planning Agreement, the NOI Parties will work together to prepare a Feasibility Study (Feasibility Study) for the Project that will promote the Shared Objectives. The parties will complete the Feasibility Study by April 14, 2020. The Feasibility Study will evaluate options and make recommendations, including: (1) a description of the Regional Entity that will be formed and will apply for the new license; (2) a Project plan showing capital modifications, as well as operations and maintenance requirements, for the continued delivery of water and generation of hydroelectric power; (3) a fisheries restoration plan with measures to be implemented under the new license; (4) a proposed study plan detailing additional studies necessary to develop a new license application; and (5) a financial plan, including the specific sources of initial funding and subsequent revenues to fund the licensing, capital improvements, and operations and maintenance of the Project under a new license.

Further, it is important to note that the NOI Parties have entered into the Planning Agreement on the assumption that FERC will issue a new license for the Project to continue hydroelectric generation for the period of the new license. As part of the Feasibility Study, as noted above, the NOI Parties will develop plans that are focused on ensuring water supply reliability that will meet the needs of consumptive water users in both basins and will ensure the restoration of viable, anadromous fisheries in both river basins.

In sum, the NOI Parties will develop a Project plan. The parties anticipate that the plan will modernize the Project to meet the region's needs for power generation, water supplies and environmental restoration.

## II. NOTICE OF INTENT

The following information is provided consistent with the requirements of 18 C.F.R. § 5.5:

**Licensee's Name and Address**:

As described above, the Regional Entity, which will be the licensee for the Project, has not been formed under California law. NOI Parties file this NOI as a proxy for the new Regional Entity. Contact information for these proxy entities appears below:

**For Mendocino County IWPC:**

Janet Pauli
Chair
Mendocino County Inland Water
  & Power Commission
P.O. Box 1247
Ukiah, CA 95482
(707) 743-1173

David Aladjem
Downey Brand LLP
621 Capitol Mall
18th Floor
Sacramento, CA 95814
(916) 520-5361


**For Sonoma Water:**

Grant Davis
General Manager
Sonoma County Water Agency
404 Aviation Boulevard
Santa Rosa, CA 95403
(707) 547-1900

Michael A. Swiger
Van Ness Feldman, LLP
1050 Thomas Jefferson St., NW
7th Floor
Washington, DC 20007
(202) 298-1891


**For Cal Trout:**

Curtis Knight
Executive Director
California Trout
360 Pine Street, 4th Floor
San Francisco, CA 94104
(415) 392-8887

Erik Swenson
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, NW
Washington, DC 20005-1706
(202) 339-8494


**For Humboldt County:**

Hank Seemann
Deputy Director – Environmental Services
Humboldt County Public Works
Department
1106 Second Street
Eureka, CA 95501
(707) 268-2680

Scott Miles
Humboldt County Counsel
825 5th Street
Eureka, CA 95501-1107
(707) 445-7236

**Project Number:**

The FERC Project Number is 77.

**License Expiration Date:**

The current Project license expires on April 14, 2022.

**Unequivocal Statement of Interest:**

NOI Parties, as proxies for the new Regional Entity they will undertake to form, represent that the Regional Entity, once formed, will have an unequivocal intent to file an application for a new license for the Project, utilizing the Commission's Integrated Licensing Process (ILP).[7]

**Type of Principal Project Works to Be Licensed:**

The Project consists of: (a) the Potter Valley Powerhouse and a series of tunnels, conduits, and penstocks; (b) Scott Dam and the storage reservoir it impounds, Lake Pillsbury; and (c) Cape Horn Dam and the reservoir it impounds, Van Arsdale Reservoir. The NOI Parties anticipate that the new license application will propose modifying the Project (including works and operations) as appropriate to achieve the Shared Objectives. Through the Feasibility Study, NOI Parties will evaluate a wide range of options for Project facilities, including additions, modifications, and/or removal to achieve fish passage as appropriate for restoration of native anadromous fisheries in the Eel River Basin.

**Location of the Project:**

The Project is located on the Eel River and the East Branch Russian River in Mendocino and Lake Counties in California. The Project is located approximately 15 miles northeast of the City of Ukiah. The majority of the Project is located on lands currently owned by PG&E and on National Forest System Lands administered by the United States Forest Service, Mendocino National Forest. The uppermost portion of the Project includes Scott Dam and the storage reservoir it impounds (Lake Pillsbury) on the Eel River. Below Scott Dam, the Eel River flows approximately 12 miles to Van Arsdale Reservoir created by Cape Horn Dam. Cape Horn Dam has fish passage facilities enabling salmon, steelhead, and lamprey to access the Eel River and tributary streams between Cape Horn and Scott Dams. There are no fish passage facilities at Scott Dam. At Van Arsdale Reservoir, the water that is diverted to the Potter Valley Powerhouse is conveyed south by a series of tunnels, conduits, and penstocks while water remaining in the Eel River is released from—or spills over—the Cape Horn Dam where it flows northwest approximately 150 miles to the Pacific Ocean. Releases made at the Scott and

---

[7] Because this notice does not constitute an "application," it is not a conditional application proscribed by 18 C.F.R. § 4.32(j).

Case: 19-30088    Doc# 9309-1    Filed: 10/15/20    Entered: 10/15/20 15:48:05    Page 23 of 90

Cape Horn Dams support salmon and steelhead populations in the Upper Eel River Watershed.

The Potter Valley Powerhouse is located in the Upper Russian River Watershed, and releases from the Powerhouse are a significant source of water in the East Branch Russian River. The East Branch Russian River flows south from the Potter Valley Powerhouse (approximately 11 miles and is impounded by the U.S. Army Corps of Engineers' (USACE) Coyote Dam to form Lake Mendocino. Lake Mendocino is operated and managed by the USACE for the purposes of flood control and water supply in coordination with Sonoma Water and the Mendocino County Russian River Flood Control and Water Conservation Improvement District. Water exiting Lake Mendocino is used in Mendocino and Sonoma Counties for irrigation, municipal and domestic water supply, recreation, and support of salmon and steelhead populations in the Russian River. Water leaving Lake Mendocino joins with the mainstem Russian River and flows approximately 96 miles to the Pacific Ocean near the town of Jenner.

**Installed Plant Capacity:**

The Project has an installed capacity of 9.9 MW.[8] Under a new license application, the Project is expected to utilize the existing installed capacity.

**Names and Mailing Address of Entities Listed in 18 C.F.R. § 5.5(b)(8):**

A. **Every county in which any part of the project is located, and in which any Federal facility that is used or to be used by the project is located:**

The Project is located in Mendocino and Lake Counties, California  No Federal facility is used or is proposed to be used by the Project.

Mendocino County
501 Low Gap Road
Ukiah, CA 95482

Lake County
255 North Forbes Street
Lakeport, CA 95453

B. **Every city, town, or similar political subdivision in which any part of the project is located and in which any Federal facility that is used by the project or is to be used by the project is located:**

None.

---

[8]    *Pac. Gas & Elec. Co.*, 71 FERC ¶ 62,082.

Case: 19-30088   Doc# 9309-1   Filed: 10/15/20   Entered: 10/15/20 15:48:05   Page 24 of 90

C. **Every city, town, or similar political subdivision that has a population of 5,000 or more people and is located within 15 miles of the existing or proposed project dams:**

City of Ukiah
300 Seminary Avenue
Ukiah, CA 95482

D. **Every irrigation district, drainage district, or similar special purpose political subdivision in which any part of the project is located, and any federal facility that is used or to be used by the project is located:**

A portion of the Potter Valley Powerhouse Discharge Canal is located within the Potter Valley Irrigation District boundary. No federal facility is used or is proposed to be used by the Project.

Potter Valley Irrigation District
P.O. Box 186
Potter Valley, CA 95469

E. **Every irrigation district, drainage district, or similar special purpose political subdivision that owns, operates, maintains, or uses any project facility or any federal facility that is or is proposed to be used by the project:**

None.

F. **Every other political subdivision in the general area of the project that there is reason to believe would likely be interested in, or affected by, this notification:**

City of Cloverdale
124 N. Cloverdale Blvd.
Cloverdale, CA 95425

City of Eureka
531 K St
Eureka, CA 95501

City of Ferndale
PO Box 1095
Ferndale CA, 95536

City of Fortuna
621 11th St
Fortuna, CA 95540

7

City of Healdsburg
401 Grove Street
Healdsburg, CA 95448

City of Petaluma
11 English Street
Petaluma, CA 94952

City of Rio Dell
675 Wildwood Avenue
Rio Dell, CA 95562

City of Rohnert Park
130 Avram Avenue
Rohnert Park, CA 94928-1180

City of Santa Rosa
100 Santa Rosa Avenue
Santa Rosa, CA 95404

City of Santa Rosa Water
69 Stony Circle
Santa Rosa, CA 95401

City of Sonoma
No. 1 The Plaza
Sonoma, CA 95476

City of Ukiah
300 Seminary Avenue
Ukiah, CA 95482

Geyserville Water Works
P.O. Box 65
Geyserville, CA 95441

Humboldt Bay Harbor District
P.O. Box 1030
Eureka, CA 95502-1030

Lake County Administrative Officer
255 North Forbes St.
Lakeport, CA 95453

Mendocino County Board of Supervisors
501 Low Gap Road, Room 1090
Ukiah, CA 95482

8

Mendocino County Russian River Flood
  Control and Water Conservation
  Improvement District
151 Laws Avenue, Suite D
Ukiah, CA 95482

Mendocino County Water Agency
501 Low Gap Road, Room 1090
Ukiah, CA 95482

Redwood Valley County Water District
151 Laws Ave
Ukiah, CA 95482

Scotia Community Services District
400 Church Street
Scotia CA, 95565

Sonoma County
575 Administration Drive
Suite 104A
Santa Rosa, CA 95403

Town of Scotia
P.O. Box 245
Scotia, CA 95565

Town of Windsor
9291 Old Redwood Highway
Windsor, CA 95492

Valley of the Moon Water District
19039 Bay Street
Sonoma, CA 95476

G.  **Affected Indian Tribes:**

The following tribal contacts are believed to potentially have an interest in the Project:

| Bear River Band of the Rohnerville Rancheria<br>266 Keisner Road<br>Loleta, CA 95551 | Big Valley Rancheria of Pomo Indians<br>2726 Mission Rancheria<br>Lakeport, CA 95445 |
| --- | --- |
| Blue Lake Rancheria<br>P.O. Box 428<br>Blue Lake, CA 95525 | Cahto Tribe<br>300 Cahto Drive<br>Laytonville, CA 95454 |

9

| | |
|---|---|
| Cloverdale Rancheria of Pomo Indians<br>555 South Cloverdale Boulevard, Suite A<br>Cloverdale, CA 95425 | Coyote Valley Band of Pomo Indians<br>P.O. Box 39<br>Redwood Valley, CA 95470-0039 |
| Dry Creek Rancheria Band of Pomo<br>Indians<br>P.O. Box 607<br>Geyserville, CA 95441 | Elem Indian Colony of Pomo Indians<br>P.O. Box 757<br>Lower lake, CA 95457 |
| Federated Indians of Graton Rancheria<br>6400 Redwood Drive, Suite 300<br>Rohnert Park, CA 94928 | Guidiville Band of Pomo Indians<br>P.O. Box 339<br>Talmage, CA 95481 |
| Habematolel Pomo of Upper Lake<br>P.O. Box 516<br>Upper Lake, CA 95485 | Hopland Band of Pomo Indians<br>3000 Shanel Rd.<br>Hopland, CA 95449 |
| Inter-Tribal Sinkyone Wilderness Council<br>P.O. Box 1523<br>Ukiah, CA 95482 | Kashia Band of Pomo Indians of the<br>Stewart's Point Rancheria<br>420 Guerneville Road – Suite 1<br>Santa Rose, CA 95403 |
| Laytonville Rancheria<br>P.O. Box 1239<br>Laytonville, CA 95454 | Lower Lake Rancheria<br>P.O. Box 3162<br>Santa Rosa, CA 95402 |
| Lytton Rancheria<br>P.O. Box 1289<br>Windsor, CA 95492 | Manchester-Point Arena Rancheria<br>P.O. Box 623<br>Point Arena, CA 95468 |
| Middletown Rancheria<br>P.O. Box 1035<br>Middletown, CA 95461 | Mishewal-Wappo of Alexander Valley<br>P.O. Box 1086<br>Santa Rosa, CA 95402 |
| Noyo River Indian Community<br>P.O. Box 91<br>Fort Bragg, CA 95437 | Pinoleville Pomo Nation<br>500 B Pinoleville Drive<br>Ukiah, CA 95482 |
| Potter Valley Tribe<br>2251 South State Street<br>Ukiah, CA 95482 | Redwood Valley Rancheria of Pomo Indians<br>P.O. Box 969<br>Ukiah, CA 95482 |
| Robinson Rancheria of Pomo Indians<br>S/B P.O. Box 428<br>Nice, CA 95464 | Round Valley Indian Tribes<br>77826 Covelo Road<br>Covelo, CA 95428 |

| Scotts Valley Band of Pomo<br>1005 Parallel Drive<br>Lakeport, CA 95453 | Shebelna Band of Mendocino Coast Pomo Indians<br>19101 Olsen Lane<br>Fort Bragg, CA 95437 |
|---|---|
| Sherwood Valley Rancheria Band of Pomo Indians<br>190 Sherwood Hill Drive<br>Willits, CA 95490 | Wailaki Tribe<br>P.O. Box 684<br>Laytonville, CA 95454 |
| Wiyot Tribe<br>1000 Wiyot Drive<br>Loleta, CA 95525 | Yokayo Tribe<br>1227 Yokayo Tribe Ranch Rd<br>Talmage, CA 95481 |
| Yuki/Wailaki Tribe<br>P.O. Box 684<br>Laytonville, CA 95454 | |

## III.   PRE-APPLICATION DOCUMENT AND INTEGRATED LICENSING PROCESS

Given the short period of time for potential applicants to file an NOI and PAD under the Commission's March 1, 2019 Notice Soliciting Applications, NOI Parties hereby incorporate by reference the public version of the PAD filed by PG&E in this docket on April 6, 2017.[9]  All of the general information on the Project contained in PG&E's PAD remains the same.  In addition, participants in Congressman Huffman's Ad Hoc Committee have conducted several studies relevant to the Project that supplement PG&E's April 2017 PAD.  Information about these studies is available on the Ad Hoc Committee's website.[10]

Consistent with the Commission's March 1 Notice, NOI Parties propose to use the ILP.  The NOI Parties are in discussion with PG&E regarding access to PG&E's study data.  PG&E has provided a spreadsheet demonstrating the status of each of the studies, which is attached as Appendix B.  However, NOI Parties intend to explore physical and operational modifications to the Project that likely will require additional studies in support of a license application.  A preliminary list of potential studies would include:

> ➢ Collection and analytical analysis of sediment samples collected from Lake Pillsbury and Van Arsdale Reservoir ("California State Coastal Conservancy Eel River Sediment Studies and Evaluation");

---

[9]   *See* Notice of Intent to File Application for New License and Pre-Application Document, Project No. 77-285 (filed Apr. 6, 2017) (public and privileged versions filed).

[10]   *See* Potter Valley Project, Meetings, http://pottervalleyproject.org/meetings/ (last visited June 24, 2019).

11

➢ Evaluation of the manner in which such sediment could be managed in place or disposed; and

➢ Development of a sediment transport model of the Eel River from Lake Pillsbury to the confluence with the Middle Fork at Dos Rios.

NOI Parties also provide a revised process plan and schedule in Appendix C hereto. The last major milestone in PG&E's relicensing process was the issuance of a Study Plan Determination.[11] NOI Parties do not propose to duplicate steps in the pre-filing process already completed, specifically: filing of a new PAD and comments on the PAD, public environmental scoping, development of a proposed and revised study plan, or Commission study plan determination. Thus, these steps are not included in the revised process plan and schedule.

Under the revised process plan and schedule, after the NOI Parties complete the Feasibility Study in April 2020, they will file a report within 30 days describing the proposed Project to be studied. The NOI Parties have included in the schedule an opportunity for public comment on any modifications to PG&E's approved Study Plan, including additional studies, participants believe are necessary to assess the impacts of the new proposed Project. This would also be an opportunity for FERC, if it so desires, to offer study recommendations and to issue a Scoping Document 3, as appropriate. The NOI Parties will consider these comments in developing proposed revisions to PG&E's approved Study Plan. The NOI Parties will then file an Initial Study Report in September 2020 that will describe any study modifications or additional studies the NOI Parties deem necessary to develop a license application. After the Commission resolves any disagreements with the Initial Study Report, the NOI Parties will conduct studies beginning in January 2021, and file an Updated Study Report in September 2021. The Regional Entity will file a license application on or before April 14, 2022. Commencing with the filing of the license application, the post-filing process will be implemented in the normal course with opportunities for stakeholders to participate and comment on the Project proposal.

**NOI Parties request the Commission to approve the attached revised process plan and schedule within 30 days of this filing, in its Notice of Commencement of Proceeding.**

## IV.    REQUEST FOR WAIVERS

NOI Parties file this NOI as proxies for the new Regional Entity that will be the license applicant for the Project. It is likely that state legislation will be necessary to form the Regional Entity. Thus, the Regional Entity cannot be formed in time to file this NOI. As a result of negotiations in Congressman Huffman's Ad Hoc Committee and elsewhere, and because stakeholders envision a Two-Basin Solution that preserves

---

[11]   Study Plan Determination for the Potter Valley Project, Project No. 77-285 (issued Feb. 15, 2018).

hydroelectric generation at the Project, rather than decommissioning, NOI Parties agreed to file this NOI on behalf of the new Regional Entity that will file the license application.

The NOI Parties believe that current circumstances are analogous to an orphaned project scenario, except that PG&E has merely withdrawn its NOI and expressly indicated its intention not to timely file an application for new license for the Project, rather than actually missing the application deadline. In light of these facts, the NOI Parties request the Commission to employ a process that aligns as far as practicable with the process envisioned by Section 16.25 of the Commission's regulations[12] and to grant such waivers as are needed to facilitate this process as further described in this NOI.

The Commission's regulations provide that an entity that files an NOI may file an application for a license within a prescribed time period.[13] To the extent necessary, **NOI Parties hereby request the Commission to grant a waiver of its regulations to allow the Regional Entity, rather than NOI Parties, to file the license application.** NOI Parties need assurance from the Commission that they can move forward under this construct before they spend the substantial time and resources to undertake the Feasibility Study.

**Due to the condensed schedule, NOI Parties also request a waiver of the requirement to file a preliminary licensing proposal or draft license application.** Omission of the draft license application is a preliminary proposal based on the need to meet a compressed schedule, but could be revisited at a later time if the schedule allows. The NOI Parties expect to continue collaborative discussions with the larger stakeholder group which will shape the final Project plan. Eliminating the requirement for a preliminary licensing proposal or draft license application will save substantial time in the schedule. Moreover, the report on the Feasibility Study, which will be filed with the Commission by May 14, 2020 under the proposed schedule, serves the function of a draft license application, as it will propose a Project plan, including modifications and operations and maintenance requirements, to be carried out under a new license.

**NOI Parties further request any other waivers of the Commission's regulations to the extent necessary to implement the process envisioned in this NOI.**

## V.  REQUEST FOR EXTENSION OF TIME

The Commission's March 1 Notice indicates that potential applicants must file a license application by April 14, 2020, which is two years prior to the expiration of PG&E's existing license.[14] However, the Commission's orphaned project regulations are not triggered until the current licensee fails to file a license application by the statutory deadline, i.e., by April 14, 2020.[15] Moreover, the statutory deadline for PG&E to file an

---

[12]  18 C.F.R. § 16.25.

[13]  *Id.* § 16.25(b)(1).

[14]  Notice at 2.

[15]  18 C.F.R. § 16.25(a).

application does not apply to a party who wishes to file a license application for an orphaned project.

In this case, the Commission appears to have triggered the orphaned project procedures early by soliciting potential applicants prior to PG&E's statutory deadline. Under the Commission's orphaned project regulations, if the current licensee fails to file a license application by its statutory deadline, the Commission will issue a "notice soliciting applications from potential applicants other than the existing licensee"[16] within 90 days.[17] An applicant who files a timely NOI may file a license application with the Commission "within 18 months of the date on which it files its [NOI]."[18] Since under the regular orphaned project process a potential applicant would have approximately two years after the statutory application deadline to file a license application, **NOI Parties request an extension of time to file a license application until April 14, 2022.** This will provide the needed time to complete the Feasibility Study, form the Regional Entity that will be the licensee, complete the remaining relicensing studies, and develop a license application for the Project.

## VI.    REQUEST FOR ASSIGNMENT OF DESIGNATIONS

The Commission previously designated PG&E as the Commission's non-federal representative for carrying out informal consultation pursuant to section 7 of the Endangered Species Act, section 305(b)(2) of the Magnuson-Stevens Fisheries Conservation and Management Act; and section 106 of the National Historic Preservation Act.[19] **NOI Parties request the Commission to assign these authorizations to them so they can continue these informal consultation efforts on behalf of the Regional Entity.** Upon formation of the Regional Entity, NOI Parties would transfer the delegations to the Regional Entity.

## VII.    CONCLUSION

In conclusion, the NOI Parties respectfully request, within 60 days of this filing, that the Commission: (1) accept this NOI; (2) approve the revised process plan and schedule; (3) grant a waiver of its regulations to allow the Regional Entity, rather than the NOI Parties, to file a license application; (4) grant an extension of time to file the license application until April 14, 2022; (5) assign the Commission's non-federal representative designations to the NOI Parties; (6) grant a waiver of the requirement to file a preliminary licensing proposal or draft license application; and (7) grant any other waivers of the Commission's regulations to the extent necessary.

---

[16]    *Id.*

[17]    *Id.* § 16.25(b).

[18]    *Id.* § 16.25(b)(1).

[19]    Notice of Intent to file License Application, Filing of Pre-Application Document (PAD), Commencement of Pre-Filing Process, Prepare an Environmental Impact Statement, and Scoping; Request for Comments on the PAD and Scoping Document, and Identification of Issues and Associated Study Requests, Project No. 77-285 (issued June 1, 2017).

Case: 19-30088    Doc# 9309-1    Filed: 10/15/20    Entered: 10/15/20 15:48:05    Page 32 of 90

As required by 18 C.F.R. § 5.5(c), the NOI Parties are providing a copy of this NOI to appropriate federal and state resource agencies, Indian tribes, local governments, and members of the public likely to be interested in the proceeding, as set forth in the distribution list attached as Appendix D.

The NOI Parties look forward to working with the Commission, agencies, Indian tribes, local governments, and members of the public to timely develop a license application with proposed terms that will materially benefit both basins. If you have any questions regarding the above, please do not hesitate to contact the undersigned. Thank you for your assistance in this matter.

Respectfully submitted,

Grant Davis
General Manager
Sonoma County Water Agency
404 Aviation Boulevard
Santa Rosa, CA 95403
(707) 547-1900

Janet Pauli
Chair
Mendocino County Inland Water and
Power Commission
P.O. Box 1247
Ukiah, CA 95482
(707) 743-1173

Curtis Knight
Executive Director
California Trout
360 Pine Street, 4th Floor
San Francisco, CA 94104
(415) 392-8887

Hank Seemann
Deputy Director – Environmental Services
Humboldt County Public Works
Department
1106 Second Street
Eureka, CA 95501
(707) 268-2680

Enclosures

cc:     Vince Yearick, FERC
        John Katz, FERC
        Alan Mitchnick, FERC

15

Appendix A

**Amended Planning Agreement**

## AMENDED PLANNING AGREEMENT TO UNDERTAKE FEASIBILITY STUDY OF A POTENTIAL LICENSING PROPOSAL FOR THE POTTER VALLEY PROJECT

The "Planning Agreement to Undertake Feasibility Study of a Potential Licensing Proposal for the Potter Valley Project" (Planning Agreement) was entered into and effective on May 17, 2019 by and among California Trout, Inc., Mendocino County Inland Water and Power Commission, and Sonoma County Water Agency This Amended Planning Agreement is entered into and effective on June 18, 2019 by and among California Trout, Inc., Mendocino County Inland Water and Power Commission, Sonoma County Water Agency, and County of Humboldt (collectively, Parties and singularly, Party).

## RECITALS

A.      Pacific Gas and Electric Company (PG&E) is the licensee for the Potter Valley Project (Project). The current license for the Project (No. 77), as issued by the Federal Energy Regulatory Commission (FERC) under the Federal Power Act, expires on April 14, 2022.

B.      The Project diverts water from the Eel River Basin into the Russian River Basin. The Project, including its operations and facilities, affects environmental quality, ecosystem services, native anadromous fisheries, and beneficial uses of water in both basins.

C.      On April 6, 2017, PG&E filed a Pre-Application Document and Notice of Intent to file a new license application for the Project, due by April 14, 2020.

D.      On January 25, 2019, PG&E filed a notice withdrawing its Notice of Intent and Pre-Application Document, stating that it will not seek or hold a new license for the Project. On January 29, 2019, PG&E filed a petition for reorganization under Chapter 11 of the U.S. Bankruptcy Code.

E.      On March 1, 2019, FERC issued a Notice Soliciting Applications from any entity interested in filing a new license application for the Project. This notice directs that any such entity must file the following package within 120 days, or by July 1, 2019: its own notice of intent to file a new license application; a pre-application document; and a proposal to complete the pre-filing stages of the licensing proceeding as required by FERC's rules, including the study plan. The notice further directs that any entity must file an application for license by April 14, 2020.

F.      The Parties are participating, or intended to participate, in the licensing proceeding for the Project. They are also participating in a collaborative process convened by U.S. Representative Jared Huffman (Huffman Ad Hoc Committee) to develop recommendations on the terms of any new license for the Project.

G.      On May 20, 2019, following execution of the Planning Agreement, Congressman Huffman convened an Ad Hoc Committee meeting at which Congressman Huffman and Ad Hoc Committee members requested that the Planning Agreement reference and attach the Huffman

Case: 19-30088    Doc# 9309-1    Filed: 10/15/20    Entered: 10/15/20 15:48:05    Page 35 of 90

Ad Hoc Committee's Proposed Goals and Principles for a Two-Basin Solution (attached hereto as Attachment A).

H.     In the interest of continuing the collaborative efforts toward a Two-Basin Solution that protects fisheries and water supply in both the Eel and Russian River watersheds, the Parties enter into this Amended Planning Agreement.

I.     The Parties support exploration of terms for a new license that will materially benefit both basins by advancing the following objectives ("Shared Objectives"). The Parties recognize that such a new license will advance, but will not by itself achieve, Objectives (1), (2), (6), and (8). Further, the order in which the Objectives are stated is not indicative of weighted value to the Parties.

(1).     Minimize or avoid adverse impacts to water supply reliability, fisheries, water quality and recreation in the Russian River and Eel River basins;

(2).     Improve fish passage and habitat on the Eel River sufficient to support recovery of naturally reproducing, self-sustaining and harvestable native anadromous fish populations including migratory access upstream and downstream at current project dam locations;

(3).     Reliance on best available science and engineering analyses as the basis for evaluating options for restoration, water delivery, and hydroelectric generation pursuant to a new license;

(4).     Collaboration on funding;

(5).     Active participation of tribes and other stakeholders who are willing to support the other Shared Objectives;

(6).     Economic welfare of both basins;

(7).     Continued hydroelectric generation; and

(8)     Protecting tribal cultural, economic, and other interests in both the Eel and Russian River basins.

## AGREEMENTS

The Parties agree as follows.

1.     **Feasibility Study**.  The Parties will work together to prepare a Feasibility Study of a potential licensing proposal for the Project that will advance all of the Shared Objectives. By April 14, 2020, they will complete this study, which will evaluate options and make recommendations for a preferred option to satisfy the following elements:

Case: 19-30088    Doc# 9309-1    Filed: 10/15/20    Entered: 10/15/20 15:48:05    Page 36 of 90

a. **Regional Entity** that will apply for a new license and propose to assume the new license if issued. The Parties will evaluate various potential structures for the new entity.

b. **Project Plan**, showing capital modifications as well as operations and maintenance requirements, for the delivery of water and hydroelectric power to advance the Shared Objectives;

c. **Fisheries Restoration Plan**, showing measures the Regional Entity will implement to advance the Shared Objectives;

d. **Application Study Plan**, showing those further studies necessary to develop a new license application, including associated consultation procedures and schedule; and

e. **Financial Plan**, including the specific sources of initial funding and subsequent revenues, to cover the costs associated with:

   (1). Completing the pre-filing phases of the licensing proceeding; developing, submitting, and pursuing a new license application; and obtaining the other regulatory approvals that are necessary for a new license;

   (2). Capital improvements, and operations and maintenance of the Project, under a new license; and

   (3). Liabilities associated with Project ownership under a new license.

2. **Cooperation in the Conduct of the Feasibility Study**. The Parties will cooperate in the undertaking of the Feasibility Study.

   a. **Funding Commitments by the Parties.** Recognizing that resources will be required to prepare the Feasibility Study, the initial Parties have agreed to fund the effort in an amount of at least $400,000, with initial contributions of $100,000 each. Such funds will be used to engage joint consultants and will be collected and managed pursuant to protocols that the Parties establish. The Parties will further agree to fund, or seek to obtain funding for, proportional shares of further costs associated with the Feasibility Study, which shares will be determined after July 1, 2019. The Parties further agree that they will each fund their own consultants and/or counsel that may be necessary as part of this effort.

   b. **Responsibilities for Selection and Oversight of Consultants.** Each Party will designate one representative to a Steering Committee, which will make decisions regarding the selection, retention and oversight of the consultants and the conduct of the Feasibility Study. Decisions of the Steering Committee shall be made by

Case: 19-30088    Doc# 9309-1    Filed: 10/15/20    Entered: 10/15/20 15:48:05    Page 37 of 90

consensus, with each Party making best efforts to reach consensus on the understanding that the Feasibility Study must be timely concluded.

    c.    **Additional Stakeholders.** The Parties agree that their joint efforts will be enhanced by increasing the number and diversity of stakeholders participating in the relicensing/new licensing process. A Party may nominate any stakeholder that wishes to join in this effort, is willing to commit to seek solutions that meet the Shared Objectives, and is willing to make a substantial contribution of resources, recognizing the funding commitment by the initial Parties. Any such nominated entity may become a Party by signing an amendment approved by the then-existing Parties pursuant to paragraph 7. The Parties pre-approve the participation of Round Valley Indian Tribe (RVIT) as an additional stakeholder subject to the above and RVIT's willingness to execute this Agreement. The Parties intend to seek other Tribal participants as well.

    d.    **Dispute Resolution.** The Parties will resolve their disputes informally and may choose to engage a facilitator.

    e.    **Work Product.** The work products produced pursuant to this Planning Agreement will be joint work products. (i) The sharing or use of such work products by any Party (including a Party that has otherwise withdrawn from this agreement) shall be subject to the prior written agreement of all the other Parties. (ii) Any Party may use the information derived from such work products in a form that is not attributable to any other Party that has not so consented.

3.    **July 1, 2019 Filing with FERC**

    a.    On or before July 1, 2019, the Parties will undertake to file with FERC a package consisting of the following documents:

        (1).    Notice of Intent that will be conditioned upon the completion of the Feasibility Study, including the creation of a Regional Entity, which will be the license applicant;

        (2).    Pre-Application Document incorporating applicable portions of PG&E's Pre-Application Document (dated April 2017) and adding appropriate supplementary materials; and

        (3).    Proposed schedule for completing the pre-filing phases of the licensing proceeding, and a proposed deadline for submittal of a new license application, consistent with the completion of the Feasibility Study described in Section 1 above. As of the effective date of this Planning Agreement, the Parties anticipate proposing a deadline of April 14, 2022, for submittal of a new license application. Implementation of this Planning Agreement will be contingent on FERC's approval of a schedule

Case: 19-30088    Doc# 9309-1    Filed: 10/15/20    Entered: 10/15/20 15:48:05    Page 38 of 90

that permits completion of the Feasibility Study. The Parties agree to work together to extend the deadline of April 14, 2020, for the submittal of a new license application and, if appropriate, to seek to require the issuances of annual licenses for a reasonable period of time.

4. **Licensing Proposal**. By April 14, 2020, each Party will undertake to decide whether to participate in, or support, the Regional Entity to pursue a potential licensing proposal based on the Feasibility Study; and if so, on what terms. The Parties will promptly update the July 1, 2019, filing as appropriate. The Parties anticipate entering into a subsequent agreement concurrent with the formation of a Regional Entity, for the purpose of all subsequent activities.

## GENERAL TERMS

5. **Effective and Termination Dates**. This amendment to the Planning Agreement is effective upon execution by the Parties. It will terminate upon the formation of a Regional Entity, withdrawal of Parties pursuant to paragraph 6, or April 14, 2022, whichever is earliest.

6. **Withdrawal.** Any Party may withdraw from this Planning Agreement at any time and for any reason, upon providing Notice. The Planning Agreement will continue in effect as between remaining Parties, as long as at least two Parties remain. Section 2(e) should survive withdrawal.

7. **Amendment**. This Planning Agreement may be amended only by a written amendment executed by all Parties.

8. **Notice**. Any notice under this Planning Agreement will be made by electronic mail or personal delivery.

9. **Remedies**. This Planning Agreement does not establish any remedies related to a Party's performance hereunder.

10. **Third Party Beneficiaries**. This Planning Agreement does not create any third party beneficiaries.

11. **Reservation of Rights**. Each Party reserves all of its rights and authorities with respect to its participation in the Planning Agreement; the preparation, content, and use of the Feasibility Study; and the subsequent decision whether to pursue a licensing proposal. By entering into this Planning Agreement, each Party commits not to undertake any action subject to the California Environmental Quality Act relating to the Project.

12. **Entire Agreement**. This Planning Agreement constitutes the entire agreement of the Parties and supersedes all prior agreements and understandings, written or oral.

13. **Successors and Assigns**. The rights and duties of the Parties may not be assigned or delegated without the advance written consent of all Parties and any attempt to assign or delegate such rights or duties in contravention of this paragraph will be null and void.

14. **Severability**. If one or more terms of this Planning Agreement are held to be unlawful or invalid, the Parties agree that the remainder of the Planning Agreement will not be affected thereby. Such terms will be deemed reformed so as to be lawful and valid to the maximum extent possible.

15. **No Admissions**. Nothing in this Planning Agreement shall be construed as an admission by any Party regarding any subject matter of this Planning Agreement.

16. **Counterparts**. This Planning Agreement may be executed in separate counterparts, each of which when so executed and delivered will be an original. All such counterparts will together constitute but one and the same instrument.


CALIFORNIA TROUT, INC.

By: _____
Curtis Knight
Executive Director


MENDOCINO COUNTY INLAND WATER & POWER COMMISSION

By: _____
Janet K. F. Pauli
Chair, Board of Commissioners


SONOMA COUNTY WATER AGENCY

By: _____
David Rabbitt,
Chair, Board of Directors


*Amended Planning Agreement- Potential Licensing Proposal*
*Potter Valley Project*

6 of 9

12. **Entire Agreement**. This Planning Agreement constitutes the entire agreement of the Parties and supersedes all prior agreements and understandings, written or oral.

13. **Successors and Assigns**. The rights and duties of the Parties may not be assigned or delegated without the advance written consent of all Parties and any attempt to assign or delegate such rights or duties in contravention of this paragraph will be null and void.

14. **Severability**. If one or more terms of this Planning Agreement are held to be unlawful or invalid, the Parties agree that the remainder of the Planning Agreement will not be affected thereby. Such terms will be deemed reformed so as to be lawful and valid to the maximum extent possible.

15. **No Admissions**. Nothing in this Planning Agreement shall be construed as an admission by any Party regarding any subject matter of this Planning Agreement.

16. **Counterparts**. This Planning Agreement may be executed in separate counterparts, each of which when so executed and delivered will be an original. All such counterparts will together constitute but one and the same instrument.

CALIFORNIA TROUT, INC.

By: _____
    Curtis Knight
    Executive Director

MENDOCINO COUNTY INLAND WATER & POWER COMMISSION

By: _____
    Janet K. F. Pauli
    Chair, Board of Commissioners

SONOMA COUNTY WATER AGENCY

By: _____
    David Rabbitt,
    Chair, Board of Directors

*Amended Planning Agreement- Potential Licensing Proposal*
*Potter Valley Project*
                    6 of 9

COUNTY OF HUMBOLDT

By: _____

Rex Bohn
Chairperson, Board of Supervisors

Attachment A



**Congressman Jared Huffman**
Potter Valley Project Ad Hoc
Committee 08.01.2018

**Proposed Goals and Principles for a Two-Basin Solution**

We as interested parties in the Potter Valley Project Ad Hoc Committee are committed to joint problem solving and working toward an outcome of the PVP relicensing process that reflects the following goals and principles:

- Co-equal goals:

  o Improve fish passage and habitat on the Eel River sufficient to support recovery of naturally reproducing, self-sustaining and harvestable native anadromous fish populations including migratory access upstream and downstream at current project dam locations; and

  o Minimize or avoid adverse impacts to water supply reliability, fisheries, water quality and recreation in the Russian River and Eel River basins

- Other goals:

  o Respect tribal rights and their traditional connections to aquatic life, water and cultural resources in both basins

  o Minimize and mitigate adverse impacts to Lake County, including Lake Pillsbury businesses and residents

  o Ensure accountable governance and financially viable operations, including addressing potential liabilities

*Amended Planning Agreement- Potential Licensing Proposal*
*Potter Valley Project*

- o Jointly pursue public funding based on environmental and water supply benefits

- o Ensure that implementation of fish passage improvements in the Eel River basin happens in parallel and ideally simultaneously with water supply solutions in the Russian River basin

Case: 19-30088   Doc# 9309-1   Filed: 10/15/20   Entered: 10/15/20 15:48:05   Page 44
of 90

**Appendix B**

**Status of PG&E Technical Studies**

Potter Valley Project Relicensing
Technical Study Plan (TSP) Implementation Status

| Technical Study Plan | Historical Data Compilation | Key Decision w/ Stakeholders re: Study Element(s) | Field Surveys/Data Collection | Data Analysis/Synthesis | Model Development | Draft Report |
|---|---|---|---|---|---|---|
| AQ 1 - Hydrology and Project Operations Modeling | X | X | X | IP | IP | O |
| AQ 2 - Water Temperature | IP | X | IP | IP | IP | O |
| AQ 3 - Water Quality | | X | X | IP | | O |
| AQ 4 - Fluvial Processes and Geomorphology | X | X | X | IP | | O |
| AQ 5 - Instream Flow | X | X | X | IP | IP | O |
| AQ 6 - Lake Pillsbury Fish Habitat | | X | X | O | | O |
| AQ 7 - Fish Passage | IP | X | IP | IP | | O |
| AQ 8 - Fish Entrainment | IP | X | X | IP | | O |
| AQ 9 - Fish Populations | X | IP | X | IP | | O |
| AQ 10 - Special Status Amphibians and Aquatic Reptiles | X | X | X | IP | | O |
| AQ 11 - Special Status and Invasive Aquatic Mollusks | | X | X | X | | IP |
| CUL 1 – Cultural Resources | X | X | IP | O | | O |
| CUL 2 – Tribal Resources | X | X | X | O | | O |
| LAND 1 – Roads and Trails Assessment | IP | X | X | IP | | IP |
| LAND 2 – Visual Resource Assessment | X | X | O | O | | O |
| LAND 3 – Hazardous Fuels Assessment | X | O | O | O | | O |
| REC 1 – Recreation Facility Assessment | IP | IP | O | O | | O |
| REC 2 – Reservoir Recreation Opportunities | | IP | O | O | | O |
| REC 3 – Whitewater Boating | X | X | X | X | | O |
| TERR 1 – Botanical Resources | X | X | X | IP | | O |
| TERR 2 – Wildlife Resources | X | X | X | IP | | IP |

Key
blank - not applicable
X - Study Element/Activity Complete
IP - Study Element/Activity In Progress
O - Study Element/Activity Outstanding

**Appendix C**

Proposed Process Plan and Schedule

## Proposed Pre-Filing Process Plan and Schedule

| 18 CFR § | Licensing Activity | Responsible Party | Time Frame | Deadline |
|---|---|---|---|---|
| **Initiation of Licensing Process** | | | | |
| 5.5, 5.6 | Filing of Notification of Intent and Pre-Application Document | NOI Parties | Within 90 days of FERC's "Notice Soliciting Applications" | 7/1/2019 |
| 5.8, 5.8(a) | Notice of Commencement of Proceeding and FERC approval of revised schedule and process | FERC | Within 30 days of filing NOI/PAD | 7/31/2019 |
| N/A | Commence Feasibility Study activity | NOI Parties | Upon FERC issuance of Notice of Commencement of Proceeding | 8/1/2019 |
| N/A | Complete Feasibility Study | NOI Parties | | 4/14/2020 |
| N/A | File Report on Feasibility Study, including description of proposed project to be studied | NOI Parties | Within 30 days of completion of Feasibility Study | 5/14/2020 |
| N/A | Comments on modifications to FERC-approved Study Plan needed to reflect proposed project and requests for additional studies | FERC and Participants | Within 45 days of filing Report on Feasibility Study | 6/29/2020 |
| N/A | Scoping Document 3, if necessary | FERC | Within 45 days of filing Report on Feasibility Study | 6/29/2020 |
| **Conduct Studies** | | | | |
| 5.11 5.15(b) 5.15(c)(1) | File progress report and Initial Study Report with proposed modifications to project and new study requests | NOI Parties | N/A | 9/14/2020 |
| 5.15(c)(2) | Conduct Initial Study Results meeting | NOI Parties | Within 15 days of filing the Initial Study Report | 9/29/2020 |
| 5.15(c)(3) | File Initial Study Results meeting summary, including any study modifications or new studies | NOI Parties | Within 15 days of Study Results meeting | 10/14/2020 |
| 5.15(c)(4) | File disagreement with Initial Study Results meeting summary | FERC and Participants | Within 30 days of filing Initial Study Results meeting summary | 11/13/2020 |
| 5.15(c)(7) | If no disagreements are filed, approve Initial Study Results meeting summary and any proposed study plan amendments | FERC | Deemed approved 30 days following filing of Initial Study Results meeting summary | 11/13/2020 |

C-1

| 18 CFR § | Licensing Activity | Responsible Party | Time Frame | Deadline |
|---|---|---|---|---|
| 5.15(c)(5) | If disagreements are filed, file responses to disagreement with Initial Study Results meeting summary | FERC, NOI Parties, or Participants | Within 30 days of the filing of a disagreement with the Initial Study Results meeting summary | 12/14/2020[1] |
| 5.15(c)(6) | Resolve disagreement and amend approved study plan | FERC Director of OEP | Within 30 days following due date for responses to disagreement | 1/13/2021 |
| 5.15(a) | Conduct Studies | NOI Parties | January-December 2021 | |
| 5.15(f) | File Updated Study Report | NOI Parties | Pursuant to the FERC-approved schedule or no later than two years after FERC approval of the schedule | 9/14/2021 |
| 5.15(c)(2) | Conduct Updated Study Results meeting | NOI Parties | Within 15 days of filing the Updated Study Report | 9/29/2021 |
| 5.15(c)(3) | File Updated Study Results meeting summary, including any study modifications or new studies | NOI Parties | Within 15 days of Study Results meeting | 10/14/2021 |
| 5.15(c)(4) | File disagreement with Updated Study Results meeting summary | FERC and Participants | Within 30 days of filing Updated Study Results meeting summary | 11/15/2021 |
| 5.15(c)(7) | If no disagreements are filed, approve Updated Study Results meeting summary and any proposed study plan amendments | FERC | Deemed approved 30 days following filing of Updated Study Results meeting summary | 11/15/2021 |
| 5.15(c)(5) | If disagreements are filed, file responses to disagreement with Updated Study Results meeting summary | FERC, NOI Parties, or Participants | Within 30 days of the filing of a disagreement with the Updated Study Results meeting summary | 12/15/2021 |
| 5.15(c)(6) | Resolve disagreement and amend approved study plan | FERC Director of OEP | Within 30 days following due date for responses to disagreement | 1/14/2022 |
| **Filing of License Application** | | | | |
| 5.17(a) | File License Application | New Regional Entity | | 4/14/2022 |
| 5.19 et seq. | Remainder of steps in FERC licensing proceeding | Various | As determined by FERC | |

---

[1] Where a deadline falls on a weekend or holiday, the NOI Parties have adjusted the deadline to the next business day pursuant to the Commission's rules at 18 C.F.R. § 385.2007(a)(2).

C-2

**Appendix D**

**Distribution List**

# DISTRIBUTION LIST

| Organization | Name | Street Address | City, State, Zip | Email |
|---|---|---|---|---|
| American Whitewater | John Simpkin | 5020 La Mesa Road | Placerville, CA 95667 | johnmsimpkin3@gmail.com |
| American Whitewater | Dave Steindorf | 4 Baroni Drive | Chico, CA 95928 | dave@americanwhitewater.org |
| Big Valley Rancheria of Pomo Indians | Anthony Jack | 2726 Mission Rancheria | Lakeport, CA 95445 | |
| Big Valley Rancheria of Pomo Indians | Balsuwin Brown | 2726 Mission Rancheria | Lakeport, CA 95445 | |
| Cahto Tribe | Sonny Elliot | | | environmental@cahto.org |
| California Department of Fish and Wildlife | Allan Renger | | | allan.renger@wildlife.ca.gov |
| California Department of Fish and Wildlife | Curtis Milliron | | | curtis.milliron@wildlife.ca.gov |
| California Department of Fish and Wildlife | Dave Kajtaniak | | | david.kajtaniak@wildlife.ca.gov |
| California Department of Fish and Wildlife | Scott Bauer | | | scott.bauer@wildlife.ca.gov |
| California Department of Fish and Wildlife | Scott Harris | | | scott.harris@wildlife.ca.gov |
| California Department of Fish and Wildlife | Matt Myers | 601 Locust Street | Redding, CA 96001 | matt.myers@wildlife.ca.gov |
| California Department of Fish and Wildlife | Scott Monday | | | scott.monday@wildlife.ca.gov |
| California Department of Fish and Wildlife | Eric Larson | | | Eric.Larson@wildlife.ca.gov |
| California Department of Fish and Wildlife-Retired | Scott Downie | | | sdownie@suddenlink.net |
| California Department of Fish and Wildlife-Retired | Larry Week | | | leweek1@aol.com |
| California Department of Fish and Wildlife-Retired | Alan Grass | 17850 Van Arsdale Road | Potter Valley, CA 95469 | al_grass@hotmail.com |
| California Land Stewardship Institute | Laurel Marcus | 550 Gateway Drive #108 | Napa, CA 94558 | laurelm@fishfriendlyfarming.org |
| California Sportfishing Protection Alliance | Chris Shutes | | | blancapaloma@msn.com |
| California State Assembly | Tom Weseloh | | | tom.weseloh@sen.ca.gov |
| California State Coastal Conservancy | Michael Bowen | | | mbowen@scc.ca.gov |
| California State Parks | Jay Harris | | | jharris@parks.ca.gov |
| California State Parks | Patrick Vaughan | | | pvaug@parks.ca.gov |
| California Trout | Darren Mierau | | | dmierau@caltrout.org |
| California Trout | Mary Burke | | | mburke@caltrout.org |
| California Trout | Natalie Arroyo | | | caltrout.northcoast@gmail.com |
| Center for Ecosystem Management and Restoration | Gordon Becker | | | becker@cemar.org |
| City of Cloverdale* | Paul Gayler | | | PCayler@ci.cloverdale.ca.us |
| City of Healdsburg* | David Mickaelian | | | mcuriel@ci.healdsburg.ca.us; dmickaelian@ci.healdsburg.ca.us |
| City of Petaluma* | John Brown | | | citymgr@ci.petaluma.ca.us |

D-1

# DISTRIBUTION LIST

| Organization | Name | Street Address | City, State, Zip | Email |
|---|---|---|---|---|
| City of Rohnert Park* | Darrin Jenkins | | | admin@rpcity.org; dajenkins@rpcity.org |
| City of Santa Rosa* | Sean McGlynn | | | CMOffice@srcity.org; smcglynn@srcity.org |
| City of Santa Rosa Water* | Linda Reed | 69 Stony Circle | Santa Rosa, CA 95401 | lreed@srcity.org |
| City of Santa Rosa Water* | Bennett Horenstein | | | bhorenstein@srcity.org |
| City of Santa Rosa* | Jennifer Burke | | | jburke@srcity.org |
| City of Sonoma* | Carol Giovanatto | | | cgiovanatto@sonomacity.org; carolg@sonomacity.org |
| City of Ukiah* | Sage Sangiacomo | | | ssangiacomo@cityofukiah.com |
| Congressional Representative Office | Heather Gurewitz | P.O. Box 2208 | Fort Bragg, CA 95437 | heather.gurewitz@mail.house.gov |
| Congressional Representative Office | Jenny Callaway | 999 Fifth Avenue, Suite 290 | San Rafael, CA 94901 | jenny.callaway@mail.house.gov |
| Congressional Representative Office | John Driscoll | 317 Third St., Suite 1 | Eureka, CA 95501 | john.driscoll@mail.house.gov |
| Constellation Brands | Thomas Gore | 910 Lytton Station Road | Geyserville, CA 95441 | tom.gore@cbrands.com |
| Coyote Valley Band of Pomo Indians | Michael Hunter | P.O. Box 39 | Redwood Valley, CA 95470-0039 | tribalgovernment@coyotevalley-nsn.gov |
| District Representative Senator Mike McGuire | Danielle Bradley | | | danielle.bradley@sen.ca.gov |
| Dunnewood Vineyards | George Phelan | P.O. Box 268 | Ukiah, CA 95482 | george.phelan@cbrands.com |
| Eel River Recovery Project | Barbara Domanchuk | | | bad@humboldt1.com |
| Eel River Recovery Project | Pat Higgins | | | phiggins@humboldt1.com |
| Eel River Recovery Project | David Sopjes | | | ferndalescience@yahoo.com |
| Eel River Recovery Project | Diane Higgins | | | 4joy@suddenlink.net |
| Eel River Recovery Project | Dottie & Graham Russell | | | grussell@cheetah.com |
| Eel River Watershed Improvement Group | Ruth Goodfield | | | info@erwig.org |
| Elem Indian Colony of Pomo Indians | Agustin Garcia | P.O. Box 757 | Lower Lake, CA 95457 | |
| Elem Indian Colony of Pomo Indians | Thomas Brown | P.O. Box 757 | Lower Lake, CA 95457 | |
| Environmental Protection Agency | Will Duncan | | | duncan.will@epa.gov |
| Federal Energy Regulatory Commission | John Aedo | | | john.aedo@ferc.gov |
| Federal Energy Regulatory Commission | John Mudre | | | john.mudre@ferc.gov |
| Federal Energy Regulatory Commission | Timothy Konnert | | | timothy.konnert@ferc.gov |

D-2

# DISTRIBUTION LIST

| Organization | Name | Street Address | City, State, Zip | Email |
|---|---|---|---|---|
| Friends of the Eel River | David Keller | 1327 1 Street | Petaluma, CA 94952 | dkeller@eelriver.org |
| Friends of the Eel River | Scott Greacen | P.O. Box 4945 | Arcata, CA 95518 | scott@eelriver.org |
| Friends of the Eel River | Tryphena Lewis | | | tryphena@asis.com |
| Friends of the Eel River | Melvin Kreb | | | floodplain@asis.com |
| Friends of the Eel River | Ellison Folk | 396 Hayes Street | San Francisco, CA 94102 | folk@smwlaw.com |
| Friends of the Eel River/Native Fish Society | Samantha Kannry | | | skannry@gmail.com |
| Friends of the River | Ronald Stork | 1418 20th Street | Sacramento, CA 95811 | rstork@friendsoftheriver.org |
| Friends of Van Duzen River | Sal Steinberg | | | steinberg.sal@gmail.com |
| GANDA | David Menasian | | | dmenasian@garciaandassociates.com |
| GANDA/California Department of Fish & Wildlife | Beb Ware | 11500 Oat Gap Road | Potter Valley, CA 95469 | bebandlinda@wildblue.net |
| GANDA/Local Resident | Rick Todd | | | ricktodd@wildblue.net |
| Garcia and Associates | Jen Riddell | | | jriddell@garciaandassociates.com |
| Garcia and Associates | Elizabeth Harreschou | | | elizabeth.harreschou@gmail.com |
| Geyserville Water Works* | Harry Bosworth | P.O. Box 65 | Geyserville, CA 95441 | harry@bosworthandson.com |
| Guidiville Band of Pomo Indians | Merline Sanchez | P.O. Box 339 | Talmage, CA 95481 | |
| Habematotel Pomo of Upper Lake | Sherry Trella | P.O. Box 516 | Upper Lake, CA 95485 | executive_secretary@upperlakepomo.com |
| Humboldt County Administrative Offer | Amy Nilsen | | | cao@co.humboldt.ca.us |
| Humboldt County Board of Supervisors | Estelle Fennell | | | efennell@co.humboldt.ca.us |
| Humboldt County Public Works* | Hank Seemann | 1106 Second Street | Eureka, CA 95501 | hseemann@co.humboldt.ca.us |
| Humboldt County Resource Conservation District | Jill Demers | | | jillhcrcd@yahoo.com |
| Humboldt County Resource Conservation District | Donna Chambers | | | donnahcrcd@yahoo.com |
| Humboldt County Resource Conservation District | Doreen Hansen | | | dhhcrcd@gmail.com |
| Humboldt State University | Terry Roelofs | | | Terry.Roelofs@humboldt.edu |
| Humboldt State University | Emily Cooper | | | ejc485@humboldt.edu |
| Humboldt State University River Institute | Dr. Alison O'Dowd | 1 Harpst Street | Arcata, CA 95521 | Alison.ODowd@humboldt.edu |

D-3

# DISTRIBUTION LIST

| Organization | Name | Street Address | City, State, Zip | Email |
|---|---|---|---|---|
| Humboldt State University River Institute | Bill Trush | | | William.Trush@humboldt.edu |
| Humboldt University | Richard Gienger | | | rgrocks@humboldt.net |
| InterTribal Sinkyone Wilderness Council | Hawk Rosales | P.O. Box 1523 | Ukiah, CA 95482 | |
| Lake County* Administrative Officer | Carol Huchingson | | | Carol.Huchingson@lakecountyca.gov |
| Lake County Board of Supervisors | Jim Steele | | | Jim.Steele@lakecountyca.gov |
| Lake Pillsbury Homesite Association | Frank Lynch | 26831 Madrone Drive | Cloverdale, CA 95425 | lake6lynch@yahoo.com |
| Lake Pillsbury Homesite Association (LPHA) | Susan Berger | 17 Lone Oak Court | Petaluma, CA 94952 | sue.berger@comcast.net |
| Lake Pillsbury Homesite Association (LPHA) | Kris Patalano | 317 Alden Court | Windsor, CA 95492 | patalak@comcast.net |
| Lake Pillsbury Ranch | Carolyn Winn | | | Caretakers@wildblue.net |
| Lake Pillsbury Ranch | Jill Clarkson | | | clarksonbk@hughes.net |
| Lake Pillsbury Resort--Biagi Bros., Inc | Mark C. Carnell, CPA | 787 Airpark Road | Napa, CA 94558 | |
| Lake Pillsbury Resort--Biagi Bros., Inc | Mike and Maryann | | | info@lakepillsburyresort.com |
| Laytonville Rancheria | Richard J. Smith | P.O. Box 1239 | Laytonville, CA 95454 | |
| Lower Lake Rancheria | Darin F. Beltran | P.O. Box 3162 | Santa Rosa, CA 95402 | |
| Manchester-Point Arena Rancheria | Jaime Cobarrubia | P.O. Box 623 | Point Arena, CA 95468 | |
| Manchester-Point Arena Rancheria | Florence Silva | P.O. Box 237 | Point Arena, CA 95468 | |
| Mendocino Voice | Sarah Reith | | | sreith@mendovoice.com |
| Mendocino County* Board of Supervisors | Carre Brown | 501 Low Gap Road, Rm 1090 | Ukiah, CA 95482 | carrebrown@pacific.net; browncj@co.mendocino.ca.us |
| Mendocino County Chief Executive Officer | Carmel J. Angelo | | | ceo@co.mendocino.ca.us |
| Mendocino County Farm Bureau | Devon Jones | 303-C Talmage Road | Ukiah, CA 95482 | admin@mendofb.org |
| Mendocino County Farm Bureau | Frost Pauli | 303-C Talmage Road | Ukiah, CA 95482 | fpauli@pauliranch.com |
| Mendocino County Inland Water and Power Commission | Candace Horsley | P.O. Box 1247 | Ukiah, CA 95482 | iwpc@mendoiwpc.com |
| Mendocino County Inland Water and Power Commission | Janet Pauli | P.O. Box 1247 | Ukiah, CA 95482 | iwpc@mendoiwpc.com; jpauli@pauliranch.com |
| Mendocino County Resource Conservation District | Janet Olave | | | janet.olave@mcrcd.org |

D-4

## DISTRIBUTION LIST

| Organization | Name | Street Address | City, State, Zip | Email |
|---|---|---|---|---|
| Mendocino County Resource Conservation District | Joseph Scriven | | | joe.scriven@mcrcd.org |
| Mendocino County Resource Conservation District | Patricia Hickey | | | Patricia.Hickey@mcrcd.org |
| Mendocino County Russian River Flood Control and Water Conservation Improvement District | Tamara Alaniz | 151 Laws Avenue, SuiteD | Ukiah, CA 95482 | rrfc@pacific.net |
| Mendocino County Russian River Flood Control and Water Conservation Improvement District | Will Carson | | | wcc3rd@gmail.com |
| Mendocino County Water Agency* | | 501 Low Gap Road, Rm 1090 | Ukiah, CA 95482 | ceo@co.mendocino.ca.us |
| Mendocino County Water Agency | Sarah Dukett | | | duketts@co.mendocino.ca.us |
| Mendocino Redwood Company | Mike Miles | | | mmiles@hrcllc.com |
| Middletown Rancheria | Jose Simon III | P.O. Box 1035 | Middletown, CA 95461 | |
| Middletown Rancheria | Stephanie L. Reyes | P.O. Box 1035 | Middletown, CA 95461 | |
| Mishewai-Wappo of Alexander Valley | Scott Gabaldon | P.O. Box 1086 | Santa Rosa, CA 95402 | scottg@mishewalwappotribe.com |
| National Marine Fisheries Service | Joseph Dillon | | | joseph.j.dillon@noaa.gov |
| National Marine Fisheries Service | Bob Coey | | | bob.coey@noaa.gov |
| National Marine Fisheries Service | Joshua Fuller | 777 Sonoma Avenue Room 325 | Santa Rosa, CA 95404 | joshua.fuller@noaa.gov |
| National Marine Fisheries Service | Kathryn Kempton | 501 West Ocean Boulevard Ste 4470 | Long Beach, CA 90802 | Kathryn.kempton@noaa.gov |
| National Marine Fisheries Service | Tom Holley | 650 Capitol Mall, Suite 5-100 | Sacramento, CA 95814 | thomas.holley@noaa.gov |
| National Marine Fisheries Service | Dan Wilson | | | Dan.wilson@noaa.gov |
| National Marine Fisheries Service | Matt Goldsworthy | 1655 Heindon Road | Arcata, CA 95521 | matt.goldsworthy@noaa.gov |
| National Marine Fisheries Service | Clarence Hostler | | | clarence.hostler@noaa.gov |
| National Marine Fisheries Service | David White | | | david.k.white@noaa.gov |
| National Marine Fisheries Service | Irma Lagomarsino | | | irma.lagomarsino@noaa.gov |
| National Marine Fisheries Service | Jeffrey Jahn | | | jeffrey.jahn@noaa.gov |
| National Marine Fisheries Service | Steve Edmondson | | | Steve.Edmondson@noaa.gov |
| National Marine Fisheries Service | Julie Weeder | | | julie.weeder@noaa.gov |

D-5

# DISTRIBUTION LIST

| Organization | Name | Street Address | City, State, Zip | Email |
|---|---|---|---|---|
| National Marine Fisheries Service | Leah Mahan | | | Leah.Mahan@noaa.gov |
| National Marine Fisheries Service | Tom Daugherty | | | Tom.Daugherty@noaa.gov |
| National Marine Fisheries Service | Charlotte Ambrose | | | charlotte.ambrose@noaa.gov |
| National Park Service | Barbara Rice | 333 Bush Street | San Francisco, CA 94104 | |
| Native Fish Society | Mark Sherwood | 813 7th Street, Suite 200A | Oregon City, OR 97045 | mark@nativefishsociety.org |
| Native Fish Society | Conrad Gowell | 813 7th Street, Suite 200A | Oregon City, OR 97045 | conrad@nativefishsociety.org |
| Native Fish Society | Jake Crawford | 813 7th Street, Suite 200A | Oregon City, OR 97045 | jake@nativefishsociety.org |
| North Coast Regional Water Quality Control Board | Bryan McFadin | 5550 Skylane Blvd, Ste. A | Santa Rosa, CA 95403 | bryan.mcfadin@waterboards.ca.gov |
| North Marin Water District* | Chris DeGabriele | P.O. Box 146 | Novato, CA 94948 | cdegabriele@nmwd.com |
| North Marin Water District | Drew McIntire | | | dmcintire@nmwd.com |
| Noyo River Indian Community | | P.O. Box 91 | Fort Bragg, CA 95437 | |
| NRCS-USDA | Erin Kile | | | erin.kile@ca.usda.gov |
| Pacific Watershed Associates | Todd Kraemer | | | toddk@pacificwatershed.com |
| PG&E-Retired | Gene Geary | | | ralphgeary@gmail.com |
| PG&E-Retired | Missy Brosnan | | | melissabrosnan@comcast.net |
| Pinoleville Pomo Nation | Erica Carson | 500 B Pinoleville Drive | Ukiah, CA 95482 | |
| Pinoleville Pomo Nation | Vack Sampsel | 500 B Pinoleville Drive | Ukiah, CA 95482 | |
| Potter Valley Irrigation District* | Steve Elliott | P.O. Box 186 | Potter Valley, CA 95469 | selliott@pottervalleywater.org |
| Potter Valley Irrigation District | Guinness McFadden | P.O. Box 186 | Potter Valley, CA 95469 | guinness@pacific.net |
| Potter Valley Irrigation District | Janet Pauli | P.O. Box 186 | Potter Valley, CA 95469 | jpauli@pauliranch.com; jpauli@pottervalleywater.org |
| Potter Valley Tribe | Salvador Rosales | 2251 S. State Street | Ukiah, CA 95482 | pottervalleytribe@pottervalleytribe.com |
| Potter Valley Tribe | Gregg Young | 2251 S. State Street | Ukiah, CA 95482 | pvtepadirector@pottervalleytribe.com |
| Redwood Valley County Water District* | Bill Koehler | P.O. Box 399 | Redwood Valley, CA 95470 | gmrvcwd@pacific.net |
| Redwood Valley Rancheria of Pomo | Debra Ramirez | P.O. Box 969 | Ukiah, CA 95482 | |
| Rice Forks Association | Nancy Horton | | | bearco2@att.net |
| Riverbend Sciences | Eli Asarian | | | eli@riverbendsci.com |
| Robinson Rancheria of Porno Indians | | P.O. Box 428 1545 E. Hwy 20 | Nice, CA 95464 | |

D-6

# DISTRIBUTION LIST

| Organization | Name | Street Address | City, State, Zip | Email |
|---|---|---|---|---|
| Round Valley Indian Tribes | Scott Williams | | | swilliams@berkeywilliams.com |
| Round Valley Indian Tribes | C Mitchell | | | cmitchell@rvit.org |
| Round Valley Indian Tribes | Walter Feather, Jr | | | wfeatherfpt@rvit.org |
| Round Valley Indian Tribes | Paula Britton | 77826 Covelo Road | Covelo, CA 95428 | pbritton@rvit.org |
| Round Valley Indian Tribes | Scott McBain | | | scott@mcbainassociates.com |
| Round Valley Indian Tribes | Curtis Berkey | 2030 Addison Street, Ste 410 | Berkeley, CA 94704 | cberkey@berkeywilliams.com |
| Round Valley Indian Tribes | Stephanie Boggs | | | sboggs@rvit.org |
| Round Valley Indian Tribes | Zerlinda Hoaglen-Card | | | zcard@rviha.org |
| Round Valley Indian Tribes | Stephanie Britton | 77826 Covelo Road | Covelo, CA 95428 | |
| Round Valley Indian Tribes | James Russ | 77826 Covelo Road | Covelo, CA 95428 | president@council.rvit.org; james.russ@rvihc.com |
| Round Valley Indian Tribes | Douglas Hutt | | | treasurer@council.rvit.org |
| Round Valley Indian Tribes | Carlino Bettega | | | vicepresident@council.rvit.org |
| Round Valley Indian Tribes | Lewis Whipple | | | secretary@council.rvit.org |
| Russian River Watershed Conservation Council | Douglas McIlroy | 400 Aviation Blvd, Ste 500 | Santa Rosa, CA 95403 | dmcilroy@rodneystrong.com |
| Salmon Restoration Federation | Dana Stolzman | | | srf@calsalmon.org |
| Salt River Ecosystem Restoration | Steve Allen | | | Steve.Allen@ghd.com |
| Santa Rosa Chamber of Commerce | Jonathan Coe | | | jonathanc@santarosachamber.com |
| Scotts Valley Band of Pomo | Donald Arnold | 1005 Parallel Drive | Lakeport, CA 95453 | |
| Scotts Valley Band of Pomo | Joann Wright | 1005 Parallel Drive | Lakeport, CA 95453 | |
| Scotts Valley Band of Pomo | Shannon Ford | 1005 Parallel Drive | Lakeport, CA 95453 | |
| Shebelna Band of Mendocino Coast Pomo Indians | Charlie Fales | 19101 Olsen Lane | Fort Bragg, CA 95437 | |
| Sherwood Valley Rancheria Band of Pomo Indians | Javier Silva | 190 Sherwood Hill Drive | Willits, CA 95490 | svtepdirector@gmail.com |
| Sherwood Valley Rancheria Band of Pomo Indians | Michael Knight | 190 Sherwood Hill Drive | Willits, CA 95490 | svrchairman@yahoo.com |
| Sherwood Valley Rancheria Band of Pomo Indians | Misty Cook | 190 Sherwood Hill Drive | Willits, CA 95490 | svbp.thpo@gmail.com |
| Sonoma County* | Steve Shupe | | | Steve.Shupe@sonoma-county.org |

D-7

# DISTRIBUTION LIST

| Organization | Name | Street Address | City, State, Zip | Email |
|---|---|---|---|---|
| Sonoma County | Adam Brand | | | Adam.Brand@sonoma-county.org |
| Sonoma County Alliance | Brian Ling | | | ceo@sonomacountyalliance.com |
| Sonoma County Board of Supervisors | James Gore | | | James.Gore@sonoma-county.org |
| Sonoma County Farm Bureau | Tito Sasaki | | | tito@att.net |
| Sonoma County Water Agency* | Grant Davis | | | Grant.Davis@scwa.ca.gov |
| Sonoma County Water Agency | Pam Jeane | 404 Aviation Blvd | Santa Rosa, CA 95403 | pam.jeane@scwa.ca.gov |
| Sonoma County Water Agency | Don Seymour | 404 Aviation Blvd | Santa Rosa, CA 95403 | Donald.Seymour@scwa.ca.gov |
| Sonoma County Water Agency | Brad Sherwood | | | Brad.Sherwood@scwa.ca.gov |
| Sonoma County Water Agency | David Manning | 404 Aviation Blvd | Santa Rosa, CA 95403 | david.manning@scwa.ca.gov |
| Sonoma County Water Agency | Justin Smith | | | jpsmith@scwa.ca.gov |
| Sonoma County Water Agency | Chris Delaney | | | cdelaney@scwa.ca.gov |
| Sonoma County Water Agency | Todd Schram | | | tschram@scwa.ca.gov |
| Sonoma County Water Agency | Jessica Martini-Lamb | | | jessicam@scwa.ca.gov |
| Sonoma County West Coast Watershed | Katherine Gledhill | | | kgledhill@westcoastwatershed.com |
| State Water Resources Control Board | Parker Thaler | | | parker.thaler@waterboards.ca.gov |
| State Water Resources Control Board | Joelle Geppert | | | joelle.geppert@waterboards.ca.gov |
| State Water Resources Control Board | Rebecca Fitzgerald | | | RFitzgerald@waterboards.ca.gov |
| Steiner Environmental Consulting | Park Steiner | | | parksteiner@pacific.net |
| Stillwater Sciences | Abel Brumo | | | abel@stillwatersci.com |
| Stillwater Sciences | Dennis Halligan | | | dennis@stillwatersci.com |
| Town of Scotia* | Mark Richardson | | | mrichardson@townofscotia.com |
| Town of Windsor* | Toni Bertolero | 8400 Windsor Road, #100 | Windsor, CA 95492 | tbertolero@townofwindsor.com |
| Town of Windsor | Linda Kelly | | | lkelly@townofwindsor.com |
| Town of Windsor | Paul Piazza | | | ppiazza@townofwindsor.com |
| Travel World Center | Dan York | | | dan.y@twc-ca.org |
| Trout Unlimited | Brian Johnson | | | bjohnson@tu.org |
| Trout Unlimited | Lisa Bolton | | | LBolton@tu.org |
| Trout Unlimited | Matt Clifford | | | mclifford@tu.org |
| Trout Unlimited | Chandra Ferrari | | | cferrari@tu.org |
| UC Cooperative Extension | Glenn McGourty | 890 N. Bush Street | Ukiah, CA 95482 | gtmcgourty@ucanr.edu |
| UC Davis | Peter Moyle | | | pbmoyle@ucdavis.edu |
| UC Davis | Ron Yoshiyama | | | rmyoshiyama@ucdavis.edu |
| United Winegrowers for Sonoma County | Bob Anderson | 731 South Fitch Mountain Rd | Healdsburg, CA 95448 | b.anderson@comcast.net |

D-8

# DISTRIBUTION LIST

| Organization | Name | Street Address | City, State, Zip | Email |
|---|---|---|---|---|
| US Army Corps of Engineers | Wade L. Eakle | | | Wade.L.Eakle@usace.army.mil |
| US Bureau of Land Management | David Fuller | | | dfuller@blm.gov |
| US Bureau of Land Management | Zane Ruddy | | | jruddy@blm.gov |
| US Dept. of Agriculture | Jonathan Shultz | | | jon.shultz@ca.usda.gov |
| US Fish and Wildlife Service | Steve Kramer | | | Steve_Kramer@fws.gov |
| US Fish and Wildlife Service | Nick Hetrick | | | nick_hetrick@fws.gov |
| US Forest Service | April Hargis | | | ahargis@fs.fed.us |
| US Forest Service | Frank Aebly | | | faebly@fs.fed.us |
| US Forest Service | Derrick Bawdon | | | dbawdon@fs.fed.us |
| US Forest Service | Carolyn Cook | | | cacook@fs.fed.us |
| US Forest Service | Karen Kenfield | | | kkenfield@fs.fed.us |
| US Forest Service | Brett Harvey | | | bharvey@fs.fed.us |
| US Forest Service | Dennis Smith | | | dennissmith@fs.fed.us |
| US Forest Service | Ryan Mikulovsky | | | rmikulovsky02@fs.fed.us |
| US Forest Service | Katy Rich | | | kdrich@fs.fed.us |
| US Forest Service | Victor Aguirre-Orozco | | | vaguirreorozco@fs.fed.us |
| US Forest Service | Robert Taylor | | | rgtaylor@fs.fed.us |
| US Forest Service | Hilda Kwan | | | hkwan@fs.fed.us |
| US Forest Service | Michelle Zuro-Kreimer | | | mzurokreimer@fs.fed.us |
| US Forest Service | Dawn Alvarez | | | dalvarez@fs.fed.us |
| Valley of the Moon Water District* | Dan Muelrath | P.O. Box 280 | El Verano, CA 95433 | dmuelrath@vomwd.com |
| VTN-Retired | Rick Kruger | | | krugerr@easystreet.net |
| Wailaki Tribe | Louis Hoaglin Sr. | P.O. Box 684 | Laytonville, CA 95454 | |
| Western Fishes Lamprey Project | Stewart Reid | | | WesternFishes@opendoor.com |
| Westshore Campers Association | Donna Stolz | | | donnastolz@comcast.net |
| Westshore Campers Association | Stacy Ledou | | | mortoys@comcast.net |
| Wiyot Tribe | Ted Hernandez | 1000 Wiyot Drive | Loleta, CA 95525 | ted@wiyot.us |
| Wiyot Tribe | Michelle Vassel | 1000 Wiyot Drive | Loleta, CA 95525 | michelle@wiyot.us |
| Wiyot Tribe | Tim Nelson | | | tim@wiyot.us |
| Wiyot Tribe | Eddie Koch | | | eddie@wiyot.us |
| Wiyot Tribe | Vincent DiMarzo | | | vincent@wiyot.us |
| Wiyot Tribe | Thomas Torma | | | tom@wiyot.us |
| Yuki/Wailaki | Deborah Hull | S/B 78921 Wosheth Way | Covelo, CA 95428 | Debb_hutt@yahoo.com |
| | Bob Seyms | | | bseyms@gmail.com |
| | Jason Hartwick | | | speyburn@gmail.com |
| | Dave Lucas | 2256 Rice Fork Road | | bassfishinagain@gmail.com |
| | Bobby Gaston | | | nsixty2@gmail.com |
| | Pam and Richard Respari | | | vacationista@comcast.net |
| | Susan Knopf | 460 Todd Road | Ukiah, CA 95482 | smknopf@yahoo.com |
| | Kevin Boles | | | kctgboles4@gmail.com |

## DISTRIBUTION LIST

| Organization | Name | Street Address | City, State, Zip | Email |
|---|---|---|---|---|
| | Paul Zellman | | | paul@paulzellman.com |
| | Al White | 6800 Old River Road | Ukiah, CA 95482 | alw@saber.net |
| | Don and Karol Chase | | | dkchase@comcast.net |

\* Entities that are believed to be interested in, or affected by, the NOI.

D-10

# EXHIBIT E

20190801-3000 FERC PDF (Unofficial) 08/01/2019

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Mendocino County Inland Water Agency                    Project No. 77-285
  and Power Commission
Sonoma County Water Agency
California Trout, Inc.
County of Humboldt, California

NOTICE OF CONTINUATION OF RELICENSING PROCEEDING

(August 1, 2019)

    On June 28, 2019, Mendocino County Inland Water Agency and Power
Commission; Sonoma County Water Agency; California Trout, Inc.; and the County of
Humboldt, California (NOI Parties) filed a Notice of Intent (NOI) to File an Application
for a New License for the Potter Valley Project.

    The 9.4-megawatt project is located on the Eel River and the East Branch Russian
River in Mendocino and Lake Counties, California, about 15 miles northeast of the city
of Ukiah. Project features include Lake Pillsbury, a 2,300-acre storage reservoir
impounded by Scott Dam; 106-acre Van Arsdale Reservoir, impounded by the Cape
Horn Diversion Dam; and a tunnel and penstock across a natural divide to the project's
powerhouse located in the headwaters of the Russian River Basin.

    The Potter Valley Project is currently licensed to the Pacific Gas and Electric
Company (PG&E) and the license expires on April 14, 2022. On April 6, 2017, PG&E
filed a NOI to relicense the project and a pre-application document (PAD) and initiated
the pre-filing steps of the Integrated Licensing Process (ILP). On January 25, 2019,
PG&E filed a notice of withdrawal of its NOI and PAD, indicating it was discontinuing
its efforts to relicense the project. The withdrawal became effective on February 11,
2019. On March 1, 2019, the Commission issued a Notice Soliciting Applications,
establishing a deadline of 120 days from the date of the notice (i.e., July 1, 2019) for
interested applicants, other than PG&E, to file NOIs, PADs, and requests to complete the
pre-filing stages of the licensing process.

    The NOI Parties propose to continue the ILP initiated by PG&E. According to the
proposed pre-filing process plan and schedule, the NOI Parties propose to complete a

feasibility study in April 2020, consult on the need for additional studies, and file[1] a final license application by April 14, 2022.

With this notice, we are initiating informal consultation with: (a) the U.S. Fish and Wildlife Service and/or NOAA Fisheries under section 7 of the Endangered Species Act and the joint agency regulations thereunder at 50 CFR Part 402; and (b) the State Historic Preservation Officer, as required by section 106 of the National Historic Preservation Act, and the implementing regulations of the Advisory Council on Historic Preservation at 36 CFR Part 800.

With this notice, we are designating the NOI Parties as the Commission's non-federal representative for carrying out informal consultation, pursuant to section 7 of the Endangered Species Act and section 106 of the National Historic Preservation Act.

Questions concerning this notice should be directed to Alan Mitchnick at (202) 502-6074 or alan.mitchnick@ferc.gov.

Kimberly D. Bose,
Secretary.

---

[1] The NOI Parties are proxies for a new Regional Entity that ultimately would be the license applicant for the project. The Regional Entity has not yet been formed under California law, but once formed the Regional Entity would supplant the NOI Parties in this ILP proceeding.

Document Content(s)

P-77-285 Notice of Continuation.DOCX.................................1-2

# EXHIBIT F

THIS AGREEMENT MADE AND ENTERED INTO THIS 30th day of March, 1936 by and between PACIFIC GAS AND ELECTRIC COMPANY, a California corporation (Hereinafter called Pacific), and POTTER VALLEY IRRIGATION DISTRICT, a California irrigation district (hereinafter called District),

W I T N E S S E T H  that:

WHEREAS under date of June 18 1930 Pacific's predecessor in interest, the Snow Mountain Water and Power Company, and District entered into a certain agreement (hereinafter called existing contract) wherein, amoung other things, said Snow Mountain Water and Power Company agreed to sell and deliver to District and District agreed to purchase and accept at the tailrace of said company's Potter Valley power plant certain quantities of water at a flow of not to exceed forty cubic feet persecond; and

WHEREAS under and by virtue of Permits numbered 2954 and 3635 granted it by the Division of Water Resources, State Department of Public Works, Pacifichas the right and is willing to sell and deliver to District at the tailrace of said power plant an aggregate of 19,000 acre feet of water annually; and

WHEREAS District maintains and operates two main canals leading from said tailrace to divers localities within said district and by means thereof has heretofore during each season diverted and conveyed water purchased under said existing contract to meet the requirements of said District; and

WHEREAS Pacific and District desire to cancel said existing contract and to enter into a new agreement in lieu thereof;

1.

Case: 19-30088   Doc# 9309-1   Filed: 10/15/20   Entered: 10/15/20 15:48:05   Page 66 of 90

NOW, THEREFORE, in consideration of the promises and the mutual promises of the parties hereto herein contained, it is mutually agreed by and between them as follows, to wit:

1. Said existing contract is hereby cancelled.

2. Whenever used herein the following terms shall for the purposes hereof have the following respective meanings, viz:

summer period: that period of each season from May 1st to October 15th, both inclusive;

winter period: that period of each season from October 16th to April 30th, both inclusive;

cfs: cubic feet of water per second;

acre foot: the equivalent of 0.504 cfs flowing for 24 hours.

3. Pacific will sell and deliver to District and District will purchase and accept from Pacific at a rate of flow not to exceed 50 cfs at said tailrace (a) during each summer period of the term hereof such quantity of water up to 16,660 acre feet as shall be required by District, and (b) during each winter period of the term hereof such quantity of water up to the difference brtween 19,000 acre feet and the quantity which District shall have purchased during the next preceding summer period.

4. District shall have the right and easement at its own cost and expense during the term hereof to maintain and operate, and if necessary enlarge, its said canals and intake works as now located on lands of Pacific.

5. Pacific at its own cost and expense shall maintain the existing diversionworks and water measuring facilities at the respective intakes of District's said canals and shall therewith cause accurate measurement to be made of all water delivered to District hereunder. A daily record of the quantity of water delivered to District, as

Case: 19-30088   Doc# 9309-1   Filed: 10/15/20   Entered: 10/15/20 15:48:05   Page 67 of 90

measured by said facilities shall be available at all times to both parties. Said works and measuring facilities shall be subject to inspection by District. If during the term hereof it shall become necessary or advisable so to do Pacific will at its own cost and expense replace, improve, or otherwise alter, said works and/or measuring facilities, provided that so doing will not necessitate any change in the grade of District's canals or interfere with the diversion into or conveyance of water in said canals as contemplated hereunder.

6. Should either party hereto desire to check the accuracy of said measuring facilities and notify the other party to that effect each party will forthwith appoint an engineer to represent it and the two engineers thus appointed shall check said facilities and, if error be found therein, correct same by proper calibration thereof. In the event, however, that such engineers do not agree as to whether such facilities shall be correctly measuring the flow of water passing into said canals they shall so report to their respective principals and the latter will each forthwith appoint a conpetent arbitrator and the two thus appointed shall select a third. The three arbitrators thus selected shall check said facilities and, if error shall be found therein, correct same by proper calibration thereof. The calibration agreed upon by any two of such arbitrators shall be binding upon the parties hereto until another such check thereof shall have been made and accepted. An adjustment shall be made in favor of the injured party to compensate it for incorrectmeasurements by such facilities for the period beginning thirty days prior to the date that either party shall have request4d such check and ending as of the date of such final calibration. Each party will pay the entire compensation and expenses of its own appointed engineer and/or arbitrator and in addition thereto one-half the compensation and expenses of such

third arbitrator.

7. Pacific shall at all times have complete control of the delivery of water from said tailrace into said canals but, subject to the limitations hereinafter specified, shall conform with District's written requests from time to time submitted to Pacific at its said power plant.

8. If and when during any winter period of the term hereof it shall have surplus water available therefor, as to which it shall be the sole judge, Pacific, without dedicating or intending to dedicate same to a public use therefor, but solely as an accommodation to District for use by it in preserving its said canals and for no other purpose, will deliver into said canals during such winter period without charge to District therefor such quantity of such water as the latter shall request for said purpose up to but not to exceed ten acre feet a day at an agregate rate of flow of 5 cfs or less.

9. Unless and until different rates therefor shall be fixed as hereinafter provided District will pay Pacific at the following respective rates for water so sold and delivered to it hereunder, namely:

    (a)   If delivered during any summer period $1.33 1/3 for each acre foot of the first 3,000 acre feet, and $1.25 for each acre foot in excess thereof;

    (b)   If delivered during any winter period: $1.25 for each acre foot in excess of such quantity of such surplus water as shall be delivered pursuant to paragraph 8 thereof.

At any time after the expiration of the fifth year of the term hereof and of each like period thereafter the foregoing rates may be revised by mutual agreement or failing that by decision of the Railroad Commission of the State of California on application of either party.

10. Payments due Pacific hereunder shall be made by District

Case: 19-30088    Doc# 9309-1    Filed: 10/15/20    Entered: 10/15/20 15:48:05    Page 69 of 90

in lawful money of the United States at the former's office at 245 Market Street, San Francisco, California, at the following respective times:

(a) for all water so delivered during any summer period, on or before the 1st day of December next following such period.

(b) for all water so delivered during any winter period, on or before the 1st day of June next following such period.

If District shall fail so to pay Pacific the latter may at its option cancel this agreement by giving District thirty days advance notice to that effect, and if District shall not make any such delinquent payment within said thirty days this agreement shall thereupon ipso facto terminate, and in that event all rights of District hereunder shall forthwith cease and terminate and all sums then payable to Pacific under the term hereof shall constitute a charge against District.

11. Pacific shall not be liable for failure to deliver water at the intake of either of said canals, or for any loss or detriment resulting to District, or to any water user or land owner within its boundaries by reason thereof, if such failure, loss or detriment shall be caused by inevitable accident, act of God, fire, strike, riot, war, drought, or any cause or condition (whether like or unlike those specifically enumerated) beyond the reasonable control of Pacific, or if caused by any interruption due to necessity for maintenance or repair of any of Pacific's dam, reservoirs, tunnels, pipe lines, power plant or other works or facilities used directly or indirectly by it in performing its obligations hereunder, and in this connection District agrees to indemnify Pacific and save it harmless from any and all liability with respect to any and all claims, demands or causes of action that may be made against it by any water user or land owner within said district boundaries for loss or damages arising out of or in any

5.

way connected with the conduct of Pacific with respect to the delivery, or failure of delivery, of water to District hereunder.

12. It is mutually understood that in entering into this agreement Pacific shall not thereby or as a result thereof incur any obligation to deliver water to District after the termination hereof, or of any extnesion hereof, nor shall District acquire any right or color of title in or to, or control over, any of the water or water rights or works of Pacific used in connection herewith.

13. Unless sooner terminated as herein provided, this agreement shall remain in full force and effect until April 15 1972 (the date of expiration of the license of Pacific granted said Snow Mountain Water and Power Company by the Federal Power Commission in connection with Project 77, California). District may, at its option, extend the term of this agreement for a further period of not to exceed fifty years, if Pacific, its successors and assigns, shall at that time and for such further period be in possession and control of the properties described in said license. Said option may be exercised by giving witten notice tothat effect to Pacific at any time between April 15, 1967 and April 15, 1971.

14. This agreement is entered into pursuant to order of the Railroad Commission of the State of California given through its decision numbered 28,647 rendered on the 16th day of March 1936.

Time is of the essence of all the provisions hereof.

IN WITNESS WHEREOF the parties hereto have caused these presents to be executed by their respective officers thereunto duly authorized the day and year first above written.

PACIFIC GAS & ELECTRIC COMPANY
By P   M. Downing
Its First Vice-President and General Manager
and by   J. D. Rosie
Its Assistant Secretary

# EXHIBIT G

## SECOND AMENDMENT

THIS SECOND AMENDMENT ("Second Amendment") to that certain Agreement, entered into by Pacific Gas and Electric Company, a California corporation ("PG&E") and Potter Valley Irrigation District, a California irrigation district ("PVID") (each individually a "Party") on March 30, 1936 (the "Original Agreement"), as amended by the Parties on May 1, 1939, and as its term was extended under Paragraph 13 thereof by notice from PVID to PG&E on May 3, 1967 (as amended and extended, the "Existing Agreement"), is made and entered into by the Parties as of ~~September~~ October 15, 2014.

## WITNESSETH that:

WHEREAS under the Existing Agreement, among other things, PG&E agreed to sell and deliver and PVID to purchase and receive certain quantities of water at the tailrace of PG&E's Potter Valley power plant;

WHEREAS, PG&E claims the following water rights for consumptive use by PVID, which rights supersede the rights referred to in the second recital to the Original Agreement: (i) the right to directly divert up to 340 cubic feet per second from the Eel River to the Potter Valley Tunnel for both power and irrigation under claim of pre-1914 water right, as specified in Statement of Water Diversion and Use No. 1010, with a priority of 1905; (ii) the right to divert up to 4,500 acre feet to storage in Lake Pillsbury for irrigation in Potter Valley under Water Right License No. 1191 (Application 5661, priority date: 8/15/1927); and (iii) the right to divert up to 4,908 acre feet to storage in Lake Pillsbury and to directly divert up to 40 cubic feet per second from the Eel River to the Potter Valley Tunnel, provided the combined amount of such diversion to storage and direct diversion does not exceed 4,908 acre feet, for irrigation in Potter Valley under Water Right License No. 5545 (Application 6594, priority date: 3/11/1930);

WHEREAS, the Parties agree that these combined rights as described above support PG&E's obligations to deliver up to 19,000 acre feet of water to PVID at a rate not to exceed 50 cubic feet per second as required by the Existing Agreement, provided the water is available; and

WHEREAS the Parties mutually desire to modify the Existing Agreement as provided herein;

NOW THEREFORE, in consideration of these premises, it is mutually agreed as follows, to-wit:

1.     Paragraph 9 of the Existing Agreement is hereby deleted and the following substituted in lieu thereof, viz:

Case: 19-30088    Doc# 9309-1    Filed: 10/15/20    Entered: 10/15/20 15:48:05    Page 73 of 90

"9.     District shall pay Pacific at the following rate for water so sold and delivered to it hereunder during the specified period (each the "Applicable Rate" for that period), namely:

(a)     $5.00 for each acre foot delivered beginning October 16, 2014 and continuing through April 30, 2017,

(b)     $10.00 for each acre foot delivered beginning May 1, 2017 and continuing through April 30, 2019,

(c)     $15.00 for each acre foot delivered beginning May 1, 2019 and continuing through April 30, 2022,

(d)     $20.00 for each acre foot delivered beginning May 1, 2022 and continuing through April 30, 2025; and then

(e)     Beginning May 1, 2025 and each third anniversary thereof, the Applicable Rate will be adjusted as described by the formula provided in Attachment B. A summary of the rationale for the formula is provided in Attachment A. An illustrative sample calculation using the formula is provided in Attachment C.     Neither the summary nor the illustrative sample calculation modifies or limits, nor can either be used to interpret, the formula provided in Attachment B. The values for A, B, and C used in the sample calculation as well as the calculated results for Pp, P1, P2, P3 and Pn are hypothetical and are not intended to be a forecast of future values or results. Any conflict between the summary or the sample calculation and the formula in Attachment B shall be resolved based solely on the language of Attachment B.

At any time after the expiration of the tenth year of the effective date set forth above of this Second Amendment and of each ten year period thereafter, the foregoing rates may be revised by mutual agreement, or failing that, by decision of the California Public Utilities Commission on application of either party.

2.     Paragraph 13 of the Existing Agreement is hereby deleted and the following substituted in lieu thereof, viz:

"13.     Unless sooner terminated as herein provided, this agreement shall remain in full force and effect until the later of (i) the termination of the FERC license for the Potter Valley Project in force at the time this Second Amendment is executed, which termination date is April 14, 2022, (ii) the termination of any annual license issued by FERC pending a proceeding to relicense the Potter Valley Project after that date, or (iii) the termination of the subsequent FERC license for the Potter Valley Project issued in such a relicensing proceeding, provided Pacific or any successor by law or assignee of Pacific shall at such time and for such further period be in possession and control of such FERC license and the properties comprising the Potter Valley Project. At any time at

Case: 19-30088     Doc# 9309-1     Filed: 10/15/20     Entered: 10/15/20 15:48:05     Page 74 of 90

least two (2) years before the expiration of the FERC license described in clause (iii) of this paragraph 13, either Party may by written notice to the other Party initiate negotiations with the other Party about an agreement under which PG&E would deliver water to PVID after the expiration of that license. After delivery of such notice, the Parties shall meet and discuss terms for such an agreement to satisfy the interests of each Party."

3.    A new paragraph 15 is hereby added, viz:

"15.    Unless expressly herein provided, neither party shall be liable under any legal or equitable principle for consequential or indirect damages, however caused, except under principles of indemnity or contribution in respect of third party claims only."

4.    A new paragraph 16 is hereby added, viz:

"16.    Each party shall be obligated to consult with the other prior to the release of any press release and/or other public statement only with respect to outages of facilities affecting services to the public and significant issues of public safety in an effort to reflect the interests of the parties, except to the extent such coordination is not practicable due to an urgent need to notify the public of emergency conditions or precluded by any requirement of law."

5.    A new paragraph 17 is hereby added, viz:

"17.    If requested by PVID, Pacific shall reasonably cooperate with PVID in any defense PG&E makes of its rights necessary for it to perform this agreement."

6.    A new paragraph 18 is hereby added, viz:

"18.    Pacific shall annually notify PVID when deliveries begin to be made at least partially from storage in Lake Pillsbury and when deliveries begin to be made entirely from storage in Lake Pillsbury, as well as the remaining amount of stored water available for deliveries under Pacific's Water Right Licenses No. 1191 and No. 5545. Such notification shall be made in writing, by email or by other mutually agreeable means as soon as reasonably feasible after Pacific makes such determinations."

7.    Attachments A, B and C to this Second Amendment are added as attachments to the Existing Agreement.

8.    If PG&E determines in its sole discretion that approval of this Second Amendment by the California Public Utilities Commission ("CPUC") is necessary or advisable, the Parties shall each support the rates described in this Second Amendment before the CPUC. PVID's support shall be made at times and in forms reasonably requested by PG&E and not otherwise.

Case: 19-30088    Doc# 9309-1    Filed: 10/15/20    Entered: 10/15/20 15:48:05    Page 75 of 90

IN WITNESS WHEREOF the Parties have executed this Second Amendment in duplicate.

PACIFIC GAS AND ELECTRIC COMPANY

By: _GMWilliams_

Name: _Geisha Williams_

Its: _EXEC VP of Electric Ops_

POTTER VALLEY IRRIGATION DISTRICT

By: _Kenneth Stroh_

Name: _Kenneth Stroh_

Its: _President_

Case: 19-30088    Doc# 9309-1    Filed: 10/15/20    Entered: 10/15/20 15:48:05    Page 76 of 90

# Attachment A

During negotiations between Pacific and the District it was agreed that beginning May 1, 2025, the Applicable Rate for water would be adjusted once every three years based on escalation occurring over the preceding three calendar years. The three year interval was selected to provide price stability over a several year period.

Recognizing that simply using the Consumer Price Index (CPI) for escalation would not accurately reflect the fact that the economic basis of Potter Valley agriculture is agricultural commodity values, an escalation formula was developed to equally reflect the District's agricultural commodity values and Pacific's cost of operating and maintaining the Potter Valley Project.

In order to avoid the skewing effect of a possible anomaly in commodity values or operating and maintenance costs coincidentally occurring in the third year of an adjustment period, the escalation formula is applied to each of the preceding three calendar years and a hypothetical Interim Rate ("P1", "P2" and "P3" in the formula provided in Attachment B) is determined for each of those calendar years. These three Interim Rates are then averaged over the three calendar years of the adjustment period to determine the new Applicable Rate ("Pn" in the formula provided in Attachment B) for the next three-year period.

The agricultural commodities grown in Potter Valley have varied greatly over time and there is no reason to believe that this will not be the case in the future. Therefore the District will determine, for each three calendar year adjustment period, which three commodities are most commonly produced in Potter Valley based on acreage. PVID will then calculate the aggregate annual escalation rate for these three commodities for each of the three calendar years ("A" in the formula provided in Attachment B) for use in calculating the Interim Rates, and consequently the Applicable Rate.

Concurrently, Pacific will calculate the annual escalation rate in the cost of operating and maintaining the Potter Valley Project for each of the three calendar years ("B" in the formula provided in Attachment B) for use in calculating the Interim Rates, and consequently the Applicable Rate. PG&E's General Office costs, capital costs, and FERC relicensing costs are not included in the calculation.

In order to moderate potentially large year-to-year changes in the calculated escalation of Potter Valley agricultural commodity prices or Potter Valley Project operating and maintenance costs, the parties agreed to apply a floor and ceiling to the yearly escalation values for each of A and B used in the formula provided in Attachment B, with the floor being "zero" escalation, and the ceiling being escalation equal to the change in the Consumer Price Index ("CPI"). Application of these floor and ceiling values for escalation will result in the Applicable Rate for each subsequent three year period staying the same or increasing, but never escalating faster than the CPI over that three year period.

Case: 19-30088    Doc# 9309-1    Filed: 10/15/20    Entered: 10/15/20 15:48:05    Page 77 of 90

# Attachment B

The Applicable Rates in dollars per acre foot under paragraph 9(e) of this Agreement shall be calculated effective on May 1, 2025, and on each third anniversary thereof, as follows:

$$P_n = ( P_1 + P_2 + P_3) \div 3$$

Where:

**Adjustment Period** = the three calendar year period beginning on a January 1, the first of which shall be January 1, 2022, through December 31, 2024. Each subsequent Adjustment Period shall be the three calendar years immediately after the previous Adjustment Period.

$P_n$ = The Applicable Rate effective May 1 of the calendar year immediately following an Adjustment Period, calculated based on the average of the three Interim Rates ($P_1$, $P_2$, and $P_3$) calculated as of the end of each calendar year period during that Adjustment Period)

$P_1$ = The calculated Interim Rate as of the end of the first calendar year of the Adjustment Period, expressed in dollars per acre foot

$P_2$ = The calculated Interim Rate as of the end of the second calendar year of the Adjustment Period, expressed in dollars per acre foot

$P_3$ = The calculated Interim Rate as of the end of the third calendar year of the Adjustment Period, expressed in dollars per acre foot

$$P_1 , P_2 , \text{ or } P_3 = P_p + 0.5 (A + B) P_p$$

Where:

$P_1 , P_2 , \text{ or } P_3$ = The calculated Interim Rate as of the end of the designated calendar year (years 1, 2, and 3) of an Adjustment Period, expressed in dollars per acre foot

$P_p$ = (i) for $P_1$ of the first Adjustment Period, $20.00 per acre foot, and for $P_1$ of each subsequent Adjustment Period, the Applicable Rate effective during the first calendar year of that Adjustment Period, and (ii) for $P_2$ and $P_3$, the calculated Interim Rate as of the end of the preceding calendar year expressed in dollars per acre foot.

$A$ = The change as of the end of a calendar year from the end of the preceding calendar year in the aggregated published values of three agricultural commodities grown in Potter Valley, expressed as a percentage. PVID will identify the three agricultural commodities to be used based on which commodities are most commonly produced in Potter Valley based on acreage cultivated. The commodity values will be based on published values compiled by the

{00141250.DOCX;32}Page | 6

Mendocino County Agricultural Commissioner (MCAC), or to the extent MCAC does not publish the necessary information, by the California Department of Food and Agriculture (CDFA), for Potter Valley specifically or for District One in the State of California. The aggregated value will reflect the relative acreage of each of the commodity crops in Potter Valley. PVID may change the agricultural commodities as frequently as every three years, based on changes in actual Potter Valley commodities cultivated, but the agricultural commodities and source of the values shall be the same for each of the two calendar years being used in calculating the percentage change. PVID shall timely provide PG&E with sufficient details of each such calculation to enable PG&E to reasonably validate the accuracy of the calculation.

$B$ = The change as of the end of a calendar year from the end of the preceding calendar year in PG&E's cost of operating and maintaining its Potter Valley Project, expressed as a percentage. The cost of operating and maintaining the Potter Valley Project for each of the two years used in calculating the percentage change shall be determined by PG&E based on data in its cost accounting system. Such cost shall include PG&E's total annual expense cost directly attributable to the Potter Valley Project, including labor, materials, contracts, and other expenses, but excluding expenses for PG&E's General Office, capital costs, and FERC relicensing costs. The categories of costs shall be the same for each of the two calendar years being used in calculating the percentage change. PG&E shall timely provide PVID with sufficient details of each such calculation to enable PVID to reasonably validate the accuracy of the calculation.

$C$ = The change as of the end of a calendar year from the end of the previous calendar year in the Consumer Price Index (all Urban Consumers) U.S. City Average (CPI-U, Not Seasonally Adjusted), expressed as a percentage.

And:

If for any calendar year the calculated value of $C$ is less than zero, then $C$ shall be adjusted to = 0 for calculating $P_1$, $P_2$, or $P_3$ based on that year.

If for any calendar year the calculated value of $A$ is less than zero, then $A$ shall be adjusted to = 0 for calculating $P_1$, $P_2$, or $P_3$ based on that year. If for any calendar year the calculated value of $A$ is greater than $C$, then $A$ shall be adjusted to = $C$ for calculating $P_1$, $P_2$, or $P_3$ based on that year.

If for any calendar year the calculated value of $B$ is less than zero, then $B$ shall be adjusted to = 0 for calculating $P_1$, $P_2$, or $P_3$ based on that year. If for any calendar year the calculated value of $B$ is greater than $C$, then $B$ shall be adjusted to = $C$ for calculating $P_1$, $P_2$, or $P_3$ based on that year.

## Sample Calculation of Applicable Rate Beginning 2025 and Thereafter Using Formula From Attachment B

| Year | A (%) | Adjusted A(%) | B (%) | Adjusted B(%) | C (%) | Adjusted C(%) | $P_p$ ($/af) | $P_{1,2,3}$($/af) | $P_n$ ($/af) |
|------|-------|---------------|-------|---------------|-------|---------------|--------------|-------------------|--------------|
| 2022 | -3.08 | 0.00 | -1.87 | 0.00 | 3.40 | 3.40 | 20.00 | 20.00 | |
| 2023 | 5.29 | 2.80 | 26.67 | 2.80 | 2.80 | 2.80 | 20.00 | 20.56 | |
| 2024 | -10.39 | 0.00 | -18.05 | 0.00 | 1.60 | 1.60 | 20.56 | 20.56 | |
| 2025 | -0.93 | 0.00 | -4.13 | 0.00 | 2.30 | 2.30 | 20.56 | 20.56 | 20.37333 |
| 2026 | 7.55 | 2.70 | -3.83 | 0.00 | 2.70 | 2.70 | 20.56 | 20.84 | |
| 2027 | 2.11 | 2.11 | -8.46 | 0.00 | 3.40 | 3.40 | 20.84 | 21.06 | |
| 2028 | 0.00 | 0.00 | 12.50 | 3.20 | 3.20 | 3.20 | 21.06 | 21.39 | 20.81815 |
| 2029 | -3.09 | 0.00 | 19.81 | 2.80 | 2.80 | 2.80 | 21.39 | 21.69 | |
| 2030 | 7.98 | 3.80 | 19.76 | 3.80 | 3.80 | 3.80 | 21.69 | 22.52 | |
| 2031 | 0.66 | 0.00 | 14.48 | 0.00 | -0.40 | 0.00 | 22.52 | 22.52 | 21.86827 |
| 2032 | -1.79 | 0.00 | -9.41 | 0.00 | 1.60 | 1.60 | 22.52 | 22.52 | |
| 2033 | -3.10 | 0.00 | 11.69 | 3.20 | 3.20 | 3.20 | 22.52 | 22.88 | |
| 2034 | 5.30 | 2.10 | 14.24 | 2.10 | 2.10 | 2.10 | 22.88 | 23.36 | 22.63777 |
| 2035 | 2.00 | 1.50 | -8.14 | 0.00 | 1.50 | 1.50 | 23.36 | 23.53 | |

NOTE: The values for A, B, and C used in the sample calculation as well as the calculated results for Pp, P1, P2, P3 and Pn are hypothetical and are provided only for illustrative purposes. These values and results are not intended to be a forecast of future values or results.

**PG&E Gas and Electric**
**Advice Filing List**
**General Order 96-B, Section IV**

AT&T
Albion Power Company
Alcantar & Kahl LLP
Anderson & Poole
BART
Barkovich & Yap, Inc.
Bartle Wells Associates

Braun Blaising McLaughlin, P.C.
California Cotton Ginners & Growers Assn
California Energy Commission
California Public Utilities Commission
California State Association of Counties
Calpine
Casner, Steve
Cenergy Power
Center for Biological Diversity

City of Palo Alto
City of San Jose
Clean Power
Coast Economic Consulting
Commercial Energy
Cool Earth Solar, Inc.
County of Tehama - Department of Public Works
Crossborder Energy
Davis Wright Tremaine LLP
Day Carter Murphy

Defense Energy Support Center
Dept of General Services
Division of Ratepayer Advocates

Douglass & Liddell
Downey & Brand
Ellison Schneider & Harris LLP
G. A. Krause & Assoc.
GenOn Energy Inc.
GenOn Energy, Inc.
Goodin, MacBride, Squeri, Schlotz & Ritchie
Green Power Institute
Hanna & Morton
In House Energy
International Power Technology
Interstate Gas Services, Inc.
K&L Gates LLP
Kelly Group
Linde
Los Angeles County Integrated Waste Management Task Force
Los Angeles Dept of Water & Power
MRW & Associates
Manatt Phelps Phillips
Marin Energy Authority
McKenna Long & Aldridge LLP
McKenzie & Associates
Modesto Irrigation District

Morgan Stanley
NLine Energy, Inc.
NRG Solar

Nexant, Inc.
Occidental Energy Marketing, Inc.
Office of Ratepayer Advocates

OnGrid Solar
Pacific Gas and Electric Company
Praxair
Regulatory & Cogeneration Service, Inc.
SCD Energy Solutions
SCE
SDG&E and SoCalGas

SPURR
Seattle City Light
Sempra Energy (Socal Gas)
Sempra Utilities
SoCalGas
Southern California Edison Company
Spark Energy
Sun Light & Power
Sunshine Design

Tecogen, Inc.
Tiger Natural Gas, Inc.
TransCanada
Utility Cost Management
Utility Power Solutions
Utility Specialists
Verizon

Water and Energy Consulting
Wellhead Electric Company
Western Manufactured Housing Communities Association (WMA)
YEP Energy

# EXHIBIT H

## RESOLUTION NO. 18-131

## RESOLUTION OF THE MENDOCINO COUNTY BOARD OF SUPERVISORS REGARDING THE FUTURE OF THE POTTER VALLEY PROJECT

WHEREAS, the Potter Valley Project is an inter-basin diversion of water from the upper main stem of the Eel River into the Russian River of water originating in the watersheds of Lake and Mendocino Counties; and,

WHEREAS the political boundary of Mendocino County encompasses land in both the Eel River and Russian River watersheds, thereby conferring on Mendocino County a unique role and responsibility for the protection of beneficial uses in both watersheds; and,

WHEREAS, the Notice of Appropriation of Water originating in the upper Eel River and flowing within Mendocino County was posted in July 1905 and then officially recorded as a water right by W. W. Van Arsdale in the same year for the purpose of: 1) diverting and carrying the water into Potter Valley and thereby generating electric power to the valley and beyond to Ukiah; and 2) the use of the water for irrigation in Potter Valley and other places downstream within the Russian River watershed; and,

WHEREAS, the Potter Valley Project began operation in 1908 with the completion of Cape Horn Dam which impounded water in Van Arsdale reservoir, initially operating only as a 'run of the river' diversion, which was changed in 1922 when Scott Dam was built, thereby forming Lake Pillsbury, which allowed winter rains and snow melt to be impounded and stored for release in the late spring, summer and fall; and,

WHEREAS, stored water in Lake Pillsbury has historically been released and diverted into the East Branch of the Russian River in the spring, summer and fall since 1922, thus providing the water supply for multiple beneficial uses from Potter Valley along the East Branch of the Russian River and thence along the Russian River in Mendocino and Sonoma Counties all the way to the sea, including diversion of said water in Sonoma County to serve beneficial uses within northern Marin County; and,

WHEREAS, the original water rights for what is now known as the Potter Valley Project were secured by the Eel River Power and Irrigation Company, later transferred to Snow Mountain Water and Power Company, and then transferred to Pacific Gas and Electric Company; and,

WHEREAS, the Hydropower License is regulated by the Federal Energy Regulatory Commission for the Potter Valley Project (FERC P-77); and,

WHEREAS, the Potter Valley Irrigation District has had a contract for a portion of the diverted water since 1926 and appropriative water rights have been subsequently granted by the California State Water Resources Control Board from the tailrace of the Potter Valley Powerhouse downstream all along the Russian River to the sea, and;

WHEREAS, in Potter Valley three small privately owned hydroelectric plants also rely on the tailrace waters from the Potter Valley Project to generate renewable and clean energy, and;

WHEREAS, since the completion of Coyote Valley Dam in 1959 the water released from the Potter Valley Project has been impounded and stored in Lake Mendocino and used for irrigation of crops, as well as domestic, municipal and industrial water supplies and has also provided significant recreational and environmental benefits, and also supports a hydroelectric project at Lake Mendocino; and,

WHEREAS, the direct and indirect economic value of this water supply annually derived from agricultural production within Mendocino County has been estimated at $775 million with additional significant economic benefits in Sonoma County; and,

WHEREAS, the number of people who benefit directly or indirectly from the Potter Valley Project is estimated to exceed 500,000; and,

WHEREAS, the current license for the Potter Valley Project required additional studies to guide future releases of stored water; and,

WHEREAS, subsequent consultations between the Federal Energy Regulatory Commission and the National Marine Fisheries Service pursuant to Section 7 of the Federal Endangered Species Act culminated in the November 26, 2002 issuance of a Biological Opinion which included a Reasonable and Prudent Alternative requiring an estimated fifteen percent reduction in the diversion; and,

WHEREAS, an unintended consequence of implementation of the aforementioned Reasonable and Prudent Alternative, produced by the National Marine Fisheries Service and incorporated into the Federal Energy Regulatory Commission's Final Order for the Potter Valley Project in 2004, has resulted in, on average, a fifty percent reduction of the flows diverted from the Eel River into the Russian River, far more than the agreed upon fifteen percent reduction stated in the Reasonable and Prudent Alternative, thereby causing serious impacts to water storage in Lake Mendocino; and,

WHEREAS, current operations of the Potter Valley Project assure that all minimum flows required under the Reasonable and Prudent Alternative produced by the National Marine Fisheries Service, and incorporated into the Federal Energy Regulatory Commission license in 2004 for the Potter Valley Project, are constantly monitored and strictly maintained by the licensee, Pacific Gas and Electric Company; and,

WHEREAS, the impact of the Potter Valley Project on the Eel River has been, and continues to be studied resulting in extensive ongoing efforts to mitigate adverse impacts, however numerous other impacts throughout the entire Eel River watershed are known, including logging, roads, commercial fishing, illegal diversions, droughts and floods, which require mitigation; and,

WHEREAS, over the recent years of drought a Potter Valley Drought Working Group was formed by Pacific Gas and Electric Company, which included all stakeholders, to manage the water releases from water stored in Lake Pillsbury in order to maintain threatened runs of Federally listed species of anadromous fish that had come into the Eel River and become stranded due to the dry conditions; and,

WHEREAS, natural inflow upstream of Scott Dam in late summer and fall is sometimes non-existent, but releases of stored water from Lake Pillsbury assure that releases below Cape Horn Dam exceed naturally occurring flow rates, thereby benefiting fisheries in the Eel River as well as other downstream beneficial uses; and,

WHEREAS, the Federal Energy Regulatory Agency Hydropower License for the Potter Valley Project (FERC P-77) expires April 14, 2022 and the Project licensee, Pacific Gas and Electric Company, announced on May 10, 2018 its intention to sell the Project; and,

WHEREAS, the Potter Valley Project provides the water supply for communities all along the Russian River in Mendocino County, thereby supporting the agricultural economy, the quality of life, and the health of the Russian River's aquatic resources, including three species of salmonids listed as endangered or threatened, and has provided environmental benefits in the Russian River that are required under the Federal Endangered Species Act; and

WHEREAS, the State of California has strongly supported having more water storage facilities in the State with the goal of providing water supply security and reliability and water quality, and for beneficial uses including domestic, municipal, industrial and agricultural water supplies, and also to improve the health of our river systems; and,

WHEREAS, stored water from both Lake Pillsbury and Lake Mendocino support beneficial uses that are critical to the environmental and economic well-being of the counties of Humboldt, Lake, Mendocino, Sonoma and Marin.

NOW, THEREFORE, BE IT RESOLVED that the Mendocino County Board of Supervisors adopts the following position statement regarding the future of the Potter Valley Project:

1. The Potter Valley Project provides a critically important segment of our water supply infrastructure, and because of this fact, the County of Mendocino supports, and will protect the continued diversion of water from the Eel River through the Potter Valley Project at the current rates, amounts and timing;

2. The County of Mendocino will continue to actively participate in the hydropower re-licensing process administered by the Federal Energy Regulatory Commission and work in good faith with all stakeholders in both the Eel River and Russian River watersheds who share the goals of preserving historic beneficial uses while enhancing riverine conditions that will result in attaining sustainable populations of listed species of concern in both rivers;

3. The County of Mendocino supports the Mendocino County Inland Water and Power Commission's desire to acquire the Potter Valley Project from the Pacific Gas and Electric Company and to continue producing hydroelectric power under the Federal Energy Regulatory Commission license conditions;

4. The County of Mendocino supports regional fisheries restoration efforts and believes that it is incumbent upon all affected stakeholders to work diligently in a collaborative process to protect our shared water and public trust resources in both the Russian and the Eel Rivers.

The foregoing Resolution introduced by Supervisor Brown seconded by Supervisor McCowen, and carried this 21st day of August, 2018, by the following vote:

AYES:       Supervisors Brown, McCowen, Croskey, Gjerde and Hamburg
NOES:       None
ABSENT:    None

WHEREUPON, the Chair declared said Resolution adopted and SO ORDERED.

DAN HAMBURG, Chair
Mendocino County Board of Supervisors

ATTEST:     CARMEL ANGELO
            Clerk of the Board

Deputy

I hereby certify that according to the provisions of Government Code section 25103, delivery of this document has been made.

APPROVED AS TO FORM:
KATHARINE ELLIOTT, County Counsel

BY:     CARMEL ANGELO
        Clerk of the Board

Deputy

# EXHIBIT I

# ASSIGNMENT AGREEMENT

This Assignment Agreement (this "**Agreement**"), effective as of October 16, 2019 (the "**Effective Date**"), made by and between Potter Valley Irrigation District, a California irrigation district ("**Assignor**"), and Mendocino County Inland Water and Power Commission, a joint powers authority ("**Assignee**").

## RECITALS

A.      Assignor is party to a March 30, 1936 agreement with Pacific Gas &Electric("**PG&E**") for the right to delivery of up to 19,000 acre feet of water at a rate not to exceed 50 cubic feet per second from the Potter Valley Project;

B.      Pursuant to a Second Amendment to the March 30, 1936 agreement, the Agreement remains in full force and effect until the later of expiration of the existing Federal Energy Regulatory Commission ("**FERC**") license on April 14, 2022, the termination of any annual license issued after April 14, 2022 or the termination of the subsequent FERC license for the Potter Valley Project; and

C.      On April 6, 2017, PG&E filed a notice of intent to relicense the Potter Valley Project and a pre-application document;

D.      On January 25, 2019, PG&E filed a notice of withdrawal of its notice of intent and pre-application document with FERC, indicating it was discontinuing its efforts to relicense the Potter Valley Project.

E.      Assignor holds a claim against PG&E for anticipatory breach because by discontinuing its efforts to seek a new FERC license for the Potter Valley Project, PG&E has effectively repudiated its promise to delivery water to Assignor through the term of any annual license issued after April 14, 2022 or through a subsequent FERC license for the Potter Valley Project (the "**Anticipatory Breach Claim**").  Assignor holds a claim against PG&E for waste due to PG&E's failure to provide adequate maintanence of the Project ( the "**Waste Claim**"). Assignor also reserves the right to bring other claims or to use other legal theories that fall within the common nucleus of claims listed above (the **"Other Claims"**).   Collectively these are the Assignor's "**Claims**":

NOW, THEREFORE, in consideration of the mutual covenants, terms, and conditions set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## AGREEMENT

1.      Assignment. Effective as of the Effective Date, Assignor hereby assigns to Assignee all of Assignor's right, title, and interest in and to its ownership interests in the Claims(the "**Assigned Interest**"), including without limitation, all rights afforded under law to assert the Assigned Interest in any forum and the right to assert the claim upon actual breach(the "**Assignment**").

15882(o)-3

2.    <u>Acceptance by Assignee</u>.  Assignee hereby: (a) accepts theassignment of all of Assignor's right, title, and interest in and to the Assigned Interest.

3.    <u>Miscellaneous.</u>

(a)    <u>Further Assurances</u>. Assignor and Assignee each agree to promptly execute and deliver any additional instrument or other document and to take such other actions as the other party reasonably requests to evidence and effect the terms herein.

(b)    <u>Entire Agreement; Recitals</u>.  This Agreement constitutes the entire contract between the parties hereto with regard to the subject matter hereof.  The recitals are hereby incorporated by reference into this Agreement.

(c)    <u>Amendments and Modifications</u>.  This Agreement may not be modified or amended in any manner other than by a written agreement signed by the party to be charged.

(d)    <u>Heirs, Successors, and Assigns</u>. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns.

(e)    <u>Governing Law</u>. Each covenant and agreement contained in this Agreement and all matters arising out of this Agreement shall be governed by, and shall be construed according to, the laws of the State of California, without regard to its conflict of law rules.

(f)    <u>No Waiver</u>. No waiver of any breach or condition of this Agreement shall be deemed to be a waiver of any other subsequent breach or condition, whether of like or different nature.

(g)    <u>Severability</u>. If any provision of this Agreement contravenes any law and such contravention would thereby invalidate this Agreement, then such provision shall be read and construed in a manner to give effect to the intention of the parties to the fullest extent possible permitted by applicable law.

(h)    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original for all purposes, and all such counterparts shall together constitute but one and the same instrument.  A signed copy of this Agreement delivered by either facsimile or email shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Signature Page Follows]*

1588264-1

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first set forth above in all applicable capacities.

**ASSIGNOR:**

POTTER VALLEY IRRIGATION
DISTRICT, a California irrigation district

By: *Kenneth Strah*
Name:
Title: *President*

**ASSIGNEE:**

MENDOCINO COUNTY INLAND
WATER AND POWER COMMISSION

By: *Carre F F Paoli*
Name:
Title: *Chair*

*(Signature Page to Assignment Agreement)*

1588261 1