WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
New York, NY 10153-0119
Tel:    (212) 310-8000
Fax:    (212) 310-8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel:    (415) 496-6723
Fax:    (650) 636-9251

*Attorneys for Debtors and*
*Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>(Lead Case) (Jointly Administered)<br><br>**REORGANIZED DEBTORS' OPPOSITION TO MOTION TO ALLOW/DEEM TIMELY LATE FILING OF PROOF OF CLAIM BY CSAA INSURANCE EXCHANGE**<br><br>[Related to Docket No. 9140]<br><br>Date:    October 28, 2020<br>Time:   10:00 a.m. (Pacific Time)<br>Place:  **(Telephonic or Video Only)**<br>          United States Bankruptcy Court<br>          Courtroom 17, 16th Floor<br>          San Francisco, CA 94102 |

Case: 19-30088    Doc# 9329    Filed: 10/21/20    Entered: 10/21/20 15:28:54    Page 1 of 11

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Opposition (the "**Opposition**") to the *Motion to Allow/Deem Timely Late Filing of Proof of Claim by CSAA Insurance Exchange* [Docket No. 9140] (the "**Motion**"), filed by CSAA Insurance Exchange ("**CSAA**" or "**Movant**"), which seeks authority from the Court to deem timely Proof of Claim No. 106473 (the "**Untimely Claim**"), a subrogation claim unrelated to any wildfire, which was filed nearly a year after the passage of the Bar Date (as defined below). In support of the Opposition, the Reorganized Debtors submit the *Declaration of Hal Smeltzer in Support of Reorganized Debtors' Opposition to Motion to Allow/Deem Timely Late Filing of Proof of Claim by CSAA Insurance Exchange* ("**Smeltzer Decl**.") and the *Declaration of Peter J. Benvenutti in Support of Reorganized Debtors' Opposition to Motion to Allow/Deem Timely Late Filing of Proof of Claim by CSAA Insurance Exchange* ("**Benvenutti Decl**.") filed concurrently herewith.

## I.     PRELIMINARY STATEMENT

As the Court is aware, the Debtors' procedures for providing notice of the Bar Date in these Chapter 11 Cases, including their multifaceted media plan for providing supplemental and constructive notice to known and unknown claimants, comprised one of the largest and most comprehensive notice and media campaigns implemented in chapter 11 history. Over 6.5 million notices of the Bar Date were mailed by the Debtors to potential creditors and parties in interest. *See* Dkt. Nos. 4687 and 4688.

As the Court is further aware, to account for the large number of potential *pro se* and unrepresented holders of Fire Victim Claims,[1] claimants in these Chapter 11 Cases were provided a considerably longer period of time to file proofs of claim than is typical afforded in most chapter 11 cases in this District. Indeed, general claimants were provided approximately 113 days from the date the Court entered the Bar Date Order (as defined below), and approximately 265 days from the

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8048] (as may be further modified, amended or supplemented from time to time, and together with any exhibits or schedules thereto, the "**Plan**").

Petition Date (as defined below) to file proofs of claim in these Chapter 11 Cases. While this deadline was extended on two separate occasions only for certain classes of creditors (non-governmental Fire Victim Claims and certain claimants that purchased or acquired the Debtors' publicly held debt and equity securities), the Bar Date for general claims such the Untimely Claim was never extended [Docket Nos. 4672 and 5943].

Movant, a sophisticated and well-represented party that timely filed approximately twenty other proofs of claim in these Chapter 11 Cases, seeks to have its proof of claim deemed timely filed notwithstanding the fact that ***Movant filed its Motion more than eleven months after the passage of the Bar Date and more than a year after first being advised by the Debtors that it would need to file a proof of claim to preserve and pursue its subrogation claim.*** The Court should not countenance such actions and reward sophisticated parties that ignore their rights and Court deadlines especially where, as here, Movant was clearly provided actual notice of the Bar Date (multiple times over, in fact) and has not, and cannot, present any evidence of excusable neglect. Accordingly, for the reasons set forth below, the Reorganized Debtors respectfully request the Court deny the Motion.

## II. BACKGROUND

### A. The Fire at the Hemingway Property and Investigation

On January 17, 2019, a fire occurred at a cabin located at 24257 Sugarpine Drive, Sugarpine, California (the "**Sugarpine Property**"). (Smeltzer Decl. ¶ 4.) Hal Smeltzer, a Senior Claims Investigator in the Law-Claims Unit of the Law Department of the Utility, investigated the fire the same day. (Smeltzer Decl. ¶ 4.) During a severe windstorm, a huge (100-plus foot tall) tree was uprooted by the wind and fell across the Utility's power lines located approximately sixty (60) feet away on the opposite side of the street. (Smeltzer Decl. ¶ 4.) A transformer serving four dwellings failed. (Smeltzer Decl. ¶ 4.) One dwelling—the Sugarpine Property—caught fire. (Smeltzer Decl. ¶ 4.) Mr. Smeltzer's preliminary evaluation was that the immediate cause of the fire was faulty wiring, or faulty grounding of the wiring, in the Sugarpine Property, which made it incapable of withstanding the power surge from the transformer triggered by the tree falling across the Utility's

distribution line, and that as a result the Utility was not responsible for the loss or was, at most, only partially liable.  (Smeltzer Decl. ¶ 4.)

CSAA's Motion represents that, on January 18, 2019, the claim was forwarded to CSAA's subrogation department for review and potential subrogation recovery from the Debtors.  (Brown Decl. ¶ 6.)[2]  The claim was thereafter assigned to Laura Young, a member of CSAA's subrogation unit.  (Brown Decl. ¶ 7.)

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases for relief under chapter 11 of the Bankruptcy Code.  Prior to the Effective Date (as defined below), the Debtors continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Bankruptcy Court confirmed the Plan on June 20, 2020.  *See* Dkt. No. 8053.  The Effective Date of the Plan occurred on July 1, 2020 (the "**Effective Date**").  *See* Dkt. No. 8252.

On March 25, 2019, Laura Brown, a senior subrogation specialist with CSAA, sent an e-mail to the CSAA subrogation team, including Ms. Young, that provided a link to the case website maintained by Prime Clerk LLC ("**Prime Clerk**"), the claims and noticing agent appointed in these Chapter 11 Cases.  *See* Dkt. No. 245.  In her e-mail, Ms. Brown directed the CSAA subrogation team to file claims through the website.  (Brown Decl. ¶ 8; Benvenutti Decl., Ex. A.)

**B.	The Bar Date and the Noticing Procedures**

On July 1, 2019, the Court entered the *Order (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors* ("**Bar Date Order**") [Docket No. 2806].  The Bar Date Order fixed October 21, 2019 (the "**Bar Date**") as the last day to file proofs of claim in these Chapter 11 Cases.[3]  This gave general claimants approximately 110 days from the date the Court entered the Bar Date Order (and approximately 265

---

[2] "Brown Decl." refers to the Declaration of Laura Brown submitted in support of the Motion.

[3] The Bar Date later was extended solely with respect to unfiled, non-governmental Fire Claimants to December 31, 2019 [Dkt. No. 4672]; and subsequently with respect to certain claimants that purchased or acquired the Debtors' publicly held debt and equity securities and may have claims against the Debtors for rescission or damages to April 16, 2020 [Dkt. No. 5943].

days from the Petition Date) to file proofs of claim in these Chapter 11 Cases—a considerably longer period than is typical of most chapter 11 cases filed in this District. *See* L.B.R. 3003-1 ("Unless otherwise ordered by the Court, and except as provided in Bankruptcy Rule 3003(c)(3), proofs of claim or interest shall be filed pursuant to Bankruptcy Rule 3003 and shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to 11 [U.S.C.] § 341(a)); June 26, 2020 Hr'g Tr. at 111:25-112:6 ("[E]ven in the first PG&E case, we even shortened it to even a shorter time . . . . [T]here is a culture of doing it more quickly.").

Pursuant to the Bar Date Order, on July 8, 2019, the Debtors, through Prime Clerk, served the *Notice of Deadline for Filing Proofs of Claim in Chapter 11 Cases* (the "**Standard Bar Date Notice**") by first class mail on, among other parties, all parties actually known to the Debtors as having claims or potential claims against either of the Debtors (but excluding holders of Fire Victim Claims). [Certificate of Service of Herb Baer, Dkt. No. 3159] (the "**Bar Date Certification**")[4]

As set forth in the Bar Date Certification, Prime Clerk, on behalf of the Debtors, served approximately 88 copies of the Standard Bar Date Notice on CSAA, either directly or through counsel representing CSAA in various actions. Prime Clerk also served approximately 61 copies of the Standard Bar Date Notice, either directly or through counsel, on CSAA's parent, AAA Insurance. (Benvenutti Decl., Ex. B, pp. 5-16.) Approximately 93 of these notices were sent to a single mailing address shared by CSAA and AAA. This is the same mailing address used by Ms. Young's subrogation claims team. (*See* Smeltzer Decl., Ex. A, identifying Laura Young's address as P.O. Box 24523, Oakland, CA; Benvenutti Decl., Ex. A, identifying Laura Brown's address as P.O. Box 24523, Oakland, CA and Elaine Moeller as a member of the subrogation claims team; Benvenutti Decl., Ex. B, p. 5, listing Ms. Moeller's address as P.O. Box 24523, Oakland, CA).

---

[4] The Bar Date Certification is nearly 2500 pages long. Over 2450 of those pages list the names and addresses of the parties served with the Bar Date Notice. An excerpt of the Bar Date Certification including the pages listing address entries for CSAA or its parent, AAA Insurance, is attached as Exhibit B to the Benvenutti Declaration.

1    CSAA would eventually file at least twenty timely proofs of claim in these Chapter 11 Cases

2  for subrogation claims on behalf of other insureds.[5]

3        **C.      CSAA's Correspondence with the Debtors**

4        On July 8, 2019, Laura Young of CSAA sent an e-mail about the fire, with a preliminary

5  damage estimate, to the Utility's Law-Claims Unit.  (Smeltzer Decl. ¶ 5.)  This is the first notice

6  PG&E had received of a possible subrogation claim by CSAA relating to the Sugarpine Property.

7  (Smeltzer Decl. ¶ 5.)  Debbie Whisenhunt of the Utility's Law-Claims Unit initially received the e-

8  mail, spoke with Ms. Young about it, and, because the incident had already been investigated by Mr.

9  Smeltzer and occurred in territory that he is responsible for, referred the matter to Mr. Smeltzer to

10  respond to CSAA.  (Smeltzer Decl. ¶ 5.)

11        The following day, July 9, 2019, Mr. Smeltzer responded to Ms. Young by e-mail.  (Smeltzer

12  Decl. ¶ 6, Ex. A.)  Mr. Smeltzer reminded Ms. Young and CSAA of the Debtors' bankruptcy and

13  stated that CSAA would need to file a proof of claim in the Chapter 11 Cases in order to preserve its

14  Claim.  (Smeltzer Decl. ¶ 6, Ex. A.)  Mr. Smeltzer's e-mail also stated:

15              Information and documents related to the Company's Chapter 11 cases,
              including information regarding how to file a claim, will be available on a
16              website administered by our claims agent, at
              https://restructuring.primeclerk.com/pge.  In addition, you can call the
17              Restructuring Hotline at 844-339-4217 (for calls originating outside of the
              U.S. please dial +1 929-333-8977) or you can send an email to
18              pgeinfo@primeclerk.com.

19        (Smeltzer Decl. ¶ 6, Ex. A.)  Mr. Smeltzer's next communication with CSAA occurred on

20  November 26, 2019.  On that date, Mr. Smeltzer received a voicemail from Jason Calvert of CSAA

21  purporting to follow up on a demand letter.  (Smeltzer Decl. ¶ 7.)  Mr. Calvert informed Mr. Smeltzer

22  that Ms. Young was handling the claim for CSAA and asked that he contact her. (Smeltzer Decl.

23  ¶ 7.)  Mr. Smeltzer presumed "demand letter" to refer to Ms. Young's July 8 e-mail, because to the

24  best of his recollection that is the only prior written communication that he received from Ms. Young

25  or anyone else at CSAA relating to the Sugarpine Property or any losses associated with it.  (Smeltzer

26  Decl. ¶ 7.)  Mr. Smeltzer called Ms. Young the same day and left a voicemail message informing her

27  ───────────────────

28  [5] *See* Proof of Claim Nos. 1008, 1608, 1458, 1953, 2018, 2285, 2453, 2580, 2717, 2884, 3207, 3375, 3378, 3484, 3562, 3566, 3569, 3575, 7132, 16771, 55609.

that CSAA's claim was subject to PG&E's bankruptcy, and that CSAA had to file a claim in the bankruptcy case; and if it had failed to do so CSAA had possibly lost its chance to recover from PG&E, and there was nothing more that he could do. (Smeltzer Decl. ¶ 7.)

Between November 26, 2019 and July 20, 2020—*i.e.*, for nearly eight months—the Debtors did not receive any communication from CSAA regarding the Untimely Claim, and CSAA made no effort to remedy its failure to file a timely proof of claim, despite having been repeatedly noticed by the Debtors of the Bar Date. On July 20, 2020, Mr. Smeltzer received a request from counsel for CSAA to preserve evidence regarding the Sugarpine Property fire. (Smeltzer Decl. ¶ 8.) Approximately one week later, and more than a year after the Debtors first advised CSAA that it needed to file a claim and over nine months after the Bar Date had passed, CSAA's counsel sent a letter to the Reorganized Debtors requesting a stipulation to permit the filing of a late claim. The Reorganized Debtors considered but ultimately did not agree to do so.

CSAA, through its counsel, filed the Untimely Claim (Proof of Claim No. 106473) on September 14, 2020. CSAA filed this Motion on September 25, 2020, approximately eleven months after the passage of the Bar Date.

## III. BASIS FOR RELIEF REQUESTED

### A. *Pioneer* Factors

The test for determining "excusable neglect" is at bottom an equitable one, taking into account all of the relevant circumstances surrounding the party's omission. *See Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Cases in this Circuit analyze excusable neglect by weighing or balancing the relevant factors, including the following four:

1. the danger of prejudice to the debtor,
2. the length of the delay and its potential impact on judicial proceedings,
3. the reason for the delay, including whether it was within the reasonable control of the movant,
4. whether the movant acted in good faith.

*See id*. at 395; *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004); *Shong-Ching Tong v. Sandwell (In re Sandwell)*, No. 04-1084, 2005 Bankr. LEXIS 3396, *15-16 (B.A.P. 9th Cir. June 13, 2005). Weighing of the *Pioneer* factors is left to the "discretion of the [bankruptcy] court in every

case." *Pincay*, 389 F.3d at 860; *see also Gurrola v. Lone Star Sec. & Video, Inc. (In re Gurrola)*, No. 04-1182, 2005 Bankr. LEXIS 3382, at *7 (B.A.P. 9th Cir. June 20, 2005) (same). A trial court should consider the nonexclusive *Pioneer* factors, but can weigh the importance of each factor as it deems appropriate in each case. *See Christiansen v. Weber (In re Christiansen)*, No. 07-1120, 2007 Bankr. LEXIS 4823, *12 (B.A.P. 9th Cir. Nov. 5, 2007). "Balancing these factors is not a mathematical test, and the court is not obligated to give equal weight to them." *In re Pacific Gas & Elec. Co.*, 331 B.R. 915, 919 (Bankr. N.D. Cal. 2005). Even in instances where a debtor has confirmed a plan of reorganization that intends to pay its creditors in full with interest, a court may allow a party's length of delay and poor reasons for such delay to ultimately oppose a finding of excusable neglect. *See In re Pac. Gas & Elec. Co.*, 311 B.R. 84, 90-91 (Bankr. N.D. Cal. 2004).

**B.** **CSAA Has Not Shown Grounds for Excusable Neglect**

Here, the Reorganized Debtors submit that CSAA's substantial delay in filing the proof of claim should not be excused in light of the following circumstances:

- On March 25, 2019, Ms. Young, a member of CSAA's subrogation unit, was informed by her supervisor, Laura Brown, that subrogation claims against the Debtors had to be filed "through the [PG&E bankruptcy] website," and was provided with a link to the website to do just that. This demonstrates that Movant knew it would be required to file a proof of claim, and how to do so, more than three months before the Bar Date Order was even entered.

- On July 8, 2019, Ms. Young was informed directly by one of the Debtors' representatives that CSAA needed to file a proof of claim in the Chapter 11 Cases in order to preserve its claim. Mr. Smeltzer's July 9, 2019 e-mail to Ms. Young then provided a link to the case website maintained by Prime Clerk, which would have provided Ms. Young all the information she needed to file a proof of claim in the Chapter 11 Cases, including the Bar Date, which had been approved by the Court only a week prior.

- On July 8, 2019, CSAA was served with dozens of copies of the Standard Bar Date Notice, providing Movant with actual notice more than three months in advance of the Debtors' Bar Date.

- CSAA and its parent, AAA Insurance, share the same P.O. Box address in Oakland. Approximately 93 copies of the Bar Date Notice were mailed to CSAA or AAA at that P.O. Box. CSAA provides no evidence that Ms. Young's supervisors or colleagues or others within the CSAA organization, or any of the many managers or colleagues who were unquestionably aware of the Bar Date because they had received

the Notice, made an effort to communicate that information to Ms. Young or other CSAA employees who might be unaware of the Bar Date.

- Indeed, CSAA offers no evidence that it had in place any procedure or mechanism to assure that its employees were informed of important deadlines like the Bar Date that are relevant to their performance of their duties.

- On November 26, 2019, Mr. Smeltzer returned a call from CSAA, received earlier that day, by leaving a voicemail with Ms. Young and again informing her that CSAA's claim was subject to the claims process in these Chapter 11 Cases, that CSAA had to file a proof of claim, and that if it had failed to do so, CSAA possibly lost its chance to recover from PG&E. Rather than promptly filing a proof of claim and seeking to have it deemed timely, CSAA waited for another eight months (more than nine months after the Bar Date) before first approaching the Reorganized Debtors with an informal request to consent to the late filing of this claim.

- CSAA's assertion that Ms. Young was unaware of the Bar Date and would have filed a claim if she had been aware of the deadline is the foundation of its contention that the failure to file a timely claim was excusable. That assertion is not sworn to by Ms. Young, but rather is related in Ms. Brown's declaration. Brown Decl., ¶ 13. It is hearsay [F.R.Evid. 801(c))] and inadmissible as evidence [F.R.Evid. 802]. The Reorganized Debtors object on hearsay grounds to the entirety of paragraph 13 of the Brown Declaration, with the exception of the first sentence.

Even assuming CSAA can establish that Ms. Young was unaware of the Bar Date, given the nature of CSAA's business, it is not reasonable that CSAA would fail to inform all members of its subrogation claims team of the Bar Date as soon as the Bar Date Order was entered, and CSAA offers no evidence why it failed to provide such notice to Ms. Young, its employee responsible for filing this claim. CSAA filed over twenty other timely proofs of claim, which is compelling evidence that CSAA was aware of the Bar Date and the need to timely file proofs of claim. *See In re Pacific Gas & Elec. Co.*, 331 B.R. 915, 919 (Bankr. N.D. Cal. 2005) (creditor's filing of unrelated timely proofs of claim suggest creditor was timely aware of bankruptcy filing).

The Motion seeks to deem timely a claim filed nearly one year after the Bar Date, nearly eighteen months after the CSAA agent in charge of the file first became aware of the Chapter 11 Cases and the need to file a proof of claim, and eight months after that agent was informed that the Bar Date had passed. The Reorganized Debtors have been accommodating toward numerous creditors and individuals that have filed motions seeking relief to amend claims or deem timely claims filed after their applicable bar date, based on a showing of excusable neglect. However,

CSAA, as a sophisticated and represented party that filed multiple other claims, has provided no evidence or explanation that would justify or support such a showing. Courts have previously stated that the sophistication of a party weighs against a finding of excusable neglect. *See In re Motors Liquidation Co.*, 598 B.R. 744, 758 (Bankr. S.D.N.Y. 2019) ("[Movant's] status as a sophisticated creditor further proves that it cannot characterize its failure to file a proof of claim as excusable neglect."); *In re AMR Corp.*, 492 B.R. 660 (Bankr. S.D.N.Y. 2013) ("As a sophisticated party holding a substantial claim against Debtors and that is represented by counsel, the failure to monitor the docket weighs heavily against a finding of excusable [neglect]"); *In re Petroleum Prod. Mgmt., Inc.*, 240 B.R. 407, 416 (Bankr. D. Kan. 1999) ("Based upon the evidence before the court, the court finds that [movant] is a sophisticated creditor. Such a finding weighs against [movant] in the court's balancing of the excusable neglect factors.").

Moreover, CSAA has not provided any reason or explanation for why it failed to file a proof of claim after it was first informed of the Bar Date by the Debtors in July 2019 or after Ms. Young was informed by the Debtors in November 2019 that the Bar Date had passed. Instead CSAA waited another eight months after that November communication before resuming its pursuit of this claim, a further delay for which CSAA has offered no explanation, much less a reasonable or satisfactory one. Courts in this Circuit have denied requests to allow late filed claims where the delay in filing the claim was substantial. *See Harvest v. Castro*, 531 F.3d 737, 746-47 (9th Cir. 2008) (holding that a "substantial" delay of 64 days in a connection with a habeas corpus petition weighed against finding excusable neglect); *Williams v. iE, Inc. (In re iE, Inc.)*, No. 19-1307, 2020 Bankr. LEXIS 1808, *18 (B.A.P 9th Cir. June 22, 2020) (six month delay in filing proof of claim "not insignificant").

Furthermore, while these are solvent debtor cases, Movant is mistaken when it states that there would be no prejudice to the Reorganized Debtors should the Court grant the Motion. As the Bankruptcy Court for the Southern District of New York stated when denying a similar request in the *General Motors* chapter 11 case: "The prejudice to the Debtors is not traceable to the filing of any single additional claim but to the impact of permitting exceptions that will encourage others to seek similar leniency. Allowing even a single late claim risks inspiring similar efforts from creditors who also missed the bar date." *In re Motors Liquidation Co.*, 598 B.R. at 758 (internal citations

omitted). If the Bar Date is to be meaningful, the Court should enforce it here, and not excuse CSAA's late-filed proof of claim.

WHEREFORE the Reorganized Debtors respectfully request entry of an order (i) denying the Motion, and (ii) granting the Reorganized Debtors such other and further relief as the Court may deem just and appropriate.

Dated: October 21, 2020

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

*/s/ Peter J. Benvenutti*
Peter J. Benvenutti

*Attorneys for Debtors and Reorganized Debtors*