WEIL, GOTSHAL & MANGES LLP
Richard K. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
New York, NY 10153-0119
Tel: (212) 310-8000
Fax: (212) 310-8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
Fax: (650) 636-9251

*Attorneys for Debtors and
Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).* | Case Nos. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>**MOTION FOR ENTRY OF AN ORDER EXTENDING DEADLINE FOR THE REORGANIZED DEBTORS TO OBJECT TO CLAIMS**<br><br>Date: November 17, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: **(Telephonic or Video Only)**<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>**Objection Deadline:**<br>November 10, 2020, 4:00 pm (PT) |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), in accordance with Section 7.1 of the Plan[1], sections 105(a) and 1142 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), extending the deadline established under the Plan for the Reorganized Debtors to object to Claims by one hundred eighty (180) days, through and including June 26, 2021, without prejudice to the Reorganized Debtors' right to seek additional extensions thereof. In support of the Motion, the Reorganized Debtors submit the Declaration of Robb McWilliams, filed concurrently herewith.

---

[1] Capitalized terms used but not herein defined have the meanings ascribed to such terms in the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8048] (as it may be amended, modified, or supplemented and together which any exhibits or schedules thereto, the "**Plan**").

## I. PRELIMINARY STATEMENT

Following the commencement of these Chapter 11 Cases, creditors filed or had listed in the Debtors' schedules of liabilities approximately 22,440 Claims asserting over $68.4 billion in liabilities.[2] The Reorganized Debtors and their professionals have diligently evaluated and reconciled tens of thousands of Claims filed in the Chapter 11 Cases, and have made tremendous progress in the claims reconciliation process in the four months since the Effective Date. Thus far, the Reorganized Debtors have been able to successfully expunge, reduce through settlement, or otherwise resolve approximately 7,200 Proofs of Claims asserting approximately $50.7 billion in Claims against the Debtors—representing approximately 74% of the Claims asserted in these Chapter 11 Cases—and have made distributions on account of approximately 3,400 Claims, totaling approximately $24.1 billion.[3] Much of the Reorganized Debtors' progress in the claims reconciliation process has been without contest before this Court, and the Reorganized Debtors hope and intend to continue in that fashion.

Notwithstanding this progress, approximately 15,200 Claims asserting approximately $17.7 billion remain unresolved (collectively, the "**Remaining Claims**"). The Reorganized Debtors expect many of the Remaining Claims to be some of the most fact-specific and time-consuming to resolve and are likely to include, among other things, Claims arising out of or relating to property damage, personal injury and commercial disputes, tax claims, Subordinated Securities Claims, complex trade claims, lien claims, customer claims, protective claims and regulatory claims.

The Reorganized Debtors respectfully request that the deadline to object to Claims under the Plan, which is currently set to expire on December 28, 2020 (the "**Current Objection Deadline**"), be extended one hundred eighty (180) days, through and including June 26, 2021, without prejudice to the Reorganized Debtors' right to seek additional extensions thereof. The Reorganized Debtors submit that such relief will benefit all parties in interest because, among other reasons, it will provide

---

[2] These approximations exclude Claims listed in the Debtors' schedules as contingent, unliquidated, and/or disputed, as well as asserted Fire Victim Claims and Subrogation Wildfire Claims.

[3] This amount excludes the cash transfers made pursuant to the Plan on the Effective Date to the Fire Victim Trust of more than $5 billion and to the Subrogation Wildfire Trust of approximately $11 billion.

the Reorganized Debtors with additional time to attempt to resolve the Remaining Claims consensually, without having to burden the Court with litigation or incur the related costs and expenses. Absent the relief requested, the Reorganized Debtors would be forced to rush to object to the Remaining Claims at this time in order to prevent a potential windfall to some Claimants as a result of the "deemed allowance" of such Claims under the Plan. Accordingly, the Reorganized Debtors respectfully submit that the relief requested herein is necessary and warranted to allow them to continue the necessary work of resolving the Claims filed against their estates.

## II. JURISDICTION

This Court has jurisdiction to consider these issues pursuant to 28 U.S.C. sections 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. section 157(b). Venue is proper before the Court pursuant to 28 U.S.C. sections 1408 and 1409.

## III. BACKGROUND

On January 29, 2019, the Debtors commenced voluntary cases for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California. Prior to the Effective Date, the Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On July 1, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors* [Docket No. 2806] (the "**Bar Date Order**"). The Bar Date Order set October 21, 2019 (the "**Bar Date**") as the deadline to file proofs of claim (each, a "**Proof of Claim**") for prepetition claims (as defined in section 101(5) of the Bankruptcy Code), including all claims of

Fire Claimants, Wildfire Subrogation Claimants, Governmental Units, customers, secured claims and priority claims against either of the Debtors. The Bar Date was later extended solely with respect to unfiled, non-governmental Fire Claimants to December 31, 2019 [Docket No. 4672]; and subsequently with respect to certain Claimants that purchased or acquired the Debtors' publicly held debt and equity securities and may have claims against the Debtors for rescission or damages to April 16, 2020 [Docket No. 5943].

On June 20, 2020, this Court entered the Order confirming the Plan [Docket No. 8053] (the "**Confirmation Order**"). The Plan became effective on July 1, 2020 [Docket No. 8252] (the "**Effective Date**"). Pursuant to Section 7.1 of the Plan (as approved by Paragraph 31 of the Confirmation Order), the Reorganized Debtors may object to Claims until the later of (i) one-hundred and eighty (180) days after the Effective Date (*i.e.*, December 28, 2020) and (ii) such later date as may be fixed by the Bankruptcy Court for cause shown. Plan § 7.1.

On June 30, 2020, the Court entered the *Order Approving (A) Procedures for Filing Omnibus Objections to Claims and (B) the Form and Manner of the Notice of Omnibus Objections* [Docket No. 8228] (the "**Omnibus Objection Procedures Order**"). On September 25, 2020, the Court entered the *Order Approving ADR and Related Procedures for Resolving General Claims* [Docket No. 9148] (the "**ADR Procedures Order**"). The ADR Procedures Order approved General Claims Procedures (as defined therein) that allow: (i) General Claimants (*i.e.*, holders of claims other than holders of Fire Victim Claims, Subrogation Wildfire Claims, or Subordinated Securities Claims) to submit, by mail or via a secure online portal, information necessary to allow the Reorganized Debtors to evaluate their claims and develop settlement proposals for General Claimants; and (ii) the parties to exchange settlement offers or engage in standard or abbreviated forms of mediation to resolve General Claims. The General Claims Procedures were designed to work together and along with the procedures set forth in the Omnibus Objection Procedures Order to form a comprehensive and efficient pre-litigation approach to resolve General Claims.[4]

---

[4] On September 1, 2020, the Reorganized Debtors filed the *Motion to Approve Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* [Docket No. 8964] (the "**Securities ADR Motion**"). The Securities ADR Motion seeks approval of, among other things, procedures that facilitate the potential settlement of Subordinated Securities Claims (as defined in the Securities ADR

## IV. THE REORGANIZED DEBTORS' CLAIMS RECONCILIATION PROCESS

The Debtors began the process of gathering and consolidating information relating to their liabilities when preparing their schedules and statements of financial affairs long before any Proofs of Claim were filed in these Chapter 11 Cases. By the Bar Date, more than 22,440 Proofs of Claim had been filed against the Debtors, totaling approximately $68.4 billion in the aggregate. This excludes approximately 86,000 Fire Victim Claims and Subrogation Wildfire Claims, which are *not* covered by this Motion and will be resolved by the Fire Victim Trust and the Subrogation Wildfire Trust, respectively, in accordance with the Plan.[5] Between the Effective Date and the date hereof, the Reorganized Debtors have successfully expunged, reduced through settlement, or otherwise resolved approximately 7,200 Claims asserted for approximately $50.7 billion. This amount represents approximately 74% of the Claims asserted in these Chapter 11 Cases. Since the Effective Date, the Reorganized Debtors have made distributions on approximately 3,400 Claims, totaling approximately $24.1 billion. The reconciliation, resolution and distributions to date have required extensive efforts of a large team of advisors, attorneys, and the Reorganized Debtors' personnel. Thorough and careful review and reconciliation of all Claims is required to address the multitude of adjustments that may be required, including, but not limited to, the disallowance of duplicative Claims, reductions to Claims in connection with cure or other authorized payments in satisfaction of asserted amounts, negotiated reductions to inflated or unsubstantiated Claims, the disallowance of contingent and unliquidated Claims and the reclassification of Claims which assert amounts under an incorrect priority. This requires extensive review and communication between the Reorganized Debtors' personnel and their professionals.

The Reorganized Debtors have filed twenty-four Omnibus Objections thus far during the Chapter 11 Cases. Through the prosecution of the Omnibus Objections, approximately 1,900 Claims have been modified, disallowed and/or expunged, reducing the amounts asserted against the Debtors

---

Motion) without the need for expensive and protracted litigation on the merits. The Securities ADR Motion is currently set for hearing on November 17, 2020.

[5] In addition, the relief requested in this Motion does not impact or impair the rights of any holder of a Claim that, pursuant to the express terms of the Plan and the Confirmation Order, is entitled to pursue its Claim against the Reorganized Debtors as if the Chapter 11 Cases had not been commenced.

by approximately $21.8 billion. In addition, approximately 1,000 additional Claims are currently subject to pending Omnibus Objections, which seek to further reduce the asserted Claims pool by an additional approximately $500 million. Furthermore, the Reorganized Debtors anticipate filing Omnibus Objections to approximately 3,200 additional Claims asserting approximately $970 million prior to the date of the hearing on this Motion.

       The Debtors and Reorganized Debtors have undertaken extensive efforts to consensually resolve certain Claims through negotiated settlements. Approximately 1,400 Claims have been resolved pursuant to executed settlement agreements, reducing the asserted Claims by approximately $740 million. The Reorganized Debtors continue to pursue negotiated settlements and have, in fact, extended settlement offers which, if accepted, will resolve an additional 190 Claims, reducing the asserted Claims by approximately $62 million.

       The Debtors and Reorganized Debtors have also undertaken extensive efforts both prior to and after the Effective Date to proactively contact Claimants, on a formal and informal basis, for additional information to assist the Reorganized Debtors in their efforts to reconcile claims and avoid unnecessarily burdening the Court with discovery requests and additional Omnibus Objections. As part of this effort, the Debtors and Reorganized Debtors sent informal information request letters to approximately 2,000 Claimants requesting additional information to facilitate the Debtors' review of certain Claims where little or no information was filed as a part of a Proof of Claim. As of the date hereof, the Reorganized Debtors have also sent formal information requests pursuant to the ADR Procedures Order to approximately 200 Claimants. In addition to the formal information requests described above, the Debtors and Reorganized Debtors have initiated outreach to specific Claimants, as needed, in connection with their ongoing claims reconciliation efforts.

       All of this work has been done while the Reorganized Debtors and their professionals have been engaged in a number of other time consuming and complicated matters since the Effective Date, including, among other things, (i) litigating seven pending appeals of the Confirmation Order and several other discrete appeals; (ii) litigating several different matters before the Court relating to, among other things, the resolution of the Subordinated Securities Claims; (iii) briefing and arguing initial legal oppositions to the request for allowance and payment of an administrative expense claim

filed by Elliott Management Corporation and certain other noteholders; (iv) continuing to work to resolve the remaining Cure Disputes and other objections relating to the assumption or rejection of executory contracts and unexpired leases under the Plan; (v) negotiating several stipulations with Claimants to allow various litigation matters to proceed to liquidation; and (vi) coordinating with the Fire Victim Trust regarding Fire Victim Claims that have been channeled to the Fire Victim Trust and responding to inquires in connection thereto.

As of the date hereof, approximately 15,200 Remaining Claims asserting approximately $17.7 billion remain outstanding. The Remaining Claims are the most fact-specific and are likely to be the most time-consuming to resolve. They include, among other things, Claims arising from property damage, personal injury and commercial disputes, Subordinated Securities Claims, tax claims, complex trade claims, lien claims, customer claims, protective claims and regulatory claims.

V. **BASIS FOR RELIEF REQUESTED**

   A. **The Court Has the Authority to Extend the Current Objection Deadline**

The Court has the express authority to extend the Current Objection Deadline, and cause exists for it to do so. Section 7.1 of the Plan (as approved by Paragraph 31 of the Confirmation Order) provides that the Current Objection deadline may be extended by the Court for cause shown. Plan § 7.1. This provision anticipates and provides the necessary authority for the Motion.

Even in the absence of express authority, Bankruptcy Rule 9006(b) provides in relevant part that "when an act is required or allowed to be done at or within a specified period . . . by order of [the] court, the court for cause shown may at any time in its discretion . . . order the period enlarged . . . ." Fed. R. Bankr. P. 9006(b). The Plan and Confirmation Order provide that the Court retains jurisdiction over "all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code." Confirmation Order ¶ 78; Plan § 11.1. Finally, the Plan also provides that the Court retains jurisdiction for, *inter alia*, the following purposes:

> (d) To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claims; …[and]

> (k) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation[.]

Plan § 11.1(d) and (k).  These provisions underscore the Court's authority to extend the Current Objection Deadline.

Indeed, the Plan's express authority to extend the Current Objection Deadline is consistent with the Court's general authority under sections 105(a) and 1142(b) of the Bankruptcy Code to issue orders necessary for the consummation of the Plan or to carry out the provisions of the Bankruptcy Code.  *See,* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."); 11 U.S.C. § 1142(b) ("The court may direct the debtor . . . to perform any other act . . . that is necessary for the consummation of the plan."); *see also Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 609 (2d Cir. 2007) ("Section 105(a) grants broad equitable power to the bankruptcy courts to carry out the provisions of the Bankruptcy Code so long as that power is exercised within the confines of the Bankruptcy Code."); *Nobel Grp., Inc. v. Bank (In re Nobel Grp., Inc.)*, 529 B.R. 284, 290-91 (Bankr. N.D. Cal. 2015) (quoting *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 165 (3d Cir. 2004) ("Post-confirmation jurisdiction is assumed by statute and rule:  11 U.S.C. § 1142(b) authorizes the bankruptcy court to 'direct' the debtor and any other necessary party... to perform any other act ... that is necessary for the consummation of the plan").

Finally, the Court has the inherent power "'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  This initial request to extend the Current Objection Deadline is in line with relief granted in chapter 11 cases of similar size.  *In re Lehman Brothers Holdings Inc.,* Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2008), Docket Nos. 58842, 54122, 50165, 41286 (extending claims objection deadline four times, for a total of six years); *In re Motors Liquidation Corp.*, Case No. 09-50026 (Bankr. S.D.N.Y. June 1, 2009), Docket Nos. 10938, 11546, 12092, 12364, 12499, 12610 (extending claims objection deadline six times, for a total of nearly three years); *In re MF Global Holdings Ltd., et al.,* Case No. 11-15059 (Bankr. S.D.N.Y. Oct. 31,

2011), Docket Nos. 2290, 2247, 2200, 2160, 2102, 2028, 1869 (extending claims objection deadline seven times, for a total of two and a half years); *In re American Airlines*, Case No. 11-15463 (Bankr. S.D.N.Y. Nov. 29, 2011), Docket Nos. 12254, 12042 (extending claims objection deadline twice, for a total of 237 days).

### B. Good Cause Exists to Extend the Current Objection Deadline

The Reorganized Debtors have acted diligently and persistently to reconcile the immense number of Claims asserted in these Chapter 11 Cases. To date, the Reorganized Debtors have reconciled over 7,200 Claims with asserted amounts of $50.7 billion, representing approximately 74% of the total population of Claims. As discussed above, in large part, the Remaining Claims are among the most fact-specific and are likely to be the most time-consuming to resolve. Because of the nature of the issues involved, the rate of resolution for the Remaining Claims may not be commensurate with the rate of resolution thus far. The Reorganized Debtors believe that the requested extension of one hundred eighty (180) days is required and reasonable in light of the circumstances, but that additional time may be necessary for certain claims in the future.

Extension of the Claims Objection Deadline will benefit all creditors and parties in interest. It will allow the Reorganized Debtors to continue to engage in meaningful negotiations to resolve Claims consensually, obviating the need to file objections. Resolving a Claim without a formal objection benefits both the holder of the Remaining Claim and the Reorganized Debtors' other stakeholders because of the avoidance of the burden, cost, and expense of litigation. Further, if the Claims Objection Deadline is not extended, the Reorganized Debtors will be compelled to divert their resources to supplement any pending objections to the Remaining Claims and file new objections to those Remaining Claims that have not yet been objected to. If the requested relief were not granted, the Reorganized Debtors would have two choices, neither of which is in their best interests. The Reorganized Debtors would either need to forego filing meritorious objections, thus creating a windfall for holders of the Remaining Claims, or file wasteful prophylactic Omnibus Objections shortly before the Current Objection Deadline elapses to preserve the Reorganized Debtors' rights. This would be inefficient and burdensome for the Reorganized Debtors and the Court, and inconvenient for holders of the Remaining Claims.

Extending the Current Objection Deadline will not prejudice holders of the Remaining Claims because such an extension is contemplated by the Plan. Whether or not the Current Objection Deadline is extended, holders of the Remaining Claims will have a full and fair opportunity to be heard if and when an objection is litigated.

For these reasons, the Reorganized Debtors submit that extending the Current Objection Deadline through and including June 26, 2021, without prejudice to seek additional extensions thereof is appropriate under the circumstances.

**VI. NOTICE**

Notice of this Motion will be provided to: (i) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (ii) all counsel and parties receiving electronic notice through the Court's electronic case filing system; and (iii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Reorganized Debtors respectfully submit that no further notice is required. No previous request for the relief sought herein has been made by the Reorganized Debtors to this or any other Court.

WHEREFORE the Reorganized Debtors respectfully request entry of the Proposed Order granting (i) the relief requested herein, and (ii) such other and further relief for the Reorganized Debtors as the Court may deem just and appropriate.

Dated: October 27, 2020  **WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

*/s/ Tobias S. Keller*
Tobias S. Keller

*Attorneys for Debtors and Reorganized Debtors*