WEIL, GOTSHAL & MANGES LLP
Richard K. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
New York, NY 10153-0119
Tel:   (212) 310-8000
Fax:   (212) 310-8007

*Attorneys for Debtors and
Reorganized Debtors*

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel:   (415) 496-6723
Fax:   (650) 636-9251

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

In re:

**PG&E CORPORATION,**

- and -

**PACIFIC GAS AND ELECTRIC
COMPANY,**

Debtors.

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

* *ALL PAPERS SHALL BE FILED IN THE
LEAD CASE, NO. 19-30088 (DM).*

Case Nos. 19-30088 (DM) (Lead Case)
(Jointly Administered)

**DECLARATION OF ROBB MCWILLIAMS
IN SUPPORT MOTION FOR ENTRY OF
AN ORDER EXTENDING DEADLINE FOR
THE REORGANIZED DEBTORS TO
OBJECT TO CLAIMS**

Date:   November 17, 2020
Time:   10:00 a.m. (Pacific Time)
Place:  **(Telephonic or Video Only)**
       United States Bankruptcy Court
       Courtroom 17, 16th Floor
       San Francisco, CA 94102

**Objection Deadline:
November 10, 2020, 4:00 pm (PT)**

1    I, Robb C. McWilliams, hereby declare that the following is true and correct to the best of my

2    knowledge, information, and belief:

3         1.    I am a Managing Director at the firm of AlixPartners, LLP ("**AlixPartners**"), which is

4    an affiliate of both AlixPartners, LLC and AP Services, LLC, ("**APS**"), which provided interim

5    management services to Pacific Gas and Electric Corporation and Pacific Gas and Electric Company, as

6    debtors and reorganized debtors (collectively, the "**Debtors,**" or the "**Reorganized Debtors**") in the

7    above-captioned chapter 11 cases (the "**Chapter 11 Cases**").  I submit this Declaration in support of the

8    *Motion for Entry of an Order Extending Deadline for the Reorganized Debtors to Object to Claims* (the

9    "**Motion**"),[1] filed contemporaneously herewith.

10        2.    I am responsible for overseeing the case management component of AlixPartners'

11   assignment to assist the Reorganized Debtors with various matters related to these Chapter 11 Cases.

12   My responsibilities include the efforts by AlixPartners, in coordination with the Reorganized Debtors,

13   to review and assess the validity of all claims asserted against the Debtors, other than Fire Victim Claims

14   and Subrogation Wildfire Claims which are *not* covered by the Motion and will be resolved by the Fire

15   Victim Trust and the Subrogation Wildfire Trust, respectively, in accordance with the Plan.  I am

16   generally familiar with the Reorganized Debtors' day-to-day operations, financing arrangements,

17   business affairs, and books and records.  Except as otherwise indicated herein, all facts set forth in this

18   Declaration are based upon my personal knowledge, the knowledge of other APS professionals working

19   under and alongside me on this matter, my discussions with the Reorganized Debtors' personnel, the

20   Reorganized Debtors' various other advisors and counsel, and my review of relevant documents and

21   information prepared by the Reorganized Debtors.  If called upon to testify, I would testify competently

22   to the facts set forth in this Declaration.  I am authorized to submit this declaration on behalf of the

23   Reorganized Debtors.

24        3.    The AlixPartners team under my supervision has been actively involved in the claims

25   review and reconciliation process since shortly after the filing of these Chapter 11 Cases.  AlixPartners

26   initially assisted the Debtors in the preparation of their bankruptcy schedules based on the Debtors'

---

27   [1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in
     the Motion.

28

books and records.  AlixPartners has coordinated with the Debtors in reconciling and reviewing filed proofs of claim with claims reflected in the Debtors' schedules and books and records.  AlixPartners has developed and maintains a claims reconciliation database and various data management applications that are used by the Reorganized Debtors and AlixPartners to validate claims as well as identify claims that are invalid in whole or in part, and the appropriate grounds for objection to such claims.  AlixPartners is now supporting, and will continue to support, the efforts of the Reorganized Debtors and their counsel to resolve disputed claims, including by formal objections as necessary.

4.      Following the commencement of these Chapter 11 Cases, creditors filed or had listed in the Debtors' schedules of liabilities approximately 22,440 Claims asserting over $68.4 billion in liabilities.  This excludes Claims listed in the Debtors' schedules as contingent, unliquidated, and/or disputed, as well as approximately 86,000 asserted Fire Victim Claims and Subrogation Wildfire Claims.

5.      Thus far, the Reorganized Debtors have successfully expunged, reduced through settlement, or otherwise resolved approximately 7,200 Proofs of Claims asserting approximately $50.7 billion in Claims against the Debtors—representing approximately 74% of the Claims asserted in these Chapter 11 Cases—and have made distributions on account of approximately 3,400 Claims, totaling approximately $24.1 billion.[2]

6.      Approximately 15,200 Claims asserting approximately $17.7 billion remain unresolved as of today's date.  The Reorganized Debtors expect many of the Remaining Claims to be fact-specific and time-consuming to resolve and are likely to include, among other things, arising from property damage, personal injury and commercial disputes, Subordinated Securities Claims, tax claims, complex trade claims, lien claims, customer claims, protective claims and regulatory claims.

7.      The reconciliation, resolution and distributions to date have required extensive efforts of a large team of advisors, attorneys, and the Reorganized Debtors' personnel.  Thorough and careful review and reconciliation of all Claims is required to address the multitude of adjustments that may be required, including, but not limited to, the disallowance of duplicative Claims, reductions to Claims in

---

[2] This amount excludes the cash transfers made pursuant to the Plan on the Effective Date to the Fire Victim Trust of more than $5 billion and to the Subrogation Wildfire Trust of approximately $11 billion.

connection with cure or other authorized payments in satisfaction of asserted amounts, negotiated reductions to inflated or unsubstantiated damage Claims, the disallowance of contingent and unliquidated Claims and the reclassification of Claims which assert amounts under an incorrect priority. This requires extensive review and communication between the Reorganized Debtors' personnel and their professionals.

8. The Reorganized Debtors have filed twenty-four Omnibus Objections thus far during the Chapter 11 Cases. Through the prosecution of the Omnibus Objections, approximately 1,900 Claims have been modified, disallowed and/or expunged, reducing the amounts asserted against the Debtors by approximately $21.8 billion. In addition, approximately 1,000 additional Claims are currently subject to pending Omnibus Objections, which seek to further reduce the asserted Claims pool by an additional approximately $500 million. Furthermore, the Reorganized Debtors anticipate filing Omnibus Objections to approximately 3,200 additional Claims asserting approximately $970 million prior to the date of the hearing on this Motion.

9. The Debtors and Reorganized Debtors have undertaken extensive efforts to consensually resolve certain Claims through negotiated settlements. Approximately 1,400 Claims have been resolved pursuant to executed settlement agreements, reducing the asserted Claims by approximately $740 million. The Reorganized Debtors continue to pursue negotiated settlements and have, in fact, extended settlement offers which, if accepted, will resolve an additional 190 Claims, reducing the asserted Claims by approximately $62 million.

10. The Debtors and Reorganized Debtors have also undertaken extensive efforts both prior to and after the Effective Date to proactively contact Claimants, on a formal and informal basis, for additional information to assist the Reorganized Debtors in their efforts to reconcile claims and avoid unnecessarily burdening the Court with discovery requests and additional Omnibus Objections. As part of this effort, the Debtors and Reorganized Debtors sent informal information request letters to approximately 2,000 Claimants requesting additional information to facilitate the Debtors' review of certain Claims where little or no information was filed as a part of a Proof of Claim. As of the date hereof, the Reorganized Debtors have also sent formal information requests pursuant to the ADR Procedures Order to approximately 200 Claimants. In addition to the formal information requests

1 described above, the Debtors and Reorganized Debtors have initiated outreach to specific Claimants, as

2 needed, in connection with their ongoing claims reconciliation efforts.

3       11.     I am informed and believe that the Reorganized Debtors and their professionals have been

4 engaged in other time-consuming and complicated matters since the Effective Date, including, among

5 other things, (a) litigating seven pending appeals of the Confirmation Order and several other discrete

6 appeals; (b) litigating several different matters before the Court relating to, among other things, the

7 resolution of the Subordinated Securities Claims; (c) briefing and arguing initial legal oppositions to the

8 request for allowance and payment of an administrative expense claim filed by Elliott Management

9 Corporation and certain other noteholders; (d) continuing to work to resolve the remaining Cure Disputes

10 and other objections relating to the assumption or rejection of executory contracts and unexpired leases

11 under the Plan; (e) negotiating several stipulations with Claimants to allow various litigation matters to

12 proceed to liquidation; and (f) coordinating with the Fire Victim Trust regarding Fire Victim Claims that

13 have been channeled to the Fire Victim Trust and responding to inquires in connection thereto.

14       I declare under penalty of perjury, as set forth in 28 U.S.C. § 1746, that the foregoing is true and

15 correct to the best of my knowledge, information, and belief.  Executed this twenty-seventh day of

16 October, 27, 2020, in Dallas, Texas.

/s/ Robb McWilliams
_____
Robb McWilliams

17

18

19

20

21

22

23

24

25

26

27

28