Isaac M. Pachulski (CA Bar No. 62337)
Debra I. Grassgreen (CA Bar No. 169978)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
Email: dgrassgreen@pszjlaw.com

Eric Seiler (admitted *pro hac vice*)
Jason C. Rubinstein (admitted *pro hac vice*)
Michael S. Palmieri (admitted *pro hac vice*)
FRIEDMAN KAPLAN SEILER AND ADELMAN LLP
7 Times Square
New York, NY 10036-6516
Telephone (212) 833-1103
Facsimile (212) 373-7903
Email: eseiler@fklaw.com

*Attorneys for Securities Claimant*
*Baupost Group Securities, L.L.C.*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br>*\* All papers shall be filed in the lead case, No. 19-30088 (DM)* | Chapter 11<br><br>Case No. 19-30088 (DM)<br><br>(Jointly Administered)<br><br>**OBJECTION OF BAUPOST GROUP SECURITIES, L.L.C. TO SECURITIES LEAD PLAINTIFF'S MOTION TO APPLY BANKRUPTCY RULE 7023 AND CERTIFY A LIMITED CLASS**<br><br>Date: November 17, 2020<br>Time: 11:00 a.m. (Pacific Time)<br>Place: Video conference |

Baupost Group Securities, L.L.C. ("**Baupost**"), on behalf of itself and as trading nominee for certain funds managed by The Baupost Group, L.L.C. that are the beneficial owners of certain of the Debtors' equity securities at issue herein, hereby submits this objection (the "**Objection**") to the Public Employees Retirement Association of New Mexico's ("**PERA**") Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class [Dkt. No. 9152] (the "**Motion**"). Baupost is a

substantial holder of Securities Claims[1]—specifically claims in Class 10A-II under the conformed Plan—having purchased (net of sales) over 18 million shares of PG&E Corporation ("**PCG**") common stock during the putative class period and having filed Rescission or Damage Claim Proofs of Claim on April 15, 2020. *See* Claim Nos. 100269 and 100309.

Baupost objects to PERA's Motion to certify a ***mandatory*** class of Securities Claimants under FED. R. CIV. P. 23(b)(1).[2] "Rule 23's requirements must be interpreted in keeping with . . . the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997) (quoting 28 U.S.C. § 2072(b)). The Motion disregards this unmistakable statutory instruction.

Certifying a mandatory, no-opt out class would deny Baupost, along with other Securities Claimants, its due process right to litigate on its own behalf and divest it of its fundamental right to be represented by counsel of its choice. In view of the obvious due process concerns manifested by mandatory class actions, *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999), Rule 23 only permits mandatory classes in exceptional circumstances, which—contrary to PERA's arguments—are not present here. The Court should not certify a mandatory class under Rule 23(b)(1)(A) because allowing Securities Claimants to opt out creates no risk of inconsistent adjudications. Nor is certification appropriate under Rule 23(b)(1)(B). PERA has failed to meet its burden of demonstrating that this is a limited fund case. It has also failed to demonstrate that permitting Securities Claimants to opt out would otherwise "impair or impede" other claimants' rights.

Baupost, along with other institutional Securities Claimants, is perfectly capable of prosecuting its claims independently, represented by counsel of its own choice, whom it has entrusted to protect its legal interests. Baupost should not be forced to accept PERA's counsel—whom Baupost did not choose, and with whom Baupost has no relationship—where, as here, allowing opt outs would not impair the interests of other Securities Claimants or the Debtors.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

[2] The Motion does not seek the certification of a non-mandatory, opt out class of Securities Claimants. Accordingly, Baupost does not address the possible certification of such a class in this Objection but reserves the right to do so if and when PERA moves to certify a Rule 23(b)(3) class.

## I. Permitting Opt Outs Would Not Create A Risk of Inconsistent Adjudications

Rule 23(b)(1)(A) allows mandatory class actions where individual litigation creates the risk of "inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for" the defendant. *See also Zinser v Accufix Research Inst., Inc.,* 253 F.3d 1180, 1193 (9th Cir. 2001), *amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) (observing that the purpose of Rule 23(b)(1)(A) is to "eliminate the possibility of adjudications in which the defendant will be required to follow inconsistent courses of ***continuing conduct***.") (emphasis added). PERA contends that "'[i]nconsistent,' 'varying,' and 'incompatible standards of conduct' . . . would be inevitable here without class certification, because the Securities Claims . . . do not substantively differ from claimant to claimant." Motion at 22. PERA is incorrect.

The nature of the relief sought by the Securities Claimants through their proofs of claim against the Debtors eliminates the risk that the Debtors will be subjected to incompatible standards of conduct. "[Rule] 23(b)(1)(A) . . . is primarily intended to address the problem that arises when one case generates an injunctive demand on a defendant to do one thing while another case generates an injunctive demand on a defendant to do something different." 7 NEWBERG ON CLASS ACTIONS § 22:76 (5th ed.). As PERA acknowledges, the Securities Claimants are seeking damages, not injunctive relief. *See, e.g.*, Motion at 9, 11, 16-18. Under Ninth Circuit law, the prospect of a defendant being found liable for damages to one plaintiff but not to another plaintiff on identical claims does not constitute a risk of "incompatible" standards of conduct justifying certification under Rule 23(b)(1)(A). "Rule 23(b)(1)(A) certification requires more . . . than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts." *Zinser*, 253 F.3d at 1193; *see also Russell v. Kohl's Dep't Stores, Inc.*, Case No. ED CV 15–01143 RGK (SPx), 2015 WL 12748629, at *3 (C.D. Cal. Dec. 4, 2015) ("It is well established that Rule 23(b)(1)(A) does not function to certify classes seeking monetary relief."); *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 346 (C.D. Cal. 2005) (citing *Zinser* and denying Rule 23(b)(1)(A) certification because plaintiffs "primarily" sought money damages). Indeed, as one treatise has noted, "[a]n overwhelming majority of cases have held that actions seeking damages under the securities laws are not appropriate for class action treatment under Rule 23(b)(1)." 1

MCLAUGHLIN ON CLASS ACTIONS § 5:7 (17th ed.). *See also Ortiz*, 527 U.S. at 845-46 (noting Seventh Amendment and due process concerns arising from mandatory class actions for monetary damages).[3]

The mediation procedures proposed by the Debtors and the case management tools otherwise available to the Court further undermine PERA's contention that the certification of a mandatory class is necessary to avoid the possibility of inconsistent adjudications. The mediation of the Securities Claimants' claims—the procedure proposed by the Debtors—creates no risk of "incompatible standards of conduct" because settlements reached through mediation have no preclusive effect on the Debtors or other Securities Claimants. Moreover, the Court can consolidate or coordinate the litigation of any objections or other legal questions that remain unresolved following mediation to the extent that those objections or questions present common legal or factual issues, *see* FED. R. BANKR. P. 7042,[4] without certifying a mandatory class and without imposing inconsistent outcomes on the parties. As it did time and again in its administration of these cases, the Court can coordinate briefing on common issues, allowing each Securities Claimant the opportunity to be heard individually before entering a ruling binding on all of the Securities Claimants. Because the Court already has the means to coordinate the litigation and adjudication of common issues without offending due process, certifying a mandatory Rule 23(b)(1)(A) class, and forcing all of the Securities Claimants to speak with one voice through counsel selected by PERA, would be a drastic solution to a nonexistent problem.

Accordingly, the Court should deny PERA's request to certify a class under Rule 23(b)(1)(A).

## II. Certification of a Mandatory Class Under Rule 23(a)(1)(B) Is Not Justified

PERA's argument that the Court should certify a mandatory class under Rule 23(b)(1)(B) fares no better. Certification of a mandatory class under Rule 23(b)(1)(B) is appropriate only where

---

[3] That certain putative class members might be entitled to rescission damages does not alter this analysis. *See Russell*, 2015 WL 12748629, at *3 (request for restitution, although "an equitable remedy, not technically a request for damages" did not warrant certification under Rule 23(b)(1)(A) because "restitution [was] more akin to an award of monetary damages for each class member").

[4] Rule 7042 is applicable to objections to a claim under Rule 9014. *See* FED. R. BANKR. P. 3007 advisory committee notes ("The contested matter initiated by an objection to a claim is governed by rule 9014[.]").
PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

"adjudications with respect to individual class members" would, "as a practical matter, . . . be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Under Ninth Circuit law, "class actions are permitted under [Rule 23] (b)(1)(B) ***only*** if separate actions '***inescapably*** will alter the substance of the rights of others having similar claims.'" *McDonnell-Douglas Corp. v. U.S. District Ct.*, 523 F.2d 1083, 1086 (9th Cir. 1975) (emphases added). *See also Zinser*, 253 F.3d at 1196-97 (same).

The textbook example of when Rule 23(a)(1)(B) would apply is in "limited fund" cases, "in which numerous persons make claims against a fund insufficient to satisfy all claims." *Amchem*, 521 U.S. at 614. As the Supreme Court held *in Ortiz*, certain characteristics are "presumptively ***necessary***, and not merely sufficient, to satisfy the limited fund rationale." 527 U.S. at 842. The proponent of a Rule 23(b)(1)(B) class must demonstrate that the case involves a "'fund' with a ***definitely*** ascertained limit, all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability, by an equitable, pro rata distribution." *Id*. at 841 (emphasis added).

PERA has not made—and cannot make—this required showing. PERA argues that this is a limited fund case for Securities Claimants with Class 10A-II claims—*i.e.*, purchasers of common stock—because (i) the Plan provides that such claims will be paid in PCG equity, (ii) PCG is only authorized to issue up to 3.6 billion shares of common stock under its Amended and Restated Articles of Incorporation (the "**Articles of Incorporation**"), (iii) roughly 3 billion of those shares have already been earmarked for other purposes; and (iv) the remaining 600 million authorized shares are insufficient to cover Securities Claimants' damages under the Plan's formula. *See* Motion at 21-22. PERA's argument does not withstand even minimal scrutiny.

First, although PERA is correct that PCG's Articles of Incorporation do not currently authorize the company to issue more than 3.6 billion shares of common stock, *see* Articles of Incorporation [Dkt. No. 9156-1], at 2, it has not shown that PCG is unable to amend its Articles of Incorporation and authorize the issuance of more shares. CAL. CORP. CODE § 900(a) expressly permits a California corporation like PCG to "amend its articles from time to time, in any and as

5

many respects as may be desired," subject only to approval by PCG's board and holders of its outstanding shares. *See* § 902(a). Accordingly, it is far from "inescapable" that the only source of payment for Securities Claimants will be the roughly 600 million additional PCG shares that PERA asserts are available. *See McDonnell-Douglas*, 523 F.2d at 1086.

Second, and more fundamentally, the Motion cites no evidence concerning the adequacy of these 600 million shares to satisfy the Securities Claims in accordance with the Plan; and this omission is fatal to PERA's motion for the certification of a Rule 23(b)(1)(B) class. *See In re Paxil Litig.*, 212 F.R.D. 539, 553 (C.D. Cal. 2003) ("[A] mere allegation that the defendant has limited resources is insufficient to support Rule 23(b)(1)(B) certification."); *see also Hum v. Dericks*, 162 F.R.D. 628, 641-42 (D. Haw. 1995) (denying Rule 23(b)(1)(B) certification where court, after "examining the financial records of the parties and their insurance coverage," found insufficient evidence to conclude that the "[d]efendants and their insurers will clearly be unable to pay the projected damages"). The reason for PERA's omission is that the evidence cuts against its position.

The Debtors' Plan makes clear that the 600 million PCG shares are not the sole source of recovery for holders of Securities Claims. The Debtors' insurance proceeds may also be used to partially satisfy such claims. To this end, the Plan applies an "Insurance Deduction" (in an amount equal to each Securities Claimants' share of the Debtors' insurance proceeds) to reduce, on a dollar-for-dollar basis, the amount of any allowed Securities Claim *before* the allowed claim is converted into a number of PCG shares. *See* Debtors' and Shareholder Proponents Joint Chapter 11 Plan of Reorganization Plan [Dkt. No. 8053-1] §§ 1.109, 1.127A.

Further, the Debtors may have the flexibility to devise other approaches or tap other resources to satisfy or settle Securities Claims. The record is clear that PCG was able to raise approximately $47.1 billion in capital to finance its emergence from bankruptcy, including through new credit facilities, new debt securities, and new PCG common stock. *See* Declaration of Jason P. Wells in Support of Debtors' & Shareholder Proponents' Joint Chapter 11 Plan of Reorganization [Dkt. No. 7510] ¶ 9. And, since emerging from bankruptcy, PCG has been far from illiquid. It is well-capitalized and has significant financial resources at its disposal. According to the very PCG 10-Q on which PERA relies, credit rating agencies re-commenced rating certain of Debtors'

securities and debt as investment grade in June 2020 and, as of the Plan's Effective Date, PCG (including the utility) had access to approximately $2.8 billion of total liquidity, comprised of cash and access to credit facilities. *See* June 30, 2020 Form 10-Q [Dkt. No. 9156-2], at 92-95.

For these reasons, PERA has failed to, and cannot, demonstrate that it is "inescapable" that the 600 million "remaining" shares will be insufficient to satisfy the Securities Claims or that PCG will be financially unable to issue additional shares if needed to pay Securities Claims. This is a far cry from "'[c]lassic' limited fund class actions," such as those involving "company assets in a liquidation sale." *See Ortiz*, 527 U.S. at 834. *See also Addison v. Monarch & Assocs., Inc.*, No. EDCV 14-358-GW(JEMx), 2017 WL 10651455, at *6 (C.D. Cal. June 23, 2017) (finding a limited fund where defendant was insolvent). *Fed. Ins. Co. v. Caldera Med Inc.*, Case No. 2:15-cv-00393-SVW-PJW, 2016 WL 5922313 (C.D. Cal. July 25, 2016), is instructive. There, the court ruled that the certification of a Rule 23(b)(1)(B) class would be "improper" under *Ortiz* because "there [was] no 'definitely ascertained' limited fund." *Id*. at *3-4. The court reasoned:

> [G]iven that [defendant] remains a solvent, operational business, without evidence regarding [defendant's] potential liquidated value, it is not clear that the Policies are the only available funds to contribute to the settlement. The Court recognizes that [defendant's] records demonstrate that it only has enough cash on hand and net income to cover payroll and operating expenses, that it has no net profits and no liquid funds to contribute to a settlement, and that it has significant debt secured by its assets preventing it from borrowing additional funds. . . . Nevertheless, without evidence regarding [defendant's] potential liquidated value, the Court cannot determine whether the settlement sum includes the maximum amount of funds possible.

*Id*. at *3.

PCG is a solvent, operating business and—unlike the defendant in *Caldera*—it has billions of dollars in liquidity and the ability to raise more funds in the capital markets. Accordingly, PERA cannot demonstrate that the resources available to PCG are a "'definitely ascertained' limited fund" insufficient to satisfy the Securities Claims. The mandatory certification of Class 10A-II claims under Rule 23(b)(1)(B) would therefore be improper. *See Zinser*, 253 F.3d at 1197 (affirming denial of Rule 23(b)(1)(B) certification where plaintiff provided no evidence that purportedly limited fund was insufficient to cover claims); *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, No. C 05-2320 SBA, 2006 WL 2642528, at *9 (C.D. Cal. Sept. 14, 2006) (Rule 23(b)(1)(B) not satisfied

where plaintiff "identified no ascertainable limit on any potential fund for payment of damages, punitive or otherwise").

Finally, PERA's asserted concerns about the sufficiency of the PCG shares available to satisfy Securities Claims in accordance with the Plan formula is inconsistent with the position it took earlier in these Chapter 11 proceedings. On May 15, 2020, PERA objected to aspects of the Debtors' Plan, including the formula that Plan (as then proposed) used to calculate the number of shares of new PCG common stock that would be distributed to holders of allowed Securities Claims.[5] Following mediation, the Debtors modified the formula to resolve PERA's objections, except for those related to the Insurance Deduction, and submitted an amended version of the Plan to the Court, which is, for present purposes, the version of the Plan that the Court ultimately confirmed.[6] At that time, PERA represented to the Court that PERA "and the Plan Proponents have resolved all of [PERA's] objections to confirmation but one: the Plan's Insurance Deduction."[7] At no point before the Plan's confirmation did PERA contend that the number of available PCG shares would—or might—be insufficient for PCG to satisfy the Securities Claims under the Plan's formula (even though the approximate allocations of PCG shares to the Backstop Parties, Fire Victims Trust, and others were determined pre-confirmation). By agreeing to the negotiated distribution formula as part of Plan confirmation and withdrawing its objection, PERA conceded the feasibility of that feature of the Plan and the sufficiency of the share allocation for Securities Claimants, and it waived its argument that the amount of PCG shares available to Securities Claimants under the Plan is insufficient to satisfy their claims. *See generally Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013) (judicial estoppel available where, *inter alia*, "a party's later position [is] clearly inconsistent with its earlier position").

---

[5] *See* Securities Lead Plaintiff's Objection to Confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization [Dkt. No. 7296], at 11-16.

[6] *See* Plan Proponents' Joint Submission of Amended Plan and Confirmation Order Language Partially Resolving Confirmation Objection of the Public Employees Retirement Association of New Mexico [Dkt. No. 8016], at 1 (noting that "[w]ith the assistance of Judge Randall Newsome, the Plan Proponents have agreed on amendments to the Plan and proposed Confirmation Order that resolve" PERA's "objection to the Plan's formula for calculating the number of shares a holder of an Allowed HoldCo Rescission or Damage Claim will receive").

[7] *See* Notice of Withdrawal of Securities Lead Plaintiff's Objections to Confirmation Except for the Determination of the Appropriate Insurance Deduction to be Applied to Allowed HoldCo Rescission or Damage Claims [Dkt. No. 8017], at 1.

For these reasons, Baupost objects to, and respectfully requests that the Court deny, the Motion.

Dated: October 29, 2020

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Debra I. Grassgreen*
Isaac M. Pachulski
Debra I. Grassgreen

- and -

Eric Seiler (admitted *pro hac vice*)
Jason C. Rubinstein (admitted *pro hac vice*)
Michael S. Palmieri (admitted *pro hac vice*)
FRIEDMAN KAPLAN SEILER
 & ADELMAN LLP

*Attorneys for Securities Claimant
Baupost Group Securities, L.L.C.*