WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel:    212 310 8000
Fax:    212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel:    415 496 6723
Fax:    415 636 9251

*Attorneys for the Debtors and
Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

**In re:**

**PG&E CORPORATION,**

**- and -**

**PACIFIC GAS AND ELECTRIC COMPANY,**

**Debtors.**

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

*\* ALL PAPERS SHALL BE FILED IN THE
LEAD CASE, NO. 19-30088 (DM).*

Case Nos. 19-30088 (DM) (Lead Case)
(Jointly Administered)

**REORGANIZED DEBTORS' OBJECTION
TO SECURITIES LEAD PLAINTIFF'S
RENEWED MOTION TO APPLY
BANKRUPTCY RULE 7023 AND
CERTIFY A LIMITED CLASS**

Date:   November 17, 2020
Time:   11:00 a.m. (Pacific Time)
Place:  Video conference

**Related Docket No.:** 9152

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

PG&E Corporation ("**HoldCo**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**" and as reorganized pursuant to the Plan (defined below), the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Objection (the "**Objection**") to the *Securities Lead Plaintiff's Memorandum of Points and Authorities in Support of Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class* [Dkt. No. 9152] (the "**Renewed 7023 Motion**"), filed by the Public Employees Retirement Association of New Mexico ("**PERA**").[1]

In support of the Objection, the Reorganized Debtors submit: (i) the *Declaration of Michael Keable in Support of the Reorganized Debtors' Objection to Lead Plaintiff's Renewed Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class* (the "**Keable Declaration**"), (ii) the *Declaration of Pamela Herlich in Support of the Reorganized Debtors' Objection to Lead Plaintiff's Renewed Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class* (the "**Herlich Declaration**"), and (iii) the *Declaration of Robb McWilliams in Support of the Reorganized Debtors' Objection to Lead Plaintiff's Renewed Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class* (the "**McWilliams Declaration**"), filed concurrently herewith.

---

[1] Capitalized terms used but not herein defined have the meanings ascribed to such terms in the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8048] (as it may be amended, modified, or supplemented and together with any exhibits or schedules thereto, the "**Plan**") or the *Reorganized Debtors' Motion to Approve Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* [Dkt. No. 8964] (the "**Securities Claims Procedures Motion**"), as applicable.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND ....................................................................................................................5

    A.    The Securities Litigation..............................................................................5

    B.    The Bar Date .................................................................................................7

    C.    PERA's Original Rule 7023 Motion .............................................................7

    D.    The Extended Bar Date .................................................................................8

    E.    The Securities Claims Procedures ...............................................................9

    F.    The Renewed 7023 Motion.........................................................................10

ARGUMENT .......................................................................................................................11

    I.    THE RENEWED 7023 MOTION SEEKS TO IMPERMISSIBLY CERTIFY A CLASS IN DIRECT CONTRAVENTION OF APPLICABLE LAW .............11

        A.    Controlling Ninth Circuit Authority Demonstrates that Certification Under Civil Rule 23(b)(1)(A) is Only Appropriate for a Class Seeking Non-Monetary Relief .....................................................................................11

        B.    For Monetary Damages Claims, Certification is Only Available Under Civil Rule 23(b)(1)(B) Where, Unlike Here, There is a Limited Fund Available to Satisfy Claims ................................................................................12

    II.    IRRECONCILABLE CONFLICTS PREVENT PERA FROM ADEQUATELY REPRESENTING THE SUBORDINATED SECURITIES CLAIMANTS ......................................................................................................15

        A.    PERA and Its Counsel Owe Obligations to the Putative Securities Class, Which is Not Coextensive with the Subordinated Securities Claimants ......................................................................................................15

        B.    PERA Cannot Adequately Represent the Interests of Claimants who Purchased Securities that PERA Did Not Purchase....................................18

        C.    Discovery Would Be Necessary and Appropriate to Root Out These Conflicts.......................................................................................................20

    III.    PERA HAS IMPLICITLY CONCEDED THAT THE BANKRUPTCY COURT LACKS JURISDICTION TO HEAR ITS RENEWED RULE 7023 MOTION.............................................................................................................21

    IV.    THE PRINCIPLES OF RES JUDICATA AND LAW OF THE CASE PRECLUDE PERA FROM AGAIN SEEKING CLASS CERTIFICATION.......22

        A.    PERA Is Precluded From Again Seeking Relief Under Bankruptcy Rule 7023 ......................................................................................................22

        B.    This Court's Denial of PERA's Original 7023 Motion is Law of the Case .............................................................................................................24

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

V.    THE RENEWED 7023 MOTION SHOULD BE DENIED UNDER THE *MUSICLAND* FACTORS .................................................................................25

      A.    PERA Does Not Represent a Prepetition Certified Class ..........................26

      B.    Every Member of PERA's Putative Class Received Actual Notice of the Extended Bar Date .......................................................................26

      C.    Denying the Renewed 7023 Motion Would Better Serve the Administration of the Estates for all Stakeholders ..................................28

            1.    Class Certification Would Delay Distributions to Claimants ........29

            2.    Class Certification Would Needlessly Waste Estate Resources ....30

VI.    PERA'S PROPOSED FRAMEWORK IS UNWORKABLE ...............................31

CONCLUSION..............................................................................................................33

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Americana Fabrics, Inc. v. L & L Textiles, Inc.*,
754 F.2d 1524 (9th Cir. 1985) ................................................................23

*Arizona v. California*,
460 U.S. 605 (1983)................................................................................24

*Bailey v. Jamesway Corp. (In re Jamesway Corp.)*,
No. 95 B 44821 (JLG), 1997 WL 327105 (Bankr. S.D.N.Y. June 12, 1997)........................26

*Baker v. Seaworld Ent., Inc.*,
No. 14cv2129-MMA (AGS), 2017 U.S. Dist. LEXIS 196235 (S.D. Cal. Nov. 29, 2017) ................................................................32

*In re Bally Total Fitness of Greater New York, Inc.*,
402 B.R. 616 (Bankr. S.D.N.Y. 2009)....................................................29

*Bialac v. Harsh Inv. Corp. (In re Bialac)*,
694 F.2d 625 (9th Cir. 1982) ................................................................22

*Brown v. Am. Airlines, Inc.*,
285 F.R.D. 546 (C.D. Cal. 2011)............................................................20

*Carpenters Pension Tr. Fund for N. Cal. v. Allstate Corp. (In re Allstate Corp. Sec. Litig.)*,
966 F.3d 595 (7th Cir. 2020) ................................................................33

*In re Chaparral Energy, Inc.*,
No. 16-11144 (LSS), 2018 WL 818309 (Bankr. D. Del. Feb. 9, 2018) ................................26

*In re Circuit City Stores, Inc.*,
No. 08-35653, 2010 Bankr. LEXIS 1774 (Bankr. E.D. Va. May 28, 2010) ........................27

*Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*,
660 F.3d 1170 (9th Cir. 2011) ..............................................................32

*Corley v. Entergy Corp.*,
222 F.R.D. 316 (E.D. Tex. 2004)............................................................12

*Cotchett, Pitre & McCarthy v. Siller*,
520 B.R. 796 (E.D. Cal. 2014)...............................................................22

*In re Dehon, Inc.*,
298 B.R. 206 (Bankr. D. Mass. 2003) ....................................................13

*In re Dennis Greenman Sec. Litig.*,
    829 F.2d 1539 (11th Cir. 1987) ......................................................................13

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992) ..........................................................................13

*In re Ephedra Prods. Liab. Litig.*,
    329 B.R. 1 (S.D.N.Y. 2005) .....................................................................25, 29

*In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*,
    281 F.R.D. 174 (S.D.N.Y. 2012) ..................................................................19

*Green v. Occidental Petroleum Corp.*,
    541 F.2d 1335 (9th Cir. 1976) ................................................................11, 12

*Griggs v. Provident Consumer Disc. Co.*,
    459 U.S. 56 (1982) ........................................................................................21

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ......................................................................................32

*In re Home-Stake Prod. Co. Sec. Litig.*,
    76 F.R.D. 351 (N.D. Okla. 1977) ..................................................................15

*Kuper v. Quantum Chem. Corp.*,
    145 F.R.D 80 (S.D. Ohio 1992) ...................................................................17

*La Mar v. H & B Novelty & Loan Co.*,
    489 F.2d 461 (9th Cir. 1973) ........................................................................11

*Laventhol, Krekstein, Horwath & Horwath v. Horwitch*,
    637 F.2d 672 (9th Cir. 1980) ..........................................................................6

*In re Lehman Brothers Sec. & ERISA Litig.*,
    684 F. Supp. 2d 485 (S.D.N.Y. 2010) ..........................................................20

*Luben Indus., Inc. v. United States*,
    707 F.2d 1037 (9th Cir. 1983) ......................................................................23

*Lummus Co. v. Commonwealth Oil Refin. Co.*,
    297 F.2d 80 (2d Cir. 1961) ......................................................................23, 24

*Marino v. Classic Auto Refinishing, Inc. (In re Marino)*,
    234 B.R. 767 (B.A.P. 9th Cir. 1999) ............................................................22

*McClain v. Apodaca*,
    793 F.2d 1031 (9th Cir. 1986) ......................................................................22

*McMahan & Co. v. Wherehouse Ent., Inc.*,
    65 F.3d 1044 (2d Cir. 1995) ..........................................................................19

*Milgard Tempering, Inc. v. Selas Corp. of Am.*,
    902 F.2d 703 (9th Cir. 1990) ........................................................................24

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Miller v. Cnty. of Santa Cruz*,
   39 F.3d 1030 (9th Cir. 1994) .................................................................................23

*Moreno v. Autozone, Inc.*,
   No. C05-04432 MJJ, 2007 WL 4287517 (N.D. Cal. Dec. 6, 2007) .....................15, 17

*Musacchio v. United States*,
   136 S. Ct. 709 (2016) .........................................................................................24

*In re Musicland Holding Corp.*,
   362 B.R. 644 (Bankr. S.D.N.Y. 2007) ............................................................ *passim*

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ...........................................................................................13

*Pettco Enters. v. White*,
   162 F.R.D. 151 (M.D. Ala. 1995) ........................................................................12

*Rogone v. Correia-Sasser (In re Correia-Sasser)*,
   Nos. 2:10-bk-17877-RJH, 2:10-ap-1632-RJH, 2011 Bankr. LEXIS 3072 (Bankr.
   D. Ariz. Aug. 10, 2011) ......................................................................................23

*In re Sequoia Senior Solutions, Inc.*,
   No. 16-11036, 2017 Bankr. LEXIS 1606 (Bankr. N.D. Cal. June 9, 2017) ................28

*Sirota v. Solitron Devices, Inc.*,
   673 F.2d 566, 571 (2d Cir. 1982) ........................................................................20

*Smith v. Levine Leichtman Capital Partners, Inc.*,
   No. C 10-00010 JSW, 2011 WL 13153123 (N.D. Cal. Mar. 9, 2011) .................15, 17

*In re Syncor Erisa Litig.*,
   227 F.R.D. 338 (C.D. Cal. 2005) .........................................................................27

*Tober v. Charnita, Inc.*,
   58 F.R.D. 74 (M.D. Pa. 1973) .............................................................................15

*United States v. Thorp (In re Thorp)*,
   655 F.2d 997 (9th Cir. 1981) ..........................................................................21, 22

*In re Verity Health Sys. of Cal., Inc.*,
   No. 2:18-BK-20151-ER, 2019 WL 2896189 (Bankr. C.D. Cal. May 24, 2019).................26

*Villamar v. Hersh*,
   37 F. App'x 919 (9th Cir. 2002) .........................................................................22

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)........................................................................................20, 32

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
   No. 2:08-md-1919 MJP, 2010 WL 4272567 (W.D. Wash. Oct. 12, 2010) ..................19

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*In re Wash. Mut. Mortg.-Backed Sec. Litig.*,
  276 F.R.D. 658 (W.D. Wash. 2011) ........................................................13

*Wininger v. SI Mgmt. L.P.*,
  301 F.3d 1115 (9th Cir. 2002) ................................................................15

*In re Wonder Corp. of Am.*,
  81 B.R. 221 (Bankr. D. Conn. 1988) ......................................................21

*Zinser v. Accufix Research Institute, Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ................................................................11

**Statutes**

28 U.S.C. § 1291 ...................................................................................23

Securities Act of 1933 ..........................................................................5, 19

Securities Exchange Act of 1934 ...............................................................5

United States Code title 11 chapter 11 ............................................. *passim*

**Other Authorities**

7AA Wright & Miller, *Fed. Prac. & Proc.* § 1774 (3d ed. 2000) ................11

18B Wright & Miller, *Fed. Prac. & Proc.* § 4478.1 (2d ed. 2020) ..............24

Fed. R. Bankr. P. 3003 ............................................................................27

Fed. R. Bankr. P. 7023 .................................................................... *passim*

Fed. R. Civ. P. 23 ............................................................................ *passim*

Restatement (Second) of Judgments § 13 (1982) .....................................23

SEC Rule 10b-5 ...................................................................................5, 18

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

PERA's Renewed 7023 Motion is a misguided attempt to re-litigate issues this Court has already decided, and which are currently up on appeal before the District Court. Worse, in the face of obvious and irresolvable conflicts, PERA and its counsel now seek to usurp the claims of more than 7,000 claimants who filed their own proofs of claim, many of whom are represented by their own counsel, or have chosen not to be represented by counsel at all to avoid paying the very contingency fees that PERA's counsel surely would seek here. Worse yet, PERA's proposed class mechanism does not permit opt-outs—meaning that PERA is, quite literally, attempting to impose its will upon every other Subordinated Securities Claimant. Worst of all, PERA seeks this extraordinary relief without proper notice to these claimants because (quite ironically) PERA did not serve the Renewed 7023 Motion on the Subordinated Securities Claimants—the members of the purported class PERA seeks to represent—even though each of these claimants is known to PERA.

Although PERA has framed its Renewed 7023 Motion as a choice between two competing proposals to resolve the Subordinated Securities Claims (defined below) filed in these Chapter 11 Cases, in reality, there is no choice. In a futile attempt to avoid both *res judicata* and the extensive discovery that typically is required to resolve a motion to certify a class of securities plaintiffs, PERA seeks to certify separate classes under two rarely used provisions of Rule 23 of the Federal Rules of Civil Procedure (the "**Civil Rules**"). Putting aside the fact that PERA's appeal of this Court's prior order divests this Court of jurisdiction to even consider the Renewed 7023 Motion, these two provisions of Civil Rule 23—which both call for mandatory classes—are wholly inapplicable and cannot be applied here as matter of law. Moreover, PERA, who already contends it has fiduciary duties to a class of securities holders in a separate class action before the District Court, has disabling conflicts of interest preventing it from representing a different class in these Chapter 11 Cases.

Even if there were a choice, the path suggested by PERA is neither desirable nor feasible. PERA's proposal subverts the ability of individual Subordinated Securities Claimants, all of whom filed proofs of claim, to reach settlements with the Reorganized Debtors before discovery and before

---

[2] Unless otherwise indicated, all emphasis is added and internal citations and quotations are omitted.

their claims are resolved on the merits. Instead, PERA seeks to be the gatekeeper for all settlements and to retain the ability to accelerate the determination by this Court of merits issues that may create inconsistent results given that similar issues are already being decided or will be decided by the District Court in connection with the Securities Litigation (defined below). Moreover, PERA's proposal would require that the Reorganized Debtors negotiate with PERA even though the parties have already, with the aid of an experienced mediator, extensively and unsuccessfully engaged in mediation for several months. The Reorganized Debtors' proposal, in contrast, allows individual Subordinated Securities Claimants the opportunity to settle and receive payments quickly and efficiently in the customary bankruptcy claims resolution process—a result which will not be possible under PERA's litigate-the-merits-first approach.

As demonstrated below, the flaws in PERA's Renewed 7023 Motion are many. As a matter of law, the class PERA seeks to represent cannot be certified under either Civil Rule 23(b)(1)(A) or 23(b)(1)(B)—both of which create mandatory, non-opt-out classes. *First*, PERA seeks to certify a class under Civil Rule 23(b)(1)(A), which provides for a class where prosecuting separate actions by individual class members would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). That provision, however, is meant to protect *defendants*; it cannot be imposed, as PERA seeks, over the opposition of the defendants. More importantly, however, is that its use is further limited *exclusively* to cases where the proposed class is seeking *non-monetary* damages. All members of PERA's proposed Rule 23(b)(1)(A) class, *i.e.*, the Subordinated Securities Claimants, are seeking monetary damages or its equivalent. In short, a class under Civil Rule 23(b)(1)(A) is simply not available here.

*Second*, PERA seeks to certify a class solely of equity holders under Civil Rule 23(b)(1)(B). That provision, however, is restricted to instances where there is a limited pool of funds to satisfy the plaintiffs. PERA attempts to establish that there is only a limited pool of available shares to satisfy claims classified under Class 10A-II under the Plan (the "**Subordinated Equity Claims**" or "**HoldCo Rescission or Damage Claims**"), but it is mistaken. PERA first misrepresents the number of available shares (the Reorganized Debtors have over 1.5 billion shares available, not the 600

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

million suggested by PERA), and then compounds that misrepresentation with mathematical errors. Based on Section 1.109 of the Plan, the Reorganized Debtors have available shares to cover between *$50 billion and $100 billion* in Allowed Subordinated Equity Claims. Moreover, the Reorganized Debtors are solvent entities and PERA cannot point to a single instance where a securities class was certified under Civil Rule 23(b)(1)(B) against a solvent defendant. Further, the Reorganized Debtors can always issue additional common shares to satisfy Allowed Subordinated Equity Claims, in the absurdly unlikely event that the need arises. Thus, there is no "limited fund" and a class cannot be certified under Civil Rule 23(b)(1)(B).

In addition to PERA's purported class being impermissible as a matter of law, the Renewed 7023 Motion fails because PERA cannot adequately represent the proposed class as Civil Rule 23 requires. In particular, PERA already represents a different class of persons in the Securities Litigation in the District Court (the "**Putative Securities Class**"), that is not coextensive with the Subordinated Securities Claimants in the Chapter 11 Cases, which PERA seeks to certify as a class under Civil Rule 23(b)(1)(A) (the "**Proposed Bankruptcy Class**").[3] If PERA has its way, these two classes will compete to recover their losses (if any) from the same pool of the Reorganized Debtors' assets, including their insurance funds.

Moreover, PERA vastly overstates its ability to broker a deal that is fair to all Subordinated Securities Claimants. The Proposed Bankruptcy Class would include dozens of the Reorganized Debtors' securities (implicating thousands of Subordinated Securities Claims) that PERA never alleges holding and for which neither PERA, nor any other claimant, has articulated any sort of theory of liability—cognizable or not. Neither PERA nor its counsel have affirmatively demonstrated *any* interest is litigating on behalf of the "class" they now propose, much less proven their ability to do so as Civil Rule 23 requires. Indeed, PERA has already taken positions in these Chapter 11 Cases, and on appeal from decisions herein, that, if accepted, would benefit the class it seeks to represent in the Securities Litigation, but not the Subordinated Securities Claimants in the

---

[3] In the alternative, as noted above, PERA proposes certifying a class under Civil Rule 23(b)(1)(B), class comprised exclusively of Subordinated Equity Claims (the "**Alternative Bankruptcy Class**").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Chapter 11 Cases. And a complete investigation into these—and other certification-dispositive matters—would require, at a minimum, months of discovery, which would needlessly delay potential settlements and recoveries to Subordinated Securities Claimants.

Because PERA treated the Court's prior order declining to apply Rule 7023 of the Federal Rule of Bankruptcy Procedure (the "**Bankruptcy Rules**") as final and appealed such order, this Court lacks jurisdiction to hear the Renewed 7023 Motion. As the Court is well aware, it previously denied substantially the same relief PERA now seeks in its Renewed 7023 Motion, choosing instead to extend the deadline for current or former securities holders to file proofs of claim in the Chapter 11 Cases and directing the Debtors to provide notice of the Extended Bar Date (defined below) so that each potential claimant could make an independent determination whether to assert a claim against the estates. *See* Dkt. No. 5943 (the "**7023 Order**"). Arguing that decision was final, PERA appealed the 7023 Order, and its complimentary Memorandum Decision (defined below), to the District Court—depriving this Court of jurisdiction to consider whether, for PERA, the class claim device is appropriate in these Chapter 11 Cases *under any provision of Civil Rule 23*. In addition, the Renewed 7023 Motion is also barred by the doctrines of *res judicata* and law of the case. While the Original 7023 Motion (defined below) was silent on which provision of Civil Rule 23 PERA ultimately wanted the Court to apply, that does not change the fact that the Renewed 7023 Motion seeks essentially the same relief: certification of a class. A party cannot make successive motions for class certification and simply base them on different provisions of Civil Rule 23 without running afoul of the doctrines of *res judicata* and law of the case.

Even if PERA could somehow overcome the foregoing fatal deficiencies to the Renewed 7023 Motion, PERA, once again, cannot satisfy the *Musicland* factors and, therefore, the Court should decline to exercise its discretion to apply Bankruptcy Rule 7023 to certify a class here. The sole factor that the Court found weighed in PERA's favor—whether all potential claimants were served with actual notice of the bar date—has now been entirely cured. In fact, as a result of this Court's orders, every potential securities claimant received actual notice of the Extended Bar Date and the Subordinated Securities Claimants have already submitted proofs of claim. PERA cannot point to a single instance where—after extending the bar date and providing actual notice to all

members of an uncertified, putative class—a court then certified a litigation class under Bankruptcy Rule 7023. The Court should decline to do so here.

To resolve the Subordinated Securities Claims, the Reorganized Debtors have proposed the Securities Claims Procedures (defined below), which will allow Subordinated Securities Claimants and their counsel the ability to negotiate with the Reorganized Debtors to consensually resolve claims without litigation (and the attendant briefing, discovery, and attorneys' fees). The Reorganized Debtors believe that they will be able to quickly and efficiently resolve most of the Subordinated Securities Claims through these settlement procedures. The Securities Claims Procedures are precisely the type of procedures the Court directed the Reorganized Debtors to develop and are consistent with procedures developed in other cases to address similarly complicated claims.

Accordingly, and for the reasons set forth below, the Renewed 7023 Motion should be denied.

## BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). On June 20, 2020, this Court entered the Order confirming the Plan [Dkt. No. 8053] (the "**Confirmation Order**"). The Plan became effective on July 1, 2020 [Dkt. No. 8252] (the "**Effective Date**").

### A.     The Securities Litigation

PERA is the lead plaintiff in a putative securities class action pending in the U.S. District Court for the Northern District of California, *In re PG&E Corp. Securities Litig.*, Case No. 18-CV-03509 (N.D. Cal.) (the "**Securities Litigation**").[4]  Although the operative complaint (the "**Third Amended Complaint**")[5] asserts claims against the Reorganized Debtors, along with a number of the Reorganized Debtors' current and former directors and officers (the "**Individual Defendants**") and investment-bank underwriters of certain of the Debtors' notes offerings (the "**Underwriters**"), under the Securities Act of 1933, the Exchange Act of 1934, and SEC Rule 10b-5, PERA is permanently enjoined under the Plan from pursuing claims in that action against the Reorganized Debtors. *See*

---

[4]     References to the Securities Litigation docket will be identified herein as "**Sec. Litig. Dkt. No. ●**."
[5]     *See* Sec. Litig. Dkt. No. 121.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

Plan § 10.6. The Putative Securities Class comprises investors who acquired certain of the Debtors' notes and equity securities during the putative class period. *See* Third Amended Complaint.

The Individual Defendants and the Underwriters have filed motions to dismiss the Third Amended Complaint, which have been fully briefed and taken under submission. The District Court has not issued an opinion on those motions. The pool of money to satisfy potential recoveries in the Securities Litigation is limited. For example, while the Reorganized Debtors maintain director and officer liability insurance, the majority of that coverage (up to $400 million), also covers the Subordinated Securities Claims asserted against the Reorganized Debtors in these Chapter 11 Cases.[6] These director and officer insurance policies also cover potential liabilities in certain derivative actions which have been assigned to the Fire Victim Trust under the Plan. Moreover, while the Individual Defendants have rights to indemnification from the Reorganized Debtors, public policy prevents the Reorganized Debtors from indemnifying the Individual Defendants from securities liabilities. *See Laventhol, Krekstein, Horwath & Horwath v. Horwitch*, 637 F.2d 672, 676 (9th Cir. 1980) ("[T]he purpose of the [Securities Act] is regulatory rather than compensatory, and permitting indemnity would undermine the statutory purpose of assuring diligent performance of duty and deterring negligence."), *cert. denied*, 452 U.S. 963 (1981). Thus, securities claimants who are part of the Putative Securities Class, but did not file proofs of claim in the bankruptcy, have an interest in preserving the insurance proceeds for the Securities Litigation. Subordinated Securities Claimants, and particularly any Subordinated Equity Claimants who are not also members of the Putative Securities Class, however, have an interest in maximizing the insurance available for cash payments from the Reorganized Debtors as part of negotiated settlements in the Chapter 11 Cases.

The Debtors initiated mediation with PERA, its counsel, and the other defendants in February 2020 concerning the Securities Litigation. The mediation with PERA has been unsuccessful to date.

---

[6] *See Declaration of Elizabeth Collier in support of Debtors' Motion for a Preliminary Injunction as to In re PG&E Corp. Securities Litig.* [Adv. Proc. No. 19-03039, Dkt. No. 3], ¶ 7; *Declaration of Jason P. Wells in support of Confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganized* [Dkt. No. 7510], ¶ 19 n.3.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## B. The Bar Date

On July 1, 2019, after extensive briefing and argument from the various constituencies, this Court established October 21, 2019 as the last date to file proofs of claim in the Chapter 11 Cases (the "**Bar Date**"). *See* Dkt. No. 2806 (the "**Bar Date Order**").[7] Consistent with the Bar Date Order, Prime Clerk LLC ("**Prime Clerk**") mailed over 6.5 million Bar Date notices to potential claimants and interest holders, as well as an applicable proof of claim form. *See* Schrag Decl. ¶ 7. The Debtors took the additional step of serving 111,000 holders of the Debtors' common equity, 11,300 noteholders, and 1,352 brokerage nominees, including all record holders of the Debtors' securities as of July 1, 2019. *See id.* ¶¶ 7–8; Pullo Decl. ¶ 5. Prime Clerk also served these materials upon PERA's counsel. *See* Dkt. No. 3159, Ex. A at 12; Ex. D at 746; Ex. Q at 2288.

## C. PERA's Original Rule 7023 Motion

Nearly two months after the Bar Date, on December 9, 2019, PERA filed the *Securities Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim* [Dkt. No. 5042] (the "**Original 7023 Motion**"). The Original 7023 Motion defined the putative class as "the proposed class [PERA] represents in the Securities Litigation." *See* Original 7023 Motion at 7.[8]

Following two rounds of briefing and extensive argument, this Court denied the Original 7023 Motion in favor of extending the applicable bar date to allow absent class members to file individual proofs of claim. *See Memorandum Decision Regarding Motion to Apply Rule 7023* [Dkt. No. 5887] (the "**Memorandum Decision**") at 5. The Court expressly held that, "[b]ecause

---

[7] *See also generally* Dkt. No. 5370 (the "**Pullo Declaration**"); Dkt. No. 5371 (the "**Schrag Declaration**"); Dkt. No. 5372 (the "**Finegan Declaration**").

[8] The Third Amended Complaint defines the proposed class as "all persons and entities who, during the period from April 29, 2015 through November 15, 2018, inclusive (the "**Subject Period**"), purchased or otherwise acquired publicly traded PG&E securities and were damaged thereby." Third Amended Complaint ¶ 11. The Third Amended Complaint, however, makes allegations with respect to only eight PG&E securities: (i) PG&E common stock, (ii) 2.95% Senior Notes due March 1, 2026 (March 2016 notes offering), (iii) 1.51778% (floating rate) Senior Notes due November 30, 2017, (iv) 4% Senior Notes due December 1, 2046 (December 2016 and March 2017 notes offerings), (v) 3.30% Senior Notes due March 15, 2027 (March 2017 notes offering), (vi) 2.541388% (floating rate) Senior Notes due November 28, 2018, (vii) 3.30% Senior Notes due December 1, 2027 (April 2018 exchange offer), and (viii) 3.95% Senior Notes due December 1, 2047 (April 2018 exchange offer). *See, e.g.*, *id.* ¶¶ 496 n.149, 502.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Debtors did not make a reasonable effort to give actual notice to class members of the claims bar date, the court will extend the bar date for this group of creditors." *Id.* at 4. PERA explicitly sought to defer consideration of the Civil Rule 23 requirements and the Court did not address Civil Rule 23 in its ruling. *See id.* at 3. Thus, PERA's assertion that "[t]he first important difference between the [Original 7023 Motion] and [the Renewed 7023 Motion] is that here, [PERA] requests class certification under Rule 23(b)(1) instead of Rule 23(b)(3)" is unavailing. Renewed 7023 Motion at 5. The Memorandum Decision determined that it would not be an appropriate use of the Court's discretion to apply Bankruptcy Rule 7023. It never reached the issue of certification under Civil Rule 23, so the "difference" between Civil Rule 23(b)(1) and (b)(3) is irrelevant here.

### D. The Extended Bar Date

In accordance with the Court's directive, the Debtors and PERA negotiated a form of order, proof of claim form, and noticing procedures to allow potential securities claimants to submit individual proofs of claim. On February 27, 2020, the Court issued the 7023 Order and, solely with respect to those persons or entities that purchased or acquired the Debtors' publicly-traded debt and/or equity securities identified therein[9] during the Subject Period, and who may have had claims under the securities laws against the Debtors for rescission or damages, the Court extended the bar date until April 16, 2020 (the "**Extended Bar Date**"). *See* Dkt. No. 5943.[10] The 7023 Order also approved procedures for providing notice of the Extended Bar Date to current or former securities holders, including but not limited to, every member of the Putative Securities Class in the Securities Litigation. *See id.* ¶¶ 5–6.

Pursuant to the 7023 Order, the Debtors, through Prime Clerk, provided actual notice to over 300,000 current or former securities holders. Specifically, Prime Clerk mailed notice to the 75,089 parties identified by EQ Shareowner Services as registered holders of the Debtors' equity securities during the Subject Period. *See* Dkt. No. 6936 (the "**Pullo Omnibus Declaration**") ¶ 3. In addition,

---

[9]   *See* 7023 Order, Ex. A (identifying 130 securities issued by either PG&E Corp. or the Utility).

[10]  On March 6, 2020, PERA noticed an appeal of the Memorandum Decision and the 7023 Order, arguing that both were sufficiently final to confer appellate jurisdiction in the District Court. The parties completed briefing on briefing on June 29, 2020. The District Court has not yet scheduled oral argument or issued a decision.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Prime Clerk, consistent with the 7023 Order, served the notice on approximately 795 banks, brokers, and financial institutions (or their agents) (collectively, the "**Nominees**"), whose clients were underlying beneficial holders of the Debtors' securities. *See id.* ¶ 4.

The 7023 Order required the Nominees to either (i) request from Prime Clerk sufficient copies of the notice so that the Nominees could forward the materials to their beneficial owners, or (ii) provide Prime Clerk with a list of names and addresses of the beneficial holders so that Prime Clerk could mail notice directly. *See* 7023 Order ¶ 6(a). Pursuant to the Nominees' requests, Prime Clerk mailed approximately 270,000 printed copies of the notice, either to various beneficial owners identified by Nominees, or directly to the Nominees for the Nominees to distribute to their beneficial owners. *See* Pullo Omnibus Decl. ¶¶ 6–7.

These efforts cost the Debtors over $600,000 in paper and postage alone—not to mention the hundreds of hours in time incurred by the Debtors and their professionals to comply with the 7023 Order. Approximately 7,000 securities proofs of claim have been filed, often indicating that the claimant is represented by his, her, or its own counsel. Under the Plan, these claims are classified in Classes 9A (HoldCo Subordinated Debt Claims), 10B (Utility Subordinated Debt Claims), and 10A-II (HoldCo Rescission or Damage Claims) (collectively, the "**Subordinated Securities Claims**").

### E. The Securities Claims Procedures

On September 1, 2020, the Reorganized Debtors filed a motion seeking authority from the Court to implement a comprehensive set of procedures to address outstanding and unresolved Subordinated Securities Claims (the "**Securities Claims Procedures**"). *See* Dkt. No. 8964 (the "**Securities Claims Procedures Motion**").[11] Unlike PERA's proposal, the Securities Claims Procedures are designed to allow Subordinated Securities Claimants the opportunity to quickly and efficiently resolve their claims without having to engage in the first instance in time-consuming and expensive litigation and discovery on the merits.

---

[11] Unlike, PERA, the Reorganized Debtors served their pleadings in connection with the Securities Claims Procedures Motion on every individual and entity that submitted a Subordinated Securities Claim. *See* Dkt. No. 9050.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The Reorganized Debtors believe that they will be able to resolve most of the Subordinated Securities Claims through these settlement procedures. The Court would only be called upon to decide legal issues of substantive securities law for the few claims, if any, remaining after all attempts to settle have failed. At that time, the Court is likely to have additional rulings by the District Court with respect to at least some of the merits issues also raised by the Subordinated Securities Claims.

**F.  The Renewed 7023 Motion**

On September 28, PERA filed the Renewed 7023 Motion which, as noted above, seeks to certify a class under two separate provisions under Civil Rule 23(b)(1), which does not provide class members with the ability to opt out of the classes. *See* Fed. R. Civ. P. 23(b)(1); Renewed 7023 Motion, Ex. C. PERA first seeks to certify, under Civil Rule 23(b)(1)(A), the Proposed Bankruptcy Class comprising Plan Classes 9A, 10A-II, and 10B, *i.e.*, all Subordinated Securities Claims. *See* Renewed 7023 Motion at 9, 15–20. Perhaps recognizing the fatal conflict of interest between Subordinated Debt Claims (Classes 9A and 10B) and Subordinated Equity Claims (Class 10A-II), *see infra* at 15–20, PERA offers to create a subclass of Subordinated Debt Claimants. *See* Renewed 7023 Motion at 9 n.3.[12] The Renewed 7023 Motion does not identify a subclass representative or make any attempt to demonstrate that either the representative or the proposed counsel could adequately represent the proposed subclass.

In the alternative (again, implicitly conceding the conflicts inherent to its proposal), PERA casts aside all Subordinated Debt Claimants and proposes to certify the Alternative Bankruptcy Class, comprised only of Subordinated Equity Claims under Civil Rule 23(b)(1)(B)—*i.e.*, the limited fund provision. *See* Renewed 7023 Motion at 9, 20–23.

As set forth above, PERA did ***not*** serve the Renewed 7023 Motion on the Subordinated Securities Claimants. *See* Dkt. No. 9158 (providing notice of the Renewed 7023 Motion only to the Master Service List). In other words, if this Court were to grant the Renewed 7023 Motion, it would be imposing a mandatory class on thousands of Subordinated Securities Claimants—all of whom

---

[12]  It is unclear whether Labaton Sucharow LLP seeks to represent putative class members with alleged claims based on debt securities in the District Court. If so, this would create another inter-case conflict.

1 filed proofs of claim and many with the assistance of their own counsel—who had no opportunity to
2 be heard. The failure by PERA to properly serve its Motion on all known Subordinated Securities
3 Claimants is both ironic and fatal.

**ARGUMENT**

4

**I. THE RENEWED 7023 MOTION SEEKS TO IMPERMISSIBLY CERTIFY A CLASS**
5 **IN DIRECT CONTRAVENTION OF APPLICABLE LAW**
6

7     Typically, a brief in opposition to a motion under Bankruptcy Rule 7023 starts with an
8 analysis of the *Musicland* factors. While the *Musicland* factors all weigh against the application of
9 Civil Rule 23 here (as discussed below), the provisions of Civil Rule 23 by which PERA seeks to
10 certify a class are entirely inapplicable as matter of law and completely resolve the Renewed 7023
11 Motion.

12     **A.     Controlling Ninth Circuit Authority Demonstrates that Certification Under Civil**
          **Rule 23(b)(1)(A) is Only Appropriate for a Class Seeking Non-Monetary Relief**
13

14     PERA seeks to certify the Proposed Bankruptcy Class pursuant to Civil Rule 23(b)(1)(A), on
15 the purported grounds that "inconsistent," "varying," and "incompatible standards of conduct" would
16 "be inevitable here without class certification." Renewed 7023 Motion at 16. But Civil Rule
17 23(b)(1)(A) certification requires more than just "a risk that separate judgments would oblige the
18 opposing party to pay damages to some class members but not to others or to pay them different
19 amounts . . . ." 7AA Wright & Miller, Fed. Prac. & Proc. § 1774 (3d ed. 2000). In the Ninth Circuit,
20 it is well-established that certification under Civil Rule 23(b)(1)(A) is appropriate only when
21 necessary to "eliminate the possibility of adjudications in which ***the defendant*** will be required to
22 follow inconsistent courses of continuing conduct." *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d
23 461, 466 (9th Cir. 1973). In other words, Civil Rule 23(b)(1)(A) certification is "not appropriate in
24 an action for [money] damages" because such actions do not threaten inconsistent standards of
25 conduct. *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001), *opinion*
26 *amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001); *see also Green v. Occidental Petroleum*
27 *Corp.*, 541 F.2d 1335, 1340 (9th Cir. 1976) (reversing certification under Civil Rule 23(b)(1)(A)
28 because an action for damages lacks the risk of "inconsistent or varying adjudications which would

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1   establish incompatible standards of conduct for the party opposing the class"). Moreover, because

2   Civil Rule 23(b)(1)(A) is designed to benefit a defendant, it is inappropriate to certify such a class

3   over the objection of the party opposing the class. *See, e.g.*, *Corley v. Entergy Corp.*, 222 F.R.D.

4   316, 320 (E.D. Tex. 2004), *aff'd*, 152 F. App'x 350 (5th Cir. 2005) ("[T]he court should not certify

5   a [Civil Rule 23(b)(1)(A)] class over Defendants' objection."); *Pettco Enters. v. White*, 162 F.R.D.

6   151, 155 (M.D. Ala. 1995) ("[I]t is inappropriate to certify a Rule 23(b)(1)(A) class over objection

7   of the party opposing the class.") (collecting cases).

8          Here, there is *no* risk that the Reorganized Debtors will be subject to inconsistent standards

9   of conduct, because Subordinated Securities Claimants are entitled to damages *only*. *See* Plan

10  §§ 4.12, 4.14, 4.32. PERA is therefore left to principally complain that the Reorganized Debtors'

11  proposed ADR process could yield different ***settlements*** with different claimants. *See* Renewed 7023

12  Motion at 16–17. But that flexibility is one of the reasons why the Securities Claims Procedures are

13  superior: individual claimants, including the many large and sophisticated financial institutions that

14  have filed claims, are free to negotiate settlements they believe reflect the individualized merits of

15  their claims. And if those negotiations do not yield settlements, those claimants are free to litigate

16  the merits of their claims before this Court. What PERA proposes, in reality, is to force its own

17  judgment and analysis upon other Subordinated Securities Claimants who, if the proposed class is

18  certified, ***will be stripped of authority to pursue settlements of their own claims***. *See, e.g.*, *Green*,

19  541 F.2d at 1339 ("[M]embers of a (b)(3) class, but not of a (b)(1) class, may choose to opt out and

20  not be bound by the judgment."). Far from protecting against possible prejudice to the Reorganized

21  Debtors, PERA proposes certification under sub-section (b)(1)(A) for the exclusive purpose of

22  serving its own interests (and not those of other Subordinated Securities Claimants).

23          **B.      For Monetary Damages Claims, Certification is Only Available Under Civil Rule
                     23(b)(1)(B) Where, Unlike Here, There is a Limited Fund Available to Satisfy**
24                   **Claims**

25          In the alternative, PERA seeks certification under Civil Rule 23(b)(1)(B) for Class 10A-II

26  members, contending that certification is appropriate because there is a "limited fund" available to

27  satisfy Subordinated Equity Claimants. *See* Renewed 7023 Motion at 20–24. PERA's emphatic

28  pronouncements about the supposed insufficiency of the available stock are simply wrong. There is

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

not a limited fund here. As a preliminary matter, PERA misrepresents the number of shares available to satisfy claimants. There are over 1.5 billion shares available. Then, PERA entirely ignores Section 1.109 of the Plan—which PERA negotiated and which converts any Allowed Subordinated Equity Claim into shares of New HoldCo Common Stock—in arguing that there is a limited fund here.

Civil Rule 23(b)(1)(B), when seeking monetary damages, requires a demonstration that, among other things, the funds available to satisfy the claims are not only limited, but insufficient to meet those obligations.[13] Securities cases will "rarely satisfy" the requirements of a limited fund because "if the defendants are solvent (or insured by a solvent indemnifier) . . . the funds available to pay the claims are not limited." 7 Newberg on Class Actions § 22:77 (5th ed.); *see also In re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1546 (11th Cir. 1987) (reversing certification on limited fund theory because, *inter alia*, "the district court did not indicate that the [] fund initially was intended to be the sole source of recovery for plaintiffs . . . . Consequently, the [] fund is not a limited fund for purposes of Rule 23(b)(1)."); *In re Wash. Mut. Mortg.-Backed Sec. Litig. ("WaMu")*, 276 F.R.D. 658, 668 (W.D. Wash. 2011) ("Plaintiffs have failed to show that there is a definite maximum of the purported fund, or that the remaining funds of WaMu will be inadequate. One might assume that the WaMu assets are at a definite maximum, but Plaintiffs have not shown evidence of this or why the funds are inadequate. The Court thus rejects Plaintiffs' argument [under Rule 23(b)(1)(B)]."). Here the Reorganized Debtors are solvent entities and PERA cannot point to a single instance where a securities class was certified, under Civil Rule 23(b)(1)(B), against a solvent defendant.[14]

---

[13] When seeking monetary damages, class treatment under the "limited fund" theory of Civil Rule 23(b)(1)(B), and *Ortiz*'s three requirements on which PERA relies, all hinge on the inadequacy of the limited fund. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838 (1999).

[14] *See Ortiz*, 527 U.S. at 850 (reversing certification of class for "no adequate demonstration of . . . the upper limit of the fund itself, without which no showing of insufficiency is possible"); *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992) (approving settlement classes where insolvent debtor with book value of $2.3 billion confronted claims of aggregate face value exceeding $200 billion); *In re Dehon, Inc.*, 298 B.R. 206, 216–17 (Bankr. D. Mass. 2003) (employing non-monetary application of Rule 23(b)(1)(B) to adjudicate subordination of defendant class of creditors in adversary proceeding of insolvent debtor).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

PERA misrepresents the number of shares available to satisfy claims. PERA claims that there are "fewer than 600,000,000 shares that could be issued today" for distributions to Class 10A-II. Renewed 7023 Motion at 27-28. To the contrary, there are over 1.5 billion shares that could be issued. *See* Herlich Decl. ¶ 6. Thus, under Section 1.09 of the Plan, the Reorganized Debtors have sufficient shares to satisfy Allowed Subordinated Equity Claims of between $50 billion and $100 billion in hypothetical damages. *See* Keable Decl. ¶¶ 8, 19–20. Regardless, even assuming only 600 million available shares available (as PERA incorrectly does) and a $0 insurance deduction, those shares would nonetheless suffice to satisfy damages of between $19.5 billion and $39 billion. *See* Keable Decl. ¶¶ 8, 17–18.

The primary mathematical error PERA makes appears to be its failure to consider the conversion factors in Section 1.109 of the Plan. Under Section 1.109 of the Plan, if, for example, a claimant has an Allowed Claim of $10,000, the amount of stock needed is not $10,000 worth of stock at current value, but rather an amount of shares pursuant to the conversion formula (which shares theoretically could be worth more or less than $10,000, depending on their market price). In the above example, if the claimant's purchases of common stock underlying her claim were all made on or before October 13, 2017, the formula dictates that the $10,000 Allowed Claim would convert to 154 shares. *See* Keable Decl. ¶ 12. At this conversion factor, $10 billion in Allowed Claims would be satisfied by 154 million shares. If the same claimant's purchases of common stock were all made from May 26, 2018, through and including November 15, 2018, the formula would dictate that the $10,000 Allowed Claim converts to 308 shares. *See* Keable Decl. ¶ 13. At this conversion factor, which is the most favorable to Subordinated Securities Claimants, $10 billion in Allowed Claims would be satisfied by 308 million shares—far less than the 1.5 billion actually available shares, and significantly less than the 600 million shares that PERA incorrectly alleges. *See* Keable Decl. ¶ 21.

In any event, the number of authorized shares is not a limit, as PERA suggests. If, for any reason, the current surplus of available shares were insufficient to immediately satisfy all claims, the

Reorganized Debtors could issue new shares consistent with their corporate by-laws. Thus, certification under Civil Rule 23(b)(1)(B) is unavailable as a matter of law.[15]

## II. IRRECONCILABLE CONFLICTS PREVENT PERA FROM ADEQUATELY REPRESENTING THE SUBORDINATED SECURITIES CLAIMANTS[16]

### A. PERA and Its Counsel Owe Obligations to the Putative Securities Class, Which is Not Coextensive with the Subordinated Securities Claimants

Even if the Proposed Bankruptcy Class could be certified under Rule 23(b)(1), PERA and its counsel cannot adequately represent the Proposed Bankruptcy Class because they already owe duties of loyalty to members of the Putative Securities Class in connection with the Securities Litigation.[17] *See Moreno v. Autozone, Inc.*, No. C05-04432 MJJ, 2007 WL 4287517, at *7 (N.D. Cal. Dec. 6, 2007) (recognizing putative class counsel's "heightened" duties to unnamed class members); *Smith v. Levine Leichtman Capital Partners, Inc.*, No. C 10-00010 JSW, 2011 WL 13153123, at *6 (N.D. Cal. Mar. 9, 2011) (same).[18] If PERA has its way, these two classes will compete to recover their losses (if any) from the same pool of assets—principally, the Debtors' pool of insurance funds.[19]

---

[15] In addition, certification under Civil Rule 23(b)(1)(B) is "wholly inappropriate" where investors' claims vary with their unique personal factual situations and "[o]nly subdivision 23(b)(3) should be applicable" to securities fraud claims. *In re Home-Stake Prod. Co. Sec. Litig.*, 76 F.R.D. 351, 376 (N.D. Okla. 1977) (plaintiffs alleged violations of the Securities Exchange Act); *see also Tober v. Charnita, Inc.*, 58 F.R.D. 74, 81 (M.D. Pa. 1973) ("Only subdivision 23(b)(3) should be applicable to a cause of action, such as the instant one, involving the aggregation of individual claims arising out of one alleged wrong or common course of conduct") (denying certification of putative securities class under Rule 23(b)(1)). Such individual factual situations would come to light upon the taking of discovery.

[16] In addition to failing to satisfy Civil Rule 23(a)'s "typicality" and "adequacy" requirements, PERA also fails to demonstrate the Subordinated Securities Claims are so numerous that joinder of the claims is impracticable. *See* Fed. R. Civ. P. 23(a)(1). PERA misses the obvious point that joinder is practicable and has ***actually happened*** because each of these claimants has affirmatively elected to participate in the Chapter 11 Cases, like all tens of thousands of other claimants that filed claims against the estates.

[17] To be clear, no class has been certified in the District Court and no representative or counsel has demonstrated that it passes muster to adequately represent the putative class under Civil Rule 23(a)(4).

[18] Although the claims asserted in the Securities Litigation arise under the federal securities laws, "California law controls whether an ethical violation occurred." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1122 (9th Cir. 2002).

[19] The same is true of the Alternative Bankruptcy Class, which implicates only Subordinated Equity Claims, and would also be competing for the Reorganized Debtors' insurance assets.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

PERA and its counsel cannot, consistent with their fiduciary and ethical obligations, represent both classes.

Despite PERA's attempt to characterize these two classes as one and the same, they are not. The Proposed Bankruptcy Class is both broader and narrower than the Putative Securities Class. It is **broader** because it encompasses holders of at least 67 of the Reorganized Debtors' securities, *see* McWilliams Decl. ¶ 5(c), compared to the eight securities at issue in the Putative Securities Class. Such claimants include major institutional investors with investments in the tens, if not hundreds, of millions of dollars.[20] These claimants have an interest in hastening and maximizing their recovery (if any) in the Chapter 11 Cases—an interest that runs contrary to those of the Putative Securities Class, where proceedings are delayed pending Judge Davila's ruling on pending motions to dismiss and recovery (if any) is nowhere on the horizon. And the Proposed Bankruptcy Class is **narrower** because many members of the Putative Securities Class have not filed proofs of claim in the Chapter 11 Cases, and are therefore excluded from the Proposed Bankruptcy Class. Having waived their right to recover against the Debtors in the proofs of claim process in the Bankruptcy Court, such persons only care about maximizing their recovery in the Securities Litigation.

PERA and its counsel's irresolvable conflicts between and among the Putative Securities Class and the Proposed Bankruptcy Class were exposed when PERA incorrectly asserted in its appeal of the Confirmation Order that "PG&E's Side C insurance proceeds will not be triggered in this case" because "the Plan requires PG&E to issue stock to Class 10A-II rather than pay cash."[21] On October 26, PERA doubled down on this theory, stating again that "Side C coverage will never be triggered for this purpose because Subordinated Equity Claimants will only receive newly issued stock under

---

[20] *See, e.g.,* Claim Nos. 101156 (Hartford Life and Annuity Insurance Company asserting claim for over $49 million), 101664 (Capital Group Private Client Services asserting claim for over $40 million), 101891 (the American High-Income Municipal Bond Fund asserting claim for over $123 million), 100806 (the State of Oregon by and through the Oregon Investment Council on behalf of the Oregon Short Term Fund asserting claim of over $8 million).

[21] *Brief of Securities Plaintiffs-Appellants In Support Of Appeal Of Confirmation Order Limited To Insurance Deduction Applied To Treatment Of Class 10A-II HoldCo Rescission Or Damage Claims*, No. 20-CV-04567 HSG (N.D. Cal. Sept. 3, 2020) [Dkt. No. 4] at 11 n.4, 15.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

the Plan."[22]  Setting aside that the Reorganized Debtors are indisputably permitted to use their "Side C" insurance coverage to resolve Subordinated Equity Claims, it is noteworthy that PERA's contention to the contrary would work to the detriment of the Proposed Bankruptcy Class, who at current share prices would be significantly better off receiving insurance proceeds than common stock pursuant to the Plan's subordination formula.  Indeed, the only ones who would gain from PERA's tortured interpretation of the Plan would be Putative Securities Class members (and their counsel), who want to preserve the Reorganized Debtors' insurance proceeds for themselves.

Moreover, its counsel certainly should not be paid handsome contingency fees from recoveries by Subordinated Securities Claimants in the proof of claim process—which will, of course, reduce the funds available for distribution to claimants—while at the same time competing for insurance proceeds in the Securities Litigation.  *See, e.g., Moreno*, 2007 WL 4287517, at *7 (disqualifying counsel from simultaneously representing a putative class, and clients with interests adverse to the putative class' interests, and recognizing that putative class counsel "are subject to a 'heightened standard'" of loyalty to unnamed class members, particularly where counsel has "a pecuniary interest" to posture claims to "recover larger attorney's fees"); *Kuper v. Quantum Chem. Corp.*, 145 F.R.D 80, 83 (S.D. Ohio 1992) (denying class certification where "competing claims may impair counsel's ability to vigorously pursue the interests of both classes"); *Smith*, 2011 WL 13153123, at *3 (disqualifying counsel purporting to represent putative classes against the same defendant because counsel was "in a position of having to choose between vigorously enforcing the rights of the [first] class and preserving the monetary recovery available for the [second] class").

These problems are further exacerbated by PERA's proposal to make the Proposed Bankruptcy Class a ***mandatory*** class, which will rob potential class members of any ability to opt out while ***forcing*** them to cede a substantial portion of their recovery—perhaps up to 33%—to PERA's counsel for attorneys' fees and costs.  This is absurd, particularly because (i) many Subordinated Securities Claimants have retained their own counsel to prosecute claims on their

---

[22] *Reply Brief of Securities Plaintiffs-Appellants In Further Support Of Appeal Of Confirmation Order Limited To Insurance Deduction Applied To Treatment Of Class 10A-II HoldCo Rescission Or Damage Claims*, No. 20-CV-04567 HSG (N.D. Cal. Oct. 26, 2020) [Dkt. No. 18] at 18.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

behalf; and (ii) there is nothing prohibiting any Subordinated Securities Claimant from voluntarily retaining PERA's counsel, assuming that a claimant was willing, of course, to knowingly waive in writing counsel's preexisting conflicts of interest.

### B. PERA Cannot Adequately Represent the Interests of Claimants who Purchased Securities that PERA Did Not Purchase

Even setting aside PERA's obvious conflicts of interest by virtue of its concurrent representation of the Putative Securities Class, PERA cannot adequately represent the interests of all of the claimants in the Proposed Bankruptcy Class because it did not purchase the same securities as the members of that other putative class. PERA purchased only HoldCo common stock traded on the NYSE, one of the bonds at issue in the Securities Litigation, and two other bonds that are not part of the Securities Litigation. *See* Claim No. 71345, PERA Rescission or Damage Claim Proof of Claim. By contrast, Subordinated Securities Claimants have filed proofs of claims relating to at least 67 securities in these Chapter 11 Cases. *See* McWilliams Decl. ¶ 5(c).

PERA argues that its claims are "typical" of the Proposed Bankruptcy Class because it "holds both equity and debt claims," and is therefore a claimant in each of Plan Classes 9A, 10A-II, and 10B. Renewed 7023 Motion at 12. But this grossly oversimplifies the task at hand, because each Plan Class encompasses dozens of different securities with different attributes—such as different issuance dates, par values, coupon rates, and even the markets on which the securities were traded— that impact the relative value of asserted claims.

For instance, PERA asks the Court to believe that it can calculate damages for all "equity claimants on a class-wide basis . . . calculated solely on when each claimant bought and/or sold its shares, and in what amounts." Renewed 7023 Motion at 25. That may be true as to HoldCo's common stock.[23] But it is not true as to the eight other equity securities for which claims have been

---

[23] But even with respect to common stock, calculating damages recoverable pursuant to SEC Rule 10b-5 is no easy task, particularly where (as here) a plaintiff purports to claim damages based on disclosures "related to multiple alleged misrepresentations" and "misrepresentations that change in severity during the class period." *See* Cornerstone Research, Estimating Recoverable Damages in Rule 10b-5 Securities Class Actions, at 10, *available at* https://www.cornerstone.com/Publications/Reports/Estimating-Recoverable-Damages-in-Rule-10b-5-Securities-Class-Actions.pdf

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

submitted, all HoldCo preferred stock. *See, e.g.*, *In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, 281 F.R.D. 174, 182 (S.D.N.Y. 2012) (denying class certification on the grounds that plaintiffs had not established that the market for Freddie Mac's preferred shares was efficient and noting "[w]ithout evidence of the prompt effect of unexpected news on market price, the market cannot be called efficient"). PERA has proposed no means for addressing claims by holders of this stock—showing, already, that it will not adequately represent the interests of all Alternative Bankruptcy Class members.

Similarly, PERA claims that "damages owed to debt Securities Claimants are even simpler to calculate, set by a statutory formula" under Section 11 of the Securities Act of 1933. Renewed 7023 Motion at 25. This is also oversimplified. Liability would need to be established for each of the dozens of debt securities—issued pursuant to their own respective registration statements—for which Subordinated Debt Claims have been filed. And even if liability were established, calculating damages is not as formulaic as PERA suggests. To the contrary, calculating damages in Section 11 cases inevitably involves fact- and case-specific inquiries—such as what dates should be used to calculate damages, and whether the "price" or "value" of a security is operative for the calculation— the answers to which may benefit one claimant while hurting another. *See In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, No. 2:08-md-1919 MJP, 2010 WL 4272567, at *11 (W.D. Wash. Oct. 12, 2010) (recognizing ambiguity regarding language in Section 11 damages formula concerning the "time such suit was brought"); *McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995) (recognizing the "value of a security" for purposes of calculating Section 11 damages "may not be equivalent" to the price at which it is sold). Having purchased just three of the scores of debt securities for which claims have been filed, PERA cannot realistically purport to represent all members of the members of Plan Classes 9A and 10B.

On a more basic level, conflicts also exist within the Proposed Bankruptcy Class between Subordinated Equity Claimants and Subordinated Debt Claimants. Because the Plan provides a formula for paying allowed Subordinated Equity Claims, which allows the Reorganized Debtors to satisfy such claims, if Allowed, using insurance proceeds and/or by issuing a certain number of shares, every dollar that is paid out on a Subordinated Debt Claim could reduce the value of any

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

shares issued to Subordinated Equity Claimants.  Put differently, the Subordinated Equity Claimants have an economic incentive to limit recoveries on the Subordinated Debt Claims to enhance the value of any shares might be recovered by the Subordinated Equity Claimants. PERA and its counsel cannot and should not represent both.

Having purchased just a small subset of the securities at issue in the Proposed Bankruptcy Class, PERA has no incentive to develop a "damages formula" that will equitably treat all Subordinated Securities Claimants.  In these situations, federal courts have refused to certify classes. Instead, they create subclasses to address conflicts such as these, or simply deny class treatment altogether.  *See, e.g., In re Lehman Brothers Sec. & ERISA Litig.*, 684 F. Supp. 2d 485, 490 (S.D.N.Y. 2010), *aff'd sub nom, In re Lehman Brothers Mortg.-Backed Sec. Litig.*, 650 F.3d 167 (2d Cir. 2011) (dismissing plaintiffs' claims with respect to those offerings in which they did not purchase securities because plaintiffs could not "have been injured with respect to those offerings").  While PERA meekly claims in a footnote that the Court could create subclasses of bondholders, it offers no viable means of, and no evidentiary support for, doing so.  *See* Renewed 7023 Motion at 9, n.3.

### C.    Discovery Would Be Necessary and Appropriate to Root Out These Conflicts

The Reorganized Debtors submit that the Court need not ever reach this issue to deny the Renewed 7023 Motion.  But were the Court inclined to analyze the prerequisites of Civil Rule 23, discovery would be necessary and appropriate before a certification of any class.  The Court cannot simply accept PERA's attempt to characterize itself as an adequate class representative, or as having claims typical of the putative class, because "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification ***must affirmatively demonstrate*** his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *accord Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 555 (C.D. Cal. 2011) ("Rule 23 requires more than simply pleading sufficient facts."); *see also Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir. 1982) ("[A] a district court may be reversed for premature certification if it has failed to develop a sufficient evidentiary record from which to conclude that the requirements of numerosity, typicality, commonality of question, and adequacy of representation have been met.").

Because the Proposed Bankruptcy Class implicates scores of different securities, as well as options contracts trading those securities—raising serious questions about the adequacy of PERA's representation, among other things—the Reorganized Debtors are entitled to test and challenge PERA's assertion that the Civil Rule 23 requirements are met. Even preliminary approval of the Renewed 7023 Motion would needlessly delay resolution of the Subordinated Securities Claims by saddling the parties for months with the comprehensive discovery necessary to address these potentially dispositive issues. And even then, the Court could be faced with a situation (about halfway through 2021) where PERA has failed to demonstrate satisfaction of the requirements of *any* provision of Civil Rule 23. PERA would have deprived the Subordinated Securities Claimants of the opportunity to receive distributions for over six months with nothing to show for it.

## III. PERA HAS IMPLICITLY CONCEDED THAT THE BANKRUPTCY COURT LACKS JURISDICTION TO HEAR ITS RENEWED RULE 7023 MOTION

On March 6, 2020, PERA appealed the Court's 7023 Order and Memorandum Decision, taking the position that both were final and PERA was not required to seek leave to appeal.[24] In so doing, PERA divested the Bankruptcy Court of matters raised by PERA's appeal—*e.g.*, whether to apply Bankruptcy Rule 7023 here.

Jurisdiction over any matters involved in a pending appeal generally is immediately transferred from the lower court to the court of the appeal. *See United States v. Thorp (In re Thorp)*, 655 F.2d 997, 998 (9th Cir. 1981) (citing *G & M, Inc. v. Newbern*, 488 F.2d 742, 746 (9th Cir. 1973); *Petrol Stops Nw. v. Cont'l Oil Co.*, 647 F.2d 1005, 1010 (9th Cir. 1981); *see also Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *In re Wonder Corp. of Am.,* 81 B.R. 221, 224 (Bankr. D. Conn. 1988) ("[T]he filing of a notice of appeal to a district court divests a bankruptcy court of jurisdiction to proceed with respect to matters raised by such appeal.").

---

[24] *See Brief of Securities Plaintiffs-Appellants*, Case No. 4:20-cv-01708-HSG (N.D. Cal. May 15, 2020) [Dkt. No. 18] at 2 n.1; *Reply Brief of Securities Plaintiffs-Appellants*, Case No. 4:20-cv-01708-HSG (N.D. Cal. June 29, 2020) [Dkt. No. 31] at 3-5.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Even though a Bankruptcy Court has "wide latitude to reconsider and vacate its own prior decisions, not even a bankruptcy court may vacate or modify an order while on appeal." *Bialac v. Harsh Inv. Corp. (In re Bialac)*, 694 F.2d 625, 627 (9th Cir. 1982) (citing *In re Combined Metals Reduction Co.*, 557 F.2d 179, 200-01 (9th Cir. 1977) (same)). *See also Marino v. Classic Auto Refinishing, Inc. (In re Marino)*, 234 B.R. 767, 770 (B.A.P. 9th Cir. 1999) (Bankruptcy Court did not have jurisdiction to grant motion before appellate court issued mandate).

Here, PERA asks the Court to consider the very determination it made just months ago in its prior Memorandum Decision and 7023 Order. By asking the Court to reverse its own decision while the appeal is pending (and has been fully briefed), PERA injects the very confusion and inefficiencies that the divestiture rule was designed to avoid. *See In re Thorp*, 655 F.2d at 998 (quoting 9 Moore, Federal Practice P 203.11 n.1) (pending appeal left the District Court without authority to proceed; District Court's actions were deemed a nullity). Divestiture bars this Court from considering, much less granting, PERA's Renewed 7023 Motion.

## IV. THE PRINCIPLES OF RES JUDICATA AND LAW OF THE CASE PRECLUDE PERA FROM AGAIN SEEKING CLASS CERTIFICATION

The Bankruptcy Court has already decided that Bankruptcy Rule 7023 should not apply here and, under the preclusive principles of *res judicata* and law of the case, the Bankruptcy Court's prior decision should control.

### A. PERA Is Precluded From Again Seeking Relief Under Bankruptcy Rule 7023

The Ninth Circuit has described *res judicata* as embracing two related doctrines: claim preclusion and issue preclusion. *McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir. 1986). For purposes of issue preclusion, "an 'issue' includes any legal theory or factual matter which ***could have been asserted*** in support of or opposition to the issue that was litigated." *Cotchett, Pitre & McCarthy v. Siller*, 520 B.R. 796, 810 (E.D. Cal. 2014), *aff'd sub nom., In re CWS Enters., Inc.*, 870 F.3d 1106 (9th Cir. 2017)). Issue preclusion, otherwise known as collateral estoppel, applies if: (i) the litigant was afforded a full and fair opportunity to litigate the issue in the prior proceeding; (ii) the issue was actually litigated and decided against the litigant in a sufficiently firm decision; and (iii) the issue was necessary to support the adjudication. *Villamar v. Hersh*, 37 F. App'x 919, 920 (9th Cir. 2002)

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1    (citing *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir.1992)). Here, all three elements

2    are met.

3       That the parties here fully litigated the Original 7023 Motion supports the preclusion now.

4    The Court considered not one, but two rounds of briefing, and heard argument. Because the Renewed

5    7023 Motion again seeks an order that Bankruptcy Rule 7023 applies, "issue preclusion bars [its]

6    relitigation." *See Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1531 (9th Cir.

7    1985); *see also Miller v. Cnty. of Santa Cruz*, 39 F.3d 1030, 1034-35 (9th Cir. 1994), *as amended*

8    (Dec. 27, 1994) (prohibiting re-litigation of issue even though it was reframed in different terms).

9    PERA's attempt to distinguish the Original 7023 Motion from the Renewed 7023 Motion based on

10    the "key difference" that PERA now seeks class certification under specific rather than general Civil

11    Rule 23 provisions is not only misleading but also irrelevant. Renewed 7023 Motion at 5. No

12    particular Civil Rule 23 provision was raised in the Original 7023 Motion; the Court declined to

13    permit a class. That ruling entirely encompasses the Renewed 7023 Motion.

14       It is also beyond dispute that PERA now returns to the Court with its Renewed 7023 Motion

15    having "actually litigated"—***and lost***—its Original 7023 Motion. PERA cannot escape the

16    preclusive effect of that determination, having argued to the District Court that the 7023 Order was

17    a valid and final judgment such that leave for an interlocutory appeal was not required. *See* Case

18    No. 20-cv-01708 (HSG) [Dkt. No. 18] at 2 n.1; *id.* [Dkt. No. 31] at 3–5. PERA's admission suffices

19    to hold issue preclusion against it.[25] The 7023 Order was "not avowedly tentative," because PERA

20    filed a notice of appeal seeking its review as a final order. *Lummus Co. v. Commonwealth Oil Refin.*

21    *Co.*, 297 F.2d 80, 89 (2d Cir. 1961), *cert. denied*, 368 U.S. 986 (1962); *see Rogone v. Correia-Sasser*

22    *(In re Correia-Sasser)*, Nos. 2:10-bk-17877-RJH, 2:10-ap-1632-RJH, 2011 Bankr. LEXIS 3072, at

23    *22-23 (Bankr. D. Ariz. Aug. 10, 2011) ("The mere fact . . . that Ms. Correia was able to appeal . . .

24    established the fact that the Arizona court delivered a final and appealable judgment."). With the

---

25    [25] While the Debtors contest the finality of the 7023 Order for purposes of the appeal, the 7023 Order

26    is sufficiently "final" to collaterally estop PERA. "To be 'final' for collateral estoppel purposes, a decision need not possess 'finality' in the sense of 28 U.S.C. § 1291." *Luben Indus., Inc. v.*

27    *United States*, 707 F.2d 1037, 1040 (9th Cir. 1983); Restatement (Second) of Judgments § 13 (1982) (the "Restatement")). Instead, a "final judgment" may be "any prior adjudication" that is

28    "'sufficiently firm' to be accorded conclusive effect." *Id.*

reliance of the Debtors and countless creditors on the results of the 7023 Order, "the litigation of [this] particular issue has reached such a stage that [the Court should see] no really good reason for permitting it to be litigated again." *Lummus Co.*, 297 F.2d at 89.

Finally, there can be no serious question that the Court's denial of Bankruptcy Rule 7023's application was critical to the Memorandum Decision. While the 7023 Order also extended the bar date for holders of securities claims, that extension itself was premised on the Court's refusal to apply Bankruptcy Rule 7023. *See* Memorandum Decision at 4-5 (citing *Schuman v. The Connaught Grp., Ltd. (In re The Connaught Grp., Ltd.)*, 491 B.R. 88, 97 (Bankr. S.D.N.Y. 2013)). Because the Bankruptcy Rule 7023 determination was a critical and necessary element in the Memorandum Decision and Order and fulfills the other elements for issue preclusion, PERA is barred from renewing its Original Rule 7023 Motion.

### B. This Court's Denial of PERA's Original 7023 Motion is Law of the Case

"[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016); *see also Arizona v. California*, 460 U.S. 605, 619 (1983) ("[A] fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive."). Thus, when an issue has previously been "decided explicitly or by necessary implication," the law of the case should control a court's subsequent decision-making. *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990). Because this Court has already denied PERA's 7023 Motion while simultaneously extending the bar date for claims, the issue squarely presented here—to certify a class under Rule 7023—has already been decided. The Court should therefore decline to revisit the issue, and allow what was once settled to remain settled.

As this Court has recognized, the threshold issue presented here has already been decided: "[W]hen I learned that [PERA] had filed this renewed [7023] motion, my first reaction . . . was why are they doing that again?" Oct. 15, 2020 Status Conferencing Hr'g Tr. 15:4–6; *see* 18B Wright & Miller, Fed. Prac. & Proc. § 4478.1 (2d ed. 2020) ("A trial court could not operate if it were to yield to every request to reconsider each of the multitude of rulings that may be made between filing and final judgment"). Parties in interest, from the Reorganized Debtors to thousands of claimants, have

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

relied on the Court's previous decision, which remains pertinent and precludes PERA's efforts to renew the Original 7023 Motion now. The Court should therefore decline to revisit the issue.

## V. THE RENEWED 7023 MOTION SHOULD BE DENIED UNDER THE *MUSICLAND* FACTORS

The Court should again decline to exercise its discretion to apply Bankruptcy Rule 7023 to certify a class because PERA cannot satisfy the *Musicland* factors.

As the Court is aware, Bankruptcy Courts use the *Musicland* factors to determine whether "the benefits derived from the use of the class claim device are consistent with the goals of bankruptcy." *In re Musicland Holding Corp.*, 362 B.R. 644, 651 (Bankr. S.D.N.Y. 2007). If and only if a Bankruptcy Court "first makes a discretionary ruling" to permit the class claim device under *Musicland* does it "then determine whether the requirements of Rule 23 are satisfied." *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 4-5 (S.D.N.Y. 2005); *accord* Memorandum Decision at 2–3 ("Class proofs of claim are permitted in bankruptcy cases, typically using a two-step process, whereby the court first allows the class proof of claim to be filed, and then determines whether certification is appropriate.").

The *Musicland* factors ask whether (i) the class was certified prepetition, (ii) the members of the putative class received notice of the bar date, and (iii) class certification will adversely affect the administration of the estate. *See* Memorandum Decision at 3; *In re Musicland*, 362 B.R. at 654-55 ("The first two considerations—pre-petition certification and notice of the bar date—are critical."). In addressing the *Musicland* factors in PERA's Original 7023 Motion, the Court found that the second factor favored PERA because, in the Court's view, the Debtors had not given actual notice of the Bar Date to all known creditors—*i.e.*, the putative class members in the Securities Litigation. Today, that concern is entirely addressed. At the Court's direction and with the input of PERA, the Court issued an order requiring Debtors to provide actual notice to all putative class members in the Securities Litigation. The second factor now wholly weighs in favor of denying PERA's Renewed 7023 Motion. This Court should thus have little trouble finding—once again—that the *Musicland* factors weigh heavily against the use of the class claim device here.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**A.  PERA Does Not Represent a Prepetition Certified Class**

There is still no certified class in the Securities Litigation.  Given the additional passage of time without certification, this factor should weigh against PERA in the Renewed 7023 Motion.  *See In re Verity Health Sys. of Cal., Inc.*, No. 2:18-BK-20151-ER, 2019 WL 2896189, at *9 (Bankr. C.D. Cal. May 24, 2019) (denying 7023 motion and stating that "[t]he putative class was not certified prepetition, so the first *Musicland* factor weighs against applying Civil Rule 23 to the claims administration process."); *In re Chaparral Energy, Inc.*, No. 16-11144 (LSS), 2018 WL 818309, at *4 (Bankr. D. Del. Feb. 9, 2018) (same).

Contrary to PERA's assertion, in assessing the Original 7023 Motion, the Court did not find that this factor was "irrelevant to these Chapter 11 Cases."  Renewed 7023 Motion at 6.  Rather, the Memorandum Decision merely held that "this factor does not weigh against [PERA]"—*i.e.*, it was neutral.  Mem. Decision at 3.  Moreover, PERA misunderstands this *Musicland* factor.  Bankruptcy Courts consider whether a non-bankruptcy forum had certified the proposed class to determine whether putative class members have a "reasonable expectation" that they need not file an individual proof of claim in compliance with the bar date.  *See In re Musicland*, 362 B.R. at 656; *see also Bailey v. Jamesway Corp. (In re Jamesway Corp.)*, No. 95 B 44821 (JLG), 1997 WL 327105, at *10 (Bankr. S.D.N.Y. June 12, 1997) ("No class was pre-certified such that purported class members who did not choose to file a proof of claim should or could have had any reasonable expectation that they need not comply with the Bar Date Order.").

Here, there is zero risk that the members of PERA's putative class made any such assumption because the Court authorized special actual notice tailored to these potential claimants that informed them of the need to file proofs of claim.  Moreover, based on the class PERA seeks to certify, every putative class member has stepped forward in these Chapter 11 Cases and affirmatively filed a proof of claim.  This factor thus weighs heavily against applying Bankruptcy Rule 7023 here.

**B.  Every Member of PERA's Putative Class Received Actual Notice of the Extended Bar Date**

The Renewed 7023 Motion devotes exactly one half of one sentence to the second "critical" *Musicland* factor—whether members of the putative class received notice of the bar date.  *See*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Renewed 7023 Motion at 6 ("[T]he second factor weighs heavily in favor of applying Rule 7023.") (quoting Memorandum Decision at 3). PERA's rote recitation of the Court's Memorandum Decision completely ignores its direct consequences: the Extended Bar Date and Court-approved actual notice provided to each putative member of the Proposed Bankruptcy Class.

Pursuant to the 7023 Order, the Debtors provided actual notice of the Extended Bar Date to every former or current securities holder who purchased the Debtors' securities during the Subject Period. *See* Pullo Omnibus Decl. ¶¶ 3, 6–7. Because PERA seeks to represent **only** those claimants in Classes 9A, 10A-II, and 10B—*i.e.*, persons or entities who have filed timely proofs of claim[26]— there can be no dispute that each and every putative member received **actual** notice of the Extended Bar Date. There are no absent class members here, only actual claimants in the Chapter 11 Cases— many of whom are represented by independent counsel. There is no conceivable justification for stripping these claimants of their right to negotiate their own settlements or hire counsel of choice in favor of mandatory representation by PERA's counsel. *See, e.g.*, *In re Syncor Erisa Litig.*, 227 F.R.D. 338, 346 n.11 (C.D. Cal. 2005) (members or Civil Rule 23(b)(1) classes "do not have mandatory 'opt out' rights").

Nor is there any reason to certify a litigation class comprised of individuals and entities who have already filed proofs of claim. *See, e.g.*, *In re Circuit City Stores, Inc.*, No. 08-35653, 2010 Bankr. LEXIS 1774, at *19 (Bankr. E.D. Va. May 28, 2010) ("Bankruptcy is set up to efficiently handle large numbers of claims."), *aff'd sub nom*, *Gentry v. Circuit City Stores, Inc. (In re Circuit City Stores, Inc.)*, 439 B.R. 652 (E.D. Va. 2010), *aff'd*, 668 F.3d 83, 94 (4th Cir. 2012) (even several thousand claims would be better handled by the well-functioning claims resolution process already in place than by class treatment). This second factor is the sole reason the Court previously determined that an extension of the Bar Date was necessary. Now that the Debtors have provided

---

[26] *See* 7023 Order ¶ 10 ("Notice of the Extended Securities Claim Bar Date as provided herein shall be deemed good and sufficient notice to all Securities Claimants of the requirement to file a Rescission or Damage Claim by the Extended Securities Claim Bar Date. Securities Claimants who do not file a Rescission or Damage Claim by the Extended Securities Claim Bar Date may not vote or receive a distribution under any Plan of Reorganization on account of such Claim, and such Claim will be subject to discharge."); *see also* Bankruptcy Rule 3003(c)(3).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

actual notice of the Extended Bar Date to all Subordinated Securities Claimants, this factor strongly favors denying the Renewed 7023 Motion.

### C.    Denying the Renewed 7023 Motion Would Better Serve the Administration of the Estates for all Stakeholders

As the Bankruptcy Court stated in *Musicland*, whether class certification will adversely affect the administration of a debtor's estate centers on (i) the timing of the motion for certification, and (ii) whether a plan has been negotiated, voted on, or confirmed.  *See In re Musicland*, 362 B.R. at 654–55 (collecting cases).  Both considerations favor denial of certification here.  The Renewed 7023 Motion comes seven months after this Court rejected PERA's earlier attempt to apply Bankruptcy Rule 7023, five months after the Extended Bar Date, and three months after the Effective Date.  For the better part of a year, all parties in interest have been operating under the understanding that the 7023 Order would control and Subordinated Securities Claims would be addressed through the claims process.  The Debtors drafted, proposed, and confirmed the Plan on that basis, and the Reorganized Debtors developed the proposed Securities Claims Procedures at the Court's direction based on that understanding.  Now, PERA seeks to delay potential distributions to individual Subordinated Securities Claims by divesting them of the right and ability to pursue settlements with the Reorganized Debtors without PERA's approval.

In claiming that post-confirmation class certification is appropriate here, PERA invokes *In re Sequoia Senior Solutions, Inc.*, No. 16-11036, 2017 Bankr. LEXIS 1606 (Bankr. N.D. Cal. June 9, 2017) (Jaroslovsky, J.).  The Court should not be swayed by PERA's mischaracterization of that case.  *Compare* Renewed 7023 Motion at 7 ("In *Sequoia*, this bankruptcy court *certified a class* of creditors with state-law claims for overtime pay after a confirmed plan allocated a fund for the payment of unsecured creditors.") *with In re Sequoia Senior Sols.*, 2017 Bankr. LEXIS 1606, at *5–6 ("The court at this time *makes no ruling regarding certification of the class* or the merits of the claim, and holds only that the request to apply Rule 7023 is timely and that the equities of the case militate in favor of allowing the claim to be asserted on behalf of employees *if the other legal requirements can be met*.").  There, *only* the class representative filed a proof of claim.  *See id.,* at *2.  The issue before the Bankruptcy Court was whether to expunge the class claim such that the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

class representative would be "the only employee paid anything on account of the alleged Labor Code violations," or to apply Bankruptcy Rule 7023. *See id.* Because the plan capped the debtor's liability to allowed unsecured claims at $150,000, the Bankruptcy Court would not permit the debtor to "use the Chapter 11 process to entirely avoid its responsibility to pay its employees according to law." *Id.,* at *5. Thus, that court held "only" that the request to apply Bankruptcy Rule 7023 was timely. *See id.* If, and only if, the plaintiffs could satisfy the requirements of Civil Rule 23—and the California Labor Code—would the employees share in the plan-created pot. *See id.,* at *5–6.

Unlike in *Sequoia*, there is no danger that an entire category of creditors will be shut out here. Every member of the Proposed Bankruptcy Class has filed a proof of claim. PERA, on the other hand, seeks to impose a mandatory class on all Subordinated Securities Claimants without affording those claimants the ability to object to PERA's Renewed 7023 Motion. The equities here do not favor the application of Bankruptcy Rule 7023.

### 1. Class Certification Would Delay Distributions to Claimants

As many courts have recognized, class certification can delay distributions to claimants. *See, e.g.*, *In re Ephedra Prods.*, 329 B.R. at 5 ("[C]lass litigation is **inherently more time-consuming** than the expedited bankruptcy procedure for resolving contested matters."). In *Ephedra*, the District Court correctly recognized that applying Rule 23 to the claims, after the plan had already been submitted to a vote, "would initiate protracted litigation that might delay distribution of the estate *for years*." *Id.* There, as here, pre-certification discovery would have been necessary for multiple classes, as well as the attorneys seeking to represent them.[27] *See id.* In *Bally*, the Bankruptcy Court held that class certification would adversely affect the administration of the chapter 11 cases by "adding layers of procedural and factual complexity that accompany class-based claims, siphoning the Debtors' resources and interfering with the orderly progression of the reorganization." *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 621 (Bankr. S.D.N.Y. 2009), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009).

---

[27] PERA's Renewed 7023 Motion proposes at least three separate classes. *See* Renewed 7023 Motion at 9 (describing one class under Rule 23(b)(1)(A), comprising all Subordinated Securities Claimants and another class under Ruler 23(b)(1)(b), comprised exclusively of Plan Class 10A-II); *id.* at 9 n.3 (describing a putative bondholder subclass).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The Proposed Bankruptcy Class would foreclose the ability of Subordinated Securities Claimants to engage with the Reorganized Debtors on settlement using counsel of their own choice. The Securities Claims Procedure, on the other hand, are likely to streamline recoveries for thousands of claimants.

In contrast, the Renewed 7023 Motion seeks to frontload merits litigation—further burdening the Reorganized Debtors, the Court, and delaying distributions to Subordinated Securities Claimants. *See* Renewed 7023 Motion at 8–9. Specifically, to avoid "prejudice" to claimants in the negotiating process, PERA proposes that the Court establish certainty as to the validity and value of each claim *before* the parties negotiate settlement. *See* Renewed 7023 Motion at 8 (stating that "the ADR proposal leaves unaddressed myriad other issues—ones common to the proposed Class—such as how claimants can make informed settlement decisions ***before their allowed damages have been calculated***" and that "Securities Claims values here will all rise—or fall—on the same issues"). Seemingly, PERA would delay any and all attempts to resolve the Subordinated Securities Claims until *after* this Court considers a yet-to-be-filed objections to the Subordinated Securities Claims, presides over merits discovery, makes a determination as to the validity the filed claims, and calculates allowed damages. It would likely be years before the Reorganized Debtors made a distribution to any Subordinated Securities Claimant. Of course, at that point there would be nothing to negotiate. The Court would have already determined whether to allow each claim and, if so, at what amount.

### 2. *Class Certification Would Needlessly Waste Estate Resources*

Following entry of the 7023 Order, the Reorganized Debtors invested significant time and resources in addressing the Subordinated Securities Claims. *First*, the Debtors provided actual notice of the Extended Bar Date to over 300,000 current and former securities holders. Paper and postage alone cost over $600,000. *Second*, the Reorganized Debtors and their professionals spent months logging, analyzing, and transcribing these proofs of claim from handwritten claim forms. *Third*, the Reorganized Debtors and their professionals have invested considerable time developing procedures to address each of the individual Subordinated Securities Claims, including the many deficiencies observed in the filed proofs of claim. All of these efforts, each of which came with significant

expense to the Debtors and Reorganized Debtors, were based on the Court's denial of the Original Rule 7023 Motion and would be entirely wasted if the Court were to reverse itself on its prior 7023 Order.

Accordingly, the third *Musicland* factor also heavily weighs in favor of denying the Renewed 7023 Motion.

## VI. PERA'S PROPOSED FRAMEWORK IS UNWORKABLE

Contrary to PERA's claim, its alternative proposals do not provide "a straightforward process for class-wide resolution." Renewed 7023 Motion at 20, 24. PERA's proposal mandates that the Court assess, at a minimum, the validity of each Subordinated Securities Claim before certifying any class. *See* Renewed 7023 Motion, Ex. C ¶ 6. PERA also suggests that mediation cannot proceed in any meaningful way until there is certainty regarding the value of the Subordinated Securities Claims. *See id.* at 8. Neither proposal makes sense.

But even assuming PERA seeks to certify classes of ***filed*** (as opposed to valid) Subordinated Securities Claims, its proposed framework is unworkable. As "Option 1," PERA suggests appointing a class mediator "for global resolution without necessarily separating out the discrete common issues." Renewed 7023 Motion at 24.[28] But the damages formula PERA proposes for mediation is ***only*** necessary in the context of a class action with absent class members—in a situation when there is not complete trading data and assumptions have to be made about the size of the class and the trading within the class. Here, all of the possible members of the proposed classes have submitted proofs of claim in these Chapter 11 Cases and potentially have actual damages that can be calculated if those claimants provide their complete trading information. Their individual maximum potential damage can be calculated and the parties can negotiate settlements based on those amounts.

As "Option 2," PERA suggests that the Court certify "issues classes" under Rule 23(c)(4) in order to resolve "class-wide issues." Renewed 7023 Motion at 25–26. Whether (i) a particular set of claims were filed before the Extended Bar Date, or (ii) a filer was the "authorized agent" of a Subordinated Securities Claimant are not class-wide issues. They affect some claimants, but not all.

---

[28] PERA's offer that "both sides" bear the costs of the mediator—while magnanimous—would simply reduce distributions to Subordinated Securities Claimants. *Id.*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Adopting PERA's proposal would delay distributions by months, if not longer, while the Reorganized Debtors whittled away at the claims registry to determine the true number of remaining Subordinated Securities Claimants before mediation or settlement negotiations even started. Meanwhile, addressing issues as part of Rule 23(c)(4) subclasses presents a series of convoluted and possibly insoluble due process problems that the Court must address if it certifies mandatory issue classes within PERA's proposed framework. The result would subject non-consenting claimants to adjudication without the opportunity to settle or prosecute their individual claims on their own terms. *See Wal-Mart*, 564 U.S. at 362 (noting that Rule 23(b)(1) and (b)(2) "provide[] no opportunity . . . to opt out" and that "individualized monetary claims belong in Rule 23(b)(3)").

PERA's suggestion that the Court prioritize "the availability of [the Reorganized Debtors'] 'truth-on-the-market' defense" is even more absurd. That defense, as it relates to materiality, is "a merits issue to be reached at trial." *Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*, 660 F.3d 1170, 1177 (9th Cir. 2011); *accord Baker v. Seaworld Ent., Inc.,* No. 14cv2129-MMA (AGS), 2017 U.S. Dist. LEXIS 196235, at *34-35 (S.D. Cal. Nov. 29, 2017). In other words, PERA proposes—by virtue of its mandatory class—that this Court bar every Subordinated Securities Claimant from resolving its respective claim until after the merits have been adjudicated to finality. Worse still, PERA proposes this "alternative" in a transparent attempt to circumvent the requirements of Civil Rule 23(b)(3), and certify a class without ever having to confront the Reorganized Debtors' argument the alleged misrepresentations had no price impact on the securities at issue. *See, e.g.*, *Carpenters Pension Tr. Fund for N. Cal. v. Allstate Corp. (In re Allstate Corp. Sec. Litig.)*, 966 F.3d 595, 608 (7th Cir. 2020) ("[A] district court must be willing to consider evidence offered by the defense to show that the alleged misrepresentations did not actually affect the price of the securities. [*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014)] requires that."). The Court should not relieve PERA of this burden, while depriving other Subordinated Securities Claimants of the ability to resolve their own claims, and risking the chance of zero recovery.

1

## CONCLUSION

2      For the foregoing reasons, this Court should (i) deny the Renewed 7023 Motion, (ii) grant the

3 Securities Claims Procedures Motion, and (iii) grant the Reorganized Debtors such other relief as is

4 just and proper.

5

6 Dated:  October 29, 2020

7                                                          **WEIL, GOTSHAL & MANGES LLP**

8                                                          **KELLER BENVENUTTI KIM LLP**

9                                                          By:    *s/ Richard W. Slack*

10                                                                 Richard W. Slack

11                                                          *Attorneys for the Debtors and*
                                                           *Reorganized Debtors*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Weil, Gotshal & Manges LLP*
767 Fifth Avenue
New York, NY 10153-0119