WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
Fax: (415) 636-9251

*Attorneys for Debtors and Reorganized Debtors*

**Compass Lexecon**
332 South Michigan Ave., Suite 1300
Chicago, Illinois 60604

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**In re:**

**PG&E CORPORATION,**

**- and -**

**PACIFIC GAS AND ELECTRIC COMPANY,**

**Debtors.**

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

** ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).*

Case Nos. 19-30088 (DM) (Lead Case)
(Jointly Administered)

**DECLARATION OF MICHAEL A. KEABLE IN SUPPORT OF THE REORGANIZED DEBTORS' OBJECTION TO SECURITIES LEAD PLAINTIFF'S RENEWED MOTION TO APPLY BANKRUPTCY RULE 7023 AND CERTIFY A LIMITED CLASS**

I, Michael A. Keable, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

## I. QUALIFICATIONS

1. I am an Executive Vice President of Compass Lexecon, an economics consulting firm specializing in the application of economics to a variety of legal and regulatory matters. Among the staff and professional affiliates of Compass Lexecon are several prominent academics and a group of full time economists, accountants, computer programmers, and research assistants.

2. I have been employed by Compass Lexecon for over thirty years and have specialized in the areas of securities markets, damages, corporate finance, and financial statement analysis, primarily in the context of securities litigation. I have worked on hundreds of matters involving market efficiency, materiality, loss causation, and damages. My responsibilities have included designing, performing, and supervising economic studies of various issues. I have served as a consulting and/or testifying expert on economic issues for, among others, the United States Department of Justice, the United States Internal Revenue Service, and the United States Securities and Exchange Commission.

3. I am a member of the American Economic Association and the American Finance Association. I received a B.A. in History from The University of Chicago and an M.B.A with concentrations in Finance and Business Policy from The University of Chicago Graduate School of Business. My curriculum vitae, which lists my prior testimony and publications, is attached as Appendix A.

4. I submit this declaration in support of the *Reorganized Debtors' Opposition to PERA's Renewed Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class*, filed by the Public Employees Retirement Association of New Mexico ("**PERA**").[1] The matters stated herein are based upon my personal knowledge, information provided by counsel, my discussions with other Compass

[1] Capitalized terms used but not herein defined have the meanings ascrived to such terms in the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8048] (as it may be amended, modified, or supplemented and together with any exhibits or schedules thereto, the "**Plan**").

**Compass Lexecon**
332 South Michigan Ave., Suite 1300
Chicago, Illinois 60604

Lexecon professionals, and my review of relevant information and documents. If called upon, I would testify to the facts set forth in this declaration.

**II. ASSIGNMENT**

5. Compass Lexecon has been asked by counsel for PG&E Corporation ("**HoldCo**") and Pacific Gas and Electric Company (the "**Utility**" and, collectively, the "**Debtors**" or "**Reorganized Debtors**," as applicable) to provide support to counsel in connection with their provision of legal advice to the Reorganized Debtors concerning the proofs of claim filed by certain claimants alleging claims for rescission or damage under federal securities laws based on purchases of (i) HoldCo common stock and (ii) publicly-traded senior notes issued by the Utility after April 29, 2015, in each case purchased during the period from April 29, 2015 through November 15, 2018, inclusive.

6. This declaration sets forth my observations, on behalf of Compass Lexecon, regarding certain contentions contained in PERA's Renewed 7023 Motion.[2] I understand that, with respect to claims based on the purchase of HoldCo common stock ("**HoldCo Rescission or Damage Claims**"), which are classified under Class 10A-II of the Plan, PERA contends that "with fewer than 600,000,000 shares that could be issued today (many of which are earmarked for others), Reorganized Debtors could not even cover the $8.6 billion of ***liquidated*** damages listed in the filed proofs of claim (to say nothing of unliquidated damages) – even if all such shares could issue at the current trading price." Renewed 7023 Motion at 20–22 (emphasis in original).

7. I further understand that HoldCo Rescission or Damage Claims, if allowed ("**Allowed HoldCo Rescission or Damage Claims**"), receive distributions, in full satisfaction of the claim, pursuant to the Plan.

8. As explained below, assuming PERA is correct that no more than 600 million shares of New HoldCo Common Stock are available to satisfy Allowed HoldCo Rescission or Damage Claims, those shares would be sufficient to satisfy allowed claims totaling at least $19.5 billion and up to $39 billion of hypothetical damages under the formula set forth in Section 1.109 of the Plan. Moreover, I understand from the Reorganized Debtors' counsel that, contrary to PERA's assertion, 1,541,475,609

[2] *Securities Lead Plaintiff's Memorandum of Points and Authorities in Support of Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class* [Dkt. No. 9152] (the "**Renewed 7023 Motion**").

**Compass Lexecon**
332 South Michigan Ave., Suite 1300
Chicago, Illinois 60604

shares of New HoldCo Common Stock are available to satisfy Allowed HoldCo Rescission or Damage Claims. Applying this number of available shares to the Section 1.109 formula, the Reorganized Debtors have sufficient shares of New HoldCo Common Stock to satisfy Allowed HoldCo Rescission or Damage Claims totaling between $50 billion and $100 billion of hypothetical damages.[3]

9. While I offer no opinion regarding the number of outstanding shares of New HoldCo Common Stock available to satisfy Allowed HoldCo Rescission or Damage Claims, based on our calculations, it appears that PERA failed to consider the impact of the formula set forth in Section 1.109 of the Plan in assessing whether the Reorganized Debtors will be able to satisfy any Allowed HoldCo Rescission or Damage Claims.

## III. THE PLAN'S TREATMENT OF CLASS 10A-II CLAIMS

10. I understand that, under Section 4.14 of the Plan, Allowed HoldCo Rescission or Damage Claims will receive the following treatment:

> In full and final satisfaction, settlement, release, and discharge of any HoldCo Rescission or Damage Claim . . . each holder of an Allowed HoldCo Rescission or Damage Claim shall receive a number of shares of New HoldCo Common Stock equal to such holder's HoldCo Rescission or Damage Claim Share.

11. I also understand that the HoldCo Rescission or Damage Claim Share is defined under Section 1.109 of the Plan and is a formula for converting, in full satisfaction of the claim, an Allowed HoldCo Rescission or Damage Claim into shares of New HoldCo Common Stock, depending on the purchase date for each HoldCo common share underlying the Allowed HoldCo Rescission or Damage Claim. Section 1.109 of the Plan states:

> [W]ith respect to an Allowed HoldCo Rescission or Damage Claim, a number of shares of New HoldCo Common Stock equal to the sum of the following: (a) the portion of such Allowed HoldCo Rescission or Damage Claim relating to purchases of common stock of HoldCo on or before October 13, 2017, less the Insurance Deduction on account of such portion of such Allowed HoldCo Rescission or Damage Claim, divided by 65.00; and (b) the portion of such Allowed HoldCo Rescission or Damage Claim relating to purchases of common stock of HoldCo from October 14, 2017, through and including December 20, 2017, less the Insurance Deduction on account of such portion of such Allowed HoldCo Rescission or Damage Claim, divided by 46.50; and (c) the portion of such Allowed

[3] Compass Lexecon does not endorse the analytical results of these calculations as appropriate estimates of claimants' actual losses, if any, attributable to alleged misstatements.

Compass Lexecon
332 South Michigan Ave., Suite 1300
Chicago, Illinois 60604

> HoldCo Rescission or Damage Claim relating to purchases of common stock of HoldCo from December 21, 2017, through and including May 25, 2018, less the Insurance Deduction on account of such portion of such Allowed HoldCo Rescission or Damage Claim, divided by 37.25; and (d) the portion of such Allowed HoldCo Rescission or Damage Claim relating to purchases of common stock of HoldCo from May 26, 2018, through and including November 15, 2018, less the Insurance Deduction on account of such portion of such Allowed HoldCo Rescission or Damage Claim, divided by 32.50.

12. Sub-section (a) of Section 1.109 of the Plan relates to claimants who purchased HoldCo common stock earliest in the period, *i.e.*, on or before October 13, 2017. Sub-section (a) requires the smallest number of shares of New HoldCo Common Stock to satisfy an Allowed HoldCo Rescission or Damage Claim at any given hypothetical damage amount because the amount of the Allowed HoldCo Rescission or Damage Claim is divided by the largest conversion factor (65.00). For example, assuming a $0 Insurance Deduction, an Allowed HoldCo Rescission or Damage Claim of $10,000, based exclusively on a purchase of HoldCo common stock on or before October 13, 2017, would require 154 shares of New HoldCo Common Stock ($10,000 / 65.00 = 153.8) (I understand that based on the first decimal place, fractional shares are rounded to the nearest whole number in accordance with Section 5.10 of the Plan).

13. Sub-section (d) of Section 1.109 of the Plan relates to claimants who purchased HoldCo common stock latest in the period, *i.e.*, from May 26, 2018 through and including November 15, 2018. Sub-section (d) requires the greatest number of shares of New HoldCo Common Stock to satisfy an Allowed HoldCo Rescission or Damage Claim at any given hypothetical damage amount because the amount of the Allowed HoldCo Rescission or Damage Claim is divided by the smallest conversion factor (32.50). For example, assuming a $0 Insurance Deduction, an Allowed HoldCo Rescission or Damage Claim of $10,000, based exclusively on a purchase of shares from May 26, 2018 through and including November 15, 2018, would require 308 shares of New HoldCo Common Stock ($10,000 / 32.50 = 307.7).

## IV. ANALYSIS

14. Assuming a $0 Insurance Deduction and 600 million available shares of New HoldCo Common Stock, based on Section 1.109 of the Plan, the range of aggregate Allowed HoldCo Rescission or Damages Claims that could be satisfied from those 600 million shares of New HoldCo Common

**Compass Lexecon**
332 South Michigan Ave., Suite 1300
Chicago, Illinois 60604

Stock is between $19.5 billion and $39 billion. I note that this is at least twice the hypothetical total ($10 billion) asserted by PERA. *See Securities Lead Plaintiff's Objection to Reorganized Debtors' Motion to Approve Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* [Dkt. No. 9189] at 5 n. 5. The derivation of this calculation is as follows.

15. To arrive at the minimum amount of hypothetical damages that 600 million shares of New HoldCo Common Stock could satisfy, one assumes that all Allowed HoldCo Rescission or Damages Claims are based on purchases of HoldCo common stock from May 26, 2018 through and including November 15, 2018. This is because, as discussed in paragraph 13 above, sub-section (d) of Section 1.109 of the Plan requires the greatest number of shares of New HoldCo Common Stock to satisfy an Allowed HoldCo Rescission or Damage Claim at any given amount.

16. Accordingly, assuming a $0 Insurance Deduction, if 600 million shares of New HoldCo Common Stock were available as PERA contends, those shares would be sufficient to satisfy at least $19.5 billion of Allowed HoldCo Rescission or Damage Claims based on application of sub-section (d) of Section 1.109 of the Plan.[4]

17. To arrive at the maximum amount of hypothetical damages that 600 million shares of New HoldCo Common Stock could satisfy, one assumes that all Allowed HoldCo Rescission or Damages Claims are based on purchases of HoldCo common stock on or before October 13, 2017. This is because, as discussed in paragraph 12 above, sub-section (a) of Section 1.109 of the Plan requires the smallest number of shares of New HoldCo Common Stock to satisfy an Allowed HoldCo Rescission or Damage Claim at any given amount.

18. Accordingly, assuming a $0 Insurance Deduction, if 600 million shares of New HoldCo Common Stock were available as PERA contends, those shares would be sufficient to satisfy up to

[4] Under Section 1.109 of the Plan, Allowed HoldCo Rescission or Damage Claims based on purchases in the three other periods are divided by greater amounts (37.25, 46.50, and 65.00), which means any assumption from the other periods will increase the amounts of Allowed HoldCo Rescission or Damage Claims that are satisfied by the 600 million shares. For example, if 600 million shares of New HoldCo Common Stock were allocated equally between the four periods, assuming $0 Insurance Deduction, they are sufficient to satisfy damages of $27.2 billion = ((150 mm shares x 32.50) + (150 mm shares x 37.25) + (150 mm shares x 45.50) + (150 mm shares x 65.00)).

Compass Lexecon
332 South Michigan Ave., Suite 1300
Chicago, Illinois 60604

$39 billion of Allowed HoldCo Rescission or Damage Claims based on application of sub-section (a) of Section 1.109 of the Plan.

19. I understand from counsel for the Reorganized Debtors that PERA is in error when it asserts that fewer than 600 million shares of New HoldCo Common Stock are available. Instead, I am informed that 1,541,475,609 shares of New HoldCo Common Stock are currently available.

20. Applying Section 1.109 of the Plan, 1,541,475,609 shares of New HoldCo Common Stock would be sufficient to satisfy hypothetical Allowed HoldCo Rescission or Damage Claims in the amount of between $50.1 billion and $100.2 billion, assuming a $0 Insurance Deduction.

21. Alternatively, assuming a $0 Insurance Deduction and hypothetical Allowed HoldCo Rescission or Damage Claims of $10 billion, the maximum number of shares of New HoldCo Common Stock that the Reorganized Debtors would need to satisfy all Allowed HoldCo Rescission or Damage Claims is approximately 307.7 million ($10 billion / 32.5), which is less than 20 percent of the 1,541,475,609 shares I understand are available to them. This calculation assumes that all Allowed HoldCo Rescission or Damage Claims were attributable to purchases of HoldCo common stock between May 26, 2018 and November 15, 2018 (i.e., they fall within subsection (d) of Section 1.109 of the Plan), as any other assumption reduces the number of required shares.

**Compass Lexecon**
332 South Michigan Ave., Suite 1300
Chicago, Illinois 60604

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed on October 29, 2020, in Chicago, Illinois.

Michael A. Keable

**Compass Lexecon**
332 South Michigan Ave., Suite 1300
Chicago, Illinois 60604