WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 415 636 9251

*Attorneys for Debtors and
Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).* | Case Nos. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>**REORGANIZED DEBTORS' REPLY IN FURTHER SUPPORT OF THE MOTION TO APPROVE SECURITIES ADR AND RELATED PROCEDURES FOR RESOLVING SUBMITTED SECURITIES CLAIMS**<br><br>Date: November 17, 2020<br>Time: 11:00 a.m. (Pacific Time)<br>Place: Video conference<br><br>**Related Docket Nos.:** 8964, 9189–9201, 9207–9211, 9213–9214, 9216, 9218–9220, 9225–9230, 9233–9244, 9252. |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

PG&E Corporation ("**HoldCo**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**" and as reorganized pursuant to the Plan, the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this reply (the "**Reply**") in further support of the *Reorganized Debtors' Motion to Approve Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* [Dkt. No. 8964] (the "**Motion**"), and in response to the objections to the Securities Claims Procedures Motion filed by the Public Employees Retirement Association of New Mexico ("**PERA**") [Dkt. No. 9189] (the "**PERA Objection**"), Chevron Master Pension Trust and Chevron UK Pension Plan ("**Chevron**") [Dkt. No. 9190] (the "**Chevron Objection**," and together with the PERA Objection, the "**Objections**"), and the joinders thereto [Dkt. Nos. 9191–9201, 9207–9211, 9213–9214, 9216, 9218–9220, 9225–9230, 9233–9244, 9252] (the "**Joinders**," and the entities that filed the Joinders, collectively with PERA and Chevron, the "**Objectors**").

In support of this Reply, the Reorganized Debtors submit the *Declaration of Edward J. Radetich, Jr.* (the "**Radetich Declaration**"), filed concurrently herewith.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................1

ARGUMENT ......................................................................................4

I.  THE SECURITIES CLAIMS PROCEDURES PROTECT THE CLAIMANTS' RIGHTS TO DUE PROCESS ..........................................................4

II.  THE SECURITIES CLAIMS INFORMATION PROCEDURES FACILITATE THE PROVISION OF NECESSARY, TARGETED TRADING INFORMATION ..................7

    A.  Individualized Trading Details Are Necessary to Properly Assess the Potential Value of Subordinated Securities Claims .................................................7

    B.  The Securities Claims Information Procedures Are Consistent with Bankruptcy Code Section 502 and Bankruptcy Rule 3001 ...................................9

III.  THE SECURITIES ADR PROCEDURES ARE A FAIR AND PRAGMATIC SYSTEM THAT FACILITATE CLAIMS ADMINISTRATION ...................................11

    A.  The Offer Procedures Formalize Traditional Practices of Offer and Acceptance .............................................................12

    B.  The Mediation Procedures Protect Claimants' Interests ..........................13

        1.  The Securities ADR Procedures Do Not Impose Undue Pressure on Subordinated Securities Claimants, Who May Retain Counsel if They Desire ..............................13

        2.  The Securities ADR Procedures Provide for the Appointment of Court-Approved, Objective, and Experienced Mediators Capable of Fairly Mediating the Subordinated Securities Claims ...............................14

        3.  The Abbreviated and Standard Mediation Processes Are Flexible, Ordinary, and Unremarkable ..............................17

IV.  THE SECURITIES OMNIBUS OBJECTION PROCEDURES ARE NECESSARY AND APPROPRIATE ........................................................18

    A.  The Objectors Misstate Various Aspects of the Securities Omnibus Objection Procedures ..................................................19

    B.  The Specific Grounds for Omnibus Objections Are Appropriate .........................22

V.  THE SECURITIES CLAIMS PROCEDURES ARE SUPERIOR ...................................26

VI.  CONCLUSION ...............................................................27

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alvarado Cmty. Hosp. v. Super. Ct.*,
   173 Cal. App. 3d 476 (Ct. App. 1985).................................................................17

*In re Atl. Pipe Corp.*,
   304 F.3d 135 (1st Cir. 2002).............................................................................6

*In re Bally Total Fitness of Greater N.Y., Inc.*,
   402 B.R. 616 (Bankr. S.D.N.Y. 2009)..............................................................14

*Cleveland Bd. of Educ. v. Loudermill*,
   470 U.S. 532 (1985)............................................................................................5

*In re Fayetteville-Floyd Gas Co.*,
   No. 12-20265, 2014 WL 8663585 (Bankr. S.D. Tex. Nov. 17, 2014) ........................21

*Fleet v. U.S. Consumer Council, Inc. (In re Fleet)*,
   103 B.R. 578 (E.D. Pa. 1989)...........................................................................21

*Folsom v. Butte Cnty. Ass'n of Gov'ts*,
   32 Cal. 3d 668 (1982)......................................................................................14

*Grimm v. City of Portland*,
   971 F.3d 1060 (9th Cir. 2020)............................................................................5

*Hansberry v. Lee*,
   311 U.S. 32 (1940)..............................................................................................4

*In re Heath*,
   331 B.R. 424 (B.A.P. 9th Cir. 2005)...............................................................9, 10

*In re Liberty Asset Mgmt. Corp.*,
   No. 2:16-BK-13575-ER, 2019 WL 122827 (Bankr. C.D. Cal. Jan. 7, 2019)...............9

*Loc. 808, Bldg. Maint., Serv. & R.R. Workers v. Nat'l Mediation Bd.*,
   888 F.2d 1428 (D.C. Cir. 1989)..........................................................................6

*Lundell v. Anchor Constr. Specialists, Inc.*,
   223 F.3d 1035 (9th Cir. 2000).......................................................................9, 11

*Mathews v. Eldridge*,
   424 U.S. 319 (1976).......................................................................................5, 6

*McMahan & Co. v. Wherehouse Ent., Inc.*,
   65 F.3d 1044 (2d Cir. 1995)...............................................................................7

Case: 19-30088   Doc# 9378   Filed: 10/29/20   Entered: 10/29/20 23:10:47   Page 4 of
32

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*In re McNemar*,
No. 18-40208 CN, 2019 WL 2482866 (Bankr. N.D. Cal. May 3, 2019) ........................9

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) ........................4

*In re Musicland Holding Corp.*,
362 B.R. 644 (Bankr. S.D.N.Y. 2007) ........................14

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001) ........................23

*In re PTC Therapeutics, Inc. Secs. Litig.*,
No. 2:16-cv-01224-KM-MAH (D.N.J. Nov. 14, 2016) ........................9

*Richards v. Jefferson Cnty.*,
517 U.S. 793 (1996) ........................5

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................5

*Woods v. Holy Cross Hosp.*,
591 F.2d 1164 (5th Cir. 1979) ........................6

**Statutes**

11 U.S.C. § 502(a) ........................13

15 U.S.C. § 77k(e) ........................11

15 U.S.C. § 78u-4(e) ........................11, 14

28 U.S.C. §§ 651–658 ........................10

**Other Authorities**

Bankr. L.R. 9014-1(3) ........................19

Fed. R. Bankr. P. 3001 ........................13

Fed. R. Bankr. P. 3007 ........................26

Fed. R. Civ. P. 23 ........................6, 30

N.D. Cal. ADR L.R. 6-10(d) ........................10

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**PRELIMINARY STATEMENT**[1]

The Reorganized Debtors' Securities Claims Procedures—which are based on similar protocols adopted by Bankruptcy Courts in other large and complex chapter 11 cases—are the most efficient means to resolve the more than 7,000 Subordinated Securities Claims that have been filed in these Chapter 11 Cases. These procedures utilize a recognized process through which the Reorganized Debtors will first gather basic trading data that would be required to assess damages in any securities class action, and then make informed settlement proposals to provide each claimant with the opportunity to resolve his or her claim(s) quickly and efficiently and to receive a distribution for little more than the price of a stamp. If the parties are unable to reach agreement on their own, they will be able to enlist the assistance of an experienced, Court-approved mediator to facilitate further negotiations. And those claimants who elect not to settle will have their day in court—this Court—which is fully empowered to address omnibus objections on the limited procedural grounds set forth in the Securities Claims Procedures. Most importantly, claimants who choose not to accept a settlement offer or whose claims are not resolved through mediation would not be prejudiced in any way, and the Objectors' assertions to the contrary rely on the false premises that claimants, who already managed to file proofs of claim, cannot advance their own interests and that this Court cannot fairly adjudicate disputes presented to it.

In contrast, PERA's proffered proposal—management of the more than 7,000 claims on a class-wide basis, with PERA and its counsel leading the "class"—is contrary to law and simply unworkable.[2] What PERA has not made clear to the Court is that it proposes a ***mandatory*** class action, meaning that under its proposal no claimant—not even large institutional investors with claims in the tens- or hundreds-of-millions of dollars—will have the opportunity to pursue their own claims, with their own chosen counsel. ***Instead, all claimants will be bound by what PERA***

---

[1]    Unless otherwise indicated, all emphasis is added and internal citations and quotations are omitted.

[2]    This Court has already denied PERA's request, *see Memorandum Decision Regarding Motion to Apply Rule 7023* [Dkt. No. 5887], and though PERA has appealed this decision, it now improperly renews the same arguments in this Court even while the District Court is considering its appeal and even though that appeal has divested this Court of jurisdiction.

*determines to be in their interest—all without notice*.[3] Yet, PERA cannot purport to act in the interest of all Subordinated Securities Claimants, because it is legally and ethically bound to act in the interests of a different class of persons: the members of the putative class of securities holders in the parallel securities litigation that PERA has been appointed to lead in the District Court. PERA cannot remedy this conflict—it can only attempt to conceal it by misrepresenting the nature of the claims at issue in that litigation and here. Even if PERA were not conflicted, there is no reason to believe that letting PERA act on behalf of all claimants will lead to an efficient resolution of the claims at issue—indeed, PERA and the Reorganized Debtors have *for years negotiated* in an effort to resolve the Securities Litigation without success. And even if PERA were successful, the contingency fees its lawyers will surely seek (20% or more) will only erode recoveries to the Subordinated Securities Claimants.

Since filing their Motion, the Reorganized Debtors have engaged in productive discussions with other Subordinated Securities Claimants and have further refined the Securities Claims Procedures by incorporating their feedback and making other revisions designed to address certain of the Objections. Specifically, the Reorganized Debtors have amended the Securities Claims Procedures to, among other things:[4]

- Provide for this Court's necessary approval, on appropriate notice, of the proposed panels of qualified and experienced mediators for each of the Abbreviated and Standard Mediations (Proposed Order ¶ 6, Ex. A-2 §§ III.A.2 & B.2);

- Require disclosure by the Debtors and a proposed mediator of information regarding any current or past work that the proposed mediator has performed for, or on behalf of, the Debtors, and other potential conflicts, disclosed by the mediator to the Debtors

---

[3] As set forth in the *Reorganized Debtors' Objection to Securities Lead Plaintiff's Renewed Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class* (the "**7023 Response**") filed contemporaneously herewith, PERA improperly failed to provide notice to the Subordinated Securities Claimants of the *Securities Lead Plaintiff's Memorandum of Points and Authorities in Support of Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class* [Dkt. No. 9152] (the "**Renewed 7023 Motion**"). *See* Dkt. No. 9158 (providing notice of the Renewed 7023 Motion only to the Master Service List). By failing to provide that notice, PERA seeks to usurp and displace the rights of claimants without providing notice to the claimants—or, in many cases, their known counsel—of PERA's intention to force such parties into a non-opt out class.

[4] A revised proposed form of order is attached hereto as **Exhibit A**. A redline comparison against the original proposed order filed with the Motion is attached hereto as **Exhibit B**.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

that, in the mediator's view, could create a reasonable inference of bias (Proposed Order ¶ 6, Ex. A-2, §§ III.A.2 & B.2);

- Clarify that the Reorganized Debtors' authority to object in an omnibus objection is without prejudice to the right of an individual Subordinated Securities Claimant to oppose or contest an objection directed at that claimant (Proposed Order ¶ 9, Ex. A-2, § IV.H);

- Provide claimants additional time to submit their Trading Information Request Form and responses to the Abbreviated Mediation Settlement Offer (Proposed Order, Ex. A-1, § I.A; Ex. A-2, § III.A.5);

- Revise the Securities Claims Procedures regarding the Court's ability to solicit and receive the views of the mediator in considering any motion relating to the failure to comply in good faith with the Securities ADR Procedures (Proposed Order, Ex. A-2, § IV.E);

- Clarify certain provisions regarding the Reorganized Debtors' authority to terminate the Securities Claims Procedures at any time (Proposed Order, Ex. A-2, § IV.H);

- Identify certain materials to be provided to the mediators prior to any mediation (Proposed Order, Ex. A-2, § IV.J); and

- Resolve concerns raised by the Underwriters regarding their Proofs of Claim (Proposed Order ¶ 11).

PERA has framed its Renewed 7023 Motion as a choice between two competing proposals as to how to move the resolution of the securities proofs of claim forward. In reality, there is no choice. The Reorganized Debtors have proposed a process—similar to processes used by other Bankruptcy Courts to address claims of similar nature and volume—that actually comports with controlling law and will allow each and every claimant to pursue its own claim, with its chosen counsel, and potentially resolve that claim much sooner and at much less legal expense than as a member of PERA's proffered class. In contrast, as set forth in the response to PERA's renewed Bankruptcy Rule 7023 motion, PERA's alternative fails on numerous grounds, many as a matter of law. The Reorganized Debtors' proposed procedures present precisely the type of process the Court directed the Reorganized Debtors to propose, and this process presents the only viable option for attempting to resolve the more than 7,000 Subordinated Securities Claims in a fair and expeditious manner.

**ARGUMENT**

## I. THE SECURITIES CLAIMS PROCEDURES PROTECT THE CLAIMANTS' RIGHTS TO DUE PROCESS

Throughout its Objection, PERA asserts that the Securities Claims Procedures somehow mark a departure from the usual course of claims administration that, if implemented as has been previously done by countless other courts, would constitute a violation of the Subordinated Securities Claimants' rights to due process. *See, e.g.*, PERA Obj. at 11 ("[T]he Reorganized Debtors have proposed procedures that violates [sic] the due process rights of Securities Claimants."). This argument is without corroboration, without citation, and without the facts or the law on its side.

The Securities Claims Procedures do not, at any point, give rise to an "adjudication" that results in a "deprivation of life, liberty or property. . . ." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). Rather, these Procedures will help facilitate a voluntary ***settlement***, which is neither an "adjudication" nor a "deprivation." Moreover, if any Subordinated Securities Claim is not settled, then the Claim will be resolved through the claims reconciliation and objection process before the Bankruptcy Court. *See* Proposed Order, Ex. A-2, § III.B.8. Because the Securities Claims Procedures do not and will not adjudicate any claimants' rights, the claimants' rights to due process are simply not implicated here.

Nonetheless, PERA asserts that "[i]t is incompatible with due process for Reorganized Debtors to adjudicate their objections in an omnibus manner," relying on *Hansberry v. Lee*, 311 U.S. 32, 40–41 (1940), for the proposition that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party." PERA Obj. at 12–13. Yet this, again, misrepresents the Securities Claims Procedures. It is this Court, not the Reorganized Debtors, that adjudicates objections, and while the omnibus objections are consolidated for reasons of judicial economy, they still require that each individual claimant receive notice of the objection and an opportunity to be heard in a contested matter, just like any other objection to a claim in bankruptcy proceedings.[5] Thus,

---

[5] *See* Proposed Order, Ex. A-3, § I.E (explaining that each objection will describe the claimants it applies to); § I.F ("Each Subordinated Securities Claimant whose claim is subject to an Omnibus

even though the omnibus objections are responsive to multiple claimants, no claimant will be denied the "deep-rooted historic tradition that everyone should have his own day in court." *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996). Similarly, claimants who have submitted a proof of claim will be contacted by the Reorganized Debtors with an offer of settlement or, perhaps, a notice of non-binding mediation. In all events, claimants will receive notice of any activity with respect to their claim, and in all events, they will have the opportunity to respond or present their side of a dispute. Thus, the Securities Claims Procedures do not violate the Subordinated Securities Claimants' rights to due process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.").[6]

PERA's due process arguments hit a dead end for still other reasons. The Securities Claim Procedures themselves do not impose an unreasonable burden on claimants, to the extent they impose any burden at all. Due process requires consideration of three factors: (i) whether a "private interest" will be affected by an official action, (ii) the "risk of an erroneous deprivation of such interest," and (iii) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Grimm v. City of Portland*, 971 F.3d 1060, 1065–66 (9th Cir. 2020) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Here, the "private interest" is not that the Reorganized Debtors are "adjudicating" or otherwise resolving claimants' proofs of claims without their consent. Only this Court can do that. Rather, the "private interest" is time and effort—the time claimants spend submitting their claims to

---

Objection will be sent a copy of the Omnibus Objection. . . ."); § I.H ("Each proof of claim subject to an Omnibus Objection . . . will constitute a separate contested matter.").

[6] It is somewhat ironic that PERA argues that Claimants' rights will be diminished "without the procedural protections afforded by class certification." PERA Obj. at 12–13. If anything, the "individualized determinations" that the Bankruptcy Court will be able to conduct in contested matters will be far superior to the "Trial by Formula" preferred by PERA, a sweeping approach fraught with "notice and opt-out problems," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364–66 (2011), that is only further complicated by PERA's failure to provide notice of its Renewed 7023 Motion to the Subordinated Securities Claimants, as noted above.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

an online portal and in formalized, streamlined negotiations, and the time claimants could (but need not, if they so wish) spend substantiating their claims in non-binding mediation. These are relatively *minor* impositions in the service of a resolution process that offers a Subordinated Securities Claimant the opportunity to receive an expeditious settlement and payment on its claim. As for the Government's interest here, it is quite simple: this Court benefits, and these Chapter 11 Cases benefit, from reducing the "fiscal and administrative burdens" of adjudicating complicated legal questions and highly-fact specific matters relating to potentially thousands of securities claims that could be resolved—and should be resolved—through settlement. *Eldridge*, 424 U.S. at 335.

With respect to the mandatory mediation proposed by the Securities Claims Procedures, it has long been recognized that complex cases that have employed mandatory mediation pass constitutional muster. *See, e.g.*, *Woods v. Holy Cross Hosp.*, 591 F.2d 1164, 1170–72 & n.11 (5th Cir. 1979) (noting that the "medical malpractice mediation requirements" of many states "have successfully withstood challenges based on both state and federal constitutional grounds," and collecting cases); *cf. Loc. 808, Bldg. Maint., Serv. & R.R. Workers v. Nat'l Mediation Bd.*, 888 F.2d 1428, 1436 (D.C. Cir. 1989) ("Much of the work of a mediator . . . does not culminate in what judges normally recognize as an appealable order. Mediation is an art-form used to avoid or break an impasse in a negotiation. It relies heavily on personal powers of persuasion, not adjudication."). Similarly, local rules enacting the Alternative Dispute Resolution Act, 28 U.S.C. §§ 651–658, including the rules of this District, which are relied on by the Objectors, *see, e.g.*, PERA Obj. at 9, routinely contemplate mandatory mediation. *See, e.g.*, N.D. Cal. ADR L.R. 6-10(d) ("A person who is required to attend a Mediation may be excused from attending in person only after showing that personal attendance would impose an extraordinary or otherwise unjustifiable hardship."). And, of course, courts have "inherent power to order non-consensual mediation in those cases in which that step seems reasonably likely to serve the interests of justice." *In re Atl. Pipe Corp.*, 304 F.3d 135, 145 (1st Cir. 2002). Indeed, the Court has already required that parties in these Chapter 11 Cases engage in mediation. *See Order for Further Mediation* [Dkt. No. 5810] (Feb. 18, 2020); *Order Appointing Mediator* [Dkt. No. 4499] (Oct. 28, 2019).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Numerous other Bankruptcy Courts have approved similar procedures to facilitate claim resolutions. *See* Slack Decl., Dkt. No. 8966, Exs. 1–5. Those courts were not wantonly disregarding the Constitution, and neither did this Court in granting similar procedures as to general claims against the Reorganized Debtors, *see* Dkt. Nos. 8228 & 9148, nor will this Court if it grants the Motion. Accordingly, PERA's arguments must be rejected.

## II. THE SECURITIES CLAIMS INFORMATION PROCEDURES FACILITATE THE PROVISION OF NECESSARY, TARGETED TRADING INFORMATION

### A. Individualized Trading Details Are Necessary to Properly Assess the Potential Value of Subordinated Securities Claims

The trading information sought through the Securities Claims Information Procedures is targeted and necessary to assess the maximum potential damages for Subordinated Securities Claimants under the applicable federal securities laws.

There is no dispute that the information provided in the proof of claim process is insufficient to calculate potential damages. Many claimants did not provide critical trading information needed to calculate potential damages under the federal securities laws. The Private Securities Litigation Reform Act, for example, imposes a "nominal loss" cap on damages during a 90-day "bounce back" period following a corrective disclosure, and further limits damages if the security is sold or repurchased during this period. *See* 15 U.S.C. § 78u-4(e). Thus, Subordinated Equity Claimants (Class 10A-II) will be requested to provide information through the 90-day "bounce back" period in order to allow the Reorganized Debtors to assess whether it impacts damages. Subordinated Debt Claims (Classes 9A and 10B) must be valued pursuant to Section 11 of the Securities Act of 1933, which requires trading data through the Subject Period and up until the time of sale or judgment.[7] Thus, the Subordinated Debt Claimants will be asked to provide trading data through the Effective Date.

Notably, PERA never refutes (and could not refute) that this information is necessary to accurately calculate potential damages. In fact, PERA's declarants confirm that such information

---

[7] *See* 15 U.S.C. § 77k(e); *see also McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995) ("The plain language of section 11(e) prescribes the method of calculating damages . . . and the court ***must*** apply that method ***in every case***.").

Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119

must not only be collected, but that it is proper to be collected in the manner the Reorganized Debtors propose. *See, e.g.*, A.B. Data Decl. ¶ 6 ("In a typical class action, claims are submitted by individuals through the completion of a proof of claim form, attaching relevant documentation, and mailing the claim form to the administrator."); *see also* Radetich Decl. ¶¶ 5–8. PERA's declarants also confirm that the use of an online portal, the handwritten form, and the excel-based form are standard and customary for resolving securities claims in large, complex cases such as this. *See* A.B. Data Decl. ¶¶ 5–9 ("Over the years, class action administrators have developed certain customary and well-tested procedures," including online portals, manual processing of handwritten claims, and the use of databases); *see also* Radetich Decl. ¶¶ 5–8 & Exs. B & C.

Nevertheless, PERA misrepresents the sworn testimony in the A.B. Data declaration by contending that standard electronic databases for securities claims administration "do not require submissions to include individualized 'transaction-level detail' when claims are filed." PERA Obj. at 6 (quoting A.B. Data ¶¶ 7–9). In truth, however, A.B. Data confirms the need for, and routine nature of, the information sought in the Securities Claims Information Procedures, and rightfully concedes that:

> [A]dministrators typically create, in consultation with counsel, detailed electronic filing guidelines that provide specific instructions and a template for submitting electronic data. The instructions include, but are not limited to, providing the exact security(ies) involved, the class period or relevant time period that the transactions must fall in, what specific transactional information should be included in the Electronic Filing (***such as whether the transaction is a purchase, sale, transfer; date of each transaction; holding position at the start of the relevant period and holding positions at other data points; prices per share in each transaction; number of shares in each transaction; total sale or purchase price for each transaction; strike prices for options, number of option contracts, exercise and expiration dates; face value of bonds etc.***), and how to submit the Electronic Filing.

A.B. Data ¶ 8. Indeed, PERA's own counsel has frequently advanced settlements that require putative class members to submit trading information to the claims administrator in order to be paid settlement funds. In fact, the sample of electronic filing guidelines submitted by PERA's declarant, A.B. Data, required claimants to submit transaction-level data, *see* A.B. Data ¶ 8 & Ex. B, in a case where PERA's counsel was appointed as Co-Lead Counsel for the class, *see In re PTC Therapeutics, Inc.*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Secs. Litig.*, No. 2:16-cv-01224-KM-MAH (D.N.J. Nov. 14, 2016), ECF No. 44 (stipulation and order appointing Labaton Sucharow LLP as Co-Lead Counsel for the class).

Thus, contrary to PERA's misrepresentation, individualized transaction-level detail is not only necessary to compute potential damages under the federal securities laws, but commonly required to be provided where significant amounts of securities claims are at issue.

> **B.    The Securities Claims Information Procedures Are Consistent with Bankruptcy Code Section 502 and Bankruptcy Rule 3001**

The Objectors argue that the Securities Claims Information Procedures "are contrary to law" because "[a] proof of claim is deemed allowed unless objected to under Bankruptcy Code § 502(a), and the proof of claim is considered '*prima facie* evidence of the validity and amount of the claim pursuant to Bankruptcy Rule 3001(f).'" PERA Obj. at 4 (quoting *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000)); *see also* Dkt. No. 9252 ¶ 1 ("These claims are deemed allowed unless and until the Debtors prevail in an objection to them."). But that concept is entirely irrelevant to the Securities Claims Information Procedures, which address providing information in connection with and to facilitate settling claims. As this Court has recognized, "creditors have an obligation to respond to formal or informal requests for information," and "[t]his obligation to respond applies regardless [of] whether Creditors have met their obligation to provide a summary under Rule 3001(c)." *See In re Heath*, 331 B.R. 424, 436 (B.A.P. 9th Cir. 2005).

Moreover, the Reorganized Debtors are not implementing these procedures "[t]o overcome the presumption of validity created by a timely-filed proof of claim," as the Objectors suggest. PERA Obj. at 4 (citation and internal quotation marks omitted). Unlike the cases cited by the Objectors,[8] the Reorganized Debtors are not requesting this additional information in connection with a present objection to any Subordinated Securities Claims. Rather, the Reorganized Debtors are implementing

---

[8]    *See Lundell*, 223 F.3d at 1039–40 (in objecting to proof of claim, debtor failed to show "that he was not a West Coast partner despite the signed partnership agreement"); *In re McNemar*, No. 18-40208 CN, 2019 WL 2482866, at *1 (Bankr. N.D. Cal. May 3, 2019) (sustaining debtor's objection to proof of claim where creditor "ha[d] not demonstrated that she [wa]s entitled to any kind of payment from the bankruptcy estate"); *In re Liberty Asset Mgmt. Corp.*, No. 2:16-BK-13575-ER, 2019 WL 122827, at *5 (Bankr. C.D. Cal. Jan. 7, 2019) (evaluating objections to various proofs of claim).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

these procedures in the hopes of avoiding precisely that scenario by conducting constructive and fruitful settlement negotiations.

Though some Objectors contend they have provided all the information needed, *see, e.g.*, Dkt. No. 9197 ¶ 10, the substantial majority of Subordinated Securities Claimants have not provided sufficient trading data to estimate the outer bound of potential damages that each claimant could potentially recover. *See* Keable Decl., Dkt. No. 8965, ¶¶ 6–7.

Contrary to PERA's assertion that the Reorganized Debtors have "not advise[d] this Court of a single deficient claim," PERA Obj. at 7, PERA itself had non-zero balances on November 15, 2018, and, therefore, must provide trading data after that date in order to calculate potential damages under the applicable statutory formulas. *See* PERA Claim 69105, Ex. B (providing transaction data through May 2018); PERA Claim 71345, Ex. B (providing transaction data through May 2018). Moreover, the Reorganized Debtors, in fact, provided the Court with evidence that approximately 70% of the debt claim submissions analyzed by Compass Lexecon suffer from the same deficiency. Keable Decl. ¶ 11. Hundreds of equity claims, too, require additional data from the 90-day period following the conclusion of the Subject Period to calculate potential damages under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(e). Keable Decl. ¶ 12. Beyond that, more than 10% of the proofs of claim reviewed by Compass Lexecon do not even contain the beginning holdings as of April 29, 2015 or the ending holdings as of November 15, 2018, both of which were supposed to be provided in the Claim Forms. Keable Decl. ¶ 13.

Instead of filing objections based on these deficiencies that "rel[y] solely on the alleged lack of prima facie validity of the proofs of claim," the Securities Claims Procedures are designed to aid the Reorganized Debtors in simply "contacting [claimants] and asking for appropriate documentation of any claims that [the Reorganized Debtors] reasonably believed they might not owe, or might owe in a different amount." *Heath*, 331 B.R. at 437. The trading information sought is targeted, and, perhaps most importantly, it ultimately would be required even if this Court were to grant the Renewed 7023 Motion. But instead of forcing all parties to pursue that costly and burdensome approach, which would only delay and reduce distributions to claimants, the Securities Claims

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Information Procedures will make this information available now, thereby paving the way towards potential consensual resolution of Subordinated Securities Claims promptly and in a less expensive manner than if the parties were to litigate the merits.

Finally, the Objectors argue that the Securities Claims Information Procedures are "entirely at odds with the principle that a proof of claim is *prima facie* evidence of a prima facie valid claim." PERA Obj. at 7 (citation omitted); *see also* Dkt. No. 9252 Obj. ¶ 1. That is *prima facie* wrong. The information sought is not to obtain evidence to establish whether claimants have made a prima facie case. To the contrary, as noted above, it is designed to obtain information to facilitate consensual settlements. In any event, the act of filing a proof of claim does not automatically relieve a Subordinated Securities Claimant from its burdens of proof and persuasion. On the contrary, while a proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more, . . . [t]he ultimate burden of persuasion remains at all times upon the claimant." *Lundell*, 223 F.3d at 1039 (citation and internal quotation marks omitted).

Thus, the claims administration process does not relieve Subordinated Securities Claimants from the need to ultimately prove the elements of their claim to show whether they are in fact entitled to receive payment from the Reorganized Debtors, including by providing the information necessary to calculate any damages. The Securities Claim Information Procedures merely seek this information as part of an ADR process designed to facilitate settlements.

## III. THE SECURITIES ADR PROCEDURES ARE A FAIR AND PRAGMATIC SYSTEM THAT FACILITATE CLAIMS ADMINISTRATION

The Objectors use colorful language in an attempt to contend that the Securities ADR Procedures enable mediations run by "hand-picked mediators," PERA Obj. at 9, promote "forfeitures and traps," Chevron Obj. at 4, and are "manifest[ly] unfair[ ]" because they ask Subordinated Securities Claimants to come to the table and substantiate their claims in mediation. Dkt. No. 9252 ¶ 3. As set forth below, each of these assertions is wholly without merit.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**A.** **The Offer Procedures Formalize Traditional Practices of Offer and Acceptance**

The Securities ADR Procedures supplement the default regime—an *ad hoc* system of informal negotiations on individual claims within the Bankruptcy Code's claims reconciliation and objection process—with a structured, streamlined system that reduces the burdens and expense of litigation. Through the Offer Procedures, the Reorganized Debtors may respond to a proof of claim with a settlement offer, which a claimant may then accept or reject with a counter-offer—a back-and-forth process that resembles most, perhaps very nearly all, settlement negotiations. *See* Proposed Order, Ex. A-2, § II. If the parties are unable to reach a settlement through the Offer Procedures, the Reorganized Debtors may submit the proof of claim to mediation with a Court-approved, "impartial, neutral person" who has "no financial or personal interest in the proceedings" and who must "disclose any circumstances likely to create a reasonable inference of bias." *Id.* §§ III.A.2 & B.2. Mediation may take place either under the Abbreviated Mediation Process, which (true to its name) is shorter and calibrated to allow lower-value claims to be resolved efficiently and expeditiously, or under the Standard Mediation Process, a more involved process that promotes a more detailed presentation of the issues. In both processes, the Reorganized Debtors, as the parties proposing this system of structured settlement, shoulder the mediator's fees and expenses. *Id.* §§ III.A.3 & B.3. Also in both processes, all parties are given notice of the procedures, *id.* §§ III.A.1 & B.1, an opportunity to be heard, *id.* §§ III.A.5 & B.5, and substantial flexibility to ensure that specific needs can be accommodated. *See, e.g.*, *id.* § IV.D (allowing parties to amend the Securities ADR Procedures upon mutual, written consent). And in both of these non-binding processes, should a claimant be unsuccessful, it still has recourse to the claims reconciliation and objection process before the Court—its rights completely undiminished.

As noted above, all of these features are commonplace to structured negotiations and mediations, having already been used in numerous chapter 11 cases (including these Chapter 11 Cases), and should be readily understood by claimants. The Reorganized Debtors are optimistic, based on both reason and experience, that the majority of claims will be settled either through the Offer Procedures or else through the Mediation Procedures. Indeed, the Northern District's own mediation statistics support this optimism. *See* United States District Court for the Central District

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

of California, *2017 ADR Program Report*, at 1, https://www.cacd.uscourts.gov/sites/default/files/documents/ADR_Program_Report_2017.pdf (noting that 58% of cases referred to mediation settled). Yet despite the plain meaning and function of the ADR Procedures, the Objectors try to paint an unrealistic worst-case scenario. To be sure, there may be some subset of Subordinated Securities Claims where the parties will be unable to reach a settlement through the ADR Procedures, and some still smaller subset may not even derive a benefit from going through the process. But the same can be said of any of the myriad procedures in courts across the country. Just because some parties do not benefit from a Rule 16 pretrial settlement conference, for example, does not mean that all Rule 16 pretrial settlement conferences are a calculated scheme to "waste the time and resources of those holding meritorious claims." PERA Obj. at 11. Any procedure may prove to be ineffective for some percentage of participants, but in the aggregate, may work and benefit many other participants. In this case, the Securities ADR Procedures are a material improvement over the alternatives of *ad hoc* negotiations or continued mediation with PERA as the sole settlement gatekeeper for all claimants.

With that in mind, the Reorganized Debtors have agreed to accommodate some of the Objectors' concerns, such as their worries that certain deadlines are problematic because of the COVID-19 pandemic, and have revised the Proposed Order and procedures accordingly. The Objectors' remaining arguments, however, as detailed below, are unfounded and unsupportable.

### B. The Mediation Procedures Protect Claimants' Interests

#### 1. *The Securities ADR Procedures Do Not Impose Undue Pressure on Subordinated Securities Claimants, Who May Retain Counsel if They Desire*

One of the Objectors' complaints with the Offer Procedures is that claimants "will face unreasonable pressure to settle their claims at a discount." PERA Obj. at 9. This is pure speculation. No evidence is offered to support the accusation that the Reorganized Debtors intend to unreasonably pressure claimants into settlements, nor is there any explanation for how the universal practice of offer-and-acceptance imposes "unreasonable" pressure on claimants. On this line of reasoning, the Objectors might as well argue that ***any*** settlement negotiation is "unfair" if PERA is not the one negotiating it. California law has long left such questions of "fairness" to the sound judgment of the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

parties in reaching a settlement and, "in the absence of a showing of fraud or undue influence," generally regards such agreements as "decisive of the rights of the parties thereto." *Folsom v. Butte Cnty. Ass'n of Gov'ts*, 32 Cal. 3d 668, 677 (1982) (citation omitted).

PERA also complains about the "lack of guaranteed representation" for certain claimants, but this is one huge benefit by design of the chapter 11 claim process. PERA Obj. at 9. Representation by counsel is not a necessary component of settlement and Bankruptcy Courts frequently recognize that a major ***advantage*** of bankruptcy is that "[c]reditors, even corporate creditors, don't have to hire a lawyer, and can participate in the distribution for the price of a stamp." *In re Musicland Holding Corp.*, 362 B.R. 644, 650–51 n.8 (Bankr. S.D.N.Y. 2007); *see also In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 621 (Bankr. S.D.N.Y. 2009) (same). In any event, each Subordinated Securities Claimant has the right to consult with the counsel of its choosing and many have already availed themselves of that right. Indeed, the Renewed 7023 Motion would effectively force claimants to retain and substitute PERA as their counsel, instead of allowing them the choice of proceeding without counsel (and retaining the entirety of their recovery) or with the counsel of their own choosing.

> 2. *The Securities ADR Procedures Provide for the Appointment of Court-Approved, Objective, and Experienced Mediators Capable of Fairly Mediating the Subordinated Securities Claims*

The Objectors dispute that the Securities ADR Procedures provide for the appointment of neutral and objective mediators, contending that the Securities ADR Procedures "giv[e] PG&E the unilateral power to select mediators with no input from Securities Claimants." PERA Obj. at 9. Under the proposed ADR Procedures, the Reorganized Debtors, however, are acting far from unilaterally. The Reorganized Debtors will present to the Bankruptcy Court for approval a panel of qualified and experienced mediators. *See* Proposed Order, Ex. A-2, §§ III.A.2 & B.2. Those mediators must be "impartial," "neutral," and disinterested, and must also disclose "any circumstances likely to create a reasonable inference of bias." *Id.* If a mediator from the Court-approved panel appears to be biased, then that mediator "shall be replaced prior to the mediation." *Id.*[9]

---

[9]   Chevron goes a step further than PERA by contending that using Court-approved, neutral mediators is "like only one sports team choosing all the referees for all of their games." Chevron

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Other Objections focus on the qualifications of the mediators or the presentation of the issues to them, but these simply misapprehend the Securities ADR Procedures or their interaction with the Chapter 11 Cases. PERA argues that "there is no provision for selecting mediators with significant experience in handling securities fraud actions" and that there are no procedures for objecting to a mediator. PERA Obj. at 9. But the Procedures require "qualified and experienced mediators," and when the Reorganized Debtors submit their proposed panel of mediators for Court approval, parties in interest subject to the Procedures may present any objections they have to that submission. *See* Bankr. L.R. 9014-1(3). Chevron similarly misreads the Procedures when it contends that "only" the Reorganized Debtors are allowed to brief the Mediators on issues. Chevron Obj. at 4. This is just not true: under both the Abbreviated and Standard Mediation Processes, both parties to a mediation are able to provide a briefing statement to the mediator. *See* Proposed Order, Ex. A-2, §§ III.A.5 & B.5. Nor is Chevron correct to worry that "in person attendance" is likely to be "burdensome" for its foreign employees, Chevron Obj. at 6, as all mediations will be conducted over Zoom or, failing that, by telephone. Proposed Order, Ex. A-2, §§ III.A.1 & B.1. In any event, even prior to the pandemic, parties filing proofs of claim were always subject to the jurisdiction of the Bankruptcy Court and could be required to participate in mediation. Indeed, the Court has already approved procedures for settling other types of proofs of claim based on very similar mediation procedures. *See Order Approving ADR and Related Procedures for Resolving General Claims* [Dkt. No. 9148] (Sept. 25, 2020).

A separate set of Objections revolve around the mediator's powers. PERA objects that it is unfair that only the mediator can end the mediation if it reaches an impasse, "rather than allowing

Obj. at 4. The analogy fails, though it is still helpful because it betrays a source of the Objectors' confusion here. A referee, like a judge, actually has power to *decide issues*, like the proverbial "balls and strikes." A mediator, by contrast, offers input and guidance in an attempt to build consensus, and so Chevron's analogy, if it were correct, would be like a game where the umpire had no power to decide, only to persuade. Though it is very much open to debate whether such a system could work in baseball, the effectiveness of mediation and its role in the American legal system is long past disputing. Moreover, the underlying premise to Chevron's objection is that impartial mediators would abandon their professional and ethical duties to favor the Reorganized Debtors for merely *proposing their name* to serve on a panel.

Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119

either party to withdraw at any time they see fit." PERA Obj. at 11. As noted above, the Reorganized Debtors submit that requiring parties to appear at mediation is a relatively modest and commonplace imposition that will, in the vast majority of cases, help the parties assess the relative strengths of their positions even if settlement negotiations ultimately fail. *See supra*, § I. There is no reason to believe that neutral, Court-appointed mediators are going to needlessly burden the parties by forcing them to engage in fruitless discussions. Moreover, the requirement that the mediator determine whether the mediation should be terminated prevents a claimant from pre-maturely terminating the mediation.

Chevron, for its part, argues that it is unfair that in the event of an "impasse," a Court-approved neutral mediator can have *ex parte* conversations with the Court, "but not the ordinary claimants." Chevron Obj. at 4–5. But there is nothing "unfair" about this: any prohibition of *ex parte* conversations with the Court applies equally to claimants and the Reorganized Debtors. *See* Proposed Order, Ex. A-2, § IV.E. The Procedures apply the same way to all.

Finally, PERA contends that the Securities ADR Procedures are unduly burdensome because they require any authorized representative attending mediation to have "complete (and not limited) authority to settle without reversion to others." PERA Obj. at 10 (quoting Securities ADR Procedures §§ III.A.4 & B.4). PERA argues that this means senior executives of institutional investors must attend mediation because "[e]ven legal counsel would generally be insufficient to meet this unusual and extraordinarily high bar." *Id.* at 10–11. This provision is a very typical mediation provision that requires parties to send representatives with authority to settle precisely so the mediation is not bogged down by parties asserting a lack of settling authority. PERA cites no authority that this requirement is neither typical nor appropriate. Further, as to accepting, or rejecting, any offer presented by the Reorganized Debtors, it is a bedrock principle of the law of agency that a representative may be "be specifically authorized to settle and compromise a claim" on behalf of another. *Alvarado Cmty. Hosp. v. Super. Ct.*, 173 Cal. App. 3d 476, 480 (Ct. App. 1985). While it is one thing for a claimant to say it is unwilling to authorize a representative to attend mediation, it is a separate matter entirely for a claimant to say that it is unable to authorize a representative to attend mediation. The former situation may sometimes be true as a factual matter, but the latter is simply

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

false as a legal matter. In any event, should this issue arise, the Procedures allow the parties to reach an alternative agreement with the aid of the mediator. *See* Proposed Order, Ex. A-2, §§ III.A.4 & B.4.

> 3. *The Abbreviated and Standard Mediation Processes Are Flexible, Ordinary, and Unremarkable*

The Objectors also take issue with certain features of the Abbreviated and Standard Mediation Processes. PERA contends that the Abbreviated Mediation Process will be "particularly burdensome" because it proceeds on a shorter deadline. PERA Obj. at 10. As noted, the Reorganized Debtors have proposed, and are willing to accommodate, more flexible timelines—a point recognized by the Securities ADR Procedures themselves. *See* Proposed Order, Ex. A-2, §§ III.A.4 & B.4 (allowing for the parties to reschedule in the event of hardship or ask the Bankruptcy Court for relief). That said, an advantage of the Abbreviated Mediation Process is its potential for **brevity**. Not all claimants may share the same penchant for litigation that the Objectors do; many simply wish to resolve the matter expeditiously. Moreover, the Abbreviated Mediation Process may be better suited and more attractive to individuals or institutions with smaller claims. Be that as it may, PERA nonetheless conjectures that non-binding mediation somehow "transforms" the claims system into "little better than a trap for the unwary." PERA Obj. at 10. This is as hyperbolic as it is meritless. As noted above, *supra* § I, the claims process remains an option to all claimants if they are not able to settle their claims. No one's rights will be diminished here.

With respect to the Standard Mediation Process, PERA also contends these procedures allow the Reorganized Debtors to "abuse the process" for selecting which mediation procedure is utilized by "shunt[ing]" claimants into the Standard Mediation Procedure, which "practically compels retention of counsel." *Id.* This theory is completely unsubstantiated, and of course, ignores the Reorganized Debtors' incentive to try to facilitate settlements of claims by the most cost-effective and efficient means possible.

**IV.    THE SECURITIES OMNIBUS OBJECTION PROCEDURES ARE NECESSARY AND APPROPRIATE**

Consistent with their position since the commencement of the underlying actions, the Reorganized Debtors believe the Subordinated Securities Claims are without merit. However, the Securities Omnibus Objection Procedures are ***not*** the method by which the Reorganized Debtors intend to litigate the merits of the claims if such litigation ultimately is necessary. Rather, the Securities Omnibus Objection Procedures are merely a means to disallow, expunge, or re-classify certain claims that are deficient on their face.

As noted above, this Court should deny the Renewed 7023 Motion and approve the Securities Claims Procedures because the latter offers a path to consensual resolutions that does not require any merits-based determinations. Indeed, the Securities Omnibus Objection Procedures would be warranted even if the Court adopted one of PERA's internally inconsistent proposals. Giving PERA every benefit of the doubt, it would still require the Court to assess the validity of each and every Subordinated Securities Claim before certifying a class. *See* Renewed 7023 Motion, Ex. C ¶ 6 (proposing that the Court determine the validity of each claim before certifying a class); *id.* at 8 (requiring certainty as to the validity and value of each claim before negotiating or mediating settlement). To reduce the need for thousands of duplicative objections, the Securities Omnibus Objection Procedures would be necessary even under PERA's proposed framework. Indeed, if its proposal were adopted, PERA would essentially hijack the claims process for every claimant— determining when to litigate, mediate, and negotiate regardless of the value of the claim. Thus, the Securities Omnibus Objection Procedures are a necessary element to resolving claims and are completely typical and appropriate.

Moreover, PERA's plan to force the Reorganized Debtors into litigating on the merits rather than attempting to settle individual claims would duplicate, in significant part, the proceedings before the District Court, and would potentially lead to inconsistent rulings with respect to the same theories of liability. In contrast, while the District Court is deciding issues which may bear on the ultimate merits of the claims, the Reorganized Debtors' proposed procedures allow claimants the opportunity to settle (or not) and obtain an immediate recovery that does not get delayed by expensive discovery

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

and litigation on the merits. Indeed, PERA's view of the value of its own claims should not be a reason to hold hostage Subordinated Securities Claimants who submitted individual proofs of claim—often with the assistance of other counsel—and may prefer to receive some recovery now, rather than the risk of no recovery at all years from now. For some, including the Reorganized Debtors, peace has value.

### A.    The Objectors Misstate Various Aspects of the Securities Omnibus Objection Procedures

The Objectors levy multiple broad-based attacks on the Securities Omnibus Objection Procedures—all of which fail to comprehend their purpose and necessity. For example, PERA claims that, through these procedures, the Reorganized Debtors seek to "resolve substantive issues in their favor." PERA Obj. at 12; *see also* PERA Obj. at 13 ("Reorganized Debtors seek to manufacture a basis to disallow meritorious claims for no valid purpose."). According to PERA, the Securities Omnibus Objection Procedures accordingly "threaten [Subordinated] Securities Claimants' due process rights." *Id.* at 11. Each of these arguments is colorful, but baseless.

As set forth above, the Securities Omnibus Objection Procedures are not designed—nor will they be used—to resolve the underlying merits of the securities claims at all. The Reorganized Debtors made this point quite clearly (on multiple occasions) in the Motion. *See* Motion at 4 ("These procedures are designed to avoid the time and expense of resolution of the Subordinated Securities Claims on the merits."); *id.* at 8 (The Securities Claims Procedures will "create opportunities to resolve claims prior to litigation on the merits"); *id.* at 14 ("Addressing common issues on an omnibus basis will allow the Bankruptcy Court to efficiently administer its docket while reducing claims that need to be addressed by other procedures or on the merits.").

Rather, the Securities Omnibus Objection Procedures are a housekeeping measure—designed to eliminate the need for the Reorganized Debtors to file potentially hundreds or thousands of duplicative objections. For example, a great many Subordinated Securities Claims have been superseded by amended proofs of claim. Because the Reorganized Debtors cannot unilaterally clear the claims registry of superseded proofs of claim, they must file an objection—otherwise the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

superseded proofs of claim will be allowed, potentially leading to double recovery. These are not "efforts to disqualify on technicalities," Dkt. No. 9252 ¶ 2, but rather a formalized and expedient effort to clean up and correct the claims docket. Rather than filing 250 identical versions of the same objection, the Reorganized Debtors seek to file one objection, listing the 250 amended proofs of claim to which the omnibus objection applies. If granted, the amending proofs of claim would survive and the amended proofs of claim would be expunged, thereby reducing the number of "active" proofs of claim, while leaving unaffected the Reorganized Debtors' potential liability and the claimants' substantive rights to recovery.

In its confusion, PERA also conflates the terms "common" and "omnibus" with "class-wide," incorrectly claiming that all issues that apply to more than one Subordinated Securities Claim require "collective outcomes." PERA Obj. at 12–13; *see also* Renewed 7023 Motion at 19 ("[P]resuming that such issues can be determined on an omnibus basis—which appears to mean the same as class-wide basis.") (emphasis in original). Contrary to PERA's assertions, the Securities Omnibus Objection Procedures do not raise class-wide issues nor do they seek to resolve claims on a "class-wide basis." As explained in the 7023 Response, facial issues regarding the Subordinated Securities Claims affect certain claims, but not all claims within PERA's proposed classes. For example, hundreds of Subordinated Securities Claims were filed after the Extended Bar Date; thousands more were not. Whether a claim was filed before the deadline is a binary issue that varies claim by claim. Further, whether a claimant can demonstrate excusable neglect such that its Subordinated Securities Claim should be deemed timely is an individualized inquiry. *See, e.g.*, *In re Fayetteville-Floyd Gas Co.*, No. 12-20265, 2014 WL 8663585, at *5 (Bankr. S.D. Tex. Nov. 17, 2014) ("The excusable neglect standard is fact-specific."); *Fleet v. U.S. Consumer Council, Inc. (In re Fleet)*, 103 B.R. 578, 587 n.4 (E.D. Pa. 1989) ("Adhering to the law concerning late filing of proofs of claims against debtors in this court, we find that the only recourse for these parties is to make an individualized showing of 'excusable neglect' for submitting a late filing.").[10]

---

[10]  Because each claimant will have a chance to respond to any omnibus objection directed to their claim, the Securities Omnibus Objection Procedures do not "create[] due process violations" as PERA claims. *See also supra* § I. Nor are the Reorganized Debtors asking the Court to adopt the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Similarly, many individuals and entities submitted proofs of claim, even though they exclusively purchased PG&E securities outside the Subject Period began. *See, e.g.*, Claim Nos. 98281 (acquisition date in 1987); 97758 (acquisition date in 1994); 98050 (acquisition date in 2000). While fatal to those Subordinated Securities Claims, perhaps, an omnibus objection on this basis would merely go to the fact that the Bar Date Extension and 7023 Order simply did not extend the bar date for such securities holders.[11] Such objection would in no way implicate any alleged misrepresentations or omissions that PERA, and its putative class in the District Court, complains of. Therefore, there is no risk that adjudication of omnibus objections will "produce gross inconsistencies," as Chevron fears. Chevron Obj. at 5. Nor is there reason to delay the parties from attempting to resolve claims that are unaffected by these housekeeping measures, as PERA's Renewed 7023 Motion proposes.

In short, these inquiries that would be the subject of the Securities Omnibus Objection Procedures do not invite "complex legal issues" or require a claimant to "carry a heavy burden of discovery and expenses," as Chevron claims. Chevron Obj. at 5.[12] Moreover, they are not conducive to class-wide resolution and certainly do not compel representation by class counsel—who have not been retained by the claimant.

PERA also fails to grasp the chronology of the Securities Omnibus Objection Procedures, claiming that they are "purposefully put after mediation" to give the Reorganized Debtors "additional leverage." The Securities ADR Procedures and the Securities Omnibus Objection Procedures are not sequential; the Reorganized Debtors may make omnibus objections right away, especially if it aids the chapter 11 process by avoiding the ADR Procedures for claims that are defective or disallowable

---

doctrine of "virtual representation." *See* PERA Obj. at 13 (quoting *Taylor v. Sturgell*, 533 U.S. 880, 901 (2008)).

[11] *See* 7023 Order ¶ 2 [Dkt. No. 5943] (extending the bar date "***solely*** with respect to those persons or entities that purchased or acquired the Debtors' publicly traded debt and/or equity securities . . . ***during the period from April 29, 2015 through November 15, 2018***, inclusive, and who may have claims under the securities laws against the Debtors for rescission or damages") (internal definitions omitted).

[12] Nor is there a need for claimants to "pool [ ] resources" for merits discovery, as Chevron suggests. Chevron Obj. at 5.

on one of the omnibus objection grounds.[13] Thus, in some instances, prioritizing an omnibus objection would promote efficiency and reduce delay. For example, if a claimant did not purchase or acquire securities during the Subject Period, the Reorganized Debtors may object right away and avoid pursuing a futile settlement. Should the Reorganized Debtors lose an omnibus objection, the parties could then engage through the Securities ADR Procedures. Flexibility has virtue and will expedite resolution of the Subordinated Securities Claims here. The Securities Omnibus Objection Procedures are also necessary to appropriately clear up the claims registry in the event that the Court is ultimately called upon to address merits-based issues.

### B. The Specific Grounds for Omnibus Objections Are Appropriate

As discussed in the Motion, there are two differences between the omnibus procedures already in effect and approved by the Court in these Chapter 11 Cases and those pending here. *See* Motion at 12–13. *First*, the Securities Omnibus Objection Procedures provide actual notice of any omnibus objection not less than forty-two (42) days before the date set for hearing on the omnibus objection. *See* Proposed Order, Ex. A-3, § I.F. Rule 3007, by contrast, provides that a notice of objection be served at least 30 days before any scheduled hearing. Fed. R. Bankr. P. 3007(a). In this respect, the Procedures benefit claimants and provide more time than would typically be necessary to provide for such a motion. *Second*, the Reorganized Debtors tailored a few additional grounds for an omnibus objection to reflect the specific issues raised by the Subordinated Securities Claims. *See* Motion at 12–13. The Reorganized Debtors address below each ground for an omnibus objection.

**Outside the Subject Period.** As discussed above, a number of claimants submitted Subordinated Securities Claims despite the fact that they did not purchase or acquire any of the Reorganized Debtors' securities during the Subject Period. Neither PERA nor any of the other Objectors challenges the propriety of an omnibus objection on this basis.

---

[13] *See* Securities Claims Procedures, Ex. B; Securities Claims Information Procedures § I.E (Reorganized Debtors may direct a Subordinated Securities Claim to (i) the Securities ADR Procedures, or (ii) object under, among other things, the Securities Omnibus Objection Procedures).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Liquidation of Position Prior to a "Corrective Disclosure."** PERA claims, without support, that this ground constitutes a "substantive defense[]." PERA Obj. at 12. Not true. Whether a claimant (i) bought or acquired securities during the Subject Period, and (ii) sold all of its holdings before a corrective disclosure is a binary question. As alleged by PERA, there were 897 days (*i.e.*, over 600 trading days) between the start of the Subject Period and the first corrective disclosure. *See* Third Amended Complaint ¶ 328 (identifying October 12, 2017 as the first corrective disclosure). Therefore, even under PERA's theory, any claimant who sold securities before October 12, 2017 did not suffer any alleged harm. *See id.* ¶¶ 327–90; *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 177 (3d Cir. 2001) ("[I]t is necessary here to separate the concept of economic loss from the issue of loss causation. Of particular importance is whether plaintiffs have, in fact, suffered an economic loss.") (citing *Feldman v. Pioneer Petroleum, Inc.*, 813 F.2d 296, 302 (10th Cir. 1987) ("[F]ailure to show actual damages is a fatal defect to a Rule 10b-5 cause of action."); 2 T. Hazen, *Law of Securities Regulation* § 13.7, p. 533 (3d ed. 1995) ("Failure to allege or prove actual damages will result in dismissal of any 10b-5 damage claim.")). This omnibus objection allows the Court to easily dispense with certain Subordinated Securities Claims without addressing the merits of the claims, including the substantive issue of loss causation. Moreover, any claimant who seeks to challenge this position will have a full opportunity after notice to oppose the Reorganized Debtors' omnibus objection as it relates to that claimant. The ability to raise that omnibus objection does not diminish any claimant's rights.

**Failure to Comply with the Securities Claims Procedures.** As noted above, PERA does not dispute that the information the Reorganized Debtors seek in the Securities Claims Information Procedures is ***necessary*** to calculate potential damages under applicable law. *See supra* § I.A. In fact, PERA's own declarant confirms that it is standard and customary to collect transaction-level data— including, for example, during the 90-day bounce back period for equity securities.[14] If the Court

---

[14] *See* A.B. Data Decl. ¶¶ 5–9; *id.*, Ex. B ("An Excel spreadsheet or other electronic file containing account information and transactional data MUST be prepared in accordance with A.B. Data, Ltd.'s Electronic Claim Filing Template Mapping Instructions found in Appendix E."); *id.* Ex. B, App'x A (requiring transactions "during the Class Period and 90-day look-back period"); *id.*, Ex.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

were to approve the Securities Claims Procedures, and a claimant were to fail to comply with the Securities Claims Information Procedures, the claimant would be violating a court order and the Reorganized Debtors believe that would constitute a valid basis for disallowance. The Procedures, however, are designed to avoid this occurrence. Should a claimant fail to return a Trading Information Request Form within 45 days, under the Procedures, the Reorganized Debtors are required to send the claimant an Information Reminder, providing an additional 14 days to comply with the Court's order. *See* Proposed Order, Ex. A-1, § I.A–D. Should the claimant fail to comply with the Reminder Deadline, upon an omnibus objection, the claimant would be afforded yet another opportunity to provide the requested information in response to the proposed objection. Should the claimant fail to appear or respond to the objection, as a practical matter, the Court could then either (i) disallow the claim, or (ii) order that the claimant had until a certain deadline to return the Trading Information Request Form, but if the claimant fails to meet the deadline, the claim will be disallowed. At that point, the claimant would have (i) disregarded at least three separate overtures from the Reorganized Debtors, (ii) ignored two separate court orders requiring the provision of information directly related to its asserted damages, and (iii) failed to respond to an objection to its proof of claim. Claimants have a duty to respond to a debtor's formal and informal information requests. Once again, the procedures do not diminish any claimant's rights and the Court remains the ultimate gatekeeper for disallowance of any such claim.

**Unauthorized Bulk Claims.** Contrary to PERA's claim, it would not be "unfair" to institutional investors for the Court to disallow the filing of unauthorized bulk claims. PERA Obj. at 13. Every Nominee received notice of the original Bar Date pursuant to the Bar Date Order. *See* Schrag Decl. ¶¶ 7–8 [Dkt. No. 5371]; Pullo Decl. ¶ 5 [Dkt. No. 5370]. Had Nominee-filed bulk proofs of claim been sufficient, there would have been no reason to set the Extended Bar Date. Nor would there have been a reason to specifically approve procedures whereby Nominees would mail Rescission or Damage Bar Date Materials to Beneficial Owners. *See* 7023 Order ¶¶ 5–6. Moreover, pursuant to the Bar Date Extension and 7023 Order, only a Securities Claimant, or its "authorized

B, App'x B ("Use Part II of this form . . . to supply all required details of your transaction(s) in PTC publicly traded common stock.").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

agent or attorney," may file a Rescission or Damage Proof of Claim. *Id.* ¶ 9.[15] Yet many Subordinated Securities Claims have been filed by third-parties on behalf of claimants without any documentation whatsoever demonstrating the requisite authorization. While it is nice of PERA to champion the rights of sophisticated or institutional investors, these filers can respond to an omnibus objection and explain to the Court why (i) they failed to comply with the 7023 Order and (ii) less documentation than is customary and standard to establish appropriate authorization to file a claim should be required of them here. Nor would it "be a reversal of procedures" because (apparently) Prime Clerk agreed to "log" these bulk claims. *Id.* The Reorganized Debtors and Prime Clerk's position has always been consistent: the 7023 Order sets forth the requirement as to the form and manner in which Rescission or Damage Proofs of Claim are to be filed and the Reorganized Debtors reserve all of their rights with respect thereto. The mere logging of claims by Prime Clerk does not take a position as to whether such a claim is valid or timely filed.

**Otherwise Objectionable.** PERA objects that this ground "is so wide as to allow full defenses bearing on the substantive merits of the Securities Litigation, such as the anticipated defense that truth about Reorganized Debtors' alleged false statements was already known to Securities Claimants." PERA Obj. at 12. However, this Court has already approved identical language as grounds for omnibus objections as to general claims. *See* Dkt. No. 8228 ¶ 2.C.vi ("The claims are objectionable on some other common basis under applicable bankruptcy or non-bankruptcy law, such as the statute of limitations, that applies to 10 or more claims."). In any event, and as stated above (and in the Motion), the Securities Omnibus Objection Procedures are not a vehicle for addressing the substantive merits of either the Securities Litigation or the Subordinated Securities Claims. *See* Motion at 13–14. And the Reorganized Debtors have no intention of asserting a truth-in-the-market defense through omnibus objections.

---

[15] PERA's declarant highlights this requirement. *See* A.B. Data Decl. ¶ 7 ("Electronic Filings by a nominee or third-party filer on behalf of others are typically required to include proof of the filer's authority to file the claims on behalf of the underlying investors."); *id.* ¶ 8 ("The electronic filing guidelines also include a description of the required authorization letters and documentation necessary to submit an Electronic Filing."); Ex. B ("If you are filing on behalf of your clients, you must include a letter or document providing your authorization to sign on behalf of your clients, as set forth in Appendix C."); *id.*, Ex. B, App'x C (setting forth authorization requirements).

## V. THE SECURITIES CLAIMS PROCEDURES ARE SUPERIOR

Chevron and the other "cut and paste" Joinders express a preference for adopting PERA's proposal and granting the Renewed 7023 Motion. *See* Chevron Obj. at 5–6. However, these are just a very few claimants out of the over 7,000 Subordinated Securities Claims and their Joinders in support of PERA do not change the fact that the Renewed 7023 Motion is not viable and must fail as a matter of law. Indeed, any Subordinated Securities Claimant who wishes to be represented by counsel for PERA is free to hire them, subject to the rules on conflicts, and PERA's counsel would then be able to decide whether to settle claims collectively for their clients. But there also are innumerable other significant claimants, including institutional investors who invested tens or hundreds of millions in Subordinated Securities who have their own counsel and have no interest in PERA speaking for them.

As set forth in the 7023 Response, certification under either provision of Civil Rule 23(b)(1) creates a mandatory class, which would deprive every Subordinated Securities Claimant of the ability to proceed with its chosen counsel or without counsel, determine whether or not to settle a claim on its own, or receive and entertain offers to settle by the Reorganized Debtors. More importantly, as detailed in the 7023 Response, PERA is irreparably conflicted from representing "all" Subordinated Securities Claimants in this proceeding, because it owes competing duties to members of the pending federal class action against certain of PG&E's former officers and directors and underwriters to certain PG&E securities offerings. But even setting this conflict aside, PERA's proposal would require significant and substantial litigation and discovery that would only delay and reduce payments to Subordinated Securities Claimants, as no Subordinated Securities Claimant would receive any recovery until PERA, unilaterally, decides to settle. And because PERA seeks to certify mandatory classes, each of the other Subordinated Securities Claimants, including those with separate counsel, would be powerless to pursue any other alternatives—while being bound to compensate PERA's counsel, who will undoubtedly seek compensation based on any recovery achieved. Lastly, the settlement posture PERA seeks to impose is nothing more than a continuation

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

of the status quo. As the Court is aware, the Debtors and PERA have long been in mediation attempting to settle. These efforts have so far been unsuccessful.

The Securities Claims Procedures, on the other hand, allow individual claimants to be able to resolve the Subordinated Securities Claims quickly and efficiently by fostering consensual settlements and by limiting the need to unduly burden the Court with highly complicated and fact-specific merits-based issues.

## VI.    CONCLUSION

Accordingly, for the reasons stated herein and in the Motion, (i) the Reorganized Debtors' Motion should be granted, (ii) the Objectors' objections should be overruled, (iii) the Renewed 7023 Motion should be denied, and (iv) the Court should grant the Reorganized Debtors such other relief as is just and proper.

Dated:  October 29, 2020

**WEIL, GOTSHAL & MANGES LLP**

**KELLER BENVENUTTI KIM LLP**

By:  ___/s/ *Richard W. Slack*___
         Richard W. Slack

*Attorney for the Debtors and Reorganized Debtors*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119