KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Gabrielle L. Albert (#190895)
(galbert@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Telephone: 415 496 6723
Facsimile: 650 636 9251

MILLER STARR REGALIA
Arthur F. Coon (#124206)
(arthur.coon@msrlegal.com)
Arielle O. Harris (#257792)
(arielle.harris@msrlegal.com)
A Professional Law Corporation
1331 N. California Blvd., Fifth Floor
Walnut Creek, California 94596
Telephone:    925 935 9400
Facsimile:    925 933 4126

*Attorneys for Plaintiff and Reorganized Debtor
Pacific Gas and Electric Company*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Reorganized Debtors.** | Case Nos. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br><br><br>Adv. Pro. No. |
| **PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Plaintiff,**<br><br>v.<br><br>**CITY OF LAFAYETTE, a municipal corporation,**<br><br>**Defendant.** | **COMPLAINT FOR RESCISSION OF CONTRACT, REJECTION OF CONTRACT, DETERMINATION OF CLAIM, AND DECLARATORY RELIEF** |

In accordance with 28 U.S.C. section 1334, 11 U.S.C. ("**Bankruptcy Code**") sections 105 and 365, and Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") 7001(7), 7001(9), 7042, 7065, and 9014, Pacific Gas and Electric Company ("**PG&E**" or the "**Plaintiff**"), as a reorganized debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") and as plaintiff in the above-captioned adversary proceeding, allege for its complaint ("**Complaint**") against the **City of Lafayette** ("**Defendant**" or the "**City**"), upon knowledge of its own acts and upon information and belief as to other matters, as follows:

## THE PARTIES

1. PG&E, a California corporation, is an electricity and natural gas utility operating in northern and central California.

2. Defendant is a municipal corporation located in the County of Contra Costa, State of California.

## JURISDICTION AND VENUE

3. This adversary proceeding arises in and relates to the Chapter 11 Cases. The Court has jurisdiction to consider this adversary proceeding and over the claims asserted herein against Defendant pursuant to 28 U.S.C. sections 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), Rules 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**").

4. This is a core proceeding under 28 U.S.C. section 157(b). The Plaintiff consents to the entry of a final order by the Court in connection with this adversary proceeding to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5. Venue is proper before the Court pursuant to 28 U.S.C. sections 1408 and 1409.

# FACTUAL BACKGROUND

**PG&E's Chapter 11 Case**

6. On January 29, 2019 (the "**Petition Date**"), Plaintiff and its parent company commenced the Chapter 11 Cases. Prior to July 1, 2020 (the "**Effective Date**"), Plaintiff operated its businesses and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. On June 20, 2020, this Court entered the Order [Docket No. 8053] (the "**Confirmation Order**") confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated June 19, 2020* [Bk. Dkt. No. 8048] (as it may be amended, modified, or supplemented and together which any exhibits or schedules thereto, the "**Plan**"). The Plan became effective on the Effective Date [Bk. Dkt. No. 8252].

8. In connection with the Plan, the Debtors moved to reject certain executory contracts and unexpired leases (the "**Rejection**"), including the TRA (as hereafter defined) that is the subject of this Complaint, pursuant to its *Notice of Filing of Plan Supplement in Connection with Debtors' and Shareholders Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* [Bk. Dkt. No. 7037].

9. Defendant objected to the proposed rejection of the TRA on the grounds that it is not an executory contract, asserting that Defendant has no outstanding obligations beyond ministerial duties [Bk. Dkt. No. 7269] (the "**Objection**"). The dispute over the rejection was reserved for a later date. No hearing on the Objection has been set and, through this Complaint, PG&E seeks to resolve such dispute.

10. Under the terms of the Plan, this Court reserved jurisdiction over various matters affecting PG&E including, without limitation, to hear and determine motions for the rejection of executory contracts, to hear and determine adversary proceedings and contested matters, to consider the allowance of claims, and to issue injunctions. *See* Plan, §11; Confirmation Order, ¶78.

**PG&E's Community Pipeline Safety Initiative**

11. PG&E provides natural gas public utility services to residential and commercial customers in Northern and Central California. PG&E obtains and transmits natural gas in California to

millions of customers through a network of approximately 6,750 miles of high-pressure natural gas transmission pipelines that are typically installed approximately three to four feet below the ground. The gas transmission lines vary in size from 4 inches to 42 inches in diameter. PG&E also maintains approximately 40,000 miles of lower pressure gas distribution service lines, which deliver natural gas to homes and businesses throughout the service area.

12. Gas transmission pipelines are typically located within utility easements on private property or within public rights of way adjoining private property. Property owners or occupants sometimes place structures or plant trees or other vegetation within the easement area, which can interfere with the safe operation and maintenance of the gas transmission pipeline.

13. Following the 2010 gas transmission pipeline explosion in San Bruno, PG&E implemented several additional precautionary measures intended to further improve gas safety. Among these measures was PG&E's 2012 implementation of the Community Pipeline Safety Initiative ("**CPSI**"), which program involves reviewing all 6,750 miles of PG&E's high-pressure gas transmission pipelines to identify and remove structures and trees in order to advance its safety objectives. Some of the projects included within the CPSI are improving access to the areas above and adjacent to the pipelines for inspection, maintenance and repair of the pipelines.

14. Among other goals, the CPSI program is aimed at ensuring that first responders and safety crews have immediate access to its natural gas pipelines in an emergency, that pipelines can be inspected for maintenance and repair, and that pipelines are not being damaged by tree roots. Tree roots pose a safety risk because they can damage the protective coating of underground pipelines, leading to corrosion and leaks, and result in other physical damage to pipelines.

15. The first step in PG&E's CPSI program was to complete a high-precision, GPS survey of 6,750 miles of gas transmission pipelines to identify structures, trees, or other encroachments located within a certain distance of the pipeline. After identifying encroachments and confirming the nature of PG&E's property rights through which its pipelines pass, PG&E then reaches out to the appropriate property owners and occupants to discuss the removal of any structures and/or trees identified by PG&E as posing a potential safety concern or otherwise interfering with PG&E's access to and use of its easements and pipelines.

16. PG&E reviews trees located within 14 feet of its gas pipelines to determine the level of risk presented by such trees, based on numerous features, and whether trees presenting risk can remain in place or must be removed and replaced in a different location. PG&E performs environmental reviews, including surveys of birds and other wildlife, and replaces trees that it removes.

**2017 Tree Removal Agreement**

17. In 2014, as part of its CPSI, PG&E identified 1,000 trees near its natural gas pipelines for removal in the City of Lafayette, but since that time has reduced the number to 272 trees, of which 216 are considered protected by the Lafayette Municipal Code ("**LMC**").

18. The City claimed that PG&E needed to comply with the City's Tree Protection Regulations, codified in Chapter 6-17 of the LMC ("**City Tree Regulations**"), like any other applicant for tree removal. PG&E, however, asserted that this tree removal is not subject to local discretionary permitting because the California Public Utilities Commission ("**CPUC**") has exclusive jurisdiction over a regulated public utility's tree removal for safety purposes, and that the CPUC's regulations and orders govern tree removal related to pipelines and preempt local regulations because the CPUC's regulations occupy the field.

19. After a series of negotiations between 2014 and 2017, PG&E and the City agreed on a hybrid approach to allow PG&E to remove the 272 trees, which was confirmed in writing through the Tree Removal Agreement (the "**TRA**").

20. The City of Lafayette City Council considered and approved the TRA at a public meeting held on March 27, 2017. The TRA was fully executed by both PG&E and the City as of April 26, 2017. A copy of the TRA is attached hereto as **Exhibit A**.

21. Under the TRA, the City agreed to approve PG&E's tree removal under the exception found in Section 6-1705(b)(5) of the City's municipal code, which authorizes the City to grant an "exception to the requirements of [Chapter 6-17]" where "the city must remove a protected tree to protect the health, safety and general welfare of the community." (LMC, 6-1705(a), (b)(5).) When the exception is granted, an applicant need not obtain a tree removal permit under Chapter 6-17. Exceptions may be granted, granted with conditions, or denied. (LMC, 6-1705(a).)

22. Under the TRA, the City would approve PG&E's CPSI work under the "exception" on the condition that PG&E provide all required information and pay all mitigation fees for the removed trees that would otherwise be required under the Tree Protection Regulations.

23. The City and PG&E reserved their respective legal positions in the TRA regarding the applicable law as to any *future* tree removals by PG&E within the City.

24. Shortly after the execution of the TRA in late April or early May of 2017, PG&E made a payment of $474,805 to the City as "in-lieu mitigation fees" in compliance with the TRA.

**Lawsuit by Save Lafayette Trees**

25. On June 26, 2017, a citizens group named Save Lafayette Trees ("**SLT**") sued the City and named PG&E as a real party in interest in an action challenging the TRA, *Save Lafayette Trees v. City of Lafayette*, Contra Costa Superior Court Case No. CIVMSN17-1142. SLT claims that the City violated the California Environmental Quality Act ("**CEQA**"), the State Planning and Zoning Law, the City's General Plan, and the City Tree Regulations in approving the TRA.

26. PG&E filed a demurrer to SLT's petition and complaint on the grounds that SLT's petition for writ of mandate was untimely filed as to all of its claims and causes of action. The demurrer was sustained by the trial court without leave to amend. SLT appealed to the First Appellate District Court of Appeal, which affirmed the trial court's demurrer ruling as to all claims except SLT's CEQA claim. (*See Save Lafayette Trees v. City of Lafayette* (2019) 32 Cal.App.5th 148; see also First District Court of Appeal No. A154168.)

27. In February of 2019, PG&E filed a notice in the SLT lawsuit regarding the filing of its bankruptcy proceedings and of the imposition of an automatic stay under federal law.

28. Although the automatic stay terminated on the Effective Date, the First Appellate District Court of Appeal has not yet issued the remittitur in the state court litigation and has requested letter briefs on whether and how the still-pending bankruptcy issues and proceedings regarding rejection of the TRA may impact that.

**City Claims It Maintains Discretion to Deny Tree Removal under TRA**

29. PG&E is informed and believes that the City contends that, contrary to the terms and intent of the TRA, PG&E must still go through a discretionary approval process under the City Tree Regulations *as to the trees that are the subject of the TRA*.

30. PG&E is informed and believes that the City still maintains it has authority and discretion under the TRA to reject the removal of specific trees that were addressed and covered in the TRA, notwithstanding the express terms of the TRA and PG&E's payment (and the City's acceptance) of mitigation fees for all of the trees identified for removal.

31. The City's position directly conflicts with the plain language of the TRA and frustrates the purpose of the TRA, which was meant to authorize removal of all 272 trees identified by PG&E in 2017 pursuant to the exception in Section 6-1705.

32. The City has not yet issued any encroachment permits to PG&E authorizing the removal of the trees subject to the TRA.

33. PG&E has not removed any of the trees subject to the TRA.

34. As a result, there is a complete failure of consideration to PG&E for the TRA.

## FIRST CLAIM FOR RELIEF

**(Rescission of Contract – California Civ. Code section 1689(b))**

35. Plaintiff realleges and incorporates by reference, as though set forth in full, each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

36. As described above, on March 27, 2017, the City Council approved the TRA and thereafter it was fully executed by the City and PG&E on April 26, 2017.

37. The purpose of the TRA was to allow PG&E to remove 272 trees identified for removal under PG&E's CPSI program based on their impacts to PG&E's underground infrastructure.

38. PG&E entered into the TRA for the express purpose of obtaining authorization to remove the trees without the need for obtaining a discretionary permit from the City under the City's Tree Regulations.

39. PG&E is informed and believes that the City contends that PG&E must go through a discretionary approval process under the City Tree Regulations to remove the trees that are the subject

of the TRA. PG&E is informed and believes that the City also claims it maintains discretion to deny permission to remove specific trees that are covered under the TRA.

40. As of the date of the filing of this Complaint, the City has not issued any permits to PG&E for the removal of the trees subject to the TRA and PG&E has not removed the trees pursuant to the TRA—over three years after the TRA was approved.

41. Pursuant to California Civil Code section 1689(b)(1), Plaintiff seeks rescission of the TRA on the grounds that the consent of PG&E to the TRA was given by mistake of fact because PG&E believed the City was approving, through the TRA, the removal of the trees subject only to PG&E's need to pay mitigation fees and submit information, upon which the City would issue permits for individual trees.

42. In reasonable reliance upon representations and promises by the City that no further discretionary review would be required as to the 272 trees that are the subject of the TRA, PG&E agreed to enter into the TRA and paid the mitigation fees which the City accepted.

43. PG&E is informed and believes, and based thereon alleges, that these representations and promises made by the City were materially inaccurate and that the City knew them to be inaccurate when made or made them recklessly without knowing whether the representations and promises were accurate.

44. This mistake has a material effect upon the agreed exchange of performance between the City and PG&E in that the City claims it retains discretion to deny removal of trees subject to the TRA.

45. PG&E does not bear the risk associated with this mistake which was based on the City's inaccurate statements.

46. The effect of the mistake is such that enforcement of the TRA would be unconscionable.

47. In the alternative, pursuant to California Civil Code section 1689(b)(2), (3), and (4), Plaintiff seeks rescission of the TRA on the grounds that there has been a complete or partial failure of consideration based on the City's refusal to authorize PG&E to remove the trees subject to the TRA without obtaining additional discretionary approval from the City, which eliminates the primary

consideration and motivation for PG&E to enter into the TRA. This failure of consideration is material to the express purpose of the TRA.

48. In the alternative, pursuant to California Civil Code section 1689(b)(6), Plaintiff seeks rescission of the TRA on the grounds that essential public interests will be prejudiced by permitting the TRA to stand.

49. As a result of the City's contentions and positions concerning the TRA, PG&E has been unable to remove any of the 272 trees covered by the TRA. These trees were identified for removal due to their potential to pose safety risks, including risks to underground pipelines by damaging the protective coating of the pipelines, leading to corrosion and leaks, and other physical damage. Allowing the TRA to stand will thus result in prejudice to the public safety interests of the people of the State of California.

50. PG&E has fully performed all obligations currently required of it under the terms of the TRA by making the payment of the mitigation fees and also providing all necessary information.

51. PG&E intends the service of the summons and complaint in this action to serve as further notice of rescission of the TRA.

52. Plaintiff seeks an order determining that the TRA is invalid, void, and rescinded.

**WHEREFORE**, Plaintiff seeks relief as hereafter set forth.

## SECOND CLAIM FOR RELIEF

## (Rejection of TRA -- 11 U.S.C. section 365[1])

53. Plaintiff realleges and incorporates by reference, as though set forth in full, each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

54. The TRA is an executory contract because both PG&E and the City continue to have material obligations that must be performed thereunder.

55. PG&E has determined, in its business judgment, that the benefits that it sought in initially entering into, and complying with the terms of, the TRA do not warrant the costs and risks to public safety associated with further compliance with the TRA. Therefore, through the Rejection, PG&E seeks to reject the TRA.

56. It is in the best interest of PG&E that the TRA be rejected.

**WHEREFORE**, Plaintiff seeks relief as hereafter set forth.

## THIRD CLAIM FOR RELIEF

## (Determination of Claim – 11 U.S.C. section 502(b))

57. Plaintiff realleges and incorporates by reference, as though set forth in full, each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

58. Upon rejection of the TRA, the City will be entitled to assert a claim.

59. The City will not suffer any damages because of the Rejection.

---

[1] As of the date of this Complaint, the Rejection and Objection thereto has not been resolved by this Court. Federal Rule of Civil Procedure 42, as incorporated by Federal Rule of Bankruptcy Procedure 7042, allows for consolidation "if actions before the court involve a common question of law or fact, the court may … (a) join for hearing or trial any or all matters at issue in the actions…" Fed. R. Civ. Proc. 42(a)(1). The relief sought in the first claim for relief and Rejection of the TRA are based on the identical set of claims with the identical parties. Moreover, as rules applicable to adversary proceedings are or may be applied to contested matters (*see* Bankruptcy Rule 9014(c)), the City is not prejudiced by consolidation of the contested matter on Rejection into this adversary proceeding.

60. Accordingly, the Court should determine that the City shall have no claim for the Rejection or, in the alternative, determine the amount of such claim.

**WHEREFORE**, Plaintiff seeks relief as hereafter set forth.

### FOURTH CLAIM FOR RELIEF

### (Declaratory Relief – 11 U.S.C. section 105)

61. Plaintiff realleges and incorporates by reference, as though set forth in full, each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

62. The TRA was entered into prior to the commencement of PG&E's Chapter 11 Case and any rights the City has or may assert thereunder constitute a "claim" as defined in section 101(5) of the Bankruptcy Code.

63. Whether this Court finds that the TRA is an executory contract susceptible of rejection or not, PG&E may determine that it cannot comply with its obligations under the TRA while fulfilling its public safety and other obligations as set forth in the CPSI and may thereby be subject to assertions of breach by the City.

64. The TRA does not, and does not purport to, provide the City with the right to seek any remedy that would not constitute a claim.

65. Accordingly, PG&E seeks declaration that the City has no right under the TRA for injunctive, equitable, or any other form of relief that can be invoked to prohibit PG&E from taking action to fulfill its public safety and other obligations as set forth in the CPSI.

**WHEREFORE**, Plaintiff seeks relief as hereafter set forth.

### PRAYER FOR RELIEF

A. For a determination by the Court that the Tree Removal Agreement is invalid, void, and rescinded;

B. For an order authorizing PG&E to reject the Tree Removal Agreement;

C. For judgment disallowing, or determining as zero, the City's damages for rejection of the Tree Removal Agreement;

D.  For a declaration that nothing in the Tree Removal Agreement creates an entitlement for injunctive, equitable, or any other form of relief that can be invoked to prohibit PG&E from taking action to fulfill its public safety and other obligations as set forth in the CPSI; and

E.  For such other and further relief as the Court deems just and proper.

Dated: October 30, 2020

KELLER BENVENUTTI KIM LLP
MILLER STARR REGALIA

By: /s/ Tobias S. Keller
Tobias S. Keller
*Attorneys for Plaintiff and Reorganized Debtor Pacific Gas & Electric Company*