SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
 A Limited Liability Partnership
 Including Professional Corporations
ORI KATZ, ESQ. Cal. Bar No. 209561
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947
E mails: okatz@sheppardmullin.com

Attorney for Creditor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re

PG&E CORPORATION,

and

PACIFIC GAS AND ELECTRIC COMPANY.

　　　　　　　　Debtors,

☑ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☐ Affects both Debtors

*All papers shall be filed in the Lead Case, No. 19-30088 (DM)*

Bankr. Case No.: 19-30088 (DM)

Chapter 11
(Lead Case)
(Jointly Administered)

**MOTION FOR LEAVE TO FILE AMENDED PROOF OF CLAIM BY THE ORIGINAL MOWBRAY'S TREE SERVICE, INC.; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: December 15, 2020
Time: 10:00 a.m.
Judge: Hon. Dennis Montali
Place: United States Bankruptcy Court
　　　　Courtroom 17,
　　　　450 Golden Gate Ave., 16th Floor
　　　　San Francisco, CA

SMRH:4818-2980-3057
MOTION FOR LEAVE TO FILE AMENDED PROOF OF CLAIM BY THE ORIGINAL MOWBRAY'S TREE SERVICE, INC.

Case: 19-30088    Doc# 9392    Filed: 11/03/20    Entered: 11/03/20 21:16:07    Page 1 of 9

By way of this motion The Original Mowbray's Tree Service, Inc. ("Mowbray's) seeks an order entitling it to file the attached proof of claim as an amendment to the multiple timely informal proofs of claim it properly asserted against PG&E Corporation ("PG&E") long before the bar date.

## I. PRELIMINARY STATEMENT

At the time PG&E filed the above-captioned chapter 11 case it owed Mowbray's over $10.2 million on account of pre-petition services. Mowbray's, like many of PG&E's vendors, was in dire straits and fighting for its own survival within weeks of the petition date. During this desperate time Mowbray's, having heard about PG&E's "critical vendor" procedures,[1] presented its pre-petition claim to multiple PG&E estate representatives in writing on numerous occasions. In each instance Mowbray's made clear the nature of its claims (tree-trimming services) and the amount owing down to the penny ($10,217,881.90), including in emails sent to PG&E's designated representatives by Mowbray's controller and chief executive officer on February 22 and 26 and March 4 and 13, 2019. *See* Declaration of Ronnie Jordan in Support of Creditor's Motion For Leave To File Amended Proof of Claim ("Jordan Decl."), ¶¶5-7; Declaration of Alan Phang in Support of Creditor's Motion For Leave To File Amended Proof of Claim ("Phang Decl."), ¶¶5-6. In these emails (and others), Mowbray's provided detailed spreadsheets, invoices and other supporting documentation substantiating the prepetition amounts owed. *Id.*

By late February 2019 it became clear to Mowbray's that it needed to escalate resolution of its pre-petition claim within PG&E. That led Mowbray's to retain counsel in March 2019 to help it present its critical vendor claim to PG&E. By that time Mowbray's liquidity had reached a critical point and threatened its very ability to continue to operate.

---

[1] PG&E used the term "operational integrity suppliers" instead of "critical vendor" in the bankruptcy cases. *See* Second Interim Order Pursuant to 11 U.S.C §§105(a), and 503(b)(0) and Fed. R. Bankr. P. 6003 and 6004 Authorizing Debtors To Pay Prepetition Obligations Owed To Certain Safety And Reliability, Outage, and Nuclear Facility Suppliers, entered March 4, 2019 (Doc. No. 741).

-1-
MOTION FOR LEAVE TO FILE AMENDED PROOF OF CLAIM BY THE ORIGINAL MOWBRAY'S TREE SERVICE, INC.

Case: 19-30088   Doc# 9392   Filed: 11/03/20   Entered: 11/03/20 21:16:07   Page 2 of 9

Despite its precarious financial position, Mowbray's made every effort to continue providing services post-petition and paying necessary subcontractors while PG&E struggled to organize itself to pay these critical vendors. *See* Jordan Decl., ¶5.

On March 29, 2019 counsel for Mowbray's emailed Court-approved bankruptcy reorganization counsel for Mowbray's asking for help. Declaration of Ori Katz, Esq. in Support of Creditor Motion for Leave to File Amended Proof of Claim ("Katz Decl."), ¶4. That email explicitly stated that "Mowbray's has a pre-petition claim of $10,217,881.90" and went so far as to identify by name the PG&E personnel that were familiar with the claim in order to facilitate and expedite review. *Id.*, Exh. A. The email included an unequivocal request for payment.

PG&E's counsel immediately acknowledged receipt of the request and advised that "the supplier management committee" was responsible for dealing with such requests. *See id.* Later that day a different one of PG&E's estate representatives (AlixPartners, LLP) advised that she was running the request by the responsible business managers at PG&E and would be back to Mowbray's. *See* Katz Decl.¸ Exh. B.

Additional back and forth between PG&E and Mowbray's followed, and then on April 15, 2019 an email from AlixPartners advised that a critical vendor payment to Mowbray's had been approved, but without specifying the amount approved. A later email exchange with AlixPartners clarified that the approved amount was "a portion of the outstanding amount," but did not provide a specific number. *Id.* On April 23, 2019, PG&E sent a copy of a letter agreement that Mowbray's would need to sign in order to be paid any critical vendor money. The letter provides that "[PG&E] and you agree as follows . . . *On account of your total prepetition claim in the amount of $10,217,881.90* [italics added], the Company will provisionally pay you [a portion]…on account of such claim (the "Vendor Claim")…. You shall be entitled to assert the remaining balance of the Vendor Claim…as a general unsecured claim in the Chapter 11 Cases, which amount shall be subject to verification, reconciliation, and all available defenses of the company."

-2-
MOTION FOR LEAVE TO FILE AMENDED PROOF OF CLAIM
BY THE ORIGINAL MOWBRAY'S TREE SERVICE, INC.

Case: 19-30088    Doc# 9392    Filed: 11/03/20    Entered: 11/03/20 21:16:07    Page 3 of 9

Jordan Decl., ¶8. PG&E and Mowbray's signed and delivered the letter agreement, a fully executed copy of which is maintained by Mowbray's in its records.[2] *Id.*

After Mowbray's returned the signed letter agreement, PG&E remitted the provisional payment and emailed Mowbray's to confirm that it "will focus to clear up the pre-petition invoices by end of June [2019]." *Id.*, ¶10.

Because of the relatively small size of the critical vendor payment Mowbray's had no viable alternative but to sell its remaining pre-petition claim and did in fact sell over half of its pre-petition claim (at a significant discount) in order to obtain desperately needed liquidity. But this still left Mowbray's with a roughly $2.2 million pre-petition claim which it could not sell because its invoices needed to be validated within PG&E's claims management system.

Mowbray's need for liquidity was exacerbated by PG&E's failure to keep Mowbray's current on a **post**-petition basis. As a result, Mowbray's reached out to PG&E in late August 2019 to advise it of a significant (over $14 million) post-petition receivable,[3] and the outstanding $2.2 million in pre-petition claims which needed validation. These claims by Mowbray's were raised with both PG&E and its Court-appointed counsel multiple times.

An email from PG&E's counsel on September 10, 2019 (with a copy to AlixPartners, LLP) updated Mowbray's on the status of PG&E's invoice validation process as to the pre-petition claims. Katz Decl., ¶6. The email makes reference to over $1 million in pre-petition invoices that were either being "re-entered into the system" or were denoted as "Validation in progress." *Id.*, Exh. C. In addition, the email stated that PG&E was discussing those very same invoices (pre- and post-petition) directly with the CEO of Mowbray's that very day (September 10, 2019).

---

[2] The letter agreement is confidential by its terms and has not been included as an exhibit based on discussions with PG&E's counsel regarding the importance of keeping confidential both the letter and the amounts paid to Mowbray's pursuant to the letter.

[3] Notably, Mowbray's regularly provided detailed breakdowns and reminders regarding its growing post-petition claims, including emails on March 13, June 5 and 18, 2019, among many others. *See* Jordan Decl., ¶¶10-11; Phang Decl., ¶6.

-3-

Case: 19-30088  Doc# 9392  Filed: 11/03/20  Entered: 11/03/20 21:16:07  Page 4 of 9

SMRH:4818-2930-3053.7  MOTION RE AMENDED PROOF OF CLAIM BY THE ORIGINAL MOWBRAY'S TREE SERVICE, INC.

The saga of Mowbray's attempt to have PG&E validate its claim stretched on month after month. On March 2, 2020, over a year after the start of its campaign to get paid, Mowbray's received an email from PG&E with a spreadsheet showing the registered pre-petition claims by Mowbray's and explicitly stated that even after Mowbray's sold a portion of its prepetition claims, "there is an additional $1.66M available to sell." *See* Jordan Decl., Exh. F. Further emails (which included screenshots of PG&E's internal claims management system) confirmed that Mowbray's held valid pre-petition claims, without a doubt, in the remaining amount of at least $1,511,450.24, consistent with what Mowbray's had asserted from day one of PG&E's bankruptcy case. *Id.*, Exh. H.

Because Mowbray's had only asserted timely informal proofs of claim, PG&E did not have a mechanism to pay Mowbray's what it was rightfully owed. There was (and is) no dispute that Mowbray's had done this pre-petition work, had sought on multiple occasions to be paid on account of its pre-petition claims, and was indeed entitled to every penny. According to PG&E, however, Mowbray's would still not be paid because by raising a technical/legal objection to Mowbray's claim, PG&E could obtain a windfall of over $1.5 million (on invoices that in PG&E's very own system were showing as due and owing) at the expense of an admitted critical vendor who stood by PG&E through the bankruptcy case, never once threatened to walk off the job and continued to trim trees even when it was owed over $14 million in post-petition receivables. This Application followed.

## II. DISCUSSION

The Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") address the requirements for both the substance and timely filing of a proof of claim. *See* Fed. R. Bank. 3002(a)-(c) (requiring proof of claims be filed and establishing deadline for filing), 5005(a) and (c), and 9009 (requiring parties to use Official Forms). Despite requirements under the Code and Bankruptcy Rules that a formal proof of claim be timely filed for a creditor to share in distributions from a bankruptcy case, a court-made doctrine recognizing "informal" proofs of claim has long been a part of the Ninth Circuit bankruptcy jurisprudence. *Dicker v. Dye* (In re Edelman), 237 B.R. 146, 154 (9th Cir. BAP

1999). It is an extension of the "so-called rule of liberality in amendments to creditors' proofs of claim so that the formal claim relates back to previously filed informal claim." *In re Holm*, 931 F.2d 620, 622 (9th Cir. 1991).

In the Ninth Circuit "for a document to constitute an informal proof of claim, it must state an explicit demand showing the nature and amount of the claim against the estate, and evidence an intent to hold the debtor liable." *In re Sambo's Restaurants, Inc.*, 754 F.2d 811, 815 (9th. Cir. 1985). Numerous types of documents and pleadings have been deemed adequate by the Ninth Circuit to constitute an informal proof of claim. *See id.* at 815-16 (communications with debtor counsel); *In re Franciscan Vineyards*, 597 F.2d 181, 182-83 (9th Cir. 1979) (per curiam) (a letter to a bankruptcy trustee, even though it had not been filed with the bankruptcy court); *In re Anderson-Walker Indus., Inc.*, 798 F.2d at 1285 (letter to counsel for the trustee stating that the creditor was owed money and expected payment).

The elements cited under Ninth Circuit case law to establish a valid informal claim include (the "Ninth Circuit Test"):

(1) presentment of a writing;

(2) within the time for the filing of claims;

(3) by or on behalf of the creditor;

(4) bringing to the attention of the court;

(5) the nature and amount of a claim asserted against the estate.

*Pac. Res. Credit Union v. Fish* (In re Fish), 456 B.R. 413, 417 (9th Cir. BAP 2011).

Elements (1), (2), (3) and (5) of the Ninth Circuit Test are plainly satisfied with respect to Mowbray's in light of the following undisputed and undisputable facts:

– Mowbray's, on multiple occasions, presented its claim via a writing to PG&E in the form of correspondence, invoices and other supporting documentation, identifying the precise amounts owed and the exact services for which payment was demanded. Setting aside those voluminous writings, here we have an actual written "critical vendor" agreement between Mowbray's and PG&E explicitly acknowledging

-5-

the existence of the pre-petition claims. The types of documents treated as sufficient for an informal proof of claim are quite liberal. *In re Sambo's Restaurants, Inc.*, 754 F.2d at 816. The Ninth Circuit has recognized that a court may look to a single document or multiple documents, taken together with the actions or inactions of a creditor, to determine if such documents are an informal proof of claim. *Id.*, at 816 (finding multiple documents and correspondence taken together were reasonably construed to be an amendable proof of claim).

− Mowbray's multiple written submissions were made to PG&E (both directly and via estate representatives, including Court-appointed counsel and the Court-approved firm providing financial advisory and interim management services in connection with the restructuring) well within the time for the filing of claims.

− The written claims were presented both by **and** on behalf of Mowbray's.

To satisfy the fourth element of the Ninth Circuit Test, the documents and actions by Mowbray's discussed above must bring the claim to the attention of the Court. In the Ninth Circuit, an informal proof of claim need **not** actually be filed with the court. *In re Holm*, 931 F.2d at 622. As summarized by the Ninth Circuit BAP, "[e]very case located by this Panel… requires, at an absolute minimum, that a writing be received by either the bankruptcy court *or a representative of the bankruptcy estate* no later than the claims bar date." *In re Edelman*, 237 B.R. at 155 (emphasis added).

Courts have found amendable informal proof of claims where the creditor's actions consisted merely of letters to a trustee (*In re Franciscan Vineyards, Inc*, 597 F.2d at 183), trustee counsel (*In re Dialysis Service Co.*, 19 B.R. 940, 941 (Bankr. Co. Dist. 1982)), or debtor's accountants (*In re High Point Seating Co.*, 181 F.2d 747, 749 (2nd Cir. 1950)), among others. In *In re Sambo's Restaurants, Inc.*, the Ninth Circuit determined a state court complaint served on the debtor and subsequent correspondence between the creditor and debtor's in-house counsel and external counsel was sufficient to find an informal claim. 754 F.2d at 815-17.

-6-
MOTION FOR LEAVE TO FILE AMENDED PROOF OF CLAIM BY THE ORIGINAL MOWBRAY'S TREE SERVICE, INC.

Case: 19-30088    Doc# 9392    Filed: 11/03/20    Entered: 11/03/20 21:16:07    Page 7 of 9

Section 1107 of the Bankruptcy Code provides a debtor in possession with all the rights and powers of a chapter 11 trustee, and it requires the debtor perform all but the investigative functions and duties of a trustee. As explained and recognized in *In re Sambos Rest., Inc.*, because a debtor in possession has all the rights and powers of the trustee, "communications to the [debtor in possession] were the equivalent of communications to a trustee." *Id*., at 815. This makes the representatives of PG&E the representatives of the bankruptcy estate, and can only mean that the communications between Mowbray's and PG&E and its representatives, were communications with representatives of the "bankruptcy estate" for purposes of the Ninth Circuit Test. If communicating with a debtor in possession, its counsel, its financial advisor and a special committee established for the specific purpose of evaluating payment of pre-petition claims does not constitute communication with a "representative of the bankruptcy estate," then it may very well be impossible to find a way to communicate with such a representative.

### III. CONCLUSION

Mowbray's did much more in this case than the creditors in the Ninth Circuit precedent cited above. Its formal proof of claim, in the form attached to this Application, should be allowed to amend the multiple, timely, written informal proofs of claim received by several different representatives of the bankruptcy estate.

///

///

///

-7-

Case: 19-30088    Doc# 9392    Filed: 11/03/20    Entered: 11/03/20 21:16:07    Page 8 of 9

MOTION FOR LEAVE TO AMEND PROOF OF CLAIM BY THE ORIGINAL MOWBRAY'S TREE SERVICE, INC.

1     If the Court finds the informal proofs of claim are insufficient, Mowbray's reserves
2 all rights to assert all arguments in favor of its entitlement to have a late filed claim
3 deemed valid.

5 DATED: November 3, 2020

6                         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

8           By         */s/ Ori Katz*
9                           ORI KATZ

-8-

Case: 19-30088   Doc# 9392   Filed: 11/03/20   Entered: 11/03/20 21:16:07   Page 9 of 9

MOTION FOR LEAVE TO FILE AMENDED PROOF OF CLAIM BY THE ORIGINAL MOWBRAY'S TREE SERVICE, INC.