ROPES & GRAY LLP
Rocky C. Tsai (CA Bar No. 221452)
3 Embarcadero Center
San Francisco, CA 94111
Telephone: (415) 315-6369
Facsimile: (415) 315-6350
Email: rocky.tsai@ropesgray.com

ROPES & GRAY LLP
Andrew G. Devore (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000
Facsimile: (617) 951-7050
Email: andrew.devore@ropesgray.com

ROPES & GRAY LLP
Gregg M. Galardi (admitted *pro hac vice*)
Keith H. Wofford (admitted *pro hac vice*)
Daniel G. Egan (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Email: gregg.galardi@ropesgray.com
　　　　keith.wofford@ropesgray.com
　　　　daniel.egan@ropesgray.com

*Counsel to Elliott Management Corporation, on behalf of itself and certain funds and accounts managed, advised, or sub-advised by it*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>　　-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>　　　　　　　　Reorganized Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**NOTICE OF APPEAL AND STATEMENT OF ELECTION TO HAVE APPEAL HEARD BY THE DISTRICT COURT** |

**NOTICE IS HEREBY GIVEN** that Elliott Management Corporation, on behalf of itself and certain funds and accounts managed, advised, or sub-advised by it ("Elliott"), by and through its undersigned counsel, Ropes & Gray LLP, hereby appeals from (i) the *Order Disallowing Administrative Expense Claims of Elliott Management Corporation* entered on October 22, 2020 [D.I. 9334] (the "Order"), and (ii) the related *Memorandum Decision Disallowing Administrative Expense Claims* entered on October 22, 2020 [D.I. 9333] (the "Memorandum Decision"). Copies of the foregoing are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

Pursuant to 28 U.S.C. § 158(c)(1) and Rule 8005(a) of the Federal Rules of Bankruptcy Procedure, Elliott elects to have the appeal heard by the United States District Court for the Northern District of California.

The names of all parties to the Order and Memorandum Decision and the names, addresses, and telephone numbers of their respective attorneys are:

**APPELLANT**

| Party | Counsel |
|---|---|
| Elliott Management Corporation, on behalf of itself and certain funds and accounts managed, advised, or sub-advised by it | ROPES & GRAY LLP<br>Rocky C. Tsai (CA Bar No. 221452)<br>3 Embarcadero Center<br>San Francisco, CA 94111<br>Telephone: (415) 315-6369<br>Facsimile: (415) 315-6350<br>Email: rocky.tsai@ropesgray.com<br><br>ROPES & GRAY LLP<br>Gregg M. Galardi (admitted *pro hac vice*)<br>Keith H. Wofford (admitted *pro hac vice*)<br>Daniel G. Egan (admitted *pro hac vice*)<br>1211 Avenue of the Americas<br>New York, NY 10036<br>Telephone: (212) 596-9000<br>Facsimile: (212) 596-9090<br>Email: gregg.galardi@ropesgray.com, keith.wofford@ropesgray.com, and daniel.egan@ropesgray.com |

| Party | Counsel |
|---|---|
| | ROPES & GRAY LLP<br>Andrew G. Devore (admitted *pro hac vice*)<br>Prudential Tower<br>800 Boylston Street<br>Boston, MA 02199<br>Telephone: (617) 951-7000<br>Facsimile: (617) 951-7050<br>Email: andrew.devore@ropesgray.com |

**APPELLEE**

| Party | Counsel |
|---|---|
| Reorganized Debtors | WEIL, GOTSHAL & MANGES LLP<br>Stephen Karotkin (admitted *pro hac vice*)<br>Richard W. Slack (admitted *pro hac vice*)<br>Theodore E. Tsekerides (admitted *pro hac vice*)<br>Jessica Liou (admitted *pro hac vice*)<br>Matthew Goren (admitted *pro hac vice*)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007<br>E-mail: stephen.karotkin@weil.com, richard.slack@weil.com, theodore.tsekerides@weil.com, jessica.liou@weil.com, and matthew.goren@weil.com<br><br>KELLER & BENVENUTTI LLP<br>Tobias S. Keller (SBN 151445)<br>Peter J. Benvenutti (SBN 60566)<br>Jane Kim (SBN 298192)<br>650 California Street, Suite 1900<br>San Francisco, CA 94108<br>Telephone: (415) 496-6723<br>Facsimile: (650) 636-9251<br>E-mail: tkeller@kellerbenvenutti.com, pbenvenutti@kellerbenvenutti.com, and jkim@kellerbenvenutti.com |

**OTHER PARTIES TO THE ORDER AND MEMORANDUM DECISION**

| Party | Counsel |
|---|---|
| Canyon Capital Advisors LLC, Citadel Advisors LLC, Davidson Kempner Capital Management LP, Farallon Capital Management, L.L.C., Sculptor Master Fund, Ltd., Sculptor Enhanced Master Fund, Ltd., Sculptor Credit Opportunities Master Fund, Ltd., Sculptor GC Opportunities Master Fund, Ltd., Sculptor SC II, LP, Värde Partners, Inc., on behalf of themselves, and/or certain funds and accounts managed, advised, or sub-advised by them | WILMER CUTLER PICKERING HALE AND DORR LLP<br>Philip D. Anker (admitted *pro hac vice*)<br>Allyson Pierce (Cal. Bar. No. 325060)<br>250 Greenwich Street<br>New York, NY 10007<br>Telephone: (202) 230-8800<br>Facsimile: (202) 230-8888<br>philip.anker@wilmerhale.com<br>allyson.pierce@wilmerhale.com<br><br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>Craig Goldblatt (admitted *pro hac vice*)<br>1875 Pennsylvania Ave.<br>NW Washington DC 20036<br>Telephone: (202) 663-6000<br>Facsimile: (202) 663-6363<br>craig.goldblatt@wilmerhale.com |
| Pacific Investment Management Company LLC, as investment adviser or manager for certain funds and accounts that were Consenting Noteholders | HOGAN LOVELLS US LLP<br>David P. Simonds (Bar No. 214499)<br>Edward J. McNeilly (Bar No. 314588)<br>1999 Avenue of the Stars, Suite 1400<br>Los Angeles, California 90067<br>Telephone: (310) 785-4600<br>Facsimile: (310) 785-4601<br>david.simonds@hoganlovells.com<br>edward.mcneilly@hoganlovells.com<br><br>HOGAN LOVELLS US LLP<br>Michael C. Hefter (admitted *pro hac vice*)<br>Matthew Ducharme (admitted *pro hac vice*)<br>390 Madison Avenue<br>New York, New York 10017<br>Telephone: (212) 918-3000<br>Facsimile: (212) 918-3100<br>michael.hefter@hoganlovells.com<br>matthew.ducharme@hoganlovells.com |

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: November 4, 2020 | **ROPES & GRAY LLP** |
| 3 | | By: */s/ Rocky C. Tsai* |
| 4 | | Rocky C. Tsai (CA Bar No. 221452) |
| 5 | | 3 Embarcadero Center<br>San Francisco, CA 94111<br>Telephone: (415) 315-6369 |
| 6 | | Facsimile: (415) 315-6350 |
| 7 | | -and- |
| 8 | | **ROPES & GRAY LLP**<br>Gregg M. Galardi (admitted *pro hac vice*) |
| 9 | | Keith H. Wofford (admitted *pro hac vice*)<br>Daniel G. Egan (admitted *pro hac vice*) |
| 10 | | 1211 Avenue of the Americas<br>New York, NY 10036 |
| 11 | | Telephone: (212) 596-9000<br>Facsimile: (212) 596-9090 |
| 12 | | -and- |
| 13 | | **ROPES & GRAY LLP** |
| 14 | | Andrew G. Devore (admitted *pro hac vice*)<br>Prudential Tower |
| 15 | | 800 Boylston Street<br>Boston, MA 02199 |
| 16 | | Telephone: (617) 951-7000<br>Facsimile: (617) 951-7050 |
| 17 | | |
| 18 | | *Counsel to Elliott Management Corporation, on behalf of itself and certain funds and accounts managed,* |
| 19 | | *advised, or sub-advised by it* |

# EXHIBIT A

**Order**

**Signed and Filed: October 22, 2020**



_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>      - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>      Reorganized Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and<br>    Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered<br><br>Date:  October 13, 2020<br>Time:  10:30 a.m.<br>       Hearing held via Zoom |

### ORDER DISALLOWING ADMINISTRATIVE EXPENSE CLAIMS OF ELLIOTT MANAGEMENT CORPORATION

For the reasons stated in the Memorandum Decision Disallowing Administrative Expense Claims issued this date, the administrative expense claims asserted by Elliott Management Corporation (Dkts. 8536 and 9032), and opposed by the Reorganized Debtors, are DISALLOWED.

*** END OF ORDER***

-1-

# EXHIBIT B

## Memorandum Decision

Entered on Docket
October 22, 2020
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: October 22, 2020

_____
**DENNIS MONTALI**
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>　　　- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>　　　Reorganized Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and<br>　　Electric Company<br>☒ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered<br><br><br>Date:  October 13, 2020<br>Time:  10:30 a.m.<br>Hearing held via Zoom |

**MEMORANDUM DECISION DISALLOWING ADMINISTRATIVE EXPENSE CLAIMS**

**I.　　INTRODUCTION.**

　　A group of claimants ("the RSA Noteholders") have asserted administrative expense claims arising from the Reorganized Debtors' purported breach of a post-petition restructuring agreement, estimated to be in the aggregate of $250,000,000, against the Reorganized Debtors.  For the reasons explained

-1-

below, the court will sustain the objections of the Reorganized Debtors and disallow the claims.

## II. PARTIES.

Elliott Management Corporation ("Elliott") on its own behalf and on behalf of certain funds and accounts managed, advised, or sub-advised by it, filed the *Motion for (i) Allowance and Payment of an Administrative Expense Claim and (ii) to the Extent Necessary, Reconsideration and Relief from the Confirmation Order Pursuant to Federal Rule of Civil Procedure 60(b)* on July 24, 2020 (Dkt. 8536). This motion and request for allowance and payment of an administrative expense is based on a purported breach by Debtors of a post-petition restructuring agreement that they entered with certain noteholders (the "Noteholder RSA"). Elliott was joined by several similarly situated claimants who filed their *Joinder in the Pending Elliott Motion and Request for Allowance and Payment of Administrative Expense Claim* on August 4, 2020 (Dkt. 8663).[1] Pacific Investment Management Company LLC ("PIMCO") joined them and Elliott when it filed its *Joinder of Pacific Investment Management Company LLC in the Pending Elliott Motion and Request for Allowance and Payment of Administrative Expense Claim* on August 7, 2020 (Dkt. 8704).

---

[1] Joining Elliott at that time were: Canyon Capital Advisors LLC, Citadel Advisors LLC, Davidson Kempner Capital Management LP, Farallon Capital Management, L.L.C., Sculptor Master Fund, Ltd., Sculptor Enhanced Master Fund, Ltd., Sculptor Credit Opportunities Master Fund, Ltd., Sculptor GC Opportunities Master Fund, Ltd., Sculptor SC II, LP, and Värde Partners, Inc., on behalf of themselves, and/or certain funds and accounts managed, advised, or sub-advised by them.

-2-

PG&E Corporation and Pacific Gas and Electric Company ("Reorganized Debtors") filed *Reorganized Debtors' Initial Opposition to Elliott Management Corporation's Motion for Allowance and Payment of Administrative Expense Claim and Reconsideration of Confirmation Order and Related Joinders* as an initial opposition to Elliott's Motion on August 26, 2020 (Dkt. 8864). Elliott and the others filed their respective responses: *Elliott Management Corporation's Response to Reorganized Debtors' Initial Opposition to Motion for (i) Allowance and Payment of an Administrative Expense Claim and (ii) to the Extent Necessary, Reconsideration and Relief from the Confirmation Order Pursuant to Federal Rule of Civil Procedure 60(b)* (Dkt. 9032) and *Additional RSA Noteholders' Response to Reorganized Debtors' Initial Opposition to Elliott Motion for Allowance and Payment of Administrative Expense Claim and Reconsideration of Confirmation Order and Related Joinders* (Dkt. 9034) on September 14. Reorganized Debtors filed their *Reply in Support of Initial Opposition to Elliott Management Corporation's Motion for Allowance and Payment of Administrative Expense Claim and Reconsideration of Confirmation Order and Related Joinders* on September 25, 2020 (Dkt. 9143).

The motion came on for hearing on October 13, 2020. Appearances were noted on the record.

**III. CRITICAL DATES, PLAN PROVISIONS AND PARAGRAPHS OF THE OCP.**

On February 5, 2020, the court approved the Noteholder RSA following extensive negotiations among the Reorganized Debtors

(prior to confirmation of their Plan), certain Shareholders Proponents, and certain holders of funded debt claims.

The court entered its *Order Confirming Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* (the "OCP") on June 20, 2020, confirming the Debtors' and Shareholders Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 (the "Plan") (Dkt. 8053). The Plan became effective as of July 1, 2020 (the "Effective Date").

The critical and determinative provisions relevant to this decision are as follows:

Plan, Article 2.1 **Administrative Expense Claims**

Plan, Article 10.8 **Exculpation**

Plan, Article 10.9(b) ***Releases by Holders of Claims and Interest***

OCP, ¶ 54 **Exculpation**

OCP, ¶ 56 **Releases by Holders of Claims and Interest.**

The Noteholder RSA contains a provision ("the best efforts provision"} that the RSA Noteholders contend the Reorganized Debtors breached, thus establishing a basis for their administrative expense claims. That is found in Section 3(a)(iv) of the Noteholder RSA and obligates the debtors (prior to confirmation and up to the Effective Date), and their attorneys, advisors, and agents to:

> use their best efforts, which shall not require the Debtors to pay any consideration, breach any obligations, or otherwise violate the terms of any Backstop Commitment Letter, to cause various Backstop Parties to transfer (whether by assignment, participation, or otherwise) to

-4-

|   |   |
|---|---|
| 1 | Consenting Noteholders that were parties to the AHC Commitment Letter and any Consenting Noteholders that were offered the opportunity to participate in any subsequent commitment in connection with the Alternative Plan, their rights (subject to Section 7 hereof) (including the right to receive fees thereunder) and obligations under applicable Backstop Commitment Letters relating to up to $2 billion of commitments. |

**IV.  PROCEDURAL STATUS.**

On August 11, 2020, the court entered an *Order Regarding Scheduling with Respect to Elliott Management Corporation Motion for Allowance and Payment of Administrative Expense Claim and Related Joinders* (Dkt. 8746).  There the court established a procedure to determine whether the Reorganized Debtors could prevail on the face of Elliott's motion, as joined by the others, as a matter of law, avoiding the need for discovery or other unnecessary delay.  The Reorganized Debtors' challenge to the administrative expense claims of the RSA Noteholders is a contested matter under Fed. R. Bankr. P. 9014; that rule in turn incorporates relevant provisions of the Federal Rules of Civil Procedure via the Federal Rules of Bankruptcy Procedure.

Accordingly, the court treats the matters that were briefed and argued on October 13, 2020 as the functional equivalent of a motion for a judgment on the pleadings, taking all facts as uncontested for these purposes.  It determines as a matter of law that the Reorganized Debtors are correct and their objections should be sustained.

//

//

## V. DISCUSSION.

### A. Administrative Expense Claims - Allowed or Disallowed

The RSA Noteholders make much of a statement in Section 2.1 of the Plan that no administrative expense claims shall be discharged and contend that their claim for breach of the Noteholder RSA constitutes an administrative expense claim and that Debtors' proposed treatment of the claim conflicts with Articles 10.8 and 10.9 of the Plan and paragraphs 54 and 56 of the OCP.

The court disagrees. Article 1.4 preserves expenses of administration that are **allowable**; the corollary is that administrative expense claims that are not allowable will be discharged and, of course, will not be paid. As stated at the outset, the court is disallowing the administrative expense claims of the RSA Noteholders. The concern about discharge is moot and no further action by the court is necessary as to this issue.

### B. Negotiation and Pursuit of the Noteholder RSA

In the *Memorandum of Decision – Confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* (Dkt. 8001), the court referred to the recent Ninth Circuit *Blixseth* decision[2] in support of the proposition that exculpation provisions permit protection of various parties "who participated in the approval process", pointing out that the exculpation provisions of the Plan cover a multitude of

---

[2] Blixseth v. Credit Suisse (*In re Blixseth*), 961 F.3d 1074 (9th Cir. 2020).

-6-

players, a number of documents and a number of events and activities, consistent with the complexity and difficulties of these cases.  *Blixseth* itself cited *In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000), for the notion that partial exculpation is the norm for acts committed during the process of developing and confirming a chapter 11 plan.  Such provisions do not conflict with 11 U.S.C. § 524(e).

For this reason, it is appropriate and consistent with *Blixseth,* to extend exculpation to parties who participated, negotiated and even "pursued" the Noteholder RSA and countless other documents.  But once the negotiation was completed, the pursuit was over.  Article 10.8 provides the safe harbor for all who accomplished that end, for all who were "involved in the process of developing and confirming [the Plan]".  When the Noteholder RSA was approved by the court on February 5, 2020 (Dkt. 5637) there was nothing further to negotiate or pursue concerning that document.  To use the vernacular, it was a "done deal".

The RSA Noteholders are correct that they had the right to contend at a later date that Reorganized Debtors, prior to or concurrent with confirmation of the Plan, breached the best efforts provision, subject to whatever defenses the Reorganized Debtors may assert.  Thus, the court concludes that the exculpation provisions of Article 10.8, and the parallel provisions of paragraph 54 of the OCP provide no relief for the Reorganized Debtors.

//

**C. Releases by Holders of Claims and Interest**

In contrast to the narrow exculpation provisions dealing with "negotiation and pursuit" of various documents and including a fairly typical carveout for actual fraud or willful misconduct, the release provisions and the parallel paragraph 56 of the OCP are quite a different story. There, there is no carveout for actual fraud or willful misconduct nor any limitation on the extent and breadth of what has been released. The provisions are lengthy, somewhat redundant and very lawyerlike. Below the court highlights certain provisions to emphasize how far reaching they are and how readily they encompass any alleged breach of the best efforts provision:

> "**Released Parties** [including the Reorganized Debtors] are deemed forever **released** and discharged . . . from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and **liabilities whatsoever** . . . based on or relating to, or in any manner arising from, in **whole or in part**, the Debtors', the Fires', the Chapter 11 Cases . . . the subject matter of, or the **transactions** or events giving rise to any Claim . . . the business or contractual arrangements between any Debtor and any Released Parties . . . the **Plan Funding**, the Restructuring . . . before or during the Chapter 11 Cases . . . the **Backstop Commitment** Letters . . . the **Noteholder RSA** . . . the negotiation, formulation, or preparation of . . . the Plan and related agreements . . . , and "other documents (including Plan documents) . . . , the **Noteholder RSA** . . . ."

Based upon these broad provisions the court determines that the RSA Noteholders are bound by the releases they agreed to, thus relieving the Reorganized Debtors of any exposure to claims

-8-

by the RSA Noteholders for breach of the Noteholder RSA and in particular the best efforts provisions.

### D. Post Effective Date Claims

The RSA Noteholders point to the preamble of Article 10.9(b) to maintain that somehow their right to assert the administrative expense claims survives confirmation and the Effective Date, and thus can be asserted, subject to substantive defenses, at this juncture. The court rejects that argument.

Article 10.9(b) begins:

> "*Releases by Holders of Claims and Interests.* As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan . . . ."

The RSA Noteholders argue that the Reorganized Debtors breached the best efforts provision by not even attempting to have any of the Backstop Commitment parties share with them any of the fees and other entitlements up to $2 billion of commitments as provided in the portion of the Noteholder RSA quoted above. The best efforts provision was a continuing obligation for the duration of the RSA Support Period, defined as running from the date of execution of the Noteholder RSA through the Effective Date of the Plan. The provisions of Section 3(a)(4) ended on that Effective Date and thus do not come within the phrase "rights that **remain** in effect **from and after** the Effective Date." The RSA Noteholders had no right to complain about the Reorganized Debtors' lack of best efforts once the obligations to exercise them ceased. The releases

-9-

became effective at the same time that the right to assert best efforts ended.  Whether the RSA Noteholders could have asserted some sort of a breach prior to the Effective Date, and prior to the effectiveness of the broad releases, is pure speculation.  It did not happen.  The after-the-fact assertions of the administrative expense claims were barred as a matter of law by the operation of the releases in Article 10.9(b) and OCP ¶ 56 as of the Effective Date.

### E. Other Issues

Because the court is disallowing the RSA Noteholders' administrative expense claims for the reasons stated above, it need not address the alternative theories of waiver or forfeiture asserted by the Reorganized Debtors.

RSA Noteholders ask for alternative relief from the OCP.  Reorganized Debtors are correct that modification of the Plan could only be attempted in accordance with 11 U.S.C. § 1127(b).  And the RSA Noteholders are correct that Fed. R. Bankr. P. 9024, incorporating Fed. R. Civ. P. 60(b), has been a basis for relief from orders confirming plans.  On this record, however, nothing justifies granting the extraordinary alternative relief they seek.

The record does show that at a lightning fast pace in June, 2020, this complicated case proceeded quickly to meet state-imposed deadlines and presented myriad obstacles for all principal players and the court.  Given that history, the court believes that Elliott and the other concerned RSA Noteholders could have dealt with procedural difficulties such as the

-10-

original confirmation objection deadline or the fact that the confirmation record had been closed by the time of the June 9, 2020, Backstop Motion. They could have sought some form of expedited relief before entry of the OCP were they so included.

All major players are and were represented by some of the most experienced and qualified bankruptcy counsel in the country, and they know how to act quickly and effectively when they need to. While the court will not engage in a theoretical debate about whether one side waited in the weeds or the other side tried to hide the ball, it will decline to excise its discretion by reconsidering the OCP under Fed. R. Bankr. P. 9024 or otherwise.

**VI. CONCLUSION.**

The court is concurrently issuing orders disallowing the administrative expense claims of Elliott, the Additional RSA Noteholders and PIMCO for the reasons stated in this memorandum decision.

*** END OF MEMORANDUM DECISION***