BROWN RUDNICK LLP
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Eric R. Goodman (admitted pro hac vice)
(EGoodman@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone:     (212) 209-4800
Facsimile:     (212) 209-4801

BROWN RUDNICK LLP
Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone:     (949) 752-7100
Facsimile:     (949) 252-1514

*Attorneys for Fire Victim Trustee*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>    **-and-**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>           **Debtors.**<br><br>☐  Affects PG&E Corporation<br>☐  Affects Pacific Gas and Electric Company<br>■  Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**EX PARTE MOTION OF THE FIRE VICTIM TRUSTEE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF AN ORDER AUTHORIZING SERVICE OF SUBPOENAS ON THE SUBROGATION WILDFIRE TRUST, SUBROGATION WILDFIRE CLAIMANTS, AND INSURERS WITH CLAIM FILES**<br><br>[No Hearing Required Per L.B.R 2004-1(a)] |

The Honorable John K. Trotter (Ret.), in his capacity as the Fire Victim Trustee (the "**Trustee**"), by and through his undersigned counsel, hereby submits this *Ex Parte* Motion Pursuant Federal Rule of Bankruptcy Procedure 2004 and Local Bankruptcy Rule 2004-1(a) for Entry of an Order Authorizing the Service of Subpoenas (the "**Motion**") on the Subrogation Wildfire Trust,[1] the holders of Subrogation Wildfire Claims, and any insurer that has claim files and claims-related documents for insured fire victims[2] so that the Trustee can administer, process, settle, resolve, liquidate, satisfy, and pay Fire Victim Claims in accordance with the Plan, the Confirmation Order, the Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures (the "**CRP**"). The Trustee requests that the Court enter an order (*see* **Exhibit A** (proposed order)) authorizing service of subpoenas in the form attached hereto as **Exhibit B**. In support of this relief, the Trustee respectfully states as follows.

## JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2004-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"), Paragraph 18 and Paragraph 78 of the Confirmation Order, Section 6.7 and Section 11.1 of the Plan, and Section 1.6 and Section 8.20 of the Fire Victim Trust Agreement.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated June 19, 2020 [Dkt. No. 8048] (the "**Plan**").

[2] Most of insurers who are in possession, custody or control of the claim files and claims-related documents that the Fire Victim Trust requires are holders of Subrogation Wildfire Claims. Due to claims trading activity that occurred prior to and after PG&E's bankruptcy filing, it is possible that certain insurance companies that possess claim files and claim-related documents are no longer holders of Subrogation Wildfire Claims. Because the Fire Victim Trust requires a complete disclosure of insurance information, the relief sought herein is intended to include all insurance companies that have claim files and claim-related documents regardless of whether they currently hold Subrogation Wildfire Claims. For the avoidance of doubt, the Fire Victim Trust does not anticipate serving subpoenas on holders of Subrogation Wildfire Claims that were never parties to policies of insurance with fire victims and, therefore, do not possess any claim files or claim-related documents.

1

Under Section 11.1(u) of the Plan, the Court retained jurisdiction "[t]o hear and determine disputes arising in connection with or related to the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated herein, or any agreement, instrument, or other document governing or relating to any of the foregoing," "[t]o take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation," "[t]o hear and determine any rights, claims, or Causes of Action held by or accruing to … the Fire Victim Trust pursuant to the Bankruptcy Code or any federal or state statute or legal theory," and "[t]o hear and determine any dispute involving the Wildfire Trusts, including but not limited to the interpretation of the Wildfire Trust Agreements." Plan at § 11.1(i), (k), (t) & (u).[3]

Section 1.6 of the Fire Victim Trust Agreement provides that the "Bankruptcy Court shall have exclusive jurisdiction with respect to any action relating to or arising out of the [Fire Victim] Trust." Section 8.20 of the Fire Victim Trust Agreement provides that the "provisions of the Trust Documents shall be enforced by the [Bankruptcy Court]." This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

On January 29, 2019 (the "**Petition Date**"), PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company ("**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). On February 12, 2019, the United States Trustee

---

[3] Under Section 11.1 of the Plan, the Court also retained "jurisdiction … of all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes: … (c) [t]o ensure that distributions to holders of Allowed Claims are accomplished as provided herein; (d) [t]o consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claims; … (m) [t]o determine such other matters and for such other purposes as may be provided in the Confirmation Order; … (p) [t]o hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; … (r) [t]o determine any other matters or adjudicate any disputes that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any document related to the foregoing … (v) [t]o hear any other matter not inconsistent with the Bankruptcy Code."

2

appointed the Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the United States Trustee appointed an Official Committee of Tort Claimants (the "**TCC**"). Pursuant to the Confirmation Order entered by this Court on June 20, 2020, PG&E's Plan was approved and confirmed under section 1129 of the Bankruptcy Code.

## The Fire Victim Trust Is Established

On the Plan's Effective Date, the Fire Victim Trust was established to administer, process, settle, resolve, liquidate, satisfy, and pay Fire Victim Claims in accordance with Section 6.7(a) of the Plan, Paragraph 18(a) of the Confirmation Order, the Fire Victim Trust Agreement and the CRP. This is one of the stated purposes of the Fire Victim Trust.

Pursuant to Section 6.8(a) of the Plan, the Trustee's powers and duties include those responsibilities "as may be necessary or proper to (i) make distributions to holders of Fire Victim Claims in accordance with the terms of the Plan and the Fire Victim Trust Agreement and (ii) carry out the provisions of the Plan relating to the Fire Victim Trust and the Fire Victim Claims …" Section 6.8(b) of the Plan vests the Trustee with "the authority and power … to … (i) administer, object to or settle Fire Victim Claims" and "(ii) make distributions to holders of Fire Victim Claims in accordance with the terms of the Plan and the Fire Victim Trust Agreement."

Over 80,000 Fire Victim Claims were filed in the Chapter 11 Cases. The Trustee, who is empowered and authorized to administer the Fire Victim Trust under the Plan, the Confirmation Order, the Fire Victim Trust Agreement and the CRP, has begun the process of administering these Fire Victim Claims so that the victims of the wildfires caused by PG&E can receive compensation.

## Claim Determinations Require Reductions for Insurance Recoveries

Under Section I of the CRP, Fire Victim Claims are determined in accordance with California law. California law requires the Trustee to reduce all Fire Victim Claims by insurance payments received by the holders of Fire Victim Claims. *See Garbell v. Conejo Hardwoods, Inc.*, 193 Cal. App. 4th 1563, 122 Cal. Rptr. 3d 856 (Cal. Ct. App. 2011); *Ferraro v. Southern Cal. Gas Co.*, 102 Cal. App. 3d 33, 162 Cal. Rptr. 238 (Cal. Ct. App. 1980), disapproved on other grounds as stated in *Goodman v. Lozano*, 47 Cal. 4th 1327, 104 Cal. Rptr. 3d 219 (Cal. 2010).

3

This insurance reduction is also set forth in Section 6.7(a) of the Plan—"Fire Victim Trust may receive a credit against the Fire Victim Claim of any such holder, its predecessor, successor, or assignee, for insurance coverage amounts as provided in the Fire Victim Trust Agreement"—and Section 2.6 of the Fire Victim Trust Agreement—"amount in which such Covered Fire Victim Claim may be Approved pursuant to the CRP shall be reduced on a dollar-for-dollars basis by all insurance recoveries available to the Fire Victim on account of such damages or losses." Paragraph 18(i) of the Confirmation Order approved "the process for assessing future offsets for available insurance recoveries set forth in Section 2.6 of the Fire Victim Trust Agreement" in all respects.[4]

Under the Court's Bar Date Order [Dkt. No. 2806], subrogation claims (a/k/a Subrogation Wildfire Claims under the Plan) filed in the Debtors' bankruptcy cases include amounts "paid or *reserved* for damages or losses resulting from a wildfire."  *See* Bar Date Order at A-3 (emphasis added).  When the Debtors came before the Court seeking the approval of the Subrogation Claims RSA in September of 2019, the Debtors alleged that $15 billion in payments had been made by insurers to fire victims and that an additional $5.7 billion was held in *reserve*.  *See* Dkt. No. 3992 at 22.  This $5.7 billion reserve reflects payments that have been, should be or will be made by holders Subrogation Wildfire Claims to fire victims.

In order to administer, process, settle, resolve, liquidate, satisfy, and pay Fire Victim Claims in accordance with the Plan, the Confirmation Order, the Fire Victim Trust Agreement and the CRP, the Trustee must know the amount of insurance proceeds paid to the holder of each Fire Victim Claim *and* the amount of insurance proceeds available to the holder of each Fire Victim Claim under his, her or its policy or policies of insurance.

---

[4]  The appeal pending before the District Court (Case No. 4:20-cv-054140-HSG) regarding the application of Section 2.6 of the Fire Victim Trust Agreement will not change the Trustee's need for insurance information.  Adventist Health, Paradise Unified School District, and Comcast (the "**Appellants**") have conceded that their Fire Victim Claims must be reduced under California law by insurance payments actually received by them.  The Appellants have also conceded that a reduction in claim amount for future insurance recoveries that are actually received must also be taken into account so that no fire victim enjoys a double recovery.  The Appellants have argued that the pending appeal should only impact the allowance of *their* claims and not the claims of other fire victims.  This appeal will not impact the Trustee's need for the insurance information requested herein even if the Appellants are somehow successful.

4

## Disclosure of Insurance Information Needed to Comply with the Plan

The Trustee has attempted to obtain insurance information from certain insurers and the Subrogation Wildfire Trust without success. While the Subrogation Wildfire Trust has information regarding amounts paid by insurers to fire victims, it does not have information regarding policy limits or amounts that remain available to fire victims under their insurance policies. The Trustee requires a complete disclosure of insurance information in order to comply with the Plan, the Confirmation Order, the Fire Victim Trust Agreement and the CRP.

## An Existing Protective Order Covers Claim Information Produced to the Trustee

The Trustee agrees that the insurance information provided to the Fire Victim Trust should be kept secured and confidential. On April 3, 2020, the Court entered a *Stipulated Confidentiality and Protective Order and Agreement on the Production of Certain Insurance Information* [Dkt. Nos. 6597 & 6622] (the "**Protective Order**") pursuant to which the Trustee agreed to implement and adhere to confidentiality and protective provisions and procedures for the production of claim files containing information relating to insurance coverage, insurance claims, and insurance payments in connection with the Fire Claims arising from the wildfires (the "**Claim Files**").

Under these procedures, BrownGreer PLC ("**BrownGreer**") established an electronic repository for holding electronic copies of the Claim Files (the "**Review Repository**") for review by (i) the counsel representing the insured claimants (the "**Insureds' Counsel**"), and (ii) insured claimants who are not known to be represented by counsel (the "**Unrepresenteds**"). Protective Order [Dkt. No. 6597] at ¶¶ 1 & 2. Access to the Review Repository is restricted to the Insureds' Counsel and Unrepresenteds so they can review their clients' Claim Files or their own Claim Files, as the case may be, and apply redactions for privileged information, if any. *Id.* at ¶ 3.

Once reviewed, the Claim Files are placed in a second electronic repository (the "**Holding Repository**") where they can be reviewed by the Trustee and professionals working under the Trustee's direction (the "**Trustee Professionals**"). *Id.* at ¶¶ 4 & 5. These procedures ensure that Insureds' Counsel may only access their clients' Claim Files, Unrepresenteds may only access their own Claim Files, and the Trustee and the Trustee Professionals may access the Claim Files after they are reviewed for privileged information.

5

BrownGreer designed the Repositories to include physical and software security measures commonly used in the electronic data management field to protect and secure the Claim Files, restrict access so that only the Insureds' Counsel, Unrepresenteds, the Trustee and the Trustee Professionals may access the Claim Files, and limits access by the Insureds' Counsel and Unrepresenteds to their own or their clients' Claim Files. *Id.* at ¶ 5.

In the Protective Order, the Court found that a "compelling need" exists for the transmission of the Claim Files that "outweighs any concern that may exist" about the disclosure of protected information. *Id.* at ¶ 8; *see* Dkt. No. 6622 at ¶ 1.

A Court-approved system is already in place to review the Claim Files. And, the process was agreed to by the Ad Hoc Group of Subrogation Claim Holders. *See* Dkt. No. 6597 at p. 1.

The **major obstacle** now is obtaining the Claim Files from the parties that currently have possession, custody or control over the insurance information needed to properly administer the Fire Victim Trust and make distributions to fire victims. The Trustee's interest is limited to obtaining and using insurance information for the purpose of complying with the Plan, the Confirmation Order, the Fire Victim Trust Agreement and the CRP.

### Insureds' Right to Insurance Information Under California Law

Insurers do not have the absolute right to refuse to produce the insurance information. Section 2071 of California's Insurance Code provides that an insurer "shall provide" an insured with copies of all non-privileged "claim-related documents" within fifteen (15) calendar days of receiving a request from the insured. Cal. Ins. Code § 2071 (West 2020).

For purpose of this section and this Motion, the term "claim-related documents" means all non-privileged "documents that relate to the evaluation of damages, including, but not limited to, repair and replacement estimates and bids, appraisals, scopes of loss, drawings, plans, reports, third-party findings on the amount of loss, covered damages, and cost of repairs, and all other valuation, measurement, and loss adjustment calculations of the amount of loss, covered damage, and cost of repairs." *Id.* The Trustee needs access to claims-related documents that insurers are required under California law to provide to their insureds upon request.

## Trustee's Lack of Access to Insurance Information

The Trustee came into these Chapter 11 Cases after the Subrogation RSA and the Tort Claimants RSA were negotiated and approved. While this Court has entered a series of Orders that putatively should permit the flow of Claim Files from insurers to the Fire Victim Trust, it is the Trustee's understanding that neither the Creditors Committee nor the TCC obtained substantial or complete access to the claim-related documents that insurers have in their possession, custody or control. Therefore, for the vast majority of fire victims only incomplete information records was handed over to the Fire Victim Trust on the Effective Date.

The Trustee's experience to date is that the insurers and the Wildfire Subrogation Trust are unwilling to voluntarily make claim-related information available to the Fire Victim Trust even though the Trustee needs such information in order to comply with the Plan. The fact that over *seven* months has passed since the entry of the Protective Order, and still, only partial records have been shared, speaks for itself. The Trustee believes that only Court-ordered subpoenas will break-up the intransigence of the insurers as well as the Subrogation Wildfire Trust.

## Fire Victim Trust Cannot Make Distributions to Victims Without Information

The Fire Victim Trust is working diligently on many fronts to position itself to be able to make distributions on account of approved Fire Victim Claims in the next few quarters. The holders of Subrogation Wildfire Claims have already received billions of dollars on account of their claims. As described *supra*, the Trustee is required by the Plan and its other governing documents to incorporate available insurance recoveries in making final determinations on Fire Victim Claims.

The Trustee **cannot** determine whether insurance is available or has been paid on any individual claim, unless it receives and can analyze non-privileged Claim Files for each insured Fire Victim Claim. Therefore, while the holders of Subrogation Wildfire Claims have been paid, the Trustee will **not** be positioned to make distributions to fire victims on account of approved Fire Victim Claims because of such subrogation claim holders' intransigence. Put simply, there will be no meaningful distributions to fire victims on account of approved Fire Victim Claims **unless** the claim-related information in the possession, custody and control of the holders of Subrogation

7

Wildfire Claims, the Subrogation Wildfire Trust and insurance companies is produced in the near future.

The Fire Victim Trust is seeking information that insurers are required to provide to their insureds under California law. The Fire Victim Trust will safeguard the information once it is produced so that it is only disclosed to the applicable fire victim, his or her legal counsel, and Trustee Professionals that need to review such information in order for the Trustee to comply with his obligations under the Plan and the Confirmation Order. The existing Protective Order sets forth procedures for this to occur.

It is clear to the Trustee that efforts tending toward voluntary production will lead only to further delay and that the insurers may never fully produce the information necessary for the Fire Victim Trust to process claims and compensate victims absent the service of legal process. The purpose of this Motion is to grant the Trustee the authority to issue subpoenas to every insurer that has Claim Files and claims-related documents and the Subrogation Wildfire Trust to compel the production of the insurance information. This information is essential so that fire victims can be compensated in accordance with the Plan.

## RELIEF REQUESTED

By this Motion, the Trustee requests entry of an order, pursuant to Bankruptcy Rule 2004:

a. authorizing the Trustee to serve subpoenas in the form attached hereto as **Exhibit B** (the "**Subpoenas**") on the Subrogation Wildfire Trust and any insurer (including present or past holders of Subrogation Wildfire Claims) that has Claim Files and claims-related documents for insured fire victims;

b. providing that, except as otherwise agreed by the Trustee, within fifteen (15) days of service of a Subpoena, the recipient shall be directed to either (i) produce, on a rolling basis, all non-privileged documents responsive to the Subpoena, or (ii) file all objections and/or responses to the Subpoena with this Court.

8

c.      providing that all Claim Files and claims-related documents produced in response to a Subpoena will be processed, treated and held in a manner consistent with the Protective Order.

## BASIS FOR RELIEF REQUESTED

Bankruptcy Rule 2004(a) states that on "motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). The scope of any examination sought under Bankruptcy Rule 2004(b) may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).

The granting of a motion under Bankruptcy Rule 2004 is within the "ultimate discretion" of the Court. *In re Art & Architecture Books of 21st Century*, No. 2:13-BK-14135-RK, 2019 WL 9243053, at *6 (Bankr. C.D. Cal. Dec. 6, 2019) (quoting *In re Int'l Fibercom, Inc.*, 283 B.R. 290, 292-93 (Bankr. D. Ariz. 2002)). Bankruptcy Rule 2004 allows considerable leeway for all manner of so-called "fishing expedition[s]" if there is a reasonable nexus to the debtor and the administration of the debtor's case. *See In re Mastro*, 585 B.R. 587, 597 (B.A.P. 9th Cir. 2018) (quoting *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011)).

Any third party who has a relationship with the debtor may be made subject to a Rule 2004 investigation. *See In re Mastro*, 585 B.R. at 597 (citing *In re Fin. Corp. of Am.*, 119 B.R. 728, 733 (Bankr. C.D. Cal. 1990)). Liquidating trustees tasked with implementing parts of a confirmed chapter 11 plan post-confirmation can seek authority under Rule 2004 to conduct discovery. *See In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 625-28 (Bankr. D. Del. 2016) (holding trustee of trusts established under debtors' confirmed chapter 11 plans entitled to conduct Rule 2004 examination of third parties with knowledge of the circumstances of the debtors' financial collapse).

Here, the Trustee requires a complete disclosure of insurance information in order to comply with the Plan. The Trustee cannot make distributions to fire victims on account of approved Fire Victim Claims unless Claim Files and the claim-related information is produced. The Fire Victim Trust is seeking information that insurers are required to provide to their insureds

9

under California law. Under the Protective Order that is already in place, insurance information once produced will only be disclosed to the applicable fire victim, his or her legal counsel, and Trustee Professionals that need to review such information in order for the Trustee to comply with his obligations under the Plan.

The Trustee will continue to seek voluntary cooperation and consensual discovery from the insurers and the Subrogation Wildfire Trust. But the Trustee is cognizant that not all parties will cooperate with the Trustee's requests for information. The Trustee intends to issue Subpoenas to compel the production of Claim Files and claims-related documents where it is necessary to obtain such information.

The Trustee seeks to established procedures governing the issuance of Subpoenas with notice and an opportunity to object and preserve all substantive rights. The proposed order includes the following procedures: (A) except as otherwise agreed by the Trustee, within fifteen (15) days of service of a Subpoena, the recipient shall be directed to produce, on a rolling basis all non-privileged documents responsive to the Subpoena, or within fifteen (15) days of service of a Subpoena, to file all objections and/or responses to the Subpoena with this Court; and (B) all Claim Files and claims-related documents produced in response to a Subpoena will be processed, treated and held in a manner consistent with the Protective Order.

The proposed fifteen (15) day response period is the same amount of time that an insurer would have to produce claims-related documents upon request from an insured under Section 2071 of California's Insurance Code. Cal. Ins. Code § 2071. Given the amount of information that the Subrogation Wildfire Claim holders likely collected and produced to the Debtors and the Subrogation Wildfire Trust in connection with their claim filings in the Chapter 11 Cases, this time period is plainly reasonable under the circumstances.

## NO PRIOR REQUEST FOR RELIEF

No previous motion for the relief sought herein has been made to this Court under Bankruptcy Rule 2004.

## CONCLUSION

Accordingly, this Motion is properly made on an *ex parte* basis under Bankruptcy Local Rule 2004-1(a) and the Trustee respectfully requests this Court immediately take notice of the Motion and enter an order in substantially the form as **Exhibit A**, granting the relief requested herein, and such other and further relief as may be just.

DATED: November 9, 2020

BROWN RUDNICK LLP

By: /s/JOEL S. MILIBAND

Joel S. Miliband ((SBN 077438)
(JMiliband@brownrudnick.com)
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Eric R. Goodman (admitted *pro hac vice*)
(EGoodman@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel to the Fire Victim Trustee*

11

1

**EXHIBIT A**

2

PROPOSED ORDER

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   BROWN RUDNICK LLP
    David J. Molton (SBN 262075)
2   (DMolton@brownrudnick.com)
    Eric R. Goodman (admitted pro hac vice)
3   (EGoodman@brownrudnick.com)
    Seven Times Square
4   New York, New York 10036
    Telephone:      (212) 209-4800
5   Facsimile:      (212) 209-4801

6   BROWN RUDNICK LLP
    Joel S. Miliband (SBN 077438)
7   (JMiliband@brownrudnick.com)
    2211 Michelson Drive, Seventh Floor
8   Irvine, California 92612
    Telephone:      (949) 752-7100
9   Facsimile:      (949) 252-1514

10  *Attorneys for Fire Victim Trustee*

11               **UNITED STATES BANKRUPTCY COURT**

12               **NORTHERN DISTRICT OF CALIFORNIA**

13                  **SAN FRANCISCO DIVISION**

14

15  **In re:**                              | Bankruptcy Case
                                             | No. 19-30088 (DM)
16  **PG&E CORPORATION**                     |
                                             | Chapter 11
17           **-and-**                       | (Lead Case)
                                             | (Jointly Administered)
18  **PACIFIC GAS AND ELECTRIC**             |
    **COMPANY,**                             |
19                                           | **ORDER GRANTING EX PARTE**
                **Debtors.**                 | **MOTION OF THE FIRE VICTIM**
20                                           | **TRUSTEE PURSUANT TO FEDERAL**
                                             | **RULE OF BANKRUPTCY PROCEDURE**
21  ☐  Affects PG&E Corporation             | **2004 FOR ENTRY OF AN ORDER**
                                             | **AUTHORIZING SERVICE OF**
    ☐  Affects Pacific Gas and Electric Company | **SUBPOENAS ON THE SUBROGATION**
22                                           | **WILDFIRE TRUST, SUBROGATION**
    ■  Affects both Debtors                  | **WILDFIRE CLAIMANTS, AND**
23                                           | **INSURERS WITH CLAIM FILES**

24  *All papers shall be filed in the Lead Case,* | [No Hearing Required Per L.B.R 2004-1(a)]
    *No. 19-30088 (DM)*                      |
25

26

27

28

Upon the Motion, dated November 9, 2019 (the "**Motion**"),[5] of Honorable John K. Trotter (Ret.), in his capacity as the Fire Victim Trustee (the "**Trustee**"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Bankruptcy Rule 2004-1(a), for entry of an order authorizing the service of subpoenas on the Subrogation Wildfire Trust, the holders of Subrogation Wildfire Claims, and any insurer that has Claim Files and claims-related documents for insured fire victims; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California, Paragraph 18 and Paragraph 78 of the Confirmation Order, Section 6.7 and Section 11.1 of the Plan, and Section 1.6 and Section 8.20 of the Fire Victim Trust Agreement; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion; the Court having reviewed the proposed form of Subpoena attached to the Motion as Exhibit B; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted therein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERD THAT**:

1.      The Motion is granted as provided herein.

2.      The Trustee is authorized to serve subpoenas in the form attached to the Motion as **Exhibit B** (the "**Subpoenas**") on the Subrogation Wildfire Trust and any insurer (including present or past holders of Subrogation Wildfire Claims) that has Claim Files and claims-related documents for insured fire victims;

3.      Except as otherwise agreed by the Trustee, within fifteen (15) days of service of a Subpoena, the recipient shall be directed to either (a) produce, on a rolling basis, all non-privileged

---

[5] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

documents responsive to the Subpoena, or (b) file all objections and/or responses to the Subpoena with this Court.

4. All Claim Files and claims-related documents produced in response to a Subpoena will be processed, treated and held in a manner consistent with the Protective Order [Dkt. Nos. 6597 & 6622].

5. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order and any Subpoena issued in accordance with this Order.

6. This Order is without prejudice to the Trustee's right to file further motions seeking additional documents pursuant to Bankruptcy Rule 2004 or any other applicable law.

** END OF ORDER **

3

1

**<u>EXHIBIT B</u>**

2

FORM OF SUBPOENA

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION**<br>**-and-**<br>**PACIFIC GAS AND ELECTRIC COMPANY,** | Chapter 11<br>(Lead Case)<br>(Jointly Administered) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:

_____
*(Name of person to whom this subpoena is directed)*

☐ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: *See* attached **Exhibit 1**.

| Place: | Date and Time: |
|---|---|
| | |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached — Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____ *CLERK OF COURT*

OR

_____     _____
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the PG&E Fire Victim Trust, who issues or requests this subpoena, are:

_____

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Bankruptcy Case
No. 19-30088 (DM)

**PROOF OF SERVICE**
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for (*name of individual and title, if any*) _____

on (*date*) _____.

    ☐   I served the subpoena by delivering a copy to the name person as follows: _____

        _____

        _____on (*date*) _____ ; or

    ☐   I returned the subpoena unexecuted because: _____

        _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$_____.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____.

I declare under penalty of perjury that this information is true.

Date: _____                  _____
                                       Server's signature

                               _____
                                       Printed name and title

                               _____
                                       Server's address

Additional information regarding attempted service, etc.:

2

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**<u>EXHIBIT 1</u>**

**DEFINITIONS**

1.      The term "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the Northern District of California.

2.      The term "**Chapter 11 Cases**" shall mean the chapter 11 cases commenced by PG&E Corporation and Pacific Gas and Electric Company in the Bankruptcy Court, Case No. 19-30088.

3.      The term "**Chapter 11 Plan**" shall mean the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 [Docket No. 8048] confirmed by order of the Bankruptcy Court in the Chapter 11 Cases.

4.      The term "**Claim Files**" shall mean claim files containing information relating to insurance coverage, policy limits, insurance claims, reserves, and insurance payments, including, but not limited to, insurance policies, statements of loss, and policy declarations.

5.      The term "**Claim-Related Documents**" means all documents that relate to the evaluation of damages, including, but not limited to, repair and replacement estimates and bids, appraisals, scopes of loss, drawings, plans, reports, third-party findings on the amount of loss, covered damages, and cost of repairs, and all other valuation, measurement, and loss adjustment calculations of the amount of loss, covered damage, and cost of repairs.

6.      The term "**Communications**" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

7.      The term "**Documents**" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda,

transcripts, tapes, or other voice recordings, and all other documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. When examples of categories or types of Documents are given in a particular Request by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (i.e., to be understood as "including without limitation") and in no way limits or narrows the scope of any Request. "Documents" always includes Communications, whether so stated in a particular Request or not.

8.      The term "**Fire Victim Trust**" shall have the same meaning as that term is used in the Chapter 11 Plan.

9.      The term "**Fires**" shall have the same meaning as that term is used in the Chapter 11 Plan.

10.     The term "**Insured Fire Victim**" shall mean a person or entity covered by insurance who suffered a loss arising from one of the Fires and filed a Proof of Claim in the Chapter 11 Cases on or before December 31, 2019.

11.     The term "**Subrogation Wildfire Claim**" shall have the same meaning as that term is used in the Chapter 11 Plan.

2

## INSTRUCTIONS

1. These Requests are continuing in nature, so as to require supplemental responses and productions if further documents are identified, or information is obtained, between the time answers are served and the time the Fire Victim Trust is terminated.

2. Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, or web-based email systems such as Gmail, Yahoo, etc.

3. You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form. Without limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

4. Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

5. Documents not otherwise responsive to these Requests should be produced: (i) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are

---

3

called for by these Requests; (ii) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests; or (iii) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

6. Documents attached to each other should not be separated; separate Documents should not be attached to each other.

7. Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

8. If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request or part thereof, for each such Document, You must:

        a. Identify the type, title and subject matter of the Document;

        b. State the place, date, and manner of preparation of the Document;

        c. Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

        d. Identify the legal privilege(s) and the factual basis for the claim.

9. Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine. In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 8 above must be provided.

10. To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred to others; and/or (iv) has been otherwise disposed of. In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document. Documents prepared prior to, but which relate or refer to, the time period covered by these Requests are to be identified and produced.

4

11. Provide a privilege log relating to Your responses to each of these Requests which You are withholding on the basis of privilege. The privilege log must list the Document or information withheld and the legal basis for withholding that information.

12. Unless otherwise specified, the time period covered by these Requests for Production is from September 9, 2015 to the present.

**MANNER OF PRODUCTION**

1. All Documents produced to the Fire Victim Trust shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2. Database Load Files and Production Media Structure: Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images. Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3. Electronic Documents and Data, Generally: Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and

5

searchable text as to allow the Fire Victim Trust, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4. <u>Emails and Attachments, and Other Email Account-Related Documents</u>: All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Fire Victim Trust.

5. <u>Documents and Data Created or Stored in or by Structured Electronic Databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Fire Victim Trust to reasonably manage and import those Documents into a useable, coherent database. Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

    a. XML format file(s);

    b. Microsoft SQL database(s);

    c. Access database(s); and/or

    d. fixed or variable length ASCII delimited files.

6. <u>Spreadsheets, Multimedia, and Non-Standard File Types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that

6

do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7. <u>"Other" Electronic Documents</u>: All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8. <u>Paper Documents</u>: Documents originally created or stored on paper shall be produced in tiff format. Relationships between Documents shall be identified within the Relativity .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## **<u>DOCUMENT REQUESTS</u>**

**REQUEST NUMBER 1**:

Claim Files for all Insured Fire Victims.


**REQUEST NUMBER 2**:

Claim-Related Documents for all Insured Fire Victims.


**REQUEST NUMBER 3**:

Documents that record, reflect, or show payments made to Insured Fire Victims.

**REQUEST NUMBER 4**:

Documents that record, reflect, or show reserves for future payments and policy limits for Insured Fire Victims.

Case: 19-30088    Doc# 9483    Filed: 11/09/20    Entered: 11/09/20 09:21:05    Page 27 of 27