PILLSBURY WINTHROP SHAW PITTMAN LLP
PHILIP S. WARDEN (54572)
philip.warden@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:    415.983.1000
Facsimile:     415.983.1200

Counsel to Chevron Master Pension Trust
and Chevron UK Pension Plan

IN THE UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:<br><br>**PG&E, CORPORATION**<br><br>and<br><br>**PACIFIC GAS AND ELECTRIC COMPANY**,<br><br>Debtors.<br><br>____  Affects PG&E Corporation<br>____  Affects Pacific Gas and Electric Company<br>_X_   Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | No. 19-30088(DM)<br><br>CHAPTER 11<br><br>Adversary Proc No. Lead Case (Jointly Administered<br><br>**CHEVRON'S RESPONSE TO THE REORGANIZED DEBTORS' OBJECTION TO SECURITIES LEAD PLAINTIFF'S RENEWED MOTION TO APPLY BANKRUPTCY RULE 7023 AND CERTIFY A LIMITED CLASS**<br><br>Date:     November 17, 2020<br>Time:    11:00 a.m. (PT)<br>Before:   Video Conference<br><br>**Related Docket No.:** 9152 |

1

Chevron Master Pension Trust ("**CMPT**") and Chevron UK Pension Plan ("**CUPP**" and together with CMPT, "**Chevron**"), with claims totaling approximately $18 million dollars, through undersigned counsel, submit this response (the "**Response**") *to the Reorganized Debtors' Objection to Securities Lead Plaintiff's Memorandum of Points and Authorities in Support of Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class [Dkt. No. 9152] (the "Renewed 7023 Motion"), filed by the Public Employees Retirement Association of New Mexico ("PERA")* (the "**Reorganized Debtors' Objection**") and respectfully represents as follows:

## BACKGROUND

On January 29, 2019 (the "Petition Date"), PG&E Corporation ("**HoldCo**") and Pacific Gas and Electric Company ("**Utility**", and together with HoldCo, the "**Reorganized Debtors**") commenced voluntary cases for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California.

Both CUPP and CMPT are prepetition holders of the Reorganized Debtors' publicly traded equity securities or debt securities. On April 16, 2020, CUPP and CMPT filed Rescission Proofs of Claim on account of those holdings at Claim Nos. 101,365 and 101,416 respectively. On May 14, 2020, CUPP and CMPT filed amended Recission Proofs of Claim at Claim Nos. 104,534 and 104,490 respectively (as amended, the "**Chevron Rescission Claims**").

On December 9, 2019, the Public Employees Retirement Association of New Mexico ("**PERA**") filed its Motion to Apply Bank. Rule 7023 to Class Proof of Claim (the "**Initial 7023 Motion**") [Docket No. 5042]. PERA is the court-appointed lead plaintiff in the securities class action captioned as In re PG&E Corporation Securities Litigation, Case No. 18-03509 (the "**Securities Litigation**") pending in the U.S. District Court for the Northern District of California on behalf of itself and the proposed class it represents in the Securities Litigation (the "**Class**"). On February 24, 2020, this Court denied the Initial 7023 Motion, but extended the bar date for individual members of the Class.

On September 1, 2020, the Reorganized Debtors filed a Motion to Approve Securities ADR and Related Procedures for Resolving Subordinated Securities Claims (the "**ADR Motion**") [Dkt No. 8964]. The ADR Motion has been briefed and the hearing on that motion is scheduled for the same

time as hearing on the Renewed 7023 Motion.[1]

On September 28, 2020, PERA filed the Renewed 7023 Motion seeking distinct relief from the Initial 7023 Motion to provide an alternative to the ADR Motion and a more efficient and fair means for handling rescission claims against the Reorganized Debtors' estates. Because Chevron has an interest in ensuring that rescission claims are resolved in the most efficient and fair means, it files this response to the Renewed 7023 Motion to the extent that it affects the rescission claims administration process proposed in the ADR Motion. The chart attached as **Exhibit A** lists the goals that any rescission claim resolution process should achieve, summarizes at a high level the Reorganized Debtors' proposed procedures and PERA's proposed procedures, and includes a brief explanation of why Chevron's prefers PERA's proposal to resolve rescission claims.

## RESPONSE

The Reorganized Debtors have proposed, through the ADR Motion, a process to resolve approximately 7,000 securities claims that would not only be exceedingly expensive to implement, but also highlights the disparity in resources between the Reorganized Debtors on one side and individual security holders on the other. The Renewed 7023 Motion relates directly to the ADR Motion because the former motion, if granted, will help ameliorate Chevron's concerns with the latter. For these reasons, the Renewed 7023 Motion is for all practical purposes not tied to the appeal of the Initial 7023 Motion, as it was filed in the context of objecting to the proposed claims resolution procedure laid out in the ADR Motion. Those procedures, if approved by the Court, will moot the Initial 7023 Motion appeal. The Court's order denying the Initial 7023 Motion was tentative and precatory; and done at a time when the Court's major focus was plan confirmation and before the Court was presented with the ADR Motion.

If the Court grants the Renewed 7023 Motion, the issues and concerns Chevron raised in its response to the ADR Motion would be resolved. Dozens or hundreds of separate alternative dispute

---

[1] The Reorganized Debtors filed a reply in further support of *Reorganized Debtors' Motion to Approve Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* [Dkt. No. 9378] (the "**ADR Motion Reply**") that raises issues relevant to the Renewed 7023 Motion and the Reorganized Debtors' Objection since both motions turn on how rescission claims will be liquidated.

3

resolution proceedings can be avoided and the expenses for each claimant reduced if the Renewed 7023 Motion is granted. Furthermore, contrary to the Reorganized Debtors' claims, the information the Reorganized Debtors indicate they need to evaluate and resolve claims can be gathered through coordination with one party more efficiently and with less cost. Moreover, the procedures impose an unreasonable burden designed to ensure claimants will not be able to seek a court resolution due to the expense and time that the proposed procedures will take.[2] Though non-binding mediation does not decide a case unless the parties agree, the reality is that the mediators have great influence over how claims are resolved, including here for example the ability to decide when mediation has reached an impasse and the ability to then have an ex parte communication with the Court. Because most litigated matters resolve without going to trial, it is simply not true that resolution of the Securities claims through class proceedings will necessarily result in a trial. While it certainly benefits the Reorganized Debtors to resolve claims informally because no one claimant is incentivized to seek a court review, the results of which could positively affect the value of unliquidated claims, it does not benefit the claimants. Resolving the claims at issue here through a single class action will avoid these concerns.[3]

Chevron respectfully suggests, contrary to the Reorganized Debtors' arguments otherwise, that if a particular claimant does not provide information sufficient to support a particular claim, that information can be provide more easily through coordination with class counsel without forcing parties into mandatory mediation; and the proposed settlement matrix that the proposed national reputation 34 Act mediator will negotiate will provide an efficient, even-handed and consistent framework for

---

[2] Chevron acknowledges that procedures to resolve claims using mediation procedures have been approved by other Bankruptcy Courts, though those procedures are identical to those proposed by the Reorganized Debtors here, nor are the claims at issue identical. See *Declaration of Richard W. Slack In Support of the Reorganized Debtors' Motion to Approve Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* [Dkt. No. 8966]. That being said, the procedures approved by other Bankruptcy Courts if they were to be considered by this Court, do not resolve Chevron's concerns on the facts presented here, Chevron prefers the procedures proposed by PERA and submits that those procedures if applied here would result in a more efficient and inexpensive claims resolution process.

[3] Chevron does not take issue with the Reorganized Debtors using the omnibus objection process with regard to any procedural objection that might apply to rescission claimants (for example, any objections premised on a particular claim not being filed by a claims bar date), but rather objects to the overall plan to liquidate rescission claims as the Reorganized Debtors propose. *See* ADR Motion Reply at p. 21,

4

resolving the claims—in a way that will not cause huge disparities in the net to similarly situated claimants.

Granting the Renewed 7023 Motion will not force claimants to accept a particular resolution. Claimants, as in any other class proceeding, could choose to opt out of a class resolution. But individual claimants who wish to pursue their claims can do so more efficiently as part of the proposed class without paying up-front costs. Class counsel is best positioned to make legal and factual arguments that apply across the class, and to gather and organize the facts and history needed to seek a fair resolution. Class procedures are commonly used in cases like this to ensure that individual claimants can have their claims proceed without up-front fees and costs. *See* 1 *Newberg on Class Actions,* § 1:9 (5th ed.) ("By resolving common legal and factual issues in a single adjudication, class actions utilize judicial resources more efficiently than piecemeal individual litigation. Put simply, it is less expensive and time consuming to process one class action then many individual actions.") (citations omitted). The possibility of inconsistent rulings, flagged as problematic by the Reorganized Debtors, exists under the proposed ADR procedures also. In fact, that possibility is heightened here where some claimants have claims sufficiently large that that they could choose to pursue individual claims in Court if those claims are not settled under the Reorganized Debtors' proposed procedures. *Id*. ("Class actions are particularly efficient when many similarly situated individuals have claims sufficiently large that they would each pursue their own individual cases."). In any event, the Reorganized Debtors' stated concerns about inconsistent rulings highlight that the procedures are designed to indirectly affect the District Court litigation by reducing the potential class members.

The Renewed 7023 Motion would resolve Chevron's concerns with the proposed ADR procedures that establish a panel of mediators to be paid by the Reorganized Debtors who select the panel of available mediators and compensates them all. That creates a conflict of interest in as much as the employers are the Reorganized Debtors: a mediator, knowing that more engagements could be available, could shape his or her mediation approach to secure more engagements going forward from the Debtors who selected him and are paying him. Under the proposed ADR Motion procedures (*See* Proposed Order, Ex. A-2, § IV.E.) the mediator decides when mediation is at an impasse and can have ex parte communications with the Court.

5

Case: 19-30088   Doc# 9487   Filed: 11/09/20   Entered: 11/09/20 18:39:25   Page 5 of
8
Case No. 19-30088(DM)
4852-7294-2289.v2
4852-7294-2289.v2

Finally, the Renewed 7023 Motion, if granted by the Court, will eliminate two other issues Chevron notes regarding the procedures proposed in the ADR Motion. First, if the procedures are imposed by court order, no one can later complain that the pressure the procedures imposed on any claimant are not fair. And second, the prospect of having to either retain counsel or go it alone creates the incentive to settle even claims that might have merit.

## CONCLUSION

WHEREFORE, Chevron respectfully requests that this Court grant the Renewed 7023 Motion because it will facilitate resolution of rescission claims in the most efficient and fair means. Chevron continues to reserve all rights and requests that the Court order such other relief as is just and necessary.

Dated: November 9, 2020

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: /s/ Philip S. Warden
PHILIP S. WARDEN

Counsel to Chevron Master Pension Trust and Chevron UK Pension Plan

6

## Exhibit A

7000+ Disputed claims:

What are our goals? What can we all agree to as common goals? Certainly, no one can dispute that this court of equity requires that claimants collectively seek:

1. Fairness

2. Equitable and even handed, uniform treatment as to each claimant

3. A resolution mechanism that is not unnecessarily expensive

4. Prompt and amicable resolution, with minimal involvement of the Court

5. A level playing field—so it is a fair contest

| Debtors propose | Claimants propose |
|---|---|
| Mediation process for all 7000; presumably, thousands of separate mediations | a Single 34 Act mediator, with a national reputation |
| Discovery: debtor wants each claimant to provide a great deal of date; collected manually | a common data base—with individual additional input as needed |
| Individual, mandatory mediations: all chosen and paid for by the debtors; no requirement that the mediators have any 34-act experience | a single mediation; preceded by a negotiated matrix; so claims can be uniformly slotted into various categories, and so any financial incentives for a panel mediator to curry favor with the Reorganized Debtors to obtain more work are eliminated |
| Debtors have no discernable budget; have already spent material sums on lawyers and economists with expertise in the field | Claimants do not have common fund from which to seek compensation; claimants have no experts and are not permitted to pool their advisor's talent; the costs of pursuing mandatory mediation creates an uneven playing field with disincentives for claimants with valid claims to spend the funds needed to have their day in court |
| Reorganized Debtors propose to allow Claimants to pursue claims in court only after mandatory mediation is completed | Claimants can opt out of the proposed class and pursue claims on their own if they choose to incur the costs of doing so; Claimants who choose not to opt out will be able to assert all |

7

| | |
|---|---|
| | valid defenses, even though their individual claims might more modest and they might otherwise choose to settle their claims without pressing valid defenses |
| Reorganized Debtors propose to have claims disallowed if the Claimants fail to provide information requested by the Reorganized Debtors | Claimants that might otherwise ignore notices from the Reorganized Debtors and choose not to participate in the required process based on the costs of proceedings or otherwise may agree instead to be part of a class that will allow them to participate in the claims adjudication process without incurring expenses and with the assistance of experienced counsel |

Case: 19-30088    Doc# 9487    Filed: 11/09/20    Entered: 11/09/20 18:39:25    Page 8 of 8

4852-7294-2289.v2
4852-7294-2289.v2