1  **LABATON SUCHAROW LLP**          **LOWENSTEIN SANDLER LLP**
   Thomas A. Dubbs                   Michael S. Etkin (*pro hac vice*)
2  Carol C. Villegas                 Andrew Behlmann (*pro hac vice*)
   Jeffrey A. Dubbin (SBN 287199)    Scott Cargill
3  140 Broadway                      Colleen Maker
   New York, New York 10005          One Lowenstein Drive
4                                    Roseland, New Jersey 07068

5  *Lead Counsel to Lead Plaintiff and the Class*   *Special Bankruptcy Counsel to Lead Plaintiff and the Class*

6
   **MICHELSON LAW GROUP**
7  Randy Michelson (SBN 114095)
   220 Montgomery Street, Suite 2100
8  San Francisco, California 94104

9  *Local Bankruptcy Counsel to Lead Plaintiff*     (*additional counsel on Exhibit A*)
   *and the Class*

10
                    **UNITED STATES BANKRUPTCY COURT**
11                  **NORTHERN DISTRICT OF CALIFORNIA**
                    **SAN FRANCISCO DIVISION**
12
   In re:                                    |  Case No. 19-30088 (DM) (Lead Case)
13                                           |  Chapter 11
   PG&E CORPORATION                          |  (Jointly Administered)
14
        - and –                             |
15                                           |  **SECURITIES LEAD PLAINTIFF'S REPLY IN**
   PACIFIC GAS AND ELECTRIC                  |  **FURTHER SUPPORT OF MOTION TO**
16 COMPANY,                                  |  **APPLY BANKRUPTCY RULE 7023 AND**
                                             |  **CERTIFY A LIMITED CLASS**
17                          Debtors.         |
                                             |  Date:      November 17, 2020
18 ☒ Affects Both Debtors                    |  Time:      11:00 a.m. (PT)
   ☐ Affects PG&E Corporation                |  Place:     Video conference
19 ☐ Affects Pacific Gas and Electric Company |
                                             |  **Related Docket No.:** 9152
20                                           |  **Objection Deadline:** October 29, 2020

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................................1

ARGUMENT ..............................................................................................................................3

I. RULE 23(b)(1) IS A PERFECT MATCH FOR THIS CASE ........................................3

    A. Rule 23(b)(1) is Mandatory for Certification, But Permits Opt-Outs..........................3

    B. There Is No Bar to Certifying a Class of Securities Claims Under Rule
    23(b)(1)(A) Because the Confirmed Plan Provides A Non-Monetary Remedy ...........5

II. THE SECURITIES CLAIMS SATISFY ALL FOUR RULE 23(a) FACTORS ..................6

A. *Typicality*: The Suggestion That Typicality Is Not Met Because PERA Did Not
Purchase Every Single Type of Debtors' Securities Is Meritless................................7

    1. PERA's Claims and Injuries are Typical of the Proposed Class ..................................7

    2. The Proposed Damages Methods Satisfy Typicality .....................................................8

        (a) The Equity Securities Damages Model is Sufficient ............................................8

        (b) The Debt Securities Model Satisfies Typicality ..................................................9

B. *Adequacy*: Securities Lead Plaintiff And Its Counsel Will Fairly And Adequately
Protect the Interests of the Proposed Class ...............................................................9

    1. Securities Lead Plaintiff and its Counsel Have No Conflicts of Interest....................10

        (a) Reorganized Debtors Raise Only Hypothetical Conflicts .................................10

        (b) Insurance Coverage Is Well-Known and Creates No Conflict ...........................11

        (c) Reorganized Debtors' Solvency Makes Conflicts Even Less Likely .................11

        (d) Speculative Conflicts Are Based on A Flawed Opt-Out View...........................12

    2. PERA and Counsel Will Act Vigorously on Behalf of the Class ...............................12

III. TWO OF THE RULE 23(b) SCENARIOS ARE SATISFIED HERE – EITHER OF
WHICH MERITS CLASS CERTIFICATION ............................................................13

    A. Rule 23(b)(1)(A) Certification is Necessary to Avoid Allowing Reorganized
    Debtors to Get Away With "Incompatible Standards of Conduct" ...........................13

        1. Rule 23(b)(1)(A) Prevents Reorganized Debtors from Invoking
        Equitable Rescission Then Acting Unequally on the Class-Wide Issue of
        Damages...........................................................................................................14

2. Rule 23(b)(1)(A) Prevents Reorganized Debtors from Invoking Rescission Then Using Omnibus Objections to Give Relief to Some But Not Others ............................................................................15

B. Because the Plan Requires Class 10A-II Claimants to Receive Stock, Rule 23(b)(1)(B) Is Satisfied Independent of Whether the Fund is "Limited" ....................15

C. Under *Ortiz*, Rule 23(b)(1)(B) Mandates Certification Because Reorganized Debtors Have a Classic "Limited Fund" of Shares for Distribution to Holders of Allowed Class 10A-II Claims ............................................................17

1. PERA Did Not Make Any "Mathematical" or Other Error in Proving that There Is a "Limited Fund" of Shares to Pay Class 10A-II Claims ............17

2. Reorganized Debtors Do Not Disprove That There Is a Limited Fund ............18

3. The Theoretical Option that HoldCo Could Create More Shares Is Meaningless ............................................................................19

D. NO FURTHER DISCOVERY IS NECESSARY ....................................................20

IV. THIS COURT SHOULD APPLY RULE 7023 TO THE SECURITIES CLAIMS ............22

A. Res Judicata and Law of the Case Are Not Applicable Here ......................................22

1. Legal Standard Not Disputed ............................................................23

2. No Preclusion Doctrine Bars Deciding New Issues in the First Instance ..........23

(a) Law of the Case Does Not Apply ..........................................23

(b) Issue Preclusion Does Not Apply, Either ..........................................24

(c) Reorganized Debtors Also Fail to Establish the First Element of Issue Preclusion ............................................................24

B. Because the Issues Are New, the Court Has Jurisdiction ............................................25

C. The Court Should Use Its Discretion to Apply Rule 7023 to the Securities Claims ............................................................................26

1. The Analyses for Musicland Factors One and Two Have Not Changed ..........26

2. The Analysis for Musicland Factor Three Has Changed Dramatically ............27

CONCLUSION ............................................................................28

# **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Adair v. England*,
   209 F.R.D. 5 (D.D.C. 2002)..................................................................................4

*Amgen v. Conn. Ret. Plans and Tr. Funds*,
   568 U.S. 455 (2013)...........................................................................................21

*Ansel Communs., Inc. v. Novell, Inc.*,
   No. 97-21088, 1999 WL 33298162 (N.D. Cal. Mar. 23, 1999) .............................25

*Barnes v. AT&T Pen. Ben. Plan*,
   270 F.R.D. 488 (N.D. Cal. 2010)..........................................................................7

*In re BearingPoint, Inc. Sec. Litig*.,
   232 F.R.D. 534 (E.D. Va. 2006) .........................................................................11

*Bratcher v. Nat'l Standard Life Ins. Co.*,
   365 F.3d 408 (5th Cir. 2004) ................................................................................4

*Carpenters Pension Tr. Fund for N. Cal. v. Allstate Corp.*,
   966 F.3d 595 (7th Cir. 2020) ..............................................................................22

*Casa Orlando Apartments v. Fed. Nat. Mortg. Ass'n*,
   624 F.3d 185 (5th Cir.2010) ................................................................................6

*Conkwright v. A C & S Inc.*,
   106 F.3d 407 (9th Cir. 1996) ..............................................................................23

*Corley v. Entergy Corp.*,
   222 F.R.D. 316 (E.D. Tex. 2004).........................................................................6

*County of Suffolk v. Long Island Lighting Co.*,
   907 F.2d 1295 (2d Cir. 1990)...............................................................................4

*Crawford v. Honig*,
   37 F.3d 485 (9th Cir. 1994) .................................................................................4

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*,
   890 F.2d 165 (9th Cir. 1989) ................................................................................5

*Ellis v. Costco Wholesale*,
   657 F.3d 970 (9th Cir. 2011) ..........................................................................7, 10

*Eubanks v. Billington*,
110 F.3d 87 (D.C.Cir. 1997) .................................................................................4

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014).................................................................................22

*HRC-Hainan Holding Co., LLC v. Yihan Hu*,
No. 19-80277, 2020 WL 1274877 (N.D. Cal. Mar. 17, 2020) ................................24

*J.P. Morgan & Co., v. Super. Ct.*,
113 Cal. App. 4th 195 (2003) ...............................................................10

*Klein v. TD Ameritrade Holding Corp.*,
No. 14-396, 2016 WL 7156476 (D. Neb. Dec. 7, 2016), *aff'd* 2017 WL
1316944 (D. Neb. Apr. 7, 2017) .................................................................21

*Laflamme v. Carpenters Local #370 Pension Plan*,
212 F.R.D. 448 (N.D.N.Y. 2003).................................................................4

*Marrese v. AAOS*,
470 U.S. 373 (1985).................................................................................25

*McMahan & Co. v. Wherehouse Ent.*,
65 F.3d 1044 (2d Cir. 1995).................................................................15

*McQuillion v. Schwarzenegger*,
369 F.3d 1091 (9th Cir. 2004) .................................................................25

*McReynolds v. Richards-Cantave*,
588 F.3d 790 (2d Cir. 2009).................................................................4

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015) .................................................................7, 8

*Moyle v. Liberty Mut. Ret. Ben. Plan*,
823 F.3d 948 (9th Cir. 2016) .................................................................*passim*

*In re NCAA Student-Athlete Name & Likeness Litig.*,
No 09-1967, 2010 WL 5644656 (N.D. Cal. Dec. 17, 2010)....................................25

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .................................................................10

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999).................................................................................*passim*

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .................................................................7

*Pizana v. Sanmedica Int'l*,
    No. 18-644, 2020 WL 6075846 (E.D. Cal. Oct. 15, 2020)......................................21

*Prestige Ltd. P'ship v. E. Bay Car Wash Partners* (*In re Prestige Ltd. P'ship*),
    223 B.R. 203 (Bankr. N.D. Cal. 1998) ..................................................................25

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ...............................................................................8

*Schuman v. The Connaught Grp.*,
    491 B.R. 88 (Bankr. S.D.N.Y. 2013) ...................................................................26

*In re Sequoia Senior Sols., Inc.*,
    No. 16-11036 (Bankr. N.D. Cal. Dec. 26, 2017) Dkt. No. 177 ........................25, 27

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..........................................................................10, 12

*U.S. v. Marguet-Pillado*,
    648 F.3d 1001 (9th Cir. 2011) .............................................................................24

*In re Volkswagen "Clean Diesel" Litig.*,
    No. MDL 2672, 2017 WL 3058563 (N.D. Cal. July 19, 2017).............................8

*In re Wash. Mut., Inc.*,
    No. 08-1919, 2010 WL 4272567 (W.D. Wash. Oct. 12, 2010)........................9, 15

*Williams v. Empire Funding Corp.*,
    183 F.R.D. 428 (E.D. Pa. 1998).........................................................................11

*Wilson v. Belleque*,
    554 F.3d 816 (9th Cir. 2009) ..............................................................................24

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ..........................................................................6, 13

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)........................................................................................10

15 U.S.C. § 77k(e)........................................................................................................9

Cal. Corp. Code § 900(a) ..........................................................................................20

Cal. Corp. Code § 902(a) ..........................................................................................20

**Other Authorities**

Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1772 (3d ed.)................................13

Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4417 (3d ed.)............................................24, 25

39 F.R.D. 69 (1966)...........................................................................................................4

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
and Procedure § 1773 Clause (1)(A) (2d ed.1986) ..............................................6, 14

Fed. R. Bankr. P. 3007(e) .............................................................................................14

Fed. R. Bankr. P. 7023................................................................................................2, 24

Fed. R. Bankr. P. 9014..................................................................................................24

Fed. R. Civ. P. 23 ................................................................................................... *passim*

Fed. R. Civ. P. 23
   (a) .......................................................................................6, 7, 20, 22
   (a)(1) & (2).....................................................................................7
   (a)(3) .............................................................................................7
   (a)(4) ...........................................................................................10
   (a) and (b)..........................................................................1, 3, 21
   (b)...............................................................................................6, 13
   (b)(1) ................................................................................... *passim*
   (b)(1) ...........................................................................................2
   (b)(1)(A).............................................................................. *passim*
   (b)(1)(A) and (B)..........................................................................1
   (b)(1)(A) and (b)(1)(B)................................................................6
   (b)(1)(B) .............................................................................. *passim*
   (b)(3) .................................................................................. *passim*
   (c)(1) ...........................................................................................21
   (c)(2)(A).......................................................................................5
   (c)(2)(B)(v) ...................................................................................3
   (c)(4) ......................................................................................2, 15
   (c)(5) .............................................................................................9
   (d) .................................................................................................4
   (d)(1) .............................................................................................4
   (g)(2) ...........................................................................................13

Fed. R. Civ. P. 23(d) adv. cmte. note ..............................................................................4

Fed. R. Evid. 608 ..........................................................................................................22

Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the
Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356 (1967). ......................16

*Manual for Complex Litigation, Fourth*, § 21.14 .........................................................21

2 *Newberg on Class Actions* § 4:4 (5th ed.)....................................................................4

3 *Newberg on Class Actions* § 7:17 (5th ed.)................................................................21

7 *Newberg on Class Actions* § 22:74 (5th ed.)............................................................10

Securities Lead Plaintiff,[1] on behalf of itself and the proposed Class it represents, together with York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund, hereby submit this Reply (i) in support of their *Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class* [Dkt. No. 9152] (the "**Motion**") and (ii) in response to the objections to the Motion filed by Reorganized Debtors (the "**Reorganized Debtors' Objection**" or "**RDO**") [Dkt. No. 9375] and Baupost Group Securities, L.L.C ("**Baupost**" and the "**Baupost Objection**") [Dkt. No. 9374] (together, the "**Objections**") and declarations submitted therewith.

In support of this Reply, Securities Lead Plaintiff submits: (i) the *Declaration Of Adam D. Walter On Behalf Of A.B. Data Ltd. in Support of Securities Lead Plaintiff's Reply In Further Support Of Motion To Apply Bankruptcy Rule 7023* (the "**Walter Declaration**") filed concurrently herewith; and (ii) the *Declaration of Andrew D. Bradt Concerning Securities Lead Plaintiff's Reply In Further Support Of Motion To Apply Bankruptcy Rule 7023* (the "**Bradt Declaration**") filed concurrently herewith.

## PRELIMINARY STATEMENT

With more than 7,000 Securities Claims pending before this Court, the parties agree that some ADR procedure will be necessary. Where they fundamentally disagree is whether the process should address common issues on a collective basis upfront, or be separated individually and kept uncertain – and thus held as leverage – during any ADR negotiations.

The flexibility of Rule 23 empowers the Court to implement a collective procedure for addressing these claims and issues fairly and efficiently. Without need for further discovery, the Court can certify an appropriate Rule 23(b)(1)(A) or 23(b)(1)(B) class, or both. Unlike the fact-intensive Rule 23(b)(3) classes typically used for securities class actions, the more narrowly-tailored Rule 23(b)(1)(A) and (B) measures are particularly suitable for the 7,000 Securities Claims. The Court is not precluded from applying Rule 7023, and opt-outs ***are permitted***.

After finding the Rule 23(a) and (b) factors met here – many of which are uncontroverted – the Court has two paths toward simplification and global resolution of these claims:

---

[1] Capitalized terms used but not defined herein have the meanings given thereto in the Motion.

**Option 1:** Ordering class-wide mediation of all 7,000 (or more) claims; or

**Option 2:** Certification of "issue classes" upfront (under Rule 23(c)(4)) to adjudicate discrete, "omnibus" issues for all claimants through an adequate representative, followed by mediation toward class-wide claim resolution. For example, the "bulk claims" issue represents over $1 billion in damages across thousands of claims.

After the Court certifies one or both classes, a global resolution of the Securities Claims becomes possible for the first time in these Chapter 11 Cases. Through mediation before a nationally-recognized mediator with securities litigation experience (paid by both sides), the all-encompassing issue of class-wide damages can be negotiated and then applied on a class-wide basis, establishing appropriate values for allowed claim amounts that would need only be applied formulaically and mechanically, to claimant information, to determine recoveries.

These parallel, class-wide paths toward resolving the thousands of Securities Claims follow the twin aims of Rule 23, efficiency and fairness. Reorganized Debtors' protracted individual ADR process advances no goal other than their own self-interest.

Earlier this year, the Court decided that extending the bar date was administratively superior to ordering briefs on whether a class should be certified under Rule 23(b)(3). The Court is now asked to decide whether a fully-briefed class certification motion under Rule 23(b)(1) is superior to Reorganized Debtors' recent Securities ADR Motion. These are two different issues.

PERA previously sought to remedy a grave due process concern related to Debtors' failure to provide notice of the bar date to 100,000 or more putative class members by applying Rule 7023 to a class proof of claim. It now seeks class certification to safeguard the fair and efficient administration of more than 7,000 proofs of claim against the abuses of Reorganized Debtors' ADR proposal. These are two different remedies to two different problems.

PERA does not invite this Court to return to those matters decided pre-confirmation. Indeed, it is precisely because of the Plan's treatment of these 7,000 filed claims that relief under Rules 7032 and 23(b)(1) is newly appropriate (and, thus, could not previously have been sought).

Either of these class-wide paths, which can be travelled alone, in tandem, or in sequence, is superior to the fraught ADR process that led numerous claimants to join PERA's objection

1  (many through their counsel) in loud and unified opposition – including sophisticated investors

2  such as Chevron, CalSTRS, CalPERS, and dozens of others.  Cast in this light, and for the

3  reasons detailed herein, the Objections should not divert this Court from the route that is both the

4  most efficient and fair procedure consistent with due process: deploying the time-tested and

5  repeatedly validated ***protections*** of Rule 23 to administer and help resolve thousands of claims.

6  Accordingly, and consistent with Reorganized Debtors' Objection, PERA addresses the

7  Rule 23(a) and (b) factors before turning to the Rule 7023 issues.

8  ## ARGUMENT

9  ### I.    RULE 23(b)(1) IS A PERFECT MATCH FOR THIS CASE

10  The Objections rely on two flawed premises: first, that mandatory Rule 23(b)(1) classes

11  forbid "opt-outs" (*see* RDO at 2, 10-11, 17, 27, 32 & Baupost Obj. at 4-7); and second, that there

12  is a bar against certifying Rule 23(b)(1) classes where the claimants seek "monetary" relief

13  (RDO at 2, 11-12 & Baupost Obj. at 3-4).

14  Both arguments are wrong.  First, a "mandatory" class ***does not mean*** that opt-outs are

15  prohibited, and revealingly, the Objections cite no law for this extravagant proposition.  True,

16  class members may not opt out as of right (as they may do with a Rule 23(b)(3) class).  But all

17  courts agree that this Court may still exercise its discretion to permit opt-outs from a Rule

18  23(b)(1) class for good cause.  Second, the supposed bar against certifying Rule 23(b)(1) classes

19  for "monetary" damages has been ruled, in this Circuit, ***not*** to cover cases like this one.

20  For the reasons detailed below, Securities Lead Plaintiff submits that this is precisely the

21  situation for which Rule 23(b)(1) was designed – and made mandatory for good reason.

22  ### A.    Rule 23(b)(1) is Mandatory for Certification, But Permits Opt-Outs

23  It is true that courts term certification under Rule 23(b)(1) "mandatory" where the rule's

24  criteria are met.  *E.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841 (1999).  But that has never

25  meant it prohibits an opportunity to opt out; it simply contrasts to Rule 23(b)(3) non-mandatory

26  classes where class members have a guaranteed right to notice and an opportunity to opt out.  *See*

27  *id.* at 848; Fed. R. Civ. P. 23(c)(2)(B)(v) (providing, for Rule 23(b)(3) classes alone, "the court

28  will exclude from the class any member who requests exclusion").  The mandatory nature of

Rule 23(b)(1) classes simply makes notice and an opportunity to opt out ***permissive*** rather than ***compulsory***, and legal scholars recognize that this is "a common misconception." *See* Bradt Decl. ¶18. The seminal treatise *Newberg on Class Actions* also recognizes that "opt out rights are not required in Rule 23(b)(1) class actions, ***but they are discretionary, may be permitted, and have been employed***." 2 *Newberg on Class Actions* § 4:4 (5th ed.) (emphasis added).

This Court retains the discretion to allow individual claimants to opt out of a Rule 23(b)(1) class. Starting, as one must, with the rule's plain text, opt-outs are nowhere prohibited and courts are given wide latitude to "issue orders . . . to protect class members and fairly conduct the action" including "appropriate notice" or "similar procedural matters." Fed. R. Civ. P. 23(d)(1).[2] "[T]he language of Rule 23 is sufficiently flexible to afford district courts discretion to grant opt-out rights in (b)(1) and (b)(2) class actions." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009); *Eubanks v. Billington*, 110 F.3d 87, 94 (D.C.Cir. 1997) (same).

Thus, numerous courts acknowledge that they retain discretion to allow opt-outs from Rule 23(b)(1) or (b)(2) classes despite their "mandatory" nature, including the Ninth Circuit. *Crawford v. Honig*, 37 F.3d 485, 487 n.2 (9th Cir. 1994) (noting that certifying a mandatory (b)(2) class "does not require notice or permit members to opt out, although a court in its discretion may provide for an opt-out or notice"); *Bratcher v. Nat'l Standard Life Ins. Co.*, 365 F.3d 408, 417 (5th Cir. 2004) (same); *Adair v. England*, 209 F.R.D. 5, 13 (D.D.C. 2002) (same for a Rule 23(b)(1)(A) class); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1302–05 (2d Cir. 1990) (holding courts "may allow a class member to opt out of a limited fund class action under Rule 23(b)(1)(B) in order to facilitate the fair and efficient conduct of the action," affirming Judge Weinstein's use of opt-outs as "the exercise of sound discretion"); *Laflamme v. Carpenters Local #370 Pension Plan*, 212 F.R.D. 448, 459 (N.D.N.Y. 2003).[3]

---

[2]  The purpose of Rule 23(d) is to provide courts with the means for facilitating "the fair and efficient conduct of the action." Fed. R. Civ. P. 23(d) adv. cmte. note, 39 F.R.D. 69, 106 (1966).

[3]  Reorganized Debtors feign concern for Securities Claimants, taking similar issue with the Motion's service. *See* RDO at 1, 9, 10. This argument is misplaced. First, notice of the Motion complied with this Court's case management order. Dkt. No. 1996 ¶¶5-8. Second, the record makes evident that many claimants received sufficient notice of the Motion given numerous responses filed thereto, from Baupost, to scores of institutions filing joinders against Reorganized Debtors' ADR proposal and in favor of a collective process, to a request

Neither Reorganized Debtors nor Baupost cites a single authority to the contrary. Their concerns for opt-out rights, and many of their arguments, flow from a lack of understanding about what a "mandatory" class means. *See* Bradt Decl. ¶18. Even if a Rule 23(b)(1) class is certified, claimants retain the right to petition this Court's discretion for the ability to opt out.

**B.** **There Is No Bar to Certifying a Class of Securities Claims Under Rule 23(b)(1)(A) Because the Confirmed Plan Provides A Non-Monetary Remedy**

In the normal course, a company cannot pay its legal obligations in stock – least of all to discharge civil liabilities to a nonconsenting claimant – much less choose its own favorable "conversion factors" that alter both the fundamental nature and value of the consideration being paid. Yet that is the fate of the Securities Claims here, for the simple reason that the Plan, confirmed using the Court's equity power, does not pay these claims with money. Conf. Order [Dkt. No. 8053] ¶ 71. Reorganized Debtors must accept that the thousands of "rescission or damages" claims, filed pursuant to that Plan, are entitled only to this non-monetary remedy under the Plan, and Objectors' numerous characterizations of the Securities Claims as "monetary" lack basis. *See* RDO at 2, 11-13 & Baupost Obj. at 3-4.

Leaving no doubt, Reorganized Debtors and the Plan perennially refer to these claims as "rescission or damages claims." RDO at 2, 8, 9, 18, 27; Plan §§ 1.108, 1.115, 1.197, 4.12. It is black letter law that "[r]escission is an equitable remedy." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989). The subordinated claims' unusual treatment under the Plan was excused **not** because it measured actual money damages accurately (it does not), but rather, on **equitable grounds** by the Plan proponents' own admission: "the plan seeks to give the fraud claimants, like PERA, **the benefit of their bargain** by restoring them to the position of what they say they thought they were buying when they invested in PG&E stock" which "the plan calls the HoldCo rescission or damage claim share." Tr. of Conf. Hr'g., June 3, 2020, 51:11-14 & 53:13-16. That is the opposite of legal damages. It is exactly because of the Plan's treatment of subordinated securities claims as partial "rescission" claims at equity, subject to an

---

from an 86 year old *pro se* claimant asking that the Motion to be granted [Dkt. No. 9221]. In any event, the Federal Rules provide that notice of certification should fall to the rendering court's discretion *after* it certifies a Rule 23(b)(1) class. Fed. R. Civ. P. 23 (c)(2)(A).

equitable "benefit of the bargain" remedy rather than one strictly measured by out-of-pocket monetary damages, that makes Rule 23(b)(1) certification appropriate – and, indeed, mandatory.

Reorganized Debtors' argument that the Ninth Circuit bars certification of "money damages" claims under Rule 23(b)(1)(A) neglects the reality that the claims at issue here are not pure monetary claims. To make that argument, they rely on an indefensible reading of the Ninth Circuit case *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180 (9th Cir. 2001). *See* RDO at 11 (citing *Zinser*). Reorganized Debtors neglect to inform the Court of the following passage from that case, which the Ninth Circuit saw fit to set in all capital letters:

> COURTS HAVE HELD THAT CLASS CERTIFICATION PURSUANT TO RULE 23(B)(1)(A) IS APPROPRIATE IN A VARIETY OF SITUATIONS. . . . A CLASS ACTION SEEKING RESCISSION OF PURCHASES OF SECURITIES THAT ALLEGEDLY WERE MADE ON THE BASIS OF FRAUDULENT MISREPRESENTATIONS ALSO HAS BEEN ALLOWED UNDER [Rule 23(b)] CLAUSE (1)(A). 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, Federal Practice and Procedure § 1773 at 435 (2d ed.1986) . . .

*Zinser*, 253 F.3d at 1193 & n.9 (citing cases). The claims here are equitable ones rooted in rescission under the Plan, at least in part, and the very case Reorganized Debtors cite notes that Rule 23(b)(1)(A) certification of "RESCISSION" claims "IS APPROPRIATE." Leaving no room for doubt, the Ninth Circuit later clarified that claims seeking a mixture of monetary and equitable remedies ***are*** certifiable under ***both*** Rule 23(b)(1)(A) and (b)(1)(B). *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 965 (9th Cir. 2016) (affirming class certification under Rules 23(b)(1)(A) and (b)(1)(B) because "[w]hile [plaintiffs] seek monetary damages in this case, they also seek relief in the form of equitable remedies").[4] Thus, there is no bar to the relief requested.

## II.    THE SECURITIES CLAIMS SATISFY ALL FOUR RULE 23(a) FACTORS

---

[4]   Reorganized Debtors also argue that a Rule 23(b)(1)(A) class cannot be certified over their objection, RDO at 12 (citing *Corley v. Entergy Corp.*, 222 F.R.D. 316 (E.D. Tex. 2004). But the Fifth Circuit overturned *Corley*: "We find nothing in the plain text of Rule 23 that permits a defendant's veto over (b)(1)(A) certification." *Casa Orlando Apartments v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 197 (5th Cir.2010). The Ninth Circuit followed suit and affirmed certification of a Rule 23(b)(1)(A) class over Defendant's objection. *Moyle*, 823 F.3d at 965.

Reorganized Debtors do not dispute that the numerosity and commonality factors (Rule 23(a)(1) & (2)) are satisfied,[5] challenging only two: typicality and adequacy.

## A. *Typicality*: The Suggestion That Typicality Is Not Met Because PERA Did Not Purchase Every Single Type of Debtors' Securities Is Meritless

PERA's claims are typical of the class under Rule 23(a)(3). "The typicality standard is a permissive one," requiring the class representative's claims to be "reasonably coextensive" with the class's, "not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id*. Reorganized Debtors misunderstand this factor when arguing that it is not met "because each Plan Class encompasses dozens of different securities with different attributes" that PERA did not own. RDO at 18-19.

### 1. PERA's Claims and Injuries are Typical of the Proposed Class

No Objection disputes that PERA's ***claims and injuries*** are typical. *See Ellis v. Costco Wholesale*, 657 F.3d 970, 984 (9th Cir. 2011) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct.").

Reorganized Debtors instead argue that because PERA did not purchase each of the 67 debt and equity securities on the claim form, some of which were issued in different offerings or have different coupon rates, then it is unable to represent the interests of all Claimants. RDO at 18. However, the Ninth Circuit held that such an argument should not defeat typicality. *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) (holding that representative parties who have a direct and substantial interest may present claims on behalf of others who have similar but not identical interests, provided they otherwise meet the Rule 23(a) factors). In the securities

---

[5] Reorganized Debtors dedicate one footnote to questioning numerosity. *See* RDO at 15 n.16. While conceding that there are thousands of claimants, they suppose that these parties have already joined the action by filing proofs of claims, hence their joinder cannot be "impracticable." *Id*. The correct inquiry is not, as they suggest, whether a court ***can*** join thousands of individuals parties—a court always can—but instead whether continuing to proceed in such a manner is convenient. *See* 1 Newberg on Class Actions § 3:14 (5th ed.) ("Plaintiffs do not have to demonstrate that joinder cannot be accomplished; a showing of strong litigational hardship or inconvenience is sufficient."). In any event, the settled law in this District is that "classes numbering greater than forty individuals satisfy the numerosity requirement." *Barnes v. AT&T Pen. Ben. Plan*, 270 F.R.D. 488, 493 n.2 (N.D. Cal. 2010).

context, "*Melendres* 'clearly forecloses' any argument that a class representative lacks standing to represent other putative class members who purchased bonds in different tranches or offerings." *See In re Volkswagen "Clean Diesel" Litig.*, No. MDL 2672, 2017 WL 3058563, at *4 (N.D. Cal. July 19, 2017). Regardless of whether the securities were issued at different times, or yield a different rate, PERA's resulting ***claims and injuries*** are typical.

Further, Reorganized Debtors do not dispute that because "***all*** Securities Claims filed pursuant to the Extended Bar Date are based on the claims in PERA's putative class action complaint," PERA's typicality was cemented by the fact that it is "best positioned to be making 'similar legal arguments to prove the defendant's liability.'" Motion at 12 (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)). For the independent reason that PERA's complaint forms the basis for all Securities Claims, PERA's claims are necessarily typical of the proposed Class claims.

### 2. The Proposed Damages Methods Satisfy Typicality

PERA's damages theory is typical of the proposed Class's and can be applied on a class-wide basis. *See* Motion at 16-19; Coffman Decl. ¶¶15-19; Bradt Decl. ¶¶17, 38-46.

### (a) The Equity Securities Damages Model is Sufficient

Reorganized Debtors concede that PERA's proposed damages model for equity securities satisfies typicality. RDO at 18 (that PERA "can calculate damages for all equity claimants on a class-wide basis . . . may be true as to HoldCo's common stock"). Their only rejoinder is that it is not true for "HoldCo preferred stock" and suggest that this presents a problem with PERA's typicality and adequacy. *Id.* at 19. But there is no need to measure damages for HoldCo preferred stock at all, because preferred stock purchasers are not members of Plan Classes 9A, 10A-II, or 10B. *See* Plan §1.108 (defining "HoldCo Rescission or Damage Claim" to "mean[] any Claim against HoldCo . . . arising from or related to the ***common stock*** of HoldCo" (emphasis added)); §1.115 (preferred stock not included in definition of "HoldCo Subordinated Debt Claim") §1.255 (same for definition of "Utility Subordinated Debt Claim"). Reorganized Debtors appear to forget that all preferred stock at the utility was reinstated unimpaired on the

effective date.  Plan §4.33.[6]  And they do not rebut the evidence adduced though PERA's damages expert, that it can pursue a consistent, class-wide damages theory based on precise damages measures for each of the nine legally actionable events that resulted in recoverable losses for class members (which are then converted, through rescission, into shares at the set "benefit of the bargain" rates), as well as computing even simpler statutory damages for bond claimants tied to the facts of this case.  Motion at 18 (citing Coffman Decl. ¶15 & ¶19).

### (b)    The Debt Securities Model Satisfies Typicality

Reorganized Debtors' argument that PERA "oversimplifies" calculating amounts owed to debt Securities Claimants does not defeat typicality, either.  RDO at 18.  Such damages are set by straightforward formulas in the statute itself. 15 U.S.C. § 77k(e).  The Objection tries to manufacture ambiguity in the statute's phrase "time such suit was brought," but the case cited supports the opposite proposition. *See In re Wash. Mut., Inc*., No. 08-1919, 2010 WL 4272567, at *11–12 (W.D. Wash. Oct. 12, 2010) (recognizing that the phrase was held by "binding Ninth Circuit authority" to mean "the price when the suit was filed").  Here, there is no ambiguity about when suit was filed, and PERA's status as Lead Plaintiff in that suit makes it ***especially*** typical.[7]  In any event, conjecture that measuring bond damages "may" present difficulties that "may benefit one claimant while hurting another" (RDO at 19) cannot defeat typicality.  Such naked speculation is insufficient next to Coffman's uncontroverted evidence that he can formulate a class-wide damages methodology typical to the whole Class.  Coffman Decl. ¶19.

### B.    *Adequacy*: Securities Lead Plaintiff And Its Counsel Will Fairly And Adequately Protect the Interests of the Proposed Class

---

[6]    For this reason, the proposed class here – which is limited to claimants under Plan Classes 9A, 10A-II, or 10B – is decidedly not "broader" than the District Court putative class.  RDO at 16.  All Securities claimants are also putative class members in the Securities Litigation. Hence, the attendant adequacy problem Reorganized Debtors imagine is illusory.

[7]    Reorganized Debtors attempt to parlay this inaccuracy into an argument that a conflict exists between stock and bond claimants: "every dollar that is paid out on a Subordinated Debt Claim could reduce the value of any shares issued to Subordinated Equity Claimants." RDO at 19-20. In the unlikely event that this Court believes that the size of debt recoveries will negatively impact HoldCo's share price, it may simply adopt a subclass structure and appoint a class representative, such as York County who is already pled as a putative representative for the bond subclass in the District Court. They belittle this subclassing solution as lacking "evidentiary support" (RDO at 20), obviously failing to realize that subclassing is common and does not require any evidentiary showing. *See* Fed. R. Civ. P. 23(c)(5).

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether the representation meets this standard, [courts in this Circuit] ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

### 1. Securities Lead Plaintiff and its Counsel Have No Conflicts of Interest

#### (a) Reorganized Debtors Raise Only Hypothetical Conflicts

Reorganized Debtors' hypothesizing about potential conflicts of interest cannot defeat class certification. The Ninth Circuit does not "favor denial of class certification on the basis of speculative conflicts." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985. Disqualifying conflicts include situations where a named plaintiff has an interest in plaintiffs winning a case while wearing one hat, but also an interest in them losing the case while wearing another hat. *See J.P. Morgan & Co., v. Super. Ct.*, 113 Cal. App. 4th 195, 214 (2003). The Objections have not imagined, much less proven, such a scenario.

Here, no such conflicts exist. PERA's interests are aligned with the proposed class because all Securities Claimants here are necessarily putative members of the District Court class.[8] Indeed, the District Court has already found PERA to be the "most adequate plaintiff," which it was required to find in order to appoint PERA lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B). *See* District Court Dkt. No. 62, Consolidation Order. The factual underpinnings of PERA's adequacy cannot be subject to collateral attack. *See* 7 Newberg on Class Actions § 22:74 (5th ed.); Bradt Decl. ¶¶9, 37. Since PERA was adequate to represent claimants against Debtors in the District Court pre-petition, it can represent a subset of those claimants against Reorganized Debtors in this Court.

---

[8]   The proposed bankruptcy class is not "broader" than the District Court class, as Reorganized Debtors assert (RDO at 16), because the latter covers *all* "publicly traded PG&E securities." District Court Dkt. No. 121, Third Amended Complaint ¶ 11, (defining the putative class).

**(b)    Insurance Coverage Is Well-Known and Creates No Conflict**

Reorganized Debtors' argument that there are two classes competing for the same pool of insurance funds, and that competing for same assets rises to the level of a disqualifying conflict of interest, is more unhelpful speculation.  First, the two classes are not in competition for the insurance proceeds because the Securities Claimants here are members of the District Court Class.  One class's victories will be the other's.  Second, there is no competition because ***dozens*** of solvent defendants remain in the District Court action, including numerous current and former officers and directors as well as the company's many underwriters.  Finally, there is no competition for "PG&E's Side C insurance proceeds" that cover HoldCo (*see* RDO at 16-17) because that "side" of coverage will never be triggered by any equity claim anywhere: not in the District Court, where the action is stayed against Reorganized Debtors, and not here, where this Court has confirmed a plan specifying that their liability is paid exclusively in stock,[9] which is not an insurable loss.[10]  Moreover, the insurance policies contain a "priority of payments" provision that prevents ***all*** Side C coverage until the Individual Defendants' liability in the Securities Litigation is resolved.[11]  Thus, Debtors fail to demonstrate a concrete instance where PERA faces a disabling conflict merely by representing the same claimants in different venues.

**(c)    Reorganized Debtors' Solvency Makes Conflicts Even Less Likely**

Reorganized Debtors' contention that a conflict may arise from representing overlapping classes of shareholders is also meritless because it "rests on a string of suppositions," the most central of which is the supposition that the "assets would not be sufficient to satisfy the judgment in both cases."  *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534 (E.D. Va. 2006); *Williams v. Empire Funding Corp.*, 183 F.R.D. 428 (E.D. Pa. 1998) ("[T]he appropriate time to make the

---

9    The Plan provides that "each holder of an Allowed HoldCo Rescission or Damage Claim ***shall receive a number of shares*** of New HoldCo Common Stock" according to a formula known as the "HoldCo Rescission or Damage Claim Share."  Plan § 4.14 (emphasis added) & § 1.109.  The Court will recall that formula and treatment were the subject of significant dispute in connection with Plan confirmation – which was ultimately resolved through mediation between Reorganized Debtors and PERA.

10   *See Decl. of Elizabeth Collier in support of Debtors' Motion for a Preliminary Injunction* [Adv. Proc. No. 19-03039, Dkt. No. 3] (contract insures only "ULTIMATE NET LOSS").

11   *Id.* §V (Section titled "**PRIORITY OF PAYMENTS**"); *see also id.* Dkt. No. 12, *Securities Lead Plaintiff's Opposition to Debtors' Motion For a Preliminary Injunction* at 7, 12-15.

determination on whether there is a conflict . . . would be when . . . assets are identified, and execution [of a judgment] is impending."). Reorganized Debtors have repeatedly affirmed their solvency, including as recently as their Objection. RDO at 13. They cannot have it both ways, on one hand arguing that a potential conflict could arise from Securities Claimants competing for the same finite funds, and on the other hand, claim their solvency insulates them from a limited fund Class Action. *See* Section III. C, *infra*. If PG&E is solvent – an accepted premise of these Chapter 11 Cases – there are no actual (much less disabling) class conflicts. As such, Securities Lead Plaintiff and Counsel have no conflicts of interest with the proposed class.

### (d) Speculative Conflicts Are Based on A Flawed Opt-Out View

Last, Reorganized Debtors' claim that a Rule 23(b)(1)(B) class "exacerbate[s]" the illusory conflict based on the incorrect premise that class certification will "rob potential class members of any ability to opt out." RDO at 17. Their concern for the fact that "many Subordinated Securities Claimants have retained their own counsel to prosecute claims" (*id.*), while touching, does not touch on adequacy. First, Reorganized Debtors fail to see that these represented parties overwhelmingly filed notices joining PERA's objection to the ADR Motion, agreeing that some collective procedure would be superior. *See* Dkt. Nos. 9190–9201, 9207–9211, 9213–9214, 9216, 9218–9220, 9225–9230, 9233–9244, 9252, 9471. Second, they appear to forget that PERA has been empowered ***by order of the District Court*** "to initiate and conduct any settlement negotiations with Defendants' counsel" since its appointment as Lead Plaintiff in 2018. *See* District Court Dkt. No. 62, Consolidation Order ¶10. In any event, the mandate that any "limited fund" certified under Rule 23(b)(1)(B) guarantee an "equitable, *pro rata* distribution" (*Ortiz*, 527 U.S. at 839) ensures that intra-class conflicts will be avoided.

### 2. PERA and Counsel Will Act Vigorously on Behalf of the Class

Although Reorganized Debtors' protest contingent fee litigation, they never dispute that PERA and its counsel have vigorously advanced the rights of all Securities Claimants and will continue to do so. *See* Motion at 14. Such is the standard for adequacy. *Staton*, 327 F.3d at 957.

The argument against certification that a contingent fee payable to Class Counsel would "reduce the funds available for distribution to claimants" (RDO at 17) is contrary to law and basic common sense. It is contrary to law because Rule 23(g)(2) specifically sets the legal "Standard for Appointing Class Counsel," and does not prohibit contingent fee models, which are commonplace in securities class action litigation. And it is contrary to common sense for two reasons: it would disqualify nearly every class action counsel, and it fails to account for the eventuality that recoveries would be higher with both representation and the increased bargaining power that comes with class-wide representation.

## III. TWO OF THE RULE 23(b) SCENARIOS ARE SATISFIED HERE – EITHER OF WHICH MERITS CLASS CERTIFICATION

The proposed Class matches more than one Rule 23(b) scenario: first, the Class as a whole satisfies Rule 23(b)(1)(A); and second, the subset of equity Securities Claimants from Plan Class 10A-II satisfies Rule 23(b)(1)(B). Either is sufficient for class certification, and "it is quite common for suits brought under subdivision (b)(1) to meet both the test for clause (A) and for clause (B) of that provision." Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1772 (3d ed.).

### A. Rule 23(b)(1)(A) Certification is Necessary to Avoid Allowing Reorganized Debtors to Get Away With "Incompatible Standards of Conduct"

As argued above, there is no merit to the Objectors' argument (misreading *Zinser*) that Class 10A-II Claims here are pure "monetary" or "money damages" claims barred from Rule 23(b)(1)(A) certification. Rather, they are mixed "rescission and damages claims" that *Zinser* ruled "APPROPRIATE" for such certification. Indeed, the Ninth Circuit has subsequently held that Rule 23(b)(1)(A) classes can be certified even where plaintiffs sought "monetary damages" so long as "they also seek relief in the form of equitable remedies." *Moyle*, 823 F.3d at 965.

It is easy to see why the Ninth Circuit recognizes that Rule 23(b)(1)(A) certification of mixed rescission/damages claims is appropriate. In *Moyle*, the Ninth Circuit held that the decisive point "in favor of class certification" under Rule 23(b)(1)(A) was that proceeding individually would mean "that some [class members] would receive relief while others would not." *Moyle*, 823 F.3d at 965. While it is acceptable for claims *at law* to be dealt with disparately, it is unacceptable for *equitable* remedies to be applied unequally. *Id.* Yet this is

precisely the goal of the ADR proposal: to seek disallowance of as many claims as possible on grounds other than the claims' merits. *E.g.*, ADR Motion at 9 (creating "Subordinated Securities Information Procedures" to permit "formal objection seeking disallowance"); *id.* at 12 (requesting additional "Securities Omnibus Objection Procedures" to "augment, supplement, or modify what is specified in Bankruptcy Rule 3007(e)" as grounds for disallowance); *id.* at 3 (mediation will be available only to some, "depending on, among other factors, the size and complexity of the individual claim, whether the claimant is a financial institution or an individual, and the gap between offers and counteroffers in settlement exchanges" – not merits). In a fair process, a claimant's wherewithal to defend its claim should not determine the outcome.

However, because the Plan requires ***all*** subordinated Securities Claims to receive rescissionary treatment, which means equitable, *pro rata* treatment, Reorganized Debtors should not be permitted to give relief to some but not others. *See Moyle*, 823 F.3d at 965. Rule 23(b)(1)(A) was drafted for this exact situation: "when practical necessity forces the opposing party to act in the same manner toward the individual class members." Wright & Miller, 7AA Fed. Prac. & Proc. § 1773 (3d ed.). Reorganized Debtors do not even attempt to separately respond to the Motion's litany of class-wide issues that would make it "unworkable or intolerable" to proceed on separately and inconsistently.

### 1. *Rule 23(b)(1)(A) Prevents Reorganized Debtors from Invoking Equitable Rescission Then Acting Unequally on the Class-Wide Issue of Damages*

Securities law is clear that common stock damages can and should be determined on a class-wide basis. *See* Motion at 17-19; Coffman Decl. ¶¶15-19. Reorganized Debtors concede this point. RDO at 18 ("That may be true as to HoldCo's common stock."). And they do not rebut the evidence adduced though PERA's damages expert that a consistent, class-wide damages theory ***already exists*** based on a precise measurement of damages for each of the nine legally actionable events that resulted in recoverable losses to class members, as well as computing even simpler statutory damages for bond claimants. *See* Motion at 18 (citing Coffman Decl. ¶¶15-19).[12] This fact is uncontroverted. Reorganized Debtors offer no evidence

---

[12] Reorganized Debtors' only response – that measuring bond damages was not simple in two other cases and "may" present difficulties that "may benefit one claimant while hurting

why damages *here* cannot be addressed on a class-wide basis, nor do they dispute how treating these equitable rescissionary claims in a way that may give relief to some but not others is problematic. *See Moyle*, 823 F.3d at 965.

### 2. *Rule 23(b)(1)(A) Prevents Reorganized Debtors from Invoking Rescission Then Using Omnibus Objections to Give Relief to Some But Not Others*

Second, PERA proposed that the "omnibus objections" should also proceed (through mediation or litigation) on a class-wide basis. Motion at 19-20. Reorganized Debtors' only response is that two of their omnibus objections – bulk claims and timeliness – "are not class-wide issues." RDO at 31. They ignore the remaining omnibus objections proffered in their Securities ADR Motion – *e.g.*, their broad proposal of an "Otherwise Objectionable" category, described as applying where "Certain Subordinated Securities Claims are objectionable on some other ***common basis***" (Securities ADR Motion at 13 (emphasis added)) – and presumably concede that this category of objections needs class-wide treatment.[13] At any rate, bulk claims and timeliness are also class-wide, common to thousands of class members each, and present significant risk of "unworkable or intolerable" inconsistencies if they had to be litigated thousands of times. Such a course would be "unworkable or intolerable" compared to litigation once by an adequate representative.

It would also be chaotic. Reorganized Debtors do not respond to the legal argument that, absent class certification, one entity cannot be bound by another's result on these questions. *See* Motion at 19-20. Nor do they propose how these issues might be litigated after ADR fails – other than thousands of times, inefficiently, and to inconsistent results. Addressing these class-wide issues on a class-wide basis is more appropriate than the prejudicial ADR process by both avoiding inconsistency and achieving fairness. Thus, Rule 23(b)(1)(A) certification is proper, and this Court may do it using "issue classes." *See* Fed. R. Civ. P. 23(c)(4); Bradt Decl. ¶19-25.

### B. Because the Plan Requires Class 10A-II Claimants to Receive Stock, Rule 23(b)(1)(B) Is Satisfied Independent of Whether the Fund is "Limited"

---

another" ( RDO at 19 (citing *In re Wash. Mut.*, 2010 WL 4272567 (W.D. Wash. Oct. 12, 2010) and *McMahan & Co. v. Wherehouse Ent.*, 65 F.3d 1044 (2d Cir. 1995)) – is naked speculation insufficient to rebut Coffman's uncontroverted evidence that such damages are measurable here.

[13] Debtors disclaim any intent to assert a "'truth-on-the-market' defense." RDO at 32. Based on that representation, PERA agrees it need not be adjudicated upfront on a class-wide basis.

Even if the Court finds that the fund is not limited, it can – and should – still certify a Rule 23(b)(1)(B) class. Under *Ortiz*, a "limited fund" class action is but one example of a situation where a class should be certified because, in the language of Rule 23(b)(1)(B), proceeding individually "would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or ***would substantially impair or impede their ability to protect their interests***." *See* 2 Newberg on Class Actions § 4:20 (5th ed.) ("Although the limited fund case is the classic Rule 23(b)(1)(B) class action, the Rule is not restricted to limited fund cases."). Indeed, certifying a Rule 23(b)(1)(B) class is mandatory in ***all*** "situations where lawsuits conducted with individual members of the class would have the practical if not technical effect of concluding the interests of the other members as well, or of impairing the ability of the others to protect their own interests." *Ortiz*, 527 U.S. at 833.

Because the Plan requires that Class 10A-II claims be paid in shares directly from HoldCo, this alone satisfies Rule 23(b)(1)(B). Such shares necessarily impact one another as they are issued due to dilution, and *seriatim* claims resolution would necessarily favor early recoveries over later ones. Reorganized Debtors can use this aspect of the Plan to strong-arm claimants to settle early, lest they get diluted by other claimants. Thus, practically speaking, proceeding individually creates a very definite, impermissible risk that "adjudications with respect to individual class members . . . ***would substantially impair or impede***" each other's interests via dilution. PERA made this argument in its Motion, and the Objections made no response. *See* Motion at 23. Indeed, Reorganized Debtors contemplate that hundreds of millions of shares could be issued to satisfy all Class 10A-II claims (RDO at 14; Keable Decl. ¶¶ 8, 19–20), meaning in practice, that whoever receives the last of these *seriatim* will suffer unfairly.

Practically speaking, the unusual provision here that pays claims in stock is sufficient to warrant Rule 23(b)(1)(B) certification, ***even if there were no limit to the number of shares Reorganized Debtors could issue***. Unsurprisingly, the Supreme Court lists "actions by shareholders to declare a dividend or otherwise to 'fix their rights'" as a "[c]lassic example" of a ***non***-limited-fund Rule 23(b)(1)(B) class. *Ortiz*, 527 U.S. at 833 (quoting Kaplan, CONTINUING

WORK OF THE CIVIL COMMITTEE: 1966 AMENDMENTS OF THE FEDERAL RULES OF CIVIL PROCEDURE (I), 81 Harv. L. Rev. 356, 388 (1967). Debtors' lack of response to this argument should conclude the matter. Because the Plan pays Class 10A-II claims in shares, a class must be certified to prevent the injustice that individual, *seriatim* ADR would create through dilution.

### C. Under *Ortiz*, Rule 23(b)(1)(B) Mandates Certification Because Reorganized Debtors Have a Classic "Limited Fund" of Shares for Distribution to Holders of Allowed Class 10A-II Claims

Class 10A-II members also qualify for class treatment to avoid the risk that PG&E runs out of shares before all claims are paid. The parties agree that this species of "limited fund" class actions are mandatory when the three *Ortiz* factors are met. RDO at 13 n.13. Further, Reorganized Debtors dispute only factor 1 – whether the fund is truly limited (*id.* at 12-15) – conceding factor 2 (that certification would "ensure[] that the class as a whole was given the best deal") and factor 3 (that certification would allow "an equitable, pro rata distribution"). *Ortiz*, 527 U.S. at 839. For the reasons below, the fund is limited, hence all three *Ortiz* factors are met.

#### 1. PERA Did Not Make Any "Mathematical" or Other Error in Proving that There Is a "Limited Fund" of Shares to Pay Class 10A-II Claims

Reorganized Debtors say it was a "mathematical error" not to include "the conversion factors in Section 1.109 of the Plan." RDO at 14-15. But the error is actually theirs, because their reference to conversion factors answers the wrong question.

The correct question is set forth by the Supreme Court in *Ortiz*. The proper formula has already been dictated: a fund is limited under *Ortiz* when "the totals of the aggregated liquidated claims and the fund available for satisfying them, set definitely at their maximums, demonstrate the inadequacy of the fund **to pay** all the claims." *Ortiz*, 527 U.S. at 838. Treating a subordinated Securities Claim in an impaired class according to a plan of reorganization is, by definition, not paying it in full. Reorganized Debtors suppose that the so-called "conversion factors" are so Debtor-friendly as to allow it to treat a "$10,000 Allowed Claim" as receiving only "154 shares" (a current market value of only approx. $1,540). RDO at 14. But this supposition is nothing more than a concession that, in the words of *Ortiz*, their Plan is "inadequa[te] . . . **to pay** all the claims" when compared to a measurement of claims "set

definitely at their maximums," – namely, the $10,000. *See id.* (emphasis added). The conversion factors are what guarantee that Plan treatment of Class 10A-II will fall below the dollar value "totals of the aggregated liquidated claims," and thus set "a definitely ascertained limit" in the strictest sense. *See Ortiz*, 527 U.S. at 841.

Put differently: perhaps PG&E could, at the end of the process and fully consistent with the Plan, discharge billions of dollars in claims by issuing only a few shares, perhaps even zero shares. But that is irrelevant to the *Ortiz* analysis. Nothing in the Plan, not even conversion factors, can divert this Court from the proper inquiry, which is whether the fund can fully "***pay*** all the claims" when "set definitely at their maximums." *Ortiz*, 527 U.S. at 838.[14] Because the Plan pays claims using a diminished, rescissionary, benefit of the bargain measure instead of full out-of-pocket legal damages (via a formula with conversion factors for reducing the ultimate value of the distribution), it necessarily "is insufficient to pay claimants in full." *Id.*

Thus, the idea that securities cases will "rarely" satisfy the requirements of a "limited fund" where companies are solvent (RDO at 13) is of no moment. It simply makes this the "rare" case where a solvent defendant has filed for bankruptcy and confirmed a Plan that creates a fund of shares to pay subordinated securities claims in a "limited" manner.

## 2. *Reorganized Debtors Do Not Disprove That There Is a Limited Fund*

Reorganized Debtors try to dispute the limited nature of their remaining shares with a false assertion that "there are over 1.5 billion shares that could be issued" which, in turn, are enough to discharge all claims. RDO at 14 (citing Herlich Decl. ¶ 6). This proffered number of shares is incorrect,[15] but more importantly, it misses the point.

---

[14] Baupost's argument that PERA's withdrawal of its confirmation objection warrants "judicial estoppel" against arguing that the fund is limited is wrong for the same reason. The Motion does not change treatment of Class 10A-II. Its intent is to acknowledge that the Plan does not pay claimants' full out-of-pocket losses in dollars, but rather provides a rescissionary benefit-of-bargain remedy in stock that requires class certification to be distributed fairly.

[15] Given HoldCo's 3.6 billion share cap, this proffered number of shares "that could be issued" would mean that PG&E has ***less than*** 2.1 billion shares outstanding. This Court knows enough information to contradict that fact, because Reorganized Debtors agreed to issue shares comprising 22.19% of HoldCo to the Fire Victim Trust, ***and*** that HoldCo issued at least 477,743,590 shares to the Fire Victim Trust. *See* Parties' Joint Stip. [Dkt. No. 7914]; Order Approving Joint. Stip. [Dkt. No. 7919]; & RJN Ex. D at 4 (Item 8.01). This proves that there must be, ***at minimum***, 2,152,967,958 shares outstanding because 477,743,590 divided by 2,152,967,958 = 22.19%. That alone ***proves*** that there are fewer than 1.5 billion

18

How many shares a piece of paper says PG&E "could issue" in the abstract is irrelevant, because the evidence is unrebutted that PG&E **cannot** issue all of them here, or even most of them, to Securities Claimants. Rather, there is uncontroverted evidence that PG&E's unissued stock **is already largely spoken for** and thus cannot be used to satisfy Class 10A-II claims. As the Motion established, HoldCo's various stakeholders have been guaranteed extensive anti-dilution, forward-stock purchase, Equity Unit, and similar agreements that all lay claim on HoldCo's unissued shares. Motion at 22 & n.13. HoldCo's own SEC filings admit that these various provisions are "large" and "substantial." *See id*. Further, HoldCo obviously cannot issue all its shares to Class 10A-II without violating its commitment to the Fire Victim Trust not to dilute those shares – and so must reserve a further 22.19% of unissued shares, **however many (or few) there are**. There is no dispute that HoldCo can issue only **a fraction** of "available" shares to satisfy Class 10A-II claims.[16]

Rather than dispute this evidence – which Reorganized Debtors could easily have done if it were false – they have not rebutted this evidence. As the record now stands, the weight of evidence is that the remainder of shares HoldCo could issue is **precisely** limited.[17] In the words of Rule 23(b)(1), a party seeking certification need only show that there is "a risk" of a limited fund (Fed. R. Civ. P. 23(b)(1)), and Lead Plaintiff has carried that burden here.

### 3. *The Theoretical Option that HoldCo Could Create More Shares Is Meaningless*

---

"shares that could be issued" – and indeed, even fewer than that, because of the further volumes of shares HoldCo issued for other purposes. Lead Plaintiff has accounted for issuances of shares exceeding 2.9 billion just from HoldCo's SEC filings (Motion at 21) – which Reorganized Debtors have not directly rebutted.

[16] Reorganized Debtors' failure to account for this uncontroverted fact proves that they do not have sufficient shares "available" to satisfy $100 billion, or $50 billion, or $19.5 billion in "hypothetical" damages, as they purport to calculate. RDO at 14.

[17] In a simplistic analysis with reasonable assumptions, it is easy to see how the amount of remaining shares could not even carry out the Plan (though that is not the right analysis, per *Ortiz*), Claims listing over $8.6 billion in **liquidated** damages have been filed, and there will be at least twice that when **unliquidated** damages are included. Using a simple average of the four "conversion factors," or $45.31, this means the plan would require issuance of 379,607,151 shares for Class 10A-II claims. Supposing (conservatively) that for every 1 share issued to Class 10A-II, only 3 shares need to be kept in abeyance for the admittedly "large" and "substantial" anti-dilution and other agreements Reorganized Debtors concede, that means the HoldCo would need 1,518,428,604 unissued shares. But as proven at note 15, *supra*, there are necessarily fewer than 1.5 billion shares that could be issued given just what is publicly known about the size of the of the Fire Victim Trust—and, indeed, far fewer than that, as PERA has already established from the judicially noticeable record. Motion at 21.

Both Baupost and Reorganized Debtors argue that the fund of shares cannot be limited so long as HoldCo's board of directors could authorize a revision of its Articles of Incorporation to raise its share cap with the approval of shareholders. RDO at 14-15; Baupost Obj. at 5-6 (citing Cal. Corp. Code §§ 900(a) & 902(a)). This argument is unavailing.

Such a possibility is entirely speculative. And even if the HoldCo Board were able and inclined to undertake such an action (a fact their Objection curiously avoid taking a position on), it would not *necessarily* result in shareholder approval (much less the potentially needed approval of CPUC). Nor would it *necessarily* result in a fund of shares sufficient to satisfy Plan Class 10A-II claims because it unavoidably depends on whether and how high HoldCo actually raised that ceiling and the trading prices of those heavily diluted shares. Nor would it change the undisputed fact that a "large" and "substantial" portion of such new shares would still need to be earmarked to cover HoldCo's anti-dilution and other obligations. Unless and until PG&E shows both (a) that it has *already* raised its cap on the number of its shares it could issue, and further that (b) the issuance of these shares would be adequate to pay all "the totals of the aggregated liquidated claims . . . set definitely at their maximums," the Confirmed Plan remains a "limited fund" with regard to its treatment of Class 10A-II claims under *Ortiz*. Bradt Decl. ¶¶26-30.[18]

*    *    *

Because the three *Ortiz* factors are met, Class 10A-II constitutes a classic situation where class certification is "mandatory." *Ortiz*, 527 U.S. at 841. In contrast, the ADR Motion's aim – to allow Reorganized Debtors to provide favorable settlement terms to preferred claimants at the expense of others – is precisely the circumstance that Rule 23(b)(1)(B) is designed to prevent.

## D.    NO FURTHER DISCOVERY IS NECESSARY

No party is entitled to discovery at the class certification stage unless there first exists a factual dispute about one of the Rule 23(a) or (b) factors. Because no such factual disputes exist

---

[18] In a confused footnote premised on out-of-circuit case law from the 1970s, Reorganized Debtors appear to speculate about how there might be "individual factual situations" that make Rule 23(b)(1)(B) certification "inappropriate," which require discovery to adduce. RDO at 15 n.15. Such speculation does not create a dispute of fact about Rule 23, the *sine qua non* of getting class certification discovery. *See* Section III.D. *infra*. In any event, the law on which it is premised is outdated by *Ortiz* and the wealth of class action jurisprudence that has emerged about securities class actions in the last half-century. Bradt Decl. ¶¶13-16, 26.

here, the Court can certify one or both proposed classes on the briefing alone, and make a global settlement possible for Securities Claimants the first time in these Chapter 11 Cases.

Free-ranging discovery is prohibited at the class certification stage. Knowing the danger that expensive and dilatory discovery could be a means to delay and discourage certification, the Advisory Committee provided the following note to Rule 23: "an evaluation of the probable outcome on the merits is not properly part of the certification decision" and at most, "it is appropriate to conduct controlled discovery into the 'merits,' *limited to those aspects relevant to making the certification decision on an informed basis*." Fed. R. Civ. P. 23(c)(1) advisory committee's note (2003) (emphasis added). Similarly, the *Manual for Complex Litigation* advises that a "court should encourage counsel to confer and stipulate as to relevant facts that are not genuinely disputed, to reduce the extent of precertification discovery, and to refine the pertinent issues of deciding class certification." *Manual for Complex Litigation, Fourth*, § 21.14. Thus, courts generally tailor class certification discovery as closely as possible to the Rule 23(a) and (b) factors in dispute. *See* Bradt Decl. ¶33-37; 3 *Newberg on Class Actions* § 7:17 (5th ed.).

Recently, the Supreme Court reminded that class certification should not be an occasion for wide-ranging inquiry into issues unrelated to the Rule 23 factors. Facing a securities fraud defendant who was prevented, at the class certification stage, from establishing facts supporting its defenses, the Court affirmed a lower court's refusal to entertain such extraneous discovery:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 466 (2013). Thus, Reorganized Debtors' proposed discovery to "root out" potential disputes (RDO at 15, 20-21) is not just impermissibly vague, but also strictly prohibited. Absent a class-relevant factual dispute to resolve, courts refuse discovery for its own sake. *E.g.*, *Pizana v. Sanmedica Int'l*, No. 18-644, 2020 WL 6075846 (E.D. Cal. Oct. 15, 2020) (finding party "not entitled to that discovery at this stage of the case" because it "has not shown how [the discovery] is likely to substantiate his class allegations"); *Klein v. TD Ameritrade Holding Corp.*, No. 14-396, 2016 WL 7156476 (D. Neb.

Dec. 7, 2016), *aff'd* 2017 WL 1316944 (D. Neb. Apr. 7, 2017) (denying discovery where party "[f]ailed to substantiate why he needs additional discovery" and "the disputed discovery expands beyond the scope of the class certification issue").

Discovery is particularly inappropriate here, where the relevant facts are uncontroverted. Objectors raise only legal disputes about the Rule 23(a) factors; for example, the parties agree about what PERA's claims are and what the putative class claims are, but dispute whether they are typical or adequate under the law (conceding numerosity and commonality). Importantly, Objectors have not disputed the testimony that a damages formula already exists based on precise measures for each of the nine fraud-related events to compute stock losses class-wide, with an even simpler statutory damages formula for bond claimants. *See* Coffman Decl. ¶¶15-19. Similarly, Reorganized Debtors have not contested their own public admissions that the preponderance of their outstanding shares are earmarked to cover anti-dilution provisions and hence cannot be issued to pay Class 10A-II claims. Absent a factual dispute on any of the Rule 23(a) or (b) factors at issue, no discovery is necessary.[19] The Court may rule on the papers.

Then, after selecting a nationally-recognized mediator with proven securities litigation experience (paid by both sides) and ordering the parties to mediate in good faith or litigate threshold class-wide issues, all that would remain to do is to mechanically apply these numbers to claimant data based on when they bought and sold the securities at issue, at what prices.[20]

## IV. THIS COURT SHOULD APPLY RULE 7023 TO THE SECURITIES CLAIMS

### A. Res Judicata and Law of the Case Are Not Applicable Here

Reorganized Debtors argue that issue preclusion and law of the case should prevent the Court from considering this new motion. Their arguments misconstrue the doctrines and

---

[19] The claimed entitlement to discovery to prove that "the alleged misrepresentations had no price impact on the securities at issue" (RDO at 32) under *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) and *Carpenters Pension Tr. Fund for N. Cal. v. Allstate Corp.*, 966 F.3d 595, 608 (7th Cir. 2020) is a fishing expedition in the desert. Even Debtors admit that the "price impact" issue relates strictly to the "requirements of Civil Rule 23(b)(3)," which PERA is ***not*** pursuing here (in favor of a 23(b)(1) class), hence ***not*** relevant.

[20] We have not mediated with Reorganized Debtors to resolve claims under the Confirmed Plan, and it is abjectly false to assert, as their Objection claims, that such mediation efforts have "been unsuccessful to date." RDO at 6. Further detail would trammel the mediation privilege, as Reorganized Debtors' divulgences ***would*** do if they were true. *See* Fed. R. Evid. 608. In any event, the Court knows well the parties' success mediating other issues to date.

downplay the material differences between this Motion and the Initial 7023 Motion.

### 1. Legal Standard Not Disputed

The parties and Court have long agreed on the legal standards that govern application of Rule 7023 to this case: it is discretionary, a range of factors may guide this Court's discretion, and the three factors set forth in *Musicland* may be particularly helpful when applying Rule 7023. Last and most importantly, the parties and Court all appear to agree that one factor – the effect on case administration – stands out as the principal consideration.

### 2. No Preclusion Doctrine Bars Deciding New Issues in the First Instance

Despite the high level of generality with which Reorganized Debtors describe PERA's motions, the issue now before the Court is distinct from any issue previously at stake. PERA previously requested that this Court apply Rule 7023 to a class proof of claim concerning the entire universe of putative class members in the District Court action, regardless of whether any claimant filed their own proofs of claim. In contrast, the current request to apply Rule 7023 concerns a far narrower subset of claimants who each filed proofs of claim pursuant to the Court-ordered extended bar date. Further distinctly, the Initial 7023 Motion sought a schedule for *briefing* class certification under Rule 23(b)(3), whereas this Motion has already fully briefed class certification under the different provisions of Rule 23(b)(1).[21] And Reorganized Debtors neglect the radical difference in alternatives to Rule 7023 that faced the Court each time, which are important from a practical perspective: previously, application of Rule 7023 was compared to extending the bar date, and now, the comparison is to their recent Securities ADR Motion. Nothing precludes considering the Motion in the first instance, and Reorganized Debtors' arguments fail for the reasons below.

#### (a) Law of the Case Does Not Apply

Law of the case does not apply here because the doctrine does not bind different fact patterns. *See Conkwright v. A C & S Inc.*, 106 F.3d 407 (9th Cir. 1996) ("The law of the case doctrine does not apply because the district court considered substantially different facts . . .").

---

[21] Reorganized Debtors argue that this difference is "irrelevant" because the Court did not previously reach the issue of certification, as here. RDO at 8. This underscores, not undermines, how different the previous issue was from the current one.

Although the doctrine requires adherence to previously decided matters of law, there is no dispute here as to the previously decided legal questions: the bankruptcy court has the discretion to apply Federal Rule 23 through Bankruptcy Rules 7023 and 9014, and various factors (including those in *Musicland*) may guide its analysis. The law of this case is unchallenged.

PERA asks the Court to apply that settled law to new facts. The issue is not (as before) whether extending the bar date is administratively superior to briefing Rule 23(b)(3) certification in connection with a class proof of clam for safeguarding the due process rights of hundreds of thousands of putative claimants who received no notice of the bar date. The Motion does not challenge that decision. The never-before-decided issue concerns how to fairly and efficiently handle more than 7,000 Securities Claims post-confirmation: with fully-briefed Rule 23(b)(1) class certification, or through an ADR process designed by Reorganized Debtors to tilt the playing field and maximize their bargaining power.[22]

### (b)    Issue Preclusion Does Not Apply, Either

The doctrine of issue preclusion provides that "when an issue of ultimate fact has once been determined by a valid and final judgment that issue cannot again be litigated between the same parties in any ***future lawsuit***." *See Wilson v. Belleque*, 554 F.3d 816, 830 (9th Cir. 2009) (emphasis added); *see also* Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4417 (3d ed.) ("[D]ecisions defining the scope of issue preclusion all agree that it applies ***only*** when the same issue has been decided in one case and arises in another."). The Reorganized Debtors clearly misinterpret this doctrine; to avoid redundancy, only law of the case concerns "the same issues in subsequent stages of the same case." *U.S. v. Marguet-Pillado*, 648 F.3d 1001, 1007 n.1 (9th Cir. 2011). Because this is the same case, issue preclusion does not apply.

### (c)    Reorganized Debtors Also Fail to Establish the First Element of Issue Preclusion

In any event, Reorganized Debtors do not satisfy their burden to establish the first

---

[22] In any event, the Court may depart from law of the case after "changed circumstances" arise. *See HRC-Hainan Holding Co., LLC v. Yihan Hu*, No. 19-80277, 2020 WL 1274877, at *2 (N.D. Cal. Mar. 17, 2020). The Damoclean A.B. 1054 deadline – the sole "anomalous" consideration that previously "prejudiced" application of Rule 7023 (in the Court's words, *see* Dkt. No. 5887) – has passed. This decisive change in circumstances avoids preclusion.

element of issue preclusion. Curiously absent from their brief, the first element of issue preclusion is that "the issue at stake was identical in both proceedings." *See McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004); *see also* Wright & Miller, *supra,* § 4417. But the Initial 7023 Motion did not have an "identical" issue at stake. While both petitioned for application of the same rule, Rule 7023, the similarities end there. As mentioned, the previous request to apply Rule 7023 concerned a class proof of claim and the entire putative class, regardless of who filed a claim, as a means to cure a notice deficiency and an alternative to an extended bar date. The current request is focused on a subset of claimants who filed claims, as an alternative to Reorganized Debtors' self-created ADR process for handling the very claims against them. This distinct issue arose as a result of the extended bar date and the confirmed Plan's classification and treatment of Securities Claims, and could not have been asserted previously. Objectors' invocation of the doctrine overlooks the substantially different facts under which Rule 7023 is being invoked. *See Ansel Communs., Inc. v. Novell, Inc.*, No. 97-21088, 1999 WL 33298162, at *3 (N.D. Cal. Mar. 23, 1999) ("A party will not be collaterally estopped from pursuing a similar, but not identical, issue if the second case involves different facts."). A similar, but not identical, issue is not enough. *Id.* at *8.

## B. Because the Issues Are New, the Court Has Jurisdiction

These issues *not* having already been decided, they most certainly are not up on appeal. "In general, filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal." *Marrese v. AAOS*, 470 U.S. 373, 379 (1985). As a result, the lower "court only loses jurisdiction over the particular issues involved in that appeal." *In re NCAA Student-Athlete Name & Likeness Litig.*, No 09-1967, 2010 WL 5644656, at *3 (N.D. Cal. Dec. 17, 2010); *Prestige Ltd. P'ship v. E. Bay Car Wash Partners* (*In re Prestige Ltd. P'ship*), 223 B.R. 203, 207 (Bankr. N.D. Cal. 1998) ("[T]he trial court may consider issues that are not before the appellate court.").

Securities Lead Plaintiff's appeal from the Initial Rule 7023 motion divests the Court of jurisdiction over *that motion*, but not this entirely new motion seeking new relief. *See* Order Re: Mot. to Certify Class Claim, *In re Sequoia Senior Sols., Inc.*, No. 16-11036 (Bankr. N.D.

Cal. Dec. 26, 2017) Dkt. No. 177, (affirming jurisdiction and granting Rule 7023 motion for class certification despite a pending appeal of order applying Rule 7023). The argument that the Court lacks jurisdiction to apply Rule 7023 here has no limiting principle, and leads to the absurd conclusion that this Court lacks jurisdiction to make any Rule 7023 determinations at all.

## C. The Court Should Use Its Discretion to Apply Rule 7023 to the Securities Claims

There is no dispute that a variety of factors may guide the Court's discretion on whether to apply Rule 7023. Motion at 5-6, RDO at 25-31. The three factors highlighted in the Court's prior Rule 7023 Order and *Musicland* pertain specifically to whether Rule 7023 should be applied to a class proof of claim, and provide guidance here to the extent relevant. There is agreement that the principal consideration should be whether class certification would aid or diminish efficiency for the claims administration process. *See Schuman v. The Connaught Grp.*, 491 B.R. 88, 99 (Bankr. S.D.N.Y. 2013) (applying Rule 7023 where the efficiency it adds to claims administration was the "principal consideration").

### 1. The Analyses for *Musicland* Factors One and Two Have Not Changed

Reorganized Debtors push this Court to make a new determination that *Musicland* factors 1 and 2 now weigh against applying Rule 7023. RDO at 26-28. In asking the Court to revisit its decision on these factors, they tacitly concede the inapplicability of their preclusion defenses.

The Court is familiar with these issues, and they need not be belabored. The lack of pre-petition certification (factor 1) remains irrelevant "[b]ecause a motion to dismiss is currently pending in the Securities Litigation" still, preventing a class from being certified, so the lack of prepetition certification remains as meaningless as ever. 7023 Memorandum Dec'n [5887] at 3.

Reorganized Debtors are correct that all members of the proposed class here filed proofs of claim, in contrast to the prior motion. But that means the second *Musicland* factor weighs heavily **in favor** of applying Rule 7023 because all putative class members are similarly situated. Reorganized Debtors believe it means that such claimants should have "their right to negotiate their own settlements or hire counsel of choice" (RDO at 27), a questionable concern for others, and one rooted in their misunderstanding about Rule 23(b)(1) opt outs (which the Court may allow even after certifying a (b)(1) class). For now, the scores of claimants, often ***with*** counsel,

26

who joined PERA's opposition [Dkt. No. 9189] to the ADR proposal give voice to widespread due process fears and call for collective treatment. Until a louder chorus rises in praise of the transparently unfair ADR proposal, *Musicland* factor two weighs as heavily in favor of class certification as it ever has.

### 2. The Analysis for *Musicland* Factor Three Has Changed Dramatically

The Objections miss the key analysis: whether class certification is administratively superior to Reorganized Debtors' ADR proposal. Rule 7023 should apply because, by the third *Musicland* factor, it would promote efficient administration at this stage of the Chapter 11 Cases, especially compared to the burdensome and unworkable ADR alternative proposed.[23]

Class certification is both the fairest and most efficient practice. Strong precedent exists in this bankruptcy court for using Rule 7023 after plan confirmation to facilitate claim resolution. In *Sequoia*, this bankruptcy court applied Rule 7023 post-confirmation (*Sequoia*, 2017 WL 2533345 at *2), and in an order thereafter, certified a class of creditors, noting certification to be "a superior device" for resolving claims (*id.*, Dkt. No. 180 ¶4, Order dated Mar. 15, 2018).[24] Here, too, complexities can be simplified by addressing class-wide issues on a class-wide basis, so that resolution of claims (by mediation or adjudication) can be fair and meaningful.[25]

In contrast, Reorganized Debtors' ADR proposal is a sophisticated trap for the unwary camouflaged by a veneer of promises for settlement offers. For example, the process they propose to obtain additional information from claimants (before offers are made) is inconsistent with industry practice, requests duplicative information, is inefficient, and – most importantly – is likely to lead to a decreased response rate. *See* Walter Decl. ¶¶7-9 Rather than using the

---

[23] Reorganized Debtors' assertion that certification would cause delay (RDO at 29-30) and increase expense (*id.* at 30-31), in the abstract, is a poor prediction next to the targeted framework for class-wide mediation and litigation PERA proposes.

[24] Reorganized Debtors' argument that *Sequoia* never reached class certification and hence the Motion "mischaracterize[ed]" the case (RDO at 28-29) ignores this subsequent case history, where this Bankruptcy Court indeed certified a class after applying Rule 7023.

[25] Baupost's proposal that class-wide issues can be mass-adjudicated so long as "each Securities Claimant" is given "the opportunity to be heard individually" on *every issue* that arises in prosecuting these claims may be the least administrable proposal. Baupost Obj. at 4. It neglects the sheer hours it would take *per controversy* to hear, *e.g.*, the dozens of claimants who endeavored to file objections to the ADR Motion, much less the potential *days* it would take if others of the thousands of claimants sought their day in court – for each dispute.

typical, targeted approach to correct deficiencies in claimant information, the Securities ADR would treat it as an opportunity to burden claimants and disallow their claims. *Id.* ¶15. It asks for claimants to re-produce the same information previously submitted as part of the Rescission or Damages Proof of Claim Form that all 7,000 (or more) claimants already submitted, as unnecessary as it is burdensome. *Id.* ¶7. Tellingly, Reorganized Debtors have identified what they term "deficiencies" via a sampling of more than 2,300 proofs of claim filed by claimants – yet have done nothing to remedy these issues. *See* Keable Decl. [Dkt. No. 8965]. In contrast, according to a claims processing expert with experience administering large securities claims, "a reasonable time to process the deficiencies and prepare deficiency notices would still be 30 days, and could even be less than 30 days"; further, "the Reorganized Debtors' process of sending a new claim form does not save any time, as compared to the industry practice of relying upon one claim form and following up with only the claimants who have deficiencies." Walter Decl. ¶23.

In sum, individual ADR promises far more chaos than class certification, the smoothest and most equitable process for potential resolution. The inefficiencies and unfairness of the Securities ADR proposal all but guarantee that those thousands of claims will remain unsettled, leaving class-wide issues still unresolved whilst contributing no efficiency. Reorganized Debtors, who have already had the opportunity to solicit information from claimants yet settled zero claims, have proved themselves unqualified to manage the process of determining their own liability fairly or efficiently. Instead, the Court should exercise its discretion and apply Rule 7023 to administer all Securities Claims on a fair, class-wide basis.

## **CONCLUSION**

Class certification is a far superior, more efficient, and more equitable case management tool than Reorganized Debtors' slanted Securities ADR proposal. This Court should apply Rule 7023 and certify a class of Plan Class 9A, 10A-II, and 10B members, with valid Claims, who purchased or otherwise acquired Debtor's publicly traded securities from April 29, 2015 through November 15, 2018.

| | | |
|---|---|---|
| 1 | Dated: November 11, 2020 | Respectfully submitted, |
| 2 | | **MICHELSON LAW GROUP** |
| 3 | | By: _/s/ Randy Michelson_<br>Randy Michelson (SBN 114095) |
| 4 | | |
| 5 | | *Local Bankruptcy Counsel to Lead Plaintiff and the Class* |
| 6 | | - and - |
| 7 | | **LABATON SUCHAROW LLP** |
| 8 | | *Lead Counsel to Lead Plaintiff and the Class* |
| 9 | | - and - |
| 10 | | **LOWENSTEIN SANDLER LLP** |
| 11 | | *Special Bankruptcy Counsel to Lead Plaintiff and the Class* |
| 12 | | - and - |
| 13 | | **WAGSTAFFE, VON LOEWENFELDT, BUSCH** |
| 14 | | **& RADWICK, LLP** |
| 15 | | *Liaison Counsel for the Class* |
| 16 | | - and - |
| 17 | | **ROBBINS GELLER RUDMAN & DOWD LLP** |
| 18 | | *Counsel for the Securities Act Plaintiffs* |
| 19 | | - and - |
| 20 | | **VANOVERBEKE, MICHAUD & TIMMONY, P.C.** |
| 21 | | |
| 22 | | *Additional Counsel for the Securities Act Plaintiffs* |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |
| 29 | | |

**EXHIBIT A**
**COUNSEL**

**LABATON SUCHAROW LLP**
Thomas A. Dubbs
Carol C. Villegas
Jeffrey A. Dubbin (SBN 287199)
140 Broadway
New York, New York 10005
Telephone  212-907-0700
tdubbs@labaton.com
cvillegas@labaton.com
jdubbin@labaton.com

*Lead Counsel to Lead Plaintiff and the Class*

**WAGSTAFFE, VON LOEWENFELDT,**
**BUSCH & RADWICK, LLP**
James M. Wagstaffe (SBN 95535)
Frank Busch (SBN 258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone  415-357-8900
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for the Class*

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin *(pro hac vice)*
Andrew Behlmann *(pro hac vice)*
Scott Cargill
Colleen Maker
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone  973-597-2500
Facsimile  973-597-2333
metkin@lowenstein.com
abehlmann@lowenstein.com
scargill@lowenstein.com
cmaker@lowenstein.com

*Special Bankruptcy Counsel to Lead Plaintiff
and the Class*

**MICHELSON LAW GROUP**
Randy Michelson, Esq. (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, CA 94104
Telephone  415-512-8600
Facsimile  415-512-8601
randy.michelson@michelsonlawgroup.com

*Local Bankruptcy Counsel to Lead Plaintiff
and the Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Darren J. Robbins (SBN 168593)
Brian E. Cochran (SBN 286202)
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone  619-231-1058
darrenr@rgrdlaw.com
bcochran@rgrdlaw.com

**VANOVERBEKE, MICHAUD &**
**TIMMONY, P.C.**
Thomas C. Michaud
79 Alfred Street
Detroit, Michigan 48201
Telephone  313-578-1200
tmichaud@vmtlaw.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
Willow E. Radcliffe (SBN 200089)
Kenneth J. Black (SBN 291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone  415-288-4545
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

*Additional Counsel for the Securities Act Claims*

# EXHIBIT B
## RESERVATION OF RIGHTS

This Notice, and any subsequent pleading, appearance, argument, claim, or suit made or filed by Lead Plaintiff, either individually or for the Class or any member thereof, do not, shall not, and shall not be deemed to:

a.     constitute a submission by Lead Plaintiff, either individually or for the Class or any member thereof, to the jurisdiction of the Bankruptcy Court;

b.     constitute consent by Lead Plaintiff, either individually or for the Class or any member thereof, to entry by the Bankruptcy Court of any final order or judgment, or any other order having the effect of a final order or judgment, in any non-core proceeding, which consent is hereby withheld unless, and solely to the extent, expressly granted in the future with respect to a specific matter or proceeding;

c.     waive any substantive or procedural rights of Lead Plaintiff or the Class or any member thereof, including but not limited to (a) the right to challenge the constitutional authority of the Bankruptcy Court to enter a final order or judgment, or any other order having the effect of a final order or judgment, on any matter; (b) the right to have final orders and judgments, and any other order having the effect of a final order or judgment, in non-core matters entered only after de novo review by a United States District Court judge; (c) the right to trial by jury in any proceedings so triable herein, in the Chapter 11 Cases, including all adversary proceedings and other related cases and proceedings (collectively, "Related Proceedings"), in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, the Chapter 11 Cases, any Related Proceedings, or the Securities Litigation; (d) the right to seek withdrawal of the bankruptcy reference by a United States District Court in any matter subject to mandatory or discretionary withdrawal; or (e) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Lead Plaintiff or the Class or any member thereof are or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved.

For the avoidance of doubt, Lead Plaintiff, on behalf of itself and the Class, does not, and will not impliedly, consent to this Court's adjudication of the claims asserted against any Non-Debtor Defendants now or hereafter named in the Securities Litigation.