| | |
|---|---|
| **LABATON SUCHAROW LLP**<br>Thomas A. Dubbs (*pro hac vice*)<br>Carol C. Villegas (*pro hac vice*)<br>Jeffrey A. Dubbin (SBN 287199)<br>140 Broadway<br>New York, New York 10005<br><br>*Lead Counsel to Lead Plaintiff and the Class* | **LOWENSTEIN SANDLER LLP**<br>Michael S. Etkin (*pro hac vice*)<br>Andrew Behlmann (*pro hac vice*)<br>Scott Cargill<br>Nicole Fulfree<br>Colleen Maker<br>One Lowenstein Drive<br>Roseland, New Jersey 07068<br><br>*Bankruptcy Counsel to Lead Plaintiff and the Class* |

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Bankruptcy Counsel to Lead Plaintiff and the Class*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | Case No. 19-30088 (DM) (Lead Case)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**DECLARATION OF ADAM D. WALTER IN SUPPORT OF SECURITIES LEAD PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION TO APPLY BANKRUPTCY RULE 7023 AND CERTIFY A LIMITED CLASS** |

Adam D. Walter hereby declares as follows, pursuant to 28 U.S.C. § 1746:

1. I am a Senior Project Manager of A.B. Data, Ltd.'s Class Action Administration Division ("**A.B. Data**"), whose Corporate Office is located in Milwaukee, Wisconsin.

2. I am providing this declaration to supplement my previous declarations and in support of Securities Lead Plaintiff's Reply in Further Support of Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class (the "7023 Motion") and to provide the Court and the parties to this proceeding additional information about the standard procedures and methods that are used to gather and process claim data and notify claimants about deficiencies in their claims in the context of the class action mechanism. *See* Lead Plaintiff's Reply in Further Support of Motion to Apply Bankuptcy Rule 7023 at 27-28   I make this declaration based on personal knowledge and, if called to testify, I could and would do so competently.

3. As noted in my previous declarations, A.B. Data has been a court-appointed administrator and has successfully implemented notification and claims administration programs in hundreds of class actions. Members of our team have administered many noteworthy securities class action settlements in recent years, including *In re AIG Securities Litigation*, No. 04 Civ. 8141 (S.D.N.Y.); *In re Countrywide Financial Corp. Securities Litigation*, No. 07 Civ. 05295 (C.D. Cal.); *In re Fannie Mae 2008 Securities Litigation*, No. 08 Civ. 7831 (S.D.N.Y.); *In re General Electric Co. Securities Litigation*, No. 09 Civ. 1951 (S.D.N.Y.); and *In re Facebook, Inc., IPO Securities & Derivative Litigation*, MDL No. 12-2389 (S.D.N.Y.).

4. I have personally overseen the administration of more than 75 securities class action settlements. Several of those settlements involved issuers that were in bankruptcy. A.B. Data has recently provided notice of a settlement to class members in connection with a bankruptcy proceeding. More information on A.B. Data's qualifications and experience can be found on our website at www.abdataclassaction.com.

5. Over the years, class action administrators have developed certain customary and well-tested procedures in securities class action settlements that have been regularly approved by courts and are designed to efficiently and effectively receive, process, and determine the calculation of losses in connection with submitted claims.

**The Reorganized Debtors Request for Information Through a Second Claim Form Is Not Standard Industry Practice**

6. I understand that in this case PG&E Corporation ("HoldCo") and Pacific Gas and Electric Company (the "Utility"), as debtors and reorganized debtors (collectively, the "Debtors" and as reorganized pursuant to the Plan, the "Reorganized Debtors") sent the Rescission or Damage Claim Proof of Claim form to potential claimants on or around March 6, 2020. At least 7000 claims were submitted pursuant to the Rescission or Damage Claim Proof of Claim form.

7. I further understand that the Reorganized Debtors are opposing the request of Lead Plaintiff to apply the class action mechanism to the resolution of thousands of claims by way of its 7023 Motion. Rather, the Reorganized Debtors now propose as part of the Securities ADR and Related Procedures for Resolving Subordinated Securities Claims to send another claim form—the PG&E Trading Information Request Form—to the approximately 7,000 claimants who already filled out a Rescission or Damage Claim Proof of Claim form.

8. The purpose of the PG&E Trading Information Request Form is to request information that the Reorganized Debtors believe is necessary to process and determine the calculation of losses, and that the Reorganized Debtors did not previously ask for in the Rescission or Damage Claim Proof of Claim form, and to request information to cure deficiencies in the information previously provided (see Dkt. 9378).

9. In my opinion, the process the Reorganized Debtors propose to obtain additional information from claimants is inconsistent with industry practice, requests duplicative information, is inefficient, and is likely to lead to a decreased response rate.

10. In a typical class action, only one claim form is sent to potential claimants. This claim form requests all of the information needed to assess and process the claim. Once the claim form is received, the claim form is processed and reviewed for any deficiencies.

11. If additional information is needed from individuals who previously submitted claim forms, a targeted approach is typically used to request *only* the required information necessary to process and determine the calculation of losses in connection with those previously submitted claims. An entirely new claim form unnecessarily increases the administrative burden and cost

by requiring the resubmitted information to be reprocessed.

12. By utilizing a targeted approach, individuals are only required to submit specific information either not previously submitted in their original claim or information that is required to cure deficiencies in their previously submitted claims. Using a targeted approach is preferable to requesting that a claimant resubmit all the information they already provided to the claims administrator—in a completely different claim form. This is because requesting submissions of entirely new claim forms decreases the response rate from individuals who previously submitted claims.

13. This type of targeted approach has been used in multiple securities settlements where the information previously requested can be used to process and determine the calculation of losses for each claim. Specifically, in previous cases such as *In re American International Group, Inc. Securities Litigation*, Master File No. 04 Civ. 8141 (DAB) (AJP), where there were multiple settlements with different defendants but the same transactional information was required, the notice and claim form provided specific instructions to individuals who previously submitted claims that they did not need to submit a new claim form. The same targeted approach described above was used to only request information necessary to complete each claim in the other settlements.

14. I have reviewed and compared the Rescission or Damage Claim Proof of Claim that PG&E sent on March 6, 2020 and the revised PG&E Trading Information Request Form. The following fields are duplicative of what PG&E already asked for:

    1) Beneficial Owner Information;

    2) Holdings of the publicly traded equity securities and/or debt securities as of the close of trading on April 28, 2015/opening of trading on April 29, 2015;

    3) Purchases and sales of publicly traded equity securities or debt securities from April 29, 2015 through November 15, 2018; and

    4) Signature Information.

15. In my opinion, it would be unnecessary and burdensome for claimants to have to re-produce the same information previously submitted. It is industry practice to have instead the

claims administrator review each claim and only request that the relevant information that is missing be submitted in order to process and determine the calculation of losses for each claim. As described in my previous declaration regarding the standard procedures for deficiency and rejection determinations, claims administrators experienced in processing securities class action claims have processes in place that quickly identify what is missing or deficient in each claim and can then prepare a targeted notice to explain the specific information needed to each individual claimant.

16. It appears, based on information provided by the Reorganized Debtors, that Compass Lexecon, at the direction of Reorganized Debtors, has reviewed a sampling of more than 2,300 proofs of claim filed by claimants to determine, in part, which deficiencies exist or what information is lacking from the claim forms which do not provide the data required to calculate Aggregate Loss for the claims. *See* Declaration of Michael A. Keable. Dkt. 8965. Thus, The Reorganized Debtors have already gone through the process of identifying deficiencies for more than 32% of the claim forms submitted. It does not make sense, nor would it be the best practice—after identifying deficiency in the claim forms—to simply send a new claim form to capture the deficient information along with duplicative information already provided.

17. Based on my experience, the best practice in the industry uses the information already provided by the claimants and for the claims administrator to seek only the information missing. The Reorganized Debtors' proposed process would, in essence, start the claims process over again and collect again extensive information it already has in its possession. In my opinion, this is not necessary given the information that the Reorganized Debtors already have. This information is substantially duplicative because it requires claimants to take the time to again provide a substantial amount of information they already gave to the Reorganized Debtors, and it is inefficient.

18. The Reorganized Debtors' procedure does not seem to allow a formal process of identifying specific deficiencies and resolving them before engaging in the Mediation Process or bringing the issue to the Court's attention. Instead, the proposal appears to allow the Reorganized Debtor to file an omnibus objection if the additional information is not provided—

which would have to be resolved by the Court. *See* Dkt. 9378 page 24. "Should the claimant fail to comply with the Reminder Deadline, upon an omnibus objection, the claimant would be afforded yet another opportunity to provide the requested information in response to the proposed objection. Should the claimant fail to appear or respond to the objection, as a practical matter, the Court could then either (i) disallow the claim, or (ii) order that the claimant had until a certain deadline to return the Trading Information Request Form, but if the claimant fails to meet the deadline, the claim will be disallowed."

19. In my experience, the industry practice is to provide a process whereby a targeted notice identifying the precise deficiency should be sent to the claimant (rather than an entirely new claim form) in order to remedy the deficiency before needing to involve the Court.

**The Timing of Securities Claim Information Procedures**

20. As discussed in my previous declaration, in typical class actions, there are standard procedures for deficiency and rejection determinations. These procedures typically take between 45 to 90 days, depending on the number of claims submitted. The time it takes to go through the deficiency procedures includes: (i) identifying the deficiencies in each claim; (ii) providing notice to those claims regarding their deficiencies; (iii) allowing time for those claims to respond with the requested information; and (iv) processing the responses.

21. The targeted approach described above reduces the time, amount of information requested from each individual, and the number of claim forms that need to be processed. It is industry practice to review claim forms and identify deficiencies. In a typical securities claim process, the time it would take to check the claim form and send out the notices of deficiency is approximately 30 days from receipt of the claim form. The deficiency notice would be mailed and would allow 20 days for claimants to respond. In this case, even assuming that all 7,000 claims contained some deficiency, a reasonable time to process the deficiencies and prepare deficiency notices would still be 30 days from receipt, and could even be less than 30 days. Thus, for approximately 7,000 claims, the process of remedying deficiencies would take approximately 50 days (and could take less time).

22. Based on the submission of the Reorganized Debtors, the PG&E Trading

Information Request Form would be sent to claimants who would have 45 days to respond. See Dkt. 9378 page 24. Should a claimant fail to return a Trading Information Request Form within 45 days, under the Procedures, the Reorganized Debtors are required to send the claimant an Information Reminder, providing an additional 14 days to respond. *Id*.

23. Thus, the Reorganized Debtors' process of sending a new claim form does not save any time, as compared to the industry practice of relying upon one claim form and following up with only the claimants who have deficiencies.

24. Additional deficiencies I identified in the PG&E Trading Information Request Form include that the new claim form does not make abundantly clear that an entirely new claim form needs to be submitted with all new and duplicative information already submitted, nor does it identify why duplicative information needs to be submitted. In my opinion, individuals receiving a new claim form for the same case that does not sufficiently explain the reason why they are receiving a new claim form or explain that duplicative information needs to be resubmitted would result in confusion and reduce the number of people responding, from the burden of having to provide the same information all over again or assuming they previously submitted the requested information.

25. I also understand that the Reorganized Debtors stated that this information would need to be collected even if the Court elected to use the Class Action process. Dkt. 9375 at 23. While it is true that the information sought is needed, there is a significant difference in the processes described. The main difference is that the process proposed by Lead Plaintiff would not start at the beginning with a new claim form. What is missing can be ascertained and obtained quickly, and the claims response will likely be higher if each claimant does not need to resubmit every piece of data, all over again.

26. In my experience, the reasonable and customary procedures that I outlined here— and would be employed if the Court grants the Rule 7023 motion to certify the class—have proven highly effective with respect to ensuring the receipt, processing, and correct calculation of claims for financial losses.

**Plan of Allocation**

27. I have been asked to assume that a Plan of Allocation ("POA") will be determined by the parties in this action should they be allowed to proceed as a certified class as requested in the 7023 Motion and the securities claims are resolved on a class wide basis. The POA will identify the mathematical inputs needed to determine the recovery amount for each allowed claim based on the purchase dates of the shares and corresponding to the calculated dollar losses for nine, separate, loss event dates. It is my understanding that a standard set of calculations will be applied to all claims in a manner that, in combination with an algorithm already approved by the Bankruptcy Court, will be used to convert dollar damages to shares of PG&E stock. As a result, the claimants will receive a distribution by the same, uniform process and in the same time frame. These calculations will be easy to apply to determine the claim amount and are typical of the types of calculations claims administrator provide.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11 day of November, 2020.

_____
Adam D. Walter