CAROLINE R. DJANG, Bar No. 216313
caroline.djang@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue, Suite 1000
Irvine, CA 92612
Telephone: (949) 263-2600
Facsimile: (949) 260-0972

SCOTT W. DITFURTH, Bar No. 238127
scott.ditfurth@bbklaw.com
ALLEN HO, Bar No. 318187
allen.ho@bbklaw.com
BEST BEST & KRIEGER LLP
3390 University Avenue, 5th Floor
P.O. Box 1028
Riverside, CA 92502
Telephone: (951) 686-1450
Facsimile: (951) 686-3083

Attorneys for Plaintiff
CITY OF LAFAYETTE

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS AND ELECTRONIC COMPANY,<br><br>Debtors, | Case No. 19-30088 (DM)<br>(Lead Case – Jointly Administered)<br><br>Chapter: 11<br><br>Adv. Case No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT AND INJUNCTIVE RELIEF** |
| CITY OF LAFAYETTE, a municipal corporation,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC GAS AND ELECTRONIC COMPANY,<br><br>Defendant. | |

Plaintiff CITY OF LAFAYETTE ("**Plaintiff**"), by and through its attorneys of record, Best Best & Krieger LLP, hereby alleges as follows:

## I.
## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (I), (J), and (O). In the event that it should be determined that this matter is not one over which the bankruptcy court can enter a final order, Plaintiff consents to the entry of a final order with respect to, and solely to the extent of, the requests for relief set forth herein.

## II.
## PARTIES

4. Plaintiff City of Lafayette is a municipal corporation located in the County of Contra Costa, State of California.

5. Defendant and Debtor Pacific Gas and Electric Company ("**Defendant**") is a California corporation, and an electricity and natural gas utility operating in northern and central California.

## III.
## BACKGROUND FACTS

**A.** **Defendant Identifies Trees Near Its Facilities For Removal**

6. Defendant operates natural gas pipeline facilities located throughout the state of California. Many of Defendant's pipeline facilities are located within utility easements on both private land or within public rights of way adjoining private property.

7. In or around 2012, Defendant implemented its Community Pipeline Safety Initiative ("**CPSI**"), which required it to review its gas transmission pipeline facilities to identify and remove structures and trees for safety purposes. The CPSI led Defendant to review trees located within 14 feet of its gas pipelines to determine the level of risk presented by such trees, and Defendant's response to mitigate any such risks.

-2-

COMPLAINT FOR BREACH OF CONTRACT AND INJUNCTIVE RELIEF

25589.10032\33463725.2

8. In or around 2014, Defendant identified 1,000 trees near its natural gas pipelines for removal located within Plaintiff's jurisdiction. Of that 1,000, the number of trees currently at issue in the dispute between Plaintiff and Defendant totals 272.

9. Chapter 6-17 of the Lafayette Municipal Code ("**LMC**") sets forth Plaintiff's Tree Protection Regulations ("**Tree Regulations**").

10. Defendant approached Plaintiff expressing its desire and intent to remove the 272 trees located within Plaintiff's city limits. In the course of its discussions with Plaintiff regarding the tree removal project ("**Project**"), Defendant expressed a belief that the Tree Regulations' application to trees located within Defendant's utility franchises could potentially be preempted by the California Public Utilities Commission's ("**CPUC**") exclusive jurisdiction over public utility tree removal for safety purposes. However, Plaintiff disputed CPUC's express preemption authority with regards to tree removal around natural gas pipelines.

11. Plaintiff and Defendant continued to engage in good faith negotiations regarding the Project from 2014 through 2017, culminating in a written agreement between the two to allow Defendant to remove the 272 trees ("**TRA**"), wherein Defendant would voluntarily comply with select requirements of the Tree Regulations.

12. Plaintiff's City Council considered and approved the TRA at a public meeting on March 27, 2017. The TRA was fully executed between Plaintiff and Defendant as of April 26, 2017. A true and correct copy of the TRA is attached hereto as **Exhibit A**.

13. Under the TRA, Defendant was required to seek approval and pay all mitigation fees for the Project's tree removal, pursuant to the Tree Regulations. In exchange, Plaintiff would process Defendant's tree removal requests under section 6-1705(b)(5) of the LMC, which authorizes Plaintiff to grant an exception to the Tree Regulations' procedural requirements where "the city must remove a protected tree to protect the health, safety and general welfare of the community." (LMC §§ 6-1705(a), (b)(5).) Under that exception, Defendant could proceed with the Project without undergoing the entire permitting process for each tree it intended to remove.

14. To be clear, while the TRA eliminates certain procedural requirements for Defendant to receive approval from Plaintiff for tree removal, Defendant is not excused from the

permitting process entirely.  Specifically, the TRA sets forth that Plaintiff "is willing to process PG&E's application to remove certain trees under Lafayette Municipal Code section 6-1705(b)(5) on the condition that PG&E provides all information required by the City's Tree Protection Regulations, pays all in-lieu mitigation fees for removed trees and otherwise complies with the terms and conditions of this [TRA]." (Exhibit A, p. 1.)  Moreover, Defendant "shall secure any and all ministerial approvals, permits, and documents required to perform any work contemplated under this [TRA], including encroachment permits, at PG&E's sole cost and expense." (*Id.*)

B. **Save Lafayette Trees Files Suit To Challenge the TRA**

15. On June 26, 2017, citizens group Save Lafayette Trees ("**SLT**") sued Plaintiff and named Defendant as a real party in interest, seeking to challenge the TRA, *Contra Costa Superior Court Case No. CIVMSN 17-1142*.  Through its lawsuit, SLT alleged that the TRA violated the California Environmental Quality Act ("**CEQA**"), the California State Planning and Zoning Law, Plaintiff's General Plan, and the Tree Regulations.

16. Defendant filed a demurrer to SLT's entire petition and complaint, which was sustained by the trial court without leave to amend.  SLT appealed the demurrer ruling to the First Appellate District Court of Appeal, which affirmed the trial court's ruling as to all claims except SLT's CEQA claim.

17. In or around February 2019, the SLT lawsuit was automatically stayed following the filing of Defendant's Chapter 11 case.

18. The automatic stay terminated in July 2020, since which time the First Appellate District Court of Appeal has not issued a remittitur for the SLT lawsuit.  Instead, the Court of Appeal has requested briefs addressing whether and how pending and unresolved bankruptcy issues, in particular Defendant's attempts to reject the TRA, affect the SLT lawsuit and appeal.

C. **Defendant Files Its Chapter 11 Case**

19. On January 29, 2019 ("**Petition Date**"), Defendant filed its Chapter 11 petition in this Court.  Prior to July 1, 2020 ("**Effective Date**"), Defendant operated its business and managed its properties as a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

Case: 19-30088    Doc# 9517    Filed: 11/13/20    Entered: 11/13/20 14:30:29    Page 4 of 15
25589.10032\33463725.2

20. On June 20, 2020, this Court entered its Order confirming the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated June 19, 2020* [Main Case Dkt. Nos. 8048, 8053] ("**Chapter 11 Plan**"). Pursuant to its terms, the Chapter 11 Plan became effective on the Effective Date.

21. In connection with its Chapter 11 Plan, Defendant moved to reject the TRA as an executory contract under 11 U.S.C. § 365 [Main Case Dkt. No. 7037].

22. Plaintiff filed an objection to Defendant's proposed rejection of the TRA, on the grounds that it is not an executory contract eligible for rejection, and that Defendant may not use the bankruptcy rejection procedures to skirt the Tree Regulations [Main Case Dkt. No. 7269] ("**Objection**").

23. No hearing on the Objection has been set as of the time of the filing of this Complaint. The Objection is pending and has yet to be ruled upon by this Court.

24. Instead, on October 30, 2020, Defendant filed a Complaint, which initiated an adversary proceeding in this Court, seeking rescission of the TRA, rejection of the TRA, determination of Defendant's claim, and declaratory relief as to such [Adv. No. 20-03122, Dkt. No. 1] (the "**Adversary Proceeding**").

**D.  Defendant Informs Plaintiff It Intends To Unilaterally Proceed With Tree Removal**

25. On or about November 10, 2020, Defendant issued correspondence to Plaintiff announcing its intent to proceed with the Project. Specifically, Defendant stated its intent to remove at least 17 trees,[1] "**the week of November 16**" without Plaintiff's approval or otherwise complying with the submission and reporting requirements of the TRA. A true and correct copy of Defendant's correspondence announcing its plans to proceed with tree removal is attached hereto as **Exhibit B**.

26. Defendant announced its intent to disregard the requirements of the TRA upon less than one week's notice, and despite knowing that Plaintiff's Objection had yet to be ruled upon by this Court, and prior to the pleadings becoming at issue in the Adversary Proceeding.

---

[1] Plaintiff is informed and believes that Defendant has taken the position these 17 trees are not subject to Plaintiff's Tree Protection Ordinance. However, the removal of the trees would clearly violate the TRA.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

25589.10032\33463725.2

Case: 19-30088　Doc# 9517　Filed: 11/13/20　Entered: 11/13/20 14:30:29　Page 5 of 15

27. Plaintiff has a substantial interest in seeing that the state and local health and safety laws regulating tree removal are enforced against Defendant, as a public entity concerned for the health and safety of its residents.

28. Plaintiff now brings this action against Defendant for injunctive relief in part to ensure that the *status quo* is maintained, such that all 272 trees identified for Defendant's tree removal Project, located within Plaintiff's jurisdiction and governed by the TRA, are preserved and maintained as-is, during the period of time in which either: (i) the Adversary Proceeding is fully adjudicated in Defendant's favor; or (ii) takes appropriate action to comply with the TRA.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

29. Plaintiff realleges and incorporates by reference each of the preceding paragraphs, as if set forth in full herein.

30. Plaintiff and Defendant entered into the TRA, which constitutes a valid and enforceable written agreement, fully executed between Plaintiff and Defendant as of April 26, 2017. (*See* Exhibit A.)

31. Through the TRA, Defendant agreed to comply with certain information reporting and fee requirements of Plaintiff's Tree Regulations with regards to its Project. In exchange, Defendant would process each tree removal application under the exception provided for under LMC section 6-1705(b)(5).

32. To the extent possible, Plaintiff performed all conditions, covenants, and promises required of it under the terms of the TRA, insofar as Defendant has not actually complied with the TRA's information reporting requirements and given Plaintiff any opportunity to process any tree removal applications.

33. Defendant breached the contract by unilaterally announcing its intent to remove 17 trees for its Project without first applying for tree removal with Plaintiff or reporting required information all of which the TRA requires.

34. Plaintiff has requested that Defendant comply with the TRA's tree removal application requirements before proceeding with its intended tree removal, but Defendant failed

and refused, and continues to fail and refuse to do so. Moreover, Defendant has moved to reject the TRA, and has separately filed suit with this Court seeking rescission of the TRA.

35. Should Defendant proceed with its intended tree removal, Plaintiff stands to suffer direct and proximate harm in that 17 trees within Plaintiff's jurisdiction would be permanently removed in violation of the TRA.

**WHEREFORE**, Plaintiff seeks relief as hereafter set forth.

## SECOND CLAIM FOR RELIEF

### (Injunctive Relief – Maintain *Status quo*)

36. Plaintiff realleges and incorporates by reference each of the preceding paragraphs, as if set forth in full herein.

37. Plaintiff and Defendant entered into the TRA on April 26, 2017. Before Defendant could start any work on the Project pursuant to the TRA, SLT filed its intervening lawsuit challenging the TRA on June 26, 2017.

38. Subsequently, Defendant filed its Chapter 11 case on January 29, 2019, for reasons unrelated to the Project. Since the initiation of its bankruptcy case, Defendant operated its business and managed its properties as a debtor in possession until the Effective Date, upon which the Chapter 11 Plan went effective.

39. In association with the Chapter 11 Plan, Defendant moved to reject the TRA. In response, Plaintiff filed its Objection, the status of which is pending before this Court.

40. Accordingly, the *status quo* is that no work on Defendant's tree removal Project in Plaintiff's jurisdiction has proceeded to date.

41. Defendant has stated its intent to proceed with the Project by removing 17 trees located in Plaintiff's jurisdiction, without first complying with the requirements set forth in the TRA for Defendant to apply for tree removal by providing information to Plaintiff.

42. Defendant has already initiated the Adversary Proceeding in this Court seeking rescission and/or rejection of the TRA and determination of Plaintiff's claim. The Adversary Proceeding should be adjudicated, and the Court should be given the opportunity to determine the merits and rule on the TRA and the Objection, before the *status quo* is disrupted.

43. Defendant's acts would be a violation of the TRA and the LMC, and cause grave and irreparable harm to Plaintiff in that 17 trees within Plaintiff's jurisdiction would be permanently removed in violation of the LMC. The impact of the removal, and need to preserve the *status quo*, is greatly heightened due to the fact that tree removal is irreversible, rendering post-removal determination of this dispute meaningless.

44. On the other hand, the effects of maintaining the *status quo* on Defendant are minimal, if any. The trees contemplated in the Project have existed before they were identified in Defendant's CPSI survey, and were first flagged for removal in 2017. Since that time, they have remained in place throughout the course of the TRA negotiations, the SLT lawsuit, and Defendant's bankruptcy case without causing harm to Defendant. Defendant has failed to articulate any pressing or time-sensitive need to remove the trees **on less than one week's notice.**

45. There is a strong public interest in seeing that the state and local health and safety laws regulating tree removal are enforced against Defendant, as a public entity concerned for the health and safety of its residents.

46. Plaintiff seeks, and under the circumstances is entitled to, injunctive relief to maintain the *status quo* with regards to trees identified for removal for the Project, and to ensure that Defendant takes no further action with regards to tree removal within Plaintiff's jurisdiction.

**WHEREFORE**, Plaintiff seeks relief as hereafter set forth.

## PRAYER FOR RELIEF

A. For compensatory damages in an amount to be proven at trial;

B. For an order preserving the *status quo*, such that Defendant will not proceed with removal of any tree located within Plaintiff's jurisdiction for purposes of the Project, until such a time that the merits of this lawsuit and Defendant's separate adversary proceeding seeking rescission and rejection of the TRA have been resolved; and

/ / /

/ / /

/ / /

/ / /

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

25589.10032\33463725.2

Case: 19-30088    Doc# 9517    Filed: 11/13/20    Entered: 11/13/20 14:30:29    Page 8 of 15

C. For such other and further relief as the Court deems just and proper.

Dated: November 13, 2020          BEST BEST & KRIEGER LLP


                                  By:/s/Caroline R. Djang
                                     CAROLINE R. DJANG
                                     SCOTT W. DITFURTH
                                     ALLEN HO
                                     Attorneys for Plaintiff
                                     CITY OF LAFAYETTE

# EXHIBIT A

JANUARY 23, 2017

Pacific Gas and Electric Company
Angus Coyle
Director, Gas Operations Programs
Pacific Gas and Electric Company
6121 Bollinger Canyon Rd
San Ramon, CA 94583
Stewart.Coyle@pge.com

Dear Mr. Coyle:

Letter Agreement for Tree Removal

This letter shall be our Agreement ("Letter Agreement") regarding the removal of trees in the City of Lafayette ("City") by and between Pacific Gas and Electric Company ("PG&E") and the City.

PG&E is conducting a community pipeline safety initiative to ensure that first responders and safety crews have immediate access to their pipelines in an emergency and to ensure that their pipelines are not being damaged. PG&E has warranted that tree roots may cause damage to pipes by exposing them to corrosion. In an effort to prevent this potential damage, PG&E is proposing to remove a number of trees within the City.

PG&E and City disagree regarding whether PG&E is required to obtain a discretionary permit under the provisions of the City's Tree Protection Regulations, codified at Chapter 6-17 of the Lafayette Municipal Code. In an effort to ensure that the community pipeline safety initiative may proceed and to protect the protect the health, safety and general welfare of the community, City is willing to process PG&E's application to remove certain trees under Lafayette Municipal Code section 6-1705(b)(5) on the condition that PG&E provides all information required by the City's Tree Protection Regulations, pays all in-lieu mitigation fees for removed trees and otherwise complies with the terms and conditions of this Letter Agreement.

PG&E hereby agrees to pay the mitigation required by the City's Tree Protection Regulations, codified at Chapter 6-17 of the Lafayette Municipal Code, as a condition of removing trees within the City. PG&E shall secure any and all ministerial approvals, permits, and documents required to perform any work contemplated under this Letter Agreement, including encroachment permits, at PG&E's sole cost and expense. PG&E shall provide all information required by the City's Tree Protection Regulations in the form specified by City staff.

PG&E and City recognize and agree that the parties disagree about whether PG&E is subject to the Tree Protection Regulations. The City is willing to process community pipeline safety initiative under Lafayette Municipal Code section 6-1705(b)(5) given the clear public safety implications of the community pipeline safety initiative. However, PG&E understands and agrees that City may insist that PG&E comply with all applicable provisions of the Tree Protection Regulations for future projects.

PG&E shall not assign any of its rights nor transfer any of its obligations under this Letter Agreement without the prior written consent of the City. Any attempt to so assign or so transfer without such consent shall be void and without legal effect and shall constitute grounds for termination. All representations, covenants and warranties set forth in this Letter Agreement, by or on behalf of, or for the benefit of any or all of the parties hereto, shall be binding upon and inure to the benefit of such party, its successors and assigns.

This Letter Agreement shall be governed by the laws of the State of California. Venue shall be in Contra Costa County.

January 23, 2017
Page 2 of 2

No waiver of any default under this Letter Agreement shall constitute a waiver of any other default or breach, whether of the same or other covenant or condition. No waiver, benefit, privilege, or service voluntarily given or performed by a party shall give the other party any contractual rights by custom, estoppel or otherwise.

There are no intended third party beneficiaries of any right or obligation assumed by the parties.

If any portion of this Letter Agreement is declared invalid, illegal, or otherwise unenforceable by a court of competent jurisdiction, the remaining provisions shall continue in full force and effect.

The parties shall fully cooperate with one another, and shall take any additional acts or sign any additional documents as may be necessary, appropriate or convenient to attain the purposes of this Letter Agreement.

| CITY OF LAFAYETTE | PACIFIC GAS AND ELECTRIC COMPANY |
|---|---|
| *Approved By:* | |
| [signature] | _____ |
| | Signature |
| Steven Falk | |
| City Manager | |
| | _____ |
| 3·28·17 | Name |
| Date | |
| | _____ |
| | Title |
| | |
| | _____ |
| | Date |

January 23, 2017
Page 2 of 2

No waiver of any default under this Letter Agreement shall constitute a waiver of any other default or breach, whether of the same or other covenant or condition. No waiver, benefit, privilege, or service voluntarily given or performed by a party shall give the other party any contractual rights by custom, estoppel or otherwise.

There are no intended third party beneficiaries of any right or obligation assumed by the parties.

If any portion of this Letter Agreement is declared invalid, illegal, or otherwise unenforceable by a court of competent jurisdiction, the remaining provisions shall continue in full force and effect.

The parties shall fully cooperate with one another, and shall take any additional acts or sign any additional documents as may be necessary, appropriate or convenient to attain the purposes of this Letter Agreement.

**CITY OF LAFAYETTE**
*Approved By:*

_____
Steven Falk
City Manager

_____
Date

**PACIFIC GAS AND ELECTRIC COMPANY**

*Angus Coyle*
Signature

ANGUS COYLE
Name

DIRECTOR
Title

4/26/17
Date

# **EXHIBIT B**

From: Nushwat, Marvin <MxNk@pge.com>
Sent: Tuesday, November 10, 2020 11:30 AM
To: Wolff, Greg <GWolff@ci.lafayette.ca.us>; Srivatsa, Niroop <NSrivatsa@ci.lafayette.ca.us>
Cc: Guarino, Thomas <TGG3@pge.com>; Vejar, Joseph <JRVE@pge.com>; Keller, Michael <MNK6@pge.com>; Baker, Vic <VGB1@pge.com>; Jorgensen, Valery <VXJS@pge.com>
Subject: Upcoming PG&E Gas Safety Tree Work

Hi Greg,

I am reaching out to provide you with an update regarding PG&E's gas safety work.

As part of PG&E's Community Pipeline Safety Initiative, we identified 17 trees on EBRPD property within the City of Lafayette that are located too close to the gas transmission pipeline and need to be removed for safety reasons. This work is scheduled to begin the week of November 16 along the Lafayette-Moraga Regional Trail and in the open space north of downtown Lafayette. We anticipate work to take approximately three weeks to complete. We have coordinated with EBRPD and received the necessary permit for this work.

It is important to us that Lafayette residents near the work locations are informed of this gas safety project. Prior to beginning work, we will notify residents in the area through signage on the trails and automated phone calls. In addition, we ask that you please continue to keep city staff and your City Council informed as necessary.

Please let me know if you have any questions.

Thank you,
Marvin

**Marvin Nushwat** | Public Affairs | Pacific Gas and Electric Company | 6111 Bollinger Canyon Rd, San Ramon CA, 94583 | Office (925) 328-5964 |
marvin.nushwat@pge.com

**CAUTION: This email has been originated outside the organization.**