WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
Fax: (415) 636-9251

*Attorneys for the Debtors and
Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Chapter 11 Case No. 19-30088 (DM)<br>(Lead Case)<br>(Jointly Administered)<br><br>**REORGANIZED DEBTORS' OBJECTION TO SECURITIES LEAD PLAINTIFF'S MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 503(B)(3)(D) AND 503(B)(4) FOR ALLOWANCE AND PAYMENT OF FEES AND EXPENSES**<br><br>**Related Docket No. 8950** |

# **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ...................................................................................1

II. ARGUMENT ...........................................................................................................5

    A.    Section 503(b) Strictly Limits Compensation to Extraordinary Actions That Directly Provide Significant and Tangible Benefits to Creditors or the Estates as a Whole .................................................................................................5

    B.    PERA's Actions in the Chapter 11 Cases Benefitted Only Itself and the Putative Class in the Securities Action ...................................................................8

    C.    PERA's Opposition to the 105(a) Actions and the TCC Derivative Standing Motion Was Designed to Protect PERA's Claims in the Securities Litigation at A Cost to the Debtors' Estates ....................................................................9

    D.    PERA's Unsuccessful Efforts to Obtain Class Certification Did Not Enhance Recoveries to *All* Creditors as Required Under Section 503(b) ......................13

    E.    PERA's Objections to Plan Confirmation, Which Did Not Result in Additional Funds Becoming Available for the Debtors' Estates or Other Parties in Interest, Were Not Extraordinary .......................................................16

III. ANY CLAIM FOR SUBSTANTIAL CONTRIBUTION SHOULD BE SUBJECT TO REVIEW BY THE FEE EXAMINER .................................................................19

IV. CONCLUSION..........................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 1250 Oceanside Partners*,
   519 B.R. 802 (Bankr. D. Haw. 2014) ...................................................................6, 18

*Baker Botts L.L.P. v. ASARCO LLC*,
   576 U.S. 121 (2015)..........................................................................................11

*In re Catalina Spa & R.V. Resort, Ltd.*,
   97 B.R. 13 (Bankr. S.D. Cal. 1989) ...............................................................7, 8

*Cellular 101, Inc. v. Channel Commc'ns, Inc. (In re Cellular 101, Inc.)*,
   377 F.3d 1092 (9th Cir. 2004) ........................................................................5, 18

*Matter of Consolidated Bancshares, Inc.*,
   785 F.2d 1249 (5th Cir. 1986) ..............................................................................9

*In re D.W.G.K. Rests., Inc.*,
   84 B.R. 684 (Bankr. S.D. Cal. 1988) ...................................................................7

*Derivative Plaintiffs v. Columbia Gas Sys. (In re Columbia Gas Sys.)*,
   2000 WL 1456298 (D. Del. Sept. 20, 2000)................................................12, 15

*In re Energy Future Holdings Corp.*,
   593 B.R. 217 (Bankr. D. Del. 2018) ...................................................................21

*In re Garcia*,
   2016 WL 7324153 (Bankr. E.D. Cal. Dec. 14, 2016)................................. *passim*

*In re Gen. Oil Distributors, Inc.*,
   51 B.R. 794 (Bankr. E.D.N.Y. 1985)....................................................................9

*Goldstein, Horner & Horner v. White Mountain Communities Hosp., Inc. (In re White Mountain Communities Hosp., Inc.)*,
   2006 WL 6811025 (B.A.P. 9th Cir. Mar. 21, 2006)................................... *passim*

*In re Granite Partners*,
   213 B.R. 440 (Bankr. S.D.N.Y. 1997) ...............................................................11

*In re Lab. Skin Care, Inc.*,
   2014 WL 1312368 (Bankr. N.D. Cal. Mar. 28, 2014)........................................18

*Mosier v. Kupetz (In re United Educ. & Software)*,
   2005 WL 6960237 (B.A.P. 9th Cir. Oct. 7, 2005).................................................6

*N. Sports, Inc. v. Knupfer (In re Wind N' Wave)*,
   509 F.3d 938 (9th Cir. 2007) ..............................................................................19

*O'Halloran v. Lyon (In re Mortgs. Ltd.),*
   2010 WL 6259981 (B.A.P. 9th Cir. Aug. 4, 2010) .................................................6, 7

*In re Pac. Gas & Elec. Co.,*
   Case No. 01-30923, 2005 BL 6084 (Bankr. N.D. Cal. Apr. 28, 2005) ..............................2, 9, 12

*In re RS Legacy Corp.,*
   2016 WL 1084400 (Bankr. D. Del. Mar. 17, 2016)........................................12, 15, 16

*In re Standard Metals Corp.,*
   105 B.R. 625 (Bankr. D. Colo. 1989) ..........................................................12, 15, 17

*In re U.S. Lines, Inc.,*
   103 B.R. 427 (Bankr. S.D.N.Y. 1989), aff'd, 1991 WL 67464 (S.D.N.Y. Apr. 22, 1991) ...........9

*In re Woodhall,*
   141 B.R. 700 (Bankr. D. Ariz. 1992)..............................................................7

**Statutes**

11 U.S.C. § 330.........................................................................................21, 22

11 U.S.C. § 503(b)(4)............................................................................ *passim*

**Other Authorities**

4 *Collier on Bankruptcy* ¶ 503.10[5][a] (16th ed. 2020) ..........................................6

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Objection (the "**Objection**") to the *Securities Lead Plaintiff's Motion Pursuant to Bankruptcy Code Sections 503(b)(3)(D) and 503(b)(4) for Allowance and Payment of Fees and Expenses* [Docket No. 8950] (the "**Motion**"), filed by the Public Employees Retirement Association of New Mexico ("**PERA**").[1]

## I. PRELIMINARY STATEMENT

In direct contravention of applicable authority, PERA asks this Court to award it over $4 million in attorneys' fees for actions that were singularly designed to benefit its discrete, parochial interests.[2] Ironically, PERA argues that its counsel's repeated efforts to delay the progress of the Chapter 11 Cases and object to Plan confirmation, which were focused on maximizing PERA's ability to prosecute its claims and causes of action, deserve to be singled out as extraordinary actions that provided a substantial contribution to all other parties in interest. PERA, however, cannot satisfy its heavy burden under section 503(b) of the Bankruptcy Code of demonstrating that its actions actually conveyed substantial benefit to the Debtors' estates and all creditors and parties in interest, as a whole.

PERA's actions did not benefit the estates or its creditors; indeed, nothing done by PERA during these cases has made the estates more valuable for creditors as a whole. Instead, PERA, as admitted lead counsel for a putative class of securities holders in a separate action (the "**Putative Class**"), engaged in actions designed solely to benefit itself in an attempt to better the position of the plaintiffs in that separate federal class action. PERA makes no bones about it; it repeatedly has

---

[1] Capitalized terms used but not herein defined shall have the meanings ascribed to such terms in the Motion or the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (as it may be amended, modified, or supplemented and together with any exhibits or schedules thereto, the "**Plan**"), as applicable. All references to page numbers are to the page numbers inserted by the Court's electronic filing system.

[2] *See Reorganized Debtors' Objection to Securities Lead Plaintiff's Renewed Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class* [Docket No. 9375] at 23-29 (demonstrating how PERA's interests and the interests of the Subordinated Securities Claimants in the Chapter 11 Cases are not coextensive).

told this Court that it has fiduciary duties to the Putative Class in the federal class action and has sought to champion those interests by appearing in these cases. In denying a similar request for substantial contribution that was filed by the City of Palo Alto in the Utility's prior 2001 chapter 11 case, this Court stated:

> Despite the tenacious advocacy of [movant's] counsel throughout this case, and the commendable efforts on his part to protect his client's interest, the complexity of this case makes it all the more difficult to single out any particular party whose contribution can be said to be "substantial" within the meaning of section 503(b) and the case law that has interpreted it. The court has little doubt that counsel's contribution to his client's interest was substantial; it cannot say that [movant] stands out as having made a substantial contribution to the case or produced substantial benefits to the estate.

*In re Pac. Gas & Elec. Co.*, Case No. 01-30923, 2005 BL 6084, at *5 (Bankr. N.D. Cal. Apr. 28, 2005) [Docket No. 16030]. This quote applies equally to PERA's request for substantial contribution here.

As the Court is well aware, these Chapter 11 Cases were incredibly complex, made even more so by the unique time pressures presented by the statutory deadline imposed under A.B. 1054. The Plan that was ultimately confirmed embodied a comprehensive, largely consensual, restructuring of the Debtors that fairly and equitably addresses all Fire Claims, other prepetition claims and equity interests, allows the Utility to timely access the Go-Forward Wildfire Fund, complies with A.B. 1054, maximizes value for all parties in interest, and ensures that the Utility is positioned to deliver safe and reliable service to its customers.

This remarkable achievement was the culmination of more than sixteen months of arm's length and good faith negotiations among the Debtors and a substantial number of critical parties and constituencies, including, the TCC, as the fiduciary for all Fire Victim Claimants in these Chapter 11 Cases, the other Fire Victim professionals, the Ad Hoc Subrogation Group, the Public Entities, the Shareholder Proponents, the Ad Hoc Noteholder Committee, the Governor's Office, the CPUC, the various other State and Federal Agencies that participated in the cases, and, of course, the invaluable assistance of this Court and former Bankruptcy Judge Newsome. It was only as a

result of the collective efforts of all of these parties that the Debtors were able to confirm their Plan in time to meet the June 30, 2020 A.B. 1054 deadline.

PERA's efforts, on the other hand, were motivated solely by self-interest. Even PERA admits, as it must, that its actions were "intended to, and in fact did, benefit all members of the [Securities Litigation] Class." Motion at 26. Ninth Circuit law, however, makes clear that a creditor's efforts, even substantial efforts, to improve its own position or the position of those similarly situated is insufficient to constitute a substantial contribution claim. Rather, a substantial contribution is one that sees benefits inure to the estate and its creditors as a whole. *See e.g. Goldstein, Horner & Horner v. White Mountain Communities Hosp., Inc. (In re White Mountain Communities Hosp., Inc.)*, 2006 WL 6811025, at *6 (B.A.P. 9th Cir. Mar. 21, 2006) ("Substantial contribution requires contribution which provides tangible benefits to the bankruptcy estate and the other unsecured creditors…Extensive participation alone does not warrant an award of fees as an administrative claim.").

Nowhere in the Motion is there *any* indication of a beneficiary of PERA's efforts other than PERA and certain other members of the putative federal class action. For example, PERA's defense of the 105(a) Actions and the TCC Derivative Standing Motion (each as defined below) clearly were efforts by PERA solely to preserve its claims and causes of action against the non-debtor defendants in the Securities Litigation (defined below). Put differently, the relief sought by PERA in connection with the 105(a) Actions and the TCC Derivative Standing Motion could never have had any positive impact on anyone other than the plaintiffs in the Securities Litigation. In fact, as PERA admits, its actions with respect to these matters actually *burdened* the estates with additional fees and expenses rather than enhance them. *See* Motion at 10. Such actions cannot constitute a substantial contribution.

Similarly, the unsuccessful relief sought by PERA in the Original 7023 Motion (as defined below) solely was for the benefit of PERA (and its counsel in the form of potential contingency fees), and, according to PERA, potentially certain holders of subordinated securities claims (the "**Subordinated Securities Claimants**"). But as the Court is well aware, PERA lost its Original 7023 Motion. The Court denied the Original 7023 Motion and instead determined – over PERA's

objection – to extend the deadline for Subordinated Securities Claimants to file claims against the estates. PERA now seeks to take credit for the Court's decision to extend the bar date notwithstanding that PERA never sought such relief and strenuously ***objected*** to and continues to object to such relief through its appeal to the District Court and its Renewed 7023 Motion (as defined below), forcing the Reorganized Debtors to continue to incur costs opposing PERA's appeal of that decision (as well as PERA's appeal of the Confirmation Order). *See Securities Lead Plaintiff's Supplemental Brief in Support of Motion to Apply Bankruptcy Rule 7023 to Class Proofs of Claim* dated February 14, 2020 [Docket No.5786], at 2 (arguing that an extension of the bar date would create "substantial administrative burdens, costs, and delays"); see *Notice of Appeal and Statement of Election to Have Appeal Heard By District Court* dated March 6, 2020 [Docket No. 6135] (appealing Bankruptcy Court decision to extend bar date). In addition, the fact that PERA objected to confirmation of the Plan and then later resolved some (but not all) of its objections does not warrant a finding of substantial contribution. Importantly, the sole reason Class 10A-II (HoldCo Recession and Damage Claims) did not accept the Plan was that a disgruntled shareholder having a large liquidated (but unsubstantiated) claim, and having nothing to do with PERA, voted against the Plan. In any event, there is no evidence to suggest that, but for the settled resolution of PERA's objections, the Plan would not or could not have been confirmed.

In contrast to PERA, many of the other constituencies identified above served as plan proponents, exit financing and capital providers, and/or agreed to settle or resolve their claims at substantial discounts or with modified treatment under the Plan that, among other things: (i) enhanced or allowed for recoveries to other unsecured creditor classes or stakeholders; (ii) avoided costly, lengthy, and uncertain litigation, including litigation relating to the estimation of approximately 80,000 Fire Victim Claims and Subrogation Wildfire Claims; and (iii) benefited the estates and the administration of the Chapter 11 Cases as a whole. The same cannot be said of PERA.

Finally, there is also no basis to saddle the estates with the burden of paying PERA's legal fees and expenses because, PERA has a proper source from which to recover amounts expended to further the Securities Litigation. Should PERA be successful in its efforts in the Securities

Litigation, PERA and its attorneys will be able to apply to the District Court for a fee award for all of the work expended in furtherance of its fiduciary duties on behalf of the Putative Class in that action. There is no basis or reason to burden the estates with these costs. By its Motion, PERA is merely seeking to remove the "contingency" from its attorneys' "contingency fee arrangement" in the Securities Litigation. This is not appropriate and the Court should leave PERA's fees to the District Court rather than burden the Reorganized Debtors with those fees.

PERA certainly was entitled to, and did, vigorously pursue its own interests and the interests of the Putative Class members in the federal class action. However, those actions did *not* benefit the administration of these Chapter 11 Cases or the estates as a whole. Accordingly, the Motion should be denied.[3]

## II. ARGUMENT

### A. Section 503(b) Strictly Limits Compensation to Extraordinary Actions That Directly Provide Significant and Tangible Benefits to Creditors or the Estates as a Whole

Section 503(b)(3)(D) of the Bankruptcy Code grants administrative expense priority to expenses incurred by "a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders . . . in making a substantial contribution in a case" under chapter 9 or 11. 11 U.S.C. § 503(b)(3)(D). Section 503(b)(4) similarly grants administrative expense priority for "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant." 11 U.S.C. § 503(b)(4).

In the Ninth Circuit, "the principal test of substantial contribution is the extent of benefit to the estate." *Cellular 101, Inc. v. Channel Commc'ns, Inc. (In re Cellular 101, Inc.)*, 377 F.3d 1092, 1096 (9th Cir. 2004) (internal quotation marks omitted); *In re 1250 Oceanside Partners*, 519 B.R.

---

[3] Even if, *arguendo,* the Court determines that PERA is entitled to any portion of its fees and expenses as a substantial contribution, such fees and expenses should be subject to the same review as all other fee requests in these Chapter 11 Cases and reviewed by the Fee Examiner and other parties in interest for a determination that they are reasonable and "actual and necessary expenses" of the estates.

802, 806-07 (Bankr. D. Haw. 2014). In determining whether a creditor's efforts constitute a substantial contribution, courts within the Ninth Circuit have considered the following criteria: (1) whether the services were undertaken solely for the benefit of the party itself or for the benefit of all parties in the case; (2) whether the services were actions that would have been taken by the party on its own behalf, absent an expectation of reimbursement from the estate; (3) whether the party can demonstrate that its actions provided a direct, significant and demonstrable benefit to the estate; (4) whether the benefit conferred upon the estate exceeds the costs sought to obtain that benefit; and (5) whether the actions were duplicative of those being taken by other parties in the case, such as the debtor, a trustee or an official committee. *See In re 1250 Oceanside Partners*, 519 B.R. at 806-07; *In re Garcia*, 2016 WL 7324153 at*7-8 (Bankr. E.D. Cal. Dec. 14, 2016).

Courts construe the substantial contribution provisions in sections 503(b)(3)(D) and (b)(4) narrowly. *See Mosier v. Kupetz (In re United Educ. & Software),* 2005 WL 6960237, at *4 (B.A.P. 9th Cir. Oct. 7, 2005) ("Section 503(b) has been construed narrowly because administrative claims are paid directly from the bankruptcy estate and reduce the funds available for creditors and other claimants."); *O'Halloran v. Lyon (In re Mortgs. Ltd.)*, 2010 WL 6259981, at *8 (B.A.P. 9th Cir. Aug. 4, 2010) ("Although the court has broad discretion to grant administrative expense requests, it must construe section 503(b) narrowly to keep fees and administrative costs to a minimum and preserve the limited estate assets for the benefit of creditors."); 4 *Collier on Bankruptcy* ¶ 503.10[5][a] (16th ed. 2020).

"Nearly all cases have held that the contribution must provide tangible, clearly demonstrable benefits to the estate. An entity's active participation in the case, even if considerable in terms of time, effort and expense, and even if positive for the overall outcome, will not of itself be sufficient to constitute a substantial contribution." *Id.* As the Ninth Circuit B.A.P. stated in *In re White Mountain Communities Hosp., Inc.*, 2006 WL 6811025 at *6:

> The measure of any "substantial contribution" is the extent of the benefit to the estate. The benefits conferred must be direct and not "incidental" or "minimal." They must foster, and not retard, progress of the reorganization. Substantial contribution "requires contribution which provides tangible benefits to the bankruptcy estate and the other unsecured creditors." "Services provided solely for the creditor, such as prosecuting a creditor's claim, are not compensable." "Extensive participation alone does not warrant an award of fees as an administrative claim." (citations omitted).

A creditor seeking administrative priority for its legal fees and costs bears the burden of proving by a preponderance of the evidence that it has made a substantial contribution to the estate. *Id*. Courts within the Ninth Circuit have observed that "[c]ompliance with the substantial contribution test is difficult" because "the presumption is that creditors act mainly in their own interests." *In re Woodhall*, 141 B.R. 700, 701 (Bankr. D. Ariz. 1992); *In re D.W.G.K. Rests., Inc*., 84 B.R. 684, 689 (Bankr. S.D. Cal. 1988) ("The movant bears a heavy burden in requesting compensation under § 503(b)."); *In re Catalina Spa & R.V. Resort, Ltd.*, 97 B.R. 13, 21 (Bankr. S.D. Cal. 1989) ("The integrity of § 503(b) can only be maintained by strictly limiting compensation to extra ordinary creditor actions which lead directly to significant and tangible benefits to the creditors, debtor, or the estate. While § 503 was enacted to encourage meaningful creditor participation, it should not become a vehicle for reimbursing every creditor who elects to hire an attorney.").  PERA plainly has not met and cannot meet this heavy burden.

In addition, rather than a "net benefit" approach, courts review independently each of a claimant's activities to then decide whether that activity benefitted the estate sufficiently to award the claimant expenses incurred for that activity.  *See In re Mortgs. Ltd.*, 2010 WL 6259981, at *8.

As set forth below, by PERA's own admission, its efforts during the Chapter 11 Cases were designed to protect or enhance recoveries on its own claim and the claims of other Putative Class members in the Securities Litigation.  As PERA has repeatedly told the Court, as Lead Plaintiff in the Securities Litigation, it believed it had a fiduciary duty to the Putative Class in that action and, therefore, took actions in these Chapter 11 Cases to further those interests. Thus, each of the actions taken by PERA in these Chapter 11 Cases would have been taken in its own interests and the interest of its Putative Class regardless of any expectation of reimbursement from the estate.[4]  Moreover, there is no evidence that resolution of PERA's Plan objections was integral to the Plan being confirmed or avoided a denial of confirmation.  Accordingly, the Motion should be denied.

---

[4] *See* Motion at 26 ("Not only were Lead Plaintiff's interests aligned with those of Class members, but Lead Plaintiff also had a fiduciary obligation, in its role as court-appointed lead plaintiff, to protect the interests of the Class members under applicable law.")

**B.**     **PERA's Actions in the Chapter 11 Cases Benefitted Only Itself and the Putative Class in the Securities Action**

PERA's actions and the work undertaken by its counsel during these cases were motivated solely by self-interest, and benefitted only itself and some of the other Subordinated Securities Claimants they purport to represent. PERA did nothing to benefit the estates or creditors as a whole—PERA simply sought to improve its own position at the expense of other constituencies. Indeed, PERA admits as much repeatedly in the Motion:

- "Lead Plaintiff provided the lone voice that successfully vindicated <u>the rights of its constituency</u>…"

- "Lead Plaintiff, <u>for the benefit of the thousands of Class members</u> who would be disenfranchised by the Debtors' efforts, expended significant resources in response to the Debtors' opposition to the Rule 7023 Motion and the Class Proof of Claim."

- "Lead Plaintiff also contributed to creditors and the estates by successfully <u>defending the rights of Class members</u> from proposed litigation by the Official Committee of Tort Claimants."

- "Lead Plaintiff's efforts <u>on behalf of Class members</u> culminated in its participation during multiple days of the contested confirmation hearing."

- "At the end of that process, Debtors consented to materially improve <u>Class members' treatment</u> under the Plan, and the Court recognized Lead Plaintiff's counsel for <u>its zealous advocacy on behalf of the Class</u>."

Motion at 4, 6, 7 (emphasis added).

Indeed, conspicuously absent from the Motion is any demonstration of how PERA's participation benefited the estates or other parties in interest beyond PERA's narrow constituency. Existing authority, including prior decisions from this Court, make clear that active participation in a case alone does not warrant substantial contribution and provides no basis to saddle the estates with the cost of legal fees and expenses. *See e.g. In re Pac. Gas & Elec. Co.*, 2005 BL 6084 at *5; *In re Garcia*, 2016 WL 7324153, at *8 ("Participation alone, even in successful plan negotiations will not justify a substantial contribution award."); *In re Catalina Spa & R.V. Resort, Ltd.*, 97 B.R. at 21 ("Compensation cannot be freely given to all creditors who take an active role in bankruptcy proceedings, rather, it must be preserved for those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate.").

Instead, PERA attempts to blur the interests of Subordinated Securities Claimants and the estates as a whole. However, as demonstrated below, each of the various matters for which PERA

now seeks an attorneys' fees award benefitted only PERA and, at times, certain of the members of the Putative Class in the Securities Litigation. Moreover, as is customary, if PERA is successful in the Securities Litigation, PERA and its attorneys likely would be compensated out of any recoveries in that action and, therefore, there is no reason or justification to burden the estates with these legal fees and expenses. It has long been established that professionals "usually have to look to their client for payment, not the bankruptcy estate." *In re Garcia,* 2016 WL 7324153, at *5; *see also Matter of Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir. 1986) (noting that only when a creditor's attorney confers a significant and demonstrable benefit to a debtor's estate can they seek payment from the estate as opposed to their client), *In re U.S. Lines, Inc.*, 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989), aff'd, 1991 WL 67464 (S.D.N.Y. Apr. 22, 1991) (same); *In re Gen. Oil Distributors, Inc.*, 51 B.R. 794, 806 (Bankr. E.D.N.Y. 1985) (same). Accordingly, the Motion should be denied.

### C. PERA's Opposition to the 105(a) Actions and the TCC Derivative Standing Motion Was Designed to Protect PERA's Claims in the Securities Litigation at A Cost to the Debtors' Estates

The 105(a) Actions and the TCC Derivative Standing Motion were actions brought in good faith by the Debtors and the TCC, respectively, to *protect* or *enhance* the value of the Debtors' estates for the benefit of all parties in interest, and the actions taken by PERA in response to those actions were designed solely to protect or enhance its claims and causes of action and cannot constitute a substantial contribution.

As the Court is aware, the Debtors commenced an adversary proceeding (Adv. Pro. No. 19-03006) and filed a motion on February 15, 2019 (together with the subsequent adversary proceeding (Adv. Pr. No. 19-03039) and motion filed on June 18, 2019, the "**105(a) Actions**"), seeking to enjoin the putative securities class action, filed by PERA (among other actions) and pending in the U.S. District Court for the Northern District of California (the "**District Court**"), *In re PG&E Corp. Securities Litig.*, Case No. 18-CV-03509 (N.D. Cal.) (the "**Securities Litigation**"), from proceeding against certain non-debtor defendants. Although the Court ultimately denied the relief sought in the 105(a) Actions as to the Securities Litigation, the Debtors sought to enjoin the Securities Litigation because they had a good-faith belief that the continued prosecution of the Securities Litigation

threatened to interfere with the Debtors' administration of these Chapter 11 Cases and deplete assets of the Debtors' estates.

Similarly, on February 28, 2020, the TCC filed a motion [Docket No. 5972] (the "**TCC Derivative Standing Motion**") requesting standing to commence an adversary proceeding to seek a declaratory judgment that the claims asserted in the Securities Litigation, and similar claims raised in proofs of claim by certain members of the Putative Class, were in fact claims belonging to the Debtors' estates. In its motion, the TCC asserted that the claims asserted in the Securities Litigation were among the Claims to be assigned to the Fire Victim Trust (for the benefit of Fire Victim Claimants) as consideration for the TCC's entry into the TCC RSA. *See* TCC Derivative Standing Motion at 5. Obviously, the opposition to this motion by PERA was necessary to preserve the Securities Litigation and was admittedly opposed as Lead Counsel for that separate litigation. Although the Court ultimately denied the relief sought in the TCC Derivative Standing Motion, choosing instead to defer to the District Court and to wait for the extended claims deadline to pass (*see* Docket No. 6773 at 3), that does not change the fact that had the TCC Derivative Standing Motion been granted, it would have actually benefitted the estates as a whole as opposed to benefitting only PERA and other Subordinated Securities Claimants.

The 105(a) Actions and the TCC Derivative Standing Motion were actions taken to limit the potential exposure of the estates to unnecessary or unwarranted liabilities and/or to enhance potential recoveries for all stakeholders, and were akin to a claim objection or any other routine contested matter in which assets of the estates are at issue. Accordingly, PERA's defense of those matters was to the *detriment* of the estates, and *only* benefited PERA, and potentially other Subordinated Securities Claimants who are also members of the Putative Class – not the estates as whole. If PERA is awarded its legal fees and expenses for its defense of the 105(a) Actions and the TCC Derivative Standing Motion, it would open the door to any claimant who litigates a contested matter to claim substantial contribution. This is clearly not the intention of sections 503(b)(3)(D) and (4).[5] *See In re White Mountain Communities Hosp., Inc.*, 2006 WL 6811025, at \*6 ("Services

---

[5] PERA also asserts in its Motion that it is entitled to substantial contribution for its efforts in opposing the Reorganized Debtors' *Motion for Order Approving (a) Procedures for Filing Omnibus Objections to Claims and (b) the Form and Manner of the Notice of Omnibus Objections*

provided solely for the creditor, such as prosecuting a creditor's claim, are not compensable [as substantial contribution].").

Sections 503(b)(3)(D) and 503(b)(4) are not tools designed to "penalize" a debtor for unsuccessfully pursuing objections or commencing other contested matters with respect to individual claims in a good faith attempt to limit the liabilities of the estates, and courts have previously denied substantial contribution requests in connection with such actions by creditors. *See, e.g., In re Granite Partners*, 213 B.R. 440 (Bankr. S.D.N.Y. 1997) (denying equity holders' substantial contribution request for, among other things, fees and expenses incurred in defending against trustee's efforts to enjoin the prosecution of certain claims against the debtors' insiders and other parties by equity holders).

Put another way, sections 503(b)(3)(D) and 503(b)(4) do not abolish or modify the principal rule in the United States that each respective party to litigation bears its own costs, including in contested bankruptcy proceedings. The U.S. Supreme Court recently affirmed "[o]ur basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015). Courts will not deviate from the American Rule "absent explicit statutory authority." *Id.* (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't. of Health & Human Res.*, 532 U.S. 598, 602 (2001) (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994)). The Bankruptcy Code's substantial

---

[Docket No. 7758] (the "**Omnibus Objection Procedures Motion**"). It is worth noting that the hearing at which PERA appeared in opposition to the Omnibus Objection Procedures Motion was held after the Plan was confirmed and courts have previously found that it is improper to grant a substantial contribution award for actions taken after a chapter 11 plan has been confirmed. *See In re Seaman*, 588 B.R. 790, 796-97 (Bankr. W.D. Mich. 2018) ("Any contribution to a Chapter 11 case, substantial or otherwise, must occur prior to confirmation of plan in order to be compensable as an administrative expense."). Regardless, as with the other efforts for which PERA seeks substantial contribution, there is no indication in the Motion as to any benefit to the Debtors' estates as a whole from PERA's objection to the Debtors' Omnibus Claims Objection Procedures (as defined in the Omnibus Objection Procedures Motion). PERA's objection to those procedures did not result in or lead to the resolution of any Subordinated Securities Claims. Similar to the 105(a) Actions and the TCC Derivative Standing Motion, PERA's actions in connection with the Omnibus Claims Objection Procedures were in furtherance of its own interests and agenda, and as such, a claim for substantial contribution for these efforts cannot succeed.

contribution provisions do not provide such explicit authority and, indeed, Courts take a narrow approach to substantial contribution requests for precisely this reason. *See In re Standard Metals Corp.*, 105 B.R. 625, 630 (Bankr. D. Colo. 1989) ("The Court is concerned about the potential ramifications of opening the door to Section 503(b)(3) claims too far. That concern is consistent with the basic tenant that a creditor's attorney must ordinarily look to its own client for payment, unless the creditor's attorney rendered services on behalf of the reorganization, not merely on behalf of his client's interest, and conferred a significant and demonstrable benefit to the debtor's estate and the creditors.") (internal quotations omitted).

No such benefit accrued here. PERA defended these actions to preserve its claims and the claims of certain other Subordinated Securities Claimants and, in fact, PERA admits its activities in defense of these actions actually burdened the estates and took away potential assets. *See* Motion at 10 (quoting the Court's decision on the 105(a) Actions, "prosecution [of the Securities Litigation] might be costly to [the Debtors], their insurers, or both.").

PERA's opposition to the 105(a) Actions was solely done in connection with its role as Lead Plaintiff in the Securities Litigation; there is no support nor any reason why a plaintiff in a separate lawsuit that the Debtors seek to enjoin should be compensated by the Debtors for opposing the action to enjoin that separate litigation. Similarly, by defeating the TCC Derivative Standing Motion, PERA retained "ownership" and "control" of its asserted claims (and the sole right to recover on those claims) and defeated the TCC's efforts to claim those causes of action as additional assets of the estates to be transferred to the Fire Victim Trust. PERA's action in these instances served to benefit only one narrow constituency (PERA and a subset of the Subordinated Securities Claimants) at the expense of all other stakeholders of the estates. *See e.g., In re Pac. Gas & Elec. Co.*, 2005 BL 6084, at * 5; *In re RS Legacy Corp.*, 2016 WL 1084400, at *4 (Bankr. D. Del. Mar. 17, 2016) (there was no substantial contribution where the movant's "intended end result therefore would diminish the funds available to a certain group of stakeholders while not enhancing overall recoveries to the creditor body"); *Derivative Plaintiffs v. Columbia Gas Sys. (In re Columbia Gas Sys.)*, 2000 WL 1456298, at *6 (D. Del. Sept. 20, 2000).

### D.     PERA's Unsuccessful Efforts to Obtain Class Certification Did Not Enhance Recoveries to *All* Creditors as Required Under Section 503(b)

PERA filed and prosecuted its motion [Docket No. 5042] (the "**Original 7023 Motion**") seeking to have this Court certify, postpetition, a class comprising the members of the Putative Class.   PERA took this step not out of a selfless desire to protect the interests of its fellow Subordinated Securities Claimants and advance the administration of these Chapter 11 Cases, but rather because it had much to gain from the success of class certification—namely, the payment of contingency fees and expenses in connection with any settlement or successful resolution of the proposed class claim.  These contingency fees are the very same fees and expenses PERA and its attorneys may recover in connection with the Securities Litigation.   Thus, to the extent they are successful in obtaining a recovery on behalf of the Putative Class, PERA's attorneys will be able to make an application to the District Court for fees in connection with pursuing recoveries on behalf of the Putative Class, including any legitimate efforts in these Chapter 11 Cases.

Despite receiving actual notice of the Debtors' motion to establish the bar date and the attendant noticing procedures [Docket No. 1784] (the "**Bar Date Motion**"), PERA did not raise any objections to the Bar Date Order.  PERA's submissions in support of this Motion demonstrate that its counsel not only received, but analyzed and reviewed the Bar Date Motion.  *See* [Docket No. 8950-2] at 11; [Docket No. 8950-3] at 15, 17; [Docket No. 8950-4] at 10.  Had PERA timely objected to the Bar Date Motion, it could have obviated the Original 7023 Motion and the cost and expense of setting a further bar date and proving additional notice. PERA's delay in raising these issues – even though it had already been active in these cases – actually cost the Debtors a significant amount and expense.  By not making a timely objection to the Bar Date Motion, PERA was able to preserve the ability to file a proof of claim and seek class status, thus giving it the opportunity to obtain fees as class counsel from any recovery.

Following two rounds of briefing and extensive argument, the Court denied the Original 7023 Motion and instead, on its own initiative and over PERA's objection, decided to extend the bar date to allow absent class members to file individual proofs of claim.  *See Memorandum Decision Regarding Motion to Apply Rule 7023* [Docket No. 5887] (the "**Memorandum Decision**") at 5, and the Court's Order denying the Original 7023 Motion [Docket No. 5943] (the "**7023**

Order"), at ¶¶ 1-2. The Court then, again on its own initiative and over PERA's objection, extended the deadline for Subordinated Securities Claimants to file claims in the Chapter 11 Cases, and the Debtors provided actual notice of the extended Deadline to more than 300,000 potential securities claimants in strict accordance with the Court's direction. As noted above, PERA objected to the Court's proposed extension of the bar date and appealed the Court's Memorandum Decision and the 7023 Order. Clearly, these actions were in the furtherance of PERA's own self-interest and not those of the estates as a whole.

At least one court has denied a request for substantial contribution that was based, in part, as PERA seeks here, on an unsuccessful attempt to certify a class of claims pursuant to Bankruptcy Rule 7023. In *RS Legacy Corp.*, the applicant sought payment of fees and expenses as substantial contribution incurred in connection with, among other things: (i) claimant's unsuccessful attempt to certify a postpetition class of holders of gift card claims in the debtor's chapter 11 case; (ii) claimant's participation in several other motions and adversary proceedings regarding the rights of gift card holders; and (iii) claimant's efforts to improve notice to holders of gift card claims during the chapter 11 case. 2016 WL 1084400, at *2. The Bankruptcy Court for the District of Delaware held that the applicant had failed to demonstrate that its efforts advanced the interests of all creditors as opposed to its own. In particular, the Court noted that the applicant's efforts to seek priority treatment for its members would merely reallocate "distributions under the Plan to the detriment of the general unsecured creditors . . . [diminishing] the funds available to a certain group of stakeholders while not enhancing overall recoveries to the creditor body." *Id.* at *4. The Court further noted that a party seeking class certification has a "strong economic self-interest in obtaining certification of the class because [their] counsel would then be entitled to attorneys' fees" and concluded that none of the actions taken by the applicant went beyond what would be expected of a creditor seeking to "enhance his recovery and have his counsel fees paid." *Id.* Similarly, PERA's actions in connection with the Original 7023 Motion sought only to improve its own position and the position of the members of the Putative Class, and did nothing to enhance overall recoveries in these Chapter 11 Cases.

1   A similar result was found by the Delaware District Court in *Columbia Gas Sys.,* when it

2   considered a movant's appeal of a Bankruptcy Court's decision denying a substantial contribution

3   claim brought by attorneys representing certain shareholders in derivative class actions.  2000 WL

4   1456298 at *2.  In that case, the Delaware District Court upheld the denial of a substantial

5   contribution claim, noting that the claimants acted "mainly in the interests of their own clients when

6   they brought and prosecuted the securities class actions."  *Id.* at *6.  Importantly, the District Court

7   drew a distinction between obtaining a benefit for creditors as a whole as opposed to for a particular

8   creditor or group of creditors, stating that, "[a]lthough the derivative class actions may have

9   conferred some benefit upon certain unsecured creditors (e.g., the shareholders) or possibly upon

10  the estate itself, given the record, the court cannot conclude that this benefit was enjoyed by the

11  creditors as a whole."  *Id.*  The same must be said of PERA's actions here in connection with the

12  Original 7023 Motion.

13      PERA goes to great lengths in its Motion to attempt to take credit for any benefit to the

14  administration of the Chapter 11 Cases that resulted from the additional noticing efforts following

15  denial of the Original 7023 Motion.  However, any benefits accreted substantially—if not entirely—

16  to PERA and similarly situated current or former securities holders.  Moreover, even if these

17  additional noticing efforts were considered to provide a broader benefit to the estates, as noted

18  above, the notion of extending the bar date and providing additional noticing to Putative Class

19  members was implemented by the Court on its own initiative and was approved over PERA's

20  objection.  PERA cannot now claim a substantial contribution for a noticing effort it did not propose

21  and, in fact, opposed.

22      Regardless, even if PERA's actions with respect to the Original 7023 Motion were motivated

23  solely by a desire to improve notice to potential securities claimants, courts have previously held

24  that such actions are insufficient to constitute a substantial contribution.  *See, e.g., In re Standard

25  Metals Corp.*, 105 B.R. at 630 n.6 ("Applicants' efforts to obtain a determination that the notice [of

26  the bar date] was in fact insufficient is not the type of fact which when uncovered amounts to a

27  substantial contribution to the estate or the creditors other than the bondholders."); *RS Legacy Corp.*,

28  2016 WL 1084400, at *4.

Accordingly, PERA's actions in connection with the Original 7023 Motion do not constitute a substantial contribution, which would entitle PERA to payment of its fees and expenses.

### E. PERA's Objections to Plan Confirmation, Which Did Not Result in Additional Funds Becoming Available for the Debtors' Estates or Other Parties in Interest, Were Not Extraordinary

On May 15, 2020, PERA filed their objections to confirmation of the Plan [Docket No. 7296] (the "**Confirmation Objection**") raising a number of issues with respect to the treatment of the Subordinated Securities Claims under the Plan. Each of PERA's Plan objections sought to improve the treatment of, and recoveries for, PERA itself and only *some of* the Subordinated Securities Claims under the Plan—specifically, Class 10A-II and Subordinated Securities Claimants who would be members of the Putative Class—and not any other classes or claims. However, as noted above, the sole reason Class 10A-II did not accept the Plan was the vote of a disgruntled shareholder with a large liquidated but unsubstantiated claim. Certain matters in the Confirmation Objection were settled through mediation, and others were overruled by this Court's memorandum decision with respect to Plan confirmation [Docket No. 8001] and the Confirmation Order, both of which PERA has appealed. *See Notice of Appeal and Statement of Election to Have Appeal Heard by District Court* [Docket No. 8243].

At no point did PERA's actions in connection with Plan confirmation or the Confirmation Hearing go beyond promoting its own interests and those of the narrow constituency it purports to represent. As PERA concedes in the Motion, through "the DS Objection, and the Confirmation Objection . . . Lead Plaintiff was able to achieve material improvements to the <u>treatment of Class members</u> through the Plan." Motion at 18 (emphasis added). Again, the Motion does not set forth any purported benefit of PERA's actions to the estates as a whole (because there were none), and, in any case, PERA did not undertake the kind of plan activities courts have previously deemed worthy of substantial contribution awards.

The proposal and negotiation of settlements and related efforts with respect to the formulation of a plan of reorganization is a common ground for creditors seeking to assert claims for substantial contribution. However, mere participation, particularly when such participation is only in furtherance of the creditors' own interests, does not support a claim for substantial

1  contribution. A creditor must do much more – it must be essential to the plan process. The

2  Bankruptcy Court for the Eastern District of California explained this distinction in *In re Garcia*,

3  2016 WL 7324153 at *8 (citations omitted) stating:

4      Creditors who have an active role in the confirmation process frequently
        seek substantial contribution claims. Participation alone, even in successful
5      plan negotiations will not justify a substantial contribution award.
        However, where creditors were essential to the plan process, courts have
6      found substantial contribution by the creditors.

7      As noted above, this Court addressed a similar request for substantial contribution by the

8  City of Palo Alto (the "**City**") in connection with plan confirmation in the Utility's 2001 chapter 11

9  case, *In re Pacific Gas & Electric Co.* There, the City claimed that its efforts in the 2001 case

10 warranted substantial contribution, including, efforts it described as "(1) Moderating and ultimately

11 defeating PG&E's first attempted plan of reorganization . . . (2) Moderating the CPUC/Committee

12 Plan so that it could become the foundation for the [confirmed plan]; (3) Improving the Settlement

13 Agreement that was the centerpiece of the [confirmed plan]; and (4) Preventing or moderating the

14 adverse effects of various of PG&E's excessive actions that were not in the best interest of creditors"

15 amounted to a substantial contribution. 2005 BL 6084, at *2. This Court denied the City's

16 substantial contribution request and found that there was no evidence that the City "decisively

17 contributed" to the settlement and confirmation of the plan. *Id.* At *4. This Court also noted that,

18 in a complex case such as the Utility's previous chapter 11 case, it was "difficult to single out any

19 particular party whose contribution can be said to be 'substantial' within the meaning of section

20 503(b) and the case law that has interpreted it." *Id.,* at *5. The same must be said of PERA's

21 parochial efforts in connection with confirmation of the Plan.

22      Similarly, in *In re Standard Metals Corp.*, the Bankruptcy Court for the District of Colorado

23 denied a request for substantial contribution made by an attorney representing a group of

24 bondholders. In that case, the applicants asserted that their work during the chapter 11 case resulted

25 in the addition of their clients as a class of creditors to the plan, adequate disclosure of the plan to

26 that class, and a settlement of all claims of that class—the very same type of plan related activities

27 that PERA points to in support of its Motion. The Bankruptcy Court in *Standard Metals*, however,

28 denied the request, finding that the bondholders' actions in connection with plan confirmation were

designed solely for their own benefit and not the estates as a whole. In so holding, the Court stated that "those actions and the results achieved are commendable. Nevertheless, the Court concludes that the Applicants' actions were taken primarily for the benefit of their clients and not for the estate as a whole" and that "there was no actual and demonstrable benefit to the estate and the creditors." 105 B.R. at 630-31.

Courts in the Ninth Circuit, including this Court, generally have found a creditor's contributions in connection with plan confirmation sufficient to warrant a substantial contribution only where the applicant's efforts directly benefited the estates as whole, such as by funding or proposing a plan of reorganization or taking other actions that enhanced recoveries to creditors as a whole and not their own class or constituency. *See, e.g., In re Cellular 101, Inc.,* 377 F.3d at 1097 (holding that applicant had made a substantial contribution where it had "formulated and presented the only reorganization plan that was put forth to the bankruptcy court. This plan resulted in the payment to creditors of 100% of the creditors' allowed claims with funds remaining for the equity security holders. [The movants] also agreed to waive their prepetition claims against Cellular."); *In re 1250 Oceanside Partner,* 519 B.R. at 808-809 (finding sufficient benefit from the claimant by "roughly doubling the fund from which they would be paid . . . [and] . . . by eliminating objections and paving the way to a confirmed plan. The [movants'] contribution was substantial because it obviated further litigation and, perhaps, a denial of plan confirmation."); *In re Lab. Skin Care, Inc.,* 2014 WL 1312368, at *2 (Bankr. N.D. Cal. Mar. 28, 2014) (approving substantial contribution request where the applicant creditor had prepared, prosecuted, and partially funded a plan of reorganization).

In contrast to those cases, here, PERA did not propose the Plan, fund the Plan, agree to compromise or settle their claims, materially increase recoveries for a broad group of creditors, or otherwise ensure or avoid a denial of confirmation of the Plan. Indeed, PERA's efforts have not resulted in the settlement or resolution of a single Subordinated Securities Claim nor can it be said that PERA even settled or resolved all of its Plan objections; rather, PERA agreed to certain revised treatment as a result of mediation before Ret. Judge Newsome and continued prosecuting certain other objections, which the Court overruled and which continue to burden the estates in connection

with PERA's appeal of the Confirmation Order. Such actions cannot constitute substantial contribution. *See In re White Mountain Communities Hosp., Inc.*, 2006 WL 6811025, at *7 (denying substantial contribution request where the Bankruptcy Court found that the movants "did not facilitate the progress of the case; in fact, their efforts arguably impaired progress, causing Debtor to incur further administrative fees to fight for confirmation of a plan overwhelmingly approved by creditors.").

## III. ANY CLAIM FOR SUBSTANTIAL CONTRIBUTION SHOULD BE SUBJECT TO REVIEW BY THE FEE EXAMINER

As set forth above, the Reorganized Debtors do not believe PERA's actions in the Chapter 11 Cases warrant any reimbursement or award as substantial contribution. However, should the Court determine that any of PERA's actions constitute a substantial contribution, any portion of the fees and costs claimed in connection with that award should be subject to review by the Fee Examiner and other parties in interest, like all other professionals in these Chapter 11 Cases. In addition, as discussed above, any portion of the substantial contribution claim related to actions taken after confirmation of the Plan should be disallowed. *See supra* note 5.

When assessing substantial contribution applications for attorneys' fees, courts within the Ninth Circuit have stated that the same principles for assessing an estate professional's fee application should be applied. *See In re White Mountain Communities Hosp., Inc.*, 2006 WL 6811025, at *8 ("In addition to proving that it made a 'substantial contribution' to the estate, a creditor seeking to recover compensation as an administrative expense under section 503(b) must also demonstrate that its request represents 'actual, necessary expenses' and 'reasonable compensation' for professional services."); *N. Sports, Inc. v. Knupfer (In re Wind N' Wave)*, 509 F.3d 938, 942 (9th Cir. 2007) ("Subsection (b)(4) specifically allows compensation for services rendered by a creditor's attorney, and sets forth compensation standards that mirror those governing fee awards for debtors' attorneys under Section 330(a) of the Bankruptcy Code."). In resolving whether the costs of contesting a denial of a 504(b)(4) application were claimable, after applying several cases in the context of section 330(a), the Ninth Circuit Court of Appeals stated:

1
2
3
4
5
6

> We recognize that *Nucorp*, *Smith*, and *Riverside-Linden* dealt with Section 330(a) of the Bankruptcy Code--which addresses compensation for debtor's attorneys--while the instant case falls under Section 503(b)(4), which governs compensation for creditors' attorneys. We do not find that this distinction affects our holding. Section 503(b)(4) states that the court shall allow "reasonable compensation" for services rendered by a creditor's attorney "based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title." 11 U.S.C. § 503(b)(4). This language was adopted as part of the Bankruptcy Reform Act of 1978, and is nearly identical to the language used in that Act to compensate officers under Section 330(a).

7

*Id.* at 944.

8
9

Applying this principle, the Bankruptcy Court for the Eastern District of California set forth the following criteria for assessing a claim for attorneys' fees under section 503(b)(4) (internal citations omitted):

10
11
12
13
14
15
16
17

> The amount of an administrative expense for the attorneys' fees of a creditor must be for a "substantial contribution" to the Chapter 11 case and must be reasonable. Even when the court finds that the services billed by an attorney are "actual," meaning that the fee application reflects actual time entries charged for services, the attorney must still demonstrate that the work performed was necessary and reasonable. An attorney must exercise good billing judgment with regard to the services provided because the court's authorization to employ an attorney to work in a bankruptcy case does not give that attorney "free reign to run up a [professional fees and expenses] without considering the maximum probable [as opposed to possible] recovery." According to the Court of Appeals for the Ninth Circuit, prior to working on a legal matter, the attorney, or other professional as appropriate, is obligated to consider:

18
19
20
21

> (a)     Is the burden of the probable cost of legal [or other professional] services disproportionately large in relation to the size of the estate and maximum probable recovery?
> (b)     To what extent will the estate suffer if the services are not rendered?
> (c)     To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

22
23

> The standards used to allow fees and costs awarded pursuant to 11 U.S.C. § 330 apply to the award of an administrative expense pursuant to 11 U.S.C. § 503(b)(4).

24

*In re Garcia*, 2016 WL 7324153, at *16–17 (citations omitted).

25
26
27
28

Accordingly, even if the Court determines that PERA has made a substantial contribution based on some or all of the assertions set forth in the Motion, the attorneys' fees it claims must be subject to a similar analysis that a professional's fee application would be under section 330 of the Bankruptcy Code. In these Chapter 11 Cases, this requires any potential substantial contribution

award be subject to the Fee Procedures previously approved by this Court and be submitted for review by the Fee Examiner and other parties interest in these Chapter 11 Cases for a determination that such fees and expenses are reasonable and "actual and necessary expenses" of the estates. *See In re Energy Future Holdings Corp.*, 593 B.R. 217, 252 (Bankr. D. Del. 2018) (requiring a successful applicant for substantial contribution to submit their fees to a fee committee and the U.S. Trustee).

## IV.    CONCLUSION

PERA has not satisfied its heavy burden for an award of compensation from these estates. Accordingly, the Court should (i) deny the Motion and (ii) grant the Reorganized Debtors such other relief that is just and proper.

Dated: November 13, 2020

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

/s/ *Richard W. Slack*
Richard W. Slack

*Attorneys for the Debtors and Reorganized Debtors*