DIEMER & WEI, LLP
Kathryn S. Diemer (#133977)
55 S. Market Street, Suite 1420
San Jose, CA 95113
Telephone: 408-971-6270
Facsimile: 408-971-6271
Email: kdiemer@diemerwei.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Edwin J. Harron (*pro hac vice forthcoming*)
Sara Beth A.R. Kohut (*pro hac vice forthcoming*)
Rodney Square, 1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: eharron@ycst.com
skohut@ycst.com

*Counsel to the Subrogation Wildfire Trust*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| -and- | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | **OBJECTION TO EX PARTE MOTION OF THE FIRE VICTIM TRUSTEE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF AN ORDER AUTHORIZING SERVICE OF SUBPOENAS ON THE SUBROGATION WILDFIRE TRUST, SUBROGATION WILDFIRE CLAIMANTS, AND INSURERS WITH CLAIM FILES** |
| ☐ Affects PG&E Corporation | |
| ☐ Affects Pacific Gas and Electric Company | |
| ■ Affects Both Debtors | |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM) | [NO HEARING REQUIRED per L.B.R. 2004-1(a)] |

The Subrogation Wildfire Trust respectfully submits this Objection to the *Ex Parte Motion of the Fire Victim Trustee Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Service of Subpoenas on the Subrogation Wildfire Trust, Subrogation Wildfire Claimants, and Insurers with Claim Files* ("**Motion**").

1. Through the Motion, the Fire Victim Trustee[1] requests authority to serve a subpoena on the Subrogation Wildfire Trust seeking broad categories of documents and information that the Fire Victim Trust knows the Subrogation Wildfire Trust does not have. Moreover, it erroneously imputes the Fire Victim Trust's delay in paying individual fire victims on the alleged "intransigence" of the Subrogation Wildfire Trust, among other parties, in producing information. (Motion at 7:13-14.) Nothing could be further from truth with regards to the Subrogation Wildfire Trust.

2. Indeed, as subsequently acknowledged in the Fire Victim Trust's supplement to the Motion [Dkt. No. 9514] filed four days after the Motion (the "**Supplement**"), the Subrogation Wildfire Trust has worked cooperatively with the Fire Victim Trust from its initial outreach to develop an agreed process for production of information within the Subrogation Wildfire Trust's possession. The Subrogation Wildfire Trust seeks only to ensure that its production of information to the Fire Victim Trust accords with the Subrogation Wildfire Trust's obligations to safeguard information entrusted to it by its beneficiaries pursuant to its enumerated responsibilities and legal obligations.

3. The Subrogation Wildfire Trust remains hopeful that it can reach agreement with the Fire Victim Trust on the terms of that production, which would obviate the need for the Court to

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion or, if not defined in the Motion, in the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated June 19, 2020 [Dkt. No. 8048] (the "**Plan**").

1

resolve the Motion with respect to the Subrogation Wildfire Trust and for the Fire Victim Trust to serve any subpoena on the Subrogation Wildfire Trust. However, the Subrogation Wildfire Trust submits this objection in order to preserve its rights in the event agreement cannot be reached.

**1.     The Motion is Unnecessary, Will Cause Delay, and Impose Undue Burden and Expense.**

4.     Prior to filing its Motion, the Fire Victim Trust contacted the Subrogation Wildfire Trust to request certain information in its possession. In particular, the Fire Victim Trust requested updates to claims information reported to the trust by subrogation insurance carriers. That information had initially been provided to the Court, the Debtors and the official committees by subrogation claimants as "Attachment 1's" to their proofs of claim. The claim data had been updated at various points throughout these cases, and, prior to the formation of the Subrogation Wildfire Trust, had been provided by other parties to the Fire Victim Trust and/or the TCC.

5.     Even though there was no pending subpoena compelling production of such information, the Subrogation Wildfire Trust worked cooperatively in an effort to negotiate the terms of the production of that information. It has invested significant time, effort and expense in negotiating a stipulation that would provide the Fire Victim Trust the information it claims it needs, while at the same time complying with the confidentiality, privacy, and other restrictions to which the Subrogation Wildfire Trust is subject.

6.     If the parties successfully negotiate the few remaining open points and the Court approves it, the proposed stipulated agreement will provide for the production of twelve clearly defined data points, including payment amounts by available coverage categories. The parties were close to reaching an agreed stipulated process when the Fire Victim Trust unilaterally filed the

2

Motion.² To that end, the Supplement notes that if the Fire Victim Trust and Subrogation Wildfire Trust reach agreement on a voluntary production, the Motion will be dismissed *without prejudice* as to the Subrogation Wildfire Trust.

7. The Motion is counter-productive because, compared to the voluntary process the two trusts had been discussing, the Motion seeks far broader and largely irrelevant information through a litigious process that is likely to further delay production of relevant information (and therefore payments to victims), and subject the Subrogation Wildfire Trust to undue burden and expense.

8. Furthermore, instead of limiting its request to information within the Subrogation Wildfire Trust's possession, the Fire Victim Trust's proposed subpoena also requires the production of "Claim Files" and "Claim-Related Documents for all Insured Fire Victims" -- items the Fire Victim Trustee is well aware the Subrogation Wildfire Trust does not have in its possession and cannot produce. The Subrogation Wildfire Trust is informed that representatives of many of the insurers who may be in possession of that information have been cooperating with the Fire Victim Trust, have already voluntarily produced much of the claims information requested by the Fire Victim Trust, and have been preparing to produce additional information in response to supplemental requests. All that the Subrogation Wildfire Trust has is certain data, as the parties have already agreed in the draft proposed stipulation.

---

² Despite the ongoing discussions, the Fire Victim Trust did not provide, either as a basic requirement of due process or even as a courtesy, notice of the *ex parte* Motion to the Subrogation Wildfire Trust, which only learned of the Motion after a third party that was monitoring the docket forwarded it. After the Court pointed out the Motion's failure to name other targets of the proposed subpoena, the Fire Victim Trust filed the Supplement identifying 402 potential targets, but it is unclear whether any notice was provided to those other targets to afford them fair opportunity to be heard on the Motion. *See Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974) (the American system of jurisprudence "runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." (internal citation omitted)); *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989) ("[T]he opportunities for legitimate *ex parte* applications are extremely limited.").

3

9. Nor is it "plainly reasonable" (Motion at 10:18-23) to expect the Subrogation Wildfire Trust to produce all documents responsive to the unnecessarily expansive proposed subpoena within fifteen calendar days when there are more than 80,000 Fire Victim Claims (Motion at 3:17).

10. Although the scope of discovery permitted under Rule 2004 is broad, "a bankruptcy court might need to limit the normally broad inquiry under Rule 2004 to preserve properly-claimed privileges, or to prevent overly-broad, oppressive or unfair inquiries into topics that are irrelevant to a review of the conduct and assets of debtors." *In re Symington*, 209 B.R. 678, 687 (Bankr. D. Md. 1997). And while Rule 2004 permits investigation of third parties, it does so only to the extent such investigation seeks information to "further the recovery and distribution of the Debtors' assets or otherwise assist with the administration" of the Debtors' estate. *See In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 619 (Bankr. D. Del. 2016). Here, any production of claims data by the Subrogation Wildfire Trust to the Fire Victim Trust should be narrowly targeted to the purpose of calculating distributions to Fire Victim Claimants.

**B.      Conclusion**

11. For the reasons set forth above, the Subrogation Wildfire Trust respectfully requests that the Court deny the Motion.

Dated: November 20, 2020

DIEMER & WEI, LLP
Kathryn S. Diemer (#133977)
55 S. Market Street, Suite 1420
San Jose, CA 95113
Telephone: 408-971-6270
Facsimile: 408-971-6271
Email: kdiemer@diemerwei.com

*/s/ Kathryn S. Diemer*
Kathryn S. Diemer

| | |
|---|---|
| 1 | |
| 2 | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| 3 | Edwin J. Harron (*pro hac vice forthcoming*) |
| | Sara Beth A.R. Kohut (*pro hac vice forthcoming*) |
| 4 | Rodney Square, 1000 North King Street |
| | Wilmington, DE 19801 |
| 5 | Telephone: (302) 571-6600 |
| | Facsimile: (302) 571-1253 |
| 6 | Email: eharron@ycst.com |
| 7 | skohut@ycst.com |
| 8 | *Counsel to the Subrogation Wildfire Trust* |