Mark A Klein
19405 Park Ridge Drive
Hidden Valley Lake CA 95467
(707) 987-8457
maklein@ix.netcom.com
*Pro Se*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 |
| - and - | (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | **RESPONSE OF CLAIMANT, MARK A. KLEIN AND JANET S. KLEIN, HUSBAND AND WIFE, TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY PASSTHROUGH CLAIMS); DECLARATION OF MARK A. KLEIN IN SUPPORT OF RESPONSE** |
| Debtors. | |
| Affects Pacific Gas and Electric Company | |
| | **Claimant Mark and Janet Klein** |
| | **Claim No. 80500** |
| | Date: December 15, 2020 |
| | Time: 10:00 a.m. |
| | Place: United States Bankruptcy Court |
| | Courtroom 17, 16th Floor |
| | San Francisco, CA 94102 |
| | Judge: Hon. Dennis Montali |

MARK A. KLEIN and JANET S. KLEIN, husband and wife (collectively "**Claimant**"), dispute the Debtors' Objection to Claimant's Proof of Claim filed by Claimant herein on October 19, 2019 ("**Claimant's Claim**") and submits this Response ("**this Response**") to Debtor's Objection.[1]

1. <u>Response Required by the Omnibus Objections Procedures Order</u>.

In accordance with §§ 2 I i. and ii. of the Omnibus Objections Procedures Order:

a) The caption setting forth the name of the Bankruptcy Court, the name of the Debtor, the case number and title of the Omnibus Objection to which this Response is directed are set forth on the first page of this Response.

b) Claimant's name is set forth in the first paragraph of this Response. The designated Proof of Claim number of Claimant's Claim is 80500. The principal amount of Claimant's Claim is the sum of $18,025, and the explanation therefor is that such sum is the amount of Claimant's out of pocket cost of purchasing and installing a standby generator.

c) Debtor has objected to Claimant's Claim on the grounds that it purportedly falls into a category of "No Liability / Passthrough Claims" identified on Exhibit 1 to Debtor's Objection[2] and that the specific "Basis of Objection" to Claimant's Claim is "PSPS Claims."[3] As is discussed in more detail below, the Bankruptcy Court should not sustain the Omnibus Objection because Debtor, by voluntarily and deliberately cutting electric power to Claimant's residence (i) breached its contractual obligation to Claimant and (ii) breached its duty, independent of contract, to provide Claimant with electric power. Such breaches entitle Claimant to reimbursement of Claimant's out of pocket cost of purchasing and installing a standby generator to power Claimant's residence during periods that Debtor voluntarily and deliberately cuts (and continues to cut) electric power.

d) A declaration under penalty of perjury of a person with personal knowledge of the relevant facts that support this Response, to wit, the Declaration of Mark A. Klein in Support of

---

[1] Capitalized terms not otherwise defined in this Response have the respective meanings ascribed to them in Debtors' Objection.
[2] Debtor's Objection at 4:7-9 (Doc # 9460 at p. 4).
[3] Claimant's Claim (No. 80500) is listed as the fourth claim on page 4 of Exhibit 1 to Debtor's Objection. Doc# 9460-1 at p. 4.

2
RESPONSE OF CLAIMANT (CLAIM # 80500) TO
DEBTORS' FORTY-SECOND OMNIBUS OBJECTION
Case: 19-30088    Doc# 9634    Filed: 11/30/20    Entered: 11/30/20 16:19:15    Page 2 of 13

Response ("**Claimant's Declaration**"), is included in this Response beginning at page 9.

e) The Claimant's name, address, telephone number and email address (**Claimant's Contact Information**") are set forth above the caption of this Response. Claimant is appearing *Pro Se* and Claimant's Contact Information is where counsel for the Debtors should serve a reply to this Response, if any.

f) Only Claimant, who may be reached at Claimant's Contact Information, is the party with authority to reconcile, settle, or otherwise resolve the Debtors' Objection.

2. <u>PG&E's Duties to Claimant and Debtor's Breach</u>

(a) <u>Contractual Duty</u>. As is shown in Claimant's Declaration:

i) at or shortly after Claimant's purchase of their residence in 2004, Claimant and PG&E entered into an oral agreement whereby PG&E agreed to provide Claimant's residence with electric power in exchange for Claimant's agreement to pay Debtor's charges therefor; and

ii) since so contracting with Claimant to date, except for periods of involuntary and voluntary outages, PG&E has continued to supply electric power to Claimant.

Thus, not only was an oral agreement between Claimant and PG&E created, continued service by Debtor to Claimant gave rise to an implied contract imposing an obligation to serve.[4] And once so imposed the duty to serve cannot be extinguished by unilateral action of the utility.[5] Under any other rule, a segment of the public that has relied on a virtual monopoly to provide vital services could be irretrievably deprived of them at the whim of the utility.[6]

(b) <u>Statutory Duty</u>. The primary duty of a public utility is to render adequate service to its consumers.[7] This obligation, originally imposed by common law and presently incorporated in state utility statutes, arises independently of any contractual relations between the company and its customers.[8]

---

[4] Note, "*The Duty of a Public Utility to Render Adequate Service: Its Scope And Enforcement*," 62 Columbia Law Review 312, 314-315 & n. 20 (1962) (available @ https://www.jstor.org/stable/1120016?seq=1).
[5] *Id*. at 315 & n. 21.
[6] *Id*. at 315.
[7] *Id*. at 312.
[8] *Id*. at 312-313.

In California, PG&E's statutory obligation to render adequate service to its consumers is encompassed in California Public Utilities Code § 451.[9] That statute requires PG&E to "furnish and maintain such adequate, efficient, just, and reasonable service, instrumentalities, equipment, and facilities . . . as are necessary to promote the safety, health, comfort, and convenience of its patrons, employees, and the public."

(c) PG&E's Breach. Debtor breached its contractual and statutory duties to Claimant by first announcing in March 2018 that it would preemptively cut electric power during periods of "extreme fire conditions,"[10] and then intentionally and deliberately cutting power to Claimant's residence for various intervals in October 2018, September 2019, October 2019 and thereafter.[11]

Debtor has marketed its deliberate power outages as "public safety power shut-offs" using the acronym "PSPS." This marketing campaign appears to be a considered and thoughtful obfuscation – an attempt to divert attention from the real cause necessitating intentional outages: PG&E's fear of liability from wildfires caused by its negligence in failing to manage, maintain, repair, and/or replace its aging infrastructure. That failure has led to catastrophic wildfires, including the Butte Fire, the North Bay Fires and the Camp Fire, among others.

In truth, the Debtor's intentionally instigated power outages are more to protect PG&E from its past and continuing exposure from fires caused by Debtors' negligently maintained power lines and other equipment, which negligence and liabilities drove Debtors into these proceedings. In actuality, PSPS should be viewed as a euphemism for events that would more aptly be termed "Utility's Negligence Liability Avoidance Way" or "UNLAW," rather than speciously denoting, by its adoption of "PSPS," that Debtor's sole motivation for triggering the power outages is public safety.

PG&E's negligence is the ultimate cause necessitating its intentional power outages, and its own negligence should not excuse its failure to fulfill its contractual and statutory duties to the public, including Claimant.

---

[9] *Id.* n. 4.
[10] Claimant's Declaration at ¶ 4.
[11] *Id.* at ¶¶ 5 & 6.

Given its monopoly in the supply of electric power in Northern California, it was natural and foreseeable for PG&E to know that a breach of its obligations to supply power would force affected consumers to seek alternative power sources and cause them damages measured by the cost of obtaining that alternative. Here, it was a home standby generator purchased and installed by Claimant at their residence.[12]

3. <u>Debtor's Specific Objections Are Inapplicable to Claimant.</u>

The following responds to the specific reasons for objection to Claimant's Claim asserted by PG&E in the Objection using, for convenience of presentation, Debtor's headings.

(1) <u>Damage Not Caused by PG&E</u>. This objection, which asserts that the "harm or damage described in the Proof of Claim was not caused by Debtors"[13] is inapplicable to Claimant's Claim for the reasons discussed in § 2 above.

(2) <u>No Liability Claims</u>. In this objection, PG&E asserts "[t]hese Proofs of Claims provide no supporting documentation to enable the Reorganized Debtors to understand the purported basis for liability."[14] A simple review of Claimant's Claim as filed herein on October 19, 2019, including its separate explanatory attachment and the exhibits attached thereto (which are cited in Claimant's Declaration)[15] shows that this objection, as to Claimant, is specious.

(3) <u>Post-Petition Claims</u>. In this objection, PG&E states that "[t]hese Proofs of Claim assert Claims for amounts that <u>arose</u> after the Petition Date and, thus, do not represent prepetition liabilities of the Debtors subject to payment through the chapter 11 claims process."[16]

//
//

---

[12] "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300. *Cf. Virginia Birth-Related Neurological Injury Compensation Program v. Williamson,* not reported but available at https://casetext.com/case/virginia-birth-rel-v-williamson-2299-04 (involving death as a result of a power outage and awarding reimbursement for a backup generator).
[13] Debtors' Objection at 4:12-13.
[14] *Id.* at 4:15-16.
[15] Claimant's Declaration at ¶¶ 11 & 12.
[16] Debtors' Objection at 4:20-22 (emphasis added).

In California, a cause of action for breach of contract accrues when the contract has been breached.[17] In this case, it could be argued that an anticipatory breach of Claimant's agreement with PG&E occurred in March 2018 when PG&E announced its planned outages when extreme fire conditions existed.[18] However, a breach actually occurred in October 2018 when PG&E first deliberately cut power to Northern California customers, including Claimant.[19] Moreover, Claimant's damages were incurred on December 1, 2018, when Claimant accepted the proposal for the purchase and installation of a standby generator and related materials and components for the price of $18,025.[20]

Thus, in any event, Claimant's Claim against PG&E <u>arose</u> before these proceedings commenced on January 29, 2019; hence, Debtors' post-petition claims objection is inapplicable to Claimant's Claim.

(4) <u>Rule 14 Claims</u>. For this objection, Debtors says certain of the "Proofs of Claim assert amounts for "food losses, business losses, or wage losses" and therefore are supposedly barred "by Rule 14 approved by the California Public Utilities Commission."[21]

This objection is inapplicable to Claimant's Claim because food losses, business losses, or wage losses are neither being sought by, nor are the basis of, Claimant's Claim for reimbursement of the cost of a standby generator.

Further, as quoted by Debtor, "Rule 14 . . . provide[s] that 'PG&E will not be liable for interruption or shortage or insufficiency of supply, or any loss or damage of any kind of character occasioned thereby, if same is caused by inevitable accident, act of God, fire, strikes, riots, war, or any other cause <u>except that arising from its failure to exercise reasonable diligence</u>.'"[22] Consequently, this objection is also inapplicable to Claimant's Claim for reimbursement of the cost of a standby generator because the Claimant's Claim arises from the failure by PG&E to exercise reasonable diligence in managing, maintaining, repairing, and/or

---

[17] *Spear v. Cal. State Automobile Ass'n*, 2 Cal.4th 1035, 1042, 9 Cal. Rptr. 2d 381, 831 P.2d 821 (1992) (hereinafter "*Spear*").
[18] Claimant's Declaration at ¶ 4.
[19] *Id.* ¶ 5(a).
[20] *Id.* ¶ 11.
[21] Debtors' Objection at 5:3-5.
[22] *Id.* at 5:7-10 (emphasis added).

replacing its aging infrastructure compelling PG&E to shut off power to avoid further liabilities from additional wildfires for which it would be responsible. In other words, PG&E breached its contractual and statutory duties to supply power to Claimant and others first and foremost to protect itself from exposure for its own negligence thereby providing Claimant and others with no alternative but to obtain power from the only other source available. Debtor's negligence, *i.e.*, its failure to exercise reasonable diligence, forecloses PG&E's reliance on Rule 14.

    (5) <u>Rule 16 Claims</u>. On its face, this objection is directed only at those claims which "assert amounts for removal/trimming of trees, overgrown vegetation impeding access to the Debtors' facilities, and/or the consequences of opening locked gates"[23] and accordingly is inapplicable to Claimant's Claim.

    (6) <u>Rule 2 Claims</u>. This objection is directed only at claims asserting "amounts for damages caused to electronics, appliances, pumps, and HVAC," which are subject to the protections against liability furnished by Rule 2[24] and accordingly is not applicable to Claimant's Claim.

    (7) <u>Statute of Limitations Passed</u>. Debtor's final objection is directed at claims barred by a three-year statute of limitations "with respect to property damage," citing Cal. Code Civ. P. § 338(c)(1).[25]

  First, Cal. Code Civ. P. § 338(c)(1) sets forth a three-year statute of limitations for an "action for taking, detaining, or injuring goods or chattels, including an action for the specific recovery of personal property." Claimant's Claim is <u>not</u> based on the taking, detaining, or injuring goods or chattels nor seeks recovery of personal property. Accordingly, the cited statute of limitations is inapplicable to Claimant's Claim.

  Although not raised by Debtors, the statute of limitations potentially pertinent to Claimant's Claim is § 339 of the California Code of Civil Procedure, which sets forth a two-year statute of limitations for an "action upon a contract, obligation or liability not founded upon an instrument of writing." Assuming *arguendo*, (1) that § 339 of the California Code of Civil

---

[23] *Id.* at 5:25-27.
[24] *Id.* at 6:16-17.
[25] *Id.* at 6:19-21.

Procedure is applicable to Claimant's Claim and (2) that PG&E did not waive this defense by failing to raise it in Debtors' Objection, such statute would nevertheless not bar Claimant's Claim because it was timely commenced within two years by Claimant's filing herein of Claimant's Claim on October 19, 2019.

As discussed earlier, a cause of action for breach of contract accrues when the contract has been breached[26] and whether PG&E's breach of its contractual obligation to Claimant is viewed as anticipatory or actual, Claimant's Claim was filed within two years of the respective breach.[27]

4. <u>Conclusion</u>.

In this Response, Claimant has furnished the information required by §§ 2 I i. and ii. of the Omnibus Objections Procedures Order and further shown that each of the specific reasons for objection raised in Debtors' Objection is inapplicable to Claimant's Claim or are otherwise without merit. Accordingly, Claimant respectfully requests entry of an order denying Debtor's Objection as to Claimant's Claim and entitling Claimant to receive distributions from Debtors' estate in order to satisfy Claimant's Claim.

Dated: November 30, 2020.

_____
Mark A. Klein,
*Pro Se*

---

[26] *Spear, supra,* Note 17 and accompanying text.
[27] *See* text accompanying Notes 18 and 19, *supra*.

# DECLARATION OF MARK A. KLEIN IN SUPPORT OF RESPONSE

I, Mark A. Klein, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. On October 19, 2019, I, along with my wife, Janet S. Klein (collectively "**Claimant**") filed in these proceedings a Proof of Claim, Number 80500 (the "**Claim**") against Pacific Gas and Electric Company ("**PG&E**" or "**Debtor**") seeking reimbursement of the sum of $18,025, which was Claimant's out of pocket cost of purchasing and installing a standby generator to power Claimant's residence during periods that Debtor preemptively cuts and continues to cut electric power.

2. Claimant owns and resides at the residential real property located at 19405 Park Ridge Drive Hidden Valley Lake (the "**Residence**") in Northern California.

3. During, at or shortly after, their purchase of the Residence in October 2004, Claimant orally contracted with PG&E to supply the Residence with electric power (the "**Contract**"). Under the Contract, PG&E agreed to provide adequate and continuous electric power to the Residence in exchange for Claimant's agreement to pay Debtor's charges therefor as determined by PG&E in accordance with California law. Except during involuntary power outages not relevant to Claimant's Claim herein and power outages announced and intentionally instituted by Debtor as described below in ¶¶ 4 and 5, since first so contracting with PG&E, Debtor has been, and now is, providing, and Claimant has been, and now is, consuming, electric power supplied by Debtor.

4. Based on media reports, I am informed that as a consequence of accusations that its power lines and/or transformers may have caused the devastating California wine country wildfires beginning in October 2017 and in an effort to limit, mitigate or avoid its potential future exposure from wildfires caused by claims based on

    (a)     PG&E's equipment and the prevailing legal doctrine of "inverse condemnation," or

9

DECLARATION OF MARK A. KLEIN
IN SUPPORT OF RESPONSE TO 42ND
OMNIBUS OBJECTION (CLAIM # 80500)

Case: 19-30088   Doc# 9634   Filed: 11/30/20   Entered: 11/30/20 16:19:15   Page 9 of 13

(b) Debtor's negligent failure to maintain and modernize its power lines, transformers and other equipment,

on or about March 21, 2018, PG&E announced that it would preemptively cut electric power during periods of "extreme fire conditions."

5. From March 21, 2018 through the date Claimant's Claim was filed herein, in accordance with and in furtherance of its announcement described in ¶ 4, PG&E deliberately cut power to Northern California customers, including Claimant:

(a) from October 14 to October 15, 2018;

(b) on September 4, 2019;

(c) from October 9 to October 11, 2019; and

(d) from October 26 to October 27, 2019.

6. On October 18, 2019, PG&E announced that power shutoffs could continue for 10 years before they can start to reduce significantly and such outages have, in fact continued after October 18, 2019, the latest occurring over several days in October 2020.

7. As confirmed by media reports, Debtor has a monopoly in the supply of electric power to customers in Northern California, specifically from Eureka in the north down to Bakersfield. This monopoly effectively prevents Claimant, like virtually all of Debtor's current customers, from obtaining electricity from any utility other than Debtor. Thus, during power outages initiated by Debtor, customers, including Claimant, must make a binary choice of either doing without electricity or identifying and installing a backup power source to provide a respite until Debtor restores power.

8. In general, like virtually all human beings, Claimant needs electricity to enjoy modern living and tranquility. In particular, Claimant also needs electric dependent medical technologies such as breathing machines and home oxygen to sustain and maintain Claimant's health and welfare. Claimant has notified Debtor of Claimant's need for, and use of, specific electric life-support devices by completing and submitting to Debtor a Medical Baseline Allowance Application, which application was accepted by Debtor. Claimant's acceptance and enrollment in Debtor's Medical Baseline Program has resulted in Claimant receiving numerous

notifications from Debtor of its planned and effectuated power outages, which Debtor calls "Public Safety Power Shutoffs," and Claimant's receipt from Debtor of an additional allotment of electricity to support Claimant's medical equipment at a rate lower than otherwise available to customers who are not enrolled in PG&E's Medical Baseline Program. Claimant's acceptance and enrollment in Debtor's Medical Baseline Program has not, however, resulted in Claimant's exemption from Debtor's so-called Public Safety Power Shutoffs, which when occurring deprive Claimant of electrical power in the same manner and duration as Debtor's other customers in areas affected by the outage.

9. As recognized by Debtor itself, it is critical for customers, such as Claimant, who rely on electric dependent medical technologies such as breathing machines and home oxygen to have a plan in place, such as a standby generator, for an extended power outage. Accordingly, following Debtor's announcement described in ¶4, Claimant began investigating the purchase and installation of a standby generator, including finding and locating manufacturers, dealers and installers; determining fuel sources and their availability and continuity; determining Claimant's power needs and corresponding generator size; and ascertaining project cost.

10. Claimant accelerated such investigation following the first power outage initiated by PG&E in October 2018 described above in paragraph 5(a) concluding that liquid propane ("**LP**") would be an efficient fuel for the standby generator in view of sources therefor available for the Residence, provided that Claimant increased the size of their existing LP tank at the Residence. Accordingly, in October 2018, Claimant caused its LP supplier to increase the size of Claimant's existing LP tank to accommodate the addition of an LP-fueled standby generator contemplated by Claimant.

11. During October and November 2018, Claimant also identified, interviewed and negotiated with a dealer and qualified installers for the purchase and installation of a standby generator. On December 1, 2018, Claimant accepted a bid proposal from the dealer-installer, Independent Electrical Company ("IEC"), for the purchase and installation of a standby generator and related materials and components. True copies of the bid proposal from IEC as accepted by Claimant, and the later signed "Electrical Services Agreement," each related to the

11

purchase and installation of the standby generator and related materials and components at the Residence (collectively the "**Generator Installation Agreement**"), are attached to Claimant's Claim marked Exhibit A and Exhibit B, respectively, and are incorporated herein by reference.

12. IBC began work to acquire and install the standby generator referenced in Generator Installation Agreement on December 3, 2018 and completed work on May 14, 2019. During that period and as the work progressed, IBC delivered to Claimant five invoices for installment payments due for the work performed and equipment and materials provided in accordance with the Generator Installation Agreement. True copies of such invoices as delivered to Claimant by IEC are attached to Claimant's Claim marked Exhibit C1 to C5, inclusive, and are incorporated herein by reference. The dates such invoices were delivered, which coincides with the dates of payment and the amounts thereof made/by Claimant to IEC, were as follows:

| Date invoiced delivered | Amount Invoiced and paid |
|---|---|
| 2-Feb-19 | $ 1,802.50 |
| 23-Feb-19 | 901.00 |
| 20-Mar-19 | 4,506.50 |
| 20-Mar-19 | 2,500.00 |
| 14-May-19 | 1,105.00 |
|  | 7,210.00 |
|  | $18,025.00 |

13. At all times during the period since first contracting with PG&E to provide the Residence with electric power, Claimant has duly and fully performed, and continues to duly and fully perform, all covenants, obligations and conditions required of Claimant under the contract, including timely paying to PG&E all amounts charged by Debtor in its monthly statements to Claimant for the electric power provided to the Residence and consumed by Claimant.

14. PG&E has breached the contract with Claimant, and breached its general duty independent of contract, to provide Claimant with electric power by first announcing that Debtor would preemptively cut electric power during periods that PG&E determined "extreme fire conditions" may exist and then intentionally and deliberately shutting off electric power to the

12
DECLARATION OF MARK A. KLEIN
IN SUPPORT OF RESPONSE TO 42ND
OMNIBUS OBJECTION (CLAIM # 80500)
Case: 19-30088    Doc# 9634    Filed: 11/30/20    Entered: 11/30/20 16:19:15    Page 12 of 13

Residence during those periods. Such breaches entitle Claimant to reimbursement for the cost of Claimant's purchase and installation of a standby generator to supply the Residence with power during periods that Debtor purposely shuts off power to the Residence.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the est of my knowledge, information, and belief. Executed this 30th day of November, 2020, in Hidden Valley Lake, California.

_____
Mark A. Klein

## DECLARATION REGARDING SERVICE

I, Mark A. Klein hereby declare under penalty of perjury that on November 30, 2020, I served the within "Response of Claimant, Mark A. Klein and Janet S. Klein, Husband and Wife, to Reorganized Debtors' Forty-Second Omnibus Objection to Claims (No Liability Passthrough Claims); Declaration of Mark A. Klein In Support of Response" by transmitting it via email to the email addresses set forth below:

PGEclaims@kbkllp.com

Peter J. Benvenutti, Esq.
pbenvenutti@kbkllp.com

Tobias S. Keller, Esq.
tkeller@kbkllp.com

Jane Kim, Esq.
jkim@kbkllp.com

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of November, 2020, in Hidden Valley Lake, California.

_____
Mark A. Klein