1  G. LARRY ENGEL (SBN 53484)
   **ENGEL LAW, PC**
2  12116 Horseshoe Lane
   Nevada City, California 95959
3  Telephone:    (415) 370-5943
   Email:        larry@engeladvice.com
4
   Attorneys for
5  Creditor (who is also the Creditor himself
   and shares the same address and data for service
6  and otherwise, is the person with authority to reconcile,
   settle, or otherwise resolve the Objection as to Creditor)
7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                   (San Francisco Division)

11 In re                              )  Case Nos. 19-30088 DM (Lead Case)
                                      )            19-30089 DM
12 PG&E CORPORATION                   )
                                      )  Chapter 11
13 -and-                              )  Jointly Administered
                                      )
14 PACIFIC GAS AND ELECTRIC COMPANY   )  **RESPONSE TO REORGANIZED
                                      )  DEBTORS' FORTY-SECOND OMNIBUS
15                                    )  OBJECTION TO CLAIMS (NO
                                      )  LIABILITY/PASS THROUGH CLAIMS)
16            Debtors.                )  (DKT 9460); REQUEST FOR #105(d)
                                      )  STATUS CONFERENCE; AND REQUEST
17                                    )  FOR JUDICIAL NOTICE (EX.B)**
   ☐ Affects PG&E Corporation         )
18                                    )  Date:      December 15, 2020
                                      )  Time:      10:00 a.m.
19 ☐ Affects Pacific Gas and Electric Company )  Courtroom: 17
                                      )  Place:     (Telephonic Appearances Only)
20 ☑ Affects both Debtors.            )             450 Golden Gate Ave., 16th Floor
                                      )             San Francisco, CA 94102
21 * All papers shall be filed in the Lead Case No. )  Judge:     Hon. Dennis Montali
   19-30088 DM                        )
22 _____ )

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. CERTAIN BACKGROUND MATTERS REGARDING THE POC CLAIM FACTS AND SUPPORTING LAW, INCLUDING SUPPORT FOR THE POC FROM "RELATED PROCEEDINGS," AS WELL AS DISTINGUISHING CREDITOR'S POC FROM THE "CLASS ACTION PSPS DECISION." ........................................................................ 1

   A. Introduction To Creditor Poc Claims (Asserted By Creditor To Be Post-Petition Claims) And How They Integrate With Subsequent Developments And Survive The Disputed Objection. ........................................................................................................... 1

      1. The Objection Lacks Merit For Many Reasons That Survive the Court's Class Action PSPS Decision, Since, Among Other Things, Creditor's POC Includes Broader and Different Claims, As Wells As Creditor's Respectful Attempt to Distinguish Even The Similar But Narrower And Different Claims At Issue in the Incorporated PSPS Class Appeal. ...................................................... 2

      2. Creditor's POC Must Prevail, Because These Are Post-Petition Claims, Include Claims Against PG&E Corp. (And, Therefore, Not Preempted), And Have Other Merits Beyond the PSPS Class Action Claims, Especially As to Claims For Coercing PSPS Victims To Purchase Promoted Natural Gas Generators. ........................................ 4

   B. The Objection's "Rule 14 Claim," "PSPS Claim," And Section 1759 Arguments Are Wrong And Inapplicable, Especially AS To PG&E Corp., And (Like CPUC ESRB-8) the POC Claims Distinguish Between Tolerable And "Excessive" PSPS Conduct. ............... 6

      1. This Objection Incorrectly Classified Creditor's POC As "Rule 14"/"PSPS Claims," And That Is Only An Insufficient And Erroneous General Denial Without Adequate Support Or Focus On the POC Facts. ............................................ 6

      2. Framing This Dispute in General Against the Flawed Objection. .................... 7

      3. None of the Disputed Utility Excuses, Especially Preemption, Should Protect PG&E Corp. From POC Claims. ............................................................. 8

      4. Some Other Reasons Why Creditor's POC Should Be Allowed As Supporting CPUC Goals, Such As Helping the Utility (Although Involuntarily) Comply with ESRB-8 And Judge Alsup's Key Probation Requirements Order. ................. 9

      5. The Class Action PSPS Decision Does Not Apply To Many of the POC Claims, Which Are Broader And Distinguishable, And Creditor Respectfully Disagrees With Whatever In That Decision Is Deemed To Apply To His Claims. ................... 11

      6. Some Additional Considerations For Allowing Creditor's POC to Survive Alleged Section 1759/Covalt Preemption. ................................................ 11

      7. Further Illustrations Beyond This Court's 3/30/20 Class Action PSPS Decision (#34 in Adversary 19-03061) Applying PUC Section 1759 Etc. (the "Class Action PSPS Decision"). ............................................................. 12

      8. Some Additional Considerations For Allowing Creditor's POC To Survive the Rule 14 Objections, Addressing Creditor's Local Situation. .............................. 14

i

RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS THROUGH CLAIMS) (DKT 9460)

1125671.2

II. CAUSATION SHOULD NOT BE AN OBSTACLE TO CREDITOR'S POC CLAIMS FOR MANY REASONS, INCLUDING THE NATURE AND BROADER SCOPE OF THOSE CLAIMS AND EVIDENCE THAN WHAT WAS ADDRESSED EARLIER BY THIS COURT AS TO NARROWER PSPS CLASS ACTION CLAIMS. .......................... 16

III. CREDITOR'S POC CLAIMS ARE POST-PETITION, NOT PRE-PETITION, AS EXPLAINED IN THAT POC. ................................................................................. 17

IV. PG&E IS NOT EXCUSED FROM LIABILITY, BECAUSE IT CONTENDS THAT MORE VICTIMS MAY RECOVER FROM PG&E'S WRONGS IF CREDITOR'S CLAIMS ARE ALLOWED. ..................................................................................................... 21

V. REQUEST FOR SECTION 105(D) STATUS CONFERENCE TO DISCUSS HOW BEST TO DEAL WITH INTEGRALLY RELATED DISPUTES NOT ADDRESSED BY DEBTORS/REORGANIZED DEBTORS, SUCH AS CREDITOR'S SIMILAR ADMINISTRATIVE CLAIM AND THE CLASS ACTION APPEAL. .................................... 21

VI. CONCLUSION. ............................................................................................ 22

ii

**TABLE OF AUTHORITIES**

**Cases**

*Barham v. Southern California Edison Co.*,
74 Cal. App. 4th 744 (1999) ................................................................. 6

*Bigbee v. Pac. Tel. & Tel. Co.*,
34 Cal. 3d 49 (1983) ........................................................................... 16

*Cal. Dept. of Health Servs. V. Jensen (In re Jensen)*,
995 F.2d 925 (9th Cir. 1993) ......................................................... 19, 20

*Cellular Plus, Inc. v. Superior Court*,
14 Cal. App. 4th 1224 (1993) ................................................................ 8

*Chamber of Commerce v. City of Seattle*,
890 F.3d 1052 (9th Cir. 2018) .............................................................. 8

*City of Modesto v. Dow Chem. Co.*,
19 Cal. App. 5th 130 (2018) ............................................................... 16

*Conseco, Inc. v. Schwartz (in re Conseco, Inc.)*,
330 B.R. 673 (Bankr. N. D. Ill. 2005) ................................................ 19

*Cundiff v. GTE California*,
101 Cal. App. 4th 1395 (2002) ............................................................. 9

*Elliott v. General Motors, LLC*,
829 F.3d 135 (2d Cir. 2017), cert. denied, 137 S.Ct. 1813 (2017) ............... 20

*Fogel v. Zell*,
221 F.3d 955 (7th Cir. 2000) ......................................................... 18, 20

*Hartwell Corp. v. Superior Court*,
27 Cal. App. 4th 256 (2002) ...................................................... 2, 3, 8, 9

*Hexcel Corp. v. Stepan Co. (In re Hexcel)*,
239 B.R. 564 (N.D. Cal. 1999) ........................................................... 19

*In re Conseco Life Ins. Co. Cost of Ins Litig.*,
2005 US Dist. LEXIS 32375 (C.D. Cal. 2005) .................................... 19

*In re STNL Corp.*,
571 F.3d 826 (9th Cir. 2009) ............................................................... 19

*In re Stonewall F.*,
208 Cal. App. 3d 1054 (1989) .............................................................. 4

*Kairy v. SuperShuttle Int'l*,
600 F. 3d 1146 (9th Cir. 2011) ............................................................. 8

**RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS-THROUGH CLAIMS) (DKT 9460)**

1125671.2

*Mata v. Pacific Gas & Electric Co.,*
224 Cal. App. 4th 309 (2014) ............................................................................... 2

*Matter of Dallas Roadster Ltd. (Texas Capital Bank, N.A. v. Dallas Roadster, Ltd.),*
846 F.3d 112 (5th Cir. 2017) ............................................................................... 20

*Nwabueze v. AT&T,*
No. C 09-159 SI, 2011 WL 332473 at 16 (N. D. Cal. 1/29/2011) ........................ 3

*Pacific Bell Telephone Co. v. Southern California Edison Co.,*
208 Cal. App. 4th 1400 (2012) .............................................................................. 6

*PegaStaff v. Pacific Gas & Electric Co.,*
239 Cal. App. 4th 1303 (2015) .............................................................................. 3

*San Diego Gas & Electric  v. Superior Court,*
13 Cal. 4th 893 (1996) .............................................................................. 8, 11, 12

*Stepak v. Am. Tel. & Tel. Co.,*
186 Cal. App. 3d 633 (1986) ................................................................................. 8

*Tesoro Refining & Marketing Co. v. Pacific Gas &Electric Co.,*
146 F. Supp. 3d 1170 (N.D. Cal. 2015) ............................................................. 8, 9

*U.S. v. LTV Corp. (In re Chateaugay),*
944 F.2d 997 (2d Cir. 1991) ................................................................................ 18

*Uriell v. Regents of Univ. of Cal.,*
234 Cal. App. 4th 735 (2015) .............................................................................. 16

*Vila v. Tahoe Southside Water Utility,*
233 Cal. App. 2d 469 (1965) ................................................................................. 8

*Wilson v. Southern California Edison Co.,*
234 Cal. App. 4th 123 (2015) ................................................................................ 2

*Zilog, Inc. v. Corning (In re Zilog),*
450 F. 3d 996 (9th Cir. 2006) .............................................................................. 19

**Statutes**

California Civil Code
Section 3523 .......................................................................................................... 11

California Public Utilities Commission
Resolution ESRB-8................................................... 2, 5, 6, 7, 8, 10, 12, 14, 18
Rule 14 ..................................................................................... 7, 8, 9, 18, 21

California Rules of Court
Rule 3.550 (May 21, 2018)...................................................................................... 6

Federal Rules of Bankruptcy Procedure
Rule 9014(c) ......................................................................................................... 22

b

RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION
TO CLAIMS (NO LIABILITY/PASS-THROUGH CLAIMS) (DKT 9460)
1125671.2

Case: 19-30088   Doc# 9835   Filed: 12/22/20   Entered: 12/22/20 13:41:55   Page 5 of
29

Public Resources Code
    Section 4292 ............................................................................................................... 2, 8
    Section 4293 ...................................................................................................... 2, 7, 8, 15

Public Utilities Code
    Section 451 ............................................................................................................ 2, 5, 8
    Section 1759 ............................................................................................... 4, 7, 8, 9, 11
    Section 2016 .................................................................................................... 2, 12, 18
    Section 2106 ..................................................................................................................... 7
    Section 8386(a) ....................................................................................................... 2, 8
    Section 8386(b) .......................................................................................................... 14

c

**RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS THROUGH CLAIMS) (DKT 9460)**

1125671.2

**TO: (A) THE HONORABLE DENNIS MONTALI UNITED STATES BANKRUPTCY JUDGE; (B) THE OFFICE OF THE UNITED STATES TRUSTEE; (C) DEBTORS AND REORGANIZED DEBTORS; AND (D) OTHER PARTIES ENTITLED TO NOTICE:**

G. Larry Engel ("**Creditor**") respectfully submits this "**Response**" and opposition to the "Reorganized Debtors' Forty-Second Omnibus Objection To Claims (No Liability/Passthrough Claims)" [Dkt. 9460] (the "**Objection**"), as well as the supporting Declaration of G. Larry Engel (the "**Engel Declaration**"), that defend Creditor's timely filed and incorporated Proof of Claim #80033 (the "**POC**") attached to that Engel Declaration and excerpted in Exhibit A herein. This Response also includes (i) a request for a section 105(d) status conference, and (ii) a request for judicial notice as to certain "**Related Proceedings**" (identified in Exhibit B) incorporated herein by reference.

This Response should also be sufficient for such purposes any "Information Request Form" pursuant to this Court's "Order Approving ADR and Related Procedures For Resolving General Claims" [Dkt. 9148] (the "**ADR Order**"), if it becomes applicable. That POC by itself also should be sufficient to satisfy the requirement in # 2.1(c) of the Court's "**Omnibus Procedures Order**" (Dkt. 82280. Nevertheless, this Response further explains, supplements, and updates the POC in the context of this specific Objection's disputes and terminology. Creditor uses the definitions from the disputed Objection, but Creditor reserves the right to dispute their substance and application to Creditor or to his POC. For example, as explained in his POC, **Creditor contends that his claims are post-petition claims, not** "**Rule 14 Claims**" or "**PSPS Claims**" and are **not subject to the Objection**. Creditor objects as explained below to the contrary #4.d of Declaration of Renee Records, as well as to her #3 as hearsay and lacking foundation, unless Creditor can do the same.

**I.    CERTAIN BACKGROUND MATTERS REGARDING THE POC CLAIM FACTS AND SUPPORTING LAW, INCLUDING SUPPORT FOR THE POC FROM "RELATED PROCEEDINGS," AS WELL AS DISTINGUISHING CREDITOR'S POC FROM THE "CLASS ACTION PSPS DECISION."**

**A.    INTRODUCTION TO CREDITOR POC CLAIMS (ASSERTED BY CREDITOR TO BE POST-PETITION CLAIMS) AND HOW THEY INTEGRATE WITH SUBSEQUENT DEVELOPMENTS AND SURVIVE THE DISPUTED OBJECTION.**

1

**1.** **The Objection Lacks Merit For Many Reasons That Survive the Court's Class Action PSPS Decision, Since, Among Other Things, Creditor's POC Includes Broader and Different Claims, As Wells As Creditor's Respectful Attempt to Distinguish Even The Similar But Narrower And Different Claims At Issue in the Incorporated PSPS Class Appeal.**

Exhibit A's POC excerpt contains a detailed discussion of the relevant claims in the context of many facts, some law, and referenced earlier stages of "**Related Proceedings**" support, as well as a reservation of rights also applicable and incorporated herein. This Response also explains what exists beyond the foundation of the "**PSPS Class Action**" filings (including the "**PSPS Class Appeal**" briefs) that followed after Creditor's more expansive, in many cases different, and distinguishable earlier POC claims. Creditor's broader and more numerous POC claims both exceed and overlap with the more limited claims addressed in this Court's "**Class Action PSPS Decision**" now on appeal. Therefore, that Class Action decision should not defeat or control at least as to most of Creditor's POC claims, but Creditor respectfully adopts and incorporates for any applicable POC claims the position of the Plaintiff's PSPS Class Appeal briefs and record. That is part of the broader mass of supportive "**Related Proceedings**" (Exhibit B), especially including the relevant docket and record in Judge Alsup's "**Probation Proceeding**."

The many wrongs by Debtors and Reorganized Debtors at issue in Creditor's POC should be enforceable (**without suffering section 1759 or other preemption**) under Public Utilities Code section 2016 and otherwise. They are now even better documented in Related Proceedings, such as with respect to Public Utilities Code ("**PUC**") sections 451, 2016, and 8386(a), Pub. Res. Code section 4292 and 4293, and CPUC ESRB-8 and General Orders 95 and 165, as well as demonstrating sufficient "causation" for all POC claims. See, eg, *Wilson v. Southern California Edison Co.*, 234 Cal. App. 4th 123 (2015) (illustrating how it is not general regulation, but rather specific applications, that govern preemption); *Mata v. Pacific Gas & Electric Co.,* 224 Cal. App. 4th 309, 318 (2014), as modified on denial of rehearing, (even such minimum regulatory requirements cannot relieve PG&E of "its obligation to exercise reasonable care to avoid causing harm to others … or its responsibility for failing to do so."); *Hartwell Corp. v. Superior Court*, 27 Cal. App. 4th 256 (2002) (claims aiding enforcement of CPUC regulation does not hinder or interfere with them).

Moreover, many such POC alleged wrongs have become extensively admitted or more

1125671.2

obvious, such as described in both the Butte County criminal proceeding (called the "**Butte Fire Case**" below) and in Judge Alsup's Probation Proceeding, such as by "**PG&E's 7/1/20 Butte Admissions**," the "**PG&E Zogg 11/18/20 Admissions**," and the "**Key Probation Requirements Order**." See the Engel Declaration, discussing how similar in key ways such PSPS wrongs in Nevada City are to the "**Butte County Case**" and "**Zogg Fire Case**" circumstances. Rather than interfering or conflicting with or hindering CPUC regulation, instead, the prospect of enforcing POC claims aids in or complements enforcement of the CPUC regulations and applicable laws. See, eg, *Hartwell Corp. v. Superior Court*, 27 Cal. 4th 256 (2002); *PegaStaff v. Pacific Gas & Electric Co.*, 239 Cal. App. 4th 1303, 1321-22 (2015) (risk of liability provides a financial incentive for PG&E compliance); *Nwabueze v. AT&T*, No. C 09-159 SI, 2011 WL 332473 at 16 (N. D. Cal. 1/29/2011). See also Judge Alsup's 4/29/20 "**Key Probation Requirements Order.**"

While each of the "**Related Proceedings**" adds useful evidence, facts, and admissions for POC claims, the greatest public admissions of applicable wrongdoing and relevant ruling and findings of continuing wrongs and harms are in Judge Alsup's "**Probation Proceeding**" (eg, Judge Alsup's 4/29/20 "**Key Probation Requirements Order**"), including when he has repeatedly required PG&E to admit or deny or explain problems, such as his Monitor's negative findings, wrongs exposed by the media or other Related Proceedings (eg, the Wall Street Journal article of July 10, 2019, also enhanced against both PG&E Corp. and the Utility by the Securities Plaintiffs by adversary proceeding earlier in this Case), or the criminal accusations and other related evidence and allegations from the "**Butte Fire Case**," including the 85 count County of Butte "**Indictment**" #29CF01422 filed 3/17/20 in the Butte County Superior Court and the Butte County District Attorney's "The Camp Fire Public Report" dated June 16, 2020 (all collectively, together with all of what is cited therein, collectively called the "**Butte Fire DA Case,**"), as well as "PG&E's Response To People's Statement of Factual Basis In Support of the Pleas And Sentencing Statement" filed July 1, 2020, as Document #1232 (together with the matters of record cited therein, collectively called "**PG&E's 7/1/20 Butte Admissions**") in the Probation Proceeding. More recently, there is a similar record created in the Probation Proceeding as to the "**Zogg Fire**" and herein collectively (including the evidence and filings referenced therein, called the "**Zogg Fire Case**"), including Judge Alsup's related Order of October 29, 2020, and

3

**RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS THROUGH CLAIMS) (DKT 9460)**

Case: 19-30088   Doc# 9835   Filed: 12/21/20   Entered: 12/21/20 12:41:55   Page 9 of 29

1125671.2

1   PG&E's related submission to that court on October 26, 2020, followed by the (**important for PSPS**

2   **purposes**) "Response To Request For Follow Up By PG&E Concerning Its October 26 Submission"

3   filed November 18, 2020, as #1265 (the "**PG&E Zogg 11/18/20 Admissions**").

      **2.    Creditor's POC Must Prevail, Because These Are Post-Petition Claims, Include Claims Against PG&E Corp. (And, Therefore, Not Preempted), And Have Other Merits Beyond the PSPS Class Action Claims, Especially As to Claims For Coercing PSPS Victims To Purchase Promoted Natural Gas Generators.**

7       Creditor's POC describes itself as stating **post-petition claims** and that are **filed in the**

8   **alternative also as pre-petition claims** only in defensive anticipation of the incorrect attack illustrated

9   in the Objection and disputed below. Such POC rebuttal is also focused on the **wrongs by PG&E**

10  **Corp.**, as one alternative means of avoiding the Debtors' and Reorganized Debtors' predictable

11  attempt to misuse regulatory arguments (eg, preemption etc.) to evade responsibility. See, eg, PUC

12  section 1759 does not protect the Utility's parent. PG&E Corp.'s POC culpability for PSPS wrongs is

13  different from such securities law claims, but the key facts equally apply. Also, by demonstrated

14  wrongful, willful, reckless, grossly negligent, and otherwise improper acts and omissions by Debtors

15  and Reorganized Debtors, often contrary to, and in noncompliance with, applicable safety and other

16  laws and regulations, they have created a flawed system too dangerous to use even in "normal"

17  conditions (ie, those little different than in past decades). Those systemic wrongs (called "E System

18  Flaws" in the POC) were increased by such Debtors simultaneously engaging in a grossly negligent

19  and reckless "run it until it breaks" manner that will require at least a decade more to fix. See, eg,

20  Judge Alsup's Key Probation Requirements Order.

21      The POC excerpt (Exhibit A) also addresses some other matters of substance and the broad

22  scope of the separate, asserted claims, especially illustrated by wrongful and coercive use of **excessive**

23  PSPS to force "self-defense" purchases by customers (like Creditor) of natural gas generators

24  promoted by the Utility to sell its natural gas and induce involuntarily support for its dangerous and

25  neglected grid repair strategy and flawed and insufficient legal and regulatory compliance to unjustly

26  enrich and benefit itself. See the Engel Declaration. Incidentally, the covid shelter in place

27  requirements add more force and urgency to the damages and harms from **excessive** PSPS and worse.

28  Cf. *In re Stonewall F.*, 208 Cal. App. 3d 1054 (1989).

4

**RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS-THROUGH CLAIMS) (DKT 9460)**

Case: 19-30088   Doc# 9855   Filed: 12/23/20   Entered: 12/23/20 14:40:55   Page 10 of 29

1125671.2

By forcing such "self-defense generation" by those who can afford such natural gas generators and by driving away from fire risk areas those customers who cannot afford such self-help, Debtors and Reorganized Debtors are creating a two tiered system in fire country; eg, shifting from their public trust, full territory electric service required by law (eg, PUC section 451) to only serving properly (ie, consistent with applicable laws and regulations) their desired low cost/high return urban and suburban areas, while gradually abandoning the riskier, higher cost/lower profitable areas with the most neglected system. Meanwhile, such coerced customer generation becomes a means of mitigating their damages for their wrongs, plus helping in their CPUC and Probation Proceeding compliance requirements. See discussion herein of ESRB-8. Consider the Utility's abandonment of its long-neglected Caribou-Palermo Line, after part of it caused the Paradise fire. Will they expand that practice more generally throughout fire country? The more such PSPS shifts such customers to self-defense generation (or drives them away), then the safer and more profitable Reorganized Debtors could be, assuming, however, they can again evade their contrary legal and regulatory obligations to serve the entire territory. This is not unprecedented. Aggressive "players" often seem tempted to "re-define" various controlled monopolies for higher "shareholder value," arguing (wrongly) that monopolies (eg, the post-office, railroads, etc.) should be allowed to cherry-pick their high profit customers in safe and dense areas, while abandoning those living in low profit/high cost/inconvenient or rural places. Sacrificing those less desirable (to PG&E) customers and areas losing service in such a manner would be wrong and contrary to applicable law and regulations.

But for those continuing POC alleged wrongs, the **CPUC ESRB-8 PSPS** events would be far more tolerable and "**normal**" (eg, less frequent, less prolonged, less harmful, and in general less "excessive"), instead of "intolerable" (eg, more frequent, more prolonged, more harmful and, therefore, "**excessive**"). Note that the Utility's Wildfire Mitigation Plan expects PSPS victims in fire country to endure a slow repair and maintenance effort for at least a decade, while the end-of-life equipment is gradually upgraded, while the massive vegetation problem that has long been an illegal threat to system safety often continues, and while the other problems and wrongs addressed by Judge Alsup's Key Probation Requirements Order are perpetuated. See also ESRB-8 discussions below and the Engel Declaration. Such "excessive" PSPS especially harms those who cannot afford generators,

5

**RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS-THROUGH CLAIMS) (DKT 460)**

Case: 19-30088   Doc# 5895   Filed: 02/24/20   Entered: 02/24/20 17:42:55   Page 11 of 29

1125671.2

but even for those buying such generators (like Creditor) are harmed. As anyone knows who has had experience with tortious harm to a rural cabin well, there is a compelling analogy to this PSPS situation. When the tort harm to your well deprives you of the water that you need for habitation, your choices are either (a) to truck in water to store in a tank for use (ie, the analogy to self-defense generation), or else (b) you are coerced into leaving. Here the wrongdoers are, in effect, giving such an unjust choice to PSPS victims.

If left unremedied in some effective manner, Reorganized Debtors will eventually be exposed if and when such cherry-picked version of their redesigned monopoly territory occurs, and sometime during that process more taking and other claims will arise. See this Court's Memorandum Decision on Inverse Condemnation dated November 27, 2019 (Dkt. 4895). Cf. *Barham v. Southern California Edison Co*., 74 Cal. App. 4th 744, 751 (1999); *Pacific Bell Telephone Co. v. Southern California Edison Co*., 208 Cal. App. 4th 1400 (2012); *Coordination Proceeding Special Title [Rule 3.550] California North Bay Fire Cases, Judicial Council Coordination Proceeding 4955* (May 21, 2018). If that claim seems a stretch, consider the Engel Declaration's discussion of the insurance situation. Recall that the AB 1054 bailout fire fund was enacted, because the Debtors wrongs had made the system too dangerous to insure, even with PSPS defenses. Now, private homeowner's insurance is largely also unavailable in most of fire country, because, in part, of the PG&E system dangers that Debtors wrongfully caused. Those fleeing insurers are not crediting PSPS as helpful to such risk (which is the same as the homeowner's), but rather as just adding to the fire risks.

In either such PSPS case, it is unjust to make any customer-victims of such POC type wrongs pay directly for their own self-defense generation, especially as it benefits the wrongdoers. Restitution for such unjust enrichment of Debtors and Reorganized Debtors is only one of the various appropriate remedies.

**B. THE OBJECTION'S "RULE 14 CLAIM," "PSPS CLAIM," AND SECTION 1759 ARGUMENTS ARE WRONG AND INAPPLICABLE, ESPECIALLY AS TO PG&E CORP., AND (LIKE CPUC ESRB-8) THE POC CLAIMS DISTINGUISH BETWEEN TOLERABLE AND "EXCESSIVE" PSPS CONDUCT.**

**1. This Objection Incorrectly Classified Creditor's POC As "Rule 14"/"PSPS Claims," And That Is Only An Insufficient And Erroneous General Denial Without Adequate Support Or Focus On the POC Facts.**

Case 19-30088   Doc# 9893   Filed 12/29/20   Entered 12/29/20 19:10:55   Page 12
of 29
1125671.2

The Objection (at 9, line 10) simply denies liability under CPUC Rule 14, alleging that the "same is caused by inevitable accident, act of God, fire, strikes, riots, war or other cause, **except that arises from its failure to exercise reasonable diligence**," (emphasis added) as if somehow that was a sufficient and complete defense. That is wrong for many reasons, as is objectors' referring to PSPS as "approved by the CPUC," which especially is not true as to the "**excessive**" PSPS at issue in Creditor's POC, relying on the "failure to exercise reasonable diligence" qualification. Moreover, the Objection also fails because: (i) that excuse does not apply at all to PG&E Corp, as distinct from the Utility; (ii) the POC asserted liability is caused by Debtors' and Reorganized Debtors' own wrongs and noncompliance with applicable laws and regulations, causing many POC claims beyond the narrow negligence claim in the "PSPS Class Action" proceeding and appeal, as distinct from causes beyond their control (See **Tesoro**); and, in any event, (iii) the liability does arise from their such "failures to exercise due diligence" and much worse conduct, and in the record of their admissions (or insufficient disputes or denials) in this Case and/or in "Related Proceedings," including Judge Alsup's Probation Proceeding.

### 2. Framing This Dispute in General Against the Flawed Objection.

The Objection ignores (apart from its section 1759 argument addressed below) not only controlling Public Utilities Code section 2106, but also other authorities supporting liability, especially in the case of gross negligence, willful misconduct, or worse of the type at issue in Creditor's claims and POC. For example, huge trees growing for decades through and around Utility poles, gear and wires (including still after insufficient work by the Utility adjacent to Creditor's property) go far beyond ordinary negligence and obviously violate the clearance and safety rules of Pub Res. Code section 4293, as confirmed by Judge Alsup and his Monitor on various occasions. See Key Probation Requirements Order, the Butte Fire Case, the Zogg Fire Case, Exhibit B cites, and the Engel Declaration. (The SDG&E situation is distinguishable and/or irrelevant under its different tariff and rules from the much worse neglect, misconduct, and wrongs of PG&E.)

Creditor's POC alleges that basic Rule 14/ESRB-8 "failure of diligence" and much worse conduct by Debtors (now extended to Reorganized Debtors), so that there is no basis for denial of liability; eg, the Objection is just, in effect, a vague general denial that fails to address the many

Case 19-30088    Doc 9855    Filed 12/22/20    Entered 12/22/20 12:40:55    Page 13
of 29

specific POC wrongs and claims or even many admissions against interest by Debtors in the Probation Proceeding and other Related Proceedings, as well as findings and proof in the Related Proceedings, especially in Judge Alsup's many rulings. E.g., *Tesoro Refining & Marketing Co. v. Pacific Gas &Electric Co.*, 146 F. Supp. 3d 1170, 1184 (N.D. Cal. 2015) ("**Tesoro**") (Rule 14 does not protect the utility from its own negligence.) That is especially true where the POC referenced wrongful and reckless conduct goes beyond ordinary negligence. E.g., *Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224, 1245 (1993) (price fixing claim, despite CPUC rate approval); *Stepak v. Am. Tel. & Tel. Co.*, 186 Cal. App. 3d 633 (1986) (minority shareholder damages despite CPUC approval of the merger). See, eg, *Kairy v. SuperShuttle Int'l*, 600 F. 3d 1146, 1156 (9th Cir. 2011) (ruling that a legal claim is "a distinct inquiry from one that would be made by the PUC in a regulatory proceeding."); *Hartwell Corp.*, 27 Cal. 4th 256, 275-76 (2002) (allowing Court enforcement of utility legal obligations to comply with CPUC standards, policies, and obligations, including by awarding damages, which Creditor contends is applicable to the POC claims, such as on account of sections 451, 8386(a), Pub. Res. Code sections 4292 and 4293, and CPUC ESRB-8 and General Orders 95 and 165); *Vila v. Tahoe Southside Water Utility*, 233 Cal. App. 2d 469, 477 (1965).

Contrary to the Objection, **the burden of demonstrating preemption under section 1759 is on Debtors and Reorganized Debtors**. E.g., *San Diego Gas & Electric ["SDG&E"] v. Superior Court* ["**Covalt**"], 13 Cal. 4th 893 (1996). See *Chamber of Commerce v. City of Seattle*, 890 F.3d 1052, 1076 (9th Cir. 2018) (burden is on the party asserting preemption). While this is not the place for an evidentiary brief on the topic, Debtors and Reorganized Debtors have also ignored in their citations the evidentiary effects of the two felony convictions and many parole violations, among other things demonstrated in Judge Alsup's Probation Proceeding. See, eg, the "**PG&E Zogg 11/18/20 Admissions,**" which focused specifically on PSPS issues; the Key Probation Requirements Order, the PSPS Class Appeal record, as well as other Related Proceedings. The requested status conference could usefully discuss how best to efficiently and cost-effectively address such matters.

### 3. None of the Disputed Utility Excuses, Especially Preemption, Should Protect PG&E Corp. From POC Claims.

Debtors and Reorganized Debtors simply assume without authority that unregulated PG&E

Case: 19-30088  Doc# 9855  Filed: 12/22/20  Entered: 12/22/20 19:20:55  Page 14 of 29
1125671.2

1  Corp. is entitled to the same regulatory benefits, rights, and defenses as the regulated Utility, except

2  somehow still free of the reciprocal regulatory burdens. Consider just one of various examples. The

3  Objection simply denies liability under CPUC Rule 14 alleging that the "same is caused by inevitable

4  accident, act of God, fire, strikes, riots, war or other cause, except that arises from its failure to exercise

5  reasonable diligence," as if somehow that was a sufficient and complete defense for **both** the Utility

6  and PG&E Corp. That is wrong for many reasons (besides the fact that these are post-petition claims

7  as explained elsewhere), including without limitation because: (i) that excuse does not apply to PG&E

8  Corp; (ii) the POC asserted liability is caused by Debtors' and Reorganized Debtors' own wrongs and

9  noncompliance with applicable laws and regulations, as distinct from causes beyond their control (See

10  the **Tesoro** decision); and, in any event, (iii) even if applicable to PG&E Corp., such liability arises

11  from "failures to exercise due diligence" and much worse conduct.

12      More importantly, where does it say that PG&E Corp. is given the benefit of Rule 14, section

13  1759, or other CPUC allegedly preemptive rulings or regulations? How can the parent claim such

14  benefits without assuming the corresponding burdens? The disputes (as here) with the Utility's parent

15  are not in conflict with Utility regulation, but rather are, among other things, over whether the parent's

16  shareholders are unjustly enriched and profit from such POC claimed wrongs. It would be astonishing,

17  if CPUC were to complain about such increased safety and system value so provided by such customer

18  self-defense generation and to dare again to reward such shareholders for their wrongs, especially now

19  that the Probation Proceeding is accomplishing so many important admissions from the Utility to

20  justify maximum accountability by Debtors and Reorganized Debtors for continuing violations of law

21  and regulations. At least as to PG&E Corp., that parent cannot justly hide behind alleged CPUC

22  jurisdictional conflicts and procedural disputes that the Utility likes to argue.

23          **4.      Some Other Reasons Why Creditor's POC Should Be Allowed As
                Supporting CPUC Goals, Such As Helping the Utility (Although
24              Involuntarily) Comply with ESRB-8 And Judge Alsup's Key Probation
                Requirements Order.**
25

26      Creditor's POC claims are not disputing, interfering with, or hindering CPUC regulation, but

27  they are in complementary aid of CPUC regulation. See, eg, *Hartwell,* 27 Cal 4th at 275; *Cundiff v.*

28  *GTE California*, 101 Cal. App. 4th 1395 (2002); and the many findings and rulings of Judge Alsup and

Case 19-30088   Doc 9853   Filed 12/23/20   Entered 12/23/20 12:40:55   Page 15
of 29

his Monitor, among other Related Proceedings. A fair reading of the applicable ***CPUC Resolution ESRB-8*** requirements makes this clear with Creditor's related/interspersed commentary, since such regulation: (i) states a strong presumption that power should remain on for public safety reasons, with the Utility having the burden of demonstrating that its blackout decision was necessary to protect public safety [Note: Creditor's self-defense generator accomplishes some of that CPUC regulatory and safety goal, even as and when the Utility itself fails to comply]; (ii) the Utility should rely on other measures to the extent available, as an alternative to the blackout (eg, sensitive relay settings, disabling reclosers, etc.) [Note: Creditor's self-defense generator accomplishes that CPUC regulatory goal even better than the Utility is doing itself]; (iii) the Utility must reasonably believe that there is an imminent and significant risk that strong winds will topple its power lines onto dry vegetation or will cause major vegetation-related impacts on its facilities during periods of extreme fire hazard [Note: as discussed elsewhere herein, if the Utility did a complete compliance with the vegetation laws and regulations in a work area before moving on to another unsafe area, as distinct from leaving the "hardened" area somewhat safer, but still unfinished, noncompliant, and dangerous, as demonstrated in the Engel Declaration, then such normal PSPS authority would not exist to such excess. That factor confirms why Creditor calls this "excessive PSPS," since that flawed and noncompliant Utility repair conduct is not necessary or appropriate and requires more PSPS than necessary or reasonable.]; and (iv) the Utility must consider efforts to mitigate the adverse impacts on the customers and communities in areas where it shuts off power [Note: Again, promoting private self-defense generation by its victimized customers, like Creditor, allows the wrongdoer to profit and unjustly enrich itself at the expense of such victims, especially since such victims are coerced into funding with self-generation the Utility's alleged compliance with these CPUC requirements, thereby saving the Utility from itself paying the cost of other compliance for the benefit of its shareholder and its shareholders.] See also by analogy CPUC D.12-04-024 at 30 on which the Utility incorrectly tries to rely, which also states that SDG&E should "shut off power only as a last resort, and only then when SDG&E is convinced there is a significant risk that the strong Santa Anna winds will topple power lines onto flammable vegetation." When the CPUC

Case 19-30088 Doc# 9853 Filed 12/23/20 Entered 12/23/20 14:04:55 Page 16 of 29
1125671.2

prescribes these PSPS actions as a last resort that means that the Utility may not violate or evade these CPUC directions for its own selfish benefit, as is the case alleged by the Creditor's POC. Specifically, by the Utility's noncompliant actions and omissions included as one foundation of Creditor's POC claims, it is violating the CPUC rule that: "[u]nder no circumstances may the utilities employ de-energization solely as a means of reducing their own liability risk from utility-infrastructure wildfire ignitions…" D. 19-05-042 at 68.

5. **The Class Action PSPS Decision Does Not Apply To Many of the POC Claims, Which Are Broader And Distinguishable, And Creditor Respectfully Disagrees With Whatever In That Decision Is Deemed To Apply To His Claims.**

Creditor is aware of the Court's "Memorandum Decision of Debtor' Motion To Dismiss And Strike" filed March 30, 2020, as #34 (the "**Class Action PSPS Decision**"), as to such narrower and distinguishable Adversary Proceeding 19-03061-DM, entitled Gartner v. PG&E Corp and Pacific Gas And Electric Company (the "**PSPS Class Action**"). While Creditor distinguishes and respectfully disagrees with that decision for all of the reasons stated in Plaintiffs' incorporated briefing both in that adversary proceeding and in its District Court "**PSPS Class Appeal," Creditor also asserts additional arguments and claims not asserted by that PSPS Class Action Plaintiff or not yet considered by the Court or addressed in that decision.** Stated another way, Creditor intends to both distinguish his POC and claims from those of that PSPS Class Action Plaintiff, as well as to focus on Creditor's broader and different claims, such as those explained above as to coerced, self-defense generation by excessive PSPS victims. Also, if that appeal is successful, Creditor wishes to be able to benefit from that result, while continuing to press Creditor's additional claims that must survive any adverse decision on appeal.

6. **Some Additional Considerations For Allowing Creditor's POC to Survive Alleged Section 1759/Covalt Preemption.**

"For every wrong there is a remedy." *E.g.*, Cal. Civil Code section 3523 (Maxims of Jurisprudence.) But if Debtors and Reorganized Debtors are correct in their Objections, there is no remedy for the victims of such PSPS wrongs. Who else besides people like Creditor could possibly complain? Or, to address this in the section 1759 terminology used around *Covalt (*addressed in the

11

Case: 19-30088   Doc# 9895   Filed: 12/29/20   Entered: 12/29/20 12:40:55   Page 17
of 29
1125671.2

1   next subsection), who else but such victims can so aid and support the enforcement of such laws and
2   regulations being so violated? Our Constitutional/due process system is designed to be adversary and,
3   therefore, depends on a victim having some recourse against the wrongdoer, especially when the
4   wrongs are continuing and of the serious character addressed in Creditor's POC and the Related
5   Proceedings, such as Judge Alsup's "**Key Probation Requirements Order**." The CPUC cannot itself
6   award tort damages to victims, and it has demonstrated no other effective means of even knowing
7   about such victims or their claims even (i) by a repeat and noncompliant felon; (ii) often admitted or
8   obvious and not subject to reasonable dispute on the merits; and (iii) so well documented and serious.
9   See, eg, Judge Alsup's Key Probation Requirements Order, supported, among an extensive Probation
10  Proceeding record with Monitor reports, and by what the Utility has admitted in both the Butte County
11  criminal proceeding and then before Judge Alsup in his Probation Proceeding, such as by "**PG&E's**
12  **7/1/20 Butte Admissions**" and "**PG&E Zogg 11/18/20 Admissions**." Therefore, *Covalt* should not
13  be able to thwart any meaningful relief for victims under Public Utilities Code section 2106 or other
14  law on account of disputed preemption under section 1759.

15          **7.     Further Illustrations Beyond This Court's 3/30/20 Class Action PSPS**
16                  **Decision (#34 in Adversary 19-03061) Applying PUC Section 1759 Etc. (the**
                    **"Class Action PSPS Decision").**

17          This is not the place to brief all of Creditor's related disputes with Debtors and Reorganized
18  Debtors, or to address what more should be imported from Exhibit B by judicial reference into this
19  record both from other Related Proceedings. There is ample record now for distinguishing (as
20  Creditor's POC anticipated) between (a) **normal "PSPS"** (addressed by the court in its Class Action
21  PSPS Decision, with which Creditor respectfully disagrees), versus (b) what Creditor addresses as
22  "**excessive" PSPS**, among other things beyond the approval level tolerated by applicable law or
23  regulations (eg, ESRB-8 and PUC section 2016).  Two brief illustrations of Creditor claim theories
24  are among many outside the scope of the Class Action PSPS Decision. One core of Creditor's
25  grievances is explained in the Engel Declaration as to his purchase of a generator promoted by the
26  Utility in order to improve the PSPS and fire safety defense (and insurability) of his home from threats
27  caused by cited wrongs. By such Creditor mitigation of his damages the Utility (along with PG&E
28  Corp.) receives unjust enrichment and windfall compliance help when such PSPS victim customers

12

**RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION
TO CLAIMS (NO LIABILITY/PASS-THROUGH CLAIMS) (DKT 9460)**

Case: 19-30088   Doc# 9855   Filed: 12/23/20   Entered: 12/23/20 14:20:55   Page 18
of 29
1125671.2

1 (at their own expense) thereby not only enhance the Debtors and Reorganized Debtors' flawed and

2 dangerous system, but also improve their unsatisfactory level of compliance with applicable law and

3 regulations and probation orders. See the Engel Declaration. Making the Utility and its parent pay

4 claims for the private generation from which each is profiting and improving flawed compliance

5 struggles could not possibly be a hindrance or interference with regulation, since, among other things,

6 it is doing what the Utility should be doing itself. Indeed, the only thing worse is the objectionable two

7 tiered electric system that the Utility is wrongfully creating in its fire country territory: (1) those who

8 can afford to acquire their own generation for self-defense, vs (2) those customer-victims who cannot

9 afford self-defense and either suffer intolerable conditions or leave, thereby involuntarily aiding any

10 wrongful, monopoly cherry-picking goals of Debtors and Reorganized Debtors.

11        Contrary to the Court's Class Action PSPS Decision excuse for Debtors [at p.10 lines 12-13],

12 that "such PSPS events can be necessitated by high winds even when equipment is adequately

13 maintained," Creditor would seek to prove the obvious "excesses" and noncompliance with EZRB-8

14 etc. that are also now clearer from the subsequent relevant records in the Probation Proceeding and

15 other Related Proceedings. For example, because of such persistent threats of PSPS continuing for at

16 least another decade and requiring homeowner self-defense and mitigation by those who can afford

17 self-defense, Debtors and Reorganized Debtors have chosen their own flawed and unsatisfactory

18 mitigation strategy to coerce and promote victims like Creditor to buy natural gas generators and

19 PG&E gas (objectors would say "encourage," but what is the alternative, especially under covid shelter

20 in place orders?) Not only are such generators useful for Debtors and Reorganized Debtors to sell

21 more natural gas, but, in effect, they are conscripting their victims in self-defense to use victim's own

22 funds to pay for enhancing the Debtors' and Reorganized Debtors' flawed system and mitigating the

23 continuing harms done by such dangerous system intentionally, willfully, recklessly or grossly

24 negligently created by Debtors and continuing to operate contrary to applicable laws and regulations.

25 If ever there was an unjust enrichment situation demanding equitable remedies and restitution, it is in

26 this case. See generally from the record of the Probation Proceeding, especially the following: Judge

27 Alsup's Key Probation Requirements Order and the Monitor Reports and other matters of record

28 referenced therein; PG&E's 7/1/20 Butte Admissions; and PG&E Zogg 11/18/20 Admissions.

13

**RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS-THROUGH CLAIMS) (DKT 9460)**

1125671.2

**8. Some Additional Considerations For Allowing Creditor's POC To Survive the Rule 14 Objections, Addressing Creditor's Local Situation.**

The Objection asserts in an overstated or disputed manner how Rule 14 applies to the "PSPS program" that they allege began "in 2018." However, **such PSPS conduct actually began post-petition** as to this Utility [earlier SDG&E actions are irrelevant], and under the Debtors' and Reorganized Debtors' Wildfire Mitigation Plan PSPS related conduct will be a continuing harm to Creditor and others for at least another decade, at best. According to Judge Alsup and the evidence in his Monitor reports cited herein, Reorganized Debtors are far behind schedule.) The Objection attempts (at 9 line 16) to characterize such PSPS as a reasonable defense to "extreme weather events (eg, strong winds, very low humidity levels, critically dry vegetation…), but the demonstrable truth is that what has always been normal fire seasonal weather (eg, moderate 25mph wind [far less than the extraordinary speeds for which the system was required to endure by Section 8386(b) and ESRB-8], moderate low humidity, and dry vegetation, much of which vegetation only exists adjacent to the wires and other gear, because of Debtors' long, willful, or reckless neglect and noncompliance with laws and regulations, as cited in the Probation Proceeding record and often admitted by the Utility). **But for the wrongs creating the dangerous system now breaking down from neglect in the "run it until it breaks"/shareholder value strategy, the PSPS burdens and harms would be less excessive and more tolerable.**

Consider what Creditor establishes in the Engel Declaration, ie, PG&E has done a partial repair and "hardening" in Creditor's high fire risk community, but stopped at a point where the fire risk was lessened, but not so much that the PSPS was reduced to being less excessive. In other words, the Utility is moderating fire risk, but not to the point where the PSPS burden returns to normal (ie, is no longer excessive). That is not what was required by Judge Alsup's Key Probation Requirements Order, by ESRB-8, and by other laws and regulations; ie, promptly to bring such an area into full compliance with all legal and regulatory safety requirements, so that only **normal PSPS** is needed, rather than indefinite continuation of **excessive PSPS**. So, why do that incomplete, noncomplying, and defective job? The Reorganized Debtors' correct answer cannot be economic or efficiency benefits, since such Utility is defeating those possibilities by doing such a partial repair, leaving the area in a still somewhat

14

Case: 19-30088  Doc# 9893  Filed: 12/29/20  Entered: 12/29/20 19:40:55  Page 20 of 29
1125671.2

noncompliant condition, and maybe coming back at some indefinite time later to finish accomplishing the required compliance that should have been done earlier. Creditor cannot imagine a legitimate excuse for such a Utility strategy. Whether or not some predatory intent or reckless indifference is in play, that approach will cause customer-victims like Creditor to continue to suffer excessive PSPS and involuntary/self-defense servitude at their own cost for enhancing safety and the grid for the benefit and unjust enrichment of Debtors and Reorganized Debtors, as well as any cherry-picking monopoly goals that they may have for maximizing service in high profit/lower risk areas and minimizing service in lower profit/higher risk areas (eg, like the Caribou-Palmero transmission line near Paradise abandoned by the Utility after that fire).

As demonstrated in the Engel Declaration and despite Judge Alusp's admonitions, in Creditor's neighborhood, where PG&E has already purportedly done its so-called "hardening" repair, the result is still noncompliance with applicable laws and regulations. Many ancient (eg, massive 75 foot plus) trees (as well as other vegetation) still exist adjacent to the new wires and poles. Bigger wooden PG&E poles are still dwarfed by the far bigger trees surrounding them. *See* the photo of such a falling tree trashing the PG&E system **in Creditor's neighborhood** inserted (at page 6) of Judge Alsup's "**Key Probation Requirements Order.**" *See also* similar photos in the Engel Declaration showing more such dangerous trees that may cause similar harms to be repeated.

PG&E Corp cannot dodge culpability for such noncompliance, recklessness, and gross negligence or worse while unjustly profiting and enriching itself with dividends from money that instead should have been used for safety work and proper maintenance of the system. How can that parent Debtor explain innocent ignorance of so many thousands of miles of giant trees growing through their wires over decades to become the threat so massive that it requires at least a decade to fix it, while all of that time there is a continuing, open and notorious system wide violations of Pub. Res. Code section 4293 and other laws and regulations, as confirmed by Judge Alsup's Key Probation Requirements Order, PG&E's 7/1/20 Butte Admissions, the PG&E Zogg 11/18/20 Admissions, and related Monitor Reports in that Probation Proceeding? Not only do such obvious things revealed in the Related Proceedings doom the Reorganized Debtors from getting private insurance, but such unsafe conditions prevent customers from being able to maintain their own affordable (or any) normal

Case: 19-30088   Doc# 9895   Filed: 12/29/20   Entered: 12/29/20 16:10:55   Page 21 of 29
1125671.2

homeowners' insurance for their homes in such areas. **Excessive** PSPS adds to the safety and insurance availability burdens and problems for such PG&E customers beyond what outages would occur if the system was in satisfactory condition and in compliance with applicable laws and regulations.

## II. CAUSATION SHOULD NOT BE AN OBSTACLE TO CREDITOR'S POC CLAIMS FOR MANY REASONS, INCLUDING THE NATURE AND BROADER SCOPE OF THOSE CLAIMS AND EVIDENCE THAN WHAT WAS ADDRESSED EARLIER BY THIS COURT AS TO NARROWER PSPS CLASS ACTION CLAIMS.

The Court's Class Action PSPS Decision is distinguishable and should not defeat Creditor's various POC broader, stronger, and different claims, even as to those few overlapping with the narrower PSPS Class Action. See the POC excerpt in Exhibit B, especially as supported and explained herein, in the Engel Declaration, in the PSPS Class Action Plaintiffs' PSPS Class Action and PSPS Class Appeal briefs (together with its record on such appeal), and in other Related Proceedings. The POC alleged wrongs should be sufficient as substantial factors in proximately causing Creditor's demonstrable harms, recognizing that the POC and such support are not yet a full complaint. E.g., *Bigbee v. Pac. Tel. & Tel. Co.*, 34 Cal. 3d 49, 57 (1983) ("Foreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct."); *Uriell v. Regents of Univ. of Cal.*, 234 Cal. App. 4th 735, 746-47 (2015) (reminding us how negligence may combine with another factor [plus here other claims as well] to cause harm without displacing the negligence as a substantial factor in causing the harms); *City of Modesto v. Dow Chem. Co.*, 19 Cal. App. 5th 130, 156 (2018) ("Direct proof of every link in the chain of causation… is not required."). Note, for example, how Creditor's photographs in the Engel Declaration match an interesting discussion by Judge Alsup of the tree photo in the "PG&E Zogg 11/18/20 Admissions." In any trial of these issues, it should be possible to overcome most of Debtors' or Reorganized Debtors' objections by often be able to either cite to such admission or substantially irrefutable facts in the Related Proceedings. Respectfully, each of Creditor's POC claims are not "remote," especially since those allegations (and the incontrovertible proof from the admissions and evidence in the Probation Proceeding and other Related Proceedings) address wrongs much worse than simple negligence.

/ / /

**RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS-THROUGH CLAIMS) (DKT 12460)**

1125671.2

### III. CREDITOR'S POC CLAIMS ARE POST-PETITION, NOT PRE-PETITION, AS EXPLAINED IN THAT POC.

When (in another capacity) Creditor was dealing with Debtors in their disputed Bar Date Motion process (Dkt. 1777), he raised at the June 11, 2019, hearing the concern that Debtors were unwilling to clearly state on the record what PSPS post-petition wrongs and harms, if any, they would claim to be pre-petition claims. The Court considered that issue premature, but now that issue is clearly ripe. The Objection just asserts that Creditor's POC claims are **prepetition**, while, as before, in the POC, and now, Creditor contends that such claims are **post-petition**. (Fortunately, that POC post-petition claim also states a pre-petition claim alternative "back-up," just in case it was needed to defeat semi-surprise attacks like this Objection, but Creditor has protected his rights in any case.) Before debating conflicting authorities, some factual and conceptual clarity is important.

Consider the following analogy. A car mechanic fills up his garage with gas and other flammable substances prepetition. Then **post-**petition he starts welding and cutting steel with tools that spread sparks and starts a fire that destroys the neighborhood. Those neighbors should have post-petition claims, among other things, because the key wrongs causing the harms occurred post-petition. If those victims had filed protective prepetition claims, they would have received the other kind of objections already proliferating in Debtors and Reorganized Debtors other omnibus objections, such as that they are contingent or unmatured with zero amount claims with no liability.

Besides such timing of events arguments, consider another analogy, where the debtor attempts to mitigate the prepetition dangerous condition that it created by new and wrongful post-petition wrongs, also creating post-petition claims. Assume that (as in an earlier era) a tanner has a habit of dumping toxic and flammable chemicals used in its process from a factory disposal pipe into the Chicago River. Sometimes the river conditions became so toxic that the river would catch on fire (a true hypothetical). Assume the tanner/polluter files bankruptcy and then claims that it must shut down the river to its usual barge traffic in order to reduce the threat of fires, thereby harming everyone else normally using the river by that inverse condemnation and other torts relating to such post-petition interference with the rights of those victims. That creates a post-petition claim, not a pre-petition claim, especially (but not only) where the tanner keeps dumping in the river (back then Chicago was "lax.").

RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION
TO CLAIMS (NO LIABILITY/PASS-THROUGH CLAIMS) (DKT. 9460)

Case 19-30088   Doc 9855   Filed 12/23/20   Entered 12/23/20 11:40:55   Page 23
of 29

1125671.2

As here, such analogous tanner's decisions and actions harming the victim/users are made post-petition and that is when the harm is done. As here, there could be other choices mitigation choices made instead of the excessive and unreasonable ones made by the wrongdoer that benefit such wrongdoer and unnecessarily prolong and increase the harm to the victims more than permitted by ESRB-8 or Rule 14, such as by limiting repairs and corrective work in one area to less than the full amount needed to reduce PSPS durations and frequency, instead of complying with the CPUC directives and Judge Alsup's "Key Probation Requirements Order," which contemplate solving the problems in high risk areas before moving on to the next area. Some actual progress is should be made in reducing the frequency and duration of extreme and other PSPS events in at least one area and then the next progressively, instead of whole regions suffering more than necessary.

Now consider the famous Chateaugay Corp. hypothetical in *U.S. v. LTV Corp. (In re Chateaugay)*, 944 F.2d 997, 1003 (2d Cir. 1991), where the focus was on a global builder of 10,000 bridges who expected that one would fail someday causing 10 deaths. Who now has what "claim?" What if there were several bridges falling, some pre-petition and some post-petition? Would all users of all 10,000 bridges have to file claims after the first, or are some post-petition? But note that here there is a distinguishing difference, because the claim is not about the **fire** that is directly caused by their flawed and dangerous system, but rather about **the fear of liability from the fire** that causes them to attempt to evade the fire liability with an **excess** PSPS mitigation strategy that gives them not just a defense to fire, but also an economic windfall and strategic benefits addressed above. Note that there is no CPUC ruling that immunizes them for **excessive** PSPS, and ESRB-8 expressly reserved that liability question. But Rule 14 and Public Utilities Code section 2016 allows such claims. Moreover, the PSPS program was a post-petition invention as to PG&E (the earlier SDG&E rule was limited to it), and Judge Alsup has described in the Key Probation Requirements Order how the Utility resisted the approach that became PSPS until 2019 (until, cynics observe, it was politically "safer" for PG&E to provoke the customers, because it had as much bailout help as it was likely to get.)

Creditor offers these hypotheticals, because some courts properly recognize the need to limit excessive contingencies, especially because of Fifth Amendment due process rights and proper and fair jurisprudence. *E.g.*, Judge Posner asked in *Fogel v. Zell*, 221 F.3d 955, 958 (7th Cir. 2000): Does

18

**RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS THROUGH CLAIMS) (DKT 9460)**

Case 19-30088   Doc 13895   Filed 07/15/25   Entered 07/15/25 12:40:55   Page 24 of 29

1125671.2

1    a pedestrian have a contingent claim against every car driver who might hit him? (defective cement

2    pipe installed by the city which did not timely file a claim until the pipe broke.) This focuses on cases

3    where the claimant cannot "fairly contemplate" a claim until the injury occurs, although in this PG&E

4    case it is not just the post-petition **fires** caused by the dangerous and flawed system, but also the

5    continuous and frequent post-petition harms of living for at least another decade without appropriately

6    continuous electricity on account of **excessive** PSPS without prior comparable PG&E precedent in

7    anyone's experience.) Stated another way, in all the other case examples that Debtors and Reorganized

8    Debtors will try to argue, the link between the prepetition harm for the claim is direct and inevitable

9    without further wrongful actions by the debtor; eg, in the *Jensen case discussed below,* the pollution

10   problem directly contemplated a clean-up and related claim. However, our situation is more

11   comparable to what post-petition liability would be, if the prepetition *Jensen* pollution were on the

12   coast and the debtor post-petition allowed it all to wash into the ocean, creating problems for a wider

13   area and comparable post-petition claims. While (as a matter of practical necessity) some

14   noncompliance with applicable law may have to be suffered as fire mitigation until the dangers can be

15   cured, that does not mean that additional harms from such post-petition flawed and excessive PSPS

16   mitigation are somehow immunized as pre-petition wrongs (occurring post-petition).

17        Much of Debtors' and Reorganized Debtors' argument will be focused on the distinguishable

18   environmental case of *Cal. Dept. of Health Servs. V. Jensen (In re Jensen),* 995 F.2d 925 (9th Cir.

19   1993) ("*Jensen*"). There are various cases on both sides with many different approaches in different

20   factual contests, such as Creditor's preferred **later** precedents of *In re STNL Corp.*, 571 F.3d 826, 839

21   (9th Cir. 2009), of *Zilog, Inc. v. Corning (In re Zilog)*, 450 F. 3d 996, 1000-02 (9th Cir. 2006) (the then

22   unknown prepetition sex discrimination was only discovered post-petition and was a post-petition

23   claim, because it could only then have been "fairly contemplated" consistent with due process.), of

24   *Hexcel Corp. v. Stepan Co. (In re Hexcel),* 239 B.R. 564 (N.D. Cal. 1999) (due process must be the

25   guide), and of *In re Conseco Life Ins. Co. Cost of Ins Litig.*, 2005 US Dist. LEXIS 32375 (C.D. Cal.

26   2005) and *Conseco, Inc. v. Schwartz (in re Conseco, Inc.)*, 330 B.R. 673, 685 (Bankr. N. D. Ill. 2005)

27   ("**As one court aptly noted, a contingent right to payment 'might be said to exist somewhere on**

28   **a continuum between being and nonbeing.' At some point on that continuum, a right to payment**

Case: 19-30088   Doc# 9853   Filed: 12/22/20   Entered: 12/22/20 14:00:55   Page 25
of 29

1125671.2

1 | **becomes so contingent that it cannot fairly be deemed a right to payment at all.")** See, eg, *Elliott*

2 | *v. General Motors,* LLC, 829 F,3d 135 (2d Cir. 2017), cert. denied, 137 S.Ct. 1813 (2017) (due process

3 | applies under the Fifth Amendment); *Matter of Dallas Roadster Ltd. (Texas Capital Bank, N.A. v.*

4 | *Dallas Roadster, Ltd.),* 846 F.3d 112 (5th Cir. 2017); *Fogel v. Zell,* 221 F.3d 955 (7th Cir. 2000).

5 | But adjust the facts of **Jensen** to be more relevant to this case, and, instead of just localized

6 | pollution in one property (like a Utility equipment danger in one place), there were system wide

7 | problems and dangers; eg, in the *Jensen* case, what if the debtor also drilled down to dump more

8 | deeper, and it leaked post-petition into the aquifer or the drinking water reservoir?) Would notice of

9 | the one actual Jensen location pollution (like a smaller fire from some faulty PG&E equipment in one

10 | location, as had happened at various times in past decades, before the massive fires in the last several

11 | years) be sufficient for the whole of the LA basin to "fairly contemplate" a claim (like a massive

12 | system problem for the entirely of "fire country" being addressed by the Wildfire Mitigation Plan and

13 | Judge Alsup's systemic focus)? Stated another way, what was "fairly contemplated" as to the nature,

14 | quality, extent, and willful and reckless wrongs by Debtors changed radically after the Chapter 11

15 | petition, when the Debtors were no longer then able to continue to conceal their long continuous

16 | neglect and abuse of the entire system in fire risk country producing chronic system dangers that only

17 | became worse as their covert "run it until it breaks" approach was finally at its last stage of breaking.

18 | Consider just one of many examples: who "fairly contemplated" the Utility post-petition grudgingly

19 | confessing to its probation Judge Alsup that the system dangers were so massive, widespread, and

20 | severe that there not enough resources in America to promptly fix the problem? So, now they require

21 | continuous, maximum use of available resources for another decade plus to repair the neglected system

22 | made so unsafe that chronic and prolonged PSPS was the only way to prevent massive wildfires

23 | throughout the system that continues to operate in violation of laws and regulations? But who expects

24 | customers to have to pay for that mitigation with such Utility promoted self-defense generation

25 | without compensation? Not even cynics like Creditor imaged how bad a problem Debtors had willfully

26 | and recklessly created for the whole system. See Engel Declaration.

27 | ///

28 | ///

20

**RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION
TO CLAIMS (NO LIABILITY/PASS THROUGH CLAIMS) (DKT 9460)**

Case 19-30088 Doc# 9855 Filed 12/23/20 Entered 12/23/20 19:24:55 Page 26 of 29

1125671.2

**IV. PG&E IS NOT EXCUSED FROM LIABILITY, BECAUSE IT CONTENDS THAT MORE VICTIMS MAY RECOVER FROM PG&E'S WRONGS IF CREDITOR'S CLAIMS ARE ALLOWED.**

The Objection claims without authority that CPUC requires "that all [Rule 14] Claims be treated equally." That Utility theory is, in effect, that they somehow cannot pay Creditor's "**Rule 14/PSPS Claims**," because then they would have to pay all of their customer victims with similar grievances. Even if that uncertain/unproven result would be inconvenient on a large scale to their desires to pay more dividends and enhance "shareholder value" and credit ratings at the expense of their victims, this cannot be a meritorious objection to any individual meritorious claim, especially as to PG&E Corp to which any such regulatory theory does not ever apply. It is especially inappropriate as to the core of Creditor's claim for the natural gas generator that he was compelled by such wrongs to purchase in self-defense and which unjustly enriches and benefits Debtors and Reorganized Debtors, so they can continue to profit even more from their continuing wrongs.

**V. REQUEST FOR SECTION 105(D) STATUS CONFERENCE TO DISCUSS HOW BEST TO DEAL WITH INTEGRALLY RELATED DISPUTES NOT ADDRESSED BY DEBTORS/REORGANIZED DEBTORS, SUCH AS CREDITOR'S SIMILAR ADMINISTRATIVE CLAIM AND THE CLASS ACTION APPEAL.**

This is not a simple dispute, and it is not resolved by this Court's Class Action PSPS Decision addressed herein, especially as to PG&E Corp. and as to facts, law, and claims outside that decision and the limited and narrower scope of the PSPS Class Action claims. Another question is then what forums and processes should address the POC claims, whether by some other POC process or in an adversary proceeding or otherwise, again raising the desirability of a comprehensive approach to be more cost-effective and efficient. To the extent that such a useful approach requires relief from stays or from Plan injunctions for proceedings in other courts or at the CPUC, then that is another topic for discussion. But first at the start, the Court first should decide whether (i) these POC Claims are "prepetition" "Rule 14/PSPS Claims" as Debtors and Reorganized Debtors incorrectly assert, or (ii) "post-petition" Claims as the POC contends and as law and logic seem to require.

If Creditor is correct and his POC and other such subsequent claims are post-petition claims, then these are not Rule 14 or PSPS Claims subject to this Objection or its process, and then by its own terms the Objection and process cannot proceed. Then one follow-up question for status conference

Case: 19-30088    Doc# 9895    Filed: 12/29/20    Entered: 12/29/20 12:55:55    Page 27 of 29
1125671.2

discussion is how best then to deal with the continuing administrative claims (and, if applicable, any other claims determined to be prepetition). A second question then is the extent, if any, of the effect and application on Creditor's pre- and/or post- petition Claims of this Court's "Class Action PSPS Decision" in the PSPS Class Action adversary now on such appeal, and, if necessary, how best to address appeals as to any overlapping claims by Creditor (and, hopefully, to avoid a piecemeal process and instead to arrange a consolidated approach that is cost-effective.) As to the permitted claim theories in Creditor's POC, we will need to determine a process for resolving each them, once the variables are resolved or clarified. That is especially complex as to PG&E Corp, since, even if the court decides that the Utility is protected by section 1759, that should not protect PG&E Corp, which ultimately is the beneficiary of these windfalls and benefits through the disputed PSPS strategy.

Depending on the answers to such questions, the parties should then discuss how to deal with the applicable procedures as to any separate POC claims that may be in various such different categories. See, eg, Rule 9014(c) for applying adversary proceeding rules, as to which Creditor so advocates. Also, for example, if appeals are required on account of the narrow Class Action PSPS Decision (eg, addressing a count of negligence), which Creditor hopes to distinguish and limit, there is the question of developing the appropriate record for such purposes or, at least, of offers of proof as to the massive amount of evidence against and admissions by Debtors or Reorganized Debtors in the Related Proceedings and in this case.

## VI.   CONCLUSION.

For the reasons stated, Creditor requests that the Objection be dismissed, that a status conference be held to resolve the best process for allowance of Creditor's claims, and for such other relief as may be proper.

Respectfully submitted,

DATED:  November 30, 2020.

ENGEL LAW, PC
Attorneys at Law

By: _____ /s/ *G. Larry Engel*_____
               G. LARRY ENGEL
Attorneys for Creditor (who is also the Creditor himself
and shares the same address and data for service
and otherwise, is the person with authority to reconcile,
settle, or otherwise resolve the Objection as to Creditor)

22

RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION
TO CLAIMS (NO LIABILITY/PASS-THROUGH CLAIMS) (DKT 9460)

1125671.2

Table of Exhibits
    A.  Excerpt From Creditor's POC
    B.  Reference To Some Related Proceedings

**RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS-THROUGH CLAIMS) (DKT 9460)**

1125671.2