# EXHIBIT A

**Attachment to Proof of Claim of "Creditor" George Larry Engel as to the Chapter 11 Cases Of PG&E Corporation (No. 19-30088) and Pacific Gas And Electric Company (No. 19-30089) Pending in the US Bankruptcy Court for the Northern District of California**

**Preservation And Reservation of Claims that Creditor Contends Are Administrative Claims Arising Post-petition (Or Later), While the Debtors May Attempt Incorrectly To Contend Instead that Such Are Pre-petition Claims That Debtors Can Dispute And Could Bar, If Not Timely Filed Now.**

### 1. Some Reasons for This "Protected Claim" Filing Now.

Creditor makes this protective filing now in order to reserve, preserve and enforce any and all **"PSPS Claims," "PSPS Remedies,"** and other "claims" addressed in this proof of claim collectively as **"Protected Claims,"** all as defined below. This is done in as a defensive measure, among other things, based upon Debtors' refusal to reassure Creditor about his stated concerns inspiring this protective filing on account of various threat clues in various Debtor bankruptcy filings in this administratively consolidated case, including without limitation in Debtors' Bar Date Motion and Debtors' First Amended Joint Plan of Reorganization, as amended from time to time (the **"Plan"**), as to how Debtors' may adversely interpret and attempt to enforce the Bankruptcy Court's Bar Date Order (eg, clues such as excessive releases, exculpations, injunctions relating to Debtors' Plan's objectionably defined or used certain terms such as "**Causes of Action**" and "**claim**"). (When used with respect to Debtors' joint Plan references, the Plan definitions apply herein for clarity as to Debtors' disputed positions without any admission or other prejudice to Creditor, since relevant definitions and other adverse effects of the Plan on Creditor are disputed by Creditor and objectionable.) Creditor believes his such PSPS Claims and other Protected Claims addressed herein to be post-petition, administrative claims that Creditor intends to preserve, reserve and enforce, regardless of however else the Debtors may attempt to characterize such claims, such as "**unmatured**" or "**contingent**" prepetition "claims" or otherwise. Whatever the reality, Creditor is intending at all times and circumstances to reserve his PSPS Claims and other Protected Claims, even as to the future events, damages, and harms that may or may not occur in the future, but as to which Debtors may contend the filing of this protective proof of claim now is essential for the preservation and enforcement of such claims, even as to damages or other harms with respect to future events, such as allegedly based on or arising from prepetition conditions. Neither the mention of such claims in this proof of claim, nor anything else herein or hereby, shall waive, release, impair, or otherwise adversely affect any such administrative claim or other rights of Creditor.

### 2. "PSPS Claims" Entitling Creditor to "PSPS Remedies" as to "E System Flaws" Or Wrongful Conduct by Any Debtor as Additional "Protected Claims," as Supported by "Key PSPS POC Documents," Among Other Things

This proof of claim reserves, preserves and enforces any and all Protected Claims, including without limitation any and all PSPS Claims and PSPS Remedies, as defined below and explained or illustrated herein. However, to the extent that the CPUC or FERC may have

Case: 19-30088    Doc# 9653-1    Filed: 12/01/20    Entered: 12/01/20 14:21:55    Page 2
of 21

paramount or other jurisdiction over such claims or remedies, Creditor is not waiving, releasing, impairing or otherwise adversely affecting the same, but instead is preserving his cumulative rights, remedies, and claims. This proof of claim is filed under the compulsion of the Bar Date Order in this case in order to protect Creditor from any asserted forfeiture of claim by reason of such bar date, and Creditor reserves the right to amend and supplement this proof of claim for any and all purposes and to the extent permitted by applicable law.

Except as specified in the official form and attached invoice liquidating that known and accrued specified claim, the amount of each other Claim at this time is contingent, unliquidated and unknown, and this proof of such claims is filed out of an abundance of caution in order to assure that Creditor is not barred from a recovery under any Debtor theory or from amending or supplementing this proof of claim. The following is only a required summary, and it does not fully describe or document the Claims and the amounts, obligations, duties and/or indebtedness due. Nothing in this proof of claim is intended to restrict, alter, impair, estop, waive, release, amend, and/or modify any instrument, document, agreement, lien, encumbrance, right, setoff, right of recoupment, defense, remedy, interest, cause of action, and/or other claim or matter of Creditor in any form whatsoever, all of which are reserved. This proof of claim is based on Creditor's present understanding of information currently available to Creditor and is subject, from time to time, (i) to supplements, changes, amendments and/or modifications, including with respect to the amounts, obligations, claims, causes of action, duties, liabilities, and/or indebtedness due Creditor, and (ii) to assertion of additional claims, whether legal or equitable or otherwise, to the maximum extent permitted by applicable law, as well as additional documentation, support, or evidence, including as the relevant realities are exposed or revealed by evidence presented in the relevant proceeding records, by any probation, legal or regulatory compliance filings by either Debtor, or by discovery, rulings, testimony, or developments in any relevant proceedings, including those referenced in the Key PSPS POC Documents definition.

To the extent any amount is owed by PG&E or PG&E Corp for any Protected Claims, that amount should be increased to include accrued and accruing interest and legal fees, to the extent provided by applicable contract or law. The Claims also include any other unliquidated and/or contingent amounts for direct, indirect, nominal or consequential damages and other amounts owed or owing to Creditor, whether or not fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

## A. "E System Flaws" Evidenced in "Key PSPS POC Documents."

Among other things, a basis for PSPS Claims, PSPS Remedies, and most other Protected Claims is that for decades either or both Debtors, either negligently, grossly negligently, recklessly, willfully, intentionally, or otherwise wrongfully or contrary to applicable laws and regulations, (i) have created, acquired, maintained and cared for their electric system in such a manner that it has become unsafe or dangerous to operate, especially on windy days when it is

hot and dry, which conditions are not unusual, and (ii) have also caused that system otherwise to suffers from, or be otherwise subject to, other "**E System Flaws,**" as defined below. Such a Debtor pattern and practice of wrongful or claim creating conduct is illustrated in the **"Key PSPS POC Documents."** Debtors have also failed, including as part of PG&E's monopoly obligation to serve Creditor and others, to maintain, upgrade and improve the system for foreseeable conditions of use that preserve operating capacity, especially without PSPS blackouts to the maximum extent feasible (eg, with much more undergrounding), as other utilities like SDG&E have earlier done in establishing better and even minimum acceptable systems and practices. Those continuing failures to prevent, reduce and correct E System Flaws, including by reducing the need for PSPS blackouts with undergrounding and other improvements, create continuing additional PSPS Claims. (Some of those E System Flaws and better alternatives have been admitted or implicitly conceded by PG&E in its Wildfire Mitigation Plan filed with the CPUC, in its filings with Judge Alsup in its probation proceeding, or in other Key PSPS POC Documents, including where PG&E now seeks to do some what it could and should have done long ago, such as by belatedly following the SDG&E lead, including by more undergrounding to reduce the need or excuse for excessive PSPS blackouts). Each of the Key PSPS POC Documents and other documents supporting claims is (i) in the possession of Debtors; and (ii) voluminous. Such supporting documentation are available from Creditor to the extent required to be (subject to applicable laws and rules and entry of appropriate confidentiality agreements, to the extent necessary and satisfaction of the requester's standing) upon written request to Creditor.

## B. Each Debtor's Role In Such Matters.

Creditor is informed and believes that this objectionable and actionable PG&E conduct and such E System Flaws and PSPS Claims resulted from the direction or actionable participation of its shareholder, PG&E Corporation, with the intent and effect of (i) increasing the equity value and returns to PG&E Corporation at the expense of safety and even minimum required performance without so many or so long PSPS blackouts, and (ii) evading or failing compliance with applicable laws and regulations, especially those assuring that PG&E could timely and safely perform its obligations to serve its public trust obligations to its customers and other obligee parties, including Creditor. (Such concerns about PG&E Corporation have been confirmed, for example, (a) by the requirements of AB 1054, where the Legislature and Governor have attempted to assure through the CPCU process that such objectionable Debtor governance and PG&E's criminal history does not repeat itself, and (b) by the "Securities Fraud Suit" and other "Key PSPS POC Documents" defined below.) Although Debtors must have been long aware of the climate and other foreseeable changes and other external operating conditions affecting their system, and were therefor required to adapt earlier to those conditions, as SDG&E and others did, Debtors' system would still have been dangerous and unsafe even without any such climate or other changes, because the insufficiently updated system was flawed and allowed to deteriorate and, worse, was wrongfully operated by Debtors in a "run to failure" approach criticized in Key PSPS POC Documents. For example, it is irrefutable that Debtors allowed at least hundreds of thousands of large trees to grow next to

PG&E wires and poles where applicable laws and regulations required them to have clear and safe spaces, including in Creditor's neighborhood. This is confirmed by the fact that the PG&E Wildfire Mitigation Plan now requires a decade of intense effort to attempt to correct such E System Flaw dangers in order to restore even the basic minimum tolerable position in which such system should have been operating all along and, if complied with, would have reduced the need for PSPS blackouts now and at least their duration and frequency. Moreover, applicable laws and regulations required more of the Debtors, which may be one of many reasons why the Debtors' records and reporting were so incorrect and deficient on such topics and others, for example, as demonstrated in complaint filed on behalf of shareholders as the "Securities Fraud Complaint," in the Monitor's report to Judge Alsup, and in other Key PSPS POC Documents, as defined below. Furthermore, even as PG&E has attempted to apply its new "hardening" plans in Creditor's neighborhood, many vegetation and other dangers continue to exist there and, because Debtors' negligently, grossly negligently, recklessly or willfully chose that inferior, inadequate approach to the undergrounding that would have reduced the need for PSPS blackouts, Debtors caused Creditor to purchase and install a natural gas generator to partly mitigate Creditor's damages, as described in this proof of claim.

Among circumstantial other evidence for such PSPS Claim allegations supported by the Key PSPS POC Documents is that such investor owned utilities historically (and as properly run) were considered and operated as conservative investments for pension funds, insurance companies and the like, since the utility was only entitled to a regulated cost recovery plus a reasonable and regulated rate of return. However, now as to Debtors, as is indisputable in the record of Debtors' Chapter 11 cases, hedge funds and private equity funds are buying massive claims, proposing huge investments, and otherwise competing in battles for control of the reorganized Debtors. Since such hedge and PE funds require high minimum returns of at least many times higher than any regulated utility's reasonable and normal rate of return (eg, a minimum of 25% and often much more versus maybe something like 6%), there must be some value opportunity for such controlling equity holders that they perceive as worth fighting for to achieve somehow far more than that lesser permitted reasonable regulatory rate of return. A properly run utility should not interest such aggressive high yield funds. By analogy, this is like a situation where a felon on parole owner of an ordinary cab runs it into a dilapidated condition where it is unsafe or dangerous to operate (much less to carry passengers) under various seasonally common conditions (and under occasional, worse conditions), but where now two different teams of race car drivers are competing in an extremely aggressive and high cost manner to buy that old cab for regulated use that still has to operate at regulated rates and terms. Why, unless some objectionable prior history of mysteriously high yield returns is to be repeated somehow?

### C. "PSPS Blackouts" And Related "PSPS Claims" As Defined Below.

In any event, in order to reduce Debtors' risk of liability and mitigate their damages for that dangerous and unsafe system causing more fires and harms, Debtors have embraced a problematic solution of Public Safety Public Shutoff (**"PSPS"**) blackouts to simply shut off the power on windy days when it is hot and dry, subject to various evolving regulatory tests and

standards responding to that public safety threat that should not exist, at least at that level of risk. Because the PSPS trigger conditions commonly occur in fire season and such dangers by such E System Flaws require not only long periods without electric service, but even longer periods for checking the wires before re-energizing the system for resumed service to customers, the Debtors have wrongfully created and are now perpetuating a bigger problem than should or could exist, if there had been timely and complete compliance with applicable laws and regulations and other practices and actions needed to prevent E System Flaws, including following the better SDG&E minimum practices with better and more improvements, such as more undergrounding. If before now Debtors had complied with applicable laws and regulations and otherwise conducted themselves properly to avoid or reform E System Flaws, the system could better operate safely under many conditions where it will now be shut off by PSPS blackouts that are unreasonable and excessive, especially since they are unnecessary and only needed because of the dangerous E System Flaws that Debtors wrongfully created in the first place. Furthermore, if and when a safer system would still be shut off properly for extraordinary conditions, the delay in resuming service would be much shorter, as is apparent from comparing the performance differences between PG&E and SDG&E.

In order for Creditor to protect himself from adverse consequences of excessive and unreasonable PSPS blackouts by Debtors and to mitigate my damages, Creditor has had to purchase and install the referenced Kohler natural gas generator to provide electricity to Creditor's home (and home office) when PG&E was not performing its obligations to serve Creditor with electricity. Those invoices are among the Key PSPS POC Documents. That amount is a liquidated part of Creditor's PSPS Claim, and that is an exercise of Creditor's PSPS Remedy to mitigate his damages with such acquisitions and, when permitted, to recoup or offset them against any amounts that Creditor may at any time owe to PG&E or its successor.

In effect, Debtors have used the concept of mitigation of their liabilities (for their many violations of laws and regulations, negligence, gross negligence, reckless or intentional misconduct, and other wrongs, such as reported in the Key PSPS POC Documents) in order to use PSPS blackouts attempt to preserve equity value and shift problems that the Debtors have created instead to Creditor and to their customers and entire communities. That is especially applicable here, where Debtors could have provided a better solution (eg, with undergrounding and SDG&E type smaller circuits to shut off the smallest possible areas) that would have eliminated or reduced PSPS blackouts in Creditor's community, but, instead, Debtors wrongfully chose to adopt a less effective so-called hardening solution that will cause unreasonable and excessive PSPS blackouts for at least a decade in order to amortize Debtors' costs, so as to preserve PG&E Corp's shareholder equity, wrongfully prioritizing shareholders over customers entitled to service without such excessive and unreasonable PSPS blackouts. While Debtors predictably will attempt to claim immunity or excuses, such as based on Debtors' disputed interpretations of CPUC rulings or those of its probation court, permission for such a wrongdoer (especially a felon on parole) to shut down for public safety needs caused by dangers that Debtors created (or made worse) is not the same as immunity for the E System Flaws that Debtors created, much less for PSPS Claims or any other Protected Claims; it's just a less

harmful, but still wrongful, mitigation of the damages from greater continuing wrongs, including as illustrated in the Key PSPS POC Documents.

### D. The Post-petition Character of the PSPS Claims For "Excessive" Or Unreasonable PSPS Blackouts

To the maximum extent permitted by law, all Protected Claims shall be asserted and enforced one way or another, but ideally as what they should be: as post-petition administrative claims (or, if occurring after the confirmation of a plan of reorganization, by a reorganized PG&E or its other successor as post-bankruptcy claims against that successor.) By analogy, consider a situation where a criminal mine owner next to a river creates a toxic mine water out-flooding problem that it plans to manage during a decade of planned, gradual future remediation with an interim dam at the mine entrance and an insufficient overflow pond to attempt to hold back the toxic water from further poisoning the river and destroying the economics of the town and the health of its residents. However, since that interim water retention solution may be inadequate under some foreseeable conditions whenever the water after heavy rains threatens to overwhelm the dam and holding pond, the mine owner gets interim permission from the EPA to release enough water from that flawed system in order to save the dam and holding pond from washing out entirely and flooding everything in an even more massive, toxic tidal wave. That emergency toxic water pressure release accommodation does not mean that the locals who now choose to mitigate their damages, such as by drilling safe wells and/or buying water filtration or storage devices, have no claim, because their river water is still now more poisoned from that interim continuing conduct. The same is true here by analogy with the coming decade of excessive and unreasonable PSPS blackouts, whose reasonableness or excessiveness must be judged by the fact that they are caused by Debtors' wrongfully created E System Flaws and the selfish Debtors' refusal properly to mitigate those dangerous conditions with better solutions, such as by what SDG&E has done, especially with more undergrounding and micro circuits to narrow the blackouts as much as possible.

This proof of claim preserves Creditor's right to all PSPS Claims and other claims relating to Debtors' failing properly to upgrade and maintain the system, so that it is in compliance with applicable laws and regulations and is safe to operate without excessive or unreasonable PSPS blackouts. (Where as used everywhere herein, "**excessive**" includes whatever is more than the law requires Creditor to tolerate or whatever is unreasonable by any applicable legal test.) Furthermore, each and every excessive or unreasonable PSPS blackouts entitles Creditor to every PSPS Claim and other relevant claim for any and all damages that he may suffer and other PSPS Remedies in accordance with applicable laws and regulations, including as well as for any mitigation expenses and costs that Creditor may incur, together with claims for equitable, implied and other indemnity for any claims against Creditor for what any Debtor has done or not done as required by applicable laws, regulations, contracts, tariffs, and other obligations.

### 3. Other Protected Claims.

Case: 19-30088    Doc# 9653-1    Filed: 12/01/20    Entered: 12/01/20 14:21:55    Page 7
of 21

Exhibit A
Page 6 of 13

While it is not yet clear what will be the fate of the Debtors' objectionable Plan or any competing plan of reorganization, such a plan could be attempted or confirmed that could result in or reveal other Protected Claims. Debtors could also engage post-petition in other wrongful conduct, whether tortious, inequitable, in violation of applicable fiduciary duties, laws, regulations, or otherwise creating a claim, while Debtors attempt to characterize the same (incorrectly as discussed above) as some kind of unmatured, contingent, or other prepetition claim. However so characterized following the dispute with Creditor by the final order of any applicable court in such cases, that is a Protected Claim that is reserved herein.

### 4. Additional Definitions.

The following additional defined terms shall also apply herein:

"**E System Flaws**" means the flawed, defective, or wrongful designs, equipment, improvements, conditions, and circumstances relating to the PG&E electrical system for which any Debtor is directly or indirectly responsible or liable on any basis in law or equity or otherwise, including without limitation on account of noncompliance with applicable laws, regulations, probation court orders, and other requirements to be satisfied in order to avoid liability or responsibility for any of the dangerous or claim-creating conditions of that system under the foreseeable or expected circumstances under which such electrical systems and components are expected to operate or perform safely and properly consistent with applicable laws and regulations. As illustrated herein, PG&E is liable for causing (and PG&E Corporation is liable as described above for indirectly causing or for supporting or participating in), whether willfully, intentionally, recklessly, grossly negligently, negligently, otherwise tortuously, and/or in violation of applicable law and regulations (each applicable to some or all of the actionable acts or omissions at issue), such system to be designed, constructed, equipped, improved, maintained, and neglected by PG&E so badly that its system is now too defective and dangerous to operate normally, especially on windy days when it is hot and dry within the PSPS standards for the PSPS blackouts that the Debtors have directly or indirectly made necessary or required, all as explained in this proof of claim or referenced in the Key PSPS POC Documents. This includes the commonly asserted claim by fire victims and other critics that PG&E long operated its neglected system on a "run to failure" approach, illustrated by the Caribou line near Paradise that PG&E abandoned after the fire. Now that the neglected and defective system and components are failing, PG&E (and, to the extent applicable, PG&E Corporation) is liable whenever it is shifting the related problems, burdens and risks to its customers and their communities and governmental units, including Creditor, by excessive or unreasonable PSPS blackouts etc for which Debtors must be accountable and as to which the quickest, best, least disruptive, and otherwise more effective mitigation solutions must be used instead, eg, by following the better practices of SDG&E, such as using more undergrounding and micro circuits in areas like where Creditor lives. The reasons and causes for that situation are all E System Flaws, in addition to other flaws identified or referenced in this proof of claim or in the "Key PSPS POC Documents." The same PG&E system causes for fires for which PG&E is liable are now also causes for excessive or unreasonable PSPS blackouts, eg, as Debtors' objectionable and unsatisfactory attempt (i) to mitigate the risks and harms that they have created with more

wrongful conduct in excessive and unreasonable PSPS blackouts, and (ii) to shift the problems created by PG&E that expose it to liability instead to such others, like Creditor, through such blackouts in an attempt impermissibly to evade accountability for those wrongs.

"**Key PSPS POC Documents**" means, regardless of the physical, electronic, or other nature, medium or material of the same, any and all of the (i) filings, documents, evidence or admissions, (ii) rulings, decisions, or acts of any court, regulator, or other governmental or legislative committee, commission, official, authority, monitor, or agent, and (iii) any other bases cited or referenced in this proof of claim or in any other referenced objection, complaint, statement, argument or other basis, for, evidencing, proving, or supporting any "PSPS Claim," any other "Protected Claims," any requested "PSPS Remedies," or any other claims noticed or reserved in this proof of claim, including with respect to any reporting or compliance imposed or required of PG&E by Judge Alsup or his Monitor, by the Legislature in newly enacted SB 70, 167,and/or 560, or by the implementing or related CPUC regulations or proceeding, or in anything else referenced in any such references, including, for example, what else is cited or referenced in any complaints, motions, declarations, reports, other filings in referenced proceedings, or other things referenced in any Key PSPS POC Documents. The same Debtor acts, omissions, and wrongs, including any E System Flaws, that cause the risk of fire are also causing excessive and unreasonable PSPS blackouts, and may also be relevant to other claims asserted or reserved in this proof of claim, as may also any related objectionable conduct by or for any Debtor, especially where there is a wrongful pattern and practice, such as, for example, the accusations by many fire victim representatives of Debtors evading discovery by a "hide the ball and run out the game" strategy, and such as "scorched earth" litigation resistance. Those Key PSPS POC Documents include anything Creditor considers relevant in the entire relevant record at any time in any relevant proceedings in which the E System Flaws or any Debtor's relevant acts, omissions or wrongs are addressed or alleged, such as in the cases, proceedings, actions, and communications listed herein: (a) by or for any Debtor (as admissions, confessions, or other evidence against its interest, rather than its alleged excuses or defenses, whether in such cases or proceedings or in any Debtor's SEC, regulatory, probation, or other governmental filings, whether state or Federal), (b) by or for any relevant court, regulator, or other governmental monitor, official, authority, agency, or unit or legislative committee or group, or governmental commission, or (c) by or for any applicable plaintiff, PG&E adversary, declarant, PG&E monitor, critic or investigator of any Debtor (including reporters, such as the Wall Street Journal reporters inspiring Judge Alsup's (or his Monitor's) follow up probation inquiry or such as the Sacramento Bee or San Francisco Chronicle reporters or editors covering these issues), witness, or any other commentator or critic in or with respect to any such Key PSPS POC Documents. Such Key PSPS POC Documents therefore include without limitation what is directly or indirectly relevant to anything in this proof of claim in or from or related to any of the following proceedings at any time: (1) in these Chapter 11 cases, and the related adversary proceedings, cases and appeals, including the estimation proceeding before Judge Donato, which relevant documents and other things include without limitation (i) the fire or PSPS related filings [or documents or things referenced in such filings] by or for the Official Committee of Tort Claimants ("TCC"), such as their relief from stay motion filings (DKTs 2842, especially exhibit 2842-2: the Master Complaint-Individual Plaintiffs in the North Bay Fires

Cases, among other things demonstrating the actionable patterns and practices of Debtors in connection with many prior fires and Debtors' "run to failure" approach to maintenance; Dkt. 2855, and especially declarations in Dkts 2844 and 2847; (ii) the related or similar filings by the Ad Hoc Subrogation Group before their settlement, including their relief from stay filings and exhibits, such as the Declaration of McCallen dated 7/3/19 referencing among other things the Master Complaint-Subrogation Plaintiffs in the In re California North Bay Fire Cases pending in the San Francisco Superior Court No. 17004955 CJC; (iii) the "Public Entities Operative Complaints" or other court or regulatory filings asserting any " Wildfire Claims," as both such terms are defined in PG&E's First Amended Plan of Reorganization; and (iv) by the filings, evidence and other data to come against either or both Debtors in connection with the competing plan of reorganization by TCC and the Ad Hoc Committee of Senior Unsecured Noteholders (the Ad Hoc Noteholders Committee"); (2) in the PG&E probation proceeding, US v. PG&E, Case No. 14-CR-00175-WHA, which includes many PG&E admissions and other useful evidence, such as in the PG&E responses to court questions (eg, Dkt. 1075) (i) in Dkt. 1077 as to the $5B in dividends and $5.3B in campaign contributions and lobbying that could have been better spent on safety compliance and correcting E System Flaws, and (ii) in Dkt. 1078/7/31/19 admitting and responding paragraph by paragraph to the Wall Street Journal's 7/10/19 expose [incorporated herein] entitled: "PG&E Knew For Years Its Lines Could Spark Wildfires and Didn't Fix Them," as well as (iii) many other determinations or stated concerns of Judge Alsup in that record, and (iv) any and all relevant admissions and evidence against any Debtor reflected in the record in that proceeding, including the 7/26/19 report to Judge Alsup of the Kirkland & Ellis Monitor as to some of the failures in the achievement of the Wildfire Mitigation Plan or in compliance with any of Judge Alsup's order or expectations; (3) in any other criminal proceedings that may occur against any Debtor, such as the one some people expect from the prosecutor in Butte County as to fires there; (4) in the complaints and actions of any and all fire victims, including those referenced above in other Key PSPS POC Documents, such as the aforementioned Public Entities Operative Complaints, the In re California North Bay Fire Cases, the Tubbs Fire jury trial set for January 2020, the settled (but not paid for) Butte Fire Cases, and others; (5) in (i) the central CPUC proceeding OII I-19-09-016 commenced 9/26/19 for the approval of a plan of reorganization for Debtors, satisfying the requirements of AB 1054, settling CPUC claims, and other issues, as well as resolving or addressing others by related proceedings listed or added therein, including without limitation anything related to Rule 35 (eg, vegetation management), the Wildfire Mitigation Plan and Decision 19-05-037, the Investigation of the 2017 fires in I19-06-015 and in CPUC Order dated 6/27/19, the Safety &Enforcement Division Report dated 6/13/19 on the October 2017 Fire Siege, CPUC decision 19-05-037, and (ii) any and all PSPS related proceedings, among other things, requiring PSPS as something that must be reasonable and a last resort, not an excuse for avoiding liability  (eg, CPUC Resolution ESRB-8 dated 7/12/18, expanding on Decision 12-04-024, as well as the relevant record of any such proceedings and the patterns and practices reflected in the San Bruno fire findings and rulings (eg, OII 18-12-007);  (6) in the class action securities fraud etc amended complaint and any other filings by any such plaintiffs or any admissions or evidence against interest by or for any Debtor either in the In re PG&E Corp. Securities Litigation Civil Action No. 3:18-CV-03509-EJD pending in the N.D. Cal. (sometimes called the "**Securities Fraud Suit**") or at issue in the Adversary Proceeding No. 19-03003 in this Case entitled PG&E Corp. et

al v. Public Employees Retirement Association of New Mexico et al, describing a long history of reasons for that parent company to be responsible and liable for the wrongs of or for its PG&E subsidiary; (7) the record of the hearings on any Debtor fire or any PSPS blackout or related matter in any of the Legislative Committees or the Fire Commission or otherwise in any governmental units proceedings or hearings, including those related to or complying with AB 1054 or newly enacted SB 70, 167, or 560; and (8) investigative reporting on any such matters that includes relevant evidence or admissions, including the series of stories in the Wall Street Journal, such as the story that attracted Judge Alsup's investigation above, and the series in the San Francisco Chronicle, such as the 7/16/19 article "PG&E says power line inspections revealed 10,000 problems—some in need of immediate repair," and the editorial on 7/12/19 entitled: "Power shut offs are serious, and California lawmakers need to watch PG&E carefully," or similar coverage in the Sacramento Bee.

"**PSPS blackouts**" means any de-energization or abandonment of any PG&E transmission or distribution service by or for PG&E for any cause or excuse, whether temporarily or permanently, whether permitted by law or regulation, including by CPUC Resolution ESRB-8 (July 12, 2018), enhancing and supplementing CPUC Decision 12-04-024 applied to SDG&E and extending it to PG&E, and whether or not involved in or a basis for any PSPS Claims or PSPS Remedies. Those PSPS blackouts include what must be reported and otherwise addressed by newly enacted SB 70, 167, and 560. A PSPS blackout is for all purposes "**excessive**" and "**unreasonable**" (and contrary to the PG&E Electric Rule 14 tariff as not an exercise of "**reasonable diligence**") whenever it creates any basis for PSPS Claims or PSPS Remedies in accordance with applicable law. While disagreements are expected with Debtors over which PSPS blackouts are excessive, unreasonable, or otherwise actionable or contrary to applicable law or regulations, one conceptual test is that such wrongful condition and Debtor liability exists whenever there is a PSPS blackout that would not be required, or that endures longer than would be the case, if there were no E System Flaws and none of the relevant, actionable Debtor conduct had occurred as stated in the Key PSPS POC Documents. For example, if Debtors timely had properly followed the SDG&E model, even as referenced in PG&E's Wildfire Mitigation Plan, such as with more undergrounding (which avoids the need for such PSPS blackouts) and micro circuits (which allows smaller and more precise blackout areas), including as contemplated in newly enacted SB 70, 167, and 560, there would be many fewer PSPS blackouts and service recovery would be much faster. Moreover, instead of PG&E's incorrect position that its PSPS decisions must be judged as if it were starting from a "clean slate," the correct view is that Debtors begin any PSPS decision or action with a long list of relevant negligent, grossly negligent, reckless, willful, intentional, criminal, and other wrongs that affect any judgment of the Debtors' relevant PSPS conduct.

"**PSPS Claims**" means any claim, cause of action or complaint of Creditor, whether legal equitable of otherwise, whether contingent, fixed or inchoate, whether liquidated, or unliquidated or otherwise characterized, and however and whenever arising, directly or indirectly entitling Creditor to any PSPS Remedies or relating in any way to any PSPS decision, act or omission by or for any Debtor cited or referenced in this proof or claim or any other bases for any PSPS Remedies, or as arising from or relating to any E System Flaws considered or

alleged to cause excessive or unreasonable PSPS blackouts or related liability. If and to the extent that any Debtor asserts (as discussed herein) broad interpretations of what is an unmatured, contingent or other claim beyond a normal nonbankruptcy cause of action, then the PSPS Claim matches that assertion, so as to leave no gap to lose any claim, while Creditor reserves its right to resist and dispute such excessive Debtor expansion of such jurisprudence in favor of such claims arising when the harm or damages occur after the petition (and, when applicable, after the bankruptcy). Since Debtors appear to contend, as explained in this proof of claim, that a proof of claim filing may be required by this existing Bar Date Order or others as to future or contingent or unmatured events, acts or harms, such as when there is a preexisting contract or relationship, this proof of claim has to assume the worst case Debtor conduct or consequences that may occur, since to do otherwise would (under the Debtors' disputed theory) result in the loss of the right to enforce the claim that would result when that worst case or harm occurs. Therefore, this proof of claim is filed in an abundance of caution, so as to preserve any and all Protected Claims that may arise against any Debtor, although Creditor has focused without limitation on PSPS Claims, because those exist post-petition and seem the most likely to arise again and continue.

This includes, among other things, any and all applicable causes of action for any unfair business practices (eg, Ca. Bus. & Prof. Code 17200 et seq), violation of PG&E's duties to serve under applicable laws, regulations, and tariffs (eg, Public Utilities Code section 451 et seq), inverse condemnation, nuisance, other torts of any kind, breaches of contract or quasi-contract, breach of fiduciary duty of each Debtor in accordance with applicable law (eg, In re Cochise College Park, Inc., 703 F.2d 1339 [9th Cir. 1983] and following precedents), restitution for unjust enrichment by any Debtor or for or on account of any profit or benefit of any kind directly or indirectly accruing at any time to PG&E, in any case on account of any excessive PSPS blackout or other loss or damage to or of Creditor, as well as any liability arising directly or indirectly from any violation of any applicable laws and regulations binding any Debtor for the protection or benefit of Creditor, including the newly enacted SB 70, 167, and/or 560.

To the extent that PG&E is acting for or other behalf of or for the benefit of PG&E Corporation with respect to any applicable Claim or that under any applicable law or equity or theory or cause of action PG&E Corporation is directly or indirectly liable on any Claim with or on account of PG&E, whether jointly, severally or jointly and severally liable for the wrongful and other actionable conduct of PG&E on any theories for vicarious and other liability, whether as joint tortfeasors, aiders and abettors, or otherwise, then such PSPS Claims (and applicable PSPS Remedies) and other Protected Claims shall apply to PG&E Corporation as well.

As for Creditor, the loss of electric service by a PSPS blackout is almost as bad as the loss of use or access to a functioning system caused by fire, expect that the fire damage may be a bigger surprise and last longer, although there will be many more relevant PSPS blackouts than relevant fires. The damages and losses suffered by Creditor are not merely as a customer/homeowner, but also a professional working from a home office. As a result, even though Creditor now has purchased and installed a generator to achieve some relief from the PSPS blackouts, that generator does not solve Creditor's need for continuing internet access to conduct his business.

"**PSPS Remedies**" means any setoff, recoupment, mitigation, remedy, damages, or other relief available to Creditor with respect to either Debtor at law or equity or otherwise, including as to any regulatory, political or other protective response, whether pursuant to or in response to any PSPS Claims or otherwise, on account of E System Flaws, excessive or unreasonable PSPS blackouts, or other wrongful conduct at issue in any PSPS Claim or other Protected Claim.

## 5. Reserved Additional Rights And Protections Without Waivers Etc.

Nothing herein nor in any other appearance, pleading, claim, suit, motion, complaint, or any other writing or conduct shall constitute a waiver (or other basis for estoppel, impairment, or other adverse effect) by or for Creditor of any procedural and/or substantive claims, interests, rights, remedies and/or defenses including, without limitation: (a) the right to have any and all final or otherwise applicable orders in any and all matters entered only after de novo review by a United States District Court Judge, as well as any other rights derived from the jurisprudence of Stern v Marshall and related precedents at any time; (b) the right to have any matter or claim heard and tried before an Article III court or before any regulator, including the CPUC or the Federal Energy Regulatory Commission ("FERC"); (c) the right to trial by jury or before any regulator, including the CPUC or FERC, in any proceeding as to any and all claims or matters so triable therein, whether or not the same be designated legal or private rights, or in any cases, controversy or proceeding related hereto, whether or not such jury trial right is pursuant to statute or the United States Constitution or otherwise; (d) the right to have the reference of any claim or matter withdrawn by the United States District Court in any matter or proceeding subject to mandatory or discretionary withdrawal; (e) other rights, claims, actions, remedies, defenses, setoffs, recoupments or other matters to which Creditor is entitled at law or in equity or under the United States Constitution or otherwise; or (f) the right to be served directly with pleadings commencing an adversary proceeding, contested matter and/or lawsuit or proceeding. Nothing herein nor in any other pleading or papers filed by Creditor is or is to be construed as any waiver of the right to jury trial or to relief from CPUC, FERC, or any other regulatory or governmental authority which Creditor has or may have under the applicable law.

Creditor reserves the right to attach or rely upon additional documents or evidence in support of this proof of claim, including if, as, and when such additional documents or evidence become available or requested, such as described in the Key PSPS POC Documents.

Filing of this proof of claim or participating in or seeking relief from the bankruptcy case shall not be deemed to constitute a concession or admission of jurisdiction in the case or cases or before this Court, or any other court or regulator, or as to any regulatory or criminal or other jurisdiction. Nor does Creditor waive, and specifically reserves and preserves, any procedural and/or substantive and/or regulatory defenses, recoupments, or setoffs to any claim that may be asserted

Case: 19-30088    Doc# 9653-1    Filed: 12/01/20    Entered: 12/01/20 14:21:55    Page 13 of 21

against Creditor by or for either Debtor, by or for any trustee of any Debtor's estate, or by any trustee or other official appointed in any plan of reorganization or otherwise in this case, or by or for any other party, person, entity or group. The filing of this proof of claim shall not constitute an election of remedies or choice of law or a waiver (or other basis for estoppel, impairment, or other adverse effect) of any such rights, remedies, or claims relating thereto. To the extent permitted by applicable law, nothing contained in this proof of claim shall limit any right of Creditor to commence or continue any proceeding or take any action to the extent permitted by the Bankruptcy Code, application non-bankruptcy law or regulation, or order of a court or regulator of competent jurisdiction, or shall constitute an election of a bankruptcy remedy over a regulatory or other remedy, except as otherwise expressly chosen by Creditor in those terms (but not by mere implication or consequence of actions).

Claims reserved or preserved by this proof of claim include any and all claims on any basis, including costs, defenses, contracts, regulatory rights, demands, setoffs, recoupments, credits, causes of action, obligations, duties, bonds, accidents, injuries, attorneys' fees, expenses, interests, losses, penalties, damages, punitive damages, special damages, rights of contribution and indemnity, whether partial or full, equitable, legal or contractual, and liabilities of all types, whether known or unknown, whether contract or tort, whether in law or equity, or whether under federal and state law. The claims reserved or preserved also include the causes of action claims, remedies, interests, or powers of Creditor in any capacity, whether held as owner, principal, agent, representative, subrogee or beneficiary.

Without limiting any of the foregoing, Creditor reserves any and all post-petition administrative expense rights or post-petition claims (or subsequent post-bankruptcy claims) it has or may have beyond unreasonable or excessive PSPS blackouts, including without limitation with respect to any matters not in its the fair contemplation at the time of filing this proof of claim, whether arising out of, related to, or in connection with any pre-petition condition or otherwise thereafter.

Dated: October 10, 2019

George Larry Engel

Case: 19-30088    Doc# 9653-1    Filed: 12/01/20    Entered: 12/01/20 14:21:55    Exhibit A
of 21

# EXHIBIT B

**Exhibit B: "Related Proceedings:"**

As a matter of clarity, Creditor is not citing such fire focused "**Related Proceedings**" below for "fire claims," but rather for PSPS related claims. However, there is a causal connection between fire related matters and PSPS related claims that is both obvious and illustrated often in such cites, especially in Judge Alsup's statements, findings, and rulings in his "**Probation Proceedings**," which come together as a common foundation for all such claims (including what the POC calls "**Protected Claims**" and "**PSPS Claims**"). Those are caused by, and the responsibility and liability of, Debtors and Reorganized Debtors for wrongs relating to their flawed, grossly neglected, and actionably dangerous electrical system that Creditor's POC defined as "**E System Flaws**," which is excerpted below, and confirmed in evidence and admissions from what is described in the POC definition of "**Key PSPS POC Documents**" and updated citations in the attached Response. The defined terms in Creditor's "**POC**" and "**Response**" are incorporated herein.

As Judge Alsup confirmed in his summary **"Key Probation Requirements Order,"** aka his "Order Modifying Conditions of Probation" filed April 29, 2020, (Document 1186) in *United States of America v. Pacific Gas & Electric Co*., Case No. 3:14-cr-00175-WHA in the Northern District of California, the wrongs of the Utility caused the system to be too flawed and dangerous to be operated safely under even what would be considered "normal" conditions, much less the "excessive" conditions addressed below and in Creditor's Response, thereby causing PSPS related liabilities under many causes of action addressed in the POC and Response that are beyond any safe harbor of what Debtors and Reorganized Debtors cite as to ESRB-8, Rule 14 or PUC Section 1759 and, therefore, within the rule of PUC section 2106 and other applicable law. See,eg, "**PG&E's Zogg 11/18/20 Admissions**," confirming such a common foundation for complaints both about fire risk and excessive PSPS. Whether or not the courts determine that normal PSPS must be tolerated (eg, see, the PSPSClass Appeal), there is no good reason for tolerating "**excessive**" PSPS, which is addressed in the Response and the Engel Declaration, and which includes noncompliance with applicable laws and regulations (eg, ESRB-8, Rule 14, etc) and which therefore allows full operation of PUC section 2016 and other laws supportive of such claims. Thus, as explained in the POC and Response, the entire record of such "Related Proceedings" substantiate Creditor's claims for or relating to improper or excessive PSPS, especially for coercing for the unjust enrichment of Debtors and Reorganized Debtors and windfall compliance benefit and support from self-defense generation by victim customers (like Creditor) having to purchase generators as promoted by the Utility and thereby enhancing its positions at the expense of such victims.

To be clear, the term "Related Proceedings" refers to both key documents and evidence referred to in Creditor's attached "**Response**" or as "**Key PSPS POC Documents**" in the POC (see also the excerpt inserted below that is reformatted somewhat for ease of cross-reference with respect to the Response related updates or supplements herein), and (b) the proceeding or other sources in which the same can be located, such as those listed below or cited in such cited documents or record. The Key POC PSPS Documents from the POC are included as part of the Related Proceeding documents here, and such documents added here are included within the Key POC PSPS Documents.

1

Among the "Related Proceedings" are the following":

**1.** **Judge Alsup's "Probation Proceedings."** While the entire record is a helpful source of evidence, admissions, and useful data (and is applicable under the terms of the POC Key POC PSPS Documents definition used in this Related Proceeding as well), the following are especially useful additions to those earlier POC cites:

**(a)** The summary findings, conclusion, comments and rulings in his 4/29/20 "**Key Probation Requirements Order**" are based upon that entire record, as if it were collectively his findings of facts and conclusions of law, and, to the extent that it includes many admissions and confessions helpful to Creditor's claims, those cannot be disputed by Debtors or Reorganized Debtors. See, eg, "PG&E Zogg 11/18/20 Admissions" and "**PG&E's 7/1/20 Butte Admissions**;"

**(b)** The "**Butte County Case,**" including the "**Butte Fire DA Case,**" that was explored on the record by Judge Alsup in connection with such PG&E's 7/1/20 Butte Admissions, including the 85 count County of Butte Indictment #29CF01422 filed 3/17/20 in the Butte County Superior Court and the Butte County District Attorney's The Camp Fire Public Report dated June 16, 2020, and "PG&E's Response To People's Statement of Factual Basis In Support of the Pleas And Sentencing Statement" filed July 1, 2020, as Document #1232

**(c)** The "**Zogg Fire Case**," including the "Zogg Fire" record that resulted in the PG&E Zogg 11/18/20 Admissions, including Judge Alsup's related Order of October 29, 2020, and PG&E's related submission to that court on October 26, 2020, followed by the "Response To Request For Follow Up By PG&E Concerning Its October 26 Submission" filed November 18, 2020 as #1265; and

**(d)** The Key PSPS POC Documents cited below.

**2.** **"PSPS Class Action" matters,** including the entire record in the "PSPS Class Appeal" of this Court's Class Action PSPS Decision, especially the Plaintiffs' briefs. (As described in the Response, Creditor's broader claims include a subset of similar claims, but which have more strength, as well as other claims beyond the scope of that class action);

**3.** **"CPUC Proceedings,"** include those proximately related or relevant to the POC (within the scope of Key POC PSPS Documents) or to Creditor's Response, such as rebutting whatever uncited CPUC proceedings, rulings, or matters on which PG&E incorrectly relies in (a) resisting PUC section 2016 liability or asserting section 1759 preemption, or (b) asserting that Rule 14 or ESRB-8 somehow excuse Debtors and Reorganized Debtors from liability on any of Creditor's claims. These proceedings will continue to arise because of PG&E's continuing wrongs, as described in J.D. Norris' San Francisco Chronicle story dated 11/25/20 entitled "California regulator: PG&E's tree trimming falls short for fire safety," which supports the analysis of Judge Alsup and his Monitor as well as what is demonstrated in the Engel Declaration as to PSPS.

**4.** **Media.** While there are hundreds of media exposures and revelations citing or pointing to evidence supporting Creditor's claims, it seem premature to be listing them

2

all here now before the Debtors and Reorganized Debtors have even attempted to be specific as to their Objection theories I expect to dispute. However, I note again as in the Key POC PSPS Documents described below the Wall Street Journal article date 7/10/19 that Judge Alsup (at Dkt 1075) used to pry out helpful admissions from PG&E as well as the recent San Francisco Chronicle story which sounds like Judge Alsup's massive record may be convincing some CPUC leaders to become more strict with PG&E as to what is not only causing fires, but also excessive PSPS (see the "E System Flaws" in the POC) addressed herein; and

     **5.**     **This Chapter 11 Case.** Documents filed in this case also elaborate on various of those other matters, and, when the issues regarding Creditor's POC are more focused by the Debtors and Reorganized Debtors, Creditor will be more specific as well, especially by citing to filings by or for TCC before its settlement with the Debtors, as well as in the Key PSPS POC Documents mentioned below.

     **The following definitions are excerpted from Creditor's POC and reformatted with some light editing and cross-references for convenience in relating them to the foregoing:**

     "**Key PSPS POC Documents**" identified in Creditor's POC means, regardless of the physical, electronic, or other nature, medium or material of the same, any and all of the (i) filings, documents, evidence or admissions, (ii) rulings, decisions, or acts of any court, regulator, or other governmental official, authority, monitor, or agent, and (iii) any other bases cited or referenced in this proof of claim or in any other objection, complaint, statement, argument or other basis, for, evidencing, proving, or supporting any "PSPS Claim," any other "Protected Claims," any requested "PSPS Remedies," or any other claims noticed or reserved in this proof of claim, or in anything else referenced in any such references, including, for example, what else is cited or referenced in any complaints, motions, declarations, reports, other filings in referenced proceedings, or other things referenced in any Key PSPS POC Documents. The same acts, omissions, and wrongs, including any "**E System Flaws**," that cause the risk of fire are also causing PSPS blackouts, and may also be relevant to other claims asserted or reserved in this proof of claim, as may also any related objectionable conduct by or for any Debtor. Those Key PSPS POC Documents include anything Creditor considers relevant in the entire relevant record at any time in any relevant proceedings in which the E System Flaws or any Debtor's relevant acts, omissions or wrongs are addressed or alleged, such as in the proceedings, actions, and communications listed herein: (a) by or for any Debtor (as admissions, confessions, or other evidence against its interest, rather than its alleged excuses or defenses, whether in such proceedings or in any Debtor's SEC, regulatory or other governmental filings), (b) by or for any relevant court, regulator, or other governmental official, authority, agency, or unit, or (c) by or for any applicable plaintiff, PG&E adversary, declarant, PG&E monitor, critic or investigator of any Debtor (including reporters, such as the Wall Street Journal reporters inspiring Judge Alsup's follow up probation inquiry (Dkt. 1075) or the Sacramento Bee or San Francisco Chronicle reporters or editors), witness, or other commentator or critic in or with respect to any such Key PSPS POC Documents. Such Key PSPS POC Documents therefore include without

limitation what is directly or indirectly relevant to anything in this proof of claim in or from or related to any of the following proceedings at any time:

(1) in **these Chapter 11 cases**, and the related adversary proceedings, cases and appeals, including the estimation proceeding before Judge Donato, which relevant documents and other things include without limitation the fire or PSPS related filings [or documents or things referenced in such filings] by or for the Official Committee of Tort Claimants ("**TCC"),** such as their relief from stay motion filings (DKTs 2842, especially exhibit 2842-2: the Master Complaint-Individual Plaintiffs in the North Bay Fires Cases, among other things demonstrating the actionable patterns and practices of Debtors in connection with many prior fires and Debtors' "run to failure" approach to maintenance; 2855, and especially declarations in DKTs 2844 and 2847; the related or similar filings by the Ad Hoc Subrogation Group before their settlement, including their relief from stay filings and exhibits, such as the Declaration of McCallen dated 7/3/19 referencing among other things the Master Complaint-Subrogation Plaintiffs in the In re California North Bay Fire Cases pending in the San Francisco Superior Court No. 17004955 CJC; and the "Public Entities Operative Complaints" or other filings asserting any " Wildfire Claims," as both such terms are defined in PG&E's First Amended Plan of Reorganization;

(2) in the **PG&E probation proceeding**, US v. PG&E, Case No. 14-CR-00175-WHA, which includes many PG&E admissions and other useful evidence, such as in the PG&E responses to court questions (eg, Dkt. 1075) (i) in Dkt. 1077 as to the $5B in dividends and $5.3B in campaign contributions and lobbying that could have been better spent on safety compliance and correcting E System Flaws, and (ii) in Dkt. 1078/7/31/19 admitting and responding paragraph by paragraph to the Wall Street Journal's 7/10/19 expose [incorporated herein] entitled: "PG&E Knew For Years Its Lines Could Spark Wildfires and Didn't Fix Them," as well as many other determinations or stated concerns of Judge Alsup, and any and all admissions and evidence reflected in the record in that proceeding, including the 7/26/19 report to Judge Alsup of the Kirkland & Ellis Monitor as to some of the failures in the achievement of the Wildfire Mitigation Plan or in compliance with any of Judge Alsup's order or expectations;

(3) in any other **criminal proceedings** that may occur against any Debtor, such as the one some people expect from the prosecutor in Butte County as to fires there;

(4) in the **complaints and actions of any and all fire victims**, including those referenced above in other Key PSPS POC Documents, such as the aforementioned Public Entities Operative Complaints, the In re California North Bay Fire Cases, the Tubbs Fire jury trial set for January 2020, the sort of settled Butte Fire Cases, and others;

(5) in (i) the central **CPUC proceeding** OII I-19-09-016 commenced 9/26/19 for the approval of a plan of reorganization for Debtors, satisfying the requirements of AB 1054, settling CPUC claims, and other issues, as well as resolving or addressing others by related proceedings listed or added therein, including without limitation anything related to Rule 35 (eg, vegetation management), Rule 23, the Wildfire Mitigation Plan and Decision 19-05-037, the Investigation of the 2017 fires in I19-06-015 and in CPUC Order dated 6/27/19, the Safety &Enforcement Division Report dated 6/13/19 on the October 2017 Fire Siege, CPUC decision 19-05-037 (and related governmental entity protest letter dated 7/5/19 No. 4117-G/5582E and PG&E's meritless response in its 8/1/19 letter), and (ii) any and all PSPS related proceedings, among other things, requiring PSPS as something that must be reasonable and a last resort, not

4

an excuse for avoiding liability  (eg, CPUC Resolution ESRB-8 dated 7/12/18, expanding on Decision 12-04-024, as well as the relevant record of any such proceedings and the patterns and practices reflected in the San Bruno fire findings and rulings (eg, OII 18-12-007);

(6) in the **class action securities fraud** etc amended complaint and any other filings by any such plaintiffs or any admissions or evidence against interest by or for any Debtor either in the In re PG&E Corp. Securities Litigation Civil Action No. 3:18-CV-03509-EJD pending in the N.D. Cal. (sometimes called the "**Securities Fraud Suit**") or at issue in the Adversary Proceeding No. 19-03003 in this Case entitled PG&E Corp. et al v. Public Employees Retirement Association of New Mexico et al, describing a long history of reasons for that parent company to be responsible and liable for the wrongs of or for its PG&E subsidiary;

(7) the record of the hearings on any Debtor fire or any PSPS blackout or related matter in any of the **Legislative Committees or the Fire Commission or otherwise in any governmental units proceedings or hearings**; and

(8) **investigative reporting** on any such matters that includes relevant evidence or admissions, including the series of stories in the Wall Street Journal, such as the story that attracted Judge Alsup's investigation above, and the series in the San Francisco Chronicle, such as the 7/16/19 article "PG&E says power line inspections revealed 10,000 problems—some in need of immediate repair," and the editorial on 7/12/19 entitled: "Power shut offs are serious, and California lawmakers need to watch PG&E carefully," or in the Sacramento Bee.

"**E System Flaws**" identified in Creditor's POC means the flawed designs, equipment, improvements, conditions, and circumstances relating to the PG&E electrical system for which any Debtor is directly or indirectly responsible or liable on any basis in law or equity or otherwise, including without limitation on account of noncompliance with applicable laws, regulations, probation court orders, and other requirements to be satisfied in order to avoid liability or responsibility for any of the dangerous or claim creating conditions of that system under the foreseeable or expected circumstances under which such electrical systems and components are expected to operate or perform safely consistent with applicable laws and regulations. As described herein, the PG&E is liable for causing (and PG&E Corporation is liable as described above for indirectly causing or for supporting or participating in), whether willfully, intentionally, recklessly, grossly negligently, negligently, tortuously, and/or in violation of applicable law and regulations (each applicable to some or all of the actionable acts or omissions at issue), such system to be designed, constructed, equipped, improved, maintained, and neglected by PG&E so badly that it is now too dangerous to operate normally, especially on windy days when it is hot and dry within the PSPS standards for the PSPS blackouts the Debtors have directly or indirectly made necessary or required, all as explained in this proof of claim or referenced in the Key PSPS POC Documents. This includes the commonly asserted claim by fire victims and other critics that PG&E long operated its system on a "run to failure" approach, illustrated by the Caribou line near Paradise that PG&E abandoned after the fire. Now that the system and components are failing, PG&E (and to the extent applicable PG&E Corporation) is liable whenever it is shifting the related problems, burdens and risks to its customers and their communities and governmental units, including Creditor, by excessive PSPS blackouts etc for which Debtors must be accountable. The reasons for that situation are all E System Flaws, in addition to other flaws identified or referenced in this proof of claim or in the "Key PSPS POC

1126081.1

Case: 19-30088    Doc# 9653-1    Filed: 12/01/20    Entered: 12/01/20 14:21:55    Page 20 of 21

Documents." The same PG&E system causes for fires are now also the causes for excessive PSPS blackouts, as Debtors attempt to mitigate the risks and harms that they have created and to shift them instead to such others, like Creditor.

Case: 19-30088     Doc# 9653-1     Filed: 12/01/20     Entered: 12/01/20 14:21:55     Page 21
of 21