G. LARRY ENGEL (SBN 53484)
**ENGEL LAW, PC**
12116 Horseshoe Lane
Nevada City, California 95959
Telephone: (415) 370-5943
Email: larry@engeladvice.com

Attorneys for
Creditor (who is also the Creditor himself
and shares the same address and data for service
and otherwise, is the person with authority to reconcile,
settle, or otherwise resolve the Objection as to Creditor)

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Francisco Division)

| | |
|---|---|
| In re<br><br>PG&E CORPORATION<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors.<br><br>* All papers shall be filed in the Lead Case No. 19-30088 DM | Case Nos. 19-30088 DM (Lead Case)<br>19-30089 DM<br><br>Chapter 11<br>Jointly Administered<br><br>**DECLARATION OF G. LARRY ENGEL IN SUPPORT OF HIS RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS THROUGH CLAIMS) (DKT 9460); REQUEST FOR #105(d) STATUS CONFERENCE; AND REQUEST FOR JUDICIAL NOTICE**<br><br>Date: December 15, 2020<br>Time: 10:00 a.m.<br>Courtroom: 17<br>Place: (Telephonic Appearances Only)<br>450 Golden Gate Ave., 16th Floor<br>San Francisco, CA 94102<br>Judge: Hon. Dennis Montali |

**TO: (A) THE HONORABLE DENNIS MONTALI UNITED STATES BANKRUPTCY JUDGE; (B) THE OFFICE OF THE UNITED STATES TRUSTEE; (C) DEBTORS AND REORGANIZED DEBTORS; AND (D) OTHER PARTIES ENTITLED TO NOTICE:**

I, George Larry Engel, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1

**DECLARATION OF G. LARRY ENGEL IN SUPPORT OF RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS THROUGH CLAIMS)**
1126071.2

Case: 19-30088   Doc# 9653-2   Filed: 12/01/20   Entered: 12/01/20 14:21:55   Page 1 of 19

**Introductory Data Relating To Creditor And His Claims:**

1. I am the owner (aka "**Creditor**" in my "**Response**") and authorized filer of my "**claims**" filed in my Proof of Claim #80033 filed 10/17/19 attached as **Exhibit A** hereto and incorporated herein (the **"POC"**), including without limitation as to such "**Protected Claims**" and "**PSPS Claims**" (P) the $25,070.72 purchase price of the Kohler natural gas generator (the "**Generator**") that I acquired and use in what I explain below as necessary "**self-defense**" mitigation generation against the PSPS related wrongs and noncompliance with applicable laws and regulations as described in the attachment to that POC form and as updated, explained, or supplemented in my aforementioned "**Response**" disputing Debtors' and Reorganized Debtors' "**Objection**". Each of such documents are incorporated herein by reference. Some reconciling and explanatory data are also included toward the end of this Declaration to integrate my POC and Response. The terms defined in my POC and Response are applicable in the same meanings herein as therein, and, if that is not clear from the context as to which of such two incorporated definitions applies, Creditor may add an "**(R)**" after the defined term to indicate that it comes from the Response, or **"(P)"** after the defined term to indicated that it comes from the POC.

2. I submit this Declaration for and on behalf of myself in support of the attached POC Exhibit A and my related Response simultaneously filed in opposition to the "Objection." My address and other contact data are at the top of this filing, and that is my address for service. I am the person with the right and authority to reconcile, settle, or otherwise resolve the Objection as to Creditor.

3. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge, my review of, and information obtained from, (a) the documents and record of "**Related Proceedings**" defined in the Response (Exhibit B), (b) the "**Key PSPS POC Documents**" defined in my POC, including supplements and updates in my Response, (c) comments of relevant parties in interest in this Case and the prior PG&E Chapter 11 case which I participated, and (d) my review of other relevant documents and information. [If anyone considers that objectionable hearsay by me, I request a chance to assert exceptions, such as relating to the unusual nature of this process. However, more importantly, I am simply paraphrasing there the even more vulnerable to hearsay wording in the Declaration of Renee Records (at #3) supporting the Objection,

2
**DECLARATION OF G. LARRY ENGEL IN SUPPORT OF RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY PASS THROUGH CLAIMS)**
1126071.2

Case: 19-30088   Doc# 9653-2   Filed: 12/01/20   Entered: 12/01/20 14:21:55   Page 2 of 19

as to which there must be a level playing field between our respective declarations.] If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4. My Response also updates, explains, and defends my POC, including by addressing many developments, evidence, and matters arising after I filed the POC, as further indicated at the end of this Declaration. While there are some cross-references herein to Related Proceedings and some laws or regulations, my intent is not to brief such legal matters again, but rather only to provide without limitation a brief context or framework for certain example facts and concerns for better integration of relevant facts with applicable laws and regulations, as well as to counter the incorrect legal interpretations and opinions asserted in the Declaration of Renee Records (at 4.d) as to what the Objection incorrectly calls "Rule 14 Claims" and "PSPS" claims.

5. I am a licensed attorney, who retired from Morrison & Foerster, LLP, on 12/31/15 pursuant to its mandatory retirement rules (as earlier extended for me). I still do some solo work on selected projects from my home office at the above address, both individually and through my professional corporation, Engel Law, PC. Apart from my wife on some occasions, I have no employees. Instead, I outsource various support functions, mostly remotely both because of location differences and, more recently, covid issues. Unfortunately, such remote support is periodically harmed by the same excessive PSPS problems, and cost-effective physical support in other places requires either effective internet not disrupted by PSPS or long drives, when covid rules permit such contact. For example as to such projects, until the end of 2019, for example, I appeared during this case. As described in my POC, the PSPS wrongs and noncompliance create both business and personal harms and damages for which I assert many types of causes of action (eg, POC "Protected Claims" and "PSPS Claims," as supplemented and clarified in the Response) as further explained below.

6. To perform work at my home office requires that I have reliable electricity, internet, and phone service, including such access to outsourced support, which the Utility's PSPS program excessively disrupts, especially (as I contend is occurring periodically on a continuing and even "excessive" basis) in ways that create Claims as described in my POC and Response. Since my work is usually in the Bay Area, a three-hour drive away (one way) from my home office, such internet and phone connectivity here is critical to functionality. The PSPS at issue in the POC disrupts that

3
**DECLARATION OF G. LARRY ENGEL IN SUPPORT OF RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY PASS THROUGH CLAIMS)**
1126071.2

Case: 19-30088    Doc# 9653-2    Filed: 12/01/20    Entered: 12/01/20 14:21:55    Page 3 of 19

functionality for time periods that are "excessive" (as explained below and in the Response).

7. Worse, those PSPS disruptions are expected to continue for at least a decade as planned by PG&E in its Wildfire Mitigation Plan and much longer according to Monitor reports to probation Judge Alsup. Experience in this Case and the Debtors' prior Chapter 11 case have made me cynical (ie, realistic) about PG&E achieving even its minimum goals in that decade, especially if the Utility is successful in inducing or coercing widespread self-generation by customers that reduce the compliance pressures on the Utility at its PSPS victims' expense. The reports of Judge Alsup's Monitor and related discussions in that court have confirmed that PG&E is already substantially off schedule, and any reasonable expectation would be that the flawed and dangerous PG&E system will remain a continuing cause for a much longer time of such disruptive and excessive PSPS blackouts, all as described in my Response, including Exhibit B.

8. While this Court has earlier expressed a view as to certain "habitability" type concerns in the "**PSPS Class Action**" claims addressed below being too "remote" for necessary causation in the "**Class Action PSPS Decision**," I believe that should be reconsidered as to my distinguishable Response, especially in view of the Related Proceedings and at least on account of my broader and more serious claims, my situation, the covid virus (eg, the shelter in place rules for vulnerable people are important here not just for me, but for the protection of others), and other developments that have occurred subsequent to that decision. See Response, including Exhibit B. The way that I think of it, causation and damages or other relief as to such non-business and business harms addressed in my POC or Response vary with each type of claim. So, for example, for excessive PSPS I would look at analogies to what the law of damages awards to a tenant who is wrongfully evicted for a similar period before being able to re-enter, or to the inverse condemnation and nuisance cases that apply for periodic wrongs that disrupt normal living by the occupant.

9. As described in my Response and POC, I believe and contend that my applicable claims are **continuing wrongs** that should be allowed as **post-petition claims** (and, when they occur afterward, **post-confirmation claims**), with **pre-petition claims** being my back-up as a last resort. In another capacity I had raised this issue earlier in limited objections to the Debtors' Bar Date Motion in this Case, but the Court then considered the issue premature. Now it must be ripe. Therefore, my

4
DECLARATION OF G. LARRY ENGEL IN SUPPORT OF RESPONSE TO REORGANIZED DEBTORS'
FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS THROUGH CLAIMS)
1126071.2

Case: 19-30088    Doc# 9653-2    Filed: 12/01/20    Entered: 12/01/20 14:21:55    Page 4 of 19

references herein to my "claims," "Protected Claims," "PSPS Claims," or "**POC claims**," refer to whatever such type of claim is ultimately allowed at the end of this dispute in the applicable processes.

10. I am concerned (for many reasons as described in this Declaration, my POC, or my Response) that more and continuous harms and bigger claims of the types so addressed are coming to harm me in the next decade, plus the longer time until Reorganized Debtors manage to repair and make tolerably safe the flawed and dangerous electric system that continues to be so dangerous that it cannot operate safely without excessive PSPS. See "E System Flaws." Anyone who doubts that should read the record in Judge Alsup's "**Probation Proceeding,**" including his recent "**Key Probation Requirements Order**" summarizing the lessons of that proceeding and other filings in that proceeding mentioned herein and discussed in my Response.

11. Contrary to her disputed summary of Rule 14 and related allegations asserted in the Declaration of Renee Records at #4.d, I refer to my corresponding rebuttals in my Response of her such arguments, which statements by her are not "facts," but rather are disputed interpretations of laws and regulations and that also lack sufficient foundation, including as to her legal expertise on such legal issues. My Response should be sufficient to defeat those unsupported contentions as to those matters. For example, Ms. Records assumes (without addressing the express and contrary wording of my POC, that my claims are **prepetition** within the class of Rule 14 Claims and PSPS Claims, when instead they are **post-petition** claims and therefore excluded from the Objection ADR process as described in my Response. In any event, Rule 14 also applies only to the Utility and does not excuse PG&E Corp.

12. Another example is how my Response rebuts her disputed description of the law and regulations relating to Rule 14 and PSPS, especially with my cited authorities, when she and the Objection cite none. Finally, when she argues an incorrect legal conclusion in #5 to the effect that disallowance of my claims is necessary to prevent recoveries to which I am "not entitled," I refer to my counters in the Response, demonstrating with ample cites to defeat her contentions by contrary authorities, admissions of the Utility in the "**Probation Proceeding**" and other "**Related Proceedings**," and by rulings, comments and findings of relevant courts and governmental officials, such as, for example, Judge Alsup's "**Key Probation Requirements Order,**" the "**Butte Fire DA**

5
**DECLARATION OF G. LARRY ENGEL IN SUPPORT OF RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY PASS THROUGH CLAIMS)**
1126071.2

Case: 19-30088    Doc# 9653-2    Filed: 12/01/20    Entered: 12/01/20 14:21:55    Page 5 of 19

Case," and related **"PG&E's 7/1/20 Butte Admissions and others in the "Butte Fire Case," the "PG&E Zogg Fire 11/18/20 Admissions,"** other matters in the **"Zogg Fire Case,"** and many other earlier parts of the record in the Probation Proceeding, including those cited in my POC, such as "**Key PSPS POC Documents**," both as to the Utility and (from the referenced Securities adversary proceeding, drawing on the Wall Street Journal article on which Judge Alsup followed up) PG&E Corp.

13. The growing amount of my harms causing POC claim damages or rights (eg, restitution) will be further calculated as of the time when the court resolves the dispute over which such claims are allowable and are either pre-petition, post-petition, or post-confirmation or otherwise provides guidance at a status conference. However, the base amount that is easiest to liquidate and distinguish from the PSPS Class Action is what my POC asserts for my Generator and its continuing operation and servicing expenses.

**Creditor's Relevant Property Service Situation And Local Data**:

14. My professional and customer experiences with Debtors and Reorganized Debtors have caused me to be cynical about those defendants and their service and conduct. However, prior to this 2019 Chapter 11 filing, I – like most people—had no awareness of, or, to use the legal phrasing, I did not "fairly contemplate" or foresee, the systematic and continuing wrongs addressed in my POC and that have been progressively exposed and documented in this Case (often by the Official Committee of Tort Claimants, eg, Dkts 2013-2016, 2017, 2018, 2842 (especially Exhibit 2842-2), 2855, 2844, and 2847), but even more so in various "Related Proceedings" discussed below, as well as in the Legislature, the media (eg, the Wall Street Journal article exposing PG&E Corp and triggering hard questioning by Judge Alsup in his Dkt. 1075), and other sources.

15. I bought my Nevada City, California, property to live in when I retired from my law firm at the end of 2015. (I add California to my address for clarification, because the State of Nevada appropriated this already well know city's name when it became a State and thereby forced this place to add City to its name in vain hopes to avoid confusion.) At that time Sunset magazine was touting Nevada City as one of the best places in the State to retire, confirming my wife's experience from decades of weekend visits in this area, and it was her turn to make that decision where to move from

the Bay Area, and I had no reason to disagree. Blackouts were then (and previously) infrequent and rarely prolonged, establishing a baseline for "normality" before the Debtors' cumulating and wrongful, "run it until it breaks" strategy finally began to break the flawed and noncompliant system in proximately causing the fires that ultimately proximately caused the excessive PSPS, including as described in Judge Alsup's Key Probation Requirements Order and other Related Proceedings "(R)" and "Key PSPS POC Documents" "(P)."

16. Serious fires back then were previously discussed as local events relating to some specific local problem or event. But now, I am informed and believe that Nevada City (and my neighborhood) is being classified by PG&E, various fleeing homeowner insurance companies, and others as another potential "Paradise" fire risk. That stigma is harmful in many ways that the excessive PSPS makes more harmful; ie, such perceived high fire risk is even more harmful to locals like me when it is combined with the misery of excessive PSPS blackouts. That lethal combination adversely affects property values and marketability, the availability and cost of necessary insurance, the viability of home offices, the local business, medical, and professional community on which residents rely, and many other components of the once high quality of life.

17. As such, PG&E began substantial "repair" and "hardening" work in my neighborhood and relevant other parts of Nevada City and Grass Valley in 2019, gradually replacing some (not all) of the poles, wires, and gear that had been long neglected, flawed, and noncompliant with applicable law and regulations addressed in my Response and POC (eg, Public Utilities Code sections 451, 2106, and 8386; Pub. Res. Code sections 4292 and 4293; CPUC General Orders 95 and 165 and ESRB-8), especially as to what Debtors and Reorganized Debtors call vegetation management. I personally witnessed and informally inspected much of that work, especially on the streets around my Nevada City property where PG&E distribution wires, poles and gear were so located and noncompliant.

18. The results of such work have been disappointing and incomplete in comprehensively correcting such noncompliance in many ways beyond all the many other problems reported by Judge Alsup and his Monitor in the Probation Proceeding, such as summarized in Judge Alsup's "**Key Probation Requirements Order**" (See his Figure 6 photo therein, where a local, large tree snapped and trashed the adjacent PG&E system), the other Related Proceeding, and the POC cited "Key PSPS

7
DECLARATION OF G. LARRY ENGEL IN SUPPORT OF RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY PASS-THROUGH CLAIMS)
1126071.2

Case: 19-30088    Doc# 9653-2    Filed: 12/01/20    Entered: 12/01/20 14:21:55    Page 7 of 19

POC Documents," especially "**PG&E's 7/120 Butte Admissions,**" when Judge Alsup required the Utility to admit or deny many allegations in the "**Butte Fire DA Case**," and, more importantly because they also address excessive PSPS issues, the "**PG&E Zogg 11/18/20 Admissions**" in connection with the "**Zogg Fire Case**."

19. For example, when the Debtors' "repair" work started in 2019, my neighborhood had scores of huge (75 foot plus tall) trees on every block of most relevant streets and growing between, against, above, or around the PG&E distribution lines and poles, none of which should have existed there under the applicable laws and regulations addressed above or in my Response, POC, or in Related Proceedings. After Debtors finished their attempt at that local work and moved on to other problem areas, without achieving locally here complete compliance with the applicable laws and regulations, there are now many big stumps, but also a surprising number of such huge trees remaining in noncompliance. Attached as **Exhibit B** hereto are some example photos I recently took to illustrate some noncompliance in the "hardened" new line between the two closest new PG&E poles and gear across from my house.

20. I call that incomplete "repair" work insufficient and disappointing at best and put "repair" in quotes for various reasons. One is that such flawed work scares homeowners' insurance companies. I am one of the few in my area who still have private homeowners insurance, unlike the rest who have been forced by insurer cancellations and non-renewals into the expensive, unsatisfying, and undesirable quasi-co-insurance/State plan of last resort for fire insurance (requiring additional insurance also from others for traditional non-fire risks). Unfortunately, my insurer has again launched inspectors and underwriters who I fear are looking for excuses to escape my risk. They have expressed dissatisfaction with my hard and expensive fire mitigation work to accommodate their extreme requirements, while my insurance broker has given up. Part of that problem I believe is their fear of the dangerous Utility risks that also concerns me and as to which they seem even better informed, suggesting that the more expertise and information one has, the greater the fear of such risks, despite PG&E's Wildfire Mitigation Plan.

21. As illustrated in that local photo addressed by Judge Alsup and in my Exhibit B photos, the reality is that PG&E has allowed huge trees to remain at noncompliant or other risk to the adjacent

8
**DECLARATION OF G. LARRY ENGEL IN SUPPORT OF RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS THROUGH CLAIMS)**
1126071.2

Case: 19-30088    Doc# 9653-2    Filed: 12/01/20    Entered: 12/01/20 14:21:55    Page 9 of 19

system. For example, the so-called "hardened" PG&E wooden poles are taller and thicker than the old ones that they replaced, but they are still small and vulnerable compared to the taller and thicker adjacent trees that are not supposed to be there. Such hardened poles and wires are no more likely to survive a bashing by those bigger adjacent trees than the older poles they replaced. That Exhibit B risk situation next to my property is no different than the others, such as the one farther down the street about which Judge Alsup complained.

22. None of this can possibly be a surprise to PG&E Corp., because the noncompliance is so longstanding, blatant, open, notorious, and reckless or worse. Even if one were not as convinced as I am about PG&E Corp.'s complicity and culpability for POC wrongs by the Wall Street Journal expose that triggered the Related Proceeding by the Securities Class Action plaintiffs and the focus of Judge Alsup in his follow up (Dkt 1075), all as cited in my POC, I do not believe that the clever officers and managers at PG&E Corp. could possibly arrange their "run the system until it breaks" plan without considering, in their neglect and abuse of the system and worse, the risks about all those thousands of miles of wires interacting with all those huge trees and other threats, especially as the flawed and breaking system showed signs that it was nearing the end-of-life for those risks.

23. Stated another way, the Debtors have not been able to get sufficient private insurance for a reason: those insurers know the scarier facts beyond such revelations about which normal customers later became aware. The State enacted the AB 1054 bailout as a last resort to mitigate the utility systems' risks, because they perceived no other timely, credible, and sufficient option. However, I doubt that most had any idea of the realities that would thereafter be exposed in the Probation Proceeding and other Related Proceedings. Knowing what they know now, it is hard for me to imagine that there will be any more such bailouts for the Reorganized Debtors. Why do I focus on all this here and in my Response and POC? The answer is, in part, that, anticipating (correctly, now it appears), the worst from these Debtors and Reorganized Debtors, as revealed by Judge Alsup and in Related Proceedings, as well as (before they settled) the Official Committee of Tort Claimants, I determined that self-defense generation by such a Generator would be the only way to be able to continue to live here in any tolerable or viable way, especially when and if the fires comes here.

24. Stated another way, if and the fire comes here, the entire "hardened" PG&E system in

9
DECLARATION OF G. LARRY ENGEL IN SUPPORT OF RESPONSE TO REORGANIZED DEBTORS'
FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY PASS THROUGH CLAIMS)
1126071.2

Case: 19-30088    Doc# 9653-2    Filed: 12/01/20    Entered: 12/01/20 14:21:55    Page 9 of 19

the fire area will be trashed and blackouts will persist for many months, if not longer there and in adjacent areas. Consider the Paradise and other big fire examples, including as discussed in the Related Proceeding documents from the Butte Fire Case and the Zogg Fire Case addressed by Judge Alsup and in the Utility's related admissions in PG&E's 7/1/20 Butte Admissions and PG&E Zogg 11/18/20 Admissions. The Debtors and Reorganized Debtors were unwilling to do the right things as to undergrounding, as urged at the CPUC by many governmental units in fire country, because such undergrounding to avoid PSPS was too expensive for preserving their goal of high shareholder value and avoiding ratepayer rebellion if their shifted the cost of correcting their wrongs to them.

25. I realized that the following seems inevitable when there is a big fire here (as in Paradise or other similar places), where the circumstances are comparable to those prior fires addressed in this Chapter 11 case and judge Alsup's Probation Proceeding: the only homeowners who survive the next relevant fire and who will have timely electricity restored, will be those who installed self-defense underground natural gas generators (like me) as long term backup. I assume this is one of the reasons why Debtors and Reorganized Debtors have been consistently promoting such generators to gas and electric customers like me, as illustrated in **Exhibit C** hereto.

26. Stated another way, the POC referenced various wrongs, as supplemented in my Response by incorporating subsequent Related Proceedings, especially from findings and admissions in Judge Alsup's Probation Proceeding, are "substantial factors" in proximately causing my POC and Response claim referenced harms creating causes of action. For example, PG&E itself confirms the causation between such Generators and both PSPS and fire related wrongs when it promotes such self-generation as the means to ease the losses, pains, and burdens of PSPS. They, as well as local governments and property owners and businesses, all recognize that there are sufficient safety and other concerns to justify such Generator responses, especially when there are also covid virus, shelter in place rules in effect and likely to continue for some time.

27. Among such safety concerns are about essential safety communications, since most people in fire country are now sharing fire related data directly in real time, such as current information on what evacuation route to take, since that may be the difference between surviving or not and the radio or other media data is neither timely nor sufficient for such planning. Moreover, generators are

10
DECLARATION OF G. LARRY ENGEL IN SUPPORT OF RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS THROUGH CLAIMS)
1126071.2

Case: 19-30088    Doc# 9653-2    Filed: 12/01/20    Entered: 12/01/20 14:21:55    Page 10 of 19

now essential to maintaining whatever is possible of the fair market value of one's home and its timely marketability. If you try to sell quickly, buyers likely will not close until there is an adequate generator in place, which can take months on account of excessive local demands for what is required.

28. The Objection attempts (at 9 line 16) to characterize such PSPS conduct by Debtors and Reorganized Debtors as a reasonable defense to "extreme weather events (eg, strong winds, very low humidity levels, critically dry vegetation…). However, I believe (and what I have witnessed in this local area) is that such contentions are incorrect, and that most PSPS has occurred during what locally has always been **normal** fire seasonal weather (eg, moderate [eg, 25mph or so wind, far less than the extraordinary speeds for which the system was required to endure by Public Utilities Code Section 8386 and CPUC ESRB-8], moderate low humidity, and dry vegetation, much of which vegetation only exists adjacent to the wires because of Debtors' long, willful or reckless neglect and noncompliance with laws and regulations, as cited in the Probation Proceeding record and often admitted by the Utility). While some part of some storms may be above normal, the weather would not justify as many or as prolonged PSPS if the PG&E system were not in such neglected condition contrary to applicable laws and regulations.

29. In other words, using PSPS in response to what historically had been normal weather when there were no blackouts is due to such wrongs by Debtors and Reorganized Debtors, and is, therefore, excessive PSPS for which they should be accountable as described in my POC and Response. As proven by the huge size and density of the trees here in these relevant Nevada City areas (eg, Exhibit B), decades of similar weather did not produce fires here, which I believe confirms what is really happening is that the cumulative neglect and wrongs by Debtors that finally caught up with us all at the "end of life" for the flawed system they ran until it started "breaking bad." **But for the wrongs creating the dangerous system now breaking down from such wrongs and neglect in that "run it until it breaks"/shareholder value strategy, the PSPS burdens and harms would be more tolerable and less excessive.** In other words, there is a difference between "normal" and "excessive" PSPS for the purposes of CPUC Rule 14, ESRB-8, and otherwise.

30. Why do I allege and predict such wrongful conduct and goals to cause my such claims, as the Utility continues to evade and disappoint with excessive PSPS in its noncomplying performance

11
DECLARATION OF G. LARRY ENGEL IN SUPPORT OF RESPONSE TO REORGANIZED DEBTORS'
FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS THROUGH CLAIMS)
1126071.2

Case: 19-30088    Doc# 9653-2    Filed: 12/01/20    Entered: 12/01/20 14:21:55    Page 11 of 19

of its section 451 public trust obligation to serve? One part of that answer is that here locally at least PG&E has done only a partial (what it calls) "repair" and "hardening," as explained above, **but PG&E stopped before completion of compliance with applicable law and regulations at a point where (a) the fire risk may have been lessened (eg, a half dozen huge noncomplying trees along a block of PG&E line is less threat than a dozen), but (b) the vegetation** removal compliance was not so sufficient that the PSPS was reduced to being less excessive.

31. In other words, I see the Utility moderating fire risk, but not sufficiently to the point where the PSPS burden returns to normal (ie, is no longer excessive). See also and compare (1) the photo of such a falling tree trashing the PG&E system **in my neighborhood** inserted (at page 6) of Judge Alsup's "**Key Probation Requirements Order,**" illustrating this interaction of PSPS with the dangers created by Debtors' noncompliance with applicable laws and regulations, with similar photos in Exhibit B hereto, showing more such dangerous huge trees that may cause similar harms to be repeated further down my road. That is not what I believe was required by Judge Alsup's Key Probation Requirements Order, by ESRB-8, and by other laws and regulations; i.e., promptly to bring such an area into full compliance with all legal and regulatory safety requirements, so that only **normal PSPS** is needed, rather than indefinite continuation of **excessive PSPS**.

32. So, why did PG&E only do that incomplete, noncomplying, and defective job and then move on, leaving the excessive PSPS burden in place with such continuing noncompliance? The Debtors' and Reorganized Debtors' correct answer cannot be economic or efficiency benefits, since such Utility is defeating those possibilities by doing such a partial repair, leaving such incomplete area in a still somewhat noncompliant condition, and maybe returning at some indefinite time later to continue such an effort to finish accomplishing the required compliance that should have been done earlier. I cannot imagine a legitimate excuse for such a Utility flawed, stop and start strategy, although I can be concerned by what would be an improper reason also contrary to applicable laws and regulations, as explained below.

33. I do not believe that my POC claims (aka "Protected Claims, including "PSPS Claims" as updated, clarified and supplemented by my Response) are (or could be) disputing, interfering with, or hindering any CPUC regulation, but rather I believe that such claims are in complementary aid of

12
DECLARATION OF G. LARRY ENGEL IN SUPPORT OF RESPONSE TO REORGANIZED DEBTORS'
FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS-NO LIABILITY/PASS THROUGH CLAIMS
1126071.2
Case: 19-30088   Doc# 9653-2   Filed: 12/01/20   Entered: 12/01/20 14:21:55   Page 12
of 19

enforcement or implementation of CPUC regulation, especially as to my self-defense generation by my Generator that enhances the flawed PG&E system and the common goal of continuing service.

34. For example, a fair reading of the applicable *CPUC Resolution ESRB-8* requirements makes this clear, especially with my related corresponding commentary [in brackets] in this paragraph, since such regulation: (i) states a strong presumption that power should remain on for public safety reasons, with the Utility having the burden under ESRB-8 of demonstrating that its blackout decision was necessary to protect public safety [I note that my self-defense Generator accomplishes some of such CPCU regulatory and safety goals, even as and when the Utility itself fails to comply and its system is in noncompliance.]; (ii) the Utility should rely on other measures to the extent available, as an alternative to the blackout (eg, sensitive relay settings, disabling reclosers, etc) [I note that my self-defense Generator accomplishes that CPCU regulatory goal even better than the Utility is doing itself]; (iii) the Utility must reasonably believe that there is an imminent and significant risk that strong winds will topple its power lines onto dry vegetation or will cause major vegetation-related impacts on its facilities during periods of extreme fire hazard [I note that, as discussed, if the Utility did a complete compliance with the vegetation laws and regulations in a work area like mine before moving on to another unsafe area, as distinct from leaving the "hardened" area somewhat safer, but still unfinished, noncompliant, and dangerous, in order to do the same partial work somewhere else, then such PSPS results would not exist to such excess beyond normal. That factor confirms why I call this "**excessive PSPS**," since I believe that flawed and noncompliant Utility repair conduct to mitigate its wrongs creating the system problems is neither necessary or appropriate and requires more PSPS than is necessary or reasonable.]; and (iv) the Utility must consider efforts to mitigate the adverse impacts on the customers and communities in areas where it shuts off power [I note again that, while PG&E should do its own mitigation at its own expense, that mitigation also includes promoting private self-defense generation by its victimized customers, like me. However, that coerced contribution from such victims not only reduces PG&E's regulatory burdens, but it also allows the PG&E wrongdoer to profit and unjustly enrich itself and its parent and shareholders at the expense of such victims, especially since such victims are coerced by PSPS and other PG&E wrongs into funding with self-generation the Utility's alleged compliance with these such CPUC requirements, thereby saving the Utility from itself

paying the cost of compliance and unjustly increasing the value of the dangerous Utility system, at least entitling me to restitution, among other POC claims.]

35. See also by analogy CPUC D.12-04-024 at 30 on which the Utility incorrectly has tried to rely, which also states that SDG&E should "shut off power only as a last resort, and only then when SDG&E is convinced there is a significant risk that the strong Santa Anna winds will topple power lines onto flammable vegetation." When the CPUC prescribes these PSPS actions as a "last resort," I believe that means that the Utility may not violate or evade these CPUC directions for its own selfish benefit by coercing free generation contributions from customers harmed or threatened by excessive PSPS.

36. Specifically, by the Utility's noncompliant actions and omissions included as one foundation of my POC claims, I believe that it is violating the CPUC rule that: "[u]nder no circumstances may the utilities employ de-energization solely as a means of reducing their own liability risk from utility-infrastructure wildfire ignitions…" D. 19-05-042 at 68. If Debtors and Reorganized Debtors so persist, wrongly in their incomplete effort to restore such compliance in one area, without reducing the need for excessive PSPS there, before moving on to work fire risks in other areas, then I believe that several wrongful things may be happening. First, I believe that they are improperly so implementing such a "once over lightly everywhere" strategy in order to reduce (but not solve) their noncompliant exposure to fire liability risk in as many areas as possible as soon as possible, ignoring CPUC's such PSPS mandates. Second, I believe that they are seeking to coerce people either to invest in self-defense generation or to move away from the PSPS burdens also in order to reduce that fire risk liability contrary to such CPUC prohibition. Third, I fear that they may be trying to create a two-tiered system that abuses their public trust monopoly, contrary to their obligation to serve under section 451 and otherwise, in order to be able to maximize the Debtors' and Reorganized Debtors' profits from safer and higher profit urban and suburban areas, while minimizing their exposure to higher risk and cost/lower profit areas, so as to reconstruct their bifurcated monopoly for greater "shareholder value" at the expense of their wronged customers in rural or other lower profit/higher cost/ higher fire risk areas like mine.

37. I am concerned that the Debtors and Reorganized Debtors may be so attempting to

14
DECLARATION OF G. LARRY ENGEL IN SUPPORT OF RESPONSE TO REORGANIZED DEBTORS'
FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY PASS THROUGH CLAIMS)
Case: 19-30088    Doc# 9653-2    Filed: 12/01/20    Entered: 12/01/20 14:21:55    Page 14 of 19
1126071.2

create an objectionable, two tiered electric system in its fire country territory, where: (1) those who can afford to acquire their own generation for self-defense (and, as a foreseen side-effect, the Debtors' and Reorganized Debtors' unjust enrichment by enhancing their system and compliance at their victims' expense), vs (2) those customer-victims who cannot afford such self-defense generation and either must suffer intolerable, chronic PSPS conditions or else leave, thereby involuntarily aiding any wrongful, monopoly cherry-picking goals that Debtors and Reorganized Debtors may have.

38. What I am informed and believe happened in the Utility's abandonment of its long-neglected Caribou-Palermo Line, after part of it caused the Paradise fire, I am concerned may be expanded more generally throughout fire country as a wrongful business strategy, if and when Reorganized Debtors think that they can get away with so cutting service on such risky, low profit lines that they consider too expensive to repair and maintain because of their prior and continuing wrongdoing. If the reorganized Debtors can get away with that conduct near Paradise, where do they stop that self-dealing expense cutting by abandonments (or too much PSPS to tolerate)?

39. Such "excessive" PSPS especially harms those who cannot afford self-defense generators, but even for those buying such generators (like me) are harmed. As anyone knows who has had experience with tortious harm to a rural cabin well, there is a compelling analogy to this PSPS situation. When the tort harm to your well deprives you of the water that you need for habitation, until you obtain just recovery from the wrongdoer, your choices are only (a) to truck in water to store in a tank for use (ie, the analogy to self-defense electric generation), or else (b) you are coerced into leaving. Here, the wrongdoer Debtors and Reorganized Debtors are in effect giving such an unjust choice to their excessive PSPS victims.

40. While I am not asserting claims on behalf of others (who I hope find justice for themselves), I am adversely affected in many ways by having to live in an area that becomes depopulated by Debtors' and Reorganized Debtors' such wrongs. The quality of life, as well as basic services, are better in Nevada County than some others with lesser populations, financial capabilities, and, consequently, fewer hospital, doctors, police, and other public safety personnel. While some may consider such things too remote for damages claims, they all effect home values and other economic matters for which damages ought to be recoverable. I do not want good people driven out of Nevada

County by excessive PSPS abuses.

41. The more such excessive PSPS shifts such customers like me to self-defense generation or else drives them away, then the more safe and profitable Reorganized Debtors may imagine themselves to be, assuming, however, that they can again evade their contrary legal and regulatory obligations to serve the entire territory in accordance with section 451 and other applicable law. This kind of wrongful ambition is not unprecedented for aggressive "players" who in other contexts keep attempting to "re-define" in this kind of manner various controlled monopolies for what they call higher "shareholder value," arguing (wrongly) that monopolies (eg, the post-office, railroads, etc.) should be allowed to cherry-pick their high profit customers in safe and dense areas, while abandoning those living in low profit/high cost/inconvenient or rural places, since that is allegedly imagined to be "necessary" for the financial creditworthiness and interest borrowing rates of such monopoly enterprise. Allowing recovery on my POC claims is one small way to reduce that temptation.

42. Whether or not some such predatory intent or reckless indifference by Debtors or Reorganized Debtors is in play, such objectionable conduct will cause customer-victims like me to continue to suffer "excessive" PSPS and involuntary/self-defense servitude at our own cost for enhancing compliance, safety, and the PG&E grid (unjustly) for the benefit and unjust enrichment of Debtors and Reorganized Debtors, as well as any cherry-picking monopoly goals that they may have for maximizing service in high profit/lower risk areas and minimizing service in lower profit/higher risk areas (eg, like the example of the Caribou-Palmero transmission line near Paradise abandoned by the Utility after that fire). By my such mitigation of my damages with my self-defense generation at my expense, the Utility (along with PG&E Corp.) also receives unjust enrichment windfall profit and value from its wrongs, as when such PSPS victim customers (at our own expense) thereby not only enhance the Debtors' and Reorganized Debtors' flawed and dangerous system at such victims' cost, but they also thereby improve from victims' self-generation the Utility's otherwise more unsatisfactory level of compliance with applicable law and regulations and probation orders.

43. If PG&E Corp tries to dodge culpability for such POC claimed noncompliance, recklessness, and gross negligence or worse during the long period before and after the Chapter 11 Case, during which it unjustly profits and enriches itself with dividends from money that should have

16
DECLARATION OF G. LARRY ENGEL IN SUPPORT OF RESPONSE TO REORGANIZED DEBTORS'
FORTY SECOND OMNIBUS OBJECTION TO CLAIMS – NO LIABILITY/PASS THROUGH CLAIMS
1126071.2

been used for safety work and proper maintenance of the system, that parent needs to explain how it could not have been aware of so many Utility wrongs and things revealed by Judge Alsup in his Probation Proceeding or in the Butte Fire Case or Zogg Fire Case, such as many thousands of miles of huge trees growing through their wires over decades in order to become the threat so massive that it requires at least a decade to fix it, while all of that time there is a continuing, open and notorious system wide violations of Pub. Res. Code section 4293 and other laws and regulations, as confirmed by Judge Alsup's Key Probation Requirements Order, PG&E's 7/1/20 Butte Admissions, the **PG&E Zogg 11/18/20 Admissions, and related Monitor Reports in that Probation Proceeding.** See the evidence and facts alleged in the Securities Plaintiffs' adversary amended complaint filed in this Case and related 7/10/19 Wall Street Journal article, as cited in the POC as "**Key PSPS POC Documents**," addressed by Judge Alsup at Dkt. 1075. PG&E Corp.'s culpability for PSPS wrongs addressed in the POC now may be in a different PSPS context from such securities claims, but the key facts equally apply for all such purposes; ie, the wrongful acts and omissions that PG&E Corp. knew or should have known, while accepting the benefits and unjust enrichment from the Utility and worse, are as culpable in the context of Creditor's POC as they are in the context of such alleged securities frauds. Meanwhile, excessive PSPS adds to the safety and insurance availability burdens and problems for such PG&E customers beyond what outages would occur if the PG&E system were in satisfactory condition and in compliance with applicable laws and regulations.

**My POC Should Survive The Class Action PSPS Decision And Related Considerations:**

44. As explained in my Response, there is only a partial overlap between (a) my much broader, more numerous, and earlier filed POC claims, and (b) the PSPS Class Action Plaintiffs' later filed PSPS Class Action complaint, as explained in such Plaintiffs' PSPS Class Appeal briefs responding (in ways with which I respectfully agree) to this Court's Class Action PSPS Decision. These Plaintiff documents and evidence are part of the Related Proceedings referenced herein, but they do not limit, affect, or apply to many of my POC claims.

45. I have also asserted in my POC additional arguments and claims not asserted by that PSPS Class Action Plaintiff or not yet considered by this Court or addressed in that Class Action PSPS Decision. Stated another way, I intend to distinguish my POC and many of its claims from those fewer,

narrower, and distinguishable of such PSPS Class Action Plaintiffs' claims. For example, my POC focuses on my broader and different claims explained above as to my coerced, self-defense generation by excessive PSPS and other wrongs. Also, if that PSPS Class Appeal is successful, I wish to be able to benefit from that result, since I also have every claim asserted in the Class Action, while, in any event, I continue to press my additional POC claims that must survive any adverse such PSPS Class Action decision on appeal.

**Concluding Comments:**

46. I believe that my POC correctly states (in its terminology) many valid "causes of action" (eg, called "Protected Claims" or "PSPS Claims" therein) for entitling me to appropriate remedies (eg, called "PSPS Remedies" in the POC) supported by what were therein identified as "Key PSPS POC Documents."

47. Since that POC filing, more support, evidence, damages, and causation for my such POC claims have been filed or revealed in what my Response calls "Related Proceedings," including Exhibit B thereto. Among the Response defined documentation in those updating Related Proceedings, expanding and supplementing to what I called "Key PSPS POC Documents" (P), are, for example: (i) Judge Alsup's "Key Probation Requirements Order," summarizing and responding to many wrongs by the Utility at that time, followed thereafter by "PG&E's 7/1/20 Butte Admissions" (R) and "PG&E Zogg 11/1820 Admissions" (R) based on documents from the "Butte Fire DA Case" (R) and the "Zogg Fire Case" (R); and (ii) the entire Plaintiffs' record on the "PSPS Class Appeal" (R) of the Court's "Class Action PSPS Decision" (R), which includes many common documentation useful for my similar claims, although my POC claims are broader and more numerous.

Pursuant to 28 U.S.C. section 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief. Executed this 1st day of December, 2020, in Nevada City, California.

DATED: November 30, 2020.

                                                      */s/ G. Larry Engel*
                                                      G. LARRY ENGEL

Table of Exhibits
- A. Proof of Claim (POC)
- B. Photos Adjacent to Creditor's Home Showing Noncomplying Trees After PG&E Incompletely Finished Its Repair And Moved On
- C. PG&E Example of Promoting Generators

19
**DECLARATION OF G. LARRY ENGEL IN SUPPORT OF RESPONSE TO REORGANIZED DEBTORS' FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY/PASS THROUGH CLAIMS)**
1126071.2

Case: 19-30088    Doc# 9653-2    Filed: 12/01/20    Entered: 12/01/20 14:21:55    Page 19 of 19