Ned M. Gelhaar (CA SBN 163185)
ENENSTEIN PHAM & GLASS LLP
12121 Wilshire Boulevard, Suite 600
Los Angeles, California 90025
Tel: (310) 899-2070
Fax: (310) 496-1930
ngelhaar@enensteinlaw.com

Attorneys for Claimant
Gordon Moore

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: <br><br> PG&E CORPORATION <br><br> -and- <br><br> PACIFIC GAS & ELECTRIC COMPANY, <br><br> Debtors. | Bankruptcy Case No. 19-30088 (DM) <br><br> Chapter 11 <br><br> (Lead Case) (Jointly Administered) <br><br> **GORDON MOORE'S RESPONSE TO REORGANIZED DEBTORS' FORTY-FOURTH OMNIBUS OBJECTION** <br><br> [RE: CLAIM NO. 80903] <br><br> DATE: December 15, 2020 <br> TIME: 10:00 A.M. <br> PLACE: U.S. Bankruptcy Court <br> Courtroom 17, 16th Floor <br> San Francisco, CA 94102 <br> JUDGE: Hon. Dennis Montali |

///
///
///
///

1

Claimant Gordon Moore ("Moore") opposes Reorganized Debtors' ("PG&E") objection to Proof of Claim No, 80903 filed in the amount of $31,755.08 ("Claim"), and respectfully submits this brief in support of his Opposition.

## I. INTRODUCTION

On June 21, 2018, there was a massive power surge ("Surge") at Moore's property at 100 and 102 Canada Road in Redwood City ("Property"). As a PG&E technician essentially admitted at the time (and as is patently obvious), the Surge was caused by PG&E's error. The Surge burnt out appliances and outlets throughout both the main house and the caretaker cottage on the Property. As was meticulously documented in the Claim, Moore was forced to spend over $30,000.00 in out of pocket repair and replacement costs—apart from Moore's lost use of the Property and the substantial time his own staff spent, at Moore's expense, mitigating the damage.

Despite PG&E's clear liability and the thorough documentation of damages Moore submitted with the Claim, PGE now objects that it has "no liability." PGE's liability and Moore's damages could hardly be clearer. PGE's objection should be overruled.

## II. FACTS

At approximately 1:00 P.M. on June 21, 2018, all power to the Property was lost. The Property's emergency backup generator started and provided needed power. Moore's Property Manager Scott Grometer called the PG&E outage line to report the outage, and drove to the Property entrance located at the intersection of Edgewood and Canada Roads where he found a PG&E vehicle. He spoke with the PG&E technician at the site who stated that they were making a repair nearby and that the power should be restored soon. *See* Declaration of Scott Grometer in Support of Opposition ("Grometer Decl."), ¶4.

Over four hours later, the Property's backup generator shut down, and the indicator lights on the transfer switches verified that utility power had been restored. But when Grometer went in the caretaker's cottage, he saw smoke and heard loud buzzing and popping noises. He rushed to the main power distribution panels and shut off the main service breakers for all of the buildings on the

Property. He then went to the main estate residence and found the house was also filled with smoke and had a strong burning smell. *Id.*, ¶5.

After confirming that there were no active fires in the main buildings, Grometer jumped in his truck and drove back to the Property entrance where the PG&E truck was still parked. He told the technician that the power had been restored, but that it was apparently accompanied by a massive and continued surge. The technician told Grometer that he "should not have any power yet." Grometer assured him that he did, but that there was considerable damage as a result of the Surge. Grometer asked him what happened, and the technician responded that they must have re-energized the line they were working on without knowing that there was another problem downstream. *Id.*, ¶6.

The next morning, Grometer brought in his own electrician, CS Electric, and he and the electrician spent the entire day testing each building and cataloging the damage (to the extent apparent at the time). They saw that virtually all of the surge devices at the Property were destroyed (some with visible burn marks). Almost all GFI outlet devices were no longer functional, and many would buzz and/or smoke when re-energized. All of the GFI breakers in both the main and sub panels were damaged and smelled burnt. The ovens in both the main house and the cottage no longer worked. The cottage refrigerator worked for a brief time, but made loud noises and later failed. One of three furnaces in the main house would not work. Two of three air conditioning condensers would not start. The wine cellar cooler in the main house would not work. The basement propane exhaust fan was dead. Most equipment with electronic control boards had either blown fuses or actual burnt or damaged electronic components. PG&E told Grometer they would send someone out to inspect the property and damage, but never did. *See Id.*, ¶¶ 7-8.

It took several days to make the cottage safe enough to restore power. Grometer brought in authorized technicians from Otto's Appliance, El Camino Refrigeration, Izmirian Roofing and Sheetmetal (HVAC systems specialists), and TelePacific Communications to diagnose the failed/failing appliances and equipment. It took several weeks to safely restore circuits and devices in the main house. It took many months to finally restore the main house to livability with fully-functional appliances. *Id.*, ¶9.

3

As of the date of the Claim, Moore had spent over $30,000.00 to outside contractors and for repairs to existing systems and equipment, and the purchase of replacement appliances and parts as a direct result of the Surge. In addition to the purchase and normal installation of appliances, Moore had to incur additional expenses to modify existing cabinetry and openings to accommodate the new appliances. Every effort was made to source appliances that fit the existing slots, but appliance sizes had changed since the time the originals were installed which necessitated the modifications. *Id.*, ¶10.

Moore's damages caused by the Surge are thoroughly and meticulously identified, described, and documented in the accompanying Grometer Declaration (as they were in the Claim). *Id.*, ¶¶ 12-14. Moore's Claim did *not* include the vast number of hours Grometer and his staff spent in-house for testing, scheduling, supervising, research/shopping for replacement equipment, or accounting, all of which was paid for by Moore. It also did not account for Moore and his family's loss of the use of their residence, which lasted for nearly half of 2018. *Id.*, ¶11. By any objective measure, the Claim substantially *understates* Moore's damages directly caused by the Surge.

## III. ARGUMENT

PG&E is clearly liable for Moore's damages identified in the Claim (and could be liable for much more) under multiple legal theories, including breach of contract, negligence, and trespass. *See* Civil Code § 3300 ("For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."); Civil Code § 3333 ("For the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not"); *Kornoff v. Kingsburg Cotton Oil Co.*, 45 Cal.2d 265 (1955) ("Once a cause of action for trespass or nuisance is established, an occupant of land may recover damages for annoyance and discomfort that would naturally ensue therefrom.").

The only conceivable grounds PG&E might have to object to the Claim is the lack of a response to a single email asking for the date the damaged appliances were put in use. As detailed in the Grometer Declaration, this email did not come from Prime Clerk, with whom Grometer filed the

4

Moore's Response to
44th Omnibus Objection

Case: 19-30088    Doc# 9663    Filed: 12/01/20    Entered: 12/01/20 16:19:17    Page 4 of 5

Claim, and Grometer did not receive a follow-up communication in the US Mail as he did with all other communications he received regarding the Claim. In the Official Form 410 Proof of Claim filed in this proceeding, Grometer stated in Section 3 that notices should be sent to Gordon Moore, 100 Canada Road, Redwood City CA 94062.4204. *See* Grometer Decl., ¶ 15, Exh. "U". For these reasons, he never responded to the email from Ms. Felix. Importantly, as detailed in the original Claim and the Grometer Declaration, only a portion of the damages were incurred to replace appliances. Most of the damages were, in fact, incurred to repair existing equipment and systems, and therefore represent damages for which the PG&E has offered no colorable basis for objecting.

## IV. CONCLUSION

For the above stated reasons, PG&E's objection to Claim No. 80903 should be overruled.

DATED: December 1, 2020　　　　　　　　**ENENSTEIN PHAM & GLASS**

By: _____
　　　　NED M. GELHAAR