BROWN RUDNICK LLP
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Eric R. Goodman (*pro hac vice*)
(EGoodman@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

BROWN RUDNICK LLP
Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive
Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514

*Counsel to the Fire Victim Trustee*

DIEMER & WEI, LLP
Kathryn S. Diemer (#133977)
55 S. Market Street, Suite 1420
San Jose, CA 95113
Telephone: 408-971-6270
Facsimile: 408-971-6271
Email: kdiemer@diemerwei.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Edwin J. Harron (*pro hac vice* pending)
James P. Hughes, Jr. (*pro hac vice* pending)
Rodney Square, 1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: eharron@ycst.com
jhughes@ycst.com

*Counsel to the Subrogation Wildfire Trust*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION**<br><br>   -and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>       **Debtors.** | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER ON THE PRODUCTION OF CERTAIN CLAIMS INFORMATION**<br><br>**[NO HEARING REQUESTED]** |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects Both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM) | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

The Subrogation Wildfire Trust (the "**Subrogation Trust**") and the PG&E Fire Victim Trust (the "**FV Trust**") (each of the foregoing referred to herein as a "**Party**" or, collectively, as the "**Parties**") established pursuant to the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* (as may be further modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Plan**"), confirmed by an order entered on June 20, 2020 [Docket No. 8053] (the "**Confirmation Order**") by the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") hereby reach the following Stipulated Confidentiality Agreement and Protective Order on the Production of Certain Claims Information (the "**Stipulated Agreement**"), which shall become effective as of the date it is entered (the "**Effective Date**") by the Bankruptcy Court in the above-captioned bankruptcy cases (the "**Bankruptcy Cases**").[1]

## STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER ON THE PRODUCTION OF CERTAIN CLAIMS INFORMATION

WHEREAS, pursuant to paragraph 18(a) of the Confirmation Order, section 6.7(a) of the Plan and the PG&E Fire Victim Trust Agreement (the "**FV Trust Agreement**"), the Fire Victim Trust shall, among other tasks described in the Plan or the FVT Trust Agreement, "administer, process, settle, resolve, liquidate, satisfy, and pay all Fire Victim Claims";

WHEREAS, pursuant to paragraph 18(i) of the Confirmation Order, section 6.7(a) of the Plan, section 2.6 of the FV Trust Agreement and sections I and XII.A of the Fire Victim Claims Resolution Procedures (the "**FV CRP**"), the trustee of the Fire Victim Trust (the "**FV Trustee**") asserts that he must consider "Available Insurance Recoveries" as such term is defined in Section 2.6(a) of the FV Trust Agreement;

---
[1] Capitalized terms used but not specifically defined herein shall have the meanings set forth in the Plan.

2

WHEREAS, the FV Trustee asserts that he must obtain information regarding "Available Insurance Recoveries" in order to satisfy his obligations under the Confirmation Order, the Plan and the FV Agreement to administer, process, settle, resolve, liquidate, satisfy, and pay all Fire Victim Claims;

WHEREAS, section 2.1(a) of the FV Trust Agreement provides the FV Trustee with "the power to take any and all actions that in the judgment of the [FV] Trustee are necessary or proper to fulfill the purposes of the [FV] Trust, including, without limitation, each power expressly granted in . . . Section 2.1 [of the FV Trust Agreement], and power reasonably incidental thereto and any trust power now or hereafter permitted under the laws of the State of Delaware";

WHEREAS, pursuant to paragraph 17(a) of the Confirmation Order, section 6.4(a) of the Plan and the Subrogation Claims Declaration of Trust ("**Subrogation Trust Agreement**"), the Subrogation Trust shall, among other tasks described in the Plan or the Subrogation Trust Agreement, "administer, process, settle, resolve, liquidate, satisfy, and pay all Subrogation Wildfire Claims";

WHEREAS, section 2.3 of the Subrogation Trust Agreement provides the Trustee (the "**Subrogation Trustee**") with all powers necessary to implement the provisions of the Subrogation Trust Agreement and "the Plan relating to the Subrogation Trust, in accordance with the Plan, Confirmation Order, . . . [Subrogation Trust Agreement], and applicable law, including the power to execute any agreement or other document consistent with the terms thereof";

WHEREAS, pursuant to section 2.9 of the Subrogation Trust Agreement, the Subrogation Trustee is required to "hold strictly confidential and not use for personal gain or for any purpose other than carrying out the duties of the [Subrogation] Trustee any non-public information of or pertaining to any Subrogation Trust Beneficiary or their insureds to which any of the Aggregate Subrogation Recovery relates or of which the [Subrogation] Trustee has become aware in the [Subrogation] Trustee's capacity as [Subrogation] Trustee, including, but not limited to, the contents of the Allocation Agreement, except as otherwise required by law. . . .";

WHEREAS, the Subrogation Trustee is in possession of non-public information relating to Subrogation Wildfire Claims provided to it by Subrogation Trust Beneficiaries;

WHEREAS, prior to the effective date of the Subrogation Trust, certain information relating to insurance recoveries with respect to Fire Victim Claims was provided to the then-Proposed Trustee for the FV Trust (who is now the FV Trustee) or to BrownGreer PLC ("**BrownGreer**") as his designee, with such disclosures subject to a protective order filed with and so-ordered by the Bankruptcy Court (Docket Nos. 6597 and 6622) that referenced certain case management orders issued by the Superior Court of the State of California (including Docket No. 62814473 in *In re California North Bay Fire Cases*, JCCP No. 4955) (the "**Protective Orders**");

WHEREAS, the Subrogation Trustee, in consultation with the Subrogation Trust Advisory Board for the Subrogation Trust, has determined that it is appropriate to provide the information identified in the attached **Exhibit A** to the FV Trust in accordance with the Subrogation Trust Agreement, the FV Trust Agreement, the Plan, and subject to similar safeguards as set forth in the Protective Orders to protect the confidentiality of information relating to Fire Victim Claims and the Subrogation Trust Beneficiaries and their insureds (the "**Claims Information**") to the fullest extent required respectively by the Subrogation Trust and the FV Trust, and subject to providing the Subrogation Trust Beneficiaries an opportunity to raise objections to disclosure of their respective Claims Information;

WHEREAS, the Parties anticipate that the disclosure of the Claims Information will follow a similar structure utilized by the FV Trust during the bankruptcy case; and

WHEREAS, the Parties agree to protect and preserve the confidentiality of the Claims Information disclosed pursuant to this Stipulated Agreement, and that such Claims Information is being provided strictly for the sole purpose of settling, resolving, liquidating, satisfying, or paying individual Fire Victim Claims in accordance with the Confirmation Order, the Plan and the FV Trust Agreement.

4

NOW, THEREFORE, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1. The Parties agree that the use and disclosure of the Claims Information by the FV Trust shall be strictly limited to the sole purpose of settling, resolving, liquidating, satisfying, or paying individual Fire Victim Claims in accordance with the Confirmation Order, the Plan and the FV Trust Agreement. The FV Trust shall not use or disclose, and shall not permit its representatives, officers, directors, employees, agents, consultants and counsel to use or disclose, the Claims Information for any other purpose, including for the purpose of asserting any claim, litigation, or dispute against the Subrogation Trust; *provided*, *however*, that the FV Trustee and at his or her direction, his or her employees, consultants, counsel and agents, may use or disclose Claims Information in the Bankruptcy Court or any court of competent jurisdiction in connection with the enforcement of this Stipulated Agreement, provided that the FV Trustee initially moves to seal the information with all parties' rights to subsequently move to unseal the Claims Information reserved.

2. The Parties agree that the Subrogation Trust's disclosure of the Claims Information in accordance with the provisions of this Stipulated Agreement is conditioned on the Court entering an Order that approves the Stipulated Agreement and determining there is a reasonable and compelling need for such use and disclosure that outweighs any privacy interest the Fire Victims may have in the Claims Information.

3. (a) For each Fire Victim for whom Claims Information is sought and for which a unique tracker number has been assigned based on a match to a related Subrogation Wildfire Claim(s), the FV Trust will provide the unique tracker number[2] to the Subrogation Trust and then, subject to the objection process set forth herein, the Subrogation Trust will identify and provide to the

---

[2] The term "unique tracking number," as used herein, generally refers to the tracking number assigned to a Fire Victim by Berger Kahn ALC.

5

FV Trust the Claims Information set forth in Exhibit A for the specified Fire Victims. For all unmatched Fire Victims, the Subrogation Trust will provide BrownGreer, as designee of the FV Trust, with access to the following data so that BrownGreer can attempt to match the Fire Victims to an applicable Subrogation Wildfire Claim: name of insured, address of property, policy number, claim number, and type of policy. If BrownGreer asserts a match of a Fire Victim to a Subrogation Wildfire Claim, then BrownGreer will provide the Subrogation Trust and Berger Kahn ALC with a group ID for the Fire Victim and such other information as the Subrogation Trust may request to verify the match. If the Subrogation Trust confirms the match by itself or through the assignment of a unique tracking number by Berger Kahn ALC, then it will, subject to the objection process set forth herein, provide to the FV Trust the available Claims Information set forth in Exhibit A for the specified Fire Victims.

(b) All information provided by the Subrogation Trust to BrownGreer pursuant to the foregoing paragraph 3(a) shall be restricted to a "BrownGreer Eyes Only" basis. BrownGreer shall safeguard the information in accordance with paragraph 7 of this Stipulated Agreement and maintain the information in strict confidence. BrownGreer may use the information provided by the Subrogation Trust solely for the purpose of matching Fire Victims to Subrogation Wildfire Claims. Prior to the Subrogation Trust providing any information to BrownGreer, the FV Trust shall provide to the Subrogation Trust an acknowledgement signed by BrownGreer in accordance with paragraph 10 of this Agreement.

4. The Subrogation Trust shall provide notice to a Subrogation Trust Beneficiary upon receiving a request from the FV Trust for Claims Information relating to that Subrogation Trust Beneficiary. The Subrogation Trust Beneficiary will have fourteen (14) business days to notify the Subrogation Trustee and the FV Trustee of any objection to the Subrogation Trust's disclosure of the beneficiary's Claims Information to the FV Trust in accordance with this Stipulated Agreement. In the absence of an objection by a Subrogation Trust Beneficiary to the request for disclosure, the

Subrogation Trust shall proceed to disclose the beneficiary's Claims Information responsive to the request to the FV Trust without providing further notice to the beneficiary. If the Subrogation Trust Beneficiary notifies the trustees of an objection to the request for disclosure, the FV Trust will negotiate in good faith with the beneficiary to reach a mutually acceptable resolution. If the FV Trust and the objecting Subrogation Trust Beneficiary are unable to reach a mutually acceptable resolution within five (5) business days of the objection notice, the Subrogation Trust Beneficiary must file an objection in the bankruptcy case within three (3) business days. The Subrogation Trust Beneficiary will be responsible for pursuing its objection and bear its own costs and expenses; the Subrogation Trust shall not be involved in the objection other than as a nominal party. If the Subrogation Trust Beneficiary fails to file an objection in the bankruptcy case within the applicable time period, the Subrogation Trust shall proceed to disclose the beneficiary's Claims Information responsive to the request to the FV Trust without providing further notice to the beneficiary.

5. The FV Trust will treat as strictly confidential any and all Claims Information received from the Subrogation Trust or any agent thereof, regardless of the form in which such information is provided and whether such information has been furnished before, on or after the date hereof.

6. For purposes of this Stipulated Agreement, "Claims Information" shall include any and all information included in or derived from the Claims Information provided or made available to the FV Trust by the Subrogation Trust or a Subrogation Trust Representative,[3] including without limitation, claim or claimant-specific information such as name, property information and the amount of the claim paid or submitted.

7. The FV Trust shall exercise reasonable and appropriate care with regard to the storage and custody of the Claims Information and employ reasonable administrative, physical and

---

[3] "**Subrogation Trust Representative**" is defined for the purposes of this Stipulated Agreement to mean any trustee, officer, consultant, agent, attorney, and/or any other individual or entity duly authorized to act on behalf of the Subrogation Trust.

7

technical controls to ensure that the confidential nature of the Claims Information is maintained and to protect the Claims Information from any prohibited or unauthorized disclosure, access, acquisition, use, misappropriation, or misuse. Such controls shall be no less than the standards as applied to the FV Trust's own confidential and/or proprietary information and data. The Parties shall use methods of transmitting Claims Information that are reasonably intended to safeguard the confidentiality of the Claims Information, such as utilizing a secure portal or encrypted email. Nothing in this Stipulated Agreement diminishes or alters the rights and duties of the Parties under any other agreements, stipulations, court orders, rules, laws or other obligations with respect to safeguarding the confidentiality of the Claims Information.

8. Subject to the conditions provided for herein including in Paragraph 10, the FV Trustee may disclose Claims Information to its officers, directors, employees, agents, representatives, professionals, and/or counsel who require the Claims Information solely for the purpose set forth in Paragraph 1 of this Stipulated Agreement.

9. The FV Trust may disclose to an individual plaintiff who is a holder of a Fire Victim Claim and/or its counsel such Claims Information as relates to the respective individual plaintiff. A Fire Victim Claim holder and/or its counsel shall only be able to access Claims Information related to its own claim and shall not be able to access the Claims Information related to the claim of any other Fire Victim Claim holder.

10. The FV Trust may disclose Claims Information only to the FV Trustee and to such other person(s) or entity(ies) as the FV Trust determines in good faith must receive the Claims Information (the "**FV Trust Designees**"), subject to the additional exception in paragraph 1 herein in respect of the enforcement of this Stipulated Agreement, strictly for the sole purpose of the FV Trust administering, processing, settling, resolving, liquidating, satisfying, or paying individual Fire Victim Claims in accordance with the FV Trust Agreement, and provided that the FV Trust has informed such other person or entity of this Stipulated Agreement and, prior to disclosure of Claims

8

Information, provides to the Subrogation Trust a copy of the Representative Receiving Party's Confidentiality Acknowledgement and Agreement set forth in the attached **Exhibit B** signed by that person or entity. For the avoidance of doubt, the Official Committee of Tort Claimants in these bankruptcy cases and the Fire Victim Trust Oversight Committee shall not be provided with any access to the Claims Information.

11. The Subrogation Trust and Subrogation Trustee make no representations or warranties with respect to the accuracy or completeness of any Claims Information provided pursuant to this Stipulated Agreement.

12. The FV Trust acknowledges and understands that it will receive Claims Information from the Subrogation Trustee that was reported to the Subrogation Trust for purposes related to Subrogation Wildfire Claims and that the Claims Information was not created for the purpose for which it will be used by the FV Trust. Accordingly, there may be inaccuracies or inconsistencies in the data, including how data is reported, collected or confirmed among different Subrogation Trust Beneficiaries. To the extent the FV Trust and FV Trustee choose to rely on the Claims Information, they acknowledge that the Subrogation Trust and Subrogation Trustee are not responsible for that decision.

13. Should, by any willful or reckless act by the FV Trustee, his representatives, or the FV Trust Designees, any Claims Information be shared with any third party other than as permitted in this Stipulated Agreement, the FV Trust and the FV Trustee agree to hold harmless the Subrogation Trust and the Subrogation Trustee and its officers, affiliates, employees, representatives, and authorized agents.

14. Nothing in this Stipulated Agreement diminishes, alters, waives, prejudices, or impacts the FV Trustee's rights to seek information directly from any third party, including without limitation any Subrogation Trust Beneficiary, or to use any information obtained from any third party, including any Subrogation Trust Beneficiary. For the avoidance of doubt, the FV Trust shall not have

9

any indemnification obligations herein related to the use of information provided by a Subrogation Trust Beneficiary or any other third party.

15. In the event that the FV Trust learns that there has been or is a threatened unauthorized disclosure, access, acquisition, use, or misappropriation of the Claims Information, the FV Trust shall notify the Subrogation Trust within twenty-four hours of discovering the incident or threatened incident and reasonably cooperate with the Subrogation Trust in investigating and addressing any response required for such incident.

16. If the FV Trust and/or any of its representatives receives a subpoena or other validly issued administrative or judicial process demanding any Claims Information, the FV Trust shall (a) take all reasonable and lawful steps to preserve the confidentiality of the Claims Information, including requesting that the Claims Information not be disclosed to non-parties or the public; (b) give the Subrogation Trust immediate written notice of such request or requirement so that it may seek, at its sole cost and expense, an appropriate protective order or other remedy; (c) reasonably cooperate to obtain such protective order; and (d) to the extent not in violation of law, not furnish any Claims Information until the Subrogation Trust has had the opportunity to seek a protective order or other remedy. In the event that such protective order or other remedy is not obtained, the FV Trust (or such other persons to whom such request is directed) will furnish only that portion of the Claims Information which, on the advice of the FV Trust's counsel, is legally required to be disclosed and use its reasonable best efforts to obtain assurances that confidential treatment will be accorded such information.

17. Any modification, waiver, or amendment of any provision of this Stipulated Agreement must be in writing and signed by the Parties hereto, and no waiver of any term or breach of this Stipulated Agreement shall be deemed a waiver of such term for the future or any subsequent or other breach hereof. Any failure or delay by any Party to exercise any right under this Stipulated Agreement shall not constitute any waiver thereof; or preclude the future exercise of the same under

this Stipulated Agreement or otherwise. This Stipulated Agreement, and the terms hereof, shall be binding upon each of the Parties hereto, and each of their respective successors and assigns.

18. The Parties agree that all Claims Information made available by the Subrogation Trust under this Stipulated Agreement (including information derived from the Claims Information) must be returned to the Subrogation Trust or destroyed within 90 days of a certification by the FV Trustee of the completion of the FV Trustee's administration activities with respect to the FV Trust. Such destruction shall be done in a secure manner such that the Claims Information has been rendered unreadable, unusable, and inaccessible.

19. The Parties agree that irreparable damage would occur and money damages would not be a sufficient remedy for any breach of this Stipulated Agreement and that in addition to all other remedies it may be entitled to, each Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach or threatened breach.

20. If any provision of this Stipulated Agreement, or the application thereof to any person, entity, place or circumstance, shall be held by a court of competent jurisdiction to be invalid, unenforceable or void, the remainder of this Stipulated Agreement and such provision as applied to other persons, entities, places or circumstances shall remain in full force and effect.

21. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Stipulated Agreement, including any objections filed by the Subrogation Trust Beneficiaries.

22. Notices hereunder shall be sent for overnight mail, email, or certified mail, return receipt requested, addressed to:

    (a)    <u>If to the Subrogation Trust</u>:

    Subrogation Wildfire Trust
    Attn: Terrence S. Brody
    Ankura Consulting Group, LLC
    485 Lexington Ave., 10th Floor

11

New York, NY 10017
(212) 818 1555
Email: Terrence.Brody@ankura.com

With a copy to:

Edwin J. Harron, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801
(302) 571 6703
Email: eharron@ycst.com

(b)   If to Fire Victim Trust:

Hon. John K. Trotter (Ret.), Trustee
Cathy Yanni, Administrator
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Email: jtrotter@fvtadmin.com
Email: cyanni@fvtadmin.com

With a copy to:

David J. Molton, Esq
Eric R. Goodman, Esq.
Brown Rudnick LLP
Seven Times Square
New York, NY 10036
(212) 209 4822
Email: dmolton@brownrudnick.com
Email: egoodman@brownrudnick.com

**SO STIPULATED AND AGREED:**

**SUBROGATION WILDFIRE TRUST**

By:   */s/ Terrence S. Brody*               Dated: December 1, 2020
        Terrence S. Brody on behalf of Ankura
        Consulting Group, LLC, as Trustee


**WILDFIRE VICTIM TRUST**

By:   */s/ Hon. John K. Trotter*             Dated: December 1, 2020
        Hon. John K. Trotter (Ret.), as Trustee

12

# EXHIBIT A

## Data Fields for Matching of Claims Information

- Insurance underwriting company
- Insurance claim number
- Insurance policy number
- Policy type / line of business
- Date of loss
- Cause of loss
- Name of the Fire that Impacted the Insured
- Insured name (first, last, business)
- Loss location full address (street, city, zip, etc.) – each location if multiple locations and how indemnity payments relate to loss location if available
- Claim status (open, closed, etc.)
- Indemnity amounts paid by available categories, including but not limited to:
    - Building / Appurtenant Structure / Debris Removal
    - Contents / Business Personal Property / Debris Removal
    - Added Living Expense / Business Interruption, Loss of Use / Rent
    - Auto / Rental / Loss of Use / Tow / Storage
    - Indemnity Payment from Other Insurance Coverage
    - Other Insurance Coverage Description
- Unpaid case reserves (to the extent reported on a claimant-by-claimant basis)
- The date on which the foregoing information was last determined or updated

1

# EXHIBIT B

# REPRESENTATIVE RECEIVING PARTY'S CONFIDENTIALITY ACKNOWLEDGEMENT AND AGREEMENT

_____ (the "Representative Receiving Party") states that
(Name of Entity)

its relationship with the FV Trust is: _____

_____

The Representative Receiving Party represents and acknowledges that it has (i) received a copy of that certain Stipulated Confidentiality Agreement and Protective Order on the Production of Certain Claims Information (the "**Stipulated Agreement**"), dated December 2, 2020, regarding the confidentiality of Trust claims information, entered into by and among the Subrogation Wildfire Trust ("**Subrogation Trust**") and PG&E Wildfire Victim Trust ("**FV Trust**") and so-ordered by the Bankruptcy Court on _____, 2020, and (ii) carefully read and understands the provisions of the Stipulated Agreement.

The Representative Receiving Party hereby agrees as follows:

(a) The Representative Receiving Party shall be bound by the terms of the Stipulated Agreement to the same extent as if they were a party thereto;

(b) The Representative Receiving Party shall notify FV Trust or Subrogation Trust within twenty-fours of discovering that any of the Claims Information has been disclosed, accessed, acquired, used, or misappropriated in a manner or by a person that is not authorized under the Stipulated Agreement; and

(c) The Subrogation Trust is a third-party beneficiary to this Representative Receiving Party's Confidentiality Acknowledgment and Agreement with standing and authority to enforce the confidentiality provisions herein and seek any and all relief under applicable law, including, but not limited to, the right to seek and obtain injunctive relief.

_____
(Representative Receiving Party Name)

By: _____     Date: _____