| | |
|---|---|
| **LABATON SUCHAROW LLP**<br>Thomas A. Dubbs<br>Carol C. Villegas<br>Jeffrey A. Dubbin (SBN 287199)<br>140 Broadway<br>New York, New York 10005<br><br>*Lead Counsel to Lead Plaintiff and the Proposed Class*<br><br>**MICHELSON LAW GROUP**<br>Randy Michelson (SBN 114095)<br>220 Montgomery Street, Suite 2100<br>San Francisco, California 94104<br><br>*Local Bankruptcy Counsel to Lead Plaintiff and the Proposed Class* | **LOWENSTEIN SANDLER LLP**<br>Michael S. Etkin *(pro hac vice)*<br>Andrew Behlmann *(pro hac vice)*<br>Scott Cargill<br>Colleen Maker<br>One Lowenstein Drive<br>Roseland, New Jersey 07068<br><br>*Special Bankruptcy Counsel to Lead Plaintiff and the Proposed Class*<br><br><br><br>*Additional counsel listed on Exhibit A* |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Debtors.<br><br>☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | Case No. 19-30088 (DM) (Lead Case)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br><br><br>**SECURITIES LEAD PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 503(B)(3)(D) AND 503(B)(4) FOR ALLOWANCE AND PAYMENT OF FEES AND EXPENSES**<br><br>Date:  December 15, 2020<br>Time:  10:00 a.m. (PT)<br>Before: Video Conference<br><br>**Related Docket Nos.: 8950, 9519** |

Lead Plaintiff,[1] the court-appointed lead plaintiff in the Securities Litigation, hereby files this reply (the "**Reply**") (i) in further support of its *Motion Pursuant to Bankruptcy Code Sections 503(B)(3)(D) and 503(B)(4) for Allowance and Payment of Fees and Expenses* [Dkt. No. 8950] (the "**Motion**") and (ii) in response to the only objection to the Motion, which was filed by the Reorganized Debtors [Dkt. No. 9519] (the "**Objection**"). In support of the Reply, Lead Plaintiff respectfully states as follows:

## PRELIMINARY STATEMENT

At the very inception of these Chapter 11 Cases, the Debtors (now Reorganized Debtors) have treated the claims asserted by Lead Plaintiff and members of the putative Class (the "**Securities Claimants**") as not worthy of serious consideration. Each and every other constituency had, from the outset, its respective interests protected by the advocacy of an official committee or ad hoc group – the TCC, Creditors' Committee, Ad Hoc Committee of Senior Unsecured Noteholders, Ad Hoc Group of Subrogation Claim Holders, Ad Hoc Committee of Holders of Trade Claims, Ad Hoc Group of Institutional Bondholders, PG&E Holdco Group, and Ad Hoc California Entities Committee, among others – and most at the expense of the Debtors' estates.

Lead Plaintiff's contributions on behalf of thousands of Securities Claimants to properly address their treatment and status in these Chapter 11 Cases are detailed in the Motion and the accompanying time records, and this Court has had a front row seat to Lead Plaintiff's efforts. It was solely through Lead Plaintiff's active participation and vigorous advocacy in these Chapter 11 Cases that thousands of Securities Claimants were able to:

- continue to have the Securities Litigation prosecuted against the Non-Debtor Defendants by defeating Debtors' request for a preliminary injunction;
- receive constitutionally mandated actual notice of the bar date (which the Debtors previously failed to provide);
- have any opportunity at all to file proofs of claim;

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Motion.

- have their claims properly classified and receive any treatment whatsoever under the Plan;
- successfully fend off an attempt by the Debtors and the TCC to hijack the claims of Securities Claimants;
- benefit from the confirmation objections actively litigated to protect the rights and treatment of Securities Claimants;
- benefit from the successful mediation before Judge Newsome (retired) that materially improved the treatment of their claims under the Plan; and
- obtain modifications of the Plan injunction provision, also mediated by Lead Plaintiff, to remove what was tantamount to a nonconsensual third-party release.

Lead Plaintiff meaningfully participated in the Plan confirmation process in a manner that not only materially enhanced the treatment of Securities Claimants (after Lead Plaintiff's earlier efforts ensured Securities Claimants' claims were classified under the Plan), but also resulted in a confirmed Plan under the rigid time constraints of these Chapter 11 Cases. Reorganized Debtors do not dispute that this work was done, or that the time records accurately reflect the efforts undertaken by Lead Plaintiff and its counsel.

The Reorganized Debtors oppose the Motion solely on the basis of a misguided legal proposition, asserting that a party seeking allowance of a substantial contribution claim should be required to show that ***each and every creditor*** economically benefitted from the applicant's efforts. As discussed below, this proposition is inconsistent with the Bankruptcy Code, unsupported by case law, and contrary to this Court's own prior ruling addressing substantial contribution applications in *PG&E I*.

After the Debtors (unsuccessfully) sought an injunction prohibiting Lead Plaintiff from pursuing claims on behalf of the putative Class in the Securities Litigation against dozens of non-Debtor defendants, they then failed to provide Securities Claimants with Constitutionally mandated actual notice of the claims bar date. When Lead Plaintiff brought to light that the Debtors had deprived thousands of Securities Claimants of due process notice, the Debtors fought vigorously opposed these efforts. Were it not for Lead Plaintiff's advocacy, this serious

constitutional defect would not have been remedied. Instead, thousands of Securities Claimants went from being essentially ignored by the Plan to having their claims classified under the confirmed Plan and receiving treatment materially better than that initially proposed by the Debtors. In the end, Lead Plaintiff's contributions resulted in over 7,000 Securities Claimants receiving the rights and protections afforded to them under the Bankruptcy Code and other applicable law.

Throughout these cases, the Debtors acted as though the Securities Claimants were not a creditor constituency to which the Debtors owed fiduciary duties. In light of the Debtors' failure to consider the claims or even the fundamental due process rights of Securities Claimants, Lead Plaintiff was compelled to take action from the outset of the Chapter 11 Cases. Lead Plaintiff's efforts on behalf of Securities Claimants were vindicated repeatedly, as detailed in the Motion, by protecting their collective substantive and due process rights and ensuring that Securities Claimants were treated fairly through the Plan.

Whether the Reorganized Debtors choose to acknowledge it or not, the record is clear: Securities Claimants comprise a material constituency of the Debtors' estates encompassing three separate classes under the Plan – one of the only two impaired classes entitled to vote – and Lead Plaintiff's efforts have provided a substantial contribution to that constituency, and to the estates generally, by resolving a multitude of material issues that led to timely confirmation of the Plan. Under the Bankruptcy Code and well-established precedent, Lead Plaintiff is entitled to be compensated for its efforts in producing that result.

## **ARGUMENT**

### I. LEAD PLAINTIFF PROVIDED A SUBSTANTIAL BENEFIT IN THESE CHAPTER 11 CASES

The Reorganized Debtors essentially ask this Court to adopt a novel test for awarding substantial contribution claims – requiring Lead Plaintiff to demonstrate that its efforts resulted in increased ***monetary*** payment to ***each and every*** creditor of the estates in order to be entitled to a substantial contribution award (Objection at p. 14). Such a requirement is found neither in the applicable provisions of Bankruptcy Code nor in any case law. Courts recognize various ways in

which a creditor can provide a "substantial contribution" to a Chapter 11 case. However, the Objection places a myopic and unfounded focus on whether Lead Plaintiff's actions provided a benefit to the entire estates and creditor body as a whole (which Lead Plaintiff in fact did, in any event).

### A. The Fact That Lead Plaintiff Benefitted From its Advocacy Underscores, Rather Than Undermines, its Contribution.

The Reorganized Debtors first attempt to argue that because Lead Plaintiff has claims similar or identical to other Securities Claimants, its self-interest in the treatment of such claims is by itself grounds to deny the Motion. Such arguments have been routinely rejected by numerous courts in this Circuit, including this Court, which has previously held that it is unclear whether a "creditor's motivation is dispositive or even relevant" to the substantial contribution analysis. *In re Pac. Gas & Elec. Co.*, Case No. 01-30923, 2005 BL 6084, at *7, n.6 (Bankr. N.D. Cal. Apr. 28, 2005) ("**PG&E I**"). Indeed, it is well-established that a party acting with some degree of self-interest, as all actors in a bankruptcy case do, does not serve as a bar to allowance of a substantial contribution claim. *See In re Cellular 101, Inc.*, 377 F.3d 1092, 1098 (9th Cir. 2004) (noting that "the existence of a self-interest cannot in and of itself preclude reimbursement") (citation omitted); *In re Mortgages Ltd.*, 2010 WL 6259981, at *8 (9th Cir. BAP Aug. 4, 2010) ("We reject Trustee's argument that substantial contribution claims must be denied if the creditor acted primarily in its own interest, even if the creditor provided a demonstrable benefit to the estate, as that is not the law in our circuit.").

As detailed in the Motion, throughout these Chapter 11 Cases, without Lead Plaintiff's vigorous advocacy, the Debtors would have continued simply to ignore the substantive and due process rights of thousands of Securities Claimants and their entitlement to receive distributions under the Bankruptcy Code. Lead Plaintiff advocated on behalf of the interests of a constituency of now well over 7,000 asserted claims, with an aggregate value of no less than $6 billion. Upon allowance, these claims will receive either cash or stock in the Reorganized Debtors pursuant to the negotiated terms of the Plan. The fact that Lead Plaintiff, itself a Securities Claimant, will also

benefit from its efforts only underscores the substantial benefit Lead Plaintiff's actions conferred on these significant estate stakeholders.

It is worthy of note that Lead Plaintiff filed proofs of claim by the original bar date despite Debtors' failure to provide actual notice to Securities Claimants. Thus, Lead Plaintiff did not even benefit from the extension of the Bar Date that directly resulted from its advocacy.

**B.    Lead Plaintiff Obtained Benefits for the Securities Claimants, Thereby Making a "Substantial Contribution"**

In earlier versions of the Plan, prior to Lead Plaintiff objecting to the Disclosure Statement, equity purchaser claimants were effectively left out entirely. Lead Plaintiff's efforts and advocacy in connection with approval of the Disclosure Statement forced the Debtors not only to acknowledge the existence of the Securities Claims, but also to develop a mechanism in the Plan to allocate value to their claims in all versions of the plan going forward. *See Securities Lead Plaintiff's Objection to (I) Solicitation Procedures Motion [ECF No. 5835] and (II) Approval of Proposed Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization [ECF No. 5700]* [Dkt. No. 6144].

Accordingly, Lead Plaintiff's involvement in the case, from the establishment of the extended bar date through confirmation, created the recoveries for Securities Claimants with allowed claims. While they once were to receive nothing, they are now being paid either a full recovery in cash, or receiving equity in the Reorganized Debtors, depending on whether they purchased debt or equity securities, as mandated by Bankruptcy Code § 510(b). Although the exact value to be received by holders of Class 10A-II claims is not yet known, the benefit to creditors was substantial and justifies a substantial contribution award to Lead Plaintiff. *See In re W.G.S.C. Enterprises, Inc.*, 47 B.R. 53, 57-58 (Bankr. N.D. Ga. 1985) (noting that neither the inability to foresee the future economy, nor that the creditor's actions also benefitted itself, precluded payment of fees based on substantial contribution).

The Reorganized Debtors do not dispute that Lead Plaintiff's actions benefitted all of the Securities Claimants. The thousands of members of Classes 9A, 10A-II, and 10B under the Plan (the "**Subordinated Securities Claimant Classes**"), who were otherwise unrepresented in these

Chapter 11 Cases, are the direct beneficiaries of Lead Plaintiff's significant efforts through its counsel – *i.e.*, a substantial contribution meriting compensation. *See In re 9085 E. Mineral Office Bldg., Ltd.*, 119 B.R. 246, 252 (Bankr. D. Colo. 1990) ("Travelers' efforts were designed to increase the payout to the unsecured creditors. While Travelers was a significant member of the class of unsecured creditors, it was not the whole class.").

In extending the bar date for Securities Claimants, this Court expressly held that the Debtors had previously failed to satisfy due process with respect to service of the bar date notice on potential Securities Claimants. *Memorandum Decision Regarding Motion to Apply Rule 7023* [Docket No. 5887], at 4 ("Consequently, the putative class members here are known creditors entitled to actual written notice."). The Reorganized Debtors now argue that because Lead Plaintiff "lost" its initial motion to certify a class for the purposes of asserting a class proof of claim, it conferred no compensable benefit. (Objection at p. 15) That is neither the case nor the standard. *See In re Texaco, Inc.*, 90 B.R. 622, 627 (Bankr. S.D.N.Y. 1988) (noting that a party may be entitled to compensation for a substantial contribution "whether successful or unsuccessful"). From the standpoint of the thousands of Securities Claimants who filed proofs of claim in response to the extended bar date notice, Lead Plaintiff's initial 7023 Motion, which brought the Debtors' due process failures to light, was quite successful despite the fact that this Court ultimately granted different relief from that requested by Lead Plaintiff.

It is well established that the Debtors owed fiduciary duties to Lead Plaintiff and the thousands of other Securities Claimants – as they do any other member of the Debtors' creditor body. *See Everett v. Perez* (*In re Perez*), 30 F.3d 1209, 1214, n.5 (9th Cir. 1994) (a debtor in possession owes a fiduciary duty to all creditors of the bankruptcy estate); *see also* 11 U.S.C. § 101(10) (defining a "creditor" as having a claim); 11 U.S.C. § 101(5) (defining "claim" as being disputed or undisputed). When the Debtors opposed Securities Claimants' proper treatment, it was Lead Plaintiff, in the absence of any other ally or estate fiduciary, that stepped in to protect that constituency's rights. Without Lead Plaintiff's involvement, thousands of claimants would have been improperly classified or ignored by the Plan.

As this Court has acknowledged, this case involves the rare situation where a solvent debtor has the financial wherewithal to not only pay all allowed claims in full, but also provide meaningful distributions to subordinated equity claims and prepetition equity holders. As such, this Court should reject the Reorganized Debtors' attempts to compare the facts and circumstances of these Chapter 11 Cases to cases addressing substantial contribution requests arising under completely different circumstances.

For instance, the Objection relies on several cases where substantial contribution requests were denied on the grounds that the applicant's services were duplicative of those provided by another party. *See, e.g.*, *In re White Mountain Communities Hosp., Inc.*, 2006 WL 6811025, at *7 (B.A.P. 9th Cir. Mar. 21, 2006) (finding creditors' efforts were duplicative of the debtors'); *Matter of Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1254 (5th Cir. 1986) (finding creditors' efforts were duplicative of creditors' committee's); *PG&E I* (denying the City of Palo Alto's substantial contribution request because, *inter alia*, Palo Alto was a member of the creditors' committee and the actions taken by Palo Alto were duplicative of the committee's advocacy).

Here, Lead Plaintiff was the *only* advocate for Securities Claimants. Rather than protecting the interests and rights of Securities Claimants, the Debtors, the Creditor's Committee, the TCC, and the equity holder Plan proponents all sought to disenfranchise Securities Claimants. No other estate fiduciary or committee – ad hoc or otherwise – took up the mantle. Lead Plaintiff's active participation and vigorous advocacy in these Chapter 11 Cases alone enabled the thousands of Securities Claimants to receive the benefits listed herein and further detailed in the Motion.

Because Lead Plaintiff substantially contributed to the case, benefitted a significant constituency of otherwise unrepresented creditors, and benefitted the estates and creditors as a whole, Lead Plaintiff is entitled to compensation under Section 503(b) of the Bankruptcy Code.

C.  **Lead Plaintiff's Efforts Benefitted the Entire Estate**

The Reorganized Debtors rely on inapposite cases where substantial contribution requests were denied because the creditor's actions throughout the case reduced the recovery for other unsecured creditors. *See, e.g.*, *In re RS Legacy Corp.*, 2016 WL 1084400, at *4 (Bankr. D. Del. Mar. 17, 2016) (finding no substantial contribution where intended result would diminish funds

available to other stakeholders); *In re Standard Metals Corp.*, 105 B.R. 625, 631 (Bankr. D. Colo. 1989) (finding that creditor did not substantially benefit the estate because the recovery for the creditor reduced recovery for other unsecured creditors). The Reorganized Debtors have not alleged, nor could they reasonably allege, that Lead Plaintiff's actions, on behalf of thousands of subordinated unsecured creditors, took even one dollar away from the recovery of other creditors given the solvency of these estates.

Certain cases analyze substantial contribution requests with generalized and somewhat vague language about showing "benefit to the estate." However, that language is inconsistent with the Bankruptcy Code, and the Debtors interpret such judicial gloss as requiring a monetary benefit to *every* constituency. Section 503(b)(3)(D) of the Bankruptcy Code refers to "substantial contribution in a case" and does not make a reference to or require a benefit to any specific number of creditors, the debtors, or the estate as a whole. Congress **could have** required a "benefit to the estate" as it does in Section 503(b)(3)(B) with respect to reimbursement of a creditor that recovers property, or "benefit to all creditors," but it did not. *See In re Mirant Corp.*, 354 B.R. 113, 132 (Bankr. N.D. Tex. 2006). The *Mirant* court ruled that the applicant's efforts that "substantially contributed to the proper allocation of the Debtors' value among stakeholders" provided a substantial contribution in the case, which made the services compensable under Section 503(b). *Id.*

As detailed in the Motion, Lead Plaintiff's actions substantially benefited, in material non-monetary and monetary ways, every creditor of the Reorganized Debtors. Lead Plaintiff provided a mechanism to continue moving the case forward toward confirmation – without imperiling the A.B. 1054 deadline and without impacting distributions to general unsecured creditors; all constituencies relied on Lead Plaintiff to be an advocate for Securities Claimants instead of delaying the case while the Debtors undertook satisfying due process and notifying creditors of the extended bar date. The hearing on the Disclosure Statement, during which Lead Plaintiff's advocacy resulted in the Subordinated Securities Claimant Classes being properly included in the Plan for the first time, occurred **before** the notice pursuant to the extended bar date was given to those claimants. These known claimants were not given proper notice of these Chapter 11 Cases

or the claims bar date and an opportunity to object until *after* the Disclosure Statement was approved with modifications based on Lead Plaintiff's objection. "Although the amount to be allowed as an administrative expense must be measured in dollars and cents … the question whether the estate has been benefitted cannot be so narrowly confined," as the estate could receive "other less readily calculable benefits, such as … enhancing disclosure to an impaired shareholder class …." *In re Am. Plumbing & Mech., Inc.*, 327 B.R. 273, 282-83 (Bankr. W.D. Tex. 2005).

It would be rare indeed for any individual's contribution to benefit each and every creditor. Yet that is what Lead Plaintiff has done here. Through tireless and effective advocacy, Lead Plaintiff improved the Plan's treatment of the only impaired class to vote against Plan confirmation – including by identifying and contributing to the remediation of grave due process concerns – without which confirmation would have been decidedly more difficult. The Debtors, who opposed Lead Plaintiffs efforts, certainly would not have remedied these problems on their own. Lead Plaintiff's facilitation of Plan confirmation benefitted the entire estate.

## II.     THIS COURT SHOULD APPROVE THE FEES AND EXPENSES AS REQUESTED

The Reorganized Debtors do not dispute the reasonableness of the fees and expenses set forth in detail in the Motion. Instead, they request that the Fee Procedures be expanded to have Lead Plaintiff's fees reviewed by the Fee Examiner. All parties, including the U.S. Trustee, the TCC, the Creditors' Committee, the Plan Sponsor and individual creditors have had a full and fair opportunity to review the relief requested in the Motion accompanied by the detailed time records submitted therewith, and yet none have objected. Accordingly, this Court need not amend the Fee Procedures and begin a lengthy and unnecessary fee review process that, in any event, would be fundamentally inconsistent with the nature of a substantial contribution claim.

The Reorganized Debtors' last-ditch request for Fee Examiner review is also inconsistent with the Fee Procedures. A creditor seeking payment under Section 503(b)(4) is not among the parties subject to the *Second Amended Order Granting Fee Examiner's Motion to Approve Fee Procedures* [Dkt. No. 5572] (the "**Fee Procedures Order**").

The Fee Procedures Order contemplates three specific categories of "Fee Applicants": "(i) the 'core' debtors' counsel and committee counsel; (ii) Debtors' other legal counsel subject to fee examination; and (iii) non-legal professionals." None of these categories encompass Lead Plaintiff's counsel. Moreover, the Plan provides for the payment of "Ad Hoc Professionals" in an aggregate amount of up to $55 million – without review by the Fee Examiner. It is telling that the Reorganized Debtors were unconcerned about $55 million in estate funds being paid to Ad Hoc Professionals representing constituencies that were already slated to recover 100% on account of their allowed claims, without any Fee Examiner oversight. Yet it is now, supposedly, vitally important to the Reorganized Debtors that the approximately $4.5 million sought by Lead Plaintiff over a sixteen (16) month period be subject to Fee Examiner review. The Reorganized Debtors have not alleged that a single time entry, category of fee, or expense is unreasonable. Moreover, Lead Plaintiff's substantial contribution request does not request any fees for post-effective date services, or other work that Lead Plaintiff believed in good faith was not appropriate for the Motion.

This Court has been witness to all of Lead Plaintiff's activity and contributions to these Chapter 11 Cases, through its counsel, and is the most capable of determining that the fees and expense sought by Lead Plaintiff were actual, necessary, and reasonable. Nevertheless, should this Court be inclined to grant the Motion subject to Fee Examiner review, Lead Plaintiff will fully cooperate in that regard.

[ *signature page follows* ]

## **CONCLUSION**

For all of the foregoing reasons and the reasons set forth in the Motion, Lead Plaintiff respectfully requests that this Court grant the Motion and allow as administrative expenses the fees and expenses incurred by Labaton, Lowenstein, and Michelson, in the respective amounts set forth in the Motion, and granting such other and further relief as may be just and proper.

Dated: December 8, 2020    **LOWENSTEIN SANDLER LLP**
                                           **MICHELSON LAW GROUP**

                                           By:    */s/ Randy Michelson*
                                           Randy Michelson (SBN 114095)

                                           *Bankruptcy Counsel to Lead Plaintiff and the Class*

**EXHIBIT A**
**COUNSEL**

| | |
|---|---|
| **LABATON SUCHAROW LLP**<br>Thomas A. Dubbs<br>Carol C. Villegas<br>Jeffrey A. Dubbin (SBN 287199)<br>Aram Boghosian<br>140 Broadway<br>New York, New York 10005<br>Telephone 212-907-0700<br>tdubbs@labaton.com<br>cvillegas@labaton.com<br>jdubbin@labaton.com<br>aboghosian@labaton.com<br><br>*Lead Counsel to Lead Plaintiff and the Proposed Class* | **LOWENSTEIN SANDLER LLP**<br>Michael S. Etkin (*pro hac vice*)<br>Andrew Behlmann (*pro hac vice*)<br>Scott Cargill<br>Colleen Maker<br>One Lowenstein Drive<br>Roseland, New Jersey 07068<br>Telephone 973-597-2500<br>Facsimile 973-597-2333<br>metkin@lowenstein.com<br>abehlmann@lowenstein.com<br><br>*Special Bankruptcy Counsel to Lead Plaintiff and the Proposed Class* |
| **MICHELSON LAW GROUP**<br>Randy Michelson, Esq. (SBN 114095)<br>220 Montgomery Street, Suite 2100<br>San Francisco, CA 94104<br>Telephone 415-512-8600<br>Facsimile 415-512-8601<br>randy.michelson@michelsonlawgroup.com<br><br>*Local Bankruptcy Counsel to Lead Plaintiff and the Proposed Class* | **WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**<br>James M. Wagstaffe (SBN 95535)<br>Frank Busch (SBN 258288)<br>100 Pine Street, Suite 725<br>San Francisco, California 94111<br>Telephone 415-357-8900<br>wagstaffe@wvbrlaw.com<br>busch@wvbrlaw.com<br><br>*Liaison Counsel for the Proposed Class* |
| **ROBBINS GELLER RUDMAN & DOWD LLP**<br>Darren J. Robbins (SBN 168593)<br>Brian E. Cochran (SBN 286202)<br>655 West Broadway, Suite 1900<br>San Diego, California 92101<br>Telephone 619-231-1058<br>darrenr@rgrdlaw.com<br>bcochran@rgrdlaw.com<br><br>**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**<br>Thomas C. Michaud<br>79 Alfred Street<br>Detroit, Michigan 48201<br>Telephone 313-578-1200<br>tmichaud@vmtlaw.com | **ROBBINS GELLER RUDMAN & DOWD LLP**<br>Willow E. Radcliffe (SBN 200089)<br>Kenneth J. Black (SBN 291871)<br>Post Montgomery Center<br>One Montgomery Street, Suite 1800<br>San Francisco, California 94104<br>Telephone 415-288-4545<br>willowr@rgrdlaw.com<br>kennyb@rgrdlaw.com |

*Additional Counsel for the Securities Act Plaintiffs*