1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                    -oOo-

4   In Re:                    ) Case No. 19-30088
                              ) Chapter 11
5   PG&E CORPORATION AND PACIFIC )
    GAS AND ELECTRIC COMPANY   ) San Francisco, California
6                              ) Tuesday, December 15, 2020
                      Debtor.  ) 10:00 AM
7   _____ )
                                 REORGANIZED DEBTORS' TWENTY-
8                                FIFTH OMNIBUS OBJECTION TO
                                 CLAIMS (AMENDED AND
9                                SUPERSEDED CLAIMS) FILED BY
                                 PG&E CORPORATION [9418]
10
                                 REORGANIZED DEBTORS' TWENTY-
11                               SIXTH OMNIBUS OBJECTION TO
                                 CLAIMS (DUPLICATIVE CLAIMS)
12                               FILED BY PG&E CORPORATION
                                 [9421]
13
                                 REORGANIZED DEBTORS'
14                               TWENTY-SEVENTH OMNIBUS
                                 OBJECTION TO CLAIMS
15                               (INCORRECT DEBTOR CLAIMS)
                                 FILED BY PG&E CORPORATION
16                               [9424]

17                               REORGANIZED DEBTORS'
                                 TWENTY-EIGHTH OMNIBUS
18                               OBJECTION TO CLAIMS (BOOKS
                                 AND RECORDS CLAIMS) FILED BY
19                               PG&E CORPORATION [9427]

20                               REORGANIZED DEBTORS'
                                 TWENTY-NINTH OMNIBUS
21                               OBJECTION TO CLAIMS
                                 (SATISFIED CLAIMS) PG&E
22                               CORPORATION [9430]

23                               REORGANIZED DEBTORS'
                                 THIRTIETH OMNIBUS OBJECTION
24                               TO CLAIMS (NO LIABILITY
                                 CLAIMS) FILED BY
25                               PG&E CORPORATION [9433]

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1       REORGANIZED DEBTORS'
        THIRTY-FIRST OMNIBUS
2       OBJECTION TO CLAIMS (CUSTOMER
        NO LIABILITY CLAIMS) FILED BY
3       PG&E CORPORATION [9436]

4       REORGANIZED DEBTORS'
        THIRTY-SECOND OMNIBUS
5       OBJECTION TO CLAIMS (CUSTOMER
        NO LIABILITY CLAIMS) FILED BY
6       PG&E CORPORATION [9439]

7       REORGANIZED DEBTORS'
        THIRTY-THIRD OMNIBUS
8       OBJECTION TO CLAIMS (CUSTOMER
        NO LIABILITY CLAIMS) FILED BY
9       PG&E CORPORATION [9441]

10      REORGANIZED DEBTORS'
        THIRTY-FOURTH OMNIBUS
11      OBJECTION TO CLAIMS (CUSTOMER
        NO LIABILITY CLAIMS) FILED BY
12      PG&E CORPORATION [9443]

13      REORGANIZED DEBTORS'
        THIRTY-FIFTH OMNIBUS
14      OBJECTION TO CLAIMS (CUSTOMER
        NO LIABILITY CLAIMS) FILED BY
15      PG&E CORPORATION [9445]

16      REORGANIZED DEBTORS'
        THIRTY-SIXTH OMNIBUS
17      OBJECTION TO CLAIMS (CUSTOMER
        NO LIABILITY CLAIMS) FILED BY
18      PG&E CORPORATION [9447]

19      REORGANIZED DEBTORS'
        THIRTY-SEVENTH OMNIBUS
20      OBJECTION TO CLAIMS (CUSTOMER
        NO LIABILITY CLAIMS) FILED BY
21      PG&E CORPORATION [9449]

22      REORGANIZED DEBTORS'
        THIRTY-EIGHTH OMNIBUS
23      OBJECTION TO CLAIMS (CUSTOMER
        NO LIABILITY CLAIMS) FILED BY
24      PG&E CORPORATION [9451]

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

1                            REORGANIZED DEBTORS'
                           THIRTY-NINTH OMNIBUS

2                            OBJECTION TO CLAIMS (CUSTOMER
                           NO LIABILITY CLAIMS) FILED BY

3                            PG&E CORPORATION [9453]

4                            MOTION PURSUANT TO FED. R.
                           BANKR. PROC. 7015 AND 7017 TO

5                            JOIN REAL PARTY IN INTEREST
                           FOR CLAIM PREVIOUSLY FILED;

6                            OR, IN THE ALTERNATIVE, TO
                           ENLARGE TIME TO FILE PROOF OF

7                            CLAIM PURSUANT TO FED. R.
                           BANKR PROC. 9006(B)(1) FILED

8                            BY MOLIN-WILCOXEN CAMP FIRE
                           VICTIMS GROUP [9481]

9
                           SECURITIES LEAD PLAINTIFF'S

10                            MOTION PURSUANT TO BANKRUPTCY
                           CODE SECTIONS 503(B)(3)(D)

11                            AND 503(B)(4) FOR ALLOWANCE
                           AND PAYMENT OF FEES AND

12                            EXPENSES FILED BY SECURITIES
                           LEAD PLAINTIFF AND THE

13                            PROPOSED CLASS [8950]

14                TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE DENNIS MONTALI

15              UNITED STATES BANKRUPTCY JUDGE

16
APPEARANCES:

17 For the Reorganized         DARA L. SILVEIRA, ESQ.
Debtors:                      Keller Benvenutti Kim LLP

18                            650 California Street
                           Suite 1900

19                            San Francisco, CA 94108
                           (415)496-6723

20                            STEPHEN KAROTKIN, ESQ.

21                            JESSICA LIOU, ESQ.
                           Weil, Gotshal & Manges LLP

22                            767 Fifth Avenue
                           New York, NY 10153

23                            (212)310-8000

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1   For Public Employees          MICHAEL S. ETKIN, ESQ.
    Retirement Association of     Lowenstein Sandler LLP
2   New Mexico (PERA):            One Lowenstein Drive
                                  Roseland, NJ 07068
3                                 (973)597-2500

4                                 THOMAS A. DUBBS, ESQ.
                                  Labaton Sucharow LLP
5                                 140 Broadway
                                  New York, NY 10005
6                                 (212)907-0700

7

8

9

10

11

12

13

14

15

16

17

    Court Recorder:               LORENA PARADA/ANKEY THOMAS
18                                United States Bankruptcy
                                  Court
19                                450 Golden Gate Avenue
                                  San Francisco, CA 94102
20

21  Transcriber:                  COLIN RICHILANO
                                  eScribers, LLC
22                                7227 N. 16th Street
                                  Suite #207
23                                Phoenix, AZ 85020
                                  (973)406-2250
24

    Proceedings recorded by electronic sound recording;
25  transcript provided by transcription service.

PG&E Corporation and Pacific Gas and Electric Company

1   SAN FRANCISCO, CALIFORNIA, TUESDAY, DECEMBER 15, 2020, 10:00 AM

2                              -oOo-

3       (Call to order of the Court.)

4           THE COURT REPORTER:  Court is now in session.  The

5   Honorable Dennis Montali presiding.  Calling the matter of PG&E

6   Corporation.

7           One moment, Your Honor, while I bring in Ms. Silveira

8   in.

9           MS. SILVEIRA:  Good morning, Your Honor.

10          THE COURT:  Good morning, Ms. Silveira.  Can you hear

11  me?

12          MS. SILVEIRA:  Yes.

13          THE COURT:  Okay.  Just state your appearance for the

14  record.

15          MS. SILVEIRA:  Dara Silveira, Keller Benvenutti Kim,

16  on behalf of the reorganized debtors.

17          THE COURT:  Okay.  Ms. Silveira, you can --

18          Well, let me make an announcement for all parties on

19  the call, or on the hearing.  The debtor had a number of

20  omnibus objections on originally for today, and only one, party

21  by the name of Elor, has the matter been left for today.  Every

22  other so-called omnibus objection has been continued to dates

23  either in January or March.

24          Ms. Silveira, have I got it right?  Have you got

25  everybody accounted for that way, one or the other?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        MS. SILVEIRA:  Yes.  Yes, Your Honor.

2        THE COURT:  Okay.  So if there is anyone who's raising

3   a hand because you think you intended to be heard today on the

4   omnibus objection, I'm not going to call on you because we're

5   not dealing with that.  If there is someone signed in today who

6   is appearing for Yair, Y-A-I-R, Elor, E-L-O-R, please raise

7   your hand and I'll identify -- I'll call you and bring you in.

8        Now, I see a Tayisha Jeffy (phonetic) with a hand up.

9        Ms. Jeffy, if you are not on the Elor matter, please

10  take down your hand because I don't intend to call on you.

11       All right.  Ms. Silveira, I reviewed the Elor

12  objection.  I'm not sure what to make of it.  Do you have any

13  indication of what's behind this claim?

14       MS. SILVEIRA:  Your Honor, to the best of my

15  understanding, Mr. Elor is taking issue with the debtors'

16  rates, not necessarily with respect to the rates he himself is

17  being charged; it seems to me slightly more generally.  He

18  makes some reference to being on disability, but it wasn't

19  clear, from the face of the response, whether that was with

20  respect to him or someone else.

21       As we laid out in the thirty-third omnibus objection,

22  we were able to confirm that Mr. Elor was or is a customer but

23  have not identified any pre-petition billing issues, CPUC

24  complaints, or any other pre-petition claims, so it's our

25  position that there's no basis for liability, and the response

(973) 406-2250 | operations@escribers.net | www.escribers.net

                PG&E Corporation and Pacific Gas and Electric Company

1    as we've provided doesn't lay one out.

2               THE COURT:  Okay.  Well, I reviewed the claim and also

3    the handwritten attachment, and I sort of came to the

4    conclusion.  I'm going to go ahead and sustain the objection

5    because it doesn't appear to be a recognizable claim.

6               And if anyone is listening on behalf of Mr. Elor, Mr.

7    and Mrs. Elor, they presumably can take any grievance that they

8    have about claims generally, or rates generally, rather, to the

9    Public Utilities Commissioner directed at the company.  It

10   doesn't seem to -- there doesn't seem to be any basis for the

11   claim being treated as one of the claims being held under the

12   confirmed plan.

13              So with that, we can go ahead and process that in the

14   normal course, and that will be the end of that, okay?

15              MS. SILVEIRA:  Yes.  Yes, Your Honor.  Thank you very

16   much.

17              THE COURT:  Thank you.  And we're not going to keep

18   you on the screen, unless you're going to be participating in

19   today's motion, are you?

20              MS. SILVEIRA:  No, Your Honor, I wouldn't.

21              THE COURT:  Okay, then.  We're going to put you back

22   in the audience, and you're free to go.  Thank you for your

23   help on --

24              MS. SILVEIRA:  Thank you.

25              THE COURT:  And thank you for all your coordination of

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    all the numerous omnibus claims; that's quite a handful.

2         MS. SILVEIRA: Certainly, Your Honor. Thank you very

3    much.

4         THE COURT: Thank you.

5         MS. SILVEIRA: Bye.

6         THE COURT: All right. For everyone else watching,

7    the only matter on for the calendar now is the so-called 503

8    motion, and Ms. Parada will bring in the principal counsel to

9    argue that motion, and I'll see if we've got everybody

10    accounted for there.

11         Mr. Karotkin, good morning. Happy holidays.

12         MR. KAROTKIN: Yes, to you, too, sir.

13         I think Ms. Liou will be handling the main argument

14    for the debtors.

15         THE COURT: Oh, not Mr. Slack?

16         MR. KAROTKIN: I'd like to remain, if we could bring

17    her in as well?

18         THE COURT: Sure. I thought Mr. Slack would be here.

19         All right. Mr. Etkin, good morning.

20         MR. ETKIN: Good morning, Your Honor.

21         THE COURT: And is -- Ms. Liou, good morning.

22         MS. LIOU: Hi. Good morning, Your Honor.

23         THE COURT: And Mr. Etkin, is Mr. Dubbs coming in

24    today, or not?

25         MR. ETKIN: Mr. Dubbs is coming in as well, Your

PG&E Corporation and Pacific Gas and Electric Company

1   Honor.  I think I'll probably be handling it primarily, but if

2   it's okay with the Court, if we could bring Mr. Dubbs in as

3   well, that would be helpful.

4           THE COURT:  Well, that's what we were expecting.  Ms.

5   Parada, you do have him in the audience, don't you?

6           THE COURT REPORTER:  Your Honor, I do not see Mr.

7   Dubbs, unless he signed in in a different name; if he could

8   raise a hand.

9           THE COURT:  Mr. Dubbs, are you incognito, under a

10  phone number rather than a name?  There you go.  We'll just --

11  I thought we had a hand go up.

12          THE COURT REPORTER:  Yes, and it -- and then it's

13  lowered.  I don't see a hand raised for Mr. Dubbs.

14          THE COURT:  Well, I saw one go up again and then down

15  again.  Hold on everybody.

16          Mr. Dubbs, are you going to join us or not today?

17  Okay.  Hand up again, but took it down again.  Okay.

18          What did you do, scare him off, Mr. Karotkin and Ms.

19  Liou?  What did you do to your opponent here?

20          All right.  Mr. Dubbs, one more try.  Please put up

21  your hand if you want to come in to the courtroom.

22          Well, Mr. Etkin, you're going to get the duty, I

23  think.

24          MR. ETKIN:  I think that he might be having technical

25  difficulties, Your Honor, but unfortunately, I can't help him

PG&E Corporation and Pacific Gas and Electric Company

1    with that.

2         THE COURT:  Well, as we know, I've had my share of

3    technical difficulties; keep my fingers crossed today.  Well,

4    let's just wait a minute and see.

5         Are you in touch with him directly by a cell phone or

6    a text?

7         MR. ETKIN:  Your Honor, I spoke with him earlier this

8    morning.  I can certainly try to send him an email, but --

9         THE COURT:  Well, if you want to call him on a

10   landline or something, I mean, I don't mind waiting.

11        MR. ETKIN:  Okay.  I appreciate that, Your Honor.  Let

12   me give that a try.  Excuse me for one moment.

13        THE COURT:  Yeah, you might want to turn your mic off,

14   so we don't listen to you.

15        MR. ETKIN:  Yeah.

16        THE COURT:  Well, Mr. Karotkin, you wanted to stay on

17   the screen for the argument?

18        MR. KAROTKIN:  Yes, sir.

19        THE COURT:  Okay.  All right.  Well, you can both

20   stand down for a minute and we'll just give him a little bit of

21   time, here.

22        MR. ETKIN:  He has the hand-raise feature, so I can't

23   offer an explanation as to why that's not working out.

24        THE COURT:  Well, hold on.

25        Okay.  Someone in your office there --

escribers
(973)406-68 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. ETKIN:  We asked --

2          THE COURT:  -- (audio interference) --

3          MR. ETKIN:  I actually tried to get this problem fixed

4    this morning, but obviously was unsuccessful.  I appreciate the

5    Court's generosity with its time.

6          THE COURT:  Well, maybe you have a teenager somewhere

7    in the house.  They can fix it.

8          There you go.  There's your name.  All right.

9          All right.  For Mr. Dubbs and Mr. Etkin, you saw my

10   order, I trust, and therefore you've got a half an hour, and I

11   assume you want to save a portion of that for rebuttal, and Ms.

12   Liou is going to argue for the debtors.  How much time shall we

13   reserve for you?

14         MR. ETKIN:  Your Honor, we'd like to reserve ten

15   minutes for rebuttal, please.

16         THE COURT:  Okay.  Okay.  You're up.

17         MR. ETKIN:  Okay.  Thank you, Your Honor.

18         And we understand that the Court has undertaken a

19   detailed review of the papers, and I intend to focus on certain

20   arguments made by the reorganized debtors in their opposition,

21   but primarily on the Court's questions in the December 11th

22   order.  And as is obvious, Your Honor, only one objection was

23   filed in connection with PERA's substantial contribution

24   application.

25         Your Honor, the efforts of PERA and its counsel over

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    the eighteen months of these cases prior to the effective date

2    have been, for the most part, in plain sight.  And the Court is

3    in a position, actually probably the best position, to evaluate

4    those efforts in the context of this motion.  There was,

5    obviously, material work done outside of the courtroom, but the

6    thrust of our efforts has been readily apparent to the Court.

7            As the Court indicated at the June 24th hearing on the

8    debtors' original omnibus claims procedures motion, you've been

9    dealing with us and the constituency that we've been speaking

10   for and acting for for a long, long time -- from the outset of

11   the case -- with respect to all of the important substantive

12   matters we outline in the motion.  The Court actually

13   referenced much of that, in terms of the plan issues, during

14   the colloquy during that hearing, so I don't believe we need to

15   spend much time on that.

16           The fact is that we were never given a seat at the

17   table, and all that we have done to provide a platform for an

18   important constituency in these cases, and vindicate their

19   rights, was accomplished without ultimately jeopardizing

20   confirmation or the extraordinarily tight time frame that was

21   required.

22           At the confirmation hearing itself for one of the

23   sessions, on June 19th, when we advised the Court of the

24   outcome of the mediation with Judge Newsome, Your Honor noted

25   the compromises reached with respect to the improved treatment

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   methodology for securities claimants and congratulated the

2   parties for solving the problems.

3           But those confirmation problems, Your Honor, several

4   of which the Court identified as issues of first impression,

5   and the notice and due process violations, the form of the

6   notice, the disclosure statement issues, the classification of

7   the securities claimants, the treatment of those claims, the

8   attempts to shut down the securities litigation would never

9   have been resolved, and certainly not resolved in a timely

10  manner, but for the efforts of PERA and its counsel and their

11  advocacy.

12          Now, the theme of the reorganized debtors' opposition

13  appears to be that PERA was solely motivated by self-interest

14  and that, had we stayed silent, the debtors could have simply

15  steamrolled securities claimants and wouldn't have had to deal

16  with those issues at all.

17          But the fact is that a plan was confirmed.  Securities

18  claimants were given an opportunity to file claims, which they

19  did by the thousands, those claims were recognized and

20  classified, and their distribution was enhanced through the

21  significant efforts of PERA and their counsel -- and this is

22  very important Your Honor -- without costing unsecured

23  creditors and the fire victims one dollar.  So, Your Honor,

24  that is the lens through which we would ask the Court to view

25  PERA's application.

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        Now, let me get to the Court's questions specifically.

2        THE COURT:  Yeah, I should give you a clue.  The

3   question comes, in part, from my perception about the

4   nonbankruptcy world and class action.  I realize that lots of

5   class actions settle, but some of them must not.  And if you

6   went all the way to trial and got a defense verdict, I'm pretty

7   sure you wouldn't get paid anything, would you?

8        MR. ETKIN:  Not by the district court, Your Honor.

9        THE COURT:  Right.  Right.  No, I'm talking about a

10  hypothetical, not the --

11       MR. ETKIN:  Right.

12       THE COURT:  -- (indiscernible).

13       MR. ETKIN:  Under those circumstances.

14       THE COURT:  Right.

15       MR. ETKIN:  Not in connection with your standard class

16  action and how fees are determined in those cases.

17       THE COURT:  Right.  And so my question and the

18  predicate here for my question is since nobody -- not a single

19  claimant has been paid a single penny yet, even if I were

20  persuaded that your 503 argument was credible on the face of

21  it, could I award something at a time when none of the

22  constituents that you speak for have gotten a penny, or haven't

23  even become entitled to a penny?

24       MR. ETKIN:  Well, Your Honor, we believe the answer to

25  that question is yes because the hypothetical that you pose

PG&E Corporation and Pacific Gas and Electric Company

1    involved what would happen in the district court.  And the

2    circumstances here that dictates a 503 and how reasonable fees

3    are determined is set forth, we believe, in the Bankruptcy

4    Code.  In fact, Your Honor, I think the reorganized debtors'

5    opposition maintains that the same principles for assessing the

6    reasonableness of retained professionals' fees should be

7    applied to substantial contribution applications, and we agree.

8    We agree with that.

9         So the analysis should comport with Section 330 of the

10   Bankruptcy Code, which is what the debtors argue and what we

11   believe should be the case as well.

12        THE COURT:  Okay.  But think about it.  Let's test it

13   from my point of view.  Your claim, if I'm not mistaken, is

14   upwards of four million -- four-and-a-half million some

15   dollars.  Substantial money.  If I awarded that and you were

16   paid it, and then at some day in the future the defendants,

17   whether the debtor defendants -- leave aside the officer and

18   director -- if the defendants never had to pay a penny, then

19   your efforts would have gone -- it would be a bizarre result,

20   it seems to me, that you would -- you would get a substantial

21   contribution that didn't produce any measurable benefit for the

22   benefit of the people you've acted for.

23        MR. ETKIN:  Well, Your Honor, you have to draw the

24   distinction, I believe, between the claims asserted against the

25   nondebtor defendants in the district court and the claims that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    have been filed, individual claims, all 7,000-plus of them,

2    that have been filed in the bankruptcy case.  Again, those

3    7,000 claimants and what they recover in the bankruptcy case,

4    where we do not have a certified class, where we do not have an

5    order of this Court applying Rule 7023, those claimants move

6    forward, at least based upon Your Honor's recent ruling which

7    denied the most recent 7023 application and granted the

8    debtors' application with respect to ADR procedures, they would

9    go ahead individually and be resolved individually in the

10   bankruptcy case, potentially.  So it's a very different --

11            THE COURT:  (Audio interference)  you're not answer --

12   you're not getting my point.  What if they -- the mediation of

13   them was unsuccessful and it went to the court, the bankruptcy

14   court, and the court determined that there was no liability?

15   And so that's why -- I'm not trying to focus on what the actual

16   district court and the actual action pending in San Jose is;

17   I'm talking about this case.

18            So your argument here is you have brought about a

19   benefit for the benefit -- a result for the good of these 7,000

20   people here.  But if all 7,000 of them strike out, then should

21   their lawyers be paid?

22            I understand your point.  You need to use your time as

23   you wish, not --

24            MR. ETKIN:  Well, no, Your Honor, let me address that

25   straight up.  It's Section 330 and Section 503 do not involve

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    payment on a contingency fee basis.

2         THE COURT:  Okay.

3         MR. ETKIN:  This is not a contingency case.  This is

4    measured by virtue of what was done, what was accomplished, not

5    necessarily with the benefit of hindsight, which is what the

6    cases hold in connection with 330.

7         There are probably many situations where, ultimately,

8    unsecured creditors' recovery may hinge on post-confirmation

9    litigation that's brought and the recoveries in

10   post-confirmation litigation, and that may be successful, but

11   it may not.  But you wouldn't hold off on awarding fees under

12   503 or under 330 based upon whether it pans out or it doesn't.

13        And quite frankly, Your Honor, the debtors are

14   offering to mediate individual claims.  I would venture to say

15   that they're not offering to mediate, only to tell each of

16   these claimants that your claims are worth nothing, go home.

17   So it's --

18        THE COURT:  No, I agree with you, Mr. Etkin.  I

19   understand that.  And the debtor has committed, under a

20   proposal, to make offers.  And if even one of those offers is

21   accepted, then my hypothetical fails because somebody's gotten

22   paid something.

23        Go ahead.

24        MR. ETKIN:  Right.

25        THE COURT:  So let's use your time --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. ETKIN:  Your Honor, utilizing the but-for test,
2  the bottom line, really, is that absent what we've accomplished
3  in this case, these 7,000-plus claimants would be guaranteed
4  zero because they would have never had an opportunity to even
5  pursue their claims in the case.  And of course it's not -- as
6  set forth in our papers, it's not just what we accomplished on
7  that score, but it's also given our participation at the
8  disclosure statement and plan process, which ultimately
9  enhanced the treatment of securities claims under the plan.  So
10  again, Your Honor, with respect to your first question, we
11  believe that the answer is yes.

12    But one other aspect of that, Your Honor, is that when
13  you look at a case like Texaco, which we cite, that court held
14  that a substantial contribution was appropriate regardless of
15  whether the efforts were fully successful or not.  And in the
16  American Plumbing case, the contribution can be monetary or
17  nonmonetary and that the benefits should not be narrowly
18  confined to dollars and cents.  So even though we believe that
19  our contribution has tangible benefit and significant benefit,
20  it's not limited to a monetary benefit or a guarantee as to the
21  outcome.

22    Your Honor, as to your question two, we agree that
23  substantial contribution in the case is the standard, and
24  that's the language of 503.  And we would look to the Mirant
25  decision as a prime example of that.  We have also discussed in

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  our motion and the reply how our efforts have benefitted the

2  estate as well.

3  Your Honor, benefitting the estate in the confirmation

4  process is not measured by how compliant you are with the will

5  of the debtors and how the debtors want to see the case pan

6  out.  Each constituency acts and takes positions for the

7  benefit of their stakeholders.  Those positions are hopefully

8  reflected in the final product and, in this case, were

9  reflected in the final product, and the plan was timely

10 confirmed.  The fact that we were consistently on the outside

11 looking in just made our job more difficult, quite frankly.

12 Your Honor, again, on June 5th the Court -- which was

13 one of the confirmation hearing dates -- the Court identified

14 the issues that we had raised, several of the issues that we

15 had raised, as issues of first impression, and that needed to

16 be addressed.  And then, after some argument, the Court

17 directed the parties to mediation.

18 At that June 8th hearing, Your Honor, where you did

19 direct the mediation before Judge Newsome, you referred to

20 these issues as big-ticket items that needed to be mediated and

21 that you wanted Judge Newsome to mediate these issues for the

22 parties, and the sooner the better, and you additionally

23 outlined that you had some concerns over these issues.

24 Well, we took all that to heart.  We engaged in

25 mediation in the midst of a contested confirmation hearing, and

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    we got each and every issue resolved, save one.  And the one

2    issue that we put before the Court ultimately was not an issue

3    that we agreed would jeopardize confirmation, and the Court

4    called balls and strikes with respect to that one issue that

5    remained after the mediation before Judge Newsome.

6         In terms of question three, Your Honor, we don't

7    believe that the outcome of the district court action has any

8    relevance to this motion.  I think I touched upon that already

9    in my earlier remarks.

10        THE COURT:  Well, the question was prompted by the

11   argument from the debtor that you should look to the district

12   court for your compensation, and so that's --

13        MR. ETKIN:  Well, Your Honor, in the district court,

14   we're litigating against nondebtor defendants, and our recovery

15   in the district court will be based upon a recovery from

16   nondebtor defendants.  The claims against the debtor are before

17   Your Honor.  They would never have been before Your Honor but

18   for our efforts during the course of the case.

19        They are claims against the debtor.  They are

20   legislated by the terms of the plan.  The recovery is based

21   upon and governed by the plan provisions, including the

22   improvements that were negotiated with respect to that

23   recovery, and they'll be determined, ultimately, by this Court,

24   subject to any appeals, unless something occurs that we're

25   currently not aware of.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      Your Honor, the claims against the nondebtors will go

2  forward in the district court and will be resolved before the

3  district court.  They have not been enjoined by the Court,

4  despite several efforts to do so, and they are going forward.

5  So there's a rather clear line between the claims against the

6  debtors and the efforts that were put forward during the

7  eighteen months of these cases through the effective date,

8  regarding dealing with the claims, the securities claims

9  against the debtors, and the treatment of those claims,

10  ultimately, under the plan.

11      So what happens with respect to nondebtor parties and

12  recoveries against nondebtor parties, that's what's occurring

13  before the district court, and that's what the district court

14  will evaluate, ultimately.

15      THE COURT:  Has anything happened since we last met?

16  District judge decided anything yet?

17      MR. ETKIN:  Unfortunately, the answer to that is no,

18  Your Honor.

19      THE COURT:  (Audio interference).

20      MR. ETKIN:  We have not gotten any decision --

21      THE COURT:  Wow.  Okay.

22      MR. ETKIN:  -- not from the district court.  And it's

23  been quite some time, but we're still waiting.

24      Your Honor, moving on to your question four.  It's

25  been a while since I've recited the four questions, Your Honor.

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Well, question four was more of -- there's
2    no question mark on number four --
3            MR. ETKIN:  No, I know.
4            THE COURT:  -- it's just a statement.
5            MR. ETKIN:  But I wanted to comment on what I believe
6    is the point that you're making.
7            The solvency of these estates, Your Honor, created the
8    opportunity for 510(b) claimants to recover for the damages
9    that they suffered in connection with their purchase of the
10   debtors' publicly traded securities.  That circumstance, as
11   Your Honor has noted often, is very much the exception and not
12   the rule.  And absent solvency and the fact that 510(b)
13   claimants are in the money, our efforts and the issues would
14   have been quite different, and certainly more limited.
15           But I take your point, Your Honor -- I think -- that
16   for purposes of 503, the fact that it specifically acknowledges
17   equity holders as those entitled to seek a substantial
18   contribution award should mean that stakeholders who are pari
19   passu with equity holder are likewise entitled to seek a
20   substantial contribution award.
21           However, I would point out, Your Honor, that
22   securities claimants are creditors.  Their status is not as an
23   equity holder; that treatment is different under the plan.  And
24   their status as a holder does not determine whether they have a
25   securities claim or not; it's when they purchased during the

PG&E Corporation and Pacific Gas and Electric Company

1    period that's set forth in the claims form that they were

2    required to fill out.

3            So the fact is that our constituency, our creditors,

4    the Code just happens to subordinate those creditor claims for

5    purposes of distribution.  So their rights and their recoveries

6    were very much at stake in these cases, and PERA is obviously

7    one of those creditors.

8            THE COURT:  Okay.  And you're about at the

9    twenty-minute mark, so why don't we reserve your ten minutes

10   for rebuttal, and I'll let Ms. Liou make her --

11           MR. ETKIN:  If I could just make one more point, Your

12   Honor --

13           THE COURT:  Yes, yes, sir.

14           MR. ETKIN:  -- which I think is also important, and I

15   alluded to it earlier.

16           The reorganized debtors' opposition is littered with

17   references to efforts that they claim solely benefitted PERA.

18   In particular, they referenced the initial 7023 motion as a

19   primary example.

20           We addressed that in the briefing.  And obviously our

21   position was that we would've preferred that Rule 7023 apply

22   and be the means to cure the notice issues and the due process

23   violations that the Court determined to exist.  Those

24   violations, in fact, were the primary reason why the initial

25   7023 motion was filed.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    So while the Court acknowledged the merits of the

2  7023 motion, I think you referred to it as a close call at the

3  time, the Court chose the alternative remedy of extending the

4  bar date for securities claims.

5    Either way, Your Honor, left to their own devices,

6  the debtors would have done nothing.  And as for PERA's

7  self-interest, it should be noted that PERA did file a proof of

8  claim prior to the initial bar date.  So PERA did not need the

9  extended bar date to file its claim, but the 7,000-plus

10  claimants who filed proofs of claim by the extended bar date

11  were significantly benefitted by PERA's efforts.

12    THE COURT:  Okay.  Let's leave it at that.  You and

13  Mr. Dubbs will have ten minutes.

14    MR. ETKIN:  Thank you, Your Honor.

15    THE COURT:  Ms. Liou, you have the 30 minutes.

16    MS. LIOU:  Good morning, Your Honor.  Jessica Liou

17  from Weil, Gotshal & Manges on behalf of the reorganized

18  debtors.

19    Your Honor, I'd like to start with the first question

20  and the point that you started with at this hearing because I

21  think it's a very important question.  And it's driven by a

22  desire to understand the common sense basis for why PERA should

23  not be entitled to substantial contribution claim.

24    Now, I think the question that you were getting at is

25  the premise underlying all of the arguments made by Mr. Etkin

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   and PERA and his counsel, is that they've taken a number of

2   actions which benefit these particular classes of securities

3   claimants under the plan.

4          However, they are in the unique situation that

5   distinguishes them from every other case where a substantial

6   contribution claim has been granted, where not a single claim

7   has yet been allowed and determined to be valid in those

8   classes.  And it strikes me as somewhat absurd, and definitely

9   defying common sense, to allow PERA to have a substantial

10  contribution claim on account of actions it's taken to

11  "benefit" this class when it's not clear yet whether the class

12  actually has received a benefit.

13         THE COURT:  Well, but what about my question to Mr.

14  Etkin.  I mean, you're going to -- you have persuaded me to

15  adopt a procedure where you're going to be making offers.  So I

16  presume you're making offers that could be accepted, so

17  everybody who accepts your offer is going to be benefitting,

18  isn't it?

19         MS. LIOU:  Absolutely.  But I think you know as well

20  as anyone that accepting orders through a mediation and

21  compromising your own claim does not give you a substantial

22  contribution claim under the case law.  And we can quote

23  specific cases that say that including your case, Your Honor,

24  in PG&E, I believe where you say "settlement and settlement

25  conferences are part of the fabric of bankruptcy".  I'll also

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    remind you that those procedures were procedures that the

2    debtors' proposed.  And we propose them precisely so that we

3    could move ahead and try to expedite the settlement process.

4          But again, the standard for substantial contribution

5    is one where PERA and its attorneys are held to a very, very

6    heavy burden, an incredibly high standard.  It's substantial

7    contribution, which means that their actions have to be rare,

8    extraordinary.  And the actions that they've taken in these

9    cases are nothing different than what you would expect any

10   creditor to take in a case, such as participating in a

11   disclosure statement process, participating in a plan process,

12   and commenting on a bar date noted for disclosure; and I can go

13   through that in a lot more detail in a minute, Your Honor.

14         I think, Your Honor, just to jump to your question

15   number 2, we completely agree that the standard for determining

16   whether or not there is a substantial contribution claim is

17   taking a look at the benefit to the estate.

18         Our terminology, benefit to the estate as a whole,

19   wasn't even --

20         THE COURT:  But the statute doesn't say benefit of

21   the estate.  It says "substantial contribution".

22         MS. LIOU:  That's right, Your Honor.

23         THE COURT:  Period.  The phrase --

24         MS. LIOU:  That that can be right, how --

25         THE COURT:  -- to the estate isn't there.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MS. LIOU:  I completely understand.

2          THE COURT:  Okay.

3          MS. LIOU:  But as you know, because you've

4   acknowledged this in your decisions as well, dealing with

5   substantial contribution issues, the statute doesn't actually

6   define what substantial contribution means.

7          THE COURT:  Right.

8          MS. LIOU:  And so the caselaw that is developed

9   around that terminology has very consistently held that the

10  appropriate standard is benefit to the estate, and I think

11  you --

12         THE COURT:  Well, but Ms. Liou, your brief -- or Mr.

13  Slack signed it -- but the phrase, as a whole must've been

14  repeated eight times.  But can't there be a benefit to some

15  section, some portion of the estate to still be a contribution?

16  Because if not, then what did Congress mean when it said that

17  substantial contribution claims can be asserted by equity

18  holders.  Well, when do equity holders benefit creditors?  Not

19  often.

20         MS. LIOU:  Well, I think you can always benefit

21  equity holders when you determine that the actions that a party

22  has taken has resulted in either an increase in the residual

23  value available to equity holders or somehow avoided the

24  incurrence of substantial litigation costs, time and delay,

25  that would otherwise reduce the residual value entitled -- that

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    equity holders would otherwise be entitled to.

2           I'll also note that there are cases that do say that

3    to the extent that the actions taken by a creditor benefit just

4    one singular class of similarly situated creditors, then that

5    contribution should be given even lighter weight.  And I think

6    that's an acknowledgement of the fact that when most of the

7    actions taken by a particular creditor are driven by

8    self-interest.  And it's not the motivation that matters, Your

9    Honor, don't mistake me, right, that's not what I am getting

10   after.  It's just that part of the test is, if you're taking

11   actions that you otherwise would have taken to defend your own

12   interests and you're not doing anything out of the ordinary,

13   then you haven't really taken actions that rise to the level of

14   substantial contribution.

15          Your Honor, I do think it is worth looking at the

16   facts here to help answer number two.  Let's look at the

17   arguments that PERA has made.

18          They focused most of their substantial contribution

19   claim on the actions they've taken in connection with the bar

20   date, plan confirmation, and the disclosure statement process.

21   Well, let's look at the bar date process.

22          PERA asserts that they are the direct cause of

23   thousands of securities action claimants being able to file

24   proofs of claim, and receiving due process.  Well, the facts in

25   the record demonstrate otherwise.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    The facts in the record demonstrate, including

2  through the declarations that PERA attached in support of its

3  motion for substantial contribution, that Mr. Dubbin, Mr.

4  Etkin, Mr. Michelson (sic) at their firm, received a copy of

5  the bar date motion in May 20 -- '19, May 2nd, 2019, reviewed

6  it, and actively chose not to file an objection to the bar date

7  motion.  It's like --

8    THE COURT:  You know I've got to ask you -- you were

9  here early in the case, and so was I, and so was Mr.

10  Karotkin -- if PERA had never made the 7023 motion at all, what

11  would have happened to the securities claimants?

12    MS. LIOU:  They would have kept their claims.

13    THE COURT:  That's right.  That's right.  They

14  would've been out.  The door to the bankruptcy court would have

15  been closed because the debtors didn't open it.  Am I to ignore

16  that?

17    MS. LIOU:  No.  I think, Your Honor, it's important

18  to keep in mind that we're talking about actions that have to

19  be the direct -- directly lead to any benefit.  And all I'm

20  saying, Your Honor, is that the direct cause of the benefit to

21  those securities claimants is you.  You decided to deny PERA's

22  7023 motion, which is the cause of the extension and

23  application of the bar date.

24    THE COURT:  There's something --

25    MS. LIOU:  Specifically, with the --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  There's something wrong with this

2    picture, Ms. Liou.  I denied it because I had two unhappy

3    alternatives.  But I would've had no alternative if PERA had

4    never made its motion.  The debtors -- and I don't want to

5    personalize this -- the debtors didn't do one thing to give the

6    securities claimants an opportunity to file a proof of claim;

7    in fact, the reverse.  It said, door's closed.  How can I

8    ignore that?  And how can I ignore the fact that the but-for,

9    and the reason why there are 7,000 folks at the table, is

10   because PERA made a motion that they lost.

11          MS. LIOU:  Your Honor, I want to clarify one thing.

12   I don't think that's --

13          THE COURT:  Okay.

14          MS. LIOU:  -- (audio interference) at all.

15          THE COURT:  Okay.

16          MS. LIOU:  What I meant by that is, look.  There were

17   securities debt claims.  The securities debt claims would have

18   recovered in full to whatever extent they would have been

19   allowed.  They fell within the general unsecured class under

20   the claimant's plan.  By separately breaking them out, we were

21   simply acknowledging that they were a different class of claims

22   that could be treated differently under the plan.

23          But I don't think that there would've been any

24   substantive differences to the treatment.  The fact of the

25   matter is, in a fully solvent case, you would be able to get

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    your claim paid in full, to the extent that it would be

2    determined to be allowed, and those were claims.  All holders

3    of pre-petition claims had to file proofs of claim by the bar

4    date.  Those were holders of pre-petition claims.

5            THE COURT:  Well, they didn't have to file a claim if

6    they were deemed allowed, but the point is that they weren't

7    even given an opportunity to file a claim.  The notice of the

8    original bar date specifically said don't file a claim, right?

9    Don't file a claim.

10           MS. LIOU:  I don't believe that that's what it said,

11   but --

12           Mr. Karotkin?

13           THE COURT:  Well, I don't remember --

14           MR. KAROTKIN:  Your Honor, that's not -- Your Honor,

15   let me just interject.  That's not what it said.  What the

16   initial bar date order said, Your Honor, was that if you had a

17   pure equity claim, a pure equity claim, you're not obligated to

18   file the claim.  It in no way said that people who have, as Mr.

19   Etkin acknowledged, a monetary damage claim based on equity,

20   were not required to file a claim.  And we will note, Your

21   Honor, we believe that notice -- and we've consistently said

22   that, that notice of the original bar date was totally in

23   compliance with due process.  You obviously disagreed.  People

24   were given the opportunity to file claims.

25           And by the way, Your Honor, Mr. Etkin and his

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    colleagues actively objected to your suggestion, actively

2    objected to your suggestion, of an extended bar date and indeed

3    appealed the whole thing, and now they want credit for it.

4            THE COURT:  Okay.  Okay.  Back to Ms. Liou.

5            MS. LIOU:  Yeah, Your Honor, so I think we can move

6    on.  But our only point there was that the record very clearly

7    demonstrates that the application and extension of the bar date

8    to securities claimants was not a direct result of PERA's

9    efforts.  It was in spite of their efforts to oppose that

10   direct notice.

11           Moving onto the disclosure statement, approval, and

12   plan confirmation process, you know, PERA alleges that its

13   objections to the disclosure statement and the Chapter 11 plan

14   resulted in changes to treatment and classification that should

15   be viewed as providing a substantial contribution in these

16   cases because they benefitted securities claimants.  It also

17   asserts that it facilitated the timely confirmation of the plan

18   by resolving a plan objection and otherwise working with the

19   debtors through the court-ordered mediation.  Again, this is

20   not true.  Let's look at the facts.

21           PERA did object to the disclosure statement, and so

22   did 20 other parties.  PERA did object to the plan, and so did

23   27 other parties.  PERA then prosecuted its plan objection down

24   to the wire.  And the fact that PERA then engaged in court-

25   directed mediation to resolve certain of its objections, again,

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    is irrelevant to the determination of substantial contribution

2    claim.

3         If you were to accept, Your Honor, PERA's argument,

4    and extend it to its logical conclusion, then any creditor, any

5    equity holder that objects to approval of a disclosure

6    statement or confirmation of a plan that results in some

7    changes that could be viewed as a benefit for some folks, and

8    then also decides to resolve a portion of its objection, could

9    be entitled to a substantial contribution claim.  And I think

10   it's very clear that this is not the law.

11        In fact, as I mentioned before in PG&E, you mentioned

12   that settlement and settlement conferences are part of the

13   fabric of bankruptcy.  A creditor cannot establish a

14   substantial contribution claim for suggesting or supporting a

15   court-supervised settlement conference; that's clear.  Those

16   are your words.

17        In American Plumbing, the Court there noted that

18   expected or routine activities in a Chapter 11 case do not

19   constitute substantial contribution.  Expected or routine

20   activities in the guise of extensive or active participation

21   also cannot substantiate substantial contribution.  Examples of

22   these activities include proposing agreeable terms through

23   negotiation and commenting on the disclosure statement and the

24   plan of reorganization.  This is also consistent with the

25   holding in the Standard Metals case, which we have included a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   summary of in our brief as well.

2          And there's a reason that the law provides these

3   constraints, Your Honor.  To hold otherwise effectively opens

4   the floodgates for potential claims, substantial contribution

5   claims, from basically 47 other parties who also participated

6   in the disclosure statement and plan confirmation process.

7          Numerous courts agree that the integrity of 503(b)

8   can only be maintained by strictly limiting compensation to

9   extraordinary creditor actions, which then lead to a

10  significant and tangible benefit.  What can be more ordinary

11  and expected in a Chapter 11 process than creditors

12  participating in the plan process and the disclosure statement

13  of process, to try to improve upon the treatment of claims in

14  their own class or their own claims, and whatever consider they

15  are to receive under a plan.  I'll note also that any benefits

16  that other securities claimants may have received were only

17  incidental to the benefits that PERA obtained by prosecuting

18  its interest in its objection.

19          THE COURT:  I'm sorry, would you just repeat that

20  again please?  I just did not -- I'm trying hear you.

21          MS. LIOU:  Sure, Your Honor.  That any benefits that

22  other securities claimants may have received were only

23  incidental to the benefits that PERA obtained by prosecuting

24  its interest in its objection.  And I think that you, as well

25  as -- you will know better than anyone else that there are

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   cases that note that ancillary benefits, again, do not rise to

2   the level of substantial contribution.

3           Your Honor, we've mentioned this before, but I think

4   it bears repeating again, that this is a very high standard.

5   And if you look at the circumstance where courts have actually

6   found substantial contribution, they basically fall in one of

7   three main buckets:  You have creditors who have acted as plan

8   proponents, creditors who have provided exit financing or were

9   instrumental in obtaining third-party sources of financing on

10  which a plan was dependent, or a creditor who has significantly

11  compromised its own claim or litigation rights to increase the

12  funds available for distribution to other stakeholders, and

13  that hasn't happened.

14          I know PERA likes to measure itself against a

15  subrogation -- subrogation claimants, the tort claimants, the

16  noteholder claimants, and also the public entities in these

17  cases, arguing that their efforts are tantamount to the kinds

18  of compromises that those parties made in this case.  That

19  cannot be further from the truth.

20          Under those settlements, as you know, Your Honor, the

21  subrogation RSA for example, twenty billion dollars of claims

22  settled and liquidated at eleven billion dollars; an

23  eight-billion-dollar discount agreed to by those holders.  That

24  settlement also dispensed with potentially costly and lengthy

25  estimation proceedings, saving the estate significant money.

PG&E Corporation and Pacific Gas and Electric Company

1    Same thing with the tort claims RSA.  Over 36 billion

2    dollars of asserted claims, settled for approximately 13.5

3    billion in value.  The resolution included a stay of the

4    estimation proceedings, and a settlement of the Tubbs trials,

5    which were proceeding in state court.  The noteholder RSA

6    settled the treatment of pre-petition-funded debt, make-whole

7    premium entitlement, and other issues, which implicated over

8    five billion dollars of potential claims.

9    THE COURT:  Well, but none of them made 503 motions.

10   None of those three came in with 503 motions.

11   MS. LIOU:  Right.

12   THE COURT:  What would you have done if they had?

13   MS. LIOU:  Yeah, that's right, Your Honor.  And in

14   addition, that RSA reduced PG&E's long-term borrowing costs by

15   a billion dollars.  It also provided certainty for over eighty

16   percent of the debtors' exit financing needed to emerge from

17   the Chapter 11 cases.  It settled multiple pending litigations,

18   including the opposition to the exit financing motion, the

19   reconsideration of the tort claimants' RSA, and subrogation

20   claimants' RSA filed by the noteholders.

21   Same thing with the public entity settlement, where

22   billions of dollars of claims were settled for one billion

23   dollars avoiding the need for another costly and potentially

24   lengthy --

25   THE COURT:  Yeah, but again, you keep making a list

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    of things of people who didn't file 503 motions.  Therefore,

2    why are they relevant to whether PERA should get one or not?

3    They were --

4              MS. LIOU:  Well, the --

5              THE COURT:  -- major developments, there's no

6    question, they were major developments.

7              MS. LIOU:  Yes.

8              THE COURT:  But no one can --

9              MS. LIOU:  Well, I am --

10             THE COURT:  -- no one cannot be paid for them.

11             MS. LIOU:  -- I'm talking -- yeah.

12             THE COURT:  Huh?  What?

13             MS. LIOU:  Your Honor, sorry, I did not mean to

14   interrupt.

15             THE COURT:  It's all right.  Okay.

16             MS. LIOU:  The only reason I raised them is because

17   PERA is drawing a comparison of their action to the actions

18   taken by those other parties and arguing that because those

19   other parties agreed to a consensual resolution with PG&E, and

20   PG&E was willing, under those consensual arrangements, to pay

21   some portion of the professional fees and costs and expenses

22   incurred by those parties, that somehow should act as a

23   transitive principle in these circumstances to force PG&E to

24   pay for the costs and associated expenses incurred by PERA, and

25   that's just not true, right?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    It all ties back to the fact that under the caselaw,

2  PERA hasn't done anything that rises to the level where

3  substantial contributions would be found.  It has not acted as

4  a plan proponent.  It has not provided financing or funding for

5  these plans.  It has not chosen to settle and liquidate its own

6  claims or give up litigation causes of action that somehow

7  provide additional value distributable to other securities

8  claimants, or even residual value available to the equity

9  holders.

10    Your Honor, I think the last point that I would like

11  to make in this regard is just the observation that you made in

12  PG&E, which is in a complex case and a difficult case like this

13  one, where so many parties made so many contributions, it is

14  difficult to single out the contributions of any particular

15  party as substantial.  And that is true, absolutely true, in

16  this case, as well.

17    THE COURT:  And you're talking about the Palo Alto

18  decision which was from day one, Palo Alto was in on its own,

19  and never spoke for anyone else.  So you at least concede that

20  that's a fact difference, wouldn't you?

21    MS. LIOU:  However, I do think that Palo Alto did

22  make the argument that its actions not only benefitted itself,

23  but benefitted other people, so --

24    THE COURT:  Well, I don't remember that, i.e., it may

25  be that that's happened, I just don't remember that.  That's

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    okay, go ahead.  I mean, they were different.  They were

2    certainly different.

3           But that's the -- am I correct, Ms. Liou, that it was

4    my decision in Palo Alto PG&E is the only thing you're

5    referring to, right?

6           MS. LIOU:  Yeah, that --

7           THE COURT:  You're not --

8           MS. LIOU:  -- that's correct.

9           THE COURT:  I didn't make some other decision --

10          MS. LIOU:  Your decision in Palo Alto PG&E, I'm

11   sorry, Your Honor, yes.

12          THE COURT:  Right.  No, that's right.  I thought so

13   when it was mentioned in the briefs, and I thought I remembered

14   that -- I would've remembered anybody else that came up, but I

15   don't think it did.  Okay.  I got it.

16          But you have more time if you want.  You don't have

17   to use it but --

18          MS. LIOU:  Yeah.  Your Honor, I think it probably

19   makes sense to address your questions 3 and 4 very briefly, and

20   then see what else Mr. Etkin wants to add.

21          So I think your question number 3, How does the

22   outcome of the district court action -- and I'll paraphrase --

23   have any relevance to whether plaintiffs can recover anything

24   from the reorganized debtors for substantial contribution to

25   these cases.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      Similar to the point that we started with, our view

2  is that a lot of the actions that PERA is taking are, PERA

3  admits, actions that it takes as its fiduciary on behalf of its

4  client.  And we expect that as the district court proceedings

5  continue to proceed, and if PERA were to come to the point

6  where there is a judgment in their favor, they would be

7  requesting fees and expenses, and there is the risk that there

8  would be double-dipping there.

9      THE COURT:  Well, why would there be?  Why would

10  there be?  They can't -- I doubt that Mr. Etkin is going to go

11  in front of a district judge, in a case with no debtor

12  defendants, and argue that he helped things by a claims bar

13  date or plan confirmation or all of the things that you have

14  faulted him for here because he'd get laughed out of court.  To

15  say that the class that are involved in -- excuse me, that the

16  defendants who are not debtors should pay for things that have

17  to do with this case.

18      In other words, what I -- and I'm not saying it very

19  well -- to me, the bankruptcy case that happened here is quite

20  different from whatever will happen there, and they're two

21  different arenas and two different measures of value, right?  I

22  mean, how do you get them --

23      MS. LIOU:  Well --

24      THE COURT:  -- how do you merge the two concepts?

25      MS. LIOU:  Yeah, I'm not so sure about that, Your

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Honor, because I think that when it comes time for an

2    application for perspective for the payment of fees and

3    expenses, I haven't heard anything from Mr. Etkin, or PERA's

4    counsel, indicating that they would not seek any kind of

5    compensation in connection with the district court actions, on

6    account of any of the work that they're doing that could be

7    related to the Chapter 11 case.

8          THE COURT:  Well, I mean but do you think that they

9    could make the argument with a straight face that somehow they

10   should be paid in an action against officers and directors for

11   things that they did, from their point of view, to improve the

12   outcome for the participants in this case?  I mean, I guess

13   they could make the argument --

14         MS. LIOU:  Yeah, I --

15         THE COURT:  -- but I don't know that they've

16   committed to making it.

17         MS. LIOU:  No.  I know it's not an argument I would

18   make, but I can't --

19         THE COURT:  Okay.

20         MS. LIOU:  -- speak for PERA.

21         THE COURT:  Okay.  All right.  Anything else?

22         MS. LIOU:  I don't think so, Your Honor.

23         THE COURT:  Okay.

24         MS. LIOU:  I think on your question/statement for

25   number 4, I don't think that there's any disagreement from us,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    any particular observation.

2            THE COURT:  Yeah, well, what struck me as (audio

3    interference) to so many of the decisions are benefit to impact

4    on creditors.  And sure, it's easy.  It's easy in a case where

5    solvency is not an issue -- I mean, where insolvency is given,

6    that if you benefitted somebody else, that might be

7    compensable, but it doesn't seem to fit the same analysis in a

8    solvent estate.  That didn't -- you made the point on that, and

9    I don't -- let's leave it at that.  Thank you very much, Ms.

10   Liou.

11           MR. KAROTKIN:  Your Honor, can I mention --

12           THE COURT:  Mr. --

13           MR. KAROTKIN:  -- just two --

14           THE COURT:  Well --

15           MR. KAROTKIN:  -- things?

16           THE COURT:  -- you can use a little of your

17   colleague's time.

18           MR. KAROTKIN:  Okay.  Thank you.  I'll be brief.

19           A couple of things.  Number one, for Mr. Etkin to

20   suggest that they were instrumental in achieving the June 30th

21   confirmation decision and that but for their mediation, that

22   would've never occurred, that's preposterous.  You made it

23   abundantly clear, Your Honor, throughout the case, and

24   particularly at the confirmation hearing and, Your Honor, with

25   respect to their objection, you were not going to let that hold

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    up the June 30th date.  They don't deserve any credit for that,

2    they're not entitled to --

3            THE COURT:  But they haven't held it up either,

4    right?  In other words, if they are successful on their

5    appeal --

6            MR. KAROTKIN:  They were not --

7            THE COURT:  -- it doesn't affect --

8            MR. KAROTKIN:  -- they would have never held it up.

9    They would have never held it up.

10           THE COURT:  Right.

11           MR. KAROTKIN:  Impossible.

12           THE COURT:  Okay.

13           MR. KAROTKIN:  Okay?  Moreover, if you look at what

14   they did throughout the case, it's basically a string of losing

15   efforts.  They opposed your bar date notice.  They lost 723

16   (sic).  They lost the renewed 723.  They lost the ADR.  Their

17   confirmation objection was effectively just resolved, like

18   anything else that's resolved.  As Ms. Liou said, if you

19   resolve a confirmation objection, you're entitled to a

20   substantial contribution claim?  I don't think so.

21           But let me suggest something, Your Honor.  If you're

22   inclined to consider this, and I don't think there's any basis

23   for it, I would suggest that you defer consideration of this

24   motion until we see what happens in the case with respect to

25   the claims that are filed, with respect to the district court

PG&E Corporation and Pacific Gas and Electric Company

1    action in the motion to dismiss, which addresses the legal

2    history --

3              THE COURT:  Well, I may have retired by then.

4              MR. KAROTKIN:  I will certainly be retired by then,

5    but without prejudice, let's wait a little while to see what

6    happens.

7              THE COURT:  Well, but again, Mr. Karotkin --

8              MR. KAROTKIN:  We don't have to do this.

9              THE COURT:  Mr. Karotkin, what if tomorrow, the

10   district court granted the motion to dismiss the district court

11   action, out --

12             MR. KAROTKIN:  Then --

13             THE COURT:  -- threw it out, would that -- what would

14   happen to the argument that PERA's making in this case, for

15   their contribution here?

16             MR. KAROTKIN:  Your Honor, it would certainly address

17   the issue you raised at the beginning of the case as to the

18   validity of these claims.  It would certainly address that.

19   And that's a good idea.  Let's wait a little while to see

20   what --

21             THE COURT:  But what would happen --

22             MR. KAROTKIN:  -- happens --

23             THE COURT:  But Mr. Karotkin, what would happen to

24   the ADR procedure, and the offer and acceptance proposal that

25   you persuaded me to go with?  Does that mean it's off the

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    table?

2            MR. KAROTKIN:  It wouldn't be off the table, but it

3    would certainly limit things before Your Honor and limit the

4    validity of these claims in a big way, in a big way.  And what

5    is the harm of waiting a few months to see what happens without

6    prejudice --

7            THE COURT:  Well --

8            MR. KAROTKIN:  -- to the renewal of the motion?

9            THE COURT:  Mr. Karotkin, I'm not in the business of

10   faulting and criticizing my fellow judges, even if they are

11   Article III judges, or even if they're not Article III judges,

12   but when a motion to dismiss has been under advisement for ten

13   months, I'm not very sanguine about taking a little bit longer

14   because it might be ten more months, or twenty more months.  I

15   have no control over that.

16           MR. KAROTKIN:  It might, and -- it might, Your Honor,

17   and it might not.

18           THE COURT:  Yeah, right.

19           MR. KAROTKIN:  And to defer this for some period of

20   time -- look, it can always be revisited.

21           THE COURT:  Okay.  Mr. Etkin, you have closer for ten

22   minutes, or unless you want Mr. Dubbs to join you.  Oh, wait,

23   you've got to turn your mic back on Santa Claus.  There you go.

24   No, Mr. Etkin, you turned your camera off, and left your mic

25   off, so -- all right.  There's your -- now, turn your mic --

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    there you go.

2         Now, which of you is going to make the closing

3    argument?

4         MR. ETKIN:  I'll start us off, Your Honor, and if Mr.

5    Dubbs want to add anything, I'm sure he won't be bashful.

6         But some of the things I just heard, Your Honor, are,

7    frankly, downright offensive.  I don't think we ever took the

8    position that but for our efforts, the plan wouldn't have been

9    confirmed.  That's not the point we've raised at all. Mr.

10   Karotkin is prone to hyperbole, but that's a little over the

11   top.

12        We took the position that we helped in the process.

13   We aided the process.  We raised issues that the debtor

14   would've ignored as it relates to 7,000-plus claimants, not

15   just a few people, stragglers who came in, but 7,000-plus

16   claimants who asserted in excess of six billion dollars' worth

17   of claims.  That's a significant constituency in anybody's

18   case.

19        And not like the few cross-section of bondholders

20   from the case that Ms. Liou cited, where the efforts also cost

21   unsecured creditors some recovery.  That did not happen here.

22   As I said, Your Honor, before, unsecured creditors, fire

23   victims, subrogation claimants, it didn't cost them a dime, and

24   wouldn't cost them a dime with respect to the substantial

25   contribution award that we're seeking.

eScribers
of 68 | operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corporation and Pacific Gas and Electric Company

1              And Your Honor, the idea of now relitigating the

2    issues with respect to the original 7023 motion, that's

3    revisionist history at its worst.  Your Honor made a decision.

4    Your Honor has indicated that while we did not achieve 7023

5    recognition, the extended bar date was the alternative, as the

6    Court pointed out; that you chose to remedy the due process and

7    notice violations that the Court found.  To relitigate that

8    now, is just not appropriate.  The law is what the law is.

9              THE COURT:  What do you think -- wait a minute.

10             MR. ETKIN:  The case --

11             THE COURT:  Wait a minute, Mr. Etkin.

12             MR. ETKIN:  The determination was what it was.

13             THE COURT:  Mr. Etkin --

14             MR. ETKIN:  I'm sorry.

15             THE COURT:  -- what do you think -- no, I -- what do

16   you think would've happened if you had never filed your

17   original 7023 motion?

18             MR. ETKIN:  7,000-plus claimants would've been out of

19   luck.

20             THE COURT:  But what would've happened to them, under

21   the plan?  In other words, leave aside --

22             MR. ETKIN:  Under the plan, they would have gotten --

23             THE COURT:  -- what I am asking you to answer is, if

24   I accept the argument that if you had not filed the original

25   motion, the debtor wouldn't have sought a new bar date, so what

PG&E Corporation and Pacific Gas and Electric Company

1    would've been the fate of all of the class -- the three

2    classes, both bondholders, and equity holders?  What would've

3    been their fate?

4         MR. ETKIN:  They would not -- their fates would have

5    been that they would've been disenfranchised in the case

6    because they would not have filed proofs of claim by the

7    original bar date.  And again, I'm talking about securities --

8         THE COURT:  What would they have been --

9         MR. ETKIN:  -- claimants.

10        THE COURT:  -- would their debts have been

11   discharged?

12        MR. ETKIN:  Well, of course their debts would've been

13   discharged, Your Honor.

14        THE COURT:  Well, would they?  Would they?

15        MR. ETKIN:  Unless somebody came in down the road and

16   made the argument that we made that they were denied

17   constitutionally directed due process.

18        THE COURT:  No, let's break the -- let's forget

19   510(b), the statutory subordination, and recognize that the

20   universe of people that you are speaking for are either

21   bondholders or shareholders.  So what would've happened to a

22   bondholder who claims to have been defrauded, or had been an

23   equity holder who claims to have been defrauded, if there had

24   never been your motion, and therefore no extended bar date?

25   Would the debts be discharged?  Would they be out there free to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    be pursued now, post-bankruptcy as not be affected by the plan?

2              MR. ETKIN:  That would be -- Your Honor, ultimately

3    that would be premised on whether they decided to take

4    affirmative action on their own, having never received notice

5    of the bar date as it relates to their securities claims, but

6    to the extent that they're holders, Your Honor, of equity, or

7    holders of bonds, those claims would not have been impacted.

8    It's solely the securities claims that would have been impacted

9    because without a proof of claim filed in connection with the

10   securities claim, whether by virtue of being a holder or not

11   being a holder, is not relevant to the determination of whether

12   they purchased during the class period, so --

13             THE COURT:  Right, it's whether they suffered,

14   whether they were defrauded, to use the term generally; not

15   whether they were a bondholder, or a shareholder, but whether

16   they were defrauded, right?

17             MR. ETKIN:  Whether they were victimized by a

18   violation of the securities law, Your Honor.

19             THE COURT:  Okay.  So if one of those 7,000 people

20   never knew about the bar date because they never got served,

21   and your motion and the follow-up claims bar date had never

22   happened, you believe those people, whether they were equity

23   holders or bondholders, they would be out and discharged?

24             MR. ETKIN:  I believe that they would be, unless they

25   came back in front of Your Honor and litigated the very issue

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    that we litigated in (audio interference).

2           THE COURT:  Well, no, I understand but that's another

3    hypothetical.  What your point is that the debtors didn't do

4    anything except be reactive to your motion, and that even

5    though you lost the motion, it led to the debtor doing

6    something that facilitated 7,000 folks getting to file claims.

7    Isn't that your theory?

8           MR. ETKIN:  That's not a theory, Your Honor, that's a

9    fact.

10          THE COURT:  Okay.  Well, okay.

11          MR. ETKIN:  And Your Honor, the alternative remedy

12   that the Court fashioned was a remedy to deal with the issues

13   that we brought to light in connection with the 7023 motion.

14   We may not have been successful in convincing the Court at the

15   time to employ a Bankruptcy Rule 7023 --

16          THE COURT:  Right.  Right.

17          MR. ETKIN:  -- but the bottom line, as the Court has

18   previously recognized, was that the bar date was extended, and

19   these folks got the opportunity to file claims.  Without that

20   opportunity, they would've had nothing, and they wouldn't have

21   been able to proceed, absent some kind of effort

22   post-confirmation, claiming that they're not bound by the bar

23   date.

24          THE COURT:  Well, okay.

25          MR. ETKIN:  Okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  But I mean that, again, isn't what we're

2    talking about.  If somebody beyond the first 7,000 shows up

3    tomorrow and says I want in, that -- we'll deal with that

4    later.

5          MR. ETKIN:  Well --

6          THE COURT:  You're speaking here on behalf of the

7    benefit of your efforts that led to those 7,000 folks getting

8    invited into file their claims.  Okay.

9          MR. ETKIN:  That's correct, Your Honor, and then

10   enhancing their potential recovery.  And the idea of sitting

11   around -- I have never -- I've never seen, although the debtor

12   argues that 330 is applicable, I've never seen a situation

13   where folks were told that they should wait to see the outcome

14   of litigation or outcome of claims before you can evaluate

15   whether there was benefit bestowed in connection with the

16   efforts.

17          As I said previously, Your Honor, that's measured at

18   the time that the services were rendered, according to the

19   debtors' own theory in their papers.  That's not --

20          THE COURT:  Well, that's certainly a very fundamental

21   concept that's well-established in Section 330.  And listen, I

22   used to be a debtors' lawyer, and I lost a lot of motions for

23   relief from stay, but I still thought I could get paid for

24   making good faith motions to make them.

25          But the point is that on the other hand, wouldn't you

PG&E Corporation and Pacific Gas and Electric Company

1    agree that if the district court tossed the entire action out

2    tomorrow, it wouldn't be good news for your side, even in this

3    503 context, would it?

4            MR. ETKIN:  Your Honor, I don't know how much of an

5    impact it would have in a 503 context, but I can certainly tell

6    you that it would not be welcome news, but that's what

7    appellate courts are for, Your Honor.

8            THE COURT:  Right.  No, I understand.

9            MR. ETKIN:  And it wouldn't be the first time that a

10   securities complaint was dismissed with leave to replead, and

11   then you're back in the game again.

12           So a lot of different things could happen.  There are

13   several different hypotheticals.  We're dealing with the here

14   and now and what was accomplished in these cases.  And the

15   parade of losses that Mr. Karotkin seems to like to talk

16   about -- several of which are not even involved in the 503

17   application because they occurred subsequent to the -- to the

18   period reflected by the 503 application -- but we did succeed

19   with respect to the 105 injunction, we did succeed with respect

20   to the derivative action.

21           I would say that we did succeed with respect to the

22   7023 motion, in terms of preventing a large swathe of claimants

23   from being disenfranchised in this case, and we took that

24   forward through confirmation.  The treatment was enhanced.  The

25   issues, which the Court itself characterized as unique, were

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    resolved, were mediated -- save one, which the Court ultimately

2    decided -- and did not impact on confirmation.

3         Your Honor, I think that the efforts and the results

4    are self-evident, and the idea that Ms. Liou is talking about

5    double-dipping before the district court -- out of one side of

6    her mouth is the fact that there's a risk of that; out of the

7    other side of her mouth is that she can't speak for PERA, but

8    she chose to anyway, in terms of what we would do.

9         I'd prefer to think, Your Honor, that to the extent

10   that there was, as there should be in our case, a 503 -- the

11   granting of the 503 application, that that would -- that

12   whatever fees were awarded, at the very least, would dilute

13   less the recoveries of these claimants down the road.  But

14   there would be no double-dipping, and the idea that --

15        THE COURT:  Well, but what --

16        MR. ETKIN:  -- that's even suggested is offensive,

17   Your Honor.

18        THE COURT:  What you're saying is that of you ever

19   get to stand in front of the district court in San Jose to get

20   paid, you're not going to tell the district judge you did a

21   great job in getting the disclosure statement straightened out

22   or the claims bar date extended in the bankruptcy court.  I

23   presume you wouldn't do that.

24        Okay.  Anything else?  Because we're just about at

25   our agreed time.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. DUBBS:  Your Honor, if I may, just a point of

2     personal privilege.

3          THE COURT:  Yes, sir, Mr. Dubbs.  If you could state

4     it for the record.  I need your name on the record.

5          MR. DUBBS:  Yes, Your Honor, Thomas Dubbs for PERA.

6          Just on the issue of double billing, we have separate

7     accounting for ours between the bankruptcy case and the

8     district court case.  So the odds of any time being recorded,

9     let alone being submitted to Your Honor that was really

10    district court case or vice a versa, is highly unlikely, and I

11    think Your Honor should appreciate that the odds of me going

12    before a district court and having time entries that say

13    discussion with Judge Newsome about 510(b) would be very-well

14    received by the district court.

15         Beyond that, on the point of the discharge or not.

16    In addition to the discharge, you have a very broad plan

17    injunction.  So even if there wasn't a technical discharge,

18    there would be a preclusion of any other action, assuming that

19    the plan injunction was similar to the one that was finally

20    entered by the Court.

21         And finally, at this point, one should keep in mind

22    that on the district court side, number one, there are

23    different policy choices that have been made.  And one of the

24    policy choices that have been made is that if we prevail or get

25    a settlement in the district court, our fees will be based upon

of 68

PG&E Corporation and Pacific Gas and Electric Company

1    at least in the Ninth Circuit, a presumptive twenty-five

2    percent of whatever the pot is.  They're not based upon our

3    hourly rates, which is the standard here.

4            So what's at stake here, and the risk-reward, even in

5    the event of a loss there, it's different because the value of

6    a win there is worth more.

7            And in any event, the district court has before it

8    issues dealing with the duties and liabilities of the directors

9    and officers, and the duties and liabilities of the

10   underwriters, and yes, it's intertwined with what's before Your

11   Honor, but it is separate at the same time.

12           So even if that case went away, it depends upon how

13   it went away, and when it went away, and I doubt it's going to

14   go away soon.  Thank you for your time.  And again, I apologize

15   (audio interference) --

16           THE COURT:  And I'm taking my earphones off because I

17   don't have to hear you anymore, because I'm not going to -- I

18   don't need any more argument.

19           I want to thank you, Ms. Liou, Mr. Karotkin, Mr.

20   Dubbs, Mr. Etkin, for your argument and presentation.  It will

21   come as no surprise to you, I'm going to take the matter under

22   advisement and do my best to do it fairly quickly, but no

23   promises.

24           And so with that, I'll wish you all happy holidays,

25   and stay well, and conclude the hearing.  Thank you very much.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. DUBBS:  Thank you.

2          MR. KAROTKIN:  Likewise, Your Honor.

3          MR. ETKIN:  Thank you.

4          MR. KAROTKIN:  Have a good holiday.

5      (Whereupon these proceedings were concluded)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

# C E R T I F I C A T I O N

I, Colin Richilano, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

/s/ COLIN RICHILANO

eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020

Date:   December 16, 2020

(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**able (4)**
6:22;28:23;30:25;
50:21
**absent (1)**
18:2;22:12;50:21
**Absolutely (2)**
25:19;38:15
**absurd (1)**
25:8
**abundantly (1)**
42:23
**accept (2)**
33:3;47:24
**acceptance (1)**
44:24
**accepted (2)**
17:21;25:16
**accepting (1)**
25:20
**accepts (1)**
25:17
**accomplished (5)**
12:19;17:4;18:2,6;
52:14
**according (1)**
51:18
**account (2)**
25:10;41:6
**accounted (2)**
5:25;8:10
**accounting (1)**
54:7
**achieve (1)**
47:4
**achieving (1)**
42:20
**acknowledged (3)**
24:1;27:4;31:19
**acknowledgement (1)**
28:6
**acknowledges (1)**
22:16
**acknowledging (1)**
30:21
**act (1)**
37:22
**acted (3)**
15:22;35:7;38:3
**acting (1)**
12:10
**action (15)**
14:4,16;16:16;20:7;
28:23;37:17;38:6;
39:22;41:10;44:1,11;
49:4;52:1,20;54:18
**actions (18)**
14:5;25:2,10;26:7,8;
27:21;28:3,7,11,13,19;
29:18;34:9;37:17;
38:22;40:2,3;41:5

**active (1)**
33:20
**actively (3)**
29:6;32:1,1
**activities (3)**
33:18,20,22
**acts (1)**
19:6
**actual (2)**
16:15,16
**actually (6)**
11:3;12:3,12;25:12;
27:5;35:5
**add (2)**
39:20;46:5
**addition (2)**
36:14;54:16
**additional (1)**
38:7
**additionally (1)**
19:22
**address (4)**
16:24;39:19;44:16,
18
**addressed (2)**
19:16;23:20
**addresses (1)**
44:1
**admits (1)**
40:3
**adopt (1)**
25:15
**ADR (3)**
16:8;43:16;44:24
**advised (1)**
12:23
**advisement (2)**
45:12;55:22
**advocacy (1)**
13:11
**affect (1)**
43:7
**affected (1)**
49:1
**affirmative (1)**
49:4
**again (19)**
9:14,15,17,17;16:2;
18:10;19:12;26:4;
32:19,25;34:20;35:1,4;
36:25;44:7;48:7;51:1;
52:11;55:14
**against (10)**
15:24;20:14,16,19;
21:1,5,9,12;35:14;
41:10
**agree (7)**
15:7,8;17:18;18:22;
26:15;34:7;52:1
**agreeable (1)**
33:22
**agreed (4)**
20:3;35:23;37:19;

53:25
**ahead (6)**
7:4,13;16:9;17:23;
26:3;39:1
**aided (1)**
46:13
**alleges (1)**
32:12
**allow (1)**
25:9
**allowed (4)**
25:7;30:19;31:2,6
**alluded (1)**
23:15
**alone (1)**
54:9
**alternative (4)**
24:3;30:3;47:5;
50:11
**alternatives (1)**
30:3
**although (1)**
51:11
**Alto (5)**
38:17,18,21;39:4,10
**always (2)**
27:20;45:20
**American (2)**
18:16;33:17
**analysis (2)**
15:9;42:7
**ancillary (1)**
35:1
**announcement (1)**
5:18
**anymore (1)**
55:17
**apologize (1)**
55:14
**apparent (1)**
12:6
**appeal (1)**
43:5
**appealed (1)**
32:3
**appeals (1)**
20:24
**appear (2)**
7:5
**appearance (1)**
5:13
**appearing (1)**
6:6
**appears (1)**
13:13
**appellate (1)**
52:7
**applicable (1)**
51:12
**application (10)**
11:24;13:25;16:7,8;
29:23;32:7;41:2;52:17,
18;53:11

**applications (1)**
15:7
**applied (1)**
15:7
**apply (1)**
23:21
**applying (1)**
16:5
**appreciate (3)**
10:11;11:4;54:11
**appropriate (3)**
18:14;27:10;47:8
**approval (2)**
32:11;33:5
**approximately (1)**
36:2
**arenas (1)**
40:21
**argue (4)**
8:9;11:12;15:10;
40:12
**argues (1)**
51:12
**arguing (2)**
35:17;37:18
**argument (17)**
8:13;10:17;14:20;
16:18;19:16;20:11;
33:3;38:22;41:9,13,17;
44:14;46:3;47:24;
48:16;55:18,20
**arguments (3)**
11:20;24:25;28:17
**around (2)**
27:9;51:11
**arrangements (1)**
37:20
**Article (2)**
45:11,11
**aside (2)**
15:17;47:21
**aspect (1)**
18:12
**asserted (4)**
15:24;27:17;36:2;
46:16
**asserts (2)**
28:22;32:17
**assessing (1)**
15:5
**associated (1)**
37:24
**assume (1)**
11:11
**assuming (1)**
54:18
**attached (1)**
29:2
**attachment (1)**
7:3
**attempts (1)**
13:8
**attorneys (1)**

**applications (1)** ... [continued]
26:5
**audience (2)**
7:22;9:5
**audio (7)**
11:2;16:11;21:19;
30:14;42:2;50:1;55:15
**available (3)**
27:23;35:12;38:8
**avoided (1)**
27:23
**avoiding (1)**
36:23
**award (3)**
14:21;22:18,20;
46:25
**awarded (2)**
15:15;53:12
**awarding (1)**
17:11
**aware (1)**
20:25
**away (4)**
55:12,13,13,14

## B

**back (6)**
7:21;32:4;38:1;
45:23;49:25;52:11
**balls (1)**
20:4
**Bankruptcy (13)**
15:3,10;16:2,3,10,
13;25:25;29:14;33:13;
40:19;50:15;53:22;
54:7
**bar (28)**
24:4,8,9,10;26:12;
28:19,21;29:5,6,23;
31:3,8,16,22;32:2,7;
40:12;43:15;47:5,25;
48:7,24;49:5,20,21;
50:18,22;53:22
**based (7)**
16:6;17:12;20:15,20;
31:19;54:25;55:2
**bashful (1)**
46:5
**basically (3)**
34:5;35:6;43:14
**basis (5)**
6:25;7:10;17:1;
24:22;43:22
**bears (1)**
35:4
**become (1)**
14:23
**beginning (1)**
44:17
**behalf (5)**
5:16;7:6;24:17;40:3;
51:6
**behind (1)**

Case: 19-30088    Doc# 9822    Filed: 12/16/20    Entered: 12/16/20 16:18:22    Page 58
of 68

6:13
**benefit (27)**
15:21,22;16:19,19;
17:5;18:19,19,20;19:7;
25:2,11,12;26:17,18,
20;27:10,14,18,20;
28:3;29:19,20;33:7;
34:10;42:3;51:7,15
**benefits (6)**
18:17;34:15,17,21,
23;35:1
**benefitted (7)**
19:1;23:17;24:11;
32:16;38:22,23;42:6
**benefitting (2)**
19:3;25:17
**Benvenutti (1)**
5:15
**best (3)**
6:14;12:3;55:22
**bestowed (1)**
51:15
**better (2)**
19:22;34:25
**beyond (2)**
51:2;54:15
**big (2)**
45:4,4
**big-ticket (1)**
19:20
**billing (2)**
6:23;54:6
**billion (8)**
35:21,22;36:1,3,8,15,
22;46:16
**billions (1)**
36:22
**bit (2)**
10:20;45:13
**bizarre (1)**
15:19
**bondholder (2)**
48:22;49:15
**bondholders (4)**
46:19;48:2,21;49:23
**bonds (1)**
49:7
**borrowing (1)**
36:14
**both (2)**
10:19;48:2
**bottom (2)**
18:2;50:17
**bound (1)**
50:22
**break (1)**
48:18
**breaking (1)**
30:20
**brief (3)**
27:12;34:1;42:18
**briefing (1)**
23:20

**briefly (1)**
39:19
**briefs (1)**
39:13
**bring (5)**
5:7;6:7;8:8,16;9:2
**broad (1)**
54:16
**brought (3)**
16:18;17:9;50:13
**buckets (1)**
35:7
**burden (1)**
26:6
**business (1)**
45:9
**but-for (2)**
18:1;30:8
**Bye (1)**
8:5

**C**

**calendar (1)**
8:7
**CALIFORNIA (1)**
5:1
**Call (7)**
5:3;19;6:4,7,10;10:9;
24:2
**called (1)**
20:4
**Calling (1)**
5:5
**came (6)**
7:3;36:10;39:14;
46:15;48:15;49:25
**camera (1)**
45:24
**Can (25)**
5:10,17;7:7,13;10:8,
19;11:7;18:16;25:22;
26:12,24;27:17,20;
30:7,8;32:5;34:8,10;
37:8;39:23;42:11,16;
45:20;51:14;52:5
**case (48)**
12:11;15:11;16:2,3,
10,17;17:3;18:3,5,13,
16,23;19:5,8;20:18;
25:5,22,23;26:10;29:9;
30:25;33:18,25;35:18;
38:12,12,16;40:11,17,
19;41:7,12;42:4,23;
43:14,24;44:14,17;
46:18,20;47:10;48:5;
52:23;53:10;54:7,8,10;
55:12
**caselaw (1)**
27:8;38:1
**cases (15)**
12:1,18;14:16;17:6;
21:7;23:6;25:23;26:9;

28:2;32:16;35:1,17;
36:17;39:25;52:14
**cause (3)**
28:22;29:20,22
**causes (1)**
38:6
**cell (1)**
10:5
**cents (1)**
18:18
**certain (2)**
11:19;32:25
**Certainly (11)**
8:2;10:8;13:9;22:14;
39:2;44:4,16,18;45:3;
51:20;52:5
**certainty (1)**
36:15
**certified (1)**
16:4
**changes (2)**
32:14;33:7
**Chapter (5)**
32:13;33:18;34:11;
36:17;41:7
**characterized (1)**
52:25
**charged (1)**
6:17
**choices (2)**
54:23,24
**chose (4)**
24:3;29:6;47:6;53:8
**chosen (1)**
38:5
**Circuit (1)**
55:1
**circumstance (2)**
22:10;35:5
**circumstances (3)**
14:13;15:2;37:23
**cite (1)**
18:13
**cited (1)**
46:20
**claim (39)**
6:13;7:2,5,11;15:13;
22:25;23:17;24:8,9,10,
23;25:6,6,10,21,22;
26:16;28:19,24;30:6;
31:1,3,5,7,8,9,17,17,18,
19,20;33:2,9,14;35:11;
43:20;48:6;49:9,10
**claimant (1)**
14:19
**claimants (32)**
13:1,7,15,18;16:3,5;
17:16;18:3;22:8,13,22;
24:10;25:3;28:23;
29:11,21;30:6;32:8,16;
34:16,22;35:15,15,16;
38:8;46:14,16,23;
47:18;48:9;52:22;

53:13
**claimants' (2)**
36:19,20
**claimant's (1)**
30:20
**claiming (1)**
50:22
**claims (60)**
6:24;7:8,11;8:1;
12:8;13:7,18,19;15:24,
25;16:1;17:14,16;18:5,
9;20:16,19;21:1,5,8,8,
9;23:1,4;24:4;27:17;
29:12;30:17,17,21;
31:2,3,4,24;34:4,5,13,
14;35:21;36:1,2,18,22;
38:6;40:12;43:25;
44:18;45:4;46:17;
48:22,23;49:5,7,8,21;
50:6,19;51:8,14;53:22
**clarify (1)**
30:11
**class (13)**
14:4,5,15;16:4;
25:11,11;28:4;30:19,
21;34:14;40:15;48:1;
49:12
**classes (3)**
25:2,8;48:2
**classification (2)**
13:6;32:14
**classified (1)**
13:20
**Claus (1)**
45:23
**clear (6)**
6:19;21:5;25:11;
33:10,15;42:23
**clearly (1)**
32:6
**client (1)**
40:4
**close (1)**
24:2
**closed (2)**
29:15;30:7
**closer (1)**
45:21
**closing (1)**
46:2
**clue (1)**
14:2
**Code (3)**
15:4,10;23:4
**colleagues (1)**
32:1
**colleague's (1)**
42:17
**colloquy (1)**
12:14
**coming (2)**
8:23,25
**comment (1)**

22:5
**commenting (2)**
26:12;33:23
**Commissioner (1)**
7:9
**committed (2)**
17:19;41:16
**common (2)**
24:22;25:9
**company (1)**
7:9
**comparison (1)**
37:17
**compensable (1)**
42:7
**compensation (3)**
20:12;34:8;41:5
**complaint (1)**
52:10
**complaints (1)**
6:24
**completely (2)**
26:15;27:1
**complex (1)**
38:12
**compliance (1)**
31:23
**compliant (1)**
19:4
**comport (1)**
15:9
**compromised (1)**
35:11
**compromises (2)**
12:25;35:18
**compromising (1)**
25:21
**concede (1)**
38:19
**concept (1)**
51:21
**concepts (1)**
40:24
**concerns (1)**
19:23
**conclude (1)**
55:25
**concluded (1)**
56:5
**conclusion (2)**
7:4;33:4
**conference (1)**
33:15
**conferences (2)**
25:25;33:12
**confined (1)**
18:18
**confirm (1)**
6:22
**confirmation (19)**
12:20,22;13:3;19:3,
13,25;20:3;28:20;
32:12,17;33:6;34:6;

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(2) benefit - confirmation

Case: 19-30088   Doc# 9822   Filed: 12/16/20   Entered: 12/16/20 16:18:22   Page 59
of 68

40:13;42:21,24;43:17,
19;52:24;53:2
**confirmed (4)**
7:12;13:17;19:10;
46:9
**congratulated (1)**
13:1
**Congress (1)**
27:16
**connection (9)**
11:23;14:15;17:6;
22:9;28:19;41:5;49:9;
50:13;51:15
**consensual (2)**
37:19,20
**consider (2)**
34:14;43:22
**consideration (1)**
43:23
**consistent (1)**
33:24
**consistently (3)**
19:10;27:9;31:21
**constituency (5)**
12:9,18;19:6;23:3;
46:17
**constituents (1)**
14:22
**constitute (1)**
33:19
**constitutionally (1)**
48:17
**constraints (1)**
34:3
**contested (1)**
19:25
**context (3)**
12:4;52:3,5
**contingency (2)**
17:1,3
**continue (1)**
40:5
**continued (1)**
5:22
**contribution (38)**
11:23;15:7,21;18:14,
16,19,23;22:18,20;
24:23;25:6,10,22;26:4,
7,16,21;27:5,6,15,17;
28:5,14,18;29:3;32:15;
33:1,9,14,19,21;34:4;
35:2,6;39:24;43:20;
44:15;46:25
**contributions (3)**
38:3,13,14
**control (1)**
45:15
**convincing (1)**
50:14
**coordination (1)**
7:25
**copy (1)**
29:4

**Corporation (1)**
5:6
**cost (3)**
46:20,23,24
**costing (1)**
13:22
**costly (2)**
35:24;36:23
**costs (4)**
27:24;36:14;37:21,
24
**counsel (6)**
8:8;11:25;13:10,21;
25:1;41:4
**couple (1)**
42:19
**course (4)**
7:14;18:5;20:18;
48:12
**Court (196)**
5:3,4,4,10,13,17;6:2;
7:2,17,21,25;8:4,6,15,
18,21,23;9:2,4,6,9,12,
14;10:2,9,13,16,19,24;
11:2,6,16,18;12:2,6,7,
12,23;13:4,24;14:2,8,9,
12,14,17;15:1,12,25;
16:5,11,13,14,14,16;
17:2,18,25;18:13;
19:12,13,16;20:2,3,7,
10,12,13,15,23;21:2,3,
3,13,13,15,19,21,22;
22:1,4;23:8,13,23;24:1,
3,12,15;25:13;26:20,
23,25;27:2,7,12;29:8,
13,14,24;30:1,13,15;
31:5,13;32:4;33:17;
34:19;36:5,9,12,25;
37:5,8,10,12,15;38:17,
24;39:7,9,12,22;40:4,9,
14,24;41:5,8,15,19,21,
23;42:2,12,14,16;43:3,
7,10,12,25;44:3,7,9,10,
10,13,21,23;45:7,9,18,
21;47:6,7,9,11,13,15,
20,23;48:8,10,14,18;
49:13,19;50:2,10,12,
14,16,17,24;51:1,6,20;
52:1,8,25;53:1,5,15,18,
19,22;54:3,8,10,12,14,
20,22,25;55:7,16
**court- (1)**
32:24
**court-ordered (1)**
32:19
**courtroom (2)**
9:21;12:5
**courts (3)**
34:7;35:5;52:7
**Court's (3)**
11:5,21;14:1
**court-supervised (1)**
33:15

**CPUC (1)**
6:23
**created (1)**
22:7
**credible (1)**
14:20
**credit (2)**
32:3;43:1
**creditor (8)**
23:4;26:10;28:3,7;
33:4,13;34:9;35:10
**creditors (12)**
13:23;22:22;23:3,7;
27:18;28:4;34:11;35:7,
8;42:4;46:21,22
**creditors' (1)**
17:8
**criticizing (1)**
45:10
**crossed (1)**
10:3
**cross-section (1)**
46:19
**cure (1)**
23:22
**currently (1)**
20:25
**customer (1)**
6:22

**D**

**damage (1)**
31:19
**damages (1)**
22:8
**Dara (1)**
5:15
**date (31)**
12:1;21:7;24:4,8,9,
10;26:12;28:20,21;
29:5,6,23;31:4,8,16,22;
32:2,7;40:13;43:1,15;
47:5,25;48:7,24;49:5,
20,21;50:18,23;53:22
**dates (2)**
5:22;19:13
**day (2)**
15:16;38:18
**deal (3)**
13:15;50:12;51:3
**dealing (6)**
6:5;12:9;21:8;27:4;
52:13;55:8
**debt (3)**
30:17,17;36:6
**debtor (11)**
5:19;15:17;17:19;
20:11,16,19;40:11;
46:13;47:25;50:5;
51:11
**debtors (20)**
5:16;8:14;11:12,20;

13:14;15:10;17:13;
19:5,5;21:6,9;24:6,18;
29:15;30:4,5;32:19;
39:24;40:16;50:3
**debtors' (11)**
6:15;12:8;13:12;
15:4;16:8;22:10;23:16;
26:2;36:16;51:19,22
**debts (3)**
48:10,12,25
**DECEMBER (2)**
5:1;11:21
**decided (4)**
21:16;29:21;49:3;
53:2
**decides (1)**
33:8
**decision (8)**
18:25;21:20;38:18;
39:4,9,10;42:21;47:3
**decisions (2)**
27:4;42:3
**declarations (1)**
29:2
**deemed (1)**
31:6
**defend (1)**
28:11
**defendants (8)**
15:16,17,18,25;
20:14,16;40:12,16
**defense (1)**
14:6
**defer (2)**
43:23;45:19
**define (1)**
27:6
**definitely (1)**
25:8
**defrauded (4)**
48:22,23;49:14,16
**defying (1)**
25:9
**delay (1)**
27:24
**demonstrate (2)**
28:25;29:1
**demonstrates (1)**
32:7
**denied (3)**
16:7;30:2;48:16
**Dennis (1)**
5:5
**deny (1)**
29:21
**dependent (1)**
35:10
**depends (1)**
55:12
**derivative (1)**
52:20
**deserve (1)**
43:1

**desire (1)**
24:22
**despite (1)**
21:4
**detail (1)**
26:13
**detailed (1)**
11:19
**determination (3)**
33:1;47:12;49:11
**determine (2)**
22:24;27:21
**determined (7)**
14:16;15:3;16:14;
20:23;23:23;25:7;31:2
**determining (1)**
26:15
**developed (1)**
27:8
**developments (2)**
37:5,6
**devices (1)**
24:5
**dictates (1)**
15:2
**difference (1)**
38:20
**differences (1)**
30:24
**different (15)**
9:7;16:10;22:14,23;
26:9;30:21;39:1,2;
40:20,21,21;52:12,13;
54:23;55:5
**differently (1)**
30:22
**difficult (3)**
19:11;38:12,14
**difficulties (2)**
9:25;10:3
**dilute (1)**
53:12
**dime (2)**
46:23,24
**direct (6)**
19:19;28:22;29:19,
20;32:8,10
**directed (4)**
7:9;19:17;32:25;
48:17
**directly (2)**
10:5;29:19
**director (1)**
15:18
**directors (2)**
41:10;55:8
**disability (1)**
6:18
**disagreed (1)**
31:23
**disagreement (1)**
41:25
**discharge (3)**

Case: 19-30088    Doc# 9822    Filed: 12/16/20    Entered: 12/16/20 16:18:22    Page 60
of 68

54:15,16,17
**discharged (4)**
48:11,13,25;49:23
**disclosure (13)**
13:6;18:8;26:11,12;
28:20;32:11,13,21;
33:5,23;34:6,12;53:21
**discount (1)**
35:23
**discussed (1)**
18:25
**discussion (1)**
54:13
**disenfranchised (2)**
48:5;52:23
**dismiss (3)**
44:1,10;45:12
**dismissed (1)**
52:10
**dispensed (1)**
35:24
**distinction (1)**
15:24
**distinguishes (1)**
25:5
**distributable (1)**
38:7
**distribution (3)**
13:20;23:5;35:12
**district (32)**
14:8;15:1,25;16:16;
20:7,11,13,15;21:2,3,
13,13,16,22;39:22;
40:4,11;41:5;43:25;
44:10,10;52:1;53:5,19,
20;54:8,10,12,14,22,
25;55:7
**dollar (1)**
13:23
**dollars (9)**
15:15;18:18;35:21,
22;36:2,8,15,22,23
**dollars' (1)**
46:16
**done (6)**
12:5,17;17:4;24:6;
36:12;38:2
**door (1)**
29:14
**door's (1)**
30:7
**double (1)**
54:6
**double-dipping (3)**
40:8;53:5,14
**doubt (2)**
40:10;55:13
**down (8)**
6:10;9:14,17;10:20;
13:8;32:23;48:15;
53:13
**downright (1)**
46:7

**draw (1)**
15:23
**drawing (1)**
37:17
**driven (2)**
24:21;28:7
**Dubbin (1)**
29:3
**Dubbs (18)**
8:23,25;9:2,7,9,13,
16,20;11:9;24:13;
45:22;46:5;54:1,3,5,5;
55:20;56:1
**due (6)**
13:5;23:22;28:24;
31:23;47:6;48:17
**during (6)**
12:13,14;20:18;21:6;
22:25;49:12
**duties (2)**
55:8,9
**duty (1)**
9:22

**E**

**earlier (3)**
10:7;20:9;23:15
**early (1)**
29:9
**earphones (1)**
55:16
**easy (2)**
42:4,4
**effective (2)**
12:1;21:7
**effectively (2)**
34:3;43:17
**effort (1)**
50:21
**efforts (23)**
11:25;12:4,6;13:10,
21;15:19;18:15;19:1;
20:18;21:4,6;22:13;
23:17;24:11;32:9,9;
35:17;43:15;46:8,20;
51:7,16;53:3
**eight (1)**
27:14
**eight-billion-dollar (1)**
35:23
**eighteen (2)**
12:1;21:7
**eighty (1)**
36:15
**either (5)**
5:23;24:5;27:22;
43:3;48:20
**eleven (1)**
35:22
**Elor (8)**
5:21;6:6,9,11,15,22;
7:6,7

**E-L-O-R (1)**
6:6
**else (10)**
6:20;8:6;34:25;
38:19;39:14,20;41:21;
42:6;43:18;53:24
**email (1)**
10:8
**emerge (1)**
36:16
**employ (1)**
50:15
**end (1)**
7:14
**engaged (2)**
19:24;32:24
**enhanced (3)**
13:20;18:9;52:24
**enhancing (1)**
51:10
**enjoined (1)**
21:3
**entered (1)**
54:20
**entire (1)**
52:1
**entities (1)**
35:16
**entitled (9)**
14:23;22:17,19;
24:23;27:25;28:1;33:9;
43:2,19
**entitlement (1)**
36:7
**entity (1)**
36:21
**entries (1)**
54:12
**equity (17)**
22:17,19,23;27:17,
18,21,23;28:1;31:17,
17,19;33:5;38:8;48:2,
23;49:6,22
**establish (1)**
33:13
**estate (10)**
19:2,3;26:17,18,21,
25;27:10,15;35:25;
42:8
**estates (1)**
22:7
**estimation (2)**
35:25;36:4
**Etkin (72)**
8:19,20,23,25;9:22,
24;10:7,11,15,22;11:1,
3,9,14,17;14:8,11,13,
15,24;15:23;16:24;
17:3,18,24;18:1;20:13;
21:17,20,22;22:3,5;
23:11,14,24;24:15,25;
25:14;29:4;31:19,25;
39:20;40:10;41:3;

42:19;45:21,24;46:4;
47:10,11,12,13,14,18,
22;48:4,9,12,15;49:2,
17,24;50:8,11,17,25;
51:5,9;52:4,9;53:16;
55:20;56:3
**evaluate (3)**
12:3;21:14;51:14
**even (18)**
14:19,23;17:20;18:4,
18;26:19;28:5;31:7;
38:8;45:10,11;50:4;
52:2,16;53:16;54:17;
55:4,12
**event (2)**
55:5,7
**everybody (4)**
5:25;8:9;9:15;25:17
**everyone (1)**
8:6
**example (1)**
18:25;23:19;35:21
**Examples (1)**
33:21
**except (1)**
50:4
**exception (1)**
22:11
**excess (1)**
46:16
**Excuse (2)**
10:12;40:15
**exist (1)**
23:23
**exit (3)**
35:8;36:16,18
**expect (2)**
26:9;40:4
**expected (3)**
33:18,19;34:11
**expecting (1)**
9:4
**expedite (1)**
26:3
**expenses (4)**
37:21,24;40:7;41:3
**explanation (1)**
10:23
**extend (1)**
33:4
**extended (7)**
24:9,10;32:2;47:5;
48:24;50:18;53:22
**extending (1)**
24:3
**extension (1)**
29:22;32:7
**extensive (1)**
33:20
**extent (5)**
28:3;30:18;31:1;
49:6;53:9
**extraordinarily (1)**

12:20
**extraordinary (2)**
26:8;34:9

**F**

**fabric (2)**
25:25;33:13
**face (3)**
6:19;14:20;41:9
**facilitated (2)**
32:17;50:6
**fact (18)**
12:16;13:17;15:4;
19:10;22:12,16;23:3,
24;28:6;30:7,8,24;
32:24;33:11;38:1,20;
50:9;53:6
**facts (4)**
28:16,24;29:1;32:20
**fails (1)**
17:21
**fairly (1)**
55:22
**faith (1)**
51:24
**fall (1)**
35:6
**fashioned (1)**
50:12
**fate (2)**
48:1,3
**fates (1)**
48:4
**faulted (1)**
40:14
**faulting (1)**
45:10
**favor (1)**
40:6
**feature (1)**
10:22
**fee (1)**
17:1
**fees (9)**
14:16;15:2,6;17:11;
37:21;40:7;41:2;53:12;
54:25
**fell (1)**
30:19
**fellow (1)**
45:10
**few (3)**
45:5;46:15,19
**fiduciary (1)**
40:3
**file (18)**
13:18;24:7,9;28:23;
29:6;30:6;31:3,5,7,8,9,
18,20,24;37:1;50:6,19;
51:8
**filed (11)**
11:23;16:1,2;23:25;

Case: 19-30088    Doc# 9822    Filed: 12/16/20    Entered: 12/16/20 16:18:22    Page 61
of 68

24:10;36:20;43:25;
47:16,24;48:6;49:9
**fill (1)**
23:2
**final (2)**
19:8,9
**finally (2)**
54:19,21
**financing (5)**
35:8,9;36:16,18;38:4
**fingers (1)**
10:3
**fire (2)**
13:23;46:22
**firm (1)**
29:4
**first (6)**
13:4;18:10;19:15;
24:19;51:2;52:9
**fit (1)**
42:7
**five (1)**
36:8
**fix (1)**
11:7
**fixed (1)**
11:3
**floodgates (1)**
34:4
**focus (2)**
11:19;16:15
**focused (1)**
28:18
**folks (6)**
30:9;33:7;50:6,19;
51:7,13
**follow-up (1)**
49:21
**force (1)**
37:23
**forget (1)**
48:18
**form (2)**
13:5;23:1
**forth (3)**
15:3;18:6;23:1
**forward (5)**
16:6;21:2,4,6;52:24
**found (3)**
35:6;38:3;47:7
**four (5)**
15:14;21:24,25;22:1,
2
**four-and-a-half (1)**
15:14
**frame (1)**
12:20
**FRANCISCO (1)**
5:1
**frankly (3)**
17:13;19:11;46:7
**free (2)**
7:22;48:25

**front (3)**
40:11;49:25;53:19
**full (2)**
30:18;31:1
**fully (2)**
18:15;30:25
**fundamental (1)**
51:20
**funding (1)**
38:4
**funds (1)**
35:12
**further (1)**
35:19
**future (1)**
15:16

## G

**game (1)**
52:11
**general (1)**
30:19
**generally (4)**
6:17;7:8,8;49:14
**generosity (1)**
11:5
**given (7)**
12:16;13:18;18:7;
28:5;31:7,24;42:5
**Good (5)**
5:9,10;8:11,19,20,21,
22;16:19;24:16;44:19;
51:24;52:2;56:4
**Gotshal (1)**
24:17
**governed (1)**
20:21
**granted (3)**
16:7;25:6;44:10
**granting (1)**
53:11
**great (1)**
53:21
**grievance (1)**
7:7
**guarantee (1)**
18:20
**guaranteed (1)**
18:3
**guess (1)**
41:12
**guise (1)**
33:20

## H

**half (1)**
11:10
**hand (10)**
6:3,7,8,10;9:8,11,13,
17,21;51:25
**handful (1)**

8:1
**handling (2)**
8:13;9:1
**hand-raise (1)**
10:22
**handwritten (1)**
7:3
**happen (7)**
15:1;40:20;44:14,21,
23;46:21;52:12
**happened (9)**
21:15;29:11;35:13;
38:25;40:19;47:16,20;
48:21;49:22
**happens (6)**
21:11;23:4;43:24;
44:6,22;45:5
**Happy (2)**
8:11;55:24
**harm (1)**
45:5
**hear (3)**
5:10;34:20;55:17
**heard (3)**
6:3;41:3;46:6
**hearing (10)**
5:19;12:7,14,22;
19:13,18,25;24:20;
42:24;55:25
**heart (1)**
19:24
**heavy (1)**
26:6
**held (7)**
7:11;18:13;26:5;
27:9;43:3,8,9
**help (3)**
7:23;9:25;28:16
**helped (1)**
40:12;46:12
**helpful (1)**
9:3
**Hi (1)**
8:22
**high (2)**
26:6;35:4
**highly (1)**
54:10
**himself (1)**
6:16
**hindsight (1)**
17:5
**hinge (1)**
17:8
**history (2)**
44:2;47:3
**Hold (6)**
9:15;10:24;17:6,11;
34:3;42:25
**holder (7)**
22:19,23,24;33:5;
48:23;49:10,11
**holders (14)**

22:17;27:18,18,21,
23;28:1;31:2,4;35:23;
38:9;48:2;49:6,7,23
**holding (1)**
33:25
**holiday (1)**
56:4
**holidays (2)**
8:11;55:24
**home (1)**
17:16
**Honor (112)**
5:7,9;6:1,14;7:15,20;
8:2,20,22;9:1,6,25;
10:7,11;11:14,17,22,
25;12:24;13:3,22,23;
14:8,24;15:4,23;16:24;
17:13;18:1,10,12,22;
19:3,12,18;20:6,13,17,
17;21:1,18,24,25;22:7,
11,15,21;23:12;24:5,
14,16,19;25:23;26:13,
14,22;28:9,15;29:17,
20;30:11;31:14,14,16,
21,25;32:5;33:3;34:3,
21;35:3,20;36:13;
37:13;38:10;39:11,18;
41:1,22;42:11,23,24;
43:21;44:16;45:3,16;
46:4,6,22;47:1,3,4;
48:13;49:2,6,18,25;
50:8,11;51:9,17;52:4,
7;53:3,9,17;54:1,5,9,
11;55:11;56:2
**Honorable (1)**
5:5
**Honor's (1)**
16:6
**hopefully (1)**
19:7
**hour (1)**
11:10
**hourly (1)**
55:3
**house (1)**
11:7
**Huh (1)**
37:12
**hyperbole (1)**
46:10
**hypothetical (4)**
14:10,25;17:21;50:3
**hypotheticals (1)**
52:13

## I

**idea (5)**
44:19;47:1;51:10;
53:4,14
**identified (3)**
6:23;13:4;19:13
**identify (1)**

6:7
**ie (1)**
38:24
**ignore (3)**
29:15;30:8,8
**ignored (1)**
46:14
**III (2)**
45:11,11
**impact (3)**
42:3;52:5;53:2
**impacted (2)**
49:7,8
**implicated (1)**
36:7
**important (6)**
12:11,18;13:22;
23:14;24:21;29:17
**Impossible (1)**
43:11
**impression (2)**
13:4;19:15
**improve (2)**
34:13;41:11
**improved (1)**
12:25
**improvements (1)**
20:22
**incidental (2)**
34:17,23
**inclined (1)**
43:22
**include (1)**
33:22
**included (2)**
33:25;36:3
**including (4)**
20:21;25:23;29:1;
36:18
**incognito (1)**
9:9
**increase (2)**
27:22;35:11
**incredibly (1)**
26:6
**incurred (2)**
37:22,24
**incurrence (1)**
27:24
**indeed (1)**
32:2
**indicated (2)**
12:7;47:4
**indicating (1)**
41:4
**indication (1)**
6:13
**indiscernible (1)**
14:12
**individual (2)**
16:1;17:14
**individually (2)**
16:9,9

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(5) fill - individually

Case: 19-30088    Doc# 9822    Filed: 12/16/20    Entered: 12/16/20 16:18:22    Page 62
of 68

**initial (4)**
23:18,24;24:8;31:16
**injunction (3)**
52:19;54:17,19
**insolvency (1)**
42:5
**instrumental (2)**
35:9;42:20
**integrity (1)**
34:7
**intend (2)**
6:10;11:19
**intended (1)**
6:3
**interest (2)**
34:18,24
**interests (1)**
28:12
**interference (7)**
11:2;16:11;21:19;
30:14;42:3;50:1;55:15
**interject (1)**
31:15
**interrupt (1)**
37:14
**intertwined (1)**
55:10
**into (1)**
51:8
**invited (1)**
51:8
**involve (1)**
16:25
**involved (3)**
15:1;40:15;52:16
**irrelevant (1)**
33:1
**issue (9)**
6:15;20:1,2,2,4;42:5;
44:17;49:25;54:6
**issues (20)**
6:23;12:13;13:4,6,
16;19:14,14,15,20,21,
23;22:13;23:22;27:5;
36:7;46:13;47:2;50:12;
52:25;55:8
**items (1)**
19:20

**J**

**January (1)**
5:23
**Jeffy (2)**
6:8,9
**jeopardize (1)**
20:3
**jeopardizing (1)**
12:19
**Jessica (1)**
24:16
**job (2)**
19:11;53:21

**join (2)**
9:16;45:22
**Jose (2)**
16:16;53:19
**Judge (8)**
12:24;19:19,21;20:5;
21:16;40:11;53:20;
54:13
**judges (3)**
45:10,11,11
**judgment (1)**
40:6
**jump (1)**
26:14
**June (6)**
12:7,23;19:12,18;
42:20;43:1

**K**

**Karotkin (35)**
8:11,12,16;9:18;
10:16,18;29:10;31:12,
14;42:11,13,15,18;
43:6,8,11,13;44:4,7,8,
9,12,16,22,23;45:2,8,9,
16,19;46:10;52:15;
55:19;56:2,4
**keep (5)**
7:17;10:3;29:18;
36:25;54:21
**Keller (1)**
5:15
**kept (1)**
29:12
**Kim (1)**
5:15
**kind (2)**
41:4;50:21
**kinds (1)**
35:17
**knew (1)**
49:20

**L**

**laid (1)**
6:21
**landline (1)**
10:10
**language (1)**
18:24
**large (1)**
52:22
**last (2)**
21:15;38:10
**later (1)**
51:4
**laughed (1)**
40:14
**law (6)**
25:22;33:10;34:2;
47:8,8;49:18

**lawyer (1)**
51:22
**lawyers (1)**
16:21
**lay (1)**
7:1
**lead (2)**
29:19;34:9
**least (4)**
16:6;38:19;53:12;
55:1
**leave (5)**
15:17;24:12;42:9;
47:21;52:10
**led (2)**
50:5;51:7
**left (3)**
5:21;24:5;45:24
**legal (1)**
44:1
**legislated (1)**
20:20
**lengthy (2)**
35:24;36:24
**lens (1)**
13:24
**less (1)**
53:13
**level (3)**
28:13;35:2;38:2
**liabilities (2)**
55:8,9
**liability (2)**
6:25;16:14
**light (1)**
50:13
**lighter (1)**
28:5
**likes (1)**
35:14
**likewise (1)**
22:19;56:2
**limit (2)**
45:3,3
**limited (2)**
18:20;22:14
**limiting (1)**
34:8
**line (3)**
18:2;21:5;50:17
**Liou (54)**
8:13,21,22;9:19;
11:12;23:10;24:15,16,
16;25:19;26:22,24;
27:1,3,8,12,20;29:12,
17,25;30:2,11,14,16;
31:10;32:4,5;34:21;
36:11,13;37:4,7,9,11,
13,16;38:21;39:3,6,8,
10,18;40:23,25;41:14,
17,20,22,24;42:10;
43:18;46:20;53:4;
55:19

**liquidate (1)**
38:5
**liquidated (1)**
35:22
**list (1)**
36:25
**listen (2)**
10:14;51:21
**listening (1)**
7:6
**litigated (2)**
49:25;50:1
**litigating (1)**
20:14
**litigation (7)**
13:8;17:9,10;27:24;
35:11;38:6;51:14
**litigations (1)**
36:17
**littered (1)**
23:16
**little (6)**
10:20;42:16;44:5,19;
45:13;46:10
**logical (1)**
33:4
**long (2)**
12:10,10
**longer (1)**
45:13
**long-term (1)**
36:14
**look (3)**
18:13,24;20:11;
26:17;28:16,21;30:16;
32:20;35:5;43:13;
45:20
**looking (2)**
19:11;28:15
**losing (1)**
43:14
**loss (1)**
55:5
**losses (1)**
52:15
**lost (6)**
30:10;43:15,16,16;
50:5;51:22
**lot (4)**
26:13;40:2;51:22;
52:12
**lots (1)**
14:4
**lowered (1)**
9:13
**luck (1)**
47:19

**M**

**main (2)**
8:13;35:7
**maintained (1)**

34:8
**maintains (1)**
15:5
**major (2)**
37:5,6
**makes (2)**
6:18;39:19
**make-whole (1)**
36:6
**making (7)**
22:6;25:15,16;36:25;
41:16;44:14;51:24
**Manges (1)**
24:17
**manner (1)**
13:10
**many (4)**
17:7;38:13,13;42:3
**March (1)**
5:23
**mark (2)**
22:2;23:9
**material (1)**
12:5
**matter (6)**
5:5,21;6:9;8:7;
30:25;55:21
**matters (2)**
12:12;28:8
**may (11)**
17:8,10,11;29:5,5;
34:16,22;38:24;44:3;
50:14;54:1
**maybe (1)**
11:6
**mean (12)**
10:10;22:18;25:14;
27:16;37:13;39:1;
40:22;41:8,12;42:5;
44:25;51:1
**means (2)**
23:22;26:7;27:6
**meant (1)**
30:16
**measurable (1)**
15:21
**measure (1)**
35:14
**measured (3)**
17:4;19:4;51:17
**measures (1)**
40:21
**mediate (3)**
17:14,15;19:21
**mediated (2)**
19:20;53:1
**mediation (10)**
12:24;16:12;19:17,
19,25;20:5;25:20;
32:19,25;42:21
**mention (1)**
42:11
**mentioned (4)**

Case: 19-30088    Doc# 9822    Filed: 12/16/20    Entered: 12/16/20 16:18:22

33:11,11;35:3;39:13

**merge (1)**
40:24
**merits (1)**
24:1
**met (1)**
21:15
**Metals (1)**
33:25
**methodology (1)**
13:1
**mic (4)**
10:13;45:23,24,25
**Michelson (1)**
29:4
**midst (1)**
19:25
**might (7)**
9:24;10:13;42:6;
45:14,16,16,17
**million (2)**
15:14,14
**mind (3)**
10:10;29:18;54:21
**minute (5)**
10:4,20;26:13;47:9,
11
**minutes (5)**
11:15;23:9;24:13,15;
45:22
**Mirant (1)**
18:24
**mistake (1)**
28:9
**mistaken (1)**
15:13
**moment (2)**
5:7;10:12
**monetary (3)**
18:16,20;31:19
**money (3)**
15:15;22:13;35:25
**Montali (1)**
5:5
**months (6)**
12:1;21:7;45:5,13,
14,14
**more (13)**
6:17;9:20;19:11;
22:1,14;23:11;26:13;
34:10;39:16;45:14,14;
55:6,18
**Moreover (1)**
43:13
**morning (10)**
5:9,10;8:11,19,20,21,
22;10:8;11:4;24:16
**most (4)**
12:2;16:7;28:6,18
**motion (33)**
7:19;8:8,9;12:4,8,12;
19:1;20:8;23:18,25;
24:2;29:3,5,7,10,22;

30:4;10;36:18;43:24;
44:1,10;45:8,12;47:2,
17,25;48:24;49:21;
50:4,5,13;52:22
**motions (5)**
36:9,10;37:1;51:22,
24
**motivated (1)**
13:13
**motivation (1)**
28:8
**mouth (2)**
53:6,7
**move (3)**
16:5;26:3;32:5
**moving (1)**
21:24;32:11
**Mrs (1)**
7:7
**much (10)**
7:16;8:3;11:12;
12:13,15;22:11;23:6;
42:9;52:4;55:25
**multiple (1)**
36:17
**must (1)**
14:5
**must've (1)**
27:13

## N

**name (5)**
5:21;9:7,10;11:8;
54:4
**narrowly (1)**
18:17
**necessarily (2)**
6:16;17:5
**need (6)**
12:14;16:22;24:8;
36:23;54:4;55:18
**needed (3)**
19:15,20;36:16
**negotiated (1)**
20:22
**negotiation (1)**
33:23
**new (1)**
47:25
**news (2)**
52:2,6
**Newsome (5)**
12:24;19:19,21;20:5;
54:13
**Ninth (1)**
55:1
**nobody (1)**
14:18
**nonbankruptcy (1)**
14:4
**nondebtor (5)**
15:25;20:14,16;

21:11,12
**nondebtors (1)**
21:1
**none (3)**
14:21;36:9,10
**nonmonetary (1)**
18:17
**normal (1)**
7:14
**note (4)**
28:2;31:20;34:15;
35:1
**noted (5)**
12:24;22:11;24:7;
26:12;33:17
**noteholder (1)**
35:16;36:5
**noteholders (1)**
36:20
**notice (10)**
13:5,6;23:22;31:7,
21,22;32:10;43:15;
47:7;49:4
**number (10)**
5:19;9:10;22:2;25:1;
26:15;28:16;39:21;
41:25;42:19;54:22
**numerous (2)**
8:1;34:7

## O

**object (2)**
32:21,22
**objected (2)**
32:1,2
**objection (15)**
5:22;6:4,12,21;7:4;
11:22;29:6;32:18,23;
33:8;34:18,24;42:25;
43:17,19
**objections (3)**
5:20;32:13,25
**objects (1)**
33:5
**obligated (1)**
31:17
**observation (2)**
38:11;42:1
**obtained (2)**
34:17,23
**obtaining (1)**
35:9
**obvious (1)**
11:22
**obviously (5)**
11:4;12:5;23:6,20;
31:23
**occurred (2)**
42:22;52:17
**occurring (1)**
21:12
**occurs (1)**

20:24
**odds (2)**
54:8,11
**off (9)**
9:18;10:13;17:11;
44:25;45:2,24,25;46:4;
55:16
**offensive (2)**
46:7;53:16
**offer (3)**
10:23;25:17;44:24
**offering (2)**
17:14,15
**offers (4)**
17:20,20;25:15,16
**office (1)**
10:25
**officer (1)**
15:17
**officers (2)**
41:10;55:9
**often (2)**
22:11;27:19
**omnibus (6)**
5:20,22;6:4,21;8:1;
12:8
**One (38)**
5:7,20,25;7:1,11;
9:14,20;10:12;11:22;
12:22;13:23;17:20;
18:12;19:13;20:1,1,4;
23:7,11;26:5;28:4;
30:5,11;35:6;36:22;
37:2,8,10;38:13,18;
42:19;49:19;53:1,5;
54:19,21,22,23
**only (11)**
5:20;8:7;11:22;
17:15;32:6;34:8,16,22;
37:16;38:22;39:4
**onto (1)**
32:11
**oOo- (1)**
5:2
**open (1)**
29:15
**opens (1)**
34:3
**opponent (1)**
9:19
**opportunity (8)**
13:18;18:4;22:8;
30:6;31:7,24;50:19,20
**oppose (1)**
32:9
**opposed (1)**
43:15
**opposition (5)**
11:20;13:12;15:5;
23:16;36:18
**order (5)**
5:3;11:10,22;16:5;
31:16

**orders (1)**
25:20
**ordinary (2)**
28:12;34:10
**original (7)**
12:8;31:8,22;47:2,
17,24;48:7
**originally (1)**
5:20
**otherwise (6)**
27:25;28:1,11,25;
32:18;34:3
**ours (1)**
54:7
**out (23)**
6:21;7:1;10:23;
16:20;17:12;19:6;
22:21;23:2;28:12;
29:14;30:20;38:14;
40:14;44:11,13;47:6,
18;48:25;49:23;52:1;
53:5,6,21
**outcome (7)**
12:24;18:21;20:7;
39:22;41:12;51:13,14
**outline (1)**
12:12
**outlined (1)**
19:23
**outset (1)**
12:10
**outside (2)**
12:5;19:10
**over (7)**
11:25;19:23;36:1,7,
15;45:15;46:10
**own (10)**
24:5;25:21;28:11;
34:14,14;35:11;38:5,
18;49:4;51:19

## P

**paid (10)**
14:7,19;15:16;16:21;
17:22;31:1;37:10;
41:10;51:23;53:20
**Palo (5)**
38:17,18,21;39:4,10
**pan (1)**
19:5
**pans (1)**
17:12
**papers (3)**
11:19;18:6;51:19
**Parada (2)**
8:8;9:5
**parade (1)**
52:15
**paraphrase (1)**
39:22
**pari (1)**
22:18

Case: 19-30088   Doc# 9822   Filed: 12/16/20   Entered: 12/16/20 16:18:22   Page 64
of 68

**part (5)**
12:2;14:3;25:25;
28:10;33:12
**participants (1)**
41:12
**participated (1)**
34:5
**participating (4)**
7:18;26:10,11;34:12
**participation (2)**
18:7;33:20
**particular (5)**
23:18;25:2;28:7;
38:14;42:1
**particularly (1)**
42:24
**parties (14)**
5:18;13:2;19:17,22;
21:11,12;32:22,23;
34:5;35:18;37:18,19,
22;38:13
**party (3)**
5:20;27:21;38:15
**passu (1)**
22:19
**pay (4)**
15:18;37:20,24;
40:16
**payment (2)**
17:1;41:2
**pending (2)**
16:16;36:17
**penny (4)**
14:19,22,23;15:18
**people (10)**
15:22;16:20;31:18,
23;37:1;38:23;46:15;
48:20;49:19,22
**PERA (36)**
11:25;13:10,13,21;
23:6,17;24:7,8,22;25:1,
9;26:5;28:17,22;29:2,
10;30:3,10;32:12,21,
22,23,24;34:17,23;
35:14;37:2,17,24;38:2;
40:2,2,5;41:20;53:7;
54:5
**PERA's (9)**
11:23;13:25;24:6,11;
29:21;32:8;33:3;41:3;
44:14
**percent (2)**
36:16;55:2
**perception (1)**
14:3
**period (5)**
23:1;26:23;45:19;
49:12;52:18
**personal (1)**
54:2
**personalize (1)**
30:5
**perspective (1)**

**41:2
persuaded (3)**
14:20;25:14;44:25
**PG&E (9)**
5:5;25:24;33:11;
37:19,20,23;38:12;
39:4,10
**PG&E's (1)**
36:14
**phone (2)**
9:10;10:5
**phonetic (1)**
6:8
**phrase (2)**
26:23;27:13
**picture (1)**
30:2
**plain (1)**
12:2
**plaintiffs (1)**
39:23
**plan (36)**
7:12;12:13;13:17;
18:8,9;19:9;20:20,21;
21:10;22:23;25:3;
26:11;28:20;30:20,22;
32:12,13,17,18,22,23;
33:6,24;34:6,12,15;
35:7,10;38:4;40:13;
46:8;47:21,22;49:1;
54:16,19
**plans (1)**
38:5
**platform (1)**
12:17
**please (5)**
6:6,9;9:20;11:15;
34:20
**Plumbing (2)**
18:16;33:17
**point (21)**
15:13;16:12,22;22:6,
15,21;23:11;24:20;
31:6;32:6;38:10;40:1,
5;41:11;42:8;46:9;
50:3;51:25;54:1,15,21
**pointed (1)**
47:6
**policy (2)**
54:23,24
**portion (4)**
11:11;27:15;33:8;
37:21
**pose (1)**
14:25
**position (6)**
6:25;12:3,3;23:21;
46:8,12
**positions (2)**
19:6,7
**post-bankruptcy (1)**
49:1
**post-confirmation (3)**

17:8,10;50:22
**pot (1)**
55:2
**potential (3)**
34:4;36:8;51:10
**potentially (1)**
16:10;35:24;36:23
**precisely (1)**
26:2
**preclusion (1)**
54:18
**predicate (1)**
14:18
**prefer (1)**
53:9
**preferred (1)**
23:21
**prejudice (2)**
44:5;45:6
**premise (1)**
24:25
**premised (1)**
49:3
**premium (1)**
36:7
**pre-petition (4)**
6:23,24;31:3,4
**pre-petition-funded (1)**
36:6
**preposterous (1)**
42:22
**presentation (1)**
55:20
**presiding (1)**
5:5
**presumably (1)**
7:7
**presume (1)**
25:16;53:23
**presumptive (1)**
55:1
**pretty (1)**
14:6
**prevail (1)**
54:24
**preventing (1)**
52:22
**previously (2)**
50:18;51:17
**primarily (2)**
9:1;11:21
**primary (2)**
23:19,24
**prime (1)**
18:25
**principal (1)**
8:8
**principle (1)**
37:23
**principles (1)**
15:5
**prior (2)**
12:1;24:8

**privilege (1)**
54:2
**probably (4)**
9:1;12:3;17:7;39:18
**problem (1)**
11:3
**problems (2)**
13:2,3
**procedure (1)**
25:15;44:24
**procedures (4)**
12:8;16:8;26:1,1
**proceed (2)**
40:5;50:21
**proceeding (1)**
36:5
**proceedings (4)**
35:25;36:4;40:4;
56:5
**process (21)**
7:13;13:5;18:8;19:4;
23:22;26:3,11,11;
28:20,21,24;31:23;
32:12;34:6,11,12,13;
46:12,13;47:6;48:17
**produce (1)**
15:21
**product (2)**
19:8,9
**professional (1)**
37:21
**professionals' (1)**
15:6
**promises (1)**
55:23
**prompted (1)**
20:10
**prone (1)**
46:10
**proof (3)**
24:7;30:6;49:9
**proofs (4)**
24:10;28:24;31:3;
48:6
**proponent (1)**
38:4
**proponents (1)**
35:8
**proposal (2)**
17:20;44:24
**propose (1)**
26:2
**proposed (1)**
26:2
**proposing (1)**
33:22
**prosecuted (1)**
32:23
**prosecuting (2)**
34:17,23
**provide (2)**
12:17;38:7
**provided (4)**

7:1;35:8;36:15;38:4
**provides (1)**
34:2
**providing (1)**
32:15
**provisions (1)**
20:21
**Public (3)**
7:9;35:16;36:21
**publicly (1)**
22:10
**purchase (1)**
22:9
**purchased (2)**
22:25;49:12
**pure (2)**
31:17,17
**purposes (2)**
22:16;23:5
**pursue (1)**
18:5
**pursued (1)**
49:1
**put (2)**
7:21;9:20;20:2;21:6

**Q**

**question/statement (1)**
41:24
**quickly (1)**
55:22
**quite (6)**
8:1;17:13;19:11;
21:23;22:14;40:19
**quote (1)**
25:22

**R**

**raise (2)**
6:6;9:8
**raised (7)**
9:13;19:14,15;37:16;
44:17;46:9,13
**raising (1)**
6:2
**rare (1)**
26:7
**rates (4)**
6:16,16;7:8;55:3
**rather (3)**
7:8;9:10;21:5
**reached (1)**
12:25
**reactive (1)**
50:4
**readily (1)**
12:6
**realize (1)**
14:4
**really (3)**
18:2;28:13;54:9

Case: 19-30088    Doc# 9822    Filed: 12/16/20    Entered: 12/16/20 16:18:22    Page 65
of 68

**reason (4)**
23:24;30:9;34:2;
37:16
**reasonable (1)**
15:2
**reasonableness (1)**
15:6
**rebuttal (3)**
11:11,15;23:10
**receive (1)**
34:15
**received (6)**
25:12;29:4;34:16,22;
49:4;54:14
**receiving (1)**
28:24
**recent (2)**
16:6,7
**recited (1)**
21:25
**recognition (1)**
47:5
**recognizable (1)**
7:5
**recognize (1)**
48:19
**recognized (2)**
13:19;50:18
**reconsideration (1)**
36:19
**record (6)**
5:14;28:25;29:1;
32:6;54:4,4
**recorded (1)**
54:8
**recover (3)**
16:3;22:8;39:23
**recovered (1)**
30:18
**recoveries (4)**
17:9;21:12;23:5;
53:13
**recovery (7)**
17:8;20:14,15,20,23;
46:21;51:10
**reduce (1)**
27:25
**reduced (1)**
36:14
**reference (1)**
6:18
**referenced (2)**
12:13;23:18
**references (1)**
23:17
**referred (2)**
19:19;24:2
**referring (1)**
39:5
**reflected (3)**
19:8,9;52:18
**regard (1)**
38:11

**regarding (1)**
21:8
**regardless (1)**
18:14
**related (1)**
41:7
**relates (2)**
46:14;49:5
**relevance (1)**
20:8;39:23
**relevant (2)**
37:2;49:11
**relief (1)**
51:23
**relitigate (1)**
47:7
**relitigating (1)**
47:1
**remain (1)**
8:16
**remained (1)**
20:5
**remarks (1)**
20:9
**remedy (4)**
24:3;47:6;50:11,12
**remember (3)**
31:13;38:24,25
**remembered (2)**
39:13,14
**remind (1)**
26:1
**rendered (1)**
51:18
**renewal (1)**
45:8
**renewed (1)**
43:16
**reorganization (1)**
33:24
**reorganized (7)**
5:16;11:20;13:12;
15:4;23:16;24:17;
39:24
**repeat (1)**
34:19
**repeated (1)**
27:14
**repeating (1)**
35:4
**replead (1)**
52:10
**reply (1)**
19:1
**REPORTER (3)**
5:4;9:6,12
**requesting (1)**
40:7
**required (3)**
12:21;23:2;31:20
**reserve (3)**
11:13,14;23:9
**residual (3)**

27:22,25;38:8
**resolution (2)**
36:3;37:19
**resolve (3)**
32:25;33:8;43:19
**resolved (8)**
13:9,9;16:9;20:1;
21:2;43:17,18;53:1
**resolving (1)**
32:18
**respect (17)**
6:16,20;12:11,25;
16:8;18:10;20:4,22;
21:11;42:25;43:24,25;
46:24;47:2;52:19,19,
21
**response (2)**
6:19,25
**result (3)**
15:19;16:19;32:8
**resulted (2)**
27:22;32:14
**results (2)**
33:6;53:3
**retained (1)**
15:6
**retired (2)**
44:3,4
**reverse (1)**
30:7
**review (1)**
11:19
**reviewed (3)**
6:11;7:2;29:5
**revisionist (1)**
47:3
**revisited (1)**
45:20
**right (39)**
5:24;6:11;8:6,19;
9:20;10:19;11:8,9;
14:9,9,11,14,17;17:24;
26:22,24;27:7;28:9;
29:13,13;31:8;36:11,
13;37:15,25;39:5,12,
12;40:21;41:21;43:4,
10;45:18,25;49:13,16;
50:16,16;52:8
**rights (3)**
12:19;23:5;35:11
**rise (2)**
28:13;35:1
**rises (1)**
38:2
**risk (2)**
40:7;53:6
**risk-reward (1)**
55:4
**road (2)**
48:15;53:13
**routine (2)**
33:18,19
**RSA (6)**

35:21;36:1,5,14,19,
20
**Rule (4)**
16:5;22:12;23:21;
50:15
**ruling (1)**
16:6

**S**

**same (5)**
15:5;36:1,21;42:7;
55:11
**SAN (3)**
5:1;16:16;53:19
**sanguine (1)**
45:13
**Santa (1)**
45:23
**save (3)**
11:11;20:1;53:1
**saving (1)**
35:25
**saw (2)**
9:14;11:9
**saying (3)**
29:20;40:18;53:18
**scare (1)**
9:18
**score (1)**
18:7
**screen (2)**
7:18;10:17
**seat (1)**
12:16
**Section (5)**
15:9;16:25,25;27:15;
51:21
**securities (29)**
13:1,7,8,15,17;18:9;
21:8;22:10,22,25;24:4;
25:2;28:23;29:11,21;
30:6,17,17;32:8,16;
34:16,22;38:7;48:7;
49:5,8,10,18;52:10
**seek (3)**
22:17,19;41:4
**seeking (1)**
46:25
**seem (3)**
7:10,10;42:7
**seems (3)**
6:17;15:20;52:15
**self-evident (1)**
53:4
**self-interest (3)**
13:13;24:7;28:8
**send (1)**
10:8
**sense (3)**
24:22;25:9;39:19
**separate (2)**
54:6;55:11

**separately (1)**
30:20
**served (1)**
49:20
**services (1)**
51:18
**session (1)**
5:4
**sessions (1)**
12:23
**set (3)**
15:3;18:6;23:1
**settle (2)**
14:5;38:5
**settled (5)**
35:22;36:2,6,17,22
**settlement (10)**
25:24,24;26:3;33:12,
12,15;35:24;36:4,21;
54:25
**settlements (1)**
35:20
**several (5)**
13:3;19:14;21:4;
52:13,16
**shall (1)**
11:12
**share (1)**
10:2
**shareholder (1)**
49:15
**shareholders (1)**
48:21
**shows (1)**
51:2
**shut (1)**
13:8
**sic (2)**
29:4;43:16
**side (4)**
52:2;53:5,7;54:22
**sight (1)**
12:2
**signed (3)**
6:5;9:7;27:13
**significant (5)**
13:21;18:19;34:10;
35:25;46:17
**significantly (2)**
24:11;35:10
**silent (1)**
13:14
**Silveira (16)**
5:7,9,10,12,15,15,17,
24;6:1,11,14;7:15,20,
24;8:2,5
**Similar (2)**
40:1;54:19
**similarly (1)**
28:4
**simply (2)**
13:14;30:21
**single (4)**

Case: 19-30088   Doc# 9822   Filed: 12/16/20   Entered: 12/16/20 16:18:22   Page 66
of 68

14:18,19;25:6;38:14
**singular (1)**
28:4
**sitting (1)**
51:10
**situated (1)**
28:4
**situation (2)**
25:4;51:12
**situations (1)**
17:7
**six (1)**
46:16
**Slack (3)**
8:15,18;27:13
**slightly (1)**
6:17
**so-called (2)**
5:22;8:7
**solely (3)**
13:13;23:17;49:8
**solvency (3)**
22:7,12;42:5
**solvent (2)**
30:25;42:8
**solving (1)**
13:2
**somebody (3)**
42:6;48:15;51:2
**somebody's (1)**
17:21
**somehow (4)**
27:23;37:22;38:6;
41:9
**someone (3)**
6:5,20;10:25
**somewhat (1)**
25:8
**somewhere (1)**
11:6
**soon (1)**
55:14
**sooner (1)**
19:22
**sorry (4)**
34:19;37:13;39:11;
47:14
**sort (1)**
7:3
**sought (1)**
47:25
**sources (1)**
35:9
**speak (3)**
14:22;41:20;53:7
**speaking (3)**
12:9;48:20;51:6
**specific (1)**
25:23
**specifically (4)**
14:1;22:16;29:25;
31:8
**spend (1)**

12:15
**spite (1)**
32:9
**spoke (2)**
10:7;38:19
**stake (2)**
23:6;55:4
**stakeholders (3)**
19:7;22:18;35:12
**stand (2)**
10:20;53:19
**standard (9)**
14:15;18:23;26:4,6,
15;27:10;33:25;35:4;
55:3
**start (2)**
24:19;46:4
**started (2)**
24:20;40:1
**state (3)**
5:13;36:5;54:3
**statement (13)**
13:6;18:8;22:4;
26:11;28:20;32:11,13,
21;33:6,23;34:6,12;
53:21
**status (2)**
22:22,24
**statute (2)**
26:20;27:5
**statutory (1)**
48:19
**stay (4)**
10:16;36:3;51:23;
55:25
**stayed (1)**
13:14
**steamrolled (1)**
13:15
**still (3)**
21:23;27:15;51:23
**stragglers (1)**
46:15
**straight (2)**
16:25;41:9
**straightened (1)**
53:21
**strictly (1)**
34:8
**strike (1)**
16:20
**strikes (2)**
20:4;25:8
**string (1)**
43:14
**struck (1)**
42:2
**subject (1)**
20:24
**submitted (1)**
54:9
**subordinate (1)**
23:4

**subordination (1)**
48:19
**subrogation (5)**
35:15,15,21;36:19;
46:23
**subsequent (1)**
52:17
**substantial (37)**
11:23;15:7,15,20;
18:14,23;22:17,20;
24:23;25:5,9,21;26:4,6,
16,21;27:5,6,17,24;
28:14,18;29:3;32:15;
33:1,9,14,19,21;34:4;
35:2,6;38:3,15;39:24;
43:20;46:24
**substantiate (1)**
33:21
**substantive (2)**
12:11;30:24
**succeed (3)**
52:18,19,21
**successful (4)**
17:10;18:15;43:4;
50:14
**suffered (2)**
22:9;49:13
**suggest (3)**
42:20;43:21,23
**suggested (1)**
53:16
**suggesting (1)**
33:14
**suggestion (2)**
32:1,2
**summary (1)**
34:1
**support (1)**
29:2
**supporting (1)**
33:14
**sure (7)**
6:12;8:18;14:7;
34:21;40:25;42:4;46:5
**surprise (1)**
55:21
**sustain (1)**
7:4
**swathe (1)**
52:22

---

**T**

**table (4)**
12:17;30:9;45:1,2
**talk (1)**
52:15
**talking (8)**
14:9;16:17;29:18;
37:11;38:17;48:7;51:2;
53:4
**tangible (2)**
18:19;34:10

**tantamount (1)**
35:17
**Tayisha (1)**
6:8
**technical (3)**
9:24;10:3;54:17
**teenager (1)**
11:6
**ten (6)**
11:14;23:9;24:13;
45:12,14,21
**term (1)**
49:14
**terminology (2)**
26:18;27:9
**terms (6)**
12:13;20:6,20;33:22;
52:22;53:8
**test (3)**
15:12;18:1;28:10
**Texaco (1)**
18:13
**theme (1)**
13:12
**theory (3)**
50:7,8;51:19
**therefore (3)**
11:10;37:1;48:24
**third-party (1)**
35:9
**thirty-third (1)**
6:21
**Thomas (1)**
54:5
**though (2)**
18:18;50:5
**thought (5)**
8:18;9:11;39:12,13;
51:23
**thousands (2)**
13:19;28:23
**three (4)**
20:6;35:7;36:10;
48:1
**threw (1)**
44:13
**throughout (2)**
42:23;43:14
**thrust (1)**
12:6
**ties (1)**
38:1
**tight (1)**
12:20
**timely (3)**
13:9;19:9;32:17
**times (1)**
27:14
**today (7)**
5:20,21;6:3,5;8:24;
9:16;10:3
**today's (1)**
7:19

**told (1)**
51:13
**tomorrow (3)**
44:9;51:3;52:2
**took (5)**
9:17;19:24;46:7,12;
52:23
**top (1)**
46:11
**tort (3)**
35:15;36:1,19
**tossed (1)**
52:1
**totally (1)**
31:22
**touch (1)**
10:5
**touched (1)**
20:8
**traded (1)**
22:10
**transitive (1)**
37:23
**treated (2)**
7:11;30:22
**treatment (10)**
12:25;13:7;18:9;
21:9;22:23;30:24;
32:14;34:13;36:6;
52:24
**trial (1)**
14:6
**trials (1)**
36:4
**tried (1)**
11:3
**true (4)**
32:20;37:25;38:15,
15
**trust (1)**
11:10
**truth (1)**
35:19
**try (5)**
9:20;10:8,12;26:3;
34:13
**trying (1)**
16:15;34:20
**Tubbs (1)**
36:4
**TUESDAY (1)**
5:1
**turn (3)**
10:13;45:23,25
**turned (1)**
45:24
**twenty (2)**
35:21;45:14
**twenty-five (1)**
55:1
**twenty-minute (1)**
23:9
**two (7)**

Case: 19-30088    Doc# 9822    Filed: 12/16/20    Entered: 12/16/20 16:18:22    Page 67
of 68

18:22;28:16;30:2;
40:20,21,24;42:13

**U**

**ultimately (9)**
12:19;17:7;18:8;
20:2,23;21:10,14;49:2;
53:1
**under (21)**
7:11;9:9;14:13;
17:11,12,19;18:9;
21:10;22:23;25:3,22;
30:19,22;34:15;35:20;
37:20;38:1;45:12;
47:20,22;55:21
**underlying (1)**
24:25
**undertaken (1)**
11:18
**underwriters (1)**
55:10
**unfortunately (2)**
9:25;21:17
**unhappy (1)**
30:2
**unique (2)**
25:4;52:25
**universe (1)**
48:20
**unless (6)**
7:18;9:7;20:24;
45:22;48:15;49:24
**unlikely (1)**
54:10
**unsecured (5)**
13:22;17:8;30:19;
46:21,22
**unsuccessful (2)**
11:4;16:13
**up (14)**
6:8;9:11,14,17,20;
11:16;16:25;38:6;
39:14;43:1,3,8,9;51:2
**upon (9)**
16:6;17:12;20:8,15,
21;34:13;54:25;55:2,
12
**upwards (1)**
15:14
**use (5)**
16:22;17:25;39:17;
42:16;49:14
**used (1)**
51:22
**Utilities (1)**
7:9
**utilizing (1)**
18:1

**V**

**valid (1)**

25:7
**validity (2)**
44:18;45:4
**value (7)**
27:23,25;36:3;38:7,
8;40:21;55:5
**venture (1)**
17:14
**verdict (1)**
14:6
**versa (1)**
54:10
**very-well (1)**
54:13
**vice (1)**
54:10
**victimized (1)**
49:17
**victims (2)**
13:23;46:23
**view (4)**
13:24;15:13;40:1;
41:11
**viewed (2)**
32:15;33:7
**vindicate (1)**
12:18
**violation (1)**
49:18
**violations (4)**
13:5;23:23,24;47:7
**virtue (2)**
17:4;49:10

**W**

**wait (7)**
10:4;44:5,19;45:22;
47:9,11;51:13
**waiting (3)**
10:10;21:23;45:5
**wants (1)**
39:20
**watching (1)**
8:6
**way (7)**
5:25;14:6;24:5;
31:18,25;45:4,4
**weight (1)**
28:5
**Weil (1)**
24:17
**welcome (1)**
52:6
**well-established (1)**
51:21
**weren't (1)**
31:6
**what's (4)**
6:13;21:12;55:4,10
**Whereupon (1)**
56:5
**whole (3)**

26:18;27:13;32:3
**who's (1)**
6:2
**willing (1)**
37:20
**win (1)**
55:6
**wire (1)**
32:24
**wish (2)**
16:23;55:24
**within (1)**
30:19
**without (6)**
12:19;13:22;44:5;
45:5;49:9;50:19
**words (4)**
33:16;40:18;43:4;
47:21
**work (2)**
12:5;41:6
**working (2)**
10:23;32:18
**world (1)**
14:4
**worst (2)**
47:3
**worth (4)**
17:16;28:15;46:16;
55:6
**Wow (1)**
21:21
**wrong (1)**
30:1

**Y**

**Yair (1)**
6:6
**Y-A-I-R (1)**
6:6

**Z**

**zero (1)**
18:4

**1**

**105 (1)**
52:19
**11 (5)**
32:13;33:18;34:11;
36:17;41:7
**11th (1)**
11:21
**13.5 (1)**
36:2
**15 (1)**
5:1
**19 (1)**
29:5
**19th (1)**

12:23

**2**

**2 (1)**
26:15
**20 (2)**
29:5;32:22
**2019 (1)**
29:5
**2020 (1)**
5:1
**24th (1)**
12:7
**27 (1)**
32:23
**2nd (1)**
29:5

**3**

**3 (2)**
39:19,21
**30 (1)**
24:15
**30th (2)**
42:20;43:1
**330 (6)**
15:9;16:25;17:6,12;
51:12,21
**36 (1)**
36:1

**4**

**4 (2)**
39:19;41:25
**47 (1)**
34:5

**5**

**503 (16)**
8:7;14:20;15:2;
16:25;17:12;18:24;
22:16;36:9,10;37:1;
52:3,5,16,18;53:10,11
**503b (1)**
34:7
**510b (4)**
22:8,12;48:19;54:13
**5th (1)**
19:12

**7**

**7,000 (8)**
16:3,19,20;30:9;
49:19;50:6;51:2,7
**7,000-plus (6)**
16:1;18:3;24:9;
46:14,15;47:18
**7023 (14)**

16:5,7;23:18,21,25;
24:2;29:10,22;47:2,4,
17;50:13,15;52:22
**723 (2)**
43:15,16

**8**

**8th (1)**
19:18

Case: 19-30088   Doc# 9822   Filed: 12/16/20   Entered: 12/16/20 16:18:22   Page 68
of 68