**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit 2**

**Revised Proposed Order (redline)**

WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (pro hac vice)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 415 636 9251

*Attorneys for Debtors and*
*Reorganized Debtors*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>Affects PG&E Corporation<br>Affects Pacific Gas and Electric Company<br>Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case Nos. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>**[PROPOSED] ORDER APPROVING SECURITIES ADR AND RELATED PROCEDURES FOR RESOLVING SUBORDINATED SECURITIES CLAIMS** |

Upon the motion, dated September 1, 2020 (the "**Motion**"),[1] of PG&E Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (together, the "**Debtors**" or, as reorganized pursuant to the Plan, the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of an order:

(a) approving the procedures, attached hereto as **Exhibit A-1** (the "**Securities Claim Information Procedures**"), requiring Subordinated Securities Claimants to submit to the Reorganized Debtors the trading data information with respect to the Subordinated Securities Claims necessary to allow the Reorganized Debtors to evaluate the individual Subordinated Securities Claims;

(b) approving the procedures, attached hereto as **Exhibit A-2** (the "**Securities ADR Procedures**"), for facilitating the potential settlement of Subordinated Securities Claims, including, without limitation, (i) procedures to allow the Reorganized Debtors and the Subordinated Securities Claimants to exchange settlement offers, and (ii) procedures for both standard and abbreviated mandatory non-binding mediation of Subordinated Securities Claims, including, without limitation, approving the form of Abbreviated Mediation Notice and Standard Mediation Notice; and

(c) approving the procedures, attached hereto as **Exhibit A-3** (the "**Securities Omnibus Objection Procedures**," and, together with the Securities Claims Information Procedures and the Securities Omnibus Objection Procedures, the "**Securities Claims Procedures**"), to allow the Reorganized Debtors to file objections, on an omnibus basis, to Subordinated Securities Claims that are not otherwise settled and/or are procedurally defective;

and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and a hearing having been held on the Motion (the "**Hearing**"); and the Court having found and determined that notice of the Motion as provided to the parties listed therein is reasonable and sufficient, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion, the Keable Declaration, and the Radetich Declaration submitted in support thereof, as well as the objections to the Motion filed by the Public Employees Retirement

---

[1] Capitalized terms used but not herein defined have the meanings ascribed to such terms in the Motion or the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8048] (as it may be amended, modified, or supplemented or together which any exhibits or schedules thereto, the "**Plan**"), as applicable.

Association of New Mexico ("**PERA**") [Dkt. No. 9189] (the "**PERA Objection**"), Chevron Master Pension Trust and Chevron UK Pension Plan ("**Chevron**") [Dkt. No. 9190] (the "**Chevron Objection**," and together with the PERA Objection, the "**Objections**"), and the joinders thereto [Dkt. Nos. 9191–9201, 9207–9211, 9213–9214, 9216, 9218–9220, 9225–9230, 9233–9244, 9252] (the "**Joinders**," and the entities that filed the Joinders, collectively with PERA and Chevron, the "**Objectors**"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, shareholders, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein, and any remaining Objections are overruled to the extent not otherwise resolved or withdrawn prior to the Hearing.

2.      The Securities Claim Information Procedures attached hereto as **Exhibit A-1** are approved, and the Reorganized Debtors are authorized to implement the Securities Claim Information Procedures as set forth therein.

3.      The Trading Information Request Form, substantially in the form attached hereto as **Annex 1**, is approved. The Reorganized Debtors are authorized to serve the Trading Information Request Form in accordance with the Securities Claims Information Procedures. Nothing in this Order (or the Exhibits and Annexes thereto) shall be construed to require Subordinated Securities Claimants to produce information duplicative of what the claimants have previously provided. Nothing herein shall be construed to alter the rights of the parties with respect to their burdens of proof in connection with a Subordinated Securities Claim.

4.      The Securities ADR Procedures attached hereto as **Exhibit A-2**, including without limitation, the Offer Procedures and the Securities Mediation Procedures, are approved and the Reorganized Debtors are authorized to implement the Securities ADR Procedures as set forth therein.

5.     The Abbreviated Mediation Notice and the Standard Mediation Notice, substantially in the forms annexed hereto as **Annex 2** and **Annex 3**, respectively, are approved. The Reorganized Debtors are authorized to send the Abbreviated Mediation and the Standard Mediation Notice in accordance with the Securities ADR Procedures.

6.     Pursuant to Section III.A.2 and III.B.2 of the Securities ADR Procedures, the Reorganized Debtors shall, upon notice, seek approval from the Court of proposed panels of qualified and experienced mediators for each of the Abbreviated and Standard Mediations. As part of their submission(s), the Reorganized Debtors shall seek from each proposed Mediator and disclose information regarding any current or past work that the proposed Mediator has performed for, or on behalf of, the Reorganized Debtors and other potential conflicts, disclosed by the Mediator to the Reorganized Debtors, that, in the Mediator's view, could create a reasonable inference of bias. Reorganized Debtors shall include for each Mediator a resume or *curriculum vitae* showing the Mediator's college and post-graduate education, and his or her legal and ADR experience. An example can be found on the section of the Court's website for the Bankruptcy Dispute Resolution Program.

7.     The Securities Omnibus Objection Procedures attached hereto as **Exhibit A-3** are approved, and the Reorganized Debtors are authorized to implement the Securities Omnibus Objection Procedures as set forth therein.

8.     The Reorganized Debtors may object to the Subordinated Securities Claims on the grounds identified in Bankruptcy Rule 3007(d) as well as on any of the following grounds:

(a)     the Subordinated Securities Claims seek to recover amounts paid to purchase PG&E debt or equity securities where such purchase(s) occurred outside of the Subject Period as set forth in the Extended Bar Date Order;

(b)     the holder of a Subordinated Securities Claims sold all or part of his or her position(s) before the release of any purported "corrective disclosure(s)";

(c)     the Subordinated Securities Claims constitute Unauthorized Bulk Claims, but only after giving any Bulk Claim filer forty-five (45) days written notice to provide proof of authorization for such filing; and

(d)     the Subordinated Securities Claims are otherwise objectionable under applicable bankruptcy or non-bankruptcy law, including due to the failure to file timely claims by the Extended Bar Date, and statute of limitations bases.

9. The authority granted to the Reorganized Debtors to object in an omnibus objection on the additional grounds set forth in Paragraph 8 above is without prejudice to the right of any individual Subordinated Securities Claimant to oppose or contest any such objection.

10. In the event a Subordinated Securities Claim designated for the Securities ADR Procedures is not resolved through the Offer Procedures or the Securities Mediation Procedures, as applicable, the deadline for the Reorganized Debtors to object to such Subordinated Securities Claim shall be the later of (i) the deadline set forth in Section 7.1 of the Plan, and (ii) sixty (60) days after the termination of such Offer or Securities Mediation Procedures.

11. The Securities Claims Procedures shall not and do not apply to the proofs of claim (collectively, the "**Underwriter Proofs of Claim**") filed by or on behalf of Barclays Capital Inc., BNP Paribas Securities Corp., Morgan Stanley & Co. LLC, MUFG Securities Americas, Inc., The Williams Capital Group, L.P. (n/k/a Siebert Williams Shank & Co., LLC), Citigroup Global Markets Inc., J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Inc. (n/k/a BofA Securities, Inc.), Mizuho Securities USA LLC, Goldman, Sachs & Co., LLC, RBC Capital Markets, LLC, Wells Fargo Securities, LLC, BNY Mellon Capital Markets, LLC, TD Securities (USA) LLC, C.L. King & Associates, Inc., Great Pacific Securities, CIBC World Markets Corp., SMBC Nikko Securities America, Inc., U.S. Bancorp Investments, Inc., Lebenthal & Co., LLC, Mischler Financial Group, Inc., Blaylock Van, LLC, Samuel A. Ramirez & Company, Inc., and MFR Securities, Inc., in their capacity as underwriters for certain prepetition debt transactions of the Debtors (collectively, the "**Underwriters**"), arising out of or relating to the Underwriting Agreements.[2] Nothing in this Order or the Securities Claims Procedures shall in any way be

---

[2] The "**Underwriting Agreements**" include (i) that certain Underwriting Agreement dated as of February 23, 2016 among Pacific Gas and Electric Company and the representatives party thereto, as representatives of the underwriters named therein, relating to $600,000,000 aggregate principal amount of 2.95% Senior Notes due March 1, 2026, (ii) that certain Underwriting Agreement dated as of November 28, 2016 among Pacific Gas and Electric Company and the representatives party thereto, as representatives of the underwriters named therein, relating to $400,000,000 aggregate principal amount of 4.00% Senior Notes due December 1, 2046 and $250,000,000 aggregate principal amount of Floating Rate Senior Notes due November 30, 2017, and/or (iii) that certain Underwriting Agreement dated as of March 7, 2017 among Pacific Gas and Electric Company and the representatives party thereto, as representatives of the underwriters named therein, relating to

construed or interpreted to impose upon any Underwriter any liability arising from the Reorganized Debtors' actions taken in connection with the Securities Claims Procedures. For the avoidance of doubt, nothing in the Securities Claims Procedures shall, or be deemed to, disallow, constitute an objection to the Underwriter Proofs of Claim or shall, or be deemed to, prejudice the rights, claims and defenses of the Reorganized Debtors or of the Underwriters with respect to the Underwriter Proofs of Claim.

12.     Notice of the Securities Claims Procedures Motion as provided therein shall be deemed good and sufficient and the requirements of the Bankruptcy Local Rules are satisfied by such notice.

13.     The Debtors are authorized to take all necessary actions to effect the relief granted pursuant to this Order.

14.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

** END OF ORDER **

$400,000,000 aggregate principal amount of 3.30% Senior Notes due March 15, 2027 and $200,000,000 aggregate principal amount of 4.00% Senior Notes due December 1, 2046.

1
2
3
4
5                                **Exhibit A**

6                        **The Securities Claims Procedures**

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

*Attorneys for Debtors and*
*Reorganized Debtors*

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 415 636 9251

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.** | Case Nos. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>**SECURITIES ADR AND RELATED PROCEDURES FOR RESOLVING SUBORDINATED SECURITIES CLAIMS** |
| Affects PG&E Corporation<br>　　Affects Pacific Gas and Electric Company<br>　　Affects both Debtors<br><br>*\* ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).* | |

The following procedures (the "**Securities Claims Procedures**") for resolving claims, other than Excluded Claims (defined below), that are subject to subordination pursuant to section 510(b) of title 11 of the United States Code (the "**Bankruptcy Code**") (collectively, the "**Subordinated Securities Claims**" and the holders of Subordinated Securities Claims, the "**Subordinated Securities Claimants**") have been adopted and approved by Order of the Bankruptcy Court, dated [ ], 2021 [Dkt. No. [ ]] (the "**Securities Claims Procedures Order**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") of PG&E Corporation ("**HoldCo**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**," or as reorganized pursuant to the Plan (as defined below), the "**Reorganized Debtors**").

### SUMMARY OF THE SECURITIES CLAIM PROCEDURES

These Securities Claims Procedures are designed to facilitate and simplify the resolution of certain proofs of claim that have been submitted in these Chapter 11 Cases, and specifically to allow the Reorganized Debtors to pursue expedient resolutions of those claims through settlement. The Securities Claims Procedures apply to certain purported creditors who filed proofs of claim based on their alleged losses incurred related to purchases of publicly-traded PG&E debt and/or equity securities as a result of alleged inadequate or fraudulent disclosures or non-disclosures of information from April 29, 2015 through November 15, 2018, inclusive.

To that end, the Securities Claims Procedures—which are diagrammed in a user-friendly format in Exhibit B attached hereto—first provide that each claimant will receive and respond to a targeted information request regarding the claimant's trading history. The Reorganized Debtors will then decide whether to: (i) attempt to negotiate a settlement directly with the claimant; (ii) mediate with the claimant; (iii) file an omnibus objection on grounds that are common to that claimant and other claimants; and/or (iv) object to the claim on the basis that it lacks merit under the applicable federal securities laws. The Reorganized Debtors may employ one or more of these processes to resolve the Subordinated Securities Claims, and may do so sequentially for any Subordinated Securities Claim.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

These procedures are summarized more fully below:

1. **Securities Claims Information Procedures**. To allow the Reorganized Debtors to properly assess each of the individual Subordinated Securities Claims and determine the appropriate path forward for each claim under the other Securities Claims Procedures (*e.g.*, settlement offer, mediation, or potential objection), the Reorganized Debtors are requesting that all Subordinated Securities Claimants be required to provide (to the extent not already provided) the Reorganized Debtors by mail or via a user-friendly online portal with complete trading data in connection with their asserted Subordinated Securities Claims.

2. **Securities ADR Procedures.** Recognizing that the Subordinated Securities Claims are comprised of different types of claimants and varying amounts of asserted and potential damages, the Reorganized Debtors are proposing three (3) separate mechanisms for potential settlement of Subordinated Securities Claims, each of which is explained in further detail below:

   a. *The Offer Procedures*. These procedures will allow the Reorganized Debtors and Subordinated Securities Claimants to exchange settlement offers and counteroffers confidentially and without mediation;

   b. *The Abbreviated Mediation Process.* These are procedures for abbreviated mandatory, non-binding mediation because formal mediation may not be appropriate for all Subordinated Securities Claims, especially those with smaller asserted or potential claim amounts; and

   c. *The Standard Mediation Process.* These are procedures for regular mandatory, non-binding mediation, principally for claimants that have asserted or have larger potential Subordinated Securities Claims.

3. **Securities Omnibus Objection Procedures.** The Securities Omnibus Objection Procedures, which are substantially similar to those already adopted by the Court with respect to claims other than Subordinated Securities Claims, will allow the Reorganized Debtors to file objections, on an omnibus basis, to Subordinated Securities Claims that are not otherwise settled and/or are facially or procedurally defective. This process will eliminate the need to potentially file thousands of duplicative individual objections to Subordinated Securities Claims, as well as the associated expense and administrative burden both to the Reorganized Debtors and the Court.

The Reorganized Debtors believe these processes will facilitate prompt settlement and payment of the allowed Subordinated Securities Claims. If the above-described procedures do not resolve all Subordinated Securities Claims, and merits-based objections to remaining claims (if any) are required, such objections will be made pursuant to section 502 of the Bankruptcy Code and consistent with Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). If any claims remain unresolved after the implementation of these procedures, the Reorganized Debtors will propose a methodology for resolving the outstanding Subordinated Securities Claims.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# CLAIMS SUBJECT TO THE SECURITIES CLAIMS PROCEDURES

### A. Subordinated Securities Claims

The claims subject to these Securities Claims Procedures include all Subordinated Securities Claims other than Excluded Claims, as defined below. Specifically, these Securities Claims Procedures are limited to claims that fall into the following classes of claims under the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8048] (as it may be amended, modified, or supplemented and together with any exhibits or schedules thereto, the "**Plan**").[1]

<u>**Subordinated Debt Claims**</u>

(i) <u>Class 9A – HoldCo Subordinated Debt Claims</u> – any Claim against HoldCo that is subject to subordination under section 510(b) of the Bankruptcy Code, including any Claim for reimbursement, indemnification or contribution, but excluding any HoldCo Rescission or Damage Claims.

(ii) <u>Class 10B – Utility Subordinated Debt Claims</u> – any Claim against the Utility that is subject to subordination under section 510(b) of the Bankruptcy Code, including any Claim for reimbursement, indemnification or contribution.

<u>**Subordinated Equity Claims**</u>

(iii) <u>Class 10A-II – HoldCo Rescission or Damage Claims</u> – any Claim against HoldCo subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to the common stock of HoldCo.

### B. Excluded Claims

These Securities Claims Procedures shall not apply to any Subordinated Securities Claim filed by: (i) the Public Employees Retirement Association of New Mexico ("**PERA**"), (ii) York County on behalf of County of York Retirement Fund ("**York County**"), (iii) City of Warren Police and Fire Retirement System ("**City of Warren**"), (iv) Mid-Jersey Trucking Industry & Local No. 701 Pension Fund ("**Mid-Jersey**"), and (v) the Underwriters (collectively, the "**Excluded Claims**"). The holders of Excluded Claims are collectively referred to herein as "**Excluded Claimants**."[2]

---

[1] Capitalized terms used but not herein defined have the meanings ascribed to such terms in the Plan.

[2] ~~The Excluded Claimants each filed proofs of claim through counsel, referencing a complaint, filed in another proceeding that sets out in detail the claims asserted by the Excluded Claimants. The Reorganized Debtors have been actively engaged in mediation with the Excluded Claimants and their counsel. Consequently, these procedures are not necessary to continue to engage in communications or otherwise attempt to resolve the claims of the Excluded Claimants.~~

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

1
2
3
4
5          **Exhibit A-1**
6     **The Securities Claims Information Procedures**
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

The following procedures (the "**Securities Claims Information Procedures**") have been adopted and approved by Order of the Bankruptcy Court, dated [ ], 2021 [Dkt. No. [ ]] (the "**Securities Claims Procedures Order**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") of PG&E Corporation ("**HoldCo**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**," or as reorganized pursuant to the Plan, the "**Reorganized Debtors**").

## I. THE SECURITIES CLAIMS INFORMATION PROCEDURES

The Securities Claims Information Procedures are intended to, in the simplest and most expedient way, get complete trading information from the Subordinated Securities Claimants that is necessary for the Reorganized Debtors to evaluate whether a claim can be resolved consensually and the amount of any offer to settle that the Reorganized Debtors may make to each claimant.

### A. Initiating the Securities Claims Information Procedures

The Securities Claims Information Procedures begin when the Reorganized Debtors, at their sole discretion, send a Subordinated Securities Claimant the following materials (collectively, the "**Claim Information Materials**"): (i) a request for trading information (the "**Trading Information Request Form**"); and (ii) a copy of these Securities Claims Information Procedures.

The Reorganized Debtors will send the Claim Information Materials to a Subordinated Securities Claimant at the address listed on that claimant's most recently filed proof of claim. If the proof of claim indicates that the claimant is represented by counsel, the Reorganized Debtors will also send the Claim Information Materials to that claimant's counsel.

Subordinated Securities Claimants must complete and return the Trading Information Request Form no later than forty-five (45) days after the mailing of the Trading Information Request Form (the "**Information Deadline**"). The completed Trading Information Request Form must be received by the Reorganized Debtors before the Information Deadline. If the Trading Information Request Form is not returned on time, the Claimant may not receive a settlement offer or an opportunity to participate in mediation, and may be required to respond to a formal claims objection to be resolved by the Bankruptcy Court.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**B.     The Trading Information Request Form**

Each Trading Information Request Form will direct the Subordinated Securities Claimant to an online portal where the Trading Information Request Form can be completed. The Trading Information Request Form will provide clear instructions and credentials for securely accessing, and submitting information through, the online portal.

Each Subordinated Securities Claimant has already submitted a proof of claim. The *Rescission or Damage Claim Proof of Claim* form attached a list of the Reorganized Debtors' publicly traded debt and/or equity securities (the "**Securities**").

The Reorganized Debtors shall identify and inform each Subordinated Securities Claimant as to the trading information not yet received from the Claimant, as well as any asserted deficiencies in the trading history already provided by Claimant. In response to the Trading Information Request Form, Subordinated Securities Claimants shall provide the trading information not yet received from the Claimant, as well as correct any deficiencies in the trading history provided by Claimant, as identified by the Reorganized Debtors, in transaction-level detail, with respect to Securities traded during the following periods:

- **Common Stock:**  April 29, 2015 through February 12, 2019;[1]

- **Debt Securities:**  April 29, 2015 through July 1, 2020;[2]

- **Preferred Stock:**  April 29, 2015 through July 1, 2020; and

- **Options:**  April 29, 2015 through July 1, 2020.

Individual sections of the online portal will be dedicated to the different types of securities listed above. For each category, the relevant Securities will be available from a drop-down menu so that Subordinated Securities Claimants can be sure they are providing the information in the appropriate place.

---

[1] The Reorganized Debtors believe that this information is necessary to calculate potential damages (and therefore potential settlement amounts) under 15 U.S.C. § 78u-4(e) of the PSLRA.

[2] The Reorganized Debtors believe that this information is necessary to calculate potential damages (and therefore potential settlement amounts) under section 11 of the Securities Act of 1933.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## C. Returning the Trading Information Request

Trading Information Request Forms must be returned to the Reorganized Debtors on or before the Information Deadline. To reduce delays and avoid further costs to the Subordinated Securities Claimants, Trading Information Request Forms shall be submitted through the online portal, unless the Claimant in good faith determines that return by electronic submission is impracticable or impossible.

If electronic submission through the online portal is impracticable or impossible, responses to the Trading Information Request Forms must be returned to the Reorganized Debtors by mail so that they are actually received by the Reorganized Debtors on or before the Information Deadline. Mail deliveries shall be directed to:

| If by first class mail: | If by overnight courier or hand-delivery: |
|---|---|
| PG&E Corporation Claims Processing Center c/o Prime Clerk LLC Grand Central Station, PO Box 4850 New York, New York 10163-4850 | PG&E Corporation Claims Processing Center c/o Prime Clerk LLC 850 3rd Avenue, Suite 412 Brooklyn, New York 11232 |

## D. Failure to Return Trading Information Request Form by Information Deadline

If a Trading Information Request Form is not returned to the Reorganized Debtors by the Information Deadline, the Reorganized Debtors shall send an information reminder (the "**Information Reminder**") to the Subordinated Securities Claimant. The Information Reminder will provide the Subordinated Securities Claimant with an additional fourteen (14) days from the date the Information Reminder is sent to return the Trading Information Request Form (the "**Reminder Deadline**").

The Reorganized Debtors will send the Information Reminder to the e-mail address listed on the Subordinated Securities Claimant's proof of claim. If no e-mail address is listed, the Reorganized Debtors will send the Information Reminder by regular, first-class mail.

Failure to return the Trading Information Request Form by the Reminder Deadline may result in a formal objection seeking disallowance of the Subordinated Securities Claim(s) on the basis that the information provided is insufficient to establish Debtors' liability or some other basis.

### E. Next Steps

Following the timely return of a Trading Information Request Form, the Reorganized Debtors may, in their sole discretion: (i) make a settlement offer to a Subordinated Securities Claimant; (ii) designate the Subordinated Securities Claim(s) for mandatory mediation; or (iii) both.

The Reorganized Debtors reserve the right at any time to object to a Subordinated Securities Claim under section 502 of the Bankruptcy Code, consistent with Rule 3007 of the Federal Rules of Bankruptcy Procedure, as well as pursuant to the Securities Omnibus Objection Procedures set forth in the Securities Claims Procedures Order.

## II. COMPUTING TIME FOR DEADLINES

Consistent with Rule 9006(a)(1) of Federal Rules of Bankruptcy Procedure, when computing any time period specified in these Securities Claims Information Procedures: (a) exclude the day of the event that triggers the period; (b) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (c) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY  10153-0119

1

2

3

4

5 **<u>Exhibit A-2</u>**

6 **<u>The Securities ADR Procedures</u>**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

The following procedures (the "**Securities ADR Procedures**") have been adopted and approved by Order of the Bankruptcy Court, dated [ ], 2021 [Dkt. No. [ ]] (the "**Securities Claims Procedures Order**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") of PG&E Corporation ("**HoldCo**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**," or as reorganized pursuant to the Plan, the "**Reorganized Debtors**").

## I.    THE SECURITIES ADR PROCEDURES

The Securities ADR Procedures are designed to consensually resolve Subordinated Securities Claims without the cost and expense of formal litigation.  There are two major components to the Securities ADR Procedures: (i) a process by which the Reorganized Debtors exchange settlement offers with Subordinated Securities Claimants (the "**Offer Procedures**"); and (ii) mandatory, nonbinding mediation (the "**Securities Mediation Procedures**").

The Offer Procedures are described in Section II, below.  The Mediation Procedures are described in Section III, below.  For the avoidance of doubt, Section IV below applies to all aspects of the Securities ADR Procedures.

## II.    THE OFFER PROCEDURES

The Offer Procedures generally contemplate a process by which the Reorganized Debtors will make written, confidential settlement offers to certain claimants as a means to resolve and pay claims quickly and efficiently, where possible.

The Offer Procedures begin when the Reorganized Debtors, at their sole discretion, send a Subordinated Securities Claimant the following materials (collectively, the "**Offer Materials**"): (i) notice that the Subordinated Securities Claim has been submitted to the Offer Procedures (an "**Offer Notice**"); (ii) a copy of the Subordinated Securities Claimant's applicable proof(s) of claim; and (iii) a copy of these Offer Procedures.[1]

The Reorganized Debtors will send the Offer Materials to a Subordinated Securities Claimant at the address listed on that claimant's most recently filed proof of claim.  If the proof of

---

[1] For transferred claims, the Reorganized Debtors will also serve a copy of the Offer Materials on the transferee identified in the notice of transfer of claim.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

claim indicates that the claimant is represented by counsel, the Reorganized Debtors will also send the Offer Materials to that claimant's counsel.

### A. The Offer Notice

The Offer Notice will include an offer by the Reorganized Debtors to settle the Subordinated Securities Claim (a "**Settlement Offer**"). A response to the Settlement Offer must be received by the Reorganized Debtors no later than thirty-five (35) days after the mailing of the Offer Notice (the "**Settlement Response Deadline**"). The Reorganized Debtors, in their sole discretion, may agree to extend the Settlement Response Deadline.

### B. Response to the Settlement Offer

The only permitted responses to a Settlement Offer are (i) signed acceptance, or (ii) rejection and/or counteroffer. No counteroffer is required. The response to the Settlement Offer must be sent by e-mail and regular mail to the addresses provided in the Settlement Offer.

### C. The Counteroffer

Any counteroffer shall be signed by the Subordinated Securities Claimant and shall identify the specific amount that the Subordinated Securities Claimant will accept in full settlement and satisfaction of the Subordinated Securities Claim. A counteroffer may not be for an unknown, unliquidated, or indefinite amount.

### D. The Reorganized Debtors' Response to a Counteroffer

The Reorganized Debtors must respond in writing within twenty-one (21) days after the receipt of a counteroffer (the "**Counteroffer Response**"). The Counteroffer Response shall indicate that the Reorganized Debtors (i) accept the counteroffer, (ii) reject the counteroffer, or (iii) make a Revised Settlement Offer (defined below).[2]

#### 1. Acceptance of the Counteroffer

If the Reorganized Debtors accept the Counteroffer, the Reorganized Debtors will provide written confirmation to the Subordinated Securities Claimant.

---

[2] Nothing herein shall preclude the Reorganized Debtors from making a Revised Settlement Offer (as defined herein) even where the Settlement Offer is rejected and no counteroffer is provided.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

### 2. *Rejection*

If the Reorganized Debtors reject the counteroffer, they may make a revised settlement offer (a "**Revised Settlement Offer**"). In that case, the process shall continue as long as the parties desire. Alternatively, the Reorganized Debtors may terminate the Offer Procedures.

If the Reorganized Debtors reject the Counteroffer without making a Revised Settlement Offer, the Reorganized Debtors will provide written notification of their rejection to the Subordinated Securities Claimant and the Subordinated Securities Claim will, in the Reorganized Debtors' sole discretion, either be (i) submitted to nonbinding, mandatory mediation, or (ii) resolved through the claims reconciliation and objection process before the Bankruptcy Court, including the Securities Omnibus Objection Procedures set forth in Securities Claims Procedures Order.

### E. **Termination of Offer Procedures**

The Reorganized Debtors may, in their sole discretion, terminate the Offer Procedures and either (i) submit the claim to nonbinding, mandatory mediation, or (ii) seek to resolve the claim in the claims reconciliation and objection process before the Bankruptcy Court, including the Securities Omnibus Objection Procedures set forth in Securities Claims Procedures Order.

The Reorganized Debtors reserve the right, at any time, to object to a Subordinated Securities Claim under section 502 of the Bankruptcy Code, consistent with Rule 3007 of the Federal Rules of Bankruptcy Procedure, as well as pursuant to the Securities Omnibus Objection Procedures set forth in the Securities Claims Procedures Order.

### F. **Extension of Claim Objection Deadline**

In the event that these Offer Procedures have been invoked as to a Subordinated Securities Claim but have not resolved the Subordinated Securities Claim by the deadline to object to the Subordinated Securities Claim under Section 7.1 of the Plan, as extended by the Court, then such deadline shall be automatically extended until sixty (60) days after the termination of the Offer Procedures to allow the Reorganized Debtors to either (i) submit the Subordinated Securities Claim to nonbinding, mandatory mediation, or (ii) object to a Subordinated Securities Claim under

section 502 of the Bankruptcy Code, consistent with Rule 3007 of the Federal Rules of Bankruptcy Procedure, as well as pursuant to the Securities Omnibus Objection Procedures set forth in the Securities Claims Procedures Order.  For the avoidance of doubt, this provision in no way shortens the deadline to object to Subordinated Securities Claims under Section 7.1 of the Plan.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

### III.    THE SECURITIES MEDIATION PROCEDURES

The Securities Mediation Procedures are designed to consensually resolve Subordinated Securities Claims without the cost and expense of formal litigation or the need for claimants to hire attorneys or incur attorneys' fees.

The Securities Mediation Procedures create two separate processes for mandatory, non-binding mediation: (i) the Abbreviated Mediation Process, presumptively for claims where the amounts at issue do not justify a more comprehensive mediation process; and (ii) the Standard Mediation Process, typically for larger claims.  Each process involves specified procedures appropriate to the size of the claim at issue.  The Reorganized Debtors, in their sole discretion, may designate a Subordinated Securities Claim for mandatory participation in either mediation process.

The Abbreviated Mediation Process is described in Section III.A, below.  The Standard Mediation Process is described in Section III.B below.  For the avoidance of doubt, Section IV below applies to all aspects of the Securities ADR Procedures.

### A.    The Abbreviated Mediation Process

The Abbreviated Mediation Process is meant to be more efficient and less costly than formal mediation and briefing.  The Abbreviated Mediation Process begins when the Reorganized Debtors, in their sole discretion, send a Subordinated Securities Claimant the following materials (collectively, the "**Abbreviated Mediation Materials**"): (i) notice that the Subordinated Securities Claim has been submitted to the Abbreviated Mediation Process (a "**Notice of Abbreviated Mediation**"); (ii) a copy of the Subordinated Securities Claimant's applicable proof(s) of claim and; and (iii) a copy of these Securities ADR Procedures.[3]

#### 1.    The Notice of Abbreviated Mediation

The Notice of Abbreviated Mediation shall provide the applicable Subordinated Securities Claimant with notice of the date, time, identity of the Mediator and a reference or link to the posted biographical information regarding the Mediator, and the estimated duration of the mediation (the

---

[3] For transferred claims, the Reorganized Debtors will also serve a copy of the Offer Materials on the transferee identified in the notice of transfer of claim.

"**Abbreviated Mediation**") at least twenty-eight (28) days prior to the mediation date, unless otherwise agreed to by the parties.

If the chosen date and/or time of the Abbreviated Mediation is not agreeable to the Subordinated Securities Claimant, the Subordinated Securities Claimant may so inform the Mediator (defined below) so that the parties, and the Mediator, may find a mutually agreeable date and time.

All Abbreviated Mediations shall be conducted virtually via videoconference over Zoom. Subordinated Securities Claimants without videoconferencing capabilities may nevertheless participate in Abbreviated Mediation via telephonic conference.

### 2.     *Appointment of Mediator*

The Reorganized Debtors will, upon notice, present to the Bankruptcy Court for approval a panel of qualified and experienced mediators (the "**Panel of Mediators for Abbreviated Mediations**").  As part of their submission(s), the Reorganized Debtors shall seek from each proposed Mediator and disclose information regarding any current or past work that the proposed Mediator has performed for, or on behalf of, the Debtors or Reorganized Debtors and their primary legal counsel (Weil, Gotshal & Manges LLP, Keller Benvenutti Kim LLP, or Cravath, Swaine & Moore LLP) in the past five years, and other potential conflicts, disclosed by the Mediator to the Reorganized Debtors, that, in the Mediator's view, could create a reasonable inference of bias. The Reorganized Debtors will work with the Panel of Mediators for Abbreviated Mediations to develop a process of fair distribution of Abbreviated Mediations among the Mediators. The Reorganized Debtors will also post biographical information regarding each Mediator on Prime Clerk's website.

A person appointed as a Mediator must (i) be an impartial, neutral person, (ii) have no financial or personal interest in the proceedings or, except when otherwise agreed by the parties, in any related matter, and (iii) disclose any circumstances likely to create a reasonable inference of bias.  In the event a Mediator discloses any circumstances likely to create a reasonable inference of bias with respect to a particular Abbreviated Mediation, such Mediator shall withdraw from the

assignment and shall be replaced prior to the commencement of the Abbreviated Mediation.

### 3. *Fees and Costs*

The Reorganized Debtors shall pay the Mediator's fees and expenses. The parties shall each bear their own costs of the Abbreviated Mediation Process.

### 4. *Appearance at Abbreviated Mediation*

The Subordinated Securities Claimant and any counsel must appear at the Abbreviated Mediation. The Reorganized Debtors shall make all arrangements for the Abbreviated Mediation to be held over Zoom (or a similar web-based video interface) and/or telephonic conference and advise the Subordinated Securities Claimant and any of the Subordinated Securities Claimant's representatives of such arrangements. The Subordinated Securities Claimant shall make arrangements to ensure that the Subordinated Securities Claimant will be able to participate in the Abbreviated Mediation, including by ensuring a proper internet connection is available. If a Subordinated Securities Claimant that is a natural person has a hardship preventing that individual from attending an Abbreviated Mediation, the Reorganized Debtors, the Subordinated Securities Claimant, and the Mediator will meet and confer in good faith to resolve the issue and, if necessary, either party may ask the Bankruptcy Court for relief.

If a person or entity, other than the Subordinated Securities Claimant, filed the Subordinated Securities Claim on behalf of the Subordinated Securities Claimant, that person or entity must also appear at the Abbreviated Mediation. If the Subordinated Securities Claimant is not a natural person, an authorized representative must appear at the Abbreviated Mediation (the "**Authorized Representative**"). Unless otherwise agreed by the Reorganized Debtors, the Authorized Representative must have complete (and not limited) authority to settle without reversion to others not attending the Abbreviated Mediation.

### 5. *Abbreviated Mediation Procedures*

Unless the parties agree otherwise, the following deadlines apply:

**Twenty-one (21) days before the Abbreviated Mediation.** The Reorganized Debtors must e-mail the Mediator and the Subordinated Securities Claimant the following:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

- A settlement offer (the "Abbreviated Mediation Settlement Offer"); and

- A confidential background statement (the "**Background Statement**"). The Background Statement must not exceed five (5) pages.

**Seven (7) days before the Abbreviated Mediation.** The Subordinated Securities Claimant may, but is not required to, e-mail the Mediator and the Reorganized Debtors with a response. For example, the Subordinated Securities Claimant may accept the Abbreviated Mediation Settlement Offer, in which case the Reorganized Debtors shall notify the Mediator and the Subordinated Securities Claimant that the Abbreviated Mediation Settlement Offer has been accepted and that the Subordinated Securities Claim(s) at issue will be paid promptly.

If the Subordinated Securities Claimant rejects the Abbreviated Mediation Settlement Offer, the claimant may include the following:

- A counteroffer to the Abbreviated Mediation Settlement Offer; and

- A confidential response to the Background Statement (the "**Response Statement**"), which should include a short and plain statement of the facts and law upon which the Subordinated Securities Claimant relies for recovery and maintains entitle it to relief. The Subordinated Securities Claimant may, but is not required to, attach to the Response Statement exhibits, annexes, or other documents that the Subordinated Securities Claimant believes support its claim. The Response Statement must not exceed five (5) pages, excluding any attachments.

If a Subordinated Securities Claimant rejects the Abbreviated Mediation Settlement Offer, but elects not to make a counteroffer, the Subordinated Securities Claimant or, if applicable, the Authorized Individual, shall come prepared with and be expected to make a counteroffer at the Abbreviated Mediation.

### 6. *Termination of the Abbreviated Mediation*

The Abbreviated Mediation may only be terminated by the Mediator. Subject to Section IV.B, *infra*, either the Reorganized Debtors or the Subordinated Securities Claimant may request the Mediator to terminate the Abbreviated Mediation, and the Mediator shall do so if the Mediator

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

believes an impasse has been reached with respect to the Subordinated Securities Claim(s) at issue and, in the judgment of the Mediator, there is no reasonable opportunity to settle the claim in mediation.

### 7. *Next Steps*

If any Subordinated Securities Claims is not settled through the Abbreviated Mediation Process, the Reorganized Debtors may (i) only with the written consent of the Subordinated Securities Claimant, designate the Subordinated Securities Claim(s) for the Standard Mediation Process, or (ii) seek to resolve the claim in the claims reconciliation and objection process before the Bankruptcy Court, including the Securities Omnibus Objection Procedures set forth in Securities Claims Procedures Order.

The Reorganized Debtors reserve the right, at any time, to object to a Subordinated Securities Claim under section 502 of the Bankruptcy Code, consistent with Rule 3007 of the Federal Rules of Bankruptcy Procedure, as well as pursuant to the Securities Omnibus Objection Procedures set forth in the Securities Claims Procedures Order.

### B.    The Standard Mediation Process

The Standard Mediation Process begins when the Reorganized Debtors send a Subordinated Securities Claimant the following materials (collectively, the "**Standard Mediation Materials**"):  (i) notice that the Subordinated Securities Claim has been submitted to the Standard Mediation Process (a "**Notice of Standard Mediation**"); (ii) a copy of the Subordinated Securities Claimant's applicable proof(s) of claim; and (iii) a copy of these Securities ADR Procedures.[4]

### 1.    *Notice of Standard Mediation*

The Reorganized Debtors shall provide the applicable Subordinated Securities Claimant with notice of the date, time, location, identity of the Mediator and a reference or link to the posted biographical information regarding the Mediator, and the estimated duration of the mediation (the "**Standard Mediation**") at least forty-two (42) days prior to the mediation date (the "**Standard Mediation Scheduling Notice**"), unless otherwise agreed to by the parties.

If the chosen date and/or time of the Standard Mediation is not agreeable to the Subordinated Securities Claimant, the Subordinated Securities Claimant may so inform the Mediator (defined below) so that the parties, and the Mediator, may find a mutually agreeable date and time.

Absent further order from the Bankruptcy Court, all Standard Mediations shall be conducted virtually via videoconference over Zoom.  Subordinated Securities Claimants without videoconferencing capabilities may nevertheless participate in Standard Mediation via telephonic conference.

### 2.    *Appointment of Mediator*

The Reorganized Debtors will, upon notice, present to the Bankruptcy Court for approval a panel of qualified and experienced mediators for the Standard Mediations (the "**Panel of Mediators for Standard Mediations**").  As part of their submission(s), the Reorganized Debtors shall seek from each proposed Mediator and disclose information regarding any current or past

---

[4] For transferred claims, the Reorganized Debtors will also serve a copy of the Offer Materials on the transferee identified in the notice of transfer of claim.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

work that the proposed Mediator has performed for, or on behalf of, the Debtors or Reorganized Debtors and other potential conflicts, disclosed by the Mediator to the Reorganized Debtors, that, in the Mediator's view, could create a reasonable inference of bias. The Reorganized Debtors will work with the Panel of Mediators for Standard Mediations to develop a process of fair distribution of Standard Mediations among the Mediators. The Reorganized Debtors will also post biographical information regarding each Mediator on Prime Clerk's website.

A person appointed as a Mediator must (i) be an impartial, neutral person, (ii) have no financial or personal interest in the proceedings or, except when otherwise agreed by the parties, in any related matter, and (iii) disclose any circumstances likely to create a reasonable inference of bias. In the event a Mediator discloses any circumstances likely to create a reasonable inference of bias with respect to a particular Standard Mediation, such Mediator shall withdraw from the assignment and shall be replaced prior to the commencement of the Standard Mediation.

### 3. *Fees and Costs*

The Reorganized Debtors shall pay the mediator's fees and expenses. The parties shall each bear their own costs of the Standard Mediation Process.

### 4. *Appearance at Standard Mediation*

The Subordinated Securities Claimant and any counsel must appear at the Standard Mediation. The Reorganized Debtors shall make all arrangements for the Standard Mediation to be held over Zoom (or a similar web-based video interface) and/or telephonic conference and advise the Subordinated Securities Claimant and any of the Subordinated Securities Claimant's representatives of such arrangements. The Subordinated Securities Claimant shall make arrangements to ensure that the Subordinated Securities Claimant will be able to participate in the Standard Mediation, including by ensuring a proper internet connection is available. If a Subordinated Securities Claimant that is a natural person has a hardship preventing that individual from attending a Standard Mediation, the Reorganized Debtors, the Subordinated Securities Claimant, and the Mediator will meet and confer in good faith to resolve the issue and, if necessary, either party may ask the Bankruptcy Court for relief.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

If a person or entity, other than the Subordinated Securities Claimant, filed the Subordinated Securities Claim on behalf of the Subordinated Securities Claimant, that person or entity must also appear at the Standard Mediation. If the Subordinated Securities Claimant is not a natural person, an authorized representative must appear at the Standard Mediation (the "**Authorized Representative**"). Unless otherwise agreed by the Reorganized Debtors, the Authorized Representative must have complete (and not limited) authority to settle without reversion to others not attending the Standard Mediation.

5.    *Standard Securities Mediation Procedures*

Unless the parties agree otherwise, the following deadlines apply:

**Twenty-one (21) days before the Standard Mediation.** The Subordinated Securities Claimant must e-mail the Mediator and the Reorganized Debtors the following:

- A settlement demand (the "**Settlement Demand**"); and
- A confidential pre-mediation statement (the "**Opening Statement**"). The Opening Statement must not exceed fifteen (15) pages, excluding any attachments, and identify each cause of action or theory the Subordinated Securities Claimant asserts, including a short and plain statement of the facts and law upon which the Subordinated Securities Claimant relies for recovery and maintains entitle it to relief. The Opening Statement shall include, as exhibits or annexes, all documents (or summaries of voluminous documents), affidavits, and other materials on which the Subordinated Securities Claimant relies.

**Seven (7) days before the Standard Mediation.** The Reorganized Debtors must e-mail the mediator and the Subordinated Securities Claimant the following:

- A response to the settlement demand (the "**Settlement Demand Response**"); and
- A confidential response statement (the "**Rebuttal Statement**"). The Rebuttal Statement must not exceed fifteen (15) pages, excluding any attachments.

If the Settlement Demand Response contains a counteroffer to the Settlement Demand, the Subordinated Securities Claimant or, if applicable, the Authorized Individual, shall come prepared

with and be expected to make a counter-counteroffer at the Standard Mediation.

### 6. *Mediators-Eyes-Only*

At the Mediator's discretion and direction, the parties may submit additional, confidential letters or statements to the Mediator that will not be exchanged with each other, which shall receive "Mediator's-eyes-only" treatment.

### 7. *Termination of the Standard Mediation*

The Standard Mediation may only be terminated by the Mediator. Subject to Section IV.B below, either the Reorganized Debtors or the Subordinated Securities Claimant may request the Mediator to terminate the Standard Mediation, and the Mediator shall do so if the Mediator believes an impasse has been reached with respect to the Subordinated Securities Claim(s) at issue and, in the judgment of the Mediator, there is no reasonable opportunity to settle the claim in mediation.

### 8. *Next Steps*

If any Subordinated Securities Claims is not settled through the Standard Mediation Process and the mediation is terminated by the Mediator, then the Subordinated Securities Claim shall be resolved through the claims reconciliation and objection process before the Bankruptcy Court, including the Securities Omnibus Objection Procedures set forth in Securities Claims Procedures Order.

### C. Extension of Claim Objection Deadline

In the event that these Securities ADR Procedures have been invoked as to a Subordinated Securities Claim but have not resolved the Subordinated Securities Claim, the deadline to object to the Subordinated Securities Claim under Section 7.1 of the Plan shall be automatically extended until sixty (60) days after the termination of the Securities ADR Procedures. For the avoidance of doubt, this provision in no way shortens the deadline to object to Subordinated Securities Claims under Section 7.1 of the Plan.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

IV.    **MISCELLANEOUS PROVISIONS APPLICABLE TO THE SECURITIES ADR PROCEDURES**

    A.    **Settlement in Securities ADR Procedures**

If a Subordinated Securities Claim is settled through the Securities ADR Procedures, the parties will execute a settlement agreement.

    B.    **Duty to Negotiate in Good Faith**

The Subordinated Securities Claimants and the Reorganized Debtors shall negotiate in good faith in an attempt to reach an agreement for the settlement of the Subordinated Securities Claims.

    C.    **Confidentiality of Negotiations**

The settlement and mediation process is confidential and the Reorganized Debtors, the Mediator, and the Subordinated Securities Claimants, including their respective advisors, agents, and representatives, shall not disclose any offers or communications made in connection with any settlement offers or the mediation, as applicable, to anyone other than the aforementioned parties involved in the settlement or mediation process (each, a "**Permitted Party**").  Absent express agreement between the parties, no person may rely on, seek discovery of, or introduce as evidence in connection with any judicial or other proceeding, any offer, counteroffer, discussions or negotiations between the parties, or any other aspect of the Securities ADR Procedures.

    D.    **Modification of the Securities ADR Procedures**

The Reorganized Debtors and a Subordinated Securities Claimant may enter into a written agreement, without further approval of the Bankruptcy Court, to modify the foregoing Securities ADR Procedures at their mutual discretion.

    E.    **Failure to Comply with the Securities ADR Procedures**

If a Subordinated Securities Claimant or the Reorganized Debtors fail to comply with the Securities ADR Procedures, negotiate in good faith, or cooperate as may be necessary to effectuate the Securities ADR Procedures, the Bankruptcy Court may, after notice and hearing, find such conduct to be in violation of the Securities Claims Procedures Order or, with respect to a

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Subordinated Securities Claimant, an abandonment of or failure to prosecute the Subordinated Securities Claim, or both. Upon such findings, the Bankruptcy Court may, among other things, disallow and expunge the Subordinated Securities Claim, in whole or in part, or grant such other or further remedy deemed just and appropriate under the circumstances, including, without limitation, awarding attorneys' fees, other fees, and costs to the other party.

Notwithstanding anything herein, no Mediator appointed to mediate any Subordinated Securities Claim(s) may disclose any offers, counteroffers, or communications made in connection with the mediation or any of the Mediator's views concerning such mediation to anyone other than a Permitted Party unless so-ordered by the Bankruptcy Court, or another court of competent jurisdiction on its own motion, and neither the Reorganized Debtors nor the Subordinated Securities Claimant may seek or request such an order.

**F.      Prioritization and Referral of Subordinated Securities Claims to Mediation**

Given the number of Subordinated Securities Claims, the Reorganized Debtors shall have the discretion to prioritize the initiation of mandatory mediations as they see fit.

**G.      Mandatory Mediation Rules**

Mandatory mediation shall be governed by the Mediator's regular procedures, except where expressly modified in the Securities ADR Procedures. In the event of a conflict, the Securities ADR Procedures shall control. Any party to a mandatory mediation that fails to participate in good faith, on the terms described herein, may be subject to sanctions under section IV.E above.

**H.      Securities ADR Procedures Not a Prerequisite to Objection**

Notwithstanding anything herein, the Reorganized Debtors may elect to resolve a Subordinated Securities Claim in the claims reconciliation and objection process before the Bankruptcy Court at any time, regardless as to whether or not the Reorganized Debtors have previously sought to resolve such Subordinated Securities Claim through the Securities ADR Procedures prior to filing any such objection. Notwithstanding the foregoing, the Reorganized Debtors shall not file an objection (other than an Omnibus Objection) to any Subordinated Securities Claim while any Securities Mediation Procedures are scheduled or pending with respect

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

to that claim.

### I. Computing Time for Deadlines

Consistent with Rule 9006(a)(1) of Federal Rules of Bankruptcy Procedure, when computing any time period specified in these Securities ADR Procedures: (a) exclude the day of the event that triggers the period; (b) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (c) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

### J. Materials to be Provided to Mediator

Prior to any Mediation, the Reorganized Debtors shall provide each Mediator with a copy of: (i) the *Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws* (the "**TAC**") filed in *In re PG&E Corp. Securities Litigation*, No. 3:18-cv-03509-EJD (N.D. Cal.) [ECF No. 121]; (ii) all briefs filed in support of or in opposition to the defendant Directors and Underwriters motions to dismiss the TAC; and (iii) any opinions or further briefings filed in connection with the motions to dismiss the TAC.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**Exhibit A-3**

**The Securities Omnibus Objection Procedures**

The following procedures (the "**Securities Omnibus Objection Procedures**") have been adopted and approved by Order of the Bankruptcy Court, dated [ ], 2021 [Dkt. No. [ ]] (the "**Securities Claims Procedures Order**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") of PG&E Corporation ("**HoldCo**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**" or as reorganized pursuant to the Plan, the "**Reorganized Debtors**").

## I.  SECURITIES OMNIBUS OBJECTION PROCEDURES

The Securities Omnibus Objection Procedures allow the Reorganized Debtors to object to multiple Subordinated Securities Claims in a single-filed objection document (each such document, an "**Omnibus Objection**") and apply as follows:

### A.  Form of Omnibus Objection

Omnibus Objections will be numbered consecutively, irrespective of the basis for the objection.

### B.  Number of Proofs of Claim per Omnibus Objection

The Reorganized Debtors may object to no more than 250 Subordinated Securities Claims per Omnibus Objection.

### C.  Grounds for Omnibus Objection

The Reorganized Debtors may object to Subordinated Securities Claims on the grounds identified in Bankruptcy Rule 3007(d) as well as any of the following grounds:

#### 1.  *Outside Subject Period*

Certain Subordinated Securities Claimants filed claims based on purchases of securities outside of the period from April 29, 2015 through November 15, 2018, inclusive (the "**Subject Period**"). *See Order (i) Denying Securities Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim and (ii) Extending Bar Date for Certain Holders of Securities Claims for Rescission or Damages* [Dkt. No. 5943], Ex. C (the "**Extended Securities Bar Date Order**").

#### 2.  *Liquidation of Position Prior to a "Corrective Disclosure"*

Certain Subordinated Securities Claimants suffered no alleged harm where a Subordinated Securities Claimant sold his or her entire positions before any alleged "corrective disclosure"—in

other words, the claimant both bought and sold securities at allegedly inflated prices.

### 3. *Unauthorized Bulk Claims*

This omnibus objection is only available after the Reorganized Debtors have given the subjects of the objection forty-five (45) days to provide proof of authorization for such filing.

### 4. *Otherwise Objectionable*

Certain Subordinated Securities Claims are objectionable on some other common basis under applicable bankruptcy or non-bankruptcy law, including failure to file timely claims by the Extended Securities Bar Date and statute of limitations bases.

### D. **Supporting Declaration**

The Omnibus Objections shall be accompanied by an affidavit or declaration that supports the Omnibus Objections.

### E. **Proof of Claim Exhibits**

An exhibit listing the proofs of claim that are subject to the Omnibus Objection will be attached to each Omnibus Objection. Notwithstanding Bankruptcy Local Rule 3007-1(a), the Reorganized Debtors are not required to attach a copy of proofs of claim that are the subject of the objection. Each exhibit will include, among other things, the following information:

    i.     An alphabetized list of the claimants whose proofs of claim are subject to the Omnibus Objection;

    ii.    The claim numbers of the proofs of claim that are the subject of the Omnibus Objection;

    iii.   The amount of claim asserted in the proof of claim, or a statement that the claim seeks an unliquidated amount;

    iv.   The grounds for objection; and

    v.   For Omnibus Objections in which the Reorganized Debtors seek to reduce the amount of any given proof of claim, the proposed reduced claim amount.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**F.    Notice of Securities Omnibus Objection to Subordinated Securities Claimants**

Each Subordinated Securities Claimant whose claim is subject to an Omnibus Objection will be sent a copy of the Omnibus Objection, including all exhibits and attachments thereto. The Omnibus Objection will be served on the individual claimant by mail, not less than forty-two (42) days before the date set for hearing of the Omnibus Objection at the address on the claimant's most recently filed proof of claim, as well as upon any counsel of record in these cases for the Subordinated Securities Claimant. The Omnibus Objection, among other things, will:

      i.      Describe the nature of the Omnibus Objection;

      ii.      Inform the Subordinated Securities Claimant that its rights may be affected by the Omnibus Objection and encourage the Subordinated Securities Claimant to read the Omnibus Objection carefully;

      iii.      Identify a response date (each, a "**Response Deadline**") not less than 14 calendar days before the date set for hearing on the Omnibus Objection, consistent with Bankruptcy Local Rule 9014-a(c);

      iv.      Attach a copy of these Securities Omnibus Objection Procedures, which describe the requirements for filing a written response (each, a "**Response**") to the Omnibus Objection; and

      v.      Warn the Claimant that failure to file a Response may result in the Court sustaining the objection and dropping the matter from the scheduled hearing.

**G.    Order if No Response**

The Reorganized Debtors may submit an order to the Bankruptcy Court sustaining each Omnibus Objection to all proofs of claim for which the Reorganized Debtors did not receive a timely Response, without further notice to the Subordinated Securities Claimants.

**H.    Each Omnibus Objection is a Contested Matter**

Each proof of claim subject to an Omnibus Objection and the Response thereto will constitute a separate contested matter as contemplated by Bankruptcy Rule 9014, and any order entered by the Bankruptcy Court will be deemed a separate order with respect to each proof of

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

claim. Consistent with Bankruptcy Rule ~~9014~~3007(f), the finality of any order regarding a claim objection included in an Omnibus Objection shall be determined as though the claim had been subject to an individual objection. Fed. R. Bankr. P. 3007(f) provides as follows: "The finality of any order regarding a claim objection included in an omnibus objection shall be determined as though the claim had been subject to an individual objection."

**I.     Responses to Omnibus Objections**

      *1.     Contents*

Each Response must contain the following (at a minimum):

      i.      A caption setting forth the name of the Bankruptcy Court, the name of the Debtor, the case number and title of the Omnibus Objection to which the Response is directed;

      ii.      The Subordinated Securities Claimant's name, the applicable proof of claim number(s), and an explanation for the amount of the proof of claim;

      iii.      A concise statement setting forth the reasons why the Bankruptcy Court should not sustain the Omnibus Objection;

      iv.      A declaration under penalty of perjury of a person with personal knowledge of the relevant facts that support the Response; and

      v.      The Subordinated Securities Claimant's name, address, telephone number, and/or the name, address, and telephone number of the Subordinated Securities Claimant's attorney and/or designated representative to whom counsel for the Reorganized Debtors should serve a reply to the Response, if any (each, a "**Notice Address**"). If a Response contains a Notice Address that is different from the name and/or address listed on the proof of claim, the new Notice Address will be added to the existing service address(es), and future service of papers with respect to all of the Subordinated Securities Claimant's proofs of claim listed in the Omnibus Objection (including all proofs of claim to be disallowed and the surviving proofs of claim) will be

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

sent to the new Notice Address in addition to other service address(es) already on file.

### 2. *Additional Information*

To facilitate a resolution of the Omnibus Objection, the Response must include the name, address, telephone number, and email address of the person with authority to reconcile, settle, or otherwise resolve the Omnibus Objection. If such person is not the Subordinated Securities Claimant, the Response must also include the name, address, telephone number, and email address of the person with authority to reconcile, settle, or otherwise resolve the Omnibus Objection on the Subordinated Securities Claimant's behalf (the "**Additional Address**"). Unless an Additional Address is the same as the Notice Address, the Additional Address will not become the service address for future service of papers.

### 3. *Failure to Timely File a Response*

If the Subordinated Securities Claimant fails to file and serve a Response on or before the Response Deadline in compliance with the procedures set forth herein, the Reorganized Debtors will present to the Bankruptcy Court an appropriate Order granting the relief requested in the Omnibus Objection without further notice to the Subordinated Securities Claimant.

### 4. *Service of the Response*

A written response to an Omnibus Objection, consistent with the requirements described herein, must be timely served on or before the Response Deadline (which will be clearly set forth in the Notice of the Omnibus Objection). Responses should be served via the Court's ECF system. In the case of Subordinated Securities Claimants who are not able to use the ECF system, service must be made by electronic mail to the email addresses of the Reorganized Debtors' counsel as shown on the Omnibus Objection. If a Subordinated Securities Claimant does not have the ability to serve a Response electronically, the Response must be served by a postal or other commercial express service that will effect delivery not more than two business days after the Response Deadline, and the Subordinated Securities Claimant must inform the Reorganized Debtors' counsel by email, telephone, or facsimile before the Response Deadline of the Subordinated Securities

Claimant's name and phone number, the number of the Omnibus Objection, and the fact that a paper Response is being delivered by postal or other commercial express service.

### J. Reservation of Rights

Nothing in the Omnibus Objection will constitute a waiver of the right to assert any claims, defenses, counterclaims, rights of offset or recoupment, preference actions, fraudulent transfer actions, or any other claims with respect to the Subordinated Securities Claim or against the Subordinated Securities Claimant. Unless the Bankruptcy Court allows a proof of claim or specifically orders otherwise, the Reorganized Debtors have the right to object on any grounds not previously ruled upon by the Bankruptcy Court to the Subordinated Securities Claims (or to any other proofs of claim or causes of action filed by any claimant or that have been scheduled by the Reorganized Debtors) within sixty (60) days of the later of the Bankruptcy Court's order resolving the Omnibus Objection, or the termination of the final Securities ADR Procedure. An affected Subordinated Securities Claimant will receive a separate notice of any such additional objection.

## II. MISCELLANEOUS PROVISIONS

### A. Settlement of Subordinated Securities Claims

The Reorganized Debtors and a Subordinated Securities Claimant may settle any Subordinated Securities Claim subject to these Securities Claims Procedures through the Offer Procedures, Securities Mediation Procedures, or by agreement at any point. Nothing herein shall limit, expand, or otherwise modify the Reorganized Debtors' authority to settle claims pursuant to the Plan or the Confirmation Order or as otherwise authorized by the Bankruptcy Court or applicable law.

### B. Computing Time for Deadlines

Consistent with Rule 9006(a)(1) of Federal Rules of Bankruptcy Procedure, when computing any time period specified in these Securities Omnibus Objection Procedures: (a) exclude the day of the event that triggers the period; (b) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (c) include the last day of the period, but if the last day

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1  is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that

2  is not a Saturday, Sunday, or legal holiday.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit B**

**Securities Claims Procedures Roadmap**

# Securities Claims Procedures Roadmap

## STEP 1:  FILL OUT AND RETURN THE TRADING INFORMATION REQUEST FORM

If you have 28 days from when PG&E sent you the receive a Trading Information Request Form, you will have 45 days to provide your the requested trading information and data during the relevant period.  *See* Ex. A-1 §§ I.A-D.  Electronic versions of the Claim Information Materials and instructions regarding how to fill out the form can be found at [INSERT WEBSITE].

## STEP 2:  THERE ARE FOUR WAYS YOUR CLAIM(S) CAN BE RESOLVED

After receiving your completed Information Request Form, PG&E will employ at least one of the four below methods to try to resolve your claim, and may attempt others if the first does not succeed.

### Settlement Negotiations

PG&E may decide to make an offer to you to settle your claim.  You can accept the offer, reject the offer, or make a counteroffer.  *See* Ex. A-2 § II.B.

### Mediation

PG&E may decide to mediate your claim before a mediator to see whether a settlement can be reached, either in an abbreviated or standard format.

*See* Ex. A-2 § III.

### Omnibus Claim Objection

PG&E may object to your claim as one of a group of claims that PG&E believes suffers from similar defects.

*See* Ex. A-3.

### Claim Objection

PG&E may object to your claim on the basis that your claim lacks merit, including under applicable federal securities law.

**Annex 1**

**Trading Information Request Form**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

WEIL, GOTSHAL & MANGES LLP
Rickard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 415 636 9251

*Attorneys for Debtors and Reorganized Debtors*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | |
| **- and -** | Chapter 11 (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | |
| ☐ Affects PG&E Corporation ☐ Affects Pacific Gas and Electric Company ☐ Affects both Debtors | **TRADING INFORMATION REQUEST FORM** |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

## PLEASE READ THE FOLLOWING NOTICE REGARDING YOUR SUBORDINATED SECURITIES CLAIM FILED IN THE PG&E CHAPTER 11 CASES AND YOUR OBLIGATION TO SUBMIT A TRADING INFORMATION REQUEST FORM PURSUANT TO THE SECURITIES CLAIMS PROCEDURES APPROVED BY THE BANKRUPTCY COURT

Mailing Date:

Subordinated Securities Claimant(s):

Subordinated Securities Claimant Address:

Subordinated Securities Claimants Email (if applicable):

Subordinated Securities Proof of Claim Number(s):

Our records indicate that you filed a Subordinated Securities Claim against PG&E Corporation and/or Pacific Gas and Electric Company (together, "**PG&E**") in their chapter 11 cases in the United States Bankruptcy Court for the Northern District of California. A Subordinated Securities Claim is a claim under the federal securities laws relating to the purchase or acquisition of PG&E's publicly traded debt and/or equity securities during the period from April 29, 2015 through November 15, 2018.

You are receiving this Trading Information Request Form as part of the Securities Claims Procedures approved by the Bankruptcy Court on January [27], 2021. This Trading Information Request Form requests that you provide certain specified trading information that PG&E believes is necessary to evaluate the potential alleged damages with respect to your asserted claim. Below, you will find instructions as to how, and where, to provide this information, including the ability to submit your information via an online portal.

Pursuant to the Securities Claims Information Procedures, you **must complete** this Trading Information Request Form **and return** it to PG&E so that it is **received** by PG&E **within forty-five (45) days** of the above-indicated Mailing Date (the "**Information Deadline**"). For ease of submission, PG&E has provided an online portal that allows the electronic submission of the requested information.

**THE TRADING INFORMATION REQUESTED IS REQUIRED TO BE PROVIDED ACCORDING TO THE BANKRUPTCY COURT'S JANUARY [27], 2021 ORDER, AND THE PROVISION OF THIS TRADING INFORMATION IS A NECESSARY STEP IN RECEIVING AN OFFER FROM PG&E TO SETTLE YOUR CLAIM.**

2

### A. Completing the Trading Information Request Form

Please complete, and return, the Trading Information Request Form **electronically**, unless electronic submission is impracticable or impossible. Paper copies of the Trading Information Request Form are enclosed for your convenience in the event that it is impracticable or impossible to submit an online form.

To complete the Trading Information Request Form electronically, visit the online portal located here: [PORTAL WEB ADDRESS] (the "**Portal**").

To access the Portal, login with the below ID and password:

[UNIQUE ID]

[UNIQUE PASSWORD]

Once you login to the Portal, you will be asked to provide certain additional information relating to your proof(s) of claim. Information that you have already provided will be pre-populated into the Portal.

#### 1. Contact Information

Please confirm that your contact details, as reflected in the Portal, are current. PG&E will use this contact information for any further communications and correspondence regarding your proof(s) of claim.

#### 2. Trading Information

The additional information that you must provide about your trading in PG&E securities is set forth below:

[INSERT SPECIFIC DEFICIENCIES AND/OR MISSING DATA].

This information also will be identified in the online Portal.

Individual sections of the Portal are dedicated to the different types of PG&E securities, including common stock, debt securities, preferred stock, and options. For each category of PG&E securities for which you have submitted a Claim, the relevant securities will be available from a drop-down menu.

Certain information is required. The Portal will **not** allow you to submit a Trading Information Request Form if one or more required fields are blank. Before submitting a Trading Information Request Form, you **must** certify that the information you are providing is accurate as follows:

~~I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. I UNDERSTAND THAT A PERSON WHO FILES A FRAUDULENT~~

3

~~CLAIM COULD BE FINED UP TO $500,000, IMPRISONED FOR UP TO 5 YEARS, OR BOTH. 18 U.S.C. §§ 152, 157, AND 3571.~~

I HAVE EXAMINED THIS SUBMISSION AND BELIEVE IN GOOD FAITH THAT THE FOREGOING INFORMATION IS TRUE AND CORRECT.

### B. Returning the Trading Information Request Form

Pursuant to the Securities Claims Information Procedures, you **must complete** a Trading Information Request Form **and return** it to PG&E so that it is **received** by PG&E by the Information Deadline.

If it is **impracticable or impossible** for you to complete and submit the Trading Information Request Form electronically, you may mail a fully completed Trading Information Request Form to:

| If by first class mail: | If by overnight courier or hand-delivery: |
|---|---|
| PG&E Corporation Claims Processing Center c/o Prime Clerk LLC Grand Central Station, PO Box 4850 New York, New York 10163-4850 | PG&E Corporation Claims Processing Center c/o Prime Clerk LLC 850 3rd Avenue, Suite 412 Brooklyn, New York 11232 |

### C. Contacting PG&E

Questions regarding the Securities Claims Information Procedures should be directed to PG&E Claims Information Center hotline:

- (844) 339-4217 (Toll Free)

- +1 (929) 333-8977 (International)

4

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Annex 2**

**Notice of Abbreviated Mediation**

WEIL, GOTSHAL & MANGES LLP
Rickard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 415 636 9251

*Attorneys for Debtors and Reorganized
Debtors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>   - and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>               **Debtors.** | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered) |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case,*<br>*No. 19-30088 (DM).* | **NOTICE OF ABBREVIATED MEDIATION** |

**PLEASE READ THE FOLLOWING NOTICE REGARDING
YOUR SUBORDINATED SECURITIES CLAIM FILED IN THE PG&E
CHAPTER 11 CASES. YOUR CLAIM HAS BEEN DESIGNATED FOR THE
ABBREVIATED MEDIATION PROCESS.**

**AS SET FORTH BELOW, THE MEDIATION OF YOUR PROOF OF CLAIM IS
MANDATORY AND YOUR PARTICIPATION IS REQUIRED BY ORDER OF THE
BANKRUPTCY COURT.**

Mailing Date:

Subordinated Securities Claimant(s):

Subordinated Securities Claimant Address:

Subordinated Securities Claimant E-mail (if applicable):

Subordinated Securities Proof of Claim Number(s):

Our records indicate that you filed a Subordinated Securities Claim against PG&E Corporation and/or Pacific Gas and Electric Company (together, "**PG&E**") in their chapter 11 cases in the United States Bankruptcy Court for the Northern District of California. A Subordinated Securities Claim is a claim under the federal securities laws relating to the purchase or acquisition of PG&E's publicly traded debt and/or equity securities during the period from April 29, 2015 through November 15, 2018.

As part of the Securities Claims Procedures approved by the Bankruptcy Court on January [27], 2021, PG&E has designated your filed proof(s) of claim (set forth above) for participation in the Abbreviated Mediation Process. The Abbreviated Mediation Process is a simple and streamlined process that provides you and PG&E with the opportunity to resolve Subordinated Securities Claims with the help of an experienced and independent Bankruptcy Court-approved mediator, without the expense of a typical standard mediation, including the hiring of attorneys. A complete copy of the Securities Claims Procedures is attached for your reference.

The Mediation will be conducted via videoconference on [**DATE**], at [**TIME**] (the "**Mediation Date**"), before [**MEDIATOR**] (the "**Mediator**"). If you are unable to attend the Abbreviated Mediation at the chosen date and/or time, you may inform the Mediator so that you, PG&E, and the Mediator may find a mutually agreeable date and time to reschedule the mediation. **The costs of the Mediator shall be paid by PG&E. You shall have no responsibility for the costs of the Mediator.** You must make arrangements, such as ensuring internet connections, to ensure you can participate in the mediation. You will receive an email with instructions on how to attend the Abbreviated Mediation.

You will receive an email from PG&E no later than twenty-one (21) days before the Abbreviated Mediation containing (i) a settlement offer from PG&E, and (ii) a confidential background statement explaining PG&E's position. **No later than seven (7) days before the Abbreviated Mediation, you may, <u>but are not required to</u>, submit a response statement and/or a counteroffer to PG&E and the Mediator in advance of the Mediation Date.** If you and PG&E reach a settlement in advance of or during the Abbreviated Mediation, the parties will enter into a settlement agreement, and the agreed amount of your settlement payment will be delivered to you promptly after the settlement agreement has been signed and returned to PG&E.

Please refer to section III.A of the Securities ADR Procedures for more information regarding the Abbreviated Mediation Process.

WEIL:\97777859\2\67615.0015

[SCHEDULE OF APPROVED MEDIATORS AND CONTACT INFORMATION]

WEIL:\97777859\2\67615.0015

**Annex 3**

**Notice of Standard Mediation**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

WEIL, GOTSHAL & MANGES LLP
Rickard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 415 636 9251

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>   - and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                **Debtors.** | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered) |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | **NOTICE OF STANDARD MEDIATION** |

## PLEASE READ THE FOLLOWING NOTICE REGARDING YOUR SUBORDINATED SECURITIES CLAIM FILED IN THE PG&E CHAPTER 11 CASES. YOUR CLAIM HAS BEEN DESIGNATED FOR THE STANDARD MEDIATION PROCESS.

## AS SET FORTH BELOW, THE MEDIATION OF YOUR PROOF OF CLAIM IS MANDATORY AND YOUR PARTICIPATION IS REQUIRED BY ORDER OF THE BANKRUPTCY COURT.

Mailing Date:

Subordinated Securities Claimant(s):

Subordinated Securities Claimant Address:

Subordinated Securities Claimant E-mail (if applicable):

Subordinated Securities Proof of Claim Number(s):

Our records indicate that you filed a Subordinated Securities Claim against PG&E Corporation and/or Pacific Gas and Electric Company (together, "**PG&E**") in their chapter 11 cases in the United States Bankruptcy Court for the Northern District of California. A Subordinated Securities Claim is a claim under the federal securities laws relating to the purchase or acquisition of PG&E's publicly traded debt and/or equity securities during the period from April 29, 2015 through November 15, 2018.

As part of the Securities Claims Procedures approved by the Bankruptcy Court on January [27], 2021, PG&E has designated your filed proof(s) of claim (set forth above) for participation in the Standard Mediation Process. This allows you and PG&E to attempt to consensually resolve Subordinated Securities Claims without the cost and expense of formal litigation through mediation with an experienced mediator. A complete copy of the Securities Claims Procedures is attached for your reference.

The Mediation will be conducted via videoconference on [**DATE**], at [**TIME**] (the "**Mediation Date**"), before [**MEDIATOR**] (the "**Mediator**"). If you are unable to attend the Standard Mediation at the chosen date and/or time, you may inform the Mediator so that you, PG&E, and the Mediator may find a mutually agreeable date and time to reschedule the mediation. **The costs of the Mediator shall be paid by PG&E. You shall have no responsibility for the costs of the Mediator.** You must make arrangements, such as ensuring internet connections, to ensure you can participate in the mediation. You will receive an email with instructions on how to attend the Standard Mediation.

**You must email the Mediator and PG&E no later than twenty-one (21) days prior to the Mediation Date (i) a settlement demand, and (ii) a confidential opening statement**. You will receive an email from the Reorganized Debtors no later than seven (7) days prior to the Mediation Date containing (i) a response to the settlement demand, and (ii) a response statement setting forth PG&E's position with respect to the claim(s). If you and PG&E reach a settlement in advance of or during the Standard Mediation, the parties will enter into a settlement agreement, and the agreed amount of your settlement payment will be delivered to you promptly after the settlement agreement has been signed and returned to PG&E.

Please refer to section III.B of the Securities ADR Procedures for more information regarding the Standard Mediation Process.

WEIL:\97777851\2\67615.0015

[SCHEDULE OF APPROVED MEDIATORS AND CONTACT INFORMATION]

Case: 19-30088    Doc# 10006-2    Filed: 01/25/21    Entered: 01/25/21 12:00:55    Page
58 of 58
WEIL:\97777851\2\67615.0015