**HEFNER, STARK & MAROIS, LLP**
Howard S. Nevins (CA BAR ASSN No. 119366)
Aaron A. Avery (CA BAR ASSN No. 245448)
2150 River Plaza Drive, Suite 450
Sacramento, CA 95833-4136
Telephone: (916) 925-6620
Fax No: (916) 925-1127
Email: hnevins@hsmlaw.com

Attorneys for Creditor
Eagle Ridge Preserve LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA
### (San Francisco Division)

| | |
|---|---|
| In re<br><br>PG&E CORPORATION<br><br>and<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtor,<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case No. 19-30088 DM. | Case No. 19-30088 DM (Lead Case)<br><br>Chapter 11<br><br>(Jointly Administered with Case No. 19-30089 DM)<br><br>**DECLARATION OF JEFF OLBERDING IN SUPPORT OF EAGLE RIDGE PRESERVE LLC'S OPPOSITION TO REORGANIZED DEBTORS' FIFTY-FIRST OMNIBUS OBJECTION TO CLAIMS (BOOKS AND RECORDS CLAIMS)**<br><br>**Response Deadline:**<br>**January 26, 2021, 4:00 p.m. (PT)**<br><br>Hearing Information If Timely Response Made:<br><br>Date: February 9, 2021<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Telephonic Appearances Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

I, JEFF OLBERDING, declare as follows:

1. I am a co-manager of Eagle Ridge Preserve LLC ("ERP"), a creditor in the above-referenced case. I am the person at ERP most knowledgeable with respect to the claim at issue in the Objection and the Opposition. This declaration is submitted in support

of ERP's Opposition ("Opposition") to Reorganized Debtors' Fifty-First Omnibus Objection to Claims (Books And Records Claims (the "Objection").

2. I have personal knowledge of the facts set forth in this declaration. If called upon to testify as to those facts and to authenticate the exhibits referenced therein, and in this declaration, I could competently do so. As to those facts stated on information and belief, I believe them to be true.

3. ERP owns a ranch of approximately 530 acres located in Alameda County, approximately 3 miles north of the City of Livermore, California (the "Preserve"). The Preserve has a conservation easement placed on it through the Wildlife Heritage Foundation for the protection of federally and state listed endangered and threatened animal species, including the California tiger salamander, the California red-legged frog, the San Joaquin kit fox, and western burrowing owl. The Preserve provides additional benefits in addition to the protection of endangered species, including the restoration of wetland and riparian habitat. The California Department of Fish and Wildlife, U.S. Fish and Wildlife, U.S. Army Corps of Engineers and the Regional Water Quality Control Board are participating agencies in connection with the Preserve.

4. PG&E constructed a transfer station on the top of a hill on the Preserve as well as an access road to enable it to access its facility. The access road meanders up the hillside. In short, as will be demonstrated herein, PG&E's access road to its facility, and its maintenance of the road, caused severe erosion on the Preserve, a fact PG&E has acknowledged on a number of occasions. A brief recitation of the facts supporting ERP's claim for damages against PG&E follows.

5. In early February 2014, Chad Aakre, a biologist working for ERP, identified severe erosion occurring on the hillside directly below PG&E's access road on the Preserve. Mr. Aakre observed that stormwater runoff from both the hill above the road, as well as the runoff flowing down the asphalt road, was entering a drain inlet in the roadway. The collected water in the drain inlet was then discharged through a small segment of culvert pipe directly onto the earthen hillside. A large gully had formed directly below the discharge point

measuring approximately 15 feet across by 50-60 feet long. Mr. Aakre estimated the gully to be approximately 7 feet deep. Eroded soil which had been washed off the hillside had flowed downhill filling a seasonal wetland and stock pond that had been constructed the previous year. The pond and wetland were constructed as compensatory mitigation for the Caltrans/Alameda County Transportation Agency Interstate 580 Eastbound HOV Lane Project. I know the following facts to be true because I personally observed the condition of the property with Mr. Aakre on or about February 10 during a site inspection of the Preserve.

6. I conveyed information on the erosional damage to Mark Dawson, co-manager of ERP. As co-managers, Mr. Dawson and I frequently worked together on various aspects of the ERP / PG&E matter. I know that Mr. Dawson then contacted PG&E's property/easement department to notify them of the damage. In October 2014, Mr. Dawson was able to obtain the name and phone number of a PG&E representative (Oscar Devaro).

7. From my review of ERP's file on this matter, I know that Mr. Devaro conducted an inspection of the erosion damage on the Preserve on October 22, 2014. Mr. Devaro forwarded his findings to the Electrical Transmission Department.

8. Following a conversation in January 2015 between Mr. Dawson and Boris Gankin (PG&E's North Dublin Transition Station Supervisor) a letter was sent to Mr. Gankin, at his request, detailing the actions associated with ERP's attempt to engage PG&E concerning the property damage.

9. On or around February 15, 2015, following the ERP letter to Mr. Gankin, Mr. Aakre was contacted by Abdulah Arakozie, a PG&E biologist, to set a meeting date at the Preserve to address the erosional issues, including the formation of sinkholes and downslope pond/wetland sedimentation.

10. On March 5, 2015, a site meeting was held on the Preserve at which the following parties were in attendance: Azadeh Faghihi, a biologist with PG&E, Kevin O'Brien, an outside natural resource management consultant hired by PG&E, Doug Edwards with PG&E, and Erin Hitchcock with ICF, a consulting firm retained by PG&E. I was also at that meeting. In this meeting at the Preserve, PG&E verbally acknowledged responsibility for

the damage to the hillside / the Preserve. This acknowledgment of responsibility was later confirmed in various emails I received from PG&E and others involved in the repair project, over a considerable period of time. PG&E also confirmed its responsibility for the damage to the Preserve through its actions over a number of years in connection with the initiation of the design for the repair project, its work on the various permitting requirements, and scheduling of services for the repair.

11. To date, following my receipt of PG&E's Objection, I have had insufficient time to fully review ERP's file related to the erosional damage caused to the Preserve by PG&E discussed herein. My counsel and I have had insufficient time to fully review, consider, and reference all of the communications and events in this regard. We have spent as much time as possible, however, and far more than I would have preferred, to complete the work needed to finalize this declaration, the Opposition to which it relates, and the Exhibits referenced herein. Attached as Exhibit "A" to the Exhibits Cover Sheet filed by my counsel is a PDF document consisting of a total of 107 pages. Exhibit "A" consists primarily of emails related to the damage to and repair project on the Preserve. These emails, and several additional documents within Exhibit "A" were sent, received or otherwise generated at or about the time referenced on each document and have since been maintained by ERP in the ordinary course of its business. The emails (sometimes "email strings") are separated by blank pages. However, time constraints prevented my counsel and I from specifically marking each email (or email string) as a separate exhibit. My counsel and I will do that should further briefing and adjudication be required on this matter.

12. Returning to my discussion about the March 5, 2015 site meeting described in paragraph 10 above, PG&E determined, and specifically advised us, that the erosion and sedimentation were the result of poor drainage due to road run-off being focused into a storm drain inlet discharging directly onto the slope with no velocity dissipation (rock rip-rap apron). PG&E proposed to repair the 0.5-mile stretch of the paved access road and collapse and fill all existing sinkholes in order to repair the site and restore the habitat function for the Preserve. In addition to these activities, PG&E proposed to dredge two seasonal ponds,

created by the Preserve in September 2014, of the accumulated sediment resulting from the erosion of the hillside. The dredging was needed to restore habitat quality of the ponds for the listed species. PG&E determined that the proposed repair activities would occur within approximately 8.0 acres of the Preserve.

13. In summary, three major activities were proposed by PG&E: dredging of two seasonal ponds, filling and stabilizing the sinkhole areas, and repairing the road.

14. On May 5, 2010, a "Scope and Budget" were prepared by ICF and PG&E for the project. On May 13, 2015, I participated in a call with Erin Hitchcock of ICF and Azadeh Faghihi with PG&E to discuss the scope and budget for the required repair work.

15. On June 19, 2015, PG&E engaged ICF under contract to work on the repair.

16. On June 30, 2015, ICF assigned Amy Poopatanapong as Project Manager.

17. On July 2, 2015, a phone conference was held among ERP, ICF and PG&E to further discuss the scope and budget for the repair work.

18. On July 19, 2015, ICF provided a repair project overview map and calculated impacts.

19. Between July, 2015 and December, 2016, ICF and PG&E conducted species and archeological surveys, processed resource agency permit applications and California Environmental Quality Act (CEQA) documentation, and designed the project (including roadway improvements) with the engineers. Draft copies of these documents were provided electronically by e-mail from Ms. Hitchcock for my review and records, which ERP has maintained in the ordinary course.

20. On May 12, 2016, PG&E assigned Erin Rice as Project Manager. The majority of PG&E correspondence after May 12 was through Mr. Rice.

21. On June 12 2016, I was contacted by ICF's Amy Poopatanapong concerning the lengthy delay in finalizing the materials PG&E was working on to facilitate the repair work. By that point in time, I was very frustrated with the slow pace of progress on the project. To make matters worse, I was informed by Ms. Poopatanapong that the road design was complicating things with the California Department of Fish and Wildlife due to potential

"Take" of California tiger salamander and mitigation measures being required. Apparently, CDFW was seeking compensatory mitigation for the proposed work and PG&E was working with CDFW on a mitigation solution which was expected to take additional time to resolve.

22. On January 9, 2017, I was contacted by PG&E's Erin Rice who informed me that PG&E was redesigning the road portion of the project to include interim steps to prevent further damage at the site from road runoff.

23. On January 31, 2017, I was informed by Ms. Poopatanapong of ICF that permit applications were being reviewed by resource agencies.

24. On February 7, 2017 I was contacted by Serge Glushkoff of the California Department of Fish and Wildlife to advise me that he was working with PG&E and on the necessary CEQA documentation. He also stated, however, that the project had apparently switched from erosion repair to access road replacement.

25. On August 23, 2017, Erin Rice notified me that the California Department of Fish and Wildlife was still reviewing the CEQA documentation and proposed road modifications and that they had not yet obtained their agency permits. Mr. Rice also advised me that he was still waiting on the Biological Opinion from the U.S. Fish and Wildlife Service and permits from the other agencies. Further, Mr. Rice acknowledged at that time that physical work on the project might not happen in 2017 and might need to be pushed to 2018 due to the PG&E's inability to obtain regulatory permits in a timely manner.

26. On January 24, 2018, now roughly four years into this situation, I was contacted by PG&E's Erin Rice. We discussed additional modifications to the road drainage area. Mr. Rice informed me that permits were nearing completion, that PG&E was looking at fencing to exclude cattle from the work area, and that PG&E was coordinating mitigation with the California Department of Fish and Wildlife.

27. On July 12, 2018, Mr. Rice of PG&E sent me an e-mail that he was coordinating with the grazer regarding fencing associated with anticipated construction. We felt that we were finally getting to the point at which the project would commence and the repair work would be performed. Unfortunately, as detailed below, that was not to be the

case.

28. On July 27, 2018, Erin Rice sent me an e-mail advising that he was following up on items associated with fencing/grazing around the proposed work area, contractor insurance information, and verifying locations where any species will be relocated in the event they find them during construction.

29. On August 28, 2018, Mr. Rice of PG&E sent me an e-mail that he was planning to stake the construction boundaries of the project area. They were trying to minimize disturbance, including disturbance caused by trenching in exclusion fencing.

30. On September 11, 2018, Erin Rice informed me that PG&E would be mobilizing on Monday, September 24, 2018. He further advised me that the California Department of Fish and Wildlife was still finishing the Incidental "Take Permit" for the project which would likely be issued prior to the start date.

31. On September 12, 2018, Erin Rice informed me by e-mail and a phone call that PG&E had not executed its construction agreement with ERP. The California Department of Fish and Wildlife had not completed the Incidental Take Permit and PG&E would not be able to start work in 2018.

32. On May 6, 2019, I e-mailed Mr. Rice to discuss permitting and scheduling for summer construction.

33. On May 13, 2019, Mr. Rice met with me and Mr. Dawson of ERP. At that time, Mr. Rice informed us, for the first time, that PG&E would not be able to undertake the portion of the project involving the sinkholes and downslope pond/wetland sedimentation removal as those matters were outside PG&E's easement. We were instructed by Mr. Rice to file a claim with PG&E and to prepare a scope of work to submit. Our frustration at that point was palpable.

34. On June 17, 2019, Mr. Rice set up a meeting to introduce me and Mr. Dawson, as ERP representatives, to Lori Felix at PG&E who, we were told, would serve as the claims investigator for ERP's claim.

35. On June 17, 2019, pursuant to the above meeting, PG&E set up the claim,

designated #2015435459, pertaining to the drainage, sediment, sinkhole and related issues at the Preserve.

36. On August 15, 2019, Erin Rice informed me that he had obtained the California Department of Fish and Wildlife Incidental Take Permit and that PG&E would initiate the road repair project, but NOT the sinkholes and downslope pond/wetland sedimentation removal, in late August to mid-October.

37. On September 8, 2019, I caused ERP to file a Proof of Claim in PG&E's bankruptcy case, claim number 8501, proof of which is attached as Exhibit "B" to the Exhibits Cover Sheet filed herewith.

38. On September 9, 2019, I was notified by Mr. Rice that PG&E finally started construction on the road repair.

39. On September 17, 2019, I followed up with PG&E's Claims Inspector Lori Felix and was provided with additional information regarding the filing of a claim, including the phone contact to verify that the claim was "officially" filed. I then verified by phone with PG&E verifies that the claim had been filed successfully.

40. August 13, 2020, I had a call with PG&E's Lori Felix regarding the lack of communication on ERP's Claim. Ms. Felix advised me that she would research the situation and provide me with an update on its claim.

41. On August 21, 2020, I was told by Ms. Felix that she could not assist further regarding ERP's claim in the PG&E bankruptcy case or getting the work done and paid for by PG&E.

42. In late December, 2020, ERP received PG&E's Objection and related papers. ERP was then compelled to retain counsel to oppose the Objection.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on January 25, 2021, at Folsom, California

Jeff Olberding