**Exhibit A**

**The Securities Claims Procedures**

WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 415 636 9251

*Attorneys for Debtors and Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**In re:**

**PG&E CORPORATION,**

**- and -**

**PACIFIC GAS AND ELECTRIC COMPANY,**

**Debtors.**

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

* *ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).*

Case Nos. 19-30088 (DM) (Lead Case)
(Jointly Administered)

**SECURITIES ADR AND RELATED PROCEDURES FOR RESOLVING SUBORDINATED SECURITIES CLAIMS**

The following procedures (the "**Securities Claims Procedures**") for resolving claims, other than Excluded Claims (defined below), that are subject to subordination pursuant to section 510(b) of title 11 of the United States Code (the "**Bankruptcy Code**") (collectively, the "**Subordinated Securities Claims**" and the holders of Subordinated Securities Claims, the "**Subordinated Securities Claimants**") have been adopted and approved by Order of the Bankruptcy Court, dated [•], 2021 [Dkt. No. [•]] (the "**Securities Claims Procedures Order**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") of PG&E Corporation ("**HoldCo**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**," or as reorganized pursuant to the Plan (as defined below), the "**Reorganized Debtors**").

**SUMMARY OF THE SECURITIES CLAIM PROCEDURES**

These Securities Claims Procedures are designed to facilitate and simplify the resolution of certain proofs of claim that have been submitted in these Chapter 11 Cases, and specifically to allow the Reorganized Debtors to pursue expedient resolutions of those claims through settlement. The Securities Claims Procedures apply to certain purported creditors who filed proofs of claim based on their alleged losses incurred related to purchases of publicly-traded PG&E debt and/or equity securities as a result of alleged inadequate or fraudulent disclosures or non-disclosures of information from April 29, 2015 through November 15, 2018, inclusive.

To that end, the Securities Claims Procedures—which are diagrammed in a user-friendly format in Exhibit B attached hereto—first provide that each claimant will receive and respond to a targeted information request regarding the claimant's trading history. The Reorganized Debtors will then decide whether to: (i) attempt to negotiate a settlement directly with the claimant; (ii) mediate with the claimant; (iii) file an omnibus objection on grounds that are common to that claimant and other claimants; and/or (iv) object to the claim on the basis that it lacks merit under the applicable federal securities laws. The Reorganized Debtors may employ one or more of these processes to resolve the Subordinated Securities Claims, and may do so sequentially for any Subordinated Securities Claim.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

These procedures are summarized more fully below:

1. **Securities Claims Information Procedures**. To allow the Reorganized Debtors to properly assess each of the individual Subordinated Securities Claims and determine the appropriate path forward for each claim under the other Securities Claims Procedures (*e.g*., settlement offer, mediation, or potential objection), the Reorganized Debtors are requesting that all Subordinated Securities Claimants be required to provide (to the extent not already provided) the Reorganized Debtors by mail or via a user-friendly online portal with complete trading data in connection with their asserted Subordinated Securities Claims.
2. **Securities ADR Procedures.** Recognizing that the Subordinated Securities Claims are comprised of different types of claimants and varying amounts of asserted and potential damages, the Reorganized Debtors are proposing three (3) separate mechanisms for potential settlement of Subordinated Securities Claims, each of which is explained in further detail below:
    a. ***The Offer Procedures***. These procedures will allow the Reorganized Debtors and Subordinated Securities Claimants to exchange settlement offers and counteroffers confidentially and without mediation;
    b. ***The Abbreviated Mediation Process.*** These are procedures for abbreviated mandatory, non-binding mediation because formal mediation may not be appropriate for all Subordinated Securities Claims, especially those with smaller asserted or potential claim amounts; and
    c. ***The Standard Mediation Process.*** These are procedures for regular mandatory, non-binding mediation, principally for claimants that have asserted or have larger potential Subordinated Securities Claims.
3. **Securities Omnibus Objection Procedures.** The Securities Omnibus Objection Procedures, which are substantially similar to those already adopted by the Court with respect to claims other than Subordinated Securities Claims, will allow the Reorganized Debtors to file objections, on an omnibus basis, to Subordinated Securities Claims that are not otherwise settled and/or are facially or procedurally defective. This process will eliminate the need to potentially file thousands of duplicative individual objections to Subordinated Securities Claims, as well as the associated expense and administrative burden both to the Reorganized Debtors and the Court.

The Reorganized Debtors believe these processes will facilitate prompt settlement and payment of the allowed Subordinated Securities Claims. If the above-described procedures do not resolve all Subordinated Securities Claims, and merits-based objections to remaining claims (if any) are required, such objections will be made pursuant to section 502 of the Bankruptcy Code and consistent with Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## CLAIMS SUBJECT TO THE SECURITIES CLAIMS PROCEDURES

### A. Subordinated Securities Claims

The claims subject to these Securities Claims Procedures include all Subordinated Securities Claims other than Excluded Claims, as defined below. Specifically, these Securities Claims Procedures are limited to claims that fall into the following classes of claims under the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8048] (as it may be amended, modified, or supplemented and together with any exhibits or schedules thereto, the "**Plan**").[1]

**Subordinated Debt Claims**

(i) Class 9A – HoldCo Subordinated Debt Claims – any Claim against HoldCo that is subject to subordination under section 510(b) of the Bankruptcy Code, including any Claim for reimbursement, indemnification or contribution, but excluding any HoldCo Rescission or Damage Claims.

(ii) Class 10B – Utility Subordinated Debt Claims – any Claim against the Utility that is subject to subordination under section 510(b) of the Bankruptcy Code, including any Claim for reimbursement, indemnification or contribution.

**Subordinated Equity Claims**

(iii) Class 10A-II – HoldCo Rescission or Damage Claims – any Claim against HoldCo subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to the common stock of HoldCo.

### B. Excluded Claims

These Securities Claims Procedures shall not apply to any Subordinated Securities Claim filed by: (i) the Public Employees Retirement Association of New Mexico ("**PERA**"), (ii) York County on behalf of County of York Retirement Fund ("**York County**"), (iii) City of Warren Police and Fire Retirement System ("**City of Warren**"), (iv) Mid-Jersey Trucking Industry & Local No. 701 Pension Fund ("**Mid-Jersey**"), and (v) the Underwriters (collectively, the "**Excluded Claims**"). The holders of Excluded Claims are collectively referred to herein as "**Excluded Claimants**."

[1] Capitalized terms used but not herein defined have the meanings ascribed to such terms in the Plan.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# Exhibit A-1

## The Securities Claims Information Procedures

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

The following procedures (the "**Securities Claims Information Procedures**") have been adopted and approved by Order of the Bankruptcy Court, dated [•], 2021 [Dkt. No. [•]] (the "**Securities Claims Procedures Order**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") of PG&E Corporation ("**HoldCo**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**," or as reorganized pursuant to the Plan, the "**Reorganized Debtors**").

## I. THE SECURITIES CLAIMS INFORMATION PROCEDURES

The Securities Claims Information Procedures are intended to, in the simplest and most expedient way, get complete trading information from the Subordinated Securities Claimants that is necessary for the Reorganized Debtors to evaluate whether a claim can be resolved consensually and the amount of any offer to settle that the Reorganized Debtors may make to each claimant.

### A. Initiating the Securities Claims Information Procedures

The Securities Claims Information Procedures begin when the Reorganized Debtors, at their sole discretion, send a Subordinated Securities Claimant the following materials (collectively, the "**Claim Information Materials**"): (i) a request for trading information (the "**Trading Information Request Form**"); and (ii) a copy of these Securities Claims Information Procedures.

The Reorganized Debtors will send the Claim Information Materials to a Subordinated Securities Claimant at the address listed on that claimant's most recently filed proof of claim. If the proof of claim indicates that the claimant is represented by counsel, the Reorganized Debtors will also send the Claim Information Materials to that claimant's counsel.

Subordinated Securities Claimants must complete and return the Trading Information Request Form no later than forty-five (45) days after the mailing of the Trading Information Request Form (the "**Information Deadline**"). The completed Trading Information Request Form must be received by the Reorganized Debtors before the Information Deadline. If the Trading Information Request Form is not returned on time, the Claimant may not receive a settlement offer or an opportunity to participate in mediation, and may be required to respond to a formal claims objection to be resolved by the Bankruptcy Court.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**B.    The Trading Information Request Form**

Each Trading Information Request Form will direct the Subordinated Securities Claimant to an online portal where the Trading Information Request Form can be completed. The Trading Information Request Form will provide clear instructions and credentials for securely accessing, and submitting information through, the online portal.

Each Subordinated Securities Claimant has already submitted a proof of claim. The *Rescission or Damage Claim Proof of Claim* form attached a list of the Reorganized Debtors' publicly traded debt and/or equity securities (the "**Securities**").

The Reorganized Debtors shall identify and inform each Subordinated Securities Claimant as to the trading information not yet received from the Claimant, as well as any asserted deficiencies in the trading history already provided by Claimant. In response to the Trading Information Request Form, Subordinated Securities Claimants shall provide the trading information not yet received from the Claimant, as well as correct any deficiencies in the trading history provided by Claimant, as identified by the Reorganized Debtors, in transaction-level detail, with respect to Securities traded during the following periods:

- **Common Stock:**  April 29, 2015 through February 12, 2019;[1]
- **Debt Securities:**  April 29, 2015 through July 1, 2020;[2]
- **Preferred Stock:**  April 29, 2015 through July 1, 2020; and
- **Options:**  April 29, 2015 through July 1, 2020.

Individual sections of the online portal will be dedicated to the different types of securities listed above. For each category, the relevant Securities will be available from a drop-down menu so that Subordinated Securities Claimants can be sure they are providing the information in the appropriate place.

---

[1] The Reorganized Debtors believe that this information is necessary to calculate potential damages (and therefore potential settlement amounts) under 15 U.S.C. § 78u-4(e) of the PSLRA.

[2] The Reorganized Debtors believe that this information is necessary to calculate potential damages (and therefore potential settlement amounts) under section 11 of the Securities Act of 1933.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

**C. Returning the Trading Information Request**

Trading Information Request Forms must be returned to the Reorganized Debtors on or before the Information Deadline. To reduce delays and avoid further costs to the Subordinated Securities Claimants, Trading Information Request Forms shall be submitted through the online portal, unless the Claimant in good faith determines that return by electronic submission is impracticable or impossible.

If electronic submission through the online portal is impracticable or impossible, responses to the Trading Information Request Forms must be returned to the Reorganized Debtors by mail so that they are actually received by the Reorganized Debtors on or before the Information Deadline. Mail deliveries shall be directed to:

| If by first class mail: | If by overnight courier or hand-delivery: |
|---|---|
| PG&E Corporation Claims Processing Center<br>c/o Prime Clerk LLC<br>Grand Central Station, PO Box 4850<br>New York, New York 10163-4850 | PG&E Corporation Claims Processing Center<br>c/o Prime Clerk LLC<br>850 3rd Avenue, Suite 412<br>Brooklyn, New York 11232 |

**D. Failure to Return Trading Information Request Form by Information Deadline**

If a Trading Information Request Form is not returned to the Reorganized Debtors by the Information Deadline, the Reorganized Debtors shall send an information reminder (the "**Information Reminder**") to the Subordinated Securities Claimant. The Information Reminder will provide the Subordinated Securities Claimant with an additional fourteen (14) days from the date the Information Reminder is sent to return the Trading Information Request Form (the "**Reminder Deadline**").

The Reorganized Debtors will send the Information Reminder to the e-mail address listed on the Subordinated Securities Claimant's proof of claim. If no e-mail address is listed, the Reorganized Debtors will send the Information Reminder by regular, first-class mail.

Failure to return the Trading Information Request Form by the Reminder Deadline may result in a formal objection seeking disallowance of the Subordinated Securities Claim(s) on the basis that the information provided is insufficient to establish Debtors' liability or some other basis.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

### E. Next Steps

Following the timely return of a Trading Information Request Form, the Reorganized Debtors may, in their sole discretion: (i) make a settlement offer to a Subordinated Securities Claimant; (ii) designate the Subordinated Securities Claim(s) for mandatory mediation; or (iii) both.

The Reorganized Debtors reserve the right at any time to object to a Subordinated Securities Claim under section 502 of the Bankruptcy Code, consistent with Rule 3007 of the Federal Rules of Bankruptcy Procedure, as well as pursuant to the Securities Omnibus Objection Procedures set forth in the Securities Claims Procedures Order.

## II. COMPUTING TIME FOR DEADLINES

Consistent with Rule 9006(a)(1) of Federal Rules of Bankruptcy Procedure, when computing any time period specified in these Securities Claims Information Procedures: (a) exclude the day of the event that triggers the period; (b) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (c) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Exhibit A-2**

**The Securities ADR Procedures**

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

The following procedures (the "**Securities ADR Procedures**") have been adopted and approved by Order of the Bankruptcy Court, dated [•], 2021 [Dkt. No. [•]] (the "**Securities Claims Procedures Order**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") of PG&E Corporation ("**HoldCo**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**," or as reorganized pursuant to the Plan, the "**Reorganized Debtors**").

## I. THE SECURITIES ADR PROCEDURES

The Securities ADR Procedures are designed to consensually resolve Subordinated Securities Claims without the cost and expense of formal litigation. There are two major components to the Securities ADR Procedures: (i) a process by which the Reorganized Debtors exchange settlement offers with Subordinated Securities Claimants (the "**Offer Procedures**"); and (ii) mandatory, nonbinding mediation (the "**Securities Mediation Procedures**").

The Offer Procedures are described in Section II, below. The Mediation Procedures are described in Section III, below. For the avoidance of doubt, Section IV below applies to all aspects of the Securities ADR Procedures.

## II. THE OFFER PROCEDURES

The Offer Procedures generally contemplate a process by which the Reorganized Debtors will make written, confidential settlement offers to certain claimants as a means to resolve and pay claims quickly and efficiently, where possible.

The Offer Procedures begin when the Reorganized Debtors, at their sole discretion, send a Subordinated Securities Claimant the following materials (collectively, the "**Offer Materials**"): (i) notice that the Subordinated Securities Claim has been submitted to the Offer Procedures (an "**Offer Notice**"); (ii) a copy of the Subordinated Securities Claimant's applicable proof(s) of claim; and (iii) a copy of these Offer Procedures.[1]

The Reorganized Debtors will send the Offer Materials to a Subordinated Securities

[1] For transferred claims, the Reorganized Debtors will also serve a copy of the Offer Materials on the transferee identified in the notice of transfer of claim.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Claimant at the address listed on that claimant's most recently filed proof of claim. If the proof of claim indicates that the claimant is represented by counsel, the Reorganized Debtors will also send the Offer Materials to that claimant's counsel.

**A. The Offer Notice**

The Offer Notice will include an offer by the Reorganized Debtors to settle the Subordinated Securities Claim (a "**Settlement Offer**"). A response to the Settlement Offer must be received by the Reorganized Debtors no later than thirty-five (35) days after the mailing of the Offer Notice (the "**Settlement Response Deadline**"). The Reorganized Debtors, in their sole discretion, may agree to extend the Settlement Response Deadline.

**B. Response to the Settlement Offer**

The only permitted responses to a Settlement Offer are (i) signed acceptance, or (ii) rejection and/or counteroffer. No counteroffer is required. The response to the Settlement Offer must be sent by e-mail and regular mail to the addresses provided in the Settlement Offer.

**C. The Counteroffer**

Any counteroffer shall be signed by the Subordinated Securities Claimant and shall identify the specific amount that the Subordinated Securities Claimant will accept in full settlement and satisfaction of the Subordinated Securities Claim. A counteroffer may not be for an unknown, unliquidated, or indefinite amount.

**D. The Reorganized Debtors' Response to a Counteroffer**

The Reorganized Debtors must respond in writing within twenty-one (21) days after the receipt of a counteroffer (the "**Counteroffer Response**"). The Counteroffer Response shall indicate that the Reorganized Debtors (i) accept the counteroffer, (ii) reject the counteroffer, or (iii) make a Revised Settlement Offer (defined below).[2]

[2] Nothing herein shall preclude the Reorganized Debtors from making a Revised Settlement Offer (as defined herein) even where the Settlement Offer is rejected and no counteroffer is provided.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

*1. Acceptance of the Counteroffer*

If the Reorganized Debtors accept the Counteroffer, the Reorganized Debtors will provide written confirmation to the Subordinated Securities Claimant.

*2. Rejection*

If the Reorganized Debtors reject the counteroffer, they may make a revised settlement offer (a "**Revised Settlement Offer**"). In that case, the process shall continue as long as the parties desire. Alternatively, the Reorganized Debtors may terminate the Offer Procedures.

If the Reorganized Debtors reject the Counteroffer without making a Revised Settlement Offer, the Reorganized Debtors will provide written notification of their rejection to the Subordinated Securities Claimant and the Subordinated Securities Claim will, in the Reorganized Debtors' sole discretion, either be (i) submitted to nonbinding, mandatory mediation, or (ii) resolved through the claims reconciliation and objection process before the Bankruptcy Court, including the Securities Omnibus Objection Procedures set forth in Securities Claims Procedures Order.

**E. Termination of Offer Procedures**

The Reorganized Debtors may, in their sole discretion, terminate the Offer Procedures and either (i) submit the claim to nonbinding, mandatory mediation, or (ii) seek to resolve the claim in the claims reconciliation and objection process before the Bankruptcy Court, including the Securities Omnibus Objection Procedures set forth in Securities Claims Procedures Order.

The Reorganized Debtors reserve the right, at any time, to object to a Subordinated Securities Claim under section 502 of the Bankruptcy Code, consistent with Rule 3007 of the Federal Rules of Bankruptcy Procedure, as well as pursuant to the Securities Omnibus Objection Procedures set forth in the Securities Claims Procedures Order.

**F. Extension of Claim Objection Deadline**

In the event that these Offer Procedures have been invoked as to a Subordinated Securities Claim but have not resolved the Subordinated Securities Claim by the deadline to object to the Subordinated Securities Claim under Section 7.1 of the Plan, as extended by the Court, then such

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

deadline shall be automatically extended until sixty (60) days after the termination of the Offer Procedures to allow the Reorganized Debtors to either (i) submit the Subordinated Securities Claim to nonbinding, mandatory mediation, or (ii) object to a Subordinated Securities Claim under section 502 of the Bankruptcy Code, consistent with Rule 3007 of the Federal Rules of Bankruptcy Procedure, as well as pursuant to the Securities Omnibus Objection Procedures set forth in the Securities Claims Procedures Order. For the avoidance of doubt, this provision in no way shortens the deadline to object to Subordinated Securities Claims under Section 7.1 of the Plan.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## III. THE SECURITIES MEDIATION PROCEDURES

The Securities Mediation Procedures are designed to consensually resolve Subordinated Securities Claims without the cost and expense of formal litigation or the need for claimants to hire attorneys or incur attorneys' fees.

The Securities Mediation Procedures create two separate processes for mandatory, non-binding mediation: (i) the Abbreviated Mediation Process, presumptively for claims where the amounts at issue do not justify a more comprehensive mediation process; and (ii) the Standard Mediation Process, typically for larger claims. Each process involves specified procedures appropriate to the size of the claim at issue. The Reorganized Debtors, in their sole discretion, may designate a Subordinated Securities Claim for mandatory participation in either mediation process.

The Abbreviated Mediation Process is described in Section III.A, below. The Standard Mediation Process is described in Section III.B below. For the avoidance of doubt, Section IV below applies to all aspects of the Securities ADR Procedures.

### A. The Abbreviated Mediation Process

The Abbreviated Mediation Process is meant to be more efficient and less costly than formal mediation and briefing. The Abbreviated Mediation Process begins when the Reorganized Debtors, in their sole discretion, send a Subordinated Securities Claimant the following materials (collectively, the "**Abbreviated Mediation Materials**"): (i) notice that the Subordinated Securities Claim has been submitted to the Abbreviated Mediation Process (a "**Notice of Abbreviated Mediation**"); (ii) a copy of the Subordinated Securities Claimant's applicable proof(s) of claim and; and (iii) a copy of these Securities ADR Procedures.[3]

#### *1. The Notice of Abbreviated Mediation*

The Notice of Abbreviated Mediation shall provide the applicable Subordinated Securities Claimant with notice of the date, time, identity of the Mediator and a reference or link to the posted biographical information regarding the Mediator, and the estimated duration of the mediation (the

---

[3] For transferred claims, the Reorganized Debtors will also serve a copy of the Offer Materials on the transferee identified in the notice of transfer of claim.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

"**Abbreviated Mediation**") at least twenty-eight (28) days prior to the mediation date, unless otherwise agreed to by the parties.

If the chosen date and/or time of the Abbreviated Mediation is not agreeable to the Subordinated Securities Claimant, the Subordinated Securities Claimant may so inform the Mediator (defined below) so that the parties, and the Mediator, may find a mutually agreeable date and time.

All Abbreviated Mediations shall be conducted virtually via videoconference over Zoom. Subordinated Securities Claimants without videoconferencing capabilities may nevertheless participate in Abbreviated Mediation via telephonic conference.

*2. Appointment of Mediator*

The Reorganized Debtors will, upon notice, present to the Bankruptcy Court for approval a panel of qualified and experienced mediators (the "**Panel of Mediators for Abbreviated Mediations**"). As part of their submission(s), the Reorganized Debtors shall seek from each proposed Mediator and disclose information regarding any current or past work that the proposed Mediator has performed for, or on behalf of, the Debtors or Reorganized Debtors and their primary legal counsel (Weil, Gotshal & Manges LLP, Keller Benvenutti Kim LLP, or Cravath, Swaine & Moore LLP) in the past five years, and other potential conflicts, disclosed by the Mediator to the Reorganized Debtors, that, in the Mediator's view, could create a reasonable inference of bias. The Reorganized Debtors will work with the Panel of Mediators for Abbreviated Mediations to develop a process of fair distribution of Abbreviated Mediations among the Mediators. The Reorganized Debtors will also post biographical information regarding each Mediator on Prime Clerk's website.

A person appointed as a Mediator must (i) be an impartial, neutral person, (ii) have no financial or personal interest in the proceedings or, except when otherwise agreed by the parties, in any related matter, and (iii) disclose any circumstances likely to create a reasonable inference of bias. In the event a Mediator discloses any circumstances likely to create a reasonable inference of bias with respect to a particular Abbreviated Mediation, such Mediator shall withdraw from the assignment and shall be replaced prior to the commencement of the Abbreviated Mediation.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*3. Fees and Costs*

The Reorganized Debtors shall pay the Mediator's fees and expenses. The parties shall each bear their own costs of the Abbreviated Mediation Process.

*4. Appearance at Abbreviated Mediation*

The Subordinated Securities Claimant and any counsel must appear at the Abbreviated Mediation. The Reorganized Debtors shall make all arrangements for the Abbreviated Mediation to be held over Zoom (or a similar web-based video interface) and/or telephonic conference and advise the Subordinated Securities Claimant and any of the Subordinated Securities Claimant's representatives of such arrangements. The Subordinated Securities Claimant shall make arrangements to ensure that the Subordinated Securities Claimant will be able to participate in the Abbreviated Mediation, including by ensuring a proper internet connection is available. If a Subordinated Securities Claimant that is a natural person has a hardship preventing that individual from attending an Abbreviated Mediation, the Reorganized Debtors, the Subordinated Securities Claimant, and the Mediator will meet and confer in good faith to resolve the issue and, if necessary, either party may ask the Bankruptcy Court for relief.

If a person or entity, other than the Subordinated Securities Claimant, filed the Subordinated Securities Claim on behalf of the Subordinated Securities Claimant, that person or entity must also appear at the Abbreviated Mediation. If the Subordinated Securities Claimant is not a natural person, an authorized representative must appear at the Abbreviated Mediation (the "**Authorized Representative**"). Unless otherwise agreed by the Reorganized Debtors, the Authorized Representative must have complete (and not limited) authority to settle without reversion to others not attending the Abbreviated Mediation.

*5. Abbreviated Mediation Procedures*

Unless the parties agree otherwise, the following deadlines apply:

**Twenty-one (21) days before the Abbreviated Mediation.** The Reorganized Debtors must e-mail the Mediator and the Subordinated Securities Claimant the following:

- A settlement offer (the "Abbreviated Mediation Settlement Offer"); and

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

- A confidential background statement (the "**Background Statement**"). The Background Statement must not exceed five (5) pages.

**Seven (7) days before the Abbreviated Mediation.** The Subordinated Securities Claimant may, but is not required to, e-mail the Mediator and the Reorganized Debtors with a response. For example, the Subordinated Securities Claimant may accept the Abbreviated Mediation Settlement Offer, in which case the Reorganized Debtors shall notify the Mediator and the Subordinated Securities Claimant that the Abbreviated Mediation Settlement Offer has been accepted and that the Subordinated Securities Claim(s) at issue will be paid promptly.

If the Subordinated Securities Claimant rejects the Abbreviated Mediation Settlement Offer, the claimant may include the following:

- A counteroffer to the Abbreviated Mediation Settlement Offer; and
- A confidential response to the Background Statement (the "**Response Statement**"), which should include a short and plain statement of the facts and law upon which the Subordinated Securities Claimant relies for recovery and maintains entitle it to relief. The Subordinated Securities Claimant may, but is not required to, attach to the Response Statement exhibits, annexes, or other documents that the Subordinated Securities Claimant believes support its claim. The Response Statement must not exceed five (5) pages, excluding any attachments.

If a Subordinated Securities Claimant rejects the Abbreviated Mediation Settlement Offer, but elects not to make a counteroffer, the Subordinated Securities Claimant or, if applicable, the Authorized Individual, shall come prepared with and be expected to make a counteroffer at the Abbreviated Mediation.

*6. Termination of the Abbreviated Mediation*

The Abbreviated Mediation may only be terminated by the Mediator. Subject to Section IV.B, *infra*, either the Reorganized Debtors or the Subordinated Securities Claimant may request the Mediator to terminate the Abbreviated Mediation, and the Mediator shall do so if the Mediator believes an impasse has been reached with respect to the Subordinated Securities Claim(s) at issue

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

and, in the judgment of the Mediator, there is no reasonable opportunity to settle the claim in mediation.

*7. Next Steps*

If any Subordinated Securities Claims is not settled through the Abbreviated Mediation Process, the Reorganized Debtors may (i) only with the written consent of the Subordinated Securities Claimant, designate the Subordinated Securities Claim(s) for the Standard Mediation Process, or (ii) seek to resolve the claim in the claims reconciliation and objection process before the Bankruptcy Court, including the Securities Omnibus Objection Procedures set forth in Securities Claims Procedures Order.

The Reorganized Debtors reserve the right, at any time, to object to a Subordinated Securities Claim under section 502 of the Bankruptcy Code, consistent with Rule 3007 of the Federal Rules of Bankruptcy Procedure, as well as pursuant to the Securities Omnibus Objection Procedures set forth in the Securities Claims Procedures Order.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**B. The Standard Mediation Process**

The Standard Mediation Process begins when the Reorganized Debtors send a Subordinated Securities Claimant the following materials (collectively, the "**Standard Mediation Materials**"): (i) notice that the Subordinated Securities Claim has been submitted to the Standard Mediation Process (a "**Notice of Standard Mediation**"); (ii) a copy of the Subordinated Securities Claimant's applicable proof(s) of claim; and (iii) a copy of these Securities ADR Procedures.[4]

*1. Notice of Standard Mediation*

The Reorganized Debtors shall provide the applicable Subordinated Securities Claimant with notice of the date, time, location, identity of the Mediator and a reference or link to the posted biographical information regarding the Mediator, and the estimated duration of the mediation (the "**Standard Mediation**") at least forty-two (42) days prior to the mediation date (the "**Standard Mediation Scheduling Notice**"), unless otherwise agreed to by the parties.

If the chosen date and/or time of the Standard Mediation is not agreeable to the Subordinated Securities Claimant, the Subordinated Securities Claimant may so inform the Mediator (defined below) so that the parties, and the Mediator, may find a mutually agreeable date and time.

Absent further order from the Bankruptcy Court, all Standard Mediations shall be conducted virtually via videoconference over Zoom. Subordinated Securities Claimants without videoconferencing capabilities may nevertheless participate in Standard Mediation via telephonic conference.

*2. Appointment of Mediator*

The Reorganized Debtors will, upon notice, present to the Bankruptcy Court for approval a panel of qualified and experienced mediators for the Standard Mediations (the "**Panel of Mediators for Standard Mediations**"). As part of their submission(s), the Reorganized Debtors shall seek from each proposed Mediator and disclose information regarding any current or past

[4] For transferred claims, the Reorganized Debtors will also serve a copy of the Offer Materials on the transferee identified in the notice of transfer of claim.

work that the proposed Mediator has performed for, or on behalf of, the Debtors or Reorganized Debtors and other potential conflicts, disclosed by the Mediator to the Reorganized Debtors, that, in the Mediator's view, could create a reasonable inference of bias. The Reorganized Debtors will work with the Panel of Mediators for Standard Mediations to develop a process of fair distribution of Standard Mediations among the Mediators. The Reorganized Debtors will also post biographical information regarding each Mediator on Prime Clerk's website.

A person appointed as a Mediator must (i) be an impartial, neutral person, (ii) have no financial or personal interest in the proceedings or, except when otherwise agreed by the parties, in any related matter, and (iii) disclose any circumstances likely to create a reasonable inference of bias. In the event a Mediator discloses any circumstances likely to create a reasonable inference of bias with respect to a particular Standard Mediation, such Mediator shall withdraw from the assignment and shall be replaced prior to the commencement of the Standard Mediation.

*3. Fees and Costs*

The Reorganized Debtors shall pay the mediator's fees and expenses. The parties shall each bear their own costs of the Standard Mediation Process.

*4. Appearance at Standard Mediation*

The Subordinated Securities Claimant and any counsel must appear at the Standard Mediation. The Reorganized Debtors shall make all arrangements for the Standard Mediation to be held over Zoom (or a similar web-based video interface) and/or telephonic conference and advise the Subordinated Securities Claimant and any of the Subordinated Securities Claimant's representatives of such arrangements. The Subordinated Securities Claimant shall make arrangements to ensure that the Subordinated Securities Claimant will be able to participate in the Standard Mediation, including by ensuring a proper internet connection is available. If a Subordinated Securities Claimant that is a natural person has a hardship preventing that individual from attending a Standard Mediation, the Reorganized Debtors, the Subordinated Securities Claimant, and the Mediator will meet and confer in good faith to resolve the issue and, if necessary, either party may ask the Bankruptcy Court for relief.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

If a person or entity, other than the Subordinated Securities Claimant, filed the Subordinated Securities Claim on behalf of the Subordinated Securities Claimant, that person or entity must also appear at the Standard Mediation. If the Subordinated Securities Claimant is not a natural person, an authorized representative must appear at the Standard Mediation (the "**Authorized Representative**"). Unless otherwise agreed by the Reorganized Debtors, the Authorized Representative must have complete (and not limited) authority to settle without reversion to others not attending the Standard Mediation.

*5. Standard Securities Mediation Procedures*

Unless the parties agree otherwise, the following deadlines apply:

**Twenty-one (21) days before the Standard Mediation.** The Subordinated Securities Claimant must e-mail the Mediator and the Reorganized Debtors the following:

- A settlement demand (the "**Settlement Demand**"); and
- A confidential pre-mediation statement (the "**Opening Statement**"). The Opening Statement must not exceed fifteen (15) pages, excluding any attachments, and identify each cause of action or theory the Subordinated Securities Claimant asserts, including a short and plain statement of the facts and law upon which the Subordinated Securities Claimant relies for recovery and maintains entitle it to relief. The Opening Statement shall include, as exhibits or annexes, all documents (or summaries of voluminous documents), affidavits, and other materials on which the Subordinated Securities Claimant relies.

**Seven (7) days before the Standard Mediation.** The Reorganized Debtors must e-mail the mediator and the Subordinated Securities Claimant the following:

- A response to the settlement demand (the "**Settlement Demand Response**"); and
- A confidential response statement (the "**Rebuttal Statement**"). The Rebuttal Statement must not exceed fifteen (15) pages, excluding any attachments.

If the Settlement Demand Response contains a counteroffer to the Settlement Demand, the Subordinated Securities Claimant or, if applicable, the Authorized Individual, shall come prepared

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

with and be expected to make a counter-counteroffer at the Standard Mediation.

*6. Mediators-Eyes-Only*

At the Mediator's discretion and direction, the parties may submit additional, confidential letters or statements to the Mediator that will not be exchanged with each other, which shall receive "Mediator's-eyes-only" treatment.

*7. Termination of the Standard Mediation*

The Standard Mediation may only be terminated by the Mediator. Subject to Section IV.B below, either the Reorganized Debtors or the Subordinated Securities Claimant may request the Mediator to terminate the Standard Mediation, and the Mediator shall do so if the Mediator believes an impasse has been reached with respect to the Subordinated Securities Claim(s) at issue and, in the judgment of the Mediator, there is no reasonable opportunity to settle the claim in mediation.

*8. Next Steps*

If any Subordinated Securities Claims is not settled through the Standard Mediation Process and the mediation is terminated by the Mediator, then the Subordinated Securities Claim shall be resolved through the claims reconciliation and objection process before the Bankruptcy Court, including the Securities Omnibus Objection Procedures set forth in Securities Claims Procedures Order.

**C. Extension of Claim Objection Deadline**

In the event that these Securities ADR Procedures have been invoked as to a Subordinated Securities Claim but have not resolved the Subordinated Securities Claim, the deadline to object to the Subordinated Securities Claim under Section 7.1 of the Plan shall be automatically extended until sixty (60) days after the termination of the Securities ADR Procedures. For the avoidance of doubt, this provision in no way shortens the deadline to object to Subordinated Securities Claims under Section 7.1 of the Plan.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## IV. MISCELLANEOUS PROVISIONS APPLICABLE TO THE SECURITIES ADR PROCEDURES

### A. Settlement in Securities ADR Procedures

If a Subordinated Securities Claim is settled through the Securities ADR Procedures, the parties will execute a settlement agreement.

### B. Duty to Negotiate in Good Faith

The Subordinated Securities Claimants and the Reorganized Debtors shall negotiate in good faith in an attempt to reach an agreement for the settlement of the Subordinated Securities Claims.

### C. Confidentiality of Negotiations

The settlement and mediation process is confidential and the Reorganized Debtors, the Mediator, and the Subordinated Securities Claimants, including their respective advisors, agents, and representatives, shall not disclose any offers or communications made in connection with any settlement offers or the mediation, as applicable, to anyone other than the aforementioned parties involved in the settlement or mediation process (each, a "**Permitted Party**"). Absent express agreement between the parties, no person may rely on, seek discovery of, or introduce as evidence in connection with any judicial or other proceeding, any offer, counteroffer, discussions or negotiations between the parties, or any other aspect of the Securities ADR Procedures.

### D. Modification of the Securities ADR Procedures

The Reorganized Debtors and a Subordinated Securities Claimant may enter into a written agreement, without further approval of the Bankruptcy Court, to modify the foregoing Securities ADR Procedures at their mutual discretion.

### E. Failure to Comply with the Securities ADR Procedures

If a Subordinated Securities Claimant or the Reorganized Debtors fail to comply with the Securities ADR Procedures, negotiate in good faith, or cooperate as may be necessary to effectuate the Securities ADR Procedures, the Bankruptcy Court may, after notice and hearing, find such conduct to be in violation of the Securities Claims Procedures Order or, with respect to a Subordinated Securities Claimant, an abandonment of or failure to prosecute the Subordinated

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Securities Claim, or both. Upon such findings, the Bankruptcy Court may, among other things, disallow and expunge the Subordinated Securities Claim, in whole or in part, or grant such other or further remedy deemed just and appropriate under the circumstances, including, without limitation, awarding attorneys' fees, other fees, and costs to the other party.

Notwithstanding anything herein, no Mediator appointed to mediate any Subordinated Securities Claim(s) may disclose any offers, counteroffers, or communications made in connection with the mediation or any of the Mediator's views concerning such mediation to anyone other than a Permitted Party unless so-ordered by the Bankruptcy Court, or another court of competent jurisdiction on its own motion, and neither the Reorganized Debtors nor the Subordinated Securities Claimant may seek or request such an order.

**F. Prioritization and Referral of Subordinated Securities Claims to Mediation**

Given the number of Subordinated Securities Claims, the Reorganized Debtors shall have the discretion to prioritize the initiation of mandatory mediations as they see fit.

**G. Mandatory Mediation Rules**

Mandatory mediation shall be governed by the Mediator's regular procedures, except where expressly modified in the Securities ADR Procedures. In the event of a conflict, the Securities ADR Procedures shall control. Any party to a mandatory mediation that fails to participate in good faith, on the terms described herein, may be subject to sanctions under section IV.E above.

**H. Securities ADR Procedures Not a Prerequisite to Objection**

Notwithstanding anything herein, the Reorganized Debtors may elect to resolve a Subordinated Securities Claim in the claims reconciliation and objection process before the Bankruptcy Court at any time, regardless as to whether or not the Reorganized Debtors have previously sought to resolve such Subordinated Securities Claim through the Securities ADR Procedures prior to filing any such objection. Notwithstanding the foregoing, the Reorganized Debtors shall not file an objection (other than an Omnibus Objection) to any Subordinated Securities Claim while any Securities Mediation Procedures are scheduled or pending with respect to that claim.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**I. Computing Time for Deadlines**

Consistent with Rule 9006(a)(1) of Federal Rules of Bankruptcy Procedure, when computing any time period specified in these Securities ADR Procedures: (a) exclude the day of the event that triggers the period; (b) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (c) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

**J. Materials to be Provided to Mediator**

Prior to any Mediation, the Reorganized Debtors shall provide each Mediator with a copy of: (i) the *Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws* (the "**TAC**") filed in *In re PG&E Corp. Securities Litigation*, No. 3:18-cv-03509-EJD (N.D. Cal.) [ECF No. 121]; (ii) all briefs filed in support of or in opposition to the defendant Directors and Underwriters motions to dismiss the TAC; and (iii) any opinions or further briefings filed in connection with the motions to dismiss the TAC.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**Exhibit A-3**

**The Securities Omnibus Objection Procedures**

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

The following procedures (the "**Securities Omnibus Objection Procedures**") have been adopted and approved by Order of the Bankruptcy Court, dated [•], 2021 [Dkt. No. [•]] (the "**Securities Claims Procedures Order**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") of PG&E Corporation ("**HoldCo**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**" or as reorganized pursuant to the Plan, the "**Reorganized Debtors**").

## I. SECURITIES OMNIBUS OBJECTION PROCEDURES

The Securities Omnibus Objection Procedures allow the Reorganized Debtors to object to multiple Subordinated Securities Claims in a single-filed objection document (each such document, an "**Omnibus Objection**") and apply as follows:

### A. Form of Omnibus Objection

Omnibus Objections will be numbered consecutively, irrespective of the basis for the objection.

### B. Number of Proofs of Claim per Omnibus Objection

The Reorganized Debtors may object to no more than 250 Subordinated Securities Claims per Omnibus Objection.

### C. Grounds for Omnibus Objection

The Reorganized Debtors may object to Subordinated Securities Claims on the grounds identified in Bankruptcy Rule 3007(d) as well as any of the following grounds:

#### *1. Outside Subject Period*

Certain Subordinated Securities Claimants filed claims based on purchases of securities outside of the period from April 29, 2015 through November 15, 2018, inclusive (the "**Subject Period**"). *See Order (i) Denying Securities Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim and (ii) Extending Bar Date for Certain Holders of Securities Claims for Rescission or Damages* [Dkt. No. 5943], Ex. C (the "**Extended Securities Bar Date Order**").

#### *2. Liquidation of Position Prior to a "Corrective Disclosure"*

Certain Subordinated Securities Claimants suffered no alleged harm where a Subordinated Securities Claimant sold his or her entire positions before any alleged "corrective disclosure"—in

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

other words, the claimant both bought and sold securities at allegedly inflated prices.

*3. Unauthorized Bulk Claims*

This omnibus objection is only available after the Reorganized Debtors have given the subjects of the objection forty-five (45) days to provide proof of authorization for such filing.

*4. Otherwise Objectionable*

Certain Subordinated Securities Claims are objectionable on some other common basis under applicable bankruptcy or non-bankruptcy law, including failure to file timely claims by the Extended Securities Bar Date and statute of limitations bases.

**D. Supporting Declaration**

The Omnibus Objections shall be accompanied by an affidavit or declaration that supports the Omnibus Objections.

**E. Proof of Claim Exhibits**

An exhibit listing the proofs of claim that are subject to the Omnibus Objection will be attached to each Omnibus Objection. Notwithstanding Bankruptcy Local Rule 3007-1(a), the Reorganized Debtors are not required to attach a copy of proofs of claim that are the subject of the objection. Each exhibit will include, among other things, the following information:

i. An alphabetized list of the claimants whose proofs of claim are subject to the Omnibus Objection;

ii. The claim numbers of the proofs of claim that are the subject of the Omnibus Objection;

iii. The amount of claim asserted in the proof of claim, or a statement that the claim seeks an unliquidated amount;

iv. The grounds for objection; and

v. For Omnibus Objections in which the Reorganized Debtors seek to reduce the amount of any given proof of claim, the proposed reduced claim amount.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**F. Notice of Securities Omnibus Objection to Subordinated Securities Claimants**

Each Subordinated Securities Claimant whose claim is subject to an Omnibus Objection will be sent a copy of the Omnibus Objection, including all exhibits and attachments thereto. The Omnibus Objection will be served on the individual claimant by mail, not less than forty-two (42) days before the date set for hearing of the Omnibus Objection at the address on the claimant's most recently filed proof of claim, as well as upon any counsel of record in these cases for the Subordinated Securities Claimant. The Omnibus Objection, among other things, will:

i. Describe the nature of the Omnibus Objection;

ii. Inform the Subordinated Securities Claimant that its rights may be affected by the Omnibus Objection and encourage the Subordinated Securities Claimant to read the Omnibus Objection carefully;

iii. Identify a response date (each, a "**Response Deadline**") not less than 14 calendar days before the date set for hearing on the Omnibus Objection, consistent with Bankruptcy Local Rule 9014-a(c);

iv. Attach a copy of these Securities Omnibus Objection Procedures, which describe the requirements for filing a written response (each, a "**Response**") to the Omnibus Objection; and

v. Warn the Claimant that failure to file a Response may result in the Court sustaining the objection and dropping the matter from the scheduled hearing.

**G. Order if No Response**

The Reorganized Debtors may submit an order to the Bankruptcy Court sustaining each Omnibus Objection to all proofs of claim for which the Reorganized Debtors did not receive a timely Response, without further notice to the Subordinated Securities Claimants.

**H. Each Omnibus Objection is a Contested Matter**

Each proof of claim subject to an Omnibus Objection and the Response thereto will constitute a separate contested matter as contemplated by Bankruptcy Rule 9014, and any order entered by the Bankruptcy Court will be deemed a separate order with respect to each proof of

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

claim. Consistent with Bankruptcy Rule 3007(f), the finality of any order regarding a claim objection included in an Omnibus Objection shall be determined as though the claim had been subject to an individual objection. Fed. R. Bankr. P. 3007(f) provides as follows: "The finality of any order regarding a claim objection included in an omnibus objection shall be determined as though the claim had been subject to an individual objection."

**I. Responses to Omnibus Objections**

*1. Contents*

Each Response must contain the following (at a minimum):

i. A caption setting forth the name of the Bankruptcy Court, the name of the Debtor, the case number and title of the Omnibus Objection to which the Response is directed;

ii. The Subordinated Securities Claimant's name, the applicable proof of claim number(s), and an explanation for the amount of the proof of claim;

iii. A concise statement setting forth the reasons why the Bankruptcy Court should not sustain the Omnibus Objection;

iv. A declaration under penalty of perjury of a person with personal knowledge of the relevant facts that support the Response; and

v. The Subordinated Securities Claimant's name, address, telephone number, and/or the name, address, and telephone number of the Subordinated Securities Claimant's attorney and/or designated representative to whom counsel for the Reorganized Debtors should serve a reply to the Response, if any (each, a "**Notice Address**"). If a Response contains a Notice Address that is different from the name and/or address listed on the proof of claim, the new Notice Address will be added to the existing service address(es), and future service of papers with respect to all of the Subordinated Securities Claimant's proofs of claim listed in the Omnibus Objection (including all proofs of claim to be disallowed and the surviving proofs of claim) will be

sent to the new Notice Address in addition to other service address(es) already on file.

2. *Additional Information*

To facilitate a resolution of the Omnibus Objection, the Response must include the name, address, telephone number, and email address of the person with authority to reconcile, settle, or otherwise resolve the Omnibus Objection. If such person is not the Subordinated Securities Claimant, the Response must also include the name, address, telephone number, and email address of the person with authority to reconcile, settle, or otherwise resolve the Omnibus Objection on the Subordinated Securities Claimant's behalf (the "**Additional Address**"). Unless an Additional Address is the same as the Notice Address, the Additional Address will not become the service address for future service of papers.

3. *Failure to Timely File a Response*

If the Subordinated Securities Claimant fails to file and serve a Response on or before the Response Deadline in compliance with the procedures set forth herein, the Reorganized Debtors will present to the Bankruptcy Court an appropriate Order granting the relief requested in the Omnibus Objection without further notice to the Subordinated Securities Claimant.

4. *Service of the Response*

A written response to an Omnibus Objection, consistent with the requirements described herein, must be timely served on or before the Response Deadline (which will be clearly set forth in the Notice of the Omnibus Objection). Responses should be served via the Court's ECF system. In the case of Subordinated Securities Claimants who are not able to use the ECF system, service must be made by electronic mail to the email addresses of the Reorganized Debtors' counsel as shown on the Omnibus Objection. If a Subordinated Securities Claimant does not have the ability to serve a Response electronically, the Response must be served by a postal or other commercial express service that will effect delivery not more than two business days after the Response Deadline, and the Subordinated Securities Claimant must inform the Reorganized Debtors' counsel by email, telephone, or facsimile before the Response Deadline of the Subordinated Securities

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Claimant's name and phone number, the number of the Omnibus Objection, and the fact that a paper Response is being delivered by postal or other commercial express service.

**J. Reservation of Rights**

Nothing in the Omnibus Objection will constitute a waiver of the right to assert any claims, defenses, counterclaims, rights of offset or recoupment, preference actions, fraudulent transfer actions, or any other claims with respect to the Subordinated Securities Claim or against the Subordinated Securities Claimant. Unless the Bankruptcy Court allows a proof of claim or specifically orders otherwise, the Reorganized Debtors have the right to object on any grounds not previously ruled upon by the Bankruptcy Court to the Subordinated Securities Claims (or to any other proofs of claim or causes of action filed by any claimant or that have been scheduled by the Reorganized Debtors) within sixty (60) days of the later of the Bankruptcy Court's order resolving the Omnibus Objection, or the termination of the final Securities ADR Procedure. An affected Subordinated Securities Claimant will receive a separate notice of any such additional objection.

**II. MISCELLANEOUS PROVISIONS**

**A. Settlement of Subordinated Securities Claims**

The Reorganized Debtors and a Subordinated Securities Claimant may settle any Subordinated Securities Claim subject to these Securities Claims Procedures through the Offer Procedures, Securities Mediation Procedures, or by agreement at any point. Nothing herein shall limit, expand, or otherwise modify the Reorganized Debtors' authority to settle claims pursuant to the Plan or the Confirmation Order or as otherwise authorized by the Bankruptcy Court or applicable law.

**B. Computing Time for Deadlines**

Consistent with Rule 9006(a)(1) of Federal Rules of Bankruptcy Procedure, when computing any time period specified in these Securities Omnibus Objection Procedures: (a) exclude the day of the event that triggers the period; (b) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (c) include the last day of the period, but if the last day

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119