BROWN RUDNICK LLP
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Eric R. Goodman (admitted pro hac vice)
(EGoodman@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone:    (212) 209-4800
Facsimile:    (212) 209-4801

BROWN RUDNICK LLP
Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone:    (949) 752-7100
Facsimile:    (949) 252-1514

*Attorneys for Fire Victim Trustee*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>    -and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>    **Debtors.**<br><br>☐  Affects PG&E Corporation<br>☐  Affects Pacific Gas and Electric Company<br>■  Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>Lead Case, Jointly Administered<br><br>**NOTICE OF FILING OF LETTER TO FIRE VICTIMS ON BEHALF OF THE FIRE VICTIM TRUST** |

TO FIRE VICTIMS AND ALL OTHER INTERESTED PARTIES:

PLEASE TAKE NOTICE that The Honorable John K. Trotter (Ret.) in his capacity as the Fire Victim Trustee, has filed a letter to Fire Victims (the "**Trustee Letter**"), which is attached hereto as Exhibit A. The Trustee Letter also will be posted on the Fire Victim Trust Website at www.firevictimtrust.com.

DATED: January 26, 2021          BROWN RUDNICK LLP

By: /s/ Joel S. Miliband
Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive
Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514

and

BROWN RUDNICK LLP
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel for Fire Victim Trustee*

EXHIBIT "A"



# A LETTER FROM THE TRUSTEE
# OF THE FIRE VICTIM TRUST

January 26, 2021

Dear Fire Victims,

I am writing to give you an update on the status of the Trust and what you may expect in the future. First some history: PG&E declared bankruptcy in January 2019. Bankruptcy Judge Montali immediately began to supervise the company's plan to reorganize itself and to continue to provide electric utility services to its thousands of customers. PG&E employed many law firms and others to help navigate the many issues of its bankruptcy. Recent news articles reported the Bankruptcy Court's approval of the fees that were generated by PG&E. Those fees had nothing to do with the Trust. They are to be paid directly by PG&E.

The Fire Victim Trust was formed and funded on July 1, 2020, when I and Claims Administrator Cathy Yanni were appointed. In the 18 months from the inception of the bankruptcy to the formation of the Trust, there were significant negotiations, legal processes, and agreements. The Trust, since it did not exist, did not participate in any of those negotiations or agreements; however, we are bound by them by court order.

The Trust is a legal entity defined by its constitutional documents and controlled by the Plan and Confirmation Order of Judge Montali. It is designed to hold all the claims that have arisen from the 2015 Butte Fire, the 2017 North Bay Fires (37, Adobe, Atlas, Blue, Cascade, Cherokee, Honey, LaPorte, Lobo, Maacama/Youngs, McCourtney, Norrbom, Nuns, Partrick, Pocket, Point, Pressley, Pythian/Oakmont, Redwood/Potter Valley, Sullivan, Sulphur, Tubbs), and the 2018 Camp Fire. It is also the repository of the proceeds of the settlement terms reached between PG&E and the Fire Victims then represented by the Tort Claimants Committee.

### Trust Assets

- <u>Cash</u>: The Trust was funded with $5.4 billion of cash. We retained Morgan Stanley to manage the cash portfolio, which is safely invested in U.S. Treasuries. We consult frequently with Morgan Stanley to assure optimal returns on the portfolio. Because of the unreasonably low interest rates, we only earned $3 million in interest income in 2020. In January 2021, we received an additional $758 million from PG&E in accordance with prior agreements. We expect to collect another $592 million in cash from PG&E in January 2022.

- <u>PG&E Stock</u>: The Trust was funded with approximately 400 million shares of PG&E Stock and in August 2020, pursuant to court-ordered documents, we received another approximately 77 million shares. The Trust retained Houlihan Lokey as financial advisor and Morgan Stanley as exclusive capital markets advisor for the purposes of advising the Trust on careful monetization of the stock. The stock could not be sold prior to the end of October 2020. We consult frequently with Houlihan Lokey and Morgan Stanley on monetization issues. We have developed a careful "sell-down plan" which will be implemented in an appropriate manner consistent with professional guidance.

1



**Claims Administration**

It is anticipated that 400,000 individual claims will ultimately be submitted to the Trust for evaluation and payment. To handle the enormous number of claims, the Trust has retained the services of BrownGreer, a law firm that specializes in claims administration and claims processing. They have committed 240 full-time employees to this project, including attorneys, project managers, analysts, claim reviewers, and software developers. This includes 50 customer service representatives whose primary responsibility is to answer questions from Fire Victims or their attorneys when they have questions. All claims are submitted electronically online, and since approximately 10,000 claimants are not represented by attorneys the Trust has hired and trained 20 University of California Berkley law students to help these *pro per* claimants navigate the difficulties of the claims process.

The claims process is started by the submission of a Claims Questionnaire. It is intended to provide detailed information of and proof to support the claims being submitted. There were more than 86,000 claims filed in the Bankruptcy Court. To date, 30,000 Claims Questionnaires have been started. They advance 166,000 different claims for real property including landscaping and forestry, personal property, personal income loss, business loss, out-of-pocket expenses, wrongful death, bodily personal injury, emotional distress and other injuries.

The original deadline for filing claims with the Trust was December 31, 2020, but the COVID pandemic upended our timetable. Victims and their lawyers had difficulty meeting with each other and obtaining documents from places that were now closed or operating in a reduced capacity. Law firms had lawyers and associates miss work because of stay-at-home orders and self-isolation. Therefore, the Trust moved the filing date to February 26, 2021. I understand the stress involved in this process, but please listen to your lawyer's requests for documents and information so they can meet the new filing deadline on your behalf.

The Trust has no independent information regarding your claim. The claim filed with the Bankruptcy Court was not intended to be fact-specific but more a notice of intent to file a more complete claim. In addition to valuing your claim, pursuant to bankruptcy laws, the Trust has to determine the total value of all claims it will receive in order to decide if we have enough money to pay your claim in full or some percentage of it. To date, with the stock at its present value, the Trust is more than $1 billion short of its intended settlement value. That may change, unfortunately either up or down.

It would be extremely unfair and burdensome for the Fire Victims to have to wait until all the claims were filed and valued and all the stock monetized (a process that will be responsibly guided by our financial advisors) before they received payment. So, the Trust has hired experts to help determine statistically and actuarially what percent of a claim can be paid before the two absolutes, the total value claimed and the total value available to pay, are known. We also recognize that most large claims, though filed by the deadline, will not have provided enough detail to be valued so our financial reserves will be robust.

After all the claims of a Fire Victim have been valued, a notice thereof will be sent to the lawyer (if one) representing the Fire Victim. It will be a lump sum, totaling the value of each individual



# A Letter from the Trustee
# of the Fire Victim Trust

claim. If a Fire Victim or their lawyer is unhappy with the resulting value, they can request an itemization of each claim value and appeal any or all of those results. The Trust has engaged a panel of 30 retired judges and senior lawyers to hear the appeals in a manner described in the Claims Resolution Procedures. **It is our intent to begin paying the first pro rata percentage of a reviewed claim on March 15, 2021 and to continue payments every two weeks thereafter.**

In addition to claims processing, the Trust has been engaged in many other activities A group of business claimants, including Adventist Health System and Comcast Cable, challenged the insurance offsets, litigated the issue before the Bankruptcy Court and ultimately lost. The Bankruptcy Court upheld the insurance offset provisions, which operate to preserve more money for the Fire Victims by preventing duplicative payments. With the Trust's lawyers at Brown Rudnick taking the lead, the Trust moved to dismiss the appeal of the Bankruptcy Court's ruling taken by Adventist and Comcast Cable. The District Court heard oral argument on the motion to dismiss on January 7, 2021. The Trustee is awaiting the District Court's decision.

The Trust has been assigned the right to pursue legal claims held by PG&E before the bankruptcy. This includes a derivative claim against the former officers and directors of PG&E for breach of their fiduciary duties in failing to assess and take appropriate action to manage the wildfire risk. In pursuing this action, the Trust seeks to recover damages for the benefit of Fire Victims from the former officers & directors measured by the losses to the former PG&E as a result of the wildfires in 2017 and 2018. The recoverable damages may be limited by the amount of available insurance for the directors and officers, which is significant. To pursue these actions, the Trust has retained experienced lawyers with backgrounds in PG&E's mismanagement of wildfire risk. These attorneys have agreed to work on a contingent fee basis, in order to minimize any impact on the cash and stock assigned to fund the Trust for the benefit of Fire Victims. Currently, lawyers assigned to prosecute these claims have been working to intervene in several derivative cases filed in state and federal courts before PG&E entered bankruptcy, and to consolidate them for efficient pursuit by the Trust in one court. Additionally, theses lawyers are beginning the process of reviewing previously undisclosed documents in PG&E's possession to assist with their evaluation and pursuit of the derivative claims.

The Trust also has begun to process claims regarding third-party negligence arising from the subject fires. These third-party claims involve individual and corporate contractors allegedly responsible for failing to maintain vegetation, trees, lines, poles and other PG&E equipment consistent with rules and regulations intended to prevent wildfires. These actions also include potential claims against consulting professionals used by PG&E to assess wildfire prevention efforts. The Trust engaged these firms on a contingent basis, which means the Trust will not be required to pay hourly legal fees for their services. The law firms retained by the Trustee include Walkup, Melodia, Kelly & Schoenberger; Cotchett Pitre & McCarthy, LLP; Dreyer Babich Buccola Wood Campora, LLP; Andrews &Thornton; Greenberg Gross LLP; and Corey, Luzaich de Ghetaldi & Riddle LLP.

Administering a Trust this large and diverse is challenging. Since inception, we have attempted to manage and control costs and, to that end, on December 30, 2020, the Trust delivered to the Trust Oversight Committee ("TOC") its 2021 proposed budget for all administrative costs and expenses for the Trust in the coming fiscal year. The TOC appointed a subcommittee to assess the necessity



and reasonableness of the proposed expenses, with the goal of preserving as much of the Trust's funds as possible for Fire Victims. The TOC requested and received documentation explaining more than 60 line items in the budget, solicited written descriptions of the various tasks and responsibilities for professionals engaged by the Trust, and reviewed the budget with the Trust's Certified Public Accountant. Under the terms of the Trust Agreement, the Trust is required to post on its website the audited financial statements for each year of operation and to file those statements with the Bankruptcy Court. That information will be publicly available on April 30, 2021 for the Trust's initial period of operation, which ended December 31, 2020.

I hope you found the foregoing helpful and informative. I and all the people involved in this resolution process are acutely aware of the indescribable hardship and difficulties you have experienced. Be certain that we all are working with great urgency to distribute funds to qualifying Fire Victims as quickly as we can.

Very truly yours,

Justice John K. Trotter (Ret.), Trustee