MATTHEW W. GRIMSHAW, SBN 210424
GRIMSHAW LAW GROUP, P.C.
130 Newport Center Drive, Ste. 140
Newport Beach, California 92660
Tel: (949) 734-0187
Email: matt@grimshawlawgroup.com

BILL ROBINS III, SBN 296101
ROBERT T. BRYSON, SBN 156953
KEVIN POLLACK, SBN 272786
ROBINS CLOUD LLP
808 Wilshire Blvd., Ste. 450
Santa Monica, CA 90401
Tel: (310) 929-4200
Email: rbryson@robinscloud.com

Attorneys for Phillip S. Rush

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E CORPORATION,<br><br>    and<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br><br>          Debtors | ) Case No. 19-30088 (DM)<br>)<br>) Chapter 11<br>)<br>) (Lead Case–Jointly Administered)<br>)<br>) **Declaration of Robert Bryson in**<br>) **Support of Motion to Amend Proof of**<br>) **Claim No. 54699 Filed by Phillip Rush** |
| Affects:<br><br>☐ PG&E Corporation<br>☐ Pacific Gas & Electric Company<br>☒ Both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM). | )<br>) Date: February 24, 2021<br>) Time: 10:00 a.m. (Pacific)<br>) Place: Telephonic/Video Appearance Only<br>)      United States Bankruptcy<br>)      Courtroom 17,<br>)      450 Golden Gate Ave.,16th Floor<br>)      San Francisco, CA 94102<br>)<br>) Objection Deadline: February 17, 2021<br>) |

/ / /

# **Declaration of Robert Bryson**

I, Robert Bryson, say and declare as follows:

1.  I am an individual over 18 years of age and competent to make this Declaration.

2.  I am an attorney at law duly admitted to practice before all courts of the State of California, in addition to the United States District Court for the Northern District of California.

3.  I am an attorney with the law firm of Robins Cloud LP (the "Firm"), attorneys for Phillip Rush. Mr. Rush retained the Firm in December 2020 to represent him in his efforts to recover damages resulting from the loss of his home in the 2017 Tubbs Fire.

4.  The facts set forth below are true and within the scope of my personal knowledge, and if called upon to do so I could and would testify competently to these facts.

5.  In October 2019, Mr. Rush filed Proof of Claim No. 54699 (the "Claim"), a true and correct copy of which is attached hereto as Exhibit 1 and incorporated by this reference.

6.  After reviewing the Claim and the other evidence available, it was determined that, in addition to economic damages, Mr. Rush suffered non-economic and personal injury damages as a result of the Tubbs Fire's destruction of his home.

7.  Mr. Rush seeks to amend the Claim to include, among other things, averments for non-economic and personal injury damages. Mr. Rush also seeks to add claims to allow him to pursue attorneys' fees and interest to the extent permitted by applicable law.

8.  The sole purpose of the requested amendment is to ensure that Mr. Rush is fully compensated for the panoply of injuries he suffered as a result of Debtors' actions.

9.  This is Mr. Rush's first request to the amend Claim.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 25, 2021

_____
ROBERT T. BRYSON

**EXHIBIT 1**

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO DIVISION)

| In re: | Bankruptcy Case | RECEIVED |
|---|---|---|
| **PG&E CORPORATION,** | **No. 19-30088 (DM)** | |
| **- and -** | | **OCT 09 2019** |
| **PACIFIC GAS AND ELECTRIC** | **Chapter 11** | |
| **COMPANY,** | **(Lead Case)** | PRIME CLERK LLC |
| Debtors. | **(Jointly Administered)** | |

# Proof of Claim (Fire Claim Related)

Read the instructions before filing this claim form. This form is for tort claimants who have a claim against the Debtors (i.e. PG&E Corporation and Pacific Gas and Electric Company) that arose prior to the Debtors filing for bankruptcy (i.e. prior to January 29, 2019) and that arose from, or relates to, a fire.

Do not use this form for non-fire claims. Non-fire tort claimants should use Form 410.

Do NOT file a fraudulent claim. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Please type or print in the spaces below. Do NOT use red ink or pencil.

**Part 1:    Identify the Claim**

**1. Who is the current creditor?**

Phillip S. Rush
Name of the current creditor (the person or entity to be paid for this claim)

[  ] Date Stamped Copy Returned
[  ] No Self-Addressed Stamped Envelope
[ ✓ ] No Copy Provided

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Are you filing this claim on behalf of your family?**

☐ No
☑ Yes

A family is a group of two or more people related by birth, marriage, domestic partnership, or adoption and residing together. All such people are considered as members of one family.

If you checked "Yes," please provide the full name of each family member that you are filing on behalf of:

Phillip S. Rush          Jacqueline M. Rush

_____    _____

_____    _____

_____    _____

**4. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Name Phillip S. Rush
Attorney Name (if applicable) _____
Attorney Bar Number (if applicable) _____
Street Address 302 Brockhurst Dr
City Santa Rosa
State CA
Zip Code 95401
Phone Number 707 327-6042
Email Address prushman@sbcglobal.Net

Where should payments to the creditor be sent? (if different)

Name _____
Attorney Name (if applicable) _____
Attorney Bar Number (if applicable) _____
Street Address _____
City _____
State _____
Zip Code _____
Phone Number _____
Email Address _____

**5. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**6. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

193008880008178

**Part 2:** Give Information About the Claim as of the Date this Claim Form is Filed

**7. What fire is the basis of your claim?**

Check all that apply.

- ☐ Camp Fire (2018)
- ☒ North Bay Fires (2017)
- ☐ Ghost Ship Fire (2016)
- ☐ Butte Fire (2015)
- ☐ Other (please provide date and brief description of fire: _____

**8. What are the loss location(s) where you and/or your family suffered harm? (e.g. home or business address, place of injury, place from which you were evacuated, if different.?**

Location(s):

1306 Dogwood Dr
Santa Rosa, CA 95403

**9. How were you and/or your family harmed?**

Check all that apply

- ☒ Property Damage (homes, structures, personal property, land, trees, landscaping, and all other property damage)
  - ☒ Owner ☐ Renter ☒ Occupant ☐ Other (Please specify): _____
- ☐ Personal Injury
- ☐ Wrongful Death (if checked, please provide the name of the deceased) _____
- ☐ Business Loss/Interruption
- ☐ Lost wages and earning capacity
- ☐ Loss of community and essential services
- ☐ Agricultural loss
- ☐ Other (Please specify): _____

**10. What damages are you and/or your family claiming/seeking?**

Check all that apply

- ☒ Economic damages (including replacement cost of damaged property, diminution in value, loss of use, lost inventory, lost profits, and other economic damage)
- ☐ Non-economic damages (including loss of society and support, loss of consortium, pain and suffering, emotional distress, annoyance and discomfort, and other non-economic damage)
- ☐ Punitive, exemplary, and statutory damages
- ☐ Attorney's fees and litigation costs
- ☐ Interest
- ☐ Any and all other damages recoverable under California law
- ☐ Other (Please specify): _____

**11. How much is the claim?**

- ☐ $ 525,000.00 _____ (optional)
- ☐ Unknown / To be determined at a later date

**Part 3:**    **Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   10/09/2019 (mm/dd/yyyy)

*Signature*

Print the name of the person who is completing and signing this claim:

Name   Phillip S. Rush
      First name      Middle name      Last name

Title

Company
     Identify the corporate servicer as the company if the authorized agent is a servicer.

Address   302 Brockhurst Dr
     Number     Street
     Santa Rosa     CA     95401
     City      State     ZIP Code

Contact phone   707 327-6042     Email   prushman@sbcglobal.Net



5095

County of Sonoma

*William F. Rousseau, Clerk-Recorder-Assessor*

585 Fiscal Drive, Room 104, Santa Rosa, CA 95403
707-565-1888

## NOTICE OF CORRECTION TO THE SECTION 601 ASSESSMENT ROLL

148-170-012-000
RUSH PHILLIP S TR & JACQUELINE M TR
1812 1/2 LARRY DR
SANTA ROSA CA 95403

ASMT: 148-170-012-000
FEE #: 148-170-012-000
BASE ASMT: 148-170-012-000

**SECURED**

Date:  December 06, 2017

SITUS:  1306 DOGWOOD DR
SANTA ROSA CA

THIS NOTICE IS TO  INFORM  YOU OF A CORRECTION TO THE ASSESSMENT ROLL CAUSED BY:

*All Struc Imp Value Reduced 10/1/17*
*35% Land Value Reduced 10/1/2017*

THIS CORRECTION IS MADE UNDER REVENUE AND TAXATION CODE SECTION(S):          170 , 4831

THIS WILL DECREASE THE TAXABLE VALUE TO THE FIGURES SHOWN BELOW IN THE NEW VALUE  COLUMN
FOR THE FISCAL YEAR AFFECTED.

VALUE SUMMARY

| YEAR 2017 - 2018 | OLD VALUE | NEW VALUE | NET CHANGE |
|---|---|---|---|
| LAND | 29,254 | 21,575 | -7,679 |
| STRUCTURE | 87,612 | 21,903 | -65,709 |
| GROWING IMPROVS. | | | |
| PP MOBILE HOME | | | |
| FIXTURES | | | |
| PERSONAL PROPERTY | | | |
| TOTAL | 116,866 | 43,478 | -73,388 |
| LESS:  EXEMPTIONS | 7,000 | 7,000 | |
| NET TAXABLE | **109,866** | **36,478** | **-73,388** |

- - - - SEE ENCLOSURE FOR APPEAL PROCEDURE - - - -

ASR49-0003-003                    12/06/2017
alemus                    C49v ROC SFeRev.rpt    v2.4.001

Case: 19-30088    Doc# 10028    Filed: 01/26/21    Entered: 01/26/21 22:19:21    Page 7 of 26

5096

# Roll Correction

The **old value** shown on the enclosed notice is the roll value being changed for the fiscal year(s) indicated. The
**new value** is the changed value.

An **increase** in taxable value will cause the tax collector to issue an additional tax bill for each fiscal year noted.

A **decrease** in taxable value will cause the tax collector to forward a corrected tax bill, if the taxes have not been paid. If the taxes have been paid the Auditor will send a refund or a claim for refund.

A **no change** indicates the change did not affect the taxable value. However, the change may still affect the taxes due on the property as in the case of a change of the tax rate area or a change in the prorate period of a supplemental bill.

**IMPORTANT NOTICE:**

**Any objection you may have relative to the valuation of your property should be reviewed with the Assessor's staff at 585 Fiscal Dr., Santa Rosa, (707) 565-1888 or 1-800-244-1034. If you object to the value after reviewing it with the Assessor's office or wish to request abatement of the penalty imposed under section 482(b), you may file an assessment appeal with the Clerk of the Assessment Appeals Board by completing an "Assessment Appeal Application" form. The form must be filed no later than 60 days from the Notice Date or from the date of the postmark on the front of the envelope, or 6 months if this is the result of a Calamity Claim. An informal review does not extend the deadline to file an assessment appeal. Assessment Appeal Application forms are available from the Clerk of the Assessment Appeals Board at 707-565-2243; by mail at 575 Administrative Drive, Rm 100A, Santa Rosa, CA 95403; or by visiting their website at
http://sonomacounty.ca.gov/Board-of-Supervisors/Services/Assessment-Appeals/**

## Assessments May Be Changed For Any of the Following Reasons

### Escaped Assessments

1. Property should have been assessed or reassessed and was not.
2. Property was undervalued in the original assessment or reassessment.
3. An exemption was incorrectly allowed on the property.
4. A change of ownership occurred in a prior year and was not reappraised.
5. Reappraisal required on the death of a property owner was not done.

### Legal Changes

6. Change of the Tax Rate Area (TRA)
7. Assessee name and/or address change.
8. Change to the Proration Period of a supplemental bill.
9. Changing a bill from secured to unsecured or vice versa.
10. Change to allow an exemption that was not on the roll.
11. Change due to a clerical type error by the Assessor's Office.
12. Change due to an error in reporting by the Assessee.

SCAO/256/9-02



A Public Service Agency

***CUSTOMER RECEIPT COPY***                                REG EXP: 04/12/2018

| MAKE | YR MODEL | YR 1ST SOLD | VLF CLASS | *YR | TYPE VEH | TYPE LIC | LICENSE NUMBER |
|------|----------|-------------|-----------|-----|----------|----------|----------------|
| NISS | 2001 | 2001 | EA | 2002 | 120 | 11 | 4RDJ943 |

| BODY TYPE MODEL | MP | MO | | | VEHICLE ID NUMBER |
|-----------------|----|----|--|--|-------------------|
| 4D | G | YZ | | | JN1CA31D51T829355 |

| TYPE VEHICLE USE | DATE ISSUED | CC/ALCO | DT FEE RECVD | PIC |
|------------------|-------------|---------|--------------|-----|
| AUTOMOBILE | 12/26/17 | 49 | 12/26/17 | 0 |

PR EXP DATE: 04/12/2018

REGISTERED OWNER                                                        AMOUNT PAID

RUSH PHILIP STEPHEN                                                     $NFEE
1812 1/2 LARRY DR

                                        AMOUNT DUE        AMOUNT RECVD
                                        $ NONE            CASH :
SANTA ROSA                                                CHCK :
CA            95403                                       CRDT :

LIENHOLDER

                                                JUNKED

            L00   634 CA 0000000 0001 CS   L00 122617 11   4RDJ943 355

Case: 19-30088   Doc# 10028   Filed: 01/26/21   Entered: 01/26/21 22:19:21   Page 9
of 26

Recording Requested By:
REDWOOD CREDIT UNION

**2002138875**

OFFICIAL RECORDS OF
SONOMA COUNTY
EEVE T. LEWIS

FIDELITY NAT'L TITLE CO.
09/13/2002 15:17 TRD
RECORDING FEE: 52.00

**16**



And After Recording Return To:
REDWOOD CREDIT UNION
P.O BOX 6104
SANTA ROSA, CALIFORNIA 95406
Loan Number: 15917001

10021167 W     ———— [Space Above This Line For Recording Data] ————

# DEED OF TRUST

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   SEPTEMBER 6  , 2002, together with all Riders to this document.
**(B) "Borrower"** is PHILLIP S. RUSH AND JACQUELINE M. RUSH, HIS WIFE, AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is REDWOOD CREDIT UNION

Lender is a STATE CREDIT UNION                      organized
and existing under the laws of   CALIFORNIA
Lender's address is   P.O BOX 6104, SANTA ROSA, CALIFORNIA 95406

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is FIDELITY NATIONAL TITLE, 70 STONY POINT ROAD STE.B, SANTA ROSA, CALIFORNIA 95403

**(E) "Note"** means the promissory note signed by Borrower and dated   SEPTEMBER 6  , 2002.
The Note states that Borrower owes Lender   EIGHTY THOUSAND AND 00/100**********
                               Dollars (U.S. $ 80,000.00      )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   OCTOBER 1, 2007   .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1:01           Page 1 of 13

*DocMagic* (800-649-1362
www.docmagic.com

Ca3005.dtt

Case: 19-30088    Doc# 10028    Filed: 01/26/21    Entered: 01/26/21 22:19:21    Page 10 of 26

**(H)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider      ☐ Second Home Rider
☐ Balloon Rider      ☐ Planned Unit Development Rider      ☒ Other(s) [specify]
☐ 1-4 Family Rider      ☐ Biweekly Payment Rider      Rider to Sec. Inst.

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** "**Escrow Items**" means those items that are described in Section 3.

**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY      of      SONOMA      :
[Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]

LOT 12, AS NUMBERED AND DESIGNATED UPON THE MAP ENTITLED SHARON PARK SUBDIVISION NO.2, FILLED IN THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF SONOMA ON MAY 14, 1976 IN BOOK 229 OF MAPS, PAGES 36,37 AND 38, SONOMA COUNTY RECORDS.
A.P.N. #: 148-170-012

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01      Page 2 of 13      DocMagic *EForms* 800-649-1362
www.docmagic.com

which currently has the address of   1306 DOGWOOD DRIVE
[Street]

SANTA ROSA                    , California    95403        ("Property Address"):
[City]                                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
   1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
   2.    **Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.
   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Case: 19-30088   Doc# 10028   Filed: 01/26/21   Entered: 01/26/21 22:19:21   Page 12 of 26

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    3.     **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

    If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

    Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

    4.     **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

    Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01            Page 4 of 13            *DocMagic ℰℱⱺⱤⱮⱾ 800-649-1362*
                                                                 *www.docmagic.com*

Case: 19-30088    Doc# 10028    Filed: 01/26/21    Entered: 01/26/21 22:19:21    Page 13 of 26

so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds

Ca30055.dot

Case: 19-30088   Doc# 10028   Filed: 01/26/21   Entered: 01/26/21 22:19:21   Page 14
of 26

shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.　**Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.　**Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.　**Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.　**Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall

Case: 19-30088　Doc# 10028　Filed: 01/26/21　Entered: 01/26/21 22:19:21　Page 15 of 26

be payable with such interest, upon notice from Lender to Borrower requesting payment. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01          Page 7 of 13          DocMagic *eRunner* 800 649-1362
www.docmagic.com

SONOMA (49),CA          Page 7 of 16          Printed on 10/27/2017 11:02:53 AM
Document: DOT 2002.138875

Case: 19-30088    Doc# 10028    Filed: 01/26/21    Entered: 01/26/21 22:19:21    Page 16 of 26

Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Ca9305d.doc

Case: 19-30088   Doc# 10028   Filed: 01/26/21   Entered: 01/26/21 22:19:21   Page 17
of 26

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                        Page 9 of 13              DocMagic  800-649-1362
www.docmagic.com

Ca005-en

Case: 19-30088   Doc# 10028   Filed: 01/26/21   Entered: 01/26/21 22:19:21   Page 18
of 26

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.  **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                                              Page 10 of 13

DocMagic ℰℱ☎☎☎ 800-649-1362
www.docmagic.com

Case: 19-30088   Doc# 10028   Filed: 01/26/21   Entered: 01/26/21 22:19:21   Page 19
of 26

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is

Case: 19-30088　Doc# 10028　Filed: 01/26/21　Entered: 01/26/21 22:19:21　Page 20 of 26

permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

    24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

    25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
PHILLIP S. RUSH      -Borrower

_____ (Seal)
JACQUELINE M. RUSH      -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Witness:                       Witness:

_____            _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                    Page 12 of 13            DocMagic eForms 800-649-1362
                                                                             www.docmagic.com

CA3005.12 dot

State of California         )
                           ) ss.

County of SONOMA     )

On Sept. 9, 2002 before me,   L. Witt

personally appeared   PHILLIP S. RUSH, JACQUELINE M. RUSH

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



L. WITT
COMM #1262925
NOTARY PUBLIC CALIFORNIA
SONOMA COUNTY
My Comm Expires June 2, 2004

NOTARY SEAL

_____
NOTARY SIGNATURE

L. Witt
_____
(Typed Name of Notary)

Ca3005-3.dm

Case: 19-30088    Doc# 10028    Filed: 01/26/21    Entered: 01/26/21 22:19:21    Page 22 of 26

Loan Number 15917001

# 5 YEAR BALLOON RIDER
## (CONDITIONAL MODIFICATION AND EXTENSION OF LOAN TERMS)

THIS BALLOON RIDER is made this    6th day of  SEPTEMBER, 2002     , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to   REDWOOD CREDIT UNION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

1306 DOGWOOD DRIVE, SANTA ROSA, CALIFORNIA 95403
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

### 1.  CONDITIONAL MODIFICATION AND EXTENSION OF LOAN TERMS

At the maturity date of the Note and Security Instrument (the "Note Maturity Date"), I will be able to extend the Note Maturity Date to    NOVEMBER 1, 2012     , (the "First Extended Maturity Date"). My payment will be amortized over a 25 year period. The new payment will be calculated as per Section 4 below. At the First Extended Maturity Date, 5 years after the Note Maturity Date, I will be able to extend the Maturity Date (the "Second Extended Maturity Date") for another 5 year period. My payment will be amortized over a 20 year period. The new payment will be calculated as per Section 4 below. At the Second Extended Maturity Date, 5 years after the First Extended Maturity Date, I will be able to extend the Maturity Date (the "Third Extended Maturity Date") for another 5 year period. My payment will be amortized over a 15 year period. The new payment will be calculated as per Section 4 below. At the Third Extended Maturity Date, 5 years after the Second Extended Maturity Date, I will be able to extend the Maturity Date (the "Fourth Extended Maturity Date") for another 5 year period. My payment will be amortized over a 10 year period. The new payment will be calculated as per Section 4 below. At the Fourth Extended Maturity Date, 5 years after the Third Extended Maturity Date, I will be able to extend the Maturity Date for the remaining 5 year term. My payment will be amortized over a 5 year period. The new payment amount will be calculated as per Section 4 below.

The Note Rate will be modified to the "Modified Note Rate" determined in accordance with Section 3 below if all the conditions provided in Sections 2 and 5 below are met (the "Conditional Modification and

5 YEAR BALLOON RIDER (CONDITIONAL MODIFICATION
AND EXTENSION OF LOAN TERMS)
6B35RID (REV 04 00)                    Page 1 of 3

DocMagic *Phone:* 800-649-1362
www.docmagic.com

Case: 19-30088   Doc# 10028   Filed: 01/26/21   Entered: 01/26/21 22:19:21   Page 23 of 26

Extension Option"). If those conditions are not met, I understand that the Note Holder is under no obligation to refinance the Note or to modify the Note, reset the Note Rate or extend the Note Maturity Date, and that I will have to repay the Note from my own resources or find a lender willing to lend me the money to repay the Note.

## 2.  CONDITIONS TO OPTION

If I want to exercise the Conditional Modification and Extension Option, certain conditions must be met as of the Note Maturity Date. These conditions are: (1) I must still be the owner and occupant of the property subject to the Security Instrument (the "Property"); (2) I must be current in my monthly payments and cannot have been more than 30 days late on any of the 12 scheduled monthly payments immediately preceding the Note Maturity Date; (3) there are no liens, defects, or encumbrances against the Property, or other adverse matters affecting title to the Property (except for taxes and special assessments not yet due and payable) arising after the Security Instrument was recorded; (4) the Modified Note Rate will not be more than 2 percentage points above the Note Rate in effect at that time; and (5) I must make a written request to the Note Holder as provided in Section 5 below.

## 3.  CALCULATING THE MODIFIED NOTE RATE

The Modified Note Rate will be the  REDWOOD CREDIT UNION
5 year balloon payment loan rate, rounded to the nearest one-eighth of one percent (0.125%) (the "Modified Note Rate"). The required interest rate shall be the applicable interest rate in effect on the date and time of day that I notify the Note Holder of my election to exercise the Conditional Modification and Extension Option. If this required interest rate is not available, the Note Holder will determine the Modified Note Rate by using comparable information. The modified rate will not be more than 3 percentage points above the Note Rate in effect at that time.

## 4.  CALCULATING THE NEW PAYMENT AMOUNT

Provided all other conditions required in Section 2 above are satisfied, the Note Holder will determine the amount of the monthly payment that will be sufficient to repay in full (a) the unpaid principal, plus (b) accrued but unpaid interest, plus (c) all other sums I will owe under the Note and Security Instrument on the Note Maturity Date (assuming my monthly payments then are current, as required under Section 2 above), over the remaining extended term at the Modified Note Rate in equal monthly payments. The result of this calculation will be the new amount of my principal and interest payment every month until the next extended Maturity Date.

## 5.  EXERCISING THE CONDITIONAL MODIFICATION AND EXTENSION OPTION

The Note Holder will notify me at least 60 calendar days in advance of the Note Maturity Date and advise me of the principal, accrued but unpaid interest, and all other sums I am expected to owe on the Note Maturity Date. The Note Holder also will advise me that I may exercise the Conditional Modification and Extension Option if the conditions in Section 2 above are met. The Note Holder will provide my payment record information, together with the name, title and address of the person representing the Note Holder that I must notify in order to exercise the Conditional Modification and Extension Option. If I meet the

Case: 19-30088   Doc# 10028   Filed: 01/26/21   Entered: 01/26/21 22:19:21   Page 24
of 26

conditions of Section 2 above, I may exercise the Conditional Modification and Extension Option by notifying the Note Holder no earlier than 60 calendar days and no later than 45 calendar days prior to the Note Maturity Date. The Note Holder will calculate the fixed Modified Note Rate based upon the

5 Year Balloon Payment Loan Rate applicable published required net yield in effect on the date and time of day notification is received by the Note Holder and as calculated in Section 3 above. I will then have 30 calendar days to provide the Note Holder with acceptable proof of my required ownership, occupancy and property lien status. Before the Note Maturity Date the Note Holder will advise me of the new interest rate (the Modified Note Rate), new monthly payment amount and a date, time and place at which I must appear to sign any documents required to complete the required Note Rate modification and Note Maturity Date extension. I understand the Note Holder will charge me $175 processing fee and the costs associated with the exercise of the Conditional Modification and Extension Option, including but not limited to the cost of updating the title insurance policy.

BY SIGNING BELOW, BORROWER accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____ (Seal)
PHILLIP S. RUSH    -Borrower

_____ (Seal)
JACQUELINE M. RUSH    -Borrower

_____ (Seal)
    -Borrower

_____ (Seal)
    -Borrower

_____ (Seal)
    -Borrower

_____ (Seal)
    -Borrower-

5 YEAR BALLOON RIDER (CONDITIONAL MODIFICATION
AND EXTENSION OF LOAN TERMS)
6835RID (REV. 04/00)    Page 3 of 3    DocMagic ℰ Forms 800-649-1362
www.docmagic.com



Express

CCM

RECEIVED
OCT 15 2019
PRIME CLERK LLC

FedEx Express    Billable Stamp    FedEx Standard Overnight

**1 From**
ORDER: 00848272
PRIME CLERK LLC
SANTA ROSA, CA
DECLARED VALUE $100
PACKAGE WEIGHT
(212) 257-4169

**2 To**
PG&E CLAIM PROCESSING
PRIME CLERK LLC
850 3RD AVE STE 412
BROOKLYN, NY 11232
(212) 257-4169

RECEIVED
OCT 15 2019

REF:                8148 0459 0832

Release Signature
For non-residential deliveries.

fedex.com/1800GoFedEx 1800.463.3339    M-4262 Rev. 12/17    Form ID 0662

FedEx    8148 0459 0832
MON - 14 OCT AA
STANDARD OVERNIGHT

SB FBTA

11232
EWR

CLSD    16:00    0832    10.14

Large Pak

Align bottom of peel-and-stick airbill or pouch here.