

Signed and Filed: February 17, 2021

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>      Reorganized Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088-DM<br><br>Chapter 11<br><br>Lead Case<br><br>Jointly Administered |

**MEMORANDUM DECISION ON SECURITIES LEAD PLAINTIFF'S MOTION FOR ALLOWANCE AND PAYMENT OF FEES AND EXPENSES PURSUANT TO BANKRUPTCY CODE SECTIONS 503(b)(3)(D) and 503(b)(4)**

**I.    INTRODUCTION**

When PG&E Corporation and Pacific Gas and Electric Company ("Debtors") filed their cases (now jointly-administered), they did not properly provide notice to former or current equity and debt holders (the "Omitted Parties") who may have had rescission

-1-

or damage claims arising out of purported misrepresentations or omission of material facts by Debtors. They did not provide the Omitted Parties with notice of the need for filing proofs of claim, even though a class action had been filed on their behalf prior to the petition date by the Public Employees Retirement Association of New Mexico ("PERA"). PERA alleges fraud claims against several defendants, including Debtors. It contends that Debtors and others misled investors about their wildfire safety practices, thereby artificially inflating stock and bond prices, which then dropped after information regarding Debtors' improper safety practices emerged between 2017 and 2018. PERA also asserts claims disputing the accuracy of certain offering documents for instruments issued between 2016 and 2018.

PERA pursued various remedies against Debtors on behalf of the Omitted Parties, ultimately resulting in the court's approval of a procedure that could ultimately result in distributions to many of them on account of any allowed fraud claims.[1] Consequently, PERA and the three law firms representing it are requesting reimbursement of attorneys' fees and costs pursuant to 11 U.S.C. § 503(b)(3)(D) and (4)[2] for "making a substantial contribution in a case...."

Throughout these complex cases, just now having reached the two-year mark, Debtors have paid hundreds of millions of dollars in professional fees to their own professionals and dozens of

---

[1] *See* Order Approving Securities ADR and Related Procedures for Resolving Subordinated Securities Claims (dkt. 10015).
[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-2-

others retained by official committees, ad hoc groups and others, without even a whimper of objection to this court, and maybe not even to the Fee Examiner. The ONLY objection has been to the fees and extenses sought by PERA and its professionals. While the court finds that single exception quite remarkable, it is allowing a partial recovery to PERA and its professionals, not to punish the Debtors for their position, but in recognition of PERA's and its professionals' substantial contribution they have made for the benefit of the Omitted Parties.

**II. DISCUSSION[3]**

PERA is the appointed lead plaintiff in a securities class action pending in the United States District Court for the Northern District of California (*In re Securities Litigation*, Case No. 18-03509) (the "Securities Litigation") and a creditor in these chapter 11 cases. It filed a motion pursuant to section 503(b)(3)(D) and (b)(4) for allowance and payment of the fees and expenses incurred by its professionals (dkt. 8950).[4]

PERA contends that it made a substantial contribution to these cases and the reorganization process by protecting the rights of approximately 7000 of the Omitted Parties who

---

[3] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

[4] The motion was supported by the declarations of Thomas A. Dubbs setting forth the time records for and expenses incurred by Labaton Sucharow LLP ("Labaton") (dkt. 8950-2); the declaration of Michael S. Etkin setting forth time records for and the expenses incurred by Lowenstein Sandler LLP ("Lowenstein") (dkt. 8950-3); and the declaration of Randy Michelson setting forth the time records and expenses incurred by Michelson Law Group ("Michelson") (dkt. 8950-4) (collectively, the "Applicants").

-3-

ultimately received notice, an opportunity to file claims, and did in fact file claims, and treatment of those claims in one or more of three classes under Debtors' confirmed plan (the "Plan"). Consequently, PERA seeks reimbursement of Applicants' attorney's fees and expenses.

Debtors observe that PERA initially opposed the court's decision to set a new bar date and noticing procedures for Omitted Parties, yet now seeks credit for achieving that result. Debtors argue that PERA engaged in actions designed solely to improve its position as the lead plaintiff and that of the potential other plaintiffs in the Securities Action, and thus did not benefit the estate "as a whole," even though section 503(b)(3)(D) does not contain language imposing such a condition for recovery.

Despite the irony, the court believes that the extended bar date, which benefitted all Omitted Parties who came forth and filed claims would not have occurred but for PERA's efforts, although full compensation for that work is not justified.

Whatever their initial motivations, counsel for PERA did bring to the court's attention the absence of proper notice of the bankruptcy cases and the first claims bar date to the mostly unrepresented Omitted Parties. The eventual resolution, providing the Omitted Parties an opportunity to file late claims and to receive treatment under the Plan, did not affect the payment and allowance of any other creditors under the Plan, given the solvency of the estate.

These actions benefitted a significant number of Omitted

Parties who would have otherwise been disenfranchised from the plan process.  For example, PERA and its counsel answered numerous questions and otherwise provided assistance in the proper noticing to Omitted Parties about the claims process when necessary.  PERA assisted in the development and adoption of procedures for the filing, determination of allowability, and the treatment of claims filed by the Omitted Parties.  Without PERA's cooperation, the reorganized Debtors could have faced continued potential liability to the Omitted Parties that would not have been provided for in the confirmed Plan.  The court can only imagine the confusion and unfairness of having done nothing, possibly discharging any alleged fraud claims of the type now asserted by PERA and 7,000 of those Omitted Parties for whom they advocated and for whom a just and proper result was achieved.

Finally, PERA has provided a unified voice on behalf of the Omitted Parties, enabling issues relevant to them to be resolved quickly and efficiently to contribute significantly to Debtors' achieving confirmation of the Plan in compliance with AB 1040's deadline.  As this court stated at a hearing on June 24, 2020: "The fact is I wouldn't want 6,000 pro se parties on this call each argue why their claims are valid when one lawyer . . . at least speaks for the issues that are involved."  By facilitating the foregoing notice to and participation of the Omitted Parties in the bankruptcy cases, and by enabling the filing of claims and achieving a mediated resolution of its objections to Debtors' Plan that permitted proper treatment offered to thousands of the Omitted Parties through the Plan, PERA has made a substantial

-5-

contribution to this case justifying reimbursement of expenses under section 503(b)(3)(D) and (b)(4).

An attorney for a creditor who makes a substantial contribution to a chapter 11 case pursuant to section 503(b)(3)(D) may recover reasonable compensation for professional services rendered as an administrative expense under section 503(b)(4). *In re Mortgages Ltd.*, 2010 WL 6259981, at *7 (9th Cir. BAP Aug. 4, 2010). The principal test of substantial contribution is "the extent of benefit to the estate." *In re Cellular 101, Inc.,* 377 F.3d 1092, 1096-97 (9th Cir. 2004), *citing In re Christian Life Ctr.,* 821 F.2d 1370, 1373 (9th Cir. 1987); *see also Pierson & Gaylen v. Creel & Atwood (In re Consol. Bancshares, Inc.),* 785 F.2d 1249, 1253 (5th Cir. 1986) (reaffirming that "services which substantially contribute to a case are those which foster and enhance, rather than retard or interrupt the progress o[f] reorganization"). As stated in *In re Catalina Spa & R.V. Resort, Ltd.*, 97 B.R. 13, 21 (Bankr. S.D. Cal. 1989):

> Compensation cannot be freely given to all creditors who take an active role in bankruptcy proceedings, rather, it must be preserved for those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate. The integrity of § 503(b) can only be maintained by strictly limiting compensation to extra ordinary [sic] creditor actions which lead directly to <u>significant and tangible benefits to the creditors</u>, debtor, <u>or</u> the estate. While § 503 was enacted to encourage meaningful creditor participation, it should not become a vehicle for reimbursing every creditor who elects to hire an attorney.

-6-

*Id.* (emphasis added). Here, but for PERA's actions, three classes of equity and debt asserting fraud claims could have been excluded altogether from the Plan and the Omitted Creditors who actually did file claims would have been denied their ability to seek to be compensated. This entire subset of parties in interest received "*significant and tangible benefits*" from PERA's actions. As these are solvent estates, no other subset of equity or debt have been harmed by granting compensation under section 503(b)(3)(D) and (4). In context, the idea that the estate must benefit of a whole for Section 503 relief to be granted, is rejected. There must be recognition of, and reward for, those who brought about the result.

The court finds that some but not all of the following categories of services justify compensation although the fees billed in those categories are not fully allowable, for the reasons set forth below.

### A. The Securities Litigation and Related Adversary Proceedings

The Securities Litigation was automatically stayed as to Debtors (but not other defendants) on January 29, 2019, when Debtors filed their chapter 11 petitions. Early on, Debtors filed two adversary proceedings to enjoin the Securities Litigation for the benefit of certain third-party non-debtor defendants. In the first (A.P. 19-3006), Debtors sought to enjoin the Securities Litigation as well as multiple other actions by third parties; PERA and Debtors stipulated to dismissal of that proceeding (dkt. 42 in A.P. 19-3006).

In the second (A.P. 19-3039), Debtors again sought to enjoin

-7-

the Securities Litigation.  The court denied the preliminary injunction (dkt. 23 in A.P. 19-3039).  PERA defended itself in both adversary proceedings; its defense did not provide a benefit to the estate in general nor to those who might have, or did in fact, later become the 7,000 or so Omitted Parties.  PERA was protecting its rights and those of others to proceed in the Securities Litigation; it did not foster and enhance the administration of the estate in these defenses.  Because this work did not provide a substantial contribution to the cases or to equity or debt holders with fraud claims in these cases, the fees and expenses related thereto are not compensable under section 503(b)(3)(D) and (4).

**B. The Class Proof of Claim Motion, Establishment of Notice Procedures, and Providing Claim Assistance**

On December 19, 2019, PERA filed a motion to file a class proof of claim pursuant to Fed. Rule Civ. P. 23 (made applicable by Fed. R. Bankr. P. 7023) (the "Class POC Motion") (dkt. 5042). Debtors and the Official Committee of Tort Claimants ("TCC") opposed the Class POC Motion.  Following extensive briefing, the court entered a tentative ruling (dkt. 5604) noting its "grave due process concerns regarding the adequacy of actual or constructive notice of the claims bar date given to class members, and in particular to class members who were no longer securities or equity holders as of the Record Date."  The court indicated that it had tentatively decided to grant the Class POC Motion, but suggested an alternate approach: setting a new claims bar date for disenfranchised parties to file claims.  What

-8-

followed, of course, were claims filed by 7,000 of the Omitted Parties.

After further briefing and a hearing on February 20, 2020, the court issued a memorandum decision indicating that it would deny the Class POC Motion, acknowledging that the putative members of the affected classes did not receive actual notice of a claims bar date, even though known creditors were and are entitled to written notice of such a bar date, citing *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995); *see also* Memorandum Decision Regarding Motion to Apply Rule 7023 ("Rule 7023 Mem Dec"), dkt. 5887 at 3:20-22. Because Debtors "did not make a reasonable effort to give actual notice to class members of the claims bar date," the court fixed a new bar date for that group of stakeholders. Rule 7023 Mem Dec at 4:24-25; *id* at 2:17-25.

As a result, even though PERA preferred prevailing on its Class POC Motion, its filings and arguments led to the court's determination how to resolve the initial lack of notice and to provide a remedy for the Omitted Parties. And once the court announced its ruling, PERA provided significant assistance in the notification and claims process. Those efforts have been well-documented in the record and will not described again here.

The court therefore concludes that a portion of PERA's work in this area did provide a substantial benefit to the bankruptcy cases, as it triggered a notice procedure ensuring that all the Omitted Parties, whether or not they eventually opt to participate in the Securities Litigation, received notice of

-9-

their right to file claims in these cases.

The fact that PERA lost its Class POC Motion was not fatal as Debtors argue. But for that losing effort, a preferable result was achieved despite the Debtors' resistance. PERA lost the battle, but won the war!

**C. The TCC's Motion for Derivative Standing**

On February 28, 2020, the TCC filed a motion for standing to prosecute derivative claims on behalf of the estate. The TCC sought a declaratory judgment that the Securities Litigation claims were derivative claims and not direct creditor or shareholder claims, and thus were property of the estate to be included with the causes of action assigned to the Fire Victims Trust under the Plan. The TCC also sought a preliminary and permanent injunction of further prosecution of the Securities Litigation. The TCC ultimately withdrew its motion. Unlike its work performed as just described, PERA's work on this matter did not provide a substantial benefit to any portion of the bankruptcy cases as it involved a two-party dispute between competing stakeholders over which group could prosecute the subject claims. Therefore, an award of fees and expenses is not justified under section 503(b)(3) and (4).

**D. Objecting to Plan Confirmation**

PERA also seeks reimbursement of fees and expenses associated with its objections to confirmation of Debtors' Plan. In particular, PERA objected to a plan injunction, characterizing it as an impermissible "veiled attempt to effect a nonconsensual third-party release;" to the use of improper, inequitable, and

-10-

1  unlawful distribution formulas for calculating various rescission
2  or damage claims; and to Debtors' failure to provide for the
3  separate fraud damage claims asserted by the Omitted Parties.
4  *See Securities Lead Plaintiff's Objection to Confirmation* at dkt.
5  7296.

6  These and other Plan objections led to mediation by retired
7  Bankruptcy Judge Randall Newsome, who facilitated a resolution.
8  Through its objection and participation in the mediation, PERA
9  and its counsel materially enhanced the position and potential
10  recovery of thousands of the Omitted Parties. PERA was able to
11  negotiate a favorable distribution formula for their rescission
12  or damage claims, and those parties stand to benefit from a
13  favorable distribution formula once their specific claims are
14  determined through the Securities ADR and Related Procedures.
15  Had the original proposal of the Shareholder Proponents had not
16  been challenged, the result would have been far less favorable
17  for those parties. The treatment that resulted was a fair and
18  rational way of dealing with prospective allowed claims of 7,000
19  Omitted Parties. That PERA lost the one issue the court
20  ultimately decided against it during the confirmation hearing
21  does not undermine its entitlement for compensation for the
22  results achieved. It therefore made a substantial contribution
23  in performing these services under section 503(b)(3)(D) and (4),
24  at least in part, when preparing, prosecuting and ultimately
25  mediating its objections to confirmation.
26  //
27  //
28

## III. COMPENSABLE FEES AND EXPENSES

### A. Court's Methodology

In determining whether and how much to award Applicants, the court has considered not only the subject matter of their work and whether it provided a substantial contribution, but also whether the fees were reasonable and what services were necessary (i.e., legal in nature, not duplicative). As discussed above, based on its review of the time records and its familiarity with the underlying issues and the case in general, the court concluded that only three categories of work substantially contributed to the cases for the purposes of section 503(b). From all of the time Applicants reported the court made its best guesstimate of how much should be considered as attributable to those categories.

After determining what categories of work that substantially contributed to the cases and are compensable, the court reviewed the time entries to determine whether the work performed was reasonable and necessary for PERA to provide the substantial benefit. This also was a formidable challenge, but preferable to asking for further submissions and argument and also preferable to considering using the services of the Fee Examiner. Given the clumping and excessive duplication of work, the court could not simply deduct a multi-hour, the multi-project time entry in its entirety. Accordingly, based on the amount of clumping and duplication of effort, the court is reducing a percentage of two of Applicants' fees in the compensable categories by a different percentage, as discussed below.

**B. Fees**

According to PERA's motion, Applicants incurred the following fees and expenses for which they seek reimbursement while representing it in these cases:

|  | **Fees** | **Expenses** |
|---|---|---|
| **Labaton** (2,562.2 hours) | $1,762,023.00 | $9,554 (excluding fees and expenses billed by Michelson and expenses billed by Lowenstein) |
| **Lowenstein** (3,428 hours) | $2,748,617.50 | $46,630 (billed to Labaton) |
| **Michelson** (186.6 hours) | $110,631.25 | $ 112,540 billed to Labaton and $1,909 (not billed to Labaton |

PERA's two principal counsel generally did not divide their time entries or the narratives in their motion by project, complicating the court's task of determining the compensable fees, particularly given the limited categories of fees that it has determined to be compensable under section 503(b). Nonetheless, the court did make its best effort to locate and time entries and estimate the charges pertaining to the Class POC Motion, to confirmation of the Plan and the resulting mediation, and to assistance in the implementation and administration of the claims process, as set forth in the table below.

|  | **Class POC Motion** | **Confirmation/ Mediation** | **Assistance with Claims Process** | **Total** |
|---|---|---|---|---|
| **Labaton** | $123,723 | $497,783 | $93,920 | $715,426 |
| **Lowenstein** | $536,232 | $839,738 | N/A | $1,376,010 |
| **Michelson** | $11,312 | $44,156 | N/A | $55,468 |

In determining the appropriate compensation for the work

-13-

performed, the court considered "the time, the nature, the extent, and the value of such services" under section 503(b)(4). Much of the work pertaining to these three tasks was duplicative, with the time records of multiple attorneys of both firms simply reflecting that they were preparing for hearings without explaining the nature of their preparation, even though they would not necessarily be participating.  For example, four different attorneys from Lowenstein billed time (at an hourly rate from $585.00 to $1,085.00) for attending the confirmation hearing on June 5, 2021, with a resulting charge of $34,663.00. Similarly, four attorneys from Labaton (with rates ranging from $475.00 to $1,100.00 an hour) appeared at the June 5 confirmation hearing, with a resulting charge of $16,838.50. Michelson also appeared at that hearing, charging $3,812.50.  In all, nine attorneys appeared on behalf of PERA on one day at cost of almost $50,000.00.  This is not an anomaly, nor is it reasonable expense justifying full reimbursement under section 503(b).

Another example of the excessive duplication of work within and between the two principal firms involves the preparation and circulation for review of multiple versions of a reply.  The court cannot determine from the time records if one or both firms generated these competing drafts, but the estate did not benefit from such duplicative, inefficient work.  Therefore, there was no substantial benefit from it.

As stated in *In re American Plumbing & Mechanical, Inc.*, 327 B.R. 273, 292 (Bankr. W.D. Tex. 2005) (citation omitted):

> The court is not obligated to sift through the fee applications to determine which services are compensable and which services are not. *The burden is on the [applicants] to show, by a preponderance of the evidence, which services are not duplicative and therefore eligible for reimbursement as substantial contribution.*

*Id.* (emphasis added). Labaton and Lowenstein have not met this burden.

Because Labaton and particularly Lowenstein have not described how much time they spent and what fees they incurred in working on each task, the court's ability to assess the reasonableness of fees and expenses under section 503(b)(3) and (4) has been impaired.[5] Moreover, as noted previously, were replete with entries by multiple people doing duplicative research and tasks. In addition, time was billed by multiple Labaton attorneys for participating in a practice moot court. While this may be a prudent and beneficial practice in general, it is not a reasonable and necessary service for which the Debtors should have to pay.

---

[5] In a Lowenstein time entry dated February 28, 2020, one timekeeper billed 5.40 hours and $5,859.00 in time that included multiple tasks, but just a solitary Class POC Motion task of reviewing an email. The balance of the time entry related to a mediation and other matters not compensable under section 503(b). The court consequently cannot determine how much time that person spent on the Class POC Notion task. *See* dkt. 8950-3, ECF pg. 62:

> Prep for mediation; review extensive e-mails and respond; telephone call with [name deleted]; conference with [name deleted]; review bankruptcy related pleadings; review mediation statement and exhibits; initial review of derivative standing motion; review fire victim plan treatment summary; review press reports; **review and revise e-mail re: appellate options Rule 7023 decision**; review operating report; review hearing transcript(.)

-15-

In addition, some Lowenstein attorneys have regularly billed more than $1,000 an hour to read news about the case. Such activity, though useful to individual attorneys, is not of sufficient benefit to the estate to justify an award of fees (particularly when the news consumer is not a professional of the estate).

### C. Adjustment of Fees

**Lowenstein**

Because of Lowenstein's excessive clumping of non-compensable time with compensable time and its duplicative work in both the Class POC Motion and Confirmation/Mediation categories, the court is reducing its fees in both categories by 12%, its best educated guess of a proper reduction. Consequently, the court will allow Lowenstein a total fee award of $1,210,835 ($1,376,010 minus $165,121 (12%).

**Labaton**

Labaton's fee application did not feature as much clumping with non-compensable time, but it does reflect significant duplication of work. The court will therefore reduce Labaton's fees in the Class POC Motion, the Confirmation/Mediation, and the Claims Assistance categories by 8%. Consequently, the court will allow Labaton a total fee award of $658,191 ($715,426 minus $57,234 (8%).

**Michelson**

As Michelson did identify the time for each task performed within each time entry (i.e., no clumping), the court was easily able to determine the time spent on work that fell within the

-16-

compensable categories. It also did not duplicate work. The court will therefore allow Michelson all fees relating to the Class POC Motion ($11,312) and Confirmation/Mediation ($44,156), for a total of $55,468.

**D.   Expenses**

Applicants also request reimbursement of expenses, but for the most part the court cannot determine what, if any, of these expenses relate to the compensable categories of work identified above. Lowenstein's expenses (billed to Labaton) of $46,630.16 are listed on one page (dkt. 8950-3 at ECF pg. 105) and are identified by type (i.e., $25,536.26 for "computerized legal research"), but not by date or project. Similarly, Labaton's one-page description of its expenses is sparse, lacking dates and context of the expenses (dkt. 8950-2 at ECF pg. 77). Particularly confusing is Labaton's inclusion of a charge of $112,540 for Michelson with no detail. Without knowing the dates that the expenses of Labaton and Lowenstein were incurred, the court cannot determine whether any of their expenses relate to the compensable work. Since these expenses were most likely incurred, the court will exercise its discretion to allow one-half of them despite the incomplete information. Consequently, reimbursement of the expenses of Labaton and Lowenstein is therefore allowed, but only in the amount of fifty percent for each firm.

In contrast, Michelson's expenses are identified by date and often by project, thus enabling the court to determine what costs likely relate to the compensable categories. The court will

allow Michelson $976.38 of requested expenses incurred between January 29, 2020 and February 29, 2020, as the descriptions directly tie them to the Class POC Motion.

**IV. CONCLUSION**

For the foregoing reasons, the court will award the following fees and expenses to PERA and its counsel under section 503(b)(3)(D) and (4):

**Lowenstein**: $1,210,835 in fees and $23,315 in expenses;

**Labaton**: $658,191 in fees and $4,887 in expenses; and

**Michelson**: $55,468 in fees and $976.38 in expenses.

The court is issuing three separate orders concurrently with this memorandum decision. These amounts represent the obligations the court is imposing upon Debtors and whose work and expenses they represent. To the extent Labaton has already paid Lowenstein and Michelson is not relevant. The court expects the parties to true-up these awards and work out the details for actual payment and/or any reimbursement among Applicants.

* * * END OF MEMORANDUM DECISION * * *