HOGAN LOVELLS US LLP
Erin N. Brady (CA 215038)
erin.brady@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

*Counsel for the Yurok Tribe*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 |
| - and - | (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | **MOTION OF THE YUROK TRIBE FOR RECONSIDERATION OF THE ORDER DISALLOWING AND EXPUNGING PROOFS OF CLAIM PURSUANT TO REORGANIZED DEBTORS' FIFTY-THIRD OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY SUBCONTRACTOR CLAIMS)** |
| **Debtors.** | |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors | **[Re: Docket No. 10104; Claim No. 55953]** |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Date: March 24, 2021<br>Time: 10:00 a.m. (Pacific Time)<br>Place: **Telephonic/Video Appearance Only**<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>Objection Deadline:<br>March 10, 2021 at 4:00 p.m. (Pacific Time) |

TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

# I. INTRODUCTION

1. The Yurok Tribe, by and through its undersigned counsel, hereby moves, pursuant to section 502(j) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3008 and 9023 of the Federal Rules of Bankruptcy (the "Bankruptcy Rules"), for reconsideration of the Court's *Order Disallowing and Expunging Proofs of Claim Pursuant to Reorganized Debtors' Fifth-Third Omnibus Objection to Claims (No Liability Subcontractor Claims)* (the "Order") [Docket No. 10104] that was entered on February 5, 2021, with respect to the disallowance and expungement of the Yurok Claim (as defined below).

2. The Yurok Tribe is a federally-recognized Indian tribe located in a remote area of northwestern California in the region of the Trinity and Klamath river basins. To address critical needs surrounding lack of electrical services on the Yurok Tribe's reservation (the "Yurok Reservation"), as well as to ensure the reliability of the existing, limited service, Pacific Gas and Electric Company ("PG&E") installed electrical infrastructure on the Yurok Reservation, in part during 2017 and 2018. During the construction of the project, the Yurok Tribe, in its role as a sovereign government, provided traffic safety and control services on the Yurok Reservation and directly billed PG&E for said services.

3. The Yurok Tribe filed a proof of claim in these cases for unpaid, pre-petition services it provided to PG&E. In its capacity as an unsecured creditor, it periodically receives notices in the PG&E Bankruptcy at the Yurok Reservation by mail. Due to particularly extenuating circumstances, the Yurok Tribe was not aware of the *Reorganized Debtors' Fifty-Third Omnibus Objection to Claims (No Liability Subcontractor Claims)* (the "Objection") [Docket No. 9895], whereby PG&E objected to the Yurok Tribe's proof of claim, until after the response deadline had already passed. As explained in the declaration of Dawn Baum (the "Baum Declaration"), the Deputy General Counsel of the Yurok Tribe, attached hereto as **Exhibit A**, the Order disallowing and expunging the Yurok Claim was entered by default before Ms. Baum opened the physical notice of the Objection, upon returning to the office in early February 2020 after undergoing breast cancer surgery in January 2020. Unfortunately, due to the COVID-19 surge in the community at the same time as Ms. Baum's medical leave, no other employees in the Yurok Tribe's legal

department were present in the office during this time.

4. The declaration of Donald Barnes (the "Barnes Declaration"), the current Director of the Yurok Tribe's Office of Self-Governance and former Director of the Tribal Employment Rights Ordinance (TERO) Program, attached hereto as **Exhibit B**, addresses—and dispels—the merits of the Objection. It describes the direct business relationship between PG&E and the Yurok Tribe in connection with the Wautec electrical line extension project (the "Project") on the Yurok Reservation that began in 2017 ("Year 1") and continued through 2018 ("Year 2"), one in which a general contractor was not at all involved. And it makes clear that the Objection to the Yurok Claim—which is premised solely on the erroneous assertion that the claim "does not represent a direct right to payment because the general contractor on each relevant project bears the direct liability"—is unfounded. Obj. at p. 6.

5. Therefore, based on the reasons set forth herein, the Yurok Tribe respectfully moves for reconsideration of the disallowance and expungement of the Yurok Claim for good cause.

## II. STATEMENT OF FACTS

6. In June 2015, PG&E contacted the Yurok Tribe directly to request traffic control services for a portion of PG&E's electrical and energizing work on the Yurok Reservation. Barnes Decl. ¶ 5.

7. On March 31, 2017, the Yurok Tribe and PG&E arranged for the York Tribe to provide traffic control services to PG&E for the Project. Barnes Decl. ¶ 6. The Yurok Tribe began providing services to PG&E in connection with the Project on June 5, 2017. Barnes Decl. ¶ 8.

8. On July 19, 2017, the Yurok Tribe provided PG&E with a new Form W-9 in order for PG&E to reactivate the Yurok Tribe's vendor identification in PG&E's billing system to issue purchase orders, which PG&E confirmed was for payment to the Yurok Tribe. Barnes Decl. ¶ 7.

9. On January 25, 2018, the Yurok Tribe issued an invoice to PG&E in the amount of $56,751.26 for traffic control services provided during Year 1 of the Project (from June 5, 2017 through November 13, 2017). On April 6, 2018, the Yurok Tribe issued another invoice to PG&E in the amount of $14,664.63 for traffic control services provided for a portion of Year 2 of the Project (from February 26, 2018 through March 19, 2018). Barnes Decl. ¶ 8.

10. On May 1, 2018, PG&E issued a purchase order for the aggregate total of the invoices in the amount of $71,415.89. On May 8, 2018, PG&E provided full payment of the $71,415.89 to the Yurok Tribe in the form of a check addressed and mailed to the Yurok Tribe. Barnes Decl. ¶ 9.

11. On May 29, 2018, PG&E requested that the Yurok Tribe provide traffic control services to PG&E for the Project the period of June 4, 2018 through June 28, 2018 and on the next day, the Yurok Tribe confirmed that it would provide such services to PG&E. Barnes Decl. ¶ 10.

12. On May 24, 2019, the Yurok Tribe issued a final invoice to PG&E in the amount of $88,365.26 for traffic control services provided for the remainder of Year 2 of the Project (from March 26, 2018 through September 9, 2018). The Yurok Tribe did not receive any purchase order or payment from PG&E for this invoice, but presumed that the reason PG&E did not pay the invoice pursuant to past practice was because PG&E had filed for bankruptcy. Barnes Decl. ¶ 11.

13. On October 18, 2019, the Yurok Tribe timely filed a proof of claim against PG&E (together with PG&E Corporation, the "Debtors" or the "Reorganized Debtors") for the outstanding amount of $88,365.26 (as filed at Claim No. 55953, the "Yurok Claim").

14. On December 23, 2020, the Debtors filed the Objection to fifty-three "No Liability Subcontractor Claims" (as defined in the Objection), including the Yurok Claim. The Objection states, in pertinent part: "After reviewing their books and records and the information submitted with the Proofs of Claim, the Reorganized Debtors have determined that each of the No Liability Subcontractor Claims is attributable to the relevant general contractor on each project. The Reorganized Debtors determined this either from the face of the Proof of Claim listing the general contractor or by follow-up correspondence with the Claimant." Obj. at p. 6 (emphasis added).

15. At that time, the Yurok Tribe's legal staff was working entirely remotely due to the ongoing COVID-19 pandemic. Baum Decl. ¶ 6. Ms. Baum, the Deputy General Counsel of the Yurok Tribe, had breast cancer surgery on January 13, 2021 and was on leave during the month of January thereafter. Baum Decl. ¶ 5. As a result of the COVID-19 surge in the community, during December 2020 and January 2021, no other employees in the Yurok Tribe's legal department were present in the office. Baum Decl. ¶ 6. The Yurok Tribe did not file a response or opposition

because it was not aware of the Objection during this time.

16. On February 5, 2021, the Court entered the Order disallowing and expunging the Yurok Claim, among other claims listed in the Objection. On February 12, 2021, the Yurok Tribe discovered the notice of the Objection and immediately contacted outside counsel to discuss the Objection to the Yurok Claim. Baum Decl. ¶ 7. As noted in paragraph 3 of the Order, the Court retains jurisdiction to resolve any disputes or controversies arising from the Order.

**III.   ARGUMENT**

    **a. Good Cause Exists for Reconsideration.**

17. Section 502(j) of the Bankruptcy Code authorizes a court, for cause, to reconsider a claim that has been allowed or disallowed. 11 U.S.C. § 502(j). The Bankruptcy Code does not define what constitutes "cause" for reconsideration and bankruptcy courts have broad discretion to determine whether reconsideration of the allowance or disallowance of a claim is appropriate. *See Matter of Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987) ("[T]he bankruptcy court's discretion in deciding whether to reconsider a claim is virtually plenary."); Fed. R. Bankr. P. 3008, Advisory Committee's Note (1983) ("Reconsideration of a claim that has been previously allowed or disallowed after objection is discretionary with the court.").

18. A reconsideration motion filed within 14 days of entry of an order allowing or disallowing a claim is considered a motion for a new trial under Rule 59(a) of the Federal Rule of Civil Procedures. *See Matter of Aguilar*, 861 F.2d 873, 874 (5th Cir. 1988) (holding that a Bankruptcy Rule 3008 motion is analogous to a motion under Bankruptcy Rule 9023 or Rule 59 of the Federal Rules of Civil Procedure); *In re Consol. Pioneer Mortg.*, 178 B.R. 222, 227 (B.A.P. 9th Cir. 1995), *aff'd sub nom. In re Consol. Pioneer Mortg. Entities*, 91 F.3d 151 (9th Cir. 1996); *see also* Fed. R. Bankr. P. 9023. The basis for reconsideration under Rule 59(a) includes "any reason for which a new trial has heretofore been granted in an action at law" and "any reason for which a rehearing has heretofore been granted in a suit in equity." Fed. R. Civ. P. 59(a).

19. As explained in greater detail in the Baum Declaration, Ms. Baum, in her position as the Yurok Tribe's Deputy General Counsel of the Office of Tribal Attorney, is the contact at the Yurok Tribe who receives and reviews notices in the PG&E bankruptcy. All such notices are sent

by postal mail and the Yurok Tribe does not receive any notices or copies of pleadings or orders in the PG&E bankruptcy by electronic means. Baum Decl. ¶ 4. Ms. Baum had been on reduced hours and was working remotely due to medical reasons when the notice of the Objection was mailed to the Yurok Reservation in late December 2020. Ms. Baum thereafter had surgery scheduled for January 13, 2021 and, as a result, was on medical leave for most of the rest of January 2021. Baum Decl. ¶ 5.

20. Furthermore, due to the ongoing COVID-19 pandemic, and particularly in light of the surge of coronavirus cases in California during the months of December 2020 and January 2021, the Yurok Tribe's legal staff was working entirely remotely in the months before and during the time of Ms. Baum's medical leave. Baum Decl. ¶ 6. The impact of the COVID-19 pandemic on the Yurok Tribe has resulted in additional extenuating circumstances with respect to the receipt and review of mail that is addressed to the Yurok Reservation. Baum Decl. ¶ 6. Upon seeing the notice for the first time on February 12, 2021, Ms. Baum immediately contacted outside counsel regarding the Objection to the Yurok Claim. Baum Decl. ¶ 7. It was only then that the Yurok Tribe realized that the response deadline for the Objection had passed and that the Order had already been entered by default. Baum Decl. ¶ 7.

21. The Yurok Tribe's failure to respond to the notice was clearly unintentional and due to several extenuating circumstances amidst the ongoing COVID-19 pandemic and resulting hardships imposed on the Yurok Tribe. Further, the Yurok Tribe had no reason to believe that the Yurok Claim would be objected to by the Debtors, particularly given that PG&E had already paid the other relevant invoices in connection with traffic control services provided for the Project. Barnes Decl. ¶¶ 8-9.

22. The Yurok Tribe acted quickly in good faith to do what it could in order to protect the Yurok Claim, which constitutes a meaningful amount of money owed to the Yurok Claim, and seeks only to have the Yurok Claim decided on the merits. Moreover, if the Yurok Claim is reinstated, the Yurok Tribe submits that other unsecured creditors will not be prejudiced. Under the confirmed *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* (the "<u>Plan</u>") [Docket No. 8048], both Class 4A HoldCo General Unsecured

Claims and Class 4B Utility General Unsecured Claims (as each is defined in the Plan) are unimpaired because they will be paid in full. Thus, no unsecured creditor would have received a higher distribution were it not for the Yurok Claim being allowed.

23. Based on the extenuating and difficult circumstances in existence during the time that the notice of the Objection was mailed to the Yurok Reservation, and in consideration of the equities of the case, the Yurok Tribe respectfully submits that good cause exists for the Court to reconsider its Order disallowing the claim.

### b. PG&E Is Liable for the Yurok Claim.

24. The Tribal Employment Rights Ordinance (TERO) requires all employers conducting business on reservations to give preference to qualified Indians in all aspects of employment, training, contracting and other business activities. Barnes Decl. ¶ 4. The purpose of TERO programs are to provide job training opportunities to tribal members and to provide income for the tribal workforce in light of the challenging economic conditions that Indian tribes face on their reservations. It was under and in accordance with the Yurok Tribe's TERO Program that PG&E requested, and the Yurok Tribe agreed, that the Yurok Tribe would provide traffic control services to PG&E in connection with the Project starting in Year 1. Barnes Decl. ¶ 6. The Yurok Tribe had, in fact, previously provided PG&E with traffic control services for PG&E's electrical and energizing work on the Yurok Reservation in 2015, by which it had established a business relationship with PG&E for the provision of such services. Barnes Decl. ¶ 5.

25. In early 2017, PG&E reengaged the Yurok Tribe for traffic control services in connection with the Project. Barnes ¶ 6. The Yurok Tribe began providing these direct services to PG&E on June 5, 2017. Barnes Decl. ¶ 8. The Yurok Tribe continued to provide these services to PG&E during Year 2 of the Project. Barnes Decl. ¶ 8. Throughout this engagement, the Yurok Tribe issued and directed invoices to PG&E—and PG&E paid—for such services provided. Barnes Decl. ¶¶ 8-9. Importantly, for all of these engagements (in 2015 as well as in Year 1 and Year 2 of the Project), the Yurok Tribe's provision of traffic control services to PG&E was based on direct agreement with PG&E—not by virtue of any arrangement with a general contractor on the Project, as the Objection wrongly attempts to insinuate. Barnes Decl. ¶¶ 12-13; *but see* Obj. at 6. In fact,

as explained further in the Barnes Declaration, there were no instances in which the Yurok Tribe provided traffic control services to PG&E on the Yurok Reservation pursuant to a separate agreement, contract, or arrangement with any general contractor. Barnes Decl. ¶ 12.

26. Moreover, in connection with the same Project upon which the Yurok Claim is based, PG&E issued a purchase order on May 1, 2018 for the aggregate total that the Yurok Tribe invoiced PG&E for traffic control services provided from June 5, 2017 through March 19, 2018. Barnes Decl. ¶ 9. The purchase order from PG&E clearly lists the Yurok Tribe as the "supplier" and the "bill to" party as PG&E and includes a brief description of the Project. *See* **Exhibit 5** to the Barnes Decl. PG&E subsequently paid the Yurok Tribe $56,671.26 for the invoices issued to PG&E by check dated May 8. 2018. Barnes Decl. ¶ 9; *see also* **Exhibit 6** to the Barnes Decl. At no point during its engagement with the Yurok Tribe did PG&E dispute that it was directly liable for amounts owed in connection with the Yurok Tribe's provision of traffic control services for the Project. Barnes Decl. ¶ 9.

27. On May 24, 2019, the Yurok tribe issued a final invoice to PG&E in the amount of $88,365.26 for traffic control services provided for the remainder of Year 2 of the Project (from March 26, 2018 through September 9, 2018). Barnes Decl. ¶ 11; *see also* **Exhibit 8** to the Barnes Decl. Unlike with the other invoices issued in connection with the Project, the Yurok Tribe did not receive any purchase order or payment from PG&E for the outstanding amounts reflected in this invoice. Barnes Decl. ¶ 11. Thus, the Yurok Tribe timely filed the Yurok Claim against PG&E on October 18, 2019.

28. As illustrated further in the Barnes Declaration, the Yurok Tribe did not enter into a separate agreement, contract or arrangement with any general contractor in connection with the services provided to PG&E for the Project. Barnes Decl. ¶ 12. During the entire period that the Yurok Tribe provided traffic control services to PG&E for the Project, from June 2017 through September 2018, the Yurok Tribe dealt and communicated with PG&E directly. Barnes Decl. ¶ 13. Pursuant to the agreement between PG&E and the Yurok Tribe, and in accordance with past course of dealing as evidenced by PG&E's prior payment to the Yurok Tribe for services rendered, PG&E is the liable party for the unpaid $88,365.26 reflected in the Yurok Claim.

## IV. Conclusion

29. For the above-stated reasons, the Yurok Tribe respectfully requests that this Court (i) reconsider the disallowance and expungement of the Yurok Claim; (ii) allow the Yurok Claim to be adjudicated on the merits; and (iii) grant such other and further relief as is just and proper.

Dated: February 19, 2021

HOGAN LOVELLS US LLP

By: */s/ Erin N. Brady*
Erin N. Brady (CA 215038)
erin.brady@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601