UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re:

PG&E CORPORATION,

    -and-

PACIFIC GAS AND ELECTRIC COMPANY,

Debtors.

*Affects both Debtors*

                      **Bankruptcy Case No. 19-30088 (DM)**

                      **Chapter 11**

                      **Re: Response To The:**

                      **REORGANIZED DEBTORS' FORTY-FIRST OMNIBUS OBJECTION TO CLAIMS**

                      **(NO LIABILITY/PASSTHROUGH CLAIMS)**

**Creditor Names:**   ASTRIN, Deborah J. & Norman R.

**Claim Number:**   96351

**Claim Amount:**   $63,219.99

## OPPOSITION TO THE DISALLOWANCE AND / OR EXPUNGEMENT TO CLAIM # 96351

STATEMENT of　　Deborah J & Norman R. Astrin
　　　　　　　　　8528 Lakewood Ave.
　　　　　　　　　Cotati, CA  94931
　　　　　　　　　(707)  364-0741
　　　　　　　　　 fmi 1008@ mac.com  -or   djwa@mac.com


 Honorable Judge Montali,

Upon receiving the Debtors notice of the Objection to our claim, while stunned that PG&E had denied responsibility for damage, I soon began the process of understanding why they would deny our claim.  To this day, March 2, 2021, I still do not understand on what *grounds* they can object to our *recovery of amounts* due us.
What I have presented in the following pages are a litany of what is the basis they might be using for Objection, in Response to why the Bankruptcy Court should not sustain the Omnibus Objection.
Therefore, with confidence, I submit the following statements of facts, documents, law, with explanations. I ask the Court to accept this statement in support of our rightful and juste claim against PG&E.


***BASIS FOR OBJECTION TO YOUR PROOF(S) OF CLAIM:*** *By the Omnibus Objection,  the Reorganized Debtors seek to disallow and/or expunge one or more of your Proof(s) of Claim (as defined therein) listed above as "Objected-To Claim(s)" on the grounds that the designated Proof (s) of Claim seek recovery of amounts for which the Debtors are not liable.*

1.* (Responding to Debtors Omnibus statement as shown below.)

PROOF OF CLAIM  DID INDEED INCLUDE SUBSTANTIAL INFORMATION, as noted by Peggy Brister, CANBUSC, who wrote by email, dated 12/15/2020:

"Your proof of claim (Claim No. 96351) describes the basis of your claim and contains significant documentation."

This statement is in direct opposition with the wordage by Debtors in Doc # 9458, which reads as follows:

* *"After reviewing their books and records and the <u>limited information submitted with the Proofs of Claim</u>, the Reorganized Debtors have determined that each of the no Liability / Passthrough Claims . . . Damage Not Caused by PG&E."*

Our Claim File contains a list of supporting documents including color photographs carefully scribed with notes for clarity. I would like to address the importance of these photos in support of the substantial information included in our claim.

These photos describes both before and after completion of the gas line replacement project by the <u>Contractor PG&E,</u> proving damage to our front landscape. My point and insistence (also in the supoena submitted) as to the inclusion of the photos as originally submitted and their importance in verifying PG&E damage are based upon these facts: (See attachments #1)

After downloading our received claim from Prime Clerk, I noted that they sent the scanned file to the Debtors only in black & white, claiming that they did not have a color scanner. <u>Our first opposition to the Objection is that the Omnibus received an incomplete file in determining damages as shown in color with scribed information on each photo. Therefore they did not read our claim in it's entirety.</u>

2.  PROOF THAT PG&E IS THE CONTRACTOR RESPONSIBLE FOR DAMAGE AT 8528 LAKEWOOD AVE, COTATI, CA  JOB # 31290622 FOR THE FOLLOWING REASONS:

(a)  Should this Objection be based upon Debtors declaration that they were not the Contractor responsible for damage on our property, we declare Opposition to that Objection. The facts are in one letter that we received regarding the job start at our house, stating that <u>Accu-Bore is a sub-contractor as stated in Proof of Claim, Supporting Document, Claim Exhibit 7A :</u>  (See attachment #2)

<u>*Accu-Bore is a sub-contractor that will be performing this work*.</u>

(b) As a reference to PG&E acting as the Contractor, here is the <u>City of Cotati's Encroachment Permit # 18-19, Job #31290622 (encompassing our job)</u> permitting, by contract, PG&E to work in our neighorhood. The damage they caused at our house is another example of PG&E's culpability: (See attachment #3)

DESCRIBE NATURE OF WORK: PG&E TO TRENCH 2,500ft TO REPLACE MAJOR GAS MAIN AND ALL GAS SERVICES.

*(*Signed by:)     <u>Contractor: PG&E (Andrea Blanquie)</u>

NOTE: All Subcontractors must be listed on City of Cotati Subcontractor List

(c) Wordage found in PG&E literature, https://www.pge.com/mybusiness/customerservice/energystatus/streetconstruction/gaspipereplacement/, *Gas Pipeline Replacement Program* (GPRP) states:

*. . . This will include the pipe in the street and the pipe that runs from the street to various buildings and homes. . . A PG&E representative <u>will visit you prior to construction.</u> They will discuss the project, review the meter location options and answer your questions. The PG&E representative <u>will require anagreement</u> with the property owner before the work can proceed. We are aware of the impact this project will have on your property so we <u>will work to restore it to your satisfaction</u>.*

In reference to the above wordage, <u>a representative did not visit prior to construction date.</u> It is likely the supervisor / foreman spoke to us prior to start of job the morning they arrived to replace gas line from the street through the landscape, and behind the gate where the meter is located. <u>No written"agreement"</u>, was received by us as a stated requirement before work started. <u>No restoration</u> was restored to our satisfaction. We requested all documents and records by a subpoena in order to respond correctly. (With due respect to the Court and Debtors Attorneys, we do realize that the process is slowed by this monumental task in this time of the pandemic and in responding to requested subpoena material, as is our response to submit our Objection Response has been as well.)

3.  RESPONSIBILITIES OF CONTRACTOR PG&E AT OUR PROPERTY:

a)  When the job commenced at 8528 Lakewood Ave, Cotati, July 9, 2018, workers should have been under the guidance of PG&E Field Engineer, Stephanie Farac, ISA Certified Arborist. If she indeed was there to observe how the labor personnel managed the plant materials, she failed to do her duty as a Certified Arborist by protecting all of the trees and plants from unskilled laborers' work.

*The contractor will be responsible to replace any damaged landscaping and/or irrigation caused by work permitted by encroachment permit and will repair/ replace as necessary in kind to return site to original state.* (From City of Cotati Encroachment Permit, General Conditions #20.)

(I did contact Arborist Stephanie Farac regarding the dead shrub and crudely chopped branches (including the Magnolia) throughout the path leading to the gas meter as well as the repair to gate & gas meter area, and the debris left behind.  Ms. Farac stated that she had taken photos of the job. I had tried to subpoena those photos.(This is noted in our claim.)


b)  Re:  Workers Skill Level Questionable For Plant Work.

From PG&E literature :  Asset Management> Risk Management Process

https://www.pge.com/pge_global/common/pdfs/safety/gas-safety/safety-initiatives/pipeline-safety/2019GasSafetyReport.pdf

*Skilled and Qualified Workforce:  The risk of an employee or non-employee working without meeting appropriate legal, regulatory and PG&E-defiined requirements. "Requirements" include qualifications . . . for the defined job or work. This may results in one or more of the following . . . <u>damage to property</u> or assets belonging to PG&E  . . . <u>or a member of the public</u>.*

These were not skilled nor qualified workers who entered our landscape, slashing foliage and branches crudely along the path. Noting that the first killing of plants was the Cistus (Rockrose) on the edge next to the sidewalk, as described in the

claim, we knew after arriving back home after workers departed, that PG&E had hired unskilled laborers. Please be aware that our house was the first job on the list for gas line replacement in our neighborhood.

4. DAMAGE AND EVENTUAL DEATH TO MAGNOLIA TREE, COST INFO AND REBUTTAL TO OBJECTION:

a) California Law re: Tree Damage:

*CODE OF CIVIL PROCEDURE §733 Violation.*
*Any person who cuts down or carries off any wood or underwood, tree, or timber, or girdles or otherwise injures any tree or timber on the land of another person, or on the street or highway in front of any person's house, village, or city lot, or cultivated grounds; or on the commons or public grounds of any city or town, or on the street or highway in front thereof, without lawful authority, is liable to the owner of such land, or to such city or town, for treble the amount of damages which may be assessed therefor, in a civil action, in any Court having jurisdiction.*

Our understanding of this code is that we are entitled to triple the amounts of damage for negligence on our property as PG&E performed their substandard duties.
Our Fifth Amendment Rights have been violated, resulting in damage to our valuable asset, a large mature Magnolia tree. We ask that the Court uphold our constitutional rights.

b) Reasons For Tree Damages During Construction:

<u>Boring through root system:</u>
In the subpoena, I asked for documents that might enable this Claimnant to clarify what the process PG&E used to install the new gas line pipes at our site. I can only assume that it was a boring process called directional drilling using these tools which are referred to as horizontal boring tools. (Note: the right photo depicts the boring tool appearing to be on top of a large root or ?).

 

Physical injury to trunk by workers breaking branches, tearing the bark resulting in introduction of virus and/or bacteria into wounds left behind causing injury and death.

Fifty percent of a root system is in the top one foot of soil and over 90% of the root system is in the top three feet. Damage is not seen until the tree's vitality is compromised. Leaves began to look stressed, yellow, and scorched, dropping through the year until there was no viable leaves nor branches by mid 2019. (See photos.)The tree was dying. PG&E flag denoting gas pipe was within a few feet of the trunk of the tree. Without doubt, and as an experienced professional gardener, landscaper and arborist, formerly employed by CCSF, I firmly believe the process used by PG&E in replacing gas line pipes caused the death of our Magnolia grandiflora. Damaged and severed roots occured while boring services were conducted from street through entry to property landscape to the gas meter box. Please note: Approximate measures from property edge to tree trunk is 28 feet. Tree trunk to gas meter is 36 feet. Dripline horizontally is 26 feet. This demonstrates where this tree's roots were positioned in the scope of the gas line pipe replacement project. One can visualize how far out the roots grew from the dripline of our tree by viewing this example found below:



Figure 1 The modern tree-root concept confirms that most tree roots grew laterally in the top 1 m of soil and have a spread under unrestrictive soil condition about three time the diameter of the crown, hence trenching near the trunk can cause grave root damages. The depth of the trenchless channel could be much reduced if it is placed towards the periphery of the root envelope

d)    Explanation Re: Three Different Amounts For Tree Replacement Project.

Background:  There are two monetary items, NOT INCLUDED IN OUR AMENDED CLAIM.  Neither of these amounts should the Debtor use as the true cost of replacement for our 40 plus year old Magnolia grandiflora.

I was told by PG&E rep that I could submit a Claim without attaching a dollar amount for damage. Eventually I was sent a paper quote from the nursery which I sent to PG&E investigator, who had asked if I had a replacement cost amount. On site of the claim location, the investigator verbally agreed that liability for damage was caused by work performed by PG&E during their Gas Line Replacement Project.

The first monetary item was for a 84" boxed Magnolia grandiflora 'Little Gem' (a small varietal) of $10,727.58. I had hastily researched an estimate for replacement by a local nursery who verbally told me around $10,000 plus tax & delivery. Eventually they sent an emailed quote, $10,727.58. Factoring in material plus labor formula is the second monetary item $18,850. I emailed Prime Clerk requesting that they submit that number  ($18,850.) in the original *Claim, Part 2, #7 How Much Is This Claim?*  (No dollar amount had been inserted up to that point upon advice from PG&E reps.) Prime Clerk responded that I must *amend my claim to submit substantive changes*. We then decided that I should investigate accurate cost for replacement of our mature Magnolia before submitting an amended Claim. The submitted cost, included in our claim, is from a mature tree nursery, cost of $33,000, for a 120" boxed Magnolia grandiflora including an averaged cost for freight & spraying.  (The actual cost of the tree in 2019 was $25,000.) Installation cost for a 120" boxed tree is $28,800.
We believe that the compensation asked for in the claim is fair and equitable.

We are reminded daily by the effects of loss of the tree.

a)　<u>Safety issue:</u>　There is danger of the dead tree falling.

b)　<u>Lack of shade</u> that the tree provided has had many conseqences to our landscape and our lives; most substantial is the additional cost of heating & cooling our house in providing warmth from mature landscape during winter with coolness providing shade during warm months.  Increase in water bills with increase water usage to keep the other plants and trees in the front garden thriving. The beauty of our Magnolia, has substantially changed our front landscape.

Sources used in this response:
https://doi.org/10.1016/S0264-2751(02)00096-3
- June 2013<u>Acta Horticulturae</u> 990(990):487-494

DOI: 10.17660/ActaHortic.2013.990.63
https://doi.org/10.1016/j.ufug.2005.08.001

<u>Declaration</u>:  I declare under penalty of perjury that we, Deborah J. Astrin & Norman R. Astrin are the people with knowledge of the relevant facts that support the Response.

Signed:　*[signatures]*

Deborah J. Astrin & Norman R. Astrin

8528 Lakewood Ave.

Cotati, CA 94931

(707) 795-8972

(707) 364-0741



**ATTACHMENT #1**



**ATTACHMENT #2**

Attachment #3

## CITY OF COTATI - ENCROACHMENT PERMIT

### GENERAL CONDITIONS

1. All work performed within City right-of-way shall be done in accord with the following specifications:

   a. State of California, Department of Transportation Standard Specifications, 2010, hereinafter referred to as State Standard Specifications.

   b. City Engineering Standards, latest revision.

   c. California revision to the Manual of Uniform Traffic Control Devices (MUTCD), latest revision.

2. The City Engineer shall be notified 48 hours in advance of start of work to schedule inspections. Notification shall be made in writing to escott@cotaticity.org. Required inspections are provided in the permit's special conditions.

3. The Engineer and City accept no liability for the existence or nonexistence of Utilities. Contractor and others using this drawing must confirm the location of underground lines or structures with the utility companies prior to commencing construction. Applicant shall visually confirm location and depth of all utilities crossing the proposed excavation by "potholing." Hand excavation or hydro-excavation is required for all potholes. **Contact USA 811** for marking of utility lines.

4. Prior to excavation, the trench area shall be cut in a neat and straight line. All concrete shall be saw-cut to the nearest score line prior to removal. Utility potholes shall be cut at a minimum 24-inches square.

5. Should the contractor, due to his construction, damage pavement outside the cut line or concrete outside the saw-cut area, he will be required to cut a neat line around said damaged area, prior to removal.

6. During construction the contractor shall provide adequate flagmen, safety barricades and cones all in accord with applicable sub-sections of Section 7 of the State Standard Specifications.

*Not done* 7. Material excavated from trench shall be removed immediately from the site.

8. Should the utility trench cut across existing sanitary sewer laterals or water services, the following shall apply.

   a. All broken sewer lateral lines shall be replaced with 4" Ductile Iron. The new pipe section shall be connected at each end with the existing pipe by means of stainless steel solder couplings and the new pipe shall be supported by a 2 x 6 redwood bridge across the trench and supported a minimum of 1 foot into native material at each end.

   b. The City prior to backfill of trench shall inspect each sanitary sewer lateral, which is crossed.

   c. If a water lateral is broken it shall be replaced with HDPE 3408 SDR9 200 psi tubing and adequate brass connections all in accord with City standards. The City shall inspect all repairs prior to backfill of any water lateral, which is damaged during construction.

    d. The Utility Company or Contractor shall be fully responsible for all cost of broken sanitary sewer or water services and for any damage done to City sewer or water mains.

9. All backfill of trenches shall be accomplished by use of Class II Aggregate Base import material. Potholes may be backfilled with clean sand to the bottom of the road section. Compaction of backfill shall be 95%.

10. The final surfacing shall be placed in a pavement opening cut at least twelve (12) inches outside of the trench wall to provide proper tie-in of the resurfaced area to the existing pavement.

11. Street structural section shall match the existing pavement section, but in no case shall be less than 3"A.C. over 18" Class II A.B., unless specified otherwise in the Encroachment Permit.

12. The contractor shall secure a Trench Permit from the California Division of Industrial Safety prior to excavation of any trench over five (5) feet in depth.

13. Construction Contractor assumes sole and complete responsibility for job site conditions during the course of construction, including safety of all persons and property. This requirement shall be made to apply continuously and not be limited to normal working hours. Construction Contractor shall defend, indemnify, and hold Engineer, Owner, and City harmless from any and all liability, real or alleged, in connection with the performance of work on this project, excepting liability arising from the sole negligence of Engineer, Owner, and City.

14. Contractor shall provide temporary safety barricades and other precautions for public safety during construction as required by the City of Cotati.

15. All trenches or hole openings shall be protected against cave-in either by suitable shoring, cages, or proper sloping.

16. All work and equipment shall comply with the California Division of Industrial Safety Requirements.

17. The Contractor shall be responsible for all dust and debris created by construction or grading. The City requires that the site be watered to lay dust at all times during construction including weekends and holidays if conditions are created on-site which cause a nuisance to surrounding property owners. All materials washed from the site become the responsibility of the contractor. The City Inspector may require on-site dikes or sandbags to protect erosion of material onto public or private property.

18. Variances from City of Cotati Standards require the prior written approval of the City Engineer.

19. The City Arborist or the Planning Director shall direct all work inside any tree's dripline and/or within ten (10) feet of a tree.

20. The contractor will be responsible to replace any damaged landscaping and/or irrigation caused by work permitted by encroachment permit and will repair/replace as necessary in kind to return site to original state.

21. A pre-construction meeting may be required prior to issuance of permit to review specific conditions of construction.

22. This permit shall expire by limitation if work authorized is not commenced within 365 calendar days or is abandoned for 180 days or more.

23. By signing the encroachment permit, Permittee and the contractor agree to the following indemnification language:

> Neither City nor any City officers, officials, employees, agents or designated volunteers shall be liable for any injury to persons or property occasioned by reason of the acts or omissions of Permittee, or any person or entity acting on the Permittee's behalf, including, without limitation, the agents, employees, contractors or subcontractors of the Permittee. Permittee further agrees to indemnify, hold harmless, and defend with counsel approved by the City, the City and its officers, officials, employees, agents and designated volunteers from any and all claims, demands, causes of action, liability or loss of any sort (including, but not limited to, attorney's fees and costs and fees of litigation) (collectively, "Liability"), because of, or arising out of, acts or omissions of Permittee, its agents, employees, contractors, subcontractors or any others acting pursuant to this Permit, including, without limitation, Liability because of, or arising out of, in whole or in part, the design or construction of the Project, injuries to persons or damages or taking of property resulting from the design or construction of the Project, and restoration of the Property and any improvements on the Property. Permittee further agrees to indemnify, hold harmless and defend with counsel approved by the City, the City and its officers, officials, employees, agents and designated volunteers from any and all Liability because of, or arising out of any discharge or other impact on City property caused by Permittee or any person or entity acting on Permittee's behalf or on whose behalf Permittee acted, regardless of whether such discharge or other impact occurred pursuant to or during the time the Permit is in effect, prior to the time the Permit is in effect, or after the time the Permit is in effect. Acceptance by the City of the restoration of the Property shall not constitute an assumption of any responsibility for any damage or taking covered by this paragraph. The Permittee shall be responsible for all of the Permittee's activities pursuant to the Permit and related restoration, including, without limitation, design and construction of the Project. City shall not be liable for any negligence, nonfeasance, misfeasance or malfeasance in approving, reviewing, checking, or correcting any plans or specifications or in approving, reviewing or inspecting any aspect of the Permittee's activities pursuant to the Permit or any related restoration of the Property. The rights and obligations that accrue pursuant to this provision shall survive the expiration or termination of the Permit.

Permitee's Signature: _ANDREA BLANKINAC_    Dated _08/13/2018_

## Requirements for Installation of Public Utility Submittals and Installation

These requirements are to establish installation conditions when plans for public utilities for power, cable and/or telephone have not yet been submitted and approved by the City Engineer and an encroachment permit is being requested prior to submittal of power, cable and/or telephone plans. The City of Cotati has conditions for installation of public utilities which include undergrounding of specific equipment and approval of utility plans by the City Engineer prior to installation of power, cable and/or telephone utilities, including, but not limited to, those located within public utility easements and public right-of-way.

It is the applicant's responsibility to ensure that before any utilities for power, cable, and/or telephone are installed for the project, including any to be located in the public utility easements or right-of-way, plans for said utilities shall be reviewed and approved by the City Engineer. Any work commenced without the City-approved plans is subject to removal, relocation and/or substantial revision at the expense of the permittee.

I have read and understand the requirements for installation of power, cable and/or telephone utilities as outlined by the City of Cotati. I further understand that I am responsible for all City approvals prior to installation of said utilities and that if installed without City approval I may be subject to removal, relocation and/or substantial revision to the utilities at my own expense.

☐ APPLICABLE  ☐ NOT APPLICABLE

Applicant's Signature: _ANDREA BLANQUIE_ Date: 08/10/2018

Print Name: Andrea Blanquie

# ENCROACHMENT PERMIT

ENCR 18-17

**BUILDING DEPARTMENT**
201 West Sierra Avenue, Cotati, CA 94931

Phone: 707-665-3638
FAX: 707-792-4604

Engineering Plan, City of Cotati

Job # 31290622   2:00 PM *

Plan #

PA #

**ENCROACHMENT PERMIT #** 18-19

**Applicant:** *Complete application and submit 3 (three) sets of plans. If lane closures are necessary, a Traffic Control Plan will be required.*

The undersigned hereby applies for permission to excavate, construct, and/or otherwise encroach on City street right-of-way, as described below, and agrees to do the work in accordance with all laws, ordinances, City Standards and subject to inspection and approval of the City.

Application Date: 08/10/2018   Job Location: LORETTO & LINCOLN AVE   Lot #   APN#

Between: LORETTO & LINCOLN   Scheduled Start Date: 08/13/2018   Scheduled Completion Date: 09/30/2018

**SIDEWALK, CURBS & GUTTERS**

Square feet of sidewalk ___   L.F. of C&G ___   Handicap Ramp ___   Other ___

**CHECK ONE:** Street Surface: ☒ Asphalt   ☐ Concrete   ☐ Dirt   ☐ Other

• Applicant promises to open cut existing street for underground work.   • Applicant promises to bore existing street for underground work.

**DESCRIBE NATURE OF WORK:** PG&E TO TRENCH 2,500' TO REPLACE MAJOR GAS MAIN AND ALL GAS SERVICES. SEWER CAM INSPECTION WILL TAKE PLACE AFTER COMPLETION OF WORK.

Contractor: PG&E (Andrea Blanquie)   Address: 3965 Occidental Rd, Santa Rosa, CA 95401

Phone # 707-239-1954   City Business License ___ (Exp. ___)   Emergency Phone # (after hours) ___

License Class ___   State License # ___ (Exp. ___)   ) NOTE: All Subcontractors must be listed on City of Cotati Subcontractor List.

Workers Compensation: Carrier SELF   Policy # ___   (Exp. ___)

Liability Insurance: Carrier SELF   Policy # ___   (Exp. 8/15/18)

Contractor's Signature: Andrea Blanquie   **APPROVED BY:** Bill Payton   Date 8/15/2018

Building Department

Public Works

Deposit $6000   Permit Fee $ ___   Total Fees 6,000 deposit   Receipt # 200680   Date Issued 8/20/18

☐ 101-19-63011 (Minor Construction)  ☐ 101-19-63010 (Minor Non Construction)  ☒ 101-19-63009 (Major)   deposit $6000

**FORM CONTINUES ON NEXT PAGE**

Z:\DEPARTMENTS\Engineering\Encroachment Permits\Form Version\encroachment permit- 2 revised 4-20-16.doc

RECEIVED AUG 13 2018 CITY OF COTATI PLANNING AND BUILDING DEPT.