1  WEIL, GOTSHAL & MANGES LLP
   Richard W. Slack (*pro hac vice*)
2  (richard.slack@weil.com)
   Jessica Liou (*pro hac vice*)
3  (jessica.liou@weil.com)
   Matthew Goren (*pro hac vice*)
4  (matthew.goren@weil.com)
   New York, NY 10153-0119
5  Tel:    (212) 310-8000
   Fax:    (212) 310-8007
6
7  KELLER BENVENUTTI KIM LLP
   Tobias S. Keller (#151445)
8  (tkeller@kbkllp.com)
   Peter J. Benvenutti (#60566)
9  (pbenvenutti@kbkllp.com)
   Jane Kim (#298192)
10 (jkim@kbkllp.com)
   650 California Street, Suite 1900
11 San Francisco, CA 94108
   Tel:    (415) 496-6723
12 Fax:    (650) 636-9251
13
   *Attorneys for Debtors and*
14 *Reorganized Debtors*

15                **UNITED STATES BANKRUPTCY COURT**
16                **NORTHERN DISTRICT OF CALIFORNIA**
                  **SAN FRANCISCO DIVISION**
17

18 **In re:**                                    Case Nos. 19-30088 (DM) (Lead Case)
                                                 (Jointly Administered)
19 **PG&E CORPORATION,**
                                                 **MOTION FOR ENTRY OF AN ORDER**
20        **- and -**                            **FURTHER EXTENDING DEADLINE FOR**
                                                 **THE REORGANIZED DEBTORS TO**
21 **PACIFIC GAS AND ELECTRIC**                   **OBJECT TO CLAIMS AND FOR**
   **COMPANY,**                                  **RELATED RELIEF**
22
                                                 Date:   April 7, 2021
23              **Debtors.**                      Time:   10:00 a.m. (Pacific Time)
                                                 Place:  **(Telephonic or Video Only)**
24 ☐ Affects PG&E Corporation                            United States Bankruptcy Court
25 ☐ Affects Pacific Gas and Electric Company            Courtroom 17, 16th Floor
   ☒ Affects both Debtors                                San Francisco, CA 94102
26
   *\* ALL PAPERS SHALL BE FILED IN THE*         **Objection Deadline:**
27 *LEAD CASE, NO. 19-30088 (DM).*               **March 31, 2021, 4:00 pm (PT)**
28

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), in accordance with Section 7.1 of the Plan[1], sections 105(a) and 1142 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (i) further extending the deadline established under the Plan for the Reorganized Debtors to object to Claims by an additional one hundred eighty (180) days, through and including December 23, 2021, without prejudice to the Reorganized Debtors' right to seek additional extensions thereof and (ii) granting related relief, including confirmation that a Claim that is being contested or liquidated through active litigation in a non-bankruptcy forum pursuant to order of this Court is the subject of objection to allowance under the Plan, without need for a redundant formal objection filed in this Court. In support of the Motion, the Reorganized Debtors submit the Declaration of Robb McWilliams, filed concurrently herewith.

---

[1] Capitalized terms used but not herein defined have the meanings ascribed to such terms in the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8048] (as it may be amended, modified, or supplemented and together which any exhibits or schedules thereto, the "**Plan**").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

On October 27, 2020, the Reorganized Debtors filed the *Motion for Entry of an Order Extending Deadline for the Reorganized Debtors to Object to Claims* [Docket No. 9355] (the "**Initial Extension Motion**"), which the Court granted with certain limited modifications in the *Order Extending Deadline for the Reorganized Debtors to Object to Claims* [Docket No. 9563] (the "**Initial Extension Order**"). The Initial Extension Order extended the Reorganized Debtors' deadline under Section 7.1 of the Plan to object to Claims by one hundred eighty (180) days, through and including June 26, 2021 (the "**Initial Extension**"). It extended the deadline for the Reorganized Debtors to object to United States Claims[2] through and including March 31, 2021.[3]

As reported in the Initial Extension Motion, on or following the commencement of these Chapter 11 Cases, creditors filed or had listed in the Debtors' schedules of liabilities approximately 22,440 Claims asserting over $68.4 billion in liabilities.[4] The Reorganized Debtors and their professionals have made substantial progress in the claims reconciliation process in the eight months since the Effective Date and the four-and-a-half months since filing the Initial Extension Motion. Since the Effective Date, the Reorganized Debtors have successfully expunged, reduced through settlement, or otherwise resolved approximately 13,100 Proofs of Claims asserting approximately $52.5 billion in Claims against the Debtors—representing approximately 76% of the Claims asserted in these Chapter 11 Cases. Much of the Reorganized Debtors' progress in the claims reconciliation process has been without contest before this Court, and the Reorganized Debtors hope and intend to continue in that fashion.

---

[2] "United States Claims" means Class 4B Utility General Unsecured Claims of the United States that are identified by claim number and amount in Docket No. 9718 as required by the Initial Extension Order.

[3] The Reorganized Debtors are working to object to or resolve the United States Claims. A stipulation extending the March 31, 2021 deadline currently is being negotiated.

[4] These approximations exclude Claims listed in the Debtors' schedules as contingent, unliquidated, and/or disputed, as well as asserted Fire Victim Claims and Subrogation Wildfire Claims. Since the Initial Extension Motion was filed, the Debtors have received untimely Claims and have moved additional Claims to the Fire Victim Trust, resulting in fifteen additional Claims asserting $254.6 million.

Notwithstanding this progress, approximately 9,400 filed and scheduled Claims asserting approximately $16.1 billion (plus unliquidated amounts) remain unresolved (collectively, the "**Remaining Claims**"). The Reorganized Debtors expect that some of the Remaining Claims—including Claims arising out of or relating to property damage, personal injury and commercial disputes, tax claims, complex trade claims, lien claims, customer claims, protective claims and regulatory claims—are likely to be some of the most fact-specific and time-consuming to resolve. The Subordinated Securities Claims are also in the process of being resolved pursuant to the Court's adopted procedures.[5]

The Reorganized Debtors respectfully request that the current deadline to object to Claims as established by the Initial Extension Order, currently set to expire on June 26, 2021 (the "**Current Objection Deadline**"), be extended an additional one hundred eighty (180) days, through and including December 23, 2021, without prejudice to the Reorganized Debtors' right to seek additional extensions thereof. The Reorganized Debtors submit that such relief will benefit all parties in interest because, among other reasons, it will provide the Reorganized Debtors with additional time to attempt to resolve the Remaining Claims consensually, without burdening the Court with avoidable litigation or imposing avoidable litigation-related costs and expenses on the parties. Absent the relief requested, the Reorganized Debtors may be compelled to object to the Remaining Claims to avoid a windfall to some Claimants from the "deemed allowance" of non-meritorious Claims under the Plan.

The Reorganized Debtors also request an administrative measure to eliminate the need to file a redundant formal objection with this Court to any Claim that is being contested or liquidated through litigation in a non-bankruptcy forum pursuant to an order of this Court granting relief from

---

[5] Approximately 7,500 Subordinated Securities Claims were filed against the Debtors' estates. On January 25, 2021, the Court entered the *Order Approving Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* [Docket No. 10015] (the "**Securities ADR Order**"). The Securities ADR Order approved procedures (the "**Securities ADR Procedures**") aimed at facilitating the resolution and settlement of Subordinated Securities Claims without the need for expensive and protracted litigation on the merits. The Reorganized Debtors are working to resolve the Subordinated Securities Claims in accordance with the Securities ADR Procedures. The relief sought by this Motion applies to the Subordinated Securities Claims, which are for this purpose included in the defined term "Remaining Claims" and in the Remaining Claims statistics stated in the text.

the automatic stay or modification of the "**Plan Injunction**."[6]  Under the Plan, a Claim becomes "Allowed" if, among other things, "no objection to allowance has been interposed" to it by the operative objection deadline.  Plan, Section 1.7(f).  This provision assures Claimants that their Claims will be Allowed not later than the objection deadline unless they are subject to a challenge by that time.  Active litigation in a non-bankruptcy forum, authorized by this Court, to determine the validity and amount of a Claim is an "objection" to that Claim just as if a formal objection is filed in this Court.  The Reorganized Debtors seek an order confirming that, in such circumstances, the Reorganized Debtors' contest of the Claimant's position in the non-bankruptcy litigation is an "objection" for purposes of the Plan's definition of "Allowed" and that no separate formal objection filed in this Court is required.  This request is purely administrative and is necessary to ensure that any Claims that are being contested or liquidated by the applicable parties in other forums are not unintentionally Allowed against the Reorganized Debtors in the Chapter 11 Cases prior to the disposition of the underlying contested matters.

Accordingly, the Reorganized Debtors respectfully submit that the relief requested herein is necessary and warranted to allow them to continue the necessary work of resolving the Claims filed against their estates.

## II.   JURISDICTION

This Court has jurisdiction to consider these issues pursuant to 28 U.S.C. sections 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**").  This is a core proceeding pursuant to 28 U.S.C. section 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. sections 1408 and 1409.

## III.   BACKGROUND

On January 29, 2019, the Debtors commenced voluntary cases for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California.

---

[6] "**Plan Injunction**" refers to the permanent injunction established under Plan sections 10.5 and 10.6 and paragraphs 51 and 52 of the Confirmation Order.

Prior to the Effective Date, the Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On July 1, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors* [Docket No. 2806] (the "**Bar Date Order**"). The Bar Date Order set October 21, 2019 (the "**Bar Date**") as the deadline to file proofs of claim (each, a "**Proof of Claim**") for prepetition claims (as defined in section 101(5) of the Bankruptcy Code), including all claims of Fire Claimants, Wildfire Subrogation Claimants, Governmental Units, customers, secured claims and priority claims against either of the Debtors. The Bar Date was later extended solely with respect to unfiled, non-governmental Fire Claimants to December 31, 2019 [Docket No. 4672]; and subsequently to April 16, 2020 with respect to certain Claimants that purchased or acquired certain of the Debtors' publicly held debt and equity securities within a limited period and that may have claims against the Debtors [Docket No. 5943].

On June 20, 2020, this Court entered the Order confirming the Plan [Docket No. 8053] (the "**Confirmation Order**"). The Plan became effective on July 1, 2020 [Docket No. 8252] (the "**Effective Date**"). Pursuant to Section 7.1 of the Plan (as approved by Paragraph 31 of the Confirmation Order), the Reorganized Debtors may object to Claims until the later of (i) one-hundred and eighty (180) days after the Effective Date (*i.e.*, December 28, 2020) and (ii) such later date as may be fixed by the Bankruptcy Court for cause shown. Plan § 7.1.

On June 30, 2020, the Court entered the *Order Approving (A) Procedures for Filing Omnibus Objections to Claims and (B) the Form and Manner of the Notice of Omnibus Objections* [Docket No. 8228] (the "**Omnibus Objection Procedures Order,**" and each objection filed pursuant thereto, an "**Omnibus Objection**"). On September 25, 2020, the Court entered the *Order Approving ADR and Related Procedures for Resolving General Claims* [Docket No. 9148] (the "**ADR Procedures**

**Order**").  The ADR Procedures Order approved General Claims Procedures (as defined therein) that allow: (i) General Claimants (*i.e.*, holders of claims other than Fire Victim Claims, Subrogation Wildfire Claims, or Subordinated Securities Claims) to submit, by mail or via a secure online portal, information necessary to allow the Reorganized Debtors to evaluate their claims and develop settlement proposals for General Claimants; and (ii) the parties to exchange settlement offers or engage in standard or abbreviated forms of mediation to resolve General Claims.  The General Claims Procedures were designed to work together and along with the procedures set forth in the Omnibus Objection Procedures Order to form a comprehensive and efficient pre-litigation approach to resolve General Claims.

## IV.     THE REORGANIZED DEBTORS' CLAIMS RECONCILIATION PROCESS

The Debtors began the process of gathering and consolidating information relating to their liabilities when preparing their schedules and statements of financial affairs long before any Proofs of Claim were filed in these Chapter 11 Cases.  As indicated in the Initial Extension Motion, more than 22,440 Proofs of Claim had been scheduled or filed against the Debtors, asserting over $68.4 billion in the aggregate.[7]  Since the Effective Date, the Reorganized Debtors have successfully expunged, reduced through settlement, or otherwise resolved approximately 13,100 Claims asserted for approximately $52.5 billion, representing approximately 76% of the total dollar amount of Claims asserted in these Chapter 11 Cases (excluding Fire Victim Claims and Subrogation Wildfire Claims). Included in these statistics are Claims expunged, reduced through settlement, or otherwise resolved during the Initial Extension, totaling approximately 5,900 Claims, asserted for approximately $1.8 billion.

Since the date of filing of the Initial Extension Motion, the Reorganized Debtors have made distributions on approximately 1,200 Claims, totaling approximately $184 million, as part of total distributions since the Effective Date on approximately 4,600 Claims totaling approximately $24.3

---

[7] These figures and the others discussed in this Part IV exclude approximately 86,600 Fire Victim Claims and Subrogation Wildfire Claims, which will be resolved by the Fire Victim Trust and the Subrogation Wildfire Trust, respectively, in accordance with the Plan. Since the Initial Extension Motion was filed, the Debtors have received untimely Claims and have moved additional Claims to the Fire Victim Trust, resulting in fifteen additional Claims asserting $254.6 million.

billion.[8]  The reconciliation, resolution and distributions to date have required extensive efforts of a large team of advisors, attorneys, and the Reorganized Debtors' personnel.

The Reorganized Debtors have filed sixty-seven Omnibus Objections thus far during the Chapter 11 Cases, and forty-three since the Initial Extension Motion was filed.  Through the Plan and prosecution of the Omnibus Objections, approximately 8,200 Claims have been modified, disallowed and/or expunged, reducing the amounts asserted against the Debtors by approximately $28.3 billion.  In addition, approximately 400 additional Claims are currently subject to pending Omnibus Objections, which seek to further reduce the asserted Claims pool by an additional approximately $200 million.  The Reorganized Debtors anticipate filing further objections to more than 900 additional Claims asserting over $914 million prior to the date of the hearing on this Motion.

The Debtors and Reorganized Debtors have undertaken extensive efforts to resolve certain Claims through negotiated settlements, resolving approximately 1,800 Claims totaling approximately $1.2 billion.  Since the filing of the Initial Extension Motion, the Debtors and Reorganized Debtors have resolved approximately 400 Claims through settlement.  The Reorganized Debtors also have extended approximately forty currently pending settlement offers, which, if accepted, will reduce the asserted Claims by approximately $70 million.

Since the filing of the Initial Extension Motion, the Reorganized Debtors have initiated a robust claim reconciliation and settlement process pursuant to the General Claims Procedures approved by the ADR Procedures Order.  The Reorganized Debtors have sent formal information requests on approximately 300 Claims, have initiated settlement offer exchanges on approximately eighty Claims, and have initiated approximately forty Abbreviated Mediations and approximately forty Standard Mediations.  While most of these negotiations and mediations remain ongoing, the Reorganized Debtors' efforts thus far have yielded thirteen settlements totaling $5.8 million.

As of the date hereof, approximately 9,400 Remaining Claims asserting approximately $16.1 billion remain outstanding.  Some of the Remaining Claims are the most fact-specific and are likely

---

[8] These distribution figures exclude the cash transfers made pursuant to the Plan on the Effective Date to the Fire Victim Trust of more than $5 billion and to the Subrogation Wildfire Trust of approximately $11 billion.

to be the most time-consuming to resolve. They include, among other things, Claims arising from property damage, personal injury and commercial disputes, tax claims, complex trade claims, lien claims, customer claims, protective claims and regulatory claims. The Subordinated Securities Claims are also in the process of being resolved pursuant to the Securities ADR Procedures.

## V. BASIS FOR RELIEF REQUESTED

### A. The Court Has the Authority to Extend the Current Objection Deadline

The Court has the express authority to extend the Current Objection Deadline, and cause exists for it to do so. Section 7.1 of the Plan (as approved by Paragraph 31 of the Confirmation Order) provides that the Current Objection Deadline may be extended by the Court for cause shown. Plan § 7.1. This provision anticipates and provides the necessary authority for the Motion.

Even in the absence of express authority, Bankruptcy Rule 9006(b) provides in relevant part that "when an act is required or allowed to be done at or within a specified period . . . by order of [the] court, the court for cause shown may at any time in its discretion . . . order the period enlarged . . . ." Fed. R. Bankr. P. 9006(b). The Plan and Confirmation Order provide that the Court retains jurisdiction over "all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code." Confirmation Order ¶ 78; Plan § 11.1. Finally, the Plan also provides that the Court retains jurisdiction for, *inter alia*, the following purposes:

> (d) To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claims; …[and]

> (k) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation[.]

Plan § 11.1(d) and (k). These provisions underscore the Court's authority to extend the Current Objection Deadline.

Indeed, the Plan's express authority to extend the Current Objection Deadline is consistent with the Court's general authority under sections 105(a) and 1142(b) of the Bankruptcy Code to issue orders necessary for the consummation of the Plan or to carry out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of [the Bankruptcy Code].");
11 U.S.C. § 1142(b) ("The court may direct the debtor . . . to perform any other act . . . that is
necessary for the consummation of the plan."); *see also Adelphia Bus. Solutions, Inc. v. Abnos*, 482
F.3d 602, 609 (2d Cir. 2007) ("Section 105(a) grants broad equitable power to the bankruptcy courts
to carry out the provisions of the Bankruptcy Code so long as that power is exercised within the
confines of the Bankruptcy Code."); *Nobel Grp., Inc. v. Bank (In re Nobel Grp., Inc.)*, 529 B.R. 284,
290-91 (Bankr. N.D. Cal. 2015) (quoting *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l,
Inc.)*, 372 F.3d 154, 165 (3d Cir. 2004) ("Post-confirmation jurisdiction is assumed by statute and
rule: 11 U.S.C. § 1142(b) authorizes the bankruptcy court to 'direct' the debtor and any other
necessary party... to perform any other act ... that is necessary for the consummation of the plan").
These provisions also grant the Court ample authority to deem as "objected to" any Claims that are
being litigation in a non-bankruptcy forum pursuant to an order of this Court modifying the automatic
stay or the Plan Injunction.

Finally, the Court has the inherent power "'to control the disposition of the causes on its
docket with economy of time and effort for itself, for counsel, and for litigants.'" *Dependable
Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Landis
v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). This request to further extend the Current Objection
Deadline is in line with relief granted in chapter 11 cases of similar size. *See, e.g.*, *In re Lehman
Brothers Holdings Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2008), Docket Nos. 58842,
54122, 50165, 41286 (extending claims objection deadline four times, for a total of six years); *In re
Motors Liquidation Corp.*, Case No. 09-50026 (Bankr. S.D.N.Y. June 1, 2009), Docket Nos. 10938,
11546, 12092, 12364, 12499, 12610 (extending claims objection deadline six times, for a total of
nearly three years); *In re MF Global Holdings Ltd., et al.,* Case No. 11-15059 (Bankr. S.D.N.Y. Oct.
31, 2011), Docket Nos. 2290, 2247, 2200, 2160, 2102, 2028, 1869 (extending claims objection
deadline seven times, for a total of two and a half years).

**B.      Good Cause Exists to Extend the Current Objection Deadline**

The Reorganized Debtors have acted diligently to review the immense number of Claims
asserted in these Chapter 11 Cases. To date, the Reorganized Debtors have resolved over 13,100

Claims with asserted amounts of $52.5 billion, representing approximately 76% of the Claims asserted in these Chapter 11 Cases. As discussed above, in large part, some of the Remaining Claims are among the most fact-specific and are likely to be the most time-consuming to resolve. Because of the nature of the issues involved, the rate of resolution for the Remaining Claims may not be commensurate with the rate of resolution thus far. The Reorganized Debtors believe that the requested extension of one hundred eighty (180) days is required and reasonable in light of the circumstances, but additional time may be necessary to resolve certain claims.

Extension of the Current Objection Deadline will benefit the estates as a whole, including creditors and other parties in interest. It will enable the Reorganized Debtors to continue to engage in meaningful negotiations to resolve Claims consensually, minimizing the need to file and litigate objections. Resolving a Claim without a formal objection benefits both the holder of the Remaining Claim and the Reorganized Debtors' other stakeholders by avoiding the burden and expense of litigation. Further, if the Current Objection Deadline is not extended, the Reorganized Debtors will be compelled to divert their resources to supplement any pending objections to the Remaining Claims and file new objections to those Remaining Claims for which no objection has been filed. If the requested relief were not granted, the Reorganized Debtors would confront two choices: either (a) forego filing meritorious objections, thus creating a windfall for some holders of the Remaining Claims, *or* (b) file a plethora of rushed, expansive prophylactic objections to meet the Current Objection Deadline and preserve the Reorganized Debtors' rights, which would be inefficient and would impose substantial burdens on the Court and the Reorganized Debtors and significant inconvenience and litigation expense on holders of the Remaining Claims. Neither of these alternatives would be in the best interests of the Reorganized Debtors' stakeholders, notably including the Fire Victims Trust—which holds a significant stake in the Reorganized Debtors' equity—and the holders of Fire Victim Claims who are that Trust's beneficiaries.

Extending the Current Objection Deadline will not prejudice holders of the Remaining Claims because such an extension is contemplated by the Plan. Whether or not the Current Objection Deadline is extended, holders of the Remaining Claims will have a full and fair opportunity to be heard if and when an objection is litigated.

For these reasons, the Reorganized Debtors submit that extending the Current Objection Deadline through and including December 23, 2021, without prejudice to seek additional extensions thereof is appropriate under the circumstances.

**C.**     <u>Good Cause Exists to Deem Claims Being Litigated in Other Fora as "Objected To" Under the Plan</u>

Claims that are being litigated in non-bankruptcy fora, pursuant to an order of this Court modifying the automatic stay or Plan Injunction, are the subject of objection every bit as much as if a formal objection were filed in this Court. The Reorganized Debtors' request for an order of this Court confirming that reality is reasonable and supported by good cause. The requested relief will obviate the possible need to file a separate formal objection in this Court or risk having a disputed Claim be "Allowed" by default. This measure will lessen the administrative burden on the Court and the Reorganized Debtors, without prejudice to the holders of such Claims who have been granted relief to litigate their Claims in a non-bankruptcy forum. As noted above, this request is purely administrative to ensure that any Claims that are being contested in other fora will not affect these Claimants' rights in any way. Accordingly, the Reorganized Debtors submit that such relief is appropriate under the circumstances.

**VI.**     **NOTICE**

Notice of this Motion will be provided to: (i) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (ii) all counsel and parties receiving electronic notice through the Court's electronic case filing system; and (iii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Reorganized Debtors respectfully submit that no further notice is required. No previous request for the relief sought herein has been made by the Reorganized Debtors to this or any other Court.

WHEREFORE the Reorganized Debtors respectfully request entry of the Proposed Order granting (i) the relief requested herein, and (ii) such other and further relief for the Reorganized Debtors as the Court may deem just and appropriate.

1

2

Dated: March 17, 2021

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

3

*/s/ Peter J. Benvenutti*
Peter J. Benvenutti

4

5

*Attorneys for Debtors and Reorganized Debtors*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28