# EXHIBIT A

1  Micha Star Liberty (SBN 215687)
   **LIBERTY LAW OFFICE**
2  1970 Broadway, Suite 700
3  Oakland, CA 94612
   Telephone: (510) 645-1000
4  Facsimile: (888) 645-2008
   E-Mail: team@libertylaw.com
5

6  Don A. Ernst (SBN 65726)
   **ERNST LAW GROUP**
7  1020 Palm Street
   San Luis Obispo, CA 93401
8  Telephone: (805) 541-0300
   Facsimile: (805) 541-5168
9  E-Mail: dae@ernstlawgroup.com
10

11 Attorneys for Plaintiff SARAH PAZDAN

12          SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                  COUNTY OF SAN FRANCISCO

14 SARAH PAZDAN, an individual,           CASE NO.

15               Plaintiff,               **COMPLAINT FOR DAMAGES**
                                          1.  Hostile Work Environment Harassment in
16                                        Violation of Gov. Code § 12940(j);
        v.                                2.  Discrimination Based on Sex in Violation of
17                                        Gov. Code § 12940(a);
   PG&E CORPORATION;                      3.  Failure to Prevent Discrimination and
18 PACIFIC GAS AND ELECTRIC               Harassment in Violation of Gov. Code § 12940(k);
   COMPANY; and                          4.  Retaliation for Engaging in a Protected Activity
19 DOES 1 through 25, inclusive,          in Violation of Gov. Code
20                                            § 12940(h);
              Defendants.                 5.  Retaliation for Engaging in a Protected Activity
21                                        in Violation of Lab. Code § 1102.5;
                                          6.  Negligent Hiring, Supervision and/or Retention
22                                        7.  Intentional Infliction of Emotional Distress
23                                        8.  Negligent Infliction of Emotional Distress
24
                                          **DEMAND FOR JURY TRIAL**
25
26                                        **[UNLIMITED JURISDICTION]**
27
28

                                    1
                    COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, SARAH PAZDAN ("PAZDAN"), an individual, who is informed and believes, and thereon alleges as follows:

## PARTIES

1.  At all times mentioned herein, Plaintiff PAZDAN was an adult woman residing in the State of California. At all material times, PAZDAN was employed by Defendants PG&E CORPORATION and PACIFIC GAS AND ELECTRIC COMPANY (hereinafter collectively referred to as "PG&E DEFENDANTS"), and/or DOES 1 through 25, inclusive.

2.  Plaintiff alleges that, at all times mentioned herein, Defendant PG&E CORPORATION was and is a California Corporation conducting business in the State of California, with its principal place of business in the County of San Francisco.

3.  Plaintiff alleges that, at all times mentioned herein, Defendant PACIFIC GAS AND ELECTRIC COMPANY was and is a California Corporation conducting business in the State of California, with its principal place of business in the County of San Francisco.

4.  PG&E DEFENDANTS are a natural gas and electric utility company which owns, operates, manages, and controls the Diablo Canyon Nuclear Power Plant ("Diablo Canyon") located in Avila Beach, California. At all material times, PG&E DEFENDANTS' headquarters were located in the County of San Francisco, State of California.

5.  At the time of the events giving rise to this lawsuit, Susan Westcott ("Ms. Westcott") was employed by PG&E DEFENDANTS in a supervisory capacity at Diablo Canyon. Accordingly, PG&E DEFENDANTS and/or DOES 1 through 25, inclusive, had authority and/or control over PG&E Employee Ms. Westcott.

6.  At the time of the events giving rise to this lawsuit, Mark Frauenheim ("Mr. Frauenheim") was employed by PG&E DEFENDANTS in a supervisory capacity at Diablo Canyon. Accordingly, PG&E DEFENDANTS and/or DOES 1 through 25, inclusive, had authority and/or control over PG&E Employee Mr. Frauenheim.

7.  At the time of the events giving rise to this lawsuit, Anna Shatara ("Ms. Shatara") was employed by Defendants PG&E DEFENDANTS in a supervisory capacity at Diablo Canyon.

1   Accordingly, PG&E DEFENDANTS and/or DOES 1 through 25, inclusive, had authority and/or

2   control over PG&E Employee Ms. Shatara.

3           8.      Plaintiff alleges that PG&E DEFENDANTS and/or DOES 1 through 25, inclusive,

4   at all relevant times herein mentioned, had knowledge of the actions of Ms. Shatara, Mr.

5   Frauenheim, and Ms. Westcott in relation to Plaintiff.

6           9.      Plaintiff alleges that Defendants PG&E DEFENDANTS and/or DOES 1 through

7   25, inclusive, at all relevant times herein mentioned, controlled, directed, managed, operated,

8   and/or owned Plaintiff PAZDAN'S employing entity. At all relevant times, Defendants PG&E

9   DEFENDANTS and/or DOES 1 through 25, inclusive, had authority and/or control over

10  PAZDAN, as well as the ability to engage in tangible employment actions impacting her work

11  environment, including but not limited to hiring, firing, supervising, training, reassigning,

12  compensating, and investigating complaints.

13          10.     Plaintiff alleges that Defendants PG&E DEFENDANTS and/or DOES 1 through

14  25, inclusive, are vicariously liable for the actions of their agents, employees partners, joint

15  ventures, and/or independent contractors.

16          11.     Plaintiff alleges that, during the relevant times referenced herein, each named

17  Defendant and/or Defendant DOES 1 through 25, inclusive, was legally responsible in some

18  manner for the occurrences alleged and that the injuries as alleged herein were proximately and

19  legally caused by the acts and/or omissions of such Defendants.

20          12.     Plaintiff further alleges that, during the relevant times referenced herein, each of

21  the Defendants sued herein was the agent, servant, employee, joint venture, partner, division,

22  owner, subsidiary, alias, assignee, and/or alter-ego of each of the remaining Defendants and was

23  acting within the purpose, scope, course, and authority of such agency, servitude, employment,

24  joint venture, partnership, division, ownership, subsidiary, alias, assignment, alter-ego, and with

25  the authority, consent, approval, and ratification of each remaining Defendant.

26          13.     Plaintiff is ignorant of the true names or capacities, whether individual, corporate,

27  partnership, joint venture, or otherwise, of the Defendants sued herein under the fictitious names

28  DOES 1 through 25, inclusive. When the true names and capacities of Defendants DOES 1

Case 19-30088    Doc# 10439-1    Filed: 03/19/21    Entered: 03/19/21 16:42:03    Page 4
of 26

through 25, inclusive, are ascertained, Plaintiff will seek leave to amend this complaint accordingly.

14.     Plaintiff alleges that all the corporate Defendants are, and at all times herein mentioned were, corporations doing business in the State of California. Furthermore, all corporate Defendants are, and at all times mentioned herein were, the alter-egos of each and every other Defendant and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between said Defendants such that any separateness between them has ceased to exist in that the Defendants have completely controlled, dominated, managed, and operated the corporate Defendants and have intermingled the assets of each to suit their convenience.  Further, the corporate Defendants are, and at all times mentioned herein were, mere shells, instrumentalities, and conduits through which Defendants carried out their business in the corporate name while exercising complete control and dominance of the business such that individuality or separateness did not exist.

15.     At all times herein mentioned, each Defendant authorized and/or ratified the acts of all employees, agents, servants, representatives, joint/ventures, and co-Defendants under their supervision and/or control.

## JURISDICTION AND VENUE

16.     This Court is the proper court, and this action is properly filed in the County of San Francisco, and this judicial district, because (a) PG&E DEFENDANTS and/or DOES 1 through 25, inclusive, base their operations in the County of San Francisco, State of California, and (b) because the obligations and liabilities of all Defendants and/or DOES 1 through 25, inclusive, arise therein.

17.     Each of the wrongful acts and omissions alleged herein was performed by Defendants, and each of them, in the State of California.

18.     The amount in controversy exceeds the jurisdictional minimum of this Court.

4

COMPLAINT AND DEMAND FOR JURY TRIAL

19.     On or about January 8, 2019, Plaintiff PAZDAN filed her Complaint against the PG&E DEFENDANTS and PG&E Employees Ms. Westcott, Mr. Frauenheim, and Ms. Shatara, with the California Department of Fair Employment and Housing ("DFEH") and received an immediate Notice of Right-to-Sue from the DFEH, which was served on Defendants. Plaintiff PAZDAN thus exhausted her filing prerequisites and administrative remedies under the Fair Employment and Housing Act ("FEHA"), California Government Code §§ 12900, *et seq.*

## STATEMENT OF FACTS

**A. Plaintiff, a Highly Motivated Young Woman Who Took on Ever Increasing Responsibilities, Was Initially Recognized for Her Efforts by the PG&E DEFENDANTS.**

20.     Plaintiff was hired by PG&E DEFENDANTS to work as an Administrative Assistant at its Diablo Canyon Nuclear Power Plant ("Diablo Canyon") in August of 2013. Diablo Canyon was and is a male-dominated work force comprised of approximately seventy percent male and thirty percent female employees. Of the female employees, nearly all are in purely administrative roles.

21.     At the time of her hire, Plaintiff was tasked with supporting the entire Mechanical Maintenance organization. In November of 2013, only months after beginning her career with PG&E, Plaintiff was asked to take on the additional responsibilities of a retiring colleague by supporting the Instrument and Controls organization. Plaintiff accepted the new responsibilities without hesitation, despite the fact that there would be no change in pay or title.

22.     After absorbing the responsibilities of her former colleague, Plaintiff supported the efforts of two organizations within PG&E, consisting of approximately 135 employees, and performed her new duties without difficulty.

23.     Plaintiff additionally volunteered for leadership project opportunities at Diablo Canyon, including the design of a highly successful employee engagement and retention program

1  that received numerous accolades from senior leaders and management, in addition to being

2  featured in the Diablo Canyon site newsletter and the company-wide periodical.

3      24.    In March of 2015, following the initial success of the employee engagement and

4  retention program, Plaintiff was offered a temporary rotational position with the title of Employee

5  Engagement Specialist. This was a newly created position was a cross-functional role that required

6  collaboration with the leaders of numerous organizations across Diablo Canyon.

7      25.    In March of 2016, Plaintiff was quickly offered a permanent role as a Senior

8  Business Analyst for the Organizational Effectiveness and Strategy group based on the success of

9  the new cross-functional projects that she managed as part of the temporary rotation. Although

10  Plaintiff was keen to take on the new role, she was forced to decline the offer explaining that she

11  could not accept an increase in responsibilities at a lower base pay and without the ability to earn

12  overtime.

13      26.    Because PG&E understood that Plaintiff was uniquely qualified for this new role,

14  Pierre Dube ("Mr. Dube"), the then Senior Manager of Organizational Effectiveness Group,

15  pursued negotiations with Plaintiff which resulted in PG&E offering Plaintiff the role with the

16  eligibility for overtime pay for certain tasks. Plaintiff accepted the amended offer and began her

17  new role as Senior Business Analyst in mid-April of 2015.

18      27.    As anticipated, Plaintiff excelled in her new role receiving performance reviews

19  stating that Plaintiff "exceeds expectations" and earning a $10,000 bonus award in recognition of

20  the value she brought to Diablo Canyon.

21

22  **B. Despite Her Outstanding Performance, and Despite Having Taken on Substantial**

23  **Additional Responsibilities, Plaintiff was Compensated Less than Nearly All of Her**
     **Male Counterparts.**

24      28.    Shortly after Plaintiff accepted the Senior Business Analyst role, PG&E hired Matt

25  Andrews ("Mr. Andrews") to join its Organizational Effectiveness team. Although Mr. Andrews

26  had significantly less experience in organizational effectiveness or employee engagement than

27  Plaintiff, he was given the title "Principal," a title several levels above Plaintiff's, and was

28  compensated with a base pay nearly $50,000 per year more than Plaintiff. Because of her superior

COMPLAINT AND DEMAND FOR JURY TRIAL

knowledge regarding not only operations at Diablo Canyon but also the goals of the Organizational Effectiveness team, Plaintiff was responsible for the onboarding of Mr. Andrews.

29. By September of 2017, Plaintiff was either leading or involved in so many of the projects run by the Organizational Effectiveness group that Mr. Dube recommended Plaintiff for his replacement as the Senior Manager of the Organizational Effectiveness and Strategy group upon his retirement. At the time of making this recommendation, Plaintiff had the lowest ranking title, and presumably pay, in her organization, despite being a leader with responsibilities exceeding most of her primarily male counterparts.

30. Although a replacement for Mr. Dube was never named after he retired, Plaintiff effectively took on the majority of his responsibilities. This meant that Plaintiff was again doing the work of someone several titles her senior, without the commensurate title or pay.

31. In December of 2017 or January of 2018, Plaintiff's group began reporting to Bobby Simpson ("Mr. Simpson"), a newly appointed manager with no prior experience with the Organizational Effectiveness group. In February of 2018, Plaintiff met with Mr. Simpson for her annual performance review. Despite telling Plaintiff, "I think you're doing a great job," Mr. Simpson only gave Plaintiff a review of "meets expectations."

32. Given the tremendous responsibilities that Plaintiff had absorbed during her tenure at PG&E and in the wake of Mr. Dube's retirement, Plaintiff was confounded by the mediocre review. The review was additionally concerning to Plaintiff because her short-term incentive plan and bonus structure was tied to this review.

33. When Plaintiff questioned Mr. Simpson about why she should receive a downgrade in performance review, Mr. Simpson brushed Plaintiff off, falsely claiming that Plaintiff did not have a performance review for the previous year in her file. Plaintiff later learned that her performance ranking had been discussed at a leadership meeting in which her additional workload and successes were recognized but were nevertheless ignored when it came to Plaintiff's performance review.

///
///

COMPLAINT AND DEMAND FOR JURY TRIAL

Case: 19-30088    Doc# 10439-1    Filed: 03/19/21    Entered: 03/19/21 16:42:03    Page 8
of 26

34.     Although Plaintiff knew she was being treated differently and much less favorably than her largely male counterparts, she did not feel that she could challenge the review because doing so would be viewed as "rocking the boat" and would turn her into a "problem employee."

35.     In March of 2018, Plaintiff was in continued conversations with Mr. Simpson regarding her short-term incentive bonus plan and annual raise. It was around this time that Mr. Simpson inadvertently included an attachment in an email to Plaintiff that listed the base salary, bonus structure, and raises for each employee in her group. The attachment confirmed that Plaintiff was one of the lowest paid members of her group and that she was paid significantly less than her male counterparts with similar, or even fewer, responsibilities.

**C.  Due to an Ever-Increasing Workload, Plaintiff Regularly Logged Overtime Hours Which Were Approved on a Weekly Basis by Management.**

36.     In early 2018, Plaintiff was tasked with working on a five-year business operating plan for the Diablo Canyon site on a cross-functional team with the Director for Nuclear Business and the Senior Manager of Communications. This project was flagged as a "top priority" by senior management and required Plaintiff to log significant overtime, as this project was in addition to the daily responsibilities under Plaintiff's own role, the responsibilities she had absorbed upon Mr. Dube's retirement, and responsibilities associated with projects that she was running related to outage support and culture evaluations for the Performance Monitoring Committee.

37.     In March of 2018, Plaintiff was selected to participate in a site assessment for Arizona Power & Electric Palo Verde Generation Station in Arizona because of her cross-functional role working together with the Outage and Performance Monitoring groups. The site assessment required Plaintiff to travel to Arizona from March 18 through March 23.

38.     Although Plaintiff had originally booked her flight to leave for Arizona late Sunday afternoon, a mandatory briefing scheduled for Sunday, March 18, 2018, required Plaintiff to re-book her flight for earlier in the day in order to attend the briefing. Due to the weekend travel required for this work trip, Plaintiff logged overtime hours, which was approved at the time her compensation was negotiated.

39. Shortly after returning from the Palo Verde assessment, Plaintiff was tasked with evaluating organizational and worker performance during an upcoming refueling outage at Diablo Canyon. The intensive nature of the outage performance evaluations, in addition to Plaintiff's regular workload, again required Plaintiff to put in significant overtime. All of Plaintiff's overtime hours were logged, as was her regular practice since she began working at Diablo Canyon. Additionally, all of Plaintiff's overtime hours were regularly reviewed and approved by management, payroll finance *and* HR for accuracy. Significantly, no concerns were ever raised regarding Plaintiff's overtime hours until her initial report of safety concerns and pay inequities at Diablo Canyon.

**D. Plaintiff was Retaliated Against and Harassed for Reporting Safety Concerns at the Diablo Canyon Nuclear Power Plant and for Raising Concerns About Her Unequal Pay.**

40. Around mid-March of 2018, Plaintiff co-authored an initial report from her employee evaluations which had been conducted during the refueling outage. In her report, Plaintiff identified safety issues pertaining to the negative behavior of senior leadership personnel during outages, which could "chill the work environment" and "deter employees from raising safety concerns."

41. A number of employees that Plaintiff evaluated as part of the assessment went so far as to call out their direct supervisor, Ms. Westcott, the Director of Organizational Effectiveness and Learning Services, as the "queen of retaliation." Plaintiff included these safety-related issues in her initial report.

42. Upon learning of Plaintiff's initial findings, and wanting to avoid the ramifications of any safety-related issues coming to light in the operation of a nuclear power plant, senior managers, PG&E employees Ms. Westcott and Mr. Frauenheim (Manager of Nuclear Performance Improvement), immediately shut down the outage assessment.

43. Although the assessment would have allowed PG&E to better understand and mitigate safety risks, Ms. Westcott and Mr. Frauenheim were determined not to allow this information to get out. From accounts later provided to Plaintiff by colleagues at Diablo Canyon,

9

Case: 19-30088   Doc# 10439-1   Filed: 03/19/21   Entered: 03/19/21 16:42:03   Page 10 of 26

Ms. Westcott was particularly determined to learn who had reported the safety risks associated with her "retaliatory" conduct.

44.   In April of 2018, shortly after the outage assessment was shut down and the work intensive site assessment at Palo Verde had been completed, Plaintiff learned that she would begin reporting to Ms. Shatara in the Performance Improvement group, in lieu of Mr. Simpson. An initial meeting was scheduled with Ms. Shatara to discuss Plaintiff's role and responsibilities, which took place at the end of April 2018.

45.   Feeling mounting pressure from her increasing workload and knowing that she was significantly underpaid, Plaintiff raised the issue of unequal pay with Ms. Shatara by requesting a meeting with her and their manager Mr. Frauenheim. Plaintiff additionally told Ms. Shatara about the email attachment that she had inadvertently been sent by Mr. Simpson demonstrating that she was not being compensated equally, to which Ms. Shatara coldly replied, "We'll take care of all that."

46.   Irate that Plaintiff would attempt to go over her head by seeking to involve their manager, Mr. Frauenheim, in discussions about her unequal pay, PG&E employee Ms. Shatara took no steps to schedule a meeting with PG&E employee Mr. Frauenheim.

### i. Plaintiff was Stripped of her Job Responsibilities and was Micromanaged in Retaliation for Having Raised Safety Concerns and for Seeking Equal Pay.

47.   Instead of responding to or addressing Plaintiff's concerns regarding equal pay for equal work, PG&E employee Ms. Shatara unilaterally stripped Plaintiff of her cross-functional responsibilities and instructed Plaintiff not to accept work assignments from other senior management, which had been a regular part of her role for several years. This directive left Plaintiff deeply concerned as she was in the midst of working on the five-year business operating plan for which a significant amount of work had already been completed.

48.   Over the next few weeks, PG&E employee Ms. Shatara began to aggressively micromanage Plaintiff's work and whereabouts. Ms. Shatara also required Plaintiff to comply with a different set of rules than her other direct reports, which included copying her on all emails sent

COMPLAINT AND DEMAND FOR JURY TRIAL

out and attending every meeting in which Plaintiff participated. Ms. Shatara additionally sent out emails to senior leadership at Diablo Canyon stating that all communications with Plaintiff needed to go through her. Despite Ms. Shatara's retaliatory directives, senior leadership continued to engage with Plaintiff due to her critical role on several major projects.

### ii. Plaintiff was Harassed, Subjected to an Unfounded Investigation, and Falsely Accused of Misstating her Work Hours, in Retaliation for Having Raised Safety Concerns and for Seeking Equal Pay.

49.     On May 2, 2018, Plaintiff was called into a meeting with Greg Williams ("Mr. Williams"), a Corporate Security Officer for PG&E. In this meeting, Plaintiff was grilled for over an hour about Plaintiff's whereabouts on specific dates during the previous year. When Plaintiff truthfully responded that she could not provide accurate responses without access to her calendar, Mr. Williams accused her of not cooperating, warning her that "he could make [Plaintiff] look really bad." Mr. Williams then informed Plaintiff that he would be conducting an investigation into her conduct.

50.     On May 4, 2018, Plaintiff's access authorization to Diablo Canyon was revoked and she was asked not to return to work until further notice. Two weeks later, Plaintiff was asked to attend a second meeting with Mr. Williams at an off-site facility. Stunned by the abrupt, antagonistic, and unfounded investigation, Plaintiff requested to record the meeting. In order to prevent Plaintiff from preserving the conversation, Mr. Williams refused. He then proceeded to again accuse Plaintiff of misstating her hours worked, specifically highlighting two instances that Plaintiff was easily able to explain.

51.     The first instance involved Plaintiff's work trip to Arizona for the Palo Verde site assessment. Mr. Williams asked Plaintiff why her time sheet indicated that she had left for the trip on Sunday morning when her plane ticket was not booked until 4 p.m. Plaintiff truthfully explained that while her original flight was scheduled for the afternoon, she re-booked onto an earlier flight when she learned that she was required to attend a mandatory briefing earlier in the day.

52.     Mr. Williams then asked why Plaintiff had failed to attend an assessment meeting on Friday, April 20, 2018. Plaintiff explained that she had not only attended the meeting but had

COMPLAINT AND DEMAND FOR JURY TRIAL

presented at it to the entire group in attendance. Mr. Williams dismissed Plaintiff's explanations, telling her that he did not believe her.

### iii. Plaintiff was Further Harassed by Being Questioned About a Decades Old Traffic Ticket, and was Required to Provide her College Transcripts, Five Years After Her Hire.

53.     Approximately two weeks later, Plaintiff was called to attend another off-site meeting with Access and Badging. During this meeting, Plaintiff was again asked about non-work-related topics, such as a traffic ticket that she had received ten years before she began working for PG&E. Plaintiff was also asked to provide her college transcripts, which she submitted the following day. When Plaintiff asked why PG&E required her transcripts, she was not provided any response.

### E.     Plaintiff Was Terminated in Retaliation for Blowing the Whistle on Safety Concerns, and for Seeking Pay Equal to that of her Male Counterparts.

54.     At the end of June 2018, and while waiting to hear back from PG&E regarding her access to Diablo Canyon, Plaintiff received a letter from the Pacific Service Employees and Benefits Association regarding her alleged "resignation." Plaintiff was shocked as she had never tendered her resignation. This alerted Plaintiff to the possibility that PG&E was preparing to terminate her employment.

55.     On June 30, 2018, Plaintiff wrote a letter to PG&E requesting a formal review of the decision to revoke her access to Diablo Canyon and a copy of all documents related to the "investigation" into Plaintiff's conduct. She also requested all of her personnel documents, which were required to be provided under the Labor Code. Plaintiff subsequently followed up with several letters requesting her personnel documents and information, which went unanswered. Moreover, throughout this process, Plaintiff repeatedly provided PG&E with an updated mailing address, which it failed to use.

56.     Although Plaintiff never received an official termination letter from the PG&E DEFENDANTS, they claim that she was terminated on July 5, 2018. A final paycheck was

COMPLAINT AND DEMAND FOR JURY TRIAL

Case: 19-30088    Doc# 10439-1    Filed: 03/19/21    Entered: 03/19/21 16:42:03    Page 13 of 26

purportedly mailed to Plaintiff on July 9, 2018; however, she did not receive it until several weeks later. At no point in time have PG&E DEFENDANTS responded to Plaintiff's inquiries regarding her employee file, the investigation into her conduct, or her termination.

### FIRST CAUSE OF ACTION
### Hostile Work Environment Harassment in Violation of Government Code § 12940(j)
### (Against PG&E DEFENDANTS and DOES 1-25, inclusive)

57.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

58.     Pursuant to California Government Code § 12940(j), it is an unlawful employment practice for an employer to allow a hostile or abusive work environment to exist by subjecting employees to harassment based on protected characteristics such as sex.

59.     At all times relevant to this Complaint, PG&E DEFENDANTS were covered employers subject to the proscriptions of Government Code § 12940(j). (Gov. Code

60.     § 12926(d).) Plaintiff PAZDAN was PG&E DEFENDANTS' employee.

61.     As set forth in this Complaint, PG&E DEFENDANTS and PG&E employees Ms. Westcott, Mr. Frauenheim, and Ms. Shatara, subjected Plaintiff to a hostile and/or abusive work environment when Plaintiff was subjected to harassing conduct that was both severe and pervasive.

62.     Defendants subjected Plaintiff PAZDAN to a hostile and/or abusive work environment because of her sex.

63.     Plaintiff alleges that a reasonable person in her circumstances would have considered the work environment to be hostile and/or abusive and that Plaintiff found her work environment to be hostile and abusive.

64.     At all relevant times, PG&E DEFENDANTS participated in and/or ratified the harassing conduct of its agents, including Ms. Westcott, Mr. Frauenheim, Ms. Shatara, and other PG&E employees.  Because PG&E management participated in and condoned the conduct, PG&E DEFENDANTS knew and/or should have known of the harassing conduct. It is further

COMPLAINT AND DEMAND FOR JURY TRIAL

Case: 19-30088    Doc# 10439-1    Filed: 03/19/21    Entered: 03/19/21 16:42:03    Page 14 of 26

alleged that, despite having such knowledge, PG&E DEFENDANTS failed to take immediate and appropriate corrective action.

65.     Plaintiff PAZDAN alleges that she was harmed by the harassing conduct and that the harassing conduct described herein was a substantial factor in causing her harm.

66.     Further, PG&E DEFENDANTS' participation in and ratification of the harassing and discriminatory conduct was done with malice and/or reckless indifference to Plaintiff's rights and well-being.

67.     As a direct, proximate, and foreseeable result of the unlawful conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff has lost past and future income and benefits, employment and career opportunities, and other economic loss, the precise amount of which will be proven at trial.

68.     As a direct, proximate, and foreseeable result of the unlawful conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

69.     As a direct, proximate, and foreseeable result of the unlawful conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff has endured pain and suffering in the form of great humiliation, embarrassment, anger, loss of enjoyment of life, and emotional distress, the precise amount of which will be proven at trial.

70.     As a direct, proximate, and foreseeable result of the malice and/or reckless indifference of the PG&E DEFENDANTS, by and through their employees, and DOES 1 through 25, inclusive, toward Plaintiff's rights and well-being, Plaintiff has suffered great harm and accordingly seeks punitive damages, the precise amount of which will be proven at trial.

71.     As a direct, proximate, and foreseeable result of the conduct of the PG&E DEFENDANTS, by and through their employees, and DOES 1 through 25, Plaintiff was forced to retain an attorney in order to protect her rights. Accordingly, Plaintiff seeks the reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial as mandated under California Government Code § 12965(b).

///

Case: 19-30088    Doc# 10439-1    Filed: 03/19/21    Entered: 03/19/21 16:42:03    Page 15 of 26

## SECOND CAUSE OF ACTION
### Discrimination Based on Sex in Violation of Government Code § 12940(a)
### (Against PG&E DEFENDANTS and DOES 1 through 25, inclusive)

72.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

73.     Pursuant to California Government Code § 12940(a), it is an unlawful employment practice for an employer to treat an individual employee less favorably than another individual because of their protected status, and as set forth in this Complaint, because of their sex.

74.     Plaintiff alleges that, at all relevant times, PG&E DEFENDANTS were covered employers whose agents were included within the meaning of employer. (Gov. Code § 12926(d).) Plaintiff additionally alleges that she was employed by PG&E DEFENDANTS.

75.     § 12926(d).) Plaintiff additionally alleges that she was employed by PG&E DEFENDANTS.

76.     As set forth in this Complaint, PG&E DEFENDANTS and DOES 1 through 25, inclusive, wrongfully discriminated against Plaintiff when their conduct, taken as a whole, materially and adversely affected the terms, conditions, and privileges of her employment.

77.     Further, the conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, impaired Plaintiff's job performance and her prospects for advancement or promotion.

78.     Plaintiff alleges that her sex was a substantial motivating factor for the discriminatory conduct, that she was harmed by the discriminatory conduct, and that this conduct was a substantial factor in causing her harm.

79.     Additionally, the participation in and ratification of discriminatory conduct by the PG&E DEFENDANTS and DOES 1 through 25, inclusive, was done with malice and/or reckless indifference to Plaintiff's rights and well-being.

80.     As a direct, proximate, and foreseeable result of the unlawful conduct of the PG&E DEFENDANTS, by and through their employees, and DOES 1 through 25, inclusive, Plaintiff has lost past and future income and benefits, employment and career opportunities, and other economic loss, the precise amount of which will be proven at trial.

///

///

15

COMPLAINT AND DEMAND FOR JURY TRIAL

81. As a direct, proximate, and foreseeable result of the unlawful conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

82. As a direct, proximate, and foreseeable result of the unlawful conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff has endured pain and suffering in the form of great humiliation, embarrassment, anger, loss of enjoyment of life, and emotional distress, the precise amount of which will be proven at trial.

83. As a direct, proximate, and foreseeable result of the malice and/or reckless indifference of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, toward Plaintiff's rights and well-being, Plaintiff has suffered great harm, and accordingly seeks punitive damages, the precise amount of which will be proven at trial.

84. As a direct, proximate, and foreseeable result of the conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff was forced to retain an attorney in order to protect her rights. Accordingly, Plaintiff seeks the reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial as mandated under California Government Code § 12965(b).

### THIRD CAUSE OF ACTION
**Failure to Prevent Discrimination, Harassment, and Retaliation**
**in Violation of Government Code § 12940(k)**
**(Against PG&E DEFENDANTS and DOES 1 through 25, inclusive)**

85. Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

86. Pursuant to California Government Code § 12940(k), it is an unlawful employment practice for an employer to fail to take reasonable steps to prevent discrimination, harassment, and/or retaliation.

87. Plaintiff alleges that at all relevant times, PG&E DEFENDANTS was a covered employer whose agents were included within the meaning of employer. (Gov. Code § 12926(d).) Additionally, Plaintiff alleges that they were employed by PG&E DEFENDANTS.

///

COMPLAINT AND DEMAND FOR JURY TRIAL

Case: 19-30088    Doc# 10439-1    Filed: 03/19/21    Entered: 03/19/21 16:42:03    Page 17 of 26

88.     As set forth in this Complaint, Plaintiff was subjected to severe and pervasive harassment, discrimination, and retaliation by PG&E employees Ms. Westcott, Mr. Frauenheim, Ms. Shatara, and other employees, including senior management.

89.     Despite having knowledge of the harassing, discriminatory, and retaliatory conduct, PG&E DEFENDANTS failed to take all reasonable steps to prevent the harassment, discrimination, and retaliation. Plaintiff further alleges that this failure to take reasonable steps was done with malice and/or reckless indifference to Plaintiff's rights and well-being.

90.     Plaintiff was harmed by the unlawful conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, and the conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, was a substantial factor in causing her harm.

91.     As a direct, proximate, and foreseeable result of the unlawful conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff has lost past and future income and benefits, employment and career opportunities, and other economic loss, the precise amount of which will be proven at trial.

92.     As a direct, proximate, and foreseeable result of the unlawful conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

93.     As a direct, proximate, and foreseeable result of the unlawful conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff has endured pain and suffering in the form of great humiliation, embarrassment, anger, loss of enjoyment of life, and emotional distress, the precise amount of which will be proven at trial.

94.     As a direct, proximate, and foreseeable result of the malice and/or reckless indifference of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, toward Plaintiff's rights and well-being, Plaintiff has suffered great harm and accordingly seeks punitive damages, the precise amount of which will be proven at trial.

95.     As a direct, proximate, and foreseeable result of the conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff was forced to retain an attorney in order to protect her rights. Accordingly, Plaintiff seeks the reasonable attorneys' fees and costs

Case: 19-30088    Doc# 10439-1    Filed: 03/19/21    Entered: 03/19/21 16:42:03    Page 18 of 26

incurred in this litigation in an amount according to proof at trial as mandated under California Government Code § 12965(b).

## FOURTH CAUSE OF ACTION
### Retaliation for Engaging in a Protected Activity in Violation of Government Code § 12940(h)
### (Against PG&E DEFENDANTS, and DOES 1 through 25, inclusive)

96.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

97.     Pursuant to California Government Code § 12940(h), it is unlawful for an employer to retaliate against a person because that person has opposed, filed a complaint in, testified in, or participated in, any proceeding relating to discrimination or harassment that the person believes to be unlawful under this part.

98.     Plaintiff alleges that, at all relevant times, PG&E DEFENDANTS were covered employers whose agents were included within the meaning of employer. (Gov. Code § 12926(d).) Additionally, Plaintiff alleges that she was employed by PG&E DEFENDANTS.

99.     As set forth in this Complaint, Plaintiff was subjected to severe and pervasive harassment, discrimination, and retaliation. In response, Plaintiff engaged in protected activity under Government Code § 12940(h) when she objected to the discriminatory, gender-based pay differential and when she brought safety concerns to the attention of the PG&E DEFENDANTS.

100.    The request for equal pay and the report of safety issues made by Plaintiff was a substantial motivating factor in the retaliatory conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, which, taken as a whole, materially and adversely affected the terms, conditions, or privileges of her employment.

101.    Plaintiff alleges that she was harmed and that the conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, was a substantial factor in causing her harm.

102.    As a direct, proximate, and foreseeable result of the unlawful conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff has lost past and future income and ///

18
COMPLAINT AND DEMAND FOR JURY TRIAL

benefits, employment and career opportunities, and other economic loss, the precise amount of which will be proven at trial.

103. As a direct, proximate, and foreseeable result of the unlawful conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

104. As a direct, proximate, and foreseeable result of the unlawful conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff has endured pain and suffering in the form of great humiliation, embarrassment, anger, loss of enjoyment of life, and emotional distress, the precise amount of which will be proven at trial.

105. As a direct, proximate, and foreseeable result of the malice and/or reckless indifference of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, toward Plaintiff's rights and well-being, Plaintiff has suffered great harm and, accordingly, seeks punitive damages, the precise amount of which will be proven at trial.

106. As a direct, proximate, and foreseeable result of the conduct of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff was forced to retain an attorney in order to protect her rights. Accordingly, Plaintiff seeks the reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial as mandated under California Government Code § 12965(b).

<u>FIFTH CAUSE OF ACTION</u>
**Retaliation for Engaging in a Protected Activity in Violation of Labor Code § 1102.5**
**(Against PG&E DEFENDANTS and DOES 1 through 25, inclusive)**

107. Plaintiff incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

108. At all relevant times, California Labor Code § 1102.5 was in effect and binding on PG&E DEFENDANTS and DOES 1 through 25, inclusive. California Labor Code § 1102.5 prohibits employers and any persons acting on behalf of employers from discharging, constructively discharging, retaliating, or discriminating in any manner against any employee who

COMPLAINT AND DEMAND FOR JURY TRIAL

1  has disclosed reasonably based suspicions of violations of state or federal statutes to a government

2  agency.

3      109.    Here, Plaintiff reported safety concerns to PG&E DEFENDANTS with the

4  authority to investigate Plaintiff's claims.

5      110.    Discrimination, harassment, and retaliation in the workplace are a violation of state

6  and/or federal statute, rule, or regulation.

7      111.    Plaintiff alleges that her disclosures to PG&E DEFENDANTS were a substantial

8  motivating factor in the adverse retaliatory conduct of the PG&E DEFENDANTS and DOES 1

9  through 25, inclusive, towards her.

10     112.    Additionally, Plaintiff alleges that she was harmed and that the conduct of the

11 PG&E DEFENDANTS and DOES 1 through 25, inclusive, was a substantial factor in causing her

12 harm.

13     113.    As a direct, proximate, and foreseeable result of the unlawful conduct of the PG&E

14 DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff has lost past and future income and

15 benefits, employment and career opportunities, and other economic loss, the precise amount of

16 which will be proven at trial.

17     114.    As a direct, proximate, and foreseeable result of the unlawful conduct of the PG&E

18 DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff has incurred special and general

19 damages, the precise amount of which will be proven at trial.

20     115.    As a direct, proximate, and foreseeable result of the unlawful conduct of the PG&E

21 DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff has endured pain and suffering in

22 the form of great humiliation, embarrassment, anger, loss of enjoyment of life, and emotional

23 distress, the precise amount of which will be proven at trial.

24     116.    As a direct, proximate, and foreseeable result of the malice and/or reckless

25 indifference of the PG&E DEFENDANTS and DOES 1 through 25, inclusive toward Plaintiff's

26 rights and well-being, Plaintiff has suffered great harm and, accordingly, seeks punitive damages,

27 the precise amount of which will be proven at trial.

28 ////

Case: 19-30088    Doc# 10439-1    Filed: 03/19/21    Entered: 03/19/21 16:42:03    Page 21 of 26

## SIXTH CAUSE OF ACTION
### Negligent Hiring, Supervision and Retention
### (Against PG&E DEFENDANTS and DOES 1 through 25, inclusive)

117.    Plaintiff incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

118.    Plaintiff alleges that she was harmed by PG&E DEFENDANTS, by and through its employees Ms. Westcott, Mr. Frauenheim, Ms. Shatara, and PG&E DEFENDANTS and DOES 1 through 25, inclusive, are responsible for that harm because PG&E DEFENDANTS negligently hired, supervised, and/or retained Ms. Westcott, Mr. Frauenheim, Ms. Shatara.

119.    Plaintiff alleges that PG&E DEFENDANTS hired PG&E Employees Ms. Westcott, Mr. Frauenheim, Ms. Shatara.

120.    As set forth in this Complaint, PG&E Employees Ms. Westcott, Mr. Frauenheim, Ms. Shatara, were and/or became unfit to perform the work for which they were hired when they engaged in discriminatory and harassing conduct towards Plaintiff.

121.    Plaintiff further alleges that PG&E DEFENDANTS knew, or should have known, that PG&E Employees Ms. Westcott, Mr. Frauenheim, and Ms. Shatara were and/or became unfit to perform the work for which they were hired. Additionally, that this unfitness created an unreasonable risk of harm to those who worked under Ms. Westcott, Mr. Frauenheim, Ms. Shatara in the course of their employment with PG&E DEFENDANTS .

122.    Plaintiff alleges that the unfitness of PG&E Employees Ms. Westcott, Mr. Frauenheim and Ms. Shatara was the source of significant harm to Plaintiff. Additionally, that PG&E DEFENDANTS' negligence in their hiring, retention, training, and/or supervision of PG&E Employees Ms. Westcott, Mr. Frauenheim, and Ms. Shatara was a substantial factor in causing Plaintiff's harm.

123.    As a direct, proximate, and foreseeable result of the negligence of the PG&E DEFENDANTS and DOES 1 through 25, inclusive, Plaintiff has suffered injuries, damages, and losses, including, without limitation, severe emotional distress, humiliation, economic loss, and other consequential damages.

COMPLAINT AND DEMAND FOR JURY TRIAL

124.     Plaintiff further alleges that prior to the subject incidents, the PG&E DEFENDANTS and DOES 1 through 25, inclusive, knew or should have known of the unfitness of PG&E Employees Ms. Westcott, Mr. Frauenheim, and Ms. Shatara for their jobs, including the unreasonable risk of harm they posed to their colleagues, vis-à-vis its agents, employees, servants, representatives ,and/or joint venturers, and yet failed to take adequate steps to protect Plaintiff, from PG&E Employees Ms. Westcott, Mr. Frauenheim, and Ms. Shatara.

## SEVENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (Against PG&E DEFENDANTS and DOES 1 through 25, inclusive)

125.     Plaintiff incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

126.     Defendants' conduct against Plaintiff, as herein alleged, was intentional and outrageous and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress. Alternatively, Defendants' actions were conducted with reckless disregard of the probability that Plaintiff would suffer severe distress.

127.     As set forth in this Complaint, Plaintiff was harmed, and Defendants' conduct was a substantial factor in causing Plaintiff's harm.

128.     As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, embarrassment, anger, loss of enjoyment of life, and had been injured in mind and body, the precise amount of which will be proven at trial.

129.     As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has lost past and future income and benefits, employment and career opportunities, and other economic loss, the precise amount of which will be proven at trial.

130.     As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

COMPLAINT AND DEMAND FOR JURY TRIAL

131.    Defendants' behavior as alleged herein was willful, wanton, and malicious and was intended to oppress and cause injury to Plaintiff and, as such, Plaintiff is entitled to an award of punitive damages.

### EIGHTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
### (Against PG&E DEFENDANTS, and DOES 1 through 25, inclusive)

132.    Plaintiff incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

133.    Plaintiff alleges that PG&E DEFENDANTS and DOES 1 through 25, inclusive, were negligent as alleged herein.

134.    Plaintiff alleges that she suffered serious emotional distress.

135.    Plaintiff alleges that Defendants' negligence was a substantial factor in causing Plaintiff's serious emotional distress. Emotional distress includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame. Serious emotional distress exists if an ordinary, reasonable person would be unable to cope with it.

136.    As a direct, proximate, and foreseeable result of Defendants' negligence, Plaintiff has suffered injuries, damages, and losses, including, without limitation, severe emotional distress, humiliation, economic loss, and other consequential damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants and DOES 1 through 25, inclusive, and each of them, on all theories of action as follows:

1.    For general damages according to proof;

2.    For special damages, including but not limited to medical and incidental expenses according to proof;

3.    For loss of past and future earnings and loss of earning capacity according to proof;

4.    For punitive damages, as permitted by law;

5.    For attorneys' fees, as permitted by law;

Case: 19-30088    Doc# 10439-1    Filed: 03/19/21    Entered: 03/19/21 16:42:03    Page 24 of 26

1  6.  For prejudgment interest, as permitted by law;

2  7.  For costs of suit herein;

3  8.  For such further relief as the Court deems just and proper.

4

5  Dated: December _____, 2020

6

7                                    Micha Star Liberty (SBN 215687
                                     **LIBERTY LAW OFFICE**
8                                    1970 Broadway, Suite 700
                                     Oakland, CA 94612
9                                    Telephone: (510) 645-1000
                                     Facsimile: (888) 645-2008
10                                   E-mail: team@libertylaw.com

11
                                     Don Ernst (SBN 65726)
12                                   **ERNST LAW GROUP**
                                     1020 Palm St.
13                                   San Luis Obispo, CA 93401
                                     Telephone: (805) 541-0300
14                                   Facsimile: (805) 541-5168
                                     Email: dae@ernstlawgroup.com
15                                   *Attorneys for Plaintiff*

16

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

COMPLAINT AND DEMAND FOR JURY TRIAL

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury as to all matters so triable.

Dated: December _____, 2020

Micha Star Liberty (SBN 215687)
**LIBERTY LAW OFFICE**
1970 Broadway, Suite 700
Oakland, CA 94612
Telephone: (510) 645-1000
Facsimile: (888) 645-2008
E-mail: team@libertylaw.com

Don Ernst (SBN 65726)
**ERNST LAW GROUP**
1020 Palm St.
San Luis Obispo, CA 93401
Telephone: (805) 541-0300
Facsimile: (805) 541-5168
Email: dae@ernstlawgroup.com
*Attorneys for Plaintiff*

Case: 19-30088    Doc# 10439-1    Filed: 03/19/21    Entered: 03/19/21 16:42:03    Page 26 of 26