BROWN RUDNICK LLP
Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive
Seventh Floor
Irvine, California 92612
Telephone:    (949) 752-7100
Facsimile:     (949) 252-1514

BROWN RUDNICK LLP
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone:    (212) 209-4800
Facsimile:     (212) 209-4801

COTCHETT, PITRE & McCARTHY, LLP
Frank M. Pitre (SBN 100077)
(fpitre@cpmlegal.com)
Mark C. Molumphy (SBN 168009)
(mmolumphy@cpmlegal.com)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:    (650) 697-6000
Facsimile:     (650) 697 0577

*Special Counsel for Fire Victim Trustee in
connection with Assigned Directors and
Officers Claims*

*Attorneys for Fire Victim Trustee*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>    -and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                Debtors.<br><br>JUSTICE JOHN TROTTER (RET.), TRUSTEE OF THE PG&E FIRE VICTIM TRUST,<br><br>           Plaintiff,<br><br>           v.<br><br>PG&E CORPORATION, PACIFIC GAS & ELECTRIC COMPANY, ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED, ENERGY INSURANCE MUTUAL LIMITED, NORTH AMERICAN SPECIALTY INSURANCE COMPANY, GREAT LAKES | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>Adv. Pro. 21-03012<br><br>San Francisco Superior Court<br>Case No. CGC-21-590296<br><br>**PLAINTIFF FIRE VICTIM TRUSTEE'S MOTION TO REMAND OR ABSTAIN REGARDING REMOVED ACTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   April 20, 2021<br>Time:  9:30 a.m. (Pacific Time)<br>Place: **Via Zoom Webinar**<br>United States Bankruptcy Court<br>     Courtroom 17, 16th Floor<br>     San Francisco, CA 98102<br><br>Objection Deadline: April 13, 2021<br>              4:00 p.m. (Pacific Time) |

| | |
|---|---|
| 1 | REINSURANCE (UK) SE, ENDURANCE RISK SOLUTIONS ASSURANCE |
| 2 | COMPANY, BERKLEY INSURANCE COMPANY, AMERICAN |
| 3 | INTERNATIONAL REINSURANCE COMPANY, LTD., ALLIANZ GLOBAL |
| 4 | RISKS US INSURANCE COMPANY, LIBERTY INSURANCE UNDERWRITERS, |
| 5 | INC., STARR INDEMNITY & LIABILITY COMPANY, U.S. SPECIALTY |
| 6 | INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, BARBICAN |
| 7 | MANAGING AGENCY LIMITED, TWIN CITY FIRE INSURANCE COMPANY, |
| 8 | ARGONAUT INSURANCE COMPANY, HOUSTON CASUALTY COMPANY, and |
| 9 | DOES 1-20, inclusive, |
| 10 | Defendants. |

The Honorable John K. Trotter (Ret.), in his capacity as the Trustee (the "**Trustee**") of the PG&E Fire Victim Trust (the "**Trust**"), appointed in the above-captioned Chapter 11 cases (the "**Chapter 11 Cases**") of PG&E Corporation, et al. ("**PG&E**"), submits this Motion to Remand or Abstain (the "**Motion**") and Memorandum of Points and Authorities (the "**Memorandum**") in support thereof. Pursuant to 28 U.S.C. § 1334(c), 28 U.S.C. § 1452(b) and Federal Rules of Bankruptcy Procedure 9027(d), the Trustee moves this Court to remand or abstain and return this matter to the Superior Court of California for the County of San Francisco. In further support of the Motion, the Trustee respectfully submits the concurrently filed Declaration of Frank M. Pitre, Esq. (the "**Pitre Declaration**"), and respectfully states as follows:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**TABLE OF CONTENTS**

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 3

I.    PRELIMINARY STATEMENT ................................................................................ 3

II.   STATEMENT OF FACTS ....................................................................................... 6

      The D&O Claims and the Side B Insurance Coverage ....................................... 7

      PG&E's Arbitration with the Insurance Carriers ............................................... 7

III.  JURISDICTION ..................................................................................................... 8

IV.   LEGAL STANDARD ............................................................................................. 8

V.    ARGUMENT ......................................................................................................... 9

      A.    Removal is Improper Because There is No Subject Matter  Jurisdiction ............... 9

      B.    Section 1334(c)(2) Requires Abstention in This Case ........................ 14

            1.    This Motion Is Timely ........................................................ 15

            2.    The Question Is of State Law ............................................. 15

            3.    No Independent Claim to Federal Jurisdiction Exists ............... 16

            4.    The Proceeding is Noncore ................................................ 17

            5.    The Action Began in a State Court Forum, Which Can Timely Adjudicate It ............... 18

VI.   CONCLUSION ..................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albingia Versicherungs A.G. v. Schenker Int'l Inc.*,
  344 F.3d 931 (9th Cir. 2003).................................................................... 6

*In re C&M Russell, LLC*,
  No. 2:11-BK-53845-RK, 2019 WL 3430800 (B.A.P. 9th Cir. July 30, 2019) ................... 6, 7

*In re Cuzco Dev. U.S.A., LLC*,
  592 B.R. 352 (Bankr. D. Haw. 2018).............................................................. 18

*In re Eastport Assocs.*,
  935 F.2d 1071 (9th Cir. 1991).................................................................. 15

*In re Elias*,
  215 B.R. 600 (B.A.P. 9th Cir. 1997)............................................................ 11

*Ethridge v. Harbor House Rest.*,
  861 F.2d 1389 (9th Cir. 1988)................................................................... 7

*In re Fietz*,
  852 F.2d 455 (9th Cir. 1988).................................................................... 8

*In re G-I Holdings Inc.*,
  No. 01-30135 (RG), 2017 WL 1788656 (D.N.J. May 5, 2017)........................................ 10

*In re GACN, Inc.*,
  555 B.R. 684 (B.A.P. 9th Cir. 2016)........................................................*passim*

*Gaus v. Miles, Inc.*,
  980 F.2d 564 (9th Cir. 1992).................................................................... 6

*In re Gen. Carriers Corp.*,
  258 B.R. 181 (B.A.P. 9th Cir. 2001)............................................................ 12

*In re Harris Pine Mills*,
  44 F.3d 1431 (9th Cir. 1995).................................................................... 7

*Harris v. Bankers Life & Cas. Co.*,
  425 F.3d 689 (9th Cir. 2005).................................................................... 6

*In re Harris*,
  590 F.3d 730 (9th Cir. 2000).................................................................... 7

*In re Heller Ehrman LLP*,
    461 B.R. 606 (Bankr. N.D. Cal. 2011) (Montali, J.).................................................. 9, 10

*In re Int'l Mfg. Grp., Inc.*,
    574 B.R. 717 (Bankr. E.D. Cal. 2017) ....................................................... 6, 8, 9, 19

*Johnson v. Columbia Props. Anchorage, LP*,
    437 F.3d 894 (9th Cir. 2006)................................................................ 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ....................................................................... 11

*Cal. ex rel. Lockyer v. Dynegy, Inc.*,
    375 F.3d 831, *amended by* 387 F.3d 966 (9th Cir. 2004) ...................................... 6

*Marotta Gund Budd & Dzera LLC v. Costa*,
    340 B.R. 661 (D.N.H. 2006) ................................................................ 8

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*,
    488 F.3d 112 (2d Cir. 2007) ................................................................ 7

*In re Miami Metals I, Inc., et al.*,
    No. 18-BK-13359-SHL, 2021 WL 1116384 (2021) ........................................... 14

*NAMA Holdings, LLC v. World Mkt. Ctr. Venture, LLC*,
    948 A.2d 411 (Del. Ch. 2007), *aff'd*, 945 A.2d 594 (Del. 2008) ............................ 14

*Pacor, Inc. v. Higgins*,
    743 F.2d 984 (3d Cir. 1984) ................................................................ 8

*Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*,
    639 F.3d 572 (2d Cir. 2011) ............................................................ 16, 17

*In re Pegasus Gold Corp.*,
    394 F.3d 1189 (9th Cir. 2005)........................................................... 8, 9, 11

*In re Ray*,
    624 F.3d 1124 (9th Cir. 2010)......................................................... 7, 8, 11, 15

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3d Cir. 2004) ................................................................ 10

*Servicing Co. Inc. v. Greenberg Traurig, LLP*,
    2011 WL 3320916 (D. Ariz. Aug. 2, 2011) ................................................. 9, 15

*In re Solano*,
    No. 2:16-BK-26833-VZ, 2020 WL 4280662 (B.A.P. 9th Cir. July 24, 2020) ....................... 6

*Stern v. Marshall*,
    564 U.S. 462 (2011) .................................................................... 15, 16

iii

*Stoe v. Flaherty*,
  436 F.3d 209 (3d Cir. 2006) ............................................................. 8

*Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*,
  206 A.3d 836 (Del. 2019) ................................................................ 14

*Sw. Marine, Inc. v. Danzig*,
  217 F.3d 1128 (9th Cir. 2000) ......................................................... 11

*In re Taylor*,
  884 F.2d 478 (9th Cir.1989) ............................................................ 11

*Trotter v. PG&E et al.*,
  Case No. CGC-17-562591 .................................................................. 5

*In re Tucson Ests., Inc.*,
  912 F.2d 1162 (9th Cir. 1990) ......................................................... 18

*In re Valdez Fisheries Dev. Ass'n, Inc.*,
  439 F.3d 545 (9th Cir. 2006) ..................................................... 11, 15

*In re Wilshire Courtyard*,
  729 F.3d 1279 (9th Cir. 2013) ...................................................... 7, 8

*In re World Solar Corp.*,
  81 B.R. 603 (Bankr.S.D.Cal. 1988) .............................................. 13, 16

*In re Zargar*,
  2018 WL 3459758 (Bankr. C.D. Cal. July 16, 2018) ........................... 15

**Statutes**

11 U.S.C. § 346(j)(1) ......................................................................... 7

28 U.S.C. § 1331 ............................................................................... 7

28 U.S.C. § 1332 ............................................................................... 7

28 U.S.C. § 1334 ........................................................................*passim*

28 U.S.C. § 1452 ................................................................... 6, 7, 9, 17

**Other Authorities**

1 Collier on Bankruptcy ¶ 3.02[2], n. 5 (16th ed. 2020) ...................... 15

Fed. R. Bankr. P. 5011 ...................................................................... 6

Fed. R. Bankr. P. 7012 .................................................................... 13

iv

| | |
|---|---|
| Fed. R. Bankr. P. 9027(d) | 6 |
| Fed. R. Civ. P. 6 | 13 |
| Restatement (Second) of Contracts § 236(c) | 14 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

v

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    PRELIMINARY STATEMENT**

In this action, two California entities[1] dispute whether California law provides the Trustee (on behalf of the Trust), as holder of causes of action that implicate certain insurance policies held by the insured, PG&E, a basis to intervene into an arbitration between the insured and its insurers over the coverage available on those claims (the "**Arbitration**").

The outcome of the Arbitration will be crucial to the recoveries of wildfire victims (the "**Fire Victims**"), *i.e.*, it will determine whether one or two policy stacks are available in connection with the director and officer causes of action assigned to the Trust under the Plan (the "**Assigned D&O Claims**").[2]  If the Trustee prevails in obtaining intervention, representatives of the Trust will be permitted to monitor the Arbitration hearing to ensure that PG&E appropriately prosecutes the coverage dispute so that the maximum amount of insurance dollars will be available to the Fire Victims if the Trust is successful in prosecuting its claims.

On March 17, 2021, the Trustee commenced an declaratory judgment action against PG&E and the insurers in the Superior Court of California for the County of San Francisco (the "**State Court**") to answer the intervention question, *Trotter v. PG&E et al.*, CGC-21-590296 (the "**Removed Action**" or "**State Court Action**").  The Removed Action involves a single, state law cause of action for declaratory judgment regarding the Trust's right to participate in the Arbitration as a party in interest.

PG&E removed the dispute to this Court, arguing that it is appropriate to do so because this Court retains jurisdiction over certain Plan and/or Trust matters, the Trust was created as a result of the Chapter 11 Cases, and the State Court Action relates to the fires that prompted the commencement of the Chapter 11 Cases.  But the fact that the parties and the facts underlying the State Court Action have historical connection to the bankruptcy case does not create "related to" subject matter

---

[1] The Trust is a California entity for jurisdictional purposes, *see* Section V.B.3 *infra*.  In addition to PG&E, the Trustee has named the underlying insurance companies in the State Court Action.

[2] PG&E's Notice of Removal, Docket No. 10460, describes the underlying dispute in the Arbitration.

jurisdiction, let alone "arising under" or "arising in" subject matter, under 28 U.S.C. § 1334. Alternatively, if the Court determines it does have "related to" subject matter jurisdiction, it should abstain and remand or equitably remand the Removed Action back to State Court.

To support removal, PG&E misconstrues and inaccurately represents the Trustee's allegations in the Removed Action, seeking to tie the Removed Action more closely to the Plan. There is, however, **no dispute** between PG&E and the Trustee regarding the scope of the claims and causes of action transferred to the Trust pursuant to the Plan. As PG&E recognizes in the Notice of Removal (the "**Notice**"), the Trustee agrees with PG&E that the Trust's recovery with respect to the Assigned D&O Claims is solely limited to the proceeds from certain director and officer liability policies of the Debtors (the "**D&O Policies**"). *See* Notice ¶ 8. Significantly, the Trustee is **not** contending that the D&O Policies or the rights thereto (as relevant to the Fires, defined below) were assigned to the Trust under the Plan. In other words, no substantive Plan provision is in dispute and no Plan interpretation is necessary.

Instead, the Removed Action simply seeks a declaration based on **state law** with respect to the Trust's status as assignee and owner of the Assigned D&O Claims. The Trustee has alleged that it has a right under state law to monitor the Arbitration with respect to the D&O Policies because the value of a significant asset transferred to the Trust—the Assigned D&O Claims—is intertwined with the amount and availability of the D&O Policies. The Removed Action does not seek any interpretation of the assets or rights that comprise the consideration transferred to the Trust under the Plan, and there is no need or occasion for this Court to interpret the Plan in considering the Removed Action.

Further, the Removed Action does not in any way interfere with PG&E's ability to administer the Plan. First, the Trust is not seeking through the Removed Action to displace, replace, or interfere with PG&E in the Arbitration. It seeks to monitor for itself the Arbitration regarding the D&O Policies, which provide the Trust with its sole recourse to monetize the Assigned D&O Claims for the benefit of the Fire Victims. Given the limited assets PG&E transferred to the Trust to pay the claims of over 70,000 Fire Victims, it is no surprise that the Trustee should want to know and be able

/ / /

Case: 19-30088    Doc# 10472    Filed: 03/29/21    Entered: 03/29/21 18:23:48    Page 9 of 58

to monitor the extent of the proceeds from the D&O Policies potentially available to the Trust as the Trustee progresses litigation of the Assigned D&O Claims.

Moreover, as the Plan recognizes (and as the securities claimants themselves have recognized before this Court and the District Court), the securities claims PG&E seeks to resolve are **subordinate** to the claims of the Fire Victims which have been channeled to the Trust.[3]  It is not clear that the Fire Victims' claims will be paid in full, allowing the payment of claims subordinate to theirs from insurance assets of PG&E that may ordinarily be available for both director and officer claims and securities claims.  There has never been any adjudication of the total value of the Fire Victim claims, and even if the $13.5 billion purported value of the consideration transferred to the Trust for the payment of Fire Victim Claims is accepted as an accurate, aggregate valuation of the Fire Victim claims, the current value of the PG&E stock transferred to the Trust falls far short of bringing the Trust assets to $13.5 billion.  In other words, proceeds from the D&O Policies cannot be used by PG&E to pay those subordinated securities claims ahead of their use to pay the claims of Fire Victims.[4]  Because it is not clear the Fire Victims will ever be compensated in full for their claims, which were never given an exact value during the Chapter 11 Cases, any purported impact

---

[3] The Public Employees Retirement Association of New Mexico ("**PERA**"), the court-appointed lead plaintiff in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**"), pending in the U.S. District Court for the Northern District of California, acknowledges that their claims to the D&O insurance are subordinate to those of the Trust. *See In re PG&E* (N.D.Cal. 2020), 4:20-cv-04567-HSG, Docket No. 22 at 7 (". . . this appeal concerns only a narrow issue collateral to implementation of PG&E's Plan, affecting only the last-in-line recoveries of Class 10A-II securities claimants whose claims are "subordinated" by law. Hence, fixing their mistreatment by the Plan requires no unwinding of the Plan's other terms, especially the treatment of the TCC's constituents, whose claims are senior to those of Securities Claimants."). Meanwhile, PG&E asserts there is $400 million in D&O insurance available with respect to 2017 and 2018 (not including the stand-alone Side A policy that would not draw down the Shared Coverage). PG&E asserts that this insurance is available for resolution or satisfaction of: (a) the Securities Litigation Claims, (b) the Subordinated Securities Claims under the Plan, and (c) the Trust's D&O Claims: "So the only recovery is the insurance, and there is, in fact, 400 million dollars' worth of insurance, and so that insurance is shared not only with the federal action that there are already plaintiffs on, but the debtors in resolving any claims in the bankruptcy that we're talking about now, as well as competing claims by the [Trust] on account of the derivative claim.  So you have a pot of insurance." *Nov. 18, 2020 Hr'g Tr. at* pp. 13:24-14:5 (R. Slack); *see also id.* at 13:18-21 ("So without the [PG&E] in the case, the money available to PERA, and the federal putative class is for all practical purposes, the insurance, the D&O insurance.").

[4] Importantly, the insurance carriers seem to agree that the Trust has priority of recovery from the D&O insurance over the securities claimants: In response to PG&E's contention that the parties has already engaged in extensive mediation, Counsel for PERA noted: "Mr. Slack says we have mediated with them before. We have not. We were mediating with the D&O carriers and the insurance people. There is 200 million dollars' worth of insurance and our friends, the fire victims, have claimed all of it. So there is no insurance for these shareholders." *Id.* at p. 54:2-7 (T. Dubbs).

5

on those subordinated claims by the Trust's monitoring of an Arbitration proceeding is incidental at best and does not support maintenance of the Removed Action in this Court.

Where, as here, a purely state-law dispute arises (whether based in contract, quasi-contract or otherwise) between nondiverse parties well after confirmation and consummation of a Chapter 11 Plan, there is no "related to" jurisdiction as required by 28 U.S.C. § 1334(b). Even if "related to" jurisdiction exists, the Court must abstain from deciding and remand or equitably remand the Removed Action because the Trustee makes a timely request to abstain, and because the Removed Action (i) began in state court and involves only state law claims, (ii) is not a core bankruptcy proceeding, (iii) involves no possible basis for federal jurisdiction other than 28 U.S.C. § 1334, (iv) can be timely adjudicated in State Court, and (v) equitable factors otherwise weigh in favor of abstention or remand. PG&E's removal serves only to cause delay. Accordingly, the Trustee respectfully requests that this Court remand to state court for lack of subject matter jurisdiction, or to abstain and remand under 28 U.S.C. § 1334 or equitably remand the Removed Action under 28 U.S.C. § 1452(b).

## II. STATEMENT OF FACTS

On June 20, 2020, this Court entered a confirmation order, Docket No. 8053, (the "**Confirmation Order**") approving PG&E's Chapter 11 Plan, Docket No. 8048, (the "**Plan**") to exit bankruptcy. This Plan included the creation of the Trust, which is a vehicle to compensate, among others, over 70,000 victims who filed claims against PG&E for hundreds of wrongful deaths, personal injury, damage or destruction to property, lost income, and emotional distress because of the deadly fires started by PG&E, in particular fires in 2017 ("**North Bay Fires**") and 2018 ("**Camp Fire**," and together with the North Bay Fires, the "**Wildfires**"), liability for which forced PG&E into the Chapter 11 Cases.

The Trust is responsible for administering, processing, settling, resolving, liquidating, satisfying, and paying all outstanding Fire Victim claims—and prosecuting or settling rights and causes of action assigned to it through PG&E's Plan.

/ / /

/ / /

6

**The D&O Claims and the Side B Insurance Coverage**

Causes of action assigned to the Trust include PG&E's causes of action against its former directors and officers (the "**Assigned D&O Claims**") relating to the Wildfires. Per the Plan, the Trust's recovery on account of the D&O Claims is limited solely to the extent of any director-and-officer insurance policy proceeds paid by any insurance carrier (all such carriers, collectively, the "**Insurance Carriers**") to reimburse the Reorganized Debtors for amounts paid pursuant to their indemnification obligations to such former directors and officers (the "**Side B Insurance Coverage**").

The Side B Coverage is one of three silos of coverage under the D&O Policies. Depending on interpretation of the D&O Policies—which the Trustee has **not** put at issue in the Removed Action, but is an issue in the Arbitration—and ultimately upon the Trustee's success in prosecuting the D&O Action (defined below), the Side B Insurance Coverage may return between zero and hundreds of millions of dollars to the Trust. Such return would inure to the benefit of the Fire Victims in the form of increased Trust distributions.

The Trustee is presently prosecuting the Assigned D&O Claims in State Court, seeking recovery for the consequences of the acts and omissions of applicable former PG&E directors and officers. All these matters (the "**D&O Actions**") are organized under one lead matter, *Trotter v. PG&E et al.*, Case No. CGC-17-562591, before the Honorable Andrew Y.S. Cheng.

**PG&E's Arbitration with the Insurance Carriers**

At some point in 2020, the Trustee believes that PG&E began the Arbitration with the Insurance Carriers to resolve disputes regarding the scope of insurance coverage provided by the D&O Policies. Counsel to the Trustee in connection with the Assigned D&O Claims learned of the Arbitration's existence during the week of February 8, 2021. The Arbitration will determine the value of an asset that, per the Plan, is the sole source of recovery for the Assigned D&O Claims that belong to the Trust, and the Trust's interests are not currently represented at the Arbitration. A hearing had been set in the Arbitration for April 30, 2021, and we learned on March 26 that it had been adjourned to the end of May.

///

7

The Trustee reached out to PG&E repeatedly over the course of February and March regarding the Trustee's voluntary participation in the Arbitration, but these discussions proved fruitless. The Trustee asked to participate in the Arbitration, since the D&O Policies are sole source of the Trust's recovery for the Assigned D&O Claims. PG&E informed the Trustee that due to the rules of the Arbitration, and at the decision of the Arbitrators, the Trust's request to participate was denied.

As a result, the Trustee filed his *Complaint for Declaratory Relief Pursuant to California Civil Code Section 1060* in State Court on March 17, 2021, which is pending with the other D&O Actions before Judge Cheng. *See* **Exhibit 1** attached hereto. At a status conference on the D&O Actions, held on March 18, 2021, the Trustee advised the State Court that it intended to seek to pause the Arbitration and move forward with a fully-noticed motion on the Trust's participation. PG&E did not object but advised the State Court that it intended to remove the action to this Court.

Judge Cheng set a March 25, 2021 deadline for the parties to either (1) advise the Court if the action had been removed, or (2) submit 5-page letter briefs addressing the next steps in State Court. Judge Cheng set an expedited schedule to consider relief as soon as he was informed of the April 30, 2021 arbitration hearing, and PG&E's counsel agreed to expedited consideration in State Court. On March 25, 2021—the last possible day—PG&E removed the State Court Action to this Court.

## III. JURISDICTION

This Court has limited jurisdiction to decide this Motion pursuant to 28 U.S.C. §§ 1334 and 1452 and Federal Rules of Bankruptcy Procedure 9027(d) and 5011, albeit it is the Trust's position that this Court does not have subject matter jurisdiction over the Removed Action. The Trustee consents to the entry of an order abstaining or remanding the Removed Action to State Court.

## IV. LEGAL STANDARD

Courts of the Ninth Circuit "strictly construe the removal statute against removal jurisdiction," and resolve any factual and legal doubts against removability. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal citation omitted); *accord In re Solano*, No. 2:16-BK-26833-VZ, 2020 WL 4280662, at *3 (B.A.P. 9th Cir. July 24, 2020); *In re C&M Russell, LLC*, No. 2:11-BK-53845-RK, 2019 WL 3430800, at *6 (B.A.P. 9th Cir. July 30, 2019); *see also Harris v. Bankers*

8

*Life & Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005) ("removal statutes should be construed narrowly in favor of remand to protect the jurisdiction of state courts"). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*; *accord In re Int'l Mfg. Grp., Inc.*, 574 B.R. 717, 719 (Bankr. E.D. Cal. 2017). If the court determines it has no jurisdiction, "[it] must remand the removed case rather than dismissing it." *Albingia Versicherungs A.G. v. Schenker Int'l Inc.*, 344 F.3d 931, 938 (9th Cir. 2003).

The removing party bears the burden of demonstrating that federal jurisdiction exists, and that removal was timely and proper. *See Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838, *amended by* 387 F.3d 966 (9th Cir. 2004); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988); *accord In re C&M Russell, LLC*, 2019 WL 3430800 at *6. To determine jurisdiction, Courts "look only to the jurisdictional facts alleged in the Notices of Removal." *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007).

## V. ARGUMENT

### A. REMOVAL IS IMPROPER BECAUSE THERE IS NO SUBJECT MATTER JURISDICTION

PG&E removed the State Court Action pursuant to 28 U.S.C. § 1452(a), which provides that "a party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, ***if such district court has jurisdiction over such claim or cause of action under section 1334 of this title***." (emphasis added).

Section 1334(b) accordingly confers federal jurisdiction "of all civil proceedings arising under title 11, or arising in *related to* cases under title 11." (emphasis added). Here, no ground for federal jurisdiction exists—even "related to" jurisdiction under section 1334(b)—because the parties are nondiverse and the subject matter is California law. *See generally* 28 U.S.C. §§ 1331, 1332.

First, the Removed Action does not "arise under" title 11 or "arise in" the Chapter 11 Cases. "Proceedings 'arising under' title 11 involve causes of action created or determined by a statutory provision of that title." *In re Wilshire Courtyard*, 729 F.3d 1279, 1285 (9th Cir. 2013); *accord In re Harris*, 590 F.3d 730, 737 (9th Cir. 2000). A proceeding "arises in" a bankruptcy case when it "would have no existence outside of a bankruptcy case," but unlike an "arising under" matter, the underlying cause of action (the Removed Action) is not "expressly rooted" in the bankruptcy code.

9

*Id.*; *accord In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010); *In re Harris Pine Mills*, 44 F.3d 1431, 1435–37 (9th Cir. 1995); *see also In re GACN, Inc.*, 555 B.R. 693 (B.A.P. 9th Cir. 2016) ("the claims for relief in a proceeding 'arising in' a title 11 case are not explicitly created or controlled by title 11, but such claims nonetheless would have no existence outside of a bankruptcy case").

Here as in *Wilshire Courtyard*, "the merits question does not rest on a substantive provision of the Bankruptcy Code," 729 F.3d at 1286. *Wilshire* involved the question of whether, for tax purposes, a particular transaction was debt forgiveness or a disguised sale of assets. While that came close to a matter addressed by 11 U.S.C. § 346(j)(1) (forgiveness or discharge of an estate's debt is not income), the crucial question was the underlying tax law and state partnership regarding the transaction, and so the dispute did not arise under title 11.

Here, where only a declaration of state law is at issue, there is *a fortiori* no "arising under" jurisdiction. Likewise, a similar dispute over the D&O Claims and an arbitration may have arisen between Wildfire Victims or derivative plaintiffs and PG&E even if the Chapter 11 Cases never existed, so this is a case that has "independent existence outside of bankruptcy" and could be brought in another forum. *Ray*, 624 F.3d at 1131. Further, the fact that these particular parties went through and came out of the Chapter 11 Cases as a matter of history does not cause the action to "arise in" bankruptcy either. *See, e.g.*, *Stoe v. Flaherty*, 436 F.3d 209, 218 (3d Cir. 2006) ("arising in" inquiry asks whether claims must arise in context of bankruptcy "by their nature, not their particular factual circumstance"); *Marotta Gund Budd & Dzera LLC v. Costa*, 340 B.R. 661 (D.N.H. 2006) (defamation action by debtor's prepetition CEO against chief restructuring officer over remarks about the CEO's leadership did not "arise in" chapter 11 case).

To justify removal under a "related to" theory after plan confirmation, the removing party must show a "close nexus to the bankruptcy plan or proceeding." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005) (quoting *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166–67 (3d Cir. 2004)). This narrows the pre-confirmation "related to" inquiry under *Pacor*, which asks only whether the removed action might conceivably have some effect on an estate administered in bankruptcy. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *accord In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988); *In re Int'l Mfg. Grp., Inc.*, 574 B.R. 717, 721 (Bankr. E.D. Cal. 2017).

10

Courts have recognized that the *Pacor* standard "may be somewhat overbroad in the post-confirmation context." *Pegasus Gold*, 394 F.3d at 1194. A "close nexus" test looks for "matters affecting the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *In re Wilshire Courtyard*, 729 F.3d 1279, 1287 (9th Cir. 2013).

Where, as here, the plaintiff only make state law claims with no bankruptcy law element and the claims are not asserted in any bankruptcy proceeding, there is no "related to" jurisdiction, even if there is a "common factual scenario" or shared course of misconduct between a bankruptcy proceeding and a state action. *See Int'l Mfg. Grp.*, 574 B.R. at 719 (state-law suit between non-debtors arising out of debtors' corporate principal's Ponzi scheme was insufficiently "related to" bankruptcy to create jurisdiction under sections 1334(b) and 1452). "[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate" does not create "related to" jurisdiction. *Id*. at 720 (quoting *Pacor*, 743 F.2d at 994). Neither does the potential for some downstream effect on victims' recoveries create jurisdiction. If it did, as this Court has ruled, "the scope of a bankruptcy court's post-confirmation jurisdiction would be unlimited." *In re Heller Ehrman LLP*, 461 B.R. 606, 610 (Bankr. N.D. Cal. 2011) (Montali, J.).

Although "in cases involving continuing trusts (such as litigation trusts, or, as here, a liquidating trust), trusts by their nature maintain a connection to the bankruptcy even after the plan has been confirmed, " *Pegasus Gold*, 394 F.3d at 1194, courts of the Ninth Circuit are clear that a "close nexus" does not spring into being just because litigants in the removed action are continuing trusts or other creatures of a plan. *See, e.g.*, *Heller Ehrman*, 461 B.R. at 610; *ML Servicing Co. Inc. v. Greenberg Traurig, LLP*, 2011 WL 3320916 (D. Ariz. Aug. 2, 2011). Neither do causes of action assigned to a continuing Trust by a plan create by themselves a question of plan interpretation sufficient to create a "close nexus." *Id*.

In *ML Servicing*, the district court applied *Pegasus Gold*'s "close nexus" test to hold that it had no jurisdiction over a liquidating trustee's post-confirmation malpractice and breach of fiduciary action, which was based on the pre-petition conduct of debtor's securities counsel. *Id*. at *2. Although a liquidating trust was involved, the action consisted entirely of state law claims and there was no question of plan interpretation. *Id*. On that ground, the district court distinguished *Pegasus*

11

*Gold* and dismissed for want of jurisdiction. *Id*. Even though one of the litigants was a creature of the bankruptcy case, the claims themselves "could have existed entirely apart from the bankruptcy proceeding and did not necessarily depend upon resolution of a substantial question of bankruptcy law." *Id*. (quoting *In re Ray*, 624 F.3d 1124, 1135 (9th Cir. 2010).

Similarly, this Court held in *Heller Ehrman* that it had no jurisdiction over a liquidating debtor suing after confirmation for breach of contract and accounts payable. *In re Heller Ehrman LLP*, 461 B.R. 606, 609 (Bankr. N.D. Cal. 2011). There, the only conceivable effect on the estate was a change in the assets available to the debtor, which was insufficient to ground jurisdiction. *Id*.

Here, we are a further step removed: this action will determine whether the Trust may intervene in another proceeding, the Arbitration, which in turn may affect whether new assets flow to the reorganized debtors or the Trust, in the further-removed event that the Trust is successful in the separate D&O Actions. This court ruled in *Heller Ehrman* that "claims based on pre-petition conduct that were asserted post-confirmation but could have been brought prior to confirmation lack a nexus sufficient to confer jurisdiction upon the bankruptcy court." *Id*. at 610 (quoting *In re The Fairchild Corp.*, 452 B.R. 525, 531 (Bankr. D. Del. 2011)). So too here: the Trust is a new vehicle, but the underlying dispute is about whether a party asserting an interest may intervene in an arbitration. Plaintiffs possessing claims that triggered or implicate the D&O Policies might have filed the same litigation for a declaratory judgment even if no bankruptcy petition had ever been filed.

Grants of jurisdiction in a Plan cannot extend beyond statutory "related to" limits. After discussing the text of retained jurisdiction provisions in the *Heller Ehrman* plan, this Court ruled that "[e]ven if the plan had contained a broader, more general retention of jurisdiction provision, such a provision may not have established the necessary close nexus." 461 B.R. at 609 n.2 (citing *Resorts*, 372 F.3d at 161). As the Third Circuit noted in *Resorts*, "neither the bankruptcy court nor the parties can write their own jurisdictional ticket. Subject matter jurisdiction cannot be conferred by consent of the parties." 372 F.3d at 161; *accord In re G-I Holdings Inc*., No. 01-30135 (RG), 2017 WL 1788656, at *9 (D.N.J. May 5, 2017) (retention-of-jurisdiction provisions only given effect with an independent basis of subject-matter jurisdiction).

12

In an attempt to write its own ticket, PG&E's Notice inaccurately represents what the Trustee alleged in its State Court complaint in order to manufacture some question of Plan interpretation that would give PG&E its "related to" jurisdictional hook. But there is nothing from the Plan or Confirmation Order that needs to be interpreted in respect of the questions raised in the Removed Action. PG&E and the Trustee both agree that the Assigned D&O Actions were in fact assigned. *See* Notice at ¶ 8. The Removed Action raises solely the question as to what rights the Trustee has under California law as an assignee of the D&O Actions. There is no underlying dispute between PG&E and the Trustee as to the meaning of the substantive Plan provisions or related documents at all—*i.e.*, the parties do not disagree as to the meaning of the term "Assigned D&O Claims" or that the Trust's recovery on those claims is limited solely to the extent of the D&O Policies' Side B Coverage. The Trustee only disagrees with PG&E's characterization of the jurisdictional provisions of the Plan in its Notice of Removal, which have nothing to do with the merits of the Removed Action.[5]

Further, even if there were a question of interpretation of Bankruptcy Court-approved documents that might potentially arise in the State Court Action—and there is not—that without more is insufficient without more to create a "close nexus" in the post-confirmation context. *See Ray*, 624 F.3d at 1134 (no "close nexus" where would-be purchaser of debtor's asset brought breach of contract claim to protect right of first refusal under Bankruptcy Court sale order); *In re Valdez Fisheries Dev. Ass'n, Inc.*, 439 F.3d 545, 549 (9th Cir. 2006) (no conceivable effect on estate in dispute over settlement agreement between creditors); *cf. Pegasus Gold*, 394 F.3d at 1193 (close nexus established where direct plan interpretation necessary).[6]

---

[5] *See* V.B.3 *infra*; *see also* Notice at ¶ 12. At ¶ 13 of its Notice, PG&E also cites Plan § 1.109 (contemplating an "Insurance Deduction" consisting of "cash payments received" from PG&E's directors and officers insurance policies for equity securities claims) to argue that the State Court Action interferes with Plan administration. The meaning of the provision is undisputed, but it is beside the point: the securities claimants take from insurance proceeds only after the Fire Victims. *See supra* notes 3 and 4.

[6] Neither does the background presence of bankruptcy case documents create jurisdiction under the limited doctrine of "ancillary jurisdiction," which allows a court "to (1) to permit disposition by a single court of factually interdependent claims, and (2) to enable a court to vindicate its authority and effectuate its decrees." *In re Ray*, 624 F.3d 1124, 1135 (9th Cir. 2010); *see generally Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994). "[O]nce the bankruptcy court confirms a plan of reorganization, the debtor is free to go about its business without further supervision or approval of (footnote continued)

13

For these reasons, there is no federal subject matter jurisdiction over the question and this Court must remand the Removed Action to State Court.

## B.   SECTION 1334(C)(2) REQUIRES ABSTENTION IN THIS CASE

Even in cases in which a Bankruptcy Court is found to have "related to" jurisdiction, the facts may indicate that the Court must abstain from hearing the matter pursuant to Section 1334(c)(2), which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court **shall** abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. (Emphasis supplied.)

The Ninth Circuit breaks this determination into a seven-factor conjunctive test: (1) a timely motion for abstention and remand; (2) a purely state law question; (3) a non-core proceeding; (4) a lack of independent federal jurisdiction absent the petition under Title 11; (5) that an action is commenced in a state court; (6) the state court action may be timely adjudicated; and (7) a state forum of appropriate jurisdiction exists. *In re Gen. Carriers Corp.*, 258 B.R. 181, 189 (B.A.P. 9th Cir. 2001) (quoting *In re World Solar Corp.*, 81 B.R. 603, 606 (Bankr.S.D.Cal. 1988). All of these criteria are satisfied here.[7]

---

the court, and concomitantly, without further protection of the court." *Sw. Marine, Inc. v. Danzig*, 217 F.3d 1128, 1140 (9th Cir. 2000). A Bankruptcy Court retains subject matter jurisdiction in order to dispose of ancillary matters "such as an application for an award of attorney's fees for services rendered in connection with the underlying action," *In re Taylor*, 884 F.2d 478, 481 (9th Cir. 1989), but this does not extend to such "tenuous" connections as the breach of an agreement involved in an earlier action. *See Kokkonen*, 511 U.S. at 379; *accord Ray*, 624 F.3d at 1135–36; *Valdez Fisheries*, 439 F.3d at 549–50. When state court claims are at issue, even a dispute over fees in a bankruptcy case are not necessarily sufficient for ancillary jurisdiction. *See In re Elias*, 215 B.R. 600, 603–17 (B.A.P. 9th Cir. 1997).

[7] The Ninth Circuit has taken the position that "[a]bstention can exist only where there is a parallel proceeding in state court. That is, inherent in the concept of abstention is the presence of a pendent state action in favor of which the federal court must, or may, abstain." *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1009 (9th Cir. 1997); *accord In re Cuzco Dev. U.S.A., LLC*, 592 B.R. 352, 363 (Bankr. D. Haw. 2018); *but see Frelin v. Oakwood Homes Corp.*, 292 B.R. 369, 380 (Bankr. E.D. Ark. 2003) (collecting cases opposed to the *Security Farms* position). *Security Farms* reads 1334(c)(2)'s "commenced" requirement as a "pending" requirement, such that removal "extinguishes" the pendent state action in favor of which to abstain, rendering abstention impossible. *See In re Cytodyn of New Mexico, Inc.*, 374 B.R. 733, 737 (Bankr. C.D. Cal. 2007). Here, however, a pendent, parallel State Court action *does* remain: the D&O Actions, under which the State Court placed the Removed Action. For that reason, the 1334(c)(2) mandatory abstention doctrine should apply even under *Security Farms*. Even if it did not, the same factors

(footnote continued)

14

In re GACN, Inc., 555 B.R. 684 (B.A.P. 9th Cir. 2016), demonstrates how the test should be applied here. *GACN* involved an adversary action between a debtor restaurant and its insurer for declaratory relief regarding a prepetition insurance contract under California law, which would pay out to the debtors, then ultimately to certain restaurant workers who had obtained a prepetition judgment against the debtors.

There, the debtor filed the case as an adversary proceeding in Bankruptcy Court (relying on Bankruptcy Code section 1334(b)) in parallel with a pending Los Angeles County Superior Court action on the same matter. The insurer moved for abstention, which was denied by the Bankruptcy Court. But a Ninth Circuit Bankruptcy Appellate Panel heard an interlocutory appeal and reversed, holding that the declaratory judgment proceeding was noncore and that, on remand, the Bankruptcy Court should consider only timeliness issues before making a final decision on abstention. It also reversed the Bankruptcy Court's discretionary abstention ruling as an abuse of discretion on the grounds that it was mistaken as to (i) the predominance of state law issues, and (ii) the noncore status of the proceedings.

Here too, the declaratory judgment issue regarding the Trustee's effort, under state law, to intervene in the Arbitration is non-core and best suited to the state court already handling it, which was ready to hear the matter with alacrity. Each of the seven factors under *World Solar* is satisfied. Timeliness, state law, and lack of independent jurisdiction are shown easily. Non-core status and timely adjudication are satisfied on examination.

### 1. This Motion Is Timely

This motion, filed less than a week after PG&E's removal, is timely if it meets the black-letter rules of FRCP 6 and FRBP 7012. *See In re World Solar Corp.*, 81 B.R. 603, 606 (Bankr. S.D. Cal. 1988). The motion complies with those rules.

### 2. The Question Is of State Law

The Removed Action has one state law cause of action. *See Complaint for Declaratory Relief*

---

support permissive abstention, for which the absence of a parallel proceeding is only one factor, *In re Hatfield*, No. 08-30154 TEC, 2009 WL 2849538, at *2 (Bankr. N.D. Cal. July 17, 2009) ("Abstention is not barred merely because there is no pending state-court proceeding"), or a functionally equivalent equitable remand under section 1452(b).

*Pursuant to California Civil Code Section 1060*, attached hereto as **Exhibit 1**. *GACN* speaks to this: even when it might conceivably have a downstream federal effect, a California declaratory judgment action is a question of state law for purposes of the mandatory abstention inquiry. 555 B.R. at 698-99 (collecting cases).

### 3. No Independent Claim to Federal Jurisdiction Exists

There is neither diversity nor federal subject matter in the arbitration question so that no federal court could take jurisdiction absent bankruptcy jurisdiction under § 1334. No federal question is made in the complaint, and as to diversity, setting aside that there is no amount in controversy, "a trust has the citizenship of its trustee or trustees." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). PG&E is a California corporation and the Trust is a California entity for jurisdictional purposes, so PG&E cannot show complete diversity.

PG&E argues in its Notice of Removal that the Trust Agreement's general provision as to exclusive jurisdiction of the Bankruptcy Court regarding Trust matters mandates that this Court should keep this matter before it. But, setting aside jurisdictional issues discussed above, PG&E fails to apprise the Court of the more applicable provision in the Trust Agreement that specifically empowers the Trustee to bring actions such as the D&O Actions and the Removed Action in State Court. *See* PG&E Fire Victim Trust Agreement Dated as of July 1, 2020 [Docket No. 8057-1], § 2.1(e)(xxi) (". . . the Trustee shall have the power to: make, pursue (by litigation or otherwise), abandon, collect, compromise, or settle for the benefit of the Trust any claim, right, action, or cause of action included in the Trust Assets, including, but not limited to, insurance recoveries and claims against third parties before any court of competent jurisdiction, which power shall, for the avoidance of doubt, be exercised in the Trustee's sole and absolute discretion.")

Interpretation of the Trust Agreement is governed by Delaware Law. Docket No. 8057-1 at § 8.16. Delaware law is clear that the specific language trumps general language. *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019) ("But general terms of the contract must yield to more specific terms.") (*citing DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005) ("Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the

16

general one.")); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 236(c) ("Where there is an inconsistency between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions.")

Courts have similarly applied this principal when analyzing whether a statutory right like mandatory abstention has been waived by contractual language. *See In re Miami Metals I, Inc., et al.*, --- B.R. ---, 2021 WL 1116384 (Bankr. S.D.N.Y. Mar. 24, 2021). Adopting the interpretation espoused by PG&E would render the power provided to the Trustee under Section 2.1(e)(xxi) of the Trust Agreement meaningless, and the language conferring discretion to choose the appropriate court superfluous.

Applicable law dictates against such an outcome, as Delaware contract law follows the canon of avoiding superfluity. *See NAMA Holdings, LLC v. World Mkt. Ctr. Venture, LLC*, 948 A.2d 411, 419 (Del. Ch. 2007) ("Contractual interpretation operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court."), *aff'd*, 945 A.2d 594 (Del. 2008). PG&E's argument must be rejected, and the Trustee must be allowed exercise his power to bring actions such as the Removed Action in the court of competent jurisdiction he chooses in his discretion.

### 4. The Proceeding is Noncore

"[C]ore proceedings are those that arise in a bankruptcy case or under Title 11." *Stern v. Marshall*, 564 U.S. 462, 476 (2011). The single cause of action here and the underlying question posed to the State Court do not "arise under" the Code since they are both state law claims and questions. *GACN*, 555 B.R. at 693 ("A proceeding 'arises under' title 11 if it presents claims for relief created or controlled by title 11."). Even if the underlying Assigned D&O Claims were relevant to this question, and they are not, it makes no difference that the claims touch upon or are passed through a bankruptcy process on their way to a trust—courts recognize that state law claims assigned through a bankruptcy process do not "arise under" the bankruptcy code. *See, e.g., Valdez Fisheries*, 439 F.3d at 549 (no "arising under" jurisdiction for right created by bankruptcy sale order); *ML Servicing*, 2011 WL 3320916 (state law rights of liquidating trust not even "related to" bankruptcy case).

Case: 19-30088    Doc# 10472    Filed: 03/29/21    Entered: 03/29/21 18:23:48    Page 22 of 58

Nor do they "arise in" a bankruptcy case since the state-law claim could (and indeed does) exist outside the bankruptcy: as noted above, a similar arbitration and a similar dispute between the beneficial holder of the cause of action and PG&E could arise even in the absence of the petition. *See Ray*, 624 F.3d at 1131 (conjunctive test: cases are "arising in" bankruptcy when they "have no independent existence [from the case] and could not be brought in another forum"); *In re Eastport Assocs.*, 935 F.2d 1071, 1076 (9th Cir. 1991) (question is whether the claim "could exist outside bankruptcy"); *accord In re Zargar*, 2018 WL 3459758, at *3 (Bankr. C.D. Cal. July 16, 2018).

Proceedings that merely "relate to" bankruptcy are by definition noncore. 1 COLLIER ON BANKRUPTCY ¶ 3.02[2], p. 3-26, n. 5 (16th ed. 2010) ("The terms 'non-core' and 'related' are synonymous"). There is also no basis for a "public right" claim of a core proceeding. *See generally Stern*, 564 U.S. at 485. The proceeding is not against a federal governmental entity and is not bound up in a federal regulatory scheme except in the attenuated sense that PG&E is a federally regulated utility.[8]

### 5. The Action Began in a State Court Forum, Which Can Timely Adjudicate It

The State Court is best positioned to timely adjudicate the dispute the Trustee brought to it. Whether an action can be timely adjudicated in state court is a mixed question of law and fact that requires a case-specific inquiry of circumstances. *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011). The inquiry does not reduce to a question of which court can handle the question faster but depends on the circumstances and the nature of the need for urgency, including whether remand would impact reorganization (which is no longer an issue here). *GACN*, 555 B.R. at 699 ("the greater the urgency in resolving the dispute for bankruptcy purposes, the less of a delay in the state court the bankruptcy court should allow for before determining that the state court cannot timely adjudicate the dispute"); *see also In re World Solar Corp.*, 81 B.R. 603, 612 (Bankr. S.D. Cal.

---

[8] To the extent these claims are identified as "core" under the statute, they are not core constitutionally under *Stern v. Marshall*, *supra*, since they (1) are brought in another forum, and (2) would not necessarily be resolved through the claims allowance process. A declaratory judgment regarding participation in an arbitration is not a claim against the debtors' estate. *Stern*, 564 U.S. at 499 ("the [Article III] question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process").

18

1988) (faster adjudication through Bankruptcy Court appropriate where multiple lengthy state court proceedings might hinder reorganization).

Per *Parlamat*, four factors determine the timeliness of adjudication: (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate.

In this case, the issues deal with state law, which the State Court can address. The Chapter 11 Cases are post-confirmation and post-Effective Date. The Plan has been substantially consummated. *See Order Granting Motion to Dismiss Appeal*, Dist. Ct. Dkt. No. 47 (filed 02/08/21) in Case 4:20-cv-05414-HSG (*Paradise Unified School District, et al. v. Fire Victim Trust, et al.*) at 7:1-2 ("As [the district court] has already found, there is no question that the Debtors have substantially consummated the Plan."). There would be no delay in the administration or liquidation of the estate by litigation of the declaratory judgment in the state court since the Debtors have already reorganized. *Cf. Parmalat*, 639 F.3d at 581 n.9 (urgency important when Bankruptcy Court is "tasked with overseeing reorganization or liquidation.").

The declaratory judgment proceeding is ancillary to the Arbitration and will not prolong the administration of the Debtors' estates. Rather, the relief sought is necessary to facilitate the Trust's recovery on account of the Assigned D&O Claims if the Trust prevails on such causes of action before the state court.

Significantly, Judge Cheng has already demonstrated his intention to proceed on an expedited basis and consider fashioning interim relief, which he is well positioned to do based on his familiarity with the broader D&O Actions. Indeed, it should not be lost on the Court that PG&E's removal has actually delayed in the resolution of *this* matter in the State Court, which was ready and poised to act immediately on the relief requested by the Trustee in the Removed Action.

/ / /

/ / /

/ / /

19

## C. IN THE ALTERNATIVE, THIS COURT SHOULD EXERCISE ITS DISCRETION TO ABSTAIN UNDER 1334(C)(1) OR EQUITABLY REMAND UNDER SECTION 1452(B)

Where abstention is not mandatory, bankruptcy courts may still abstain in their discretion from deciding a proceeding removed to them or equitably remand under section 1452(b). Here, all leading factors militate in favor of such an abstention or remand. Discretionary abstention under section 1334(c)(1) is a flexible equitable standard, the underlying factors of which substantially overlap with the mandatory abstention factors. Section 1334(c)(1) provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. §§ 1334(c)(1); *see also* 28 U.S.C. § 1452(b) ("The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.").

Courts of the Ninth Circuit consider as many as fourteen equitable factors[9] in a balancing test: (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the Bankruptcy Court, (9) the burden of [the Bankruptcy Court's] docket, (10) the likelihood that the commencement of the proceeding in Bankruptcy Court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, (12) the presence in the proceeding of nondebtor parties, (13) comity, and (14) the possibility of prejudice to other parties in the action. *See In re Tucson Ests., Inc.*, 912 F.2d 1162, 1167 (9th Cir. 1990) (first

---

[9] "The factors to be considered for permissive abstention, under 28 U.S.C. § 1334(c)(1), are . . . similar to those to be considered for remand on equitable grounds, under 28 U.S.C. § 1452(b)." *Int'l Mfg. Grp.*, 574 B.R. at 723 n.7 (Bankr. E.D. Cal. 2017).

twelve factors in abstention); *In re Cedar Funding, Inc.*, 419 B.R. 807, 821 (B.A.P. 9th Cir. 2009) (all fourteen factors in 1452(b) context); *accord In re Cuzco Dev. U.S.A., LLC*, 592 B.R. 352, 363 (Bankr. D. Haw. 2018).

Lower courts' decisions on permissive abstention are reviewed for abuse of discretion, and a Bankruptcy Court may abuse its discretion by failing to abstain when virtually all of these factors favor abstention. *See Tucson*, 912 F.2d at 1167. Courts do not always spell out an analysis for each of these factors, but rather refer to them as they discuss the overall posture of the case. Even where only a handful of discretionary factors weigh heavily in favor of abstention or remand, they may infect the whole analysis and require abstention or remand. *See GACN*, 555 B.R. at 700.

Here, for the reasons discussed above, the discretionary factors cut in favor of remand or are not relevant to the Removed Action. State law predominates, the related D&O Actions are proceeding in the same state court, and no jurisdictional basis exists outside section 1334. Further, the Removed Action is so remote from the main bankruptcy case that a court would have to trace through ***four*** degrees of separation to reach the main bankruptcy case: the instant Removed Action, which relates to the Arbitration, which is in turn may impact recoveries to the Trust from its prosecution of the Assigned D&O Claims, the last of which were assigned to the Trust by the Plan.

The proceedings are in no sense "core." They do not have to be severed because the retained jurisdiction of this Court and the State Court's jurisdiction over the State Court Action are non-overlapping. The Removed Action unnecessarily adds another case to this Court's docket. Comity likewise suggests that the State Court should be allowed to say what the state law is, as it was prepared to do. Finally, PG&E has removed the State Court Action on the very day that the State Court was to proceed with the Trust's request for preliminary relief to secure a forum it likely apparently prefers, which smacks of forum-shopping. The remaining factors do not obviously weigh against remand, including, without limitation, that there is no longer an estate to be administered and non-debtor parties have access to either forum.

Finally, courts often combine mandatory, discretionary, and jurisdictional grounds in a matter like this. *See, e.g., In re Int'l Mfg. Grp., Inc.*, 574 B.R. 717 (Bankr. E.D. Cal. 2017) (rejecting "related to" jurisdiction and exercising discretion for equitable remand to the extent jurisdiction exists). This

21

1 Court is free to remand for lack of jurisdiction, remand equitably under 1452(b), *and* abstain both

2 because it must and because it is an equitable exercise of discretion.

3 **VI.   CONCLUSION**

4       WHEREFORE the Trustee respectfully requests entry of an order granting remand to the

5 State Court, abstention from deciding the State Court Action, and such other and further relief as the

6 Court may deem just and appropriate.

7

8 DATED:  March 29, 2021                    BROWN RUDNICK LLP

9

10                                                     By: _____

11                                                     JOEL S. MILIBAND (SBN 077438)
                                                       JMiliband@brownrudnick.com

12                                                     David J. Molton (SBN 262075)
                                                       DMolton@brownrudnick.com

13                                                     Eric R. Goodman (admitted *pro hac vice*)
                                                       EGoodman@brownrudnick.com

14                                                     Seven Times Square
                                                       New York, New York 10036

15                                                     Telephone: (212) 209-4800
                                                       Facsimile: (212) 209-4801

16

17                                                     *Counsel to the Fire Victim Trustee*

18

19

20

21

22

23

24

25

26

27

28

22

EXHIBIT "1"

Page 23

| | |
|---|---|
| 1 | **COTCHETT, PITRE & MCCARTHY LLP** |
| 2 | Frank M. Pitre (SBN 100077)<br>Mark C. Molumphy (SBN 168009) |
| 3 | Karin B. Swope *pro hac pending*<br>Nabilah A. Hossain (SBN 329689) |
| 4 | 840 Malcolm Road, Suite 200 |
| 5 | Burlingame, California 94010<br>Telephone:      (650) 697-6000 |
| 6 | Facsimile:      (650) 697-0577<br>E-mail:fpitre@cpmlegal.com |
| 7 |           mmolumphy@cpmlegal.com<br>           kswope@cpmlegal.com |
| 8 |           nhossain@cpmlegal.com |
| 9 | *Counsel for Plaintiff Justice John Trotter (Ret.),* |
| 10 | *Trustee of the PG&E Fire Victim Trust* |
| 11 | [Additional co-counsel listed on the signature page] |

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| **JUSTICE JOHN TROTTER (RET.), TRUSTEE OF THE PG&E FIRE VICTIM TRUST,**<br><br>                     Plaintiff,<br><br>          v.<br><br>**PG&E CORPORATION, PACIFIC GAS & ELECTRIC COMPANY, ASSOCIATED ELECTRIC & GAS INURANCE SERVIES LIMITED, ENERGY INSURANCE MUTUAL LIMITED, NORTH AMERICAN SPECIALITY INSURANCE COMPANY, GREAT LAKES REINSURANCE (UK) SE, ENDURANCE RISK SOLUTIONS ASSURANCE COMPANY, BERKLEY INSURANCE COMPANY, AMERICAN INTERNATIONAL REINSURANCE COMPANY, LTD., ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, LIBERTY INSURANCE UNDERWRITERS, INC.,** | Case No.<br><br>**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060** |

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

| | |
|---|---|
| 1 | **STARR INDEMNITY & LIABILITY** |
| | **COMPANY,** |
| 2 | **U.S. SPECIALTY INSURANCE** |
| | **COMPANY CONTINENTAL CASUALTY** |
| 3 | **COMPANY,** |
| | **BARBICAN MANAGING AGENCY** |
| 4 | **LIMITED,** |
| | **TWIN CITY FIRE INSURANCE** |
| 5 | **COMPANY,** |
| | **ARGONAUT INSURANCE COMPANY,** |
| 6 | **HOUSTON CASUALTY COMPANY, and** |
| | **DOES 1-20, inclusive,** |
| 7 | |
| 8 | |
| 9 | Defendants. |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA
CIVIL CODE SECTION 1060**

**TABLE OF CONTENTS**

Page

I.   PARTIES ...................................................................................................... 2

   A.  Plaintiff ............................................................................................ 2

   B.  Defendants ....................................................................................... 2

   C.  Other Defendants ............................................................................ 5

II.  JURISDICTION AND VENUE .................................................................. 5

III. FACTUAL BASIS FOR THE RELIEF SOUGHT ....................................... 6

   A.  The Trust was assigned certain rights pursuant to PG&E's Bankruptcy Reorganization Plan ...................................................... 6

   B.  PG&E and INSURER DEFENDANTS dispute the amount of coverage available under the D&O Liability Insurance policies ................................................................. 9

   C.  PG&E and the INSURER DEFENDANTS are in arbitration without PLAINTIFF ............................................................. 10

   D.  The controversy between the parties is ripe for declaratory relief .......................... 12

V.   CAUSE OF ACTION .............................................................................. 13

VI.  PRAYER FOR RELIEF ............................................................................ 15

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**

1

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF** Justice John Trotter (Ret.), the Trustee of the PG&E Fire Victim Trust ("Trust"), a California resident, brings this declaratory relief action seeking judicial declarations (1) that **PLAINTIFF** is an indispensable party to any current or future arbitrations and/or judicial proceedings between **DEFENDANTS** regarding insurance issues, including the amount of insurance available from **INSURER DEFENDANTS** for claims related to the extensive damages arising from the separate 2017 North Bay Fires and 2018 Camp Fire; (2) requiring **DEFENDANTS** to permit **PLAINTIFF** to participate in any arbitration, judicial proceedings and/or mediation that seeks to determine the nature, extent, or amount of available insurance coverage available from the **INSURER DEFENDANTS** (or any other limitations on coverage) for claims asserted against the former officers and directors arising from the separate 2017 North Bay Fires and 2018 Campfires; (3) enjoining **DEFENDANTS** from participating in the arbitration hearing presently set for April 30, 2021 unless **PLAINTIFF** is permitted to participate, and directing all **DEFENDANTS** to this Court to resolve ongoing and future disputes pertaining to insurance coverage, or in the alternative, a declaration permitting **PLAINTIFF** to participate in the arbitration hearing presently set for April 30, 2021; and (4) any further equitable and legal relief as the Court may deem proper.

## I. PARTIES

### A. Plaintiff

1.      **PLAINTIFF JUSTICE JOHN TROTTER (RET.)** is the **TRUSTEE OF THE PG&E FIRE VICTIM TRUST** and is a citizen and resident of California.  The PG&E Fire Victim Trust is a Delaware trust established by the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court").  **PLAINTIFF** was retained as Trustee of the PG&E Fire Victim Trust and was assigned certain claims and causes of action through PG&E's Chapter 11 plan of reorganization in bankruptcy.

### B. Defendants

2.      Defendant **PG&E CORPORATION** is a California corporation with corporate headquarters at 77 Beale Street, San Francisco, California.  **PG&E CORPORATION** provides

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**

2

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

power and energy services throughout the State of California and is the primary provider of power and energy to northern and central California.

3.     **PACIFIC GAS AND ELECTRIC COMPANY** is a California corporation with corporate headquarters at 77 Beale Street, San Francisco, California. **PACIFIC GAS AND ELECTRIC COMPANY** is the operating subsidiary of **PG&E CORPORATION** and is regulated by the California Public Utilities Commission. **PACIFIC GAS AND ELECTRIC COMPANY** provides power and energy services throughout the State of California and is the primary provider of power and energy in northern and central California.

4.     **PLAINTIFF** is informed and believes, and thereupon alleges, that **DEFENDANT ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED ("AEGIS")**, a corporation, is headquartered in East Rutherford, New Jersey, in Bergen County.

5.     **PLAINTIFF** is informed and believes, and thereupon alleges, that **DEFENDANT ENERGY INSURANCE MUTUAL LIMITED ("EIM")**, a corporation, is headquartered in Tampa, Florida, in Hillsboro County.

6.     **PLAINTIFF** is informed and believes, and thereupon alleges, that **DEFENDANT NORTH AMERICAN SPECIALTY INSURANCE COMPANY ("SWISS RE")**, a corporation, is headquartered in Kansas City, Missouri, in Jackson County. **SWISS RE** is an operating unit of Swiss Reinsurance Company Ltd.

7.     **PLAINTIFF** is informed and believes, and thereupon alleges, that **DEFENDANT GREAT LAKES REINSURANCE (UK) SE ("GREAT LAKES")**, a corporation, is headquartered in London, United Kingdom. **GREAT LAKES** is an operating unit of Munich Reinsurance Company.

8.     **PLAINTIFF** is informed and believes, and thereupon alleges, that **DEFENDANT ENDURANCE RISK SOLUTIONS ASSURANCE COMPANY ("ENDURANCE")**, a corporation, is headquartered in Purchase, New York, in Westchester County. **ENDURANCE** is an operating unit of Sompo International Holdings Ltd.

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**

3

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

9.      **PLAINTIFF** is informed and believes, and thereupon alleges, that **DEFENDANT BERKLEY INSURANCE COMPANY ("BERKLEY")**, a corporation, is headquartered in Greenwich, Connecticut, in Fairfield County.  **BERKLEY** is an operating unit of W.R. Berkley Corporation.

10.     **PLAINTIFF** is informed and believes, and thereupon alleges, that **DEFENDANT AMERICAN INTERNATIONAL REINSURANCE COMPANY, LTD. ("AIG BERMUDA")** a corporation, is headquartered in Pembroke, Bermuda.  **AIG BERMUDA** is a part of American International Group, Inc.

11.     **PLAINTIFF** is informed and believes, and thereupon alleges, that **DEFENDANT ALLIANZ GLOBAL RISKS US INSURANCE COMPANY ("ALLIANZ")**, a corporation, is headquartered in Chicago, Illinois, in Cook County.

12.     **PLAINTIFF** is informed and believes, and thereupon alleges, that **DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC. ("LIBERTY")**, a corporation, is headquartered in Boston, Massachusetts, in Suffolk County.  **LIBERTY** is registered to do business in California with several offices in Northern California, including San Ramon, Elk Grove, and Brentwood.

13.     **PLAINTIFF** is informed and believes, and thereupon alleges, that **DEFENDANT STARR INDEMNITY & LIABILITY COMPANY ("STARR")**, is headquartered in New York, New York.  **STARR** is a part of Starr Insurance Companies.  **STARR** is currently registered to do business in California, with a regional office in San Francisco, California.

14.     **PLAINTIFF** is informed and believes, and thereupon alleges, that **DEFENDANT U.S. SPECIALTY INSURANCE COMPANY ("USIC")**, a corporation, is headquartered in Houston Texas, in Harris County.  **USIC** is an operating unit of HCC Insurance Holdings.

15.     **PLAINTIFF** is informed and believes, and thereupon alleges, that **DEFENDANT CONTINENTAL CASUALTY COMPANY ("CNA")**, a corporation, is headquartered in Chicago, Illinois, in Cook County.  **CNA** has four offices in California, including an office in San Francisco.

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**

4

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

16.     **PLAINTIFF** is informed and believes, and thereupon alleges, that **DEFENDANT BARBICAN MANAGING AGENCY LIMITED ("BARBICAN")**, a corporation, is headquartered in London, United Kingdom.

17.     **PLAINTIFF** is informed and believes, and thereupon alleges, that **DEFENDANT TWIN CITY FIRE INSURANCE COMPANY ("HARTFORD")**, a corporation, is headquartered in Hartford, Connecticut, in Hartford County.

18.     **PLAINTIFF** is informed and believes, and thereupon alleges, that **DEFENDANT ARGONAUT INSURANCE COMPANY ("ARGO")**, a corporation, is headquartered in San Antonio, Texas, in Bexar County.  **ARGO** has two office locations in California, including an office in San Francisco.

19.     Plaintiff is informed and believes, and thereupon alleges, that **DEFENDANT HOUSTON CASUALTY COMPANY ("HCC")**, a corporation, is headquartered in Houston, Texas, in Harris County.  **HCC** is an operating unit of HCC Insurance.

C.     **Other Defendants**

20.     The true names and capacities, whether individual, corporate, associate or otherwise of the defendant **DOES 1–20**, inclusive, are unknown to **PLAINTIFF** who therefore sues said defendants by such fictitious names pursuant to Code of Civil Procedure section 474. **PLAINTIFF** further alleges that each of said fictitious defendants is in some manner responsible for the acts and occurrences herein set forth.  **PLAINTIFF** will amend this Complaint to show their true names and capacities when the same are ascertained, as well as the manner in which each fictitious defendant is responsible.

II.     **JURISDICTION AND VENUE**

21.     This court has jurisdiction over this action pursuant to California Code of Civil Procedure section 410.10.  The Court has personal jurisdiction over defendant **PG&E CORPORATION** and **PACIFIC GAS AND ELECTRIC COMPANY (**collectively "**PG&E**") because they are headquartered in California and because **PG&E's** actions injured and will injure **PLAINTIFF** in California.

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**

5

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

22.     This Court has jurisdiction over each of the insurers named in Paragraphs 4 through 19 above ("**INSURER DEFENDANTS**") because all of **INSURER DEFENDANTS** conduct business in California including, but not limited to, the conduct alleged in this Complaint, and have sufficient contacts with California to render the exercise of jurisdiction by this Court over them permissible under California Code of Civil Procedure section 410.10 as well as the United States and California Constitutions and traditional notions of fair play and substantial justice.

23.     Venue is proper in San Francisco County pursuant to California Code of Civil Procedure section 395 because a substantial part of the events or omissions giving rise to the claims alleged occurred in San Francisco, California, which is located within this jurisdiction. Because a significant amount of the harm, as well as important evidence, is located within this jurisdiction, this is the best venue for this action. Each **DEFENDANT** has sufficient contacts with this jurisdiction that venue in this jurisdiction is appropriate.

### III.     FACTUAL BASIS FOR THE RELIEF SOUGHT

#### A.     The Trust was assigned certain rights pursuant to PG&E's Bankruptcy Reorganization Plan

24.     On January 29, 2019, **PG&E** filed for Chapter 11 Bankruptcy in the Northern District of California under Case Number 19-BK-3008. On June 20, 2020, the Honorable Dennis Montali approved **PG&E's** Chapter 11 Reorganization Plan ("Reorganization Plan") to exit bankruptcy, which included the creation of the Fire Victim Trust ("Trust"). The Trust was established to serve as a vehicle to compensate over 70,000 victims who filed claims against **PG&E** for scores of deaths, personal injury, damage or destruction to property and emotional distress. As part of the Reorganization Plan, **PG&E** agreed to establish the Trust, which is a limited fund comprised of cash, stock, and an assignment of specific claims, to help fairly compensate the victims. The Trust is responsible for administering, processing, settling, resolving, liquidating, satisfying, and paying all outstanding fire victim claims, and prosecuting or settling all assigned rights and causes of action assigned to it through the Fire Victim Trust Agreement and PG&E's Reorganization Plan.

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**

6

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

25.     Amongst the assigned rights and causes of action assigned to the Trust as part of the Reorganization Plan was **PG&E**'s causes of action against its former directors and officers relating to the 2017 North Bay Fires and the 2018 Camp Fire.  In exchange for this assignment, **PLAINTIFF** agreed to only assert new litigation claims against **PG&E**'s former officers and directors and not against any current officers or directors.  **PLAINTIFF** also agreed that any recovery for these claims would be limited to the proceeds of Directors and Officers Liability Insurance policies discussed below and that **PLAINTIFF** would not pursue the personal assets of former officers and directors.

26.     Therefore, the right to sue **PG&E**'s former directors and officers for their various managerial decisions or conduct that led to the separate 2017 North Bay Fires and the 2018 Camp Fire, belongs to the **PLAINTIFF**, as Trustee, to pursue on behalf of the Trust.

27.     Each Directors and Officers Liability Insurance Policy ("D&O Liability Insurance") purchased by **PG&E** provides coverage designated as Side A, Side B or Side C.  Side A typically insures the directors and officers against non-indemnified or non-indemnifiable losses.  Side B coverage typically covers the insured for the costs incurred in indemnifying its directors and officers for defense costs and liability for actions brought against them, including securities, derivative, and other actions for alleged Wrongful Acts, including claims alleging breach of duty, neglect, error, misstatement, misleading statement or omission as they might be covered under the policies.  Side C coverage typically insures **PG&E** for Securities Claims, as defined by the particular policies of insurance.

28.     Under the Reorganization Plan, the asset specified to satisfy the Trust's assigned claims is the "Side B" coverage available under two D&O Liability Insurance policies that **PG&E** purchased from the **INSURER DEFENDANTS** to cover alleged wrongful acts in 2017 and 2018.  Side B coverage refers to the amount, under the operative policies, that the **INSURER DEFENDANTS** are obligated to pay to **PG&E** to reimburse it for the defense costs and liability amounts incurred indemnifying its past or present directors and officers in connection with a lawsuit or other claims asserted against **PG&E** directors and officers.  It is clear that, under the Reorganization Plan, the proceeds of "Side B" coverage under the 2017 and 2018 D&O Liability

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**

7

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Insurance policies are intended to benefit the victims of the 2017 North Bay Fires and 2018 Camp Fire. Accordingly, **PLAINTIFF** has a right to step into **PG&E**'s shoes with regards to pursuing any dispute to receive the proceeds from any Side B coverage from the **INSURER DEFENDANTS** that will satisfy the Trust's claims against the former officers and directors relating to the separate 2017 North Bay Fires and the 2018 Camp Fire.

29. Due to the assignment of the underlying claims and causes of action, the Trust is a third-party claimant, who under contract principles may sue as a third-party beneficiary. A claimant may sue the insurer directly as a third-party beneficiary utilizing traditional contract principles. Under California law, third-party beneficiaries of contracts have the right to enforce the terms of the contract under Civil Code section 1559 which provides: "A contract made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Traditional third-party beneficiary principles do not require that the person to be benefited be named in the contract. **PG&E** intended to benefit the Trust with respect to the proceeds of the D&O Liability Insurance policies because a critical piece of the Reorganization Plan (and the settlements that allowed **PG&E** to exit bankruptcy) was the assignment of claims to the Trust that could only be satisfied out of the D&O Liability Insurance policies. Thus, **PLAINTIFF** has a right to be heard with respect to the pending arbitration.

30. Accordingly, **PLAINTIFF** has a right to step into **PG&E**'s shoes with regards to pursuing any dispute to receive the proceeds from any Side B coverage from **INSURER DEFENDANTS** that will satisfy the Trust's assigned claims against the former officers and directors relating to the relating to the separate 2017 North Bay Fires and the 2018 Camp Fire. Although **PLAINTIFF** is not a named party to any insurance contract or policy between **DEFENDANTS** and **INSURER DEFENDANTS**, **PLAINTIFF** is third-party claimant who may sue the insurer directly as a third-party beneficiary of relevant Side B insurance policies because the Reorganization Plan expressly provides that certain claims assigned to the Trust may only be satisfied from Side B insurance policies.

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**

8

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

31.     Based upon the assignments of these rights and claims under the Reorganization Plan in 2020, **PLAINTIFF** was required to intervene as the new plaintiff in several shareholder derivative actions that had been filed as far back as 2017 and were stayed due to **PG&E**'s bankruptcy. A stipulation and order substituting the Fire Victim Trust as the Plaintiff in these cases, under Superior Court Case No. CGC-18-572326, was granted by this Court on November 5, 2020.

32.     On February 24, 2021, **PLAINTIFF** filed an Amended Complaint under the same Superior Court Case number, against former officers and directors of **PG&E** for breaches of fiduciary duty related to the 2017 North Bay Fires and for separate breaches of fiduciary duty related to the 2018 Camp Fire. This Amended Complaint, filed less than a month ago, is the first complaint filed by **PLANTIFF** and contains allegations germane to Side B coverage issues. Any judgement issued in these actions will be satisfied by the Side B coverage provided by the 2017 and the 2018 D&O Liability Insurance policies issued to **PG&E** by the **INSURER DEFENDANTS**.

 **B.  <u>PG&E and INSURER DEFENDANTS dispute the amount of coverage available under the D&O Liability Insurance policies</u>**

33.     **PLAINTIFF** alleges, upon information and belief, that in 2017, **PG&E** purchased a tower of "claims made" D&O Liability Insurance policies from certain **INSURER DEFENDANTS** to protect **PG&E** and its directors and officers against claims arising from catastrophic events. This 2017 tower provides coverage for claims arising between May 20, 2017 to May 20, 2018. In 2018, **PG&E** purchased another tower of insurance from **INSURER DEFENDANTS,** and the 2018 tower provides coverage for claims arising between May 20, 2018 to May 20, 2019.

34.     The rights and obligations of **PG&E** and the **INSURER DEFENDANTS** under the policies are reflected in written contracts and policies. As referenced above, under the Reorganization Plan, the Side B coverage under these policies is the asset assigned to satisfy **PLAINTIFF**'s assigned claims and **PLAINTIFF** is a third-party beneficiary of the Side B policy provisions.

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**

9

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

35.     On information and belief, there is a dispute between **PG&E** and the **INSURER DEFENDANTS** concerning the amount of Side B coverage available under the policies to cover the **PLAINTIFF**'s claims and other suits arising from of the 2017 North Bay Fires and the 2018 Camp Fire, which were two separate catastrophic events arising from completely separate causes and harming unique victims. On information and belief, the **INSURER DEFENDANTS** will or may take the position that only the 2017 tower of insurance applies and therefore the amount of Side B coverage is limited to $200,000,000. On information and belief, **PG&E** will or may contest the **INSURER DEFENDANTS**' position and instead will or may take the position that both the 2017 and 2018 towers of insurance are applicable and the amount of Side B coverage available is $400,000,000, if not more.

### C. PG&E and the INSURER DEFENDANTS are in arbitration without PLAINTIFF

36.     **PLAINTIFF** alleges that after the claims were assigned to **PLAINTFF** under the Reorganization Plan, **PG&E**, without the advice, consent, or participation of **PLAINTIFF**, commenced arbitration with the **INSURER DEFENDANTS** to resolve a dispute regarding the amount of Side B coverage available for claims arising out of the separate 2017 North Bay Fires and the 2018 Camp Fire. An arbitration hearing, to which **PLANITFF** is not a party, is currently scheduled for April 30, 2021.

37.     The arbitration began at least six months before **PLAINTIFF** filed his Amended Complaint. Instead of waiting for **PLAINTIFF** to file his operative complaint, **DEFENDANTS** rushed to convene a private arbitration in which they could attempt to resolve coverage disputes based on pleadings that are at least four years old, several before the Camp Fire even occurred, and filed by shareholders and not the Trust, and which no longer apply given the Amended Complaint now filed by the Trust. The allegations in the Amended Complaint are the most important factor affecting the resolution of the arbitration dispute.

38.     Upon learning of the arbitration, counsel for **PLAINTIFF** requested an opportunity to participate in the arbitration on several occasions. The arbitration will determine the value of an asset that is the sole source of recovery for claims that belong to the Trust and the Trust's interests

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**

10

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

are not currently represented at the arbitration. The **INSURER DEFENDANTS** have an obvious conflict of interest with the Trust, since the carriers will likely seek to minimize their exposure and assert that only the 2017 tower of insurance is applicable. Moreover, **PG&E** is conflicted and cannot adequately represent **PLAINTIFF**'s interests since **PLAINTIFF**'s claims in the underlying litigation are against **PG&E**'s former officers and directors. **PG&E** also has a continuing business relationship with the **INSURED DEFENDANTS,** and therefore its interest in this dispute does not fully align with that of the Trust. Most importantly, none of the parties in the arbitration have the familiarity or expertise with **PLAINTIFF**'s claims that **PLAINTIFF** does, and therefore cannot adequately advocate for a position that both towers of insurance are implicated.

39.     Specifically, on February 17, 2021, counsel for **PLAINTIFF** requested that **PG&E** consent to **PLANTIFF**'s intervention of the arbitration based upon **PLAINITFF**'s contention that the Trust was an indispensable party to the arbitration because Side B coverage is an asset that belongs to the Trust for the satisfaction of the Claims that were assigned to the Trust during the Reorganization Plan. *See* Exhibit A. **PG&E** rejected **PLAINTIFF**'s request to consent to intervene.

40.     On February 22, 2021, counsel for **PLAINTIFF** requested that **PG&E** provide **PLANTIFF** with information regarding the terms of the arbitration agreement, the identity of the arbitrators, the address of the venue for the arbitration, and/or contact information for a case manager so that **PLAINTIFF** could take independent action to request to intervene on behalf of the Trust. Again**, PG&E** refused to provide **PLAINTIFF** with this information claiming that it was confidential. However, **PG&E** agreed to inform the Arbitration Panel of **PLAINTFF**'s request on **PLAINTIFF**'s behalf. **PLAINTIFF** prepared a letter requesting this information understanding that it would be provided to the Arbitration Panel by **PG&E.** *See* Exhibit B.

41.     On March 8, 2021, counsel for **PLAINTIFF** was informed by counsel for **PG&E** that the Arbitration Panel purportedly denied **PLAINTIFF'S** request to intervene in the arbitration.

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**

11

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

42.     On March 10, 2021, counsel for **PLAINTIFF** requested that **PG&E** provide all materials submitted in support or opposition of the Trust's request to intervene as well as any written ruling explaining the basis for denial of **PLAINTIFF**'s request to intervene. *See* Exhibit C.

43.     To date, **PLAINTIFF** has not received any materials submitted in support or opposition to the Trust's request to intervene, nor any written ruling or other documentation articulating the Arbitration Panel's purported basis for denying **PLANTIFF**'s request to participate in the arbitration.

44.     On information and belief, the arbitration hearing is scheduled on April 30, 2021 without **PLAINTIFF**'s participation. If the arbitration proceeds as presently scheduled without **PLAINTIFF**'s participation, there is a significant potential for prejudice to the asset assigned to the Trust for satisfaction of its claims, which will be to the great detriment of the 70,000 victims of the two fires who must look to the Side B proceeds to satisfy their claims under the Reorganization Plan ordered by the Bankruptcy Court.

**D.   The controversy between the parties is ripe for declaratory relief**

45.     **DEFENDANTS** have commenced an arbitration concerning D&O Liability Insurance policies that are the sole source of recovery and satisfaction for certain causes of action that were assigned to the Trust by **DEFENDANTS**.

46.     Under **PG&E**'s Reorganization Plan, **PLAINTIFF** has an assigned, cognizable right in the value of the asset that is the subject of the arbitration between the **DEFENDANTS**.

47.     **PLAINTIFF** has exhausted all legal avenues to intervene and participate in the arbitration between the **DEFENDANTS**. The dispute amongst the parties as to whether and how **PLAINTIFF** may intervene and participate in the arbitration is sufficiently certain and concrete to warrant declaratory relief by this Court.

48.     **PLAINTIFF** has no other alternative remedy to safeguard the value of the asset assigned to satisfy its claims as a condition of **PG&E**'s Reorganization Plan as the source of the fire victims' recovery.

---

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**

12

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

49.     The **INSURER DEFENDANTS** have obvious conflicts of interests with the Trust, since the carriers seek a ruling that only one tower of insurance is applicable.  **PG&E** is also conflicted since **PLAINTIFF**'s claims in the relevant litigation are against **PG&E's** former officers and directors.  There is also a competing interest between **PLAINTIFF** and **PG&E** shareholders who seek financial returns but have not been victims of the 2017 North Bay Fires and the 2018 Camp Fire.  Most importantly, none of the parties in the arbitration have **PLAINTIFF**'s familiarity and expertise with **PLAINTIFF**'s claims, and the basis for those claims, to adequately advocate for the fact that both towers of insurance are implicated.

50.     **PLAINTIFF** will suffer imminent and significant hardship without a judicial decree from this Court.  The value of the asset which funds the recovery to the victims of the separate 2017 North Bay Fires and 2018 Camp Fire, may be substantially undermined without an opportunity for **PLAINTIFF** to explain the nature of the wrongs giving rise to claims against the D&O Liability Insurance policies, and to take steps to protect all of the assets assigned to satisfy the Trustee's assigned claims by the Bankruptcy Court.

## V.     CAUSE OF ACTION

### DECLARATORY RELIEF

**(Against ALL DEFENDANTS and DOES 1–20)**

52.     **PLAINTIFF** hereby re-alleges and incorporates by reference each allegation set forth above, as if fully set forth in detail herein.

53.     Pursuant to the Reorganization Plan and its assignment to the Trust of the right to prosecute the claims, the Trust is a third-party beneficiary of the Side B coverage under the 2017 and 2018 D&O Liability Insurance towers.

54.     **PLAINTIFF** alleges, upon information and belief, that **PG&E** and **INSURER DEFENDANTS** dispute some or all of **PLAINTIFF'S** contentions as set forth above and as enumerated in this Complaint.  **PG&E** misunderstands the factual basis for **PLAINTIFF**'s claims against **PG&E**'s former directors and officers and cannot adequately represent

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**                                              13

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFF**'s interests in addressing the amount and extent of Side B coverage under the 2017 and 2018 D&O Liability Insurance policies.

55.     There are also competing interests in those funds between **PLAINTIFF** and **PG&E** shareholders who seek financial returns but have not lost their homes, property, and livelihoods like the victims of the separate 2017 North Bay Fires and 2018 Camp Fire.

56.     The positions taken by **PG&E** and the **INSURER DEFENDANTS** in the arbitration will directly impact the **PLAINTIFF**'s rights under the policies that, by the Reorganization Plan, are the sole source of recovery for causes of action assigned to the Trust.

57.     The arguments and issues addressed in arbitration, and the potential rulings that can be issued by the Arbitration Panel, are therefore an essential part of the Reorganization Plan, and to the extent that there is any dispute regarding the full availability of both towers of insurance coverage, **PLAINTIFF** is entitled to a seat at the table to address the full extent of coverage.

58.     Without judicial intervention by this Court, the foundational premise of the Reorganization Plan, including the right to seek recovery under the Side B coverage under the D&O Liability Insurance towers, a right which fire victims relied upon in agreeing to the Reorganization Plan, will be jeopardized.

59.     A dispute is present, and an actual controversy exists between **PLAINTIFF** and **DEFENDANTS** as to whether **PLAINTIFF** has a right to participate in the arbitration between **PG&E** and **INSURER DEFENDANTS**.

60.     **PLAINTIFF** will suffer irreparable harm unless it is recognized as a third-party beneficiary and indispensable party to any current or future proceedings addressing the nature, extent, and availability of Side B insurance coverage and other coverage issues, including but not limited to the arbitration hearing currently set to take place on April 30, 2021 without **PLAINTIFF'S** participation.  Being deprived of the rights to address and protect the insurance coverage that is a critically important source of recovery under the Reorganization Plan would constitute irreparable harm to **PLAINTIFF**.

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**

14

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

61.     Unless enjoined, **PG&E** and the **INSURER DEFENDANTS** issuing the D&O Liability Insurance towers could enter into agreements that would limit or foreclose the **PLAINTIFF**'s ability to proceed against the Side B coverage that was designated by the Bankruptcy Court as its source for recovery for the tens of thousands of victims' claims.

62.     **PLAINTIFF** therefore seeks a judicial declaration that **PLAINTIFF** is an indispensable party to current or future proceedings addressing the of Side B insurance coverage issues, and that **PLAINTIFF** is therefore an indispensable party to any action seeking to construe, interpret, or regulate the insurance coverage that might be available to the various claims that have been asserted for the benefit of the multiple sets of claimants represented by the Trust.

63.     **PLAINTIFF** also seeks a judicial declaration that enjoins **DEFENDANTS** from participating in the arbitration prior to the April 30, 2021 unless **PLAINTIFF** is permitted to participate, and that directs all **DEFENDANTS** to this Court to resolve ongoing and future issues pertaining to insurance coverage.  In the alternative, at a bare minimum, **PLAINTIFF** seeks and hereby requests a judicial declaration that **PLAINTIFF** be permitted to participate in the arbitration hearing presently set for April 30, 2021 or any future arbitration proceedings regarding disputes over insurance coverage under the 2017 and 2018 towers of insurance.

64.     Wherefore, **PLAINTIFF** prays for relief as hereinafter set forth.

## VI.     PRAYER FOR RELIEF

WHEREFORE, **PLAINTIFF** prays that this Court enter declarations in his favor as follows:

65.     A declaration that that **PLAINTIFF** is an indispensable party to any current or future arbitrations and/or judicial proceedings between **PG&E AND INSURER DEFENDANTS** regarding insurance issues, including the amount of insurance available from **INSURER DEFENDANTS** for claims related to the extensive damages arising from the 2017 North Bay Fires and 2018 Camp Fire.

66.     A declaration that **DEFENDANTS** permit **PLAINTIFF** to participate in any arbitration and/or judicial proceedings that seek to determine the nature, extent or amount of

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**

15

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

available insurance coverage available from the **INSURER DEFENDANTS** (or any other

limitations on coverage) for claims asserted against the former officers and directors arising from

the separate 2017 North Bay Fires and 2018 Camp Fire.

67.     A declaration that enjoins **DEFENDANTS** from participating in the arbitration

hearing presently set for April 30, 2021 and directs all **DEFENDANTS** to this Court to resolve

ongoing and future issues pertaining to insurance coverage, or in the alternative, a declaration

permitting **PLAINTIFF** to participate in the arbitration hearing presently scheduled on April 30,

2021 or any later date that might be selected.

68.     For such other and further equitable and legal relief as the Court may deem proper.

Dated:  March 17, 2021

**COTCHETT, PITRE & MCCARTHY, LLP**
Frank M. Pitre (SBN 100077)
Mark C. Molumphy (SBN 168009)
Karin B. Swope *Pro Hac Pending*
Nabilah A. Hossain (SBN 329689)

Frank M. Pitre
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
Email:   fpitre@cpmlegal.com
          mmolumphy@cpmlegal.com
          kswope@cpmlegal.com
          nhossain@cpmlegal.com

**BOTTINI & BOTTINI, INC**.
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Yury A. Kolesnikov (SBN 271173)
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002
E-mail:   fbottini@bottinilaw.com
          achang@bottinilaw.com
          ykolesnikov@bottinilaw.com

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA**          16
**CIVIL CODE SECTION 1060**

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

| | |
|---|---|
| 1 | **WALKUP, MELODIA, KELLY &** |
| | **SCHOENBERGER** |
| 2 | Michael A. Kelly (SBN 71460) |
| | Khaldoun A. Baghdadi (SBN 190111) |
| 3 | 650 California Street |
| 4 | San Francisco, CA 94108 |
| | Telephone: (415) 889-2919 |
| 5 | Facsimile: (415) 391-6965 |
| | E-mail:  mkelly@WalkupLawOffice.com |
| 6 |              kbaghdadi@WalkupLawOffice.com |
| 7 | **DREYER, BABICH, BUCCOLA, WOOD,** |
| | **CAMPORA LLP** |
| 8 | Steven M. Campora (SBN 110909) |
| 9 | 20 Bicentennial Circle |
| | Sacramento, CA 95826 |
| 10 | Telephone: (916) 379-3500 |
| | Facsimile: (916) 379-3599 |
| 11 | E-mail:  scampora@dbbwc.com |
| 12 | |
| | **COREY, LUZAICH, DE GHETALDI &** |
| 13 | **RIDDLE LLP** |
| | Dario de Ghetaldi (SBN 126782) |
| 14 | Amanda L. Riddle (SBN 215221) |
| 15 | 700 El Camino Real |
| | Millbrae, CA 94030 |
| 16 | Telephone: (650) 871-5666 |
| | Facsimile: (650) 871-4144 |
| 17 | E-mail:  deg@coreylaw.com |
| | alr@coreylaw.com |
| 18 | |
| 19 | *Attorneys for Plaintiff Justice John Trotter* |
| | *(Ret.), Trustee of the PG&E Fire Victim Trust* |
| 20 | |

**COMPLAINT FOR DECLATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1060**

17

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

# EXHIBIT A

LAW OFFICES

COTCHETT, PITRE & McCARTHY, LLP

LOS ANGELES

SAN FRANCISCO AIRPORT OFFICE CENTER
840 MALCOLM ROAD
BURLINGAME, CALIFORNIA 94010
TELEPHONE (650) 697-6000
FAX (650) 697-0577
www.cpmlegal.com

NEW YORK

February 17, 2021

***VIA U.S. MAIL AND E-MAIL***
James Brandt
LATHAM WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
james.brandt@lw.com

  Re: ***PG&E vs. Associated Electric & Gas Insurance Services Ltd., et al.***

Dear Jimmy:

  Last week you informed me that PG&E had commenced an arbitration with its insurers over the extent of D&O coverage available for certain claims arising out of the 2017 and 2018 Northern California Wildfires. As we discussed, although I was aware that PG&E's "Tower of Insurance" was contesting whether the extent of available coverage was $200 million or $400 million, I was not informed until last week that PG&E **had actually commenced an arbitration proceeding** to address this issue and that a hearing date of April 30th was set.

  I informed you on Monday, February 15th that the Fire Victims Trust ("FVT") intended to intervene in that action, because in my opinion the FVT is an indispensable party that has a specific interest in Side B coverage under the D&O policy an asset that belongs to the FVT for satisfaction of the claim PG&E assigned to the Trust as a condition of exiting Bankruptcy.

  I explained to you that **this is a significant asset**, and the FVT has no alternative remedy to safeguard the value of this asset without participation in the pending arbitration.

Our informal discussions have unfortunately failed to lead to a resolution of our intent to intervene. Accordingly, I now write formally to request PG&E's consent to our intervention as a participant in the upcoming arbitration proceeding. Additionally, I request copies of the following:

1.  All documents, pleadings or other materials submitted to the arbitrators.

2.  A service list of all parties and counsel participating in the arbitration.

3.  The contact information for the arbitrators and venue of the arbitration.

4.  Any reservation of rights letter sent to PG&E regarding the D&O policies at issue in the arbitration.

Given the time constraints, I would appreciate a response, on or before close of business Friday, February 19th.

Please treat this letter and our prior communications the past week as my effort to meet and confer and avoid unnecessary court intervention.

Sincerely,

FRANK M. PITRE

cc:     Justice Trotter, Trustee FVT
        Pat Kelly
        Michael A. Kelly
        Steven M. Campora
        Dario de Ghetaldi
        Amanda L. Riddle
        Francis A. Bottini
        Mark C. Molumphy
        Kevin J. Orsini

# EXHIBIT B

LAW OFFICES

COTCHETT, PITRE & McCARTHY, LLP

LOS ANGELES        SAN FRANCISCO AIRPORT OFFICE CENTER        NEW YORK
840 MALCOLM ROAD
BURLINGAME, CALIFORNIA 94010
TELEPHONE (650) 697-6000
FAX (650) 697-0577
www.cpmlegal.com

February 22, 2021

***VIA U.S. MAIL AND E-MAIL***
James Brandt
LATHAM WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
james.brandt@lw.com

     Re:     ***PG&E vs. Associated Electric & Gas Insurance Services Ltd., et al.***

Dear Mr. Brandt:

### Introduction

I am co-counsel for the Trustee of the Fire Victims Trust ("FVT") which was established to compensate over 70,000 victims who have filed claims against PG&E for scores of deaths, personal injury, damage or destruction to property and emotional distress. As you are no doubt aware, PG&E's bankruptcy revealed the possibility that there were inadequate financial resources to compensate all victims at full value. Accordingly, PG&E agreed to establish a limited fund comprised of cash, stock and an assignment of specific claims, in order to help fairly compensate victims.

### Side B Coverage

Among the assets included to fund the Fire Victims Trust was the assignment of PG&E's claims against its former officers and directors who abdicated their fiduciary duties to PG&E by failing to adopt robust policies and procedures for vegetation management or provide oversight of PG&E's aging transmission tower infrastructure. The asset specifically identified for

satisfaction of these claims was Side B of the applicable D&O insurance coverage. Accordingly, the extent of insurance coverage available under the towers of insurance currently serves as a limit to the value of the assigned claims. Ironically, this limit does not apply to claims of shareholders against Directors and Officers.

### The Arbitration

Last week, for the first time, the undersigned became aware that an arbitration had been commenced that may determine the amount of available coverage for PG&E's claims assigned to the FVT, and that a hearing date had already been set. On Monday, February 15th, I contacted you to obtain information about the arbitration proceeding in order that the FVT could intervene, as it was my opinion that the FVT was an indispensable party to the proceeding and had no alternative remedy to safeguard the value of the asset assigned to it as a condition to PG&E exiting bankruptcy.

In this regard, I requested that PG&E, as part of its duty of cooperation in connection with the assignment of its claims, provide the FVT with the following:

1. The contact information for the arbitrators or arbitration case manager and venue of the arbitration;

2. A service list of all parties and counsel participating in the arbitration;

3. All documents, pleadings or other material submitted to the arbitrators in connection with the hearing;

4. Permission to intervene without the necessity of seeking assistance through the Court.

### Request

You have advised me that you are constrained by the terms of the arbitration agreement and/or applicable insurance contracts, and cannot provide me with this information because it is "Confidential." Since it is your position that you cannot provide the identity of the arbitrators, the address of the venue for the arbitration, or a case manager who can be reached to inform them of the request by the Trustee of the FVT to intervene, **I am writing this letter to you in a desperate effort to obtain your cooperation in alerting the arbitrators and other parties of this request**.

### Summary

Time is of the essence. The value of these claims as constrained by the extent of coverage available under the towers of insurance for 2017 and 2018 is significant to the interests of fire victims. Denial of the right to intervene would be yet another blow to the FVT's ability to fairly compensate victims.

The Trustee of the FVT has now taken over in all pending shareholder derivative lawsuits previously filed in State and Federal Court. An Amended Complaint will be filed on behalf of the Trustee of the FVT next week. Based on my review, the shareholder derivative complaints show a complete misunderstanding of the factual basis for PG&E's claims against its former Officers and Directors. I do not say this cavalierly. I say this because the lawyers retained by the Trustee have over a decade of history with the distinct failures of PG&E's Officers and Directors, and served as lead counsel in the underling litigation concerning the 2017 North Bay Fires as well as lead counsel in litigation concerning the 2018 Camp Fire.

Please confirm that this request will be conveyed to the appropriate representatives and parties involved in the arbitration. If I do not receive confirmation and a response to this request

by 5pm pt on Tuesday, February 23rd, you leave us no alternative but to seek appropriate relief

through the Court.

Very truly yours,

FRANK M. PITRE

cc:     Justice Trotter, Trustee FVT
        Pat Kelly
        Michael A. Kelly
        Steven M. Campora
        Dario de Ghetaldi
        Amanda L. Riddle
        Francis A. Bottini
        Mark C. Molumphy
        Kevin J. Orsini

# EXHIBIT C

LAW OFFICES

COTCHETT, PITRE & McCARTHY, LLP

LOS ANGELES

SAN FRANCISCO AIRPORT OFFICE CENTER
840 MALCOLM ROAD
BURLINGAME, CALIFORNIA 94010
TELEPHONE (650) 697-6000
FAX (650) 697-0577
www.cpmlegal.com

NEW YORK

March 10, 2021

***VIA U.S. MAIL AND E-MAIL***
James Brandt
LATHAM WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
james.brandt@lw.com

Re:     *Justice John Trotter (Ret.) Trustee of the Fire Victims Trust vs. Chew, et al.*

Dear Mr. Brandt:

On Monday, March 8th, the Fire Victims Trust (hereafter "FVT or Trust") learned that the Arbitration Panel denied its request to intervene in the current arbitration dispute between PG&E and its insurers. The dispute affects the amount of Side B insurance coverage available for the claims that PGE specifically assigned to the Trust against its former Directors and Officers to help pay the claims of fire victims.

Since the Trust was precluded from receiving any materials submitted in opposition to their request and denied the right to participate or attend the hearing conducted by the Arbitration Panel, the Trust is left in the dark over the basis of the denial. It is our understanding that the Arbitration Panel had issued a written ruling. However, as of the date of this letter, no such ruling has been provided to the Trust to validate that its request was given due consideration. Moreover, the Trust was denied any guidance as to the rules, law or procedures that the Arbitration Panel would use to make its decision – because "the proceedings and process was confidential". As a "concession," the Trust was informed that the Arbitration Panel would

consider its request **only if a letter was submitted to you**, and that you would in turn provide it to the Panel and the Insurers. Clearly, this is not due process.

I write now to demand that all material submitted in support or opposition to the Trust's request to intervene, together with any ruling explaining the basis for denial of the Trust's request, be provided to the undersigned on behalf of the FVT, **by no later than 12:00 noon Pacific time on Friday, March 12.**

Very truly yours,

FRANK M. PITRE

cc:    Michael Kelly
Steve Campora
Frank Bottini
Dario De Ghetaldi
Amanda Riddle
Mark C. Molumphy
Pat Kelly
David Molton
Kevin Orsini