Theresa Ann McDonald
5044 Russell Drive
Paradise, CA 95969
Phone Number: 530-636-3148
Tmcdonald120@yahoo.com

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT
## (SAN FRANCISCO DIVISION)

In re:

PG&E CORPORATION          Bankruptcy Case

                              No. 19-30088-DM

   -and-                        Chapter 11

                              (Lead Case)

PG&E GAS AND ELECTRIC COMPANY     (Jointly Administered) Case

    Debtors                    No. 19-30089-DM

    vs.

Theresa Ann McDonald          Proof of Claim No. 54975

    Creditor                 Filed October 21, 2019

                              Camp Fire

                              Judge: Honorable Dennis Montali

                              Emergency Pleading: Objection to the Joint Motion of Fire Victim Trustee and Reorganized Debtors Regarding Exchange Transaction in Support of a Grantor Trust Tax Election (Dkt. 10497)

                              Relief Requested: Require Additional Information About the Potential Costs to the Fire Victim Trust Related to the

Share for Share Exchange and Any Other Trust Costs; the Result of the Fairness Determination Under § 25142 of California Corporations Code; and Any Additional Relevant Information be Made Public At Least 14 Days Prior to the Objection Deadline to Allow Fire Victims the Chance to Make Informed Objections.

Date: April 28, 2021
Time: 10:00 a.m.
Place: (Telephonic or Video Only)
Courtroom 17, 16th Fl.
450 Golden Gate Ave.
San Francisco, CA 94102

The Background section of the Joint Motion provides a lengthy discussion of how the proposed Exchange Transactions would provide tax benefits to the Fire Victim Trust in the event the stock can be sold at a price higher than the approximately $9.00/share market price when the stock was transferred to the Trust. It offers no explanation regarding whether the law requires a share for share transfer, or that is simply the offer currently being made by PG&E. Would the law allow for the exchange to be made in a manner that would give the Trust more than 1 for 1 rate? An exchange where the Trust would receive 1 1/2 shares of 'New' stock for each share of 'Old' stock returned to PG&E would reimburse the Trust for a small portion of the more than $2.4 billion loss it suffered when the stock was initially transferred, while still allowing PG&E a greater tax deduction. Would such an arrangement

be legal?

Fire Victims, at least those represented by attorneys, cannot get the answers to questions such as these because Trust personnel have consistently refused to answer any inquiries from represented beneficiaries, insisting that the attorney be involved. That simply drives up the legal fees that will be charged to the Fire Victim, and generally results in not getting the desired information because follow-up questions cannot be asked.

Fire Victims have the right to be informed about decisions that will have a significant impact on the value of the Trust that is supposed to be for their benefit. The Joint Motion provides a lot of information about the possible tax savings the Trust might experience, but the only potential costs the Joint Motion reveals are those related failure to honor the Exchange Transaction Agreement.

Would entering into an Exchange Transaction Agreement cause the Trust to experience costs that it would otherwise not incur?

The Fire Victim Trust-Grantor Trust Election and Share Exchange Term Sheet begins on page 25 of Docket #10497. The last section on page 25, Separate Accounts for the Trust, reveals that the Trust will be required to maintain at least two separate brokerage accounts if the agreement is signed. Is there a cost associated with the maintenance of that second brokerage account? If so, how much will it cost over the entire period of time the Trust anticipates holding the stock?

The Exchange Transaction agreement would require the Trust to first transfer 'Old' shares to PG&E, accept 'New' shares from PG&E, and then proceed with the sale of the 'New' shares in a normal transaction, but one that must occur on a very tight timeline, thus limiting the Trust's ability to take advantage of a possibly rising market price. Would there be **any** cost to the Trust for the first two steps of any stock sale - the exchange of 'Old' shares

for 'New' shares?  I include internal administrative costs such as staff time preparing the transfer and receipt of PG&E shares, accounting agency time recording the transactions, etc. when I ask for an estimate of **any** costs.

The State Agency Settlement Agreement, Docket #7399-2, calls for the Cal Agency Fire Claims to be paid solely out of the excess monetization from the sale of the PG&E stock the Trust received.  What, if any, impact would the Exchange Transaction Agreement have on the admittedly slight possibility that the State agencies will actually receive a penny of their $89 million settlement?

The State Agency Settlement Agreement also calls for taxes on the gains of the sale of stock to be deducted prior to paying the excess to the State Agencies, but at the moment there is nothing in that agreement that would allow for the deduction of expenses related to the proposed Exchange Transaction Agreement to be deducted before the State Agencies are paid.  Is there an ongoing negotiation with the State to add such a deduction to the State Agency Settlement Agreement?  If not, is that because the Trustee does not anticipate that the stock will be able to be held long enough to reach a price where the State Agencies might actually be paid?

These are just a few of the questions Fire Victims are entitled to ask and have answered before they are required to decide whether or not they want to object to the proposed Joint Motion.  On page 17 of 32 of Docket #10497 the joint motion reads:  "The Movants understand the importance of transparency on matters of significant importance to the Fire Victims, including a transaction that impacts the PG&E Stock held by the Trust."  Transparency is all I am asking for.  Seeking the approval of the bankruptcy court to enter into yet another undisclosed agreement is not being transparent.  Publicizing all of the information for and against the Exchange Transaction Agreement so that Fire Victims may

make an informed decision is the minimum amount Fire Victims should be able to expect.

The Plan spoke of stock worth $6.75 billion and PG&E delivered stock worth approximately $4.314 billion.  Now PG&E wants the bankruptcy court to allow it to increase the amount of its tax deduction to an amount equal to the market value on the day the stock is sold.  Fire Victims deserve to see the actual and final agreement this time before they decide whether or not to voice an objection.  They deserve to have all of the facts, not just assurances from a company that has repeatedly proven it should not be trusted.

Every question I have asked, and many more that I can think of, must have already been asked and answered if the Trustee is exercising due diligence in his guardianship of the Fire Victims' Trust.  It should not be difficult for him to publish **all the actual information** he has regarding this matter, including the final version of the proposed agreement, on the Trust's website and to notify the bankruptcy court once that is done so that interested Fire Victims will know when to check the website.  That is all I am asking.

Requiring that the information be made public 14 days prior to the objection deadline is not unreasonable.  Fire Victims deserve the time to discuss the issues with other Fire Victims; families deserve time to discuss the possible repercussions.  The Trust is supposed to be for our benefit, and we will no longer settle for the claim that the Trustee will take care of us.  We've heard that before, from the TCC, and we ended up with over $2.4 billion less in our trust fund than many felt had been promised.  We've had to wait months to receive even token payments on our claims, and the Trustee will not tell us when we can expect to receive our final payments.  It is time the bankruptcy court told the Trustee to do his job and let us know what is going on and what his plans are for working himself out of a job.

Respectfully submitted,

 April 12, 2021                                       *Theresa Ann McDonald*
 Date                                                       Theresa Ann McDonald