| | |
|---|---|
| **LABATON SUCHAROW LLP**<br>Thomas A. Dubbs<br>Carol C. Villegas<br>Jeffrey A. Dubbin<br>(SBN 287199)<br>140 Broadway<br>New York, New York 10005<br><br>*Lead Counsel to Lead Plaintiff and the Proposed Class*<br><br>**MICHELSON LAW GROUP**<br>Randy Michelson (SBN 114095)<br>220 Montgomery Street, Suite 2100<br>San Francisco, California 94104<br><br>*Local Bankruptcy Counsel to Lead Plaintiff and the Proposed Class* | **LOWENSTEIN SANDLER LLP**<br>Michael S. Etkin (pro hac vice)<br>Andrew Behlmann (pro hac vice)<br>Scott Cargill<br>Colleen Maker<br>One Lowenstein Drive<br>Roseland, New Jersey 07068<br><br>*Special Bankruptcy Counsel to Lead Plaintiff and the Proposed Class*<br><br>*Additional counsel listed on Exhibit A* |

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | **Case No. 19-30088 (DM) (Lead Case)**<br><br>**Chapter 11**<br><br>**(JOINTLY ADMINISTERED)**<br><br><br><br><br>**SECURITIES LEAD PLAINTIFF'S OPPOSITION, REQUEST FOR CLARIFICATION, AND RESERVATION OF RIGHTS TO REORGANIZED DEBTORS' FIRST SECURITIES CLAIMS OMNIBUS OBJECTION**<br><br>**Hearing Information:**<br>Date: April 28, 2021<br>Time: 10:00 a.m. (Pacific Time)<br>Before: (Telephonic Appearance Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

BACKGROUND ..................................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

I. DEBTORS' OMNIBUS OBJECTION CANNOT APPLY TO DEBT-SECURITIES CLAIMANTS WHO ARE NOT REQUIRED TO PROVE LOSS CAUSATION UNDER SECTION 11 ............................................................................................. 4

II. THE FIRST OMNIBUS SECURITIES OBJECTION SHOULD NOT APPLY TO ANY SECURITIES CLAIMANT THAT PURCHASED SHARES LATER DURING THE CLASS PERIOD .............................................................................. 6

CONCLUSION ........................................................................................................................ 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
   No. 03-2522, 2006 WL 1180267 (N.D. Cal. May 3, 2006) ....................................................... 7

*Hurst v. Enphase Energy, Inc.*,
   No. 20-cv-04036-BLF, 2020 WL 7025085 (N.D. Cal. Nov. 30, 2020) ................................... 6

*Mineworkers' Pension Scheme v. First Solar Inc.*,
   881 F.3d 750 (9th Cir. 2018), *cert denied*, 139 S. Ct. 2741 (2019) ................................. 2, 3, 6

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) ................................................................................................ 7

*Vinh Nguyen v. Radient Pharms. Corp.*,
   No. 11-00406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................................... 7

*In re Violin Memory, Inc. Sec. Litig.*,
   No. 13-05486, 2015 U.S. Dist. LEXIS 57094 (N.D. Cal. Apr. 30, 2015) ............................... 4

*Warshaw v. Xoma Corp.*,
   74 F.3d 955 (9th Cir. 1996) .................................................................................................... 7

**Statutes**

11 U.S.C. § 502 ............................................................................................................................. 3

15 U.S.C. § 77k(e) ................................................................................................................. 3, 4, 5

**Other Authorities**

Fed. R. Bankr. P. 3007(d) ............................................................................................................. 3

Local Bankruptcy Rule 3007-1 ..................................................................................................... 3

Public Employees Retirement Association of New Mexico ("**Securities Lead Plaintiff**" or "**PERA**"), the court-appointed lead plaintiff in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**") pending in the U.S. District Court for the Northern District of California (the "**District Court**"), as lead plaintiff for the proposed class it represents in the Securities Litigation (the "**Class**") and as a creditor in the chapter 11 bankruptcy cases (the "**Chapter 11 Cases**") of the above-captioned debtors (as reorganized pursuant to the Plan (as defined below), the "**Reorganized Debtors**"), together with York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund (together with Securities Lead Plaintiff, "**Securities Plaintiffs**"), hereby submit this opposition, request for clarification, and reservation of rights (the "**Opposition**") to Reorganized Debtors' First Securities Claims Omnibus Objection (the "**Objection**" or the "**First Omnibus Securities Objection**") [ECF No. 10411] seeking to expunge the proofs of claim filed by certain past PG&E securities holders who sold their entire positions before October 12, 2017 (the first date on which shareholders are alleged to have been injured by the asserted fraud, the "**First Loss Event**").

The issues identified herein impact multiple stock and bond claimants, and Lead Plaintiff submits it would serve judicial economy and efficiency for them to be addressed through this Opposition rather than *seriatim*.[1]

## BACKGROUND

On January 29, 2019, both PG&E defendants[2] in the Securities Litigation filed for bankruptcy protection. *See* ECF No. 1. The Court entered an order (the "**Confirmation Order**")

---

[1] Although Securities Plaintiffs' claims are not listed in the First Omnibus Securities Objection, Lead Plaintiff, as the court-appointed lead plaintiff in the Securities Litigation representing the putative Class, has fiduciary duties to the stock and bond claimants whose claims are, or in the future may be, objected to on this basis. Accordingly, Securities Plaintiffs submit this Opposition to protect those Class members whose rights and claims may be prejudiced by the First Omnibus Securities Objection. Further, because Lead Plaintiff – like many claimants – sold *some* stock before October 12, 2017 and also incurred further injury when it purchased additional, still-inflated stock thereafter (*see* Claim Nos. 69105 & 71345), it has a concrete interest in ensuring that a correct decision is reached on the legal issues raised by the First Omnibus Securities Objection.

[2] This Opposition refers to the pre-bankruptcy corporate entities, PG&E Corporation (the publicly traded holding company) and Pacific Gas & Electric Company (its wholly-owned utility), collectively as "PG&E."

confirming PG&E's Chapter 11 Plan of Reorganization (the "**Plan**") on June 20, 2020. *See* Confirmation Order, ECF No. 8053; *see also* Plan, ECF No. 8053-1.

In their First Omnibus Securities Objection, Reorganized Debtors purport to identify bankruptcy claimants who could not possibly have been harmed by their alleged misconduct. However, because Reorganized Debtors do not describe the underlying allegations, their First Omnibus Securities Objection is ambiguous about the relief it seeks. Securities Plaintiffs respectfully request clarification as described herein, and reserve all rights concerning the extent to which the First Omnibus Securities Objection may be inappropriate as applied to the claims at issue. To pinpoint the ambiguities in the First Omnibus Securities Objection, the conduct at issue in the Securities Litigation must be momentarily acknowledged.

PG&E had once assured investors that it was (1) "complying with state and federal regulations," (2) had "doubled" its "vegetation management spending" and "inspect[ed] every segment of" its powerlines "every year," and (3) "implemented" a so-called "protocol" to shut off its power lines during specified "extreme fire danger conditions." Those statements were false. In reality, PG&E committed rampant safety violations throughout the Securities Litigation Class Period, failed to increase its vegetation management spending, had an undisclosed internal policy to inspect certain "high risk" lines just once every five years, and did not have the promised protocol in place for shutting down its grid. Similar statements appeared in PG&E's bond offerings, which were materially false for similar reasons.

Thus, when investors paid between $49 and $71 for PG&E shares during the Securities Litigation Class Period, they overpaid. Proof that PG&E's actions caused investor losses can be seen in nine discrete events where news emerged about the extent and effects of PG&E's concealed imprudence, and its stock price immediately declined.[3] Crucially, many of the misrepresentations at

---

[3] The Reorganized Debtors' First Omnibus Securities Objection refers to these nine events as "Corrective Disclosures," *see* Objection at 2 & 5, which is mostly inaccurate. "Disclosure of the fraud is not a *sine qua non* of loss causation" in the Ninth Circuit. *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 754 (9th Cir. 2018), *cert denied*, 139 S. Ct. 2741 (2019). Rather, "To prove loss causation, plaintiffs need only show a causal connection between the fraud and the loss … by tracing the loss back 'to the very facts about which the defendant lied.'" *Id.* at 753. Thus, "corrective disclosure" is not the primary theory advanced in the Securities Litigation (though it fits asserted loss events 4 and 5 quite well). A more accurate collective term for these nine dates

Footnote continued on next page

issue were told *after* the First Loss Event, including an attempt to reassure investors that PG&E could not be responsible for any fires because it had "doubled" its "vegetation management spending" (when it had not), had "inspect[ed] every segment of" its powerlines "every year" (when it did not), and so forth. Indeed, approximately half of the allegedly false statements were made after that October 12, 2017 date, and thus, continued to cause investor losses thereafter.

Further, certain bond investors need not prove loss causation as an element of their Securities Act claims; rather, as detailed below, their losses are set by statute and are not based on the nine asserted loss events.

This background is essential to evaluating Reorganized Debtors' claim, in the First Omnibus Securities Objection, that they could not possibly have injured certain Securities Claimants.

## ARGUMENT

Reorganized Debtors argue that section 502 of the Bankruptcy Code, Bankruptcy Rule 3007(d), Bankruptcy Local Rule 3007-1, and the Court-ordered Claims Procedure and ADR process permit Reorganized Debtors to file this omnibus Objection, seeking entry of an order disallowing and expunging certain proofs of claim for securities sold before the First Loss Event. Objection at 6. However, Reorganized Debtors' reasoning may assume a controversial interpretation of the securities laws, potentially diverging from the traditional Section 10(b) damages analysis, depending on how this Court applies it. First, they fail to consider that certain securities claimants listed in their Objection are debt-securities claimants, whose debt securities are subject to a different damages analysis set by a statutory formula in the Securities Act of 1933 (the "Securities Act"), and not the events of October 12, 2017 as the Objection assumes. *See* 15 U.S.C. § 77k(e). Second, in the context of Section 10(b) damages for stockholder claims, Reorganized Debtors apparently fail to consider that even stock claimants who sold before the First Loss Event could still be injured by the asserted fraud if they later purchased PG&E securities during the ongoing Class Period.[4]

---

on which news emerged about the extent and effects of PG&E's imprudence would be "loss events," *i.e.*, dates on which the very facts that PG&E misrepresented proximately caused investor losses. *See id.*

[4] The Class Period is from April 29, 2015 through November 15, 2018 as defined in the Third Amended Consolidated Class Action Complaint (the "**TAC**"). Securities Litigation ECF No. 121.

I.  **DEBTORS' OMNIBUS OBJECTION CANNOT APPLY TO DEBT-SECURITIES CLAIMANTS WHO ARE NOT REQUIRED TO PROVE LOSS CAUSATION UNDER SECTION 11**

Reorganized Debtors' First Omnibus Securities Objection may not be used to disallow proofs of claim for debt-securities claimants whose claims arise under the Securities Act. Debtors' assertion—that "because [certain securities claimants'] sales occurred before any purported corrective disclosure . . . [their] claim[s] fail[] to establish loss causation"[5]—fails to consider that loss causation is not a required element under Section 11. *See, e.g., In re Violin Memory, Inc. Sec. Litig.*, No. 13-05486, 2015 U.S. Dist. LEXIS 57094, at *14 (N.D. Cal. Apr. 30, 2015) ("[L]oss causation is not an element of plaintiffs' prima facie Section 11 claim . . ."). While aspects of loss causation may create an affirmative defense to a Section 11 claim, the loss events alleged here under Section 10(b) do not apply to the separately pled Section 11 claims, and in any event, this omnibus Objection is not the appropriate vehicle for evaluating affirmative defenses.

Reorganized Debtors acknowledge that there are claims other than those under Section 10(b), including claims under the Securities Act (and its Section 11 cause of action for certain debt securities), arising out of PG&E's materially false and misleading statements made in registration statements and other offering documents. *See* Objection at 4 ("This amended complaint . . . asserts claims against the Debtors, among others, under the Securities Act of 1933 . . . ."); *see also* TAC at ¶¶496-692; ¶¶693-702 ("This Claim is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Securities Act Subclass, against all Securities Act Defendants").[6] Yet, Debtors seek to have claims expunged against not only stock claimants but also debt-securities claimants, even though the latter may be covered by Section 11 and subject to a different damages analysis than Section 10(b) claims – indeed, one set by statute and not based on the events of October 12, 2017. *See* 15 U.S.C. § 77k(e) (providing that an investor may "recover such damages as shall represent the difference between the amount paid for the security . . . and the value thereof as of the time the suit was brought or [] the price at which such security shall have been disposed of in the market before suit . . . .").

---

[5] *See* Objection at 7.

[6] The bond claims alleged to qualify for Securities Act damages have the following CUSIPs: 694308HY6, 694308HW0, 694308HR1, 694308HS9, and 694308HP5.

Securities Plaintiffs have not undertaken a comprehensive review of all the claims Reorganized Debtors include in the First Omnibus Securities Objection. Because Reorganized Debtors might file subsequent omnibus objections on the same ground, it is not practicable for Securities Plaintiffs to police all present and future filings. Nevertheless, Securities Plaintiffs have identified at least seventeen claimants listed in Debtors' Omnibus Objection whose debt-securities claims have distinct losses governed by the Securities Act.[7] These claims, together with all other debt-securities claimants with claims arising under the Securities Act, are not objectionable on an omnibus basis and should not be expunged. The fact that any such claimant sold its Securities Act-covered debt securities before the First Loss Event is irrelevant because such debt-securities claimants need not establish loss causation as an element of their claims. Further, their damages are set by statute and are unaffected by the events of October 12, 2017. They remain entitled to "recover such damages as shall represent the difference between the amount paid for the security . . . and the value thereof as of the time the suit was brought or [] the price at which such security shall have been disposed of in the market before suit." *See* 15 U.S.C. § 77k(e).

Accordingly, Securities Plaintiffs seek clarification and reassurance that the claims of any debt-securities claimant whose claim arises under the Securities Act will not be disallowed or expunged, and respectfully submit that the Court should overrule Reorganized Debtors' First Omnibus Securities Objection to the extent it requests such a windfall.

---

[7] *E.g.*, City of Avon Park Firefighters' Retirement System [Claim No. 99048]; City of Deltona Firefighters' Pension Plan [Claim No. 99074]; DRRT FBO Deka Investment GMBH (11202) [Claim No. 101111]; DRRT FBO SWISS REINSURANCE COMPANY LTD(ZF2A9F) [Claim No. 99688]; DRRT FBO WARBURG INVEST AG [Claim No. 100429]; Government Employees' Retirement System of the Virgin Islands [Claim No. 100027]; HealthSpring of Tennessee, Inc. OBO HSPTN [Claim No. 103060]; Houston Municipal Employees Pension System [Claim No. 99142]; IFIT Core Fixed Income Fund of Invesco Fixed Income Trust [Claim No. 101792]; Invesco Bond Fund (Delaware Statutory Trust) [Claim No. 102050]; Invesco Core Plus Bond Fund of AIM Counselor Series Trust (Invesco Counselor Series Trust) [Claim No. 102122]; Invesco Corporate Bond of AIM Investment Securities Funds (Invesco Investment Securities Funds) [Claim No. 102053]; Invesco Intermediate Bond Factor Fund of AIM Investment Securities Funds (Invesco Investment Securities Funds) [Claim No. 101438]; Invesco Intermediate Bond Trust of Institutional Retirement Trust [Claim No. 101678]; Invesco V.I. Core Plus Bond Fund of AIM Variable Insurance Funds (Invesco Variable Insurance Funds) [Claim No. 101924]; PineBridge Strategic Bond Fund Emg [Claim No. 101256]; Police & Fire Retirement System of the City of Detroit [Claim No. 100409].

## II. THE FIRST OMNIBUS SECURITIES OBJECTION SHOULD NOT APPLY TO ANY SECURITIES CLAIMANT THAT PURCHASED SHARES LATER DURING THE CLASS PERIOD

Reorganized Debtors contend that all securities claimants "who sold their PG&E securities before October 12, 2017 . . . could not have suffered a loss caused by the Debtors' alleged misstatements." Objection at 3. This contention is ambiguous about how claimants who sold their PG&E securities before October 12, 2017 but then later purchased additional PG&E securities are to be treated. To the extent Reorganized Debtors intend for such later-acquired claims to expunged as well, that request is grounded in a misunderstanding of the securities laws – wrongly supposing that claimants can never establish loss causation if they liquidated their entire position prior to the first event where investors incurred losses.[8] *See* Objection at 7-9. The First Omnibus Securities Objection does not explicitly recognize that even securities claimants who sold before the First Loss Event will still have viable Section 10(b) claims if they purchased securities later in the Class Period (or if they retained some shares), precisely because materially false and misleading statements continued to be made.

Reorganized Debtors concede that Securities Lead Plaintiff's Third Amended Complaint pled nine separate loss events. *See* Objection at 5 & Exhibit 2. Yet, Debtors apparently suggest that securities claimants can only show harm if they incurred loss from the First Loss Event. *See* Objection at 9 ("[B]ecause each of the claimants identified in Exhibit 1 entirely liquidated their Entire Position in PG&E securities prior to the first purported 'corrective disclosure' on October 12, 2017, none of them can establish that purported misrepresentations and omissions by the Debtors caused any loss at all.").

Tellingly, Debtors' authority does not (and cannot) dispute that investors have a cognizable claim if they purchased the PG&E equity securities after the first loss event and suffered injury from any of the subsequent loss events. *See, e.g.*, *Hurst v. Enphase Energy, Inc.*, No. 20-cv-04036-

---

[8] The bar for establishing loss causation in the Ninth Circuit is low. Recent circuit law recognizes that the loss causation inquiry "requires no more than the familiar test for proximate cause." *See Mineworkers' Pension Scheme*, 881 F.3d at 753. Further, this Circuit has explicitly stated that disclosure of fraud is not necessary to establish loss causation. *Id.* ("Disclosure of the fraud is not a sine qua non of loss causation, which may be shown even where the alleged fraud is not necessarily revealed prior to the economic loss."). Rather, loss causation is a "context-dependent inquiry as there are an infinite variety of ways for a tort to cause a loss." *Id.* (internal quotations omitted).

BLF, 2020 WL 7025085, at *8 (N.D. Cal. Nov. 30, 2020) (finding that investors would not have suffered an injury from the fraud because they sold the stock before **the sole loss event** alleged in the complaint); *Vinh Nguyen v. Radient Pharms. Corp.*, No. 11-00406, 2014 WL 1802293, at *6 (C.D. Cal. May 6, 2014) ("[P]ost *Dura* authority has not interpreted the case to bar in-and-out traders from all securities fraud class actions. Rather, circuit courts look to *Dura* for the proposition that inand-out [sic] traders must be able to provide the requisite showing of proximate cause that is necessary for the stage of the proceedings.").[9]

Any argument otherwise would inexplicably condition recovery to harm associated with the first loss event, despite well-pled allegations of subsequent material misrepresentations that caused injury through ensuing loss-related events. The Ninth Circuit has repeatedly held that even after initial negative news causes investor losses, false or misleading statements made to reassure investors can continue to give rise to liability. *E.g.*, *In re Quality Systems, Inc. Securities Litigation*, 865 F.3d 1130, 1144 (9th Cir. 2017) (affirming liability for continued investor losses after an initial May 7, 2012 loss event, where subsequent actionable statements falsely "reassured [investors] that the pipeline was full and growing," causing further losses during a July 26, 2012 loss event); *Warshaw v. Xoma Corp.*, 74 F.3d 955, 958 (9th Cir. 1996) (where a defendant company made "a series of statements to reassure the market" after the first "downward slide in [its] stock price," a Rule 10b-5 claim was adequately pleaded). As a reminder, Reorganized Debtors incorporated many of the subsequent loss event dates into their "Claim Share" conversion rates. *See* Plan § 1.108 (defining "HoldCo Rescission or Damage Claim Share").

Accordingly, Securities Plaintiffs (i) seek clarity that Reorganized Debtors' omnibus objections may not be used to disallow or expunge claims associated with securities claimants who later purchased securities during the Class Period, and (ii) oppose the First Omnibus Securities Objection to the extent it seeks to expunge claims on the basis of this erroneous view of loss causation under the securities laws.

---

[9] The only other authority Reorganized Debtors cite, *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, No. 03-2522, 2006 WL 1180267 (N.D. Cal. May 3, 2006), is distinguishable because there, the court merely held that plaintiffs who sold entirely before the first loss event should be excluded and did not determine whether plaintiffs who subsequently purchased shares should be excluded as well.

## CONCLUSION

For all the foregoing reasons, Securities Plaintiffs respectfully request that this Court enter an Order denying Debtors' First Omnibus Securities Objection to the extent it lists any (1) debt-securities claims asserted under the Securities Act or (2) securities claimants who purchased securities after October 12, 2017. Alternatively, Securities Plaintiffs seek clarification that Reorganized Debtors do not, and will not, seek to object to or expunge such claims.

Dated: April 14, 2021

**LOWENSTEIN SANDLER LLP**
**MICHELSON LAW GROUP**

By: */s/ Randy Michelson*
Randy Michelson (SBN 114095)

*Bankruptcy Counsel to Lead Plaintiff and the Class*

<h1 style="text-align:center">EXHIBIT A<br>COUNSEL</h1>

| | |
|---|---|
| **LABATON SUCHAROW LLP**<br>Thomas A. Dubbs<br>Carol C. Villegas<br>Jeffrey A. Dubbin (SBN 287199)<br>140 Broadway<br>New York, New York 10005<br>Telephone 212-907-0700<br>tdubbs@labaton.com<br>cvillegas@labaton.com<br>jdubbin@labaton.com<br><br>*Lead Counsel to Lead Plaintiff and the Proposed Class* | **LOWENSTEIN SANDLER LLP**<br>Michael S. Etkin (*pro hac vice*)<br>Andrew Behlmann (*pro hac vice*)<br>Scott Cargill<br>Colleen Maker<br>One Lowenstein Drive<br>Roseland, New Jersey 07068<br>Telephone 973-597-2500<br>Facsimile 973-597-2333<br>metkin@lowenstein.com<br>abehlmann@lowenstein.com<br><br>*Special Bankruptcy Counsel to Lead Plaintiff and the Proposed Class* |
| **MICHELSON LAW GROUP**<br>Randy Michelson, Esq. (SBN 114095)<br>220 Montgomery Street, Suite 2100<br>San Francisco, CA 94104<br>Telephone 415-512-8600<br>Facsimile 415-512-8601<br>randy.michelson@michelsonlawgroup.com<br><br>*Local Bankruptcy Counsel to Lead Plaintiff and the Proposed Class* | **WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**<br>James M. Wagstaffe (SBN 95535)<br>Frank Busch (SBN 258288)<br>100 Pine Street, Suite 725<br>San Francisco, California 94111<br>Telephone 415-357-8900<br>wagstaffe@wvbrlaw.com<br>busch@wvbrlaw.com<br><br>*Liaison Counsel for the Proposed Class* |
| **ROBBINS GELLER RUDMAN & DOWD LLP**<br>Darren J. Robbins (SBN 168593)<br>Brian E. Cochran (SBN 286202)<br>655 West Broadway, Suite 1900<br>San Diego, California 92101<br>Telephone 619-231-1058<br>darrenr@rgrdlaw.com<br>bcochran@rgrdlaw.com | **ROBBINS GELLER RUDMAN & DOWD LLP**<br>Willow E. Radcliffe (SBN 200089)<br>Kenneth J. Black (SBN 291871)<br>Post Montgomery Center<br>One Montgomery Street, Suite 1800<br>San Francisco, California 94104<br>Telephone 415-288-4545<br>willowr@rgrdlaw.com<br>kennyb@rgrdlaw.com |
| **VANOVERBEKE, MICHAUD & TIMMONY, P.C.**<br>Thomas C. Michaud<br>79 Alfred Street<br>Detroit, Michigan 48201<br>Telephone 313-578-1200<br>tmichaud@vmtlaw.com | |

*Additional Counsel for the Securities Act Plaintiffs*