KELLER BENVENUTTI KIM LLP
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

CRAVATH, SWAINE & MOORE LLP
Omid H. Nasab (*pro hac vice*)
(onasab@cravath.com)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

*Attorneys for Debtors and Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                          Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**REORGANIZED DEBTORS' FURTHER OBJECTION TO CLAIMS 80033 and 80500**<br><br>Date: June 15, 2021<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>        Courtroom 17, 16th Floor<br>        San Francisco, CA 94102<br><br>Response Deadline: May 14, 2021 |

# OBJECTION

PG&E Corporation (**"PG&E Corp."**) and Pacific Gas and Electric Company (the **"Utility"**), as debtors and reorganized debtors (collectively, **"PG&E,"** the **"Debtors,"** or the **"Reorganized Debtors"**) in the above-captioned chapter 11 cases (the **"Chapter 11 Cases"**), hereby submit this Further Objection to the claims of George L. Engel (No. 80033) (the "**Engel POC**") and Mark A. and Janet S. Klein (No. 80500) (the "**Klein POC**" and together with the Engel POC, the "**Claims**") pursuant to section 502 of title 11 of the United States Code (the **"Bankruptcy Code"**), on the grounds that (1) the Claims are preempted by California Public Utilities Code Section 1759, (2) the Claims do not assert cognizable damages, (3) claimants cannot establish a causal connection between PG&E and their alleged injuries and (4) the Claims are prohibited by paragraph 4 of Tariff Rule 14.[1]

This Objection is supported by the *Memorandum of Points and Authorities* included herein.

---

[1] The Reorganized Debtors initially objected to the Claims through the *Reorganized Debtors' Forty-Second Omnibus Objection to Claims (No Liability Passthrough Claims)* (Dkt. 9460).

# TABLE OF CONTENTS

<u>Page</u>

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. BACKGROUND ............................................................................................................... 2

    A. Regulation of De-Energization by the CPUC ................................................... 2

    B. Claimants' Allegations ....................................................................................... 3

III. ARGUMENT ..................................................................................................................... 4

    A. The Claims Should Be Disallowed Because They Are Preempted by California Public Utilities Code § 1759. ............................................................ 5

        1. The CPUC has the authority to regulate public safety power shutoffs and exercised that authority. ............................................................ 6

        2. The Claims would hinder or interfere with the CPUC's policies for public safety power shutoffs. ............................................................................ 6

    B. The Claims Should Be Disallowed Because Claimants Did Not Suffer Cognizable Damages ......................................................................................... 7

    C. The Claims Should Be Disallowed Because Claimants Cannot Prove that PG&E Caused Their Injuries. .............................................................................. 8

    D. The Claims Should Be Dismissed Because Tariff Rule 14 Authorizes PG&E To Interrupt Service Without Liability When In PG&E's Sole Opinion It Is Necessary for Public Safety. ............................................................................... 9

IV. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)* 178 B.R. 222 (B.A.P. 9th Cir. 1995)..................................................................................4

*Carlsen v. Koivumaki*, 227 Cal. App. 4th 879 (Ct. App. 2014)..............................................8

*Cooney v. Cal. Pub. Util. Comm'n*, No. C 12-6466 CW, 2014 WL 3531270 (N.D. Cal. July 15, 2014).......................................................................................................5, 6, 7

*Dollar-A-Day Rent-A-Car Sys. v. Pac. Tel. & Tel. Co.*, 26 Cal. App. 3d 454 (1972)............9

*Duggal v. G.E. Capital Commc'ns. Servs.*, 81 Cal. App. 4th 81 (2000)..................................9

*Dyke Water Co. v. Public Utilities Comm'n*, 56 Cal. 2d 105 (1961).......................................9

*Gantner v. PG&E Corp.*, 2021 WL 1164816 (N.D. Cal. Mar. 26, 2021) ........................2, 6, 7

*Hartwell Corp. v. Super. Ct.*, 27 Cal. 4th 256 (2002).............................................................6, 7

*In re Allegheny Int'l, Inc.*, 954 F.2d 167 (3d Cir. 1992)...........................................................4

*In re Fidelity Holding Co.*, 837 F.2d 696 (5th Cir. 1988)........................................................5

*In re PG&E Corp.*, 2020 WL 1539254 (Bankr. N.D. Cal. Mar. 30, 2020).........................7, 9

*Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035 (9th Cir. 2000)...........................4

*Melvin L. Cockhren II v. Pac. Gas & Elec. Co., et al.*, No. CGC-13-529137 (Cal. Super. Ct. Aug. 27, 2014) ....................................................................................................10

*Rosen v. Uber Techs. Inc.*, 164 F. Supp. 3d 1165 (N.D. Cal. 2016)....................................5, 6

*Rosencrans v. Dover Images, Ltd.*, 192 Cal. App. 4th 1072 (Ct. App. 2011) ........................8

*San Diego Gas & Elec. Co. v. Superior Ct.*, 13 Cal. 4th 893, 918, 920 P.2d 669 (1996) ..........................................................................................................................5, 6, 7

*Sarale v. Pac. Gas & Elec. Co.*, 189 Cal. App. 4th 225 (2010)................................................6

*Spencer v. Pugh (In re Pugh)*, 157 B.R. 898 (B.A.P. 9th Cir. 1993).......................................4

*Vu v. California Commerce Club, Inc.*, 58 Cal. App. 4th 229 (Ct. App. 1997).....................8

*Waters v. Pac. Tel. Co.*, 12 Cal. 3d 1 (1974) ............................................................................6

*Wright v. Holm (In re Holm)*, 931 F.2d 620 (9th Cir. 1991) ...............................................4, 5

**Statutes & Rules**

11 U.S.C. § 502(a) ...................................................................................................................4

11 U.S.C. § 502(b) ...................................................................................................................4

Cal. Pub. Util. Code § 1759 ...............................................................................................1, 5, 6

Cal. Pub. Util. Code § 2106 .....................................................................................................6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

George L. Engel and Mark A. and Janet S. Klein (together, the "**Claimants**") filed proofs of claim seeking reimbursement for generators that they purchased to avoid having the power to their homes interrupted during Public Safety Power Shutoffs ("**PSPS**"). PSPS events occur across California when utilities (including utilities other than PG&E) interrupt power to prevent potentially deadly, catastrophic wildfires. The Claimants do not dispute that PG&E's PSPS program exists to prevent wildfires and keep communities, including their own, safe. Nor do they allege that PG&E violated the California Public Utilities Commission ("**CPUC**") regulations that govern PSPS events and authorize de-energizations. Instead, Claimants argue that PG&E did not adequately maintain their facilities in the past, which necessitated the creation and use of the PSPS program, and now demand that PG&E reimburse them for generators they bought. These Claims should be disallowed for at least four reasons.

*First,* the Claims are preempted by California Public Utilities Code Section 1759. (*See* Section III.A.) The first two prongs of the preemption test are satisfied with respect to the CPUC's regulation of PSPS events because the CPUC (1) had the authority to regulate PSPS events and (2) exercised that authority. As this Court held in its order dismissing the *Gantner* class action with prejudice—an order that was recently affirmed by Judge Gilliam—the third prong is also satisfied because, under Claimants' theories, Debtors would be impermissibly subject to civil liability for conduct that is authorized by the CPUC.

*Second*, Claimants have no damages. (*See* Section III.B.) They do not allege that they suffered hardships and costs as a result of their power being shut off. They chose to buy generators to provide standby power to their residences—as many people across the country choose to do—to avoid power interruptions of all kinds. That is not damages that flow from PG&E's public safety power shutoffs.

*Third,* even if their damages were cognizable, the Claimants cannot establish a sufficient causal connection between generalized allegations of negligence about the upkeep of

PG&E's grid and any shutoffs that affected their specific residences. (*See* Section III.C.) Power shutoffs are dictated by the weather on a line-by-line basis, not generalized historical maintenance practices.

*Fourth*, the Claims are prohibited by paragraph 4 of Tariff Rule 14. (*See* Section III.D.) Tariff Rule 14 provides that the decision to shut off a customer's power cannot trigger liability when, in PG&E's "sole opinion", it is necessary for public safety. Claimants do not—and cannot—allege that PG&E did not believe that any PSPS events were not necessary for public safety. As a result, the Claims are barred under Tariff Rule 14.

## II. BACKGROUND

Wildfire risk in the state of California is greater now than ever before. A confluence of unprecedented climate conditions, including increased temperatures, extended periods of drought, bark beetle infestations and unusually high winds have significantly increased the risk that a downed electrical line will cause a catastrophic fire. The tragic consequences of the 2017, 2018 2019 and 2020 California wildfires make clear just how important it is to minimize the risk of future wildfires. As a result, California has authorized electrical utilities in the state of California to engage in PSPS events, and pursuant to that authority PG&E—and its peer utilities in California— have developed and implemented PSPS programs. Per California law, these programs are subject to the CPUC's approval and supervision.

### A. Regulation of De-Energization by the CPUC

The CPUC regulations concerning PSPS are extensive and ongoing (*see* Debtors' Mot. to Dismiss and Mot. to Strike, Case No. 19-30088; Adv. Pro. No. 19-03061 (Dkt. 7) ("**Gantner Mot. to Dismiss**"), Section II.A), and as Judge Gilliam recently held, the CPUC actively regulates in this area, *Gantner v. PG&E Corp.*, 2021 WL 1164816, at *3 (N.D. Cal. Mar. 26, 2021). Judge Gilliam's opinion, at pages 3 to 4, details why "The CPUC had the authority to regulate PSPS events and the CPUC exercised that authority." *Id.* at *3-4. In short, "the CPUC has promulgated specific guidelines concerning when and how to implement PSPS events," and the CPUC has approved PG&E's wildfire mitigation plans that set forth PG&E's process each year for conducting PSPS events during that year. *Id.* at *4.

B.     **Claimants' Allegations**

In October 2019, Engel submitted a proof of claim purporting to "reserve, preserve and enforce" claims relating to PSPS. (*See* Attachment to Engel POC, at 1.) In December 2020, Engel filed a response to Reorganized Debtors' Forty-Second Omnibus Objection to Claims (No Liability Passthrough Claims) ("**PG&E's Objection**") raising substantially the same arguments. Dkt. 9653 ("**Engel Response Brief**"). While Engel, who lives in a "Tier 3 – Extreme Fire-Threat District",[2] challenges the PSPS Program generally, he does not identify any specific PSPS event to which he was subject. Nor does he identify a PSPS event that violated any CPUC regulation governing the program. Instead, he broadly alleges that PG&E has had "excessive" PSPS events because it allegedly inadequately maintained its facilities and failed to make improvements such as "undergrounding". (Attachment to Engel POC 2-3, 4-5.) Claimant alleges unspecified damages that are "growing", but that "the base amount [of damages] that is easiest to liquidate . . . is what [his] POC asserts for [his] Generator and its continuing operation and servicing expenses." *See* Declaration of G. Larry Engel In Support of Response to Reorganized Debtors' Forty-Second Omnibus Objection to Claims (No Liability Passthrough Claims) ("**Engel Decl.**") at 6. Claimant alleges that the cost to purchase and install his generator was $25,071.16. (*See* Attachment to Engel POC.)

On October 19, 2019, the Kleins submitted a proof of claim seeking reimbursement of the cost to purchase and install a standby generator "to power Creditor's residence during periods that Debtor preemptively cuts electric power". (Attachment to Klein POC). On November 30, 2020, the Kleins filed a response to PG&E's Objection alleging that PG&E breached its duties to Claimants "by first announcing in March 2018 that it would preemptively cut electric power during periods of 'extreme fire conditions' and then intentionally and deliberately cutting power to Claimant's residence for various intervals in October 2018, September 2019, October 2019 and

---

[2] The CPUC provides on its website a map showing areas that are in Tier 2 and 3 Fire-Threat Districts. *See CPUC Fire Map*, California Public Utilities Commission, https://ia.cpuc.ca.gov/firemap/.

thereafter".³  Dkt. 9634 ("**Klein Response Brief**").  The Kleins, who live in a "Tier 2 – Elevated Fire-Threat District" allege that they were damaged in the amount of $18,025—the cost to purchase and install a standby generator to supply the Claimant's residence with power during PSPS events. *See* Declaration of Mark A. Klein In Support of Response to Reorganized Debtors' Forty-Second Omnibus Objection to Claims (No Liability Passthrough Claims) ("**Klein Decl**.") at 13.  While the Kleins' claim is framed as breach of contract, their legal theory mirrors Engel's:  PG&E's alleged negligence necessitated PG&E's PSPS events.  *See* Klein Resp. Br. at 4 ("In truth, the Debtor's intentionally instigated power outages are more to protect PG&E from its past and continuing exposure from fires caused by Debtors' negligently maintained power lines and other equipment, which negligence and liabilities drove Debtors into these proceedings.").  And like Engel, the Kleins do not identify a PSPS event that violated any CPUC regulation governing the program.

## III.  ARGUMENT

A filed proof of claim is "deemed allowed, unless a party in interest . . . objects". 11 U.S.C. § 502(a).  Section 502(b)(1) of the Bankruptcy Code, however, provides in relevant part that a claim may not be allowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law".  11 U.S.C. § 502(b)(1).  Once the objector raises "facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves", *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991), quoting 3 L. King, *Collier on Bankruptcy* § 502.02 at 502-22 (15th ed. 1991), then "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence," *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)* 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)), *aff'd without opinion* 91 F.3d 151 (9th Cir. 1996).  "[T]he ultimate burden of persuasion is always on the claimant." *Holm*, 931 F.2d at 623 (quoting King, *Collier on Bankruptcy*); *see also Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000), *Spencer v. Pugh*

---

³ Contrary to the Kleins' assertion, there was not a PSPS event on September 4, 2019.  *See 2019 Utility Company PSPS Post Event Reports*, California Public Utilities Commission, https://www.cpuc.ca.gov/general.aspx?id=6442466222.

*(In re Pugh)*, 157 B.R. 898, 901 (B.A.P. 9th Cir. 1993); *In re Fidelity Holding Co.*, 837 F.2d 696, 698 (5th Cir. 1988).

  **A. The Claims Should Be Disallowed Because They Are Preempted by California Public Utilities Code § 1759.**

This Court lacks jurisdiction to hear the Claims under Section 1759 of the California Public Utilities Code. Section 1759 reflects a policy choice by the California legislature that civil trial courts should not entertain actions that interfere with the duties and supervisory power of the CPUC. Under Section 1759(a), "[n]o court of this state, except the Supreme Court and the court of appeal . . . shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court." As the California Supreme Court has explained, in enacting Section 1759, the Legislature divested courts of subject matter jurisdiction over actions that not only would reverse or annul a specific CPUC order, but also those actions that "would simply have the effect of undermining a general supervisory or regulatory policy of the commission, *i.e.*, when it would 'hinder' or 'frustrate' or 'interfere with' or 'obstruct' that policy". *San Diego Gas & Elec. Co. v. Superior Ct. (Covalt)*, 13 Cal. 4th 893, 918, 920 P.2d 669 (1996) (footnote omitted). Federal courts have held that Section 1759 likewise deprives them of jurisdiction over state law claims that interfere with the CPUC's regulatory authority. *See Rosen v. Uber Techs. Inc.*, 164 F. Supp. 3d 1165, 1174, 1177 (N.D. Cal. 2016) (holding that Section 1759 barred tort claims because judicial intervention would interfere with the CPUC's ongoing regulatory authority); *Cooney v. Cal. Pub. Util. Comm'n*, No. C 12-6466 CW, 2014 WL 3531270, at *3 (N.D. Cal. July 15, 2014) (dismissing state law claims under Section 1759 "where the relief granted would undermine a regulatory regime established by the CPUC").

  In determining whether Section 1759 applies, federal courts apply the three part *Covalt* test. *See, e.g., Rosen*, 164 F. Supp. 3d at 1172 (noting that "[f]ederal courts use the same *Covalt* test" as state courts). In *Covalt*, the California Supreme Court held that a lower court does not have jurisdiction over a civil action where: (1) the CPUC has the authority to regulate the

conduct at issue; (2) the CPUC has exercised that authority; and (3) the action would hinder or interfere with CPUC policies.[4]  13 Cal. 4th at 923, 926, 935.  All three parts of the *Covalt* test are plainly satisfied here.

### 1. The CPUC has the authority to regulate public safety power shutoffs and exercised that authority.

The first prong of the *Covalt* test is to determine whether the CPUC "ha[s] the authority to adopt a regulatory policy on the subject matter of the litigation".  *Rosen*, 164 F. Supp. 3d at 1174.  The second prong is met where the CPUC has actually exercised its authority to adopt a policy on the conduct in question.  *Covalt*, 13 Cal. 4th at 926-34; *Sarale v. Pac. Gas & Elec. Co.*, 189 Cal. App. 4th 225, 237-39 (2010).  This Court's *Gantner* opinion, and Judge Gilliam's order affirming that opinion, make it clear that the CPUC had the authority to regulate PSPS events, and exercised that authority.  *Gantner*, 2021 WL 1164816, at *3.  Accordingly, the first two prongs of the *Covalt* test are met.

### 2. The Claims would hinder or interfere with the CPUC's policies for public safety power shutoffs.

The Claims would hinder or interfere with the CPUC's ongoing regulatory authority over public safety power shutoff events because they seek to undermine policy decisions by the CPUC.  *See, e.g.*, *Gantner*, 2021 WL 1164816, at *4-5; *Cooney*, 2014 WL 3531270 at *3 (holding that a claim was preempted by Section 1759 because finding in favor of plaintiffs would be contrary to CPUC's policy that installation of certain products was consistent with state directives).

Here, the Claims directly interfere with the CPUC's policy decisions.  The CPUC issues promulgations governing PSPS events and reviews and approves PG&E's Wildfire Mitigation Plans that include PSPS protocols.  *Gantner*, 2021 WL 1164816, at *3; *In re PG&E Corp.*, 2020 WL 1539254, at *4 (Bankr. N.D. Cal. Mar. 30, 2020), *aff'd sub* nom*. Gantner*, 2021 WL 1164816.  "The CPUC's regulatory policies . . . authorize [PG&E] to decide that a PSPS is

---

[4] Private actions to recover tort damages are authorized under California Public Utilities Code Section 2106 where damages arise from a violation of CPUC regulations.  But Section 2106 is "limited to those situations in which an award of damages would not hinder or frustrate the commission's declared supervisory and regulatory policies".  *Waters v. Pac. Tel. Co.*, 12 Cal. 3d 1, 4 (1974).

warranted under certain circumstances." *Gantner*, 2021 WL 1164816, at *5. The "CPUC has also exercised continuing investigatory authority over [PG&E's] PSPS events." *Id.*

Claimants seek damages from PG&E for engaging in that CPUC-authorized conduct. Such claims are impermissible, as this Court held in the *Gantner* case. On appeal, Judge Gilliam affirmed this Court's holding, and adopted this Court's reasoning. "Imposing liability on [PG&E] for implementing CPUC-approved PSPS events would force [PG&E] to choose between incurring potentially limitless negligence liability and protecting public safety in a manner dictated by the appropriate regulatory authority: CPUC." *Id.* Under California law, "it is the job of CPUC to balance the costs and benefits of PSPS events and regulate them accordingly." *Id.* It is "not the job of the courts to regulate PSPS events through ad hoc imposition of negligence liability". *Id.* Accordingly, where as here, the claims attempt to impose liability for conduct authorized by the CPUC, they impermissibly interfere with the CPUC's authority. *Id; see also Covalt*, 13 Cal. 4th at 939 (finding that damages claim relating to electric and magnetic fields emanating from power lines "would interfere with the policy of the commission on powerline electric and magnetic fields" because such recovery would be inconsistent with the commission's conclusion that the electromagnetic field at issue do not present a substantial risk of physical harm); *Hartwell*, 27 Cal. 4th at 278 (holding that superior court is preempted from hearing claims alleging that utility did not provide safe drinking water where quality standards set by the CPUC were met).

**B.     The Claims Should Be Disallowed Because Claimants Did Not Suffer Cognizable Damages.**

Claimants do not allege that they suffered hardships and costs as a result of their power being shut off by PG&E. Claimants chose to buy generators to provide standby power to their residences in the case from interruptions *from any cause*, which presumably meant that Claimants did not suffer any hardships at all from the power shutoffs that occurred after they purchased the generators. Many people across the country buy generators for the reliability and convenience they provide, including parts of the country with zero wildfire risk. Claimants do not articulate any damages they incurred as a result of their power being shut off—while the Kleins identify three specific PSPS events during which PG&E allegedly shut off their power, by the Kleins' own

admission, they had already installed a generator for two of the three events. (Attachment to Klein POC (describing completion of generator installation on May 14, 2019, and PSPS events in October 2018 and September and October 2019).) And Engel does not so much as identify any PSPS events to which he was subject, or identify when his generator was installed. In any event, money spent on generators does not constitute damages that flow from PG&E's public safety power shutoffs. They were voluntary steps taken by Claimants to avoid their power being interrupted for any reason.

### C. The Claims Should Be Disallowed Because Claimants Cannot Prove that PG&E Caused Their Injuries.

Throughout their Proofs of Claim and Response Briefs, Engel and the Kleins make clear that their Claims rest in PG&E's alleged failure to maintain its equipment and not in PG&E's implementation of the PSPS events, notwithstanding the fact that PSPS events are conducted by utility companies all across California. (*See* Klein Resp. Br. at 4 ("PG&E's negligence is the ultimate cause necessitating its intentional power outages, and its own negligence should not excuse its failure to fulfill its contractual and statutory duties to the public, including Claimant."); Attachment to Engel POC at 3 ("Debtors have also failed . . . to maintain, upgrade and improve the system for foreseeable conditions of use that preserve operating capacity, especially without PSPS blackouts to the maximum extent feasible.").) In fact, Claimants do not allege that PG&E's implementation of PSPS events was itself negligent. This is fatal to the Claims because there is no causal connection between the alleged negligence and Claimants' injuries.[5]

While Claimants conclusorily assert that PG&E did not adequately maintain its facilities, there are no specific allegations that could give rise to a cognizable claim. For example, there are no factual allegations that the specific circuits encompassing Claimants' homes were selected because of the condition of the equipment. Nor are there non-conclusory allegations that PG&E's PSPS program was developed as a means of remedying poorly maintained equipment or

---

[5] Claimants purport to assert causes of action other than negligence, including gross negligence, willful misconduct and breach of contract. All of these causes of action require proof of causation. *See Rosencrans v. Dover Images, Ltd.*, 192 Cal. App. 4th 1072, 1082 (Ct. App. 2011) (gross negligence); *Carlsen v. Koivumaki*, 227 Cal. App. 4th 879, 895 (Ct. App. 2014) (willful misconduct); *Vu v. California Commerce Club, Inc.*, 58 Cal. App. 4th 229, 233 (Ct. App. 1997) (breach of contract).

that this was the reason the CPUC has approved PSPS. Indeed, this Court rejected the very argument made by Claimants:

> the proximate causal connection between the harms suffered by Plaintiff during the blackouts (loss of habitability of his dwelling, loss of cell phone connectivity) and the conditions pre-dating those blackouts is too remote to defeat the MTD, given that such PSPS events can be necessitated by high winds even when equipment is adequately maintained.

*In re PG&E Corp.*, 2020 WL 1539254, at *4. Claimants' causation arguments here are even more remote than the plaintiff's in *Gantner*. As described in Section III.B above, Claimants here do not even claim damages arising out of PSPS events, like loss of habitability, and instead merely request to be reimbursed for generators they bought to prevent the power to their residences from being interrupted for any reason.

   **D. The Claims Should Be Dismissed Because Tariff Rule 14 Authorizes PG&E To Interrupt Service Without Liability When In PG&E's Sole Opinion It Is Necessary for Public Safety.**

Even if the Court finds that the Claims are not preempted and that Claimants have sufficiently alleged damages and causation, the Claims should be disallowed because they fail as a matter of law.

Both Claimants are PG&E customers. PG&E's obligations to its customers are governed by its tariff rules. Utility tariffs are filed with and reviewed by the CPUC and "have the force and effect of law". *Dollar-A-Day Rent-A-Car Sys. v. Pac. Tel. & Tel. Co.*, 26 Cal. App. 3d 454, 457 (1972); *Duggal v. G.E. Capital Commc'ns. Servs.*, 81 Cal. App. 4th 81, 82 (2000) ("filed tariffs are the equivalent of federal regulations which have the force of law"); *Dyke Water Co. v. Public Utilities Comm'n*, 56 Cal. 2d 105, 107 (1961) (noting that, when a tariff rule is published and filed with the CPUC, it has "the force and effect of a statute, and any deviations therefrom are unlawful unless authorized by the commission").

A plain reading of PG&E's Tariff Rule 14 provides that the decision to shut off a customer's power cannot trigger liability when, in PG&E's "sole opinion", it is necessary for public

safety.[6] Paragraph 4 of Electric Rule No. 14 provides that PG&E "maintains the right to interrupt its service deliveries, without liability to the Customers or electric service providers (ESPs) affected, when, *in PG&E's sole opinion*, such interruption is necessary for . . . [s]afety of a customer, a PG&E employee, or the public at large". PG&E Electric Rule No. 14, CPUC Sheet No. 19762-E; Case No. 19-30088; Adv. Pro. No. 19-03061 (Dkt. 8-18) (emphasis added).

The Claims here are barred by paragraph 4 of Tariff Rule 14. Claimants do not dispute that PG&E initiated its PSPS events for public safety. And there is no allegation that PG&E did not hold the view that the shutoffs were necessary for public safety. Accordingly, the Claims fail to allege facts that could subject PG&E to liability to its Customers for a service disruption.

## IV. CONCLUSION

For the foregoing reasons, PG&E respectfully requests that the Court disallow the Claims.

Dated: April 23, 2021

                         **CRAVATH, SWAINE & MOORE LLP**
                         **KELLER BENVENUTTI KIM LLP**

                         /s/ *Omid H. Nasab*
                         Omid H. Nasab

                         *Attorneys for Debtors and Reorganized Debtors*

---

[6] In a case for damages arising from a power outage, a California court granted summary judgment in PG&E's favor based on a plain reading of the language of paragraph 4 of Tariff Rule 14. *Melvin L. Cockhren II v. Pac. Gas & Elec. Co., et al.*, No. CGC-13-529137 (Cal. Super. Ct. Aug. 27, 2014). For other cases analyzing Tariff Rule 14, *see Gantner* Mot. to Dismiss at 19 n.12; Debtors' Reply in Supp. of Their Mot. to Dismiss and Mot. to Strike, Case No. 19-30088; Adv. Pro. No. 19-03061 (Dkt. 18), at 10-12.