1        UNITED STATES BANKRUPTCY COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3                  -oOo-

4   In Re:                          ) Case No. 19-30088
                                    ) Chapter 11
5   PG&E CORPORATION AND PACIFIC    )
    GAS AND ELECTRIC COMPANY, ET    ) San Francisco, California
6   AL.                             ) Wednesday, April 28, 2021
                                    ) 10:00 AM
7                  Debtors.         )
    _____    ) JOINT MOTION OF FIRE VICTIM
8                                     TRUSTEE AND REORGANIZED
                                      DEBTORS REGARDING EXCHANGE
9                                     TRANSACTION
                                      IN SUPPORT OF A GRANTOR TRUST
10                                    TAX ELECTION FILED BY JOHN
                                      TROTTER [10497]
11
                  TRANSCRIPT OF PROCEEDINGS
12        BEFORE THE HONORABLE DENNIS MONTALI
             UNITED STATES BANKRUPTCY JUDGE
13

14
    APPEARANCES (All present by video or telephone):
15
    For Fire Victim Trust:      DAVID J. MOLTON, ESQ.
16                              Brown Rudnick LLP
                                Seven Times Square
17                              New York, NY 10036
                                (212)209-4800
18
    For Reorganized Debtors:    JESSICA LIOU, ESQ.
19                              Weil, Gotshal & Manges LLP
                                767 Fifth Avenue
20                              New York, NY 10153
                                (212)310-8000
21
    Also Present:               Theresa McDonald
22                              Camp Fire Survivor

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18    Court Recorder:                LORENA PARADA/ANKEY THOMAS
                                    United States Bankruptcy
                                    Court
19                                  450 Golden Gate Avenue
                                    San Francisco, CA 94102

20

21    Transcriber:                  EMILY HOWARD
                                    eScribers, LLC
22                                  7227 N. 16th Street
                                    Suite #207
23                                  Phoenix, AZ 85020
                                    (973) 406-2250

24

25    Proceedings recorded by electronic sound recording;
      transcript provided by transcription service.

PG&E Corporation, et al.

1

2                                    -oOo-

3       (Call to order of the Court.)

4          THE CLERK:  Court is now in session, The Honorable

5   Dennis Montali presiding.  Calling the matter of PG&E

6   Corporation.

7          THE COURT:  Hi, good morning, everyone.  This is Judge

8   Montali.  I see a number of parties on the line.  I'll just

9   remind you to identify yourself when you wish to be heard.  And

10  perhaps if you can mute your microphones when you're not

11  hearing -- not being -- not intending to speak.

12         I see Mr. Molton on the list.  Mr. Molton, are you

13  appearing for the trustee this morning?

14         MR. MOLTON:  Good morning, Judge.  Yes, it's David

15  Molton.  I hope you can hear me, Your Honor.

16         THE COURT:  I can hear you fine.

17         And Mr. Slack, are you appearing for the debtor today

18  or just monitoring?

19         MS. LIOU:  Your Honor, it's Jessica Liou, from Weil,

20  Gotshal & Manges.  I'm appearing for the reorganized debtors.

21         THE COURT:  Okay.  Thank you, Ms. Liou.

22         Mr. Molton, Ms. McDonald is on the call and she is the

23  only party who objected, as you know.  And I'll call on her in

24  a moment.  I have a question for you.  In looking at the reply

25  that you filed on the 23rd, on the bottom of page 4, you

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1  indicate that the trustee will publicly file with the Court the

2  exchange transaction agreement and execute it.  And you will

3  also --  you will do something with the results of the

4  California fairness hearing.  Could you bring us all up to date

5  on both of those things?  And as to the California fairness

6  hearing, just take a moment to explain what that is, because

7  that might have been lost in the papers.

8         MR. MOLTON:  Yes, Judge.  I will.  My understanding on

9  the definitive agreement, Judge, it is being worked on.  And

10  we're expecting to receive a draft from my friends at Cravath

11  and Weil, Gotshal shortly.  And it's our intention, Judge, to

12  move with alacrity to get a final agreement negotiated,

13  executed by the agreement parties.  And as we've represented in

14  our reply, not only file it on the docket of this Court, as the

15  executed final agreement, but also publish it on our facing

16  public website of the Fire Victim Trust.

17         Judge, with respect to the California Fairness

18  Hearing, that's a proceeding that is really initiated by the

19  reorganized debtor.  We are supporting that proceeding and it

20  may be better able that the reorganized debtor can address

21  why -- what that hearing is about, what they're asking for, and

22  basically, the scheduling of that.  My understanding, Judge, is

23  we're looking towards a mid-May date.  But perhaps Ms. Liou can

24  better elucidate on that hearing.

25         THE COURT:  Okay, yes.

PG&E Corporation, et al.

1    MS. LIOU:  Sure.  Your Honor --

2    THE COURT:  Yeah, just briefly, Ms. Liou.  I don't

3    need a huge amount.  Just a summary, if you would, please.

4    Thank you.

5    MS. LIOU:  Sure, sure.  No problem, Your Honor.  So

6    the California fairness hearing is scheduled for mid-May, on

7    May 18th, in front of the California Department of Financial

8    Protection and Innovation at 1 p.m. Pacific Time.  And the

9    purpose of the hearing is for PG&E to obtain a fairness

10   determination as to the trust that the transactions described

11   herein and the equity being issued, pursuant to this exchange

12   terms fee transaction is going to be exempt from securities

13   registration.  And that will allow the stock to be freely

14   tradable, which is obviously an advantage to the Fire Victims

15   Trust.

16   THE COURT:  And that's open to the public, also; is

17   that right?

18   MS. LIOU:  Correct.  That is.

19   THE COURT:  And say again the date?  1 p.m. on what

20   day?  The 16th?

21   MS. LIOU:  May 18th, 1-8.

22   THE COURT:  18th, okay.  Thank you.

23   Ms. McDonald, you are on the line.  And I -- it was

24   confirmed that you wish to be heard today.  I did read your

25   opposition and I hope you have read the trustee's reply.  But

escribers

of 31

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1  go ahead and tell me if you want to add anything further today.

2      MS. MCDONALD:  Good morning, Your Honor.  This is

3  Theresa McDonald, 2018 Camp Fire survivor.  The first thing

4  that I have to do is raise the issue of jurisdiction and venue.

5  There's no question that the exchange transaction agreement is

6  a direct result of the bankruptcy, and no question that that

7  bankruptcy court has the authority to hear this argument.

8      The counsel for the Fire Victim trustee and the

9  reorganized debtors stated that this a core proceeding.  They

10 are wrong.  This motion has major implications for the

11 treatment of billions of dollars of trust funds that will be

12 used to pay personal and wrongful death claims.  28 USC section

13 157(b)(2), core proceedings include, but are not limited to,

14 section O, other proceedings affecting the liquidation of

15 assets of the estate or the adjustment of debtor-creditor or

16 the security holder relationship, except personal injury tort

17 or wrongful death claims.

18     Also, 28 USC section 157(c)(1), a bankruptcy judge may

19 hear a proceeding that is not a core proceeding but that is

20 otherwise related to a case under title 11.  In such

21 proceedings, the bankruptcy judge shall permit proposed

22 findings of fact and conclusions of law to the district court.

23 And any final order or judgment shall be entered by the

24 district judge after considering the bankruptcy judge's

25 proposed findings and conclusions and after reviewing de novo

PG&E Corporation, et al.

1  those matters to which any party has timely and specifically

2  objected.

3        Case 20.17366 (phonetic) is currently before the Ninth

4  Circuit Court of Appeals, challenging the bankruptcy court's

5  order confirming the joint Chapter 11 reorganization plan on

6  the basis that the law required such an order be issued by the

7  district court.

8        If this Court should decide that it wishes to proceed

9  with this matter, it must at least limit itself to submitting

10  its findings and conclusions to the district court and the

11  district court must review and enter any final order on the

12  matter.  All orders relating to this matter should be stayed,

13  pending conclusion of all appellate reviews of the original

14  order, confirming the joint Chapter 11 reorganization plan.

15        I expect opposing counsel to object to that, because

16  there are tax implications here.  But taxes can be --

17        THE COURT:  Ms. McDonald, let me -- Ms. McDonald,

18  you're producing issues that you didn't put in your written

19  proposition.  Why don't you tell me what you want me to do

20  today?  Are you -- are you urging me not to approve this

21  transaction today?  Or what is it you want me to do?

22        MS. MCDONALD:  I want you to not approve the -- to not

23  approve a transaction that doesn't even exist yet.  Mr. Molton

24  just told you that they are still working on a draft agreement.

25  How can the Court be expected to approve the trustee to enter

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    into an agreement without seeing the terms of that agreement?

2    We saw what that agreement --

3            THE COURT:  Okay.  So what you want me -- excuse me.

4    You want me to disapprove it, at least today, because there's

5    no -- there's nothing for me or you to see that's final?

6    That's your position, right?

7            MS. MCDONALD:  That's correct.

8            THE COURT:  Okay.

9            MS. MCDONALD:  I don't see how the Court can act on a

10   document that doesn't exist yet.

11           THE COURT:  Okay.  Anything further?

12           MS. MCDONALD:  I would like to see -- and I believe

13   the trustee must have, if he's done his fiduciary duty, must

14   have some information regarding the costs, because there really

15   are no -- there's no information in any -- in the motion

16   regarding what costs are involved for the trust if it -- if

17   this transaction agreement is approved.  There has to be --

18           THE COURT:  And you read that -- I believe the

19   trustee's counsel's reply addresses the fact that there will be

20   costs.  Anybody who's been around any legal proceeding knows

21   there will be costs.  But Mr. -- Justice Trotter, in his

22   judgment, has opined, and his lawyers had said for him why he

23   believed that's an appropriate cost, without quantifying it.

24   I'll agree with you.  You and I both don't know -- we do not

25   know the dollar amounts.  But the trustee has stated in his

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1 judgment that this is a procedure that is for the benefit of

2 the victims and it strikes me that if I -- if I want to

3 disregard his advice, then the consequences may be to you, the

4 fire victim and other fire victims, far more adverse than

5 trusting the judgment of not only Justice Trotter -- again, I

6 don't want to personalize it -- all the professionals that have

7 advised him on that this is the right thing to do for the fire

8 victims.

9    So with that in mind, again, if there's anything else

10 you want me to consider, please say so.  And then I'll listen

11 to a response from the trustee's counsel and the debtors'

12 counsel.

13    MS. MCDONALD:  What's not certain from the motion or

14 from the trustee's reply is whether the tax savings to the

15 trust, the potential tax savings to the trust, are actual

16 savings, or is it simply deferring those taxes to the trust

17 beneficiaries?  If the trust -- it's not certain and I can't

18 tell, because I can't see the trust documents.  They're sealed.

19 I don't have access to them.  I can't tell whether if the trust

20 pays the taxes, does that mean that I, then, receive post-tax

21 dollars as my settlement and I don't owe taxes on that

22 settlement?  Or is it -- if the trust does not pay the taxes,

23 then I receive pre-tax dollars and I'm liable for the taxes?

24 So is it just a deferment of those taxes?  It's not clear

25 from -- without seeing the documents --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    THE COURT:  Mr. Molton, can you -- can -- well, okay.

2  Mr. Molton, can you respond to that point?

3    MR. MOLTON:  Yes, Judge.  I was just getting myself

4  off mute.  I don't think, Judge -- I'm not a tax lawyer, but I

5  think I -- I know enough to say and to -- after talking to our

6  tax people, that there's no connection between the trust tax

7  obligation for gains with respect to assets it holds and may

8  sell, such as the stock and the characterization, or the tax

9  that individual claimants may or may not have to pay in

10  connection with their distributions.

11    I think each one is a different issue that stands

12  differently.  Needless to say, the lawyers for the claimants,

13  who likely will be receiving their own tax assistance with

14  respect to the characterization of the payments that come out

15  of the trust, that's a separate issue, unaffected, as I

16  understand it, from whether the trust, as a QSF, a qualified

17  settlement trust, will have to pay upwards, Your Honor, of

18  45.84 percent on gains from the sale of stock from the nine-

19  dollar basis that we receive the stock that -- that pertained

20  to the stock when we received it last July, or the no tax on

21  gains that the trust will get the benefit of -- benefitting

22  hugely the fire victims to the tune of potentially hundreds of

23  millions of dollars, by allowing the parties here, PG&E, as

24  reorganized, and the Fire Victim Trust to pursue and continue

25  along with the exchange agreement, as proposed to Your Honor.

PG&E Corporation, et al.

1    It's my understanding that those are separate, standalone

2    issues and one has nothing to do with the other.

3        THE COURT:  Okay.  Ms. Liou, can you confirm that from

4    the debtors' point of view?

5        MS. LIOU:  Your Honor, I think that's consistent with

6    our understanding, but obviously this is an issue I think that

7    the trust is going to -- we're going to have to defer to the

8    trust on that.

9        THE COURT:  Well, Ms. McDonald, I wish I could give

10    you the perfect answer.  Mr. Molton's explanation sounds right

11    to me, but sounds right is not the kind of certainty that you'd

12    like.  My instincts, from my knowledge and reading explanation

13    of the grantor trust and how these things work between the two

14    entities, the reorganized debtors on the one hand, and this

15    creature that has been created, called the Fire Victims Trust,

16    represented through the trustee, they are swapping their equity

17    positions and its neutral.

18        It's not -- there's no tax consequences when that

19    happens.  That doesn't sound to me at all like that means if

20    you're entitled to X-dollars as a fire victim, that that X

21    figure of X, whatever your number is, will somehow be diluted

22    and you'll be hit with some kind of a tax consequence.  It

23    doesn't sound at all credible to me, or believable.  But I,

24    too, don't have the knowledge to give it to you.  So it's a

25    fair question.  I don't think -- the fact that I can't answer

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    precisely and Mr. Molton can't precisely, it's still -- I'm

2    still persuaded -- and I understand your position -- but I'm

3    persuaded that the consequences of saying no, even no for a

4    little while, so that the trustee and his counsel can make

5    available the final documents, are greater than saying yes and

6    letting them do it.

7         I have to assume that if I say yes today, Justice

8    Trotter and his professionals will do what they think is best

9    for the trust.  That is their beneficiaries.  And that is their

10   job.  Mr. -- Justice Trotter exists as a creature of this

11   estate and its capacity for the benefit of the fire victims.

12   And in my mind, he's made a perfectly adequate explanation that

13   he's -- that approval of this transaction today is consistent

14   with his execution of those duties.  So anything further from

15   you, Ms. McDonald?

16        MS. MCDONALD:  Well, Your Honor, I would remind the

17   Court that in December of 2019, when you were looking at the

18   subrogation RSA, part of that -- part of the terms that you

19   were presented and assured would be part of the agreement

20   stated that the agreement was being based on the premise that

21   the fire victims would be made whole.  The fire victim trustee

22   has assured us that the fire victims are not going to be made

23   whole.

24        But any attempt to -- any mention that the subrogation

25   agreement should be modified in any way, shape, or form, has

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1   been met with outrage.  So this isn't the first time you've

2   been assured it will be okay.  We're going to -- this is what

3   we're going to do.  And then it turns out that it's not what

4   happens.  And that's what I'm afraid of, Your Honor.  I don't

5   see the -- the agreement cannot possibly go into effect until

6   it has been written and executed.  I don't see why they can't

7   write the agreement, present it to Your Honor and to the

8   trustee, and to the beneficiaries, to look at for two days and

9   then get permission to sign it or not.

10          Can you at least, if you're going to approve this

11  motion, require that the final document be presented to the

12  Court for the Court to have a final chance to review it and

13  approve it?

14          THE COURT:  Mr. Molton, it wouldn't become effective

15  under any circumstances, until the fairness hearing, right?

16  And even if the bankruptcy court approves it, if the California

17  authorities don't approve it, it's not going to happen.  So

18  it's got to be final by May 18th, doesn't it?

19          MR. MOLTON:  Judge, again, I'm not -- I'm going to

20  leave it to Ms. Liou to describe what is -- or if not required

21  for the fairness hearing, but from our perspective, Judge, you

22  know, it's important not to delay, you know, the approval of

23  this agreement in any particular or substantial way.  You know,

24  it --

25          THE COURT:  What would happen?  What would happen if I

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1  tentatively approve it, subject to the final airing of it on

2  the public record?

3          MR. MOLTON:  Judge --

4          THE COURT:  What can happen if it goes off the track

5  today, if I -- not if I -- I understand if I disapprove it.

6  But if I simply take Ms. McDonald's suggestion and defer it

7  until it has been freshened with transparency, if you will,

8  what's the downside?

9          MR. MOLTON:  Well, Judge, the downside is that we

10  will -- the trustee and his team, including all the

11  professionals that are dealing with the stock issues, are

12  really assessing the market in terms of understanding how best

13  to effectuate in accordance with his fiduciary duty, informed

14  and prudent monetization of that stock.

15          THE COURT:  Okay, no, I got that.  I got that.

16          MR. MOLTON:  Yeah, clearly --

17          THE COURT:  But I was asking a different question.  So

18  let's suppose, then, I take your recommendation today and I say

19  motion granted, objection overruled.  And then on May 18th, the

20  California agency approves it, then what happens?  And then

21  you're saying that she and I have no say in the matter at all.

22  But why?  Why not?

23          In other words, what if I called in sick today and

24  said the hearing is continued until May 19th, because that's

25  the day after the May 18th hearing?  What would be different?

Case: 19-30088   Doc# 10597   Filed: 04/29/21   Entered: 04/29/21 12:20:57   Page 14
of 31
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    MR. MOLTON:  Judge --

2    THE COURT:  You'd still be doing the drafting.  The

3  lawyers would still be doing the final details.  But you

4  haven't -- I haven't seen that -- much like other events --

5  remember, we all went up to confirmation and certain things had

6  to happen.  We had -- a whole number of stars had to align and

7  the bankruptcy court approval was one of them.  Well, who says

8  that the bankruptcy court approval has to come first, before

9  the state agency approval?

10    MR. MOLTON:  Judge, I mean --

11    THE COURT:  If you have a better answer, help us here.

12    MR. MOLTON:  Yeah, I --

13    THE COURT:  Yes, sir, go ahead.

14    MR. MOLTON:  I'll let Ms. Liou answer about the -- the

15  fairness hearing.  But from our perspective, Judge, if Your

16  Honor will approve our motion and if Your Honor wants to review

17  the final document to insure that it is consistent, as

18  represented by Justice Trotter, retired, with the terms of the

19  term sheet, Judge, I gather that's fine and we would have no

20  objection to that.

21    We just need to make sure that we're not going to be

22  fighting the same battle at the later point that we're hearing

23  today, that it be a relatively streamlined process that -- if

24  Your Honor wants to ensure that the agreement is consistent

25  with the term sheet, I'm sure that that's something that we can

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    agree to.  But again, what -- we are hesitant, and what you're

2    hearing, my hesitancy, is to have a fully noticed, full-boat

3    hearing.  Again, that would invite objections.

4         Clearly, the faster we can get this done, the better

5    that the trust professionals, who are dedicated to monetizing

6    stock for the benefit of the fire victims, can get on their job

7    of assessing how, when, where, and the procedures for that.  So

8    that would be my response, Judge.

9         THE COURT:  You don't need to worry about a full-nosed

10   pre-noticed hearing.  There's only one party who has objected.

11   And that one party has said, let me and she see it.

12        Ms. Liou, can you weigh in on this?  And tell me what

13   the downside of doing this in two steps would be?

14        MS. LIOU:  Yeah.  So Your Honor, first let me answer,

15   I think, the pointed question you had about the impact on the

16   hearing -- the California hearing.  My understanding, from

17   speaking with the security counsel for the reorganized debtors

18   is that that process can continue to move forward and is not

19   dependent on what happens today.  And so, ideally, I think, the

20   sequencing of events was that as soon as we got a determination

21   from that California fairness hearing, we would be able to move

22   forward ASAP with getting the documents executed and the trust

23   would have the ability and the flexibility to immediately start

24   selling stock to the extent that they wanted that flexibility.

25        So that was the desire that you're hearing from Mr.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1   Molton.  Obviously, we fully support the trust desire to have

2   maximum flexibility to sell the stock and take advantage of any

3   favorable market movement, because that, clearly inures to the

4   ultimately benefit of the fire victims.  And we support and

5   share their concern with any delay in the process.

6          THE COURT:  Well, is it correct, Ms. Liou, that --

7   again, I got the agency mixed up.  I thought it was -- it's not

8   the PUC.  It's the California -- the equivalent of what used to

9   be called the Department of Corporations, right?

10         MS. LIOU:  Right.

11         THE COURT:  Okay.

12         MS. LIOU:  Right.  It's not a very -- it's got a very

13  unusual, fancy name, now.

14         THE COURT:  I know.  I'm going to call it --

15         MS. LIOU:  The Department of Financial Protection and

16  Innovation.

17         THE COURT:  A name like that, Financial Protection and

18  Innovation.  But the point is, the Department of Financial

19  Protection and Innovation will have to have a final document

20  before it, right?  I mean, is that correct?  Or is it likely

21  that the -- the argument then will be, well, we're still

22  drafting it there, too?

23         MS. LIOU:  No, that -- that's not accurate, Your

24  Honor.  Our understanding is that the California Department of

25  Financial Protection and Innovation is actually willing to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    proceed on the basis of the term sheet.

2        THE COURT:  Oh, on a term sheet also?  Okay.  All

3    right.  We've had a number of callers log in.  Does anyone on

4    the call wish to be heard on this discrete question of whether

5    I should be approving this today or deferring it or believe I

6    shouldn't be approving it at all?  Does anyone want to be

7    heard?  State your name and your representation if you want to

8    be heard.

9        Okay.  No one wishes to be heard.

10        Ms. McDonald, I have to trust the experts.  I don't

11    differ and don't quarrel with your point.  And you've made it

12    before and I respect you for being persistent about it.

13    They're legitimate points.  You have a lot invested in this,

14    and most of all, your personal losses.

15        But I can't second-guess these experts.  You're

16    entitled to see it be public.  But when this vast number of

17    professionals working on what is a very complicated process

18    tell me that the goal here is to be able to get to  market and

19    let the trustee go through this almost incomprehensible

20    transaction, and needs to get at least two approvals, one from

21    this Court, one from the department with the long name,

22    Financial Protection and Innovation, if I were so-moved or

23    inclined to say, okay, come back in June and let me see the

24    final, and then blow the deal, I couldn't sleep at night if the

25    consequences were to take money out of the pockets of victims,

PG&E Corporation, et al.

1  including you and all the other thousands of victims by

2  jeopardizing what this large number of people who are highly

3  qualified to deal with these issues are doing.

4          I have to trust them.  I'm just going to finish my

5  point.  I have to trust them.  I'm supposed to know what I'm

6  doing.  I have to trust all of them, accountants, lawyers,

7  investment advisors, for what they are doing.  You wanted to

8  say something else, Ms. McDonald?

9          MS. MCDONALD:  You said you wouldn't be able to sleep

10  at night if you thought that you were costing the fire victims

11  money.  But that's exactly the risk that you're taking.  There

12  is -- we -- there is no actual information regarding the cost

13  of this --

14          THE COURT:  That's true.  I understand that.

15          MS. MCDONALD:  (Indiscernible.)

16          THE COURT:  I understand that.

17          MS. MCDONALD:  And you have to remember that any tax

18  savings are going to be offset -- any tax cost is offset by the

19  cost of actually getting those shares to market.  I have no

20  idea what that cost is to date, because I haven't been allowed

21  to see any financial information from the trust yet.

22  Apparently that's going to be available on April the 30th.  I

23  can't see their five-year budget because -- I -- I just want

24  a -- I'm an accountant.  I need to see a number.

25          And what happens -- since -- since November, the price

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1  of the stock has fallen drastically.  It was over twelve

2  dollars.  This morning, it was $10.65.  I'm not questioning the

3  trustee's decision not to sell part of the stock in November.

4  I'm not questioning that.  But what I'm saying is that stock

5  price can continue to fall.  I -- if I am successful in my case

6  at the Ninth Circuit, I expect it to tank.  And then what

7  happens?  Because the cost of this creature they're creating,

8  this exchange transaction, will still be there, even if the

9  price of the stock drops to $7.50 a share.  That's what I'm

10  afraid of, Your Honor.

11        THE COURT:  Well, Ms. McDonald, I'm going to go back

12  to say that if Justice Trotter makes a judgment call and this

13  thing tanks because he was wrong in thinking that the cost is

14  greater than the benefit, he might have more trouble sleeping

15  at night than I.  But I have to trust him and his

16  professionals.  And it's like anything else.  If it -- when

17  someone says we have to do this evolution, whether it's a sale

18  or a stock transfer or a merger, but points out that there are

19  transaction costs, I have to trust the experts to say the

20  transaction costs are not going to exceed the benefit.

21        So I understand I didn't know until today that -- or

22  recall that you were an accountant.  But accountants, like

23  bankruptcy judges, have to sometimes take into account a cost-

24  benefit analysis and they have to trust the experts who know

25  better.  And I'm not going to second-guess my judgment.  I

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1  wish, for your sake, even the one person who's objected, that

2  it weren't so mysterious and weren't so opaque at this point.

3  But again, I'll repeat what I think I've made clear.  The cost

4  to me, from my point of view, to second-guess the experts, is

5  worse than not.

6          So I'm going to overrule your objection.  But thank

7  you for them.  I'm going to make a determination.  First of

8  all, I will tell you that the notion that bankruptcy judges

9  have to make findings and conclusions that are sometimes

10 misunderstood -- first of all, I differ with you.  I believe

11 this is a core matter and I have the authority to carry out the

12 recommendations relevant to implementation of a component of

13 the plan.  But if it's a non-core matter, if someone wishes to

14 seek review of my decision, that is their right.  But we have a

15 procedure in the bankruptcy court to say that if we believe

16 it's core, we say it is.  If we're wrong, that it's non-core,

17 that there is a way to deal with it in any event.

18         And findings and conclusions are typically appropriate

19 when there are disputed facts at issue.  And there are no facts

20 at issue here.  The only -- the unknowns are what you don't

21 know.  But there are no facts for me to decide.  I know that

22 Justice Trotter has the authority to do this.  I know that the

23 reorganized company has the authority to do this.  All I don't

24 know is that they can tell me each and every term and

25 condition.  But that doesn't mean it's a disputed fact.  It

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1  just means it's one of the unknowns.

2          So I do not believe that I lack the authority to issue

3  the order.  And if I issue the order and a court, on appeal,

4  determines that I had to -- I couldn't enter the final order,

5  then they can make the decision and it's the same consequence.

6  So it doesn't really change the outcome.

7          And if you do choose to appeal my decision, you can

8  urge the court on appeal to determine that I erred in my

9  determination that this is a core matter.  And similarly, you

10  reminded me that you still have something pending before the

11  Ninth Circuit.  I'm, frankly, not aware of it, because I don't

12  need to be aware of it.  But at the moment, nothing at the

13  Ninth Circuit or the district court has stayed the

14  implementation of any of the orders that I've issued that

15  pertain to the PG&E case generally or to this issue,

16  specifically.

17          So I'm satisfied.  And, from my review of the joint

18  motion by the reorganized company on the fire trustee, coupled

19  with the summary, coupled with the reply that -- whereas, and

20  Justice Trotter, I think, acknowledged, both in his letter to

21  the fire victims and in the argument submitted by his counsel,

22  acknowledges that you have legitimate questions, some of which

23  are well-beyond the scope of today's inquiry.  But for other

24  reasons, he's not able to give you the specific answers.

25          And I, at a personal level, to the extent that any

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1  fire victim, and particularly you, as a proactive one, are

2  frustrated because you can't get information, I can't solve

3  that problem.  I can hope that you get the information that

4  you're entitled to.  So I'm going to conclude those thoughts

5  and say that I'm going to grant today's motion and I will sign

6  an order authorizing Justice Trotter as fire victim trustee and

7  the reorganized company to execute and carry out the

8  transaction.

9          And I will direct that as soon as practical.  And I'll

10  let them make the call on that, that they make the final

11  document available through the Court's docket and through the

12  website to educate the fire victim trustees.

13          So with that, I'm going to thank Mr. Liou, Mr. Molton,

14  and Ms. McDonald for your participation today and conclude the

15  hearing.

16          MS. MCDONALD:  Well, thank you for your time, Your

17  Honor.

18          THE COURT:  Thank you for yours, too.  Thank you for

19  everyone's time.

20          MR. MOLTON:  Thank you, Your Honor.

21          THE COURT:  We'll conclude the hearing.

22          MS. LIOU:  Thank you, Your Honor.  Bye-bye.

23      (Whereupon these proceedings were concluded at 10:36 AM)

24

25

1                           I N D E X

2      RULINGS:                                        PAGE  LINE

3      Exchange Transaction in Support of a Grantor       23     4

4      Trust Tax Election Motion Granted

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case: 19-30088    Doc# 10597    Filed: 04/29/21    Entered: 04/29/21 12:20:57    Page 24
(973) 406-2250 | operations@escribers.net | www.escribers.net
of 31

1              C E R T I F I C A T I O N

2

3    I, Emily Howard, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ EMILY HOWARD, CDLT-219

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  April 29, 2021

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net
of 31

PG&E CORPORATION AND PACIFIC
GAS AND ELECTRIC COMPANY, et al.

Chapter 11

Case No. 19-30088
April 28, 2021

## $

**$10.65 (1)**
20:2
**$7.50 (1)**
20:9

## A

**ability (1)**
16:23
**able (5)**
4:20;16:21;18:18;
19:9;22:24
**access (1)**
9:19
**accordance (1)**
14:13
**account (1)**
20:23
**accountant (2)**
19:24;20:22
**accountants (2)**
19:6;20:22
**accurate (1)**
17:23
**acknowledged (1)**
22:20
**acknowledges (1)**
22:22
**act (1)**
8:9
**actual (2)**
9:15;19:12
**actually (2)**
17:25;19:19
**add (1)**
6:1
**address (1)**
4:20
**addresses (1)**
8:19
**adequate (1)**
12:12
**adjustment (1)**
6:15
**advantage (2)**
5:14;17:2
**adverse (1)**
9:4
**advice (1)**
9:3
**advised (1)**
9:7
**advisors (1)**
19:7
**affecting (1)**
6:14
**afraid (2)**
13:4;20:10
**again (8)**
5:19;9:5;9;13:19;

16:1;3;17:7;21:3
**agency (3)**
14:20;15:9;17:7
**agree (2)**
8:24;16:1
**agreement (19)**
4:2,9,12,13,15;6:5;
7:24;8:1,1,2,17;10:25;
12:19,20,25;13:5,7,23;
15:24
**ahead (2)**
6:1;15:13
**airing (1)**
14:1
**alacrity (1)**
4:12
**align (1)**
15:6
**allow (1)**
5:13
**allowed (1)**
19:20
**allowing (1)**
10:23
**almost (1)**
18:19
**along (1)**
10:25
**amount (1)**
5:3
**amounts (1)**
8:25
**analysis (1)**
20:24
**Apparently (1)**
19:22
**appeal (3)**
22:3,7,8
**Appeals (1)**
7:4
**appearing (3)**
3:13,17,20
**appellate (1)**
7:13
**appropriate (2)**
8:23;21:18
**approval (5)**
12:13;13:22;15:7,8,9
**approvals (1)**
18:20
**approve (9)**
7:20,22,23,25;13:10,
13,17;14:1;15:16
**approved (1)**
8:17
**approves (2)**
13:16;14:20
**approving (2)**
18:5,6
**APRIL (2)**
3:1;19:22
**argument (3)**
6:7;17:21;22:21

**around (1)**
8:20
**ASAP (1)**
16:22
**assessing (2)**
14:12;16:7
**assets (2)**
6:15;10:7
**assistance (1)**
10:13
**assume (1)**
12:7
**assured (3)**
12:19,22;13:2
**attempt (1)**
12:24
**authorities (1)**
13:17
**authority (5)**
6:7;21:11,22,23;22:2
**authorizing (1)**
23:6
**available (3)**
12:5;19:22;23:11
**aware (2)**
22:11,12

## B

**back (2)**
18:23;20:11
**bankruptcy (12)**
6:6,7,18,21,24;7:4;
13:16;15:7,8;20:23;
21:8,15
**based (1)**
12:20
**basically (1)**
4:22
**basis (3)**
7:6;10:19;18:1
**battle (1)**
15:22
**become (1)**
13:14
**believable (1)**
11:23
**beneficiaries (3)**
9:17;12:9;13:8
**benefit (8)**
9:1;10:21;12:11;
16:6;17:4;20:14,20,24
**benefitting (1)**
10:21
**best (2)**
12:8;14:12
**better (5)**
4:20,24;15:11;16:4;
20:25
**billions (1)**
6:11
**blow (1)**
18:24

**both (3)**
4:5;8:24;22:20
**bottom (1)**
3:25
**briefly (1)**
5:2
**bring (1)**
4:4
**budget (1)**
19:23
**Bye-bye (1)**
23:22

## C

**CALIFORNIA (12)**
3:1;4:4,5,17;5:6,7;
13:16;14:20;16:16,21;
17:8,24
**Call (7)**
3:3,22,23;17:14;
18:4;20:12;23:10
**called (3)**
11:15;14:23;17:9
**callers (1)**
18:3
**Calling (1)**
3:5
**Camp (1)**
6:3
**can (25)**
3:10,15,16;4:20,23;
7:16,25;8:9;10:1,1,2;
11:3;12:4;13:10;14:4;
15:25;16:4,6,12,18;
20:5;21:24;22:5,7;23:3
**capacity (1)**
12:11
**carry (2)**
21:11;23:7
**case (4)**
6:20;7:3;20:5;22:15
**certain (3)**
9:13,17;15:5
**certainty (1)**
11:11
**challenging (1)**
7:4
**chance (1)**
13:12
**change (1)**
22:6
**Chapter (2)**
7:5,14
**characterization (2)**
10:8,14
**choose (1)**
22:7
**Circuit (4)**
7:4;20:6;22:11,13
**circumstances (1)**
13:15
**claimants (2)**

10:9,12
**claims (2)**
6:12,17
**clear (1)**
9:24;21:3
**clearly (3)**
14:16;16:4;17:3
**CLERK (1)**
3:4
**company (3)**
21:23;22:18;23:7
**complicated (1)**
18:17
**component (1)**
21:12
**concern (1)**
17:5
**conclude (3)**
23:4,14,21
**concluded (1)**
23:23
**conclusion (1)**
7:13
**conclusions (5)**
6:22,25;7:10;21:9,18
**condition (1)**
21:25
**confirm (1)**
11:3
**confirmation (1)**
15:5
**confirmed (1)**
5:24
**confirming (2)**
7:5,14
**connection (2)**
10:6,10
**consequence (2)**
11:22;22:5
**consequences (4)**
9:3;11:18;12:3;
18:25
**consider (1)**
9:10
**considering (1)**
6:24
**consistent (4)**
11:5;12:13;15:17,24
**continue (3)**
10:24;16:18;20:5
**continued (1)**
14:24
**core (6)**
6:9,13,19;21:11,16;
22:9
**Corporation (1)**
3:6
**Corporations (1)**
17:9
**cost (8)**
8:23;19:12,18,19,20;
20:7,13;21:3
**cost- (1)**

Case: 19-30088   Doc# 10597   Filed: 04/29/21   Entered: 04/29/21 12:20:57   Page 26
of 31

PG&E CORPORATION AND PACIFIC
GAS AND ELECTRIC COMPANY, et al.

Chapter 11

Case No. 19-30088
April 28, 2021

20:23
**costing (1)**
　19:10
**costs (6)**
　8:14,16,20,21;20:19,
　20
**counsel (7)**
　6:8;7:15;9:11,12;
　12:4;16:17;22:21
**counsel's (1)**
　8:19
**coupled (2)**
　22:18,19
**Court (59)**
　3:3,4,7,16,21;4:1,14,
　25;5:2,16,19,22;6:7,22;
　7:4,7,8,10,11,17,25;
　8:3,8,9,11,18;10:1;
　11:3,9;12:17;13:12,12,
　14,16,25;14:4,15,17;
　15:2,7,8,11,13;16:9;
　17:6,11,14,17;18:2,21;
　19:14,16;20:11;21:15;
　22:3,8,13;23:18,21
**court's (2)**
　7:4;23:11
**Cravath (1)**
　4:10
**created (1)**
　11:15
**creating (1)**
　20:7
**creature (3)**
　11:15;12:10;20:7
**credible (1)**
　11:23
**currently (1)**
　7:3

## D

**date (4)**
　4:4,23;5:19;19:20
**David (1)**
　3:14
**day (2)**
　5:20;14:25
**days (1)**
　13:8
**de (1)**
　6:25
**deal (3)**
　18:24;19:3;21:17
**dealing (1)**
　14:11
**death (2)**
　6:12,17
**debtor (3)**
　3:17;4:19,20
**debtor-creditor (1)**
　6:15
**debtors (4)**
　3:20;6:9;11:14;

16:17
**debtors' (2)**
　9:11;11:4
**December (1)**
　12:17
**decide (2)**
　7:8;21:21
**decision (2)**
　20:3;21:14;22:5,7
**dedicated (1)**
　16:5
**defer (2)**
　11:7;14:6
**deferment (1)**
　9:24
**deferring (2)**
　9:16;18:5
**definitive (1)**
　4:9
**delay (2)**
　13:22;17:5
**Dennis (1)**
　3:5
**Department (6)**
　5:7;17:9,15,18,24;
　18:21
**dependent (1)**
　16:19
**describe (1)**
　13:20
**described (1)**
　5:10
**desire (3)**
　16:25;17:1
**details (1)**
　15:3
**determination (4)**
　5:10;16:20;21:7;
　22:9
**determine (1)**
　22:8
**determines (1)**
　22:4
**differ (2)**
　18:11;21:10
**different (3)**
　10:11;14:17,25
**differently (1)**
　10:12
**diluted (1)**
　11:21
**direct (2)**
　6:6;23:9
**disapprove (2)**
　8:4;14:5
**discrete (1)**
　18:4
**disputed (2)**
　21:19,25
**disregard (1)**
　9:3
**distributions (1)**
　10:10

**district (6)**
　6:22,24;7:7,10,11;
　22:13
**docket (2)**
　4:14;23:11
**document (5)**
　8:10;13:11;15:17;
　17:19;23:11
**documents (4)**
　9:18,25;12:5;16:22
**dollar (2)**
　8:25;10:19
**dollars (5)**
　6:11;9:21,23;10:23;
　20:2
**done (2)**
　8:13;16:4
**downside (3)**
　14:8,9;16:13
**draft (2)**
　4:10;7:24
**drafting (2)**
　15:2;17:22
**drastically (1)**
　20:1
**drops (1)**
　20:9
**duties (1)**
　12:14
**duty (2)**
　8:13;14:13

## E

**educate (1)**
　23:12
**effect (1)**
　13:5
**effective (1)**
　13:14
**effectuate (1)**
　14:13
**else (3)**
　9:9;19:8;20:16
**elucidate (1)**
　4:24
**enough (1)**
　10:5
**ensure (1)**
　15:24
**enter (3)**
　7:11,25;22:4
**entered (1)**
　6:23
**entities (1)**
　11:14
**entitled (3)**
　11:20;18:16;23:4
**equity (2)**
　5:11;11:16
**equivalent (1)**
　17:8
**erred (1)**

22:8
**estate (2)**
　6:15;12:11
**even (5)**
　7:23;12:3;13:16;
　20:8;21:1
**event (1)**
　21:17
**events (2)**
　15:4;16:20
**everyone (1)**
　3:7
**everyone's (1)**
　23:19
**evolution (1)**
　20:17
**exactly (1)**
　19:11
**exceed (1)**
　20:20
**except (1)**
　6:16
**exchange (5)**
　4:2;5:11;6:5;10:25;
　20:8
**excuse (1)**
　8:3
**execute (2)**
　4:2;23:7
**executed (4)**
　4:13,15;13:6;16:22
**execution (1)**
　12:14
**exempt (1)**
　5:12
**exist (2)**
　7:23;8:10
**exists (1)**
　12:10
**expect (2)**
　7:15;20:6
**expected (1)**
　7:25
**expecting (1)**
　4:10
**experts (5)**
　18:10,15;20:19,24;
　21:4
**explain (1)**
　4:6
**explanation (3)**
　11:10,12;12:12
**extent (2)**
　16:24;22:25

## F

**facing (1)**
　4:15
**fact (4)**
　6:22;8:19;11:25;
　21:25
**facts (3)**

21:19,19,21
**fair (1)**
　11:25
**fairness (9)**
　4:4,5,17;5:6,9;13:15,
　21;15:15;16:21
**fall (1)**
　20:5
**fallen (1)**
　20:1
**fancy (1)**
　17:13
**far (1)**
　9:4
**faster (1)**
　16:4
**favorable (1)**
　17:3
**fee (1)**
　5:12
**fiduciary (2)**
　8:13;14:13
**fighting (1)**
　15:22
**figure (1)**
　11:21
**file (2)**
　4:1,14
**filed (1)**
　3:25
**final (16)**
　4:12,15;6:23;7:11;
　8:5;12:5;13:11,12,18;
　14:1;15:3,17;17:19;
　18:24;22:4;23:10
**Financial (7)**
　5:7;17:15,17,18,25;
　18:22;19:21
**findings (1)**
　6:22,25;7:10;21:9,18
**fine (2)**
　3:16;15:19
**finish (1)**
　19:4
**Fire (23)**
　4:16;5:14;6:3,8;9:4,
　4,7;10:22,24;11:15,20;
　12:11,21,21,22;16:6;
　17:4;19:10;22:18,21;
　23:1,6,12
**first (6)**
　6:3;13:1;15:8;16:14;
　21:7,10
**five-year (1)**
　19:23
**flexibility (3)**
　16:23,24;17:2
**form (1)**
　12:25
**forward (2)**
　16:18,22
**FRANCISCO (1)**
　3:1

Case: 19-30088    Doc# 10597    Filed: 04/29/21    Entered: 04/29/21 12:20:57    Page 27
of 31

PG&E CORPORATION AND PACIFIC
GAS AND ELECTRIC COMPANY, et al.

Chapter 11

Case No. 19-30088
April 28, 2021

**frankly (1)**
22:11
**freely (1)**
5:13
**freshened (1)**
14:7
**friends (1)**
4:10
**front (1)**
5:7
**frustrated (1)**
23:2
**full-boat (1)**
16:2
**full-nosed (1)**
16:9
**fully (2)**
16:2;17:1
**funds (1)**
6:11
**further (3)**
6:1;8:11;12:14

**G**

**gains (3)**
10:7,18,21
**gather (1)**
15:19
**generally (1)**
22:15
**goal (1)**
18:18
**goes (1)**
14:4
**good (3)**
3:7,14;6:2
**Gotshal (2)**
3:20;4:11
**grant (1)**
23:5
**granted (1)**
14:19
**grantor (1)**
11:13
**greater (2)**
12:5;20:14

**H**

**hand (1)**
11:14
**happen (5)**
13:17,25,25;14:4;
15:6
**happens (2)**
11:19;13:4;14:20;
16:19;19:25;20:7
**hear (4)**
3:15,16;6:7,19
**heard (6)**
3:9;5:24;18:4,7,8,9
**hearing (23)**

3:11;4:4,6,18,21,24;
5:6,9;13:15,21;14:24,
25;15:15,22;16:2,3,10,
16,16,21,25;23:15,21
**help (1)**
15:11
**herein (1)**
5:11
**hesitancy (1)**
16:2
**hesitant (1)**
16:1
**Hi (1)**
3:7
**highly (1)**
19:2
**hit (1)**
11:22
**holder (1)**
6:16
**holds (1)**
10:7
**Honor (20)**
3:15,19;5:1,5;6:2;
10:17,25;11:5;12:16;
13:4,7;15:16,16,24;
16:14;17:24;20:10;
23:17,20,22
**Honorable (1)**
3:4
**hope (3)**
3:15;5:25;23:3
**huge (1)**
5:3
**hugely (1)**
10:22
**hundreds (1)**
10:22

**I**

**idea (1)**
19:20
**ideally (1)**
16:19
**identify (1)**
3:9
**immediately (1)**
16:23
**impact (1)**
16:15
**implementation (2)**
21:12;22:14
**implications (2)**
6:10;7:16
**important (1)**
13:22
**inclined (1)**
18:23
**include (1)**
6:13
**including (2)**
14:10;19:1

**incomprehensible (1)**
18:19
**indicate (1)**
4:1
**Indiscernible (1)**
19:15
**individual (1)**
10:9
**information (6)**
8:14,15;19:12,21;
23:2,3
**informed (1)**
14:13
**initiated (1)**
4:18
**injury (1)**
6:16
**Innovation (6)**
5:8;17:16,18,19,25;
18:22
**inquiry (1)**
22:23
**instincts (1)**
11:12
**insure (1)**
15:17
**intending (1)**
3:11
**intention (1)**
4:11
**into (3)**
8:1;13:5;20:23
**inures (1)**
17:3
**invested (1)**
18:13
**investment (1)**
19:7
**invite (1)**
16:3
**involved (1)**
8:16
**issue (9)**
6:4;10:11,15;11:6;
21:19,20;22:2,3,15
**issued (3)**
5:11;7:6;22:14
**issues (4)**
7:18;11:2;14:11;
19:3

**J**

**jeopardizing (1)**
19:2
**Jessica (1)**
3:19
**job (2)**
12:10;16:6
**joint (3)**
7:5,14;22:17
**Judge (21)**
3:7,14;4:8,9,11,17,

22;6:18,21,24;10:3,4;
13:19,21;14:3,9;15:1,
10,15,19;16:8
**judges (2)**
20:23;21:8
**judge's (1)**
6:24
**judgment (6)**
6:23;8:22;9:1,5;
20:12,25
**July (1)**
10:20
**June (1)**
18:23
**jurisdiction (1)**
6:4
**Justice (9)**
8:21;9:5;12:7,10;
15:18;20:12;21:22;
22:20;23:6

**K**

**kind (2)**
11:11,22
**knowledge (2)**
11:12,24
**knows (1)**
8:20

**L**

**lack (1)**
22:2
**large (1)**
19:2
**last (1)**
10:20
**later (1)**
15:22
**law (2)**
6:22;7:6
**lawyer (1)**
10:4
**lawyers (4)**
8:22;10:12;15:3;
19:6
**least (4)**
7:9;8:4;13:10;18:20
**leave (1)**
13:20
**legal (1)**
8:20
**legitimate (2)**
18:13;22:22
**letter (1)**
22:20
**letting (1)**
12:6
**level (1)**
22:25
**liable (1)**
9:23

**likely (2)**
10:13;17:20
**limit (1)**
7:9
**limited (1)**
6:13
**line (2)**
3:8;5:23
**Liou (22)**
3:19,19,21;4:23;5:1,
2,5,18,21;11:3,5;13:20;
15:14;16:12,14;17:6,
10,12,15,23;23:13,22
**liquidation (1)**
6:14
**list (1)**
3:12
**listen (1)**
9:10
**little (1)**
12:4
**log (1)**
18:3
**long (1)**
18:21
**look (1)**
13:8
**looking (3)**
3:24;4:23;12:17
**losses (1)**
18:14
**lost (1)**
4:7
**lot (1)**
18:13

**M**

**major (1)**
6:10
**makes (1)**
20:12
**Manges (1)**
3:20
**market (4)**
14:12;17:3;18:18;
19:19
**matter (8)**
3:5;7:9,12,12;14:21;
21:11,13;22:9
**matters (1)**
7:1
**maximum (1)**
17:2
**may (12)**
4:20;5:7,21;6:18;
9:3;10:7,9,9;13:18;
14:19,24,25
**McDonald (22)**
3:22;5:23;6:2,3;7:17,
17,22;8:7,9,12;9:13;
11:9;12:15,16;18:10;
19:8,9,15,17;20:11;

Case: 19-30088    Doc# 10597    Filed: 04/29/21    Entered: 04/29/21 12:20:57    Page 28
of 31

PG&E CORPORATION AND PACIFIC
GAS AND ELECTRIC COMPANY, et al.

Chapter 11

Case No. 19-30088
April 28, 2021

23:14,16
**McDonald's (1)**
14:6
**mean (4)**
9:20;15:10;17:20;
21:25
**means (2)**
11:19;22:1
**mention (1)**
12:24
**merger (1)**
20:18
**met (1)**
13:1
**microphones (1)**
3:10
**mid-May (2)**
4:23;5:6
**might (2)**
4:7;20:14
**millions (1)**
10:23
**mind (2)**
9:9;12:12
**misunderstood (1)**
21:10
**mixed (1)**
17:7
**modified (1)**
12:25
**Molton (23)**
3:12,12,14,15,22;
4:8;7:23;10:1,2,3;12:1;
13:14,19;14:3,9,16;
15:1,10,12,14;17:1;
23:13,20
**Molton's (1)**
11:10
**moment (3)**
3:24;4:6;22:12
**monetization (1)**
14:14
**monetizing (1)**
16:5
**money (2)**
18:25;19:11
**monitoring (1)**
3:18
**Montali (2)**
3:5,8
**more (2)**
9:4;20:14
**morning (5)**
3:7,13,14;6:2;20:2
**most (1)**
18:14
**motion (8)**
6:10;8:15;9:13;
13:11;14:19;15:16;
22:18;23:5
**move (3)**
4:12;16:18,21
**movement (1)**

17:3
**much (1)**
15:4
**must (3)**
7:9,11;8:13,13
**mute (2)**
3:10;10:4
**myself (1)**
10:3
**mysterious (1)**
21:2

**N**

**name (4)**
17:13,17;18:7,21
**need (5)**
5:3;15:21;16:9;
19:24;22:12
**Needless (1)**
10:12
**needs (1)**
18:20
**negotiated (1)**
4:12
**neutral (1)**
11:17
**night (3)**
18:24;19:10;20:15
**nine- (1)**
10:18
**Ninth (4)**
7:3;20:6;22:11,13
**non-core (2)**
21:13,16
**noticed (1)**
16:2
**notion (1)**
21:8
**November (2)**
19:25;20:3
**novo (1)**
6:25
**number (7)**
3:8;11:21;15:6;18:3,
16;19:2,24

**O**

**object (1)**
7:15
**objected (4)**
3:23;7:2;16:10;21:1
**objection (3)**
14:19;15:20;21:6
**objections (1)**
16:3
**obligation (1)**
10:7
**obtain (1)**
5:9
**obviously (3)**
5:14;11:6;17:1

**off (2)**
10:4;14:4
**offset (2)**
19:18,18
**one (12)**
10:11;11:2,14;15:7;
16:10,11;18:9,20,21;
21:1;22:1;23:1
**only (5)**
3:23;4:14;9:5;16:10;
21:20
**oOo- (1)**
3:2
**opaque (1)**
21:2
**open (1)**
5:16
**opined (1)**
8:22
**opposing (1)**
7:15
**opposition (1)**
5:25
**order (10)**
3:3;6:23;7:5,6,11,14;
22:3,3,4;23:6
**orders (2)**
7:12;22:14
**original (1)**
7:13
**otherwise (1)**
6:20
**out (6)**
10:14;13:3;18:25;
20:18;21:11;23:7
**outcome (1)**
22:6
**outrage (1)**
13:1
**over (1)**
20:1
**overrule (1)**
21:6
**overruled (1)**
14:19
**owe (1)**
9:21
**own (1)**
10:13

**P**

**Pacific (1)**
5:8
**page (1)**
3:25
**papers (1)**
4:7
**part (4)**
12:18,18,19;20:3
**participation (1)**
23:14
**particular (1)**

13:23
**particularly (1)**
23:1
**parties (3)**
3:8;4:13;10:23
**party (4)**
3:23;7:1;16:10,11
**pay (4)**
6:12;9:22;10:9,17
**payments (1)**
10:14
**pays (1)**
9:20
**pending (2)**
7:13;22:10
**people (2)**
10:6;19:2
**percent (1)**
10:18
**perfect (1)**
11:10
**perfectly (1)**
12:12
**perhaps (2)**
3:10;4:23
**permission (1)**
13:9
**permit (1)**
6:21
**persistent (1)**
18:12
**person (1)**
21:1
**personal (4)**
6:12,16;18:14;22:25
**personalize (1)**
9:6
**perspective (2)**
13:21;15:15
**persuaded (2)**
12:2,3
**pertain (1)**
22:15
**pertained (1)**
10:19
**PG&E (4)**
3:5;5:9;10:23;22:15
**phonetic (1)**
7:3
**plan (3)**
7:5,14;21:13
**please (2)**
5:3;9:10
**pm (2)**
5:8,19
**pockets (1)**
18:25
**point (8)**
10:2;11:4;15:22;
17:18;18:11;19:5;21:2,
4
**pointed (1)**
16:15

13:23
**points (2)**
18:13;20:18
**position (2)**
8:6;12:2
**positions (1)**
11:17
**possibly (1)**
13:5
**post-tax (1)**
9:20
**potential (1)**
9:15
**potentially (1)**
10:22
**practical (1)**
23:9
**precisely (2)**
12:1,1
**premise (1)**
12:20
**pre-noticed (1)**
16:10
**present (1)**
13:7
**presented (2)**
12:19;13:11
**presiding (1)**
3:5
**pre-tax (1)**
9:23
**price (3)**
19:25;20:5,9
**proactive (1)**
23:1
**problem (2)**
5:5;23:3
**procedure (2)**
9:1;21:15
**procedures (1)**
16:7
**proceed (2)**
7:8;18:1
**proceeding (6)**
4:18;19:6;9,19,19;
8:20
**proceedings (4)**
6:13,14,21;23:23
**process (4)**
15:23;16:18;17:5;
18:17
**producing (1)**
7:18
**professionals (6)**
9:6;12:8;14:11;16:5;
18:17;20:16
**proposed (2)**
6:21,25;10:25
**proposition (1)**
7:19
**Protection (6)**
5:8;17:15,17,19,25;
18:22
**prudent (1)**

Case: 19-30088    Doc# 10597    Filed: 04/29/21    Entered: 04/29/21 12:20:57    Page 29
of 31

PG&E CORPORATION AND PACIFIC
GAS AND ELECTRIC COMPANY, et al.

Chapter 11

Case No. 19-30088
April 28, 2021

14:14
**public (4)**
4:16;5:16;14:2;
18:16
**publicly (1)**
4:1
**publish (1)**
4:15
**PUC (1)**
17:8
**purpose (1)**
5:9
**pursuant (1)**
5:11
**pursue (1)**
10:24
**put (1)**
7:18

**Q**

**QSF (1)**
10:16
**qualified (2)**
10:16;19:3
**quantifying (1)**
8:23
**quarrel (1)**
18:11

**R**

**raise (1)**
6:4
**read (3)**
5:24,25;8:18
**reading (1)**
11:12
**really (4)**
4:18;8:14;14:12;
22:6
**reasons (1)**
22:24
**recall (1)**
20:22
**receive (4)**
4:10;9:20,23;10:19
**received (1)**
10:20
**receiving (1)**
10:13
**recommendation (1)**
14:18
**recommendations (1)**
21:12
**record (1)**
14:2
**regarding (3)**
8:14,16;19:12
**registration (1)**
5:13
**related (1)**
6:20

**relating (1)**
7:12
**relationship (1)**
6:16
**relatively (1)**
15:23
**relevant (1)**
21:12
**remember (2)**
15:5;19:17
**remind (2)**
3:9;12:16
**reminded (1)**
22:10
**reorganization (2)**
7:5,14
**reorganized (10)**
3:20;4:19,20;6:9;
10:24;11:14;16:17;
21:23;22:18;23:7
**repeat (1)**
21:3
**reply (6)**
3:24;4:14;5:25;8:19;
9:14;22:19
**representation (1)**
18:7
**represented (3)**
4:13;11:16;15:18
**require (1)**
13:11
**required (2)**
7:6;13:20
**respect (4)**
4:17;10:7,14;18:12
**respond (1)**
10:2
**response (2)**
9:11;16:8
**result (1)**
6:6
**results (1)**
4:3
**retired (1)**
15:18
**review (5)**
7:11;13:12;15:16;
21:14;22:17
**reviewing (1)**
6:25
**reviews (1)**
7:13
**right (12)**
5:17;8:6;9:7;11:10,
11;13:15;17:9,10,12,
20;18:3;21:14
**risk (1)**
19:11
**RSA (1)**
12:18

**S**

**sake (1)**
21:1
**sale (2)**
10:18;20:17
**same (2)**
15:22;22:5
**SAN (1)**
3:1
**satisfied (1)**
22:17
**savings (4)**
9:14,15,16;19:18
**saw (1)**
8:2
**saying (4)**
12:3,5;14:21;20:4
**scheduled (1)**
5:6
**scheduling (1)**
4:22
**scope (1)**
22:23
**sealed (1)**
9:18
**second-guess (3)**
18:15;20:25;21:4
**section (3)**
6:12,14,18
**securities (1)**
5:12
**security (2)**
6:16;16:17
**seeing (2)**
8:1;9:25
**seek (1)**
21:14
**sell (3)**
10:8;17:2;20:3
**selling (1)**
16:24
**separate (2)**
10:15;11:1
**sequencing (1)**
16:20
**session (1)**
3:4
**settlement (3)**
9:21,22;10:17
**shall (1)**
6:21,23
**shape (1)**
12:25
**share (2)**
17:5;20:9
**shares (1)**
19:19
**sheet (4)**
15:19,25;18:1,2
**shortly (1)**
4:11
**sick (1)**
14:23
**sign (2)**

13:9;23:5
**similarly (1)**
22:9
**simply (2)**
9:16;14:6
**Slack (1)**
3:17
**sleep (2)**
18:24;19:9
**sleeping (1)**
20:14
**solve (1)**
23:2
**somehow (1)**
11:21
**someone (2)**
20:17;21:13
**sometimes (2)**
20:23;21:9
**so-moved (1)**
18:22
**soon (2)**
16:20;23:9
**sound (2)**
11:19,23
**sounds (2)**
11:10,11
**speak (1)**
3:11
**speaking (1)**
16:17
**specific (1)**
22:24
**specifically (2)**
7:1;22:16
**standalone (1)**
11:1
**stands (1)**
10:11
**stars (1)**
15:6
**start (1)**
16:23
**state (2)**
15:9;18:7
**stated (1)**
6:9;8:25;12:20
**stayed (2)**
7:12;22:13
**steps (1)**
16:13
**still (8)**
7:24;12:1,2;15:2,3;
17:21;20:8;22:10
**stock (15)**
5:13;10:8,18,19,20;
14:11,14;16:6,24;17:2;
20:1,3,4,9,18
**streamlined (1)**
15:23
**strikes (1)**
9:2
**subject (1)**

14:1
**submitted (1)**
22:21
**submitting (1)**
7:9
**subrogation (2)**
12:18,24
**substantial (1)**
13:23
**successful (1)**
20:5
**suggestion (1)**
14:6
**summary (2)**
5:3;22:19
**support (2)**
17:1,4
**supporting (1)**
4:19
**suppose (1)**
14:18
**supposed (1)**
19:5
**Sure (5)**
5:1,5,5;15:21,25
**survivor (1)**
6:3
**swapping (1)**
11:16

**T**

**talking (1)**
10:5
**tank (1)**
20:6
**tanks (1)**
20:13
**tax (13)**
7:16;9:14,15;10:4,6,
6,8,13,20;11:18,22;
19:17,18
**taxes (7)**
7:16;9:16,20,21,22,
23,24
**team (1)**
14:10
**tentatively (1)**
14:1
**term (5)**
15:19,25;18:1,2;
21:24
**terms (5)**
5:12;8:1;12:18;
14:12;15:18
**Theresa (1)**
6:3
**thinking (1)**
20:13
**thought (2)**
17:7;19:10
**thoughts (1)**
23:4

Min-U-Script®

Case: 19-30088    Doc# 10597    Filed: 04/29/21    Entered: 04/29/21 12:20:57    Page 30
of 31

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(5) public - thoughts

PG&E CORPORATION AND PACIFIC
GAS AND ELECTRIC COMPANY, et al.

Chapter 11

Case No. 19-30088
April 28, 2021

**thousands (1)**
　19:1
**timely (1)**
　7:1
**title (1)**
　6:20
**today (16)**
　3:17;5:24;6:1;7:20,
　21;8:4;12:7,13;14:5,
　18,23;15:23;16:19;
　18:5;20:21;23:14
**today's (2)**
　22:23;23:5
**told (1)**
　7:24
**tort (1)**
　6:16
**towards (1)**
　4:23
**track (1)**
　14:4
**tradable (1)**
　5:14
**transaction (12)**
　4:2;5:12;6:5;7:21,
　23;8:17;12:13;18:20;
　20:8,19,20;23:8
**transactions (1)**
　5:10
**transfer (1)**
　20:18
**transparency (1)**
　14:7
**treatment (1)**
　6:11
**Trotter (9)**
　8:21;9:5;12:8,10;
　15:18;20:12;21:22;
　22:20;23:6
**trouble (1)**
　20:14
**true (1)**
　19:14
**Trust (34)**
　4:16;5:10,15;6:11;
　8:16;9:15,15,16,17,18,
　19,22;10:6,15,16,17,
　21,24;11:7,8,13,15;
　12:9;16:5,22;17:1;
　18:10;19:4,5,6,21;
　20:15,19,24
**trustee (14)**
　3:13;4:1;6:8;7:25;
　8:13,25;11:16;12:4,21;
　13:8;14:10;18:19;
　22:18;23:6
**trustees (1)**
　23:12
**trustee's (5)**
　5:25;8:19;9:11,14;
　20:3
**trusting (1)**
　9:5

**tune (1)**
　10:22
**turns (1)**
　13:3
**twelve (1)**
　20:1
**two (4)**
　11:13;13:8;16:13;
　18:20
**typically (1)**
　21:18

---

**U**

**ultimately (1)**
　17:4
**unaffected (1)**
　10:15
**under (2)**
　6:20;13:15
**unknowns (2)**
　21:20;22:1
**unusual (1)**
　17:13
**up (3)**
　4:4;15:5;17:7
**upwards (1)**
　10:17
**urge (1)**
　22:8
**urging (1)**
　7:20
**USC (2)**
　6:12,18
**used (2)**
　6:12;17:8

---

**V**

**vast (1)**
　18:16
**venue (1)**
　6:4
**Victim (9)**
　4:16;6:8;9:4;10:24;
　11:20;12:21;23:1,6,12
**Victims (15)**
　5:14;9:2,4,8;10:22;
　11:15;12:11,21,22;
　16:6;17:4;18:25;19:1,
　10;22:21
**view (2)**
　11:4;21:4

---

**W**

**wants (2)**
　15:16,24
**way (3)**
　12:25;13:23;21:17
**website (2)**
　4:16;23:12
**WEDNESDAY (1)**

　3:1
**weigh (1)**
　16:12
**Weil (2)**
　3:19;4:11
**well-beyond (1)**
　22:23
**weren't (2)**
　21:2,2
**What's (2)**
　9:13;14:8
**whereas (1)**
　22:19
**Whereupon (1)**
　23:23
**whole (3)**
　12:21;23;15:6
**who's (2)**
　8:20;21:1
**willing (1)**
　17:25
**wish (5)**
　3:9;5:24;11:9;18:4;
　21:1
**wishes (3)**
　7:8;18:9;21:13
**without (3)**
　8:1,23;9:25
**words (1)**
　14:23
**work (1)**
　11:13
**worked (1)**
　4:9
**working (2)**
　7:24;18:17
**worry (1)**
　16:9
**worse (1)**
　21:5
**write (1)**
　13:7
**written (2)**
　7:18;13:6
**wrong (3)**
　6:10;20:13;21:16
**wrongful (2)**
　6:12,17

---

**X**

**X-dollars (1)**
　11:20

---

**1**

**1 (2)**
　5:8,19
**10:36 (1)**
　23:23
**11 (3)**
　6:20;7:5,14
**157b2 (1)**

　6:13
**157c1 (1)**
　6:18
**16th (1)**
　5:20
**1-8 (1)**
　5:21
**18th (6)**
　5:7,21,22;13:18;
　14:19,25
**19th (1)**
　14:24

---

**2**

**20.17366 (1)**
　7:3
**2018 (1)**
　6:3
**2019 (1)**
　12:17
**2021 (1)**
　3:1
**23rd (1)**
　3:25
**28 (3)**
　3:1;6:12,18

---

**3**

**30th (1)**
　19:22

---

**4**

**4 (1)**
　3:25
**45.84 (1)**
　10:18

Case: 19-30088　　Doc# 10597　　Filed: 04/29/21　　Entered: 04/29/21 12:20:57　　Page 31
of 31