# EXHIBIT B

**First Cure Payment Claim Demand**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 19-30089 |
| PG&E Corporation | |
| and | Chapter 11 (Lead Case) (Jointly Administered) |
| Pacific Gas and Electric Company, | |
| Debtors. | |

## CURE PAYMENT CLAIM DEMAND

Consolidated Edison Development, Inc. ("CED") on behalf of itself and its Affiliates (as defined below) formally demands an amount equal to $14,992,395.39, which represents, in the aggregate, indemnification for fees, costs, and post-petition and default interest stemming from Pacific Gas and Electric Company's ("PG&E" or the "Utility" and, together with its parent company PG&E Corporation, the "Debtors") defaults under the CED Agreements (as defined below) as well as under the Financing Agreements (as defined below) (the "Demand").

I. PRELIMINARY STATEMENT

Certain affiliates of CED (the "Affiliates")[1] are parties to wholesale power purchase agreements (the "PPAs") and/or interconnection agreements (the "IAs"), as each may have been amended, supplemented, or otherwise modified from time to time (collectively, the "CED Agreements"), with the Utility.[2] In connection with the CED Agreements, certain of the Affiliates

---

[1] Attached hereto as Exhibit A is a schedule of the relevant Affiliates.
[2] Because the CED Agreements are voluminous and contain sensitive trade secret and proprietary information, they are not attached to this Demand. Upon information and belief, the Debtors are in possession of the CED Agreements, and copies will be made available upon a showing of need and entry into an appropriate confidentiality agreement and/or entry of a protective order by the Court.

1

entered into certain Financing Agreements with certain third-party financiers, all of which were acknowledged by the Utility.[3] When the Debtors filed for bankruptcy in January of 2019, defaults occurred under the CED Agreements, which then triggered defaults under the Financing Agreements. As a result of the default under the Financing Agreements, the Affiliates have suffered significant monetary loss for which, pursuant to the CED Agreements, the Utility is obligated to indemnify.

In addition, from the inception of the Debtors' bankruptcy cases, the Debtors have litigated over their ability to reject the PPAs and deny CED its ability to enforce its rights under such agreements. The litigation, appeals, and the continued possibility that the Utility would seek to reject PPAs during the pendency of the bankruptcy case caused CED to incur legal fees and expenses.

Pursuant to the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Date June 19, 2020* (the "Plan"), which was confirmed on June 20, 2020, the Utility assumed the CED Agreements as of the Effective Date of the Plan. As a condition to assumption, the Utility must cure all defaults and outstanding amounts owed, including the unpaid indemnification obligations.

II. BACKGROUND

On January 29, 2019 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court.

---

[3] ███████████████████████████████████████████████████████████████████

**The Affiliates filed timely proofs of claim for pre-petition amounts owed by the Utility under the CED Agreements.**

    1.    **Section 503(b)(9) Claims**

On March 1, 2019, the Bankruptcy Court entered the *Amended Order Pursuant to 11 U.S.C. §§ 503(b)(9) and 105(a) Establishing Procedures for the Assertion, Resolution, and Satisfaction of Claims Asserted Pursuant to 11 U.S.C. § 503(b)(9)* [Docket No. 725] (the "503(b)(9) Order"). As provided in the 503(b)(9) Order, the Court fixed April 20, 2019 as the deadline for vendors to assert proofs of claim pursuant to section 503(b)(9) of the Bankruptcy Code for the value of "goods" delivered to either Debtor twenty days before the Petition Date (the "503(b)(9) Period"). All but three Affiliates filed claims (collectively, the "503(b)(9) Claims") on April 18, 2019 to recover, as administrative expenses, the unpaid costs of electricity delivered to the Utility during the 503(b)(9) Period, while reserving all rights to seek further claims for indemnity and attorneys' fees.[4] In support of the 503(b)(9) Claims, the filing Affiliates attached invoices reflecting the amounts owed, which aggregate $6,365,206.59.

    2.    **General Unsecured Claims**

On July 1, 2019, this court entered an order (the "Bar Date Order") [Docket No. 2806] that, *inter alia*, established October 21, 2019 as the general bar date. In accordance with the Bar Date Order, the Affiliates collectively filed sixteen proofs of claim (the "General Unsecured Claims") reflecting amounts due and owing from the Utility as of the Petition Date under the PPAs, IAs, and/or related agreements (as applicable), while reserving all rights to seek further claims for indemnity and attorneys' fees.[5] The General Unsecured claims total $37,727,283.10 exclusive of

---

[4] A schedule identifying each of the 503(b)(9) Claims as filed is attached as Exhibit C.
[5] A schedule identifying each of the General Unsecured Claims as filed is attached as Exhibit D.

interest, costs, and other fees and expenses that are recoverable pursuant to the express terms of the CED Agreements.

**Pursuant to the Debtors' Plan, all CED Agreements were assumed on the Effective Date.**

By Order dated June 20, 2020 [Dkt. No. 8053], the Bankruptcy Court confirmed the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Date June 19, 2020* (the "Plan"). As provided in the Plan, Debtors assumed all unexpired leases and executory contracts (with a carveout not applicable here), subject to the occurrence of the Plan's Effective Date and payment of full cure. *See* Plan, Section 8.1(a); Confirmation Order, ¶ 32a. The Effective Date of the Plan occurred on July 1, 2020. *See* Dkt. No. 8252.

III.  BASIS FOR PAYMENT

The Debtors' bankruptcy filing constituted a default by the Utility under the PPAs and IAs. Pursuant to the Financing Agreements[6], a default under the PPAs or IAs constituted a default under such Financing Agreements. Consequentially, CED incurred the following damages: (i) payment of default interest under such Financing Agreements, (ii) attorneys' fees and costs; and (iii) consent fees paid to noteholders in lieu of default interest.

A.  **Default Interest and Consent Fees**

Following the commencement of the Debtors' bankruptcy cases, CED Affiliates were required to pay interest at a default rate on project financings in the total amount of $4,805,060.00. In addition, consent fees were incurred by two CED Affiliates pursuant to agreements reached with noteholders to waive the PG&E defaults and the requirement to pay default rate interest.[7]

---

[6] PG&E was aware of the existence of the Financing Agreements and thus the impact its defaults would have on such financings. ████████████████████████████████████

[7] ████████████████████████████████████████████████████████████████████████

The agreements enabled CED to mitigate the damages resulting from the defaults caused by the Debtors' bankruptcy. The consent fees, which are less than the amount that CED would have been obligated to pay absent the Consent Agreements, aggregate $6,000,000.00.

### B. Attorneys' Fee and Expenses

From the outset of these cases, the Debtors have litigated over their ability to reject PPAs and prevent CED (and all other PPA counterparties) from enforcing their rights under such agreements and seeking regulatory review of any cessation of performance under the PPAs. CED has incurred attorneys' fees and costs in connection with such litigation, ensuing appeals and the Debtors' general bankruptcy case in order to protect its rights under the CED Agreements.[8] Pursuant to the indemnification provisions within the CED Agreements, the Utility is obligated to compensate CED for its losses, fees, and costs.

### C. Indemnity Provisions



---

[8] CED reserves its rights to assert claims for fees and costs under Cal. Civ. Code § 1717.



In Order Nos. 2003 and 2006, FERC clarified that indemnification provisions are "common contractual risk-sharing provision[s]" and "must be comprehensive and must include any liability the indemnified Party faces a result of the indemnifying Party's misdeeds." Order No. 2003, Standardization of Generator Interconnection Agreements and Procedure, Docket No. RM02-1-000; 104 FERC ¶ 61,103, at P 640, 2003 WL 21725988 (July 24, 2003); FERC, Final Rule, Order No. 2006, Standardization of Generator Interconnection Agreements and Procedure, Docket No. RM02-12-000, Rule 2006 (May 12, 2005). The purpose of an indemnification provision, according to FERC is to "protect[s] the Party not at fault from liability to third parties (those who are not Parties to the interconnection agreement)." Order No. 2003-A, Standardization of Generator Interconnection Agreements and Procedure, Docket No. RM02-1-000; 106 FERC ¶ 61,220, 2003 WL 21725988 (Mar. 5, 2004).

It is well-settled that a debtor cannot assume an executory contract without curing all its defaults and compensating the non-debtor party for the "actual pecuniary loss" caused by those

defaults. *See* 11 U.S.C. § 365(b). Because CED has suffered damages that the Utility is obligated to indemnify, compensation for these damages is required as a cure payment as part of the assumption of the CED Agreements.

While the exact nature and amount of those defaults depend on the specific CED Agreements at issue, when considered collectively, the aggregate amount for default interest, consent fees, and attorneys' fees owed under the CED Agreements is $14,819,064.86.

| Default Interest[9] | $4,805,060.00 |
|---|---|
| Consent Fees | $6,000,000.00 |
| Attorneys' Fees for Lead Bankruptcy Case and Project Financing Issues[10] | $3,860,949.66 |
| Attorneys' Fees for 9th Circuit Appeal[11] | $153,055.20 |
| **Total:** | **$14,819,064.86** |

IV. <u>POST-PETITION INTEREST</u>

CED has received cure payments for amounts owed by PG&E for pre-petition electricity. However, PG&E calculated post-petition interest owed on such amounts in two different ways: (1) for the amounts claimed in CED's 503(b)(9) claims, PG&E utilized the federal judgment rate, and (2) for the balance of the amounts owed, it applied the contract rate. PG&E's method of calculating is incorrect and inconsistent with the Bankruptcy Code, the Plan, the Confirmation Order, statements made on the record during the confirmation hearing, and Judge Montali's decision on

---

[9] ██████████████████████████████████████████████████████████████████
██████████████████████████████████████████
[10] ██████████████████████████████████████████████████
[11] ██████████████████████████████████████████████████

the applicable interest rate for unsecured claims.[12] Upon assumption of the CED Agreements, PG&E was required to cure all defaults under such agreements in accordance with the terms of such agreements. *See Elliott v. Four Seasons Props. (In re Frontier Props., Inc.)*, 979 F.2d 1358, 1367 (9th Cir. 1992) ("[T]he cost of assumption is nothing short of complete mutuality and requires performance in full just as if bankruptcy had not intervened.") (internal quotation omitted). Once the CED Agreements were assumed, the 503(b)(9) claims became cure claims that had to be paid pursuant to the terms of the agreements. Only if the CED Agreements had been rejected could PG&E assert that the Montali interest rate decision was applicable.

PG&E is required to pay all amounts due under the assumed CED Agreements in accordance with the terms of such agreements. When calculated in accordance with the terms of such agreements, PG&E owes CED an additional sum of **$173,330.53** in post-petition interest.[13]

## V. CONCLUSION

For the foregoing reasons, CED respectfully requests that the Debtors timely comply with this demand for payment in the aggregate amount of $14,992,395.39.

## VI. RESERVATION OF RIGHTS

CED submits this Cure Payment Claim Demand without prejudice to, and with full reservation of, its rights and the rights of its Affiliates under the CED Agreements, the Bankruptcy Code, or any applicable non-bankruptcy law. CED reserves all of its rights to amend, clarify, modify, supplement, or otherwise revise this Demand, including all schedules or exhibits hereto, in any respect, at any time and for any purpose. CED also reserves the right to submit any disputes relating to this Demand to the Bankruptcy Court for resolution.

---

[12] CED filed a reservation of rights in connection with the litigation over the applicable interest rate to assert that any decision would not be applicable to cure claims. *See* Dkt. No. 4625. Indeed, Judge Montali's decision did not address the interest rate that would be applicable to cure claims. *See* Dkt. No. 5225.

[13] Attached hereto as Exhibit H is a schedule of post-petition interest calculations.

Dated: August 25, 2020					TROUTMAN PEPPER LLP

By: */s/*
Hugh M. McDonald (admitted *pro hac vice*)
875 Third Avenue
New York, NY  10022
Telephone: (212) 704-6000
hugh.mcdonald@troutman.com

Marcus T. Hall (SBN 206495)
3 Embarcadero Center, Suite 800
San Francisco, CA  94111
Telephone: (415) 477-5700
marcus.hall@troutman.com

*Attorneys for Consolidated Edison Development, Inc.*