April 26, 2021

**Honorable Dennis Montali**
**U. S. Bankruptcy Judge**
**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**
450 Golden Gate Avenue
San Francisco, California 94102



In re:   **Bankruptcy Case No. 19-30088 (DM)**

**PG&E CORPORATION**
**and**
**PACIFIC GAS AND ELECTRIC COMPANY**

Honorable Montali:

Please accept the following information and attached documents to be considered
for the CONTINUED HEARING ON CERTAIN OF THE REORGANIZED DEBTORS'
OMNIBUS OBJECTIONS TO CLAIMS , May 11, 2021, 10:00 AM..

   My Father-InLlaw , Spillman H. Viles, often remarked that he had migrated from
Missouri to Alberta, in a wagon behind a team of mules, and had lived to watch a
man step foot on the moon.    He had homesteaded in Alberta, Canada, and later in
Washington, USA.    He had survived going "over the top" seven (7) times from the
trenches, as a soldier during WORLD war I.    While farming, on leased land on the
Blackfoot Indian Reservation, in Montana, he had perfected his stone-work
construction talent.    He used it extensively in his senior years, to benefit his only
child, that reached adulthood, and her family, when they purchased a vacation home
in Wilsonia.    One of his accomplishments was a stone retaining wall, without mortar,
improving the access from the Public Right of Way (Presidents Lane) to their home.
This Public Right of Way is the widest street in Wilsonia (as indicated by the
subdivision map) but is impassable because a ravine with a seasonal stream.
Employees of the National Park Service, and of Tulare County, helped him acquire the
stones, as well as the materials for a corral.    These were both damaged when PG&E
had a large, dead, Pine tree shortened, that supported electrical wires.

   Wilsonia is a residential subdivision of small parcels of privately owned land
adjacent to Grant Grove.       There are no curbs, gutters or sidewalks, however most
streets are paved, about 12 feet wide, around boulders, trees etc., within a public
right of way.    Because Wilsonia has been primarily a retreat from the Summer Heat
for many San Joaquin Valley families, there was an abundance of horses.    The
residents of Wilsonia had been permitted to erect a public corral on Forest Service

which contains at least two false statements plus indemnification of PG&E from certain unknown parties, before I receive any funds. A copy of this document, with these items underlined in red, is attached. This seems like extortion, and I refused.

Because of prior experience with the stipulations that can be added to the back of checks, I am reluctant to sign an agreement stating valuable consideration has been received and is adequate, when none has been received. Attached is a copy of an E-mail from Dara Silviera, Mar 24 at 9:26, indicating the settlement agreement must be signed to receive any funds. Attached is a copy of an E-mail to Dara Silviera, Apr 10, at 9:51, offering an alternative, in an attempt to obtain the agreed funds, and to avert the May 11, 2021 Hearing.

PG&E appears to want to add addition requirements before providing the funds, even though the amount had been mutually agreed with their Designated Representative. When these additional requirements are unacceptable, PG&E seeks to dispute the amount of the original damages, with this Hearing. That amount had also previously been agreed with PG&E Designated Representatives. Therefore, please consider adding an additional fair and equitable amount to my claim to compensate for my expenses, time, and effort in attempting to obtain the mutually agreed amount of funds.

Sincerely yours,

*John I Weaver*

John I Weaver
2948 E Joaquin Place
Fresno, California 93726
Ljweav@att.net
Sincerely youes,


Attachments:
    Copy of Brochure concerning Wilsonia Historic District Trust
    Copy of front and back of PG&E Check No. 4505112, dated 12/18/2018.
    Copy of unsigned SETTLEMENT AGREEMENT Number 1175, with false
        statements and indemnification underlined in red.
    Copy of E-mail from Dara Silviera dated Mar 24 at 9:26 AM
    Copy of my E-mail to Dara Silviera dated Apr 10 at 9:51 AM
    (The copies of E-mails may include replies and prior messages)

# WILSONIA HISTORIC DISTRICT TRUST



**House on the Rock**
The "French Cabin," remains unchanged since it was constructed in 1928 by Ed French, the original owner, designer, and builder.

**Wilsonia is a privately owned 100-acre village located within the Grant Grove Section of Kings Canyon National Park. The Wilsonia community is comprised of 212 buildings, mostly rustic mountain cabins, constructed between 1919 and the present.**

**In 1996 the Wilsonia Historic District was listed in the National Register of Historic Places.**

**Contributors to the District are the oldest and most architecturally intact buildings in the community.**

## Wilsonia History:

Joseph H. Thomas was the first explorer to visit the grove of sequoias now known as the Grant Grove Section of Kings Canyon National Park. Thomas, who operated a sawmill nearby, is believed to have discovered the sequoia subsequently named "General Grant Tree" in 1862. A survey resulted in the government's interest in preserving the General Grant Grove. In 1880, the United States Surveyor General of California requested that four sections of land adjacent to the grove be preserved and protected from private ownership.

The government's request to preserve four sections of General Grant Grove area as a national park came too late to restrict 160 acres of property within the area for which Daniel M. Perry had filed a homestead. When the State of California deeded the land to the federal government for park purposes, Perry retained title to his homestead. This parcel later became Wilsonia. In 1890 Congress created General Grant National Park to protect General Grant Grove.

The privately owned parcel within the park went through several deeds of ownership before being sold to Andrew "Andy" D. Ferguson in 1918.

> *In the first few years, individual lots in Wilsonia were sold for between $75 and $200.*

An ardent supporter of Woodrow Wilson, Ferguson named the tract "Wilsonia" in honor of the President and erected an 8' by 10' oil painting of Wilson in what became the center of the village. Ferguson created roads and subdivided the land into lots which were sold for summer home sites.

A California Fish and Game Commissioner, Ferguson stipulated certain requirements in the sale of the lots. No meadows were to be sold and no trees over 6" in diameter were to be cut without consent of the government.

## Wilsonia History (continued)

In 1918 Ferguson began negotiations to sell the northeast 20 acres of Wilsonia to a group known as the Sierra Masonic Family Club.

Agreement for the sale of the Sierra Masonic Family Tract was made in 1919. Twenty-four cabins were built and remain in the Masonic portion of Wilsonia. From the outset, only Masons and their families have acquired membership in the Sierra Masonic Family Club and only members may own a cabin in the tract.

The majority of the original Wilsonia property owners lived in neighboring San Joaquin Valley agricultural communities. They purchased property in Wilsonia to build a second home where they could escape the heat, dust, and pollen of the summer in the Valley. Wilsonia offered desirable health, spiritual, and recreational opportunities for its seasonal residents. The early Wilsonia property owners included individuals from varied professions, including farmers, ranchers, doctors, business people, teachers, members of Congress, park rangers and attorneys.

In the first few years, individual lots in Wilsonia were sold for between $75 and $200. News of the sale of land in Wilsonia spread quickly by word of mouth. As a result, most Wilsonia property owners already had ties to the Grant Grove area from previous camping visits or knew other Wilsonia property owners from the Valley. Valley residents accessed Wilsonia by various means including automobile, horse and wagon. From the beginning, Wilsonia property owners had a concern for conservation of the forest landscape and planted giant sequoias on their property.

Many lot owners camped on their land before they built their cabins. Most early cabins consisted of just one room or one room and a kitchen, with no electricity or running water. Ferguson drilled community wells throughout the lower section of the subdivision and everyone carried water from the wells. Eventually, most properties had their own well.



The Wilsonia Clubhouse

Built in 1933, this is the third on the site. The first was built between 1923 and 1927 on lots donated by Andrew Ferguson and burned down in 1928. A replacement collapsed under snow in the winter of 1932-33. This has played a integral role in the social life of Wilsonia. During World War II sewing circles provided supplies to the Red Cross.



Twin Pines
83573 Alta Lane

Originally owned by A.R. Cutler of Visalia, this cabin was built in the early 1920s. It was named Twin Pines because of the two massive pines which grow just a few feet from the cabin. Subsequent owners were the Horn and Evans families. Bud and Fern Wilson purchased the cabin in 1986. Bud's father Dick Wilson, a horse rancher in Hanford, has been coming to Wilsonia since the 1920s and operated the Grant Grove Riding Stables for many years. The 5th generation of the family now participates in its use.



The Wilson's Summer Inn

The Wilsons owned and lived in this cabin in 1927 when they ran the grocery store in the original Clubhouse. After the Clubhouse burned they sold groceries from a walk-up window in the front bedroom of this cabin for two seasons. After one year in the new clubhouse they turned their efforts to the riding stables until 1994.



The Coll-Inn Cabin
83762 Fern Lane

The cabin was built in the early 1920s by Fred Geiser, a contractor from Orange Cove who built several cabins. The windows and siding are lined with pine slabs with bark which was used on many other cabins he built. It was sold by the Cook family in 1926 to Henry and Elsie Collin of Orosi. The Collin family begun visiting Wilsonia in 1918 and have continued with the 5th generation of the family now using the cabin.

There was an intense period of building in Wilsonia in the 1920s. By the late 1920s Wilsonia had 180 landowners and contained 150 homes. Most property in both the original Wilsonia Tract and the Mesa Addition (which was subdivided in 1921) had been sold by the end of the 1920s.

Many of the cabins were designed and built by the owners themselves. Many chimneys, terraces, and retaining walls were built of stones gathered by families in neighboring Big Meadow and Kings Canyon. The lumber used for cabin construction was often from the nearby Hume Lake area.

> *Wilsonia owners have a concern for conservation of the forest landscape and planted giant sequoias on their property.*

In the early years lumber was brought in on wagons pulled by a team of mules. The cement for the foundations was mixed by hand. Over the decades, running water and electricity were added to the structures; indoor bathrooms replaced outhouses; and cabins were enlarged by building new rooms around the original main room and kitchen.

In the 1930s, the federal government acquired 60 acres of the original homestead, leaving Wilsonia as a 100-acre enclave, including the original Wilsonia Tract, the Mesa Addition, and the Sierra Masonic Family Tract.

Development continued in Wilsonia throughout the 1930s and into the early 1940s, when construction slowed down during World War II. After having had park status for nearly 50 years, General Grant National Park was integrated into the Kings Canyon National Park when it was created in 1940.

Wilsonia still conveys a strong impression of a recreational mountain community. From the early twentieth century, it has retained the rustic charm of its buildings amidst the haunting beauty of the forest landscape.

# WILSONIA HISTORIC DISTRICT TRUST

**Wilsonia People**



**Mission:** The mission of the Wilsonia Historic District Trust is to preserve, interpret, and perpetuate our community's history, unique quality of life, intense and long-term family commitment, and natural resources that have been handed down over generations. Specific attention is given to the many cultural artifacts and natural resources which contribute to keeping Wilsonia a vibrant Historic community.

**Goal:** The goal is to manage the affairs of the District Trust including but not limited to: finances, the unique cultural artifacts, and assure the continuation of the seven decades of community interest.

**Finances:** Wilsonia Historic District Trust is financed totally by donations. As an IRS Code 501 (c) (3) corporation (tax free) all donations are Tax Deductible. The Trust's Board of Directors is responsible for the administration of all funds.

### Board of Directors Year 2011

H.A. "Gus" Collin III
   President

Drew Sorensen
   Vice-President

Jim Spitze
 Past President, Secretary

Dr. Francis G. Preston, Emeritus

Steven Stocking
   Chairman, Education Comm.

Dede Virgo

Sally Tripp
 Treasure

Jean Faszholz

SECURITY PANTOGRAPH, COLORED BACKGROUND AND WATERMARK ON THE BACK

**Pacific Gas and Electric Company** 77 Beale Street, San Francisco, CA

THE BANK OF NEW YORK MELLON CORPORATION 53-292 113

Date: 12/18/2018

Check No. 4505112

*THREE THOUSAND***************************************************** AND 00/100 DOLLARS

In compromise settlement of all claims arising out of that accident, casualty or event which occurred on or about 2016424383, State of California

Pay $*********3,000.00*

**To The Order Of**

JOHN WEAVER
1/2 of retaining wall damage claim
2948 EAST JOAQUIN PLACE
FRESNO CA  93726

CLAIMS SETTLEMENT

David Thomason
VP, CONTROLLER, and CFO

Nicholas Bijur
VP and TREASURER

⑈0004505112⑈ ⑈011302920⑈ 059978⑈

114/313

— PLEASE FOLD FIRST THEN DETACH ALONG PERFORATION —

JOHN WEAVER
Check no.              4505112
Date                  12/18/2018
Your account number   ZTPC
Payment Document      2052108510

Dear Sir/Madam,
Enclosed is check no. 4505112 in settlement of the following claims:

| Incident Number | Ref. Number | Date | Net Amount | Description |
|---|---|---|---|---|
| | 0347959 | 12/17/18 | 3,000.00 | 2016424383 |
| Totals: | USD | | 3,000.00 | |

Special Handle Code:

Pacific Gas and Electric Company 77 Beale Street San Francisco CA 94105    Entered: 05/06/21 09:05:23   Not Negotiable

SIGNATURE _____

### READ RELEASE BEFORE ENDORSING

Endorsement by the named payee or payees constitutes a complete and final release of all claims of whatsoever kind or nature, whether known or unknown, and including liability to persons and damage to property, that the undersigned now has or may hereafter have against Pacific Gas and Electric Company or any person, association, or corporation, directly or indirectly, in any way connected with, liable for or in any way related to or on the loss hereof, the account, casualty or event. All rights under Section 1542 of the Civil Code of California are expressly waived, and it is agreed that this release extends to all unknown and unanticipated injuries and damages.

## SETTLEMENT AGREEMENT

This Settlement Agreement (this **"Agreement"**) is made as of Tuesday, March 23, 2021 by and between Weaver, John I (the **"Claimant"**) and the Reorganized Debtors (as defined below). Signatories to this Agreement will hereafter be referred to jointly as the **"Parties."**

## PREAMBLE

**WHEREAS,** on January 29, 2019 (the **"Petition Date"**), PG&E Corporation (**"PG&E Corp."**) and Pacific Gas and Electric Company (the **"Utility"**), as debtors and debtors in possession (collectively, the **"Debtors,"** and each, a "Debtor") in the above-captioned chapter 11 cases (the **"Chapter 11 Cases"**) each commenced with the United States Bankruptcy Court for the Northern District of California (the **"Bankruptcy Court"**) a voluntary case for relief under chapter 11 of title 11 of the United States Code (the **"Bankruptcy Code"**), which Chapter 11 Cases have been consolidated for procedural purposes only under the lead case styled: *PG&E Corporation and Pacific Gas and Electric Company., Case No. 19-30088.*

**WHEREAS,** on March 14, 2019 [Docket Nos. 897-908], the Debtors filed their Schedules of Assets and Liabilities, which scheduled the claims designated as "Scheduled" in **Exhibit A**, if any, as claims held by Claimant against the Debtors as of the Petition Date (the **"Scheduled Claims"**);

**WHEREAS,** by Order dated July 1, 2019 [Docket No. 2806], the Bankruptcy Court set the last date for parties to file proofs of claim against the Debtors in the Chapter 11 Cases as October 21, 2019 at 5:00 p.m. (Prevailing Pacific Time);

**WHEREAS,** the Claimant has filed proof(s) of claim in the Chapter 11 Cases against the Debtors as set forth as "Filed/Asserted" in **Exhibit A** attached hereto (the **"Proof(s) of Claim"** and, together with the Scheduled Claims, the **"Claims"**);

**WHEREAS,** the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (as may be modified, amended, or supplemented from time to time, and together with all scheduled and exhibits thereto, the **"Plan"**) was confirmed by order of the Bankruptcy Court entered June 20, 2020 [Docket No. 8053] (the **"Confirmation Order"**);

**WHEREAS,** the Effective Date of the Plan (as defined in the Plan) occurred on July 1, 2020, whereupon the Debtors were reorganized, revested with their property and discharged from their debts, all as provided in the Plan and the Confirmation Order, and as thus reorganized became and now are the **"Reorganized Debtors"** (and each, a **"Reorganized Debtor"**). The Plan and all provisions of the Plan (including, without limitation, all discharge, injunction, exculpation, and release provisions contained in the Plan and in the Confirmation Order) are binding on all holders of claims against, or interests in, the Reorganized Debtors, whether or not the claims or interests of any such holder are impaired under the Plan and whether or not any such holder voted to accept the Plan;

**WHEREAS,** pursuant to section 7.2 of the Plan, the Reorganized Debtors are authorized to, among other things, compromise, settle, otherwise resolve, or withdraw any objections to

Disputed Claims (as defined in the Plan) and to compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court; and

**WHEREAS,** the Parties wish to compromise, resolve, and settle the claims that are asserted by the Claimant in the Proof(s) of Claim and/or the Scheduled Claims.

**NOW, THEREFORE,** in consideration of the releases and promises contained herein and other good and valuable consideration exchanged among the Parties, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

### A. **Settlement.**

1. In full and final satisfaction, settlement, and release of the claims asserted by the Claimant in the Proof(s) of Claim and/or the Scheduled Claims, the Parties agree that the Claimant is allowed certain claims against the Reorganized Debtors in the amount(s) and classification(s) set forth in **Exhibit B** attached hereto (the "**Allowed Claim(s)**"), which Allowed Claim(s) shall be satisfied pursuant to, and in accordance with, the Plan and Confirmation Order. All Proofs of Claim filed by the Claimant, except to the extent allowed as the Allowed Claim(s) as set forth on **Exhibit B** hereto, shall be disallowed and expunged from the Reorganized Debtors' claims register. The agreed amount of the Allowed Claim(s) is inclusive of any right or entitlement of Claimant for or on account of post-petition interest; and notwithstanding any provision of the Plan or Confirmation Order or other applicable law, Claimant shall not have any additional right or entitlement to post-petition interest on the Allowed Claim(s).

2. The Parties agree and acknowledge that this Agreement is the result of a compromise and shall not be construed as an admission of any liability, wrongdoing, or responsibility on their parts or on the parts of their predecessors, successors, parents, direct subsidiaries, indirect subsidiaries, affiliates, assigns, agents, their current and former directors, officers, employees, representatives, insurers, attorneys, and shareholders. The Parties expressly deny any such liability. In consideration of the allowance of the Allowed Claim(s), as of the Effective Date of the Plan, Claimant releases each Reorganized Debtor and its predecessors, successors, parents, direct subsidiaries, indirect subsidiaries, affiliates, assigns, agents, their current and former directors, officers, employees, representatives, insurers, attorneys, and shareholders, (collectively the "**Released Parties**"), from any and all claims, proofs of claim, debts, demands, damages, attorneys' fees, judgments, liabilities, causes of action, or controversies of any kind whatsoever (including, without limitation, any claim for post-petition interest), whether at law or in equity, whether matured or unmatured, whether before a local, state, or federal court or state or federal administrative agency or commission, or arbitration administrator, and whether now known or unknown, liquidated or unliquidated, that Claimant has, may have had, asserted, and/or may have asserted, against the Released Parties on behalf of itself, or any other person or entity, with respect to the Claims, or arising from or related to the facts asserted in the Proof(s) of Claim and/or the Scheduled Claims. The provisions of this Section A.2 are in addition to, and shall in no way be deemed to limit or modify, the release, discharge, injunction and other provisions of the Plan and Confirmation Order. Nothing contained in this release shall prevent the Parties from asserting or pursuing any claim to enforce the terms of this Agreement.

3.     Claimant understands that by the execution of this document, no further claims may be asserted by Claimant or its assigns against the Released Parties for these Claims. Accordingly, Claimant hereby waives any and all rights based upon the provisions, rights, and benefits conferred by any law of any state or territory that is similar, comparable, or equivalent to the California Civil Code section 1542, which reads as follows:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

4.     Claimant understands and acknowledges that it may have sustained or in the future may sustain additional injuries, damages or losses which may manifest themselves and which are presently unknown, but nevertheless it deliberately intends to, and hereby does, release the Released Parties and all other entities described in this Agreement from all such injuries, damages and losses occurring before the Petition Date. Claimant understands and agrees that this waiver is an essential and material term of this Agreement and the settlement which leads to it and that, without such waiver, the settlement would not have been entered into by Reorganized Debtors.

5.     Claimant acknowledges and agrees that the Reorganized Debtors or their agents are authorized to adjust the claims register to reflect allowance of the Allowed Claim(s) and the disallowance and expungement of any other claims asserted in the Proof(s) of Claim and/or Scheduled Claims or otherwise released by Claimant pursuant to this Agreement.

**B.     Miscellaneous Terms and Conditions.**

1.     This Agreement contains the complete agreement and understanding between the Parties.

2.     This Agreement shall be effective upon execution by the Parties.

3.     This Agreement may be executed in multiple counterpart originals, each of which shall constitute one and the same document and shall be deemed an original; it may be executed by facsimile or electronic signatures which shall be deemed to have the same force and effect as an original signature.

4.     This Agreement may be modified only by a written document signed by the Parties. No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

5.     Claimant hereby warrants and represents that it owns all of the claims asserted in the Proof(s) of Claim and/or Scheduled Claims or otherwise released in this Agreement and has not assigned or in any way transferred or conveyed all or any portion of such claims and that Claimant has the sole right and exclusive authority to execute this Agreement and receive the sums specified or reference in this Agreement  Claimant acknowledges and agrees that this warranty and representation is an essential and material term of this Agreement, without which the Reorganized Debtors would not have entered into it, and Claimant agrees to indemnify the

Reorganized Debtors against any losses they incur (a) as a result of (a) a breach of this warranty and representation, or (b) the invalidity of the transfer to Claimant of any of the Claims.

6.    Each party acknowledges that it has had the opportunity to consult with legal counsel of its choosing prior to entering into this Agreement and that it enters this Agreement knowingly and voluntarily.

7.    Each party shall bear his, her or its own attorney fees and costs arising from this Claim or in connection with the Agreement, the Proof of Claim and the matters and documents referred to herein, and all related matters.

8.    By executing this Agreement, each Party represents to the other that (a) the person executing this Agreement on its behalf is duly authorized and empowered to execute and deliver this Agreement; and (b) this Agreement constitutes the legal, valid and binding obligation of such Party, enforceable against it in accordance with the Agreement's terms.

9.    Each Reorganized Debtor hereby represents that it has authority pursuant to the Plan to enter into this Agreement without further authorization of the Bankruptcy Court.

10.    The Parties cooperated in the drafting of this Agreement, and in the event that it is determined that any provision herein is ambiguous, that provision shall not be presumptively construed against any Party.

11.    The Parties agree that the terms of this Agreement, other than the identification of the Claims resolved hereby and the amount of the Allowed Claim(s), are confidential. The Parties and their respective counsel agree to keep all other terms of this settlement completely confidential and agree not to disclose any information concerning this Agreement, the terms of the settlement, or the settlement communications between the Parties, to any person or entity, unless such disclosure is: (a) necessary to report the settlement to their respective lawyers, tax advisors, accountants, and/or insurers; (b) lawfully required by any governmental agency; (c) otherwise required to be disclosed by law; or (d) necessary in any legal proceeding to enforce any provision of this Agreement.

12.    This Agreement shall be governed, in all respects, under the laws of the State of California, irrespective of its choice of law rules.

13.    The Parties agree that the Bankruptcy Court shall retain jurisdiction over the Parties with respect to any matters related to or arising from the Agreement or the implementation of this Agreement.

*[Remainder of Page Intentionally Blank]*

IN WITNESS WHEREOF, the Parties hereby execute the Agreement as of the date above written.

Signature:_____     Signature:_____

Printed Name: Renee Records             Printed Name: _____

Title: Claims Investigator, Manager     Title:_____

Representative for the Reorganized Debtors    Representative for the Claimant

# Exhibit A
## Summary of Scheduled Claims and Filed Proofs of Claim

| Creditor ID | Claim # | Claimant | Claim Type | Debtor Entity | C | U | D | Asserted or Scheduled Amounts | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Secured | Administrative | Priority | Unsecured | Total |
| 1266324 | 2932 | Weaver, John I | Filed/Asserted | PG&E Corporation | ☐ | ☑ | ☐ | $0.00 | $0.00 | $0.00 | $8,000.00 | $8,000.00 |
| 1266324 | 1034594 | JOHN WEAVER | Scheduled | Pacific Gas and Electric Company | ☐ | ☐ | ☐ | $0.00 | $0.00 | $0.00 | $3,000.00 | $3,000.00 |

Where c = contingent, U = unliquidated, D = disputed

1266324

# Exhibit B
## Allowed Claim(s)

| Creditor ID | Claim # | Claimant | Claim Type | Debtor Entity | Allowed Amounts | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Secured | Administrative | Priority | Unsecured | Total |
| 1266324 | 2932 | Weaver, John I | Filed/Asserted | PG&E Corporation | $0.00 | $0.00 | $0.00 | $7,600.00 | $7,600.00 |
| | | | | **Exhibit B Total** | $0.00 | $0.00 | $0.00 | $7,600.00 | $7,600.00 |

**RE: In re PG&E Corporation, et al., Case No. 19-30088-DM, United States Bankruptcy C
ourt for the Northern District of California (San Francisco Division)**

ljweav@att.net/inbox

 **Dara Silveira** <dsilveira@kbkllp.com>
To: John Weaver <ljweav@att.net>

Mar 24 at 9:26 AM

The payment will be processed after the settlement agreement is signed and sent back to PG&E.

Best regards,
Dara

D A R A   L E V I N S O N   S I L V E I R A
650 California Street, Suite 1900
San Francisco, CA 94108
Direct: 415.364.6790
Cell: 415.735.5713
Email: dsilveira@kbkllp.com

**K B K** | K E L L E R   B E N V E N U T T I   K I M
w w w . k b k l l p . c o m

*NOTE: New firm name and email addresses effective March 1, 2020.

**From:** John Weaver <ljweav@att.net>
**Sent:** Wednesday, March 24, 2021 9:25 AM
**To:** Dara Silveira <dsilveira@kbkllp.com>
**Cc:** John Weaver <ljweav@att.net>
**Subject:** Re: In re PG&E Corporation, et al., Case No. 19-30088-DM, United States Bankruptcy Court for the Northern District of California (San Francisco Division)

Ms. Silveira:

The stipulation "and other good and valuable consideration exchanged among the Parties, the receipt and sufficiency of which is hereby acknowledged" in the Agreement received from Zack Knapp, is understood to include the $ 7,600, payment. When should I expect to receive it?

Thank you,

John

> On Tuesday, March 23, 2021, 09:10:33 AM PDT, Dara Silveira <dsilveira@kbkllp.com> wrote:
>
> Mr. Weaver,
>
> The Reorganized Debtors accept your counteroffer of $7,600.
>
> Claim No. 1034594, as referenced in Exhibit A to the previous proposed settlement agreement, was the claim the Debtors filed in their bankruptcy schedules reporting that they viewed the fair value of your claim as $3,000; that claim has been superseded by the bankruptcy claim you filed (No. 2932).
>
> The settlement for $7,600 will be in full and final satisfaction of all of your claims against PG&E. I'll have Zack Knapp send you another PDF of the settlement agreement. Please sign and email it back at your earliest convenience.
>
> I will report this settlement to the Court at tomorrow's 10:00 a.m. hearing. You do not need to attend the hearing.
>
> Thank you and best regards,
> Dara
>
> PS – I spoke to Mr. Klassen regarding the mail he received. Thank you for notifying me.
>
> D A R A   L E V I N S O N   S I L V E I R A
> 650 California Street, Suite 1900
> San Francisco, CA 94108
> Direct: 415.364.6790
> Cell: 415.735.5713
> Email: dsilveira@kbkllp.com
>
> **K B K** | K E L L E R   B E N V E N U T T I   K I M
> w w w . k b k l l p . c o m
>
> *NOTE: New firm name and email addresses effective March 1, 2020.
>
> **From:** John Weaver <ljweav@att.net>
> **Sent:** Monday, March 22, 2021 4:25 PM
> **To:** Dara Silveira <dsilveira@kbkllp.com>
> **Cc:** John Weaver <ljweav@att.net>
> **Subject:** Re: In re PG&E Corporation, et al., Case No. 19-30088-DM, United States Bankruptcy Court for the Northern District of California (San Francisco Division)

https://mail.yahoo.com/b/search/keyword=Q90zyKcvbbgmq37SG850HD5a0Eo-1&accountIds=1/messages/AEPFyqoiJHUqYFtoTQKvgNnwzf0?folde...   1/3

Ms. Silveira:

Claim No. io1034594 was most recently referenced in Exhibit A, Summary of Scheduled Claims and Filed Proofs of Claim), that came with SETTLE AGREEMENT NUMBER 1175, Mar.15 from Zachary Knapp.

A telephone call was received this morning from Frank Classen, in Arizona, that he had received mail from Prime Clerk, in New York supposed to be delivered to me. It appears he may also have an outstanding claim.

Would you consider $ 7,600 to resolve our difference to proceed with a settlement?

Thank you,

John Weaver

On Monday, March 22, 2021, 09:49:53 AM PDT, Dara Silveira <dsilveira@kbkllp.com> wrote:


Mr. Weaver,

Exhibit C to Docket No. 10438 does include one photo of the tree. I filed the six scanned pages you sent to my colleague Peter Benvenutti on November 30, 2020. Any other photographs submitted with your proof of claim already are before the Court.

The Reorganized Debtors agree that you have not submitted a claim for $3,000. Rather, the Reorganized Debtors reported to the Court in the Forty-Fifth Omnibus Objection, Docket No. 9466 (attached) that they believed the fair value of Claim No. 2932 was $3,000.

We're not aware of Claim No. 1034594. The original claim you filed directly with PG&E is Claim No. B19445364. The claim you filed in the bankruptcy case is Claim No. 2932. Claim No. 2932 superseded Claim No. B19445364. As we discussed last week, we propose to settle Bankruptcy Claim No. 2932 for $7,000. Such a settlement would release Claim No. B19445364; in other words, you would receive $7,000 in full and final satisfaction of all your claims against PG&E.

Please let me know if you would like to proceed with a $7,000 settlement.

Thank you very much, and best regards,
Dara

DARA LEVINSON SILVEIRA
650 California Street, Suite 1900
San Francisco, CA 94108
Direct: 415.364.6790
Cell: 415.735.5713
Email:dsilveira@kbkllp.com

KBK | KELLER BENVENUTTI KIM
      www.kbkllp.com

*NOTE: New firm name and email addresses effective March 1, 2020.

**From:** John Weaver <ljweav@att.net>
**Sent:** Sunday, March 21, 2021 6:12 PM
**To:** Dara Silveira <dsilveira@kbkllp.com>
**Cc:** John Weaver <ljweav@att.net>
**Subject:** Re: In re PG&E Corporation, et al., Case No. 19-30088-DM, United States Bankruptcy Court for the Northern District of California (San Francisco Division)

Hello Ms. Silveira:

Exhibit C should also include the picture of the dead tree stem surrounded by snow, which was included in my claim submittal for $ 8, 000. etc.

Please send me a copy of the submittal for claim 2932 in the amount of $ 3,000.

Although I responded to several queries about Claim 2932, I did not file a claim for $ 3,000. I did submit a claim for ($ 8,000 plus amount deemed appropriate as indicated in the attached) which was acknowledged May 06, 2019.

What is the status of claim 1034594?

Because of the confusion of two separate claims being submitted, in my name, I may have been mistaken in the amount being considered to settle my loss, and your attempt to reach a resolution. What do you believe would be a fair compromise to our differences?

Thank you

John Weaver

On Friday, March 19, 2021, 07:32:31 PM PDT, Akter, Sonia <sakter@primeclerk.com> wrote:

Please find below a link to the following important document recently filed in the bankruptcy proceedings of PG&E Corporation, Case No. 19-30088-DM, United States Bankruptcy Court for the Northern District of California (San Francisco Division):

- **Statement of Reorganized Debtors' Report on Status and Resolution of Omnibus Objections with Respect to Certain Claims, Hearing Scheduled for March 24, 2021 at 10:00 a.m. (PT) (Related Documents: 9455, 9458, 9460, 9462, 9464, 9466, 9711) [Docket No. 10438]**

For additional information, and to download all documents filed in the Debtors' chapter 11 cases free of charge,please visit **https://restructuring.primeclerk.com/pge.**

Case: 19-30088    Doc# 10624    Filed: 05/04/21    Entered: 05/06/21 09:05:23    Page 17 of 21

*Quality. Partnership. Expertise. Innovation.*
For more information click here:https://www.primeclerk.com/why-choose-us

For Prime Clerk's email disclaimer, please click here:http://primeclerk.com/email-disclaimer/

## Re: Settlement Agreement

 **John Weaver** <ljweav@att.net>
To: Dara Silveira <dsilveira@kbkllp.com>
Cc: John Weaver <ljweav@att.net>

Apr 10 at 9:51 PM

Hello Dara Silveira:

Another Hearing on my Claim is not my request. In June, 2017 my property was damaged by agents of PG&E. The amount of the damages was reviewed and settlement was agreed with a Designated PG&E Representative in October 2018. It was confirmed with another Designated PG&E Representative. Later in 2018 a check was received as part of the agreed compensation, and a Designated PG&E Representative indicated he was having difficulty concerning removal of the dead tree stem portion of our agreed settlement.

A check from PG&E was received , with the following stipulation "READ RELEASE BEFORE ENDORSING Endorsement by the named payee or payees constitutes a complete and final release of all claims of whatever kind or nature, whether known or unknown, and including injury to persons and damage to property, that the undersigned now has or may hereafter have against Pacific Gas and Electric Company or any person, arising out of or in any way connected with, directly or indirectly, the accident, casualty or event referred to on the face hereof. All rights under Section 1542 of the Civil Code of California are expressly waived, and it is agreed that this release extends to all unknown and unanticipated injuries and damages."

When the Designated PG&E Representative was contacted, and reminded the settlement agreement had not yet been fulfilled, and that the Endorsement was not correct, he indicated he had done all he could do, and there was nothing he could do about the standard payment check. Because of the potential PG&E Bankruptcy, he suggested I accept the check.

PG&E filed bankruptcy, the tall dead tree stem had not removed per agreement. My claim for ($ 8,000 plus) was filed with the Bankruptcy court. (The tall dead tree stem was removed later, but not before I suffered additional damages.) As a Designated PG&E Representative, you negotiated a settlement agreement with me for $ 7,600. PG&E has indicated I must endorse their 7 page standard Settlement Agreement, which contains at least two false statements plus my indemnification of PG&E from unknown parties. This is unacceptable, however the PG&E standard payment check for $ 7,600.00 , with the notation used on the earlier check, in my opinion, would complete our settlement agreement.

The Designated PG&E Representatives, with whom I've negotiated my claim, have all been gracious and professional, however when PG&E changes what I thought had been agreed, the Designated PG&E Representatives can do nothing about it.

The fair value of my claim seemed to have been previously established, and a negotiated settlement amount agreed, however the payment is disputed by PG&E, and I do not know how another Hearing will resolve that. At the Hearing March 24 the Court was informed by both of us that a settlement had been reached. If the Court cannot obtain PG&E compliance of our agreed settlement of $7,600, without my endorsing a document which contains at least two false statements plus my indemnification of PG&E against unknown parties, which I am unwilling to do, I do not know how another Hearing on my ($ 8,000 plus) claim, regardless of the amount decided by the Court, would obtain PG&E compliance.

However if there is another Hearing, I am amenable to continuing the Hearing from April 28 to May 11.

Best Regards,


John Weaver
2948 E Joaquin Place
Fresno, Calif. 93726
Ljweav@att.net

On Thursday, April 8, 2021, 02:44:25 PM PDT, Dara Silveira <dsilveira@kbkllp.com> wrote:


Mr. Weaver,

The language you reference in the settlement agreement is standard and we don't have flexibility to modify it.  If, as you indicate in your letter, you'd like to move forward with a hearing on your Claim, I request that we continue the hearing from April 28 to May 11 at 10:00 a.m.  I have an oral argument in another case on April 28, and it cannot be moved.  Since your letter to the Court references our conversations, I believe I should be present at the hearing.  Please confirm that you're amenable to continuing the hearing to May 11.

Thank you, and best regards,
Dara

DARA LEVINSON SILVEIRA
650 California Street, Suite 1900
San Francisco, CA 94108
Direct: 415.364.6790
Cell: 415.735.5713
Email: dsilveira@kbkllp.com


*NOTE: New firm name and email addresses effective March 1, 2020.

-----Original Message-----
From: John Weaver <ljweav@att.net>
Sent: Thursday, April 8, 2021 10:46 AM
To: Dara Silveira <dsilveira@kbkllp.com>
Cc: ljweav@att.net
Subject: Settlement Agreement

Hello  Ms. Silveira:

Attached is a copy of my letter to the Bankruptcy Judge to confirm that we had not reached a settlement.

Is it possible to receive the "valid consideration", or a modified standard from bankruptcy settlement agreement prior to the scheduled hearing?

Thank You

John Weaver



JOHN I WEAVER
2946 E JOAQUIN PL
FRESNO, CA 93726-4230

RECEIVED
MAY - 4 2021
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

RECEIVED
MAY 08 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

Honorable Dennis Montali
U.S. Bankruptcy Judge
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION
450 Golden Gate Avenue
San Francisco, California 94102