Theresa Ann McDonald
5044 Russell Drive
Paradise, CA 95969
Phone Number: 530-636-3148
Tmcdonald120@yahoo.com

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT
## (SAN FRANCISCO DIVISION)

In re:
PG&E CORPORATION

    -and-

PG&E GAS AND ELECTRIC COMPANY
    Debtors
  vs.
Theresa Ann McDonald
    Creditor

Bankruptcy Case
No. 19-30088-DM
Chapter 11
(Lead Case)
(Jointly Administered) Case
No. 19-30089-DM

Proof of Claim No. 54975
Filed October 21, 2019
Camp Fire
Judge: Honorable Dennis Montali

Reply to Fire Victim Trustee's Response to Emergency Pleading of Theresa Ann McDonald Seeking Explanation of Fire Victim Trust Annual Report

Relief Sought: Complete Explanation of the Funding, Income, and Expenses of the Fire Victim Trust for the year 2020.

No Hearing is Requested

    The court deprived Trust beneficiaries of their right to require financial accounting from the Trust. In doing so the court acquired the obligation to ensure that the Trust was properly funded and that funds were expended

properly. We literally have no other recourse except to petition the court to order the Fire Victim Trustee to answer our questions.

It has been a few days since the Fire Victim Trustee submitted his Response to my Emergency Motion asking the court to order the Trustee to explain the discrepancy between the cash due to the Fire Victim Trust and the funding reported in the Annual Report. I have not seen any reaction from the court, so in the interest of preserving my rights I am submitting this Reply to the Fire Victim Trustee's Response.

Under the terms of the PG&E Fire Victim Trust Agreement dated July 1, 2020, the Fire Victim Trustee is required to submit an Annual Report. The Trust's financial records began on the date the first deposit was made to the Pre-Effective Date Operating Expense Account which should have happened by April 17, 2020. Therefore the Annual Report should cover the period from the date of that first deposit through December 31, 2020. It does not. It covers only the period from July 1, 2020 through December 31, 2020, which is the source of much of the confusion surrounding the numbers contained in the Report. It means that not only is the Trust's funding reported incorrectly, but also that the Trust's Operating Expenses are under-reported by $15,382,436.70. The Annual Report is not only wrong, it is extremely misleading.

Despite the Fire Victim Trustee's statement that the Fire Victims' Trust was due only $5.4 billion in cash from the Debtors, it is a fact that the total cash

due to the Fire Victim Trust from Debtors was $5,402,500,000.00. I arrived at that number by adding the $5.4 billion required by the Plan to the $2.5 million payment required by documents 6759 and 6760, a payment that was not permitted to be treated as an advance of Trust funds.

In his Response to the Emergency Motion the FV Trustee refers to a $2,500,000.00 payment that the Debtors were ordered to make to the Trust's Pre-Effective Date Operating Expense Account (Dkt 10619, page 3 lines 3-9). However, footnote 2 makes it clear he has confused the payment the Debtors were ordered to make to BrownGreer (paragraph 5 of Docket #6760) with the payment the Debtors were ordered to make to the Trust's account (paragraph 6 of Docket #6760). Because the Trustee does not include the $2,500,000.00 in the deposits made to the Trust's account I cannot be certain it was actually received. The $2,500,000.00 was not to be treated as an advance to the Trust.

My first question to the Trustee is whether the Trust's Pre-Effective Date Operating Expense Account received three deposits from the Debtors for a total of $17,035,185.00 or did it receive only two deposits from the Debtors for a total of $14,535,185?

My second question to the Trustee is how was the $1,811,166.00 calculated as a balance in the Pre-Effective Date Account that should be transferred to the Post-Effective Date Account?

The Trustee's response does not make sense, although it does call into

further doubt whether or not the Debtors made the initial $2,500,000.00 payment to the Trust.

> Finally, Note 3 to the Annual Report also states that there was an "additional Cash contribution" of $1,811,166. This amount was transferred from the Pre-Effective Date Operating Account and is primarily comprised of funds remaining in that account from the pre-Effective Date transfer of $14,535,185 after all pre-Effective Date fees and expenses were paid. (Docket 10619, page 4, lines 6-9)

The Trustee submitted three documents to the court explaining the payments that were being made out of the Trust's Pre-Effective Date Operating Expenses Account. Docket #7329, Docket #7956, and Docket #8410. Those three reports total $15,382,436.50.

If the Trust spent the reported $15,382,436.50 out of the Pre-Effective Date Operating Expense Account then in order for the Account to have a balance of $1,811,166.00 available to transfer to the Post-Effective Date Operating Expense Account the Pre-Effective Date Account would have had to receive deposits totaling $17,193,602.40 not the $14,535,815 the Trustee reports. The numbers simply do not add up.

I am an accountant. For more than 40 years this is what I did - I looked at reports that were submitted and I found discrepancies. Sometimes they were true errors - information that was not included in the report was included in the totals - and sometimes they were the result of embezzlement. I do not mean to

imply that embezzlement is happening at the Trust, yet, but I can tell the court that when there is this much cash available and it is not being tracked carefully the potential for embezzlement is huge.

I have no data that would allow me to question the accuracy or appropriateness of more than $54 million in Operating Expenses in less than a full year ($15,382,436.70 in Pre-Effective Date expenses reported on court docket numbers 7329, 7956, and 8410 and $38,748,564.00 reported on court docket number 10601).

There is data that should allow me to verify that the Trust was funded properly. That data indicates at least a problem with the reporting of the funding, a problem the Fire Victim Trustee's Response does not explain.

I am not asking for a lot of information. I would like to see verification from the Fire Victim Trust's bank that the following deposits were made. The dates are "due by" dates, so the actual transactions may have happened earlier.

1. April 17, 2020    $   2,500,000.00
2. May 30, 2020      $   9,767,593.00
3. June 30, 2020     $   4,767,592.00
4. July 1, 2020      $5,385,464,815.00

Total Deposits/Transfers    $5,402,500,000.00

If the initial $2,500,000.00 deposit was not made, then the Fire Victim Trust received only $5,400,000,000.00 and was underfunded by $2,500,000.00.

In that case the Reorganized Debtors need to issue that payment to the Trust, along with interest from April 17, 2020, at the Federal Rate.

Finally, while there is not sufficient data available for me to make any determination regarding the validity of either the Pre-Effective Date or Post-Effective Date Operating Expenses that does not mean there is not sufficient confusion regarding those numbers to require an explanation from the Fire Victim Trustee.

The three Pre-Effective Date Summary Report of Fees and Expenses of Fire Victim Trustee, Claims Administrator & Professionals Retained By Fire Victim Trust are very clear in what expenses were paid.

    A. Docket 7329  1/13/2020 to 3/31/2020    $ 1,790,477.16

    B. Docket 7956  4/1/2020 to 4/30/2020    $   126,510.00

    C. Docket 8410  5/1/2020 to 6/30/2020    $13,465,449.54

    Total Pre-Effective Date Expenses Paid    $15,382,436.70

Is there any method of depositing $14,535,185.00, making expenditures of $15,382,436.70 and still having a balance of $1,811,166.00 available to transfer to another account? Yes, I can think of two without even trying. The first is that the account was closed and the balance transferred while there were still millions of dollars of checks that simply had not yet cleared the bank. The second is that there were millions of dollars of duplicate payments included in the $15,382,436.70 of payments that the court was notified of, and that the

payees were honest enough to return the payments to the Trust but the Trustee never notified the court of the errors. Either of those conditions is indicative of major problems with the accounting being conducted at the Trust, and those problems need to be resolved sooner rather than later.

Every dollar amount I have used in this reply is based on either the Plan ($5.4 billion) or documents prepared by or for the Fire Victim Trustee and submitted by him to this court. There is no legitimate way to combine the numbers reported for the Pre-Effective Date Operating Expense Account and arrive at a positive balance of $1,811,166.00. That means it is not possible to reconcile those numbers to the numbers shown in the Annual Report.

All I can do is report to the court that there is no method of reconciling the deposits reported as being made to the Trust's Pre-Effective Date Operating Account and the payments reportedly issued by that account and end up with an excess of $1,811,166.00 to transfer to the Trust's Post-Effective Date Operating Account.

All I can do is beg the court to at least order the Fire Victim Trustee to produce a spreadsheet with supporting documents that shows how the $1,811,166.00 amount was arrived at and then explain why the numbers on that spreadsheet do not agree with the numbers previously reported to the court.

For the avoidance of doubt $1,811,166.00 is not simply a number mentioned in a footnote in the Annual Report that can be regarded as

insignificant. It is one of three sums used to calculate the Trust's Funding reported on Page 12 of the Annual Report, Special-Purpose Statement of Changes in Net Claimants' Equity:

```
Cash Transferred from Debtors                      $5,385,464,815
Cash Transferred from Pre-Effective Date Account        1,811,166
Stock Transferred from Debtors                      4,314,077,007
                              Trust Funding        $9,701,352,988
```

I did not make up these numbers. They come from the Annual Report provided by the FV Trustee. I am certain the court understands that Equity is an integral part of every financial statement. If Equity is wrong then the entire financial statement is wrong.

Finally, I need to repeat my request that the court reconsider its decision to deny Trust Beneficiaries access to the Trust's financial records. We should have the ability to require a full accounting from the Trustee, without having to spend the court's valuable time serving as a mediator. The Trust was established for our benefit. We should be able to see how it is being managed.

Respectfully,

_May 7, 2021_                  _Theresa Ann McDonald_
Date                                                    Theresa Ann McDonald

Signed and resubmitted May 13, 2021