Mark A Klein
19405 Park Ridge Drive
Hidden Valley Lake CA 95467
(707) 987-8457
maklein@ix.netcom.com
*Pro Se*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>Affects Pacific Gas and Electric Company | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**RESPONSE OF CLAIMANT, MARK A. KLEIN AND JANET S. KLEIN, HUSBAND AND WIFE, TO REORGANIZED DEBTORS' FURTHER OBJECTION TO CLAIM 80500**<br><br>Date: June 15, 2020<br>Time: 10:00 a.m.<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br>Judge: Hon. Dennis Montali |

# TABLE OF CONTENTS

|     |     |                                                                                                                                                                                                                                                                                                                     | Page |
| --- | --- | ------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | ---- |
| I.  |     | PRELIMINARY STATEMENT……………………………………………….......                                                                                                                                                                                                                                                                     | 1    |
| II. |     | BACKGROUND AND UNDISPUTED FACTS………..…………………………..….                                                                                                                                                                                                                                                                 | 2    |
| III.|     | ARGUMENT……………………………………………………………………......                                                                                                                                                                                                                                                                           | 4    |
|     | A.  | California Public Utilities Code § 1759 Does Not Preempt Claimant's Claim.........                                                                                                                                                                                                                                  | 4    |
|     | B.  | At the Time Claimant's Claim Arose and When Claimant Suffered Damages, the CPUC Had Not Exercised Its Authority to Permit the Utility to Cut Power Deliberately. Therefore, Part (2) of the *Covalt* Test Was Not Satisfied……………                                                                                    | 4    |
|     | C.  | Claimant's Claim Does Not Hinder or Interfere with the CPUC's Exercise of Regulatory Authority. Accordingly, the Third Prong of the *Covalt* Test Is Also Missing…………………………………………………………………….......                                                                                                                | 6    |
|     | D.  | Claimant Has Already Proven That PG&E Caused Claimant's Generator Expense……………………………………………………………………………..                                                                                                                                                                                                           | 7    |
|     |     | 1. Claimant's Claim is Not in Tort for Negligence...……………..…..............                                                                                                                                                                                                                                         | 7    |
|     |     | 2. Claimant Seeks Reimbursement of the Cost of Purchasing and Installing a Standby Generator Necessitated by the Utility's Deliberate and Unauthorized Failure, In Breach of the Utility's Contract with Claimant, to Supply Electric Power to the Residence...…………………........................                     | 10   |
|     | E.  | Tariff Rule No. 14 Does Not Insulate PG&E from Its Own Negligence………….                                                                                                                                                                                                                                              | 11   |
| IV. |     | CONCLUSION…………………………………………………………………......                                                                                                                                                                                                                                                                           | 12   |

# TABLE OF AUTHORITIES

**Cases**

*Acadia, California, Ltd. v. Herbert*, 54 Cal.2d 328, 5 Cal. Rptr. 686, 353 P.2d 294 (1960).......... 9

*Gantner v. PG&E Corp. (In re PG&E Corp.)*, Bankruptcy Case No. 19-30088-DM
 (Bankr. N.D. Cal. Mar. 30, 2020)................................................................................ passim

*Gantner v. PG&E Corp. et al.*, Case No. 20-cv-02584-HSG (N.D. Cal. Mar. 26, 2021) ..... passim

*Hartwell Corp. v. Superior Court,* 27 Cal. 4th 256, 115 Cal. Rptr. 2d 874,
 38 P. 3d 1098 (2002) ........................................................................................................ 6

*Langley v. Pacific Gas Elec. Co.*, 41 Cal.2d 655, 262 P.2d 846 (1953) ..................................... 12

*Perry v. Robinson*, 201 Cal.App.3d 333, 247 Cal. Rptr. 74 (1988)............................................... 9

*Reichert v. General Ins. Co.,* 68 Cal.2d 822, 830, 69 Cal. Rptr. 321, 442 P.2d 377 (1968)…….10

*San Diego Gas Electric Co. v. Superior Court*, 13 Cal.4th 893, 55 Cal. Rptr. 2d 724,
 920 P.2d 669 (1996) (*Covalt*) ................................................................................... passim

*Tesoro Refining & Marketing Co. LLC v. Pac. Gas & Elec. Co.*, 146 F.Supp.3d 1170 (N.D. Cal. 2015)................................................................................................................................ 12

**Statutes**

California Civil Code § 1717 .................................................................................................... 9

California Public Utilities Code § 1759 ..................................................................... 2, 4, 6, 13

**Other Authorities**

Cooter & Eisenberg, *Damages for Breach of Contract* 73 Cal. L. Rev. 1434 (1985).................. 11

MARK A. KLEIN and JANET S. KLEIN, husband and wife (collectively "**Claimant**"), dispute the Reorganized Debtors' Further Objection ("**Debtors' Further Objection**") to Claimant's Proof of Claim filed herein on October 19, 2019 (No. 80500) ("**Claimant's Claim**" or the "**Klein POC**") and submits this Response ("**this Response**") to Debtor's Further Objection.[1] In addition to this Response, Claimant relies on Claimant's Response to Debtors' Forty-Second Omnibus Objection filed herein on November 30, 2020 Docket 9634 ("**Claimant's Omnibus Response**") and Claimant's Claim.

## I. PRELIMINARY STATEMENT

*"Separate text from context and all that remains is a con."*[2]

Basking in their well-deserved satisfaction and glory of first having this Court dismiss the putative class action for negligence brought against Debtors by plaintiff Anthony Gantner[3] and then having Judge Gilliam affirm on appeal to the United States District Court the *Gantner* Dismissal,[4] Debtors' Further Objection seeks to stretch their victories to cover Claimant's Claim. That is a bridge too far. Their conundrum: despite Debtors' effort to characterize Claimant's Claim as one solely for negligence,[5] such claim is not necessarily based in tort, but on breach of contract and on breach of a utility's duty, independent of contract, to render adequate service to its consumers.[6] The facts underlying Claimant's Claim were not extant in the *Gantner* Proceedings and the facts that *are* present here thwart preemption of Claimant's Claim by Cali-

---

[1] Capitalized terms not otherwise defined in this Response have the respective meanings ascribed to them in Debtors' Further Objection. Except where otherwise indicated and except in the case of the *Gantner* Dismissal (Note 3, *infra*), Claimant's citations to pages in documents filed and docketed in this case are to the pages reflected in the footer added to such document by Prime Clerk.

[2] Quote by Stewart Stafford. See https://www.goodreads.com/quotes/9943709-separate-text-from-context-and-all-that-remains-is-a.

[3] *Gantner v. PG&E Corp. (In re PG&E Corp.)*, Bankruptcy Case No. 19-30088-DM (Bankr. N.D. Cal. Mar. 30, 2020) *available* at https://casetext.com/case/*Gantner*-v-pge-corp-in-re-pge-corp (herein the "***Gantner* Dismissal**").

[4] *Gantner v. PG&E Corp. et al.*, Case No. 20-cv-02584-HSG (N.D. Cal. Mar. 26, 2021), *available* at https://casetext.com/case/*Gantner*-v-pge-corp-1 (herein the "***Gantner* Appeal**" and collectively with the *Gantner* Dismissal, the "***Gantner* Proceedings**").

[5] Debtors argue in Debtors Further Objection: "While the Kleins' claim is framed as breach of contract, their legal theory mirrors Engel's: PG&E's alleged negligence necessitated PG&E's PSPS events." Debtors' Further Objection at p. 9:5-7.

[6] Claimant's Omnibus Response, Docket 9634, at pp. 3:8 – 4:9.

1

**RESPONSE OF CLAIMANT (CLAIM NO. 80500) TO**
**DEBTORS' FURTHER OBJECTION**

fornia Public Utilities Code § 1759 as interpreted and applied by the California Supreme Court in *Covalt*.[7]

Debtors' negligently maintained power lines and other equipment are important factors in Claimant's Claim, but not exclusively or automatically as a claim for negligence. Rather, Debtors' negligence is most relevant to show, and preclude excusing, the Utility's breach of its contractual and statutory duties to Claimant and to foreclose application of Tariff Rule 14 to Claimant's Claim.

## II.     BACKGROUND AND UNDISPUTED FACTS

The Court may recall that at the hearing of March 24, 2021 on Debtors' 42nd Omnibus Objection, counsel for the Debtors, Ms. Dara Silveira of Keller Benvenutti Kim, advised the Court that as a result of factual disputes involving the claims of Claimant and Mr. G. Larry Engel, such parties and Debtors' counsel had reached an understanding regarding a schedule for briefing and a status conference. In accordance with that agreement and this Court's Order thereon,[8] Debtors have filed Debtors' Further Objection. Yet, Debtors' Further Objection has not disputed any material fact[9] proffered by Claimant in Claimant's Claim or in Claimant's Omnibus Response. Accordingly, the following material and ultimate facts submitted by Claimant herein are undisputed[10]:

---

[7] *San Diego Gas Electric Co. v. Superior Court*, 13 Cal.4th 893, 55 Cal. Rptr. 2d 724, 920 P.2d 669 (1996) (herein "*Covalt*").

[8] Order Fixing Briefing and Status Conference Schedule with Respect to Claim Nos. 80500 (Mark A. Klein and Janet S. Klein) and 80033 (G. Larry Engel), Docket 10471, filed and entered March 29, 2021.

[9] The only fact proffered by Claimant that has been directly disputed in Debtors' Further Objection relates to whether or not a so-called PSPS event occurred on September 4, 2019. Debtors Further Objection at p. 9:27-28, n.3. If necessary, Claimant is prepared to show that a PG&E power outage encompassing Claimant's residence occurred on September 4, 2019. However, if that power outage was a PSPS event, it would be cumulative, and if it was not a PSPS event, it would be immaterial to Claimant's Claim. Accordingly, for purposes of this Response and Claimant's Claim, Claimant concedes that a PG&E power outage on September 4, 2019 was not a so-called PSPS event.

[10] Judging from the dearth of disputed material facts in Debtors' Further Objection, it is unclear why the Order referred to in Note 8 above was drafted to schedule a Status Conference on June 15, 2021 rather than a hearing on the merits. Inasmuch as there are no material facts disputed, Claimant requests under Local Bankruptcy Rule 3007-1(b) that the following Undisputed Facts be received by this Court as evidence: The Undisputed Facts contained in (a) the table of Undisputed Facts on page 3 of this Response, *infra*, (b) to the extent not duplicative (i) the Klein Declaration (see Note 11, *infra*) and (ii) the Klein POC.

2
RESPONSE OF CLAIMANT (CLAIM NO. 80500) TO
DEBTORS' FURTHER OBJECTION

Case: 19-30088    Doc# 10650    Filed: 05/14/21    Entered: 05/14/21 10:41:13    Page 5 of 17

| No. | Undisputed Facts | Source |
|---|---|---|
| 1 | Claimant owns and resides at the residential real property located at 19405 Park Ridge Drive, Hidden Valley Lake (the "**Residence**") in Northern California. | Klein Declaration[11] at p. 9:11-12. |
| 2 | During, at or shortly after, their purchase of the Residence in October 2004, Claimant orally contracted with the Utility to supply the Residence with electric power (the "**Contract**"). | *Id.* at p. 9:13-15. |
| 3 | Under the Contract, the Utility agreed to provide adequate and continuous electric power to the Residence in exchange for Claimant's agreement to pay Debtor's charges therefor as determined by the Utility in accordance with California law. | *Id.* at p. 9:15-17. |
| 4 | On or about March 21, 2018, the Utility announced that it would preemptively cut electric power during periods of "extreme fire conditions." | *Id.* at p. 10:3-4 |
| 5 | In accordance with and in furtherance of its announcement described in Undisputed Fact No. 4, the Utility deliberately cut power to Northern California customers, including Claimant, from October 14 to October 15, 2018. | *Id.* at p. 10:5-8. |
| 6 | The Utility has a monopoly in the supply of electric power to customers in Northern California, which monopoly effectively prevented and prevents Claimant from obtaining electricity from any utility other than Pacific Gas and Electric Company. | *Id.* at p. 10:15-18. |
| 7 | As a result of the Utility's announcement described in Undisputed Fact No. 4 and the intentional power outage described in Undisputed Fact No. 5 executed by the Utility from October 14 to October 15, 2018, effective December 1, 2018, Claimant entered into an agreement (the "**Generator Installation Agreement**") with a third-party dealer-installer for the purchase and installation of a standby generator and related materials and components at the Residence, at a cost to Claimant of $18,025. | *Id.* at pp. 11:11 to 12:3; Attachment to Klein POC; and Exhibits A and B to Klein POC.[12] |
| 8 | Work by Claimant's third-party dealer-installer relating to the installation of Claimant's standby generator at the Residence began on December 3, 2018 and was completed on May 14, 2019. | Klein Declaration at p. 12:4-5. |
| 9 | During the period from December 3, 2018 to May 14, 2019, Claimant paid the third-party dealer-installer an aggregate of $18,025 for the purchase and installation of Claimant's standby generator at the Residence in accordance with the Generator Installation Agreement and the invoices delivered to Claimant pursuant thereto. | *Id.* at p. 12:6-18; Exhibit C to Klein POC. |
| 10 | Claimant duly and fully performed all covenants, obligations and conditions required of Claimant under the Contract with the Utility, including timely paying all amounts charged by the Utility for the electric power provided to the Residence. | Klein Declaration at p. 12:20-24. |

---

[11] Declaration of Mark A. Klein in Support of Claimant's Response to Debtors' 42nd Omnibus Objection included with Claimant's Omnibus Response, Docket 9634 (the "**Klein Declaration**"), beginning at p. 9 of Claimant's Omnibus Response.

[12] Claimant's Proof of Claim 80500 filed October 19, 2019 ("**Claimant's Claim**" or "**Klein POC**").

## III. ARGUMENT

### A. California Public Utilities Code § 1759 Does Not Preempt Claimant's Claim.

Claimant does not dispute the *law* that is recited in Debtors' Further Objection[13] with respect to preemption by California Public Utilities Code § 1759 as explained by the California Supreme Court in *Covalt*.[14] However, Claimant does dispute two *assertion*s Debtors have included in that discussion, namely that (1) "[t]his Court lacks jurisdiction to hear the Claims under § 1759 of the California Public Utilities Code"[15] and that (2) "[a]ll three parts of the *Covalt* test are plainly satisfied here."[16]

Neither assertion is correct. As discussed below, the second and third parts of the three-part *Covalt* test are absent from this case, thus foreclosing the application of § 1759 of the California Public Utilities Code to Claimant's Claim. Accordingly, this Court has jurisdiction of Claimant's Claim.

### B. At the Time Claimant's Claim Arose and When Claimant Suffered Damages, the CPUC Had Not Exercised Its Authority to Permit the Utility to Cut Power Deliberately. Therefore, Part (2) of the *Covalt* Test Was Not Satisfied.

Claimant concedes that the California Public Utilities Commission ("**CPUC**") has the authority to regulate whether and when a utility may intentionally implement a power outage.[17] However, the CPUC did *not exercise that authority*, *i.e.*, actually authorize Debtors to shut off electric power to protect public safety, **until June 4, 2019.**[18] Accordingly, there was no "exercise of authority" by the CPUC to shut off electric power to protect public safety:

(1) *on March 21, 2018*, when the Utility anticipatorily breached the Contract to supply electric power to Claimant's Residence by announcing that it would preemptively cut electric power during periods of "extreme fire conditions";[19]

---

[13] Debtors' Further Objection at pp. 10:5 to 11:3.
[14] *Covalt, supra,* Note 7.
[15] Debtors' Further Objection at p. 10:5-6.
[16] *Id.* at p. 11:2-3.
[17] *Gantner* Dismissal, *supra*, Note 3, at p. 8; *Gantner* Appeal, *supra*, Note 4, at p 6.
[18] *Gantner* Dismissal, *supra*, Note 3, at p. 6, wherein this Court said:
   "On February 6, 2019, PG&E filed its 2019 Wildfire Safety Plan, specifying factors that it considers in deciding whether to conduct a PSPS. The CPUC considered and ultimately approved PG&E's 2019 Wildfire Safety Plan. See CPUC's Decision on Pacific Gas and Electric Company's 2019 Wildfire Mitigation Plan Pursuant to Senate Bill 901 issued *on June 4, 2019* (A.P. dkt. 8-9)" (Italics added).
[19] Undisputed Fact No. 4, *supra*, at p. 3 above.

4

(2) *on October 14 and 15, 2018*, when the Utility actually breached the Contract to supply electric power to the Residence by deliberately cutting power to Northern California customers, including Claimant;[20]

(3) *on December 1, 2018*, when Claimant became obligated under the Generator Installation Agreement to purchase and install a standby generator and related materials and components at the Residence, at a cost to Claimant of $18,025;[21] or

(4) *from December 3, 2018 through May 14, 2019*, when

(a) the work to install Claimant's standby generator at the Residence was performed;[22] and

(b) Claimant paid the installments required under the Generator Installation Agreement.[23]

Indeed, PG&E had not even submitted to the CPUC its Wildfire Protection Plan specifying factors that it considers in deciding whether to conduct a PSPS until *February 6, 2019*,[24] months after the Utility had already anticipatorily and actually breached the Contract with Claimant to provide electric power to the Residence and more than two months after Claimant acted and became obligated, as a consequence of the Utility's breaches, to purchase and install a standby generator under the Generator Installation Agreement.

In other words, unlike the facts involved in the *Gantner* Proceedings, wherein the allegedly negligent PSPS events upon which the action was based occurred "in October and November 2019"[25] *after* the CPUC had exercised its authority, all of the events underlying Claimant's Claim occurred *before* the CPUC had exercised its authority to regulate so-called PSPS events. Thus, the preemption doctrine annunciated in the *Covalt* case and controlling when the three-prong test is met, is inapplicable in this case because the second prong is missing. As Judge Gilliam said in the *Gantner* Appeal:

---

[20] Undisputed Fact No. 5, *supra*, at p. 3 above.
[21] Undisputed Fact No. 7, *supra*, at p. 3 above.
[22] Undisputed Fact No. 8, *supra*, at p. 3 above.
[23] Undisputed Fact No. 9, *supra*, at p. 3 above.
[24] *Gantner* Dismissal, *supra,* Note 3, at p. 3.
[25] *Id. at p.* 2; *Gantner* Appeal, *supra*, Note 4, at p. 6. ("In October and November of 2019, Debtors conducted the PSPS events that form the basis for Appellant's complaint").

"Accordingly, in deciding whether an action is barred by § 1759, a court must ask:

'(1) whether the [C]PUC had the authority to adopt a regulatory policy on the subject matter of the litigation; (2) *whether the [C]PUC had exercised that authority*; and (3) whether action in the case before the court would hinder or interfere with the [C]PUC's exercise of regulatory authority.'"[26] [Citation omitted] [Italics added].

### C. Claimant's Claim Does Not Hinder or Interfere with the CPUC's Exercise of Regulatory Authority. Accordingly, the Third Prong of the *Covalt* Test Is Also Missing.

Debtors next argue that the "[Klein POC] would hinder or interfere with the CPUC's ongoing regulatory authority over public safety power shutoff events because they seek to undermine policy decisions by the CPUC"[27] and that the "[Klein POC] directly interfere[s] with the CPUC's policy decisions"[28] by "seek[ing] damages from PG&E for engaging in . . . CPUC-authorized conduct."[29] In support, Debtors quote and cite extensively from the *Gantner* Appeal.[30]

In making these arguments and citing and quoting from the *Gantner* Proceedings, Debtors again take no notice that the Utility's conduct for which Claimant seeks redress occurred <u>before</u> the PUC exercised its authority with respect to PSPS events. Accordingly, neither the *Gantner* Proceedings nor *Covalt* apply to deprive this Court of jurisdiction over the Claimant's Claim.

Under circumstances analogous to those present in Claimant's Claim, the California Supreme Court held that a claim for damages based on a utility's wrongs taking place before the CPUC exercises its authority would <u>not</u> interfere with the CPUC's prospective regulatory authority.[31]

Of evident importance to Judge Gilliam's decision determining that the putative class action would interfere with the CPUC's regulatory authority over PSPS events, was his concern

---

[26] *Gantner* Appeal, *supra*, Note 4, at p. 5.
[27] Debtors' Further Objection at p. 11:15-17.
[28] *Id.* at p. 11:20.
[29] *Id.* at p. 12:3-4.
[30] *Id.* at p. 12:5-12.
[31] *See Hartwell Corp. v. Superior Court,* 27 Cal. 4th 256, 277, 115 Cal. Rptr. 2d 874, 38 P. 3d 1098 (2002) ("a lawsuit for damages based on past violations of water quality standards would not interfere with . . . a [CPUC] prospective regulatory program").

6
**RESPONSE OF CLAIMANT (CLAIM NO. 80500) TO**
**DEBTORS' FURTHER OBJECTION**

that "imposing liability on Debtors for implementing CPUC-approved PSPS events would force Debtors to choose between incurring potentially limitless negligence liability and protecting public safety in the manner dictated by the appropriate regulatory authority: CPUC."[32]

Aside from the breaches here underlying Claimant's Claim occurring before the CPUC approved Debtors' Wildfire Protection Plan, Judge Gilliam's concern over massive exposure is inapposite with respect to Claimant's Claim for $18,025. Moreover, any precedential value from this Court's determination entitling Claimant to receive distributions from the Debtors' estate would be practically limited only to those

- who purchased or installed generators between March 21, 2018, the date Debtors first announced their intent to deliberately cut power, and June 3, 2019, the day before the CPUC approved Debtors' Wildfire Protection Plan, *and*
- who timely filed valid proofs of claims herein seeking reimbursement for their generator expense.

Debtors' potential exposure to that narrow group (if there are any other than Claimant in that group) would hardly appear sufficient to interfere – even theoretically – with the CPUC's exercise of regulatory authority.

Hence, in addition to the second prong, the third prong of the *Covalt* preemption test is also missing here.

### D. Claimant Has Already Proven That PG&E Caused Claimant's Generator Expense.

#### 1. Claimant's Claim is Not in Tort for Negligence

Evidently because the *Gantner* Appeal has become the law of the case in these proceedings, Debtors appear determined to pigeonhole Claimant's Claim to fit the identical factual predicate involved in the *Gantner* Proceedings. That appears to explain why, despite the presence of clear and unambiguous allegations of breach of contract in Claimant's Claim, amplified in Claimant's Omnibus Response and sworn to under penalty of perjury in the Klein Declaration included as part of Claimant's Omnibus Response, Debtors insist that Claimant's Claim is

---

[32] *Gantner* Appeal, *supra*, Note 4, at p. 8. Judge Gilliam went on to note that "Appellant's argument that negligence liability would not affect Debtors' PSPS decision-making is belied by his damages claim of $2.5 billion for five PSPS events. *Id.* at p. 9 n. 6.

7

**RESPONSE OF CLAIMANT (CLAIM NO. 80500) TO DEBTORS' FURTHER OBJECTION**

grounded on negligence.[33]

Debtors are correct that Claimant does claim that PG&E's negligence necessitated the Utility's so-called PSPS events. But in doing so, Claimant is seeking to show the acts and omissions underlying the Utilities breach of the Contract and to prevent the Utility from trying to excuse its breach through some distorted altruism, *i.e.*, that the Utility implemented the so-called PSPS events selflessly to protect the public. While public protection may have been the regulators motive when the CPUC ultimately approved PG&E's Wildfire Protection Plan months after the Utility had breached the Contract with Claimant to supply electric power, *self-preservation* against massive liabilities incurred from its faulty equipment was clearly a motive for the Utility first announcing in March 2018 that it would preemptively cut electric power during periods of extreme fire conditions and then deliberately cutting it in October 2018.[34]

---

[33] Debtors' Further Objection, at p. 9:5-6. ("While the Kleins' claim is framed as breach of contract, their legal theory mirrors Engel's: PG&E's alleged negligence necessitated PG&E's PSPS events.")

[34] "[T]he orchestrated power outages aren't necessary for minimizing the threat of wildfires due to downed power lines, or fallen tree branches—all that's required is dedicated maintenance of the infrastructure that delivers electricity to homes, businesses, and whatever else may be using it. *But PG&E didn't maintain its power lines in Northern California properly, and now residents are paying for that lack of responsibility.* And paying in a very real sense too: The power outage is expected to cost the state's residents up to $2 billion." Hart, "*PG&E's Negligence Is Behind Massive Power Outages in California*," from Nerdist.com available at https://nerdist.com/article/california-power-outages-pge-negligence/. "CAL FIRE investigators have determined that 12 Northern California wildfires in the October 2017 Fire Siege were caused by electric power and distribution lines, conductors and the failure of power poles." Cal Fire News Release of June 8, 2018 available at https://s1.q4cdn.com/880135780/files/doc_downloads/wildfire_updates/June-8-2018-%E2%80%93-CAL-FIRE-Press-Release.pdf. "CAL FIRE has determined that the Camp Fire was caused by electrical transmission lines owned and operated by Pacific Gas and Electricity (PG&E) located in the Pulga area." Cal Fire News Release of June 8, 2018 available at https://s1.q4cdn.com/880135780/files/doc_downloads/wildfire_updates/May-15-2019-%E2%80%93-CAL-FIRE-Press-Release.pdf. In April 2020, Judge Alsup, overseeing PG&E's criminal probation resulting from the 2010 San Bruno gas explosion, said: "Pacific Gas & Electric Company, though the single largest privately-owned utility in America, cannot safely deliver power to California. This failure is upon us because for years, in order to enlarge dividends, bonuses, and political contributions, *PG&E cheated on maintenance of its grid — to the point that the grid became unsafe to operate during our annual high winds, so unsafe that the grid itself failed and ignited many catastrophic wildfires*. In the past three years alone, PG&E wildfires killed at least 108 and burned 22,049 structures. It will take years, now, for PG&E to catch up on maintenance so that the grid can safely supply power at all times." Order Modifying Conditions of Probation, *United States v. Pac. Gas & Elec. Co.*, No. 3:14-cr-00175-WHA (N.D. Cal. Apr. 29, 2020) at p. 1:14-22 (italics added). In May 2020, the CPUC voted to impose nearly $2 billion in penalties against PG&E for the 2017 and 2018 wildfires caused by its equipment. Morris, *Regulators penalize PG&E for 2017, 2018 fires — but no $200 million fine*, S.F. CHRON. (May 7, 2020), available at https://www.sfchronicle.com/business/article/Regulators-penalize-PG-E-for-2017-2018-fires-15254737.php. See also Nemec, "*Lapses' Found in PG&E Wildfire Record Lead Court to Consider More Probation Conditions*" (January 11, 2021) available at https://www.naturalgasintel.com/lapses-found-in-pge-wildfire-record-lead-court-to-consider-more-probation-conditions/.

It is not unusual for a breach of contract claim to result from a defendant's negligence. For example, in *Perry v. Robinson*,[35] plaintiff (Perry) claimed that Robinson, her real estate agent, was negligent in failing to set forth the full agreement and correct escrow instructions to sell Perry's home, which negligence caused Perry damages.[36] After trial and judgment for Perry, Perry moved for an award of costs and attorney's fees, which was opposed by Robinson on the ground that Perry had pursued a cause of action for negligence, a tort, and the action was therefore not an action on the contract within the meaning of California Civil Code § 1717.[37] The trial court ruled that Perry should recover her fees, reasoning that her cause of action sounded in tort *and* in contract and that Perry had made no irrevocable election to pursue only her tort remedy.[38] On appeal, Robinson argued that Perry's claim, as pleaded, was inconsistent with a legal theory of breach of contract. After observing that defendant had actual notice of Perry's contract claim,[39] the Court of Appeal in affirming the trial court said:

> "Of significance here, '[t]he same act may be both a breach of contract and a tort. Even where there is a contractual relationship between parties, a cause of action in tort may sometimes arise out of the negligent manner in which the contractual duty is performed. . . .' [Citation omitted] Conversely, where a contract gives rise to a duty of care, negligence in the performance of the duty may give rise to a cause of action for breach of contract. [Citation omitted.] When such a hybrid cause of action arises, the plaintiff may pursue both legal theories of recovery until an occasion for an election of remedies arises." [Citations omitted.][40]

Here, Claimant provided Debtors with ample notice of Claimant's intent to pursue a contract claim and has shown each of the essential elements required for such claim: (1) the

---

[35] 201 Cal.App.3d 333, 247 Cal. Rptr. 74 (1988).
[36] *Id.* at p. 336.
[37] *Id*. In general, California Civil Code § 1717 provides that in any action <u>on a contract</u> containing an attorney's fees provision, the prevailing party shall be awarded attorney's fees incurred to enforce the contract.
[38] *Perry v. Robinson, supra*, Note 35, at p. 337.
[39] *Id.* at p. 338.
[40] *Id.* at p. 340. *See also, Acadia, California, Ltd. v. Herbert*, 54 Cal.2d 328, 336, 5 Cal. Rptr. 686, 353 P.2d 294 (1960) ("An act that constitutes a breach of contract may also be tortious" and if so "plaintiff could recover either in contract or in tort.")

9
RESPONSE OF CLAIMANT (CLAIM NO. 80500) TO
DEBTORS' FURTHER OBJECTION

contract;[41] (2) plaintiff's (Claimant's) performance or excuse for nonperformance;[42] (3) defendant's (the Utility's) breach;[43] and (4) the resulting damages to plaintiff (Claimant).[44] *Reichert v. General Ins. Co.,* 68 Cal.2d 822, 830, 69 Cal. Rptr. 321, 442 P.2d 377 (1968).

> **2. Claimant Seeks Reimbursement of the Cost of Purchasing and Installing a Standby Generator Necessitated by the Utility's Deliberate and Unauthorized Failure, In Breach of the Utility's Contract with Claimant, to Supply Electric Power to the Residence.**

Without any supporting factual basis, Debtors assert that "Claimants chose to buy generators to provide standby power to their residences in the case from interruptions *from any cause*, which presumably meant that Claimants did not suffer any hardships at all from the power shutoffs that occurred after they purchased the generators."[45] Debtors add: "Many people across the country buy generators for the reliability and convenience they provide, including parts of the country with zero wildfire risk. Claimants do not articulate any damages they incurred as a result of their power being shut off . . .."[46]

By such assertions, Debtors ignore the facts heretofore offered supporting Claimant's Claim that Claimant purchased and installed Claimant's standby generator *as a result of* the Utility's announcement of March 21, 2018 that it would preemptively cut electric power during periods of "extreme fire conditions" and "in furtherance of its announcement deliberately cut power to Northern California customers, including Claimant, from October 14 to October 15, 2018."[47]

Those factual statements made by Claimant that the purchase and installation were the result of Debtors' actions in 2018 are absolutely consistent with Claimant's sworn narrative regarding Claimant's investigation of, preparation for, purchase and installation of, a standby

---

[41] Undisputed Fact Nos. 2 & 3, *supra*, at p. 3, above.
[42] Undisputed Fact No. 10, *supra*, at p. 3, above.
[43] Undisputed Fact Nos. 4 & 5, *supra*, at p. 3, above.
[44] Undisputed Fact Nos. 7 & 8, *supra*, at p. 3, above.
[45] Debtors' Further Objection at p. 12:21-24.
[46] Debtors' Further Objection at p. 12:24-25.
[47] Undisputed Fact Nos. 4, 5 & 7 *supra*, at p. 3, above.

10

**RESPONSE OF CLAIMANT (CLAIM NO. 80500) TO DEBTORS' FURTHER OBJECTION**

generator, all of which occurred in the immediate aftermath of PG&E's announcement of March 21, 2018 of its plan to cut power and its implementation of that plan in October 2018.[48]

In addition, the delay of nearly 14 years from the date Claimant purchased the Residence in 2004[49] to the date Claimant began preparations to install a standby generator in 2018[50] leads to a clear inference that the proximate cause of Debtors' purchase and installation of the generator was Debtors' announced preparation for, and actual implementation of, the so-called PSPS events.

The above facts are undisputed.

The damages caused Claimant were the cost of obtaining the only reasonably available alternative to the Utility's electric power monopoly – a standby generator to provide electric power during the periods that the Utility failed to perform the Contract by deliberately deciding to cut Claimant's power. Such damages are essentially the "substitute-price," permitting the victim of a breach of contract, like Claimant, to replace the Utility's promised performance with a substitute performance.[51] The fact that Claimant's generator also serves to supply electricity during other outages caused without fault or responsibility of the Utility, if any, is relevant neither to Claimant's Claim nor Debtors' defense to it.

E. **Tariff Rule No. 14 Does Not Insulate PG&E From Its Own Negligence.**

Finally, Debtors argue that "[a] plain reading of PG&E's Tariff Rule 14 provides that the decision to shut off a customer's power cannot trigger liability when, in PG&E's 'sole opinion', it is necessary for public safety."[52] Debtor cites and quotes from paragraph 4 of PG&E Tariff Rule 14. Not mentioned by Debtors except in passing is paragraph 1 of Tariff Rule 14. Paragraph 1 of Tariff Rule 14 not only precedes paragraph 4 in context, it trumps paragraph 4 in import, and provides:

---

[48] Claimant's sworn narrative describing Claimant's investigation of, preparation for, and purchase and installation of, a standby generator in 2018, is contained in the Klein Declaration, *supra*, Note 11, at pp. 11:12 to 12:5.
[49] Claimant's purchased the Residence in October 2004. Undisputed Fact No. 2, *supra*, at p. 3 above.
[50] Klein Declaration, *supra*, Note 11, at pp. 11:11 to 12:5.
[51] Cooter & Eisenberg, *Damages for Breach of Contract*, 73 Cal. L. Rev. 1434, 1439 (1985) ("The *substitute-price formula* awards the victim of breach the cost of replacing a promised performance with a substitute performance").
[52] Debtors' Further Objection at pp. 14:25 to 15:1. Given PG&E's checkered history, it is difficult to countenance a rule, which, if applied as suggested, would allow PG&E's "sole opinion" to determine what is necessary for public safety. It harkens back to the question: What is the difference between PG&E and God? *Answer*: God does not consider PG&E an alter ego.

> "*PG&E will exercise reasonable diligence and care to furnish and deliver a continuous and sufficient supply of electric energy to the customer*, but does not guarantee continuity or sufficiency of supply. PG&E will not be liable for interruption or shortage or insufficiency of supply, or any loss or damage of any kind of character occasioned thereby, if same is caused by inevitable accident, act of God, fire, strikes, riots, war, *or any other cause except that arising from its failure to exercise reasonable diligence.*[53]

In *Tesoro Refining & Marketing Co. LLC v. Pac. Gas & Elec. Co.*, 146 F.Supp.3d 1170 (N.D. Cal. 2015), the district court denied PG&E's motion for summary judgment based on its claim that it immunized itself under Tariff Rule No. 14, holding that Tariff Rule 14 was not intended to and did not absolve PG&E of liability for its own negligence. *Id.*, 146 F. Supp. 3d at 1187; *see also*, *Langley v. Pacific Gas Elec. Co.*, 41 Cal.2d 655, 660-61, 262 P.2d 846 (1953) ("In no way, [does Rule 14] abrogate defendant's general duty to exercise reasonable care in operating its system to avoid unreasonable risks of harm to the persons and property of its customers. (See Pub. Util. Code § 451.)"

Examples of PG&E's negligence in maintaining its infrastructure are legion.[54] That negligent performance breached the Utility's obligations under the Contract to provide electric power to Claimant. Therefore, Debtors negligence, *i.e.*, its failure to exercise reasonable diligence, forecloses PG&E's reliance on Tariff Rule 14.

## IV. CONCLUSION

Claimant's Claim, boiled down to its essentials, consists of an oral contract with the Utility to supply electric power to the Residence; negligently breached by the Utility through its failure to maintain its infrastructure at a time *before* the CPUC authorized the Utility to shutoff power ostensibly to protect public safety; with damages measured by Claimant's cost of replacing electric service with the only alternative reasonably available. Unique to Claimant's Claim is the timing of both Debtors' breach and of the damages Claimant suffered, which timing fore-

---

[53] PG&E Electric Rule 14 available at https://www.pge.com/tariffs/assets/pdf/tariffbook/ELEC_RULES_14.pdf (italics added).

[54] *See e.g.,* the authorities cited in Note 34, *supra*; *see also* the Cal. Fire Press Releases and Reports available by hyperlink from Debtors' website at https://investor.pgecorp.com/wildfire-updates/CAL-FIRE-Reports (attributing the causes of a myriad of Northern California wildfires to Debtors' powerlines or equipment).

12

**RESPONSE OF CLAIMANT (CLAIM NO. 80500) TO
DEBTORS' FURTHER OBJECTION**

closes preemption under California Public Utilities Code § 1759. The Utility's negligent performance also precludes its reliance on Tariff Rule 14.

      Accordingly, Claimant respectfully requests entry of an order denying Debtors' Objection and Further Objection as to Claimant's Claim and entitling Claimant to receive distributions from Debtors' estate in order to satisfy Claimant's Claim.

Dated: May 14, 2021.

                                          Mark A. Klein,
                                          *Pro Se*

# DECLARATION REGARDING SERVICE

I, Mark A. Klein, hereby declare under penalty of perjury that on May 14, 2021, I served the within "Response of Claimant, Mark A. Klein and Janet S. Klein, Husband and Wife, to Reorganized Debtors' Further Objection to Claim 80500" by transmitting it via email to the email addresses set forth below:

| | |
|---|---|
| PGEclaims@kbkllp.com | Peter J. Benvenutti, Esq.<br>pbenvenutti@kbkllp.com |
| Omid H. Nasab, Esq.<br>onasab@cravath.com | Jane Kim, Esq.<br>jkim@kellerbenvenutti.com |
| G. Larry Engel, Esq.<br>larry@engeladvice.com | Dara Levinson Silveira, Esq.<br>dsilveira@kbkllp.com |

I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of May, 2021, in Hidden Valley Lake, California.

_____
Mark A. Klein