WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

<table>
<tr><td></td><td>Bankruptcy Case No. 19-30088 (DM)</td></tr>
<tr><td>**In re:**</td><td>Chapter 11</td></tr>
<tr><td>**PG&E CORPORATION,**</td><td>(Lead Case) (Jointly Administered)</td></tr>
<tr><td>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**</td><td>**REORGANIZED DEBTORS' FIFTH SECURITIES CLAIMS OMNIBUS OBJECTION (NO LOSS CAUSATION – SECURITIES SOLD PRIOR TO THE FIRST PURPORTED "CORRECTIVE DISCLOSURE")**</td></tr>
<tr><td>**Debtors.**</td><td>**Response Deadline: June 16, 2021, 4:00 p.m. (PT)**</td></tr>
<tr><td>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM).</td><td>**Hearing Information If Timely Response Made:**<br>Date:  June 30, 2021<br>Time:  10:00 a.m. (Pacific Time)<br>Place: (Telephonic Appearances Only)<br>   United States Bankruptcy Court<br>   Courtroom 17, 16th Floor<br>   San Francisco, CA 94102</td></tr>
</table>

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

Case: 19-30088    Doc# 10665    Filed: 05/19/21    Entered: 05/19/21 17:41:24    Page 1 of 12

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO:   (A)   THE   HONORABLE   DENNIS   MONTALI,   UNITED   STATES   BANKRUPTCY JUDGE; (B) THE OFFICE OF THE UNITED STATES TRUSTEE; (C) THE AFFECTED CLAIMANTS; AND (D) OTHER PARTIES ENTITLED TO NOTICE:**

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, "**PG&E**," the "**Debtors,**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this fifth securities claims omnibus objection (the "**Objection**") to the claims identified in the column headed "Claims To Be Disallowed/Expunged" on **Exhibit 1** annexed hereto.  Contemporaneously herewith, the Reorganized Debtors submit the Declaration of Edward J. Radetich, Jr., dated May 19, 2021 (the "**Radetich Declaration**"), in support of this Objection.

This omnibus objection seeks to expunge the proofs of claim filed by certain former PG&E security holders who sold all of their holdings before the first purported corrective disclosure and therefore, by definition, suffered no loss that is recoverable under the federal securities laws.[1] Fundamentally, federal securities claims assert that a company's false statements artificially inflate the price of the company's stock, until the market learns the "truth" behind those statements through some event—commonly referred to as a "corrective disclosure"—or series of events at which point the company's stock price drops (in theory, to where it would have been had the market known the truth all along).  Investors who sell their securities before a corrective disclosure, accordingly, do so at the artificially inflated price and therefore suffer no loss caused by the company's misstatements.  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-43 (2005); *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) ("Loss causation is established if the market learns of a defendant's fraudulent act or practice, the market reacts to the fraudulent act or practice, and a ***plaintiff suffers a loss as a result of*** the market's reaction.") (emphasis added); *Brown v. Ambow Educ. Holding Ltd.*, No. CV 12-5062 PSG AJWX, 2014 WL 523166, at \*15–16 (C.D. Cal. Feb. 6, 2014) ("Although the Supreme Court in *Dura Pharmaceuticals* reviewed loss causation in the context of Section 10(b) claims, courts use its reasoning to analyze loss causation in Section 11 claims as well.").

Here, the Debtors do not concede there was any "corrective disclosure" because the Debtors deny

---

[1] For the avoidance of doubt, none of the holders of the claims identified in Exhibit 1 purchased additional PG&E securities on or after October 12, 2017.

that they misled investors in the first place. Even if any claimant could establish that the Debtors misled investors, the first purported "corrective disclosure" was made on October 12, 2017—the date on which, as has been alleged, "the market **began** to understand that PG&E's safety regulation violations were likely a proximate cause of the North Bay Fires." Third Amended Complaint (as defined below), ¶ 328 (emphasis added). Accordingly, Claimants who sold their PG&E securities, whether debt or equity, before October 12, 2017 made those sales at prices that (assertedly) remained inflated by the Debtors' alleged misstatements. Those Claimants, therefore, could not have suffered a loss caused by the Debtors' alleged misstatements. *See Dura Pharm.*, 544 U.S. at 343; *In re Oracle*, 627 F.3d at 392; *Brown*, 2014 WL 523166, at \*15–16. This Court has already sustained objections to similarly situated claimants who sold their PG&E securities prior to the first purported corrective disclosure. *Order Disallowing and Expunging Proofs of Claim Pursuant to Reorganized Debtors' First Securities Claims Omnibus Objection (No Loss Causation-Securities Sold Prior to the First Purported "Corrected Disclosure")* [Docket No. 10581]. The result here should be no different. As a result, the claims subject to the Objection must be expunged.

## I.    JURISDICTION

This Court has jurisdiction over the Objection under 28 U.S.C. §§ 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested are section 502 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (collectively, the "**Bankruptcy Rules**").

## II.    BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code.

On July 1, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 (I) Establishing Deadline for*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

1   *Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving*

2   *Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential*

3   *Creditors* [Docket No. 2806] (the "**Bar Date Order**").  The Bar Date Order set October 21, 2019 at 5:00

4   p.m. Pacific Time (the "**Bar Date**") as the deadline to file all proofs of claim (each, a "**Proof of Claim**")

5   with respect to any prepetition claim (as defined in section 101(5) of the Bankruptcy Code) against either

6   of the Debtors.  The Bar Date Order required any person who had a prepetition claim to file that claim

7   by the Bar Date.  Notice of the Bar Date was disseminated widely pursuant to the Bar Date Order,

8   including to all record holders of the Debtors' securities based on a record date of July 1, 2019.  In total,

9   approximately 111,000 holders of the Debtors' common equity, 11,300 noteholders, and all 1,352

10  brokerage nominees who held the Debtors' securities on behalf of their clients received notice of the Bar

11  Date.

12          On October 21, 2019, the Public Employees Retirement Association of New Mexico ("**PERA**")

13  filed a proof of claim against each debtor.[2]  The proofs of claim asserted certain securities claims on

14  behalf of PERA and incorporated an amended complaint that PERA had filed as lead plaintiff in a

15  putative securities class action pending in the U.S. District Court for the Northern District of California

16  (the "**Securities Litigation**").  *See In re PG&E Corp. Sec. Litig.*, No. 3:18-cv-03509-EJD (N.D. Cal.

17  May 28, 2019) [Sec. Litig. Docket No. 121].  This amended complaint (the "**Third Amended**

18  **Complaint**") asserts claims against the Debtors, among others, under the Securities Act of 1933, the

19  Exchange Act of 1934, and SEC Rule 10b-5 for alleged false and misleading statements regarding the

20  Debtors' wildfire safety practices.  *See id.*  The putative class in the Securities Litigation comprises

21  investors who, during the period from April 29, 2015 through November 15, 2018, inclusive (the

22  "**Putative Class Period**"), purchased or otherwise acquired certain publicly traded securities of the

23  Debtors.  *Id.*; *see also Reorganized Debtors' Objection to Securities Lead Plaintiff's Renewed Motion*

24  *to Apply Bankruptcy Rule 7023 and Certify a Limited Class* [Docket No. 9375] at 7 n.8. The Securities

25  Litigation is permanently enjoined as to the Reorganized Debtors and associated claims, other than any

26  entitlement to distributions under the Plan, are discharged pursuant to the Plan.

27  _____

28  [2] PERA subsequently also filed a Rescission or Damage Proof of Claim Form (as herein defined).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1    The Third Amended Complaint alleges that purportedly false and misleading statements made

2    by the Debtors and other defendants "caused PG&E securities to trade at artificially inflated levels"

3    through the Putative Class Period, but that "the truth started to emerge on October 12, 2017"—nearly

4    two and a half years into the Putative Class Period.  Third Amended Complaint ¶¶ 321, 328 ("It was not

5    until Thursday, October 12, 2017 that the market began to understand that PG&E's safety regulation

6    violations were likely a proximate cause of the North Bay Fires.").

7    On December 9, 2019, PERA filed a motion seeking to apply Bankruptcy Rule 7023 to the class

8    proofs of claim filed by PERA in the Chapter 11 Cases [Docket No. 5042] (the "**7023 Motion**").  On

9    February 27, 2020, the Court entered an order denying the 7023 Motion but extending the Bar Date to

10   April 16, 2020 (the "**Extended Securities Bar Date**") with respect to certain claimants (the "**Securities**

11   **Claimants**," and their claims, the "**Securities Claims**") that purchased or acquired certain of the

12   Debtors' publicly held debt and equity securities during the Putative Class Period who believed they

13   may have claims against the Debtors under the securities laws for rescission or damages arising out of

14   their trading in those securities [Docket No. 5943] (the "**Extended Securities Bar Date Order**").[3]

15   Pursuant to the Extended Securities Bar Date Order, the Court approved a customized proof of claim

16   form for Securities Claims (the "**Rescission or Damage Proof of Claim Form**" and Securities Claims

17   filed on such form, the "**Rescission or Damage Proofs of Claim**") and a form of notice of the Extended

18   Securities Bar Date (the "**Rescission or Damage Claim Bar Date Notice**").

19   This Court has already addressed the first purported corrective disclosure in connection with the

20   confirmation of the Plan.  In connection with the dispute over the Plan formula that converted allowed

21   amounts of damages arising out of securities proofs of claim by equity holders into shares, the parties

22   submitted extensive briefing and engaged in multiple arguments before the Court.  During the

23   confirmation proceedings, PERA referenced October 12, 2017, as the date of the first alleged corrective

24   disclosure in its filings and its presentation to the Court in connection with its objections to confirmation

25   of the Plan.  *See Securities Lead Plaintiff's Submission of Argument Demonstrative for Use During Oral*

26   *Argument at Confirmation Hearing* [Docket No. 7791] at 17-26 (attached hereto as **Exhibit 2**); *see also*

27   _____

[3] In addition, although not relevant here, the Bar Date was also extended to December 31, 2019 solely
with respect to unfiled, non-governmental Fire Claimants [Docket No. 4672].

28

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1  *Securities Lead Plaintiff's Objection to Confirmation of Debtors' and Shareholder Proponents' Joint*

2  *Chapter 11 Plan of Reorganization dated March 16, 2020* [Docket No. 7296] at 6, 12; Tr. Jun. 5, 2020

3  at 78:10-22.[4] No other securities holder objected to or disputed that designation.  The Court then adopted

4  a conversion formula—Section 1.109 of the Plan (as herein defined)—that involves a number of periods,

5  the first of which ends on October 13, 2017, the day after the first purported corrective disclosure.

6  By Order dated June 20, 2020 [Docket No. 8053], the Court confirmed the *Debtors' and*

7  *Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* (as may be

8  further modified, amended or supplemented from time to time, and together with any exhibits or

9  scheduled thereto, the "**Plan**"), including the Plan formula for converting allowed equity securities

10  claims into shares.  The Effective Date of the Plan occurred on July 1, 2020 (the "**Effective Date**").  *See*

11  Docket No. 8252.  Pursuant to the Plan, the Securities Litigation is permanently enjoined as to the

12  Reorganized Debtors, and associated claims, other than any entitlements to distributions under the Plan,

13  are discharged.  *See* Plan §§ 4.12, 4.14, 4.32, 10.6.

14  On January 25, 2021, the Court entered the *Order Approving Securities ADR and Related*

15  *Procedures for Resolving Subordinated Securities Claims* [Docket No. 10015] (the "**Securities Claims**

16  **Procedures Order**").  Pursuant to the Securities Claims Procedures Order, the Court approved, among

17  other things, procedures for filing omnibus objections to Securities Claims (the "**Securities Omnibus**

18  **Objection Procedures**"), including that "the holder of a Subordinated Securities Claims sold all or part

19  of his or her position(s) before the release of any purported 'corrective disclosure(s).'" Securities Claims

20  Procedures Order ¶ 8(b); *see also* Securities Claims Procedures Order, Ex. A-3 ¶ I.C.2.

21  Consistent with the Securities Omnibus Objection Procedures, on March 17, 2021, the

22  Reorganized Debtors filed the *First Securities Claims Omnibus Objection (No Loss Causation –*

23  *Securities Sold Prior to the First Purported "Corrective Disclosure")* [Docket No. 10411] (the "**First**

24

25  _____
[4] "MR. BEHLMANN [for PERA]: So a couple things, Your Honor. Number one, as alleged in the

26  third amended complaint in the securities litigation and as we'll discuss in a little bit, there were actually nine -- the October 12th drop in the stock price, the equity plan proponents would have Your

27  Honor believe that once that occurred, that was it. Fraud was over, stock price then reflect -- after that point reflected every fact existing in the world, and the fraud was over. In reality, Your Honor, there

28  were nine successive stock drops over the course of the class period . . . ."

1  **Omnibus Objection**"). On April 26, 2021, the Court granted the First Omnibus Objection with respect

2  to the holders of equity securities. *See* Docket No. 10581.

3  **III.   RELIEF REQUESTED**

4       The Reorganized Debtors file this Objection, pursuant to section 502 of the Bankruptcy Code,

5  Bankruptcy Rule 3007(d), Bankruptcy Local Rule 3007-1, and the Securities Claims Procedures Order,

6  seeking entry of an order disallowing and expunging certain Rescission or Damage Proofs of Claim for

7  which the Debtors have not caused any cognizable losses, identified on **<u>Exhibit 1</u>** hereto (the "**No Loss**

8  **Causation Claims**"). As set forth below, the Debtors have not caused any cognizable losses for the No

9  Loss Causation Claims because each claimant liquidated its entire position in the Debtors' securities set

10  forth in the applicable Recession or Damage Proof of Claim (their "**Entire Position**") on or before

11  October 11, 2017—*i.e.*, before the first alleged "corrective disclosure." In other words, not one of the

12  claimants that is asserting a No Loss Causation Claim held *any* of the Debtors' securities on or after the

13  earliest date when the alleged fraud was revealed (October 12, 2017). Thus, each such claimant both

14  bought and sold when the shares were purportedly selling at inflated prices and therefore suffered no

15  cognizable losses that could have been caused by the Debtors. As with the First Securities Omnibus

16  Objection, there is no ambiguity in the above: each of the claimants sold their Entire Position of PG&E

17  securities before the purported first corrective disclosure and subsequently purchased no additional

18  securities. For the reasons set forth herein, the Reorganized Debtors request that the No Loss Causation

19  Claims be disallowed and expunged.

20  **IV.   ARGUMENT**

21       **A.    The No Loss Causation Should be Disallowed and Expunged.**

22       The Securities Claims Procedures Order supplemented Bankruptcy Rule 3007(d) to permit the

23  Reorganized Debtors to file objections to more than one Securities Claim if the holder "sold all or part

24  of his or her position(s) before the release of any purported 'corrective disclosure(s).'" Securities Claims

25  Procedures Order ¶ 8(b); *see also* Securities Omnibus Objection Procedures ¶ I.C.2. Bankruptcy Rule

26  3007(e) requires that an omnibus objection must list the claimants alphabetically and by cross-reference

27  to claim numbers. The Reorganized Debtors and their advisors have reviewed each of the No Loss

28  Causation Claims identified on Exhibit 1 and have determined that each of the No Loss Causation Claims

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

reflect trading histories where *all* holdings of the Debtors' securities had been entirely liquidated *before* October 12, 2017, the date of the first purported "corrective disclosure" and no additional securities were purchased thereafter. Radetich Decl. ¶¶ 5–7.

With respect to each of the proofs of claim identified in Exhibit 1, it does not matter if the claimant sold securities at lower prices and therefore suffered a "loss" because the sales occurred before any purported corrective disclosure and therefore the claim fails to establish loss causation. Loss causation—"i.e., a causal connection between the material misrepresentation and the loss"—is an essential element of a securities fraud complaint. *See Dura Pharm.,* 544 U.S. at 341-42; *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d at 392 ("Loss causation is established if the market learns of a defendant's fraudulent act or practice, the market reacts to the fraudulent act or practice, and a ***plaintiff suffers a loss as a result of*** the market's reaction.") (emphasis added). Mere allegations of an inflated purchase price are insufficient to establish loss causation. *See Dura Pharm*., 544 U.S. at 342, 347 (overturning the Ninth Circuit and holding that a securities fraud plaintiff who merely alleged an inflated purchase price did not sufficiently plead loss causation or economic loss).

"The burden of pleading loss causation is typically satisfied by allegations that the defendant revealed the truth through 'corrective disclosures,' which caused the company's stock price to drop and investors to lose money." *See Bonanno v. Cellular Biomedicine Grp., Inc.*, No. 15-cv-1795, 2016 WL 4585753, at *3 (N.D. Cal. Sept. 2, 2016) (quotation marks omitted). Normally "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss," because "at the moment the transaction takes place, the plaintiff has suffered no loss; the inflated purchase payment is offset by ownership of a share that *at that instant* possesses equivalent value." *Dura Pharm.*, 544 U.S. at 342 (emphasis in original). Indeed, where a plaintiff alleges only an inflated purchase price, it is "far from inevitabl[e]" that the purported misrepresentation caused any subsequent economic loss, because a subsequent sale at a "lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Id.* at 342-43.

Thus, courts in the Ninth Circuit have dismissed or not allowed recovery on securities fraud

Case: 19-30088    Doc# 10665    Filed: 05/19/21    Entered: 05/19/21 17:41:24    Page 8
of 12

claims under both Section 10(b) and Section 11 premised on securities that were liquidated prior to a "corrective disclosure." For example, in *Hurst v. Enphase Energy, Inc.*, No. 20-cv-04036-BLF, 2020 WL 7025085, at *8 (N.D. Cal. Nov. 30, 2020), the District Court found "[i]nvestors who bought or acquired [defendant's] stock during the proposed class period, but sold the stock prior to [the date of the corrective disclosure], would not have suffered injury from the fraud because they would have also sold the stock at an alleged artificially inflated price." Similarly, in *Vinh Nguyen v. Radient Pharmaceuticals Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *5-7 (C.D. Cal. May 6, 2014), the District Court approved, over objection, an allocation in a securities class action settlement that provided no recovery for traders who their securities sold prior to the first corrective disclosure and who provided no other evidence that the alleged misrepresentation caused the asserted losses. And in *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, No. C 03-2522 MHP, 2006 WL 1180267, at *9 (N.D. Cal. May 3, 2006), the District Court excluded from a securities class action "plaintiffs who sold their stock before [the date] when the first corrective disclosure occurred" because they "did not suffer any loss causally related to defendants' alleged misrepresentations." *See also In re Velti PLC Sec. Litig.*, No. 13-CV-03889-WHO, 2015 WL 5736589, at *29 (N.D. Cal. Oct. 1, 2015) (dismissing Section 11 claims where plaintiff sold all of its shares "months before . . . the only corrective disclosures alleged in the" complaint); *Dean v. China Agritech, Inc.*, 2011 WL 5148598, at *8 (C.D. Cal. Oct. 27, 2011) (dismissing section 11 claim where the plaintiff sold his entire position at a loss approximately seven months before first purported corrective disclosure).

Here, because each of the claimants identified in Exhibit 1 entirely liquidated their Entire Position in PG&E securities prior to the first purported "corrective disclosure" on October 12, 2017, none of them can establish that purported misrepresentations and omissions by the Debtors *caused* any loss at all. Nor do the claims identified in Exhibit 1 separately allege any earlier date for a purported corrective disclosure, or for that matter, any alternate theory of loss causation. *See* Thomas Lee Hazen, 4 Law Sec. Reg. § 12:93, Westlaw (updated December 2020) ("A plaintiff must be able to point to the market's reaction to the truth on the market and how that information filtered into the market other than through a corrective press release."). Thus, the Debtors' alleged misrepresentations did not cause any losses to Securities Claimants who liquidated their Entire Position before October 12, 2017, the date of the first

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1  purported corrective disclosure.  Accordingly, the Debtors have not caused any cognizable losses under

2  the federal securities laws for the claims identified in Exhibit 1.

3       **B.**     **The Claimants Bear the Burden of Proof.**

4       A filed proof of claim is "deemed allowed, unless a party in interest. . . objects."

5  11 U.S.C. § 502(a).  Section 502(b)(1) of the Bankruptcy Code, however, provides in relevant part that

6  a claim may not be allowed if "such claim is unenforceable against the debtor and property of the debtor,

7  under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  Once the objector raises "facts tending

8  to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves,"

9  *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991), quoting 3 L. King, *Collier on*

10  *Bankruptcy* § 502.02, at 502-22 (15th ed. 1991), then "the burden reverts to the claimant to prove the

11  validity of the claim by a preponderance of the evidence."  *Ashford v. Consol. Pioneer Mortg. (In re*

12  *Consol. Pioneer Mortg.)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (quoting *In re Allegheny Int'l, Inc.*,

13  954 F.2d 167, 173-74 (3d Cir. 1992)), *aff'd*, 91 F.3d 151 (9th Cir. 1996) (unpublished table decision).

14  "[T]he ultimate burden of persuasion is always on the claimant."  *Holm*, 931 F.2d at 623 (quoting 3 L.

15  King, *Collier on Bankruptcy* § 502.02, at 502-22 (15th ed. 1991)); *see also Lundell v. Anchor Constr.*

16  *Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000); *Spencer v. Pugh (In re Pugh)*, 157 B.R. 898, 901

17  (B.A.P. 9th Cir. 1993); *Cal. State Bd. of Equalization v. Off. Unsecured Creditors' Comm. (In re Fid.*

18  *Holding Co.)*, 837 F.2d 696, 698 (5th Cir. 1988).

19       As set forth above, the Reorganized Debtors submit that the claims identified in Exhibit 1 do not

20  represent a current right to payment and, therefore, should be disallowed and expunged.  If any Securities

21  Claimant believes that a No Loss Causation Claim is valid, it must present affirmative evidence

22  demonstrating the validity of that claim.

23       **C.**     **The No Loss Causation Claims May Be Objected to by an Omnibus**

24              **Objection.**

25       Bankruptcy Rule 3007(d) and the Securities Omnibus Objection Procedures govern omnibus

26  objections to Securities Claims in these Chapter 11 Cases.  Pursuant to Bankruptcy Rule 3007(d)(4) and

27  Paragraph I.C.2 of the Securities Omnibus Objection Procedures, objections to more than one claim may

28  be joined if the objections are based on the grounds that the claims should be disallowed because the

Securities Claimant sold all or part of his or her position(s) before the release of any purported "corrective disclosure(s)." Pursuant to Paragraph I.B of the Securities Omnibus Objection Procedures, the Reorganized Debtors may object to up to 250 Securities Claims per Omnibus Objection.

In accordance with Paragraph I.E of the Securities Omnibus Objection Procedures, Exhibit 1 hereto provides the following information: (i) an alphabetized list of the claimants whose proofs of claim are subject to this Objection; (ii) the claim numbers of the proofs of claim that are the subject of this Objection; (iii) the amount of claim asserted in each proof of claim, or a statement that the claim seeks an unliquidated amount; (iv) the date each proof of claim was filed, and (v) the grounds for this Objection. Furthermore, the Reorganized Debtors will give notice to the holders of each of the No Loss Causation Claims, the form of which satisfies the requirements set forth in Paragraph F of the Securities Omnibus Objection Procedures.

## V. RESERVATION OF RIGHTS

The Reorganized Debtors hereby reserve the right to object, as applicable, in the future to any of the Proofs of Claim listed in this Objection on any ground not previously ruled upon, and to amend, modify, or supplement this Objection to the extent an objection to a claim is not granted, and to file other objections to any proofs of claims filed in these cases, including, without limitation, objections as to the amounts asserted therein, or any other claims (filed or not) against the Debtors, regardless of whether such claims are subject to this Objection. A separate notice and hearing will be scheduled for any such objections. Should the grounds of objection specified herein be overruled, wholly or in part, the Reorganized Debtors reserve the right to object to the No Loss Causation Claims on any other grounds that the Reorganized Debtors may discover or deem appropriate. *See* Securities Omnibus Objection Procedures ¶ I.J.

## VI. NOTICE

Notice of this Objection will be provided to: (i) the holders of the No Loss Causation Claims; (ii) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (iii) all counsel and parties receiving electronic notice through the Court's electronic case filing system; and (iv) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Reorganized Debtors respectfully submit that no further notice

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

is required. No previous request for the relief sought herein has been made by the Reorganized Debtors to this or any other Court.

WHEREFORE the Reorganized Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Reorganized Debtors' business judgment and in the best interests of their estates, creditors, shareholders, and all other parties interests, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: May 19, 2021

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

By: _/s/ Richard W. Slack_
            Richard W. Slack

*Attorneys for Debtors and Reorganized Debtors*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119