WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 |
| - and - | (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | **REORGANIZED DEBTORS' REPLY IN FURTHER SUPPORT OF FIRST SECURITIES CLAIMS OMNIBUS OBJECTION (NO LOSS CAUSATION – SECURITIES SOLD PRIOR TO THE FIRST PURPORTED "CORRECTIVE DISCLOSURE")** |
| Debtors. | |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors | [Related to Docket No. 10411] |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .......................................................................................................................5

    A.    The Debt Claimants' Own Trading History Conclusively Establishes That They Have No Right To Payment Under Section 11 ...............................................5

        1.    Courts Routinely Dismiss Section 11 Claims As A Matter Of Law Where, As Here, The Defendant Establishes The Affirmative Defense That Its Alleged Misrepresentations Could Not Have Caused Plaintiff's Loss .................5

        2.    The Debt Claims Are Ripe To Be Dismissed As A Matter of Law And Objected To On An Omnibus Basis .................................................................6

    B.    PERA Lacks Standing To Interfere With The Resolution Of The Debt Claims ..............9

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Broderbund/Learning Co. Sec. Litig.*,
  294 F.3d 1201 (9th Cir. 2002) ................................................................................................. 3

*Brown v. Ambow Educ. Holding Ltd.*,
  2014 WL 523166 (C.D. Cal. Feb. 6, 2014) ...................................................................... 3, 5, 6

*Davidco Invs., LLC v. Anchor Glass Container Corp.*,
  2006 WL 547989 (M.D. Fla. Mar. 6, 2006) ............................................................................. 8

*Dean v. China Agritech, Inc.*,
  2011 WL 5148598 (C.D. Cal. Oct. 27, 2011) .......................................................................... 6

*In re Donohue*,
  2020 WL 419727 (Bankr. N.D. Cal. Jan. 27, 2020) ................................................................ 7

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................................................. 5

*In re Frye*,
  2009 WL 7751434 (B.A.P. 9th Cir. Apr. 7, 2009) ................................................................ 11

*In re McKesson HBOC, Inc. Sec. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) ............................................................................... 8, 9

*In re Obalon Therapeutics, Inc.*,
  2019 WL 4729461 (S.D. Cal. Sept. 25, 2019) ......................................................................... 8

*Raleigh v. Ill. Dep't of Revenue*,
  530 U.S. 15 (2000) ................................................................................................................... 7

*Schick v. Berg*,
  2004 WL 856298 (S.D.N.Y. Apr. 20, 2004) .......................................................................... 10

*Schuler v. NIVS Intellimedia Tech. Grp., Inc.*,
  2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) ........................................................................ 5, 8

*In re Shoretel Inc., Sec. Litig.*,
  2009 WL 248326 (N.D. Cal. Feb. 2, 2009) ............................................................................. 6

*In re Smart Techs., Inc. S'holder Litig.*,
  295 F.R.D. 50 (S.D.N.Y. 2013) ............................................................................................... 8

*Soe v. Progenity, Inc.*,
  2020 WL 7129365 (S.D. Cal. Dec. 3, 2020) ........................................................................... 8

*In re Tower Park Properties, LLC*,
  803 F.3d 450 (9th Cir. 2015) ............................................................................................ 10, 11

ii

*In re Velti PLC Sec. Litig.*,
   2015 WL 5736589 (N.D. Cal. Oct. 1, 2015) ............................................................... 5, 6

*In re Violin Memory Sec. Litig.*,
   2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) ............................................................. 5, 6

**Statutes**

11 U.S.C. § 502 ........................................................................................................................ 7

11 U.S.C. § 1109 .................................................................................................................... 10

15 U.S.C. § 77k ........................................................................................................................ 2

**Other Authorities**

Fed. R. Bankr. P. Rule 3007 ..................................................................................................... 7

*In re Velti PLC Sec. Litig.*,
    2015 WL 5736589 (N.D. Cal. Oct. 1, 2015) ............................................................... 5, 6

*In re Violin Memory Sec. Litig.*,
    2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) ............................................................. 5, 6

**Statutes**

11 U.S.C. § 502 ........................................................................................................................ 7

11 U.S.C. § 1109 .................................................................................................................... 10

15 U.S.C. § 77k ........................................................................................................................ 2

**Other Authorities**

Fed. R. Bankr. P. Rule 3007 ..................................................................................................... 7

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, "**PG&E**," the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this reply in further support of the *First Securities Claims Omnibus Objection (No Loss Causation – Securities Sold Prior to the First Purported "Corrective Disclosure")*, dated March 17, 2021 [Docket No. 10411] (the "**First Securities Omnibus Objection**" or "**Objection**"),[1] with respect to the 55 debt securities claims listed in **Exhibit A** hereto (the "**Debt Claims**," and the holders of such claims, "**Debt Claimants**"), and to address the response to the First Securities Omnibus Objection filed by the Public Employees Retirement Association of New Mexico ("**PERA**"), dated April 14, 2021 [Docket No. 10524] (the "**Response**").

## PRELIMINARY STATEMENT

***None*** of the claimants whose claims were the subject of the First Securities Omnibus Objection filed an opposition to the Objection. The fact that no claimant opposed the Objection is not a surprise, as the Objection seeks only to expunge certain claims where a claimant's own trading information demonstrates conclusively that the claimant did not suffer, and could not have suffered, a loss under the federal securities laws, i.e., where there was no "loss causation."

The basis for the First Securities Omnibus Objection is straightforward. To establish a claim under the federal securities laws, a plaintiff must show that it purchased securities at a price that was inflated because of a defendant's misrepresentations, and that it suffered a loss when the "truth" was revealed and the price of the securities dropped as a result. Of course, if the plaintiff sold out of its position prior to the "truth" being revealed, then any drop in the price of the securities cannot possibly be attributed to the alleged misrepresentation and, in turn, the plaintiff cannot establish that the alleged misrepresentations *caused* any losses. This is true whether the claim is based on the purchase of debt or equity and whether the claim arises under Section 10(b) of the Securities Exchange Act of 1934 (the "**Exchange Act**") or Section 11 of the Securities Act of 1933 (the "**Securities Act**"). Indeed, courts routinely grant motions to dismiss claims based on both Section 10(b) and Section 11 where a plaintiff

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the First Securities Omnibus Objection or the *Order Approving Securities ADR and Related Procedures for Resolving Subordinated Securities Claims*, and exhibits thereto, dated January 12, 2021 [Docket No. 10015] (the "**Procedures Order**"), as applicable.

1

alleges that it sold out of its position prior to the first alleged corrective disclosure.

Here, the First Securities Omnibus Objection seeks to expunge only claims where the claimants' own trading information shows that they sold **all** of their holdings before October 12, 2017, i.e., before the date of the first purported "corrective disclosure,"[2] and, therefore, these claimants suffered no loss that could be recoverable under the federal securities laws. The Reorganized Debtors brought the Objection against 249 claims, including 194 claims relating to equity securities (the "**Equity Claims**," and the holders of such claims, the "**Equity Claimants**") and the 55 Debt Claims.[3]

Again, the fact that **not one Debt Claimant or Equity Claimant filed a response to the Objection** demonstrates its straightforward nature. The sole response was filed by PERA—a party that concedes its own proof of claim **does not involve any notes that are subject to, or could even possibly be affected by, the Objection**, and that, pursuant to **two** orders by this Court, does not represent any other securities claimants in these Chapter 11 Cases.

PERA's Response concedes that the Equity Claims subject to the Objection should be disallowed. It then appears to assert that, because loss causation is an affirmative defense with respect to the Debt Claims, the Debt Claims are somehow "not objectionable on an omnibus basis" and an omnibus objection is "not the appropriate vehicle for evaluating affirmative defenses." *See* Response at 4–5. PERA's argument should be rejected.

First, the Debt Claims are subject to dismissal under Section 11(e) of the Securities Act, which provides an express "loss causation" defense to any claim brought under Section 11 where a defendant proves that a plaintiff's loss, if any, was not caused by the alleged misstatements or omissions. *See* 15

---

[2] As explained in the Objection, PG&E does not concede there was any "corrective disclosure" because it denies that it misled investors in the first place. *See* Objection at 2. Assuming, *arguendo*, that any claimant could establish that PG&E misled investors, the first conceivable "corrective disclosure" was made on October 12, 2017—the date on which it has been alleged that "the market **began** to understand that PG&E's safety regulation violations were likely a proximate cause of the North Bay Fires." Third Amended Complaint ¶ 328 (emphasis added). Indeed, this Court addressed and adopted this October 12, 2017 date, at PERA's urging, as the first purported corrective disclosure during the confirmation hearing for purposes of the formula in Section 1.109 of the Plan.

[3] The Reorganized Debtors voluntarily adjourned the hearing on the Objection as to the Debt Claims, and the Court sustained the Objection with respect to the 194 Equity Claims. *See Order Disallowing and Expunging Proofs of Claim Pursuant to Reorganized Debtors' First Securities Claims Omnibus Objection (No Loss Causation – Securities Sold Prior to the First Purported "Corrective Disclosure")*, dated Apr. 26, 2021 [Docket No. 10581].

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

U.S.C. § 77k(e); *Brown v. Ambow Educ. Holding Ltd.*, 2014 WL 523166, at *15–16 (C.D. Cal. Feb. 6, 2014). Where it is clear that a plaintiff sold its holdings before the market first became aware of the alleged misstatement or omission, i.e., the first purported "corrective disclosure" that revealed the "truth," courts in the Ninth Circuit routinely grant motions to dismiss because there can be no causal connection between the alleged misstatements and any of the plaintiff's losses in the market. Here, it is undisputed—including by PERA—that the Debt Claimants' trading information confirms that each of them traded out of their entire position before the first alleged corrective disclosure—*i.e.*, before they ever could have suffered a loss because the "truth" was not yet revealed.[4] It is precisely under these circumstances that courts dismiss Section 11 claims.

Second, PERA's argument that the Objection is not an appropriate vehicle to resolve the Debt and Equity Claims is contrary to a long line of cases that dismiss Section 11 claims as a matter of law where it is clear that a plaintiff sold its holdings before the market first became aware of the alleged misstatement or omission, as well as this Court's Order that expressly and specifically endows the Reorganized Debtors with the authority to object, *on an omnibus basis*, to any "holder of a Subordinated Securities Claim [that] sold all or part of his or her position(s) before the release of any purported 'corrective disclosure(s).'" Procedures Order ¶ 8(b). And these cases and the Court's Order make perfect sense. Just as was the case with respect to the Equity Claimants, resolution of the Objection as to the Debt Claimants does not require any information beyond the trading information that each of them has already provided. The Debt Claims are therefore ripe to be decided now as a matter of law.

Finally, and in any event, PERA's Response should be rejected because PERA lacks standing to file it in the first place. PERA concedes that it has no debt claims that can be affected by the Objection. *See* Response at 1 n.1. Moreover, this Court has *twice* held that PERA is not a class representative for claimants who filed securities claims in these Chapter 11 Cases. In reaching this conclusion, the Court

---

[4] Although not at issue in this Objection, 45 of the 55 Debt Claimants did not suffer any losses at all. In fact, the vast majority of Debt Claimants *profited* from their trading in PG&E securities. Those claims would be subject to disallowance for the separate and independent reason that the claimants made money on their investments and have *no damages* under the federal securities laws regardless of the loss causation issue. *See In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1203 (9th Cir. 2002) (dismissing a putative class that suffered no cognizable damages under the '33 Act because it was indisputable that all class members profited from the sale of the relevant securities).

3

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

recognized that the securities claimants are not "unsophisticated, innocent babes in the woods," but rather investors, including sophisticated financial institutions, who are more than apt to deal with their claims themselves. *See* Dec. 4, 2020 Hr'g Tr. at 7:19–8:6. Moreover, as the Court noted, many of the securities claimants have their own counsel, who have "quite adequately represented their client's interest." *See id.* at 7:11-18. The Court also found that there were "too many unknowns" concerning PERA, including "whether PERA or PERA's counsel have a conflict in representing the securities class in the district court, and the claimants here." *See id.* at 16:13–17:1. It is simply not appropriate for PERA to file a response to the First Securities Omnibus Objection.

PERA's filing of its Response, when none of the claimants themselves opposed the First Securities Omnibus Objection, serves only to cause disruption and increase the costs to the Reorganized Debtors of administering their estates. For example, PERA raises a "concern" that the Objection "is ambiguous about how claimants who sold their PG&E securities before October 12, 2017 but then later purchased additional PG&E securities are to be treated." *See* Response at 6. This so-called "concern" is a complete red herring. None of the Debt Claimants, nor any of the holders of the Equity Claims that the Court disallowed, purchased additional PG&E securities on or after October 12, 2017. Indeed, PERA concedes that it did not even review the claims at issue in the Objection. *See* Response at 5. Any claimant subject to the Objection would have known that this "concern" was frivolous with respect to ***that claimant's own claim***. Unfortunately, the Reorganized Debtors now need to address this fabricated "concern," wasting time and money.

Accordingly, this Court should grant the First Securities Omnibus Objection as to the Debt Claims, abstain from issuing an advisory opinion at the behest of PERA on issues that have not been raised by any claimant who is the subject of the Objection, and (once again) preclude PERA from further efforts to act as counsel for other claimants, especially given that PERA has on multiple occasions already been denied the status to do so.

# ARGUMENT

## A. The Debt Claimants' Own Trading History Conclusively Establishes That They Have No Right To Payment Under Section 11

As demonstrated in the Objection, the Debt Claims should be disallowed because each of the Debt Claimants sold all of their PG&E debt securities before October 12, 2017—i.e., the first purported "corrective disclosure." *See* Objection at 6–7. Accordingly, the Reorganized Debtors have established that, as a matter of law, they are not and could not be liable for the Debt Claims under Section 11.

### 1. Courts Routinely Dismiss Section 11 Claims As A Matter Of Law Where, As Here, The Defendant Establishes The Affirmative Defense That Its Alleged Misrepresentations Could Not Have Caused Plaintiff's Loss

The federal securities laws do not "provide investors with broad insurance against market losses." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005); *see also* Objection at 6–9. Rather, those laws provide a private right of action to protect investors only "against those economic losses that misrepresentations ***actually cause***." *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *17 (N.D. Cal. Oct. 31, 2014) (quoting *Dura*, 544 U.S. at 345) (emphasis added). Such "causal losses" occur only when the security's value "falls significantly ***after*** the truth about the untrue statements or misleading omissions becomes known." *Violin Memory*, 2014 WL 5525946, at *17 (emphasis in original) (citing *Dura*, 544 U.S. at 347; *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005)). Thus, it is "well established" that, for purposes of Section 11, the Debt Claimants cannot be said to have suffered a loss until the alleged misrepresentations and omissions "become generally known[,] and *as a result*" the debt securities' value depreciates. *See Violin Memory*, 2014 WL 5525946, at *17 (loss alleged in a Section 11 claim "must be caused by the materialization of the concealed risk") (quotations omitted); *see also In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *29 (N.D. Cal. Oct. 1, 2015) (same).

The causal connection between an alleged misstatement and the resulting loss is essential to any Section 11 claim, just as it is in any claim brought under Section 10(b) of the Exchange Act. *See Brown*, 2014 WL 523166, at *15–16 n.1 ("Although the Supreme Court in *Dura Pharmaceuticals* reviewed loss causation in the context of Section 10(b) claims, courts use its reasoning to analyze loss causation in Section 11 claims as well."); *Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, 2013 WL 944777, at *9 n.8 (S.D.N.Y. Mar. 12, 2013) (same). The distinction between Section 11 and Section 10(b) claims is purely

5

procedural: whereas loss causation is an element of a Section 10(b) claim and an affirmative defense to a Section 11(e) claim, under either statute a defendant must demonstrate that "the plaintiff's loss, or some portion thereof, was not caused by the alleged misstatements or omissions in the registration statement." *Velti*, 2015 WL 5736589, at *27 (citing 15 U.S.C. § 77k(e)).

Consequently, although a plaintiff need not plead loss causation as an ***element*** of a Section 11 claim, Section 11 claims are routinely dismissed where it is apparent that the plaintiff will "be unable to establish loss causation." *Violin Memory*, 2014 WL 5525946, at *17–18 (granting motion to dismiss section 11 claim in part, where the complaint "lack[ed] any allegation that this misstatement [wa]s related to the loss they purportedly suffered"); *In re Shoretel Inc., Sec. Litig.*, 2009 WL 248326, at *5 (N.D. Cal. Feb. 2, 2009) (Section 11 claim may be dismissed "if the facts as alleged by plaintiffs, and documents which the court may take judicial notice of, establish the affirmative defense as a matter of law"); *see also infra* at 8 (citing additional cases). Indeed, courts have recognized that the loss causation defense in Section 11 and loss causation requirement in Section 10(b) "are mirror images." *See Brown*, 2014 WL 523166, at *15 (quoting *In re WorldCom, Inc. Sec. Litig.*, 02 Civ. 3288 (DLC), 2005 U.S. Dist. LEXIS 2216, at *20 (S.D.N.Y. Feb. 17, 2005)).

Moreover, courts have dismissed Section 11 claims in precisely the circumstances here: where a plaintiff sold its holdings before the market first became aware of the alleged misstatement or omission, i.e., the first purported "corrective disclosure" that revealed the "truth." For example, in *Dean v. China Agritech, Inc.*, 2011 WL 5148598, at *8 (C.D. Cal. Oct. 27, 2011), the court dismissed a Section 11 claim where the plaintiff sold his entire position approximately seven months before the release of a report detailing the issuer's alleged fraud, and "[n]o other allegations of a corrective disclosure released by [the defendant] or a third party were released prior to these dates." Similarly, in *Velti*, 2015 WL 5736589, at *29, the court held that a plaintiff could not bring Section 11 claims because the plaintiff had certified that it sold all of its shares "months before . . . the only corrective disclosures alleged in the" complaint.

### 2. The Debt Claims Are Ripe To Be Dismissed As A Matter of Law And Objected To On An Omnibus Basis

PERA seemingly recognizes that the absence of loss causation is an affirmative defense to any Section 11 claim, but nevertheless contends—without any authority or explanation—that the First

6

Securities Omnibus Objection is "not the appropriate vehicle for evaluating affirmative defenses." *See* Response at 4.

As an initial matter, PERA ignores this Court's Procedures Order, which expressly provides that an omnibus objection is an appropriate mechanism to establish a loss causation defense under Section 11 for Debt Claims. The Procedures Order supplements Bankruptcy Rule 3007(d) and expressly permits the Reorganized Debtors to file objections to more than one Securities Claim if, as is the precise case here, the holder "sold all or part of his or her position(s) before the release of any purported 'corrective disclosure(s).'" Procedures Order ¶ 8(b). This issue need not and should not be re-litigated. On this basis alone, PERA's argument that the Debt Claims cannot be the subject of an omnibus objection should be rejected.[5]

In any event, the First Securities Omnibus Objection is appropriate with respect to the Debt Claims, as the issue is ripe for a determination as a matter of law. Because a filed proof of claim is "deemed allowed, unless a party in interest . . . objects," 11 U.S.C. § 502(a), the Reorganized Debtors "must provide a cognizable ground to disallow the claim." *See In re Donohue*, 2020 WL 419727, at *2 (Bankr. N.D. Cal. Jan. 27, 2020). And contrary to PERA's unsupported contention, no procedural rule prevents the Reorganized Debtors from asserting affirmative defenses in objections to proofs of claim; rather, objections asserting such defenses are common. *See, e.g.*, *id.* at *2–3 (holding that, in objecting to a proof of claim, debtor "made a sufficient showing of procedural and substantive unconscionablity," which was an affirmative defense to creditor's claim under California law). Indeed, that the basis for disallowing the Debt Claims here is premised on an affirmative defense simply requires the Reorganized Debtors to meet the same burden of proof that they would have had to demonstrate outside of bankruptcy. *See Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 21 (2000) (burden of proof does not change in bankruptcy where "there is no sign that Congress meant to alter the burdens of production and persuasion").

---

[5] The Reorganized Debtors' filing of the First Securities Omnibus Objection satisfied all requirements under Rule 3007 and the Procedures Order. *See* Objection at 10.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

7

As discussed above, courts in the Ninth Circuit hold that the loss causation defense is established as a matter of law where, as here, it is undisputed that the plaintiff sold its securities before the alleged misstatements were disclosed. *See supra* at 6. The authority dismissing Section 11 claims as a matter of law in these precise circumstances is overwhelming. *See also Soe v. Progenity, Inc.*, 2020 WL 7129365, at *5 (S.D. Cal. Dec. 3, 2020) ("Generally, a defendant's misstatement 'will not be deemed to have caused a loss if the shares at issue were sold before the defendant discloses its misleading statement.'") (quoting *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1181 (N.D. Cal. 2017)); *In re Obalon Therapeutics, Inc.*, 2019 WL 4729461, at *13 n.6 (S.D. Cal. Sept. 25, 2019) (on a motion to dismiss, defendants "presented an adequate affirmative defense to a Section 11 claim" because the plaintiff "sold all its shares . . . before the corrective disclosure occurred"); *In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 59–60 (S.D.N.Y. 2013) (where complaint alleged that the "truth" became known on a particular date, any losses before that date "**necessarily** would be attributable to something **other than** the alleged misstatements or omissions in the Offering Documents." (emphasis in original); *Schuler*, 2013 WL 944777, at *10 (granting motion to dismiss Section 11 claim where plaintiff "sold all his stock well prior to the corrective disclosures"); *Davidco Invs., LLC v. Anchor Glass Container Corp.*, 2006 WL 547989, at *25 (M.D. Fla. Mar. 6, 2006) (dismissing section 11 claim because defendants "met their burden of proving [loss] causation based on the allegations in the complaint" by showing that section 11 plaintiffs "sold all of their stock prior to [first] corrective disclosure"); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1262 (N.D. Cal. 2000) (dismissing claims on basis that defendants had an "absolute" loss causation defense "pursuant to Section 11(e) for any HBOC shareholders who disposed of their shares prior to the corrective disclosure"); *supra* at 6 (discussing additional cases).

The Court need not look any further than the Debt Claimants' own trading information to find that the Reorganized Debtors have established their loss causation defense. Because each of the Debt Claimants' trading information shows that they liquidated their entire position in PG&E securities prior to the first purported "corrective disclosure" on October 12, 2017,[6] none of them could have suffered

---

[6] *See Declaration of Edward J. Radetich, Jr. in Support of Reorganized Debtors' First Securities Claims Omnibus Objection (No Loss Causation – Securities Sold Prior to the First Purported "Corrective Disclosure")* ¶¶ 5–7, dated Mar. 17, 2021 [Dkt. No. 10412].

8

any loss caused by the alleged misrepresentations by PG&E. Thus, for the exact same reason that this Court granted—without any opposition—the Objection to disallow the Equity Claims where those claimants' trading information showed that they liquidated their entire position in PG&E securities prior to the first purported "corrective disclosure," the Court should disallow the Debt Claims where the trading information establishes the same defense.

In sum, PERA ignores the overwhelming authority holding that a defendant conclusively establishes the loss causation defense under Section 11 where, as here, a plaintiff liquidated its entire position prior to the first purported "corrective disclosure." Thus, the Reorganized Debtors "have an absolute '[loss] causation' defense pursuant to Section 11(e) for any [claimants] who disposed of their shares prior to the corrective disclosure," *see McKesson*, 126 F. Supp. 2d at 1262, and this defense can be raised as a matter of law.

Accordingly, PERA fails to provide any procedural or substantive basis to delay or deny disallowance of the Debt Claims. The Reorganized Debtors should be permitted to resolve the securities claims asserted in the Bankruptcy Cases in accordance with this Court's Procedures Order, and the Objection does precisely that.

B. **PERA Lacks Standing To Interfere With The Resolution Of The Debt Claims**

This Court has now twice held that PERA is not a class representative for claimants who have filed securities claims in these Chapter 11 Cases.[7] Moreover, the Court has found that securities claimants are more than able to address their own claims in the Chapter 11 cases. *See* Dec. 4, 2020 Hr'g Tr. at 7:11–8:17. The Court also recognized the unresolved issues surrounding PERA's numerous conflicts in attempting to represent claimants in these Chapter 11 Cases at the same time it seeks to act as class counsel in a separate District Court action. *See id.* at 16:13–17:1. It is, therefore, entirely

---

[7] *See Order Denying Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class*, dated Jan. 26, 2021 [Dkt. No. 10020]; *Order (i) Denying Securities Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim and (ii) Extending Bar Date for Certain Holders of Claims for Securities Rescission or Damages*, dated Feb. 27, 2020 [Dkt. No. 5943]. Further, no class has been certified in the Securities Litigation, nor is one likely to be certified anytime soon given that the District Court recently stayed the Securities Litigation pending the outcome of the Securities Claims Procedures. *See* Notice of Intent to Stay Action Pending Conclusion of Bankruptcy Proceedings, *In re PG&E Corp. Sec. Litig.*, No. 5:18-cv-03509-EJD (N.D. Cal. Apr. 29, 2021) [Dkt. No. 198].

9

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

inappropriate for PERA to presumptively act on behalf of other claimants by filing responses—to which the Reorganized Debtors must respond at cost and expense—to objections that, as PERA itself concedes, do not concern PERA's own claim. The Court should refuse to entertain PERA's Response.

The Bankruptcy Code confers a "right to be heard" only on those who qualify as a "party in interest" under 11 U.S.C. § 1109(b). *In re Tower Park Properties, LLC*, 803 F.3d 450, 452 (9th Cir. 2015) ("[P]arty-in-interest status is a necessary prerequisite to bankruptcy standing."). A party in interest is "one who has a '**legally protected interest** that could be affected by a bankruptcy proceeding.'" *Id.* at 457 (quoting *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992)) (emphasis in original). "Thus, an entity 'that may suffer collateral damage' but does not have a legally protected interest does not have standing under § 1109(b)" because such interests are "too remote" to entitle the entity to participate in the adjudication of that issue. *Id.* (quoting *In re C.P. Hall Co.*, 750 F.3d 659, 661 (7th Cir. 2014)). For example, in *Tower Park Properties*, the Ninth Circuit held that a trust beneficiary was not a "party in interest" with standing to object to the bankruptcy court's approval of a settlement agreement to which the beneficiary was not a party, even though the settlement could have detrimentally affected trust assets, because the beneficiary had no right to claim any "direct ownership interest in the Trust assets, nor any legal entitlement to control or manage those assets at th[at] time." *Id.* at 460. PERA here has even less of an interest than the beneficiary in *Tower Park Properties*, because none of its debt claims are subject to the First Securities Omnibus Objection, and it has no right to manage any securities claim other than its own because this Court has twice rejected PERA's request to be class representative— electing instead to allow individual securities claimants to pursue their own individual claims.

Nor do PERA's "fiduciary duties to the stock and bond claimants," Response at 1 n.1, give PERA a right to be heard in these matters. As the representative of an uncertified class, PERA's duties are limited to, at most, to protecting putative class members from prejudice "resulting from the actions of class counsel" in the Securities Litigation. *See Schick v. Berg*, 2004 WL 856298, at \*6 (S.D.N.Y. Apr. 20, 2004) ("[T]he scope of the fiduciary duty owed by class counsel to putative class members prior to class certification . . . is limited to protecting the substantive legal rights of putative class members that form the basis of the class action suit from prejudice in an action against the class defendant ***resulting***

10

*from the actions of class counsel*.") (emphasis added). Needless to say, PERA's obligations do not extend to separate claims made by individual class members, many of whom have retained separate counsel, filed in a separate Bankruptcy Court. To be sure, PERA has not cited a single case that supports that proposition.

The arguments made by PERA in its Response highlight the cost and expense created by PERA's interference. For example, PERA's "concern" that the First Securities Omnibus Objection "is ambiguous about how claimants who sold their PG&E securities before October 12, 2017 but then later purchased additional PG&E securities are to be treated," *see* Response at 6, is a complete red herring. The First Securities Omnibus Objection applies only to claimants who sold **all** of their securities before the first alleged corrective disclosure, and it does not apply at all to claimants who purchased additional PG&E securities on or after October 12, 2017. PG&E made this point very clear in its Objection. *See, e.g.*, Objection at 6–7 ("[N]ot one of the claimants . . . held *any* of the Debtors' securities on or after the earliest date when the alleged fraud was revealed (October 12, 2017).") (emphasis in original). And even if the Reorganized Debtors had not made that clear in the Objection, a claimant would know that it had not purchased additional securities, and that this so-called concern was inapplicable to its claim. PERA would also have known this had it reviewed the claims that were subject to the Objection—which they admittedly did not do. *See* Response at 5. Instead, PERA made an uninformed decision to inject irrelevant issues into this matter, to interfere with the resolution of these claims, and to waste this Court's time and the Reorganized Debtors' resources.

Allowing third parties such as PERA to interpose such issues that are not before the Court is precisely what the "party in interest" barrier is designed to foreclose. *See Tower Park Properties*, 803 F.3d at 460–61 (creditor was not "party in interest" that could object to approval of settlement agreement because basis for objection was "collateral to the resolution of claims between the debtor . . . and its creditors"). Accordingly, the Court should preclude PERA from being heard unless and until it has a legitimate protectable interest with respect to its own claim, and should abstain from issuing an impermissible advisory opinion based on PERA's response to the Objection. *See In re Frye*, 2009 WL 7751434, at *8 (B.A.P. 9th Cir. Apr. 7, 2009) (affirming bankruptcy court's decision to decline to issue

11

advisory opinion regarding post-bankruptcy collection activities where "it was within the bankruptcy court's discretion to determine that the matter was not ripe for adjudication"). Thus, in addition to the fact that the substantive issues raised by PERA are without any merit whatsoever, the Court should sustain the Objection given that no Debt Claimant has opposed the relief sought.

## CONCLUSION

For the foregoing reasons, the Reorganized Debtors respectfully request that the Court enter an Order disallowing the Debt Claims listed in Exhibit A hereto.

Dated: May 19, 2021

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

By: */s/ Richard W. Slack*
　　　Richard W. Slack

*Attorneys for Debtors and Reorganized Debtors*

12