Case 4:20-cv-04570-HSG   Document 30   Filed 05/20/21   Page 1 of 7

**Entered on Docket
May 21, 2021
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>Plaintiff,<br><br>v.<br><br>PG&E CORPORATION,<br><br>Defendant. | Case No. 20-cv-04570-HSG<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S RULINGS ON POSTPETITION INTEREST**<br><br>Re: Dkt. No. 15 |

Pending before the Court is Appellant Ad Hoc Committee of Holders of Trade Claims' appeal of the Bankruptcy Court's Confirmation Order. Dkt. No. 15 ("Appellant's Brief") and Dkt. No. 23 ("Reply Brief"). Specifically, Appellant appeals the Bankruptcy Court's rulings regarding postpetition interest, which were incorporated by the Bankruptcy Court in its Confirmation Order. Dkt. No. 1-4 at 29. These prior rulings were set out in the Memorandum Decision Regarding Postpetition Interest, Dkt. No. 1-5 ("PPI Memorandum"), and the Interlocutory Order Regarding Postpetition Interest, Dkt. No. 1-6 ("PPI Order"). Appellees PG&E Corporation and Pacific Gas and Electric Company (collectively, "Debtors") oppose the appeal. Dkt. No. 21 ("Appellees' Brief"). For the following reasons, the Court **AFFIRMS** the Bankruptcy Court's rulings on postpetition interest.

**I.    BACKGROUND**

    **A.    PG&E's Bankruptcy and Chapter 11 Plan**

On January 29, 2019, the Debtors commenced voluntary cases for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California ("Bankruptcy Court"). Significantly, the Debtors needed to propose a plan of reorganization that satisfied the requirements of A.B. 1054, including its June

30, 2020 deadline for plan confirmation. In light of the "increased risk of catastrophic wildfires," A.B. 1054 created the "Go-Forward Wildfire Fund" as a multi-billion dollar safety net to compensate future victims of public utility fires and thereby "reduce the costs to ratepayers in addressing utility-caused catastrophic wildfires," support "the credit worthiness of electrical corporations," like the Debtors, and provide "a mechanism to attract capital for investment in safe, clean, and reliable power for California at a reasonable cost to ratepayers." A.B. 1054 § 1(a). For the Debtors to qualify for the Go-Forward Wildfire Fund, however, A.B. 1054 required, among other things, the Debtors to obtain an order from the Bankruptcy Court confirming a plan of reorganization by June 30, 2020. *See* A.B. 1054 § 16, ch. 3, 3292(b). After more than sixteen months of negotiations among a variety of stakeholders, and following confirmation hearings that spanned several weeks, the Debtors' Plan of Reorganization dated June 19, 2020 ("Plan")[1] was confirmed by the Bankruptcy Court on June 20, 2020 and became effective on July 1, 2020 ("Effective Date").

### B.   The Postpetition Interest Dispute

Prior to confirmation, the Bankruptcy Court considered arguments from Debtors and Appellant, among others, about the applicable postpetition interest to be paid to four classes of allowed unsecured and unimpaired claims. PPI Memorandum at 1. Debtors argued that creditors in the four classes should receive interest calculated pursuant to 28 U.S.C. § 1961(a) ("the Federal Interest Rate"), relying on the Ninth Circuit's decision in *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002) ("*Cardelucci*"). *Id.* at 1-2. Certain creditor groups, including the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Senior Secured Noteholders of Pacific Gas and Electric Company, and Appellant, argued that under California law, contract-based claims accrue interest at a contractual rate, and in the absence of such a rate, at the statutory rate of 10%. *See* Cal. Civ. Code § 3289.

On December 30, 2019, the Bankruptcy Court ruled that "the Debtors are correct, that *Cardelucci* controls and that the Federal Interest Rate applies to any Plan." PPI Memorandum

---

[1] Capitalized terms not otherwise defined in this order have the meanings ascribed to them in the Plan.

at 2. On February 6, 2020, the Bankruptcy Court entered the PPI Order. In the PPI Order, the Bankruptcy Court again "conclude[d] that the Debtors are correct, that *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002) controls and that the Federal Interest Rate applies to the postpetition treatment of unsecured creditors under any Chapter 11 Plan of Reorganization proposed by Debtors." PPI Order at 2.

Appellant then filed a motion for leave to appeal in this Court. The Court found that the PPI Memorandum and Order did not constitute a final order for purposes of appeal and denied Appellant's request for leave to appeal. *See Ad Hoc Comm. of Holders of Trade Claims v. PG&E Corp.*, 614 B.R. 344 (N.D. Cal. 2020) ("*Ad Hoc Comm.*").

## II. LEGAL STANDARD

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. 28 U.S.C. § 158. A district court reviews a bankruptcy court's decision by applying the same standard of review used by circuit courts when reviewing district court decisions. *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009). The district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001).

## III. DISCUSSION

In its prior order on Appellant's motion for leave to appeal, the Court considered the same arguments offered by Appellant in the current appeal. *Ad Hoc Comm.*, 614 B.R. at 354-357. Despite Appellant's attempts, then and now, to narrow the scope of the Ninth Circuit's holding in *Cardelucci*, the Court continues to agree with the Bankruptcy Court "that *Cardelucci* 'controls' the issue of postpetition interest payable under the Plan." *Id.* at 355. As discussed in the prior order, *id.*, the Ninth Circuit framed the issue in *Cardelucci* as "present[ing] the narrow but important issue of whether such post-petition interest is to be calculated using the federal judgment interest rate or is determined by the parties' contract or state law." *Cardelucci*, 285 F.3d at 1233. The Ninth Circuit's holding remains clear: "Where a debtor in bankruptcy is solvent, an unsecured creditor is entitled to 'payment of interest at the legal rate,'" and "Congress intended 'interest at the legal rate' in 11 U.S.C. § 726(a)(5) to mean interest at the federal statutory rate

pursuant to 28 U.S.C. § 1961(a)." *Id.* at 1234. In support of this holding, the Ninth Circuit observed that application of the lower federal judgment rate did not violate an unsecured creditor's substantive due process rights, and that using that rate for all claims was "rationally related to legitimate interests in efficiency, fairness, predictability, and uniformity within the bankruptcy system." *Id.* at 1236.

Appellant attempts to distinguish *Cardelucci* by arguing that the plan in that case involved impaired claims, while the Debtors' Plan here proposes to leave general unsecured claims unimpaired, such that Section 726(a)(5) of the Bankruptcy Code—the section cited in *Cardelucci* to derive the "legal rate" for postpetition interest—is inapplicable. Appellant's Br. at 2-3, 17-18, 29-33; Reply at 6-12.

Appellant's contention that the Ninth Circuit's decision in *Cardelucci* is not controlling authority—and only applicable to a narrow set of facts—is unavailing. To the extent that Appellant believes that the Ninth Circuit never intended its ruling to apply to unimpaired claims, *Cardelucci* certainly does not say that. While the Ninth Circuit pinpointed a "narrow but important issue," it did not narrow the application of its holding. The "narrow but important issue" *Cardelucci* resolved is what "legal rate" applies to postpetition interest in a solvent debtor case. 285 F.3d at 1234 ("Where a debtor in bankruptcy is *solvent*, an *unsecured creditor* is entitled to 'payment of interest at *the legal rate* from the date of the filing of the petition' prior to any distribution of remaining assets to the debtor.") (emphasis added) (citation omitted). That is precisely the issue resolved in the PPI Memorandum and Order.

The application of the federal rate to Appellant's claims is further supported by the Ninth Circuit's reasoning in *Cardelucci*. The Ninth Circuit explained that "[u]pon the filing of the bankruptcy petition, creditors with a claim against the estate must pursue their rights to the claim in federal court and entitlement to a claim is a matter of federal law." *Id.* at 1235. "As of the date of the filing of the petition, creditors hold a claim, similar to a federal judgment, against the estate, the payment of which is only dependent upon completion of the bankruptcy process." *Id.* "In this respect, the purpose of post-petition interest makes the award analogous to an award of post-judgment interest." *Id.* "It has long been the rule that an award of post-judgment interest is

procedural in nature and thereby dictated by federal law." *Id.*  Nothing in this explanation suggests that the Ninth Circuit intended an exception for unimpaired claims, as urged by Appellant.  Appellant's Br. at 20-25.  On the contrary, the Ninth Circuit's reasoning supports its observation that "applying a single, easily determined interest rate to *all* claims for post-petition interest ensures equitable treatment of creditors."  *Id.* (emphasis added).  While Appellant cites a number of out-of-circuit cases, including a recent bankruptcy court decision from the Southern District of Texas addressing the issue of postpetition interest, Reply at 2-6, the Court sees no reason to depart from the clear holding and reasoning of *Cardelucci*.  *See Ad Hoc Comm.*, 614 B.R. at 356 ("[B]ecause the Ninth Circuit has directly decided the issue in *Cardelucci*, the cited out-of-circuit authority does not give rise to a substantial ground for difference of opinion justifying an interlocutory appeal.").

Nor is the Court persuaded by Appellant's argument that its narrow interpretation of *Cardelucci* is necessary to harmonize *Cardelucci* with the Ninth Circuit's decisions in *L&J Anaheim Assocs. v. Kawasaki Leasing Int'l, Inc.*, 995 F.2d 940 (9th Cir. 1993); *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070 (9th Cir. 2002); and *Pacifica L 51 LLC v. New Invs., Inc. (In re New Investments, Inc.)*, 840 F.3d 1137 (9th Cir. 2016).  Appellant's Br. at 33.  As the Court previously explained, *L & J Anaheim* did not specifically address postpetition interest.  *Ad Hoc Comm.*, 614 B.R. at 355.  *L & J Anaheim* did interpret Section 1124 of the Bankruptcy Code to mean that "'Congress define[d] impairment in the broadest possible terms,'" and that "'any alteration of [a creditor's] rights constitutes impairment even if the value of the rights is enhanced.'"  *Id.* at 355-356 (quoting *L & J Anaheim*, 995 F.2d at 942).  But the Ninth Circuit's interpretation of Section 1124 does not support Appellant's argument that the claims of its members must be considered impaired by the Plan unless postpetition interest is paid at the contractual or state statutory rate.  Appellant's Br. at 21-25.

"[C]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code."  *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443,

1   444 (2007) (quoting *Raleigh v. Ill. Dept. of Revenue*, 530 U.S. 15, 20 (2000)).  As the Court
2   previously explained, this means that there is no impairment where the Bankruptcy Code—and not
3   the Debtors' Plan—modifies alleged non-bankruptcy contractual rights.  *Ad Hoc Comm.*, 614 B.R.
4   at 356.  In other words, "a creditor's claim outside of bankruptcy is not the relevant barometer for
5   impairment; we must examine whether the plan itself is a source of limitation on a creditor's legal,
6   equitable, or contractual rights."  *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 204 (3d Cir. 2003).
7          Section 502(b)(2) of the Bankruptcy Code disallows unsecured claims for postpetition
8   interest.  And so ordinarily, holders of unsecured claims (like Appellant's members) have no right
9   under the Bankruptcy Code to include such interest as part of their allowed claims.  However,
10  because the Debtors are presumed to be solvent, *Cardelucci* directs that the Debtors pay
11  postpetition interest on allowed unsecured claims (at the "Federal Judgment Rate").  285 F.3d at
12  1234.  And like the Plan here, the plan in *Cardelucci* "provided for payment in full" of the
13  unsecured claims at issue by using the "Federal Judgment Rate."  *Id.* at 12333.[2]  Because the
14  Bankruptcy Court correctly applied Ninth Circuit precedent in ruling that the Federal Interest Rate
15  is the postpetition rate applicable to the claims of Appellant's members, the Court **AFFIRMS** the
16  Bankruptcy Court's rulings on postpetition interest.
17  //
18  //
19  //
20  //

---

[2] Appellant's contention that *In re Sylmar Plaza* and *In re New Investments* are in tension with *Cardelucci* is also misplaced.  Appellant's Br. at 33.  Like *L & J Anaheim*, *Sylmar Plaza* did not address the appropriate rate of postpetition interest on an unsecured claim in a solvent debtor case.  The Ninth Circuit held only that it was appropriate for a debtor to take advantage of the Bankruptcy Code's reinstatement provisions, even if doing so would adversely impact the creditor's contractual or nonbankruptcy rights.  *Sylmar Plaza*, 314 F.3d at 1075 (rejecting the argument "that a plan intended to nullify the consequences of a default (thereby avoiding the higher post-default interest rate) does not meet the purposes of the Bankruptcy Code").  Similarly, *New Investments* dealt with cure and reinstatement provisions of the Bankruptcy Code that allow a debtor to "return to pre-default conditions . . . only by fulfilling the obligations of the underlying loan agreement and applicable state law."  840 F.3d at 1142.  But Appellant's members' claims are not being cured and reinstated by the Plan.  Nothing in the Ninth Circuit's decision in *New Investments* invalidates the Plan's provision for the payment of Appellant's member's claims plus postpetition interest at the Federal Interest Rate, in accordance with *Cardelucci*.

**IV.  CONCLUSION**

The Court **AFFIRMS** the Bankruptcy Court's PPI Memorandum and PPI Order.  The Clerk is directed to terminate this appeal and close the case.

**IT IS SO ORDERED.**

Dated:  5/20/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge