William B. Abrams
end2endconsulting@gmail.com
1519 Branch Owl Place
Santa Rosa, CA, 95409
Tel: 707 397 5727

*Pro Se Claimant and*

*Party to California Public Utilities Commission Proceeding I.15-08-019 to Determine whether Pacific Gas and Electric Company and PG&E's Corporation's Organizational Culture and Governance Prioritizes Safety*

*Party to California Public Utilities Commission Proceeding A.20-06-011 which is the Application of Pacific Gas and Electric Company for Approval of Regionalization Proposal*

*Party to California Public Utilities Commission Proceeding R.18-10-007 which is the Order Instituting Rulemaking to Implement Electric Utility Wildfire Mitigation Plans Pursuant to Senate Bill 901*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    -and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>                   Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>\* *All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankr. Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**WILLIAM B. ABRAMS MOTION TO AMEND JUDGEMENT AND REPLACE ALL THE MEMBERS OF THE FIRE VICTIM TRUST OVERSIGHT COMMITTEE AND TO SUPPORT EFFICIENT TRUST ADMINISTRATION PURSUANT TO U.S.C. §§ 1123(A)(4) AND BANKRUPTCY RULE 9023 AND 9024**<br><br>**Hearing:** Telephonic Appearances Only<br>Date: Earliest Convenience of the Court<br>Time: TBD<br>Place: Courtroom 17<br>450 Golden Gate Ave., 16th Floor<br>San Francisco, CA, 94102 |

**PRELIMINARY STATEMENT**

1.  On July1, 2020 I filed the "WILLIAM B. ABRAMS MOTION FOR JUST TREATMENT OF VICTIMS THROUGH THE RECONSTITUTION OF THE FIRE VICTIM TRUST OVERSIGHT COMMITTEE AND EQUITABLE APPLICATION OF THE JUDICIAL REVIEW PROVISIONS PURSUANT TO U.S.C. §§ 1123(A)(4)" ("**Motion For Just Treatment**") which was denied without hearing on July 22, 2020 through the "ORDER DENYING MOTIONS FOR RECONSIDERATION." [Dkt. 8478] ("**Order Denying Reconsideration**") Within that order it was stated that "*Reconsideration may be accomplished through application of Federal Rules of Civil Procedure ("FRCP") 59(e) or 60(b), made applicable here through Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure. See Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.), 503 F.3d 933, 940 (9th Cir. 2007). Neither rule recognizes a motion for reconsideration. In re Captain Blythers, Inc., 311 B.R. 530, 539 (9th Cir. BAP 2004). Instead, FRCP 59(e) contemplates a motion to alter or amend a judgment. Under FRCP 59(e), amendment of a judgment is justified where: (1) the court is presented with newly discovered evidence; (2) the court committed clear error or the initial decision was manifestly unjust; or (3) there is an intervening change in controlling law. School Dist. No. 1J, Multnomah County, Oregon v. Acands Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). Similarly, FRCP 60(b) permits a Court to reconsider a prior judgment or order "only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) extraordinary circumstances which would justify relief." Id. at 1263.*"

2.  In keeping with this order and the legal basis cited, I am filing this motion to introduce "*newly discovered evidence*" and to demonstrate that unbeknownst to the court this decision was "*manifestly unjust.*" Therefore, in keeping with Bankruptcy Rule 9023 and Bankruptcy Rule 9024, I ask the court to amend their judgement regarding the constitution of the Trust Oversight Committee ("**TOC**") and the Victim Trust Administration Procedures. The court was not made aware of material information that demonstrates that the constitution of the TOC rather than being formed in good faith as a way to provide "oversight" was in fact formed in a manner that prevents Trust accountability to the victims. These structural problems with the makeup of the TOC has materially and negatively impacted the Trust administration and the Trustee's ability to actively advocate for the

interests of victims in this case. Specifically, it has impeded the Trustee and the Trust Administrator's ability to effectively and efficiently manage the Fire Victim Trust.

**ARGUMENT**

3. **PLEASE TAKE NOTICE** that the "ORDER CONFIRMING DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JUNE 19, 2020" [Dkt. 8083] states on page 68, paragraph D that "*No parties other than holders of Fire Victim Claims shall have a right, or involvement in, the Fire Victim Claims Resolution Procedures, the Fire Victim Trust Agreement, the administration of the Fire Victim Trust, the selection of a Fire Victim Trustee, settlement fund administrator, claims administrator, or the Fire Victim Trust Oversight Committee. The Fire Victim Claims shall be administered by a Fire Victim Trust and the Fire Victim Trust Oversight Committee independent of the Debtors. The Fire Victim Claims shall be administered, allocated and distributed in accordance with applicable ethical rules and subject to adequate informed consent procedures. The Fire Victim Trustee shall receive settlement allocations consistent with Rule 1.8(g) of the Model Rules of Professional Conduct. The rules and procedures governing the administration and allocation of the funds from the Fire Victim Trust shall be objectively applied and transparent. No party other than holders of Fire Victim Claims, including but not limited to the Debtors, the Reorganized Debtors, and any holders of Claims or Interests other than holders of Fire Victim Claims, shall have any rights to any of the proceeds in the Fire Victim Trust, or any clawback or reversionary interest of any of the consideration (whether Cash or otherwise) allocated to any of the holders of Fire Victim Claims generally or in the total amount funded to the Fire Victim Trust.*"

4. **PLEASE TAKE FURTHER NOTICE** that the "NOTICE OF APPOINTMENT OF FIRE VICTIM TRUST OVERSIGHT COMMITTEE IN ACCORDANCE WITH CONFIRMATION ORDER [Dkt. No. 8053] FILED BY FIRE VICTIM TRUSTEE" [Dkt. 8195] indicated appointment of Trust Oversight Committee members without meaningful consultation or approval from "holders of fire victim claims." There was no substantive vote, referral process or adequate vetting of the following members on the Trust Oversight Committee:

- Amy Bach, Esq., United Policyholders
- Douglas Boxer, Esq., Law Office of Douglas Boxer

- Elizabeth Cabraser, Esq., Lieff Cabraser Heimann & Bernstein, LLP
- Michael Kelly, Esq., Walkup, Melodia, Kelly & Schoenberger
- Frank M. Pitre, Esq., Cotchett, Pitre & McCarthy, LLP
- Amanda L. Riddle, Esq., Corey, Luzaich, de Ghetaldi & Riddle LLP
- Bill Robins, Esq., Robins Cloud LLP
- Gerald Singleton, Esq., Singleton Law Firm
- Steven J. Skikos, Esq., Skikos, Crawford, Skikos & Joseph, LLP

Moreover, none of these members went through any type of background checks or were asked to provide financial disclosures so that potential conflicts of interests could be identified. Holders of Fire Victim Claims did not have any meaningful hand in selecting the TOC and were not given any assurances by the Tort Claimant Committee ("**TCC**") or Fire Claimant Professionals that the interests of the Oversight Committee Members were aligned with their interests to get just and fair compensation for their claims.

5. **PLEASE TAKE FURTHER NOTICE** that the Up from the Ashes Coalition ("**UFTA**") was formed as a 501(c)4 organization on May 17, 2018 and lobbied heavily for the passage of AB-1054 which was signed into law on July 12, 2019. I have included the Articles of Incorporation from UFTA (Attachment A) and the IRS form 990 (Attachment B) which names the following as Officers of the Organization:

- President - Steve Campora Esq., Dreyer, Babich, Baccola, Wood & Campora Law Firm
- Director/Secretary – Michael A. Kelly, Walkup, Melodia, Kelly & Schoenberger
- Director/Treasurer – Frank Pitre, Cotchett, Pitre & McCarthy, LLP

Additionally, I have attached Form 635 (Attachment C) UFTA which names 21 different "Coalition Members" which not coincidentally include ALL of the Trust Oversight Committee Members with the exception of Amy Bach Esq., United Policyholders whose organization was the sole beneficiary when UFTA prematurely dissolved on August 14, 2020 (Attachment D). The Tort Claimant Committee (TCC) member attorneys are also on this list of UFTA "Coalition Members." However, it is important to note that the attorneys who resigned from the TCC are not affiliated with UFTA including those members that resigned on "moral grounds." The financial contributions of the

coalition members are listed on these Form 635 documents. I am confident that Ms. Bach was not aware of the broad financial ties of all the other members of the Trust Oversight Committee to UFTA. It is important to make clear that United Policyholders (UP) and Ms. Bach specifically are strong advocates for wildfire survivors and should be commended for their ongoing and important work. These financial ties and this motion should be used to impugn the reputation or strong work product that continues to be a source of support for wildfire survivors and others across the State of California.

6. **PLEASE TAKE FURTHER NOTICE** that the International Brotherhood of Electrical Workers Local #1245 filed a complaint against UFTA on May 2, 2018 stating in part that the organization "*is a front organization created to conceal the identities of law firms who do not want the public to know they are paying lobbyists to persuade the government to preserve billions of dollars in legal fees… the public has a right to determine if UFTA is nothing more than a means for a group of trial lawyers to profit off the tragic fires, one part of a public misinformation campaign conducted while hiding their identities behind UFTA… Trial lawyers are paying a seasoned lobbyist to wage an influence campaign on their behalf and using UFTA as a front company to conceal their involvement while their lobbyist publicly misrepresents the nature of that front company as an association of fire victims*" (Attachment E). The UFTA website and activities quickly ceased after the passage of AB1054 but their Facebook page still describes them as "**We** are a coalition of fire victims who have come together to fight PG&E, the company suspected of causing the fires that destroyed **our** homes and devastated **our** lives." I have included a screenshot of that page and the other materials that were circulated by UFTA through their lobbying activities related to AB1054 (Attachment F).

7. **PLEASE TAKE FURTHER NOTICE** that subsequent to this complaint being filed it was no longer pursued by IBEW Local #1245. However, after this complaint, IBEW was able to secure certain provisions for their members within the PG&E Plan of Reorganization including but not limited to collective bargaining extensions, a 3.75% general wage increase, additional health benefits, and other assurances.[1] IBEW Local #1245 ended up being a strong proponent of AB-1054 and presented to both the Senate and Assembly Energy Committees in support. I have no doubt that

---

[1] See the "Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated January 31, 2020" [Dkt. 5590] pg. 99-100

IBEW Local #1245 pursued these benefits in good faith on behalf of their members and should be commended for these efforts and their strong advocacy. This motion should not be used to impugn the reputation of the IBEW or their members who support our utilities like PG&E and the public. Their members risk their lives on a daily basis so residents like me can have safer and more reliable energy.

8. **PLEASE TAKE FURTHER NOTICE** that since the passage of AB-1054 and plan confirmation, none of the Trust Oversight Committee Members or other Fire Claimant Professionals have directly or indirectly engaged in any advocacy or lobbying activities on behalf of victims through the current slate of California Legislation including but not limited to Senate Bill 533 and Senate Bill 694. Moreover, these victim attorneys have not proposed new legislation that might tie PG&E securitization to the security of victims through the Fire Victim Trust or other efforts that might advance the interests of victims to ensure the Trust is fully funded to make victims whole. This is in stark contrast to their work and their generous financial contributions prior to plan confirmation.

9. **PLEASE TAKE FURTHER NOTICE** that Fire Claimant Professionals and members of the TOC have not advanced victim interests at the California Public Utilities Commission ("**CPUC**") since plan confirmation. On May 3, 2021 the CPUC voted to approve a financing order giving PG&E the ability to securitize $7.5B in costs related to the wildfires caused by its power lines in 2017.[2] There was zero representation in that proceeding by the Trust Administrator, the Trustee, the Trust Oversight Committee or Fire Claimant Professionals on behalf of the victims they represent. This is despite the fact that counsel has been hired by the Trustee to represent victim interests at the CPUC. None of these victim attorneys are actively engaged to tie funding of the Victim Trust (victim security) to the approval of PG&E investor security. Moreover, they did not engage in Rulemaking 18-10-007 related to the PG&E wildfire mitigation plan or Application 20-06-011 regarding the PG&E regionalization plan which is a direct procedural outgrowth from the PG&E Bankruptcy Case.

10. **PLEASE TAKE FURTHER NOTICE** that on May 20, 2021 PG&E Corporation and their Utility held their annual meeting of shareholders. Leading up to and during that meeting not the Trustee nor the Trust Oversight Committee Members voiced views to advance the interests of

---

[2] See California Public Utilities Commission Proceeding A.21-01-014

victims holding ~24% of PG&E stock. They did not use their significant shareholder stake as leverage to advance victim interests at all. There are specific mirrored voting provisions that the Trust could and should leverage. Given all of the expenses and the myriad of consultants hired by the Trust Administrator and the Trustee, why are these victim advocates so silent? Additionally, there are specific voting provisions within the Trust Agreement that the TOC has not authorized or leveraged to advance victim interests including the following:

> *"Pursuant to the Trust Agreement, and subject to the mirrored voting provision in the Registration Rights Agreement (as defined below), the Trustee has the power to exercise the right to vote the shares of Common Stock included in the Trust Assets (as defined in the Trust Agreement), except that in exercising the right to vote for the election of members of the board of directors of the Issuer, to the extent applicable, the Trustee shall do so only after obtaining the consent of the Trust Oversight Committee."*

## CONCLUSION AND REMEDIES

11. Prior to plan confirmation, the parties to the proceeding were careful to include a full suite of indemnifications within the Trust Agreement including broad provisions like "*any action taken or omitted by the Trust Indemnified Parties with the approval of any of the Bankruptcy Court, the District Court, or the Superior Court of California for the County of San Francisco and, in the case of the Trustee, with the express approval of the TOC, will conclusively be deemed not to constitute willful misconduct, bad faith or fraud.*" However, these indemnifications should not be relied upon by Trust representatives or tolerated by the court to explain inaction and the lack of transparency that exists with the Trust administration. The work of high paid public relation firms and carefully choreographed videos should not take the place of open and honest two-way dialogue with victims. If the Trustee, the Trust Administrator and other victims cannot attend town hall meetings where there is real back and forth dialogue then they are not sufficiently communicating with victims. Victims should not have to go to the streets and protest in order to get the attention of the Trustee, the Trust Administrator and Fire Claimant Professionals.

12. Unfortunately, the Trust Oversight Committee Members seem to see their roles as spokespersons for the Trust Administrator and the Trustee which is how they have positioned

themselves to date rather than advocating for victim interests. The court cannot let this stand. These same TOC members have demonstrated prior to plan confirmation that they are very savvy and capable of maneuvering and advocating at the Governor's Office, among Legislators, the CPUC and elsewhere when their financial interests are at stake. Now that they have their indemnifications, many Fire Claimant Professionals seem to have abandoned these skills, moved onto the next batch of fire victims and have told victims to just be patient.

13. Victims like me should not have to become investigators to understand the conflicts of interests that are embedded in this case. Moreover, we should not have to play attorney to get answers regarding the inefficiencies built into the structure of the Trust. There are systemic injustices that are in full force within this case where victims are being treated as pawns to advance the interests of shareholders, bondholders and to enhance the reputation of certain Fire Claimant Professionals that are chasing the next batch of ambulances and fire trucks to scoop up the next rounds of victims. I urge the court not to let this case set precedent for how future victims will be mistreated in the next round of utility bankruptcies and through other proceedings. We already see the same players with the same games taking advantage of vulnerable victims throughout our wildfire-stricken communities. Some of these same Fire Claimant Professionals are now cajoling Kincade Fire victims, Zogg Fire victims and others to get their 30% percent and run. Yes, there are good attorneys doing honest work to support victims and the public and certainly victims of these fires need GOOD attorneys. My question is where are you now? Where is your work product? Where is your advocacy and pleadings on behalf of your clients? I have not seen you in Sacramento since the plan was confirmed. I have not seen you within CPUC proceedings or other spheres where there are opportunities to advance the interests of your clients. Waiving the bankruptcy "mission accomplished" banner is premature until victims are made whole and PG&E is made a safer and more reliable utility.

14. The Trustee, Trustee Council, Trust Administrator and others representing victim interests are bound by an unjust Plan, an unjust Trust Agreement, an unjust registration rights agreement and handcuffed to a Trust Oversight Committee that has been largely absent or conflicted or worse. It is clear that certain TOC members have differing levels of undisclosed financial conflicts but all have direct financial interests in this case that are not directly aligned with the interests of victims. Moreover, none of these TOC members were selected by victims in any meaningful way

which is a requirement for trust in the Trust oversight. The treatment of claims must be equitable according to U.S. Bankruptcy Code Section 1123(a)(4) and quite the opposite is on display now with special judicial review carve outs for some while the vast majority of victims get zero communications regarding when or how they will receive payments for their claims. This is unacceptable for victims and should be unacceptable to the court.

15. I urge the court to take decisive actions to restore some semblance of checks and balances back into the administration of the Trust. The Trust Oversight Committee should be in a position to provide oversight and they have not done so to date. Whether this is due to continued conflicts of interest, an over-reliance on indemnifications, pure complacency or other reasons is still unclear. However, we should not wait any longer to change direction. We should assign new members to the Trust Oversight Committee who are willing to adhere to Bankruptcy Rule 2019 and fully disclose any conflicts that they may have in the case. Moreover, we should make sure that all members have NO financial interest in the case to avoid real or perceived bias. Please, take into consideration my prior Motion for Just Treatment, [Dkt. 8247] as I made specific recommendations regarding the types of individuals that could fulfill these duties.

16. In addition to the reconstitution of the TOC, I recommend that the court broaden the amount of judicial review made available to victim claimants. I believe this is an additional and necessary step given that so many victims have lost confidence in the trust administration process and the associated lack of transparency. I recommend that the Trustee and the court seek a more equitable formula to grant victim access to additional judicial review. Threshold criteria need to be set for judicial review that are fair, just and provide equal treatment such as the following examples:

- Trustee may designate up to 15% of claims for further judicial review

- There must be disputed material facts related to the claims to trigger review

- Judicial review will only be provided if the difference between the claim request and the Trustee determination of that claim exceeds 5%

- Trustee will work to the best of their ability to ensure that claims seeking judicial review will not delay payment of claims to those not seeking further judicial review

While all judicial review criteria will be imperfect, these types of stipulations will avoid the appearance of preferential treatment articulated in the Judicial Review Notice and provide a vastly more equitable and fair trust management process.

17. The reconstitution of the Fire Victim Trust Oversight Committee and the recalibration of the judicial review provisions are needed to restore trust in the process. These steps are necessary to adhere to U.S. Bankruptcy Code Section 1123(a)(4) to provide "the same treatment" to claimants within the trust administration process. Moreover, I believe these steps are a prudent course correction in terms of the trust oversight, given the new evidence that I have put forward in this motion. The parties to this proceeding did not bring this evidence to the court regarding their financial contributions and lobbying activities that directly and materially affected the outcome of this case. Now that this information is brought to the attention of the court, I believe quick and decisive action is needed.

18. Victims are suffering. They are waiting to rebuild their homes and their lives while they see time and time again that the system is working against them inside and outside this courtroom. Yes, victims have been used as pawns within the political processes that surround this case and continue to be used as human shields by powerful investors looking to leverage the victim's stock to protect their own investments. All of this is happening with the backdrop of the riskiest wildfire season we have seen in a long time and with Pacific Gas and Electric Corporation committing more felonies and continuing to avoid regulatory and criminal accountability. I know that this court cannot remedy all of these injustices. All I ask is that the court be an active part of the solution and not part of the problem during these very risky times for the public and victim claimants in this case.

Dated: May 25, 2021

                                              Respectfully submitted,

                                              William B. Abrams

                                              Pro Se Claimant