1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                      -oOo-

4   In Re:                          ) Case No. 19-30088
                                    ) Chapter 11
5   PG&E CORPORATION AND PACIFIC    )
    GAS AND ELECTRIC COMPANY, ET    ) San Francisco, California
6   AL.                             ) Wednesday, May 26, 2021
                                    ) 10:00 AM
7                     Debtors.      )
    _____ ) STATUS CONFERENCE RE
8                                     REORGANIZED DEBTORS'
                                      OBJECTION TO CONSOLIDATED
9                                     EDISON DEVELOPMENT, INC.'S
                                      AMENDED CURE PAYMENT CLAIM
10                                    DEMAND FILED BY PG&E
                                      CORPORATION
11                                    [10613]

12             TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE DENNIS MONTALI
13            UNITED STATES BANKRUPTCY JUDGE

14

    APPEARANCES (All present by video or telephone):
15  For the Reorganized         THEODORE E. TSEKERIDES, ESQ.
    Debtors:                    Weil, Gotshal & Manges LLP
16                              767 Fifth Avenue
                                New York, NY 10153
17
    For Consolidated Edison     HUGH M. MCDONALD, ESQ.
18  Development, Inc.:          Pillsbury Winthrop Shaw Pittman
                                LLP
19                              31 West 52nd Street
                                New York, NY 10019
20

21

22

23

24

25

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
Court Recorder:              LORENA PARADA/ANKEY THOMAS
                             United States Bankruptcy
                             Court
                             450 Golden Gate Avenue
                             San Francisco, CA 94102


Transcriber:                 TAMARA BENTZUR
                             eScribers, LLC
                             7227 N. 16th Street
                             Suite #207
                             Phoenix, AZ 85020
                             (973)406-2250
```

Proceedings recorded by electronic sound recording;
transcript provided by transcription service.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

2                                -oOo-

3       (Call to order of the Court.)

4          THE CLERK:  Court is now in session.  The Honorable

5   Dennis Montali presiding.  Calling the matter of PG&E

6   Corporation.  I'll bring counsel in now.

7       (Pause.)

8          THE COURT:  All right, Mr. Tsekerides, good morning.

9   Nice to see you.

10          MR. TSEKERIDES:  Good morning, Your Honor.  It's been

11   a while.  It's good to see you again.

12          THE COURT:  All right, just --

13          MR. TSEKERIDES:  I --

14          THE COURT:  -- state your name for the record.

15          MR. TSEKERIDES:  Sure.

16          THE COURT:  And Mr. McDonald, good morning.  State

17   your name after Mr. Tsekerides.

18          MR. TSEKERIDES:  Judge, Theodore Tsekerides from Weil

19   Gotshal for the reorganized debtors.

20          MR. MCDONALD:  Good morning, Your Honor.  Hugh

21   McDonald from Pillsbury Winthrop Shaw Pittman for Consolidated

22   Edison Development.

23          THE COURT:  Okay.

24          MR. MCDONALD:  It's nice to see Your Honor again.

25   Since our last time, I've changed firms from Troutman Sanders

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1   to Pillsbury.  Nothing like changing firms during a pandemic.

2            THE COURT:  There's nothing wrong with that.  Nothing

3   wrong with Pillsbury.

4            So what's your pleasure?  You gentlemen asked me to

5   have a status conference.  I've had a great time reading lots

6   of stuff already, but what have you decided?

7            MR. TSEKERIDES:  Well, yeah, sure.  So and I think

8   we'll be quick, Your Honor.  So we've conferred, and this is a

9   cure demand, as I'm sure you've gathered from the papers.  And

10  there's one sort of legal issue, the ipso facto clause argument

11  that we've made that, in discussing with counsel, we felt that

12  that presented Your Honor with a discrete legal point that, if

13  you agreed with us, ConEd would have to sort of reassess if

14  they wanted to appeal or try to go forward on a different path.

15  And if you ruled in their favor, we'd have to reassess what

16  would be ahead of us on -- we know they want a lot of

17  discovery, and both expert and fact.  That would become very

18  messy.

19            And we thought well, if we did this ipso facto clause

20  argument, we could put in a brief that -- we touched on it in

21  our papers, but we would put in a more fulsome brief.  And

22  ConEd would put in a response, and we'd have a reply.  And then

23  we were thinking some time -- we have a schedule that we

24  proposed.  And we were thinking that we'd then have a hearing

25  on that point.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1            And that ruling, one way or the other, would take us

2    in a certain direction.  Again, if you ruled against us, ConEd

3    would want, as they've indicated to us, both fact and expert

4    discovery.  We don't have to debate today whether we agree with

5    that, but we know that that would be coming, and that they'd

6    have very different arguments in that context.

7            So in order to try to avoid that and put before you

8    what we both agree is a purely legal issue, we wanted to

9    present that to the Court, see if you agreed, and if so,

10   present a fairly tight schedule.  We would still be doing this

11   within the next couple of months -- to have that heard by the

12   Court in August.

13           THE COURT:  I'll come back to Mr. McDonald in a

14   minute, but for openers, we're going to get rid of the June

15   15th hearing on this motion.

16           MR. TSEKERIDES:  Oh yes, yes, I'm sorry.

17           THE COURT:  Okay.

18           MR. TSEKERIDES:  Yeah, that -- yes, absolutely.

19           THE COURT:  Okay.  And secondly, what -- it's

20   interesting that -- what you describe it, Mr. Tsekerides,

21   because as I read the -- I haven't read it -- one document I

22   did read only, is the unredacted version of your opening brief.

23   And it struck me, when I saw the ipso facto argument, I also

24   saw these other three categories, which I don't think we're

25   breaching any confidence to say it has to do with attorneys'

PG&E Corporation, et al.

1   fees, default interest, and cost.  And I'm wondering, well,

2   that seems like a legal question too.  I mean, what is the fact

3   question about the applicability of provisions of documents?

4   Maybe Mr. McDonald can answer that more --

5         MR. TSEKERIDES:  Yeah, that -- yeah.

6         THE COURT:  I mean, I fully expected, until five

7   minutes ago, that I would hear from Mr. McDonald and then

8   whatever you had in mind for a cross-briefing on those legal

9   issues, not the very narrow one.

10        Mr. McDonald, isn't it a legal question beyond just

11  ipso facto?

12        MR. MCDONALD:  It's a blended question, Your Honor, of

13  fact and law.  The objection raises questions of fact as to

14  whether or not the damages were foreseeable at the time of the

15  parties' entering into the contract.  And we believe they were

16  foreseeable, and therefore, our direct damages are recoverable.

17  The debtor has taken the position that they are were not, and

18  therefore, they're consequential.

19        So I think that does have an element of law for sure,

20  Your Honor, and applicable case law from the Ninth Circuit, but

21  also has a question of fact that we would like to take

22  discovery on, but we also have an expert witness we'd like to

23  proffer as part of that resolution or determination.

24        So we reached out, however, to the debtor and said we

25  do have, within your objection, questions of fact and law.  But

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    we do view your initial objection as one purely as a question

2    of law.  And that for efficiency's sake, so neither one of our

3    clients are expending additional funds briefing or taking

4    discovery on the other issues, we thought it was best to

5    proceed with this one particular issue up front.  And then I

6    think, as Mr. Tsekerides said, if there's a determination one

7    way or the other, the other party will have to reassess the

8    claim and what their status is.

9            THE COURT:  Well, no, no, I understand, particularly

10   if I agree with the debtor.

11           MR. MCDONALD:  Right.

12           THE COURT:  I mean, obviously, if I agree with the

13   debtor, we're done, and you can appeal.

14           MR. MCDONALD:  I'm left with an appeal.  And if you

15   agree with us, (indiscernible) --

16           THE COURT:  But I don't -- I don't make my decisions

17   based upon an appeal.  My decision is what I expect to be the

18   right result, and it's not on my list.  Besides, Mr. McDonald,

19   just because you're reversed on appeal doesn't mean you're

20   wrong.  But my point --

21           MR. MCDONALD:  Your Honor, I completely respect that.

22           MR. TSEKERIDES:  And Your Honor, we have discussed --

23           THE COURT:  But my --

24           MR. TSEKERIDES:  Oh, sorry.  Go ahead.

25           THE COURT:  But what I was going to say is that

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1  what -- I won't say it troubles me.  That's the wrong answer.

2  If you both think it's the right way to do it, I'm not going to

3  second guess you.  But it struck me when you stated it, Mr.

4  Tsekerides, that it was so narrow that I wondered if it was

5  appropriate or efficient to go to the legal question.  Because

6  it's sort of like, I would think -- let's use the example of

7  default interest.  To me, again, you either owe the default

8  interest or you don't.  I don't know why a legal consequence of

9  default interest is foreseeable.  It may well be that there is

10  a reason why it is, and certainly, Mr. McDonald, if he believes

11  that that's the theory, I'm not going to take it away from him.

12        I would hate to -- I would hate to have the matter be

13  briefed very narrowly, only to -- let's assume I reject PG&E's

14  ipso facto theory.  And I say okay, let's go to the next step.

15  Is there not still an efficiency in teeing up the legal

16  question?  If the answer is no, then ConEd is entitled to

17  develop the record.  Obviously, I can't take it away.  It would

18  be worse -- worse than getting reversed on appeal is getting

19  reversed for granting a motion on a legal question when there's

20  a fact dispute.

21        MR. TSEKERIDES:  That's a -- that's a fair point, Your

22  Honor.  We had talked about it, and maybe as we talk through

23  this more we can make some modifications.  I mean, I think the

24  way we had looked at it originally was the ispo facto,

25  definitely a legal issue.  And then our -- the debtors'

PG&E Corporation, et al.

1   position was look, we don't think that the damages you're

2   seeking are direct damages.  But --

3           THE COURT:  Yeah.

4           MR. TSEKERIDES:  -- we recognize that California law

5   is mixed.  And they can make an argument that, well, the

6   foreseeability point that Mr. McDonald made, and that could

7   lend itself to factual disputes.

8           Now, one thing we could do, and maybe even keeping

9   with the same schedule, although I'd want a little bit of time

10  to think about that, is to include the ipso facto and then make

11  a legal argument on these other points.  And then Mr. McDonald

12  at ConEd can put in what essentially would be like a 56(f)

13  type -- not a pleading but in their response to that, say,

14  well, the ipso facto, clearly legal.  These other points they

15  can explain why they're not legal and the facts that would

16  support them.

17          And then you could decide in that context whether to

18  address them, you're convinced by them that they're factual

19  disputes, or you're convinced by us that they're not and that

20  you can rule, as a matter of law, that they're not recoverable.

21  I mean, that's an option as well that sort of keeps in -- I

22  think is still sort of faithful to what we were thinking about

23  but then also provides the Court with an opportunity to address

24  other potentially purely legal issues.

25          THE COURT:  Mr. McDonald -- by the way, Mr. McDonald,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    I see you're turning your mic on and off, and that's fine.  You

2    don't -- it's up to you.  If you have a dog barking or a truck

3    going by, I appreciate you doing it, but you don't need to.

4           MR. MCDONALD:  Yeah, I have two dogs, and we have

5    workers on the street (indiscernible) the street.

6           THE COURT:  Oh, well, then by all means, we don't want

7    to hear your dogs.  Okay, go ahead.

8           MR. MCDONALD:  So Your Honor, I think what Mr.

9    Tsekerides is suggesting doesn't really work because we believe

10   there are actual issues of fact.  They're taking the position

11   that, as far as PG&E is concerned, these damages were not

12   foreseeable at the time of contract.

13          Now, if you want to proceed down the route of briefing

14   this as a question of law, I think we would have to have an

15   underlying assumption that, assuming PG&E believed or was aware

16   of the potential damages in the financings, and thus the

17   damages that would result from their breach, as a matter of

18   law, are the damages then recoverable without having to get

19   into the factual issue itself.

20          THE COURT:  Well --

21          MR. MCDONALD:  And I think that would work because I

22   think otherwise, we're blending the two and putting in front of

23   you as to whether or not you believe there is a question of

24   fact.

25          THE COURT:  Yeah, I understand but -- okay, let me --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1   again, Mr. Tsekerides, you made reference to ConEd's argument,

2   but I haven't read any of ConEd's arguments.  I mean, I haven't

3   even been presented with them.  They haven't been filed.

4   Right?

5             MR. TSEKERIDES:  That's true.  That's true.  I mean,

6   that's true.

7             MR. MCDONALD:  Your Honor -- and I think --

8             THE COURT:  Okay.  Hold on.

9             MR. MCDONALD:  Sorry.  I'm sorry.  Go ahead, Your

10  Honor.

11            THE COURT:  But what I was going to -- what I'm asking

12  you, Mr. McDonald, is is it a fact question that has to be

13  determined by external facts, or a fact question that can be

14  found in the documents?  So that, for example, I'll give you a

15  hypothetical.  If I have a contract with you that recites that

16  if you don't pay me, I'm going to suffer this other consequence

17  and, therefore, because I've got this other commitment and that

18  might cause me damages, that, to me, might be a fact question.

19  But it's a fact that you -- that we know from the documents.

20            If the -- if, on the other hand, the fact -- if the

21  foreseeability depends upon somebody else's testimony and

22  recollection, then I agree with you.  But why don't the

23  documents themselves answer the question?  And you can't -- you

24  don't -- you don't win a fact argument by an expert.

25            I mean, (audio interference) a legal malpractice case,

PG&E Corporation, et al.

1   for example. If you get sued for legal malpractice, the expert

2   would say, based upon these facts, that was (audio

3   interference) come up to the standard of care.  Maybe there's a

4   legal expert who can opine to say that PG&E is on the hook for

5   these consequential damages.  But -- so I guess I'd need some

6   help from you to understand whether it really is a fact

7   question, or it's a fact question that can be determined within

8   the four corners of the documents.

9          MR. MCDONALD:  Your Honor, the case law -- I don't

10  have all the cites in front of me.  And I obviously would have

11  the opportunity to brief it to you.

12         THE COURT:  Yeah.

13         MR. MCDONALD:  A lot of the case law has looked to

14  what the knowledge of the parties were or is inferred to have

15  known at the time of the contract.  So one of the cases it was

16  whether or not one of the parties was aware of a bonding issue

17  that the contractor had.  And in one instance, the Ninth

18  Circuit held because there was no knowledge of the bonding

19  issue, the subsequent damages by breach were not recoverable

20  because they weren't direct --

21         THE COURT:  Yeah.

22         MR. MCDONALD:  -- and foreseeable.

23         THE COURT:  But that -- but that --

24         MR. MCDONALD:  Other cases --

25         THE COURT:  -- but that goes back --

of 37
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1      MR. MCDONALD:  Yeah, other cases --

2      THE COURT:  That goes back to the --

3      MR. MCDONALD:  I'm sorry.

4      THE COURT:  Go ahead.  You finish, sorry.

5      MR. MCDONALD:  Other cases following on from that have

6  held that in a situation where the parties were, in fact, aware

7  of the underlying situation with respect to a bonding issue for

8  the particular contractor at issue, it was foreseeable that a

9  breach would have -- would have an impact on the ability of

10  that entity to obtain further bonding.  And therefore, those

11  damages were recoverable as direct damages.

12      So I see where Your Honor's coming from.  And we have

13  pointed out to PG&E both what I would call contractual and

14  extra-contractual points at which -- where they had knowledge

15  of the financing and the terms of the finances as to general

16  project finances.

17      But I think it would be helpful, Your Honor, if we

18  could just step back one second.  I could put it contextually

19  for you.  ConEd has sixteen plants that supply renewable energy

20  to PG&E.

21      THE COURT:  I'm aware of that.

22      MR. MCDONALD:  Several of those plants were financed

23  through project financings (phonetic).  One of the plants

24  that's at issue here was a -- was a refi takeout, a subsequent

25  financing of the project financing.

of 37
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1          The other two financings for what we call the

2   California One Holdings (phonetic) and California Two Holdings

3   (phonetic) cover roughly another six projects that each had

4   individual project financings via the structure.  Those project

5   financings enabled the construction of these plants and were

6   geared towards the power purchase agreements that PG&E entered

7   into.

8          So PG&E would consent to the pledge of the PPA to the

9   finance parties.  And then they would specifically acknowledge

10  the financings to the counterparties and agree that, in the

11  event of a default on the underlying documents, they would

12  continue to purchase the power pursuant to the terms of the

13  power purchase agreement.

14          THE COURT:  And that's not an uncommon situation in

15  lots of contractual relationships.  Like --

16          MR. MCDONALD:  Sure.

17          THE COURT:  -- quiet enjoyment agreement in a real

18  property lease.  Right?  The tenant --

19          MR. MCDONALD:  Very much the same.

20          THE COURT:  -- are agreeing that if the borrower of

21  the loan defaults -- but again, do you prove it by the

22  document, or do you prove it by some officer of the company

23  being deposed to say, by the way, did you know about this?

24  If it's --

25          MR. MCDONALD:  Well --

PG&E Corporation, et al.

1    THE COURT: -- the latter, then obviously you have a

2  fact question. If it's the former, then the document tells us

3  itself.

4    MR. MCDONALD: Yes, I said, Your Honor, there are

5  contractual issues, but then PG&E went before the public

6  utilities commission to have all of these agreements approved:

7  the power purchase agreement, the structure of the transaction.

8  The PUC, their regulator, was aware of the existence of the

9  financings. The financings were integral to the ability to

10  have these projects approved in the first instance by the PUC.

11    So there's a lot more to this, and I'm starting to get

12  pretty much far afield from your question, but suffice to say

13  there are contractual issues and extra-contractual, factual

14  issues that would need to be developed for us to properly

15  present the case, which is why I started from the beginning --

16    THE COURT: Okay.

17    MR. MCDONALD: -- by saying that in the event that

18  we'd want to look at a strict question of law, we would have to

19  have some factual assumptions for the purpose of making that

20  determination alone by Your Honor.

21    THE COURT: In my --

22    MR. MCDONALD: Otherwise we have fact and law.

23    THE COURT: -- in my hypothetical, again -- I have a

24  bad habit of thinking starting with a simple hypothetical and

25  then trying to apply it. So in my hypothetical, the tenant

PG&E Corporation, et al.

1  moves into the office building and says to the landlord, I want

2  to stay here even if you get evicted because you get foreclosed

3  on by the lender.  So the landlord says fine.  Meet the lender.

4  You guys have a quiet enjoyment and whatever the other flipside

5  of --

6          MR. MCDONALD:  SDNA, yes, subordination, non-

7  disturbance agreement.

8          THE COURT:  Yes, right.  And so there you look at the

9  document, and it's clear on the face of the document that the

10 landlord -- that the lender knew that there was a tenant who

11 wanted certainty, and there was a tenant who needed -- wanted

12 to avoid getting bounced out by the default of the landlord.

13         Again, we're back to my example.  If the way -- if the

14 way you prove it is by the guy who did the deal, deposed three

15 years later and says oh, yeah, I knew about that, that's one

16 thing.  If, on the other hand, there was a regulatory body that

17 was involved, and there was a PUC decision or maybe it's the

18 San Francisco Rent Board that says yes, we'll approve this,

19 then that's different.

20         Look, I don't want to turn this into what it doesn't

21 have to be.  I'll do it your way, unless you both can figure

22 out a way to broaden it.  Here's what I'm concerned about.  I'm

23 concerned about that if you tee up just a pure ipso facto

24 clause, I won't say it's an advisory opinion, but I know from

25 my own experience from my days on the Bankruptcy Appellate

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    Panel that appellate courts like to have a context.  And if you

2    don't have -- if it's such a pure legal question, it's like why

3    are we even deciding this in the first place.

4            MR. TSEKERIDES:  If I might, Your Honor.  I mean, one

5    thing --

6            THE COURT:  Yeah.

7            MR. TSEKERIDES:  -- we could do, and this is sort of

8    on the spot, so forgive me for that, Mr. McDonald.

9            But one thing we could do is -- the way I'm -- as

10   you're talking, the way I'm thinking about this -- and I know

11   you're a fan of the hypotheticals.  The way I've been thinking

12   about it in the meantime then is, well, it's not really unlike

13   if we were to move for summary judgment and, say, pure legal

14   issue on this, and we think you don't need any discovery on

15   these other ones, we should win anyway because we don't think

16   they're direct.  The person opposing that has an obligation to

17   come forward and then identify, not only in responding to the

18   legal point but identify well, no, no, Judge, you can't -- you

19   can't grant summary judgment because we haven't had any

20   discovery.  That's why I mentioned the 56(f) before.

21           THE COURT:  Yeah, that's a good example.

22           MR. TSEKERIDES:  And identify -- and identify what

23   those things would be.  And so we could file a brief that laid

24   that out, and we've had separate proceedings with ConEd that

25   I'm not going to disclose on publicly.  So obviously, I know

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    some of their points that you would then not know right now.

2           Then they could respond and then explain -- which they

3    already have to us -- and explain why they think you shouldn't

4    rule, and then you decide.  And I think, as we're talking out

5    loud, it may make sense to do something like that because if

6    you were to rule against us on the ipso facto, I would imagine

7    that, when they ask for all this discovery, we're going to say

8    no, you don't need all that discovery, and you certainly don't

9    need an expert to tell us what they think the markets look like

10   or what the industry looks like.  You have to show what we

11   knew.

12          So it may help to short circuit that, or at least

13   frame the issue so when you're reading the briefing you can

14   come to a conclusion.  So I do throw that out there as maybe

15   it's a hybrid of what we came in on, but maybe that makes more

16   sense.

17          THE COURT:  Well, I'm glad you like my hypotheticals

18   because I like them.  When I read your brief, Mr. Tsekerides,

19   again, as I mentioned, I saw that you flagged the ipso facto

20   clause, but you also flagged the other issues.  And your

21   explanation about the California Supreme Court cases and

22   something -- again, I didn't do any heavy duty thinking of it

23   because, had you not requested this status conference, and had

24   we had on calendar the hearing on the 15th of June on the

25   merits, I would have been much more prepared.  Maybe not this

PG&E Corporation, et al.

1   morning, but by the 15th, and I would have heard from the other
2   side.

3           But that's why you surprised me when you said, well,
4   this could be teed up solely on the ipso facto. And then you
5   surprised me further then saying and we could brief it some
6   more. And I'm going wait a minute; you don't need to brief it
7   anymore. You've already briefed it.

8           And so having said that I don't want to make the
9   mistake of having almost an abstract hypothetical for decision
10  purposes; I also don't want to put either side or both sides to
11  the expense of a very long effort to file a motion that's
12  doomed to fail because it does require a factual determination,
13  like, as you say, the summary judgment. I mean, I love -- I
14  love cross-summary judgment motions, but only if there are no
15  facts in dispute, material facts in dispute.

16          Well, I'm kind of at your disposition of what you
17  prefer. Do you want to -- do you two want to give it a little
18  more thought and think about whether you could agree on perhaps
19  the framework for some facts that are clearly not disputed?

20          Mr. McDonald, does that make sense, or do you want
21  to -- do you want to stick with the very narrow issue
22  regardless of -- and again, if you win it, you've got to go to
23  round 2. If you told me you know you're going to lose it, then
24  I'd say fine, let's brief it. But I don't know that you're
25  going to lose it. I have no idea.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    MR. MCDONALD:  Let me think about it further, Your

2   Honor.  I think if we went down the route that Mr. Tsekerides

3   was advocating, we'd have to put in declarations in support of

4   our pleadings.  And we'd have to raise those issues, so I think

5   that that gets -- I think as Your Honor's said, that's a bit

6   far afield.  It gets very expensive, and I think it would take

7   a lot more effort than simply briefing the insular legal issue.

8    THE COURT:  Well, I assume -- there's no question, if

9   Mr. Tsekerides has a silver bullet whether it's ipso facto or

10   you filed it a day too late, he is entitled to make that

11   argument.  And I (audio interference).  And I'm not -- I'm not

12   a judge who says I like to have at least twenty issues to

13   decide if there's one issue that's case dispositive.

14    And so if he says I can win this on my ipso facto

15   clause argument, then I should let him do it, and I should tell

16   you there's your challenge and trust the two of you to know

17   that's the best thing to do.  And I'm really not opposed to

18   doing it.  This conversation has made me understand much more

19   thoroughly what I didn't understand.

20    Again, as I say, I fully thought what you'd be telling

21   me on your side, Mr. McDonald, was when you were going to file

22   your responsive brief and Mr. Tsekerides was going to tell me

23   when he'd file his reply, and I'd say okay, when we are going

24   to have the argument.  But I'm up to -- I'm in your -- at your

25   disposal once again.

PG&E Corporation, et al.

1      MR. TSEKERIDES:  I mean, I think -- if I may.  I
2   apologize for interrupting.  I think the cleanest thing -- I
3   mean, even though I -- you know how much I enjoy having the
4   dialogue with you, Your Honor, I think the cleanest thing might
5   be where we came in on.  And again, I think you're a bit at a
6   disadvantage.  We did, as I said, go through some sessions, so
7   I think if it's okay with you, if we stick to the way we were
8   thinking about it coming in --

9      THE COURT:  Okay.

10      MR. TSEKERIDES:  Because we don't know what's going to
11   happen coming out of that.  And there -- but I do take Mr.
12   McDonald's point that if we did something like I was saying of
13   the 56(f), it's going to create a lot more work than both of us
14   were contemplating, because we thought this was an efficient
15   way to try to deal with a narrow issue.  So if it's okay with
16   the Court, and I guess also with Mr. McDonald, if we stick to
17   what we were thinking about coming in, that might be the best
18   approach for everybody.

19      THE COURT:  Okay.  Mr. McDonald, pardon me for being
20   creative.  I'll be (audio interference) creative and take your
21   proposal.

22      A couple of things.  Mr. Tsekerides, you know from
23   prior PG&E matters there are some times when I get a lot of
24   paper.  And I probably need to get all the backup papers in
25   hard copy unredacted.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    Mr. McDonald, if we're going to keep narrow on this

2  ipso facto, I take it all you need to do is file a responsive

3  legal argument.  You don't have to put in more documents, do

4  you?  Or do you?

5    MR. MCDONALD:  I don't think so, Your Honor.  I think

6  since it's a --  it's a question of law and of fact --

7    THE COURT:  Yeah.

8    MR. MCDONALD:  -- what (indiscernible) has already --

9    THE COURT:  I mean, this --

10    MR. MCDONALD:  -- submitted, it should be sufficient.

11    THE COURT:  This is --

12    MR. TSEKERIDES:  Yeah, well, hold on.  Hold on one

13  second.  No, we don't -- we actually discussed why what we

14  submitted is not sufficient, because we didn't fully brief the

15  ipso facto because we weren't briefing that as an issue.

16    MR. MCDONALD:  No, no, Mr. Tsekerides, I was not -- I

17  was not implying --

18    MR. TSEKERIDES:  Okay.

19    MR. MCDONALD:  -- what --

20    MR. TSEKERIDES:  All right.

21    MR. MCDONALD:  No, I was saying by way of documents,

22  documents in evidence.

23    MR. TSEKERIDES:  Oh, yeah, yeah, yeah.

24    MR. MCDONALD:  What you have submitted in connection

25  with it be sufficient.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1          MR. TSEKERIDES:  Yeah, that's true.

2          MR. MCDONALD:  I was not -- I was not saying that you

3    sufficiently briefed the issue.

4          MR. TSEKERIDES:  Okay.  Okay.

5          THE COURT:  So --

6          MR. MCDONALD:  Sorry, if I (indiscernible)

7    misunderstood.

8          MR. TSEKERIDES:  Okay.

9          THE COURT:  So let's assume -- let's move on.  I take

10   both of your requests and word that you would both like to

11   proceed as you proposed at the outset, and anything I said is

12   off the table.  The question then is -- Mr. Tsekerides, if

13   you -- you're essentially telling me you're going to re-brief

14   or more fully brief the ipso facto argument.

15         And to the extent that there are backup documents, I

16   just need to get hard copies of them.  I can't -- I can't do a

17   300-page document on my little home laptop, so as you know --

18   Mr. McDonald may not know -- in many other instances during the

19   PG&E case, your firm or your local counsel have -- they know

20   where to send complete copies to me so I can get them at home.

21   And I'd want to continue to do that.

22         But on the other hand, Mr. McDonald, I don't need to

23   ask you to send me a hard copy of a twenty-five page brief that

24   I can read on the screen or print, which is -- which is what

25   I've done today.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1      So let's not worry about that.  If you two gentlemen

2  have agreed on a timing for the briefs, let's put them on

3  the -- let's get out there and do it.

4      And you mentioned earlier, Mr. Tsekerides, this might

5  be argued in August so --

6      MR. TSEKERIDES:  Right.  Subject to your -- yeah, so

7  we were --

8      THE COURT:  My schedule's pretty open these days.

9      MR. TSEKERIDES:  Okay.  So we were going to have the

10  reorganized debtors -- we're calling it an objection, filed on

11  June 18; the response from ConEd on July 16th; the reply from

12  the reorganized debtors on July 30th.  And then either the week

13  of August 2nd or August 9th for the hearing is what we were

14  contemplating, based on your schedule.

15      THE COURT:  So basically when we come to that hearing,

16  it'll just be oral argument on the brief -- on what's been

17  briefed, unless I do one of my famous docket (audio

18  interference) disposed of it ahead of time.  Right?

19      MR. TSEKERIDES:  That is correct.

20      THE COURT:  So what happens to this -- what happens to

21  this twenty-nine page magnum opus that I read yesterday, and

22  all the backups that I might have to look at?  I just -- I

23  don't have to even (audio interference)?

24      MR. TSEKERIDES:  Well, for now, you don't have to

25  think about it.  Some of those materials -- and we'll go back

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1   over, because I think the documents that we're claiming have

2   the ipso facto clause in them we'll obviously have to put back

3   in front of you.  You probably have it, but as you said, you

4   probably don't have it in hard copies, so we'll make those

5   arrangements.

6           THE COURT:  Yeah, but do it (audio interference).

7   Again, I don't -- I tell you I prepare, but I don't prepare

8   weeks in advance, particularly in a lot of things.  So I think

9   I'd rather wait until you file your brief on the 18th of June.

10  And then Mr. McDonald files his.  And then I take a look at

11  those and anticipate if Mr. McDonald has second thoughts and

12  wants to include something.

13          Again, it's made a little more difficult because of

14  the redaction.  And when things get redacted, we have to

15  respect your desire to redact them, but I still have to get

16  them.  So I physically get them, and I get them in the

17  unredacted form, which is helpful.  And so yesterday when I

18  read -- when I read the brief that you wrote, I could see what

19  was redacted and what wasn't, and that was very useful.

20          And obviously, it probably won't come to pass, but if

21  we ever -- we do have oral argument, I got to make sure we

22  don't blow the confidentiality by making reference to those.

23  It sounds like that isn't the case on a pure legal argument.

24  So --

25          MR. MCDONALD:  Your Honor, if I could just address

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1  that briefly, Your Honor.  The documents at issue are very

2  voluminous, and they contain sensitive commercial information

3  for both ConEd and PG&E.

4       THE COURT:  Yeah, I'm aware of that.

5       MR. MCDONALD:  Yeah.  So what I think might be the

6  easiest way for us to proceed is when Mr. Tsekerides puts in

7  his brief, it's just to have the relevant excerpts of the PPAs

8  included as the exhibit, without the entire documents at issue,

9  that Your Honor may see at least the relevant provisions that

10 he is arguing with respect -- arguing about with respect to

11 ispo facto.  Therefore, I don't have to put in anything to

12 supplement that.  And you will have just a snapshot of what

13 we're -- the provisions that are at issue for that legal

14 argument.

15      THE COURT:  Well, but I don't mind.  Listen, I'm

16 not -- there are more exciting things to do in life than read

17 power purchase agreements, but I don't mind looking at the

18 document to see it in context.  The funny thing for me

19 personally that neither of you were involved in PG&E 1, but in

20 PG&E 1, I got to be very familiar with a lot of PPAs early in

21 the case.  But in PG&E 2, I think this is the first time we've

22 ever had even to think about it.

23      So I mean, you know, Mr. Tsekerides, when you and I

24 first met, I thought you were going to have all sorts of

25 executory contract motions for me like we had in PG&E 1, which

PG&E Corporation, et al.

1   was probably the heaviest duty burden in the first part of that

2   first case, but not in this case.  So for both of you --

3   (indiscernible) --

4           MR. TSEKERIDES:  Why don't we -- why don't we see how

5   that -- yeah.  Let's see how that goes.

6           THE COURT:  Yeah.  Don't worry about copies of

7   anything.  If I want -- let me rephrase.  Mr. Tsekerides, you

8   have already put in the record -- partly redacted, partly not -

9   - much of your supporting -- some of your supporting documents.

10  You should preserve the redaction that you and ConEd think are

11  important.  And don't worry about me.

12          And when I see your brief, and maybe again when Mr.

13  McDonald files his, maybe I'll want to see something more,

14  maybe not.  Again, you're both experienced brief writers.  But

15  sometimes when a brief includes one sentence, I've found it a

16  little more helpful to go read the next sentence or the next

17  sentence in the backup.

18          Ms. Parada, do we have PG&E calendars for our --

19  because I want to set this separately but on a PG&E day

20  perhaps, for the first two weeks of August?

21          THE CLERK:  August 10th is a regular -- is a day

22  reserved for PG&E at 10 o'clock.

23          THE COURT:  So that would be 10 o'clock.  So if I put

24  these folks on, say, at 11 o'clock and set aside an hour, that

25  would work.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1      Does that date work for both of you?

2      MR. TSEKERIDES:  It does for me.

3      MR. MCDONALD:  Yes, Your Honor.

4      MR. TSEKERIDES:  Okay.

5      MR. MCDONALD:  Works for me as well, your Honor.

6      THE COURT:  I'm sorry?  Mr. McDonald, yes?

7      MR. MCDONALD:  Yes.  Yes.

8      THE COURT:  Okay.  And Mr. Tsekerides?

9      MR. TSEKERIDES:  It does.  Thank you.

10      THE COURT:  Okay, so Ms. Parada, we're going to take

11   off calendar the ConEd claim -- cure claim motion for June 15.

12   We will --

13      Mr. Tsekerides, why don't you -- why don't you just

14   file a stipulation with Mr. McDonald that just recites these

15   dates?  We can put them in the minutes, but I'd rather have it

16   on a document that the debtors and ConEd simply agree to the

17   following briefing schedule for the hearing on the portion of

18   the objection to the cure amount.  Just a one-liner.

19      MR. TSEKERIDES:  Yeah, will do.

20      THE COURT:  So the public document reflects it because

21   sometimes with the omnibus objections that are coming up on the

22   PG&E documents, they're up there, they're in the multiples,

23   tens and twenties and thirties.  And this is a much more

24   discrete -- obviously at the moment, a twelve-million-dollar

25   question.  So --

PG&E Corporation, et al.

1    MR. TSEKERIDES: Right. Okay, will do. We'll take

2  care of that.

3    THE COURT: Okay. We done?

4    MR. TSEKERIDES: Yeah.

5    MR. MCDONALD: And just one more thing. Mr.

6  Tsekerides, I know we've engaged in informal discovery,

7  provided a lot of documents to you. If you feel you need any

8  further copies of any of the PPAs or any of the other

9  documents, please let us know. And we'll try to get them to

10  you as soon as possible.

11    MR. TSEKERIDES: Okay. Yeah, appreciate it. Thank

12  you.

13    I think that's it, Your Honor.

14    MR. MCDONALD: Your Honor -- Your Honor, it was great

15  to see you again. Thank you for your time.

16    THE COURT: Okay. Thank you. Good to see you all.

17  Thank you all. I will conclude the hearing.

18    Thank you, Ms. Parada and Ms. Thomas, and both counsel

19  sign off. Have a nice day -- good weekend.

20    MR. TSEKERIDES: Thank you. All right.

21    MR. MCDONALD: You too.

22    (Whereupon these proceedings were concluded at 10:43 AM)

23

24

25

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1          C E R T I F I C A T I O N

2

3    I, Tamara Bentzur, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6    *[signature: Tamara Bentzur]*

7

8    _____

9    /s/ TAMARA BENTZUR, CET-824

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  May 27, 2021

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E CORPORATION AND PACIFIC
GAS AND ELECTRIC COMPANY, ET AL.

May 26, 2021

## A

**ability (2)**
13:9;15:9
**absolutely (1)**
5:18
**abstract (1)**
19:9
**acknowledge (1)**
14:9
**actual (1)**
10:10
**actually (1)**
22:13
**additional (1)**
7:3
**address (3)**
9:18,23;25:25
**advance (1)**
25:8
**advisory (1)**
16:24
**advocating (1)**
20:3
**afield (1)**
15:12;20:6
**again (19)**
3:11,14;5:2;8:7;
11:1;14:21;15:23;
16:13;18:19,22;19:22;
20:20,25;21:5;25:7,13;
27:12,14;29:15
**against (2)**
5:2;18:6
**ago (1)**
6:7
**agree (9)**
5:4,8;7:10,12,15;
11:22;14:10;19:18;
28:16
**agreed (3)**
4:13;5:9;24:2
**agreeing (1)**
14:20
**agreement (4)**
14:13,17;15:7;16:7
**agreements (3)**
14:6;15:6;26:17
**ahead (6)**
4:16;7:24;10:7;11:9;
13:4;24:18
**almost (1)**
19:9
**alone (1)**
15:20
**although (1)**
9:9
**amount (1)**
28:18
**anticipate (1)**
25:11
**anymore (1)**
19:7
**apologize (1)**
21:2
**appeal (6)**
4:14;7:13,14,17,19;
8:18
**Appellate (2)**
16:25;17:1
**applicability (1)**
6:3
**applicable (1)**
6:20
**apply (1)**
15:25
**appreciate (2)**
10:3;29:11
**approach (1)**
21:18
**appropriate (1)**
8:5
**approve (1)**
16:18
**approved (2)**
15:6,10
**argued (1)**
24:5
**arguing (2)**
26:10,10
**argument (16)**
4:10,20;5:23;9:5,11;
11:1,24;20:11,15,24;
22:3;23:14;24:16;
25:21,23;26:14
**arguments (2)**
5:6;11:2
**arrangements (1)**
25:5
**aside (1)**
27:24
**assume (3)**
8:13;20:8;23:9
**assuming (1)**
10:15
**assumption (1)**
10:15
**assumptions (1)**
15:19
**attorneys' (1)**
5:25
**audio (7)**
11:25;12:2;20:11;
21:20;24:17,23;25:6
**August (6)**
5:12;24:5,13,13;
27:20,21
**avoid (2)**
5:7;16:12
**aware (6)**
10:15;12:16;13:6,21;
15:8;26:4
**away (2)**
8:11,17

## B

**back (7)**
5:13;12:25;13:2,18;
16:13;24:25;25:2
**backup (3)**
21:24;23:15;27:17
**backups (1)**
24:22
**bad (1)**
15:24
**Bankruptcy (1)**
16:25
**barking (1)**
10:2
**based (3)**
7:17;12:2;24:14
**basically (1)**
24:15
**become (1)**
4:17
**beginning (1)**
15:15
**believes (1)**
8:10
**Besides (1)**
7:18
**best (3)**
7:4;20:17;21:17
**beyond (1)**
6:10
**bit (3)**
9:9;20:5;21:5
**blended (1)**
6:12
**blending (1)**
10:22
**blow (1)**
25:22
**Board (1)**
16:18
**body (1)**
16:16
**bonding (4)**
12:16,18;13:7,10
**borrower (1)**
14:20
**both (15)**
4:17;5:3;8:8;2;
13:13;16:21;19:10;
21:13;23:10,10;26:3;
27:2,14;28:1;29:18
**bounced (1)**
16:12
**breach (3)**
10:17;12:19;13:9
**breaching (1)**
5:25
**brief (20)**
4:20,21;5:22;12:11;
17:23;18:18;19:5,6,24;
20:22;22:14;23:14,23;

24:16;25:9,18;26:7;
27:12,14,15
**briefed (4)**
8:13;19:7;23:3;
24:17
**briefing (6)**
7:3;10:13;18:13;
20:7;22:15;28:17
**briefly (1)**
26:1
**briefs (1)**
24:2
**bring (1)**
3:6
**broaden (1)**
16:22
**building (1)**
16:1
**bullet (1)**
20:9
**burden (1)**
27:1

## C

**calendar (2)**
18:24;28:11
**calendars (1)**
27:18
**CALIFORNIA (5)**
3:1;9:4;14:2,2;18:21
**Call (3)**
3:3;13:13;14:1
**Calling (2)**
3:5;24:10
**came (2)**
18:15;21:5
**can (16)**
6:4;7:13;8:23;9:5,12,
15,20;11:13;12:4,7;
16:21;18:13;20:14;
23:20,24;28:15
**care (2)**
12:3;29:2
**case (11)**
6:20;11:25;12:9,13;
15:15;20:13;23:19;
25:23;26:21;27:2,2
**cases (5)**
12:15,24;13:1,5;
18:21
**categories (1)**
5:24
**cause (1)**
11:18
**certain (1)**
5:2
**certainly (2)**
8:10;18:8
**certainty (1)**
16:11
**challenge (1)**
20:16

**changed (1)**
3:25
**changing (1)**
4:1
**Circuit (3)**
6:20;12:18;18:12
**cites (1)**
12:10
**claim (3)**
7:8;28:11,11
**claiming (1)**
25:1
**clause (5)**
4:10,19;16:24;18:20;
20:15;25:2
**cleanest (2)**
21:2,4
**clear (1)**
16:9
**clearly (2)**
9:14;19:19
**CLERK (2)**
3:4;27:21
**clients (1)**
7:3
**coming (6)**
5:5;13:12;21:8,11,
17;28:21
**commercial (1)**
26:2
**commission (1)**
15:6
**commitment (1)**
11:17
**company (1)**
14:22
**complete (1)**
23:20
**completely (1)**
7:21
**concerned (3)**
10:11;16:22,23
**conclude (1)**
29:17
**concluded (1)**
29:22
**conclusion (1)**
18:14
**ConEd (12)**
4:13,22;5:2;8:16;
9:12;13:19;17:24;
24:11;26:3;27:10;
28:11,16
**ConEd's (2)**
11:1,2
**conference (2)**
4:5;18:23
**conferred (1)**
4:8
**confidence (1)**
5:25
**confidentiality (1)**
25:22

Min-U-Script®

Case: 19-30088    Doc# 10719    Filed: 05/27/21    Entered: 05/27/21 10:26:18    Page 31
of 37

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(1) ability - confidentiality

PG&E CORPORATION AND PACIFIC
GAS AND ELECTRIC COMPANY, ET AL.

May 26, 2021

**connection (1)**
22:24
**consent (1)**
14:8
**consequence (2)**
8:8;11:16
**consequential (2)**
6:18;12:5
**Consolidated (1)**
3:21
**construction (1)**
14:5
**contain (1)**
26:2
**contemplating (2)**
21:14;24:14
**context (4)**
5:6;9:17;17:1;26:18
**contextually (1)**
13:18
**continue (1)**
14:12;23:21
**contract (5)**
6:15;10:12;11:15;
12:15;26:25
**contractor (2)**
12:17;13:8
**contractual (4)**
13:13;14:15;15:5,13
**conversation (1)**
20:18
**convinced (2)**
9:18,19
**copies (5)**
23:16,20;25:4;27:6;
29:8
**copy (2)**
21:25;23:23
**corners (1)**
12:8
**Corporation (1)**
3:6
**cost (1)**
6:1
**counsel (4)**
3:6;4:11;23:19;
29:18
**counterparties (1)**
14:10
**couple (2)**
5:11;21:22
**Court (69)**
3:3,4,8,12,14,16,23;
4:2;5:9,12,13,17,19;
6:6;7:9,12,16,23,25;
9:3,23,25;10:6,20,25;
11:8,11;12:12,21,23,
25;13:2,4,21;14:14,17,
20;15:1,16,21,23;16:8;
17:6,21;18:17,21;20:8;
21:9,16,19;22:7,9,11;
23:5,9;24:8,15,20;
25:6;26:4,15;27:6,23;

28:6,8,10,20;29:3,16
**courts (1)**
17:1
**cover (1)**
14:3
**create (1)**
21:13
**creative (2)**
21:20,20
**cross-briefing (1)**
6:8
**cross-summary (1)**
19:14
**cure (3)**
4:9;28:11,18

**D**

**damages (13)**
6:14,16;9:1,2;10:11,
16,17,18;11:18;12:5,
19;13:11,11
**date (1)**
28:1
**dates (1)**
28:15
**day (4)**
20:10;27:19,21;
29:19
**days (2)**
16:25;24:8
**deal (2)**
16:14;21:15
**debate (1)**
5:4
**debtor (4)**
6:17,24;7:10,13
**debtors (4)**
3:19;24:10,12;28:16
**debtors' (1)**
8:25
**decide (3)**
9:17;18:4;20:13
**decided (1)**
4:6
**deciding (1)**
17:3
**decision (3)**
7:17;16:17;19:9
**decisions (1)**
7:16
**declarations (1)**
20:3
**default (6)**
6:1;8:7,7,9;14:11;
16:12
**defaults (1)**
14:21
**definitely (1)**
8:25
**demand (1)**
4:9
**Dennis (1)**

3:5
**depends (1)**
11:21
**deposed (2)**
14:23;16:14
**describe (1)**
5:20
**desire (1)**
25:15
**determination (4)**
6:23;7:6;15:20;
19:12
**determined (2)**
11:13;12:7
**develop (1)**
8:17
**developed (1)**
15:14
**Development (1)**
3:22
**dialogue (1)**
21:4
**different (3)**
4:14;5:6;16:19
**difficult (1)**
25:13
**direct (5)**
6:16;9:2;12:20;
13:11;17:16
**direction (1)**
5:2
**disadvantage (1)**
21:6
**disclose (1)**
17:25
**discovery (9)**
4:17;5:4;6:22;7:4;
17:14,20;18:7,8;29:6
**discrete (1)**
4:12;28:24
**discussed (2)**
7:22;22:13
**discussing (1)**
4:11
**disposal (1)**
20:25
**disposed (1)**
24:18
**disposition (1)**
19:16
**dispositive (1)**
20:13
**dispute (3)**
8:20;19:15,15
**disputed (1)**
19:19
**disputes (2)**
9:7,19
**disturbance (1)**
16:7
**docket (1)**
24:17
**document (9)**

5:21;14:22;15:2;
16:9,9;23:17;26:18;
28:16,20
**documents (17)**
6:3;11:14,19,23;
12:8;14:11;22:3,21,22;
23:15;25:1;26:1,8;
27:9;28:22;29:7,9
**dog (1)**
10:2
**dogs (2)**
10:4,7
**done (3)**
7:13;23:25;29:3
**doomed (1)**
19:12
**down (2)**
10:13;20:2
**during (2)**
4:1;23:18
**duty (2)**
18:22;27:1

**E**

**earlier (1)**
24:4
**early (1)**
26:20
**easiest (1)**
26:6
**Edison (1)**
3:22
**efficiency (1)**
8:15
**efficiency's (1)**
7:2
**efficient (2)**
8:5;21:14
**effort (2)**
19:11;20:7
**either (3)**
8:7;19:10;24:12
**element (1)**
6:19
**else's (1)**
11:21
**enabled (1)**
14:5
**energy (1)**
13:19
**engaged (1)**
29:6
**enjoy (1)**
21:3
**enjoyment (2)**
14:17;16:4
**entered (1)**
14:6
**entering (1)**
6:15
**entire (1)**
26:8

**entitled (2)**
8:16;20:10
**entity (1)**
13:10
**essentially (2)**
9:12;23:13
**even (7)**
9:8;11:3;16:2;17:3;
21:3;24:23;26:22
**event (2)**
14:11;15:17
**everybody (1)**
21:18
**evicted (1)**
16:2
**evidence (1)**
22:22
**example (5)**
8:6;11:14;12:1;
16:13;17:21
**excerpts (1)**
26:7
**exciting (1)**
26:16
**executory (1)**
26:25
**exhibit (1)**
26:8
**existence (1)**
15:8
**expect (1)**
7:17
**expected (1)**
6:6
**expending (1)**
7:3
**expense (1)**
19:11
**expensive (1)**
20:6
**experience (1)**
16:25
**experienced (1)**
27:14
**expert (7)**
4:17;5:3;6:22;11:24;
12:1,4;18:9
**explain (3)**
9:15;18:2,3
**explanation (1)**
18:21
**extent (1)**
23:15
**external (1)**
11:13
**extra-contractual (2)**
13:14;15:13

**F**

**face (1)**
16:9
**fact (22)**

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(2) connection - fact

Case: 19-30088   Doc# 10719   Filed: 05/27/21   Entered: 05/27/21 10:26:18   Page 32
of 37

PG&E CORPORATION AND PACIFIC
GAS AND ELECTRIC COMPANY, ET AL.

May 26, 2021

4:17;5:3;6:2,13,13,
  21,25;8:20;10:10,24;
  11:12,13,18,19,20,24;
  12:6,7;13:6;15:2,22;
  22:6
**facto (19)**
  4:10,19;5:23;6:11;
  8:14,24;9:10,14;16:23;
  18:6,19;19:4;20:9,14;
  22:2,15;23:14;25:2;
  26:11
**facts (6)**
  9:15;11:13;12:2;
  19:15,15,19
**factual (6)**
  9:7,18;10:19;15:13,
  19;19:12
**fail (1)**
  19:12
**fair (1)**
  8:21
**fairly (1)**
  5:10
**faithful (1)**
  9:22
**familiar (1)**
  26:20
**famous (1)**
  24:17
**fan (1)**
  17:11
**far (3)**
  10:11;15:12;20:6
**favor (1)**
  4:15
**feel (1)**
  29:7
**fees (1)**
  6:1
**felt (1)**
  4:11
**figure (1)**
  16:21
**file (7)**
  17:23;19:11;20:21,
  23;22:2;25:9;28:14
**filed (3)**
  11:3;20:10;24:10
**files (2)**
  25:10;27:13
**finance (1)**
  14:9
**financed (1)**
  13:22
**finances (2)**
  13:15,16
**financing (3)**
  13:15,25,25
**financings (8)**
  10:16;13:23;14:1,4,
  5,10;15:9,9
**fine (3)**
  10:1;16:3;19:24

**finish (1)**
  13:4
**firm (1)**
  23:19
**firms (2)**
  3:25;4:1
**first (7)**
  15:10;17:3;26:21,24;
  27:1,2,20
**five (1)**
  6:6
**flagged (2)**
  18:19,20
**flipside (1)**
  16:4
**folks (1)**
  27:24
**following (2)**
  13:5;28:17
**foreclosed (1)**
  16:2
**foreseeability (2)**
  9:6;11:21
**foreseeable (6)**
  6:14,16;8:9;10:12;
  12:22;13:8
**forgive (1)**
  17:8
**form (1)**
  25:17
**former (1)**
  15:2
**forward (2)**
  4:14;17:17
**found (2)**
  11:14;27:15
**four (1)**
  12:8
**frame (1)**
  18:13
**framework (1)**
  19:19
**FRANCISCO (2)**
  3:1;16:18
**front (4)**
  7:5;10:22;12:10;
  25:3
**fully (4)**
  6:6;20:20;22:14;
  23:14
**fulsome (1)**
  4:21
**funds (1)**
  7:3
**funny (1)**
  26:18
**further (4)**
  13:10;19:5;20:1;
  29:8

**G**

**gathered (1)**

  4:9
**geared (1)**
  14:6
**general (1)**
  13:15
**gentlemen (2)**
  4:4;24:1
**gets (2)**
  20:5,6
**glad (1)**
  18:17
**goes (3)**
  12:25;13:2;27:5
**good (8)**
  3:8,10,11,16,20;
  17:21;29:16,19
**Gotshal (1)**
  3:19
**grant (1)**
  17:19
**granting (1)**
  8:19
**great (2)**
  4:5;29:14
**guess (3)**
  8:3;12:5;21:16
**guy (1)**
  16:14
**guys (1)**
  16:4

**H**

**habit (1)**
  15:24
**hand (3)**
  11:20;16:16;23:22
**happen (1)**
  21:11
**happens (2)**
  24:20,20
**hard (4)**
  21:25;23:16,23;25:4
**hate (2)**
  8:12,12
**hear (2)**
  6:7;10:7
**heard (2)**
  5:11;19:1
**hearing (7)**
  4:24;5:15;18:24;
  24:13,15;28:17;29:17
**heaviest (1)**
  27:1
**heavy (1)**
  18:22
**held (2)**
  12:18;13:6
**help (2)**
  12:6;18:12
**helpful (3)**
  13:17;25:17;27:16
**Here's (1)**

  16:22
**Hold (3)**
  11:8;22:12,12
**Holdings (2)**
  14:2,2
**home (2)**
  23:17,20
**Honor (29)**
  3:10,20,24;4:8,12;
  6:12,20;7:21,22;8:22;
  10:8;11:7,10;12:9;
  13:17;15:4,20;17:4;
  20:2;21:4;22:5;25:25;
  26:1,9;28:3,5;29:13,14,
  14
**Honorable (1)**
  3:4
**Honor's (2)**
  13:12;20:5
**hook (1)**
  12:4
**hour (1)**
  27:24
**Hugh (1)**
  3:20
**hybrid (1)**
  18:15
**hypothetical (5)**
  11:15;15:23,24,25;
  19:9
**hypotheticals (2)**
  17:11;18:17

**I**

**idea (1)**
  19:25
**identify (4)**
  17:17,18,22,22
**imagine (1)**
  18:6
**impact (1)**
  13:9
**implying (1)**
  22:17
**important (1)**
  27:11
**include (2)**
  9:10;25:12
**included (1)**
  26:8
**includes (1)**
  27:15
**indicated (1)**
  5:3
**indiscernible (5)**
  7:15;10:5;22:8;23:6;
  27:3
**individual (1)**
  14:4
**industry (1)**
  18:10
**inferred (1)**

  12:14
**informal (1)**
  29:6
**information (1)**
  26:2
**initial (1)**
  7:1
**instance (2)**
  12:17;15:10
**instances (1)**
  23:18
**insular (1)**
  20:7
**integral (1)**
  15:9
**interest (4)**
  6:1;8:7,8,9
**interesting (1)**
  5:20
**interference (7)**
  11:25;12:3;20:11;
  21:20;24:18,23;25:6
**interrupting (1)**
  21:2
**into (5)**
  6:15;10:19;14:7;
  16:1,20
**involved (2)**
  16:17;26:19
**ipso (17)**
  4:10,19;5:23;6:11;
  8:14;9:10,14;16:23;
  18:6,19;19:4;20:9,14;
  22:2,15;23:14;25:2
**ispo (2)**
  8:24;26:11
**issue (21)**
  4:10;5:8;7:5;8:25;
  10:19;12:16,19;13:7,8,
  24;17:14;18:13;19:21;
  20:7,13;21:15;22:15;
  23:3;26:1,8,13
**issues (10)**
  6:9;7:4;9:24;10:10;
  15:5,13,14;18:20;20:4,
  12

**J**

**Judge (3)**
  3:18;17:18;20:12
**judgment (4)**
  17:13,19;19:13,14
**July (2)**
  24:11,12
**June (5)**
  5:14;18:24;24:11;
  25:9;28:11

**K**

**keep (1)**
  22:1

Case: 19-30088    Doc# 10719    Filed: 05/27/21    Entered: 05/27/21 10:26:18    Page 33
of 37

PG&E CORPORATION AND PACIFIC
GAS AND ELECTRIC COMPANY, ET AL.

May 26, 2021

**keeping (1)**
9:8
**keeps (1)**
9:21
**kind (1)**
19:16
**knew (3)**
16:10,15;18:11
**knowledge (3)**
12:14,18;13:14
**known (1)**
12:15

**L**

**laid (1)**
17:23
**landlord (4)**
16:1,3,10,12
**laptop (1)**
23:17
**last (1)**
3:25
**late (1)**
20:10
**later (1)**
16:15
**latter (1)**
15:1
**law (14)**
6:13,19,20,25;7:2;
9:4,20;10:14,18;12:9,
13;15:18,22;22:6
**lease (1)**
14:18
**least (3)**
18:12;20:12;26:9
**left (1)**
7:14
**legal (25)**
4:10,12;5:8;6:2,8,10;
8:5,8,15,19,25;9:11,14,
15,24;11:25;12:1,4;
17:2,13,18;20:7;22:3;
25:23;26:13
**lend (1)**
9:7
**lender (3)**
16:3,3,10
**life (1)**
26:16
**list (1)**
7:18
**Listen (1)**
26:15
**little (1)**
9:9;19:17;23:17;
25:13;27:16
**loan (1)**
14:21
**local (1)**
23:19
**long (1)**

19:11
**look (7)**
9:1;15:18;16:8,20;
18:9;24:22;25:10
**looked (2)**
8:24;12:13
**looking (1)**
26:17
**looks (1)**
18:10
**lose (2)**
19:23,25
**lot (9)**
4:16;12:13;15:11;
20:7;21:13,23;25:8;
26:20;29:7
**lots (2)**
4:5;14:15
**loud (1)**
18:5
**love (2)**
19:13,14

**M**

**magnum (1)**
24:21
**makes (1)**
18:15
**making (2)**
15:19;25:22
**malpractice (2)**
11:25;12:1
**many (1)**
23:18
**markets (1)**
18:9
**material (1)**
19:15
**materials (1)**
24:25
**matter (4)**
3:5;8:12;9:20;10:17
**matters (1)**
21:23
**MAY (7)**
3:1;8:9;18:5,12;
21:1;23:18;26:9
**Maybe (11)**
6:4;8:22;9:8;12:3;
16:17;18:14,15,25;
27:12,13,14
**McDonald (70)**
3:16,20,21,24;5:13;
6:4,7,10,12;7:11,14,18,
21;8:10;9:6,11,15,25;
10:4,8,21;11:7,9,12;
12:9,13,22,24;13:1,3,5,
22;14:16,19,25;15:4,
17,22;16:6;17:8;19:20;
20:1,21;21:16,19;22:1,
5,8,10,16,19,21,24;
23:2,6,18,22;25:10,11,

25;26:5;27:13;28:3,5,
6,7,14;29:5,14,21
**McDonald's (1)**
21:12
**mean (15)**
6:2,6;7:12,19;8:23;
9:21;11:2,5,25;17:4;
19:13;21:1,3;22:9;
26:23
**means (1)**
10:6
**meantime (1)**
17:12
**Meet (1)**
16:3
**mentioned (3)**
17:20;18:19;24:4
**merits (1)**
18:25
**messy (1)**
4:18
**met (1)**
26:24
**mic (1)**
10:1
**might (8)**
11:18,18;17:4;21:4,
17;24:4,22;26:5
**mind (3)**
6:8;26:15,17
**minute (2)**
5:14;19:6
**minutes (2)**
6:7;28:15
**mistake (1)**
19:9
**misunderstood (1)**
23:7
**mixed (1)**
9:5
**modifications (1)**
8:23
**moment (1)**
28:24
**Montali (1)**
3:5
**months (1)**
5:11
**more (19)**
4:21;6:4;8:23;15:11;
18:15,25;19:6,18;20:7,
18;21:13;22:3;23:14;
25:13;26:16;27:13,16;
28:23;29:5
**morning (5)**
3:8,10,16,20;19:1
**motion (4)**
5:15;8:19;19:11;
28:11
**motions (2)**
19:14;26:25
**move (2)**
17:13;23:9

**moves (1)**
16:1
**much (7)**
14:19;15:12;18:25;
20:18;21:3;27:9;28:23
**multiples (1)**
28:22

**N**

**name (2)**
3:14,17
**narrow (5)**
6:9;8:4;19:21;21:15;
22:1
**narrowly (1)**
8:13
**need (12)**
10:3;12:5;15:14;
17:14;18:8,9;19:6;
21:24;22:2;23:16,22;
29:7
**needed (1)**
16:11
**neither (2)**
7:2;26:19
**next (4)**
5:11;8:14;27:16,16
**Nice (1)**
3:9,24;29:19
**Ninth (2)**
6:20;12:17
**non- (1)**
16:6

**O**

**objection (5)**
6:13,25;7:1;24:10;
28:18
**objections (1)**
28:21
**obligation (1)**
17:16
**obtain (1)**
13:10
**obviously (8)**
7:12;8:17;12:10;
15:1;17:25;25:2,20;
28:24
**o'clock (3)**
27:22,23,24
**off (4)**
10:1;23:12;28:11;
29:19
**office (1)**
16:1
**officer (1)**
14:22
**omnibus (1)**
28:21
**once (1)**
20:25

**one (23)**
4:10;5:1,21;6:9;7:1,
2,5,6;9:8;12:15,16,17;
13:18,23;14:2;16:15;
17:4,9;20:13;22:12;
24:17;27:15;29:5
**one-liner (1)**
28:18
**ones (1)**
17:15
**only (4)**
5:22;8:13;17:17;
19:14
**oOo- (1)**
3:2
**open (1)**
24:8
**openers (1)**
5:14
**opening (1)**
5:22
**opine (1)**
12:4
**opinion (1)**
16:24
**opportunity (2)**
9:23;12:11
**opposed (1)**
20:17
**opposing (1)**
17:16
**option (1)**
9:21
**opus (1)**
24:21
**oral (2)**
24:16;25:21
**order (2)**
3:3;5:7
**originally (1)**
8:24
**otherwise (2)**
10:22;15:22
**out (9)**
6:24;13:13;16:12,22;
17:24;18:4,14,21:11;
24:3
**outset (1)**
23:11
**over (1)**
25:1
**owe (1)**
8:7
**own (1)**
16:25

**P**

**page (2)**
23:23;24:21
**pandemic (1)**
4:1
**Panel (1)**

Min-U-Script®

Case: 19-30088    Doc# 10719    Filed: 05/27/21    Entered: 05/27/21 10:26:18    Page 34
of 37

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(4) keeping - Panel

PG&E CORPORATION AND PACIFIC
GAS AND ELECTRIC COMPANY, ET AL.

May 26, 2021

17:1
**paper (1)**
21:24
**papers (3)**
4:9,21;21:24
**Parada (3)**
27:18;28:10;29:18
**pardon (1)**
21:19
**part (2)**
6:23;27:1
**particular (2)**
7:5;13:8
**particularly (2)**
7:9;25:8
**parties (4)**
12:14,16;13:6;14:9
**parties' (1)**
6:15
**partly (2)**
27:8,8
**party (1)**
7:7
**pass (1)**
25:20
**path (1)**
4:14
**Pause (1)**
3:7
**pay (1)**
11:16
**perhaps (2)**
19:18;27:20
**person (1)**
17:16
**personally (1)**
26:19
**PG&E (20)**
3:5;10:11,15;12:4;
13:13,20;14:6,8;15:5;
21:23;23:19;26:3,19,
20,21,25;27:18,19,22;
28:22
**PG&E's (1)**
8:13
**phonetic (3)**
13:23;14:2,3
**physically (1)**
25:16
**Pillsbury (3)**
3:21;4:1,3
**Pittman (1)**
3:21
**place (1)**
17:3
**plants (4)**
13:19,22,23;14:5
**pleading (1)**
9:13
**pleadings (1)**
20:4
**please (1)**
29:9

**pleasure (1)**
4:4
**pledge (1)**
14:8
**point (7)**
4:12,25;7:20;8:21;
9:6;17:18;21:12
**pointed (1)**
13:13
**points (4)**
9:11,14;13:14;18:1
**portion (1)**
28:17
**position (3)**
6:17;9:1;10:10
**possible (1)**
29:10
**potential (1)**
10:16
**potentially (1)**
9:24
**power (5)**
14:6,12,13;15:7;
26:17
**PPA (1)**
14:8
**PPAs (3)**
26:7,20;29:8
**prefer (1)**
19:17
**prepare (2)**
25:7,7
**prepared (1)**
18:25
**present (3)**
5:9,10;15:15
**presented (2)**
4:12;11:3
**preserve (1)**
27:10
**presiding (1)**
3:5
**pretty (2)**
15:12;24:8
**print (1)**
23:24
**prior (1)**
21:23
**probably (5)**
21:24;25:3,4,20;27:1
**proceed (4)**
7:5;10:13;23:11;
26:6
**proceedings (2)**
17:24;29:22
**proffer (1)**
6:23
**project (5)**
13:16,23,25;14:4,4
**projects (2)**
14:3;15:10
**properly (1)**
15:14

**property (1)**
14:18
**proposal (1)**
21:21
**proposed (2)**
4:24;23:11
**prove (3)**
14:21,22;16:14
**provided (1)**
29:7
**provides (1)**
9:23
**provisions (3)**
6:3;26:9,13
**public (2)**
15:5;28:20
**publicly (1)**
17:25
**PUC (3)**
15:8,10;16:17
**purchase (5)**
14:6,12,13;15:7;
26:17
**pure (4)**
16:23;17:2,13;25:23
**purely (3)**
5:8;7:1;9:24
**purpose (1)**
15:19
**purposes (1)**
19:10
**pursuant (1)**
14:12
**put (15)**
4:20,21,22;5:7;9:12;
13:18;19:10;20:3;22:3;
24:2;25:2;26:11;27:8,
23;28:15
**puts (1)**
26:6
**putting (1)**
10:22

**Q**

**quick (1)**
4:8
**quiet (2)**
14:17;16:4

**R**

**raise (1)**
20:4
**raises (1)**
6:13
**rather (2)**
25:9;28:15
**reached (1)**
6:24
**read (11)**
5:21,21,22;11:2;
18:18;23:24;24:21;

25:18,18;26:16;27:16
**reading (2)**
4:5;18:13
**real (1)**
14:17
**really (4)**
10:9;12:6;17:12;
20:17
**reason (1)**
8:10
**reassess (3)**
4:13,15;7:7
**re-brief (1)**
23:13
**recites (2)**
11:15;28:14
**recognize (1)**
9:4
**recollection (1)**
11:22
**record (3)**
3:14;8:17;27:8
**recoverable (3)**
6:16;9:20;10:18;
12:19;13:11
**redact (1)**
25:15
**redacted (3)**
25:14,19;27:8
**redaction (2)**
25:14;27:10
**reference (2)**
11:1;25:22
**refi (1)**
13:24
**reflects (1)**
28:20
**regardless (1)**
19:22
**regular (1)**
27:21
**regulator (1)**
15:8
**regulatory (1)**
16:16
**reject (1)**
8:13
**relationships (1)**
14:15
**relevant (2)**
26:7,9
**renewable (1)**
13:19
**Rent (1)**
16:18
**reorganized (3)**
3:19;24:10,12
**rephrase (1)**
27:7
**reply (3)**
4:22;20:23;24:11
**requested (1)**
18:23

**requests (1)**
23:10
**require (1)**
19:12
**reserved (1)**
27:22
**resolution (1)**
6:23
**respect (5)**
7:21;13:7;25:15;
26:10,10
**respond (1)**
18:2
**responding (1)**
17:17
**response (3)**
4:22;9:13;24:11
**responsive (2)**
20:22;22:2
**result (2)**
7:18;10:17
**reversed (3)**
7:19;8:18,19
**rid (1)**
5:14
**right (14)**
3:8,12;7:11,18;8:2;
11:4;14:18;16:8;18:1;
22:20;24:6,18;29:1,20
**roughly (1)**
14:3
**round (1)**
19:23
**route (2)**
10:13;20:2
**rule (3)**
9:20;18:4,6
**ruled (2)**
4:15;5:2
**ruling (1)**
5:1

**S**

**sake (1)**
7:2
**same (2)**
9:9;14:19
**SAN (2)**
3:1;16:18
**Sanders (1)**
3:25
**saw (3)**
5:23,24;18:19
**saying (5)**
15:17;19:5;21:12;
22:21;23:2
**schedule (5)**
4:23;5:10;9:9;24:14;
28:17
**schedule's (1)**
24:8
**screen (1)**

Min-U-Script®

Case: 19-30088   Doc# 10719   Filed: 05/27/21   Entered: 05/27/21 10:26:18   Page 35
of 37

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(5) paper - screen

PG&E CORPORATION AND PACIFIC
GAS AND ELECTRIC COMPANY, ET AL.

May 26, 2021

23:24
**SDNA (1)**
16:6
**second (4)**
8:3;13:18;22:13;
25:11
**secondly (1)**
5:19
**seeking (1)**
9:2
**seems (1)**
6:2
**send (2)**
23:20,23
**sense (3)**
18:5,16;19:20
**sensitive (1)**
26:2
**sentence (3)**
27:15,16,17
**separate (1)**
17:24
**separately (1)**
27:19
**session (1)**
3:4
**sessions (1)**
21:6
**set (2)**
27:19,24
**Several (1)**
13:22
**Shaw (1)**
3:21
**short (1)**
18:12
**show (1)**
18:10
**side (3)**
19:2,10;20:21
**sides (1)**
19:10
**sign (1)**
29:19
**silver (1)**
20:9
**simple (1)**
15:24
**simply (2)**
20:7;28:16
**situation (3)**
13:6,7;14:14
**six (1)**
14:3
**sixteen (1)**
13:19
**snapshot (1)**
26:12
**solely (1)**
19:4
**somebody (1)**
11:21
**sometimes (2)**

27:15;28:21
**soon (1)**
29:10
**sorry (8)**
5:16;7:24;11:9,9;
13:3,4;23:6;28:6
**sort (6)**
4:10,13;8:6;9:21,22;
17:7
**sorts (1)**
26:24
**sounds (1)**
25:23
**specifically (1)**
14:9
**spot (1)**
17:8
**standard (1)**
12:3
**started (1)**
15:15
**starting (2)**
15:11,24
**state (2)**
3:14,16
**stated (1)**
8:3
**status (3)**
4:5;7:8;18:23
**stay (1)**
16:2
**step (2)**
8:14;13:18
**stick (3)**
19:21;21:7,16
**still (4)**
5:10;8:15;9:22;
25:15
**stipulation (1)**
28:14
**street (2)**
10:5,5
**strict (1)**
15:18
**struck (2)**
5:23;8:3
**structure (2)**
14:4;15:7
**stuff (1)**
4:6
**Subject (1)**
24:6
**submitted (3)**
22:10,14,24
**subordination (1)**
16:6
**subsequent (2)**
12:19;13:24
**sued (1)**
12:1
**suffer (1)**
11:16
**suffice (1)**

15:12
**sufficient (3)**
22:10,14,25
**sufficiently (1)**
23:3
**suggesting (1)**
10:9
**summary (3)**
17:13,19;19:13
**supplement (1)**
26:12
**supply (1)**
13:19
**support (2)**
9:16;20:3
**supporting (2)**
27:9,9
**Supreme (1)**
18:21
**Sure (6)**
3:15;4:7,9;6:19;
14:16;25:21
**surprised (2)**
19:3,5

**T**

**table (2)**
23:12
**takeout (1)**
13:24
**talk (1)**
8:22
**talked (1)**
8:22
**talking (2)**
17:10;18:4
**tee (1)**
16:23
**teed (1)**
19:4
**teeing (1)**
8:15
**telling (2)**
20:20;23:13
**tells (1)**
15:2
**tenant (4)**
14:18;15:25;16:10,
11
**tens (1)**
28:23
**terms (2)**
13:15;14:12
**testimony (1)**
11:21
**Theodore (1)**
3:18
**theory (2)**
8:11,14
**therefore (5)**
6:16,18;11:17;13:10;
26:11

**thinking (9)**
4:23,24;9:22;15:24;
17:10,11;18:22;21:8,
17
**thirties (1)**
28:23
**Thomas (1)**
29:18
**thoroughly (1)**
20:19
**though (1)**
21:3
**thought (6)**
4:19;7:4;19:18;
20:20;21:14;26:24
**thoughts (1)**
25:11
**three (2)**
5:24;16:14
**throw (1)**
18:14
**thus (1)**
10:16
**tight (1)**
5:10
**times (1)**
21:23
**timing (1)**
24:2
**today (2)**
5:4;23:25
**told (1)**
19:23
**touched (1)**
4:20
**towards (1)**
14:6
**transaction (1)**
15:7
**troubles (1)**
8:1
**Troutman (1)**
3:25
**truck (1)**
10:2
**true (4)**
11:5,5,6;23:1
**trust (1)**
20:16
**try (4)**
4:14;5:7;21:15;29:9
**trying (1)**
15:25
**Tsekerides (60)**
3:8,10,13,15,17,18,
18;4:7;5:16,18,20;6:5;
7:6,22,24;8:4,21;9:4;
10:9;11:1,5;17:4,7,22;
18:18;20:2,9,22;21:1,
10,22;22:12,16,18,20,
23;23:1,4,8,12;24:4,6,
9,19,24;26:6,23;27:4,7;
28:2,4,8,9,13,19;29:1,

4,6,11,20
**turn (1)**
16:20
**turning (1)**
10:1
**twelve-million-dollar (1)**
28:24
**twenties (1)**
28:23
**twenty (1)**
20:12
**twenty-five (1)**
23:23
**twenty-nine (1)**
24:21
**two (8)**
10:4,22;14:1,2;
19:17;20:16;24:1;
27:20
**type (1)**
9:13

**U**

**uncommon (1)**
14:14
**underlying (3)**
10:15;13:7;14:11
**unless (2)**
16:21;24:17
**unlike (1)**
17:12
**unredacted (3)**
5:22;21:25;25:17
**up (9)**
7:5;8:15;10:2;12:3;
16:23;19:4;20:24;
28:21,22
**upon (3)**
7:17;11:21;12:2
**use (1)**
8:6
**useful (1)**
25:19
**utilities (1)**
15:6

**V**

**version (1)**
5:22
**via (1)**
14:4
**view (1)**
7:1
**voluminous (1)**
26:2

**W**

**wait (2)**
19:6;25:9
**wants (1)**

Case: 19-30088    Doc# 10719    Filed: 05/27/21    Entered: 05/27/21 10:26:18    Page 36
of 37

PG&E CORPORATION AND PACIFIC
GAS AND ELECTRIC COMPANY, ET AL.

May 26, 2021

25:12
**way (17)**
  5:1;7:7;8:2,24;9:25;
  14:23;16:13,14,21,22;
  17:9,10,11;21:7,15;
  22:21;26:6
**WEDNESDAY (1)**
  3:1
**week (1)**
  24:12
**weekend (1)**
  29:19
**weeks (2)**
  25:8;27:20
**Weil (1)**
  3:18
**weren't (2)**
  12:20;22:15
**what's (3)**
  4:4;21:10;24:16
**Whereupon (1)**
  29:22
**win (4)**
  11:24;17:15;19:22;
  20:14
**Winthrop (1)**
  3:21
**within (3)**
  5:11;6:25;12:7
**without (2)**
  10:18;26:8
**witness (1)**
  6:22
**wondered (1)**
  8:4
**wondering (1)**
  6:1
**word (1)**
  23:10
**work (5)**
  10:9,21;21:13;27:25;
  28:1
**workers (1)**
  10:5
**Works (1)**
  28:5
**worry (3)**
  24:1;27:6,11
**worse (2)**
  8:18,18
**writers (1)**
  27:14
**wrong (4)**
  4:2,3;7:20;8:1
**wrote (1)**
  25:18

## Y

**years (1)**
  16:15
**yesterday (2)**
  24:21;25:17

## 1

**1 (3)**
  26:19,20,25
**10 (2)**
  27:22,23
**10:43 (1)**
  29:22
**10th (1)**
  27:21
**11 (1)**
  27:24
**15 (1)**
  28:11
**15th (3)**
  5:15;18:24;19:1
**16th (1)**
  24:11
**18 (1)**
  24:11
**18th (1)**
  25:9

## 2

**2 (2)**
  19:23;26:21
**2021 (1)**
  3:1
**26 (1)**
  3:1
**2nd (1)**
  24:13

## 3

**300-page (1)**
  23:17
**30th (1)**
  24:12

## 5

**56f (3)**
  9:12;17:20;21:13

## 9

**9th (1)**
  24:13

Min-U-Script®

Case: 19-30088    Doc# 10719    Filed: 05/27/21    Entered: 05/27/21 10:26:18
of 37