William B. Abrams
end2endconsulting@gmail.com
1519 Branch Owl Place
Santa Rosa, CA, 95409
Tel: 707 397 5727

*Pro Se Claimant and*

*Party to California Public Utilities Commission Proceeding I.15-08-019 to Determine whether Pacific Gas and Electric Company and PG&E's Corporation's Organizational Culture and Governance Prioritizes Safety*
*Party to California Public Utilities Commission Proceeding A.20-06-011 which is the Application of Pacific Gas and Electric Company for Approval of Regionalization Proposal*
*Party to California Public Utilities Commission Proceeding R.18-10-007 which is the Order Instituting Rulemaking to Implement Electric Utility Wildfire Mitigation Plans Pursuant to Senate Bill 901*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>                  Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>\* *All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankr. Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT WILLIAM B. ABRAMS MOTION TO ENFORCE THE VICTIM TRUST AGREEMENT AND REPLACE ALL MEMBERS OF THE FIRE VICTIM TRUST OVERSIGHT COMMITTEE AND TO SUPPORT EFFICIENT TRUST ADMINISTRATION PURSUANT TO U.S.C. §§ 1123(A)(4) AND FIRE VICTIM TRUST AGREEMENT SECTION 6.2**<br><br>**Hearing:** Telephonic Appearances Only<br>Date: July 13, 2021<br>Time: 10:00am<br>Place: Courtroom 17<br>450 Golden Gate Ave., 16th Floor<br>San Francisco, CA, 94102<br><br>Related Documents: Dkt. 10748<br>Objection Deadline: July 2, 2021, 4:00p PT |

**MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT WILLIAM B. ABRAMS MOTION TO ENFORCE THE VICTIM TRUST AGREEMENT AND REPLACE ALL MEMBERS OF THE FIRE VICTIM TRUST OVERSIGHT COMMITTEE AND TO SUPPORT EFFICIENT TRUST ADMINISTRATION PURSUANT TO U.S.C. §§ 1123(A)(4) AND FIRE VICTIM TRUST AGREEMENT SECTION 6.2**

1. **Victim Trust Agreement Section 6.2** – *"Duties of the Members of the TOC. The members of the TOC shall serve in a fiduciary capacity representing current holders of Fire Victim Claims in the administration of the Trust. The TOC shall not have any fiduciary duties or responsibilities to any party other than holders of Fire Victim Claims, provided that the TOC shall be entitled to the protections and limitations of duties provided for herein even with respect to the holders of Fire Victim Claims. The Trustee must obtain the consent of the TOC on matters identified in Section 2.2(f) above and consult with the TOC in accordance with other provisions herein. Where provided elsewhere in the Trust Agreement or in the CRP, certain other actions by the Trustee may also be subject to the consent of the TOC."*

2. **Victim Trust Agreement Section 6.3(c)** – *"A member of the TOC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause. Such removal shall be made at the recommendation of the majority of the remaining members of the TOC and with the approval of the Trustee."*

3. **Victim Trust Agreement Section 6.4(a)** – *"If member of the TOC dies, resigns pursuant to Section 6.3(b) above, or is removed pursuant to Section 6.3(c) above, the vacancy shall be filled with an individual selected by and agreed to by a majority of the remaining members of the TOC; provided however, that if such members cannot agree on the successor, the Bankruptcy Court shall make the appointment."*

4. **Victim Trust Agreement Section 1.6** – *"The Bankruptcy Court shall have exclusive jurisdiction with respect to any action relating to or arising out of the Trust…"*

5. **Prior Motion and Order Denying Motion** - On July 1, 2020 I filed the "WILLIAM B. ABRAMS MOTION FOR JUST TREATMENT OF VICTIMS THROUGH THE RECONSTITUTION OF THE FIRE VICTIM TRUST OVERSIGHT COMMITTEE AND EQUITABLE APPLICATION OF THE JUDICIAL REVIEW PROVISIONS PURSUANT TO U.S.C. §§ 1123(A)(4)" ("**Motion For Just Treatment**") which was denied without hearing on July 22, 2020 through the "ORDER DENYING MOTIONS FOR RECONSIDERATION." [Dkt. 8478] ("**Order Denying Reconsideration**") Within that order it was stated that "*Reconsideration may be accomplished through application of Federal Rules of Civil Procedure ("FRCP") 59(e) or 60(b), made applicable here through Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure. See Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.), 503 F.3d 933, 940 (9th Cir. 2007). Neither rule recognizes a motion for reconsideration. In re Captain Blythers, Inc., 311 B.R. 530, 539 (9th Cir. BAP 2004). Instead, FRCP 59(e) contemplates a motion to alter or amend a judgment. Under FRCP 59(e), amendment of a judgment is justified where: (1) the court is presented with newly discovered evidence; (2) the court committed clear error or the initial decision was manifestly unjust; or (3) there is an intervening change in controlling law. School Dist. No. 1J, Multnomah County, Oregon v. Acands Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). Similarly, FRCP 60(b) permits a Court to reconsider a prior judgment or order "only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) extraordinary circumstances which would justify relief." Id. at 1263.*"

## ARGUMENT

6. The "NOTICE OF APPOINTMENT OF FIRE VICTIM TRUST OVERSIGHT COMMITTEE IN ACCORDANCE WITH CONFIRMATION ORDER [Dkt. No. 8053] FILED BY FIRE VICTIM TRUSTEE" [Dkt. 8195] indicated appointment of Trust Oversight Committee members without meaningful consultation or approval from "holders of fire victim claims." There was no substantive vote, referral process or adequate vetting of the following members on the Trust Oversight Committee:

- Amy Bach, Esq., United Policyholders

- Douglas Boxer, Esq., Law Office of Douglas Boxer
- Elizabeth Cabraser, Esq., Lieff Cabraser Heimann & Bernstein, LLP
- Michael Kelly, Esq., Walkup, Melodia, Kelly & Schoenberger
- Frank M. Pitre, Esq., Cotchett, Pitre & McCarthy, LLP
- Amanda L. Riddle, Esq., Corey, Luzaich, de Ghetaldi & Riddle LLP
- Bill Robins, Esq., Robins Cloud LLP
- Gerald Singleton, Esq., Singleton Law Firm
- Steven J. Skikos, Esq., Skikos, Crawford, Skikos & Joseph, LLP

Moreover, none of these members went through any type of background checks or were asked to provide financial disclosures so that potential conflicts of interests could be identified. Bankruptcy Rule 2019 was never enforced through this case. Moreover, holders of Fire Victim Claims did not have any meaningful hand in selecting the TOC and were not given any assurances by the Tort Claimant Committee ("**TCC**") or Fire Claimant Professionals that the interests of the Oversight Committee Members were aligned with their interests to get just and fair compensation for their claims.

7. The Up from the Ashes Coalition ("**UFTA**") was formed as a 501(c)4 organization on May 17, 2018 and lobbied heavily for the passage of AB-1054 which was signed into law on July 12, 2019. I have included the Articles of Incorporation from UFTA (Attachment A of Motion for Trust Oversight) and the IRS form 990 (Attachment B of Motion for Trust Oversight) which names the following as Officers of the Organization:

- President - Steve Campora Esq., Dreyer, Babich, Baccola, Wood & Campora Law Firm
- Director/Secretary – Michael A. Kelly, Walkup, Melodia, Kelly & Schoenberger
- Director/Treasurer – Frank Pitre, Cotchett, Pitre & McCarthy, LLP

8. Additionally, I have attached Form 635 (Attachment C of Motion for Trust Oversight) UFTA which names 21 different "Coalition Members" which not coincidentally include ALL of the Trust Oversight Committee Members with the exception of Amy Bach Esq., United Policyholders whose organization was the sole beneficiary when UFTA prematurely

dissolved on August 14, 2020 (Attachment D of Motion for Trust Oversight). The Tort Claimant Committee (TCC) member attorneys are also on this list of UFTA "Coalition Members." However, it is important to note that the attorneys who resigned from the TCC are not affiliated with UFTA including those members that resigned on "moral grounds." The financial contributions of the coalition members are listed on these Form 635 documents. I am confident that Ms. Bach was not aware of the broad financial ties of all the other members of the Trust Oversight Committee to UFTA. It is important to make clear that United Policyholders (UP) and Ms. Bach specifically are strong advocates for wildfire survivors and should be commended for their ongoing and important work. These financial ties and this motion should be used to impugn the reputation or strong work product that continues to be a source of support for wildfire survivors and others across the State of California.

9. The International Brotherhood of Electrical Workers Local #1245 filed a complaint against UFTA on May 2, 2018 stating in part that the organization "*is a front organization created to conceal the identities of law firms who do not want the public to know they are paying lobbyists to persuade the government to preserve billions of dollars in legal fees… the public has a right to determine if UFTA is nothing more than a means for a group of trial lawyers to profit off the tragic fires, one part of a public misinformation campaign conducted while hiding their identities behind UFTA… Trial lawyers are paying a seasoned lobbyist to wage an influence campaign on their behalf and using UFTA as a front company to conceal their involvement while their lobbyist publicly misrepresents the nature of that front company as an association of fire victims*" (Attachment E of Motion for Trust Oversight). The UFTA website and activities quickly ceased after the passage of AB1054 but their Facebook page still describes them as "**We** are a coalition of fire victims who have come together to fight PG&E, the company suspected of causing the fires that destroyed **our** homes and devastated **our** lives." I have included a screenshot of that page and the other materials that were circulated by UFTA through their lobbying activities related to AB1054 (Attachment F).

10. Subsequent to this complaint being filed, it was no longer pursued by IBEW Local #1245. However, after this complaint, IBEW was able to secure certain provisions for their members within the PG&E Plan of Reorganization including but not limited to collective bargaining

extensions, a 3.75% general wage increase, additional health benefits, and other assurances.[1] IBEW Local #1245 ended up being a strong proponent of AB-1054 and presented to both the Senate and Assembly Energy Committees in support. I have no doubt that IBEW Local #1245 pursued these benefits in good faith on behalf of their members and should be commended for these efforts and their strong advocacy. This motion should not be used to impugn the reputation of the IBEW or their members who support our utilities like PG&E and the public. Their members risk their lives on a daily basis so residents like me can have safer and more reliable energy.

11. Since the passage of AB-1054 and plan confirmation, none of the Trust Oversight Committee Members or other Fire Claimant Professionals have directly or indirectly engaged in any advocacy or lobbying activities on behalf of victims through the current slate of California Legislation including but not limited to Senate Bill 533 and Senate Bill 694. Moreover, these victim attorneys have not proposed new legislation that might tie PG&E securitization to the security of victims through the Fire Victim Trust or other efforts that might advance the interests of victims to ensure the Trust is fully funded to make victims whole. This is in stark contrast to their work and their generous financial contributions prior to plan confirmation.

12. Fire Claimant Professionals and members of the TOC have not advanced victim interests at the California Public Utilities Commission ("**CPUC**") since plan confirmation. On May 3, 2021 the CPUC voted to approve a financing order giving PG&E the ability to securitize $7.5B in costs related to the wildfires caused by its power lines in 2017.[2] None of these victim attorneys are actively engaged to tie funding of the Victim Trust (victim security) to the approval of PG&E investor security. Moreover, they did not engage in Rulemaking 18-10-007 related to the PG&E wildfire mitigation plan or Application 20-06-011 regarding the PG&E regionalization plan which is a direct procedural outgrowth from the PG&E Bankruptcy Case.

---

[1] See the "Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated January 31, 2020" [Dkt. 5590] pg. 99-100
[2] See California Public Utilities Commission Proceeding A.21-01-014

13. On May 20, 2021 PG&E Corporation and their Utility held their annual meeting of shareholders. Leading up to and during that meeting not the Trustee nor the Trust Oversight Committee Members voiced views to advance the interests of victims holding ~24% of PG&E stock.

**CONCLUSION AND REMEDIES**

14. We should assign new members to the Trust Oversight Committee who are willing to adhere to Bankruptcy Rule 2019 and fully disclose any conflicts that they may have in the case. Moreover, we should make sure that all members have NO financial interest in the case to avoid real or perceived bias. Please, take into consideration my prior Motion for Just Treatment, [Dkt. 8247] as I made specific recommendations regarding the types of individuals that could fulfill these duties.

15. In addition to the reconstitution of the TOC, I recommend that the court broaden the amount of judicial review made available to victim claimants. I believe this is an additional and necessary step given that so many victims have lost confidence in the trust administration process and the associated lack of transparency. I recommend that the Trustee and the court seek a more equitable formula to grant victim access to additional judicial review. Threshold criteria need to be set for judicial review that are fair, just and provide equal treatment such as the following examples:

- Trustee may designate up to 15% of claims for further judicial review

- There must be disputed material facts related to the claims to trigger review

- Judicial review will only be provided if the difference between the claim request and the Trustee determination of that claim exceeds 5%

- Trustee will work to the best of their ability to ensure that claims seeking judicial review will not delay payment of claims to those not seeking further judicial review

\\\

Dated: June 7, 2021

Respectfully submitted,

William B. Abrams

Pro Se Claimant