

Signed and Filed: June 11, 2021

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Reorganized Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and<br>    Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered |

**ORDER OVERRULING PERA'S OPPOSITION TO DEBTORS'**

**FIRST SECURITIES CLAIMS OMNIBUS OBJECTION**

    I.  OVERVIEW

On March 17, 2021, the reorganized debtors PG&E Corporation (PG&E") and Pacific Gas and Electric Company (collectively, "Debtors") filed their *First Securities Claims Omnibus Objection (No Loss Causation – Securities Sold Prior to the First*

-1-

*Purported "Corrective Disclosure"*) (dkt. 10411) ("No Loss Securities Objection" or "Objection"), in compliance with this Court's *Order Approving Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* dated January 12, 2021 (dkt. 10015). Debtors objected to 249 claims, including 194 claims relating to equity securities and 55 claims relating to debt securities. No opposition was filed by any of the 194 equity security claimants and the Debtor's objections were sustained. (dkt 10581 .

Instead, a non-party to these securities transactions, the Public Employees Retirement Association of New Mexico ("PERA"), filed a response (dkt. 10524) purportedly on behalf of 55 former debt securities holders (the "Claimants") who sold their securities before any securities price drop purportedly caused by a corrective statement of alleged prior material misrepresentations by Debtors. Debtors contend, and the court agrees, that Claimants suffered no loss with respect to debt securities that they had owned and sold. The court need not decide the culpability of Debtors to any of their debt or equity security holders, past or present, as the timing of the relevant underlying transactions significantly limits the material issues.

Quite simply, the Claimants bought and sold their debt securities before publication or disclosure of negative information regarding Debtors' fire safety practices; these disclosures were purportedly inconsistent with material statements previously made by Debtors about such practices. The market price of PG&E's securities subsequently dropped. As the Claimants sold their debt securities before the purported "truth" was published and entered the marketplace, they did not suffer a loss caused by the alleged misrepresentations and the subsequent corrective disclosures and price drop. Neither a loss nor causation for any loss exists.

Consequently, when Debtors objected to the No-Loss Securities claims, no Claimant opposed or responded. Instead, PERA filed an opposition, seemingly without performing a cursory investigation into the relevant facts or law. For the reasons set forth below, the court is overruling PERA's objection and sustaining Debtors' objections to Claimants' claims.

II. ANALYSIS

All of the Claimants who held debt securities in PG&E sold their interests prior to October 12, 2017, a critical date PERA has identified.[1] Therefore, assuming *arguendo* that Debtors made

---

[1] In its third amended securities class action complaint filed against PG&E in the U.S. District Court for the Northern

Case: 19-30088    Doc# 10769    Filed: 06/11/21    Entered: 06/11/21 14:40:57    Page 3 of 9

misleading statements requiring a corrective statement to the market and the corrective statement resulted in a sell-off of securities at a loss to some equity or debt securities holders, the Claimants to whom the No-Loss Securities Objection was directed had sold their interests before October 12, 2017. These Claimants therefore would not have been able to demonstrate any loss caused by or arising from the subsequent corrective statement and price drop, even if they had responded to Debtors' No-Loss Securities Objection.

Nonetheless, PERA contends that this court should overrule the No-Loss Claim Objection as the issue of loss causation "may create an affirmative defense" that cannot be heard on an omnibus basis. The court rejects this argument, as well-settled law provides, by analogy, that the filing of a proof of claim is the equivalent of filing a complaint and the filing of a claim

---

District of California (*In re PG&E Corp. Sec. Litig.*, No. 3:18-cv-03509-EJD, dkt. 121 (N.D. Cal. May 28, 2019), PERA identified October 12, 2017 as the date of the first alleged corrective disclosure. *See* PERA's *Submission of Argument Demonstrative for Use During Oral Argument at Confirmation Hearing* [Docket No. 7791] at 17-26; *see also* PERA's *Objection to Confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020* [Docket No. 7296] at 6, 12; Tr. Jun. 5, 2020 at 78:10-22. In addition, this court recognized October 12, 2017, as the operative date at the confirmation hearing for the purposes of application of the formula in Section 1.109 of the Plan.

-4-

objection by the debtor is analogous to an answer.[2]  Further, it is up to the claimant, not a third party with no or questionable standing, to assert any affirmative defense or opposition to the objection.  More importantly, Debtors have demonstrated an absence of loss causation as to the Claimants as matter of fact and undisputed law. Despite suggestions to the contrary by PERA,[3] holders of debt securities, like holders of equity securities, must demonstrate causation between the purported misrepresentation and the holders' losses.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) ("Loss causation is established if the market learns of a defendant's fraudulent act or practice, the market reacts to the fraudulent act or

---

[2] *See In re Brosio*, 505 B.R. 903, 912–13 (9th Cir. BAP 2014), citing *In re Levoy*, 182 B.R. 827, 833 n. 5 (9th Cir. BAP 1995) (multiple other citations omitted); *see also In re Cruisephone, Inc.*, 278 B.R. 325, 330 (Bankr. E.D.N.Y. 2002) ("In the bankruptcy context, a proof of claim filed by a creditor is conceptually analogous to a civil complaint, an objection to the claim is akin to an answer or defense and an adversary proceeding initiated against the creditor that filed the proof of claim is like a counterclaim.").

[3] PERA contends that holders of debt securities do not have to demonstrate loss causation under section 11 of the Securities Act of 1933.  But as the Supreme Court stated in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005), federal securities laws do not "provide investors with broad insurance against market losses."

-5-

practice, and *a plaintiff suffers a loss as a result of the market's reaction*") (emphasis added).[4]

Both holders of equity securities and holders of debt securities are protected against losses actually caused by misrepresentations of the issuing entity or responsible parties. *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *17 (N.D. Cal. Oct. 31, 2014) (quoting *Dura*, 544 U.S. at 345) (emphasis added). Such "causal losses" occur only when the security's value "falls significantly after the truth about the untrue statements or misleading omissions becomes known." *Violin Memory*, 2014 WL 5525946, at *17 (emphasis in original) (citing *Dura*, 544 U.S. at 347; *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005)).

Consequently, the Claimants could not have suffered a loss until the alleged misrepresentations and omissions "bec[a]me generally known[,] and as a result" the debt securities' value depreciated. *Violin Memory*, 2014 WL 5525946, at *17 (a section 11 loss "must be caused by the materialization of the concealed

---

[4] As noted by Debtors in footnote 4 of their reply (dkt. 10668), 45 of the 55 debt securities holders identified in the No Loss Securities Objection profited from their transactions. Given that they profited from trading in PG&E's securities, they suffered no loss or damages. *See In re Broderbund Learning Co. Sec. Litig.*, 294 F.3d 1201, 1203 (9th Cir. 2002) (dismissing putative class action where all class members profited from the sale of the relevant securities).

-6-

risk") (quotations omitted); *see also In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *29 (N.D. Cal. Oct. 1, 2015) (same).

The causal connection between an alleged misstatement and the resulting loss is essential to any Securities Act Section 11 claim, just as it is in any Securities Exchange Act Section 10(b) claim. *See Brown v. Ambow Educ. Holding Ltd.*, 2014 WL 523166 (C.D. Feb. 6, 2014). As noted by the *Brown* court, the loss causation defense in Section 11 and the loss causation requirement in Section 10(b) are "mirror images." *Id.* at *15–16 n.1 ("Although the Supreme Court in *Dura Pharmaceuticals* reviewed loss causation in the context of Section 10(b) claims, courts use its reasoning to analyze loss causation in Section 11 claims as well.").

Here, the Claimants sold their debt securities before the market could have learned of any fraudulent act or practice through a corrective disclosure and thus did not suffer a loss as a result of any subsequent reaction by the market to any corrective disclosure.[5] *See Dean v. China Agritech, Inc.*, 2011 WL

---

[5] This leads to another issue raised by PERA: What if any of these debt securities holders or others later repurchased securities in PG&E and then suffered losses as a result of subsequent price drops caused by violations of securities laws? The issue is irrelevant, as this order disallows claims arising from securities sold prior to October 12, 2017. Nonetheless, as no such purchases or subsequent violations have been asserted by the actual claimants, and any order sustaining the Objection would apply only to debt securities sold prior to October 12,

-7-

5148598 at *8 (C.D. Cal. Oct. 27, 2011) (court dismissed plaintiff's securities fraud count where the plaintiff sold its holdings before the market first became aware of the alleged misstatement or omission).[6] Consequently, even if PERA had standing to defend these claim objections, it would be unable demonstrate how the corrective disclosure caused losses to the to the Claimants, as they sold their debt securities before the corrective disclosures occurred.[7] Its opposition is OVERRULED

---

2017, this particular argument by PERA is unavailing and is overruled.

[6] Other courts in the Ninth Circuit have dismissed or not allowed recovery on securities fraud claims based on securities that were liquidated prior to a "corrective disclosure." *See, e.g. Hurst v. Enphase Energy, Inc.*, No. 20-cv-04036-BLF, 2020 WL 7025085, at *8 (N.D. Cal. Nov. 30, 2020) ("[i]nvestors who bought or acquired [defendant's] stock during the proposed class period, but sold the stock prior to [the date of the corrective disclosure], would not have suffered injury from the fraud because they would have also sold the stock at an alleged artificially inflated price."); *Vinh Nguyen v. Radient Pharmaceuticals Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *5-7 (C.D. Cal. May 6, 2014) (approving allocation in a securities class action settlement that provided no recovery for traders who sold their securities prior to the first corrective disclosure and who provided no other evidence that the alleged misrepresentation caused the asserted losses); *In re Cornerstone Propane Partners, L.P.* Sec. Litig., No. C 03-2522 MHP, 2006 WL 1180267, at *9 (N.D. Cal. May 3, 2006) (excluding "plaintiffs who sold their stock before [the date] when the first corrective disclosure occurred" from securities class action because they "did not suffer any loss causally related to defendants' alleged misrepresentations."

[7] PERA contends that an investor should not have to demonstrate a causal link between the alleged wrongful conduct of Debtors and the purported losses of the securities holder. The court disagrees. To defeat the claim, an objector must come forward

-8-

and Debtors' First Securities Claims Omnibus Objections (No Loss Causation – Securities Sold Prior to the First Purported "Corrective Disclosure") are sustained. Debtors should upload an omnibus order disallowing the particular claims for the reasons stated in this order.[8]

*** END OF ORDER ***

---

with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000), quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991). "The objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Lundell*, 223 F.3d at 1040 (internal citations omitted). If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. *Id.* (internal citations omitted). The ultimate burden of persuasion remains at all times on the claimant. *Id.*

[8] Despite Debtors' argument that PERA lacks standing, the court's decision on the merits moots the issue for now. But the court does need to send a clear "heads up" to PERA and its counsel that future insertion of arguments such as occurred here might result in consequences to PERA that the court prefers to avoid. PERA is neither an *amicus* nor a private attorney general carrying forth positions not advanced by real parties in interest.