1                                   **<u>EXHIBIT A</u>**

**(Reply)**

KELLER BENVENUTTI KIM LLP
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

CRAVATH, SWAINE & MOORE LLP
Omid H. Nasab (*pro hac vice*)
(onasab@cravath.com)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

In re:

PG&E CORPORATION,

    - and -

PACIFIC GAS AND ELECTRIC
COMPANY,

                  Debtors.

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric
Company
☒ Affects both Debtors

*All papers shall be filed in the Lead Case,
No. 19-30088 (DM).*

Case No. 19-30088 (DM)

Chapter 11
(Lead Case)
(Jointly Administered)

**REPLY IN SUPPORT OF
REORGANIZED DEBTORS' FURTHER
OBJECTION TO CLAIMS 80033 and
80500**

Date: June 15, 2021 (status conference only)
Time: 10:00 a.m. (Pacific Time)
Place: United States Bankruptcy Court
       Courtroom 17, 16th Floor
       San Francisco, CA 94102
       (video appearances only)

## I. INTRODUCTION

In October 2019, Engel submitted a proof of claim demanding PG&E pay for the generator he purchased for his home to avoid the impact of PSPS events. (*See* Engel Proof of Claim (No. 80033).) In October 2019, the Kleins similarly submitted a proof of claim seeking reimbursement of the cost to purchase and install a standby generator "to power Creditor's residence during periods that Debtor preemptively cuts electric power." (*See* Kleins Proof of Claim (No. 80500).) After an initial round of responses to an omnibus objection to claims, on April 23, 2021, the Reorganized Debtors filed a specific objection to the Klein and Engel claims (Dkt. 10574), to which the Kleins and Engel filed responses on May 14 and May 11, 2021, respectively. (*See* Response of Claimant to Reorganized Debtors' Further Objection, Dkt. 10650, ("**Klein Response**"); Reply to Reorganized Debtors' Further Objection, Dkt. 10642, ("**Engel Response**").)

PG&E submits this reply in further support of its specific objection in advance of the status conference scheduled for June 15, 2021, at which the parties will be prepared to discuss the process for adjudicating the claims. While the claims fail for all the reasons set forth in PG&E's objections, PG&E provides further discussion here on its argument that these claims are preempted because they seek to impose liability for CPUC-authorized conduct—PSPS events that were carried out to save lives and homes in high fire-risk areas. Based on the briefing, PG&E believes that the claims should be resolved on threshold legal grounds and will request argument on those grounds be scheduled for the next omnibus hearing on June 30, 2021.

## II. ARGUMENT

### A. The Kleins' Claim Is Preempted

In their response brief, the Kleins recognize that this Court held in *Gantner*[1] that the PSPS-claims asserted there were preempted, but argue that their claim is distinguishable because they are asserting a claim for breach of contract *before* the CPUC authorized PSPS events. At page 4 of their Response, the Kleins readily concede that the CPUC "has the authority to regulate whether and when a utility may intentionally implement a power outage," but claim that PG&E breached a

---

[1] *See Gantner v. PG&E Corp.,* 2021 WL 1164816, at *5 (N.D. Cal. Mar. 26, 2021).

purported oral contract with the Kleins in October 2018 when it cut off power to the Kleins as part of a PSPS event. The Kleins say that the CPUC only exercised its authority to regulate PSPS events on June 4, 2019, *after* this purported breach, and assert that their claim is thus distinguishable from *Gantner* on this basis. (*Id.*)

The Kleins are wrong. It is demonstrably incorrect that PSPS events were not authorized by the CPUC by the time of PG&E's first PSPS event in October 2018. This is detailed in PG&E's opening brief in the *Gantner* motion to dismiss briefing. (*See* Debtors' Mot. to Dismiss and Mot. to Strike, Adv. Pro. No. 19-03061, Dkt. 7, at 3-7.) Among other things, the CPUC issued Resolution ESRB-8 in July 2018 (before PG&E conducted its first ever PSPS event). That resolution acknowledged that "California Public Utilities Code (PU Code) Sections 451 and 399.2(a) **give electric utilities authority to shut off electric power in order to protect public safety**. This authority includes shutting off power for the prevention of fires caused by strong winds," and that all of the major utilities in the state "currently exercise their authority to shut off power during dangerous fire conditions." *See* Resolution Extending De-Energization Reasonableness, Notification, Mitigation, and Reporting Requirements in Decision 12-04-024 to All Electric Investor Owned Utilities ("Resolution ESRB-8"), 2018 WL 3584003, at *1-2 (Cal. P.U.C. July 12, 2018) (emphasis added). The Resolution also provided "guidelines that IOUs must follow . . . when an IOU decides to de-energize its facilities during dangerous conditions" and required that utilities submit a report to the CPUC following public safety power shutoffs within 10 days after each de-energization event. *Id.* at *1, *3. As ESRB-8 makes clear, the CPUC unquestionably authorized PSPS events before PG&E's first PSPS event.

While that should end the analysis, it is worth noting that the Kleins' claim suffers from other glaring flaws. There is no connection between the alleged breach identified by the Kleins (a PSPS event in October 2018) and the claimed damages (a generator installed *after* October 2018 to avoid the inconvenience of *later* PSPS events, which Klein admits were authorized by the CPUC). (*See* Klein Response at 4-5 (setting forth timeline).) Moreover, the supposed breach of contract that PG&E committed in October 2018 is of a purported oral contract that the Kleins assert was entered into at some point around October 2004 to provide electricity to their house (Klein Response at 3.)

1    But PG&E did not provide service to the Kleins on the basis of an unwritten, vague, oral contract from

2    15 years ago.   Instead, PG&E provided service on the basis of an established, comprehensive

3    regulatory structure and regulated rates administered by the CPUC.   PG&E's obligations to its

4    customers are governed by its tariff rules.  Utility tariffs are filed with and reviewed by the CPUC and

5    "have the force and effect of law." *Dollar-A-Day Rent-A-Car Sys. v. Pac. Tel. & Tel. Co.*, 26 Cal.

6    App. 3d 454, 457 (1972); *Duggal v. G.E. Capital Commc'ns. Servs., Inc.*, 81 Cal. App. 4th 81, 87

7    (2000) ("filed tariffs are the equivalent of federal regulations which have the force of law.")  The

8    CPUC reviews tariffs, and may authorize deviations from them. *See Dyke Water Co. v. Public Utilities*

9    *Comm'n*, 56 Cal. 2d 105, 123 (1961) (noting that, when a tariff rule is published and filed with the

10   CPUC, it has "the force and effect of a statute, and any deviations therefrom are unlawful unless

11   authorized by the commission.")  The premise of the Kleins' claim—that PG&E breached an "oral

12   contract" with the Kleins—is itself without merit.

13          **B.      Engel's Claim Is Preempted**

14          Like the Kleins, Mr. Engel seeks reimbursement for a home generator that he purchased

15   to avoid experiencing power outages during PSPS events.  Mr. Engel filed his proof of claim for

16   payment of the generator in October 2019.

17          Mr. Engel's submissions span many pages and attach an array of documents concerning

18   a variety of topics.  Mr. Engel's approach appears to be to make a series of evolving arguments in the

19   hopes that one of them is legally viable.  But the proof of claim Mr. Engel filed in 2019 is crystal clear

20   about what caused him to buy his generator, and that claim is plainly preempted.

21          In his proof of claim, Mr. Engel stated that the basis for his claim is that "for decades

22   either or both Debtors, either negligently, grossly negligently, recklessly, willfully, intentionally, or

23   otherwise wrongfully or contrary to applicable laws and regulations, (i) have created, acquired,

24   maintained and cared for their electric system in such a manner that it has become unsafe or dangerous

25   to operate, especially on windy days when it is hot and dry, which conditions are not unusual, and (ii)

26   have also caused that system otherwise to suffer from, or otherwise be subject to, other '**E Systems**

27   **Flaws**', as defined below." (Engel POC at 2.) E Systems Flaws is then defined by Mr. Engel as PG&E

28   designing, constructing or maintaining its equipment "so badly that its system is now too defective

and dangerous to operate normally, especially on windy days when it is hot and dry within PSPS standards for the PSPS blackouts that the Debtors have directly or indirectly made necessary or required."  (Engel POC at 7.)  Mr. Engel claims that these historical problems, and the failure to mitigate them with adequate undergrounding, spurred him to buy a generator to avoid the effects of PSPS events.  (Engel POC at 4 ("[B]ecause Debtors' negligently, grossly negligently, recklessly or willfully chose that inferior, inadequate approach to the undergrounding that would have reduced the need for PSPS blackouts, **Debtors caused creditor to purchase and install a natural gas generator** to partly mitigate Creditor's damages, as described in this proof of claim.") (emphasis added).)

Notwithstanding how many documents Mr. Engel attaches or how many pages of briefing he submits, the claim set forth in his proof of claim is precisely the type of claim that this Court (and Judge Gilliam on appeal) held was preempted in *Gantner*.  *Gantner*, 2021 WL 1164816, at *4-5 (affirming this Court's dismissal of claims that sought to impose liability on PG&E because of alleged negligence in constructing and maintaining its grid that allegedly created "the underlying conditions necessitating the PSPS event.")

Nor could Mr. Engel even plausibly claim that PG&E carried out a PSPS event in a wrongful manner that caused *him* harm from the loss of electricity, such as the loss of food in his freezer.  His proof of claim alleges that he installed a generator because he *anticipated* that there would be an excessive number of PSPS events due to the allegedly inadequate design and upkeep over decades of PG&E's grid, a claim that is squarely barred by *Gantner*.  As Mr. Engel repeatedly states, he purchased this generator "specifically for self-defense mitigation." (*See, e.g.*, Engel Response at 10.)  Mr. Engel has not borne the inconvenience of *any* PSPS de-energization—much less a de-energization of his home that was in contravention of CPUC standards—because he bought a generator that has kept his power on.

## III.  CONCLUSION

For the foregoing reasons, and the reasons set forth in PG&E's objections, PG&E respectfully requests that the Court disallow the Claims.

Dated: June 13, 2021

**CRAVATH, SWAINE & MOORE LLP**
**KELLER BENVENUTTI KIM LLP**

/s/ *Omid H. Nasab*
Omid H. Nasab

*Attorneys for Debtors and Reorganized Debtors*