**EXHIBIT A**

David P. Addington
298 Saint James Drive
Piedmont, CA 94611

(415) 606-6552
david@cachamp.com

In pro per

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

In re:

**PG&E CORPORATION,**

-and-

**PACIFIC GAS AND ELECTRIC COMPANY.**

Debtors.

Affects Both Debtors

Case No. 219-30088 (DM)

Judge Dennis Montali

Chapter 11

(Lead Case) (Jointly Administered)

**CREDITOR DAVID P. ADDINGTON'S RESPONSE TO THE REORGANIZED DEBTORS' SEVENTY-NINTH OMNIBUS OBJECTION TO CLAIMS (BOOKS AND RECORDS CLAIMS); DECLARATION OF DAVID P. ADDINGTON**

**Response Deadline:**
**June 16, 2021, 4:00 p.m. (PT)**

**Hearing Information:**
Date: June 30, 2021
Time: 10:00 am (Pacific Time)
Place: (Telephonic Appearances Only)
       United States Bankruptcy Court
       Courtroom 17, 16th Floor
       San Francisco, CA 94102

David P. Addington responds to the Debtors' Seventy-Nine Omnibus Objection to his Claim number 3093 as set forth below.

1.   **Addington does not believe his claims appears on the Debtors'**
**books and records because the Debtors have not recognized his claim.**

The basis of Addington's claim is the failure of the PG&E Corporation to compensate Addington for accessing Addington's real property. Before June 1, 2017, PG&E had an easement permitting it to transmit electricity over Addington's property at 298 Saint James Drive, Piedmont, CA 94611. Before June 1, 2017, PG&E and Addington were unable to agree to terms regarding the continued use of the easement. Addington terminated the easement on June 1, 2017.

Since June 1, 2017, PG&E has continued to transmit electricity over Addington's property but has done so without permission. PG&E's actions constitute a trespass, among other things, entitling Addington to appropriate compensation.

Addington filed a proof of claim identified as Claim 3093 seeking compensation of $3,548,941.93 for PG&E's use of the property from June 2, 2017, through the Chapter 11 proceeding on January 29, 2019. The amount is based on Addington's investigation and calculation of an appropriate charge for the transmission of electricity.

The details of Addington's claim are attached to his declaration accompanying this Response.

2.   **Addington requests the Court set an evidentiary hearing on his**
**claim pursuant to Local Rule of Bankruptcy Court 3007-1(b).**

Addington requests the Court set an evidentiary hearing to determine the amount of his claim.

### Declaration of David P. Addington

I, David P. Addington, declare:

1.   I am the claimant for Claim 3093. I have personal knowledge of the facts in this matter, and I will testify to them if called upon to do so.

2.   I own the real property located at 298 Saint James Drive, Piedmont, CA 94611.

3.   The property has a has two electric transmission towers, each of which carry 6 power transmission lines.

4.   The towers and lines were owned by PG&E, as successor Grantee to Great

Western Power Company under the terms of an easement dated December 9, 1908, and recorded on March 17, 1909. Upon my purchase of 298 Saint James on November 10, 2015, I became successor to The Realty Syndicate, as Grantor. A true copy of the former easement is as attached as Exhibit A.

5.     PG&E and I became involved in a dispute over the continuing use of the easement in 2017. We were unable to resolve the dispute and I exercised my right to terminate the easement on June 1, 2017. The termination rights are highlighted in Exhibit A. A true copy of the Termination of Easement I recorded in Alameda County is attached as Exhibit B.

6.     After I terminated the easement, I investigated the electric transmission costs and charges typical for the transmission of electricity over property. Based on my investigation and calculations; I submitted a claim for the time period from the termination of the easement to the bankruptcy filing for $3,548,941.93. These calculations are shown on Exhibit C.

7.     Since the submission of the claim, I have continued to investigate how transmission charges are calculated, in California, for PG&E and for the 298 towers specifically. Based on my investigation, I have calculated that approximately $16.7 million dollars since June 2, 2017, has been charged for transmission across the 298 towers. These calculations are shown on Exhibit D

8.     I believe PG&E will deny any liability for this claim and claim it owes nothing for its continuing trespass over my property. I request the Court set an evidentiary hearing to consider the facts and determine appropriate compensation.

9.     I am seeking appropriate compensation for PG&E's use, without my permission, of my property for 607 days pre-petition, Additionally, I have an administrative claim for the 519 days of bankruptcy proceeding, and an ongoing claim for the 350 days since the proceedings and into the future.

I make this declaration under penalty of perjury, and I signed this declaration at Piedmont, California on June 16, 2021.

David P. Addington

189

Easement Dec 9 1908
Recorded March 1?, 1909

In presence of]          Anthony D. Verra.    (seal)
            * * ]          Blanche Frances Verra    (seal)

State of California ]
County of Alameda   ] ss

                                On this 8th day of
March in the year one thousand nine hun-
dred and nine (1909) before me A. E. Gartner
a Notary Public in and for said Alameda
County, residing therein, duly commissioned
and sworn, personally appeared Anthony D
Verra and Blanche Frances Verra; his wife
known to me to be the persons described
in, and who executed, and whose names
are subscribed to the within and foregoing
instrument, and they acknowledged to me
that they executed the same.

                          In Witness Whereof, I have hereunto
set my hand and affixed my Official Seal, the
day and year in this certificate first above
written.

(Notarial)          A. E. Gartner Notary Public
( seal ) in and for said County of
                                State of California

Recorded at request of Frank W. Mott Co.
Mar 9-19-09 - at 32 min past 3. P. m.
M 290036   260
Co P
                                        A. A. Dunn
C. A. F.                          County Recorder.

The Realty Syndicate | This Indenture, made by and
            to              | between The Realty Syndicate
Great Western Power Co. | a corporation organized and
                              | existing under and by vir-
tue of the laws of the State of California, and
having its principal place of business, in the City
of Oakland, County of Alameda, in said State, the
party of the first part, and Great Western Power
Company, a corporation organized and existing
under and by virtue of the laws of the State of
California and having its principal place of

Case: 19-30088   Doc# 10951-1   Filed: 06/24/21   Entered: 06/24/21 18:49:58   Page 5
of 29

578 DEEDS P 189

A   1 of 9

Contra Costa, in said State, the party of the second part, Witnesseth:—

That the party of the first part, for and in consideration of the sum of Five (5) Dollars in Gold Coin of the United States of America to it in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, does hereby grant unto the said party of the second part, its successors and assigns, upon the conditions and for the purposes hereinafter set forth, an easement over a tract of land of a uniform width of sixty (60) feet situated in the County of Alameda, State of California, the center line of which said strip of land sixty (60) feet in width, over which said easement is hereby granted, being more particularly described as follows, to wit:

Commencing at a point on the Western line of that certain 30 acre tract of land heretofore conveyed by The Real Estate Combine to The Realty Syndicate by deed dated May 23, 1899, and recorded in Liber 694 of Deeds at page 185, Alameda County Records, said line being also the Eastern boundary line of Lot 5 in Block 8, as said lot and block are delineated and so designated on that certain map entitled "Map of East Oakland Heights" filed in the office of the Recorder of Alameda County, California, October 6, 1890, distant thereon South 30° 44′ East 30 feet from the most Northern corner of the said Lot 5; and running thence South 66° 20′ East 344 feet to a point 30 feet Northwesterly at right angles from the Northwestern boundary line of Fourth Avenue Terrace as said boundary line is delineated upon that certain map entitled Map of Fourth Avenue Terrace filed in the office of the Recorder of said Alameda County, May 6, 1907; thence parallel with said boundary line of said Fourth Avenue Terrace, [...] feet to a station; thence

at right angles from the Southeastern bound-
ary line of that certain tract of land containing
14.21 acres heretofore conveyed by Piedmont Build-
ing Association to The Realty Syndicate by deed
dated November 5, 1906, and recorded in Liber
1204 of Deeds, at page 22, Alameda County Records;
thence North 49° 56' East 198.7 feet to a station;
thence North 70° 42' East, at 1140 feet intersect
the line dividing that certain 116.30 acre
tract firstly described in deed from Joseph
C. Alexander to Bridget Feeney by deed dated
February 17, 1862, and recorded in Liber "L" of
deeds at page 672 Alameda County Records
from that certain 7.386 acre tract heretofore
conveyed by Geo. and Carrie R. Sterling to
The Realty Syndicate by deed dated January 15,
1903, and recorded in Liber 875 of Deeds at
page 214, Alameda County Records, distant
thereon North 21° East 47 feet from the most
Southern corner of said 7.386 acre tract, 31.44
feet to station; thence North 43°10' East 8.18 feet
to station; thence North 15°38' East 423 feet to
a point in the center of the Eastern branch
of Sausal Creek commonly known as Palo
Seco Creek, about 400 feet Southeasterly from
its confluence with Sausal Creek, on the north-
eastern boundary line of that certain 223.88
acre tract heretofore conveyed by the Pacific
Mutual Life Insurance Company to The Realty
Syndicate by deed dated May 20, 1908, and record-
ed in Liber 1499 of Deeds at page 67, Alameda County
Records, at 75 feet on course North 49° West 2.30
chains of last said boundary line.

Containing 11.58 acres and being portions
of the tracts of land deeded as follows:
The Real Estate Combine to The Realty Syn-
dicate dated May 23, 1899, and recorded in Liber
694 of Deeds at page 185, Alameda County Records
Kirkham Havens Incorporated to The Realty
Syndicate dated January 3, 1907, and recorded in

Records.

Piedmont Building Association to The Realty Syndicate dated November 5, 1906, and recorded in Liber 1284 of Deeds, at page 22 Alameda County Records.

Joseph Alexander to Bridget Feeney dated February 17, 1862, and recorded in Liber K of Deeds, at page 672, Alameda County Records.

George and Carrie R. Sterling to The Realty Syndicate, dated January 15, 1903, and recorded in Liber 875 of Deeds at page 214, Alameda County Records.

Pacific Mutual Life Insurance Company to The Realty Syndicate by deed dated May 20, 1908, and recorded in Liber 1499 of Deeds at page 67, Alameda County Records.

Also: A strip of land sixty (60) feet in width, the center line of which is described as follows, to wit:

Commencing at a point on the Southwestern boundary line of that certain 412 acre tract of land heretofore conveyed by The Realty Syndicate to George Sterling by deed dated October 20, 1906, and recorded in Liber 1313 of Deeds at page 147, Alameda County Records, distant thereon North 41° 54' West 397 feet from Stake 120, at the most northern corner of that certain 474 acre tract of land heretofore conveyed by The Realty Syndicate, a corporation, to F. M. Smith, by deed dated March 22, 1907, and recorded in Liber 1314 of Deeds at page 427, Alameda County Records, and running thence South 53° 25' West 962.46 feet; thence South 15° 30' West 2126.40 feet to a point on the Northern boundary line of the aforesaid 474 acre tract, distant thereon North 77° 10' West 9 feet from stake 98 as noted in the last said deed.

Containing 3.98 acres and being a portion of that certain 1980 acre tract of land heretofore conveyed by John B. Miener

dated February 1st, 1905, and recorded in Liber 1024 of Deeds at page 321, Alameda County Records.

This grant is made upon the following express conditions and reservations, to wit.

First. Said easement is hereby granted for the purpose only of enabling said party of the second part to erect and maintain upon said strip of ground sixty feet in width two lines of steel towers, which said steel towers shall be located upon said strip of land not less than three hundred and fifty (350) feet apart, for the purpose of suspending and stringing wires thereon and supported thereby for the transmission and distribution of electricity, with all necessary and proper cross arms, braces, connections, fastenings and other appliances for use in connection therewith, provided that no wire shall be suspended or strung upon or between said towers at a distance of less than thirty (30) feet from the surface of said sixty foot strip of ground hereinbefore described; and provided further that where said wires cross any railroad hereafter constructed across said strip of ground sixty feet in width, then in that case said party of the second part shall maintain said wires at least forty (40) feet above the rails of said railroad at said crossing.

Second. Said party of the first part hereby reserves the right to cross said sixty foot strip of ground hereinbefore described at any point or points with such streets, avenues and highways and railroad lines as it may desire,

provided that in case of the opening of any street, highway or avenue, or construction of any railroad line across said sixty foot strip, it shall become necessary to move any tower erected under the terms of this grant

A 5 of 9

case the actual cost of moving said tower
shall be borne by the party of the first part.

Third. Said party of the first part also
hereby reserves a right of way across said
strip of ground sixty feet wide for the use of
the Oakland Traction Company, a corporation
organized and existing under and by virtue
of the laws of the state of California, and also
a right of way across said strip of ground
sixty feet in width for the use of the San
Francisco, Oakland and San Jose Consolidated
Railway, a corporation organized and existing
under and by virtue of the laws of the state
of California.

Fourth. Said party of the first part here
by reserves the right to use said strip of
land sixty feet in width for all purposes in
cluding that of mining and agriculture, and
the said party of the second part, in the en
joyment of the rights hereby granted, shall
avoid so far as it reasonably can interfer
ing with the use by the party of the first
part of said strip of land for any and all pur
poses. The party of the second part shall have
the right of patrolling said line of towers
and wires located upon said sixty foot strip
of ground, and shall also have the right to
erect, maintain and use gates in all fences
which now cross or which shall hereafter
cross said sixty foot strip of ground, but said
party of the second part shall not have the
right to fence or inclose said strip of ground
sixty feet in width over which said easement
is hereby granted.

Any violation of the conditions
of this grant shall terminate and extinguish
the easement hereby granted.

In Witness Whereof, said party of the
first part has executed these presents this
ninth day of December, 1908.

Case: 18-30088   Doc# 10951-1   Filed 08/04/21   Entered 08/04/21 16:45:48   Page
10 of 29

A 6 of 9

The Realty Syndicate
By George E. Pratt
Third Vice President.
(Corporate seal.) By Saml J Taylor
Secretary

State of California }
County of Alameda } ss:

On this ninth day of December, in the year of our Lord One Thousand Nine Hundred and Eight, before me, M. K Jacobus, a Notary Public in and for said County and State, residing therein, duly commissioned and sworn, personally appeared George E. Pratt, known to me to be the 3rd Vice President and Samuel J. Taylor, known to me to be the Secretary of the Corporation that executed the within instrument, and acknowledged to me that such corporation executed the same.

In Witness Whereof, I have hereunto set my hand and affixed my Official Seal, at my office in the County and State aforesaid, the day and year in this certificate first above written.

(Notarial seal) M. K. Jacobus, notary Public in and for said County of Alameda State of California

Be it Resolved that this corporation grant and convey to the Great Western Power Company, a California corporation, an easement for its electric tower transmission line and for other purposes in connection therewith; and

Be it further Resolved that George E. Pratt the Third Vice President, and Samuel J. Taylor the Secretary, be, and they are hereby authorized, empowered and directed for and in behalf of this corporation, and as its corporate act and deed to make, execute, acknowledge and deliver to said Great Western Power Company an instrument in writing in such form as

A 7 of 9

fit, granting to said Great Western Power Company such rights and easement as they may deem necessary or proper for use by said Great Western Power Company, its successors or assigns, in or to the lands or any thereof of this corporation, all acts and deeds of said Third Vice President and Secretary, and each of them, being hereby ratified, approved and confirmed.

I, Samuel J. Taylor, Secretary of The Realty Syndicate, a California corporation, do hereby certify that the foregoing resolution was duly adopted at a duly and regularly called and held meeting of the Board of Directors of said corporation, on the ninth day of December, 1908, at which meeting more than a majority of the Directors of said corporation were present and duly voted in favor of said resolution and that said resolution now stands upon the minutes of said corporation and is now in full force and effect.

In Witness Whereof, I have hereunto on this ninth day of December, 1908, signed my name as Secretary of said corporation, and affixed hereto the corporate seal of said corporation.

Sam'l J. Taylor,
(corporate seal)     Secretary of the
                              Realty Syndicate

State of California }
                              } ss
County of Alameda  }

On this ninth day of December, in the year of our Lord One Thousand Nine Hundred and Eight, before me, M. K. Jacobus, a Notary Public in and for said County and State, residing therein, duly commissioned and sworn, personally appeared Samuel J. Taylor, Secretary of The Realty Syndicate, a corporation, known to me to be the person described in and whose name is subscribed to the within instrument, and he acknowledged to me that

A 8 of 9

he executed the same as such Secretary.

In Witness Whereof; I have hereunto set my hand and affixed my Official Seal, at my office in the County and State aforesaid, the day and the year in this certificate first above written

Notarial (seal) — M. A. Jacobus Notary Public in and for the County of Alameda, State of California

Recorded at request of Guy C. Earle at 1 min past 11 a.m. Mar 17 1909

m 29. p 59      $20
L.P.
                              [signature]
                              County Recorder.
C.B.

| F. M. Smith et al | This Indenture, made |
|---|---|
| to | by and between F. M. |
| Great Western Power Co. | Smith and Evelyn E. |

Smith, his wife, both of the City of Oakland, County of Alameda, State of California, the parties of the first part, and Great Western Power Company, a corporation organized and existing under and by virtue of the laws of the State of California and having its principal place of business in the City of Richmond, County of Contra Costa, in said State, the party of the second part,

Witnesseth:

That the parties of the first part, for and in consideration of the sum of Five (5) Dollars in Gold Coin of the United States of America, to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, do hereby grant unto the said party of the second part, its successors and assigns, upon the conditions and for the purposes hereinafter set forth, an easement over a tract of land of a uniform width of sixty (60) feet situated in the County of Alameda, State of California, the center line of which said strip of land sixty (60) feet in width, over which

A 9 of 9

Recording Requested By
and When Recorded Mail to:

David P. Addington
298 Saint James Drive
Piedmont CA 94611





2017119659          06/01/2017 04:19 PM
OFFICIAL RECORDS OF ALAMEDA COUNTY
STEVE MANNING
RECORDING FEE:                24.00

4      PGS

# TERMINATION OF EASEMENT

THIS TERMINATION AND EXTINGUISHMENT OF EASEMENT is made this First day June 2017, by David P. Addington, hereinafter referred to as "Grantor".

WHEREAS, Grantor is successor-in-interest to The Realty Syndicate interests in Grantor's property commonly known as 298 Saint James Drive, Piedmont CA 94611 (the "Land"), which is described in Exhibit "A" and depicted on Exhibit "B" as parcel 17.

NOW, THEREFORE,

1.     Grantor hereby terminates and extinguishes that easement as shown on the map of record and as recorded May 17, 1909 in book 1578 of Deeds, pages 189 of said county, as it relates to Grantor's property.

IN WITNESS WHEREOF, the party hereto has executed this instrument the day and year first above written.

GRANTOR:

David P. Addington

B   1 of 4

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ Alameda _____ )

On _June 01, 2017_ before me, _Patrick Siu, Notary public_
(insert name and title of the officer)

personally appeared _David Preston Addington_.
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

PATRICK SIU
Notary Public - California
Alameda County
Commission # 2154970
My Comm. Expires Jun 24, 2020

Signature _____ (Seal)

# Exhibit "A"
# Legal Description

The property in this report is situated in the State of California, County of Alameda, City of Piedmont, described as follows:

PARCEL ONE:

LOTS 112 AND 113, MAP OF ST. JAMES WOOD, FILED OCTOBER 16, 1926, MAP BOOK 10, PAGE 89, ALAMEDA COUNTY RECORDS.

PARCEL TWO:

PORTION OF LOT 114, MAP OF ST. JAMES WOOD, FILED OCTOBER 16, 1926, MAP BOOK 10, PAGE 89, ALAMEDA COUNTY RECORDS, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE EASTERN LINE OF ST. JAMES DRIVE, WITH THE SOUTHEASTERN LINE OF LOT 114, AS SAID DRIVE AND LOT ARE SHOWN ON SAID MAP; RUNNING THENCE ALONG SAID LINE OF ST. JAMES DRIVE, BEING ALONG THE ARC OF A CIRCLE HAVING A RADIUS OF 245 FEET (THE CENTER OF WHICH CIRCLE BEARS SOUTH 82° 22 ' 46 " WEST 245 FEET DISTANT) NORTHERLY A DISTANCE OF 26.50 FEET; THENCE NORTH 56° 52 ' 55 " EAST 153.86 FEET TO THE NORTHEASTERN LINE OF LOT 114; THENCE ALONG THE LAST MENTIONED LINE SOUTH 36° 54 ' EAST 27.50 FEET; THENCE ALONG THE SAID SOUTHEASTERN LINE OF LOT 114, SOUTH 57° 53 ' 37 " WEST 165.80 FEET TO THE POINT OF BEGINNING.

A.P.N. : 051-4813-017



ALAMEDA, CA  Document:ASSESSOR_MAP 051.4813

Printed on:10/6/2015 9:36 AM

Page:1 of 1

Exhibit C

# Transmission Charge

## 298 Saint James Drive

| | | | |
|---|---|---|---|
| Accounts served by substation X | | 54,000 | Exhibit A |
| Average Electric Bill | $ | 97.14 | Exhibit B |
| Average cost per kw | $ | 0.206 | Exhibit C |
| Average kw per bill | | 472 | Calculated = B/C |
| Kw monthly substation X | | 25,463,883.50 | Calculated = Average kw * A |
| PG&E charge per kw to Third parties for Transmition | | $0.00707470 | Exhibit D |
| Monthly transmission charge for substation X | $ | 180,149.34 | Calculated = D * Kw Monthly |
| Daily Transmission charge | $ | 6,004.98 | Calculated = Monthly/30 |
| _Total Due_ | $ | _3,548,941.93_ | Calculated = Daily Charge * 591 |
| Easement Termination | | 6/2/2017 | |
| PG&E Bankruptcy Filing | | 1/14/2019 | |
| Days between | | 591 | |
| Recorded Termination of Easement | | | Exhibit E |
| Terminted Easement (Termination Rights Highlighted) | | | Exhibit F |



**Pacific Gas and Electric Company**

East Bay Energy Solutions & Service
1850 Gateway Blvd. Rm 6051
Concord. CA 94520

February 22, 2016

**Substation Update regarding
ongoing electric
work in your neighborhood**

«CUSTOMER_NAME»
OR CURRENT OCCUPANT
«PREM_ADDRESS1»
«PREM_CITY», «PREM_STATE» «PREM_POSTAL»

Dear «CUSTOMER_NAME»:

**Pacific Gas and Electric Company (PG&E) is working to upgrade our substation in your community.** As part of our commitment to communicate our work clearly and effectively, PG&E will be sending periodic updates concerning the substation upgrades occurring within your neighborhood. The substation, known as Substation X, is located at 3701 Park Boulevard Way in Oakland. Substation X is an important link that provides power to approximately 54,000 customers, including hospitals, fire stations, and police stations within the Oakland community. These proactive improvements will offer increased capacity and enhanced reliability to your electric service. Upgrading our infrastructure is part of our commitment to provide customers with safe and affordable energy.

**Construction Update**
As of today, the newly upgraded switchgear has been successfully placed within the confines of the substation. PG&E crews have now begun the next phase of installing the electrical cables from inside the substation into the upgraded manholes along its perimeter. This is a key component that brings together the construction that took place during the initial phases of the work.

Beginning late February and throughout March, PG&E will need to close various sections along the perimeter of Substation X, primarily along Park Boulevard in order for our crews to safely pull in and pull out cable inside the manholes. Below is the estimated construction timelines:

**Estimated Construction Timeline:**
- February 29 through March 14: Park Blvd lane AND sidewalk closure (Traffic Control Plan 14 & 14a)
- March 21 through March 25: Park Blvd sidewalk closure ONLY (Traffic Control Plan 14 & 14a)
- March 12 through March 13: Park Blvd intersection – weekend work only (Traffic Control Plan 13 & 13b)

In an effort to minimize disruptions to the community during this construction phase, **work will be restricted to the hours of 9am – 7pm**. Crews may begin mobilizing as soon as 8am; however mechanical equipment will not be turned on until 9am.

Please note these closures will not deter motorists from entering any residential streets. PG&E has set up special detours, and at times, assigned the Oakland Police Department to be on-site to help monitor all traffic controls. Below are diagrams of all the special detour signs and routes that will be set in place during the construction work.

Sub Exhibit B

# NEWS RELEASE
### BUREAU OF LABOR STATISTICS
U.S. DEPARTMENT OF LABOR




**For Release: Tuesday, February 20, 2018**

**18-284-SAN**

WESTERN INFORMATION OFFICE: San Francisco, Calif.
Technical information: (415) 625-2270  BLSinfoSF@bls.gov  www.bls.gov/regions/west
Media contact: (415) 625-2270

## Average Energy Prices, San Francisco-Oakland-Hayward – January 2018

Gasoline prices averaged $3.302 a gallon in the San Francisco-Oakland-Hayward area in January 2018, the U.S. Bureau of Labor Statistics reported today. Assistant Commissioner for Regional Operations Richard Holden noted that area gasoline prices were higher than last January when they averaged $2.848 per gallon. San Francisco area households paid an average of 20.5 cents per kilowatt hour (kWh) of electricity in January 2018, higher than the 18.9 cents per kWh paid in January 2017. The average cost of utility (piped) gas at $1.390 per therm in January was 3.4 cents less than the $1.424 per therm spent last year. (Data in this release are not seasonally adjusted; accordingly, over-the-year-analysis is used throughout.)

At $3.302 a gallon, San Francisco area consumers paid 27.2 percent more than the $2.596 national average in January 2018. A year earlier, consumers in the San Francisco area paid 18.2 percent more than the national average for a gallon of gasoline. The local price of a gallon of gasoline has ranged from 7.6 to 31.2 percent above the national average in the month of January during the past five years. (See chart 1.)



Chart 1. Average prices for gasoline, San Francisco-Oakland-Hayward and the United States, 2014-2018 (as of January)

SOURCE: U.S. Bureau of Labor Statistics.

By George Avalos | gavalos@bayareanewsgroup.com | Bay Area News Group
PUBLISHED: January 5, 2016 at 10:08 am | UPDATED: August 11, 2016 at 10:47 pm

PG&E is ringing in the new year with an increase in monthly gas and electricity bills that will rise at a faster pace than the local inflation rate.

The average residential bill of $137.66 for combined gas and electricity costs is increasing to $147.21 a month, Pacific Gas & Electric said Tuesday. The increase works out to 6.9 percent, or $9.55 a month for gas and electricity.

"That still is less than the national average combined gas and electricity bill," a PG&E spokesman said. The national average for gas and electricity bills is $194.33 a month, which is 32 percent higher than the new average residential bill for PG&E.

It's possible that the higher monthly power bills will pinch the budgets of consumers in the utility giant's territory.

"This is more money going out of my pocket," said Miguel Martinez, a San Jose resident and painter by trade who lives with his three children. "I'm on a very tight budget. I'm limited in what I can spend."

Monthly electricity bills will rise 8.5 percent, increasing $7.58 from the previous $89.56 to a new average of $97.14, PG&E said. The average electricity bill in the United States is $125.22 a month.

Gas bills will rise 4.1 percent, increasing $1.97 a month from the prior $48.10 to a new average of $50.07. The average gas bill in the U.S. is $69.11 a month, PG&E said.

Consumer groups quickly lambasted PG&E's higher monthly bills.

"PG&E is trying to underplay what will really be an onerous rate increase for many people," said Mindy Spatt, a spokeswoman for The Utility Reform Network, a consumer group. "If you are an executive at PG&E, it's easy to say that it's only $10 a month. But if you are a senior on fixed income, it's not all that easy to say that."

Another group, the Sierra Club, urged ratepayers to cut their ties to PG&E and either use alternative forms of power or enter into organizations that are providing power to compete against PG&E.

"Throughout the PG&E service territory, you are seeing more and more opportunities to no longer use PG&E," said Evan Gillespie, director of the Sierra Club's My Generation Campaign. "People can use solar in the home, or benefit from the creation of community choice energy programs."

Marin Clean Energy, Clean Power San Francisco and efforts in Sonoma County are examples of consumers seeking alternatives to PG&E.

Sub Exhibit D



# PACIFIC GAS AND ELECTRIC COMPANY

## Transmission Owner Tariff (TO Tariff)

## FERC Electric Tariff Volume No. 5

Effective March 1, 2019



## APPENDIX II:

## ACCESS CHARGES FOR WHOLESALE TRANSMISSION

|                                             | Per kWh        |
| ------------------------------------------- | -------------- |
| High Voltage Access Charge                  | See ISO Tariff |
| Low Voltage Access Charge                   | $0.009012      |
| High Voltage Utility-Specific Access Charge | $0.007217      |

High Voltage Wheeling Access Charge

| High Voltage Wheeling Access Charge | See ISO Tariff |
| ----------------------------------- | -------------- |

Low Voltage Wheeling Access Charge

| High Voltage Wheeling Access Charge | See ISO Tariff |
| ----------------------------------- | -------------- |
| Low Voltage Wheeling Access Charge  | $0.009012      |

Recording Requested By
and When Recorded Mail to:

David P. Addington
298 Saint James Drive
Piedmont CA 94611



2017119659     06/01/2017 04:19 PM
OFFICIAL RECORDS OF ALAMEDA COUNTY
STEVE MANNING
RECORDING FEE:          24.00

4     PGS

# TERMINATION OF EASEMENT

THIS TERMINATION AND EXTINGUISHMENT OF EASEMENT is made this First day June 2017, by David P. Addington, hereinafter referred to as "Grantor".

WHEREAS, Grantor is successor-in-interest to The Realty Syndicate interests in Grantor's property commonly known as 298 Saint James Drive, Piedmont CA 94611 (the "Land"), which is described in Exhibit "A" and depicted on Exhibit "B" as parcel 17.

NOW, THEREFORE,

1.        Grantor hereby terminates and extinguishes that easement as shown on the map of record and as recorded May 17, 1909 in book 1578 of Deeds, pages 189 of said county, as it relates to Grantor's property.

IN WITNESS WHEREOF, the party hereto has executed this instrument the day and year first above written.

GRANTOR:

David P. Addington

Order No.: **P-119312**
Amend ( Version 5 )

# Exhibit "A"
## Legal Description

The property in this report is situated in the State of California, County of Alameda, City of Piedmont, described as follows:

PARCEL ONE:

LOTS 112 AND 113, MAP OF ST. JAMES WOOD, FILED OCTOBER 16, 1926, MAP BOOK 10, PAGE 89, ALAMEDA COUNTY RECORDS.

PARCEL TWO:

PORTION OF LOT 114, MAP OF ST. JAMES WOOD, FILED OCTOBER 16, 1926, MAP BOOK 10, PAGE 89, ALAMEDA COUNTY RECORDS, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE EASTERN LINE OF ST. JAMES DRIVE, WITH THE SOUTHEASTERN LINE OF LOT 114, AS SAID DRIVE AND LOT ARE SHOWN ON SAID MAP; RUNNING THENCE ALONG SAID LINE OF ST. JAMES DRIVE, BEING ALONG THE ARC OF A CIRCLE HAVING A RADIUS OF 245 FEET (THE CENTER OF WHICH CIRCLE BEARS SOUTH 82° 22 ' 46 " WEST 245 FEET DISTANT) NORTHERLY A DISTANCE OF 26.50 FEET; THENCE NORTH 56° 52 ' 55 " EAST 153.86 FEET TO THE NORTHEASTERN LINE OF LOT 114; THENCE ALONG THE LAST MENTIONED LINE SOUTH 36° 54 ' EAST 27.50 FEET; THENCE ALONG THE SAID SOUTHEASTERN LINE OF LOT 114, SOUTH 57° 53 ' 37 " WEST 165.80 FEET TO THE POINT OF BEGINNING.

A.P.N. : 051-4813-017



ALAMEDA, CA  Document:ASSESSOR_MAP 051.4813

Printed on:10/6/2015 9:36 AM

Page:1 of 1

194

case the actual cost of moving said tower shall be borne by the party of the first part.

Third. Said party of the first part also hereby reserves a right of way across said strip of ground sixty feet wide for the use of the Oakland Traction Company, a corporation organized and existing under and by virtue of the laws of the State of California, and also a right of way across said strip of ground sixty feet in width for the use of the San Francisco, Oakland and San Jose Consolidated Railway, a corporation organized and existing under and by virtue of the laws of the State of California.

Fourth. Said party of the first part hereby reserves the right to use said strip of land sixty feet in width for all purposes including that of mining and agriculture, and the said party of the second part, in the enjoyment of the rights hereby granted, shall avoid so far as it reasonably can interfering with the use by the party of the first part of said strip of land for any and all purposes. The party of the second part shall have the right of patrolling said line of towers and wires located upon said sixty foot strip of ground, and shall also have the right to erect, maintain and use gates in all fences which now cross or which shall hereafter cross said sixty foot strip of ground, but said party of the second part shall not have the right to fence or inclose said strip of ground sixty feet in width over which said easement is hereby granted.

Any violation of the conditions of this grant shall terminate and extinguish the easement hereby granted.

In Witness Whereof, said party of the first part has executed these presents this ninth day of December, 1908.



_Exhibit D_

# LV TRR Transmission Charge

## Substation X / 298 Saint James Drive

| | | | | | |
|---|---|---|---|---|---|
| Accounts served by substation X | | 54,000 | | | |
| Average Electric Bill | $ | 97.14 | | | |
| Average cost per kw | $ | 0.206 | | | |
| Average kw per bill | | 472 | Calculated = B/C | | |
| Kw monthly substation X | | 25,463,883 | Calculated = Average kw * A | | |
| MWh = Kw/1000 | | 25,464 | | | |
| Total LV TRR per MWh | | 13.33680 | Exhibit I | | |
| Monthly LV TRR for Substation X | $ | 339,607 | Calculated = Monthly/30 | | |
| Average Daily LV TRR | $ | 11,320 | | | |

| | Days In Period | Estimated LVTRR for period |
|---|---|---|
| Easement Termination | 6/1/2017 | |
| Bankruptcy Filing | 1/29/2019 | 607 $ 6,871,376 |
| Effective date | 7/1/2020 | 519 $ 5,875,196 |
| Date of this filing | 6/16/2021 | 350 $ 3,962,078 |
| **Totals** | | 1,476 $ **16,708,651** |



## 1 JAN 2021 ISO Access Charge Rate

| PTO | | Total HV Filed TRR | Total LV Filed TRR | Info Only Combined TRR |
|---|---|---|---|---|
| **PG&E** | Base TRR | 963,941,738 | 1,238,050,771 | 2,201,992,508 |
| | TRBAA | (113,750,453) | (78,300,829) | (192,051,282) |
| | Standby Credit | (4,271,228) | (5,410,788) | (9,682,017) |
| | Total | 845,920,056 | 1,154,339,154 | 2,000,259,210 |
| | Gross Load | 86,552,890 | 86,552,890 | 86,552,890 |
| | Utility Specific Access Charges ($/MWh) | 9.7734 | 13.3368 | 23.1103 |
| | TRR - Eff. Date - Docket# | 1/1/2021 ER19-13 | | |
| | TRBAA - Eff. Date - Docket# | 1/1/2021 ER21-131 | | |
| **SCE** | Base TRR | 1,050,165,251 | 31,942,124 | 1,082,107,375 |
| | TRBAA | (90,700,417) | (353,552) | (91,053,969) |
| | Standby Credit | (7,962,348) | (242,185) | (8,204,533) |
| | Total | 951,502,486 | 31,346,387 | 982,848,873 |
| | Gross Load | 83,511,923 | 83,511,923 | 83,511,923 |
| | Utility Specific Access Charges ($/MWh) | 11.3936 | 0.3754 | 11.7690 |
| | TRR - Eff. Date - Docket# | 1/1/2021 ER19-1553 | | |
| | TRBAA - Eff. Date - Docket# | 1/1/21 ER21-261 | | |
| **SDG&E** | Base TRR | 575,136,094 | 457,544,224 | 1,032,680,318 |
| | TRBAA | (22,488,313) | 857,949 | (21,630,364) |
| | Standby Credit | (9,099,356) | (7,238,908) | (16,338,264) |
| | Total | 543,548,426 | 451,163,265 | 994,711,691 |
| | Gross Load | 18,450,857 | 18,450,857 | 18,450,857 |
| | Utility Specific Access Charges ($/MWh) | 29.4593 | 24.4522 | 53.9114 |
| | TRR - Eff. Date - Docket# | 1/1/2021 ER21-526 | | |
| | TRBAA - Eff. Date - Docket# | 1/1/2021 - ER21-301 | | |
| **Vernon** | Base TRR | 1,973,581 | | 1,973,581 |
| | TRBAA | (24,971) | | (24,971) |
| | Standby Credit | - | | - |
| | Total | 1,948,610 | | 1,948,610 |
| | Gross Load | 1,119,215 | | 1,119,215 |
| | Utility Specific Access Charges ($/MWh) | 1.7411 | | 1.7411 |
| | TRR - Eff. Date - Docket# | 1/1/2021 NJ21-2 | | |
| | TRBAA - Eff. Date - Docket# | 1/1/2021 NJ21-2 | | |
| **Anaheim** | Base TRR | 33,197,617 | | 33,197,617 |
| | TRBAA | (316,330) | | (316,330) |
| | Standby Credit | - | | - |
| | Total | 32,881,287 | | 32,881,287 |
| | Gross Load | 2,290,689 | | 2,290,689 |
| | Utility Specific Access Charges ($/MWh) | 14.3543 | | 14.3543 |
| | TRR - Eff. Date - Docket# | 7/1/2020 ER19-1738 | | |
| | TRBAA - Eff. Date - Docket# | 1/1/2021 NJ21-3 | | |
| **Azusa** | Base TRR | 1,169,755 | | 1,169,755 |
| | TRBAA | (9,818) | | (9,818) |
| | Standby Credit | - | | - |
| | Total | 1,159,937 | | 1,159,937 |
| | Gross Load | 257,416 | | 257,416 |
| | Utility Specific Access Charges ($/MWh) | 4.5061 | | 4.5061 |
| | TRR - Eff. Date - Docket# | 1/1/2021 NJ21-8 | | |
| | TRBAA - Eff. Date - Docket# | 1/1/2021 NJ21-8 | | |