1              UNITED STATES BANKRUPTCY COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                         -oOo-

4    In Re:                        ) Case No. 19-30088
                                   ) Chapter 11
5    PG&E CORPORATION AND PACIFIC  )
     GAS AND ELECTRIC COMPANY,     ) San Francisco, California
6                                  ) Wednesday, June 30, 2021
                         Debtors.  ) 10:00 AM
7    _____ )
                                   ) REORGANIZED DEBTORS' SEVENTY-
8                                    NINTH OMNIBUS OBJECTION TO
                                     CLAIMS (BOOKS AND RECORDS
9                                    CLAIMS) FILED BY PG&E
                                     CORPORATION [10673];
10                                   REORGANIZED DEBTORS' EIGHTY-
                                     FIFTH OMNIBUS OBJECTION TO
11                                   CLAIMS (ADR NO LIABILITY
                                     CLAIMS) FILED BY PG&E
12                                   CORPORATION [10691];
                                     REORGANIZED DEBTORS' EIGHTY-
13                                   SEVENTH OMNIBUS OBJECTION TO
                                     CLAIMS (PLAN PASSTHROUGH
14                                   PROOFS OF CLAIM) FILED BY
                                     PG&E CORPORATION [10697]

15

16              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE DENNIS MONTALI
17             UNITED STATES BANKRUPTCY JUDGE

18   APPEARANCES (All present by video or telephone):
     For the Debtors:           THOMAS B. RUPP, ESQ.
19                              DAVID TAYLOR, ESQ.
                                Keller Benvenutti Kim LLP
20                              650 California Street
                                Suite 1900
21                              San Francisco, CA 94108
                                (415) 496-6723
22
     Also Present:             David P. Addington, Claimant
23
                               Mark Swendsen, Sr., Claimant
24
                               Sandra Pedroia, Claimant
25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17     Court Recorder:             LORENA PARADA

                                       United States Bankruptcy

18                                       Court

                                     450 Golden Gate Avenue

19                                     San Francisco, CA 94102

20

21     Transcriber:               LINDA FERRARA

                                     eScribers, LLC

                                     7227 N. 16th Street

22                                     Suite #207

                                     Phoenix, AZ 85020

23                                   (973)406-2250

24     Proceedings recorded by electronic sound recording;

      transcript provided by transcription service.

25

eScribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    SAN FRANCISCO, CALIFORNIA, WEDNESDAY, JUNE 30, 2021, 10:00 AM

2                                -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Court is now in session.  The Honorable

5    Dennis Montali presiding.  Calling the matter of PG&E

6    Corporation.

7            I'll bring in Mr. Rupp now, Your Honor.

8            THE COURT:  And if Fereshteh Jabbari is on the call

9    and wishes to be heard, please raise your hand.

10           All right.  Good morning, Mr. Rupp.  Can you unmute

11   your mic, please?

12           MR. RUPP:  Good morning, Your Honor.  Thomas Rupp of

13   Keller Benvenutti Kim on behalf of the reorganized debtors.

14   Also with me from Keller Benvenutti Kim today is Mr. David

15   Taylor.  He's more familiar with the ADR process and

16   procedures, so he'll be handling argument with respect to Ms.

17   Pedroia's claim today.

18           THE COURT:  Okay.  Ms. Pedroia is going to be called

19   separately.  She did not -- was unable to hook up by Zoom, so

20   we're going to recall her on the AT&T conference call line

21   right after the Zoom session.

22           So have you heard from Ms. Jabbari on the seventy-

23   ninth omnibus claims objection?

24           MR. RUPP:  I have not, Your Honor.

25           THE COURT:  Okay.  Well, let's start with that.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    That's on the calendar, and I have not seen anything, and I

2    just looked to see if she had checked in on the Zoom call.  So

3    that is a claim that is for 4,185 dollars for goods sold and

4    delivered, and PG&E filed a standard objection under the

5    seventy-ninth omnibus objection.  What do you recommend that we

6    do about that?

7              MR. RUPP:  Well, Your Honor, the only response we

8    received was the email which we attached to our omnibus reply.

9    It doesn't contain any additional information.  I've left

10   several voicemails at the number on Ms. Jabbari's proof of

11   claim, and I have reached out by email to ask her for any

12   additional information as to her claim, and she's not here to

13   provide any further support.  The reorganized debtors request

14   that Ms. Jabbari's informal objection be overruled and her

15   claim be disallowed and expunged.

16             THE COURT:  All right.  And I'll grant that request.

17   I've reviewed her informal claim and the correspondence, and

18   again, she's had ample opportunity to respond.  So you can

19   include -- whether it's a separate order or a part of an

20   omnibus -- I'll leave that to you but Ms. Jabbari's claim which

21   I believe is claim 7154 will be disallowed.

22             Now, Ms. Parada, has Mr. Swendsen checked in on Zoom?

23             THE CLERK:  Yes.  I believe so, Your Honor.

24             THE COURT:  All right.  Let's bring Mr. Swendsen into

25   the room.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1            And Mr. Rupp, I'm prepared to go with Mr. Swendsen

2    next; you're handling that, right?

3            MR. RUPP:  I agree, Your Honor.

4            THE COURT:  Okay.

5            MR. RUPP:  Mr. Swendsen and I did have a conversation

6    last night, and I believe we reached some understanding as to

7    how the objection will proceed, but I won't speak for him.

8            THE COURT:  Okay.  Mr. Swendsen, I see your name on

9    the screen.  Would you unmute your microphone, and if you're

10   inclined to let me see you personally, turn on your camera?

11   There you are.  All right.  I can see you.  Good morning, Mr.

12   Swendsen.

13           MR. SWENDSEN:  Well, good morning, Your Honor.  How

14   are you?

15           THE COURT:  I'm fine, thank you.  Nice to see you.  So

16   you and Mr. Rupp have worked something out for your claim?

17           MR. SWENDSEN:  Well, we did rather late last night.

18   He was very courteous to me.  I want to say that.

19           THE COURT:  Well, that's good.

20           MR. SWENDSEN:  It works -- I've sat in plenty of

21   situations where that was not the case, and nice is better,

22   believe me.

23           There were two points I wanted to make.  Number one,

24   if I did lose this motion, if you can call it that, I wanted to

25   make sure that the Court's order reflected the idea that it

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   would not affect the claims that I made in the Northern

2   California Fires which I understand now is different from this

3   particular matter.

4         THE COURT:  Well, it's a different claim, and it's

5   being administered differently, and the claim that is the

6   subject of today is not in the -- what we call the "fire

7   claims" under the Fire Trust.

8         MR. SWENDSEN:  Right.

9         THE COURT:  So that --

10        MR. SWENDSEN:  I just wanted to make sure that that

11   didn't screw things up for the others because I've had

12   pneumonia since those fires, and I didn't want to go

13   uncompensated for that.

14        The second thing is that --

15        THE COURT:  Let me -- Mr. Swendsen, hold one second.

16   I could only see, unless Mr. Rupp knows more than I do, that

17   you had one other claim not two.

18        MR. SWENDSEN:  I think it depends on how you count it.

19   There were two fires, so I am referring to two claims, but

20   there's, I believe in the way the Court numbers it, it's only

21   one claim.

22        THE COURT:  Mr. Rupp, is that consistent with your

23   understanding?

24        MR. RUPP:  I tried to clear this up with Mr. Swendsen

25   yesterday.  From the claims register, Mr. Swendsen has claimed

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    93659, which is a Kincade Fire claim which is the subject of

2    this objection.  He also has claim number 86428 which has been

3    channeled to the Fire Victim Trust, and I believe -- again, Mr.

4    Swendsen can speak to himself but I believe it's a combination

5    of two fires resulting in the one claim.  Mr. Swendsen is a

6    Santa Rosa native, and as I understand it, he also claims he

7    was effected by the smoke from the Camp Fire, but Mr. Swendsen

8    can speak to that.

9          THE COURT:  Okay.  That seems consistent.  Mr.

10   Swendsen, that seems consistent with my understanding also.

11         MR. SWENDSEN:  Right.  Okay.

12         THE COURT:  So --

13         MR. SWENDSEN:  I think that --

14         THE COURT:  -- all we're talking -- the only thing

15   that's on the docket for today is your claim 93659, and the

16   company's position is it's simply not within this procedure

17   because it's a Kincade Fire claim and it's post-petition, and

18   that's my take, too.  So what would you say that's different

19   about that?

20         MR. SWENDSEN:  All right.  I'm relying, for the first

21   time in fifty years since I was in law school, on the Hadley v.

22   Baxendale doctrine.

23         THE COURT:  Well, good old Hadley.  I have a lower bar

24   number than you, and I studied Hadley v. Baxendale as well, and

25   I don't think I've had occasion to cite it until today.  So

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  what's that have to do with our question of whether it's a

2  priority for bankruptcy purposes?

3        MR. SWENDSEN:  Because the question is was there a

4  cause of action perfected prior to the bankruptcy, as I

5  understand it, and the answer is, yes, there was because they

6  were both, regulatory and by contract, obligated to maintain

7  the safety of their system, which they did not do, and that in

8  itself is a contract violation.  The question is can we get

9  other damages for it, and the reverse side of the coin of the

10  Hadley v. Baxendale holding is that if the purpose of this

11  contract envisions the damages that occurred, then the damages

12  are compensable.  The whole point of having them maintain the

13  safety of their system is to prevent exactly the kind of fires

14  which occurred.

15        And in -- there are a bunch of California cases that

16  say that the intentional conduct has something to do with it

17  and certainly that PG&E has pled guilty to a number of the

18  homicides that occurred as a result.

19        THE COURT:  Yes, but you weren't a victim of the fire

20  that they pled guilty to, were you?

21        MR. SWENDSEN:  The --

22        THE COURT:  You're claiming damages under the Kincade

23  Fire.

24        MR. SWENDSEN:  Right.

25        THE COURT:  The Kincade Fires didn't occur, so

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    let's -- I need to deal with today's docket.  Mr. Rupp, what do

2    you believe I should do with the issue today?

3            MR. RUPP:  I believe that Mr. Swendsen has a pre-

4    petition fire claim which has been channeled to the Fire Victim

5    Trust and he has a post-petition Kincade Fire claim, and the

6    plan which was approved in June of 2020 specifically provides

7    that Mr. Swendsen does not need to file claims with respect to

8    the Kincade Fire and that essentially his claim passes through

9    and he's free to pursue his Kincade Fire claim in any forum, as

10   if the bankruptcy case had not been filed.  So I would propose

11   that his Kincade Fire claim be expunged.

12           THE COURT:  Mr. Swendsen, let me reframe the question

13   differently.  PG&E filed this current bankruptcy on January

14   29th, 2019.  On that day, you did not have any claim against

15   it, did you?

16           MR. SWENDSEN:  Yes, I did.  It was a --

17           THE COURT:  Well, when --

18           MR. SWENDSEN:  -- filing --

19           THE COURT:  What was the dollar amount of your claim

20   then?

21           MR. SWENDSEN:  The dollar amount was not determined at

22   that time.

23           THE COURT:  But you had no cause of -- you couldn't

24   have filed suit against PG&E for the Kincade Fire because the

25   Kincade Fire hadn't occurred.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. SWENDSEN:  No, but I could have filed suit for

2    their breach of contract in not maintaining their safety of

3    their system which, of course, you know, being not determined,

4    nobody would ever do.  But the fact that nobody would ever do

5    that does not baptize their conduct in this which ultimately

6    resulted in multiple deaths but --

7    THE COURT:  But the fact that you keep talking about

8    the multiple deaths is a fact that's irrelevant because those

9    deaths occurred before the bankruptcy.  So they're very

10   relevant and they are -- those claimants have been channeled to

11   the Trust.  You didn't have a claim that's monetarily existent.

12   But look, what do you want to do?  Do you want me -- Mr. Rupp

13   has conceded and the company has conceded that the Kincade Fire

14   occurred post-petition.  You're free to pursue your remedy

15   wherever you want.

16   You can sue in superior court and you can claim all

17   the damages and cite Hadley v. Baxendale and anybody you want

18   and you're free to do what you want.  Why do you think you

19   should be allowed to participate in the money that's available

20   for reorganized company to pay its pre-petition bankruptcy

21   claims?

22   MR. SWENDSEN:  Because there was a pre-petition

23   violation of contract.

24   THE COURT:  Okay.  Okay.  So what do you want me to

25   do?

of 73 | operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corporation and Pacific Gas and Electric Company

1    MR. SWENDSEN:  I can tell which way this wind is

2  blowing, and I know I am going to lose, so I am not going to

3  take your time any more.

4    THE COURT:  No, but you can -- but Mr. Swendsen, maybe

5  you're going to win and I'll tell you:  file; you have a claim

6  here, but you don't have a claim under Kincade.  In other

7  words, you can't have it -- you don't have two fire claims

8  here, leaving aside what we've already talked about that nobody

9  contests.  As to today's events you claim that a right existed

10 pre-petition.

11    MR. SWENDSEN:  Right.

12    THE COURT:  That very same right developed into,

13 matured, what's the word you want, I would say it -- in my

14 mind, the noncontingency of it or the contingency of it became

15 vested when there was the Kincade Fire.  And you can sue in

16 superior court for all of your damages.

17    MR. SWENDSEN:  Okay.

18    THE COURT:  All of your damages.  But you can't do it

19 in both places.  I'm not going to say your theory is so

20 persuasive that you can sue in two places for the same theory.

21 So which do you think is preferable for your claim?

22    MR. SWENDSEN:  I think bankruptcy court is preferable.

23    THE COURT:  Okay.  Well, then what if the bankruptcy

24 court then disallows your claim because you have no damages?

25    MR. SWENDSEN:  Then the world has bitten me one more

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    time and --

2          THE COURT:  Well --

3          MR. SWENDSEN:  -- I'll get on with my life.

4          THE COURT:  That's not -- my goal here isn't to cause

5    you more harm.  It's to give you a day in court.  It would seem

6    to me -- well, let me try it this way.  When the Kincade Fire

7    occurred, what happened to you?  What was the immediate --

8          MR. SWENDSEN:  I --

9          THE COURT:  -- harm that happened?

10         MR. SWENDSEN:  The immediate harm is that I was

11   breathing smoke.  I have had continuously over these multiple

12   fires, dry pneumonia.  It is very difficult for me to -- to

13   breathe.

14         THE COURT:  Okay.  I appreciate that.

15         MR. SWENDSEN:  And so what is the amount that that

16   compensates?  I've got a claim on the two previous fires.  I'm

17   sure that that's going to be compensated at some point in the

18   future, but I -- having received their initial letter to me

19   saying you'd better file something or we're going to get it

20   dismissed, I thought well, you know, I may as well do that and

21   Hadley v. Baxendale came up, and I thought well, I will spring

22   that on the unsuspecting judge.

23         THE COURT:  Well, it seems to me that we're dealing

24   with (audio interference) here that is for measurable claims,

25   and it sounded to me like -- I mean, if your situation never

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    changed when the Kincade Fire occurred, (audio interference)

2    different way then, the day before the Kincade Fire, your

3    damages were in some way; were they exacerbated by the fact of

4    the Kincade Fire?

5         MR. SWENDSEN:  Yes, they were.

6         THE COURT:  Well, then it would seem to me that your

7    day in court, if you have a separate claim -- again I don't

8    take an opinion as to whether you have different claims but I

9    concede the point, the Camp Fire and the Tubbs Fire and the

10   Kincade Fire were three separate events -- I mean, there were

11   more than three, there were several more than three, twenty-

12   one -- but it would seem to me that it makes no sense to

13   administer or adjudicate the claim here when the damages

14   presumably were exacerbated again on Kincade.

15        So I mean, what if we have a trial here and I say

16   okay, yes, on January 29th, you suffered some lung problems

17   that was pre-existing and give you some remedy, whether I could

18   do it or another court, but then that would seem to foreclose

19   your ability to seek the remedy that might have been

20   exacerbated by the Kincade Fire.  That doesn't seem to be in

21   your best interest, frankly.

22        MR. SWENDSEN:  Well, then in that case, I will

23   withdraw it.

24        THE COURT:  Mr. Rupp, I am not trying to negotiate

25   here, but it seems to me that, as you concede, the debtor has

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    to face up against Mr. Swendsen's claims somewhere.  To the

2    extent that he has discrete claims that are administered by the

3    Fire Trust, that's not your personal or your current client's

4    problem; it's the Fire Trustee's problem.  But to the extent

5    that the Kincade Fire creates a different set of rights, they

6    will have to be dealt with one way or the other, but it makes

7    no sense to have them here in the bankruptcy court.  I gather

8    you agree with me on that.

9          MR. RUPP:  I agree, Your Honor, and I believe the plan

10   is very clear on that point.

11         THE COURT:  Mr. Swendsen again, I am not in the

12   business of negotiating with you.  I'm trying to just

13   understand your rights.  If you voluntarily withdraw the claim,

14   that strikes me as not being at all prejudicial to your rights

15   based upon what you've explained.  If you choose not to and I

16   overrule you, there may be more consequences that may not

17   benefit you in the long run, so I prefer that you simply

18   withdraw your claim, but I am not telling you you have to.  I'm

19   telling you that I am inclined to say that your claim is not --

20   what's the word -- that I don't think it's in your best

21   interest to go through the process of asserting and proving

22   your claim if you can prove it, as though it existed on January

23   29th, 2019 knowing that, by your own words, you have suffered

24   more harm later.  It strikes me that it's asking for more

25   problems for you than not.  So my recommendation -- again I'm

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   not your lawyer here either; I'm neither your opponent nor your

2   lawyer -- but if you voluntarily withdraw the claim, you have a

3   right, and you've heard Mr. Rupp concede the point.  You can go

4   file your suit in superior court and do what you want to do.

5           MR. SWENDSEN:  I voluntarily withdraw the claim.

6           THE COURT:  Okay.  Thank you, Mr. Swendsen.

7           Mr. Rupp, then you should go ahead and process that

8   claim that we're talking about for Mr. Swendsen at 93659 is

9   withdrawn on this record.  I'll leave it to you to memorialize

10  it in an appropriate way.  Does that work for you?

11          MR. RUPP:  Yes, Your Honor.  That does work for us.

12  I'll verify with Prime Clerk and all that, but I appreciate

13  that it's withdrawn on the record, but I may ask Mr. Swendsen

14  to withdraw it in writing.

15          THE COURT:  Okay.  And Mr. Swendsen, your colloquy

16  with me is also part of the record here, and I'm not suggesting

17  you have to go to the expense of preparing a transcript but

18  there probably will be a formal written transcript of it on the

19  docket anyway, and so if someday in the future you find

20  yourself standing before a superior court in Sonoma County, the

21  record is clear as to there was no adjudication; there was a

22  voluntary withdrawal of your claim from the pre-petition bundle

23  of claims that the reorganized company is dealing with in this

24  forum.  It's in the forum.  The reorganized company will have

25  to deal with whatever liability you prove up in coming out of

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    the Kincade Fire, okay?

2         MR. SWENDSEN:  Without prejudice is fine.

3         THE COURT:  Yeah, it is without prejudice.  Okay.

4    Thank you for your time.  I appreciate you.

5         MR. SWENDSEN:  Thank you very much.

6         THE COURT:  Hope you (audio interference).  Good luck

7    on the coughing.

8         MR. SWENDSEN:  Thank you.

9         THE COURT:  And I still have a lower bar number than

10   you do.

11        MR. SWENDSEN:  Well, I don't expect that to change.

12        THE COURT:  Not unless you go take another bar, right?

13        MR. SWENDSEN:  The people who are older than you are

14   always going to be older than you and --

15        THE COURT:  That's right.  We'll leave it at that.

16        MR. SWENDSEN:  Yeah.

17        THE COURT:  And I've got to move on.  Thank you, sir.

18        MR. SWENDSEN:  Thank you.

19        THE COURT:  Have a good day.

20        MR. SWENDSEN:  Bye-bye.

21        THE COURT:  All right.  Ms. Parada, let's bring in Mr.

22   Addington, please.

23        Mr. Rupp, you said you're handling Mr. Addington also,

24   right?

25        MR. RUPP:  Yes, Your Honor.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE CLERK:  One moment, Your Honor.  I am bringing him

2  in now.

3    THE COURT:  All right.  Mr. Addington, good morning.

4  I can see your name on the screen, and now I can see you.  Can

5  you please state your name for the record?

6    MR. ADDINGTON:  I'm David Preston Addington.

7    THE COURT:  Good morning.  Welcome to the bankruptcy

8  court.

9    MR. ADDINGTON:  Thank you, sir.

10    THE COURT:  I've reviewed what you've filed.  One of

11  the interesting things about what you filed is that you

12  referred to a large amount of information that you still have,

13  but of course, the file doesn't have it.  So one of the

14  mysteries about the matter that you present, in addition to,

15  not that I everyday get agreements that were recorded in 1909,

16  is that you take the position that you had a right to terminate

17  this easement and you cite the reference to the provision which

18  is -- whether it's in the written version that PG&E produced or

19  the hand --

20    MR. ADDINGTON:  It's in both, sir.

21    THE COURT:  No, no, what I am saying is the "whether"

22  means whether I look at one or the other, it's one sentence and

23  it says, "Any violation of the conditions of this grant shall

24  terminate and extinguish the easement hereby granted".  But you

25  haven't presented me anything that shows me what was the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    violation and was it material and did you, in fact, exercise

2    rights that you were entitled to?  And again, I'm not here to

3    ask you to take a contrary position.  I'm not going to rule

4    against you.  I am going to suggest that Mr. Rupp's proposal

5    that he brief it should come first.

6            You say we should go straight to a damage trial.  I

7    don't even know that you have a right to claims for damages

8    until that's established, and if you do, then the second aspect

9    of the trial would be to determine what the damages are.

10           MR. ADDINGTON:  No, I --

11           THE COURT:  That's what -- am I right, Mr. Rupp?  What

12   do you believe should happen next based upon your proposed

13   briefing schedule?

14           MR. RUPP:  Well, Your Honor, we believe that Mr.

15   Addington's contention that PG&E's easement is extinguished is

16   critical to his claim, and since it is a unique issue that sort

17   of goes beyond the elemental parts of the books and record

18   objection, we would like the opportunity to brief the issue

19   further and provide more of a record for the Court to make that

20   threshold determination as to his claim.

21           THE COURT:  Mr. Addington, let me rephrase the

22   question that I have for you.  You state that essentially PG&E

23   breached the agreement.

24           MR. ADDINGTON:  Yes, sir.

25           THE COURT:  But tell me in simple terms, just

PG&E Corporation and Pacific Gas and Electric Company

1    summary -- not a trial brief; just give me a brief summary --

2    how did they breach it?

3         MR. ADDINGTON:  By refusing to cooperate with my

4    intended use of property, with the land use.  I would like to

5    have a level yard.  I have two towers on the yard.  They're on

6    slightly different elevations, although the wires above are at

7    the same elevations, and they -- PG&E came to me, signed a

8    contract to make my yard level, attached two separate

9    contractor bids, both which the -- that intention and, in fact,

10   made my yard considerably less level.

11        When I came back to them and said look, this won't

12   suffice, I want to make it level, you know, let's determine

13   what is necessary to make that happen, they said we refuse to

14   help you in any way.  And I said --

15        THE COURT:  Well, is it the --

16        MR. ADDINGTON:  -- well, if you do that --

17        THE COURT:  Okay.

18        MR. ADDINGTON:  -- then I'm going to terminate the

19   easement.

20        THE COURT:  So was there a contract that they

21   breached?

22        MR. ADDINGTON:  Well, there was also a contract they

23   breached; yes, sir.

24        THE COURT:  Yes.  But how do I -- that's not in our

25   record here.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. ADDINGTON:  It's not.  I'm happy to add it to your

2  record.

3          THE COURT:  No, no, but it's not a question whether

4  you're happy to or not happy to.  I can't rule in your favor

5  today because I don't know what the allegations are.  Was there

6  a lawsuit ever filed?

7          MR. ADDINGTON:  No, sir.

8          THE COURT:  When did they breach this agreement?

9          MR. ADDINGTON:  Five years ago.

10          THE COURT:  Is it timely to sue for a breach of

11  contract --

12          MR. ADDINGTON:  I don't have any --

13          THE COURT:  -- (indiscernible) bankruptcy.

14          MR. ADDINGTON:  -- I don't have any intention to sue

15  for breach of contract.

16          THE COURT:  Well, I didn't ask you if you have any

17  intention --

18          MR. ADDINGTON:  Yeah.

19          THE COURT:  -- to.

20          MR. ADDINGTON:  Yeah.

21          THE COURT:  You allege that PG&E breached the

22  contract.

23          MR. ADDINGTON:  They did breach a contract.

24          THE COURT:  And sir, I'm asking you if there is time

25  now to assert that breach of contract?  I don't know, but it

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    would seem to me if it's too late to serve the breach of

2    contract, you can't then pull the trigger for something that

3    you can't sue on.

4            MR. ADDINGTON:  Well, sir, I pulled the trigger four

5    years ago.  My remedy was to terminate the easement.

6            THE COURT:  Okay.

7            MR. ADDINGTON:  I told them that that was what I was

8    intending to do if they didn't come with some sort of

9    reasonable proposal.  I have hundreds and hundreds of pages of

10   documents that relate to those discussions.  I believe I

11   followed the terms of the easement as tightly as I certainly

12   could, and they refused --

13           THE COURT:  Okay.

14           MR. ADDINGTON:  -- to cooperate.

15           THE COURT:  Well, the terms, as both can agree, are

16   very brief.  There's one sentence.

17           MR. ADDINGTON:  Yes, sir.

18           THE COURT:  Mr. Rupp, this comes up -- this is not

19   unusual because of the time involved and the history, but it's

20   unusual procedurally because if there were no bankruptcy, it

21   would seem to me Mr. Addington may have had to bring a suit to

22   declare that the easement was void, or maybe PG&E could have,

23   but I take it there's never been any litigation about this.  So

24   we have a claims objection that essentially amounts to a quiet

25   title lawsuit, don't we?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. RUPP:  I believe our position would be that the

2    Court may not need to go that far and can just disallow the

3    claim.  Our position would be that the file -- the recorded

4    termination is not effective as to actually extinguishing

5    PG&E's easement and there --

6          THE COURT:  Okay.  But there is -- but the document

7    does show that the termination that Mr. Addington recorded --

8    and you are correct, Mr. Addington, the date is what it is back

9    there in 2017 -- it's of record.  So doesn't PG&E need to clear

10   the title if it believed if it's correct?  In other words, what

11   if you're correct that Mr. Addington never terminated the

12   easement, never had a right to terminate it -- let's try it

13   this way:  he didn't have a right to terminate it; therefore

14   the public record that shows the easement terminated is a cloud

15   on the easement.  So wouldn't PG&E have to clear that title

16   anyway?

17         MR. RUPP:  If PG&E were to sell or transfer the

18   easement, it may be in PG&E's interest to clear the title.

19   However, it has not yet become urgent for PG&E to do so.

20         THE COURT:  Well, what if Mr. Addington decides to

21   sell his house to a buyer and the buyer says fine, I'm glad to

22   know that there's no easement on this property, so let's get

23   rid of those power lines?  Look, I need to figure out what to

24   do.

25         MR. RUPP:  What --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  I think Mr. Addington's suggestion that we

2  have an evidentiary hearing is wrong.  It's not wrong that we

3  shouldn't have -- let me rephrase that.  I think it's

4  premature, but the question is is it premature?  So what would

5  you, Mr. Rupp, do to put at issue and give Mr. Addington,

6  obviously, an opportunity to oppose your position?  What do you

7  suggest procedurally?

8    I know you talked about a briefing schedule, but

9  should I order you to file a motion for summary judgment on

10  this claim objection?  Or should you phrase it as a quiet

11  title?  And again, I don't want to overstate something if it

12  doesn't need to be, but it seems to me, at the end of the day,

13  one side or the other will win unless there's a mediated

14  result, and PG&E, I can't imagine, would want to win this but

15  also have a terminated easement of record.

16    Now, I could be wrong, and maybe there are people that

17  are smarter than I am at PG&E who believe if they're legally

18  correct and Mr. Addington had no basis to terminate, that it's

19  okay to have a recorded document terminating an easement that

20  was recorded 120 years ago.

21    So again, tell me what you want me to do procedurally,

22  and I'll let Mr. Addington tell me whether he agrees or

23  disagrees with that.

24    MR. RUPP:  Well, Your Honor, I think you phrased it as

25  a motion for summary judgment, and I think that that's roughly

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  what we had in mind just to have his claim denied, and then if

2  we were to prevail on the motion for summary judgment, we would

3  reserve our rights to pursue this issue in state court and

4  actually obtain relief through a quiet title action to actually

5  have the easement removed.

6          THE COURT:  Well, the bankruptcy court --

7          MR. RUPP:  The notice of termination --

8          THE COURT:  The bankruptcy court can quiet title.  I

9  mean, you wouldn't want to do it twice.  Well, okay, so what

10  would your theory of your summary judgment be?

11         MR. RUPP:  It would be essentially that the grant of

12  the easement is permanent and irrevocable, and the terms of the

13  easement that Mr. Addington has cited do not create a right of

14  termination but that Mr. Addington would've had to pursue this

15  in state court or some other forum to get a judicial

16  determination that the easement was extinguished, and that he

17  cannot charge PG&E fees for transfer of electricity until he

18  has done so.

19         THE COURT:  Well again, I want to separate out the

20  question of what Mr. Addington is entitled to if he was

21  entitled to terminate the easement because he says he's

22  entitled to three-and-a-half million dollars and the meter

23  keeps running.

24         MR. RUPP:  Um-hum.

25         THE COURT:  I don't know if he's right or not.  I

PG&E Corporation and Pacific Gas and Electric Company

1   mean, again, it's not -- he may be right; I have no idea.

2           Mr. Addington, if the company has the right as a legal

3   matter to defeat your claim, then it makes no sense for me or

4   you or the company to have a trial about the measure of

5   damages.  So in your mind, because you had suggested that we

6   have an evidentiary hearing, what would be put on as evidence

7   at the evidentiary hearing --

8           MR. ADDINGTON:  Well, sir, I --

9           THE COURT:  -- in your mind?

10          MR. ADDINGTON:  -- I guess I have a misunderstanding

11  as regards what an evidentiary hearing is.  The first --

12          THE COURT:  Well, what did you mean when you asked for

13  it?

14          MR. ADDINGTON:  Well, I assumed that PG&E would say,

15  one, the easement doesn't allow for its termination and we

16  would provide you evidence that it does.

17          THE COURT:  Well, that's not evidence.

18          MR. ADDINGTON:  It --

19          THE COURT:  That's legal argument.

20          MR. ADDINGTON:  Legal argument.

21          THE COURT:  That is --

22          MR. ADDINGTON:  So I guess that --

23          THE COURT:  Well, let me sort of -- are you a lawyer,

24  Mr. Addington?

25          MR. ADDINGTON:  No, sir.

of 73
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Are you going to have a lawyer assisting

2 you on this?

3    MR. ADDINGTON:  I suppose.  I went to law school

4 briefly.  My wife is a lawyer.  I certainly have lawyer advice,

5 but --

6    THE COURT:  Well, we don't want to impose on your wife

7 and make her be your lawyer, not that wives can't be good

8 lawyers, but sometimes you're better off having an independent

9 lawyer, but that's between you and your wife.

10    MR. ADDINGTON:  Yes, sir.

11    THE COURT:  My point is that, to me, an evidentiary

12 hearing means that there are facts that are in dispute.  And

13 for example, let's suppose that PG&E agreed that you had a

14 right to terminate the easement but it felt that your damages

15 were a hundred dollars, and you said no, my damages are three-

16 and-a-half million dollars and counting.  That's a mixed fact,

17 facts and law.

18    The facts of what happened, what was recorded in 1909

19 are probably not only not in dispute, they probably couldn't be

20 disputed.  There is a document that was executed and recorded

21 in (audio interference) easement.  You didn't own the property.

22 PG&E's predecessor owned the easement.  At some point, you and

23 your wife came to own the property you own, and you now claim

24 to be the land that's burdened by the easement.

25    You gave me, in your opening comments, some history

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  that I didn't know because it was not clear from the record

2  that, yes, there was this contract, there was a dispute about

3  leveling the land, and you believed that PG&E didn't perform

4  under their contract.  That's why I asked you the question

5  about whether the time had run to file that suit again.  I

6  don't know whether it has run or not run.  And I don't know --

7  I am not suggesting that you should have done something that

8  you didn't do; I'm not suggesting anything.  I'm just getting

9  the facts.

10     So suppose we went back in time to when this contract

11  was negotiated.  There may be facts in dispute about what was

12  agreed to and what wasn't.  You may believe the document that

13  was executed said PG&E will do X, Y and Z to your property, and

14  maybe they say they did X, Y and Z, and you say no, you only

15  did X, but you didn't do Y and Z.  Those would be facts in

16  dispute and it would take evidence not to apply the -- well, it

17  would take evidence to find out what are the facts and then it

18  would take the legal application of the applicable legal

19  principles.

20     Now, going back to the beginning of time, Mr. Rupp

21  points out that the company believes that, as a matter of the

22  law, you could not have terminated the easement.  And if the

23  company is right, you can't terminate the easement.  And if you

24  can't terminate the easement, then you don't have any damages

25  because you want to terminate.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1       So my point I'm getting at is that this isn't as

2  though PG&E sued you in superior court or you sued PG&E in

3  superior court.  It is the bankruptcy where PG&E went to get

4  relief from its creditors.  You asserted a creditor's claim.

5  PG&E has challenged that claim and so we kind of have the

6  reverse.  You're the claimant.  You didn't sue anybody.  You

7  filed a claim.  PG&E opposed that claim by an objection, and

8  here we are, and I'm responsible for determining what is the

9  outcome.  And so the more traditional legal way to do it is to

10  do what I just suggested to Mr. Rupp:  have a motion for

11  summary judgment to determine, as a matter of law, whether

12  under undisputed facts they win or you win.  And by the way, it

13  works both ways.  If there are undisputed facts that dictate

14  the outcome in your favor, you should win.

15       So people like I have to figure out should we figure

16  out the undisputed fact question first or do we have to wait?

17  Sometimes you have to wait until you get the disputed facts,

18  but see, nobody has suggested to me that I should be trying a

19  case here over whether the contract that you entered into five

20  years ago was performed properly or not because no one has

21  framed the question for me.

22       MR. ADDINGTON:  So if I might, sir, I was very late in

23  doing so, but I filed a response to the debtors' last motion,

24  and I --

25       THE COURT:  No, you did.  You did it, and I reviewed

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    it.  I reviewed it.

2           MR. ADDINGTON:  So one, we would like, I guess a

3    judicial recognition.  I went yesterday to the courthouse or

4    the record's office and pulled the easement which is

5    handwritten, and I've attached it, and that easement, I think

6    Mr. Rupp's argument is that by law, the easement is permanent,

7    and I can't look at the last sentence of that easement and find

8    a way to agree with him.

9           THE COURT:  Well, what does the last sentence of it

10   say, the sentence about terminating if they're not (audio

11   interference).

12          MR. ADDINGTON:  If there is a breach, the easement is

13   terminated.

14          THE COURT:  Well, yeah, yeah, but the typed version

15   and the handwritten version are identical on that sentence.

16          MR. ADDINGTON:  Yes, sir.

17          THE COURT:  So it's just easier to read the

18   handwritten one.  In fact, so my point is that Mr. Rupp has a

19   right for his client to argue that that sentence isn't

20   sufficient for you to trigger the termination, and you have a

21   right to argue, yes, of course, it is.  And I am in between; I

22   have no idea at this point.  It strikes me as something that it

23   might take more than just that sentence because that sentence

24   doesn't say well, how do you do it?  What happens?

25          MR. ADDINGTON:  Well --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Does this happen automatically?  Does one

2    side -- remember that this document -- this thing began as an

3    agreement signed by both parties.

4    MR. ADDINGTON:  Yes, sir.

5    THE COURT:  Old-fashioned forum:  the party of the

6    first part, the party of the second part; nobody does that

7    anymore.  And yet the document you've filed was unilateral.

8    MR. ADDINGTON:  Well, yes, sir.

9    THE COURT:  So I don't know whether that's --

10   MR. ADDINGTON:  I mean, a termination of an easement,

11   I think by its nature, is unilateral.  That last sentence

12   certainly is granting the rights to terminate the easement, in

13   my mind, to someone, and I think it would have to be the

14   grantor.  And although not required, I spent eight months

15   attempting to work with PG&E regarding this issue and met a

16   number of the requirements that Mr. Rupp has raised, even

17   though the easement itself doesn't require those requirements.

18   I attempted to meet them because they seemed rational and

19   reasonable but the easement doesn't require it.  So --

20   THE COURT:  Well, you know --

21   MR. ADDINGTON:  -- I did my level best to abide by the

22   terms, and --

23   THE COURT:  Well, Mr. Addington, let's look at that

24   sentence again.

25   MR. ADDINGTON:  Yes, sir.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1     THE COURT:  "Violations of the condition of this grant

2  shall terminate and extinguish the easement hereby granted".

3  It doesn't say by either side; maybe PG&E could have terminated

4  the easement.

5     MR. ADDINGTON:  Sure.

6     THE COURT:  What if you breached the agreement?  So I

7  mean, it is unilateral; it's unclear who can terminate and

8  under what circumstances.  And what if one side determines --

9  who makes the determination that there's been a violation?

10    In fact, it almost self -- it self-destructs if

11 there's a violation, but who determines whether there's a

12 violation?  So what if you determine that there was a violation

13 but the company says no, there wasn't a violation?

14    MR. ADDINGTON:  Well, obviously, then --

15    THE COURT:  I think that speaks to my point about --

16 pardon me?  I'm sorry, go ahead.

17    MR. ADDINGTON:  I'm sorry.  Well, I would suggest then

18 that what should have happened is upon filing the termination,

19 PG&E could have objected, said Mr. Addington, you cannot do

20 that and here is why:  you didn't meet the requirements, we

21 didn't violate the terms of the easement.

22    I made very clear to them, here's what is happening,

23 here's why I am going to terminate the easement, here is the

24 violation.  I'm happy to produce all of that for the Court; I

25 have hundreds of pages of it.  I didn't want to overburden you

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net
of 73

PG&E Corporation and Pacific Gas and Electric Company

1  on this hearing.

2            THE COURT:  Mr. Addington, you're not over burdening

3  me.  This is not my everyday kind of case or anyone's everyday

4  kind of case and it's interesting.  I actually grew up in the

5  Bay Area, and I know right where St. James Drive is, and I know

6  where the power line easements are; I remember when the Key

7  System trains used to go up that area, so it's like old home

8  week for me.  I know where the local power station is near Park

9  Boulevard.

10           MR. ADDINGTON:  Yes, sir.

11           THE COURT:  But my point is that that's all well and

12 good, but I had no idea until you told me in this hearing there

13 was this history.  I had no idea that there was a contract to

14 repair your yard and that you contested this and you contested

15 that, and it's fine for you to say you can give me all this

16 stuff, but the question is, it must be teed up in a proper

17 judicial proceeding.

18           So let me switch topics one more -- one question.  Has

19 there been any attempt, Mr. Rupp, do you know, or Mr.

20 Addington, to try to resolve this issue by mediation or

21 otherwise in the recent time?  Mr. Addington, has there been

22 any attempt by PG&E to mediate a result here?

23           MR. ADDINGTON:  No, sir.  From the five years ago to

24 this date, PG&E's position, as I understand it, is the easement

25 is permanent; it cannot be terminated.  And therefore, we have

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   nothing else to talk about.

2       THE COURT:  Well, but you have a three-and-a-half

3   million dollar claim that they have to get rid of.

4       MR. ADDINGTON:  Yes, sir.

5       THE COURT:  Mr. Rupp, is someone at the company

6   amenable to at least trying to come up with a consensual

7   resolution of this issue?

8       MR. RUPP:  Your Honor, I can confer with my client, of

9   course.  I'm learning more background at this hearing today

10  regarding the breach of contract and such.  In fairness, Mr.

11  Addington's claim is for a terminated easement and charges for

12  power passing over his property; it's not for damages arising

13  from a breach of contract.  And if the issue can be framed that

14  way, then I can certainly speak with my client about

15  mediation.

16      THE COURT:  Well, Mr. Addington, I want to make clear,

17  you understand, I am not pre-judging anything, and so -- but

18  the lawyer in me says, well, if there was a breach of contract

19  five years ago, what was done about it.  And maybe recording

20  the easement was sufficient, but maybe it wasn't, and I don't

21  know.  And I do know that it's just one of those facts.  And

22  usually when people like I, the bankruptcy judge, you know,

23  we're at the bankruptcy court for a reason, and most of our

24  bankruptcy companies are not solvent, multi -- large utility

25  companies.  And if there has been a contractual breakdown

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    between parties, usually -- not always; usually -- either

2    there's been a lawsuit outside of bankruptcy or when the matter

3    comes before the bankruptcy court, there's a challenge to,

4    well, you breached the contract.  And if you, Mr. Addington,

5    had -- we'll leave the easement aside, and you had said, hey,

6    PG&E you contracted to do this and you didn't do it, you messed

7    it up, I've suffered damages to my property, maybe you would

8    have sued the company for breach of contract.  But what I'm

9    hearing is there was a contractual dispute and your response to

10   that unresolved contractual dispute was to pull this trigger

11   called "terminate the easement", which you may have a right to

12   do.  Again, I'm not pre-judging whether you did or didn't.  And

13   if you had the right to do it and you did it, then PG&E has to

14   decide whether it wants to deal with the consequences.

15        Because the only way for me to do this is to frame the

16   issue correctly the way I see it, and the way I see it is you

17   don't need to send me anything at this point.  I think Mr.

18   Rupp's suggestion to start with legal briefing on the issue is

19   proper, but you, in turn, Mr. Addington, have equal right to it

20   also.  And courts that decide -- when I use the term "summary

21   judgment", most traditional litigation lawyers, nonbankruptcy

22   lawyers, people that go to state court or federal district

23   court a lot, they know what a summary judgment is.  Bankruptcy

24   people know it too, but it's a different context.

25        So there is a claim that you filed, and the company

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   has objected to it, so think of your claim as an assertion of

2   rights.  And the company -- and your assertion is, I terminated

3   this easement; I have a right to be paid for the power lines

4   going across my property.  Think of the objection as PG&E says

5   no, you didn't have a right to terminate.  Therefore, we don't

6   have to pay you anything, and we're going to continue to run

7   our lines across your property.  And aside from that, they

8   might say and if we breached a contract five years ago, either

9   sue me or it's too late, one or the other.  And so I have to

10  decide are there undisputed facts that allow me to narrow or

11  dispose of the issue, one way or the other.  And PG&E has

12  offered -- and I think it's proper -- you are the claimant, but

13  they have said we are the debtor against whom you assert this

14  claim, and we believe we can win as a matter of law.

15          So the way to do that is for me to instruct Mr. Rupp,

16  okay, take this claim objection -- and again, I'll repeat

17  myself, Mr. Addington, claim objection is like a lawsuit

18  reversed.  If the plaintiff sues a defendant in state court, in

19  bankruptcy if a claimant files a claim and the debtor objects

20  to the claim, it's just the same issue; it's just who goes

21  first.  And if I say okay, PG&E, file a brief that lays out

22  facts that are not disputed and legal outcomes that are

23  compelled by the undisputed facts, and Mr. Addington, you do

24  the same.  And you say well, no, the facts are disputed.

25          If they say here are the facts and they prove it with

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   evidence, you have a right to say no, those are not the facts,

2   these are the facts and/or to say even if the facts are the

3   same, the legal outcome runs in your favor.  And my job is

4   first to determine, are there material facts in dispute.  Now,

5   material means that have an impact on the outcome.  So if I had

6   a deal with you that I said I made this agreement with you on a

7   Monday and you said you're proving no, it really happened on a

8   Tuesday, chances are those are not material.

9         MR. ADDINGTON:  Sure.

10        THE COURT:  But it's material obviously if it changed

11   the outcome.  So if PG&E says taking nondisputed material

12   facts, we win as a matter of law, and Mr. Addington, you

13   respond to that, and that's briefed.  And again, we're back to

14   you might well be well advised to bring in a lawyer familiar

15   with these issues.  You're free to go on your own if you wish.

16   I'm not going to tell you what to do.

17        What you can't do is to tell me you'll just send me a

18   bunch of stuff.  You have to show by admissible evidence, so if

19   it's admissible evidence like if who said what, it has to be

20   consistent with the hearsay rules and all the other rules that

21   allow a court to determine what is material and what is

22   relevant.

23        Put all that aside; if the company is willing now,

24   today, June 30th to commit -- and I don't mean "today",

25   literally today; Mr. Rupp needs to talk to his client -- but if

PG&E Corporation and Pacific Gas and Electric Company

1    the company is willing and you're willing to sit down around

2    the table with a mediator who is neutral who isn't a judge and

3    isn't in the record and come up with a consensual resolution,

4    that makes a lot of sense too.  I'm sure you know what I'm

5    talking about generally.

6            MR. ADDINGTON:  Yes, sir.  I was the marketing

7    director for JAMS for a few years.

8            THE COURT:  Well, there you go; then you know all

9    about it.

10           MR. ADDINGTON:  Yes, sir.

11           THE COURT:  But again, I'm not going to order that.

12   Now, PG&E has put in place a mediation program for many of its

13   disputed claims, and it actually has paid the mediators.  If

14   they're willing -- if PG&E is willing to mediate and you will

15   take them up on that procedurally, that might be a simple way

16   to try to solve the problem.  As the judge, I get off the hook

17   while the parties try to mediate.  If they're unsuccessful, I'm

18   back on the hook again.

19           MR. ADDINGTON:  I understand.

20           THE COURT:  Mr. Rupp, what I propose -- and again,

21   subject to your response, is you give me a period of time when

22   you can tell me either the company is willing to take this to

23   mediation and then you can have a conversation with Mr.

24   Addington and ask him if he wants to -- if the answer is yes,

25   PG&E is willing to mediate, then Mr. Rupp has to decide --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    excuse me, Mr. Addington has to decide whether he's willing to

2    have the PG&E mediator -- and I don't know why you wouldn't;

3    these are neutral parties who are -- many of them are JAMS

4    alums, and PG&E is paying, more importantly, but I for one

5    don't believe the fact that PG&E is paying the mediators is

6    a --

7               MR. ADDINGTON:  I don't either.

8               THE COURT:  -- tilting against for the other parties,

9    and it would be my responsibility to make sure that that isn't

10   the case.  And then we would just take this off calendar while

11   the mediation goes forward.  If it's successful, end of story.

12              If it's unsuccessful, then we go to plan B, and plan B

13   is then PG&E makes a motion for summary judgment before me.  It

14   lays out the fact, it lays out the law, and you're given an

15   opportunity to respond.  And typically, the moving party for

16   summary judgment, the other side responds, the moving party

17   files a reply, and the Court sets it for hearing.  Again, a

18   procedure that I am sure you're familiar with.

19              MR. ADDINGTON:  Yes, Your Honor.

20              THE COURT:  Is that acceptable to you, Mr. Addington?

21   Will you try it that way?

22              MR. ADDINGTON:  You know, I am -- as the former

23   marketing director for JAMS, I could never say no to mediation.

24   I do think it works well.

25              THE COURT:  I presume you knew Mr. Welsh, Jay Welsh?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. ADDINGTON:  That's who hired me.

2          THE COURT:  He was a good friend of my -- is a good

3     friend of mine.

4          MR. ADDINGTON:  Yeah.

5          THE COURT:  Mr. Rupp, can you give me a time that you

6     would commit to the company responding either to, yes, we'll

7     mediate, in which case I stay out of it, or we don't want to

8     mediate and have a meet-and-confer with Mr. Addington about an

9     agreed time for briefing these matters?

10          MR. RUPP:  How about this, Your Honor?  How about we

11     continue the status conference to the 13th of July at the

12     omnibus hearing there, and PG&E will file a notice of whether

13     it's able to mediate by July 9th, next Friday.

14          THE COURT:  And then if the answer is yes, then that

15     goes off calendar and -- well, we could leave it on to talk

16     about it.

17          MR. RUPP:  If the answer is yes, and both sides are

18     amenable to mediation, we can take it off calendar and send it

19     onto our ADR process; then if the answer is no, then we can all

20     meet together on the 13th and discuss a briefing schedule

21     and --

22          THE COURT:  Okay.  Let's do this.  If the answer is

23     no, PG&E does not want to mediate, you make an attempt before

24     the 13th to talk to Mr. Addington, and maybe by then Mr.

25     Addington will make a decision if he wants to bring in a lawyer

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    or do this on his own, and have a meet-and-confer about a

2    timing of when you'll file your motion and when you'll respond.

3            Again, I appreciate in the papers that you filed, Mr.

4    Rupp, you offered a fairly accelerated procedure, but I think

5    given the background, since you and I both have learned a lot

6    of background here, this just isn't worth the trouble.  I mean,

7    we shouldn't rush it.

8            So Mr. Addington, my proposal to you is if July 13th

9    at 10 o'clock is a clear date and time for you, that we let Mr.

10   Rupp respond to you, really, as well as to me on whether they

11   will mediate, and he said he will respond by ten days from now,

12   July 9th.  And if he says mediate, then he confers with you,

13   and again, you seem quite amenable to mediating, and I would

14   urge you to mediate it too.  And Mr. Rupp and his clients know

15   my speech on that subject.  They're committed to a lot of

16   mediation in the bankruptcy, generally and otherwise, so I

17   don't have to give them the speech.  I'm not trying to sell

18   them a car.  They know what the car choices are.

19           But if, as a matter of policy, they're unwilling to or

20   won't mediate, then on July 13th, I will have a discussion with

21   Mr. Rupp and either you or any attorney you bring in, and we'll

22   talk about an agreed schedule for what I will call briefing the

23   summary judgment.  Again, I just have to give a heads up:  if

24   you bring in a lawyer who is not familiar with bankruptcy,

25   which is your prerogative -- these are not really bankruptcy

PG&E Corporation and Pacific Gas and Electric Company

1    issues -- a lot of lawyers not familiar with bankruptcy get a

2    little confused when you're talking about a summary judgment in

3    the context of a claim objection.  It's just a term, and it

4    just means exactly what I said:  do the undisputed facts, when

5    applied to the applicable legal principles, dictate an outcome

6    for one side or the other.  And if the answer is yes, it might

7    then it makes sense because it's efficient and it doesn't waste

8    time digging into stuff that nobody needs to dig into, and it

9    works for the winner, and it actually works for the loser

10   sometimes too because it saves a lot of misery.

11          So it's a long speech, and I appreciate the

12   background.  Is the 13th available and convenient for you at 10

13   o'clock, Mr. Addington?

14          MR. ADDINGTON:  Yes, sir.

15          THE COURT:  Okay.  I will continue today's hearing on

16   the record on this claim objection to July 13th at 10 on Zoom.

17   Mr. Rupp, I'll take you up on your commitment by the 9th.  You

18   will file something that you'll send to Mr. Addington.  And Mr.

19   Addington, you don't have to file anything.  If the answer is,

20   they'll mediate, you need to be on the phone and talk to Mr.

21   Rupp directly; you don't have to involve me.

22          If they go to mediation or agree to it, you don't have

23   to see me ever again, maybe, and if not, then I'll see you on

24   the 13th and we'll talk about a briefing schedule.

25          MR. ADDINGTON:  Thank you, sir.

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Okay?

2          MR. ADDINGTON:  Yes, sir.

3          THE COURT:  Mr. Rupp, by my -- and good luck.  Thank

4     you, Mr. Addington.

5          Mr. Rupp, by my calculation, other than the Pedroia

6     matter that you've said your colleague's going to take over, we

7     have nothing left to do on today's calendar; is that consistent

8     with your understanding?

9          MR. RUPP:  That's correct.  I will be joining on the

10    phone, as well.  I take it the scheduling or the discovery

11    conference between the Fire Victim Trust and Pricewaterhouse

12    was continued?

13         THE COURT:  Yeah.  I guess you didn't get the word.

14    We got -- Ms. Parada had an exchange with some of the counsel.

15    Is there anyone on the Zoom call who wishes to be heard on this

16    calendar this morning?  If so, please raise your electronic

17    hand, so I don't miss you.

18         Okay.  Ms. Parada, anything you need to tell me?

19         THE CLERK:  No, Your Honor.

20         THE COURT:  Okay.  So we're going to conclude this

21    hearing on this record.  We've gone a little longer than I

22    thought we were going to, and in, I don't know, five minutes or

23    so, we'll start the AT&T call.  I need to take a short break

24    and I need to do some physical connections.  I'm going to have

25    to switch cables and so on.  Okay?  Thank you, Mr. Rupp.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. RUPP:  Thank you, Your Honor.

2          THE COURT:  And I'll look forward to orders or an

3   order on that first Jabbari matter.  Okay.  We're concluded.

4          MR. RUPP:  Thank you, Your Honor.

5          THE COURT:  Okay.  Thanks.

6       (Whereupon a recess was taken)

7          THE CLERK:  Court is now in session.  The Honorable

8   Dennis Montali presiding.  Calling the matter of PG&E

9   Corporation.

10          THE COURT:  Good morning; this is Judge Montali.  Is

11   Ms. Pedroia on the call?

12          MS. PEDROIA:  This is she, and how are you, Judge?

13          THE COURT:  Good morning, Ms. Pedroia.  I'm fine,

14   thank you.  And Mr. Taylor, are you on for PG&E today?

15          MR. TAYLOR:  Yes, Your Honor.  Good morning.  David

16   Taylor from Keller Benvenutti Kim.

17          THE COURT:  All right.  Ms. Pedroia, I'm sorry we kept

18   you waiting.  We ran long on the prior hearing.

19          MS. PEDROIA:  That's all right.  I didn't know that

20   Mr. Taylor was going on the line today.  I thought it was just

21   going to be me and you.

22          THE COURT:  Well, Ms. Pedroia, I want to make

23   something clear.  I am not permitted under the law to have one-

24   on-one conversations with litigants, and for that reason, I am

25   going to tell you, you cannot continue to email me or my

PG&E Corporation and Pacific Gas and Electric Company

1    staff --

2         MS. PEDROIA:  Well --

3         THE COURT:  -- or any -- no, no, let me finish, let me

4    finish this.

5         MS. PEDROIA:  Yes.

6         THE COURT:  I don't understand -- I don't presume you

7    know the rules.

8         MS. PEDROIA:  No, I don't.

9         THE COURT:  And communications with the judge by

10   litigants -- and you're a litigant here; you're a claimant --

11   are not appropriate, and I don't want to be rude but you can't

12   communicate with me directly or indirectly, even with my staff.

13   My staff with whom you've been communicating also are aware,

14   and they are following their instructions, but the only thing

15   Ms. Parada is in charge of doing where she is allowed to deal

16   with people directly have to do with scheduling, such as lining

17   you up to be able to participate in a conference call like this

18   or if we have to schedule something some different way.  That's

19   obviously important, but you can't -- and I want you to stop

20   immediately communicating with me.

21        If you wish to communicate with me, you do it in the

22   old-fashioned way:  you file a document in the court.  And with

23   COVID and restrictions, obviously, a document filing can be

24   done by the upload procedure.

25        In that way, when you file something through the

PG&E Corporation and Pacific Gas and Electric Company

1    uploaded procedure, it goes on the court docket, and in a case

2    as widespread as PG&E, everything that goes on the docket is

3    visually on the docket and available to literally hundreds of

4    people, so that you and I both don't get into the cross-wires

5    by having one-on-one conversations.

6         Here, I notice from the emails -- and by the way, I

7    want you to understand that, again, I'm not being rude or don't

8    intend to be or my staff, but we're not even going to read

9    things.  So if you continue to send things like your views of

10   things or pictures or your contentions, I won't even read them

11   and my staff won't read them; we'll just ignore them.  So

12   please don't do that.  If you do something on the docket,

13   obviously, we do review them as do other parties.

14        MS. PEDROIA:  Okay.  Can I interject?

15        THE COURT:  Well, you can go ahead.  Do you have a

16   question about that?

17        MS. PEDROIA:  Can I interject for a second?

18        THE COURT:  Yes, ma'am.

19        MS. PEDROIA:  I don't have any state-of-the-art

20   technology in my home.

21        THE COURT:  You have a telephone and we're talking on

22   the phone.

23        MS. PEDROIA:  That's it.

24        THE COURT:  That's all we need.  That's all we need.

25        MS. PEDROIA:  That's it.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Well, you have an email.  Ms. Pedroia,

2    you're a very proficient emailer.  So you might not have state-

3    of-the-art technology, but you're one of the few litigants who

4    sends me emails personally, and I am not going to read them.

5    MS. PEDROIA:  I said I don't.  I said I don't have any

6    technology.  I don't have a computer.  I don't have a --

7    THE COURT:  How are you sending the emails?

8    MS. PEDROIA:  Through my phone.

9    THE COURT:  Ms. Pedroia?

10   MS. PEDROIA:  Through my phone.

11   THE COURT:  Ms. Pedroia?  Ms. Pedroia, you're sending

12   me documents --

13   MS. PEDROIA:  I said I would stop them.

14   THE COURT:  -- or you --

15   MS. PEDROIA:  I said I would stop.  Right now, as of

16   today, I stopped.

17   THE COURT:  Okay.  Okay.

18   MS. PEDROIA:  Yeah.  I just -- you know, if I can't

19   walk and I don't drive anymore and I don't have a computer, how

20   in the heck am I going to get documents to you?

21   THE COURT:  Ms. Pedroia, if you don't walk, I'm sorry

22   that you can't walk, but your phone is a way to communicate,

23   the U.S. Postal Service is a way to communicate, and that's

24   what you'll have to do.  Now, I can't --

25   MS. PEDROIA:  Yes, I --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  -- solve that problem.

2    MS. PEDROIA:  -- if I can get to the post office --

3    THE COURT:  Listen, we need --

4    MS. PEDROIA:  Yes?

5    THE COURT:  -- to get on with business here.

6    Mr. Taylor --

7    MS. PEDROIA:  I can already tell, Judge -- I can

8    already tell you don't like me, but that's okay.

9    THE COURT:  That has nothing --

10   MS. PEDROIA:  Yeah, that's okay.

11   THE COURT:  Ms. Pedroia?  Ms. Pedroia, hold on.

12   MS. PEDROIA:  Yeah.

13   THE COURT:  I don't like you or dislike you.  I am the

14   judge.

15   MS. PEDROIA:  Yes.

16   THE COURT:  And my job is to --

17   MS. PEDROIA:  Okay.

18   THE COURT:  -- administer the court, the calendar, and

19   make decisions.

20   MS. PEDROIA:  Okay.  But why didn't anyone tell me

21   that Mr. Taylor was going to be in on this?  Nobody -- I didn't

22   have the slightest idea that Mr. Taylor was going to be at this

23   hearing.

24   THE COURT:  Ms. Pedroia, I am not going to answer that

25   question.  Mr. Taylor is one of the PG&E lawyers.  He's on the

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  phone for PG&E.  So I --

2          MS. PEDROIA:  But you think I should have been told --

3          THE COURT:  -- have a question --

4          MS. PEDROIA:  -- about that, though, or to let me know

5  or am I just some dummy that just is supposed to call the

6  Court --

7          THE COURT:  Ms. Pedroia?  Ms. Pedroia, if you want to

8  be heard today, you are going to have to stop arguing with me

9  and questioning things that are not material.  And if you

10 persist, I'll simply terminate the hearing.

11         MS. PEDROIA:  Oh, brother.

12         THE COURT:  I need to know why you turned down the

13 invitation, through PG&E, through the Court, to participate and

14 try to mediate your claim.

15         MS. PEDROIA:  That's -- that noise made a sound; say

16 the last three words, please?

17         THE COURT:  Why did you not participate in the

18 mediation that was scheduled?

19         MS. PEDROIA:  As I wrote in my email, which you didn't

20 look at, the man was from -- he was an innocent mediator.  He

21 didn't have any kind of background, influence, or experience

22 with corporations like Pacific Gas & Electric, plus he wanted

23 me to be, like, submissive to Pacific Gas & Electric.  Well, I

24 can't.  I'm not at fault.  I'm the victim here.

25         So people who go to mediation are usually on the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    borderline of being at fault, and that's why they mediate back

2    and forth, back and forth.  In my case, I'm a victim.  I'm one

3    hundred percent innocent, so I shouldn't have to wheel and deal

4    with someone who doesn't know what they're doing, who doesn't

5    have experience with corporations like Pacific Gas & Electric,

6    and expects me to be submissive to Pacific Gas & Electric when

7    they damaged our home.  That's why I didn't do it.

8         THE COURT:  You understand, Ms. Pedroia, that the --

9         MS. PEDROIA:  Okay.

10         THE COURT:  -- Court scheduled the -- and we set you

11   up for mediation; there was no objection, and it was scheduled.

12   And a mediator that you've presumed was not adequate and not

13   competent was briefed and ready to mediate, and you

14   unilaterally terminated it.  So --

15         MS. PEDROIA:  It was just like having a banquet

16   dinner --

17         THE COURT:  Okay.  Hold on.

18         MS. PEDROIA:  -- (indiscernible).

19         THE COURT:  Hold on.  Hold on.  If we don't have --

20         MS. PEDROIA:  Well, I have --

21         THE COURT:  If we don't --

22         MS. PEDROIA:  -- (indiscernible) --

23         THE COURT:  -- have mediation, how are you going to

24   prosecute your claim?

25         MS. PEDROIA:  Well, you're a judge.  Does PG&E give

of 73
escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  you the okay to pay things or do you have the authority to pay

2  things?

3          THE COURT:  Ms. Pedroia, how are you going to -- how

4  are you going to prove your claim?

5          MS. PEDROIA:  Well, all by the documentation I have,

6  and I have a lot of it --

7          THE COURT:  And do you --

8          MS. PEDROIA:  -- going back to 2011.

9          THE COURT:  And do you have -- are you familiar with

10 the Rules of Evidence or admissible documentation?

11         MS. PEDROIA:  Well, I have a piece of -- I have a

12 piece of overhead electric lines from Pacific Gas & Electric

13 that started a little fire on our roof, and the guy said we

14 never change these electric lines, and he gave me about a two-

15 foot piece of wiring that was charred.  And I have names and

16 dates and titles and people who I talked to, and I do have

17 documents.  And you know, I think I should've been warned about

18 Mr. Taylor or Mr. Taylor should have said hi, Ms. Pedroia, I'm

19 going to be at the hearing today because I feel -- I don't

20 think that's fair to just cold turkey, Mr. Taylor is here.

21         THE COURT:  Okay.

22         MS. PEDROIA:  I don't think that's right.

23         THE COURT:  Ms. Pedroia, now I am going to ask you to

24 stop talking for a minute.  And Mr. Taylor, you're representing

25 the company; tell me what you would like me to do today.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   What's your position?

2          MR. TAYLOR:  Yes, Your Honor.  I --

3          MS. PEDROIA:  I thought that we were going to talk

4   about the --

5          MR. TAYLOR:  Good morning.

6          MS. PEDROIA:  -- million dollar settlement; that's

7   what I thought.

8          THE COURT:  Would you let Mr. Taylor speak, please,

9   Ms. Pedroia?

10         MS. PEDROIA:  Just now you said -- you're making a big

11  thing.

12         THE COURT:  Ms. --

13         MS. PEDROIA:  Of course he can talk, sir.

14         THE COURT:  Mr. Pedroia, would you please stop talking

15  and let Mr. Taylor speak?

16         MS. PEDROIA:  Are you doing this intentionally, Judge,

17  to make me look bad?

18         THE COURT:  Go ahead, Mr. Taylor.

19         MR. TAYLOR:  Yes, Your Honor.  I thought I'd just give

20  a little bit of procedural background.  You obviously got the

21  papers.  Ms. Pedroia's bankruptcy claim alleges that PG&E is

22  responsible for about 250,000 dollars in property damage.

23         MS. PEDROIA:  (Indiscernible).

24         MR. TAYLOR:  The claim relates to water damage that

25  occurred in 2011 which Ms. Pedroia attributed to some

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

        PG&E Corporation and Pacific Gas and Electric Company

1    maintenance work done by PG&E near her house in San Francisco.

2            MS. PEDROIA:  That's absolutely false.

3            MR. TAYLOR:  PG&E's --

4            THE COURT:  Ms. Pedroia?

5            MR. TAYLOR:  -- investigation --

6            THE COURT:  Ms. Pedroia?

7            Hold on.

8            Ms. Pedroia, I am going to mute your microphone if you

9    keep interrupting, so if you want -- if you'd just be polite

10   and let him speak -- he didn't interrupt you.  So go ahead, Mr.

11   Taylor.

12           MR. TAYLOR:  Thank you, Your Honor.  PG&E's

13   investigation in 2011 determined that the leak was likely

14   caused by natural wear and tear of old pipes.  Nonetheless,

15   PG&E paid 3,200 dollars at that time in plumbing repairs.

16           Ms. Pedroia demanded an additional 5,000 dollars for

17   the inconvenience of being without water during the repairs,

18   and as an offer of compromise, PG&E, as I understand, they

19   hand-delivered a 1,000-dollar check to her which she destroyed.

20           Fast forward now to Ms. Pedroia's bankruptcy claim

21   filed in 2019, timely.  Notwithstanding that it would appear

22   from the background to have a statute of limitations issue,

23   given that it stems from the --

24           THE CLERK:  Excuse me.

25           MR. TAYLOR:  -- 2011 --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE CLERK:  Excuse me, Your Honor.  This is Ms.

2    Parada.  Ms. Pedroia has disconnected.

3          THE COURT:  Okay.  Well hold on, Mr. Taylor.  Ms.

4    Parada, will you have any way of knowing if she's reconnecting?

5          THE CLERK:  Only -- I would hear the beep, and I've

6    saved her number on our system, so I would see her number pop

7    up, but --

8          THE COURT:  Okay.  You didn't mute her line when I

9    told her I would mute her line if she interrupts?

10          THE CLERK:  No, Your Honor, I did not.

11          THE COURT:  You didn't do that.  So well, let's just

12    wait a second.

13          Mr. Taylor, since I lectured Ms. Pedroia about ex

14    parte communications, I am going to hold up on any further ex

15    parte communication from you until she has an opportunity --

16          MR. TAYLOR:  Sure.

17          THE COURT:  -- to be heard, and then I'll let you

18    summarize the position.

19          MR. TAYLOR:  Of course.

20          THE COURT:  Ms. Parada, you have her number, don't

21    you?

22          THE CLERK:  I do have the telephone number.

23          THE COURT:  Okay.  All right.  Why don't you, on your

24    own line, not on the public line, call her right now and ask

25    her if she wishes to rejoin the hearing or not.  I'm waiting if

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    she'll rejoin the hearing, and we'll just hold on it for now.

2            THE CLERK:  Yes, Your Honor.

3        (Pause.)

4            THE CLERK:  Hello, Your Honor, this is Ms. Parada.

5            THE COURT:  Yes.

6            THE CLERK:  I left a voicemail message for Ms.

7    Pedroia.  Her line did not pick up.

8            THE COURT:  Okay.  Let's go back.

9            Mr. Taylor, go ahead and summarize, then, just where

10   we are.  I'm sorry that she left the hearing but I need to get

11   your summary.

12           MR. TAYLOR:  Yes, Your Honor, and I just had a little

13   bit more.  So the bankruptcy claim was filed and ,again,

14   notwithstanding the potential statute of limitations issue,

15   PG&E issued a mediation notice pursuant to the abbreviated

16   mediation procedures which had February 25th as the date.

17           A couple of weeks prior to that scheduled mediation,

18   Ms. Pedroia requested that it be moved to March 17th.  PG&E

19   agreed.  She also increased her demand to one million dollars

20   at that time.

21           PG&E submitted its background statement and a

22   settlement offer as required by the ADR procedures prior to

23   mediation, but rather than submitting her own statement or

24   engaging PG&E's offer, Ms. Pedroia emailed PG&E a few days

25   before the mediation, reiterating the demand for one million

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    dollars and writing, among other things, the mediation is off.

2    PG&E appeared at the mediation in any event, just in case she

3    would appear, and she did not appear.

4         So given that background and given the provisions of

5    the ADR procedures which require good-faith participation,

6    given the notice she received and sort of all the rest, we

7    arrived at our omnibus objection on the basis of failure to

8    participate in the ADR procedures.

9         I'm happy to answer questions, but that's the sum and

10   substance.

11        THE COURT:  Well, I mean, I realize that we -- the

12   failure to participate in the mediation is rude, perhaps, but

13   it's not grounds to disallow the claim, so the question is what

14   do you want me to do with the claim?  There is a claim -- the

15   proof of claim as filed is 250-.  Has it been amended up to a

16   million or is that just through her emails and other

17   correspondence?

18        MR. TAYLOR:  Just through emails and correspondence,

19   Your Honor.

20        THE COURT:  Okay.  So there's an assent (ph.) of

21   250,000 dollar claim for water damages, not a lot of specifics

22   on that.  What do you want me to do?

23        MR. TAYLOR:  Yes, Your Honor, if you don't think it's

24   appropriate to disallow the claim on this basis, I think our

25   fallback preference would be to object to the claim on statute

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    of limitations grounds which we can do in short order. I think

2    given the time and expense that we've put into trying to

3    mediate, we're disinclined to try that again. So I think we

4    just go that route of the SOL objection.

5            THE COURT: Well, I think she's made it clear she

6    doesn't have an opinion of you or me or the mediator, and at

7    least for the mediator, she didn't want to participate. The

8    question is, I think under the -- would you refresh my

9    recollection? The mediation -- excuse me, the omnibus

10   objection that is on for today is -- just let me see for the

11   record -- yes, it's part of the eighty-fifth omnibus objection,

12   and that is the point about the mediation aborted. But there's

13   no earlier objection that raises anything other than the books

14   and records defense; is that right, or am I wrong about that?

15           In other words, is there anything in the omnibus

16   history here that puts Ms. Pedroia on notice of what the

17   challenge to her claim is?

18           MR. TAYLOR: No, Your Honor, not specifically with

19   respect to Ms. Pedroia. If I'm understanding your question, we

20   engaged in the ADR procedures with the information exchanged,

21   went to mediation and --

22           THE COURT: No, I got that. No, I understand that.

23           MR. TAYLOR: Yeah.

24           THE COURT: But what I am saying is that it's

25   unfortunate that she ignored -- first requested a continuance

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    on the mediation and then didn't participate, but that happens,

2    but that, in and of itself, is not grounds to cause a claim to

3    be disallowed.  And the question then is what does the record

4    reflect as PG&E's challenge to her claim, whether it's 250- or

5    informally a million and what I don't remember -- and I'm just

6    asking you to refresh my memory -- is there something that

7    precedes the she didn't show up at mediation objection on the

8    eighty-fifth omnibus?  Is there --

9                MR. TAYLOR:  No.

10               THE COURT:  -- an earlier one?

11               MR. TAYLOR:  No, there's not.

12               THE COURT:  No.  Okay.  Then it seems to me that

13   despite everything else, since the Supreme Court taught me in

14   PG&E I that the claims objections have to be founded on

15   applicable nonbankruptcy law, there's no applicable

16   nonbankruptcy law that says your claim is disallowed because

17   you didn't come to the mediation.  Now, obviously, there may be

18   circumstances --

19               MR. TAYLOR:  Well --

20               THE COURT:  -- when courts strike claims for long

21   participation in mediation, but I'm not going to do that.  So I

22   am going to require that PG&E put in issue its substantive

23   objections.  I think you were about to say something?

24               MR. TAYLOR:  I guess two points, Your Honor.  It's

25   certainly understood if you're not inclined to disallow it

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  based on the noncompliance.  I will say, just for the record so

2  that we don't seem, I suppose, frivolous, we did get in the ADR

3  order that Your Honor issued essentially a requirement to

4  participate in good faith, and we give notice in all caps on

5  mediation notice --

6          THE COURT:  Right.

7          MR. TAYLOR:  -- "failure to comply with the

8  instructions may result in a formal objection being filed

9  seeking disallowance of your proof of claim".  So it's not out

10 of the blue, but I do understand what you're saying and I think

11 we would accept needing to file a statute of limitations

12 objection on this one.

13         THE COURT:  Well, but isn't -- but the history that --

14 see, the record that you just orally restated, and Ms. Pedroia

15 was on the call for a portion of it, and then she obviously was

16 disagreeing with what you were saying, but she asserted there

17 was water damage.  You told me that the company paid 3,200

18 dollars.  It offered another 5,000, and she rejected a

19 variation of that at 1,000 dollars and that's a history.

20         I'm just -- let me try it this way.  I don't think

21 it's constructive on a pro se that's highly litigious to say

22 the consequences are, in effect, striking your claim for not

23 being at the mediation.  It's not in -- I'm just not going to

24 do that.  It doesn't seem right.

25         But the question is whether there's an objection apart

PG&E Corporation and Pacific Gas and Electric Company

1  from the statute of limitations. Well, let me put it this way.

2  You have an objection to the claim that you think can go to the

3  merits, so I'm going to suggest that you simply address

4  whatever objections there are that are appropriate. And if the

5  statute of limitations is it, that's fine. If there's

6  something else, that's up to you.

7        But I don't want to take advantage -- it's not like

8  I'm taking advantage of a pro se litigant who is obviously

9  distraught and distressed by this state of affairs and unhappy

10 with all of this who are the participants saying okay, the

11 consequence is you lose your claim because you didn't come to

12 the mediation.

13       So I'm going to take it off calendar and drop from the

14 calendar the eighty-fifth omnibus based upon nonparticipation.

15 Mr. Taylor, let me say that in another case, on another record,

16 I might very well strike a claim if there's a noncompliance

17 with the ADR but not on this record. I don't think it's -- I'm

18 not comfortable doing it that way. So I'll just assume we'll

19 see Ms. Pedroia's claim somewhere in the future on another

20 objection.

21       MR. TAYLOR: Understood, Your Honor. Thank you.

22       THE COURT: Okay/ Anyone else on the call wish to be

23 heard on this matter? Okay.

24       Thank you for your time, Mr. Taylor. We will take it

25 from there. Thank you. And that will conclude the hearing.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. TAYLOR:  Okay.  Thank you.

2    (Whereupon these proceedings were concluded)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

of 73
(973) 406-2250 | operations@escribers.net | www.escribers.net

1                    I N D E X

2    RULINGS:                                    PAGE LINE

3    Debtors' seventy-ninth omnibus objection is      4      16

4    granted.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

of 73

1            C E R T I F I C A T I O N

2

3   I, Linda Ferrara, certify that the foregoing transcript is a

4   true and accurate record of the proceedings.

5

6

7

8

9

    _____

10   /s/ LINDA FERRARA, CET-656

11

12   eScribers

13   7227 N. 16th Street, Suite #207

14   Phoenix, AZ 85020

15

16   Date:  July 1, 2021

17

18

19

20

21

22

23

24

25


Case: 19-30088    Doc# 10885    Filed: 07/02/21    Entered: 07/02/21 07:16:44    Page 62
of 73  | operations@escribers.net | www.escribers.net

## A

**abbreviated (1)**
54:15
**abide (1)**
30:21
**ability (1)**
13:19
**able (2)**
39:13;44:17
**aborted (1)**
56:12
**above (1)**
19:6
**absolutely (1)**
52:2
**accelerated (1)**
40:4
**accept (1)**
58:11
**acceptable (1)**
38:20
**across (2)**
35:4,7
**action (2)**
8:4;24:4
**actually (6)**
22:4;24:4,4;32:4;
37:13;41:9
**add (1)**
20:1
**Addington (98)**
16:22,23;17:3,6,6,9,
20;18:10,21,24;19:3,
16,18,22;20:1,7,9,12,
14,18,20,23;21:4,7,14,
17,21;22:7,8,11,20;
23:5,18,22;24:13,14,
20;25:2,8,10,14,18,20,
22,24,25;26:3,10;
28:22;29:2,12,16,25;
30:4,8,10,21,23,25;
31:5,14,17,19;32:2,10,
20,21,23;33:4,16;34:4,
19;35:17,23;36:9,12;
37:6,10,19,24;38:1,7,
19,20,22;39:1,4,8,24,
25;40:8;41:13,14,18,
19,25;42:2,4
**Addington's (3)**
18:15;23:1;33:11
**addition (1)**
17:14
**additional (3)**
4:9,12;52:16
**address (1)**
59:3
**adequate (1)**
49:12
**adjudicate (1)**
13:13
**adjudication (1)**

15:21
**administer (2)**
13:13;47:18
**administered (2)**
6:5;14:2
**admissible (3)**
36:18,19;50:10
**ADR (8)**
3:15;39:19;54:22;
55:5,8;56:20;58:2;
59:17
**advantage (2)**
59:7,8
**advice (1)**
26:4
**advised (1)**
36:14
**affairs (1)**
59:9
**affect (1)**
6:1
**again (27)**
4:18;7:3;13:7,14;
14:11,25;18:2;23:11,
21;24:19;25:1;27:5;
30:24;34:12;35:16;
36:13;37:11,18,20;
38:17;40:3,13,23;
41:23;45:7;54:13;56:3
**against (6)**
9:14,24;14:1;18:4;
35:13;38:8
**ago (7)**
20:9;21:5;23:20;
28:20;32:23;33:19;
35:8
**agree (6)**
5:3;14:8,9;21:15;
29:8;41:22
**agreed (5)**
26:13;27:12;39:9;
40:22;54:19
**agreement (5)**
18:23;20:8;30:3;
31:6;36:6
**agreements (1)**
17:15
**agrees (1)**
23:22
**ahead (6)**
15:7;31:16;45:15;
51:18;52:10;54:9
**allegations (1)**
20:5
**allege (1)**
20:21
**alleges (1)**
51:21
**allow (3)**
25:15;35:10;36:21
**allowed (2)**
10:19;44:15
**almost (1)**

31:10
**although (2)**
19:6;30:14
**alums (1)**
38:4
**always (2)**
16:14;34:1
**amenable (3)**
33:6;39:18;40:13
**amended (1)**
55:15
**among (1)**
55:1
**amount (4)**
9:19,21;12:15;17:12
**amounts (1)**
21:24
**ample (1)**
4:18
**and/or (1)**
36:2
**and-a-half (1)**
26:16
**anymore (2)**
30:7;46:19
**apart (1)**
58:25
**appear (3)**
52:21;55:3,3
**appeared (1)**
55:2
**applicable (4)**
27:18;41:5;57:15,15
**application (1)**
27:18
**applied (1)**
41:5
**apply (1)**
27:16
**appreciate (5)**
12:14;15:12;16:4;
40:3;41:11
**appropriate (4)**
15:10;44:11;55:24;
59:4
**approved (1)**
9:6
**Area (2)**
32:5,7
**argue (2)**
29:19,21
**arguing (1)**
48:8
**argument (4)**
3:16;25:19,20;29:6
**arising (1)**
33:12
**around (1)**
37:1
**arrived (1)**
55:7
**aside (4)**
11:8;34:5;35:7;

36:23
**aspect (1)**
18:8
**assent (1)**
55:20
**assert (2)**
20:25;35:13
**asserted (2)**
28:4;58:16
**asserting (1)**
14:21
**assertion (2)**
35:1,2
**assisting (1)**
26:1
**assume (1)**
59:18
**assumed (1)**
25:14
**AT&T (2)**
3:20;42:23
**attached (3)**
4:8;19:8;29:5
**attempt (3)**
32:19,22;39:23
**attempted (1)**
30:18
**attempting (1)**
30:15
**attorney (1)**
40:21
**attributed (1)**
51:25
**audio (5)**
12:24;13:1;16:6;
26:21;29:10
**authority (1)**
50:1
**automatically (1)**
30:1
**available (3)**
10:19;41:12;45:3
**aware (1)**
44:13

## B

**back (10)**
19:11;22:8;27:10,20;
36:13;37:18;49:1,2;
50:8;54:8
**background (9)**
33:9;40:5,6;41:12;
48:21;51:20;52:22;
54:21;55:4
**bad (1)**
51:17
**bankruptcy (29)**
8:2,4;9:10,13;10:9,
20;11:22,23;14:7;17:7;
20:13;21:20;24:6,8;
28:3;33:22,23,24;34:2,
3,23;35:19;40:16,24,

25;41:1;51:21;52:20;
54:13
**banquet (1)**
49:15
**baptize (1)**
10:5
**bar (3)**
7:23;16:9,12
**based (4)**
14:15;18:12;58:1;
59:14
**basis (3)**
23:18;55:7,24
**Baxendale (5)**
7:22,24;8:10;10:17;
12:21
**Bay (1)**
32:5
**became (1)**
11:14
**become (1)**
22:19
**beep (1)**
53:5
**began (1)**
30:2
**beginning (1)**
27:20
**behalf (1)**
3:13
**believes (1)**
27:21
**benefit (1)**
14:17
**Benvenutti (3)**
3:13,14;43:16
**best (3)**
13:21;14:20;30:21
**better (3)**
5:21;12:19;26:8
**beyond (1)**
18:17
**bids (1)**
19:9
**big (1)**
51:10
**bit (2)**
51:20;54:13
**bitten (1)**
11:25
**blowing (1)**
11:2
**blue (1)**
58:10
**books (2)**
18:17;56:13
**borderline (1)**
49:1
**both (10)**
8:6;11:19;17:20;
19:9;21:15;28:13;30:3;
39:17;40:5;45:4
**Boulevard (1)**

Case: 19-30088    Doc# 10885    Filed: 07/02/21    Entered: 07/02/21 07:16:44    Page 63
of 73

32:9
**breach (13)**
10:2;19:2;20:8,10,
15,23,25;21:1;29:12;
33:10,13,18;34:8
**breached (7)**
18:23;19:21,23;
20:21;31:6;34:4;35:8
**break (1)**
42:23
**breakdown (1)**
33:25
**breathe (1)**
12:13
**breathing (1)**
12:11
**brief (6)**
18:5,18;19:1,1;
21:16;35:21
**briefed (2)**
36:13;49:13
**briefing (7)**
18:13;23:8;34:18;
39:9,20;40:22;41:24
**briefly (1)**
26:4
**bring (8)**
3:7;4:24;16:21;
21:21;36:14;39:25;
40:21,24
**bringing (1)**
17:1
**brother (1)**
48:11
**bunch (2)**
8:15;36:18
**bundle (1)**
15:22
**burdened (1)**
26:24
**burdening (1)**
32:2
**business (2)**
14:12;47:5
**buyer (2)**
22:21,21
**Bye-bye (1)**
16:20

**C**

**cables (1)**
42:25
**calculation (1)**
42:5
**calendar (9)**
4:1;38:10;39:15,18;
42:7,16;47:18;59:13,
14
**CALIFORNIA (3)**
3:1;6:2;8:15
**Call (15)**
3:3,8,20;4:2;5:24;

6:6;40:22;42:15,23;
43:11;44:17;48:5;
53:24;58:15;59:22
**called (2)**
3:18;34:11
**Calling (2)**
3:5;43:8
**came (4)**
12:21;19:7,11;26:23
**camera (1)**
5:10
**Camp (2)**
7:7;13:9
**Can (42)**
3:10;4:18;5:11,24;
7:4,8;8:8;10:16,16;
11:1,4,15,20;14:22;
15:3;17:4,4,4;21:15;
22:2;24:8;31:7;32:15;
33:8,13,14;35:14;
37:22,23;39:5,18,19;
44:23;45:14,15,17;
47:2,7,7;51:13;56:1;
59:2
**caps (1)**
58:4
**car (2)**
40:18,18
**case (12)**
5:21;9:10;13:22;
28:19;32:3,4;38:10;
39:7;45:1;49:2;55:2;
59:15
**cases (1)**
8:15
**cause (4)**
8:4;9:23;12:4;57:2
**caused (1)**
52:14
**certainly (6)**
8:17;21:11;26:4;
30:12;33:14;57:25
**challenge (3)**
34:3;56:17;57:4
**challenged (1)**
28:5
**chances (1)**
36:8
**change (2)**
16:11;50:14
**changed (2)**
13:1;36:10
**channeled (3)**
7:3;9:4;10:10
**charge (2)**
24:17;44:15
**charges (1)**
33:11
**charred (1)**
50:15
**check (1)**
52:19
**checked (2)**

4:2,22
**choices (1)**
40:18
**choose (1)**
14:15
**circumstances (2)**
31:8;57:18
**cite (3)**
7:25;10:17;17:17
**cited (1)**
24:13
**claim (89)**
3:17;4:3,11,12,15,17,
20,21;5:16;6:4,5,17,21;
7:1,2,5,15,17;9:4,5,8,9,
11,14,19;10:11,16;
11:5,6,9,21,24;12:16;
13:7,13;14:13,18,19,
22;15:2,5,8,22;18:16,
20;22:3,23;23:10;24:1;
25:3;26:23;28:4,5,7;
33:3,11;34:25;35:1,14,
16,17,19,20;41:3,16;
48:14;49:24;50:4;
51:21,24;52:20;54:13;
55:13,14,14,15,21,24,
25;56:17;57:2,4,16;
58:9,22;59:2,11,16,19
**claimant (4)**
28:6;35:12,19;44:10
**claimants (1)**
10:10
**claimed (1)**
6:25
**claiming (1)**
8:22
**claims (19)**
3:23;6:1,7,19,25;7:6;
9:7;10:21;11:7;12:24;
13:8;14:1,2;15:23;
18:7;21:24;37:13;
57:14,20
**clear (12)**
6:24;14:10;15:21;
22:9,15,18;27:1;31:22;
33:16;40:9;43:23;56:5
**CLERK (14)**
3:4;4:23;15:12;17:1;
42:19;43:7;52:24;53:1,
5,10,22;54:2,4,6
**client (4)**
29:19;33:8,14;36:25
**clients (1)**
40:14
**client's (1)**
14:3
**cloud (1)**
22:14
**coin (1)**
8:9
**cold (1)**
50:20
**colleague's (1)**

42:6
**colloquy (1)**
15:15
**combination (1)**
7:4
**comfortable (1)**
59:18
**coming (1)**
15:25
**comments (1)**
26:25
**commit (2)**
36:24;39:6
**commitment (1)**
41:17
**committed (1)**
40:15
**communicate (4)**
44:12,21;46:22,23
**communicating (2)**
44:13,20
**communication (1)**
53:15
**communications (2)**
44:9;53:14
**companies (2)**
33:24,25
**company (19)**
10:13,20;15:23,24;
25:2,4;27:21,23;31:13;
33:5;34:8,25;35:2;
36:23;37:1,22;39:6;
50:25;58:17
**company's (1)**
7:16
**compelled (1)**
35:23
**compensable (1)**
8:12
**compensated (1)**
12:17
**compensates (1)**
12:16
**competent (1)**
49:13
**comply (1)**
58:7
**compromise (1)**
52:18
**computer (2)**
46:6,19
**concede (3)**
13:9,25;15:3
**conceded (2)**
10:13,13
**conclude (2)**
42:20;59:25
**concluded (2)**
43:3;60:2
**condition (1)**
31:1
**conditions (1)**
17:23

**conduct (2)**
8:16;10:5
**confer (1)**
33:8
**conference (4)**
3:20;39:11;42:11;
44:17
**confers (1)**
40:12
**confused (1)**
41:2
**connections (1)**
42:24
**consensual (2)**
33:6;37:3
**consequence (1)**
59:11
**consequences (3)**
14:16;34:14;58:22
**considerably (1)**
19:10
**consistent (5)**
6:22;7:9,10;36:20;
42:7
**constructive (1)**
58:21
**contain (1)**
4:9
**contention (1)**
18:15
**contentions (1)**
45:10
**contested (2)**
32:14,14
**contests (1)**
11:9
**context (2)**
34:24;41:3
**contingency (1)**
11:14
**continuance (1)**
56:25
**continue (5)**
35:6;39:11;41:15;
43:25;45:9
**continued (1)**
42:12
**continuously (1)**
12:11
**contract (25)**
8:6,8,11;10:2,23;
19:8,20,22;20:11,15,
22,23,25;21:2;27:2,4,
10;28:19;32:13;33:10,
13,18;34:4,8;35:8
**contracted (1)**
34:6
**contractor (1)**
19:9
**contractual (3)**
33:25;34:9,10
**contrary (1)**
18:3

**convenient (1)**
41:12
**conversation (2)**
5:5;37:23
**conversations (2)**
43:24;45:5
**cooperate (2)**
19:3;21:14
**Corporation (2)**
3:6;43:9
**corporations (2)**
48:22;49:5
**correctly (1)**
34:16
**correspondence (3)**
4:17;55:17,18
**coughing (1)**
16:7
**counsel (1)**
42:14
**count (1)**
6:18
**counting (1)**
26:16
**County (1)**
15:20
**couple (1)**
54:17
**course (6)**
10:3;17:13;29:21;
33:9;51:13;53:19
**Court (227)**
3:3,4,8,18,25;4:16,
24;5:4,8,15,19;6:4,9,
15,20,22;7:9,12,14,23;
8:19,22,25;9:12,17,19,
23;10:7,16,24;11:4,12,
16,18,22,23,24;12:2,4,
5,9,14,23;13:6,7,18,24;
14:7,11;15:4,6,15,20;
16:3,6,9,12,15,17,19,
21;17:3,7,8,10,21;
18:11,19,21,25;19:15,
17,20,24;20:3,8,10,13,
16,19,21,24;21:6,13,
15,18;22:2,6,20;23:1;
24:3,6,6,8,8,15,19,25;
25:9,12,17,19,21,23;
26:1,6,11;28:2,3,25;
29:9,14,17;30:1,5,9,20,
23;31:1,6,15,24;32:2,
11;33:2,5,16,23;34:3,
22,23;35:18;36:10,21;
37:8,11,20;38:8,17,20,
25;39:2,5,14,22;41:15;
42:1,3,13,20;43:2,5,7,
10,13,17,22;44:3,6,9,
22;45:1,15,18,21,24;
46:1,7,9,11,14,17,21;
47:1,3,5,9,11,13,16,18,
18,24;48:3,6,7,12,13,
17;49:8,10,10,17,19,
21,23;50:3,7,9,21,23;

51:8,12,14,18;52:4,6;
53:3,8,11,17,20,23;
54:5,8;55:11,20;56:5,
22,24;57:10,12,13,20;
58:6,13;59:22
**courteous (1)**
5:18
**courthouse (1)**
29:3
**courts (2)**
34:20;57:20
**Court's (1)**
5:25
**COVID (1)**
44:23
**create (1)**
24:13
**creates (1)**
14:5
**creditors (1)**
28:4
**creditor's (1)**
28:4
**critical (1)**
18:16
**cross-wires (1)**
45:4
**current (2)**
9:13;14:3

**D**

**damage (4)**
18:6;51:22,24;58:17
**damaged (1)**
49:7
**damages (19)**
8:9,11,11,22;10:17;
11:16,18,24;13:3,13;
18:7,9;25:5;26:14,15;
27:24;33:12;34:7;
55:21
**date (4)**
22:8;32:24;40:9;
54:16
**dates (1)**
50:16
**David (3)**
3:14;17:6;43:15
**day (6)**
9:14;12:5;13:2,7;
16:19;23:12
**days (2)**
40:11;54:24
**deal (6)**
9:1;15:25;34:14;
36:6;44:15;49:3
**dealing (2)**
12:23;15:23
**dealt (1)**
14:6
**deaths (3)**
10:6,8,9

**debtor (3)**
13:25;35:13,19
**debtors (2)**
3:13;4:13
**debtors' (1)**
28:23
**decide (5)**
34:14,20;35:10;
37:25;38:1
**decides (1)**
22:20
**decision (1)**
39:25
**decisions (1)**
47:19
**declare (1)**
21:22
**defeat (1)**
25:3
**defendant (1)**
35:18
**defense (1)**
56:14
**delivered (1)**
4:4
**demand (2)**
54:19,25
**demanded (1)**
52:16
**denied (1)**
24:1
**Dennis (2)**
3:5;43:8
**depends (1)**
6:18
**despite (1)**
57:13
**destroyed (1)**
52:19
**determination (3)**
18:20;24:16;31:9
**determine (6)**
18:9;19:12;28:11;
31:12;36:4,21
**determined (3)**
9:21;10:3;52:13
**determines (2)**
31:8,11
**determining (1)**
28:8
**developed (1)**
11:12
**dictate (2)**
28:13;41:5
**different (9)**
6:2,4,7;18;13:2,8;
14:5;19:6;34:24;44:18
**differently (2)**
6:5;9:13
**difficult (1)**
12:12
**dig (1)**
41:8

**digging (1)**
41:8
**dinner (1)**
49:16
**directly (3)**
41:21;44:12,16
**director (2)**
37:7;38:23
**disagreeing (1)**
58:16
**disagrees (1)**
23:23
**disallow (4)**
22:2;55:13,24;57:25
**disallowance (1)**
58:9
**disallowed (4)**
4:15,21;57:3,16
**disallows (1)**
11:24
**disconnected (1)**
53:2
**discovery (1)**
42:10
**discrete (1)**
14:2
**discuss (1)**
39:20
**discussion (1)**
40:20
**discussions (1)**
21:10
**disinclined (1)**
56:3
**dislike (1)**
47:13
**dismissed (1)**
12:20
**dispose (1)**
35:11
**dispute (8)**
26:12,19;27:2,11,16;
34:9,10;36:4
**disputed (5)**
26:20;28:17;35:22,
24;37:13
**distraught (1)**
59:9
**distressed (1)**
59:9
**district (1)**
34:22
**docket (7)**
7:15;9:1;15:19;45:1,
2,3,12
**doctrine (1)**
7:22
**document (8)**
22:6;23:19;26:20;
27:12;30:2,7;44:22,23
**documentation (2)**
50:5,10
**documents (4)**

21:10;46:12,20;
50:17
**dollar (1)**
9:19,21;33:3;51:6;
55:21
**dollars (11)**
4:3;24:22;26:15,16;
51:22;52:15,16;54:19;
55:1;58:18,19
**done (5)**
24:18;27:7;33:19;
44:24;52:1
**down (2)**
37:1;48:12
**Drive (2)**
32:5;46:19
**drop (1)**
59:13
**dry (1)**
12:12
**dummy (1)**
48:5
**during (1)**
52:17

**E**

**earlier (2)**
56:13;57:10
**easement (47)**
17:17,24;18:15;
19:19;21:5,11,22;22:5,
12,14,15,18,22;23:15,
19;24:5,12,13,16,21;
25:15;26:14,21,22,24;
27:22,23,24;29:4,5,6,7,
12;30:10,12,17,19;
31:2,4,21,23;32:24;
33:11,20;34:5,11;35:3
**easements (1)**
32:6
**easier (1)**
29:17
**effect (1)**
58:22
**effected (1)**
7:7
**effective (1)**
22:4
**efficient (1)**
41:7
**eight (1)**
30:14
**eighty-fifth (3)**
56:11;57:8;59:14
**either (8)**
15:1;31:3;34:1;35:8;
37:22;38:7;39:6;40:21
**Electric (7)**
48:22,23;49:5,6;
50:12,12,14
**electricity (1)**
24:17

**electronic (1)**
42:16
**elemental (1)**
18:17
**elevations (2)**
19:6,7
**else (4)**
33:1;57:13;59:6,22
**email (5)**
4:8,11;43:25;46:1;
48:19
**emailed (1)**
54:24
**emailer (1)**
46:2
**emails (5)**
45:6;46:4,7;55:16,18
**end (2)**
23:12;38:11
**engaged (1)**
56:20
**engaging (1)**
54:24
**entered (1)**
28:19
**entitled (4)**
18:2;24:20,21,22
**envisions (1)**
8:11
**equal (1)**
34:19
**essentially (5)**
9:8;18:22;21:24;
24:11;58:3
**established (1)**
18:8
**even (6)**
18:7;30:16;36:2;
44:12;45:8,10
**event (1)**
55:2
**events (2)**
11:9;13:10
**everyday (3)**
17:15;32:3,3
**evidence (9)**
25:6,16,17;27:16,17;
36:1,18,19;50:10
**evidentiary (5)**
23:2;25:6,7,11;26:11
**ex (2)**
53:13,14
**exacerbated (3)**
13:3,14,20
**exactly (2)**
8:13;41:4
**example (1)**
26:13
**exchange (1)**
42:14
**exchanged (1)**
56:20
**excuse (4)**

38:1;52:24;53:1;
56:9
**executed (1)**
26:20;27:13
**exercise (1)**
18:1
**existed (2)**
11:9;14:22
**existent (1)**
10:11
**expect (1)**
16:11
**expects (1)**
49:6
**expense (2)**
15:17;56:2
**experience (2)**
48:21;49:5
**explained (1)**
14:15
**expunged (2)**
4:15;9:11
**extent (2)**
14:2,4
**extinguish (2)**
17:24;31:2
**extinguished (2)**
18:15;24:16
**extinguishing (1)**
22:4

### F

**face (1)**
14:1
**fact (12)**
10:4,7,8;13:3;18:1;
19:9;26:16;28:16;
29:18;31:10;38:5,14
**facts (22)**
26:12,17,18;27:9,11,
15,17;28:12,13,17;
33:21;35:10,22,23,24,
25;36:1,2,2,4,12;41:4
**failure (3)**
55:7,12;58:7
**fair (1)**
50:20
**fairly (1)**
40:4
**fairness (1)**
33:10
**faith (1)**
58:4
**fallback (1)**
55:25
**false (1)**
52:2
**familiar (6)**
3:15;36:14;38:18;
40:24;41:1;50:9
**far (1)**
22:2

**Fast (1)**
52:20
**fault (2)**
48:24;49:1
**favor (3)**
20:4;28:14;36:3
**February (1)**
54:16
**federal (1)**
34:22
**feel (1)**
50:19
**fees (1)**
24:17
**felt (1)**
26:14
**Fereshteh (1)**
3:8
**few (3)**
37:7;46:3;54:24
**fifty (1)**
7:21
**figure (1)**
22:23;28:15,15
**file (16)**
9:7;11:5;12:19;15:4;
17:13;22:3;23:9;27:5;
35:21;39:12;40:2;
41:18,19;44:22,25;
58:11
**filed (17)**
4:4;9:10,13,24;10:1;
17:10,11;20:6;28:7,23;
30:7;34:25;40:3;52:21;
54:13;55:15;58:8
**files (2)**
35:19;38:17
**filing (3)**
9:18;31:18;44:23
**find (3)**
15:19;27:17;29:7
**fine (6)**
5:15;16:2;22:21;
32:15;43:13;59:5
**finish (2)**
44:3,4
**fire (33)**
6:6,7;7:1,3,7,17;
8:19,23;9:4,4,5,8,9,11,
24,25;10:13;11:7,15;
12:6;13:1,2,4,9,9,10,
20;14:3,4,5;16:1;
42:11;50:13
**Fires (8)**
6:2,12,19;7:5;8:13,
25;12:12,16
**first (9)**
7:20;18:5;25:11;
28:16;30:6;35:21;36:4;
43:3;56:25
**Five (6)**
20:9;28:19;32:23;
33:19;35:8;42:22

**followed (1)**
21:11
**following (1)**
44:14
**foot (1)**
50:15
**foreclose (1)**
13:18
**formal (2)**
15:18;58:8
**former (1)**
38:22
**forth (2)**
49:2,2
**forum (5)**
9:9;15:24,24;24:15;
30:5
**forward (3)**
38:11;43:2;52:20
**founded (1)**
57:14
**four (1)**
21:4
**frame (1)**
34:15
**framed (2)**
28:21;33:13
**FRANCISCO (2)**
3:1;52:1
**frankly (1)**
13:21
**free (4)**
9:9;10:14,18;36:15
**Friday (1)**
39:13
**friend (2)**
39:2,3
**frivolous (1)**
58:2
**further (3)**
4:13;18:19;53:14
**future (3)**
12:18;15:19;59:19

### G

**Gas (5)**
48:22,23;49:5,6;
50:12
**gather (1)**
14:7
**gave (2)**
26:25;50:14
**generally (2)**
37:5;40:16
**given (7)**
38:14;40:5;52:23;
55:4,4,6;56:2
**glad (1)**
22:21
**goal (1)**
12:4
**goes (6)**

18:17;35:20;38:11;
39:15;45:1,2
**Good (20)**
3:10,12;5:11,13,19;
7:23;16:6,19;17:3,7;
26:7;32:12;39:2,2;
42:3;43:10,13,15;51:5;
58:4
**good-faith (1)**
55:5
**goods (1)**
4:3
**grant (4)**
4:16;17:23;24:11;
31:1
**granted (2)**
17:24;31:2
**granting (1)**
30:12
**grantor (1)**
30:14
**grew (1)**
32:4
**grounds (3)**
55:13;56:1;57:2
**guess (5)**
25:10,22;29:2;42:13;
57:24
**guilty (2)**
8:17,20
**guy (1)**
50:13

### H

**Hadley (6)**
7:21,23,24;8:10;
10:17;12:21
**hand (3)**
3:9;17:19;42:17
**hand-delivered (1)**
52:19
**handling (3)**
3:16;5:2;16:23
**handwritten (3)**
29:5,15,18
**happen (3)**
18:12;19:13;30:1
**happened (5)**
12:7,9;26:18;31:18;
36:7
**happening (1)**
31:22
**happens (2)**
29:24;57:1
**happy (5)**
20:1,4,4;31:24;55:9
**harm (4)**
12:5,9,10;14:24
**heads (1)**
40:23
**hear (1)**
53:5

Min-U-Script®
Case: 19-30088    Doc# 10885    Filed: 07/02/21    Entered: 07/02/21 07:16:44    Page 66
of 73
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(4) electronic - hear

**heard (7)**
3:9,22;15:3;42:15;
48:8;53:17;59:23
**hearing (21)**
23:2;25:6,7,11;
26:12;32:1,12;33:9;
34:9;38:17;39:12;
41:15;42:21;43:18;
47:23;48:10;50:19;
53:25;54:1,10;59:25
**hearsay (1)**
36:20
**heck (1)**
46:20
**Hello (1)**
54:4
**help (1)**
19:14
**hereby (2)**
17:24;31:2
**here's (2)**
31:22,23
**hey (1)**
34:5
**hi (1)**
50:18
**highly (1)**
58:21
**himself (1)**
7:4
**hired (1)**
39:1
**history (6)**
21:19;26:25;32:13;
56:16;58:13,19
**hold (9)**
6:15;47:11;49:17,19,
19;52:7;53:3,14;54:1
**holding (1)**
8:10
**home (3)**
32:7;45:20;49:7
**homicides (1)**
8:18
**Honor (34)**
3:7,12,24;4:7,23;5:3,
13;14:9;15:11;16:25;
17:1;18:14;23:24;33:8;
38:19;39:10;42:19;
43:1,4,15;51:2,19;
52:12;53:1,10;54:2,4,
12;55:19,23;56:18;
57:24;58:3;59:21
**Honorable (2)**
3:4;43:7
**hook (3)**
3:19;37:16,18
**Hope (1)**
16:6
**house (2)**
22:21;52:1
**hundred (2)**
26:15;49:3

**hundreds (4)**
21:9,9;31:25;45:3

**I**

**idea (6)**
5:25;25:1;29:22;
32:12,13;47:22
**identical (1)**
29:15
**ignore (1)**
45:11
**ignored (1)**
56:25
**imagine (1)**
23:14
**immediate (2)**
12:7,10
**immediately (1)**
44:20
**impact (1)**
36:5
**important (1)**
44:19
**importantly (1)**
38:4
**impose (1)**
26:6
**inclined (3)**
5:10;14:19;57:25
**include (1)**
4:19
**inconvenience (1)**
52:17
**increased (1)**
54:19
**independent (1)**
26:8
**indirectly (1)**
44:12
**indiscernible (4)**
20:13;49:18,22;
51:23
**influence (1)**
48:21
**informal (2)**
4:14,17
**informally (1)**
57:5
**information (4)**
4:9,12;17:12;56:20
**initial (1)**
12:18
**innocent (2)**
48:20;49:3
**instruct (1)**
35:15
**instructions (2)**
44:14;58:8
**intend (1)**
45:8
**intended (1)**
19:4

**intending (1)**
21:8
**intention (3)**
19:9;20:14,17
**intentional (1)**
8:16
**intentionally (1)**
51:16
**interest (3)**
13:21;14:21;22:18
**interesting (2)**
17:11;32:4
**interference (5)**
12:24;13:1;16:6;
26:21;29:11
**interject (2)**
45:14,17
**interrupt (1)**
52:10
**interrupting (1)**
52:9
**interrupts (1)**
53:9
**into (7)**
4:24;11:12;28:19;
41:8,8;45:4;56:2
**investigation (2)**
52:5,13
**invitation (1)**
48:13
**involve (1)**
41:21
**involved (1)**
21:19
**irrelevant (1)**
10:8
**irrevocable (1)**
24:12
**issue (16)**
9:2;18:16,18;23:5;
24:3;30:15;32:20;33:7,
13;34:16,18;35:11,20;
52:22;54:14;57:22
**issued (2)**
54:15;58:3
**issues (2)**
36:15;41:1

**J**

**Jabbari (3)**
3:8,22;43:3
**Jabbari's (3)**
4:10,14,20
**James (1)**
32:5
**JAMS (3)**
37:7;38:3,23
**January (3)**
9:13;13:16;14:22
**Jay (1)**
38:25
**job (2)**

36:3;47:16
**joining (1)**
42:9
**judge (11)**
12:22;33:22;37:2,16;
43:10,12;44:9;47:7,14;
49:25;51:16
**judgment (11)**
23:9,25;24:2,10;
28:11;34:21,23;38:13,
16;40:23;41:2
**judicial (3)**
24:15;29:3;32:17
**July (6)**
39:11,13;40:8,12,20;
41:16
**JUNE (3)**
3:1;9:6;36:24

**K**

**keep (2)**
10:7;52:9
**keeps (1)**
24:23
**Keller (3)**
3:13,14;43:16
**kept (1)**
43:17
**Key (1)**
32:6
**Kim (3)**
3:13,14;43:16
**Kincade (22)**
7:1,17;8:22,25;9:5,8,
9,11,24,25;10:13;11:6,
15;12:6;13:1,2,4,10,14,
20;14:5;16:1
**kind (7)**
8:13;28:5;32:3,4;
48:21
**knew (1)**
38:25
**knowing (2)**
14:23;53:4
**knows (1)**
6:16

**L**

**land (3)**
19:4;26:24;27:3
**large (2)**
17:12;33:24
**last (7)**
5:6,17;28:23;29:7,9;
30:11;48:16
**late (4)**
5:17;21:1;28:22;
35:9
**later (1)**
14:24
**law (12)**

7:21;26:3,17;27:22;
28:11;29:6;35:14;
36:12;38:14;43:23;
57:15,16
**lawsuit (4)**
20:6;21:25;34:2;
35:17
**lawyer (12)**
15:1,2;25:23;26:1,4,
4,7,9;33:18;36:14;
39:25;40:24
**lawyers (5)**
26:8;34:21,22;41:1;
47:25
**lays (3)**
35:21;38:14,14
**leak (1)**
52:13
**learned (1)**
40:5
**learning (1)**
33:9
**least (2)**
33:6;56:7
**leave (5)**
4:20;15:9;16:15;
34:5;39:15
**leaving (1)**
11:8
**lectured (1)**
53:13
**left (4)**
4:9;42:7;54:6,10
**legal (10)**
25:2;19,20;27:18,18;
28:9;34:18;35:22;36:3;
41:5
**legally (1)**
23:17
**less (1)**
19:10
**letter (1)**
12:18
**level (5)**
19:5,8,10,12;30:21
**leveling (1)**
27:3
**liability (1)**
15:25
**life (1)**
12:3
**likely (1)**
52:13
**limitations (6)**
52:22;54:14;56:1;
58:11;59:1,5
**line (8)**
3:20;32:6;43:20;
53:8,9,24,24;54:7
**lines (5)**
22:23;35:3,7;50:12,
14
**lining (1)**

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(5) heard - lining

Case: 19-30088    Doc# 10885    Filed: 07/02/21    Entered: 07/02/21 07:16:44    Page 67
of 73

44:16
**Listen (1)**
47:3
**literally (2)**
36:25;45:3
**litigant (2)**
44:10;59:8
**litigants (3)**
43:24;44:10;46:3
**litigation (2)**
21:23;34:21
**litigious (1)**
58:21
**little (5)**
41:2;42:21;50:13;
51:20;54:12
**local (1)**
32:8
**long (4)**
14:17;41:11;43:18;
57:20
**longer (1)**
42:21
**look (9)**
10:12;17:22;19:11;
22:23;29:7;30:23;43:2;
48:20;51:17
**looked (1)**
4:2
**lose (3)**
5:24;11:2;59:11
**loser (1)**
41:9
**lot (8)**
34:23;37:4;40:5,15;
41:1;10;50:6;55:21
**lower (2)**
7:23;16:9
**luck (2)**
16:6;42:3
**lung (1)**
13:16

**M**

**ma'am (1)**
45:18
**maintain (2)**
8:6,12
**maintaining (1)**
10:2
**maintenance (1)**
52:1
**makes (7)**
13:12;14:6;25:3;
31:9;37:4;38:13;41:7
**making (1)**
51:10
**man (1)**
48:20
**many (2)**
37:12;38:3
**March (1)**

54:18
**marketing (2)**
37:6;38:23
**material (8)**
18:1;36:4,5,8,10,11,
21;48:9
**matter (14)**
3:5;6;3;17:14;25:3;
27:21;28:11;34:2;
35:14;36:12;40:19;
42:6;43:3,8;59:23
**matters (1)**
39:9
**matured (1)**
11:13
**may (13)**
12:20;14:16,16;
15:13;21:21;22:2,18;
25:1;27:11,12;34:11;
57:17;58:8
**maybe (10)**
11:4;21:22;23:16;
27:14;31:3;33:19,20;
34:7;39:24;41:23
**mean (11)**
12:25;13:10,15;24:9;
25:1,12;30:10;31:7;
36:24;40:6;55:11
**means (4)**
17:22;26:12;36:5;
41:4
**measurable (1)**
12:24
**measure (1)**
25:4
**mediate (17)**
32:22;37:14,17,25;
39:7,8,13,23;40:11,12,
14,20;41:20;48:14;
49:1,13;56:3
**mediated (1)**
23:13
**mediating (1)**
40:13
**mediation (31)**
32:20;33:15;37:12,
23;38:11,23;39:18;
40:16;41:22;48:18,25;
49:11,23;54:15,16,17,
23,25;55:1,2,12;56:9,
12,21;57:1,7,17,21;
58:5,23;59:12
**mediator (6)**
37:2;38:2;48:20;
49:12;56:6,7
**mediators (2)**
37:13;38:5
**meet (3)**
30:18;31:20;39:20
**meet-and-confer (2)**
39:8;40:1
**memorialize (1)**
15:9

**memory (1)**
57:6
**merits (1)**
59:3
**message (1)**
54:6
**messed (1)**
34:6
**met (1)**
30:15
**meter (1)**
24:22
**mic (1)**
3:11
**microphone (2)**
5:9;52:8
**might (9)**
13:19;28:22;29:23;
35:8;36:14;37:15;41:6;
46:2;59:16
**million (8)**
24:22;26:16;33:3;
51:6;54:19,25;55:16;
57:5
**mind (5)**
11:14;24:1;25:5,9;
30:13
**mine (1)**
39:3
**minute (1)**
50:24
**minutes (1)**
42:22
**misery (1)**
41:10
**miss (1)**
42:17
**misunderstanding (1)**
25:10
**mixed (1)**
26:16
**moment (1)**
17:1
**Monday (1)**
36:7
**monetarily (1)**
10:11
**money (1)**
10:19
**Montali (3)**
3:5;43:8,10
**months (1)**
30:14
**more (17)**
3:15;6:16;11:3,25;
12:5;13:11,11;14:16,
24,24;18:19;28:9;
29:23;32:18;33:9;38:4;
54:13
**morning (11)**
3:10,12;5:11,13;
17:3,7;42:16;43:10,13,
15;51:5

**most (2)**
33:23;34:21
**motion (8)**
5:24;23:9,25;24:2;
28:10,23;38:13;40:2
**move (1)**
16:17
**moved (1)**
54:18
**moving (2)**
38:15,16
**much (1)**
16:5
**multi (1)**
33:24
**multiple (3)**
10:6,8;12:11
**must (1)**
32:16
**mute (3)**
52:8;53:8,9
**myself (1)**
35:17
**mysteries (1)**
17:14

**N**

**name (3)**
5:8;17:4,5
**names (1)**
50:15
**narrow (1)**
35:10
**native (1)**
7:6
**natural (1)**
52:14
**nature (1)**
30:11
**near (2)**
32:8;52:1
**necessary (1)**
19:13
**need (16)**
9:1,7;22:2,9,23;
23:12;34:17;41:20;
42:18,23,24;45:24,24;
47:3;48:12;54:10
**needing (1)**
58:11
**needs (2)**
36:25;41:8
**negotiate (1)**
13:24
**negotiated (1)**
27:11
**negotiating (1)**
14:12
**neither (1)**
15:1
**neutral (2)**
37:2;38:3

**next (3)**
5:2;18:12;39:13
**Nice (2)**
5:15,21
**night (2)**
5:6,17
**ninth (1)**
3:23
**nobody (7)**
10:4,4;11:8;28:18;
30:6;41:8;47:21
**noise (1)**
48:15
**nonbankruptcy (3)**
34:21;57:15,16
**noncompliance (2)**
58:1;59:16
**noncontingency (1)**
11:14
**nondisputed (1)**
36:11
**Nonetheless (1)**
52:14
**nonparticipation (1)**
59:14
**nor (1)**
15:1
**Northern (1)**
6:1
**notice (8)**
24:7;39:12;45:6;
54:15;55:6;56:16;58:4,
5
**Notwithstanding (2)**
52:21;54:14
**number (11)**
4:10;5:23;7:2,24;
8:17;16:9;30:16;53:6,
6,20,22
**numbers (1)**
6:20

**O**

**object (1)**
55:25
**objected (2)**
31:19;35:1
**objection (27)**
3:23;4:2,5,14;5:7;
7:2;18:18;21:24;23:10;
28:7;35:4,16,17;41:3,
16;49:11;55:7;56:4,10,
11,13;57:7;58:8,12,25;
59:2,20
**objections (3)**
57:14,23;59:4
**objects (1)**
35:19
**obligated (1)**
8:6
**obtain (1)**
24:4

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(6) **Listen - obtain**

Case: 19-30088    Doc# 10885    Filed: 07/02/21    Entered: 07/02/21 07:16:44    Page 68
of 73

**obviously (10)**
23:6;31:14;36:10;
44:19,23;45:13;51:20;
57:17;58:15;59:8
**occasion (1)**
7:25
**occur (1)**
8:25
**occurred (9)**
8:11,14,18;9:25;
10:9,14;12:7;13:1;
51:25
**o'clock (2)**
40:9;41:13
**off (7)**
26:8;37:16;38:10;
39:15,18;55:1;59:13
**offer (3)**
52:18;54:22,24
**offered (3)**
35:12;40:4;58:18
**office (2)**
29:4;47:2
**of-the-art (1)**
46:3
**Okay/ (1)**
59:22
**old (3)**
7:23;32:7;52:14
**older (2)**
16:13,14
**Old-fashioned (2)**
30:5;44:22
**omnibus (11)**
3:23;4:5,8,20;39:12;
55:7;56:9,11,15;57:8;
59:14
**one (35)**
5:23;6:15,17,21;7:5;
11:25;13:12;14:6;17:1,
10,13,22,22;21:16;
23:13;25:15;28:20;
29:2,18;30:1;31:8;
32:18,18;33:21;35:9,
11;38:4;41:6;46:3;
47:25;49:2;54:19,25;
57:10;58:12
**one- (1)**
43:23
**one-on-one (1)**
45:5
**only (9)**
4:7;6:16,20;7:14;
26:19;27:14;34:15;
44:14;53:5
**on-one (1)**
43:24
**onto (1)**
39:19
**oOo- (1)**
3:2
**opening (1)**
26:25

**opinion (2)**
13:8;56:6
**opponent (1)**
15:1
**opportunity (5)**
4:18;18:18;23:6;
38:15;53:15
**oppose (1)**
23:6
**opposed (1)**
28:7
**orally (1)**
58:14
**order (8)**
3:3;4:19;5:25;23:9;
37:11;43:3;56:1;58:3
**orders (1)**
43:2
**others (1)**
6:11
**otherwise (2)**
32:21;40:16
**out (14)**
4:11;5:16;15:25;
22:23;24:19;27:17,21;
28:15,16;35:21;38:14,
14;39:7;58:9
**outcome (6)**
28:9,14;36:3,5,11;
41:5
**outcomes (1)**
35:22
**outside (1)**
34:2
**over (5)**
12:11;28:19;32:2;
33:12;42:6
**overburden (1)**
31:25
**overhead (1)**
50:12
**overrule (1)**
14:16
**overruled (1)**
4:14
**overstate (1)**
23:11
**own (8)**
14:23;26:21,23,23;
36:15;40:1;53:24;
54:23
**owned (1)**
26:22

**P**

**Pacific (5)**
48:22,23;49:5,6;
50:12
**pages (2)**
21:9;31:25
**paid (4)**
35:3;37:13;52:15;

58:17
**papers (2)**
40:3;51:21
**Parada (9)**
4:22;16:21;42:14,18;
44:15;53:2,4,20;54:4
**pardon (1)**
31:16
**Park (1)**
32:8
**part (5)**
4:19;15:16;30:6,6;
56:11
**parte (2)**
53:14,15
**participants (1)**
59:10
**participate (9)**
10:19;44:17;48:13,
17;55:8,12;56:7;57:1;
58:4
**participation (2)**
55:5;57:21
**particular (1)**
6:3
**parties (6)**
30:3;34:1;37:17;
38:3,8;45:13
**parts (1)**
18:17
**party (4)**
30:5,6;38:15,16
**passes (1)**
9:8
**passing (1)**
33:12
**Pause (1)**
54:3
**pay (4)**
10:20;35:6;50:1,1
**paying (2)**
38:4,5
**Pedroia (82)**
3:18;42:5;43:11,12,
13,17,19,22;44:2,5,8;
45:14,17,19,23,25;
46:1,5,8,9,10,11,11,13,
15,18,21,25;47:2,4,7,
10,11,11,12,15,17,20,
24;48:2,4,7,7,11,15,19;
49:8,9,15,18,20,22,25;
50:3,5,8,11,18,22,23;
51:3,6,9,10,13,14,16,
23,25;52:2,4,6,8,16;
53:2,13;54:7,18,24;
56:16,19;58:14
**Pedroia's (4)**
3:17;51:21;52:20;
59:19
**people (10)**
16:13;23:16;28:15;
33:22;34:22,24;44:16;
45:4;48:25;50:16

**percent (1)**
49:3
**perfected (1)**
8:4
**perform (1)**
27:3
**performed (1)**
28:20
**perhaps (1)**
55:12
**period (1)**
37:21
**permanent (3)**
24:12;29:6;32:25
**permitted (1)**
43:23
**persist (1)**
48:10
**personal (1)**
14:3
**personally (2)**
5:10;46:4
**persuasive (1)**
11:20
**petition (1)**
9:4
**PG&E (63)**
3:5;4:4;8:17;9:13,
24;17:18;18:22;19:7;
20:21;21:22;22:9,15,
17,19;23:14,17;24:17;
25:14;26:13;27:3,13;
28:2,2,3,5,7;30:15;
31:3,19;32:22;34:6,13;
35:4,11,21;36:11;
37:12,14,25;38:2,4,5,
13;39:12,23;43:8,14;
45:2;47:25;48:1,13;
49:25;51:21;52:1,15,
18;54:15,18,21,24;
55:2;57:14,22
**PG&E's (9)**
18:15;22:5,18;26:22;
32:24;52:3,12;54:24;
57:4
**ph (1)**
55:20
**phone (7)**
41:20;42:10;45:22;
46:8,10,22;48:1
**phrase (1)**
23:10
**phrased (1)**
23:24
**physical (1)**
42:24
**pick (1)**
54:7
**pictures (1)**
45:10
**piece (3)**
50:11,12,15
**pipes (1)**

52:14
**place (1)**
37:12
**places (1)**
11:19,20
**plaintiff (1)**
35:18
**plan (4)**
9:6;14:9;38:12,12
**please (9)**
3:9,11;16:22;17:5;
42:16;45:12;48:16;
51:8,14
**pled (2)**
8:17,20
**plenty (1)**
5:20
**plumbing (1)**
52:15
**plus (1)**
48:22
**pneumonia (2)**
6:12;12:12
**point (14)**
8:12;12:17;13:9;
14:10;15:3;26:11,22;
28:1;29:18,22;31:15;
32:11;34:17;56:12
**points (3)**
5:23;27:21;57:24
**policy (1)**
40:19
**polite (1)**
52:9
**pop (1)**
53:6
**portion (1)**
58:15
**position (9)**
7:16;17:16;18:3;
22:1,3;23:6;32:24;
51:1;53:18
**post (1)**
47:2
**Postal (1)**
46:23
**post-petition (3)**
7:17;9:5;10:14
**potential (1)**
54:14
**power (5)**
22:23;32:6,8;33:12;
35:3
**pre- (1)**
9:3
**precedes (1)**
57:7
**predecessor (1)**
26:22
**pre-existing (1)**
13:17
**prefer (1)**
14:17

Min-U-Script®

Case: 19-30088    Doc# 10885    Filed: 07/02/21    Entered: 07/02/21 07:16:44
    Page 69
    of 73

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(7) obviously - prefer

**preferable (2)**
11:21,22
**preference (1)**
55:25
**pre-judging (2)**
33:17;34:12
**prejudice (2)**
16:2,3
**prejudicial (1)**
14:14
**premature (2)**
23:4,4
**prepared (1)**
5:1
**preparing (1)**
15:17
**pre-petition (4)**
10:20,22;11:10;
15:22
**prerogative (1)**
40:25
**present (1)**
17:14
**presented (1)**
17:25
**presiding (2)**
3:5;43:8
**Preston (1)**
17:6
**presumably (1)**
13:14
**presume (2)**
38:25;44:6
**presumed (1)**
49:12
**prevail (1)**
24:2
**prevent (1)**
8:13
**previous (1)**
12:16
**Pricewaterhouse (1)**
42:11
**Prime (1)**
15:12
**principles (2)**
27:19;41:5
**prior (4)**
8:4;43:18;54:17,22
**priority (1)**
8:2
**pro (2)**
58:21;59:8
**probably (3)**
15:18;26:19,19
**problem (4)**
14:4,4;37:16;47:1
**problems (2)**
13:16;14:25
**procedural (1)**
51:20
**procedurally (4)**
21:20;23:7,21;37:15

**procedure (5)**
7:16;38:18;40:4;
44:24;45:1
**procedures (6)**
3:16;54:16,22;55:5,
8;56:20
**proceed (1)**
5:7
**proceeding (1)**
32:17
**proceedings (1)**
60:2
**process (4)**
3:15;14:21;15:7;
39:19
**produce (1)**
31:24
**produced (1)**
17:18
**proficient (1)**
46:2
**program (1)**
37:12
**proof (3)**
4:10;55:15;58:9
**proper (3)**
32:16;34:19;35:12
**properly (1)**
28:20
**property (10)**
19:4;22:22;26:21,23;
27:13;33:12;34:7;35:4,
7;51:22
**proposal (3)**
18:4;21:9;40:8
**propose (2)**
9:10;37:20
**proposed (1)**
18:12
**prosecute (1)**
49:24
**prove (4)**
14:22;15:25;35:25;
50:4
**provide (3)**
4:13;18:19;25:16
**provides (1)**
9:6
**proving (2)**
14:21;36:7
**provision (1)**
17:17
**provisions (1)**
55:4
**public (2)**
22:14;53:24
**pull (2)**
21:2;34:10
**pulled (2)**
21:4;29:4
**purpose (1)**
8:10
**purposes (1)**

8:2
**pursuant (1)**
54:15
**pursue (4)**
9:9;10:14;24:3,14
**put (7)**
23:5;25:6;36:23;
37:12;56:2;57:22;59:1
**puts (1)**
56:16

**Q**

**quiet (4)**
21:24;23:10;24:4,8
**quite (1)**
40:13

**R**

**raise (2)**
3:9;42:16
**raised (1)**
30:16
**raises (1)**
56:13
**ran (1)**
43:18
**rather (2)**
5:17;54:23
**rational (1)**
30:18
**reached (2)**
4:11;5:6
**read (5)**
29:17;45:8,10,11;
46:4
**ready (1)**
49:13
**realize (1)**
55:11
**really (3)**
36:7;40:10,25
**reason (2)**
33:23;43:24
**reasonable (2)**
21:9;30:19
**recall (1)**
3:20
**received (3)**
4:8;12:18;55:6
**recent (1)**
32:21
**recess (1)**
43:6
**recognition (1)**
29:3
**recollection (1)**
56:9
**recommend (1)**
4:5
**recommendation (1)**
14:25

**reconnecting (1)**
53:4
**record (22)**
15:9,13,16,21;17:5;
18:17,19;19:25;20:2;
22:9,14;23:15;27:1;
37:3;41:16;42:21;
56:11;57:3;58:1,14;
59:15,17
**recorded (7)**
17:15;22:3,7;23:19,
20;26:18,20
**recording (1)**
33:19
**records (1)**
56:14
**record's (1)**
29:4
**reference (1)**
17:17
**referred (1)**
17:12
**referring (1)**
6:19
**reflect (1)**
57:4
**reflected (1)**
5:25
**reframe (1)**
9:12
**refresh (2)**
56:8;57:6
**refuse (1)**
19:13
**refused (1)**
21:12
**refusing (1)**
19:3
**regarding (2)**
30:15;33:10
**regards (1)**
25:11
**register (1)**
6:25
**regulatory (1)**
8:6
**reiterating (1)**
54:25
**rejected (1)**
58:18
**rejoin (2)**
53:25;54:1
**relate (1)**
21:10
**relates (1)**
51:24
**relevant (2)**
10:10;36:22
**relief (2)**
24:4;28:4
**relying (1)**
7:20
**remedy (4)**

10:14;13:17,19;21:5
**remember (3)**
30:2;32:6;57:5
**removed (1)**
24:5
**reorganized (5)**
3:13;4:13;10:20;
15:23,24
**repair (1)**
32:14
**repairs (2)**
52:15,17
**repeat (1)**
35:16
**rephrase (2)**
18:21;23:3
**reply (2)**
4:8;38:17
**representing (1)**
50:24
**request (2)**
4:13,16
**requested (2)**
54:18;56:25
**require (4)**
30:17,19;55:5;57:22
**required (2)**
30:14;54:22
**requirement (1)**
58:3
**requirements (3)**
30:16,17;31:20
**reserve (1)**
24:3
**resolution (2)**
33:7;37:3
**resolve (1)**
32:20
**respect (3)**
3:16;9:7;56:19
**respond (6)**
4:18;36:13;38:15;
40:2,10,11
**responding (1)**
39:6
**responds (1)**
38:16
**response (4)**
4:7;28:23;34:9;
37:21
**responsibility (1)**
38:9
**responsible (2)**
28:8;51:22
**rest (1)**
55:6
**restated (1)**
58:14
**restrictions (1)**
44:23
**result (4)**
8:18;23:14;32:22;
58:8

Min-U-Script®

Case: 19-30088    Doc# 10885    Filed: 07/02/21    Entered: 07/02/21 07:16:44    Page 70
of 73

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(8) preferable - result

**resulted (1)**
10:6
**resulting (1)**
7:5
**reverse (2)**
8:9;28:6
**reversed (1)**
35:18
**review (1)**
45:13
**reviewed (4)**
4:17;17:10;28:25;
29:1
**rid (2)**
22:23;33:3
**right (48)**
3:10,21;4:16,24;5:2,
11;6:8;7:11,20;8:24;
11:9,11,12;15:3;16:12,
15,21,24;17:3,16;18:7,
11;22:12,13;24:13,25;
25:1,2;26:14;27:23;
29:19,21;32:5;34:11,
13,19;35:3,5;36:1;
43:17,19;46:15;50:22;
53:23,24;56:14;58:6,
24
**rights (7)**
14:5,13,14;18:2;
24:3;30:12;35:2
**roof (1)**
50:13
**room (1)**
4:25
**Rosa (1)**
7:6
**roughly (1)**
23:25
**route (1)**
56:4
**rude (3)**
44:11;45:7;55:12
**rule (2)**
18:3;20:4
**rules (4)**
36:20,20;44:7;50:10
**run (5)**
14:17;27:5,6,6;35:6
**running (1)**
24:23
**runs (1)**
36:3
**Rupp (60)**
3:7,10,12,12,24;4:7;
5:1,3,5,16;6:16,22,24;
9:1,3;10:12;13:24;
14:9;15:3,7,11;16:23,
25;18:11,14;21:18;
22:1,17,25;23:5,24;
24:7,11,24;27:20;
28:10;29:18;30:16;
32:19;33:5,8;35:15;
36:25;37:20,25;39:5,

10,17;40:4,10,14,21;
41:17,21;42:3,5,9,25;
43:1,4
**Rupp's (3)**
18:4;29:6;34:18
**rush (1)**
40:7

## S

**safety (3)**
8:7,13;10:2
**same (6)**
11:12,20;19:7;35:20,
24;36:3
**SAN (2)**
3:1;52:1
**Santa (1)**
7:6
**sat (1)**
5:20
**saved (1)**
53:6
**saves (1)**
41:10
**saying (6)**
12:19;17:21;56:24;
58:10,16;59:10
**schedule (6)**
18:13;23:8;39:20;
40:22;41:24;44:18
**scheduled (4)**
48:18;49:10,11;
54:17
**scheduling (2)**
42:10;44:16
**school (2)**
7:21;26:3
**screen (2)**
5:9;17:4
**screw (1)**
6:11
**se (2)**
58:21;59:8
**second (6)**
6:14,15;18:8;30:6;
45:17;53:12
**seek (1)**
13:19
**seeking (1)**
58:9
**seem (10)**
12:5;13:6,12,18,20;
21:1,21;40:13;58:2,24
**seemed (1)**
30:18
**seems (6)**
7:9,10;12:23;13:25;
23:12;57:12
**self (1)**
31:10
**self-destructs (1)**
31:10

**sell (3)**
22:17,21;40:17
**send (5)**
34:17;36:17;39:18;
41:18;45:9
**sending (2)**
46:7,11
**sends (1)**
46:4
**sense (5)**
13:12;14:7;25:3;
37:4;41:7
**sentence (11)**
17:22;21:16;29:7,9,
10,15,19,23,23;30:11,
24
**separate (5)**
4:19;13:7,10;19:8;
24:19
**separately (1)**
3:19
**serve (1)**
21:1
**Service (1)**
46:23
**session (3)**
3:4,21;43:7
**set (2)**
14:5;49:10
**sets (1)**
38:17
**settlement (2)**
51:6;54:22
**seventy- (1)**
3:22
**seventy-ninth (1)**
4:5
**several (2)**
4:10;13:11
**shall (2)**
17:23;31:2
**short (2)**
42:23;56:1
**show (3)**
22:7;36:18;57:7
**shows (2)**
17:25;22:14
**side (7)**
8:9;23:13;30:2;31:3,
8;38:16;41:6
**sides (1)**
39:17
**signed (2)**
19:7;30:3
**simple (2)**
18:25;37:15
**simply (4)**
7:16;14:17;48:10;
59:3
**sit (1)**
37:1
**situation (1)**
12:25

**situations (1)**
5:21
**slightest (1)**
47:22
**slightly (1)**
19:6
**smarter (1)**
23:17
**smoke (2)**
7:7;12:11
**SOL (1)**
56:4
**sold (1)**
4:3
**solve (2)**
37:16;47:1
**solvent (1)**
33:24
**someday (1)**
15:19
**someone (3)**
30:13;33:5;49:4
**sometimes (3)**
26:8;28:17;41:10
**somewhere (2)**
14:1;59:19
**Sonoma (1)**
15:20
**sorry (5)**
31:16,17;43:17;
46:21;54:10
**sort (4)**
18:16;21:8;25:23;
55:6
**sound (1)**
48:15
**sounded (1)**
12:25
**speak (7)**
5:7;7:4,8;33:14;51:8,
15;52:10
**speaks (1)**
31:15
**specifically (2)**
9:6;56:18
**specifics (1)**
55:21
**speech (3)**
40:15,17;41:11
**spent (1)**
30:14
**spring (1)**
12:21
**St (1)**
32:5
**staff (5)**
44:1,12,13;45:8,11
**standard (1)**
4:4
**standing (1)**
15:20
**start (3)**
3:25;34:18;42:23

**started (1)**
50:13
**state (7)**
17:5;18:22;24:3,15;
34:22;35:18;59:9
**state- (1)**
46:2
**statement (2)**
54:21,23
**state-of-the-art (1)**
45:19
**station (1)**
32:8
**status (1)**
39:11
**statute (6)**
52:22;54:14;55:25;
58:11;59:1,5
**stay (1)**
39:7
**stems (1)**
52:23
**still (2)**
16:9;17:12
**stop (6)**
44:19;46:13,15;48:8;
50:24;51:14
**stopped (1)**
46:16
**story (1)**
38:11
**straight (1)**
18:6
**strike (2)**
57:20;59:16
**strikes (3)**
14:14,24;29:22
**striking (1)**
58:22
**studied (1)**
7:24
**stuff (3)**
32:16;36:18;41:8
**subject (4)**
6:6;7:1;37:21;40:15
**submissive (2)**
48:23;49:6
**submitted (1)**
54:21
**submitting (1)**
54:23
**substance (1)**
55:10
**substantive (1)**
57:22
**successful (1)**
38:11
**sue (8)**
10:16;11:15,20;
20:10,14;21:3;28:6;
35:9
**sued (3)**
28:2,2;34:8

Case: 19-30088    Doc# 10885    Filed: 07/02/21    Entered: 07/02/21 07:16:44    Page 71
of 73

**sues (1)**
35:18
**suffered (3)**
13:16;14:23;34:7
**suffice (1)**
19:12
**sufficient (2)**
29:20;33:20
**suggest (4)**
18:4;23:7;31:17;
59:3
**suggested (3)**
25:5;28:10,18
**suggesting (3)**
15:16;27:7,8
**suggestion (2)**
23:1;34:18
**suit (5)**
9:24;10:1;15:4;
21:21;27:5
**sum (1)**
55:9
**summarize (2)**
53:18;54:9
**summary (14)**
19:1,1;23:9,25;24:2,
10;28:11;34:20,23;
38:13,16;40:23;41:2;
54:11
**superior (6)**
10:16;11:16;15:4,20;
28:2,3
**support (1)**
4:13
**suppose (4)**
26:3,13;27:10;58:2
**supposed (1)**
48:5
**Supreme (1)**
57:13
**sure (9)**
5:25;6:10;12:17;
31:5;36:9;37:4;38:9,
18;53:16
**Swendsen (59)**
4:22,24;5:1,5,8,12,
13,17,20;6:8,10,15,18,
24,25;7:4,5,7,10,11,13,
20;8:3,21,24;9:3,7,12,
16,18,21;10:1,22;11:1,
4,11,17,22,25;12:3,8,
10,15;13:5,22;14:11;
15:5,6,8,13,15;16:2,5,
8,11,13,16,18,20
**Swendsen's (1)**
14:1
**switch (2)**
32:18;42:25
**system (5)**
8:7,13;10:3;32:7;
53:6

**T**

**table (1)**
37:2
**talk (9)**
33:1;36:25;39:15,24;
40:22;41:20,24;51:3,
13
**talked (3)**
11:8;23:8;50:16
**talking (8)**
7:14;10:7;15:8;37:5;
41:2;45:21;50:24;
51:14
**taught (1)**
57:13
**Taylor (44)**
3:15;43:14,15,16,20;
47:6,21,22,25;50:18,
18,20,24;51:2,5,8,15,
18,19,24;52:3,5,11,12,
25;53:3,13,16,19;54:9,
12;55:18,23;56:18,23;
57:9,11,19,24;58:7;
59:15,21,24;60:1
**tear (1)**
52:14
**technology (3)**
45:20;46:3,6
**teed (1)**
32:16
**telephone (2)**
45:21;53:22
**telling (2)**
14:18,19
**ten (1)**
40:11
**term (2)**
34:20;41:3
**terminate (19)**
17:16,24;19:18;21:5;
22:12,13;23:18;24:21;
26:14;27:23,24,25;
30:12;31:2,7,23;34:11;
35:5;48:10
**terminated (10)**
22:11,14;23:15;
27:22;29:13;31:3;
32:25;33:11;35:2;
49:14
**terminating (2)**
23:19;29:10
**termination (8)**
22:4,7;24:7,14;
25:15;29:20;30:10;
31:18
**terms (6)**
18:25;21:11,15;
24:12;30:22;31:21
**Thanks (1)**
43:5
**theory (3)**

11:19,20;24:10
**therefore (3)**
22:13;32:25;35:5
**Thomas (1)**
3:12
**though (4)**
14:22;28:2;30:17;
48:4
**thought (7)**
12:20,21;42:22;
43:20;51:3,7,19
**three (4)**
13:10,11,11;48:16
**three- (1)**
26:15
**three-and-a-half (2)**
24:22;33:2
**threshold (1)**
18:20
**tightly (1)**
21:11
**tilting (1)**
38:8
**timely (2)**
20:10;52:21
**timing (1)**
40:2
**title (7)**
21:25;22:10,15,18;
23:11;24:4,8
**titles (1)**
50:16
**today (18)**
3:14,17;6:6;7:15,25;
9:2;20:5;33:9;36:24,
24,25;43:14,20;46:16;
48:8;50:19,25;56:10
**today's (4)**
9:1;11:9;41:15;42:7
**together (1)**
39:20
**told (5)**
21:7;32:12;48:2;
53:9;58:17
**topics (1)**
32:18
**towers (1)**
19:5
**traditional (2)**
28:9;34:21
**trains (1)**
32:7
**transcript (2)**
15:17,18
**transfer (2)**
22:17;24:17
**trial (5)**
13:15;18:6,9;19:1;
25:4
**tried (1)**
6:24
**trigger (4)**
21:2,4;29:20;34:10

**trouble (1)**
40:6
**Trust (6)**
6:7;7:3;9:5;10:11;
14:3;42:11
**Trustee's (1)**
14:4
**try (9)**
12:6;22:12;32:20;
37:16,17;38:21;48:14;
56:3;58:20
**trying (6)**
13:24;14:12;28:18;
33:6;40:17;56:2
**Tubbs (1)**
13:9
**Tuesday (1)**
36:8
**turkey (1)**
50:20
**turn (2)**
5:10;34:19
**turned (1)**
48:12
**twenty- (1)**
13:11
**twice (1)**
24:9
**two (11)**
5:23;6:17,19,19;7:5;
11:7,20;12:16;19:5,8;
57:24
**two- (1)**
50:14
**typed (1)**
29:14
**typically (1)**
38:15

**U**

**ultimately (1)**
10:5
**Um-hum (1)**
24:24
**unable (1)**
3:19
**unclear (1)**
31:7
**uncompensated (1)**
6:13
**under (9)**
4:4;6:7;8:22;11:6;
27:4;28:12;31:8;43:23;
56:8
**understood (2)**
57:25;59:21
**undisputed (6)**
28:12,13,16;35:10,
23;41:4
**unfortunate (1)**
56:25
**unhappy (1)**

59:9
**unilateral (3)**
30:7,11;31:7
**unilaterally (1)**
49:14
**unique (1)**
18:16
**unless (3)**
6:16;16:12;23:13
**unmute (2)**
3:10;5:9
**unresolved (1)**
34:10
**unsuccessful (2)**
37:17;38:12
**unsuspecting (1)**
12:22
**unusual (2)**
21:19,20
**unwilling (1)**
40:19
**up (24)**
3:19;6:11,24;12:21;
14:1;15:25;21:18;32:4,
7,16;33:6;34:7;37:3,
15;40:23;41:17;44:17;
49:11;53:7,14;54:7;
55:15;57:7;59:6
**upload (1)**
44:24
**uploaded (1)**
45:1
**upon (4)**
14:15;18:12;31:18;
59:14
**urge (1)**
40:14
**urgent (1)**
22:19
**use (3)**
19:4,4;34:20
**used (1)**
32:7
**usually (4)**
33:22;34:1,1;48:25
**utility (1)**
33:24

**V**

**variation (1)**
58:19
**verify (1)**
15:12
**version (3)**
17:18;29:14,15
**vested (1)**
11:15
**Victim (6)**
7:3;8:19;9:4;42:11;
48:24;49:2
**views (1)**
45:9

Case: 19-30088    Doc# 10885    Filed: 07/02/21    Entered: 07/02/21 07:16:44    Page 72
of 73

**violate (1)**
31:21
**violation (10)**
8:8;10:23;17:23;
18:1;31:9,11,12,12,13,
24
**Violations (1)**
31:1
**visually (1)**
45:3
**voicemail (1)**
54:6
**voicemails (1)**
4:10
**void (1)**
21:22
**voluntarily (3)**
14:13;15:2,5
**voluntary (1)**
15:22

**W**

**wait (3)**
28:16,17;53:12
**waiting (2)**
43:18;53:25
**walk (3)**
46:19,21,22
**wants (3)**
34:14;37:24;39:25
**warned (1)**
50:17
**waste (1)**
41:7
**water (4)**
51:24;52:17;55:21;
58:17
**way (30)**
6:20;11:1;12:6;13:2,
3;14:6;15:10;19:14;
22:13;28:9,12;29:8;
33:14;34:15,16,16;
35:11,15;37:15;38:21;
44:18,22,25;45:6;
46:22,23;53:4;58:20;
59:1,18
**ways (1)**
28:13
**wear (1)**
52:14
**WEDNESDAY (1)**
3:1
**week (1)**
32:8
**weeks (1)**
54:17
**Welcome (1)**
17:7
**Welsh (2)**
38:25,25
**weren't (1)**
8:19

**what's (4)**
8:1;11:13;14:20;
51:1
**wheel (1)**
49:3
**Whereupon (2)**
43:6;60:2
**wherever (1)**
10:15
**whole (1)**
8:12
**widespread (1)**
45:2
**wife (4)**
26:4,6,9,23
**willing (8)**
36:23;37:1,1,14,14,
22,25;38:1
**win (8)**
11:5;23:13,14;28:12,
12,14;35:14;36:12
**wind (1)**
11:1
**winner (1)**
41:9
**wires (1)**
19:6
**wiring (1)**
50:15
**wish (3)**
36:15;44:21;59:22
**wishes (3)**
3:9;42:15;53:25
**withdraw (6)**
13:23;14:13,18;15:2,
5,14
**withdrawal (1)**
15:22
**withdrawn (2)**
15:9,13
**within (1)**
7:16
**Without (3)**
16:2,3;52:17
**wives (1)**
26:7
**word (3)**
11:13;14:20;42:13
**words (5)**
11:7;14:23;22:10;
48:16;56:15
**work (4)**
15:10,11;30:15;52:1
**worked (1)**
5:16
**works (5)**
5:20;28:13;38:24;
41:9,9
**world (1)**
11:25
**worth (1)**
40:6
**writing (2)**

15:14;55:1
**written (2)**
15:18;17:18
**wrong (4)**
23:2,2,16;56:14
**wrote (1)**
48:19

**Y**

**yard (5)**
19:5,5,8,10;32:14
**years (9)**
7:21;20:9;21:5;
23:20;28:20;32:23;
33:19;35:8;37:7
**yesterday (2)**
6:25;29:3

**Z**

**Zoom (6)**
3:19,21;4:2,22;
41:16;42:15

**1**

**1,000 (1)**
58:19
**1,000-dollar (1)**
52:19
**10 (3)**
40:9;41:12,16
**120 (1)**
23:20
**13th (8)**
39:11,20,24;40:8,20;
41:12,16,24
**17th (1)**
54:18
**1909 (2)**
17:15;26:18

**2**

**2011 (4)**
50:8;51:25;52:13,25
**2017 (1)**
22:9
**2019 (3)**
9:14;14:23;52:21
**2020 (1)**
9:6
**2021 (1)**
3:1
**250- (2)**
55:15;57:4
**250,000 (2)**
51:22;55:21
**25th (1)**
54:16
**29th (3)**
9:14;13:16;14:23

**3**

**3,200 (2)**
52:15;58:17
**30 (1)**
3:1
**30th (1)**
36:24

**4**

**4,185 (1)**
4:3

**5**

**5,000 (2)**
52:16;58:18

**7**

**7154 (1)**
4:21

**8**

**86428 (1)**
7:2

**9**

**93659 (3)**
7:1,15;15:8
**9th (3)**
39:13;40:12;41:17

Min-U-Script®

Case: 19-30088    Doc# 10885

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

Filed: 07/02/21    Entered: 07/02/21 07:16:44    Page 73
of 73

(11) violate - 9th