EVAN C. BORGES, State Bar No. 128706
    *EBorges@GGTrialLaw.com*
SARAH KELLY-KILGORE, State Bar No. 284571
    *SKellyKilgore@GGTrialLaw.com*
GREENBERG GROSS LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone: (213) 334-7000
Facsimile: (213) 334-7001

*Attorneys for The Honorable John K. Trotter*
*(Ret.), Trustee of the PG&E Fire Victim Trust*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>    **-and-**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>    **Debtors.**<br><br>☐  Affects PG&E Corporation<br>☐  Affects Pacific Gas and Electric Company<br>■  Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>***EX PARTE* APPLICATION OF THE FIRE VICTIM TRUSTEE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR AN ORDER AUTHORIZING SERVICE OF A SUBPOENA ON PRICEWATERHOUSECOOPERS LLP EMPLOYEE HUGH LE**<br><br>[No Hearing Required Per L.B.R. 2004-1(a)] |

*EX PARTE* APPLICATION OF FVT FOR RULE 2004 EXAMINATION OF HUGH LE

# I. *EX PARTE* APPLICATION

The Honorable John K. Trotter (Ret.), trustee (the "**Trustee**") of the PG&E Fire Victim Trust (the "**Trust**"), by and through his undersigned counsel, submits this *Ex Parte* Application, pursuant to Federal Rule of Bankruptcy Procedure 2004 and Local Rule 2004-1(a), for entry of an order authorizing service of a subpoena for the examination of PricewaterhouseCoopers LLP ("**PwC**") employee Hugh Le through testimony and the production of documents specific to Mr. Le's involvement in the consulting services PwC performed for PG&E relating to wildfire safety.

PwC, in its capacity as a consultant to PG&E, developed and implemented various programs related to PG&E's wildfire prevention efforts. Nonetheless, as the Court is aware, numerous wildfires in California (collectively, the "**Fires**"), including the 2017 North Bay Fires and the 2018 Camp Fire, have resulted in catastrophic and widespread injury, destruction of property, and loss of life. Since December 2020, undersigned counsel, on behalf of the Trust, has been investigating claims against PwC for indemnity and professional negligence, among other causes of action.

Pursuant to the investigation, as discussed below, undersigned counsel obtained documents from PG&E demonstrating that for more than six months leading up to the November 2018 Camp Fire, Mr. Le acted as the primary PwC employee responsible for critical wildfire safety consulting services to PG&E related to its Community Wildfire Safety Program ("**CWSP**") and Public Safety Power Shut-off program ("**PSPS**") (the latter being a de-energization policy for high voltage power lines during high risk wind and weather events). Similarly, after the 2017 North Bay Fires, PG&E sent 27 litigation hold letters to PwC employees, including Mr. Le. PG&E's litigation hold letters specifically requested that PwC employees, including Mr. Le, preserve documents because "you have [been] or are doing work on behalf of PG&E that potentially relates to [the 2017 North Bay Fires]." In sum, Mr. Le acted in a key capacity for PwC in providing wildfire safety consulting services to PG&E, all in advance of the prepetition Fires.

Notwithstanding (i) this Court's prior order authorizing a Rule 2004 subpoena to PwC for documents related to its consulting services to PG&E, and (ii) extended meet-and-confer efforts by

*EX PARTE* APPLICATION OF FVT FOR RULE 2004 EXAMINATION OF HUGH LE

counsel for the Trust (as well as by counsel for the Official Committee of Tort Claimants (the "**TCC**"), the Trust's predecessor in interest), PwC has blatantly failed to produce large categories of documents responsive to the prior Rule 2004 subpoena. PwC's failure to comply with the prior Rule 2004 subpoena includes, without limitation, a complete failure to produce *any* PwC Contracts (as defined below) or *any* PwC Deliverables (as defined below) related to the consulting services PwC (including Mr. Le) rendered with respect to critical CWSP and PSPS work during the more-than-six-month period leading up to the November 2018 Camp Fire.

Accordingly, the Trustee seeks to examine Mr. Le to obtain highly relevant information related to wildfire safety consulting services provided by PwC, which directly bear upon the Trust's investigation of claims against PwC assigned to the Trust under the PG&E bankruptcy plan (the "Plan") and this Court's confirmation order (the "Confirmation Order"). The Trustee seeks Mr. Le's testimony as well as the production of documents related to Mr. Le's specific involvement in the consulting services PwC provided to PG&E relating to wildfire safety (a subset of the documents requested in the prior 2004 subpoena, which PwC has refused to produce). The Trustee requests that the Court enter an order (*see* **Exhibit A** (Proposed Order)) authorizing service of a subpoena on Mr. Le in the form attached hereto as **Exhibit B**. In support of this relief, the Trustee respectfully states as follows.

## II.   JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2004-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"), Paragraphs 18 and 78 of the Confirmation Order, Sections 6.7 and 11.1 of the Plan, and Sections 1.6 and 8.20 of the Fire Victim Trust Agreement.

Specifically, under Section 11.1 of the Plan, the Court retains jurisdiction to: "hear and determine disputes arising in connection with or related to the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated herein, or any agreement, instrument, or other document governing or relating to any of the

*EX PARTE* APPLICATION OF FVT FOR RULE 2004 EXAMINATION OF HUGH LE

foregoing;" "take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;" "hear and determine any rights, claims, or Causes of Action held by or accruing to . . . the Fire Victim Trust pursuant to the Bankruptcy Code or any federal or state statute or legal theory;" and "hear and determine any dispute involving the Wildfire Trusts, including but not limited to the interpretation of the Wildfire Trust Agreements." Plan § 11.1(i), (k), (t) & (u).[1]

Section 8.20 of the Fire Victim Trust Agreement provides that the "provisions of the Trust Documents shall be enforced by the [Bankruptcy Court]." This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. BACKGROUND

### A. The Prior Rule 2004 Subpoena for PwC Documents

In March 2020, the TCC filed an application for a Rule 2004 subpoena to be served on PwC for the production of documents (Dkt. No. 6351), which the Court granted by entry of an order (Dkt. No. 6473) (the "**PwC Documents Subpoena**").

The PwC Documents Subpoena contains the following two requests for documents (among others), which are relevant to the Trust's current investigation of claims as well as this *Ex Parte* Application:

1. "All Documents that constitute and/or memorialize any and all contracts and/or work agreements between You and PG&E, for the time period 2013 to the present" (the "**PwC Contracts**"); and

---

[1] Under Section 11.1 of the Plan, the Court also retains "jurisdiction . . . of all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes: . . . (m) To determine such other matters and for such other purposes as may be provided in the Confirmation Order; . . . (p) To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; . . . (r) To determine any other matters or adjudicate any disputes that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any document related to the foregoing; . . . [and] (v) To hear any other matter not inconsistent with the Bankruptcy Code."

2. "All Documents that constitute and/or memorialize any and all reports, analyses, summaries, or descriptions of Your work for PG&E, for the time period 2013 to the present" (the "**PwC Deliverables**").

Dkt. No. 6351-2 at 8 (requests for production Nos. 1 and 3).

To date, PwC's production of PwC Contracts and PwC Deliverables has been woefully deficient. PwC has produced 1,519 pages of documents in response to the PwC Documents Subpoena, the majority of which consist of insurance policies. Declaration of Sarah Kelly-Kilgore ("Kilgore Decl.") ¶ 2. The remaining documents consist of contracts and PG&E presentations.[2] *Id.* ¶¶ 2-3. Among other glaring deficiencies, PwC has not produced *any* PwC Contracts or PwC Deliverables related to its work on the CWSP or PSPS during the critical period leading up to the November 2018 Camp Fire.[3]

In June 2020, TCC counsel specifically asked PwC to confirm that it would produce contracts relating to PwC's work on the CWSP in its next production. *See id.*, Ex. 1. Shortly thereafter, the TCC's authority to enforce the PwC Documents Subpoena was transferred to the Trust by order of this Court (Dkt. No. 8480), and PwC never produced the requested documents.

On October 20, 2020, the Trustee's counsel at Brown Rudnick specifically identified four pre-Camp Fire contracts that PwC had produced, two of which related to the Engineering, Procurement, and Construction Cross-Cutting program (the "EPC CC"), and requested that PwC produce all PwC Deliverables related to these four contracts. Kilgore Decl., Ex. 2 at 1. The Trustee's counsel further requested a status update on when PwC would complete its production in compliance with the PwC Documents Subpoena. *Id.* at 1-2.

On December 10, 2020, counsel for PwC responded, stating that PwC would not produce the requested documents because PwC's counsel did not believe that there was "any remotely

---

[2] Of the contracts produced, a substantial majority were downloaded from the public bankruptcy court docket for this proceeding, as shown by the ECF footer on such documents. Kilgore Decl. ¶ 4.

[3] PwC has produced contracts executed in 2019 for post-Camp Fire work related to the CWSP and PSPS, including partially redacted contracts downloaded from the public bankruptcy court docket. PwC, however, has produced no PwC Deliverables related to these contracts.

plausible connection" between the consulting services provided by PwC in connection with the identified contacts and the prepetition Fires; instead, counsel agreed to produce just five presentations providing an overview of two projects. *Id.*, Ex. 3 at 1. PwC subsequently produced two presentations "used to track progress on" PG&E's Electric Asset Excellence program, and three presentations "that provide an overview of the" EPC CC. *See id.* ¶ 7. None of these presentations bears any PwC branding. *Id.* Further, PwC made no representations regarding what portion of these presentations, if any, constitute PwC Deliverables, and it is not evident from the face of the documents which portions reflect services or advice provided by PwC. *Id.*; *cf. id.*, Ex. 3.

### B. The Trustee's Further Investigation

After reviewing PwC's prior productions and related correspondence, current counsel for the Trustee determined that PwC's productions have been woefully deficient. Among other things, documents produced by PG&E reveal numerous categories of work performed by PwC related to wildfire safety for which PwC had not produced any documents whatsoever.

Furthermore, in these bankruptcy proceedings, PG&E has produced documents—specifically, multiple emails between PG&E and PwC employees (including Hugh Le) during the period February 2018 through at least September 2018—that demonstrate PwC (and Mr. Le) provided consulting services related to the CWSP and PSPS for more than six months prior to the November 2018 Camp Fire. Yet, PwC has produced absolutely no PwC Contracts and no PwC Deliverables related to this critical consulting work.

### C. Recent Meet-and-Confer Efforts

For two months, between late April 2021 and June 2021, counsel for the Trustee met and conferred extensively with counsel for PwC, by exchange of letters and conference calls, regarding PwC's failure to comply with the PwC Documents Subpoena. *See* Kilgore Decl. ¶¶ 8-35, Exs. 4-13. So far, discussions between counsel have not progressed beyond the Trustee's request for further production of PwC Contracts and PwC Deliverables relating to four specific categories of work for PG&E: the CWSP, PSPS, EPC CC, and PG&E's General Rate Case

("GRC") proceedings.[4]  PwC has refused to produce any further documents, and has not provided any information that would facilitate a discussion about any alleged burden in producing these key documents.

During a May 18, 2021 meet-and-confer telephone conference, and again in a letter dated June 16, 2021, counsel for PwC insisted that those four projects are not relevant to the Trust's inquiry, and demanded that the Trustee show—without the benefit of the documents in PwC's possession—how such documents could relate to the causes of the prepetition Fires.  *See id.* ¶¶ 10, 18, Ex. 10 at 2-3.  The Trustee's counsel again provided a detailed explanation of the relevance of these categories of work in a June 18, 2021 letter, *id.* ¶ 19, Ex. 11 at 2-3; however, PwC has still refused to commit to making any further production of documents to the Trust, *see id.* ¶¶ 22-36.

## IV.    CAUSE EXISTS TO ISSUE THE REQUESTED SUBPOENA FOR A RULE 2004 EXAMINATION OF PWC EMPLOYEE HUGH LE

### A.  Legal Standard

Rule 2004 permits any party in interest to take an examination of any entity with respect to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate," and, in a Chapter 11 case, "any other matter relevant to the case or to the formulation of a plan."  Fed. R. Bankr. P. 2004(a) and (b).

### B.  The Rights and Causes of Action Assigned to the Trust

On the Effective Date of the Plan, the Assigned Rights and Causes of Action vested in the Trust.  The Schedule of Assigned Rights and Causes of Action, Dkt. No. 8057-1 (the "**Schedule**"), states that the Assigned Rights and Causes of Action include "any and all rights, claims, causes of action, and defenses related thereto relating directly or indirectly to any of the prepetition Fires that the Debtors may have against vendors, suppliers, third party contractors **and consultants** (including those who provided services, directly or indirectly, regarding the Debtors' electrical

---

[4] In connection with the GRC, PG&E submits significant information regarding its budgeting and capital allocation, including with regard to wildfire prevention, operation, and maintenance of its electric distribution and transmission lines.

1  system, system equipment, inspection and maintenance of the system, and vegetation

2  management) ('Persons')."  Schedule ¶ 1.  (emphasis added).  In addition, the Schedule provides:

3  "[t]he Assigned Rights and Causes of Action include those pertaining to . . . Persons that provided

4  services, directly or indirectly, to either of the Debtors in connection with budget or capital

5  allocations; . . . Persons that provided services, directly or indirectly, to either of the Debtors in

6  connection with distribution or transmission cost reduction measures . . . [and] Persons that

7  provided services, directly or indirectly, to either of the Debtors in connection with wildfire

8  preparedness, prevention, response, or mitigation." *Id.* ¶ 1 (o), (p) & (t).[5]

9         Accordingly, given that PwC provided consulting services to PG&E in areas related to

10

---

11  [5]  Under Paragraph 1 of the Schedule, the Assigned Rights and Causes of Action also "include
those pertaining to the following Persons to the extent they relate directly or indirectly to any of
the prepetition Fires: . . . (d) Persons that provided services, directly or indirectly, to either of the
Debtors in connection with quality assurance, including the overall ability of the vegetation
management program to reduce the risk to the electrical system; . . . (i) Persons that provided
services, directly or indirectly, to either of the Debtors in connection with vegetation management
programs, and/or guidance on vegetation management protocol, practice, or procedures;
(j) Persons that provided services, directly or indirectly, to either of the Debtors in connection with
distribution or transmission asset strategy, management, planning, or modernization; (k) Persons
that provided services, directly or indirectly, to either of the Debtors in connection with drafting or
revising rules, policies, procedures, plans, standards, bulletins, or any other advisory or guidance
documents issued by either Debtor that governed or informed the management, maintenance,
inspection, repair, or replacement of distribution or transmission lines or their poles, towers, or
components; (l) Persons that provided services, directly or indirectly, to either of the Debtors in
connection with distribution or transmission reliability improvements; (m) Persons that provided
services, directly or indirectly, to either of the Debtors in connection with distribution or
transmission data management or IT support; (n) Persons that provided services, directly or
indirectly, to either of the Debtors in connection with risk analyses, management, valuation, or
mitigation; . . . (q) Persons that provided services, directly or indirectly, to either of the Debtors in
connection with personnel training; (r) Persons that provided services, directly or indirectly, to
either of the Debtors in connection with compliance with laws, rules, or regulations governing
distribution or transmission operations; (s) Persons that provided services, directly or indirectly, to
either of the Debtors in connection with the hiring, supervision, or management of other third
parties who provided services, directly or indirectly, to either of the Debtors; . . . (u) Persons that
provided services, directly or indirectly, to either of the Debtors in connection with any testing,
investigation, analysis, evaluation, or examination of distribution or transmission line towers or
components; (v) Persons that provided services, directly or indirectly, to either of the Debtors in
connection with asset management, maintenance, inspection, repair, or replacement on the
Caribou-Palermo 115kv Transmission Line; (w) Persons that provided any other services to either
of the Debtors that related to, bore upon, or influenced the maintenance practices on, or operation
of, the Caribou-Palermo 115kv Transmission Line."

wildfire safety, wildfire prevention, and asset maintenance, including budgets for these areas of PG&E's business, the Trust has been assigned any and all claims that may exist against PwC, including for indemnity, contribution, negligence, or breach of contract.

### C. Cause Exists to Issue a Further Rule 2004 Subpoena for the Examination of PwC Employee Hugh Le

In addition to separately requesting this Court's assistance in enforcing the existing PwC Documents Subpoena,[6] the Trustee seeks authorization of a further Rule 2004 subpoena compelling the examination of PwC employee Hugh Le, including through the production of documents that specifically relate to Mr. Le's undisputed work in the critical areas of CWSP and PSPS during the more-than-six-month period leading up to the November 2018 Camp Fire, as well as his work on the related EPC CC and GRC proceedings and the 2017 North Bay Fires. Cause exists for such examination, including: (i) Mr. Le's work in critical areas related to wildfire safety leading up to the 2018 Camp Fire, and (ii) his receipt of a litigation hold notice from PG&E after the 2017 North Bay Fires, which stated that he may be holding relevant documents due to PwC's prior or continuing work on behalf of PG&E.

As a preliminary matter, counsel for PwC has taken the position that PwC's engagements for PG&E "had absolutely nothing to do with wildfire safety," and therefore could not have any causal connection to the wildfires, insisting that the Trustee prove the relevance of PwC's work for PG&E *before* PwC will consider producing documents responsive to the PwC Documents Subpoena. Kilgore Decl. ¶¶ 10, 18, Ex. 10 at 2-3. The Trustee believes this position is patently frivolous and obstructionist, especially given the evidence of PwC's work on the CWSP and PSPS prior to the Camp Fire. Similarly, counsel for PwC has dismissed as meaningless the fact that after the 2017 North Bay Fires, PG&E sent 27 litigation hold letters to PwC employees (including

---

[6] In seeking the examination of Hugh Le, the Trustee does not waive any right to enforce the PwC Documents Subpoena. The Trustee anticipates that Mr. Le's examination will resolve the bulk of the parties' existing dispute regarding enforcement of the PwC Documents Subpoena, as Mr. Le's testimony is uniquely capable of demonstrating the extent to which PwC provided consulting services to PG&E relating to wildfire safety. The Trustee expressly reserves all rights relating to enforcement of the PwC Documents Subpoena.

Mr. Le) stating that the scope of PwC's services could be relevant to the causes of the 2017 North Bay Fires.  *Id.*, Ex. 5 at 4-5.

Thus, because PG&E documents indisputably show (i) there was extended email correspondence between PwC employees (specifically, Mr. Le) and PG&E in the more-than-six-month period leading up to the 2018 Camp Fire, and (ii) the subject matter of this correspondence included the CWSP and PSPS, the Trust seeks to examine Mr. Le.  *See id.*, Ex. 6 at 2 & fn. 2 (citing documents).  In addition, Mr. Le was one of at least 27 PwC employees who received litigation hold notices following the 2017 North Bay Fires.  *See id.*, Ex. 4 at 3-4.  A Rule 2004 examination of Mr. Le, therefore, will allow the Trust to investigate further and determine what work Mr. Le and PwC performed for PG&E related to critical areas of wildfire safety leading up to the 2018 Camp Fire, as well as explore what work PwC performed prior to the 2017 North Bay Fires that prompted PG&E to send Mr. Le a litigation hold notice.  To facilitate a fruitful and productive discussion of Mr. Le's work in these areas, the Trust also seeks production of relevant documents, including reports, analyses, summaries, or other deliverables for PG&E.  While these documents are the subject of the PwC Documents Subpoena, as discussed, PwC has refused to produce these documents.

In addition, counsel for PwC has stated in meet-and-confer correspondence that "PwC's first work on the PSPS project was in 2019, after the 2018 Camp Fire."  *Id.*, Ex. 5 at 4; *cf. also id.* ¶ 22.  Once again, however, PG&E documents (which we have provided to counsel for PwC) unequivocally demonstrate that PwC employees (including Mr. Le) worked on these projects in the more-than-six-month period leading up to the Camp Fire.

In a letter dated May 20, 2021, counsel for the Trustee cited and described PG&E documents showing PwC's involvement and work on the CWSP and PSPS prior to the Camp Fire, which should have enabled counsel for PwC to locate the same documents in PwC's own records. *Id.*, Ex. 6 at 1-2 & fn. 2.  Yet, it was only after the Trustee requested a discovery hearing—and again cited these documents in a letter dated June 18, 2021—that counsel for PwC indicated they would confer further with their client about producing PwC Contracts and PwC Deliverables related to PwC's pre-Camp Fire work on the CWSP and PSPS.  *See id.* ¶¶ 15-26, Ex. 11 at 2-3 &

*EX PARTE* APPLICATION OF TRUST FOR RULE 2004 EXAMINATION OF HUGH LE

fn. 3; *see also id.* ¶¶ 27-31.  Once again, no such PwC Contracts or PwC Deliverables have been produced, and PwC has not even committed to produce any further documents whatsoever.  *See id.* ¶¶ 10, 14-15, 22, 27-37.

The Trustee requires an examination of Hugh Le under Rule 2004 and the production of relevant documents to complete the investigation of the Trust's potential claims and determine which of PwC's engagements included work that could give rise to claims assigned to the Trust. The apparent lack of knowledge on the part of counsel for PwC regarding its work on the CWSP and PSPS is disconcerting.  The refusal thus far of PwC to produce the PwC Contracts and PwC Deliverables relating to the CWSP, PSPS, EPC CC, and PG&E's GRC filings is not only inexcusable—it highlights the need for an order allowing a Rule 2004 examination of Mr. Le.

## V.     <u>PRIOR REQUEST FOR RELIEF</u>

The TCC made a prior request for a Rule 2004 subpoena for the production of documents by PwC, which was granted.  *See* Dkt. Nos. 6351, 6473.  The Trustee is separately seeking enforcement of that PwC Documents Subpoena.  Neither the TCC nor the Trustee has made any prior request for a Rule 2004 subpoena for a deposition examination of PwC or any of its employees.

## VI.    <u>CONCLUSION</u>

For the reasons stated above, this Application is properly made on an *ex parte* basis under Bankruptcy Local Rule 2004-1(a), and the Trustee requests that the Court grant the Application and enter an order in the form attached hereto as **Exhibit A**.

DATED:  July 13, 2021                    GREENBERG GROSS LLP


By:  _____/s/ *Sarah Kelly-Kilgore*_____
       Evan C. Borges
       Sarah Kelly-Kilgore

       *Attorneys for The Honorable John K. Trotter*
       *(Ret.), Trustee of the PG&E Fire Victim Trust*

- 11 -
*EX PARTE* APPLICATION OF TRUSTEE FOR RULE 2004 EXAMINATION OF HUGH LE