| | |
|---|---|
| EVAN C. BORGES, State Bar No. 128706<br>  *EBorges@GGTrialLaw.com*<br>SARAH KELLY-KILGORE, State Bar No. 284571<br>  *SKellyKilgore@GGTrialLaw.com*<br>GREENBERG GROSS LLP<br>601 S. Figueroa Street, 30th Floor<br>Los Angeles, California 90017<br>Telephone: (213) 334-7000<br>Facsimile: (213) 334-7001<br><br>*Attorneys for The Honorable John K. Trotter (Ret.), Trustee of the PG&E Fire Victim Trust* | |

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>    **-and-**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>           **Debtors.**<br><br>☐  Affects PG&E Corporation<br>☐  Affects Pacific Gas and Electric Company<br>■  Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF SARAH KELLY-KILGORE IN SUPPORT OF *EX PARTE* APPLICATION OF THE FIRE VICTIM TRUSTEE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ORDER AUTHORIZING SERVICE OF A SUBPOENA ON PRICEWATERHOUSECOOPERS LLP EMPLOYEE HUGH LE**<br><br>[No Hearing Required Per L.B.R. 2004-1(a)] |

## DECLARATION OF SARAH KELLY-KILGORE

I, Sarah Kelly-Kilgore, declare as follows:

1. I am an attorney, duly licensed to practice law in the State of California. I am a partner with the law firm of Greenberg Gross LLP, counsel of record for the trustee (the "**Trustee**") of the PG&E Fire Victim Trust (the "**Trust**") in this proceeding. I submit this declaration in support of the *Ex Parte* Application of the Fire Victim Trustee Pursuant to Federal Rule of Bankruptcy Procedure 2004 for an Order Authorizing Service of a Subpoena on PricewaterhouseCoopers LLP Employee Hugh Le. The facts stated herein are within my personal knowledge, and, if called upon to testify, I can truthfully and competently do so as to all matters herein.

2. In March 2020, the Court granted the application of the Official Committee of Tort Claimants (the "**TCC**") for a Rule 2004 subpoena to be served on PricewaterhouseCoopers LLP ("**PwC**") for the production of documents (the "**PwC Documents Subpoena**"). Dkt. No. 6473. PwC has made seven productions pursuant to the PwC Documents Subpoena. Those productions have included a total of 1,519 pages, including 705 pages of insurance policies for a single policy year, 561 pages of contracts, and 313 pages of PG&E presentations bearing no PwC branding. It is not apparent from the face of any of the produced presentations which portions, if any, constitute PwC work product or advice. Each PwC document production consisted of a single, merged PDF file, regardless of how many documents were included in the production.

3. Only six contracts produced by PwC were executed before the 2018 Camp Fire. Two of those six contracts are master services agreements, *i.e.*, 45- and 48-page contracts that contain general terms governing other contracts entered into by PwC and PG&E for specific projects.

4. A substantial majority of the contracts produced by PwC were downloaded from the public bankruptcy court docket in this matter, as shown by the ECF footer on such documents.

5. Attached hereto as **Exhibit 1** is a true and correct copy of email correspondence from Bridget McCabe to Brian Walsh and Doug Alvarez dated June 29, 2020.

6. Attached hereto as **Exhibit 2** is a true and correct copy of correspondence from Ashley Baynham to Brian Walsh and Doug Alvarez dated October 20, 2020.

7. Attached hereto as **Exhibit 3** is a true and correct copy of correspondence from Brian Walsh to Ashley Baynham dated December 10, 2020. As promised in this correspondence, PwC subsequently produced two presentations "used to track progress on" PG&E's Electric Asset Excellence program and three presentations "that provide an overview of the" EPC Cross-Cutting program. Those presentations do not bear any PwC branding. Further, PwC made no representations regarding which portions of those presentations, if any, constitute deliverables, and it is not evident from the face of the documents which portions reflect services or advice provided by PwC.

8. Attached hereto as **Exhibit 4** is a true and correct copy of correspondence from Wayne Gross to Brian Walsh dated April 30, 2021.

9. Attached hereto as **Exhibit 5** is a true and correct copy of correspondence from Brian Walsh to Wayne Gross dated May 7, 2021.

10. On May 18, 2021, I participated in a meet-and-confer call with PwC's counsel, who took the position that no further documents need be produced under the PwC Documents Subpoena. PwC's counsel insisted that my firm first explain how any contracts or deliverables could be relevant to wildfire safety or otherwise show that any of PwC's work for PG&E was linked to the cause of either the 2017 North Bay Fires or the 2018 Camp Fire. My colleagues Evan Borges and Wayne Gross also attended that call. While we expressed our disagreement with PwC's position that the Trustee need establish the relevance of each engagement prior to the production of even the underlying contracts, Mr. Borges, Mr. Gross, and I pointed to Mr. Gross's letter of April 30, 2021, which sets forth the relevance of PwC's work in general. We asked PwC's counsel to commit to making further productions in a reasonable time—as had been requested in my firm's April 30, 2021 letter—but they would not do so.

11. Attached hereto as **Exhibit 6** is a true and correct copy of correspondence from Wayne Gross to Brian Walsh dated May 20, 2021.

-3-

KELLER DECLARATION IN SUPPORT OF
*EX PARTE* APPLICATION OF FYI FOR RULE 2004 EXAMINATION OF HUGH LE

Case: 19-30088    Doc# 10915    Filed: 07/13/21    Entered: 07/13/21 17:00:14    Page 3 of 8

12. Attached hereto as **Exhibit 7** is a true and correct copy of correspondence from Michael Kibler to Wayne Gross dated May 21, 2021.

13. On May 28, 2021, I responded to Mr. Kibler's May 21, 2021 letter. Attached hereto as **Exhibit 8** is a true and correct copy of my May 28 correspondence to Mr. Kibler.

14. Later that same day, May 28, 2021, Mr. Kibler sent a letter addressed to Mr. Gross, in which Mr. Kibler mentioned, but did not respond to, my letter from earlier that day. Mr. Kibler's letter promised a response to my letter "in a reasonable amount of time and after we're able to confer with our client." Attached hereto as **Exhibit 9** is a true and correct copy of the correspondence from Michael Kibler to Wayne Gross dated May 28, 2021.

15. Two weeks later, after receiving no further response to my May 28, 2021 letter, and no other correspondence from counsel for PwC, I sent the Court's courtroom deputy an email requesting a telephonic conference regarding the Trust's discovery dispute with PwC, and attached my firm's April 30, May 20, and May 28, 2021 letters.

16. On June 14, 2021, Matthew Cave sent an email response to my request for a telephonic conference, making lengthy characterizations of our firms' meet-and-confer exchanges and his client's prior productions. (I addressed Mr. Cave's characterizations, which I dispute, during a subsequent call.) Mr. Cave's email also attached PwC counsel's May 7, May 21, and May 28, 2021 letters to my firm.

17. On June 15, 2021, the Court directed counsel to continue to meet and confer, and to advise the Court by noon on Monday, June 21, 2021 whether a conference remained necessary. The Court indicated that if the conference remained necessary, it would be scheduled for June 23, 2021.

18. On June 16, 2021, Michael Kibler wrote a letter to Wayne Gross regarding the Trust's demand for PwC Deliverables relating to the CWSP, PSPS, EPC CC, and GRC. Attached hereto as **Exhibit 10** is a true and correct copy of correspondence from Michael Kibler to Wayne Gross dated June 16, 2021.

19. On June 18, 2021, I responded to Mr. Kibler's June 16, 2021 letter, reiterating the Trust's position that PwC was obligated to produce the requested documents, and again citing and

describing PG&E documents that show PwC was involved in CWSP and PSPS work prior to the November 2018 Camp Fire. (My firm had previously alluded to such documents in Mr. Gross's April 30, 2021 letter, and specifically cited those documents in our letters of May 20 and May 28, 2021.) To facilitate a meaningful discussion, I further proposed a one-week continuance of the discovery conference and an extension of the accompanying deadline. Attached hereto as **Exhibit 11** is a true and correct copy of my correspondence to Michael Kibler dated June 18, 2021.

20. On June 21, 2021, Michael Kibler responded to my June 18, 2021 letter, agreeing to a one-week extension and requesting that my firm send PwC's counsel the documents cited in my firm's prior correspondence. Attached hereto as **Exhibit 12** is a true and correct copy of correspondence from Michael Kibler to me dated June 21, 2021.

21. After receiving Mr. Kibler's June 21, 2021 letter, I contacted counsel for PG&E and requested PG&E's consent to the Trust's sharing of the requested documents with PwC.

22. On June 23, 2021, I participated in another meet-and-confer call with PwC's counsel. During this conference, PwC's counsel represented for the first time that the Community Wildfire Safety Program was too broad a program for them to review and produce responsive contracts and deliverables. Further, counsel for PwC represented that their client had expressly told them that PwC's work on PSPS had not begun until after the 2018 Camp Fire. I informed PwC's counsel that I had already requested consent from PG&E's counsel to share documents that showed that PwC's PSPS work started months before the 2018 Camp Fire—documents that PG&E had designated as "Confidential" under the Protective Order entered in this proceeding—and requested that PwC and its counsel sign a form acknowledging and agreeing to be bound by the Protective Order so as to expedite obtaining PG&E's consent.

23. During the same June 23, 2021 meet-and-confer call, I reiterated several points made in my letter of June 18, 2021, including that the Trust would seek authorization to serve a new Rule 2004 subpoena for the examination of PwC employee Hugh Le, who was involved in PwC's pre-Camp Fire work on the CWSP and PSPS programs. PwC's counsel stated their

-5-
KELLER DECLARATION IN SUPPORT OF
*EX PARTE* APPLICATION OF FVT FOR RULE 2004 EXAMINATION OF HUGH LE

position that such an examination would be premature. A further meet-and-confer call was scheduled for the afternoon of Friday, June 25, 2021.

24. On June 24, 2021, Matthew Cave emailed me to inform me of PwC's position that neither PwC nor its counsel should be required to sign the Protective Order before receiving the documents cited in my firm's prior letters. I responded later that day, noting that I could not release the requested documents to PwC without consent from PG&E, and again requesting that PwC and its counsel execute the acknowledgment and agreement to be bound by the Protective Order.

25. On the morning of June 25, 2021, I received consent from PG&E to share certain documents with PwC's counsel. PG&E's counsel requested that I not provide PwC with access to any internal PG&E documents and produced a redacted version of one document to protect the same. That same morning, I provided PwC's counsel with the documents for which I had PG&E's consent.

26. Later on June 25, 2021, an hour before our scheduled meet-and-confer call, Matthew Cave responded to my email, stating that he and PwC's other counsel would review the provided documents and discuss them with their client over the weekend. Mr. Cave's email proposed moving our scheduled meet-and-confer call to the morning of Monday, June 28, 2021.

27. I responded to Matthew Cave's email, agreeing to move the meet-and-confer call but asking him to respond by the end of the day—June 25, 2021—with answers to long-pending questions from the Trust regarding whether PwC would commit to producing documents relating to PwC's other engagements with PG&E. I did not receive a reply to this email.

28. On June 28, 2021, I participated in the rescheduled meet-and-confer call with PwC's counsel. During that call, PwC's counsel stated that they could not yet respond to any of the open issues from my June 18, 2021 letter or my June 25, 2021 email. PwC's counsel represented that they would confer with their client and endeavor to provide a written response by end of day on June 29, 2021.

29. Later on June 28, 2021, I emailed Matthew Cave, indicating that I intended to request a brief continuance of the discovery conference then-scheduled for June 30, 2021 in light

of his representation that PwC's counsel would endeavor to respond to my June 18, 2021 letter by the end of the day on June 29, 2021. In response to my request to the Court, the discovery conference was continued to July 9, 2021.

30. I did not receive any further communication from PwC's counsel by the end of the day on June 29, 2021.

31. On June 30, 2021, Matthew Cave sent an email to which he attached his executed acknowledgement and agreement to be bound by the Protective Order. Mr. Cave represented that he and PwC's other counsel had been unable to speak to their PwC contact, but that they would answer the Trustee's "questions as soon as we are able to, and certainly well before the continued discovery conference on July 9."

32. As of today, I have not received any such answer to the Trustee's requests for commitments by PwC to produce further documents responsive to the PwC Documents Subpoena.

33. On July 6, 2021, three days before the scheduled discovery conference, Matthew Cave sent me an email following up on a prior request for an internal PG&E document, yet giving no indication whether he or PwC's other counsel had discussed any of the Trustee's requests with his PwC contact.

34. Later on July 6, 2021, I responded to Mr. Cave's email, indicating that I had already requested PG&E's consent to share internal PG&E documents in light of Mr. Cave's execution of the acknowledgement and agreement to be bound by the Protective Order. I further indicated that, in light of our failure to make any progress on our discovery disputes, counsel for the Trustee intended to move forward with the discovery conference set for July 9, 2021.

35. The discovery conference was ultimately continued to July 16, 2021.

36. On July 13, 2021, having still received no answer from PwC as to whether it will commit to produce further documents responsive to the PwC Documents Subpoena, I wrote another email to Matthew Cave, requesting a response to my letter of June 18, 2021. I also informed Mr. Cave that PG&E had decided not to provide PwC with access to internal PG&E documents, and that my office is continuing to work with PG&E's counsel to determine whether a redacted version of a particular document might be shared.

37. Attached hereto as **Exhibit 13** is a true and correct copy of the email correspondence between me and Matthew Cave from June 18 to July 13, 2021, including the email correspondence described in paragraphs 24 to 27, 29, 31, 33 through 34, and 36 above.

Executed on July 13, 2021 at Los Angeles, California.

                                                                 /s/ *Sarah Kelly-Kilgore*
                                                             Sarah Kelly-Kilgore