# EXHIBIT 4



Wayne R. Gross
Direct Dial: (949) 383-2810
WGross@GGTrialLaw.com

April 30, 2021

**VIA E-MAIL:  brian.walsh@bclplaw.com**

Brian C. Walsh
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102

Re:     **PricewaterhouseCoopers LLP's Compliance with Rule 2004 Order**

Dear Mr. Walsh:

On behalf of the PG&E Fire Victim Trust (the "Trust"), we write in a final effort to meet and confer regarding significant and willful failures by PricewaterhouseCoopers LLP ("PwC") to produce highly relevant documents in response to the outstanding Rule 2004 subpoena, which was authorized by order of the Bankruptcy Court on March 24, 2020 (the "Subpoena").[1]  *In re PG&E Corp. & Pac. Gas & Elec. Co.*, Case No. 19-30088 (DM), Dkt. No. 6473 (Mar. 24, 2020).

The Trust, as successor in interest to the Official Committee of Tort Claimants in the bankruptcy case (the "TCC"), has standing to enforce the Subpoena.  As detailed below, indisputable evidence shows that PwC, for many years, rendered to PG&E significant consulting services related to wildfire safety, and has extensive and detailed knowledge of PG&E's operations.  Indeed, during the time period covered by the Subpoena, PG&E paid PwC in excess of $200 million for consulting services, including but not limited to work on wildfire safety.

PwC has had more than a year to respond to the Subpoena.  Nonetheless, PwC has blatantly failed and refused to produce relevant, responsive documents, even after specific requests for evidence pertaining to known PwC work on wildfire safety.  Accordingly, we now seek from your firm an unqualified written representation by <u>5 p.m. PDT, May 7, 2021</u>, that PwC will produce the responsive documents identified below and comply with the Subpoena no later than <u>June 7, 2021</u>.  Absent such a commitment, we will immediately commence enforcement of the Subpoena before the Honorable Dennis Montali, United States Bankruptcy Judge, and request all appropriate sanctions, as provided in Judge Montali's published practices and procedures.

---

[1] A true and correct copy of the Subpoena is attached hereto as Exhibit 1.

650 Town Center Drive, Suite 1700 | Costa Mesa, California 92626 | Phone (949) 383-2800 | Fax (949) 383-2801 | www.GGTrialLaw.com

Case: 19-30088    Doc# 10915-4    Filed: 07/13/21    Entered: 07/13/21 17:00:14    Page 2 of 18



1. **The Importance of the Rule 2004 Subpoena, the Key Documents Requested, and PwC's Egregious Non-Compliance.**

As you know, in January 2019, PG&E filed a chapter 11 bankruptcy in response to massive liabilities arising out of catastrophic losses suffered by third-party fire victims as well as PG&E itself due to the 2017 North Bay Fires, the 2018 Camp Fire, and other wildfires (collectively the "Fires"). Under its confirmed bankruptcy plan (the "Plan"), PG&E settled the claims of the fire victims by paying the Trust cash and other consideration valued at approximately $13.5 billion. Under the Plan, PG&E also assigned to the Trust affirmative claims for indemnity, negligence, and other causes of action against various third parties, including business consultants such as PwC. The Trust is pursuing such claims for the benefit of the fire victims.

In March 2020, the TCC served PwC with the Subpoena, which sought, *inter alia*, the following documents:

Request No. 1: "All Documents that constitute and/or memorialize any and all contracts and/or work agreements between You and PG&E, for the time period 2013 to the present" (the "PwC Contracts"); and

Request No. 3: "All Documents that constitute and/or memorialize any and all reports, analyses, summaries, or descriptions of Your work for PG&E, for the time period 2013 to the present" (the "PwC Deliverables").

As outlined below, notwithstanding various meet-and-confer efforts by counsel for the TCC as well as counsel for the Trust, PwC thus far has steadfastly refused to comply with its discovery obligations. Specifically, PwC has failed and refused to produce: (1) relevant PwC Contracts that undisputedly relate to wildfire safety, even after a request identifying known wildfire safety work by PwC; and (2) *any* PwC Deliverables whatsoever. No good faith basis exists for PwC's willful failure to comply with the Subpoena, which is sanctionable.

2. **Between 2013 and 2020, PG&E Paid PwC Over $200 Million for Consulting Services, Including Services Undisputedly Related to Wildfire Safety.**

PwC's written objections to the above-referenced requests state, in pertinent part: "PwC objects to [the Request] because it seeks information and documents from PwC that are not relevant to the Committee's basic inquiry. **PwC further objects because *it was not engaged by PG&E to perform any work that might plausibly give rise to a claim that will be assigned to the Fire Victim Trust***." (PwC's Response and Objections to Rule 2004 Subpoena dated April 9, 2020, at 3) (emphasis added). As discussed below, the highlighted language in PwC's objection is demonstrably false based on undisputed evidence of which PwC is well aware. For the benefit of Judge Montali, we provide the following overview of PwC's known services for PG&E between 2013 and 2020:



Brian C. Walsh
April 30, 2021
Page 3

> **A. Between 2013 and 2017, PG&E Paid PwC Over $150 Million for Consulting Services, Including in Areas Related to Wildfire Safety.**

We have obtained, in documents separately produced by PG&E, an internal PG&E management summary dated December 2017, which sets forth the historical relationship between PG&E and PwC. The PG&E summary confirms that between 2013 and October 2017, PG&E paid PwC in excess of **$150 million** (an average of approximately $30 million per year) for consulting services. The PG&E summary further reads in pertinent part:

> [PwC is] one of our four Preferred Management Consultant partners with a long and valued relationship at PG&E that **includes deep experience, knowledge and expertise across many of our LOBs** [lines of business]. **They have successfully supported us through critical periods and play a major role in the rate case preparation**.

PG&E's characterization of PwC's important role in preparing its annual general rate case (the "GRC") is quite significant. As PwC knows, during the relevant time period, the California Public Utilities Commission ("CPUC") required utilities such as PG&E to provide the CPUC, as part of their GRC (justifying rates and rate increases to consumers), a budget and plan regarding both asset maintenance (including high-powered electrical lines and the electrical grid) and wildfire safety and risk mitigation. PwC's work on the GRC for PG&E, therefore, relating as it did to plans and budgets for wildfire safety and asset maintenance, is highly relevant to PwC's role in and responsibility for the circumstances that ultimately gave rise to the 2017 North Bay Fires and the 2018 Camp Fire.

The PG&E summary also states that PwC, during the relevant time period, provided consulting services in connection with the EPC Cross-Cutting Program ("EPC CC"). The EPC CC addressed PG&E's business plan, selection of contractors, and budgeting for maintenance and operation of its electrical power grid, all of which pertain to wildfire safety as well as the causes of the 2017 North Bay Fires and the 2018 Camp Fire.

In sum, PwC, despite performing extensive consulting work related to wildfire safety over an extended period of time, has refused and failed to produce that which it is required to turn over pursuant to the Subpoena: PwC Contracts related to wildfire safety (including, without limitation, for the GRC and EPC CC) as well as all associated PwC Deliverables.

> **B. PG&E's "Litigation Hold" Letters, Sent to PwC After the 2017 North Bay Fires, Further Evidence PwC's Work in Areas Related to Wildfire Safety.**

Not coincidentally, PG&E's legal department, in November 2017 (the month after the 2017 North Bay Fires), sent "litigation hold" notices to 27 different PwC employees who had performed consulting services to PG&E. Each litigation hold notice reads in pertinent part:

> Please be advised that in response to the recent fires in [list of 10 counties], which



started on or around October 8, 2017 (henceforth referred to as the "October 2017 Wildfires"), PG&E is undertaking to preserve any and all paper documents, electronically stored information (ESI), and tangible items in its possession, custody, or control that potentially relate to the October 2017 Wildfires. **Because you have been or are doing work on behalf of PG&E that potentially relates to the October 2017 Wildfires, we request that you take appropriate steps to preserve documents, ESI, and tangible items that relate to the October 2017 Wildfires and your work for PG&E (the "Relevant Evidence").** (emphasis added).

The 27 litigation hold notices sent to PwC comprised approximately **30%** of the total number of litigation hold notices that PG&E sent to outside contractors after the 2017 North Bay Fires. Such notices are wholly inconsistent with PwC's self-serving objection to the Subpoena that "**it was not engaged by PG&E to perform any work that might plausibly give rise to a claim that will be assigned to the Fire Victim Trust**."

In sum, the litigation hold notices directed to numerous PwC employees after the 2017 North Bay Fires confirm that PwC, contrary to its frivolous above-referenced objections to the Subpoena, did in fact perform extensive consulting services related to wildfire safety, and must provide the Trust with the evidence to which it is entitled pursuant to the Subpoena.

  C. **Prior to the November 2018 Camp Fire, PwC Performed Additional Services Related to Wildfire Safety, and Received Payment from PG&E of at Least $17 Million.**

Based on discovery from PG&E, we know that PwC, from approximately February 2018 through November 2018, rendered extensive consulting services to PG&E in two areas tied to wildfire safety: the Community Wildfire Safety Program ("CWSP") and the Public Safety Power Shutoff Program ("PSPS"). Nonetheless, PwC has failed and refused to produce *any* PwC Contracts that relate to this work, as well as any related PwC Deliverables.

To make matters worse, in June 2020, counsel for the TCC, in meet-and-confer correspondence with you, specifically requested that you produce any and all PwC Contracts related to its work on the CWSP (which was combined with PwC's work on the PSPS). Notwithstanding this express request, and the fact that PwC undisputedly did work in these areas leading up to the Camp Fire, PwC failed to produce a single responsive document for such services.

In sum, the above undisputed facts demonstrate that PwC has knowingly withheld and failed to produce highly relevant documents pertaining to PwC's consulting services in the area of wildfire safety leading up to the November 2018 Camp Fire.



Brian C. Walsh
April 30, 2021
Page 5

      **D.   Between 2019 and 2020, PG&E Paid PwC Approximately $38.5 Million for Consulting Services, Which Included the CWSP, the PSPS, a Wildfire Mitigation Plan, the GRC, and E-Discovery Services Related to the 2017 North Bay Fires and the 2018 Camp Fire.**

    PG&E, through its counsel, filed four separate applications to employ PwC to render services during the bankruptcy case: on May 1, 2019, November 7, 2019, March 18, 2020, and July 22, 2020. (*In re PG&E Corp.*, *supra*, Dkt. Nos. 1791, 4601, 6364, and 8495.) In support of the first application, PwC submitted a declaration containing a statement, repeated in all its employment applications, that "because PwC performed a number of engagements for the Debtors prior to the Petition Date, PwC has developed valuable institutional knowledge about the Debtors' businesses, operations, accounting systems, and other material information." (*Id.* Dkt. No. 1792, Declaration of Daniel Bowman, page 3 of 15, lines 15-17). In this Declaration, PwC also described the following areas of *ongoing* services, which had commenced prior to the bankruptcy filing, and which related to the 2017 North Bay Fires, the 2018 Camp Fire, compliance, and PG&E's general rate case:

- "Perform support activities related to evidence evaluation for the 2017 North Bay Fires and 2018 Camp Fire . . . ." (*Id.* at page 4 of 15, lines 10-11);

- "Assist the Debtors with their corporate incident reporting processes related to the 2017 North Bay Fires and 2018 Camp Fire and other major events in the Debtors' service territory, including, operations and legal support activities (the 'North Bay Services' and 'Camp Fire Services')." (*Id.* at page 4 of 15, lines 14-17);

- Assist the Debtors with compliance work. (*Id.* at page 5 of 15, lines 2-9);

- "Perform forensic collection of data from electronic devices related to the 2017 North Bay Fires and 2018 Camp Fire (the 'E-Discovery Services')." (*Id.* at page 5 of 15, lines 12-14);

- "Provide assistance and support services related to the Debtor's general rate case. (the 'Rate Case Support Services')." (*Id.* at page 5 of 15, lines 15-16).

    In its second employment application filed on November 7, 2019 (before the March 2020 date of the Subpoena), PwC identified the following additional services (among others):

- "PSPS Program Support Services," which PwC described as: "Assist the Debtors with their approach and response reporting processes related to the Community Wildfire Safety Program through the Public Safety Power Shutoff ('PSPS') program, including but not limited to: process developments of the program, documentation and training, and execution of the PSPS program." (*Id.* Dkt. No. 4602, Supplemental Declaration of Daniel Bowman, page 5 of 12, lines 13-16);



- "WMP Support Services," which PwC described as: "Assist the Debtors in the assessment of the design roadmap to track and mange compliance of its Wildfire Mitigation Plan ('WMP'), including, but not limited to: development of roadmap, and documentation of compliance items and timeline for completion." (*Id.* at page 6 of 12, lines 5-8).

All of PwC's services identified above clearly relate to wildfire safety. Moreover, PG&E paid PwC $38.5 million for the services it provided during the bankruptcy case. (*See id.* Dkt. No. 10256, Order Regarding Third Set of Final Fee Applications, page 4 of 4, lines 4-6.)

Based on the foregoing, it is quite clear that PwC, contrary to its frivolous objections to the Subpoena, has extensive and detailed knowledge of the relevant documents and information related to the Fires and wildfire safety, including PwC's own work for PG&E on wildfire safety that pre-dated and post-dated the bankruptcy. Despite being well-positioned to respond, identify, and produce the PwC Contracts and PwC Deliverables, PwC willfully chose not to do so.

### 3. **PwC's Obligations Under Rule 2004.**

Rule 2004 subpoenas are issued by court order, and bankruptcy courts have the power to impose civil contempt for violation of a Rule 2004 order. *See In re Stasz*, 387 B.R. 271, 276-77 (B.A.P. 9th Cir. 2008) (upholding bankruptcy court award of civil contempt sanctions for failure to comply with Rule 2004 order). Moreover, "the scope of a Rule 2004 examination is 'unfettered and broad'" and "may 'extend to third parties who have had dealings with the debtor.'" *In re Mastro*, 585 B.R. 587, 596 (B.A.P. 9th Cir. 2018) (quoting *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011), and *In re Fin. Corp. of Am.*, 119 B.R. 728, 733 (Bankr. C.D. Cal. 1990)).

The Subpoena was issued pursuant to an order by Judge Montali, *In re PG&E Corp.*, *supra*, Dkt. No. 6473, and directs PwC to produce the PwC Contracts and PwC Deliverables. The requested documents are well within the scope of proper Rule 2004 discovery regarding PwC's dealings with PG&E, including its services in the area of wildfire safety.

Indeed, in April 2020, Judge Montali reaffirmed that the TCC was entitled to pursue broad third-party discovery under Rule 2004. *Id.* Dkt. No. 6866 at 4 (approving requested Rule 2004 examinations because they pertained to the "value and validity of" claims that were to be assigned to the Trust upon confirmation).

In sum, PwC has no valid legal objection to the requests in the Subpoena for the PwC Contracts and PwC Deliverables.

### 4. **PwC's Additional Objections Have No Merit.**

In addition to the above-referenced objections, you have raised two separate objections that similarly lack merit: first, that the requested documents should be obtained from PG&E; and



Brian C. Walsh
April 30, 2021
Page 7

second, that some documents may be withheld from production based on privilege.

As to the objection that the Trust should obtain the requested documents from PG&E, this does not constitute a valid legal objection to the Subpoena. That PG&E may have some or even all of the evidence sought from PwC in no way obviates PwC's discovery obligations pursuant to the Subpoena. *See In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627-28 (Bankr. D. Del. 2016) (overruling similar objection, noting that "[t]he fact that the Trustee already has access to certain documents and information of the Debtors does not detract from the Trustee's testimony that the documents already in his purview are not sufficient to determine the scope of the Trustee's viable claims").

Moreover, as a practical matter, PG&E thus far has produced only a small fraction of the PwC Contracts and none of the PwC Deliverables. As you no doubt well know, PG&E's record-keeping practices have been subject to widespread criticism. It is also important to note that PwC inserted in at least some of its contracts with PG&E a provision requiring PG&E to remove all PwC branding from PwC Deliverables. In accordance with this requirement, certain documents in PG&E's possession, including Power Point presentations, appear to have had PwC's branding removed. Accordingly, it is imperative that the Trust obtain directly from PwC the information called for by the Subpoena, which will enable the Trust to assess precisely the work performed and advice provided by PwC to PG&E.

Regarding the purported privilege objection, we request that if your firm or PwC is withholding responsive documents, you provide a written privilege log identifying any and all such withheld documents with sufficient specificity and information to allow the Trust and the Court to evaluate the validity of any privilege claim.

### 5. __Conclusion.__

Based on the foregoing, we demand that, on or before May 7, 2021, PwC provide an unqualified written representation that it will produce all PwC Contracts and PwC Deliverables requested by the Subpoena no later than June 7, 2021. We also demand that PwC further provide a privilege log that identifies any documents withheld on the basis of privilege so that the Trust and the Court may evaluate the validity of such claims.

Very truly yours,

Wayne R. Gross

# EXHIBIT 3

# UNITED STATES BANKRUPTCY COURT

__Northern__ District of __California__

In re __PG&E Corporation__
_____
Debtor

Case No. __19-30088 (DM)__

*(Complete if issued in an adversary proceeding)*

Chapter __11__

_____
Plaintiff
v.
_____
Defendant

Adv. Proc. No. _____

**SUBPOENA PURSUANT TO F.R.B.P. 2004 TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)**

To: PricewaterhouseCoopers LLP c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801

*(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attachment Exhibit A

| PLACE | DATE AND TIME |
|---|---|
| Bridget McCabe c/o Veritext, 300 Delaware Ave., Suite 815, Wilmington, DC 19801 | April 8, 2020 at 1:00 PM PST |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 3/17/2020

CLERK OF COURT

OR

_____     _/s/ Bridget S. McCabe_
*Signature of Clerk or Deputy Clerk*     *Attorney's signature*
Bridget S. McCabe

The name, address, email address, and telephone number of the attorney representing *(name of party)* Official Committee of Tort Claimants, who issues or requests this subpoena, are:

Bridget S. McCabe, 11601 Wilshire Blvd., Suite 1400, Los Angeles, CA 90025, bmccabe@bakerlaw.com, (310) 442-8844

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).



## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any):* _____
on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____.

    I declare under penalty of perjury that this information is true and correct.

Date: _____

 

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
# (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

  *(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

  *(2) For Other Discovery.* A subpoena may command:
    (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  *(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

  *(2) Command to Produce Materials or Permit Inspection.*
    *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  *(3) Quashing or Modifying a Subpoena.*
    *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
    *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or
      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  *(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  *(2) Claiming Privilege or Protection.*
    *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

Case: 19-30088   Doc# 10915-4   Filed: 07/13/21   Entered: 07/13/21 17:00:14   Page 12 of 18 

# EXHIBIT A

## DEFINITIONS

1. As used herein, the words "Document" and "Documents" mean each written, typed, printed, recorded, transcribed, taped, electronically stored, digitized, disked, filmed, or graphic matter of every kind, however produced or reproduced, including originals or copies of originals not in existence or available, all drafts or partial copies, wherever located, and including all Electronic Data, correspondence, letters, emails, memoranda, requests for information, reports, studies, tests, inspections, working papers, handwritten notes, diaries, charts, spreadsheets, photographs, sketches, drawings, blueprints, videos, graphs, indices, submittals, data sheets, databases, conversations, statements, minutes, notations (including notes or memorandum of conversations), telephone conversations in whatever form, suggestions, comments, instructions, warnings, notices, manuals, periodicals, pamphlets, brochures, catalogues, bulletins, schedules, invoices, and other documentation.

2. The term "Electronic Data" as used herein, shall be construed as the following types of electronic data and data compilations in the custody and/or control of the party responding to this Subpoena:

   a. All electronic mail and information about electronic mail sent or received by the party responding to this Subpoena;

   b. All databases containing any reference and/or information;

   c. All activity logs on any computer system which may have been used to process or store electronic data containing information;

   d. All word processing files and file fragments, including metadata, containing information about the below listed subjects;

   e. All electronic data files and file fragments created by application programs that process information requested herein;

   f. All electronic data files and file fragments from electronic calendars and scheduling programs that contain information about the below-listed subjects; and

g. All audio and video recordings sent, received, or stored by the party responding to this Subpoena that contains, references, or otherwise identifies information about the below listed subjects.

3. The terms "and" and "or" as used herein, shall, where the context permits, be construed to mean "and/or" as necessary to bring within the scope of the subpoena request.

4. The terms "You" and "Your" refer to the party responding to this Subpoena.

5. The term "PG&E" refers to PG&E Corporation and/or Pacific Gas & Electric Company.

6. The term "Work" means any activity performed by You in fulfillment of Your duties, contractual or otherwise, to PG&E.

7. The term "Communication(s)" means any transmission of information from one person or entity to another, including (without limitation) by personal meeting, conference, conversation, telephone, radio, electronic mail, teleconference, or any other method of communication or by any medium.

8. The term "Fires" means the fires that occurred in Northern California in 2015, 2017 and 2018 listed below:

1. Butte Fire (2015)
2. North Bay Wildfires (2017)
    a. 37
    b. Adobe
    c. Atlas
    d. Blue
    e. Cascade
    f. Cherokee
    g. Honey
    h. LaPorte
    i. Lobo
    j. Maacama / Youngs

    k.  McCourtney

    l.  Norrbom

    m.  Nuns

    n.  Partrick

    o.  Pocket

    p.  Point

    q.  Pressley

    r.  Pythian / Oakmont

    s.  Redwood / Potter Valley

    t.  Sullivan

    u.  Sulphur

    v.  Tubbs

  3.  Camp Fire (2018)

- 3 -

Case: 19-30088  Doc# 10915-4  Filed: 07/13/21  Entered: 07/13/21 17:00:14  Page 15 of 18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All Documents that constitute and/or memorialize any and all contracts and/or work agreements between You and PG&E, for the time period 2013 to the present.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents that constitute and/or memorialize, any and all indemnification and/or hold harmless agreements between You and PG&E, for the time period 2013 to the present.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents that constitute and/or, memorialize any and all reports, analyses, summaries, or descriptions of Your work for PG&E, for the time period 2013 to the present.

**REQUEST FOR PRODUCTION NO. 4**

All Documents that constitute and/or, memorialize Commercial General Liability insurance policies, including but not limited to all applications, declarations, policies and endorsements, for which You are an insured, for the time period 2013 to the present. Included in this request are all such policies whether insuring You alone, or You as well as others.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents that constitute and/or, memorialize Errors & Omissions/Professional Liability insurance policies, including but not limited to all applications, declarations, policies and endorsements, for which You are an insured, for the time period 2013 to the present. Included in this request are all such policies whether insuring You alone, or You as well as others.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents that constitute and/or, memorialize Directors & Officers insurance policies, including but not limited to all applications, declarations, policies and endorsements, for which You are an insured, for the time period 2013 to the present. Included in this request are all such policies whether insuring You alone, or You as well as others.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents that constitute and/or, memorialize Environmental/Pollution Liability insurance policies, including but not limited to all applications, declarations, policies and

endorsements, for which You are an insured, for the time period 2013 to the present. Included in this request are all such policies whether insuring You alone, or You as well as others.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents that constitute and/or, memorialize insurance policies, not otherwise produced in response to Request Nos. 4-7, that You were contractually required to maintain pursuant to any contracts You had with PG&E, including but not limited to all applications, declarations, policies and endorsements, for which You are an insured, for the time period 2013 to the present. Included in this request are all such policies whether insuring You alone, or You as well as others.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents that constitute and/or, memorialize other insurance policies, not otherwise produced in response to Requests 4-8, that provide defense coverage, indemnity, and/or other coverage of claims arising from or related to Your services or acts, including but not limited to all applications, declarations, policies and endorsements, for the time period 2013 to the present. Included in this request are all such policies whether insuring You alone, or You as well as others.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents that constitute, refer or relate to notices of claims, tenders and coverage Communications—including but not limited to coverage positions and insurance analyses—between You and any insurers for all such insurance policies subject to Request Nos. 4-9, for the time period 2013 to the present related, directly or indirectly, to the Fires and/or Your Work for PG&E.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents that constitute, refer or relate to notices of claims, tenders and coverage Communications—including but not limited to coverage positions and insurance analyses—between You and any insurance brokers or agents for all such insurance policies subject to Request Nos. 4-9, for the time period 2013 to the present related, directly or indirectly, to the Fires and/or Your Work for PG&E.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents that constitute, refer or relate to notices of claims, tenders and coverage Communications—including but not limited to coverage positions and insurance analyses—between You and any insurers for all such insurance policies subject to Request Nos. 4-9, for the time period 2013 to the present related to work that You performed for any entity other than PG&E but that was the same or similar in nature to the Work you performed for PG&E.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents that constitute, refer or relate to notices of claims, tenders and coverage Communications—including but not limited to coverage positions and insurance analyses—between You and any insurance brokers or agents for all such insurance policies subject to Request Nos. 4-9, for the time period 2013 to the present related to work that You performed for any entity other than PG&E but that was the same or similar in nature to the Work You performed for PG&E.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents constituting, memorializing, or reflecting any payment of Your defense costs and/or indemnity and/or ultimate net loss, however it may be defined by any given policy, made by each insurance carrier subject to Request Nos. 4-9 for the time period 2013 to the present.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents constituting, memorializing, or reflecting insurance policy limits remaining available for payment of covered claims under each policy where an insurance carrier has made a payment subject to Request No. 14.