# EXHIBIT 6

Case: 19-30088    Doc# 10915-6    Filed: 07/13/21    Entered: 07/13/21 17:00:14    Page 1 of 7



Wayne R. Gross
Direct Dial: (949) 383-2810
WGross@GGTrialLaw.com

May 20, 2021

**VIA E-MAIL: brian.walsh@bclplaw.com**

Brian C. Walsh
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102

    Re:    **Demand for PricewaterhouseCoopers LLP's Compliance with Rule 2004 Subpoena**

Dear Mr. Walsh:

    Thank you again for the telephone call on Tuesday May 18, 2021. We write in furtherance of that discussion and to respond to assertions made in your letter of May 7, 2021 (hereinafter, the "May 7th Letter").

    Regrettably, it is evident from your May 7th Letter and our discussion that PwC does not intend to meet and confer in good faith and that any additional meet-and-confer efforts would serve only to delay the Trust's receipt of information responsive to the Subpoena.[1] Significantly, on our call, we asked that you commit to providing us with a list of all PwC Contracts during the relevant time period, 2013 to 2020, which we offered to use as a starting point to enable the parties to determine mutually which contracts should be produced as relevant to wildfire safety. We asked that you inform us, no later than close of business on May 20, 2021, as to whether PwC would commit to providing such a list. You refused to do even that much, despite the fact that this matter has been pending for over a year. Although you objected to the timeframe of our request as unreasonable, you chose to provide no alternative, simply indicating that we should seek court intervention. We therefore are compelled to seek relief from Judge Montali.

    There are three fundamental problems with PwC's approach to discovery to date: (1) PwC has refused to produce relevant PwC Contracts; (2) PwC has refused to produce relevant PwC Deliverables; and (3) PwC has refused to provide a privilege log identifying the documents it is withholding on privilege grounds. Common to each of these problems is your office's troubling unfamiliarity with PwC's files. For example, your letter falsely claims that "PwC's first work on the PSPS project was in 2019, after the 2018 Camp Fire," when, in reality—as we explained in our letter of April 30, 2021—documents produced by PG&E

---

[1] Unless otherwise stated, capitalized terms use the same definitions set forth in our letter of April 30, 2021.

650 Town Center Drive, Suite 1700 | Costa Mesa, California 92626 | Phone (949) 383-2800 | Fax (949) 383-2801 | www.GGTrialLaw.com

Case: 19-30088   Doc# 10915-6   Filed: 07/13/21   Entered: 07/13/21 17:00:14   Page 2 of 7



Brian C. Walsh
May 20, 2021
Page 2

demonstrate that PwC's work on PSPS and CWSP began no later than spring 2018. *See, e.g.*, PGE-BK-2-0000244518 (email exchange between PwC and PG&E dated March 19 through 26, 2018 discussing CWSP work); PGE-BK-TAR-0001660351 (email between PwC and PG&E dated May 1, 2018 discussing PSPS work and, specifically, PwC's comments on preparation and execution of PSPS).[2]

In short, PwC has an obligation to produce the requested documents and accompanying privilege log. In light of PwC's refusal to do so after more than a year, the Trust will seek an order compelling such compliance.

1. **There Is No Dispute That the Subpoena Obligates PwC to Produce Responsive, Non-Privileged Materials.**

PwC is obligated to produce all responsive, non-privileged materials called for by the Subpoena. In an attempt to avoid full compliance, you have mischaracterized the scope of PwC's prior productions and inaccurately suggested that prior counsel for the TCC and the Trust were satisfied with PwC's woefully incomplete production. In fact, the meet-and-confer correspondence on which you rely states that neither the Trust nor the TCC was ever satisfied with PwC's deficient production. For example, in June 2020, the TCC's counsel represented that it was still "working to achieve full subpoena compliance" from PwC. Letter from David J. Richardson to Hon. Dennis Montali at 5, *In re PG&E Corp. & PG&E Co.*, No. 19-30088 (Bankr. N.D. Cal. Jun. 29, 2020), ECF No. 8206; *see* E-mail from Bridget McCabe to Brian Walsh & Doug Alvarez (Jun. 29, 2010 9:13 PM) ("we remain willing to work with PwC ***to obtain full compliance with the TCC's subpoena***" (emphasis added)). In October 2020—in the very correspondence cited in your letter—the Trust's counsel represented that it was seeking immediate production of certain documents "without prejudice to the Trust's rights to seek full compliance with the Rule 2004 Subpoena to PwC, which rights are expressly reserved." Letter from Ashley L. Baynham to Brian C. Walsh at 1 (Oct. 20, 2020). Thus, prior counsel never stated that the Trust was "affirmatively disclaim[ing] interest" in documents responsive to the Subpoena, as you now claim. *See* May 7th Letter at 6. Rather, given PwC's initial reluctance (if not refusal) to produce *any* documents, prior counsel to the TCC and the Trust chose to expedite pursuit of documents specifically known to exist, reserving rights to pursue the remainder at a later time. That time has now come. PwC must produce all responsive, non-privileged documents, including the PwC Contracts and the PwC Deliverables.

---

[2] *See also* PGE-BK-0001454037 (email from PwC employee Hugh Le to PG&E employees dated February 28, 2018 re pro-active de-energization work common to CWSP and PSPS); PGE-BK-0000292644 (WebEx invitation for meeting between PwC and PG&E on February 15, 2018 re same); PGE-BK-0000260594 (email exchange between PwC and PG&E dated March 6, 2018 re same); PGE-BK-TAR-0001429836 (email exchange between PwC and PG&E dated July 10, 2018 re wildfire mitigation, including CWSP); PGE-BK-0000247716 (email exchange between PwC and PG&E dated August 20, 2018 re PSPS).



Brian C. Walsh
May 20, 2021
Page 3

Your statement during our call that PwC might produce additional documents if the Trust first identifies the specific documents sought and explains the relevance of such documents turns the rules upside down, and is only part of PwC's pattern of delaying compliance.[3] It is PwC's burden to locate and review potentially responsive documents. While we have attempted to address your concerns by identifying particular areas of PwC's work that we believe to be relevant, to proceed as you suggest, and require the Trust first to identify documents with particularity, would improperly invert the burden under Rule 2004 and leave the Trust in the impossible position of guessing at what relevant documents PwC might possess.

### A.     PwC Is Obligated to Produce the PwC Contracts but Has Chosen to Produce Only a Small Subset of Such Documents.

In an attempt to make it appear as though PwC's production was extensive, your letter misleadingly relies on the number of pages, rather than the number of contracts, produced. In fact, PwC has produced only *six* PwC Contracts that pre-date the Camp Fire. Most of the other PwC Contracts you produced were pulled directly from public filings in the bankruptcy court's docket. *See, e.g.*, PwC 0980 (publicly available at Docket No. 4602-2); PwC 0843 (publicly available at Docket No. 1792-17). Relatedly, contrary to the representation you made on our call, PwC has not produced more than fifty separate contractual documents.[4]

While PwC's blatantly limited production of documents does not come close to satisfying its discovery obligations, it does show that the burden of a privilege review is minimal. Contracts between PwC and PG&E are not privileged; rather, they memorialize a business relationship and should be produced. No legitimate reason exists as to why PwC cannot provide a list of all contracts in place between PwC and PG&E during the relevant time period, so that the parties might have a meaningful discussion about the relevance of specific documents. Your refusal to do so confirms PwC's lack of good faith in discovery.

---

[3] During our call, you attempted to blame the Trust for PwC's delay in complying with the Subpoena by, among other things, pointing to the eleven days between your May 7th Letter and our call. As you know, however, this matter has been pending for an extended time, and we requested a call with you last week. You requested that we postpone the call until Monday, May 17, 2021, to accommodate your schedule. *After* we scheduled a call with you for that date, you requested that we again postpone the call to further accommodate your schedule.

[4] To make matters worse, PwC has made it unduly burdensome to identify versions of the same documents by failing to comply with its obligations concerning the form of production and instead making each of its productions in the form of a single, merged PDF file. PwC's conduct violates Federal Rule of Civil Procedure 45(e), which requires documents to be produced "as they are kept in the ordinary course of business" or in "organize[d] and label[ed]" form and which further requires electronic documents to be produced "in a reasonably usable form or forms." Fed. R. Civ. P. 45(e)(1)(A)-(B).



Brian C. Walsh
May 20, 2021
Page 4

Moreover, although you claim that the Subpoena is purportedly limited to seeking documents pre-dating the 2018 Camp Fire, the plain language of the Subpoena and the meet-and-confer correspondence cited above belie that claim. The Subpoena expressly seeks PwC Contracts (and PwC Deliverables) "for the time period 2013 to the present," *i.e.*, 2013 to March 17, 2020, and such documents must be produced, particularly as PwC has offered no meaningful objection that could be taken seriously. As communicated during our call, documents created in 2019 or 2020 may still discuss the work of PwC or other consultants prior to the Camp Fire, are responsive and relevant, and must be produced.

### B. Contrary to Its Obligations Under the Subpoena, PwC Has Refused to Produce All Responsive, Non-Privileged PwC Deliverables.

In a further effort to avoid PwC's discovery obligations, your May 7th Letter construes a handful of documents as comprising "several hundred pages of exemplary deliverables," and speciously claims that the production of such documents refutes the premise of our prior letter. *See* May 7th Letter, *supra*, at 2-3. In fact, however, the handful of documents on which you now rely do not contain the analysis or advice at the crux of the Trust's request for PwC Deliverables. As your own prior correspondence states, those limited documents merely track the progress or provide an overview of certain projects. *See* Letter from Brian C. Walsh to Ashley L. Baynham at 1 (Dec. 10, 2020). Those documents are not designated as PwC presentations, do not contain the PwC logo or any indication that they contain PwC analysis or advice, and they were not produced with any representation that they contain PwC work product, deliverables, or summaries of work performed. *See, e.g.*, PwC 001267-350 (84-page presentation bearing PG&E's logo and a footer reading "Internal"); PwC 001351-438 (similar 88-page document); PwC 001439 (one-page document bearing PG&E's logo and black box reading "Draft Under Review"); PwC 001440-54 (15-page presentation with header indicating "Last Updated: March 22, 2017"); PwC 001455-579 (similar 125-page presentation). To the contrary, those documents were produced in response to a meet-and-confer request for all "documents related to the following Contract Work Authorizations ('CWA'): [1] CWA No. C8902[,] [2] CWA No. 2501470215, [3] CWA No. 2501541792," rather than a specific request for PwC Deliverables, and they fall inexcusably short of satisfying PwC's burden to produce all responsive, non-privileged PwC Deliverables within its possession.

While we agree that your client need not produce every deliverable related to every engagement with PG&E, the Trust is entitled to receive and review far more than has been provided. To avoid unnecessary burden, we have requested that PwC produce PwC Deliverables relating to the following categories of work: CWSP, PSPS, EPC CC, and the GRC. To date, you have refused to provide such materials and failed to provide us with any information that would facilitate a meaningful discussion about any alleged burden. Indeed, as discussed above, it appears that your office has yet even to complete its review of PwC's files, as would be necessary to provide the metrics necessary to assess your claims of burden. Such positions do not constitute a good-faith effort to comply with PwC's discovery obligations.



Brian C. Walsh
May 20, 2021
Page 5

### 2. PwC Bears the Burden of Substantiating Its Privilege Claims, Which It Cannot Do Through Blanket Assertions.

It is axiomatic that to the extent PwC is withholding any documents on privilege grounds, including work-product protection, it must provide a privilege log sufficient to enable the Trust and the Court to assess such privilege claims. Contrary to your contention, it is not sufficient for PwC merely to allege that aspects of its relationship with PG&E constituted "categorically privileged engagement[s]." As you know, under federal law, PwC bears the burden of substantiating its privilege claim with respect to each specific document. *See In re 4-S Ranch Partners, LLC*, 2020 WL 5884511, at *4 (Bankr. E.D. Cal. 2020) (finding that law firm could not avoid complying with Rule 2004 subpoena and instructing that documents "must be carefully considered," including by considering "facts surrounding the creation of the documents" when determining applicability of privilege); *In re Royce Homes, LP*, 449 B.R. 709, 729 (Bankr. S.D. Tex. 2011) (rejecting privilege claims asserted in response to Rule 2004 subpoena and explaining that proponent of privilege "failed to carry his burden" because he produced a privilege log "riddled with bald assertions of the privilege" and refused to "describe each and every e-mail's subject matter and why each e-mail should be granted protection"); *see also* Fed. R. Bankr. P. 9016 & Fed. R. Civ. P. 45(e)(2)(A)(ii) (requiring privilege assertions to be supported by descriptions of "the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim").

PwC has not satisfied this burden in any way, and it cannot meet its burden by relying on any privilege log produced by PG&E. Put simply, you were, and are, responsible for collecting and reviewing your clients' documents, separating out those that are privileged, and providing sufficient information for the Trust and the Court to evaluate the privilege asserted by PwC, regardless of whether that privilege is held by PwC. *See In re 4-S Ranch Partners, LLC*, 2020 WL 5884511, at *2 (requiring law firm responding to Rule 2004 subpoena to provide privilege log to the court, even where privilege was held by law firm's former client, and rejecting several privilege claims contained therein). Your suggested approach of merely relying on PG&E's privilege log improperly assumes that PwC and PG&E possess identical versions of each potentially privileged document and have made identical privilege assertions with respect to each. Regardless, the purpose of a privilege log is to permit the Trust to test PG&E's and PwC's *respective* privilege claims, identify the gaps in production of each, and use all discoverable materials in the possession of each entity to determine the scope of viable claims. *See In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627-28 (Bankr. D. Del. 2016) (overruling objection by subpoenaed party that documents possessed by debtors obviated need for compliance with Rule 2004 subpoena).

### 3. Because PwC Refuses to Comply with Its Undisputed Discovery Obligations, the Trust Will Seek Relief from Judge Montali.

The Trust is entitled to PwC's full compliance with the Subpoena. As PwC has expressed an unwillingness to offer such compliance—and has used the meet-and-confer process



Brian C. Walsh
May 20, 2021
Page 6

only to delay production of responsive materials—we have no choice but to seek judicial intervention.

  The foregoing should not be construed as a waiver of any other rights that the Trust has in relation to the Subpoena, and all such additional rights are expressly reserved.

Very truly yours,

Wayne R. Gross

CC: Michael D. Kibler
   Matthew J. Cave
   Evan C. Borges
   Sarah Kelly-Kilgore
   Colin V. Quinlan