# EXHIBIT 7

# Kibler Fowler & Cave LLP

Michael D. Kibler
Direct: 310.409.0473
mkibler@kfc.law

11100 Santa Monica Boulevard
Suite 360
Los Angeles, California 90025

Office: 310.409.0400
Fax: 310.409.0401

www.kfc.law

May 21, 2021

**BY E-MAIL**

Wayne R. Gross
Greenberg Gross LLP
650 Town Center Dr., Suite 1700
Costa Mesa, California 92626
E-Mail: WGross@GGTrialLaw.com

  Re: FRBP 2004 Subpoena Issued to PricewaterhouseCoopers LLP

Dear Mr. Gross:

  As you know, our firm represents PricewaterhouseCoopers LLP ("PwC") in connection with the March 17, 2020 FRBP 2004 Subpoena to Produce Documents, Information, or Objects ("Subpoena") issued to PwC. I'm writing to confirm what we discussed during our May 18, 2021 meet-and-confer call, which took place approximately five months after your client last engaged with PwC regarding the Subpoena, and to respond to your May 20, 2021 letter to our co-counsel, Brian Walsh.

  During the May 18 call and in the May 20 letter, you asserted that PwC has not complied with the Subpoena. You even claim that PwC has not participated in meet-and-confer efforts in good faith. These allegations are patently and provably false, as demonstrated in Mr. Walsh's May 7, 2021 letter to you cataloguing in detail the year-long cooperative process that PwC undertook with your client, the Trustee of the PG&E Fire Victim Trust ("Trust"), and his predecessor, the Official Committee of Tort Claimants ("Committee"), through two predecessor law firms—a process that you either have failed to educate yourself about or have just chosen to ignore. We understand that your firm is relatively new in this matter; however, our client is not starting discussions about the Subpoena from scratch simply because your client has new counsel. And your firm cannot simply ignore the past year of cooperative meet-and-confer discussions between Mr. Walsh and the lawyers at Brown Rudnick and Baker Hostetler who previously sought to enforce the Subpoena and concluded that most or all of PwC's work for PG&E never related to wildfire safety.

  As a preliminary matter, we did not tell you during the May 18 call to seek relief from Judge Montali, as you falsely claim in the May 20 letter. When your partner Ms. Kelly-Kilgore demanded a commitment from our client to produce additional information in less than two

business days—after *months* of silence from your client following PwC's last contact with the Trust—we declined that unreasonable demand but undertook to get back to you promptly after we had an opportunity to speak with our client. Then, rather than wait until your own artificial deadline of "close of business Thursday," you sent us the May 20 letter *before noon* claiming that continued discussions would be useless and you will be seeking immediate relief from Judge Montali. If there's a lack of good faith in these discussions, your actions speak volumes regarding by whom.

As you well know, PwC has made several productions to date and provided additional information to the Trust's former counsel during meet-and-confer discussions regarding particular PwC projects. By meeting and conferring in good faith, the two previous law firms learned that most (if not all) of PwC's engagements for PG&E had absolutely nothing to do with wildfire safety, and that none of those engagements could have had any causal connection to the wildfires. Accordingly, based on your and your predecessor counsel's own definition of relevancy, as articulated during the May 18 call and as stated in the May 20 letter—*i.e.*, work that could give rise to claims by the Trust due to causation of the fires—the Subpoena is grossly overbroad. This is why, after more than a year of cooperative and detailed discussions with the Trust through your predecessor counsel, and after PwC's numerous productions, all designed to narrow the scope of the Subpoena, the Trust's counsel went silent in December 2020—until the Trust hired you.[1]

Your firm recently burst onto the scene with specious allegations about PwC's non-compliance with the Subpoena and asserted an inaccurate characterization of what has transpired to date. After several more months of silence from the Trust, you claimed, among other things, that PwC "has blatantly failed and refused to produce relevant, responsive documents, even after specific requests for evidence" (which we certainly haven't seen). Mr. Walsh corrected the record in his May 7 letter to you. Rather than respond to Mr. Walsh's points, during the May 18 call your team simply parroted prior misstatements—ignoring that Mr. Walsh had already refuted those statements—and demanded immediate compliance with the Subpoena. This approach is not productive and represents a vast departure from your own client's prior cooperative relationship with PwC, which apparently resulted in your client declining to further pursue the Subpoena as of December 2020. It also evidences a failure on your part to educate yourself concerning PwC's prior responses to the Subpoena.

Notably, during the May 18 call we asked a few questions that your team was completely unprepared to answer. For example, we asked who the potential claims you're investigating are against. After mocking the question as "rudimentary" and quickly answering "against PwC, of

---

[1] Your cherry-picking of statements from prior correspondence between Mr. Walsh and your client's former counsel, months before meet-and-confer discussions ended, in no way demonstrates that agreements regarding the Subpoena had not been reached between counsel.

course," your partner Mr. Borges later backtracked, saying there may be claims against other consultants, too, that you're investigating. We also asked how PwC's post-fire work could possibly be relevant to causation of the fires (your standard for relevancy). After baldly asserting that the relevant time period must extend into 2020, you conceded that only the post-fire work that relates to pre-fire consulting could possibly be relevant.[2] And, as a final example, your partner referred to the Risk Assessment and Mitigation Phase, or "RAMP," project during the May 18 call, demanding that PwC produce its contracts and deliverables from that project, which, as you should have known by now (if you'd bothered to review the file you inherited from your predecessor counsel or even spoken with them) is a project that PwC bid on about five years ago but didn't get. Apparently while we were preparing for the May 18 call with you—in an effort to meet and confer in good faith—your team was not reviewing information already received from PwC or PG&E related to PwC's work, or talking to your client or your client's prior counsel about the Subpoena. Instead, it appears you were preparing to send the May 20 letter "for the record" claiming that meeting and conferring would be useless in an effort to needlessly and preemptively run to court. That's not good faith.

Despite your firm's uninformed, overly and unnecessarily aggressive approach here, we did seemingly make some progress during the May 18 call, and we're willing to continue to meet and confer based on the record established with the Committee's and the Trust's prior counsel. You asked for a list of PwC engagements for PG&E so we can discuss what may fit your own definition of relevant information. Collecting this information is a significant, time-consuming exercise, but we're willing to do it consistent with how our client has acquitted itself with the Trust for over a year now. We'll endeavor to provide a categorical list of PwC engagements for the relevant time period by the end of next week. And, if because of the breadth of this exercise we do not have a complete list by the end of the week, we'll make a rolling disclosure and are willing to discuss the list with you at a mutually convenient time. You also confirmed during the May 18 call that post-fire litigation support work provided by PwC to PG&E is not relevant. We're confident that if we continue to discuss PwC's work for PG&E, we'll continue to reach some agreements and narrow the scope of disputes that ultimately must be resolved by the Court.

Regarding your demand for a privilege log, as we've told you once in writing and again orally on the recent call, PwC has *not* withheld production of any documents on the basis of PwC's privilege. There is simply nothing for our client to log at this point. We're therefore confused by your reference to PwC's "burden of substantiating its privilege claim with respect to each specific document" so the Court can "assess such privilege claims." We ask again: What are you talking about?

---

[2] At the beginning of the May 20 letter, you claim the relevant time period is "2013 to 2020." Later in the letter, though, you concede that only "documents created in 2019 or 2020" that "discuss the work of PwC or other consultants prior to the Camp Fire, are responsive and relevant."

Wayne R. Gross, Esq.
May 21, 2021
Page 4

      As we told you at the end of the May 18 call, if you believe it's necessary to seek relief from the Court now, we cannot stop you—we'll respond to the motion in the appropriate forum (we're not afraid to do so on the present record). But we think that will be a waste of the Court's and the parties' time. Instead, we propose that you re-evaluate your approach to these discussions, tone down your ill-informed threats and unreasonable demands, and continue our clients' year-long history of cooperative meet-and-confer discussions. We remain prepared to do so.

      Nothing herein should be construed as a waiver of any of PwC's rights in relation to the Subpoena, and all such rights are expressly reserved.

                                        Very truly yours,

                                        Michael D. Kibler

cc:    Evan C. Borges
        Sarah Kelly-Kilgore
        Colin V. Quinlan
        Brian C. Walsh