# EXHIBIT 10



Michael D. Kibler
Direct: 310.409.0473
mkibler@kfc.law

11100 Santa Monica Boulevard
Suite 360
Los Angeles, California 90025

Office: 310.409.0400
Fax: 310.409.0401

www.kfc.law

June 16, 2021

**BY E-MAIL**

Wayne R. Gross, Esq.
Greenberg Gross LLP
650 Town Center Dr., Suite 1700
Costa Mesa, California 92626
E-Mail: WGross@GGTrialLaw.com

  Re: FRBP 2004 Subpoena Issued to PricewaterhouseCoopers LLP

Dear Wayne:

  I write further to my letters of May 21 and May 28, 2021, neither of which you've responded to, and to Judge Montali's directive of June 15 that we continue to meet and confer regarding PwC's response to the Subpoena. In the May 28 letter, we provided a categorical list of PwC engagements and offered to have another call with you to discuss the information provided. Rather than take us up on that offer, you did nothing for two weeks and then—on a Friday at 5:30 p.m. and without notice to us—sent an email to Judge Montali's assistant requesting an informal discovery conference based on a highly misleading account of PwC's historic responses to the Subpoena. As Judge Montali suggested in his June 15 response, our firms should continue to try to resolve our clients' differences without assistance from the Court, as we had suggested before you prematurely ran to Court. To that end, and notwithstanding your team's failure so far to meet and confer in good faith or even to educate yourselves about the relevant background regarding PwC's responses to date, we provide additional information below regarding the specific projects mentioned in the May 28 letter from your colleague, Sarah Kelly-Kilgore.

  As a preliminary matter, PwC's role in all of these projects was to provide PG&E limited management consulting services; it made no management decisions for PG&E. As stated in the project contracts you have in your own files (but apparently haven't yet reviewed): "PwC's role is *advisory only*. Client [PG&E] *is responsible for all management functions and decisions* relating to the PwC Services, including evaluating and accepting the adequacy of the scope of the PwC Services in addressing your needs. *Client also is responsible for the results achieved from using the PwC Services or any related deliverables*." (*See, e.g.*, PwC000787, PwC000971, PwC001014, PwC001197, and PwC001219) (emphases added).

### CWSP

CWSP refers to PG&E's Community Wildfire Safety Program, an umbrella program that included the Public Safety Power Shutoff program discussed below. PwC's consulting role in this project was limited to scoping, financial and resource analysis, and regulatory advice. PwC also provided project management and facilitation support around the ultimate filing of PG&E's Wildfire Mitigation Plan. But, as stated above, all decisions were made by PG&E; PwC operated solely in a consulting support role. Thus, contracts related to CWSP could not support any causation-based claims (*see* PwC000783 and PwC001187 through 001221). PwC previously explained this to your predecessor counsel at some length, at which point the Trustee stopped requesting CWSP-related documents.

### PSPS

PSPS refers to Public Safety Power Shutoff, a post-wildfire program to intentionally de-energize power lines at times of high risk. PwC helped PG&E to facilitate training programs and tabletop exercises for PG&E. But PwC had *no role* in making decisions about when to de-energize power lines or how to do so. PwC already has produced contracts related to PSPS (*see* PwC000783 and PwC001187 through 001221), which demonstrated the lack of relevancy back in 2020, prior to your involvement. Please review and familiarize yourselves with these materials in your own files and then let us know if you wish to further discuss them.

### EPC CC

EPC CC refers to Engineering Procurement & Construction Cross-Cutting, a consulting project related to PG&E's cross-management of its engineering, procurement and construction contractors in an integrated fashion (*e.g.*, PwC assisted PG&E in creating dashboards to understand progress and workflow). The project had absolutely *nothing* to do with "cutting trees" in connection with wildfire safety. PwC has already produced documents in response to the Trust's predecessor counsels' questions about EPC CC (*see* PwC000766, PwC000774 and PwC001439 through 001579), and these documents, too, demonstrated the lack of EPC CC's relevancy. Please review and familiarize yourselves with these materials in your own files and then let us know if you wish to further discuss them.

### GRC

GRC refers to the General Rate Case, which was never brought up by the Trust's predecessor counsel. It involves the CPUC requirement that PG&E periodically obtain approval of the rates it charges to customers. For the reasons noted in Brian Walsh's May 7 letter to you, we don't see any conceivable way in which electricity rate setting could be related to causation of any wildfire. If you disagree, please explain the basis for this request.

\* \* \* \*

      In sum, none of the projects mentioned in Ms. Kelly-Kilgore's letter could evidence "causation" of the wildfires, which you have defined as the relevant information the Trust seeks. But, if you would like to have a call to discuss these projects in more detail, including explaining why PwC's work on these projects was, in your opinion, directly or indirectly the cause of any wildfires, just let us know—we're happy to have another call, as previously offered. As we have mentioned several times, it would be helpful if before the next call, you and your team would familiarize yourselves with PwC's prior productions. In the meantime, we look forward to your responses to this and my prior two letters.

                                                          Very truly yours,

                                                          Michael D. Kibler

cc:    Evan C. Borges, Esq.
        Sarah Kelly-Kilgore, Esq.
        Colin V. Quinlan, Esq.
        Brian C. Walsh, Esq.