# EXHIBIT 11



Sarah Kelly-Kilgore
Direct Dial: (213) 334-7065
SKellyKilgore@GGTrialLaw.com

June 18, 2021

**VIA E-MAIL: mkibler@kfc.law**

Michael D. Kibler
Kibler Fowler & Cave LLP
11100 Santa Monica Boulevard
Suite 360
Los Angeles, CA 90025

  Re: **PricewaterhouseCoopers LLP's Non-Compliance with Rule 2004 Subpoena**

Dear Mr. Kibler:

  I write in response to your letter of June 16, 2021 (the "June 16th Letter"), and the email your colleague Mr. Cave sent to Judge Montali on June 14, 2021, both of which contain demonstrably inaccurate statements and end with a stonewall conclusion that PwC will produce no further PwC Contracts[1] or PwC Deliverables to the Trust.

  **Inaccurate Statements About Our Meet-and-Confer Process.**

  The opening line of your June 16th letter suggests that the Trust failed to respond to your letter of May 21, 2021. In fact, we responded to that letter three weeks ago with my letter of May 28, 2021.[2] Moreover, although you claim to have been owed a response to your letter of May 28, 2021, your May 28th letter acknowledged that, in fact, the next step was for you to send us a response to my letter of earlier that day. Thus, you promised in your May 28th letter that you would respond to my letter of earlier that day "in a reasonable amount of time and after [you had] been able to confer with [y]our client." (Letter from M. Kibler to W. Gross (May 28, 2021) at 2.) We did not receive your promised response or anything else for two weeks; hence, we sought assistance from the Court.

  Turning to the substance of your correspondence, regrettably, neither you nor Mr. Cave has committed to produce the PwC Contracts and PwC Deliverables we have requested, including as to areas of undisputed consulting work that relate directly to wildfire safety. As

---

[1] Unless otherwise stated, capitalized terms use the same definitions set forth in our letter of April 30, 2021.

[2] (*Compare* Letter from M. Kibler to W. Gross (Jun. 16, 2021) at 1 ["I write further to my letters of May 21 and May 28, 2021, neither of which you've responded to."], *with* Letter from S. Kilgore to M. Kibler (May 28, 2021) at 1 ["I write in response to your letter of May 21, 2021."].)

601 S. Figueroa Street, 30th Floor | Los Angeles, California 90017 | Phone (213) 334-7000 | Fax (213) 334-7001 | www.GGTrialLaw.com

Case: 19-30088 Doc# 10915-11 Filed: 07/13/21 Entered: 07/13/21 17:00:14 Page 2 of 6



Michael D. Kibler
June 18, 2021
Page 2

elaborated below, PwC's consulting services related to the Community Wildfire Safety Program ("CWSP") and the Public Safety Power Shutoff program ("PSPS") commenced in ***February 2018*** (before the November 2018 Camp Fire).  Those services are indisputably evidenced by PG&E documents, including those cited in our earlier letters.  (*See, e.g.*, Letter from S. Kilgore to M. Kibler (Jun. 18, 2021) at 1-2 [citing multiple PG&E documents evidencing PwC's pre-Camp Fire services on CWSP and PSPS]; Letter from W. Gross to B. Walsh (May 20, 2021) at 2 [same].)  Indeed, while your co-counsel previously falsely stated that PwC did not commence work on PSPS or CWSP until after the Camp Fire, you appear to have abandoned that position.  Nonetheless, for PwC, you have refused to produce any PwC Contracts or PwC Deliverables related to such work.

If PwC's position is that its work on PSPS (a de-energization program) before the Camp Fire had nothing to do with wildfire safety, then you should state that clearly to Judge Montali, because we believe such a position is specious and sanctionable.

In a further effort to justify PwC's failure to respond to the Subpoena, you change the subject and assert that "PwC's role [wa]s *advisory only*." (June 16th Letter at 1, emphasis in original.)  Setting aside the fact that such position is incorrect as a matter of law (*see* CACI 600 [setting forth elements of cause of action for negligent professional advice]), PwC's advisory role has no effect on the scope of what information is relevant to the Subpoena.  Moreover, the documents you cite to evidence PwC's "advisory role" all stem from the period post-dating the November 2018 Camp Fire.  (See, e.g., PwC000787 [from a contract executed on July 11, 2019]; PwC000971 [executed July 15, 2019]; PwC001014 [executed February 7, 2020]; PwC001197 [executed November 14, 2019]; PwC001219 [executed December 16, 2019].)  Those documents are incapable of defining the scope of PwC's role in the timeframe predating the Camp Fire.

We next address, in turn, your assertions regarding PwC's work on CWSP, PSPS, EPC CC, and the GRC, which are without merit.

**CWSP & PSPS**

Each of the documents cited in your discussion of PwC's work on the CWSP and PSPS relate to post-Camp Fire engagements.  (*See, e.g.*, PwC000783 [statement of work for a contract executed on July 11, 2019]; PwC001187-1221 [contract and related change orders executed on July 11, July 22, November 14, and December 16, 2019, respectively].)

Once again, however, I repeat what we set forth in each of my firm's prior letters, namely, that PG&E's documents show PwC performing extensive work on these projects *prior* to the November 2018 Camp Fire—a fact you apparently no longer dispute, despite your co-counsel's earlier misrepresentations.  (*See* Letter from B. Walsh to W. Gross (May 7, 2021) at 4 ["PwC's first work on the PSPS project was in 2019, after the 2018 Camp Fire."].  *But see* PGE-BK-2-0000244518 [email exchange between PwC and PG&E dated March 19 through 26, 2018



Michael D. Kibler
June 18, 2021
Page 3

discussing CWSP work]; PGE-BK-TAR-0001660351 [email between PwC and PG&E dated May 1, 2018 discussing PSPS work and, specifically, PwC's comments on preparation and execution of PSPS].)[3]

Critically, PwC has produced *zero* PwC Contracts and *zero* PwC Deliverables relating to its undisputed work on CWSP and PSPS during the pre-November 2018 timeframe. In addition, you have produced no PwC Deliverables for the work performed in these areas in *any* timeframe.

Although you now claim that the Trust's prior counsel was satisfied by your limited production of contracts, that assertion is belied by the record, as we have previously discussed. (*See* Letter from W. Gross to B. Walsh (May 20, 2021) at 2 [citing Letter from D. Richardson to Hon. D. Montali at 5, *In re PG&E Corp. & PG&E Co.*, No. 19-30088 (Bankr. N.D. Cal. Jun. 29, 2020), ECF No. 8206 (noting that the TCC was still "working to achieve full subpoena compliance" from PwC and that the TCC had obtained "some documents, but not a full set of responsive documents" from your client) and E-mail from B. McCabe to B. Walsh & D. Alvarez (Jun. 29, 2020 9:13 PM) ("we remain willing to work with PwC *to obtain full compliance with the TCC's subpoena*" (emphasis added))].)

In sum, you have offered no justification for PwC's failure to produce the PwC Contracts and PwC Deliverables for its work on CWSP and PSPS predating the November 2018 Camp Fire.

Similarly, PwC's work on CWSP and PSPS after the Camp Fire is highly relevant, given that it relates, among other things, to implementation of wildfire safety measures that, presumably, if recommended earlier by consultants such as PwC, could have avoided catastrophic loss of property and life caused by the 2018 Camp Fire as well as the 2017 North Bay Fires. Thus, we further request: (1) your representation that you have produced all PwC Contracts related to PSPS and CWSP for the entire period covered by the Subpoena, and (2) your commitment to produce all PwC Deliverables for that work.

**EPC CC**

We never stated that PwC's work on the EPC CC related to "cutting trees," yet you characterize this as our position. It is not our position. As you should know, PwC's work on the

---

[3] *See also* PGE-BK-0001454037 (email from PwC employee Hugh Le to PG&E employees dated February 28, 2018 re pro-active de-energization work common to CWSP and PSPS); PGE-BK-0000292644 (WebEx invitation for meeting between PwC and PG&E on February 15, 2018 re same); PGE-BK-0000260594 (email exchange between PwC and PG&E dated March 6, 2018 re same); PGE-BK-TAR-0001429836 (email exchange between PwC and PG&E dated July 10, 2018 re wildfire mitigation, including CWSP); PGE-BK-0000247716 (email exchange between PwC and PG&E dated August 20, 2018 re PSPS).



Michael D. Kibler
June 18, 2021
Page 4

EPC CC focused on "[c]ost reduction" and "negotiated cost savings," both of which are relevant to the Trust's investigation of claims.  (PwC001439, -1441, -1443.)  As an example, to the extent that PwC negligently advised PG&E to effectuate cost-cutting by directing resources away from wildfire safety measures or asset maintenance, such advice may be actionable.  Thus, the EPC CC services are relevant and discoverable pursuant to the Subpoena.

### The GRC

As set forth in my firm's letter of April 30, 2021, PwC's work on the GRC is highly relevant.  As you know, PG&E has characterized PwC's work on that issue as follows:

> [PwC is] one of our four Preferred Management Consultant partners with a long and valued relationship at PG&E that includes deep experience, knowledge and expertise across many of our LOBs [lines of business].  They have successfully supported us through critical periods and ***play a major role in the rate case preparation***.

(PGE-BK-TAR-0001693020, *quoted by* Letter from W. Gross to B. Walsh (Apr. 30, 2021) at 3.)

As you should know, during the relevant time period, the CPUC required utilities such as PG&E, as part of their GRC, to provide a budget and plan regarding both asset maintenance (including high-powered electrical lines and the electrical grid) and wildfire safety and risk mitigation.  PwC's work on the GRC for PG&E, therefore, relating as it did to plans and budgets for wildfire safety and asset maintenance, is critical to understanding PwC's role in and responsibility for the circumstances that ultimately gave rise to the 2017 North Bay Fires and the 2018 Camp Fire.  Your recent correspondence fails to address these facts in any way.  Instead, you misleadingly suggest that PwC had previously addressed the relevance of its GRC work "in Brian Walsh's May 7 letter to you."  (June 16th Letter at 2.)  Contrary to this representation, Mr. Walsh's letter stated that the GRC-related documents had never been requested previously and that "we are not presently in a position to commit to any particular production scope, but we would be happy to discuss this topic with you."  (Letter from B. Walsh to W. Gross (May 7, 2021) at 3.)

We trust that the above satisfies you that we are familiar with the contents of PwC's incredibly limited prior productions and the relevance of our requests.  To the extent that you continue to assert that the Trust should be required to make an offer of proof as to the relevancy of the requested materials, we believe that the most expeditious manner forward is to depose PwC employee Hugh Le, whom we believe to be the employee most knowledgeable about PwC's pre-November 2018 work on the CWSP and PSPS and whose testimony would readily identify the scope of documents responsive to the Subpoena.  Please let us know PwC's position as to such deposition, which we propose conducting pursuant to a new Rule 2004 subpoena.



Michael D. Kibler
June 18, 2021
Page 5

      In an effort to resolve these issues without further burdening the Court, we propose that the parties jointly request a one-week extension of Monday's deadline to inform the Court whether a discovery conference should proceed. Please let us know whether you are amenable to such an extension. Please also let us know whether you are available for a call Monday morning to discuss these issues. To avoid further proceedings before the Court, our goal for the call would be to reach agreement on the following:

(1) PwC will provide the list of contracts previously requested—rather than the overly broad "areas of work" listed in your May 28, 2021 letter;

(2) PwC will commit to produce the PwC Contracts and PwC Deliverables related to its pre-Camp Fire work on CWSP and PSPS;

(3) PwC will represent that it has produced all post-Camp Fire PwC Contracts related to its work on CWSP and PSPS, and if the production is not complete, PwC will agree to complete its production of these PwC Contracts as well as all related PwC Deliverables; and

(4) PwC will commit to produce the PwC Contracts and PwC Deliverables related to its work on the EPC CC and GRC, during the time period covered by the Subpoena.

      The foregoing should not be construed as a waiver of any other rights that the Trust has in relation to the Subpoena, and all such additional rights are expressly reserved.

      We look forward to receiving your response.

                                  Very truly yours,

                                  Sarah Kelly-Kilgore

SKK:CVQ

cc:    Brian C. Walsh
        Matthew J. Cave
        Wayne R. Gross
        Evan C. Borges
        Colin V. Quinlan