

# SYMMETRY DEVICE RESEARCH, INC.

22078 ARBOR AVENUE SUITE 234      HAYWARD, CALIFORNIA 94541

TELEPHONE 510-491-3264      FACSIMILE 510-887-0993

**PG&E Bankruptcy Court**      July 14, 2021

**Northern District Of California**

**San Francisco Division**

**Omnibus Objection Chapter 11:** Exhibits 1A, 1B, 1C & 2A

**Bankruptcy Case Number:** 19-30088-DM

**Assigned to:** Honorable Dennis Montali

**Jointly Administered Case:** 19-30089-DM

**Proof of Claim Number(s):** 86933

**Reorganized Debtors:** PG&E Corporation - and - PG&E Gas & Electric Company

650 California Street, Suite 1900

San Francisco, California 94108

**Phone:** 415-496-6723

**Fax:** 650-636-9251

**Email:** PGEclaims@kbkllp.com

I Darwin E. Richards would like to request of the Court that PG&E's Chapter 11 Bankruptcy Court Case #19-30088 **(DM)** not be allowed to disregard Plaintiff's Proof of Claims based on his submittal of viable facts against the Organized Debtor's Attorneys conjecture and speculation according to **Exhibits 1A, 1B, 1C & 2A**. The Attorney's proposal to the Court is subsequently unjustifiable with regards to the Plaintiff's Proof of Claims being disallowed, expunged or reduced based on statutes of limitation which in the Plaintiff case is invalid since my firm filed our opposition in time and in accordance with Court response requirements and was validated by email time dated response.

Many of PG&E's creditors are in a National Unified Consortium of direct and indirect unity and support where many of them can absorb the losses and restart or continue in business. Under PG&E's Chapter 11 Bankruptcy, our investigation has found that PG&E has settled some vendor's invoices, but on what grounds? Have all small minority disadvantaged business enterprises been disregarded? This can be manifested by PG&E's **General Order 156** updated June 11, 2015 which states: *"Rules Governing PG&E's Development Of Programs To Increase Participation Of Women, Minority, Disabled Veteran And Lesbian, Gay, Bisexual And Transgender (LGBTQ) Business Enterprises In Procurement Of Contracts From Utilities As Required By Public Utilities Code Sections 8281-8286"*.

In PG&E's Attorneys previous **Settlement Offer Response** to my firm Symmetry Device Research Inc., **(SDRI)**, my firm made the following statement: **In the case of my firm Symmetry Device Research Inc., (SDRI), I was an indirect competitor and not a supplier because for more than three decades of effort, my firm couldn't get a contract from PG&E or the California Energy Commission (CEC) through affirmative action or diversity which in themselves is a fraud when you read Proposition 209 entitled "Affirmative Action Initiative" and Proposition 16 entitled "Repeal Proposition 209 Affirmative Action Amendment" of the State of California's November 3rd election 2020**.

For more than 35 years, my firm SDRI worked to obtain contracts with PG&E but was continually unsuccessful in request for proposals and invitations to bid. This can be substantiated by Mason Tillman Associates which has performed 30% of all disparity studies **(Croson Studies)**. They analyze government contracting, utility procurement, and HR practices to ensure equity in contract awards and hiring opportunities. All Mason Tillman studies are constitutionally sound and legally defensible; none have been challenged.

Furthermore, Mason Tillman is the most highly qualified disparity study firm in the nation. Their firm's skills, qualifications, and over 30 years of experience in preparing comprehensive and legally sound disparity studies is unparalleled in the industry. Mason Tillman has conducted more than 136 disparity studies to date. California's Deregulation under Senate Bill AB-1890 placed SDRI in indirect competition with PG&E and many other utility firms.

My firm has not been able to continue in business. The City of Richmond contract with my firm SDRI was very flexible in that Energy Efficiency, Storage Conservation and Commissioning were a part of our lowest responsible bidders contract along with the buy America First Federal Program. Acquisition of wholesale Natural Gas and Electrical Energy resources with a fair retail markup to achieve a safe level of profitability, to be as we thought in the utility industry under California's Proposition AB-1890 directive for utility deregulation required administrative cost in Sales, Marketing, Advertising and Technical endeavors supported by my firm's Business Plan.

Moreover, legal and accounting cost for this type of business compatible with this industry requires licensed and registry for Federal, State, County and City authorization through the Federal Energy Regulatory Commission **(FERC)** and its compatibility with the California Public Utilities Commission **(CPUC)** and California Energy Commission **(CEC)** for Environmental Carbon and other Contaminate Emissions Mitigation, Energy Efficiency, Storage Conservation and

Environmental Commissioning for existing structures and new building architectural renderings. In a letter sent to the CPUC, CEC and TURN solicited their assistance in providing quality and reliable service to our clients, but the CPUC worked with PG&E to force us out of business by labeling me as a felon. If the CPUC informs me that my firm is not under their regulation, why did they work with PG&E to damage me and destroy my business? **(See our proof of claims)**.

My firm's lawsuit against the City of Richmond in California was very costly and time consuming in an attempt to get the Superior Court, the Appellate Court and the Supreme Court to comply with their own laws with the presentation of facts by my former Attorney Charles G. Kinney **[ESQ #66428]** in this effort lost his license to practice law in the State of California because a Small Disadvantaged Minority Business Enterprise is not allowed to operate and function in the Natural Gas and Electric Energy Utility Industry.

The Administrative Structuring Cost also requires funding firms supplying Wholesale Natural Gas, Electrical Energy and other Ancillary Services with the support of **TURN** which is the acronym for **Toward Utility Rate Normalization**. Our new utility by State and Federal deregulation is required to test both Natural Gas and Electrical Energy Meters as a means of initial requirements for calibrated or accurate meter reading for existing or newly installed meters.

The Technical Structuring Cost requires research, development, testing and deployment of hardware that would enhance the low cost retail utility services provided to our customers, such as Environmental Controls, Compact Florescent and Ultraviolet Lighting, Motion Sensors, Uninterruptable Power Supplies, Storage Batteries, Solar Panels and Wireless Distribution Networks. Agency Certifications such as Underwriters Laboratory **(UL)**, the National Electric Codes **(NEC)**, American Society for Testing & Materials **(ASTM)**, and the Institute of Electronic & Electrical Engineers **(IEEE)** to verify and support those products for additional testing at a cost.

The City of Richmond allowed PG&E to collect on SDRI's invoices and the City, admitted as such along with other attorneys wanting to represent SDRI. Furthermore, this form of theft damaged my firms ability to implement our business plan, operate and grow our business, losing time which is money, having lack of cash flow to pay our vender material and service cost, Administrative cost, Technical cost and our Employees etc....

My firm's proof of claim previously submitted to the Court has never been in dispute and can be verified by further investigation through this response and previous responses submitted. According to the Court's submittal for response states **factual disputes will not be decided at the hearing, but at a future evidentiary hearing that may be set at the hearing**. **Issues of a purely legal nature, were facts or not in dispute may be decided at the hearing**. Based on aforementioned statements, on what legal grounds could the Reorganized Debtors provide based on factual evidence provided to disallow my firm's proof of claims?

As my firm stated in previous correspondence, we tried to work with PG&E in a vender or supplier business relationship and not file a lawsuit to get PG&E to admit the theft of my firm's invoices and to comply with their goals and objectives being that of offering necessary utility services in the best interest of the end-user. As a monopoly, my firm and many others could have never realized that PG&E would file for Chapter 11 Bankruptcy Reorganization. Currently, PG&E's

customers are experiencing rate increases on their Natural Gas and Electric Energy bills and they consistently have the support of the State of California and the CPUC and CEC. FERC allowed SDRI to defer my firm's quarterly report on clean Renewable Energy Delivery, Energy Efficiency and Storage Conservation all of this is done under the auspiciousness of Commissioning or Leadership in Energy & Environmental Design **(LEED)**.

Notice a reversal of circumstances, generally when a utility end-user defaults in payment on a public utility bill outside of parameters of bankruptcy, the utility provider has the option to terminate service, but may be restricted by certain regulations pertaining to health care accounts and other CPUC situations. For example, many states prohibit termination of Natural Gas or Electric Energy Service, or at least conditions of it, during inclement weather or when an end-user is in financial distress. Most also require some type of notice to the end-user prior to termination. However, once a bankruptcy case is filed, a utility provider's rights are governed by **11 U.S.C. §366**. Notice the article my firm provided in previous correspondence dated 4/10/2021 concerning the shopkeeper in Hayward entitled **"Store Owner, PG&E in Power Struggle"**. Also note the history of Enron and its association with PG&E. Also, please see my firm's attachment to CPUC on the next page.

I declare under penalty of perjury that the foregoing is true and correct (and certify, verify, or state) under California State Law, I understand that a person who files a fraudulent claim could be fined up to $500,000 imprisoned for up to five years, or both 18 U.S.C. §§ 152, and 3571. Executed on date (July 14, 2021) Signature of Darwin E. Richards.

**Claimant or Authorized Representative Signature:**

Darwin E. Richards _____ (Print)

**X  Darwin E. Richards**   (Sign)

Darwin E. Richards

Signed By: Darwin E. Richards, CTO

Email Address: darwin_richards@hotmail.com



# SYMMETRY DEVICE RESEARCH, INC.

22078 ARBOR AVENUE SUITE 234      HAYWARD, CALIFORNIA 94541
TELEPHONE 510-491-3264      FACSIMILE 510-887-0993

Public Advisor's Office - CPUC
505 Van Ness Avenue
San Francisco, CA 94102
**E-mail**: public.advisor@cpuc.ca.gov
**Telephone**: 1-866-849-8390 (toll free) or 415-703-2074

Can the California Public Utilities Commission (CPUC), the California Energy Commission (CEC) and Toward Utility Rate Normalization (TURN) give Symmetry Device Research Inc. (SDRI) a written confirmation and endorsement that its firm works in the public interest of its end-users, since by Agency definition SDRI is not a regulated investor owned utility and as such can provide better services and lower cost to many of the State end-users? The Secretary of State has confirmed my corporate charter with regards to certification of existence with status in good standing. This is in direct opposition to your statement concerning my operation as a felon!

Also SDRI has made an inquiry with the Federal Energy Regulatory Commission (FERC) concerning our status with the CPUC to confirm your position. In times past SDRI has made an effort with the Bay Area Rapid Transit District (BART) to supply energy, capacity and efficiency to the district at a more cost effective price and especially through energy efficiency.

This electrical energy resource would come from suppliers contracted with SDRI for these services in accordance with Senate Bill 184 Chapter 681 Section 701.8 preference power amended by Senate Bill 1201 Chapter 613 dated 09-21-2004 incorporated herein.

SDRI is at the forefront of being the answer to reestablishing the U.S. Economy but this must also be done while supporting international trade and investing. Furthermore, this cannot be done without information and resources from potential State and Federal Agencies.

With this in mind, SDRI supports the Centre For International Trade (CTI) which is a member organization established with the goals and objectives to improve, facilitate and expand international trade and development programs. This organization has 3,500 members coming from every corner of the world and includes Embassies, Government Agencies, Trade Associations, United Nations Conference on Trade and Development (UNCTAD), Companies, Firms and Individuals. Our website helps SDRI to network and cooperate with each other as a courtesy towards tariff discounts for each State if applicable. This organization (CTI) exist to provide its membership with assistance in all aspects of international trade and development including:

- **Information Technology:** on national rules and regulations, procedures, tariffs, industry news, events…

- **Leadership In Energy & Environmental Design:** a green building certification program used worldwide…

- **Trade Opportunities:** from government agencies, manufacturers, importers, exporters, traders…

- **Finance:** assistance in areas of project funding, partnerships, venture capital, insurance, bonds…

- **Management:** consulting for projects, business plans, logistics, sales and marketing, technology…

- **Transportation:** including personal, ocean-freight, air-freight, trucking, warehousing, custom brokers…

- **Resources:** products, services, training, publications, useful web links…

- **Risk Evaluation:** information and resources on unfair advantages, state of the economy and direct access necessities...

SDRI appreciates your response for the consideration of filing a complaint with the CPUC against PG&E, however this is problematic since monetary compensation with the CPUC is no greater than that of the small claims court here in California. My request for compensation is greater than what the courts will allow per your directives.

Also, can you provide information to SDRI on the policy of requested rate increases and the percentage above the market base rate for all cost categories and market sectors for an investor owned utility that has gone into Chapter 11 bankruptcy? With every billing cycle there seems to be a Notice of rate increase for residential end-users, would this be the same for commercial, institutional, industrial and agricultural firms?

Fuel-Oil resources are problematic in so many ways for our environment, health and global economy, we must make better use of our precious non-renewable resources wherein we should be conducting research on how to convert this carcinogen based petroleum into a non-carbon, non-sodium and non-nitrogen clean burning renewable energy substance for inductive power generation and electric charging.

The theatrical cost for such research, development and deployment would be much less than the trillion dollar cost needed for re-cultivation of our air, water and soil! My inquiry to you entitled *"California State Legislature Senate Bill SB-705 Chapter 522 and Senate Bill 790 Chapter 599"* is to gain your interpretation of the pros and cons of these legislation statements relative to unbundle services with regard to Renewable Energy Technology and the cost thereof concerning the end-users as reported in your notices of rate increases and other cost programs.

PG&E's cost has gone up at the inception of their subsidiary East Bay Community Energy (EBCE) and monthly for most or every rate increase, has there been a time when the CPUC ever refused these monthly rate increases? The reduction in energy cost delivery by SDRI would create a fund

that could be used for design, research, development and deployment of new energy technologies compatible with the goals and objectives of the CPUC, CEC, TURN and SDRI.

===============================================================================

# Senate Bill No. 1201

## CHAPTER 613

An act to amend Section 701.8 of the Public Utilities Code, relating to electrical restructuring, and declaring the urgency thereof, to take effect immediately.

[Filed with Secretary of State September 21, 2004. Approved by Governor September 21, 2004.]

### LEGISLATIVE COUNSEL'S DIGEST

SB 1201, Torlakson. Electrical restructuring: BART.

Under existing law, the Public Utilities Commission has regulatory authority over public utilities, including electrical corporations. The Public Utilities Act requires the commission to authorize direct transactions between electricity suppliers and retail end-use customers. However, other existing law suspends the right of retail end-use customers to acquire service from certain electricity suppliers after a period of time to be determined by the commission until the Department of Water Resources no longer supplies electricity under that law. Existing law authorizes the San Francisco Bay Area Rapid Transit District's (BART) system to elect to obtain electricity from multiple sources, including (1) preference power purchased from a federal power marketing agency or its successor, (2) electricity supplied by one or more direct transactions, and (3) electricity supplied by any electric utility regulated by the commission that owns and operates transmission and distribution facilities that deliver electricity at one or more locations to the BART District's system. Existing law requires any electrical corporation that owns and operates transmission and distribution facilities that deliver electricity to BART, upon request by BART, to deliver preference power purchased from a federal power marketing agency or its successor, without discrimination or delay.

This bill would additionally require any electrical corporation that owns and operates transmission and distribution facilities that deliver electricity to BART, upon request by BART, to deliver electricity purchased from a local publicly owned electric utility, as defined, without discrimination or delay.

Under existing law, a violation of the Public Utilities Act is a crime.

Certain provisions of the bill would be a part of the act. Because a violation of those provisions would be a crime, the bill would impose a state-mandated local program by creating a new crime.

The bill would declare that, due to the special circumstances applicable only to the BART District, a general statute cannot be made applicable within the meaning of Section 16 of Article IV of the California Constitution, and the enactment of a special statute is therefore necessary.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

The bill would declare that it is to take effect immediately as an urgency statute.

**THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:**

**SECTION 1.** The Legislature finds and declares all of the following:

(a) The San Francisco Bay Area Rapid Transit (BART) District provides essential public transit services that are funded by fares and taxes.

(b) The BART District has qualified under the Reclamation Project Act of 1939 as amended and supplemented as a preference entity for purposes of purchasing electricity from federal power marketing agencies (preference power).

(c) The BART system has been continuously served by preference power, a publicly owned electricity supply, since before electrical restructuring and before the energy crisis of 2000–01, pursuant to the terms and conditions established by the enactment of Senate Bill 184 (Chapter 681 of the Statutes of 1995).

(d) It is the intent of the Legislature in enacting this act, to authorize the BART District to receive electric service from another publicly owned supplier of electricity on the same terms authorized by Chapter 206 of the Statutes of 1998.

**SEC. 2.** Section 701.8 of the Public Utilities Code is amended to read:

**701.8.** (a) To ensure that the commission regulated electric utilities do not operate their transmission and distribution monopolies in a manner that impedes the ability of the San Francisco Bay Area Rapid Transit District (BART District) to reduce its electricity cost through the purchase and delivery of preference power, electrical corporations shall meet the requirements of this section.

(b) Any electric utility regulated by the commission that owns and operates transmission and distribution facilities that deliver electricity at one or more locations to the BART District's system shall, upon request by the BART District, and without discrimination or delay, use the same facilities to deliver preference power purchased from a federal power marketing agency or its successor, or electricity purchased from a local publicly owned electric utility, as defined in Section 9604.

(c) Where the BART District purchases electric power at more than one location, at any voltage, from an electric utility under tariffs regulated by the commission, the utility shall bill the BART District for usage as though all the electricity purchased at transmission level voltages were metered by a single meter at one location and all the electricity purchased at sub-transmission voltages were metered by a single meter at one location, provided that any billing for demand charges would be based on the coincident demand of transmission and distribution metering.

(d) If, on or after January 1, 1996, the BART District leases or has agreed to lease, as special facilities, utility plants for the purpose of receiving power at transmission level voltages, an electric utility regulated by the commission may not terminate the lease without concurrence from the BART District.

(e) When the BART District elects to have electricity delivered pursuant to subdivision (b), neither Sections 365 and 366, and any commission regulations, orders, or tariffs, that implement direct transactions, are applicable, nor is the BART District an electricity supplier. Neither the commission, nor any electric utility that delivers the federal power or electricity purchased from a local publicly owned electric utility to the BART District, shall require that an electricity supplier be designated as a condition of the delivery of that power.

(f) The BART District may elect to obtain electric power from the following multiple sources at the same time:

(1) Electric power delivered pursuant to subdivision (b).

(2) Electric power supplied by one or more direct transactions.

(3) Electric power from any electric utility regulated by the commission that owns and operates transmission and distribution facilities that deliver electricity at one or more locations to the BART District's system.

**SEC. 3.** The Legislature finds and declares that, because of the unique circumstances applicable only to the San Francisco Bay Area Rapid Transit District, a statute of general applicability cannot be enacted within the meaning of subdivision (b) of Section 16 of Article IV of the California Constitution. Therefore, this special statute is necessary.

**SEC. 4.** No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

**SEC. 5.** This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are:

In order to ensure the continued delivery of electricity to the San Francisco Bay Area Rapid Transit District at an affordable rate, it is necessary for this act to take effect immediately.

===============================================================================

SDRI's objective is directly in line with Senate Bill 1201 Chapter 613 at Section 701.8. With the U.S. economy as it is due to global health concerns, it is imperative that we must be much more meticulous in managing our precious energy resources. This senate bill could also be applied to the East Bay Municipal Utilities District (EBMUD) as a power provider to BART with SDRI as

the Power Marketer, Manager and Broker, providing safety, security and energy efficiency for continuous power supply, peak power shaving or load leveling and/or backup power availability.

SDRI's overhead cost could be far lower than that of all investor owned utilities while Transmission and Distribution cost can be negated due to Distributed Generation Applications and as a result of this benefit, SDRI would be able to offer more cost effective contracts to our providers and end-users. SDRI's action and efforts would not be in competition with any investor owned utility since the firm would be supplying newly available resources for new cost effective and environmental friendly power generation applications.

PG&E's customer billing statement is as follows:

- **Conservation Incentive** - $6.07
- **Transmission** $10.93
- **Distribution** $2.90
- **Electric Public Purpose Programs** $1.54
- **Nuclear Decommissioning** $0.25
- **Competition Transition Charges (CTC)** $0.31
- **Energy Cost Recovery Amount** - $0.16
- **PCIA** $7.70
- **Taxes and Other** $0.20

PG&E's complex list of notice of increase charges are:

- **Customer Data Access (CDA)**
- **Catastrophic Event Memorandum Account (CEMA)**
- **California Alternate Rates for Energy (CARE)**
- **Energy Resource Recovery Account (ERRA)**
- **Energy Savings Assistance Program (ESAP)**
- **Family Electric Rate Assistance (FERA)**
- **General Rate Case (GRC)**
- **Portfolio Allocation Balancing Account (PABA)**
- **Public Safety Power Shutoff (PSPS)**
- **Wildfire Expense Memorandum Account (WEMA)**
- **Wildfire Mitigation and Catastrophic Events (WMCE)**

- **Or Any Other Account(s)**

Can PG&E give a short and concise definition of all of these accounts and where they are found on the customers billing statement? As in my previous request my ultimate goal is to receive compensation from the CPUC for expenditures on building SDRI through appropriate State and Federal Regulations where there is a need in the public interest.

In a memorandum 98-40 the California Public Utilities Commission (CPUC) published a document on Eminent Domain Law Condemnation by privately owned public utility http://www.clrc.ca.gov/pub/1998/M98-40.pdf. Symmetry Device Research Inc., (SDRI) also retains Eminent Domain authorization which was enacted and given by the Federal Energy Regulatory Commission (FERC), known as "Taken Laws".

Nothing in this CPUC Memorandum disallows SDRI from exercising its rights to serve the public interest whether or not SDRI is under CPUC regulations. Outside of Distributed Generation, SDRI is looking to monetize not land but the "taking" of public power generation assets, such as those owned by the East Bay Municipal Utilities District (EBMUD) that is currently applied to backup power applications.

These power generation systems located in many diverse industries would become "time of use systems" providing the benefits of quality and reliability in operational use, fuel resource integrity, demand response needs and returned on investment towards depreciation and amortization of public capital assets with ownership still in the hands of that public institution.

The taking of land for the construction of power plants is least likely to be in the public interest because of location, environmental issues and cost. Nothing in the CPUC's memorandum precludes the immediate application of this aforementioned methodology from benefiting the need and interest of the public good.

Now if transmission and distribution are publicly owned assets, the CPUC and the CEC has a legal obligation to establish standards for connecting (inter-tie) power generating systems to the smart grid technology. This employs wireless fixed networks which are Automatic Meter Reading (AMR) systems for measurements, controls, diagnostics and monitoring. This technology is a real-time and time-of-use internet based access system utilizing software for data acquisition against all external operational capabilities on grid-tie power generating systems. This technology is also as Supervisory Control and Data Acquisition (SCADA) or International Performance Measurement and Verification Protocol (IPMVP).

Normalizing the cost for natural gas, electrical energy and clean air, water and soil could establish equitable pricing for manufactured products and services. As in our previous correspondence with the CPUC, CEC and TURN, SDRI hopes that you can assist us as previously requested compensation for our investment to provide services to our community in these crucial economic times.

The world market place is at the doorstep of many small and mid-sized companies that previously may have been left out of international and domestic commerce. California's Renewable Energy Technology Companies can take advantage of $365 Billion in potential trade and move from the world's 5th largest economy to the 3td largest economy in the world.

How? Through a unique program, Renewable Energy Technology export program the CPUC and the CEC can follow the programs instituted by the Centre For International Trade (CTI). Since 1975, the Commission's Renewable Energy Technology export program has helped spur several hundred million dollars in energy export sales from California with a 37-2-1 return for every government dollar invested in export-stimulating activities.

The Commission's program has helped California companies develop wind projects in Costa Rica and Greece, Co-generation Projects in China and Thailand, and energy efficiency projects in numerous Asian and Latin American countries. These projects have paved the way for lucrative business deals that produce jobs, revenue and an increase tax base for California. California has also offered venture capital opportunities by way of the Security and Exchange Commission's 144 (a) Bond program. This is how the import-export programs not only stimulates business, the program also helps business conserve global resources and promotes more efficient energy technologies that pollute less. The program strives to share ideas and technology know-how to help people everywhere improve their standard of living and better harness the energy resources available in their own corner of the global economy in an environmentally friendly way.

The Leadership in Engineering and Design (LEED) certification process is use to achieve energy efficient audits for buildings that can turn energy waste or loses into cost avoidance vehicles to source new bundle energy services loads as well as Distributed Generation. With precise calibrated equipment technologies such as AMR, SCADA, IPMVP and other compatible internet systems where data acquisition can be measured, monitored, diagnosed and controlled. There are a number of renewable energy technology aggregation schemes that can adjust to our changing economy because of social separation and all of the associates' derivatives.

## CPUC's CONCLUSION

The staff recommends that the Law Revision Commission prepare a tentative recommendation that would authorize CPUC to adopt regulations controlling exercise of eminent domain authority by a privately owned public utility. This is consistent with the general authority of CPUC to supervise and regulate public utilities, but will eliminate any question about CPUC's authority to act in this area. It will enable CPUC to monitor experience with and complaints about condemnation in a deregulated environment, and to act in a way appropriately tailored to the problems that develop.

Thank You & Best Regards

Darwin E. Richards, CTO

510-491-3264