1               UNITED STATES BANKRUPTCY COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                          -oOo-

4    In Re:                        ) Case No. 19-30088
                                   ) Chapter 11
5    PG&E CORPORATION AND PACIFIC  )
     GAS AND ELECTRIC COMPANY,     ) San Francisco, California
6                                  ) Friday, July 16, 2021
                       Debtors.    ) 11:00 AM
7    _____ )
                                     HEARING ON DISCOVERY
8                                    CONFERENCE BETWEEN PG&E FIRE
                                     VICTIM TRUST AND
9                                    PRICEWATERHOUSECOOPERS LLP
                                     [6473]
10

11               TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE DENNIS MONTALI
12              UNITED STATES BANKRUPTCY JUDGE

13   APPEARANCES (All present by video or telephone):

14   For the Debtors:           KEVIN J. ORSINI, ESQ.
                                Cravath, Swaine & Moore LLP
15                              Worldwide Plaza
                                825 Eighth Avenue
16                              New York, NY 10019
                                (212)474-1000
17
     For the Trustee of the     EVAN C. BORGES, ESQ.
18   PG&E Fire Victim Trust:    SARAH KELLY-KILGORE, ESQ.
                                Greenberg Gross LLP
19                              601 South Figueroa Street
                                30th Floor
20                              Los Angeles, CA 90017
                                (213)334-7000
21
     For Pricewaterhouse        MATTHEW J. CAVE, ESQ.
22   Coopers LLP:               Kibler Fowler & Cave LLP
                                11100 Santa Monica Boulevard
23                              Suite 360
                                Los Angeles, CA 90025
24                              (310)409-0400

25

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

Court Recorders:          LORENA PARADA
17                        ANKEY THOMAS
                          United States Bankruptcy
18                        Court
                          450 Golden Gate Avenue
19                        San Francisco, CA 94102

20

Transcriber:              CONNIE WEST
21                        eScribers, LLC
                          7227 N. 16th Street
22                        Suite #207
                          Phoenix, AZ 85020
23                        (973)406-2250

24   Proceedings recorded by electronic sound recording;
     transcript provided by transcription service.
25

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    SAN FRANCISCO, CALIFORNIA, FRIDAY, JULY 16, 2021, 00:48:51

2                          -oOo-

3       (Call to order of the Court.)

4          THE CLERK:  Calling the matter of PG&E Corporation.

5          THE COURT:  All right.  I see Mr. Cave is joining us.

6    And we should have counsel for the -- Mr. Borges, you're

7    appearing.

8          Mr. Cave, good morning.  Sorry to keep you waiting.

9    Can you state your appearance?

10         MR. CAVE:  No problem.  Good morning, Your Honor.

11   Matthew Cave for PricewaterhouseCoopers LLP.

12         THE COURT:  Mr. Orsini, I haven't seen you in ages.

13   What are you doing?

14         MR. ORSINI:  Morning, Your Honor.  I would ask if

15   you've missed me, but I'm afraid my feelings would get hurt

16   with an honest answer.  But it's good to see you.

17         THE COURT:  Of course I miss you.  I go home at night,

18   and I read all these bankrupt cases in New York and Delaware,

19   and I think, well, maybe I get another one, one of these days.

20         Kelly-Kilgore, I presume you're making the appearance

21   for the trustee?

22         MS. KELLY-KILGORE:  Yes.  Good morning, Your Honor.

23         THE COURT:  Good morning, Ms. --

24         MS. KELLY-KILGORE:  Mr. Borges, as you recognized, is

25   one of my partners and is here with me, but I will be appearing

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   this morning.

2       THE COURT:  Okay.  Well, what should start -- I mean,

3   I thought this meet and confer was going to be all that you'd

4   have to do.  And you went on so many times.  And I am sorry we

5   ended up having to do this.  And then at the last minute, I

6   just get deluged with, essentially, briefing.

7       I mean, for those of you -- Mr. Cave, I should make

8   sure you understand -- maybe you do -- that the practice here

9   has always been we just grant these 2004 orders and then meet

10  and confer on the motions to quash to follow.  So now instead,

11  after many continuances and an attempt for you all to -- and I

12  presume you have made tremendous progress.  And at this last

13  minute, I get this pages and pages of briefs and email trains

14  that I haven't even read.  And it all -- it seems to come down

15  to, does Mr. Lay (phonetic) get deposed or not?  So --

16      MS. KELLY-KILGORE:  Your Honor --

17      THE COURT:  Yes.

18      MS. KELLY-KILGORE:  My apologies.

19      THE COURT:  Go ahead.

20      MS. KELLY-KILGORE:  Unfortunately, the parties have

21  not made substantial progress throughout the months of the meet

22  and confer, which is why we're here.  The ex parte application

23  for Mr. Lay's examination is something that the trust is

24  seeking, but it is separate from the PwC documents subpoena,

25  which Your Honor authorized back in March 2020.

PG&E Corporation and Pacific Gas and Electric Company

1          Last year, following the authorization and the order

2     approving that subpoena, there were meet-and-confer efforts by

3     our predecessor counsel and by the counsel for the TCC.  Those,

4     unfortunately, similarly, were unable to solve the parties'

5     dispute.

6          My firm has been personally engaged in this matter

7     since April.  The briefing that you've seen, the many letters

8     back and forth and the emails back and forth, have not been

9     able to resolve the parties' dispute.  We seek the examination

10    of Mr. Lay because there is documentation directly from PG&E

11    demonstrating that PwC was actively engaged in the critical --

12          THE COURT:  Yeah.

13          MS. KELLY-KILGORE:  -- work that we --

14          THE COURT:  No.  I understand that.  And that's clear

15    in the papers.

16          MS. KELLY-KILGORE:  Thank you.

17          THE COURT:  The question is whether he should be

18    examined.  And I mean, I don't know why there's any debate.  He

19    should be examined unless there's a reason to defer it to

20    later.  And I --

21          MR. CAVE:  Well --

22          MS. KELLY-KILGORE:  Well --

23          MR. CAVE:  I'm sorry to interrupt, Your Honor.  If I

24    may?

25          THE COURT:  Yeah.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. CAVE:  Just briefly, and so Your Honor

2    understands, we're certainly not trying to be difficult or

3    create work for anyone here with filing our response to the ex

4    parte application.  And we understand the procedure.  What

5    happened here, unfortunately, is an eleven-page ex parte

6    application was dropped on us a couple days before this

7    conference that covers every single discovery dispute that

8    we've been talking about for the past two months.  And so we

9    felt that it was appropriate to put in a response in writing

10   for Your Honor to consider.

11          From our perspective, the parties have, in fact, made

12   progress.  I think it's important to note that before Ms.

13   Kilgore's firm was involved, our client had been meeting and

14   conferring with two predecessor firms for --

15          THE COURT:  No.  I'm aware of that.

16          MR. CAVE:  -- (audio interference) --

17          THE COURT:  I'm aware of that.

18          MR. CAVE:  So --

19          THE COURT:  And there's nothing we can do about that.

20   I mean, I don't know why -- I don't know why the Fire trustee

21   switched counsel.  It's none of my business.  And so we can't

22   change that.  You're stuck with who you're stuck with.

23          MR. CAVE:  And we get that.  And we're happy to meet

24   and confer with Mr. Borges and Ms. Kilgore.  The problem is, a

25   year of history of meeting and conferring and reaching

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    agreements with respect to what's already been produced by our

2    client, which was seven productions and about 1,500 pages,

3    they've tried to hit the reset button as of April 30th.

4         It's only been two months.  We have been meeting and

5    conferring.  We have agreed to produce some additional

6    documents.  There are some big issues still, such as the scope

7    of what falls under the document subpoena that's pending, that

8    we still haven't resolved, but we're still talking about it.

9         I know Ms. Kilgore is wanting things to go faster.  I

10   appreciate that.  I can tell Your Honor we are working

11   diligently to move things along, but this process takes time.

12   We have a large institutional client.  There's a lot of history

13   here, and we are, in fact, moving things along.

14        So we're not opposed to a deposition taking place at

15   the appropriate time.  We understand the scope of a Rule 2004

16   subpoena, but we really believe that this meet and confer

17   process, with respect to the documents subpoena, ought to play

18   out for a little bit more time.  Let us resolve the disputes

19   that are still pending, and then we can revisit the idea.

20        And in fact, that was our understanding when Ms.

21   Kilgore raised this in her June 18th letter to our firm.  And

22   we very, very briefly discussed the prospect of Mr. Lay's

23   deposition.  And we had understood it had been set aside so

24   that we can continue meeting and conferring.

25        But again, our position is, things are moving along.

PG&E Corporation and Pacific Gas and Electric Company

1　We have agreed to produce more documents.  We are happy to

2　continue meeting and conferring with them regarding the

3　documents subpoena.  And then at the appropriate time, we can

4　have a discussion about who from PwC ought to be deposed.

5　　　　MS. KELLY-KILGORE:  Your Honor, if I may respond to

6　the points Mr. Cave raised?

7　　　　THE COURT:  No.  I'm going to ask you a specific

8　question.  I mean, I can't imagine anything more frustrating

9　than deposing a witness who doesn't have the documents yet or

10　you haven't told what (audio interference) that obvious you

11　should get the documents before you examine the witness who's

12　going to answer about the documents?

13　　　　MS. KELLY-KILGORE:  We would love to have the

14　documents first.  But I think that there are two separate

15　requests here.  And again, there is the documents subpoena.

16　There is the request for the subpoena to Mr. Lay.

17　　　　The purpose of the examination of Mr. Lay, in part, is

18　because Mr. Cave and his co-counsel have challenged the

19　relevance of the documents that are being sought under the

20　existing 2004 subpoena.  We know from the emails that we have

21　provided to PwC's counsel that Mr. Lay was heavily involved in

22　those.

23　　　　In terms of the scope of the existing subpoena,

24　unfortunately, although Mr. Cave says that he has met and

25　conferred with prior counsel, if you look at Exhibit 6, to the

PG&E Corporation and Pacific Gas and Electric Company

1    ex parte application, you can see -- and Exhibits 1 and 2,

2    which are cited within Exhibit 6 -- there was no prior

3    agreement with prior counsel.  We have been pressing for these

4    documents, including --

5         THE COURT:  Hold on one second, please.

6         MS. KELLY-KILGORE:  Absolutely.

7         THE COURT:  Just one second.

8         (Pause.)

9         Okay, we're back.  Look, I have to tell you the

10   obvious again.  Mr. Orsini has had a lot of history with me.

11   The rest of you, perhaps, have not.  But discovery disputes are

12   things that I do on the fly with two-page or two-paragraph

13   things.  What happened here -- and our courthouse, as long as

14   I've been on the court, we issue 2004 orders routinely and

15   expect the battle to come later, so that -- for example, Mr.

16   Cave, you complained that the 2004 order was requested without

17   notice to you.  That's the practice in the Northern District

18   and has been forever.  But that doesn't mean people should be

19   taking advantage.

20        But again, whether it's because I'm working at home or

21   not, I can't have long email chains and a history made with, in

22   this case, different counsel and very, very complicated

23   relationships that PwC has with PG&E and try to digest it all

24   instantly.

25        So I mean, for Mr. Kilgore to talk about Exhibit Such-

PG&E Corporation and Pacific Gas and Electric Company

1    and-Such to her filing, I don't deny it.  I just haven't been

2    able to go through it.

3          And I guess they -- like tsunamis.  I get these

4    discovery battles that come out of blue.  This is about the

5    fourth one I've had in the last four days.  I should go into a

6    new career of just studying how to read emails backwards

7    because I can't keep up with it.

8          And by the way, I would say, Mr. Cave, one thing that

9    I think this bankruptcy judge does about protecting the process

10   of 2004 is, don't worry about relevance yet.  And I understand.

11   And I don't want to insult Pricewaterhouse and its

12   professionals or outside counsel, but to me, relevance is

13   something that has to be decided by the person that -- you have

14   to -- you have to let them look at the stuff to see if it's

15   relevant.  You got protective orders, and you got professionals

16   working on both sides.  And I don't imagine that the trustee's

17   lawyers are going to take stuff and advertise it on the

18   internet.

19         So I'm frustrated in the sense that, I don't know why

20   I have to have this hearing today.  I'd rather say, continue to

21   come to an agreement.  But then, if you can't, I have to have

22   more time to understand more specifically what I'm supposed to

23   decide.

24         Now, that's a long speech to say, Ms. Kilgore, what's

25   the point now?  I mean, how do you -- what do you want me to do

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  now?  Anything, other than resign, which I won't.

2  MS. KELLY-KILGORE:  Absolutely do not want you to

3  resign, Your Honor.  So let me start with that and assure you

4  that we have no intention of broadcasting PwC's documents to

5  anyone, but we have been completely shut out from documents.

6  Mr. Cave's eleventh-hour email on Wednesday promised

7  the production of a single document.  Meanwhile, we have not

8  received any of the deliverables that PwC generated as part of

9  its work on the critical issues of the Community Wildfire

10  Safety Program or the Public Safety Power Shutoff program.  We

11  think that those documents --

12  THE COURT:  Those do seem relevant to me.  It does

13  seem relevant.  If an outside professional law firm, accounting

14  firm or consulting firm, was hired by the debtor and dealing

15  with wildfire issues, it's hard for me to say -- it has to be

16  relevant, at least for preliminary examination purposes.

17  MS. KELLY-KILGORE:  And so that's where we are, Your

18  Honor.  We are hoping for your guidance on that front.  To the

19  extent that we are unable to reach agreement with PwC's

20  council, which, as Your Honor knows, has been more than a year

21  now, and there is no agreement, certainly not on the aspect of

22  the deliverables, then we, unfortunately, I think, are in the

23  world where we will need the opportunity to brief this issue

24  because we cannot proceed, as Your Honor indicated, without

25  accessing these documents and having the opportunity to, at the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  very least, review them as part of our duty of investigating

2  the claims that have been assigned to the trust.

3  THE COURT:  Mr. Cave, I think you've been an advocate

4  for let's continue to meet and confer; what would you propose?

5  Since I don't -- I mean, if you -- I don't think it's helpful

6  for either side or for me to say, thank you; the matter's

7  submitted; I'll get back to you with a ruling.  Because I'm not

8  even sure what I would make by way of a ruling at this point.

9  So what is a practical solution, Mr. Cave?

10  MR. CAVE:  Well, thank you, Your Honor.  I mean,

11  that's been our position all along in our request to continue

12  this status conference.  The prior meet and confer, which

13  culminated in our client's understanding that they had resolved

14  the trustee, as represented by prior counsel's inquiries, were

15  satisfied.

16  I understand that's history, and we're starting over,

17  and that's fine.  But again, that process took a full year.

18  Things are moving --

19  THE COURT:  I know, but don't -- you can't say that

20  anymore.  You've got this counsel, and we're here.

21  MR. CAVE:  Understood, Your Honor --

22  THE COURT:  So --

23  MR. CAVE:  -- but --

24  THE COURT:  And if I haven't given you my instincts,

25  I'll say it again.  My instincts are your relevance arguments

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   seem to be misplaced at this point.  And I think that, given

2   with protective orders and stipulations and professional

3   integrity, which -- I'm assuming that you have to give up on

4   that and let her get the documents and then get back to you or

5   disregard what isn't relevant for her examination purposes.

6           They're the new kids on the block, not this law firm

7   versus the other.  The trustee himself didn't even exist

8   until -- well, Mr. Orsini will remember.  By my count, the

9   trustee's been in existence for one year and two weeks.  And I

10  read about him every week because of his frustration.

11          And I get cases about, well, that didn't happen on my

12  watch.  The debtor did it.  We didn't do it.  Well, okay.

13  Fine.  We're moving forward now.

14          So the trustee's job is to try to find out how to help

15  build up the fund for the fire victims.  And if PwC has some

16  culpability, then the trustee has a right to go inquire about

17  the facts that would establish that.  And it's just 2004 on

18  steroids.

19          So we start with the presumption that, unlike some

20  state court litigators or even federal district court

21  litigators -- and I don't know whether you are or aren't a

22  bankruptcy special -- it doesn't matter.  2004 is very far-

23  reaching, and I continue to support the trustee's use of it.

24          So I urge you to get off the relevance argument and

25  get onto the, let's get on with a timetable for making sure Ms.

PG&E Corporation and Pacific Gas and Electric Company

1    Kilgore doesn't have to come back and make that argument again.

2    I don't mind a debate about a specific thing:  this is

3    privileged, or this is something else that really is

4    irrelevant.  Really irrelevant is more irrelevant than just

5    irrelevant.  Really irrelevant.

6          MR. CAVE:  Yeah.  Well understood, Your Honor.  And

7    thank you for the guidance.  So let me get back to answering

8    your question, which was, what's a practical solution here?

9          I think a practical solution is let us meet confer

10   after this conference with the guidance that Your Honor has

11   provided.  I think that the trustee should put a pin in the

12   request for a deposition, whether the Court grants them leave

13   to issue the subpoena or not.  That's fine.  We can talk about

14   that later.  We'll talk about what additional documents PwC

15   will produce, and if necessary, to brief a dispute down the

16   road, then we will.

17         We didn't understand the purpose of this conference

18   when it was requested, frankly, in the first instance.  And I'm

19   not sure that all the discussion about meeting and conferring

20   and putting in papers accusing us of misrepresentations and

21   whatnot in an eighty-four-page declaration is really a good use

22   of any of our time.  So I would ask Ms. Kilgore for the

23   professional courtesy of not dropping another document like

24   that on us shortly before a discovery conference.

25         Let's continue meeting and conferring.  And we'll

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  continue to make progress as we have.

2       THE COURT:  Okay, but --

3       MS. KELLY-KILGORE:  Your Honor, I --

4       THE COURT:  -- keep in mind --

5       One second.

6       Mr. Cave, just keep in mind my starting point.  My

7  starting point is, you ought to be -- you have to give

8  everything they ask for.

9       MR. CAVE:  Understood, Your Honor.

10       THE COURT:  Unless it is absolutely off-limits.  And

11  every time Ms. Kilgore makes reference to the fire suppression

12  and the wildfire, the other acronyms here, it seems like, why

13  wouldn't they be relevant?  So you have to start with that as

14  the starting point.

15       Yeah.  So Ms. Kilgore --

16       MS. KELLY-KILGORE:  Not --

17       THE COURT:  -- you were trying to say something?

18       MS. KELLY-KILGORE:  Thank you.  I was.  To address Mr.

19  Cave's point, I do think that we absolutely have to have a

20  timetable.  It's critical at this juncture.

21       The reason that we came in for the discovery

22  conference in the first instance, back at the beginning of

23  June, was because we were told by Mr. Cave and his co-counsel

24  that we would be receiving a response to a letter that I had

25  written them on May 28th, which never appeared.  So we

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   requested a discovery conference two weeks after.

2        On June 18th, I wrote another letter with the four

3   points that we wanted answered. We didn't receive a response

4   to that until this Wednesday, despite representations that we

5   would certainly -- that was the language that was used -- we

6   would certainly have a response by July 9th.

7        We are trying to work with PwC's counsel. We have no

8   intention of wasting Your Honor's time or coming before you

9   unnecessarily. But given the lack of progress that's been

10  made, I think that it would be appropriate to have a two-week

11  time frame for the parties to continue meeting and conferring

12  on the documents issue to brief the issue if we can't come to a

13  resolution.

14       I do think that in the meantime, the request for the

15  subpoena for Mr. Lay's examination should be granted. The

16  parties can meet and confer over that. Mr. Cave has already

17  indicated that he may have some objection to that or may even

18  seek to move to quash in his opposition. He makes reference to

19  that. So I think that that will likely be a lengthy meet-and-

20  confer process that we should get started on immediately

21  because as Your Honor is aware, in the meantime, the trust is

22  unable to pursue its claims on behalf of the fire victims.

23       THE COURT: Now, let's go back, again, to the

24  beginning, perhaps when I first became a judge -- actually,

25  when I first started practicing in this court. Routinely, 2004

PG&E Corporation and Pacific Gas and Electric Company

1  orders were granted in the Northern District with just -- it

2  made me ask myself one time, why do we even have to involve the

3  court?  Why can't a 2004 be issued just like lawyers issued a

4  subpoena?  And most of them get issued and get acted on, and

5  there's not a problem.

6        This one is -- as I say, it's 2004 on steroids because

7  all this briefing has been happening.  So I can issue the 2004,

8  but it doesn't mean anything.  It doesn't mean that PwC's

9  arguments aren't well-considered.  And I don't know, whether I

10  issue it today or issue it in two weeks, it makes a big

11  difference, if you think it makes a difference.

12        I'm not going to order an immediate examination by Mr.

13  Lay.  And I'm expecting the meet and confer to continue to

14  narrow down and to refine what (audio interference) if

15  necessary.

16        So again, that's a long way of saying, I'll issue the

17  order, but don't think it's a win.  It's just a formality, like

18  you would do it if you were in district court or in a state

19  court where the lawyers just issue the subpoena.  It's not my

20  judicial act of deciding something.  It's nothing more than a

21  subpoena.  But I'll invite Mr. Cave to try to, again -- to meet

22  with you, Ms. Kilgore, or any of the others.

23        Another prompt, by the way -- neither of you is guilty

24  of this, but in some of these discovery disputes, I can't even

25  keep up with the letters because some people write the letters

PG&E Corporation and Pacific Gas and Electric Company

1    to somebody other people are promoting, and then somebody else

2    shows up at the hearing.  And again, reading an email string

3    backwards that comes from my courtroom deputy at the last

4    minute is not the way I prepare for arguments.

5              Ms. Kilgore, I think it would be useful for you to

6    commit to prepare for me kind of a list of what you're still

7    expecting a few days prior to a continued hearing.  And I'll

8    simply continue today's hearing maybe two to three weeks with

9    the expectation that maybe none of you will have to bother to

10   see me.  Don't worry about imposing on me.  It's your clients

11   and the job you're getting done.

12             But if I schedule a continuation today, let's say

13   three weeks out, then about two weeks before, I think you

14   should give me, again, with copy to counsel, a list, not a

15   brief, not an email string, this is what we are expecting to

16   get:  A, B, C, D.  And recognize that when I see an acronym and

17   the reference to deliverables, I don't even know what you're

18   talking about.  And that's okay.

19             MS. KELLY-KILGORE:  Understood.

20             THE COURT:  I don't need to know.  And so you could

21   just say "the stuff".  But the point is, you know and Mr. Cave

22   knows what it is you're trying to get and he's trying either

23   not to give you or is willing to give you as long as there's

24   some definition.

25             And I would say that, not only just for the two of you

PG&E Corporation and Pacific Gas and Electric Company

1    but the other counsel, you've been very good about continuing

2    these PwC trustee disputes because I think this is the first

3    one that has really gotten to this point.  So with luck, we

4    won't have the next one.  But I'll do my job if I can.  But

5    just understand, I can't absorb thirty pages of briefs the

6    night before the hearing.

7            Ms. Parada, let's give counsel a date about three

8    weeks out where we'll -- not on the PG&E calendar and really

9    not on any other calendar that mixes up with anything else.

10   And it doesn't have to be on a Friday, but let's see what's --

11   you suggest.

12           THE CLERK:  August 5th?

13           THE COURT:  5 or 6?

14           THE CLERK:  Yes.  5 --

15           THE COURT:  10 --

16           THE CLERK:  -- at 10 o'clock?

17           THE COURT:  10:30?  10 o'clock?

18           THE CLERK:  Um-hum.

19           THE COURT:  August 5th at 10 o'clock work for

20   principal counsel?  I don't know if everyone else, but Mr.

21   Cave, Ms. Kilgore?

22           MS. KELLY-KILGORE:  Yes, Your Honor.

23           MR. CAVE:  That's great for us, Your Honor.  Thank

24   you.

25           THE COURT:  Okay.  So Ms. Kilgore, let's make it --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   let's make it the prior Monday.  So that would be August 1st.

2   I'll get something.  You file just a statement as to what it is

3   you're still looking for.  And you don't have to add in there

4   Mr. Lay's examination because I will issue the order.  It just

5   won't have any time limit on it.

6           MS. KELLY-KILGORE:  Absolutely.

7           THE COURT:  And we'll assume that, for his convenience

8   and your all mutual convenience, that's just pending, and it's

9   not something that's scheduled.  And you'll schedule it on your

10  own without me if I have my way.  Okay?

11          THE CLERK:  Excuse me.  Your Honor?

12          MR. CAVE:  Your Honor?

13          THE COURT:  Yes?

14          THE CLERK:  Do you want that Monday, August 2nd?

15          THE COURT:  Oh.  Wait a minute.  Just a minute.  Oh, I

16  thought you said we were doing this on Friday the 5th, right?

17          THE CLERK:  Thursday the 5th.

18          THE COURT:  Oh, Thursday the 5th.  Okay.  That's my

19  problem.  Okay.  August 2nd.  August 2nd.  See, I wasn't

20  hearing, and I wasn't looking at my calendar.  The hearing is

21  August 5th, Thursday, 10 a.m.  Ms. Kilgore will have something

22  by August 2nd.

23          And by the way, Ms. Kilgore and Mr. Cave, if you agree

24  to have more time, you can just do it on your own.  And I don't

25  need a status report to tell me that you're going to continue

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   the deadline by mutual agreement.  Just work it out with my

2   courtroom deputy.

3           MS. KELLY-KILGORE:  Understood.  Thank you, Your

4   Honor.

5           MR. CAVE:  Your Honor, just very --

6           THE COURT:  I mean -- yes?

7           MR. CAVE:  -- briefly.

8           THE COURT:  Yes, sir.

9           MR. CAVE:  We thank Your Honor for the prospect of

10  avoiding future briefing, which again, we didn't want to do.

11  Hopefully, this won't be an issue, but to the extent there are

12  disputes about the bullet-point list, may I suggest that the

13  parties meet and confer and submit a joint bullet-point list or

14  that we have an opportunity the next day?  Again, I'm talking

15  about an email, a very short email, but anticipating issues --

16          THE COURT:  Okay.  Well --

17          MR. CAVE:  -- I think it make sense for us --

18          THE COURT:  -- Mr. Cave, I'll refine it.  Your

19  homework assignment is to join with Mr. Kilgore on that August

20  2nd joint statement, which in my wish list would be, our August

21  2nd statement is, we don't need to have a further hearing this

22  week.

23          MR. CAVE:  Well, we'll work on that, Your Honor.

24          THE COURT:  Okay.

25          MR. CAVE:  And if we can't, then I'm sure the list we

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  put together jointly will be great.

2  THE COURT:  Okay.

3  MS. KELLY-KILGORE:  Your Honor --

4  THE COURT:  Thank you all for your time.  Yes?

5  MR. CAVE:  Thank you, Your Honor.

6  MS. KELLY-KILGORE:  My apologies.  There is one more

7  discrete issue with respect to this discovery dispute that I

8  think your guidance may be helpful on.  We were informed on

9  Wednesday by PwC's counsel that they are withholding certain

10 contracts on the basis of a privilege assertion that was made

11 by PG&E rather than PwC.  PwC's counsel appears unwilling even

12 to identify those specific contracts for us.  We think that

13 that is necessary to continue the meet-and-confer discussions

14 on that issue.  So I would ask that they provide at least the

15 contract numbers and names, so that we can have a meaningful

16 discussion.

17 THE COURT:  Well, is this something Mr. Orsini or

18 someone from the company needs to be involved in this

19 discussion?  I mean, if the company is claiming a privilege, I

20 can't --

21 MR. CAVE:  Yes.

22 THE COURT:  -- blame Pricewaterhouse for not honoring

23 that demand.  So I'm not sure what you want me to -- what you

24 want me to do on this one.  I'm not following you, Ms. Kilgore.

25 MS. KELLY-KILGORE:  Well, I'm not asking for the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   production of the documents that are claimed to be privileged.

2   I'm asking for some sort of identification of those contracts,

3   so that we can at least have the discussion with Mr. Orsini or

4   with PG&E's other counsel to discuss whether those documents

5   are, in fact, subject to a privilege claim.  We have reason to

6   believe that they're not, given that some of them have been

7   publicly filed in this bankruptcy proceeding.

8           THE COURT:  So what would it be, just a privilege log?

9   You want to --

10          MS. KELLY-KILGORE:  Yes.

11          THE COURT:  -- (audio interference)?

12          Mr. Cave, can you produce that, a privilege log?

13          MR. CAVE:  My client's not claiming the privilege.  I

14  mean, this issue literally just came up.  So I propose we meet

15  and confer, and I think PG&E's counsel needs to be involved.

16  So yeah.  We can identify what's being withheld based on

17  PG&E's --

18          THE COURT:  Well, I realize you're not claiming the

19  privilege, but if your client said that's privileged, and Mr.

20  Orsini can speak to this, but that wouldn't preclude you from

21  saying, I can't respond because it's privileged.

22          MR. CAVE:  No.  I agree, Your Honor.  And I'm sorry

23  if --

24          THE COURT:  Okay.

25          MR. CAVE:  -- that wasn't clear.  Yeah.  We can

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

provide a log explaining what's being withheld.

1

2      THE COURT:  Mr. Orsini --

3      MS. KELLY-KILGORE:  That's all we're asking.

4      THE COURT:  Well, okay.  Mr. Orsini, is there any --

5 it doesn't sound like we need to do anything now, do we?

6      MR. ORSINI:  It doesn't sound like it, Your Honor.

7 We're more than happy to be involved in conversations with PwC

8 and the Fire Victim Trust to the extent they have questions

9 about our invocation of privilege.  So that's not a problem

10 from our perspective.

11      THE COURT:  Okay.  And what I was hearing is, the

12 trustee says to PwC, give me a document.  PwC says, it's

13 privileged because our client, PG&E, is claiming it privileged.

14      MR. ORSINI:  Um-hum.

15      THE COURT:  And the colloquy that I just had is

16 that -- well, PwC can at least identify that document, which

17 they can't produce.  And then that's point one.  Point two is,

18 the company through you or whoever is going to speak for the

19 company will then decide, is there a privilege or isn't there?

20 And if there isn't, then end of story, if there is, then I

21 guess I'll have to decide or not, right?

22      Ms. Kilgore, we get there, but that's --

23      MS. KELLY-KILGORE:  That's exactly it.  That's exactly

24 what we were asking for, Your Honor.  Thank you.

25      THE COURT:  Okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. ORSINI:  Sounds right to me, Your Honor.

2          MR. CAVE:  Sounds good.

3          THE COURT:  Okay.  Thank you all for your time.  I'm

4    sorry if I couldn't answer all your problems for you, but I

5    don't want to.  I want you to answer them yourself.  Thank you.

6          MS. KELLY-KILGORE:  We appreciate that, Your Honor.

7    Thank you.

8          MR. CAVE:  Thank you, Your Honor.

9          THE COURT:  Have a good weekend, everyone.

10         MR. ORSINI:  Thank you.

11         MR. CAVE:  You as well.

12         MS. KELLY-KILGORE:  Likewise.

13         MR. ORSINI:  You, too, Your Honor.

14         THE COURT:  That concludes the hearing.  Ms. Parada,

15   thank you for participating, and Ms. Thomas.  I'm going to shut

16   down.

17      (Whereupon these proceedings were concluded at 01:18:47)

18

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net
of 32

1          C E R T I F I C A T I O N

2

3     I, Connie West, certify that the foregoing transcript is a true

4     and accurate record of the proceedings.

5

6

7

8     _____

9     /s/ CONNIE WEST

10

11    eScribers

12    7227 N. 16th Street, Suite #207

13    Phoenix, AZ 85020

14

15    Date:  July 18, 2021

16

17

18

19

20

21

22

23

24

25

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

**A**

**able (2)**
5:9;10:2
**Absolutely (5)**
9:6;11:2;15:10,19;
20:6
**absorb (1)**
19:5
**accessing (1)**
11:25
**accounting (1)**
11:13
**accusing (1)**
14:20
**acronym (1)**
18:16
**acronyms (1)**
15:12
**act (1)**
17:20
**acted (1)**
17:4
**actively (1)**
5:11
**actually (1)**
16:24
**add (1)**
20:3
**additional (2)**
7:5;14:14
**address (1)**
15:18
**advantage (1)**
9:19
**advertise (1)**
10:17
**advocate (1)**
12:3
**afraid (1)**
3:15
**again (14)**
7:25;8:15;9:10,20;
12:17,25;14:1;16:23;
17:16,21;18:2,14;
21:10,14
**ages (1)**
3:12
**agree (2)**
20:23;23:22
**agreed (2)**
7:5;8:1
**agreement (5)**
9:3;10:21;11:19,21;
21:1
**agreements (1)**
7:1
**ahead (1)**
4:19
**along (4)**
7:11,13,25;12:11
**although (1)**

8:24
**always (1)**
4:9
**and-Such (1)**
10:1
**answered (1)**
16:3
**anticipating (1)**
21:15
**anymore (1)**
12:20
**apologies (2)**
4:18;22:6
**appearance (2)**
3:9,20
**appeared (1)**
15:25
**appearing (2)**
3:7,25
**appears (1)**
22:11
**application (4)**
4:22;6:4,6;9:1
**appreciate (2)**
7:10;25:6
**appropriate (4)**
6:9;7:15;8:3;16:10
**approving (1)**
5:2
**April (2)**
5:7;7:3
**argument (2)**
13:24;14:1
**arguments (2)**
12:25;17:9;18:4
**aside (1)**
7:23
**aspect (1)**
11:21
**assertion (1)**
22:10
**assigned (1)**
12:2
**assignment (1)**
21:19
**assume (1)**
20:7
**assuming (1)**
13:3
**assure (1)**
11:3
**attempt (1)**
4:11
**audio (4)**
6:16;8:10;17:14;
23:11
**August (10)**
19:12,19;20:1,14,19,
19,21,22;21:19,20
**authorization (1)**
5:1
**authorized (1)**
4:25

**avoiding (1)**
21:10
**aware (3)**
6:15,17;16:21

**B**

**back (10)**
4:25;5:8,8;9:9;12:7;
13:4;14:1,7;15:22;
16:23
**backwards (2)**
10:6;18:3
**bankrupt (1)**
3:18
**bankruptcy (3)**
10:9;13:22;23:7
**based (1)**
23:16
**basis (1)**
22:10
**battle (1)**
9:15
**battles (1)**
10:4
**became (1)**
16:24
**beginning (2)**
15:22;16:24
**behalf (1)**
16:22
**big (2)**
7:6;17:10
**bit (1)**
7:18
**blame (1)**
22:22
**block (1)**
13:6
**blue (1)**
10:4
**Borges (3)**
3:6,24;6:24
**both (1)**
10:16
**bother (1)**
18:9
**brief (4)**
11:23;14:15;16:12;
18:15
**briefing (4)**
4:6;5:7;17:7;21:10
**briefly (3)**
6:1;7:22;21:7
**briefs (2)**
4:13;19:5
**broadcasting (1)**
11:4
**build (1)**
13:15
**bullet-point (2)**
21:12,13
**business (1)**

6:21
**button (1)**
7:3

**C**

**calendar (3)**
19:8,9;20:20
**CALIFORNIA (1)**
3:1
**Call (1)**
3:3
**Calling (1)**
3:4
**came (2)**
15:21;23:14
**Can (19)**
3:9;6:19;7:10,19,24;
8:3;9:1;14:13;16:16;
17:7;19:4;20:24;22:15;
23:3,12,16,20,25;24:16
**career (1)**
10:6
**case (1)**
9:22
**cases (2)**
3:18;13:11
**Cave (48)**
3:5,8,10,11;4:7;5:21,
23;6:1,16,18,23;8:6,18,
24;9:16;10:8;12:3,9,
10,21,23;14:6;15:6,9,
23;16:16;17:21;18:21;
19:21,23;20:12,23;
21:5,7,9,17,18,23,25;
22:5,21;23:12,13,22,
25;25:2,8,11
**Cave's (2)**
11:6;15:19
**certain (1)**
22:9
**certainly (4)**
6:2;11:21;16:5,6
**chains (1)**
9:21
**challenged (1)**
8:18
**change (1)**
6:22
**cited (1)**
9:2
**claim (1)**
23:5
**claimed (1)**
23:1
**claiming (4)**
22:19;23:13,18;
24:13
**claims (2)**
12:2;16:22
**clear (2)**
5:14;23:25
**CLERK (8)**

3:4;19:12,14,16,18;
20:11,14,17
**client (1)**
6:13;7:2,12;23:19;
24:13
**clients (1)**
18:10
**client's (2)**
12:13;23:13
**co-counsel (2)**
8:18;15:23
**colloquy (1)**
24:15
**coming (1)**
16:8
**commit (1)**
18:6
**Community (1)**
11:9
**company (4)**
22:18,19;24:18,19
**complained (1)**
9:16
**completely (1)**
11:5
**complicated (1)**
9:22
**concluded (1)**
25:17
**concludes (1)**
25:14
**confer (13)**
4:3,10,22;6:24;7:16;
12:4,12;14:9;16:16,20;
17:13;21:13;23:15
**conference (7)**
6:7;12:12;14:10,17,
24;15:22;16:1
**conferred (1)**
8:25
**conferring (8)**
6:14,25;7:5,24;8:2;
14:19,25;16:11
**consider (1)**
6:10
**consulting (1)**
11:14
**continuances (1)**
4:11
**continuation (1)**
18:12
**continue (13)**
7:24;8:2;10:20;12:4,
11;13:3;14:25;15:1;
16:11;17:13;18:8;
20:25;22:13
**continued (1)**
18:7
**continuing (1)**
19:1
**contract (1)**
22:15
**contracts (3)**

22:10,12;23:2
**convenience (2)**
20:7,8
**conversations (1)**
24:7
**copy (1)**
18:14
**Corporation (1)**
3:4
**council (1)**
11:20
**counsel (19)**
3:6;5:3,6;3:21;8:21,
25;9:3,22;10:12;12:20;
16:7;18:14;19:1,7,20;
22:9,11;23:4,15
**counsel's (1)**
12:14
**count (1)**
13:8
**couple (1)**
6:6
**course (1)**
3:17
**Court (67)**
3:3,5,12,17,23;4:2,
17,19;5:12,14,17,25;
6:15,17,19;8:7;9:5,7,
14;11:12;12:3,19,22,
24;13:20,20;14:12;
15:2,4,10,17;16:23,25;
17:3,18,19;18:20;
19:13,15,17,19,25;
20:7,13,15,18;21:6,8,
16,18,24;22:2,4,17,22;
23:8,11,18,24;24:2,4,
11,15,25;25:3,9,14
**courtesy (1)**
14:23
**courthouse (1)**
9:13
**courtroom (2)**
18:3;21:2
**covers (1)**
6:7
**create (1)**
6:3
**critical (3)**
5:11;11:9;15:20
**culminated (1)**
12:13
**culpability (1)**
13:16

**D**

**date (1)**
19:7
**day (1)**
21:14
**days (4)**
3:19;6:6;10:5;18:7
**deadline (1)**

21:1
**dealing (1)**
11:14
**debate (2)**
5:18;14:2
**debtor (2)**
11:14;13:12
**decide (3)**
10:23;24:19,21
**decided (1)**
10:13
**deciding (1)**
17:20
**declaration (1)**
14:21
**defer (1)**
5:19
**definition (1)**
18:24
**Delaware (1)**
3:18
**deliverables (3)**
11:8;22;18:17
**deluged (1)**
4:6
**demand (1)**
22:23
**demonstrating (1)**
5:11
**deny (1)**
10:1
**deposed (2)**
4:15;8:4
**deposing (1)**
8:9
**deposition (3)**
7:14,23;14:12
**deputy (2)**
18:3;21:2
**despite (1)**
16:4
**difference (2)**
17:11,11
**different (1)**
9:22
**difficult (1)**
6:2
**digest (1)**
9:23
**diligently (1)**
7:11
**directly (1)**
5:10
**discovery (8)**
6:7;9:11;10:4;14:24;
15:21;16:1;17:24;22:7
**discrete (1)**
22:7
**discuss (1)**
23:4
**discussed (1)**
7:22
**discussion (5)**

8:4;14:19;22:16,19;
23:3
**discussions (1)**
22:13
**dispute (5)**
5:5,9;6:7;14:15;22:7
**disputes (5)**
7:18;9:11;17:24;
19:2;21:12
**disregard (1)**
13:5
**District (4)**
9:17;13:20;17:1,18
**document (5)**
7:7;11:7;14:23;
24:12,16
**documentation (1)**
5:10
**documents (21)**
4:24;7:6,17;8:1,3,9,
11,12,14,15,19;9:4;
11:4,5,11,25;13:4;
14:14;16:12;23:1,4
**done (1)**
18:11
**down (2)**
4:14;14:15;17:14;
25:16
**dropped (1)**
6:6
**dropping (1)**
14:23
**duty (1)**
12:1

**E**

**efforts (1)**
5:2
**eighty-four-page (1)**
14:21
**either (2)**
12:6;18:22
**eleven-page (1)**
6:5
**eleventh-hour (1)**
11:6
**else (4)**
14:3;18:1;19:9,20
**email (7)**
4:13;9:21;11:6;18:2,
15,21;15,15
**emails (3)**
5:8;8:20;10:6
**end (1)**
24:20
**ended (1)**
4:5
**engaged (2)**
5:6,11
**essentially (1)**
4:6
**establish (1)**

13:17
**even (9)**
4:14;12:8;13:7,20;
16:17;17:2,24;18:17;
22:11
**everyone (2)**
19:20;25:9
**ex (4)**
4:22;6:3,5;9:1
**exactly (2)**
24:23,23
**examination (8)**
4:23;5:9;8:17;11:16;
13:5;16:15;17:12;20:4
**examine (1)**
8:11
**examined (2)**
5:18,19
**example (1)**
9:15
**Excuse (1)**
20:11
**Exhibit (3)**
8:25;9:2,25
**Exhibits (1)**
9:1
**exist (1)**
13:7
**existence (1)**
13:9
**existing (2)**
8:20,23
**expect (2)**
9:15
**expectation (1)**
18:9
**expecting (3)**
17:13;18:7,15
**explaining (1)**
24:1
**extent (3)**
11:19;21:11;24:8

**F**

**fact (4)**
6:11;7:13,20;23:5
**facts (1)**
13:17
**falls (1)**
7:7
**far- (1)**
13:22
**faster (1)**
7:9
**federal (1)**
13:20
**feelings (1)**
3:15
**felt (1)**
6:9
**few (1)**
18:7

**file (1)**
20:2
**filed (1)**
23:7
**filing (2)**
6:3;10:1
**find (1)**
13:14
**fine (3)**
12:17;13:13;14:13
**Fire (5)**
6:20;13:15;15:11;
16:22;24:8
**firm (7)**
5:6;6:13;7:21;11:13,
14,14;13:6
**firms (1)**
6:14
**first (6)**
8:14;14:18;15:22;
16:24,25;19:2
**fly (1)**
9:12
**follow (1)**
4:10
**following (2)**
5:1;22:24
**forever (1)**
9:18
**formality (1)**
17:17
**forth (2)**
5:8,8
**forward (1)**
13:13
**four (2)**
10:5;16:2
**fourth (1)**
10:5
**frame (1)**
16:11
**FRANCISCO (1)**
3:1
**frankly (1)**
14:18
**FRIDAY (3)**
3:1;19:10;20:16
**front (1)**
11:18
**frustrated (1)**
10:19
**frustrating (1)**
8:8
**frustration (1)**
13:10
**full (1)**
12:17
**fund (1)**
13:15
**further (1)**
21:21
**future (1)**
21:10

Min-U-Script®

Case: 19-30088    Doc# 10951    Filed: 07/19/21    Entered: 07/19/21 11:32:26    Page 28
of 32

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(2) convenience - future

## G

**generated (1)**
11:8
**given (4)**
12:24;13:1;16:9;
23:6
**good (9)**
3:8,10,16,22,23;
14:21;19:1;25:2,9
**grant (1)**
4:9
**granted (2)**
16:15;17:1
**grants (1)**
14:12
**great (2)**
19:23;22:1
**guess (2)**
10:3;24:21
**guidance (4)**
11:18;14:7,10;22:8
**guilty (1)**
17:23

## H

**happen (1)**
13:11
**happened (2)**
6:5;9:13
**happening (1)**
17:7
**happy (3)**
6:23;8:1;24:7
**hard (1)**
11:15
**hearing (10)**
10:20;18:2,7,8;19:6;
20:20,20;21:21;24:11;
25:14
**heavily (1)**
8:21
**help (1)**
13:14
**helpful (2)**
12:5;22:8
**himself (1)**
13:7
**hired (1)**
11:14
**history (5)**
6:25;7:12;9:10,21;
12:16
**hit (1)**
7:3
**Hold (1)**
9:5
**home (2)**
3:17;9:20
**homework (1)**
21:19

**honest (1)**
3:16
**Honor (38)**
3:10,14,22;4:16,25;
5:23;6:1,10;7:10;8:5;
11:3,18,20,24;12:10,
21;14:6,10;15:3,9;
16:21;19:22,23;20:11,
12;21:4,5,9,23;22:3,5;
23:22;24:6,24;25:1,6,8,
13
**honoring (1)**
22:22
**Honor's (1)**
16:8
**Hopefully (1)**
21:11
**hoping (1)**
11:18
**hurt (1)**
3:15

## I

**idea (1)**
7:19
**identification (1)**
23:2
**identify (3)**
22:12;23:16;24:16
**imagine (2)**
8:8;10:16
**immediate (1)**
17:12
**immediately (1)**
16:20
**important (1)**
6:12
**imposing (1)**
18:10
**including (1)**
9:4
**indicated (2)**
11:24;16:17
**informed (1)**
22:8
**inquire (1)**
13:16
**inquiries (1)**
12:14
**instance (2)**
14:18;15:22
**instantly (1)**
9:24
**instead (1)**
4:10
**instincts (2)**
12:24,25
**institutional (1)**
7:12
**insult (1)**
10:11
**integrity (1)**

13:3
**intention (2)**
11:4;16:8
**interference (4)**
6:16;8:10;17:14;
23:11
**internet (1)**
10:18
**interrupt (1)**
5:23
**into (1)**
10:5
**investigating (1)**
12:1
**invite (1)**
17:21
**invocation (1)**
24:9
**involve (1)**
17:2
**involved (5)**
6:13;8:21;22:18;
23:15;24:7
**irrelevant (5)**
14:4,4,4,5,5
**issue (15)**
9:14;11:23;14:13;
16:12,12;17:7,10,10,
16,19;20:4;21:11;22:7,
14;23:14
**issued (3)**
17:3,3,4
**issues (4)**
7:6;11:9,15;21:15

## J

**job (3)**
13:14;18:11;19:4
**join (1)**
21:19
**joining (1)**
3:5
**joint (2)**
21:13,20
**jointly (1)**
22:1
**judge (2)**
10:9;16:24
**judicial (1)**
17:20
**JULY (2)**
3:1;16:6
**juncture (1)**
15:20
**June (3)**
7:21;15:23;16:2

## K

**keep (5)**
3:8;10:7;15:4,6;
17:25

**Kelly-Kilgore (29)**
3:20,22,24;4:16,18,
20;5:13,16,22;8:5,13;
9:6;11:2,17;15:3,16,
18;18:19;19:22;20:6;
21:3;22:3,6,25;23:10;
24:3,23;25:6,12
**kids (1)**
13:6
**Kilgore (18)**
6:24;7:9,21;9:25;
10:24;14:1,22;15:11,
15;17:22;18:5;19:21,
25;20:21,23;21:19;
22:24;24:22
**Kilgore's (1)**
6:13
**kind (1)**
18:6
**knows (2)**
11:20;18:22

## L

**lack (1)**
16:9
**language (1)**
16:5
**large (1)**
7:12
**last (5)**
4:5,12;5:1;10:5;18:3
**later (3)**
5:20;9:15;14:14
**law (2)**
11:13;13:6
**lawyers (3)**
10:17;17:3,19
**Lay (6)**
4:15;5:10;8:16,17,
21;17:13
**Lay's (4)**
4:23;7:22;16:15;
20:4
**least (5)**
11:16;12:1;22:14;
23:3;24:16
**leave (1)**
14:12
**lengthy (1)**
16:19
**letter (3)**
7:21;15:24;16:2
**letters (3)**
5:7;17:25,25
**likely (1)**
16:19
**Likewise (1)**
25:12
**limit (1)**
20:5
**list (6)**
18:6,14;21:12,13,20,

25
**literally (1)**
23:14
**litigators (2)**
13:20,21
**little (1)**
7:18
**LLP (1)**
3:11
**log (3)**
23:8,12;24:1
**long (5)**
9:13,21;10:24;17:16;
18:23
**look (3)**
8:25;9:9;10:14
**looking (2)**
20:3,20
**lot (2)**
7:12;9:10
**love (1)**
8:13
**luck (1)**
19:3

## M

**makes (4)**
15:11;16:18;17:10,
11
**making (2)**
3:20;13:25
**many (3)**
4:4,11;5:7
**March (1)**
4:25
**matter (3)**
3:4;5:6;13:22
**matter's (1)**
12:6
**Matthew (1)**
3:11
**may (7)**
5:24;8:5;15:25;
16:17,17;21:12;22:8
**maybe (4)**
3:19;4:8;18:8,9
**mean (15)**
4:2,7;5:18;6:20;8:8;
9:18,25;10:25;12:5,10;
17:8,8;21:6;22:19;
23:14
**meaningful (1)**
22:15
**meantime (2)**
16:14,21
**Meanwhile (1)**
11:7
**meet (13)**
4:3,9,21;6:23;7:16;
12:4,12;14:9;16:16;
17:13,21;21:13;23:14
**meet-and- (1)**
**meet-and-**

16:19
**meet-and-confer (2)**
5:2;22:13
**meeting (8)**
6:13,25;7:4,24;8:2;
14:19,25;16:11
**met (1)**
8:24
**mind (3)**
14:2;15:4,6
**minute (5)**
4:5,13;18:4;20:15,15
**misplaced (1)**
13:1
**misrepresentations (1)**
14:20
**miss (1)**
3:17
**missed (1)**
3:15
**mixes (1)**
19:9
**Monday (2)**
20:1,14
**months (3)**
4:21;6:8;7:4
**more (11)**
7:18;8:1,8;10:22,22;
11:20;14:4;17:20;
20:24;22:6;24:7
**morning (6)**
3:8,10,14,22,23;4:1
**most (1)**
17:4
**motions (1)**
4:10
**move (2)**
7:11;16:18
**moving (4)**
7:13,25;12:18;13:13
**mutual (2)**
20:8;21:1
**myself (1)**
17:2

**N**

**names (1)**
22:15
**narrow (1)**
17:14
**necessary (3)**
14:15;17:15;22:13
**need (5)**
11:23;18:20;20:25;
21:21;24:5
**needs (2)**
22:18;23:15
**neither (1)**
17:23
**New (3)**
3:18;10:6;13:6
**next (2)**

19:4;21:14
**night (2)**
3:17;19:6
**none (2)**
6:21;18:9
**Northern (1)**
9:17;17:1
**note (1)**
6:12
**notice (1)**
9:17
**numbers (1)**
22:15

**O**

**objection (1)**
16:17
**obvious (2)**
8:10;9:10
**o'clock (3)**
19:16,17,19
**off (1)**
13:24
**off-limits (1)**
15:10
**one (16)**
3:19,19,25;9:5,7;
10:5,8;13:9;15:5;17:2,
6;19:3,4;22:6,24;24:17
**only (2)**
7:4;18:25
**onto (1)**
13:25
**oOo- (1)**
3:2
**opportunity (3)**
11:23,25;21:14
**opposed (1)**
7:14
**opposition (1)**
16:18
**order (6)**
3:3;5:1;9:16;17:12,
17;20:4
**orders (5)**
4:9;9:14;10:15;13:2;
17:1
**Orsini (14)**
3:12,14;9:10;13:8;
22:17;23:3,20;24:2,4,6,
14;25:1,10,13
**others (1)**
17:22
**ought (3)**
7:17;8:4;15:7
**out (7)**
7:18;10:4;11:5;
13:14;18:13;19:8;21:1
**outside (2)**
10:12;11:13
**over (2)**
12:16;16:16

own (2)
20:10,24

**P**

**pages (4)**
4:13,13;7:2;19:5
**papers (2)**
5:15;14:20
**Parada (2)**
19:7;25:14
**part (3)**
8:17;11:8;12:1
**parte (4)**
4:22;6:4,5;9:1
**participating (1)**
25:15
**parties (5)**
4:20;6:11;16:11,16;
21:13
**parties' (2)**
5:4,9
**partners (1)**
3:25
**past (1)**
6:8
**Pause (1)**
9:8
**pending (3)**
7:7,19;20:8
**people (3)**
9:18;17:25;18:1
**perhaps (2)**
9:11;16:24
**person (1)**
10:13
**personally (1)**
5:6
**perspective (2)**
6:11;24:10
**PG&E (6)**
3:4;5:10;9:23;19:8;
22:11;24:13
**PG&E's (3)**
23:4,15,17
**phonetic (1)**
4:15
**pin (1)**
14:11
**place (1)**
7:14
**play (1)**
7:17
**please (1)**
9:5
**point (11)**
10:25;12:8;13:1;
15:6,7,14,19;18:21;
19:3;24:17,17
**points (2)**
8:6;16:3
**position (2)**
7:25;12:11

**Power (1)**
11:10
**practical (3)**
12:9;14:8,9
**practice (2)**
4:8;9:17
**practicing (1)**
16:25
**preclude (1)**
23:20
**predecessor (2)**
5:3;6:14
**preliminary (1)**
11:16
**prepare (2)**
18:4,6
**pressing (1)**
9:3
**presume (2)**
3:20;4:12
**presumption (1)**
13:19
**Pricewaterhouse (2)**
10:11;22:22
**PricewaterhouseCoopers (1)**
3:11
**principal (1)**
19:20
**prior (7)**
8:25;9:2,3;12:12,14;
18:7;20:1
**privilege (9)**
22:10,19;23:5,8,12,
13,19;24:9,19
**privileged (6)**
14:3;23:1,19,21;
24:13,13
**problem (5)**
3:10;6:24;17:5;
20:19;24:9
**problems (1)**
25:4
**procedure (1)**
6:4
**proceed (1)**
11:24
**proceeding (1)**
23:7
**proceedings (1)**
25:17
**process (5)**
7:11,17;10:9;12:17;
16:20
**produce (5)**
7:5;8:1;14:15;23:12;
24:17
**produced (1)**
7:1
**production (2)**
11:7;23:1
**productions (1)**
7:2
**professional (3)**

11:13;13:2;14:23
**professionals (2)**
10:12,15
**program (2)**
11:10,10
**progress (5)**
4:12,21;6:12;15:1;
16:9
**promised (1)**
11:6
**promoting (1)**
18:1
**prompt (1)**
17:23
**propose (2)**
12:4;23:14
**prospect (2)**
7:22;21:9
**protecting (1)**
10:9
**protective (2)**
10:15;13:2
**provide (2)**
22:14;24:1
**provided (2)**
8:21;14:11
**Public (1)**
11:10
**publicly (1)**
23:7
**purpose (2)**
8:17;14:17
**purposes (2)**
11:16;13:5
**pursue (1)**
16:22
**put (3)**
6:9;14:11;22:1
**putting (1)**
14:20
**PwC (13)**
4:24;5:11;8:4;9:23;
11:8;13:15;14:14;19:2;
22:11;24:7,12,12,16
**PwC's (7)**
8:21;11:4,19;16:7;
17:8;22:9,11

**Q**

**quash (2)**
4:10;16:18

**R**

**raised (2)**
7:21;8:6
**rather (2)**
10:20;22:11
**reach (1)**
11:19
**reaching (2)**
6:25;13:23

Case: 19-30088    Doc# 10951    Filed: 07/19/21    Entered: 07/19/21 11:32:26    Page 30
of 32

**read (4)**
3:18;4:14;10:6;
13:10
**reading (1)**
18:2
**realize (1)**
23:18
**really (7)**
7:16;14:3,4,5,21;
19:3,8
**reason (3)**
5:19;15:21;23:5
**receive (1)**
16:3
**received (1)**
11:8
**receiving (1)**
15:24
**recognize (1)**
18:16
**recognized (1)**
3:24
**reference (1)**
15:11;16:18;18:17
**refine (2)**
17:14;21:18
**regarding (1)**
8:2
**relationships (1)**
9:23
**relevance (5)**
8:19;10:10,12;12:25;
13:24
**relevant (6)**
10:15;11:12,13,16;
13:5;15:13
**remember (1)**
13:8
**report (1)**
20:25
**representations (1)**
16:4
**represented (1)**
12:14
**request (4)**
8:16;12:11;14:12;
16:14
**requested (3)**
9:16;14:18;16:1
**requests (1)**
8:15
**reset (1)**
7:3
**resign (2)**
11:1,3
**resolution (1)**
16:13
**resolve (2)**
5:9;7:18
**resolved (2)**
7:8;12:13
**respect (3)**
7:1,17;22:7

**respond (2)**
8:5;23:21
**response (2)**
6:3,9;15:24;16:3,6
**rest (1)**
9:11
**review (1)**
12:1
**revisit (1)**
7:19
**right (5)**
3:5;13:16;20:16;
24:21;25:1
**road (1)**
14:16
**routinely (2)**
9:14;16:25
**Rule (1)**
7:15
**ruling (2)**
12:7,8

**S**

**Safety (2)**
11:10,10
**SAN (1)**
3:1
**satisfied (1)**
12:15
**saying (2)**
17:16;23:21
**schedule (2)**
18:12;20:9
**scheduled (1)**
20:9
**scope (3)**
7:6,15;8:23
**second (3)**
9:5,7;15:5
**seek (2)**
5:9;16:18
**seeking (1)**
4:24
**seem (3)**
11:12,13;13:1
**seems (2)**
4:14;15:12
**sense (2)**
10:19;21:17
**separate (2)**
4:24;8:14
**set (1)**
7:23
**seven (1)**
7:2
**short (1)**
21:15
**shortly (1)**
14:24
**shows (1)**
18:2
**shut (2)**

11:5;25:15
**Shutoff (1)**
11:10
**side (1)**
12:6
**sides (1)**
10:16
**similarly (1)**
5:4
**simply (1)**
18:8
**single (2)**
6:7;11:7
**solution (1)**
12:9;14:8,9
**solve (1)**
5:4
**somebody (2)**
18:1,1
**someone (1)**
22:18
**Sorry (5)**
3:8;4:4;5:23;23:22;
25:4
**sort (1)**
23:2
**sought (1)**
8:19
**sound (2)**
24:5,6
**Sounds (2)**
25:1,2
**speak (2)**
23:20;24:18
**special (1)**
13:22
**specific (3)**
8:7;14:2;22:12
**specifically (1)**
10:22
**speech (1)**
10:24
**start (4)**
4:2;11:3;13:19;
15:13
**started (2)**
16:20,25
**starting (4)**
12:16;15:6,7,14
**state (3)**
3:9;13:20;17:18
**statement (3)**
20:2;21:20,21
**status (2)**
12:12;20:25
**steroids (2)**
13:18;17:6
**still (6)**
7:6,8,8,19;18:6;20:3
**stipulations (1)**
13:2
**story (1)**
24:20

**string (2)**
18:2,15
**stuck (1)**
6:22,22
**studying (1)**
10:6
**stuff (3)**
10:14,17;18:21
**subject (1)**
23:5
**submit (1)**
21:13
**submitted (1)**
12:7
**subpoena (15)**
4:24;5:2;7:7,16,17;
8:3,15,16,20,23;14:13;
16:15;17:4,19,21
**substantial (1)**
4:21
**Such- (1)**
9:25
**suggest (2)**
19:11;21:12
**support (1)**
13:23
**supposed (1)**
10:22
**suppression (1)**
15:11
**sure (6)**
4:8;12:8;13:25;
14:19;21:25;22:23
**switched (1)**
6:21

**T**

**talk (3)**
9:25;14:13,14
**talking (4)**
6:8;7:8;18:18;21:14
**TCC (1)**
5:3
**terms (1)**
8:23
**thirty (1)**
19:5
**Thomas (1)**
25:15
**thought (2)**
4:3;20:16
**three (3)**
18:8,13;19:7
**throughout (1)**
4:21
**Thursday (3)**
20:17,18,21
**times (1)**
4:4
**timetable (2)**
13:25;15:20
**today (3)**

10:20;17:10;18:12
**today's (1)**
18:8
**together (1)**
22:1
**told (2)**
8:10;15:23
**took (1)**
12:17
**trains (1)**
4:13
**tremendous (1)**
4:12
**tried (1)**
7:3
**trust (4)**
4:23;12:2;16:21;
24:8
**trustee (8)**
3:21;6:20;12:14;
13:7,16;14:11;19:2;
24:12
**trustee's (4)**
10:16;13:9,14,23
**try (3)**
9:23;13:14;17:21
**trying (5)**
6:2;15:17;16:7;
18:22,22
**tsunamis (1)**
10:3
**two (11)**
6:8,14;7:4;8:14;
13:9;16:1;17:10;18:8,
13,25;24:17
**two-page (1)**
9:12
**two-paragraph (1)**
9:12
**two-week (1)**
16:10

**U**

**Um-hum (2)**
19:18;24:14
**unable (3)**
5:4;11:19;16:22
**under (2)**
7:7;8:19
**understands (1)**
6:2
**understood (6)**
7:23;12:21;14:6;
15:9;18:19;21:3
**Unfortunately (5)**
4:20;5:4;6:5;8:24;
11:22
**unless (2)**
5:19;15:10
**unlike (1)**
13:19
**unnecessarily (1)**

Case: 19-30088    Doc# 10951    Filed: 07/19/21    Entered: 07/19/21 11:32:26    Page 31
of 32

16:9
**unwilling (1)**
  22:11
**up (8)**
  4:5;10:7;13:3,15;
  17:25;18:2;19:9;23:14
**urge (1)**
  13:24
**use (2)**
  13:23;14:21
**used (1)**
  16:5
**useful (1)**
  18:5

## V

**versus (1)**
  13:7
**Victim (1)**
  24:8
**victims (2)**
  13:15;16:22

## W

**Wait (1)**
  20:15
**waiting (1)**
  3:8
**wasting (1)**
  16:8
**watch (1)**
  13:12
**way (7)**
  10:8;12:8;17:16,23;
  18:4;20:10,23
**Wednesday (3)**
  11:6;16:4;22:9
**week (2)**
  13:10;21:22
**weekend (1)**
  25:9
**weeks (7)**
  13:9;16:1;17:10;
  18:8,13,13;19:8
**well-considered (1)**
  17:9
**whatnot (1)**
  14:21
**what's (6)**
  7:1;10:24;14:8;
  19:10;23:16;24:1
**Whereupon (1)**
  25:17
**who's (1)**
  8:11
**Wildfire (3)**
  11:9,15;15:12
**willing (1)**
  18:23
**win (1)**
  17:17

**wish (1)**
  21:20
**withheld (2)**
  23:16;24:1
**withholding (1)**
  22:9
**within (1)**
  9:2
**without (3)**
  9:16;11:24;20:10
**witness (2)**
  8:9,11
**work (7)**
  5:13;6:3;11:9;16:7;
  19:19;21:1,23
**working (3)**
  7:10;9:20;10:16
**world (1)**
  11:23
**worry (2)**
  10:10;18:10
**write (1)**
  17:25
**writing (1)**
  6:9
**written (1)**
  15:25
**wrote (1)**
  16:2

## Y

**year (5)**
  5:1;6:25;11:20;
  12:17;13:9
**York (1)**
  3:18

## 0

**01:18:47 (1)**
  25:17

## 1

**1 (1)**
  9:1
**1,500 (1)**
  7:2
**10 (5)**
  19:15,16,17,19;
  20:21
**10:30 (1)**
  19:17
**16 (1)**
  3:1
**18th (2)**
  7:21;16:2
**1st (1)**
  20:1

## 2

**2 (1)**
  9:1
**2004 (12)**
  4:9;7:15;8:20;9:14,
  16;10:10;13:17,22;
  16:25;17:3,6,7
**2020 (1)**
  4:25
**2021 (1)**
  3:1
**28th (1)**
  15:25
**2nd (6)**
  20:14,19,19,22;
  21:20,21

## 3

**30th (1)**
  7:3

## 5

**5 (2)**
  19:13,14
**5th (6)**
  19:12,19;20:16,17,
  18,21

## 6

**6 (3)**
  8:25;9:2;19:13

## 9

**9th (1)**
  16:6

Min-U-Script®

Case: 19-30088   Doc# 10951   Filed: 07/19/21   Entered: 07/19/21 11:32:26   Page 32
of 32