1  THOMAS G. MOUZES (SBN 99446)
   MARK GORTON (SBN 99312)
2  ROBERT D. SWANSON (SBN 162816)
   **BOUTIN JONES INC.**
3  555 Capitol Mall, Fifteenth Floor
   Sacramento, CA 95814
4  Telephone: (916) 321-4444
5  Email: tmouzes@boutinjones.com
           mgorton@boutinjones.com
6          rswanson@boutinjones.com

7  LISA S. GAST *(pro hac vice)*
8  **DUNCAN, WEINBERG, GENZER & PEMBROKE, P.C.**
   1667 K Street NW, Suite 700
9  Washington, DC 20006
   Telephone: (202) 791-3601
10 Email: lsg@dwgp.com

11
   BRIAN DOYLE (SBN 112923)
12 City Attorney
   **CITY OF SANTA CLARA**
13 1500 Warburton Avenue
   Santa Clara, CA  95050
14 (508) 615-2234
15 BDoyle@SantaClaraCA.gov

16 *Attorney for Creditor and Party-in-Interest*
   *CITY OF SANTA CLARA dba SILICON VALLEY POWER*
17

18              UNITED STATES BANKRUPTCY COURT

19              NORTHERN DISTRICT OF CALIFORNIA

20                  SAN FRANCISCO DIVISION

| | |
|---|---|
| 21  In re | Case Nos. 19-30088 DM (Lead Case) |
| | 19-30089 DM |
| 22  PG&E CORPORATION | Chapter 11 |
|     -and- | Jointly Administered |
| 23  PACIFIC GAS AND ELECTRIC | |
|     COMPANY, | **CITY OF SANTA CLARA DBA SILICON** |
| 24              Debtors. | **VALLEY POWER'S MOTION TO COMPEL** |
| |  **ASSUMPTION OR REJECTION OF** |
| 25  ☐ Affects PG&E Corporation | **EXECUTORY CONTRACT CONCERNING** |
| | **THE GRIZZLY DEVELOPMENT AND** |
| 26  ☑ Affects Pacific Gas and Electric Company | **MOKELUMNE SETTLEMENT** |
| | **AGREEMENT** |
| 27  ☐Affects both Debtors. | |
| | |
| 28  * All papers shall be filed in the Lead Case | |

No. 19-30088 DM

| | |
|---|---|
| Date: | September 14, 2021 |
| Time: | 10:00 a.m. |
| Courtroom: | 17 |

**Response Deadline:  August 31, 2021,
4:00 p.m. (Pacific Time)**

| | |
|---|---|
| Place: | **Telephone/Video Appearances Only** |
| | United States Bankruptcy Court |
| | 450 Golden Gate Ave., 16th Floor |
| | San Francisco, CA 94102 |
| Judge: | Hon. Dennis Montali |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. JURISDICTION, VENUE AND CORE STATUS ................................................... 6

II. ISSUES PRESENTED........................................................................................ 7

III. BACKGROUND ................................................................................................ 7

    A. THE GDMSA ........................................................................................ 7

    B. THE OPERATING AGREEMENT AND THE RELICENSING COST SHARING AGREEMENT FOR GRIZZLY. ................................................................ 10

    C. PG&E TREATED THE GDMSA AS AN EXECUTORY CONTRACT IN ITS FIRST CHAPTER 11 ........................................................................... 11

    D. PG&E'S TREATMENT OF THE GDMSA DURING THIS CHAPTER 11 ............ 11

        1. PG&E Identified The GDMSA As An Executory Contract ........................... 11

        2. During PG&E II, The GDMSA Is Amended................................................. 13

        3. PG&E Treated The GDMSA As An Executory Contract For Assumption Until PG&E Had To Address The Cure Amount. ...................... 14

        4. Once The Cure Amount And Adequate Assurance of Future Performance Issues Were Raised by Santa Clara, PG&E Relegates The GDMSA To No Man's Land .......................................................... 17

        5. The GDMSA Should Be Assumed Or Rejected By PG&E And Not Relegated To No Man's Land ......................................................... 19

IV. ARGUMENT.................................................................................................... 20

    A. THE GDMSA IS AN EXECUTORY CONTRACT WHICH PG&E MUST EITHER ASSUME OR REJECT................................................................. 20

        1. The GDMSA Meets The *Countryman* Definition Of An Executory Contract......................................................................................... 21

        2. PG&E Is Judicially Estopped From Denying The GDMSA Is An Executory Contract And Bound By Its Judicial Admissions........................... 24

        3. For These Reasons, The GDMSA Is An Executory Contract Which Must Be Either Assumed Or Rejected By PG&E To Protect The Rights Of Santa Clara ...................................................................... 26

    B. THE PLAN PROVIDES THAT THE CITY'S GDMSA-RELATED CLAIMS ARE NOT AGAINST THE FIRE VICTIM TRUST .......................................... 27

V. CONCLUSION.................................................................................................. 27

1  **TABLE OF AUTHORITIES**

2                                                                      **Page**

3  **Cases**

4  *Ah Quin v. Cty. Of Kauai Dep't of Transp.*,
      733 F.3d 267 (9th Cir. 2013) ............................................................... 24

5
   *American Title Insurance Co. v. Lacelaw Corp.*,
6      861 F.2d 224 (9th Cir. 1988) ............................................................... 25

7  *Benevides v. Alexander (In re Alexander)*,
      670 F.2d 885 (9th Cir. 1982) ............................................................... 23

8
   *Brown v. Grimes*,
9      192 Cal.App.4th 265 (2011) ............................................................... 23

10 *Cusano v. Klein*,
      264 F.3d 936 (9th Cir. 2011) ............................................................... 25

11
   *Dunkley v. Rega Props., Ltd. (In re Rega Props., Ltd.)*,
12     894 F.2d 1136 (9th Cir.1990) ............................................................. 22

13 *Ely v. Bottini*,
      179 Cal. App. 2d 287 (1960) .............................................................. 23

14
   *Hall v. Perry (In re Cochise College Park, Inc.)*,
15     703 F.2d 1339 (9th Cir.1983) ............................................................. 22

16 *In re Aslan*,
      909 F.2d 367 (9th Cir. 1990) .............................................................. 23

17
   *In re Duplante*,
18     215 B.R. 444 (9th Cir. BAP 1997) ..................................................... 25

19 *In re PG&E Corp.*,
      603 B.R. 471 (Bankr. N.D. Cal. 2019) ............................................... 24

20
   *In re Point Ctr. Fin., Inc.*,
21     957 F.3d 990 (9th Cir. 2020) .............................................................. 22

22 *In re Robert L. Helms Constr. & Dev. Co., Inc.*,
      139 F.3d 702 (9th Cir. 1998) (citing Vern Countryman, *Executory Contracts in*
23     *Bankruptcy: Part 1*, 57 MINN. L. REV. 439, 460 (1973)................................. 21

24 *Mission Product Hldgs., Inc. v. Tempnology, LLC*,
      —— U.S. ——, 139 S.Ct. 1652 L.Ed. 2d 876 (2019)................................. 22, 23

25
   *NLRB v. Bildisco & Bildisco*,
26     465 U.S. 513 (1984)........................................................................... 22

27 *Pacific Express, Inc. v. Teknekron Infoswitch Corp. (In re Pacific Express, Inc.)*,
      780 F.2d 1482 (9th Cir. 1986) ............................................................. 21

28

*Range Rider Partners Ltd. P'ship v. Range Rider Estates,*
 34 F. Appx. 385 (9th Cir. 2002) (citing *In re Robert L. Helms*, 139 F.3d at 705)........................... 22

*Terrell v. Albaugh (In re Terrell),*
 892 F.2d 469 (6th Cir. 1989) ........................................................................................................ 22

*Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.),*
 973 F.2d 1065 (3d Cir. 1992) (*citing* S. Rep. No. 989, 95th Cong., 2d Sess. 59 (1978),
 reprinted in 1978 U.S.C.C.A.N. 5787, 5845) ................................................................................ 21

**Statutes**

11 U.S.C.
 Section 365 ..................................................................................................................................... 6
 Section 365(d)(2) .......................................................................................................................... 20
 Section 1107(a) ............................................................................................................................. 20

28 U.S.C.
 Section 157 ..................................................................................................................................... 6
 Section 157(b).................................................................................................................................. 7
 Section 1334 .................................................................................................................................... 6
 Section 1408 .................................................................................................................................... 7
 Section 1409 .................................................................................................................................... 7

Cal. Civ. Code
 Section 885.020 .............................................................................................................................. 9

Federal Rules of Bankruptcy Procedure,
 Rule 6006........................................................................................................................................ 6

**Other Authorities**

1 B. Witkin, Summary of California Law,
 Contracts §853 (10th ed. 2005)..................................................................................................... 23

Bankruptcy Local Rules of the United States District Court for the Northern District of California,
 Rule 5011-1(a) ................................................................................................................................ 7
 Rule 6006-1..................................................................................................................................... 6

1       The City of Santa Clara dba Silicon Valley Power ("Santa Clara" or "City") respectfully

2  submits this *Motion to Compel Assumption or Rejection of Executory Contract concerning the Grizzly*

3  *Development and Mokelumne Settlement Agreement* ("Motion"). The Motion seeks an order

4  compelling Pacific Gas and Electric Company ("PG&E," the "Utility" or the "Debtor") to assume or

5  reject the executory contract or unexpired lease referred to as the Grizzly Development and

6  Mokelumne Settlement Agreement, as amended ("GDMSA").

7       The Motion is based on Section 365 of the Bankruptcy Code, Rule 6006 of the Federal Rules

8  of Bankruptcy Procedure, Rule 6006-1 of the Bankruptcy Local Rules of the United States District

9  Court for the Northern District of California and the Court's authority over unresolved Contract

10  Assumption or Rejection Disputes reserved in Article VIII of the Debtors' and Shareholder

11  Proponents' Joint Chapter 11 Plan of Reorganization dated June 19, 2020 (Dkt. 8048) (as

12  supplemented, "Plan") and retained in paragraphs 32 through 35 and 78 of the *Order Confirming*

13  *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated June 19, 2020*

14  (Dkt. 8053) ("Confirmation Order"). This Motion is related to and supplements the *Objection to Cure*

15  *Amount and Request for Adequate Assurance of Future Performance by Counterparty City of Santa*

16  *Clara dba Silicon Valley Power* (Dkt. 7208), concerning PG&E's treatment of the GDMSA and Santa

17  Clara's *Supplemental Objection to Plan Confirmation Based on Debtors' May 22, 2020 Amendment*

18  *of Schedule of Executory Contracts to be Assumed* (Dkt. 7691), and constitutes a Contract Assumption

19  or Rejection Dispute that remains unresolved, as provided in paragraph 32(c) of the Confirmation

20  Order.

21       The Motion is supported by the Declaration of Steve Hance ("Hance Dec."), the Declaration

22  of Mark Gorton ("Gorton Dec."), the Request for Judicial Notice ("RJN") and the Exhibits thereto, all

23  other pleadings and papers submitted herewith, and the pleadings, filings and documents in the

24  Debtors' cases. The undersigned may be contacted concerning resolution of this Motion. In support of

25  its Motion, Santa Clara respectfully represents as follows:

26           **I.    JURISDICTION, VENUE AND CORE STATUS**

27       The Court has jurisdiction of this Motion pursuant to Section 11.1 of the Plan, Paragraph 78

28  of the Confirmation Order, 28 U.S.C. sections 157 and 1334, the *Order Referring Bankruptcy Cases*

{D0458286.DOCX / 1}

*and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## II.    ISSUES PRESENTED

Is the GDMSA an executory contract?

Is the Debtor judicially estopped from denying the GDMSA is an executory contract?

Is the Debtor required to assume or reject the GDMSA?

Santa Clara respectfully submits that the GDMSA is an executory contract under applicable bankruptcy law, that Debtor is judicially estopped and is barred by its judicial admissions from denying the GDMSA is an executory contract under the facts of this case, and that Debtor is required to promptly assume or reject the GDMSA in accordance with applicable bankruptcy law and its confirmed Plan.

## III.    BACKGROUND

The City's electric utility department, doing business as Silicon Valley Power, is a municipal utility that serves the electricity requirements of all those needing electricity in the City. One of the City's electric power resources is the Grizzly Hydroelectric Project ("Grizzly") which generates electric power for delivery to and use by Santa Clara. The Grizzly Hydroelectric Project is located in Plumas County, California.

### A.    THE GDMSA

Santa Clara's rights with regard to Grizzly are based on the Grizzly Development and Mokelumne Settlement Agreement ("GDMSA") entered into by PG&E and Santa Clara (the "Parties") on March 8, 1990, and most recently filed by PG&E at the Federal Energy Regulatory Commission ("FERC") as a stand-alone agreement in FERC Docket No. ER17-1752-000, effective August 1, 2017.[1] (Hance Dec. para. 9, RJN **Exhibit 1**.)

---

[1] The GDMSA was entered into by PG&E and Santa Clara as a settlement of certain issues between the two entities, pursuant to which Santa Clara would become a joint licensee in an existing hydroelectric license (the "Bucks Creek Project," FERC Project No. 619), which had been amended by FERC to give PG&E permission to construct and operate a facility to be known as the Grizzly Powerhouse Development. Under the GDMSA, Santa Clara would finance and own the Grizzly Powerhouse Development in conjunction with the Bucks Creek Project owned by PG&E. (*See*

Under the terms of the GDMSA, Santa Clara is the owner[2] of Grizzly, which is a part of the Bucks Creek Project, FERC No. 619. (*See* GDMSA Sections 2.1 and 1.1.33.) Grizzly includes, but is not limited to, the Grizzly (hydroelectric) powerhouse, the powerhouse's electric switchyard and a short 115 kV generation tie-line. (*See* GDMSA Sections 1.1.33(d) and (f).)

Grizzly is constructed on lands owned by the United States of America and made available for use by the PG&E and Santa Clara as a hydroelectric project under a FERC license and United States Forest Service permit, subject to relicensing or recapture as provided by law. (*See* GDMSA Section 2.6.1.) The Parties expressly spelled out the property interests established in the GDMSA as being a present possessory interest in Santa Clara subject to a Possibility of Reverter in PG&E.[3] The

_____

GDMSA Recitals C-E; Hance Dec. paras. 9-10.)

[2] Under the GDMSA, Santa Clara owns 100% of the Grizzly Hydroelectric Project during the "Ownership Period." (*See* GDMSA Section 2.1) The Ownership Period is defined as ending upon the first of (1) the occurrence of the Reverter Date; (2) development of Grizzly is terminated; or (3) abandonment of the project by Santa Clara or condemnation. (*See* GDMSA at 1.1.47; Hance Dec. para. 11.) The Reverter Date is the date on which Santa Clara's interest in Grizzly terminates and reverts to PG&E. (*See* GDMSA at Section 1.1.59; Hance Dec. paras. 11-12.) The first possible Reverter Date is November 18, 2027. (*See* GDMSA at 12.3 and *Public Utilities With Existing Contracts in the California Independent System Operator Corporation Region*, 112 FERC ¶61,007 at paras. 52-53 (2005), RJN **Exhibit 5).**

[3] The GDMSA at Section 2.6.1-2.6.3 provides as follows:

**2.6 Establishment of Property Interests In Grizzly**

2.6.1 The Parties agree and stipulate that most of Grizzly will be constructed on lands owned by the United States of America and made available for use by the Parties as a hydroelectric project under FERC license and United States Forest Service permit, and will be subject to relicensing or recapture as provided by law. They further agree and stipulate that Grizzly is property in which there can and will be ownership interests and that, to the extent there may be any uncertainty in applicable law, it is their intent in implementing this Agreement to establish certain property interests and estates (herein "Interest") in the Grizzly Site, in Grizzly as constructed on it and in the Joint License and the said Forest Service permit issued thereon (herein "Grizzly"), whether those interests and estates are real or personal, legal or equitable. They further agree and stipulate that it is their intent that PG&E transfer a determinable Interest (viz., an Interest subject to a special limitation) in Grizzly to Santa Clara, retaining a future interest in the form of a Possibility of Reverter therein which shall take effect on the Reverter Date; that during the Ownership Period Santa Clara as the owner will enjoy and use Grizzly and all Interest therein; that Grizzly and all Interest therein will revert to PG&E on the Reverter Date; that the fact that a relicensing of Grizzly may be

descriptions of the Parties' property interests are the common law equivalents of a fee simple determinable and a possibility of reverter. Under California law, a fee simple determinable is deemed to be a fee simple subject to a restriction in the form of a condition subsequent and a reverter is deemed a power of termination. *See* Cal. Civ. Code § 885.020.

The GDMSA continues until at least the first Reverter Date of November 18, 2027, and could extend to 2034 or later. On the Reverter Date, Grizzly reverts to PG&E who is then obligated to reimburse the City for the unrealized value of Grizzly ("Reverter Reimbursement"). (*See* GDMSA Sections 12.3 and 12.4.)

The electric power generated by Grizzly ("Grizzly output") is delivered by Santa Clara to PG&E's electric system at the interconnection between Grizzly and PG&E's electric system, and PG&E in turn delivers an equivalent amount of energy to Santa Clara's receiving stations for Santa Clara's use in serving its customers. (*See* GDMSA Section 9.1.)

The sole interconnection between Grizzly and PG&E's electric system is on PG&E's Caribou-

---

required prior to the Reverter Date does not render the Interest a mere possibility or expectancy rather than a true property interest under California law; and that, in the event any court, regulatory agency or other tribunal should ever be called upon to decide the nature of their respective Interests, the intentions and agreements stated in this Section 2.6 shall govern their rights as between themselves.

2.6.2 The Parties agree that all buildings, facilities, improvements, appurtenances, and equipment installed in or on Grizzly, except the final span of the Grizzly transmission line and the distribution line strung under that transmission line, shall be a part of Grizzly and none of them shall be considered trade fixtures, and that all tools, materials, supplies, reproducible prints of drawings, manuals, documents and records within Grizzly acquired for the operation and maintenance of Grizzly shall be included in the scope and meaning of Grizzly and subject to the Possibility of Reverter.

2.6.3 On the Settlement Date, or as soon thereafter as practicable, PG&E shall transfer all its Interest in Grizzly to Santa Clara until the occurrence of the Reverter Date; provided, that PG&E may retain the distribution line rights as provided in Section 2.6.7. Upon the Reverter Date Grizzly and all Interest therein shall revert automatically to PG&E. The Parties agree and stipulate that, in light of the complexity of this Agreement as it applies to Grizzly, the doctrine of merger by deed shall have no application so that this Agreement will have continuing force in determining their rights even after PG&E conveys its Interest in Grizzly to Santa Clara.

{D0458286.DOCX / 1}

Palermo Line (*see* GDMSA Sections 1.1.33(f), 2.1 and 9.1.2), the transmission line that sparked the Camp Fire on November 8, 2018. Without that line, energy produced by Grizzly cannot be scheduled and delivered to Santa Clara and renders Grizzly inoperable by Santa Clara. PG&E has since unilaterally permanently de-energized the Caribou-Palermo Line. As a result, from and after November 8, 2018 and to this day, Grizzly output has been undeliverable by PG&E to the electric transmission grid for transmission to, and use by, Santa Clara and its customers in breach and default of the GDMSA by PG&E.

### B. THE OPERATING AGREEMENT AND THE RELICENSING COST SHARING AGREEMENT FOR GRIZZLY.

Since commencement of operations of Grizzly in November 1993, PG&E has performed and continues to perform operation and maintenance services at Grizzly for Santa Clara under the GDMSA (RJN **Exhibit 2**; Hance Dec., para. 17.). The GDMSA obligated PG&E to perform operation and maintenance services as the Operation Manager for Grizzly for an initial term of two years, commencing on the Commercial Operation Date of Grizzly (*see* GDMSA Sections 5.3 and 5.5). Thereafter, Santa Clara opted under the GDMSA to continue to employ PG&E to perform these services after the initial two year period (*see* GDMSA Section 5.5) through a separate Operation and Maintenance Agreement entered into in late 1995, under which PG&E continued to perform operation and maintenance services at Grizzly for Santa Clara. (RJN **Exhibit 2**; Hance Dec., para. 17.). When the term of the 1995 Operation and Maintenance Agreement ended, PG&E and Santa Clara entered into a June 2002 Grizzly Operation and Maintenance Agreement ("Grizzly Operation and Maintenance Agreement"), which also had a specific term and termination date. Since both Parties wanted to continue the arrangement, on September 17, 2008, the Parties entered into Amendment No. 1 to the Operation and Maintenance Agreement, which amendment modified the term of the Grizzly Operation and Maintenance Agreement such that it remains effective unless and until one of the Parties gives 180 days' notice to terminate. (RJN **Exhibit 2**; Hance Dec., para. 17.). The Grizzly Operation and Maintenance Agreement, as amended, adopted verbatim extracts of Section 5 of the GDMSA concerning operation and maintenance and portions of Section 15 concerning operating period insurance. PG&E is compensated by Santa Clara for PG&E's operation and maintenance of

Grizzly. (*See* **Exhibit 1,** GDMSA, Sections 5.8, 5.9; RJN, **Exhibit 2**, Grizzly Operation And Maintenance Agreement, Ex. A, Sections 5.8, 5.9.)

In addition, during 2013, the Parties entered into a Letter Agreement Regarding Bucks Creek Hydroelectric Project Relicensing Cost Sharing Pursuant to Grizzly Development and Mokelumne Settlement Agreement (1990) ("Relicensing Cost Sharing Agreement"), in which the Parties clarified how they would share the costs of pursuing the re-issuance of the Bucks Creek License. (RJN **Exhibit 3;** Hance Dec., para. 18.)

As both the Grizzly Operation and Maintenance Agreement and the Relicensing Cost Sharing Agreement were entered into to effectuate or interpret provisions of the GDMSA, and are inextricably interrelated to the GDMSA, without the GDMSA, there would be no reason for the Grizzly Operation And Maintenance Agreement or the Relicensing Cost Sharing Agreement to exist.

## C. PG&E TREATED THE GDMSA AS AN EXECUTORY CONTRACT IN ITS FIRST CHAPTER 11

On April 6, 2001, PG&E filed its first chapter 11 case. (Case No. 01-30923 DM, filed April 6, 2001; "PG&E I"). The GDMSA existed at that time and was assumed generally with all other executory contracts (including the original 1995 Grizzly Operation and Maintenance Agreement, which was inextricably interrelated to the GDMSA), and performed by PG&E postpetition and postconfirmation. (*See Order Confirming Plan of Reorganization under Chapter 11 of the Bankruptcy Code for Pacific Gas and Electric Company proposed by Pacific Gas and Electric Company, PG&E Corporation and the Official Committee of Unsecured Creditors Dated July 31, 2003, as modified*, entered December 22, 2003, Dkt. 14272, Case No. 01-30923 DM at paragraph 27, RJN **Exhibit 6**).

## D. PG&E'S TREATMENT OF THE GDMSA DURING THIS CHAPTER 11

### 1. PG&E Identified The GDMSA As An Executory Contract

PG&E filed its second chapter 11 ("PG&E II"), on February 5, 2019. (Dkt. 1). In PG&E II, PG&E identified under oath the GDMSA as an executory contract in its schedule of executory contracts (*See* item 2.7347 in the *Utility's Schedule G Executory Contracts and Unexpired Leases* filed March 14, 2019, Dkt. 907-1, p. 144 of 674). PG&E also identified under oath the inextricably interrelated current Grizzly Operation and Maintenance Agreement and the Relicensing Cost Sharing

Agreement as executory contracts. (*See* items 2.36842 and 2.36843 in the *Utility's Schedule G Executory Contracts and Unexpired Leases* filed March 14, 2019, Dkt. 907-4, p. 548 of 710).

PG&E's identification under oath of the GDMSA as an executory contract in PG&E II is consistent with PG&E's treatment of the GDMSA in PG&E I and, in Santa Clara's view, was appropriate based on the substantial "yet to be performed" and ongoing obligations of the Parties under the GDMSA, including but not limited to the following:

• GDMSA Section 2.1 provides Santa Clara has ownership of Grizzly through the Reverter Date, i.e., the "Ownership Period"; GDMSA Section 2.6.1 declares the nature of that ownership to be a determinable interest in Grizzly during the Ownership Period, whether real or personal, legal or equitable. Essentially, Santa Clara has the interest of a ground lessee—a present possessory interest giving it a long-term right to use and improve real estate subject to a right of reversion in the ground lessor.

• GDMSA Sections 2.6.1, 2.6.3, and 2.6.5 declare PG&E to have a future interest in Grizzly in the form of a Possibility of Reverter, whether real or personal, legal or equitable, that shall automatically take effect on the Reverter Date. These sections provide that Santa Clara will not contest the Possibility of Reverter or the reversion of Grizzly to PG&E on the Reverter Date. PG&E's interest is akin to that of a ground lessor—a future interest in the improvements in the form of a possibility of reverter.

• If PG&E is unable to take possession on the Reverter Date, a resulting trust in favor of PG&E shall arise and Santa Clara will hold Grizzly in Trust for PG&E until it can obtain possession (*See* GDMSA Section 2.6.6). While in the resulting trust, Santa Clara will operate Grizzly for PG&E's benefit and PG&E will pay Santa Clara's expenses of operating Grizzly for PG&E's benefit and for acting as trustee (*id.*).

• If the Reverter Date occurs, PG&E will reimburse Santa Clara for Depreciated Costs of the Grizzly Plant (*See* GDMSA Section 5.10).

• During the Ownership Period, PG&E is to obtain, provide and convey rights, permits and interests necessary for Santa Clara to operate and maintain Grizzly (*See* GDMSA Sections 2.2 and 2.6). Further, Santa Clara is to support PG&E's water rights and comply with all scheduling and

{D0458286.DOCX / 1}

1  delivery decisions, so long as such decisions are legal (*See* GDMSA Section 2.3).

2      •      During the Ownership Period, Santa Clara has the right to own and receive all energy
3  generated by Grizzly (*See* GDMSA Section 2.4.2).

4      •      During the Ownership Period, Santa Clara is to deliver electric power generated at
5  Grizzly to PG&E at the interconnection of the Grizzly Transmission Line and PG&E's Caribou-
6  Sycamore Creek transmission line (now known as the "Caribou-Palermo line"). PG&E then is
7  required to deliver the energy and capacity to Santa Clara at Santa Clara's receiving stations, which
8  are the interconnection points between PG&E's and Santa Clara's electric systems. (*See* GDMSA
9  Sections 9.1.1, 9.1.2, 1.1.58 and 1.1.51.)

10     •      During the Ownership Period, PG&E is to provide water and water rights for generation
11 of electricity at no cost to Santa Clara and Santa Clara is to support PG&E's water rights and comply
12 with all scheduling and delivery decisions, so long as legal (*See* GDMSA Section 2.3).

13     •      During the Ownership Period, PG&E is to endeavor to maintain continuity of service
14 to Santa Clara and to take all reasonable steps to schedule and deliver Grizzly Combined Energy
15 ("GCE") to Santa Clara (*See* GDMSA Sections 1.1.31, 9.3.1).

16     •      During the Ownership Period, the Parties have allocated each party's payment of taxes
17 and the right to contest taxes related to Grizzly. (*See* GDMSA Section 14.4).

18     •      From and after the Commercial Operation Date, and except as provided in the GDMSA,
19 during the Ownership Period, Santa Clara is to obtain and maintain at its cost, for the benefit of both
20 Santa Clara and PG&E, insurance for Grizzly. (*See* GDMSA Sections 1. 1.13, 15.3).

21     •      At all times the Parties shall cooperate and use all best efforts to coordinate the
22 functioning of the GDMSA with PG&E's licensing and operation of Bucks Creek, to acquire any
23 amendment of the Bucks Creek License to allow the operation of the GDMSA and to meet identified
24 ongoing objectives of the GDMSA. (*See* GDMSA Section 3.1).

25     •      At all times the Parties shall cooperate in good faith in all activities relating to the
26 development, construction and operation of Grizzly. (*See* GDMSA Section 3.2.1).

27             **2.      During PG&E II, The GDMSA Is Amended.**

28     After the filing of PG&E II, and prior to confirmation of any Plan, PG&E, in its ordinary course

of business, and Santa Clara amended the GDMSA, and on January 8, 2020, PG&E submitted to the Federal Energy Regulatory Commission ("FERC") for filing and acceptance revisions to the GDMSA reflected in the Amendment Number Seven to the Grizzly Development and Mokelumne Settlement Agreement by and between Pacific Gas and Electric Company and City of Santa Clara ("Amendment Number Seven"). (RJN **Exhibit 9**; Hance Dec., para. 25.) Briefly summarized, Amendment Number Seven to the GDMSA incorporates the terms of the Relicensing Costs Sharing Agreement as revisions to Section 12.2 of the GDMSA. (RJN **Exhibit 9;** Hance Dec., para. 25.)

In PG&E's Transmittal Letter to FERC dated January 8, 2020, PG&E requested that FERC accept the proposed revisions to the GDMSA and grant an effective date of March 9, 2020. (RJN **Exhibit 9**; Hance Dec., para. 25.)

By Letter Order dated March 3, 2020, FERC accepted the revisions to the GDMSA for filing, effective March 9, 2020, as requested by PG&E. (RJN **Exhibit 10**; Hance Dec., para. 26.)

### 3. PG&E Treated The GDMSA As An Executory Contract For Assumption Until PG&E Had To Address The Cure Amount.

Rather than separately assuming and rejecting executory contracts prior to confirmation, PG&E obtained a scheduling order (Dkt. 5732) setting May 1, 2020 as the deadline to file its Plan Supplement, including a schedule of which contracts would be assumed by PG&E and the proposed cure amount, if any. Counter-party creditors had until May 15, 2020 to file their objections.

In the May 1, 2020 filing of its Plan Supplement, PG&E identified all of the executory contracts with Santa Clara that PG&E intended to assume,[4] including the GDMSA and the two contracts

---

[4] Paragraph 32(a) of the *Order Confirming Debtors' and Shareholder Proponents' Joint Chapter 11 Plan*, Docket 8053, entered June 20, 2020, and Section 8.1 of the Plan. Paragraph 32(a) states:

Pursuant to Section 8.1 of the Plan, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts.

interrelated with the GDMSA discussed above (the Grizzly Operations and Maintenance Agreement and the Relicensing Cost Sharing Agreement). (Dkt. 7037.)

The following chart, compiled from *PG&E's Schedule of Executory Contracts to Be Assumed and Proposed Cure Amounts*, filed May 1, 2020 (the "Cure Notice," Dkt. 7037, pp. 335 of 2063-336 of 2063), summarizes the executory contracts with Santa Clara that PG&E initially identified as to be assumed. The GDMSA, the Grizzly Operations and Maintenance Agreement and the Relicensing Cost Sharing Agreement are highlighted for the Court's convenience (the GDMSA in yellow, the others in green).

| Non-Debtor Counterparty Name | Match ID | Contract ID | Debtor Name | Title of Agreement | Effective Date of Agreement | Cure Amount | Docket and Schedule Number |
|---|---|---|---|---|---|---|---|
| CITY OF SANTA CLARA | 1003076 | CCNGSA_00212 | PACIFIC GAS AND ELECTRIC COMPANY | NATURAL GAS SERVICE AGREEMENT | 3/1/1998 | | 3902 / 2.1858 |
| CITY OF SANTA CLARA | 1003076 | CCNGSA_00260 | PACIFIC GAS AND ELECTRIC COMPANY | NATURAL GAS SERVICE AGREEMENT | 3/1/1998 | | 3902 / 2.1859 |
| CITY OF SANTA CLARA | 1003076 | CRPSECFRN_00190 | PACIFIC GAS AND ELECTRIC COMPANY | ELECTRIC FRANCHISE | | | 907 part 2 / 2.13150 |
| CITY OF SANTA CLARA | 1003076 | CRPSECFRN_00452 | PACIFIC GAS AND ELECTRIC COMPANY | GAS FRANCHISE ORDINANCE NO. 1209 | | | 907 part 2 / 2.13151 |
| CITY OF SANTA CLARA | 1003076 | ELCOPS3_00001 | PACIFIC GAS AND ELECTRIC COMPANY | GRIZZLY DEVELOPMENT AND MOKELUMNE SETTLEMENT AGREEMENT | 3/8/1990 | | 907 part 1 / 2.7347 |
| CITY OF SANTA CLARA | 1003076 | ELCOPS3_00003 | PACIFIC GAS AND ELECTRIC COMPANY | COTENANCY AGREEMENT | 6/1/1984 | | 907 part 1 / 2.7346 |
| CITY OF SANTA CLARA | 1003076 | GASOPS_00349 | PACIFIC GAS AND ELECTRIC COMPANY | ELECTRONIC COMMERCE SYSTEM USER AGREEMENT | 11/28/2005 | 5,984.42 | 907 part 1 / 2.9069 |
| CITY OF SANTA CLARA | 1003076 | GASOPS_00350 | PACIFIC GAS AND ELECTRIC COMPANY | ELECTRONIC COMMERCE SYSTEM USER AGREEMENT | 11/29/2005 | | 907 part 1 / 2.9070 |
| CITY OF SANTA CLARA | 1003076 | POWGEN_00085 | PACIFIC GAS AND ELECTRIC COMPANY | GRIZZLY DEVELOPMENT AND MOKELUMNE SETTLEMENT AGREEMENT | 3/8/1990 | | 907 part 4 / 2.36841 |
| CITY OF SANTA CLARA | 1003076 | POWGEN_00087 | PACIFIC GAS AND ELECTRIC COMPANY | GRIZZLY OPERATIONS AND MAINTENANCE AGREEMENT | 6/5/2002 | | 907 part 4 / 2.36842 |
| CITY OF SANTA CLARA - SVP DVR | 1003076 | CCNGSA_00605 | PACIFIC GAS AND ELECTRIC COMPANY | NATURAL GAS SERVICE AGREEMENT | 10/13/2004 | | 3902 / 2.1860 |

{D0458286.DOCX / 1}

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CITY OF SANTA CLARA - SVP DVR | 1003076 | GASOPS_00351 | PACIFIC GAS AND ELECTRIC COMPANY | ELECTRONIC COMMERCE SYSTEM USER AGREEMENT | 11/28/2005 | | 907 part 1 / 2.9071 |
| CITY OF SANTA CLARA DBA SILICON VALLEY POWER | 1003076 | EPPEMCL_33B021 | PACIFIC GAS AND ELECTRIC COMPANY | EMCL AGREEMENT | 1/1/2004 | | 907 part 1 / 2.7991 |
| CITY OF SANTA CLARA DBA SILICON VALLEY POWER (SVP) (BLACK BUTTE) | 1003076 | ELCOPS6_00039 | PACIFIC GAS AND ELECTRIC COMPANY | INTERCONNECTION AGREEMENT - HYDRO | 8/1/2017 | | 907 part 1 / 2.7348 |
| CITY OF SANTA CLARA DBA SILICON VALLEY POWER (SVP) (HIGH LINE CANAL) | 1003076 | ELCOPS6_00040 | PACIFIC GAS AND ELECTRIC COMPANY | INTERCONNECTION AGREEMENT - HYDRO | 8/1/2017 | | 907 part 1 / 2.7349 |
| CITY OF SANTA CLARA DBA SILICON VALLEY POWER (SVP) (STONY GORGE) | 1003076 | ELCOPS6_00041 | PACIFIC GAS AND ELECTRIC COMPANY | INTERCONNECTION AGREEMENT - HYDRO | 8/1/2017 | | 907 part 1 / 2.7350 |
| CITY OF SANTA CLARA, SILICON VALLEY POWER | 1003076 | ELCGEN_00121 | PACIFIC GAS AND ELECTRIC COMPANY | COST SHARING UNDER GRIZZLY DEVELOPMENT AND REDEFINE SETTLEMENT AGREEMENT 1980 | | | 907 part 4 / 2.36843 |

As the City expected, PG&E specifically identified the GDMSA for assumption in its Cure Notice (Contract ID ELCOPS3_00001). However, PG&E's Cure Notice identified no cure amount due to the City, despite PG&E's failure to deliver Grizzly Power to Santa Clara from and after PG&E's voluntary de-energization of the Caribou-Palermo line following the Camp Fire. (*See* Cure Notice, Dkt. 7037 at pp. 335; Hance Dec., paras. 15, 19-20.)

In response to this failure to identify a cure amount associated with the GDMSA, on May 15, 2020, Santa Clara filed its *Objection to Cure Amount and Request for Adequate Assurance of Future Performance by Counterparty City of Santa Clara dba Silicon Valley Power* (Dkt. 7208) ("Cure Objection").[5] Santa Clara's Cure Objection challenged PG&E's apparent position in the Cure Notice that no cure amount related to the GDMSA is required, and sought cure and adequate assurance of future performance regarding PG&E's breach of the GDMSA and the resulting current and continuing loss of value from Grizzly output until the interconnection of Grizzly to the electric grid is

---

[5] At the same time, Santa Clara was also party to *The Municipal Objectors' (1) Objection to Confirmation of Plan of Reorganization and (2) Objection to Cure Notice and Other Matters Pertaining to Assumption Pursuant to Section 365(b)(1) of the Bankruptcy Code* (Dkt. 7231), filed May 15, 2020.

re-established.[6]

### 4. Once The Cure Amount And Adequate Assurance of Future Performance Issues Were Raised by Santa Clara, PG&E Relegates The GDMSA To No Man's Land

Without explanation, but in apparent response to Santa Clara's Cure Objection, on May 22, 2020, PG&E amended its *Schedule of Executory Contracts to be Assumed*, and struck the GDMSA from the list of assumed contacts. PG&E did not, however, file a companion amendment to the *Schedule of Executory Contracts to be Rejected* to add the GDMSA there. (*See Notice of Filing of Supplement to Plan Supplement in Connection with Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization*, Dkts. 7503 and 7503-1.) For reasons which are not clear, PG&E did not strike the related Grizzly Operations and Maintenance Agreement and the Relicensing Cost Sharing Agreement from the list of assumed contracts, and instead assumed those executory contracts.

The following chart, compiled from *PG&E's Schedule of Executory Contracts to Be Assumed*, filed May 22, 2020 (Dkt. 7503), shows that PG&E struck the GDMSA from the assumed list.

| Non-Debtor Counterparty Name | Match ID | Contract ID | Debtor Name | Title of Agreement | Effective Date of Agreement | Cure Amount | Docket and Schedule Number |
|---|---|---|---|---|---|---|---|
| Campus Pointe Commercial, LP | 10202531 | CCOTH_0500 | PACIFIC GAS AND ELECTRIC COMPANY | CONTRACT 1242300 | 6/27/201 | | 7503-1 at p. 5 of 37 |
| ~~CITY OF SANTA CLARA~~ | ~~1003076~~ | ~~ELCOPS3_00001~~ | ~~PACIFIC GAS AND ELECTRIC COMPANY~~ | ~~GRIZZLY DEVELOPMENT AND MOKELUMNE SETTLEMENT AGREEMENT~~ | ~~3/8/1990~~ | | 7503-1 at p. 5 of 37 |
| CONCUR TECHNOLOGIES | 1003420 | SRCPOS_250038320 | PACIFIC GAS AND ELECTRIC COMPANY | BUSINESS SERVICES AGREEMENT #25003832 | 9/3/2010 | | 7503-1 at p. 5 of 37 |

Taken aback by PG&E's position that the GDMSA would neither be assumed nor rejected, on June 1, 2020, Santa Clara filed its *Supplemental Objection to Plan Confirmation Based on Debtors'*

---

[6] Santa Clara also noted in its Cure Objection that despite the magnitude of the cure and adequate assurance obligations (at the time nearly $20 million), PG&E's decision to assume the GDMSA was prudent because rejection would result in a much larger rejection damages claim since such breach would cause Grizzly to revert to PG&E, triggering the "Reverter Reimbursement," currently estimated to be in excess of $60 million. (*See* GDMSA Section 12.4, which describes the "intent of the Parties that Santa Clara be made whole and reimbursed by PG&E for the fair market value of Grizzly upon . . . the reversion of Grizzly to PG&E.") (*See* Cure Objection at para. 3 and n. 2 and n. 3).

*May 22, 2020 Amendment of Schedule of Executory Contracts to be Assumed* (Dkt. 7691), noting that the then-proposed (now confirmed) Plan required that executory contracts be either assumed or rejected, and the GDMSA could not be left in some sort of Plan no man's land.

While PG&E never formally responded to the Supplemental Objection, counsel for PG&E has taken the position with the City's counsel that the GDMSA is *not executory* and suggested the Parties discuss whether a negotiated business solution could be reached that would resolve Santa Clara's GDMSA-related claims. (Gorton Dec., para. 12.) The parties have been unable to reach a "business solution" to Santa Clara's claims. Counsel for PG&E further stated that absent an agreement, this Court could address/resolve these issues in post-confirmation proceedings under Section 8.2(d) of the Plan (Dkt. 8048)[7] and paragraph 34(b) of the Confirmation Order (Dkt. 8053).[8] (Gorton Dec., para.

---

[7] Section 8.2(d) of the Plan provides as follows:

> If the Bankruptcy Court makes a determination regarding any of the matters set forth in Section 8.2(c) above with respect to any executory contract or unexpired lease (including, without limitation that the Cure Amount is greater than the amount set forth in the applicable cure notice), as set forth in Section 8.8(a) below, the Debtors or Reorganized Debtors, as applicable, shall have the right to alter the treatment of such executory contract or unexpired lease, including, without limitation, to add such executory contract or unexpired lease to the Schedule of Rejected Contracts, in which case such executory contract or unexpired lease shall be deemed rejected as of the Effective Date.

The matters set forth in Section 8.2(c) and this Court's authority to adjudicate such matters are provided in that section of the Plan.

> (c) In the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order (which order may be the Confirmation Order).

[8] Paragraph 34(b) of the Confirmation Order states:

> b. Except as otherwise provided in this Confirmation Order, any issues with respect to timely filed Cure Disputes will be preserved and may be resolved in due course either consensually without further order of the Court, or, after notice and an opportunity to be heard, by a Final Order of the Court, which may be entered after the Effective Date.

1    12.)

2    Section 8.1 of the Plan provides that all executory contracts are assumed unless they have been

3    (i) previously rejected, (ii) expired or terminated by the terms of the agreement, (iii) subject to a motion

4    to reject on or before the Confirmation Date, or (iv) designated for rejection on the Schedule of

5    Rejected Contracts. (*See also* Confirmation Order, paragraph 32(a).) Unresolved Cure Disputes are to

6    "be resolved by Final Order of the Court, which may be entered after the Effective Date." (*See*

7    Confirmation Order, paragraph 34(a).) The term "Cure Disputes" as used in the Confirmation Order

8    includes "any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts

9    required by section 365(b)(1) of the Bankruptcy Code." (*See* Confirmation Order, para. 34(a).)

10   Unquestionably, the determination of whether a contract is executory is a "matter pertaining to

11   assumption."[9]

12   ### 5.    The GDMSA Should Be Assumed Or Rejected By PG&E And Not Relegated To No Man's Land

13

14   Santa Clara asserted two claims in this chapter 11 concerning the GDMSA and Grizzly: Claim

15   64691 against the Debtor PG&E ("Utility Claim"), and Claim 60676, a protective Fire Claim against

16   the Fire Victim Trust ("Fire Claim"). Santa Clara believed its claim was appropriately against the

17   Debtor, but filed the Fire Claim out of an abundance of caution due to the expansive description of

18   such claims—"any claim . . . related to or in any way arising from the fires that occurred in Northern

19   California prior to the Petition Date . . . ." (*See Order Establishing Deadline for Filing Proofs of*

20   *Claim*, Dkt. 2806, p. 4 n. 2.) To be clear, Santa Clara has no interest in diminishing the proceeds of

21   the Fire Victim Trust available to the fire victims who had no contractual relationship with PG&E

22   (and PG&E should be similarly concerned not to diminish the proceeds of the Fire Victim Trust

23   available to pay true fire victims); however, at the time claims in the Chapter 11 were required to be

24   submitted, the City believed it had to assert the Fire Claim to protect its rights. The City later amended

25   both its Fire Claim and its Utility Claim to specify that assumption of the GDMSA would result in

26

27   [9] The foregoing procedural resolution between PG&E and Santa Clara did not set any deadlines. The Confirmation Order set a 90-days-from-confirmation deadline for any Governmental Unit to object

28   that an executory contract is *not* an executory contract. (*See* Confirmation Order, paragraph 67(d).) This provision is inapplicable to Santa Clara because its contention is to the contrary.

1 withdrawal of the City's Fire Claim. (*See Amendments to Proofs of Claim Nos. 60676 and 64691*,

2 filed April 30, 2020, Claim Dkts. 103617 and 103649.)

3 Since there has been no resolution to date regarding whether Santa Clara's claim concerning

4 the GDMSA would be resolved through its Utility Claim or its Fire Claim, Santa Clara has been forced

5 to participate in the Fire Victim Trust process to protect its interests. Most recently, the Fire Victim

6 Trust required all Fire Victims to submit a completed Claims Questionnaire and supporting

7 documentation by February 26, 2021, *see* https://www.firevictimtrust.com/, and Santa Clara timely

8 complied. However, it is important to note that the remaining performance obligations by PG&E

9 under the GDMSA, including the Reverter Reimbursement (*see* GDMSA Section 12.4), have not been

10 asserted as Fire Claims insofar as they arise out of future performance of the GDMSA and are

11 unrelated to the fires, and such claims are specifically reserved against PG&E in Santa Clara's Utility

12 Claim (Claim 64691, as amended).

13 In sum, PG&E has relegated all of Santa Clara's rights under the GDMSA, at least for the time

14 being, to some sort of Plan no man's land–neither assumed nor rejected and without explanation of

15 why the GDMSA is not an executory contract–and without any clarification of how or where the

16 claims arising therefrom and related thereto are to be treated and resolved.

## IV. ARGUMENT

### A. THE GDMSA IS AN EXECUTORY CONTRACT WHICH PG&E MUST EITHER ASSUME OR REJECT

20 Section 365(d)(2) of the Bankruptcy Code provides the Court with the power to compel a

21 debtor to assume or reject an executory contract within a specified period of time:

22 In a case under chapter . . . 11 . . . of this title, the trustee may assume or reject an
executory contract . . . of the debtor at any time before the confirmation of a plan
23 *but the court, on the request of any party to such contract or lease, may order the
trustee to determine within a specified period of time whether to assume or reject
24 such contract . . . .*

25

26 11 U.S.C. §365(d)(2) (emphasis added); 11 U.S.C. §1107(a). While this case is post-confirmation, this

27 Court reserved the authority to resolve these issues in post-confirmation proceedings under

28 Section 8.2(d) of the Plan (Dkt. 8048) and paragraph 34(b) of the Confirmation Order (Dkt. 8053).

1   (*See* notes 7 and 8, *supra*.)

2   "Congress intended this provision to 'prevent parties in contractual or lease relationships with

3   the debtor from being left in doubt concerning their status vis-a-vis the estate.'" *Univ. Med. Ctr. v.*

4   *Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1079 (3d Cir. 1992) (*citing* S. Rep. No. 989, 95th

5   Cong., 2d Sess. 59 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5845).

6   The GDMSA is a classic executory contract that includes provisions common to development,

7   construction agreements, operation and maintenance agreements, interconnection agreements, and

8   ground leases. In its first chapter 11 (Case No. 01-30923 DM, filed April 6, 2001; "PG&E I"), without

9   fanfare or dispute, PG&E assumed all executory contracts, including the GDMSA, and continued to

10  perform its obligations unimpaired and uninterrupted.[10] Since the confirmation of the plan in PG&E I,

11  the GDMSA remains in place without material change (Hance Dec. para. 27) and remains an executory

12  contract within the meaning of applicable law.

13  **1.    The GDMSA Meets The *Countryman* Definition Of An Executory Contract**

14

15  **a.    The Ninth Circuit Uses The *Countryman* Definition To Determine If A Contract Is Executory**

16  Whether a contract between a debtor and a nondebtor is executory for purposes of Section 365

17  of the Bankruptcy Code is determined in the Ninth Circuit using the *Countryman* definition. The

18  *Countryman* definition recognizes "a contract is executory if the obligations of both parties are so

19  unperformed that the failure of either party to complete performance would constitute a material

20  breach and thus excuse the performance of the other." *In re Robert L. Helms Constr. & Dev. Co., Inc.*,

21  139 F.3d 702, 705 and n. 7 (9th Cir. 1998) (citing Vern Countryman, *Executory Contracts in*

22  *Bankruptcy: Part 1*, 57 MINN. L. REV. 439, 460 (1973); *see also Pacific Express, Inc. v. Teknekron*

23  *Infoswitch Corp. (In re Pacific Express, Inc.)*, 780 F.2d 1482, 1487 (9th Cir. 1986). The same

24

25  [10] *See Order Confirming Plan of Reorganization under Chapter 11 of the Bankruptcy Code for Pacific*

26  *Gas and Electric Company proposed by Pacific Gas and Electric Company, PG&E Corporation and the Official Committee of Unsecured Creditors dated July 31, 2003, as Modified*, paragraphs 27 and 28, filed December 22, 2003, Dkt. 14272, Case No. 01-30923 DM; *Plan of Reorganization*

27  *under Chapter 11 of the Bankruptcy Code for Pacific Gas and Electric Company proposed by Pacific Gas and Electric Company, PG&E Corporation and the Official Committee of Unsecured Creditors*

28  *dated July 31, 2003, as Modified*, Section 6.1, filed July 31, 2008, Dkt. 13298, Case No. Case No. 01-30923 DM.

definition has also been used by the Supreme Court since *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522 n.6 (1984) and most recently in *Mission Product Hldgs., Inc. v. Tempnology, LLC*, —— U.S. —— –, 139 S.Ct. 1652, 1658, 203 L.Ed. 2d 876 (2019); by the Ninth Circuit repeatedly, as recently as last year, s*ee In re Point Ctr. Fin., Inc.*, 957 F.3d 990, 996 n.1 (9th Cir. 2020); and by this Court in this case, *In re PG&E Corporation*, 2020 WL 5626350 (February 28, 2020) (agreement not executory because no mutual obligations remained to be performed).

The Ninth Circuit has further recognized that "if performance does not 'remain due to some extent on both sides,'" a contract is not executory. *See Range Rider Partners Ltd. P'ship v. Range Rider Estates*, 34 F. Appx. 385, 385-86 (9th Cir. 2002) (citing *In re Robert L. Helms*, 139 F.3d at 705) (settlement agreement creating option for purchase of real estate required only payment and prior to payment was not executory). An unexercised option contract, for example, is not executory until it is exercised and then reciprocal obligations are triggered. *See Helms*, 139 F.3d at 706.

        **b.**    **Both PG&E And Santa Clara Have "Yet To Be Performed" Obligations Under The GDMSA As Set Forth In The *Countryman* Definition Of Executory Contract**

As noted above, the *Countryman* definition requires that in order for a contract to be executory, it must have unperformed obligations by both parties. The plain language of the GDMSA reveals the many "yet to be performed" and ongoing obligations of the Parties, some of which are set forth in III.D.1., *supra*.

        **c.**    **The Unperformed Obligations Of The GDMSA Are "Material, Such That A Breach Would Excuse Performance" As Set Forth In The *Countryman* Definition Of Executory Contract**

As noted above, the *Countryman* definition requires that in order for a contract to be executory, the unperformed obligations must be material such that a breach would excuse performance by the other party. To determine whether obligations are material, such that a breach would excuse performance by the other party, courts in the Ninth Circuit look to state law. *See Dunkley v. Rega Props., Ltd. (In re Rega Props., Ltd.)*, 894 F.2d 1136, 1139 (9th Cir.1990); *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1348 n. 4 (9th Cir.1983); *see also Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469 (6th Cir. 1989) (federal law defines term "executory contract," but question of legal consequences of one party's failure to perform its remaining obligations under contract is issue

of state law).

The Parties agreed to the application of California law to the GDMSA in Section 21.4 thereof. A material breach under California law has been described as follows:

> When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract. Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact. Whether a partial breach of a contract is material depends on "the importance or seriousness thereof and the probability of the injured party getting substantial performance." "A material breach of one aspect of a contract generally constitutes a material breach of the whole contract."

*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277–278, internal citations omitted.

The unperformed obligations of GDMSA meets this standard for materiality. As explained above, performance under the GDMSA began in 1990 and continues through at least the next Reverter Date in November 2027, and could extend to 2034 or later. (*See* GDMSA Section 12.4.) Also as explained above, during the remaining years of the GDMSA, both Santa Clara and PG&E have numerous ongoing mutual obligations, which obligations are substantial and material and go to the heart of the contract's objective of developing, constructing and operating Grizzly for the benefit of Santa Clara during the Ownership Period, and for the benefit of PG&E after the Reverter Date and the Reversion. The GDMSA is clear that failure of either party to perform these obligations would give rise to the right to suspend counter-performance. (*See* GDMSA Sections 17.3, 17.4.)

Under applicable California law, "A breach, even if material, does not automatically discharge the contract; it excuses the injured party's performance, and gives him the election of certain remedies." 1 B. Witkin, Summary of California Law, Contracts § 853 (10th ed. 2005); *see Ely v. Bottini*, 179 Cal. App. 2d 287, 296 (1960) ("If a party desires to treat a breach as justifying a rescission he must elect to do so;" where a party elects to proceed under the contract, his exclusive remedy for breach is damages); *In re Aslan*, 909 F.2d 367, 370 (9th Cir. 1990) (breach presents nonbreaching party with option to "treat its own obligations under the contract as discharged and claim damages for the breach or to waive the breach and treat the contract as still in effect." (quoting *Benevides v. Alexander (In re Alexander)*, 670 F.2d 885, 887, n. 1 (9th Cir. 1982)); *see also, Mission Product Hldgs., Inc. v. Tempnology, LLC*, —— U.S. ——, 139 S.Ct. 1652, 1662-63, 203 L.Ed. 2d 876 (2019)

1 (recognizing nonbreaching party's option to either terminate or not licensee's right in trademark).

2      With at least six more years of performance under the GDMSA remaining, a default by either

3 of the Parties would give the other the right to suspend performance under applicable law. The multiple

4 ongoing and long term obligations of the Parties make the GDMSA a classic executory contract.

5      **2.    PG&E Is Judicially Estopped From Denying The GDMSA Is An Executory Contract And Bound By Its Judicial Admissions.**

6

7      By striking the GDMSA from its *Schedule of Executory Contracts to be Assumed*, and not

8 adding it to the *Schedule of Executory Contracts to be Rejected*, PG&E's actions signal a contention

9 that the GDMSA is not an executory contract. (*See Notice of Filing of Supplement to Plan Supplement*

10 *in Connection with Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization*,

11 Dkts. 7503 and 7503-1.) However, not only did the same GDMSA exist in PG&E I, where the Plan

12 assumed all executory contracts including the GDMSA, but since then and until PG&E de-energized

13 the Caribou-Palermo Line, both PG&E and Santa Clara continued to perform their same, continuing

14 obligations under the GDMSA. (Hance Dec., para. 27.)

15      Judicial estoppel bars PG&E from now contending the GDMSA is not executory. "The

16 doctrine is invoked when a party makes a representation to a court, that court accepts it, rules in the

17 party's favor, and then the party makes a contrary argument on that same position to the same court or

18 a different court." *In re PG&E Corp.*, 603 B.R. 471, 482-83 (Bankr. N.D. Cal. 2019) citing *Ah Quin*

19 *v. Cty. Of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013). The doctrine is designed to

20 protect the integrity of the judicial process and to prevent parties from playing fast and loose in judicial

21 proceedings. *Hamilton v. State Farm Fire & Casualty* (9th Cir. 2001) 270 F.3d 778, 782; *In re Coastal*

22 *Plains* (5th Cir. 1999) 179 F.3d 197, 206.

23      First, in PG&E I, the debtor, PG&E, represented all executory contracts were assumed in the

24 plan. The Court accepted that material representation of PG&E in confirming the plan. PG&E

25 continued to perform the same obligations thereafter, and now, in PG&E II, takes a contrary position

26 (that the GDMSA is not executory). There is no factual justification or equitable excuse for this change

27 of position. Neither the GDMSA nor the continuing obligations of the Parties under the GDMSA have

28 changed since it was assumed by PG&E in PG&E I. Indeed, there is not even economic benefit for

1    other creditors in this fabricated Cure Dispute since the Plan provides for payment in full. The only

2    "benefit" is shifting the burden of payment to the Fire Victim Trust. The Court should estop PG&E

3    from asserting this change in position in PG&E II where, unlike the assumption that occurred in

4    PG&E I, the GDMSA is left unassumed and unrejected in a post-confirmation Plan limbo.

5       Second, in PG&E II, PG&E identified the GDMSA as an executory contract in its Schedules

6    (Dkt. 907-1, p. 144 of 674), as well as the interrelated Grizzly Operation And Maintenance Agreement

7    and the Relicensing Cost Sharing Agreement. (Dkt. 907-4, p. 548 of 710). And in confirming its Plan,

8    PG&E was prepared to fully assume the GDMSA as an executory contract until Santa Clara objected

9    and raised PG&E's cure obligations.

10      Third, PG&E expressly assumed the Grizzly Operations and Maintenance Agreement and the

11   Relicensing Cost Sharing Agreement, both executory contracts which would have no reason to exist

12   without the GDMSA. (Dkt. 7037, 7503 and 7503-1.)

13      It is hornbook law that a debtor has an absolute duty to prepare schedules honestly, completely

14   and accurately. *Hamilton v. State Farm Fire & Casualty, supra,* 270 F.3d 778, 785; *Cusano v. Klein*

15   (9th Cir. 2011) 264 F.3d 936, 945-946; *In re Rolland* (Bankr. C.D. Cal. 2004) 317 B.R. 402, 413; *In*

16   *re Mohring* (Bankr. E.D.Cal.1992)142 B.R. 389, 394-395.  A debtor is presumed to have fully read

17   and at all times is responsible for contents of the Schedules, and has an ongoing obligation to correct

18   inaccurate Schedules.  *In re Duplante* (9th Cir. BAP 1997) 215 B.R. 444, 447, n. 8 (9th Cir. BAP

19   1997); *In re Rolland, supra,* 317 B.R. 402, 414; *In re Mohring, supra,* 142 B.R. 389, 394-395.

20      Statements in Schedules are executed under penalty of perjury and, when offered against a

21   debtor, are judicial admissions. *In re Rolland, supra*, 317 B.R. 402, 421-423; *In re Bohrer,* (Bankr.

22   N.D. Cal. 2007) 266 B.R. 200, 201. Judicial admissions are formal admissions in the pleadings which

23   have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the

24   fact and are conclusively binding on the party who made them. *American Title Insurance Co. v.*

25   *Lacelaw Corp.* (9th Cir. 1988) 861 F.2d 224, 226; *In re Rolland, supra*, 317 B.R. 402, 421-423; *In re*

26   *Bohrer, supra,* 266 B.R. 200, 201.

27      Throughout this case and in its Schedules PG&E admitted under oath that the GDMSA is an

28   executory contract, and in the confirmation process, PG&E expressly assumed two additional

executory agreements with Santa Clara, both which are inextricably linked to the GDMSA, and which would not need to exist but for the continued existence of the GDMSA. These judicial admissions are binding on PG&E. The GDMSA is an executory contract and must be assumed or rejected by PG&E.

To date, PG&E has attempted to use this bankruptcy process to relegate the GDMSA to executory contract no man's land because it wants to dodge its cure or rejection obligations. The obligations of PG&E under the GDMSA are those of PG&E to address, not those of the Fire Victim Trust, and PG&E should not be permitted to play fast and loose with the judicial system in addressing its obligations under the GDMSA. PG&E has obtained the benefits of this case including the automatic stay, its Schedules, and the assumption of the related executory contracts for Grizzly in this case. As a consequence of PG&E's actions in PG&E II, judicial estoppel and judicial admissions bar PG&E from contending the GDMSA is no longer executory.

### 3. For These Reasons, The GDMSA Is An Executory Contract Which Must Be Either Assumed Or Rejected By PG&E To Protect The Rights Of Santa Clara

As demonstrated above, the GDMSA is an executory contract; using the standard set forth in the *Countryman* definition, the GDMSA has material, unperformed obligations by both Parties to the agreement. Also, as demonstrated above, PG&E itself acknowledged in PG&E I that the GDMSA is an executory contract, and the nature and character of the GDMSA has not changed in PG&E II. For these reasons, the GDMSA is an executory contract which must either be assumed or rejected. Those are the only choices available to PG&E in its Plan, and is the shield that protects the rights of the City. If the contract is assumed, the Cure Amount can be determined in later proceedings, but it would be paid as a condition of assumption under Article VIII of the Plan. If the contract is rejected, the rejection damages should be Utility General Unsecured Claims under Sections 1.90, 1.223 and entitled to treatment as an unimpaired Class 4B Claimholder (Plan Section 4.23).

These provisions in the Plan are the very terms that protect creditors like Santa Clara from executory contract limbo. The Plan requires assumption or rejection of the GDMSA, and it should be made clear the City's GMDSA-related claims lie against PG&E and not against the Fire Victim Trust. It is time for PG&E to comply with its obligations under the Code and its Plan and to assume or reject the GDMSA as an executory contract and be fully responsible for the events flowing therefrom and

{D0458286.DOCX / 1}

1   not seek to pass-off its ongoing contract obligations to the Fire Victim Trust, which obligations the

2   Trust cannot perform. The idea that PG&E would try to maneuver the GDMSA to the Fire Victim

3   Trust is morally repugnant.

## B. THE PLAN PROVIDES THAT THE CITY'S GDMSA-RELATED CLAIMS ARE NOT AGAINST THE FIRE VICTIM TRUST

6   The City's claim concerning the GDMSA is fundamentally a contract-based claim for breach.

7   As such, and since the GDMSA is an executory contract (as demonstrated above), it must be treated

8   by rejection or assumption and the resulting claim must lie against PG&E, and *not* against the Fire

9   Victim Trust. (*See* Plan Section 4.26 and Confirmation Order, para. 37(b)). As noted above, the

10  continuing obligations of PG&E under the GDMSA (some of which have been enumerated above in

11  III.D.1., above) cannot be performed by the Fire Victim Trust, and can only be performed by PG&E,

12  and for this reason have not been asserted in the City's Fire Claim and are instead specifically reserved

13  in Santa Clara's Utility Claim. Indeed, the Fire Victim Trust is sensibly and expressly *excluded* from

14  having any rights under assumed executory contracts, except for any Assigned Right or Cause of

15  Action (*see* Confirmation Order, para. 18(n)), and the only contractual claims channeled to the Fire

16  Victim Trust are those of providers of goods and services, which Santa Clara is not (*see* Confirmation

17  Order, para. 37(b)). PG&E should not attempt to diminish the proceeds of the Fire Victim Trust and

18  the funds available to pay true fire victims by technical plan semantics. The GDMSA is an executory

19  contract and it must be treated by rejection or assumption with the resulting claim against PG&E.

20  Because only PG&E can perform under the GDMSA, and only PG&E had the ability to cure the breach

21  of its obligations under the GDMSA, the GDMSA claim should *not* be deemed a Fire Claim against

22  the Fire Victim Trust. Rather, the claim is squarely against PG&E.

## V. CONCLUSION

24  PG&E failed (and continues to fail) to deliver the energy capable of being produced by Grizzly,

25  in breach of GDMSA Sections 9.1 and 9.3. PG&E is unable to deliver the energy capable of being

26  produced by Grizzly because the only transmission line which can deliver electricity from Grizzly, the

27  PG&E-owned Caribou-Palermo line, was irreparably damaged in the Camp Fire, which fire was

28  caused by PG&E's failure to comply with Prudent Utility Practice in maintaining the Caribou-Palermo

1  Line. Thereafter, PG&E elected to permanently de-energize the line and not immediately pursue an

2  alternate means of delivering electricity from Grizzly to the City. PG&E's failure to deliver the

3  capacity and energy capable of being produced by Grizzly constitutes a failure of a material obligation

4  of the GDMSA, and is thus a Default under GDMSA Section 17. The Court should compel PG&E to

5  assume or reject the GDMSA as the executory contract that it is.

6  DATED:  July 30, 2021.

RESPECTFULLY SUBMITTED,

7  BOUTIN JONES INC.

8  By: _____ /s/ Thomas G. Mouzes _____

Mark Gorton
9  Thomas G. Mouzes
Robert D. Swanson
10

11  -and-

12  Lisa S. Gast
DUNCAN, WEINBERG, GENZER & PEMBROKE,
13  P.C.

14  -and-

15

16  Brian Doyle
City Attorney
17  CITY OF SANTA CLARA

18  Attorneys *for Creditor and Party-in-Interest,*
*CITY OF SANTA CLARA dba SILICON VALLEY*
19  *POWER*

20

21

22

23

24

25

26

27

28