THOMAS G. MOUZES (SBN 99446)
MARK GORTON (SBN 99312)
ROBERT D. SWANSON (SBN 162816)
**BOUTIN JONES INC.**
555 Capitol Mall, Fifteenth Floor
Sacramento, CA 95814
Telephone: (916) 321-4444
Email: tmouzes@boutinjones.com
        mgorton@boutinjones.com
        rswanson@boutinjones.com

LISA S. GAST *(pro hac vice)*
**DUNCAN, WEINBERG, GENZER & PEMBROKE, P.C.**
1667 K Street NW, Suite 700
Washington, DC 20006
Telephone: (202) 791-3601
Email: lsg@dwgp.com

BRIAN DOYLE (SBN 112923)
City Attorney
**CITY OF SANTA CLARA**
1500 Warburton Avenue
Santa Clara, CA  95050
(508) 615-2234
BDoyle@SantaClaraCA.gov

*Attorney for Creditor and Party-in-Interest*
*CITY OF SANTA CLARA dba SILICON VALLEY POWER*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case Nos. 19-30088 DM (Lead Case) |
| | 19-30089 DM |
| PG&E CORPORATION | Chapter 11 |
| -and- | Jointly Administered |
| PACIFIC GAS AND ELECTRIC | |
| COMPANY, | **DECLARATION OF STEVE HANCE IN** |
| Debtors. | **SUPPORT OF CITY OF SANTA CLARA** |
| | **DBA SILICON VALLEY POWER'S** |
| ☐ Affects PG&E Corporation | **MOTION TO COMPEL ASSUMPTION OR** |
| | **REJECTION OF EXECUTORY CONTRACT** |
| ☑ Affects Pacific Gas and Electric Company | **CONCERNING THE GRIZZLY** |
| | **DEVELOPMENT AND MOKELUMNE** |
| ☐ Affects both Debtors. | **SETTLEMENT AGREEMENT** |
| * All papers shall be filed in the Lead Case | |
| No. 19-30088 DM | |

| | | |
|---|---|---|
| Date: | September 14, 2021 | |
| Time: | 10:00 a.m. (Pacific Time) | |
| Courtroom: | 17 | |

**Response Deadline: August 31, 2021,
4:00 p.m. (Pacific Time)**

Place:     **Telephone/Video Appearances
Only**
United States Bankruptcy Court
450 Golden Gate Ave., 16th Floor
San Francisco, CA 94102

Judge:     Hon. Dennis Montali

I, Steve Hance, declare as follows:

1.     My name is Steve Hance, and I am the Senior Electric Division Manager, Resources and Strategic Planning for the municipal electric utility, Silicon Valley Power ("SVP"), operated as a department of the City of Santa Clara, California ("Santa Clara").

2.     From 1984 to 1990, I was in the United States Navy Nuclear Power program and attended the Navy's Nuclear Power School in Orlando Florida, and prototype training in Balston Spa, New York.

3.     After leaving the US Navy, I earned a Bachelor of Science degree in Mechanical Engineering from California State University, Sacramento in 1994.

4.     Since joining Santa Clara in 1994, I have held a number of positions other than my current position. The prior positions I have held include Operations Planning Technician I, and II, Prescheduler, Senior Prescheduler, Power Trader, and Acting Electric Division Manager of Generation. Typical duties in these classifications revolve around optimally scheduling and bidding Santa Clara's portfolio of resources in California's competitive wholesale market. In addition to these duties, I commonly review California Independent System Operator ("CAISO") stakeholder initiatives to analyze the impact they may have on Santa Clara's fleet of resources, or Santa Clara's customers. Additional responsibilities over the years have included Resource Planning, long and short-term contract negotiation analysis including power purchase agreements for wind, solar, geothermal and hydroelectric resources, natural gas prepay agreements, electric transmission issues, renewable energy credits, energy storage, carbon allowances, resource adequacy capacity, and congestion revenue rights.

5. With respect to the contract at issue, the Grizzly Development and Mokelumne Settlement Agreement between Pacific Gas and Electric Company ("PG&E") and Santa Clara, PG&E Rate Schedule FERC No. 248 ("GDMSA"), as amended. I am the person at Santa Clara responsible for administering this contract. The GDMSA is unique in the aspect that it existed prior to the creation of the CAISO in 1998, and as a result the contract was amended to conform to a number of modifications to the market structure in California. I have been directly involved in the contractual amendments to the GDMSA that have been made since 1998 allowing Santa Clara to continue to receive the value associated with its rights under the GDMSA, including Amendment Number Seven. In my role at Santa Clara, I have also had overall direct responsibility to maximize Santa Clara's supply portfolio value, and in that role have had significant experience in the various market dynamics within and outside the CAISO, and energy related commodity markets in general.

6. The statements in this declaration are based on my knowledge, information, or belief, and I am authorized to make this declaration on behalf of Santa Clara.

7. I have reviewed, or caused to be reviewed, Santa Clara's records and other relevant information related to the GDMSA and Santa Clara's ownership of the Grizzly Hydroelectric Project ("Grizzly"), including Santa Clara's records related to procurement, billing, revenues, budget and other similar matters as well as documents and information related to PG&E I found to be relevant to my statements in this declaration.

8. I submit this declaration in support of City of Santa Clara dba Silicon Valley Power's Motion to Compel Assumption or Rejection of Executory Contract Concerning the Grizzly Development and Mokelumne Settlement Agreement.

9. The GDMSA is a contract between PG&E and the City of Santa Clara, entered into on March 8, 1990, and most recently filed by PG&E at the Federal Energy Regulatory Commission ("FERC") as a stand-alone agreement in FERC Docket No. ER17-1752-000, effective August 1, 2017. The Debtors' *Schedule of Executory Contracts etc. and Proposed Cure Amounts* (the "Cure Notice", Dkt. No. 7037), filed on May 1, 2020, identified the GDMSA as an executory contract that the Debtors are assuming, but identified no cure amount due to Santa Clara. (*See* Cure Notice, Dkt. 7037 at page 335.) A true and correct copy of the GDMSA can be found at

1  http://elibrary.ferc.gov:0/idmws/File_List.asp?document_id=14598242 and is attached as **Exhibit 1**

2  to the Request of Judicial Notice ("RJN"). The GDMSA was further amended by PG&E and Santa

3  Clara during 2020, as addressed below in paragraphs 25 and 26.

4       10.    The GDMSA was entered into by PG&E and Santa Clara as a settlement of certain

5  issues between the two entities, pursuant to which Santa Clara would become a joint licensee in an

6  existing hydroelectric license (the "Bucks Creek Project," FERC Project No. 619), which had been

7  amended by FERC to give PG&E permission to construct and operate a hydroelectric facility in

8  Plumas County, California, to be known as "Grizzly." Under the GDMSA, Santa Clara would finance

9  and own Grizzly in conjunction with the Bucks Creek Project. (*See* GDMSA Recitals C-E.)

10       11.    Santa Clara owns 100% of Grizzly during the "Ownership Period" provided in the

11  GDMSA. (*See* GDMSA Section 2.1) The Ownership Period is defined as ending upon the first of

12  (1) the occurrence of the Reverter Date; (2) development of Grizzly is terminated; or (3) abandonment

13  of the project by Santa Clara or condemnation. (*See* GDMSA at 1.1.47) Grizzly has been developed,

14  and the project has not been abandoned by Santa Clara or condemned, so the Ownership Period will

15  end upon the "Reverter Date". The Reverter Date is the date on which Santa Clara's interest in Grizzly

16  terminates and reverts to PG&E. (*See* GDMSA at Section 1.1.59.)

17       12.    The Reverter Dates set forth in the GDMSA are complicated, but Santa Clara and

18  PG&E have agreed in filings before FERC that the first possible Reverter Date is in November 2027.

19  (*See* GDMSA at 12.3 and *Public Utilities With Existing Contracts in the California Independent*

20  *System Operator Corporation Region*, 112 FERC ¶61,007 at PP 52-53 (2005), RJN **Exhibit 5**.) This

21  means that the Ownership Period, where Santa Clara is the owner of Grizzly, extends until at least

22  2027 under the GDMSA.

23       13.    Grizzly includes, but is not limited to, the Grizzly (hydroelectric) powerhouse and a

24  short 115 kV generation tie-line ("Grizzly Transmission Line"). (*See* GDMSA Sections 1.1.33(d) and

25  (f)).

26       14.    Santa Clara owns and is to receive all energy generated by Grizzly, less transmission

27  losses, during the Ownership Period, (*See* GDMSA Section 2.4.2.) which energy plus Operating

28  Reserves may not exceed 17.66 MW (*See* GDMSA Appendix F, Section 2.3.2.) Operating Reserves

are defined as "the combination of Spinning and Non-Spinning Reserve required to meet Applicable Reliability Criteria for reliable operation of the CAISO Balancing Authority Area." (*See* GDMSA Appendix F, Section 1.19.)

15.     The GDMSA provides that Santa Clara is to deliver (using the Grizzly Transmission Line) "all electric power generated at Grizzly, net of station use and losses," to PG&E at the "interconnection of the PG&E-owned span of the Grizzly Transmission Line at the disconnect switch located on the Grizzly transmission line end structure near PG&E's Caribou-Sycamore Creek transmission line." (*See* GDMSA Section 9.1.2) It is not clear to Santa Clara at what point the name change occurred, but the Grizzly Transmission Line now interconnects to what is known as PG&E's Caribou-Palermo Line ("Caribou-Palermo Line"). (*See* PG&E/Santa Clara Final License Application for Bucks Creek Hydroelectric Project, FERC Project No. 619, at Volume I, Exhibit A, Pages A-19, A-20 (filed Dec. 12, 2016) (http://www.bucksrelicensing.com/Public/default.aspx, RJN, **Exhibit 4**.) The Caribou-Palermo Line is the sole interconnection of the Grizzly Transmission Line to PG&E's transmission system, and without it, energy produced by Grizzly cannot be scheduled and delivered to Santa Clara, and renders Grizzly inoperable by Santa Clara. Once Santa Clara delivers the power generated by Grizzly (net of station use and losses) using the Grizzly Transmission Line to PG&E's Caribou-Palermo Line, PG&E is contractually obligated to deliver that amount of energy and capacity to Santa Clara at certain Santa Clara Receiving Stations or other Points of Delivery specified by Santa Clara. (*See* GDMSA Section 9.1.1.) The Receiving Stations and Points of Delivery include the points of interconnection between PG&E and Santa Clara, where Santa Clara receives power for itself and its customers. (*See* GDMSA Sections 1.1.58 and 1.1.51.)

16.     The GDMSA also obligates PG&E to "endeavor to maintain continuity of service to Santa Clara and to take all reasonable steps to schedule and deliver [Grizzly energy] to Santa Clara under this Agreement." (GDMSA Section 9.3.1.)

17.     The GDMSA obligated PG&E to perform operation and maintenance services as the Operation Manager for Grizzly for an initial term of two years, commencing on the Commercial Operation Date of Grizzly (*see* GDMSA Sections 5.3 and 5.5). As contemplated in the GDMSA, Santa Clara opted to continue to employ PG&E to perform these services after the initial two year

period (*see* GDMSA Section 5.5) through a separate Operation and Maintenance Agreement entered into in late 1995, under which PG&E continued to perform operation and maintenance services at Grizzly for Santa Clara. When the term of the 1995 Operation and Maintenance Agreement ended, PG&E and Santa Clara entered into a June 2002 Grizzly Operation and Maintenance Agreement ("Grizzly Operation and Maintenance Agreement") between PG&E and Santa Clara, which also had a specific term and termination date. Since both Parties wanted to continue the arrangement, on September 17, 2008, the Parties entered into Amendment No. 1 to the Operation and Maintenance Agreement, which amendment modified the term of the Grizzly Operation and Maintenance Agreement such that it remains effective unless and until one of the Parties gives 180 days' notice to terminate. A true and correct copy of the current Grizzly Operation and Maintenance Agreement, as amended by Amendment No. 1, is attached collectively to the RJN as **Exhibit 2**. The Grizzly Operation and Maintenance Agreement, as amended, adopted verbatim extracts of Section 5 of the GDMSA concerning operation and maintenance and portions of Section 15 concerning operating period insurance. PG&E is compensated by Santa Clara for PG&E's operation and maintenance of Grizzly. (*See* **Exhibit 1,** GDMSA, Sections 5.8, 5.9; RJN, **Exhibit 2**, Grizzly Operation And Maintenance Agreement, Ex. A, Sections 5.8, 5.9.)

18.     During 2013, PG&E and Santa Clara entered into a Letter Agreement Regarding Bucks Creek Hydroelectric Project Relicensing Cost Sharing Pursuant to Grizzly Development and Mokelumne Settlement Agreement (1990) ("Relicensing Cost Sharing Agreement"), in which the Parties clarified how they would share the costs of pursuing the re-issuance of the Bucks Creek License. A true and correct copy of the Relicensing Cost Sharing Agreement is attached to the RJN as **Exhibit 3**.

19.     I am informed and believe that the Camp Fire damaged or destroyed, among many other things, PG&E's Caribou-Palermo Line. I am informed and believe that since November 8, 2018, the Caribou-Palermo Line has not been in service.

20.     I am informed and believe that PG&E has publicly announced that the Caribou-Palermo Line has been permanently de-energized.

21.     I am informed and believe that PG&E has pleaded guilty to, among other things, one

count of "Unlawfully Causing a Fire" (along with 84 counts of involuntary manslaughter) which I understand entails admitting that its actions were reckless with regard to its having caused the Camp Fire and the damage caused by the Camp Fire.

22. With the permanent de-energization of the Caribou-Palermo Line, Grizzly is "cut off" from the rest of the electric transmission grid and PG&E has no way of scheduling and delivering energy and capacity capable of being generated from Grizzly to Santa Clara. This means that while Grizzly remains in an operable condition and is capable of generating power, this power is essentially useless without a transmission path to the broader electric transmission grid. The situation is akin to owning a car that can run, but is sitting on a short driveway surrounded by water with no bridge to allow it to be driven anywhere.

23. Due to the de-energization of the Caribou-Palermo Line resulting from the Camp Fire, which was Grizzly's only interconnection to the electric transmission grid, PG&E has not been able to meet its ongoing obligations (pursuant to Section 9 of the GDMSA) to deliver the energy and capacity capable of being generated by Grizzly to Santa Clara since the November 18, 2018 date of the Camp Fire.

24. By recklessly causing the Camp Fire that destroyed the Caribou-Palermo Line, PG&E itself caused its inability to deliver the energy and capacity Grizzly is capable of producing to Santa Clara, in breach of its obligations under the GDMSA (*See* GDMSA Section 9) and which breach renders PG&E in default of the GDMSA (*See* GDMSA Section 17). For this reason, Santa Clara has monetary damages related to PG&E's Default of the GDMSA.

25. PG&E has continued to take actions under the GDMSA at FERC in regulatory filings, including, on January 8, 2020, seeking to amend rate schedules and on November 23, 2020 concerning reconnection. Attached as **Exhibit 9** to the RJN is a true and correct copy of PG&E's Transmittal Letter dated January 8, 2020, to FERC in FERC Docket No. ER20-757-000, including Amendment Number Seven to the Grizzly Development and Mokelumne Settlement Agreement by and between Pacific Gas and Electric Company and City of Santa Clara ("Amendment Number Seven"). Amendment Number Seven to the GDMSA incorporates the terms of the Relicensing Costs Sharing Agreement as revisions to Section 12.2 of the GDMSA.

26.     I am informed that by Letter Order in FERC Docket No. ER20-757-000 dated March 3, 2020, FERC accepted the revisions to the GDMSA for filing, effective March 9, 2020, as requested by PG&E in its January 8, 2020 Transmittal Letter. Attached as **Exhibit 10** to the RJN is a true and correct copy of the FERC's Letter Order dated March 3, 2020 to Pacific Gas and Electric Company in FERC Docket No. ER20-757-000.

27.     Since the confirmation of the Plan in PG&E I, the GDMSA has remained in place without material change to the obligations of Santa Clara and PG&E. Moreover, not only did the same GDMSA exist in PG&E I, where the Plan assumed all executory contracts including the GDMSA, but since then and until PG&E de-energized the Caribou-Palermo Line, both PG&E and Santa Clara continued to perform their same, continuing obligations under the GDMSA.

I have personal knowledge of the facts set forth in this declaration and, if called as a witness I could and would competently so testify, except for statements included herein made upon information or belief, for which I have specified the basis therefor.

I declare under penalty of perjury that the foregoing is true and correct under the laws of the United States of America.

Executed on July 29, 2021.

Steve Hance