THOMAS G. MOUZES (SBN 99446)
MARK GORTON (SBN 99312)
ROBERT D. SWANSON (SBN 162816)
**BOUTIN JONES INC.**
555 Capitol Mall, Fifteenth Floor
Sacramento, CA 95814
Telephone: (916) 321-4444
Email: tmouzes@boutinjones.com
         mgorton@boutinjones.com
         rswanson@boutinjones.com

LISA S. GAST *(pro hac vice)*
**DUNCAN, WEINBERG, GENZER & PEMBROKE, P.C.**
1667 K Street NW, Suite 700
Washington, DC 20006
Telephone: (202) 791-3601
Email: lsg@dwgp.com

BRIAN DOYLE (SBN 112923)
City Attorney
**CITY OF SANTA CLARA**
1500 Warburton Avenue
Santa Clara, CA 95050
(508) 615-2234
BDoyle@SantaClaraCA.gov

*Attorney for Creditor and Party-in-Interest*
*CITY OF SANTA CLARA dba SILICON VALLEY POWER*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E CORPORATION<br>-and-<br>PACIFIC GAS AND ELECTRIC COMPANY,<br>                    Debtors.<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors.<br><br>* All papers shall be filed in the Lead Case | Case Nos. 19-30088 DM (Lead Case)<br>19-30089 DM<br><br>Chapter 11<br>Jointly Administered<br><br>**DECLARATION OF MARK GORTON IN SUPPORT OF CITY OF SANTA CLARA DBA SILICON VALLEY POWER'S MOTION TO COMPEL ASSUMPTION OR REJECTION OF EXECUTORY CONTRACT CONCERNING THE GRIZZLY DEVELOPMENT AND MOKELUMNE SETTLEMENT AGREEMENT** |

| | |
|---|---|
| No. 19-30088 DM | Date: September 14, 2021 |
| | Time: 10:00 a.m. |
| | Courtroom: 17 |
| | |
| | **Response Deadline: August 31, 2021, 4:00 p.m. (Pacific Time)** |
| | |
| | Place: **Telephone/Video Appearances Only** |
| | United States Bankruptcy Court |
| | 450 Golden Gate Ave., 16th Floor |
| | San Francisco, CA 94102 |
| | Judge: Hon. Dennis Montali |

I, Mark Gorton, declare as follows:

1. I am an attorney at law licensed to practice before all courts of the State of California and admitted to practice in the District and Bankruptcy Court in the Northern District of California. I am formerly a shareholder and now counsel of the law firm of Boutin Jones Inc., co-counsel for the City of Santa Clara dba Silicon Valley Power ("Santa Clara" or "City") in this case. I am personally familiar with the facts recited herein, except where based upon information and belief and as to those matters, I believe them to be true. If called upon, I could and would testify competently thereto.

2. My declaration testimony is in support of the City's *Motion to Compel Assumption or Rejection of Executory Contract concerning the Grizzly Development and Mokelumne Settlement Agreement* ("Motion").

3. The Motion seeks an order compelling Pacific Gas and Electric Company ("PG&E," the "Utility" or the "Debtor") to assume or reject the executory contract or unexpired lease referred to as the Grizzly Development and Mokelumne Settlement Agreement ("GDMSA").

4. As the Motion sets out and the record in this case reflects, on April 6, 2001, PG&E filed its first chapter 11 case. (Case No. 01-30923 DM, filed April 6, 2001; "PG&E I"). The GDMSA existed at that time and was assumed generally with all other executory contracts, and performed by PG&E postpetition and postconfirmation. (*See Order Confirming Plan of Reorganization under Chapter 11 of the Bankruptcy Code for Pacific Gas and Electric Company proposed by Pacific Gas and Electric Company, PG&E Corporation and the Official Committee of Unsecured Creditors Dated July 31, 2003, as modified*, entered December 22, 2003, Dkt. 14272, Case No. 01-30923 DM at paragraph 27, RJN **Exhibit 6)**.

5. In this second PG&E chapter 11 ("PG&E II"), PG&E initially identified the GDMSA as an executory contract in its schedule of executory contracts (*See* item 2.7347 in the *Utility's Schedule G Executory Contracts and Unexpired Leases* filed March 14, 2019 as Dkt. 907-1). This identification was consistent with PG&E's treatment of the GDMSA in PG&E I and, in Santa Clara's view, was appropriate based on the substantial "yet to be performed" and ongoing obligations of the Parties.

6. Rather than separately assuming and rejecting executory contracts prior to

Case: 19-30088    Doc# 10998-2    Filed: 07/30/21    Entered: 07/30/21 16:15:27    Page 3 of 6

confirmation, PG&E obtained a scheduling order (Dkt. 5732) setting May 1, 2020 as the deadline to file its Plan Supplement, including a schedule of which contracts would be assumed and the proposed cure amount, if any. Counter-party creditors had until May 15, 2020 to file their objections.

7. In the May 1, 2020 filing of its Plan Supplement, PG&E identified all of the executory contracts with Santa Clara as to be assumed,[1] including the GDMSA and two contracts interrelated with the GDMSA (the Grizzly Operations and Maintenance Agreement and the Relicensing Cost Sharing Agreement). The Motion contains a chart, compiled from *PG&E's Schedule of Executory Contracts to Be Assumed and Proposed Cure Amounts*, filed May 1, 2020 (the "Cure Notice," Dkt. 7037), that summarizes the executory contracts with Santa Clara that PG&E initially identified as to be assumed and highlights the GDMSA, the Grizzly Operations and Maintenance Agreement and the Relicensing Cost Sharing Agreement.

8. As the City expected, PG&E specifically identified the GDMSA for assumption in its Cure Notice (Contract ID ELCOPS3_00001). However, PG&E's Cure Notice identified no cure amount due to the City, despite PG&E's failure to deliver Grizzly Power to Santa Clara from and after PG&E's voluntary de-energization of the Caribou-Palermo line following the Camp Fire. (*See* Cure Notice, Dkt. 7037 at pp. 335.)

9. In response, on May 15, 2020, Santa Clara filed its *Objection to Cure Amount and Request for Adequate Assurance of Future Performance by Counterparty City of Santa Clara dba Silicon Valley Power* (Dkt. 7208) ("Cure Objection").[2] Santa Clara's Cure Objection challenged

---

[1] Paragraph 32(a) of the *Order Confirming Debtors' and Shareholder Proponents' Joint Chapter 11 Plan*, Docket 8053, entered June 20, 2020, and Section 8.1 of the Plan.

> Pursuant to Section 8.1 of the Plan, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts.

[2] At the same time, Santa Clara was also party to *The Municipal Objectors' (1) Objection to Confirmation of Plan of Reorganization and (2) Objection to Cure Notice and Other Matters*

PG&E's apparent position in the Cure Notice that no cure amount related to the GDMSA is required, and sought cure and adequate assurance of future performance regarding PG&E's breach of the GDMSA and the resulting current and continuing loss of value from Grizzly output until the interconnection of Grizzly to the electric grid is re-established.[3]

10. Without explanation, but in apparent response to Santa Clara's Cure Objection, on May 22, 2020, PG&E amended its *Schedule of Executory Contracts to be Assumed*, and struck the GDMSA from the list of assumed contacts. PG&E did not, however, file a companion amendment to the *Schedule of Executory Contracts to be Rejected* to add the GDMSA there. (*See Notice of Filing of Supplement to Plan Supplement in Connection with Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization*, Dkts. 7503 and 7503-1.) The Motion incudes a chart, compiled from to *PG&E's Schedule of Executory Contracts to Be Assumed*, filed May 22, 2020 (Dkt. 7503), that shows how PG&E struck the GDMSA from the assumed list.

11. Taken aback by PG&E's position that the GDMSA would neither be assumed nor rejected, on June 1, 2020, Santa Clara filed its *Supplemental Objection to Plan Confirmation Based on Debtors' May 22, 2020 Amendment of Schedule of Executory Contracts to be Assumed* (Dkt. 7691), noting that the then-proposed (now confirmed) Plan required that executory contracts be either assumed or rejected, and the GDMSA could not be left in some sort of Plan no man's land.

12. While PG&E never formally responded to the Supplemental Objection, counsel for PG&E, Matthew Gorem and Brian Morganelli, on May 26, 2020, reported to me that PG&E contends the GDMSA is *not executory* and suggested the Parties discuss whether a negotiated business solution could be reached that would resolve Santa Clara's GDMSA-related claims. Counsel for PG&E further

---

*Pertaining to Assumption Pursuant to Section 365(b)(1) of the Bankruptcy Code* (Dkt. 7231), filed May 15, 2020.

[3] Santa Clara also noted in its Cure Objection that despite the magnitude of the cure and adequate assurance obligations (now nearly $20 million), PG&E's decision to assume the GDMSA was prudent because rejection would result in a much larger rejection damages claim since such breach would cause Grizzly to revert to PG&E, triggering the "Reverter Reimbursement," currently estimated to be in excess of $60 million. (*See* GDMSA Section 12.4, which describes the "intent of the Parties that Santa Clara be made whole and reimbursed by PG&E for the fair market value of Grizzly upon . . . the reversion of Grizzly to PG&E."). (*See* Cure Objection at para. 3 and n. 2 and n. 3).

{D0458286.DOCX / 1}

stated that absent an agreement, this Court could resolve these issues in post-confirmation proceedings under Section 8.2(d) of the Plan (Dkt. 8048)[4] and paragraph 34(b) of the Confirmation Order (Dkt. 8053).[5]

I declare under penalty of perjury that the forgoing is true and correct. Executed on July 29, 2021.

                 /s/ *Mark Gorton*
                 MARK GORTON

---

[4] Section 8.2(d) of the Plan provides as follows:

> If the Bankruptcy Court makes a determination regarding any of the matters set forth in Section 8.2(c) above with respect to any executory contract or unexpired lease (including, without limitation that the Cure Amount is greater than the amount set forth in the applicable cure notice), as set forth in Section 8.8(a) below, the Debtors or Reorganized Debtors, as applicable, shall have the right to alter the treatment of such executory contract or unexpired lease, including, without limitation, to add such executory contract or unexpired lease to the Schedule of Rejected Contracts, in which case such executory contract or unexpired lease shall be deemed rejected as of the Effective Date.

The matters set forth in Section 8.2(c) and this court's authority to adjudicate such matters are provided in that section of the Plan.

> (c) In the event of an unresolved dispute regarding (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order (which order may be the Confirmation Order).

[5] Paragraph 34(b) of the Confirmation Order states:

> b. Except as otherwise provided in this Confirmation Order, any issues with respect to timely filed Cure Disputes will be preserved and may be resolved in due course either consensually without further order of the Court, or, after notice and an opportunity to be heard, by a Final Order of the Court, which may be entered after the Effective Date.