# EXHIBIT 2

# GRIZZLY OPERATION AND MAINTENANCE AGREEMENT
## by and between
## PACIFIC GAS AND ELECTRIC COMPANY
## and
## CITY OF SANTA CLARA

### PREAMBLE

This Grizzly Operation and Maintenance Agreement ("Agreement") is made and entered into this 5th day of June, 2002, by and between PACIFIC GAS AND ELECTRIC COMPANY, a California Corporation ("PG&E"), and the CITY OF SANTA CLARA, CALIFORNIA, a chartered California municipal corporation ("Santa Clara"). Santa Clara and PG&E may be referred to in this Agreement individually as a "Party" or collectively as "Parties" or the "Parties to this Agreement."

The Parties to this Agreement hereby agree as follows:

### RECITALS

Whereas

A. PG&E is engaged in, among other things, the business of generating, transmitting, and distributing electric capacity and energy in northern and central California;

B. Santa Clara owns and operates a municipal electric utility for the benefit of its citizens and ratepayers and is engaged in, among other things, the business of generating, transmitting, and distributing electric capacity and energy in Santa Clara;

C. Santa Clara owns and operates the Grizzly Hydroelectric Project ("Grizzly"), a part of the Bucks Creek Project, FERC No. 619, located in Plumas County, California, as set forth in the Grizzly Development and Mokelumne Settlement Agreement by and between PG&E and Santa Clara, dated March 8, 1990, as amended ("Grizzly Agreement");

D. During the time period since the commencement of commercial operation of Grizzly on November 18, 1993, PG&E has performed operation and maintenance services at Grizzly as Santa Clara's Operation Manager in accordance with the terms and conditions of the Grizzly Agreement; and,

E. PG&E and Santa Clara desire to extend PG&E's term as Santa Clara's Grizzly Operation Manager as more fully set forth herein.

## AGREEMENT PROVISIONS

In consideration of the above recitals as well as the promises and mutual covenants contained in this Agreement, the Parties hereby agree as follows:

1.  **CONTINUED EMPLOYMENT OF PG&E**

    Santa Clara hereby continues the employment of PG&E to act as Santa Clara's Operation Manager of *Grizzly* for the period July 1, 2002 to December 31, 2007; provided, that either Santa Clara or PG&E may terminate PG&E's employment as Operation Manager at any time without cause upon one hundred eighty (180) days' advance written notice to the other Party. If neither Party has provided notice of termination as of December 31, 2007, this Agreement shall automatically be extended for successive one hundred eighty (180) day terms, subject to each Party's continued right to terminate this Agreement without cause upon one hundred eighty (180) days' notice to the other Party. PG&E hereby accepts said continued employment and agrees to act as Santa Clara's Grizzly Operation Manager for the specified period.

2.  **SCOPE OF SERVICES TO BE PROVIDED**

    Except as otherwise specified in this Agreement, PG&E shall furnish all technical and professional services, including labor, material, equipment, transportation, supervision and expertise (collectively referred to as "Services") to satisfactorily act as Santa Clara's Grizzly Operation Manager as more fully described in the Grizzly Agreement, certain portions of which are reproduced and attached to this Agreement as Exhibit A, for the Parties' convenience.

3.  **TERMS AND CONDITIONS OF CONTINUED EMPLOYMENT**

    Unless otherwise specified in this Agreement, the terms and conditions of PG&E's continued employment as Santa Clara's Grizzly Operation Manager and the rights, obligations, and responsibilities of the Parties relative to such continued employment shall be as specified in the Grizzly Agreement.

4.  **ASSIGNMENTS AND SUCCESSORS IN INTEREST**

    Santa Clara and PG&E bind themselves, their partners, successors, assigns, executors, and administrators to all covenants of this Agreement. In the event either Party wishes to assign any of its rights or obligations under this Agreement, the Parties shall comply with the provisions of Section 19 of the Grizzly Agreement. Santa Clara acknowledges that PG&E currently contemplates transferring and assigning its rights and obligations under this Agreement to Electric Generation LLC, consistent with its Plan of Reorganization Under Chapter 11 of the Bankruptcy Code filed in U.S. Bankruptcy Court, as that plan may be amended by PG&E ("POR"). Santa Clara hereby consents to such transfer and

assignment, provided however, that such consent shall not be effective until the effective date of the **POR**.

5. <u>**PG&E IS AN INDEPENDENT CONTRACTOR**</u>

    The Parties agree that, in performing the Services under this Agreement, PG&E is not an agent or employee of Santa Clara but an independent contractor with full rights to manage its employees subject to the requirements of the law. All persons employed by or contracted with PG&E to furnish labor and/or materials in connection with the Services are not employees of Santa Clara in any respect.

6. <u>**FAIR EMPLOYMENT**</u>

    PG&E shall not discriminate against any employee or applicant for employment because of race, color, creed, national origin, sex, age, condition of physical handicap, religion, ethnic background, or martial status, in violation of state or federal law.

7. <u>**INSURANCE REQUIREMENTS**</u>

    During the term of this Agreement, Santa Clara shall maintain in full force and effect the operating period insurance policies set forth in Section 15 of the Grizzly Agreement. Said policies shall be maintained with respect to employees and vehicles assigned to the performance of Services under this Agreement with coverage amounts, endorsements, certificates of insurance, and coverage verifications as defined in the Grizzly Agreement, certain portions of which are reproduced and attached to this Agreement as Exhibit B, for the Parties' convenience.

8. <u>**INTEGRATED DOCUMENT - TOTALITY OF AGREEMENT**</u>

    This Agreement and the Grizzly Agreement embody the entire agreement between Santa Clara and PG&E with respect to PG&E's continued employment as Santa Clara's Grizzly Operation Manager. No other understanding, agreements, or conversations, or otherwise with any officer, agent, or employee of Santa Clara or PG&E prior to execution of this Agreement shall affect or modify any of the terms or obligations contained in any documents comprising this Agreement or the Grizzly Agreement, and any such verbal agreement shall be considered as unofficial information and in no way binding upon Santa Clara or PG&E. The Parties acknowledge that contemporaneously with the execution of this Agreement, they have executed (i) the Bucks Creek Project Settlement Agreement and (ii) Amendment Number Four to the Grizzly Development and Mokelumne Settlement Agreement. The Parties intend each of these agreements to be governed by its own terms and conditions and not dependent upon the terms and conditions of the other agreements.

## 9. CAPTIONS

The captions of the various sections, paragraphs and subparagraphs are for convenience only and shall not be considered or referred to in resolving questions of interpretation.

## 10. STATUTES AND LAW GOVERNING CONTRACT

This Agreement shall be governed and construed in accordance with the statutes and laws of the State of California.

## 11. REFERENCE TO PROVISIONS OF THE GRIZZLY AGREEMENT

The Parties shall rely upon the terms and conditions of the Grizzly Agreement as the controlling provisions for the rights and responsibilities not otherwise set forth under this Agreement, including but not limited to, issues related to Correction of Work, Standards of Workmanship, Subcontracting, Third Party Beneficiaries, Hold Harmless and Indemnification Provisions, Insurance, Amendments, Protection and Security of Work, Settlement of Disputes, and Notices.

## 12. SIGNATURE CLAUSE

The signatories to this Agreement warrant and represent that they have been appropriately authorized to enter into this Agreement on behalf of the Party for whom they sign.

///

///

///

///

///

///

///

///

///

///

///

The Parties to this Agreement hereby indicate their acknowledgment and acceptance of the terms and conditions stated herein as evidenced by the following signatures of their duly authorized representatives, as of the date first written above.

**CITY OF SANTA CLARA, CALIFORNIA,**
a chartered California municipal corporation

APPROVED AS TO FORM:

_____
ROLAND D. PFEIFER
Assistant City Attorney

ATTEST:

_____
J. E. Boccignone
City Clerk

By: _____
JENNIFER SPARACINO
City Manager

1500 Warburton Avenue
Santa Clara, California 95050
Telephone: (408)615-3000
Fax: (408)241-8291

"Santa Clara"

**PACIFIC GAS AND ELECTRIC COMPANY,**
a California corporation

APPROVED AS TO FORM:

_____
JANET C. LODUCA
Attorney

By: _____
RANDAL LIVINGSTON
Lead Director Power Generation

Mail Code N11C
P.O. Box 770000
San Francisco, California 94177
Telephone: (415)973-4603
Fax: (415)973-5323

"PG&E"

# GRIZZLY OPERATION AND MAINTENANCE AGREEMENT
## by and between
## PACIFIC GAS AND ELECTRIC COMPANY
## and
## CITY OF SANTA CLARA

## EXHIBIT A

Note: The language of this Exhibit A is intended to be verbatim extracts of Section 5 of the Grizzly Agreement and is made a part of this Agreement as a convenience to the Parties. Any inadvertent inconsistency or conflict between the language of this Exhibit A and the applicable parts of Section 5 of the Grizzly Agreement is unintentional and it is the intent of the Parties that the language of the Grizzly Agreement shall control.

## 5. OPERATION AND MAINTENANCE

### 5.1 Grizzly Operation Manager

5.1.1 Santa Clara shall, at all times during the Ownership Period subsequent to the Commercial Operation Date, select and provide an Operation Manager for Grizzly. Such Operation Manager may either be Santa Clara or a contracted agent, including, but not limited to, PG&E. The Operation Manager must have demonstrated and significant experience and ability (1) in the operation and maintenance of hydroelectric facilities of a type similar to Grizzly, and (2) in compliance with FERC and other regulatory requirements applying to the operation and maintenance of such facilities. Santa Clara shall provide, and confer with PG&E on, the qualifications of candidates for Operation Manager and the Parties shall mutually agree upon which candidates are so qualified. Approval of the qualifications of any such candidate shall not be withheld unreasonably. Santa Clara shall be solely responsible for selecting and employing the Operation Manager from candidates so pre-qualified.

5.1.2 The Operation Manager shall operate Grizzly as scheduled or dispatched by PG&E, at a minimum maintain Grizzly in accordance with PG&E standards, and comply with this Agreement and all license and regulatory requirements. In the event of an emergency, the Operation Manager may deviate from PG&E's schedule or dispatch instructions for the duration of the emergency, in accordance with Prudent Utility Practice.

Case: 19-30088    Doc# 11000-2    Filed: 07/30/21    Entered: 07/30/21 16:24:14    Exhibit 02 Page 7 of 20

Exhibit 02
Page 6 of 19

5.2 Scope Of Work

    5.2.1    Pursuant to the provisions of Section 5.1, the Operation Manager shall operate and maintain Grizzly, including furnishing adequate qualified personnel and all supervision, labor, equipment, tools, materials, supplies, and incidentals. The Operation Manager shall maintain complete and accurate records regarding Costs of Operation and Costs of Plant in accordance with the Uniform System of Accounts and shall make available for Santa Clara's and PG&E's inspection and audit all records regarding such costs. The Operation Manager shall maintain complete and accurate records regarding its activities of operation and maintenance of Grizzly. In performing its obligations under this Section, the Operation Manager shall act with due diligence. Work shall be performed in accordance with Prudent Utility Practice and all applicable laws and FERC licensing requirements. Higher standards shall be followed if directed by Santa Clara.

    5.2.2    The Operation Manager shall establish operating and maintenance practices and procedures, and perform all reasonable, necessary, and appropriate operation and maintenance services generally performed by PG&E for its own hydroelectric projects. As a minimum standard, these services shall conform to PG&E's standard practices and procedures, including its Preventive Maintenance Program, and be consistent with Prudent Utility Practice. Higher standards shall be followed if directed by Santa Clara. PG&E will provide Santa Clara with its current standard procedures and practices for the operation and maintenance of its hydroelectric projects, and with amendments and modifications to the procedures and practices as they are periodically implemented.

    5.2.3    Santa Clara shall be responsible for seeing that the Operation Manager performs according to the standards of this Section 5 and keeps Grizzly in an operating condition consistent with Prudent Utility Practice.

    5.2.4    In purchasing and installing any equipment or making any replacements, additions and betterments at Grizzly, including but not limited to contracting for work and services, Santa Clara shall attempt to obtain warranties which are comparable to those provided for Section 4.20.5 and to provide for their assignability to PG&E in the event of the occurrence of the Reverter Date.

5.3 Designation Of Operation Manager For Initial Term

For the initial term, specified in Section 5.5, Santa Clara hereby employs PG&E to act as Santa Clara's agent and Operation Manager as provided herein. PG&E hereby accepts that employment and agrees to act as Santa Clara's agent in this capacity. PG&E shall provide such services in a manner consistent with all applicable laws and regulations for tax-exempt financing, as such laws or regulations are subsequently amended from time to time, as necessary to preserve Santa Clara's tax-exempt financing for Grizzly. PG&E shall keep Santa Clara informed as to all significant developments with respect to the operation and maintenance of Grizzly.

5.4 No Other Agency

Except for the appointment of PG&E to act as Operation Manager, and except as otherwise provided herein, with respect to the functions specified in Section 5.3, neither Party shall be agent of or have a right or power to bind the other Party.

5.5 Initial Term

The initial term of PG&E's obligation as Operation Manager shall commence on the Commercial Operation Date and shall terminate on the second anniversary of the Commercial Operation Date; provided, that either Santa Clara or PG&E may terminate PG&E's employment as Operation Manager at any time without cause upon ninety (90) days advance written notice. Prior to the end of such initial term, the Parties shall discuss whether or not Santa Clara will continue to employ PG&E as Operation Manager, and the terms and conditions of any such continuation. The Parties understand that any such continuation of PG&E as Operation Manager must be consistent with the then existing Internal Revenue Service regulations to preserve Santa Clara's tax-exempt financing.

5.6 Replacement Of PG&E As Operation Manager

If Santa Clara replaces PG&E as Operation Manager, all of the foregoing restrictions enumerated in Sections 5.1, 5.2, 5.3, and 5.4 shall apply to the entity chosen to fulfill the obligations of the Operation Manager. Santa Clara will assume responsibility and liability for operation and maintenance performed by the subsequent Operation Manager.

5.7 Maintenance Activities

5.7.1 At least seventy (70) days prior to the end of each Calendar Year, the Operation Manager shall notify Santa Clara and PG&E of the proposed scheduled maintenance periods during the ensuing Calendar Year when Grizzly may be shut down. The Operation

Manager will schedule the maintenance period(s). The Parties shall cooperate by scheduling such scheduled maintenance periods at times agreeable to both Parties. All maintenance outages must be cleared through PG&E Power Control.

5.7.2   The proposed maintenance schedule shall contain a description of planned work of sufficient detail to permit the Parties to confirm conformity with this Agreement. The schedule and description shall be updated quarterly for activities scheduled for the following quarter and remainder of the Calendar Year.

5.7.3   The Operation Manager shall prepare and submit to Santa Clara for its approval, a recommended schedule, plan, and description of all capital improvements ordered by FERC or others, and of all replacement-type maintenance and extraordinary maintenance activities, including any specifications and drawings associated with the work. Santa Clara shall provide a copy of these recommendations for PG&E's review and comment. Santa Clara will make a fair and reasonable effort to review and determine if PG&E's recommendations and comments are appropriate and consistent with the goals of this Agreement and will incorporate them to the extent that Santa Clara determines them to be appropriate and consistent with the goals of the Agreement.

5.7.4   If scheduled by PG&E pursuant to the terms of this Agreement, the Operation Manager shall at PG&E's direction bypass water through Grizzly for normal operation of downstream powerhouses during scheduled and unscheduled shutdowns of Grizzly Powerhouse. PG&E will schedule such bypass to the extent PG&E would bypass water if it owned Grizzly.

5.8   Payments To PG&E As Operation Manager

During the period that PG&E is employed by Santa Clara as Operation Manager, Santa Clara shall pay PG&E as follows:

5.8.1   Santa Clara will reimburse PG&E as Operation Manager for the Cost of Operation and Cost of Plant incurred by PG&E. In addition, Santa Clara shall pay to PG&E an amount equal to fifteen percent (15%) of the Cost of Operation.

5.8.2   Regulatory fees that apply to the entire Bucks Creek License will be allocated between PG&E and Santa Clara, based on the respective nameplate capacity of the Bucks Creek and Grizzly powerhouses. The fifteen percent (15%) markup referenced in Section 5.8.1 will

GRIZZLY O & M AGREEMENT                                                                                   PAGE 9

Case: 19-30088   Doc# 11000-2   Filed: 07/30/21   Entered: 07/30/21 16:24:14   Exhibit 2
                                  Page 10 of 20                                    Page 9 of 19

not apply to Cost of Plant, any regulatory fees, or penalties assessed against either Grizzly or Bucks Creek.

5.8.3 Estimates of Costs of Operation and Costs of Plant: At least ninety (90) days prior to the estimated Commercial Operation Date, PG&E shall prepare and submit to Santa Clara a cost estimate, together with detail reasonably adequate for the purpose of Santa Clara's review thereof, of monthly Costs of Operation and Costs of Plant for the next eighteen (18) Calendar Months thereafter. For each Calendar Year in which PG&E is the Operation Manager, it shall prepare an estimate of the monthly Costs of Operation and Costs of Plant for the next eighteen (18) Calendar Months. The estimate shall be submitted to Santa Clara by January 1 of each Calendar Year. Such estimate shall be subject to revision periodically to reflect more current information on Costs of Operation and Costs of Plant.

5.9 Payment For Costs Of Operation and Costs of Plant

In the case of Costs of Operation and Costs of Plant relating to services provided by PG&E, PG&E shall submit to Santa Clara an invoice for the amount of such charges for the preceding Calendar Month on or prior to the twentieth (20th) day of each Calendar Month commencing with the Calendar Month after the Commercial Operation Date. Such invoice shall set forth each service provided, the hours of labor attributable to such service, an itemized list of any expenses incurred by PG&E associated with such service, including the fifteen percent (15%) markup referenced in Section 5.8.1. Santa Clara shall pay to PG&E within twenty (20) days of receipt of the invoice the amount of the invoice. Payment made more than twenty (20) days after receipt of invoice shall accrue late interest compounded monthly at a rate equal to the lesser of (1) the applicable first of the month reference rate of the Bank of America N.T. and S.A. for that Calendar Month or (2) the maximum rate permitted by law. In the event of a dispute of such payments, at Santa Clara's option, all subsequent payments shall be deposited in an escrow account pending resolution of the dispute. Other methods of payment may be used if mutually agreed to by the Parties.

5.10 Responsibility For Costs Of Plant

Costs of Plant as defined herein shall be paid by Santa Clara. If the Reverter Date occurs, PG&E will reimburse Santa Clara for the DCP (Depreciated Costs of Plant) as provided in Section 12.4.

5.11    Correctness Of Charges And Credits

No payment made pursuant to this Section 5 shall constitute a waiver of any right of Santa Clara to contest the correctness of the charges and credits for Costs of Operation and Costs of Plant under this Agreement.

5.12    Access To Grizzly

    5.12.1    Either Party, when Operation Manager, shall have access to Grizzly as necessary to perform all tasks required by Section 5.2.

    5.12.2    When not Operation Manager, either Party after prior arrangement with Operation Manager and subject to Operation Manager's safety and security rules, shall have access to Grizzly at its own risk. However, when an event occurs which is covered by the Emergency Action Plan required by FERC, (herein "Plan"), or which is a threat to life or property or which poses an imminent risk to the health, safety, and welfare of employee(s) and property of the Parties or the public, or as necessary for the Parties to comply with the license conditions imposed by FERC, either Party shall have access to Grizzly for the purpose of taking such action(s) as appropriate and shall make a good faith effort to notify the Operation Manager and the other Party immediately of the circumstances.

5.13    Failure To Perform

If PG&E determines that the Operation Manager has failed to perform its obligations under this Agreement, PG&E shall immediately notify Santa Clara of the nature of such failure. Santa Clara promptly shall take appropriate action to remedy the failure or provide PG&E with substantiated reasons why it is in compliance with the provisions of this Agreement. If Santa Clara does not take appropriate action to remedy the failure or provide PG&E with substantiated reasons why it is in compliance with the provisions of this Agreement within five (5) working days of notification (or twenty-four (24) hours in the case of failure to comply with PG&E's dispatch schedule), PG&E, after notification to Santa Clara, shall have access to Grizzly to take action solely to correct the alleged failure in a manner consistent with Prudent Utility Practice at Santa Clara's expense; provided, that PG&E shall only have access under this Section 5.13 if it determines that the failure to perform is causing or is likely to cause PG&E to incur damage or expense or to have other adverse effects on PG&E's operations. In the event PG&E enters Grizzly pursuant to this Section, PG&E shall assume all liability, without condition, for all events occurring at Grizzly resulting from PG&E's actions. If a court or governmental agency determines that PG&E's actions were inappropriate, Santa Clara shall receive reimbursement from PG&E for any costs

directly related to such PG&E actions, including expenses relating to the repair of any damages caused during such entry, and the value of any power Santa Clara lost as a result of PG&E's actions notwithstanding the limitations set forth in Section 14.5.1. Energy stored by holding water in reservoirs upstream of Grizzly shall not be considered power lost.

5.14 <u>Obligation To Minimize Spill And Maintain Flow</u>

PG&E shall schedule sufficient water through Grizzly Powerhouse to minimize spill at Bucks Lake and/or Lower Bucks Lake and to maintain scheduled generation at Grizzly and/or PG&E's downstream powerhouses. The Operation Manager shall comply with PG&E's dispatch schedule pursuant to Santa Clara's obligation under Sections 2.3 and 5.7.4.

# GRIZZLY OPERATION AND MAINTENANCE AGREEMENT
by and between
## PACIFIC GAS AND ELECTRIC COMPANY
and
## CITY OF SANTA CLARA

## EXHIBIT B

Note: The language of this Exhibit B is intended to be verbatim extracts of Section 15 of the Grizzly Agreement and is made a part of this Agreement as a convenience to the Parties. Any inadvertent inconsistency or conflict between the language of this Exhibit B and the applicable parts of Section 15 of the Grizzly Agreement is unintentional and it is the intent of the Parties that the language of the Grizzly Agreement shall control.

15.3 Operating Period Insurance

    15.3.1 From and after the Commercial Operation Date, and, except as otherwise expressly provided herein or as mutually agreed by the Parties, for the remaining term of the Ownership Period, Santa Clara shall obtain and maintain at its sole cost and expense, or cause to be obtained and maintained, at its sole cost and expense, for the benefit of both Santa Clara and PG&E, the types of insurance, with deductibles and limits set forth below, with insurance companies mutually acceptable to both Santa Clara and PG&E and (1) licensed to do business in the State of California and rated "A" or better by Best's Insurance Guide and Key Ratings (or an equivalent rating by another nationally recognized insurance rating agency of similar standing if Best's Insurance Guide and Key Ratings shall no longer be published), (2) listed in the National Association of Insurance Commissioners Financial Review of Alien Insurers, or (3) otherwise acceptable to the Parties:

        a) Property insurance, covering all risks of physical loss or damage to Grizzly, its buildings, structures, equipment and other real (except land) and personal property, whether owned or leased by Santa Clara or for which Santa Clara is legally responsible in connection with the ownership or operation of Grizzly, caused by fire, explosion and other causes covered by special form, and extended to cover damage caused by earthquake or land movement, flood and water damage, and if available at a cost which does not exceed fifteen percent (15%) of the property insurance premium, to cover remediation and removal of

Case: 19-30088    Doc# 11000-2    Filed: 07/30/21    Entered: 07/30/21 16:24:14    Exhibit 2
Page 14 of 20
Page 13 of 19

contamination arising from an insured peril, with limits and deductibles as follows:

Limits

Full replacement value or, if agreed by the Parties, the value of the maximum credible loss

Sublimits

| | |
|---|---|
| Earthquake, Land Movement and Flood: | Limit of $20,000,000 or a higher limit if available at reasonable cost at the time insurance is placed |

Deductibles

| | |
|---|---|
| Earthquake, Land Movement and Flood: | As required by underwriters |
| For all other perils: | $25,000 each occurrence |

    Such policy shall include PG&E and Santa Clara as named insureds and shall provide for a waiver of subrogation against any person who is an insured under the policy. Insurance proceeds, if any, shall be paid to Santa Clara.

    b)   Boiler and machinery insurance, providing broad form repair and replacement coverage for all mechanical and electrical breakdown excluded under the policy described in subsection 15.3.1 a) above, including breakdown of the turbine generator, pressure vessels, electrical motors, and other reciprocating or rotating machinery, and covering remediation and removal of contamination arising from an insured peril, with limits and deductibles as follows:

Limits

$10,000,000 combined for direct damage to property, loss of income and extra expense, or such higher limit as the Parties from time to time may agree is appropriate

Case: 19-30088    Doc# 11000-2    Filed: 07/30/21    Entered: 07/30/21 16:24:14    Page 15 of 20

Exhibit 2
Page 14 of 19

Deductibles

Property: $50,000 (except five percent (5%), or less, of value at risk at time of loss for earthquake or flood)

Loss of
Income and
Extra Expense: At Santa Clara's sole option

Such policy shall include PG&E and Santa Clara as named insureds and shall provide for a waiver of subrogation against any person who is an insured under the policy. Insurance proceeds shall be paid to Santa Clara.

    c) <u>Commercial general liability insurance</u>, during any period in which PG&E is acting as Operation Manager hereunder, covering bodily injury and property damage to third parties with respect to all activities and operations at Grizzly, including coverage for: (1) premises and operations, (2) products and completed operations, (3) broad form property damage, (4) explosion, collapse and underground hazards, (5) contractual liability, (6) personal injury liability, and (7) independent contractor, with limits and deductibles as follows:

<u>Limits not less than</u> (such limits may be changed from time to time upon either Party's reasonable request in order to reflect changes in physical conditions which affect the hazards originally contemplated; either Party may request changes in limits for reasons other than changes in physical conditions and such requests for these other changes shall be fairly considered by the other Party):

$1,000,000 each occurrence (combined single limit for bodily injury and property damage)

$2,000,000 Aggregate for Products-Completed Operations (Annual Aggregate)

$2,000,000 General Aggregate (Annual Aggregate)

with excess liability coverage providing the following limits in excess of the limits provided above:

$14,000,000 each occurrence

$14,000,000 Products-Completed Operations

$14,000,000 General Aggregate (Annual)

Such policy shall designate Santa Clara as named insured and shall include PG&E, its officers, directors and employees as additional insureds. The policy shall be endorsed to stipulate that the insurance shall apply as primary insurance and that any other insurance or self-insurance carried directly by PG&E, its officers, directors, and employees shall be excess only and shall not contribute with such insurance.

15.3.2 All policies of insurance maintained by Santa Clara pursuant to Section 15.3.1 shall: (1) require thirty (30) days prior notice to PG&E and each named or additional insured of cancellation, non-renewal, or material change in coverage, (2) provide that such insurance is primary without right of contribution from any other insurance or self-insurance which might otherwise be available to the insured Party, and (3) include a cross-liability endorsement providing that inasmuch as the policies are written to cover more than one insured, all terms and conditions, insuring agreements and endorsements, with the exception of limits of liability (which shall be applicable to all insureds as a group) and liability for premiums, shall operate in the same manner as if there were a separate policy covering each insured.

15.3.3 Santa Clara shall pay or reimburse PG&E for all deductibles arising in connection with the insurance provided pursuant to Section 15.3.1, regardless of the cause or nature of the loss or damage giving rise to the deductible, and the cost thereof shall not constitute a Cost of Construction but may constitute a Cost of Plant to the extent such funds are used for reconstruction of Grizzly for purposes of this Agreement, except for deductibles arising from loss or damage caused by the gross negligence or willful misconduct of PG&E, which deductibles shall be paid by PG&E for its own account.

15.3.4 In the event Santa Clara fails to respond in a timely and appropriate manner to take any steps necessary or reasonably requested by PG&E to collect from insurers for any loss covered by the insurance required to be maintained pursuant to Section 15.3.1, PG&E shall have the right, without obligation, upon notice to Santa Clara, to make all proofs of loss, adjust all claims and receive all or

GRIZZLY O & M AGREEMENT                                                                PAGE 16

Case: 19-30088    Doc# 11000-2    Filed: 07/30/21    Entered: 07/30/21 16:24:14    Exhibit 2
                                           Page 17 of 20                              Page 16 of 19

any part of the proceeds of such insurance, either in its own name or in the name of Santa Clara.

15.3.5 On or prior to the Commercial Operation Date, and at any time thereafter upon the request of PG&E, Santa Clara shall furnish PG&E copies of the insurance policies required pursuant to Section 15.3.1 and certificates of insurance evidencing that such policies are in effect. In the event Santa Clara fails to provide policies and certificates in accordance with the foregoing or in the event of any material change, reduction or cancellation of any such policy, PG&E may, at its option, upon notice to Santa Clara, without limiting any other rights or remedies it may have hereunder: (1) obtain, in the case of the insurance described in Section 15.3.1 a) or 15.3.1 b), its own substitute insurance, the cost of which shall be reimbursed by Santa Clara as a Cost of Operation hereunder (without the fifteen percent (15%) markup provided in Section 5.8.1), (2) obtain, with the prior approval of Santa Clara, in the case of the other insurances described in Section 15.3.1, substitute insurance, the cost of which shall be reimbursed by Santa Clara as a Cost of Operation hereunder (without the fifteen percent (15%) markup provided in Section 5.8.1), and/or (3) upon written notice to Santa Clara consistent with Section 5.5, terminate PG&E's employment as Operation Manager under this Agreement, or suspend such employment until such time as the insurance requirements of Section 15.3.1 are met.

15.3.6 With respect to the insurance maintained by Santa Clara pursuant to Sections 15.3.1 a) and b), insurance proceeds shall be paid directly to Santa Clara. With respect to the insurance maintained by Santa Clara pursuant to Section 15.3.1 c), insurance proceeds shall be paid directly to or for the account of the Party or Parties liable pursuant to this Agreement for the loss or damage giving rise to such proceeds.

GRIZZLY O & M AGREEMENT

PAGE 17

Case: 19-30088    Doc# 11000-2    Filed: 07/30/21    Entered: 07/30/21 16:24:14    Exhibit 2
Page 18 of 20
Page 17 of 19

# AMENDMENT NO. 1
## TO THE AGREEMENT BETWEEN THE
## CITY OF SANTA CLARA, CALIFORNIA
## AND
## PACIFIC GAS AND ELECTRIC COMPANY

This agreement ("Amendment No. 1") is made and entered into on this 17th day of September, 2008, ("Effective Date") by and between the City of Santa Clara, California, a chartered California municipal corporation, with its principal place of business located at 1500 Warburton Avenue, Santa Clara, California 95050 ("City") and Pacific Gas and Electric Company a California corporation with its principal place of business located at 245 Market Street, N11B, San Francsico, CA 94105 ("Contractor"). Contractor and City may be referred to herein individually as a "Party" or collectively as the "Parties" or the "Parties to this Amendment No. 1."

## RECITALS

A. The Parties previously entered into an agreement entitled "Grizzly Operation and Maintenance Agreement by and Between the Pacific Gas and Electric Company and City of Santa Clara, dated June 5, 2002 (the "Original Agreement"); and

B. The Parties entered into the Original Agreement for the purpose of having Contractor provide Operation and Maintenance of the hydroelectric facility located in Plumas County.

In consideration of the above Recitals and the following mutual covenants and obligations, the Parties agree as follows:

## AGREEMENT PROVISIONS

1. That paragraph number 1 of the Original Agreement, entitled "Continued Employment of PG&E" is hereby amended to read as follows: Santa Clara hereby continues the employment of PG&E to act as Santa Clara's Operation Manager for Grizzly for the period December 31, 2007 to December 31, 2012; provided, that either Santa Clara or PG&E may terminate PG&E's employment as Operation Manager at any time without cause upon one hundred eighty (180) days' advance written notice to the other Party. If neither Party has provided notice of termination as of December 31, 2012, this Agreement shall automatically be extended for successive one hundred eighty (180) day terms, subject to each Party's continued right to terminate this Agreement without cause upon one hundred eighty (180) days' notice to the other Party. PG&E hereby accepts said continued employment and agrees to act as Santa Clara's Grizzly Operation Manager for the specified period.

(Continued on Page 2 of this Amendment No. 1)

Amendment No. 1 to Agreement with Pacific Gas & Electric Company  
Rev: 01/06/06; Typed: 8/25/08

Page 1 of 2

Case: 19-30088    Doc# 11000-2    Filed: 07/30/21    Entered: 07/30/21 16:24:14    Exhibit 2
Page 19 of 20

Page 18 of 19

2. All other terms of the Original Agreement which are not in conflict with the provisions of this Amendment No. 1 shall remain unchanged in full force and effect. In case of a conflict in the terms of the Original Agreement and this Amendment No. 1, the provisions of this Amendment No. 1 shall control.

The Parties acknowledge and accept the terms and conditions of this Amendment No. 1 as evidenced by the following signatures of their duly authorized representatives. It is the intent of the Parties that this Amendment No. 1 shall become operative on the Effective Date first set forth above.

**CITY OF SANTA CLARA, CALIFORNIA,**
**a chartered California municipal corporation**

APPROVED AS TO FORM:

*Lindsay Speck*
(w) HELENE L. LEICHTER
City Attorney

*Jennifer Sparacino*
JENNIFER SPARACINO
City Manager

ATTEST:

*[signature]*

ROD DIRIDON, JR.
City Clerk

1500 Warburton Avenue
Santa Clara, CA 95050
Telephone: (408) 615-2210
Facsimile: (408) 241-6771

"City"

**PACIFIC GAS AND ELECTRIC COMPANY**
**A California corporation**

By: *[signature]*

Title: JOHN D. PURKIS
         Director, Hydro Operations and Maintenance
Address: P.O. Box 770000
         San Francisco, CA 94177
Telephone: (415) 973-3142
Facsimile: (415) 973-5323

"Contractor"

Case: 19-30088    Doc# 11000-2    Filed: 07/30/21    Entered: 07/30/21 16:24:14    Exhibit 2
Page 20 of 20
Page 19 of 19