1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                     -oOo-

4    In Re:                         ) Case No. 19-30088
                                    ) Chapter 11
5    PG&E CORPORATION AND PACIFIC   )
     GAS AND ELECTRIC COMPANY       ) San Francisco, California
6                                   ) Thursday, August 5, 2021
                        Debtor.     ) 10:00 AM
7    _____  )
                                      HEARING ON DISCOVERY
8                                     CONFERENCE BETWEEN PG&E FIRE
                                      VICTIM TRUST AND
9                                     PRICEWATERHOUSECOOPERS LLP
                                      [6473]
10

11                 TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE DENNIS MONTALI
               UNITED STATES BANKRUPTCY JUDGE
12
     APPEARANCES (All present by video or telephone):
13   For the Debtor:           KEVIN J. ORSINI, ESQ.
                               Cravath, Swaine & Moore LLP
14                             825 Eighth Avenue
                               New York, NY 10019
15                             (212)474-1000

16   For PG&E Fire Victim      SARAH KELLY-KILGORE, ESQ.
     Trust:                    Greenberg Gross LLP
17                             601 South Figueroa Street
                               30th Floor
18                             Los Angeles, CA 90017
                               (213)334-7000
19
     For Pricewaterhouse       MATTHEW J. CAVE, ESQ.
20   Coopers LLP:              Kibler Fowler & Cave LLP
                               11100 Santa Monica Boulevard
21                             Suite 360
                               Los Angeles, CA 90025
22                             (310)409-0400

23

24

25

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

Court Recorder:                    LORENA PARADA/ANKEY THOMAS
18                                  United States Bankruptcy
                                    Court
19                                  450 Golden Gate Avenue
                                    San Francisco, CA 94102
20

21  Transcriber:                    MICHAEL DRAKE
                                    eScribers, LLC
22                                  7227 N. 16th Street
                                    Suite #207
23                                  Phoenix, AZ 85020
                                    (973)406-2250
24

    Proceedings recorded by electronic sound recording;
25  transcript provided by transcription service.

eScribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   SAN FRANCISCO, CALIFORNIA, THURSDAY, AUGUST 5, 2021, 10:00 AM

2                              -oOo-

3       (Call to order of the Court.)

4           THE CLERK:  Court is now in session, the honorable

5   Dennis Montale presiding.  Calling the matter of PG&E

6   Corporation.

7           THE COURT:  All right, good morning.

8           Ms. Kelly-Kilgore, I see your name on there.  Would

9   you state your appearance?

10          MS. KELLY-KILGORE:  Yes, good morning, Your Honor.

11  Sarah Kelly-Kilgore on behalf of the fire victim trust.

12          THE COURT:  And is Mr. Cave on the line?  All right.

13  Who's in for PWC?  Anyone?  You scared them all off, Ms.

14  Kelly-Kilgore?

15          MS. KELLY-KILGORE:  Apparently, Your Honor.

16          THE COURT:  Anyone on the call for Pricewaterhouse?

17  Well, kind of frustrating.

18          Ms. Kelly-Kilgore, do you have any more communication

19  since yesterday?

20          MS. KELLY-KILGORE:  Yes.  We did receive a

21  communication from Mr. Cave at 11:57 p.m. last night.  Mr.

22  Cave's email indicated that PWC has yet to decide whether they

23  will provide certain of the documents that were listed in my

24  email to the Court as part of the status report or others they

25  have simply refused to produce those documents, again,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    reiterating their position that those are irrelevant despite

2    the Court's clear guidance and our discovery conference on July

3    16th.

4              THE COURT:  Okay.  Well, we have had some more people

5    join the call.

6              Is Mr. Cave on the call?  Anyone from his firm?  All

7    right.

8              Well, I'm prepared to issue an order consistent with

9    your email to my staff yesterday or the day before, Ms.

10   Kelly-Kilgore, just issue the order that PWC should comply with

11   each of the five items that you've identified.  I mean, I can't

12   break it down any further.  But if they're not prepared even to

13   get on this phone call, I'm not going to --

14             MR. CAVE:  Your Honor, my apologies.

15             THE COURT:  Yes.

16             MR. CAVE:  This is Matthew Cave for

17   PricewaterhouseCoopers.  We had some slight IT issues logging

18   on.  Our apologies.

19             THE COURT:  Okay.  Well, I was about to enter your

20   default and enter an order.  So what's your what's your take?

21   Because you promised to try to work together, but here we are

22   two weeks later.  Nothing happened.

23             MR. CAVE:  Well, I disagree with that, Your Honor.  I

24   think we have --

25             THE COURT:  I mean from my point of view.

PG&E Corporation and Pacific Gas and Electric Company

1          MR. CAVE:  Yeah.  We are going to be getting a

2     response to Ms. Kilgore, as we told her, in a couple of days on

3     whether we're producing deliverables on CWSP and PSPS.  So

4     we're just waiting for clearance from our client on that.  We

5     have concerns --

6          THE COURT:  What if I just order it?  Mr. Cave, what

7     if I just ordered it?  Then what happens?

8          MR. CAVE:  Well, of course we comply with that order,

9     Your Honor.

10          THE COURT:  Well, I was trying to avoid that, but we

11     seem to be going around in circles.  I mean, I -- so you say

12     that progress was made, but at least from my point of view, it

13     hasn't been made.  So what do you propose specifically that I

14     do now?

15          MR. CAVE:  Well, we also looked into another project

16     that they've been demanding deliverables for for a couple of

17     weeks, the EPCCC program, and confirmed that all deliverables

18     have already been produced.  They were produced in 2020 to the

19     predecessor counsel.  So that issue has been resolved.

20          THE COURT:  Well, I --

21          MS. KELLY-KILGORE:  Your Honor, if I may address

22     that --

23          THE COURT:  Excuse me.  Hold on.  Wait, wait.  Wait

24     one second.  I was about to say, Mr. Cave, is that one of the

25     five on her email of yesterday or not?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. CAVE:  I'm sorry, Your Honor.  I just didn't hear

2    you.

3          THE COURT:  I just asked if what you just referred to

4    is one of the five items on Ms. Kelly-Kilgore's --

5          MR. CAVE:  Yes, Your Honor.

6          THE COURT:  Okay.  Which one?

7          MR. CAVE:  The deliverables for EPCCC, one of the four

8    projects we've been discussing.

9          MS. KELLY-KILGORE:  Your Honor, it's item number 4 is

10    what Mr. Cave is referring to.

11          THE COURT:  Oh, yeah, right.

12          MR. CAVE:  And I'm frankly surprised at his

13    representation that they have provided confirmation that all

14    deliverables relating to that project have been produced.  In

15    Mr. Case of 11:57 p.m. last night, he represented that they

16    believed all deliverables have been produced and all work

17    products had been produced but that they still needed to

18    confirm that.

19          THE COURT:  Okay.

20          MS. KELLY-KILGORE:  So I'm not sure how the

21    representation has changed since twelve hours later with no

22    notice to the trust.  And that, unfortunately, is consistent

23    with our experience in this case.  We do believe that there

24    needs to be an order and a date certain by which PWC will

25    complete its production.

PG&E Corporation and Pacific Gas and Electric Company

1     THE COURT:  Well, Mr. Cave, I -- you know, I'm getting

2  a little tired of these endless delays.  I think what I'll do

3  this time is I'll give you until Monday to have an agreed order

4  that Ms. Kelly-Kilgore signs off on.  And if she doesn't sign

5  off on it, she can just upload the order she wants, and I'll

6  just issue the order and you can work from there.

7     MR. CAVE:  Well, there are -- I appreciate that, Your

8  Honor.  And we will certainly work with Ms. Kilgore.  With

9  respect to -- there are a couple issues that we think are ripe

10 for discussion today that we could use your guidance on.

11    THE COURT:  All right.

12    MR. CAVE:  One of the projects that we have been

13 talking about with the trust counsel is referred to as the

14 general rate case.  I understand from our prior conference,

15 Your Honor, that you don't care about the history of what was

16 discussed before.  And so I don't want to go into detail with

17 that history.

18    But this case came up for the first time -- or excuse

19 me, this project in April.  This is a project that we think,

20 recognizing Your Honor's guidance on Rule 2004 subpoena scope,

21 is so far outside the bounds of what's relevant that we don't

22 think these are documents that ought to be produced.  The

23 general rate case involves PWC working closely with regulatory

24 counsel for PG&E to obtain rate approval to charge customers.

25 We don't see any possible relation for the general rate case to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

　　　　　PG&E Corporation and Pacific Gas and Electric Company

1　wildfire safety.

2　　　　　And what's more, we think the vast majority of those

3　documents are almost certainly privileged, given that it was

4　working directly with regulatory counsel.  So this is one of

5　the four projects and one of the bullet points Ms. Kilgore's

6　email to the Court that I think we could use some guidance from

7　Your Honor on.

8　　　　　THE COURT:  Well, maybe I could provide guidance, but

9　not now with the -- not with four lines in an email.  I mean,

10　you want to just put number 5 aside and have a brief schedule

11　for a couple of short letter briefs?

12　　　　　MR. CAVE:  I think that would be that would be great.

13　　　　　THE COURT:  Ms. Kelly-Kilgore --

14　　　　　MS. KELLY-KILGORE:  Your --

15　　　　　THE COURT:  -- what if we did that?  What if you

16　three -- two counsel try to work out an agreed order as to

17　number 1, 2 and 3and whatever's left on 4, but separately, just

18　agree to submit five-page letter briefs no later than a couple

19　of weeks from now on number 5?

20　　　　　MS. KELLY-KILGORE:  We're happy to do that, Your

21　Honor.  The issue with the general rate case is that it's a

22　filing mandated by the CPUC.  We're happy to build out why

23　those documents are relevant.  As Mr. Cave administrative

24　indicated, we have been requesting those documents since April.

25　So we would appreciate a very short briefing schedule on that

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  because --

2      THE COURT:  But what would -- what would be the

3  relevance though to what the trustee is doing, in other words,

4  what your mission to run for the benefit of the fire trust?

5  What's the nexus, if you will, between what the trustee is

6  entitled to look into and this subject matter?

7      MS. KELLY-KILGORE:  Absolutely, Your Honor.  The

8  filing that's mandated by the CPUC or the general rate case is

9  that PW -- excuse me, PG&E must submit the appropriate budget

10  and a plan to address asset maintenance, including maintenance

11  pertaining to wildfire safety and risk mitigation.  We think

12  under the assigned schedule of rights and causes of action,

13  that fits directly within subpart O which goes to the budget

14  and capital allocation.  It goes to the cost reduction

15  measures.  And as I mentioned, it goes directly to the wildfire

16  safety and risk mitigation because that --

17      THE COURT:  Okay.

18      MS. KELLY-KILGORE:  -- is necessarily part of the plan

19  and -- and part of the uses of the rate.

20      THE COURT:  And refresh my recollection on a broader

21  question because I don't remember it.  Can PWC claim a

22  privilege as PG&E's privilege and doesn't -- PG&E hasn't

23  yielded that entitlement to the trustee for this area of

24  inquiry or not?

25      MS. KELLY-KILGORE:  Your Honor, I do not believe that

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  there has been a blanket assignment of the privilege from PG&E

2  to the trust.  Obviously, we would love it if that were the

3  case.  To the extent that PG&E --

4          THE COURT:  Well, I -- excuse me.  I don't want to --

5  excuse me.  I don't want to interrupt you again.  Not to be

6  rude, but I don't want to overstate my issue.  If the trustee

7  can prosecute claims that are relevant here -- and it may be

8  that that's implicit in whatever privilege might have existed.

9  But for the trust, I'm not suggesting blanket -- somehow PG&E

10 has blanketly given up any privilege of anything on any

11 subject.

12          But I'll tell you what, I'd rather not have either of

13 you feel obliged to answer that question in this call because

14 it's just popped up.  So my proposal -- I'll repeat my proposal

15 that for items 1, 2, 3, and 4, I will issue an order that's

16 submitted by the trustee's counsel next week, ideally an agreed

17 order.  If not, I'll make a decision on it.  And I should add,

18 Mr. Cave could submit an alternative or proposed markup and

19 I'll make a decision.

20          As to number 5, what we'll call the general rate case

21 issue, I guess I would propose, let's say, letter briefs done

22 in the informal way, still email to my courtroom deputy let's

23 say two weeks from tomorrow, both sides.  Is that acceptable?

24 I'm going to start with you, Ms. Kelly-Kilgore.  Are you okay

25 with that?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MS. KELLY-KILGORE:  Yes, Your Honor.  We appreciate

2    it.

3    THE COURT:  Mr. Cave?

4    MR. CAVE:  Yes.  Thank you, Your Honor.

5    THE COURT:  Okay.  Mr. Cave?

6    MR. CAVE:  Yes.

7    THE COURT:  All right.  And again, both of you or

8    neither of you is familiar with my procedure perhaps.  I don't

9    expect that this is a complete substitute for what might be a

10   required proper motion to compel.  It's more of my way to

11   expedite things on an informal basis and move it.  So act

12   accordingly.  You're not giving up rights.  We're trying to

13   come up with a solution here that is workable.

14   MR. CAVE:  We appreciate that, Your Honor.

15   THE COURT:  Okay.  If anybody -- if anyone else wants

16   to read anything, please do.  Otherwise, I'll conclude the

17   hearing.

18   MR. CAVE:  Your Honor, this is -- this is Matthew

19   Cave.  I do have one or two other points just quickly I think.

20   At the last conference, we briefly talked about a

21   potential deposition of PWC employee Hugh Le.

22   THE COURT:  Correct.

23   MR. CAVE:  Our understanding from the last conference

24   was we thought everyone had sort of agreed that we were going

25   to wrap up this document discovery issues before that there was

PG&E Corporation and Pacific Gas and Electric Company

1    serious talk of that deposition going forward.

2            Since then, Ms. Kilgore has been asking for dates in

3    the next month for his deposition.  We continue to believe it's

4    premature.  We're not saying he's not going to be made

5    available, but we don't think deposing him in the next two

6    weeks, for example, makes any sense, because if we haven't

7    resolve these issues, we're going to have a deposition,

8    potentially more documents produced after that.  And you're

9    dealing with an employee of a nonparty potentially having to

10   come back for a second deposition.  And we just don't think

11   that makes sense.

12           THE COURT:  Well, I issued the order, but I didn't --

13   I think yesterday, but the order didn't have a date in it.  Ms.

14   Kelly-Kilgore, did you have any -- are you pressing for a day

15   earlier then perhaps will follow if these issues get resolved

16   on the docket?

17           MS. KELLY-KILGORE:  No.  Your Honor, what has happened

18   is we reached out immediately following the last discovery

19   conference to Mr. Cave.  We asked for a meet-and-confer

20   regarding the documents.  As you saw from our email submission,

21   we really received no response.  We have been asking for a date

22   that we could include in the subpoena so that we can serve that

23   and begin the meet-and-confer process over the subpoena to Mr.

24   Le.  As we anticipate, given the experience with the document

25   requests that we're dealing with currently, that will be

PG&E Corporation and Pacific Gas and Electric Company

1  something of an extended venture.

2  We are not pressing.  It's not my intent to have to

3  depose Mr. Le without the documents or in a -- in the time that

4  would be inconvenient for anyone.  But the problem is that we

5  get no response whatsoever from opposing counsel.  You're

6  placed in a position where you have to make decisions and

7  attempt to press ahead unilaterally.  And that's not what we

8  have wanted to do.  We do want to begin that meet-and-confer

9  process, but we need participation on both sides to complete

10 that.

11 THE COURT:  Is Mr. Le relevant or necessary for the

12 general rate case inquiry?

13 MS. KELLY-KILGORE:  We do believe that he has relevant

14 knowledge regarding the general rate case, but his primary

15 focus would be on the community wildfire safety program and the

16 public safety power shutoff program.

17 THE COURT:  Well, I agree with Mr. Cave's suggestion

18 of having to have somebody take his deposition twice is

19 unnecessary.  That being said, this isn't just some stranger.

20 This wasn't somebody standing on the corner and saw the truck

21 hit the pole.  This is somebody who is quite intimately

22 involved in depositions by Zoom or probably less burdensome.

23 Why don't I suggest this?  I've asked that to counsel

24 work out their differences on items 1, 2, 3, and 4.  I'll add

25 an item, 4A, is when to depose Mr. Le.  And if you agree on

PG&E Corporation and Pacific Gas and Electric Company

1    that, fine.  And if it turns out that this general rate case

2    issue proves to be a bigger deal and might have to result in

3    some other matter, then maybe Mr. Le would have to be deposed

4    on that issue a second time.

5          But based upon this -- the representation that is more

6    intimately involved with a community wildfire program, that

7    seems more efficient and more on point.  So I'll --

8          MR. CAVE:  Yes.

9          THE COURT:  I'll run the risk that Mr. Le may have to

10   be deposed twice.  Obviously, it'd be better if we can avoid

11   that just for his convenience and for, frankly, everyone's

12   convenience.  Mine too, although I don't intend to participate

13   in the deposition.

14         MR. CAVE:  Thank you, Your Honor.

15         MS. KELLY-KILGORE:  Okay.  (Indiscernible) --

16         MR. CAVE:  One other point.  I'm sorry to interrupt.

17         THE COURT:  Yes.

18         MR. CAVE:  This is --

19         THE COURT:  No, go ahead.

20         MR. CAVE:  -- Matthew Cave.  On the item 1, the list

21   of all contracts from 2013 to 2020, we're happy to continue

22   discussions with Ms. Kilgore on that specific request and

23   submit hopefully agreed order to Your Honor by Monday.  That

24   request has sort of come and gone during the meet-and-confers

25   sometimes the trust counsel has told us that they're willing to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   back off on that if other documents are produced.  Now, they

2   seem to be requesting it again.

3        Frankly, we don't see how that is going to be

4   beneficial in moving these discovery disputes forward in part

5   because we're not working on a blank slate here.  PG&E has

6   produced troves of documents that the trust counsel has access

7   to, including contracts with PWC going all the way back to

8   2012.

9        And so from our perspective, this request is really --

10  it's unfortunately not as simple as it may sound and as I

11  interpret the trust counsel to believe the project is.  It

12  requires a lot of work.  And it sounds like they're just asking

13  us to make a list of contracts that they already have access

14  to.  And we really haven't heard a justification from the trust

15  counsel for why they actually need this request, which we also

16  understand they've backed off on with respect to other business

17  consultants with which they're meeting and conferring.

18        MS. KELLY-KILGORE:  So the issue, Your Honor, is

19  that -- I'll take it sort of in reverse order.  With respect to

20  other business consultants with whom the trust is meeting and

21  conferring, of course when you have document production, you

22  don't need the list of potential contracts that could be

23  produced.  Other business consultants that have worked with us,

24  have been cooperating, have been producing documents.  PWC has

25  not.

PG&E Corporation and Pacific Gas and Electric Company

1    Unfortunately, and as Judge Alsup has recognized,

2  PG&E's own recordkeeping practices were less than perfect.  And

3  so while there are certain materials available to us, we are

4  not operating from a complete universe.  What we have asked is

5  that PWC work with us to compile that list of contracts so that

6  we can mutually identify any other engagements for which PWC's

7  work product or analysis is relevant and should be produced as

8  part of the trust's inquiry.

9    We're trying to limit the burden on PWC by obtaining

10  that list and working together to determine what should be

11  produced outside of these four engagements that we've already

12  been able to identify as being relevant.  So that was --

13    THE COURT:  Has PG&E given you a list of PWC

14  contracts?

15    MS. KELLY-KILGORE:  Not in --

16    THE COURT:  In other words --

17    MS. KELLY-KILGORE:  -- (indiscernible), Your Honor.

18    THE COURT:  Well, okay.

19    MS. KELLY-KILGORE:  No.

20    THE COURT:  In other words, if we turned it around and

21  directed number 1 to PG&E -- would have already responded.

22  And I guess you're saying not completely.

23    MS. KELLY-KILGORE:  Correct.

24    THE COURT:  Again, I don't know how to give you an

25  answer here.  It would seem to me in a simple world, one side

PG&E Corporation and Pacific Gas and Electric Company

1    would say here, here are the ten contracts that we've had in

2    this time period. And if the other side said no, there are

3    twelve, then that means there are two missing. Now, I realize

4    that's an oversimplification. But that being said, there must

5    be a way to get to the to the bottom here.

6        So I'm going to just, again -- I'm not -- to know that

7    I'm smart enough to know what's the right thing to do. I'm

8    going to encourage the two of you again to try to come to a

9    resolution.

10       I don't want -- look, I don't want to have every

11   Thursday morning we're going to have a conference like this

12   with all of you. You'll both get tired of me. So please do

13   your best. If it's not resolved when you submit an order this

14   coming week, I guess I'll make a decision on it as best I can

15   or I will have another conference with you.

16       But I want to thank the two lawyers who are completely

17   conversant with these issues can come to a resolution when all

18   we're talking about it is providing a list and information. So

19   I don't want to oversimplify what both of you knows to be a

20   complicated case. But from my point of view, I don't know any

21   other way to deal with it right now. So --

22       MR. CAVE: I appreciate that, Your Honor. Thank you.

23       MS. KELLY-KILGORE: Yes, Your Honor.

24       MR. CAVE: The last point that I think we could use

25   Your Honor's guidance on and I think it would help in our

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   discussions that are going to follow between our firm and Ms.

2   Kilgore's form, our client has produced some documents that

3   post-date the last fire at issue, the Camp Fire in November of

4   2018, understanding that we disagree with the trust counsel

5   about whether those documents fall within the scope of the

6   subpoena or what's relevant.  I suspect this issue is going to

7   come up again and again.

8          Our position is that documents that post-date the Camp

9   Fire are not in any way relevant because, under the assignment

10  of claims, we're talking about causation of the fires.  And

11  work that was done by PWC after the fires could not have caused

12  the fires.  The trust counsel disagrees with us.  We understand

13  that PG&E produced documents.  And of course, I can't speak for

14  them, but only through the Camp Fire.  And our understanding

15  with the trust predecessor counsel was only going through the

16  Camp Fire.  The list of contracts that's requested goes through

17  2020.  So this is another issue that I'm thinking we don't see

18  eye to eye on.

19          THE COURT:  Well, doesn't impart --

20          MS. KELLY-KILGORE:  Your Honor, if I --

21          THE COURT:  Does it impart -- how can you how can I

22  know if something that was done later is relevant to the Camp

23  Fire until or I or they have seen the document?  Because it may

24  be after the fact but relevant.

25          And Ms. Kelly-Kilgore, do you have a better way to say

PG&E Corporation and Pacific Gas and Electric Company

1    it?

2          MS. KELLY-KILGORE:  I think that that's fairly close

3    to what I would have said, Your Honor.  Obviously, if there is

4    work being done after the Camp Fire that includes some

5    retrospective analysis of what led to the Camp Fire and is able

6    to identify the sources of that fire and what PWC did or did

7    not do that helped to create that fire, that's obviously

8    relevant.  And we are not in a position to roll those documents

9    out having never seen them.

10          THE COURT:  I seem to have a deja vu here to law

11   school about the railroad train fixed the warning after the

12   crash.  And what does that mean?  If they went and fixed the

13   warning sign after the crash, it might be relevant.

14          Again, Mr. Cave, I can't -- you're going to have to

15   prove, in effect, why it isn't relevant.  We're talking about

16   discovery.  We're not talking about admissibility at trial.

17   And so we're starting with the broad reach of Rule 2004.  And

18   again, I would hope that you and your clients will figure out

19   that the trustee's counsel will be wasting time if she is

20   spending time on things that ultimately would have no relevance

21   and perhaps shouldn't have been listed in the first place.

22          But you can't you can't just say I'm not going to give

23   it to you because I've decided it's not relevant for your

24   inquiry.  We had a former president who tried that, and he got

25   thrown out.  So sorry.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1     MR. CAVE:  Understood, Your Honor.  Thank you.

2     THE COURT:  War stories.  Okay.

3     MS. KELLY-KILGORE:  Thank you, Your Honor.

4     THE COURT:  All right.  Well, thank you all for your

5  time.  I look forward --

6     MR. ORSINI:  Your Honor --

7     THE COURT:  -- to not hearing from you next week.

8     MR. ORSINI:  Your Honor --

9     THE COURT:  Did someone else -- yes?

10    MR. ORSINI:  Yes.

11    THE COURT:  Who's that?

12    MR. ORSINI:  This is Kevin Orsini, Your Honor.  Good

13 morning.

14    THE COURT:  Yes, sir.  Hi, Mr. Orsini.  What's up?

15    MR. ORSINI:  I am largely a bystander here.  I just

16 wanted to go back to one point Your Honor raised earlier, which

17 was the question of privilege and whether or not that privilege

18 is being passed on to the trust.

19    THE COURT:  Okay.

20    MR. ORSINI:  Our position is it unambiguously has not

21 been, including, as reflected in the long trust documents and

22 plan documents that Your Honor is pored over, as have I, where

23 you may recall, we also have a cooperation obligation with the

24 trust to provide them information in furtherance of the

25 assigned rights and causes of action.

PG&E Corporation and Pacific Gas and Electric Company

1    And in a couple of places, we've made it clear that

2  that cooperation obligation applies only to nonprivileged

3  information.  So we believe those privileges still rest with

4  PG&E.  That's, obviously, an important issue to us beyond just

5  this discovery dispute.

6    So I raised it only because I want to make that point,

7  Your Honor.  I know you're not addressing it today.  To the

8  extent that does come up in terms of resolving disputes between

9  the parties here, just want to make sure I flagged our view on

10 it and that we would want to submit papers on it so it didn't

11 come as a surprise to Your Honor later.

12    THE COURT:  Well, I'm glad you did.  And I sort of was

13 thinking of the old Supreme Court cases that say privilege is

14 passed to trustees.  But those are liquidating 7s, not

15 operating 11s with a fire trustee.  But I just didn't recall

16 one way or the other.  And I appreciate you are reminding me.

17 And if you're -- if Ms. Kelly-Kilgore needs to be reminded,

18 she's heard from you on that subject also.  And if she or her

19 client have a different take, they know where to come and ask.

20 But for now, it's not an action item.

21    MR. ORSINI:  Understood, Your Honor.  I just want to

22 put that out there.  Thank you.

23    THE COURT:  Okay, I appreciate it.  All right.

24    Anyone else wish to be heard?  All right.  I'm going

25 to conclude the hearing.  Thank you all for your time.  And I

of 29 | operations@escribers.net | www.escribers.net
(973) ESCRIBERS

PG&E Corporation and Pacific Gas and Electric Company

1   look forward to seeing an agreed order, if at all possible,

2   next week, on the matters we talked about.

3            MR. CAVE:  Thank you, Your Honor.

4            THE COURT:  That concludes the hearing.  I'm going to

5   stay on the call to talk to my courtroom staff here in a

6   moment.

7        (Whereupon these proceedings were concluded)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

1                    C E R T I F I C A T I O N

2

3    I, Michael Drake, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ MICHAEL DRAKE, CER-513, CET-513

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  August 6, 2021

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**able (2)**
16:12;19:5
**Absolutely (1)**
9:7
**acceptable (1)**
10:23
**access (2)**
15:6,13
**accordingly (1)**
11:12
**act (1)**
11:11
**action (3)**
9:12;20:25;21:20
**actually (1)**
15:15
**add (2)**
10:17;13:24
**address (2)**
5:21;9:10
**addressing (1)**
21:7
**administrative (1)**
8:23
**admissibility (1)**
19:16
**again (11)**
3:25;10:5;11:7;15:2;
16:24;17:6,8;18:7,7;
19:14,18
**agree (3)**
8:18;13:17,25
**agreed (6)**
7:3;8:16;10:16;
11:24;14:23;22:1
**ahead (2)**
13:7;14:19
**allocation (1)**
9:14
**almost (1)**
8:3
**Alsup (1)**
16:1
**alternative (1)**
10:18
**although (1)**
14:12
**analysis (2)**
16:7;19:5
**anticipate (1)**
12:24
**apologies (2)**
4:14,18
**Apparently (1)**
3:15
**appearance (1)**
3:9
**applies (1)**
21:2
**appreciate (7)**

7:7;8:25;11:1,14;
17:22;21:16,23
**appropriate (1)**
9:9
**approval (1)**
7:24
**April (2)**
7:19;8:24
**area (1)**
9:23
**around (2)**
5:11;16:20
**aside (1)**
8:10
**asset (1)**
9:10
**assigned (2)**
9:12;20:25
**assignment (2)**
10:1;18:9
**attempt (1)**
13:7
**AUGUST (1)**
3:1
**available (2)**
12:5;16:3
**avoid (2)**
5:10;14:10

## B

**back (4)**
12:10;15:1,7;20:16
**backed (1)**
15:16
**based (1)**
14:5
**basis (1)**
11:11
**begin (2)**
12:23;13:8
**behalf (1)**
3:11
**beneficial (1)**
15:4
**benefit (1)**
9:4
**best (2)**
17:13,14
**better (2)**
14:10;18:25
**beyond (1)**
21:4
**bigger (1)**
14:2
**blank (1)**
15:5
**blanket (2)**
10:1,9
**blanketly (1)**
10:10
**both (5)**
10:23;11:7;13:9;

17:12,19
**bottom (1)**
17:5
**bounds (1)**
7:21
**break (1)**
4:12
**brief (1)**
8:10
**briefing (1)**
8:25
**briefly (1)**
11:20
**briefs (3)**
8:11,18;10:21
**broad (3)**
19:17
**broader (1)**
9:20
**budget (2)**
9:9,13
**build (1)**
8:22
**bullet (1)**
8:5
**burden (1)**
16:9
**burdensome (1)**
13:22
**business (3)**
15:16,20,23
**bystander (1)**
20:15

## C

**CALIFORNIA (1)**
3:1
**Call (8)**
3:3,16;4:5,6,13;
10:13,20;22:5
**Calling (1)**
3:5
**came (1)**
7:18
**Camp (7)**
18:3,8,14,16,22;19:4,
5
**can (11)**
7:5,6;9:21;10:7;
12:22;14:10;16:6;
17:14,17;18:21,21
**capital (1)**
9:14
**care (1)**
7:15
**Case (14)**
6:15,23;7:14,18,23,
25;8:21;9:8;10:3,20;
13:12,14;14:1;17:20
**cases (1)**
21:13
**causation (1)**

18:10
**caused (1)**
18:11
**causes (2)**
9:12;20:25
**Cave (43)**
3:12,21;4:6,14,16,16,
23;5:1,6,8,15,24;6:1,5,
7,10,12;7:1,7,12;8:12,
23;10:18;11:3,4,5,6,14,
18,19,23;12:19;14:8,
14,16,18,20,20;17:22,
24;19:14;20:1;22:3
**Cave's (2)**
3:22;13:17
**certain (3)**
3:23;6:24;16:3
**certainly (2)**
7:8;8:3
**changed (1)**
6:21
**charge (1)**
7:24
**circles (1)**
5:11
**claim (1)**
9:21
**claims (2)**
10:7;18:10
**clear (2)**
4:2;21:1
**clearance (1)**
5:4
**CLERK (1)**
3:4
**client (3)**
5:4;18:2;21:19
**clients (1)**
19:18
**close (1)**
19:2
**closely (1)**
7:23
**coming (1)**
17:14
**communication (2)**
3:18,21
**community (2)**
13:15;14:6
**compel (1)**
11:10
**compile (1)**
16:5
**complete (4)**
6:25;11:9;13:9;16:4
**completely (2)**
16:22;17:16
**complicated (1)**
17:20
**comply (2)**
4:10;5:8
**concerns (1)**
5:5

18:10
**conclude (2)**
11:16;21:25
**concluded (1)**
22:7
**concludes (1)**
22:4
**conference (7)**
4:2;7:14;11:20,23;
12:19;17:11,15
**conferring (2)**
15:17,21
**confirm (1)**
6:18
**confirmation (1)**
6:13
**confirmed (1)**
5:17
**consistent (2)**
4:8;6:22
**consultants (3)**
15:17,20,23
**continue (2)**
12:3;14:21
**contracts (8)**
14:21;15:7,13,22;
16:5,14;17:1,18:16
**convenience (2)**
14:11,12
**conversant (1)**
17:17
**cooperating (1)**
15:24
**cooperation (2)**
20:23;21:2
**corner (1)**
13:20
**Corporation (1)**
3:6
**cost (1)**
9:14
**counsel (16)**
5:19;7:13,24;8:4,16;
10:16;13:5,23;14:25;
15:6,11,15;18:4,12,15;
19:19
**couple (6)**
5:2,16;7:9;8:11,18;
21:1
**course (3)**
5:8;15:21;18:13
**Court (58)**
3:3,4,7,12,16,24;4:4,
15,19,25;5:6,10,20,23;
6:3,6,11,19;7:1,11;8:6,
8,13,15;9:2,17,20;10:4;
11:3,5,7,15,22;12:12;
13:11,17;14:9,17,19;
16:13,16,18,20,24;
18:19,21;19:10;20:2,4,
7,9,11,14,19;21:12,13,
23;22:4
**courtroom (2)**
10:22;22:5

Case: 19-30088    Doc# 11028    Filed: 08/06/21    Entered: 08/06/21 08:18:46    Page 24
of 29

**Court's (1)**
4:2
**CPUC (2)**
8:22;9:8
**crash (2)**
19:12,13
**create (1)**
19:7
**currently (1)**
12:25
**customers (1)**
7:24
**CWSP (1)**
5:3

**D**

**date (3)**
6:24;12:13,21
**dates (1)**
12:2
**day (2)**
4:9;12:14
**days (1)**
5:2
**deal (2)**
14:2;17:21
**dealing (2)**
12:9,25
**decide (1)**
3:22
**decided (1)**
19:23
**decision (3)**
10:17,19;17:14
**decisions (1)**
13:6
**default (1)**
4:20
**deja (1)**
19:10
**delays (1)**
7:2
**deliverables (6)**
5:3,16,17;6:7,14,16
**demanding (1)**
5:16
**Dennis (1)**
3:5
**depose (2)**
13:3,25
**deposed (2)**
14:3,10
**deposing (1)**
12:5
**deposition (7)**
11:21;12:1,3,7,10;
13:18;14:13
**depositions (1)**
13:22
**deputy (1)**
10:22
**despite (1)**

4:1
**detail (1)**
7:16
**determine (1)**
16:10
**differences (1)**
13:24
**different (1)**
21:19
**directed (1)**
16:21
**directly (3)**
8:4;9:13,15
**disagree (2)**
4:23;18:4
**disagrees (1)**
18:12
**discovery (6)**
4:2;11:25;12:18;
15:4;19:16;21:5
**discussed (1)**
7:16
**discussing (1)**
6:8
**discussion (1)**
7:10
**discussions (2)**
14:22;18:1
**dispute (1)**
21:5
**disputes (2)**
15:4;21:8
**docket (1)**
12:16
**document (4)**
11:25;12:24;15:21;
18:23
**documents (19)**
3:23,25;7:22;8:3,23,
24;12:8,20;13:3;15:1,
6,24;18:2,5,8,13;19:8;
20:21,22
**done (4)**
10:21;18:11,22;19:4
**down (1)**
4:12
**during (1)**
14:24

**E**

**earlier (2)**
12:15;20:16
**effect (1)**
19:15
**efficient (1)**
14:7
**either (1)**
10:12
**else (3)**
11:15;20:9;21:24
**email (8)**
3:22,24;4:9;5:25;8:6,

9;10:22;12:20
**employee (2)**
11:21;12:9
**encourage (1)**
17:8
**endless (1)**
7:2
**engagements (2)**
16:6,11
**enough (1)**
17:7
**enter (2)**
4:19,20
**entitled (1)**
9:6
**entitlement (1)**
9:23
**EPCCC (2)**
5:17;6:7
**even (1)**
4:12
**everyone (1)**
11:24
**everyone's (1)**
14:11
**example (1)**
12:6
**Excuse (5)**
5:23;7:18;9:9;10:4,5
**existed (1)**
10:8
**expect (1)**
11:9
**expedite (1)**
11:11
**experience (2)**
6:23;12:24
**extended (1)**
13:1
**extent (1)**
10:3;21:8
**eye (2)**
18:18,18

**F**

**fact (1)**
18:24
**fairly (1)**
19:2
**fall (1)**
18:5
**familiar (1)**
11:8
**far (1)**
7:21
**feel (1)**
10:13
**figure (1)**
19:18
**filing (2)**
8:22;9:8
**fine (1)**

14:1
**fire (13)**
3:11;9:4;18:3,3,9,14,
16,23;19:4,5,6,7;21:15
**fires (3)**
18:10,11,12
**firm (2)**
4:6;18:1
**first (2)**
7:18;19:21
**fits (1)**
9:13
**five (3)**
4:11;5:25;6:4
**five-page (1)**
8:18
**fixed (2)**
19:11,12
**flagged (1)**
21:9
**focus (1)**
13:15
**follow (2)**
12:15;18:1
**following (1)**
12:18
**form (1)**
18:2
**former (1)**
19:24
**forward (4)**
12:1;15:4;20:5;22:1
**four (4)**
6:7;8:5,9;16:11
**FRANCISCO (1)**
3:1
**frankly (3)**
6:12;14:11;15:3
**frustrating (1)**
3:17
**further (1)**
4:12
**furtherance (1)**
20:24

**G**

**general (9)**
7:14,23,25;8:21;9:8;
10:20;13:12,14;14:1
**given (4)**
8:3;10:10;12:24;
16:13
**giving (1)**
11:12
**glad (1)**
21:12
**goes (4)**
9:13,14,15;18:16
**good (3)**
3:7,10;20:12
**great (1)**
8:12

**guess (3)**
10:21;16:22;17:14
**guidance (6)**
4:2;7:10,20;8:6,8;
17:25

**H**

**happened (2)**
4:22;12:17
**happens (1)**
5:7
**happy (3)**
8:20,22;14:21
**hear (1)**
6:1
**heard (3)**
15:14;21:18,24
**hearing (4)**
11:17;20:7;21:25;
22:4
**help (1)**
17:25
**helped (1)**
19:7
**Hi (1)**
20:14
**history (2)**
7:15,17
**hit (1)**
13:21
**Hold (1)**
5:23
**Honor (39)**
3:10,15;4:14,23;5:9,
21;6:1,5,9;7:8,15;8:7,
21;9:7,25;11:1,4,14,18;
12:17;14:14,23;15:18;
16:17;17:22,23;18:20;
19:3;20:1,3,6,8,12,16,
22;21:7,11,21;22:3
**honorable (1)**
3:4
**Honor's (2)**
7:20;17:25
**hope (1)**
19:18
**hopefully (1)**
14:23
**hours (1)**
6:21
**Hugh (1)**
11:21

**I**

**ideally (1)**
10:16
**identified (1)**
4:11
**identify (3)**
16:6,12;19:6
**immediately (1)**

Case: 19-30088    Doc# 11028    Filed: 08/06/21    Entered: 08/06/21 08:18:46    Page 25
of 29

12:18
impart (2)
18:19,21
implicit (1)
10:8
important (1)
21:4
include (1)
12:22
includes (1)
19:4
including (3)
9:10;15:7;20:21
inconvenient (1)
13:4
indicated (2)
3:22;8:24
Indiscernible (2)
14:15;16:17
informal (2)
10:22;11:11
information (3)
17:18;20:24;21:3
inquiry (4)
9:24;13:12;16:8;
19:24
intend (1)
14:12
intent (1)
13:2
interpret (1)
15:11
interrupt (2)
10:5;14:16
intimately (2)
13:21;14:6
into (3)
5:15;7:16;9:6
involved (2)
13:22;14:6
involves (1)
7:23
irrelevant (1)
4:1
issue (15)
4:8,10;5:19;7:6;
8:21;10:6,15,21;14:2,
4;15:18;18:3,6,17;21:4
issued (1)
12:12
issues (6)
4:17;7:9;11:25;12:7,
15;17:17
item (1)
6:9;13:25;14:20;
21:20
items (4)
4:11;6:4;10:15;
13:24

J

join (1)

4:5
Judge (1)
16:1
July (1)
4:2
justification (1)
15:14

K

Kelly-Kilgore (35)
3:8,10,11,14,15,18,
20;4:10;5:21;6:9,20;
7:4;8:13,14,20;9:7,18,
25;10:24;11:1;12:14,
17;13:13;14:15;15:18;
16:15,17,19,23;17:23;
18:20,25;19:2;20:3;
21:17
Kelly-Kilgore's (1)
6:4
Kevin (1)
20:12
Kilgore (4)
5:2;7:8;12:2;14:22
Kilgore's (2)
8:5;18:2
kind (1)
3:17
knowledge (1)
13:14
knows (1)
17:19

L

largely (1)
20:15
last (7)
3:21;6:15;11:20,23;
12:18;17:24;18:3
later (5)
4:22;6:21;8:18;
18:22;21:11
law (1)
19:10
lawyers (1)
17:16
Le (7)
11:21;12:24;13:3,11,
25;14:3,9
least (1)
5:12
led (1)
19:5
left (1)
8:17
less (2)
13:22;16:2
letter (3)
8:11,18;10:21
limit (1)
16:9

line (1)
3:12
lines (1)
8:9
liquidating (1)
21:14
list (8)
14:20;15:13,22;16:5,
10,13;17:18;18:16
listed (2)
3:23;19:21
little (1)
7:2
logging (1)
4:17
long (1)
20:21
look (4)
9:6;17:10;20:5;22:1
looked (1)
5:15
lot (1)
15:12
love (1)
10:2

M

maintenance (2)
9:10,10
majority (1)
8:2
makes (2)
12:6,11
mandated (2)
8:22;9:8
markup (1)
10:18
materials (1)
16:3
matter (3)
3:5;9:6;14:3
matters (1)
22:2
Matthew (3)
4:16;11:18;14:20
may (6)
5:21;10:7;14:9;
15:10;18:23;20:23
maybe (2)
8:8;14:3
mean (5)
4:11,25;5:11;8:9;
19:12
means (1)
17:3
measures (1)
9:15
meet-and-confer (3)
12:19,23;13:8
meet-and-confers (1)
14:24
meeting (2)

15:17,20
mentioned (1)
9:15
might (4)
10:8;11:9;14:2;
19:13
Mine (1)
14:12
missing (1)
17:3
mission (1)
9:4
mitigation (2)
9:11,16
moment (1)
22:6
Monday (2)
7:3;14:23
Montale (1)
3:5
month (1)
12:3
more (8)
3:18;4:4;8:2;11:10;
12:8;14:5,7,7
morning (2)
3:7,10;17:11;20:13
motion (1)
11:10
move (1)
11:11
moving (1)
15:4
must (2)
9:9;17:4
mutually (1)
16:6

N

name (1)
3:8
necessarily (1)
9:18
necessary (1)
13:11
need (3)
13:9;15:15,22
needed (1)
6:17
needs (2)
6:24;21:17
neither (1)
11:8
next (5)
10:16;12:3,5;20:7;
22:2
nexus (1)
9:5
night (2)
3:21;6:15
nonparty (1)
12:9

nonprivileged (1)
21:2
notice (1)
6:22
November (1)
18:3
number (6)
6:9;8:10,17,19;
10:20;16:21

O

obligation (1)
20:23;21:2
obliged (1)
10:13
obtain (1)
7:24
obtaining (1)
16:9
Obviously (5)
10:2;14:10;19:3,7;
21:4
off (5)
3:13;7:4,5;15:1,16
old (1)
21:13
one (13)
5:24,24;6:4,6,7;7:12;
8:4,5;11:19;14:16;
16:25;20:16;21:16
only (4)
18:14,15;21:2,6
oOo- (1)
3:2
operating (2)
16:4;21:15
opposing (1)
13:5
order (19)
3:3;4:8,10,20;5:6,8;
6:24;7:3,5,6;8:16;
10:15,17;12:12,13;
14:23;15:19;17:13;
22:1
ordered (1)
5:7
ORSINI (9)
20:6,8,10,12,12,14,
15,20;21:21
others (1)
3:24
Otherwise (1)
11:16
ought (1)
7:22
out (9)
8:16,22;12:18;13:24;
14:1;19:9,18,25;21:22
outside (1)
7:21;16:11
over (2)
12:23;20:22

Min-U-Script®

Case: 19-30088   Doc# 11028   Filed: 08/06/21   Entered: 08/06/21 08:18:46   Page 26
of 29

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(3) impart - over

**oversimplification (1)**
17:4
**oversimplify (1)**
17:19
**overstate (1)**
10:6
**own (1)**
16:2

**P**

**papers (1)**
21:10
**part (5)**
3:24;9:18,19;15:4;
16:8
**participate (1)**
14:12
**participation (1)**
13:9
**parties (1)**
21:9
**passed (1)**
20:18;21:14
**people (1)**
4:4
**perfect (1)**
16:2
**perhaps (3)**
11:8;12:15;19:21
**period (1)**
17:2
**perspective (1)**
15:9
**pertaining (1)**
9:11
**PG&E (12)**
3:5;7:24;9:9,22;10:1,
3,9;15:5;16:13,21;
18:13;21:4
**PG&E's (2)**
9:22;16:2
**phone (1)**
4:13
**place (1)**
19:21
**placed (1)**
13:6
**places (1)**
21:1
**plan (3)**
9:10,18;20:22
**please (2)**
11:16;17:12
**pm (2)**
3:21;6:15
**point (8)**
4:25;5:12;14:7,16;
17:20,24;20:16;21:6
**points (2)**
8:5;11:19
**pole (1)**
13:21

**popped (1)**
10:14
**pored (1)**
20:22
**position (5)**
4:1;13:6;18:8;19:8;
20:20
**possible (2)**
7:25;22:1
**post-date (2)**
18:3,8
**potential (2)**
11:21;15:22
**potentially (2)**
12:8,9
**power (1)**
13:16
**practices (1)**
16:2
**predecessor (2)**
5:19;18:15
**premature (1)**
12:4
**prepared (2)**
4:8,12
**president (1)**
19:24
**presiding (1)**
3:5
**press (1)**
13:7
**pressing (2)**
12:14;13:2
**Pricewaterhouse (1)**
3:16
**PricewaterhouseCoopers (1)**
4:17
**primary (1)**
13:14
**prior (1)**
7:14
**privilege (8)**
9:22,22;10:1,8,10;
20:17,17;21:13
**privileged (1)**
8:3
**privileges (1)**
21:3
**probably (1)**
13:22
**problem (1)**
13:4
**procedure (1)**
11:8
**proceedings (1)**
22:7
**process (2)**
12:23;13:9
**produce (1)**
3:25
**produced (14)**
5:18,18;6:14,16,17;
7:22;12:8;15:1,6,23;

16:7,11;18:2,13
**producing (2)**
5:3;15:24
**product (1)**
16:7
**production (2)**
6:25;15:21
**products (1)**
6:17
**program (4)**
5:17;13:15,16;14:6
**progress (1)**
5:12
**project (5)**
5:15;6:14;7:19,19;
15:11
**projects (3)**
6:8;7:12;8:5
**promised (1)**
4:21
**proper (1)**
11:10
**proposal (2)**
10:14,14
**propose (2)**
5:13;10:21
**proposed (1)**
10:18
**prosecute (1)**
10:7
**prove (1)**
19:15
**proves (1)**
14:2
**provide (3)**
3:23;8:8;20:24
**provided (1)**
6:13
**providing (1)**
17:18
**PSPS (1)**
5:3
**public (1)**
13:16
**put (2)**
8:10;21:22
**PW (1)**
9:9
**PWC (14)**
3:13,22;4:10;6:24;
7:23;9:21;11:21;15:7,
24;16:5,9,13;18:11;
19:6
**PWC's (1)**
16:6

**Q**

**quickly (1)**
11:19
**quite (1)**
13:21

**R**

**railroad (1)**
19:11
**raised (2)**
20:16;21:6
**rate (11)**
7:14,23,24,25;8:21;
9:8,19;10:20;13:12,14;
14:1
**rather (1)**
10:12
**reach (1)**
19:17
**reached (1)**
12:18
**read (1)**
11:16
**realize (1)**
17:3
**really (3)**
12:21;15:9,14
**recall (1)**
20:23;21:15
**receive (1)**
3:20
**received (1)**
12:21
**recognized (1)**
16:1
**recognizing (1)**
7:20
**recollection (1)**
9:20
**recordkeeping (1)**
16:2
**reduction (1)**
9:14
**referred (2)**
6:3;7:13
**referring (1)**
6:10
**reflected (1)**
20:21
**refresh (1)**
9:20
**refused (1)**
3:25
**regarding (2)**
12:20;13:14
**regulatory (1)**
7:23;8:4
**reiterating (1)**
4:1
**relating (1)**
6:14
**relation (1)**
7:25
**relevance (2)**
9:3;19:20
**relevant (15)**
7:21;8:23;10:7;

13:11,13;16:7,12;18:6,
9,22,24;19:8,13,15,23
**remember (1)**
9:21
**reminded (1)**
21:17
**reminding (1)**
21:16
**repeat (1)**
10:14
**report (1)**
3:24
**representation (3)**
6:13,21;14:5
**represented (1)**
6:15
**request (4)**
14:22,24;15:9,15
**requested (1)**
18:16
**requesting (2)**
8:24;15:2
**requests (1)**
12:25
**required (1)**
11:10
**requires (1)**
15:12
**resolution (2)**
17:9,17
**resolve (1)**
12:7
**resolved (3)**
5:19;12:15;17:13
**resolving (1)**
21:8
**respect (3)**
7:9;15:16,19
**responded (1)**
16:21
**response (3)**
5:2;12:21;13:5
**rest (1)**
21:3
**result (1)**
14:2
**retrospective (1)**
19:5
**reverse (1)**
15:19
**right (11)**
3:7,12;4:7;6:11;
7:11;11:7;17:7,21;
20:4;21:23,24
**rights (3)**
9:12;11:12;20:25
**ripe (1)**
7:9
**risk (3)**
9:11,16;14:9
**roll (1)**
19:8
**rude (1)**

Min-U-Script®

Case: 19-30088    Doc# 11028    Filed: 08/06/21    Entered: 08/06/21 08:18:46    Page 27
of 29

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(4) oversimplification - rude

10:6
**Rule (2)**
7:20;19:17
**run (2)**
9:4;14:9

## S

**safety (5)**
8:1;9:11,16;13:15,16
**SAN (1)**
3:1
**Sarah (1)**
3:11
**saw (2)**
12:20;13:20
**saying (2)**
12:4;16:22
**scared (1)**
3:13
**schedule (3)**
8:10,25;9:12
**school (1)**
19:11
**scope (2)**
7:20;18:5
**second (3)**
5:24;12:10;14:4
**seeing (1)**
22:1
**seem (4)**
5:11;15:2;16:25;
19:10
**seems (1)**
14:7
**sense (2)**
12:6,11
**separately (1)**
8:17
**serious (1)**
12:1
**serve (1)**
12:22
**session (1)**
3:4
**short (2)**
8:11,25
**shutoff (1)**
13:16
**side (2)**
16:25;17:2
**sides (2)**
10:23;13:9
**sign (2)**
7:4;19:13
**signs (1)**
7:4
**simple (2)**
15:10;16:25
**simply (1)**
3:25
**slate (1)**
15:5

**slight (1)**
4:17
**smart (1)**
17:7
**solution (1)**
11:13
**somebody (3)**
13:18,20,21
**somehow (1)**
10:9
**someone (1)**
20:9
**sometimes (1)**
14:25
**sorry (3)**
6:1;14:16;19:25
**sort (4)**
11:24;14:24;15:19;
21:12
**sound (1)**
15:10
**sounds (1)**
15:12
**sources (1)**
19:6
**speak (1)**
18:13
**specific (1)**
14:22
**specifically (1)**
5:13
**spending (1)**
19:20
**staff (2)**
4:9;22:5
**standing (1)**
13:20
**start (1)**
10:24
**starting (1)**
19:17
**state (1)**
3:9
**status (1)**
3:24
**stay (1)**
22:5
**still (3)**
6:17;10:22;21:3
**stories (1)**
20:2
**stranger (1)**
13:19
**subject (3)**
9:6;10:11;21:18
**submission (1)**
12:20
**submit (6)**
8:18;9:9;10:18;
14:23;17:13;21:10
**submitted (1)**
10:16
**subpart (1)**

9:13
**subpoena (4)**
7:20;12:22,23;18:6
**substitute (1)**
11:9
**suggest (1)**
13:23
**suggesting (1)**
10:9
**suggestion (1)**
13:17
**Supreme (1)**
21:13
**sure (2)**
6:20;21:9
**surprise (1)**
21:11
**surprised (1)**
6:12
**suspect (1)**
18:6

## T

**talk (2)**
12:1;22:5
**talked (2)**
11:20;22:2
**talking (5)**
7:13;17:18;18:10;
19:15,16
**ten (1)**
17:1
**terms (1)**
21:8
**thinking (2)**
18:17;21:13
**though (1)**
9:3
**thought (1)**
11:24
**three (1)**
8:16
**thrown (1)**
19:25
**THURSDAY (2)**
3:1;17:11
**tired (2)**
7:2;17:12
**today (2)**
7:10;21:7
**together (2)**
4:21;16:10
**told (2)**
5:2;14:25
**tomorrow (1)**
10:23
**train (1)**
19:11
**trial (1)**
19:16
**tried (1)**
19:24

**troves (1)**
15:6
**truck (1)**
13:20
**trust (17)**
3:11;6:22;7:13;9:4;
10:2,9;14:25;15:6,11,
14,20;18:4,12,15;
20:18,21,24
**trustee (5)**
9:3,5,23;10:6;21:15
**trustees (1)**
21:14
**trustee's (2)**
10:16;19:19
**trust's (1)**
16:8
**try (3)**
4:21;8:16;17:8
**trying (3)**
5:10;11:12;16:9
**turned (1)**
16:20
**turns (1)**
14:1
**twelve (1)**
6:21;17:3
**twice (2)**
13:18;14:10
**two (8)**
4:22;8:16;10:23;
11:19;12:5;17:3,8,16

## U

**ultimately (1)**
19:20
**unambiguously (1)**
20:20
**under (2)**
9:12;18:9
**Understood (2)**
20:1;21:21
**unfortunately (3)**
6:22;15:10;16:1
**unilaterally (1)**
13:7
**universe (1)**
16:4
**unnecessary (1)**
13:19
**up (9)**
7:18;10:10,14;11:12,
13,25;18:7;20:14;21:8
**upload (1)**
7:5
**upon (1)**
14:5
**use (3)**
7:10;8:6;17:24
**uses (1)**
9:19

## V

**vast (1)**
8:2
**venture (1)**
13:1
**victim (1)**
3:11
**view (4)**
4:25;5:12;17:20;
21:9
**vu (1)**
19:10

## W

**Wait (3)**
5:23,23,23
**waiting (1)**
5:4
**wants (2)**
7:5;11:15
**War (1)**
20:2
**warning (2)**
19:11,13
**wasting (1)**
19:19
**way (8)**
10:22;11:10;15:7;
17:5,21;18:9,25;21:16
**week (4)**
10:16;17:14;20:7;
22:2
**weeks (5)**
4:22;5:17;8:19;
10:23;12:6
**whatever's (1)**
8:17
**what's (8)**
4:20,20;7:21;8:2;
9:5;17:7;18:6;20:14
**whatsoever (1)**
13:5
**Whereupon (1)**
22:7
**Who's (2)**
3:13;20:11
**wildfire (5)**
8:1;9:11,15;13:15;
14:6
**willing (1)**
14:25
**wish (1)**
21:24
**within (2)**
9:13;18:5
**without (1)**
13:3
**words (3)**
9:3;16:16,20
**work (11)**

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

4:21;6:16;7:6,8;
8:16;13:24;15:12;16:5,
7;18:11;19:4
**workable (1)**
11:13
**worked (1)**
15:23
**working (4)**
7:23;8:4;15:5;16:10
**world (1)**
16:25
**wrap (1)**
11:25

## Y

**yesterday (4)**
3:19;4:9;5:25;12:13
**yielded (1)**
9:23

## Z

**Zoom (1)**
13:22

## 1

**1 (5)**
8:17;10:15;13:24;
14:20;16:21
**11:57 (2)**
3:21;6:15
**11s (1)**
21:15
**16th (1)**
4:3

## 2

**2 (3)**
8:17;10:15;13:24
**2004 (2)**
7:20;19:17
**2012 (1)**
15:8
**2013 (1)**
14:21
**2018 (1)**
18:4
**2020 (3)**
5:18;14:21;18:17
**2021 (1)**
3:1

## 3

**3 (2)**
10:15;13:24
**3and (1)**
8:17

## 4

**4 (4)**
6:9;8:17;10:15;
13:24
**4A (1)**
13:25

## 5

**5 (4)**
3:1;8:10,19;10:20

## 7

**7s (1)**
21:14

Case: 19-30088    Doc# 11028    Filed: 08/06/21    Entered: 08/06/21 08:18:46    Page 29
of 29