1              UNITED STATES BANKRUPTCY COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                        -oOo-

4   In Re:                          ) Case No. 19-30088
                                    ) Chapter 11
5   PG&E CORPORATION AND PACIFIC    )
    GAS AND ELECTRIC COMPANY        ) San Francisco, California
6                                   ) Tuesday, August 10, 2021
                        Debtor.     ) 11:00 AM
7   _____ )
                                      REORGANIZED DEBTORS'
8                                     OBJECTION TO CONSOLIDATED
                                      EDISON DEVELOPMENT, INC.'S
9                                     AMENDED CURE PAYMENT CLAIM
                                      DEMAND FILED BY PG&E
10                                    CORPORATION [10613]

11              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE DENNIS MONTALI
12             UNITED STATES BANKRUPTCY JUDGE

13  APPEARANCES (All present by video or telephone):
    For the Reorganized        THEODORE E. TSEKERIDES, ESQ.
14  Debtors:                   Weil, Gotshal & Manges LLP
                               767 Fifth Avenue
15                             New York, NY 10153
                               (212)310-8000
16
    For Consolidated Edison    HUGH M. MCDONALD, ESQ.
17  Development, Inc.:          Pillsbury Winthrop Shaw Pittman
                               LLP
18                             31 West 52nd Street
                               New York, NY 10019
19                             (212)858-1000

20

21

22

23

24

25

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18    Court Recorder:              LORENA PARADA/ANKEY THOMAS
      United States Bankruptcy
      Court
19    450 Golden Gate Avenue
      San Francisco, CA 94102
20

21    Transcriber:                 MICHAEL DRAKE
      eScribers, LLC
22    7227 N. 16th Street
      Suite #207
23    Phoenix, AZ 85020
      (973)406-2250
24

      Proceedings recorded by electronic sound recording;
25    transcript provided by transcription service.

PG&E Corporation and Pacific Gas and Electric Company

1    SAN FRANCISCO, CALIFORNIA, TUESDAY, AUGUST 10, 2021, 11:00 AM

2                            -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Calling the matter of PG&E Corporation.

5    Bringing in Mr. McDonald.  Mr. Tsekerides.

6            THE COURT:  All right.  Good morning.  Mr. McDonald,

7    state your appearance, please.  You got your mic on mute.

8            MR. MCDONALD:  Good morning, Your Honor.  Hugh

9    McDonald, Pillsbury Winthrop Shaw Pittman, for Consolidated

10   Edison Development.

11           THE COURT:  Thank you.

12           Mr. Tsekerides, good morning.

13           MR. TSEKERIDES:  Good morning, Your Honor.  Ted

14   Tsekerides from Weil Gotshal on behalf of the reorganized

15   debtors.

16           THE COURT:  So just to give you a heads-up, we seem to

17   have a little bit of a connection problem.  I did a last-minute

18   switch.  But if I freeze, don't take it personally.

19           MR. TSEKERIDES:  Okay.

20           THE COURT:  All right.  So, Mr. Tsekerides, you're up

21   first.  Of course, I've got a couple questions for you.

22           MR. TSEKERIDES:  Okay.

23           THE COURT:  Well, the first one, it's a small point,

24   but did the -- the post-petition interest component of about

25   170,000, is that still an issue, or is that no longer an issue?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        MR. TSEKERIDES:  No, Your Honor.  That's not an issue.

2        THE COURT:  That's not an issue?  It was originally in

3    the demand.  And then --

4        MR. TSEKERIDES:  Right.  And we had noted in our

5    papers that we had taken care of that separately so that the

6    only issue here would be these fees and the -- attorneys' fees

7    and the default interest.

8        THE COURT:  Well, I thought -- yes.  I thought that

9    was the case.  But I just -- I don't know, a little bit

10   unclear.

11        And then from the materials that you submitted, I had

12   the consent and the demand and the examples of a couple of the

13   operating agreements.  But I don't have anything from your side

14   and maybe not Mr. McDonald's side -- I don't have any financing

15   agreement itself in the record, do I?

16        MR. TSEKERIDES:  There should be financing agreements

17   that were attached to the demand, I believe.

18        THE COURT:  Well, it's in the -- the binder that you

19   prepared had five items.  There was the cure demand and the

20   original cure demand and a representative agreement and consent

21   and notice of default.  Now, are you saying that the

22   representative CED agreement also includes the financing

23   agreement?

24        MR. TSEKERIDES:  I'm not making that representation,

25   Your Honor.  I don't have in front of me what you have.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    I would say that, at the end of the day, it's not

2  really relevant to our argument.  But to the extent that you

3  don't have that and you think you need it, I guess we can make

4  arrangements.  But we're not really relying on -- in fact, I

5  think our arguments are quite to the contrary, that the

6  financing agreements aren't relevant.  And to the extent they

7  are, it's all still based on a breach of an ipso facto clause

8  that we filed for bankruptcy.

9    THE COURT:  Well, I understand that.  But, Mr.

10  McDonald, you believe that I have a financing agreement in the

11  record somewhere or (audio interference)?

12    MR. MCDONALD:  No, Your Honor.  I don't believe we do.

13    THE COURT:  Well, here's the problem I have.  And, Mr.

14  Tsekerides, I know you'd like to kind of isolate the issue.  I

15  don't know how I can make an informed decision here without

16  knowing what the so-called cross-default provisions say.  I

17  mean, I can presume what they say.  And your opening brief kind

18  of says, oh, we got this cross-default, and that doesn't apply.

19  And then you were dismissive in the opposition saying, well,

20  that's not relevant.  How can I -- I mean, it seems to me I'm

21  almost making a decision in the abstract if I don't have -- if

22  I don't think about the cross.

23    MR. TSEKERIDES:  Well, I don't think so, Your Honor.

24    THE COURT:  I mean, to the -- one more point.

25    MR. TSEKERIDES:  Yeah, I'm sorry.  Yeah.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  For example, again, I don't want to turn

2    this into a criticism, but your reply didn't mention the Copple

3    (ph.) case or that other case that has an unpronounceable name.

4    MR. TSEKERIDES:  With --

5    MR. MCDONALD:  (Indiscernible).

6    MR. TSEKERIDES:  With the L.

7    MR. MCDONALD:  (Indiscernible).

8    THE COURT:  Yeah.  And yeah.  There was an example of

9    cross-default provisions honored or not honored.  And how -- so

10   how can I make a decision here without knowing the whole story?

11   Although I can guess that the financing agreement has some

12   boiler-plate bankruptcy clause provision like the underlying

13   CED agreements.

14   MR. TSEKERIDES:  If I might, Your Honor.  I think --

15   and I think the confusion comes from the point that we are not

16   claiming that these are your traditional cross-defaults.  But

17   because -- in other words, we're not saying that we had an

18   agreement with somebody else, and when we breached that, it

19   automatically breaches something else.  But because ConEd had

20   raised the point that their damages supposedly arose because

21   they are under an alleged default under their contracts with

22   somebody else, that's why we referenced those.  The Copple case

23   and the other case that it's hard to pronounce are not relevant

24   for the simple reason that, 1, they're not -- they're not

25   cross-default issues that we're arguing that should be

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    applicable.  We reference cross-default because they said

2    that -- in their demand that, because we filed for bankruptcy

3    and under our contracts we were in default, that caused them to

4    be in default under their contracts.  And we said it doesn't

5    matter which contracts you're claiming under.  At the end of

6    the day, I only have a contract with you.  And if your damages

7    arose because my filing for bankruptcy breached our contract

8    and that led to something else with you and a third party

9    because we filed for bankruptcy, it's still an ipso facto.

10    THE COURT:  But I think in the Copple case --

11    admittedly, it was a long time ago  and not binding on

12    anything, but it was a very integrated relationships between,

13    as I recall, it was a veterinarian and the seller, the seller

14    and the buyer and the landlord, right?  But everything was very

15    much woven together.  You can't pretend that the agreements

16    here are complete strangers to one another.  Everybody knows --

17    MR. TSEKERIDES:  Right.  But, Your Honor, in fairness

18    to us, we never said we were complete strangers to them.

19    THE COURT:  Right.

20    MR. TSEKERIDES:  In fact -- we've never said that.  In

21    fact, in our opening brief two years ago when we filed the PI

22    to stop FERC --

23    THE COURT:  Right.

24    MR. TSEKERIDES:  -- we acknowledged as much.  But the

25    Copple case --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  I know that.

2          MR. TSEKERIDES:  -- does not -- does not deal with

3    ipso facto clauses.  I mean, we're talking about a situation

4    here -- and frankly, I think 365(b)(2) should really put to

5    rest whatever we're talking about here, that --

6          THE COURT:  Let me stop you there.

7          MR. TSEKERIDES:  Yeah.

8          THE COURT:  You may win on that, and that may be the

9    end of the story.  But the point is, I've got a lot of money

10   spent and a lot of good lawyers on both sides giving me a lot

11   of argument.  And wait a minute, what am I supposed to be

12   focusing on here?

13         MR. TSEKERIDES:  Well, we would argue that you don't

14   need to be focusing.  And I'm happy to let Mr. McDonald argue

15   when it's his turn that you need to.  But our point is you

16   don't need to be focusing on the finance agreement's terms in

17   order to rule in our favor because, at the end of the day, and

18   I have a letter from one of the counterparties here that I

19   believe is in the record because it's attached to one of our

20   exhibits, that they acknowledge under that other contract that

21   we're not a party to -- we're not saying we're strangers, but

22   we're certainly not a party to those financing agreements, that

23   they said it was in each account in each case on account of the

24   bankruptcy filing.

25         So our point is, look, whatever you're arguing about,

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  at the end of the day, you're saying you're entitled to twelve

2  million dollars because we filed for bankruptcy. And our point

3  is --

4           THE COURT: Exactly.

5           MR. TSEKERIDES: -- that's a quintessential ipso facto

6  clause that's unenforceable.

7           THE COURT: No. I understand your point. And I'm

8  going to --

9           MR. TSEKERIDES: Okay.

10          THE COURT: -- shut up in a minute. I have a couple

11 more --

12          MR. TSEKERIDES: Okay.

13          THE COURT: -- preliminary questions. But I do think

14 in the binder that you gave me, there is an Exhibit E. And

15 again, I have to be careful because some of these things are

16 redacted and some are not. But Exhibit E is a notice of

17 default by a financer. And --

18          MR. TSEKERIDES: Right.

19          THE COURT: Sure, as I said, I don't want to act like

20 I was born yesterday either. I know what that thing probably

21 says. But the fact is -- I was thinking to myself, well, make

22 a ruling in this case. If there's an appeal, will the

23 appellate court say, well, duh, you don't have a complete

24 record? Okay. Let's --

25          MR. TSEKERIDES: Sure.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Let's go to another question I have about

2 your side.  And that -- I think Mr. McDonald argues that the

3 damages are direct.  And I guess you're saying they're not

4 direct.  Am I correct?  I mean, let's not kid ourselves.  You

5 know exactly what those financing agreements say and what they

6 don't say.  But do you win if I say that whatever ConEd's

7 damages are, they're indirect rather than direct, or does

8 that -- does that --

9    MR. TSEKERIDES:  That's really not the -- for this

10 argument, and we set this up at ipso facto, the direct/indirect

11 consequential damages is a completely separate point.  For this

12 argument today, whether they're direct, whether they're

13 consequential, whether they're whatever, the fact of the matter

14 is they arose on account of us filing for bankruptcy.  And

15 therefore, they are unenforceable under 365(b)(2).

16    If we were to lose today and you were to say that ipso

17 facto clause is not triggered, which, as I will argue, I think

18 will be -- I think will have repercussions beyond this case.

19 But if that were to happen, then we would come back to you.  I

20 don't know if we'd have to take discovery, but we would come

21 back to you and say, okay, these damages, whatever they are,

22 they're not recoverable under their contract because they're

23 not direct damages.  And there's a whole other line of case law

24 that deals with that.  And there might be some fact issues.  We

25 touched upon this, if you recall, when we were thinking about

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    this.  And I think we all agree that, at the end of the day, it

2    was better for today to just focus on the legal point of the

3    ipso facto clause.

4         So for today, I would say it doesn't matter.  It's

5    irrelevant whether or not they're direct or consequential

6    because what is relevant is that -- the result as they claim

7    and their finance people claim that they arose because we filed

8    for bankruptcy.

9         And going back to the finance agreements, I'm not

10   sure --

11             THE COURT:  Okay.

12             MR. TSEKERIDES:  -- we even have those.  But we can

13   address that later.

14             MR. MCDONALD:  We have produced those to you.

15             MR. TSEKERIDES:  Okay.

16             THE COURT:  I don't think -- I mean --

17             MR. TSEKERIDES:  That's not --

18             THE COURT:  But Mr. Tsekerides --

19             MR. TSEKERIDES:  But again, that's not relevant for

20   today.

21             THE COURT:  On the moment --

22             MR. TSEKERIDES:  I'm sorry, Your Honor.  I lost you

23   there.

24             THE COURT:  The -- no, no.  I paused.  But maybe my

25   connection froze too.  On the moment of (audio interference) of

escribers
(973)___-___ | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    January 29th, there were twenty-eight days of payments accrued

2    but not due.  But there was a pre-petition component to a

3    portion of the claim.  Now, it got picked up in the 503(b)(9),

4    I guess, and part --

5         MR. TSEKERIDES:  But we --

6         THE COURT:  -- of the cure.  But isn't it true on the

7    moment there was at least a financial default that predates the

8    exact petition or not?

9         MR. TSEKERIDES:  No.  I mean, if there were -- there

10   were amounts accruing, but they were not due.  And so when we

11   filed for bankruptcy, the automatic stay applied.  And whatever

12   those amounts were, that's not the predicate for this.  I mean,

13   all of the notices are clear.  These damages they're claiming

14   arose because we filed for bankruptcy.  But when we filed for

15   bankruptcy, amounts were not owed yet.  They would have been

16   owed, I think, in February.

17        But at the end of the day, we filed for bankruptcy.

18   And under the code, we didn't have to pay those.  We did

19   ultimately pay them.  And including during the -- we performed

20   during the bankruptcy.  Things that were delivered during the

21   bankruptcy were paid.  And then if you recall, we made a motion

22   to you in November to pay certain amounts that were still open.

23   But all of that has been paid.

24        At the end of the day, the point for today is that

25   they are claiming these twelve million dollars because we filed

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    for bankruptcy.  And they're claiming our filing for bankruptcy

2    led them to be in default under these finance agreements and

3    apparently accruing obligations under those contracts but all

4    because we filed for bankruptcy.

5            THE COURT:  I think in the -- I understand that.  And

6    again, I know the facts.

7            MR. TSEKERIDES:  Okay.

8            THE COURT:  And I know how the (audio interference)

9    thing operates.  But I believe -- I'm just looking here at the

10   preliminary -- the amended cure demand that Mr. McDonald filed.

11   I believe there was a reference at least that there was some

12   pre-petition owing or at least debt lately about owing.  There

13   was pre-petition debt --

14           MR. TSEKERIDES:  We don't dispute --

15           THE COURT:  -- in these -- on the moment of

16   bankruptcy.

17           MR. TSEKERIDES:  We don't dispute that amounts were

18   accruing.

19           THE COURT:  Right.

20           MR. TSEKERIDES:  But those were all paid in part of,

21   like, I would call that almost, like, ordinary cure.  You have

22   some amounts owing beforehand pre-petition which, under the

23   code, we don't have to pay while we're in bankruptcy.  We paid

24   certain things going forward.  There was a motion made in

25   November to allow us to pay other things.  And then when the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    plan went effective, we paid whatever amounts were owed.

2         Now, if they wanted -- I mean, they make some

3    arguments about forward contracts which I don't think is

4    relevant at this point.  But if they had wanted to and they

5    thought the automatic stay did not apply, they could have done

6    something certainly well before they filed some cure demand

7    seventeen months later.  If they were really worried about a

8    couple of shekels that were owed for pre-petition amounts, they

9    could have done something rather than sitting around and now

10   claiming, which would be completely different from what they're

11   arguing, that that small piece in January is the reason why

12   we're here.

13        That ship has sailed.  We're here because they say we

14   filed for bankruptcy --

15        THE COURT:  Well --

16        MR. TSEKERIDES:  -- creating a host of other supposed

17   breaches in their finance agreements.

18        THE COURT:  Well, as you -- as you've said, we're not

19   here for that reason because that portion of the debt was paid.

20        MR. TSEKERIDES:  Correct.

21        THE COURT:  In other words, to that twenty-eight-day

22   window of power provided was paid --

23        MR. TSEKERIDES:  Correct.

24        THE COURT:  -- under the cure.

25        MR. TSEKERIDES:  Correct.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Okay.  And so -- but now we come back to

2   another provision of the contract.  And again, they are

3   different provisions, but they're the indemnity provisions.

4   And I'm a little unclear.  But do you think the indemnity

5   provisions are also irrelevant to the argument for today?

6    MR. TSEKERIDES:  For today, yes.  I think you'll see

7   two things.  One --

8    THE COURT:  Okay.

9    MR. TSEKERIDES:  -- I think you can read their brief.

10  You don't really see much about an indemnity discussion for

11  today.  And 2, it all arises out of our filing for bankruptcy.

12  And I can't -- and I know I'm going to sound like a broken

13  record on that.  But, I mean, I think when you see -- we cited

14  at least five or six cases that it doesn't make sense that I'm

15  curing the bankruptcy, whatever that means, but that doesn't --

16  I'm excused from curing the bankruptcy but I'm not excused from

17  curing the damages that flow from that.

18    At that rate, like, what's the point then of having

19  that section?  It's got to all be inclusive.  So, I mean,

20  that's -- I mean, we're sort of --

21    THE COURT:  No, I --

22    MR. TSEKERIDES:  -- Frankensteining my argument here.

23    THE COURT:  -- understand that.

24    MR. TSEKERIDES:  But I appreciate that.

25    THE COURT:  Well, the Copple case and the Lillaburg

PG&E Corporation and Pacific Gas and Electric Company

1   (ph.) --

2           MR. TSEKERIDES:  Lillaburg.  That's it, Your Honor.

3           THE COURT:  If I'm not mistaken, I believe -- I

4   believe both of them -- there are -- certainly, in Copple there

5   were pre-existing defaults.  So whereas here, we have no

6   defaults until the petition.  And it is only the petition that

7   starts the default.  In Copple we already had defaults, right?

8           MR. TSEKERIDES:  Well, I think that proves my point

9   that these other cases had defaults beforehand.

10          THE COURT:  Yes.

11          MR. TSEKERIDES:  But that's not -- I mean, we're here

12  because they're claiming they're entitled to twelve million

13  dollars because we filed for bankruptcy as an event of default.

14  And this isn't just me making it up.  Their papers are replete

15  with that.  And I think the coda on that is the letter that --

16  I mean, I'm not going to go into the specifics because it was

17  considered highly confidential, but Your Honor has it.  And it

18  says what it says, that it's all because we filed for

19  bankruptcy.  And, I mean, I know it's simplistic, but I think

20  the argument is clean that the law is clear, the code is clear

21  not just in 365(b)(2).  And the reason we cited these other

22  provisions is to show not that we're saying they apply like

23  365(e) or others that we cited, but to show that congress

24  intended for ipso facto clauses not to be applicable.  It has

25  certain exceptions under different circumstances, but 365(b)(2)

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

                PG&E Corporation and Pacific Gas and Electric Company

1    without exception precludes someone from recovering damages on

2    account of a debtor filing for bankruptcy.  And you can't say,

3    well, it only excuses you from curing the bankruptcy, but it

4    doesn't excuse you from paying the damages from the bankruptcy.

5    I mean, if that's the case, then 365(b)(2) doesn't exist

6    because what's the point of telling me, okay, I'm excused from

7    the bankruptcy but everything that flows from that I'm not.

8                And I know Your Honor is a fan of the hypothetical, so

9    let's add a contract that said, if you file for bankruptcy, you

10   owe me ten million dollars in liquidated damages.  And assume

11   that it's valid under state law, so there's no question.

12   That's an ipso facto.  I file for bankruptcy, you get ten

13   million dollars?  You can't do that.  That's essentially what

14   we have going on here.

15               THE COURT:  I have no more questions.  And I gave you

16   a portion of -- a total of thirty minutes.  You've got -- let's

17   just use what you want now.  And I'll try to balance the time.

18   And you go ahead and say what you want and reserve what you

19   want.

20               MR. TSEKERIDES:  Sure.  Well, I mean, I'll reserve

21   ten.  I mean, I think I've made -- like I said earlier --

22               THE COURT:  And I'm just saying you don't have --

23               MR. TSEKERIDES:  I mean, sort of through our colloquy,

24   Your Honor --

25               THE COURT:  I would say, you don't have to -- you

PG&E Corporation and Pacific Gas and Electric Company

1    don't have to if you want.

2         MR. TSEKERIDES:  I mean, certainly through our

3    colloquy I think I've make my point.  And, I mean, I'll just --

4    I'll just make a few minor points.  There's some reference

5    to -- references to 1124 and 502 that ConEd made.  But I think

6    if anything, those further solidify our points, because even

7    1124 talks about -- you don't have to cure if it's under

8    365(b)(2).  So again, there is no -- there is no separate

9    claim.  Their argument basically is, well, there is the claim

10   out there even though you don't have to cure the default.

11   That -- mean, respectfully, that makes zero sense.  And 1124

12   supports our reading of 365(b)(2).

13        And then finally, 502, which they point to as the

14   claims provision, well, that actually says unless it's

15   precluded under applicable law.  Well, 365(b)(2) is applicable

16   law.  You don't have a claim.  When I -- when I file for

17   bankruptcy, you don't have a claim for money damages.  The code

18   precludes that.  So 1124 and 502, which they seem to fall back

19   on, don't help them either.  And I've touched on already I

20   think the cross-defaults again.  And maybe we sewed some of

21   this confusion.  But in fairness to us, again, that arose

22   because they were pointing to some third-parties contract

23   which, again, at the end of the day, it's all predicated on our

24   filing for bankruptcy.  And you don't get damages for that.

25   And I'll reserve the balance of my time.  And I guess I'll

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    save, like, ten minutes.

2          THE COURT:  Okay.  Mr. McDonald, you've got thirty

3    minutes or as much as you want, I mean, up to thirty minutes.

4          MR. MCDONALD:  For the record, again, Hugh McDonald,

5    Pillsbury Winthrop --

6          THE COURT:  You all right?

7          MR. MCDONALD:  -- for the Consolidated Edison

8    Development --

9          THE COURT:  I'm going to put -- I'm going to put --

10   hold on a second.  I can hear you better if I put my headset

11   on.  Okay.  Go ahead.

12         MR. TSEKERIDES:  Well, we're not -- we're not

13   videotaped, right, Your Honor?

14         THE COURT:  Go ahead, Mr. McDonald.

15         MR. TSEKERIDES:  People don't see us with our headsets

16   on anyway.  So we're okay.

17         MR. MCDONALD:  Can you hear me now, Your Honor?

18         THE COURT:  No, they can see me with my headset on.

19         MR. MCDONALD:  Okay.  Your Honor, can you hear me

20   okay?

21         THE COURT:  Yes.

22         MR. MCDONALD:  Okay.

23         THE COURT:  Yes, I can hear you -- am I freezing on

24   you?

25         MR. MCDONALD:  You're freezing a little bit.  It's a

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  little choppy, but I can generally hear you.

2       THE COURT: Okay.

3       MR. MCDONALD: Okay.

4       THE COURT: Go ahead.

5       MR. MCDONALD: Your Honor, before I go into the

6  argument, we had filed two declarations in support of our

7  response, the declaration of James Dixon, he is the chief

8  operating officer of ConEd Development, and Frank Linde (ph.)

9  which we offered in the nature of an expert. They are both

10  here, both present in Zoom world, this hearing. So we would

11  like to make an admission of their declaration as part of the

12  evidentiary record.

13       MR. TSEKERIDES: And, Your Honor, we objected to Mr.

14  Linde. We don't -- first of all, we don't see that there's any

15  relevancy whatsoever. And he says that he's providing -- as a

16  factual matter, he has zero personal knowledge of anything

17  relating to this -- to this relationship.

18       And in terms of an expert report, it's really not

19  appropriate in the context of this ipso facto argument what his

20  views may or may not be about how people go about their

21  business buying and selling. One, again, I'll stress he has

22  zero personal knowledge of what PG&E knew or didn't know.

23       And so on the other one, it's a ConEd person. He has

24  facts. We have no issue with that. But on the Linde one, we

25  do object.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  I'm going to have to make a ruling on it.

2  I'm going to take it under advisement with the merits of the

3  motion.  So, Mr. McDonald, you don't need to bring those

4  gentlemen into the screen and have them sworn.  Their

5  declarations are what they are.  And Mr. Tsekerides has made

6  the record that he believes at least one of them shouldn't be

7  considered.  But I'll just deal with it when I make a ruling on

8  the merits.

9    MR. MCDONALD:  I appreciate that, Your Honor.

10    With respect to the Linde declaration, given that PG&E

11  waives the cross-default issue and the -- that their view is

12  having two separate contractual relationships, we felt the need

13  to have Mr. Linde in addition to Mr. Dixon attest to the

14  interrelated nature of these two contracts.

15    THE COURT:  No, I understand.  I understand your

16  points.

17    MR. MCDONALD:  Your Honor, before I get into the ipso

18  facto issues, I just wanted to give Your Honor a little bit of

19  background on the relationship.  ConEdison, Consolidated

20  Edison, developed --

21    THE COURT:  I've read --

22    MR. MCDONALD:  -- (indiscernible).  And it --

23    THE COURT:  Mr. McDonald, I read all the briefs.  I

24  read all the briefs twice.  So --

25    MR. MCDONALD:  Yeah, okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  -- you can use the time to give me the

2  background, but I have a bad habit of preparing for these

3  hearings.

4    MR. MCDONALD:  I appreciate that, Your Honor.  I just

5  wanted to make sure that Your Honor didn't have any questions

6  about the background.

7    And, Your Honor, I want to refer to, ConEdison, I mean

8  Consolidated Edison Development and all of its affiliates.

9  There are sixteen different --

10    THE COURT:  Right.

11    MR. MCDONALD:  -- affiliates, project entities, that

12  are currently counterparties to agreements with PG&E.  When I

13  refer to them, I like -- just ease of reference, I'll be

14  referring to all of them.

15    THE COURT:  Okay.

16    MR. MCDONALD:  Your Honor, as Your Honor noted, we did

17  submit an initial cure claim demand.  That was following

18  negotiation provisions to a confirmation order which enabled

19  energy suppliers to submit cure claims with PG&E, we've had --

20  Your Honor, your hand is up.  Your Honor?  We extended the

21  period under the confirmation order several times, one with the

22  order of the Court and then by agreement with PG&E.

23    After we submitted our initial cure claim demand, we

24  attempted to reach a resolution out of court or actually a

25  short mediation.  Following that, we amended the claim.  PG&E

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    agreed to pay the post-petition interest we had sought.  And we

2    also reduced the amounts to be able to confirm the claims.

3            As Mr. Tsekerides noted at our prior conference with

4    the Court, we agreed to focus on the application of the ipso

5    facto clauses to the claim.

6            So, Your Honor, PG&E's position we just heard is that

7    no default, no default can occur because of the ipso facto

8    provisions.  We think that's simple law.  And in looking at

9    this, Your Honor, I think you have to consider four things:

10   The first is the purpose of the ipso facto provisions, the

11   legislative history of these provisions, the interrelationship

12   of the agreements at issue, and the (indiscernible) aspect of

13   (indiscernible).

14           Your Honor, ipso facto means generally by the act

15   itself.  In most agreements, whether it's a purchase agreement,

16   a loan agreement, all have provisions even today that say it is

17   a default if a party files for bankruptcy.  Under the prior law

18   under the Bankruptcy Act -- and I -- not quite to a point where

19   I actually practice under the act, Your Honor, but I did have a

20   case under the act in the beginning of my career.  It

21   requires --

22           THE COURT:  I did practice under the act, including

23   some ipso facto cases.  So I've been there and done that.

24           MR. MCDONALD:  So the prior act had no provisions

25   relating to ipso factor provisions.  And what that meant was,

PG&E Corporation and Pacific Gas and Electric Company

1    when the company filed for bankruptcy, the counterparty could

2    potentially terminate the contract or, if they wanted to

3    reorganize, they could object to the assumption of a contract

4    as part of the reorganization. There was a -- there was view

5    that that would frustrate reorganizations if people would lose

6    their contractual rights simply because of the bankruptcy

7    filing.

8         So in 1978 the Bankruptcy Code was introduced and

9    introduced several provisions into the Bankruptcy Code, 1,

10   designed to prevent any modification or termination of the

11   contract following the bankruptcy; 2, that filing default did

12   not have to be cured for assumption. And, again, for a

13   claimant to be deemed to be unimpaired, there was no

14   requirement that the filing default be cured.

15        But in each instance, Your Honor, it is the filing of

16   bankruptcy, that default that congress excused, it's as if

17   congress is saying -- said you can't unring the bell, right?

18   You can't stop the fact of -- or overlook the fact that the

19   bankruptcy default occurred.

20        What those provisions do not address, however, Your

21   Honor, is the direct damages that flow from that default. But

22   what congress was only trying to address when it filed -- when

23   it -- put those provisions into the Bankruptcy Code is the

24   bankruptcy filing itself.

25        The legislative issue that is quoted, Your Honor, I

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   think is actually very important on this because I think it

2   hits the point right on.  Congress said these clauses protected

3   under present law automatically terminate the contract or lease

4   or permit the other contractual party to terminate the contract

5   or lease in the event of bankruptcy.  This frequently hampers

6   rehabilitation efforts.  The trustee may assume or assign the

7   contract under the limitations imposed by the remainder of this

8   section, then the contract or lease may be utilized to assist

9   in the debtor's rehabilitation or liquidation.

10          The unenforceability of ipso facto bankruptcy clauses

11  proposed under this section will require the courts to be

12  sensitive to the rights of the nondebtor party to the executory

13  contracts and unexpired leases.  If the trustee is to assume a

14  contract or lease, the courts will have to ensure that the

15  trustee's performance under the contract or lease gives the

16  other party the full benefit of his bargain.  And that's what

17  we're seeking here, Your Honor, to be able to claim the full

18  benefit of our bargain.

19          Your Honor, the agreements that are at issue here are

20  very much interrelated.  You can't have --

21          THE COURT:  Well, hold on.  Mr. McDonald, if there are

22  no consequences, what's the point of the having it in there?

23  If congress says --

24          MR. MCDONALD:  Because, Your Honor, the --

25          THE COURT:  -- you can file bankruptcy even though

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    someone (audio interference) bankruptcy, they decided that

2    that's the end of the story, there's no other consequence?

3            MR. MCDONALD:  The limitation, Your Honor --

4            THE COURT:  I mean, what -- well, what consequence

5    follows beyond the filing of a bankruptcy if your argument is

6    correct?

7            MR. MCDONALD:  Sorry, Your Honor.  You broke up in the

8    first part of that sentence.

9            THE COURT:  I said what consequences follows the

10   bankruptcy if the only thing that congress nullifies is the

11   fact that you filed bankruptcy and you didn't?  So, I mean,

12   your argument would be congress says you can pretend you didn't

13   file bankruptcy if you did, but there are no other

14   consequences.  Well, what does that mean?

15           MR. MCDONALD:  Well, originally, Your Honor, under the

16   act, the estate couldn't prevent it from assuming the contract

17   because it's an incurable default.  You can't literally unring

18   that bell.

19           THE COURT:  Right.

20           MR. MCDONALD:  And that was --

21           THE COURT:  That's 541.  But that's 541, before you

22   ever get to the executory contract.  I mean, you could have --

23   you could be forfeiting rights even if you didn't have any

24   executory contracts.  But 541 protects the debtor in the

25   bankruptcy there.  But here this debtor chose to preserve the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   contracts.  And you're saying you can preserve the contract but

2   not the provision that congress accepted from 365.

3            MR. MCDONALD:  Your Honor, what congress was

4   addressing in 365(b) and the corresponding sections 1124 was

5   the inability of the estate to assume a contract because of the

6   incurable default of the bankruptcy and/or the financial

7   condition of the counterparty, both of which would prohibit or

8   potentially prohibit the estate from assuming the contract.

9   And that is -- that is a default.  It's full stop a default,

10  but it's an incurable default.  And that's what congress is

11  struggling with when they were introducing the code in 1978.

12  They believed that if there is an incurable default, as

13  others -- there are other uncurable defaults, the estate would

14  be prohibited from realizing the benefits of the contract.

15           And Your Honor is correct.  541 -- and I would argue

16  362 also would apply when there was a filing.  362 would

17  prevent any action by the counterparty to take -- to go against

18  property of the estate, just to take your 541 question a little

19  further.

20           Your Honor, you're frozen.  Can you still hear me?

21  Your Honor?

22           THE COURT:  Yes, I can.  I'm sorry I'm having -- look,

23  I'm going to -- I'm going to try to make another fix on the

24  connection here.  Just take a second here.  Wait for me.  This

25  is very frustrating.  I'm sorry it's happening.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          Okay.  Can you hear me now, Mr. McDonald?

2          MR. MCDONALD:  I can hear you now.  You're a little

3    choppy on the video, but I can hear the audio fine.  Did you

4    hear what I just --

5          THE COURT:  Yeah.

6          MR. MCDONALD:  Did you --

7          THE COURT:  Yeah, I can -- I can hear you.  I don't

8    know why this is happening.  I don't have any other programs

9    running.  And I've switched my connection.  So I apologize for

10   the mix-up.  I thought we had it fixed by now.  Go ahead.

11         Well, I want to ask you some questions.  So, but, I

12   mean, you're focusing on -- but what -- the fact that you give

13   me this history, I grant you the history and I grant you what

14   it came from.  But what does the parenthetical and the

15   provisions in 365(b)(1) mean if it says -- if there's

16   exceptions, what doesn't have to be cured?

17         MR. MCDONALD:  You're talking about 365(b)(1), Your

18   Honor, or (b)(2)?

19         THE COURT:  Yes.

20         MR. MCDONALD:  (b)(1).

21         THE COURT:  Well, (b)(1).  I mean, together.  I'm

22   talking about them together.  I mean, (audio interference)

23   (b)(2), okay?  And, I mean, they go together because (2) says

24   (1) doesn't apply, so if (1) doesn't apply for a default that

25   is a breach relating to insolvency.  So if the default doesn't

PG&E Corporation and Pacific Gas and Electric Company

1   apply, what do I mean?  Whatever the history notwithstanding,

2   how do you get around the plain words of the statute there?

3           MR. MCDONALD:  Those aren't the plain words of the

4   statute.  What the statute provides, Your Honor, is the breach

5   of contract, right, the default itself which is the

6   commencement of a bankruptcy case, the debtor is relieved of

7   having to cure that.  The debtor can't cure that.

8           THE COURT:  Okay.

9           MR. MCDONALD:  But it goes beyond that, Your Honor,

10  because even if you look at the power purchase agreements as --

11  and Mr. Tsekerides -- we have a difference of opinion on this.

12  But a power purchase agreement is also a forward contract.

13  That's clear from the Clear Peak Energy case we cite and also

14  the National Gas Distributers case out of the Fourth Circuit.

15  Both of those relate to -- one instance to Clear Peak which is

16  TPI.  And it was Southern California Edison that sought to

17  terminate the power purchase agreement post-petition.  It was

18  given the ability to do so.

19          And in National Gas Distributors, a long-term gas

20  supply content was found to actually be a swap under the swap

21  provisions of the safe harbors.  Well, in response, to safe

22  harbor argument, PG&E cites to an unreported decision in which

23  the judge, then Judge Peck, offered a more restrictive

24  interpretation of the scope of the safe harbors.  That

25  decision, Your Honor, was specifically rejected by the Second

PG&E Corporation and Pacific Gas and Electric Company

1    Circuit years later in a case reported at 970 F.3d 91 at page

2    104, footnote 11.

3           THE COURT:  What's the name of that case?

4           MR. MCDONALD:  Lehman Brothers, but it was another

5    Lehman decision, Your Honor.  And it's from Second Circuit

6    2020.  In that case the Second Circuit considered flip

7    provisions and a swap.  And this wasn't an attempt to terminate

8    the swap.  There was no acceleration or termination being

9    invoked under the safe harbor.  But what was at issue is

10   whether or not the payment priority scheme damages could be

11   calculated and applied pursuant to the terms of that safe

12   harbor agreement as part of the coverage of the safe harbor.

13   And in doing so, they specifically rejected Judge Peck's review

14   of the safe harbor and said it's broad enough to include in

15   that situation the subordination of Lehman's payment priority

16   and distribution according to the amended waterfall provisions.

17   And that's at, again, 970 F.3d at 104.

18           When you look at the PPAs at issue here, they are

19   clearly moving forward as we set forth in our brief all

20   requirements of the forward contract.  The only thing we did

21   not do is that we did not terminate the contract.  But that

22   doesn't mean that the breadth of the safe harbor doesn't

23   protect the damage calculations and the awards that the party

24   would be entitled to in accordance with this Lehman decision.

25   Ultimately, they assumed the PPAs, but that does not excuse the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  fact that there was still damages that were outstanding.  And
2  as Your Honor knows, 560 of the Bankruptcy Code specifically
3  operates to take away any impact of the ipso facto prohibition.
4  And what -- and it's very important, Your Honor, because it
5  goes back to Your Honor's earlier point about the intended
6  scope.

7          The safe harbors were put in place by congress to
8  protect counterparties to certain types of qualified financial
9  contracts.  And that enabled counterparties to terminate
10  depositions, accelerate, apply collateral, calculate damages,
11  notwithstanding the bankruptcy of a debtor counterparty.  The
12  ipso facto prohibition in existence is simply the act of
13  bankruptcy itself terminated.  But if it was still a default,
14  it's still a breach.  The difference between 365(e) and 560 is,
15  under 365(e), a party to a non-safe harbor contract would not
16  be able to exercise their rights simply because of the
17  bankruptcy.  Whereas the safe harbors were created to not only
18  enable them to exercise that right, that contractual right, but
19  then to exercise remedies.

20          THE COURT:  Notwithstanding the Lehman decision, the
21  fact is that ConEd didn't seek to terminate anything here.  In
22  other words, the debtor -- I mean, you didn't --

23          MR. MCDONALD:  In Lehman, Your Honor --

24          THE COURT:  So you didn't invoke 365(e) or 560, right?
25  You're doing -- you're using it as a defense now to say that we

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   could have -- we could have had our rights preserved if we

2   had -- but you really kind of -- it seems to me you're

3   reversing it.  You're saying we could have -- we could have

4   gone forward, notwithstanding the automatic stay, and executed

5   the swap, for example.  But the fact is your client just

6   enjoyed the benefit of continued performance under the

7   contract.

8          So, I mean, I guess -- I guess what I'm not relying is

9   how 556 or 560 even became operative when ConEd didn't do

10  anything.

11         MR. MCDONALD:  Your Honor --

12         THE COURT:  Doesn't it have to require the

13  counterparty to do something?

14         MR. MCDONALD:  It provides the safe harbor for the --

15  in the Lehman case, Your Honor, it provides a safe harbor for

16  the calculation of damages and the application of any

17  collateral.  In the Lehman case, the swap at issue in the

18  Second Circuit which disagreed with the bankruptcy -- the older

19  bankruptcy court opinion.  It was already terminated.  There

20  was no active termination --

21         THE COURT:  But that's the opposite of --

22         MR. MCDONALD:  -- (indiscernible) of the default by

23  Lehman itself filing.  It was with a non -- I don't know if you

24  remember Lehman, but it was a flurry to get into bankruptcy.

25  Not all of the Lehman entities filed at the same time.  And so

PG&E Corporation and Pacific Gas and Electric Company

1   when subsequent entities filed into bankruptcy, terminations

2   had already occurred or notices of termination had been served

3   with respect to certain of the swap positions and other safe

4   harbor positions.  And then the question was whether or not the

5   safe harbor was broad enough to allow for the calculation of

6   damages and the application of any collateral post-filing of

7   Lehman entities.

8           And Judge Peck said it's only with regard to

9   termination or acceleration.  And the Second Circuit explicitly

10  disagreed with that.  And so while we did not terminate or

11  exercise our contractual right to terminate, as a counterpoint

12  on a safe harbor contract, we absolutely are entitled to all of

13  the other rights that you have as a counterparty to a forward

14  contract to exercise our rights and calculate damages

15  underneath our contracts and seek to obtain that recovery from

16  the estate.  But the very existence, as I said during the -- of

17  the safe harbors themselves, shows the intent with limited

18  application of the ipso facto provisions in the first instance.

19          THE COURT:  Okay.  I got it.

20          MR. MCDONALD:  Your Honor, just a couple points to go

21  back to.

22          With respect to -- you were asking Mr. Tsekerides

23  about his position to default.  Yes, there were (indiscernible)

24  defaults.  Did we take any action?  Well, at the very beginning

25  of the case, Your Honor, we signed an order setting an early

PG&E Corporation and Pacific Gas and Electric Company

1    date by which people had to file 503(b)(9) claims.  And we

2    filed a 503(b)(9) claim.  But there were other -- so we did

3    receive the full notices.  Once PG&E filed for bankruptcy, we

4    were required to report that to our lenders as if they didn't

5    know because it was the headline of every newspaper in North

6    America.

7           THE COURT:  All right.

8           MR. MCDONALD:  But that was a -- that was the default

9    that precipitated the notices that we received.

10          Other defaults did ensue, but I think they're

11   cumulative of what happened.  Post-petition, we were supposed

12   to receive payments for things like renewable energy credits.

13   We didn't.  We were supposed to receive payments of network

14   upgrades, reimbursements under our interconnection agreements

15   which were all financed by our financing parties.  We didn't

16   receive those.  Next --

17          THE COURT:  But you did -- you did receive them later.

18          MR. MCDONALD:  We -- well, Mr. Tsekerides references a

19   motion that was made in November which was precipitated because

20   a motion is made to Your Honor because the network upgrade

21   reimbursement payments were being collected by PG&E and then

22   not paid pursuant to the agreements.

23          THE COURT:  Well, I understand.  But they got -- but

24   they got paid.

25          MR. MCDONALD:  We didn't -- we didn't receive our

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    payments until after confirmation, Your Honor.

2        THE COURT:  I know.  But you're not including them in

3    your cure now.  I mean, you've got -- we're here because of

4    three different categories of things that you had to pay your

5    lenders, right?

6        MR. MCDONALD:  We originally -- when we first

7    communicated with PG&E about our cure claims, we had discussed

8    with PG&E the fact that we've had claims underneath our

9    indemnity provisions.  But we also hadn't received payment of

10   our network upgrade reimbursements which were very significant.

11   And that filing, Your Honor, in cooperation of Mr. Tsekerides

12   and PG&E, we were able to get that resolved, but it took quite

13   some time.

14       With respect to the payments that were made, the fees

15   that were paid, they weren't paid until after confirmation.

16   ConEd went out to its lenders and sought to try and litigate

17   any issue or tell them you really shouldn't keep charging these

18   because we're through the bankruptcy.  And unfortunately, some

19   of the groups did not agree with that.  And through a series of

20   negotiations, ConEdison was able to get the amounts reduced

21   that otherwise would have been payable below what would have

22   otherwise been an applicable default interest rate but still

23   chargeable.  So we didn't know at the time of confirmation that

24   we were going to owe this money.

25       THE COURT:  No.  I understand that.  But I don't -- I

PG&E Corporation and Pacific Gas and Electric Company

1  don't think Mr. Tsekerides is making an argument there.  I

2  mean, the fact that you -- the fact that you negotiated

3  something less that your client's exposure was more than twelve

4  million and the fact that you got it down to twelve means

5  PG&E's liability is no more than that same twelve.

6          So, I mean, I don't know what to make of -- what --

7  the point is, certain things that might be added to your claim

8  have been eliminated by post-petition interest.  The

9  509(b)(3) -- I'm sorry, anyway, item and (audio interference).

10  But we have these three remaining ones, the liquidated damages,

11  attorneys' fees, and that other six-million-dollar thing,

12  consolidated, what do you call -- the figure you had to pay.

13  Those are the three things you're asking for.

14          MR. MCDONALD:  If the consent --

15          THE COURT:  Consent.  It should be, yeah.

16          MR. MCDONALD:  -- fees and default interest?

17          THE COURT:  Yes.

18          MR. MCDONALD:  Default interest and the attorneys'

19  fees that were incurred --

20          THE COURT:  Yeah.

21          MR. MCDONALD:  -- in dealing with those --

22          THE COURT:  No.  But, Mr. McDonald, I  guess what I'm

23  trying to say is, if PG&E had told you to buzz off across the

24  board, you'd be here arguing for the post-petition attorneys'

25  fees and the 509 -- 503(b)(9) claims and the NUR fees.  But

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    those were all paid, so they're not issue.

2            I mean, your theory, your legal theory, is worth -- is

3    worth -- it's easier a winner or a loser.  And if it's a

4    winner, it's whatever you're entitled to, period.  And the

5    maximum that you're entitled to at the moment is what you're

6    claiming, just under twelve million dollars.  I think that --

7            MR. MCDONALD:  That is correct, Your Honor.  I just

8    wanted -- Your Honor had some questions at the beginning for

9    Mr. Tsekerides.  I wanted just the record to be clear, Your

10   Honor to understand just the facts around the relationship and

11   what went on up until the point of payment on some of these

12   claims (indiscernible) to the petition date and also to put

13   into perspective when ConEdison was required to make these

14   payments.

15           THE COURT:  Yeah.  I understand.  I appreciate that.

16   Okay.  Do you want to -- anything else?

17           MR. MCDONALD:  Unless Your Honor has any questions,

18   I'm done with my argument.

19           THE COURT:  Well, thank you.  And you've covered it

20   very ably and helpfully.

21           Mr. Tsekerides, I'm looking at my -- I'm looking at

22   your reply brief.  I will have Lehman Brothers to the list of

23   cases you didn't mention.  So --

24           MR. TSEKERIDES:  And I will say, Your Honor, the

25   Lehman Brothers case is a 365(e) case.  And I'll address the

PG&E Corporation and Pacific Gas and Electric Company

1   point that Mr. McDonald made why the safe harbor argument he

2   just made is irrelevant here.  And --

3          THE COURT:  Okay.

4          MR. TSEKERIDES:  There's a framework in the code.  And

5   365(e) and the 556 and the 560 that go with it all relate to

6   liquidation, termination, or acceleration of the contract at

7   issue.  365(e) is a separate provision from 365(b).  And in

8   fact, the two safe harbor provisions in the code, 556 and 560,

9   expressly reference 365(3).  They don't say anything about

10  365(b) and for good reason, because when you're talking about

11  the safe harbor provision, what's that all about?  If somebody

12  files and it's a forward contract, they can get out of it.

13  That's what the code allows.  365(b) is talking about executory

14  contracts.

15          And two points.  They didn't address the fact that, if

16  you don't do anything on this forward contract, it essentially

17  becomes just like any other executory contract.  And you heard

18  from Mr. McDonald they did nothing at all for seventeen months.

19  So the first point is, it's very nice that they think now when

20  they were trying to come up with an argument to avoid denial of

21  their claim that they thought of Safe Harbor, but it's too

22  late.

23          And number 2, even if you want to talk about Safe

24  Harbor, that deals with 365(e).  We're not arguing about that.

25  We're arguing about in the context of when I assume a contract,

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    if you're claiming damages because I file for bankruptcy, you

2    don't get those.  And the Lehman case doesn't talk about

3    365(b).  So the safe harbor argument just does not work here.

4    And I think they put a lot into that.  And so whatever the act

5    said before, congress passed the statute that became the

6    Bankruptcy Code.  And 365(b) specifically talks about executory

7    contracts when they're defaults.  And then 365(b)(2) says you

8    don't have to cure it.  And even some of the cases we cited --

9    you know, and there's a list of them -- but one in particular,

10   that convenience case, they said it's not even a default.

11          Now, we're not necessarily going that far.  But I

12   think it shows you that some cases say you can't even rely on

13   that as a default.  But even putting that aside, if the default

14   is I filed for bankruptcy, 365(b)(2) can't be more clear.  You

15   don't get damages for that.  And you're not saved by that if

16   it's a forward contract.

17          THE COURT:  I mean, a court that said it's not a

18   default, again, it's meaningless if it's just -- those are just

19   words if there's nothing that follows from it, right?

20          MR. TSEKERIDES:  Well, a court -- no.  But I think --

21   a court is saying -- look, most of the courts that deal with

22   this say it's not the type of default.  It's the type of

23   default that you're cured --

24          THE COURT:  Right.

25          MR. TSEKERIDES:  Let me start again.  That you're

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    excused from curing.  So a court saying that it's not a default

2    is essentially saying the same thing because it's acting as if

3    there was no default in the first place.

4         THE COURT:  Well --

5         MR. TSEKERIDES:  I think --

6         THE COURT:  I know.  I know.  But it sounds like

7    (indiscernible) because it sounds to me like there are no

8    consequences other than the fact that you filed.  You filed,

9    therefore you filed, period.

10        MR. TSEKERIDES:  Right.

11        THE COURT:  It's not on anything.

12        MR. TSEKERIDES:  Well, it's not on anything.  But I

13   think if you tie those two together, courts that say it's not a

14   default at all and courts that say -- in the cases we cited,

15   people were trying to recover fees and attorneys' fees and

16   defaults just like ConEd is here.  And the court said, no,

17   because those are all to the fact that you filed for

18   bankruptcy.

19        So if you look at it, and I think the code speaks more

20   in terms of you don't have to cure that default -- but I'll go

21   back -- and again, I apologize for sounding like a broken

22   record.  But it has -- 365(b)(2) would have no meaning if you

23   could say you're excused from your default of filing for

24   bankruptcy but pay up anyway.  And there's really nothing more

25   I think that I could add to that point, Your Honor.  We're

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    talking about assuming executory contracts.  And that's what

2    365(b)(2) speaks to.

3            THE COURT:  Okay.  Well, again, gentlemen, you put in

4    a lot of time.  And these are long briefs.  And it'd be nice

5    to -- I'd like to say, okay, I got it.  First of all, I

6    apologize for the connection.  It looks like it's gotten

7    settled down now.

8            Secondly, I will -- as I said earlier, I'm not going

9    to make a ruling on the question about the testimony because if

10   I -- if I make a ruling on the underlying law, they -- that'll

11   dispose of it.  And if I somehow believe that it makes a

12   difference particularly with Mr. Linde, I'll deal with it

13   separately.

14           But I'm going to take the matter under advisement,

15   that'll come as no surprise, just because I want to reflect on

16   what you said and what your brief said and specifically Mr.

17   McDonald's explanation on the forward contracts.  I found

18   the -- and I must say because I read the briefs, I found that

19   556, 560, and 365(e) all seem to be an interesting bundle of

20   rights that didn't have any bearing on what we're dealing with

21   today.  But Mr. McDonald, I'm going to give you the benefit of

22   thinking about that a little bit further.

23           So unless either of you want to add anything further,

24   I'm just going to thank you and take the matter under

25   advisement.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        MR. TSEKERIDES:  Okay.  Thank you, Your Honor.

2        THE COURT:  All right.

3        MR. MCDONALD:  Thank you.

4        THE COURT:  Okay.  Thank you both for your time and

5   work.  I appreciate the effort.  We'll conclude the hearing.

6   Thank you.

7        MR. MCDONALD:  Thank you.

8    (Whereupon these proceedings were concluded)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T I O N

2

3    I, Michael Drake, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ MICHAEL DRAKE, CER-513, CET-513

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  August 11, 2021

16

17

18

19

20

21

22

23

24

25

eScribers
(973)406-2250 | operations@escribers.net | www.escribers.net

## A

**ability (1)**
29:18
**able (5)**
23:2;25:17;31:16;
35:12,20
**ably (1)**
37:20
**absolutely (1)**
33:12
**abstract (1)**
5:21
**accelerate (1)**
31:10
**acceleration (3)**
30:8;33:9;38:6
**accepted (1)**
27:2
**accordance (1)**
30:24
**according (1)**
30:16
**account (4)**
8:23,23;10:14;17:2
**accrued (1)**
12:1
**accruing (3)**
12:10;13:3,18
**acknowledge (1)**
8:20
**acknowledged (1)**
7:24
**across (1)**
36:23
**act (10)**
9:19;23:14,18,19,20,
22,24;26:16;31:12;
39:4
**acting (1)**
40:2
**action (2)**
27:17;33:24
**active (1)**
32:20
**actually (5)**
18:14;22:24;23:19;
25:1;29:20
**add (3)**
17:9;40:25;41:23
**added (1)**
36:7
**addition (1)**
21:13
**address (3)**
11:13;24:20,22;
37:25;38:15
**addressing (1)**
27:4
**admission (1)**
20:11
**admittedly (1)**

7:11
**advisement (3)**
21:2;41:14,25
**affiliates (2)**
22:8,11
**again (17)**
6:1;9:15;11:19;13:6;
15:2;18:8,20,21,23;
19:4;20:21;24:12;
30:17;39:18,25;40:21;
41:3
**against (1)**
27:17
**ago (2)**
7:11,21
**agree (2)**
11:1;35:19
**agreed (2)**
23:1,4
**agreement (13)**
4:15,20,22,23;5:10;
6:11,18;22:22;23:15,
16;29:12,17;30:12
**agreements (17)**
4:13,16;5:6;6:13;
7:15;8:22;10:5;11:9;
13:2;14:17;22:12;
23:12,15;25:19;29:10;
34:14,22
**agreement's (1)**
8:16
**ahead (5)**
17:18;19:11,14;20:4;
28:10
**alleged (1)**
6:21
**allow (2)**
13:25;33:5
**allows (1)**
38:13
**almost (2)**
5:21;13:21
**Although (1)**
6:11
**amended (3)**
13:10;22:25;30:16
**America (1)**
34:6
**amounts (10)**
12:10,12,15,22;
13:17,22;14:1,8;23:2;
35:20
**and/or (1)**
27:6
**apologize (3)**
28:9;40:21;41:6
**apparently (1)**
13:3
**appeal (1)**
9:22
**appearance (1)**
3:7
**appellate (1)**

9:23
**applicable (5)**
7:1;16:24;18:15,15;
35:22
**application (4)**
23:4;32:16;33:6,18
**applied (2)**
12:11;30:11
**apply (8)**
5:18;14:5;16:22;
27:16;28:24,24;29:1;
31:10
**appreciate (5)**
15:24;21:9;22:4;
37:15;42:5
**appropriate (1)**
20:19
**argue (4)**
8:13,14;10:17;27:15
**argues (1)**
10:2
**arguing (6)**
6:25;8:25;14:11;
36:24;38:24,25
**argument (18)**
5:2;8:11;10:10,12;
15:5,22;16:20;18:9;
20:6,19;26:5,12;29:22;
36:1;37:18;38:1,20;
39:3
**arguments (2)**
5:5;14:3
**arises (1)**
15:11
**arose (6)**
6:20;7:7;10:14;11:7;
12:14;18:21
**around (3)**
14:9;29:2;37:10
**arrangements (1)**
5:4
**aside (1)**
39:13
**aspect (1)**
23:12
**assign (1)**
25:6
**assist (1)**
25:8
**assume (5)**
17:10;25:6,13;27:5;
38:25
**assumed (1)**
30:25
**assuming (3)**
26:16;27:8;41:1
**assumption (2)**
24:3,12
**attached (2)**
4:17;8:19
**attempt (1)**
30:7
**attempted (1)**

22:24
**attest (1)**
21:13
**attorneys' (5)**
4:6;36:11,18,24;
40:15
**audio (7)**
5:11;11:25;13:8;
26:1;28:3,22;36:9
**AUGUST (1)**
3:1
**automatic (3)**
12:11;14:5;32:4
**automatically (2)**
6:19;25:3
**avoid (1)**
38:20
**awards (1)**
30:23
**away (1)**
31:3

## B

**b1 (2)**
28:20,21
**b2 (2)**
28:18,23
**back (8)**
10:19,21;11:9;15:1;
18:18;31:5;33:21;
40:21
**background (3)**
21:19;22:2,6
**bad (1)**
22:2
**balance (2)**
17:17;18:25
**bankruptcy (71)**
5:8;6:12;7:2,7,9;
8:24;9:2;10:14;11:8;
12:11,14,15,17,20,21;
13:1,1,4,16,23;14:14;
15:11,15,16;16:13,19;
17:2,3,4,7,9,12;18:17,
24;23:17,18;24:1,6,8,9,
11,16,19,23,24;25:5,
10,25;26:1,5,10,11,13,
25;27:6;29:6;31:2,11,
13,17;32:18,19,24;
33:1;34:3;35:18;39:1,
6,14;40:18,24
**bargain (2)**
25:16,18
**based (1)**
5:7
**basically (1)**
18:9
**bearing (1)**
41:20
**became (2)**
32:9;39:5
**becomes (1)**

38:17
**beforehand (2)**
13:22;16:9
**beginning (3)**
23:20;33:24;37:8
**behalf (1)**
3:14
**believes (1)**
21:6
**bell (2)**
24:17;26:18
**below (1)**
35:21
**benefit (4)**
25:16,18;32:6;41:21
**benefits (1)**
27:14
**better (2)**
11:2;19:10
**beyond (3)**
10:18;26:5;29:9
**binder (2)**
4:18;9:14
**binding (1)**
7:11
**bit (5)**
3:17;4:9;19:25;
21:18;41:22
**board (1)**
36:24
**boiler-plate (1)**
6:12
**born (1)**
9:20
**both (7)**
8:10;16:4;20:9,10;
27:7;29:15;42:4
**breach (4)**
5:7;28:25;29:4;
31:14
**breached (2)**
6:18;7:7
**breaches (2)**
6:19;14:17
**breadth (1)**
30:22
**brief (6)**
5:17;7:21;15:9;
30:19;37:22;41:16
**briefs (4)**
21:23,24;41:4,18
**bring (1)**
21:3
**Bringing (1)**
3:5
**broad (2)**
30:14;33:5
**broke (1)**
26:7
**broken (2)**
15:12;40:21
**Brothers (3)**
30:4;37:22,25

**bundle (1)**
41:19
**business (1)**
20:21
**buyer (1)**
7:14
**buying (1)**
20:21
**buzz (1)**
36:23

## C

**calculate (2)**
31:10;33:14
**calculated (1)**
30:11
**calculation (2)**
32:16;33:5
**calculations (1)**
30:23
**CALIFORNIA (2)**
3:1;29:16
**Call (3)**
3:3;13:21;36:12
**Calling (1)**
3:4
**came (1)**
28:14
**can (27)**
5:3,15,17,20;6:10,
11;11:12;15:9;19:10,
17,18,19,23;20:1;22:1;
23:7;25:25;26:12;27:1,
20,22;28:1,2,3,7,7;
38:12
**care (1)**
4:5
**career (1)**
23:20
**careful (1)**
9:15
**case (27)**
4:9;6:3,3,22,23;7:10,
25;8:23;9:22;10:18,23;
15:25;17:5;23:20;29:6,
13,14;30:1,3,6;32:15,
17;33:25;37:25,25;
39:2,10
**cases (7)**
15:14;16:9;23:23;
37:23;39:8,12;40:14
**categories (1)**
35:4
**caused (1)**
7:3
**CED (2)**
4:22;6:13
**certain (6)**
12:22;13:24;16:25;
31:8;33:3;36:7
**certainly (4)**
8:22;14:6;16:4;18:2

**chargeable (1)**
35:23
**charging (1)**
35:17
**chief (1)**
20:7
**choppy (2)**
20:1;28:3
**chose (1)**
26:25
**Circuit (6)**
29:14;30:1,5,6;
32:18;33:9
**circumstances (1)**
16:25
**cite (1)**
29:13
**cited (5)**
15:13;16:21,23;39:8;
40:14
**cites (1)**
29:22
**claim (15)**
11:6,7;12:3;18:9,9,
16,17;22:17,23,25;
23:5;25:17;34:2;36:7;
38:21
**claimant (1)**
24:13
**claiming (9)**
6:16;7:5;12:13,25;
13:1;14:10;16:12;37:6;
39:1
**claims (8)**
18:14;22:19;23:2;
34:1;35:7,8;36:25;
37:12
**clause (5)**
5:7;6:12;9:6;10:17;
11:3
**clauses (5)**
8:3;16:24;23:5;25:2,
10
**clean (1)**
16:20
**clear (8)**
12:13;16:20,20;
29:13,13,15;37:9;
39:14
**clearly (1)**
30:19
**CLERK (1)**
3:4
**client (1)**
32:5
**client's (1)**
36:3
**coda (1)**
16:15
**code (14)**
12:18;13:23;16:20;
18:17;24:8,9,23;27:11;
31:2;38:4,8,13;39:6;

40:19
**collateral (3)**
31:10;32:17;33:6
**collected (1)**
34:21
**colloquy (2)**
17:23;18:3
**commencement (1)**
29:6
**communicated (1)**
35:7
**company (1)**
24:1
**complete (3)**
7:16,18;9:23
**completely (2)**
10:11;14:10
**component (2)**
3:24;12:2
**conclude (1)**
42:5
**concluded (1)**
42:8
**condition (1)**
27:7
**ConEd (8)**
6:19;18:5;20:8,23;
31:21;32:9;35:16;
40:16
**ConEdison (4)**
21:19;22:7;35:20;
37:13
**ConEd's (1)**
10:6
**conference (1)**
23:3
**confidential (1)**
16:17
**confirm (1)**
23:2
**confirmation (5)**
22:18,21;35:1,15,23
**confusion (2)**
6:15;18:21
**congress (13)**
16:23;24:16,17,22;
25:2,23;26:10,12;27:2,
3,10;31:7;39:5
**connection (5)**
3:17;11:25;27:24;
28:9;41:6
**consent (4)**
4:12,20;36:14,15
**consequence (1)**
26:2,4
**consequences (4)**
25:22;26:9,14;40:8
**consequential (3)**
10:11,13;11:5
**consider (1)**
23:9
**considered (3)**
16:17;21:7;30:6

**Consolidated (5)**
3:9;19:7;21:19;22:8;
36:12
**content (1)**
29:20
**context (2)**
20:19;38:25
**continued (1)**
32:6
**contract (36)**
7:6,7,8;20:10;22:
15:2;17:9;18:22;24:2,
3,11;25:3,4,7,8,14,15;
26:16,22;27:1,5,8,14;
29:5,12;30:20,21;
31:15;32:7;33:12,14;
38:6,12,16,17,25;39:16
**contracts (16)**
6:21;7:3,4,5;13:3;
14:3;21:14;25:13;
26:24;27:1;31:9;33:15;
38:14;39:7;41:1,17
**contractual (5)**
21:12;24:6;25:4;
31:18;33:11
**contrary (1)**
5:5
**convenience (1)**
39:10
**cooperation (1)**
35:11
**Copple (7)**
6:2,22;7:10,25;
15:25;16:4,7
**Corporation (1)**
3:4
**corresponding (1)**
27:4
**counterparties (4)**
8:18;22:12;31:8,9
**counterparty (6)**
24:1;27:7,17;31:11;
32:13;33:13
**counterpoint (1)**
33:11
**couple (5)**
3:21;4:12;9:10;14:8;
33:20
**course (1)**
3:21
**Court (115)**
3:3,6,11,16,20,23;
4:2,8,18;5:9,13,24;6:1,
8;7:10,19,23;8:1,6,8;
9:4,7,10,13,19,23;10:1;
11:11,16,18,21,24;
12:6;13:5,8,15,19;
14:15,18,21,24;15:1,8,
21,23,25;16:3,10;
17:15,22,25;19:2,6,9,
14,18,21,23;20:2,4;
21:1,15,21,23;22:1,10,
15,22,24;23:4,22;

**courts (5)**
25:11,14;39:21;
40:13,14
**coverage (1)**
30:12
**covered (1)**
37:19
**created (1)**
31:17
**creating (1)**
14:16
**credits (1)**
34:12
**criticism (1)**
6:2
**cross (1)**
5:22
**cross-default (6)**
5:16,18;6:9,25;7:1;
21:11
**cross-defaults (2)**
6:16;18:20
**cumulative (1)**
34:11
**cure (18)**
4:19,20;12:6;13:10,
21;14:6,24;18:7,10;
22:17,19,23;29:7,10;
35:3,7;39:8;40:20
**cured (4)**
24:12,14;28:16;
39:23
**curing (5)**
15:15,16,17;17:3;
40:1
**currently (1)**
22:12

## D

**damage (1)**
30:23
**damages (24)**
6:20;7:6;10:3,7,11,
21,23;12:13;15:17;
17:1,4,10;18:17,24;
24:21;30:10;31:1,10;
32:16;33:6,14;36:10;
39:1,15
**date (2)**
34:1;37:12
**day (8)**
5:1;7:6;8:17;9:1;
11:1;12:17,24;18:23

Case: 19-30088   Doc# 11053   Filed: 08/11/21   Entered: 08/11/21 10:41:24   Page 45
of 52

**days (1)**
12:1
**deal (4)**
8:2;21:7;39:21;
41:12
**dealing (2)**
36:21;41:20
**deals (2)**
10:24;38:24
**debt (3)**
13:12,13;14:19
**debtor (7)**
17:2;26:24,25;29:6,
7;31:11,22
**debtors (1)**
3:15
**debtor's (1)**
25:9
**decided (1)**
26:1
**decision (8)**
5:15,21;6:10;29:22,
25;30:5,24;31:20
**declaration (3)**
20:7,11;21:10
**declarations (2)**
20:6;21:5
**deemed (1)**
24:13
**default (46)**
4:7,21;6:21;7:3,4;
9:17;12:7;13:2;16:7,
13;18:10;23:7,7,17;
24:11,14,16,19,21;
26:17;27:6,9,9,10,12;
28:24,25;29:5;31:13;
32:22;33:23;34:8;
35:22;36:16,18;39:10,
13,13,18,22,23;40:1,3,
14,20,23
**defaults (9)**
16:5,6,7,9;27:13;
33:24;34:10;39:7;
40:16
**defense (1)**
31:25
**delivered (1)**
12:20
**demand (10)**
4:3,12,17,19,20;7:2;
13:10;14:6;22:17,23
**denial (1)**
38:20
**depositions (1)**
31:10
**designed (1)**
24:10
**developed (1)**
21:20
**Development (4)**
3:10;19:8;20:8;22:8
**difference (3)**
29:11;31:14;41:12

**different (5)**
14:10;15:3;16:25;
22:9;35:4
**direct (7)**
10:3,4,7,12,23;11:5;
24:21
**direct/indirect (1)**
10:10
**disagreed (2)**
32:18;33:10
**discovery (1)**
10:20
**discussed (1)**
35:7
**discussion (1)**
15:10
**dismissive (1)**
5:19
**dispose (1)**
41:11
**dispute (2)**
13:14,17
**Distributers (1)**
29:14
**distribution (1)**
30:16
**Distributors (1)**
29:19
**Dixon (2)**
20:7;21:13
**dollars (6)**
9:2;12:25;16:13;
17:10,13;37:6
**done (4)**
14:5,9;23:23;37:18
**down (2)**
36:4;41:7
**due (2)**
12:2,10
**duh (1)**
9:23
**during (4)**
12:19,20,20;33:16

**E**

**earlier (3)**
17:21;31:5;41:8
**early (1)**
33:25
**ease (1)**
22:13
**easier (1)**
37:3
**Edison (5)**
3:10;19:7;21:20;
22:8;29:16
**effective (1)**
14:1
**effort (1)**
42:5
**efforts (1)**
25:6

17:3
**executed (1)**
32:4
**executory (7)**
25:12;26:22,24;
38:13,17;39:6;41:1
**exercise (5)**
31:16,18,19;33:11,
14
**Exhibit (2)**
9:14,16
**exhibits (1)**
8:20
**exist (1)**
17:5
**existence (2)**
31:12;33:16
**expert (2)**
20:9,18
**explanation (1)**
41:17
**explicitly (1)**
33:9
**exposure (1)**
36:3
**expressly (1)**
38:9
**extended (1)**
22:20
**extent (2)**
5:2,6

**F**

**F3d (2)**
30:1,17
**fact (21)**
5:4;7:20,21;9:21;
10:13,24;24:18,18;
26:11;28:12;31:1,21;
32:5;35:8;36:2,2,4;
38:8,15;40:8,17
**facto (20)**
5:7;7:9;8:3;9:5;
10:10,17;11:3;16:24;
17:12;20:19;21:18;
23:5,7,10,14,23;25:10;
31:3,12;33:18
**factor (1)**
23:25
**facts (3)**
13:6;20:24;37:10
**factual (1)**
20:16
**fairness (2)**
7:17;18:21
**fall (1)**
18:18
**fan (1)**
17:8
**far (1)**
39:11
**favor (1)**

8:17
**February (1)**
12:16
**fees (10)**
4:6,6;35:14;36:11,
16,19,25,25;40:15,15
**felt (1)**
21:12
**FERC (1)**
7:22
**few (1)**
18:4
**figure (1)**
36:12
**file (7)**
17:9,12;18:16;25:25;
26:13;34:1;39:1
**filed (30)**
5:8;7:2,9,21;9:2;
11:7;12:11,14,14,17,
25;13:4,10;14:6,14;
16:13,18;20:6;24:1,22;
26:11;32:25;33:1;34:2,
3;39:14;40:8,8,9,17
**files (2)**
23:17;38:12
**filing (17)**
7:7;8:24;10:14;13:1;
15:11;17:2;18:24;24:7,
11,14,15,24;26:5;
27:16;32:23;35:11;
40:23
**finally (1)**
18:13
**finance (5)**
8:16;11:7,9;13:2;
14:17
**financed (1)**
34:15
**financer (1)**
9:17
**financial (3)**
12:7;27:6;31:8
**financing (9)**
4:14,16,22;5:6,10;
6:11;8:22;10:5;34:15
**fine (1)**
28:3
**first (10)**
3:21,23;20:14;23:10;
26:8;33:18;35:6;38:19;
40:3;41:5
**five (2)**
4:19;15:14
**fix (1)**
27:23
**fixed (1)**
28:10
**flip (1)**
30:6
**flow (2)**
15:17;24:21
**flows (1)**

**either (3)**
9:20;18:19;41:23
**eliminated (1)**
36:8
**else (5)**
6:18,19,22;7:8;37:16
**enable (1)**
31:18
**enabled (2)**
22:18;31:9
**end (10)**
5:1;7:5;8:9,17;9:1;
11:1;12:17,24;18:23;
26:2
**energy (3)**
22:19;29:13;34:12
**enjoyed (1)**
32:6
**enough (2)**
30:14;33:5
**ensue (1)**
34:10
**ensure (1)**
25:14
**entities (4)**
22:11;32:25;33:1,7
**entitled (6)**
9:1;16:12;30:24;
33:12;37:4,5
**essentially (3)**
17:13;38:16;40:2
**estate (6)**
26:16;27:5,8,13,18;
33:16
**even (13)**
11:12;18:6,10;23:16;
25:25;26:23;29:10;
32:9;38:23;39:8,10,12,
13
**event (2)**
16:13;25:5
**Everybody (1)**
7:16
**evidentiary (1)**
20:12
**exact (1)**
12:8
**Exactly (2)**
9:4;10:5
**example (3)**
6:1,8;32:5
**examples (1)**
4:12
**exception (1)**
17:1
**exceptions (2)**
16:25;28:16
**excuse (2)**
17:4;30:25
**excused (6)**
15:16,16;17:6;24:16;
40:1,23
**excuses (1)**

Case: 19-30088    Doc# 11053    Filed: 08/11/21    Entered: 08/11/21 10:41:24    Page 46
of 52

17:7
**flurry (1)**
  32:24
**focus (2)**
  11:2;23:4
**focusing (4)**
  8:12,14,16;28:12
**following (3)**
  22:17,25;24:11
**follows (3)**
  26:5;9;39:19
**footnote (1)**
  30:2
**forfeiting (1)**
  26:23
**forth (1)**
  30:19
**forward (11)**
  13:24;14:3;29:12;
  30:19,20;32:4;33:13;
  38:12,16;39:16;41:17
**found (3)**
  29:20;41:17,18
**four (1)**
  23:9
**Fourth (1)**
  29:14
**framework (1)**
  38:4
**FRANCISCO (1)**
  3:1
**Frank (1)**
  20:8
**Frankensteining (1)**
  15:22
**frankly (1)**
  8:4
**freeze (1)**
  3:18
**freezing (2)**
  19:23,25
**frequently (1)**
  25:5
**front (1)**
  4:25
**froze (1)**
  11:25
**frozen (1)**
  27:20
**frustrate (1)**
  24:5
**frustrating (1)**
  27:25
**full (4)**
  25:16,17;27:9;34:3
**further (4)**
  18:6;27:19;41:22,23

**G**

**Gas (3)**
  29:14,19,19
**gave (2)**

9:14;17:15
**generally (2)**
  20:1;23:14
**gentlemen (2)**
  21:4;41:3
**given (2)**
  21:10;29:18
**gives (1)**
  25:15
**giving (1)**
  8:10
**goes (2)**
  29:9;31:5
**Good (6)**
  3:6,8,12,13;8:10;
  38:10
**Gotshal (1)**
  3:14
**grant (2)**
  28:13,13
**groups (1)**
  35:19
**guess (8)**
  5:3;6:11;10:3;12:4;
  18:25;32:8,8;36:22

**H**

**habit (1)**
  22:2
**hampers (1)**
  25:5
**hand (1)**
  22:20
**happen (1)**
  10:19
**happened (1)**
  34:11
**happening (2)**
  27:25;28:8
**happy (1)**
  8:14
**harbor (18)**
  29:22;30:9,12,12,14,
  22;31:15;32:14,15;
  33:4,5,12;38:1,8,11,21,
  24;39:3
**harbors (5)**
  29:21,24;31:7,17;
  33:17
**hard (1)**
  6:23
**headline (1)**
  34:5
**headset (2)**
  19:10,18
**headsets (1)**
  19:15
**heads-up (1)**
  3:16
**hear (3)**
  19:10,17,19,23;20:1;
  27:20;28:1,2,3,4,7

**heard (2)**
  23:6;38:17
**hearing (2)**
  20:10;42:5
**hearings (1)**
  22:3
**help (1)**
  18:19
**helpfully (1)**
  37:20
**here's (1)**
  5:13
**highly (1)**
  16:17
**history (4)**
  23:11;28:13,13;29:1
**hits (1)**
  25:2
**hold (2)**
  19:10;25:21
**Honor (67)**
  3:8,13;4:1,25;5:12,
  23;6:14;7:17;11:22;
  16:2;17:17:8,24;19:13,
  17,19;20:5,13;21:9,17,
  18;22:4,5,7,16,16,20,
  20;23:6,9,14,19;24:15,
  21,25;25:17,19,24;
  26:3,7,15;27:3,15,20,
  21;28:18;29:4,9,25;
  30:5;31:2,4,23;32:11,
  15;33:20,25;34:20;
  35:1,11;37:7,8,10,17,
  24;40:25;42:1
**honored (2)**
  6:9,9
**Honor's (1)**
  31:5
**host (1)**
  14:16
**Hugh (2)**
  3:8;19:4
**hypothetical (1)**
  17:8

**I**

**impact (1)**
  31:3
**important (2)**
  25:1;31:4
**imposed (1)**
  25:7
**inability (1)**
  27:5
**include (1)**
  30:14
**includes (1)**
  4:22
**including (3)**
  12:19;23:22;35:2
**inclusive (1)**
  15:19

**incurable (4)**
  26:17;27:6,10,12
**incurred (1)**
  36:19
**indemnity (4)**
  15:3,4,10;35:9
**indirect (1)**
  10:7
**Indiscernible (9)**
  6:5,7;21:22;23:12,
  13;32:22;33:23;37:12;
  40:7
**informed (1)**
  5:15
**initial (2)**
  22:17,23
**insolvency (1)**
  28:25
**instance (3)**
  24:15;29:15;33:18
**integrated (1)**
  7:12
**intended (2)**
  16:24;31:5
**intent (1)**
  33:17
**interconnection (1)**
  34:14
**interest (7)**
  3:24;4:7;23:1;35:22;
  36:8,16,18
**interesting (1)**
  41:19
**interference (6)**
  5:11;11:25;13:8;
  26:1;28:22;36:9
**interpretation (1)**
  29:24
**interrelated (2)**
  21:14;25:20
**interrelationship (1)**
  23:11
**into (11)**
  6:2;16:16;20:5;21:4,
  17;24:9,23;32:24;33:1;
  37:13;39:4
**introduced (2)**
  24:8,9
**introducing (1)**
  27:11
**invoke (1)**
  31:24
**invoked (1)**
  10:3
**ipso (21)**
  5:7;7:9;8:3;9:5;
  10:10,16;11:3;16:24;
  17:12;20:19;21:17;
  23:4,7,10,14,23,25;
  25:10;31:3,12;33:18
**irrelevant (2)**
  11:5;15:5;38:2
**isolate (1)**

5:14
**issue (17)**
  3:25,25;4:1,2,6;5:14;
  20:24;21:11;23:12;
  24:25;25:19;30:9,18;
  32:17;35:17;37:1;38:7
**issues (3)**
  6:25;10:24;21:18
**item (1)**
  36:9
**items (1)**
  4:19

**J**

**James (1)**
  20:7
**January (2)**
  12:1;14:11
**Judge (4)**
  29:23,23;30:13;33:8

**K**

**keep (1)**
  35:17
**kid (1)**
  10:4
**kind (3)**
  5:14,17;32:2
**knew (1)**
  20:22
**knowing (2)**
  5:16;6:10
**knowledge (2)**
  20:16,22
**knows (2)**
  7:16;31:2

**L**

**landlord (1)**
  7:14
**last-minute (1)**
  3:17
**late (1)**
  38:22
**lately (1)**
  13:12
**later (4)**
  11:13;14:7;30:1;
  34:17
**law (9)**
  10:23;16:20;17:11;
  18:15,16;23:8,17;25:3;
  41:10
**lawyers (1)**
  8:10
**lease (5)**
  25:3,5,8,14,15
**leases (1)**
  25:13
**least (5)**

12:7;13:11,12;15:14;
21:6
**led (2)**
7:8;13:2
**legal (2)**
11:2;37:2
**legislative (2)**
23:11;24:25
**Lehman (14)**
30:4,5,24;31:20,23;
32:15,17,23,24,25;
33:7;37:22,25;39:2
**Lehman's (1)**
30:15
**lenders (3)**
34:4;35:5,16
**less (1)**
36:3
**letter (2)**
8:18;16:15
**liability (1)**
36:5
**Lillaburg (2)**
15:25;16:2
**limitation (1)**
26:3
**limitations (1)**
25:7
**limited (1)**
33:17
**Linde (6)**
20:8,14,24;21:10,13;
41:12
**line (1)**
10:23
**liquidated (2)**
17:10;36:10
**liquidation (2)**
25:9;38:6
**list (2)**
37:22;39:9
**literally (1)**
26:17
**litigate (1)**
35:16
**little (9)**
3:17;4:9;15:4;19:25;
20:1;21:18;27:18;28:2;
41:22
**loan (1)**
23:16
**long (2)**
7:11;41:4
**longer (1)**
3:25
**long-term (1)**
29:19
**look (6)**
8:25;27:22;29:10;
30:18;39:21;40:19
**looking (2)**
13:9;23:8;37:21,21
**looks (1)**

41:6
**lose (2)**
10:16;24:5
**loser (1)**
37:3
**lost (1)**
11:22
**lot (5)**
8:9,10,10;39:4;41:4

## M

**makes (2)**
18:11;41:11
**making (4)**
4:24;5:21;16:14;
36:1
**materials (1)**
4:11
**matter (7)**
3:4;7:5;10:13;11:4;
20:16;41:14,24
**maximum (1)**
37:5
**may (6)**
8:8,8;20:20,20;25:6,
8
**maybe (3)**
4:14;11:24;18:20
**McDonald (69)**
3:5,6,8,9;5:10,12;
6:5,7;8:14;10:2;11:14;
13:10;19:2,4,4,7,14,17,
19,22,25;20:3,5;21:3,9,
17,22,23,25;22:4,11,
16;23:24;25:21,24;
26:3,7,15,20;27:3;28:1,
2,6,17,20;29:3,9;30:4;
31:23;32:11,14,22;
33:20;34:8,18,25;35:6;
36:14,16,18,21,22;
37:7,17;38:1,18;41:21;
42:3,7
**McDonald's (2)**
4:14;41:17
**mean (42)**
5:17,20,24;8:3;10:4;
11:16;12:9,12;14:2;
15:13,19,20;16:11,16,
19;17:5,20,21,23;18:2,
3,11;19:3;22:7;26:4,
11,14,22;28:12,15,21,
22,23;29:1;30:22;
31:22;32:8;35:3;36:2,
6;37:2;39:17
**meaning (1)**
40:22
**meaningless (1)**
39:18
**means (3)**
15:15;23:14;36:4
**meant (1)**
23:25

**mediation (1)**
22:25
**mention (2)**
6:2;37:23
**merits (2)**
21:2,8
**mic (1)**
3:7
**might (3)**
6:14;10:24;36:7
**million (7)**
9:2;12:25;16:12;
17:10,13;36:4;37:6
**minor (1)**
18:4
**minute (2)**
8:11;9:10
**minutes (4)**
17:16;19:1,3,3
**mistaken (1)**
16:3
**mix-up (1)**
28:10
**modification (1)**
24:10
**moment (5)**
11:21,25;12:7;13:15;
37:5
**money (3)**
8:9;18:17;35:24
**months (2)**
14:7;38:18
**more (9)**
5:24;9:11;17:15;
29:23;36:3,5;39:14;
40:19,24
**morning (4)**
3:6,8,12,13
**most (2)**
23:15;39:21
**motion (5)**
12:21;13:24;21:3;
34:19,20
**moving (1)**
30:19
**much (5)**
7:15,24;15:10;19:3;
25:20
**must (1)**
41:18
**mute (1)**
3:7
**myself (1)**
9:21

## N

**name (2)**
6:3;30:3
**National (2)**
29:14,19
**nature (2)**
20:9;21:14

**necessarily (1)**
39:11
**need (6)**
5:3;8:14,15,16;21:3,
12
**negotiated (1)**
36:2
**negotiation (1)**
22:18
**negotiations (1)**
35:20
**network (3)**
34:13,20;35:10
**newspaper (1)**
34:5
**Next (1)**
34:16
**nice (2)**
38:19;41:4
**non (1)**
32:23
**nondebtor (1)**
25:12
**non-safe (1)**
31:15
**North (1)**
34:5
**noted (3)**
4:4;22:16;23:3
**notice (2)**
4:21;9:16
**notices (4)**
12:13;33:2;34:3,9
**notwithstanding (4)**
29:1;31:11,20;32:4
**November (3)**
12:22;13:25;34:19
**nullifies (1)**
26:10
**number (1)**
38:23
**NUR (1)**
36:25

## O

**object (2)**
20:25;24:3
**objected (1)**
20:13
**obligations (1)**
13:3
**obtain (1)**
33:15
**occur (1)**
23:7
**occurred (2)**
24:19;33:2
**off (1)**
36:23
**offered (2)**
20:9;29:23
**officer (1)**

20:8
**older (1)**
32:18
**Once (1)**
34:3
**one (13)**
3:23;5:24;7:16;8:18,
19;15:7;20:21,23,24;
21:6;22:21;29:15;39:9
**ones (1)**
36:10
**only (9)**
4:6;7:6;16:6;17:3;
24:22;26:10;30:20;
31:17;33:8
**oOo- (1)**
3:2
**open (1)**
12:22
**opening (2)**
5:17;7:21
**operates (2)**
13:9;31:3
**operating (2)**
4:13;20:8
**operative (1)**
32:9
**opinion (2)**
29:11;32:19
**opposite (1)**
32:21
**opposition (1)**
5:19
**order (6)**
3:3;8:17;22:18,21,
22;33:25
**ordinary (1)**
13:21
**original (1)**
4:20
**originally (3)**
4:2;26:15;35:6
**others (2)**
16:23;27:13
**otherwise (2)**
35:21,22
**ourselves (1)**
10:4
**out (6)**
15:11;18:10;22:24;
29:14;35:16;38:12
**outstanding (1)**
31:1
**overlook (1)**
24:18
**owe (2)**
17:10;35:24
**owed (4)**
12:15,16;14:1,8
**owing (3)**
13:12,12,22

Case: 19-30088    Doc# 11053    Filed: 08/11/21    Entered: 08/11/21 10:41:24    Page 48
of 52

## P

**page (1)**
30:1
**paid (12)**
12:21,23;13:20,23;
14:1,19,22;34:22,24;
35:15,15;37:1
**papers (2)**
4:5;16:14
**parenthetical (1)**
28:14
**part (6)**
12:4;13:20;20:11;
24:4;26:8;30:12
**particular (1)**
39:9
**particularly (1)**
41:12
**parties (1)**
34:15
**party (9)**
7:8;8:21,22;23:17;
25:4,12,16;30:23;
31:15
**passed (1)**
39:5
**paused (1)**
11:24
**pay (9)**
12:18,19,22;13:23,
25;23:1;35:4;36:12;
40:24
**payable (1)**
35:21
**paying (1)**
17:4
**payment (4)**
30:10,15;35:9;37:11
**payments (7)**
12:1;34:12,13,21;
35:1,14;37:14
**Peak (2)**
29:13,15
**Peck (2)**
29:23;33:8
**Peck's (1)**
30:13
**people (6)**
11:7;19:15;20:20;
24:5;34:1;40:15
**performance (2)**
25:15;32:6
**performed (1)**
12:19
**period (3)**
22:21;37:4;40:9
**permit (1)**
25:4
**person (1)**
20:23
**personal (2)**
20:16,22
**personally (1)**
3:18
**perspective (1)**
37:13
**petition (4)**
12:8;16:6,6;37:12
**PG&E (14)**
3:4;20:22;21:10;
22:12,19,22,25;29:22;
34:3,21;35:7,8,12;
36:23
**PG&E's (2)**
23:6;36:5
**ph (3)**
6:3;16:1;20:8
**PI (1)**
7:21
**picked (1)**
12:3
**piece (1)**
14:11
**Pillsbury (2)**
3:9;19:5
**Pittman (1)**
3:9
**place (2)**
31:7;40:3
**plain (2)**
29:2,3
**plan (1)**
14:1
**please (1)**
3:7
**point (27)**
3:23;5:24;6:15,20;
8:9,15,25;9:2,7;10:11;
11:2;12:24;14:4;15:18;
16:8;17:6;18:3,13;
23:18;25:2,22;31:5;
36:7;37:11;38:1,19;
40:25
**pointing (1)**
18:22
**points (5)**
18:4,6;21:16;33:20;
38:15
**portion (3)**
12:3;14:19;17:16
**position (2)**
23:6;33:23
**positions (2)**
33:3,4
**post-filing (1)**
33:6
**post-petition (6)**
3:24;23:1;29:17;
34:11;36:8,24
**potentially (2)**
24:2;27:8
**power (4)**
14:22;29:10,12,17
**PPAs (2)**

**practice (2)**
23:19,22
**precipitated (2)**
34:9,19
**precluded (1)**
18:15
**precludes (2)**
17:1;18:18
**predates (1)**
12:7
**predicate (1)**
12:12
**predicated (1)**
18:23
**pre-existing (1)**
16:5
**preliminary (2)**
9:13;13:10
**prepared (1)**
4:19
**preparing (1)**
22:2
**pre-petition (5)**
12:2;13:12,13,22;
14:8
**present (2)**
20:10;25:3
**preserve (2)**
26:25;27:1
**preserved (1)**
32:1
**presume (1)**
5:17
**pretend (2)**
7:15;26:12
**prevent (3)**
24:10;26:16;27:17
**prior (3)**
23:3,17,24
**priority (2)**
30:10,15
**probably (1)**
9:20
**problem (2)**
3:17;5:13
**proceedings (1)**
42:8
**produced (1)**
11:14
**programs (1)**
28:8
**prohibit (2)**
27:7,8
**prohibited (1)**
27:14
**prohibition (2)**
31:3,12
**project (1)**
22:11
**pronounce (1)**
6:23
**property (1)**

**27:18**
**proposed (1)**
25:11
**protect (2)**
30:23;31:8
**protected (1)**
25:2
**protects (1)**
26:24
**proves (1)**
16:8
**provided (1)**
14:22
**provides (3)**
29:4;32:14,15
**providing (1)**
20:15
**provision (4)**
6:12;15:2;18:14;
27:2;38:7,11
**provisions (23)**
5:16;6:9;15:3,3,5;
16:22;22:18;23:8,10,
11,16,24,25;24:9,20,
23;28:15;29:21;30:7,
16;33:18;35:9;38:8
**purchase (4)**
23:15;29:10,12,17
**purpose (1)**
23:10
**pursuant (2)**
30:11;34:22
**put (9)**
8:4;19:9,9,10;24:23;
31:7;37:12;39:4;41:3
**putting (1)**
39:13

## Q

**qualified (1)**
31:8
**quintessential (1)**
9:5
**quite (3)**
5:5;23:18;35:12
**quoted (1)**
24:25

## R

**raised (1)**
6:20
**rate (2)**
15:18;35:22
**rather (2)**
10:7;14:9
**reach (1)**
22:24
**read (5)**
15:9;21:21,23,24;
41:18
**reading (1)**

**18:12**
**realizing (1)**
27:14
**really (10)**
5:2,4;8:4;10:9;14:7;
15:10;20:18;32:2;
35:17;40:24
**reason (5)**
6:24;14:11,19;16:21;
38:10
**recall (3)**
7:13;10:25;12:21
**receive (6)**
34:3,12,13,16,17,25
**received (2)**
34:9;35:9
**record (10)**
4:15;5:11;8:19;9:24;
15:13;19:4;20:12;21:6;
37:9;40:22
**recover (1)**
40:15
**recoverable (1)**
10:22
**recovering (1)**
17:1
**recovery (1)**
33:15
**redacted (1)**
9:16
**reduced (2)**
23:2;35:20
**refer (2)**
22:7,13
**reference (5)**
7:1;13:11;18:4;
22:13;38:9
**referenced (1)**
6:22
**references (2)**
18:5;34:18
**referring (1)**
22:14
**reflect (1)**
41:15
**regard (1)**
33:8
**rehabilitation (2)**
25:6,9
**reimbursement (1)**
34:21
**reimbursements (2)**
34:14;35:10
**rejected (1)**
29:25;30:13
**relate (2)**
29:15;38:5
**relating (3)**
20:17;23:25;28:25
**relationship (3)**
20:17;21:19;37:10
**relationships (2)**
7:12;21:12

Case: 19-30088    Doc# 11053    Filed: 08/11/21    Entered: 08/11/21 10:41:24    Page 49
of 52

**relevancy (1)**
20:15
**relevant (7)**
5:2,6,20;6:23;11:6,
19;14:4
**relieved (1)**
29:6
**rely (1)**
39:12
**relying (2)**
5:4;32:8
**remainder (1)**
25:7
**remaining (1)**
36:10
**remedies (1)**
31:19
**remember (1)**
32:24
**renewable (1)**
34:12
**reorganization (1)**
24:4
**reorganizations (1)**
24:5
**reorganize (1)**
24:3
**reorganized (1)**
3:14
**repercussions (1)**
10:18
**replete (1)**
16:14
**reply (2)**
6:2;37:22
**report (1)**
20:18;34:4
**reported (1)**
30:1
**representation (1)**
4:24
**representative (2)**
4:20,22
**require (2)**
25:11;32:12
**required (2)**
34:4;37:13
**requirement (1)**
24:14
**requirements (1)**
30:20
**requires (1)**
23:21
**reserve (3)**
17:18,20;18:25
**resolution (1)**
22:24
**resolved (1)**
35:12
**respect (4)**
21:10;33:3,22;35:14
**respectfully (1)**
18:11

**response (2)**
20:7;29:21
**rest (1)**
8:5
**restrictive (1)**
29:23
**result (1)**
11:6
**reversing (1)**
32:3
**review (1)**
30:13
**right (27)**
3:6,20;4:4;7:14,17,
19,23;9:18;13:19;16:7;
19:6,13;22:10;24:17;
25:2;26:19;29:5;31:18,
18,24;33:11;34:7;35:5;
39:19,24;40:10;42:2
**rights (8)**
24:6;25:12;26:23;
31:16;32:1;33:13,14;
41:20
**rule (1)**
8:17
**ruling (5)**
9:22;21:1,7;41:9,10
**running (1)**
28:9

**S**

**safe (22)**
29:21,21,24;30:9,11,
12,14,22;31:7,17;
32:14,15;33:3,5,12,17;
38:1,8,11,21,23;39:3
**sailed (1)**
14:13
**same (3)**
32:25;36:5;40:2
**SAN (1)**
3:1
**save (1)**
19:1
**saved (1)**
39:15
**saying (14)**
4:21;5:19;6:17;8:21;
9:1;10:3;16:22;17:22;
24:17;27:1;32:3;39:21;
40:1,2
**scheme (1)**
30:10
**scope (2)**
29:24;31:6
**screen (1)**
21:4
**second (7)**
19:10;27:24;29:25;
30:5,6;32:18;33:9
**Secondly (1)**
41:8

**section (3)**
15:19;25:8,11
**sections (1)**
27:4
**seek (2)**
31:21;33:15
**seeking (1)**
25:17
**seem (3)**
3:16;18:18;41:19
**seems (2)**
5:20;32:2
**seller (2)**
7:13,13
**selling (1)**
20:21
**sense (2)**
15:14;18:11
**sensitive (1)**
25:12
**sentence (1)**
26:8
**separate (4)**
10:11;18:8;21:12;
38:7
**separately (2)**
4:5;41:13
**series (1)**
35:19
**served (1)**
33:2
**set (2)**
10:10;30:19
**setting (1)**
33:25
**settled (1)**
41:7
**seventeen (2)**
14:7;38:18
**several (2)**
22:21;24:9
**sewed (1)**
18:20
**Shaw (1)**
3:9
**shekels (1)**
14:8
**ship (1)**
14:13
**short (1)**
22:25
**show (2)**
16:22,23
**shows (2)**
33:17;39:12
**shut (1)**
9:10
**side (3)**
4:13,14;10:2
**sides (1)**
8:10
**signed (1)**
33:25

**significant (1)**
35:10
**simple (2)**
6:24;23:8
**simplistic (1)**
16:19
**simply (3)**
24:6;31:12,16
**sitting (1)**
14:9
**situation (2)**
8:3;30:15
**six (1)**
15:14
**six-million-dollar (1)**
36:11
**sixteen (1)**
22:9
**small (2)**
3:23;14:11
**so-called (1)**
5:16
**solidify (1)**
18:6
**somebody (3)**
6:18,22;38:11
**somehow (1)**
41:11
**someone (2)**
17:1;26:1
**somewhere (1)**
5:11
**sorry (6)**
5:25;11:22;26:7;
27:22,25;36:9
**sort (2)**
15:20;17:23
**sought (3)**
23:1;29:16;35:16
**sound (1)**
15:12
**sounding (1)**
40:21
**sounds (2)**
40:6,7
**Southern (1)**
29:16
**speaks (2)**
40:19;41:2
**specifically (5)**
29:25;30:13;31:2;
39:6;41:16
**specifics (1)**
16:16
**spent (1)**
8:10
**start (1)**
39:25
**starts (1)**
16:7
**state (2)**
3:7;17:11
**statute (4)**

29:2,4,4;39:5
**stay (3)**
12:11;14:5;32:4
**still (9)**
3:25;5:7;7:9;12:22;
27:20;31:1,13,14;
35:22
**stop (4)**
7:22;8:6;24:18;27:9
**story (3)**
6:10;8:9;26:2
**strangers (1)**
7:16,18;8:21
**stress (1)**
20:21
**struggling (1)**
27:11
**submit (2)**
22:17,19
**submitted (2)**
4:11;22:23
**subordination (1)**
30:15
**subsequent (1)**
33:1
**suppliers (1)**
22:19
**supply (1)**
29:20
**support (1)**
20:6
**supports (1)**
18:12
**supposed (4)**
8:11;14:16;34:11,13
**supposedly (1)**
6:20
**Sure (5)**
9:19,25;11:10;17:20;
22:5
**surprise (1)**
41:15
**swap (7)**
29:20,20;30:7,8;
32:5,17;33:3
**switch (1)**
3:18
**switched (1)**
28:9
**sworn (1)**
21:4

**T**

**talk (2)**
38:23;39:2
**talking (7)**
8:3,5;28:17,22;
38:10,13;41:1
**talks (2)**
18:7;39:6
**Ted (1)**
3:13

Case: 19-30088    Doc# 11053    Filed: 08/11/21    Entered: 08/11/21 10:41:24    Page 50
of 52

**telling (1)**
17:6
**ten (4)**
17:10,12,21;19:1
**terminate (10)**
24:2;25:3,4;29:17;
30:7,21;31:9,21;33:10,
11
**terminated (2)**
31:13;32:19
**termination (6)**
24:10;30:8;32:20;
33:2,9;38:6
**terminations (1)**
33:1
**terms (4)**
8:16;20:18;30:11;
40:20
**testimony (1)**
41:9
**that'll (2)**
41:10,15
**theory (1)**
37:2,2
**therefore (2)**
10:15;40:9
**thinking (3)**
9:21;10:25;41:22
**third (1)**
7:8
**third-parties (1)**
18:22
**thirty (3)**
17:16;19:2,3
**though (2)**
18:10;25:25
**thought (5)**
4:8,8;14:5;28:10;
38:21
**three (3)**
35:4;36:10,13
**tie (1)**
40:13
**times (1)**
22:21
**today (11)**
10:12,16;11:2,4,20;
12:24;15:5,6,11;23:16;
41:21
**together (5)**
7:15;28:21,22,23;
40:13
**told (1)**
36:23
**took (1)**
35:12
**total (1)**
17:16
**touched (2)**
10:25;18:19
**TPI (1)**
29:16
**traditional (1)**

6:16
**triggered (1)**
10:17
**true (1)**
12:6
**trustee (2)**
25:6,13
**trustee's (1)**
25:15
**try (3)**
17:17;27:23;35:16
**trying (4)**
24:22;36:23;38:20;
40:15
**Tsekerides (75)**
3:5,12,13,14,19,20,
22;4:1,4,16,24;5:14,23,
25;6:4,6,14;7:17,20,24;
8:2,7,13;9:5,9,12,18,
25;10:9;11:12,15,17,
18,19,22;12:5,9;13:7,
14,17,20;14:16,20,23,
25;15:6,9,22,24;16:2,8,
11;17:20,23;18:2;
19:12,15;20:13;21:5;
23:3;29:11;33:22;
34:18;35:11;36:1;37:9,
21,24;38:4;39:20,25;
40:5,10,12;42:1
**TUESDAY (1)**
3:1
**turn (2)**
6:1;8:15
**twelve (7)**
9:1;12:25;16:12;
36:3,4,5;37:6
**twenty-eight (1)**
12:1
**twenty-eight-day (1)**
14:21
**twice (1)**
21:24
**two (8)**
7:21;15:7;20:6;
21:12,14;38:8,15;
40:13
**type (2)**
39:22,22
**types (1)**
31:8

**U**

**ultimately (2)**
12:19;30:25
**unclear (1)**
4:10;15:4
**uncurable (1)**
27:13
**under (37)**
6:21,21;7:3,4,5;8:20;
10:15,22;12:18;13:2,3,
22;14:24;16:25;17:11;

18:7,15;21:2;22:21;
23:17,18,19,20,22;
25:3,7,11,15;26:15;
29:20;30:9;31:15;32:6;
34:14;37:6;41:14,24
**underlying (2)**
6:12;41:10
**underneath (2)**
33:15;35:8
**unenforceability (1)**
25:10
**unenforceable (2)**
9:6;10:15
**unexpired (1)**
25:13
**unfortunately (1)**
35:18
**unimpaired (1)**
24:13
**unless (3)**
18:14;37:17;41:23
**unpronounceable (1)**
6:3
**unreported (1)**
29:22
**unring (2)**
24:17;26:17
**up (11)**
3:20;9:10;10:10;
12:3;16:14;19:3;22:20;
26:7;37:11;38:20;
40:24
**upgrade (2)**
34:20;35:10
**upgrades (1)**
34:14
**upon (1)**
10:25
**use (2)**
17:17;22:1
**using (1)**
31:25
**utilized (1)**
25:8

**V**

**valid (1)**
17:11
**veterinarian (1)**
7:13
**video (1)**
28:3
**videotaped (1)**
19:13
**view (2)**
21:11;24:4
**views (1)**
20:20

**W**

**wait (2)**

8:11;27:24
**waives (1)**
21:11
**waterfall (1)**
30:16
**Weil (1)**
3:14
**weren't (1)**
35:15
**what's (5)**
15:18;17:6;25:22;
30:3;38:11
**whatsoever (1)**
20:15
**whereas (2)**
16:5;31:17
**Whereupon (1)**
42:8
**whole (2)**
6:10;10:23
**win (2)**
8:8;10:6
**window (1)**
14:22
**winner (2)**
37:3,4
**Winthrop (2)**
3:9;19:5
**without (3)**
5:15;6:10;17:1
**words (6)**
6:17;14:21;29:2,3;
31:22;39:19
**work (2)**
39:3;42:5
**world (1)**
20:10
**worried (1)**
14:7
**worth (2)**
37:2,3
**woven (1)**
7:15

**Y**

**years (2)**
7:21;30:1
**yesterday (1)**
9:20

**Z**

**zero (3)**
18:11;20:16,22
**Zoom (1)**
20:10

**1**

**1 (4)**
6:24;24:9;28:24,24
**10 (1)**

3:1
**104 (2)**
30:2,17
**11 (1)**
30:2
**1124 (5)**
18:5,7,11,18;27:4
**170,000 (1)**
3:25
**1978 (2)**
24:8;27:11

**2**

**2 (4)**
15:11;24:11;28:23;
38:23
**2020 (1)**
30:6
**2021 (1)**
3:1
**29th (1)**
12:1

**3**

**362 (2)**
27:16,16
**365 (1)**
27:2
**3653 (1)**
38:9
**365b (6)**
27:4;38:7,10,13;
39:3,6
**365b1 (2)**
28:15,17
**365b2 (12)**
8:4;10:15;16:21,25;
17:5;18:8,12,15;39:7,
14;40:22;41:2
**365e (9)**
16:23;31:14,15,24;
37:25;38:5,7,24;41:19

**5**

**502 (3)**
18:5,13,18
**503b9 (4)**
12:3;34:1,2;36:25
**509 (1)**
36:25
**509b3 (1)**
36:9
**541 (5)**
26:21,21,24;27:15,
18
**556 (4)**
32:9;38:5,8;41:19
**560 (7)**
31:2,14,24;32:9;
38:5,8;41:19

Case: 19-30088    Doc# 11053    Filed: 08/11/21    Entered: 08/11/21 10:41:24    Page 51
of 52

| **9** |
| --- |

**91 (1)**
  30:1
**970 (2)**
  30:1,17

Case: 19-30088   Doc# 11053   Filed: 08/11/21   Entered: 08/11/21 10:41:24   Page 52 of 52