Entered on Docket
August 11, 2021
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PUBLIC EMPLOYEES RETIREMENT ASSOCIATION OF NEW MEXICO, et al.<br><br>Appellant,<br><br>v.<br><br>PG&E CORPORATION, et al.<br><br>Appellee. | Case No.  20-cv-04567-HSG<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S RULING ON INSURANCE DEDUCTION**<br><br>Re: Dkt. Nos. 4, 19 |

Pending before this Court is Appellant Public Employees Retirement Association's appeal of the Bankruptcy Court's Confirmation Order.  Dkt. No. 4 ("Appellant Br.") and Dkt. No. 18 ("Reply Br.").  Specifically, Appellant appeals the Bankruptcy Court's ruling that the Bankruptcy Plan's definition of "Insurance Deduction" with respect to Class 10A-II claims was fair and equitable under Section 1129(b)(1) of the Bankruptcy Code.  Appellant Br. at 2.  Appellees PG&E Corporation and Pacific Gas and Electric Company (collectively, "Debtors") and the Official Committee of Tort Claimants ("TCC") oppose the appeal.  Dkt. No. 14 ("PG&E Br.") and Dkt. No. 12 ("TCC Br.").  For the following reasons, the Court **AFFIRMS** the Bankruptcy Court's ruling.[1]

## I.    BACKGROUND

### A.    PG&E's Bankruptcy and Chapter 11 Plan

On January 29, 2019, the Debtors commenced voluntary cases for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court

---

[1] TCC also moved to dismiss this appeal on equitable mootness grounds.  Dkt. No. 19.  Because the Court affirms the Bankruptcy Court's ruling on the merits, the motion to dismiss is **DENIED AS MOOT**.

United States District Court
Northern District of California

for the Northern District of California ("Bankruptcy Court").  Significantly, the Debtors needed to propose a plan of reorganization that satisfied the requirements of A.B. 1054, including its June 30, 2020 deadline for plan confirmation.  In light of the "increased risk of catastrophic wildfires," A.B. 1054 created the "Go-Forward Wildfire Fund" as a multi-billion dollar safety net to compensate future victims of public utility fires and thereby "reduce the costs to ratepayers in addressing utility-caused catastrophic wildfires," support "the credit worthiness of electrical corporations," like the Debtors, and provide "a mechanism to attract capital for investment in safe, clean, and reliable power for California at a reasonable cost to ratepayers."  A.B. 1054 § 1(a).  For the Debtors to qualify for the Go-Forward Wildfire Fund, however, A.B. 1054 required, among other things, the Debtors to obtain an order from the Bankruptcy Court confirming a plan of reorganization by June 30, 2020.  *See* A.B. 1054 § 16, ch. 3, 3292(b).  After more than sixteen months of negotiations among a variety of stakeholders, and following confirmation hearings that spanned several weeks, the Debtors' Plan of Reorganization dated June 19, 2020 ("Plan")[2] was confirmed by the Bankruptcy Court on June 20, 2020 and became effective on July 1, 2020 ("Effective Date").

## B.    Appellant's Securities Litigation

Appellant is the court-appointed lead plaintiff in a pending securities class action—*In re PG&E Corporation Securities Litigation*, Case No. 18-cv-03509-EJD (N.D. Cal.) ("Securities Litigation")—against Debtors, 18 of Debtors' current and former directors and officers, and 24 investment banks that underwrote certain public offerings of PG&E senior notes.  *See* Appellant Br. at 3-4.  In the Securities Litigation, Appellant alleges that Debtors misled investors about their wildfire safety practices in a manner that amounts to securities fraud.  *Id.* at 4-5.  Appellant filed individual proofs of claim and class proofs of claim in the Bankruptcy Court based on the federal securities violations alleged in the securities litigation.  *Id.* at 5.

## C.    Insurance Deduction Dispute

The Bankruptcy Court considered Appellant's objections to the insurance deduction at

---

[2] Capitalized terms not otherwise defined in this order have the meanings ascribed to them in the Plan.

1    issue in this appeal at several hearings in June of 2020.  *Id.* at 7.  In the June 20, 2020

2    Confirmation Order, the Bankruptcy Court found that the Plan satisfied Bankruptcy Code §

3    1129(b) with respect to Class 10A-II claims because the Plan does not discriminate unfairly and is

4    fair and equitable with respect to the class.  Dkt. No. 1-4 at 66.  The Bankruptcy Court based this

5    finding on a number of submissions by the parties and on the record of the June 19, 2020

6    Confirmation Hearing.  *Id.*

7    **II.    LEGAL STANDARD**

8         District courts have jurisdiction to hear appeals from final judgments, orders, and decrees

9    of bankruptcy judges.  28 U.S.C. § 158.  A district court reviews a bankruptcy court's decision by

10   applying the same standard of review used by circuit courts when reviewing district court

11   decisions.  *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009).  The district court reviews

12   the bankruptcy court's findings of fact for clear error and its conclusions of law de novo.  *In re*

13   *Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001).

14        "Whether a plan is fair and equitable is a factual determination reviewed for clear error."

15   *In re Sunnyslope Hous. Ltd. P'ship*, 859 F.3d 637, 646 (9th Cir. 2017).  In reviewing a bankruptcy

16   court's factual findings for clear error, the reviewing court "must accept the bankruptcy court's

17   findings of fact unless, upon review, the court is left with the definite and firm conviction that a

18   mistake has been committed by the bankruptcy judge."  *In re Greene*, 583 F.3d at 618.  The

19   Supreme Court has made clear that "[t]his standard plainly does not entitle a reviewing court to

20   reverse the finding of the trier of fact simply because it is convinced that it would have decided the

21   case differently."  *See Anderson v. City of Bessemer*, 470 U.S. 564, 573-74 (1985).  "In applying

22   the clearly erroneous standard . . . , [reviewing] courts must constantly have in mind that their

23   function is not to decide factual issues de novo."  *Id.*   "If the [lower] court's account of the

24   evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not

25   reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed

26   the evidence differently."  *Id.*

27   **III.    DISCUSSION**

28        The cram-down provision of 11 U.S.C. § 1129(b) requires that the reorganization plan be

*United States District Court*
*Northern District of California*

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

found "fair and equitable." *In re Sunnyslope*, 859 F.3d at 646. This appeal presents the question whether the Bankruptcy Court clearly erred in finding that the definition of the term "Insurance Deduction" in Section 1.127A of the Plan is fair and equitable with respect to Class 10A-II claims.[3] More precisely, the parties dispute whether the Bankruptcy Court clearly erred in finding that it is fair and equitable to deduct certain insurance payments, from the so-called Side B indemnification coverage, from the recovery of a Class 10A-II claim. *See* Dkt. No. 9 ("June 19, 2020 Hearing Transcript," or "Hearing Tr.") at A1901-A1928.

Appellant makes two main arguments on appeal. First, Appellant argues that the current definition of Insurance Deduction renders the Plan's treatment of Class 10A-II claims unfair and inequitable because the deduction is not necessary to guard against double recovery. Appellant Br. at 14-15. Second, Appellant argues that the definition of Insurance Deduction renders the Plan's treatment of Class 10A-II claims unfair and inequitable because payments from Debtors' Side B indemnification coverage are deducted from the claim amount even though those proceeds should not be considered property of the estate. *Id.* at 15.

Appellant relies heavily on what it characterizes as the "*Ivanhoe* rule," derived from the Supreme Court's decision in *Ivanhoe Bldg. & Loan v. Orr*, 295 U.S. 243 (1935). *Id.* at 17. The Supreme Court's holding in *Ivanhoe* has been characterized as the principle that "a creditor need not deduct from his claim in bankruptcy an amount received from a non-debtor third party in partial satisfaction of an obligation." *See In re Nat'l Energy & Gas Transmission, Inc.*, 492 F.3d 297, 301 (4th Cir. 2007). However, a creditor's claim may be affected by third-party payments to the extent that payment from the debtor would produce a double recovery. *See In re Del Biaggio*,

---

[3] The Plan's definition of "Insurance Deduction" is:

> [A]ny cash payments received from an Insurance Policy (other than cash payments received from a Side A Policy) on account of all or any portion of an Allowed HoldCo Rescission or Damage Claim, to be applied proportionally in accordance with subparagraphs (a) through (d) of the definition of "HoldCo Rescission or Damage Claim Share" above.

Dkt. No. 1-4 at ECF 92.

496 B.R. 600, 603 (Bankr. N.D. Cal. 2012).  Appellant acknowledges that a creditor's aggregate recovery cannot exceed 100% of its bankruptcy claim.  Appellant Br. at 17; *see also* Hearing Tr. At A1906:10-13 (counsel for Appellant stating that "we agree with the Court, and consistent with Ivanhoe, that a particular claimant can't receive more than a hundred percent of the amount of their claim.").  Thus, under Appellant's theory, because Debtors' Side B indemnification coverage is not property of Debtors' estate, Side B insurance proceeds should not be deducted from Appellant's recovery, except insofar as it would result in double recovery.  *Id.*  Appellant then proposes a different definition of "Insurance Deduction" that it argues properly treats the Side B insurance proceeds as non-estate, non-debtor property and adequately guards against double recovery.  *Id.* at 24-25.

In reviewing the June 19 Hearing Transcript, as well as the parties' current positions, the Court finds that the key disputed finding underlying this appeal is the Bankruptcy Court's finding that the insurance deduction can plausibly serve to prevent double recovery by Class 10A-II claimants, notwithstanding Appellant's contention that the current PG&E share price, in combination with the Plan's conversion factors, makes double recovery nearly impossible as a practical matter.  *See* Hearing Tr. At 1902-1910.  Appellant's argument for clear error is premised on its contention that it is "virtually impossible" for the Plan's treatment of Class 10A-II claims to fully satisfy such claims by converting the claims to shares via the conversion factors.[4]  *See*

_____

[4] The conversion factors are set out in the Plan at  § 1.109:

> **1.109 <u>HoldCo Rescission or Damage Claim Share</u>** means, with respect to an Allowed HoldCo Rescission or Damage Claim, a number of shares of New HoldCo Common Stock equal to the sum of following: (a) the portion of such Allowed HoldCo Rescission or Damage Claim relating to purchases of common stock of HoldCo on or before October 13, 2017, *less* the Insurance Deduction on account of such portion of such Allowed HoldCo Rescission or Damage Claim, *divided* by 65.00; and (b) the portion of such Allowed HoldCo Rescission or Damage Claim relating to purchases of common stock of HoldCo from October 14, 2017, through and including December 20, 2017, *less* the Insurance Deduction on account of such portion of such Allowed HoldCo Rescission or Damage Claim, *divided* by 46.50; and (c) the portion of such Allowed HoldCo Rescission or Damage Claim relating to purchases of common stock of HoldCo from December 21, 2017, through and including May 25, 2018, *less* the Insurance Deduction on account of such portion of such Allowed

Appellant Br. at 18.  Otherwise, Appellant's position would run afoul of its own formulation of the "*Ivanhoe* rule," because it would be possible to recover more than the full amount of a claim via a combination of shares and insurance proceeds.  In other words, in taking the position that Class 10A-II claim holders should be able to recover Side B insurance proceeds without any offset in the number of shares they receive, Appellant relies on its assertion that "double recovery is near-impossible under the Plan given the gulf between PG&E's trading price and the conversion factors."  Appellant Br. at 19.

The Bankruptcy Court rejected Appellant's position that the Plan does not provide for full satisfaction of Class 10A-II claims and found that once "the plan becomes effective, and the stock is issued, and that claimant is given his or her [amount of] shares, the claim has been satisfied, end of story." *Id.* at A1902:24-A1903:2.  The consequence of this finding is that once a claimant receives the full number of shares agreed upon under the Plan, "there's nothing left to pay him." *Id.* at A1904:4-5.  But if a claimant had previously received money through insurance proceeds, it "can't get the full payment . . . of the shares, because [claimant] got the money." *Id.* at A1904:5-7.  Based on these findings, the Bankruptcy Court concluded that the insurance deduction was consistent with the Supreme Court's holding in *Ivanhoe* because the deduction would guard against the possibility of double recovery, i.e., recovery of the full number of shares provided for under the Plan, plus previously received insurance proceeds. *Id.* at A1904:3-7.

Importantly, the Bankruptcy Court also rejected Appellant's argument that the current value of the Reorganized Debtors' stock in combination with the Plan's conversion factors is determinative when considering the possibility of double recovery.  *See* Appellant Br. at 14-15, 18-21 (arguing that it is virtually impossible for the sum of the value of the stock received after conversion and any insurance payments to amount to greater than the total dollar value of a

---

HoldCo Rescission or Damage Claim, *divided* by 37.25; and (d) the portion of such Allowed HoldCo Rescission or Damage Claim relating to purchases of common stock of HoldCo from May 26, 2018, through and including November 15, 2018, *less* the Insurance Deduction on account of such portion of such Allowed HoldCo Rescission or Damage Claim, *divided* by 32.50.

Dkt. No. 1-1 at ECF 198 (emphasis in original).

6

1    claimant's claim).  As the Bankruptcy Court explained, "we don't have the luxury today of

2    knowing what every individual claimant's stock on a conversion fund is worth.  We have to do

3    this in reverse. And chances are the particular claimant's amount will be liquidated long after the

4    conversion is in place and the real value."  *Id.* at A1908:7-12.  In other words, the Bankruptcy

5    Court could not know, as of the confirmation date, what the eventual dollar value of a claimant's

6    shares would be because conversion of the claim into shares would happen long after Plan

7    confirmation.  It may be that when Appellant and other Class 10A-II claimants eventually receive

8    their shares, they will receive shares whose dollar value is less than the dollar amount of their

9    claim.  *See* Appellant Br. at 18-19.  But as Appellant acknowledges, it is also possible that the

10   shares will increase in value such that claimants will recover nearly the full dollar amount of their

11   claims.  *See* Reply at 4 (conceding that in the event that "PG&E's trading price climbs to $32.50

12   or more by the time Class 10A-II claimants receive new PG&E common stock," it would be

13   necessary to include an insurance deduction to "ensure that claimants will not recover more than

14   100% of their claims.").  In such a scenario, the insurance deduction could plausibly be necessary

15   to avoid double recovery, as the Bankruptcy Court found.

16          Appellant presents calculations using the Plan's conversion formula to argue that "double-

17   recovery is near-impossible under the Plan given the gulf between PG&E's trading price and

18   conversion factors."  Appellant Br. at 18-19.  But it is not this Court's role to reweigh the factual

19   evidence from scratch and determine how likely double recovery is under the current definition of

20   "Insurance Deduction," as opposed to under Appellant's preferred definition.  *See Anderson*, 470

21   U.S. at 573-74 ("In applying the clearly erroneous standard . . . , [reviewing] courts must

22   constantly have in mind that their function is not to decide factual issues de novo.").  Under the

23   clearly erroneous standard, "[i]f two views of the evidence are possible, the [bankruptcy] judge's

24   choice between them cannot be clearly erroneous."  *In re Marshall*, 721 F.3d 1032, 1039 (9th Cir.

25   2013).  Given that neither the Bankruptcy Court nor this Court can know what PG&E's trading

26   price will be in the future, the Court finds that the Bankruptcy Court's conclusion that the current

27   definition of "Insurance Deduction" serves to guard against the possibility of double recovery is

28   plausible in light of the record.  Accordingly, the Court finds that the Bankruptcy Court did not

1    clearly err in making this finding.[5]

2          Further, as the Bankruptcy Court pointed out, Appellant negotiated and eventually agreed

3    to the conversion formula.  Hearing Tr. At A1910:4-10.  And under Section 4.14 of the Plan, the

4    shares received by Class 10A-II claims holder shall result in "[i]n *full and final satisfaction*,

5    settlement, release, and discharge of any HoldCo Recission or Damage Claim."  Dkt. No. 1-1 at

6    ECF 229 (emphasis added).  Appellant has not cited any case law in support of its position that the

7    Plan's treatment of Class 10A-II claims should not be found fair and equitable because of the

8    agreed-upon conversion factors, or because of the current price of Reorganized Debtors' shares.

9    Rather, Appellant attempts to convince this Court that, as a factual matter, double recovery is

10   nearly impossible based on current share prices.[6]  As already noted, as long as the Bankruptcy

11   Court's finding is plausible, such a reweighing of factual evidence is inappropriate under the

12   clearly erroneous standard.  Accordingly, the Court finds that the Bankruptcy Court did not clearly

13   err in finding that the Plan's definition of "Insurance Deduction" is fair and equitable.[7]

14

15   [5] Likewise, it is not this Court's role to rewrite the Plan's definition of "Insurance Deduction" to
16   better suit Appellant.  *See* Reply at 4.  If the Bankruptcy Court did not clearly err in finding the
     Plan's definition fair and equitable, it does not matter at this stage whether Appellant's competing
17   definition could have served as well or better.
     [6] In its Reply, Appellant makes much of the Debtors' supposed "concession" that the insurance
18   deduction is not necessary to guard against double recovery because the current definition exempts
     proceeds received from the so-called Side A coverage.  Reply at 2-5.  But the exemption of Side A
19   proceeds from the definition of "Insurance Deduction" is not being challenged on appeal, and it
     would be curious for Appellant to challenge this exemption, which inures to Appellant's benefit
20   and was a concession that Appellant negotiated for and won from the Plan proponents.  And this
     Court's task on appeal is not to redraft the Plan's "Insurance Deduction" definition from first
21   principles, but rather to decide if the Bankruptcy Court clearly erred in finding the current
     definition fair and equitable.  The Court is not convinced that the Side A exemption in the
22   definition, which benefits Appellant, somehow makes the Bankruptcy Court's fair and equitable
     finding erroneous.  It remains plausible that a deduction for Side B proceeds could guard
23   against double recovery even if the Bankruptcy Court determined that a deduction for both Side A
     *and* Side B proceeds was not needed.
24   [7] Appellant argues that the Bankruptcy Court clearly erred in not considering its argument that the
     Side B insurance proceeds are not property of the estate.  But the Bankruptcy Court's fair and
25   equitable finding did not depend on whether the insurance proceeds are property of the estate.  For
     purposes of the Bankruptcy Court's hypothetical at the June 20 hearing, the Bankruptcy Court
26   assumed that the insurance payments would not be considered estate property.  *See* Hearing Tr. at
     A1902-1910.  Otherwise, as Debtors persuasively argue, the entire *Ivanhoe* dispute would be
27   irrelevant as that case concerns payments from "a non-debtor third party."  *See In re Nat'l Energy*,
     492 F.3d at 301.  Accordingly, because the Court finds that the Bankruptcy Court did not err in
28   finding the insurance deduction consistent with *Ivanhoe*, the Court need not reach the question
     whether the Side B insurance proceeds should be considered part of Debtors' estate.

United States District Court
Northern District of California

1

## IV.    CONCLUSION

The Bankruptcy Court's fair and equitable ruling with respect to the Plan's definition of "Insurance Deduction" is **AFFIRMED**.  The Court also **DENIES AS MOOT** the motion to dismiss.  The Clerk is directed to terminate this appeal and close the case.

**IT IS SO ORDERED.**

Dated:   August 10, 2021

HAYWOOD S. GILLIAM, JR.
United States District Judge