ALSTON & BIRD, LLP
DIANE C. STANFIELD (CA Bar No. 106366)
diane.stanfield@alston.com
333 S. Hope Street 16th Floor
Los Angeles, California 90071
Telephone:   213.576.1000
Facsimile:   213. 576-1100

Attorneys for
Fulcrum Credit Partners LLC

DOWNEY BRAND LLP
JAMIE P. DREHER (CA Bar No. 209380)
Email: jdreher@downeybrand.com
TYLER J. HORN (CA Bar No. 323982)
Email: thorn@downeybrand.com
621 Capitol Mall, 18th Floor
Sacramento, California 95814
Telephone:   916.444.1000
Facsimile:   916.444.2100

Attorneys for
Tuscan Ridge Associates, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E Corporation,<br><br>and<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>[ ] Affects PG&E Corporation<br>[x] Affects Pacific Gas and Electric Company<br>[] Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088-DM, | Case No. 19-30088-DM<br><br>Chapter 11<br>Lead Case, Jointly Administered<br><br>**DECLARATION OF SCOTT BATES IN SUPPORT OF MOTION FOR RELIEF FROM PLAN INJUNCTION, TO COMPEL ARBITRATION AND/OR FOR ABSTENTION**<br><br>Date:   September 14, 2021<br>Time:   10:00 a.m.<br>Crtrm.:   Courtroom 17<br>          450 Golden Gate Avenue<br>          San Francisco, CA 94102<br>Judge:   Hon. Dennis Montali<br><br>Objection deadline:   August 31, 2021 |

///

///

1    I, Scott Bates, declare as follows:

2    I am over the age of eighteen (18), provide this declaration in support of Fulcrum Credit
3    Partners, LLC's Motion for Relief from Stay, to Compel Arbitration, and/or Abstention, provide
4    this testimony based on my personal knowledge, and would testify consistently herewith if called
5    to do so.

6    1.   I am the managing member of Tuscan Ridge Associates, LLC ("Tuscan"). Tuscan
7    is the owner of real property located in Paradise California commonly identified as Assessor's
8    Parcel Nos. 040-520-103 and 040-520-100 (the "Property").

9    2.   Since acquiring the Property, Tuscan has been working to entitle the Property, with
10   the intent of constructing a residential golf course community on the Property. As a result of
11   Butte County's update to the general plan, the Property was tentatively rezoned for residential
12   purposes, so long as the golf course remained operational.

13   3.   Shortly after the "Camp Fire" leveled Paradise, Pacific Gas & Electric Company
14   ("PG&E"), commandeered significant portions of the Property for use as a basecamp for its
15   employees, as they worked to restore utilities for those affected by the Camp Fire.

16   4.   After PG&E commandeered the Property, we (Tuscan and its partners) began to
17   discuss terms for use of the Property with PG&E. Quickly, PG&E indicated that they needed to
18   level and winterize the Property. With PG&E's agreement that the Property would be restored to
19   its original condition, we agreed. Thereafter, PG&E leveled the once rolling hills on the Property
20   and dumped a layer of road base (i.e. gravel) on the Property.

21   5.   On or about, November 20, 2018, Tuscan and PG&E executed the Letter
22   Agreement (the "Agreement") which memorialized PG&E's restoration and maintenance
23   obligations relative to the Property and dispute resolution process. A true and correct copy of the
24   Letter Agreement is attached hereto as **Exhibit A**.

25   6.   In February of 2019, PG&E informed Tuscan that it would not need the Property
26   for the entire duration of the Agreement. In other words, PG&E would be vacating the Property
27   early. PG&E vacated the Property shortly after providing this notice in approximately mid to late
28   February 2019.

7. After PG&E vacated the Property, we began the process of meeting and conferring to address PG&E's restoration obligations. These discussions did not move past the initial stage as PG&E refused to engage further on the topic.

8. As a result, Tuscan was forced to file its Proof of Claim and the instant proceedings followed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

August 4, 2021

By: _____
SCOTT BATES

# EXHIBIT A

# EXHIBIT A



Elouise Del Rosario
PG&E – Land Acquisition
245 Market Street, San Francisco, CA 94105
C: (628) 219-8228
Elouise.DelRosario@pge.com

## LETTER AGREEMENT

November 20, 2018

Tuscan Ridge Associates, LLC
c/o E. M. West
6774 Woodland Drive
Paradise, CA 95969

RE: Temporary License for Use of Portion of Parcel of Land
3100 Skyway Road, Chico, CA, APN: 040-520-103; 040-520-100

Dear Mr. West:

Public records indicate that Tuscan Ridge Associates, LLC is the owner ("Owner") of the parcel of land referenced above (the "Property"). Pacific Gas and Electric Company ("PG&E") would like to memorialize its temporary use of a portion of the Property, commencing November 19, 2018, and expiring on May 20, 2019 (the "Expiration Date"), as a support site and base camp in connection with the Camp Fire restoration, that will include significant alterations to the Property, necessitated by the Camp Fire. Notwithstanding the foregoing, in the event PG&E's Activities continue beyond the Expiration Date, with the consent of Owner, such use shall be on a month to month basis, terminable on forty-five (45) days' advance written notice by either party, in which case the Owner shall reimburse PG&E any prepaid compensation allocated to periods after the termination of this letter agreement ("Letter Agreement").

This Letter Agreement sets forth the terms and conditions of PG&E's temporary use of the "License Area" outlined in red on the attached drawing labeled "Exhibit A" When countersigned by PG&E and returned to you, this Letter Agreement shall serve to memorialize your grant of a temporary license, not coupled with an interest, to PG&E. This Letter Agreement supersedes all previous oral and written agreements between and representations by or on behalf of the parties and constitutes the entire agreement of the parties with respect to the subject matter hereof. This Letter Agreement may not be amended except by a written agreement executed by both parties.

PG&E will use the License Area in connection with its emergency response operations in the area. PG&E and its employees, contractors, agents and representatives ("PG&E Representatives") may enter the License Area for the sole purpose of establishing a base camp and staging area to support the command, control and coordination of emergency response, which may include the staging of vehicles, equipment, supplies, and materials used in connection with PG&E's electric and gas utility operations, the disposal of used, treated wood poles, the landing of helicopters, and the temporary residency of PG&E Representatives ("PG&E's Activities").

During the term of this Letter Agreement, PG&E has the non-exclusive right to use the License Area, along with the right of ingress and egress thereto. The license granted hereunder is personal to PG&E and may not be assigned by PG&E without the prior written consent of Owner. PG&E agrees and acknowledges that other public agencies (such as the County of Butte, FEMA, OES, GSA, etc.) may desire to use all or some of the Property, including the License Area. If Owner consents to such other use(s), PG&E agrees to reasonably cooperate in good faith with Owner and such other public agencies to

1

Case: 19-30088    Doc# 11066-2    Filed: 08/17/21    Entered: 08/17/21 13:34:35    Page 5 of 9

jointly use the Property and the License Area in whatever manner reasonably necessary to further the restoration efforts. Subject to the foregoing, PG&E has the right to erect and maintain temporary fencing and gates with a locking device to enclose the License Area, and shall remove such fencing and gates when PG&E has demobilized and vacated the License Area. Subject to PG&E's obligations to reasonably cooperate with Owner and other agencies as set forth above, the license granted hereunder will be irrevocable during the term of PG&E's Activities, except in the case of a material breach of the terms of this Letter Agreement. Notwithstanding the foregoing, after January 15, 2019, in the event a public agency, such as the ones set forth above, desires to utilize all or part of the Property for activities related to the Camp Fire restoration, PG&E will coordinate with those public agencies. If such use is not compatible with PG&E's Activities hereunder, Owner may terminate this Letter Agreement on forty-five (45) days' written notice to PG&E, in which case Owner shall reimburse PG&E any prepaid compensation (both Rental Fee and Independent Consideration) allocated to periods after the termination, in whole or in part, of this Letter Agreement. In the event of such termination, PG&E's restoration obligations under this Letter Agreement shall be proportionately reduced based on the use of any other public agency occupying the License Area.

In consideration for your willingness to enter into this Letter Agreement with PG&E to support the emergency response initiative, PG&E hereby offers to pay you the following:

**Twenty-Five Thousand dollars ($25,000.00)** per week as compensation for use of the License Area for PG&E's Activities, one thousand dollars ($1,000.00) per week for the use of the "Club House," seven hundred fifty dollars ($750.00) per week for the use of the "Pro Shop," as designated on Exhibit A and collectively referred to as the License Area. These fees of **$26,750.00 per week for a total of $695,500** shall be referred to herein as the "Rental Fee" and PG&E shall pay Three Hundred Forty-Seven Thousand Seven Hundred Fifty Dollars **($347,750.00)** in advance, and shall continue to pay **$26,750.00** per week, on a weekly basis until the Rental Fee is paid in full.

Within fourteen days of full execution of this Letter Agreement, PG&E shall pay Owner Five Hundred Thousand Dollars ($500,000) (the "Independent Consideration") as additional consideration for Owner's execution, delivery and performance of this Letter Agreement. The Independent Consideration is in addition to and independent of the Rental Fee, provided, however, that Owner shall reimburse PG&E that portion of the Independent Consideration allocated to periods after any termination, in whole or in part, of this Letter Agreement.

PG&E will furnish and install a water pump with generator and water meter monitor as well as pump discharge facilities to bring in water from a nearby irrigation pond to supply the on-site water for dust abatement. PG&E will pay $5/per acre foot to the owner for the water service. Owner shall grade and winterize the site for PG&E's use following PG&E's provided scope of work and schedule PG&E will reimburse the Owner for the costs of grading and winterization at the standard industry rates for such services. Payment is due and payable bi-weekly within 10 days after invoice is submitted to PG&E. In exercising the rights granted under this Letter Agreement, PG&E shall comply with all laws, ordinances, and regulations pertaining to its use of the License Area. PG&E shall be responsible for the payment of any increase in property taxes and assessments resulting from a reassessment of the Property related to PG&E's Activities. PG&E shall keep the License Area and Property free from any and all liens, including, without limitation, mechanics' liens, arising out of the work performed, materials furnished, or obligations incurred by PG&E. Owner may post and keep posted on the Premises notices of non-responsibility.

PG&E agrees to indemnify, defend and hold Owner, its partners, employees, agents and consultants harmless against any losses, costs, damages, expenses or liabilities connected with or resulting from the injury to or death of any person, or damage to or loss or destruction of any property arising out of the

2

negligent acts or omissions of PG&E, its employees, agents, subcontractors or invitees, under this Letter Agreement.

PG&E shall, at its sole cost and expense, maintain and restore the License Area, including the roads and parking lot(s), including any areas of ingress and egress, in as good of condition as it was prior to PG&E's use of the area (the "Baseline Condition"), provided, however, PG&E shall not be required to replace the existing sod, turf and grass within the License Area. PG&E agrees and acknowledges that the Baseline Condition includes the Property's current condition as of the date of this Letter Agreement, prior to the grading and winterization activities that Owner will perform for PG&E. The Baseline Condition includes the currently closed 18-hole golf course improvements on the Property, including the fairways and greens (that is, the grading and contours of such fairways and greens but excluding any sod, turf and grass in such areas), bunkers, ponds, sprinkler systems and related improvements. Inasmuch as Owner's grading and winterization activities, as well as PG&E's Activities, will cause permanent damage to the golf course improvements, PG&E's restoration obligations at the end of the term of this Letter Agreement include restoring the License Area in a professional manner to the Baseline Condition (including the golf course improvements as described above), at PG&E's sole cost and expense. All other existing improvements located on the Property are to be protected in place, unless otherwise agreed to by Owner. PG&E shall make no alteration, improvements, borings, installations or fixtures to the Property without prior written consent by Owner. Any damage to the Property or License Area caused by PG&E's Activities shall be promptly repaired by PG&E at its sole cost and expense.

At the expiration or earlier termination of this Agreement, PG&E shall meet and confer with Owner as to the nature and scope of the restoration work. If PG&E and Owner cannot agree on the extent of PG&E's restoration obligations set forth above, then the parties shall engage a third party neutral (the "Arbitrator") to estimate the cost to restore the License Area to the Baseline Condition, as set forth above. The Arbitrator shall have at least ten (10) years of experience in the construction industry. The cost of the Arbitrator shall be shared equally between PG&E and Owner. At the option of Owner, Owner may elect to have PG&E cause the completion of the restoration obligations at PG&E's sole cost and expense, or the Owner may elect for PG&E to pay to Owner the amount estimated by the Arbitrator to complete the restoration, due and payable within thirty (30) days following PG&E's receipt of written notice from Owner of such election to complete the restoration..

PG&E shall have the right to self-insure with respect to any of the insurance requirements required under this Letter Agreement. PG&E's self-insurance program is in full force and effect and in compliance with and subject to all the terms, agreements, covenants, conditions and provisions of this Letter Agreement and shall at a minimum include (a) commercial general liability insurance covering PG&E's Activities, with a combined single limit for bodily injury and property damage of not less than $5,000,000 per occurrence and $10,000,000 in the aggregate, (b) Worker's Compensation Insurance (at the minimum required by law) for all persons employed in carrying out activities in the License Area, and (iii) Automobile Liability insurance covering all owned, hired and non-owned vehicles brought onto the License Area, with limits of at least $2,000,000 combined single limit per occurrence for bodily or personal injury or death, for property damage and loss of use thereof.

The Letter Agreement signed on September 14, 2018 and Amendment on October 16, 2018 is hereby terminated. This Letter Agreement supersedes all previous oral and written agreements between and representation by or on behalf of the parties and constitutes the entire agreement of the parties with respect to the subject matter hereof.

If the terms and conditions of this Letter Agreement are acceptable to you, please acknowledge your agreement by signing this letter. Please return a copy to E1DQ@pge.com. A fully-executed copy of this Letter Agreement will be provided to you for your records.

If you have any questions regarding this Letter Agreement, please contact me at 628-219-8228. Thank you for your willingness to work with PG&E during the Camp Fire wildfire emergency response. Your support is truly making a difference in the community.

Sincerely,

*Elouise Del Rosario*
Land Acquisition

I/we hereby accept the foregoing terms and conditions of this Letter Agreement, and acknowledge that I/we am/are duly authorized to execute this Letter Agreement:

PROPERTY OWNER

By: _____
Elmo West, signing on behalf of Tuscan Ridge Associates, LLC

Date: 11-20-18

PACIFIC GAS AND ELECTRIC COMPANY

By: *Aimee Crawford*
~~Emad Gholami~~   Aimee Crawford
~~Supervisor, Land Acquisition~~   Director, Land Management

Date: 11/20/2018

4

Case: 19-30088    Doc# 11066-2    Filed: 08/17/21    Entered: 08/17/21 13:34:35    Page 8 of 9

# Exhibit A
Tuscan Ridge, 3100 Skyway Road, Chico, CA

☐ License Area, approximately 100 Acres Total



Contact:
Mark West, 530-624-4454, westm15@gmail.com
Mo West, 530-520-4529, emowesthill@gmail.com

5