

Sarah Kelly-Kilgore
Direct Dial: (213) 334-7065
SKellyKilgore@GGTrialLaw.com

August 19, 2021

The Honorable Dennis Montali
United States Bankruptcy Court
Northern District of California
450 Golden Gate Ave., 16th Floor
San Francisco, CA 94102

    Re:    **Letter Brief re Fire Victim Trustee's Request for PwC Documents Relating to PG&E's General Rate Case**

Dear Judge Montali:

    As directed by the Court's August 11, 2021 order, the Trustee of the PG&E Fire Victim Trust (the "Trust") submits this letter brief in support of his "request for PwC's deliverables relating to the General Rate Case, meaning PwC's work product generated in connection with that engagement, including advice, recommendations, analysis, and/or reports to PG&E, during the time period 2013 through March 17, 2020." Dkt. No. 11055 at ¶ 3; *see* Dkt. No. 6351-2 at 8 (seeking production of PwC's work product, more broadly, in request No. 3 of the subpoena).

    PricewaterhouseCoopers LLP ("PwC") has objected to producing such documents on the grounds that they "are not relevant to the [Trust's] basic inquiry" and do not "plausibly give rise to a claim that [has been] assigned to the Fire Victim Trust." *See* Letter from D. Alvarez to B. McCabe (Apr. 9, 2020) at 3 (objecting to the relevant request within the Rule 2004 subpoena).[1] Contrary to these assertions, however, work on the General Rate Case ("GRC") falls squarely within the scope of the claims assigned to the Trust, as such work necessarily related to "budget or capital allocations," "wildfire preparedness, prevention, response, or mitigation," and "testing, investigation, analysis, evaluation, or examination of distribution or transmission line towers or components," among other things. *See* Dkt. No. 7712-1 at 3-4 (assigning to the Trust certain "rights, claims, causes of action, and defenses related thereto," including claims against all persons who "provided services, directly or indirectly" in connection with the three above-described categories at subsections (o), (t), and (u)). The Trustee therefore respectfully requests that the Court enter an order (*see* **Exhibit A** (Proposed Order)) compelling PwC's compliance with the Rule 2004 subpoena and, specifically, production of the GRC-related documents.

---

[1] Although PwC's initial objections also asserted that the Rule 2004 subpoena was "vague and ambiguous," Letter from D. Alvarez to B. McCabe, *supra*, at 3, PwC's counsel has not raised that objection during the parties' subsequent meet-and-confer efforts, instead focusing solely on the relevance and breadth objections.

601 S. Figueroa Street, 30th Floor | Los Angeles, California 90017 | Phone (213) 334-7000 | Fax (213) 334-7001 | www.GGTrialLaw.com

Case: 19-30088   Doc# 11109   Filed: 08/19/21   Entered: 08/19/21 16:57:48   Page 1 of 4



The Honorable Dennis Montali
August 19, 2021
Page 2

**I.      PwC's Work on PG&E's General Rate Case Is Discoverable**

The California Public Utility Commission ("CPUC") holds GRC proceedings with investor-owned utilities, including PG&E, in order "to address the costs of operating and maintaining the utility system and the allocation of those costs among customer classes." *See What Is a General Rate Case (GRC)?*, Cal. Pub. Utility Comm'n, https://www.cpuc.ca.gov/industries-and-topics/electrical-energy/electric-rates/general-rate-case (last visited Aug. 18, 2021). GRC proceedings take place over a three-year cycle. *Id.* During the first year, or "Test Year," the CPUC reviews "detailed cost data for various areas of utility operations and approves a budget for the first year." *Id.* That initial budget is then adjusted for inflation and other factors affecting costs over years 2 and 3. *Id.*

During the relevant time period, 2013 through March 2020, PG&E submitted documentation for four different three-year cycles:

1. Cycle for Test Year 2011 (rate-setting for 2011, 2012, and 2013)[2];
2. Cycle for Test Year 2014 (rate-setting for 2014, 2015, and 2016);
3. Cycle for Test Year 2017 (rate-setting for 2017, 2018, and 2019); and
4. Cycle for Test Year 2020 (rate-setting for 2020, 2021, and 2022)[3].

*See Pacific Gas & Electric (PG&E) GRC Proceedings (Phase I)*, Cal. Pub. Utility Comm'n, https://www.cpuc.ca.gov/industries-and-topics/electrical-energy/electric-rates/general-rate-case/pacific-gas-and-electric-grc-proceedings (last visited Aug. 18, 2021). PG&E's extensive filings throughout this time period contained detailed information relating to PG&E's budget and capital allocations, including for asset management and wildfire-mitigation projects, like the Community Wildfire Safety Program ("CWSP"). *See, e.g.*, PG&E, *Pacific Gas & Electric Co.'s (U39M) Spending Accountability Report* (Mar. 30, 2018) at B1-2 (describing a decrease in spending related to specific efforts to " mitigate wildfire risk"), *available at* https://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M215/K186/215186977.PDF; *id.* at B2-23

---

[2] PG&E's final submission for Test Year 2011 was filed on March 29, 2013. *See generally* PG&E, *Pacific Gas and Electric Company's March 29, 2013 Budget Report in Compliance With California Public Utilities Commission Decision 11-05-018* (Mar. 29, 2013), *available at* https://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M064/K667/64667948.PDF.

[3] PG&E's initial submission for Test Year 2020 was filed on December 31, 2018. *See generally* PG&E, *Test Year 2020 General Rate Case Application of Pacific Gas & Electric Co. (U 39 M)* (Dec. 31, 2018) [hereinafter *Test Year 2020 GRC Application*], *available at* https://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M250/K270/250270251.PDF. PG&E's submissions for this cycle continued throughout 2019 and early 2020. *See* Cal. Pub. Utility Comm'n, Case No. A18-12-009, https://apps.cpuc.ca.gov/apex/f?p=401:56:5438607128375::NO:RP,57,RIR:P5_PROCEEDING_SELECT:A1812009 (last visited Aug. 18, 2021).



The Honorable Dennis Montali
August 19, 2021
Page 3

(describing effect of "costs associated with work completed in response to the [2017 North Bay] wildfires"); *Test Year 2020 GRC Application*, *supra*, at 2-3 (detailing PG&E's proposal to "spend approximately $5 billion in expense and capital from 2018 to 2022 on our expanded Community Wildfire Safety Program"). Those figures were used by PG&E for the express purpose of justifying its request to increase rates.

According to PG&E, PwC played "a major role in the rate case preparation." Dkt. No. 10915-4 at 3. PwC's work for PG&E relating to the GRC and, specifically, any advice PwC provided as to how PG&E might justify its proposed rate increases, are clearly encompassed within the rights and causes of action assigned to the Trust. *See* Dkt. No. 7712-1 at 3-4 (assigning to the Trust claims against all persons who "provided services, directly or indirectly, to [PG&E] in connection with budget or capital allocations; . . . wildfire preparedness, prevention, response, or mitigation; [and/or] any testing, investigation, analysis, evaluation, or examination of distribution or transmission line towers or components"). Indeed, any advice relating to the GRC necessarily involved PG&E's budgeting and capital allocation, including its plans for spending on maintaining, inspecting, repairing, or replacing old electric transmission assets on the Caribou-Palermo line. Further, PwC's GRC-related work product may demonstrate whether and to what extent PwC provided advice to PG&E regarding its CWSP, PSPS, or other wildfire-mitigation projects.

In sum, PwC's work on the GRC relates to multiple claims that have been assigned to the Trust, and the Trustee has reason to investigate PwC in relation to those claims.

**II.    PwC's Objections to Producing GRC-Related Work Product Are Meritless**

Despite the broad scope of discovery under Rule 2004, PwC has refused, to date, to produce any documents relating to the GRC. *See* Dkt. No. 10942-1 at 2 ("PwC will not produce contracts for the GRC."); Dkt. No. 10941 at 5 (disputing PwC's obligation to produce documents "involv[ing] the GRC and deliverables for [that and other] projects").[4]  PwC's primary objections are based on relevance and "causation." As it argued in relation to other engagements, PwC seeks to force the Trustee to establish not just that PwC's work on the GRC relates in some way to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate," Fed. R. Bankr. P. 2004(b), but that the specific documents in PwC's possession—which the Trustee has had no opportunity to review—would establish "*causation* of the wildfires at issue." Dkt. No. 10941 at 5 (emphasis in original). In other words, PwC seeks to force the Trustee to establish both relevance and admissibility without the benefit of having reviewed the documents directly responsive to the Rule 2004 subpoena. As the Court has recognized in prior discovery

---

[4] As the Court is aware, PwC must produce a list of all of its contracts with PG&E—other than the contracts PG&E has already produced—no later than September 1, 2021. Dkt. No. 11055 at ¶ 1.a. Once that list has been produced, the Trustee will meet and confer with PwC as to which of those contracts, including any contracts relating to the GRC, must be produced.

Case: 19-30088    Doc# 11109    Filed: 08/19/21    Entered: 08/19/21 16:57:48    Page 3 of 4



The Honorable Dennis Montali
August 19, 2021
Page 4

conferences with the parties, there is no merit to PwC's position, as discovery is not limited to only those documents known to be admissible in some future proceeding. "The scope of discovery is much broader than the admissibility of evidence; a party is entitled to seek any information that might lead to admissible evidence." *In re Roman Cath. Archbishop of Portland in Ore.*, 335 B.R. 815, 842 (Bankr. D. Or. 2005).

PwC also suggested recently that its work product relating to the GRC may be subject to privilege claims by PG&E. *See* Dkt. No. 10915-5 at (asserting that PwC "functioned in a management consulting role, often working on a privileged basis with and at the direction of PG&E's law department"). At the parties' latest discovery conference on August 5, 2021, PwC's counsel reiterated this argument, which is premature and should not prevent PwC from complying with the subpoena by producing non-privileged documents and a privilege log identifying the basis for any specific privilege assertions. The proper procedure for addressing any privilege claims over PwC's GRC-related work product is the same as for documents relating to PwC's other engagements: PG&E can review such documents for privilege before they are produced by PwC. At the same time, PwC should produce any documents not subject to a privilege claim, and prepare and produce a privilege log for any documents that are withheld.

### III. Conclusion

PwC's work product relating to its GRC engagement with PG&E falls well within the broad scope of discovery under Rule 2004, given that such work product relates to the Trustee's investigation of claims assigned to the Trust, as described by the Schedule of Assigned Rights and Causes of Action. PwC should be compelled to produce those documents or provide a privilege log for any specific documents withheld on the basis of privilege. The Trustee therefore respectfully requests that the Court enter an order in the form attached hereto as **Exhibit A**.

Very truly yours,

Sarah Kelly-Kilgore

SKK:CVQ