

Michael D. Kibler
Direct: 310.409.0473
mkibler@kfc.law

11100 Santa Monica Boulevard
Suite 360
Los Angeles, California 90025

Office: 310.409.0400
Fax: 310.409.0401

www.kfc.law

August 19, 2021

Hon. Dennis Montali
U.S. Bankruptcy Judge
United States Bankruptcy Court
Northern District of California
San Francisco Division
450 Golden Gate Avenue
San Francisco, CA 94102

  Re: *In re PG&E Corporation*, Bankruptcy Case No. 19-30088 (DM)

Dear Judge Montali:

  Pursuant to the Court's August 11, 2021 Order, PricewaterhouseCoopers LLP ("PwC") submits this letter brief setting forth its position regarding the request by the trustee of the PG&E Fire Victim Trust (the "Trustee") for PwC deliverables related to the General Rate Case ("GRC"). For the following reasons, the Trustee's request falls far outside the scope of permissible discovery under the Rule 2004 subpoena and therefore should be denied.

### I. INTRODUCTION

  The Trustee's demand should be denied because it seeks information that does not relate in any way to "causation" of the wildfires at issue—how the Trustee himself has defined the scope of the Rule 2004 subpoena.

  PG&E's bankruptcy proceeding deals with the facts and circumstances that ultimately gave rise to the 2015 Butte Fire, the 2017 North Bay Fires, and the 2018 Camp Fire. Contrary to the Trustee's baseless (and factually deficient) claims regarding PwC's involvement in the GRC, PwC did *not* provide any advice or recommendations relating to "plans and budgets for wildfire safety or asset management." Rather, PwC assisted PG&E with the GRC by providing organizational and project management support to assist PG&E with organizing and presenting PG&E's own past data to its regulator. None of PwC's work provided PG&E with future-looking budgetary or planning advice, and, therefore, could not have contributed to causation. The Trustee's assertions to the contrary are without merit.

  Moreover, almost all of PwC's work was conducted on laptops and networks *owned and operated by PG&E*. The PwC professionals who provided organizational assistance with

PG&E's rate case primarily used PG&E email accounts and frequently worked in PG&E's offices. Simply put, any "deliverables" related to the GRC are likely to be in PG&E's files.

## II.  GENERAL RATE CASES, GENERALLY

Regulated by the California Public Utilities Commission (the "Public Utilities Commission"), a general rate case is a proceeding used by public utilities—for example, electricity and gas companies—to present the costs of operating and maintaining a utility system and decide, with a regulator's approval, how those costs should be allocated among customer classes. In a nutshell and for purposes of resolving this discovery dispute, a general rate case is what PG&E had to submit to its regulator, the Public Utilities Commission, every three or four years to set electricity and gas rates for its customers. A general rate case contains information regarding projects and programs that span nearly the entirety of PG&E's operations and management—anything that would bear on costs regulated by the Public Utilities Commission.

## III.  PWC'S INVOLVEMENT WITH PG&E'S GENERAL RATE CASE WAS NOT ADVISORY TO PG&E'S RATES OR BUSINESS STRATEGY IN ANY WAY; IT WAS LIMITED TO ASSISTING WITH THE COLLECTION OF HISTORIC DATA AND DID NOT INVOLVE PROSPECTIVE BUDGETING OR PLANNING

The Trustee seeks documents related to the GRC under the inaccurate assertion that "PwC's work on the GRC for PG&E [related to] plans and budgets for wildfire safety and asset maintenance." (4/30/21 Letter from W. Gross to B. Walsh.) The Trustee believes that these documents will be "highly relevant to PwC's role and responsibility for the circumstances that ultimately gave rise to the 2017 North Bay Fires and the 2018 Camp Fire." (*Id.*) The Trustee is wrong.

The Trustee first mentioned the GRC to PwC on April 30, 2021, when it highlighted the following PG&E summary explaining how PwC assisted with the GRC:

> [PwC is] one of our four Preferred Management Consultant partners with a long and valued relationship at PG&E that includes deep experience, knowledge and expertise across many of our [lines of business]. They have successfully supported us through critical periods and play a major role in the [GRC] preparation.

(4/30/21 Letter from W. Gross to B. Walsh.)[1]  In that letter, the Trustee read into the above summary words that are not there and drew unsupported and incorrect inferences from the words

---

[1] The Trustee listed a series of "projects and programs" in a January 27, 2021 letter from its counsel that the Trustee believes may form the bases for potential claims against PwC. Absent

that are there, inaccurately arguing that PwC's assistance somehow manifested as work "relating . . . to plans and budgets for wildfire safety and asset maintenance." (*Id.*) In doing so, the Trustee mischaracterized the PG&E summary of PwC's GRC work.

To be absolutely clear: *PwC did not advise PG&E on what rates it should charge or seek to charge in the GRC.*[2] Nor did PwC provide *any* forward-looking advice to PG&E with respect to what costs should or should not be used to justify rates to PG&E customers. More specifically, PwC *never* advised PG&E on what plans and budgets for "wildfire safety" should be performed or sought by PG&E. In fact, PwC's role was limited to the collection and organization of historic PG&E data and organizational support to PG&E in its preparation of GRC testimony and work papers. The Trustee's characterization of PwC's involvement in the GRC is just factually wrong. The Trustee's prior counsel apparently understood this as they never pursued any discovery from PwC related to its work on the GRC and the Trustee himself never sought GRC documents from PG&E.

PwC's management and organizational consulting work regarding the GRC involved project coordination and management to assist PG&E by analyzing how accurately PG&E was collecting and reporting its historic costs in the GRC. The management consulting work consisted primarily of meeting with PG&E personnel involved with those costs, gathering existing PG&E supporting data and evidence to match the actual costs against the proposed expected costs in PG&E's own financial plans, and summarizing (or "rolling up") the historic data. The cost information PwC assisted PG&E in collecting and presenting often spanned several PG&E work teams or departments. PwC assisted with coordinating those separate PG&E teams and departments in order to organize an accurate company-wide historic cost snapshot for inclusion in the GRC submission. PwC also would assist PG&E with requests PG&E received from the regulator, the Public Utilities Commission. This assistance might involve tasks like organizing historic data in connection with explanatory testimony or summaries, assisting with PG&E's drafting of data responses, regulatory reports, or regulatory discovery responses, or analyzing for summary and organizational purposes the Public Utilities Commission's resulting regulatory reports for PG&E's consideration. Again, PwC only assisted PG&E with organizing PG&E's own historic data, operating costs, and information in PG&E's own records.

PwC explained the above facts to the Trustee in May 2021 in a good-faith effort to meet and confer and reasonably focus the Trustee's Rule 2004 investigation to matters potentially implicating wildfire causation. (*See* 5/7/21 Letter from B. Walsh to W. Gross ("PwC functioned

---

from this list was any explicit mention of the GRC. (1/27/21 Letter from W. Gross to B. Walsh.) Nor was the GRC referenced in the Trustee's Rule 2004 subpoena. (*Id.*)

[2] PwC understands that such advisory services were provided, if at all, by niche consulting firms or individual contractors.

in a management consulting role, often working on a privileged basis with and at the direction of PG&E's law department, to assist PG&E in gathering data and coordinating PG&E's resources in connection with the GRC. PwC did not advise PG&E on wildfire safety or risk mitigation and, contrary to your letter, PwC did not have any "responsibility for the circumstances that ultimately gave rise" to the 2017 and 2018 wildfires.").) Nevertheless, the Trustee persists in this baseless and unnecessary request for GRC-related documents from PwC.

### IV. ANY DELIVERABLES WERE (OR ARE) LIKELY WITH PG&E, NOT PWC

As explained above, PwC assisted PG&E in collecting and rolling up historic PG&E information. Consequently, the "work product"—if that is even an appropriate description—consists primarily of PG&E documents in Excel or Word format that PwC helped to organize and revise with PG&E. As a result, there is no PwC independent "work product." The Trustee has complained that the PG&E files in his possession contain no GRC deliverables with "PwC branding," but this complaint arises from a fundamental misunderstanding of the nature of the engagements. The engagements were collaborative, with PG&E and PwC jointly developing the outputs based on PG&E's comments, input, feedback, and direction. PG&E did not request or intend that PwC provide substantive input or create independent work product. For example, PwC would assist PG&E in PG&E's drafting of discovery responses (including errata filings) to the Public Utilities Commission to ensure an accurate and complete presentation by PG&E to support the GRC. But the "work product" was a PG&E document that resided in PG&E's, not PwC's, files. PG&E could not produce "PwC-branded" deliverables to the Trustee because they do not exist.

Notably, the overwhelming majority of the work PwC performed was within the environment of PG&E's files. PwC would work directly on PG&E-supplied laptops and online databases owned and controlled by PG&E using PG&E email addresses. PwC consultants often would work directly in PG&E's offices. PwC did not maintain a separate repository of these PG&E documents, electronic or hard copy, as they were not PwC documents. PG&E's GRC documents would be in the (likely sole) possession of PG&E. Moreover, PwC understands that the Trustee has not even requested documents specifically related to the GRC from PG&E. Instead, the Trustee seeks to mis-use the Rule 2004 process to burden non-party PwC by probing areas of its work for PG&E that fall far outside the Trustee's mandate to investigate potential claims related to wildfire causation.

### V. SEARCHING FOR DOCUMENTS REGARDING PWC'S GRC ENGAGEMENT WOULD BE UNDULY BURDENSOME

Given the nature of PwC's role with the GRC, substantive documents relating to the GRC likely would be located with—and under the control and possession of—PG&E, not PwC. Forcing PwC to dig through its files for documents potentially responsive to the Trustee's wildly misinformed request would be an undue burden. As explained above, PwC did not maintain a

separate repository of GRC documents because its work was performed principally using PG&E's systems. PwC would have to search massive volumes of emails and attachments to determine whether there was an occasional GRC-related document in PwC's files. PwC should not be subjected to such an undue burden.

What's more, most of the work that PwC undertook related to the GRC was conducted at the direction of and under the supervision of PG&E counsel, and we understand that PG&E intends to assert privilege over work product and communications related to this work. In addition to searching for and reviewing documents for responsiveness to the Trustee's broad demand, PwC would also need to conduct a privilege review of any documents that might be located and list such documents on a privilege log, thereby adding to the burden and cost associated with this off-the-mark inquiry. The likely outcome of this burdensome and expensive search process would be the assertion of PG&E's privilege over any responsive documents that might be located. This, perhaps, is why the Trustee never sought these documents from PG&E itself.

## VI.   CONCLUSION

PwC respectfully requests that the Court issue an order denying the Trustee's request for PwC's deliverables related to the GRC because such documents are not within the scope of permissible discovery under the Rule 2004 subpoena.

Respectfully,

Michael D. Kibler