

To whom it may concern, namely United States Bankruptcy Court, Northern District of California- San Francisco Division and all attorneys in Chapter 11 case No 19-30088 (DM) (Lead Case) (Jointly Administered):

Tom Vontz was the managing partner of the family farm known as Vontz & Sons, that consisted of his wife Janice, and their sons Jeffery, Michael, Douglas and Keith.

Tom moved his family to Buttonwillow, California in 1970 to work at PG&E's electrical transmission switching center called Midway. His job was to safely write, check, perform switching on high voltage equipment, and direct other PG&E employees to safely do the same.

Midway has jurisdiction over something like 100 square miles of remote transmission substations with their associated alarms. They were logged into Midway's station log as a chronological list of events, in real time, as they occurred, before anyone knew what had happened. There was no attempt to conceal responsibility of events in the Midway jurisdictional area.

Midway is the most powerful substation in the PG&E system. Most powerful substations in the PG&E system have two 500,000 volt lines in, and two 500,000 volt lines out. Each line is bonded and can carry about 2000 amps. Electrical power is voltage x amps x the power factor (the ratio of induction which causes the current to lag behind the sine wave of the voltage in the coils of electrical motors to the capacitance reactance which causes the current to lead the sine wave of the voltage in a circuit). The most profitable circuit to PG&E is when the power factor is one, or when the capacitance reactance is equal to the induction reactance. Lightly loaded lines and capacitors provide the capacitance reactance and current running through the windings of electrical motors, causes the current to lag the voltage in alternating current electrical systems. Synchronous condensers have the ability to provide both capacitance reactance and inductive reactance to the PG&E system because they are very large winding motors when acting as an inductor, yet be excited to receive leading current when acting as a capacitor. The synchronous condensers are so large they required PG&E to provide fresh water from deep wells to cool their bearings. After the water cooled the bearings it was discharged

1

into the Buena Vista Water Storage District canal as waste water to PG&E, but usable water for farming purposes to Vontz & Sons.

Vontz & Sons was able to use this condenser waste water for their farming purposes.

Some time in 1997 or 1998, PG&E decided to install a bank of reactors with coils and do away with the three synchronous condensers and the need for the water cooled bearings and shut down the water supply required for farming.

Vontz & Sons did however continue to lease the one remaining cottage on the property. The weeds in sections 13 and 14 of the PG&E property previously farmed by Vontz & Sons for about 20 years through 5 year lease agreements, and developed 35 farmable acres into something like 150 farmable acres.

Tom Vontz was told by Gerald Rodriguez (PG&E land agent) that the lowest bid for discing the weeds was $23,000 and that neither Don Hicks of the sub station department, nor Wayne Dunn of the distribution line department, who had a pole yard at Midway, wanted that cost in their budgets.

The weeds in sections 13 and 14 were taller than the tractor, dried up from the previous years' growth, presented a clear and present fire hazard, and were unsightly fields of weeds.

Tom Vontz and Gerald Rodriguez then negotiated a five year lease agreement. PG&E wanted Vontz to disc the weeds immediately without waiting for a written lease agreement to be drafted and signed.

It should have taken only a few days to draft the lease agreement since it was just a copy of several other lease agreements with date changes. PG&E did, however, require a certified copy of their dictated insurance requirements, and to be notified prior to any changes. The insurance policy would be $1,000,000, pay first, hold PG&E not responsible except for the willful misconduct of its employees. That insurance policy would be

2

delivered to PG&E before any work began. It was required in Exhibit C and so it was done.

I don't have the insurance policy in my possession, but I do have the policy number and what it covered.

Gerald Rodriguez provided a false copy, one he manufactured so he could sell my leased property to the County of Kern for an unimproved price, provided that the County of Kern took possession through their power to seize property by imminent domain, also holding PG&E harmless in the transaction.

The certified copy of Vontz's required insurance policy is FPK7850174186. It was provided by Fallgatter/Rhodes Insurance Services at 1701 G Street, Bakersfield, California 93301-4320. Phone #661-324-2424. Fax #661-324-2323. License #OD94542.

In the policy change request form dated 12/12/2003, the insured Vontz & Sons of 343 West 3rd Street in Buttonwillow, California 93206, that location #00004 of sections 13, 14 TWP. 295 RGE. 23 E, Kern, Buttonwillow, California was deleted from the policy and that PG&E, PO Box 319, Bakersfield, California 93302 was removed as also insured. A copy of that cancellation of policy change is attached.

That policy, certified to be the original required insurance policy prior to the beginning of the discing of the weeds, is the verbal lease 5 year agreement made in good faith by the Vontz family and in bad faith by PG&E and/or its employees with the intent of early termination of the 5 year verbal lease agreement. A fabricated Exhibit A was manufactured changing a lease to a license.

In Exhibit "C", the first line states "Lessee shall maintain the following insurance coverage." The true Exhibits A, B, & C describing the "Premises & Insurance requirements are all type written in capital letters. The forged Exhibit A is hand written and is the PG&E house where the Vontz family lived for 20 years with no weeds, and leased to Tom Vontz on a separate lease agreements. All water was supplied by a domestic well- not condenser cooling water, also at separate provided dates.

3

I. **Worker's Compensation and Employer's Liability**

    "A........"

    "B......."

II. **Commercial General Liability**

    "A........"

    "B......."

    "C. Coverage shall; a) By "Additional Insured" endorsement add as insured PG&E, its directors, officers, agents and employees with respect to any liability arising out of the premises being used by a licensee hereunder; b) Be endorsed to specify that licensee's insurance is primary and that any insurance or self insurance maintained by PG&E shall not contribute with it.

III. **Business Auto**

    A. "...Any Auto"

    B. "The limit shall not be less than $1,000,000 each occurrence for bodily injury, property damage, and personal injury. If...

IV. **Additional Insurance Provisions**

    A. Before commencing performance hereof, licensee shall furnish PG&E with certificates of insurance and endorsements of all required insurance for licensee. (Not possible since work was all done before becoming a licensee).

    B. The documentation shall state that coverage shall not be cancelled except after thirty (30) days prior written notice be given to PG&E.

    C. The documentation must be signed by a person authorized by that insurer to bind coverage on its behalf and shall be submitted to:

      Pacific Gas and Electric Company

      1918 H Street

      Bakersfield CA 93301

      Attn: Gerald Rodriguez

4

A copy of all such insurance documents shall be sent to PG&E's contract negotiator and/or contract administrator.

D. PG&E may inspect the original policies or require complete certified copies at any time.

Now let's assume you're negotiating a 5 year weed control contract on approximately 150 acres of dried out weeds, 6 to 8 feet tall, and un-disced for more than a year. Would you be satisfied with just discing the weeds nearest the substation fence or would you want all of the weeds disced in section 13 and section 14 for the same price? At the time of the negotiation there was no license agreement with anyone, nor would there be, for over one year. There was just a 5 year verbal lease agreement.

The license agreement forced on Vontz & Sons family farm, on a take it or leave it basis, after Vontz & Sons spent thousands of man hours and family treasure completing a five year weed control contract, to be fenced out and off their planted acres before realizing the fruits of their labor and cash investment.

PG&E conspired with the County of Kern to make Vontz & Sons the sole provider of the state mandate to close the Buttonwillow burn dump.

No one would sign the license agreement unless forced. It was written with the intent of early termination of the contract by PG&E without liability. In term 8 of the license agreement entitled "8. Indemnity", states that PG&E will not be liable for any loss or damages... "excepting only such loss, damage, expense, or liability as may be caused by the sole negligence or willful misconduct of PG&E".

It is willful misconduct on the part of PG&E employees to change a 5 year lease to a shorter term license and then cancelling that agreement on 30 day short notice (very unlawful). Even unlawful in a license agreement.

The legal department of PG&E informed me to harvest my alfalfa crop and get off the property because I believe that some palm trees were removed from the property

5

because I told them that the palm trees were weeds. The Ag Commissioners office said that a cotton plant in a cotton field, growing in an un-harvestable position, is a weed.

A certified copy of my original insurance coverage may be obtained from Pacific Gas & Electric Company, Insurance Department B 24H, Post Office Box 770000, San Francisco, CA 94177.

A copy of all such insurance documents shall be sent to PG&E's land agent as specified under notices in the body of this license, or lease in Exhibit C Item IV, Additional Insurance Provisions.

The first certified copy of my insurance policy could not have stated that it was a license since the word license never existed until PG&E finally got around to writing the license agreement. This was after all the weeds were double disced, the land surveyed, laser leveled, deep ripped, planted to alfalfa, added gypsum to amend the soil, and still no written lease agreement. My question is why? It's called bad faith negotiations on the part of PG&E and they should be severely punished.

As a final example of the hatred some PG&E employees had of Vontz & Sons, Tom Vontz had moved a cottage from its foundation, and was using a backhoe to remove the old foundation when approximately 15 men, some environmentalists, and some PG&E employees, lined up in the area looking for endangered species nests to have me sued, as they (PG&E employees) had been a few months earlier, just north of the 230 KV and 15 KV yards where they were installing reactors to replace the synchronous condensers. PG&E knew they were the ones who disturbed the kangaroo rat habitat, but wanted to blame Vontz & Sons.

Ray Bonner was renting the cottage from me in what Gerald Rodriguez is trying to make believe, or falsify, that cottage lease in Exhibit B is the real Exhibit A of PG&E's property full of weeds, but is instead the grassy lawn of the cottage where my family grew up.

If truth and justice have any bearing on this case, it can easily be found in the required certified copy of insurance available to you at 1918 H Street in Bakersfield California, or

6

also at PG&E's insurance department B 24 H, Post Office Box 77000, San Francisco. Vontz & Sons cannot get that information, but it is true and in existence.

Fact: License Agreement only pertains to PG&E's property in section 13, TWP, 29S RGE, 23E Kern, Buttonwillow leaving lease agreement in Section 14 of TWP, 29S RGE, 23E, Kern, Buttonwillow unchanged.

7

# Policy Memo

Fallgatter Rhodes Insurance Services
5100 California Ave. Suite 110

08/13/1999

Bakersfield          CA          93309

First Request

| **COMPANY** | **INSURED** |
|---|---|
| Allied Insurance Company<br>2301 Circadian Way<br>Santa Rosa, CA 95402-0849<br><br>ATTN: Dan Catterson | Vontz & Sons 343 West 3rd Street<br><br><br>Buttonwillow          CA          93206 |

| **REGARDING** | **POLICY NUMBER** |
|---|---|
| Amending Loc #1 Mortgagee & Deleting Loc# 2 | FMP 7800174186<br>Policy change |

| **CHANGE EFFECTIVE DATE** | **POLICY PERIOD** |
|---|---|
| 07/16/1999 | 12/16/1998 - 12/16/1999 |

**COMMENTS**

Effective 07/16/99, Please amend the Mortgagee as follows:

From: Nationsbank

To:
Bank of America Mortgage
Its successors ans/or assigns ATIMA
P.O. BOX 1675
Coraopolis, PA  15108

Loan # 0010155844


Effective 06/29/99, Please delete L
ocation 2 - 248 West 4th Street.  As the insured
had sold the property effective that date.  Escrow closed on 06/29/99.

Should you have any questions, please feel free to call

| **RECIPIENT** | **NOTE** |
|---|---|
| **ATTN:** Allied Insurance Company<br>2301 Circadian Way<br><br>Santa Rosa, CA 95402-0849<br><br>ATTN: Dan Catterson | |

Celestine Henry

Fallgatter Rhodes Insurance Services



1634 N
4-14- 19 89
ORD FORD

TO T&E
Farmers Co-op of T&M Farms
FOR mike dant Barley Dry
Naber-Reno
Cotton Pop
Cottage Lease

DEPOSITS
370 | 03
1486 | 00
900 | 00
16 | 07
2772 | 10

TOTAL
THIS CHECK    1800 | 00
BALANCE

---

1635
4-15- 19 89

TO Randy Escalante
FOR tractor

DEPOSITS

TOTAL
THIS CHECK    5830 | 00
BALANCE

---

1636
4-15- 19 89

TO Cash
FOR

DEPOSITS

TOTAL
THIS CHECK    100 | 00
BALANCE



FALLGATTER
R H O D E S
INSURANCE SERVICES

June 3, 2021

Mr. Vontz,

Thank You for contacting us about this situation. Because of how long ago this occurred, our records have been destroyed and Allied Insurance has done the same. However Mr. Vontz, we have an entry dated 12/12/2003 that PG & E was to be removed as an additional insured from the Allied Insurance policy and to delete location #4 which was Section 13 and 14 TWP. 29S RGE. 23E, Kern Buttonwillow, CA (see attached documents). This shows that PG & E was on the policy at that time. We have no record of how long they were on the policy.

We hope this is of help to You. Please do not hesitate to contact us should You have any additional questions.

Sincerely,

John Fallgatter

A MEMBER OF UNITED VALLEY INSURANCE SERVICES
1701 G Street • Bakersfield, CA 93301-4320 • (661) 324-2424 • Fax: (661) 324-2323 • LICENSE #0D94342

1/9/2004

Vontz & Sons
343 West 3rd Street
Buttonwillow, CA, 93206

Re:     Package
        Policy # FPK 7850174186

Dear Tom:

Enclosed you will find your copy of the endorsement to:

Delete location 4 & 6. Delete PG&E as additional insured

This policy change results in a return premium of $632.00 which will be added to
your company payment plan.

We appreciate your business and as your customer service representative I encourage
you to call with any questions or concerns you may have.

Sincerely,


Brenda Lopez
Client Services


Enclosure

# Policy Change Request

Fallgatter Rhodes Insurance Services, Inc.
9100 Ming Avenue, Suite 201

Bakersfield          CA          933111329

12/12/2003

First Request

| **COMPANY** | **INSURED** |
|---|---|
| Allied Insurance Company<br>3820 109th Street<br>Dept. 5628 | Vontz & Sons 343 West 3rd Street |
| Des Moines          IA          503915628 | Buttonwillow          CA          93206 |

| **REGARDING** | **POLICY NUMBER** |
|---|---|
| Del Loc 4 & 6 and Del AI's | FPK 7850174186<br>Del Loc 4 &6 and Del AI's |

| **CHANGE EFFECTIVE DATE** | **POLICY PERIOD** |
|---|---|
| 12/12/2003 | 12/12/2003 - 12/12/2004 |

## COMMENTS

Applicant Information

1)   Delete   Loc #00004:   Sec 13, 14 TWP. 29S RGE. 23E, Kern, Buttonwillow, CA

2)   Delete   Loc #00006:   300 Acres Sec. 19, 20 TWP. 25S RGE. 21E, Kern,
Buttonwillow

Also remove PG&E, PO BOX 319, Bakersfield, CA 93302 (Re:L
oc 4)
and De Maria Enterprise LTD., 534 Pacific Ave, San Fransisco, CA 94133 (Re: Loc 6)   as Additional Insureds.

Thanks,

Brenda Lopez

---

**RECIPIENT**                                                    NOTE

**ATTN:** Allied Insurance Company
3820 109th Street

Dept. 5628
Des Moines, IA 50391-5628
Des Moines          IA          503915628

Brenda Lopez                                          Fallgatter Rhodes Insurance Services, Inc.

# GENERAL SERVICES DIVISION
## PROPERTY MANAGEMENT
### MEMORANDUM



WILLIAM A. WILBANKS
Assistant County Administrative Officer
For General Services

**TO:**  Daphne Washington, Director
Waste Management Department
Attn: Glen Rains

**FROM:**  Tom Goldsmith *Tom G*
Real Property Agent

**PHONE:**  868-3072
**FAX:**  868-3100

March 20, 2001

Buttonwillow landfill: Question regarding current farmer seen by WMD on County land (APN's 101-060-02, 03, and 09) purchased from Pacific Gas & Electric.

I presume the person someone from your office saw farming was Mr. Tom Vontz or one of his employees. If you think it was someone else, let me know.

I spoke to Doug Snider of PG&E. He provided the attached current License Agreement between PG&E and Thomas E. Vontz. Mr. Snider said this license only allows Mr Vontz to farm in Section 13. The land the County acquired from PG&E is in Section 14 and shown in yellow on the attached Assessors map.

The license gives no right for Mr. Vontz to farm or leave equipment on the PG&E land recently acquired by the County. I will get back to you on how we should proceed regarding this apparent trespass.

TG:/[File # T- 2b.3a]

COPIES PROVIDED TO:

ASSESSORS MAP NO. 101-06.
COUNTY OF KERN

Note: This map is for assessment purposes only. It is not to be construed as portraying legal ownership or divisions of land for purposes of zoning or subdivision law.

BK.101

101-06

E1/2 OF SEC. 14 T. 29 S. R. 23 E.

SCHOOL DIST. 62-1
62-9
62-13

1"=400'

101-06

BK.102

SULLIVAN RD. RD. NO. 563

BUTTONWILLOW

MILLER AVE.

RD. NO. 152

MAIN

BUTTONWILLOW TOWNSITE

4TH ST.
3RD ST.
2ND ST.
1ST ST.
STATE HWY.
S. P. R. R.

LUX AVE.
MIRASOL AVE.
RT. 58

DRAIN
PM 680

6    3.29 AC.
10   8.53 AC.
2    18.08 AC.
3    8.47 AC.
9    2.07 AC.
11
5    55.93 AC.
7    50.25 AC.
20
07
21
02
08

## LICENSE AGREEMENT

..... consideration ..... the receipt of which is hereby acknowledged by PG&E, hereby grants to
THOMAS E. VONTZ, hereinafter called Licensee, permission to farm field and row crops, to use
PG&E's existing cottage and garage, and to use PG&E's existing water well and associated
appurtenances all within the real property of PG&E, hereinafter called "the premises," shown on
Exhibits "A" & "B," attached hereto and made a part hereof.

This permission is given subject to the following terms and conditions:

1. **ALLOWED USE OF PREMISES:** For the purpose of farming field and row crops, and to use,
   occupy and maintain a PG&E cottage and garage, and to use PG&E's existing water wells and
   associated appurtenances within the premises.

2. **TERM OF USE:** The term of this permission shall be for a period of 5 years running from and
   including November 1, 1998, up to and including October 31, 2003.

3. **FEES:** Licensee shall pay to PG&E at the address set forth herein, or at such other place as PG&E
   shall designate in writing, as the fee for the use of the premises, the sum of $2,000.00 due and
   payable on November 1 of each year during the term of this license.

4. **TERMINATION:** Licensee acknowledges that the premises were acquired for, and are devoted to,
   public utility purposes by PG&E. Licensee also acknowledges that PG&E reserves the right to
   revoke this license agreement with or without cause and without liability to Licensee either upon its
   own motion or under the provisions of General Order No. 69-C of the Public Utilities Commission
   of the State of California. Licensee further acknowledges that PG&E's right to revoke this license
   agreement shall not be affected by any improvements which Licensee has made to the premises
   regardless of the nature or extent of those improvements.

   Upon the expiration or earlier termination of this permission, Licensee, at its sole expense, shall
   remove all of Licensee's personal property or improvements and restore the premises as nearly as
   possible to the condition that existed prior to its entry upon the premises. In the event Licensee fails
   to remove its personal property or fails to restore the premises, PG&E may elect to remove
   Licensee's personal property and effect such removal or restoration as necessary and recover the
   costs and expenses therefor from Licensee.

5. **NO ACQUIRED RIGHTS:** Licensee's use of the premises hereunder shall not ripen into any title,
   or right in and to the premises, and Licensee shall not make any claim of right or title, nor resist or
   assail PG&E's title, to the premises.

6. **CONDITION OF PREMISES:** Licensee acknowledges that there may be a presence of hazardous
   wastes, asbestos, polychlorinated biphenyls (PCB), special nuclear or byproduct material, radon
   gas, formaldehyde, lead based paint, other lead contamination, fuel or chemical storage tanks,
   electric and magnetic fields or other substances, material, products or conditions on the premises,
   hereinafter referred to as "potential environmental hazards." Licensee accepts the premises as is,
   but is strongly

1

P.G. & E. CO.
COPY

advised by PG&E to consider, if it has not already done so, the condition and suitability of all aspects of the premises and all matters affecting its suitability for the uses specifically granted herein, including, but not limited to, the potential environmental hazards listed herein.

7. **LICENSEE'S CONDUCT ON PREMISES:** Licensee shall:

    A) use the premises at its sole risk and expense;

    B) comply with all local, state, and federal laws and regulations including, but not limited to, those laws, whether existing or new, which relate to the use, handling, treatment, or disposal of toxic or hazardous substances or relating to the control of rodents, other vermin, or noxious weeds on the premises;

    (C) not in any way interfere or permit any interference with PG&E's use of the premises for its public utility purposes.

    (D) allow access to PG&E's facilities at all times, and shall not store immovable equipment and/or vehicles within the premises;

    (E) ground all metal fences to PG&E specifications, and shall provide gates in all fences so as to maintain heavy equipment access to PG&E's facilities;

    F) not store propane tanks on equipment or within vehicles within the premises;

    G) accept the responsibility of repairing and/or replacing the water wells and associated appurtenances should they fail;

    H) accept the responsibility of weed control within the premises.

8. **INDEMNITY:** Licensee shall indemnify PG&E, its officers, agents and employees against all loss, damage, expense and liability resulting from injury to or death of persons, including, but not limited to, employees of PG&E or Licensee, or injury to property, including, but not limited to, property of Licensee or PG&E, arising out of or in any way connected with the use of the premises including the exposure to electric and magnetic fields and any loss, damage, expense or liability caused or contributed to by the negligence, whether active or passive, of PG&E, excepting only such loss, damage, expense or liability as may be caused by the sole negligence or willful misconduct of PG&E. In the event this indemnity is not enforceable, Licensee shall indemnify PG&E to the maximum extent allowed by law.

9. **INSURANCE:** Licensee shall maintain in effect during the term of this license insurance as set forth on Exhibit "C," attached hereto and made a part hereof.

10. **TAXES:** In addition to any fees set forth in 3. FEES, hereinabove, Licensee shall pay any assessments levied against PG&E by the city, county, or state for any of Licensee's personal property or improvements installed on the premises.

2

11. **NOTICES:** All notices required herein shall be given in writing and delivered personally, or sent by facsimile transmission, certified mail (return receipt requested) of the United States Postal Service, or nationally recognized overnight courier service and addressed as follows:

PG&E: PACIFIC GAS AND ELECTRIC COMPANY
1918 H Street
Bakersfield, CA 93301
Attn: Gerard J. Rodriguez, Land Agent
Tel (805) 398-5933

LICENSEE: THOMAS E. VONTZ
343 W. 3rd Street
Buttonwillow, CA 93206
Tel (805) 764-5648

12. **NO ASSIGNMENT:** This agreement is personal to Licensee and is not assignable in whole or in part.

13. **PRIOR LEASES:** This agreement supersedes any prior leases, licenses or permits between PG&E and Licensee respecting the premises, and any such leases, licenses or permits are hereby terminated.

**THIS AGREEMENT** is made by and between the parties hereto this 5th day of January 19___

LICENSEE                                   PACIFIC GAS AND ELECTRIC COMPANY

By _Thomas E. Vontz_                       By _Lu de Silva_
Thomas E. Vontz                               Lu de Silva, Director
                                              Land Rights and Resource Management

Area 4
Kern Division
T.29S., R.23E., M.D.B.& M.
Section 13
S2 of SE4
Plat No. 29234
SBE 135-15-032P

3



62-3330 Rev. 5/77
Right of Way Map.

SAN JOAQUIN VALLEY REGION
SBE 135-15-028.F
ACCOUNT NO. 100
SW OF SE4 - SEC. 13

MIDWAY

9

LIMITS OF INGRESS
AND EGRESS

10'

20.5' x 14.5' GARAGE
(PG&E BLDG. #5058)

30' x 35' COTTAGE
(PG&E BLDG. #5051)

→ Vontz family home
for about 16 years

purchased from GE
while reconductoring
(2) 210 KV lines to
Morro Bay,
No farm ground &
No weeds.

PROPERTY
Part of exhibit "B"

SUBSTATION

PARCEL

TENANT BUILDING IMPROVEMENT

E

EXIST. ROAD (QUINN AVE. ABANDONED)
(FOR INGRESS AND EGRESS PURPOSES)

532'±

PARCEL

WASCO WAY

SE COR. OF SEC. 13

Its "B"

→ TO BUTTONWILLOW

EXIST. FENCE

EXIST. FENCE

1390'±

STATE HIGHWAY 58

Unless otherwise shown
all courses extend to or
along boundaries of lines

CITY, RANCHO, SUBDIVISION, ETC.

EXHIBIT "A"

| | | DESCRIPTION | AUTH. BY | CH. F& | SCALE | DATE |
|---|---|---|---|---|---|---|
| | | | | NA | NONE | SEP. 23, 1988 |

| | | SECTION | TOWNSHIP | RANGE | MERIDIAN |
|---|---|---|---|---|---|
| | | 13 | 29 SOUTH | 23 EAST | M.D. |

| CHG | DATE | DESCRIPTION | AUTH. BY | CH. F& | COUNTY OF KERN | |
|---|---|---|---|---|---|---|
| | | ~LEASE MAP~ | PG&E | | KERN DIVISION | S.P. 621 |

DR. BY: | CH. BY:
JL-157
AUTHORIZATION | DRAWING NO. | CHG.

When this was written, the house
was no longer there, but was sold
to Vontz and remodeled.



**KERN COUNTY WASTE MANAGEMENT DEPARTMENT**

Daphne H. Washington, Director
2700 "M" Street, Suite 500
Bakersfield, CA 93301
(805) 862-8900
(800) 552-KERN (option 6)
Fax: (805) 862-8901
http://www.co.kern.ca.us/wmd/wmd.htm

November 24, 1998

Board of Supervisors
Kern County Administrative Center
1115 Truxtun Avenue
Bakersfield, CA 93301

Dear Members of the Board of Supervisors:

RE:     Sole Source Purchase, Cover Dirt (S.D. #4)

FUNDING:     $100,000; Budgeted; Discretionary

The Waste Management Department (WMD) is seeking approval of a sole source purchase of cover dirt from Mr. Thomas E. Vontz. The cover dirt will be for use at an existing burn dump located in Buttonwillow.

The California Integrated Waste Management Board requires burn dump closures comply with applicable sections of Division 30 of the Public Resources Code and Title 14 California Code of Regulations. This site has not been remediated, therefore, Waste Management pays an annual permit fee of $1,280 for quarterly inspections. Once cover material is placed on the site, and the site is fenced, the annual permit fee will be reduced to $320.

Previous low bid contractor was awarded a contract to deliver cover dirt to the Buttonwillow Landfill site at $6.20 per cubic yard for recovery, transport and delivery of cover dirt. Mr. Thomas E. Vontz quoted a price of $2.75 per cubic yard for recovery, transport and immediate delivery of cover dirt. From past cover dirt purchasing experience, WMD and the Purchasing Agent concur there is no other "vendor" who would offer such a low per cubic yard price.

Mr. Vontz has a license agreement with PG&E to farm the PG&E property at Midway Substation in Buttonwillow. PG&E granted discretionary permission to Mr. Vontz to "level the property and dispose of the dirt" per his sole discretion.

The Department will purchase not more than 36,363 cubic yards of dirt measured in place before and after at a total cost not to exceed $100,000. Funds have been budgeted to complete the purchase.

IT IS, THEREFORE, RECOMMENDED that your Board approve the request for sole source purchase of cover dirt from Mr. Thomas E. Vontz and authorize the Purchasing Agent to issue a Purchase Order in the amount of $100,000.

Sincerely,

Daphne H Washington

Daphne H. Washington
Director

DHW:JGG:DRS:js
I:\BOARD\Nov24-DRS-RJM.js
cc:     Ed Gonzales, Purchasing
        Mr. Thomas E. Vontz

F

*Winner of local, state and national awards for innovation and efficiency.*

---

*[Handwritten annotations:]*

*Mr. Vontz never had a license agreement with PG&E in 1998 this letter proves Bad faith Negotiation on the Part of PG&E. Also Proves PG&E conspired to defraud Vontz & Sons with the County of Kern.*

*This letter is Proof of a criminal conspiricity to defraud the Vontz family out of the their 25 year investment in developing PG&E property they did Not want into valuable farm property they also did Not want and offered to the County of Kern for a small fraction of its Value if taken by imment domain which is also*

Tom Ventz
468 Milo Ave
Buttonwillow, Calif. 93206

U S Bankruptcy Court
450 Golden Gate Ave
Box 36099
San Francisco, Calif.

RECEIVED
AUG 3 0 2021
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

9/1/02