ROLNICK KRAMER SADIGHI LLP
Lawrence M. Rolnick (*pro hac vice forthcoming*)
lrolnick@rksllp.com
Marc B. Kramer (*pro hac vice forthcoming*)
mkramer@rksllp.com
Michael J. Hampson (*pro hac vice forthcoming*)
mhampson@rksllp.com
Richard A. Bodnar (*pro hac vice*)
rbodnar@rksllp.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 597-2800
Facsimile: (212) 597-2801

ST. JAMES LAW, P.C.
Michael St. James, CSB No. 95653
22 Battery Street, Suite 810
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

*Attorneys for the PGIM FI Claimants*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>     Debtors.<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>Chapter 11<br><br>**THE PGIM FI CLAIMANTS' RESPONSE AND OPPOSITION TO REORGANIZED DEBTORS' ELEVENTH SECURITIES CLAIMS OMNIBUS OBJECTION (CLAIMS BARRED BY THE STATUTE OF REPOSE)**<br><br>**Hearing Information:**<br>Date:     September 14, 2021<br>Time:    10:00 a.m. (Pacific Time)<br>Place:   (Telephone Appearances Only)<br>          United States Bankruptcy Court<br>          Courtroom 17, 16th Floor<br>          San Francisco, CA 94102 |

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ........................................................................................................................... 3

    I.    The Securities Class Action ...................................................................................... 3

    II.  Omnibus Objection Procedures ............................................................................... 6

    III. The Eleventh Objection ........................................................................................... 8

ARGUMENT ................................................................................................................................. 8

    I.    The Eleventh Objection Is Founded on an Erroneous Premise that the Securities Class Action Did Not Bring Exchange Act Claims on Behalf of Debt Securities, and Mischaracterizes the PGIM FI Claimants' Proofs of Claim ............................................. 8

    II.  The Eleventh Objection Is Procedurally Improper Because It Fails to Provide Notice to All Impacted Claimants and Involves More than 250 Claims in Violation of the Securities Claims Procedures Order .................................................................................. 12

RESERVATION OF RIGHTS ................................................................................................... 14

CONCLUSION ........................................................................................................................... 14

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page

**Cases**

*Am. Pipe & Constr. Co. v. Utah*,
  414 U. S. 538 (1974)......................................................................................................... 9, 10

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
  137 S. Ct. 2042 (2017) ............................................................................................................ 4

*Crown, Cork & Seal Co. v. Parker*,
  462 U.S. 345 (1983).......................................................................................................... 9, 10

*Fir Tree Cap. Opportunity Master Fund, LP v. Am. Realty Cap. Props., Inc.*,
  2017 WL 1080880 (S.D.N.Y. Dec. 14, 2017) ............................................................... 9

*Goldberg v. Rome McGuigan, P.C.*,
  2021 WL 1570858 (C.D. Cal. Mar. 4, 2021) ................................................................... 9

*In re Issuer Plaintiff IPO Antitrust Litig.*,
  2002 WL 31132906 (S.D.N.Y. Sept. 25, 2002)......................................................... 9, 11

**Statutes**

15 U.S.C. § 77m..................................................................................................................... 9

15 U.S.C. § 78c ................................................................................................................... 10

28 U.S.C. § 1658 .................................................................................................................. 9

**Rules**

Fed. R. Bankr. P. 3007..................................................................................................... 13, 14

**Treatises**

Kenneth M. Misken & Daniel F. Blanks, *Amended Bankruptcy Rule 3007: Omnificent Omnibus Objections or Objectionable Annoyances?*, AM. BANKR. INST. J., 38, 39 (2007) ................... 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

Individual Claimants Gibraltar Universal Life Reinsurance Co Plaz Trust 1-GULREAZTR1; Horizon Healthcare of New Jersey, Inc. - HBC2; Horizon Healthcare Services, Inc. – HBC; Dryden Arizona Reinsurance Term Company - Tax Liabilities Account-DARTTAX; Lucent Technologies Inc. Master Pension Trust - PORTL; PRU Credit Income Fund 2017, a Series Trust of Multi Manager Global Investment Trust - CORPMATPB7; PRUCO Life Insurance Company of New Jersey – PLNJ; Prudential Arizona Reinsurance Captive Company - PLAZ TRUST 1-PLAZTR1; The Prudential Insurance Company of America - Individual Life Long Term Core Public Bonds – ILLONG; The Prudential Insurance Company of America - PICA/POJ IRELP Trust – IRELPTR; The Prudential Insurance Company of America - Congo PICA Single Client Buy-Out SA-GAR PRD-CONGA; The Prudential Insurance Company Of America - Long Duration Corporate Bond Account - TOLILDC; and Verizon Transition Account – VZTRANS (the "**PGIM FI Claimants**"),[1] as creditors in the chapter 11 bankruptcy cases (the "**Chapter 11 Cases**") of the above-captioned debtors (as reorganized pursuant to the Plan, the "**Reorganized Debtors**"), respectfully submit this opposition and response to the Reorganized Debtors' Eleventh Securities Claims Omnibus Objection (the "**Eleventh Objection**") [Docket No. 11014] seeking to expunge certain debt-based securities proofs of claim as barred by the statute of repose under Section 11 of the Securities Act of 1933 (the "**Securities Act**"). Contemporaneously herewith, the PGIM FI Claimants submit the Declaration of Richard A. Bodnar, dated August 31, 2021, in support of this opposition and response ("**Bodnar Decl.**").

## INTRODUCTION

The Eleventh Objection is both substantively meritless and procedurally improper. It fails on the merits because it is based on a fundamentally flawed premise. Specifically, the Eleventh Objection erroneously assumes that the class representative for the putative class did not assert claims under the Securities Exchange Act of 1934 (the "**Exchange Act**") on behalf of purchasers of publicly traded PG&E debt securities. However, the operative class action complaint clearly asserts Exchange Act claims on behalf of *all PG&E publicly traded securities*, including debt

---

[1] A list of the applicable claim numbers and other pertinent information for each of the PGIM FI Claimants is attached hereto as Appendix A.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

securities, not just on behalf of purchasers of PG&E common stock. Indeed, the class representative for the class's Exchange Act claims certified that its claims were based on its own purchases of **both stock and bonds**. In addition, the PGIM FI Claimants separately filed proofs of claim in the Chapter 11 Cases asserting claims under "the securities laws," which include the Exchange Act, with respect to debt securities. Exchange Act claims are governed by a five-year statute of repose, not a three-year statute of repose. Thus, even if the PGIM FI Claimants' Securities Act claims are barred by the three-year statute of repose applicable to those claims, their Exchange Act claims are not time-barred because the Petition was filed within five years of the misrepresentations that give rise to those claims. Reorganized Debtors' attempt to extinguish the PGIM FI Claimants' proofs of claim based on purchases of debt securities that were offered more than three years prior to the filing of the Petition therefore fails.

In addition to lacking merit, the Eleventh Objection is procedurally improper because it violates this Court's Order governing omnibus objections. The Eleventh Objection seeks to eliminate claims based on any purchases of PG&E debt securities offered prior to January 29, 2016. However, the only proofs of claim listed in the exhibit to the Eleventh Objection are those of claimants who purchased PG&E debt securities offered prior to January 29, 2016, but did not purchase any other PG&E securities. The Eleventh Objection fails to list proofs of claim filed by claimants who purchased PG&E debt securities issued prior to January 29, 2016, but also purchased other actionable PG&E securities (such as PG&E common stock or PG&E debt offered after January 29, 2016). As a result, there are potentially hundreds, if not thousands, of impacted proofs of claim that are not listed in the Eleventh Objection. Thus, although the Eleventh Objection purports to challenge only 217 proofs of claim, if the Court were to grant the objection, it could eliminate portions of the claims of potentially thousands of claimants who have not been notified of the Eleventh Objection or had an opportunity to respond. The Court should not permit the Reorganized Debtors to collaterally attack potentially thousands of claims without those claimants having been notified of the objection and given an opportunity to be heard.

**BACKGROUND**

I.      **The Securities Class Action**

The devastating California wildfires in 2017 led to the filing of securities class actions against PG&E Corporation and the Pacific Gas and Electric Company (collectively, "**PG&E**") and their executives in 2018.  These actions alleged that the defendants had made material misrepresentations about the adequacy of PG&E's wildfire safety measures and about PG&E's compliance with applicable laws and regulations.  According to the complaints, these materially false and misleading statements caused the price of PG&E's publicly traded securities – including stocks, bonds, and options – to be artificially inflated.  When the truth about PG&E's responsibility for the wildfires began to be revealed to the market, the prices of those securities fell, and investors suffered significant investment losses.

On September 10, 2018, the United States Court for the Northern District of California (the "**District Court**") issued an Order consolidating the securities class actions into a single action, and appointed the Public Employees Retirement Association of New Mexico ("**PERA**") as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B). (Bodnar Decl. Ex. A.)  In its motion seeking appointment as Lead Plaintiff, PERA asserted that it had purchased PG&E stock and bonds during the relevant period, and had suffered significant losses on those securities. (*Id.* Ex. B at 8; *id.* Ex. C.)  Specifically, PERA certified that it purchased PG&E common stock and several PG&E bonds, and suffered almost $4 million in aggregate losses on those securities (the "**PERA Lead Plaintiff Certification**"). (*Id.* Exs. C-D.)

On November 9, 2018, PERA filed a Consolidated Class Action Complaint with the District Court ("**CCAC**"). (Bodnar Decl. Ex. E.)  PERA explained in the CCAC that it was bringing the action not just on behalf of purchasers of PG&E common stock, but rather "on behalf of a class of all persons and entities that purchased or otherwise acquired *PG&E publicly traded securities* during the period from April 29, 2015 through June 8, 2018, inclusive." (*Id.* ¶ 11 (emphasis added).)[2]  PERA alleged that it purchased securities of PG&E at artificially inflated

_____

[2] PG&E common stock is listed on the New York Stock Exchange ("**NYSE**") and several PG&E debt securities trade on the NYSE. (Bodnar Decl. Ex. J ¶¶ 464, 688; *see also id.* Ex. F.)

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

prices during the relevant period "[a]s set forth in the Certification accompanying the motion for appointment as Lead Plaintiff" (i.e., the PERA Lead Plaintiff Certification). (*Id.* ¶ 16.) As noted above, the PERA Lead Plaintiff Certification included purchases of not just PG&E common stock, but also of three distinct PG&E debt securities. (Bodnar Decl. Ex. C.)

PERA's claims in the CCAC were brought under Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 (the "**Exchange Act**"). (Bodnar Decl. Ex. E ¶¶ 11-12, 207-31.) The CCAC did not assert any claims under the Securities Act. Indeed, one of the bonds purchased by PERA that is the subject of its Exchange Act claims could not have been the subject of a Securities Act claim because the security was issued in 2004, fourteen years before the action was commenced. *See Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017) (claims under Section 11 of Securities Act cannot be brought more three years after securities were issued). Thus, as explained in more detail below, this bond was the subject of an Exchange Act claim only, and not a Securities Act claim.

Shortly after PERA filed the CCAC, it sought the defendants' consent to file an amended complaint that would extend the end of the class period to account for subsequent events, including the November 2018 Camp Fire in Northern California. (*See* Bodnar Decl. Ex. G at 2.) The parties thus entered into a stipulation allowing PERA to amend the CCAC. (*Id.* at 3.) On December 14, 2018, PERA filed a Second Amended Consolidated Class Action Complaint ("**SAC**") with the District Court. The SAC extended the end of the class period from June 8, 2018, to November 15, 2018, but did not otherwise change the definition of the class. (*Id.* Ex. H ¶ 25.) The SAC continued to incorporate PERA's stock and debt purchases set forth in the PERA Lead Plaintiff Certification. (*Id.* ¶ 31.) And, like the CCAC, the SAC asserted claims under Sections 10(b) and 20(a) of the Exchange Act only, and no claims under the Securities Act. (*Id.* ¶¶ 25, 31, 388-412.) Thus, the SAC – just as the CCAC had done – asserted Exchange Act claims on behalf of purchasers of all PG&E securities, including debt securities, and not just on behalf of purchasers of PG&E common stock.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

On February 22, 2019, York County (on behalf of the County of York Retirement Fund), City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund (collectively, the "**Securities Act Plaintiffs**") filed a securities class action against certain of PG&E's directors and officers, as well as against certain investment banks that underwrote some of PG&E's debt offerings, asserting claims under the Securities Act. (Bodnar Decl. Ex. I at 2-3.) PERA, the Securities Act Plaintiffs, and the defendants to the two class actions agreed to consolidation of the actions, with PERA filing an amended complaint to add the Securities Act claims asserted by the Securities Act Plaintiffs. (*Id.* at 3-4.)

On May 28, 2019, PERA and the Securities Act Plaintiffs filed a Third Amended Consolidated Class Action Complaint ("**TAC**"). The TAC retained PERA's Exchange Act claims from the SAC, but also included Securities Act claims brought by the Securities Act Plaintiffs. Thus, the class definition for the Exchange Act claims remained the same as stated in the SAC: "This is a federal securities class action brought pursuant to the Securities Exchange Act of 1934 (the 'Exchange Act') on behalf of a class of all persons and entities who, during the period from April 29, 2015 through November 15, 2018, inclusive (the 'Class Period'), purchased or otherwise acquired publicly traded PG&E securities and were damaged thereby." (Bodnar Decl. Ex. J ¶ 11.) As with the CCAC and the SAC, PERA was the only class representative for the Exchange Act claims in the TAC. (*Id.* ¶ 41.)

Rather than incorporate the PERA Lead Plaintiff Certification by reference, the TAC included a new certification detailing its purchases ("**TAC Certification**"). PERA's TAC Certification included all of the PG&E common stock and bond purchases certified in the PERA Lead Plaintiff Certification, but also included information about four additional PG&E debt securities. (Bodnar Decl. Ex. K.) Thus, like the CCAC and the SAC, the TAC asserted Exchange Act claims on behalf of purchasers of all PG&E securities, including debt securities

The new claims added to the TAC were the Securities Act claims asserted by the Securities Act Plaintiffs. Specifically, the Securities Act Plaintiffs brought claims pursuant to Section 11 and Section 15 of the Securities Act against certain of PG&E's directors and officers, as well as certain

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

underwriters of PG&E note offerings, on behalf of investors that purchased PG&E debt securities traceable to the following offerings: PG&E's March 2016 public offering of senior notes; PG&E's December 2016 public offering of senior notes; PG&E's March 2017 public offering of senior notes; and PG&E's April 2018 public offering of senior notes (collectively, the "**Section 11 Note Offerings**"). (*Id.* Ex. J ¶¶ 502, 693-706.) Unlike the Exchange Act class represented by PERA, which included purchasers of any PG&E publicly traded securities from April 29, 2015 through November 15, 2018, the Securities Act subclass was limited to those investors who had purchased PG&E senior notes traceable to one of the Section 11 Note Offerings. (*Id.* ¶ 496 & n.149.) As a result of the addition of the Securities Act Plaintiffs to the TAC, certain purchasers of PG&E debt securities were deemed to have brought Securities Act claims in addition to Exchange Act claims. Purchases of PG&E debt securities that were not traceable to any of the Section 11 Note Offerings would continue to have Exchange Act claims only.

## II. Omnibus Objection Procedures

On January 29, 2019, PG&E filed for bankruptcy. On February 27, 2020, this Court denied PERA and the Securities Act Plaintiffs' motion to file a proof of claim on behalf of all members of the putative class [Dkt. Nos. 5042, 5943]. Instead, the Court set April 16, 2020 (the "**Extended Securities Bar Date**"), as the deadline for securities claimants to file individual proofs of claim, subject to an approved form (the "**Rescission or Damage Proof of Claim Form**"). The Rescission or Damage Proof of Claim Form encouraged investors that "purchased or acquired [PG&E]'s publicly traded debt and/or equity securities . . . from April 29, 2015 through November 15, 2018" to submit an individualized claim. (Bodnar Decl. Ex. L at 1.)

On April 7, 2020, each of the PGIM FI Claimants filed Recission or Damages Proof of Claim Forms. (*See* App'x A (listing claim numbers and filing dates).) Each of the PGIM FI Claimants' completed Recission or Damages Proof of Claim Forms asserted claims under ***the securities laws*** and section 510(b) of the Bankruptcy Code, and not just under the Securities Act. (*See* Bodnar Decl. Ex. L ("Check the box below to indicate whether you are asserting a claim for rescission or damages under the securities laws and section 510(b) of the Bankruptcy Code, arising

from the purchase and/or acquisition of the Debtors' publicly traded debt and/or equity securities during the period from April 29, 2015 through November 15, 2018.").)

On September 1, 2020, PG&E moved the Court to approve alternative dispute resolution and related procedures for resolving the individual securities claims [Dkt. No. 8964]. Among other things, PG&E requested that the Court adopt procedures permitting it to file omnibus objections seeking to dismiss certain individual securities claims. PG&E assured the Court that the procedures it was proposing for omnibus objections would "ensure that all Subordinated Securities Claimants are given sufficient information to navigate the claims objection process effectively and otherwise preserve and protect the rights they are afforded under the Bankruptcy Code and Bankruptcy Rules." (*Id.* at 12.) Further, PG&E requested that the Court increase the limit on the number of claims to which an omnibus objection could apply from 100 to 250 claims. (*Id.* at 20.) On January 25, 2021, this Court entered an *Order Approving Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* (the "**Securities Claims Procedures Order**") [Dkt. No. 10015].

The Securities Claims Procedures Order included certain due process protections to prevent PG&E from abusing the omnibus objection process and expunging valid claims without the impacted claimants being afforded reasonable notice and an opportunity to be heard. Specifically, each omnibus objection is supposed to provide a list of all claimants whose proofs of claim are subject to the omnibus objection [Dkt. No. 10015-1 at 30 ¶ E.i]. Moreover, PG&E must mail to "[e]ach Subordinated Securities Claimant whose claim is subject to an Omnibus Objection" and their counsel a copy of the omnibus objection forty-two days prior to the hearing date. (*Id.* at 31 ¶ F.) The omnibus objection must (i) describe the nature of the objection, (ii) encourage the recipient to read the objection and inform the recipient that its rights might be affected by the objection, (iii) identify the response date, (iv) attach a copy of the Securities Claims Procedures Order, and (v) warn the claimant that failure to file a response could result in the Court sustaining the objection. (*Id.*)

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

In addition to these reasonable notice requirements, the Securities Claims Procedures Order limits the number of claims subject to a single omnibus objection from the 100-claim limit reflected in Bankruptcy Rule 3007(e)(6): "The Reorganized Debtors may object to no more than 250 Subordinated Securities Claims per Omnibus Objection" [Dkt. No. 10015-1 at 29 ¶ B].

### III. The Eleventh Objection

On August 3, 2021, PG&E filed its Eleventh Objection [Dkt. No. 11014]. The Eleventh Objection purports to seek expungement of 217 proofs of claim, including the proofs of claim filed by the PGIM FI Claimants, on the grounds that these proofs of claim "are based exclusively on transactions in debt securities that were offered more than three years before the Petition Date." (*Id.* at 4.)

## ARGUMENT

### I. The Eleventh Objection Is Founded on an Erroneous Premise that the Securities Class Action Did Not Bring Exchange Act Claims on Behalf of Debt Securities, and Mischaracterizes the PGIM FI Claimants' Proofs of Claim

The Eleventh Objection is based on a fundamentally flawed premise, i.e., that PERA's Exchange Act claims encompass PG&E common stock only, and that purchases of PG&E debt securities were covered only by the Securities Act Plaintiffs' Securities Act claims. However, PERA clearly asserted Exchange Act claims on behalf of purchasers of ***all PG&E publicly traded securities***, including debt securities, not just on behalf of purchasers of PG&E common stock. Indeed, PERA itself asserted Exchange Act claims based on its own purchases of both stock and bonds. Furthermore, the PGIM FI Claimants all filed Rescission or Damage Proofs of Claim in which they asserted claims under "the securities laws," including the Exchange Act, and not just under the Securities Act. Because these Exchange Act claims are governed by a five-year statute of repose, and not the Securities Act's shorter three-year statute of repose, PG&E's attempt to extinguish proofs of claims based on purchases of debt securities that were offered more than three years prior to the filing of the Petition fails. The PGIM FI Claimants have valid claims under Section 10(b) and Section 20(a) of the Exchange Act, even though they may not have claims under Section 11 and Section 15 of the Securities Act. Therefore, the Eleventh Objection must be denied.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

Claims brought under the Exchange Act are subject to a longer statute of repose than claims brought under the Securities Act. Securities fraud claims under the Exchange Act are subject to a two-year statute of limitations and a five-year statute of repose. *See* 28 U.S.C. § 1658(b). Violations of the Securities Act are subject to one-year statute of limitations and a three-year statute of repose. *See* 15 U.S.C. § 77m. For purposes of the claims brought under Section 10(b) and Section 20(a) of the Exchange Act, the five-year statute of repose begins to run when the misrepresentations are made. *See Goldberg v. Rome McGuigan, P.C.*, 2021 WL 1570858, at *6-7 (C.D. Cal. Mar. 4, 2021). For purposes of the claims brought under Section 11 and Section 15 of the Securities Act, the three-year statute of repose begins to run when the securities are offered. *See* 15 U.S.C. § 77m.

The Eleventh Objection incorrectly presupposes that all purchases of PG&E debt securities are subject to the Securities Act's three-year statute of repose, rather than the Exchange Act's five-year statute of repose. The PGIM FI Claimants did not limit their proofs of claim to Securities Act claims. In completing the Recission or Damage Proof of Claim Form, the PGIM FI Claimants expressly stated that they were asserting claims "under the securities laws," including the Exchange Act, and not just under the Securities Act. (*See* Bodnar Decl. Ex. L.) Thus, it is clear that PG&E's strained interpretation of the PGIM FI Claimants' claims does not withstand scrutiny.

Moreover, in the TAC, PERA asserted Exchange Act claims on behalf of all purchasers of PG&E publicly traded securities during the period from April 29, 2015 through November 15, 2018. (Bodnar Decl. Ex. J ¶ 11.) The inquiry for determining the scope of a class action begins with the definition of the class in the complaint. *See Fir Tree Cap. Opportunity Master Fund, LP v. Am. Realty Cap. Props., Inc.*, 2017 WL 1080880, at *3 (S.D.N.Y. Dec. 14, 2017); *In re Issuer Plaintiff IPO Antitrust Litig.*, 2002 WL 31132906, at *3 (S.D.N.Y. Sept. 25, 2002) (holding that class definition in class action complaint "is the ultimate determinant" of whether plaintiffs were members of class). That is because the "class complaint 'notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1    potential plaintiffs who may participate in the judgment.'"  *Crown, Cork & Seal Co. v. Parker*,

2    462 U.S. 345, 353 (1983) (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 555 (1974)).

3            There can be no doubt that PERA's definition of the class of Exchange Act claimants in

4    the TAC encompasses debt securities as well as common stock.  The class definition for the

5    Exchange Act claims asserted in the TAC was as follows:  "This is a federal securities class action

6    brought pursuant to the Securities Exchange Act of 1934 (the 'Exchange Act') on behalf of a class

7    of all persons and entities who, during the period from April 29, 2015 through November 15, 2018,

8    inclusive (the 'Class Period'), purchased or otherwise acquired publicly traded PG&E securities

9    and were damaged thereby."  (Bodnar Decl. Ex. J ¶ 11.)  Publicly traded PG&E securities are not

10   limited to the common stock of PG&E.  The Exchange Act defines the term "security" to include

11   instruments other than common stock.  Specifically, the Exchange Act's definition of "security"

12   includes all forms of debt securities:  "The term 'security' means any ***note***, stock, treasury stock,

13   security future, security-based swap, ***bond***, ***debenture*** . . . ."  15 U.S.C. § 78c(a)(10) (emphasis

14   added).  And PG&E bonds and notes, like its stock, were publicly traded, including on the NYSE.

15   (Bodnar Decl. Ex. J ¶ 688; *see also id.* Ex. F.)  As such, PG&E's assertion that the class brought

16   only Securities Act claims, and not Exchange Act claims, on behalf of purchasers of PG&E debt

17   securities is specious.

18           If there were any doubt that PERA asserted Exchange Act claims on behalf of purchasers

19   of PG&E debt securities – and there is not – that doubt is removed by a review of PERA's own

20   trading data.  PERA certified that its Exchange Act claims were based on its purchases of various

21   PG&E debt securities as well as PG&E common stock.  (Bodnar Decl. Exs. C-D (certifying

22   purchases of PG&E stock and three different PG&E bonds); *id.* Ex. E ¶ 16 (incorporating by

23   reference purchases from PERA Lead Plaintiff Certification); *id.* Ex. H ¶ 31 (same); *id.* Ex. K

24   (certifying purchases of PG&E stock and seven different PG&E bonds).)  Thus, even if there were

25   ambiguity in the class definition of the Exchange Act claims class – which there is not – the Lead

26   Plaintiff appointed by the District Court unambiguously asserted Exchange Act claims with respect

27   to debt securities.

28

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1    PG&E's erroneous position that the Securities Act statute of repose applies to all PG&E

2    debt claims is based on a mischaracterization of the TAC, and ignores entirely the language of the

3    Recission or Damage Proof of Claim Form.  Like the CCAC and the SAC, the TAC asserted

4    Exchange Act claims on behalf of purchasers of all PG&E securities, including debt securities.

5    (Bodnar Decl. Ex. J ¶¶ 11, 41; *id.* Ex. K.)  Although the TAC also included a subclass of

6    bondholders who asserted claims under the Securities Act based on purchases of PG&E senior

7    notes traceable to one of the Section 11 Note Offerings (*id.* Ex. J ¶ 687), it did not erase the

8    Exchange Act claims for all publicly traded PG&E debt securities.  Under the TAC, purchasers of

9    publicly traded PG&E debt securities between April 29, 2015 and November 15, 2018 have

10   Exchange Act claims, and a subclass of those purchasers – those who purchased PG&E debt

11   securities traceable to the Section 11 Note Offerings – have both Exchange Act claims *and*

12   Securities Act claims.

13       The only purported support that PG&E cites for its misguided position is statements made

14   by PERA in a brief submitted to this Court, a statement made by PERA's counsel in a hearing

15   before this Court, and a motion to dismiss filed in the class action [Dkt. No. 11014 at 6-7].  PG&E's

16   reliance on these documents is misplaced because they have no bearing on what claims were pled

17   in the TAC.  The only source for that information is the TAC itself, which, as explained above,

18   unambiguously asserts Exchange Act claims on behalf of purchasers of PG&E debt securities.  *See*

19   *In re Issuer Plaintiff IPO Antitrust Litig.*, 2002 WL 31132906, at *3 ("[T]he complaint itself is the

20   ultimate determinant of the putative class . . . .").  Moreover, what PERA has stated in the Chapter

21   11 Cases has no bearing on the scope of the PGIM FI Claimants' claims as set forth in their

22   individual Recission or Damage Proof of Claim Forms.

23       In any event, PG&E mischaracterizes the documents on which it relies.  The litigation

24   document it cites is a motion to dismiss only the subclass of Securities Act claims, not PERA's

25   Exchange Act claims, so of course it refers only to the Securities Act.  (Sec. Litig. Docket No.

26   155.)  Likewise, the statement in PERA's brief in opposition to the First Securities Omnibus

27   Objection refers only to the Securities Act subclass; it is not a reference to PERA's Exchange Act

28

claims [Dkt. No. 10524], at 4 ("Reorganized Debtors acknowledge that there are claims other than those under Section 10(b), including claims under the Securities Act (and its Section 11 cause of action *for certain debt securities*), arising out of PG&E's materially false and misleading statements made in registration statements and other offering documents." (emphasis added)).  So too with the cited portion of the hearing transcript – counsel was merely describing the Securities Act Plaintiffs.  None of these statements undermines the class definition for the Exchange Act claims set forth in the TAC, and PG&E's attempt to distort that definition fails.

### II. The Eleventh Objection Is Procedurally Improper Because It Fails to Provide Notice to All Impacted Claimants and Involves More than 250 Claims in Violation of the Securities Claims Procedures Order

In addition to being substantively meritless, the Eleventh Objection is procedurally improper.  *First*, PG&E has not provided notice of the Eleventh Objection to all claimants whose proofs of claims are subject to the omnibus objection.  The Securities Claims Procedures Order includes due process protections to prevent the expungement of valid claims without the impacted claimants being afforded reasonable notice and an opportunity to be heard.  Specifically, each omnibus objection is supposed to provide a list of all claimants whose proofs of claim are subject to the omnibus objection [Dkt. No. 10015-1 at 30 ¶ E.i].  Moreover, PG&E must mail to "[e]ach Subordinated Securities Claimant whose claim is subject to an Omnibus Objection" and their counsel a copy of the omnibus objection forty-two days prior to the hearing date.  (*Id.* at 31 ¶ F.)  The omnibus objection must (i) describe the nature of the objection, (ii) encourage the recipient to read the objection and inform the recipient that its rights might be affected by the objection, (iii) identify the response date, (iv) attach a copy of the Securities Claims Procedures Order, and (v) warn the claimant that failure to file a response could result in the Court sustaining the objection.  (*Id.*); *see also* Fed. R. Bankr. P. 3007(e) (providing notice procedures for omnibus objections).  The notice provisions governing omnibus objections are "intended to ensure that the due process rights of claimants are protected.  Indeed, many claimants who have been subjected to an omnibus objection . . . have expressed their frustration and criticism for being forced to play a game of 'Where's Waldo' with the objecting party."  Kenneth M. Misken & Daniel F. Blanks, *Amended*

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

*Bankruptcy Rule 3007: Omnificent Omnibus Objections or Objectionable Annoyances?*, AM. BANKR. INST. J., 38, 39 (2007).

The 217 proofs of claim listed in Exhibit 1 to the Eleventh Objection are not the only claims that would be negatively impacted if the Eleventh Objection were granted. While the Eleventh Objection purports to seek expungement of only 217 proofs of claim on the grounds that these proofs of claim "are based exclusively on transactions in debt securities that were offered more than three years before the Petition Date" [Dkt. No. 11014 at 4], in actuality, the Eleventh Objection applies to many more proofs of claim than listed by PG&E in its omnibus objection. If granted by the Court, the arguments set forth in the Eleventh Objection would materially and negatively impair proofs of claims that include both (i) purchases of pre-January 29, 2016 debt securities and (ii) other purchases of PG&E securities, such as common stock or debt offered after January 29, 2016 (the "**Non-Noticed Debt Claimants**"). For example, if a securities claimant submitted a proof of claim asserting $100 in damages based on its purchases of PG&E common stock and $300 million of damages based on its purchases of PG&E debt offered prior to January 29, 2016, the granting of the Eleventh Objection would eliminate $300 million, or 99.9% of that claimant's $300,000,100 in damages, ***without that claimant ever having received notice of and an opportunity to be heard concerning the Eleventh Objection***. Because these Non-Noticed Debt Claimants were not specifically named as being subject to the Eleventh Objection, as required by Section I.E of the Securities Omnibus Objection Procedures, and were not sent the notice required by Section F of the Securities Omnibus Objection Procedures (or Bankruptcy Rule 3007(e)), the Eleventh Objection violates the Securities Claims Procedures Order and is procedurally improper.

*Second*, and relatedly, the Eleventh Objection violates Section I.B of the Securities Omnibus Objection Procedures. Although omnibus objections are permissible, Bankruptcy Rule 3007(e)(6) limits the number of claims subject to an omnibus objection in order to protect the due process rights of claimants. Fed. R. Bankr. P. 3007, 2007 Advisory Committee's Note, para. 3 ("[T]he rule includes restrictions on the use of these omnibus objections to ensure the protection of the due process rights of the claimants."). Claimants to an omnibus objection must be provided

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

notice of the objection. The Securities Omnibus Objection Procedures expanded the number of claims impacted by an omnibus objection above 100, but capped the number of claims at 250. Thus, an omnibus objection "may object to no more than 250 Subordinated Securities Claims per Omnibus Objection" [Dkt. No. 10015-1 at 29]. Although the Eleventh Objection purports to apply to only 217 proofs of claim, there are potentially hundreds, if not thousands, of Non-Noticed Debt Claimants. The Eleventh Objection is a collateral attack on the proofs of claim of the Non-Noticed Debt Claimants. As such, the Eleventh Objection impacts more than 250 proofs of claim, and violates the Securities Claims Procedures Order.

## RESERVATION OF RIGHTS

The PGIM FI Claimants reserve all of their respective rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Response in accordance with applicable rules.

## CONCLUSION

For the foregoing reasons, the PGIM FI Claimants respectfully request that the Court deny the Eleventh Objection.

Dated: August 31, 2021

ROLNICK KRAMER SADIGHI LLP

By: _____
RICHARD A. BODNAR

*Attorneys for the PGIM FI Claimants*

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

## APPENDIX A

| CREDITOR | CLAIM NO. | DATE | AMOUNT OF CLAIM | NOTICE ADDRESS |
|---|---|---|---|---|
| Gibraltar Universal Life Reinsurance Co PLAZ Trust 1-GULREAZTR1 | 100936 | 4/14/2020 | Unliquidated | Richard A. Bodnar<br>Rolnick Kramer Sadighi LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>212.597.2800<br>rbodnar@rksllp.com |
| Horizon Healthcare of New Jersey, Inc. - HBC2 | 100967 | 4/14/2020 | Unliquidated | Richard A. Bodnar<br>Rolnick Kramer Sadighi LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>212.597.2800<br>rbodnar@rksllp.com |
| Horizon Healthcare Services, Inc. - HBC | 100969 | 4/14/2020 | Unliquidated | Richard A. Bodnar<br>Rolnick Kramer Sadighi LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>212.597.2800<br>rbodnar@rksllp.com |
| Dryden Arizona Reinsurance Term Company - Tax Liabilities Account-DARTTAX | 101026 | 4/14/2020 | Unliquidated | Richard A. Bodnar<br>Rolnick Kramer Sadighi LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>212.597.2800<br>rbodnar@rksllp.com |
| Lucent Technologies Inc. Master Pension Trust-PORTL | 101123 | 4/14/2020 | Unliquidated | Richard A. Bodnar<br>Rolnick Kramer Sadighi LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>212.597.2800<br>rbodnar@rksllp.com |

| CREDITOR | CLAIM NO. | DATE | AMOUNT OF CLAIM | NOTICE ADDRESS |
|---|---|---|---|---|
| PRU Credit Income Fund 2017, a Series Trust of Multi Manager Global Investment Trust-CORPMATPB7 | 100945 | 4/14/2020 | Unliquidated | Richard A. Bodnar<br>Rolnick Kramer Sadighi LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>212.597.2800<br>rbodnar@rksllp.com |
| Pruco Life Insurance Company of New Jersey - PLNJ | 101239 | 4/14/2020 | Unliquidated | Richard A. Bodnar<br>Rolnick Kramer Sadighi LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>212.597.2800<br>rbodnar@rksllp.com |
| Prudential Arizona Reinsurance Captive Company - PLAZ Trust 1-PLAZTR1 | 101149 | 4/14/2020 | Unliquidated | Richard A. Bodnar<br>Rolnick Kramer Sadighi LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>212.597.2800<br>rbodnar@rksllp.com |
| The Prudential Insurance Company of America - Individual Life Long Term Core Public Bonds - ILLONG | 101008 | 4/14/2020 | Unliquidated | Richard A. Bodnar<br>Rolnick Kramer Sadighi LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>212.597.2800<br>rbodnar@rksllp.com |
| The Prudential Insurance Company of America - PICA/POJ IRELP Trust - IRELPTR | 101067 | 4/14/2020 | Unliquidated | Richard A. Bodnar<br>Rolnick Kramer Sadighi LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>212.597.2800<br>rbodnar@rksllp.com |

| CREDITOR | CLAIM NO. | DATE | AMOUNT OF CLAIM | NOTICE ADDRESS |
|---|---|---|---|---|
| The Prudential Insurance Company of America- Congo PICA Single Client Buy-Out SA-GAR PRD-CONGA | 100941 | 4/14/2020 | Unliquidated | Richard A. Bodnar<br>Rolnick Kramer Sadighi LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>212.597.2800<br>rbodnar@rksllp.com |
| The Prudential Insurance Company of America- Long Duration Corporate Bond Account- TOLILDC | 101322 | 4/14/2020 | Unliquidated | Richard A. Bodnar<br>Rolnick Kramer Sadighi LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>212.597.2800<br>rbodnar@rksllp.com |
| Verizon Transition Account - VZTRANS | 101427 | 4/14/2020 | Unliquidated | Richard A. Bodnar<br>Rolnick Kramer Sadighi LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>212.597.2800<br>rbodnar@rksllp.com |