WEIL, GOTSHAL & MANGES LLP
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for the Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Reorganized Debtors.<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**REORGANIZED DEBTORS' ONE HUNDRED EIGHTH OMNIBUS OBJECTION TO CLAIMS (PURPA CLAIMS)**<br><br>**Response Deadline:**<br>**October 5, 2021, 4:00 p.m. (PT)**<br><br>**Hearing Information If Timely Response Made:**<br>Date: October 19, 2021<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Tele/Videoconference Appearances Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

**TO:** (A) THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE; (B) THE OFFICE OF THE UNITED STATES TRUSTEE; (C) THE AFFECTED CLAIMANTS; AND (D) OTHER PARTIES ENTITLED TO NOTICE:

Pacific Gas and Electric Company (the "**Utility**"),[1] hereby submits this One Hundred Eighth omnibus objection (the "**Objection**") to the claims identified in the column headed "Claims to Be Disallowed and Expunged" on **Exhibit 1**[2] annexed hereto, solely on the specific grounds asserted in this Objection. Each Claimant seeks the same relief for "damages" pursuant to section 210 of the Public Utility Regulatory Policies Act, Pub. L. No. 95-617, 92 Stat. 3117 ("**PURPA**"), which provides the basis for addressing the Claims through an omnibus objection.

## I. PRELIMINARY STATEMENT

The Claimants seek "damages" based on contracts with the Utility *that have never existed*. Each Claimant attached to their Claim the *Complaint for Damages and Injunctive Relief* (the "**Adversary Complaint**") from the Winding Creek adversary proceeding, which this Court dismissed in March 2020. *See* Compl. [AP Dkt. No. 1].[3] The Northern District of California recently upheld this Court's dismissal of the Claimants' claim for injunctive relief. *See* Appellate Dkt. No. 17. The Claimants agreed not to appeal this Court's decision on the issue of damages because the parties stipulated that such claims would be addressed exclusively through the claims reconciliation process in these Chapter 11 Cases.

The time has come for this Court to end the Claimants' prolonged quest for damages under section 210 of PURPA because the Utility simply never entered into any contract with the Claimants.

---

[1] The Utility, together with PG&E Corporation, are collectively, the "**Debtors**," or as reorganized pursuant to the *Order Confirming Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020*, Case No. 19-30088 [Dkt. No. 8053], the "**Reorganized Debtors**" in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

[2] *See* Proofs of Claim Nos. 78665, 78580, 78304, 78560, 70884, 78620, and 76149 (collectively, the "**Claims**"), filed by Winding Creek Solar LLC, Foothill Solar LLC, Hollister Solar LLC, Kettlemen Solar LLC, Vintner Solar LLC, Bear Creek Solar LLC, and Allco Renewable Energy Limited, respectively (collectively, the "**Claimants**").

[3] Unless otherwise indicated, all emphasis is added and internal citations and quotations are omitted. "AP Dkt. No. [●]" refers to docket entries in the adversary proceeding *Winding Creek Solar LLC, et al. v. Pac. Gas & Elec. Co.*, Adv. Pro. No. 19-03049 (Bankr. N.D. Cal.) (DM) (the "**Adversary Proceeding**"). "Appellate Dkt. No. [●]" refers to docket entries in the proceeding *Winding Creek Solar LLC v. Pac. Gas & Elect. Co.*, Case No. 20-cv-02602-HSG (N.D. Cal.) (the "**Appellate Proceeding**").

Setting aside the fact that damages are a remedy—and **not** a cause of action—there is no basis for the Claimants to sue for breach of contract (or any other legally enforceable obligation ("**LEO**")). At least one Circuit Court—the First Circuit—declined to award damages alleged under the same theory the Claimants advance here. This Court should do the same and disallow and expunge the Claims.

## II. JURISDICTION

This Court has jurisdiction over the Objection pursuant to 28 U.S.C. §§ 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested are section 502 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 3003 and 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## III. BACKGROUND

### A. PURPA, FERC, and the CPUC

By enacting PURPA in 1978, Congress subjected wholesale energy sales to comprehensive regulatory authority. *See* Compl. ¶¶ 11–13 [AP Dkt. No. 1]. Specifically, Congress directed the Federal Energy Regulatory Commission ("**FERC**") to adopt rules that would "encourage" traditional electric utilities to purchase power from, and sell power to, alternative energy providers. 16 U.S.C. § 824a-3(a). Pursuant to this congressional mandate, FERC adopted regulations requiring electric utilities to buy Qualifying Facility ("**QF**")-produced power. *See* 18 C.F.R. §§ 292.303(a), 292.304. Congress further directed each state's regulatory agency, like the California Public Utility Commission ("**CPUC**") here, to implement FERC's regulations. *See* 16 U.S.C. § 824a-3(f).

FERC's regulations require each state's respective regulatory agency to adopt programs that, at a minimum, require electric utilities to purchase all QF-produced power (the "must take obligation") at the same rate the utility would otherwise have paid for that amount of energy from another, traditional energy source (*i.e.*, the "avoided-cost rate").[4] *See* 18 C.F.R. §§ 292.303(a), 292.304.

---

[4] FERC defines "incremental cost" or "avoided cost" as "the incremental costs to an electric utility of electric energy or capacity or both which, but for the purchase from the qualifying facility or qualifying facilities, such utility would generate or purchase from another source." RFJN, Ex. A (OIR) at 3. All

B. **The CPUC's PURPA Programs**

Under PURPA, in California, the CPUC established three programs: (i) the "feed-in tariff" ("**AB1969 FIT**"), which terminated in July 2013; (ii) the Renewable Market Adjusting Tariff ("**ReMAT**"), which replaced the AB1969 FIT in 2013 (until the Claimants invalidated it in 2017); and (iii) the standard-offer contract (the "**Standard Contract**"). Only ReMAT is relevant here.

1. *ReMAT*

According to the Ninth Circuit, ReMAT was a competitive, market-based approach to establishing rates for energy from alternative sources. *See Winding Creek Solar LLC v. Peterman*, 932 F.3d 861, 863 (9th Cir. 2019). QFs, such as the Claimants, were assigned to a queue "on a first-come-first-served basis," and every two months the Utility conducted what was "essentially an auction," where QFs at the front of the queue could apply for contracts at a pre-defined price set by the CPUC. *Id.* QFs that did not apply—or whose applications were not among the top of the queue—remained in line until the next auction. *See id.*

Two ReMAT features ultimately rendered it non-compliant with FERC's regulations. *First*, ReMAT imposed a cap on the total amount of energy that the Utility was required to purchase. *See id.* Thus, ReMAT obliged the Utility to purchase up to 149.848 MW of energy from QFs. *See id.* at 864. That obligation was further divided equally among three categories of QF facilities: (i) "baseload"; (ii) "non-peaking, as-available"; and (iii) "peaking, as-available," including proposed solar facilities such as the Claimants. *Id.* Further, ReMAT obligated the Utility to purchase no more than 5 MW from each category during each two-month cycle. *See id.* For example, if the Utility purchased at least 5 MW from a peaking, as-available QF, it did not need to accept the application of the next QF in line until the following auction. *See id.*

---

references to Ex. [●] are to exhibits attached to the Utility's *Request for Judicial Notice* filed contemporaneously herewith. Under Federal Rules of Evidence Rule 201, a court may take judicial notice of matters of public record, provided they are not subject to reasonable dispute. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)); *see also Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986); *In re Sandri*, 501 B.R. 369, 371 (Bankr. N.D. Cal. 2013) (recognizing that on a 12(b)(6) motion, "the court may take judicial notice of matters of public record.").

*Second*, the price set by the CPUC did not represent the Utility's avoided-cost rate. The offering price adjusted every two months depending on QFs' willingness to accept the prior offer price, but the size or frequency of the adjustment amount was not reasoned by the CPUC to have any nexus to the utility's avoided cost. *See id.* As the Ninth Circuit recognized in *Peterman*, both the cap on utilities' purchase obligations and the price-setting mechanism caused ReMAT to run afoul of PURPA. *See id.* at 865.

When ReMAT was first established in 2013, the CPUC set the initial bid price for peaking as-available facilities at $89.23 per MWh. *See id.* at 864. The Claimants never officially applied for a power purchase agreement because the Utility hit the maximum cap before any Claimant reached the top of the queue. *See id.*; Compl. ¶ 27 [AP Dkt. No. 1]. In March 2014, the Claimants declined to apply at a price of $77.23 per MWh, as well as subsequent lower offers, because they asserted they could not develop their solar facilities at those prices. *See Peterman*, 932 F.3d at 864; *see also* Appellate Dkt. No. 7 at 17 ("[The Claimants] could not profitably construct their facilities at the prices offered[.]"); *Winding Creek Solar LLC v. Peevey*, 293 F. Supp. 3d 980, 982–83 (N.D. Cal. 2017) (Claimant Winding Creek sought "to secure financing for its planned but unbuilt solar facility").

### 2. *Winding Creek Invalidates ReMAT*

On October 24, 2013, Claimant Winding Creek sought declaratory and injunctive relief against the CPUC, claiming that the agency's policies governing the wholesale price of energy purchased from small facilities, violated PURPA. *See* Compl. [AP Dkt. No. 1]. While that case was pending in the District Court, on March 9, 2015, Winding Creek also filed a separate petition with FERC pursuant to PURPA section 210(h)(2)(B), arguing that ReMAT was inconsistent with PURPA and FERC regulations because of the then-750 MW statewide cap. *See* RFJN, Ex. B (FERC Order) at 1. Winding Creek then sought a contract at the same $89.23 per MWh—this price is the basis for the damages the Claimants now seek. *See Peevey*, 293 F. Supp. 3d at 993. Although Winding Creek was successful in invalidating the CPUC's ReMAT program, FERC, the Northern District of California, and the Ninth Circuit all refused to impose a contract on the Utility at the $89.23 per MWh price. *See* RFJN, Ex. B (FERC Order) at 2; *Peevey*, 293 F. Supp. 3d 980; *Peterman*, 932 F.3d 861.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

On December 6, 2017, the District Court held that ReMAT was not compliant with PURPA, but nevertheless declined to grant the Claimants a contract with the Utility. *See Peevey*, 293 F. Supp. 3d at 993. The Ninth Circuit affirmed, holding that two aspects of ReMAT violated PURPA. *See Peterman*, 932 F.3d at 865 ("Re-MAT violates PURPA in two ways. To begin, Re-MAT's cap on the amount of energy utilities must purchase from QFs is impermissible under PURPA's must-take provision…. [Also,] the Re-MAT price, which is arbitrarily adjusted every two months according to the QF's willingness to supply energy at the pre-defined price, strays too far afield from a utility's but-for case to satisfy PURPA."). As to the affirmative injunctive relief, the Ninth Circuit explained that "it would be inappropriate to order [the Utility] to contract with [the Claimants] under a modified version of the very program the court had just determined to be preempted by federal regulation," and that "[i]t is not the court's job to fashion a new contract to [the Claimants'] liking." *Peterman*, 932 F.3d at 866 (citing *Allco Renewable Energy Ltd. v. Mass. Elec. Co.*, 875 F.3d 64, 74 (1st Cir. 2017) [hereinafter "***Allco II***"]). Importantly, in no decision has any court or any governmental agency indicated that any of the Claimants are entitled to having a contract imposed on the Utility.

### C. The Adversary Proceeding/Proofs of Claim

On October 20, 2019, the Claimants initiated the Adversary Proceeding, asserting two "causes of action." Compl. ¶ 5 [AP Dkt. No. 1]. The first sought "damages" under PURPA's section 210.[5] *Id.* The Claimants contended that they were "eligible for and timely submitted all the required contracts and information to PG&E to participate in … REMAT," and the Utility was purportedly required by PURPA to enter into contracts at the fixed 20-year rate in effect under AB1969 FIT at that time—*i.e.*, a base rate of $89.23 per MWh—triggered by the must-take or LEO. *See id.* ¶¶ 32–34. As a result, the Adversary Complaint sought damages for a breach of contract, styled as a breach of a LEO, in the amount of lost revenue from electricity sales to the Utility. *See id.* ¶¶ 35–37.

---

[5] In the alternative, as a second "cause of action," the Adversary Complaint sought injunctive relief against the Utility seeking to require the Utility to enter into the contracts the Claimants alleged they were entitled to receive but for the unlawful cap. *See* Compl. ¶ 5 [AP Dkt. No. 1].

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The next day, the Claimants filed their Claims, *see* Stip. ¶ B [AP Dkt. No. 23], attaching the Adversary Complaint to each. In the Claims, the Claimants sought to recover damages for the alleged breach of contract referenced in the Adversary Complaint.

On November 20, 2019, the Utility moved to dismiss the Adversary Complaint. *See generally* Compl. [AP Dkt. No. 8]. On March 22, 2020, this Court issued a tentative ruling, indicating its intent to grant the Utility's motion to dismiss without leave to amend the Adversary Complaint (the "**Tentative Ruling**"). *See* Stip. ¶ F [AP Dkt. No. 23]. On March 27, 2020, the parties entered into a stipulation (the "**Stipulation**") where the Claimants agreed that "[t]he determination of the merits of the Plaintiffs' damages claim … shall be made exclusively in the context of the claims administration process[.]" Stip. ¶¶ 3–4 [AP Dkt. No. 23]. On March 30, 2020, this Court entered an order approving the Stipulation and dismissing the Adversary Complaint without leave to amend. *See* Order ¶¶ 1–2 [AP Dkt. No. 24]. The Claimants appealed to the Northern District of California and, on July 15, 2021, the District Court affirmed this Court's ruling to dismiss the Claimants' second cause of action for injunctive relief. *See* Appellate Dkt. No. 17 at 1. The Utility now seeks to disallow and expunge the Claims.

## IV.  RELIEF REQUESTED

The Utility files this Objection, pursuant to section 502 of the Bankruptcy Code, Bankruptcy Rule 3007(d)(5), Bankruptcy Local Rule 3007-1, and the *Order Approving (A) Procedures for Filing Omnibus Objections to Claims and (B) the Form and Manner of the Notice of Omnibus Objections*, dated June 30, 2020 [Dkt. No. 8228], seeking entry of an order disallowing and expunging the Claims for which the Reorganized Debtors are not liable.

## V.  ARGUMENT

### A.  "Damages" Are Not a Cause of Action

The Claimants appended the Adversary Complaint to their respective Claims. Pursuant to the Stipulation, the determination of the merits of the Adversary Complaint's first cause of action—*i.e.*, "damages" under PURPA's section 210[6]—"shall be made exclusively in the context of the claims administration process in these Chapter 11 Cases as it relates to [the Claimants'] POCs." Stip. ¶ 3.

---

[6] *See* Compl. ¶¶ 31–38 [AP Dkt. No. 1].

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

"Damages," however, are a remedy—not a cause of action. *See, e.g.*, *Lopez v. Chase Home Fin., LLC*, No. CV F 09-0449 LJO GSA, 2009 U.S. Dist. LEXIS 35206, at *23 (E.D. Cal. Apr. 8, 2009) ("[D]amages are a remedy and an element of a claim, not an independent cause of action.") (dismissing complaint); *see also Guillermo v. Caliber Home Loans, Inc.*, No. C 14-04212 JSW, 2015 U.S. Dist. LEXIS 36211, at *38 (N.D. Cal. Mar. 23, 2015) ("Injunctive relief, *like damages*, is a remedy requested by the parties, not a separate cause of action." (dismissing claim and quoting *Cox Commc'ns PCS, LP v. City of San Marco*, 204 F. Supp. 2d 1272, 1283 (S.D. Cal. 2002))). Neither the Claims nor the Adversary Complaint articulates a ***cause of action*** entitling the Claimants to the ***remedy*** of damages; therefore, the claims for damages should be disallowed and expunged.

### B. The Claimants Are Not Entitled to Damages Because Neither a Contract, Nor Any Other Enforceable Obligation, Exists for the Reorganized Debtors to Breach

The existence of a contract is an "essential element" of a breach of contract claim. *See Allen v. Verizon Cal., No. SA CV 08-0774 DOC (ANx)*, 2009 U.S. Dist. LEXIS 150756, at *19 (C.D. Cal. June 8, 2009) (granting motion to dismiss breach of contract claim) (citing *First Commercial Mortg. Co. v. Reece*, 108 Cal.Rptr.2d 23 (2001)); *Varbel v. Countrywide Home Loans Inc.*, 509 F. App'x 609, 609–10 (9th Cir. 2013) (dismissing breach of contract claim because plaintiff "did not allege facts showing the existence of a contract between him and any of the defendants"). Yet, as the Claims make clear, the Reorganized Debtors have never entered into a power purchase agreement with any of the Claimants. *See* Compl. ¶¶ 3, 28–30 [AP Dkt. No. 1]. Further, section 210 of PURPA—under which the Claims are brought (*see id.* ¶ 1)—does not create a contract. *See Allco II*, 875 F.3d at 71 ("Section 210 of PURPA does not create a contract."). Nor does it create any "other enforceable obligation from which any 'customary legal incidents' could follow." *Id.* Thus, here, the Claimants seek damages under a set of supposed obligations that never existed, and the Court should disallow and expunge the Claims.

In *Allco II*, Allco (a Claimant subject to this Objection) sued National Grid (a Massachusetts utility) and the Massachusetts Department of Public Utilities ("**MDPU**") (the Massachusetts equivalent of the CPUC) in the District of Massachusetts. *See Allco II* at 68. Specifically, Allco argued that MDPU regulations ran afoul of PURPA and sought a declaration that National Grid had a "legally enforceable obligation" to purchase output from Allco's QF's for a twenty-five-year term. *Id.* at 66–69. Most relevant here, Claimant Allco sought damages from National Grid for its lost income. *See id.* The

7

District Court of Massachusetts dismissed Allco's claims against National Grid and the First Circuit affirmed. *See id.* at 67, 69.

As it relates to damages, both the District of Massachusetts and the First Circuit rejected Allco's argument (***the same argument*** that the Claimants advance here) that National Grid had an "obligation to purchase" energy offered by Allco. *Id.* at 69–74; *see also, e.g.*, Claim No. 78665 at 2 (alleging "breach of 'must-take' obligation for electricity from creditor's solar plant" as basis for claim)[7]; Compl. ¶ 15 [AP Dkt. No. 1] ("In California and elsewhere, state regulatory commissions have implemented PURPA by requiring the utility, in light of its must-take obligation, to enter into a power purchase agreement with the qualifying facility, in which the utility commits to purchase the qualifying facility's electricity for a defined contract therm."); *id.* ¶ 26 ("[The Claimants' were] legally entitled to have PG&E execute the contracts for those facilities pursuant to the 'must-take' obligation."); *id.* ¶ 33 ("PG&E was required by PURPA's must-take obligation … to execute the contracts for [the Claimants'] facilities at the rates and terms in effect that the time [the Claimants] triggered the 'must-take' legally enforceable obligation.").

There, as here, no contract ever existed between the QF (the Claimants) and the utility (the Utility). *See Allco II*, 875 F.3d at 70–71 ("Allco d[id] not allege a breach of contract, no[r] could it, given that no contract exists."). Moreover, the First Circuit rejected Allco's arguments that section 210 of PURPA creates a contract, "contract-like rights," or an otherwise LEO. *Id.* at 70–71 ("Section 210 of PURPA does not create a contract …. [T]his case does not involve a contract or other enforceable obligation from which any 'customary legal incidents' could follow."); *see also id.* at 72–73 (rejecting Allco's arguments that section 210 of PURPA makes must-buy obligations privately enforceable under the Federal Power Act).[8] Thus, there is nothing to support recovery against the Utility.

---

[7] Here, the basis for each Claim is identified by the Claimants as: "Breach of 'must-take' obligation for electricity from creditor's solar plant." Claim Nos. 70884, 76149, 78304, 78560, 78580, 78620, 78665 at 2. Yet, none of the Claimants have ever developed "solar plants" capable of providing such energy nor can they point to any contract setting forth any such obligation on the part of the Utility.

[8] *See also Allco Renewable Energy, Ltd. v. Mass. Elec. Co.*, 208 F. Supp. 3d 390, 397 (D. Mass. 2016) ("[PURPA] does not provide Allco with an additional federal damages or declaratory relief remedy against National Grid.").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

To put a finer point on the issue, there is no LEO here. In implementing PURPA, states determine when a LEO occurs. *See Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex.*, 422 F.3d 231, 238 (5th Cir. 2005) ("[S]tates must provide for legally enforceable obligations as distinct from contractual obligations, but '[i]t is up to the States, not [FERC], to determine the specific parameters of individual QF [PPAs], including the date at which a legally enforceable obligation is incurred under State law.'") (quoting W. Penn Power Co., 71 F.E.R.C. ¶ 61,153, 61,495 (1995)). In California, the creation of a LEO is program-specific. In 2013, under the then-applicable ReMAT program, a LEO formed when an applicant was **selected** from the pool of bidders—not merely by expressing interest. *See* RFJN, Ex. C (CPUC Order D.12-05-035) § 6.11 ("[O]nly after generators enter into contracts under the adopted pricing mechanism and any other statutory prerequisites, would the first-come-first-served provision [set forth in § 399.20(f)] apply."); RFJN, Ex. D (CPUC Order D.13-05-034) § 4.1 (distinguishing between "applicants" at a certain bid price and those QFs who has entered a LEO). Here, neither the Claimants nor any of their bids were ever selected from the ReMAT applicant pool. *See* Compl. ¶ 29 [AP Dkt. No. 1]; AP Dkt. No. 8 at 5 ("Winding Creek remained eligible at the top of the queue for each subsequent auction **and never entered into a contract**."). Thus, no LEO ever formed under California law. Without a contract to breach, it necessarily follows that no damages can be awarded. *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) ("[T]he elements of a cause of action for breach of contract are (1) **the existence of the contract**, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."). Given that there is no basis for the Claimants to recover on their Claims, they should be disallowed and expunged.

## VI. RESERVATION OF RIGHTS

The Utility hereby reserves the right to object, as applicable, in the future to any of the Claims listed in this Objection on any ground, and to amend, modify, or supplement this Objection to the extent an objection to a claim is not granted, and to file other objections to any proofs of claims filed in these cases, including, without limitation, objections as to the amounts asserted therein, or any other claims (filed or not) against the Debtors, regardless of whether such claims are subject to this Objection. A separate notice and hearing will be scheduled for any such objections. Should the grounds of objection specified herein be overruled, wholly or in part, the Utility reserves the right to object to the Claims on

any other grounds that the Utility may discover or deem appropriate.

## VII. NOTICE

Notice of this Objection will be provided to (i) holders of the Claims; (ii) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (iii) all counsel and parties receiving electronic notice through the Court's electronic case filing system; and (iv) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Reorganized Debtors respectfully submit that no further notice is required. No previous request for the relief sought herein has been made by the Reorganized Debtors to this or any other Court.

## VIII. CONCLUSION

WHEREFORE the Reorganized Debtors respectfully request entry of an order granting (i) the relief requested herein disallowing and expunging the Claims, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: September 9, 2021

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

By: /s/ *Theodore E. Tsekerides*
Theodore E. Tsekerides

*Attorneys for the Debtors and Reorganized Debtors*