# EXHIBIT C

**(March 5, 2020 Verified Complaint)**

Sara M. Knowles (SBN 216139)
**LELAND, MORRISSEY & KNOWLES LLP**
1660 Humboldt Road, Suite 6
Chico, CA 95928

Telephone: (530) 342-4500
Facsimile: (530) 345-6836

Attorney for Plaintiff TUSCAN RIDGE ASSOCIATES, LLC.

SUPERIOR COURT OF CALIFORNIA,

COUNTY OF BUTTE

| | |
|---|---|
| TUSCAN RIDGE ASSOCIATES, LLC.<br><br>Plaintiff,<br><br>v.<br><br>ECC CONSTRUCTORS LLC., A DELAWARE LIMITED LIABILTY COMPANY, AND DOES 1-50<br><br>Defendants. | CASE NO. 20CV00694<br><br>**COMPLAINT FOR BREACH OF CONTRACT, FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; PETITION TO COMPEL ARBITRATION** |

Plaintiff Tuscan Ridge Associates, LLC ("Plaintiff") alleges as follows:

1. Plaintiff is a limited liability company organized and existing under the laws of the State of California, with its principal place of business located in Butte County, California.

2. Defendant ECC Constructors LLC ("Defendant") is a limited liability company organized and existing under the laws of the State of Delaware, doing business within Butte County, California.

3. Plaintiff is the owner of real property located in the County of Butte, commonly known as Assessor's Parcel Nos. 040-520-004 through 040-520-011 (hereinafter referred to as the "Real Property"). The Real Property is adjacent to the Skyway, the only road that runs from Chico, California to Paradise, California. The Real Property is approximately six miles east of Chico, and approximately four miles west of Paradise and consists of approximately 160 acres. Exhibit "A" attached hereto and incorporated herein by reference is a true and correct copy of

Butte County Assessor's Map, Book 40, Page 52 with the Real Property highlighted in yellow.

4. On November 8, 2018, the deadliest and most destructive wildfire in California history occurred in Butte County. This fire has come to be known as the "Camp Fire", due to its place or origin. The Camp Fire destroyed over 18,000 structures, covered an area of 153,336 acres and caused 85 fatalities. The towns of Paradise and Concow were nearly completely destroyed, with each losing 95% of all structures. The town of Magalia, located above Paradise, suffered a loss of roughly half of all of its structures.

5. Defendant contracted with the California Department of Resources Recycling and Recovery ("Cal Recycle") to remove fire related debris from Paradise at a cost of 359 million dollars.

6. Plaintiff does not know the true names of Defendant DOES 1-50, inclusive, sued herein and, therefore, sues such Defendants by those fictitious names.

7. Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein, Defendants were the agents and/or employees of their co-defendants and, in doing the things alleged in this Complaint, were acting within the course and scope of such agency and/or employment.

8. Due to the contract between Defendant and Cal Recycle, ECC was in need of housing for approximately 1,500 to 3,000 workers in order to perform its obligations. As a result, Defendant leased 82.6 acres of the Real Property for a temporary workforce housing complex from Plaintiff. This work camp included 20.1 acres known as the PG & E Base Camp, 30 acres known as Base Camp 1 and 32.5 acres known as Base Camp 2. A true and correct copy of the lease, dated March 22, 2019, is attached hereto and incorporated herein by reference as Exhibit "B"

9. An amendment to the lease was executed by the parties, a true and correct copy of this amendment is attached hereto and incorporated herein by reference as Exhibit "C".

10. Although Defendant leased only a portion of the Real Property (82.6 acres), Defendant has utilized, with the permission of Plaintiff, a majority of the remaining unleased 80 acres for the purpose of staging vehicles and equipment without any compensation to Plaintiff.

Case: 19-30088    Doc# 11264-3    Filed: 09/15/21    Entered: 09/15/21 20:05:29    Page 3 of 10
COMPLAINT FOR BREACH OF CONTRACT, FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;

11. Prior to the Camp Fire, Plaintiff had plans to develop the Real Property for housing. These plans would have required Plaintiff to make certain improvements to the Real Property, including the installation of electrical power and a wastewater treatment facility.

12. The Lease states that "…Tenant will be paying for the completion of numerous improvements that will permanently benefit the property…" In return, Defendant would receive a partial rent credit. This contract term is referred to as the "Threshold Amount" and described in Exhibits A-1 of the Lease and Exhibit "C."

13. The Lease, at Exhibit A - I, provided that either party was entitled to terminate the lease within ten (10) business days to allow each side to investigate certain risks (referred to within the Lease as "Remaining Risks"). In the event that Defendant refused to cover such risks, then either party was entitled to terminate the Lease, relieving each of any obligations.

14. The Lease was not terminated, and Defendant agreed to cover certain costs as specified in the Lease and the amendment. These costs included, but were not limited to PG & E work, which was known by the parties to "likely push the costs of Landlord's work over the revised threshold" (See Exhibit "C", page 1, ¶ 3.)

15. Within the Lease and amendment, the parties agreed that Defendant would be responsible to cover costs above an amount of $2,964,800, which is known as the "Threshold Amount."

16. Rent payments were to commence in August 2019, the first month following completion of Permanent Improvements. Since ECC agreed to absorb the cost of Landlord's work over the Revised Threshold Amount of $2,964,800 without an offset in rent, $1,000,000 was required to be paid to Plaintiff and amortized equally over the Lease Term.

17. No rent has been paid, and the sum of $666,666.66 is due and owing as of March 1, 2020, with such amounts continuing to accrue at the rate of $333,333.00 per month.

18. The Lease further provides that Defendant is responsible for the installation of permanent power to the Real Property, including but not limited to, advancing payment for the 12KV line service and step-down transformers, trenching and installing underground conduit from the 12 KV drop locations to the transformer pads and installing the service to step-down

COMPLAINT FOR BREACH OF CONTRACT, FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;

transformers. Defendant is also responsible for advancing the costs and installation of three pole-mounted step-down transformers.

19. In furtherance of these obligations, Defendant met with PG & E several times at the site to discuss the plan to bring power to the site and on March 4, 2019, Defendant paid $5,000 to PG & E to begin the process of getting power to its site. Attached hereto and incorporated herein by reference is Exhibit "D", a true and correct copy of the receipt. This receipt specifies the following:

> "IMPORTANT: By going forward with this project and paying the engineering advance to PG&E you are also agreeing to pay PG&E for all costs PG&E incurs for your project in the event that your project is cancelled, even if the costs PG&E incurs are more than this advance."

20. Defendant, however, refused to advance the costs of the permanent power as specified herein. Instead, Defendant provided temporary power to its site via diesel generators.

21. As a result of Defendant's breach, there is due and owing the sum of $684,941.36 to PG&E.

22. Defendant has received invoices for the wastewater system in the amount of $220,246.57 on July 31, 2019 and $346,818.06 on September 24, 2019. Since Defendant has received these invoices, Plaintiff has been forced to incur an additional $95,964.47 in costs relating to the wastewater system. The Lease specifies that Defendant is required to issue payment within seven (7) days after receipt of Landlord's notice. The foregoing amounts are still outstanding and due to Plaintiff.

23. Defendant has incurred additional costs to I-5 Rentals, Inc. and Swan Engineering, totaling $722,149.60 for work performed on the wastewater system and storage ponds. As a result of Defendant's failure to pay these amounts, the Real Property is now subject to mechanics liens in this amount. Plaintiff has contested the validity of these claims with each provider, however since such works relates to work that Defendant is obligated to cover, such fees are Defendant's responsibility and Defendant is required to pay for the Scheduled Improvements. Therefore, Defendant is necessarily responsible for these costs.

COMPLAINT FOR BREACH OF CONTRACT, FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;

24. Defendant agreed in the Lease that it would install a new left turning lane from westbound Skyway Drive into the northeast corner of the Real Property. In furtherance of this obligation, which was due to be completed within a reasonable time, Defendant commissioned a traffic study in May of 2019. Defendant has taken no further steps to meet its obligations, and has indicated to Plaintiff that it does not intend to complete this promised improvement. It is estimated that it will cost approximately $1,500,000 to install this left hand turning lane. In lieu of installing the left hand turning lane as required under the Lease, Defendant directed all truck traffic through the property main gate and destroyed the main entrance. The Lease requires Defendant to repair this damage, which is estimated at a minimum of $600,000.

25. In addition to the sums outlined above, Plaintiff is entitled to interest on the unpaid amounts, as specified in the Lease, as well as default interest, and late charges.

26. Defendant incurred approximately $800,000 in sewage costs, owed to Big Valley Pumping. The Lease provides that costs incurred by Defendant in furnishing utility serves after the 45 day deadline to complete the wastewater treatment facility could be offset against Rent or charged to Landlord. However, the Lease also contains a "force majeure' cause which excuses the requirement to have the wastewater treatment facility completed by Plaintiff. Instead, the 45 day deadline to install the wastewater treatment facility was extended to June 21, 2019 due to inclement weather. Any costs incurred for Big Valley Pumping's services incurred prior to June 21, 2019 are the sole responsibility of Defendant, without offset.

27. Additionally, Defendant would not have been able to utilize the wastewater system until Defendant provided the necessary electrical power to the system, which did not occur until July 25, 2019, (and was accomplished via diesel generator). Any pumping that occurred was done due to the fact that Defendant did not perform its obligations under the terms of the Lease.

28. The Lease contains an attorneys' fees clause at page 29, paragraph 24.11, of Exhibit 2.

29. The Lease further provides that the parties will mediate any disputes. An attempt at mediation occurred on January 7, 2020.

COMPLAINT FOR BREACH OF CONTRACT, FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;

30. The lease also contains a provision that specifies that the parties will participate in arbitration. To date, no such arbitration has been scheduled, nor has the case been formally referred to arbitration.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT
### (AGAINST ALL DEFENDANTS)

31. Plaintiff incorporates herein by reference paragraphs 1-30 as if set forth fully herein.

32. Defendant has refused to perform its obligations under the terms of the Lease, including but not limited to, failing to provide permanent power, failure to install the left turn lane, failure to pay costs and rental amounts due and owing as well as interest, default amounts and late fees as specified herein.

33. Plaintiff has performed all conditions of the Contract that are required to be performed by Plaintiff.

34. Defendant's failure and refusal to perform its obligations under the Contract constituted a breach and damaged Plaintiff in a dollar amount according to proof, which exceeds the minimum jurisdictional limit of this Court.

35. The Contract between Plaintiff and Defendant provides for an award of attorneys' fees and costs incurred to enforce the Contract.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth herein below.

## SECOND CAUSE OF ACTION
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (AGAINST ALL DEFENDANTS)

34. Plaintiff incorporates herein by reference paragraphs 1-35 set forth hereinabove as if set forth fully herein.

35. The Contract between the parties gives rise to an implied covenant of good faith and fair dealing. Such covenant requires that each party not do anything to unfairly interfere

with the rights of any other party to receive the benefits of the Contract. This covenant also requires that the parties engage in fair dealing with respect to the performance and enforcement of the Contract.

36. Plaintiff did all, or substantially all, of the significant things that the Contract required it to do prior to Defendant's unilateral and wrongful breaches.

37. All conditions required for Plaintiff's performance under the Contract occurred prior to Defendant's breach.

38. Defendant unfairly interfered with Plaintiff's right to receive benefits under the Contract.

39. Plaintiff was harmed by Defendant's conduct not only in terms of loss of the funds under the terms and conditions of the Contract, but also due to: 1) Defendant's unilateral refusal to install the left turn lane, and 2) Defendant's failure to install permanent PG & E.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as set forth herein below.

### THIRD CAUSE OF ACTION
### PETITION FOR ARBITRATION
### (AS TO ALL DEFENDANTS)

40. Plaintiff incorporates herein by reference paragraphs 1-39 set forth hereinabove as if set forth fully herein.

41. The Lease provides that in the event that a dispute arose between the parties that such dispute would be resolved by arbitration.

42. The Lease is in full force and effect and a dispute has arisen regarding sums owed to Plaintiff as specified herein.

43. Plaintiff has provided a written request to Defendant that it wishes to resolve the dispute in arbitration and has suggested the arbitrators. Defendant has acknowledged Petitioner's request and on February 21, 2020 indicated that it would reply as to either arbitrator suggested by Defendant within one week. As of the filing of this Complaint, Defendant has

COMPLAINT FOR BREACH OF CONTRACT, FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;

failed and refused to provide any meaningful response with respect to its selection of an arbitrator or its commitment to attend arbitration.

44. Plaintiff has not waived its right to the have the dispute resolved by arbitration and no grounds exist for the revocation of the agreement.

Wherefore, Plaintiff prays for judgment as set forth below:

1. That Defendant corporation, and/or its agents and/or successors-in-interest, pay to Plaintiff monetary damages for all harm suffered by Plaintiff due to Defendant's breach of contract in an amount according to proof;

2. For monetary damages in the amount according to proof due to Defendant's unilateral and wrongful breach of the implied covenant of good faith and fair dealing;

3. For attorney's fees in an amount determined by the Court to be reasonable as authorized by the Contract and according to proof;

4. For an order requiring Defendant to participate in arbitration as provided in the agreement and by law in order to resolve the controversy and dispute between the parties arising out of their written agreement.

5. For costs to suit herein; and

6. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

**LELAND, MORRISSEY & KNOWLES, LLP**

Dated: March 5, 2020

*/s/ Sara M. Knowles*

Sara M. Knowles
Attorney for Tuscan Ridge Associates, LLC.

COMPLAINT FOR BREACH OF CONTRACT, FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;

## VERIFICATION

I, Scott Bates, am a managing member of Tuscan Ridge Associates, LLC. I have read the Complaint for Breach of Contract, for Breach of the Implied Covenant of Good Faith and Fair Dealing; Petition to Compel Arbitration and verify the contents thereof. I have personal knowledge of the facts therein alleged, except as to those facts alleged on information and belief and, as to such facts, I believe them to be true.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 5th day of March, 2020 at Chico, California.

_____
Scott Bates, Managing Member
Tuscan Ridge Associates, LLC