1        UNITED STATES BANKRUPTCY COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3                    -oOo-

4    In Re:                      ) Case No. 19-30088
                                 ) Chapter 11
5    PG&E CORPORATION AND PACIFIC )
     GAS AND ELECTRIC COMPANY,    ) San Francisco, California
6                                 ) Tuesday, September 14, 2021
                        Debtors.  ) 10:00 AM
7    _____ )
                                     REORGANIZED DEBTORS'
8                                    OBJECTION TO PROOF OF CLAIM
                                     NUMBER 87136, FILED BY SANDRA
9                                    PEDROIA FILED BY PG&E
                                     CORPORATION [10903]
10
                                     REORGANIZED DEBTORS' NINETY-
11                                   THIRD OMNIBUS OBJECTION TO
                                     CLAIMS (NO LEGAL LIABILITY
12                                   CLAIMS) FILED BY PG&E
                                     CORPORATION [10808] AS TO
13                                   CALIFORNIA DEPARTMENT OF
                                     HOUSING AND COMMUNITY
14                                   DEVELOPMENT (CLAIM NUMBER
                                     56868)
15
                         TRANSCRIPT OF PROCEEDINGS
16            BEFORE THE HONORABLE DENNIS MONTALI
                 UNITED STATES BANKRUPTCY JUDGE
17
     APPEARANCES (All present by video or telephone):
18
     For the Reorganized        DAVID TAYLOR, ESQ.
19   Debtor:                    Keller Benvenutti Kim LLP
                                 650 California Street
20                               Suite 1900
                                 San Francisco, CA 94108
21                               (415)496-6723

22                               MARK HANCOCK, ESQ.
                                 Gough & Hancock LLP
23                               50 California Street
                                 Suite 1500
24                               San Francisco, CA 94111
                                 (415)848-8916

25

eScribers
(973)406-2250 | operations@escribers.net | www.escribers.net

```
1
   For California Department    ERICA LEE, ESQ.
2  of Housing and Community     Attorney General of California
   Development:                 455 Golden Gate Avenue
3                               Suite 11000
                                San Francisco, CA 94102
4                               (415)510-3367

5                               LISA R. CAMPBELL, ESQ.
                                California Department of Housing
6                               and Community Development
                                2020 West El Camino Avenue
7                               Suite 525
                                Sacramento, CA 95833
8                               (916)263-7490

9

10

11

12

13

14

15

16

17
   Court Recorder:             LORENA PARADA/ANKEY THOMAS
18                             United States Bankruptcy
                               Court
19                             450 Golden Gate Avenue
                               San Francisco, CA 94102
20

21 Transcriber:               MICHAEL DRAKE
                              eScribers, LLC
22                            7227 N. 16th Street
                              Suite #207
23                            Phoenix, AZ 85020
                              (973)406-2250
24
   Proceedings recorded by electronic sound recording;
25 transcript provided by transcription service.
```

PG&E Corporation and Pacific Gas and Electric Company

1    SAN FRANCISCO, CALIFORNIA, TUESDAY, SEPTEMBER 14, 2021,

2                              10:00 AM

3                              -oOo-

4    (Call to order of the Court.)

5         THE CLERK:  Court is now in session, the Honorable

6    Dennis Montanelli presiding.

7         Calling the matter of PG&E Corporation.

8    (Pause.)

9         THE COURT:  Ms. Parada, can you hear me now?  Hello?

10   Ms. Parada, can you hear me?

11        THE CLERK:  Yes, Your Honor, I hear you now.  I didn't

12   hear anything.

13        THE COURT:  Okay.  Yeah, I think I was blocked out

14   before.  Okay, let me start over again.

15        Good morning, everyone.  This is Judge Montali.  Is

16   Mr. Taylor on the call for PG&E?

17        MR. TAYLOR:  Yes.  Good morning, Your Honor.

18        THE COURT:  And --

19        MR. TAYLOR:  David Taylor from Keller Benvenutti Kim.

20        THE COURT:  Good morning.

21        Ms. Pedroia, are you on the call this morning?

22        MR. TAYLOR:  Your Honor, if I may.  Did you receive

23   the email from Ms. Pedroia earlier this morning?  I didn't

24   directly receive it, but I had an email from her forwarded to

25   me in which she said that she would not be able to attend the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  meeting.  And it did look like you, but not your clerks, were

2  copied on the email.

3          THE CLERK:  Your Honor?  Can we -- we don't hear you.

4          Mr. Taylor, can you hear me?

5          MR. TAYLOR:  I can.

6          THE CLERK:  Okay.

7          MR. TAYLOR:  Can you hear me?

8          THE CLERK:  I do.  I do hear you.  Is there anyone

9  else on there?

10          Judge Montali, can you hear us?

11          Mr. Rupp, if you're on the line, can you -- can you

12  hear us?

13          MR. RUPP:  Yes, I can hear you.

14          THE CLERK:  Okay, thank you.  One moment.  I'm

15  receiving a message from the judge.  It appears he's lost his

16  connection, so he's rejoining.  I'll pause the recording.  One

17  moment.

18      (Whereupon a recess was taken)

19          THE COURT:  I apologize to everyone on the call.

20  Nothing was working correctly, but it appears to be now.

21          Ms. Sandra Pedroia, are you on the call or anyone on

22  your behalf?

23          All right.  Mr. Taylor, I was starting to ask you

24  before if you had heard from -- or what your pleasure was.  And

25  apparently Mr. Pedroia is not going to participate.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      MR. TAYLOR:  Yes, Your Honor.  And I'm not sure if you

2  heard.  I began to say it, but I'll start again.  It appears

3  that she sent an email late last night, early this morning, to

4  a number of folks.  I think she cc'd you.  She cc'd someone at

5  PG&E.  It was forwarded to me a short while ago.  I'll just --

6  it's very short.  I'll just read it to you, if that's okay.

7      THE COURT:  Yeah.  Just before you do that, Ms.

8  Pedroia has been warned many times not to communicate with the

9  Court.  So you can repeat it.  But I'm -- if she's hearing me

10  or --

11      MR. TAYLOR:  Understood.

12      THE COURT:  -- and listening, that's not going to do

13  her any good.  All right.  Go ahead.

14      MR. TAYLOR:  Just for the record.

15      "I appreciate your email."  This is in response to

16  Prime Clerk's notice of the hearing.  "I appreciate your email,

17  but I've repeatedly told Steven Schirle, litigation lawyer at

18  PG&E, and Bankruptcy Judge Dennis Montali that I'm bedridden

19  and very sick with symptoms of COVID.  My daughter is taking

20  care of me.  I can barely talk.  Is it possible that this court

21  hearing be rescheduled?  I tried my best to see if I could do

22  this today, but I'm just too weak.  Please see if this can be

23  rescheduled."

24      THE COURT:  All right.  And what is your request then?

25      MR. TAYLOR:  It's --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Do you want to request a continuance or

2  not?

3    MR. TAYLOR:  I would simply say that Your Honor

4  implied in your August 10th order on this matter that it may be

5  possible to decide PG&E's objection on the papers.  And PG&E

6  would certainly be fine submitting the objection without

7  argument if the Court were inclined to go that route.

8    THE COURT:  All right.  Again, we have a number of

9  unidentified callers.  Is there anyone, either Ms. Pedroia

10  herself or someone representing her or in her family, her

11  daughter or friend or anyone else on the call that wishes to be

12  heard?

13    Mr. Taylor, I'm inclined to take this on the papers.

14  I want to clarify a couple of matters with you.  First of all,

15  Ms. Pedroia, I'm sorry if she's unwell.  She's been able to

16  communicate extensively.  And if she can't talk on the phone,

17  that's one thing.  But she -- her daughter has communicated

18  with the Court in the past.  And someone is able at least to

19  communicate something.

20    For you I have a question.  I just want you to remind

21  me.  I recall that Ms. Pedroia filed a claim in the amount of

22  250,000 and then later on was amended up to a million dollars.

23  But would you refresh my memory, please?  Earlier in the case,

24  in the last several months, she was invited to and was

25  scheduled to participate in a mediation; is that correct?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. TAYLOR:  Yes, Your Honor.  We use the Court's ADR

2    procedures.  We noticed an abbreviated mediation.  It was set

3    for a date.  She requested that that date be moved back by a

4    few weeks.  We accommodated that, reset it, and then

5    appeared -- PG&E appeared at the Zoom mediation on the

6    rescheduled date.  And Ms. Pedroia did not appear.

7          THE COURT:  Okay.  That's what that's what I recall.

8    So, yes, it is true that I issued an order on August 10th and

9    indicated that I would give Ms. Pedroia an opportunity to

10   respond by the 7th of September to explain why the debtors'

11   argument about the statute of limitations should not be -- is

12   not well taken and indicating to her that if she doesn't do

13   that, perhaps I'd be inclined to sustain the objection.

14         I'm not aware -- and again, asking Mr. Taylor.  Have

15   you received any communication, even informal communication,

16   that deals with anything in the nature of the statute of

17   limitations defense that you've set forth?

18         MR. TAYLOR:  Your Honor, she -- Ms. Pedroia, through

19   her daughter, submitted an email, I guess, letter that, in my

20   view, did not address the statute of limitations issue.  But I

21   want to make clear that there was a submission on the 7th.

22         THE COURT:  Yes, I understand that.  Okay.  All right.

23   One more time, anyone on the call who hasn't been identified

24   and is simply on the docket as a guest wish to be heard who

25   speaks -- either is Ms. Pedroia herself or speaking on her

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  behalf?  All right.  There's no one appearing.  I will consider

2  this matter submitted, and we'll issue an appropriate order.

3      Thank you, everyone, for your time.  And unless anyone

4  wishes to be heard, I'm going to conclude this hearing.

5      MR. TAYLOR:  Thank you, Your Honor.

6      THE COURT:  All right.  Thank you.  That concludes the

7  hearing.

8    (Whereupon a recess was taken)

9      THE CLERK:  Court is now in session, the Honorable

10  Dennis Montali presiding.  Calling the matter of PG&E

11  Corporation.

12      THE COURT:  All right, good morning.  May I have --

13  who do you have, Mr. Handcock and Ms. Lee?  Are they coming in

14  today?

15      THE CLERK:  Yes.  I'm bringing them in now, Your

16  Honor.

17      MR. HANCOCK:  Good morning.  This is Mark Hancock for

18  PG&E.

19      THE COURT:  Good morning, Mr. Hancock.  Hold on one

20  second.  We've got to get your -- Ms. Lee in here.

21      Ms. Lee, can you turn on your camera and your mic?

22      MS. LEE:  I'm so sorry, Your Honor.  I'm used to not

23  being able to do that myself.  This is Erica Lee for the

24  California Department of Housing and Community Development.

25      THE COURT:  Okay.  Good morning to both of you.  Thank

escribers

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   you for participating.

2           I presume you got my order and you know my suggestion

3   about schedule and timing.

4           MS. LEE:  Yes, Your Honor.

5           THE COURT:  Okay.  Ms. Lee, I guess you're up to bat

6   then.  How much time do you want to reserve?

7           MS. LEE:  I would like to reserve five minutes,

8   please.

9           THE COURT:  Okay, let's go. I've read everything, so

10  you don't have to go back and reinvent the wheel.  I want you

11  to tell me how I can get out of any parking tickets while we're

12  done here so I don't have any parking violations on my car.

13          MS. LEE:  Thank you, Your Honor.

14          I wanted to speak first about Your Honor's first point

15  in the order regarding the definition of commercial modular.

16  And that's in the definition section of the Manufactured

17  Housing Act, specifically Section 18001.8 where commercial

18  coach has the same meaning as commercial modular as that term

19  is defined in this section.

20          THE COURT:  Well, I -- it was the word "coach" that

21  threw me off because -- so you're saying essentially coach

22  means modular?

23          MS. LEE:  Yes, Your Honor.  They're the same thing.

24          THE COURT:  Does the word "modular" appear in 18001.8?

25          MS. LEE:  Yes, it's -- the definition specifically

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    states commercial coach has the same meaning as commercial

2    modular.

3            THE COURT:  Okay.  Okay.  Well, I sort of assumed that

4    was the right result, but I just didn't spend too much time

5    going through all those sections.

6            MS. LEE:  Of course, Your Honor.  Thank you.

7            And I will start by speaking to Your Honor's first

8    hypothetical regarding the single lien with 261 dollars as of

9    2018.  And the Court is correct that under the debtors' theory,

10   the Department would indeed have to file a lawsuit for a few

11   hundred dollars within four years.  This would be impractical

12   and probably never occur.

13           The Court may want to consider -- and if I may, I'd

14   like to provide a little bit more context for -- regarding the

15   MHA in regards to this hypothetical.  The Court may want to

16   consider that because this section of the Manufactured Housing

17   Act, 18116.1, and the Manufactured Housing Act in general

18   applies equally to mobile homes as well as other types of

19   mobile housing, like manufactured housing and boathouses, that

20   under the debtors' theory, the Department would have to file

21   suit and potentially evict people from their homes for what is

22   a matter of a few hundred dollars.

23           It would therefore make much more sense to adopt the

24   legislature's -- adopt the Department's interpretation of the

25   statute, which is the legislature did not intend for a statute

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   of limitations to exist on these liens.  And it's because not

2   only would the Department not bring a civil action, it

3   shouldn't bring a civil action because the State shouldn't be

4   evicting people when they owe 261 dollars out of their houses.

5          So it makes much more sense that the legislature, in

6   drafting section 18116.1, intended for the liens to be paid off

7   when the property changed hands.  And presumably the homeowner

8   or even the buyer had some cash that he or she could use to pay

9   off the liens and at that point acquire proper record title

10  documents.  And --

11         THE COURT:  An owner who was in financial difficulty

12  would, in effect, simply not be threatened with eviction but

13  would have to pay the bill at some point when the owner sells

14  to the purchaser.  But the purchaser can bear that cost; isn't

15  that the point?

16         MS. LEE:  Yes.  The owner or presumably the buyer as

17  well could also --

18         THE COURT:  Well, that's what I meant.  Yeah.

19         MS. LEE:  Yes, yes, Your Honor.  Thank you.

20         And actually, to Your Honor's point, this came up a

21  few years ago.  In 2016, the legislature passed 8587, which was

22  enacted as Section 11861.(d)(1)(D) (sic).  And this is the

23  five-year --

24         THE COURT:  Wait, slow down.  11861-point --

25         MS. LEE:  Let me make sure I'm getting it right.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    18116.1(d)(1)(D).

2         THE COURT:  Okay.

3         MS. LEE:  And this is the five-year program.  This

4    is -- it's titled Register Your Mobile Home.  And what was

5    happening is purchasers were unknowingly buying mobile homes

6    that had years of unpaid registration fees on them, and the

7    owner would disappear.  Ad then the buyer could not get clear

8    title to their mobile home because HCD could not amend the

9    title without the liens being paid off.

10        So in response, the legislature enacted this new

11   statute, which allows the purchaser to pay for a max of five

12   years of the registration fees on the mobile homes.  And the

13   legislature would not have done this if the liens simply

14   expired in three years.

15        THE COURT:  Well, does this -- this takes me back to

16   the opening question.  Does that amendment for mobile homes

17   cover modules?

18        MS. LEE:  Does the amendment cover modules?

19        THE COURT:  Well, I mean --

20        MS. LEE:  Yes, Your Honor.  Yes.

21        THE COURT:  Let me try it a different way.  If I

22   bought a model from PG&E with a 261-dollar lien on it, I

23   could -- could I take advantage of this AB 587 that you

24   described and pay off that 261 dollars over five years?

25        MS. LEE:  Yes.  This Section 18116.1 covers all of

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   the -- all of the mobile homes as well as commercial coaches,

2   floating homes, manufactured homes.

3           THE COURT:  Okay.

4           MS. LEE:  So yes, Your Honor, it would.

5           THE COURT:  The point is we're not dealing with

6   evicting people from their homes.  We're evicting, or not, a

7   public utility from its module.  And we're not evicting it.  It

8   can do nothing but pay the accrued charges, either whenever it

9   wants or when I or somebody else buys it, then it -- then the

10  buyer pays it.  One way or the other the State gets paid,

11  right?

12          MS. LEE:  If the line is used defensively, yes, Your

13  Honor.

14          THE COURT:  Yeah.

15          MS. LEE:  I'm merely trying to make the point that the

16  intention behind the law was for there to be no statute of

17  limitations because the Manufactured Housing Act applies

18  equally to commercial modulars, as it does mobile homes.

19          THE COURT:  Got it.

20          MS. LEE:  Thank you, Your Honor.

21          And I would like to move on to Your Honor's second

22  hypothetical.

23          THE COURT:  Perfect.  Whenever you want.

24          MS. LEE:  Okay.  So the Department can, Your Honor,

25  and was intended to be able to use its liens defensively

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   whenever a party requested clear title or an amendment to

2   record -- to record title.  Section 338 provides that civil

3   actions upon a liability created by statute must be brought

4   within three years but does not forbid the Department from

5   refusing to amend title within three years.  And as the order

6   points out, Section 2911 does not support the argument that the

7   liens would be extinguished in this matter because that section

8   only applies to a situation where a statute of limitations

9   exists.

10          So in this case, Your Honor, just to provide a little

11  bit more context, the -- because commercial modulars and mobile

12  homes and other types of mobile housing -- because they move

13  around, they're not in a specific place.  And because the

14  Department is tasked with regulating them, there are costs that

15  go into the Department's regulations.  The Department has to

16  know the location of these commercial modulars or mobile

17  housing, has to oftentimes know their condition.  And this

18  costs money.

19          So when an owner of the property doesn't pay though

20  all the fees, registration fees and other types of fees under

21  the Manufactured Housing Act, they become liens.  If those

22  liens just expire in three years, then the Department won't be

23  funded enough to actually do its job, which it is tasked with

24  under the Manufactured Housing Act.

25          THE COURT:  But it has the right to do it.  So it

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    could do it, right?

2            MS. LEE:  Legally it must do it.

3            THE COURT:  I mean, there's enough money -- maybe

4    there's not enough money yet.  But if -- we're not talking

5    about a 200-dollar charge.  We're talking about PG&E has a

6    liability which I guess they don't contest but for statute of

7    limitations of in excess of 300,000 dollars.  So if the

8    Department chose to, they could commence a suit in the Superior

9    Court to recover that money, right?

10           MS. LEE:  Yes, it could.

11           THE COURT:  Right, okay.

12           MS. LEE:  But it most likely wouldn't for lack of

13   resources.  But it has the legal right to, yes.

14           THE COURT:  Does it, in fact, in practice ever

15   commence?

16           MS. LEE:  It has never once commenced a civil action.

17   It has instead always used the lien defensively.

18           THE COURT:  Okay.  Well, but the lien -- in practical

19   terms then, it's sort of a nonrecourse obligation.  Are you

20   familiar with that term in the commercial setting, nonrecourse?

21           MS. LEE:  I think that means when there's -- very

22   elementary element, I understand.

23           THE COURT:  Well, okay.  I'll give you -- I'll respond

24   it.  If I made you a loan to buy your house and I'm the lender

25   on your house under the applicable law, chances are I would be

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    limited to in my claim against the house, not against you

2    personally.  So it would call a nonrecourse for reasons that I

3    won't bore you with.

4           But if I have the right to -- you have the right to

5    walk away from your house without personal liability.  Contrast

6    that, the Department, if it wishes to, or if PG&E took all

7    these modulars and moved them to another -- out of state,

8    PG&E -- I mean, the Department could sue for money judgment, in

9    effect not pursue its lane, but just sue a money judgment

10   against a solvent defendant, that might not be a bad idea.

11   Against the individual mobile home unit for a few hundred

12   dollars, it would probably be a stupid idea.

13          MS. LEE:  Yes, Your Honor.

14          THE COURT:  Okay, go ahead, whatever time you want.

15   And by the way, Ms. lee, you don't have to use up your time.

16   You can reserve more, or you can say whatever you want.  I

17   mean, this is a pretty narrow issue.

18          MS. LEE:  I don't want to rehash what I drafted in my

19   pleadings, Your Honor, as you requested.  So I will reserve the

20   rest of my time.

21          THE COURT:  Okay.  Then you've got about -- we'll call

22   it at least eight minutes.

23          Okay.  Mr. Hancock?

24          MR. HANCOCK:  Sure.  Thanks, Your Honor.  Good

25   morning.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  How are you going to get out of this one?

2    MR. HANCOCK:  I've got lots of --

3    THE COURT:  This doesn't seem to be the most

4  challenging thing from my point of view.  But you have a chance

5  to convince, but I might --

6    THE COURT:  All right.  Well, good.

7    So first, I would say that Ms. Lee hasn't addressed

8  what is what is the ultimate standard here, that we need a

9  legislative intent expressed in clear and unmistakable language

10  that there is no statute of limitations, that -- she didn't

11  address it.  It's not in the statute.  And -- but I'll go on,

12  and I'd like to address the points that she raised in

13  discussing your hypotheticals.

14    So with respect to the first one and the reference to

15  the 3- or 400-dollar lien, the argument Ms. Lee seemed to be

16  making and the discussion was -- seemed to center on the

17  potential disposition of people of their homes and could that

18  be too harsh of a result.  The reality is, is that under the

19  statute, there is, in effect, something of a graduated response

20  that the State can take.

21    First of all, the statute of limitations is relatively

22  a long one with the one-year accrual period and then three

23  years after that.  That gives you four years.  And then at that

24  point, the State can enter into a five-year long-term payment

25  program, which takes you out to nine years.  And if at that

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  point you have somebody who is not -- still not paying after

2  nine years, then the State doesn't necessarily need to seize

3  and sell, although at that point it may be fully justified when

4  there's been that much time passing and still no payment.  They

5  could bring for a small amount like this -- I guess it would be

6  a -- what, a limited jurisdiction case in Superior Court or

7  potentially, what, a small claims action.  I have little --

8            THE COURT:  I guess so.  I don't know.

9            MR. HANCOCK:  To see what --

10            THE COURT:  You can't -- when I was in practice, you

11  couldn't be a lawyer.  A lawyer couldn't go into small claims.

12            But listen, if you're in this five-year program, does

13  the statute -- the provision of the five-year program include

14  an extension of the statute?  I mean --

15            MR. HANCOCK:  Well, that's --

16            THE COURT:  -- is the statute tolled during the

17  five-year program?

18            MR. HANCOCK:  Sure.  That's what I put in my brief.  I

19  would expect that as a condition to giving them five years,

20  that they would include an extension of the statute.  I can't

21  imagine that the State, being as sophisticated as it is, would

22  give the person or the company owing money five years

23  additional period to pay without preserving their right to

24  enforce their remedies under the statute, which is --

25            THE COURT:  Well, but I --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. HANCOCK:  -- (indiscernible).

2    THE COURT:  I did read your brief.  But my question is

3 not would a good lawyer for the state put in a tolling.  Does

4 the statute itself extend -- does the statute that implements

5 this five-year payout implement an extension of any applicable

6 statute of limitations?

7    MR. HANCOCK:  The statute -- well, first of all --

8    THE COURT:  Because it may be they didn't extend it

9 because it didn't apply that there wasn't one.

10    MR. HANCOCK:  So the provision providing for the

11 five-year long-term repayment program does not itself reference

12 an extension of the statute of limitations.  It just doesn't

13 address it, which would leave it open to the State to allow for

14 whatever agreement it wanted to reach or could reach with the

15 party indebted to it.  Again, I can't imagine that they would

16 grant an additional five years without obtaining such an

17 agreement.  Why would they ever waive their rights to enforce

18 the action when giving them additional five years?

19    THE COURT:  The five-year -- the five-year program

20 that both you and Ms. Lee referred to sounds remarkably similar

21 to the provisions for California real property to redeem your

22 property from a tax lien default.  Are you familiar with that

23 provision?

24    MR. HANCOCK:  I'm not.

25    THE COURT:  Well, I presume you pay your mortgage on

PG&E Corporation and Pacific Gas and Electric Company

1    your house.  But if you fall in default on your taxes to the

2    county where your home is, you can go in -- you can enter into

3    a five-year redemption period.  And don't -- you don't run the

4    risk of loss of your property.  And again, it seems parallel.

5    I don't want to get bogged down on it, but it's remarkably

6    similar to the concept.  But the difference clearly on that is

7    there's no recourse on the real property,  Your real property

8    taxes is not personal liability for you as a homeowner.  Okay,

9    go ahead.

10        MR. HANCOCK:  Sure.  So that's my point there.  Again,

11    there is effectively a graduated response which could take you

12    out to nine years of time before they would need to consider

13    whether they actually want to file a lawsuit, if that's

14    something that they're averse to doing, or seizure and sale,

15    particularly if they were to, like I said, get an extension or

16    an agreed-upon extension of the statute of limitations which

17    would seem like a reasonable thing to do.

18        THE COURT:  Mr. Hancock, you may not know the answer

19    to this question because I don't think I've seen you in the in

20    the PG&E bankruptcy before.  But what was the practice for PG&E

21    and the Department before the bankruptcy?  Did it routinely pay

22    this kind of liability, or did it just let it ride until

23    somebody bugs them?  Do you know historically what has been the

24    practice?

25        MR. HANCOCK:  I wish I could answer your question.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  The first time I encountered this was during the bankruptcy.

2  And I don't know what the history was.

3  THE COURT:  It seems like -- what struck me as strange

4  is that PG&E even -- I mean, I'm not making light of your

5  argument.  Your argument is not frivolous by any means, and nor

6  have I made up my mind.  But I'm sort of having a difficult

7  time thinking this would be right.  But it just seemed like, as

8  a practical matter, why wouldn't PG&E just be paying these in

9  the normal course?  Again, (indiscernible) answer that.

10  And it shouldn't be a bankruptcy issue.  This seems

11  more like the kind of liability that PG&E deals with every

12  single day, forest fire season or not, bankruptcy or not.

13  Anyway, go ahead with your arguments.

14  MR. HANCOCK:  Sure, thanks.

15  Onto the second hypothetical which raises the

16  question, as I understand it, of whether an extinguished lien

17  and whatever that means under Section 2911 could be raised

18  potentially defensively by the by the State.

19  THE COURT:  Well, you're reframing the question.  The

20  clue I gave you was maybe 2911 isn't the answer.  If 2911 is

21  the answer, we're done, you win.  But if 2911 isn't the answer,

22  why isn't that a practical thing what would happen?

23  MR. HANCOCK:  Sure.  So what I was -- what I was

24  doing --

25  THE COURT:  I mean, the Department would say, look,

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  you haven't paid the bill in twenty years, we're not going to

2  give you a clear title until you pay your twenty years of

3  accrual.

4      MR. HANCOCK:  I understand.  What I was going to say

5  was that I don't have the same reading of Section 2911 as your

6  hypothetical suggests.  And if you'll indulge me --

7      THE COURT:  Okay.

8      MR. HANCOCK:  If you'll indulge me and let me

9  explain --

10      THE COURT:  Sure, sure, of course.

11      MR. HANCOCK:  -- I'll say why.

12      So I'm not sure if you have 2911 in front of your --

13  have it accessible.  It begins by saying a lien is

14  extinguished.  And then it goes on to say by lapse of time in

15  either of a couple of circumstances.

16      THE COURT:  Yes.

17      MR. HANCOCK:  Okay.

18      THE COURT:  I have -- I had it in front of me when I

19  wrote the --

20      MR. HANCOCK:  I'm certain that you did.  I just didn't

21  know how much --

22      THE COURT:  But it's a CCP lien, not a lien under some

23  other statute, correct?

24      MR. HANCOCK:  Yeah.  So it's -- yeah.  Well, it's --

25  here's what I want to explain in terms of my understanding of

PG&E Corporation and Pacific Gas and Electric Company

1  how it reads.  A lien is extinguished.  It doesn't say a lien

2  is extinguished with respect to the affirmative pursuit of

3  collection.  It says a lien is extinguished by the lapse of

4  time within which under the provisions of the CCP an action can

5  be brought upon the principal obligation.

6          My distinction, from what I understand the

7  hypothetical to be saying, is that I understand the

8  hypothetical to imply that a lien is extinguished as to

9  affirmative actions with respect to the running of the statue

10  by which an affirmative action may be brought.  I'm doing my

11  best to explain it.  I hope I'm doing all right.

12          My point is that the of the lien is extinguished,

13  period, for offensive purposes or defensive purposes by either

14  of the two time periods that follow.  One is the time to bring

15  in an affirmative action, or two, a circumstance that doesn't

16  apply with respect to the -- with respect to bond assessments

17  and so forth.  And so I think that --

18          THE COURT:  Yeah, but that -- but I understand.  But

19  hold on.  I have -- I printed out that that section of 2911,

20  but I don't -- I set it aside.  I thought it made reference

21  specifically to 22 of the CCP and not to something else.  So

22  the --

23          MR. HANCOCK:  It does in terms of the time marker by

24  which a lien is extinguished.  So it says a lien is

25  extinguished by the (indiscernible) within which, under the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

                PG&E Corporation and Pacific Gas and Electric Company

1    provisions of the CCP, either an action can be brought upon the

2    principal obligation or the second one which doesn't apply.

3                My point is that a lien is extinguished for all

4    purposes.  It doesn't say --

5                THE COURT:  For all purposes.

6                MR. HANCOCK:  It doesn't say -- it doesn't say, as I

7    think the wording of a hypothetical suggested, it's only

8    extinguished for purposes of bringing an affirmative action.

9    It says a lien is extinguished.  And my point is, you know,

10   period, offensively and defensively when either of these time

11   periods run.

12               And so I think the answer is, yes, if that lien is

13   extinguished for all purposes, which I believe is the correct

14   interpretation of the statute, then it's either for offensive

15   purposes or defensive purposes.

16               THE COURT:  Well, but would you agree that -- I mean,

17   again, this is where it's circular, I think.  And I don't mean

18   to create a hypothetical-hypothetical.  And then -- but if 2911

19   doesn't apply, then the lien didn't get extinguished by 2911.

20   So it would seem to me that if Ms. Lee and the Department's

21   argument is correct, you never get to 2911.  And the lien that

22   exists under that the Health and Safety Code exist in

23   perpetuity.

24               MR. HANCOCK:  So let's go ahead and assume that the

25   2911 doesn't apply in this circumstance.

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Right.

2          MR. HANCOCK:  Then I think we're looking at case law

3     which talks about -- and that's decisions we -- I cited in my

4     brief.  I'm trying to find it.

5          THE COURT:  Yeah.  You cited several of them.

6          MR. HANCOCK:  Yeah.

7          THE COURT:  And I did read them.

8          MR. HANCOCK:  For the Griffiths (ph.) decision, for

9     example, it refers to when the lien exists without any

10    provision for its enforcement, it's simply a right without a

11    remedy, meaning it's a neutered or unenforceable lien.  It

12    exists, but it has no mechanism for enforcement.  I would say

13    either that's offensively and defensively.  So whether you're

14    relying on 2911, you still have case law that would cover the

15    other interpretation if it's not entirely --

16          THE COURT:  But the case law -- but the case law that

17    depends upon no enforcement isn't -- there's no case that says

18    that the Department has to release the lien after the four

19    years either.

20          MR. HANCOCK:  Well --

21          THE COURT:  The enforcement is that they don't release

22    the lien, right?

23          MR. HANCOCK:  Well, correct.  We don't have case law

24    specifically dealing with this circumstance.  So I'm referring

25    to these general principles of what happens to liens when their

PG&E Corporation and Pacific Gas and Electric Company

1    mechanisms for enforcement expires.

2           But again, the notion -- there seems to be at least

3    expressed by Ms. Lee some expectation that the Government

4    should not be required to enforce this lien at any time because

5    that would be something of a hardship or it's not their

6    practice and so forth.  But again, you've got these graduated

7    responses.  And whether they're large or small, statute of

8    limitations bar small and large claims every day across a whole

9    bunch of disciplines, of course.  And they can always provide

10   additional time, their five-year agreement.  They can file a

11   limited action to recover this, or they can choose if it's

12   small enough to let it lapse and not enforce it.

13          But I would say, because I don't want to repeat at

14   this point what I put in my briefs -- I would say at this point

15   the principal problem that they have not overcome is that we

16   have clear California Supreme Court case law that says you need

17   a clear and unmistakable language if there is no statute of

18   limitations.  That's the governing principle for this motion.

19   And this is where the State has not given you the answer to

20   that question, which would probably be at the beginning of your

21   order as to how there is a clear and unmistakable language.

22          THE COURT:  Okay, got you.  All right.  You want

23   anything more, Mr. Hancock?  I'm not a rigid time enforcer, but

24   if you have --

25          MR. HANCOCK:  No.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        THE COURT:  Okay.

2        MR. HANCOCK:  No, thank you, Your Honor.

3        THE COURT:  Ms. Lee, do I have clear and unmistakable

4    language in 18116.1?

5        MS. LEE:  Yes, you do, Your Honor.  And it's -- with

6    this, basically we have fleshed this out in our briefing.  But

7    the phrase notwithstanding, any other provision of law is clear

8    and unmistakable.  And the California Supreme Court -- this is

9    in the Cutler case that we cite to, has -- recalls this phrase,

10   states that it signaled a broad application overriding all

11   other code sections.  That would include sections 338 and 340.

12       The legislature could have drafted this health and

13   safety code section without the provision notwithstanding any

14   other provision of law, but it chose to include that phrase.

15   And PG&E's interpretation of this section would make this

16   phrase superfluous.

17       The section goes on to describe how the liens shall

18   include the registration fees of the very beginning.  And

19   presumably the registration fees could be older than three

20   years, could be much older, as they are in this case, and how

21   the liens shall continue to accrue from the very original --

22   the original registration fee.  This statute does have clear

23   and unmistakable language.

24       And, Your Honor, as to the interpretation of 2911, the

25   Department, of course, disagrees with PG&E's interpretation.

PG&E Corporation and Pacific Gas and Electric Company

1  Instead, 2911 actually only refers to civil actions.  And I do

2  have a case to that effect.  That is the Montgomery Ward v.

3  County of Santa Clara.  And the citation, 47 Cal. App. 4th

4  1122.  And the pincite is 1138.

5  THE COURT:  So you're saying that the Montgomery Ward

6  case says it doesn't -- it applies only to civil actions?

7  MS. LEE:  Yes, Your Honor.  In that case, the -- it

8  was -- the government entity was the county.  The county had

9  not brought a civil action.  The plaintiff tried to say that

10  the county was trying to enforce a tax.  Because the county had

11  not brought a civil action, 338 -- the court stated that 338

12  did not apply.

13  THE COURT:  Well, but doesn't that mean that, in our

14  hypothetical, the Department wouldn't be able to bring an

15  action, but it could still enforce its lien?

16  MS. LEE:  I don't actually fully know what the

17  county's legal rights were there, Your Honor.  HCD does have

18  the legal rights to sue.  And the Manufactured Housing Act says

19  that HCD may bring a civil action, uses the word "may," doesn't

20  say it shall or has to.  So --

21  THE COURT:  Yeah.  But isn't the point -- I'm not

22  familiar with this Montgomery Ward case.  But if the Montgomery

23  Ward case says it doesn't apply, it only applies to civil

24  actions, it would suggest the Department can't bring a civil

25  action but can enforce its lien defensively.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1            MS. LEE:  Here the -- but here, Your Honor, the

2    Department can bring a civil action.  It just chooses not to

3    because it has -- its practices to enforce its liens

4    defensively.

5            THE COURT:  A lot of people who choose not to end up

6    losing because the statute limitations run against -- Ms. Lee,

7    let me take a timeout for a minute.  I --

8            MS. LEE:  Yes.

9            THE COURT:  My clerk has advised me that someone named

10   Lisa Campbell wishes to raise their hand.

11           Ms. Campbell, unless you are a lawyer for the

12   Department or PG&E, I'm not sure I'm prepared to have you --

13           MS. LEE:  She is, Your Honor.  She is --

14           THE COURT:  Do you know Ms. --

15           MS. LEE:  -- senior staff counsel at the Department.

16           THE COURT:  Okay.  I'll let Mr. Campbell in then.

17           You can bring her in, Ms. Parada.

18           MS. CAMPBELL:  Good afternoon, Your Honor.  Thank you

19   very much.  Just briefly.

20           You had asked a specific factual question as to the

21   Department's --

22           THE COURT:  Ms. Campbell, I need you -- I just need

23   you to state your name --

24           MS. CAMPBELL:  Oh.

25           THE COURT:  -- and appearance.  And I hope you're not

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  driving.

2      MS. CAMPBELL:  No, I'm not driving, sir.  My

3  apologies.  I'm Lisa Campbell.  I'm a senior staff counsel with

4  the Department of Housing and Community Development.

5      THE COURT:  All right.  And what did you want to add?

6      MS. CAMPBELL:  You had asked a factual question of

7  counsel related to the practices of PG&E receiving notices

8  annually, whether they are notified of the annual registration

9  and titling fees due.  And PG&E has over hundreds and hundreds

10  of commercial modulars registered with the Department, is very

11  well aware of the practices.

12      The ninety-two specific commercial modulars, some of

13  them were noticed annually; some of them were not.  PG&E

14  notified HCB, our Department, of -- that we are -- they

15  notified us that they were aware that they needed to pay them,

16  but they were trying to transfer or sell them but they weren't

17  successful.  And so they never completed the process.

18      So PG&E is and was very well aware of their

19  responsibility as a commercial modular owner of their -- the

20  fees that are due annually.  It was not a surprise.  So I just

21  wanted to point out there is a process in place that -- it's

22  similar to the DMV with cars.  They're annually noticed.  And

23  they're required to pay those fees.

24      THE COURT:  Well, but PG&E may have chosen not to do

25  anything because Mr. Hancock convinced them that he can win the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    statute of limitations argument.  And if he's right, then

2    you're out of luck.  You lose several (audio interference)

3    fees, right?

4            MS. CAMPBELL:  That's correct.

5            THE COURT:  Yeah, okay.

6            MS. CAMPBELL:  Thank you.

7            THE COURT:  Okay.  Thank you, Ms. Campbell.

8            Mr. Hancock, that was an unexpected addition.  If

9    you -- do want to add anything?

10           Ms. Campbell, you should mute your microphone while

11   you're on the call.

12           MR. HANCOCK:  Yeah.  Your Honor, I --

13           THE COURT:  Hold on.  Ms. Campbell, you need to mute

14   your microphone.

15           MS. CAMPBELL:  Sir, I have.  I did.

16           THE COURT:  Oh, okay.  Someone was talking.  Okay.

17   Thank you.  All right.

18           Mr. Hancock, I'm sorry.  Did you want to add anything

19   further?

20           MR. HANCOCK:  Sure.  Just that that was an unexpected

21   insertion on facts.  I'm unable to respond to that.  I don't

22   know whether it's accurate or not.  And so I'm at a

23   disadvantage.  And if the Court plans to rely on that, I

24   haven't had a means to consider it or respond to --

25           THE COURT:  I don't think it's terribly relevant to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    the to the legal issue.  It's more -- perhaps  more practical.

2    But you haven't argue there was some surprise.  I mean, your

3    argument is a very straightforward one.  We don't have to pay

4    because of the statute of limitations, period.  Right?  And so

5    you win or lose on that argument, don't you?

6            MR. HANCOCK:  This is a statute of limitations

7    argument.  You're correct, Your Honor.

8            THE COURT:  Yeah.

9            MR. HANCOCK:  Your Honor, if I could address the point

10   that Ms. Lee brought up in in her response there.

11           So as to her argument that 18116.1(b), the

12   notwithstanding any other provision of law language is clear

13   and unmistakable, what I want to emphasize is that it is not

14   clear and unmistakable for the reason that it references no

15   temporal element.  In the cases, for example, that that we

16   cited that refer to examples of the clear and unmistakable

17   language, there's always a temporal element.  For example, one

18   of the cases said there is no limitation as to when you can

19   bring an action.  The other one said an action can be brought,

20   quote, at any time.  Those are the examples of the clear and

21   unmistakable language, even if they don't actually say there is

22   no statute of limitations.

23           And what we have that --= what we have from that,

24   notwithstanding any other provision of law, apart from the fact

25   that it doesn't refer to any temporal element as to when an

PG&E Corporation and Pacific Gas and Electric Company

1    action accrues, it just indicates that fees and penalties

2    continue to accrue under the statute when there are

3    delinquencies.

4            And it references, I believe, the various penalties

5    and so forth under 18116.2, I believe it is, which would be

6    circumstance where somebody perhaps pays off than they're

7    delinquent again.  But that's going to be capped by a statute

8    of limitations or an agreed-upon statute extension under a

9    five-year agreement.

10           So my final point is, is that we still don't have that

11   clear and unmistakable language.  We have what is unclear and

12   ambiguous with respect to the meaning of that, notwithstanding

13   any other provision of law, which does not address anything

14   having to do with when an action can be brought.  It's being

15   stretched to an application that the statute just does not

16   contemplate.

17           The last thing I would say -- the second-to-last thing

18   I would say is just that I haven't had a chance to review the

19   Montgomery Ward case which was not in the briefs.  And if the

20   Court intends to rely on that, I would appreciate an

21   opportunity to review it and address that.  With that, I'll

22   submit.

23           THE COURT:  Ms. lee, anything further?

24           MS. LEE:  Your Honor, only to state that in reading

25   Section 18116.1, the Court will interpret subsection (b) in

PG&E Corporation and Pacific Gas and Electric Company

1    conjunction with all the other subsections, which, as I

2    previously described in the Register Your Mobile Home Program,

3    shows that the legislature did not think the liens expired

4    because, under that program, when buyers who were defrauded

5    owed years and years of liens, the legislature -- this is in

6    Section (d)(1)(D) -- the applicant pays any charges assessed by

7    the Department during the period between the time the applicant

8    took ownership or December 31st, 2015, so either whenever the

9    purchaser purchased the property or December 2015.  And the

10   purchaser could have purchased the property years before 2015.

11           So in this program, the Register Your Mobile Home

12   Program where the legislature stepped in to prevent buyers who

13   were defrauded from having to pay potentially decades' worth of

14   registration fees, the buyers had to pay a max of five years.

15   And that's because they had to apply for this program by 2020.

16           So the earliest fee could have been 2015.  If you

17   applied -- if you applied by 2020, the max you would have had

18   to pay was five years.  And it just shows that the legislature

19   never intended for these liens to expire in three or otherwise

20   they wouldn't have stepped in to waive these fees and help

21   these defrauded buyers.  And they wouldn't have made the

22   longest amount buildings would have to be paid as five years.

23           THE COURT:  Okay.  So, Mr. Handcock, here's a

24   question.  This comes up in a context of an agreed briefing

25   that you and the other side came up with.  And it's

(973) 406-2250 | operations@escribers.net | www.escribers.net

        PG&E Corporation and Pacific Gas and Electric Company

1   essentially -- it arises with the proof of claim.  And so the

2   Department files a claim for 300 and some odd thousand dollars.

3   And you briefed it and -- thoroughly and argued it well.

4           My question is, though, what happens if I rule?  In

5   other words, if I rule in favor of the Department, that means

6   the claim stands.  And presumably PG&E will pay it.  If I -- or

7   does it -- or is that what it means?  In other words, if I say

8   your statute of limitations argument and I reject it, they

9   didn't have to bring a suit, the equivalent of bringing a suit

10  is filing a claim.

11          So do I understand that the company would pay?  Or

12  conversely, if I ruled that the statute applies and the claim

13  is barred, that means you never pay, you're -- in effect gotten

14  your lien released, right?  I mean --

15          MR. HANCOCK:  Yes.

16          THE COURT:  -- essentially, under your theory, under

17  your theory, they can't -- the Department could have sued and

18  didn't, therefore lose its lien.  The bankruptcy came along.

19  So in lieu of a suit, they file a proof of claim.  If I say

20  there -- and under the Supreme Court teaching and the

21  Bankruptcy Code, if a claim could have been barred by the

22  statute of limitations before the bankruptcy, it's -- it can't

23  participate in the bankruptcy.

24          So the question then (audio interference) ruling in

25  your favor mean you have clear title to those ninety-two

PG&E Corporation and Pacific Gas and Electric Company

1  modulars?

2         MR. HANCOCK:  So if -- yeah, correct.  If the statute

3  of limitations had run before the bankruptcy, then -- as we are

4  arguing in the papers and our briefs at this hearing, then they

5  would be unable to enforce those liens because the statute of

6  limitations has run except to the approximately five thousand

7  dollars' worth of liens which -- for which the statute had not

8  run.  And that's what --

9         THE COURT:  Yeah, I understand that.  I don't imagine

10  PG&E would have fought this fight for five thousand dollars.

11         Okay.  But what that means, again, leaving aside

12  appeal, if I make a ruling that says PG&E wins, in effect, PG&E

13  can sell off those (audio interference) without the accrued

14  liens going with them.  They're in effect (audio

15  interference), right?

16         MR. HANCOCK:  So I'm sorry.  You actually cut out and

17  froze there.  I think I understood you to say if PG&E prevails

18  and you accept my statute of limitations argument, does PG&E

19  get effectively clear title?

20         THE COURT:  Yes.  Yeah.

21         MR. HANCOCK:  So that's right.  Because they no longer

22  can either attempt to enforce their claims proactively,

23  affirmatively, nor can they raise the lien defensively against

24  a request to clear title the title, the title should be

25  cleared.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Okay, one second, please.

2          Yeah, I'll tell you what.  I don't need to take time.

3   I was going to ask Ms. Lee to give me further information about

4   this Register Your Mobile Home.  And Mr. Hancock, I was --

5   whether you need time to read the Montgomery Ward case.  I

6   don't think that's necessary.  You both have thoroughly briefed

7   an interesting but discreet question.  And you've argued it

8   well.  I don't need to waste any more time.

9          If I had nothing to do and wanted to write the

10  definitive piece of work on this so that there would be a

11  published case, I might do that.  But I'm not.  I'm satisfied

12  that Ms. Lee has got the prevailing argument here.

13         And that this notion that the case law says that there

14  must be clear and convincing proof of the legislative intent,

15  I'm satisfied that there is that proof.  And the fact is that,

16  although there aren't magic words like bring a suit at any

17  time, I think Mr. Hancock used the term and recited to an

18  action at any time.

19         But I went back while you were arguing and reread

20  18116.1(b).  And it begins with a notwithstanding.  But that

21  same subparagraph goes on to read that the penalties and fees

22  will be due and delinquent for 120 days or more and continue to

23  accrue to include all fees and penalties that subsequently

24  become due and remain unpaid.

25         And then in the next subparagraph (c), it says until

PG&E Corporation and Pacific Gas and Electric Company

1    the amount of the lien provided in (a) is paid, the Department

2    shall not do either of the following.  And then it goes on to,

3    in effect, mean clear title.  I mean, again, that's a

4    shorthand.  So to me, that is clear.

5         And more importantly, I think, given the comprehensive

6    coverage of the section, something that I have not encountered

7    before and learned from both of you what a modular unit is like

8    a coach -- I mean, we all know a mobile homes are in trailers

9    and boats, but some of these names are a little more obscure

10   for us that live in the city.  To me, there's a comprehensive

11   scheme that's adopted here.  And the legislature, to me, made

12   little -- left little doubt about it.

13        And I would almost -- notwithstanding the Supreme

14   Court's California's clear and unmistaken message, I think it

15   is clear and unmistaken.  And it's clear and unmistaken to me

16   that there simply isn't a statute -- let's put it this way.

17   I'm not going to -- I'm not going to worry about whether PG&E

18   could or couldn't bring a suit.  I'm satisfied that they

19   certainly have the right to hold onto these liens.  And that

20   certainly translates for these purposes, for -- in this context

21   that they have a claim that's allowable here.

22        So in other words, Mr. Hancock, I wasn't trying to set

23   you up for the kill by telling you what my conclusion was,

24   because I frankly hadn't decided.  I wanted to listen to the

25   argument.  But in the traditional claims allowance process,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   when a claim is allowed, the debtor is expected to pay it.

2   PG&E is a solvent debtor.  It's paying its creditors and

3   particularly the creditors who aren't affected by the fire

4   trust.  And if I thought that PG&E would take a loss here as

5   something that they just simply won't pay it anyway, they'll

6   wait until they want to try to transfer these units, I

7   wouldn't -- I wouldn't take kindly to that.  I would take -- I

8   would be of the view that they have an obligation to do it.

9        So I'm going to make this oral explanation that I'm

10  going to sustain -- or overrule the debtors' objections and

11  sustain the Department's interpretation and say that it has an

12  allowed claim in the amount prayed for, for the reasons

13  articulated and particularly that I've just decided.  If PG&E

14  wishes to appeal it, this is a pure question of law.  I don't

15  need to make any findings.  There are no facts in dispute.  Ms.

16  Campbell's statement was factual, but it's not a fact that's

17  material or influences my outcome.  To me the -- so I don't

18  think that, Mr. Hancock, you or your client are prejudiced on

19  that.

20       So this is -- a long way of saying is I don't believe

21  that the statute of limitations under this matter of California

22  law bars the Department's right to enforce its rights under the

23  statute.  As a practical matter, I believe it therefore has the

24  right to compel payment until it transfers any title to a

25  purchaser or anyone else.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    And then, as a more practical matter, as the judge

2   overseeing the case, I believe it's consistent with that ruling

3   that I would direct PG&E to pay the amount -- do the same way

4   they would pay any other allow claim in this case.

5    Again, as long as they -- I mean, if he chooses to

6   appeal my decision, I'm not going to worry about that.  I'm

7   going to assume that if they accept my ruling and do not appeal

8   it, they'll just pay it in the normal course.

9    Ms. Lee, this is another way of saying I'm ruling in

10  your favor.  I will issue a simple order that will recite that,

11  for the reasons stated on the record -- I haven't thought of

12  the exact words, but it will be that I'm overruling the

13  debtors' objections and contending and concluding that the

14  Department has preserved its lien rights.  And that's where the

15  order will stop.

16    I'm saying to you, I'm assuming Mr. Hancock and his

17  client will -- if they choose not to appeal this ruling, they

18  will simply pay them the bill, if you will.  If they don't, I'm

19  available to provide some sort of appropriate remedy, if

20  necessary.  I hope it doesn't come to that, and I don't expect

21  it to.  It's a practical matter.  It may be 300 thousand

22  dollars.  But in the grand order of things in the PG&E

23  bankruptcy, that's something that I don't expect to have

24  further hearings about unless necessary.

25    So I want to thank you both for -- again, for

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   addressing a -- maybe for you -- and Ms. Lee -- maybe this is

2   everyday stuff for you in your specialty, but it's certainly

3   not something that I encounter very often.

4           And to you, Mr. Hancock, again, I don't know whether

5   this is your daily bread and butter, but you both handled it

6   very thoroughly.  And I appreciate the argument.

7           So I'll thank you both for your efforts, congratulate

8   you, Ms. Lee, for your success, and leave it at that.

9           Any questions from either of you?

10          MR. HANCOCK:  No.  Thank you, Your Honor.

11          MS. LEE:  No.  Thank you --

12          THE COURT:  Thank you very much for your time.

13          MS. LEE:  -- for your time, Your Honor.

14          THE COURT:  Thank you.  Thank you.

15          Ms. Parada.  I'm going to conclude the hearing at this

16  point.

17      (Whereupon these proceedings were concluded.)

18

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1                    I N D E X

2   RULINGS:                                    PAGE LINE

3   Debtors' objection to claim 56767 is           39    10

4   overruled.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case: 19-30088    Doc# 11268    Filed: 09/16/21    Entered: 09/16/21 09:41:34    Page 42
of 52    operations@escribers.net | www.escribers.net
(973) 406-2250

1                  C E R T I F I C A T I O N

2

3   I, Michael Drake, certify that the foregoing transcript is a

4   true and accurate record of the proceedings.

5

6

7

8   _____

9   /s/ MICHAEL DRAKE, CER-513, CET-513

10

11  eScribers

12  7227 N. 16th Street, Suite #207

13  Phoenix, AZ 85020

14

15  Date:  September 16, 2021

16

17

18

19

20

21

22

23

24

25

Case: 19-30088   Doc# 11268   Filed: 09/16/21   Entered: 09/16/21 09:41:34   Page 43
of 52
(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**AB (1)**
12:23
**abbreviated (1)**
7:2
**able (6)**
3:25;6:15,18;8:23;
13:25;28:14
**accept (2)**
36:18;40:7
**accessible (1)**
22:13
**accommodated (1)**
7:4
**accrual (2)**
17:22;22:3
**accrue (3)**
27:21;33:2;37:23
**accrued (2)**
13:8;36:13
**accrues (1)**
33:1
**accurate (1)**
31:22
**acquire (1)**
11:9
**across (1)**
26:8
**Act (7)**
9:17;10:17,17;13:17;
14:21,24;28:18
**action (22)**
11:2,3;15:16;18:7;
19:18;23:4,10,15;24:1,
8;26:11;28:9,11,15,19,
25;29:2;32:19,19;33:1,
14;37:18
**actions (5)**
14:3;23:9;28:1,6,24
**actually (7)**
11:20;14:23;20:13;
28:1,16;32:21;36:16
**Ad (1)**
12:7
**add (3)**
30:5;31:9,18
**addition (1)**
31:8
**additional (4)**
18:23;19:16,18;
26:10
**address (7)**
7:20;17:11,12;19:13;
32:9;33:13,21
**addressed (1)**
17:7
**addressing (1)**
41:1
**adopt (2)**
10:23,24
**adopted (1)**

38:11
**ADR (1)**
7:1
**advantage (1)**
12:23
**advised (1)**
29:9
**affected (1)**
39:3
**affirmative (5)**
23:2,9,10,15;24:8
**affirmatively (1)**
36:23
**afternoon (1)**
29:18
**again (17)**
3:14;5:2;6:8;7:14;
19:15;20:4,10;21:9;
24:17;26:2,6;33:7;
36:11;38:3;40:5,25;
41:4
**against (6)**
16:1,1,10,11;29:6;
36:23
**ago (2)**
5:5;11:21
**agree (1)**
24:16
**agreed (1)**
34:24
**agreed-upon (2)**
20:16;33:8
**agreement (3)**
19:14,17;26:10;33:9
**ahead (5)**
5:13;16:14;20:9;
21:13;24:24
**allow (2)**
19:13;40:4
**allowable (1)**
38:21
**allowance (1)**
38:25
**allowed (2)**
39:1,12
**allows (1)**
12:11
**almost (1)**
38:13
**along (1)**
35:18
**although (2)**
18:3;37:16
**always (3)**
15:17;26:9;32:17
**ambiguous (1)**
33:12
**amend (2)**
12:8;14:5
**amended (1)**
6:22
**amendment (3)**
12:16,18;14:1

**amount (6)**
6:21;18:5;34:22;
38:1;39:12;40:3
**annual (1)**
30:8
**annually (4)**
30:8,13,20,22
**apart (1)**
32:24
**apologies (1)**
30:3
**apologize (1)**
4:19
**App (1)**
28:3
**apparently (1)**
4:25
**appeal (5)**
36:12;39:14;40:6,7,
17
**appear (2)**
7:6;9:24
**appearance (1)**
29:25
**appeared (2)**
7:5,5
**appearing (1)**
8:1
**appears (3)**
4:15,20;5:2
**applicable (2)**
15:25;19:5
**applicant (2)**
34:6,7
**application (2)**
27:10;33:15
**applied (2)**
34:17,17
**applies (6)**
10:18;13:17;14:8;
28:6,23;35:12
**apply (8)**
19:9;23:16;24:2,19,
25;28:12,23;34:15
**appreciate (4)**
5:15,16;33:20;41:6
**appropriate (2)**
8:2;40:19
**approximately (1)**
36:6
**argue (1)**
32:2
**argued (2)**
35:3;37:7
**arguing (2)**
36:4;37:19
**argument (17)**
6:7;7:11;14:6;17:15;
21:5,5;24:21;31:1;
32:3,5,7,11;35:8;
36:18;37:12;38:25;
41:6
**arguments (1)**

21:13
**arises (1)**
35:1
**around (1)**
14:13
**articulated (1)**
39:13
**aside (2)**
23:20;36:11
**assessed (1)**
34:6
**assessments (1)**
23:16
**assume (2)**
24:24;40:7
**assumed (1)**
10:3
**assuming (1)**
40:16
**attempt (1)**
36:22
**attend (1)**
3:25
**audio (4)**
31:2;35:24;36:13,14
**August (2)**
6:4;7:8
**available (1)**
40:19
**averse (1)**
20:14
**aware (4)**
7:14;30:11,15,18
**away (1)**
16:5

## B

**back (4)**
7:3;9:10;12:15;
37:19
**bad (1)**
16:10
**Bankruptcy (12)**
5:18;20:20,21;21:1,
10,12;35:18,21,22,23;
36:3;40:23
**bar (1)**
26:8
**barely (1)**
5:20
**barred (2)**
35:13,21
**bars (1)**
39:22
**basically (1)**
27:6
**bat (1)**
9:5
**bear (1)**
11:14
**become (2)**
14:21;37:24

**bedridden (1)**
5:18
**began (1)**
5:2
**beginning (2)**
26:20;27:18
**begins (2)**
22:13;37:20
**behalf (2)**
4:22;8:1
**behind (1)**
13:16
**Benvenutti (1)**
3:19
**best (2)**
5:21;23:11
**bill (3)**
11:13;22:1;40:18
**bit (2)**
10:14;14:11
**blocked (1)**
3:13
**boathouses (1)**
10:19
**boats (1)**
38:9
**bogged (1)**
20:5
**bond (1)**
23:16
**bore (1)**
16:3
**both (7)**
8:25;19:20;37:6;
38:7;40:25;41:5,7
**bought (1)**
12:22
**bread (1)**
41:5
**brief (3)**
18:18;19:2;25:4
**briefed (2)**
35:3;37:6
**briefing (2)**
27:6;34:24
**briefly (1)**
29:19
**briefs (3)**
26:14;33:19;36:4
**bring (13)**
11:2,3;18:5;23:14;
28:14,19,24;29:2,17;
32:19;35:9;37:16;
38:18
**bringing (3)**
8:15;24:8;35:9
**broad (1)**
27:10
**brought (9)**
14:3;23:5,10;24:1;
28:9,11;32:10,19;
33:14
**bugs (1)**

Case: 19-30088    Doc# 11268    Filed: 09/16/21    Entered: 09/16/21 09:41:34    Page 44
of 52

20:23
**buildings (1)**
34:22
**bunch (1)**
26:9
**butter (1)**
41:5
**buy (1)**
15:24
**buyer (4)**
11:8,16;12:7;13:10
**buyers (4)**
34:4,12,14,21
**buying (1)**
12:5
**buys (1)**
13:9

## C

**Cal (1)**
28:3
**CALIFORNIA (6)**
3:1;8:24;19:21;
26:16;27:8;39:21
**California's (1)**
38:14
**Call (10)**
3:4,16,21;4:19,21;
6:11;7:23;16:2,21;
31:11
**callers (1)**
6:9
**Calling (2)**
3:7;8:10
**came (3)**
11:20;34:25;35:18
**camera (1)**
8:21
**Campbell (15)**
29:10,11,16,18,22,
24;30:2,3,6;31:4,6,7,
10,13,15
**Campbell's (1)**
39:16
**can (39)**
3:9,10;4:3,4,5,7,10,
11,11,13;5:9,20,22;
8:21;9:11;11:14;13:8,
24;16:16,16;17:20,24;
20:2,2;23:4;24:1;26:9,
10,11;28:25;29:2,17;
30:25;32:18,19;33:14;
36:13,22,23
**capped (1)**
33:7
**car (1)**
9:12
**care (1)**
5:20
**cars (1)**
30:22
**case (23)**

6:23;14:10;18:6;
25:2,14,16,16,17,23;
26:16;27:9,20;28:2,6,7,
22,23;33:19;37:5,11,
13;40:2,4
**cases (2)**
32:15,18
**cash (1)**
11:8
**cc'd (2)**
5:4,4
**CCP (4)**
22:22;23:4,21;24:1
**center (1)**
17:16
**certain (1)**
22:20
**certainly (4)**
6:6;38:19,20;41:2
**challenging (1)**
17:4
**chance (2)**
17:4;33:18
**chances (1)**
15:25
**changed (1)**
11:7
**charge (1)**
15:5
**charges (2)**
13:8;34:6
**choose (3)**
26:11;29:5;40:17
**chooses (2)**
29:2;40:5
**chose (2)**
15:8;27:14
**chosen (1)**
30:24
**circular (1)**
24:17
**circumstance (4)**
23:15;24:25;25:24;
33:6
**circumstances (1)**
22:15
**citation (1)**
28:3
**cite (1)**
27:9
**cited (3)**
25:3,5;32:16
**city (1)**
38:10
**civil (12)**
11:2,3;14:2;15:16;
28:1,6,9,11,19,23,24;
29:2
**claim (13)**
6:21;16:1;35:1,2,6,
10,12,19,21;38:21;
39:1,12;40:4
**claims (5)**

18:7,11;26:8;36:22;
38:25
**Clara (1)**
28:3
**clarify (1)**
6:14
**clear (25)**
7:21;12:7;14:1;17:9;
22:2;26:16,17,21;27:3,
7,22;32:12,14,16,20;
33:11;35:25;36:19,24;
37:14;38:3,4,14,15,15
**cleared (1)**
36:25
**clearly (1)**
20:6
**CLERK (9)**
3:5,11;4:3,6,8,14;
8:9,15;29:9
**clerks (1)**
4:1
**Clerk's (1)**
5:16
**client (2)**
39:18;40:17
**clue (1)**
21:20
**coach (5)**
9:18,20,21;10:1;38:8
**coaches (1)**
13:1
**Code (4)**
24:22;27:11,13;
35:21
**collection (1)**
23:3
**coming (1)**
8:13
**commence (2)**
15:8,15
**commenced (1)**
15:16
**commercial (13)**
9:15,17,18;10:1,1;
13:1,18;14:11,16;
15:20;30:10,12,19
**communicate (3)**
5:8;6:16,19
**communicated (1)**
6:17
**communication (2)**
7:15,15
**Community (2)**
8:24;30:4
**company (2)**
18:22;35:11
**compel (1)**
39:24
**completed (1)**
30:17
**comprehensive (2)**
38:5,10
**concept (1)**

20:6
**conclude (2)**
8:4;41:15
**concluded (1)**
41:17
**concludes (1)**
8:6
**concluding (1)**
40:13
**conclusion (1)**
38:23
**condition (2)**
14:17;18:19
**congratulate (1)**
41:7
**conjunction (1)**
34:1
**connection (1)**
4:16
**consider (5)**
8:1;10:13,16;20:12;
31:24
**consistent (1)**
40:2
**contemplate (1)**
33:16
**contending (1)**
40:13
**contest (1)**
15:6
**context (4)**
10:14;14:11;34:24;
38:20
**continuance (1)**
6:1
**continue (3)**
27:21;33:2;37:22
**Contrast (1)**
16:5
**conversely (1)**
35:12
**convince (1)**
17:5
**convinced (1)**
30:25
**convincing (1)**
37:14
**copied (1)**
4:2
**Corporation (2)**
3:7;8:11
**correctly (1)**
4:20
**cost (1)**
11:14
**costs (2)**
14:14,18
**counsel (2)**
29:15;30:3,7
**county (6)**
20:2;28:3,8,8,10,10
**county's (1)**
28:17

20:6
**couple (2)**
6:14;22:15
**course (6)**
10:6;21:9;22:10;
26:9;27:25;40:8
**Court (116)**
3:4,5,9,13,18,20;
4:19;5:7,9,12,20,24;
6:1,7,8,18;7:7,22;8:6,9,
12,19,25;9:5,9,20,24;
10:3,9,13,15;11:11,18,
24;12:2,15,19,21;13:3,
5,14,19,23;14:25;15:3,
9,11,14,18,23;16:14,
21;17:1,3,6;18:6,8,10,
16,25;19:2,8,19,25;
20:18;21:3,19,25;22:7,
10,16,18,22;23:18;
24:5,16;25:1,5,7,16,21;
26:16,22;27:1,3,8;28:5,
11,13,21;29:5,9,14,16,
22,25;30:5,24;31:5,7,
13,16,23,25;32:8;
33:20,23,25;34:23;
35:16,20;36:9,20;37:1;
41:12,14
**Court's (2)**
7:1;38:14
**cover (3)**
12:17,18;25:14
**coverage (1)**
38:6
**covers (1)**
12:25
**COVID (1)**
5:19
**create (1)**
24:18
**created (1)**
14:3
**creditors (2)**
39:2,3
**cut (1)**
36:16
**Cutler (1)**
27:9

## D

**d1D (1)**
34:6
**daily (1)**
41:5
**date (3)**
7:3,3,6
**daughter (2)**
5:19;6:11,17;7:19
**David (1)**
3:19
**day (2)**
21:12;26:8
**days (1)**
37:22

**dealing (2)**
13:5;25:24
**deals (2)**
7:16;21:11
**debtor (2)**
39:1,2
**debtors' (5)**
7:10;10:9,20;39:10;
40:13
**decades' (1)**
34:13
**December (2)**
34:8,9
**decide (1)**
6:5
**decided (2)**
38:24;39:13
**decision (2)**
25:8;40:6
**decisions (1)**
25:3
**default (2)**
19:22;20:1
**defendant (1)**
16:10
**defense (1)**
7:17
**defensive (2)**
23:13;24:15
**defensively (9)**
13:12,25;15:17;
21:18;24:10;25:13;
28:25;29:4;36:23
**defined (1)**
9:19
**definition (3)**
9:15,16,25
**definitive (1)**
37:10
**defrauded (3)**
34:4,13,21
**delinquencies (1)**
33:3
**delinquent (2)**
33:7;37:22
**Dennis (3)**
3:6;5:18;8:10
**Department (30)**
8:24;10:10,20;11:2;
13:24;14:4,14,15,22;
15:8;16:6,8;20:21;
21:25;25:18;27:25;
28:14,24;29:2,12,15;
30:4,10,14;34:7;35:2,5,
17;38:1;40:14
**Department's (6)**
10:24;14:15;24:20;
29:21;39:11,22
**depends (1)**
25:17
**describe (1)**
27:17
**described (2)**

12:24;34:2
**Development (2)**
8:24;30:4
**difference (1)**
20:6
**different (1)**
12:21
**difficult (1)**
21:6
**difficulty (1)**
11:11
**direct (1)**
40:3
**directly (1)**
3:24
**disadvantage (1)**
31:23
**disagrees (1)**
27:25
**disappear (1)**
12:7
**disciplines (1)**
26:9
**discreet (1)**
37:7
**discussing (1)**
17:13
**discussion (1)**
17:16
**disposition (1)**
17:17
**dispute (1)**
39:15
**distinction (1)**
23:6
**DMV (1)**
30:22
**docket (1)**
7:24
**documents (1)**
11:10
**dollars (11)**
6:22;10:8,11,22;
11:4;12:24;15:7;16:12;
35:2;36:10;40:22
**dollars' (1)**
36:7
**done (3)**
9:12;12:13;21:21
**doubt (1)**
38:12
**down (2)**
11:24;20:5
**drafted (2)**
16:18;27:12
**drafting (1)**
11:6
**driving (2)**
30:1,2
**due (4)**
30:9,20;37:22,24
**during (3)**
18:16;21:1;34:7

35:9

**E**

**earlier (2)**
3:23;6:23
**earliest (1)**
34:16
**early (1)**
5:3
**effect (8)**
11:12;16:9;17:19;
28:2;35:13;36:12,14;
38:3
**effectively (2)**
20:11;36:19
**efforts (1)**
41:7
**eight (1)**
16:22
**either (14)**
6:9;7:25;13:8;22:15;
23:13;24:1,10,14;
25:13,19;34:8;36:22;
38:2;41:9
**element (4)**
15:22;32:15,17,25
**elementary (1)**
15:22
**else (5)**
4:9;6:11;13:9;23:21;
39:25
**email (7)**
3:23,24;4:2;5:3,15,
16;7:19
**emphasize (1)**
32:13
**enacted (2)**
11:22;12:10
**encounter (1)**
41:3
**encountered (2)**
21:1;38:6
**end (1)**
29:5
**enforce (11)**
18:24;19:17;26:4,12;
28:10,15,25;29:3;36:5,
22;39:22
**enforcement (1)**
25:10,12,17,21;26:1
**enforcer (1)**
26:23
**enough (4)**
14:23;15:3,4;26:12
**enter (2)**
17:24;20:2
**entirely (1)**
25:15
**entity (1)**
28:8
**equally (2)**
10:18;13:18
**equivalent (1)**

35:9
**Erica (1)**
8:23
**essentially (3)**
9:21;35:1,16
**even (4)**
7:15;11:8;21:4;
32:21
**everyday (1)**
41:2
**everyone (3)**
3:15;4:19;8:3
**evict (1)**
10:21
**evicting (4)**
11:4;13:6,6,7
**eviction (1)**
11:12
**exact (1)**
40:12
**example (3)**
25:9;32:15,17
**examples (2)**
32:16,20
**except (1)**
36:6
**excess (1)**
15:7
**exist (2)**
11:1;24:22
**exists (3)**
14:9;24:22;25:9,12
**expect (3)**
18:19;40:20,23
**expectation (1)**
26:3
**expected (1)**
39:1
**expire (2)**
14:22;34:19
**expired (2)**
12:14;34:3
**expires (1)**
26:1
**explain (4)**
7:10;22:9,25;23:11
**explanation (1)**
39:9
**expressed (2)**
17:9;26:3
**extend (2)**
19:4,8
**extension (7)**
18:14,20;19:5,12;
20:15,16;33:8
**extensively (1)**
6:16
**extinguished (15)**
14:7;21:16;22:14;
23:1,2,3,8,12,24,25;
24:3,8,9,13,19

**F**

**fact (4)**
15:14;32:24;37:15;
39:16
**facts (2)**
31:21;39:15
**factual (1)**
29:20;30:6;39:16
**fall (1)**
20:1
**familiar (3)**
15:20;19:22;28:22
**family (1)**
6:10
**favor (3)**
35:5,25;40:10
**fee (2)**
27:22;34:16
**fees (16)**
12:6,12;14:20,20,20;
27:18,19;30:9,20,23;
31:3;33:1;34:14,20;
37:21,23
**few (5)**
7:4;10:10,22;11:21;
16:11
**fight (1)**
36:10
**file (5)**
10:10,20;20:13;
26:10;35:19
**filed (1)**
6:21
**files (1)**
35:2
**filing (1)**
35:10
**final (1)**
33:10
**financial (1)**
11:11
**find (1)**
25:4
**findings (1)**
39:15
**fine (1)**
6:6
**fire (2)**
21:12;39:3
**First (9)**
6:14;9:14,14;10:7;
17:7,14,21;19:7;21:1
**five (12)**
9:7;12:11,24;18:19,
22;19:16,18;34:14,18,
22;36:6,10
**five-year (13)**
11:23;12:3;17:24;
18:12,13,17;19:5,11,
19,19;20:3;26:10;33:9
**fleshed (1)**

Case: 19-30088    Doc# 11268    Filed: 09/16/21    Entered: 09/16/21 09:41:34    Page 46
of 52

27:6
**floating (1)**
13:2
**folks (1)**
5:4
**follow (1)**
23:14
**following (1)**
38:2
**forbid (1)**
14:4
**forest (1)**
21:12
**forth (4)**
7:17;23:17;26:6;
33:5
**forwarded (2)**
3:24;5:5
**fought (1)**
36:10
**four (3)**
10:11;17:23;25:18
**FRANCISCO (1)**
3:1
**frankly (1)**
38:24
**friend (1)**
6:11
**frivolous (1)**
21:5
**front (2)**
22:12,18
**froze (1)**
36:17
**fully (2)**
18:3;28:16
**funded (1)**
14:23
**further (4)**
31:19;33:23;37:3;
40:24

**G**

**gave (1)**
21:20
**general (2)**
10:17;25:25
**gets (1)**
13:10
**given (2)**
26:19;38:5
**gives (1)**
17:23
**giving (2)**
18:19;19:18
**goes (4)**
22:14;27:17;37:21;
38:2
**Good (12)**
3:15,17,20;5:13;
8:12,17,19,25;16:24;
17:6;19:3;29:18

**governing (1)**
26:18
**Government (2)**
26:3;28:8
**graduated (3)**
17:19;20:11;26:6
**grand (1)**
40:22
**grant (1)**
19:16
**Griffiths (1)**
25:8
**guess (5)**
7:19;9:5;15:6;18:5,8
**guest (1)**
7:24

**H**

**Hancock (53)**
8:17,17,19;16:23,24;
17:2;18:9,15,18;19:1,7,
10,24;20:10,18,25;
21:14,23;22:4,8,11,17,
20,24;23:23;24:6,24;
25:2,6,8,20,23;26:23,
25;27:2;30:25;31:8,12,
18,20;32:6,9;35:15;
36:2,16,21;37:4,17;
38:22;39:18;40:16;
41:4,10
**hand (1)**
29:10
**Handcock (2)**
8:13;34:23
**handled (1)**
41:5
**hands (1)**
11:7
**happen (1)**
21:22
**happening (1)**
12:5
**happens (2)**
25:25;35:4
**hardship (1)**
26:5
**harsh (1)**
17:18
**HCB (1)**
30:14
**HCD (3)**
12:8;28:17,19
**Health (2)**
24:22;27:12
**hear (1)**
3:9,10,11,12;4:3,4,7,
8,10,12,13
**heard (5)**
4:24;5:2;6:12;7:24;
8:4
**hearing (7)**
5:9,16,21;8:4,7;36:4;

41:15
**hearings (1)**
40:24
**Hello (1)**
3:9
**help (1)**
34:20
**here's (2)**
22:25;34:23
**herself (2)**
6:10;7:25
**historically (1)**
20:23
**history (1)**
21:2
**Hold (4)**
8:19;23:19;31:13;
38:19
**Home (7)**
12:4,8;16:11;20:2;
34:2,11;37:4
**homeowner (2)**
11:7;20:8
**homes (13)**
10:18,21;12:5,12,16;
13:1,2,2,6,18;14:12;
17:17;38:8
**Honor (39)**
3:11,17,22;4:3;5:1;
6:3;7:1,18;8:5,16,22;
9:4,13,23;10:6;11:19;
12:20;13:4,13,20,24;
14:10;16:13,19,24;
27:2,5,24;28:7,17;29:1,
13,18;31:12;32:7,9;
33:24;41:10,13
**Honorable (2)**
3:5;8:9
**Honor's (4)**
9:14;10:7;11:20;
13:21
**hope (3)**
23:11;29:25;40:20
**house (5)**
15:24,25;16:1,5;20:1
**houses (1)**
11:4
**Housing (13)**
8:24;9:17;10:16,17,
19,19;13:17;14:12,17,
21,24;28:18;30:4
**hundred (3)**
10:11,22;16:11
**hundreds (2)**
30:9,9
**hypothetical (9)**
10:8,15;13:22;21:15;
22:6;23:7,8;24:7;28:14
**hypothetical-hypothetical (1)**
24:18
**hypotheticals (1)**
17:13

**I**

**idea (2)**
16:10,12
**identified (1)**
7:23
**imagine (3)**
18:21;19:15;36:9
**implement (1)**
19:5
**implements (1)**
19:4
**implied (1)**
6:4
**imply (1)**
23:8
**importantly (1)**
38:5
**impractical (1)**
10:11
**inclined (3)**
6:7,13;7:13
**include (6)**
18:13,20;27:11,14,
18;37:23
**indebted (1)**
19:15
**indeed (1)**
10:10
**indicated (1)**
7:9
**indicates (1)**
33:1
**indicating (1)**
7:12
**indiscernible (3)**
19:1;21:9;23:25
**individual (1)**
16:11
**indulge (2)**
22:6,8
**influences (1)**
39:17
**informal (1)**
7:15
**information (1)**
37:3
**insertion (1)**
31:21
**instead (2)**
15:17;28:1
**intend (1)**
10:25
**intended (3)**
11:6;13:25;34:19
**intends (1)**
33:20
**intent (2)**
17:9;37:14
**intention (1)**
13:16
**interesting (1)**

37:7
**interference (4)**
31:2;35:24;36:13,15
**interpret (1)**
33:25
**interpretation (7)**
10:24;24:14;25:15;
27:15,24,25;39:11
**into (4)**
14:15;17:24;18:11;
20:2
**invited (1)**
6:24
**issue (6)**
7:20;8:2;16:17;
21:10;32:1;40:10
**issued (1)**
7:8

**J**

**job (1)**
14:23
**Judge (5)**
3:15;4:10,15;5:18;
40:1
**judgment (2)**
16:8,9
**jurisdiction (1)**
18:6
**justified (1)**
18:3

**K**

**Keller (1)**
3:19
**kill (1)**
38:23
**Kim (1)**
3:19
**kind (2)**
20:22;21:11
**kindly (1)**
39:7

**L**

**lack (1)**
15:12
**lane (1)**
16:9
**language (9)**
17:9;26:17,21;27:4,
23;32:12,17,21;33:11
**lapse (3)**
22:14;23:3;26:12
**large (2)**
26:7,8
**last (3)**
5:3;6:24;33:17
**late (1)**
5:3

Case: 19-30088    Doc# 11268    Filed: 09/16/21    Entered: 09/16/21 09:41:34    Page 47
of 52

**later (1)**
6:22
**law (16)**
13:16;15:25;25:2,14,
16,16,23;26:16;27:7,
14;32:12,24;33:13;
37:13;39:14,22
**lawsuit (1)**
10:10;20:13
**lawyer (5)**
5:17;18:11,11;19:3;
29:11
**learned (1)**
38:7
**least (3)**
6:18;16:22;26:2
**leave (2)**
19:13;41:8
**leaving (1)**
36:11
**Lee (56)**
8:13,20,21,22,23;9:4,
5,7,13,23,25;10:6;
11:16,19,25;12:3,18,
20,25;13:4,12,15,20,
24;15:2,10,12,16,21;
16:13,15,18;17:7,15;
19:20;24:20;26:3;27:3,
5;28:7,16;29:1,6,8,13,
15;32:10;33:23,24;
37:3,12;40:9;41:1,8,11,
13
**left (1)**
38:12
**legal (4)**
15:13;28:17,18;32:1
**Legally (1)**
15:2
**legislative (2)**
17:9;37:14
**legislature (11)**
10:25;11:5,21;12:10,
13;27:12;34:3,5,12,18;
38:11
**legislature's (1)**
10:24
**lender (1)**
15:24
**letter (1)**
7:19
**liability (6)**
14:3;15:6;16:5;20:8,
22;21:11
**lien (34)**
10:8;12:22;15:17,18;
17:15;19:22;21:16;
22:13,22,22;23:1,1,3,8,
12,24,24;24:3,9,12,19,
21;25:9,11,18,22;26:4;
28:15,25;35:14,18;
36:23;38:1;40:14
**liens (20)**
11:1,6,9;12:9,13;

13:25;14:7,21,22;
25:25;27:17,21;29:3;
34:3,5,19;36:5,7,14;
38:19
**lieu (1)**
35:19
**light (1)**
21:4
**likely (1)**
15:12
**limitation (1)**
32:18
**limitations (26)**
7:11,17,20;11:1;
13:17;14:8;15:7;17:10,
21;19:6,12;20:16;26:8,
18;29:6;31:1;32:4,6,
22;33:8;35:8,22;36:3,
6,18;39:21
**limited (3)**
16:1;18:6;26:11
**line (2)**
4:11;13:12
**Lisa (2)**
29:10;30:3
**listen (2)**
18:12;38:24
**listening (1)**
5:12
**litigation (1)**
5:17
**little (6)**
10:14;14:10;18:7;
38:9,12,12
**live (1)**
38:10
**loan (1)**
15:24
**location (1)**
14:16
**long (3)**
17:22;39:20;40:5
**longer (1)**
36:21
**longest (1)**
34:22
**long-term (2)**
17:24;19:11
**look (2)**
4:1;21:25
**looking (1)**
25:2
**lose (3)**
31:2;32:5;35:18
**losing (1)**
29:6
**loss (2)**
20:4;39:4
**lost (1)**
4:15
**lot (1)**
29:5
**lots (1)**

17:2
**luck (1)**
31:2

**M**

**magic (1)**
37:16
**makes (1)**
11:5
**making (2)**
17:16;21:4
**Manufactured (9)**
9:16;10:16,17,19;
13:2,17;14:21,24;
28:18
**many (1)**
5:8
**Mark (1)**
8:17
**marker (1)**
23:23
**material (1)**
39:17
**matter (11)**
3:7;6:4;8:2,10;
10:22;14:7;21:8;39:21,
23;40:1,21
**matters (1)**
6:14
**max (1)**
12:11;34:14,17
**may (14)**
3:22;6:4;8:12;10:13,
13,15;18:3;19:8;20:18;
23:10;28:19,19;30:24;
40:21
**maybe (4)**
15:3;21:20;41:1,1
**mean (17)**
12:19;15:3;16:8,17;
18:14;21:4,25;24:16,
17;28:13;32:2;35:14,
25;38:3,3,8;40:5
**meaning (4)**
9:18;10:1;25:11;
33:12
**means (9)**
9:22;15:21;21:5,17;
31:24;35:5,7,13;36:11
**meant (1)**
11:18
**mechanism (1)**
25:12
**mechanisms (1)**
26:1
**mediation (3)**
6:25;7:2,5
**meeting (1)**
4:1
**memory (1)**
6:23
**merely (1)**

13:15
**message (2)**
4:15;38:14
**MHA (1)**
10:15
**mic (1)**
8:21
**microphone (2)**
31:10,14
**might (3)**
16:10;17:5;37:11
**million (1)**
6:22
**mind (11)**
21:6
**minute (1)**
29:7
**minutes (2)**
9:7;16:22
**mobile (17)**
10:18,19;12:4,5,8,12,
16;13:1,18;14:11,12,
16;16:11;34:2,11;37:4;
38:8
**model (1)**
12:22
**modular (7)**
9:15,18,22,24;10:2;
30:19;38:7
**modulars (7)**
13:18;14:11,16;16:7;
30:10,12;36:1
**module (1)**
13:7
**modules (2)**
12:17,18
**moment (2)**
4:14,17
**money (7)**
14:18;15:3,4,9;16:8,
9;18:22
**Montali (4)**
3:15;4:10;5:18;8:10
**Montanelli (1)**
3:6
**Montgomery (6)**
28:2,5,22,22;33:19;
37:5
**months (1)**
6:24
**more (15)**
7:23;10:14,23;11:5;
14:11;16:16;21:11;
26:23;32:1,1;37:8,22;
38:5,9;40:1
**morning (11)**
3:15,17,20,21,23;
5:3;8:12,17,19,25;
16:25
**mortgage (1)**
19:25
**most (2)**
15:12;17:3

**motion (1)**
26:18
**move (2)**
13:21;14:12
**moved (2)**
7:3;16:7
**much (9)**
9:6;10:4,23;11:5;
18:4;22:21;27:20;
29:19;41:12
**must (3)**
14:3;15:2;37:14
**mute (2)**
31:10,13
**myself (1)**
8:23

**N**

**name (1)**
29:23
**named (1)**
29:9
**names (1)**
38:9
**narrow (1)**
16:17
**nature (1)**
7:16
**necessarily (1)**
18:2
**necessary (3)**
37:6;40:20,24
**need (11)**
17:8;18:2;20:12;
26:16;29:22;22;31:13;
37:2,5,8;39:15
**needed (1)**
30:15
**neutered (1)**
25:11
**new (1)**
12:10
**next (1)**
37:25
**night (1)**
5:3
**nine (3)**
17:25;18:2;20:12
**ninety-two (2)**
30:12;35:25
**nonrecourse (3)**
15:19,20;16:2
**nor (1)**
21:5;36:23
**normal (2)**
21:9;40:8
**notice (1)**
5:16
**noticed (3)**
7:2;30:13,22
**notices (1)**
30:7

Case: 19-30088     Doc# 11268     Filed: 09/16/21     Entered: 09/16/21 09:41:34     Page 48
of 52

**notified (3)**
30:8,14,15
**notion (2)**
26:2;37:13
**notwithstanding (7)**
27:7,13;32:12,24;
33:12;37:20;38:13
**number (2)**
5:4;6:8

**O**

**objection (3)**
6:5,6;7:13
**objections (2)**
39:10;40:13
**obligation (4)**
15:19;23:5;24:2;
39:8
**obscure (1)**
38:9
**obtaining (1)**
19:16
**occur (1)**
10:12
**odd (1)**
35:2
**off (7)**
9:21;11:6,9;12:9,24;
33:6;36:13
**offensive (2)**
23:13;24:14
**offensively (2)**
24:10;25:13
**often (1)**
41:3
**oftentimes (1)**
14:17
**older (2)**
27:19,20
**once (1)**
15:16
**One (17)**
4:14,16;6:17;7:23;
8:1,19;13:10;17:1,14,
22;19:9;23:14;24:2;
32:3,17,19;37:1
**one-year (1)**
17:22
**only (7)**
11:2;14:8;24:7;28:1,
6,23;33:24
**Onto (2)**
21:15;38:19
**oOo- (1)**
3:3
**open (1)**
19:13
**opening (1)**
12:16
**opportunity (2)**
7:9;33:21
**oral (1)**

39:9
**order (11)**
3:4;6;4:7:8;8:2;9:2,
15;14:5;26:21;40:10,
15,22
**original (2)**
27:21,22
**otherwise (1)**
34:19
**out (13)**
3:13;9:11;11:4;14:6;
16:7;17:1,25;20:12;
23:19;27:6;30:21;31:2;
36:16
**outcome (1)**
39:17
**over (3)**
3:14;12:24;30:9
**overcome (1)**
26:15
**overriding (1)**
27:10
**overrule (1)**
39:10
**overruling (1)**
40:12
**overseeing (1)**
40:2
**owe (1)**
11:4
**owed (1)**
34:5
**owing (1)**
18:22
**owner (6)**
11:11,13,16;12:7;
14:19;30:19
**ownership (1)**
34:8

**P**

**paid (6)**
11:6;12:9;13:10;
22:1;34:22;38:1
**papers (3)**
6:5,13;36:4
**Parada (4)**
3:9,10;29:17;41:15
**parallel (1)**
20:4
**parking (2)**
9:11,12
**participate (3)**
4:25;6:25;35:23
**participating (1)**
9:1
**particularly (3)**
20:15;39:3,13
**party (2)**
14:1;19:15
**passed (1)**
11:21

**passing (1)**
18:4
**past (1)**
6:18
**Pause (2)**
3:8;4:16
**pay (25)**
11:8,13;12:11,24;
13:8;14:19;18:23;
19:25;20:21;22:2;
30:15,23;32:3;34:13,
14,18;35:6,11,13;39:1,
5;40:3,4,8,18
**paying (3)**
18:1;21:8;39:2
**payment (3)**
17:24;18:4;39:24
**payout (1)**
19:5
**pays (3)**
13:10;33:6;34:6
**Pedroia (12)**
3:21,23;4:21,25;5:8;
6:9,15,21;7:6,9,18,25
**penalties (4)**
33:1,4;37:21,23
**people (5)**
10:21;11:4;13:6;
17:17;29:5
**Perfect (1)**
13:23
**perhaps (3)**
7:13;32:1;33:6
**period (7)**
17:22;18:23;20:3;
23:13;24:10;32:4;34:7
**periods (2)**
23:14;24:11
**perpetuity (1)**
24:23
**person (1)**
18:22
**personal (2)**
16:5;20:8
**personally (1)**
16:2
**PG&E (35)**
3:7,16;5:5,18;6:5;
7:5;8:10,18;12:22;
15:5;16:6,8;20:20,20;
21:4,8,11;29:12;30:7,9,
13,18,24;35:6;36:10,
12,12,17,18;38:17;
39:2,4,13;40:3,22
**PG&E's (3)**
6:5;27:15,25
**ph (1)**
25:8
**phone (1)**
6:16
**phrase (4)**
27:7,9,14,16
**piece (1)**

37:10
**pincite (1)**
28:4
**place (2)**
14:13;30:21
**plaintiff (1)**
28:9
**plans (1)**
31:23
**pleadings (1)**
16:19
**Please (4)**
5:22;6:23;9:8;37:1
**pleasure (1)**
4:24
**point (22)**
9:14;11:9,13,15,20;
13:5,15;17:4,24;18:1,
3;20:10;23:12;24:3,9;
26:14,14;28:21;30:21;
32:9;33:10;41:16
**points (2)**
14:6;17:12
**possible (2)**
5:20;6:5
**potential (1)**
17:17
**potentially (4)**
10:21;18:7;21:18;
34:13
**practical (7)**
15:18;21:8,22;32:1;
39:23;40:1,21
**practice (5)**
15:14;18:10;20:20,
24;26:6
**practices (3)**
29:3;30:7,11
**prayed (1)**
39:12
**prejudiced (1)**
39:18
**prepared (1)**
29:12
**preserved (1)**
40:14
**preserving (1)**
18:23
**presiding (2)**
3:6;8:10
**presumably (4)**
11:7,16;27:19;35:6
**presume (2)**
9:2;19:25
**pretty (1)**
16:17
**prevailing (1)**
37:12
**prevails (1)**
36:17
**prevent (1)**
34:12
**previously (1)**

34:2
**Prime (1)**
5:16
**principal (3)**
23:5;24:2;26:15
**principle (1)**
26:18
**principles (1)**
25:25
**printed (1)**
23:19
**proactively (1)**
36:22
**probably (3)**
10:12;16:12;26:20
**problem (1)**
26:15
**procedures (1)**
7:2
**proceedings (1)**
41:17
**process (3)**
30:17,21;38:25
**program (12)**
12:3;17:25;18:12,13,
17;19:11,19;34:2,4,11,
12,15
**proof (4)**
35:1,19;37:14,15
**proper (1)**
11:9
**property (9)**
11:7;14:19;19:21,22;
20:4,7,7;34:9,10
**provide (4)**
10:14;14:10;26:9;
40:19
**provided (1)**
38:1
**provides (1)**
14:2
**providing (1)**
19:10
**provision (10)**
18:13;19:10,23;
25:10;27:7,13,14;
32:12,24;33:13
**provisions (3)**
19:21;23:4;24:1
**public (1)**
13:7
**published (1)**
37:11
**purchased (2)**
34:9,10
**purchaser (6)**
11:14,14;12:11;34:9,
10;39:25
**purchasers (1)**
12:5
**pure (1)**
39:14
**purposes (9)**

Case: 19-30088    Doc# 11268    Filed: 09/16/21    Entered: 09/16/21 09:41:34    Page 49
of 52

23:13,13;24:4,5,8,13,
15,15;38:20
**pursue (1)**
16:9
**pursuit (1)**
23:2
**put (4)**
18:18;19:3;26:14;
38:16

**Q**

**quote (1)**
32:20

**R**

**raise (2)**
29:10;36:23
**raised (2)**
17:12;21:17
**raises (1)**
21:15
**reach (2)**
19:14,14
**read (6)**
5:6;9:9;19:2;25:7;
37:5,21
**reading (2)**
22:5;33:24
**reads (1)**
23:1
**real (3)**
19:21;20:7,7
**reality (1)**
17:18
**reason (1)**
32:14
**reasonable (1)**
20:17
**reasons (3)**
16:2;39:12;40:11
**recall (2)**
6:21;7:7
**recalls (1)**
27:9
**receive (2)**
3:22,24
**received (1)**
7:15
**receiving (2)**
4:15;30:7
**recess (2)**
4:18;8:8
**recite (1)**
40:10
**recited (1)**
37:17
**record (5)**
5:14;11:9;14:2,2;
40:11
**recording (1)**
4:16

**recourse (1)**
20:7
**recover (2)**
15:9;26:11
**redeem (1)**
19:21
**redemption (1)**
20:3
**refer (2)**
32:16,25
**reference (3)**
17:14;19:11;23:20
**references (2)**
32:14;33:4
**referred (1)**
19:20
**referring (1)**
25:24
**refers (2)**
25:9;28:1
**reframing (1)**
21:19
**refresh (1)**
6:23
**refusing (1)**
14:5
**regarding (3)**
9:15;10:8,14
**regards (1)**
10:15
**Register (4)**
12:4;34:2,11;37:4
**registered (1)**
30:10
**registration (8)**
12:6,12;14:20;27:18,
19,22;30:8;34:14
**regulating (1)**
14:14
**regulations (1)**
14:15
**rehash (1)**
16:18
**reinvent (1)**
9:10
**reject (1)**
35:8
**rejoining (1)**
4:16
**related (1)**
30:7
**relatively (1)**
17:21
**release (2)**
25:18,21
**released (1)**
35:14
**relevant (1)**
31:25
**rely (2)**
31:23;33:20
**relying (1)**
25:14

**remain (1)**
37:24
**remarkably (2)**
19:20;20:5
**remedies (1)**
18:24
**remedy (2)**
25:11;40:19
**remind (1)**
6:20
**repayment (1)**
19:11
**repeat (2)**
5:9;26:13
**repeatedly (1)**
5:17
**representing (1)**
6:10
**request (3)**
5:24;6:1;36:24
**requested (3)**
7:3;14:1;16:19
**required (2)**
26:4;30:23
**reread (1)**
37:19
**rescheduled (3)**
5:21,23;7:6
**reserve (4)**
9:6,7;16:16,19
**reset (1)**
7:4
**resources (1)**
15:13
**respect (6)**
17:14;23:2,9,16,16;
33:12
**respond (2)**
7:10;15:23;31:21,24
**response (5)**
5:15;12:10;17:19;
20:11;32:10
**responses (1)**
26:7
**responsibility (1)**
30:19
**rest (1)**
16:20
**result (2)**
10:4;17:18
**review (2)**
33:18,21
**ride (1)**
20:22
**right (37)**
4:23;5:13,24;6:8;
7:22;8:1,6,12;10:4;
11:25;13:11;14:25;
15:1,9,11,13;16:4,4;
17:6;18:23;21:7;23:11;
25:1,10,22;26:22;30:5;
31:1,3,17;32:4;35:14;
36:15,21;38:19;39:22,

24
**rights (5)**
19:17;28:17,18;
39:22;40:14
**rigid (1)**
26:23
**risk (1)**
20:4
**route (1)**
6:7
**routinely (1)**
20:21
**rule (1)**
35:4,5
**ruled (1)**
35:12
**ruling (6)**
35:24;36:12;40:2,7,
9,17
**run (6)**
20:3;24:11;29:6;
36:3,6,8
**running (1)**
23:9
**Rupp (2)**
4:11,13

**S**

**Safety (2)**
24:22;27:13
**sale (1)**
20:14
**same (6)**
9:18,23;10:1;22:5;
37:21;40:3
**SAN (1)**
3:1
**Sandra (1)**
4:21
**Santa (1)**
28:3
**satisfied (3)**
37:11,15;38:18
**saying (7)**
9:21;22:13;23:7;
28:5;39:20;40:9,16
**schedule (1)**
9:3
**scheduled (1)**
6:25
**scheme (1)**
38:11
**Schirle (1)**
5:17
**season (1)**
21:12
**second (5)**
8:20;13:21;21:15;
24:2;37:1
**second-to-last (1)**
33:17
**section (19)**

9:16,17,19;10:16;
11:6,22;12:25;14:2,6,
7;21:17;22:5;23:19;
27:13,15,17;33:25;
34:6;38:6
**sections (3)**
10:5;27:11,11
**seem (3)**
17:3;20:17;24:20
**seemed (3)**
17:15,16;21:7
**seems (4)**
20:4;21:3,10;26:2
**seize (1)**
18:2
**seizure (1)**
20:14
**sell (3)**
18:3;30:16;36:13
**sells (1)**
11:13
**senior (2)**
29:15;30:3
**sense (2)**
10:23;11:5
**sent (1)**
5:3
**SEPTEMBER (2)**
3:1;7:10
**session (2)**
3:5;8:9
**set (4)**
7:2,17;23:20;38:22
**setting (1)**
15:20
**several (3)**
6:24;25:5;31:2
**shall (3)**
27:17,21;28:20;38:2
**short (2)**
5:5,6
**shorthand (1)**
38:4
**shows (2)**
34:3,18
**sic (1)**
11:22
**sick (1)**
5:19
**side (1)**
34:25
**signaled (1)**
27:10
**similar (3)**
19:20;20:6;30:22
**simple (1)**
40:10
**simply (8)**
6:3;7:24;11:12;
12:13;25:10;38:16;
39:5;40:18
**single (2)**
10:8;21:12

Case: 19-30088    Doc# 11268    Filed: 09/16/21    Entered: 09/16/21 09:41:34    Page 50
of 52

**situation (1)**
14:8
**slow (1)**
11:24
**small (6)**
18:5,7,11;26:7,8,12
**solvent (2)**
16:10;39:2
**somebody (4)**
13:9;18:1;20:23;
33:6
**someone (5)**
5:4;6:10,18;29:9;
31:16
**sophisticated (1)**
18:21
**sorry (4)**
6:15;8:22;31:18;
36:16
**sort (4)**
10:3;15:19;21:6;
40:19
**sounds (1)**
19:20
**speak (1)**
9:14
**speaking (2)**
7:25;10:7
**speaks (1)**
7:25
**specialty (1)**
41:2
**specific (3)**
14:13;29:20;30:12
**specifically (4)**
9:17,25;23:21;25:24
**spend (1)**
10:4
**staff (2)**
29:15;30:3
**standard (1)**
17:8
**stands (1)**
35:6
**start (3)**
3:14;5:2;10:7
**starting (1)**
4:23
**State (13)**
11:3;13:10;16:7;
17:20,24;18:2,21;19:3,
13;21:18;26:19;29:23;
33:24
**stated (2)**
28:11;40:11
**statement (1)**
39:16
**states (2)**
10:1;27:10
**statue (1)**
23:9
**statute (49)**
7:11,16,20;10:25,25;

12:11;13:16;14:3,8;
15:6;17:10,11,19,21;
18:13,14,16,20,24;
19:4,4,6,7,12;20:16;
22:23;24:14;26:7,17;
27:22;29:6;31:1;32:4,
6,22;33:2,7,8,15;35:8,
12,22;36:2,5,7,18;
38:16;39:21,23
**stepped (2)**
34:12,20
**Steven (1)**
5:17
**still (5)**
18:1,4;25:14;28:15;
33:10
**stop (1)**
40:15
**straightforward (1)**
32:3
**strange (1)**
21:3
**stretched (1)**
33:15
**struck (1)**
21:3
**stuff (1)**
41:2
**stupid (1)**
16:12
**submission (1)**
7:21
**submit (1)**
33:22
**submitted (2)**
7:19;8:2
**submitting (1)**
6:6
**subparagraph (2)**
37:21,25
**subsection (1)**
33:25
**subsections (1)**
34:1
**subsequently (1)**
37:23
**success (1)**
41:8
**successful (1)**
30:17
**sue (3)**
16:8;9;28:18
**sued (1)**
35:17
**suggest (1)**
28:24
**suggested (1)**
24:7
**suggestion (1)**
9:2
**suggests (1)**
22:6
**suit (7)**

10:21;15:8;35:9,9,
19;37:16;38:18
**superfluous (1)**
27:16
**Superior (2)**
15:8;18:6
**support (1)**
14:6
**Supreme (4)**
26:16;27:8;35:20;
38:13
**sure (12)**
5:1;11:25;16:24;
18:18;20:10;21:14,23;
22:10,10,12;29:12;
31:20
**surprise (2)**
30:20;32:2
**sustain (3)**
7:13;39:10,11
**symptoms (1)**
5:19

**T**

**talk (2)**
5:20;6:16
**talking (3)**
15:4,5;31:16
**talks (1)**
25:3
**tasked (2)**
14:14,23
**tax (2)**
19:22;28:10
**taxes (2)**
20:1,8
**Taylor (19)**
3:16,17,19,19,22;4:4,
5,7,23;5:1,11,14,25;
6:3,13;7:1,14,18;8:5
**teaching (1)**
35:20
**telling (1)**
38:23
**temporal (1)**
32:15,17,25
**term (3)**
9:18;15:20;37:17
**terms (3)**
15:19;22:25;23:23
**terribly (1)**
31:25
**Thanks (2)**
16:24;21:14
**theory (4)**
10:9,20;35:16,17
**therefore (3)**
10:23;35:18;39:23
**thinking (1)**
21:7
**thoroughly (3)**
35:3;37:6;41:6

**though (2)**
14:19;35:4
**thought (3)**
23:20;39:4;40:11
**thousand (4)**
35:2;36:6,10;40:21
**threatened (1)**
11:12
**three (7)**
12:14;14:4,5,22;
17:22;27:19;34:19
**threw (1)**
9:21
**tickets (1)**
9:11
**timeout (1)**
29:7
**times (1)**
5:8
**timing (1)**
9:3
**title (14)**
11:9;12:8,9;14:1,2,5;
22:2;35:25;36:19,24,
24,24;38:3;39:24
**titled (1)**
12:4
**titling (1)**
30:9
**today (2)**
5:22;8:14
**told (1)**
5:17
**tolled (1)**
18:16
**tolling (1)**
19:3
**took (2)**
16:6;34:8
**traditional (1)**
38:25
**trailers (1)**
38:8
**transfer (2)**
30:16;39:6
**transfers (1)**
39:24
**translates (1)**
38:20
**tried (2)**
5:21;28:9
**true (1)**
7:8
**trust (1)**
39:4
**try (2)**
12:21;39:6
**trying (5)**
13:15;25:4;28:10;
30:16;38:22
**TUESDAY (1)**
3:1
**turn (1)**

8:21
**twenty (2)**
22:1,2
**two (2)**
23:14,15
**types (1)**
10:18;14:12,20

**U**

**ultimate (1)**
17:8
**unable (2)**
31:21;36:5
**unclear (1)**
33:11
**under (21)**
10:9,20;14:20,24;
15:25;17:18;18:24;
21:17;22:22;23:4,25;
24:22;33:2,5,8;34:4;
35:16,16,20;39:21,22
**Understood (2)**
5:11;36:17
**unenforceable (1)**
25:11
**unexpected (2)**
31:8,20
**unidentified (1)**
6:9
**unit (2)**
16:11;38:7
**units (1)**
39:6
**unknowingly (1)**
12:5
**unless (3)**
8:3;29:11;40:24
**unmistakable (11)**
17:9;26:17,21;27:3,
8,23;32:13,14,16,21;
33:11
**unmistaken (3)**
38:14,15,15
**unpaid (2)**
12:6;37:24
**unwell (1)**
6:15
**up (10)**
6:22;9:5;11:20;
16:15;21:6;29:5;32:10;
34:24,25;38:23
**upon (4)**
14:3;23:5;24:1;
25:17
**use (4)**
7:1;11:8;13:25;
16:15
**used (4)**
8:22;13:12;15:17;
37:17
**uses (1)**
28:19

Case: 19-30088    Doc# 11268    Filed: 09/16/21    Entered: 09/16/21 09:41:34    Page 51
of 52

**utility (1)**
13:7

## V

**various (1)**
33:4
**view (3)**
7:20;17:4;39:8
**violations (1)**
9:12

## W

**Wait (2)**
11:24;39:6
**waive (2)**
19:17;34:20
**walk (1)**
16:5
**wants (1)**
13:9
**Ward (6)**
28:2,5,22,23;33:19;
37:5
**warned (1)**
5:8
**waste (1)**
37:8
**way (7)**
12:21;13:10;16:15;
38:16;39:20;40:3,9
**weak (1)**
5:22
**weeks (1)**
7:4
**weren't (1)**
30:16
**wheel (1)**
9:10
**whenever (4)**
13:8,23;14:1;34:8
**Whereupon (3)**
4:18;8:8;41:17
**whole (1)**
26:8
**win (3)**
21:21;30:25;32:5
**wins (1)**
36:12
**wish (2)**
7:24;20:25
**wishes (5)**
6:11;8:4;16:6;29:10;
39:14
**within (5)**
10:11;14:4,5;23:4,25
**without (9)**
6:6;12:9;16:5;18:23;
19:16;25:9,10;27:13;
36:13
**word (3)**
9:20,24;28:19

**wording (1)**
24:7
**words (5)**
35:5,7;37:16;38:22;
40:12
**work (1)**
37:10
**working (1)**
4:20
**worry (2)**
38:17;40:6
**worth (2)**
34:13;36:7
**write (1)**
37:9
**wrote (1)**
22:19

## Y

**years (28)**
10:11;11:21;12:6,12,
14,24;14:4,5,22;17:23,
23,25;18:2,19,22;
19:16,18;20:12;22:1,2;
25:19;27:20;34:5,5,10,
14,18,22

## Z

**Zoom (1)**
7:5

## 1

**10th (2)**
6:4;7:8
**1122 (1)**
28:4
**1138 (1)**
28:4
**11861d1D (1)**
11:22
**11861-point (1)**
11:24
**120 (1)**
37:22
**14 (1)**
3:1
**18001.8 (2)**
9:17,24
**18116.1 (5)**
10:17;11:6;12:25;
27:4;33:25
**18116.1b (2)**
32:11;37:20
**18116.1d1D (1)**
12:1
**18116.2 (1)**
33:5

## 2

**200-dollar (1)**
15:5
**2015 (4)**
34:8,9,10,16
**2016 (1)**
11:21
**2018 (1)**
10:9
**2020 (2)**
34:15,17
**2021 (1)**
3:1
**22 (1)**
23:21
**250,000 (1)**
6:22
**261 (3)**
10:8;11:4;12:24
**261-dollar (1)**
12:22
**2911 (15)**
14:6;21:17,20,20,21;
22:5,12;23:19;24:18,
19,21,25;25:14;27:24;
28:1

## 3

**3- (1)**
17:15
**300 (2)**
35:2;40:21
**300,000 (1)**
15:7
**31st (1)**
34:8
**338 (4)**
14:2;27:11;28:11,11
**340 (1)**
27:11

## 4

**400-dollar (1)**
17:15
**47 (1)**
28:3
**4th (1)**
28:3

## 5

**587 (1)**
12:23

## 7

**7th (2)**
7:10,21

## 8

**8587 (1)**

11:21

Min-U-Script®

Case: 19-30088    Doc# 11268    Filed: 09/16/21    Entered: 09/16/21 09:41:34    Page 52
of 52

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(9) utility - 8587