Lillian G. Stenfeldt (Cal Bar No. 104929)
Phillip K. Wang (Cal Bar No. 186712)
RIMON, P.C.
423 Washington Street, Suite 600
San Francisco, California 94111
Telephone: (415) 968-2002
Facsimile: (415) 968-2002
Email: lillian.stenfeldt@rimonlaw.com
phillip.wang@rimonlaw.com

Attorneys for Claimant
THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>and<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br><br>Debtor(s). | Case No. 19-30088 (DM)<br>(Lead Case)<br><br>Chapter 11<br>(Jointly Administered)<br><br>**RESPONSE BY CLAIMANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA TO REORGANIZED DEBTORS' FORTY-FOURTH OMNIBUS OBJECTION TO CLAIMS [DN 9464]**<br><br>**[re: Claim No. 61276]**<br><br>Hearing:<br>Date: October 19, 2021<br>Time: 10:00 a.m. PT<br>Place: (Telephonic or Video Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br>Judge: Honorable Dennis Montali |
| ☒ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☐ Affects Both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

The Regents of The University of California, on behalf of the University of California, San Francisco ("Claimant" or "UCSF"), by and through its undersigned counsel, Rimon P.C., hereby responds (the "Response") to the *Reorganized Debtors' Forty-Fourth Omnibus Objection To Claims (No Liability / Passthrough Claims)* [DN 9464] (the "Objection") filed by the Reorganized Debtors (or "PG&E") with regard to Claim No. 61276 (the "Claim"), and respectfully represents, as follows:

I. INTRODUCTION.

1. UCSF constructed a new home for its eye care services at 490 Illinois Street as part of its Mission Bay Campus, which opened its doors in November 2020 with more than 40,000 square feet of clinic space and nearly double the then-existing number of exam rooms. Of course, the new building needed electricity and gas, among other utilities, so UCSF had been in communications with PG&E for months before and during the construction of the new building so PG&E could determine when it would finish the infrastructure needed to supply permanent power to the building. PG&E planned to build the infrastructure and connect the permanent power via a pathway on Illinois Street, which is adjacent to the new building.

2. However, after the building construction was well underway, PG&E notified UCSF that the Illinois Street power pathway was no longer available and that new infrastructure for UCSF's permanent power pathway had to be built from a different, more distant, and obstacle-laden source across 3rd Street. UCSF is informed and believes that PG&E changed its plans and diverted its delivery of power to the UCSF building from the Illinois Street pathway so it could use that source to deliver power to the new Warriors stadium across the street. Regardless, the source for UCSF's power was farther away, moved mid-way thru construction, delivered at a later date, and cost substantially more. As a result – and despite more than sufficient meetings and notifications from UCSF and Webcor, UCSF's general contractor – PG&E's delays, lack of timely notice of its changed plans to deliver power to UCSF's new building, and a later power outage caused the construction of the building to be delayed by about 86 workdays (or about 126 calendar days), at a cost of over $4.5 million to UCSF.

3. Despite providing this factual information and supporting documentation to PG&E's counsel over six months ago, PG&E has not responded to the substance of the Claim, and instead, contends that PG&E is *never* liable under Electric Rule 14. This contention, however, is contrary to law, as set forth in detail below.

4. Based on the supporting factual background and legal authorities below, UCSF respectfully requests that the Court overrule the Objection. In the alternative, UCSF respectfully requests that the Court proceed with the hearing on the Response and Objection as a status conference and allow sufficient time after the initial status conference hearing for Claimant to conduct focused discovery, including at least document requests and depositions for additional evidentiary support for its Claim.

## II. FACTUAL BACKGROUND.[1]

5. In or around 2016, the University of California, San Francisco, which is part of the state university system owned and operated by Claimant pursuant to Article IX, Section 9 of the California Constitution, engaged in the construction of UCSF's Wayne and Gladys Valley Center for Vision, which is sometimes referred to as the "Block 33 Project." Now substantially completed, the Block 33 Project houses new ophthalmology clinics, as well as teaching, research, conference, and administrative space for various UCSF units previously located at multiple sites.[2] The building consists of three wings: a twelve-story tower; a five-story south wing; and a three-story north wing with a rooftop garden. The Block 33 Project is in Mission Bay, is located on the corner of 3rd and 16th Streets, and is bounded by 3rd Street on the West, 16th Street on the North, Illinois Street on the East, and Mariposa Street on the South. *See* McGee Dec., ¶ 5.

6. In the simplest terms, in 2016, UCSF contracted with Webcor to construct the Block 33 Project. Webcor's schedule to construct the new building relied on a specific time frame for permanent power to be supplied by PG&E. PG&E provided assurances and promises to provide

---

[1] UCSF has not completed its investigation into this matter and reserves the right to update or amend these supporting facts as its investigation continues.

[2] *See* Declaration of Patrick McGee In Support Of Response By Claimant The Regents Of The University Of California To Reorganized Debtors' Forty-Fourth Omnibus Objection To Claims [DN 9464] [re: Claim No. 61276] ("McGee Dec."), ¶¶ 1, 5.

permanent power to the Block 33 Project by a particular date. The Webcor costs and the sequence of trades to construct the building were based on those PG&E timelines. *See* McGee Dec., ¶ 6.

7. About two years into the Block 33 Project, PG&E informed UCSF that its source of power for the project was no longer available, and that PG&E needed to bring in another source of power from across the city, causing significant delays. It appears the power originally allocated to UCSF was diverted by PG&E to the Golden State Warriors' Chase Center. *See* McGee Dec., ¶ 7. Specifically, in August 2018, UCSF had a meeting with PG&E's third project manager.[3] *See* McGee Dec., ¶ 8 at Ex. 1. In that meeting, PG&E informed UCSF for the first time that PG&E's permanent power distribution along Illinois Street would be re-routed due to PG&E's own designs and decisions and that PG&E therefore lacked the capacity to provide power to serve the Block 33 Project down Illinois Street as originally planned and promised. *See* McGee Dec., ¶ 8 at Ex. 1. Instead, PG&E identified an alternate service location in the area along 3rd Street on the opposite side of the street and across the Muni tracks, which had not yet been constructed. *See* McGee Dec., ¶ 8 at Ex. 1. PG&E's change in plans required that the permanent power pathway must cross 3rd Street, beneath the Muni tracks, run down 16th Street and then onto Illinois Street before power could be connected to the permanent power point of connection for the Block 33 Project. *See* McGee Dec., ¶ 8 at Ex. 1. As a result of PG&E's change in plans, and in addition to the delay caused by this change, UCSF was forced to create an entirely new permanent power design coupled with a relocation requirement, and also required additional work regarding new UCSF-PG&E easement agreements and pathway construction issues. *See* McGee Dec., ¶ 8 at Ex. 1.

8. At the time of the original baseline schedule for the Block 33 Project, the work was forecasted to complete much earlier than the date PG&E actually provided permanent power service. *See* McGee Dec., ¶ 8 at Ex. 1. However, for multiple months, as permanent power continued to be impacted and delayed by PG&E, UCSF and its contractor Webcor were required to re-sequence construction activities down stream of power to alleviate project delay impacts. *See* McGee Dec., ¶ 8 at Ex. 1. Webcor made it clear that the permanent power date could not slip past

---

[3] PG&E had five different project managers for the Block 33 Project, each of whom was replaced over time by PG&E for lack of responsiveness or unresponsiveness to UCSF.

| | |
|---|---|
| 1 | the deadline established in the master schedule without causing delay to the entire project. The |
| 2 | Block 33 Project was further impacted in completing the main electrical room. *See* McGee Dec., ¶ |
| 3 | 8 at Ex. 1. |
| 4 | 9. An additional factor impacting the availability of permanent power was the delay in |
| 5 | PG&E crews completing permanent power pathways across 3rd Street, which would allow PG&E |
| 6 | to pull and terminate service to the Block 33 Project switchgear. *See* McGee Dec., ¶ 8 at Ex. 1. |
| 7 | This pathway was rescheduled by PG&E three times since early May 2019 and was finally |
| 8 | forecasted to be completed June 19, 2019 through June 21, 2019. *See* McGee Dec., ¶ 8 at Ex. 1. |
| 9 | Ultimately, PG&E provided permanent power service in or around July of 2019, which was a delay |
| 10 | of 86 workdays or over four months. *See* McGee Dec., ¶ 9 at Ex. 2. |
| 11 | 10. The absence of permanent power impacted all equipment startup and commissioning |
| 12 | activities for the Block 33 Project, impacted the ability to remove the temporary power necessary to |
| 13 | allow completion of rough-in and finishes construction work, and further impacted the ability of |
| 14 | UCSF and Webcor to start finish work that required conditioned space (e.g., Level 1 Lobby, |
| 15 | Auditorium wall wood paneling, reception desk, and stair treads). *See* McGee Dec., ¶ 8 at Ex. 1. |
| 16 | As the impact continued, the given power pathways and completion of PG&E controlled cable pulls |
| 17 | remained unknown, and Webcor and the design build team mitigated portions of the PG&E impact |
| 18 | with select acceleration and resequencing strategies. *See* McGee Dec., ¶ 8 at Ex. 1. |
| 19 | 11. PG&E created other and further delays to the Block 33 Project by failing to approve |
| 20 | the gas design submission and requesting additional letters be provided from UCSF and its architect |
| 21 | to confirm the gas meter room met all applicable codes and green book regulations. *See* McGee |
| 22 | Dec., ¶ 8 at Ex. 1. This impacted the Project's ability to commence boiler work and installation of |
| 23 | finishes that needed to be installed in conditioned space. *See* McGee Dec., ¶ 8 at Ex. 1. Finished |
| 24 | wood products are sensitive to fluctuations in temperature and humidity, and as such the |
| 25 | commissioning exhibits and project specifications required functioning mechanical systems before |
| 26 | beginning lobby finishes. *See* McGee Dec., ¶ 8 at Ex. 1. Due to incomplete utility connections, the |
| 27 | full impact to wood finishes is unknown. UCSF contractors Otis elevators, CEI and Webcor |
| 28 | drywall group worked to receive a temporary variance to operate cars A/B from the state elevator |

inspector on May 31, 2019. *See* McGee Dec., ¶ 8 at Ex. 1.

12. Last, on or about October 8, 2019, there was a PG&E permanent power outage, which caused a further schedule delay and additional costs for subcontractors related to "show-up" time. *See* McGee Dec., ¶ 9 at Ex. 3.

13. UCSF and Webcor took all reasonable steps to minimize or mitigate the impacts to the schedule and ongoing work caused by the PG&E permanent power delays. *See* McGee Dec., ¶ 8 at Ex. 1.

14. The Reorganized Debtors caused permanent power and other delays to the Block 33 Project and failed to exercise reasonable diligence and care to meet their commitments and obligations to provide timely permanent power pathways and service to the Block 33 Project. *See* McGee Dec., ¶ 8.

15. As a result of the Reorganized Debtors' failure to exercise reasonable diligence and care to furnish and deliver a permanent, continuous and sufficient supply of electric energy to the Block 33 Project, Claimant suffered damages in the total amount of $4,555,288, consisting of two parts:

    a. $4,538,754, in damages due to PG&E's failure to meet its commitments and obligations for timely permanent pathways and service to the Block 33 Project. *See* McGee Dec., ¶ 9 and Ex. 2 (Webcor's Change Order 92 with supporting documentation); and

    b. $16,534, in damages due to a loss of power while UCSF was still completing work on the Block 33 Project. *See* McGee Dec., ¶ 9 and Ex. 3 (Webcor's Change Order 95 with supporting documentation).

16. UCSF filed its Claim on a timely basis. On November 5, 2020, PG&E filed its Objection to UCSF's Claim. Beginning on December 17, 2020, UCSF made numerous attempts to meet and confer on the substance of UCSF's Claim with PG&E, through counsel.

17. In particular, on March 9, 2021, UCSF contacted the Reorganized Debtors, through counsel, with an e-mail message providing a factual summary of the Claim as well as copies of Change Order 92, Change Order 95, and a narrative providing additional factual background of

5

PG&E's delays and the damages caused by its delays, all of which supported UCSF's damages of over $4.5 million.

18. On September 9, 2021, UCSF was contacted by PG&E, through counsel, with regard to UCSF's Claim. UCSF attempted again to discuss a further continuance to allow time for the parties to discuss the substance of the Claim in order to avoid the unnecessary expense of litigation, and provided another copy of the Change Orders and factual background of the Claim to outside counsel for PG&E.

19. Regardless of these attempts to meet and confer in good faith, the Reorganized Debtors continue to object to the Claim as a No Liability Claim (DN 9464), and have not responded to UCSF on the factual substance of the Claim.

20. On September 25, 2020, the Court entered its *Order Approving ADR And Related Procedures For Resolving General Claims* (DN 9148) (the "ADR Order"). With regard to the Claim, the Reorganized Debtors have not initiated the General Claims Information Procedures under the ADR Order and have not served an Information Request Form to the Claimant. The Reorganized Debtors have similarly not engaged in any of the General ADR Procedures pursuant to the ADR Order with regard to the Claim.

21. PG&E postponed the hearing on the Objection multiple times because it was delayed in reviewing the Claim and its supporting materials. This Response follows.

III. **PG&E HAS SIGNIFICANT LIABILITY TO UCSF UNDER CLAIM 61276.**

   A. **The Reorganized Debtors Have A Duty To Exercise Reasonable Diligence And Care To Furnish And Deliver Continuous And Sufficient Supply Of Electric Energy To UCSF's Block 33 Project.**

22. PG&E must exercise reasonable care under Pacific Gas and Electric Company Tariff Electric Rule 14 ("Rule 14"), which provides in pertinent part:

> PG&E will <u>exercise reasonable diligence and care</u> to furnish and deliver a continuous and sufficient supply of electric energy to the customer, but does not guarantee continuity or sufficiency of supply. PG&E will not be liable for interruption or shortage or insufficiency of supply, or any loss or damage of any kind of character occasioned thereby, if same is caused by inevitable accident, act of God, fire, strikes, riots, war, or any other cause <u>except that arising from its failure to exercise reasonable diligence</u>."

23. If PG&E fails to comply with Rule 14, then it can be held liable for all loss, damages, or injury resulting from its failure. *See* Pub. Util. Code § 702 ("Every public utility shall obey and comply with every order, decision, direction, or rule made or prescribed by the commission in the matters specified in this part, or any other matter in any way relating to or affecting its business as a public utility, and shall do everything necessary or proper to secure compliance therewith by all of its officers, agents, and employees.")

24. Section 2106 of the Public Utilities Code states in relevant part:

> Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, <u>shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom</u>. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award <u>exemplary damages</u>. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person.

25. Public Utilities Code § 451 provides that "[e]very public utility shall furnish and maintain such adequate, efficient, just, and reasonable service, instrumentalities, equipment, and facilities ... as are necessary to promote the safety, health, comfort, and convenience of its patrons, employees, and the public."

26. "By undertaking to supply electricity to [a customer], [PG&E] obligated itself to exercise reasonable care toward him, and failure to exercise such care has the characteristics of both a breach of contract and a tort." *Langley v. Pacific Gas & Elec. Co.*, 41 Cal. 2d 655, 662 (1953) (holding PG&E liable for damages for failure to exercise reasonable care under Rule 14 as a result of failure to provide notice of power failure).

27. Here, Rule 14 and the case law reviewing this rule provide that PG&E has a duty of reasonable care to its customers, including UCSF. Claimant has carried its burden of proof to establish a prima facie claim against PG&E. *See Tesoro Refining & Marketing Co. LLC v. Pacific Gas & Elec. Co.*, 146 F. Supp. 3d 1170, 1187 (N.D. Cal. 2015) (holding that Rule 14 did not shield PG&E for damages caused by its own negligence). Moreover, "the general rule [is] that a limitation of 'liability for negligence must clearly and explicitly express that purpose,' as well as the California courts' instruction to resolve any doubt as to 'an ambiguity in a tariff [such as Rule 14] ...

in favor of the nondrafter and against the utility…'" *Id.*

28. Because PG&E's only known contention is that it is shielded from all liability under Rule 14, UCSF requests that the Court overrule PG&E's Objection and that the initial hearing on the Response be a status conference.[4]

**B. The Reorganized Debtors Are Liable For The Significant And Costly Delays Caused To UCSF's Block 33 Project Under Tort Or Contract Bases.**

29. There are multiple causes of action under which PG&E is liable for significant and costly delays caused by PG&E, including but not limited to, (a) negligence, *see Ewart v. Southern Calif. Gas Co.*, 237 Cal. App. 2d 163, 170 (1965) (stating elements for negligence); (b) breach of oral or written contract, *see* CACI No. 303 (breach of contract – essential factual elements); and/or (c) interference, *see Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (stating elements for interference with contractual relationship).

30. Here, USCF has established a claim for negligence in that PG&E has a duty to exercise reasonable diligence and care, that PG&E has breached its duty, and that PG&E's negligence caused substantial damages to UCSF. USCF has also stated a claim for breach of contract in that PG&E promised to exercise reasonable diligence and care in providing permanent power by a date certain, that PG&E breached its promise, whether oral or written, and that PG&E's breach caused significant damages to UCSF. Further, UCSF has established an interference claim in that PG&E had actual knowledge of UCSF's contract with Webcor and other contractors, that PG&E interfered with those contracts by unexpectedly changing and delaying its plan to provide a permanent power pathway to the Block 33 Project, and that PG&E's interference caused considerable harm to UCSF in the amount of more than $4.5 million.

31. Accordingly, there is more than ample grounds to overrule PG&E's Objection. Moreover, Claimant anticipates that it may likely need to conduct some limited discovery, particularly pertaining to why PG&E decided to belatedly change its planned pathway to provide power to UCSF and where PG&E diverted that power that was previously designated for UCSF, as

---

[4] UCSF reserves the right to respond to any additional contentions made by PG&E to support its Objection after those contentions are disclosed by PG&E.

Claimant's investigation into the facts underlying its Claim is not finished.

**IV.    REQUEST FOR RELIEF.**

32.     WHEREFORE, based on the Response and the supporting declaration and exhibits, Claimant respectfully requests that the Court:

    a.    Overrule the Objection;

    b.    In the alternative, proceed with the hearing on the Response and Objection as a status conference;

    c.    Allow sufficient time after the initial status conference hearing for Claimant to conduct focused discovery, including at least document requests and depositions; and

    d.    For such other and further relief as the Court deems appropriate and just.

    e.    Claimant reserves the right to amend and/or supplement this Response.

Respectfully submitted,

Dated: September 22, 2021                    RIMON, P.C.

By: _____
Phillip Wang
Attorneys for Claimant
THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA