1

## EXHIBIT A

**(Tuscan Ridge Proof of Claim)**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# United States Bankruptcy Court, Northern District of California

**Fill in this information to identify the case (Select only one Debtor per claim form):**

☐ PG&E Corporation (19-30088)

☒ Pacific Gas and Electric Company (19-30089)

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

| Part 1: | Identify the Claim |
| --- | --- |

| | | |
| --- | --- | --- |
| 1. Who is the current creditor? | Tuscan Ridge Associates, LLC | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor _____ | |
| 2. Has this claim been acquired from someone else? | ☒ No<br>☐ Yes. From whom? _____ | |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| | Contact phone 916-520-5353 | Contact phone _____ |
| | Contact email dginter@downeybrand.com | Contact email _____ |
| 4. Does this claim amend one already filed? | ☒ No<br>☐ Yes. Claim number on court claims registry (if known) _____ | Filed on _____<br>MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes. Who made the earlier filing? _____ | |

Case: 19-30088    Doc# 11291-1    Filed: 09/22/21    Entered: 09/22/21 16:04:19    Page 2 of 22

Claim Number: 58562

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____ |

| | |
|---|---|
| 7. **How much is the claim?** | $ <u>$9,500,000 to $12,000,000</u>    **Does this amount include interest or other charges?**<br>     ☐ No<br>     ☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>_____ |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>     **Nature of property:**<br>     ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>     ☐ Motor vehicle<br>     ☐ Other. Describe: _____<br><br>     **Basis for perfection:** _____<br>     Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>     **Value of property:**              $_____<br><br>     **Amount of the claim that is secured:**    $_____<br><br>     **Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>     **Amount necessary to cure any default as of the date of the petition:**    $_____<br><br>     **Annual Interest Rate** (when case was filed) _____%<br>     ☐ Fixed<br>     ☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Proof of Claim

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $_____

☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $_____

☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies.   $_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:  Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:**  *R. Dale Ginter*
R. Dale Ginter (Oct 17, 2019)

**Email:**  mfrazier@downeybrand.com

_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name       R. Dale Ginter
           First name          Middle name          Last name

Title      Attorney

Company    Downey Brand LLP
           Identify the corporate servicer as the company if the authorized agent is a servicer.

Address    621 Capitol Mall, 18th Floor
           Number          Street
           Sacramento                CA          95814
           City                      State       ZIP Code

Contact phone   916-520-5353          Email   dginter@downeybrand.com

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **I have supporting documentation.**
   **(attach below)**

☐ **I do not have supporting documentation.**

 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

# Instructions for Proof of Claim

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of January 29, 2019.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A** *Proof of Claim* **form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

Case: 19-30088    Doc# 11291-1    Filed: 09/22/21    Entered: 09/22/21 18:04:13    Page 6 of 22

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Proof(s) of Claim to:**

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your claim if you wish to receive a date-stamped copy.**

**Do not file these instructions with your form**

**United States Bankruptcy Court, Northern District of California**

**Fill in this information to identify the case (Select only one Debtor per claim form):**

❑ PG&E Corporation (19-30088)

❑ Pacific Gas and Electric Company (19-30089)

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to **11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

| Part 1: | Identify the Claim |
| --- | --- |

| | | |
| --- | --- | --- |
| 1. | **Who is the current creditor?** | _____<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. | **Has this claim been acquired from someone else?** | ❑ No<br>❑ Yes. From whom? _____ |

| | | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- | --- | --- |
| 3. | **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | | |
| | | Contact phone _____<br>Contact email _____ | Contact phone _____<br>Contact email _____ |

| | | |
| --- | --- | --- |
| 4. | **Does this claim amend one already filed?** | ❑ No<br>❑ Yes. Claim number on court claims registry (if known)_____     Filed on _____<br>                                                             MM / DD / YYYY |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ❑ No<br>❑ Yes. Who made the earlier filing? _____ |

Case: 19-30088    Doc# 11291-1    Filed: 09/22/21    Entered: 09/22/21 16:04:19    Page 8 of 22

| | |
|---|---|
| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |

**6. Do you have any number you use to identify the debtor?**

❏ No
❏ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____

**7. How much is the claim?**

$_____. **Does this amount include interest or other charges?**

❏ No
❏ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

❏ No
❏ Yes. The claim is secured by a lien on property.

**Nature of property:**

❏ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
❏ Motor vehicle
❏ Other. Describe: _____

**Basis for perfection:** _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%
❏ Fixed
❏ Variable

**10. Is this claim based on a lease?**

❏ No
❏ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

❏ No
❏ Yes. Identify the property: _____

Official Form 410
Proof of Claim
page 2

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ No | |
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)( ) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date _____ (mm/dd/yyyy)

_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name _____
First name          Middle name          Last name

Title _____

Company _____
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address _____
Number          Street

_____
City          State          ZIP Code

Contact phone _____          Email _____

Case: 19-30088    Doc# 11291-1    Filed: 09/22/21    Entered: 09/22/21 16:04:19    Page
10 of 22

# ATTACHMENT 1

# ATTACHMENT 1
# TO THE PROOF OF CLAIM OF TUSCAN RIDGE ASSOCIATES, LLC
# DATED OCTOBER 18, 2019

Tuscan Ridge Associates, LLC ("Tuscan Ridge"), owns approximately 172 acres that includes a golf course and other related property located at 3100 Skyway Road, Paradise, CA, Butte County APN: 040-520-103; 040-520-100, California ("Property"). Since November 2005, Tuscan Ridge has been working to entitle and develop the Property as a residential golf course community with associated residential, industrial and/or commercial elements. On October 26, 2010 (and amended on November 6, 2012), Butte County updated its general plan, which rezoned the Property as a future planned unit development, which allowed for residential uses at Tuscan Ridge, "provided that the golf course is also maintained" (See Butte County General Plan 2030 Land Use Element 4-32). Everything was on track to commence the work of developing the Property in or around the Spring of 2019.

From September 9, 2018, to November 8, 2018, the Debtor, Pacific Gas and Electric Company ("PG&E") occupied approximately 16 acres of the Property for its wildfire risk reduction operations in the Paradise area, pursuant to a license agreement dated September 13, 2018. This license agreement allowed PG&E to use the driving range area of the golf course for the staging of vehicles, landing of helicopters and storing of equipment, supplies and materials used in connection with PG&E's electric and gas utility operations and vegetation management. This license agreement was set to expire on December 10, 2018. However, PG&E informed Tuscan Ridge on November 6, 2018, that it had completed its fire prevention activities and would be vacating the site within a couple of days thereafter. PG&E's limited activities under the original license agreement only impacted the driving range and not the balance of the golf course.

In the midst of PG&E vacating the site, the devastating Camp Fire began on November 8, 2018. Ultimately, the Camp Fire destroyed the City of Paradise and surrounding communities and resulted in dozens of deaths. CalFire has determined that PG&E's equipment was the cause of this fire.

Immediately after the Camp Fire began, PG&E, without Tuscan Ridge's consent (and indeed without even informing Tuscan Ridge) commandeered the Property by unlawfully trespassing and taking over possession of about 53 acres of the Property for use as a base camp for its personnel and equipment needed to restore utility service to the burned out areas from the Camp Fire. The Property was instantly overwhelmed and swarming with hundreds of PG&E's personnel as well as large equipment. Upon informing Tuscan Ridge of the need to expand its footprint on the site, PG&E contracted with one of Tuscan Ridge's members to grade large sections of the golf course, and dump a layer of base rock covering much of the Property to support PG&E's heavy equipment. These activities effectively destroyed the golf course. Based on assurances from PG&E that it would restore the Property to its original condition, Tuscan Ridge negotiated with PG&E in good faith and after a couple of weeks, a new license agreement was reached to govern the terms of PG&E's use of the Property.

The License is entitled "Letter Agreement" and dated November 20, 2018 ("License"), about 2 weeks after PG&E commandeered the Property for its use. A copy of the License is attached hereto as Attachment 2. The License requires PG&E to restore the License Area to its Baseline Condition (as defined in the License) as a golf course, including the fairways and greens, bunkers, ponds, sprinkler systems and related improvements, including roads and parking lots, in

1591505.1

as good of a condition as it was prior to PG&E's use of the area, with the exception that PG&E was not required to replace the existing sod, turf and grass within the License Area. If Tuscan Ridge and PG&E could not agree upon the scope of the restoration work, the matter was to go to arbitration after which Tuscan Ridge had the option of requiring PG&E to perform the restoration or pay Tuscan Ridge the cost of the restoration as awarded by the arbitrator.

After vacating the Property in early March 2019, and following PG&E's filing of this Chapter 11, representatives from PG&E and its contractor, Turner Construction, met with Tuscan Ridge at the Property on March 11, 2019, to discuss restoration options, including PG&E's stated preference to make a payment to Tuscan Ridge to cover the cost of restoration. A preliminary estimate that Tuscan Ridge obtained from Melton Design Group was shared with PG&E with the mutual acknowledgment that additional restoration items needed to be added to the estimate.

Tuscan Ridge obtained a revised estimate for the costs of restoration dated March 20, 2019, from the Melton Design Group in the amount of $8,824,989.00. A copy of the Melton estimate is attached hereto as Attachment 3. This estimate was shared with PG&E in March 2019. In subsequent phone conversations, Tuscan Ridge was informed by PG&E personnel that Turner Construction's internal estimates for PG&E far exceeded the Melton Design Group estimate, and may be as high as $12 million. Following the March 2019 communications, PG&E refused to continue negotiations with Tuscan Ridge and refused to perform the restoration (ostensibly because of this Chapter 11). Consequently, Tuscan Ridge has the right to, and does, demand payment under the terms of the License.

Tuscan Ridge hereby asserts a claim for restoration under the License in the amount of $8,824,989.00, but reserves the right to amend this claim and assert a greater amount if the costs of restoration increase. The amount of this Claim will likely increase with the passage of time because the cost of restoration will change (probably increase) with time and Tuscan Ridge's consequential damages will continue to accrue.

Additionally, Tuscan Ridge's development entitlements require a golf course. Tuscan Ridge did not (and does not) have enough money to proceed with the Property's development until the golf course is restored. The delay imposed upon Tuscan Ridge's development by PG&E has caused Tuscan Ridge to suffer significant consequential damages. These consequential damages include, but are not limited to, about $100,000 in interest expense for a loan that matures in November 2019 which had to be extended; expenses incurred to deal with the delays in entitlements (such as general plan amendment, EIR, etc.); and ordinary carrying costs such as taxes, insurance, etc. Ultimately, if Tuscan Ridge cannot restore the golf course, it may have to completely revise its development plans, EIR, and obtain new entitlements, all at considerable cost. Finally, if the delay is too great, Tuscan Ridge's entitlements may expire in which case Tuscan Ridge may have to restart the entitlement process from the beginning, resulting in substantially greater damages.

Tuscan Ridge believes its total damages due to PG&E's failure to restore the Property will ultimately be between $9,500,000.00 and $12,000,000.00 if it is paid by mid-year 2020.

In addition to asserting contractual claims under the License, Tuscan Ridge also asserts its claims based upon trespass and/or, alternatively waste of the Property.

# ATTACHMENT 2



Pacific Gas and
Electric Company®

Elouise Del Rosario
PG&E – Land Acquisition
245 Market Street, San Francisco, CA 94105
C: (628) 219-8228
Elouise.DelRosario@pge.com

## LETTER AGREEMENT

November 20, 2018

Tuscan Ridge Associates, LLC
c/o E. M. West
6774 Woodland Drive
Paradise, CA 95969

**RE:** **Temporary License for Use of Portion of Parcel of Land**
3100 Skyway Road, Chico, CA, APN: 040-520-103; 040-520-100

Dear Mr. West:

Public records indicate that Tuscan Ridge Associates, LLC is the owner (**"Owner"**) of the parcel of land referenced above (the **"Property"**). Pacific Gas and Electric Company (**"PG&E"**) would like to memorialize its temporary use of a portion of the Property, commencing November 19, 2018, and expiring on May 20, 2019 (the **"Expiration Date"**), as a support site and base camp in connection with the Camp Fire restoration, that will include significant alterations to the Property, necessitated by the Camp Fire. Notwithstanding the foregoing, in the event PG&E's Activities continue beyond the Expiration Date, with the consent of Owner, such use shall be on a month to month basis, terminable on forty-five (45) days' advance written notice by either party, in which case the Owner shall reimburse PG&E any prepaid compensation allocated to periods after the termination of this letter agreement (**"Letter Agreement"**).

This Letter Agreement sets forth the terms and conditions of PG&E's temporary use of the **"License Area"** outlined in red on the attached drawing labeled **"Exhibit A"** When countersigned by PG&E and returned to you, this Letter Agreement shall serve to memorialize your grant of a temporary license, not coupled with an interest, to PG&E. This Letter Agreement supersedes all previous oral and written agreements between and representations by or on behalf of the parties and constitutes the entire agreement of the parties with respect to the subject matter hereof. This Letter Agreement may not be amended except by a written agreement executed by both parties.

PG&E will use the License Area in connection with its emergency response operations in the area. PG&E and its employees, contractors, agents and representatives (**"PG&E Representatives"**) may enter the License Area for the sole purpose of establishing a base camp and staging area to support the command, control and coordination of emergency response, which may include the staging of vehicles, equipment, supplies, and materials used in connection with PG&E's electric and gas utility operations, the disposal of used, treated wood poles, the landing of helicopters, and the temporary residency of PG&E Representatives (**"PG&E's Activities"**).

During the term of this Letter Agreement, PG&E has the non-exclusive right to use the License Area, along with the right of ingress and egress thereto. The license granted hereunder is personal to PG&E and may not be assigned by PG&E without the prior written consent of Owner. PG&E agrees and acknowledges that other public agencies (such as the County of Butte, FEMA, OES, GSA, etc.) may desire to use all or some of the Property, including the License Area. If Owner consents to such other use(s), PG&E agrees to reasonably cooperate in good faith with Owner and such other public agencies to

1

Case: 19-30088    Doc# 11291-1    Filed: 09/22/21    Entered: 09/22/21 16:04:19    Page
15 of 22

jointly use the Property and the License Area in whatever manner reasonably necessary to further the restoration efforts. Subject to the foregoing, PG&E has the right to erect and maintain temporary fencing and gates with a locking device to enclose the License Area, and shall remove such fencing and gates when PG&E has demobilized and vacated the License Area. Subject to PG&E's obligations to reasonably cooperate with Owner and other agencies as set forth above, the license granted hereunder will be irrevocable during the term of PG&E's Activities, except in the case of a material breach of the terms of this Letter Agreement. Notwithstanding the foregoing, after January 15, 2019, in the event a public agency, such as the ones set forth above, desires to utilize all or part of the Property for activities related to the Camp Fire restoration, PG&E will coordinate with those public agencies. If such use is not compatible with PG&E's Activities hereunder, Owner may terminate this Letter Agreement on forty-five (45) days' written notice to PG&E, in which case Owner shall reimburse PG&E any prepaid compensation (both Rental Fee and Independent Consideration) allocated to periods after the termination, in whole or in part, of this Letter Agreement. In the event of such termination, PG&E's restoration obligations under this Letter Agreement shall be proportionately reduced based on the use of any other public agency occupying the License Area.

In consideration for your willingness to enter into this Letter Agreement with PG&E to support the emergency response initiative, PG&E hereby offers to pay you the following:

**Twenty-Five Thousand dollars ($25,000.00)** per week as compensation for use of the License Area for PG&E's Activities, one thousand dollars ($1,000.00) per week for the use of the "Club House," seven hundred fifty dollars ($750.00) per week for the use of the "Pro Shop," as designated on Exhibit A and collectively referred to as the License Area. These fees of **$26,750.00 per week for a total of $695,500** shall be referred to herein as the "Rental Fee" and PG&E shall pay Three Hundred Forty-Seven Thousand Seven Hundred Fifty Dollars **($347,750.00)** in advance, and shall continue to pay **$26,750.00** per week, on a weekly basis until the Rental Fee is paid in full.

Within fourteen days of full execution of this Letter Agreement, PG&E shall pay Owner Five Hundred Thousand Dollars ($500,000) (the "Independent Consideration") as additional consideration for Owner's execution, delivery and performance of this Letter Agreement. The Independent Consideration is in addition to and independent of the Rental Fee, provided, however, that Owner shall reimburse PG&E that portion of the Independent Consideration allocated to periods after any termination, in whole or in part, of this Letter Agreement.

PG&E will furnish and install a water pump with generator and water meter monitor as well as pump discharge facilities to bring in water from a nearby irrigation pond to supply the on-site water for dust abatement. PG&E will pay $5/per acre foot to the owner for the water service. Owner shall grade and winterize the site for PG&E's use following PG&E's provided scope of work and schedule PG&E will reimburse the Owner for the costs of grading and winterization at the standard industry rates for such services. Payment is due and payable bi-weekly within 10 days after invoice is submitted to PG&E. In exercising the rights granted under this Letter Agreement, PG&E shall comply with all laws, ordinances, and regulations pertaining to its use of the License Area. PG&E shall be responsible for the payment of any increase in property taxes and assessments resulting from a reassessment of the Property related to PG&E's Activities. PG&E shall keep the License Area and Property free from any and all liens, including, without limitation, mechanics' liens, arising out of the work performed, materials furnished, or obligations incurred by PG&E. Owner may post and keep posted on the Premises notices of non-responsibility.

PG&E agrees to indemnify, defend and hold Owner, its partners, employees, agents and consultants harmless against any losses, costs, damages, expenses or liabilities connected with or resulting from the injury to or death of any person, or damage to or loss or destruction of any property arising out of the

2

negligent acts or omissions of PG&E, its employees, agents, subcontractors or invitees, under this Letter Agreement.

PG&E shall, at its sole cost and expense, maintain and restore the License Area, including the roads and parking lot(s), including any areas of ingress and egress, in as good of condition as it was prior to PG&E's use of the area (the "Baseline Condition"), provided, however, PG&E shall not be required to replace the existing sod, turf and grass within the License Area. PG&E agrees and acknowledges that the Baseline Condition includes the Property's current condition as of the date of this Letter Agreement, prior to the grading and winterization activities that Owner will perform for PG&E. The Baseline Condition includes the currently closed 18-hole golf course improvements on the Property, including the fairways and greens (that is, the grading and contours of such fairways and greens but excluding any sod, turf and grass in such areas), bunkers, ponds, sprinkler systems and related improvements. Inasmuch as Owner's grading and winterization activities, as well as PG&E's Activities, will cause permanent damage to the golf course improvements, PG&E's restoration obligations at the end of the term of this Letter Agreement include restoring the License Area in a professional manner to the Baseline Condition (including the golf course improvements as described above), at PG&E's sole cost and expense. All other existing improvements located on the Property are to be protected in place, unless otherwise agreed to by Owner. PG&E shall make no alteration, improvements, borings, installations or fixtures to the Property without prior written consent by Owner. Any damage to the Property or License Area caused by PG&E's Activities shall be promptly repaired by PG&E at its sole cost and expense.

At the expiration or earlier termination of this Agreement, PG&E shall meet and confer with Owner as to the nature and scope of the restoration work. If PG&E and Owner cannot agree on the extent of PG&E's restoration obligations set forth above, then the parties shall engage a third party neutral (the "Arbitrator") to estimate the cost to restore the License Area to the Baseline Condition, as set forth above. The Arbitrator shall have at least ten (10) years of experience in the construction industry. The cost of the Arbitrator shall be shared equally between PG&E and Owner. At the option of Owner, Owner may elect to have PG&E cause the completion of the restoration obligations at PG&E's sole cost and expense, or the Owner may elect for PG&E to pay to Owner the amount estimated by the Arbitrator to complete the restoration, due and payable within thirty (30) days following PG&E's receipt of written notice from Owner of such election to complete the restoration..

PG&E shall have the right to self-insure with respect to any of the insurance requirements required under this Letter Agreement. PG&E's self-insurance program is in full force and effect and in compliance with and subject to all the terms, agreements, covenants, conditions and provisions of this Letter Agreement and shall at a minimum include (a) commercial general liability insurance covering PG&E's Activities, with a combined single limit for bodily injury and property damage of not less than $5,000,000 per occurrence and $10,000,000 in the aggregate, (b) Worker's Compensation Insurance (at the minimum required by law) for all persons employed in carrying out activities in the License Area, and (iii) Automobile Liability insurance covering all owned, hired and non-owned vehicles brought onto the License Area, with limits of at least $2,000,000 combined single limit per occurrence for bodily or personal injury or death, for property damage and loss of use thereof.

The Letter Agreement signed on September 14, 2018 and Amendment on October 16, 2018 is hereby terminated. This Letter Agreement supersedes all previous oral and written agreements between and representation by or on behalf of the parties and constitutes the entire agreement of the parties with respect to the subject matter hereof.

If the terms and conditions of this Letter Agreement are acceptable to you, please acknowledge your agreement by signing this letter. Please return a copy to EIDQ@pge.com. A fully-executed copy of this Letter Agreement will be provided to you for your records.

3

If you have any questions regarding this Letter Agreement, please contact me at 628-219-8228. Thank you for your willingness to work with PG&E during the Camp Fire wildfire emergency response. Your support is truly making a difference in the community.

Sincerely,

Elouise Del Rosario
Land Acquisition

I/we hereby accept the foregoing terms and conditions of this Letter Agreement, and acknowledge that I/we am/are duly authorized to execute this Letter Agreement:

PROPERTY OWNER

By: _____
Elmo West, signing on behalf of Tuscan Ridge Associates, LLC

Date: 11-20-18

PACIFIC GAS AND ELECTRIC COMPANY

By: _____
~~Emad Gholami~~ Aimee Craw-ford
AC ~~Supervisor, Land Acquisition~~ Director, Land Management

Date: 11/20/2018

4

# Exhibit A

Tuscan Ridge, 3100 Skyway Road, Chico, CA

License Area, approximately 100 Acres Total



Contact:
Mark West, 530-624-4454, westm15@gmail.com
Mo West, 530-520-4529, emowesthill@gmail.com

5

# ATTACHMENT 3





# TUSCAN RIDGE GOLF COURSE
## P.G. & E. RESTORATION ESTIMATE - REVISED
### 03/20/2019

| | | AMOUNT | PER | COST | TOTAL COST | TBD |
|---|---|---|---|---|---|---|
| **1** | **Remove the heavy base rock on the approximately 53 acres of graded/disturbed area (see adds)** | | | | | |
| | a. Pick up and consolidate approximately 57,000 cy/ 115,000 tons of base rock on site | 57,000 | cy | $ 5.00 | $ 285,000 | |
| | b. Restoration grading and clean-up (added 200,000sf) | 2,500,000 | sf | $ 0.11 | $ 275,000 | |
| | c. Process and re-certify base rock (along with disposing of off site - added to bid) | | | | $ 575,000 | |
| **2** | **Rebuild the access road from the entrance to the clubhouse and bistro along with, bistro parking lot and cart paths** | | | | | |
| | a. Rebuild access road (Asphalt Road) | 48,768 | sf | $ 8.00 | $ 390,144 | |
| | b. Rebuild bistro parking lot (Asphalt Parking Lot) | 25,572 | sf | $ 8.00 | $ 204,576 | |
| | c. Rebuild cart paths on 8 holes (gravel) - (25% deduct for existing path) (Added 2 holes = 14,000sf) | 59,900 | sf | $ 4.00 | $ 239,600 | |
| **3** | **Replace the heavy base rock with subsoil to a depth of 12" and topsoil to a depth of 6". 8 golf holes within the damage area** | | | | | |
| | a. 12" sub-soil (include damage of half of holes 9 and 18 approx 1,400cy) | 86,907 | cy | $ 8.00 | $ 695,256 | |
| | b. 6" top-soil (include damage of half of holes 9 and 18 approx 700cy) | 43,400 | cy | $ 20.00 | $ 868,000 | |
| | c. Amendments for soil / report 53 (Per soils report) (add parts of two fairways = 200,000sf ) | 2,500,000 | sf | $ 0.10 | $ 250,000 | |
| | d. Fine grading and shaping of fairways and between holes (added two holes= 120,000sf) | 540,000 | sf | $ 0.55 | $ 297,000 | |
| **4** | **Rebuild the disturbed areas, including restoration of tee boxes, fairways, bunkers and aprons. This breakdown is for both the 10 holes of the damaged area. (TURF NOT INCLUDED)** | | | | | |
| | a. Tees - 8 x 3 tees per hole (nothing added) | 24 | tees | $ 6,250 | $ 150,000 | |
| | b. Bunkers - 8 x 3 per hole (added 1 hole of bunkers = 3) | 27 | bunkers | $ 5,200 | $ 140,400 | |
| | c. Greens 1 x 8 holes (added 1 green) | 9 | greens | $ 27,500 | $ 247,500 | |
| | d. Misc. features, aprons and mounding around green (added 1 hole) | 9 | misc. | $ 8,200 | $ 73,800 | |
| | e. Irrigation rebuild and connect to building | | | | | |
| | + 8 holes irrigation x 67 / hole = 536 heads (Includes trenching, electrical, mainline, etc...) Adding 134 heads ) | 560 | heads | $ 1,350 | $ 756,000 | |
| | + Driving Range - Tee Box | 45 | heads | $ 1,350 | $ 45,000 | |
| | + Driving Range - Landing Zone | 100 | heads | $ 1,350 | $ 110,000 | |
| | f. Drain pipe and erosion tunnel primarily ON 9TH AND 18TH HOLE (Mark West) | 1 | LS | $200,000 | $200,000 | |
| | + Added large Practice Green = 3 greens x 27,500=82,500 | 1 | green | $ 1 | $ 82,500 | |
| | Clean up of erosion in drainage canyon | 1 | LS | $ 150,000 | $ 150,000 | |
| | Irrigation cost to reconnect remaining 8 holes to new mainline and electrical connection to controller | 8 | EA | $ 25,000 | $ 200,000 | |
| **5** | **Conduct test in regards to:** | | | | | |
| | a. Geotechnical Reports | | | | | |
| | b. Soil tests throughout for compaction of roads and parking | | | | | |
| | c. Horticultural soil test for soil areas and amendments needs | | | | | |
| | ALL | | | | $ 35,000 | |
| **6** | **Erosion damages (Outside of Damage Area) - Cost to be determined** | | | | | |
| | | | | **SUB-TOTAL** | $ 6,269,776 | |
| | | | Upgraded 5% for low unit prices)15% | **CONTINGENCY** | $ 940,466 | |
| | | | 4% | **SOFT COSTS (DESIGN, PERMITTING & ADMINISTRATION** | $ 250,791 | |
| | | | 20% | **Overhead/Profit for General Contracting** | $ 1,253,955 | |
| | | | | **SWPPP MANAGEMENT** | $ 110,000 | |
| | | | | | $ 8,824,989 | $ - |

# Electronic Proof of Claim_NRYWC27386

Final Audit Report                                          2019-10-17

| | |
|---|---|
| Created: | 2019-10-17 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAATyZSEBjs3ydyEYAEcwROpxGNJ7UN1VxV |

## "Electronic Proof of Claim_NRYWC27386" History

🗎 Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-17 - 9:45:22 PM GMT

📎 R. Dale Ginter (mfrazier@downeybrand.com) uploaded the following supporting documents:
📎 Attachment
2019-10-17 - 10:11:04 PM GMT

🗎 Web Form filled in by R. Dale Ginter (mfrazier@downeybrand.com)
2019-10-17 - 10:11:04 PM GMT- IP address: 12.233.206.12

✎ (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 6.1; WOW64; Trident/7.0; rv:11.0) like Gecko)
2019-10-17 - 10:11:06 PM GMT- IP address: 12.233.206.12

✅ Signed document emailed to Prime Clerk E-Filing (efiling@primeclerk.com) and R. Dale Ginter (mfrazier@downeybrand.com)
2019-10-17 - 10:11:06 PM GMT

Prime Clerk · POWERED BY Adobe Sign