KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>      - and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                                    Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**REPLY IN SUPPORT OF REORGANIZED DEBTORS' OMNIBUS OBJECTIONS TO CLAIMS**<br><br>[Related to Docket Nos. 10673, 11117, 11120, and 11123]<br><br>Date: September 29, 2021<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Tele/Videoconference Appearances Only)<br>         United States Bankruptcy Court<br>         Courtroom 17, 16th Floor<br>         San Francisco, CA 94102 |

## I. PRELIMINARY STATEMENT

In advance of the September 29, 2021, 10:00 a.m. omnibus hearing (the "**Hearing**"), PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**," "**PG&E**," or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this omnibus reply brief in support of the following omnibus objections (collectively, the "**Omnibus Objections**")[1] to certain claims to be heard at the Hearing (the "**Contested Claims**"):

| Docket No. | Omnibus Objection and Formal and Informal Responses Received |
|---|---|
| 10673 | *Reorganized Debtors' Seventy-Ninth Omnibus Objection to Claims (Books and Records Claims)* (the "**Seventy-Ninth Omnibus Objection**")<br>1. Robert Finley (Claim No. 87149) |
| 11117 | *Reorganized Debtors' One Hundred First Omnibus Objection to Claims (Duplicative and Incorrect Debtor Claims)* (the "**One Hundred First Omnibus Objection**")<br>1. Lorraine Gonsalves (Claim No. 87242)[2] |
| 11120 | *Reorganized Debtors' One Hundred Second Omnibus Objection to Claims (No Legal Liability Claims)* (the "**One Hundred Second Omnibus Objection**")<br>1. Wm. F. Weidman, III (Claim No. 10281) |
| 11123 | *Reorganized Debtors' One Hundred Third Omnibus Objection to Claims (ADR No Liability Claims)* (the "**One Hundred Third Omnibus Objection**")<br>1. Lorraine Gonsalves (Claim No. 81398) |

With respect to each of the Contested Claims, the Reorganized Debtors, by the Omnibus Objections, stated the legal grounds upon which they object to the Contested Claim, and presented facts in support of the Omnibus Objections by way of supporting declaration. The Reorganized Debtors having supported the Omnibus Objections by facts and law, "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence," *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222, 226

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the applicable Omnibus Objection.

[2] The informal response of Ms. Gonsalves refers only to the One Hundred Third Omnibus Objection. The Reorganized Debtors address the objection to her duplicative claim in the One Hundred First Omnibus Objection out of an abundance of caution.

(B.A.P. 9th Cir. 1995) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)), *aff'd without opinion* 91 F.3d 151 (9th Cir. 1996). Although the Reorganized Debtors received formal or informal responses with respect to each of the Contested Claims (collectively, the "**Responses**"), none of the Responses adequately address the legal or factual bases upon which the Reorganized Debtors objected to the Contested Claims, much less meet the claimants' burden of persuasion that the Court should not disallow and/or expunge the Contested Claims.

## II. REPLIES TO RESPONSES RECEIVED TO OMNIBUS OBJECTIONS

### A. Seventy-Ninth Omnibus Objection (Books and Records)

#### 1. Robert Finley (Claim No. 87149)

Mr. Finley filed a claim against the Utility for an unknown amount of $100,000 "or more," for the cost of "run[ning] poles and line 800 . . . feet." The basis of Mr. Finley's claim is an unsigned letter on PG&E letterhead (the "**Unsigned Letter**"), bearing the date of August 19, 1991, which states that, in exchange for certain "Right-of-Way" documents, "PG&E agrees that it will construct an overhead electric line extension to serve a future irrigation and/or water district well site (location to be determined later), on the Finley property at NO COST to the property owner." The Unsigned Letter instructs Mr. Finley that "[i]f you are in agreement with the above terms, please sign this letter and the two copies and return in the postage-paid envelope provided. Your copy will be signed and returned to you for your files."

The Unsigned Letter does not bear the signature of either PG&E or Mr. Finley. PG&E does not have any record of a signed agreement with Mr. Finley. (Guerra Decl. at ¶ 3.)[3] Moreover, the Unsigned Letter is inconsistent with PG&E's practice and policy. The installation of an electric service line to provide service to a property is governed by PG&E's Electric Tariff Rule 16. PG&E's Service Planning Department manages requests from customers for new service extensions to provide electric service to the customer's property. PG&E's Service Planning Department is not involved with the acquisition of easements. It is against PG&E's policy to exchange tariff-related

---

[3] "**Guerra Decl.**" refers to the Declaration of Grant Guerra, filed contemporaneously herewith.

services, including providing service extension work, in order to acquire easements over third-party property. (Guerra Decl. at ¶ 3.)

The Reorganized Debtors informally requested that Mr. Finley provide a copy of a signed agreement consistent with the Unsigned Letter, and Mr. Finley has been unable to produce such a document. As the claimant, Mr. Finley bears the evidentiary burden of establishing the formation of the contract on which his claim is based. The Unsigned Letter is simply insufficient to show that (1) PG&E made an offer or (2) Mr. Finley accepted that offer. *See, e.g.*, Cal Civ. Code § 1550 (requiring evidence of parties' mutual consent to terms for existence of contract). Mr. Finley seems to have modified the Unsigned Letter, adding the words "original signed by" above the signature blocks. (Finley Claim at 4.) There are also some handwritten numbers in the signature block for Mr. Finley that do not appear to have been part of the original draft. As such, the Unsigned Letter submitted with the Finley Claim has been altered and is not competent evidence of an enforceable contract.

Mr. Finley's Response does not provide any further proof that the Unsigned Letter was executed by both parties and is enforceable against PG&E. Absent such proof, Mr. Finley's claim must be disallowed.

Even if the Unsigned Letter were sufficient evidence of an enforceable contract against PG&E, Mr. Finley's claim must also be disallowed because it does not state a claim under such a contract. In his Response, Mr. Finley provides certain invoices and estimates that he asserts show the "[c]ost to install overhead powerlines for irrigation or a future well." However, it does not appear that Mr. Finley is interested in obtaining a service extension to "a future irrigation and/or water district well site," as the Unsigned Letter would require. In fact, PG&E has determined through public records that a permit has been obtained on Mr. Finley's property for a "Photovoltaic Ground-Mounted, Non-Residential" project called "Cannabis-630 El Pomar." (Guerra Decl. at ¶ 5, Exh. 2.) Mr. Finley has also obtained a permit authorizing "cannabis cultivation and associated supportive development and uses," which states as follows:

> 90. **Throughout the life of the project**, the project would utilize an existing on-site well located on the property approximately 200 feet west of the proposed development area. If at any point in time this well serves 25 or more of the same

Case: 19-30088    Doc# 11298    Filed: 09/22/21    Entered: 09/22/21 19:08:11    Page 4 of 11

individuals at least 6 months of the year, including all full-time employees and/or on- or off-site residents, a public water system permit shall be obtained from the State Water Resources Control Board.

(Guerra Decl. at ¶ 6, Exh. 3., at pp. 5, 22.) In other words, the project does not contemplate a water well operated by either an irrigation district or a water district.

It appears that, through Mr. Finley's claim, Mr. Finley is seeking from PG&E reimbursement of the costs incurred not to construct an overhead service line to provide service to an irrigation or water district well site, as specified in the Unsigned Letter, but rather for costs incurred to install a large solar generator unit to support a cannabis grow operation on the property. Such a project is not within the confines of any obligation under the Unsigned Letter, even if the Unsigned Letter were an enforceable contract.

Moreover, the Unsigned Letter is dated August 19, 1991 – nearly ten years before the filing of the first PG&E chapter 11 case in 2001, Case No. 01-30923 (the "**2001 Chapter 11 Case**"). Even if the Unsigned Letter were an enforceable agreement, it was not an executory contract at the time of the 2001 Chapter 11 Case, because all obligations of Mr. Finley under the Unsigned Letter – to deliver the referenced Right-of-Way documents – had been completed by September 1991, when the easement in favor of PG&E was recorded. (Guerra Decl. at ¶ 4, Exh. 1.) As such, to the extent Mr. Finley had a claim under the Unsigned Letter, it was discharged and enjoined pursuant to the *Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Pacific Gas and Electric Company dated July 31, 2003*. [2001 Chapter 11 Case, Docket No. 13298].

Finally, PG&E has been unable to determine that the invoices and estimates attached to Mr. Finley's Response are for the construction of an overhead electric service extension, as Mr. Finley claims. To the extent that the Court determines that the Unsigned Letter is sufficient evidence to determine that PG&E is liable to provide an overhead electric service extension to Mr. Finley, Mr. Finley must prove the cost of such an extension, with respect to which the Reorganized Debtors reserve all rights, arguments, and defenses.

Because Mr. Finley has failed to bear his burden of proof to demonstrate that there was an enforceable contract pursuant to which PG&E has the obligation to construct an overhead electric line extension, and has also failed to show that the service extension he requests will service an

irrigation or water district well site or that the costs that he asserts are owed represent the costs of an overhead electric line extension, Mr. Finley's Response should be overruled at the Hearing, and his claim should be disallowed and expunged.

### B. One Hundred First Omnibus Objection (Duplicative and Incorrect Debtor Claims)

#### 1. Lorraine Gonsalves (Claim No. 87242)

As discussed in Section II.D, *infra*, Lorraine Gonsalves submitted an informal response that purports to address the One Hundred Third Omnibus Objection, which objects to her Proof of Claim No. 81398. The Gonsalves Response does not address the Reorganized Debtors' One Hundred First Omnibus Objection, which objects to her Proof of Claim No. 87242 on the basis that it is duplicative of Proof of Claim No. 81398. Nevertheless, the Reorganized Debtors address it here out of an abundance of caution.

Since filing the One Hundred First Omnibus Objection, the Reorganized Debtors have again reviewed Proofs of Claim Nos. 87242 and 81398. Upon a closer review, it is clear that the Proofs of Claim are not only duplicative, but exact copies of each other. It appears that Ms. Gonsalves concurrently sent two copies of her completed proof of claim form to Prime Clerk, one by priority mail and one by FedEx, whereupon Prime Clerk received each mailing and recorded them as two separate Proofs of Claim in the official claims register.[4]

Because Ms. Gonsalves does not contest the factual or legal grounds upon which the Reorganized Debtors objected to her Proof of Claim No. 87242, Ms. Gonsalves's Response, to the extent it addresses this claim at all, should be overruled at the Hearing and Proof of Claim No. 87242 should be disallowed and expunged.

---

[4] Although the Proof of Claim forms are exactly identical, a calculation error appears to have caused a discrepancy in the total asserted amounts reflected on the claims register. The correct description of the asserted amounts is a total of $5,148,879.00, with $4,600.00 as secured and $5,144,279.00 as unsecured.

## C.   One Hundred Second Omnibus Objection (No Legal Liability)

### 1.   Wm. F. Weidman, III (Claim No. 10281)

The Reorganized Debtors' One Hundred Second Omnibus Objection to Mr. Weidman's claim [Docket No. 11120] is based upon the ground that the statute of limitations has long since expired and therefore bars the claim. Mr. Weidman filed a formal response in opposition to the One Hundred Second Omnibus Objection on September 10, 2021 [Docket No. 11239], claiming that the statute of limitations had not expired because (1) this is a radiation and exposure case; (2) the Workers Compensation Appeals Board ("**WCAB**") ruled that the claim is not barred by the statute of limitations; (3) the WCAB case has not been ruled upon so the statute of limitations does not apply; (4) PG&E is responsible for "matters coming from the Diablo Canyon Nuclear Power Plant," citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984); (5) this matter is a Nuclear Regulatory Commission complaint which protects his rights; (6) the Price Anderson Act applies so that "normal statute of limitations cannot and do not apply"; and (7) the Armed Forces Institute of Pathology Report shows that claimant's injuries are due to his exposure to nuclear contaminants. None of these arguments is availing, as set forth below.

On October 1, 2019, Mr. Weidman filed Proof of Claim No. 10281 against the Utility, alleging $50,000,000.00 in damages for personal injury due to radiation exposure. Mr. Weidman claims that he worked as an employee of Bechtel Power Corporation ("**Bechtel**") at the PG&E Diablo Canyon Power Plant from 1984 to 1985 and sustained personal injuries due to radiation exposure as a result of his work at the Diablo Canyon plant.

Mr. Weidman filed a worker's compensation claim against Bechtel on June 11, 2001, which was tried in 2014. Mr. Weidman did not sue either the Utility or PG&E Corp. In January 2015, the judge issued her decision in favor of Bechtel and against Mr. Weidman, finding that: (1) Mr. Weidman had not proven a causal connection between his injuries and radiation exposure; and (2) that his claims against Bechtel were barred by the statute of limitations because Mr. Weidman knew of a causal connection between his injuries and radiation exposure in 1997 and did not file suit until 2001. Mr. Weidman appealed the ruling, and in June 2016 the WCAB reversed the decision and remanded for a new trial. The WCAB determined that the record on causation required additional

6

Case: 19-30088    Doc# 11298    Filed: 09/22/21    Entered: 09/22/21 19:08:11    Page 7 of 11

development and found that Mr. Weidman did not know about the causal connection between his injuries and radiation exposure until 2000, and that his claim *against Bechtel* was timely filed within one year of that knowledge.

Neither the Utility nor PG&E Corp. was ever a party to Mr. Weidman's worker's compensation action against Bechtel. The WCAB's finding that Mr. Weidman's claims against Bechtel – which he filed in 2001 – were not time-barred has no bearing on Mr. Weidman's claims against a third party, such as PG&E, which Mr. Weidman never sued. *See Aguilera v. Heiman*, 174 Cal. App. 4th 590, 602 (2009) (property owner could assert statute of limitations defense against injured worker notwithstanding timely worker's compensation action against employer contractor). In California, the general rule for workers' compensation claims is well-settled: when new parties are brought in by amendment, the statute of limitations continues to run in their favor until thus made parties. *Id.* at 602 (citing *Ingram v. Dep't of Indus. Relations*, 208 Cal. 633, 642-43 (1930)). The suit cannot be considered as having been commenced against unnamed defendants (such as PG&E) until they are made parties. *Id.* Moreover, a complaint may not be amended to add a new defendant after the statute of limitations has run. *McGee Street Prods. v. Workers' Comp. Appeals Bd.*, 108 Cal. App. 4th 717, 724 (2003) (citing *Woo v. Super. Ct.*, 75 Cal. App. 4th 169, 175-78 (1999)). Mr. Weidman's action against Bechtel therefore did not toll the statute of limitations with respect to any potential claim he may have, but never asserted, against PG&E.

The Price Anderson Act (the "**Act**") creates a federal "public liability action" for injuries arising out of or resulting from any "nuclear incident." 42 U.S.C. § 2210(n)(2). The term "nuclear incident" is defined as "any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." 42 U.S.C. § 2014(q). Mr. Weidman alleges personal injury as a result of radiation exposure; therefore, his claim would fall within the purview of the Act.

The substantive rules that apply to an action brought under the Act are derived from the law of the state in which the incident occurs, as long as such rules are not inconsistent with the

provisions of the Act. 42 U.S.C. § 2014(hh). There is no statute of limitations set forth in the Act for injuries not deemed to be extraordinary nuclear occurrences ("**ENOs**").[5] When Congress does not provide a statute of limitations for claims arising under federal statutes, courts apply the limitations period of the state-law cause of action most analogous to the federal claim. *Corcoran v. New York Power Authority*, 202 F.3d 530, 542 (2nd Cir. 1999) (citations omitted); *see Lujan v. Regents of the Univ. of Cal.*, 69 F.3d 1511 (10th Cir. 1995) (applying state law statute of limitations as applicable "rules of decision" under 42 U.S.C. § 2014(hh)); *see also McLandrich v. S. Cal. Edison Co.*, 942 F. Supp. 457, 466 n.9 (S.D. Cal. 1996) (citing *Lujan*). Thus, because Mr. Weidman's alleged radiation exposure took place in California, the California statute of limitations would apply to his claim under the Act.

In his letter attached to his Proof of Claim, Mr. Weidman admits that he became aware in 2000 that his injuries were allegedly linked to radiation exposure. (Weidman Claim, p. 2, ¶ 4.) At that time the applicable statute of limitations in California was one year.[6] Accordingly, Mr. Weidman would have had to bring a claim against PG&E no later than 2001, when he filed his worker's compensation case against Bechtel; however, he failed to do so. Because Mr. Weidman did not file a claim against PG&E within the statute of limitations, his claim is clearly time-barred under California law and the provisions of the Price Anderson Act.

Mr. Weidman cites *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984) in support of his claim and alleges that this will be a Nuclear Regulatory Commission complaint which protects his rights. Neither of these factors impacts the inevitable conclusion that Mr. Weidman's claim against PG&E is long barred by the statute of limitations. The *Silkwood* decision simply affirms that the Price Anderson Act permits state law remedies to those injured by nuclear incidents while acknowledging the Nuclear Regulatory Commission's authority to regulate safety matters. As demonstrated above, any such state law remedies are time-barred.

---

[5] The Act provides that a statute of limitations defense may be waived for ENOs, *i.e.*, those that cause injury offsite, *if suit is filed within three years* from the date a claimant knew or should reasonably have known of his injury and the cause thereof. 42 U.S.C. § 2210(n)(1). Weidman's claim does not arise out of an ENO, and, even if it did, it would still be time-barred.

[6] The statute of limitations for personal injury was extended to two years effective January 1, 2003. Cal. Code Civ. Proc. § 335.1; 2002 Cal. Stat. ch. 448.

Because Mr. Weidman's response cannot rebut the factual or legal grounds upon which the Reorganized Debtors objected to his claim, Mr. Weidman's Response should be overruled at the Hearing and his claim should be disallowed and expunged.

### D.     One Hundred Third Omnibus Objection (ADR No Liability)

#### 1.     Lorraine Gonsalves (Claim No. 81398)

Lorraine Gonsalves did not file a formal response to the One Hundred Third Omnibus Objection. On September 15, 2021, she e-mailed a response to the One Hundred Third Omnibus Objection to counsel for the Reorganized Debtors, but the document did not address any of the contentions in the One Hundred Third Omnibus Objection — specifically, why Ms. Gonsalves failed to respond to the Offer Letter sent to her by the Reorganized Debtors. A copy of the document e-mailed by Ms. Gonsalves is attached hereto as **Exhibit A**.

On September 25, 2020, the Court entered the ADR Procedures Order, which, among other things, states that if a claimant fails "to comply with the General ADR Procedures, negotiate in good faith, or cooperate as may be necessary to effectuate the General ADR Procedures," the Court may, "among other things, disallow and expunge" the claim after notice and a hearing. General ADR Procedures IV.E. (ADR Procedures Order, Ex. A-2, at p. 12).

On October 21, 2019, Ms. Gonsalves filed Proof of Claim No. 81398, against PG&E Corp., alleging $5,148,879.00 in damages. The Gonsalves Proof of Claim did not state a clear basis for a claim against the Debtors. In response to question 8 of the proof of claim form, Ms. Gonsalves listed the basis as "Goods sold, money loaned, lease, services performed, personal injury, and Identity Theft Fraud." Attached to the form are two documents labeled "Authenticity Certificate," which provide no additional information as to the nature of any claim Ms. Gonsalves would have against the Debtors.

The Reorganized Debtors sent an Information Request[7] to Ms. Gonsalves, to which she responded on December 31, 2020 (the "**IR Response**"). A true and correct copy of the IR Response is attached hereto as **Exhibit B**. The IR Response did not provide any coherent basis for a claim against the Debtors.

---

[7]     Capitalized terms not otherwise defined in this Section II.D.1 shall have the meanings ascribed to them in the ADR Procedures Order.

Nevertheless, in an effort to resolve the claim, the Reorganized Debtors sent Ms. Gonsalves a Settlement Offer pursuant to the General ADR Procedures. Ms. Gonsalves never responded to the Offer Notice or the Offer Notice Reminder that was sent to her.

Ms. Gonsalves's claim should be disallowed and expunged based on her failure "to comply with the General ADR Procedures" and to "cooperate as may be necessary to effectuate the General ADR Procedures" (General ADR Procedures, Section IV.E).

Although the original basis for the One Hundred Third Omnibus Objection was her failure to comply with the General ADR Procedures, the Reorganized Debtors submit that, based on the Gonsalves Claim, the IR Response and Gonsalves Response, a sufficient record exists for the Court to disallow the Gonsalves Claim based on the grounds that it does not set forth a cognizable basis for recovery against the Debtors. If the Court is not prepared to disallow the Gonsalves Claim at the Hearing, the Reorganized Debtors will supplement their objection to the Gonsalves Claim and address any further arguments at a continued hearing, and they reserve all rights, arguments, and defenses with respect to the Gonsalves Claim and such supplemental objection.

Because Ms. Gonsalves does not contest the factual or legal grounds upon which the Reorganized Debtors objected to her claim, Ms. Gonsalves's Response should be overruled at the Hearing and her claim should be disallowed and expunged.

## III. CONCLUSION

For the foregoing reasons, and the reasons set forth in each of the Omnibus Objections and the declarations filed in support of each Omnibus Objection, the Reorganized Debtors respectfully request that the Court sustain the Omnibus Objections and disallow and/or expunge the Contested Claims.

Dated: September 22, 2021

**KELLER BENVENUTTI KIM LLP**

/s/ *Thomas B. Rupp*
Thomas B. Rupp

*Attorneys for Debtors and Reorganized Debtors*