ALSTON & BIRD, LLP
DIANE C. STANFIELD (CA Bar No. 106366)
DOUGLAS J. HARRIS (CA Bar No. 329946)
diane.stanfield@alston.com
douglas.harris@alston.com
333 S. Hope Street 16th Floor
Los Angeles, California 90071
Telephone:   213.576.1000
Facsimile:   213.576.1100

Attorneys for
Fulcrum Credit Partners LLC

DOWNEY BRAND LLP
JAMIE P. DREHER (CA Bar No. 209380)
Email: jdreher@downeybrand.com
TYLER J. HORN (CA Bar No. 323982)
Email: thorn@downeybrand.com
621 Capitol Mall, 18th Floor
Sacramento, California 95814
Telephone:   916.444.1000
Facsimile:   916.444.2100

Attorneys for
Tuscan Ridge Associates, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E Corporation,<br><br>and<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>[ ] Affects PG&E Corporation<br>[x] Affects Pacific Gas and Electric Company<br>[] Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088-DM, | Case No. 19-30088-DM<br><br>Chapter 11<br>Lead Case, Jointly Administered<br><br>**REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM PLAN INJUNCTION, TO COMPEL ARBITRATION AND/OR FOR ABSTENTION**<br><br>Date:   September 29, 2021<br>Time:   10:00 a.m.<br>Crtrm.:   Courtroom 17<br>            450 Golden Gate Avenue<br>            San Francisco, CA 94102<br>Judge:   Hon. Dennis Montali<br><br>Objection deadline: September 15, 2021 |

1

REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM PLAN INJUNCTION, TO COMPEL
ARBITRATION AND/OR FOR ABSTENTION

LEGAL02/41072472v5

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. THIS COURT CAN AND SHOULD GRANT THE RELIEF REQUESTED BY MOVANT ................................................................................................................. 1

III. PG&E'S PURPORTED "LEGAL AND EQUITABLE" DEFENSES ARE FACIALLY MERITLESS AND SHOULD NOT BE ALLOWED TO DEPRIVE THE PARTIES OF THE RIGHT TO ARBITRATE THE DISPUTE ............................................................... 3

IV. THE PURPORTED EXISTENCE OF NON-ARBITRABLE ISSUES ASSERTED BY PG&E DOES NOT COMPEL A DIFFERENT RESULT ...................................... 7

V. CAUSE EXISTS TO SEND THIS MATTER TO ARBITRATION ................................. 9

VI. CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Envisage Dev. Partners, LLC v. Patch of Land Lending, LLC*,
 2017 U.S. Dist. LEXIS 168281 (N.D. Cal. Oct. 11, 2017) ........................................................ 2

*In re Curtis*,
 40 B.R. 795 (Bankr. D. Utah 1984) ................................................................................... 10

*In re Morgan*,
 28 B.R. 3 (B.A.P. 9th Cir. 1983) ...................................................................................... 2, 3

*In re Thorpe Insulation Co.*,
 671 F.3d 1011 (9th Cir. 2012) ...................................................................................... 2, 3, 10

*McCleskey v. Stockton (In re Stockton)*,
 2005 Bankr. LEXIS 3375 (B.A.P. 9th Cir. June 22, 2005) ........................................................ 1

*MCI Telecomms. Corp. v. Gurga (In re Gurga)*,
 176 B.R. 196 (B.A.P. 9th Cir. 1994) ................................................................................. 3

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
 724 F.3d 1069 (9th Cir. 2013) ......................................................................................... 7

*Perez Bautista v. Juul Labs, Inc.*,
 478 F.Supp.3d 865 (N.D. Cal. 2020) ................................................................................. 7

*Ward v. Goossen*,
 71 F.Supp.3d 1010 (N.D. Cal. 2014) ................................................................................. 8

**STATE CASES**

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
 2 Cal.4th 342 (1992) ......................................................................................................... 4

*OTO, L.L.C. v. Kho*,
 8 Cal.5th 111 (2019) ................................................................................................... 7, 11

*Pac. Inv. Co. v. Townsend*,
 58 Cal.App.3d 1 (1976) .................................................................................................. 7

*Parker v. Twentieth Century-Fox Film Corp.*
 118 Cal.App.3d 985 (1981) .............................................................................................. 9

*Wagner Constr. Co. v. Pac. Mech. Corp.*,
 41 Cal. 4th 19 (2007) ................................................................................................. 7, 11

**FEDERAL STATUTES**

28 U.S.C.S. § 1334(b) ............................................................................................................. 3

28 U.S.C. § 157(b) .................................................................................................................. 1

**STATE STATUTES**

Cal. Civ. Code § 1641 ............................................................................................................ 8

## I. INTRODUCTION

Moving Party Fulcrum Credit Partners LLC ("Fulcrum" or "Movant") replies to the Opposition of Pacific Gas & Electric Company ("PG&E") to Fulcrum's Motion for Relief From and/or Modification of the Plan Injunction, to Compel Arbitration and/or for Abstention (the "Motion") as follows.

PG&E does not dispute that it commandeered the private property of an innocent third party, Tuscan Ridge Associates, LLC ("Tuscan"), for use as a base camp to deal with the fallout of the Camp Fire. It does not dispute that it entered into the Agreement, upon which Fulcrum's motion is based, and it does not dispute that the Agreement contains an express agreement to arbitrate. Instead, PG&E attempts to confuse the straightforward issues with a barrage of unsupported factual allegations. As set forth below, the matter is fully arbitrable, and good and sufficient grounds exist to compel the parties to arbitrate it.

## II. THIS COURT CAN AND SHOULD GRANT THE RELIEF REQUESTED BY MOVANT

As set forth at length in the Motion, this matter can and should be submitted to arbitration in accordance with the parties' agreement. The proceeding is non-core because it is based on a state law claim (breach of contract),[1] so there is no basis to disregard the parties' binding agreement to arbitrate it.

In response to the Motion, PG&E argues that this matter is a core proceeding because a proof of claim was filed to which PG&E intends to object, therefore the Court should not (or may not) compel the parties to arbitrate. PG&E dismisses the authorities Fulcrum cited which hold otherwise. *See McCleskey v. Stockton (In re Stockton),* 2005 Bankr. LEXIS 3375, at *12, fn. 10 (B.A.P. 9th Cir. June 22, 2005) ("For arbitration purposes, noncore matters 'are those that do not involve issues of law unique to bankruptcy or substantive rights created exclusively by the Bankruptcy Code,' **even if they arise in a 28 U.S.C. § 157(b) core proceeding**.") (emphasis

---

[1] Fulcrum does not contend that allegations in the Proof of Claim such as consequential damages, trespass, and waste are within the scope of the arbitration clause. While Fulcrum is not prepared, at this point, to waive these claims, it anticipates that after a final arbitration award is rendered, such allegations will no longer be necessary.

1

REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM PLAN INJUNCTION, TO COMPEL ARBITRATION AND/OR FOR ABSTENTION

LEGAL02/41072472v5

added). Instead, PG&E relies on *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1021 (9th Cir. 2012) (which, as set forth in Fulcrum's moving papers, is materially distinguishable) and two cases which stand only for the general proposition that the Bankruptcy Court has core jurisdiction over proofs of claim (but do not consider the question of whether arbitrable claims are core). The applicability of *In re Thorpe* was taken up in *Envisage Dev. Partners, LLC v. Patch of Land Lending, LLC*, No. 17-cv-03971-CRB, 2017 U.S. Dist. LEXIS 168281, at *19 (N.D. Cal. Oct. 11, 2017); in reversing an order denying a motion to compel arbitration, the court stated:

> It is indisputable that a goal of the Bankruptcy Code is to centralize disputes, but Envisage and the Rowsons would treat that goal as an exception that swallows the rule. In every case, litigation would be simpler and the bankruptcy court could maintain greater control if it denied a motion to compel arbitration and kept all disputes to itself. But the goal of centralizing disputes does not alone override the FAA, as In Re Thorpe Insulation Co. recognizes. See id. at 1021 (recognizing that in non-core proceedings, bankruptcy court usually cannot deny enforcement of a "valid prepetition arbitration agreement"). The Ninth Circuit in In re Thorpe Insulation Co. even noted that if the creditor in that case "had presented a standalone claim . . . limited and isolated to prepetition matters independent of the bankruptcy," that claim "likely should have been arbitrated." Id. at 1023 n.10. At issue here are just such pre-petition claims.

*Envisage Dev. Partners, LLC v. Patch of Land Lending, LLC*, 2017 U.S. Dist. LEXIS 168281, at *19 (N.D. Cal. Oct. 11, 2017).

The court found that the issues were non-core, as the claims at issue existed pre-petition and continued to exist independent of the bankruptcy proceeding. Further, however, the court noted:

> The core/non-core distinction is "not alone dispositive" because "even in a core proceeding . . . a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision **only if arbitration would conflict with the underlying purposes of the Bankruptcy Code**."

*Envisage Dev. Partners, LLC v. Patch of Land Lending, LLC*, 2017 U.S. Dist. LEXIS 168281, at *18, fn. 4. (N.D. Cal. Oct. 11, 2017) (internal citations omitted, emphasis added).

Moreover, the filing of a proof of claim is not determinative of this Motion. S*ee, e.g.*, *In re Morgan*, 28 B.R. 3, 5 (B.A.P. 9th Cir. 1983) ("Even if the defendant has made a claim against the estate, it may be appropriate to enforce a contract to arbitrate") (citing *In re Hart Ski Mfg. Co.*, (1982 Bankr. D. Minn.), 18 B.R. 154 (granting motion to compel arbitration despite filing of proof of claim)); s*ee also MCI Telecomms. Corp. v. Gurga (In re Gurga)*, 176 B.R. 196, 198-200

(B.A.P. 9th Cir. 1994) (holding there was nothing either explicit or inherent in the Bankruptcy Code excusing a party from arbitration of noncore claims; because the district court was given original jurisdiction, but not exclusive jurisdiction over noncore matters (28 U.S.C.S. § 1334(b)), it was clear that Congress did not envision all bankruptcy related matters being adjudicated in a single bankruptcy court).

Again, however, as argued in the Motion, even if this Court finds the matter to be "core," "a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision **only if arbitration would conflict with the underlying purposes of the Bankruptcy Code**." *In re Thorpe Insulation Co.,* 671 F.3d at 1021 and cases cited (emphasis added). For that reason, the filing of a proof of claim and objection thereto (which admittedly would normally be a core proceeding) is not determinative of this Motion. *See also, e.g.*, *In re Morgan*, 28 B.R. at 5. ("Even if the defendant has made a claim against the estate, it may be appropriate to enforce a contract to arbitrate") (citing *In re Hart Ski Mfg. Co.*, 18 B.R. 154 (1982 Bankr. D. Minn.) (granting motion to compel arbitration despite filing of proof of claim)). For all the reasons stated in the Motion and in this Reply, Fulcrum submits that the Court should exercise any such discretion to compel arbitration.

### III. PG&E'S PURPORTED "LEGAL AND EQUITABLE" DEFENSES ARE FACIALLY MERITLESS AND SHOULD NOT BE ALLOWED TO DEPRIVE THE PARTIES OF THE RIGHT TO ARBITRATE THE DISPUTE

As set forth above, this is a non-core matter, and the Court can and should order it to arbitration. However, lest its silence be deemed as conceding the factual issues asserted by PG&E, Fulcrum will address them here for the purpose of showing that they are no more than a ruse to further delay a resolution of this matter.

PG&E's argument centers around the fact that, after it vacated Tuscan's Property, Tuscan entered into a lease with ECC Constructors LLC, a Delaware limited liability company ("ECC") for a portion of the Property, which in turn used it for its own base camp operations in connection with a series of restoration and remediation operations which it had contracted separately to perform. (Declaration of Laura L. Goodman in Support of Opposition [Dkt. No. 11264] ("Goodman Decl.") at Exh. D, p. 53 of 224.) PG&E argues that ECC's lease of the property

3

REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM PLAN INJUNCTION, TO COMPEL ARBITRATION AND/OR FOR ABSTENTION
LEGAL02/41072472v5

Case: 19-30088    Doc# 11305    Filed: 09/22/21    Entered: 09/22/21 20:53:47    Page 7 of 17

somehow "excused and prevented" its performance of its restoration obligations. (Reorganized Debtors' Opposition to Motion [Dkt. No. 11263] ("Opposition" or "Oppo.") at 5:21-24.)

Specifically, PG&E argues that ECC's use (i) frustrated PG&E's ability to conduct its own restoration of the Property; (ii) was a breach of the Agreement; and (iii) was a cause of the damage for which Tuscan seeks to hold it responsible. The arguments are belied by the very documents PG&E attaches to its Opposition, as well as by PG&E's documented conduct.

First, the Agreement *specifically contemplates* a subsequent use,[2] and sets forth the extent, if any, to which such a use would impact PG&E's restoration obligations. The Agreement provides at page 2 that:

> **After January 15, 2019, in the event a public agency, such as the ones set forth above, desires to utilize all or part of the Property for activities related to the Camp Fire restoration, PG&E will coordinate with those public agencies**. If such use is not compatible with PG&E's activities hereunder, **Owner may terminate this Letter Agreement on forty-five (45) days' written notice to PG&E**, in which case Owner shall reimburse PG&E any prepaid compensation … allocated to periods after the termination, in whole or in part, of this Letter Agreement. **In the event of such termination, PG&E's restoration obligation sunder this Letter Agreement shall be proportionately reduced based on the use of any other public agency occupying the License Area**."

(Goodman Decl. at Exh. A, p. 19 of 224 (emphasis added).)

Nothing in the Agreement provides that a subsequent use would *excuse* PG&E's obligations; at best, it would make them subject to a "proportionate reduction." However, such a reduction arose only if (i) the owner (Tuscan) terminated the Agreement (ii) because another public agency desired to use the Property (iii) for a use not compatible with PG&E's activities. These conditions precedent to a "proportionate reduction" did not occur. Tuscan did not terminate the Agreement, and PG&E does not suggest otherwise. On the contrary, *PG&E notified Tuscan*

---

[2] As such, PG&E's unexplained assertion that Tuscan breached the implied covenant of good faith and fair dealing by entering into the ECC Lease is not cognizable because the Agreement expressly provided the right for it do so. As stated in a seminal ruling on the matter by the California Supreme Court: "'[A]s to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct. And if defendants were given the right to do what they did by the express provisions of the contract there can be no breach.'" (*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 374 (1992).)

4
REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM PLAN INJUNCTION, TO COMPEL ARBITRATION AND/OR FOR ABSTENTION

LEGAL02/41072472v5

on February 6, 2019 that it "expects to vacate the property by the end of February if not sooner." (Exh. C to Decl. of Courtney McAlister ("McAlister Decl.") at p. 3, ¶¶ 6-7.) Indeed, PG&E had vacated the Property by the end of February 2019—prior to ECC's use of the Property. (McAlister Decl. at p. 3, ¶ 8.) Because Tuscan did not terminate the Agreement, this condition precedent did not occur, and PG&E's restoration obligation was not subject to being proportionately reduced—never mind excused.

Nor did ECC's use hinder PG&E's ability to conduct restoration activities on the Property had it desired to do so. First, the ECC Lease expressly acknowledges PG&E's right to access the property to fulfill its restoration obligations, stating:

> In entering into this Lease, Landlord [Tuscan] has warranted to Tenant [ECC] that:…(iv) there are no competing rights to exercise any rights of possession or control over the Premises that will interfere in any material way with Tenant's rights of possession during the Term of the Lease except as disclosed inwriting to Tenant (**subject to PG&E's rights to access the Property for purposes of its restoration responsibilities following its vacating the Property**)….

(Goodman Decl. at Exh. D, p. 145 of 224 (emphasis added).)

For that reason, ECC would have been required to allow access to PG&E had it desired to conduct restoration activities on the Property. More to the point, however, PG&E had notified Tuscan not later than March 21, 2019 that it had elected to *pay for the restoration costs* rather than do the work itself. (Supplemental Declaration of Scott Bates at p. 3, ¶ 7 ("Supp. Bates Decl."); Exh. A to McAlister Decl. at p. 2, ¶ 4.)

The Agreement provides in pertinent part:

> PG&E shall, at its sole cost and expense, maintain and restore the License Area, including the roads and parking lot(s), including any areas of ingress and egress, in as good of condition as it was prior to PG&E's use of the area (the "Baseline Condition")…
> At the expiration or earlier termination of this Agreement, PG&E shall meet and confer with Owner as to the nature and scope of the restoration work. If PG&E cannot agree on the extent of PG&E's restoration obligations set forth above, then the parties shall engage a third party neutral (the "Arbitrator") to estimate the cost to restore the License Area to the Baseline Condition, as set forth above.

(Goodman Decl. at Exh. D, p. 17 of 224 (emphasis added).)

Accordingly, upon PG&E's early termination of the Agreement, the parties met and conferred to discuss PG&E's restoration obligations. PG&E confirmed to Tuscan repeatedly its

5
REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM PLAN INJUNCTION, TO COMPEL ARBITRATION AND/OR FOR ABSTENTION
LEGAL02/41072472v5

intent to pay for—rather than perform—its restoration obligations. (McAlister Decl. at p. 4, ¶ 10 & Exh. A at p. 2, ¶ 4; Suppl. Bates Decl. at pp. 2-3, ¶¶ 7-8.).[3] For all those reasons, PG&E's protests more than two years later that it was prevented from doing the work are disingenuous.

PG&E makes unsupported allegations that Tuscan had not informed PG&E of the ECC Lease when it sent its revised Restoration Estimate on March 20, 2019. Although the relevance of the allegation is unclear, that too is contradicted by the evidence; Courtney McAlister emailed PG&E on that same date confirming a conversation with PG&E about ECC's use, indicating the expectation of a "formal agreement" with them. PG&E knew about the impending lease, but did not object to ECC's use despite being aware of it, nor ever ask that it be provided with access for purposes of restoration work after ECC's use began. (Supp. Bates Decl. at p. 3, ¶ 9; McAlister Decl. at p. 4, ¶ 12 and Exh. E thereto.)

Nor is it relevant whether Tuscan made a claim against ECC for additional damage to the Property during its subsequent use (although, in fact, that claim was not pursued; Supp. Bates Decl. at p. 4, ¶ 13). The relevant fact is that, as set forth below, the cost estimates for restoration of damage caused by PG&E were prepared in February 2019- before ECC even began its use, and based on the condition of the Property as of that time. (*See* Supp. Decl. of Scott Bates at pp. 2-4, ¶¶ 4-8 and 10.) The claim against PG&E is based solely on damages caused by it, as demonstrated by the dated cost estimates upon which the claim is based (including the updated version prepared by John Moreno of Sierra West, which was based on the earlier cost estimates (Declaration of John Moreno at pp. 2-3, ¶¶ 4-8 and Exhs. A & B thereto; McAlister Decl. at pp. 2-3, ¶¶ 5-9 and Exh. A thereto; Supp. Bates Decl. at pp. 2, ¶¶ 4-8.)

In short, the "legal and equitable" issues manufactured by PG&E do not compel a different result.

---

[3] At some point, the discussions with PG&E turned to a potential settlement; although Fulcrum does not concede that all aspects of those conversations are protected by the settlement privilege, in an abundance of caution Fulcrum will not cite to those discussions beyond those constituting the parties' contractual meet & confer obligation.

6

REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM PLAN INJUNCTION, TO COMPEL ARBITRATION AND/OR FOR ABSTENTION

LEGAL02/41072472v5

Case: 19-30088   Doc# 11305   Filed: 09/22/21   Entered: 09/22/21 20:53:47   Page 10 of 17

## IV. THE PURPORTED EXISTENCE OF NON-ARBITRABLE ISSUES ASSERTED BY PG&E DOES NOT COMPEL A DIFFERENT RESULT

PG&E bears the burden of proving that claims are not arbitrable. In determining whether the arbitration clause encompasses the claims at issue, "all doubts are to be resolved in favor of arbitrability." *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).) "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 81 (2000); *Envisage Dev. Partners, LLC,* 2017 U.S. Dist. LEXIS 168281, at *13.

A strong public policy in favor of arbitration exists to allow parties a speedy and relatively inexpensive means of dispute resolution. *Wagner Constr. Co. v. Pac. Mech. Corp.*, 41 Cal. 4th 19, 25 (2007); *see also OTO, L.L.C. v. Kho*, 8 Cal.5th 111, 125–126, 130, (2019); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013). Accordingly, "courts should indulge every intendment to give effect to such proceedings and order arbitration unless it can be said with assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Pac. Inv. Co. v. Townsend*, 58 Cal.App.3d 1, 9 (1976). When determining whether an arbitration provision must be enforced, "'two gateway' issues must be decided by the Court: (1) whether there exists a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute at issue." *Perez Bautista v. Juul Labs, Inc.*, 478 F.Supp.3d 865, 868–69 (N.D. Cal. 2020).

Here, there is no dispute that the Agreement contains an agreement to arbitrate. The dispute centers on what issues the arbitration clause covers. In an attempt to skirt its contractual obligations, PG&E urges an <u>extremely</u> narrow interpretation of the provision, arguing that it applies "solely to determining the cost of performing any restoration work necessary to return the property to its condition as of November 18, 2018." (Oppo. At 14:3-6.) Although PG&E ignores much of its language in favor of a single clause, the provision here is in fact much broader:

> At the expiration or earlier termination of this Agreement, PG&E shall meet and confer with Owner as to the **nature and scope of the restoration work**. If PG&E and Owner cannot agree on the **extent of PG&E's restoration obligations set forth above, then the parties shall engage a third party neutral (the "Arbitrator") to estimate the cost to restore the License Area to the Baseline Condition**, as set forth above. The Arbitrator shall have at least ten (10) years of

7
REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM PLAN INJUNCTION, TO COMPEL ARBITRATION AND/OR FOR ABSTENTION
LEGAL02/41072472v5

> experience in the construction industry. The cost of the Arbitrator shall be shared equally between PG&E and Owner. At the option of Owner, Owner may elect to have PG&E cause the completion of the restoration obligations at PG&E's sole cost and expense, or the Owner may elect for PG&E to pay to the Owner the amount estimated by the Arbitrator to complete the restoration, due and payable within (30) days following PG&E's receipt of written notice from Owner of such election.

(Goodman Decl. at Exh. A., p. 10 of 224.)

Contrary to PG&E's suggestion, this provision provides for an arbitrator to resolve disagreements concerning the "nature," "scope" and "extent" of PG&E's restoration obligations; this goes far beyond a mere mathematical calculation of cost. Indeed, every aspect of PG&E's "legal and equitable defenses" relate to the nature, scope and extent of PG&E's restoration obligations- all of them, in essence, whether and to what extent ECC's use of the Property entitles PG&E to a reduction of those obligations. Although Fulcrum submits that the provision is self-explanatory on its face, to the extent it requires construction, California law requires that contracts be construed as a whole, being sure "to give effect to every part, if reasonably practicable, each clause helping to interpret the other." *Ward v. Goossen,* 71 F.Supp.3d 1010, 1014 (N.D. Cal. 2014); Cal. Civ. Code § 1641. Further, "Courts must interpret contractual language in a manner that gives force and effect to every provision, and not in a way that renders some clauses nugatory, inoperative or meaningless." *Ward, supra,* 71 F. Supp. 3d 15 1014.

PG&E argues that the "[t]he arbitrator has no authority to determine the relevant predicate legal and equitable claims and defenses in this dispute, which determinations are absolutely necessary before any determination of estimated restoration costs." (Oppo at 5:16-18.) Respectfully, as set forth above, PG&E's legal issues are meritless on their face, and Fulcrum urges that they do not constitute a basis to disregard the parties' clear contractual agreement to arbitrate. Allowing the assertion of issues which have no merit in order to delay these proceedings further would be an extreme injustice.

However, even if PG&E had a legitimate basis to quarrel with Tuscan leasing its private property to a third party after PG&E had concluded its use, the impact of that use (if any) falls within the parties' agreement to arbitrate. PG&E invokes the provision of the Agreement that provides for a "proportionate reduction" of its restoration obligations, and it argues that it should

8

not be liable for damage caused by ECC.  If this Court agrees that these are legitimate issues—which Fulcrum strongly submits they are not - they can and should be decided by the same arbitrator who will determine the nature, scope and extent of PG&E's restoration obligation.

PG&E then argues that the Arbitrator in this case does not have the authority to make legal determinations, relying on *Parker v. Twentieth Century-Fox Film Corp.* 118 Cal.App.3d 895 (1981) ("*Parker*").  However, the arbitration clause in *Parker* expressly provided that a non-legal professional would decide the narrow issues described there:

> "In case any controversy shall arise between the parties hereto as to any action by Fox with respect to the receipts and proceeds from the distribution of the series or the expenses pertaining thereto, the questions in controversy **shall be submitted for determination to certified public accountants**."

*Id.* at 899 (emphasis added).

The complaint in *Parker* asserted eleven (11) causes of action including, but not limited to usury, declaratory relief, fraud, fraud in the inducement, breach of contract, rescission, dissolution, and winding up of a joint venture.  *Id.* at 899-901. On Defendant's motion to compel arbitration of the claims, the court held that many of allegations went beyond this scope of "receipts and proceeds," (*id.* at 903) and that many of the causes of action were required to be determined by a court of law – not accountants.  *Id.* at 905.

This is not a case like *Parker* where a non-legal professional was designated as the arbitrator. True, the parties here have stipulated that the arbitrator was required to have construction experience, but arbitrators have specialized experience in a variety of areas; it does not make them unqualified to make decisions on legal issues.   By specifying the dispute as broadly as the parties did, the arbitration provision can only be read to permit-- indeed to require—resolution by an arbitrator with the specialized expertise indicated. Here, Fulcrum's claims relating to PG&E's restoration obligation are fully encompassed by the arbitration clause and the arbitrator has the power to make binding  determinations, including as to any claim by PG&E that ECC's use somehow impacted the nature, scope or extent of its restoration obligations.

## V. CAUSE EXISTS TO SEND THIS MATTER TO ARBITRATION

As set forth in the Motion, this a non-core matter, and the Court does not have discretion to

9
REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM PLAN INJUNCTION, TO COMPEL ARBITRATION AND/OR FOR ABSTENTION
LEGAL02/41072472v5

Case: 19-30088    Doc# 11305    Filed: 09/22/21    Entered: 09/22/21 20:53:47    Page 13 of 17

deny enforcement of the arbitration provision in the Agreement. However, to the extent the Court were to find this is a core matter, it may and should nevertheless exercise its discretion to compel arbitration, because arbitration will not conflict with the underlying purposes of the Bankruptcy Code.

PG&E cites *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984) as authority for its argument that this Court should exercise its discretion to determine the "legal and equitable issues" before sending the matter to arbitration. Movant submits that the factors cited in that case support the opposite conclusion, as follows:

1. <u>Whether the Relief Will Result in a Partial or Complete Resolution of the Issues</u>: As set forth above, the genuine issues in this case are subject to the parties' agreement to arbitrate. If the red herrings and meritless defenses suggested by PG&E are disregarded, of course, the only issue is the cost to restore- which can be resolved in its entirety through arbitration. Even if the impact of ECC's use is to be considered, that could be resolved in arbitration as well. For those reasons, compelling arbitration will resolve Fulcrum and Tuscan's claim in full.

2. <u>The Lack of Any Connection With or Interference With the Bankruptcy Case</u>: The most important factor in determining whether to compel arbitration in a core proceeding is the effect of the litigation on the administration of the estate. *In re Thorpe Insulation Co.*, 671 F.3d at 1021. Here, there would be no material effect on administration of the estate. The confirmed Plan in this case provides that general unsecured claims are to be paid in full; allowance or disallowance of this claim will have no effect on other creditors because payment on the claim is already contemplated and provided for in the Plan, so the liquidation of the claim (which must happen somewhere) does not affect the estate or implicate the provisions of the Bankruptcy code. There are no remaining issues concerning Debtor's stabilization of operations, or resolution of issues with creditor constituencies. On the contrary, compelling arbitration will merely allow the claim to be liquidated and resolved. For that reason, this factor weighs in favor of compelling arbitration.

3. <u>Whether the Foreign Proceeding Involves the Debtors as a Fiduciary</u>: This factor is not applicable to the current proceeding.

4. _Whether a Specialized Tribunal Has Been Established to Hear the Particular Cause of Action and Whether That Tribunal Has the Expertise to Hear Such Cases_: The claims and defenses asserted in by Fulcrum and Tuscan arise under the laws of the State of California, and are generic contract claims which require an understanding of construction law and principles. An arbitration conducted by an arbitrator with at least ten years construction experience, as the parties agreed, is the most well-equipped forum to liquidate Fulcrum's and Tuscan's claims. The "specialized tribunal" is, in this case, the arbitration by an arbitrator with the designated expertise.

5. _Whether the Debtors' Insurance Carrier Has Assumed Full Financial Responsibility for Defending the Litigation_: To Fulcrum's and Tuscan's knowledge, this factor is inapplicable.

6. _Whether the Action Essentially Involves Third Parties, and the Debtors Function Only as a Bailee or Conduit for the Goods or Proceeds in Question_: This factor does not apply.

7. _Whether the Litigation in Another Forum Would Prejudice the Interests of Other Creditors, the Creditors' Committee and Other Interested Parties:_ The Debtors' plan provides for payment in full to general unsecured creditors. As such, there can be no prejudice to any other creditors. They stand to be paid in full regardless of the liquidation of Fulcrum's and Tuscan's claim or where that liquidation occurs.

8. _Whether the Judgment Claim Arising From the Foreign Action is Subject to Equitable Subordination Under § 510(C)_: This factor does not apply.

9. _Whether Movant's Success in the Foreign Proceeding Would Result in a Judicial Lien Avoidable by the Debtor Under § 522(F)_: This factor is not applicable since the Debtors are not individuals.

10. _The Interests of Judicial Economy and the Expeditious and Economical Determination of Litigation for the Parties_: A "speedy and relatively inexpensive means of dispute resolution" is the very essence of arbitration. *Wagner Constr. Co. v. Pac. Mech. Corp.*, 41 Cal. 4th 19, 25 (2007); *see also OTO, L.L.C. v. Kho*, 8 Cal.5th 111, 125–126, 130 (2019). Although PG&E would have the Court separate this matter into issues by conjuring up meritless defenses, there is no reason this claim cannot be liquidated in a single proceeding as agreed by the parties; this would perfectly serve the goals of judicial economy along with expeditious and economical

1  determination.  Conversely, a denial of this motion likely would result in the need to litigate in
2  multiple forums.

3       11.    <u>Whether the Foreign Proceedings Have Progressed to the Point Where the Parties
4  are Prepared for Trial</u>: While the parties are not yet prepared for trial, there will be ample time for
5  the Debtors to prepare for arbitration. Moreover, the Debtors are represented by able and
6  experienced defense counsel.  Compelling arbitration will allow defense counsel sufficient time to
7  prepare for the arbitration.

8       12.    <u>The Impact of the Stay on the Parties and the Balance of Hurt:</u> The balance of the
9  hurt undoubtedly favors Fulcrum and Tuscan.  After the most devastating forest fire in California
10 history, Tuscan placed its development plans on hold and allowed PG&E to use its private
11 property as a basecamp to help restore utilities to the severely impacted community.  (Supp. Bates
12 Decl. at p. 2, ¶¶ 2-4.)  PG&E decimated the Property destroying the golf course's irrigation
13 system, cart paths, and topography. After PG&E had gotten what it needed out of use of the
14 Property, PG&E vacated and is now attempting to renege on its contractual agreement to restore
15 the Property to its "Baseline Condition."  PG&E's performance under this contract is already two
16 and half years overdue.  Fulcrum and Tuscan have dutifully abided by the Court's ADR
17 procedures and submitted to a mediation demanded by PG&E more than six months ago; when it
18 was not successful, they requested that PG&E stipulate to arbitrate the matter in order to move the
19 dispute forward, but no stipulation was reached.  They are entitled to the expeditious resolution for
20 which the parties bargained in their contract, and they respectfully submit that this factor
21 overwhelmingly weighs in favor of granting relief from the automatic stay and compelling the
22 arbitration.

## VI.  **CONCLUSION**

PG&E argues that honoring the parties' agreement to arbitrate would result in a "time-consuming, unduly expensive piecemeal and potentially unnecessary litigation."  (Oppo. at 7:3-5.) Fulcrum respectfully disagrees.  It is PG&E's efforts to create issues where none exist that would lead to piecemeal, unduly expensive and unnecessary litigation.

For all the foregoing reasons, Fulcrum respectfully requests that its Motion be granted.

12

REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM PLAN INJUNCTION, TO COMPEL ARBITRATION AND/OR FOR ABSTENTION

LEGAL02/41072472v5

1 | DATED: September 22, 2021         ALSTON & BIRD, LLP

By: /s/ Diane C. Stanfield
    DIANE C. STANFIELD
    Attorneys for Fulcrum Credit Partners, LLC

13
REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM PLAN INJUNCTION, TO COMPEL ARBITRATION AND/OR FOR ABSTENTION
LEGAL02/41072472v5

Case: 19-30088   Doc# 11305   Filed: 09/22/21   Entered: 09/22/21 20:53:47   Page 17 of 17