1 ALSTON & BIRD, LLP
DIANE C. STANFIELD (CA Bar No. 106366)
2 DOUGLAS J. HARRIS (CA Bar No. 329946)
diane.stanfield@alston.com
3 douglas.harris@alston.com
333 S. Hope Street 16th Floor
4 Los Angeles, California 90071
Telephone: 213.576.1000
5 Facsimile: 213.576.1100

6 Attorneys for
Fulcrum Credit Partners LLC
7
DOWNEY BRAND LLP
8 JAMIE P. DREHER (CA Bar No. 209380)
Email: jdreher@downeybrand.com
9 TYLER J. HORN (CA Bar No. 323982)
Email: thorn@downeybrand.com
10 621 Capitol Mall, 18th Floor
Sacramento, California 95814
11 Telephone: 916.444.1000
Facsimile: 916.444.2100

12
Attorneys for
13 Tuscan Ridge Associates, LLC

14 UNITED STATES BANKRUPTCY COURT

15 NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

17 In re | Case No. 19-30088-DM

18 PG&E Corporation, | Chapter 11
Lead Case, Jointly Administered
19 and

20 PACIFIC GAS AND ELECTRIC COMPANY, | **DECLARATION OF COURTNEY MCALISTER IN SUPPORT OF REPLY TO PG&E'S OPPOSITION TO MOTION FOR RELIEF FROM PLAN INJUNCTION, TO COMPEL ARBITRATION AND/OR ABSTENTION**

22 Debtors.

23 [ ] Affects PG&E Corporation | Date: September 29, 2021
[x] Affects Pacific Gas and Electric Company | Time: 10:00 a.m.
24 [] Affects both Debtors | Crtrm.: Courtroom 17
450 Golden Gate Avenue
25 *All papers shall be filed in the Lead Case, | San Francisco, CA 94102
No. 19-30088-DM, | Judge: Hon. Dennis Montali

I, Courtney McAlister, declare:

1. I am over the age of eighteen (18), provide this declaration in support of Fulcrum Credit Partners, LLC's Reply to Pacific Gas and Electric Company's ("PG&E") Opposition to Motion for Relief from Plan Injunction, to Compel Arbitration And/or for Abstention, and provide this testimony based on my personal knowledge, and would testify consistently herewith if called to do so.

2. I am an attorney authorized to practice law in the state of California. I am also a member of Tuscan Ridge Associates, LLC ("Tuscan"). Tuscan is the owner of parcels of real property located in Paradise, California commonly identified as Assessor's Parcel Nos. 040-520-103 and 040-520-100 (collectively the "Property").

3. As set forth more fully in the Declaration of Scott Bates In Support of Motion for Relief from Plan Injunction, to Compel Arbitration, and/or for Abstention, on or about November 20, 2018, Tuscan and PG&E entered into the Letter Agreement ("Agreement"). The Agreement permitted PG&E to use the Property as a basecamp for PG&E's efforts to restore utilities to those affected by the devastating Camp Fire. Additionally, the Agreement memorialized PG&E's restoration obligations relative to its use of the Property.

4. On February 5, 2019, I spoke with Mr. Grant Guerra from PG&E's Law Department via telephone to confirm rumors that PG&E may be vacating the Property. Mr. Guerra stated that he did not know when PG&E would be vacating the Property, but promised to follow up and get back to me. Mr. Guerra also invited Tuscan to provide PG&E with an estimate of the costs to restore the Property as soon as possible so we could engage with PG&E on that topic. Finally, Mr. Guerra expressed PG&E's likely desire to satisfy its restoration obligations by making a monetary payment rather than performing the actual restoration work. This was the beginning of the Parties' efforts to meet and confer concerning PG&E's restoration obligation, as specified in the Agreement. A true and correct copy of my contemporary email to the other Tuscan partners, memorializing this phone conversation is attached hereto as **Exhibit A**.

///

///

5. On or about February 6, 2019, I emailed PG&E and informed them that Tuscan members and Algie Pulley, the golf course architect, would be visiting the Property to begin work on preparing a cost estimate relating to PG&E's restoration obligation. A true and correct copy of this email is attached hereto as **Exhibit B**.

6. Later that morning in response to my email, I received an email from Ms. Elouise Del Rosario with PG&E's Land Acquisition Department. In this email, Ms. Del Rosario stated "PG&E expects to vacate the [Property] by the end of February if not earlier." A true and correct copy of this email is attached hereto as **Exhibit C**.

7. Later in the afternoon of February 6, 2019, I received an email from Mr. Guerra a copy of which is , a true and correct copy of which is attached hereto as **Exhibit D**. In this email, Mr. Guerra affirmed that PG&E would no longer be using the Property as a basecamp. Although Mr. Guerra stated that PG&E would not be vacating the Property *if* it decided to complete its restoration obligation with its in-house contractors, that possibility never came to pass; on the contrary, Mr. Guerra reiterated to me soon after that email that it intended to satisfy its restoration obligations by making a monetary payment rather than performing the work.

8. PG&E vacated the Property on or about the end of February 2019.

9. After these initial discussions and the completion of Mr. Pulley's initial cost estimate, on or about March 7, 2019, Tuscan provided PG&E a copy of Mr. Pulley's cost estimate relating to PG&E's restoration obligation. Thereafter, PG&E met with Tuscan members at the Property to discuss Mr. Pulley's cost estimate.

10. On or about March 20, 2019, I informed PG&E that Tuscan was intending to enter an agreement with ECC Constructors, LLC ("ECC") for use of the Property as a base camp for operations. PG&E did not object to that use and did not express any concern about the use making any restoration efforts impossible; on the contrary, we continued to discuss the cost of the restoration and PG&E's desire to make a monetary payment to Tuscan. A true and correct copy of my March 20, 2019 email to Ms. Del Rosario of PG&E (with a "cc" to Mr. Guerra) confirming this information is attached hereto as **Exhibit E.**

///

11. On or about March 21, 2019, I continued to discuss PG&E's restoration obligation with Mr. Guerra and he affirmed PG&E's desire to make a monetary payment to Tuscan as opposed to completing the restoration work itself. This desire was later confirmed in subsequent communications with Mr. Tom Crowley, a Senior Manager with PG&E's Portfolio Department.

12. Although I was a principal point of contact for Tuscan, at no point in time did Mr. Guerra or any other PG&E representative contact me and object to ECC's presence on the Property or request access to perform its restoration obligation.

13. At the time Tuscan entered into the lease agreement with ECC concerning the Property, PG&E had vacated the Property and had expressed a clear intent to make a monetary payment to Tuscan as opposed to actually performing the restoration work.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

September 22, 2021

By: _____
COURTNEY MCALISTER

# EXHIBIT A

# EXHIBIT A

# PG&E

From: Courtney McAlister (comcalister@yahoo.com)

To: scottbates1@live.com; emowesthill@gmail.com; westm15@gmail.com

Date: Wednesday, February 6, 2019, 11:47 AM MST

Scott, Mo, Mark,

I spoke to Grant Guerra at PG&E yesterday evening. He was not aware of PG&E's plans regarding when they might vacate the property, but he promised to follow up and get back to me. I also questioned him about how PG&E will view our license agreement in the bankruptcy and he didn't know the answer to that either. He did, however, invite us to provide PG&E with an estimate of the costs to restore asap so we can start those discussions. He expressed PG&E's likely desire to write us a check rather than do the work themselves.

I received an email from Elouise a few minutes ago, letting me know that PG&E will likely vacate the site by the end of February. She said she would get me a firm date next week.

Courtney McAlister
Law Offices of Courtney L. McAlister
1510 Poole Blvd, Suite 105
Yuba City, CA 95993
(916) 496-2581 (mobile)
(530) 755-2607 (office)
comcalister@yahoo.com

# EXHIBIT B

# EXHIBIT B

Elouise Del Rosario

Land Acquisition | Pacific Gas and Electric Company

245 Market Street, N10A, San Francisco, CA 94105

M: 628-219-8228 | Elouise.DelRosario@pge.com

**From:** Courtney McAlister <comcalister@yahoo.com>
**Sent:** Wednesday, February 6, 2019 9:55 AM
**To:** Norvell, Steven <S1NQ@pge.com>; Del Rosario, Elouise <E1DQ@pge.com>
**Subject:** Site Visit on Thur

*****CAUTION: This email was sent from an EXTERNAL source. Think before clicking links or opening attachments.*****

Steven, Elouise,

Tomorrow (Thur) at around 9:30, Mo and Mark West will be at the site with Gail Pulley and Algie Pulley of Pulley Development. The purpose of the visit is to start the work of estimating restoration costs. Pulley Development was the original golf course developer/architect for Tuscan Ridge.

It's possible that Scott Bates and I will attend as well. Thank you.

Courtney McAlister

Law Offices of Courtney L. McAlister

1510 Poole Blvd, Suite 105

Yuba City, CA 95993

(916) 496-2581 (mobile)

(530) 755-2607 (office)

comcalister@yahoo.com

Case: 19-30088    Doc# 11305-1    Filed: 09/22/21    Entered: 09/22/21 20:53:47    Page 8 of 14

# EXHIBIT C

# EXHIBIT C

# FW: Site Visit on Thur

From: Guerra, Grant (Law) (gxgw@pge.com)
To: comcalister@yahoo.com
Date: Wednesday, February 6, 2019, 04:11 PM PST

Courtney, I spoke with Elouise today and she updated me on her earlier message to you about PG&E's plans to surrender use of the Property. Although Eloise's message was describing PG&E's plans for use of the Property of the basecamp, we recognize there is an restoration obligation in the License. I understand your client is preparing a cost estimate for this restoration work, which we will consider once received. We are also independently evaluating performing the restoration work using our own contractors, in which case we would not be vacating the Property by the end of February. We can't identify a date certain for the return of the Property to your clients until we determine how we will complete the restoration work. So please keep this in mind, the date to vacate will be influenced by the restoration work. We have not yet evaluated the full scope of the work, and there is a possibility PG&E will need to continue to occupy the Property through the Expiration Date specified in the License, May 20.

**Grant Guerra**| Senior Counsel, Law Department
Pacific Gas and Electric Company
415.973.3728 office | Grant.Guerra@pge.com
Together, Building a Better California

**From:** Del Rosario, Elouise
**Sent:** Wednesday, February 6, 2019 10:05 AM
**To:** 'Courtney McAlister' <comcalister@yahoo.com>
**Subject:** RE: Site Visit on Thur

Hi Courtney,

I have forwarded your email to the security team and onsite lead.

Also, I confirmed with the team yesterday that PG&E expects to vacate the property by the end of February if not earlier. I should have a more solid date by next week, we can continue discussions on how to proceed with restoration.

Thank you,

Case: 19-30088    Doc# 11305-1    Filed: 09/22/21    Entered: 09/22/21 20:53:47    Page 10 of 14

# EXHIBIT D

# EXHIBIT D

# FW: Site Visit on Thur

From: Guerra, Grant (Law) (gxgw@pge.com)

To: comcalister@yahoo.com

Date: Wednesday, February 6, 2019, 04:11 PM PST

Courtney, I spoke with Elouise today and she updated me on her earlier message to you about PG&E's plans to surrender use of the Property. Although Eloise's message was describing PG&E's plans for use of the Property of the basecamp, we recognize there is an restoration obligation in the License. I understand your client is preparing a cost estimate for this restoration work, which we will consider once received. We are also independently evaluating performing the restoration work using our own contractors, in which case we would not be vacating the Property by the end of February. We can't identify a date certain for the return of the Property to your clients until we determine how we will complete the restoration work. So please keep this in mind, the date to vacate will be influenced by the restoration work. We have not yet evaluated the full scope of the work, and there is a possibility PG&E will need to continue to occupy the Property through the Expiration Date specified in the License, May 20.

**Grant Guerra** | Senior Counsel, Law Department
Pacific Gas and Electric Company
415.973.3728 office | Grant.Guerra@pge.com
Together, Building a Better California

---

From: Del Rosario, Elouise
Sent: Wednesday, February 6, 2019 10:05 AM
To: 'Courtney McAlister' <comcalister@yahoo.com>
Subject: RE: Site Visit on Thur

Hi Courtney,

I have forwarded your email to the security team and onsite lead.

Also, I confirmed with the team yesterday that PG&E expects to vacate the property by the end of February if not earlier. I should have a more solid date by next week, we can continue discussions on how to proceed with restoration.

Thank you,

# EXHIBIT E

# EXHIBIT E

# RE: Tuscan Ridge / PG&E

From: Guerra, Grant (Law) (gxgw@pge.com)

To: comcalister@yahoo.com

Date: Wednesday, March 20, 2019, 03:41 PM PDT

[redacted]

**Grant Guerra** Senior Counsel, Law Department
Pacific Gas and Electric Company
415.973.3728 office | Grant.Guerra@pge.com
Together, Building a Better California

---

**From:** Courtney L Mcalister <comcalister@yahoo.com>
**Sent:** Wednesday, March 20, 2019 11:07 AM
**To:** Del Rosario, Elouise <E1DQ@pge.com>
**Cc:** Guerra, Grant (Law) <GxGw@pge.com>; Mark West <westm15@gmail.com>
**Subject:** Re: Tuscan Ridge / PG&E

*****CAUTION: This email was sent from an EXTERNAL source. Think before clicking links or opening attachments.*****

Elouise,

I just spoke with Mark who spoke to Jess. Jess asked that I email you to confirm that ECC's use of the site for now is temporary just for staging. Until we have a formal agreement with them, PG&E would maintain its security. Please confirm with Jess. Thanks.

Courtney

Sent from my iPhone

On Mar 20, 2019, at 10:47 AM, Del Rosario, Elouise <E1DQ@pge.com> wrote: