ALSTON & BIRD, LLP
DIANE C. STANFIELD (CA Bar No. 106366)
DOUGLAS J. HARRIS (CA Bar No. 329946)
diane.stanfield@alston.com
douglas.harris@alston.com
333 S. Hope Street 16th Floor
Los Angeles, California 90071
Telephone: 213.576.1000
Facsimile: 213.576.1100
Attorneys for
Fulcrum Credit Partners LLC

DOWNEY BRAND LLP
JAMIE P. DREHER (CA Bar No. 209380)
Email: jdreher@downeybrand.com
TYLER J. HORN (CA Bar No. 323982)
Email: thorn@downeybrand.com
621 Capitol Mall, 18th Floor
Sacramento, California 95814
Telephone: 916.444.1000
Facsimile: 916.444.2100

Attorneys for
Tuscan Ridge Associates, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E Corporation,<br><br>and<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>          Debtors.<br><hr>[ ] Affects PG&E Corporation<br>[x] Affects Pacific Gas and Electric Company<br>[] Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088-DM, | Case No. 19-30088-DM<br><br>Chapter 11<br>Lead Case, Jointly Administered<br><br>**SUPPLEMENTAL DECLARATION OF SCOTT BATES IN SUPPORT OF REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM PLAN INJUNCTION, TO COMPEL ARBITRATION AND/OR FOR ABSTENTION**<br><br>Date: September 29, 2021<br>Time: 10:00 a.m.<br>Crtrm.: Courtroom 17<br>       450 Golden Gate Avenue<br>       San Francisco, CA 94102<br>Judge: Hon. Dennis Montali |

///

I, Scott Bates, declare as follows:

I am over the age of eighteen (18), provide this declaration in support of Fulcrum Credit Partners, LLC's Reply to Pacific Gas and Electric Company's Opposition to Motion for Relief from Stay, to Compel Arbitration, and/or Abstention, provide this testimony based on my personal knowledge, and would testify consistently herewith if called to do so.

1. I am the managing member of Tuscan Ridge Associates, LLC ("Tuscan"). Tuscan is the owner of real property located in Paradise California commonly identified as Assessor's Parcel Nos. 040-520-103 and 040-520-100 (the "Property").

2. On or about, November 20, 2018, Tuscan and PG&E executed the Letter Agreement (the "Agreement") which memorialized PG&E's restoration and maintenance obligations relative to the Property and arbitration process.

3. In early February, PG&E informed Tuscan that it planned to vacate the Property by the end of February.

4. Additionally, in early February Tuscan hired Algie Pulley, the architect of the golf course, and Melton Design Group to prepare a cost estimate relating to PG&E's restoration obligation. The initial cost estimate is dated March 5, 2019. When Tuscan engaged Mr. John Moreno of Sierra West Group to prepare an updated cost estimate based on industry standard costs, he was asked to prepare the estimate based on the condition of the Property when PG&E vacated as reflected in the original Melton Group cost estimate.

5. Consistent with its notification to Tuscan, PG&E vacated the Property on or about the end of February 2019.

6. Shortly thereafter on or about March 7, 2019, I met with PG&E and representatives from its outside contractor, Turner Construction, to meet and confer regarding PG&E's obligations with respect to the restoration of the Property to its Baseline Condition, as required by the Agreement. Specifically, I met with Tom Crowley from PG&E and Tim Blood from Turner Construction. During this meeting, I provided PG&E with a copy of the initial cost estimate.

///

///

7. Later in March 2019 and on multiple occasions, I met with PG&E representatives, including Mr. Tom Crowley, at the Property. During the first of these subsequent meetings, PG&E pointed out that the initial cost estimate was incomplete and missing line items. Specifically, PG&E indicated that two golf course holes, which PG&E damaged, were not included in the initial estimate. Additionally, PG&E representatives told me that it intended to make a monetary payment to Tuscan as opposed to actually performing the restoration work itself. As such, Tuscan asked Mr. Pulley and Melton Design Group to revise the cost estimate based on PG&E's input.

8. On or about March 21, 2019, Tuscan provided PG&E with Mr. Pulley's and Melton Group's revised cost estimate concerning PG&E's restoration obligation.

9. Tuscan did not hear from PG&E until approximately June 26, 2020 when Mr. Crowley appeared at the Property. Mr. Crowley was granted access to the Property. At no point in time did Mr. Crowley or any other PG&E representative contact me to discuss ECC Constructors LLC's ("ECC") presence on the Property, object to ECC's use of the Property, or request access to the Property to perform restoration activities.

10. ECC entered and began occupying the Property on or about April 14, 2019.

11. Despite ECC's presence on the Property, had PG&E stated that it desired to perform the restoration activities, Tuscan was prepared and able to allow PG&E access to perform such restoration work, no request was ever made.

12. At no point in time did Tuscan terminate the Agreement.

///
///
///
///
///
///
///
///

13. After ECC vacated the Property, Tuscan filed a lawsuit against ECC in Butte County. Ultimately, Tuscan Ridge did not pursue a damages claim against ECC for damage to the Property.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

September 22, 2021

By: _____
SCOTT BATES