KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

LITTLER MENDELSON P.C.
Elisa Nadeau (#199000)
(enadeau@littler.com)
50 West San Fernando Street, 7th Floor
San Jose, CA 95113
Tel: 408 961 7119
Fax: 408 516 8313

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

**In re:**

**PG&E CORPORATION,**

- and -

**PACIFIC GAS AND ELECTRIC COMPANY,**

Debtors.

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

Bankruptcy Case No. 19-30088 (DM)

Chapter 11

(Lead Case) (Jointly Administered)

**REORGANIZED DEBTORS' OBJECTION TO CLAIM (CLAIM NO. 58462, FILED OCTOBER 17, 2019, OF SPIRO JANNINGS)**

**Response Deadline:**
**October 26, 2021, 4:00 p.m. (PT)**

**Hearing Information If Timely Response Made:**
Date: November 9, 2021
Time: 10:00 a.m. (Pacific Time)
Place: (Tele/Videoconference Appearances Only)
United States Bankruptcy Court
Courtroom 17, 16th Floor
San Francisco, CA 94102

# TABLE OF CONTENTS

| | | | PAGE |
|---|---|---|---|
| I. | JURISDICTION | | 1 |
| II. | BANKRUPTCY CASE BACKGROUND | | 1 |
| III. | THE SPIRO JANNINGS' CLAIM | | 3 |
| IV. | THE OBJECTION AND REQUEST FOR RELIEF | | 4 |
| | A. | The Jannings' Claim Is Unenforceable Because It Is Pre-Empted By The LMRA. | 5 |
| | B. | Mr. Jannings Failed To Bring A Hybrid Section 301 Claim Within Six Months Of The Grievance Procedure Under the CBA, And, Thus, His Pre-Empted Claims Cannot Be Resurrected. | 8 |
| | C. | Mr. Jannings' Claims Will Also Fail Because Mr. Jannings Has Admitted Facts Establishing Good Cause To Terminate His Employment. | 9 |
| | D. | Failure to Provide Supporting Documentation | 11 |
| V. | RESERVATION OF RIGHTS | | 11 |
| VI. | NOTICE | | 11 |
| VII. | NO PREVIOUS REQUEST | | 12 |

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Allis-Chalmers Corp. v. Lueck*,
   471 U.S. 202 (1985)..................................................................................................7

*Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*
   178 B.R. 222 (B.A.P. 9th Cir. 1995) *aff'd without opinion* 91 F.3d 151 (9th Cir.
   1996) .........................................................................................................................5

*Balcorta v. Twentieth Century-Fox Film Corp.*,
   208 F.3d 1102 (9th Cir. 2000) ..................................................................................7

*Burnside v. Kiewit Pacific Corp.*,
   491 F.3d 1053 (9th Cir. 2007) ..................................................................................6

*Cotran v. Rollins Hudig Hall Int'l, Inc.*,
   17 Cal. 4th 93 (1998) ................................................................................................9

*De'Sart v. Pac. Gas & Elec. Co., Inc.*,
   2018 WL 3545927 (C.D. Cal. July 18, 2018)...................................................7, 8, 9

*DelCostello v. Int'l Bhd. of Teamsters*,
   462 U.S. 151 (1983)..................................................................................................9

*In re Fidelity Holding Co.*,
   837 F.2d 696 (5th Cir. 1988) ....................................................................................5

*Fowler v. Varian Assoc., Inc.*,
   196 Cal. App. 3d 34 (1987) ......................................................................................9

*King v. United Parcel Serv., Inc.*,
   152 Cal. App. 4th 426 (2007) .................................................................................10

*Kroeger v. L3 Technologies, Inc.*,
   No. 2:17–cv–08489–JFW-AGR, 2018 WL 1357363 (C.D. Cal. March 15, 2018)...................7

*Kroeger v. Vertex Aero. LLC*,
   No. 20-3030-JFW(AGRx), 2020 U.S. Dist. LEXIS 117323 (C.D. Cal. June 30,
   2020) .........................................................................................................................7

*Lingle v. Norge Division of Magic Chef*,
   486 U.S. 399 (1988)..................................................................................................6

*Lundell v. Anchor Constr. Specialists, Inc.*,
   223 F.3d 1035 (9th Cir. 2000) ..................................................................................5

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Moreau v. San Diego Transit Corp.*,
 210 Cal. App. 3d 614 (1989) ................................................................................. 7

*Phipps v. Gary Drilling Co., Inc.*,
 722 F.Supp. 615 (E.D. Cal. 1989) ......................................................................... 10

*Spencer v. Pugh (In re Pugh)*,
 157 B.R. 898 (BAP 9th Cir. 1993) .......................................................................... 5

*Vaca v. Sipes*,
 386 US 171 (1967) .................................................................................................. 8

*Wright v. Holm (In re Holm)*,
 931 F.2d 620 (9th Cir. 1991) .................................................................................. 5

*Young v. Anthony's Fish Grottos, Inc.*,
 830 F.2d 993 (9th Cir. 1987) .................................................................................. 6

**Statutes**

11 U.S.C. § 502 ................................................................................................................ 1

11 U.S.C. § 502(a) ........................................................................................................... 5

11 U.S.C. §§ 502(b)(9) and 105(a) .................................................................................. 2

28 U.S.C. §§ 157 and 1334 .............................................................................................. 1

28 U.S.C. § 157(b) ........................................................................................................... 1

28 U.S.C. §§ 1408 and 1409 ............................................................................................ 1

29 U.S.C. § 185 ................................................................................................................ 5

Bus. and Prof. Code §17200 ............................................................................................ 4

Cal. Labor Code § 2922 ................................................................................................... 7

LMRA ..................................................................................................................... 5, 6, 8, 9

**Other Authorities**

Bankruptcy Code §101(27) ............................................................................................. 2

Bankruptcy Code §502(b)(1) ...................................................................................... 4, 5

Bankruptcy Code §§1107(a) and 1108 ........................................................................... 1

Case: 19-30088    Doc# 11388    Filed: 10/08/21    Entered: 10/08/21 17:14:00    Page 4 of 17

# TABLE OF AUTHORITIES
(CONTINUED)

PAGE

Bankruptcy Rule 1015(b) ................................................................................................. 2

Bankruptcy Rule 2002 .................................................................................................... 12

Bankruptcy Rule 5011-1(a) .............................................................................................. 1

Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007 ....................................................... 2

Fed. R. Bankr. P. 3007 ...................................................................................................... 1

**TO:** (A) THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE; (B) THE OFFICE OF THE UNITED STATES TRUSTEE; (C) THE AFFECTED CLAIMANT; AND (D) OTHER PARTIES ENTITLED TO NOTICE:

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**," or as reorganized pursuant to the Plan (as defined below), the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") file this objection (the "**Objection**") to the claim of Spiro Jannings ("**Claimant**" or "**Mr. Jannings**"), Claim No. 58462, filed October 17, 2019 (the "**Proof of Claim**" or "**Claim**"),[1] and in support thereof, submit the Declaration of Kathy Ledbetter ("**Ledbetter Decl.**"), the Declaration of James Leonard ("**Leonard Decl.**"), the Declaration of Elisa Nadeau ("**Nadeau Decl.**"), and the Request for Judicial Notice ("**RJN**"), all filed contemporaneously herewith, and state the following:

## I. JURISDICTION

This Court has jurisdiction over this Objection under 28 U.S.C. §§ 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested are section 502 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## II. BANKRUPTCY CASE BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. Prior to the Effective Date (as defined below), the Debtors continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner was appointed in either of the Chapter 11 Cases. The Chapter 11 Cases are being jointly administered for procedural

---

[1] A copy of the Proof of Claim is attached to the Nadeau Declaration as Exhibit B.

1

purposes only pursuant to Bankruptcy Rule 1015(b).

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263].

On July 1, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors* [Docket No. 2806] (the "**Bar Date Order**"). The Bar Date Order set the deadline to file all proofs of claim in respect of any prepetition claim (as defined in section 101(5) of the Bankruptcy Code), including all claims of Fire Claimants (as defined therein), Wildfire Subrogation Claimants (as defined therein), Governmental Units (as defined in section 101(27) of the Bankruptcy Code), and Customers, and for the avoidance of doubt, including all secured claims and priority claims, against either of the Debtors as October 21, 2019 at 5:00 p.m. Pacific Time (the "**Bar Date**"). The Bar Date later was extended solely with respect to unfiled, non-governmental Fire Claimants to December 31, 2019 [Docket No. 4672][2]; and subsequently with respect to certain claimants that purchased or acquired the Debtors' publicly held debt and equity securities and may have claims against the Debtors for rescission or damages to April 16, 2020 [Docket No. 5943].

By Order dated June 20, 2020 [Docket No. 8053], the Bankruptcy Court confirmed the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* (as may be further modified, amended or supplemented from time to time, and together with any exhibits or scheduled thereto, the "**Plan**"). The Effective Date of the Plan occurred on July 1, 2020 (the "**Effective Date**"). *See* Docket No. 8252.

---

[2] The claims of Fire Claimants will be administered through the Fire Victim Trust and the claims of Wildfire Subrogation Claimants through the Subrogation Wildfire Trust in accordance with the Plan.

## III. THE SPIRO JANNINGS CLAIM

On October 17, 2019, Claimant filed the Proof of Claim against PG&E Corp.,[3] one of the Debtors. The Proof of Claim, which was filed without any meaningful description of the claim or any attachments, asserts a prepetition claim of $1,000,000. The Jannings Claim is based on an alleged breach of contract arising from Mr. Jannings' 2015 termination from his employment as a fieldperson after Mr. Jannings made sexually violent treats against his supervisor to the Superintendent. Nadeau Decl., ¶ 5, Ex. B, Proof of Claim; *see also*, RJN, Ex. A.

Mr. Jannings worked as a fieldperson for the Utility from January 28, 2013, until his termination on or about August 27, 2015. Nadeau Decl., ¶ 2, Ex. A, 44:12-22, Ex. 3 to Jannings Dep., 119:25-120:4, Ex. 10 to Jannings Dep. On or about July 15, 2015, while at the Fremont Service center yard, Mr. Jannings encountered William Pierce, a superintendent who barely knew and did not work with Mr. Jannings. Leonard Decl., ¶ 3, Ex. A; RJN, Ex. A, ¶ 12 ("Plaintiff and Pierce were acquainted but they had little direct contact with each other."). According to the Utility's Corporate Security Department's Summary of Investigative Findings, Mr. Jannings began a conversation with Mr. Pierce, stating his anger over disciplinary action imposed by his supervisor, Jane Doe, and then launched into a rant, culminating in the following threat to sodomize Ms. Doe: "F-cking [Jane Doe], she's trying to put me on a DML [Decision Making Leave]. Just wait. I'll get her. She's going to feel my d-ck in her a-s. She's going to feel the pressure. She's going to feel me." Leonard Decl., ¶ 3, Ex. A, p. 2.

Upon Mr. Pierce's reporting of the threat, the Utility's Corporate Security Department conducted an investigation, including six interviews, and concluded Mr. Jannings had made the threat as described by Mr. Pierce. Leonard Decl., ¶ 3, Ex. A. Ms. Doe, who had previously confronted Mr. Jannings about his calling her a "bitch" and whose previous interactions with Mr. Jannings included his yelling profanities at her, reported the incident to the police. Leonard Decl., ¶ 3, Ex. A, p.3. On

---

[3] In Jannings' civil complaint, Santa Clara County Superior Court Case No. 17CV315033, he alleges that "Pacific Gas and Electric" "a public utility" employed him. RJN, Ex. A. The face of his Proof of Claim, however, instead names the Utility's parent holding company, PG&E Corporation. Claimant failed to attach any description of his claim. The Reorganized Debtors assume Claimant's use of the corporate name is a drafting error and that plaintiff means only to assert claims against the Utility. To be sure, nothing in the Proof of Claim or the civil complaint provides any basis for claims against the parent company. Still, as a precaution, PG&E Corporation separately objects to the Jannings Claim on the ground that it never employed Mr. Jannings and as a result has no liability for what Claimant alleges in his complaint.

August 27, 2015, Mr. Jannings' employment was terminated for disrespectful treatment and threat of violence toward his supervisor in violation of the Employee Code of Conduct. Nadeau Decl., ¶ 2, Ex. A, 119:19-120:11, Ex. 10.

As a member of the International Brotherhood of Electrical Workers, Local Union 1245, (the "**Union**") Mr. Jannings' employment was subject to a collective bargaining agreement (the "**CBA**"), requiring "just cause" for termination of employment. Ledbetter Decl., ¶ 2, Ex. A, CBA, § 7.1; Nadeau Decl., ¶ 2, Ex. A, 45:1-12, 48:6-12. The CBA also required all disputes under the CBA to be resolved through the grievance process. Ledbetter Decl., ¶ 2, Ex. A, CBA, § 102.1 ("apart from those matters that the parties have specifically excluded by way of Section 102.2, all disagreements shall be resolved within the scope of the grievance procedure.")

Mr. Jannings' union grieved his termination, and the grievance proceeded through Step 4 "Review Committee," upon which the Union and the Utility agreed the discipline was issued for just cause, and the case was closed without adjustment on November 16, 2016. Nadeau Decl., ¶ 2, Ex. A, 141:3-25; 145:15-18; Ex. 14 to Jannings Dep.; Ledbetter Decl., ¶ 5, Ex. B. The Review Committee letter ended the grievance procedure, and thus the grievance did not proceed to Step 5, Arbitration. Ledbetter Decl., ¶ 5.

Mr. Jannings proceeded to file a civil complaint in Santa Clara County Superior Court on August 24, 2017, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and unfair business practices under Business and Professions Code section 17200. RJN, Ex. A. The case was litigated for over a year, during which time the Parties exchanged documentary evidence, Mr. Jannings was sanctioned twice by the court in the total amount of $8,160.90, which he still has not paid, and Mr. Jannings was deposed. Nadeau Decl., ¶ 2, Ex. A, 207:9-19, ¶ 6. The Utility was poised to file a summary judgment motion when the case was stayed due to PG&E's bankruptcy proceedings. Nadeau Decl., ¶ 3.

### IV. THE OBJECTION AND REQUEST FOR RELIEF

The Reorganized Debtors object to Mr. Jannings' Claim pursuant to section 502(b)(1) of the Bankruptcy Code because it fails as a matter of law on two grounds: first, Mr. Jannings' claim is preempted by Section 301 of the Labor Management Relations Act ("**LMRA**") and second, Mr.

Jannings has already admitted facts in his deposition defeating all of his causes of action in the civil complaint as a matter of law. Claimant has additionally failed to provide adequate (or even any) supporting documentation in support of his claim or how he derived the $1,000,000 amount demanded.

A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).[4] Section 502(b)(1) of the Bankruptcy Code, however, provides in relevant part that a claim may not be allowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Once the objector raises "facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves," *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991), quoting 3 L. King, *Collier on Bankruptcy* § 502.02 at 502-22 (15th ed. 1991), then "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence," *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)), *aff'd without opinion* 91 F.3d 151 (9th Cir. 1996). "[T]he ultimate burden of persuasion is always on the claimant." *Holm*, 931 F.2d at 623 (quoting King, *Collier on Bankruptcy*); *see also Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000), *Spencer v. Pugh (In re Pugh)*, 157 B.R. 898, 901 (B.A.P. 9th Cir. 1993); *In re Fidelity Holding Co.*, 837 F.2d 696, 698 (5th Cir. 1988).

**A.      The Jannings Claim Is Unenforceable Because It Is Pre-Empted By The LMRA.**

Mr. Jannings' claim he was fired in breach of contract is squarely and irrefutably pre-empted by the LMRA. 29 U.S.C. § 185. Section 301(a) of the LMRA enables *the union* to act on behalf of employees in order to bring suits for violation of the CBA: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as

---

[4] Upon the Reorganized Debtors' request, the deadline under Section 7.1 of the Plan for the Reorganized Debtors to bring objections to Claims initially was extended through and including June 26, 2021 (except for Claims of the United States, which deadline was extended to March 31, 2021) [Docket No. 9563]. That deadline has been further extended through December 23, 2021, [Docket No. 10494] except for Claims of the California Department of Forestry and Fire Protection, which deadline was extended to September 30, 2021, and further extended for certain Claims by stipulation and order [Docket Nos. 11322 and 11336]. The deadlines with respect to Claims of the United States have been further extended three times by stipulation and order [Docket Nos. 10459, 10463, 10983, 10986, 11349, and 11359].

defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." Here, Mr. Jannings, not the union, purports to bring his suit on his own behalf, pursuant to state law and not under the LMRA. However, the United States Supreme Court has made clear that, where the resolution of state law claims requires interpretation or application of a collective bargaining agreement, those claims are preempted by Section 301. *See Lingle v. Norge Division of Magic Chef*, 486 U.S. 399 (1988) ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute."). To be sure, "[t]he preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement and any state claim whose outcome depends on analysis of the terms of the agreement." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987). The Ninth Circuit articulated a two-prong test to analyze whether Section 301 preemption applies in *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059-60 (9th Cir. 2007). Under the first prong, the court must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted and [the court's] analysis ends there." *Id.* at 1059 (citation omitted). In this case, the analysis ends at the first step.[5]

All of Mr. Jannings' claims in his civil complaint (and hence, his Proof of Claim) arise from his allegation that he was terminated without "just cause" in violation of his employment contract. RJN, Ex. A, ¶ 21 ("Defendant breached the employment contract by terminating Plaintiff's employment based on false allegations by Pierce") and ¶ 23 ("Plaintiff had an employment contract with Defendant whereby . . . Defendant would not discharge him without good and just cause."). In fact, Mr. Jannings testified the whole lawsuit had to do with the fairness or unfairness of his

---

[5] In other cases, where the court determines the right underlying the state claim(s) "exists independently of the CBA" the court then proceeds to the second prong, which examines whether the right is "substantially dependent on analysis of a collective bargaining agreement." *Burnside*, 491 F.3d at 1059-60 (internal quotation marks and citation omitted). In determining whether the second prong is met (whether the claim is "substantially dependent" on a CBA) the court must evaluate whether the claim can be resolved by "'look[ing] to' versus interpreting the CBA. If the latter, the claim is preempted; if the former, it is not." *Id.* at 1060 (internal citations omitted).

termination. Nadeau Decl., ¶ 2, Ex. A, 162:12-20. As employment in California is generally at will, Mr. Jannings' right to remain employed unless terminated for "just cause" derives solely from the CBA. Ledbetter Decl., ¶ 3 (Jannings' employment covered by CBA, just cause provision), Ex. A, CBA, § 7.1; Nadeau Decl., ¶ 2, Ex. A, 45:1-9 (Jannings testified his employment was subject to the IBEW CBA), 48:6-20 (Union representative told Jannings he could not be terminated without cause), 151:23-152:23 (Jannings has "no idea" what contract he was referring to in the complaint), 153:8-25 (other than union representative, no one told Jannings he had a right to keep his job unless discharged for cause); *cf.* Cal. Labor Code § 2922 (employment in California is generally deemed at will). As such, Mr. Jannings' claims for breach of contract and implied covenant based on his termination cannot possibly be resolved without interpretation of the CBA. *See, e.g.*, *Moreau v. San Diego Transit Corp.*, 210 Cal. App. 3d 614, 624 (1989) (finding wrongful termination and intentional infliction of emotional distress claims pre-empted because the issues could not be resolved without evaluating whether the plaintiff was discharged for "just cause" and stating, "Thus, even on its most general level it is apparent this case cannot be decided without resort to interpretation of the terms of the collective bargaining agreement.").

In *De'Sart v. Pacific Gas and Electric Company, Inc.*, the plaintiff made a similar argument to Mr. Jannings, claiming the Utility breached an employment agreement not to terminate without just cause and also breached the implied covenant. *De'Sart v. Pac. Gas & Elec. Co., Inc.*, No. 2:18-cv-03515-JFW-MRW, 2018 WL 3545927, at *4 (C.D. Cal. July 18, 2018). The court rejected the plaintiff's argument, stating, "the only 'contract' between Plaintiff and Defendant was the CBA. Accordingly, these causes of action are preempted." *Id.*; *see also Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000) ("'[C]omplete preemption' must be construed to cover 'most state-law actions that require interpretation of labor agreements.'"); *Kroeger v. L3 Technologies, Inc.*, No. 2:17-cv-08489-JFW-AGR, 2018 WL 1357363, at *4 (C.D. Cal. March 15, 2018) (same) ("*Kroeger I*"); *Kroeger v. Vertex Aero. LLC*, No. 20-3030-JFW(AGRx), 2020 U.S. Dist. LEXIS 117323, at *17 (C.D. Cal. June 30, 2020) (preemption and dismissal apply where "claims that are independent of a labor contract where their resolution requires interpretation of a CBA.") ("*Kroeger II*"); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 219-20 (1985) ("Since nearly any

alleged willful breach of contract can be restated as a tort claim for breach of a good-faith obligation under a contract, the arbitrator's role in every case could be bypassed easily if § 301 is not understood to pre-empt such claims). In this case, the only contract conferring a right to employment absent termination for just cause is the CBA, and, therefore, Mr. Jannings' contractual claims are pre-empted. Ledbetter Decl., ¶ 3 (Jannings' employment covered by CBA, just cause provision), Ex. A, CBA, § 7.1. Moreover, at his deposition, Mr. Jannings was unable to identify any contract other than the CBA to support his claims. Nadeau Decl., ¶ 2, Ex. A, 45:1-9, 48:6-20, 151:23- 152:23, 153:8-25.

Mr. Jannings' claims for intentional infliction of emotional distress and unfair business practices under California's Business and Professions Code are also pre-empted. First, Mr. Jannings testified the emotional distress claim was based solely on his termination and admitted that no one at the Utility insulted him. Nadeau Decl., ¶ 2, Ex. A, 155:5-156:16, 157:8-25, 159:20-160:6. Second, Mr. Jannings testified that, other than firing him based on "hearsay" he had no evidence and did not believe the Utility committed any other unfair or unlawful acts. *Id*. at 160:18-162:20. Therefore, these claims are also pre-empted. *See De'Sart v. Pac. Gas and Elec.*, 2018 WL 3545927, *5 (the LMRA pre-empts the claim for intentional infliction of emotional distress in a wrongful termination claim). Because all of Mr. Jannings' causes of action in his civil complaint are pre-empted, his civil complaint, and hence his Proof of Claim, fail as a matter of law.

  **B.**   **Mr. Jannings Failed To Bring A Hybrid Section 301 Claim Within Six Months Of The Grievance Procedure Under the CBA, And, Thus, His Pre-Empted Claims Cannot Be Resurrected.**

Because Mr. Jannings' claims are pre-empted by the LMRA, his remedy was through the CBA grievance process. *See Vaca v. Sipes*, 386 U.S. 171, 184-85 (1967) (employee must fully exhaust grievance procedure before filing a suit against the employer for breach of the CBA since "he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced.") If Mr. Jannings believed he was ill-represented by the Union through that grievance process, his only other remedy was to pursue a "Hybrid Section 301" claim against both the Union and the Utility, alleging the Union breached its duty of fair representation. *Id*. at 186 ("the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent

breached its duty of fair representation in its handling of the employee's grievance.") In a Hybrid Section 301 claim, the plaintiff must prove both that the employer breached the CBA but also that the union breached its duty of fair representation. *De'Sart*, 2018 WL 3545927, *5. Such a claim must be brought within six months of the conclusion of the contractual grievance process. *De'Sart*, 2018 WL 3545927, *5; *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169 (1983). It is undisputable that Mr. Jannings failed to bring a Hybrid Section 301 claim within six months of the end of the grievance process on August 27, 2015, as he still has not done so. Nadeau Decl., ¶¶ 2, 4, Ex. A; Ledbetter Decl., ¶ 5, Ex. B. Thus, all of Mr. Jannings' claims in his complaint (and his Proof of Claim) are barred forever.

### C. Mr. Jannings' Claims Will Also Fail Because Mr. Jannings Has Admitted Facts Establishing Good Cause To Terminate His Employment.

Even if they were not pre-empted, Mr. Jannings cannot possibly win on his breach of contract claims because his theory (that the Utility could not fire him on the basis of uncorroborated hearsay) is legally incorrect. Mr. Jannings *admitted* in his deposition testimony that the Utility *believed* Mr. Pierce's statement that Mr. Jannings made the sexual threat against his supervisor. Nadeau Decl., ¶ 2, Ex. A, 143:1-23, 143:15-23, 148:3-25. Mr. Jannings' theory is based on his belief that the Utility was not able to base the termination on Mr. Pierce's testimony in the absence of a corroborating witness. *Id*. at 143:1-7 ("I don't know how they could make that just cause, you know on hearsay. Just no corroboration of anybody. It's the famous old he said, she said. No one heard me say anything to Bill. No one even saw me with Bill. They recollect they saw me talking to him, which I admit to on Monday.") Mr. Jannings is incorrect, because the Utility does not have to prove that Mr. Jannings made the threat, but only that the Utility honestly believed he did so after an appropriate investigation. "Good cause" means "fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual."[6] *Cotran v. Rollins Hudig Hall Int'l, Inc.*, 17 Cal. 4th 93, 108 (1998). "The proper inquiry for the [fact-finder] . . . is not 'Did the employee in fact commit the act leading to dismissal?' It is '**Was the factual basis on which the employer concluded a dischargeable act had been committed reached honestly,**

---

[6] Cause for termination may properly be determined on summary judgment. *Fowler v. Varian Assoc., Inc.*, 196 Cal. App. 3d 34, 42-43 (1987).

**after an appropriate investigation and for reasons that are not arbitrary or pretextual?**'" *Id.* at 107 (emphasis added). A finding of employee misconduct on the job is good cause for termination. However, the employer need not *prove* that the alleged misconduct actually occurred. "Good cause" exists so long as the employer *reasonably believed* the alleged misconduct took place and acted fairly. *Id.*; *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 438 (2007). Courts decline to second-guess business decisions made in good faith, even though such decisions may have some negative impact on a protected individual. *See Phipps v. Gary Drilling Co., Inc.*, 722 F. Supp. 615, 620 (E.D. Cal. 1989) ("Nor does the court sit as a 'super personnel department that reexamines entities' business decisions.' . . . Only when the 'good cause' relied upon is unlawful may a court substitute its judgment for that of management as to what constitutes proper cause of discharge.") (internal citations omitted).

It is undisputed that the Utility conducted an investigation, including interviewing six witnesses, and came to the conclusion Mr. Jannings engaged in misconduct by uttering a sexual threat against his direct supervisor. RJN, Ex. A, ¶ 9 (Corporate Security Investigation included six interviews and a review of documents and concluded Mr. Jannings violated the Employee Code of Conduct); Leonard Decl., ¶ 3, Ex. A. The investigation yielded corroborating evidence, including the following:

- Mr. Jannings had previously used inappropriate language regarding Ms. Doe, such as calling her a bitch and yelling obscenities at her;
- Mr. Pierce, who hardly knew Mr. Jannings, had no reason to lie and, further, told Ms. Doe about the threat because he genuinely feared for her safety;
- Other employees observed Mr. Jannings speaking with Mr. Pierce, and Mr. Jannings made a statement "They are treating you surveyors like shit" and recalled that Mr. Jannings was "an angry guy" who had been "upset and aggressive" in previous encounters with them; and,
- Ms. Doe also feared for her own safety and accordingly filed a police report to document the incident.

Leonard Decl., ¶¶ 3, 4, Ex. A.

It is also undisputed the Utility believed Mr. Pierce when he stated Mr. Jannings threatened Ms. Doe and terminated Mr. Jannings for that very reason. Nadeau Decl., ¶ 2, Ex. A, 143:15-23,

148:3-25 ("They believed him. I mean where am I at now? Terminated."). Because Mr. Jannings has admitted the Utility conducted an investigation including six interviews and the review of documents and honestly believed he committed the misconduct, Mr. Jannings cannot possibly prove that the Utility breached the CBA's provision requiring just cause for termination. All of Mr. Jannings' claims are tied to this one theory, that his termination was not substantiated by just cause and thus, his Claim fails as a matter of law. Nadeau Decl., ¶ 2, Ex. A, 155:5-156:16, 157:8-25, 159:20-160:6, 160:18-162:20.

### D. Failure to Provide Supporting Documentation

The Reorganized Debtors object to the Jannings Claim to the extent that Claimant has failed to provide sufficient documentation supporting his claim, including, without limitation, a scheduled detail of any expenses, costs, taxes and additional alleged damages included in the amount of the Jannings Claim.

## V. RESERVATION OF RIGHTS

The Reorganized Debtors hereby reserve the right to object, as applicable, in the future to any of the claims listed in this Objection on any ground, and to amend, modify, or supplement this Objection to the extent an objection to a claim is not granted, and to file other objections to any proofs of claims filed in these cases, including, without limitation, objections as to the amounts asserted therein, or any other claims (filed or not) against the Debtors, regardless of whether such claims are subject to this Objection. A separate notice and hearing will be scheduled for any such objections. Should the grounds of objection specified herein be overruled or withdrawn, wholly or in part, the Reorganized Debtors reserve the right to object to the Claim on any other grounds that the Reorganized Debtors may discover or deem appropriate.

## VI. NOTICE

Notice of this Objection will be provided to (i) Mr. Jannings; (ii) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (iii) all counsel and parties receiving electronic notice through the Court's electronic case filing system; and (iv) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Reorganized Debtors respectfully submit that no further notice is required.

## VII. NO PREVIOUS REQUEST

No previous request for the relief set forth herein has been made to this or any other court. Nadeau Decl., ¶ 3.

WHEREFORE the Reorganized Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Reorganized Debtors' business judgment and in the best interests of their estates, creditors, shareholders, and all other parties interests, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: October 8, 2021

**KELLER BENVENUTTI KIM LLP**
**LITTLER MENDELSON P.C.**

By: /s/ Elisa Nadeau
Elisa Nadeau

*Attorneys for Debtors and Reorganized Debtors*

4813-4921-0366.2 / 101443-1005