SERVICE OF RESPONSE
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

BANKRUPTCY CASE No. 1-300088
CHAPTER 11

PG&E CORPORATION and PACIFIC GAS AND ELECTRIC COMPANY, Debtors
*Affects both Debtors
REGARDING NOTICE OF THE REORGANIZED DEBTORS FOR THIRD OMNIBUS CLAIMS
VS
WILLIE AND ORA GREEN, Creditors
Claim No. 80673
2845 Magnolia Street
Oakland CA 94608
510 893-4251
orgr53@gmail.com

We respectfully petition the court for motion to request PG&E to settle claim presented for property damages to owners, at a fair and reasonable amount within a timely manner, not to allow claim to continue indefinitely without settlement.

### QUESTION PRESENTED
1. PG&E SEEKS TO DISALLOW OR EXPUNGE CLAIMS PRESENTED BY PROPERTY OWNERS/ CREDITOR FOR DAMAGE OF PROPERTY.

### WE OPPOSE
1. PG&E DISALLOWANCE AND EXPUNGE TO AVOID RESPONSIBILITY FOR DAMAGE CAUSED BY PG&E WORKERS TO THE PROPERTY LOCATED AT 2845 MAGNOLIA STREET OAKLAND CA DRIVEWAY AND GARAGE FLOOR.

### WE OPPOSE
2. PG&E REFUSAL TO COMPENSATE OWNERS IN A FAIR AND REASONABLE AMOUNT ON CLAIM TO SETTLE FOR PROPERTY DAMAGES EVEN WHEN OWNER REPORTED DAMAGES TO PG&E.

### WE OPPOSE
3. PG&E REFUSAL TO SETTLE CLAIM IN A TIMELY MANNER THUS LENGTHENED RESPONSE TIME TO RESOLVE ISSUE REGARDING COMPENSATION FOR DAMAGES TO PROPERTY EVEN THOUGH PG&E WAS AWARE OF DAMAGE TO PROPERTY AND CLAIMS WERE PRESENTED ALONG WITH ESTIMATES ON COST TO FIX DAMAGE.

We declare under penalty of law that the knowledge and facts of this case evidence supporting of all events are given to support the response are truthful and to best of our knowledge as being present when they occurred

**Continued Response:**
October 19, 2021 at 10:00 a.m.
via Tele/Video conferencing appearance only

Willie and Ora Green 2845 Magnolia Street Oakland CA 94608
Claim# 19-30088        510 893-4251        orgr53@gmail.com

# Small Residential Income Property Appraisal Report

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

- Property Address: 2845 MAGNOLIA STREET
- City: EMERYVILLE
- State: CA
- Zip Code: 94608-4445
- Borrower: WILLIE GREEN
- Owner of Public Record: GREEN, WILLIE
- County: Alameda
- Legal Description: BK.23 Pg 72
- Assessor's Parcel No.: APN# 005-0458-014-01
- Tax Year: 2013
- R.E. Taxes $: 4,101.46
- Neighborhood Name: Oakland/Emeryville
- Map Reference: 649/F1
- Census Tract: 4015.00
- Occupant: [X] Owner [ ] Tenant [ ] Vacant
- Special Assessments $: None
- [ ] PUD  HOA $: N/A  [ ] per year [ ] per month
- Property Rights Appraised: [X] Fee Simple [ ] Leasehold [ ] Other (describe)
- Assignment Type: [ ] Purchase Transaction [X] Refinance Transaction [ ] Other (describe)
- Lender/Client: First Bank Mortgage
- Address: 1 First Missouri Center St Louis, MO, 63141
- Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No
- Report data source(s) used, offerings price(s), and date(s): EBRDMLS

## CONTRACT

[ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

- Contract Price $: 
- Date of Contract: 
- Is the property seller the owner of public record? [ ] Yes [ ] No  Data Source(s)
- Is there any financial assistance (loan charges, sale concessions, gift or down payment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
- If Yes, report the total dollar amount and describe the items to be paid.

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | 2-4 Unit Housing Trends | 2-4 Unit Housing | Present Land Use % |
|---|---|---|---|
| Location [X] Urban [ ] Suburban [ ] Rural | Property Values [X] Increasing [ ] Stable [ ] Declining | PRICE $(000) / AGE (yrs) | One-Unit 85 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | Demand/Supply [X] Shortage [ ] In Balance [ ] Over Supply | | 2-4 Unit 10 % |
| Growth [X] Rapid [ ] Stable [ ] Slow | Marketing Time [X] Under 3 mths [ ] 3-6 mths [ ] Over 6 mths | 525 Low 32 | Multi-Family 0 % |
| | | 830 High 121 | Commercial 0 % |
| | | 610 Pred. 110 | Other Vacant 5 % |

Neighborhood Boundaries: The subject neighborhood is bounded by Alcatraz Ave. to the North, FRWY 880 to the South, FRWY 880 to the West and FRWY 580 to the East.

Neighborhood Description: This section of Oakland is primarily a residential community from average to good homes. Higher levels of maintenance were noted at the time of inspection. The commercial properties are retail establishments that provide supporting services. Highly regarded for the schools, and major shopping are nearby as are other supporting services. Employment Centers in the are 5 to 10 minutes distant via public transportation, BART local roads, Interstate 580, and 880. Due to lack of rental units in subject market area rent are on the high demand.

Market Conditions (including support for the above conclusions): See Comment Addendum.

## SITE

- Dimensions: 54.5x96.6
- Area: 5,265 SqFt
- Shape: Rectangular
- View: City View
- Specific Zoning Classification: R-30
- Zoning Description: Single Family Residential
- Zoning Compliance: [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)
- Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe.

Utilities Public Other (describe) / Public Other (describe) / Off-site Improvements--Type Public Private
- Electricity [X] / Water [X] / Street Asphalt [X]
- Gas [X] / Sanitary Sewer [X] / Alley None [X]

- FEMA Special Flood Hazard Area [ ] Yes [X] No  FEMA Flood Zone X  FEMA Map # 06001C0058G  FEMA Map Date 08/03/2009
- Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No If No, describe.
- Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe.

No adverse easements or encroachments noted at the time of inspection, Normal utility easements are assumed.

## IMPROVEMENTS

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units [X] Two [ ] Three [ ] Four | [ ] Concrete Slab [X] Crawl Space | Foundation Walls Concrete/Good | Floors Hrdw/Carp/Good |
| [ ] Accessory Unit (describe below) | [ ] Full Basement [ ] Partial Basement | Exterior Walls Wood/Good | Walls Drywall/Average |
| # of Stories 1  # of bldgs. 2 | Basement Area 0 sq. ft. | Roof Surface Comp. Shingle/Average | Trim/Finish Paint/Wood/Avg |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Finish % | Gutters & Downspouts Aluminum/Good | Bath Floor Vinyl/Avg |
| [X] Existing [ ] Proposed [ ] Under Const. | [X] Outside Entry/Exit [ ] Sump Pump | Window Type Dbl-hung/Good | Bath Wainscot Ceramic/Average |
| Design (Style) Bungalow | Evidence of: | Infestation None Noted | Car Storage |
| Year Built 1982 | [ ] Dampness | Storm Sash/Insulated Yes/Avg | |
| Effective Age (Yrs) 10 | [ ] Settlement | Screens Yes/Avg | Car Storage None |
| Attic None | Heating/Cooling | Amenities | [X] Driveway # of Cars 2 |
| [ ] Drop Stair [ ] Stairs | [ ] FWA [X] HWBB [ ] Radiant | Fireplace(s) # None  Woodstove(s) # 0 | Driveway Surface Concrete |
| [ ] Floor [X] Scuttle | [ ] Other  Fuel Gas | Patio/Deck x  [X] Fence Wire | [X] Garage # of Cars 2 |
| [ ] Finished [ ] Heated | Cooling [X] Central Air Conditioning | Pool None  [X] Porch Wood | [ ] Carport # of Cars |
| | [ ] Individual [ ] Other None | Other None | [X] Att. [ ] Det. [ ] Built-in |

# of Appliances: Refrigerator x  Range/Oven x  Dishwasher  Disposal  Microwave  Washer/Dryer x  Other (describe)

| Unit | Rooms | Bedroom(s) | Bath(s) | Square feet of Gross Living Area |
|---|---|---|---|---|
| Unit #1 contains: | 6 Rooms | 3 Bedroom(s) | 2.00 Bath(s) | 1,377 |
| Unit #2 contains: | 5 Rooms | 2 Bedroom(s) | 1.00 Bath(s) | 848 |
| Unit #3 contains: | Rooms | Bedroom(s) | Bath(s) | |
| Unit #4 contains: | Rooms | Bedroom(s) | Bath(s) | |

Additional features (special energy efficient items, etc.) See comment

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). Both of the units were owner occupied at the time of inspection per owner. All unit were recently modernized as needed and all utilities are in good working order at the time of inspection. All utilities were reported to be on and mechanical systems were working properly including safety release latches, electrical, and plumbing at the time of inspection. No observable or otherwise known negative condition exist which would impact the subject.



# Instructions: Responding to a Motion to Dismiss the Complaint

This template was prepared by the Justice & Diversity Center, a nonprofit organization, and is <u>not</u> an official court form. It can be used in certain civil lawsuits in the Northern District Court of California. *Using this template does not guarantee any result in your case.*

  **HOW TO GET LEGAL INFORMATION AND ADVICE**

This packet provides general guidance about opposing a motion to dismiss. *Before filing this document*, make an appointment for free legal information and advice at one of the Legal Help Centers.

 If the case is assigned to a judge in the San Francisco, Oakland, or Eureka federal courthouse, do one of the following:

 Call the appointment scheduling line for the Federal Pro Bono Project: 415-782-8982

 Sign up in the appointment book at either:
   450 Golden Gate Ave., 15th Floor, Room 2796, San Francisco or
   1301 Clay Street, 4th Floor, Room 470S, Oakland

 Email us at federalprobonoproject@sfbar.org
*This email is to schedule appointments only-no legal advice is given over email.*

 If the case is assigned to a judge in the San Jose federal courthouse, do one of the following:

 Call the appointment scheduling line for the Federal Pro Se Program: 408-297-1480

 *Monday to Thursday 9:00 am - 12:00 pm*, drop in at
The Law Foundation of Silicon Valley, 152 North 3rd St., 3rd Floor, San Jose
*Monday to Thursday 1:00 pm - 4:00 pm*, drop in at
280 South 1st Street, 2nd Floor, Room 2070, San Jose

 **WHEN TO RESPOND TO A MOTION**

**You have only 14 days to respond to a motion.** ⚠ The time to respond runs from the date the motion was filed. Check the certificate of service, which should be attached to or included with the Motion papers.

 **DECIDE HOW TO RESPOND TO THE MOTION**

*If you have not already filed an amended complaint*, and you think you can fix the problems the Defendant identified in the Motion to Dismiss, you may be able to file an Amended Complaint instead of an Opposition. Make an appointment at the Legal Help Center (see page 1) for advice. The deadline for filing an Amended Complaint is the same as the deadline for filing an Opposition.



 **HOW TO COMPLETE THIS OPPOSITION TO MOTION TO DISMISS TEMPLATE**

- ☐ **Fill in the case information.** Fill in all blanks on the first page. The date and time for the motion hearing can be found on the Defendant's Motion.

- ☐ **Write in the facts.** Write a short version of the facts you wrote in the Complaint. If there are facts that you did not include in the Complaint, but might make a difference in whether the Court dismisses your Complaint or not, add them here.

- ☐ **Respond to each of the Defendant's arguments.** A defendant usually makes several points in the "Argument" section of its Motion to Dismiss. You should respond to each point. Most Memoranda cannot be longer than 15 pages (excluding title page). If you have questions about the arguments or how to respond to them, or are concerned about going over the page limit, contact the Legal Help Center (see page 1).

- ☐ **Add required pages.** If your Opposition is longer than 10 pages (excluding title page), you must include a table of contents and table of authorities; these should be inserted immediately after the title page. If the judge in your case requires it, you may need to submit a proposed order. Review the judge's Standing Order and Scheduling Orders: http://www.cand.uscourts.gov/judges.

- ☐ **Review, number the pages, and sign.** Read the entire document to make sure it is clear, correct and complete. Fill in the page numbers and the total on each page. Sign and date.

- ☐ **Prepare the Certificate of Service.** Each document that you file must be "served" on each other party, usually by sending it in the mail. Follow the instructions on the Certificate of Service.

- ☐ **Mark your calendar.** Put the hearing date on your calendar, and be sure to show up at Court. *You must follow whatever decision is made at or after the hearing and any instructions from the Court.*

 **FILING AND SERVING YOUR OPPOSITION PAPERS**

1. **Make copies.** Once the documents are complete, make three copies of each. On one copy of the documents, write "Chambers" on the top in pen. If there is more than one plaintiff or defendant, you will also need one copy for each of them.

2. **File the Opposition.** Deliver or mail the *original plus two copies* of the Opposition and the Certificate to the Clerk's Office at the courthouse where the Judge for your case is located. The Clerk will take the original and one copy. The other copy is for you to keep after it is stamped by the Clerk. If you file by mail, include a self-addressed, stamped envelope so that the Clerk can send a copy back to you.

3. **Serve the Opposition.** Be sure the Opposition and Certificate are served on each party.

**TIMELINE: AFTER OPPOSITION PAPERS ARE FILED**

The timeline below lists what generally happens after the Opposition is filed. The Legal Help Centers (see page 1) can provide guidance about these steps, and have many other templates for you to use in your case.





  **STAY UP TO DATE**

1. **Update your contact information.** File a notice with the Clerk right away if your address, email, or phone number changes, or you may miss important deadlines, causing you to lose your case.

2. **Check your mail.** Be sure to check regularly for documents from the Court and opposing side.

3. A list of all of the documents that have been filed, and (usually) the documents themselves can be viewed online. See Chapter 7 of the Handbook for Pro Se Litigants (see below), and contact the Legal Help Center for information about how to access the documents (see page 1).

  **UNDERSTANDING THE LAWS AND RULES**

The Legal Help Centers (see page 1) are the best resource for people without lawyers. There are other resources for understanding the laws and rules of the Court:

1. **Handbook for Pro Se Litigants.** The Handbook is a procedural guide for people who are representing themselves. It was prepared by the Court and is available at the Clerk's Office or on the Court's website at www.cand.uscourts.gov/prosehandbk.

2. **Legal Research Guide for Pro Se Litigants.** The Guide provides information for people who are representing themselves about how to do legal research, like finding statutes and decisions in other cases. It was prepared by the Justice & Diversity Center and is available at the Legal Help Centers and at www.cand.uscourts.gov/Legal-Help-Center-Templates.

3. **Federal Rules of Civil Procedure.** These Rules explain the procedures from filing through trial for all civil cases in the federal courts across the country, and are available at www.uscourts.gov/sites/default/files/rules-of-civil-procedure.pdf.

4. **Local Rules.** The Local Rules follow the same numbering as the Federal Rules of Civil Procedure, but generally provide more detail. They apply in this District only, and are available at www.cand.uscourts.gov/localrules/civil.

| | |
|---|---|
| 1 | Your name: Willie & Ora Green |
| 2 | Address: 2845 Magnolia Street |
| 3 | Oakland CA 94608 |
| 4 | Phone Number: 510 893-4251 |
| 5 | E-mail Address: orgr53@gmail.com |
| 6 | Pro se |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Division *[check one]*: ☑ San Francisco ☐ Oakland ☐ San Jose ☐ Eureka

| | |
|---|---|
| WILLIE & ORA GREEN | Case Number: 19-30088 |
| Creditors | |
| Plaintiff, | **OPPOSITION TO MOTION TO DISMISS** |
| vs. | |
| PG&E CORPORATION | DATE: 10/14/2021 |
| PACIFIC GAS AND ELECTRIC | TIME: 10:00 |
| Debtors | JUDGE: Hon. Dennis Montali |
| Defendant. | |

OPPOSITION TO MOTION TO DISMISS
CASE NO.: 19-30088 ; PAGE 1 OF 4    *[JDC TEMPLATE – rev. 2017]*

Case: 19-30088    Doc# 11429    Filed: 10/14/21    Entered: 10/15/21 10:21:47    Page 6 of 13

# FACTUAL BACKGROUND

*[Write a short version of the facts in the Complaint. After each fact, write in the paragraph number of the Complaint where that information can be found.]*

During the PG&E mandated gas line replacement in Oakland CA in 2016 - 2017 . PG&E started very heavy intense construction in our street. During that construction program PG&E staged daily heavy equiptment in front of the gates of my house causing very heavy intense sound and vibrations. I had to close my gates because they were turning around on my driveway at 2845 Magnolia Street See Exhibit #A shows heavy equiptment and staging in front of house and steam roller using driveway to turnaround and cracks running from the street onto our driveway to go under the garage door cracking the garage floor. PG&E then cut a 3 x 5 hole in my driveway without notification to the owners who were home, the cars were in the driveway at that time. The workers removed the steel rebar and stablizing filling and covered the 3 x5 hole with blacktop. We saw this when we came out of the house later, but we no one spoke to us before or during the work being done. PG&E own notice to home owners state owners are to be notified before this type or alterations are make to property. I called PG&E about the 3 x 5 hole being cut and the cracks in the driveway and the garage floor after I spoke to one of the workers on the site who said call PG&E. I called, did a claim on line and PG&E sent a worker not a investigator to look at the damage. He said they didn't do it and walked out. I didn't hear from PG&E. Exhibit # B PG&E notice to property owners regarding work, notification regarding claim. Later a representive called, questioned and verified with me about what had happened, then she worked on the claim. PG&E never sent a represenrtive to conduct a proper investigation and to actually see what had happened. I proceeded to get quotes and a investigative report from a structural engineer because of the cracks running up to the house in the garage and in the house which was presented to PG&E. Years later PG&E offered $500- $1500 to settle. The estimates are for more. I offered to lower the amount and PG&E refused in written settlement and at a Zoom medation meeting. It was made known PG&E refuses to acknowledge damage to driveway and garage floor or settle for a fair amour Meeting ended in a stalemate.

# ARGUMENT

*[Explain your response to each of Defendant's arguments. Go in the same order as the arguments were made in Defendant's Motion, if possible.]*

Willie and Ora Green are the owners of the property that PG&E workers entered on to preform gas line replacement, alterations to property was done with out knowledge or permission of the property owners, the Greens. We have only been make aware of Ms. Jensen as the investigaton after years of this issue regarding the damage because we were never contacted by anyone from PG&E except for the two gas line workers to look into this situation. PG&E only contacted us regarding possible damage to our sewer lines resulting from the gas line replacement in 11/2021.

#5 Ms Jensen claims that after PG&E workers first came on the property and cut a 3x5 hole in the driveway without notification to the owners with a car in the driveway and children present. The unidentified man was told to leave and get his supervisor, to speak to the property owners about what they were going to do this time to the driveway. As the owner I believe I have the right to know. PG&E never contacted the property owners to address the damage they caused to the driveway or garage floor. Even under Rule 16 PG&E does not have the right to come onto property with out notifying the owners to do work beyond the scope of their routine or emergency duties or to alter or cause damage to property of their customers. Ms Jensen was made aware that driveway was not the original one it had been replaced with one that was thicker, reinforced steelbar and gravel for a up graded protection. And my house was also on the market to sell before the damage to the driveway and garage floor. Ms Jensen reply my house is old and all garage driveways and gargage floors crack hers did, comparing her situation with ours. The only problem is PG&E cracked our driveway causing the cracking of the garage floor. I was also told anyone can get a structural report, but PG&E didn't take the effort at the time the damage occured.

#7 At no time were the owners notified by phone or by mail that ARB was to make repairs. No contacted the home owners period. That included PG&E regarding ARB.

#8 During the Zoom mediation Ms Jensen was not aware of many facts of the case and was not able answer or give a reasons for what had taken place by PG&E and ARB workers.

#8 I presented her and PG&E with several pictures of the front of the house showing the driveway,

OPPOSITION TO MOTION TO DISMISS
CASE NO.: 19-30088    ; PAGE 3 OF 4    *[JDC TEMPLATE – rev. 2017]*

the black top 3x5 patch, the heavy constuction equiptment staging in front of the house, the steam roller backing up into the driveway, as well as structual engineer reports show how structural weight failure causes cracking of concrete because of vibration of heavy equiptment being used on or too close to causing damage.

We had home inspections, which commented on the condition in 2014 and 2015 of our property, none the inspections mentions cracks in the driveway or garage floor at the time with items needing attention or repairs for prepreration for business purposes.

#9 and #10 Ms Jensen presents the pictures of the front of 2845 Magnolia Street, which I sent to her and to PG&E several times, the pictures I sent had cracks from the work caused during the time PG&E gas line program was working on Magnolia Street. Earlier pictures I viewed did not show the cracks.

*[If this document is longer than ten pages, you must include a table of contents and a table of authorities.]*

*[You must sign and date.]*

Date: 10/14/2021    Sign Name: _____

Print Name: Willie and Ora Green

OPPOSITION TO MOTION TO DISMISS
CASE NO.: 19-30088 _____ ; PAGE 4 OF 4  *[JDC TEMPLATE – rev. 2017]*

*Insert this page as needed to continue the facts or argument section, or to write an introduction.*

OPPOSITION TO MOTION TO DISMISS
CASE NO.: 19-30088 ; PAGE 4 OF 4 *[JDC TEMPLATE – rev. 2017]*



**CERTIFICATE OF SERVICE OF DOCUMENT OTHER THAN COMPLAINT**

*\* You must serve each document you file by sending or delivering to the opposing side. Complete this form, and include it with the document that you file and serve.\**

1. **Case Name:** WILLIE & ORA GREEN  v.  PG&E CORPORATION

2. **Case Number:** 19-30088

3. **What documents were served?**

   **Opposition to Motion to Dismiss**

4. **How was the document served?** *[check one]*

   ☐ Placed in U.S. Mail

   ☐ Hand-delivered

   ☐ Sent for delivery (e.g., FedEx, UPS)

   ☑ Sent by fax (if the other party has agreed to accept service by fax)

5. **Who did you send the document to?** *[Write the full name and contact information for each person you sent the document.]*

   US Court

   Prime Clerk

   KELLER BENVENUTTI KIM LLP

6. **When were the documents sent?** 10/14/2021

7. **Who served the documents?** *[Whoever puts it into the mail, faxes, delivers or sends for delivery should sign, and print their name and address. You can do this yourself.]*

   I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

   Signature:

   Name: Willie Green

   Address: 2845 Magnolia Street

   Oakland CA 94608

**CERTIFICATE OF SERVICE** *[JDC TEMPLATE Rev. 05/2017]*



O Green <orgr53@gmail.com>

## driveway replacement/garage floor cracks

**alan.gurd@ergeon.com** <support@ergeon.com>  
Reply-To: support@ergeon.com  
To: Willie and Ora Green <orgr53@gmail.com>

Sat, Aug 14, 2021 at 7:21 AM

Good morning Ora, I hope you and Willie are well.

So, apologies for the amount of time it took me to get to this. It has been a very busy period.

In answer to your points.

1. **Total Driveway replacement** - This, in my opinion is the best solution for a number of reasons. Firstly you will achieve a consistent and uniform appearance if everything is the same color. As no 2 x batches of concrete are the same in color.
2. **Quote for replacing 1 of the 4 sections** - we would not be able to provide a quote for this as it would be below our minimum order value/rate, as a large company, we would likely be uneconomical for you.
3. **Repairing the 3 x 5 section** - again, this is below our project minum, and secondly it would look out of place to have a different color slab put in place, as once it dries it will not have the uniform appearance that is normal for driveways, being somewhat like a patchwork quilt.
4. **Replacing the garage floor** - in our opinion this is the best solution as the cracks seem to be of significant enough size to indicate a possible structural failure beneath. As garages are covered areas, they are subject to humidity levels much more than outdoor areas and as such should be in a higher spec concrete along with a vapor barrier, this protects the integrity of the curing concrete and ensures longevity.
5. **Repairing the cracks** - this is not something we would offer or advise. It is poor way to handle the damage and likely only a temporary fix.

I hope these comments/notes are of some help. If you have any other questions or concerns, please reach out to me.  
kind regards

—  
**Alan Gurd**  
Ergeon Fence and Driveways  
650-300-4854



Ex 1+2
19-30088

### A  Area A                                                                $8,264

Driveway - 594 sq ft                                         Area: 594 sq.ft.
- Demo, Excavation and Haul-Away
- Concrete cutting
- Base Material - 2 Inches of Class II Recycled Base Rock
- Rebar - #3 Rebar 18" OC
- Concrete Installation - 4 Inches of 3500 PSI Concrete
- Broom Finish

### B  Area B                                                                $9,870

Garage - 498 sq ft                                            Area: 498 sq.ft.
- Demo, Excavation and Haul Away
- Base Material - 4 Inches of Class II Recycled Base Rock
- 10 mil Stego Vapor Barrier
- Rebar - #4 Rebar 16" OC
- Concrete Installation - 5 Inches of 3500 PSI Concrete
- Broom Finish

**Total: $18,134***

*\* – An additional 2% fee will be added for credit/debit cards*