PATRICIA A. MCCOLM
P.O. Box 113
Lewiston, CA 96052
(415) 333-8000
Fax by Appointment

Claimant, pro se

FILED
OCT 19 2021
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

# UNITED STATED BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO

| | |
|---|---|
| **In re** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| -and- | (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY** | **RESPONSE / OPPOSITION TO REORGANIZED DEBTORS' ONE HUNDRED SEVENTH OMNIBUS OBJECTION TO CLAIMS (MCCOLM CLAIMS)** |
| Debtors. | |
| | **Response Deadline:** October 20, 2021 |
| Affects both Debtors | **Hearing Date: November 9, 2021** Time: 10:00 a.m. (PT) Via AT&T Teleconference |
| | United States Bankruptcy Court Courtroom 17, 16th Floor San Francisco, CA 94102 |
| _____/ | |

1

Claimant PATRICIA A. MCCOLM (Claimant) submits this Response Opposition to the Reorganized Debtors' One Hundred Seventh Claims Omnibus Objection (MCCOLM CLAIMS) [ECF No. 11217] (the "**Objection**") alleged to be no liability claims [ECF No. 11229] and respectfully represents that the Reorganized Debtors' are liable for the <u>unlawful conduct and resulting damage on the facts set forth in the McColm Claims; in particular, for the unlawful conduct and resulting **damage which falls outside the scope of the disputed easement**</u> alleged in the Judgement pending on appeal, as follows:

1. It appears that the sole reason for the Objection to the McColm Claims is Reorganized Debtors' apparent contention that it can commit *any and all wrongs* set forth in the McColm Claims by reason of a Judgment pending on appeal; even though, identified **wrongs exceed the scope of the appealed Judgement, OCCURRED OUTSIDE the specified real property size limits** of the disputed easement, violated PG&E's own vegetation maintenance policy/procedure and other agreements with PG&E officials and/or were wrongs in violation of law and constitutional real property rights of owners. <u>The Reorganized Debtors do NOT specify a DISPUTE/OBJECTION to any act/fact and resulting damage set forth in the McColm Claims.</u>

2. As one PG&E employee told the tow truck driver in response to inquiry after whether or not he was going to tell the property owner who had caused the hazardous deep ruts in the land by being towed out of the mud during the rainy season: *"We don't have to tell the owner who caused the damage, we can do whatever we want because we have a recorded easement!"* The persistent "**Lie**" to take advantage of PG&E wrongs.

3. PG&E has continued to perpetrate the misrepresentation of having a 100 year old recorded easement to take advantage of its own wrongs on McColm lands; in spite of testimony at trial from its expert/surveyor, that **it knew *prior* to filing suit** against Claimant in 2010 based on that misrepresentation (Knowingly filing a false document in violation P.C. 115), that **PG&E did NOT have a recorded easement on McColm lands!** (See Declaration of PATRICIA A. MCCOLM in support of Response Opposition and Doc.#11300 with trial testimony admission of PG&E witness attached.)

4. PG&E may be found to be a *"legal successor in interest to a grant of a right of way dating from 1916;"* but there is **NO expert determination from a complete history title search or judicial finding that the alleged 1916 or any other easement relied upon by PG&E, DOES NOT FALL OUTSIDE THE MCCOLM LANDS!** Yet, PG&E continues that falsehood before this Court in an effort to take advantage of its continuing actionable misconduct and unethical attempt to get a continuing *"free ride rampant;"* destroying McColm property in violation of law, thumbing its increasingly long nose at Claimant's constitutional property rights.

5. A Maxims of Jurisprudence, California Civil Code section 3517 states: ***"No one can take advantage of his own wrong."*** The Reorganized Debtors' have repeatedly created the *fiction* of having a recorded easement on McColm lands, to mislead and take advantage of its targeted victim, a vulnerable stigmatized 75 year old Claimant with progressive disability on Social Security; in order to effectuate, its "steal" of valuable property interests.

6. In order to protect judicial integrity and promote justice, California law essentially states that anyone who comes into the court with lies to take unethical/unfair advantage of his or her own wrong gives rise to the defense of *"**unclean hands**,"* which **bars relief**. *Aguayo v Amaro* (2013 213 Cal.App.4 1102, 1110. The "Unclean Hands Doctrine" appears appropriate for application in this matter.

7. It appears the Reorganized Debtors have NOT READ the McColm Claims and/or hope the Court has not read the McColm Claims; so indicated, by its false assertion that McColm has not stated: "...specifics on how the Utility's acts were wrongful and specifically how they were in contravention to the Utilities rights under its easement as set forth in the Judgment." The "specifics" are shown in the McColm Claims that describe the harmful acts; in particular, those which fall OUTSIDE the perimeters of the disputed easement/appealed Judgment.

8. Neither the disputed easement as depicted on the map attached to the Objection nor the Judgment on appeal; permit access to the specified Utility easement location, through *any* part of the five acre perimeter of McColm lands.

9. As set forth in the McColm Claims, an agreement was reached with a PG&E official for it to install UNDER its power lines at the **North property line**, a *temporary gate* for its

access to the power lines, pending outcome of the pending appeal of the Judgement. Access was agreed to be <u>limited to the footage designated as easement directly UNDER the power lines at the North property line;</u> in consideration of the promise, that PG&E would NOT act to access from any other gate or any other location along the perimeter of McColm lands, that it would repair the hazardous ruts inflicted into the land from prior unauthorized access and would remove the large offending numbers painted onto numerous trees. The official stated that **<u>his proposed gate installation under the power lines was the usual agreement reached with property owners and that it was possible to be installed in the location on the North property line as agreed.</u>**

10. In contravention of the above agreement for PG&E sole access at temporary gate installation on the North property line within the designated easement footage, the Reorganized Debtors' acted in what appears to be another defiant retaliatory ***"we can do whatever we want"*** demonstration by cutting through a pad-locked, multi-chained gate <u>nearly 350 feet away from the power lines</u> at McColm Drive off Deadwood Road, making unauthorized entry with multiple large heavy machinery destroying the sloping McColm Private Road created by the 2004 Subdivision Map, disrupting the solid surface of the intervening land; creating unsafe crushed/scattered vegetation from cuttings piles, hazardous new ruts and loose dirt, inflicting a muddy mess in the rainy season; destroying the foundation ground, where buildings once stood. The Utility invaders did NOT even try to access from the NORTH property line gate most near to the power lines, it had used by permission upon notice of intended entry previously.

11. The statement of facts set forth in the McColm Claims constitute viable causes of action and good faith damage claims for wrongs committed by Reorganized Debtors; wrongs which are NOT permitted by the Judgement or other legal process; in particular, where in violation of due process and other civil and constitutional rights of real property ownership. Any wrong does not make a right, even if it is PG&E exercising its big business arrogant ***"we can do whatever we want"* modus operandi,** against an elder stigmatized person with diminished capacity from disability and poverty; in what appears to be an effort to devalue and steal land, lie by lie; destroying tree by tree, road by road, fence by fence, gate by gate; inflicting loss of intended real property use as residential farm ownership; forecasting loss of life and/or McColm

4

ownership by placing PG&E lock on a private road gate, locking the helpless property owner out of her own real property! Do the unconscionable Utility wrongs, also forecasting its next wrong: to force Claimant into a personal bankruptcy? Heaven Forbid!

12. As set forth in Claimant's letter OBJECTION for lack of timely service and request for extension of time, Doc. #11330; incorporated herein by reference, Claimant was NOT served with **Doc. #'s 11227, 11228 and 11229 and no certificate of service. The only document untimely received was Exhibit A to Doc. #11229; insufficient notice objected to per Doc. # 11330. Even after notice of non-receipt, Prime Clerk failed to provide Claimant with the missing documents.**

13. Despite specific fact provided in the McColm Claims and providing factual information supporting the McColm Claims to counsel for PG&E in response to request on January 9, 2020; PG&E *never* made an attempt to further dispute specifics of the claims, obtain further information or make any effort to resolve the claims; in spite of Claimant's recent good faith efforts to meet and confer, suggesting a conference to arrive at a solution to avoid on-going wrongs by the disrespectful PG&E invaders violating constitutional ownership rights causing personal harm and property damage. Claimant was told: "*Not at this time.*"

14. It appears that the Reorganized Debtors intend to continue the painful harm and destruction re mutilation and loss of trees without cause; in particular, "off easement;" the hazardous ruts being driven into the land without repair, cutting of locks and chains on gates and even LOCKING THIS CLAIMANT WITH DISABILITY OUT OF HER OWN PROPERTY BY PLACEMENT OF A PG&E LOCK ON CLAIMANT'S PRIVATE ROAD GATE! (See Declaration of Patricia A. McColm with photos in Support of Response Opposition.)

15. Based on the supporting factual background and legal authorities below, Claimant respectfully requests that the Court overrule the Objection. In the alternative, Claimant respectfully requests that the Court proceed with the hearing on the Response Opposition as a status conference and allow sufficient time after the initial status conference hearing for Claimant to conduct focused discovery for additional evidentiary support the Court may deem appropriate; and allow sufficient time to accommodate limitations of disability and to provide for obtaining

assistance of counsel.

## BACKGROUND

16. Claimant PATRICIA A. MCCOLM is the owner in fee simple of the McColm lands in Lewiston, California (the "**Lands**"); upon and about which, the MCCOLM CLAIMS arise against the Reorganized Debtors.

17. Clamant received the Lands in Lewiston by Deed from her father, predecessor owner, George L. McColm (GLM) prior to his death in 2007.

18. GLM was a bonafide purchaser for value of the Lands in 1973 by deed being free from any encumbrances by recorded instrument or other notice of any kind. In fact, predecessor owners had quieted title negating any unknown claim of any kind upon the Lands.

19. GLM, who was a war related attendee at Princeton Law School, protected his land rights by complete surround fencing and by immediate posting of signs in accordance with California Civil Code section 1008; thereby, preventing any claim of easement by entry thereto.

20. The Lands had a chain/padlocked gate on the **North** property line and two such gates on the **South** property lines; which GLM used for access to his residential farm property.

21. NO GATE EXISTED ON THE FENCED **EAST** PROPERTY LINE AT DEADWOOD ROAD until installed attendant to a new graded apron entry required for a Subdivision Map for George L. McColm in 2004 with its **NEW PRIVATE ROAD** INSTALLATION called "**McColm Drive.**" GLM provided Claimant with a Durable Power of Attorney in 2003 and in concert they acted to establish said mini-subdivision of the McColm lands into five lots in 2004.

22. Upon purchase by GLM, his original cabin residence was served by electricity from a pole line along Deadwood road, with the PG&E Distribution power line crossing from Deadwood Road to the cabin residence through and attached to a large tree between the cabin and Deadwood Road and NOT by any other alleged power pole(s).

23. GLM established "LEWISTON NURSERY" for the residential/commercial land use

6

and needed electricity in the garden to run irrigation pumps. Thus, he gave permission and paid PG&E for installation of electricity to the interior of the garden land; upon which, the disputed power lines are located.

24. During the late 1990's, without the required notice to and approval of GLM, PG&E entered into a joint pole agreement with the Trinity Public Utility District (PUD) and sold its distribution line easements to same. GLM was NOT noticed in the transaction process; apparently, because PG&E knew it did NOT have an interest in McColm lands it could sell to the purchasing Utility.

25. Without complying with mandatory notice requirements or pre-installation processes with the Public Utilities Commission or other entity or permit requirements, PG&E installed more poles for use by both PG&E and PUD on McColm lands; which has become the hazardous TRANSMISSION LINE "eyesore" no one wants to live near; which is the subject matter of the litigation in which the PG&E EASEMENT LIE was perpetrated and continues to be perpetrated before this Court.

26. The McColm lands were overburdened, causing such obvious abuse of the prior permission, that in exercise of GLM property rights, PG&E was sent a letter to cease and desist the destructive misconduct and to vacate the lands.

27. At all subsequent times, good faith efforts continued to obtain the voluntary removal of PG&E and PUD from McColm lands. PG&E refused, making the FALSE REPRESENTATION, that it had an easement pursuant to a 1916 recorded right of way on McColm lands; a contention at all relevant times it knew and/or should have known was FALSE! The 1916 document is OUTSIDE MCCOLM LANDS!

28. In disregard of the McColm request to vacate permanently, PG&E used a questionable contention that it had to REPLACE an alleged "rotting" pole; producing the bogus alleged recorded easement, which was fraudulently used to delay/subvert the vacate request under threat that if the McColms would not acknowledge the bogus document as PG&E's recorded easement; it would just sue and *"get one for free."* PUD said it would leave when PG&E left.

29. McColm experts proved that PG&E did NOT have a recorded easement on McColm lands. Without regard to McColm expert reports that PG&E did NOT have an easement, PG&E acted on its threat, filing a frivolous suit for injunctive relief based on said bogus document and alleged need to replace a "rotting" pole rather than just remove it permanently along with the other two poles that created a wider snarling mess of wires (transmission and distribution) across two building sites; under which, no one wants to live with such disturbing view and cancer dangers.

30. When the original complaint for injunction judge said PG&E would likely not prevail on the recorded easement issue, PG&E filed an amended complaint asking for a prescriptive easement; AGAIN, KNOWINGLY BASING ITS COMPLAINT ON THE BOGUS RECORDED DOCUMENT AS A 100 YEAR OLD RECORDED RIGHT TO REMAIN ON MCCOLM LANDS. McColm filed a cross-complaint with jury demand. A jury trial was subverted by an unknown "mystery" judge that was not the trial judge assigned, who without any prior process, unlawfully issued an order which imposed a court trial date at a time when McColm was not available and which also precipitated a denial of discovery on her cross-complaint.

31. At trial, McColm was unlawfully: denied her renewed request for a jury trial, denied reasonable continuance for medical necessity, denied reasonable and appropriate accommodations of disability, denied enforcement of subpoenas, denied her valuation experts' testimony on cross-complaint and damages, even though he was present in court; among many other denials that appear to be reversible error. Post trial, McColm was unlawfully: denied a timely request for a statement of decision, denied timely requests for a court reporter, denied a new trial, denied hearing on timely objections to proposed judgment written by the PG&E attorney; among many other due process violations that call for reversal.

32. In spite of admission at trial that PG&E did NOT have a recorded easement on McColm lands and it having dismissed a cause of action asserting same for relief, the PG&E attorney drafted a Judgement that repeated the misleading contention of being a successor in interest to a grant of right of way dating from 1916, WITHOUT STATING THAT SAID RIGHT OF WAY WAS OUTSIDE OF MCCOLM LANDS!

8

33. The Judgement is further misleading and in substantial error on a number of other cumulative grounds; which make it likely to be reversed on appeal. A major misleading fault is the PG&E attorney having drafted the Judgement to be issued Nunc pro Tunc, which Judicial Notice clearly shows, there were no prior proceedings pertaining to the McColm lands which would form the basis for a retroactive judgement to the 1950s. The Judgement also falsely alleged a default judgment by a Doe defendant mortgage holder; which is another lie; as no judgment issued. The only purpose of such unconscionable lies, is to defeat a mortgage claim, in the event of an attempted foreclosure on a judgment lien. The attempt to subvert the mortgage holder demonstrates the wrongs the Utility will "get up to" to take advantage of its wrongs. It must be stopped!

34. Liability is warranted for the unconscionable wrongs and unethical tactics used in an attempt to take advantage of its bad-faith conduct.

### PG&E HAS SIGNIFICANT LIABILITY UNDER THE MCCOLM CLAIMS.

35. Section 2106 of the Public Utilities Code states in relevant part:

Any public utility which does, causes to be done, or permits any act, matter or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, <u>shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom.</u> If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award <u>exemplary damages</u>. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person.

Accordingly, PG&E has significant liability for the unlawful acts and omissions committed under its direction and/or permitted to be done, that constitute the wrongs inflicting the harm set forth in the McColm Claims, which are not permitted by law, order or decision. PG&E employed and/or hired as its agents, the bad actors stated in the claims, directed/permitted and/or omitted to restrain the specific conduct that produced the facts/harm upon which the McColm claims are based; including but not limited to violations re CPU Commission, other regulatory processes and causes of action under California law; e.g. trespass, property

9

destruction/theft, breach of contract, fraud, intentional/negligent infliction of emotional distress, interference with exercise of civil rights, interference with prospective advantage, conspiracy to commit the wrongs alleged in the McColm Claims, violations of Claimant's rights as a person with disability and other violations under U.S. and California Constitutional; including violations of due process and real property ownership rights. Further, the conduct re misrepresentations; including assertion of a non-existent easement on McColm lands, used to obtain an unfair advantage by perpetration of its own wrong before California Courts and before the Bankruptcy Court; appears to be in violation of the California Penal Code section 115 for it having knowingly filed a false document, which impinges the integrity of the Court. Thus, the Declaration of Cesar V. Alegria Jr. filed in support of the Objection is not credible. As corporate counsel for land matters, he knew and/or should have known that <u>PG&E did NOT have a recorded easement from 1916 that included McColm lands</u> and that he certainly knew prior to filing suit against McColm and prior to filing his Declaration in Support of the Objection that the implication from the representation before the courts was false and misleading. <u>The failure to disclose that the 1916 easement did NOT include McColm lands is a wilful wrong to mislead the courts</u> and after its own expert's testimony admitting it had no easement on McColm lands, the misleading representation before this court is grossly unethical, which appears to be <u>sufficient to bar relief under the "unclean hands doctrine."</u> The wrongful PG&E *"we can do whatever we want, we have an easement"* modus operandi, even encouraged its employee to call a Sheriff Deputy *individually*, without going through Trinity County Sheriff Office dispatch, to appear on McColm lands to enable its intended unlawful entry and harm by misuse of police power to inflict under threat, an unauthorized unconstitutional restricting of Claimant's rightful movement and communications upon her own lands.

36. PG&E's only known contention is that it is shielded from all liability under a Judgement on appeal and that said Judgement is not stayed on appeal. The Utility is wrong. The Judgement on appeal, does *not* shield it from liability under undisputed facts in the McColm Claims; facts describing unlawful wrongs which are *not* permitted under the Judgement on appeal, facts which constitute multiple causes of action which fall outside the scope of said

10

Judgment and/or fall <u>outside location perimeters of the disputed easement</u>; and because, the automatic stay is in effect; irrespective of any allegation that a specific action apart from the Judgement, threatened by PG&E, was not stayed. The law appears to recognizes that where a statutory automatic stay is in effect, it is futile for a second order to issue.

37. The Judgment on appeal, relied upon by PG&E, changes the status quo being mandatory in nature. Thus, it is stayed under California Code of Civil Procedure section 916 wherein is stated: *"...the perfected appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matter embraced therein or affected thereby, including enforcement of the judgment or order."* A recent California Supreme Court case confirmed in *Daly v San Bernadino County Board of Supervisors,* that the automatic stay pending appeal applies to a superior court judgment that orders mandatory injunctive relief.

38. Here, the Claimant has established facts for timely claims arising from repeated incidents of property damage re destruction/mutilation/defacing of trees, theft of wood, damage to roads, land, gates, fences, destruction of locks/chains and loss of use from creation of hazardous conditions of the property; both within and outside the designated location of the disputed easement. The private road "McColm Drive" gate at Deadwood Road is now unuseable by reason of the unsafe condition of the entry road and has perforce been reverted to fencing to prevent risk of injury with potential for owner liability.

39. Further, the unauthorized line of travel by PG&E from its break-in at "Private Road McColm Drive;" traversing *"willy-nilly"* across mini sub-division building/garden sites, destroying the land, makes the intended purpose of residential farm use, an impossibility - inflicting substantial devaluation of the mini sub-division lots as a whole.

40. Claimant has established facts for negligence in violation of its duty to exercise reasonable diligence, care and compliance with statutory mandate for a Utility, breach of contract and multiple instances of conspiratorial tortuous conduct; including but not limited to, trespass, personal injury, interference with exercise of civil rights, harassment, negligent/intentional infliction of emotional distress, loss of prospective advantage and loss of enjoyment of life among other causes including but not limited to "conspiracy" and damages the facts support;

11

which are all causes, that are NOT EXCUSED either directly and/or by implication from the Judgment on appeal.

41. A claim of easement does not give the holder a license to commit any wrong against the owner and his/her property, as occurred in this matter; through its wanton arrogant modus operandi: "***We can do whatever we want, we have an easement.***" It is urged that this Court tell the Reorganized Debtors: "*No, you cannot*!"

42. The losses set forth in the McColm Claims, caused by PG&E's from its specified wrongs inflicting considerable harm are estimated to be $175,000 re Claim No. 7659 and $175,000 for Claim No. 104538; initially calculated by consideration of repair/replacement costs where possible, value of property theft, loss of use and diminution in value of the properties among other considerations re personal injury and potential for exemplary damages. One real estate agent stated that it is unlikely that the lot with the many ugly power poles having a wide snarly range of guy wires and numerous overhead lines, will be able to be sold; because no one wants to live under transmission lines, where the forest beauty/ambiance has been mutilated and because with unrestrained heavy equipment traversing the building and garden site, it would *not* appear to be possible to build the anticipated garage and establish a garden East of the power lines; thus, denying a new owner, a lot for use as a residential farm property as purposed by the creation of the mini-subdivision.

43. Counsel for Reorganized Debtors has been requested to correct the apparent Prime Clerk filing date errors re McColm Claims and also to correct its failure to include a supplemental fact letter as part of Claimant's Claim number 7659 (See Declaration of Patricia A. McColm for a copy of the correction request and fact letter.); a letter, which included damages attendant to the unlawful PG&E break-in trespass through the "McColm Drive" gate at Deadwood Road, destroying the locks and chains securing the gate and upon leaving through the hazardous unrepaired gate location, <u>PG&E unlawfully placed a PG&E lock on the gate</u>, refusing to either remove the lock or give Claimant a key; thus, unlawfully **LOCKING CLAIMANT OUT OF HER OWN PROPERTY!**

## REQUEST FOR RELIEF

43. Based on the Response Opposition and supporting declaration and exhibits, Claimant respectfully submits that there are ample grounds to overrule PG&E's Objection. In the alternative, to proceed with the hearing on the Response and Objection as a status conference, allow sufficient time after the status conference hearing for Claimant to conduct appropriate discovery and for such other and further relief as the Court deems appropriate and just, to accommodate Claimants limitations of disability and to seek the assistance of counsel.

44. Claimant respectfully reserves the right to amend and/or supplement this Response Opposition.

Dated: October 18, 2021

Respectfully submitted,

/s/ Patricia A. McColm
Patricia A. McColm
Claimant

