PATRICIA A. MCCOLM
P.O. Box 113
Lewiston, CA 96052
(415) 333-8000
Fax by Appointment

Claimant, pro se

**FILED**

OCT 19 2021

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

# UNITED STATED BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| **In re** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| **-and-** | (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY** | **DECLARATION OF CLAIMANT PATRICIA A. MCCOLM IN SUPPORT OF RESPONSE / OPPOSITION TO REORGANIZED DEBTORS' ONE HUNDRED SEVENTH OMNIBUS OBJECTION TO CLAIMS (MCCOLM CLAIMS)** |
| **Debtors.** | |
| | **Response Deadline: October 20, 2021** |
| Affects both Debtors | **Hearing Date: November 9, 2021** Time: 10:00 a.m. (PT) Via AT&T Teleconference |
| | United States Bankruptcy Court Courtroom 17, 16th Floor San Francisco, CA 94102 |
| _____/ | |

1

1   PATRICIA A. MCCOLM, declares:

2       1. I am the Claimant in this proceeding submitting the McColm Claims.

3       2. The statements herein are my personal knowledge, information and belief and if called

4   to testify could and would testify competently thereto.

5       3. This declaration is in support of this Claimant's Response Opposition to the

6   Reorganized Debtors' One Hundred Seventh Omnibus Objection to Claims (McColm Claims.)

7       4. On September 24, 2021, Claimant filed an Objection with this Court advising lack of

8   service by Prime Clerk of the essential documents upon which a Response/Opposition was

9   required [Doc# 11330] which is incorporated herein by reference and made a part hereof. Even

10   after notice of non-receipt, Prime Clerk failed to provide this Claimant with the missing

11   document. A copy of her filed endorsed claims was also not received. Claimant appreciates the

12   Courts kind grant of additional time to respond.

13       5. After request directly to counsel for the Reorganized Debtors, a copy of the filed

14   claims was recently received, which revealed error and omission by Prime Clerk. On October

15   15, 2021, Claimant requested that the errors and omissions be corrected, a true and correct copy

16   of which is attached hereto as **EXHIBIT A** and made a part hereof.

17       6. The supplemental claim letter includes additional facts re damages sought in Claim

18   No. 5695; a letter, includes true and correct report of damages attendant to the unlawful PG&E

19   break-in trespass through the "McColm Drive" gate at Deadwood Road, destroying the locks and

20   chains securing the gate positioning and upon leaving through the hazardous unrepaired gate

21   location, <u>PG&E unlawfully placed a PG&E lock on the gate</u>, refusing to either remove the lock

22   or give Claimant a key; thus, unlawfully **LOCKING CLAIMANT OUT OF HER OWN**

23   **PROPERTY!** Replacement materials and labor expenses re gate security are approximately

24   $125 (which does not include costs for repair of the hazardous road addressed below).

25       7. If for any reason, the request to counsel for clerical correction of the McColm Claims

26   is not forthcoming, it is hereby respectfully requested that the Court correct same sua sponte as

27

28                        2

1 | set forth in the October 15, 2021 letter to counsel for Reorganized Debtors, Attorney Thomas B.
2 | Rupp.

3 | 8. The facts stated in the McColm Claims and letter of January 18, 2019 attached to the
4 | timely Claim No. 7659 in this Court; are true and correct and are incorporated herein by
5 | reference and made a part hereof in support of Claimant's Response Opposition to Reorganized
6 | Debtors Objection.

7 | 9. The Objection does not appear to deny the facts or dispute the allegations set forth in
8 | the McColm Claims for any reason that would negate liability.

9 | 10. Claimant incorporates herein by reference the facts set forth in the Response
10 | Opposition to the Reorganized Debtors Objection; where on personal knowledge and belief are
11 | true and correct.

12 | 11. As set forth in the Response Opposition, the alleged grounds for the Objection and
13 | Declaration of Cesar V. Alegria, Jr.; in particular, the misleading allegation re "successor in
14 | interest" implication re 1916 recorded right of way; hereinafter, the PG&E "big lie" and the
15 | allegation that a Judgment on appeal is permissive of the facts constituting the wrongs set forth in
16 | the McColm Claims are not credible, are disputed as clearly wrong and are unethical contentions
17 | to take unfair advantage of this stigmatized vulnerable 75 year old woman with limited medical
18 | capacity to defend against the uncaring self-serving big business modus operandi re *We can do*
19 | *whatever we want, we have an easement."*

20 | 12. At no time in the history of title, was McColm land burdened by a PG&E recorded
21 | easement/right of way. On the contrary, it was at all times subject to predecessor owner quiet
22 | title actions and purchased for value by George L. McColm on or about 1973 sans notice per
23 | deed or otherwise of any claim on the purchased lands (McColm lands). He timely and
24 | consistently perfected statutory process (CC 1008) that negated any claim of easement/right of
25 | way. At trial, former Recorder and CEO of Trinity County, Dero Forslund, and title expert
26 | determined by complete history title search that PG&E had NO RECORDED

27 |
28 | 3

EASEMENT/RIGHT OF WAY ON MCCOLM LANDS and Claimant's expert surveyor engineer, testified that the 1916 deed did NOT tough McColm lands.

13. The representation of counsel for PG&E that it is a "successor in interest" of the 1916 deed, was disproved at trial, when its many years employed PG&E principle land surveyor Scott Wilson, testified as an expert stating in response to inquiry about whether the 1916 deed applied to McColm lands: ***"That the lands description for that document was outside the McColm property."*** At true and correct copy of the trial transcript testimony of Scott Wilson at page 385 lines 2021 confirming the "big lie" admission by PG&E, is attached hereto as **EXHIBIT B** and made a part hereof.

14. Accordingly, all references to "successor in interest" to the 1916 deed is NOT RELEVANT to McColm lands and gives the appearance of intent to deceive to obtain an unfair result based on the misleading "big lie." The PG&E "big lie" should bear no fruit.

15. Accordingly, repeat of "successor in interest" to 1916 deed in Declaration of Cesar V. Alegria Jr. under penalty of perjury, is wrong; as it was clearly within his personal knowledge that the statement was by fact and implication entirely FALSE!

16. The declaration of Attorney Alegria is also misleading in reference to an alleged prescriptive easement "across the lands described in Exhibit 1 to the Judgement." Although the description in Exhibit "C" of declarant's Exhibit 1, is limited to the narrow path of the electric lines across parcels APN 025-410-33 and 34; it does NOT run "across the lands" depicted in the map showing all the parcels included in the entire five acres of McColm lands. NO LANDS OUTSIDE THE NARROW PATH OF THE ACTUAL DESCRIPTION ARE INCLUDED IN EITHER THE PURPORTED EASEMENT OR JUDGEMENT ON APPEAL FOR ACTIVITY BY PG&E. Accordingly, the implication that it can do as it pleases on the remainder parcels is WRONG. Thus, the basis for the McColm Claims are well founded; in particular, as to harm committed on lands outside the narrow scope of the disputed easement.

17. The declaration of Attorney Alegria actually supports the McColm Claims re

4

1  contentions of right to damages inflicted from wrongdoing <u>outside the perimeter</u> of the depicted

2  easement.  He contends a right to "<u>access</u> its easement to maintain its equipment and manage

3  vegetation <u>within</u> the easement (emphasis added)."  But that is NOT what PG&E employees did!

4  They accessed McColm lands OUTSIDE the purported easement and did NOT limit its

5  maintenance activity to WITHIN the purported easement.  The McColm Claims, in substantial

6  part, describe harm which occurred OUTSIDE the perimeter limits of the depicted easement; and

7  thus, he is wrong to say PG&E "continues to exercise its rights in accordance with the

8  Judgment."  THE JUDGMENT DOES NOT ALLOW ANY ACTIVITY ON LANDS OUTSIDE

9  THE LIMITS DEPICTED for the easement on appeal.

10         18.  The Alegria declaration is objected to as generally exaggerated and misleading; as

11  well as, irrelevant to the substance of the claims; e.g. extensions of time, most of which received

12  NO OBJECTIONS from PG&E.  The Court of Appeals granted the most recent extension to

13  accommodate medical necessity.

14         19.  The McColm Claims are NOT DISPUTED either in the Alegria declaration or

15  otherwise on fact or authority pertaining thereto.  Claimant sets forth in the Response Opposition

16  the points; incorporated herein by reference, that it appears that the Judgment on appeal, is in fact

17  subject to the automatic stay and does not need a separate order to effectuate the stay.  The stay

18  request referenced was limited to a specific UNKNOWN behavior anticipated by PG&E, which

19  was uncertain in its scope where avoidance of further harm was the concern.

20         20.  Having "opened the door" by including the September 30, 2019 McColm letter to the

21  Court of Appeal and the McColm letter of September 27, 2019 to PG&E's Mark Habib as part of

22  the Declaration of Cesar V. Alegria, Jr.; Claimant hereby includes by reference said documents,

23  the facts as true and correct therein and argument set forth therein as though fully set forth in

24  Claimant's Response Opposition  in support of the McColm Claims and the estimation of

25  damages identified therein.

26         21. Each of the causes of action identified in the Response Opposition are supported by

27

28                                                    5

1   the facts set forth in the McColm Claims as verified herein which meet the elements for each

2   thereof.

3      22. A true and correct copy of photographs taken by this Claimant during the unlawful

4   invasion of November 5, 2019 are attached and made a part hereof as follows:

5      **EXHIBIT C:** "Private Road McColm Drive" gate showing PG&E personnel far

6   in the some 350 foot distance with Sheriff personnel trespassing on McColm lands OUTSIDE the

7   perimeter of the alleged easement. The beautiful mature tree in the area outside of the perimeter

8   near the officers is beautiful "no more" and dying from the mutilating scalping unlawfully

9   performed by PG&E agents.

10      **EXHIBIT D: "Private Road MCCOLM DRIVE"** sign at Deadwood Road gate

11   showing PG&E employee thereunder.

12      **EXHIBIT E:** *Top Photo*: Showing asthma producing hay used in futile effort to

13   hide ruts and loose dirt created by the heavy machinery, OUTSIDE perimeters of disputed

14   easement! *Middle Photo:* Showing collapse of entry road and ruts caused by PG&E heavy

15   machinery, some 325 feet outside perimeters of disputed easement. *Bottom Photo:* showing ruts

16   to poles outside perimeter and beautiful mature tree outside perimeter that is "no more" by

17   PG&E acts in excess of disputed easement which had posed no danger to the lines as determined

18   by the CalFire Chief not long before.

19      **EXHIBIT F:** *Top Photo*: Showing lopsided gate out of center with PG&E lock.

20   *Middle Photo:* showing cut too short with chain/lock breakage bound by PG&E lock. *Bottom*

21   *Photo:* No Question, a PG&E lock! Purposefully locking this owner out of her own property!

22   PG&E employees refused to remove the lock or give this owner a key to her own gate. The area

23   damage is so hazardous and unsafe, that fencing had to be reinstalled.

24      23. The abuses inflicted by PG&E on November 5, 2019 caused this Claimant to be

25   admitted to the emergency room with extremely high blood pressure and risk of stroke/heart

26   attack. A true and correct copy of the Emergency Room admission and evidence of high blood

27

28                         6

pressure is attached as **EXHIBIT G.** Per diagnosis of "Afib," the unconscionable PG&E misconduct and the inflicted distress therefrom, not only caused being faint and severe headache; but posed a serious risk of heart attack or stroke. **PG&E must be stopped from repeating its misconduct!**

24. Each of the causes of action supported by the McColm Claims have some similar and others different means for determining specified damages which constitute the claim amounts; whether by real property damage repair/replacement, loss of use, loss of property value, or exemplary damages allowable under the facts and law in this case, the claim amounts are well justified and will be further supported by supplemental submissions and/or with leave, presented at hearing. Primarily due to aggravated of M.S. from effects of recent surgery, flu and Covid booster, Claimant has been unable to either locate prior reports estimating damages or had the time to update the research and obtain alternative expert appraisals/valuations. Limited finances and unavailability of experts from conflict of interest re having been employed by PG&E have added to the need for additional time and discovery.

25. On information and belief and appraisal guidelines on the internet, the value of mature trees is between $1,000 and $10,000 per tree per document from the internet attached as **EXHIBIT H.** If very large and well placed, a mature tree can double in value. A replacement would likely be even more, if one could be found. A well placed tree can increase property value between 10-20%. Where we are talking about an entire forest of at lease 17 mature trees and more being destroyed in a community where it is the forest that attracts potential buyers want to have cabin garden retreats, to be missing the forest; in particular, to block the negative view will reduce the value from 10-20% or more. When the entire area that is obstructed by a multiple power pole eyesore, the entire area is diminished in value. Prior to the PG&E, the overburdened scalped lot was appraised at about $200,000. The last real estate agent proposed offer was a mere $50,000 and that was BEFORE the loss of the forest. The losses are clearly within the amounts for which the claims are estimated. Adding the property repair needs, personal injury

7

1 and other damages, the claim amounts are well justified.

2      26. Importantly, Claimant can no longer use the "caddywampus" unsafe road entry at the

3 McColm Drive gate which also impacts the value of the property as it is not safe for anyone to

4 use. Best recollection of the 2004 cost of building the gate road was about $20,000. Today, that

5 cost would appear to be doubled and if a culvert has collapsed as is likely the case from the far

6 less than flat road that was built, the heavy machinery having caused the road to collapse to the

7 side into a slant (See photos), the cost to excavate and replace could be triple said amount if not

8 more.

9      27. As Claimant has run out of time to continue this analysis, where mail must go out

10 only once a day and even priority express takes 2-3 days, it is now necessary to close for mailing

11 and hope that time will be allowed for further presentation of damages.

12      28. The Reorganized Debtors' Objection is without merit on the grounds stated and does

13 not dispute the facts giving rise to the McColm Claims.

14      29. It is respectfully requested that the Reorganized Debtors' Objection be overruled or

15 that the hearing be a status conference with time allowed for discovery, accommodation of

16 disability, seeking assistance of counsel and for such other and further relief the Court deems

17 appropriate and just.

18      30. Your kind consideration is appreciated.

19      I declare under penalty of perjury under the laws of the State of California that the

20 foregoing is true and correct.

21 Dated: October 18, 2021

22

23                                              Patricia A. McColm
                                              Claimant
24

25

26

27

28                                    8

PATRICIA A. MCCOLM
P.O. Box 113
Lewiston, CA 96052
Phone/Fax: (415) 333-8000


**OCTOBER 15, 2021**          **ATTENTION RE ERRATA**


Thomas B. Rupp
KELLER, BENVENUTTI, KIM
650 California Street #1900
San Francisco, Ca 94108
Fax to: (650) 636-9251

Re: BCN 19-30088; **APPRECIATION FOR FAX RECEIPT OF CLAIMS;
AMENDED REQUEST FOR CORRECTIONS.**

Dear Attorney Rupp:

Thank you for receipt of the fax copies of the filed McColm Claims, not heretofore received. There appear to be some filing date errors and omission of supplemental facts provided.

Mail times are horrible; but perhaps you will agree that the actual date of receipt should be reflected as the filing date for the McColm Claims:

**Claim No. 7659:** 1) By letter included with primary mailing on May 5, 20(19)/**(20)**, "SUPPLEMENTAL FACTS FOR INCLUSION IN **CLAIM RE 11/5/19"** were provided. This document does not appear with copy of claim you provided, even though it was mailed in the same envelope and was received by PRIME CLERK on May 12, 2020, intended to be part of the Claim. A true and correct copy of the letter for inclusion in Claim is attached as **EXHIBIT A.** Please be so kind as to ensure that this supplemental fact document is added to the Claim. 2) Further, the filing date of May 13, 2020 is in error. Accordingly, please correct the filing date of the Claim to **MAY 12, 2020,** as verified by **EXHIBIT B,** USPS TRACKING verification attached.

**Claim No. 104538:** The Priority Mail receipt attached to the Claim, shows that the actual receipt date of the document was **JULY 22, 2019,** attached hereto as **EXHIBIT C.** Thus, the alleged **August 20, 2019** filing date is in error. Correction is requested.

Your early attention to the requests herein with confirmation copy of the corrections to the above by fax is appreciated.

1

Sincerely,

Patricia A. McColm

enc.  EXHIBIT A:  May 5, 2019 Letter McColm to PGE
      EXHIBIT B:  USPS Delivery Confirmation, May 12, 2020
      EXHIBIT C:  Priority Mail Received July 22, 2020

2

PATRICIA A. MCCOLM, J.D.
P.O. Box 113
Lewiston, CA 96052
(415) 333-8000
Fax by Appointment

May 5, 2019

TRINITY COUNTY BOARD OF SUPERVISORS et al.
PO BOX 1316/1317
11 Court Street
Weaverville, CA 96093; and,

PACIFIC GAS AND ELECTRIC et al
PO BOX 4850
New York, NY 10163-4850
PRIORITY MAIL #: 9114 9023 0722 4336 2516 28

Re: SUPPLEMENT FACTS FOR INCLUSION IN **CLAIM RE 11/5/19**

Dear Board and PG&E et al:

Please addition facts to the claim for damages pursuant to Gov. C section 910 as follows:

The unlawful entry caused damage by breakage to the lock/chain/positioning securing the gate at McColm Drive at Deadwood Road; and upon trespassers leaving, claimant was "locked out" by imposition of a PG&E lock at said gate. Claimant asked that it be removed or key thereto given and was refused.

Sincerely,

Patricia A McColm

# USPS Tracking®

FAQs >

**Track Another Package +**

**Tracking Number:** 9114902307224336251628

Remove ✕

Your item has been delivered and is available at a PO Box at 12:52 pm on May 12, 2020 in NEW YORK, NY 10163.

## ⊘ Delivered

May 12, 2020 at 12:52 pm
Delivered, PO Box
NEW YORK, NY 10163

Get Updates ∨

| | |
|---|---|
| Text & Email Updates | ∨ |
| Tracking History | ∨ |
| Product Information | ∨ |

See Less ∧

Feedback

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

FAQs

PRESS FIRMLY TO SEAL            PRESS FIRMLY TO SEAL

# PRIORITY
## ★ MAIL ★

- 📅 DATE OF DELIVERY SPECIFIED*
- 📶 USPS TRACKING™ INCLUDED *
- 💲 INSURANCE INCLUDED *
- 🚚 PICKUP AVAILABLE

    * Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

**UNITED STATES POSTAL SERVICE**

**USPS TRACKING #**

9114 9023 0722 4336 2370 73

F July 2013
12.5 x 9.5

# PRIORITY
## ★ MAIL ★

**UNITED STATES POSTAL SERVICE**

FROM:

Patricia A. McColm
P.O. Box 113
Lewiston, CA 96052

RECEIVED
AUG 2 0 2019
Prime Clerk LLC

TO:

Label 228, March 2016      FOR DOMESTIC AND INTERNATIONAL USE

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

**UNITED STATES POSTAL SERVICE**

Re: BCN 19-30088; **APPRECIATION FOR FAX RECEIPT OF CLAIMS;
REQUEST FOR CORRECTIONS.**

Dear Attorney Rupp:

      Thank you for receipt of the fax copies of the filed McColm Claims, not heretofore received. There appear to be some filing date errors and omission of supplemental facts provided.

      Mail times are horrible; but perhaps you will agree that the actual date of receipt should be reflected as the filing date for the McColm Claims:

      **Claim No. 7659:**   1) By letter included with primary mailing on May 5, 2020, "SUPPLEMENTAL FACTS FOR INCLUSION IN **CLAIM RE 11/5/19**" were provided. This document does not appear with copy of claim you provided, even though it was mailed in the same envelope and was received by PRIME CLERK on May 12, 2020, intended to be part of the Claim. A true and correct copy of the letter for inclusion in Claim is attached as **EXHIBIT A.** Please be so kind as to ensure that this supplemental fact document is added to the Claim. 2) Further, the filing date of May 13, 2020 is in error. Accordingly, please correct the filing date of the Claim to **MAY 12, 2020,** as verified by **EXHIBIT B,** USPS TRACKING verification attached.

      **Claim No. 104538:**  The Priority Mail receipt attached to the Claim, shows that the actual receipt date of the document was **JULY 22, 2020,** attached hereto as **EXHIBIT C.** Thus, the alleged August 20, 2020 filing date is in error. Correction is requested.

      Your early attention to the requests herein with confirmation copy of the corrections to the above by fax is appreciated.

1

TRANSMISSION VERIFICATION REPORT

| | |
|---|---|
| TIME | : 10/15/2021 09:08 |
| NAME | : |
| FAX | : |
| TEL | : |
| SER.# | : BROH3J6051 95 |

| | |
|---|---|
| DATE,TIME | 10/15 09:06 |
| FAX NO./NAME | 16506936925 1 |
| DURATION | 00:01:34 |
| PAGE(S) | 05 |
| RESULT | OK |
| MODE | STANDARD |

1           THE COURT:   Sustained.

2           MS. McCOLM:  Q.   Okay.  Did you examine that

3 so-called right of way under your expertise to determine

4 whether in fact it pertained to this real property?

5           MR. HABIB:  Objection, vague.  I don't know

6 what right of way she's talking about.  And it's

7 irrelevant if it's the original one.

8             (Interruptions occurring.)

9           MS. McCOLM:  Q.   Okay.  When you say the

10 original one, do you mean the deed of 1916?

11 A.   Yes.

12 Q.   Okay.  In that document did you make any examination

13 of it to determine whether that document even applied to

14 this property?

15           MR. HABIB:  Objection, relevance.

16           THE COURT:   Overruled.

17           THE WITNESS:  Yes.

18           MS. McCOLM:   Q.   And what was your

19 conclusion?

20 A.   That the lands description for that document was

21 outside of the McColm property.

22 Q.   And when did you make that decision?

23           MR. HABIB:   That determination?

24           MS. McCOLM:   That determination?

25 A.   Originally Jason Thomas indicated that.  We -- I had

26 somebody double check it back in 2010, and I just

27 reviewed it a couple of weeks ago.

28 Q.   Okay.  With your expertise is it possible to shorten











EXHIBIT F

| Patient Name | Admission # | Medical Record # |
|---|---|---|
|  |  |  |

# CONDITIONS OF ADMISSION

## CONSENT TO MEDICAL AND SURGICAL PROCEDURES

I consent to the procedures that may be performed during this hospitalization or while I am an outpatient. These may include but are not limited to, emergency treatment or services, laboratory procedures, X-ray examinations, medical or surgical treatment or procedures, telehealth services, anesthesia, or hospital services provided to me under the general and special instructions of my physician or surgeon. I understand that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. I acknowledge that no guarantees have been made to me regarding the result of examination or treatment in this hospital.

## NURSING CARE

This hospital provides only general nursing care and care ordered by the physician(s). If I want a private duty nurse, I agree to make such arrangements. The hospital is not responsible for failure to provide a private duty nurse and is hereby released from any and all liability arising from the fact that the hospital does not provide this additional care

## LEGAL RELATIONSHIP BETWEEN HOSPITAL AND PHYSICIANS

Some physicians and surgeons providing services to me, including the radiologist, pathologist, emergency physician, anesthesiologist and others, are not employees, representatives, or agents of the hospital. They have been granted the privilege of using the hospital for the care and treatment of their patients, but they are not employees, representatives or agents of the hospital. They are independent practitioners.

Patient initials: _____

I understand that I am under the care and supervision of my attending physician. The hospital and its nursing staff are responsible for carrying out my physician's instructions. My physician or surgeon is responsible for obtaining my informed consent, when required, to medical or surgical treatment, special diagnostic or therapeutic procedures, or hospital services provided to me under my physician's general and special instructions.

## MATERNITY PATIENTS

f I deliver an infant(s) while a patient of this hospital, I agree that these same Conditions of Admission apply to the infant(s)

## PERSONAL BELONGINGS

s a patient, I am encouraged to leave personal items at home. The hospital maintains a fireproof safe for the safekeeping of money and aluables. The hospital is not liable for the loss or damage to any money, jewelry, documents, or other articles that are not placed in the afe. Hospital liability for loss of any personal property deposited with the hospital for safekeeping is limited by law to five hundred ollars ($500) unless I receive a written receipt for a greater amount from the hospital.



PO Box 1229
Weaverville, CA 96093
(530)623-5541

| Patient Name | Admission # | Medical Record # |
|---|---|---|
| | | |

## FINANCIAL AGREEMENT

I agree to promptly pay all hospital bills in accordance with the reimbursement rates listed in the hospital's charge description master and, if applicable, the hospital's charity care and discount payment policies and state and federal law. I understand that I may review the hospital's charge description master before (or after) I receive services from the hospital. I understand some physicians and surgeons, including the radiologist, pathologists, emergency physician, anesthesiologist, and others, will bill separately for their services. If any account is referred to an attorney or collection agency for collection, I will pay actual attorneys' fees and collection expenses. All delinquent accounts shall bear interest at the legal rate, unless prohibited by law.

Patient initials: _____

## ASSIGNMENT OF ALL RIGHTS AND BENEFITS

I irrevocably assign and transfer to the hospital all rights, benefits, and any other interests in connection with any insurance plan, health benefit plan, or other source of payment for my care. This assignment shall include assigning and authorizing direct payment to the hospital of all insurance and health plan benefits payable for this hospitalization or for these outpatient services. I agree that the insurer or plan's payment to the hospital pursuant to this authorization shall discharge its obligations to the extent of such payment. I understand that I am financially responsible for charges not paid according to this assignment, to the extent permitted by state and federal law. I agree to cooperate with, and take all steps reasonably requested by, this hospital to perfect, confirm, or validate this assignment.

## HEALTH PLAN CONTRACTS

This hospital maintains a list of health plans with which it contracts. A list of such plans is available upon request from the financial office. Some physicians and surgeons, including the radiologist, pathologist, emergency physician, anesthesiologist, and others, will bill separately for their services. It is my responsibility to determine if the hospital or the physicians providing services to me contract with my health plan.

I certify that I have read the foregoing and received a copy thereof. I am the patient, the patient's legal representative, or am otherwise authorized by the patient to sign the above and accept its terms on his/her behalf

Date: _11/5/19_      Time: _2pm_____ AM/PM

Signature: _____
            *(patient/legal representative)*

If signed by someone other than patient, indicate relationship:

Print Name: _____
            *(legal representative)*

Signature: _____
            *(witness)*

Print name: _____
            *(witness)*

Case: 19-30088    Doc# 11449    Filed: 10/19/21    Entered: 10/19/21 15:31:23    Page 21
of 27

**MCCOLM, PATRICIA A**

| | Loc: **ER** | Admit Date: **11/05/2019** | | | | PT# |
| | Age: **73 y** | Sex: **F** | Ht: **172.72 cm** | Wt: **108.86 kg** | BMI: **36.5** | MR# |

Allergies: **triamcinolone, Demerol, anti inflammatories**

Flowsheet Entry

| Flowsheet View | Close |

| Edit Performed Date/Time | 11/05/2019 | 15:24 | | Add | Discontinue | Clear Data | Mark Erroneous |

Filter: From: 11/04/2019 | 14:13 | Through: 11/05/2019 | 15:25 | Period: 24H ▼ | Filter |

**□ I & O Totals:**

| Period | Intake | Output | Net |
|---|---|---|---|
| 12 Hour | 0 | 0 | 0 |
| 24 Hour | 0 | 0 | 0 |
| Visit | 0 | 0 | 0 |

**□ IV Dosage Totals:**

No data.

**□ Vitals:**

| | | 11/05 15:24 | 11/05 14:57 | 11/05 14:14 | 11/05 14:12 |
|---|---|---|---|---|---|
| **Temperature** | | | | | |
| Temperature | | 99 F | | 99.2 F | |
| Temperature Site | | Temporal | | Temporal | |
| **Blood Pressure** | | | | | |
| Systolic BP | | 172 mmHG | 150 mmHG | 205 mmHG | |
| Diastolic BP | | 122 mmHG | 92 mmHG | 155 mmHG | |
| Pulse | | 93 RPM | 81 RPM | 108 RPM | |
| Respiratory Rate | | 16 RPM | 16 RPM | 94 RPM | |
| Weight | | lbs oz | | | |
| **Oxygen** | | | | | |
| Oxygen Saturation | | 95 % | | 94 % | |
| Room Air or Oxygen | | Room Air | | Room Air | |
| Oxygen Delivery | | | | | |
| Oxygen Flow | | | | | |
| Fractional Inspired O2 | | | | | |
| **Pain** | | | | | |
| Pain | | 04 | | 07 | 08 |

Save

TRINITY HOSPI...
EMERGENCY DEPARTMENT
Owned and Operated by
Mountain Communities Healthcare District
60 Easter Avenue, PO Box 1229
Weaverville, CA 96093
(530) 623-5541 X 3240

```
MR# 0053564
Mccolm, Patricia A          73 F
Adm: 11/05/2019    Dob: 06/05/1946
PS:ERM        Room:    Bed:
Att: Thomas Knutson    V# 21072070
```

## AFTERCARE INSTRUCTIONS

**NOTE:** Be sure that you have read and understand all instructions before signing below. The examination and treatment you have received in the Emergency Department have been rendered on an emergency basis only. *It is not intended to be a substitute for, or an effort to provide complete medical care.* A copy of your ER record and reports of all laboratory, x-ray and other tests will be available to your follow up physician. It is important that you contact your primary care physician for follow-up and that you report any new or continuing problems at that time. These Aftercare Instructions have been recommended by your Emergency Department Physician and should be followed closely for the best possible safeguard against complications. Preliminary x-ray, electrocardiogram interpretations and final culture results will be reviewed by the appropriate specialist, and you will be advised of any significant change in interpretation. Remember that most illnesses and many medications can affect your alertness. You must avoid dangerous activities if you are not alert as usual, including such things as driving a car or working with machinery. If anything unusual occurs, call your physician immediately. **IF YOUR CONDITION WORSENS AND YOU CANNOT IMMEDIATELY SEE YOUR REFERRAL or PRIMARY CARE PHYSICIAN, RETURN TO THE EMERGENCY DEPARTMENT.**

### *TAKE YOUR PRESCRIPTIONS AS DIRECTED.*

**WHEN YOU VISIT YOUR PHYSICIAN, PLEASE BRING THIS INSTRUCTION SHEET AND ANY PRESCRIBED MEDICATIONS WITH YOU TO YOUR APPOINTMENT.**

☐ Wound check on _____  ☐ Stitches/Staples removed _____  **Return to ER on _____**

**Special Instructions/Referrals:** *Cardiac RRTing is reassuring*
*No MI. See PMD in 5-7 days for recheck*
*Return if worse.*

Rx:

Physician Signature

**I hereby acknowledge that I have received and understand these aftercare instructions.**

_____          _____
Patient Signature                                   RN Signature

Related Searches

Buy Wholesale                  Identification

Laurel Hedge                  Laurel Trees

Types of Cedar Trees        Types of Leaves

Garden Nurseries Nearby      Tree Leaf Identification

## Web Results

www.noble.org
Formula provides basis for **tree** appraisal - Noble Research Institute
In order to receive financial compensation for the loss of a **tree**, a **value** needs to be **established**.

ufi.ca.uky.edu
What is Your Tree Worth? | Urban Forest Initiative
Good landscape designs can increase property **values** 4-5%. On the other hand, poorly placed or selected plant material can lower property **values** by 8-10%. Real ...

www.hgtv.com
Increase Your Home's **Value** With **Mature Trees** | HGTV
Towering **trees** on your property provide more than beauty -- they increase the **value** of your home. Several recent nationwide surveys show that **mature trees** in a ...

www.extension.purdue.edu
Tree Appraisal and the **Value** - Purdue Extension
The collective **value** of **trees** makes a difference in people's health and quality of life in ... For example: An ideal, **mature** sugar maple with a 24-inch.

www.arborday.org
The Benefits of **Trees** at arborday.org
A **mature tree** can often have an appraised **value** of between $1,000 and $10,000. Council of **Tree** and Landscape Appraisers. Having large **trees** in yards along ...

www.homesandgardens.com
The **trees** that increase property **value** — and those that will lose you ...
She then provides a fascinating statistic: **mature trees** in high-income neighborhoods command on average a 10-15% price increase on a home **value** ...

treeplantation.com
**TREE VALUE CALCULATOR | How Much Is Your Tree Worth?**
Calculating the **value** of **trees** growing in a wood lot is fairly straightforward. The easiest way to approach this is to calculate an average height and diameter ...

www.brightview.com
Big **Trees** Make Your Property **Value** Grow - BrightView
Jan 5, 2018 ... Numerous studies prove that properties with **mature trees** and beautiful landscaping attract buyers, shoppers, and tenants and demand premium ...

www.homelight.com
Which Kinds of **Trees** Increase Property **Value**, Based on Your ...
Mar 11, 2020 ... They're like a free jungle-gym in the backyard. They kindly clean up the air we breathe (it's estimated that one large **mature tree** pumps out a ...

www.smgov.net
Structure, function and **value** of street **trees** in California, USA
Apr 16, 2016 ... defects in **mature trees**. Published by Elsevier GmbH. 1. Introduction. Street **trees**, defined as **trees** growing along public street right-.

## Ads



Case: 19-30088     Doc# 11449     Filed: 10/19/21     Entered: 10/19/21 15:31:23     Page 24 of 27

## CERTIFICATE OF SERVICE

I, PATRICIA A. MCCOLM, declare as follows:

I am a citizen of the United States over the age of eighteen (18) years and a Claimant in the within action. My address is PO Box 113, Lewiston, California 96052

On October 18, 2021, I served documents described as:

**RESPONSE / OPPOSITION TO REORGANIZED DEBTORS' ONE HUNDRED SEVENTH OMNIBUS OBJECTION TO CLAIMS (MCCOLM CLAIMS);**

**DECLARATION OF PATRICIA A. MCCOLM IN SUPPORT OF RESPONSE/OPPOSITION TO REORGANIZED DEBTORS' ONE HUNDRED SEVENTH OMNIBUS OBJECTION TO CLAIMS (MCCOLM CLAIMS)**

**CERTIFICATE OF SERVICE** on counsel for Reorganized Debtors, Thomas B. Rupp, as he requested/stipulated to be served by FAX to **(650) 636 9251** signed by this Claimant with no other service required, to the listed fax number for:

KELLER BENVENUTTI KIM LLP
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
**Fax: 650 636 9251**

A true and correct copy of the letter agreement is attached.

I declare under penalty of perjury under the laws of the United States of America and State of California that the above is true and correct. This declaration was executed on October 18, 2021 in Lewiston, California.

Patricia A. McColm



**KBK | KELLER BENVENUTTI KIM**
www.kbkllp.com

October 14, 2021

**BY FAX ONLY**

Ms. Patricia A. McColm
P.O. Box 113
Lewiston, CA 96052
Phone/Fax: (415) 333-8000

Re: *In re PG&E Corporation*, Case Nos. 19-30088, *et al.* (Bankr. N.D. Cal.); Proofs of Claim Nos. 7659 and 104538

Dear Ms. McColm:

I write on behalf of PG&E Corporation and Pacific Gas and Electric Company, debtors and reorganized debtors in the above-referenced chapter 11 cases (together, "**PG&E**") currently pending in the United States Bankruptcy Court for the Northern District of California ("**Bankruptcy Court**").

I acknowledge receipt of your fax dated October 13, 2021.

As you and I agreed previously, PG&E will accept service by fax of your response to the *Reorganized Debtors' One Hundred Seventh Omnibus Objection to Claims (McColm Claims)*. Please fax your response to my attention at: **(650) 636-9251**. A formal stipulation does not need to be filed with the Bankruptcy Court.

As I noted in our previous telephone call, notwithstanding PG&E's acceptance of service by fax, you are still required to ensure that your response is filed with the Bankruptcy Court by the response deadline. For assistance with filing documents with the Bankruptcy Court, you may call the court at (888) 821-7606.

Very Truly Yours,

Thomas B. Rupp

Thomas B. Rupp
Direct: 415.364.6745
Cell: 415.636.9015
Email: trupp@kbkllp.com

650 California Street, Suite 1900
San Francisco, CA 94108

