**WEIL, GOTSHAL & MANGES LLP**
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: (212) 310-8000
Fax: (212) 310-8007

**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
Fax: (650) 636 9251

*Attorneys for Debtors and Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**In re:**

**PG&E CORPORATION,**

**- and -**

**PACIFIC GAS AND ELECTRIC COMPANY,**

**Debtors.**

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

** ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).*

Case Nos. 19-30088 (DM) (Lead Case)
(Jointly Administered)

**MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING DEADLINE FOR THE REORGANIZED DEBTORS TO OBJECT TO CLAIMS AND FOR RELATED RELIEF**

Hearing Date: November 9, 2021
Time: 10:00 a.m. (Pacific Time)
Place: **(Telephonic or Video Only)**
United States Bankruptcy Court
Courtroom 17, 16th Floor
San Francisco, CA 94102

**Objection Deadline:**
**November 2, 2021, 4:00 pm (PT)**

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), in accordance with Section 7.1 of the Plan,[1] sections 105(a) and 1142 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (i) further extending the deadline established under the Plan for the Reorganized Debtors to object to Claims by an additional one hundred eighty (180) days, through and including June 21, 2022, without prejudice to the Reorganized Debtors' right to seek additional extensions thereof; and (ii) granting related relief. In support of the Motion, the Reorganized Debtors submit the Declaration of Robb McWilliams, filed concurrently herewith.

---

[1] Capitalized terms used but not herein defined have the meanings ascribed to such terms in the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8048] (as it may be amended, modified, or supplemented and together which any exhibits or schedules thereto, the "**Plan**").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

As detailed in the *Status Report Regarding General Claims Reconciliation and Resolution Process* [Dkt No. 11361] (the "**General Claims Status Report**") and the *Status Report Regarding Securities Claims Reconciliation and Resolution Process* [Dkt No. 11362] (the "**Securities Claims Status Report**"), the Reorganized Debtors and their professionals have diligently worked to reconcile and resolve Claims during the nearly sixteen months since the Effective Date, the nearly nine months since the Court approved the Securities Claims Procedures (as defined below), and the seven months since the filing of the Second Extension Motion (as defined below).

Since the Effective Date, the Reorganized Debtors have successfully expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved over 14,600 of the nearly 15,000 General Claims[2] (which exclude Securities Claims,[3] Fire Victim Claims, and Subrogation Wildfire Claims) asserting approximately $60 billion in the aggregate, which were scheduled or filed against the Debtors, representing approximately $55.6 billion in the aggregate – or nearly 93% of the total dollar amount and 98% in number of the General Claims asserted in these Chapter 11 Cases.

The Reorganized Debtors have also used the Securities Claims Procedures (as defined below) to make significant progress in addressing the 8,455 Securities Claims filed against the Debtors as of the date of this Motion, including through collecting trading information necessary to assess and calculate potential damage amounts and expunging through objection or withdrawal nearly 1,800 of those Securities Claims to date, representing over $1 billion in face amount of Securities Claims.

---

[2] As used herein, "**General Claims**" means Proofs of Claim scheduled by or filed against the Debtors that are not Securities Claims, Fire Victim Claims, or Subrogation Wildfire Claims. These General Claims include, but are not limited to, trade claims, customer claims, employment claims, regulatory claims, real property claims, and tort and other litigation claims that are unrelated to the Fires.

[3] "**Securities Claims**" means rescission or damages claims filed in the Chapter 11 Cases by claimants who have asserted that they purchased or acquired certain of the Debtors' publicly held debt and equity securities during the period from April 29, 2015 through November 15, 2018, inclusive.

As a result of these efforts, the Reorganized Debtors anticipate that fewer than 200 of the original 15,000 filed and scheduled General Claims, asserting approximately $2.9 billion of the original total asserted amount of $60 billion, will remain unresolved, with no pending objection, as of December 23, 2021 (collectively, the "**Remaining General Claims**"). In addition, the Reorganized Debtors currently expect to be in a position by year end to begin making settlement offers and thereafter, if necessary, to institute mediation procedures to resolve certain Securities Claims (collectively, the "**Remaining Securities Claims**," and, together with the Remaining General Claims, the "**Remaining Claims**") consistent with the Securities Claims Procedures (as defined below). The offer and settlement process will almost certainly extend into next year for the Remaining Securities Claims.

The Reorganized Debtors respectfully request that they be permitted to continue their substantial efforts to reconcile and resolve Claims through the claims reconciliation process, and that the deadline to object to Claims as established by the Second Extension Order (as defined below), currently set as December 23, 2021 (the "**Current Objection Deadline**"), be extended an additional one hundred eighty (180) days, through and including June 21, 2022, without prejudice to the Reorganized Debtors' right to seek additional extensions thereof. The Reorganized Debtors submit that such relief will benefit all parties in interest because, among other reasons, it will provide the Reorganized Debtors with additional time to attempt to resolve the Remaining Claims consensually, without burdening the Court with avoidable litigation or imposing avoidable litigation-related costs and expenses on the parties. Absent the relief requested, the Reorganized Debtors may be compelled to object to the Remaining Claims to avoid a windfall to some Claimants from the "deemed allowance" of non-meritorious Claims under the Plan.

## II. JURISDICTION

This Court has jurisdiction to consider these issues pursuant to 28 U.S.C. sections 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a

core proceeding pursuant to 28 U.S.C. section 157(b). Venue is proper before the Court pursuant to 28 U.S.C. sections 1408 and 1409.

**III. BACKGROUND**

On January 29, 2019, the Debtors commenced voluntary cases for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California. Prior to the Effective Date, the Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On July 1, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors* [Docket No. 2806] (the "**Bar Date Order**"). The Bar Date Order set October 21, 2019 (the "**Bar Date**") as the deadline to file proofs of claim (each, a "**Proof of Claim**") for prepetition claims (as defined in section 101(5) of the Bankruptcy Code), including all claims of Fire Claimants, Wildfire Subrogation Claimants, Governmental Units, customers, secured claims and priority claims against either of the Debtors. The Bar Date was later extended to December 31, 2019, solely with respect to unfiled, non-governmental Fire Claims [Docket No. 4672]; and separately to April 16, 2020, solely with respect to persons or entities that purchased or acquired certain of the Debtors' publicly held debt and equity securities within the limited period from April 29, 2015 through November 15, 2018, inclusive, and that may have Securities Claims based on those purchases against the Debtors [Docket No. 5943].

On June 20, 2020, this Court entered the Order confirming the Plan [Docket No. 8053] (the "**Confirmation Order**"). The Plan became effective on July 1, 2020 [Docket No. 8252] (the "**Effective Date**"). Pursuant to Section 7.1 of the Plan (as approved by Paragraph 31 of the Confirmation Order), the Reorganized Debtors may object to Claims until the later of (i) one-hundred

and eighty (180) days after the Effective Date (*i.e.*, December 28, 2020) and (ii) such later date as may be fixed by the Bankruptcy Court for cause shown. Plan § 7.1.

On June 30, 2020, the Court entered the *Order Approving (A) Procedures for Filing Omnibus Objections to Claims and (B) the Form and Manner of the Notice of Omnibus Objections* [Docket No. 8228] (the "**General Claims Omnibus Objection Procedures Order,**" and each objection filed pursuant thereto or pursuant to the Securities Claims Procedures (as defined below), an "**Omnibus Objection**"). The General Claims Omnibus Objection Procedures Order permits the Reorganized Debtors to file objections to General Claims on an omnibus basis.

On September 25, 2020, the Court entered the *Order Approving ADR and Related Procedures for Resolving General Claims* [Docket No. 9148] (the "**General Claims ADR Procedures Order**"). The General Claims ADR Procedures Order approved "**General Claims Procedures**" (as defined therein) that allow: (i) General Claimants (*i.e.*, holders of Claims other than Fire Victim Claims, Subrogation Wildfire Claims, or Securities Claims) to submit, by mail or via a secure online portal, information necessary to allow the Reorganized Debtors to evaluate their Claims and develop settlement proposals for General Claimants; and (ii) the parties to exchange settlement offers or engage in standard or abbreviated forms of mediation to resolve General Claims. The General Claims Procedures were designed to work together with the procedures set forth in the General Claims Omnibus Objection Procedures Order to form a comprehensive and efficient pre-litigation approach to resolve General Claims.

On October 27, 2020, the Reorganized Debtors filed the *Motion for Entry of an Order Extending Deadline for the Reorganized Debtors to Object to Claims* [Docket No. 9355] (the "**Initial Extension Motion**"), which the Court granted with certain limited modifications in the *Order Extending Deadline for the Reorganized Debtors to Object to Claims* [Docket No. 9563] (the "**Initial Extension Order**"). The Initial Extension Order extended the Reorganized Debtors' deadline under Section 7.1 of the Plan to object to Claims by one hundred eighty (180) days, through and including

June 26, 2021 (the "**Initial Extension Period**"), except for the United States Claims, for which the objection deadline was extended to March 31, 2021.[4]

On January 25, 2021, the Court entered the *Order Approving Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* [Docket No. 10015] (the "**Securities Claims Procedures Order**"). The Securities Claims Procedures Order approved procedures (the "**Securities Claims Procedures**") aimed at facilitating the resolution of Securities Claims.

On March 17, 2021, the Reorganized Debtors filed the *Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 10408] (the "**Second Extension Motion**"), which the Court granted on April 5, 2021, with certain limited modifications, in the *Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 10494] (the "**Second Extension Order**"). The Second Extension Order extended the Reorganized Debtors' deadline under Section 7.1 of the Plan to object to Claims by an additional one hundred eighty (180) days, through and including December 23, 2021 (the "**Second Extension Period**"), except that the deadline for the Reorganized Debtors to object to the CAL FIRE Claims[5] was extended through and including September 30, 2021, without prejudice to the right of the Reorganized Debtors to move for further extensions of all such dates.

---

[4] As used here, "United States Claims" means Class 4B Utility General Unsecured Claims of the United States that are identified by claim number and amount in Docket No. 9718 as required by the Initial Extension Order.

[5] As used here, "CAL FIRE Claims" means Class 4B Utility General Unsecured Claims of the California Department of Forestry and Fire Protection ("**Cal Fire**") enumerated in the *Limited Objection of California Department of Forestry and Fire Protection to Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 10480]. The Reorganized Debtors have resolved 14 of the CAL FIRE Claims to date and have entered into a stipulation with Cal Fire to address the deadlines for the remaining two CAL FIRE Claims. The Reorganized Debtors and the United States also have entered into stipulations to extend the deadline for the Reorganized Debtors to object to the remaining United States Claims to November 1, 2021, December 1, 2021, or December 31, 2021, depending on the Claim. For the avoidance of doubt, the relief requested herein does not apply to the existing deadlines for the Reorganized Debtors to object to the CAL FIRE Claims and the United States Claims.

## IV. THE REORGANIZED DEBTORS' CLAIMS RECONCILIATION PROCESS

The Debtors began the process of gathering and consolidating information relating to their liabilities when preparing their schedules and statements of financial affairs long before any Proofs of Claim were filed in these Chapter 11 Cases. As indicated in the Initial Extension Motion, more than 22,440 Proofs of Claim had been scheduled or filed against the Debtors, asserting over $68.4 billion in the aggregate (not including Claims listed in the Debtors' schedules as contingent, unliquidated, and/or disputed).[6] The reconciliation, resolution and distributions of the Claims have required extensive efforts by the Reorganized Debtors' team of advisors, attorneys, and personnel.

Since the Effective Date, the Reorganized Debtors have successfully expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved approximately 16,500 Claims asserted for approximately $56.7 billion, representing approximately 83% of the total dollar amount of Claims asserted in these Chapter 11 Cases (including Securities Claims, but excluding Fire Victim Claims and Subrogation Wildfire Claims). Included in these statistics are over 3,300 Claims expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved during the Second Extension Period, asserted for approximately $4.2 billion in the aggregate.

Distributions on Claims. The Reorganized Debtors have processed over 60 rounds of distributions and distributed on approximately 5,000 Claims, totaling approximately $24.5 billion, since the Effective Date. In addition, the Reorganized Debtors made cash transfers to the Fire Victim Trust of more than $5 billion and to the Subrogation Wildfire Trust of approximately $11 billion.

Omnibus Objections. As of the date hereof, the Reorganized Debtors have filed 126 Omnibus Objections, including 111 with respect to General Claims, and 15 with respect to Securities Claims. 59 of these Omnibus Objections were filed during the Second Extension Period. Through the Plan and prosecution of the Omnibus Objections, approximately 11,000 Claims – approximately 9,200

---

[6] During the Second Extension Period, the Reorganized Debtors received approximately 940 additional untimely Claims asserting approximately $170.0 million in the aggregate. These figures and the others discussed in this Part IV exclude approximately 86,600 Fire Victim Claims and Subrogation Wildfire Claims, which will be resolved by the Fire Victim Trust and the Subrogation Wildfire Trust, respectively, in accordance with the Plan.

General Claims and nearly 1,800 Securities Claims – have been modified, withdrawn, disallowed and/or expunged, reducing the amounts asserted against the Debtors by approximately $31.8 billion. In addition, approximately 140 additional Claims (both General Claims and Securities Claims) are currently subject to pending Omnibus Objections, which seek to further reduce the asserted Claims pool by approximately $680 million.

As of the date hereof, approximately 6,800 Remaining Claims asserting approximately $11.4 billion remain outstanding, without a pending objection.[7] These Claims are described further below and include fewer than 200 General Claims, as well as the Securities Claims that are in the process of being reconciled and resolved pursuant to the Securities Claims Procedures.

**A. Unresolved General Claims**

Claims Litigated Outside of Bankruptcy Court. Approximately 45 additional General Claims are being litigated in non-bankruptcy fora, pursuant to orders of the Court modifying the automatic stay or Plan Injunction. Pursuant to the Second Extension Order, such Claims are deemed to have been objected to for purposes of the Plan's definition of "Allowed." Plan, Section 1.7(f). Further, the Reorganized Debtors anticipate stipulating to similar modifications of the Plan Injunction with respect to approximately 30 additional General Claims.

Settled Claims. The Debtors and Reorganized Debtors have undertaken extensive efforts to resolve certain General Claims through negotiated settlements, including through the General Claims Procedures further described below. These negotiation efforts have yielded the settlement of approximately 2,200 General Claims, totaling nearly $2.5 billion in asserted claim amounts (plus unliquidated amounts), both within and separate from the General Claims Procedures discussed below. Approximately 430 of those General Claims have been settled during the Second Extension Period. The Reorganized Debtors also have extended settlement offers to resolve approximately 20 General Claims, which, if accepted, will reduce the unresolved asserted Claims pool by

[7] These figures do not include any claims that are classified as Fire Victim Claims and channeled to the Fire Victim Trust pursuant to the Plan but may be reclassified, subject to all of the Debtors' and Reorganized Debtors' available rights, defenses, objections, and arguments, which are hereby reserved.

approximately $1.8 million. Further, the Reorganized Debtors are awaiting final documentation of settlements with respect to approximately 30 General Claims.

General Claims Procedures. The Reorganized Debtors resolved a subset of the settled General Claims described above through the General Claims Procedures. The Reorganized Debtors have sent formal information requests to the holders of over 350 General Claims, have initiated settlement offer exchanges on approximately 135 General Claims, and have noticed approximately 90 Abbreviated Mediations and approximately 60 Standard Mediations (each as defined in the General Claims ADR Procedures Order).[8] The General Claims Procedures have resulted in the resolution of approximately 100 General Claims by settlement, totaling approximately $147 million in asserted value (plus unliquidated amounts).[9] The Reorganized Debtors are hopeful that they will be able to resolve consensually a substantial number of the approximately 30 General Claims that remain subject to the General Claims Procedures.

**B. Unresolved Securities Claims**

Securities Claims Procedures. The Securities Claims Status Report details the extensive work done by the Reorganized Debtors and their professionals to reconcile and begin resolving the Securities Claims filed against the Reorganized Debtors. The Securities Claims Procedures authorized the Reorganized Debtors to, among other things, request the trading information necessary to assess the viability and calculate the potential amount of allowed Claims under the federal securities laws for each Securities Claim. Since the entry of the Securities Claims Procedures Order, the Reorganized Debtors have made substantial progress in obtaining the basic trading information from the significant majority of Securities Claimants and in ensuring that all Securities Claimants are given every opportunity to provide the information that is critical to and, indeed, a prerequisite of, implementation of the settlement offer and counteroffer stage of the Securities Claims Procedures.

---

[8] The categories referenced in this sentence are not mutually exclusive; for example, the Reorganized Debtors may have sent an information request, initiated settlement offer exchanges, and noticed a mediation on the same General Claim.

[9] This figure does not include approximately 40 Claims that began in the General Claims Procedures but were ultimately settled outside of the General Claims Procedures.

In order to address the more than 7,500 Securities Claims that had been filed as of January 25, 2021, the Reorganized Debtors, through their claims servicing agent, Kroll Settlement Administration ("**Kroll**"), created a database of claimants (the "**Securities Claimants**") and transactions, which required Kroll to review and manually transcribe each transaction that had been submitted on a claim-by-claim basis. By March 12, 2021, the Reorganized Debtors had finished mailing Information Requests for the more than 5,300 Securities Claims which lacked the complete trading data necessary to allow the Reorganized Debtors to assess the proofs of claim and calculate potential damages amounts.

Consistent with the Securities Claims Procedures, each Securities Claimant had forty-five (45) days from the mailing of the Information Request to provide the necessary trading information. Securities Claimants were given the option to submit their trading information either by mail or through the online portal created by Kroll, which the Securities Claimants could easily access.

The Reorganized Debtors received timely responses from approximately 3,800 of the over 5,300 Securities Claimants who were sent an Information Request by March 12, 2021. For the nearly 1,500 Securities Claimants who did not respond within the 45-day deadline, the Reorganized Debtors again contacted those Securities Claimants (at every mailing and email address listed on the proof of claim) to remind them to provide the requested information (the "**Reminder Notices**"). Consistent with the Securities Claims Procedures, the Reminder Notices provided an additional fourteen (14) days for those Securities Claimants to submit the requested trading data. The Reminder Notices have prompted responses from an additional approximately 700 Securities Claimants. The Reorganized Debtors still have not received any supplemental trading information from approximately 800 Securities Claimants.

Additionally, many of the Securities Claimants who have responded have not provided complete data. The Reorganized Debtors and Kroll are working with each of these claimants to resolve any outstanding issues. This outreach includes granting requests for extensions to allow these Securities Claimants more time to submit the missing trading information, sending follow-up emails detailing any outstanding requests or deficiencies in the data, and otherwise engaging in an ongoing dialogue to address any issues that arise.

## V. BASIS FOR RELIEF REQUESTED

### A. <u>The Court Has the Authority to Extend the Current Objection Deadline</u>

The Court has the express authority to extend the Current Objection Deadline, and cause exists for it to do so. Section 7.1 of the Plan (as approved by Paragraph 31 of the Confirmation Order) provides that the Current Objection Deadline may be extended by the Court for cause shown. Plan § 7.1. This provision anticipates and provides the necessary authority for the Motion.

Even in the absence of express authority, Bankruptcy Rule 9006(b) provides in relevant part that "when an act is required or allowed to be done at or within a specified period . . . by order of [the] court, the court for cause shown may at any time in its discretion . . . order the period enlarged . . . ." Fed. R. Bankr. P. 9006(b). The Plan and Confirmation Order provide that the Court retains jurisdiction over "all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code." Confirmation Order ¶ 78; Plan § 11.1. Finally, the Plan also provides that the Court retains jurisdiction for, *inter alia*, the following purposes:

> (d) To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claims; …[and]
>
> (k) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation[.]

Plan § 11.1(d) and (k). These provisions underscore the Court's authority to extend the Current Objection Deadline.

Indeed, the Plan's express authority to extend the Current Objection Deadline is consistent with the Court's general authority under sections 105(a) and 1142(b) of the Bankruptcy Code to issue orders necessary for the consummation of the Plan or to carry out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."); 11 U.S.C. § 1142(b) ("The court may direct the debtor . . . to perform any other act . . . that is necessary for the consummation of the plan."); *see also Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 609 (2d Cir. 2007) ("Section 105(a) grants broad equitable power to the bankruptcy courts

to carry out the provisions of the Bankruptcy Code so long as that power is exercised within the confines of the Bankruptcy Code."); *Nobel Grp., Inc. v. Bank (In re Nobel Grp., Inc.)*, 529 B.R. 284, 290-91 (Bankr. N.D. Cal. 2015) (quoting *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 165 (3d Cir. 2004) ("Post-confirmation jurisdiction is assumed by statute and rule: 11 U.S.C. § 1142(b) authorizes the bankruptcy court to 'direct' the debtor and any other necessary party . . . to perform any other act . . . that is necessary for the consummation of the plan."). These provisions also grant the Court ample authority to deem as "objected to" any Claims that are being litigated in a non-bankruptcy forum pursuant to an order of this Court modifying the automatic stay or the Plan Injunction.

Finally, the Court has the inherent power "'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). This request to further extend the Current Objection Deadline is in line with relief granted in chapter 11 cases of similar size. *See, e.g.*, *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2008), Docket Nos. 58842, 54122, 50165, 41286 (extending claims objection deadline four times, for a total of six years); *In re Motors Liquidation Corp.*, Case No. 09-50026 (Bankr. S.D.N.Y. June 1, 2009), Docket Nos. 10938, 11546, 12092, 12364, 12499, 12610 (extending claims objection deadline six times, for a total of nearly three years); *In re MF Global Holdings Ltd., et al.,* Case No. 11-15059 (Bankr. S.D.N.Y. Oct. 31, 2011), Docket Nos. 2290, 2247, 2200, 2160, 2102, 2028, 1869 (extending claims objection deadline seven times, for a total of two and a half years).

**B. Good Cause Exists to Extend the Current Objection Deadline**

The Reorganized Debtors have acted diligently to review the immense number of Claims asserted in these Chapter 11 Cases. To date, the Reorganized Debtors have resolved approximately 16,500 Claims with asserted amounts of $56.7 billion in the aggregate, representing approximately 83% of the aggregate dollar amount of Claims asserted in these Chapter 11 Cases. As discussed above, the Remaining Claims are largely comprised of the Remaining Securities Claims, with respect to which the Reorganized Debtors have made significant process through diligent efforts to obtain

the trading information required to engage in active settlement efforts. The Reorganized Debtors also have brought 15 omnibus objections with respect to the Securities Claims, which have resolved nearly 1,800 Securities Claims representing more than $1 billion in face value. The Reorganized Debtors believe that the requested extension of one hundred eighty (180) days is required and reasonable in light of the circumstances, but additional time may be necessary to resolve certain Claims.

Extension of the Current Objection Deadline will benefit the estates as a whole, including creditors and other parties in interest. It will enable the Reorganized Debtors to continue to engage in meaningful negotiations to resolve Claims consensually, minimizing the need to file and litigate objections. Resolving a Claim without a formal objection benefits both the holder of the Claim and the Reorganized Debtors' other stakeholders by avoiding the burden and expense of litigation. Further, if the Current Objection Deadline is not extended, the Reorganized Debtors will be compelled to divert their resources to supplement any pending objections to the Remaining Claims and file new objections to those Remaining Claims for which no objection has been filed. If the requested relief were not granted, the Reorganized Debtors would be forced to either (a) forego filing meritorious objections, thus creating a windfall for some holders of the Remaining Claims, *or* (b) file a plethora of rushed, expansive prophylactic objections to meet the Current Objection Deadline and preserve the Reorganized Debtors' rights, which would be inefficient and impose substantial burdens on the Court and the Reorganized Debtors and significant inconvenience and litigation expense on holders of the Remaining Claims. Neither of these alternatives would be in the best interests of the Reorganized Debtors' stakeholders, notably including the Fire Victims Trust—which holds a significant stake in the Reorganized Debtors' equity—and the holders of Fire Victim Claims who are that Trust's beneficiaries.

Extending the Current Objection Deadline will not prejudice holders of the Remaining Claims for the reasons stated above, and because such an extension is contemplated by the Plan and is reasonable under the circumstances. Moreover, whether or not the Current Objection Deadline is extended, holders of the Remaining Claims will have a full and fair opportunity to be heard if and when an objection is litigated.

For these reasons, the Reorganized Debtors submit that extending the Current Objection Deadline through and including June 21, 2022, without prejudice to the Reorganized Debtors' right to seek additional extensions thereof, is appropriate under the circumstances.

**VI. NOTICE**

Notice of this Motion will be provided to: (i) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (ii) all counsel and parties receiving electronic notice through the Court's electronic case filing system; and (iii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Reorganized Debtors respectfully submit that no further notice is required. No previous request for the relief sought herein has been made by the Reorganized Debtors to this or any other Court.

WHEREFORE the Reorganized Debtors respectfully request entry of the Proposed Order granting (i) the relief requested herein, and (ii) such other and further relief for the Reorganized Debtors as the Court may deem just and appropriate.

Dated: October 19, 2021

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

*/s/ Jane Kim*
Jane Kim

*Attorneys for Debtors and Reorganized Debtors*