**WEIL, GOTSHAL & MANGES LLP**
Richard K. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
New York, NY 10153-0119
Tel: (212) 310-8000
Fax: (212) 310-8007

**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
Fax: (650) 636 9251

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION,**<br>- and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).* | Case Nos. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF ROBB MCWILLIAMS IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING DEADLINE FOR THE REORGANIZED DEBTORS TO OBJECT TO CLAIMS AND FOR RELATED RELIEF**<br><br>Hearing Date: November 9, 2021<br>Time: 10:00 a.m. (Pacific Time)<br>Place: **(Telephonic or Video Only)**<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>**Objection Deadline:**<br>**November 2, 2021, 4:00 pm (PT)** |

I, Robb C. McWilliams, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Managing Director at the firm of AlixPartners, LLP ("**AlixPartners**"), which is an affiliate of both AlixPartners, LLC and AP Services, LLC, ("**APS**"), which provided interim management services to Pacific Gas and Electric Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (collectively, the "**Debtors**," or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). I submit this Declaration in support of the *Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* (the "**Motion**"),[1] filed contemporaneously herewith.

2. In my current position, I am responsible for overseeing the Bankruptcy Case Management component of AlixPartners' assignment to assist the Reorganized Debtors with various matters related to these Chapter 11 Cases. My area of responsibility includes the effort by AlixPartners, in coordination with the Reorganized Debtors, to review and assess the validity of all claims asserted against the Debtors, other than (a) Fire Claims and Subrogation Wildfire Claims and (b) providing limited support with respect to Securities Claims. I am generally familiar with the Reorganized Debtors' day-to-day operations, financing arrangements, business affairs, and books and records. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge, the knowledge of other AlixPartners professionals working under and alongside me on this matter, my discussions with the Reorganized Debtors' personnel, the Reorganized Debtors' various other advisors and counsel, and my review of relevant documents and information prepared by the Reorganized Debtors. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this declaration on behalf of the Reorganized Debtors.

3. The AlixPartners team under my supervision has been actively involved in the claims review and reconciliation process since shortly after the filing of these Chapter 11 Cases. AlixPartners initially assisted the Debtors in the preparation of their bankruptcy schedules based on the Debtors' books and records. AlixPartners has coordinated with the Debtors in reconciling and reviewing filed

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

proofs of claim with claims reflected in the Debtors' schedules and books and records. AlixPartners has developed and maintains a claims reconciliation database and various data management applications that are used by the Reorganized Debtors and AlixPartners to validate claims as well as identify claims that are invalid in whole or in part, and the appropriate grounds for objection to such claims. AlixPartners is now supporting, and will continue to support, the efforts of the Reorganized Debtors and their counsel to resolve disputed claims, including by formal objections as necessary.

4. AlixPartners personnel also conferred with personnel at Kroll, the Reorganized Debtors' claims servicing agent, with respect to the information concerning the Securities Claims in this Declaration.

5. Following the commencement of these Chapter 11 Cases and as indicated in the Initial Extension Motion, creditors filed or had listed in the Debtors' schedules of liabilities approximately 22,440 Claims asserting over $68.4 billion in liabilities in the aggregate (not including Claims listed in the Debtors' schedules as contingent, unliquidated, and/or disputed).[2]

6. Since the Effective Date, the Reorganized Debtors have successfully expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved approximately 16,500 Claims asserted for approximately $56.7 billion, representing approximately 83% of the total dollar amount of Claims asserted in these Chapter 11 Cases (including Securities Claims, but excluding Fire Victim Claims and Subrogation Wildfire Claims). Included in these statistics are over 3,300 Claims expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved during the Second Extension Period, asserted for approximately $4.2 billion in the aggregate.

7. <u>Distributions on Claims</u>. The Reorganized Debtors have processed over 60 rounds of distributions and distributed on approximately 5,000 Claims, totaling approximately $24.5 billion, since the Effective Date. In addition, the Reorganized Debtors made cash transfers to the Fire Victim Trust of more than $5 billion and to the Subrogation Wildfire Trust of approximately $11 billion.

8. <u>Omnibus Objections</u>. As of the date hereof, the Reorganized Debtors have filed 126

---

[2] During the Second Extension Period, the Reorganized Debtors received approximately 940 additional untimely Claims asserting approximately $170.0 million in the aggregate. These figures exclude approximately 86,600 asserted Fire Victim Claims and Subrogation Wildfire Claims.

1 Omnibus Objections, including 111 with respect to General Claims, and 15 with respect to Securities Claims. 59 of these Omnibus Objections were filed during the Second Extension Period. Through the Plan and prosecution of the Omnibus Objections, approximately 11,000 Claims – approximately 9,200 General Claims and nearly 1,800 Securities Claims – have been modified, withdrawn, disallowed and/or expunged, reducing the amounts asserted against the Debtors by approximately $31.8 billion. In addition, approximately 140 additional Claims (both General Claims and Securities Claims) are currently subject to pending Omnibus Objections, which seek to further reduce the asserted Claims pool by approximately $680 million.

9. As of the date hereof, approximately 6,800 Remaining Claims asserting approximately $11.4 billion remain outstanding, without a pending objection.[3] These Claims are described further below and include fewer than 200 General Claims, as well as the Securities Claims that are in the process of being reconciled and resolved pursuant to the Securities Claims Procedures.

### A. Unresolved General Claims

10. <u>Claims Litigated Outside of Bankruptcy Court</u>. Approximately 45 additional General Claims are being litigated in non-bankruptcy fora, pursuant to orders of the Court modifying the automatic stay or Plan Injunction. Pursuant to the Second Extension Order, such Claims are deemed to have been objected to for purposes of the Plan's definition of "Allowed." Plan, Section 1.7(f). Further, the Reorganized Debtors anticipate stipulating to similar modifications of the Plan Injunction with respect to approximately 30 additional General Claims.

11. <u>Settled Claims</u>. The Debtors and Reorganized Debtors have undertaken extensive efforts to resolve certain General Claims through negotiated settlements, including through the General Claims Procedures further described below. These negotiation efforts have yielded the settlement of approximately 2,200 General Claims, totaling nearly $2.5 billion in asserted claim amounts (plus unliquidated amounts), both within and separate from the General Claims Procedures discussed below. Approximately 430 of those General Claims have been settled during the Second Extension Period. The

---

[3] These figures do not include any claims that are classified as Fire Victim Claims and channeled to the Fire Victim Trust pursuant to the Plan but may be reclassified, subject to all of the Debtors' and Reorganized Debtors' available rights, defenses, objections, and arguments, which are hereby reserved.

Reorganized Debtors also have extended settlement offers to resolve approximately 20 General Claims, which, if accepted, will reduce the unresolved asserted Claims pool by approximately $1.8 million. Further, the Reorganized Debtors are awaiting final documentation of settlements with respect to approximately 30 General Claims.

12. <u>General Claims Procedures</u>. The Reorganized Debtors resolved a subset of the settled General Claims described above through the General Claims Procedures. The Reorganized Debtors have sent formal information requests to the holders of over 350 General Claims, have initiated settlement offer exchanges on approximately 135 General Claims, and have noticed approximately 90 Abbreviated Mediations and approximately 60 Standard Mediations (each as defined in the General Claims ADR Procedures Order).[4] The General Claims Procedures have resulted in the resolution of approximately 100 General Claims by settlement, totaling approximately $147 million in asserted value (plus unliquidated amounts).[5] The Reorganized Debtors are hopeful that they will be able to resolve consensually a substantial number of the approximately 30 General Claims that remain subject to the General Claims Procedures.

**B.  Unresolved Securities Claims**

13. <u>Securities Claims Procedures</u>. Since the entry of the Securities Claims Procedures Order, the Reorganized Debtors have made substantial progress in obtaining the basic trading information from the significant majority of Securities Claimants and in ensuring that all Securities Claimants are given every opportunity to provide the information that is critical to and, indeed, a prerequisite of, implementation of the settlement offer and counteroffer stage of the Securities Claims Procedures.

14. In order to address the more than 7,500 Securities Claims that had been filed as of January 25, 2021, the Reorganized Debtors, through their claims servicing agent, Kroll, created a database of the Securities Claimants and transactions, which required Kroll to review and manually transcribe each transaction that had been submitted on a claim-by-claim basis. By March 12, 2021, the Reorganized

---

[4] The categories referenced in this sentence are not mutually exclusive; for example, the Reorganized Debtors may have sent an information request, initiated settlement offer exchanges, and noticed a mediation on the same General Claim.

[5] This figure does not include approximately 40 Claims that began in the General Claims Procedures but were ultimately settled outside of the General Claims Procedures.

1 Debtors had finished mailing Information Requests for the more than 5,300 Securities Claims which lacked the complete trading data necessary to allow the Reorganized Debtors to assess the proofs of claim and calculate potential damages amounts.

15. Consistent with the Securities Claims Procedures, each Securities Claimant had forty-five (45) days from the mailing of the Information Request to provide the necessary trading information. Securities Claimants were given the option to submit their trading information either by mail or through the online portal created by Kroll, which the Securities Claimants could easily access.

16. The Reorganized Debtors received timely responses from approximately 3,800 of the over 5,300 Securities Claimants who were sent an Information Request by March 12, 2021. For the nearly 1,500 Securities Claimants who did not respond within the 45-day deadline, the Reorganized Debtors again contacted those Securities Claimants (at every mailing and email address listed on the proof of claim) to remind them to provide the requested information (the "**Reminder Notices**"). Consistent with the Securities Claims Procedures, the Reminder Notices provided an additional fourteen (14) days for those Securities Claimants to submit the requested trading data. The Reminder Notices have prompted responses from an additional approximately 700 Securities Claimants. The Reorganized Debtors still have not received any supplemental trading information from approximately 800 Securities Claimants.

17. Additionally, many of the Securities Claimants who have responded have not provided complete data. The Reorganized Debtors and Kroll are working with each of these claimants to resolve any outstanding issues. This outreach includes granting requests for extensions to allow these Securities Claimants more time to submit the missing trading information, sending follow-up emails detailing any outstanding requests or deficiencies in the data, and otherwise engaging in an ongoing dialogue to address any issues that arise.

////
////
////
////
////

I declare under penalty of perjury, as set forth in 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed this nineteenth day of October, 2021, in Dallas, Texas.

                                   */s/ Robb McWilliams*
                                   Robb McWilliams