1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA
                       -oOo-
3
    In Re:                        ) Case No. 19-30088
4                                 ) Chapter 11
    PG&E CORPORATION AND PACIFIC  )
5   GAS AND ELECTRIC COMPANY,     ) San Francisco, California
                                  ) Tuesday, October 19, 2021
6                    Debtor.      ) 10:00 AM
    _____ )
7                                   REORGANIZED DEBTORS' SEVENTY-
                                    SIXTH OMNIBUS OBJECTION TO
8                                   CLAIMS (NO LIABILITY /
                                    PASSTHROUGH CLAIMS) FILED BY
9                                   PG&E CORPORATION [10537]

10              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE DENNIS MONTALI
11            UNITED STATES BANKRUPTCY JUDGE

12  APPEARANCES (All present by video or telephone):
    For the Debtor:            THOMAS B. RUPP, ESQ.
13                             Keller Benvenutti Kim LLP
                               650 California Street
14                             Suite 1900
                               San Francisco, CA 94108
15                             (415)636-9015

16  Also Present:             Ora and Willie Green
                              Individual claimants
17
                              Kristen Jensen, PG&E
18
    Court Recorder:           LORENA PARADA/ANKEY THOMAS
19                            United States Bankruptcy Court
                              450 Golden Gate Avenue
20                            San Francisco, CA 94102

21  Transcriber:              SHARONA SHAPIRO
                              eScribers, LLC
22                            7227 N. 16th Street
                              Suite #207
23                            Phoenix, AZ 85020
                              (973)406-2250
24
    Proceedings recorded by electronic sound recording;
25  transcript provided by transcription service.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    SAN FRANCISCO, CALIFORNIA, TUESDAY, OCTOBER 19, 2021, 10:00 AM

2                                -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Court is now in session, the Honorable

5    Dennis Montali presiding.  Calling the matter of PG&E

6    Corporation.  I'll bring in Mr. Rupp.

7            THE COURT:  Can we have an appearance by Mr. or Mrs.

8    Green?

9            THE CLERK:  I do not --

10           THE COURT:  Oh, yeah, I do see --

11           THE CLERK:  I do.  I see Ms. Ora Green.  I'll bring

12   her into the courtroom.

13           THE COURT:  All right.  Come on in.

14           Mr.  Rupp, can you make your appearance?

15           MR. RUPP:  Good morning, Your Honor.  Thomas Rupp of

16   Keller Benvenutti Kim, on behalf of the reorganized debtors. I

17   will also note that Kristen Jensen from PG&E is observing

18   today's hearing.

19           THE COURT:  Okay.  Thank you both.  Good morning to

20   both of you.  We're waiting to bring Ms. Green in.

21           THE CLERK:  Your Honor, I attempted to bring Ms. Green

22   in, and it looks -- oh, there she is.

23           THE COURT:  All right.  Ms. Green, good morning.  I

24   can see your name on the screen.  I need to ask you to activate

25   your microphone and your camera, if you are so inclined.

PG&E Corporation and Pacific Gas and Electric Company

1        Ms. Green, if you can hear me, I need you to activate

2    your camera -- I mean, your microphone and camera.

3        MS. GREEN:  I'm unmuted.

4        THE COURT:  All right.

5        MS. GREEN:  Can you hear me now?

6        THE COURT:  I can.

7        MS. GREEN:  Okay.

8        THE COURT:  Can you hear me?

9        MS. GREEN:  Yes.

10        THE COURT:  All right.  Ms. Green, are you going to

11    turn your camera on or not?  It's your choice.

12        MS. GREEN:  Okay.  I'll start the video.  It says it

13    can't start video, failed to start.  Please select --

14        THE COURT:  Try again, down on the left hand corner,

15    where you see the word "video", you see a red line through it.

16    You should be able to click on it.

17        MS. GREEN:  It said it can't start the video.

18        THE COURT:  Okay.  Well, we'll do this orally.  Just

19    state your name for the record, please.

20        MS. GREEN:  My name is Ora Green.

21        THE COURT:  All right.  Thank you.  And is your

22    husband going to be participating with you or not?

23        MS. GREEN:  Willie, are you here?

24        MR. GREEN:  Yeah.

25        MS. GREEN:  Yeah, my husband's here also.  Yes.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Well, is he going to be joining us on the

2    camera or speaking?  It's up to him.  It doesn't matter.  I

3    just need one of you to be --

4    MS. GREEN:  He said not at this time.

5    THE COURT:  Okay.  All right.  So, Mr. Rupp, Mr. and

6    Ms. Green filed some more papers late in the last few days.  Do

7    you want to add anything or have anything to say in response?

8    Because I have some questions for Ms. Green, but I want to see

9    what the company's position is at this point.

10    MR. RUPP:  Well, Your Honor, I don't think I have

11    anything to say in response to the additional papers.  I think

12    there were two additional filings, which we can call a third

13    response and a fourth response, in addition to the first and

14    second.

15    The third was largely replicating the statements and

16    testimony offered in the first response.  It did offer some

17    additional photographs, many of which were -- a few of which

18    seem to be repeated, but several others which seemed to just be

19    of work being done in the street.

20    And the fourth response, which I think was filed

21    Friday, but posted to the docket yesterday, included, I think,

22    a couple of photographs, most of which were repeated from prior

23    filings.  But it also did include, again, the report -- the

24    alleged expert report that the Greens had first introduced in

25    their first response.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        THE COURT:  I mean, I had the same impression that it

2    was largely duplicative, but I wanted to give you a chance.

3        Ms. Green, let me ask you a few basic questions here.

4    I'm looking specifically at the document that you and your

5    husband filed on September 20th.  That was originally -- the

6    title said "Memorandum in support of opposition to motion".

7    And that was the first of several things you filed.  And I just

8    have a couple of questions to clarify.  So do you remember that

9    document, or do you have it in front of you?

10        MS. GREEN:  Yeah, I do.

11        THE COURT:  By the way, I would add that, although you

12    and your husband did sign that document, there are some others

13    that were filed that were not signed.  And it may be necessary

14    to get you to sign them.

15        But here are my questions.  So on the very first

16    page -- it's actually -- I beg your pardon, it's page 3, but

17    it's the first -- it's the page under the title "Argument".

18    And right in the first paragraph 1, you say that:  "Our home

19    security camera and pictures were taken of the damaged

20    equipment staging in front of Magnolia".

21        I don't know that I know where those pictures are.  Do

22    you believe that those pictures have been included in what

23    you've been filing so far?

24        MS. GREEN:  The ones from the security camera and the

25    ones that were taken, yeah.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Okay.  Which doc --

2    MS. GREEN:  Not all of the ones for the security

3  camera, because they have numbers and writing on them and

4  some --

5    THE COURT:  Well, okay, but can you tell me where I

6  would find them based upon the various documents that you

7  filed?

8    MS. GREEN:  The last ones, I believe, that I sent out,

9  I don't think there were pictures from the security camera

10  itself, except for the one that was in the car.  And that's --

11    THE COURT:  Okay.

12    MS. GREEN:  That's the one with the lady walking up

13  the street showing that --

14    THE COURT:  See, I don't know where I find that

15  picture.  So where is there a picture of a person walking up

16  the street?

17    MS. GREEN:  Okay.

18    THE COURT:  If you filed it, you just need to tell me

19  where I can look at it, and if you didn't file it, I presume I

20  can give you an opportunity to do it.  But you're talking about

21  something that I can't locate.

22    MS. GREEN:  Do you have any of the pictures where it

23  shows the work on the street?

24    THE COURT:  Yes, I do.

25    MS. GREEN:  Okay.  There was one where it shows a

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  person, and she's walking up the street and she has a yellow

2  vest.

3          THE COURT:  I'm sorry; I don't see that.

4          Mr. Rupp, do you see that picture?

5          MR. RUPP:  I need more information on --

6          MS. GREEN:  I had sent several pictures in.  I wasn't

7  for sure that the pictures actually went through because of the

8  way my computer presented it.  I wasn't sure if the pictures

9  actually went through; that's why I sent them again.

10          THE COURT:  Well, you have to understand that we do

11  have a postal service that also sends pictures.  You filed a

12  document on the 25th of September.  And the first page was a --

13  it looks like an email that has the subject line "Sewer camera

14  inspection".

15          And then the next page is a Gmail document that has a

16  very hard to see picture.  And then the next page is a PG&E

17  letter to you and your husband about the inspection.  And then

18  the next picture is a picture that shows a concrete saw on the

19  ground behind what I assume is your car.

20          And then the next picture just shows a crack; I can't

21  say where.  And that's it.  I'm at a loss to find a picture of

22  any woman with a vest on, or any other kind of outfit.  I have

23  no pictures that I can find of any woman.  All right.  So

24  that's a missing picture.  And I don't see any picture that

25  includes any security camera data.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    The next page says that -- or the next question -- so

2  that's an unknown answer there.

3    MS. GREEN:  Your Honor, pardon me.

4    THE COURT:  Pardon me?

5    MS. GREEN:  Excuse me.  The pictures that you

6  described, is there any way I can describe why I sent it, or

7  let you know why I actually sent it?

8    THE COURT:  Well, no, the way you need to do it is

9  when you refer to a picture that I don't have, and Mr. Rupp

10  doesn't have, we need to find a way you to get those pictures

11  to us.  And one way to do it is to mail them.

12    MS. GREEN:  Okay.

13    THE COURT:  That's an old reliable way.  It's a little

14  slower.  But at the moment, neither Mr. Rupp nor I can identify

15  the picture that you're describing.  But your statement to me

16  is that the picture shows the damage.  That's what you said.

17  And it shows the equipment staging; is that correct?

18    MS. GREEN:  Yes.

19    THE COURT:  Okay.  So make a note.  That's probably a

20  picture or pictures that I need to see.

21    MS. GREEN:  Okay.

22    THE COURT:  In the same document that you filed, you

23  say that work done on 2845 Magnolia driveway was unlike work --

24  other installations on the block.  How do you know that?

25    MS. GREEN:  Because what we did is we talked to the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    neighbors, and also too, you -- when you come down the street,

2    you can look and see that they did not go directly onto their

3    property.  You know, they stayed, kind of, like on the street

4    part.  With our property, they came actually up onto our

5    driveway and cut a hole into the driveway.

6         THE COURT:  Okay.  I understand that.  But again, what

7    was not done on other property doesn't help me understand what

8    did happen.  I don't think there's any doubt -- PG&E doesn't

9    doubt and doesn't question that it did do some work on your

10   property.

11        So what I'm telling you is that what's important is

12   what was done on your property, not what was not done on other

13   properties.  So the same document, the same place where I'm

14   reading says:  "An investigational report of the damage was

15   prepared by a structural engineer company and (audio

16   interference) to PG&E, shows damage and causes the type of

17   damage after viewing damage."  Where is that structural report?

18        MS. GREEN:  I also sent that report in also.

19        THE COURT:  Well, now, is that the report that that

20   was prepared by -- let me get the name.  Mr. Kisak?

21        MS. GREEN:  Yes.

22        THE COURT:  But you see, the Kisak report is dated

23   August 10th, 2019.  But your letter says an investigational

24   report was prepared by a structural engineer and forwarded.  So

25   that's the document you mean, right?  There was no other

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  report?

2          MS. GREEN:  That is the incorrect date.

3          THE COURT:  Well, I'm just looking at the document.

4  The document that you presented and filed on September 20th was

5  dated -- date of report 8/10/2019.

6          So what's important here is you're not aware of some

7  other report?  That's the only report that you're aware of, is

8  that correct?

9          MS. GREEN:  That is the only written report --

10         THE COURT:  Okay.

11         MS. GREEN:  -- of that company.  But he -- they had

12  came up before and actually looked at it also.

13         THE COURT:  Well, tell me -- let me talk about that

14  that then.  Did Mr. Kisak himself come to your property?

15         MS. GREEN:  Yes, he did.  He came with another

16  consultant with him to --

17         THE COURT:  Well, I'm --

18         MS. GREEN:  --  actually view the damage.

19         THE COURT:  I'm interested in him.  So when did he

20  come?

21         MS. GREEN:  I don't have the exact date when he came,

22  but I have his card.

23         THE COURT:  Oh, was it right about the time just after

24  the work was done?

25         MS. GREEN:  No, because I was talking to other

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    companies also too, to have them come out and look at it.  And

2    some of them did, but I was not -- they didn't seem

3    professional or reliable companies, so I didn't, you know, deal

4    with them.

5              THE COURT:  Okay.

6              MS. GREEN:  So he was not the first choice that I had

7    to come and look at our property.

8              THE COURT:  Okay.  But he's the only report that you

9    have.  This is the only report that you have?

10             MS. GREEN:  Other than the one from the Ergeon, the

11   company that fixes driveways.  He did a small report also too.

12             THE COURT:  Well, that's the Gmail that you sent in

13   that's also part of your filing.  There was a Gmail to you from

14   Ergeon.  It was dated August 14th, 2021.  And that refers to

15   the total driveway replacement and quotes and repairing and so

16   on; is that correct?

17             MS. GREEN:  Yes, and that was the second time I had

18   contacted that company.

19             THE COURT:  Well, is this the only response you have

20   from that company?

21             MS. GREEN:  He had sent an estimate also too, and a

22   mapping of what he believed the work scope would be, and a

23   description of what he was going to perform.

24             THE COURT:  So where would I find that estimate?

25             MS. GREEN:  It should be included in with the report

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    that states Ergeon.

2            THE COURT:  Well, Ms. Green, it's not.  The only

3    document that says Ergeon is just this one page that I just

4    told you, that's part of the filing that you made on September

5    20th.  Remember that I, at the Court, can only know what you

6    have provided me, and --

7            MS. GREEN:  Right.

8            THE COURT:  -- there's just one sheet of paper that

9    has the name Ergeon on it, and it in fact describes -- the

10   author describes what isn't included.  So that, for example,

11   where the writer wrote:  "Quote for replacing one of the four

12   sections", his answer was: "We would not be able to provide a

13   quote for this."  And for replacing the three-by-five section,

14   again, he writes:  "This is below our project minimum."  And

15   then he says:  "Replacing the garage door" --

16           MS. GREEN:  The floor.

17           THE COURT:  -- "in our" -- excuse me, you're

18   correct -- "floor; in our opinion, this is the best solution".

19   But it doesn't have a quote.  And then he says:  "Repairing the

20   cracks.  This is not something we would offer or advise."

21           All right.  So at least, as we're talking today, you

22   don't have anything other than that one page from --

23           MR. RUPP:  Your Honor?

24           THE COURT:  Yes, sir.

25           MR. RUPP:  If I may add, I think, just to be -- for

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    the record, I think you're reading from Docket 11278, page 11.

2                THE COURT:  Right.

3                MR. RUPP:  And I think if you flip back to page 10,

4    you'll see two estimates there, Area A and Area B. If you see

5    the website at the bottom, it's Ergeon.com.  So I'm not sure

6    what the -- it's not part of the Gmail.  I'm not sure what the

7    connection is there.  But perhaps Ms. Green could --

8                MS. GREEN:  Mr. Rupp and Your Honor, what had happened

9    is, earlier, maybe about a year and a half earlier, I had

10   contacted Ergeon, and it was a different representative at that

11   time.  I had spoken with him, and he did, you know, have -- he

12   did have someone come out and look at the damage, and then the

13   information was given to him.  And he did do a description of

14   their services in his estimate at that time.

15               The one that you are looking at, Your Honor, I believe

16   that's the one that was done after we had spoken to Ms. Jensen,

17   because we had also let her know that we had a second estimate

18   also too, and she questioned us about the name of the company

19   and how much it was.  And I didn't know for sure exactly what

20   the dollar amount was.  So I, you know, gave a ballpark figure.

21   But yeah, we basically had two estimates.  I contacted the

22   company again and asked him could he do another estimate for

23   me, but this time with the estimate to do a repair and a

24   replacement comparison.  And so I believe that's what you have

25   a part of.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Okay, Mr. Rupp, in the document that I

2  have, which is 11278, page 9 is a portion of the estimate from

3  the other consultant.  Page 10 is a partial photograph.  And

4  page 11 is the one-page email that I've been describing to Ms.

5  Green.

6    So we clearly have a problem of trying to -- hold on

7  for a second.  Let me ask you to wait on your response.  I want

8  to pull up a document on my screen because I want to look at

9  something.  I can't share this with you at the moment, but I

10  think I might be able to clarify what I've been looking at so

11  there's no confusion.  One second.

12    MR. RUPP:  I think I misspoke, Your Honor.  The

13  estimate is page 9, and the email is page 11.  I had omitted

14  page 10 from my paper copy here, because it was a photograph,

15  to save on ink.  So those are the two pages, 9 and 11.

16    THE COURT:  Okay.  Again, I'm asking you both to wait

17  a minute for me, because I'm looking at a screen.  I do see

18  this partial photograph of the thing.  And then I see the one

19  page with the email, and then I see the report from Mr. Kisak.

20  So I can't explain why we don't have the same document.  I'm

21  looking at something that I just took right off of what's on

22  our court docket.  So I didn't make this up.

23    Okay.  So Ms. Green, there's some open questions here,

24  and I have a couple more questions for you too.  So yeah, once

25  again, you do say, in the document that I was referring to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   previously, you're referring to the investigative report, the

2   possibility of structural damage from cracks in the garage

3   floor.  There was more than one estimate.

4          But you see, I don't have -- I only have one estimate,

5   and that is the estimate from Mr.  Kisak.  And that is the

6   document -- well, let me let me clarify that.  Your proof of

7   claim that you and your husband filed includes a couple of

8   pages of figures that has the term "project estimate".  And

9   that is the one that has a breakdown of amounts.  There's about

10  9,200 dollars to remove the slab, another 10,000 dollars or so

11  for the driveway installation, and a grand total -- well, the

12  fees and structural damage, and so on, of 30,877.  And that is

13  that is the claim that you are asserting.  Am I correct?

14          MS. GREEN:  That is.

15          THE COURT:  Okay.  But who prepared that project

16  estimate?

17          MS. GREEN:  That was prepared by R. Sinclair.

18          THE COURT:  By Mr. Kisak?

19          MS. GREEN:  Yes.

20          THE COURT:  By Mr. Kisak?

21          MS. GREEN:  Right.

22          THE COURT:  Right?

23          MS. GREEN:  Right.

24          THE COURT:  Okay.  And so that that document that's

25  part of your proof of claim is the same -- it really goes with

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  the investigative report that we've been talking about.  Now,

2  that sort of is all encompassing, and as I read it, that would

3  remove your driveway and install a new driveway and the rest of

4  the detail work.  Am I correct?

5          MS. GREEN:  Yes.

6          THE COURT:  Okay, now I want to go to another one of

7  your pictures or -- I'm sorry, have you looked at the

8  photograph that accompanies Kristen Jensen's declaration, that

9  was filed on October 12th, document number 11408; are you

10 familiar with that picture?  Ms. Green, are you with me?

11         MS. GREEN:  Yes.  Which picture were you referring to?

12         THE COURT:  I'm asking you if you have in front of you

13 the document called "Declaration of Kristen Jensen".  She's a

14 PG&E person.  She filed a declaration on October 12th, document

15 number 11408.

16         MS. GREEN:  11408?

17         THE COURT:  Do you have that?

18         MS. GREEN:  That was the one with the pictures?

19         THE COURT:  Yes.  Okay.  Do you have it in front of

20 you?

21         MS. GREEN:  Okay.  It's not in front of me, but I do

22 have it.

23         THE COURT:  Well, can you?  I mean, I want you to be

24 able to look at it when I'm looking at it.  I can't --

25         MS. GREEN:  I'm looking at it.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  I was going to try to do it on the screen

2  so we could look at it together, but that's a little more

3  complicated.  So if you have a copy of it, I promise you I have

4  a copy of it.  So tell me when you have in front of you.

5    MS. GREEN:  Can you see if that one is on the table?

6  The one -- the last one from Kristen Jensen with the picture --

7  pictures?

8    Your Honor, I am familiar with the pictures that --

9  the one with the pictures. I have it.  I have it.

10    THE COURT:  Okay.  So let's look at Exhibit A, and Ms.

11  Jensen says that Exhibit A was taken from Google Maps from

12  September 2015, so that would have been before the work.

13    Is that a picture of your driveway and where your cars

14  are and all?

15    MS. GREEN:  Yeah, I recognize the picture.  This is

16  the picture that I sent to her also.

17    THE COURT:  Okay.  I mean, I can see a small crack in

18  the sidewalk behind the right-hand car outside the gate.  Do

19  you see that?

20    MS. GREEN:  Is that a black and white picture or a

21  color picture?

22    THE COURT:  Well, I'm looking at a black and white.  I

23  don't know --

24    MS. GREEN:  Okay.  The one that I'm looking at, it's a

25  small, tiny black and white picture.  So -- but I have the

PG&E Corporation and Pacific Gas and Electric Company

1    original pictures that I sent her to coincide with what she's

2    talking about.

3            THE COURT:  Well, I'm not questioning your pictures at

4    the moment.  I'm interested in the pictures that she has.  Oh,

5    no, it is in color.  I have a printed copy, but I also now -- I

6    can look it up -- a color copy.  So I had printed out, on a

7    printer at home, a black and white, but I'm looking at it in

8    color.  Okay, so do you -- so my question is, though, there are

9    two cars in the driveway.  There's a gray station wagon on the

10   right.  I presume that's your car.

11           MS. GREEN:  Yes.

12           THE COURT:  Or your family car.  And then outside the

13   gate, I can see a crack, kind of a diagonal crack, but I don't

14   see anything more than that.  Is that what your driveway looked

15   like in the fall of 2015?

16           MS. GREEN:  Yeah, but I never recognized cracking in

17   there.

18           THE COURT:  Okay.  Well, I don't either.  But now go

19   down to the second picture, which is also in color, and that's

20   Exhibit B.  And Ms. Jensen says that -- she represents that

21   that was a Google Maps picture from February 2019.  There's

22   only one car in the driveway, and there's a black car on the

23   right.  Is that your car or your home?

24           MS. GREEN:  Yes.

25           THE COURT:  Okay.  Where's the damage?  Show me where

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  to find the damage in the driveway in relat --

2        MS. GREEN:  What's the date of this picture?

3        THE COURT:  Pardon me?

4        MS. GREEN:  What is the date of this picture?

5        THE COURT:  February 2019.

6        MS. GREEN:  Okay.  The damage is where the crack was

7  running from the street.  It ran up, and I did verify with

8  other people -- ran up through the lines like the -- what do

9  they call them, expansion joints in the concrete, and came up

10 onto our driveway right between where the -- like the posts

11 (ph.) are, kind of like behind my car, a crack.  And then it

12 ran up the driveway and started spreading outward, because

13 my -- my driveway -- this is a replacement driveway.  This is

14 not the original driveway that came with the house.  We

15 replaced it with a better driveway, and it wasn't cracked.

16        THE COURT:  I understand.  I understand.  But is this

17 the condition after the PG&E work was done?

18        MS. GREEN:  Yeah.  I can barely --

19        THE COURT:  Okay.

20        MS. GREEN:  -- see this picture that she -- this

21 picture, but --

22        THE COURT:  Well, what I'm asking you -- your estimate

23 of 30,000 dollars suggests to replace the entire driveway.  And

24 I can see what might be a small crack right to the left of

25 where the license plate of your car is.  But I can't see much

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    more.  You tell me, because you're familiar with your home,

2    what do you see in that picture that could help me understand

3    what you're dealing with?

4              MS. GREEN:  This is not just the driveway that's

5    cracked.  The garage floor is cracked also.

6              THE COURT:  Is there any picture of the garage floor

7    being --

8              MS. GREEN:  Floor?  Those sort of pictures, when you

9    see the pictures with just a crack, I -- I sent -- directed

10   down on the crack itself, so you can see, you know, the width

11   and how deep the crack was and everything.  The cracks -- these

12   pictures don't show it, but up the middle of that -- that

13   middle seam, the --

14             THE COURT:  Yes.

15             MS. GREEN:  -- it goes from there, and then it runs

16   under our garage door, crack in our garage door.  It came up

17   kind of like the middle of the garage, and then started

18   cracking outwards.

19             THE COURT:  Okay.  But where --

20             MS. GREEN:  That leads to --

21             THE COURT:  Ms. Green, where would I find a picture of

22   that?  I mean, we could come and inspect your house.  I don't

23   want to do that.  You haven't provided a picture of that with

24   the door open to show the crack in the garage.  So --

25             MS. GREEN:  I sent a picture, and you see a sheet of

PG&E Corporation and Pacific Gas and Electric Company

1  sheet rock with it.  That's a picture of the garage floor with

2  one of the deep cracks.  And then there was another picture

3  that was sent, and it shows, right when you're coming up, like,

4  from the back of the car in the driveway, there is a crack

5  that's running up the driveway.  These pictures --

6       THE COURT:  Well, we haven't found those pictures.

7  Mr. Rupp, have you seen the picture that Ms. Green --

8       MR. RUPP:  Your Honor.

9       THE COURT:  Yes.

10       MR. RUPP:  Your Honor, there may be two pictures that

11  Mr. Green is referring to.  I'll give you the docket and page

12  numbers.  The first is in the third response; that's Docket

13  11429-6.

14       THE COURT:  Hold on.  Hold on.  11429-6?

15       MR. RUPP:  Correct.

16       THE COURT:  Okay.  Hold on a second.  I have to see if

17  I can find that picture.  Just one second.  I tried to pull

18  these pictures out and save them ahead of time and here I am --

19       MS. GREEN:  I wish I would have knew this would have

20  been like this, I would have just taken all the pictures and

21  just mailed them to you so you could have --

22       THE COURT:  Well, I may have you do that.

23       MS. GREEN:  Yeah, that would be a better way for you

24  to understand what I'm trying to --

25       THE COURT:  Yeah.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        MS. GREEN:  -- explain to you, because I also sent the

2   pictures on more than one occasion to PG&E also, two of those,

3   and most likely the pictures Mr. Rupp is looking for.

4        THE COURT:  Mr. Rupp, the picture that you described,

5   429-6, what is the exhibit, in the document?  On the docket, I

6   see -- I can't open them all together.  I have to open them

7   one-by-one.  So what is the --

8        MR. RUPP:  Pardon me, Your Honor.  It's 11429-7.

9        THE COURT:  So is it Exhibit I?

10        MR. RUPP:  I think it's Exhibit J.

11        THE COURT:  Okay.  Let me look at that one.

12        Ms. Parada, can we activate the share-screen feature?

13        THE CLERK:  Yes, Your Honor.  I have allowed for

14   sharing -- screen sharing.

15        THE COURT:  Okay.

16        Let me see if I can -- I got to see if I can get this

17   document to open up, and then I'll -- I want to let Ms. Green

18   take a look at it and Mr. Rupp, and see where -- I mean, we

19   obviously -- we need to be on the same page, as they say --

20        MS. GREEN:  All right.

21        THE COURT:  -- but it takes a moment for the picture

22   to open up.  I'm opening it up on my laptop from the court

23   document, and then once I have it up on the screen, I'll

24   activate share the feature, so we can all be looking at the

25   same thing.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      It's taking its fancy time to open.

2      Okay, there we go.  Now, one minute.  All right.

3  Well, guess what?  It certainly does show some damage.  Okay,

4  so --

5      MS. GREEN:  Excuse me, Your Honor?  And I didn't

6  mention also too, there's a three-by-five hole cut into the --

7  what is that -- the left side of the driveway, and it was

8  covered with blacktop.  And according to Mr. Gurd and Mr.

9  Kisak, that's a part of the cause of the damage, because it was

10  not filled with the proper material after that was cut.  And so

11  it was unstable, because the rebar and the -- I guess, the

12  filling underneath was removed.

13      THE COURT:  Well, you see, a lot of that information

14  is very interesting, but it's not in his report, so I can't --

15      MS. GREEN:  It's in his written report, under factual

16  background.

17      THE COURT:  Okay.  Okay, one second.

18      Okay, Ms. Parada, let's see if we can -- if I can

19  share this screen and we can do that.  One second here.

20      Okay.  Ms. Green, can you see the picture on the

21  screen now?

22      MS. GREEN:  Yes.

23      THE COURT:  So that's the picture from inside your

24  garage; is that right?

25      MS. GREEN:  It's running from under the garage door

escribers
of 68 | operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corporation and Pacific Gas and Electric Company

1    into the garage, yes.

2         THE COURT:  And what on the left there, is that a --

3    what is that vertical --

4         MS. GREEN:  It's a piece of sheetrock.

5         THE COURT:  Just a piece of sheetrock.

6         MS. GREEN:  Um-hum.  Yes, sir.  You know, I have this

7    stuff in the garage.

8         THE COURT:  Yeah, okay.  So you're telling me that

9    that -- I want you to clarify and you would swear to this, if I

10   asked you to do it under oath, that this condition did not

11   exist before the work was done, but it occurred after PG&E did

12   the work on your driveway?

13        MS. GREEN:  I would swear to that, and that's the

14   reason why I had --

15        THE COURT:  And what was the date of this picture,

16   roughly?  Was it around the -- shortly after the work, or much

17   more recently?

18        MS. GREEN:  Let's see.  It might have a date on the

19   picture.  It was -- I know it was in 2017, and that's when I

20   called PG -- because it's on my camera, 2017.  I think in

21   April, 2017.

22        THE COURT:  Okay.  But what -- but the work was done

23   way back before then, right?

24        MS. GREEN:  No, this is about the time the work was

25   being done, because I --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        THE COURT:  Okay.

2        MS. GREEN:  -- I noticed the driveway damage and then

3   the crack, and then that's when I called PG&E to tell them that

4   something not good was happening here.  And actually, even

5   before that, one of the representatives was out there -- one of

6   them workers.  And I went out and I got his attention and had

7   him come over, and look at what was going on here, and then he

8   directed me to a PG&E sign that was posted on the side on my

9   driveway.  And he said, you need to call PG&E to talk to them

10  about this.  And so, that's when I called PG&E, and I spoke to

11  Ms. -- I think Cruz (ph.), Ms. Cruz.

12       THE COURT:  I understand.  I understand.  And then --

13  and so, oh, I've gone back to the other picture.  I'm sorry.  I

14  just -- I'm going to turn on -- well, I managed to take us back

15  to the prior picture, what I did with it.  I think I

16  inadvertently switched to a different document and I'm not

17  going to try and find it.

18       So Ms. Green, the described -- the one you showed me

19  that we were looking at together a moment ago -- I'm going to

20  turn the sharing feature off.  The picture that we just looked

21  at with the larger spacing inside the driveway -- actually,

22  excuse me, inside the garage -- that is still -- that condition

23  still exists today.

24       MS. GREEN:  Yes.

25       THE COURT:  You haven't had it repaired?

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MS. GREEN:  No.

2          THE COURT:  And the estimate -- going back to Mr.

3   Kisak's report, in his estimate, that includes that slab in the

4   garage would be, what, part of the slab removal?

5          MS. GREEN:  Yes.

6          THE COURT:  So that's -- and you understand that to be

7   the concrete slab, as distinguished from the driveway?

8          MS. GREEN:  That's for the concrete slab and the

9   driveway.

10          THE COURT:  Well, but the estimate is broken into

11   parts.  There's --

12          MS. GREEN:  Oh, okay, I see.

13          THE COURT:  -- slab removal, basic, and equipment, and

14   debris, and that's just under -- a little over 9,000 dollars.

15   And then there's the concrete driveway, et cetera.  So is that

16   what you understand to be what -- that his report is

17   suggesting, that it would be -- presumably, they'd remove the

18   slab, replace the entire slab -- we'll call it the garage --

19   the floor of the garage --

20          MS. GREEN:  Yes.

21          THE COURT:  -- for both sides, the entire slab, the

22   entire floor, correct?

23          MS. GREEN:  Yes.

24          THE COURT:  And then the entire driveway?

25          MS. GREEN:  Yes.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  And then that's the 30,000-dollar total.

2  Okay.  I have a couple of more questions for you first.  Hold

3  on one second, please.

4    Now what I don't know is, in the report that the

5  company filed, it said that they acknowledged creating the

6  three-by-five hole, and were going to repair it, and then you

7  insisted and refused to let the repair go forward.  What

8  happened there?  What -- why did you refuse to let them do that

9  repair?

10    MS. GREEN:  Your Honor, in the beginning, when they

11  came in the morning or afternoon, when they cut that hole, I

12  was in the house.  My car was in the driveway.  At no time, did

13  workers from PG&E knock on my door or anything to notify me

14  that they were coming to cut up my driveway.  Okay.

15    So after they did it, and I notified them that it was

16  messed up like that, I was there at the house, and then there

17  was a man in my driveway with a -- what did he have -- a big,

18  old giant saw and a wheelbarrow, and then he even had -- like

19  the saw was sitting on the ground, and the children were out

20  there.

21    And so I went and I told him to leave out of my

22  driveway, and go and get his boss, to have somebody come back,

23  because I needed to talk to somebody, because you cannot just

24  keep coming onto my property and just cutting it up, and I

25  don't have a right to say anything or you don't even notify me

of 68 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    that you're there to do anything?  Even to bring -- to move my

2    car, to bring the children into the house, or anything?

3            That's the reason why I told him to leave and go get

4    his supervisor so I can speak to him.

5            THE COURT:  Okay, I understand the need to take care

6    of the children and to move your car, and so on and so forth,

7    but why not have the company fix the hole?

8            MS. GREEN:  I did not stop them from fixing the hole.

9    That man left and he never came back.

10           THE COURT:  Well, so what happened to the hole?

11           MS. GREEN:  And so no one from PG&E never notified me

12   or anything.  They never came back.

13           THE COURT:  Ms. Green, I understand that.  But what

14   happened to the hole?  It's not there anymore.

15           MS. GREEN:  I'm sorry?

16           THE COURT:  What happened to the hole?

17           MS. GREEN:  The hole is still there.

18           THE COURT:  I didn't see it in the picture.

19           MS. GREEN:  No, it is still there to this day.  It's

20   still there.

21           THE COURT:  Was it on that picture that we looked at

22   from the Google site, because I --

23           MS. GREEN:  I don't -- it may have been hidden behind

24   the -- those brick posts.  But yeah, that hole is still there.

25           THE COURT:  Okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MS. GREEN:  It's still there and cracks are running

2  from it.

3    MR. RUPP:  Your Honor?

4    THE COURT:  Mr. Rupp, yes, sir?

5    MR. RUPP:  I think what Ms. Green may be referring to

6  is the three-by-five patch.  It's my understanding that that

7  was patched with asphalt as kind of a temporary fix, and the

8  offer was to provide a more permanent concrete fix.  I think

9  that's what's being discussed here.

10    MS. GREEN:  Right.

11    MR. RUPP:  I don't think there's an open hole or

12  anything on the driveway.

13    MS. GREEN:  No.

14    THE COURT:  Okay.

15    But Ms. Green, I don't -- okay.  Is that correct what

16  Mr. Rupp described?

17    MS. GREEN:  It is correct.

18    THE COURT:  Okay.  So I'm looking at the picture of

19  your driveway that Ms. Jensen prepared, which is the Exhibit B.

20  I don't know where the patch is.  Can you -- if I were standing

21  behind your car there, or standing right at the -- on the

22  sidewalk, where would I see that patch?

23    MS. GREEN:  Okay.  If you look at the left side of the

24  screen, that's the side where the gas meters are located on my

25  house.  If you look at the brick post that's right there, where

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   you see the shadow?

2           THE COURT:  Yes.

3           MS. GREEN:  You can see just a little piece of the

4   black, like another dark shadow there?  That's the corner of

5   the black patch that's there.

6           THE COURT:  Okay.  Okay.  So the patch is still there.

7           MS. GREEN:  Yes.

8           THE COURT:  There's a patch there.  It's not -- no

9   one's going to trip and break an ankle, but it's just a patch.

10  I mean, I take it if I were standing there, I would see a

11  patch, right?

12          MS. GREEN:  Right.

13          THE COURT:  Okay.  All right.  A couple of more

14  questions, and then I'm in --

15          MR. RUPP:  Your Honor?

16          THE COURT:  Yes, sir?

17          MR. RUPP:  Another photograph that Ms. Green filed in

18  her second response, this is 11355.  It's on page 4.  And that

19  provides a view of the patch.  I don't know what -- at what

20  date this photo was taken, but you can see the patch there.

21          THE COURT:  Yeah, I did see that patch.  I mean, I --

22  well, you know what?  I can see it's the picture that has the

23  saw there.

24          MR. RUPP:  That's right.

25          THE COURT:  And her car or a car is to the left.  I

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    understand. Okay. It wasn't clear to me what I was looking
2    at, but I do see that.
3            And Ms. Green, I presume that you're in agreement with
4    all of that?
5            So just go back to what you recall when the PG&E
6    equipment was there, I take it they did something that created
7    the hole that they had to patch; is that right?
8            MS. GREEN: They -- well, they never spoke to me about
9    anything. They were just out there doing what they were doing,
10   regardless if we were the property owners.
11           THE COURT: Right.
12           MS. GREEN: But they were saying, I guess, the gas
13   line, might have been under there. I don't know. It could
14   have been in the dirt to the left, and they made the hole.
15           THE COURT: Okay. But you -- when you walked out of
16   your house, and well, I mean, you saw the saw. You saw what
17   has subsequently been -- or presumably they patched it, I mean.
18   That -- Mr. Rupp was correct then in describing the location
19   which is behind the left-hand pole or pillar, and to the left
20   of the car, correct?
21           MS. GREEN: Yes.
22           THE COURT: Okay. All right. Ms. Green, the problem
23   I have with what to do at this point is that Mr. Kisak, I'll
24   take your word for it. You told me that he came to your
25   property and he -- did he come a second time or only once and

        PG&E Corporation and Pacific Gas and Electric Company

1    then prepared that report?

2         MS. GREEN:  I -- he may have came once, but another

3    representative from his company, the company that he was with

4    came -- maybe had came out also.

5         THE COURT:  There was a second person from --

6         MS. GREEN:  No, maybe Mr. Kisak maybe came once, I

7    think.

8         THE COURT:  So but two -- at least somebody, whether

9    it was the same person or a different person, from Sinclair

10   Group, came a second time, and prepared the report that

11   estimates the damage at 80,000 -- excuse me -- 30,877.

12        Now, did you read the opposition that Mr. Rupp filed

13   to this, that complains that some of the, what Mr. Kisak

14   prepared, was really just copied from somewhere else?

15        MS. GREEN:  I'm sorry?

16        THE COURT:  Mr. Rupp filed an opposition, a reply,

17   actually.  It's called a directed reply.  He filed a reply on

18   October 12th, and he did, among other things, he said that some

19   of Mr. Kisak's report is copied from other sources.  Have you

20   read that document?  Read his argument.

21        MS. GREEN:  Yes, I did.

22        THE COURT:  Well, what do you --

23        MS. GREEN:  But what I -- excuse me?

24        THE COURT:  What do you know about that?

25        MS. GREEN:  What I assumed is that he was using that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    information to back up what he was seeing also too, because he

2    did say that the reason why the concrete had failed and stuff,

3    he said it was structural load, something was on the

4    driveway -- well, something was did to the driveway, and things

5    were on the driveway that were too heavy to be on that

6    driveway, because he had also said when they did the blacktop

7    patch, they used a steamroller to come onto to the driveway and

8    roll it, and that's -- what is that -- smashing and

9    vibrating -- vibrations.

10          And then also, too, he had stated that because PG&E

11   was basically staging on a daily basis in front of our house,

12   that -- now I've sent pictures of the big old humongous trucks

13   that was out there in front of the house that what was there in

14   that area at that time was more than what the driveway could

15   take, especially since it was patched and everything.

16          And then also too, I sent a picture of a steamroller

17   backing up into my driveway.  They were -- because I have the

18   only wide driveway on the street.  Everyone else has tiny

19   driveways.

20          THE COURT:  Ms. Green, I understand the steamroller,

21   or whether that's a steamroller or a roller, we don't have to

22   worry about how it's operated.  But nobody parked a big truck

23   on your driveway.  You have no recollection -- or you didn't

24   see an eighteen-wheel truck parking on your driveway, did you?

25          MS. GREEN:  No, but at more than one occasion, I had

PG&E Corporation and Pacific Gas and Electric Company

1  to shut my gate, because they were backing into my driveway to

2  turn around on the street.

3        THE COURT:  Okay.  I understand that.  But my point

4  is, Mr. Kisak's report reads as though there's an eighteen-

5  wheel humongous -- to use your word -- humongous vehicle on

6  your driveway, and there's no proof that that ever happened.

7  So I don't know -- Mr. Kisak might be using an example of what

8  might happen if you put an eighteen-wheel large truck carrying

9  tens of thousands of pounds.  It doesn't mean that that

10  actually happened on your driveway.  You don't know one way or

11  the other, do you, the weight of what was on your driveway?

12        MS. GREEN:  No, he used that as an example in my

13  opinion.  It was an example, but it was not parked on my

14  driveway, but it was parked at the very edge of my driveway at

15  more than one occasion.  They were stationed by my house.

16        THE COURT:  Yes, but no -- you never saw an eighteen-

17  wheeler, did you?

18        MS. GREEN:  Parked on my driveway or in front of my

19  house?

20        THE COURT:  Either.  Either.  An eighteen --

21        MS. GREEN:  Yes.

22        THE COURT:  That's a pretty big --

23        MS. GREEN:  But not an eighteen-wheeler, but it was --

24  I've never seen a truck this big -- this truck was big as the

25  house, longer than --

PG&E Corporation and Pacific Gas and Electric Company

1      THE COURT:  Well, I understand.  Ms. Green, I don't

2  question it.  You're the only one of us here in this hearing

3  today, or maybe your husband, who were there, and I don't doubt

4  that you saw a big truck.  But Mr. Kisak's report, though,

5  suggests that it was an eighteen-wheeler, and it was

6  violating -- and was exceeding the proper weight on your

7  driveway, and that's speculation.  And the question --

8      MS. GREEN:  I --

9      THE COURT:  Pardon me?

10      MS. GREEN:  Excuse me, Your Honor.  I never read

11  anyplace in any of the reports that Mr. Kisak had did for us

12  that said an eighteen-wheel diesel truck parked directly on my

13  driveway.  I never -- and I never told him anything like that.

14  So I don't know where that's coming from.  That is not the

15  truth, and there's no way in the world that I would have

16  allowed an eighteen-wheel whatever to come up into my driveway.

17      THE COURT:  Well, Ms. Green, I agree with you.  I

18  wouldn't either if it were my driveway.  But the point is,

19  you're asserting a 30,000 dollar (audio interference) that PG&E

20  is resisting, and it includes an investigative report from

21  someone, who presumably knows what he's talking about, and he's

22  making some presumptions, including an average tractor-trailer

23  truck with eighteen large wheels, et cetera, et cetera, would

24  cause something to fail.

25      Now, I agree, it probably would.  But that doesn't

PG&E Corporation and Pacific Gas and Electric Company

1    mean that an eighteen-wheel truck with all these other

2    characteristics and -- was there, or that your driveway was

3    vulnerable to this hypothetical.  It just -- it makes my

4    problem more difficult.  So I've had a -- I got a couple of

5    more questions for you.

6            Did you pay Mr. Kisak for this report?

7            MS. GREEN:  I'm sorry.  I couldn't hear you.

8            THE COURT:  I said, did you -- I said I have a couple

9    more questions for you.  Did you pay Mr. Kisak for this report?

10           MS. GREEN:  Yes.

11           THE COURT:  How much did you --

12           MS. GREEN:  But -- I'm sorry.

13           THE COURT:  How much did you pay?

14           MS. GREEN:  It was 1,500 dollars, and that would be

15   refunded back, if they did the work.

16           THE COURT:  Okay.  And have they -- it's now, of

17   course, 2021.  Have they offered to redo the work, even now?

18           MS. GREEN:  Yes.  You saying, have they offered to do

19   the work?

20           THE COURT:  Well, you haven't done the work.  You'd

21   like PG&E to give you money, but they -- even if they gave you

22   money, the question's you don't have an existing bid to repair

23   the work -- repair the driveway and the garage, correct?

24           MS. GREEN:  Yes, they would do it, because I had spoke

25   with them, and let them know that even though they did the

PG&E Corporation and Pacific Gas and Electric Company

1    estimate, we still had to go into litigation, so this would not

2    be something that would happen within a year or something like

3    that.  But in the event we did not go with that company,

4    there's still Ergeon also.

5              THE COURT:  Well, but what is Ergeon's quote?  You

6    have a current quote for doing the same work?

7              MS. GREEN:  Yes, that was the -- I think the quote

8    that you were looking at, because I had got in contact with

9    them again, and explained to them what was happening, and

10   Ergeon did another quote for me.

11             THE COURT:  Okay.  But that's the document that I

12   don't have.

13             MS. GREEN:  I think that's the email that you have.

14   The Gmail.

15             THE COURT:  Well, no, but I already told you that's --

16             MS. GREEN:  That's the most recent one that was in --

17             THE COURT:  I tried to explain that that email tells

18   me the things that he -- they aren't going to do.

19             MS. GREEN:  This is awfully weird, because I did send

20   that to you.  I'm looking at the quote from Ergeon, and they

21   were saying, 18,000 and something to do that.

22             THE COURT:  Well, is that -- I do have a page -- one

23   page that has no title, that says, Area A, 8,264 dollars, Area

24   B, 9,870, total, 18,000.  Is that what you call Ergeon quote?

25             MS. GREEN:  Right, yes.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Okay.  But there's no connection.  I mean,

2     I can't make sense of it.

3          MS. GREEN:  There should have been a cover page that

4     said requote with that.

5          THE COURT:  Well, again, I'll ask Mr. Rupp, have you

6     seen something that had more information that I have just

7     described from Ergeon?

8          MR. RUPP:  Your Honor, the two pages that reference

9     Ergeon are at docket 11278, page 9, and page 11.  Those are the

10    only two I see.

11         THE COURT:  That's right.  And they -- but page 9,

12    okay.

13         Ms. Green?

14         MS. GREEN:  Yes.

15         THE COURT:  I have those two pages in front of you.

16    One is an email on Gmail --

17         MS. GREEN:  Yes.

18         THE COURT:  -- driveway replacement, and it's signed

19    by Alan Gurd of Ergeon, and then there is a one page of Area A,

20    Area B, called requote.  Are those two pages together that you

21    understand to be the quote from Ergeon?

22         MS. GREEN:  Right, yes.

23         THE COURT:  All right.  So the question for me to ask

24    you is, if Ergeon will do this job for 18,000, why should I

25    order Mr. Kisak's company to do it for 30,000 dollars?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net
of 68

PG&E Corporation and Pacific Gas and Electric Company

1      MS. GREEN:  Because Mr. Kisak has more -- in my

2  opinion -- more experience at -- when I researched him, then

3  Ergeon does.

4      THE COURT:  Okay.  Well, see, here's a

5  (indiscernible).  I understand that.  But if I'm going to

6  impose liability on PG&E for something that it contests, and

7  Mr. Rupp has been patient, and hasn't told me if the company

8  wants to challenge this any further, I'd have to award you an

9  award that compensates you, but if Ergeon will do it, that's

10  almost half of what somebody else will do, and it's not

11  appropriate for me to make anyone who has caused damage pay

12  more than is reasonably necessary.

13      And I don't know -- so my question for you, is are you

14  going to do the work, if you are paid by PG&E, or is this just

15  something that you believe that you're entitled to, and you're

16  just going to go on with the driveway in the way it is, and

17  you'd like to be compensated for your damage, if you can

18  prepare to answer that.

19      MS. GREEN:  I would like to have my driveway and my

20  garage floor repaired, because I believe -- just like Mr. Kisak

21  said, and also too, Mr. Gurd from Ergeon, that there's a

22  possibility that what happened here may have caused structural

23  damage to our property.  And then also too, what Mr. Kisak was

24  saying in their report, you do have things that are in your

25  garage that you need to have removed and stored someplace or

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    something like that, that includes that -- his quote includes

2    more than what Mr. Ergeon's quote includes.

3         THE COURT:  Well, I understand that.  I understand

4    that, Ms. Green.  But one of the concerns that I have is, that

5    I don't have -- even from Mr. Kisak, I don't have somebody who

6    has indicated in his professional experience and has signed to

7    us a report that says, in his opinion, the conditions that he

8    has described were all caused by what PG&E's contractor did.

9    PG&E says they didn't do it, but you make a persuasive case

10   that they or their contractor, ARB, maybe did do something.

11        The question is, what did they do and what will make

12   you whole?  In other words, you don't have evidence that --

13   although there is a concern that there may be structural

14   damage, there's been no analysis of any damage to anything

15   other than what we've been talking about.  Do you understand

16   what I'm saying?

17        MS. GREEN:  Mr. Kisak, I think in his report, had

18   mentioned something about going through to verify that that

19   situation -- whether or not that situation had happened.

20        THE COURT:  But he didn't.  No one came in and went

21   under the house and crawled around and checked the supports, or

22   whatever access there is to analyze any structural situation at

23   your home, correct?

24        MS. GREEN:  No.

25        THE COURT:  Yeah.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Mr. Rupp, you complain that -- and I don't fault you

2  for it -- that some of Mr. Kisak's material appears to be

3  plagiarized.  And he didn't sign it, and it's not a traditional

4  report.  And you used the hearsay word, but your client and

5  you, had your own bout of hearsay also.  Ms. Jensen has matched

6  Mr. Kisak with hearsay by telling her -- telling me what

7  somebody told her in the department.

8    The question I have for you is, I think Ms. Green has

9  persuaded me based upon what we've gotten here, is that she

10  needs to be compensated more fully than perhaps where things

11  are before this hearing.

12    Is the company willing to revisit again and try to

13  work something out, or should I schedule this for -- should I

14  take it under advisement and make a decision on this record?

15  Or do you want to supplement it?  Or do we need to turn this

16  into a bigger problem than it really is, and have a trial, and

17  have Mr. Kisak come and testify, and Mr. -- the gentleman from

18  Ergeon, and -- or are you going to accept the fact that it does

19  appear that PG&E is responsible through its subcontractor, I

20  understand, or something more than it appears from your

21  position so far?

22    MR. RUPP:  Well, Your Honor, I want to start -- Thomas

23  Rupp for the reorganized debtors.  I think what we've seen

24  today is that I don't think I have been persuaded, and I don't

25  think I could persuade my client on this record that it's --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  that there's really been liability demonstrated here.  We've

2  looked at the -- we've seen a photo of inside the garage.

3  There's a crack there.  Ms. Green described a crack running up

4  the driveway into the garage, but to be honest, I could not see

5  it from any of the photos that --

6          THE COURT:  How about the photo we just looked at?

7  The one we just looked at with the crack?  I mean, Ms. Green's

8  claim is it wasn't there before.

9          MR. RUPP:  All it said -- I see a crack in the garage.

10  I don't have a date for it, and I don't have a wider view of it

11  that is connected with the three-by-five patch.  What we have

12  looked at, we've looked at a couple of photos of Ms. Green's

13  driveway, before-and-after photos that look almost the same,

14  and -- but for that three-by-five patch, which is asphalt, and

15  PG&E or its subcontractor offered to fix that portion.

16          There's -- it's really -- there's just -- we wouldn't

17  be here.  We tried mediation once.  I would hope we could come

18  to a reasonable settlement with Ms. Green.  And they're sort of

19  two conversations that can be had here.  If it's a 30,000-

20  dollar claim to redo a driveway and redo a garage, that's one

21  conversation.  If it's a conversation to redo the three-by-five

22  patch, that's a separate conversation, more likely to reach a

23  settlement.

24          I think I don't know -- I would not prefer the Court

25  to take it under advisement yet.  I think we can supplement the

PG&E Corporation and Pacific Gas and Electric Company

1   record.  I think if anything, we can have an opportunity for

2   informal, but if necessary, formal, discovery, because I think

3   the lynchpin here is Mr. Kisak's report, that sort of connects

4   the construction with the wider damages to the driveway and the

5   garage.  And I think at the very least, I would like the

6   opportunity to speak to Mr. Kisak directly, and question him

7   whether -- informally -- whether in a deposition or whether

8   under oath before you, since he's the one that Ms. Green keeps

9   referring to as providing the basis for connecting the damage

10  between the construction on the street and the crack in the

11  garage.

12          THE COURT:  Okay.

13          Ms. -- I have another question for Ms. Green.

14          Ms. Green, clarify something -- you may have said this

15  and I'm just not keeping track of it.  Mr. Kisak came and then

16  another person came or somebody.  So you had two visitors from

17  the company.  And what I don't remember, and I want you to

18  clarify, when that second visit occurred, were you there with

19  the person?

20          MS. GREEN:  Yes, I -- yeah, I was.

21          THE COURT:  Okay.  And were the -- what I'll call the

22  larger crack that we just described that we looked in that

23  picture, Exhibit J, was that in -- was that present when that

24  person came and inspected the property and made the estimate

25  for you?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MS. GREEN:  Yes.  And Your Honor, may I say something

2     also to --

3          THE COURT:  Well, just -- yes, you can, but just

4     answer my question.  In other words --

5          MS. GREEN:  Yes.

6          THE COURT:  That person, whether it's Mr. Kisak or

7     somebody else, he physically was in your garage and saw the

8     crack --

9          MS. GREEN:  Yes.

10          THE COURT:  -- and concluded that -- okay.  What do

11     you want to say?

12          MS. GREEN:  Okay.  I was listening to what Mr. Rupp

13     had spoken about Mr. Kisak saying that this is his idea, or

14     something like that.  No, it's not.  It's my idea.  It's my

15     house.  I was here when they were working in front of our

16     house.  We were basically trapped in our house for maybe like

17     weeks at a time while they were working there in front of our

18     house with heavy equipment, your house shaking, unbelievable

19     noise, and very intense construction.

20          And it wasn't just one time they was there in front of

21     the house.  It was multiple times.  That's why I have multiple

22     pictures.  Some of the work that they did, I feel like, it

23     was -- it's unprofessional some of the things that they were

24     doing.  I don't believe they would have did this if they were

25     in Montclair or Piedmont or something like that.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    So some of the work that they did, the methods that

2    they were doing things, like cutting trenches in front of our

3    driveway, and then if you got to come in, your car drops into a

4    trench to get into the driveway.  They were doing things.

5    So -- and parking heavy -- I mean, trucks and things like that

6    in front of our house.  And even down to the thing with that

7    man coming to cut the sidewalk and everything.  Things that

8    they were doing were not professional.

9    We've had work done on our house.  We have another

10   house that was built in the back of our house, so we seen how

11   construction standards are to be done, and I don't feel like

12   this is what we had at this point.  And this shows by the fact

13   that they cut that patch into the driveway and then refused --

14   but first did not ask for permission or even notify me that

15   they were doing this, and then they did it, and then came back

16   to do it again.  You --

17         THE COURT:  Okay.

18         MS. GREEN:  -- did not notify me once, but you didn't

19   notify me twice.  And then --

20         THE COURT:  Go ahead.

21         MS. GREEN:  -- refuse to even come back.  So no, it

22   just shows that it's a lack of respect from the people that you

23   had to come here and do this kind of work.  I've had

24   construction work done.  We know about this.  But this is not

25   what we were facing.  This was something different.  And

PG&E Corporation and Pacific Gas and Electric Company

1  they --

2      THE COURT:  Ms. Green?  Okay.  Ms. Green, my point is,

3  I'm not going to comment on whether you were treated

4  differently than someone in Montclair or somewhere else,

5  because the fact is, work was done.  We all -- I've had PG&E

6  work on my street.  Everybody does.  And it's disruptive and

7  inconvenient.  And whether it's PG&E or the water company or

8  the cable company or somebody.  Construction on a street or in

9  a neighborhood is loud and dirty and dusty and that's the way

10 it is.  And I promise you it's the same in Piedmont, as in

11 Oakland.

12     But you clearly suffered some harm; there's no doubt

13 about it.  There's no doubt that, at least, something was

14 caused by PG&E, that they tried to take care of, in terms of

15 that patch.  Your explanation to me, and the documents you

16 provided, suggest to me that you are right.  Mr. Rupp is not

17 correct, and it appears that, based upon your explanation of

18 all these things -- not the noise, not the rudeness, not the

19 location, but the facts.  The fact of heavy equipment turning

20 in the driveway, stopping in the driveway, vibrating, and your

21 own testimony that the larger damage that is evident inside the

22 garage didn't happen, but for the work that was being done by

23 PG&E.

24     The question then is, is that compensable, and should

25 you and your husband recover that amount, to make you, not

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    whole, but better than you are.  And we've been somewhat

2    informal about this, because you've been on your own.  You

3    haven't -- you don't have a lawyer.  You haven't followed some

4    of more traditional rules by having your expert sign under

5    penalty of perjury, or to recite his qualifications.  And I've

6    given you that freedom, and similarly I've not really made much

7    about the fact that Ms. Jensen says that somebody told her that

8    PG&E didn't do it.  And she concludes with a couple of Google

9    pictures, that this might not be PG&E's fault.

10           I'm prepared to be of the opinion that PG&E probably

11   has more liability than it wants to admit, but I'm not prepared

12   on this record, to say, therefore, you get a 30,000-dollar

13   recovery, in part, because it may be far more than is necessary

14   based upon what is, in fact, the harm that you've suffered.  If

15   an expert said to me, I am an expert; I am a structural

16   engineer; I understand driveways, and I know that not only did

17   this crack occur, and I've measured it, there is this other

18   potential, and therefore, in my opinion, the damage is X

19   dollars.  I don't -- we're not there yet.

20           And Mr. Rupp is asking, and I'm prepared to grant the

21   request of not making a decision about anything yet.  I'm

22   prepared to let Mr. Rupp and his client decide whether they

23   want to try again to compensate you by your own agreement, and

24   I'll give him a reasonable period of time, to see if there's

25   any willingness to make a proposal -- not to start a mediation

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    again, but just to see whether someone at PG&E will say yes,

2    we'll pay Mr. and Mrs. Green X dollars for getting their work

3    done, or we'll -- we will compensate a third party who does the

4    work of a certain amount -- one or the other, before I make a

5    decision that people are stuck with.

6        But I will tell you, Ms. Green, what I'm going to

7    insist that you must do is you'll have to get somebody, whether

8    it's Mr. Kisak, or somebody at the other company, will have to

9    just state in that person's opinion that these conditions have

10   caused this consequence and the estimate of the damage is what

11   it is.  In other words, Mr. Kisak, if he were the one, would

12   say, I -- first of all, he would make it in an oath, so it's

13   under penalty of perjury.  Not that I question his honesty or

14   yours or anyone else's.  It's just that's the way you have to

15   do it.  And secondly, that he say -- it says why he is

16   qualified to express himself.  And thirdly, what his

17   professional opinion is.

18        So to state it differently, he said, I am a structural

19   engineer, or I am what I am; this is my experience.  I

20   inspected the property; this is what I observed.  I interviewed

21   the owner, who described -- you, Ms. Green -- who described the

22   work that occurred.  In my opinion, what I've observed now is

23   and was caused by the circumstances that the owner described to

24   me.  And he can read the reports also.  And then to say, in my

25   opinion, the Greens have suffered a damage to their property,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    that would require a damage recovery of -- if it's the 30,000-

2    dollar figure, it's the 30,000-dollar figure.

3         If he gives me a report like that, I will again ask

4    PG&E if they want to submit anything to the contrary, and if

5    the answer is no, then I'll make a decision based upon that.

6    If he wants -- if Mr. Rupp or the company wants to insist that

7    the expert testify so that he can be cross-examined, it's not a

8    huge expense.  In this Zoom age, we can have people testify

9    on -- from their home office and there's no significant

10   expense, but they still have to do it.

11        My job is to listen to the evidence and make a

12   decision.  It isn't to develop the evidence.  I'm not an

13   advocate.  I'm not for you or against you.  I'm not for PG&E or

14   against PG&E.  I'm just trying to learn the relevant facts.

15        So, Ms. Green, what I'm going to say is, first of all,

16   I'm going to thank you for participating and making a thorough

17   presentation.  I don't think I need you to send any further

18   pictures.  You've made it clear now what you have and what

19   documents you're relying on.

20        I'm going to give Mr. Rupp an opportunity to confer

21   with his client and to decide whether he wishes to confer with

22   you and your husband to see if there's a consensual agreement,

23   which I encourage, but I can't order.  I can't order them to

24   pay you what you think you're ordered, and nor can I do

25   anything other than make a decision based upon the evidence.

PG&E Corporation and Pacific Gas and Electric Company

1    So I'll give Mr. Rupp a period of time to see if

2    there's an agreement.  If not, I will ask him -- well, to tell

3    me -- he'll tell me that he -- I'll give him a deadline to see

4    if there's an agreement.  If he says no, there's been no

5    agreement, he doesn't have to tell me what the details are,

6    just that there is no agreement.

7    Then I will ask you to make sure and have Mr. Kisak

8    prepare a more formal analysis consistent with what I said.

9    Again, I'll repeat it to you.  If he has experience in this

10   kind of work, he knows what I'm talking about.  But it's a

11   statement in writing, under oath, that describes his

12   qualifications to express opinions about things of this nature.

13   That's typically his experience in structural matters or damage

14   analysis or whatever.  His experience of actually visiting this

15   property, and if there was someone else who did the visit, that

16   person may need to explain it.

17   And his opinion that, based upon the information he

18   has -- he wasn't there when the work was done, but he's

19   entitled to have you explain to him what you observed.  So you

20   observed the trucks, the turning around, the noise, the

21   vibration.  You, as an owner, experienced the property before

22   the work was done, and what was the situation with the work on

23   your property after the work was done.  And Mr. Kisak, or

24   whoever it is, can then conclude, as his opinion, based upon

25   what the owner said to me happened, and this having happened,

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    this is my conclusion as to damage that was caused by what

2    happened, not by an eighteen-wheel truck that wasn't there, or

3    not by some other reference material that is hypothetical.  I

4    don't want hypotheticals.  I want the real story, based upon an

5    expert.

6           And experts do this all the time.  Whether it's

7    property damage or personal injury or automobile crashes or

8    tragedies, they take the evidence, they take the consequences,

9    and they express opinions as to what the cause was and what the

10   responsibility is.  It's not a big deal for someone who knows

11   how to do it.

12          If the company is unwilling and unable -- and you are

13   unable to reach an agreement, then I'll give you a deadline for

14   that report, and then I'll give PG&E an opportunity to tell me

15   whether they wish to have a further trial, like this -- I say

16   trial, it's a hearing with that expert being examined under

17   oath, and questioned if that's what PG&E wants to do.  And then

18   based on that, I'll listen to argument and make a decision.

19          MR. RUPP:  Your Honor?

20          THE COURT:  Yes, sir?

21          MR. RUPP:  Your Honor, if I may make a suggestion, in

22   the spirit of advancing this towards a settlement.  I do think

23   that a report being on file first would advance the cause of

24   settlement between me and my client, just because the report as

25   is, as it was submitted, is fairly questionable, and is not

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    signed, and for all the other reasons we listed in our reply.

2    I do think that if Mr. Kisak would put a report on the record

3    under his name that we could have a look at, that would promote

4    settlement.

5              THE COURT:  Okay.

6              Ms. Green, do you understand what I need from you?

7              MS. GREEN:  So basically, you're saying that this

8    cannot move forward unless I go back to Mr. Kisak to get

9    another report from him, and this is basically what you and

10   PG&E is stating.

11             THE COURT:  Well, it can't go forward based upon the

12   evidence, because PG&E has a right to say the evidence is

13   incomplete.  I'm trying to explain to you, the evidence before

14   me isn't even signed.  It isn't even -- there isn't even an

15   author, and there isn't a recital of the qualifications of that

16   author.  So you can't just have a report.  I mean, I could

17   write a report on your garage, and say, I think the garage is a

18   mess, and you ought to pay 100,000 dollars.  But I'm not

19   qualified to do that.  That's why we want experts.  So yes, you

20   do have to do that.

21             Now, I can make it a little bit easy for you.  We

22   have -- or docket you for a very nominal expense, I think it's

23   ten or fifteen dollars, or something like that.  You can get a

24   copy of the conversation we just had and my oral ruling, my

25   oral comments.  And you can provide that, and Mr. Kisak and you

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    can listen to it.  And you can say to him, listen to what the

2    judge expects you, Mr. Kisak, to provide and follow his

3    instructions.  And draft and write down what you think, what

4    you heard the judge describe, what you want.

5         And Ms. Green, it may be a further imposition on you,

6    but it also may get you a lot of money without a lot of more

7    effort, if Mr. Rupp and his clients are so inclined.  I can't

8    order them to do it.  And I can't, on this record, just

9    announce, based upon everything we've heard today, that PG&E

10   has to pay you 30,000 dollars.

11        So it is important, and I don't think it's very

12   burdensome.  It is a burden.  But I think based upon the

13   preparation that you've done, the way you've expressed yourself

14   in terms of these arguments, you're familiar with the issue,

15   and you're doing a good job of representing your interests

16   here.  And I would like to follow up by telling you to follow

17   up and do that as requested.

18        MS. GREEN:  Thank you, Your Honor.

19        THE COURT:  So what I'll do, I will take this matter,

20   not under submission.  I will just -- well, let's do this.

21        Mr. Rupp, I guess what I'll do is, I'll just have a

22   continued hearing on this matter, and let Ms. Green report back

23   what progress she's made, getting what she's got to do.  And if

24   she takes my suggestion and starts Mr. Kisak to prepare that

25   report, we don't have to have a hearing to say that, but she

PG&E Corporation and Pacific Gas and Electric Company

1    can inform you of what's going to happen, and then we don't

2    have to have a hearing until we make some more progress.  Do

3    you want to do it that way, or you want to -- you have some

4    other suggestion?

5         MR. RUPP:  I'm fine with continuing the hearing.  I

6    would like some indication from Ms. Green about the progress

7    that has been made before the hearing, just to know whether

8    she's been able to get the -- a formal expert report from Mr.

9    Kisak, or whoever.

10        THE COURT:  Ms. Green, let's do this.  We have a

11   hearing in the PG&E case, routine matters, on November 9th at

12   10 o'clock.  I'll continue today's hearing to that date and

13   time.  And if before then, you have made arrangements with Mr.

14   Kisak or anyone else to prepare the report, you can simply

15   advise Mr. Rupp that.  And Mr. Rupp can inform the Court that

16   the hearing can go over to a later date.  We don't have to have

17   a hearing if progress is being made on that communication.  If

18   you feel that you don't think that's appropriate or you don't

19   want to do that, then you can discuss it with me at the

20   November 9th hearing.

21        What my recommendation to you is, is to take my advice

22   and urge Mr. -- not urge, I mean, arrange for Mr. Kisak to take

23   out the hypotheticals and put in what's missing from his

24   report, what I said, his qualifications, his experience in this

25   kind of work, and his professional conclusions.  And it can be

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    done in a written report, and it doesn't have to be filed with

2    the Court, although it could be filed with the Court.  It's up

3    to you.  More importantly, it's given to Mr. Rupp.

4            So if you choose not to do that, or believe that

5    there's some other alternative, I can discuss that with you on

6    November 9th at 10 o'clock.  If you need more time to do that,

7    or Mr. Kisak needs more time, you don't have to tell me.  You

8    can tell Mr. Rupp, and he'll inform my courtroom deputy that

9    we'll continue the hearing.

10            You're still also free on your own, and perhaps to see

11    if there's any willingness to just compromise this, without

12    going back to mediation or going back to court.  But I sense

13    from my own experience, that what Mr. Rupp is saying, it's

14    important to the company to have a more thorough report

15    available from you, as through your representative on this

16    matter, the expert.  And maybe that will facilitate a

17    consensual resolution that you'll both -- both sides will be

18    satisfied with.

19            So I'm going to conclude the hearing with that.  Thank

20    you for your participation, both sides -- you too, Mr. Rupp --

21    and preparation.

22            And I'll look forward either to further discussion of

23    this nature, by way of a status report on November 9th, or if

24    not, I'll encourage you, Ms. Green, to go ahead and follow up

25    and get that going and work with Mr. Rupp directly, and try to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  see if there can be a solution.  Okay?  Are you clear?

2          MS. GREEN:  Yes, I have a question.  Your Honor, if I

3  needed to talk to you about something, I guess, more private,

4  is there any way I could speak to you?

5          THE COURT:  No, I'm not able -- not allowed to do

6  that.  I'm not allowed to have sort of one-on-one conversations

7  with litigants.  That's why we have to do everything on the

8  record, and everything with your opponent.  So I'm afraid I

9  can't do that.  If you --

10          MS. GREEN:  But this doesn't really have to do with

11  the case, but about --

12          THE COURT:  Well, then I guess I don't know how to

13  answer that question.  I really am not supposed to do anything

14  but discuss the case.  I mean, if --

15          MS. GREEN:  It's okay then.  It's okay.

16          THE COURT:  Okay.

17          MS. GREEN:  Thank you, Mr. Rupp, for coming, and I do

18  look forward to working with you to get this resolved, but just

19  in a fair and equitable manner.  This is my desire.  I don't

20  want this to go on; I really don't.

21          THE COURT:  Okay.  Well, I appreciate your response,

22  Ms. Green.

23          Thank you, Mr. Rupp for your time.

24          This is the only matter on the calendar today.

25          Ms. Parada, I'm going to -- unless you know otherwise,

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    I'm going to conclude the hearing.

2         THE CLERK:  Yes, Your Honor.

3         THE COURT:  Okay.

4         Thank you, all.  Good night and good bye, and --

5         MR. RUPP:  Thank you, Your Honor.

6         MS. GREEN:  Good bye.

7         THE COURT:  Okay, good bye, Ms. Green, Mr. Rupp.

8      (Whereupon these proceedings were concluded)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(973)406-2250 | operations@escribers.net | www.escribers.net

1          C E R T I F I C A T I O N

2

3    I, Sharona Shapiro, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6    *Sharona Shapiro*

7

8    _____

9    /s/ SHARONA SHAPIRO, CET-492

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  October 21, 2021

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**able (6)**
3:16;12:12;14:10;
16:24;54:8;56:5
**accept (1)**
41:18
**access (1)**
40:22
**accompanies (1)**
16:8
**according (1)**
23:8
**acknowledged (1)**
27:5
**activate (4)**
2:24;3:1;22:12,24
**actually (12)**
5:16;7:7,9;8:7;9:4;
10:12,18;25:4,21;
32:17;34:10;50:14
**add (3)**
4:7;5:11;12:25
**addition (1)**
4:13
**additional (3)**
4:11,12,17
**admit (1)**
47:11
**advance (1)**
51:23
**advancing (1)**
51:22
**advice (1)**
54:21
**advise (2)**
12:20;54:15
**advisement (1)**
41:14;42:25
**advocate (1)**
49:13
**afraid (1)**
56:8
**afternoon (1)**
27:11
**again (16)**
3:14;4:23;7:9;9:6;
12:14;13:22;14:16,25;
37:9;38:5;41:12;45:16;
47:23;48:1;49:3;50:9
**against (2)**
49:13,14
**age (1)**
49:8
**ago (1)**
25:19
**agree (2)**
35:17,25
**agreement (8)**
31:3;47:23;49:22;
50:2,4,5,6;51:13
**ahead (3)**
21:18;45:20;55:24
**Alan (1)**
38:19
**alleged (1)**
4:24
**allowed (4)**
22:13;35:16;56:5,6
**almost (1)**
39:10;42:13
**alternative (1)**
55:5
**although (3)**
5:11;40:13;55:2
**among (1)**
32:18
**amount (3)**
13:20;46:25;48:4
**amounts (1)**
15:9
**analysis (3)**
40:14;50:8,14
**analyze (1)**
40:22
**ankle (1)**
30:9
**announce (1)**
53:9
**anymore (1)**
28:14
**anyplace (1)**
35:11
**appear (1)**
41:19
**appearance (2)**
2:7,14
**appears (3)**
41:2,20;46:17
**appreciate (1)**
56:21
**appropriate (2)**
39:11;54:18
**April (1)**
24:21
**ARB (1)**
40:10
**Area (7)**
13:4,4;33:14;37:23,
23;38:19,20
**Argument (3)**
5:17;32:20;51:18
**arguments (1)**
53:14
**around (4)**
24:16;34:2;40:21;
50:20
**arrange (1)**
54:22
**arrangements (1)**
54:13
**asphalt (2)**
29:7;42:14
**asserting (2)**
15:13;35:19

**assume (1)**
7:19
**assumed (1)**
32:25
**attempted (1)**
2:21
**attention (1)**
25:6
**audio (2)**
9:15;35:19
**August (2)**
9:23;11:14
**author (3)**
12:10;52:15,16
**automobile (1)**
51:7
**available (1)**
55:15
**average (1)**
35:22
**award (2)**
39:8,9
**aware (2)**
10:6,7
**awfully (1)**
37:19

## B

**back (19)**
13:3;21:4;24:23;
25:13,14;26:2;27:22;
28:9,12;31:5;33:1;
36:15;45:10,15,21;
52:8;53:22;55:12,12
**background (1)**
23:16
**backing (2)**
33:17;34:1
**ballpark (1)**
13:20
**barely (1)**
19:18
**based (13)**
6:6;41:9;46:17;
47:14;49:5,25;50:17,
24;51:4,18;52:11;53:9,
12
**basic (2)**
5:3;26:13
**basically (5)**
13:21;33:11;44:16;
52:7,9
**basis (2)**
33:11;43:9
**before-and-after (1)**
42:13
**beg (1)**
5:16
**beginning (1)**
27:10
**behalf (1)**
2:16

**behind (6)**
7:19;17:18;19:11;
28:23;29:21;31:19
**below (1)**
12:14
**Benvenutti (1)**
2:16
**best (1)**
12:18
**better (3)**
19:15;21:23;47:1
**bid (1)**
36:22
**big (8)**
27:17;33:12,22;
34:22,24,24;35:4;
51:10
**bigger (1)**
41:16
**bit (1)**
52:21
**black (7)**
17:20,22,25;18:7,22;
30:4,5
**blacktop (2)**
23:8;33:6
**block (1)**
8:24
**boss (1)**
27:22
**both (7)**
2:19,20;14:16;26:21;
55:17,17,20
**bottom (1)**
13:5
**bout (1)**
41:5
**break (1)**
30:9
**breakdown (1)**
15:9
**brick (2)**
28:24;29:25
**bring (6)**
2:6,11,20,21;28:1,2
**broken (1)**
26:10
**built (1)**
45:10
**burden (1)**
53:12
**burdensome (1)**
53:12
**bye (3)**
57:4,6,7

## C

**cable (1)**
46:8
**calendar (1)**
56:24
**CALIFORNIA (1)**

2:1
**Call (7)**
2:3;4:12;19:9;25:9;
26:18;37:24;43:21
**called (6)**
16:13;24:20;25:3,10;
32:17;38:20
**Calling (1)**
2:5
**came (21)**
9:4;10:12,15,21;
19:9,14;20:16;27:11;
28:9,12;31:24;32:2,4,4,
6,10;40:20;43:15,16,
24;45:15
**camera (12)**
2:25;3:2,2,11;4:2;
5:19,24;6:3,9;7:13,25;
24:20
**Can (62)**
2:7,14,24;3:1,5,6,8;
4:12;6:5,19,20;7:23;
8:6,14;9:2;12:5;16:23;
17:5,17;18:6,13;19:18,
24;20:10;21:17;22:12,
16,16,24;23:18,18,19,
20;28:4;29:20;30:3,20,
22;39:17;42:19,25;
43:1;44:3;48:24;49:7,
8,24;50:24;52:21,23,
25;53:1,1;54:1,14,15,
16,19,25;55:5,8;56:1
**car (19)**
6:10;7:19;17:18;
18:10,12,22,22,23;
19:11,25;21:4;27:12;
28:2,6;29:21;30:25,25;
31:20;45:3
**card (1)**
10:22
**care (2)**
28:5;46:14
**carrying (1)**
34:8
**cars (2)**
17:13;18:9
**case (4)**
40:9;54:11;56:11,14
**cause (4)**
23:9;35:24;51:9,23
**caused (7)**
39:11,22;40:8;46:14;
48:10,23;51:1
**causes (1)**
9:16
**certain (1)**
48:4
**certainly (1)**
23:3
**cetera (3)**
26:15;35:23,23
**challenge (1)**
39:8

Case: 19-30088    Doc# 11458    Filed: 10/21/21    Entered: 10/21/21 10:28:01    Page 59
of 68

**chance (1)**
5:2

**characteristics (1)**
36:2

**checked (1)**
40:21

**children (3)**
27:19;28:2,6

**choice (2)**
3:11;11:6

**choose (1)**
55:4

**circumstances (1)**
48:23

**claim (5)**
15:7,13,25;42:8,20

**clarify (6)**
5:8;14:10;15:6;24:9;
43:14,18

**clear (3)**
31:1;49:18;56:1

**clearly (2)**
14:6;46:12

**CLERK (6)**
2:4,9,11,21;22:13;
57:2

**click (1)**
3:16

**client (5)**
41:4,25;47:22;49:21;
51:24

**clients (1)**
53:7

**coincide (1)**
18:1

**color (5)**
17:21;18:5,6,8,19

**coming (6)**
21:3;27:14,24;35:14;
45:7;56:17

**comment (1)**
46:3

**comments (1)**
52:25

**communication (1)**
54:17

**companies (2)**
11:1,3

**company (22)**
9:15;10:11;11:11,18,
20;13:18,22;27:5;28:7;
32:3,3;37:3;38:25;
39:7;41:12;43:17;46:7,
8;48:8;49:6;51:12;
55:14

**company's (1)**
4:9

**comparison (1)**
13:24

**compensable (1)**
46:24

**compensate (2)**
47:23;48:3

**compensated (2)**
39:17;41:10

**compensates (1)**
39:9

**complain (1)**
41:1

**complains (1)**
32:13

**complicated (1)**
17:3

**compromise (1)**
55:11

**computer (1)**
7:8

**concern (1)**
40:13

**concerns (1)**
40:4

**conclude (3)**
50:24;55:19;57:1

**concluded (2)**
44:10;57:8

**concludes (1)**
47:8

**conclusion (1)**
51:1

**conclusions (1)**
54:25

**concrete (7)**
7:18;19:9;26:7,8,15;
29:8;33:2

**condition (3)**
19:17;24:10;25:22

**conditions (2)**
40:7;48:9

**confer (2)**
49:20,21

**confusion (1)**
14:11

**connected (1)**
42:11

**connecting (1)**
43:9

**connection (2)**
13:7;38:1

**connects (1)**
43:3

**consensual (1)**
49:22;55:17

**consequence (1)**
48:10

**consequences (1)**
51:8

**consistent (1)**
50:8

**construction (6)**
43:4,10;44:19;45:11,
24;46:8

**consultant (2)**
10:16;14:3

**contact (1)**
37:8

**contacted (3)**
11:18;13:10,21

**contests (1)**
39:6

**continue (2)**
54:12;55:9

**continued (1)**
53:22

**continuing (1)**
54:5

**contractor (2)**
40:8,10

**contrary (1)**
49:4

**conversation (4)**
42:21,21,22;52:24

**conversations (2)**
42:19;56:6

**copied (2)**
32:14,19

**copy (6)**
14:14;17:3,4;18:5,6;
52:24

**corner (2)**
3:14;30:4

**Corporation (1)**
2:6

**couple (10)**
4:22;5:8;14:24;15:7;
27:2;30:13;36:4,8;
42:12;47:8

**course (1)**
36:17

**Court (189)**
2:3,4,7,10,13,19,23;
3:4,6,8,10,14,18,21;
4:1,5;5:1,11;6:1,5,11,
14,18,24;7:3,10;8:4,8,
13,19,22;9:6,19,22;
10:3,10,13,17,19,23;
11:5,8,12,19,24;12:2,5,
8,17,24;13:2;14:1,16,
22;15:15,18,20,22,24;
16:6,12,17,19,23;17:1,
10,17,22;18:3,12,18,
25;19:3,5,16,19,22;
20:6,14,19,21;21:6,9,
14,16,22,25;22:4,9,11,
15,21,22;23:13,17,23;
24:2,5,8,15,22;25:1,12,
25;26:2,6,10,13,21,24;
27:1;28:5,10,13,16,18,
21,25;29:4,14,18;30:2,
6,8,13,16,21,25;31:11,
15,22;32:5,8,16,22,24;
33:20;34:3,16,20,22;
35:1,9,17;36:8,11,13,
16,20;37:5,11,15,17,
22;38:1,5,11,15,18,23;
39:4;40:3,20,25;42:6,
24;43:12,21;44:3,6,10;
45:17,20;46:2,51:20;
52:5,11;53:19;54:10,
15;55:2,2,12;56:5,12,

16,21;57:3,7

**courtroom (2)**
2:12;55:8

**cover (1)**
38:3

**covered (1)**
23:8

**crack (22)**
7:20;17:17;18:13,13;
19:6,11,24;20:9,10,11,
16,24;21:4;25:3;42:3,
3,7,9;43:10,22;44:8;
47:17

**cracked (3)**
19:15;20:5,5

**cracking (2)**
18:16;20:18

**cracks (5)**
12:20;15:2;20:11;
21:2;29:1

**crashes (1)**
51:7

**crawled (1)**
40:21

**created (1)**
31:6

**creating (1)**
27:5

**cross-examined (1)**
49:7

**Cruz (2)**
25:11,11

**current (1)**
37:6

**cut (7)**
9:5;23:6,10;27:11,
14;45:7,13

**cutting (2)**
27:24;45:2

**D**

**daily (1)**
33:11

**damage (30)**
8:16;9:14,16,17,17;
10:18;13:12;15:2,12;
18:25;19:1,6;23:3,9;
25:2;32:11;39:11,17,
23;40:14,14;43:9;
46:21;47:18;48:10,25;
49:1;50:13;51:1,7

**damaged (1)**
5:19

**damages (1)**
43:4

**dark (1)**
30:4

**data (1)**
7:25

**date (11)**
10:2,5,21;19:2,4;
24:15,18;30:20;42:10;

54:12,16

**dated (3)**
9:22;10:5;11:14

**day (1)**
28:19

**days (1)**
4:6

**deadline (2)**
50:3;51:13

**deal (2)**
11:3;51:10

**dealing (1)**
20:3

**debris (1)**
26:14

**debtors (2)**
2:16;41:23

**decide (2)**
47:22;49:21

**decision (7)**
41:14;47:21;48:5;
49:5,12,25;51:18

**declaration (3)**
16:8,13,14

**deep (2)**
20:11;21:2

**demonstrated (1)**
42:1

**Dennis (1)**
2:5

**department (1)**
41:7

**deposition (1)**
43:7

**deputy (1)**
55:8

**describe (2)**
8:6;53:4

**described (11)**
8:6;22:4;25:18;
29:16;38:7;40:8;42:3;
43:22;48:21,21,23

**describes (3)**
12:9,10;50:11

**describing (3)**
8:15;14:4;31:18

**description (2)**
11:23;13:13

**desire (1)**
56:19

**detail (1)**
16:4

**details (1)**
50:5

**develop (1)**
49:12

**diagonal (1)**
18:13

**diesel (1)**
35:12

**different (4)**
13:10;25:16;32:9;
45:25

Min-U-Script®

Case: 19-30088    Doc# 11458    Filed: 10/21/21    Entered: 10/21/21 10:28:01    Page 60
of 68

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(2) chance - different

**differently (2)**
46:4;48:18
**difficult (1)**
36:4
**directed (3)**
20:9;25:8;32:17
**directly (4)**
9:2;35:12;43:6;
55:25
**dirt (1)**
31:14
**dirty (1)**
46:9
**discovery (1)**
43:2
**discuss (3)**
54:19;55:5;56:14
**discussed (1)**
29:9
**discussion (1)**
55:22
**disruptive (1)**
46:6
**distinguished (1)**
26:7
**doc (1)**
6:1
**docket (8)**
4:21;13:1;14:22;
21:11,12;22:5;38:9;
52:22
**document (26)**
5:4,9,12;7:12,15;
8:22;9:13,25;10:3,4;
12:3;14:1,8,20,25;15:6,
24;16:9,13,14;22:5,17,
23;25:16;32:20;37:11
**documents (3)**
6:6;46:15;49:19
**dollar (4)**
13:20;35:19;42:20;
49:2
**dollars (12)**
15:10,10;19:23;
26:14;36:14;37:23;
38:25;47:19;48:2;
52:18,23;53:10
**done (23)**
4:19;8:23;9:7,12,12;
10:24;13:16;19:17;
24:11,22,25;36:20;
45:9,11,24;46:5,22;
48:3;50:18,22,23;
53:13;55:1
**door (6)**
12:15;20:16,16,24;
23:25;27:13
**doubt (5)**
9:8,9;35:3;46:12,13
**down (6)**
3:14;9:1;18:19;
20:10;45:6;53:3
**draft (1)**

53:3
**driveway (72)**
8:23;9:5,5;11:15;
15:11;16:3,3;17:13;
18:9,14,22;19:1,10,12,
13,13,14,15,23;20:4;
21:4,5;23:7;24:12;
25:2,9,21;26:7,9,15,24;
27:12,14,17,22;29:12,
19;33:4,4,5,6,7,14,17,
18,23,24;34:1,6,10,11,
14,14,18;35:7,13,16,
18;36:2,23;38:18;
39:16,19;42:4,13,20;
43:4;45:3,4,13;46:20,
20
**driveways (3)**
11:11;33:19;47:16
**drops (1)**
45:3
**duplicative (1)**
5:2
**dusty (1)**
46:9

**E**

**earlier (2)**
13:9,9
**easy (1)**
52:21
**edge (1)**
34:14
**effort (1)**
53:7
**eighteen (2)**
34:20;35:23
**eighteen- (2)**
34:4,16
**eighteen-wheel (6)**
33:24;34:8;35:12,16;
36:1;51:2
**eighteen-wheeler (2)**
34:23;35:5
**either (5)**
18:18;34:20,20;
35:18;55:22
**else (7)**
32:14;33:18;39:10;
44:7;46:4;50:15;54:14
**else's (1)**
48:14
**email (7)**
7:13;14:4,13,19;
37:13,17;38:16
**encompassing (1)**
16:2
**encourage (2)**
49:23;55:24
**engineer (4)**
9:15,24;47:16;48:19
**entire (5)**
19:23;26:18,21,22,

24
**entitled (2)**
39:15;50:19
**equipment (6)**
5:20;8:17;26:13;
31:6;44:18;46:19
**equitable (1)**
56:19
**Ergeon (19)**
11:10,14;12:1,3,9;
13:10;37:4,10,20,24;
38:7,9,19,21,24;39:3,9,
21;41:18
**Ergeoncom (1)**
13:5
**Ergeon's (2)**
37:5;40:2
**especially (1)**
33:15
**estimate (20)**
11:21,24;13:14,17,
22,23;14:2,13;15:3,4,5,
8,16;19:22;26:2,3,10;
37:1;43:24;48:10
**estimates (3)**
13:4,21;32:11
**et (3)**
26:15;35:23,23
**even (14)**
25:4;27:18,25;28:1;
36:17,21,25;40:5;45:6,
14,21;52:14,14,14
**event (1)**
37:3
**Everybody (1)**
46:6
**Everyone (1)**
33:18
**evidence (8)**
40:12;49:11,12,25;
51:8;52:12,12,13
**evident (1)**
46:21
**exact (1)**
10:21
**exactly (1)**
13:19
**examined (1)**
51:16
**example (4)**
12:10;34:7,12,13
**exceeding (1)**
35:6
**except (1)**
6:10
**Excuse (7)**
8:5;12:17;23:5;
25:22;32:11,23;35:10
**Exhibit (8)**
17:10,11;18:20;22:5,
9,10;29:19;43:23
**exist (1)**
24:11

**existing (1)**
36:22
**exists (1)**
25:23
**expansion (1)**
19:9
**expects (1)**
53:2
**expense (3)**
49:8,10;52:22
**experience (8)**
39:2;40:6;48:19;
50:9,13,14;54:24;
55:13
**experienced (1)**
50:21
**expert (9)**
4:24;47:4,15,15;
49:7;51:5,16;54:8;
55:16
**experts (2)**
51:6;52:19
**explain (6)**
14:20;22:1;37:17;
50:16,19;52:13
**explained (1)**
37:9
**explanation (2)**
46:15,17
**express (3)**
48:16;50:12;51:9
**expressed (1)**
53:13

**F**

**facilitate (1)**
55:16
**facing (1)**
45:25
**fact (7)**
12:9;41:18;45:12;
46:5,19;47:7,14
**facts (2)**
46:19;49:14
**factual (1)**
23:15
**fail (1)**
35:24
**failed (2)**
3:13;33:2
**fair (1)**
56:19
**fairly (1)**
51:25
**fall (1)**
18:15
**familiar (4)**
16:10;17:8;20:1;
53:14
**family (1)**
18:12
**fancy (1)**

23:1
**far (3)**
5:23;41:21;47:13
**fault (2)**
41:1;47:9
**feature (3)**
22:12,24;25:20
**February (2)**
18:21;19:5
**feel (3)**
44:22;45:11;54:18
**fees (1)**
15:12
**few (3)**
4:6,17;5:3
**fifteen (1)**
52:23
**figure (3)**
13:20;49:2,2
**figures (1)**
15:8
**file (2)**
6:19;51:23
**filed (20)**
4:6,20;5:5,7,13;6:7,
18;7:11;8:22;10:4;
15:7;16:9,14;27:5;
30:17;32:12,16,17;
55:1,2
**filing (3)**
5:23;11:13;12:4
**filings (2)**
4:12,23
**filled (1)**
23:10
**filling (1)**
23:12
**find (6)**
6:6,14;7:21,23;8:10;
11:24;19:1;20:21;
21:17;25:17
**fine (1)**
54:5
**first (16)**
4:13,16,24,25;5:7,15,
17,18;7:12;11:6;21:12;
27:2;45:14;48:12;
49:15;51:23
**fix (4)**
28:7;29:7,8;42:15
**fixes (1)**
11:11
**fixing (1)**
28:8
**flip (1)**
13:3
**floor (10)**
12:16,18;15:3;20:5,
6,8;21:1;26:19,22;
39:20
**follow (4)**
53:2,16,16;55:24
**followed (1)**

Case: 19-30088    Doc# 11458    Filed: 10/21/21    Entered: 10/21/21 10:28:01    Page 61
of 68

47:3
**formal (3)**
43:2;50:8;54:8
**forth (1)**
28:6
**forward (5)**
27:7;52:8,11;55:22;
56:18
**forwarded (1)**
9:24
**found (1)**
21:6
**four (1)**
12:11
**fourth (2)**
4:13,20
**FRANCISCO (1)**
2:1
**free (1)**
55:10
**freedom (1)**
47:6
**Friday (1)**
4:21
**front (15)**
5:9,20;16:12,19,21;
17:4;33:11,13;34:18;
38:15;44:15,17,20;
45:2,6
**fully (1)**
41:10
**further (5)**
39:8;49:17;51:15;
53:5;55:22

## G

**garage (30)**
12:15;15:2;20:5,6,
16,16,17,24;21:1;
23:24,25;24:1,7;25:22;
26:4,18,19;36:23;
39:20,25;42:2,4,9,20;
43:5,11;44:7;46:22;
52:17,17
**gas (2)**
29:24;31:12
**gate (3)**
17:18;18:13;34:1
**gave (2)**
13:20;36:21
**gentleman (1)**
41:17
**giant (1)**
27:18
**given (3)**
13:13;47:6;55:3
**gives (1)**
49:3
**Gmail (6)**
7:15;11:12,13;13:6;
37:14;38:16
**goes (2)**

15:25;20:15
**Good (9)**
2:15,19,23;25:4;
53:15;57:4,4,6,7
**Google (4)**
17:11;18:21;28:22;
47:8
**grand (1)**
15:11
**grant (1)**
47:20
**gray (1)**
18:9
**Green (210)**
2:8,11,20,21,23;3:1,
3,5,7,9,10,12,17,19,20,20,
23,24,25;4:4,6,8;5:3,
10,24;6:2,8,12,17,22,
25;7:6;8:3,5,12,18,21,
25;9:18,21;10:2,9,11,
15,18,21,25;11:6,10,
17,21,25;12:2,7,16;
13:7,8;14:5,23;15:14,
17,19,21,23;16:5,10,
11,16,18,21,21;17:5,
15,20,24;18:11,16,24;
19:2,4,6,18,20;20:4,8,
15,20,21,25;21:7,11,
19,23;22:1,17,20;23:5,
15,20,22,25;24:4,6,13,
18,24;25:2,18,24;26:1,
5,8,12,20,23,25;27:10;
28:8,11,13,15,17,19,
23;29:1,5,10,13,15,17,
23;30:3,7,12,17;31:3,8,
12,21,22;32:2,6,15,21,
23,25;33:20,25;34:12,
18,21,23;35:1,8,10,17;
36:7,10,12,14,18,24;
37:7,13,16,19,25;38:3,
13,14,17,22;39:1,19;
40:4,17,24;41:8;42:3,
18;43:8,13,14,20;44:1,
5,9,12;45:18,22;46:1,
9;48:2,6,21;49:15;52:6,
7;53:5,18,22;54:6,10;
55:24;56:2,10,15,17,
22;57:6,7
**Greens (2)**
4:24;48:25
**Green's (2)**
42:7,12
**ground (2)**
7:19;27:19
**Group (1)**
32:10
**guess (6)**
23:3,11;31:12;53:21;
56:3,12
**Gurd (3)**
23:8;38:19;39:21

## H

**half (2)**
13:9;39:10
**hand (1)**
3:14
**happen (5)**
9:8;34:8;37:2;46:22;
54:1
**happened (12)**
13:8;27:8;28:10,14,
16;34:6,10;39:22;
40:19;50:25,25;51:2
**happening (2)**
25:4;37:9
**hard (1)**
7:16
**harm (2)**
46:12;47:14
**hear (4)**
3:1,5,8;36:7
**heard (2)**
53:4,9
**hearing (17)**
2:18;35:2;41:11;
51:16;53:22,25;54:2,5,
7,11,12,16,17,20;55:9,
19;57:1
**hearsay (3)**
41:4,5,6
**heavy (4)**
33:5;44:18;45:5;
46:19
**help (2)**
9:7;20:2
**here's (1)**
39:4
**hidden (1)**
28:23
**himself (2)**
10:14;48:16
**hold (5)**
14:6;21:14,14,16;
27:2
**hole (14)**
9:5;23:6;27:6,11;
28:7,8,10,14,16,17,24;
29:11;31:7,14
**home (6)**
5:18;18:7,23;20:1;
40:23;49:9
**honest (1)**
42:4
**honesty (1)**
48:13
**Honor (27)**
2:15,21;4:10;8:3;
12:23;13:8,15;14:12;
17:8;21:8,10;22:8,13;
23:5;27:10;29:3;30:15;
35:10;38:8;41:22;44:1;
51:19,21;53:18;56:2;

57:2,5
**Honorable (1)**
2:4
**hope (1)**
42:17
**house (23)**
19:14;20:22;27:12,
16;28:2;29:25;31:16;
33:11,13;34:15,19,25;
40:21;44:15,16,16,18,
18,21;45:6,9,10,10
**huge (1)**
49:8
**humongous (3)**
33:12;34:5,5
**husband (8)**
3:22;5:5,12;7:17;
15:7;35:3;46:25;49:22
**husband's (1)**
3:25
**hypothetical (2)**
36:3;51:3
**hypotheticals (2)**
51:4;54:23

## I

**idea (2)**
44:13,14
**identify (1)**
8:14
**important (4)**
9:11;10:6;53:11;
55:14
**importantly (1)**
55:3
**impose (1)**
39:6
**imposition (1)**
53:5
**impression (1)**
5:1
**inadvertently (1)**
25:16
**inclined (2)**
2:25;53:7
**include (1)**
4:23
**included (4)**
4:21;5:22;11:25;
12:10
**includes (7)**
7:25;15:7;26:3;
35:20;40:1,1,2
**including (1)**
35:22
**incomplete (1)**
52:13
**inconvenient (1)**
46:7
**incorrect (1)**
10:2
**indicated (1)**

40:6
**indication (1)**
54:6
**indiscernible (1)**
39:5
**inform (3)**
54:1,15;55:8
**informal (2)**
43:2;47:2
**informally (1)**
43:7
**information (6)**
7:5;13:13;23:13;
33:1;38:6;50:17
**injury (1)**
51:7
**ink (1)**
14:15
**inside (5)**
23:23;25:21,22;42:2;
46:21
**insist (2)**
48:7;49:6
**insisted (1)**
27:7
**inspect (1)**
20:22
**inspected (2)**
43:24;48:20
**inspection (2)**
7:14,17
**install (1)**
16:3
**installation (1)**
15:11
**installations (1)**
8:24
**instructions (1)**
53:3
**intense (1)**
44:19
**interested (2)**
10:19;18:4
**interesting (1)**
23:14
**interests (1)**
53:15
**interference (2)**
9:16;35:19
**interviewed (1)**
48:20
**into (15)**
2:12;9:5;23:6;24:1;
26:10;28:2;33:17;34:1;
35:16;37:1;41:16;42:4;
45:3,4,13
**introduced (1)**
4:24
**investigational (1)**
9:14,23
**investigative (3)**
15:1;16:1;35:20
**issue (1)**

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(4) formal - issue

Case: 19-30088    Doc# 11458    Filed: 10/21/21    Entered: 10/21/21 10:28:01    Page 62
of 68

53:14

## J

**Jensen (9)**
2:17;13:16;16:13;
17:6,11;18:20;29:19;
41:5;47:7
**Jensen's (1)**
16:8
**job (3)**
38:24;49:11;53:15
**joining (1)**
4:1
**joints (1)**
19:9
**judge (2)**
53:2,4

## K

**keep (1)**
27:24
**keeping (1)**
43:15
**keeps (1)**
43:8
**Keller (1)**
2:16
**Kim (1)**
2:16
**kind (9)**
7:22;9:3;18:13;
19:11;20:17;29:7;
45:23;50:10;54:25
**Kisak (39)**
9:20,22;10:14;14:19;
15:5,18,20;23:9;31:23;
32:6,13;34:7;35:11;
36:6,9;39:1,20,23;40:5,
17;41:6,17;43:6,15;
44:6,13;48:8,11;50:7,
23;52:2,8,25;53:2,24;
54:9,14,22;55:7
**Kisak's (7)**
26:3;32:19;34:4;
35:4;38:25;41:2;43:3
**knew (1)**
21:19
**knock (1)**
27:13
**knows (3)**
35:21;50:10;51:10
**Kristen (4)**
2:17;16:8,13;17:6

## L

**lack (1)**
45:22
**lady (1)**
6:12
**laptop (1)**

22:22
**large (2)**
34:8;35:23
**largely (1)**
4:15;5:2
**larger (3)**
25:21;43:22;46:21
**last (3)**
4:6;6:8;17:6
**late (1)**
4:6
**later (1)**
54:16
**lawyer (1)**
47:3
**leads (1)**
20:20
**learn (1)**
49:14
**least (4)**
12:21;32:8;43:5;
46:13
**leave (2)**
27:21;28:3
**left (9)**
3:14;19:24;23:7;
24:2;28:9;29:23;30:25;
31:14,19
**left-hand (1)**
31:19
**letter (2)**
7:17;9:23
**liability (3)**
39:6;42:1;47:11
**license (1)**
19:25
**likely (2)**
22:3;42:22
**line (3)**
3:15;7:13;31:13
**lines (1)**
19:8
**listed (1)**
52:1
**listen (4)**
49:11;51:18;53:1,1
**listening (1)**
44:12
**litigants (1)**
56:7
**litigation (1)**
37:1
**little (5)**
8:13;17:2;26:14;
30:3;52:21
**load (1)**
33:3
**locate (1)**
6:21
**located (1)**
29:24
**location (2)**
31:18;46:19

**longer (1)**
34:25
**look (19)**
6:19;9:2;11:1,7;
13:12;14:8;16:24;17:2,
10;18:6;22:11,18;25:7;
29:23,25;42:13;52:3;
55:22;56:18
**looked (11)**
10:12;16:7;18:14;
25:20;28:21;42:2,6,7,
12,12;43:22
**looking (18)**
5:4;10:3;13:15;
14:10,17,21;16:24,25;
17:22,24;18:7;22:3,24;
25:19;29:18;31:1;37:8,
20
**looks (2)**
2:22;7:13
**loss (1)**
7:21
**lot (3)**
23:13;53:6,6
**loud (1)**
46:9
**lynchpin (1)**
43:3

## M

**Magnolia (2)**
5:20;8:23
**mail (1)**
8:11
**mailed (1)**
21:21
**makes (1)**
36:3
**making (3)**
35:22;47:21;49:16
**man (3)**
27:17;28:9;45:7
**managed (1)**
25:14
**manner (1)**
56:19
**many (1)**
4:17
**mapping (1)**
11:22
**Maps (2)**
17:11;18:21
**matched (1)**
41:5
**material (3)**
23:10;41:2;51:3
**matter (6)**
2:5;4:2;53:19,22;
55:16;56:24
**matters (2)**
50:13;54:11
**may (16)**

5:13;12:25;21:10,22;
28:23;29:5;32:2;39:22;
40:13;43:14;44:1;
47:13;50:16;51:21;
53:5,6
**maybe (8)**
13:9;32:4,6,6;35:3;
40:10;44:16;55:16
**mean (19)**
3:2;5:1;9:25;16:23;
17:17;20:22;22:18;
30:10,21;31:16,17;
34:9;36:1;38:1;42:7;
45:5;52:16;54:22;
56:14
**measured (1)**
47:17
**mediation (3)**
42:17;47:25;55:12
**Memorandum (1)**
5:6
**mention (1)**
23:6
**mentioned (1)**
40:18
**mess (1)**
52:18
**messed (1)**
27:16
**meters (1)**
29:24
**methods (1)**
45:1
**microphone (2)**
2:25;3:2
**middle (3)**
20:12,13,17
**might (7)**
14:10;19:24;24:18;
31:13;34:7,8;47:9
**minimum (1)**
12:14
**minute (2)**
14:17;23:2
**missing (2)**
7:24;54:23
**misspoke (1)**
14:12
**moment (5)**
8:14;14:9;18:4;
22:21;25:19
**money (3)**
36:21,22;53:6
**Montali (1)**
2:5
**Montclair (2)**
44:25;46:4
**more (37)**
4:6;7:5;14:24;15:3;
17:2;18:14;20:1;22:2;
24:17;27:2;29:8;30:13;
33:14,25;34:15;36:4,5,
9;38:6;39:1,2,12;40:2;

41:10,20;42:22;47:4,
11,13;50:8;53:6;54:2;
55:3,6,7,14;56:3
**morning (4)**
2:15,19,23;27:11
**most (3)**
4:22;22:3;37:16
**motion (1)**
5:6
**move (3)**
28:1,6;52:8
**Mrs (2)**
2:7;48:2
**much (6)**
13:19;19:25;24:16;
36:11,13;47:6
**multiple (2)**
44:21,21
**must (1)**
48:7

## N

**name (7)**
2:24;3:19,20;9:20;
12:9;13:18;52:3
**nature (1)**
50:12;55:23
**necessary (4)**
5:13;39:12;43:2;
47:13
**need (17)**
2:24;3:1;4:3;6:18;
7:5;8:8,10,20;22:19;
25:9;28:5;39:25;41:15;
49:17;50:16;52:6;55:6
**needed (2)**
27:23;56:3
**needs (2)**
41:10;55:7
**neighborhood (1)**
46:9
**neighbors (1)**
9:1
**neither (1)**
8:14
**new (1)**
16:3
**next (6)**
7:15,16,18,20;8:1,1
**night (1)**
57:4
**nobody (1)**
33:22
**noise (3)**
44:19;46:18;50:20
**nominal (1)**
52:22
**nor (2)**
8:14;49:24
**note (2)**
2:17;8:19
**noticed (1)**

Min-U-Script®

Case: 19-30088    Doc# 11458    Filed: 10/21/21    Entered: 10/21/21 10:28:01    Page 63
of 68

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(5) Jensen - noticed

25:2
**notified (2)**
27:15;28:11
**notify (5)**
27:13,25;45:14,18,
19
**November (4)**
54:11,20;55:6,23
**number (2)**
16:9,15
**numbers (2)**
6:3;21:12

## O

**Oakland (1)**
46:11
**oath (5)**
24:10;43:8;48:12;
50:11;51:17
**observed (4)**
48:20,22;50:19,20
**observing (1)**
2:17
**obviously (1)**
22:19
**occasion (3)**
22:2;33:25;34:15
**occur (1)**
47:17
**occurred (3)**
24:11;43:18;48:22
**o'clock (2)**
54:12;55:6
**OCTOBER (4)**
2:1;16:9,14;32:18
**off (2)**
14:21;25:20
**offer (3)**
4:16;12:20;29:8
**offered (4)**
4:16;36:17,18;42:15
**office (1)**
49:9
**old (3)**
8:13;27:18;33:12
**omitted (1)**
14:13
**once (7)**
14:24;22:23;31:25;
32:2,6;42:17;45:18
**one (53)**
4:3;6:10,12,25;8:11;
11:10;12:3,8,11,22;
13:15,16;14:11,18;
15:3,4,9;16:6,18;17:5,
6,6,9,24;18:2;21:2,17;
22:2,11;23:2,17,19;
25:5,5,18;27:3;28:11;
33:25;34:10,15;35:2;
37:16,22;38:16,19;
40:4,20;42:7,20;43:8;
44:20;48:4,11

**one-by-one (1)**
22:7
**one-on-one (1)**
56:6
**one-page (1)**
14:4
**ones (4)**
5:24,25;6:2,8
**one's (1)**
30:9
**only (15)**
10:7,9;11:8,9,19;
12:2,5;15:4;18:22;
31:25;33:18;35:2;
38:10;47:16;56:24
**onto (5)**
9:2,4;19:10;27:24;
33:7
**oOo- (1)**
2:2
**open (8)**
14:23;20:24;22:6,6,
17,22;23:1;29:11
**opening (1)**
22:22
**operated (1)**
33:22
**opinion (12)**
12:18;34:13;39:2;
40:7;47:10,18;48:9,17,
22,25;50:17,24
**opinions (2)**
50:12;51:9
**opponent (1)**
56:8
**opportunity (5)**
6:20;43:1,6;49:20;
51:14
**opposition (3)**
5:6;32:12,16
**Ora (2)**
2:11;3:20
**oral (2)**
52:24,25
**orally (1)**
3:18
**order (5)**
2:3;38:25;49:23,23;
53:8
**ordered (1)**
49:24
**original (2)**
18:1;19:14
**originally (1)**
5:5
**others (2)**
4:18;5:12
**otherwise (1)**
56:25
**ought (1)**
52:18
**out (15)**
6:8;11:1;13:12;18:6;

21:18;25:5,6;27:19,21;
31:9,15;32:4;33:13;
41:13;54:23
**outfit (1)**
7:22
**outside (2)**
17:18;18:12
**outward (1)**
19:12
**outwards (1)**
20:18
**over (3)**
25:7;26:14;54:16
**own (6)**
41:5;46:21;47:2,23;
55:10,13
**owner (4)**
48:21,23;50:21,25
**owners (1)**
31:10

## P

**page (28)**
5:16,16,17;7:12,15,
16;8:1;12:3,22;13:1,3;
14:2,3,4,13,13,14,19;
21:11;22:19;30:18;
37:22,23;38:3,9,9,11,
19
**pages (5)**
14:15;15:8;38:8,15,
20
**paid (1)**
39:14
**paper (2)**
12:8;14:14
**papers (2)**
4:6,11
**Parada (3)**
22:12;23:18;56:25
**paragraph (1)**
5:18
**pardon (6)**
5:16;8:3,4;19:3;
22:8;35:9
**parked (5)**
33:22;34:13,14,18;
35:12
**parking (2)**
33:24;45:5
**part (9)**
9:4;11:13;12:4;13:6,
25;15:25;23:9;26:4;
47:13
**partial (2)**
14:3,18
**participating (2)**
3:22;49:16
**participation (1)**
55:20
**parts (1)**
26:11

**party (1)**
48:3
**patch (18)**
29:6,20,22;30:5,6,8,
9,11,19,20,21;31:7;
33:7;42:11,14,22;
45:13;46:15
**patched (3)**
29:7;31:17;33:15
**patient (1)**
39:7
**pay (8)**
36:6,9,13;39:11;
48:2;49:24;52:18;
53:10
**penalty (2)**
47:5;48:13
**people (4)**
19:8;45:22;48:5;
49:8
**perform (1)**
11:23
**perhaps (3)**
13:7;41:10;55:10
**period (2)**
47:24;50:1
**perjury (2)**
47:5;48:13
**permanent (1)**
29:8
**permission (1)**
45:14
**person (11)**
6:15;7:1;16:14;32:5,
9,9;43:16,19,24;44:6;
50:16
**personal (1)**
51:7
**person's (1)**
48:9
**persuade (1)**
41:25
**persuaded (2)**
41:9,24
**persuasive (1)**
40:9
**PG (1)**
24:20
**PG&E (40)**
2:5,17;7:16;9:8,16;
16:14;19:17;22:2;
24:11;25:3,8,9,10;
27:13;28:11;31:5;
33:10;35:19;36:21;
39:6,14;40:9;41:19;
42:15;46:5,7,14,23;
47:8,10;48:1;49:4,13,
14;51:14,17;52:10,12;
53:9;54:11
**PG&E's (2)**
40:8;47:9
**ph (2)**
19:11;25:11

**photo (3)**
30:20;42:2,6
**photograph (5)**
14:3,14,18;16:8;
30:17
**photographs (2)**
4:17,22
**photos (3)**
42:5,12,13
**physically (1)**
44:7
**picture (53)**
6:15,15;7:4,16,18,18,
20,21,24,24;8:9,15,16,
20;16:10,11;17:6,13,
15,16,20,21,25;18:19,
21;19:2,4,20,21;20:2,6,
21,23,25;21:1,2,7,17;
22:4,21;23:20,23;
24:15,19;25:13,15,20;
28:18,21;29:18;30:22;
33:16;43:23
**pictures (35)**
5:19,21,22;6:9,22;
7:6,7,8,11,23;8:5,10,
20;16:7,18;17:7,8,9;
18:1,3,4;20:8,9,12;
21:5,6,10,18,20;22:2,3;
33:12;44:22;47:9;
49:18
**piece (3)**
24:4,5;30:3
**Piedmont (2)**
44:25;46:10
**pillar (1)**
31:19
**place (1)**
9:13
**plagiarized (1)**
41:3
**plate (1)**
19:25
**Please (3)**
3:13,19;27:3
**point (6)**
4:9;31:23;34:3;
35:18;45:12;46:2
**pole (1)**
31:19
**portion (2)**
14:2;42:15
**position (2)**
4:9;41:21
**possibility (2)**
15:2;39:22
**post (1)**
29:25
**postal (1)**
7:11
**posted (2)**
4:21;25:8
**posts (2)**
19:10;28:24

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(6) notified - posts

Case: 19-30088    Doc# 11458    Filed: 10/21/21    Entered: 10/21/21 10:28:01    Page 64
of 68

**potential (1)**
47:18
**pounds (1)**
34:9
**prefer (1)**
42:24
**preparation (2)**
53:13;55:21
**prepare (4)**
39:18;50:8;53:24;
54:14
**prepared (13)**
9:15,20,24;15:15,17;
29:19;32:1,10,14;
47:10,11,20,22
**present (1)**
43:23
**presentation (1)**
49:17
**presented (2)**
7:8;10:4
**presiding (1)**
2:5
**presumably (3)**
26:17;31:17;35:21
**presume (3)**
6:19;18:10;31:3
**presumptions (1)**
35:22
**pretty (1)**
34:22
**previously (1)**
15:1
**printed (2)**
18:5,6
**printer (1)**
18:7
**prior (2)**
4:22;25:15
**private (1)**
56:3
**probably (3)**
8:19;35:25;47:10
**problem (4)**
14:6;31:22;36:4;
41:16
**proceedings (1)**
57:8
**professional (5)**
11:3;40:6;45:8;
48:17;54:25
**progress (4)**
53:23;54:2,6,17
**project (3)**
12:14;15:8,15
**promise (2)**
17:3;46:10
**promote (1)**
52:3
**proof (3)**
15:6,25;34:6
**proper (2)**
23:10;35:6

**properties (1)**
9:13
**property (18)**
9:3,4,7,10,12;10:14;
11:7;27:24;31:10,25;
39:23;43:24;48:20,25;
50:15,21,23;51:7
**proposal (1)**
47:25
**provide (4)**
12:12;29:8;52:25;
53:2
**provided (3)**
12:6;20:23;46:16
**provides (1)**
30:19
**providing (1)**
43:9
**pull (2)**
14:8;21:17
**put (3)**
34:8;52:2;54:23

**Q**

**qualifications (4)**
47:5;50:12;52:15;
54:24
**qualified (2)**
48:16;52:19
**questionable (1)**
51:25
**question's (1)**
36:22
**Quote (12)**
12:11,13,19;37:5,6,7,
10,20,24;38:21;40:1,2
**quotes (1)**
11:15

**R**

**ran (3)**
19:7,8,12
**reach (2)**
42:22;51:13
**read (6)**
16:2;32:12,20,20;
35:10;48:24
**reading (2)**
9:14;13:1
**reads (1)**
34:4
**real (1)**
51:4
**really (9)**
15:25;32:14;41:16;
42:1,16;47:6;56:10,13,
20
**reason (3)**
24:14;28:3;33:2
**reasonable (2)**
42:18;47:24

**reasonably (1)**
39:12
**reasons (1)**
52:1
**rebar (1)**
23:11
**recall (1)**
31:5
**recent (1)**
37:16
**recently (1)**
24:17
**recital (1)**
52:15
**recite (1)**
47:5
**recognize (1)**
17:15
**recognized (1)**
18:16
**recollection (1)**
33:23
**recommendation (1)**
54:21
**record (9)**
3:19;13:1;41:14,25;
43:1;47:12;52:2;53:8;
56:8
**recover (1)**
46:25
**recovery (2)**
47:13;49:1
**red (1)**
3:15
**redo (4)**
36:17;42:20,20,21
**refer (1)**
8:9
**reference (2)**
38:8;51:3
**referring (6)**
14:25;15:1;16:11;
21:11;29:5;43:9
**refers (1)**
11:14
**refunded (1)**
36:15
**refuse (2)**
27:8;45:21
**refused (2)**
27:7;45:13
**regardless (1)**
31:10
**relat (1)**
19:1
**relevant (1)**
49:14
**reliable (2)**
8:13;11:3
**relying (1)**
49:19
**remember (3)**
5:8;12:5;43:17

**removal (2)**
26:4,13
**remove (3)**
15:10;16:3;26:17
**removed (2)**
23:12;39:25
**reorganized (2)**
2:16;41:23
**repair (6)**
13:23;27:6,7,9;
36:22,23
**repaired (2)**
25:25;39:20
**repairing (2)**
11:15;12:19
**repeat (1)**
50:9
**repeated (2)**
4:18,22
**replace (2)**
19:23;26:18
**replaced (2)**
19:15
**replacement (4)**
11:15;13:24;19:13;
38:18
**replacing (3)**
12:11,13,15
**replicating (1)**
4:15
**reply (4)**
32:16,17,17;52:1
**report (54)**
4:23,24;9:14,17,18,
19,22,24;10:1,5,7,7,9;
11:8,9,11,25;14:19;
15:1;16:1;23:14,15;
26:3,16;27:4;32:1,10,
19;34:4;35:4,20;36:6,
9;39:24;40:7,17;41:4;
43:3;49:3;51:14,23,24;
52:2,9,16,17;53:22,25;
54:8,14,24;55:1,14,23
**reports (2)**
35:11;48:24
**representative (3)**
13:10;32:3;55:15
**representatives (1)**
25:5
**representing (1)**
53:15
**represents (1)**
18:20
**request (1)**
47:21
**requested (1)**
53:17
**require (1)**
49:1
**requote (2)**
38:4,20
**researched (1)**
39:2

**resisting (1)**
35:20
**resolution (1)**
55:17
**resolved (1)**
56:18
**respect (1)**
45:22
**response (12)**
4:7,11,13,13,16,20,
25;11:19;14:7;21:12;
30:18;56:21
**responsibility (1)**
51:10
**responsible (1)**
41:19
**rest (1)**
16:3
**revisit (1)**
41:12
**right (43)**
2:13,23;3:4,10,21;
4:5;5:18;7:23;9:25;
10:23;12:7,21;13:2;
14:21;15:21,22,23;
18:10,23;19:10,24;
21:3;22:20;23:2,24;
24:23;27:25;29:10,21,
25;30:11,12,13,24;
31:7,11,22;37:25;
38:11,22,23;46:16;
52:12
**right-hand (1)**
17:18
**rock (1)**
21:1
**roll (1)**
33:8
**roller (1)**
33:21
**roughly (1)**
24:16
**routine (1)**
54:11
**rudeness (1)**
46:18
**rules (1)**
47:4
**ruling (1)**
52:24
**running (5)**
19:7;21:5;23:25;
29:1;42:3
**runs (1)**
20:15
**Rupp (66)**
2:6,14,15;4:5,10;
7:4,5;8:9,14;12:23,25;
13:3,8;14:1,12;21:7,8,
10,15;22:3,4,8,10,18;
29:3,4,5,11,16;30:15,
17,24;31:18;32:12,16;
38:5,8;39:7;41:1,22,

Case: 19-30088    Doc# 11458    Filed: 10/21/21    Entered: 10/21/21 10:28:01    Page 65
of 68

23;42:9;44:12;46:16;
47:20,22;49:6,20;50:1;
51:19,21;53:7,21;54:5,
15,15;55:3,8,13,20,25;
56:17,23;57:5,7

**S**

**same (12)**
5:1;8:22;9:13,13;
14:20;15:25;22:19,25;
32:9;37:6;42:13;46:10
**SAN (1)**
2:1
**satisfied (1)**
55:18
**save (2)**
14:15;21:18
**saw (10)**
7:18;27:18,19;30:23;
31:16,16,16;34:16;
35:4;44:7
**saying (8)**
31:12;36:18;37:21;
39:24;40:16;44:13;
52:7;55:13
**schedule (1)**
41:13
**scope (1)**
11:22
**screen (9)**
2:24;14:8,17;17:1;
22:14,23;23:19,21;
29:24
**seam (1)**
20:13
**second (16)**
4:14;11:17;13:17;
14:7,11;18:19;21:16,
17;23:17,19;27:3;
30:18;31:25;32:5,10;
43:18
**secondly (1)**
48:15
**section (1)**
12:13
**sections (1)**
12:12
**security (5)**
5:19,24;6:2,9;7:25
**seeing (1)**
33:1
**seem (2)**
4:18;11:2
**seemed (1)**
4:18
**select (1)**
3:13
**send (2)**
37:19;49:17
**sends (1)**
7:11
**sense (2)**

38:2;55:12
**sent (16)**
6:8;7:6,9;8:6,7;9:18;
11:12,21;17:16;18:1;
20:9;25;21:3;22:1;
33:12,16
**separate (1)**
42:22
**September (5)**
5:5;7:12;10:4;12:4;
17:12
**service (1)**
7:11
**services (1)**
13:14
**session (1)**
2:4
**settlement (5)**
42:18,23;51:22,24;
52:4
**several (1)**
4:18;5:7;7:6
**Sewer (1)**
7:13
**shadow (2)**
30:1,4
**shaking (1)**
44:18
**share (3)**
14:9;22:24;23:19
**share-screen (1)**
22:12
**sharing (3)**
22:14,14;25:20
**sheet (3)**
12:8;20:25;21:1
**sheetrock (2)**
24:4,5
**shortly (1)**
24:16
**Show (4)**
18:25;20:12,24;23:3
**showed (1)**
25:18
**showing (1)**
6:13
**shows (10)**
6:23,25;7:18,20;
8:16,17;9:16;21:3;
45:12,22
**shut (1)**
34:1
**side (4)**
23:7;25:8;29:23,24
**sides (3)**
26:21;55:17,20
**sidewalk (3)**
17:18;29:22;45:7
**sign (5)**
5:12,14;25:8;41:3;
47:4
**signed (5)**
5:13;38:18;40:6;

52:1,14
**significant (1)**
49:9
**similarly (1)**
47:6
**simply (1)**
54:14
**Sinclair (2)**
15:17;32:9
**site (1)**
28:22
**sitting (1)**
27:19
**situation (4)**
40:19,19,22;50:22
**slab (9)**
15:10;26:3,4,7,8,13,
18,18,21
**slower (1)**
8:14
**small (4)**
11:11;17:17,25;
19:24
**smashing (1)**
33:8
**solution (2)**
12:18;56:1
**somebody (12)**
27:22,23;32:8;39:10;
40:5;41:7;43:16;44:7;
46:8;47:7;48:7,8
**someone (6)**
13:12;35:21;46:4;
48:1;50:15;51:10
**someplace (1)**
39:25
**somewhat (1)**
47:1
**somewhere (2)**
32:14;46:4
**sorry (7)**
7:3;16:7;25:13;
28:15;32:15;36:7,12
**sort (5)**
16:2;20:8;42:18;
43:3;56:6
**sources (1)**
32:19
**spacing (1)**
25:21
**speak (3)**
28:4;43:6;56:4
**speaking (1)**
4:2
**specifically (1)**
5:4
**speculation (1)**
35:7
**spirit (1)**
51:22
**spoke (3)**
25:10;31:8;36:24
**spoken (3)**

13:11,16;44:13
**spreading (1)**
19:12
**staging (3)**
5:20;8:17;33:11
**standards (1)**
45:11
**standing (3)**
29:20,21;30:10
**start (6)**
3:12,13,13,17;41:22;
47:25
**started (2)**
19:12;20:17
**starts (1)**
53:24
**state (3)**
3:19;48:9,18
**stated (1)**
33:10
**statement (2)**
8:15;50:11
**statements (1)**
4:15
**states (1)**
12:1
**stating (1)**
52:10
**station (1)**
18:9
**stationed (1)**
34:15
**status (1)**
55:23
**stayed (1)**
9:3
**steamroller (4)**
33:7,16,20,21
**still (12)**
25:22,23;28:17,19,
20,24;29:1;30:6;37:1,
4;49:10;55:10
**stop (1)**
28:8
**stopping (1)**
46:20
**stored (1)**
39:25
**story (1)**
51:4
**street (3)**
4:19;6:13,16,23;7:1;
9:1,3;19:7;33:18;34:2;
43:10;46:6,8
**structural (12)**
9:15,17,24;15:2,12;
33:3;39:22;40:13,22;
47:15;48:18;50:13
**stuck (1)**
48:5
**stuff (2)**
24:7;33:2
**subcontractor (2)**

41:19;42:15
**subject (1)**
7:13
**submission (1)**
53:20
**submit (1)**
49:4
**submitted (1)**
51:25
**subsequently (1)**
31:17
**suffered (3)**
46:12;47:14;48:25
**suggest (1)**
46:16
**suggesting (1)**
26:17
**suggestion (2)**
51:21;53:24;54:4
**suggests (2)**
19:23;35:5
**supervisor (1)**
28:4
**supplement (2)**
41:15;42:25
**support (1)**
5:6
**supports (1)**
40:21
**supposed (1)**
56:13
**sure (6)**
7:7,8;13:5,6,19;50:7
**swear (1)**
24:9,13
**switched (1)**
25:16

**T**

**table (1)**
17:5
**talk (4)**
10:13;25:9;27:23;
56:3
**talked (1)**
8:25
**talking (8)**
6:20;10:25;12:21;
16:1;18:2;35:21;40:15;
50:10
**telling (5)**
9:11;24:8;41:6,6;
53:16
**tells (1)**
37:17
**temporary (1)**
29:7
**ten (1)**
52:23
**tens (1)**
34:9
**term (1)**

Case: 19-30088    Doc# 11458    Filed: 10/21/21    Entered: 10/21/21 10:28:01    Page 66
of 68

15:8
**terms (2)**
46:14;53:14
**testify (3)**
41:17;49:7,8
**testimony (2)**
4:16;46:21
**therefore (2)**
47:12,18
**third (4)**
4:12,15;21:12;48:3
**thirdly (1)**
48:16
**Thomas (2)**
2:15;41:22
**thorough (2)**
49:16;55:14
**though (4)**
18:8;34:4;35:4;
36:25
**thousands (1)**
34:9
**three-by-five (4)**
12:13;23:6;27:6;
29:6;42:11,14,21
**times (1)**
44:21
**tiny (2)**
17:25;33:18
**title (3)**
5:6,17;37:23
**today (6)**
12:21;25:23;35:3;
41:24;53:9;56:24
**today's (2)**
2:18;54:12
**together (4)**
17:2;22:6;25:19;
38:20
**told (9)**
12:4;27:21;28:3;
31:24;35:13;37:15;
39:7;41:7;47:7
**took (1)**
14:21
**total (4)**
11:15;15:11;27:1;
37:24
**towards (1)**
51:22
**track (1)**
43:15
**tractor-trailer (1)**
35:22
**traditional (2)**
41:3;47:4
**tragedies (1)**
51:8
**trapped (1)**
44:16
**treated (1)**
46:3
**trench (1)**

45:4
**trenches (1)**
45:2
**trial (3)**
41:16;51:15,16
**tried (4)**
21:17;37:17;42:17;
46:14
**trip (1)**
30:9
**truck (10)**
33:22,24;34:8,24,24;
35:4,12,23;36:1;51:2
**trucks (3)**
33:12;45:5;50:20
**truth (1)**
35:15
**Try (6)**
3:14;17:1;25:17;
41:12;47:23;55:25
**trying (2)**
14:6;21:24;49:14;
52:13
**TUESDAY (1)**
2:1
**turn (5)**
3:11;25:14,20;34:2;
41:15
**turning (2)**
46:19;50:20
**twice (1)**
45:19
**two (14)**
4:12;13:4,21;14:15;
18:9;21:10;22:2;32:8;
38:8,10,15,20;42:19;
43:16
**type (1)**
9:16
**typically (1)**
50:13

**U**

**Um-hum (1)**
24:6
**unable (2)**
51:12,13
**unbelievable (1)**
44:18
**under (17)**
5:17;20:16;23:15,25;
24:10;26:14;31:13;
40:21;41:14;42:25;
43:8;47:4;48:13;50:11;
51:16;52:3;53:20
**underneath (1)**
23:12
**unknown (1)**
8:2
**unless (2)**
52:8;56:25
**unlike (1)**

8:23
**unmuted (1)**
3:3
**unprofessional (1)**
44:23
**unstable (1)**
23:11
**unwilling (1)**
51:12
**up (32)**
4:2;6:12,15;7:1;9:4;
10:12;14:8,22;18:6;
19:7,8,9,12;20:12,16;
21:3,5;22:17,22,22,23;
27:14,16,24;33:1,17;
35:16;42:3;53:16,17;
55:2,24
**upon (12)**
6:6;41:9;46:17;
47:14;49:5,25;50:17,
24;51:4;52:11;53:9,12
**urge (2)**
54:22,22
**use (1)**
34:5
**used (3)**
33:7;34:12;41:4
**using (2)**
32:25;34:7

**V**

**various (1)**
6:6
**vehicle (1)**
34:5
**verify (2)**
19:7;40:18
**vertical (1)**
24:3
**vest (2)**
7:2,22
**vibrating (2)**
33:9;46:20
**vibration (1)**
50:21
**vibrations (1)**
33:9
**video (4)**
3:12,13,15,17
**view (3)**
10:18;30:19;42:10
**viewing (1)**
9:17
**violating (1)**
35:6
**visit (2)**
43:18;50:15
**visiting (1)**
50:14
**visitors (1)**
43:16
**vulnerable (1)**

36:3

**W**

**wagon (1)**
18:9
**wait (2)**
14:7,16
**waiting (1)**
2:20
**walked (1)**
31:15
**walking (3)**
6:12,15;7:1
**wants (5)**
39:8;47:11;49:6,6;
51:17
**water (1)**
46:7
**way (18)**
5:11;7:8;8:6,8,10,11,
13;21:23;24:23;34:10;
35:15;39:16;46:9;
48:14;53:13;54:3;
55:23;56:4
**website (1)**
13:5
**weeks (1)**
44:17
**weight (2)**
34:11;35:6
**weird (1)**
37:19
**what's (7)**
9:11;10:6;14:21;
19:2;29:9;54:1,23
**wheel (1)**
34:5
**wheelbarrow (1)**
27:18
**wheeler (1)**
34:17
**wheels (1)**
35:23
**Where's (1)**
18:25
**Whereupon (1)**
57:8
**white (4)**
17:20,22,25;18:7
**whole (2)**
40:12;47:1
**wide (1)**
33:18
**wider (2)**
42:10;43:4
**width (1)**
20:10
**Willie (1)**
3:23
**willing (1)**
41:12
**willingness (2)**

47:25;55:11
**wish (2)**
21:19;51:15
**wishes (1)**
49:21
**within (1)**
37:2
**without (2)**
53:6;55:11
**woman (2)**
7:22,23
**word (4)**
3:15;31:24;34:5;
41:4
**words (3)**
40:12;44:4;48:11
**work (41)**
4:19;6:23;8:23,23;
9:9;10:24;11:22;16:4;
17:12;19:17;24:11,12,
16,22,24;36:15,17,19,
20,23;37:6;39:14;
41:13;44:22;45:1,9,23,
24;46:5,6,22;48:2,4,22;
50:10,18,22,22,23;
54:25;55:25
**workers (2)**
25:6;27:13
**working (3)**
44:15,17;56:18
**world (1)**
35:15
**worry (1)**
33:22
**write (2)**
52:17;53:3
**writer (1)**
12:11
**writes (1)**
12:14
**writing (2)**
6:3;50:11
**written (3)**
10:9;23:15;55:1
**wrote (1)**
12:11

**Y**

**year (2)**
13:9;37:2
**yellow (1)**
7:1
**yesterday (1)**
4:21

**Z**

**Zoom (1)**
49:8

**1**

Min-U-Script®

Case: 19-30088    Doc# 11458    Filed: 10/21/21    Entered: 10/21/21 10:28:01    Page 67
of 68

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(9) terms - Zoom

**1 (1)**
5:18
**1,500 (1)**
36:14
**10 (5)**
13:3;14:3,14;54:12;
55:6
**10,000 (1)**
15:10
**100,000 (1)**
52:18
**10th (1)**
9:23
**11 (5)**
13:1;14:4,13,15;38:9
**11278 (3)**
13:1;14:2;38:9
**11355 (1)**
30:18
**11408 (3)**
16:9,15,16
**11429-6 (2)**
21:13,14
**11429-7 (1)**
22:8
**12th (3)**
16:9,14;32:18
**14th (1)**
11:14
**18,000 (3)**
37:21,24;38:24
**19 (1)**
2:1

**2**

**2015 (2)**
17:12;18:15
**2017 (3)**
24:19,20,21
**2019 (3)**
9:23;18:21;19:5
**2021 (3)**
2:1;11:14;36:17
**20th (3)**
5:5;10:4;12:5
**25th (1)**
7:12
**2845 (1)**
8:23

**3**

**3 (1)**
5:16
**30,000 (4)**
19:23;35:19;38:25;
53:10
**30,000- (2)**
42:19;49:1
**30,000-dollar (3)**
27:1;47:12;49:2
**30,877 (2)**

15:12;32:11

**4**

**4 (1)**
30:18
**429-6 (1)**
22:5

**8**

**8,264 (1)**
37:23
**8/10/2019 (1)**
10:5
**80,000 (1)**
32:11

**9**

**9 (5)**
14:2,13,15;38:9,11
**9,000 (1)**
26:14
**9,200 (1)**
15:10
**9,870 (1)**
37:24
**9th (4)**
54:11,20;55:6,23