CAIRNCROSS & HEMPELMANN
JOHN RIZZARDI (*pro hac vice*)
524 Second Avenue, Suite 500
Seattle, WA 98104-2323
Telephone: (206) 254-4444
Facsimile: (206) 587-2308
JRizzardi@cairncross.com
*Attorneys for Claimants*

THOMAS MELONE (*pro hac vice*)
ALLCO RENEWABLE ENERGY LIMITED
157 Church St., 19th Floor
New Haven, CT 06510
Telephone: (212) 681-1120
Facsimile: (801) 858-8818
Thomas.Melone@AllcoUS.com
*Attorneys for Claimants*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

In re:

PG&E CORPORATION

-and-

PACIFIC GAS AND ELECTRIC
COMPANY,

          Reorganized Debtors,

Case No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

**MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO
REORGANIZED DEBTORS' ONE
HUNDRED EIGHTH OBJECTION TO
CLAIMS (PURPA CLAIMS) BY
WINDING CREEK SOLAR LLC,
FOOTHILL SOLAR LLC, HOLLISTER
SOLAR LLC, KETTLEMAN SOLAR
LLC, VINTNER SOLAR LLC, BEAR
CREEK SOLAR LLC, and ALLCO
RENEWABLE ENERGY LIMITED**

**Date: November 9, 2021
Time: 10:00 a.m. (Pacific Time)
Place: United States Bankruptcy Court
Courtroom 17, 16th Floor
San Francisco, CA 94102**

MEMORANDUM OF POINTS AND AUTHORITIES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT.

On September 9, 2021, Pacific Gas and Electric Company ("PG&E") submitted its 108th omnibus objection directed at the claims filed by Winding Creek Solar LLC, Foothill Solar LLC, Hollister Solar LLC, Kettleman Solar LLC, Vintner Solar LLC, Bear Creek Solar LLC, and Allco Renewable Energy Limited (collectively, the "Claimants"). PG&E's objection is based "solely on the specific grounds asserted in [its] Objection." Objection at 1.

PG&E's objection is based upon its view of the whether what is known as the "Renewable Market Adjusting Tariff" or "Re-MAT" created an enforceable obligation vis-à-vis the Claimants that the Claimants can claim was breached. While that is an interesting question, it is wholly irrelevant at this point to the Claimants' claims.[1] The tariff that PG&E violated, and under which Claimants are entitled to a prepetition claim for that violation, is the AB1969 feed-in tariff ("FIT")[2] That is the only tariff relevant to all Claimants' claims. The AB1969 tariff was significantly different than the Re-MAT, and any analysis of PG&E's obligations to Claimants must be analyzed under that tariff. The Re-MAT required applicants to compete against each other and required the applicants to satisfy a host of criteria. In contrast, the AB1969 was a simple, straight-forward process. An applicant would need to submit a signed power purchase agreement at the standard rate, then known as the market price referent, proof of site control and a schematic layout for the

---

[1] The Re-MAT is relevant only as a secondary basis for the claim made by Winding Creek Solar LLC. It is irrelevant to the claims of the other Claimants.

[2] California's Feed-In Tariff named after Assembly Bill (AB) 1969 (Yee, Stats. 2006, ch. 731) adding Cal. Pub. Utils. Code 399.20 to the Public Utilities Code which required utilities to buy electricity from renewable energy facilities at the utility's fixed avoided-cost price over a long term such as twenty years. The PG&E AB1969 FIT was discontinued and replaced by the Re-MAT effective July 24, 2013. Feed-in tariff: fixed electricity prices that are paid to renewable energy producers over a specified term for each unit of energy produced or injected into the electricity grid; California law required utilities to file tariffs permitting renewable energy facilities to sell their energy to the utility at a fixed avoided-cost price over a long term such as twenty years.

CLAIMANTS' OPPOSITION TO 108TH OMNIBUS OBJECTION (PURPA CLAIMS)

solar facility. Then the tariff required PG&E to sign the contract. Because PG&E has simply gotten its focus entirely wrong, PG&E's objection must be denied.

In California a tariff is the law. A state-filed tariff "has the force and effect of a statute …such tariffs are law." *Pink Dot, Inc., v. Teleport Commc'ns Grp.*, 89 Cal. App. 4th 407, 416 (2001) citing *Dyke Water Co. v. Pub. Utils Comm'n.*, 56 Cal. 2d 105, 123 (1961). While it was in effect the AB1969 FIT obligated PG&E to provide a 20-year electricity purchase contract to all qualified applicants. Each of the Claimants were qualified applicants and timely applied for a contract under the AB1969 FIT while it was still in effect. PG&E wrongfully refused to provide the contract required. Thus PG&E breached the obligation imposed on it under the tariff for the benefit of Claimants. PG&E's refusal to provide the contract required by the tariff also was a breach of a firm offer by PG&E for the purchase of goods under the section 2205 of the California Commercial Code. The same result obtains under PG&E's obligations under PURPA, but for separate reasons. However, Claimants need not look solely to PURPA as a basis for a cause of action against PG&E, because both PG&E's failure to comply with the tariffs imposed by State law and the California Commercial Code provide sufficient and independent bases for Claimants' claims. Those are the bases for the Claimants' claims, not the Re-MAT as PG&E erroneously asserts.[3]

## II.    STATEMENT OF FACTS.

PG&E's objection correctly states that there were two long-term contract PURPA programs in California—the AB1969 FIT and the ReMAT. PG&E Obj. at 3. PG&E is also correct that the ReMAT became effective in July 2013. The exact date was July 24, 2013.

---

[3] As further described herein, in the case of the AB1969 FIT, the obligation on PG&E created under state law coincides with the legally enforceable obligation created under federal law under section 210 of the Public Utility Regulatory Policies Act, Pub. L. No. 95-617, 92 Stat. 3117 ("PURPA"), requiring PG&E to purchase all output from Claimants' facilities. *Windham Solar LLC,* 157 FERC ¶ 61,134 (2016).

404427779.DOCX;4}
3
CLAIMANTS' OPPOSITION TO 108TH OMNIBUS OBJECTION (PURPA CLAIMS)

Starting on June 7, 2013, and ending on July 22, 2013, while the AB1969 FIT was still in effect, the Claimants executed the standard *AB1969 FIT* power purchase agreement ("PPA") and submitted them to PG&E with all required documentation for each facility of the Claimants. Each facility, and the respective owner, met all the requirements of the AB1969 FIT.[4] Claimants were eligible for, entitled to, and timely submitted all the required contracts and information to PG&E in 2013 while the AB1969 FIT was still in effect, triggering PG&E's legal obligations under three separate, but overlapping, legal regimes: PURPA, 16 U.S.C. § 824a-3 & 18 C.F.R. Part 292, Cal. Pub. Utils. Code § 399.20 and PG&E's tariffs, the latest of which is also a breach of PG&E's obligations under California Commercial Code section 2205. Examples of the PPAs submitted by Claimants pursuant to PG&E's AB1969 FIT are attached to the Melone Decl. at Exhibit B.

PG&E refused to provide the contracts as required by AB1969 FIT, thus breaching its obligations under PURPA, Cal. Pub. Utils. Code § 399.20, PG&E's tariffs and the California Commercial Code. The Claimants' claims are claims for damages for breach by PG&E of those obligations under PURPA,[5] Cal. Pub. Utils. Code § 399.20, PG&E's tariffs and the California Commercial Code.

The pages of discussion that PG&E's objection devotes to the Re-MAT and *Winding Creek Solar LLC v. Peevey*, 293 F. Supp. 3d 980 (N.D. Cal. 2017) (Donato, J.) *aff'd sub nom., Winding Creek Solar LLC v. Peterman*, 932 F.3d 861 (9th Cir. 2019) are simply a distraction. There, the Court determined that California failed to properly implement PURPA, but declined to order equitable relief to remedy this failure, and instead stated that the relief plaintiff sought—the contract for the sale of its energy—was an "as-applied" claim which must be brought in state court under PURPA section 210(g). On July 29, 2019, the Ninth Circuit affirmed the district court's

---

[4] Later in 2013, Winding Creek Solar LLC also submitted the standard form documentation for PPA to PG&E under California's FIT replacement program, the Re-MAT.

[5] The Public Utility Regulatory Policies Act, Pub. L. No. 95-617, 92 Stat. 3117 ("PURPA").

conclusion that the denial of a contract to Plaintiffs was unlawful, and did not disturb (under an abuse of discretion standard) the district court's direction that Plaintiffs must seek the contract in state court.

**III. Claimants' Cause Of Action Is Based Upon A Breach Of PG&E's Obligations Under The California Commercial Code, PG&E's Tariffs, Cal. Pub. Utils. Code § 399.20 and PURPA.**

At all relevant times between June 7, 2013, and ending on July 22, 2013, PG&E had in full force and effect the AB1969 FIT. What is generically referred to as the PG&E AB1969 FIT was comprised of two separate tariff sheets— "SCHEDULE E—SRG-SMALL RENEWABLE GENERATOR PPA" (referred to as the E-SRG tariff)" and "SCHEDULE E—PWF-SECTION 399.20 PPA" referred to as the E-PWF tariff.[6] *See* Exhibit B to the Declaration of Thomas Melone. A list of Power Purchase Agreements executed and transmitted by Claimants to PG&E between June 7, 2013 and July 22, 2013 is attached to the Melone Declaration at Exhibit A.

**A. PG&E's Breach Under Section 2205 Of The California Commercial Code.**

California Commercial Code section 2205 provides:

(a) An offer by a merchant to buy or sell goods in a signed writing which by its terms gives assurance that it will be held open is not revocable, for lack of consideration, during the time stated or if no time is stated for a reasonable time, but in no event may such period of irrevocability exceed three months; but any such term of assurance on a form supplied by the offeree must be separately signed by the offeror.

PG&E is a merchant under the California Commercial Code. It is a buyer and seller of electricity. Electricity is a good under the California Commercial Code. *Baldwin-Lima-Hamilton Corp. v. Superior Court*, 208 Cal. App. 2d 803, 819 (Cal. Ct. App. 1962) ("Electricity is a commodity which, like other goods, can be manufactured, transported and sold.")[7] PG&E's

---

[6] The E-PWF tariff was originally limited to water and wastewater entities, but that limitation was repealed by the California Legislature in 2008 effective January 1, 2009. SB 380 (Kehoe)(Stats. 2008, Ch. 544).

[7] Section 2105(1) of the California Commercial Code defines goods as: "all things . . . which are movable at the time of identification to the contract for sale . . ." C.C.C. § 2105(1). The electricity

CLAIMANTS' OPPOSITION TO 108TH OMNIBUS OBJECTION (PURPA CLAIMS)

404427779.DOCX:4

AB1969 tariff constitutes a firm offer to buy electricity from applicants that qualify under the AB1969 tariff. The Claimants qualified and timely submitted all required documentation to accept PG&E's firm offer.

California Commercial Code section 2206 provides:

> (1) Unless otherwise unambiguously indicated by the language or circumstances
> (a) An offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances;

The Claimants' submission of all required documentation under the AB1969 tariff to PG&E constituted a reasonable medium of acceptance under the circumstances. At that point in time, a legally-enforceable contract was formed between the Claimants and PG&E.

PG&E's repudiation of its obligation to purchase the goods constituted a breach of contract under Cal. Com. Code section 2610, which provides:

> When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may (a) For a commercially reasonable time await performance by the repudiating party; or (b) Resort to any remedy for breach (Section 2703 or Section 2711), even though he has notified the repudiating party that he would await the latter's performance and has urged retraction; and (c) In either case suspend his own performance or proceed in accordance with the provisions of this division on the seller's right to identify goods to the contract notwithstanding breach or to salvage unfinished goods (Section 2704).

Cal. Com. Code section 2703 provides:

> Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract (Section 2612), then also with respect to the whole undelivered

---

manufactured by each of the Claimants' projects is separately identifiable and measured. The electricity will pass though the PG&E meter at the project at which point it is identified to the contract for sale with PG&E and at which time the ownership of the electricity transfers to PG&E. The electricity will then move through PG&E's distribution system and, to the extent not otherwise used on PG&E's system, be delivered by PG&E to its customers where it will be measured again as PG&E delivers it for use. Electricity also easily meets the movability requirement. After it is generated, the electric current moves through a network of transmission and distribution systems before ultimately reaching the customer's location. At the time the electricity is identified to the contract, it is literally moving, and it remains movable for some period of time thereafter. The electricity continues to move through PG&E's system until it is ultimately put to use.

404427779.DOCX:4    6
CLAIMANTS' OPPOSITION TO 108TH OMNIBUS OBJECTION (PURPA CLAIMS)

balance, the aggrieved seller may (a) Withhold delivery of such goods; (b) Stop delivery by any bailee as hereafter provided (Section 2705); (c) Proceed under the next section respecting goods still unidentified to the contract; (d) Resell and recover damages as hereafter provided (Section 2706); (e) Recover damages for nonacceptance (Section 2708) or in a proper case the price (Section 2709); (f) Cancel.

Cal. Com. Code section 2708 provides:

(1) Subject to subdivision (2) and to the provisions of this division with respect to proof of market price (Section 2723), the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this division (Section 2710), but less expenses saved in consequence of the buyer's breach. (2) If the measure of damages provided in subdivision (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this division (Section 2710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

Under section 2708 of the California Commercial Code, the Claimants are entitled to the profit together with incidental damages for PG&E's breach of its obligation under the contract that was formed under sections 2205 and 2206 of the California Commercial Code.

**B. PG&E's Breach Of Its Obligations Under Its Tariffs**.

Again, the relevant tariff that gave rise to PG&E's obligations was the AB1969 tariff – not the ReMAT. The AB1969 FIT obligated PG&E to provide a 20-year electricity purchase contract to all qualified applicants. Each of the Claimants were qualified applicants and timely applied for a contract under the AB1969 FIT while it was in effect. PG&E wrongfully refused to provide the contract required. Thus PG&E breached the obligation imposed on it under the tariff for the benefit of Claimants. The Claimants are entitled to damages it incurred as a direct result of PG&E's breach of its tariff obligations.

**C. PG&E's Breach Of Its Obligations Under Cal. Pub. Utils. Code 399.20.**

Cal. Pub. Utils. Code 399.20 obligated PG&E to provide a 20-year electricity purchase contract to all qualified applicants. Each of the Claimants were qualified applicants and timely applied for a contract under Cal. Pub. Utils. Code 399.20 (which at relevant times was the AB1969 FIT). PG&E wrongfully refused to provide the contract required. Thus PG&E breached the obligation imposed on it under the statute for the benefit of Claimants. The Claimants are entitled to damages it incurred as a direct result of PG&E's breach of its statutory obligations.

**D. PG&E's Breach Of Its Legally Enforceable Obligation Under PURPA Should be Adjudicated in State Court**.

PG&E's obligation under PURPA arises under federal law when a PURPA "Qualifying Facility" ("QF"), here a series of small renewable generation projects, unconditionally offers to sell its output to the utility. Each Claimant formed such a "legally enforceable obligation" ("LEO") in 2013 when it committed to provide energy to PG&E for a 20-year period. When these LEOs were created, PG&E became obligated by federal law to purchase the Claimants' energy at the utility's then-prevailing avoided-cost rate, which was the rate fixed in the PG&E AB1969 FIT. *Windham Solar LLC,* 157 FERC ¶ 61,134 (2016).

The federal cases discussed in PG&E's objection never stated that there was no cause of action for breach of a LEO. Rather those federal courts treated the cause of action as an "as-applied" claim which must be brought in *state* court under PURPA section 210(g).[8] The cases cited by PG&E conflate an action under section 210(g) of PURPA with an action under section 210(h) of PURPA or under the Federal Power Act (which is the *Winding Creek* federal case and the *Allco Renewable Energy Limited* First Circuit case). The *Allco* case sought to bring a federal cause of action in *federal* court under the Federal Power Act against the local utility. There was

---

1    never any dispute that actions against the local utility could be brought in state court under PURPA

2    section 210(g).   The plaintiffs in those cases sought to exhaust their federal remedies before

3    proceeding in state court.

4           Claimants Foothill Solar LLC, Kettleman Solar LLC, Hollister Solar LLC, Vintner Solar

5    LLC, Bear Creek Solar LLC, Winding Creek Solar LLC and Allco Renewable Energy Limited are

6    the respective owners and developers of the solar electric generating facilities listed on Exhibit A

7    to the Complaint that was attached to each claim.   Each Claimant is a "qualifying small power

8    producer" because each is the "owner" or "operator" of a "qualifying small power production

9    facility." 16 U.S.C. § 796(17)(D).   Each facility is a "qualifying small power production facility"

10   or "QF" entitled to PURPA benefits.[9][10]

11          Claimants agreed to sell the energy and capacity for a 20-year term from their solar QFs to

12   PG&E using contracts and rates published under PG&E's CPUC-approved tariffs that were in

13   effect when the agreement was made.   Those tariffs determined the rates over a specified term of

14   PG&E's compliance with the "must-take" obligation imposed by federal law under section 210 of

15   PURPA and by state law under California Public Utilities Code section 399.20.   Claimants' 2013

16   agreement to sell created "legally enforceable obligations" requiring PG&E to purchase the energy

17   and capacity at the rates and terms set forth in those tariffs.   PG&E wrongly refused to execute

18   written contracts thus repudiating its obligation to purchase the energy and capacity from

19   Claimants' facilities.

20

21

22   [9] "[Q]ualifying small power production facilit[ies]" under the statute and "Qualifying Facilities"
     or "QFs" under FERC regulations, *see* 16 U.S.C. §796(17)(C); 18 C.F.R. §292.203.

23   [10] PG&E states that none of the Claimants have ever developed "solar plants" capable of
     providing energy. See Objection at 9, FN 7.  The existence of the plants has no bearing on

24   whether PG&E breached its obligations under the tariff itself. Indeed, PPAs were a precondition
     to building those plants, which are then funded by the execution on those contracts to fund the

25   building of the plants.

     404427779.DOCX:4                                 9

26                               CLAIMANTS' OPPOSITION TO 108TH OMNIBUS OBJECTION (PURPA CLAIMS)

PURPA section 210(g)(2) provides that "[a]ny person . . . may bring an action against *any electric utility*" in state court "to enforce *any requirement* established by a State regulatory authority" under its obligation to implement PURPA. 16 U.S.C. § 824a-3(g)(2) (emphasis added). PURPA section 210(f)(1) establishes that FERC's PURPA rules are the law of the State and, by operation of PURPA section 210(f)(1), are a requirement established by a State regulatory authority without any further action.[11]  As the law of each State, PURPA sections 123 and 210(g)(2) require "the state courts . . . to heed the constitutional command that the policy of the federal Act is the prevailing policy in every state," *FERC v. Mississippi,* 456 U.S. 742, 760 (1982) (internal quotations and citations omitted), which "require electricity utilities to purchase electricity from, and to sell it to, qualifying cogenerator and small power production facilities," *id*. at 759-760.

Any such action brought by QFs, such as Claimants, is to be brought in accordance with PURPA section 123 (16 U.S.C. § 2633), which broadly authorizes any person to bring an action to enforce federal rights under PURPA. 16 U.S.C. § 2633(c)(1) ("Any person (including the Secretary) may bring an action to enforce the requirements of this title in the appropriate State court, except that no such action may be brought in a State court with respect to a utility which is a Federal agency.") *See also* Conference Report at 7817 ("review and enforcement is primarily in the State courts.").[12]

---

[11] The definition of "state regulatory authority" is broad, encompassing the State itself, the state legislature and any state agency that has ratemaking authority.  Under PURPA, 16 U.S.C. § 2602(17), the term "State regulatory authority" means, as relevant here, "any State agency which has ratemaking authority with respect to the sale of electric energy by any electric utility (other than such State agency)."  The term "State agency" means a "State, political subdivision thereof, and any agency or instrumentality of either." 16 U.S.C. §2602(16). The State, the California Legislature and the California Public Utilities Commission ("CPUC") fit within the definition of a "State agency." The State, the California Legislature and the CPUC also satisfy the second part of the definition.  The State itself and the legislature have "ratemaking authority," even though the State or the legislature may delegate some of that authority to the CPUC.  California Constitution, Art. XII §§ 3, 5.

[12] *See* Joint Explanatory Statement of the Committee of Conference, H.R. Conf. Rep. 95-1750, H.R. Conf. Rep. No. 1750, 95th Cong., 2nd Sess. 1978, 1978 U.S.C.C.A.N. 7797 ("Conference

1    In *FERC v. Mississippi,* the United States Supreme Court held that PURPA sections 210(f)

2  and 210(g) require the States to open their courthouse doors to vindicate the *federal* PURPA rights,

3  including the "must-take" obligation, now made the law of every State.

4    The fact that this claim is currently in a federal court is entirely because PG&E filed for

5  bankruptcy relief.  Claimants pursued relief in an adversary proceeding under the umbrella of the

6  bankruptcy court's jurisdiction, and now recognizes that the Court has determined that they must

7  pursue those remedies in state court.  Accordingly, while Claimants did not choose to pursue the

8  violations of PURPA in this forum, they are prepared to seek relief from stay to continue its efforts

9  in state court so that Claimants causes of action can be appropriately adjudicated. There is no need

10  for this court to adjudicate this claim through a claims resolution process when there is an

11  alternative forum available to determine the Debtor's obligations under PURPA and the Claimants

12  damages thereto.

13    PG&E breached the obligation imposed on it under multiple state statutes to the detriment

14  of Claimants.   The Claimants are entitled to damages for PG&E's breach of its obligations in

15  statute and in contract.

16    **IV.    CONCLUSION.**

17    This Court does not need to address any PURPA issues.  PG&E's breach of its obligations

18  under its tariff and its breach of the contract formed under the California Commercial Code

19  provides independent bases for Claimants' cause of action and the damages that they seek.  For

20  the reasons stated above, PG&E's objection should be overruled and the relief sought by Claimant

21  granted.

22

23

24

25  Report" or "Conf. R.").

{04437779.DOCX;4}

| | |
|---|---|
| 1 | Dated: October 26, 2021 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | Dated: October 26, 2021 |
| 7 | |
| 8 | |
| 9 | |

Dated: October 26, 2021    Respectfully submitted,

CAIRNCROSS & HEMPELMANN

By: /s/  John Rizzardi
JOHN RIZZARDI (*pro hac vice*)
Email: JRizzardi@cairncross.com

/s/ Thomas Melone
Thomas Melone (*pro hac vice*)
*Attorneys for Plaintiff*
Email:  Thomas.Melone@AllcoUS.com

{04427779.DOCX;4 }

12

CLAIMANTS' OPPOSITION TO 108ᵀᴴ OMNIBUS OBJECTION (PURPA CLAIMS)