KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Reorganized Debtors*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                      **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**REPLY IN SUPPORT OF REORGANIZED DEBTORS' ONE HUNDRED SEVENTH OMNIBUS OBJECTION TO CLAIMS (MCCOLM CLAIMS)**<br><br>**[Related to Docket No. 11227]**<br><br>Date:  November 9, 2021<br>Time:  10:00 a.m. (Pacific Time)<br>Place:  (Tele/Videoconference Appearances Only)<br>      United States Bankruptcy Court<br>      Courtroom 17, 16th Floor<br>      San Francisco, CA 94102 |

## I.    PRELIMINARY STATEMENT

In advance of the November 9, 2021, 10:00 a.m. omnibus hearing (the "**Hearing**"), PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, "**PG&E**," the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this reply brief in support of the *Reorganized Debtors' One Hundred Seventh Omnibus Objection to Claims (McColm Claims)* [Docket No. 11227] (the "**Omnibus Objection**")[1] with respect to Proofs of Claim Nos. 7659 (the "**First Claim**") and 104538 (the "**Second Claim**," and together with the First Claim, the "**Claims**")[2] filed by Patricia A. McColm, and in reply to the *Response / Opposition to Reorganized Debtors' One Hundred Seventh Omnibus Objection to Claims (McColm Claims)* filed by Ms. McColm [Docket No. 11448] (the "**Response**") and Declaration of Claimant Patricia A. McColm [Docket No. 11449] ("**McColm Declaration**").  Reference is also made to the Court's *Order Regarding Filing By Patricia A. McColm* entered on September 29, 2021 [Docket No. 11356].

With respect to the Claims, the Reorganized Debtors, by the Omnibus Objection, stated the legal grounds upon which they object to the Claims, and presented facts in support of the Omnibus Objection by way of the *Declaration of Cesar V. Alegria, Jr. In Support of Reorganized Debtors' One Hundred Seventh Omnibus Objection to Claims (McColm Claims)* [Docket No. 11228] (the "**Alegria Declaration**").  Additional support for the Omnibus Objection is provided in this Reply and the declaration of Mark A. Habib filed concurrently herewith (the "**Habib Declaration**").  The Reorganized Debtors having supported the Omnibus Objection by facts and law, "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence," *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222,

---

[1]    Capitalized terms used but not defined herein have the meanings ascribed to them in the One Hundred Seventh Omnibus Objection.

[2]    Ms. McColm has requested that the filing dates of the Claims be corrected and that a letter that she believes was omitted from the Second Claim be included. (Response, ¶ 43; McColm Decl., pp. 9-14.)  The Reorganized Debtors have discussed with Prime Clerk, who have advised that they see no reason why the filed dates would be incorrect.  In any event, the filing dates are not material to the resolution of the Omnibus Objection.  Regarding the letter to be added to the Second Claim, Ms. McColm has already introduced it into the record in her Response.

1  226 (B.A.P. 9th Cir. 1995) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.
2  1992)), *aff'd without opinion* 91 F.3d 151 (9th Cir. 1996).

3    The Reorganized Debtors submit that they are not liable on the Claims because they are based
4  on the false premise that PG&E does not have an easement for its electrical transmission equipment
5  on the Ms. McColm's property and/or a false interpretation of the Judgment, which conclusively –
6  after substantial briefing and a lengthy trial – resolved the issues of PG&E's easement on the McColm
7  property and its rights thereto.  That Judgment is not stayed, as twice determined by the Court of
8  Appeal.  The bankruptcy claims process does not give Ms. McColm the opportunity to relitigate issues
9  that already were adjudicated through an unstayed Judgment.

10    More importantly, despite Ms. McColm's *ad hominem* attacks and attribution of ill intentions
11  to every act by PG&E, PG&E does not enter her property for malice or sport.  In the far northern part
12  of state, PG&E has a crucial responsibility to monitor and maintain its electrical transmission
13  equipment.  Although this power line existed in its current location for many decades before Ms.
14  McColm owned the property, she has undertaken an unnecessary and wasteful dispute with PG&E
15  that has now lasted more than a decade.

16    It is for this reason that the Claims are appropriately before the Court, even if some of the
17  specific acts for which Ms. McColm seeks damages in the Claims occurred post-petition.  The Claims
18  and the Response make clear that the central focal points of Ms. McColm's dispute with PG&E are
19  the easement and the Judgment, both of which are prepetition.  The Reorganized Debtors should be
20  permitted to resolve the Claims that stem from this long-standing prepetition dispute and finally put
21  the matter behind them.

22  **II.    ARGUMENT**

23    **A.    Ms. McColm May Not Use Her Bankruptcy Claims to Relitigate Issues Already**
24       **Decided By The Superior Court At Trial**

25    Ms. McColm uses the majority of her Response to challenge the validity of PG&E's easement
26  and cast aspersions on the conduct of the Superior Court litigation that resulted in the Judgment.  But
27  Ms. McColm already has had more than her day in court on these issues.  As PG&E's trial brief in the
28  Superior Court action demonstrates, the issues the Response raises are the same issues that the Superior

Court decided in a contentious and protracted litigation. (Habib Decl., Ex. A.) After a trial lasting about nine days, the Superior Court issued a Judgment in PG&E's favor. A copy of the Judgment was attached as **Exhibit A** to the Alegria Declaration. It speaks for itself, and Ms. McColm cannot relitigate the issues here that have already been decided by the Superior Court. The Judgment's provisions include the following:

- PG&E is the legal successor in interest to the right-of-way dating from 1916. (Alegria Decl., Ex. A.)

- PG&E owns through prescription an easement to erect, access and maintain electric light and power pole transmission, distribution lines, and facilities on Ms. McColm's property. (Alegria Decl., Ex. A.)

- PG&E is granted a permanent injunction to allow PG&E to access its easement to perform necessary repair work free from interference by Ms. McColm. (Alegria Decl., Ex. A.)

- PG&E is authorized to remove locks on exterior gates and relocate any vehicles blocking the entry to Ms. McColm's property, to the extent necessary for PG&E to do its maintenance, repair, and vegetation management work. (Alegria Decl., Ex. A.)

As discussed below, notwithstanding the Appeal of the Judgment by Ms. McColm, which remains pending before the Court of Appeal, the Court of Appeal has now twice denied Ms. McColm's requests that the Judgment be stayed, and the Judgment is thus unstayed and fully enforceable by PG&E. The bankruptcy claims resolution process does not give Ms. McColm a second chance to litigate matters that were already the subject of a trial that she lost.

**B.     McColm Has Failed to Show That PG&E Acted In Contravention of the Judgment**

**1.     The Judgment Is Not Subject to a Stay**

Ms. McColm's references to the "automatic stay" of the Judgment on appeal are wrong. As already covered in the Omnibus Objection and **Exhibit B** and **Exhibit C** to the Alegria Declaration, Ms. McColm requested that the Court of Appeal stay the Judgment, and her request for a stay of the Judgment was denied by the Court of Appeal. Ms. McColm moved for a stay to stop PG&E and its

1  contractors from accessing PG&E's easement on McColm's property in October 2019, in the lawful

2  exercise of their rights under the easement consistent with the Judgment. Ms. McColm's motion is

3  dated September 30, 2019, and the Court of Appeal acted in less than a week; the Court of Appeal's

4  order denying the request for a stay was entered on October 4, 2019. As such, the Judgment is not

5  stayed and is enforceable.

6      Just in the week prior to this filing, Ms. McColm again sought a stay of the Judgment from the

7  Court of Appeal, to stop PG&E from enforcing the Judgment and accessing its equipment on the

8  easement. (Habib Decl, Ex. D.). This time, the Court of Appeal issued an order denying Ms.

9  McColm's request on the very same day, again re-enforcing that PG&E's rights under the Judgment

10 and the easement are currently effective and not subject to any stay.

11     Because the Court of Appeal has already twice ruled on this issue, this Court does not need to

12 reconsider or reexamine that point. The Judgment is, and at all times relevant to the Claims was,

13 effective and enforceable by PG&E, and PG&E holds a valid easement for its electrical transmission

14 equipment on Ms. McColm's property, as well as the right to access that easement pursuant to the

15 Judgment.

16          **2.    The Judgment Provides for Access onto McColm's Property for PG&E**
17                  **Employees and Contractors to Perform Work on the Easement**

18     In neither Claim, nor in her Response, does Ms. McColm set forth specific wrongful acts of

19 PG&E that resulted in her suffering actual damages. A necessary premise of her Claims is that the

20 Judgment is not effective or that PG&E does not have a valid easement—and that therefore PG&E's

21 conduct in entering her property to repair and maintain its equipment is wrongful. But this is not the

22 case, and, taken in the context of the Judgment, the facts Ms. McColm alleges do not suggest any

23 wrongful acts by PG&E for which it would be liable.

24     Ms. McColm further clouds the issue by continuing to suggest that PG&E and its contractors

25 may only enter onto the easement itself. This is incorrect, illogical, and contradicted by the text of the

26 Judgment itself, which includes a permanent injunction enjoining and requiring that Ms. McColm

27 allow PG&E access to its easement. PG&E would not be able to use its easement without the right to

28 access it with the necessary personnel and equipment to perform the repairs and maintenance that it is

entitled to do under the easement.  For example, the Judgment expressly gives permission to PG&E
to remove locks on exterior gates and relocate vehicles blocking access to the McColm property.
Those exterior gates are not within the easement itself—where the power lines travel—but they are
necessary for PG&E and its contractors to access the easement from the nearest public road.  (*See*
Habib Decl., ¶¶ 4 and 5, Exs. B and C.)  It would be impracticable if not impossible, for PG&E and
its contractors' personnel to perform the necessary repairs and maintenance if they were only able to
travel on the easement itself.  It is a narrow strip of land beneath the transmission lines, which enters
McColm's land from the neighboring property to the north and leaves it by crossing the Trinity River
to the west.  (Alegria Decl., Ex. A, p. 12; Habib Decl., Exs. B and C.)

Paragraph 9 of the Response references an agreement with an unnamed "PG&E official," and
the Second Claim alleges that PG&E breached an October 8, 2019 agreement.  (Response ¶ 9; Second
Claim at 2.)  Ms. McColm has submitted no evidence of any such agreement, and the Reorganized
Debtors dispute the existence of any such agreement.  As stated above, the "North property line" of
the McColm property is the boundary with the private property of her neighbor.  The Deadwood Road
gate is approximately 300-350 feet to the east of PG&E's power poles and provides the most direct
and unobstructed access for any vehicles and equipment of PG&E and its contractors to travel from
the only public road bordering the McColm property to PG&E's easement and its equipment lying
thereon.  (Habib Decl., Exs. B and C.)

### C.  McColms' Claims Provide No Valid Basis for Damages

Even if PG&E had any liability to Ms. McColm – which it does not – Ms. McColm has failed
to establish any damages arising from any alleged wrongful act.  Ms. McColm asserts $125,000 in
damages for the First Claim and $175,000 for the Second Claim.[3]  She provides no competent evidence
in support of these amounts.  Instead, she describes (but does not submit) speculative proposals from
unnamed real estate agents (Response ¶ 42; McColm Decl. ¶ 25) and extrapolates the value of lost
trees from an unverified internet source providing, at most, generic information that has no bearing on
the geography or specific circumstances of the McColm property.  (McColm Decl. ¶ 25, Ex. H.)  This

[3] The Response indicates $175,000 for both Claims. (Response ¶ 42.)

1   information is simply inadequate to demonstrate the amount of Ms. McColm's claims, even if she

2   were able to prove that PG&E had acted wrongfully. Of course, PG&E is under no obligation to

3   compensate Ms. McColm for any loss in the value to her property caused by PG&E's actions

4   consistent with its rights under the easement and the Judgment. But even assuming PG&E had any

5   liability to Ms. McColm, her Claims fail to establish any amount of damages.

6   **D.      McColms' Claims Are Prepetition Claims and Should Be Heard in the**

7   **Bankruptcy Court**

8   Finally, the Court instructed the Reorganized Debtors in its September 29 order to explain why

9   the Claims should not be treated as post-petition claims to be dealt with other than in the Bankruptcy

10  Court. Although many of the specific acts for which Ms. McColm seeks damages occurred post-

11  petition, the Claims are appropriately before the Court. First, as the Court noted, one of PG&E's two

12  alleged entries onto Ms. McColm's property about which Ms. McColm complains in the First Claim

13  occurred prepetition, on January 23, 2019. As such, there is at least a portion of the Claims that is

14  indisputably prepetition, and bifurcating the Claims to litigate the prepetition portion separately from

15  the postpetition portions would lead to further wasteful, duplicative litigation and potentially

16  inconsistent outcomes. Moreover, as the Response makes clear, at their core, the focal point of the

17  Claims is the prepetition dispute around the easement and Judgment. Indeed, Ms. McColm

18  characterizes her Claims as part of a "broad CONTINUING conspiracy." (First Claim at 2; Second

19  Claim at 2.) The Reorganized Debtors seek to use the bankruptcy claims objection process to resolve

20  the Claims, for the sake of finality and in the hopes of being able to put this decade-long dispute behind

21  them.

22  **III.   CONCLUSION**

23  For the foregoing reasons, and the reasons set forth in the Omnibus Objection and the

24  declarations filed in support of the Omnibus Objection, the Reorganized Debtors respectfully request

25  that the Court sustain the Omnibus Objection and disallow and expunge the Claims.

26

27  / / /

28

Dated: November 1, 2021

**KELLER BENVENUTTI KIM LLP**

/s/ *Thomas B. Rupp*
Thomas B. Rupp

*Attorneys for Debtors and Reorganized Debtors*