HOLLAND & KNIGHT LLP
Thomas D. Leland (pro hac vice)
Leah E. Capritta (pro hac vice)
1801 California Street, Suite 5000
Denver, Colorado 80202
Telephone (303) 974-6660
Facsimile (303) 974-6659
Email: thomas.leland@hklaw.com
       leah.capritta@hklaw.com

HOLLAND & KNIGHT LLP
Vito Costanzo (SBN 132754)
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: (213) 896-2400
Facsimile: (213) 896-2450
Email: vito.costanza@hklaw.com

Attorneys for
TIGER NATURAL GAS, INC.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>           Debtor. | CASE NO. 19-30089 (DM)<br><br>Chapter 11<br><br>**TIGER NATURAL GAS, INC.'S MOTION FOR RELIEF FROM PLAN INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:    December 7, 2021<br>Time:   10:00 AM<br>Judge:  Hon. Dennis Montali<br>Ctrm:   17 |

#152238795_v1

# Table of Contents

| | Page |
|---|---|
| INTRODUCTION | 1 |
| STATEMENT OF THE ISSUE | 2 |
| STATEMENT OF FACTS | 2 |
| I. LEGAL STANDARD | 7 |
| II. ARGUMENT | 8 |
|     A. WHETHER RELIEF WILL RESULT IN COMPLETE RESOLUTION OF THE ISSUES | 9 |
|     B. LACK OF INTERFERENCE WITH THE BANKRUPTCY CASE | 9 |
|     C. DEBTOR PG&E IS A FIDUCIARY | 10 |
|     D. THE DISTRICT COURT HAS THE EXPERIENCE AND EXPERTISE TO RESOLVE TIGER'S CLAIMS | 10 |
|     E. THE TIGER ACTION INVOLVES THIRD PARTIES AND DEBTOR PG&E IS A CONDUIT OF NATURAL GAS | 10 |
|     F. THE TIGER LITIGATION WILL NOT PREJUDICE OTHER CREDITORS | 11 |
|     G. RELIEF FROM THE PLAN INJUNCTION | 11 |
|     H. PROGRESS OF LITIGATION IN THE DISTRICT COURT CASE | 12 |
|     I. A BALANCING OF THE RELATIVE HARDSHIPS WEIGHS IN FAVOR OF GRANTING RELIEF FROM STAY | 12 |
| III. CONCLUSION | 13 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Baleine, LP*, BK 13-27610 MH, 2015 WL 5979948 (C.D. Cal. Oct. 13, 2015)............8, 9, 11

*In re Curtis*,
  40 B.R. 795 (Bankr. D. Utah 1984) ...............................................................................1, 7, 8, 9

*In re Kronemyer*, 405 B.R. 915 (9th Cir.BAP 2009) ......................................................................7

*In re Plumberex*, 311 B.R. 551 (2004)...........................................................................................8

*In re Santa Clara Cnty. Fair Ass'n*,
  180 B.R. 564 (B.A.P. 9th Cir. 1995).........................................................................................9

*In re SquareTwo Fin. Servs. Corp.*,
  17-10659 (JLG), 2017 WL 4012818 (Bankr. S.D.N.Y. Sept. 11, 2017) ..................................7

*In re Todd Shipyard*, 92 B.R. 600, 603 (Bankr. D. N.J. 1988) .....................................................12

*In re Tucson Estates, Inc.*,
  912 F. 2d 1162 (9th Cir. 1990) .................................................................................................7

**Statutes**

11 U.S.C. § 362.......................................................................................................................1, 7, 8

28 U.S.C §§ 157(b)(2)(A) ..............................................................................................................1

28 U.S.C §§ 1334............................................................................................................................1

**MOTION**

Tiger Natural Gas, Inc. ("Tiger") hereby moves for relief from and/or modification of the Plan Injunction, which is a core proceeding under 28 U.S.C §§ 157(b)(2)(A). During the two years the District Court for the Northern District of California oversaw *Tiger Natural Gas, Inc. v. Pacific Gas and Electric Company, et al.*, Case No. 4:16-CV-06711 (JSW), it gained in-depth expertise with the intricate issues and evidence of the case. Additionally, the factors enumerated in *In re Curtis*, 40 B.R. 795, 799 (Bankr. D. Utah 1984) weigh in favor of granting Tiger relief from the Plan Injunction. This Court accordingly should grant Tiger's motion and grant it relief from the Plan Injunction so it may liquidate its damages.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

The Court has jurisdiction over this matter under 28 U.S.C §§ 1334 and 157 and 11 U.S.C. §§ 362 and 524. In this motion, Tiger seeks relief from and/or modification of the Plan Injunction, which is a core proceeding under 28 U.S.C §§ 157(b)(2)(A).

Pacific Gas & Electric Company ("PG&E") filed its Voluntary Chapter 11 Bankruptcy Petition (the "Petition") on January 29, 2019 in the United States Bankruptcy Court for the Northern District of California. Over two years prior, on November 18, 2016, Tiger brought litigation against PG&E in the District Court for the Northern District of California styled *Tiger Natural Gas, Inc. v. Pacific Gas and Electric Company, et al.*, Case No. 4:16-CV-06711 (JSW) (the "District Court Case"). (Declaration of Leah E. Capritta ("Capritta Decl."), ¶ 2, Ex. 1.)

Tiger's Complaint in the District Court Case details an ongoing combination of complex business torts perpetrated by PG&E, which acts as Tiger's billing and collections agent for Tiger's business in PG&E's service area. Considering the District Court's expertise with the facts and legal issues, acquired in four similar cases in the last four years, as well as the advanced stage of the District Court Case, Tiger asks for relief from the Plan Injunction so it may liquidate its damages.

Further, contemporaneous with this motion, PG&E seeks yet a second extension of the Plan Injunction [Dkt. Nos. 11450, 11529], which seeks to continue to delay resolution of Tiger's

1

claims for yet another year. As set forth more fully below, Tiger and PG&E have attempted formal mediation twice just in the context of this proceeding without material progress. Given the status of this Bankruptcy Action, the time is now ripe to allow the case to proceed to trial before the District Court.

II.  **STATEMENT OF THE ISSUE**

Whether the Court should release Tiger from the plan injunction so that it and PG&E may move forward with litigation pending in the District of Northern California.

III. **STATEMENT OF FACTS**

In 1991, California deregulated its retail gas commodity market, giving residential and small commercial customers a choice from whom to buy natural gas, referred to as the "Core Gas Aggregation Program." (Capritta Decl.), Ex. 1, ¶¶ 25-26.) Under this program, non-utility companies, called Core Transport Agents or "CTAs," deliver volumes of gas to PG&E's Citygate for use by the CTAs' customers. (*Id.*, ¶ 40.) PG&E then delivers the gas to homes and businesses throughout Northern California. (*Id.*, ¶ 28.)

CTAs must pay PG&E both for storage and transportation of the gas (even if the CTA does not use PG&E for these services). (Capritta Decl., ¶ 40.) Customers also pay PG&E for storage and transportation as well as certain franchise fees. (*Id.*) In addition, PG&E itself continues to sell natural gas; that is, it competes with the CTAs. Creditor Tiger is one such CTA, and continues to operate in PG&E's territory, as it has since 2010. (*Id.*, ¶ 29.)

As a convenience to the consumer, a CTA may elect by right to use Consolidated PG&E Billing, and nearly all CTAs exercise this right. (*Id.*, ¶ 34.) With Consolidated Billing, PG&E sends one bill (called an "energy statement" or a "blue bill") to the customer containing PG&E's delivery charges as well as the CTA's gas commodity charges, all of which are set forth on the first page together with a total amount for the customer to pay. (*Id.*, ¶ 33.) The customer makes one payment to PG&E, at which point PG&E is supposed to send to the CTA its portion of the payment. (*Id.*, ¶ 4.) Aside from providing its rate for the gas to PG&E, the CTA exercises no control over the billing or collection process. (*Id.*, ¶¶ 4, 34.)

2

At all relevant times, PG&E similarly exercised total control over the information provided to CTAs about the status of their customer accounts. (*Id.*, ¶ 44.) PG&E generated both a daily billing report, showing which customers have been billed and the amount that PG&E billed on the CTA's behalf, and a daily payment report, showing only the amount of money that PG&E elected to distribute to the CTA for any customer. (*Id.*, ¶¶ 46-48.) PG&E also disseminated monthly "snapshot" reports collating the information in the daily billing and payment reports and providing an aging summary of the debt owed by the customer to the CTA. (*Id.*)

Finally, PG&E sends a monthly reversal file ostensibly listing accounts "reversed" by PG&E. (*Id.*, ¶ 75.) The reversal indicates to the CTA that the customer has been disconnected (and PG&E has been unable to collect the balance) or has moved outside of PG&E's territory, and the CTA may now initiate its own collection efforts. (*Id.*, ¶¶ 77-84.) The reversal terminates the CTA's business relationship with the customer. (*Id.*)

Notably, none of these reports showed the total amount owed by the customer or paid by the customer. (*Id.*, ¶¶ 77-84.) At all times relevant to the District Court Case, PG&E refused to provide any other information to the CTAs (including Tiger) about their joint customers. (*Id.*)

Debtor PG&E's billing and collections system, called "CC&B," serves as the accounting system for the blue bills sent to the customers, the payments received from the parties' joint customer, the payments sent to the CTAs, as well as the reports generated for the CTAs. (*Id.*, ¶ 45.) CC&B is a complicated Oracle-based system modified by Debtor PG&E for its purposes. (*Id.*, ¶¶ 45-61.) CC&B utilizes a complex process for generating blue bills and allocating payments between Debtor PG&E and CTAs. (*Id.*)

On November 18, 2016, Tiger filed a lawsuit against Debtor PG&E in the United States District Court for the Northern District of California in connection with PG&E's fraudulent and deceptive behavior in acting as Tiger's billing and collection agent. (Capritta Decl., ¶ 2.) The Complaint alleges that Debtor PG&E engages in three schemes involving the CC&B system. (*Id.*, Ex. 1, ¶¶ 45-89.) The Payment Withholding Scheme alleges that PG&E retains customer payments in an unlawful manner that tells, *inter alia*, that the customer simply has not paid. (*Id.*, ¶¶ 45-61.) The Energy Credit Scheme alleges that Debtor PG&E presents energy credits (that PG&E owes

to the customer) on the blue bills in a manner that informs the customer not to pay (or to partially pay) the CTA's gas charges. (*Id.*, ¶¶ 62-73.) PG&E's reports to the CTA then lead the CTA to believe that the customer is delinquent (when in fact the customer paid in full or made an appropriate partial payment). (*Id.*, ¶ 67.) In the Reversal Scheme, PG&E reverses accounts even though the customer has paid PG&E or under other unlawful circumstances. (*Id.*, ¶¶ 74-89.) The Complaint alleged claims under RICO, the Sherman Act, intentional and negligent misrepresentation, intentional interference with contract, breach of contract, breach of fiduciary duty and violation of the California Unfair Competition Law. (*Id.*, Ex. 1, ¶¶ 90-184.) The Complaint names three PG&E employees individually as defendants: Albert Torres; William Chen; and Tanisha Robinson. (*See id.*, Ex. 1.) Judge Jeffrey S. White presides over the District Court Case. (Capritta Decl., ¶3.)

The District Court Case presents complicated fact patterns over several different divisions within Debtor PG&E, a series of complex business torts, and a rubric of procedural and discovery wrangling. (*Id.*, ¶ 4.) The parties deposed nine individuals (in addition to the 23 depositions taken in a similar lawsuit initiated by United Energy Trading, LLC) and exchanged hundreds of thousands pages of documents. (*Id.*, ¶ 5.) In addition, the parties analyzed millions of transactions from tens of thousands of accounts from the CC&B system. (*Id.*, ¶ 6.)

In addition, the District Court presided over several discovery issues involving apparent errors and inconsistencies in PG&E's CC&B system. (*Id.*, ¶ 8.) On July 31, 2018, Magistrate Judge Sallie Kim ordered PG&E to review a series of pre-selected accounts and provide a "person most knowledgeable" to testify regarding the transactions. (*Id.*, ¶ 9.) In the course of prepping its witness, on September 17, 2018, PG&E acknowledged that "certain financial transactions" were missing from all of the CC&B dataset provided by PG&E. (*Id.*, ¶ 10.) On October 15, 2018, the Court ordered PG&E to permit a forensic expert access to CC&B. (*Id.*, ¶ 11.) When PG&E curtailed that examination, the Court again ordered two additional days of forensic review, which the parties scheduled to occur on January 28 and 29, 2019.[1] (*Id.*, ¶ 12.) While the parties completed the first day, PG&E filed the instant petition early in the morning on January 29, 2019, preventing

---

[1] On January 17, 2019, PG&E moved to stay the examination entirely, which the Court denied.

the second day of examination. (*Id.*, ¶ 13.) As the foregoing shows, the course of discovery before the District Court reflects a complicated background. (*Id.*, ¶ 14.)

The interplay between the regulatory environment and the legal framework for many of the business torts alleged in the complaint create additional complexity. (*Id.*, ¶ 15.) The California Public Utilities Commission regulates both the CTAs and PG&E and issued decisions at various times on which both parties rely for their legal positions. (*Id.*, ¶ 16.) The District Court, accordingly, acquired an expertise in these interrelated legal issues. (*Id.*, ¶ 17.)

Except for the foregoing forensic examination, fact discovery closed on December 21, 2018. (*Id.*, ¶ 18.) Expert discovery would have closed on May 6, 2019. (*Id.*, ¶ 19.) Finally, the Court set September 16, 2019, as the first day of trial. (*Id.*, ¶ 20.)

On January 29, 2019, the Debtor filed the instant Chapter 11 Petition as Case No. 19-30088 (DM). (Dkt. 1.) At the time of this bankruptcy filing, the following matters pended before the District Court:

i. Dispositive motions deadline on June 21, 2019;

ii *Daubert* motions deadline on August 2, 2019;

iii. Parties' Pre-Trial Conference set for August 19, 2019;

ii. Motions *in Limine*; and

iii. Trial set for September 16, 2019.

(Capritta Decl., ¶ 21.)

On February 27, 2019, the District Court stayed the case in its entirety while PG&E worked its way through the reorganization process. (*Id.*, ¶ 22.) The parties have provided status reports to the District Court in six-month intervals in the intervening months. (*Id.*, ¶ 22.)

Given the complex nature of the torts alleged, Tiger's claims remain unliquidated. (*Id.*, ¶ 23) Tiger had not yet disclosed the findings of its damages experts; however, given the on-going nature of PG&E's actions, that sum has only increased. (*Id.*, ¶ 24.) In addition, because PG&E's actions are both fraudulent and intentional, the possibility of exemplary damages and an award of fees and costs exists. (*Id.*, ¶ 25.)

On October 18, 2019, Tiger timely submitted its proof of claim. [Claim No. 64095.]

On October 18, 2019, Tiger moved for relief from the bankruptcy stay, and the parties thereafter moved the Court to take Tiger's motion off calendar and obtained limited relief from the stay to engage in settlement negotiations. (Docket No. 4322.) On May 11, 2020, the parties attended a formal mediation with the Honorable Carl West of JAMS. (Capritta Decl., ¶ 27.)

On June 20, 2020, the Court entered an order confirming the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated Date June 19, 2020 (the "Confirmation Order"). (Docket No. 8053.) The Effective Date of the Plan occurred on July 1, 2020.

On September 25, 2020, the Court entered the Order Approving ADR and Related Procedures for Resolving General Claims [Docket No. 9148] (the "General Claims ADR Procedures Order"). The General Claims ADR Procedures Order approved "General Claims Procedures" (as defined therein) that allow: (i) General Claimants (i.e., holders of Claims other than Fire Victim Claims, Subrogation Wildfire Claims, or Securities Claims) to submit, by mail or via a secure online portal, information necessary to allow the Reorganized Debtors to evaluate their Claims and develop settlement proposals for General Claimants; and (ii) the parties to exchange settlement offers or engage in standard or abbreviated forms of mediation to resolve General Claims.

Under Section 7.1 of the Plan, PG&E had 180 days from the Plan Effective Date to serve and file objections to claims. The Plan provided, however, for an extension of this period for cause shown. On November 17, 2020, the Court entered an order extending the deadline for PG&E to serve and file objections to claims under Section 7.1 of the Plan by 180 days, through and including June 26, 2021. (Docket No. 9563.) On April 5, 2021, the Court entered an order extending the deadline for PG&E to serve and file objections to claims under Section 7.1 of the Plan by an additional 180 days, through and including December 23, 2021. (Docket No. 10494.)

On July 21, 2021, the parties held a formal mediation, as ordered by this Court and further to the Plan, with the Honorable Wynne S. Carvill of JAMS but were not able to reach a resolution of the matter. This mediation followed the exchange of settlement offers as required under the General Claims ADR Procedures Order. (Capritta Decl., ¶ 28.)

On October 19, 2021, Reorganized Debtors sought an additional 180-day extension to the deadline to object to Claims, to and including June 21, 2022. (Docket No. 11450.)

On November 3, 2021, Tiger requested that the Reorganized Debtors stipulate to the relief requested in this motion, but the Reorganized Debtors have not responded. (Capritta Decl., ¶ 29.) On November 4, 2021, Reorganized Debtor moved for entry of default on their motion for extension. (Docket No. 11529.)

As of the date of this filing, Tiger is not aware of any objection by the Reorganized Debtors to its claim. (Capritta Decl., ¶ 30.)

## IV. LEGAL STANDARD

Courts apply the same principles that apply to motions for relief from stay when considering whether there is cause to modify a plan injunction. *See, e.g., In re SquareTwo Fin. Servs. Corp.,* 17-10659 (JLG), 2017 WL 4012818, at *1 (Bankr. S.D.N.Y. Sept. 11, 2017); *see also* 11 U.S.C. § 362(d) (bankruptcy court "shall grant relief from the stay" upon a showing of "cause.").

"Cause" has no clear definition and is determined on a case-by-case basis. *In re Tucson Estates, Inc.,* 912 F. 2d 1162, 1166 *(*9th Cir. 1990) (citation omitted). Granting or denying relief from stay is a matter of the court's discretion and often involves consideration of numerous factors. *In re Curtis*, 40 B.R. 795, 799 (Bankr. D. Utah 1984); *In re Kronemyer*, 405 B.R. 915, 921 (9th Cir.BAP 2009). Those factors include:

1. Will relief result in partial or complete resolution of the issues?
2. Is there a lack of any connection with or interference with the bankruptcy case?
3. Does the foreign proceeding involve the debtor as a fiduciary?
4. Has a special tribunal been established to hear the particular cause of action and does that tribunal have the expertise to hear such cases?
5. Has the debtor's insurance carrier has assumed financial responsibility?
6. Does the action involve third parties and the debtor functions only as a bailee or conduit?

7. Would litigation in the other forum prejudice the interests of other creditors, the creditors committee and other parties?

8. Would the judgment claim arising from the foreign action be subject to equitable subordination?

9. Would success in the nonbankruptcy forum result in a lien avoidable under the bankruptcy code?

10. Would the interests of judicial economy and expeditious and economical determination of litigation be achieved?

11. Have the foreign proceedings progressed to where the parties have prepared for trial?

12. What is the impact of the stay on the parties and the "balance of hurt"?

*In re Curtis*, 40 B.R. at 799.

The Ninth Circuit has recognized that "the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum." *In re Kronemyer*, 405 B.R. at 921. While the *Curtis* factors are widely used to determine the existence of "cause," not all of the factors are relevant in every case, nor is a court required to give each factor equal weight. *In re Plumberex*, 311 B.R. 551, 560 (2004). Factors 5, 8, and 9 are not relevant here and will not be discussed.

According to the court in *Curtis*, "[t]he most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate." *In re Curtis*, 40 B.R. at 806. Courts in the Ninth Circuit have granted relief from the stay under § 362(d)(1) when necessary to permit pending litigation to be concluded in another forum "if the non-bankruptcy suit involves multiple parties or is ready for trial." *In re Baleine, LP*, BK 13-27610 MH, 2015 WL 5979948, at *7 (C.D. Cal. Oct. 13, 2015) (*citing Plumberex*, 311 B.R. at 556).

V. **ARGUMENT**

Cause exists to grant Tiger relief from the Plan Injunction so that it may continue to pursue its claims against PG&E in the District Court Case.

### A. WHETHER RELIEF WILL RESULT IN COMPLETE RESOLUTION OF THE ISSUES

Modifying the Plan Injunction will allow the District Court Case to proceed in a forum in which complete resolution will be obtained. The District Court has presided over the District Court Case since November 2016. It now involves one defendant—PG&E— and three individual defendants and one plaintiff, and several state-law business torts, and the District Court maintains jurisdiction over not only all the parties, but the claims at issue, none of which impact this Court's inquiries about the wildfires or PG&E's restructuring of its debt. Accordingly, the first factor tips in favor of modifying the Plan Injunction.

### B. LACK OF INTERFERENCE WITH THE BANKRUPTCY CASE

The lack of any connection with or interference with the bankruptcy case is "[t]he most important factor in determining whether to grant relief from the automatic stay." *In re Curtis*, 40 B.R. at 806. Here, modifying the Plan Injunction will not negatively affect the bankruptcy case. The bankruptcy case largely involves the reorganization of PG&E's debt and, to no small extent, the management of its liability for wildfire claims and other liability for personal injury and losses. In contrast, the District Court Case alleges tort claims based on Tiger and the Debtor's business relationship and day-to-day dealings, which do not implicate the issues arising in the bankruptcy proceeding.

Further, nothing in the District Court Case will impede the Trustee's ultimate duty to allocate assets among Debtor PG&E's various creditors. Indeed, the Trustee will maintain the ability to liquidate and administer the Debtor's estate. *See In re Baleine,* 2015 WL 5979948, at *8. This is particularly true here, where Debtor PG&E has not objected to Tiger's claims, and where Tiger previously agreed to take its motion for stay off-calendar and mediated twice with Debtor PG&E.

In addition, litigation costs to a bankruptcy estate do not compel a court to deny stay relief. *Id.* at *9 (citing *In re Santa Clara Cnty. Fair Ass'n*, 180 B.R. 564, 566 (B.A.P. 9th Cir. 1995)). Here, however, the District Court Case is unlikely to cause significant additional financial burden on the Debtor, which will need to either litigate Tiger's claims here or in the District Court. Indeed,

proceeding before the District Court will likely conserve resources given the District Court's familiarity with the issues and the advanced stage of the case.

### C. DEBTOR PG&E IS A FIDUCIARY

One of Tiger's strongest claims against Debtor PG&E involve Debtor PG&E's status as a fiduciary to Tiger. Tiger alleges, and the District Court already found, that Debtor PG&E's role as Tiger's billing and collections agent constitutes a fiduciary relationship. That is, Tiger alleges that Debtor PG&E exercises total control over CC&B and yet improperly bills their joint customers, improperly retains payments owed to Tiger and provides false information to Tiger about those joint customers' accounts, all in breach of Debtor PG&E's fiduciary duty. Lifting the stay, then, will be particularly important given the effects of Debtor PG&E's actions upon Debtor PG&E and Tiger's customers in Northern California. Accordingly, this factor weighs in favor of Tiger.

### D. THE DISTRICT COURT HAS THE EXPERIENCE AND EXPERTISE TO RESOLVE TIGER'S CLAIMS

Notably, the District Court Case represents one of four similar cases filed by CTAs in the Northern District of California against PG&E. Magistrate Judge Sallie Kim presided over discovery disputes in each of these cases, and both Judge Seeborg (who presides over the UET action) and Judge White have rendered substantive decisions. Accordingly, although the District Court is not a specialized tribunal, it nevertheless acquired a particular expertise with regard to the legal, regulatory and factual issues at play in the District Court Case. While bankruptcy courts also have experience applying the law of other courts, the amount of time and resources that have already been devoted to the case in the District Court puts it in the best position to continue hearing the case.

### E. THE TIGER ACTION INVOLVES THIRD PARTIES AND DEBTOR PG&E IS A CONDUIT OF NATURAL GAS

As noted above, the District Court Case features three individual defendants, and Tiger's claims against them cannot be adjudicated in this Court. For that reason alone, the Court should modify the Plan Injunction.

In addition, Debtor PG&E acts as an intermediary billing agent between Tiger's gas customers (who also use PG&E's gas transportation system and are likely PG&E's electrical customers) and Tiger. As result, when a customer pays PG&E, the likely expectation is that PG&E will pay to Tiger its portion of the customer's payment. Similarly, when PG&E sends the customer a bill showing either an amount due or that a payment was made, the natural expectation by the customer is that the bill is accurate. However, as alleged in the District Court Case, the customer in fact receives inaccurate billing and payment information. The District Court Case involves third parties; accordingly, the interest of the public will be served in permitting Tiger's claims to proceed before the District Court.

### F. THE TIGER LITIGATION WILL NOT PREJUDICE OTHER CREDITORS

Allowing Tiger to proceed with its claims will not prejudice creditors of the estate. As discussed above, the bankruptcy estate cannot be negatively impacted by the District Court Case nor will other creditors of the bankruptcy estate would be prejudiced by granting relief from stay.

### G. RELIEF FROM THE PLAN INJUNCTION

The conclusion of Tiger's claims against the Debtor in the District Court Case is in the interest of judicial economy because the District Court has been involved with this particular case since its filing in November 2016.

Courts consider the relative amount of fees in the foreign proceeding as compared to the bankruptcy action and the amount of time and resources it would require the bankruptcy court to become fully apprised of the issues in the foreign action. *In re Baleine, LP*, 2015 WL 5979948 at *11. Here, the District Court gained familiarity with all aspects of Tiger's case including the interrelated regulatory and legal issues and the complex discovery background.

Addressing Tiger's claims before the Bankruptcy Court would not further judicial economy given the time and resources that would be required to onboard a new judge to become familiar with the complex legal and factual issues, as well as the complicated discovery background, of the case. Modifying the Plan Injunction also prevents the parties from litigating the case in piecemeal fashion. *See id.,* at *11. Further, at the conclusion of the District Court action,

the Bankruptcy Court can determine priority issues and how to divide the assets of the estate. *See id.* (affirming that it is "more appropriate" for the non-bankruptcy court "to first determine the non-bankruptcy issues, *i.e.*, whether a claim exists and the damages therein, if any. After such determination, then the bankruptcy issues become relevant.")

### H. PROGRESS OF LITIGATION IN THE DISTRICT COURT CASE

Prior to the commencement of Debtor's Chapter 11 case, the District Court scheduled trial to begin on September 16, 2019. Indeed, the District Court developed a particular expertise in the technology involved, the legal theories at issue, and the various discovery issues between the parties.

### I. A BALANCING OF THE RELATIVE HARDSHIPS WEIGHS IN FAVOR OF GRANTING RELIEF FROM STAY

The balance of the hardships tilts sharply in favor of modifying the Plan Injunction to permit Tiger to liquidate its claims in the District Court Case, as the litigation has already proceeded through fact discovery and to the pre-trial phase. It would be impractical for the Bankruptcy Court to address the claims at issue in the District Court Case due to the nature of the claims and progress of the case in the District Court.

While the Debtor may incur litigation expenses, incurrence of litigation expenses does not weigh against the liquidation of tort claims in another forum. *See In re Todd Shipyard*, 92 B.R. 600, 603 (Bankr. D. N.J. 1988). The Debtor would not experience significant hardship in proceeding with the District Court Case at this juncture; the hardship, instead, lies with Tiger, who spent three years litigating this case to the end of fact discovery only to be stayed by Debtor's Chapter 11 case. Further, Tiger has complied with the Bankruptcy process for nearly two years, including a prior agreement to take its motion for stay off-calendar and two formal mediation sessions. Additional delay will only exacerbate the hardship to Tiger due to the on-going nature of PG&E's fraudulent acts.

//

//

//

## VI. CONCLUSION

For the foregoing reasons, and based upon the evidence set forth in this Motion, the Court should modify the Plan Injunction to allow Tiger to pursue its claims against the PG&E in the District Court Case.

DATED: November 4, 2021

> Respectfully submitted,
>
> **HOLLAND & KNIGHT LLP**
>
> By: /s/ *Leah E. Capritta*
> Leah E. Capritta
>
> *Attorneys for Tiger Natural Gas, Inc.*