1
2
3
4
5
6
7

HOLLAND & KNIGHT LLP
Nicholas B. Melzer (246356)
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Fax: 213.896.2450
E-mail: nicholas.melzer@hklaw.com

Attorneys for Plaintiff
TIGER NATURAL GAS, INC.

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

| | |
|---|---|
| TIGER NATURAL GAS, INC., | ) **Case No.: 3:16-cv-6711** |
| Plaintiff, | ) |
| | ) **COMPLAINT FOR:** |
| vs. | ) |
| | ) **1. Violation of RICO, 18 U.S.C. § 1961-** |
| | ) **1968** |
| PACIFIC GAS AND ELECTRIC | ) **2. Respondeat Superior/Agency** |
| COMPANY, a California corporation; | ) **3. Violation of Sherman Act, 15 U.S.C. § 2;** |
| ALBERT TORRES, an individual; BILL | ) **4. Breach of fiduciary duty** |
| CHEN, an individual; TANISHA ROBINSON,| ) **5. Intentional misrepresentation;** |
| an individual, | ) **6. Negligent misrepresentation;** |
| | ) **7. Intentional interference with contract;** |
| Defendants. | ) **8. Intentional interference with prospective** |
| | ) **business advantage; and** |
| | ) **9. Violation of California Unfair** |
| | ) **Competition Law, Cal. Bus. & Prof.** |
| | ) **Code § 17200, et seq.** |
| | ) |
| | ) **DEMAND FOR JURY TRIAL** |
| | ) |

22
23
24
25
26
27
28

Plaintiff Tiger Natural Gas, Inc. ("Tiger" or "Plaintiff") files this Complaint against

Defendants Pacific Gas and Electric Company ("PG&E"), Albert Torres, Bill Chen, and Tanisha

Robinson for: (1) Violation of RICO, 18 U.S.C. § 1961-1968; (2) Respondeat Superior/Agency; (3)

Violation of the Sherman Act § 2, 15 U.S.C. § 2; (4) Breach of fiduciary duty; (5) Intentional

misrepresentation; (6) Negligent misrepresentation; (7) Intentional interference with contract; (8)

Intentional interference with prospective business advantage; and (9) Violation of the California

COMPLAINT

CASE NO.:

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. In support of these claims, Tiger respectfully makes the following allegations.

**NATURE OF CASE**

1.      This case seeks to remedy PG&E's fraudulent, deceptive, and monopolistic practices in California's deregulated retail natural gas market.

2.      PG&E is the traditional public utility in Northern California. PG&E currently holds between 70-90% of the natural gas commodity market. Tiger is a certified "Core Transport Agent," or "CTA," which is a competitive provider of natural gas in California. Tiger operates in PG&E's service area.

3.      PG&E and Tiger compete to supply natural gas to the same residents and small businesses. Unless the customer affirmatively chooses a different CTA, the customer returns to PG&E by default at the severance of Tiger's contract with the customer.

4.      Tiger has chosen consolidated billing and collections, available as a matter of right to CTAs under PG&E's tariffs. Under this option, PG&E sends one bill to the customer reflecting both its charges and Tiger's charges; PG&E is responsible for collecting payments and distributing that money to Tiger. PG&E acts as Tiger's agent for these important business functions.

5.      PG&E has willfully and knowingly manipulated its agency position and engaged in improper and unlawful billing, collection, and payment practices under which PG&E uses its position as Tiger's billing and collections agent to effectively misappropriate money from Tiger, defraud Tiger and its customers, and unfairly compete with Tiger for core natural gas customers.

6.      For example, PG&E receives payments from Tiger customers and "holds" that money in a PG&E account instead of paying it to Tiger for its commodity charges.

7.      Similarly, PG&E applies credits from its own services or programs, such as rebates or credits for the use of solar panels, to Tiger's commodity gas charges. In this way, PG&E effectively misappropriates Tiger's customer charges to offset the money that PG&E owes to customers.

8.      PG&E also inappropriately "reverses" customer charges. A "reversal" should occur only where PG&E permanently terminates service to a customer, either because of non-payment or

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 2 -

1   because the customer terminates PG&E service altogether. Put in perspective of the billing

2   relationship, a reversal signals to Tiger that PG&E has not and cannot collect on any part of the

3   customer's unpaid balances.

4        9.    PG&E, however, is reversing Tiger customer accounts for which PG&E has in fact

5   received payment. Instead of applying those charges to the Tiger customer account balance, PG&E

6   is crediting those amounts to its own electric or gas transportation accounts, and then inexplicably

7   reversing the amounts owed to Tiger. PG&E similarly reverses accounts and then deceptively

8   retains the customer.

9        10.   These actions cause Tiger substantial harm, both with respect to the amounts

10   withheld and with respect to its relationships with its customers. Tiger has lost countless customers

11   who were annoyed or upset at Tiger's collection efforts on fully paid accounts that PG&E falsely

12   informed Tiger were in arrears.

13        11.   Further, Tiger has disconnected or cancelled hundreds of customer accounts for non-

14   payment based on PG&E's false representations made over the wires in interstate commerce to

15   Tiger that the Tiger customers had not paid their bill for Tiger's charges.

16        12.   PG&E has also used its fiduciary position as Tiger's billing and collections agent to

17   engage in unlawful competition with Tiger by, among other things, inaccurately informing Tiger's

18   customers that they need not pay for Tiger's services and by using its position as Tiger's billings

19   and collections agent to improperly induce Tiger's customers to switch their service to PG&E.

20        13.   PG&E's abuse of its fiduciary relationship with Tiger as well as its abuse of its

21   market power as a regulated monopoly is knowingly calculated to drive away as many customers

22   from Tiger as possible back to PG&E; these actions are done with the specific intent to destroy

23   competition in the retail natural gas commodity market in PG&E's service area.

24        14.   PG&E's actions hurt both consumers and competition in California, increasing

25   commodity gas prices in California.

26        **THE PARTIES**

27        15.   Tiger Natural Gas, Inc. is a privately-owned provider of retail natural gas to end-user

28   residential and commercial customers throughout the United States. Tiger is headquartered at 1422

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 3 -

COMPLAINT

CASE NO.:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

1   East 71st Street, Suite J, Tulsa, Oklahoma 74136.

2       16.    Defendant PG&E is a California corporation with its principal place of business

3   located at 77 Beale Street, San Francisco, California 94105. PG&E is a subsidiary of PG&E

4   Corporation and is one of the largest regulated investor-owned electric utilities in California. On its

5   website (http://www.pge.com), PG&E represents that its service area extends from Eureka in the

6   north to Bakersfield in the south, and from the Pacific Ocean to the Sierra Nevada. It operates

7   141,215 circuit miles of electric distribution lines and 18,616 circuit miles of interconnected

8   transmission lines throughout this area. According to its website, PG&E maintains 4.3 million

9   natural gas customer accounts.

10       17.    PG&E is a regulated monopoly utility within its service area. It is regulated by the

11   California Public Utility Commission ("CPUC").

12       18.    Defendant Albert Torres is the Vice President of Customer Operations at PG&E and

13   manages, *inter alia*, PG&E's billing, payment processing, and credit activities for its customers.

14   Defendant Bill Chen works at PG&E as its ESP Services Manager and manages PG&E's

15   relationships with CTAs (as well as PG&E's relationship with competitive electricity providers).

16   Defendant Tanisha Robinson works at PG&E as its Supervisor for EDI Operations and ESP Billing.

17   Ms. Robinson manages Optional Consolidated PG&E Billing and the process by which EDI files

18   (described below) are transmitted to Tiger.

19   **JURISDICTION & VENUE**

20       19.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this

21   action arises out of PG&E's violations of the laws of the United States. This Court has

22   supplemental jurisdiction over Tiger's claims based on California law under 28 U.S.C. § 1367. In

23   addition, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are

24   citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and

25   costs.

26       20.    This Court has personal jurisdiction over PG&E because PG&E resides in this State,

27   does business in this State, has engaged in acts or omissions within this State causing injury, and

28   has otherwise established contacts with this State making the exercise of personal jurisdiction

- 4 -

COMPLAINT

CASE NO.:

1  proper.

2      21.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) & (2) because PG&E

3  resides in this District, and a substantial part of the events or omissions giving rise to the action

4  occurred in this District.

5                          **INTRADISTRICT ASSIGNMENT**

6      22.     Pursuant to Civil L-R 3.2(c), intradistrict assignment in San Francisco is proper

7  because the unlawful conduct that gives rise to these claims occurred in the City and County of San

8  Francisco.

9                          **GENERAL ALLEGATIONS**

10     23.     PG&E has been the regulated monopoly utility in Northern California since 1905. It

11 traditionally provided both electricity and natural gas to all end users—both residential and

12 commercial—in its service area. As a monopoly utility, PG&E is regulated by the CPUC. Through

13 the use of a pre-approved formula, the CPUC regulates the rates that PG&E may charge for the

14 energy it provides, including the price it may charge for the commodity of natural gas.

15     24.     According to its website, PG&E has approximately 4.3 million natural gas customer

16 accounts in its service area.

17     25.     In 1991, the state legislature partially deregulated the natural-gas utility industry in

18 California.

19     26.     In connection with this deregulation, the CPUC established a pilot aggregation

20 program which offered residential and small commercial gas customers, called "core" customers,

21 the opportunity to aggregate their gas loads so that they could participate in competitive gas markets

22 and thereby obtain a lower price for natural gas. Because of this program, California residents are

23 free to purchase their commodity gas from either PG&E or from certain private providers, called

24 "Core Transport Agents," or CTAs.

25     27.     The stated purpose of the CTA program is to "lower[] CTA customer prices and

26 enabl[e] [CTAs] to better compete with utilities and weaken monopolies." (*See*

27 http://www.cpuc.ca.gov/General.aspx?id=4803.) CTAs such as Tiger provide much-needed and

28 consumer-driven alternatives to the utility model, such as gas commodity fixed pricing, unlimited

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 5 -

COMPLAINT                                                              CASE NO.:

usage billing, winter fixed rates and guaranteed lower summer rates that the utility model—PG&E's model in particular—simply cannot provide.

28. Although California core gas customers may purchase their natural gas from a non-monopoly CTA, the regulated monopoly utilities, including PG&E, continue to provide natural gas utility service to these customers.

29. Accordingly, the CTAs compete with PG&E for natural gas core customers.

30. A proposed CTA must fulfill exacting standards to operate in California, completing an extensive application, submitting the fingerprints of its executives, establishing its creditworthiness and, ultimately, posting a security bond. Accordingly, the regulatory process itself creates barriers to entry in addition to typical business needs such as capitalization and market expertise.

31. CTAs purchase natural gas on the open market and sell the gas directly to end users using PG&E's distribution system. When an end user purchases gas from a CTA instead of PG&E, the utility charges a separate "transportation" charge to the customer. In addition, PG&E typically charges customers for electricity on the same bill.

32. The natural gas supplied by the CTAs is fungible in chemical composition and function, completely interchangeable with that supplied by PG&E; both may be used by core customers to heat homes and businesses and other such uses.

33. As another aspect of deregulation, CTAs may elect, as a matter of right, to have their billing consolidated with PG&E's; i.e., both the CTA's and PG&E's charges appear on one statement and the customer pays both with one check (or other method) to PG&E.

34. Specifically, under PG&E's relevant tariffs, known as its "Gas Rules," CTAs have the right to participate in a billing and payment program called "Optional Consolidated PG&E Billing." If the CTA chooses this billing option, PG&E must calculate the CTA's charges based on the customer's gas usage and apply the proprietary and confidential rate provided by the CTA to PG&E once a month. Under Consolidated PG&E Billing, PG&E "assumes responsibility for the accuracy of the calculation of CTA's charges," but not for the accuracy of the CTA's rate per therm of natural gas provided. Gas Rule No. 23.C.1.c(1)(b)(iv).

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 6 -

COMPLAINT

CASE NO.:

35.     PG&E operates Consolidated Billing as a unit separate from its primary business activities. Tanisha Robinson, for example, supervises two employees whose responsibility includes little else beyond sending the electronic files referenced in Paragraphs 54, 66, and 76 and otherwise maintaining the Consolidated Billing structure imposed by Gas Rule 23. William Chen similarly devotes all of his work time to managing either Consolidated Billing or to managing customer care issues (e.g., switching customers' gas commodity service either to or from a CTA) associated with Consolidated Billing.

36.     Under Consolidated Billing, PG&E also acts as the CTA's collections agent. As such, PG&E is required to pay to the CTA the amounts paid to PG&E for the CTA's gas commodity charges after it receives that money from the customer. Gas Rule 23.C.1.c(4)(a). PG&E is required to transfer the received payments to the CTA either 17 days after the bill was rendered to the customer or the next business day after the payment is received by the utility. *Id.*

37.     When transferring payments, PG&E is required to specify the amount paid by each service account. *Id.* If there are any amounts resulting from returned payments (e.g., the customer's check "bounces") or returned payment charges, PG&E may debit those amounts to the CTA on the billing statement for the following month. *Id.* The tariffs permit no other debits or set-offs.

38.     PG&E is responsible for collecting the unpaid balance of all charges from customers, sending notices informing customers of unpaid balances, and taking the appropriate actions to recover any unpaid amounts owed to the CTA. Gas Rule 23.C.1.c(5)(a).

39.     Tiger is a qualified CTA operating in PG&E's service area. Tiger signed a Core Gas Aggregation Service Agreement with PG&E in January 2009 and began serving customers in Northern California shortly thereafter.

40.     Tiger supplies natural gas to its customers by transporting it across interstate pipelines for delivery to the PG&E Citygate. On receipt of Tiger's gas, PG&E charges Tiger both for storing it and for transporting it to the customer based on "take or pay" terms, the amount of which is determined by reference to Tiger's overall volume (or "load") calculated on both a monthly and yearly basis.

41.     Tiger spends significant time and money marketing for customers. These activities

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 7 -

1  include engaging in direct-mail marketing, door-to-door marketing, internet and print campaigns,

2  and other activities.

3      42.     As a result of these marketing efforts, Tiger grew its customer base in PG&E's

4  service area to approximately 39,000 customers as of October 2016.

5      43.     Tiger participates in the Consolidated PG&E Billing Option, making PG&E its

6  billing and collections agent for all of Tiger's core customers in PG&E's service area. Tiger pays

7  PG&E approximately $25,000 per month for this service.

8      44.     Because PG&E holds all of Tiger's customer information and also is responsible for

9  calculating the amount due, billing those amounts, collecting the money, and providing it to Tiger,

10  the utility exercises a tremendous amount of control over Tiger's customer base.

11  **PG&E's Payment Withholding Scheme**

12      45.     After PG&E receives the customer's payment, it unilaterally divides the payments

13  among the various service accounts contained in the bill, including Tiger's charges for natural gas,

14  PG&E's transportation charge, and PG&E's electricity charges (if any). PG&E takes the position

15  that this process is proprietary and will not share information about how it divides the payments

16  received. In its role as Tiger's billing and collections agent, PG&E has engaged in improper and

17  unlawful activities which have violated Tiger's rights and caused Tiger damages and irreparable

18  harm in a number of ways.

19      46.     Specifically, for some of Tiger's core customers, PG&E simply does not remit to

20  Tiger funds it has received for Tiger's gas commodity charges. As of the date of this filing, Tiger

21  has not received full payment from PG&E on thousands of Tiger customer accounts. According to

22  Tiger's records, as of at least October 2016, it is owed over $1.3 million from its customers with

23  aging accounts past due by sixty days or more.

24      47.     To track the billing process, PG&E regularly provides Tiger with an Electronic Data

25  Interchange ("EDI") file or a file transfer link containing information about each account for which

26  there is activity.  For easy reference, Tiger in this Complaint refers to the types of information

27  packets sent by PG&E as "EDI files" regardless of format.

28      48.     The EDI files contain information about the status of Tiger's customer accounts.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

- 8 -

COMPLAINT                                                    CASE NO.:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

1    Specifically, in the EDI files PG&E makes several representations to Tiger about its customers,

2    including:

3         a.    Tiger customers to whom PG&E has sent a bill containing Tiger's commodity gas

4              charges and the amount of Tiger's charges that PG&E will collect;

5         b.    Tiger customers who have paid Tiger's previous charges and the amount PG&E has

6              apportioned to Tiger;

7         c.    The balance of the Tiger customer's account for Tiger's commodity gas charges;

8         d.    The identity of Tiger customers who have not fully paid Tiger's gas charges; and/or

9         e.    The number and identity of Tiger customers who have had charges "reversed" by

10             PG&E.

11        49.   PG&E's EDI files frequently contain intentionally false representations to Tiger

12   about the status of its customer accounts, including representations that certain customers have not

13   paid Tiger's charges, when those customers actually are current.

14        50.   PG&E sends the EDI files using interstate wires; that is, PG&E typically attaches the

15   file or a link to a file-share site to an email that is sent over the internet from California to Tulsa,

16   Oklahoma.

17        51.   Tiger relies on the data and representations of PG&E contained in the EDI files.

18   When it does not receive payments from PG&E for its customers, Tiger may contact the customer

19   regarding the delinquency.

20        52.   Often, however, the customers state that they have fully paid their energy bill to

21   PG&E, including all of Tiger's gas charges.

22        53.   For these customers, PG&E's EDI files, sent over the internet from California to

23   Tulsa, Oklahoma, and which show that the customer has not made the required payments for

24   Tiger's commodity gas charges, contain intentionally false and misleading information and also fail

25   to disclose material information about Tiger's customer accounts.

26        54.   For example, PG&E has used transmission over the internet to falsely report the

27   status of the following accounts to Tiger:

28        a.    By EDI file transmitted on or about March 7, 2011, PG&E notified Tiger of a

- 9 -

COMPLAINT                                                           CASE NO.:

1    delinquency for customer I. Smith (SAID *3870). PG&E continued to notify Tiger of on-

2    going delinquencies by this customer on a daily basis until October 15, 2014, or over 1,000

3    such occurrences. In fact, the customer had paid in full, and PG&E had simply withheld

4    payment to Tiger. Indeed, Tiger attempted to verify the status of this account with PG&E on

5    October 15, 2013, February 25, 2014, and March 14, 2014, without receiving any

6    substantive information from PG&E. On August 27, 2014, Jennifer Yee, a subordinate of

7    the Individual Defendants stated, over interstate wire, that the customer had made "partial

8    payments." This statement was false when made and, in fact, the customer had made

9    consistent and timely payments. On or about October 15, 2014, Tiger disconnected this

10   customer based on false information provided by PG&E.

11   b.      By EDI file transmitted on or about April 2, 2015, PG&E notified Tiger of a

12   delinquency for Kyle W. (SAID *6681). PG&E continued to notify Tiger of on-going

13   delinquencies by this customer on a daily basis until July 2, 2015, or about 90 such

14   occurrences. In fact, the customer had timely paid his bill each month and PG&E showed no

15   outstanding balance. Shortly thereafter, Tiger disconnected the customer for non-payment.

16   "Manuel," an employee in PG&E's customer care, told the customer that PG&E had timely

17   remitted each of his payments to Tiger, which was false when made. In addition, PG&E's

18   customer care used the call opportunity occasioned by its false and misleading bills, as well

19   as the disconnection occasioned by PG&E's false and misleading EDI files sent to Tiger, to

20   falsely tell the customer that Tiger costs 60% more than PG&E.

21   c.      By EDI file transmitted on or about June 30, 2015, PG&E notified Tiger of a

22   delinquency for Paul B. (SAID *1010).  PG&E continued to notify Tiger of these

23   delinquencies until July 21, 2015 and, in fact, backdated several hundred dollars of

24   transactions to June 24, 2014. On August 7, 2015, Tiger, in reliance on PG&E's false

25   statements, sent the customer a collection letter for non-payment. The customer supplied

26   copies of his PG&E bills showing payment in full and then disconnected from Tiger,

27   reverting back to PG&E's gas service.

28   d.      By EDI file transmitted on or about June 20, 2013, PG&E notified Tiger of a

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 10 -

Case: 19-30088    Doc# 11537-1    Filed: 11/04/21    Entered: 11/04/21 16:58:47    Page
10 of 36
EXHIBIT 1

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

1   delinquency for customer City of M. (SAID *9520). PG&E continued to notify Tiger of on-

2   going delinquency by this customer on a daily basis until July 20, 2016. That is, PG&E sent

3   over 1,000 EDI files indicating that this customer was delinquent. PG&E's statements were

4   false when made because the customer had, in fact, timely made all payments to PG&E.

5   Alternatively, each of the EDI files sent to Tiger stated that this account had not paid when,

6   in fact, PG&E had applied an energy credit on the customer's bills, indicating to the

7   customer that no payment to Tiger was due.

8   e.      By EDI file transmitted on or about September 4, 2014, PG&E notified Tiger of a

9   delinquency for customer City of M. (SAID *9115). PG&E continued to notify Tiger of on-

10   going delinquency by this customer on a daily basis until September 2, 2016. That is, PG&E

11   sent over 1,000 EDI files indicating that this customer was delinquent. PG&E's statements

12   were false when made because the customer had, in fact, timely made all payments to

13   PG&E. Alternatively, each of the EDI files sent to Tiger stated that this account had not paid

14   when, in fact, PG&E had applied an energy credit on the customer's bills, indicating to the

15   customer that no payment to Tiger was due.

16   f.      By EDI file transmitted on or about March 14, 2013, PG&E notified Tiger of a

17   delinquency for customer County of S. C. (SAID *5075). PG&E continued to notify Tiger

18   of on-going delinquency by this customer on a daily basis until March 17, 2016. That is,

19   PG&E sent over 1,000 EDI files indicating that this customer was delinquent. PG&E's

20   statements were false when made because the customer had, in fact, timely made all

21   payments to PG&E. Alternatively, each of the EDI files sent to Tiger stated that this account

22   had not paid when, in fact, PG&E had applied an energy credit on the customer's bills,

23   indicating to the customer that no payment to Tiger was due.

24   g.      By EDI file transmitted on or about September 8, 2014, PG&E notified Tiger of a

25   delinquency for customer E.R. Mobile Home Park (SAID *1005). PG&E continued to

26   notify Tiger of on-going delinquency by this customer on a daily basis until March 30, 2015.

27   That is, PG&E sent over 200 EDI files indicating that this customer was delinquent.

28   PG&E's statements were false when made because the customer had, in fact, timely made

- 11 -

Case: 19-30088   Doc# 11537-1   Filed: 11/04/21   Entered: 11/04/21 16:58:47   Page
11 of 36
EXHIBIT 1

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

1  all payments to PG&E. Alternatively, each of the EDI files sent to Tiger stated that this

2  account had not paid when, in fact, PG&E had applied an energy credit on the customer's

3  bills, indicating to the customer that no payment to Tiger was due.

4      h.    By EDI file transmitted on or about May 8, 2014, PG&E notified Tiger of a

5  delinquency for customer County of S.J. (SAID *0150). PG&E continued to notify Tiger of

6  on-going delinquency by this customer on a daily basis until September 16, 2015. That is,

7  PG&E sent over 450 EDI files indicating that this customer was delinquent. PG&E's

8  statements were false when made because the customer had, in fact, timely made all

9  payments to PG&E. Alternatively, each of the EDI files sent to Tiger stated that this account

10  had not paid when, in fact, PG&E had applied an energy credit on the customer's bills,

11  indicating to the customer that no payment to Tiger was due.

12      55.    Tiger has cancelled hundreds of its customer accounts for non-payment based on

13  false information about the status of payments received from PG&E.

14      56.    Many of these cancelled accounts had fully paid for the natural gas provided by

15  Tiger, but PG&E did not provide those funds to Tiger, creating the impression that the customers

16  had not paid the appropriate charges when, in fact, the customers had remitted to PG&E either the

17  full or partial amount due for Tiger's charges.

18      57.    Tiger has otherwise continued to supply gas to PG&E for Tiger's active customers—

19  including those detailed in Paragraphs 54a-h, above—not knowing that PG&E's accounting

20  methods either failed to properly bill Tiger's customers for the gas or failed to properly credit to

21  Tiger payments received from such customers. In effect, PG&E's Payment Withholding Scheme

22  dupes Tiger into supplying gas to PG&E, which PG&E holds and uses knowing that its accounting

23  methods ensure that Tiger will not be paid in full for such gas.

24      58.    PG&E's Payment Withholding Scheme additionally benefits PG&E because Tiger

25  must pay PG&E transportation and storage fees, which are based on the volume of gas Tiger

26  provides for its customers. The transportation and storage fees become stranded costs as a result of

27  the Schemes set forth in this Complaint, since the Schemes prevent Tiger from recouping these

28  costs from the affected customers. These fees are significant: Tiger pays PG&E over $180,000.00

- 12 -

COMPLAINT                                                    CASE NO.:

Case: 19-30088    Doc# 11537-1    Filed: 11/04/21    Entered: 11/04/21 16:58:47    Page
12 of 36
EXHIBIT 1

1  per month in transportation fees alone.

2  59.   In other words, PG&E has engaged in a pattern and practice of intentionally

3  withholding money from Tiger that PG&E received from Tiger customers for natural gas delivered

4  by Tiger. PG&E benefits from its deception regardless of the action taken by Tiger. If Tiger cancels

5  the customers' accounts for non-payment, these customers revert back to PG&E for their natural-

6  gas service. If Tiger does not cancel, PG&E continues to receive Tiger's gas without paying for it

7  and continues to charge Tiger to transport and store the gas.

8  60.   Citing its customer confidentiality policies, PG&E refuses to provide information

9  related to the payment status of Tiger's customers. PG&E only tells Tiger the amount of money

10  PG&E has elected to apportion to Tiger. Tiger must trouble the customer for any other information,

11  such as the amount paid to PG&E or how PG&E has credited the customer's balance.

12  61.   In other words, having unlawfully kept money owed to Tiger and perpetuated a

13  scheme to engender cancellations from Tiger (for alleged non-payment) or to appropriate free gas

14  and storage/transportation fees, PG&E affirmatively prevents Tiger from uncovering the scheme by

15  citing "customer privacy" concerns.

16  **PG&E's Energy Credit Scheme**

17  62.   PG&E engages in a pattern and practice of offsetting Tiger's customers' charges for

18  natural gas delivered to Tiger's customers with credits from non-Tiger related charges.

19  63.   Neither the parties' contract nor the Gas Rules permit PG&E to offset PG&E's

20  customer credit structure with amounts owed to Tiger.

21  64.   For example, PG&E offers its customers certain subsidies and credits for obtaining

22  some of their electricity through solar panels and similar renewable energy programs. PG&E

23  improperly applies these credits to Tiger's gas commodities charges, such that the customer sees

24  either that no payment is due for the month or that an amount is due that will not cover Tiger's

25  charges.

26  65.   In other words, PG&E accepts gas from Tiger for these customers and delivers gas to

27  these customers on Tiger's behalf, but informs the customer that s/he does not need to pay any

28  amount because of an applied credit. Effectively, PG&E defrauds Tiger of its gas and uses it to

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 13 -

COMPLAINT                                                    CASE NO.:

1   subsidize its customer credit programs.

2   66.   Some specific instances of this conduct include:

3   a.   By EDI file transmitted on or about January 23, 2015, PG&E notified Tiger that it

4   had billed Sareth R. (SAID *3593) for Tiger's gas commodity charges. In fact, PG&E had

5   applied an energy credit, indicating to the customer that he owed Tiger nothing. By EDI

6   files transmitted daily on or about August 24, 2015, PG&E similarly notified Tiger that it

7   had continued to bill and was attempting to collect Tiger's charges when in reality PG&E's

8   bills informed the customer that the customer owed nothing due to operation of the energy

9   credit.  Tiger disconnected this customer, relying on PG&E's false statements and returning

10   the account to PG&E's default gas service.

11   b.   By EDI file transmitted on or before September 15, 2015, PG&E notified Tiger that

12   it had billed customer Richard S. (SAID *3010) for Tiger's gas commodity charges. In fact,

13   PG&E had applied an energy credit, indicating to the customer that he owed Tiger nothing.

14   Until August 15, 2016, PG&E similarly sent Tiger daily EDI files stating that it had billed

15   and was attempting to collect Tiger's charges, when in reality PG&E's bills informed the

16   customer that he owed nothing due to operation of the energy credit. In total, PG&E

17   transmitted a total of over 330 false and misleading EDI files. On or about April 13, 2016,

18   Tiger disconnected this customer, relying on PG&E's false statements and returning the

19   account to PG&E's default gas service.

20   c.   By EDI file transmitted on or about June 26, 2012, PG&E notified Tiger that it had

21   billed an account for the City of M. (SAID *9615) for Tiger's gas commodity charges. In

22   fact, PG&E had applied an energy credit, indicating to the customer that it owed Tiger

23   nothing. By EDI files transmitted daily to the present day, PG&E similarly has notified

24   Tiger that it had again billed and was attempting to collect Tiger's charges when in reality

25   PG&E's bills inform the customer that it owes nothing due to operation of the energy credit.

26   In total, PG&E transmitted literally thousands of false and misleading EDI files to Tiger.

27   d.   By EDI file transmitted on or about April 23, 2015, PG&E notified Tiger that it had

28   billed John L. (SAID *1015) for Tiger's gas commodity charges. In fact, PG&E had applied

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 14 -

COMPLAINT                                                    CASE NO.:

an energy credit, indicating to the customer that he owed Tiger nothing. By EDI files transmitted daily until April 11, 2016, PG&E similarly notified Tiger that it had again billed and was attempting to collect Tiger's charges when in reality PG&E's bills informed the customer that he owed nothing due to operation of the energy credit. In total, PG&E transmitted approximately 340 false and misleading EDI files to Tiger.

67.      In each case set forth above, PG&E's EDI file informed Tiger that it billed and was attempting to collect Tiger's gas commodity charges when, in fact, PG&E had applied a credit such that the customer was told not to pay Tiger anything. Further, PG&E's EDI file informed Tiger that the customer was not paying Tiger's gas commodity charges when, in fact, PG&E had induced the unwitting customer into not paying Tiger.

68.      Tiger has cancelled thousands of its customer accounts for non-payment based on false information about the status of payments received from PG&E.

69.      Tiger has otherwise continued to supply gas to PG&E for Tiger's active customers—including those detailed in Paragraphs 66a-d, above—not knowing that PG&E had not only failed to bill the customer but also affirmatively told the customer that s/he need not pay Tiger for its services. In effect, PG&E's Energy Credit Scheme dupes Tiger into supplying gas to PG&E, which PG&E holds and uses knowing that its accounting methods ensure that Tiger will not be paid for such gas and reducing the amount of credit that PG&E owes to the customer.

70.      PG&E's Energy Credit Scheme additionally benefits PG&E because Tiger must pay PG&E transportation and storage fees, which are based on the volume of gas Tiger provides for its customers. The transportation and storage fees become stranded costs as a result of the Schemes set forth in this Complaint, since the Schemes prevent Tiger from recouping these costs from the affected customers. These fees are significant: Tiger pays PG&E over $180,000 per month in transportation fees alone.

71.      In other words, PG&E has engaged in a pattern and practice of intentionally using Tiger's gas and gas commodity charges to underwrite PG&E's energy credit program. PG&E's Energy Credit Scheme also caused Tiger to cancel customers (for alleged non-payment). These customers then default to PG&E's gas commodity service.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

- 15 -

Case: 19-30088    Doc# 11537-1    Filed: 11/04/21    Entered: 11/04/21 16:58:47    Page 14
of 36
15 of 36
EXHIBIT 14

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

72.     Citing its unlawful and unregulated customer confidentiality policies, PG&E refuses to provide information related to the payment status of Tiger's customers. That is, PG&E will only tell Tiger the amount of money PG&E has elected to apportion to Tiger. Tiger must trouble the customer for any other information, such as the amount paid to PG&E or how PG&E has credited the customer's balance.

73.     In other words, having kept money owed to Tiger and perpetuated a scheme to engender either cancellations from Tiger (for alleged non-payment) or free gas from Tiger (when Tiger continues to supply the customer), PG&E affirmatively prevents Tiger from uncovering the scheme by citing "customer privacy" concerns.

**The Reversal Scheme**

74.     PG&E has engaged in a pattern and practice of withholding amounts due to Tiger where PG&E claims that the funds are due for "reversals."

75.     PG&E's EDI files contain information showing which accounts have "reversed."

76.     Some specific examples of this include:

a.     By EDI file transmitted on or about March 15, 2016, PG&E represented that it had billed Richard S. (SAID *3010) $9.35 for Tiger's services, with a purported (but likely fraudulent) balance of $116.46. By EDI file sent on or about March 15, 2016, PG&E informed Tiger that it "reversed" previous customer payments in the amount of $46.90, $38.75, $29.78, $27.71,$27.38, $18.36, $18.26, $15.46, $12.78, $11.46, $9.75, $7.20, $6.82, $6.74, $6.16, $6.07, $5.88, $5.09, $4.96, $4.76, $4.74, $4.71, $4.62, $4.57, $4.46, $4.46, $4.40. That same day, PG&E applied payments in the amount of $1.73, $4.40, $4.46, $4.57, $4.71, $4.74, $4.76, $5.09, $6.74, $6.82, $12.78, $15.46, $18.26, $18.36, $27.71, $29.78, leaving a balance *after* application of payments of $288.32. On or about April 13, 2016, Tiger disconnected this customer, relying on PG&E's false statements and returning the account to PG&E's default gas service. Nevertheless, PG&E continued to apply and reverse these amounts on April 14, 2016, May 14, 2016, June 14, 2016, July 15, 2016, and August 15, 2106, reporting false balances to Tiger on a daily basis.

b.     By EDI file transmitted on or about May 24, 2015, PG&E represented that it had

- 16 -

COMPLAINT

CASE NO.:

EXHIBIT P

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

billed Sareth R. (SAID *3593) $6.94 for Tiger's services, with a purported (but likely fraudulent) balance of $36.79. By EDI file sent on or about May 27, 2015, PG&E informed Tiger that it "reversed" previous customer payments in the amount of $41.33, $34.24, $31.60, $11.91, and $11.01. That same day, PG&E applied payments in the amount of $11.01, $11.91, $31.60, $34.24, and $41.33 leaving a balance *after* application of payments of $36.79. PG&E continued to apply and reverse these and other amounts on June 24, 2015, July 23, 2015, August 24, 2015, September 23, 2015, October 26, 2015, and periodically thereafter, reporting false balances to Tiger on a daily basis. On or about August 24, 2015, Tiger disconnected this customer, relying on PG&E's false statements and returning the account to PG&E's default gas service.

c.      By EDI file transmitted on or about August 7, 2014, PG&E represented that it had billed E.R. Mobile Home Park (SAID *1005) $1,060.86 for Tiger's services, with a purported balance of $1,060.86. By EDI file sent on or about August 11, 2014, PG&E informed Tiger that it "reversed" previous customer payments in the amount of $11,647.19, $3,172.71, $2,750.35, $640.72, and $466.36. That same day, PG&E applied payments in the amount of $11,647.19, $3,172.71, $2,750.35, $640.72, and $466.36. PG&E made additional reversals on that day in the amount of $7,299.88 and $4,918.88. PG&E also applied additional payments on that same day in the amount of $91.61, $256.12, $347.53, $4,918.88, and $7,299.88. PG&E continued to apply and reverse these and other amounts on this account on September 8, 2014, October 8, 2014, November 5 and 18, 2014, and December 6, 2014, causing large swings in the balances reported by PG&E.

77.      In December 2014, PG&E permanently "reversed" thousands of Tiger's customers, representing about $47,635.00 in reversals.  In February 2015, PG&E "reversed" another $30,000.00 worth of customers. Further, Tiger has identified thousands of accounts that PG&E has either reversed or disconnected to itself without notice to Tiger.

78.      Similar to some of the examples in Paragraphs 76a-c, PG&E backdated many of these reversals, as though the reversal had occurred months beforehand.

79.      According to the EDI files sent by PG&E many of the customers reversed by PG&E

- 17 -

Case: 19-30088   Doc# 11537-1   Filed: 11/04/21   Entered: 11/04/21 16:58:47   Page
17 of 36
EXHIBIT 4

1    had made payments in the prior months.

2        80.    PG&E has provided no explanation for this practice, and neither the contract

3    between the parties nor the Gas Rules permit it.

4        81.    PG&E's EDI files showing a reversal falsely informed Tiger that these customers

5    had "reversed," when in fact, they had not.

6        82.    Alternatively, PG&E's EDI files showing payments were false because they stated

7    that the customer had paid Tiger's charges when, in fact, the customer had not.

8        83.    PG&E's actions have damaged Tiger by eroding its customer base, denying it

9    current and future revenue. PG&E's actions have also damaged Tiger by disrupting its cash flow,

10   which impacts nearly every aspect of its business. For example, Tiger cannot accurately project

11   revenue or manage its credit facilities when PG&E mercurially reverses customers or offsets

12   payments. The Schemes similarly interfere with Tiger's relationship with its customers, who

13   become understandably angry and frustrated when their bills do not accurately reflect the balance

14   owed to Tiger, resulting in significant additional expenses and penalties imposed on Tiger.

15       84.    The Schemes also render near impossible Tiger's ability to perform basic business

16   functions, such as determining and reporting bad debt because the Schemes conceal from Tiger

17   which balances have been paid (but not remitted to Tiger), which customers have been told not to

18   pay Tiger at all (due to the Energy Credit Scheme) and which accounts and payments have been

19   unlawfully reversed back to PG&E (the Reversal Scheme).

20       85.    The Schemes, moreover, diminish competition within the gas commodity market as

21   a whole. Between 2012 and 2014—before full implementation of the Schemes—the firm pipeline

22   capacity (or "load") for all CTAs grew from approximately 12% share of the total load to

23   approximately 19%. Since implementation of the Schemes, however, the load has steadily and

24   precipitously decreased to 15.4% of the total load.

25       86.    Further, the Schemes have resulted in increased consumer prices despite an ample

26   supply of natural gas and despite decreasing wholesale prices. Between 2014 and present, the

27   monthly California price of natural gas delivered to residential consumers has *increased* from $10

28   per thousand cubic feet to $12 per thousand cubic feet. During that same time period, the Citygate

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 18 -

Case: 19-30088   Doc# 11537-1   Filed: 11/04/21   Entered: 11/04/21 16:58:47   Page
18 of 36
EXHIBIT 1

1  price for natural gas in California has *decreased* from approximately $6.00 per thousand cubic feet

2  to approximately $3.00 per thousand cubic feet. In other words, consumers in California are paying

3  20% more for natural gas since implementation of the Schemes even though the Citygate price is

4  50% less than it was in 2014.

5        87.    Perhaps more important, the Schemes prohibit customers from participating in

6  alternative products, such as fixed price, unlimited usage pricing, winter fixed rates, and guaranteed

7  lower summer rates.

8        88.    PG&E, as a corporation, does not acknowledge the Schemes. For example, on April

9  30, 2015, David Reyes (Defendant Robinson's subordinate) admitted in testimony, with PG&E's

10  in-house counsel present, the facts underlying the Energy Credit Scheme (i.e., that non-cash credits

11  are used to "mask" a CTA's charges). The day before, on April 29, 2015, PG&E's in-house counsel

12  averred to the CPUC that PG&E does *not* apply non-cash credits to a CTA's charges. PG&E's in-

13  house counsel have taken no steps to correct or reconcile either statement.

14        89.    Even after its own employee testified about the Schemes, PG&E has done little or

15  nothing to curtail the unlawful acts of the Individual Defendants. PG&E profits from these acts in

16  several ways: by charging Tiger transportation and storage fees; by increasing the bad debt of its

17  competitors; and by reducing its own liability for mandatory credits. Finally, PG&E is able to

18  charge consumers higher prices despite the falling Citygate cost of natural gas.

### CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**(Violation of the Racketeer and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968)**

21        90.    Tiger incorporates herein by reference all allegations set forth in Paragraphs 1

22  through 89 of this Complaint.

### FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS
### RICO COUNT I
### (Violation of RICO § 1962(c))

25        91.    The allegations of paragraphs 1 through 90 are incorporated herein by reference.

26        92.    This Count is against Defendants Torres, Robinson, and Chen (the "Count I

27  Defendants").

28        93.    Consolidated Billing is an enterprise engaged in and whose activities affect

- 19 -

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

COMPLAINT

CASE NO.:

EXHIBIT 1

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

interstate commerce. The Count I Defendants engaged in the predicate act of wire fraud by way of the Payment Withholding Scheme, the Energy Credit Scheme and the Reversal Scheme in furtherance of the Consolidated Billing enterprise.

94. The Count I Defendants are employed by or associate with the enterprise.

95. The Count I Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding the Plaintiff.

96. Specifically, Defendant Robinson directs her department to provide Tiger with the Electronic Data Interchange ("EDI") files containing the false information as detailed in Paragraphs 54, 66 and 76. Defendant Robinson directs her department to transmit this false information through interstate wires (i.e., over the internet and telephone network) to Tiger in Tulsa, Oklahoma. Defendant Robinson further directs her department to deceive Tiger when it enquires about these schemes.

97. Defendant Torres oversees and directs the employees in Customer Operations to withhold payments from Tiger, as described *supra* in Paragraphs 54, 66 and 76. Defendant Torres similarly directs the employees in Customer Operations to apply PG&E energy credit programs (e.g., for solar panels, etc.) to Tiger's charges, as described *supra* in Paragraph 66. Defendant Torres directs the employees in Customer Operations to apply reversals in the manner described in Paragraph 76. Finally, Defendant Torres directs the employees in Customer Operations to use customer care calls originating from the Payment Withholding Scheme and the Energy Credit Scheme to inform Tiger customers that they do not and will never pay less with Tiger's services and to convince the customer to drop Tiger.

98. Defendant Chen oversees and manages the CTA program. Defendant Chen manages and implements the Payment Withholding Scheme, the Energy Credit Scheme, and the Reversal Scheme. Specifically, Defendant Chen directs and coordinates these schemes between Defendant Robinson and Defendant Torres.

99. The Payment Withholding Scheme, the Energy Credit Scheme, and the Reversal Scheme constitute wire fraud in violation of 18 U.S.C. § 1343. Specifically, each of these Schemes

- 20 -

concern the transmission of false information in the EDI files, with the intent of either withholding payments from Tiger, defrauding Tiger of its gas commodity to subsidize PG&E's customer credit program, or reducing Tiger's customer base.

100.    The Payment Withholding Scheme, the Energy Credit Scheme, and the Reversal Scheme involve use of interstate wires (i.e., the internet) to transmit the EDI files to Tiger.

101.    The Count I Defendants have evidenced specific intent to defraud Tiger because the practical effect of the Schemes is that the customer defaults to PG&E's gas commodity service. The Count I Defendants have similarly evidenced specific intent to defraud Tiger because another practical effect of the Schemes is to withhold money from Tiger or to subsidize PG&E's other business units. Finally, the Count I Defendants evidence shows specific intent to defraud Tiger since they have undertaken efforts to conceal the Schemes.

102.    The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

103.    This pattern poses the threat of continuing. The first predicate act of the Reversal Scheme, for example, dates back to 2013 and continues through today. The Count I Defendants deploy the Payment Withholding Scheme and the Energy Credit Scheme each month with Tiger's customers via transmission of the false EDI files.

104.    As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Tiger has been injured in its business and property in that the Count I Defendants defraud Tiger of money or gas commodities and have eroded Tiger's customer base.

105.    WHEREFORE, Plaintiff requests that this Court enter judgment against the Count I Defendant(s) as follows:

a.  Actual damages in an amount to be proven at trial, but estimated to be in the millions of dollars;

b.  Treble damages and attorneys' fees and costs as provided in 18 U.S.C. § 1964(c); and

c.  Any other relief the Court determines is appropriate.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

- 21 -

COMPLAINT                                                                                   CASE NO.:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

**RICO COUNT II**
**(Violation of RICO § 1962(d))**

106.     The allegations of paragraphs 1 through 105 are incorporated herein by reference.

107.     This Count is against Defendants Torres, Robinson, and Chen (the "Count II Defendant(s)").

108.     As set forth above, the Count II Defendants agreed and conspired to violate 18 U.S.C. § 1962(c).

109.     The Count II Defendants have intentionally conspired and agreed to directly and indirectly conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

110.     The Count II Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

111.     As a direct and proximate result of the Count II Defendants' conspiracy to commit racketeering activities and violations of 18 U.S.C. § 1962(c), Tiger has been injured in its business and property in that the Count II Defendants defrauded Tiger of money or gas commodities and have eroded Tiger's customer base.

112.     WHEREFORE, Plaintiff requests that this Court enter judgment against the Count II Defendants as follows.

    a.   Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

    b.   Treble damages and attorneys' fees and costs as provided in 18 U.S.C. § 1964(c); and

    c.   Any other relief the Court determines is appropriate.

**SECOND CAUSE OF ACTION**
**(Respondeat Superior/Agency)**

113.     Tiger incorporates herein by reference all allegations set forth in Paragraphs 1

- 22 -

COMPLAINT

CASE NO.:

Case: 19-30088    Doc# 11537-1    Filed: 11/04/21    Entered: 11/04/21 16:58:47    Page 1
EXHIBIT 1
22 of 36

through 112 of this Complaint.

114.    PG&E is distinct from the Consolidated Billing RICO enterprise operated by Robinson, Chen, and Torres (the "Individual Defendants"). Specifically, Consolidated Billing is not part of PG&E's voluntary business model nor is it intended to be a profitable line of business. Indeed, PG&E neither officially condones nor acknowledges the existence of the Schemes. PG&E officially denies, for example, the existence of the Energy Credit Scheme (as its in-house lawyers did on April 29, 2015 in their averments before the CPUC), even though the Individual Defendants and their employees openly acknowledge the practice and despite the fact that PG&E benefits from it.

115.    PG&E has benefited from the racketeering activities of the Individual Defendants. PG&E charges Tiger transportation and storage fees for natural gas. The Schemes increase the bad debt of PG&E's competitors and increase PG&E's market share for core gas customers. Most important, the Schemes reduce PG&E's own liability for any mandatory credit. Finally, as a result of the Schemes, PG&E is able to charge consumers higher prices than it otherwise could, even while the Citygate cost of natural gas falls.

116.    The Individual Defendants committed the racketeering activities within the time and space limits of their employment with PG&E. That is, the Individual Defendants committed the racketeering activities while they were working in PG&E's offices and with PG&E's systems. On information and belief, the Individual Defendants were motivated to commit the racketeering activities for the purpose of benefiting PG&E financially through increased profit and market share, and thereby benefiting themselves as the employees responsible.

117.    The racketeering activities were of a kind that the Individual Defendants were hired by PG&E to perform legitimately. That is, each Individual Defendant used his/her position at PG&E to perpetuate the Schemes by committing the predicate acts under the auspices of their usual job responsibilities. For example, Defendant Torres oversees the employees in Customer Operations but directs them to withhold payments from Tiger in furtherance of the Payment Withholding Scheme, as described *supra* in Paragraphs 54, 66 and 76. Defendant Torres similarly oversees the employees in Customer Operations but directs them to apply PG&E energy credit programs (e.g.,

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 23 -

Case: 19-30088    Doc# 11537-1    Filed: 11/04/21    Entered: 11/04/21 16:58:47    Page
23 of 36

EXHIBIT 1

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

for solar panels, etc.) to Tiger's charges in furtherance of the Energy Credit Scheme, as described *supra* in Paragraph 66. Defendant Torres also directs the employees in Customer Operations to apply reversals in the manner described in Paragraph 76 in furtherance of the Reversal Scheme. Finally, Defendant Torres directs the employees in Customer Operations to use customer care calls to inform Tiger customers that they do not and will never pay less with Tiger's services and to convince the customer to drop Tiger, in furtherance of the Payment Withholding Scheme and the Energy Credit Scheme. Similarly, Defendants Robinson and Chen direct the employees in ESP Services and EDI Operations to compile and send the EDI files over the wires containing the false information set forth in Paragraphs 54, 66 and 76. None of the Individual Defendants would be able to perpetuate the Schemes without the authority vested in them through their positions at PG&E.

118.    PG&E eventually learned of the Schemes, as evidenced by the presence of its in-house counsel during the testimony of David Reyes on April 30, 2015 but, nonetheless, does nothing to stop them. As their employer, PG&E not only supplied the Individual Defendants with the means to perpetuate the Schemes, but PG&E could have stopped the Individual Defendants and, to date, has not done so.

119.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

    a.   Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

    b.   Treble damages and attorneys' fees and costs as provided in 18 U.S.C. § 1964(c); and

    c.   Any other relief the Court determines is appropriate.

### THIRD CAUSE OF ACTION
**(Attempt to Monopolize in Violation of the Sherman Act § 2, 15 U.S.C. § 2)**

120.    Tiger incorporates herein by reference all allegations set forth in Paragraphs 1 through 119 of this Complaint.

121.    A market exists for the provision of natural gas to Core Customers in Northern

- 24 -

COMPLAINT

CASE NO.:

California. The geographical boundaries of this market are Eureka in the north to Bakersfield in the south, and from the Pacific Ocean to the Sierra Nevada (the "Relevant Geography"). Core Customers are all residential customers within the Relevant Geography regardless of load size, commercial customers with annual loads below 250,000 therms, and those commercial customers with annual loads above 250,000 therms who elect to receive the higher reliability associated with core service. The relevant product in this market is natural gas, which is a fossil fuel extracted from the earth and largely comprised of methane and other hydrocarbons. The natural gas sold to residential and small business customers for use as an energy source is fungible, may be interchanged regardless of the provider, and is not distinguishable by quality. It can be used for heating, cooking, and other household applications.

122.     PG&E is the traditional utility and, until 1991, held a state sanctioned monopoly in the Relevant Geography. Consequently, PG&E currently owns and operates all the infrastructure that physically stores and transports natural gas to Core Customers within the Relevant Geography. As a result of this monopoly, 100% of the Core Customers receive their gas via pipes, meters, and other facilities owned and operated by PG&E.

123.     PG&E also holds a near monopoly on natural gas billing and collections operations within the Relevant Geography. Nearly 100% of the Core Customers in the Relevant Geography receive a monthly utility bill from PG&E, whether for natural gas, the transportation of those services, or both.

124.     The CTAs compete with PG&E to sell natural gas to Core Customers within the Relevant Geography. Approximately twenty-two CTAs operate in the Relevant Geography using PG&E's infrastructure.

125.     Recognizing that establishing utility billing and collection services created an unfair barrier to entry, the CPUC requires PG&E to share its billing and collection services with CTAs. Approximately 18 CTAs use PG&E as their billing and collections agents (i.e., those CTAs use PG&E Consolidated Billing), paying PG&E about $.70 per customer per month for this service. No CTA retails to all Core Customers (i.e., both residential and small commercial) without using PG&E Consolidated Billing. A CTA like Tiger cannot practically or reasonably establish its own

- 25 -

Case 19-30088   Doc# 11537-1   Filed: 11/04/21   Entered: 11/04/21 16:58:47   Page 4
25 of 36                                                      EXHIBIT 1

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

billing and collection services within the Relevant Geography and continue to offer natural gas to Core Customers at competitive prices. Thus, without the use of PG&E's billing and collections services, CTAs like Tiger cannot compete with PG&E in the natural gas market. Consequently, PG&E's billing and collections services constitute an essential facility. Though the CPUC has compelled PG&E to share its billing and collection services, the CPUC lacks the effective power to regulate the scope, terms, and manner in which those services are provided to CTAs and has failed to prevent the predatory Schemes from occurring.

126.    Because the number of Core Customers varies and their individual gas usage is difficult to encapsulate, an entity's given market share is typically measured in terms of "load"— the percentage of the overall natural gas demand in the Relevant Geography the entity supplies.  In 2012, PG&E supplied 88% of the total load to Core Customers in the Relevant Geography, while all CTAs combined supplied 12%. By 2014, the CTAs increased their market share to 19%, while PG&E's share decreased to 81% of the total load to Core Customers in the Relevant Geography. Since implementation of the Schemes, however, PG&E has augmented its market share to 85%.

127.    PG&E sets the price for its natural gas to Core Customers on a monthly basis by application of a regulated formula. While the formula itself does not change, PG&E exercises discretion over variables, such as calculation of its purchase price, expenses, overcharges, and the like, to include in the formula. PG&E publishes this price once per month, typically around the twenty-fifth day, without prior approval from the CPUC. CTAs using PG&E's billing and collections must provide their monthly price to PG&E by the first of each month.

128.    PG&E has committed overt predatory and exclusionary acts demonstrating its specific intention to destroy competition for natural gas commodity service to Core Customers in the Relevant Geography by providing its billing and collections services in a fraudulent, unfair, unreasonable, and discriminatory manner, denying the CTAs fair and reasonable access to an essential facility. Specifically, PG&E uses its role as the CTAs' billing agent to withhold money due and owing to the CTAs by operation of the acts set forth in the Payment Withholding Scheme, which misleads the CTA into believing that the customer is not paying. The Energy Credit Scheme deceives both the customer into believing that no payment is due to the CTA and the CTA into

- 26 -

believing that the customer willfully is not paying. The CTAs, including Tiger, either disconnect these customers, defaulting them back to PG&E's gas commodity service, or attempt collection efforts which frustrate the customer into returning to PG&E's service. Finally, with the Reversal Scheme, PG&E simply disconnects Core Customers within the Relevant Geography from the CTAs' natural gas service and returns them to PG&E's natural gas service. These fraudulent, unfair, unreasonable, and discriminatory Schemes lack any legitimate business justification and evidence PG&E's specific intent to destroy competition in the natural gas market. Such Schemes are perpetrated against the CTAs not by competitive zeal, but by anticompetitive malice.

129. PG&E, therefore, intentionally leverages its monopoly in its billing and collections services to expand its market share in the deregulated natural gas commodity market to Core Customers.

130. The Schemes have several anti-competitive results. First, the Schemes significantly increase operating expenses for CTAs. For example, CTAs must expend large sums—typically millions of dollars annually—on marketing costs just to maintain their customer base as a result of the Reversal Scheme. Quite literally, the Schemes eliminate the CTAs customer base nearly as quickly as a CTA, spending millions of dollars each year, can build it up. CTAs have no ability to expand their output.

131. In addition, CTAs have large carrying costs because the Payment Withholding Scheme and the Energy Credit Scheme ensure that the CTA will be either paid months late or not at all (that is, the CTAs must buy the natural gas and expend money storing and transporting it while PG&E prohibits payment from the customer).

132. The Schemes are perpetuated against all CTAs using PG&E's billing and collections services and have resulted in significant loss of the CTA's market share and increased costs to the CTAs. Tiger alone has lost about half of its customers as a result of the Schemes. On May 28, 2016, another competitor, United Energy Trading, LLC filed a Complaint in the Northern District of California (styled *United Energy Trading, LLC v. Pacific Gas and Electric Co., et al.*, Case No. 3:15-cv-02383-RS) alleging, *inter alia*, that it also lost tens of thousands from its peak of 65,000 Core Customers in the Relevant Geography as a result of the Schemes. On June 9, 2016, another

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 27 -

EXHIBIT 9

competitor, North Star Gas Company d/b/a YEP, filed a Complaint in the Northern District of California (styled *North Star Gas Co. v. Pacific Gas and Electric Co., et al.*, Case No. 3:15-CV-02575-HSG) alleging, *inter alia*, that it has similarly lost tens of thousands from its peak of 54,000 Core Customers in the Relevant Geography as a result of the Schemes. Similarly, other CTAs, such as Vista Energy, have reported that PG&E carries out the Schemes against their Core Customers in the Relevant Geography and that, similar to Tiger, United Energy and North Star, each CTA has reported loss of customer and market share.

133. In short, the Schemes drive up the CTAs' expenses and, by winnowing their customer base, reduce the CTAs' effective economies of scale, preventing the CTAs from pricing natural gas as competitively against PG&E's price as they once could since, no matter how low the CTA sets it prices, PG&E can use Consolidated Billing to reverse customers back to itself, or dupe the CTA into terminating the service, or falsely convince their customers to leave the CTA's gas services and return to PG&E's services.

134. Put another way, the predatory Schemes force CTAs into a Hobson's Choice: remain with PG&E's billing and collections services, operated in a predatory manner; or institute separate billing-and-collections, already determined to be a barrier to entry.

135. Indeed, as a result of the Schemes, PG&E increased its share of the load—and, therefore, its share of the natural gas market for Core Customers in the Relevant Geography—from 81% to 85% in just the two years since implementing the predatory Schemes.

136. Consumers themselves have been harmed by PG&E's anticompetitive conduct since PG&E has been able to raise its prices without fear of competition from the CTAs. For example, Core Customers have experienced a 20% increase in gas prices at a time when wholesale gas prices have decreased by 50%, as set forth in Paragraph 86.

137. The Schemes pose a dangerous probability of allowing PG&E to achieve market power. The Schemes have erected barriers to entry and expansion in the Relevant Geography and resulted in a reduction in competition in the retail natural gas commodity market. Several companies that retail natural gas in other states, such as Colorado based Aurora NG, will not attempt entry as a result of PG&E's predatory practices. Other CTAs have allowed the Reversal

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 28 -

Case: 19-30088    Doc# 11537-1    Filed: 11/04/21    Entered: 11/04/21 16:58:47    Page 44
EXHIBIT 1
28 of 36

Scheme to dwindle their customer base for ultimate withdrawal from the market. One such CTA has seen its customer base decline from about 40,000 to just around 5,000 since January 2015; this company will not invest in acquiring additional customers because of the Schemes. PG&E's schemes have made entry and expansion unprofitable, despite the fact that PG&E's gas supply is priced above competitive levels, due to the increased costs of marketing, customer retention, and carrying costs imposed by the Schemes.

138.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a.    Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

b.    Treble damages and attorneys' fees and costs as provided in 15 U.S.C. § 15; and

c.    Any other relief the Court determines is appropriate.

### FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

139.    Tiger incorporates herein by reference all allegations set forth in Paragraphs 1 through 138 of this Complaint.

140.    As set forth above, because Tiger has selected the option of Consolidated PG&E Billing, PG&E acts as Tiger's billing and collections agent for all of Tiger's customers in PG&E's service area.

141.    Specifically, PG&E calculates the amounts owed by Tiger's customers for natural gas, sends a bill containing Tiger's charges to Tiger's customers, collects payments from Tiger's customers, and remits (or is supposed to remit) those amounts to Tiger.

142.    Under this arrangement, PG&E represents Tiger with respect to billing and collection issues to Tiger's customers and is entrusted with the duty to receive and disburse Tiger's money and to keep accurate records of these transactions. Because they are Tiger's customers, Tiger has a right to control and supervise PG&E's actions as the beneficiary of the fiduciary relationship.

143.    Accordingly, PG&E is Tiger's agent under Cal. Civ. Code § 2295, and owes Tiger a

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 29 -

COMPLAINT                                                           CASE NO.:

1    fiduciary duty of loyalty.

2    144.    PG&E has retained moneys that it collected from Tiger's customers for its own

3    benefit and has failed and refused to turn those amounts over to Tiger. This is a breach of PG&E's

4    duty of loyalty to Tiger.

5    145.    In addition, PG&E has used its special relationship of trust as Tiger's billing and

6    collections agent as well as its position as the default monopoly natural gas provider to improperly

7    compete with Tiger, including making false representations to Tiger about the status of its customer

8    accounts and also encouraging Tiger's customers to cancel Tiger's services so that the customer

9    will revert back to PG&E.

10    146.    Tiger has been damaged by PG&E's breach of its fiduciary duty to Tiger, including

11    amounts that PG&E has wrongfully withheld from Tiger and customers terminated without reason

12    due to PG&E's fraudulent representations to Tiger.

13    147.    PG&E's breach of its duty of loyalty and fraud were done intentionally and with

14    malice designed to injure Tiger.  Specifically, as set forth above in Paragraphs 45 through 89,

15    PG&E made repeated false statements to Tiger about the amounts owed and paid by Tiger's

16    customers, and wrongfully allocated Tiger customer payments to PG&E's own charges.

17    148.    PG&E's breach of its duty of loyalty and fraud were made with the advance

18    knowledge and authorization of William H. Chen, the manager of PG&E's Account Services group

19    for Core Transport Agents.

20    149.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as

21    follows:

22        a.    Actual damages in an amount to be proven at trial, but expected to be in the millions

23        of dollars;

24        b.    Exemplary and punitive damages as permitted by law;

25        c.    Its attorneys' fees and costs incurred as permitted by law; and

26        d.    Any other relief the Court deems appropriate.

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

- 30 -

Case: 19-30088   Doc# 11537-1   Filed: 11/04/21   Entered: 11/04/21 16:58:47   Page
30 of 36
EXHIBIT 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

## FIFTH CAUSE OF ACTION
### (Intentional Misrepresentation)

150.    Tiger incorporates herein by reference all allegations set forth in Paragraphs 1 through 149 of this Complaint.

151.    PG&E made repeated, intentionally false statements to Tiger every time that PG&E used the wires to transmit information about Tiger's customer accounts which reflected that Tiger's customers had not paid for all of Tiger's charges, but where in fact the customer had either fully paid for Tiger's charges or where PG&E told the customer not to pay Tiger's charges.

152.    These false statements were made as set forth in Paragraphs 54, 66, and 76 above and included affirmative false statements as to whether a customer had paid for Tiger's charges, as well as the intentional concealment of the fact that the customer had, in fact, paid Tiger's energy charges, but that PG&E retained those monies and applied them to its own customer accounts.

153.    PG&E intended that Tiger rely on PG&E's false statements and intentional concealment. Tiger justifiably relied on PG&E's false statements about its customers by sending collection and disconnection notices to these customers when, in fact, the customer's Tiger charges were fully paid to PG&E.

154.    PG&E's intentional false statements have caused Tiger damages, including lost revenues and income unlawfully withheld by PG&E, lost customers, lost market share, out of pocket costs associated with trying to collect customer accounts which PG&E falsely represented were not paid, and costs associated with trying to repair customer relationships for customers which Tiger mistakenly attempted to collect from when in fact the customer had fully paid all of Tiger's charges but PG&E had wrongfully withheld those amounts from Tiger. Through its actions, PG&E intended to cause Tiger injury. Further, PG&E carried on its actions with a willful and conscious disregard of the rights of Tiger and Tiger's customers.

155.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a.    Damages in an amount to be proven at trial, but estimated to be in the millions of dollars;

b.    Exemplary and punitive damages under Cal. Civ. Code § 3294;

- 31 -

COMPLAINT

CASE NO.:

c.      Its attorneys' fees and costs incurred as permitted by law; and

d.      Any other relief the Court deems appropriate.

### SIXTH CAUSE OF ACTION
### (Negligent Misrepresentation)

156.    Tiger incorporates herein by reference all allegations set forth in Paragraphs 1 through 155 of this Complaint.

157.    PG&E made repeated false statements to Tiger every time that PG&E used the wires to transmit information about Tiger's customer accounts which reflected that Tiger's customers had not paid for all of Tiger's charges, but where in fact the customer had fully paid for Tiger's charges but PG&E intentionally allocated those amounts to PG&E's portions of the customer's bill. These misrepresentations were material and were made without PG&E having reasonable grounds for believing the misrepresentations to be true.

158.    These misrepresentations were made as set forth in Paragraphs 1 through 89 above and included affirmative false statements as to whether a customer had paid for Tiger's charges, as well as the intentional concealment of the fact that the customer had, in fact, paid Tiger's energy charges, but that PG&E retained those monies and applied them to its own customer accounts.

159.    PG&E intended that Tiger rely on PG&E's misrepresentations. Tiger justifiably relied on PG&E's misrepresentations about its customers by, *inter alia*, disconnecting its customers when, in fact, the customer's Tiger charges were fully paid to PG&E.

160.    PG&E's misrepresentations described above have caused Tiger damages, including lost revenues and income unlawfully withheld by PG&E, lost customers, lost market share, out of pocket costs associated with trying to collect customer accounts which PG&E falsely represented were not paid, and costs associated with trying to repair customer relationships for customers which Tiger mistakenly attempted to collect from when in fact the customer had fully paid all of Tiger's charges but PG&E had wrongfully withheld those amounts from Tiger.

161.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

- 32 -

Case: 19-30088    Doc# 11537-1    Filed: 11/04/21    Entered: 11/04/21 16:58:47    Page
32 of 36

EXHIBIT 1

a.  Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

b.  Exemplary and punitive damages under Cal. Civ. Code § 3294;

c.  Its attorneys' fees and costs incurred as permitted by law; and

d.  Any other relief the Court deems appropriate.

### SEVENTH CAUSE OF ACTION
#### (Intentional Interference with Contract)

162.  Tiger incorporates herein by reference all allegations set forth in Paragraphs 1 through 161 of this Complaint.

163.  Tiger and its customers are parties to valid contracts under which Tiger provides natural gas and the customers pay Tiger's charges for that gas.

164.  PG&E is aware of Tiger's contracts with its customers.

165.  PG&E's intentional acts are designed to induce a breach or disruption of the contracts between Tiger and its customers. Specifically, PG&E made repeated, intentionally false statements to Tiger every time that PG&E used the wires to transmit information about Tiger's customer accounts which reflected that Tiger's customers had not paid for all of Tiger's charges, but where in fact the customer had fully paid for Tiger's charges but PG&E intentionally allocated those amounts to PG&E's portions of the customer's bill.

166.  In addition, PG&E's customer service representatives have encouraged Tiger customers to cancel Tiger's services during calls to discuss billing issues, which is an abuse of PG&E's status as Tiger's billing and collection agent.

167.  PG&E intended to interfere with contracts between Tiger and its customers by inducing Tiger to send disconnection notices to these customers when, in fact, the customers' Tiger charges were fully paid to PG&E.

168.  Certain Tiger customers have cancelled their contracts with Tiger based on PG&E's interference with the contracts between Tiger and these customers.

169.  PG&E's intentional interference with the contracts between Tiger and its customers have caused Tiger damages, including lost revenues and income unlawfully withheld by PG&E, lost

- 33 -

COMPLAINT

CASE NO.:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

EXHIBIT 4

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

1 customers, lost market share, out-of-pocket costs associated with trying to collect customer

2 accounts which PG&E falsely represented were not paid, and costs associated with trying to repair

3 customer relationships for customers which Tiger mistakenly attempted to collect from when in fact

4 the customer had fully paid all of Tiger's charges but PG&E had wrongfully withheld those

5 amounts from Tiger.

6      170.     WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as

7 follows:

8      a.     Damages in an amount to be proven at trial, but estimated to be in the millions of

9 dollars;

10      b.     Damages under Cal. Civ. Code § 3294;

11      c.     Its attorneys' fees and costs incurred as permitted by law; and

12      d.     Any other relief the Court deems appropriate.

### EIGHTH CAUSE OF ACTION
#### (Intentional Interference with Prospective Business Advantage)

15      171.     Tiger incorporates herein by reference all allegations set forth in Paragraphs 1

16 through 170 of this Complaint.

17      172.     Tiger and its customers have an economic relationship in which Tiger provides

18 natural gas and the customers pay Tiger's charges for that gas and under which there is a probability

19 of future economic benefit to Tiger.

20      173.     PG&E is aware of Tiger's economic relationship with its customers.

21      174.     PG&E's intentional acts are designed to induce a breach or disruption of the

22 economic relationship between Tiger and its customers. Specifically, PG&E made repeated,

23 intentionally false statements to Tiger every time that PG&E used the wires to transmit information

24 about Tiger's customer accounts which reflected that Tiger's customers had not paid for all of

25 Tiger's charges, but where in fact the customer had fully paid for Tiger's charges but PG&E

26 intentionally allocated those amounts to PG&E's portions of the customer's bill.

27      175.     PG&E intended to interfere with the economic relationship between Tiger and its

28 customers by inducing Tiger to send disconnection notices to these customers when, in fact, the

- 34 -

COMPLAINT

CASE NO.:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

1  customers' Tiger charges were fully paid to PG&E.

2  176.  In addition, PG&E's customer service representatives have encouraged Tiger

3  customers to cancel Tiger's services during calls to discuss billing issues, which is an abuse of

4  PG&E's status as Tiger's billing and collection agent.

5  177.  Certain Tiger customers have cancelled their economic relationship with Tiger based

6  on PG&E's interference with the economic relationship between Tiger and these customers.

7  178.  PG&E's intentional interference with the economic relationship between Tiger and

8  its customers have caused Tiger damages, including lost revenues and income unlawfully withheld

9  by PG&E, lost customers, lost market share, out of pocket costs associated with trying to collect

10  customer accounts which PG&E falsely represented were not paid, and costs associated with trying

11  to repair customer relationships for customers which Tiger mistakenly attempted to collect from

12  when in fact the customer had fully paid all of Tiger's charges but PG&E had wrongfully withheld

13  those amounts from Tiger.

14  179.  WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as

15  follows:

16  a.  Damages in an amount to be proven at trial, but estimated to be in the millions of

17  dollars;

18  b.  Exemplary and punitive damages under Cal. Civ. Code § 3294;

19  c.  Its attorneys' fees and costs incurred as permitted by law; and

20  d.  Any other relief the Court deems appropriate.

21

22  **NINTH CAUSE OF ACTION**
**(Violation of Cal. Bus. & Prof. Code § 17200, et seq.)**

23  180.  Tiger incorporates herein by reference all allegations set forth in Paragraphs 1

24  through 179 of this Complaint.

25  181.  PG&E's actions as described above are unlawful, unfair, anti-competitive, and/or

26  fraudulent business practices as defined by Cal. Bus. & Prof. Code § 17200, et seq.

27  182.  PG&E's unlawful, unfair, anti-competitive, and/or fraudulent business practices have

28  caused Tiger damages and irreparable harm.

COMPLAINT                                                    CASE NO.:

EXHIBIT D

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

183.    Tiger seeks restitution of all amounts paid by Tiger customers to PG&E that PG&E has not remitted to Tiger, plus applicable interest.

184.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a.    Restitution of all amounts paid by Tiger customers for Tiger natural gas charges which are being wrongfully held by PG&E;

b.    Its attorneys' fees and costs incurred as permitted by law; and

c.    Any other relief the Court deems appropriate.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff TIGER NATURAL GAS, INC. prays for judgment against Defendants Pacific Gas and Electric Company, Albert Torres, Bill Chen, and Tanisha Robinson as follows:

(1)    Actual damages on all applicable Counts in an amount to be proven at trial;

(2)    Treble damages and attorneys' fees and costs as provided in 18 U.S.C. § 1964(c);

(3)    Treble damages and attorneys' fees and costs against Pacific Gas & Electric Company as provided in 15 U.S.C. § 15;

(4)    Exemplary and punitive damages as permitted by law;

(5)    Any other attorneys' fees and costs as permitted by law; and

(6)    Such other and further relief as may be appropriate.

### JURY DEMAND

Tiger respectfully demands a trial by jury under Fed. R. Civ. P. 38 on all of its claims so triable as permitted by law.

Dated:  November 18, 2016

/s/ Nicholas B. Melzer
HOLLAND & KNIGHT LLP
Nicholas B. Melzer

Attorneys for Plaintiff
TIGER NATURAL GAS, INC.

- 36 -

Case: 19-30088   Doc# 11537-1   Filed: 11/04/21   Entered: 11/04/21 16:58:47   Page
36 of 36
EXHIBIT 1