1

2

3

4                       UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    TIGER NATURAL GAS, INC.,                Case No.  16-cv-06711-JSW   (SK)

8              Plaintiff,

9         v.                                 **ORDER ON DISCOVERY DISPUTE**
                                             **REGARDING REQUESTS FOR**
10   PACIFIC GAS AND ELECTRIC                 **PRODUCTION OF DOCUMENTS**
     COMPANY, et al.,
11                                           Regarding Docket Nos. 67, 68, 69
              Defendants.

12

13        Now before the Court are the joint letter discovery briefs regarding disputes over requests

14   for production of documents.

15                                **BACKGROUND**

16        In this action, Tiger Natural Gas, Inc. ("Plaintiff") contends that Pacific Gas & Electric

17   Company ("PG&E") has engaged in fraudulent activity as the billing and collections agent for

18   Plaintiff. (Dkt. 1, ¶¶ 4-5.) Plaintiff is a Core Transport Agent ("CTA") and in this capacity buys

19   gas on the open market and sells it to customers using PG&E's system of distribution, in direct

20   competition with PG&E. (*Id.,* ¶¶ 2. 29, 31.) PG&E must offer CTAs a billing option known as

21   "Optional Consolidated PG&E Billing," in which both the CTA's charges and PG&E's charges

22   will appear on a single bill and in which the customer sends one payment to PG&E for both sets of

23   charges. (*Id.,* ¶ 33.) Plaintiff alleges that PG&E and its employees have transmitted fraudulent

24   information to the CTAs and caused damage to the CTAs. (*Id.,* ¶¶ 5 -13.)

25        Plaintiff alleges that PG&E participates in three fraudulent schemes: (1) the "Payment

26   Withholding Scheme," in which PG&E receives payments from Plaintiff's customers and "holds"

27   that money in a PG&E account instead of paying it to Plaintiff; (2) the "Energy Credit Scheme,"

28   in which PG&E applies credits from its own services and programs to Plaintiff's charges, which

**EXHIBIT 4**

reduces the payment to Plaintiff; and (3) the "Reversal Scheme," in which PG&E withholds amounts due to Plaintiff because of allegedly incorrectly billed amounts when the charges were actually paid correctly.  (*Id.,* ¶¶ 45-89.)

### ANALYSIS

Plaintiff moves to compel production of documents in three main categories:  (1) documents regarding pricing, forecasting, allocation, and the CTA's costs (Document Requests Nos. 29 – 33), (2) documents regarding the software system used to calculate the CTA's charges  - the Customer Care & Billing system ("CC&B") (Document Requests Nos. 8-16), and (3) documents from the gas procurement and lobbying group and communications with the Office of Ratepayer Advocates (Document Requests Nos. 7 and 34).

**A.  Document Requests Nos. 29-33**

Plaintiff seeks documents which Plaintiff needs for its Sherman Act antitrust claim.  Here, Plaintiff alleges that PG&E's conduct in the three schemes outlined above constitutes "overt predatory and exclusionary acts demonstrating its specific intention to destroy competition for natural gas commodity service" to customers.  (Dkt. 1, ¶ 128.)

Plaintiff claims its experts need to analyze "PG&E's anticompetitive conduct, how it affects the money plaintiffs must pay to PG&E for storage and transportation capacity, and its results on the natural gas market in Northern California."  (Dkt. 67 at page 4.)  Specifically, in Document Request No. 29, Plaintiff claims that it seeks "source documents" showing how PG&E developed tariffed rates "to ensure that PG&E's rates for storage and transportation and commodity price are correctly calculated."  (*Id.* at page 5.)  However, as PG&E correctly points out, the rate that PG&E charged for storage and commodity price are not at issue in this litigation.  (*Id.* at page 7.)  The relevant issue is whether PG&E's billing practices in the three schemes violate the Sherman Act.

In Document Request No. 30, Plaintiff seeks documents regarding forecasting and procurement to "establish whether PG&E properly calculated and charged the CTAs for storage and transportation."  (*Id.* at page 5.)  Again, pricing is not an issue in this case.

In Document Requests Nos. 31 - 33, Plaintiff seeks documents regarding changes in

EXHIBIT 4

PG&E's pipeline allocation, the load and storage costs of CTAs, and core gas supply procurement for pipeline and storage.  (*Id*.)  Plaintiff claims, without any explanation, that its expert witnesses need this information to compile a report, but Plaintiff provides no explanation of how these documents are relevant to the damages alleged in this case.  (*Id*.)  PG&E points out that, in the Complaint, Plaintiff alleges only that PG&E's anticompetitive behavior increased operating expenses for CTAs because PG&E's schemes eliminate the CTAs' customers, and they must spend more on marketing costs to attract customers.  (Dkt. 1, ¶ 130; Dkt. 67 at page 7.)  In addition, Plaintiff alleges in the Complaint that CTA's have large carrying costs because PG&E's schemes result in late payments – if at all – to CTAs such as Plaintiff.  (Dkt. 1, ¶ 131.)  The documents Plaintiff seeks in Requests Nos. 31 – 33 do not address the specific harm that Plaintiff alleges.  In addition, even on their face, the documents sought in Requests Nos. 31 – 33 are not relevant to damages or market share.

For these reasons, Plaintiff's motion to compel documents responsive to Requests Nos. 29-33 is DENIED.

**B.  Document Requests Nos. 8-16**

Plaintiff seeks documents regarding changes to the billing system, as Plaintiff asserted in hearing for this motion, that Plaintiff is concerned about changes to the billing system that adversely affected Plaintiff.  Plaintiff is also concerned that PG&E will allege as a defense that PG&E made changes to its billing system to "ameliorate the effects of the three schemes set forth in the Complaint." (Dkt. 68 at page 4.)  Plaintiff also seeks documents about potential changes that PG&E considered but rejected.  (*Id*.)  At the hearing on this matter, Plaintiff pointed to specific categories in which their expert or consultant found discrepancies in billing that caused Plaintiff to suspect a change in the billing system.

The parties have conducted discovery in a similar case, *United Energy Trading, LLC v. Pacific Gas & Elec. Co*., No. 15-CV-2383-RS (the "UET litigation").  In that case, Plaintiff United Energy Trading LLC, represented by the same counsel, took the deposition of PG&E pursuant to Fed. R. Civ. P. 30(b)(6).  PG&E designated Kimberly Miller as the deponent, and she testified that PG&E had made two changes to the billing system and that she was not aware of any

1   others.  (Dkt. 68-2, Ex. 2.)  The parties have stipulated that Plaintiff may rely upon Miller's

2   testimony.

3          Here, PG&E argues that producing documents in response to Requests Nos. 8-16 is

4   burdensome and not proportional to the case.  (Dkt. 68 at page 2.)  The Court agrees.  However,

5   the Court finds that some examination of the changes to the billing system or lack of changes to

6   the billing system is proportional to the needs of the case.  The Court ORDERS Plaintiff to

7   identify 10 representative samples of billing errors that Plaintiff suspects were caused by changes

8   in the billing system and provide that information to PG&E within 5 business days.  The Court

9   ORDERS PG&E to produce a witness most knowledgeable on the subject of whether the errors

10  were the result of a change in the billing system.  The parties must meet and confer on a date for

11  the deposition, but the deposition can take place after PG&E has at least 10 business days from the

12  receipt of the information from Plaintiff with the representative samples.

13         **C.  Document Requests Nos. 7 and 34**

14         Plaintiff seeks documents responsive to Request No. 7 from PG&E's gas procurement and

15  lobbying group.  (Dkt. 69 at pages 1, 4.)  Although PG&E produced documents responsive to

16  Request No. 7 in the UET litigation, PG&E did not search for those responsive documents from

17  all of the files of the lobbying groups.  (*Id*. at page 1.)  The Court finds that the request to search

18  all the files of lobbying groups for documents responsive to Request No. 7 is not proportional to

19  the case.  It is possible that there is a responsive document in one of those files, but the likelihood

20  is slim, given the nature of the lobbying groups' work.  The motion to compel PG&E to search all

21  the files of the lobbying groups to find documents responsive to Request No. 7 is DENIED.

22         Plaintiff also seeks documents responsive to Request No. 34 which address

23  communications between PG&E and the Office of Rate Payer Advocates about CTAs.  (*Id*. at

24  page 1.)  PG&E produced a document, the "ORA Report."  (*Id*. at page 5.)  PG&E is producing

25  quarterly reports and communications with ORA about the reports.  (*Id*. at page 8.)

26  / / /

27  / / /

28  / / /

United States District Court
Northern District of California

There appears to be no relevance of communications between PG&E and ORA about CTAs, and Plaintiff provides no explanation for the relevance. Thus, the motion to compel further documents responsive to Request No. 34 is DENIED.

**IT IS SO ORDERED**.

Dated: July 31, 2018



_____

SALLIE KIM
United States Magistrate Judge

United States District Court
Northern District of California