1  BROWN RUDNICK LLP
   David J. Molton (SBN 262075)
2  (DMolton@brownrudnick.com)
   Eric R. Goodman (admitted pro hac vice)
3  (EGoodman@brownrudnick.com)
   Seven Times Square
4  New York, New York 10036
   Telephone:   (212) 209-4800
5  Facsimile:   (212) 209-4801

6  BROWN RUDNICK LLP
   Joel S. Miliband (SBN 077438)
7  (JMiliband@brownrudnick.com)
   2211 Michelson Drive, Seventh Floor
8  Irvine, California 92612
   Telephone:   (949) 752-7100
9  Facsimile:   (949) 252-1514

10 *Attorneys for Fire Victim Trustee*

11              **UNITED STATES BANKRUPTCY COURT**
12              **NORTHERN DISTRICT OF CALIFORNIA**
                **SAN FRANCISCO DIVISION**
13

14 **In re:**                              | Bankruptcy Case
                                            | No. 19-30088 (DM)
15 **PG&E CORPORATION**
                                            | Chapter 11
16      **-and-**                           | (Lead Case)
                                            | (Jointly Administered)
17 **PACIFIC GAS AND ELECTRIC**
   **COMPANY,**                             | **MOTION OF THE FIRE VICTIM TRUSTEE**
18                                          | **PURSUANT TO FEDERAL RULE OF**
           **Debtors.**                     | **BANKRUPTCY PROCEDURE 2004 FOR**
19                                          | **ENTRY OF AN ORDER AUTHORIZING**
                                            | **DISCOVERY FROM ADVENTIST HEALTH**
20 □  Affects PG&E Corporation              | **SYSTEM/WEST AND ADVENTIST HEALTH**
                                            | **FEATHER RIVER AND SERVICE OF A**
   □  Affects Pacific Gas and Electric Company | **SUBPOENA ON FACTORY MUTUAL**
21                                          | **INSURANCE COMPANY**
   ■  Affects both Debtors
22                                          | **Response Deadline:**
                                            | November 23, 2021 (Pacific Time)
23 *All papers shall be filed in the Lead Case,
   No. 19-30088 (DM)*                       | **Hearing Information If Timely Response Made:**
24                                          | Date:  December 7, 2021
                                            | Time:  10:00 a.m. (Pacific Time)
25                                          | Place:  Via Zoom or AT&T Only
26

27

28

Case: 19-30088   Doc# 11556   Filed: 11/09/21   Entered: 11/09/21 10:54:38   Page 1 of 78

The Honorable John K. Trotter (Ret.), in his capacity as the Trustee (the "**Trustee**") of the Fire Victim Trust,[1] by and through his undersigned counsel, hereby submits this Motion (the "**Motion**") pursuant Federal Rule of Bankruptcy Procedure 2004 and Local Bankruptcy Rule 2004-1(a), seeking entry of an order authorizing discovery from Adventist Health System/West ("**Adventist Health**") and Feather River Hospital d/b/a Adventist Health Feather River ("**AHFR**" and together with Adventist Health, "**Adventist**") and the service of subpoena on Adventist's insurer Factory Mutual Insurance Company ("**FM Global**") so that the Trustee can accurately evaluate and fully administer the Proofs of Claim (Fire Claim Related) filed by Adventist in accordance with the Plan, the Confirmation Order, the Fire Victim Trust Agreement (the "**Trust Agreement**"), and the Fire Victim Claims Resolution Procedures (the "**CRP**"). The Trustee requests that the Court enter an order (*see* **Exhibit A** (proposed order)) authorizing service of the discovery requests in the form attached hereto as **Exhibit B** on Adventist and the service of the subpoena in the form attached hereto as **Exhibit C** on FM Global. In support of this Motion, the Trustee relies on the Declaration of Eric R. Goodman (the "**Goodman Declaration**") filed contemporaneously herewith, and respectfully states as follows:

## JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2004-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"), Paragraph 18 and Paragraph 78 of the Confirmation Order, Section 6.7 and Section 11.1 of the Plan, and Section 1.6 and Section 8.20 of the Fire Victim Trust Agreement.

Under Section 11.1(u) of the Plan, the Court retained jurisdiction "[t]o hear and determine disputes arising in connection with or related to the interpretation, implementation, or enforcement

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated June 19, 2020 [Dkt. No. 8048] (the "**Plan**").

1

of the Plan, the Confirmation Order, any transactions or payments contemplated herein, or any agreement, instrument, or other document governing or relating to any of the foregoing," "[t]o take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation," "[t]o hear and determine any rights, claims, or Causes of Action held by or accruing to … the Fire Victim Trust pursuant to the Bankruptcy Code or any federal or state statute or legal theory," and "[t]o hear and determine any dispute involving the Wildfire Trusts, including but not limited to the interpretation of the Wildfire Trust Agreements." Plan at § 11.1(i), (k), (t) & (u).[2]

Section 1.6 of the Fire Victim Trust Agreement provides that the "Bankruptcy Court shall have exclusive jurisdiction with respect to any action relating to or arising out of the [Fire Victim] Trust." Section 8.20 of the Fire Victim Trust Agreement provides that the "provisions of the Trust Documents shall be enforced by the [Bankruptcy Court]." This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

On January 29, 2019 (the "**Petition Date**"), PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company ("**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). On February 12, 2019, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the United States Trustee appointed an Official Committee of Tort Claimants

---

[2] Under Section 11.1 of the Plan, the Court also retained "jurisdiction … of all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes: … (c) [t]o ensure that distributions to holders of Allowed Claims are accomplished as provided herein; (d) [t]o consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claims; … (m) [t]o determine such other matters and for such other purposes as may be provided in the Confirmation Order; … (p) [t]o hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; … (r) [t]o determine any other matters or adjudicate any disputes that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any document related to the foregoing … (v) [t]o hear any other matter not inconsistent with the Bankruptcy Code."

2

1 (the "**TCC**"). Pursuant to the Confirmation Order entered by this Court on June 20, 2020, PG&E's

2 Plan was approved and confirmed under section 1129 of the Bankruptcy Code.

3 **Adventist's Objection to the Plan**

4 Three claimants filed claims in PG&E's bankruptcy for more than $1 billion. The Federal

5 Emergency Management Agency ("**FEMA**") filed the largest claim—$3.9 billion. FEMA agreed

6 to subordinate its claim to the Fire Victim Claims pursuant to a pre-confirmation settlement. The

7 California Governor's Office of Emergency Services ("**California**") filed the second largest

8 claim—$2.7 billion. California also settled pre-confirmation. Adventist also filed a $1 billion

9 claim for losses allegedly suffered because of the 2018 Camp Fire. Adventist did not settle pre-

10 confirmation. Adventist's claims were channeled to the Fire Victim Trust.

11 Adventist was an active participant in the Debtors' bankruptcy. Adventist, along with a

12 group of business claimants, objected to the Plan and Trust Agreement on multiple grounds. The

13 Plan created two distinct trusts. The first trust—the Subrogation Wildfire Trust—was funded with

14 $11 billion in cash and was established to pay current and future Subrogation Wildfire Claims. The

15 second trust—the Fire Victim Trust—was funded with cash and stock in PG&E and was

16 established to pay Fire Victim Claims—*i.e.*, the uninsured losses suffered by fire victims.

17 For this two-trust structure to function properly, insurers could not pass their coverage

18 obligations into the Fire Victim Trust. The fire victims' recovery would be diluted if amounts that

19 should be paid by insurers—and then reimbursed by the Subrogation Wildfire Trust based on the

20 resulting subrogation claim—were paid instead by the Fire Victim Trust. To prevent this, fire

21 victims must exercise reasonable efforts to exhaust their insurance recoveries before seeking

22 compensation from the Fire Victim Trust.

23 Section 6.7(a) of the Plan and Section 2.6 of the Trust Agreement require the Trustee to

24 reduce or offset all Fire Victim Claims by the amount of available insurance recoveries. This

25 provision is intended to incentivize fire victims to exercise reasonable efforts to obtain insurance

26 recoveries that are available to them. The passage of time has proven that this aspect of the

27 Debtors' Plan was critical and essential. The Fire Victim Trust is underfunded and does not have

28 sufficient assets to pay all Fire Victim Claims in full. Therefore, every dollar paid to a fire victim

3

that has available insurance is a dollar taken from another fire victim without insurance and/or from those with insurance who have uninsured claims, *e.g.*, claims for wrongful death, bodily injury, emotional distress, etc.

Adventist objected to the Plan, challenged the insurance offset (and, by implication, the two-trust structure), and demanded the right to seek judicial review of its claim determination if it refused to accept the Trustee's determination. *See* Dkt. No. 7072. Before this Court, Adventist argued that its claims should be determined under federal common law—and not state law—and that the insurance offset violated section 1123(a)(4) of the Bankruptcy Code. Adventist also argued that Plan violated section 1129(a)(1) by denying it the right to have its claim allowed by this Court.

This Court ruled in favor of Adventist regarding its demand for the right to seek judicial review but against Adventist regarding the insurance offset. The Court found that the objectors are entitled to a judicial determination of their claims if they do not agree with the Trustee. This finding was incorporated into Paragraph 18.k of the Confirmation Order. Adventist can seek judicial review from this Court if it does not agree with the Trustee's determination of its claim.

The Court rejected Adventist' challenge to the insurance offset. This Court found: "[E]quality of treatment is not the same as equality of outcome. [Adventist's] argument is rejected for that simple reason, as is [Adventist's] complaint that somehow parties with insurance do not do as well as those without insurance. The short answer, once again, is ask someone who lost a home but did not have insurance!" Dkt. No. 7597 at 8. This finding was incorporated into Paragraph 18.i of the Confirmation Order, which states: "[T]he process for assessing future offsets for available insurance recoveries set forth in Section 2.6 of the Fire Victim Trust Agreement is reasonable, proper and necessary and is approved in all respects."

### **Adventist's Appeal of the Confirmation Order**

Adventist appealed this Court's decision. Before the District Court, Adventist refined and advanced new arguments in opposition to the insurance offset set forth in Section 2.6 of the Trust Agreement. The District Court dismissed the appeal as equitably moot. *See* Dkt. No. 10179.

The District Court based its ruling on several factors. First, Adventist failed to seek a stay. Second, the Plan has been substantially consummated. Third, the relief sought by Adventist would

4

harm innocent third parties—namely, tens of thousands of other fire victims whose recoveries would be reduced if Adventist did not make a reasonable effort to recover under its insurance policies and Adventist were exempt from Section 6.7(a) of the Plan and Section 2.6 of the Trust Agreement.  Fourth, the District Court could not fashion equitable relief since Adventist's appeal attacked key provisions in the Plan.  *See id.*  Adventist appealed the District Court's ruling to the Ninth Circuit.  Adventist never sought a stay of this Court's ruling, which remains in effect.

### Fire Victim Trust Administration of Fire Victim Claims

Adventist, of course, is not the only party to suffer damages because of Fires caused by PG&E.  There are many fire victims besides Adventist who have a right to have their claims determined by the Fire Victim Trust.  More than 237,000 Fire Victim Claims were filed with the Fire Victim Trust by over 69,000 claimants.  As of October 15, 2021, the Fire Victim Trust has distributed more than $1.1 billion to nearly 24,000 fire victims, all of whom have their claims determined in accordance with California law and the insurance offset set forth in Section 2.6 of the Trust Agreement.

To reach a just determination of each Fire Victim Claim, the Fire Victim Trust depends on each claimant to submit the appropriate documentation to support all claims asserted.  Many fire victims have not received determination notices because their claims are missing documents or information required for the Fire Victim Trust to fully evaluate the claim.  *See* CRP § VII.A.  The Fire Victim Trust has issued 9,199 deficiency notices.  Many of the deficiency notices were sent to fire victims that have failed to provide sufficient information regarding their insurance coverage.

Some fire victims lost documentation to support their claims.  The Fire Victim Trust uses information from a claimant's proof of claim form, data from the Wildfire Assistance Program Claim Form, the Damages Questionnaire established under Case Management Order 5 in the California North Bay Fire Cases (JCCP 4955), as well as other reasonably ascertainable and reliable information.  *Id.*  As insurers have records that fire victim claimants may have lost in the Fires, the insurers themselves have been a critical source of claims data.

Insurance data is also used to determine what insurance proceeds have been paid to a fire victim and what (if any) additional proceeds the fire victim is entitled to receive from its insurer.

Case: 19-30088    Doc# 11556    Filed: 11/09/21    Entered: 11/09/21 10:54:38    Page 6 of 78

Having this information prevents any fire victim from receiving duplicate payments for the same claim or receiving a distribution from the Fire Victim Trust that should be paid by an insurer.

Because the Fire Victim Trust is a limited fund and because there are large claims yet to be determined, like those held by Adventist, the Trustee has only been able to make initial *pro rata* distributions of 30% of approved claim amounts. Until the Fire Victim Trust can fully administer all Fire Victim Claims, the fire victims must continue to wait for compensation. Access to claims data is and will continue to be essential to the Fire Victim Trust's ability to liquidate and pay claims.

**The Adventist Claims**

The Adventist claims, due to their size and complexity, have already received considerable attention. Adventist has produced to the Fire Victim Trust a substantial amount of paper, all of which has been thoroughly reviewed by Fire Victim Trust professionals to evaluate Adventist's claims. Three aspects of Adventist's claims and the information provided to date suggest that Adventist may not be entitled to ___*any*___ recovery from the Fire Victim Trust.

**First**, roughly half of Adventist's claim is for punitive or exemplary damages. Under the Plan Documents any award of punitive or exemplary damages is subordinate and junior in right to the prior payment in full of all Fire Victim Claims. Section IX.C of the CRP provides: "Any award of punitive or exemplary damages made by the Trustee or a Court with respect to any Claim shall be subordinate and junior in right to the prior payment in full of all Final Determinations and Final Judicial Determinations as provided herein." Since the Fire Victim Trust lacks sufficient assets to pay all Fire Victim Claims in full, any claim for punitive or exemplary damages is effectively worthless.

**Second**, of the $497 million[3] that Adventist claims it is owed that is not attributable to punitive or exemplary damages, roughly $116.1 million is for purely economic losses allegedly suffered by Adventist Health. Adventist Health is the parent of AHFR. Adventist Health does not

---

[3] The Fire Victim Trustee disputes and does not agree with the amounts asserted in the proofs of claim filed by Adventist.

6

allege that it suffered any property damage or personal injury because of the 2018 Camp Fire. Adventist Health alleges damages based on amounts it claims AHFR has not paid it for "shared services" allegedly owed under a verbal and unwritten agreement. This claim appears to be invalid under the Supreme Court of California's decision in *Southern California Gas Leak Cases*, 7 Cal. 5th 391, 441 P.2d 881 (Cal. 2019), which held that business claimants that did not suffer any personal injury or property damage cannot recover from a tortfeasor for purely economic losses.

**Third**, the remaining $380.9 million that Adventist claims it is owed appears to constitute almost a fully insured loss. AHFR owned and operated a hospital that was destroyed by the 2018 Camp Fire. Unlike Adventist Health, AHFR alleges that its real and personal property was destroyed by the 2018 Camp Fire. AHFR asserts that the Camp Fire damaged its main hospital campus and the Feather River Health Center, which had been one of the largest rural health clinics in the area. Contents of buildings were destroyed, including medical equipment, medical supplies, furniture, office and maintenance equipment and supplies. While the Fire Victim Trust disagrees with AHFR's calculation of its losses, the Fire Victim Trust does not doubt that certain damages sustained by AHFR were both real and devasting.

But AHFR appears to be almost fully insured for the property damages caused by the Camp Fire. AHFR's insurer—FM Global—has allegedly paid AHFR at least $127.8 million under the terms of its policy. If AHFR elects to rebuild a facility in Paradise, California—which remains to be seen—FM Global will be required to pay additional amounts to AHFR under the terms of its policy. Each category of damages included in AHFR's claim appears to be covered by AHFR's $1 billion insurance policy from FM Global, an entity in which Adventist appears to have an ownership interest.

Moreover, although FM Global has allegedly paid at least $127.8 million on account of the damages suffered by AHFR, FM Global did not file a subrogation claim in the Chapter 11 Cases. The Fire Victim Trustee does not know if FM Global has reinsurance, or if FM Global knowingly forfeited a $93 million recovery from the Subrogation Wildfire Trust—potentially more if FM Global must pay AHFR additional amounts under its policy. Insurers, through PG&E's funding of

7

the Subrogation Wildfire Trust with $11 billion in cash, obtained a substantial recovery under the Plan.

### Efforts to Obtain Information from Adventist

Adventist has asserted that it has vigorously pursued all insurance to which it is entitled. But, at the same time, Adventist has stonewalled efforts by the Fire Victim Trust to obtain information on this issue. To understand and administer the claims Adventist filed with the Fire Victim Trust, the Trustee served Adventist with Requests for Admission, Interrogatories and Document Requests on September 13, 2021.

Adventist responded to these requests by sending a letter to counsel for the Trustee on September 16, 2021, suggesting that Adventist would not provide any of the information covered by the Requests. *See* Goodman Decl. at Ex. 1.

Only after the Trustee replied by explicitly asking Adventist to confirm whether it would be producing any documents to the Fire Victim Trust pursuant to the requests (*see id.* at Exs. 2-4), Adventist provided the Trustee with a formal response to the requests, stating in part that "Adventist objects to the Requests *in their entirety* on the basis that the Trustee has *no authority* under the Fire Victim Claims Resolution Procedures (the 'CRP'), and/or any applicable rule, agreement, or order, to propound discovery upon Adventist under the Federal Rules of Civil Procedure (the "Federal Rules") or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") *at this time*." *Id.* at Ex. 5 (emphasis added).

Adventist's responses are in substance a non-response. Adventist challenges the Trustee's ability to obtain discovery from Adventist *at this time*. Absent an order from this Court, Adventist will not produce documents bearing on its efforts to recover from its insurer, FM Global. Given the Fire Victim Trust's lack of data from Adventist to substantiate its claims, and the coverage that appears to exist under the FM Global policy, the Fire Victim Trust issued a Deficiency Notice to Adventist on November 1, 2021. A copy of Adventist's Deficiency Notice is attached hereto as **Exhibit D**. The Fire Victim Trust could issue Adventist a subsequent notice stating that its claims are ineligible for payment by the Fire Victim Trust and are being disallowed on a final basis. However, there are two reasons that such a course of action is problematic.

8

**First**, based on this Court's ruling, Adventist is one of the few fire victims that secured the right to judicial review of its claim determination. Without further relevant information from Adventist, the Fire Victim Trust will be unable to allow Adventist claims and the Trustee is confident that Adventist would appeal that determination to this Court.

At that time, the Fire Victim Trust will seek the very same information it seeks today through discovery in the contested matter. The Fire Victim Trust is hopeful that obtaining the necessary information from Adventist now will result in the settlement of Adventist's claims and eliminate the need for judicial review. Or, at a minimum, it will give the Fire Victim Trust a better understanding of the nature and basis for the Adventist claim.

**Second**, the size of Adventist's claims and the fact that Adventist can appeal its claim determination to this Court impacts the reserve the Fire Victim Trust must establish when estimating claims for the purpose of determining the percentage of *pro rata* distributions the Fire Victim Trust can safely pay to other fire victims. Without the necessary data to accurately estimate Adventist's claims, the Fire Victim Trust must take a conservative approach and set aside a larger portion of Fire Victim Trust assets, which of course reduces the percentage that can be paid out to other fire victims.

Adventist and its insurer should produce the same information that has been required of and produced by other fire victims. The Fire Victim Trust is not interested in playing games when the recoveries of innocent fire victims that have fully complied with the claims process approved by this Court are at stake. While the Trustee disagrees with Adventist' positions asserted to date regarding the Trustee's ability to obtain information from Adventist regarding its claims, the Trustee now moves for an order from this Court under Bankruptcy Rule 2004.

## RELIEF REQUESTED

By this Motion, the Trustee requests entry of an order, pursuant to Bankruptcy Rule 2004:

   a. authorizing the Trustee to serve discovery in the form attached hereto as **Exhibit B** on Adventist (the "**Requests**");

   b. authorizing the Trustee to serve a subpoena in the form attached hereto as **Exhibit C** on FM Global (the "**Subpoena**"); and

9

c. providing that, except as otherwise agreed by the Trustee, within fifteen (15) days of service of a Requests, Adventist shall be directed to either (i) produce, on a rolling basis, all non-privileged documents responsive to the Requests, or (ii) file all objections and/or responses to the Requests with this Court.

## BASIS FOR RELIEF REQUESTED

Bankruptcy Rule 2004(a) states that on "motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). The scope of an examination sought under Rule 2004(b) may relate to "the acts, conduct, or property or to the *liabilities* and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b) (emphasis added).

The granting of a motion under Rule 2004 is within the "ultimate discretion" of the Court. *In re Art & Architecture Books of 21st Century*, No. 2:13-BK-14135, 2019 WL 9243053, at *6 (Bankr. C.D. Cal. Dec. 6, 2019) (quoting *In re Int'l Fibercom, Inc.*, 283 B.R. 290, 292-93 (Bankr. D. Ariz. 2002)). Bankruptcy Rule 2004 allows considerable leeway for all manner of so-called "fishing expedition[s]" if there is a reasonable nexus to the debtor and the administration of the debtor's case. *In re Mastro*, 585 B.R. 587, 597 (B.A.P. 9th Cir. 2018) (quoting *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011)). Any third party who has a relationship with the debtor may be made subject to a Rule 2004 investigation. *Mastro*, 585 B.R. at 597 (citing *In re Fin. Corp. of Am.*, 119 B.R. 728, 733 (Bankr. C.D. Cal. 1990)).

Adventist is incorrect in its assertion that it is too soon for the Trustee to seek discovery with respect to Adventist's claims. Court often authorize Rule 2004 examinations to investigate proofs of claim filed in bankruptcy cases. *See, e.g.*, *Subpoena Duces Tecum*, 461 B.R. at 829 (authorizing Rule 2004 examination to investigate proofs of claim and finding "[t]he subject matter of the examination—the basis and validity of BAC's various proofs of claim—is pretty clearly related to the debtors' liabilities"); *In re Deshetler*, 453 B.R. 295, 307-08 (Bankr. S.D. Ohio 2011) (authorizing Rule 2004 examination to investigate proofs of claim filed in bankruptcy cases and finding that "preliminary inquiries before determining if [a claim] objection is warranted" is

10

"exactly the purpose of a Rule 2004 examination"); *In re Michalski*, 449 B.R. 273, 280 (Bankr. N.D. Ohio 2011) (authorizing Rule 2004 examination relating to components of proof of claim filed in bankruptcy case); *In re Sheetz*, 452 B.R. 746, 749-50 (Bankr. N.D. Ind. 2011) (holding use of Rule 2004 examination to obtain information necessary to evaluate a proof of claim is "eminently reasonable"); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008) (authorizing Rule 2004 examination for discovery regarding policies and procedures employed by creditor in calculating its bankruptcy claim).

Liquidating trustees tasked with implementing parts of a confirmed chapter 11 plan post-confirmation can seek authority under Rule 2004 to conduct discovery. *See In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 625-28 (Bankr. D. Del. 2016) (holding trustee of trusts established under debtors' confirmed chapter 11 plans entitled to conduct Rule 2004 examination of third parties with knowledge of the circumstances of the debtors' financial collapse).

This Court has authorized the Fire Victim Trust to conduct discovery under Bankruptcy Rule 2004, including discovery from insurers to obtain claims data. *See In re PG&E Corp.*, Bankr. Case No. 19 30088, Second Order on Ex Parte Request for Rule 2004 Subpoenas and Setting Hearing (Nov. 23, 2020) [Docket No. 9594] (authorizing Rule 2004 examination of non-cooperating insurance carriers); *see also In re PG&E Corp.*, Bankr. Case No. 19-30088, Order Compelling PriceWaterhouseCoopers LLP's Compliance with Rule 2004 Subpoena in Relation to the General Rate Case Documents (Aug. 24, 2021) [Docket No. 11145].

Here, the Trustee seeks discovery from Adventist and FM Global to obtain a complete disclosure of insurance information necessary to evaluate Adventist's bankruptcy claims. The Fire Victim Trust also seeks information necessary to evaluate Adventist' calculation of its damages— *e.g.*, whether it even intends to rebuild a hospital in Paradise, California. The Fire Victim Trust has issued a deficiency notice to Adventist explaining that the Fire Victim Trust is unable to allow their claims based on the data provided to the Fire Victim Trust thus far.

There is no benefit to any party to withhold information. Without the requested information, the Fire Victim Trust cannot accurately estimate the total claims and must be conservative in determining how much can be paid out on account of Fire Victim Claims that are

11

approved. Moreover, the Trustee must anticipate the likelihood for litigation over Adventist's claims before this Court and account for the cost of such litigation.

Finally, unless the information that it is withholding shows malfeasance, Adventist gains nothing from its continued stalling tactics. Article IX.B.4 of the CRP prevents claimants that have the right to judicial review from submitting to the Court on appeal any documents that have been in the claimant's control and possession but were withheld from the Fire Victim Trust. And Adventist will be required to respond to discovery before this Court in any event if its claims are determined to have no value and it elects to have its claims determined by this Court pursuant to Paragraph 18.k of the Confirmation Order. Even if Adventist believes that the requested information will not establish whether Adventist's claims should be allowed, Adventist is not excused from producing data based on its own determination that the Fire Victim Trust does not need it. *See In re PG&E Corp.*, Bankr. Case No. 19 30088, Order Compelling PriceWaterhouseCoopers LLP's Compliance with Rule 2004 Subpoena In Relation To The General Rate Case Documents [Docket No. 11145] (". . . the Court is not persuaded by the 'you won't find anything so I don't have to give it to you' position being asserted.").

The Trustee will continue to seek consensual discovery from Adventist. But the Trustee is cognizant that Adventist is likely to continue its efforts to stall production of data and refuse to cooperate with the Trustee's requests for information. Adventist's position is akin to a claimant who objects to discovery under Rule 2004 as a pre-litigation tool used in advance of the filing of a formal claim objection. But as case law and Rule 2004 show, discovery regarding the validity and basis of a proof of claim is "clearly related to the debtors' liabilities" and falls within the scope of discovery permitted under Rule 2004. *Subpoena Duces Tecum*, 461 B.R. at 829; *see Michalski*, 449 B.R. at 281 ("[A] Rule 2004 examination is frequently used as a pre-litigation tool").

The Trustee also seeks authority to issue a subpoena to compel the production of claim files and claims-related documents from Adventist's insurer, FM Global. This is necessary and appropriate to verify the production expected from Adventist and gain a full and accurate understanding as to whether FM Global has denied coverage for any losses arising out of the 2018 Camp Fire and the bases therefor (if any). Further, FM Global does not appear in any of the

12

Trustee's databases as an insurer for any fire victims other than Adventist. The Trustee currently has no visibility into FM Global's dealings with other fire victims.

The Trustee seeks to establish procedures governing the issuance of the Requests with notice and an opportunity to object and preserve all substantive rights. The proposed order includes the following procedures: except as otherwise agreed by the Trustee, within fifteen (15) days of service of the Requests, Adventist shall be directed to produce, on a rolling basis all non-privileged documents responsive to the Requests, or within fifteen (15) days of service of the Requests, to file all objections and/or responses to the Requests with this Court. The proposed fifteen (15) day response period is appropriate given that Adventist received substantially the same requests on September 13, 2021 and most of the information sought should be readily identifiable. Imposing this deadline is necessary to avoid further delay in the administration and payment of other Fire Victim Claims.

<u>**NO PRIOR REQUEST FOR RELIEF**</u>

No previous motion for the relief sought herein has been made to this Court under Bankruptcy Rule 2004.

<u>**CONCLUSION**</u>

Accordingly, the Trustee respectfully requests this Court take notice of the Motion and enter an order in substantially the form as **Exhibit A**, granting the relief requested herein, and such other and further relief as may be just.

DATED: November 9, 2021                      BROWN RUDNICK LLP

By:   /s/ *Eric R. Goodman*
       David J. Molton (SBN 262075)
       (DMolton@brownrudnick.com)
       Eric R. Goodman (admitted *pro hac vice*)
       (EGoodman@brownrudnick.com)
       Seven Times Square
       New York, New York 10036
       Telephone: (212) 209-4800
       Facsimile: (212) 209-4801

       *Counsel to the Fire Victim Trustee*

13

1

**<u>EXHIBIT A</u>**

2

PROPOSED ORDER

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BROWN RUDNICK LLP
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Eric R. Goodman (admitted pro hac vice)
(EGoodman@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone:     (212) 209-4800
Facsimile:     (212) 209-4801

BROWN RUDNICK LLP
Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone:     (949) 752-7100
Facsimile:     (949) 252-1514

*Attorneys for Fire Victim Trustee*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | |
| **-and-** | Chapter 11 (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | **ORDER GRANTING MOTION OF THE FIRE VICTIM TRUSTEE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF AN ORDER AUTHORIZING DISCOVERY FROM ADVENTIST HEALTH SYSTEM/WEST AND ADVENTIST HEALTH FEATHER RIVER AND SERVICE OF A SUBPOENA ON FACTORY MUTUAL INSURANCE COMPANY** |
| ☐   Affects PG&E Corporation | |
| ☐   Affects Pacific Gas and Electric Company | |
| ■   Affects both Debtors | |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | |

Upon the Motion, dated November 9, 2021 (the "**Motion**"),[4] of Honorable John K. Trotter (Ret.), in his capacity as the Fire Victim Trustee (the "**Trustee**"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Bankruptcy Rule 2004-1(a), for entry of an order authorizing discovery from Adventist Health and AHFR and service of a subpoena on FM Global; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California, Paragraph 18 and Paragraph 78 of the Confirmation Order, Section 6.7 and Section 11.1 of the Plan, and Section 1.6 and Section 8.20 of the Fire Victim Trust Agreement; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion; the Court having reviewed the proposed form of discovery attached to the Motion as **Exhibit B** and the form of subpoena attached to the Motion as **Exhibit C**; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted therein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERD THAT**:

1.      The Motion is granted as provided herein.

2.      The Trustee is authorized to serve discovery in the form attached to the Motion as **Exhibit B** on Adventist.

3.      The Trustee is authorized to serve a subpoena in the form attached to the Motion as **Exhibit C** on the FM Global.

4.      Except as otherwise agreed by the Trustee, within fifteen (15) days of service of the Requests, Adventist shall be directed to either (a) produce, on a rolling basis, all non-privileged documents responsive to the Requests, or (b) file all objections and/or responses to the Requests with this Court.

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1         5.     The Court shall retain jurisdiction to hear and determine all matters arising from or

2 related to the implementation, interpretation, or enforcement of this Order.

3         6.     This Order is without prejudice to the Trustee's right to file further motions seeking

4 additional documents pursuant to Bankruptcy Rule 2004 or any other applicable law.

** END OF ORDER **

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

1

**EXHIBIT B**

2

FORM OF DISCOVERY REQUESTS

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BROWN RUDNICK LLP
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Eric R. Goodman (admitted pro hac vice)
(EGoodman@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone:     (212) 209-4800
Facsimile:     (212) 209-4801

BROWN RUDNICK LLP
Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone:     (949) 752-7100
Facsimile:     (949) 252-1514

*Attorneys for Fire Victim Trust*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | |
| -and- | Chapter 11 (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | **FIRE VICTIM TRUSTEE'S FIRST SET OF REQUESTS FOR ADMISSION, FIRST SET OF INTERROGATORIES, AND FIRST SET OF DOCUMENT REQUESTS TO FEATHER RIVER HOSPITAL, D/B/A ADVENTIST HEALTH FEATHER RIVER** |
| □ Affects PG&E Corporation □ Affects Pacific Gas and Electric Company ■ Affects both Debtors | |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | |

Pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure (the "<u>Civil Rules</u>"), Rules 2004, 9014, 7026, 7033, 7034 and 7036 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Section IX of the Fire Victim Claims Resolution Procedures (the "<u>CRP</u>"), the Honorable John K. Trotter (Ret.), in his capacity as the Fire Victim Trustee (the "<u>Trustee</u>"), by and through his undersigned counsel, submits to Feather River Hospital, d/b/a Adventist Health Feather River ("<u>AHFR</u>" or "<u>You</u>"), the following requests for admission (the "<u>Requests for Admission</u>"), interrogatories (the "<u>Interrogatories</u>"), and requests for production of documents (the "<u>Requests for Production</u>"). Please produce the documents by delivering the production media to Mr. Eric Goodman, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, within thirty (30) days of the service of the Requests for Production. The Trustee further requests that AHFR respond to the Requests for Admission and the Interrogatories in accordance with Civil Rules 33 and 36.

**DEFINITIONS**

The term "<u>Adventist</u>" shall mean Adventist Health System/West, along with its agents, employees, attorneys, officers, directors, shareholders, members, representatives, subsidiaries, predecessors and/or successors.

The term "<u>AHFR</u>" shall mean Feather River Hospital, d/b/a Adventist Health Feather River, along with its agents, employees, attorneys, officers, directors, shareholders, members, representatives, subsidiaries, predecessors and/or successors.

The term "<u>Available Insurance Recoveries</u>" shall have the same meaning as that term is used in Section 2.6 of the Fire Victim Trust Agreement.

The term "<u>Bankruptcy Court</u>" shall mean the United States Bankruptcy Court for the Northern District of California.

The term "<u>Camp Fire</u>" shall mean the fire started on Thursday, November 8, 2018, in Northern California's Butte County.

The term "<u>Chapter 11 Cases</u>" shall mean the chapter 11 cases commenced by PG&E Corporation and Pacific Gas and Electric Company in the Bankruptcy Court, Case No. 19-30088.

The term "<u>Chapter 11 Plan</u>" shall mean the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 [Docket No. 8048] confirmed by order of the Bankruptcy Court in the Chapter 11 Cases.

The term "<u>Communications</u>" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other forms of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

The term "<u>concerning</u>" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

The term "<u>Documents</u>" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on

2

Case: 19-30088    Doc# 11556    Filed: 11/09/21    Entered: 11/09/21 10:54:38    Page 22

any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

The term "<u>Fire Victim Trust</u>" shall have the same meaning as that term is used in the Chapter 11 Plan.

The term "<u>Fire Victim Trust Agreement</u>" shall have the same meaning as that term is used in the Chapter 11 Plan.

The term "<u>FM Global</u>" shall mean Factory Mutual Insurance Company, along with its agents, employees, attorneys, officers, directors, shareholders, members, representatives, subsidiaries, affiliates, predecessors and/or successors.

The term "<u>FM Global Policy</u>" shall mean that Policy No. 1019191 issued by FM Global in favor of Adventist Health System / West and any subsidiary, and Adventist Health System / West's interest in any partnership or joint venture in which Adventist Health System / West has management control or ownership.

The term "<u>Main Campus</u>" shall mean the main hospital campus of Adventist Health Feather River that was located in the town of Paradise, California, including the upper and lower hospital.

The term "<u>Proof of Claim</u>" shall mean the Proof of Claim (Fire Claim Related) filed by Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River in the Chapter 11 Cases of PG&E Corporation and Pacific Gas and Electric Company.

The term "<u>Sebold Report</u>" shall mean the Expert Report of Maryellen Sebold dated February 24, 2021.

The term "<u>Shared Services</u>" shall mean the variety of centralized services and functions that Adventist claims are common and provided across all Adventist Health hospitals and clinics, including but not limited to Feather River Hospital d/b/a Adventist Health Feather River.

The term "<u>Time Element</u>" shall have the same meaning as that term is used in the FM

---

3

Global Policy.

The terms "You" or "Your" and variants thereof mean AHFR.

### INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Admission, Interrogatories, and Requests for Production, the following Instructions shall be followed:

1. All responses shall comply with the requirements of the Civil Rules and the Bankruptcy Rules.

2. Unless otherwise stated in a specific Request for Admission, Interrogatory, or Request for Production herein, the relevant time period shall be the period from the date of the Camp Fire to the present.

3. These Requests for Admission, Interrogatories, or Requests for Production shall be deemed continuing in nature. In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Admission, Interrogatories, or Requests for Production, such additional information is to be promptly produced.

4. Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

5. You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form. Without limitation,

4

Case: 19-30088   Doc# 11556   Filed: 11/09/21   Entered: 11/09/21 10:54:38   Page 24

hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

6.      Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

7.      Documents not otherwise responsive to these Requests for Production should be produced: (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

8.      Documents attached to each other should not be separated; separate Documents should not be attached to each other.

9.      Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

10.     If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

        a.      Identify the type, title and subject matter of the Document;

        b.      State the place, date, and manner of preparation of the Document;

5

c.     Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

d.     Identify the legal privilege(s) and the factual basis for the claim.

11.     Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine.  In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 10 above must be provided.

12.     To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it:  (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of.  In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document.  Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

13.     If You object to any of these Requests for Admission, Interrogatories, or Requests for Production, state in writing with specificity the grounds of Your objections.  Any ground not stated shall be waived.  If You object to a particular portion of any Request for Admission, Interrogatory, or Request for Production, You shall respond to any other portions of such Admission, Interrogatory, or Request for Production as to which there is no objection and state with specificity the grounds of the objection.

14.     The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Admission, Interrogatories, or Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Admission, Interrogatories, or Requests for Production.  If an investigation is continuing or discovery is not complete with respect to the matter inquired into by

6

1  any Request for Admission, Interrogatory, or Request for Production, so state in Your response to

2  that Request for Admission, Interrogatory, or Request for Production.

3       15.    If the identity of Documents responding to a Request for Production is not known,

4  then that lack of knowledge must be specifically indicated in the response.  If any information

5  requested is not in Your possession, but is known or believed to be in the possession of another

6  person or entity, then identify that person or entity and state the basis of Your belief or knowledge

7  that the requested information is in such person's or entity's possession.

8       16.    If You deny knowledge or information sufficient to answer an Interrogatory (or any

9  part thereof), provide the name and address of each person known or believed to have such

10  knowledge.  Identify each person who assisted or participated in preparing and/or supplying any of

11  the information given in answer to these Interrogatories.

12                    **MANNER OF PRODUCTION**

13       1.    All Documents produced to the Trustee shall be provided in either native file

14  ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below,

15  along with appropriately formatted industry-standard database load files and accompanied by true

16  and correct copies or representations of unaltered attendant metadata.  Where Documents are

17  produced in tiff format, each Document shall be produced along with a multi-page, Document-level

18  searchable text file ("searchable text") as rendered by an industry-standard text extraction program

19  in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr")

20  program in the case of scanned paper Documents.  Searchable text of Documents shall not be

21  produced as fielded data within the ".dat file" as described below.

22       2.    Database Load Files and Production Media Structure:  Database load files shall

23  consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier

24  information, data designed to preserve "parent and child" relationships within Document

25  "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the

26  case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt")

27  file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder

28  named "Data," images shall be provided within a root level "Images" folder containing reasonably

7

structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3.     <u>Electronic Documents and Data, Generally</u>:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the Trustee, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4.     <u>Emails and Attachments, and Other Email Account-Related Documents</u>:  All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Trustee.

5.     Documents and Data Created or Stored in or by Structured Electronic Databases: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Trustee to reasonably manage and import those Documents into a useable, coherent database.  Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams.  Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

        a.     XML format file(s);

        b.     Microsoft SQL database(s);

        c.     Access database(s); and/or

        d.     fixed or variable length ASCII delimited files.

8

Case: 19-30088   Doc# 11556   Filed: 11/09/21   Entered: 11/09/21 10:54:38   Page 28

6.      Spreadsheets, Multimedia, and Non-Standard File Types:  All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet, database and/or statistical programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced.  A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media.  To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other requirements listed herein.  Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.      "Other" Electronic Documents:  All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.      Paper Documents:  Documents originally created or stored on paper shall be produced in tiff format.  Relationships between Documents shall be identified within the Relativity .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

### REQUESTS FOR ADMISSION

1.      Admit that no insurer has denied coverage for any loss suffered by You because of the Camp Fire.

RESPONSE:

9

Case: 19-30088   Doc# 11556   Filed: 11/09/21   Entered: 11/09/21 10:54:38   Page 29

1        2.        Admit that FM Global has not denied coverage to You under the FM Global Policy

2  for any loss caused by the Camp Fire.

3           RESPONSE:

4

5        3.        Admit that no insurer has denied coverage to You under any insurance policy for

6  any loss caused by the Camp Fire.

7           RESPONSE:

8

9        4.        Admit that You have not received any Communications from any insurer indicating

10 that it has denied coverage for any loss suffered by You because of the Camp Fire.

11          RESPONSE:

12

13       5.        Admit that You have not received any Communications from FM Global indicating

14 that FM Global has denied coverage for any loss caused by the Camp Fire.

15          RESPONSE:

16

17       6.        Admit that You are a member of FM Global.

18          RESPONSE:

19

20       7.        Admit that You have an ownership interest in FM Global.

21          RESPONSE:

22

23       8.        Admit that You have participated in "surplus" as that term is defined in FM Global's

24 Charter.

25          RESPONSE:

26

27

28

                                          10

1    9.    Admit that some or all of the damages discussed in Opinion 1 of the Sebold Report

2    are insured by the FM Global Policy or another policy of insurance.

3         RESPONSE:

4

5    10.    Admit that some or all of the damages discussed in Opinion 2 of the Sebold Report

6    are insured by the FM Global Policy or another policy of insurance.

7         RESPONSE:

8

9    11.    Admit that some or all of the damages discussed in Opinion 3 of the Sebold Report

10   are insured by the FM Global Policy or another policy of insurance.

11        RESPONSE:

12

13   12.    Admit that some or all of the damages discussed in Opinion 4 of the Sebold Report

14   are insured by the FM Global Policy or another policy of insurance.

15        RESPONSE:

16

17   13.    Admit that some or all of the damages discussed in Opinion 5a of the Sebold Report

18   are insured by the FM Global Policy or another policy of insurance.

19        RESPONSE:

20

21   14.    Admit that some or all of the damages discussed in Opinion 5b of the Sebold Report

22   are insured by the FM Global Policy or another policy of insurance.

23        RESPONSE:

24

25   15.    Admit that some or all of the damages discussed in Opinion 6a of the Sebold Report

26   are insured by the FM Global Policy or another policy of insurance.

27        RESPONSE:

28

---

11

16. Admit that some or all of the damages discussed in Opinion 6b of the Sebold Report are insured by the FM Global Policy or another policy of insurance.

RESPONSE:

17. Admit that some or all of the damages discussed in Opinion 8a of the Sebold Report are insured by the FM Global Policy or another policy of insurance.

RESPONSE:

18. Admit that You have not violated any conditions or obligations or cooperation clauses under the FM Global Policy.

RESPONSE:

19. Admit that You have not violated any conditions or obligations or cooperation clauses under any policy of insurance that covers losses caused by the Camp Fire.

RESPONSE:

20. Admit that You have not exercised reasonable efforts to obtain all Available Insurance Recoveries for damages caused by the Camp Fire.

RESPONSE:

21. Admit that You have not vigorously pursued all insurance to which You are entitled for damages caused by the Camp Fire.

RESPONSE:

22. Admit that You do not have a written agreement with Adventist regarding the provision of shared services to AHFR.

RESPONSE:

12

1    23.    Admit that You do not intend to rebuild the Main Campus.

2           RESPONSE:

3

4    24.    Admit that you do not intend to rebuild the Main Campus on the same site with new

5    materials of like size, kind, and quality that existed on the date of loss.

6           RESPONSE:

7

8    25.    Admit that you do not intend to rebuild the Main Campus on the same or another

9    site, but not to exceed the size and operating capacity that existed on the date of loss.

10          RESPONSE:

11

12   26.    Admit that You have not sought an extension of time for rebuilding the Main

13   Campus during the time provided in the FM Global Policy and California Insurance Code

14   Section 2051.15(b)(2).

15          RESPONSE:

16

17   27.    Admit that Your 2018 policy with FM Global had a limit of $1 billion and did not

18   contain a sublimit for locations exposed to California wildfire.

19          RESPONSE:

20

21                              **INTERROGATORIES**

22   1.     If You contend that You have exercised reasonable efforts to obtain all Available

23   Insurance Recoveries for damages caused by the Camp Fire, explain the factual basis for that

24   contention.

25          RESPONSE:

26

27

28

_____

                                13

2.     Identify all efforts You have taken to recover under any policy of insurance, including the FM Global Policy, for damages caused by the Camp Fire.

      RESPONSE:

3.     Identify each category of damages discussed in the Sebold Report for which AHFR has insurance coverage.

      RESPONSE:

4.     For each category of damages discussed in the Sebold Report, identify the amount of insurance coverage available to AHFR under any policy of insurance, including the FM Global Policy.

      RESPONSE:

5.     Identify the amount of damages suffered by AHFR because of the Camp Fire that are insured by a policy of insurance, including the FM Global Policy.

      RESPONSE:

6.     Identify all damages You sustained because of the Camp Fire that you did not submit to FM Global or any other insurer.

      RESPONSE:

7.     Identify any loss caused by the Camp Fire for which any insurer, including FM Global, has denied coverage to You.

      RESPONSE:

8.     Identify all Communications between You and any insurer, including FM Global, where the insurer has denied coverage for damages caused by the Camp Fire.

      RESPONSE:

14

9. Identify all proofs of loss submitted by You to FM Global, or any other insurer, on account of the Camp Fire.

RESPONSE:

10. Identify all examinations under oath by FM Global, or any other insurer, of You on account of the Camp Fire.

RESPONSE:

11. Identify all property You owned that was destroyed by the Camp Fire that was covered by insurance and the amount of insurance coverage for such property.

RESPONSE:

12. Identify all written agreements between You and Adventist for the provision of shared services.

RESPONSE:

13. Identify the cost to rebuild the Main Campus to the same condition that existed on the date of loss.

RESPONSE:

14. Explain when you anticipate reconstruction of the Main Campus to begin and to be completed.

RESPONSE:

15. Identify the method You elected to have Time Element loss calculated under the FM Global Policy.

RESPONSE:

15

1    16.    Identify the persons most knowledgeable regarding the negotiations between You

2    and FM Global regarding the Camp Fire.

3          RESPONSE:

4

5                              **REQUESTS FOR PRODUCTION**

6    1.    All Documents that support or refute Your responses to the foregoing Requests for

7    Admission and Interrogatories.

8          RESPONSE:

9

10   2.    All Documents identified as missing information or documentation in any

11   deficiency notice issued by the Claims Processor for the Fire Victim Trust.

12         RESPONSE:

13

14   3.    Documents sufficient to identify the nature and extent of Your ownership interest in

15   FM Global.

16         RESPONSE:

17

18   4.    Documents sufficient to identify the nature and extent of Your member status in FM

19   Global.

20         RESPONSE:

21

22   5.    All Documents that Maryellen Sebold considered or relied on in connection with the

23   Sebold Report and the opinions set forth therein.

24         RESPONSE:

25

26

27

28

                                   16

6.     Documents sufficient to identify reinsurers who have reinsured FM Global's liability under the FM Global Policy for damages caused by the Camp Fire and the terms of such reinsurance,  including all reinsurance policies and treaties.

      <u>RESPONSE:</u>

7.     If you contend that the FM Global Policy does not insure any part of the damages discussed in the Sebold Report or the Proof of Claim, Documents sufficient to identify all factual and legal bases that support that contention.

      <u>RESPONSE:</u>

8.     If you contend that the FM Global Policy does insure any part of the damages discussed in the Sebold Report or the Proof of Claim, Documents sufficient to identify all factual and legal bases that support that contention.

      <u>RESPONSE:</u>

9.     All Communications between You and FM Global concerning the Camp Fire, including any claims You may have under the FM Global Policy because of the Camp Fire.

      <u>RESPONSE:</u>

10.     All Communications between You and any insurer concerning the Camp Fire, including any claims You may have because of the Camp Fire.

      <u>RESPONSE:</u>

11.     All Documents that You intend to rely on in support of Your Proof of Claim.

      <u>RESPONSE:</u>

17

1      12.    Each insurance policy under which AHFR has coverage for damages arising from

2 the Camp Fire.

3      RESPONSE:

4

5      13.    All Documents in any insurance files for claims concerning the Camp Fire

6 submitted to FM Global or any other insurer, including, but not limited to, Documents entitled

7 "Proof of Loss."

8      RESPONSE:

9

10     14.    All Communications with any insurer, including FM Global, concerning coverage

11 available for the Camp Fire or any damages caused by the Camp Fire.

12     RESPONSE:

13

14     15.    All Documents concerning the payment of at least $60 million from FM Global

15 related to damage caused by the Camp Fire.

16     RESPONSE:

17

18     16.    All Documents concerning the provision of shared services from Adventist to You

19 since the Camp Fire.

20     RESPONSE:

21

22     17.    All Documents concerning Your intent to rebuild any property You owned that was

23 damaged by the Camp Fire.

24     RESPONSE:

25

26

27

28

18

1       18.     Any Document which supports Your decision to elect to have business interruption

2  and/or extra expense coverage calculated under the FM Global Policy utilizing the gross earnings

3  or gross profit method.

4       RESPONSE:

5

6  DATED:  December [●], 2021       BROWN RUDNICK LLP

7

8                     By:  _____

9                          Eric R. Goodman (admitted *pro hac vice*)
                            (EGoodman@brownrudnick.com)

10                      One Financial Center
                      Boston, Massachusetts 02111

11                      Telephone: (617) 856-8200
                      Facsimile: (617) 856-8201

12                      David J. Molton (SBN 262075)
                      (DMolton@brownrudnick.com)

13                      Seven Times Square
                      New York, New York 10036

14                      Telephone: (212) 209-4800
                      Facsimile: (212) 209-4801

15

16                      *Counsel to the Fire Victim Trustee*

17

18

19

20

21

22

23

24

25

26

27

28

19

1   BROWN RUDNICK LLP
    David J. Molton (SBN 262075)
2   (DMolton@brownrudnick.com)
    Eric R. Goodman (admitted pro hac vice)
3   (EGoodman@brownrudnick.com)
    Seven Times Square
4   New York, New York 10036
    Telephone:    (212) 209-4800
5   Facsimile:    (212) 209-4801

6   BROWN RUDNICK LLP
    Joel S. Miliband (SBN 077438)
7   (JMiliband@brownrudnick.com)
    2211 Michelson Drive, Seventh Floor
8   Irvine, California 92612
    Telephone:    (949) 752-7100
9   Facsimile:    (949) 252-1514

10   *Attorneys for Fire Victim Trust*

11               **UNITED STATES BANKRUPTCY COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
12                       **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 13   **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| 14   **PG&E CORPORATION** | |
| | Chapter 11 |
| 15       **-and-** | (Lead Case) |
| | (Jointly Administered) |
| 16   **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| 17 | **FIRE VICTIM TRUSTEE'S FIRST SET OF REQUESTS FOR ADMISSION, FIRST** |
|         **Debtors.** | **SET OF INTERROGATORIES, AND** |
| 18 | **FIRST SET OF DOCUMENT REQUESTS TO ADVENTIST HEALTH** |
| 19   ☐  Affects PG&E Corporation | **SYSTEM/WEST** |
|     ☐  Affects Pacific Gas and Electric Company | |
| 20   ■  Affects both Debtors | |
| 21 | |
|   *All papers shall be filed in the Lead Case,* | |
| 22   *No. 19-30088 (DM)* | |

Pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure (the "Civil Rules"), Rules 2004, 9014, 7026, 7033, 7034 and 7036 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Section IX of the Fire Victim Claims Resolution Procedures (the "CRP"), the Honorable John K. Trotter (Ret.), in his capacity as the Fire Victim Trustee (the "Trustee"), by and through his undersigned counsel, submits to Adventist Health System/West ("Adventist" or "You"), the following requests for admission (the "Requests for Admission"), interrogatories (the "Interrogatories"), and requests for production of documents (the "Requests for Production"). Please produce the documents by delivering the production media to Mr. Eric Goodman, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, within thirty (30) days of the service of the Requests for Production. The Trustee further requests that Adventist respond to the Requests for Admission and the Interrogatories in accordance with Civil Rules 33 and 36.

## **DEFINITIONS**

The term "Adventist" shall mean Adventist Health System/West, along with its agents, employees, attorneys, officers, directors, shareholders, members, representatives, subsidiaries, predecessors and/or successors.

The term "AHFR" shall mean Feather River Hospital, d/b/a Adventist Health Feather River, along with its agents, employees, attorneys, officers, directors, shareholders, members, representatives, subsidiaries, predecessors and/or successors.

The term "Available Insurance Recoveries" shall have the same meaning as that term is used in Section 2.6 of the Fire Victim Trust Agreement.

The term "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Northern District of California.

The term "Camp Fire" shall mean the fire started on Thursday, November 8, 2018, in Northern California's Butte County.

The term "Chapter 11 Cases" shall mean the chapter 11 cases commenced by PG&E Corporation and Pacific Gas and Electric Company in the Bankruptcy Court, Case No. 19-30088.

The term "Chapter 11 Plan" shall mean the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 [Docket No. 8048] confirmed by order of the Bankruptcy Court in the Chapter 11 Cases.

The term "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other forms of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

The term "concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

The term "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on

2

any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

The term "<u>Fire Victim Trust</u>" shall have the same meaning as that term is used in the Chapter 11 Plan.

The term "<u>Fire Victim Trust Agreement</u>" shall have the same meaning as that term is used in the Chapter 11 Plan.

The term "<u>FM Global</u>" shall mean Factory Mutual Insurance Company, along with its agents, employees, attorneys, officers, directors, shareholders, members, representatives, subsidiaries, affiliates, predecessors and/or successors.

The term "<u>FM Global Policy</u>" shall mean that Policy No. 1019191 issued by FM Global in favor of Adventist Health System / West and any subsidiary, and Adventist Health System / West's interest in any partnership or joint venture in which Adventist Health System / West has management control or ownership.

The term "<u>Proof of Claim</u>" shall mean the Proof of Claim (Fire Claim Related) filed by Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River in the Chapter 11 Cases of PG&E Corporation and Pacific Gas and Electric Company.

The term "<u>Sebold Report</u>" shall mean the Expert Report of Maryellen Sebold dated February 24, 2021.

The term "<u>Shared Services</u>" shall mean the variety of centralized services and functions that Adventist claims are common and provided across all Adventist Health hospitals and clinics, including but not limited to Feather River Hospital d/b/a Adventist Health Feather River.

The term "<u>Time Element</u>" shall have the same meaning as that term is used in the FM Global Policy.

The terms "<u>You</u>" or "<u>Your</u>" and variants thereof mean Adventist.

3

## **INSTRUCTIONS**

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Admission, Interrogatories, and Requests for Production, the following Instructions shall be followed:

1. All responses shall comply with the requirements of the Civil Rules and the Bankruptcy Rules.

2. Unless otherwise stated in a specific Request for Admission, Interrogatory, or Request for Production herein, the relevant time period shall be the period from the date of the Camp Fire to the present.

3. These Requests for Admission, Interrogatories, or Requests for Production shall be deemed continuing in nature. In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Admission, Interrogatories, or Requests for Production, such additional information is to be promptly produced.

4. Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

5. You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form. Without limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile

4

Case: 19-30088    Doc# 11556    Filed: 11/09/21    Entered: 11/09/21 10:54:38    Page 44
of 78

## **INSTRUCTIONS**

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Admission, Interrogatories, and Requests for Production, the following Instructions shall be followed:

1. All responses shall comply with the requirements of the Civil Rules and the Bankruptcy Rules.

2. Unless otherwise stated in a specific Request for Admission, Interrogatory, or Request for Production herein, the relevant time period shall be the period from the date of the Camp Fire to the present.

3. These Requests for Admission, Interrogatories, or Requests for Production shall be deemed continuing in nature. In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Admission, Interrogatories, or Requests for Production, such additional information is to be promptly produced.

4. Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

5. You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form. Without limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile

4

Case: 19-30088    Doc# 11556    Filed: 11/09/21    Entered: 11/09/21 10:54:38    Page 44
of 78

## **INSTRUCTIONS**

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Admission, Interrogatories, and Requests for Production, the following Instructions shall be followed:

1. All responses shall comply with the requirements of the Civil Rules and the Bankruptcy Rules.

2. Unless otherwise stated in a specific Request for Admission, Interrogatory, or Request for Production herein, the relevant time period shall be the period from the date of the Camp Fire to the present.

3. These Requests for Admission, Interrogatories, or Requests for Production shall be deemed continuing in nature. In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Admission, Interrogatories, or Requests for Production, such additional information is to be promptly produced.

4. Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

5. You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form. Without limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile

4

storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

6. Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

7. Documents not otherwise responsive to these Requests for Production should be produced: (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

8. Documents attached to each other should not be separated; separate Documents should not be attached to each other.

9. Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

10. If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

        a.    Identify the type, title and subject matter of the Document;

        b.    State the place, date, and manner of preparation of the Document;

        c.    Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

5

d.     Identify the legal privilege(s) and the factual basis for the claim.

11.     Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine. In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 10 above must be provided.

12.     To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of. In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document. Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

13.     If You object to any of these Requests for Admission, Interrogatories, or Requests for Production, state in writing with specificity the grounds of Your objections. Any ground not stated shall be waived. If You object to a particular portion of any Request for Admission, Interrogatory, or Request for Production, You shall respond to any other portions of such Admission, Interrogatory, or Request for Production as to which there is no objection and state with specificity the grounds of the objection.

14.     The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Admission, Interrogatories, or Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Admission, Interrogatories, or Requests for Production. If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request for Admission, Interrogatory, or Request for Production, so state in Your response to that Request for Admission, Interrogatory, or Request for Production.

6

15. If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response. If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

16. If You deny knowledge or information sufficient to answer an Interrogatory (or any part thereof), provide the name and address of each person known or believed to have such knowledge. Identify each person who assisted or participated in preparing and/or supplying any of the information given in answer to these Interrogatories.

**MANNER OF PRODUCTION**

1. All Documents produced to the Trustee shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2. <u>Database Load Files and Production Media Structure</u>: Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images. Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

7

Case: 19-30088    Doc# 11556    Filed: 11/09/21    Entered: 11/09/21 10:54:38    Page 47

3.     Electronic Documents and Data, Generally:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the Trustee, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4.     Emails and Attachments, and Other Email Account-Related Documents:  All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Trustee.

5.     Documents and Data Created or Stored in or by Structured Electronic Databases: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Trustee to reasonably manage and import those Documents into a useable, coherent database.  Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams.  Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

a.     XML format file(s);

b.     Microsoft SQL database(s);

c.     Access database(s); and/or

d.     fixed or variable length ASCII delimited files.

6.     Spreadsheets, Multimedia, and Non-Standard File Types:  All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet,

8

database and/or statistical programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7. <u>"Other" Electronic Documents</u>: All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8. <u>Paper Documents</u>: Documents originally created or stored on paper shall be produced in tiff format. Relationships between Documents shall be identified within the Relativity .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

<u>**REQUESTS FOR ADMISSION**</u>

1. Admit that no insurer has denied coverage for any loss suffered by You because of the Camp Fire.

<u>RESPONSE</u>:


2. Admit that FM Global has not denied coverage to You under the FM Global Policy for any loss caused by the Camp Fire.

<u>RESPONSE</u>:

9

1        3.      Admit that no insurer has denied coverage to You under any insurance policy for

2 any loss caused by the Camp Fire.

3        <u>RESPONSE:</u>

4

5        4.      Admit that You have not received any Communications from any insurer indicating

6 that it has denied coverage for any loss suffered by You because of the Camp Fire.

7        <u>RESPONSE:</u>

8

9        5.      Admit that You have not received any Communications from FM Global indicating

10 that FM Global has denied coverage for any loss caused by the Camp Fire.

11       <u>RESPONSE:</u>

12

13       6.      Admit that You are a member of FM Global.

14       <u>RESPONSE:</u>

15

16       7.      Admit that You have an ownership interest in FM Global.

17       <u>RESPONSE:</u>

18

19       8.      Admit that You have participated in "surplus" as that term is defined in FM Global's

20 Charter.

21       <u>RESPONSE:</u>

22

23       9.      Admit that some or all of the damages discussed in Opinion 7a of the Sebold Report

24 are insured by the FM Global Policy or another policy of insurance.

25       <u>RESPONSE:</u>

26

27

28

10

1    10.    Admit that some or all of the damages discussed in Opinion 7b of the Sebold Report

2    are insured by the FM Global Policy or another policy of insurance.

3        RESPONSE:

4

5    11.    Admit that some or all of the damages discussed in Opinion 8b of the Sebold Report

6    are insured by the FM Global Policy or another policy of insurance.

7        RESPONSE:

8

9    12.    Admit that You did not suffer any property damage because of the Camp Fire.

10        RESPONSE:

11

12    13.    Admit that You did not suffer any personal injury because of the Camp Fire.

13        RESPONSE:

14

15    14.    Admit that You have not violated any conditions or obligations or cooperation

16    clauses under the FM Global Policy.

17        RESPONSE:

18

19    15.    Admit that You have not violated any conditions or obligations or cooperation

20    clauses under any policy of insurance that covers losses caused by the Camp Fire.

21        RESPONSE:

22

23    16.    Admit that You have not exercised reasonable efforts to obtain all Available

24    Insurance Recoveries for damages caused by the Camp Fire.

25        RESPONSE:

26

27

28

11

1        17.     Admit that You have not vigorously pursued all insurance to which You are entitled

2  for damages caused by the Camp Fire.

3        RESPONSE:

4

5        18.     Admit that You do not have a written agreement with AHFR regarding the provision

6  of shared services to AHFR.

7        RESPONSE:

8

9        19.     Admit that Your 2018 policy with FM Global had a limit of $1 billion and did not

10  contain a sublimit for locations exposed to California wildfire.

11        RESPONSE:

12

13                      **INTERROGATORIES**

14      1.     Identify all property You owned that was damaged by the Camp Fire.

15        RESPONSE:

16

17      2.     Identify all personal injuries You suffered because of the Camp Fire.

18        RESPONSE:

19

20      3.     If You contend that You have exercised reasonable efforts to obtain all Available

21  Insurance Recoveries for damages caused by the Camp Fire, explain the factual basis for that

22  contention.

23        RESPONSE:

24

25      4.     Identify all efforts You have taken to recover under any policy of insurance,

26  including the FM Global Policy, for damages caused by the Camp Fire.

27        RESPONSE:

28

5.     Identify each category of damages discussed in the Sebold Report for which Adventist has insurance coverage.

RESPONSE:


6.     For each category of damages discussed in the Sebold Report, identify the amount of insurance coverage available to Adventist under any policy of insurance, including the FM Global Policy.

RESPONSE:


7.     Identify the amount of damages suffered by Adventist because of the Camp Fire that are insured by a policy of insurance, including the FM Global Policy.

RESPONSE:


8.     Identify all damages You sustained because of the Camp Fire that you did not submit to FM Global or any other insurer.

RESPONSE:


9.     Identify any loss caused by the Camp Fire for which any insurer, including FM Global, has denied coverage to You.

RESPONSE:


10.     Identify all Communications between You and any insurer, including FM Global, where the insurer has denied coverage for damages caused by the Camp Fire.

RESPONSE:


11.     Identify all proofs of loss submitted by You to FM Global, or any other insurer, on account of the Camp Fire.

RESPONSE:

13

1    12.    Identify all examinations under oath by FM Global, or any other insurer, of You on

2    account of the Camp Fire.

3           RESPONSE:

4

5    13.    Identify all property You owned that was destroyed by the Camp Fire that was

6    covered by insurance and the amount of insurance coverage for such property.

7           RESPONSE:

8

9    14.    Identify all written agreements between You and AHFR for the provision of shared

10   services.

11          RESPONSE:

12

13   15.    Identify the method You elected to have Time Element loss calculated under the FM

14   Global Policy.

15          RESPONSE:

16

17   16.    Identify any hospitals owned by You or Your affiliates that realized an increase in

18   revenue because of the Camp Fire.

19          RESPONSE:

20

21   17.    Identify the persons most knowledgeable regarding the negotiations between You

22   and FM Global regarding the Camp Fire.

23          RESPONSE:

24

25          **REQUESTS FOR PRODUCTION**

26   1.     All Documents that support or refute Your responses to the foregoing Requests for

27   Admission and Interrogatories.

28          RESPONSE:

14

1     2.    All Documents identified as missing information or documentation in any
2 deficiency notice issued by the Claims Processor for the Fire Victim Trust.

3         <u>RESPONSE:</u>

4

5     3.    Documents sufficient to identify the nature and extent of Your ownership interest in
6 FM Global.

7         <u>RESPONSE:</u>

8

9     4.    Documents sufficient to identify the nature and extent of Your member status in FM
10 Global.

11         <u>RESPONSE:</u>

12

13     5.    All Documents that Maryellen Sebold considered or relied on in connection with the
14 Sebold Report and the opinions set forth therein.

15         <u>RESPONSE:</u>

16

17     6.    Documents sufficient to identify reinsurers who have reinsured FM Global's
18 liability under the FM Global Policy for damages caused by the Camp Fire and the terms of such
19 reinsurance, including all reinsurance policies and treaties.

20         <u>RESPONSE:</u>

21

22     7.    If you contend that the FM Global Policy does not insure any part of the damages
23 discussed in the Sebold Report or the Proof of Claim, Documents sufficient to identify all factual
24 and legal bases that support that contention.

25         <u>RESPONSE:</u>

26

27

28

15

1    8.    If you contend that the FM Global Policy does insure any part of the damages
2  discussed in the Sebold Report or the Proof of Claim, Documents sufficient to identify all factual
3  and legal bases that support that contention.
4        RESPONSE:
5
6    9.    All Communications between You and FM Global concerning the Camp Fire,
7  including any claims You may have under the FM Global Policy because of the Camp Fire.
8        RESPONSE:
9
10    10.    All Communications between You and any insurer concerning the Camp Fire,
11  including any claims You may have because of the Camp Fire.
12        RESPONSE:
13
14    11.    All Documents that You intend to rely on in support of Your Proof of Claim.
15        RESPONSE:
16
17    12.    Each insurance policy under which Adventist has coverage for damages arising from
18  the Camp Fire.
19        RESPONSE:
20
21    13.    All Documents in any insurance files for claims concerning the Camp Fire
22  submitted to FM Global or any other insurer, including, but not limited to, Documents entitled
23  "Proof of Loss."
24        RESPONSE:
25
26    14.    All Communications with any insurer, including FM Global, concerning coverage
27  available for the Camp Fire or any damages caused by the Camp Fire.
28        RESPONSE:

16

1      15.    All Documents concerning the payment of at least $60 million from FM Global

2 related to damage caused by the Camp Fire.

3        RESPONSE:

4

5      16.    All Documents concerning the provision of shared services from You to AHFR

6 since the Camp Fire.

7        RESPONSE:

8

9      17.    All Documents concerning Your intent to rebuild any property You owned that was

10 damaged by the Camp Fire.

11        RESPONSE:

12

13      18.    Any Document which supports Your decision to elect to have business interruption

14 and/or extra expense coverage calculated under the FM Global Policy utilizing the gross earnings

15 or gross profit method.

16        RESPONSE:

17

18 DATED: December [●], 2021        BROWN RUDNICK LLP

19

20                 By: _____

21                      Eric R. Goodman (admitted *pro hac vice*)
                     (EGoodman@brownrudnick.com)

22                      One Financial Center
                     Boston, Massachusetts 02111

23                      Telephone: (617) 856-8200
                     Facsimile: (617) 856-8201

24                      David J. Molton (SBN 262075)
                     (DMolton@brownrudnick.com)

25                      Seven Times Square
                     New York, New York 10036

26                      Telephone: (212) 209-4800
                     Facsimile: (212) 209-4801

27                      *Counsel to the Fire Victim Trustee*

28

17

Case: 19-30088   Doc# 11556   Filed: 11/09/21   Entered: 11/09/21 10:54:38   Page 57

# **EXHIBIT C**

FORM OF SUBPOENA

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**In re:**                              Bankruptcy Case
                                        No. 19-30088 (DM)
**PG&E CORPORATION**
         **-and-**                      Chapter 11
**PACIFIC GAS AND ELECTRIC**            (Lead Case)
**COMPANY,**                            (Jointly Administered)

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS**
**OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:
                    FACTORY MUTUAL INSURANCE COMPANY
                    *(Name of person to whom this subpoena is directed)*

☐  *Production*:  **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the
   following documents, electronically stored information, or objects, and to permit inspection,
   copying, testing, or sampling of the material:  *See* attached **Exhibit 1**.

| Place: | Date and Time: |
|--------|----------------|
|        |                |

☐  *Inspection of Premises*:  **YOU ARE COMMANDED** to permit entry onto the designated premises,
   land, or other property possessed or controlled by you at the time, date, and location set forth below,
   so that the requesting party may inspect, measure, survey, photograph, test, or sample the property
   or any designated object or operation on it.

| Place: | Date and Time: |
|--------|----------------|
|        |                |

        The following provisions of Fed. R. Civ. P. 45 are attached — Rule 45(c), relating to the place of
compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and
(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____    *CLERK OF COURT*

                                            OR

_____        _____
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the PG&E Fire
Victim Trust, who issues or requests this subpoena, are:

_____

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible
things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each
party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

_____

**PROOF OF SERVICE**
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for (*name of individual and title, if any*) _____

on (*date*) _____.

    ☐   I served the subpoena by delivering a copy to the name person as follows: _____

       _____

       _____on (*date*) _____ ; or

    ☐   I returned the subpoena unexecuted because: _____

       _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____.

I declare under penalty of perjury that this information is true.

Date: _____        _____
                             Server's signature

                           _____
                             Printed name and title

                           _____
                             Server's address

Additional information regarding attempted service, etc.:

2

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**EXHIBIT 1**

**DEFINITIONS**

1.      The term "<u>Adventist Health</u>" shall mean Adventist Health System/West, along with its agents, employees, attorneys, officers, directors, shareholders, members, representatives, subsidiaries, predecessors and/or successors.

2.      The term "<u>AHFR</u>" shall mean Feather River Hospital, d/b/a Adventist Health Feather River, along with its agents, employees, attorneys, officers, directors, shareholders, members, representatives, subsidiaries, predecessors and/or successors.

3.      The term "<u>Bankruptcy Court</u>" shall mean the United States Bankruptcy Court for the Northern District of California.

4.      The term "<u>Camp Fire</u>" shall mean the fire started on Thursday, November 8, 2018, in Northern California's Butte County.

5.      The term "<u>Chapter 11 Cases</u>" shall mean the chapter 11 cases commenced by PG&E Corporation and Pacific Gas and Electric Company in the Bankruptcy Court, Case No. 19-30088.

6.      The term "<u>Chapter 11 Plan</u>" shall mean the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 [Docket No. 8048] confirmed by order of the Bankruptcy Court in the Chapter 11 Cases.

7.      The term "<u>Claim Files</u>" shall mean claim files containing information relating to insurance coverage, policy limits, insurance claims, reserves, and insurance payments, including, but not limited to, insurance policies, statements of loss, and policy declarations.

8.      The term "<u>Claim-Related Documents</u>" means all documents that relate to the evaluation of damages, including, but not limited to, repair and replacement estimates and bids, appraisals, scopes of loss, drawings, plans, reports, third-party findings on the amount of loss, covered damages, and cost of repairs, and all other valuation, measurement, and loss adjustment calculations of the amount of loss, covered damage, and cost of repairs.

9.      The term "<u>Communications</u>" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal,

Case: 19-30088    Doc# 11556    Filed: 11/09/21    Entered: 11/09/21 10:54:38    Page 62

written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

10. The term "<u>concerning</u>" shall mean means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

11. The term "<u>Documents</u>" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. When examples of categories or types of Documents are given in a particular Request by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (i.e., to be understood as "including without limitation") and in no way limits or narrows the scope of any Request. "Documents" always includes Communications, whether so stated in a particular Request or not.

2

Case: 19-30088   Doc# 11556   Filed: 11/09/21   Entered: 11/09/21 10:54:38   Page 63

12. The term "Fire Victim Trust" shall have the same meaning as that term is used in the Chapter 11 Plan.

13. The term "FM Global" shall mean Factory Mutual Insurance Company, along with its agents, employees, attorneys, officers, directors, shareholders, members, representatives, subsidiaries, affiliates, predecessors and/or successors.

14. The term "FM Global Policy" shall mean Policy No. 1019191 issued by Factory Mutual Insurance Company, as insurer, to Adventist Health System / West, as insured.

15. The terms "You" or "Your" and variants thereof mean FM Global.

16. All capitalized terms used but not otherwise defined herein shall have the same meaning as in the FM Global Policy.

**INSTRUCTIONS**

1. These Requests are continuing in nature, so as to require supplemental responses and productions if further documents are identified, or information is obtained, between the time answers are served and the time the Fire Victim Trust is terminated.

2. Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, or web-based email systems such as Gmail, Yahoo, etc.

3. You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form. Without limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of

3

electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

4. Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

5. Documents not otherwise responsive to these Requests should be produced: (i) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests; (ii) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests; or (iii) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

6. Documents attached to each other should not be separated; separate Documents should not be attached to each other.

7. Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

8. If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request or part thereof, for each such Document, You must:

      a. Identify the type, title and subject matter of the Document;

      b. State the place, date, and manner of preparation of the Document;

      c. Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

      d. Identify the legal privilege(s) and the factual basis for the claim.

9. Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine. In the event any

4

Case: 19-30088    Doc# 11556    Filed: 11/09/21    Entered: 11/09/21 10:54:38    Page 65

Documents are produced with redactions, a log setting forth the information requested in Instruction 8 above must be provided.

10. To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred to others; and/or (iv) has been otherwise disposed of. In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document. Documents prepared prior to, but which relate or refer to, the time period covered by these Requests are to be identified and produced.

11. Provide a privilege log relating to Your responses to each of these Requests which You are withholding on the basis of privilege. The privilege log must list the Document or information withheld and the legal basis for withholding that information.

12. Unless otherwise specified, the time period covered by these Requests for Production is from November 8, 2018 to the present.

**MANNER OF PRODUCTION**

1. All Documents produced to the Fire Victim Trust shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2. <u>Database Load Files and Production Media Structure</u>: Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document

5

"families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images. Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3. <u>Electronic Documents and Data, Generally</u>: Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the Fire Victim Trust, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4. <u>Emails and Attachments, and Other Email Account-Related Documents</u>: All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Fire Victim Trust.

5. <u>Documents and Data Created or Stored in or by Structured Electronic Databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Fire Victim Trust to reasonably manage and import those Documents into a useable, coherent database. Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

6

Case: 19-30088    Doc# 11556    Filed: 11/09/21    Entered: 11/09/21 10:54:38    Page 67

1         a.      XML format file(s);

2         b.      Microsoft SQL database(s);

3         c.      Access database(s); and/or

4         d.      fixed or variable length ASCII delimited files.

5       6.     <u>Spreadsheets, Multimedia, and Non-Standard File Types</u>:  All Documents generated

6 or stored in software such as Microsoft Excel or other commercially available spreadsheet

7 programs, as well as any multimedia files such as audio or video, shall be produced in their native

8 format, along with an accompanying placeholder image in tiff format indicating a native file has

9 been produced.  A "Nativelink" entry shall be included in the .dat load file indicating the relative

10 file path to each native file on the production media.  To the extent You have other file types that

11 do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce

12 those files in native format subject to the other requirements listed herein.  Native files may be

13 produced within a separate root-level folder structure on deliverable media entitled "Natives."

14       7.     <u>"Other" Electronic Documents</u>:  All other Documents and accompanying metadata

15 and embedded data created or stored in unstructured files generated by commercially available

16 software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia)

17 such as, but not limited to, word processing files (such as Microsoft Word), image files (such as

18 Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text

19 format in the order the files are or were stored in the ordinary course of business.

20       8.     <u>Paper Documents</u>:  Documents originally created or stored on paper shall be

21 produced in tiff format.  Relationships between Documents shall be identified within the Relativity

22 .dat file utilizing document identifier numbers to express parent Document/child attachment

23 boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each

24 Document shall be provided as a multi-page text file as provided for by these Requests for

25 Production.

26

27

28

7

**DOCUMENT REQUESTS**

**REQUEST NUMBER 1**:

All Communications between You and Adventist Health or AHFR concerning the Camp Fire and any claims Adventist Health or AHFR may have under the FM Global Policy because of the Camp Fire.

**REQUEST NUMBER 2**:

All Communications between You and Adventist Health or AHFR concerning coverage for the Camp Fire or any damages caused by the Camp Fire.

**REQUEST NUMBER 3**:

All Communications between You and Adventist Health or AHFR where You have denied coverage for any damages caused by the Camp Fire.

**REQUEST NUMBER 4**:

All Claim Files for Adventist Health or AHFR concerning the Camp Fire or any loss resulting therefrom.

**REQUEST NUMBER 5**:

All Claim-Related Documents for Adventist Health or AHFR concerning the Camp Fire or any loss resulting therefrom.

**REQUEST NUMBER 6**:

All Documents that record, reflect, or show payments made to Adventist Health or AHFR concerning the Camp Fire.

**REQUEST NUMBER 7**:

Documents that record, reflect, or show reserves for future payments and policy limits for Adventist Health or AHFR under the FM Global Policy.

**REQUEST NUMBER 8**:

The Charter and By-Laws in effect for FM Global from 2016-2019.

**REQUEST NUMBER 9**:

All Documents showing any participation by Adventist Health or AHFR in FM Global's surplus from 2016 to the present.

8

1     **REQUEST NUMBER 10**:

2     All Documents which constitute Full Value Reporting to FM Global from 2016-2021 by

3  Adventist or AHFR, and in particular for Real Property, Business Personal Property and Time

4  Element coverages, as those terms are used in the FM Global Policy, and all Communications

5  regarding such Full Value Reporting.

6     **REQUEST NUMBER 11**:

7     All Documents which refer or relate to claims for Debris Removal Expenses by Adventist

8  Health or AHFR to FM Global, as that term is used in the FM Global Policy, and all

9  Communications regarding such claims.

10     **REQUEST NUMBER 12**:

11     All Documents regarding Proofs of Loss provided to FM Global by Adventist Health or

12  AHFR, as that term is used in the FM Global Policy, and all Communications regarding such

13  Proofs of Loss.

14     **REQUEST NUMBER 13**:

15     All valuations of Real Property and Business Personal Property Loss sustained as well as

16  the cost to rebuild Real Property and the timing of the rebuilding efforts for losses arising out of the

17  Camp Fire provided to FM Global by Adventist Health and AHFR and all Communications

18  regarding such valuations.

19     **REQUEST NUMBER 14**:

20     All Communications with FM Global by Adventist Health or AHFR requesting an

21  extension of any time limits for initiating and completing the rebuilding of Real Property and FM

22  Global's response to such Communications.

23     **REQUEST NUMBER 15**:

24     All Communications with FM Global by Adventist Health or AHFR requesting an

25  extension of any time limits for replacing Business Personal Property and all Communications

26  regarding such requests.

27

28

9

**REQUEST NUMBER 16**:

All Documents evidencing any Expediting Costs and Extra Expense provided to FM Global by Adventist Health or AHFR, as those terms are used in the FM Global Policy, and all Communications regarding Expediting Costs and Extra Expense.

**REQUEST NUMBER 17**:

All Documents evidencing Gross Profits for Adventist Health and AHFR provided to FM Global from 2016 to the present, as that term is used in the FM Global Policy, and all Communications regarding such Gross Profits.

**REQUEST NUMBER 18**:

All Documents evidencing Ordinary Payroll for 90 days after the Camp Fire provided by Adventist Health and AHFR to FM Global, as that term is used in the FM Global Policy, and all Communications regarding Adventist Health's or AHFR's Ordinary Payroll.

**REQUEST NUMBER 19**:

All books of accounts, business records, bills, invoices, and other vouchers submitted by Adventist Health or AHFR in support of any claims for Business Income Loss, Expediting Costs & Extra Expense and related losses provide to FM Global, as those terms are used in the FM Global Policy, and all Communications regarding such claims.

**REQUEST NUMBER 20**:

Transcripts of all Examinations under Oath by FM Global of Adventist Health or AFHR after the Camp Fire.

**REQUEST NUMBER 21**:

All Documents evidencing Claims Preparation Costs submitted by Adventist Health or AFHR to FM Global, as that term is used in the FM Global Policy, and all Communications with FM Global regarding Claims Preparation Costs.

10

# **EXHIBIT D**

DEFICIENCY NOTICE



# DEFICIENCY NOTICE

| DATE OF NOTICE: 11/1/21 |
|---|

| I. FIRE VICTIM INFORMATION | |
|---|---|
| **Claimant Name:** | Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River |
| **Law Firm:** | Norton Rose Fulbright US LLP |

| **Claimant ID:** | 1004200 | **Claims Questionnaire ID:** | 10000300 |
|---|---|---|---|
| **Damage Category:** | Real and Personal Property | **Claim ID:** | 239940 |

| II. EXPLANATION OF MISSING INFORMATION OR DOCUMENTATION |
|---|

This Notice is an official communication from the Claims Processor for the Fire Victim Trust. Your submitted claim is missing documents or information that prohibits us from concluding our review to make a final determination.

This Notice explains what is missing and what you may do to address the issue. We can help if you have questions. To cure the issues identified in this Notice, click the Respond to Deficiency Notice button on your secure online Portal and follow the instructions provided to upload the information identified below. If you already have provided us with the missing information, let us know because we may have received it after conducting the review that generated this Notice.

The following requires attention before we can act further:



Case: 19-30088   Doc# 11556   Filed: 11/09/21   Entered: 11/09/21 10:54:38   Page 73



# DEFICIENCY NOTICE

| | What is Missing | How to Address this Item |
|---|---|---|
| 1. | The business submitted a claim for Loss of Real and Business Personal Property, but did not provide sufficient insurance information to confirm insurance limits, efforts made to obtain insurance payments and payments made, broken down by type of coverage and Loss Location. | Submit documentation of insurance limits, efforts to obtain insurance payments, and payments by coverage type (e.g. structures, business personal property, debris removal, etc.) and Loss Location. See the table below to identify the type of documentation requested with more specificity. If you do not have relevant insurance related documents you may request them from your insurance carrier. Submit requested insurance claim information and documentation. 1. Complete Insurance Claim File with Factory Mutual Insurance Company and/or Any of Its Affiliates ("FM") 2. Any Evidence of Participation in FM's Surplus from 2016-2021, Any Other Evidence of Payment from FM and all Communications with FM Regarding Payment of Surplus or any Other Sums. 3. Charter and By-Laws of FM and all Communications with FM regarding its Charter and/or By-Laws. 4. All Documents which constitute Full Value Reporting to FM from 2016 -2021, and in particular for Real Property and Business Personal Property Values and any Communications with FM regarding Full Value Reporting 5. Any Claims for Debris Removal Expenses to FM and any Payments by FM and all Communications with FM Regarding Debris Removal Expenses. 6. All Signed and Sworn Proofs of Loss Provided to FM for Real Property and Business Personal Property Losses and Related Losses Provided to FM and all Communications with FM Regarding Proofs of Loss. 7. All valuations of Real Property and Business Personal Property Loss sustained as well as the cost to Rebuild Real Property and the Timing of the Rebuilding Efforts and any Other Documents Provided in Support of the Real Property and Business Personal Property Losses, and Related Losses Provided to FM and all Communications with FM Regarding such Losses. 8. All Communications with FM Requesting an Extension of any Time Limits for Initiating and Completing the Rebuilding of Real Property, FM's Response and all Communications with FM Regarding Such Extension Requests. 9. All Communications with FM Requesting an Extension of any Time Limits for Replacing Business Personal Property, FM's Response and all Communications with FM Regarding Such Extension Requests. 10. Transcripts of All Examinations Under Oath by FM Concerning the Real and Business Personal Property Losses and Related Losses and all Communications with FM Regarding any Examinations Under Oath. 11. All Evidences of Claims Preparation Costs, Submittals for Claims Preparation Costs to FM and all Communications with FM Regarding Claims Preparation Costs. |



Claim ID: 239940
CQ ID: 10000300



# DEFICIENCY NOTICE

## III.   HOW TO RESPOND TO THIS NOTICE

**We encourage you to gather the requested information or documents now and respond to this Notice promptly. The sooner you respond, the sooner your submitted claim can move forward in the review process.**

Send us the missing information or documents identified in Sections II or III.  We will re-review your submitted claim when documents are received.  If you do not respond, we will have to assess your submitted claim based on the materials we have, which could lead to a lower determination or denial of your claim in its entirety.

Submit the requested missing or incomplete information by using your secure online portal to upload additional documents.

## IV.   HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

If you have any questions about this Notice or need help, call us at 1-888-664-1152 or email info@firevictimtrust.com.



Claim ID: 239940
CQ ID: 10000300



# DEFICIENCY NOTICE

## I. FIRE VICTIM INFORMATION

| | |
|---|---|
| **Claimant Name:** | Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River |
| **Law Firm:** | Norton Rose Fulbright US LLP |

| | | | |
|---|---|---|---|
| **Claimant ID:** | 1004200 | **Claims Questionnaire ID:** | 10000300 |
| **Damage Category:** | Business Income Loss | **Claim ID:** | 240021 |

| | | | |
|---|---|---|---|
| **Loss Location Address:** | Street<br>5125 Skyway | | Apt/Suite/Lot/Number |
| | City<br>Paradise | State<br>California | Zip Code<br>95969-5624 |
| | County | APN | Fire<br>Camp |

## II. EXPLANATION OF MISSING INFORMATION OR DOCUMENTATION

This Notice is an official communication from the Claims Processor for the Fire Victim Trust. Your submitted claim is missing documents or information that prohibits us from concluding our review to make a final determination.

This Notice explains what is missing and what you may do to address the issue. We can help if you have questions. To cure the issues identified in this Notice, click the Respond to Deficiency Notice button on your secure online Portal and follow the instructions provided to upload the information identified below. If you already have provided us with the missing information, let us know because we may have received it after conducting the review that generated this Notice.

The following requires attention before we can act further:

| | What is Missing | How to Address this Item |
|---|---|---|
| **1.** | The business submitted a claim for Business Income Loss, but did not provide relevant portions of federal tax returns for the selected Benchmark Period, the year of the Fire, or the applicable Loss Period. If you do not have copies of the federal tax returns for the business, you may be able to get them from your accountant or tax preparer. Alternatively, you can go online at IRS.gov and request a free transcript of your tax return for all required years using Form 4506-T. Form 4506-T is available at http://www.irs.gov/pub/irs-pdf/f4506t.pdf. You can send us a copy of those transcripts. | Submit federal tax returns, including all relevant schedules and attachments, for the selected Benchmark Period, the year of the Fire, and the applicable Loss Period. For self-employed individuals, these federal tax returns must include Form 1040, pages 1 and 2, along with Schedules 1, C, E, and F, and Form 1099, if applicable. See the table below to identify the forms and schedules that are missing for specific years. |
| **2.** | The business submitted a claim for Business Income Loss, but did not provide sufficient documentation to confirm insurance limits, efforts made to obtain insurance payments and payments received, broken down by coverage type and Loss Location. | Submit documentation of insurance limits and payments received, broken down by coverage type (e.g., business interruption, business personal property, etc.) and Loss Location. If you do not have copies of these documents, you may be able to get them from your insurance carrier. |




| | What is Missing | How to Address this Item |
|---|---|---|
| 3. | Additional required insurance documents have not been provided. | Submit the following required insurance documents: 1. Complete Insurance Claim File with Factory Mutual Insurance Company and/or Any of Its Affiliates ("FM"); 2. Any Evidence of Participation in FM's Surplus from 2016-2021 and Any Other Evidence of Payment from FM and all Communications with FM regarding payment; 3. Charter and By-Laws of FM and all Communications with FM regarding its Charter and/or By-Laws; 4. All Documents which constitute Full Value Reporting to FM from 2016-2021, and in particular for Time Element Values and any Communications with FM regarding Full Value Reporting; 5. All Documents Evidencing Any Expediting Costs and Extra Expense Incurred as a Result of the Fire and Any Communications with FM Regarding Expediting Costs and Extra Expense; 6. All Documents Evidencing Gross Profits after the Fire and Any Communications with FM regarding Gross Profits; 7. All Documents Evidencing Ordinary Payroll for 90 days After the Fire and any Communications with FM Regarding Ordinary Payroll; 8. All Signed and Sworn Proofs of Loss Provided to FM for Business Income Loss, Expediting Costs & Extra Expense and Related Losses Provided to FM and all Communications with FM Regarding Proofs of Loss; 9. All Books of Accounts, Business Records, Bills, Invoices and Other Vouchers, in Support of the Business Income Loss, Expediting Costs & Extra Expense and Related Losses Provided to FM and all Communications with FM Regarding Business Income Loss; 10. Transcripts of All Examinations Under Oath by FM Concerning the Business Income loss, Expediting Costs & Extra Expense and Related Losses and all Communications with FM Regarding any Examinations Under Oath. |

| III. REQUIRED TAX RETURN YEARS | | | | |
|---|---|---|---|---|
| Row | Year | Tax Form | Schedule/Attachment | Complete? |
| 1. | 2017 | Not Provided | Not Provided | Incomplete |
| 2. | 2018 | Not Provided | Not Provided | Incomplete |
| 3. | 2019 | Not Provided | Not Provided | Incomplete |
| 4. | 2020 | Not Provided | Not Provided | Incomplete |


Case: 19-30088    Doc# 11556    Filed: 11/09/21    Entered: 11/09/21 10:54:38    Page 77 of 78



# DEFICIENCY NOTICE

## IV. HOW TO RESPOND TO THIS NOTICE

**We encourage you to gather the requested information or documents now and respond to this Notice promptly. The sooner you respond, the sooner your submitted claim can move forward in the review process.**

Send us the missing information or documents identified in Sections II or III. We will re-review your submitted claim when documents are received. If you do not respond, we will have to assess your submitted claim based on the materials we have, which could lead to a lower determination or denial of your claim in its entirety.

Submit the requested missing or incomplete information by using your secure online portal to upload additional documents.

## V. HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

If you have any questions about this Notice or need help, call us at 1-888-664-1152 or email info@firevictimtrust.com.



Claim ID: 240021
CQ ID: 10000300

Case: 19-30088    Doc# 11556    Filed: 11/09/21    Entered: 11/09/21 10:54:38    Page 78 of 78